### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Title III |
| COMMONWEALTH OF PUERTO RICO, and | Case No. 17-01578 (LTS) |
| PUERTO RICO SALES TAX FINANCING CORPORATION, | Case No. 17-01599 |
| Debtors. | (Joint Administration Requested) |

### APPLICATION OF
### DEBTORS FOR ENTRY OF
### ORDER AUTHORIZING EMPLOYMENT
### AND PAYMENT OF PRIME CLERK LLC AS SOLICITATION,
### NOTICE, AND CLAIMS AGENT, *NUNC PRO TUNC* TO PETITION DATES

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submit this application (the "Application"), pursuant to section 105(a) of title 11 of the United Stated Code (the "Bankruptcy Code"), made applicable to these cases by PROMESA section 301(a), and rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these cases by PROMESA section 310, for entry of an order, substantially in the form attached hereto as **Exhibit C** (the "Proposed Order"), authorizing the employment and payment of Prime Clerk LLC ("Prime Clerk") as the official solicitation, notice, and claims agent (the "Solicitation, Notice, and Claims Agent") in these Title III Cases (as defined below), effective *nunc pro tunc* to the Petition Dates (as defined below). The terms of Prime Clerk's employment are set forth in

---

[1] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

the engagement agreement, dated as of May 3, 2017, between Prime Clerk and the Oversight Board (the "Engagement Agreement").[2]   This Application requests issuance of the Proposed Order, authorizing the Debtors to pay Prime Clerk all amounts arising under the Engagement Agreement.  If there is any inconsistency between this Application, the Proposed Order, and the Engagement Agreement, the Debtors respectfully request that the Proposed Order govern.  In support of this Application, the Debtors submit the *Declaration of Benjamin P.D. Schrag* (the "Schrag Declaration").[3]   In support of the Application, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief sought herein are Bankruptcy Code section 105(a) and Bankruptcy Rule 2002, made applicable to these title III cases by PROMESA sections 301(a) and 310, respectively.

## Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the

---

[2]   The Engagement Agreement is attached as **Exhibit A** to this Application and incorporated herein by reference.

[3]   The Schrag Declaration is attached as **Exhibit B** to this Application.

debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6. On September 30, 2016, the Oversight Board designated the Debtors as covered entities under PROMESA section 101(d).

7. On May 3, 2017 (the "Commonwealth's Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Commonwealth's Title III Case").

8. On May 5, 2017 ("COFINA's Petition Date," and together with the Commonwealth's Petition Date, the "Petition Dates"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under title III thereof ("COFINA's Title III Case," and together with the Commonwealth's Title III Case, the "Title III Cases").

9. Contemporaneously herewith, the Debtors filed a motion seeking the joint administration of the Title III Cases, for procedural purposes only, pursuant to PROMESA section 304(g) and Bankruptcy Rule 1015, made applicable to these Title III Cases by PROMESA section 310.

10. Background information regarding the Commonwealth and its instrumentalities, and the commencement of these Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [D.I. 1], attached to the Commonwealth's title III petition.

## Relief Requested

11.     By this Application, the Debtors request entry of the Proposed Order, requiring payment of all amounts arising under the Engagement Agreement governing the employment relationship of the Debtors with Prime Clerk as Solicitation, Notice, and Claims Agent in these Title III Cases effective *nunc pro tunc* to the Petition Dates.

## Basis for Relief

### I.   Pertinent Facts

### A.   Prime Clerk

12.     Prime Clerk's senior management is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex cases under the Bankruptcy Code. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of bankruptcy cases.  Prime Clerk's professionals, before joining Prime Clerk, acted as debtor's counsel or official solicitation, claims, and/or noticing agents in many large bankruptcy cases.  Prime Clerk's active cases include: *General Wireless Operations Inc. dba RadioShack*, No. 17-10506 (BLS) (Bankr. D. Del.); *Lily Robotics, Inc.*, No. 17-10426 (KJC) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited*, No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *Bonanza Creek Energy, Inc.*, No. 17-10015 (KJC) (Bankr. D. Del.); *Violin Memory, Inc.*, No. 16-12782 (LSS) (Bankr. D. Del.); *Gracious Home LLC*, No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *DirectBuy Holdings, Inc.*, No. 16-12435 (CSS) (Bankr. D. Del.); *American Apparel, LLC*, No. 16-12551 (BLS) (Bankr. D. Del.); *DACCO Transmission Parts (NY), Inc.*, No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *Shoreline Energy LLC*, No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *Golfsmith International Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del.); *International Shipholding Corp.*, No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *Global Geophysical Services, LLC*, No. 16-20306 (DRJ)

(Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aeropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KAS) (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Resources, LLC*, No. 15-12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Resources Corp.*, No. 15-12533 (KG) (Bankr. D. Del.); *In re Energy & Exploration Partners, Inc.*, No. 15-44931 (RFN) (Bankr. N.D. Tex.); *In re KaloBios Pharmaceuticals, Inc.*, No. 15-12628 (LSS) (Bankr. D. Del.); *In re Millennium Lab Holdings LLC*, No. 15-12284 (LSS) (Bankr. D. Del.); *In re RS Legacy Corp. (f/k/a RadioShack Corp.)*, No. 15-10197 (BLS) (Bankr. D. Del.).

13. Appointing Prime Clerk as the Solicitation, Notice, and Claims Agent in these Title III Cases expedites the distribution of notices and solicitation of votes on a plan of adjustment, and relieves the office of the Clerk of the Court (the "Clerk") of the administrative burden of processing a potentially overwhelming amount of claims.

14. Notwithstanding the inapplicability of Bankruptcy Code section 327 to these Title III Cases, as set forth in the Schrag Declaration, Prime Clerk has represented, among other

things, that it does not have any relationship that would preclude it from fulfilling its proposed

role in this case and that it will comply with all requests of the Clerk's office.

**B.     Services to be Provided**

15.     As their Solicitation, Notice, and Claims Agent, pursuant to the Engagement

Agreement, Prime Clerk will, to the extent requested by the Oversight Board and the Debtors:

(a)     Prepare and serve required notices and documents in these Title III Cases
in accordance with PROMESA, the Bankruptcy Code, and the Bankruptcy
Rules, as applicable, in the form and manner directed by the Oversight
Board, the Debtors, and/or the Court, including, if applicable, (i) notice of
the commencement of these Title III Cases, (ii) notice of any claims bar
date, (iii) notices of transfers of claims, (iv) notices of objections to claims
and objections to transfers of claims, (v) notices of any hearings on a
disclosure statement and confirmation of the Debtors' plans of adjustment,
including under Bankruptcy Rule 3017(d), (vi) notice of the effective date
of any confirmed plan of adjustment, and (vii) all other notices, orders,
pleadings, publications, and other documents as the Oversight Board, the
Debtors, and/or the Court may deem necessary or appropriate for an
orderly administration of these Title III Cases.

(b)     Prepare and file or cause to be filed with the Clerk an affidavit or
certificate of service for all notices, motions, orders, other pleadings, or
documents served within three (3) business days of service that includes
(i) either a copy of the notice served or the docket number(s) and title(s) of
the pleading(s) served, (ii) a list of persons to whom it was mailed (in
alphabetical order) with their addresses, (iii) the manner of service, and
(iv) the date served.

(c)     (i) Maintain a list of all potential creditors and other parties in interest;
(ii) maintain a "core" mailing list consisting of all parties described in
Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a
notice of appearance under Bankruptcy Rule 9010; and (iii) update and
make available the foregoing lists upon request by a party in interest or the
Clerk.

(d)     Identify and correct any incomplete or incorrect addresses in any mailing
or service lists.

(e)     Furnish a notice to all potential creditors of the last date for filing proofs
of claim and a form for filing a proof of claim, after such notice and form
are approved by the Court, and notify said potential creditors of the
existence, amount, and classification of their respective claims as set forth
in the Schedules, which may be effected by inclusion of such information

(or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors.

(f)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received.

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area.

(h)     Provide an electronic interface for filing proofs of claim.

(i)     Maintain the official claims register for the Debtors (the "Claims Registers") on behalf of the Clerk; and upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), and (vi) any disposition of the claim. The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

(j)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims.

(k)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e).

(l)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly.

(m)     Upon completion of the docketing process for all claims received to date, turn over to the Clerk a copy of the Claims Registers for the Clerk's review (upon the Clerk's request).

(n)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists.

(o)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these Title III Cases as

directed by the Oversight Board, the Debtors, or the Court, including through the use of a case website and/or call center.

(p)    Thirty days before the close of these Title III Cases, to the extent practicable, request that the Oversight Board, on behalf of the Debtors, submit to the Court a proposed order dismissing Prime Clerk as Solicitation, Notice, and Claims Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Title III Cases.

(q)    Within seven days of notice to Prime Clerk of entry of an order closing these Title III Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of these Title III Cases.

(r)    At the close of these Title III Cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office to any location requested by the Clerk's office, and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

(s)    Assist with, among other things, solicitation, balloting, and tabulation of votes and preparation of any related reports, as required in support of confirmation of a plan of adjustment, and in connection with such services, process requests for documents from any parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders.

(t)    Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results.

(u)    Manage and coordinate any distributions pursuant to a plan of adjustment.

(v)    Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement as may be requested from time to time by the Debtors, the Oversight Board, the Court, or the Clerk (collectively, the "Services").

## C.    Professional Compensation

16.    Prime Clerk has agreed to be employed by the Debtors conditioned upon its ability to work under its customary terms and conditions of employment, including the proposed compensation arrangements set forth in the Engagement Agreement (the "Rate Structure"). The Rate Structure is consistent with, and typical of, arrangements entered into by Prime Clerk and

other solicitation, claims, and noticing agents of comparable expertise and experience for engagements of similar size and complexity. In addition, the Debtors have agreed to pay Prime Clerk an advance of $100,000 (the "Advance"). Upon the Court's issuance of the Proposed Order, the Debtors request authority: (i) to pay the Advance; (ii) to make a true-up payment to Prime Clerk for all outstanding fees and expenses incurred prior to the Petition Dates; (iii) thereafter, to replenish the Advance to the original Advance amount; and (iv) to hold the Advance under the Engagement Agreement as security for the payment of fees and expenses incurred under the Engagement Agreement.

17.     The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses pursuant to Bankruptcy Code section 503(b)(1)(A), made applicable by PROMESA section 301(a), and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court. Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Puerto Rico Fiscal Agency and Financial Advisory Authority, the Oversight Board, counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority, counsel for the Oversight Board, counsel for any statutory committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

**D.      Indemnification Provisions**

18.     As proposed in the Proposed Order, the Debtors will indemnify and hold harmless Prime Clerk, its members, directors, officers, employees, representatives, affiliates, consultants,

subcontractors, and agents (collectively with Prime Clerk, the "Indemnified Parties") under certain circumstances specified in the Engagement Agreement; provided the Debtors will have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any losses, claims, damages, judgments, liabilities, and expenses resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or any order authorizing the employment of Prime Clerk. Furthermore, Prime Clerk and the Debtors shall notify each other in writing promptly upon the assertion, threat, or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services rendered under the Engagement Agreement. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to employ a Solicitation, Notice, and Claims Agent in these Title III Cases.

## II. Legal Basis for the Relief Requested

### A. Employment of Prime Clerk as Solicitation, Notice, and Claims Agent is Permitted

19. Significantly, Bankruptcy Code section 363, governing the use of property, does not apply to Title III cases. Pursuant to section 105(a) of the Bankruptcy Code, made applicable to these Title III Cases by PROMESA section 301(a), and Bankruptcy Rule 2002, made applicable to these cases by PROMESA section 310, the Oversight Board, on behalf of the Debtors, is permitted to employ Prime Clerk as Solicitation, Notice, and Claims Agent in these Title III Cases to assume full responsibility for the distribution of notices, processing of claims, soliciting votes on any plans of adjustment, and other administrative aspects of these Title III Cases.

20. Bankruptcy Rule 2002, which governs the notices that must be provided to creditors and other parties in interest in bankruptcy cases, authorizes the Court to direct that

some person other than the Clerk provide notice of matters arising in the Debtors' Title III Cases.

*See, e.g.*, Fed. R. Bankr. P. 2002(a), (b), (d), (f) (requiring in each case that notices be given by

"the clerk, *or some other person as the court may direct*") (emphasis added).

21.     Section 105(a) of the Bankruptcy Code provides, in relevant part that:

> The court may issue any order, process, or judgment that is
> ***necessary or appropriate*** to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by
> any party in interest shall be construed to preclude the court from,
> *sua sponte*, taking any action or making any determination
> necessary or appropriate to enforce or implement court orders or
> rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).

22.     The Debtors anticipate that these Title III Cases will require tens of thousands of

people and entities to be noticed.  In view of that large number, the Debtors submit that the

employment of the Solicitation, Notice, and Claims Agent is in the best interests of the Debtors

and their creditors.  Relieved of the burdens associated with the Services, the Debtors will be

able to devote their full attention and resources to facilitating the orderly administration of these

Title III Cases.

23.     Prior to the selection of Prime Clerk as Solicitation, Notice, and Claims Agent,

the Oversight Board and the Debtors reviewed and compared engagement proposals from four

industry-leading solicitation, claims, and noticing agents, including Prime Clerk, to ensure a

competitive process.  The Debtors submit, based on the engagement proposals obtained and

reviewed, that Prime Clerk's rates are competitive and reasonable given the quality of services

and expertise Prime Clerk provides.  The Debtors are requesting authority to pay all amounts

arising under the Engagement Agreement.  If there is any inconsistency between the Engagement

Agreement, the Application, and the Proposed Order, the Proposed Order governs.

**B.** *Nunc Pro Tunc* **Relief is Appropriate**

24.     In accordance with the Debtors' request, Prime Clerk has agreed to serve as Solicitation, Notice, and Claims Agent on and after the Petition Dates with assurances that the Debtors would seek approval of their employment, effective *nunc pro tunc* to the Petition Dates, so that Prime Clerk can be compensated for services rendered before approval of this Application. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as proposed in this Application, because Prime Clerk has provided and continues to provide valuable services to the Debtors in the interim period. Bankruptcy Courts routinely approve *nunc pro tunc* employment similar to that requested herein in large, complex bankruptcy cases.[4]

25.     Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing and requiring the Debtors to pay Prime Clerk as Solicitation, Notice, and Claims Agent, effective *nunc pro tunc* to the Petition Dates, all amounts arising under the Engagement Agreement.

### Notice

26.     The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims; (d) the Office of the United States Attorney for the District of Puerto Rico; (e)

---

[4]     *See, e.g., In re La Paloma Generating Co., LLC*, No. 16-12700 (CSS) (Bankr. D. Del. Jan. 13, 2017) (approving nunc pro tunc employment of the claims and noticing agent to perform claims and noticing services); *In re Magnum Hunter Resources Corporation*, No. 15-12533 (Bankr. D. Del. Dec. 16, 2015) (same); *In re The Wet Seal, Inc., et al.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015) (D.I. 93); *In re Endeavour Operating Corporation, et al.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 152); *In re AmCad Holdings, LLC, et al.*, Case No. 14-12168 (MFW) (Bankr. D. Del. Sept. 23, 2014) (D.I. 29).

counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority on behalf of the Governor of Puerto Rico; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[5] and (h) all parties filing a notice of appearance in these Title III Cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Reservation of Rights

27.     The Debtors file this Motion without prejudice to or waiver of their rights pursuant to PROMESA section 305,[6] and do not by this Motion provide any consent otherwise required by section 305.

## No Prior Request

28.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order, attached hereto as **Exhibit C**, and such other and further relief as is just.

Dated: May 9, 2017
       San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock
Scott K. Rutsky
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admission Pro Hac Vice pending)

---

[5]   The "Other Interested Parties" include the following:  (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain any ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

[6]   PROMESA section 305 provides: "Subject to the limitations set forth in titles I and II of this Act, notwithstanding any provision in this title to the contrary, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with — (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property."

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the
Financial Oversight and
Management Board as representative for the
Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the
Financial Oversight and
Management Board as representative for the
Debtors*

## Exhibit A

**Engagement Agreement**

## Exhibit B

**Schrag Declaration**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Title III |
| COMMONWEALTH OF PUERTO RICO, and | Case No. 17-01578 (LTS) |
| PUERTO RICO SALES TAX FINANCING CORPORATION, | Case No. 17-01599 |
| Debtors. | (Joint Administration Requested) |

## DECLARATION OF BENJAMIN P.D. SCHRAG
## IN SUPPORT OF THE APPLICATION OF THE
## DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
## THE EMPLOYMENT AND PAYMENT OF PRIME CLERK LLC AS SOLICITATION,
## NOTICE, AND CLAIMS AGENT, *NUNC PRO TUNC* TO THE PETITION DATES

I, Benjamin P.D. Schrag, under penalty of perjury, declare as follows:

1. I am an Executive Vice President with Prime Clerk LLC ("Prime Clerk"), and I am authorized to make and submit this declaration on behalf of Prime Clerk. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. This Declaration is made in support of the *Application of the Debtors for Entry of an Order Authorizing the Employment and Payment of Prime Clerk LLC as Solicitation, Notice, and Claims Agent,* Nunc Pro Tunc *to the Petition Dates* (the "Application").[1]

3. Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex cases under the Bankruptcy Code. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of bankruptcy cases. Prime Clerk's professionals have acted as debtor's counsel or official solicitation, claims,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings used in the Application.

and/or noticing agent in many large bankruptcy cases.  Prime Clerk's active cases include: *General Wireless Operations Inc. dba RadioShack*, No. 17-10506 (BLS) (Bankr. D. Del.); *Lily Robotics, Inc.*, No. 17-10426 (KJC) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited*, No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *Bonanza Creek Energy, Inc.*, No. 17-10015 (KJC) (Bankr. D. Del.); *Violin Memory, Inc.*, No. 16-12782 (LSS) (Bankr. D. Del.); *Gracious Home LLC*, No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *DirectBuy Holdings, Inc.*, No. 16-12435 (CSS) (Bankr. D. Del.); *American Apparel, LLC*, No. 16-12551 (BLS) (Bankr. D. Del.); *DACCO Transmission Parts (NY), Inc.*, No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *Shoreline Energy LLC*, No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *Golfsmith International Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del.); *International Shipholding Corp.*, No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *Global Geophysical Services, LLC*, No. 16-20306 (DRJ) (Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aeropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KAS) (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Resources, LLC*, No. 15-12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Resources Corp.*, No. 15-12533 (KG) (Bankr. D. Del.); *In re Energy & Exploration Partners, Inc.*, No. 15-44931 (RFN) (Bankr.

N.D. Tex.); *In re KaloBios Pharmaceuticals, Inc.*, No. 15-12628 (LSS) (Bankr. D. Del.); *In re Millennium Lab Holdings LLC*, No. 15-12284 (LSS) (Bankr. D. Del.); *In re RS Legacy Corp. (f/k/a RadioShack Corp.)*, No. 15-10197 (BLS) (Bankr. D. Del.).

4.      As the Solicitation, Notice, and Claims Agent in these Title III Cases, Prime Clerk will perform, at the request of the Debtors and the Oversight Board, the services specified in the Application and the Engagement Agreement.  In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit A** to the Application.

5.      Prime Clerk represents, among other things, the following:

(a)      Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Solicitation, Notice, and Claims Agent in these Title III Cases;

(b)      By accepting employment in these Title III Cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these Title III Cases;

(c)      In its capacity as the Solicitation, Notice, and Claims Agent in these Title III Cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(d)      Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Solicitation, Notice, and Claims Agent in these Title III Cases;

(e)      In its capacity as Solicitation, Notice, and Claims Agent in these Title III Cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(f)      Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(g)      Prime Clerk will comply with all requests of the Clerk's office and all orders of the Court;

(h)     None of the services provided by Prime Clerk as Solicitation, Notice, and Claims Agent in these Title III Cases shall be at the expense of the Clerk's office; and

(i)     If any new facts or relationships are discovered, Prime Clerk will supplement its disclosure to the Court.

6.      The Debtors have many creditors, and accordingly, Prime Clerk may have rendered and may continue to render services to certain of these creditors in matters unrelated to these Title III Cases, either as vendors or in cases where Prime Clerk serves in a neutral capacity as a bankruptcy solicitation, claims, and/or noticing agent. Prime Clerk has not and will not represent the separate interests of any such creditor in these Title III Cases. Prime Clerk has working relationships with certain of the professionals employed by the Debtors and other parties herein, but such relationships are unrelated to these Title III Cases. In addition, Prime Clerk personnel may have relationships with some of the Debtors' creditors. Such relationships are, however, wholly unrelated to these Title III Cases. Prime Clerk has and will continue to represent clients in matters unrelated to these Title III Cases and has had and will continue to have relationships in connection with matters unrelated to these Title III Cases.

7.      From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the Investment Fund, he, she, or they

4

do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

8.      From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company that may be involved in these Title III Cases. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is employed.

9.      To the best of my knowledge and except as disclosed herein, Prime Clerk neither holds nor represents any interest materially adverse to the Debtors in connection with any matter on which it would be employed.

10.      While providing the services under the Proposed Order, Prime Clerk will comply with all applicable laws, rules, and regulations, as well as all applicable Oversight Board policies and rules, including without limitation the Oversight Board's Vendor Code of Conduct and Vendor Conflict of Interest Disclosure Certification, attached as an exhibit to the Engagement Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on May 9, 2017

Prime Clerk LLC

Benjamin P.D. Schrag
Executive Vice President
Prime Clerk LLC

6

## Exhibit C

**Proposed Order**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>COMMONWEALTH OF PUERTO RICO, and<br><br>PUERTO RICO SALES TAX<br>FINANCING CORPORATION,<br><br>        Debtors. | Title III<br><br>Case No. 17-01578 (LTS)<br><br>Case No. 17-01599<br><br>(Joint Administration Requested)<br><br>**Re: Docket No. ___** |

## ORDER AUTHORIZING EMPLOYMENT AND PAYMENT OF PRIME CLERK LLC AS SOLICITATION, NOTICE, AND CLAIMS AGENT, *NUNC PRO TUNC* TO THE PETITION DATES

Upon the *Application of the Debtors for Entry of an Order Authorizing Employment and Payment of Prime Clerk LLC as Solicitation, Notice, and Claims Agent,* Nunc Pro Tunc *to the Petition Dates* (the "Application")[1] filed by the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to PROMESA section 315(b); and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard the statements of counsel in support of the Application at a hearing held before the Court (the "Hearing"); and upon the Schrag Declaration submitted in support of the Application; and the

---

[1] Capitalized terms used but not defined in this Order have the meanings used in the Application.

Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein,

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Application is granted as set forth herein.

2.    The Debtors are authorized and required to pay Prime Clerk as Solicitation, Notice, and Claims Agent effective *nunc pro tunc* to the Petition Dates, all amounts arising under the Engagement Agreement, and Prime Clerk is authorized and directed to perform the Services. The Clerk's office shall provide Prime Clerk with ECF credentials that allow Prime Clerk to receive ECF notifications and file certificates of service.

3.    In connection with performing the Services, Prime Clerk is authorized to take direction from the Oversight Board and the Debtors and each of their respective representatives, employees, agents, and/or legal and financial professionals (collectively, the "Debtor Parties"); provided, however, that in the case of a conflict, the direction of the Oversight Board and its representatives, employees, agents, and professionals shall control.  Prime Clerk may rely upon any requests, advice, or information provided by the Debtor Parties to the same extent as if such requests, advice, or information were provided by the Debtors or the Oversight Board.

4.    Subject to the terms of this Order, the applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of the Court, the Debtors are authorized to compensate Prime Clerk in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the

services provided by Prime Clerk and the rates charged for each, and to reimburse Prime Clerk for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation without the need for Prime Clerk to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

5.      Prime Clerk shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the Puerto Rico Fiscal Agency and Financial Advisory Authority, the Oversight Board, counsel for Puerto Rico Fiscal Agency and Financial Advisory Authority, counsel for the Oversight Board, counsel for any statutory committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

6.      Subject to entry of this Order, the applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of this Court, all invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (*e.g.*, publication notice), Prime Clerk may require advance or direct payment from the Debtors before the performance of Services hereunder. Notwithstanding any order or directive of any court or governmental authority, if Prime Clerk does not receive the advance or direct payment as requested, Prime Clerk is not obligated to perform such Services notwithstanding any deadline or other provision of the Engagement Agreement.  Failure to provide any such Service resulting from the Debtors' failure to provide an advance or direct payment on such amounts shall not be a breach of the Engagement Agreement.

7.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices; provided that the parties may seek resolution of the matter from the Court if resolution is not achieved.

8.    Pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Prime Clerk under this Order shall be an administrative expense of the Debtors.

9.    In case of a good faith dispute with respect to an invoice amount, the Debtors or the Oversight Board shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. Subject to the terms of this Order, the applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable order of the Court, the undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.

10.   The Debtors shall (a) pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Debtors, the Oversight Board, or the Debtor Parties and (b) pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

11.   If the employment relationship of Prime Clerk is terminated pursuant to the Engagement Agreement, the Debtors shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

12.   Upon entry of this Order, the Debtors shall pay Prime Clerk an advance of $100,000. Prime Clerk may use such advance against unpaid fees and expenses under the Engagement Agreement, which advance then shall be replenished immediately by the Debtors to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against any other unpaid fees and expenses hereunder. Any excess amounts left after the termination of the engagement shall be promptly returned to the Debtors.

13.     Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Debtors of such increases.

14.     Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "Property") furnished by Prime Clerk for itself or for use by the Oversight Board or the Debtors under the Engagement Agreement.  Fees and expenses paid by the Debtors shall not vest in the Debtors any rights in such Property.  Such Property is only being made available for the Oversight Board or the Debtors' use during and in connection with the Services provided by Prime Clerk hereunder.

15.     While providing the Services, Prime Clerk shall comply with all applicable laws, rules, and regulations, as well as all applicable Oversight Board policies and rules, including without limitation the Oversight Board's Vendor Code of Conduct and Vendor Conflict of Interest Disclosure Certification, attached as an exhibit to the Engagement Agreement.

16.     Prime Clerk shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Title III Cases and is authorized and directed to maintain official claims registers for the Debtors and to provide the Clerk with certified duplicates thereof upon the request of the Clerk.

17.     Prime Clerk is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

18.    Prime Clerk is authorized to take such other action to comply with all duties set forth in the Application.

19.    The Debtors shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of, or related to Prime Clerk's performance under the Engagement Agreement.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party, provided however, that any indemnification obligations will only be with respect to tasks performed in accordance with the terms of the Engagement Agreement.  The Debtors' indemnification obligations shall survive the termination of the Engagement Agreement for a period of three (3) years.

20.    Prime Clerk shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

21.    The Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any losses, claims, damages, judgments, liabilities, and expenses resulting solely from Prime Clerk's gross negligence or willful misconduct.  Furthermore, Prime Clerk and the Debtors shall notify each other in writing promptly upon the assertion, threat, or commencement of any claim, action,

investigation, or proceeding that either party becomes aware of with respect to the services rendered under the Engagement Agreement.

22.     Prime Clerk's liability to the Debtors and the Oversight Board for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Debtors for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Debtors or the Oversight Board for any Losses arising out of the Engagement Agreement exceed the total amount actually paid to Prime Clerk for Services provided under the Engagement Agreement.  In no event shall Prime Clerk be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services under the Engagement Agreement.

23.     If, before the earlier of (i) the entry of an order confirming a plan of adjustment in these Title III Cases (that order having become a final order no longer subject to appeal) or (ii) the entry of an order closing these Title III Cases, Prime Clerk believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Prime Clerk must file an application therefor in this Court, and the Debtors may not pay any such amounts to Prime Clerk before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Prime Clerk for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Prime Clerk.  All parties

in interest shall retain the right to object to any demand by Prime Clerk for indemnification, contribution, or reimbursement.

24.     The Debtors and the Oversight Board are responsible for, and Prime Clerk does not verify, the accuracy of the programs, data, and other information provided by such party to Prime Clerk and for the output of such information.  The party delivering such information agrees, represents, and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the party delivering such information has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform the Services. Any data, storage media, programs, or other materials furnished to Prime Clerk by the Debtors or the Oversight Board may be retained by Prime Clerk until the Services provided under the Engagement Agreement are paid in full.  The Debtors shall remain liable for all fees and expenses incurred by Prime Clerk under the Engagement Agreement as a result of data, storage media, or other materials maintained, stored, or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or acceptable to the Debtors and the Oversight Board; provided that if the Debtors and the Oversight Board have not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Debtors for the expense of such disposition, after giving the Debtors and the Oversight Board 30 days' notice.  The Debtors and the Oversight Board agree to initiate and maintain backup files that would allow the Debtors and the Oversight Board to regenerate or duplicate all programs, data, or information provided by the Debtors and the Oversight Board to Prime Clerk.  Disposal of any Debtors or Oversight Board data, storage media, or other materials shall comply with any applicable court orders and rules or the Clerk's office instructions.

25.     In the event Prime Clerk is unable to provide the services set out in this Order, Prime Clerk will immediately notify the Clerk and counsel to the Oversight Board and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims agent with the advice and consent of the Clerk and counsel to the Oversight Board.

26.     Prime Clerk shall not cease providing the Services during these Title III Cases for any reason without prior order of the Court authorizing Prime Clerk to do so; provided that Prime Clerk may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Oversight Board, the Debtors, the U.S. Trustee, and any statutory committee of creditors appointed, if any, in these cases by facsimile or overnight delivery; provided, further, that except as expressly provided herein, the Debtors and Prime Clerk may otherwise terminate or suspend other services as provided under the Engagement Agreement.

27.     The Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application and Engagement Agreement.

28.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

9

29. In the event of any inconsistency between this Order, the Engagement Agreement, and the Application, this Order shall govern.

30. Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2017
      San Juan, Puerto Rico

                         _____
                         Honorable Laura T. Swain
                         United States District Judge