# Exhibit G

Page 1 of 2

Case:17-03283-LTS   Doc#:113-8   Filed:05/15/17   Entered:05/15/17 14:33:34   Desc:
Exhibit G -- El Nuevo Dia March 2017   Page 2 of 3

ENGLISH VERSION

# COFINA Bondholders Head to Boston

They will appeal Judge Besosa's verdict, which allows the lawsuit of certain constitutional bondholders to be settled

Thursday, March 16, 2017 - 8:32 AM

By Joanisabel González



(GFR Media)

José F. Rodríguez, an individual investor, and several investment firms like Decagon Holdings, GoldenTree Asset Management, and Whitebox Advisors—who are the main bondholders of the Puerto Rico Sales Tax Financing Corporation (COFINA, by its Spanish acronym)—will appeal federal Judge Francisco A. Besosa's ruling in favor of several General Obligation (GO) bondholders, spearheaded by the Lex Claims and Jacana Holdings funds.

Rodríguez's intentions—and those of several investments funds—to appeal Besosa's ruling at the First Circuit Court of Appeals was disclosed on March 13. This is now the sole lawsuit against the Government that is currently active, after the approval of PROMESA last year, and in the midst of the automatic stay on litigations decreed by the federal statute. The plaintiffs are holding nearly $2 billion in COFINA senior notes.

According to the court's notice, Rodríguez and the funds led by Decagon will go to the federal court to request Besosa's ruling to be revoked. The Judge had agreed to see Lex's case in court, in spite of the request made by the main COFINA bondholders, the Government, and the Oversight Board (OB) to apply the automatic stay on litigations, just as he had done with another dozen actions.

On February 17, Besosa—who had previously ordered the Government not to lose any time and to start negotiating with its creditors—concluded that Lex's lawsuit should be examined on its merits. In short, the GO bondholders have asked Besosa to declare the Emergency Moratorium Act as unconstitutional. This was the statute that prompted Puerto Rico to default on the GO and other debt obligations. GO bondholders have also asked Besosa to ban the government from paying COFINA bondholders—who are essentially the only ones who continue receiving payments for the amount they are owed—, and to declare COFINA a null structure, since it served to divert the funds that belong to the central Government.

In his verdict, Besosa denied the Government's petition to halt the case and authorized the OB to intervene in the lawsuit, but he rejected the request made by COFINA's primary bondholders to be part of the lawsuit to determine if the stay on litigations is applicable or not.

After the decision, the OB quickly filed a motion to appeal Besosa's ruling, but the Government has yet to intervene—even if the Lex Claims lawsuit could result in certain State assets being frozen.  This would happen if Besosa determines that the Moratorium Act is unconstitutional and Lex Claims asks the court to protect the Government's assets until the debt is renegotiated.

**According to the case file at the Court of Appeals, the OB has until March 24 to submit several forms for the appeals process, lest it risk having its case dismissed.**

The move made by COFINA's primary bondholders was initiated the same day the OB approved a fiscal plan for PuertoRico, where an average of less than $800 million per year are set aside for the debt service between 2018 and 2026.

COFINA Under Attack.

Page 2 of 2

Case:17-03283-LTS   Doc#:113-8   Filed:05/15/17   Entered:05/15/17 14:33:34   Desc:
Exhibit G -- El Nuevo Dia March 2017   Page 3 of 3

Likewise, the appeal made by the group of COFINA's primary bondholders in the Lex Claims case arrives at a time when the GO bondholders have launched a media campaign asking for the elimination of the public corporation that issues debt payable with the Puerto Rico Sales and Use Tax (IVU, by its Spanish acronym).

Last week, Senate President Thomas Rivera Schatz and House Speaker Carlos "Johnny" Méndez backed COFINA and pointed out that the entity was lawfully created with the endorsement of both main political parties.

However, in the fiscal plan prepared by Ricardo Rosselló Nevares's administration and certified by the OB on Monday, the IVU funds that are sent every year to COFINA appear as part of the revenues the Government would use to pay for public services. In that sense, Rosselló Nevares's plan is an echo of what former Governor Alejandro García Padilla did, which was to combine all revenues that, according to the bond contracts, should have been reserved for the repayment of the debt.

According to Rosselló Nevares's plan, one of the revenues would be what is allocated to the General Fund—10.5% of the IVU—, but the plan also adds an allocation identified as "Additional IVU". In this allocation, which is referred to COFINA, the IVU allotments to foster the film industry and for the Municipality Financing Corporation add up to $850 million this fiscal year. The amount increases to $906 million in FY 2019, and continues to increase until it reaches $9.936 billion in 10 years.

**COFINA's Structure.**

During the last administrative term, and after Rosselló Nevares's arrival at Fortaleza, the group of COFINA's primary bondholders expressed their availability to restructure the debt—which is over $17.880 billion—and provide liquidity to the Government.

Last week, Matthew Rodrigue, an executive from Miller Buckfire & Co.—one of the firms that advises COFINA's primary bondholders, along with Quinn Emmanuel Urquhart & Sullivan, LLP—, told El Nuevo Día that the group had presented the Fiscal Agency and Financial Advisory Authority and the OB with the proposal that had been submitted during García Padilla's term.

Previously, the offer granted a moratorium on COFINA's payments and allowed the IVU revenues to be distributed between COFINA and the Government at the beginning of each fiscal year. But the proposal meant to postpone and register the payments for subordinate COFINA bondholders as a loss. Most of these bondholders were Puerto Rico residents.

On this occasion, however, Rodrigue explained that the new proposal avoids causing harm to the subordinate bondholders.

Moreover, the executive argued that COFINA's structure should not be altered because, in future debt renegotiation processes,it is possible that a (securitization) mechanism similar to the one used in COFINA would be needed. This could be the case, for example, in the Puerto Rico Electric Power Authority. Rodrigue pointed out that if COFINA's structure is altered or eliminated, Puerto Rico would negatively affect its probabilities of reaching agreements with other creditors.