# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re: **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** as representative of **THE COMMONWEALTH OF PUERTO RICO** Debtor | PROMESA TITLE III CASE NO. 17 BK 3283-LTS |
| In Re: **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** as representative of **PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")** Debtor | PROMESA TITLE III CASE NO. 17 BK 3284-LTS **(Joint Administration Requested)** |

### MUTUAL FUND GROUP'S OMNIBUS OBJECTION TO DEBTORS' FIRST DAY MOTIONS

**TO THE HONORABLE COURT:**

**COMES NOW** OppenheimerFunds, Franklin Advisers, Inc., and the First Puerto Rico Family of Funds, on behalf of certain managed funds (collectively, the "**Mutual Fund Group**"), hereby file this omnibus objection (the "**Objection**") to the motions filed by the Commonwealth of Puerto Rico and the Puerto Rico Sales Tax Financing Corporation ("**COFINA**," and together

KL2 3011278.9

with the Commonwealth, the "**Debtors**") seeking various forms of "first day" relief (the "**First Day Motions**"). In support of the Objection, the Mutual Fund Group respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Mutual Fund Group's members are holders of over $3.5 billion in accreted principal amount of uninsured bonds issued by COFINA, and over $3.6 billion of other uninsured bonds issued by the Commonwealth and other territorial instrumentalities, including over $1.8 billion in uninsured Commonwealth general obligation bonds. They collectively comprise the largest known group of COFINA bondholders and one of the largest creditor groups in the Commonwealth's Title III case.

2. The Mutual Fund Group's respective funds purchase and hold municipal bonds on behalf of hundreds of thousands of ordinary investors across the United States and Puerto Rico who invest in our funds to save for retirement, send their children to college, and for other important life expenses. The Mutual Fund Group has been investing in Puerto Rico for over 30 years.

3. Over the past several years, the Mutual Fund Group has attempted to engage the Commonwealth to discuss consensual resolutions of the financial and operational challenges faced by the Commonwealth and its instrumentalities. Together with smaller holders of bonds issued by the Puerto Rico Electric Power Authority, certain members of the Mutual Fund Group were able to negotiate a restructuring support agreement in December 2015 that will be implemented through a consensual PROMESA Title VI proceeding.[1]

---

[1] The Puerto Rico Electric Power Authority is a Puerto Rico municipality, but is not a debtor in these Title III proceedings.

4. Unfortunately, the Mutual Fund Group's repeated attempts to engage in constructive negotiations concerning debt of the two Title III debtors – the Commonwealth and COFINA -- have largely been met with silence from the Debtors.

5. Since January, the Mutual Fund Group has made several proposals that would provide the Commonwealth with billions of dollars of debt service relief. We were disappointed that the Commonwealth and Oversight Board did not extend any restructuring offer until their public offer of April 28 – a mere week before commencing a Title III case for the Commonwealth and then COFINA.

6. Since its creation in 2007, COFINA has provided Puerto Rico with a reliable, low cost source of financing by issuing bonds backed by sales tax revenue. COFINA owns the first revenues of Puerto Rico's sales and use tax, which are further pledged to its bondholders – including the Mutual Fund Group.

7. The viability of COFINA will be a major issue in these Title III cases. Puerto Rico's fiscal plan for fiscal year 2018 (commencing July 1, 2017) anticipates the use of COFINA revenues for general commonwealth purposes. However, by law COFINA receives those sales and use tax revenues approximating $120 million per month through approximately December 2017 to support the debt service payable on the COFINA bonds, and the failure to pay the COFINA debt service could have major long-term negative ramifications for Puerto Rico. Accordingly, we believe that the Court will need to address the COFINA issues before July 1.

8. In the meantime, the Commonwealth and COFINA have filed the First Day Motions, seeking (on shortened notice) various forms of relief that are ostensibly procedural in nature. The Mutual Fund Group does not object, in principle, to much of the relief that is sought. However, as set forth below, there are certain issues that must be addressed to (i) preserve the

rights of COFINA and its creditors, (ii) ensure that what is intended to be largely pro forma relief sought on an expedited basis at the outset of these cases does not prejudice substantive creditor rights, and (iii) facilitate the smooth and efficient administration of these cases.

9. The Mutual Fund Group therefore respectfully asks this Court to modify any relief granted on account of the First Day Motions in accordance with this Objection.

## OBJECTION

### I. Joint Administration Should be Conditioned on Protection of COFINA

10. The Debtors have moved for joint administration of the Commonwealth and COFINA cases under Bankruptcy Rule 1015. Rule 1015(b) provides in pertinent part:

> Prior to entering an order [of joint administration], the court shall give consideration to protecting creditors of different estates against potential conflicts of interest.

11. The Fiscal and Financial Advisory Agency ("AAFAF") by statute represents the Commonwealth **_and_** COFINA in this Title III. The Oversight Board appointed by the Puerto Rico Oversight Management and Economic Security Act of 2016 ("PROMESA") controls the Title III filings of both the Commonwealth and COFINA. The Commonwealth has already enacted legislation to divert COFINA's revenues to the Commonwealth, even though those revenues were irrevocably transferred to COFINA ten years ago and pledged to COFINA's bondholders.

12. The conflict between COFINA and the Commonwealth is manifest. COFINA cannot be counted on to protect its interests, and those of its creditors, because it is explicitly controlled by the Commonwealth which wants its revenues.

13. Therefore, the order of joint administration should order that creditors of COFINA shall have standing to appear and be heard on behalf of COFINA in the Commonwealth's Title III case on any matter benefitting the Commonwealth at the expense of COFINA, subject to further

order of the Court and without prejudice to the right of any party (including COFINA) to object to COFINA creditors' asserting COFINA's rights against the Commonwealth in such matter.

## II. Any Order Granting the Bank Transaction Motion Must Not Grant an Overly Broad Release

14. Any order entered in connection with the Bank Transaction Motion must avoid providing banks with broad releases of liability. The main goal of the Motion is to provide the Debtors' banks with notice that Bankruptcy Code section 363 does not apply to the Debtors' Title III cases. This could be accomplished by a simple statement to that effect.

15. But the Bank Transaction Motion goes much further, providing that the Banks (i) need not make any further inquiries relating to the Debtors' financial instructions, Proposed Order ¶ 3(b), and (ii) may execute transactions in reliance upon the Debtors' instructions "without incurring any liability therefor," *id*. ¶¶ 2, 3(b). These provisions, which appear to insulate the Banks from virtually any form of liability so long as they are acting in response to the Debtors' instructions, must be stricken or narrowed. An order meant to provide comfort that section 363 does not apply should not mislead a Bank into believing that it is relieved of existing obligations or duties, and any resulting liability therefor.

16. In particular, PROMESA § 407(a) provides that if property is transferred in violation of a pledge, the transferee is liable for the transfer. A bank which serves as an intermediate transferee may be liable under PROMESA. This is an issue which should be resolved after a full and fair opportunity to be heard, not as part of a first-day administrative order.

## III. Case Management Procedures Motion

17. Through their Case Management Motion, the Debtors propose to put in place certain procedures (the "**Proposed Procedures**") that would govern the Debtors' Title III cases. The Proposed Procedures are inadequate for several reasons.

18. First, the Proposed Procedures provide that future Title III cases will be procedurally consolidated with the Debtors' cases and will be governed by the existing case management procedures. Parties should be given notice and an opportunity to object to this relief upon the filing of any future Title III case.

19. Second, the Proposed Procedures do not allow parties to participate in hearings telephonically, as is customary in large bankruptcy cases – and as is particularly appropriate here, where many creditors and other stakeholders, along with their legal and financial advisors, are located outside of Puerto Rico.

20. Third, the Proposed Procedures do not create effective lists for notice purposes. The procedures purport to create two notice lists: (i) a broad "Master List" that consists of all parties that have filed a notice of appearance, and (ii) a more limited "Standard List" consisting of certain named parties. Proposed Procedures ¶ II.A & E. The Standard Parties, which already names the Debtors and the Oversight Board, should name the Mutual Fund Group, as the largest creditor group in these cases.

21. Finally, the Proposed Procedures do not establish fair procedures and deadlines relating to motion practice. To cure these defects, the Proposed Procedures should be amended to provide the following:

- The Debtors and any other party should be able to seek relief on an emergency or expedited basis upon either (i) conferring with the Standard Parties, or (ii) filing a motion for cause. Proposed Procedures ¶ III.B.

- The reply deadline for the Debtors, like the deadline for all other Parties, should be two calendar days before the hearing for the applicable hearing date. ¶ III.J.

- Where a hearing on a matter was properly noticed, but equivalent notice of a proposed settlement was not given (perhaps because the settlement was reached at the hearing itself), the Debtors should be required to confer with the Standard Parties on the terms of the settlement, and any proposed order, before presenting the order to the court. ¶ III.O.

- Prime Clerk should be required to post all pleadings to its public website, ¶ I.A, and post to its website and file with the court the Standard Party list and the Rule 2002 Parties list at least every 15 days, ¶ II.E.

- The deadline for the Debtors or other parties to file opposition to a stay relief motion should be seven days, and replies should be due two days prior to the hearing. ¶ III.P.

- Parties filing a lift stay should not waive rights under § 362(e). Instead, the motion should be held at the next omnibus hearing, which is considered a non-evidentiary preliminary hearing to determine whether a party opposing stay relief has satisfied its § 362(e) burden. A Debtor or other party may seek to extend stay beyond the 60-day period, § 362(e)(2), by motion on shortened notice for cause. ¶ III.Q.

22. Modifying the Proposed Procedures in this matter will promote a fair and efficient administration of the Debtors' title III cases.

### **RESERVATION OF RIGHTS**

23. The Mutual Fund Group hereby reserves the right to object in the future to the First Day Motions on any ground, and to amend, modify and/or supplement this Objection, including, without limitation, to object to the form of any proposed order submitted to the court in connection with the First Day Motions.

**WHEREFORE**, the Mutual Fund Group respectfully requests that the Court modify any relief granted on account of the First Day Motions in accordance with this Objection and grant the Mutual Fund Group such other and further relief as is necessary and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 15th day of May, 2017, I electronically filed the forgoing document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, today May 15th, 2017.

| | |
|---|---|
| **TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.**<br>P.O. Box 195383<br>San Juan, PR 00919-5383<br>Tel.: (787) 751-8999<br>Fax: (787) 763-7760<br><br>*s/ Manuel Fernández-Bared*<br>MANUEL FERNÁNDEZ-BARED<br>USDC-PR No. 204,204<br>E-mail: mfb@tcmrslaw.com<br><br>*s/ Linette Figueroa-Torres*<br>LINETTE FIGUEROA-TORRES<br>USDC-PR No. 227,104<br>E-mail: lft@tcmrslaw.com<br><br>*s/ Jane Patricia Van Kirk*<br>JANE PATRICIA VAN KIRK<br>USDC–PR No. 220,510<br>E-mail: jvankirk@tcmrslaw.com<br><br>*Counsel for the Mutual Fund Group* | **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Tel.: (212) 715-9100<br>Fax: (212) 715-8000<br><br>*s/ Amy Caton*<br>AMY CATON*<br>THOMAS MOERS MAYER*<br>PHILIP BENTLEY*<br>DAVID E. BLABEY, JR.*<br>DOUGLAS BUCKLEY*<br>Email: acaton@kramerlevin.com<br>        tmayer@kramerlevin.com<br>        pbentley@kramerlevin.com<br>        dblabey@kramerlevin.com<br>        dbuckley@kramerlevin.com<br>*(pro hac vice* application approval pending)<br><br>*Counsel for the Mutual Fund Group* |