IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

**OBJECTION OF PEAJE INVESTMENTS LLC TO THE
DEBTORS' PROPOSED NOTICE, CASE MANAGEMENT
AND ADMINISTRATIVE PROCEDURES**

Peaje Investments LLC ("Peaje"), by and through its undersigned attorneys, respectfully makes the following objections to the implementation of the notice, case management, and administrative procedures (the "Case Management Procedures") requested by the Commonwealth of Puerto Rico and COFINA (together, the "Debtors") in connection with the above-captioned cases pending under Title III of PROMESA.[1] The Case Management Procedures are attached as

---

[1] "PROMESA" refers to the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. 114-187.

23452906

Exhibit 1 to the proposed order accompanying the Debtors' motion [Dkt. No. 43] (the "Motion") requesting that the Court incorporate both the Case Management Procedures and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules") into these cases. Peaje does not oppose the Debtors' request to render the Local Bankruptcy Rules applicable to these cases, but submits that the proposed Case Management Procedures cannot be approved as currently drafted.[2] Peaje's specific objections are to (1) certain one-sided modifications to the provisions of Section 362 of the Bankruptcy Code and the deemed advance waiver of certain rights thereunder, (2) the one-sided channeling provisions requiring non-debtor parties to schedule hearings for omnibus hearing dates but imposing no such limitation on the Debtors, and (3) proposed restrictions on the scheduling of pre-trial conferences.

**Introduction**

1. Peaje has a vested interest in the efficient and orderly administration of these cases as a creditor of the Commonwealth and one of its instrumentalities, the Puerto Rico Highways & Transportation Authority ("HTA").[3] Peaje recognizes that the Court's adoption of appropriate case management procedures would likely aid in the administration of these cases and benefit all parties-in-interest. But, the procedural rules of the road must be fair—not only to the Debtors and the Oversight Board, but for all interested parties. Consequently, Peaje interposes the following limited objections.

---

[2] Peaje does, however, suggest that the Court may wish to suspend the operation of Local Bankruptcy Rule 5072-1, which provides that, unless leave is obtained in advance, "only one counsel for each party may conduct the examination of any one witness, present argument, or make objections with respect to the testimony of that witness," given that it is likely that, if that rule is not suspended, the Court will face a large volume of such requests.

[3] While HTA is not currently a debtor in these cases, Peaje fully expects that HTA will eventually file Title III in an attempt to restructure its debts. *See* REORGRESEARCH, *Commonwealth Officials Remain Optimistic on Reaching Voluntary Deals With Creditors Despite Title III Filings*, May 8, 2017, a copy of which is attached hereto as **Exhibit A**. The timing for that filing, however, is unknown to Peaje.

2

2. Peaje is the beneficial owner of more than $64 million in uninsured bonds issued by HTA pursuant to a binding municipal resolution adopted in 1968. For nearly a year, the Commonwealth and several of its officials have been diverting the proceeds of certain excise taxes and vehicle license fees that are pledged as collateral for Peaje's bonds, instead of turning those funds over to HTA for application to those bonds as required under the governing resolution and applicable law. At the same time, HTA has been continuously diverting certain toll revenues that it collects from its operations—which are also subject to a lien in favor of the bondholders—instead of depositing those funds into the bondholders' collateral account. Peaje's bonds are "limited-recourse" obligations, meaning they are ordinarily payable *solely* from the pledged revenues, and no other source. To the extent the diversion of Peaje's collateral continues, Peaje will not be paid in full on its bonds. Because the Commonwealth has, among other things, been diverting Peaje's collateral consisting of the pledged excise taxes and vehicle license fees, Peaje is a creditor of the Commonwealth and a party-in-interest in these Title III cases.

3. Recently, Peaje filed an action—captioned *Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority*, 3:17-cv-01612 (D.P.R.)—in the District Court for the District of Puerto Rico against HTA and its Executive Director. That action is currently pending outside of these Title III cases and seeks relief only with respect to HTA, its Executive Director, and the property of HTA consisting of Peaje's collateral, and not with respect to the Commonwealth, Commonwealth officials, or property of the Commonwealth. Nonetheless, Peaje fully expects to be an active participant in the Debtors' cases as a result of its other claims directly against the Commonwealth and various Commonwealth officials.

4. Peaje understands that the Court, the Debtors, and the Oversight Board likely will be exceptionally busy in light of the scope and complexity of these cases. The Debtors and the

3

Oversight Board, however, are represented by large, sophisticated law firms, who can appropriately staff these cases. In any event, there still needs to be a fair and balanced field for all concerned. Because the Debtors' proposed Case Management Procedures are in certain respects one-sided, and effectively nullify certain substantive rights of non-debtors such as Peaje, they cannot be approved as currently drafted.

**Objection**

5. The Debtors' proposed Case Management Procedures are flawed in the following ways:

6. *First*, the Case Management Procedures attempt to override the substantive rights of non-debtors such as Peaje with respect to motions for relief from the bankruptcy stays provided under Sections 362 and 922 of the Bankruptcy Code.[4] These sections provide stays of certain creditor actions upon the filing of the debtor's bankruptcy petition, but are counterbalanced by a number of "safety valve provisions" that protect the interests of creditors. *See In re Royal*, 137 F. App'x 537, 540–41 (4th Cir. 2005). As is relevant here, the creditor protections are found in subsections (e) and (f) of 11 U.S.C. § 362.

7. In particular, Section III, Paragraph Q of the proposed Case Management Procedures purports to waive in advance the rights of non-debtors under Section 362(e) of the Bankruptcy Code by providing that:

> Notwithstanding Bankruptcy Code section 362(e), if a Stay Relief Motion is scheduled in accordance with the Case Management Procedures for, or adjourned to a hearing date that falls on or after, the thirtieth (30th) day after the filing of the Stay Relief Motion, the moving party shall be deemed to have consented to the continuation of the automatic stay in effect pending the conclusion of, or as a result of, a final hearing and determination under Bankruptcy Code section 362(d) and shall be deemed to have waived its right to assert the termination of the automatic stay under Bankruptcy Code section 362(e).

---

[4] These provisions are applicable in Title III under Section 301 of PROMESA, 48 U.S.C. § 2161.

4

*See* Case Management Procedures § III, ¶ Q. This is improper because it effectively seeks to override the relevant statutory provisions through an inappropriate "deemed" waiver procedure. It is certainly true that creditors may, and often will, agree to the continuation of the automatic stay pending the conclusion of a final hearing on a lift-stay motion, most frequently to accommodate the Court's schedule and also the debtor's reasonable needs. The proposed provision, however, is objectionable because it takes away in advance the creditor's right to consent and, with it, the creditor's statutorily assigned position in negotiating with the debtor reasonable time frames that take into account the Court's scheduling needs.

8. Moreover, the proposed modification is not merely procedural; nor does it simply affect discretionary rights. Section 362(e) establishes two 30-day time periods in which the Court must hold hearings and issue orders respecting a party's motion for relief from the stay of acts against the debtor's property. *See* 11 U.S.C. § 362(e).[5] "These time constraints are an essential underpinning to the automatic stay provisions of the [Bankruptcy] Code," *In re Wedgewood Realty Grp., Ltd.*, 878 F.2d 693, 698 (3d Cir. 1989), and must be strictly enforced, *see id.*; *see also* H.R. REP. 95-595 ("[Section 362(e)] sets a time certain within which the bankruptcy court **must rule** on the adequacy of protection provided to the secured creditor's interest.") (emphasis added).

9. Likewise, the proposed Case Management Procedures would deprive non-debtors such as Peaje of their ability to seek expedited consideration of a motion for relief from stay. More specifically, the Case Management Procedures provide that, notwithstanding the availability of

---

[5] More specifically, Section 362(e)(1) requires the Court to hold a hearing on the movant's lift stay request within 30 days of the filing of the motion—otherwise, the stay is vacated without further action of the Court. *See* 11 U.S.C. § 362(e)(1). The Court may first hold a preliminary hearing and continue the stay in effect pending a final hearing, but only if it finds at the preliminary hearing that "there is a reasonable likelihood that the party opposing [the] relief…will prevail at the conclusion of such final hearing." *Id.* The final hearing must be concluded within 30 days of the preliminary hearing, unless there are "compelling circumstances" requiring more time, or the parties consent otherwise. *See id.*

5

emergency relief with respect to other types of pleadings, "a motion for relief from the automatic stay…shall be noticed for consideration on the Omnibus Hearing Date that is at least 21 days after the…motion is filed and notice thereof is served…." *See* Case Management Procedures § III, ¶ P. That provision is in direct conflict with Section 362(f) of the Bankruptcy Code, which requires the Court to grant the movant emergency, *ex parte* relief from the bankruptcy stays to the extent that the movant's property interest would be irreparably damaged before there is an opportunity for notice and a hearing. *See* 11 U.S.C. § 362(f).

10. Congress obviously intended for Sections 362(e) and (f) to serve as a counterbalance to the protections afforded the debtor. The Debtors cannot simply rewrite Congress's statutory directives under the guise of a case administration order. Nor should the Debtors be able to secure the waiver of such important bankruptcy rights without even seeking, let alone obtaining, the affirmative consent of the affected parties. *Cf. In re 203 N. LaSalle St. P'ship*, 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000) (declining to enforce the waiver of important bankruptcy rights under a prepetition agreement); *In re Hart Ski Mfg. Co.*, 5 B.R. 734, 736 (Bankr. D. Minn 1980) (same). In any event, Peaje does not consent to the waiver of its rights under the Bankruptcy Code in this manner. Thus, the Court should, at a minimum, strike the aforementioned provisions from the Debtors' proposed Case Management Procedures.

11. *Second*, the proposed Case Management Procedures are in certain respects one-sided in favor of the Debtors and the Oversight Board. For example, Section III, Paragraph B of the Case Management Procedures allows the Debtors to notice motions and other requests on dates other than the scheduled omnibus hearing dates. *See* Case Management Procedures § III, ¶ B. In contrast, non-debtors such as Peaje must notice their pleadings for an omnibus hearing date as the default rule, and can only notice the motion for a different hearing date upon consent of the Debtors

and the Oversight Board, or if there is an emergency basis for the request. *See id.* Likewise, the procedures governing requests for emergency relief are different for Debtors and non-debtors. *Compare* Case Management Procedures § III, ¶ D *with* ¶ E. Among other things, non-debtors such as Peaje must obtain an order to show cause before proceeding with an emergency motion (despite the procedures requiring the parties to first seek the Court's ruling in Chambers that there is an emergency basis for the request), whereas the procedures dispense with that requirement for the Debtors. *Id.* At the very least, these provisions should be conformed so that non-debtors receive the same benefits and protections as the Debtors and the Oversight Board.

12. *Third*, the proposed Case Management Procedures would unnecessarily hamper the Court's administration of its docket and potentially delay the consideration of important matters. Section III, Paragraph B of the Case Management Procedures provides that "the initial pre-trial conferences scheduled in connection with adversary proceedings involving the Debtors shall be set on the next available Omnibus Hearing date that is at least 45 days after the filing of the complaint[.]" *See* Case Management Procedures § III, ¶ B. The governing rules of procedure, however, leave it to the Court's discretion to schedule any pre-trial conferences. *See* FED. R. BANKR. P. 7016; FED. R. CIV. P. 16. There is no good reason here to upend that procedural status quo. The Court is capable of managing its own docket based on the facts and circumstances before it, and need not tie its hands at the outset. Accordingly, this provision should be stricken.

**WHEREFORE**, Peaje respectfully requests that the Court (x) sustain the foregoing objections to the Debtors' proposed Case Management Procedures, and (y) grant such further relief to Peaje as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 15th day of May, 2017.

| **MONSERRATE SIMONET & GIERBOLINI, LLC** | **DECHERT LLP** |
|---|---|
| _____ <br> Dora L. Monserrate Peñagarícano <br> USDC 212612 <br> 101 San Patricio Avenue <br> Maramar Plaza, Suite 1120 <br> Guaynabo, Puerto Rico 00968 <br> Phone: (787) 620-5300 <br> Fax: (787) 620-5305 | Allan S. Brilliant (*pro hac vice* pending*)* <br> Robert J. Jossen (*pro hac vice* pending*)* <br> Andrew C. Harmeyer (*pro hac vice* pending*)* <br> 1095 Avenue of the Americas <br> New York, New York 10036 <br><br> -and- <br><br> G. Eric Brunstad, Jr. (*pro hac vice* pending) <br> 90 State House Square <br> Hartford, Connecticut 06103 |

*Attorneys for Peaje Investments LLC*