ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

| | |
|---|---|
| HON. ROSSANA LÓPEZ LEÓN, SENADORA POR ACUMULACIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Demandante<br><br>V.<br><br>HON. RICARDO ROSELLO NEVARES, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; GERARDO PÓRTELA FRANCO, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL DE PUERTO RICO; HON. WANDA VÁZQUEZ GARCED, SECRETARIA DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Demandados | CIVIL NÚM.: SJ2017CV00107<br><br>SALA: 904<br><br>SOBRE:<br><br>SOLICITUD DE MANDAMUS |

## MOCIÓN DE DESESTIMACIÓN

AL HONORABLE TRIBUNAL:

COMPARECE el **Gobierno de Puerto Rico** (en adelante "Estado") por sí y en representación del **Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares**, exclusivamente en su carácter oficial, por conducto de la representación legal que suscribe y muy respetuosamente **EXPONE, ALEGA y SOLICITA**:

### I. INTRODUCCIÓN

1. La demanda de autos fue presentada por medio del Sistema Unificado de Manejo y Administración de Casos (SUMAC) el día 30 de marzo de 2017.

2. El 31 de marzo de 2017, el Gobierno de Puerto Rico fue emplazado con copia de la demanda y con Orden dictada por este Tribunal mediante la cual señala vista para este próximo lunes 10 de abril de 2017, para dilucidar la procedencia del recurso extraordinario solicitado.

3. Toda vez la parte demandante carece de legitimación para presentar la demanda de autos, solicitamos a este Tribunal decrete la desestimación de este recurso.

### II. BREVE ALEGACIONES DE LAS PARTES

4. La parte demandante, **en su capacidad oficial como Senadora por Acumulación del Estado,** presenta la demanda de autos alegando, de manera equivocada, que procede que este Tribunal emita contra el Gobernador de Puerto Rico el recursos altamente privilegiado de

1

mandamus para compeler la entrega de: *"...los documentos, estudios, informes, memorandos, cartas, análisis, estudios actuariales, informes de proyecciones de recortes e ingresos, gastos e inversiones utilizados para la confección del Plan Fiscal para Puerto Rico."*

5. Alega la parte demandante que dichos documentos le son esenciales para poder llevar a cabo sus facultades legislativas como Senadora y miembro del cuerpo que pasará juicio sobre las medidas que instrumentarán el Plan Fiscal y para fiscalizar al Gobierno.

6. Lo anterior, aun cuando del Reglamento del Senado surge cuál es el procedimiento que tiene que seguir un Senador para solicitar documentos a las entidades gubernamentales. La posición del Estado es que la parte demandante carece de legitimación activa ("standing") para acudir a los tribunales a solicitar información a una Agencia Gubernamental en representación del Cuerpo o en su capacidad oficial, cuando existen procesos legislativos a esos efectos que está obligada a seguir.

7. No le es permitido a un legislador demandar usando como pretexto que supuestamente se le han afectado sus prerrogativas como legislador, cuando lo único que se alega es que tiene dificultad como funcionario político para "fiscalizar" la obra legislativa, al partido de oposición, y mucho menos a la otra rama política del gobierno

8. Toda vez la parte demandante tiene a su alcance otro recurso adecuado y eficaz en el curso ordinario de los procedimientos parlamentarios es improcedente el vehículo procesal de *mandamus*. A ello debe añadirse el hecho de la falta de precisión en la solicitud de la parte demandante que siquiera deja claro cuales documentos en específico son los que se alega que existen y no se han entregado.

9. Sostenemos que en el presente pleito procede la desestimación de la demanda, toda vez que la parte demandante carece de legitimación activa para incoar la presente reclamación, no se cumplen los requisitos estatutarios para la expedición de un *mandamus* y conceder el reclamo de la parte demandante requeriría intervenir indebidamente con la funciones del Primer Ejecutivo y de la Asamblea Legislativa en violación de la separación de poderes.

10. En este caso, avalar la actuación del demandante violaría claramente el Principio Constitucional de Separación de Poderes, que protege a la Rama Judicial de envolverse innecesariamente en asuntos estrictamente políticos y, que a su vez, protege a las otras dos Ramas de Gobierno del menoscabo de sus poderes como entes separados. Como ya expusimos, si se le permite pasar por alto el proceso legislativo dispuesto en el Reglamento

2

del Senado y la norma dispuesta en el Código Político, se sentaría un precedente nefasto que soslayaría el equilibrio justo que debe imperar entre las tres ramas del gobierno.

## II. DISCUSIÓN DEL MARCO LEGAL APLICABLE

### A. RAZONES PARA DESESTIMAR LA CAUSA DE ACCIÓN

La Regla 10.2 de las de Procedimiento Civil de Puerto Rico de 2009, 32 LPRA Ap. V, R. 10.2, permiten al demandado solicitar al tribunal que se desestime la demanda en su contra, entre otros fundamentos, cuando esta no exponga una reclamación que justifique la concesión de un remedio. La citada Regla, en lo pertinente, dispone que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.
>
> Ninguna defensa u objeción se considerará renunciada por haberse formulado conjuntamente con otra u otras defensas u objeciones en una alegación responsiva o moción. Si en una alegación se formula una reclamación contra la cual la parte no está obligada a presentar una alegación responsiva, dicha parte podrá mantener en el juicio cualquier defensa de hechos o de derecho contra tal reclamación. Si en una moción en que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. Id.

Por su parte, la Regla 10.6 establece que "las defensas indicadas del (1) al (6) en la Regla 10.2, que deban presentarse o estén presentadas mediante alegación o por moción, la moción para que se dicte sentencia mencionada en la Regla 10.3 y la moción eliminatoria mencionada en la Regla 10.5, se dilucidarán en los méritos en o antes de la conferencia inicial".

Al resolver una moción para desestimar una demanda por dejar de exponer hechos que justifiquen la concesión de un remedio, el deber del tribunal no es determinar los méritos finales de la reclamación que se hace en la demanda. Su deber, más bien, es considerar si, a la luz de la situación más favorable para el demandante y resolviendo toda duda a favor de este, la demanda expone una reclamación válida. *Véase Sierra v. Bird,* 78 DPR 170 (1955); *Cruz v. Ortiz*, 74 DPR 321 (1953); *Boulon v. Pérez,* 70 DPR 988 (1950); *Bosh v. Editorial El Imparcial, Inc.*, 87 DPR 285, 315 (1963).

3

La demanda que nos ocupa debe desestimarse sin más ya que la misma no es justiciable y no cumple con los requisitos para la expedición de un recurso altamente discrecional como lo es un *mandamus*.

## B. LA CONTROVERSIA NO ES JUSTICIABLE

Es axioma básico de nuestro ordenamiento jurídico que, para poder vindicarse válidamente una controversia ante el foro judicial, es necesario que la misma cumpla con los requisitos mínimos de justiciabilidad, según establecidos en nuestro derecho constitucional. Ante la ausencia de tales requisitos, un reclamante se ve impedido de solicitar el auxilio del Foro Judicial, pues su reclamo carece de los méritos exigidos. Los tribunales de justicia requieren la existencia de un caso o controversia real para el ejercicio válido de su poder judicial. Esta limitación al Poder Judicial se da dentro del contexto de nuestro sistema adversativo de derecho, el cual establece que los tribunales sólo pueden decidir cuestiones presentadas en un contexto de naturaleza adversativa y de que la Rama Judicial no debe intervenir en áreas sometidas al criterio de otras Ramas de Gobierno. Así ha sido firmemente establecido en nuestro ordenamiento jurídico que un **asunto no es justiciable cuando:** (1) se trata de resolver una cuestión política; **(2) una de las partes no tiene capacidad jurídica para promover un pleito (legitimación activa o standing);** (3) un pleito ya comenzado se torna académico; (4) las partes desean obtener una opinión consultiva, y (5) se promueve un pleito que no está maduro. *Noriega v. Hernández*, 135 DPR 406 (1994).

Es doctrina reiterada de nuestro estado de Derecho que, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas." *E.L.A. v. Aguayo,* 80 DPR 552, 558 (1958). Específicamente, la controversia debe ser: (1) definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) real y substancial que permita un remedio específico mediante una sentencia de carácter concluyente; y (3) propia para una determinación judicial y se distingue de una disputa de carácter hipotético o abstracto y de un caso académico o ficticio. Al mismo tiempo, se ha establecido que,

> [l]os tribunales deben ser celosos guardianes de su jurisdicción, y están obligados, incluso, a considerar dicho asunto *motu proprio*. La jurisdicción, fuente principal de la autoridad de los tribunales para interpretar y hacer cumplir las leyes en nuestro sistema de derecho, se halla gobernada por la aplicación de las diversas doctrinas que dan vida al principio de justiciabilidad [...] Por ello, previo a entrar en los méritos de un caso, hay que determinar si la

4

controversia es justiciable. *Sánchez v. Secretario de Justicia,* 157 DPR 360 (2002).

A la luz de lo anterior, como asunto primordial un tribunal debe cuestionarse si el caso plantea una controversia justiciable. El propósito de esta limitación judicial es salvaguardar la función de la Rama Judicial, evitando convertirla en un mero ente que emita determinaciones que a todas luces carecerían de mérito alguno. A su vez, esta doctrina pretende la protección de nuestro sistema constitucional. En el caso de autos ante la falta de legitimación activa de la parte demandante, procede sin más la desestimación con perjuicio de la demanda de autos.

La parte demandante alega en su recurso que el hecho que no se le hayan entregado al momento los documentos solicitados lacera su derecho a la información, particularmente sus derechos y prerrogativas **como Senadora**[1], que pasará juicio sobre las medidas que instrumentan el Plan Fiscal. Además, arguye afecta su responsabilidad inherente **como Senadora** de fiscalizar a la Rama Ejecutiva. No le asiste la razón a la parte demandante. Veamos.

### *Falta de Legitimación Activa de la Parte Demandante*

Toda vez que la falta de legitimación activa de la parte demandante dispone del presente recurso, discutimos la misma antes de atender los méritos del presente caso.

Un caso no es justiciable si se trata de un asunto que no es susceptible de resarcimiento judicial. *Acevedo Vila v. Meléndez Ortiz,* 164 DPR 875 (2005) ("los tribunales únicamente pueden resolver asuntos que surgen de un contexto adversativo capaz de ser resuelto judicialmente"); *Noriega v. Hernández Colón,* 135 DPR 406, 421 (1994). ("La controversia planteada ante los tribunales debe ser una […] que permita un remedio específico mediante una sentencia de carácter concluyente."). Por ello, se ha resuelto que una parte carece de legitimación activa cuando plantea la existencia de un daño que no pueda ser resarcido judicialmente. Wright & Miller, 13 Fed. Prac. & Proc. Juris.2d § 3531.6 ("the threshold requirement of standing has been defined as 'actual injury redressable by the court.'"); David R. Dow, The Equal Protection Clause and The Legislative Redistricting Cases-- Some Notes Concerning The Standing Of White Plaintiffs, 81 Minn. L. Rev. 1123, 1134 (estableciendo la distinction entre un "judicially cognizable injury" y un "politically redressable injury").

A tenor de la doctrina de legitimación activa, la parte demandante debe demostrar: (a) que ha sufrido un daño claro, real, preciso y palpable, no abstracto ni hipotético; (b) que existe

---

[1] Véase ¶ 18 de la Demanda.

5

un nexo causal entre su causa de acción y el daño que alega; y (c) que su causa de acción surge al amparo de la Constitución o de alguna ley. *Hernández Torres v. Hernández Colón*, 131 DPR 593, 599 (1992). Ante la ausencia de un daño real, los tribunales deben abstenerse de adjudicar la reclamación porque lo contrario crearía un potencial de abuso del proceso judicial y distorsionaría la función de la Rama Judicial en su relación con las Ramas Ejecutiva y Legislativa. *Fundación Arqueológica v. Depto. de la Vivienda*, 109 DPR 387, 392 (1980). *Véase*, también, *Acevedo Vila v. Meléndez Ortiz*, supra. De hecho, únicamente una parte realmente interesada tiene derecho al remedio del *mandamus*. No basta alegar un interés general, supuestamente compartido con los demás ciudadanos de Puerto Rico, para que determinado funcionario cumpla con su deber. Se requiere tener un interés real, es decir, que el incumplimiento del deber de parte del funcionario, le causa algún perjuicio o inconveniente al que interesa el *mandamus*. Véase, R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 5ta ed., Puerto Rico, LexisNexis, 2010, Sec. 5805, pág, 546.

A la luz de lo anterior, es forzoso colegir que la parte demandante no tiene legitimación activa. Lo solicitado por la parte demandante solo puede ser resarcible en la esfera política. No puede entonces la parte demandante alegar que ha sufrido un daño preciso y concreto que amerite la intervención judicial.[2] Tampoco ha demostrado la parte demandante que haya sufrido algún perjuicio por no tener en su poder la información solicitada. Su reclamo está fundado en un alegado interés público. Es decir, su reclamo se basa en un supuesto interés en conjunto con el resto de los ciudadanos. Ese no es el interés que nuestro ordenamiento exige para conceder un mandamus.

### *Falta de Standing "Especial" como Legisladora para tratar de vindicar un derecho estrictamente político de poder "Fiscalizar"*

De una mera lectura de la demanda es evidente que la comparecencia de la demandante en la misma es en su capacidad oficial como Senadora por Acumulación, así incluso surge del epígrafe de la demanda. A su vez, resulta pertinente notar que la propia parte demandante plantea que el derecho a obtener la información que solicita es parte de sus funciones como legisladora. Pero más aún, no cabe duda que el requerimiento previo de información hecho por la demandante, fue claramente en su capacidad oficial como Senadora y que sus alegaciones son a los efectos de que dicha información resulta necesaria como parte de sus funciones.

---

[2] *Véanse, en general*, Nancy C. Staudt, *Constitutional Politics and Balanced Budgets*, 1998 U. Ill. L. Rev. 1105, 1166 (1998); G. Aynesworth Crosthwait, *Article III Problems in Enforcing the Balanced Budget Amendment*, 83 Colum. L. Rev. 1065, 1073-1082 (1983).

6

En otras palabras, la parte demandante hizo su solicitud en su capacidad oficial de Senadora del Senado de Puerto Rico. Por lo cual, estamos forzados a concluir que el recurso de epígrafe consiste en una solicitud indebida de información, toda vez que existe un procedimiento dispuesto en el Reglamento del Senado para peticiones de los legisladores en su carácter oficial. La parte demandante pretende extender el debate legislativo a la rama judicial.

En el caso normativo de *Hernández Torres v. Hernández Colón et al.*, 131 DPR 593, 599 (1992), se estableció que los legisladores no tienen ningún *standing* "especial" para acudir a los tribunales bajo pretexto de querer "fiscalizar" a otra rama de gobierno, y que un legislador, sea de mayoría o de minoría, no tiene ningún *standing* automático para demandar en representación de sus votantes o ni siquiera del interés público. Es decir, no le es permitido a un legislador demandar usando como pretexto que supuestamente se le han afectado sus prerrogativas como legislador, cuando lo único que se alega es que tiene dificultad como político para "fiscalizar" la obra legislativa, al partido de oposición, y mucho menos a la otra rama política del gobierno. "El legislador, antes de acudir al tribunal, deberá agotar todos los remedios que tenga a su disposición para lograr que se le permita y reconozca su derecho a fiscalizar". Id., pág. 602.

Salvo circunstancias extraordinarias, un legislador tiene que poder demostrar que se le han lesionado sus derechos constitucionales de ejercer sus prerrogativas de legislador. Id. De lo contrario, cualquier legislador pudiese demandar a base del interés abstracto de "fiscalización", y la jurisprudencia dice que los tribunales deben tratar de evitar que el debate puramente político-partidista se traslade a las salas del Tribunal, pues ello trastocaría la separación de poderes, inmiscuyendo a la rama judicial en el debate puramente político, y convirtiendo la sala judicial en el "floor" de la Asamblea Legislativa. Id.

La norma prevaleciente en los tribunales federales y estatales es que los legisladores no tienen legitimación en representación de sus votantes o del interés público, los legisladores tienen que demostrar un daño claro y palpable y cumplir con los mismos criterios de legitimación aplicables a ciudadanos particulares. Su posición como legisladores tampoco les permite obtener un remedio judicial basándose únicamente en la alegación de un daño indirecto o que lo hacen para evitar un perjuicio general. *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208 (1974), según citado en *Hernández Torres v. Hernández Colón*, 129 DPR 824 (1992).

Según surge de la jurisprudencia antes mencionada, la parte demandante no tiene "standing" toda vez que una mera alegación general de que sus funciones legislativas se pudiesen

7

ver afectadas no es suficiente. Tiene que demostrar específicamente cómo se están lesionando sus prerrogativas legislativas y probar que no tuvo los instrumentos necesarios e igualdad de oportunidades en todas las etapas significativas del proceso legislativo. No existe planteamiento en la demanda de autos a los efectos de que no haya podido defender sus posturas o participar a plenitud del proceso legislativo. *Hernández Torres v. Gobernador*, supra, pág. 843.

El Tribunal puede tomar conocimiento de que esta no es la primera vez que legisladores "intentan trasladar el debate legislativo de la arena política al foro judicial". Id. A esos efectos, en el caso de *Hernández Torres v. Hernández Colón*, supra, el entonces Honorable Juez Presidente Hernández Denton dictaminó lo siguiente:

> A través de todo el desarrollo doctrinal se entiende que los legisladores lo que realmente pretenden al reclamar legitimación activa a base de un perjuicio general es que los tribunales revoquen una decisión aprobada mayoritariamente en un proceso democrático en que no ha habido menoscabo alguno de sus prerrogativas legislativas. **Por entender que este reclamo es esencialmente una excusa de los legisladores, para trasladar el debate legislativo de la arena política al foro judicial,** se rechaza en todas las jurisdicciones que los legisladores tengan acción legitimada para demandar en representación de interés público para impugnar estatutos aprobados por la asamblea legislativa:
>
> In congressional lawsuits against the Executive Branch, a concern for the separation of powers **has led this court consistently to dismiss actions by individual congressmen whose real grievance consists of their having failed to persuade their fellow legislators of their point of view, and who seek the court's aid in overturning the results of the legislative process.** Barnes v. Kline, 759 F.2d 2128 (D.C. Dir. 1984).
>
> **En este tipo de acción no se trata de una demanda incoada por el legislador para vindicar su interés personal en cuanto al ejercicio de sus prerrogativas legislativas, tanto directa como derivada.** Tribe, American Constitutional Law, 2d. Ed., supra, pág. 150; Kennedy v. Simpson, 511 F.2d 430 (1973); Harrington v. Bush, supra; Moore v. House of Representative, 733 F.2d 946 (1984); Witchell v. Saird, 438 F.2d 611 (1973); Williams v. Phillips, 360 F.Supp 1363 (1973). **Simplemente, se trata de situaciones donde los litigantes no logran persuadir a sus colegas de los méritos de su posición y recurren al foro judicial para impugnar la validez del estatuto aprobado por los cuerpos legislativos, no empece a sus objeciones. En estas circunstancias la intervención judicial afectaría el delicado balance del esquema de separación de poderes.** Véase, Bickel, The Passive Virtues, 75 Harv. L. Rev. 40 (1961); Gunther, The Subtle Vices of the "Passive Virtues". A Comment on Principle and Expediency in Judicial Review. 64 Colum. L. Rev. 1 (1964).
>
> **Courts are justifiably cautious when individual congressmen seek to vindicate political rights as legislators. Indiscriminately entertaining congressional-plaintiff suits could lead to potential misuse of the courts by congressmen. It would encourage congressmen to bypass the political process to alter thereby a carefully developed balance between Congress and the**

8

> **President, and perhaps to inhibit their harmonious relations. In addition, a permissive approach to congressional standing might require continual intolerable supervision by the judiciary of the workings of government. The powers of the President and Congress would be subject to constant judicial scrutiny, thus giving courts an inordinate amount of power over the elected branches. Finally, courts inevitably would upset the normal legislative process if they agreed to intervene in intra legislative disputes.** Note, The Justiciability of Congressional-Plaintiff Suits, 82 Colum. L. Rev. 526, 528 (1982). Véase, además, Note, Equitable Discretion to Dismiss Congressional-Plaintiffs Suits: A Reassessment, 40 Case W. Res. L. Rev. 1075 (1990).

129 DPR 824, 841 (énfasis suplido.)

El Tribunal Supremo de Puerto Rico ha sido enfático al resolver que un representante o senador no podrá acudir al tribunal para trasladar a éste su debate legislativo. *Hernández Torres v. Hernández Colón,* supra. Por imperativo decisorio debemos concluir que tampoco tiene facultad para acudir a los tribunales un legislador a cuestionar una determinación tomada dentro de los procedimientos parlamentarios por el Cuerpo.

En el caso *Hernández Torres v. Hernández Colón et al.,* supra, se reiteró la normativa sentada previamente a los efectos de que un legislador *no* podrá acreditar su legitimación activa con sólo alegar que sus prerrogativas legislativas se veían afectadas por no permitírsele fiscalizar adecuadamente la obra legislativa y se indicó que esta función fiscalizadora sólo envolvía "los mecanismos razonables y necesarios que [hicieran] viabl[e] su participación plena en todas las etapas críticas del proceso legislativo". Conforme a ello, es evidente que no se le está causando un daño claro e inmediato a las prerrogativas legislativas de la demandante; que ésta no está privada de ejercer su voto en contra de aquella legislación que a su juicio sea perjudicial para el País ni de convencer a los demás legisladores de los defectos de tal legislación. Por lo que la demandante no puede trasladar al foro judicial lo que se supone sea parte del proceso legislativo válido.

El segundo problema que tiene la parte demandante en este caso, es que su actuación es claramente contraria a las Reglas parlamentarias; y, que no tiene ninguna autoridad legal para reclamar tener un poder legislativo para "requerir documentos" a la Rama Ejecutiva como Senadora de la Asamblea Legislativa, sin agotar los procedimientos que se disponen en la Rama Legislativa, o peor aún en contravención con una determinación tomada por el Cuerpo.

**La posición del Estado es que la parte demandante no tiene standing para acudir a los tribunales a solicitar información a una Agencia Gubernamental en su capacidad**

9

**oficial**, cuando existen procesos legislativos, para evaluar este tipo de peticiones, los cuales la Senadora conoce, se sometió y cuya petición fue llevada al Pleno del Senado y derrotada. Tenemos que considerar el efecto de que todos los representantes (51) y senadores (30) de manera individual (81 en total) hicieran requerimientos directos a las dependencias gubernamentales del Estado, pero aun que pretendieran recurrir a los tribunales a cuestionar las determinaciones tomadas por los cuerpos legislativos.

Los cuerpos legislativos pueden adoptar reglas de gobierno interno como corolario del poder inherente de controlar sus procedimientos. Las cámaras legislativas tienen poder expreso, a tenor con el Artículo III, sección 9 de la Constitución de Puerto Rico[3], para adoptar reglas para sus procedimientos y gobierno interno.

El Reglamento del Senado de Puerto Rico fue adoptado mediante la R. del S. 13 de 9 de enero de 2017 (Reglamento). El Reglamento establece las reglas que regirán los procedimientos legislativos y el gobierno interno del Senado. Regla 1. de la R. del S. 13. No debe haber controversia en cuanto a que a la parte demandante, como Senadora, le aplica el Reglamento. Sec. 1.4 (a) de la Regla 1.[4]

La Regla 13 del Reglamento establece las facultades que tienen las Comisiones Permanentes del Senado. Así, en la Sección 13.1 b. de la Regla 13 del Reglamento se dispone que las Comisiones Permanentes del Senado tendrán la facultad de: "[c]elebrar audiencias públicas y reuniones ejecutivas, citar testigos, oír testimonios, inclusive bajo juramento, y solicitar **toda aquella información documental o de cualquier otra naturaleza** que estime necesaria para su gestión."

Por su parte la Sección 13.14 de la Regla 13 faculta solamente al Presidente del Senado y los Presidentes de Comisiones Permanentes o Especiales, a expedir órdenes de citación a cualquier persona o entidad para que comparezca a declarar, suministrar información o entregar cualquier evidencia documental o física, o ambas cosas, dentro de un proceso de investigación,

---

[3] Const. E.L.A., Art. III, Sec. 9, 1 L.P.R.A. La referida disposición constitucional lee de la forma siguiente: Cada cámara será el único juez de la capacidad legal de sus miembros, de la validez de las actas y del escrutinio de su elección; elegirá sus funcionarios, adoptará las reglas propias de cuerpos legislativos para sus procedimientos y gobierno interno; y con la concurrencia de tres cuartas partes del número total de los miembros de que se compone, podrá decretar la expulsión de cualquiera de ellos por las mismas causas que se señalan para autorizar juicios de residencias en la Sección 21 de este Artículo. Cada cámara elegirá un presidente de entre sus miembros respectivos. (Énfasis suplido).
[4] Esta sección dispone que el Reglamento es aplicable "[a] **todos los Senadores y Senadoras**, funcionarios y empleados del Senado, a las Comisiones Permanentes y Especiales, y a cualquier otra oficina u organismo adscrito al Senado o bajo el control de éste. Las Comisiones Conjuntas se regirán de conformidad con las disposiciones que adopte la Asamblea Legislativa al 19 respecto." (Énfasis suplido.)

10

conforme a lo dispuesto en los Artículos 31 a 35, inclusive, del Código Político, según enmendado, (9 LPRA Secs. 151-154)."

Además, la Sección 18.2 de la Regla 18 del Reglamento establece cómo se debe solicitar la información o documentación en el Senado de Puerto Rico. A estos fines, dispone que **cualquier Senador o Senadora** que solicite información a "cualquiera de las Ramas del Gobierno, sus dependencias, subdivisiones u oficinas, así como a los funcionarios o empleados de éstas" deberá presentar una petición verbal o escrita ante el Cuerpo para que éste, a nombre del Senado, solicite información. Dicha Sección pormenoriza el trámite para la solicitud de información a agencias gubernamentales, y conforme al mismo, en caso de incumplimiento con algún requerimiento, lo que procede es notificar al Cuerpo **para que éste adopte las medidas que correspondan** para compeler al cumplimiento de lo ordenado en la petición. A estos efectos, el Cuerpo, representado por el Presidente del Senado, **no un Senador individual,** podrá, incluso, acudir al Tribunal, conforme a las disposiciones de ley aplicables. De no prosperar la solicitud del Senador solicitante el Reglamento en su Sección 18.2 dispone: *"De haber objeción en el Cuerpo a la petición planteada por el Senador, la misma se llevará a votación sin debate."* Surge de la certificación que acompañamos a nuestro escrito que la petición de la Senadora López pasó a votación y la misma fue derrotada a viva voz. Véase Exhibit I. El Reglamento en ninguna parte dispone que del Senador no prevalecer en su petición podrá trasladar el debate político a los Tribunales de Justicia.

Ello resulta consistente con la Regla 6, Sección. 6.1 que establece que el Presidente del Senado será el jefe ejecutivo del Cuerpo y establece la facultad **del Presidente del Senado** para radicar a nombre del Senado "aquellas acciones judiciales en las cuales él estime que puedan afectarse los derechos, facultades y prerrogativas del Senado, sus funcionarios, Comisiones y los funcionarios de éstas, en el desempeño de sus gestiones legislativas."

Por su parte, el Artículos 31 del Código Político de Puerto Rico establece que serán <u>los Presidentes de la Asamblea Legislativa, o el de alguna Comisión</u>, los que tienen autoridad en ley para "expedir" las citaciones para que comparezcan testigos y para requerir que se produzcan documentos. 2 LPRA sec. 151.[5] Así igualmente, limita el Código Política la faculta para

---

[5] Artículo 31 del Código Político, 2 L.P.R.A. § 151 (Expedición y forma de la citación):
(a) Toda citación requiriendo a un testigo para que comparezca ante la Asamblea Legislativa, la Cámara de Representantes, el Senado, o una comisión o subcomisión de cualquiera de dichos cuerpos, o una comisión o subcomisión conjunta de ambos cuerpos, con el propósito de declarar, o de producir o entregar documentos u

11

comparecer al Tribunal al Presidente o Vicepresidente de cualquiera de dichos organismos legislativos para solicitar la ayuda de la Sala Superior de San Juan para requerir la asistencia y la declaración de testigos **y la producción y entrega de documentos u objetos, solicitados**. 2 LPRA 154a.

En ninguna parte de la Demanda se alega que la Senadora demandante sea Presidenta de alguna Comisión, tampoco Presidenta del Senado. Bajo la ley, sería precisamente el Presidente del Senado o el de la Cámara quienes tendrían *standing* para requerir la documentación en cuestión en este caso.

De lo contrario, se sentaría un precedente nefasto. No es difícil imaginar la posibilidad de que la Rama Ejecutiva estaría sujeta a múltiples requerimientos casi diariamente, por parte de los 81 legisladores, de mayoría o minoría, sin ningún tipo de restricción, orden o exigencia de propósito o autoridad legal, al antojo de ellos, y a su entera discreción, y ello pudiese claramente representar una carga demasiado onerosa para la Rama Ejecutiva. Además, esto pudiese paralizar las labores de las dependencias gubernamentales y aumentaría el número significativo de demandas en los Tribunales por parte de legisladores de minoría (o mayoría), a expensas de la Rama Judicial, a expensas de la eficiencia de la Rama Ejecutiva, y a expensas de la Separación de Poderes Constitucional.

Por tanto, la actuación **oficial** de la demandante como miembro del Senado de requerir a la Rama Ejecutiva, a través de la Rama Judicial, que produzca cierta información alegando que

---

objetos, o para ambas cosas, podrá ser expedida por el Presidente del Senado, el de la Cámara o el de la comisión o subcomisión ante la cual se desea que comparezca el testigo y al efecto bastará que:

(1) Se precise en ella si el acto ha de tener lugar ante la Asamblea Legislativa, la Cámara de Representantes, el Senado, una comisión o subcomisión conjunta de ambos cuerpos, una comisión o subcomisión de la Cámara o del Senado.

(2) Vaya dirigida al testigo.

(3) Se requiera que dicho testigo comparezca en el día, hora y lugar determinados y, en caso necesario, se requieran los documentos u objetos interesados.

(4) Lleve la firma del Presidente del Senado, de la Cámara de Representantes o del Presidente de una comisión o subcomisión.

(b) El Presidente de cualquier comisión o subcomisión del Senado o de la Cámara de Representantes o de una comisión o subcomisión conjunta de ambos cuerpos, podrá expedir una citación requiriendo a un testigo para que comparezca ante un oficial investigador a declarar o a producir o entregar documentos u objetos o para ambas cosas, siempre y cuando se cumpla con los siguientes requisitos:

(1) Que la investigación que se está llevando a cabo y dentro de la cual se hace la citación, haya sido ordenada mediante resolución del cuerpo o mediante resolución concurrente de ambos cuerpos y que la resolución especifique que la Comisión podrá emitir citaciones para que un testigo comparezca a declarar o a presentar documentos u objetos, o ambas cosas, ante un oficial investigador.

(2) La citación cumple con todos los requisitos mencionados en esta sección.

12

es para ejercer su facultad para fiscalizar el gobierno, se ha hecho a sabiendas que no tiene la facultad en ley, sin el consentimiento explícito o implícito de los Presidentes, que son los que tienen autoridad para requerir dicha documentación y en contravención con la determinación del Cuerpo.

De manera que debemos concluir que la parte demandante, quien es Senadora por Acumulación del Senado de Puerto Rico, no puede por su cuenta, burlar el procedimiento parlamentario establecido. Definitivamente, no debe este Honorable Tribunal, en representación de la Rama Judicial, avalar esta actuación *ultra vires*. Corresponde a la parte demandante cumplir con su deber ministerial de cumplir con la Reglamentación aplicable al Cuerpo Legislativo al que pertenece.

Examinado nuestro ordenamiento constitucional y en particular su esquema de separación de poderes, y los peligros inherentes que tiene la intervención judicial en litigios de esta índole, debemos concluir que la legisladora demandante no tienen legitimación activa para incoar el presente recurso de *mandamus*. No estamos ante una controversia susceptible de un remedio judicial, en vista del criterio de la justiciabilidad. En virtud de lo cual, el recurso de autos debe ser desestimado. *Acevedo Vilá v. Meléndez Ortiz*, supra. Sin embargo, aún si este Tribunal entendiese que la parte demandante tiene legitimación activa, **lo cual negamos,** procede igualmente denegar su reclamo.

### C. IMPROCEDENCIA DE LA SOLICITUD DE MANDAMUS

En cuanto al modo en que se solicita que se expidan los *Mandamus* las reglas de procedimiento civil disponen lo siguiente:

Regla 54:

El auto de Mandamus, tanto perentorio como alternativo podrá obtenerse presentando una solicitud jurada al efecto. Cuando se solicite dicho remedio y el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo, el tribunal podrá ordenar perentoriamente la concesión del remedio; de otro modo, ordenará que se presente una contestación y tan pronto sea conveniente, celebrará una vista, recibiendo prueba, si es necesario, y dictará su decisión prontamente. Se obtendrá el cumplimiento de las órdenes dictadas por el tribunal del mismo modo en que se exige el cumplimiento de cualquier orden.

Por su parte, el Artículo 649 del Código de Enjuiciamiento Civil establece lo siguiente:

El auto de *Mandamus* podrá dictarse por el Tribunal Supremo o por el Tribunal de Primera Instancia o por cualquiera de sus magistrados o jueces cuando se hallen en el ejercicio de sus funciones o en sus oficinas, y se dirigirá a cualquier tribunal inferior, corporación, junta o persona obligada al **cumplimiento de un acto que la ley particularmente ordene como**

13

**un deber resultante de un empleo, cargo o función pública...**" 32 LPRA §3422 (Énfasis nuestro).

El Tribunal Supremo ha definido el concepto de deber ministerial como "aquel deber impuesto por la ley que no permite discreción en su ejercicio sino que es mandatorio e imperativo." Véase: *Acevedo Vilá v. Meléndez Ortiz*, supra; *Noriega Rodríguez v. Hernández Colón*, supra; *Álvarez de Choudens v. Tribunal Superior*, 103 DPR 235 (1975); *Pagán v. Towner*, 35 DPR 1, 3 (126). En el presente la solicitud que hace la parte demandante al Tribunal es una cuestión política que violenta la separación de poderes. Además, no hay deber ministerial de entregar documentos que no se han especificado.

Se ha destacado en el pasado que, como condición para expedir un auto de *Mandamus*, se deben considerar los siguientes factores: "el posible impacto que éste pueda tener sobre los intereses públicos que puedan estar envueltos; el evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros". *Noriega v. Hernández Colón*, 135 DPR 406, 448 (1994).

Según lo resuelto por el Tribunal Supremo, "*el Mandamus es una acción o procedimiento judicial de naturaleza civil, extraordinario en el sentido de que procede sólo cuando no existe otro remedio adecuado, de carácter privilegiado, ya que la expedición descansa en la discreción del tribunal.*" (Énfasis nuestro). Véase: *Acevedo v. Aponte*, 2006 TSPR 115 (2006), *Bco. Des. Eco. v AMC Surgery*, 157 DPR 150 (2002); *Asoc. Res. Piñones, Inc. v. JCA*, 142 DPR 599, 604 (1997); *Ortiz v. Muñoz*, 19 DPR 850 (1913).

En el presente caso, el Reglamento del Senado establece como los miembros de la Asamblea Legislativa deben solicitar documentos a las entidades pertenecientes al Ejecutivo. La Sección 18.2 dispone:

> Sección 18.2- Petición Tramitada como Resolución
> **Cualquier Senador podrá presentar una petición verbal o escrita ante el Cuerpo para que éste, a nombre del Senado, solicite información a cualquiera de las Ramas del Gobierno**, sus dependencias, subdivisiones u oficinas, así como a los funcionarios o empleados de éstas. **De haber objeción en el Cuerpo a la petición planteada por el Senador, la misma se llevará a votación sin debate.** Aprobada la petición, el requerimiento se tramitará a nombre del Senado a través del Secretario. Este será responsable de llevar y tener disponible un registro y de asegurar el cumplimiento del requerimiento. De no cumplirse con la entrega de la información requerida en el término establecido en la Petición, el Secretario enviará un segundo requerimiento, proveyendo un plazo adicional de tres (3) días laborables. De no cumplirse con el requerimiento, notificará al

14

> Cuerpo para que éste adopte las medidas que correspondan para compeler al cumplimiento de lo ordenado en la petición. A estos efectos el Cuerpo podrá, inclusive, acudir al Tribunal, conforme a las disposiciones de ley aplicables.

Sin lugar a dudas, acceder a lo que solicita la parte demandante equivale a convertir a los Tribunales en una Comisión Investigativa de los Cuerpos Legislativos, o peor aún en un Foro Revisor de las determinaciones tomadas por el Cuerpo mediante votación, burlando los procedimientos parlamentarios dispuestos para requerir información a la Rama Ejecutiva. Por lo que no procede que se evadan los remedios que provee el Reglamento a través de un *mandamus*.

Dicha acción no solo es totalmente improcedente conforme a Derecho, sino que puede dar al traste con la doctrina de separación de poderes; razón por la cual este Tribunal debe denegar la presente demanda. En el presente caso la parte demandante pretende que este Tribunal pase juicio sobre una determinación tomada por el Cuerpo del Senado, en contravención con los procedimientos parlamentarios, ello violentando la separación de poderes.

Ciertamente en el presente pleito no se cumplen los requisitos del remedio solicitado, además que el conceder el reclamo interferiría negativamente con las gestiones que llevan a cabo las agencias gubernamentales al estar expuestas continuamente a reclamos de legisladores que no desean cumplir con los estatutos vigentes para el requerimiento de información.

### D. LA SOLICITUD DE LA PARTE DEMANDANTE REQUERIRIA UNA INTERVENCIÓN INDEBIDA CON OTRAS RAMAS DEL GOBIERNO

Nuestro sistema de gobierno es de tipo republicano; el poder gubernamental se encuentra distribuido en tres ramas de gobierno: la Ejecutiva, la Legislativa y la Judicial. El principio constitucional de separación de poderes representa la expresión jurídica de la teoría de gobierno que pretende evitar la tiranía – la concentración indebida del poder en una misma fuente – mediante la distribución tripartita del poder estatal. *Misión Industrial v. Junta de Planificación*, 146 DPR 64 (1998). En Puerto Rico, la separación de poderes está expresamente consagrada en la Sección 2 del Artículo I de la Constitución del Gobierno de Puerto Rico, la cual establece la forma republicana de nuestro de gobierno.

Asimismo, en la jurisdicción federal, el Tribunal Supremo de Estados Unidos de América ha reconocido la doctrina de separación de poderes como fundamental en el esquema democrático de gobierno de la nación americana. *Colón Cortés v. Pesquera*, 150 DPR 724 (2000). Además, la Constitución Federal le garantiza a los Estados un sistema de gobierno republicano. Art. IV, Sec. 4, Const. EE. UU., LPRA, Tomo 1.

15

La división de los poderes legislativo, ejecutivo y judicial que establece nuestra Constitución no significa la independencia absoluta entre éstos. *Hernández Agosto v. López Nieves*, 114 DPR 601, 619 (1983); 3 Diario de Sesiones de la Convención Constituyente 1918 (1952). Lo que se persigue es un equilibrio dinámico entre poderes coordinados y de igual rango y evitar, así, que alguno de éstos amplíe su autoridad a expensas de otro. *Nogueras v. Hernández Colón I*, 127 DPR 405, 412 (1991); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 427-428 (1982).

Más que una regla técnica de derecho, el principio de separación de poderes es una doctrina política. A esta visión responde el pronunciamiento del Tribunal Supremo de Estados Unidos a los efectos de que una rama del gobierno no puede usurpar o apropiarse de facultades de otra rama, sin ocasionar daño. *Union Pacific Rd. Co. v. U.S.*, 99 U.S. 700, 718 (1878).

En nuestro sistema de gobierno, y por virtud de lo dispuesto en el Art. IV, Sec. 1, de nuestra Constitución, "[e]l Poder Ejecutivo se ejercerá por un Gobernador, quien será elegido por voto directo en cada elección general". El Gobernador es el funcionario constitucionalmente facultado para administrar la Rama Ejecutiva. Las Secciones 1 y 4 del Artículo IV de nuestra Constitución le asignan al Gobernador, entre otros deberes, funciones y atribuciones: el cumplir y hacer cumplir las leyes; y sancionar o desaprobar con arreglo a esta Constitución, las resoluciones conjuntas y los proyectos de ley aprobados por la Asamblea Legislativa.

Por su parte, según lo dispuesto en el Art. III, Sec. 1, de nuestra Constitución, "[e]l Poder Legislativo se ejercerá por una Asamblea Legislativa, que se compondrá de dos Cámaras — el Senado y la Cámara de Representantes — cuyos miembros serán elegidos por votación directa en cada elección general." La Asamblea Legislativa es quien está constitucionalmente facultada para aprobar las leyes. Las secciones 18 y 19 del artículo III de nuestra Constitución disponen que "[c]ualquier proyecto de ley que sea aprobado por una mayoría de número total de los miembros que componen cada cámara se someterá al gobernador y se convertirá en ley si éste lo firma".

Nuestra Constitución delega todo el poder legislativo a la Asamblea Legislativa, sujeto a las limitaciones contenidas en la Carta de Derechos, pudiendo legislar sobre cualquier asunto que afecte el bienestar de los puertorriqueños. Al amparo de nuestro esquema gubernamental, la Asamblea Legislativa de Puerto Rico, tiene la facultad de legislar sobre todo aquello que no esté expresa o implícitamente prohibido por el propio texto de la Constitución. *Nogueras v.*

16

*Hernández Colón*, 127 DPR 405 (1990); *P.I.P. v. C.E.E.* 120 DPR 580 (1988). Resulta ampliamente conocida la facultad de la Asamblea Legislativa y del Poder Ejecutivo de crear y derogar leyes.

De entrada, es menester destacar que es norma reiterada que, a base de la doctrina de separación de poderes, los tribunales no deben intervenir en el proceso legislativo. *Acevedo Vilá v. Meléndez Ortiz*, 164 DPR 875 (2005). Nuestro Tribunal Supremo ha establecido que los "motivos que inspiran una actividad legislativa legítima no son objeto apropiado de escrutinio judicial." *Romero Barceló v. Hernández Agosto*, 115 DPR 368 (1984). Ello se deriva de la inmunidad que ostentan los legisladores, y por consecuencia, ciertos participantes del proceso legislativo, para garantizar que sus labores no se vean afectadas por intromisiones de parte de las demás ramas del gobierno.

En este caso, avalar la actuación de la parte demandante violaría claramente el Principio Constitucional de Separación de Poderes, que protege a la Rama Judicial de envolverse innecesariamente en asuntos estrictamente políticos y, que a su vez, protege a las otras dos Ramas de Gobierno del menoscabo de sus poderes como entes separados. Como ya expusimos, si se le permite preterir el proceso legislativo dispuesto en el Reglamento del Senado y la norma dispuesta en el Código Político, se sentaría un precedente nefasto que soslayaría el equilibrio justo que debe imperar entre las tres ramas del gobierno.

### III. CONCLUSIÓN

En virtud del derecho antes argumentado, sostenemos que la parte demandante no tiene legitimación activa para la solicitud que hace mediante su demanda. En primer lugar, como Senadora no tiene legitimación activa para solicitar documentos a entidades del Ejecutivo bajo el argumento de que son necesarios para ejercer sus facultades y prerrogativas como Senadora o para fiscalizar al gobierno. Según el Reglamento del Senado, quien está facultado para solicitar los documentos a otra Rama para el ejercicio de las funciones de la Asamblea Legislativa es el Presidente del Senado y los Presidentes de las Comisiones, de la demanda no surge que la Senadora esté presidiendo alguna Comisión.

Por otra parte, en el presente caso no se cumplen los requisitos del *mandamus* toda vez que la parte demandante tenía que utilizar los procesos dispuestos en el Reglamento del Senado para canalizar su Petición, el cual le es de aplicación.

A lo aquí expuesto debe incluirse el hecho de que en el caso de autos es evidente que la expedición del auto de *mandamus* produciría, como resultado neto, una intromisión de la Rama Judicial en los procedimientos de otra rama de gobierno, en este caso de la Asamblea Legislativa.

De manera que a la luz del derecho aplicable es forzoso concluir que este Honorable Tribunal debería desestimar con perjuicio la demanda de epígrafe, toda vez que: (i) la parte demandante carece de legitimación activa; (ii) no cumple con los requisitos para la expedición de un *mandamus*; y, (iii) conceder el reclamo de la parte demandante requeriría intervenir indebidamente con la funciones del Primer Ejecutivo y de la Asamblea Legislativa en violación de la separación de poderes.

**EN MÉRITO DE LO CUAL**, respetuosamente se solicita que este Tribunal dicte sentencia a favor de la parte demandada y desestime con perjuicio la totalidad de la demanda que nos ocupa.

**CERTIFICO:** Que este escrito ha sido presentado de manera electrónica a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC) el cual da aviso al mismo tiempo a todos los abogados de récord a sus respectivas direcciones electrónicas, lo cual constituye la notificación que debe efectuarse entre abogados y abogadas, según disponen las Reglas de Procedimiento Civil.

En San Juan, Puerto Rico, a 7 de abril de 2017.

**RESPETUOSAMENTE SOMETIDO.**

**WANDA VÁZQUEZ GARCED**
Secretaria de Justicia

**WANDYMAR BURGOS VARGAS**
Secretaria Auxiliar de lo Civil, Interina

**IVÁN J. RAMÍREZ CAMACHO**
RUA: 13131
Subsecretario Auxiliar de lo Civil

f/Liany Vega
**LIANY A. VEGA NAZARIO**
RUA: 16826
Directora Interina
Secretaría Auxiliar de lo Civil,
División de Rec. Extraordinarios
Y Política Pública
P O Box 9020192, San Juan,
Puerto Rico 00902-0192
Tel: (787)721-2900, Ext. 2196
Fax: (787) 721-3977
lvega@justicia.pr.gov