**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| HON. ROSSANA LÓPEZ LEÓN, SENADORA POR ACUMULACIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, | CIVIL NÚM. SJ2017CV00107 (904) |
| Demandante | |
| v. | SOBRE: |
| | SOLICITUD DE MANDAMUS |
| HON. RICARDO ROSSELLÓ NEVARES, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; GERARDO PORTELA FRANCO, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL DE PUERTO RICO; HON. WANDA VÁZQUEZ GARCED, SECRETARIA DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO. | |
| Demandados | |

**MOCIÓN BAJO LAS REGLAS DE PROCEDIMIENTO CIVIL 10.2(1) POR FALTA DE JURISDICCIÓN SOBRE LA MATERIA, 10.2(5) POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO Y 10.2(6) POR DEJAR DE ACUMULAR UNA PARTE INDISPENSABLE**

**ABOGADOS DEL CODEMANDADO**
**GERARDO PORTELA FRANCO**
**DIRECTOR EJECUTIVO DE LA**
**AUTORIDAD DE ASESORÍA**
**FINANCIERA Y AGENCIA**
**FISCAL DE PUERTO RICO**

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**
Popular Center, Piso 19
208 Avenida Ponce De León
San Juan, Puerto Rico 00918
Tel. (787) 274-1212
Fax (787) 274-1470

**LCDO. ORESTE R. RAMOS**
**RUA NÚM. 12703**
oramos@pmalaw.com

**LCDO. DIEGO MURGIA DÍAZ**
**RUA NÚM. 16825**
dmurgia@pmalaw.com

**ABOGADO DE LA DEMANDANTE**

**Lic. Ramón A. Torres Cruz**
Paseo Fagot, Marg. Fagot 1488, A-1
Boulevard Miguel A. Pou
Ponce, PR 00716
Tel. y Fax. (787) 259-8095
Cel. (787) 226-9871
RUA NÚM. 15270
ramontorrex@gmail.com

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| HON. ROSSANA LÓPEZ LEÓN, SENADORA POR ACUMULACIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, | CIVIL NÚM. SJ2017CV00107 (904) |
| Demandante | |
| v. | SOBRE: |
| HON. RICARDO ROSSELLÓ NEVARES, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; GERARDO PORTELA FRANCO, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL DE PUERTO RICO; HON. WANDA VÁZQUEZ GARCED, SECRETARIA DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO. | SOLICITUD DE MANDAMUS |
| Demandados | |

## ÍNDICE DE MATERIAS

                                                        **Página**

I.    INTRODUCCIÓN ...................................  1

II.   CRITERIOS APLICABLES A LA MOCIÓN DE
      DESESTIMACIÓN ...................................  4

      A. La Regla 10.2(1) de Procedimiento Civil ......  4

      B. La Regla 10.2(5) de Procedimiento Civil ......  5

      C. La Regla 10.2(6) de Procedimiento Civil ......  6

III.  DISCUSIÓN ......................................  7

      A. La Senadora Carece de Legitimación Activa
      por lo que este Honorable Tribunal No Tiene
      Jurisdicción Sobre la Materia ..................  7

      B. No Procede la Causa de Acción Contra el Sr.
      Portela Franco ..................................  14

            1. El Auto de Mandamus ....................  14

            2. Los requerimientos de la Senadora son
               vagos e imprecisos, por lo que ésta no
               puede establecer un derecho a exigir la
               inmediata ejecución de acto alguno. ........  17

            3. El mandamus debe ser denegado toda vez que
               no existe un deber ministerial por parte
               del Sr. Portela Franco para custodiar o
               producir la documentación solicitada ......  19

     C.   La   Demanda  Obvió  Incluir  una  Parte
     Indispensable ................................... 21

IV.   CONCLUSIÓN ........................................ 23

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| HON. ROSSANA LÓPEZ LEÓN, SENADORA POR ACUMULACIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, | CIVIL NÚM. SJ2017CV00107 (904) |
| Demandante | |
| v. | SOBRE: |
| HON. RICARDO ROSSELLÓ NEVARES, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; GERARDO PORTELA FRANCO, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL DE PUERTO RICO; HON. WANDA VÁZQUEZ GARCED, SECRETARIA DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO. | SOLICITUD DE MANDAMUS |
| Demandados | |

## ÍNDICE LEGAL

### I. LEGISLACIÓN DE PUERTO RICO

Ley Núm. 2 del 18 de enero de 2017 conocida como "Ley para crear la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF)........................................ 3,20, 21,22

Artículo 649 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. § 3421.............. 14,19

Artículo 650 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. § 3422.............. 14

### II. REGLAS Y REGLAMENTOS DE PUERTO RICO

Regla 10.2 de las Reglas Procedimiento Civil de Puerto Rico de 2009, 32 L.P.R.A. Ap. V.......... 4, 5,6, 13, 19, 20,21, 24

Regla 15.1 de las Reglas Procedimiento Civil de Puerto Rico de 2009, 32 L.P.R.A. Ap. V.......... 8

Regla 16.1 de las Reglas Procedimiento Civil de Puerto Rico de 2009, 32 L.P.R.A. Ap. V.......... 6,7,21

Regla 54 de las Reglas Procedimiento Civil de Puerto Rico de 2009, 32 L.P.R.A. Ap. V.......... 15

### III. JURISPRUDENCIA DE PUERTO RICO

#### A. TRIBUNAL SUPREMO

Agosto Ortiz v. Mun. Río Grande, 143 D.P.R. 174

(1997)......................................... 5

Álvarez de Choudens v. Tribunal Superior, 103
D.P.R. 235 (1975)............................... 15,19,21

Aponte Caratini v. Román Torres, 145 D.P.R. 477
(1998)......................................... 7

Asociación de Maestros de P.R. v. Torres, 136
D.P.R. 742 (1994)............................... 8

Asociación de Maestros de Puerto Rico v.  14,15,16
Secretario de Educación, 178 D.P.R. 253 (2010)... 17,18,19
23

Cepeda Torres v. García Ortiz, 132 D.P.R. 698
(1993)......................................... 6

Clemente González v. Dpto. de Vivienda, 114
D.P.R. 763 (1983)............................... 6

Colegio de Ópticos de P.R. v. Vani Visual Ctr.,
124 D.P.R. 559 (1989)........................... 8

Colegio de Peritos Electricistas v. A.E.E., 150
D.P.R. 327 (2000)............................... 8

Comisión de la Mujer v. Secretario de Justicia,
109 D.P.R. 715 (1980)........................... 8

Dávila v. Superintendente de Elecciones, 82 D.P.R.
264 (1960)...................................... 15

Delgado v. El Consejo Ejecutivo de Puerto Rico, 7
D.P.R. 410 (1904)............................... 21

Dorante v. Wrangler of P.R., 145 D.P.R. 408
(1998)......................................... 6

E.L.A. v. Aguayo, 80 D.P.R. 552 (1958).......... 7,8

Espina v. Calderón, 75 D.P.R. 76 (1953).......... 15

Figueroa Piñero v. Miranda & Eguia, 83 D.P.R. 554
(1961)......................................... 6

Fuentes v. Tribunal de Distrito, 73 D.P.R. 959
(1952)......................................... 22

Fundación Surfrider v. A.R.P.E., 178 D.P.R. 563
(2010)......................................... 8

García Colón v. Sucesión González, 178 D.P.R. 527
(2010)......................................... 22

González Santos v. Bourns P.R., Inc., 125 D.P.R.
48 (1999)...................................... 5

Gonzalo Rivera v. Hernández Ramírez, 70 D.P.R. 549
(1949)......................................... 15

Hernández Agosto v. López Nieves, 114 D.P.R. 601
(1983)......................................... 7,21

iv

*Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982) ....................................... 9,15

*Hernández Torres v. Hernández Colón*, 129 D.P.R. 824 (1992) ....................................... 8,9,10,13

*Hernández Torres v. Hernández Colón*, 131 D.P.R. 593 (1992) ....................................... 11,12,13

*Juliá et al. v. Epifanio Vidal, S.E.*, 153 D.P.R. 357 (2001) ....................................... 5

*López Rivera v. Autoridad Fuentes Fluviales*, 89 D.P.R. 414 (1963) ............................... 5

*Lozada Tirado v. Tirado Flecha*, 177 D.P.R. 893 (2010) ........................................... 7

*Molina v. Supermercado Amigo, Inc.*, 119 D.P.R. 330 (1987) ....................................... 5

*Montañez Rivera v. Policía*, 150 D.P.R. 917 (2000) ............................................... 5

*Morales v. Tribunal Superior*, 105 D.P.R. 824 (1977) ............................................. 6

*Nogueras v. Hernández Colón*, 127 D.P.R. 638 (1990) ............................................. 9

*Noriega v. Gobernador*, 122 D.P.R. 650 (1988) ..... 9

*Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994) ........................................... 14,16

*Pagán v. Alcalde Mun. de Cataño*, 143 D.P.R. 314 (1997) ........................................... 5

*Partido Popular v. Junta de Elecciones*, 62 D.P.R. 745 (1944) ...................................... 15,19

*Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983) ........................................... 9

*Ponce Federal Bank, FSB v. Chubb Life Insurance Company of America*, 155 D.P.R. 309 (2001) ........ 4

*Pressure Vessels P.R.*, 137 D.P.R. 497 (1994) ..... 5,6

*Ramiro Colón v. Lotería de Puerto Rico*, 167 D.P.R. 625 (2006) ................................. 6

*Ramos González v. Moure*, 150 D.P.R. 685 (2000) ........................................... 6

*Reyes v. E.L.A.*, 150 D.P.R. 599 (2000) ........... 6,7

*Rivera Báez v. Andújar*, 157 D.P.R. 562 (2002) ........................................... 5

*Rodríguez v. Registrador*, 75 D.P.R. 712 (1953) ...

 4

Roldán Rosario v. Lutrón S.M., Inc., 151 D.P.R.
883 (2000)...................................... 5,6

Romero Barceló v. E.L.A., 169 D.P.R. 460
(2006)......................................... 7,8

Romero v. Reyes Rivera, 164 D.P.R. 721
(2005)......................................... 6

S.L.G. Szendrey-Ramos v. F. Castillo, 169 D.P.R.
873 (2007)..................................... 5

Sánchez v. Autoridad de los Puertos, 153 D.P.R.
559 (2001)..................................... 4

Santa Aponte v. Secretario del Senado, 105 D.P.R.
750 (1977)..................................... 9

Silva v. Hernández Agosto, 118 D.P.R. 45 (1986).. 9

Suffront Cordero v. A.A.A., 164 D.P.R. 663 (2005) 4

Trans-Oceanic Life, Ins. v. Oracle Corp., 184
D.P.R. 689 (2012).............................. 4

Vázquez v. Administración de Reglamentos y
Permisos, 128 D.P.R. 513 (1991)................. 4,5

**B. TRIBUNAL DE CIRCUITO DE APELACIONES**

PDCM Associates, SE v. Departamento de
Transportación y Obras Públicas, 2015 WL 3758018. 7

Romeu Matta v. Vázquez Morales, 2011 WL 2173548.. 17,19

**IV. JURISPRUDENCIA FEDERAL**

Barnes v. Kline, 759 F.2d 21, 28 (D.C. Cir. 1984) 13

Raines v. Byrd, 521 U.S. 811, 819 (1997)......... 10

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| HON. ROSSANA LÓPEZ LEÓN, SENADORA POR ACUMULACIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO,<br><br>　　　　Demandante<br><br>　　　　v.<br><br>HON. RICARDO ROSSELLÓ NEVARES, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; GERARDO PORTELA FRANCO, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL DE PUERTO RICO; HON. WANDA VÁZQUEZ GARCED, SECRETARIA DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO.<br><br>　　　　Demandados | CIVIL NÚM. SJ2017CV00107 (904)<br><br>SOBRE:<br><br>SOLICITUD DE MANDAMUS |

**MOCIÓN BAJO LAS REGLAS DE PROCEDIMIENTO CIVIL 10.2(1) POR FALTA DE JURISDICCIÓN SOBRE LA MATERIA, 10.2(5) POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO Y 10.2(6) POR DEJAR DE ACUMULAR UNA PARTE INDISPENSABLE**

**AL HONORABLE TRIBUNAL:**

　　**COMPARECE** el codemandado Gerardo Portela Franco (en adelante, "Sr. Portela Franco"), en su capacidad de Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (en adelante, la "AAFAF"), sin someterse a la jurisdicción de este Honorable Tribunal, y, por conducto de la representación legal que suscribe, respetuosamente expone, alega y solicita:

## I. <u>INTRODUCCIÓN</u>

　　La Senadora por Acumulación Honorable Rossana López León (en adelante, la "Senadora" o la "Demandante") presentó la Demanda de *Mandamus* juramentada el pasado 30 de marzo (en adelante, la "Demanda") contra los Demandados en el caso de epígrafe. En síntesis, solicita que este Honorable Tribunal expida un auto de *mandamus*, mediante el cual se le ordene a los

1

Demandados que le entregue todos los documentos, estudios, informes, memorandos, cartas, análisis, estudios actuariales, informes de proyecciones de recortes e ingresos, gastos e inversiones y cualquier otro documento que fuera utilizado para la confección del Plan Fiscal para Puerto Rico (en adelante, "los Documentos"). <u>Véase</u> Demanda, Súplica, a la pág. 3.

En apoyo a su Demanda, la Senadora alega haber agotado todos los remedios extrajudiciales disponibles antes de recurrir a este Honorable Tribunal. <u>Véase</u> Demanda, ¶ 13. En particular, alega que el pasado 13 de febrero le solicitó al Gobernador las medidas y modelos utilizados para la confección del Plan Fiscal. <u>Véase id.</u>, ¶ 8. Ese mismo día presentó una petición ante la Secretaría del Senado de Puerto Rico para solicitar del Gobernador la producción de los Documentos, la cual no fue aprobada por el cuerpo. <u>Véase id.</u>, ¶ 9. Posteriormente, el pasado 16 de marzo, solicitó los mismos documentos ante la AAFAF. <u>Véase id.</u>, ¶ 10. El 23 de marzo de 2017, el Director Ejecutivo de la AAFAF, el Sr. Portela Franco, contestó la carta del 16 de marzo, negando la solicitud de producción de los Documentos, y al así hacerlo, levantó varios privilegios para justificar su posición, tales como el oficial/ejecutivo y el que cobija las comunicaciones entre abogado y cliente. <u>Véase id.</u>, ¶ 11. En la carta, también se señala que la información contempla escenarios hipotéticos que no deben ser divulgados ya que podrían llevar a conclusiones erradas y prematuras. <u>Véase id.</u>

Así las cosas, la Senadora le representa a este Honorable Tribunal que no tiene otro remedio adecuado y eficaz para compeler la producción de los Documentos que presentar la Demanda en autos. <u>Véase</u> Demanda, ¶¶ 13-14. Indica que, contrario a lo que se aduce en la carta del 23 de marzo de 2017, los Documentos no están protegidos por confidencialidad o privilegio alguno, y que, por el contrario, se trata de información pública

y de alto interés público, la cual es necesaria para informar sobre la gestión y transparencia gubernamental. <u>Véase</u> Demanda, ¶ 15. Añade que no producirlos lacera sus derechos y prerrogativas como senadora en sus funciones al igual que su capacidad para descargar su responsabilidad inherente de fiscalización. <u>Véase id.</u>, ¶¶ 17-18.

La Demandante concluye que el remedio del *mandamus* es el apropiado para compeler la producción de los Documentos, toda vez que "las partes contra las cuales se dirige el [mismo] tienen el deber ministerial de entregar la información solicitada." <u>Véase</u> Demanda, ¶ 16. Ello, según ella, amparado en el texto de la Ley 2-2017 que crea la AAFAF y que dispone, en su parte pertinente, que dicha dependencia fue

> [c]reada con el propósito de que actúe como agente fiscal, asesor financiero y agente informativo de todos los entes del Gobierno de Puerto Rico y para asistir tales entidades en confrontar la grave crisis fiscal y emergencia económica por la que atraviesa Puerto Rico.

Ley 2-2017, Artículo 5.

Según se discute a continuación, este Honorable Tribunal debe desestimar la Demanda por las siguientes tres (3) razones. Primero, este Honorable Tribunal carece de jurisdicción sobre la materia aquí planteada, puesto que la Senadora no tiene legitimación activa para presentar la Demanda. Segundo, aún si tuviera jurisdicción sobre la materia, lo que se niega, la Demanda deja de exponer una reclamación contra el Sr. Portela Franco, puesto que éste no tiene el deber ministerial que cita la Demanda, y mucho menos, un deber específico que justifique la concesión del *mandamus* solicitado. Tercero, aún si alguien tuviese tal deber ministerial, lo que se niega dado el texto de la referida ley de AAFAF, la Demandante dejó de acumular una parte indispensable, puesto la Senadora obvió incluir a la AAFAF

3

en la Demanda. Por estas tres razones, la Demanda debe ser desestimada. Veamos.

## II. <u>CRITERIOS APLICABLES A LA MOCIÓN DE DESESTIMACIÓN</u>

La Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 10.2, le faculta a una parte contra la cual se presente una alegación en su contra presentar una moción de desestimación, con el fin de que se desestime cualquier acción. <u>Trans-Oceanic Life, Ins. v. Oracle Corp.</u>, 184 D.P.R. 689, 701 (2012); <u>Sánchez v. Autoridad de los Puertos</u>, 153 D.P.R. 559, 569 (2001). Este mecanismo procesal se hace indispensable cuando la defensa de una parte está fundamentada en que el promovente de la acción no tiene una causa de acción en su contra, que el tribunal carece de jurisdicción o que la parte demandante ha dejado de acumular una parte indispensable. <u>Id.</u>

### *A. La Regla 10.2(1) de Procedimiento Civil*

En cuanto a la falta de jurisdicción sobre la materia, éste es un asunto que puede ser planteado en cualquier momento durante el pleito. <u>Ponce Federal Bank, FSB v. Chubb Life Insurance Company of America</u>, 155 D.P.R. 309, 332 (2001). Ni las partes pueden subsanar la falta de jurisdicción sobre la materia, ni puede un tribunal abrogársela voluntariamente. <u>Suffront Cordero v. A.A.A.</u>, 164 D.P.R. 663, 674 (2005) ("… la falta de jurisdicción de un tribunal es un asunto que se puede levantar y resolver *motu proprio*; ciertamente, **no se tiene discreción para asumir jurisdicción allí donde no la hay**") (énfasis suplido).

Es norma altamente reconocida que:

> [l]a falta de este tipo de jurisdicción conlleva las siguientes consecuencias inexorablemente fatales: (1) esta falta de jurisdicción no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal ni el tribunal puede abrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos (nulidad absoluta), <u>Rodríguez v. Registrador</u>, 75 D.P.R. 712, 716 y 726 (1953); (4) los tribunales

tienen el ineludible deber de auscultar su propia jurisdicción; (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso, y (6) el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualquiera de las partes o por el tribunal *motu proprio*, López Rivera v. Autoridad Fuentes Fluviales, 89 D.P.R. 414, 419 (1963).

Vázquez v. Administración de Reglamentos y Permisos, 128 D.P.R. 513, 537 (1991).

Cuando un tribunal dicta una sentencia sin tener jurisdicción, la misma será nula en derecho, inexistente y carente de toda eficacia jurídica. Montañez Rivera v. Policía, 150 D.P.R. 917, 921 (2000). Por ende, ante la ausencia de jurisdicción, lo único que corresponde hacer es que así lo manifieste el tribunal. S.L.G. Szendrey-Ramos v. F. Castillo, 169 D.P.R. 873, 883 (2007); Juliá et al. v. Epifanio Vidal, S.E., 153 D.P.R. 357, 366-367 (2001); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1999). Recae en la parte que invoca la jurisdicción el peso de establecerla. Véase, por ejemplo, Molina v. Supermercado Amigo, Inc., 119 D.P.R. 330, 337 (1987).

### B. *La Regla 10.2(5) de Procedimiento Civil*

Para considerar una solicitud de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, el Tribunal tiene que presumir como ciertos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. Véanse, Rivera Báez v. Andújar, 157 D.P.R. 562, 584 (2002); Agosto Ortiz v. Mun. Río Grande, 143 D.P.R. 174, 178 (1997); Pressure Vessels P.R. v. Empire Gas, 137 D.P.R. 497, 505 (1994). Sin embargo, los hechos que no estén bien alegados, o que den margen a duda, ni las alegaciones o conclusiones de derecho incluidas en la demanda, se pueden presumir como ciertos al considerar una moción de desestimación. Roldán Rosario v.

5

<u>Lutrón S.M., Inc.</u>, 151 D.P.R. 883, 889 (2000); <u>Pressure Vessels P.R. v. Empire Gas</u>, 137 D.P.R. a la pág. 505.

Sin importar la liberalidad con que se interpretan las alegaciones de una demanda, el tribunal puede desestimarla si queda convencido de que el demandante no prevalecerá. <u>Ramiro Colón v. Lotería de Puerto Rico</u>, 167 D.P.R. 625, 649 (2006); <u>Figueroa Piñero v. Miranda & Eguía</u>, 83 D.P.R. 554, 558 (1961). Así, la demanda debe desestimarse bajo el fundamento de que no avanza una reclamación que justifique la concesión de un remedio, cuando es evidente que ninguna de las reclamaciones procede bajo el derecho aplicable. <u>Dorante v. Wrangler of P.R.</u>, 145 D.P.R. 408, 414 (1998); <u>Clemente González v. Dpto. de Vivienda</u>, 114 D.P.R. 763, 771 (1983); <u>Morales v. Tribunal Superior</u>, 105 D.P.R. 824, 831 (1977).

### *C. La Regla 10.2(6) de Procedimiento Civil*

A tenor con la Regla 10.2(6) de Procedimiento Civil, "[d]e reconocerse que está ausente una parte indispensable, debe desestimarse la acción." <u>Romero v. Reyes Rivera</u>, 164 D.P.R. 721, 734 (2005). A esos efectos, la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, dispone lo siguiente:

> [l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada.

El concepto de "parte indispensable" ha sido definido por el Tribunal Supremo de Puerto Rico como "aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio". <u>Véase</u> <u>Ramos González v. Moure</u>, 150 D.P.R. 685, 694 (2000); <u>Reyes v. E.L.A.</u>, 150 D.P.R. 599, 605 (2000); <u>Cepeda Torres v. García Ortiz</u>, 132 D.P.R. 698, 703 (1993). Así, pues, una "parte indispensable" es aquélla sin cuya presencia no puede

adjudicarse una controversia. _Véanse_ _Aponte Caratini v. Román_
_Torres_, 145 D.P.R. 477, 483 (1998); _Hernández Agosto v. López_
_Nieves_, 114 D.P.R. 601, 604 (1983).

La Regla 16.1 de Procedimiento Civil tiene el propósito de
proteger a las personas ausentes de los posibles efectos
perjudiciales de la resolución del caso y evitar la
multiplicidad de pleitos. _Véase_ _id._ Cuando a una persona ausente
no se le ha brindado oportunidad para salvaguardar unos
derechos, no se le puede imprimir finalidad a la adjudicación de
la controversia medular. No basta con que el ausente haya sido
informado de su oportunidad de intervenir en el pleito; ha de
ser acumulado como parte. Lo contrario conllevaría la
desestimación del pleito. _Véase_ _Reyes v. E.L.A._, 150 D.P.R. a la
pág. 609. La falta de parte indispensable es de tal importancia
que puede plantearse, por primera vez, a nivel apelativo o por
el tribunal _sua sponte_. _Id._

## III. **DISCUSIÓN**

### A. **La Senadora Carece de Legitimación Activa por lo que este Honorable Tribunal No Tiene Jurisdicción Sobre la Materia.**

Antes que un tribunal entre a considerar los méritos de un
caso, tiene que determinar si tiene jurisdicción para hacerlo.
Así, debe determinar si la controversia ante su atención es
justiciable. _Véase_ _Lozada Tirado v. Tirado Flecha_, 177 D.P.R.
893, 907 (2010) (atendiendo la justiciabilidad como un asunto de
umbral). De hecho, la jurisdicción de un tribunal depende de la
aplicación de diversas doctrinas que le dan vida al llamado
principio de justiciabilidad. _Véanse_ _id._ a las págs. 907-08;
_E.L.A. v. Aguayo_, 80 D.P.R. 552, 584 (1958); _PDCM Associates, SE_
_v. Departamento de Transportación y Obras Públicas_, Civil Núm.
KLAN 201401916, 2015 WL 3758018 *6-7 (TCA 30 de abril de 2015).

Uno de los conceptos subsumidos dentro del más amplio de
justiciabilidad es el de legitimación activa. _Véase_ _Romero_

Barceló v. E.L.A., 169 D.P.R. 460, 470 (2006). Los tribunales
están llamados a examinar si los demandantes tienen legitimación
activa, un elemento necesario para la debida adjudicación de los
méritos del caso. Véase Hernández Torres v. Hernández Colón, 129
D.P.R. 824, 835 (1992). La legitimación activa es la capacidad
para demandar que tiene una parte. Colegio de Ópticos de P.R. v.
Vani Visual Ctr., 124 D.P.R. 559, 563 (1989). Esta capacidad es
requerida como parte del principio de justiciabilidad, que dicta
que los tribunales sólo intervendrán en un caso cuando se les
presente una controversia genuina entre partes que tienen un
interés real de obtener un remedio que afecte sus relaciones
jurídicas. Fundación Surfrider v. A.R.Pe., 178 D.P.R. 563, 571-
572 (2010); Comisión de la Mujer v. Secretario de Justicia, 109
D.P.R. 715, 720 (1980); E.L.A. v. Aguayo, 80 D.P.R. a las págs.
558-59. Un demandante posee legitimación activa para incoar un
pleito si cumple con lo siguiente: (1) ha sufrido un daño claro
y palpable; (2) ese daño es real, inmediato y preciso, y no
abstracto o hipotético; (3) existe conexión entre el daño
sufrido y la causa de acción ejercitada, y (4) la causa de
acción surge bajo el palio de la Constitución o de una ley.
Colegio de Peritos Electricistas v. A.E.E., 150 D.P.R. 327, 331
(2000); Hernández Torres v. Hernández Colón, 129 D.P.R. a la
pág. 835; Asociación de Maestros de P.R. v. Torres, 136 D.P.R.
742 (1994). El peso de establecer legitimación activa recae en
la parte que alega la jurisdicción del tribunal, o sea la
demandante en este caso. Hérnandez Torres v. Hernández Colón,
129 D.P.R. a la pág. 835. Además, la Regla 15.1 de Procedimiento
Civil, 32 L.P.R.A. Ap. V, dispone que los pleitos tienen que
tramitarse por la persona que tiene el derecho que se reclama o
que está autorizada para reclamar a beneficio de alguien.

En el caso particular de legisladores que presentan pleitos
judiciales en esa capacidad, como es aquí el caso, éstos tienen

legitimación para vindicar sus prerrogativas y funciones constitucionales, tales como, la participación en el proceso de confirmación o de una sesión ejecutiva de una comisión o el derecho a ocupar un escaño legislativo. Véanse Hernández Torres v. Hernández Colón, 129 D.P.R. a la pág. 837; Silva v. Hernández Agosto, 118 D.P.R. 45 (1986) (se impugnaba una regla senatorial en la que se coartaba el derecho del legislador de participar en etapas esenciales y deliberativas en una comisión del Senado) Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 416 (1982) (se cuestionaba la participación de los miembros del Senado en el proceso de confirmación alegadamente menoscabada por el gobernador); Nogueras v. Hernández Colón, 127 D.P.R. 638 (1990); Santa Aponte v. Secretario del Senado, 105 D.P.R. 750 (1977) (se impugnaba la elegibilidad de un senador de poder ocupar su escaño legislativo). Se trata, pues, de un reclamo a un derecho personal, a base de un daño sufrido vinculado con su función legislativa. Véase Hernández Torres v. Hernández Colón, 129 D.P.R. a la pág. 838.

En algunas ocasiones, el Tribunal Supremo de Puerto Rico ha reconocido que un legislador tiene legitimación activa cuando ha sido designado representante oficial de un cuerpo legislativo ante el foro judicial, conforme a una autorización expresa del cuerpo, para vindicar los derechos de ese cuerpo. Véanse Hernández Agosto v. Romero Barceló, 112 D.P.R. a la pág. 413; Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576 (1983). Por último, el Tribunal Supremo ha reconocido que un legislador afectado directamente por una actuación gubernamental puede cuestionar la constitucionalidad de una actuación estatal al amparo de derechos de terceras personas siempre que se cumplan con los requisitos estrictos de la doctrina de ius tertii. Véase Noriega v. Gobernador, 122 D.P.R. 650 (1988) (el Tribunal Supremo determinó que el entonces Representante David Noriega tenía

legitimación activa al alegar perjuicio en su carácter personal por la práctica del gobierno de preparar listas y expedientes de personas por razones ideológicas). Los criterios de legitimación de los legisladores son especialmente rigurosos si se pretenden reclamar derechos de terceros al revisar la constitucionalidad de algún acto. Véase Hernández Torres v. Hernández Colón, 129 D.P.R. a la pág. 836; véase también Raines v. Byrd, 521 U.S. 811, 819 (1997) (señalando que "standing inquiry is especially rigorous [because of separation of powers concerns] when reaching the merits of a dispute would force [it] to decide whether an action taken by one of the other two branches of the federal government was unconstitutional").

Sin embargo, el Tribunal Supremo de Puerto Rico ha determinado que un legislador no tiene legitimación activa cuando presenta una reclamación para cuestionar algún acto del estado cuando éste causa un perjuicio de índole general. Hernández Torres v. Hernández Colón, 129 D.P.R. a la pág. 839. Al aplicar ese principio, en Hernández Torres, los entonces representantes Zaida Hernández Torres y Edison Misla Aldarondo cuestionaron judicialmente la constitucionalidad de una resolución conjunta que proveía asignaciones para los gastos ordinarios de las tres ramas de gobierno. Alegaron que la resolución conjunta creaba un presupuesto deficitario y, por lo tanto, inconstitucional al amparo del Artículo VI, Sección 7 de la Constitución de Puerto Rico. La parte demandada en el caso arguyó que los demandantes carecían de legitimación activa ya que la impugnada resolución no incidía en las prerrogativas o facultades de sus funciones. Aunque el Tribunal de Primera Instancia encontró que los demandantes tenían legitimación activa, el Tribunal Supremo revocó el fallo y determinó que no la tenían. Al así hacerlo, la alta curia repasó los contornos del concepto de legitimación activa de los legisladores, que ya

hemos presentado, y subrayó que los legisladores no tienen legitimación activa meramente para impugnar la validez de una actuación en representación de un interés general. En otras palabras, un legislador demandante no tiene legitimación activa al invocar un daño a nombre del interés público o como representante de su electorado. Véase id. (citando al reconocido constitucionalista Laurence Tribe, quien, al examinar la jurisprudencia pertinente, concluye que los legisladores *per se* no tienen legitimación para reclamar a nombre de la ciudadanía en general o el interés público). Añadió el Tribunal Supremo que un legislador no puede recurrir al foro judicial para impugnar la validez de una actuación estatal, luego de haber intentado fallidamente de convencer a su cuerpo legislativo. Id. a la pág. 842. En ese sentido, el Tribunal Supremo señala que,

> a través de todo el desarrollo doctrinal se entiende que lo que los legisladores realmente pretenden, al reclamar legitimación activa a base de un perjuicio general, es que los tribunales revoquen una decisión aprobada mayoritariamente en un proceso democrático en que no ha habido menoscabo alguno de sus prerrogativas legislativas.

Id. Se trata, pues, de un axioma jurisdiccional de que no puede reconocerse la legitimación de un legislador que pretende trasladar el debate legislativo al foro judicial. Id.

Varias fuentes federales apoyan esta conclusión al enfatizar que

> courts are justifiably cautious when individual congressmen seek to vindicate political rights as legislators…[because] misuse of courts…would encourage congressmen to bypass the political process to alter thereby a carefully developed balance between Congress and the President.

Id. a la págs. 842-43.

Posteriormente, en Hérnandez Torres v. Hernández Colón, 131 D.P.R. 593 (1992) (en adelante, "Hernández Torres II"), el Tribunal Supremo volvió a considerar el tema de legitimación activa legislativa. Esa vez, la Representante Hernández Torres

11

impugnó la constitucionalidad de una ley que regulaba la política pública de personas residentes de Puerto Rico que se mudaban a alguno de los estados de la Unión. Argumentó Hernández que tenía legitimación ya que sus prerrogativas legislativas se veían laceradas al tener que legislar sobre la asignación de recursos a una ley creada inconstitucionalmente. El Tribunal Supremo nuevamente rechazó el planteamiento de la demandante indicando que no se trata de articular prerrogativas abstractas, sino que tienen que verse comprometidas las prerrogativas legislativas establecidas claramente bajo el Artículo III, Sección 1 de la Constitución de Puerto Rico. _Véase_ _Hernández_ _Torres II_, 131 D.P.R. a la pág. 601. Es decir, "una mera alegación que no se le permite fiscalizar no tiene el efecto automático de otorgarle legitimación activa para presentar una acción ante los tribunales". _Id._ a la pág. 602. El Tribunal rechazó los planteamientos de la representante a los efectos que su daño, y por lo tanto su legitimación, emanaba de que la ley le impedía su función fiscalizadora. Señaló el Tribunal Supremo que la función fiscalizadora se ve lacerada cuando los mecanismos razonables y necesarios que hagan viable su participación plena en las etapas del proceso legislativo se ven menoscabados. _Id._ Sugiere el Tribunal Supremo en _Hernández_ _Torres II_ que, en el caso de los legisladores, los tribunales deben ser particularmente cuidadosos en lo que concierne al tema de legitimación activa ya que éstos están particularmente cercanos al proceso de aprobación de leyes y fiscalización del gobierno. Explicó su posición razonando que si se permitiera que los legisladores se apoyaran en tener legitimación por entender que alguna actuación es inconstitucional, quedaría paralizado el proceso legislativo. _Véase_ _id._ a la pág. 603. **Si su voto no es suficiente para convencer al cuerpo al que pertenece para compeler alguna acción, no puede pretender mediante la**

**presentación de una demanda burlar el proceso legislativo.** Véase
id. a la pág. 604, citando a Barnes v. Kline, 759 F.2d 21, 28
(D.C. Cir. 1984).

En el presente caso, no cabe duda que la Senadora carece de
legitimación activa para trabar esta Demanda. La solicitud para
que se dicte el *mandamus* y compeler la producción de los
Documentos descansa en su alegación que el no tenerlos afecten
"los derechos y prerrogativas de la Senadora" para poder
descargar su responsabilidad inherente de fiscalizar la Rama
Ejecutiva. Véase Demanda, ¶ 18. De esta forma, al igual que en
Hernández Torres y Hernández Torres II, estamos ante una
situación donde la Senadora invoca una prerrogativa de
fiscalización abstracta. No se trata de que a la Senadora no se
le ha permitido participar en un proceso legislativo, de alguna
comisión o que se le impidió siquiera solicitar la información.
Todo lo contrario, la Senadora presentó una petición ante el
Senado que fue denegada conforme al Reglamento de ese cuerpo.
Véase Hernández Torres II, 131 D.P.R. a la pág. 604 (carecía de
legitimación activa dado que a la representante no se le estaba
privando de ejercer su derecho a votar en cuanto a alguna
legislación, ni a discutir ni a convencer a sus opositores de
los efectos de la misma.) Si la misma fue denegada de acuerdo al
procedimiento aplicable, no puede entonces pretender lograr
judicialmente lo que no pudo conseguir legislativamente.

La Senadora hace referencia también a que los Documentos
son de alto interés público para la ciudadanía y necesarios para
informar sobre la transparencia gubernamental y la fiscalización
de la misma. Véase Demanda, ¶ 15. Sin embargo, nuestro Tribunal
Supremo resolvió en Hernández Torres I que los legisladores
demandantes no pueden sustentar su legitimación en la
representación del interés público. Véase Hernández Torres v.
Hernández Colón, 129 D.P.R. a la pág. 834. Tiene que verse

13

afectada su propia gestión de forma específica y no solamente
abstracta, como que se le deniegue acceso a una comisión a la
que tiene derecho a pertenecer o interfiera con una función que
específicamente le confiere la posición como la de participar en
comisiones, ocupar su escaño o poder votar. En vista de lo
anterior, no cabe duda que la Senadora carece de legitimación
activa en este caso, por lo que este Honorable Tribunal carece
de jurisdicción sobre la materia. Así, pues, debe desestimar la
Demanda al amparo de la Regla 10.2(1) de Procedimiento Civil.

**B. No Procede la Causa de Acción Contra el Sr. Portela Franco.**

*1. El Auto de Mandamus*

El auto de *mandamus* es uno altamente privilegiado que
podrá ser dictado por el Tribunal de Primera Instancia, y
dirigido a alguna persona o corporación, para requerir el
cumplimiento de algún acto que en dicho auto se exprese y que
éste dentro de sus atribuciones o deberes. Artículo 649 del
Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. §
3421. "Dicho auto no confiere nueva autoridad y la parte a
quien obliga deberá tener la facultad de poder cumplirlo." Id.
El auto de *mandamus* además sólo procede cuando la ley obliga a
la persona o corporación a un deber resultante de un empleo,
cargo o función pública. Artículo 650 del Código de
Enjuiciamiento Civil, 32 L.P.R.A. § 3422. Este deber es al que
nos referimos como el deber ministerial.

Para que un deber sea calificado como ministerial, sin
embargo, éste no puede permitir discreción alguna en su
ejercicio por parte del funcionario y, por lo tanto, tiene que
ser mandatorio e imperativo. Asociación de Maestros de Puerto
Rico v. Secretario de Educación, 178 D.P.R. 253 (2010); Noriega
v. Hernández Colón, 135 D.P.R. 406, 447-448 (1994). El Tribunal
Supremo de Puerto Rico ha descrito dicho deber ministerial como
"un acto en cuya ejecución no cabe ejercicio de discreción

alguna por parte de la persona que viene obligada a cumplirlo."

<u>Álvarez de Choudens v. Tribunal Superior</u>, 103 D.P.R. 235, 242 (1975).

> Asimismo, un acto es ministerial cuando la ley prescribe y define el deber que debe ser cumplido con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio. Por el contrario, cuando el acto que debe ser cumplido envuelve el ejercicio de discreción o juicio no es considerado meramente ministerial, y por ende, está fuera del ámbito del recurso.

<u>Partido Popular v. Junta de Elecciones</u>, 62 D.P.R. 745, 749 (1944).

Conforme a la definición de deber ministerial, se entiende que para que proceda la expedición de un auto de *mandamus* la obligación de actuar debe estar claramente definida por la ley y la ley debe, no sólo autorizar la acción que se requiera del funcionario, sino exigirla; el deber tiene que ser claro e indiscutible. <u>Id.</u> (citas omitidas). Y, este deber tiene que estar definido con precisión y certeza de forma que no se deje nada al ejercicio de la discreción o juicio del funcionario. <u>Asociación de Maestros</u>, 178 D.P.R. a la pág. 264 (citas omitidas); <u>Espina v. Calderón</u>, 75 D.P.R. 76, 84 (1953); <u>Gonzalo Rivera v. Hernández Ramírez</u>, 70 D.P.R. 549, 554 (1949). **Este derecho debe surgir de forma clara y patente de la ley que se invoca para justificar la expedición del *mandamus*.** <u>Hernández Agosto v. Romero Barceló</u>, 112 D.P.R. a la pág. 418; <u>Dávila v. Superintendente de Elecciones</u>, 82 D.P.R. 264 (1960) (énfasis añadido). Asimismo surge de la Regla 54 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. V, que dispone que el auto de *mandamus* sólo procede si el derecho a exigir la inmediata ejecución de un acto es evidente y cuando **no se pueda dar ninguna excusa para no ejecutarlo.** En <u>Asociación de Maestros de Puerto Rico v. Secretario de Educación</u>, <u>supra</u>, el Tribunal Supremo de Puerto Rico estableció que la carga probatoria para

establecer la existencia de un deber ministerial que justifique la expedición de un *mandamus* recae sobre el peticionario. Id. a la pág. 269. Dicha carga probatoria se satisface presentando evidencia de un derecho claro, específico e imperativo— que no permita el ejercicio de discreción por parte del funcionario llamado a cumplir— a favor del peticionario.

El *mandamus* procede **sólo** si existe un interés apremiante del solicitante y se requiere una solución pronta y definitiva. Dávila, 82 D.P.R. a las págs. 283-284 (énfasis añadido). Por lo tanto, para que deba expedirse un auto de *mandamus*, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Id. Se trata de un auto altamente privilegiado y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial. Id. Así, el Tribunal Supremo en Asociación de Maestros expresó que:

> la expedición de un mandamus no debe ser producto de un ejercicio mecánico o *ex debito justitiae*. Los tribunales deben realizar un balance entre los intereses en conflicto, sin obviar la utilidad social e individual de la decisión. **Es indispensable estimar qué efectos tendrá la expedición del auto en el adecuado cumplimiento de las responsabilidades del funcionario afectado y hasta qué punto habrá de beneficiar al requirente.** Procede establecer el más fino equilibro posible entre los diversos intereses de conflicto.

Asociación de Maestros, 178 D.P.R. la pág. 268 (citas omitidas) (énfasis añadido).

De ahí que el Tribunal Supremo de Puerto Rico haya establecido que el factor de mayor importancia y peso en la decisión de si conceder o no el auto de *mandamus* es el posible impacto que tendrá el *mandamus* sobre el interés público. Id.; Noriega, 135 D.P.R. a la pág. 448. A estos efectos, el Tribunal

16

Supremo también ha expresado que "la discreción del auto y su relación con el remedio en equidad implica, entonces, que el tribunal no está atado a un remedio fijo sino que se puede diseñar un remedio compatible con los intereses púbicos envueltos." <u>Asociación de Maestros</u>, 178 D.P.R. a las págs. 268-269 (citas omitidas). Y, conforme a lo anterior, aún si existiera un deber ministerial, el *mandamus* se puede denegar si el impacto negativo al interés público sería mayor al impacto positivo, si alguno, que tendría la expedición del *mandamus* para el promovente. <u>Id.</u> a la pág. 269.

2. ***Los requerimientos de la Senadora son vagos e imprecisos, por lo que ésta no puede establecer un derecho a exigir la inmediata ejecución de acto alguno.***

Aún si se entendiese que la Senadora tiene legitimación activa para presentar la Demanda de epígrafe, lo que se niega, sus requerimientos son vagos e imprecisos, por lo que no puede establecer un derecho a exigir la inmediata ejecución de acto alguno, mucho menos la producción de documentos. <u>Véase, por ejemplo</u>, <u>Romeu Matta v. Vázquez Morales</u>, Civil Núm. KLAN201100103, 2011 WL 2173648 *6-7 (TCA 28 de abril de 2011) (donde el Tribunal denegó sumariamente la expedición del *mandamus* debido a que la solicitud de documentos en cuestión era "una no específica y demasiado abarcadora para conceder").

La Senadora solicita que el Honorable Tribunal ordene a las partes demandadas a producir: "todos los documentos, estudios, informes, memorandos, cartas, análisis, estudios actuariales, informes de proyecciones de recortes e ingresos, gastos e inversiones y cualquier otro documento que fueran utilizados para la confección del Plan Fiscal para Puerto Rico." Demanda, Súplica, pág. 3. Nótese que en dichos requerimientos la Senadora no identifica un solo documento en particular sino que se limita a solicitar que se le provea copia de "los

documentos. . . que fueran utilizados para la confección del Plan Fiscal para Puerto Rico." Id.

Como bien conoce la Senadora, el Plan Fiscal para Puerto Rico consta de docenas de páginas con información detallada sobre un sinnúmero de materias, incluyendo proyecciones financieras, así como la metodología, supuestos y factores utilizados para preparar dichas proyecciones, varias medidas específicas de reforma fiscal, diversas reformas estructurales, análisis de sustentabilidad de la deuda, liquidez, reformas de control fiscal, y el cumplimiento con ciertas secciones de la *Puerto Rico Oversight, Management, and Economic Stability Act*, conocida como PROMESA (por sus siglas en inglés), Pub. L. 114-187, entre otras. El proceso de aprobación del Plan Fiscal para Puerto Rico fue uno transparente. En efecto, tanto el Plan Fiscal como comunicaciones entre el Gobierno de Puerto Rico y la Junta de Supervisión Fiscal para Puerto Rico están disponibles al público en general en la página web de la Junta. Véase https://juntasupervision.pr.gov/index.php/en/documents/.

En su Demanda, la Senadora ni siquiera hace referencia a alguna página, párrafo, tabla o sección del Plan Fiscal con relación al cual solicita documentos. Mucho menos identifica un documento en específico cuya producción requiere. Ello imposibilita determinar la razonabilidad de la solicitud de la Senadora así como la identificación de documentos responsivos, sus custodios y si los mismos son documentos públicos o si están revestidos de confidencialidad por algún estatuto. Por ende, la vaguedad e imprecisión de la solicitud de la Senadora la hace imposible de atender y requiere la desestimación del recurso en cuestión. Véase Romeu Matta v. Vázquez Morales, 2011 WL 2173648 a la pág. *7.

En efecto, la falta de especificidad del remedio solicitado impide la expedición de un *mandamus*. Según indicamos

18

anteriormente, como parte peticionaria, la Senadora tiene el peso de probar la existencia de un deber ministerial que justifique la expedición de un *mandamus*. Véase Asociación de Maestros, 178 D.P.R. a la pág. 269. Dicha carga probatoria se satisface presentando evidencia de un derecho claro, específico e imperativo — que no permita el ejercicio de discreción por parte del funcionario llamado a cumplir — a favor del peticionario. Id. Para ello, la Senadora debió establecer una obligación de actuar claramente definida por ley que exija de forma indiscutible la acción que busca. Véase Partido Popular, 62 D.P.R. a la pág. 749. Puesto que la Senadora no ha detallado los documentos que alega tener derecho a obtener, ésta no puede establecer que goza de un derecho claro, específico e imperativo que justifique la expedición de un *mandamus* en este caso. Véase, por ejemplo, Romeu Matta v. Vázquez Morales, 2011 WL 2173648 a la pág. *7 (donde el Tribunal concluye "que por la naturaleza de la amplitud y diversidad de la información solicitada debemos denegar la expedición del recurso en cuestión."). Por ende, se debe desestimar la Demanda al amparo de la Regla 10.2(5) de Procedimiento Civil.

3. *El mandamus debe ser denegado toda vez que no existe un deber ministerial por parte del Sr. Portela Franco para custodiar o producir la documentación solicitada.*

Según indicamos anteriormente, no procede la expedición del *mandamus* cuando la solicitud no pide el cumplimiento de un deber ministerial expreso y particularmente ordenado por la ley. Álvarez de Choudens, 103 D.P.R. a la pág. 242. Asimismo, el Artículo 649 del Código de Enjuiciamiento Civil de Puerto Rico, es claro en cuanto que "[d]icho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo." 32 L.P.R.A. § 3421. En este caso, aún si se entendiese que la Senadora tiene legitimación activa para presentar la Demanda de epígrafe, lo que se niega, y que sus

requerimientos de producción de documentos son claros y
precisos, lo que tampoco es el caso, de todas formas el
*mandamus* debe ser denegado toda vez que no existe un deber
ministerial por parte del Sr. Portela Franco, como Director
Ejecutivo de la AAFAF, de custodiar o producir los Documentos.

El puesto de Director Ejecutivo de la AAFAF fue creado por
la Ley 2-2017, Ley de la Autoridad de Asesoría Financiera y
Agencia Fiscal de Puerto Rico. En lo concerniente a las
funciones del Director Ejecutivo, el Artículo 7(b) de la Ley 2-
2017 establece:

> Las funciones del Director Ejecutivo incluirán, sin
> que constituya una limitación, las siguientes:
>
> i. ser el principal oficial ejecutivo de la
>    Autoridad;
>
> ii. preparar y presentar a la Junta el plan de
>     trabajo y el presupuesto anual de la Autoridad;
>
> iii. autorizar y supervisar cualquier contrato que sea
>      necesario para el funcionamiento de la Autoridad
>      sujeto a las normas que establezca la Junta;
>
> iv. establecer, organizar, dirigir y supervisar la
>     estructura administrativa de la Autoridad;
>
> v. contratar personal y profesionales, incluyendo
>    asesores legales, consultores financieros, y
>    economistas, bajo términos razonables y según
>    determine la Autoridad, para ayudar al Director
>    Ejecutivo en el ejercicio de las funciones de la
>    Autoridad;
>
> vi. establecer los niveles de funcionamiento de las
>     operaciones de la Autoridad, incluyendo el poder
>     de reclutar y contratar a cualquiera de los
>     funcionarios y empleados bajo su supervisión,
>     sujeto a las normas que establezca la Junta; y
>
> vii. desempeñar todas aquellas otras funciones que le
>      sean asignadas por la Junta.

Ley 2-2017, Artículo 7(b).

Según surge de la Ley 2-2017, el Sr. Portela Franco, como
director Ejecutivo de la AAFAF, no está llamado por ley a
custodiar documento alguno, mucho menos a producirlo a la
Senadora. Ello explica porque la Senadora no hizo referencia en
su Demanda a alguna ley o jurisprudencia que establezca tal

deber ministerial por parte del Sr. Portela Franco. La Demanda se limita a citar de manera general la Ley 2-2017, que tampoco le impone a nadie tal obligación. <u>Véase</u> Demanda, ¶ 16 (citando la Ley 2-2017, Artículo 5(a), el que establece "[l]a Autoridad es creada con el propósito de que actúe como agente fiscal, asesor financiero y agente informativo de todos los entes del Gobierno de Puerto Rico y para asistir tales entidades en confrontar la grave crisis fiscal y emergencia económica por la que atraviesa Puerto Rico"); <u>véase, además</u>, <u>Álvarez de Choudens</u>, 103 D.P.R. a la pág. 242 (donde no procedía "la expedición del *mandamus* por no tratarse de un deber ministerial expreso y particularmente ordenado por la ley."). La ausencia de dicho deber, por sí solo, hace forzosa la desestimación de la Demanda de epígrafe al amparo de la Regla 10.2(5) de Procedimiento Civil.

**C. La Demanda Obvió Incluir una Parte Indispensable.**

Hace más de un siglo que el Tribunal Supremo de Puerto Rico resolvió que la parte que estuviere en la obligación de ejecutar el acto de que se trate es la verdadera y única parte que necesariamente tiene que ser demandada en el procedimiento de *mandamus*. <u>Véase</u> <u>Delgado v. El Consejo Ejecutivo de Puerto Rico</u>, 7 D.P.R. 410 (1904).

Por otra parte, la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, provee que una parte indispensable es aquella que "tenga un **interés común sin cuya presencia** no pueda adjudicarse la controversia". 32 L.P.R.A. Ap. V, R. 16.1. Según lo ha establecido el Tribunal Supremo de Puerto Rico, el concepto ***interés común*** no se refiere a "cualquier interés en el pleito. Tiene que ser un interés de tal orden que impida la confección de un decreto sin afectarlo". <u>Hernández Agosto v.</u> <u>López Nieves</u>, 114 D.P.R. a la pág. 607. Dicho interés, a su vez, debe ser uno "de índole real e inmediata" <u>Id.</u> a la pág. 611.

De otro lado, una parte **sin cuya presencia pueda adjudicarse la controversia** es "aquella... cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio". <u>García Colón v. Sucesión González</u>, 178 D.P.R. 527, 549 (2010); <u>Fuentes v. Tribunal de Distrito</u>, 73 D.P.R. 959, 981 (1952). En todo caso, cuando la parte demandante ha dejado de acumular una parte indispensable, procede que se desestime su causa de acción. Ello, por virtud expresa de la Regla 10.2(6) de Procedimiento Civil. 32 L.P.R.A. Ap. V.

En su Demanda la Senadora sí hizo referencia al Artículo 5 de la Ley 2-2017 para alegar que el mismo crea un deber ministerial por parte de los demandados de producir los Documentos. La Senadora se equivoca. En efecto, como discutimos anteriormente, el mencionado Artículo 5 trata exclusivamente de los propósitos, facultades y poderes de la AAFAF, quien, a pesar de ser una corporación pública e instrumentalidad del Gobierno de Puerto Rico con capacidad para demandar y ser demandada, **no** es una parte en este pleito. <u>Véase</u> Ley 2-2017, Artículos 4 y 5(d)v; <u>véase, además</u>, Demanda. En lo pertinente, el Artículo 5 de la Ley 2-1017 establece:

> (a)    La Autoridad es creada con el propósito de que actúe como agente fiscal, asesor financiero y agente informativo de todos los entes del Gobierno de Puerto Rico y para asistir tales entidades en confrontar la grave crisis fiscal y emergencia económica por la que atraviesa Puerto Rico. La Autoridad será el ente gubernamental encargado de la colaboración, comunicación y cooperación entre el Gobierno de Puerto Rico y la Junta de Supervisión Fiscal, creada a tenor con PROMESA.

> (b)    A tales fines, la Autoridad estará facultada para colaborar junto con el Gobernador de Puerto Rico y sus representantes en la creación, ejecución, supervisión y fiscalización de cualquier Plan Fiscal (*Fiscal Plan*) y de cualquier Presupuesto (*Budget*), según dichos términos se definen en PROMESA. Asimismo, la Autoridad será el ente gubernamental encargado de la supervisión, ejecución y administración del Plan Fiscal aprobado y certificado a tenor con PROMESA y

velará por que todos los entes del Gobierno de Puerto
Rico cumplan con el Plan Fiscal, según este sea
debidamente aprobado. En ese sentido, la Autoridad
desarrollará un programa abarcador de auditoría
operacional, gerencial y/o administrativa dirigido a
supervisar el cumplimiento de todo ente del Gobierno
de Puerto Rico con el Plan Fiscal aprobado en
conformidad con PROMESA.

Ley 2-1017, Artículo 5.

A tenor con lo anterior, la AAFAF es la entidad que podría
tener conocimiento sobre los documentos solicitados por la
Senadora, sus custodios y si los mismos son documentos públicos
o si están revestidos de confidencialidad por algún estatuto.
Por ende, si se entendiese que la Senadora tiene legitimación
activa para presentar la Demanda de epígrafe, lo que se niega, y
que alguien tendría el deber de custodiar los Documentos, lo que
también se niega, el Honorable Tribunal no podría conceder un
remedio completo y adecuado sin la presencia de la AAFAF. De
proseguir con la celebración de los procedimientos sin la AAFAF,
quien, entre otras cosas, podría tener interés sobre la
confidencialidad de los Documentos, sus derechos pueden verse
sustancialmente afectados. Por ende, a tenor con la Regla
10.2(6) de Procedimiento Civil, el pleito del epígrafe debe ser
desestimado inmendiatamente ante la ausencia de una parte
indispensable.

## IV. CONCLUSIÓN

Por todos los fundamentos discutidos anteriormente,
procede que este Honorable Tribunal desestime la Demanda de
epígrafe. La Senadora no tiene legitimación activa para el
remedio solicitado, por lo que este Honorable Tribunal carece
de jurisdicción sobre la materia. Además, aún si tuviera
jurisdicción sobre la materia, lo que se niega, los
requerimientos de la Senadora son vagos e imprecisos, por lo
que ésta no puede establecer un derecho a exigir la inmediata
ejecución de acto alguno. En cualquier caso, la Demanda deja de

exponer una reclamación contra el Sr. Portela Franco, ya que éste no tiene deber ministerial alguno de custodiar o producir los Documentos. De alguien tener tal deber ministerial, lo que se niega, dado el texto de la Ley 2-2017, la Senadora dejó de acumular una parte indispensable, puesto ésta obvió incluir a la AAFAF en la Demanda. Por ende, procede que este Honorable Tribunal declare la Demanda de Mandamus NO HA LUGAR y desestime la misma con perjuicio al amparo de las Reglas 10.2(1),(5) y (6) de Procedimiento Civil.

**POR TODO LO CUAL**, respetuosamente se solicita de este Honorable Tribunal que: (1) desestime la Demanda de epígrafe; (2) y que ordene a la Peticionaria a sufragar las costas, los gastos y los honorarios de abogados incurridos por el Sr. Portela Franco para defenderse de una causa de acción que a todas luces es improcedente en Derecho.

**RESPETUOSAMENTE SOMETIDO**

En San Juan, Puerto Rico, a 9 de abril de 2017.

**CERTIFICO:** Haber enviado copia fiel y exacta de este escrito a la representación legal de la Peticionaria, el Lcdo. Ramón A. Torres Cruz, a través del Sistema Unificado de Manejo y Administración de Casos ("SUMAC").

**PIETRANTONI MENDEZ & ALVAREZ LLC**
Popular Center, Piso 19
208 Ave. Ponce de León
San Juan, Puerto Rico 00918
Teléfono: (787) 274-1212
Facsímil: (787) 274-1470

F/ Oreste R. Ramos
RUA Núm. 12703
oramos@pmalaw.com

F/Diego Murgia Díaz
RUA Núm. 16825
dmurgia@pmalaw.com

Case 3:17-cv-01642 Document 1-11 Filed 05/12/17 Page 32 of 32

LOS FUNCIONARIOS DE LA AAFAF ESTÁN EXENTOS DEL PAGO DE
DERECHOS, INCLUYENDO LOS PRESCRITOS PARA LA INSCRIPCIÓN DE
DOCUMENTOS, SEGÚN DISPUESTO POR LAS LEYES 2-2017, NÚM. 17 DEL
23 DE SEPTIEMBRE DE 1948, 7 L.P.R.A. 551, 553 (2006) Y NÚM. 25
DEL 10 DE JUNIO DE 1959, 30 L.P.R.A. 1770C (2005).