## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS & TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |
| ASSURED GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; FINANCIAL GUARANTY INSURANCE COMPANY; and NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO; FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; HON. RICARDO ANTONIO ROSSELLÓ NEVARES; GERARDO PORTELA FRANCO; CARLOS CONTRERAS APONTE; JOSÉ IVÁN MARRERO ROSADO; HON. RAÚL MALDONADO GAUTIER; and NATALIE A. JARESKO,<br><br>Defendants. | Adversary Proceeding<br><br>No. 17-_____ |

## ADVERSARY COMPLAINT

Plaintiffs Assured Guaranty Corp. ("AGC") and Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc. ("AGM" and, together with AGC, "Assured"), by their attorneys Casellas Alcover & Burgos P.S.C. and Cadwalader, Wickersham & Taft LLP, Financial Guaranty Insurance Company ("FGIC"), by its attorneys Rexach & Picó, CSP and Butler Snow LLP, and National Public Finance Guarantee Corporation ("National" and, together with Assured and FGIC, the "Plaintiffs"), by and through its attorneys Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C., and Weil, Gotshal & Manges LLP, for their Adversary Complaint against defendants Commonwealth of Puerto Rico ("Commonwealth"), Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), Puerto Rico Highways and Transportation Authority ("PRHTA"), Hon. Ricardo Antonio Rosselló Nevares, Gerardo Portela Franco, Carlos Contreras Aponte, José Iván Marrero Rosado, Hon. Raúl Maldonado Gautier, and Natalie A. Jaresko (collectively, the "Defendants"), allege as follows:

## NATURE OF THIS ADVERSARY PROCEEDING

1.      Plaintiffs insure bonds issued by Defendant PRHTA (the "PRHTA Bonds").  The PRHTA Bonds are secured by liens on pledged special revenues.

2.      Since at least November 2015, Defendants Commonwealth and PRHTA have engaged in a pattern of unlawfully evading the payment of their debts, in the process going to extreme lengths to impair Plaintiffs' contractual rights and invade their property interests by diverting the pledged special revenues from payment of the PRHTA Bonds to other, unauthorized uses.  These revenue grabs by the Commonwealth effectively take pledged special revenues that are property of PRHTA held in trust for holders of PRHTA Bonds and illegally divert them to the Commonwealth's General Fund.  This is a result that disregards the corporate

separateness of PRHTA and undermines Title III of PROMESA, which does not permit substantive consolidation of affiliated debtors.  48 U.S.C. § 2164(a), (f).

3.      Most recently, Governor Rosselló's administration, aided and abetted by Defendant Oversight Board, has sought to perpetuate the Commonwealth's illegal and unconstitutional modifications of debt priorities and diversions of pledged special revenues through (i) the development and approval of the Commonwealth's 2017-2026 fiscal plan (the "Illegal Commonwealth Fiscal Plan") (attached as "Exhibit A"); (ii) the development and approval of PRHTA's 2017-2026 fiscal plan (the "Illegal PRHTA Fiscal Plan" (attached as "Exhibit B"), and together with the Illegal Commonwealth Fiscal Plan, the "Illegal Fiscal Plans"); and (iii) the enactment of a "Fiscal Plan Compliance Law" (Act No. 26-2017, the "Fiscal Plan Act") that implements and perpetuates the contract impairments and illegal confiscations of property mandated by the Illegal Fiscal Plans.

4.      Plaintiffs seek enforcement of the special revenue protections of the Bankruptcy Code (11 U.S.C. §§ 902, 922(d), 928(a)), which Congress incorporated into Title III proceedings under PROMESA.  See 48 U.S.C. § 2161.  These federal statutory protections ensure that, among other things, post-petition special revenues remain subject to a contractual lien on such revenues and the filing of a Title III petition does not operate as a stay against the application of pledged special revenues to the repayment of debt.  These protections guarantee that secured revenue bondholders, such as Plaintiffs, receive the benefit of their bargain by protecting the lien on post-petition revenues and exempting the application of such revenues from the automatic stay.[1]

---

[1]    This action solely seeks to enforce the special revenue provisions in the Bankruptcy Code and does not seek any relief as to the Illegal Fiscal Plans and the Fiscal Plan Act.  On May 3, 2017, Assured and National filed an adversary proceeding seeking declaratory and injunctive relief because the Illegal Commonwealth Fiscal Plan and the Fiscal Plan Act violate PROMESA and the United States Constitution

5.      The PRHTA Bonds are secured by "special revenues" as defined in Section 902 of the Bankruptcy Code, and are therefore entitled to special revenue protections in these Title III proceedings.  Defendants' failure to remit such revenues for the payment of debt service directly violates these special revenue protections.  Accordingly, through this adversary proceeding, Plaintiffs seek a declaration that the Defendants have violated Sections 922(d) and 928(a) of the Bankruptcy Code, and that efforts to compel the Defendants to transfer such revenues to pay for debt service are not stayed pursuant to Section 922(d) of the Bankruptcy Code.

6.      In addition to declaratory relief, Plaintiffs also seek injunctive relief prohibiting Defendants from taking or causing to be taken any action that would further violate Sections 922(d) and 928(a) of the Bankruptcy Code and ordering Defendants to remit revenues securing the PRHTA Bonds in accordance with Sections 922(d) and 928(a) of the Bankruptcy Code.

## **THE PARTIES**

7.      Plaintiff AGC is a Maryland insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.

8.      Plaintiff AGM is a New York insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.

---

(the "U.S. Constitution").  See Assured Guaranty Corp. v. Commonwealth of Puerto Rico, No. 3:17-AP-00125-LTS.  Plaintiffs reserve the right to challenge the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act (the "First Moratorium Act"), the Puerto Rico Financial Emergency and Fiscal Responsibility Act (the "Second Moratorium Act"), any executive order issued or continued under the First Moratorium Act or the Second Moratorium Act, or any other law or executive order under which Defendants may purport to divert pledged special revenues from their lawful uses.  Plaintiffs also reserve the right to seek adequate protection with respect to their interests in the PRHTA Pledged Special Revenues in the event the Defendants for any reason refuse to remit the PRHTA Pledged Special Revenues for application to the payment of the PRHTA Bonds.

9.     Plaintiff FGIC is a New York stock insurance corporation with its principal place of business at 463 Seventh Avenue, 16th Floor, New York, New York 10018.

10.     Plaintiff National is a New York insurance company with its principal place of business at 1 Manhattanville Road, Purchase, NY 10577.

11.     Defendant Commonwealth is a territory of the United States.

12.     Defendant Oversight Board was created under Section 101(b)(1) of PROMESA (48 U.S.C. § 2121(b)(1)) as an "entity within the [Commonwealth] government." Id. § 2121(c)(1).

13.     Defendant AAFAF is a public corporation organized under the laws of the Commonwealth.

14.     Defendant PRHTA is a public corporation organized under the laws of the Commonwealth.

15.     Defendant Hon. Ricardo Antonio Rosselló Nevares ("Governor Rosselló") is the Governor of the Commonwealth.  Plaintiffs sue Governor Rosselló, and any successors thereto, in his official capacity.

16.     Defendant Gerardo Portela Franco (the "AAFAF Executive Director") is the Executive Director of AAFAF and in that capacity is empowered to implement the Illegal Fiscal Plans.  Plaintiffs sue the AAFAF Executive Director, and any successors thereto, in his official capacity.

17.     Defendant Carlos Contreras Aponte (the "PRHTA Executive Director") is the Executive Director of PRHTA and in that capacity is empowered to implement the Illegal Fiscal Plans.  Plaintiffs sue the PRHTA Executive Director, and any successors thereto, in his official capacity.

-5-

18.     Defendant José Iván Marrero Rosado (the "OMB Director") is the Director of the Commonwealth's Office of Management and Budget (the "OMB") and in that capacity is empowered to implement the Illegal Fiscal Plans.  Plaintiffs sue the OMB Director, and any successors thereto, in his official capacity.

19.     Defendant Hon. Raúl Maldonado Gautier (the "Secretary of Treasury") is the Secretary of Treasury of the Commonwealth and in that capacity is empowered to implement the Illegal Fiscal Plans.  Plaintiffs sue the Secretary of Treasury, and any successors thereto, in his official capacity.

20.     Defendant Natalie A. Jaresko (the "Oversight Board Executive Director") is the Executive Director of the Oversight Board and in that capacity is empowered to implement the Illegal Fiscal Plans.  Plaintiffs sue the Oversight Board Executive Director, and any successors thereto, in her official capacity.

## **JURISDICTION, VENUE AND STANDING**

21.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA.  In addition, this Court has jurisdiction under Section 106(a) of PROMESA, which grants jurisdiction to this Court over "any action against the Oversight Board, and any action otherwise arising out of [PROMESA], in whole or in part."  48 U.S.C. § 2126(a).  Further, this Court has jurisdiction under Section 306(a), which grants this Court original and exclusive jurisdiction of all cases under Title III of PROMESA and original jurisdiction of all civil proceedings arising under Title III of PROMESA or arising in or related to cases under Title III of PROMESA.  Id. § 2166(a)(2).

22.     This Court has personal jurisdiction over all of the Defendants pursuant to Section 306(c) of PROMESA.  48 U.S.C. § 2166(c).

23.     Plaintiffs seek a declaration and related relief in this case of actual controversy pursuant to 28 U.S.C. §§ 2201 and 2202.  An actual and justiciable controversy has arisen and exists between the parties with respect to the issues and claims alleged herein.

24.     This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and Section 310 of PROMESA, which provides "[t]he Federal Rules of Bankruptcy Procedure shall apply to a case under [Title III of PROMESA] and to all civil proceedings arising in or related to cases under [Title III of PROMESA]."  48 U.S.C. § 2170; Fed. R. Bankr. P. 7001.

25.     Venue is proper in this District under Section 307 of PROMESA. 48 U.S.C. § 2167.

26.     Plaintiffs have standing to bring this adversary proceeding, including as parties in interest in these Title III cases.  Under each Plaintiff's respective insurance agreements, insurance policies, and applicable bond documents, it is deemed to be the sole owner of the PRHTA Bonds that it insures for purposes of consents and other bondholder actions, including exercising rights and remedies, or each Plaintiff otherwise has control rights over such bonds.

27.     Plaintiffs are also express third party beneficiaries of the resolutions under which the PRHTA Bonds were issued.  As such, as Section 301(c)(3)(B) of PROMESA expressly recognizes, financial guaranty insurers such as Plaintiffs are authorized to act on behalf of the holders of the bonds they insure, including in litigation generally, in these Title III cases, and in this adversary proceeding, and Plaintiffs' rights to act on behalf of PRHTA Bondholders is not dependent upon a default or subrogation.  48 U.S.C. § 2161(c)(3)(B).  In addition, however, Assured and National have been subrogated to the rights of PRHTA Bondholders upon paying the claims of such PRHTA Bondholders following a default by PRHTA, as set forth below.

28.     Payment by Plaintiffs neither satisfies nor discharges an issuer's obligation to pay and, to the extent Plaintiffs make principal or interest payments to bondholders, Plaintiffs obtain assignments of rights from the bondholders, become the owner of the bonds, or become subrogated to the rights of bondholders and effectively step into the shoes of such bondholders.

## FACTS

29.     Plaintiffs are providers of financial guaranty insurance, which is a type of insurance whereby an insurer guarantees scheduled payments of interest and principal as and when due on a bond or other obligation.  Plaintiffs insure scheduled principal and interest payments when due on municipal, public infrastructure, and structured financings both in the United States and around the world.

30.     Governments, including the Commonwealth and its public corporations, have historically taken advantage of financial guaranty insurance because it significantly enhances their ability to raise funds at a lower interest rate.  The economic value of financial guaranty insurance to the issuers is a savings in interest costs, reflecting the difference in yield payable on the higher rated insured obligation from that on the same lower rated obligation if uninsured.  Such insurance is especially important to issuers such as the Commonwealth and its public corporations who have—and will have—significant borrowing needs, notwithstanding their lower credit rating.

## I.     The PRHTA Bonds

31.     Plaintiffs Assured and FGIC insure bonds (collectively, the "Authority Bonds") issued by PRHTA, the Puerto Rico Convention Center District Authority ("PRCCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA", and together with PRHTA

-8-

and PRCCDA, the "Authorities").    National also insures bonds issued by PRHTA.    The
Authority Bonds, including the PRHTA Bonds, are secured by statutory and contractual liens on
specific pledged special revenue streams (collectively, the "Pledged Special Revenues").  Each
of the Authorities, including Defendant PRHTA, is a public corporation separate and distinct
from   the   Commonwealth,   and   under   the   Authorities'   respective   enabling   acts,   the
Commonwealth (prior to its illegal diversion of their revenues) is not responsible for the
Authorities' bond debts, just as the Authorities, including Defendant PRHTA, are not responsible
for the general fund obligations of the Commonwealth.

       32.    PRHTA was created by Act No. 74-1965 (the "PRHTA Enabling Act") to
assume responsibility for the construction of highways and other transportation systems in Puerto
Rico.    Pursuant to the PRHTA Enabling Act, PRHTA has issued the PRHTA Bonds under
general bond resolutions (the "PRHTA Resolutions") adopted in 1968 and 1998.

       33.    Pursuant to the PRHTA Enabling Act and PRHTA Resolutions, the
PRHTA Bonds are secured by a gross lien on (i) revenues derived from PRHTA's toll facilities
(the "Pledged Toll Revenues"); (ii) gasoline, diesel, crude oil, and other special excise taxes
levied by the Commonwealth (the "PRHTA Pledged Tax Revenues"); and (iii) special excise
taxes consisting of motor vehicle license fees collected by the Commonwealth (the "Vehicle
Fees", and together with the PRHTA Pledged Tax Revenues, the "PRHTA Pledged Special
Excise Taxes").

       34.    The Secretary of Treasury is required by statute to transfer the PRHTA
Pledged Special Excise Taxes to PRHTA each month for the benefit of PRHTA Bondholders,
and the PRHTA Pledged Special Excise Taxes constitute trust funds that are property of the
PRHTA Bondholders and not of the Commonwealth.  See, e.g., 13 L.P.R.A. § 31751(a)(1); 9
L.P.R.A.  §§ 2013(a)(2), 2021, 5681.    The Commonwealth has explicitly acknowledged in

legislation that the PRHTA Pledged Special Excise Taxes are imposed to finance highway, traffic, and transportation facilities and systems.  See, e.g., Act No. 1-2015 § 2.01(i).

35.    The Pledged Toll Revenues likewise constitute trust funds collected and held by PRHTA on behalf of PRHTA Bondholders and are property of the PRHTA Bondholders and not of the Commonwealth.  See 9 L.P.R.A. § 2013(a)(2).

36.    The PRHTA Resolutions require PRHTA to transfer the Pledged Toll Revenues and the PRHTA Pledged Special Excise Taxes (collectively, the "PRHTA Pledged Special Revenues") to the fiscal agent for the PRHTA Bonds (the "PRHTA Fiscal Agent") on a monthly basis.  The Commonwealth covenanted with the holders of the PRHTA Bonds in the PRHTA Enabling Act that it would "not limit or restrict the rights or powers . . . vested in [PRHTA by the PRHTA Enabling Act] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged."  9 L.P.R.A. § 2019.

37.    PRHTA Bonds are non-recourse bonds, payable solely from the PRHTA Pledged Special Revenues.  Moreover, because PRHTA Bonds are secured by a "gross lien" on all of the PRHTA Pledged Special Revenues, operating expenses of PRHTA may only be paid *after* PRHTA satisfies its debt service and reserve fund requirements with respect to PRHTA Bonds.

38.    Assured insures approximately $1.5 billion of PRHTA Bonds currently outstanding.   Under its insurance agreements, insurance policies, and applicable bond documents, Assured is deemed to be the sole owner of the PRHTA Bonds that it insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies of PRHTA Bondholders.  Assured is also recognized as a third-party beneficiary under the PRHTA Resolutions and has standing to enforce any right, remedy, or claim.

-10-

39.     FGIC insures approximately $447 million of PRHTA Bonds currently outstanding.   Under its insurance agreements, insurance policies, and applicable bond documents, FGIC is deemed to be the sole owner of the PRHTA Bonds that it insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies of PRHTA Bondholders.  FGIC is also recognized as a third-party beneficiary under the PRHTA Resolutions and has standing to enforce any right, remedy, or claim.

40.     National insures approximately $706 million of PRHTA Bonds currently outstanding.   Under its insurance agreements, insurance policies, and applicable bond documents, National is deemed to be the sole owner of the PRHTA Bonds that it insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies of PRHTA Bondholders.  National is also recognized as a third-party beneficiary under the PRHTA Resolutions.

41.     On July 1, 2016, PRHTA defaulted on a debt service payment on PRHTA Bonds aggregating approximately $4.5 million.  Of that amount, approximately $4 million of the July 1 default was insured and paid by National and $83,039.34 was reinsured and paid by Assured.   On January 1, 2017, PRHTA defaulted on a debt service payment totaling approximately $1 million on bonds insured by National.  National paid claims to insured bondholders as a result of that default.  Plaintiffs are now fully subrogated to the rights of the PRHTA Bondholders whose claims they paid.

42.     Because of the Commonwealth's ongoing diversion of the PRHTA Pledged Special Revenues, another default on the PRHTA Bonds will occur on July 1, 2017.  As a result of the July 1, 2017 default, Assured will be required to pay approximately $53.8 million

in claims to PRHTA Bondholders, resulting in further economic injury and significant, material, and irreparable harm to Assured.

43.     As a result of the July 1, 2017 default, FGIC will likewise be required to make payments to PRHTA Bondholders in respect of as much as approximately $27.3 million of claims, resulting in economic injury and significant, material, and irreparable harm to FGIC.

44.     National insures $21.6 million in principal and $18.1 million in interest payments that come due on July 1, 2017.  As a result of the July 1, 2017 default, National will likewise be required to pay claims to PRHTA Bondholders, resulting in further economic injury and significant, material, and irreparable harm to National.

## II.     Lawful Priorities Under Commonwealth Law

45.     A number of provisions of the constitution of the Commonwealth (the "Commonwealth Constitution") and of Commonwealth statutory law define the relative priority of (i) the Authority Bonds, including the PRHTA Bonds, and (ii) the other obligations of the Commonwealth and Authorities.  These constitutional and statutory provisions are incorporated into Plaintiffs' respective contracts with the Commonwealth and Authorities.  In an earlier decision denying motions to dismiss Assured and FGIC's respective complaints challenging the Commonwealth's ongoing misappropriation of the PRHTA Pledged Special Excise Taxes and the special excise taxes securing bonds issued by PRCCDA and PRIFA (collectively, the "Pledged Special Excise Taxes"), Judge Francisco A. Besosa of this Court carefully described and set out these priorities.  Assured Guar. Corp. v. García-Padilla, 214 F. Supp. 3d 117, 119-22 (D.P.R. 2016).  The relevant provisions include the following:

A.    **The Constitutional Debt Priority Provision**

46.    Section 8 of Article VI of the Commonwealth Constitution (the "Constitutional Debt Priority Provision") creates a priority for "public debt" over the Commonwealth's other expenditures by requiring the "public debt" to be paid "first":

> In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, ***interest on the public debt and amortization thereof shall first be paid***, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

P.R. Const. art. VI, § 8 (emphasis added).

47.    Public debt thus enjoys a priority (the "Public Debt Priority") over all other government expenditures whenever available resources are not sufficient to meet appropriations.   Because of its constitutional status, the Public Debt Priority cannot be overridden by the Commonwealth's police power, even in a financial emergency.   See, e.g., Flushing Nat'l Bank v. Mun. Assistance Corp. for N.Y., 358 N.E.2d 848, 852 (N.Y. 1976) (holding that a "fugitive recourse to the police power" may not be used to "displace inconvenient but intentionally protective constitutional limitations").

48.    Moreover, after giving effect to the Public Debt Priority, the Constitutional Debt Priority Provision incorporates other legal priorities, created by statute, by stating that, following payment of the public debt, "other disbursements shall . . . be made in accordance with the order of priorities established by law."  P.R. Const. art. VI, § 8.  Among the statutory priorities incorporated into the Constitutional Debt Priority Provision and thereby granted constitutional protection are (i) the statutory priorities established by certain provisions (the "Authority Bond Priority Provisions") of the statutes governing the Authority Bonds, including the PRHTA Bonds, and (ii) the statutory priorities established by the Commonwealth's Management and Budget Office Organic Act (Act No. 147-1980, the "OMB Act").

-13-

**B.**     **The Authority Bond Priority Provisions**

49.     In order to make the Authority Bonds, including the PRHTA Bonds, attractive to investors, the statutes governing the Authority Bonds grant Authority Bondholders the most senior possible lien on the Pledged Special Excise Taxes consistent with the Constitutional Debt Priority Provision.  To this end, these statutes grant Authority Bondholders first-priority liens on the Pledged Special Excise Taxes, subject only to the conditions that, in a fiscal year in which the Constitutional Debt Priority Provision is in effect, the Pledged Special Excise Taxes may (i) be used ***solely*** to pay the public debt, but (ii) ***only if the public debt remains unpaid after a first application of all available resources to the payment of public debt***.

50.     Together, the above two preconditions to any "clawback" of Pledged Special Excise Taxes[2] establish the priority (the "Authority Bond Priority") of the Authority Bonds, including the PRHTA Bonds, over ***all*** disbursements other than public debt that might be made during a fiscal year in which the Constitutional Debt Priority Provision is in effect.  Except where ***both*** of these conditions to a "clawback" have been satisfied, the Authority Bonds, including the PRHTA Bonds, are fully secured by contractual and statutory liens on the applicable Pledged Special Excise Taxes and cannot be impaired without violating Commonwealth law and the Contracts and Takings Clauses of the U.S. and Commonwealth Constitutions.  As Judge Besosa described it, "[t]he funds from these taxes and tax liens may be used to pay the public debt if no other Commonwealth resources are available."  Assured Guar., 214 F. Supp. 3d at 121.

---

[2]     Because the Pledged Toll Revenues do not constitute "available resources," they can never be subject to "clawback" to pay the public debt.

51.   The Authority Bond Priority, including these two preconditions to any clawback, is expressly set forth in the following Authority Bond Priority Provisions governing the pledge of the PRHTA Pledged Special Excise Taxes to the payment of the PRHTA Bonds:

(a)   **PRHTA Pledged Tax Revenues Pledged to Payment of PRHTA Bonds:** "The proceeds of said collection shall be solely used for the payment of interest and amortization of the public debt, as provided in said Section 8 of Item VI of the Constitution, to the extent that all other resources available to which reference is made in said [S]ection are insufficient for such purposes. ***Otherwise, the proceeds of said collection, in the amount that may be necessary, shall be used solely for the payment of the principal and interest on bonds and other obligations of the Authority and to comply with any stipulations agreed to by the latter with the holders of said bonds or other obligations.***"   13 L.P.R.A. § 31751(a)(1)(C) (emphasis added).

(b)   **Vehicle Fees Pledged to Payment of PRHTA Bonds:** "[S]aid pledge or pignoration shall be subject to the provisions of § 8 of Article VI of the Constitution of Puerto Rico; Provided, however, That the proceeds of said collection shall only be used for the payment of interest and the amortization of the public debt, as provided in said § 8, to the extent that all other resources available, referred to in said [S]ection, are insufficient for such purposes, ***otherwise, the proceeds of said collection in the amount that is necessary shall be used solely for the payment of the principal and interest on bonds and other obligations of the Authority, and to meet whatever other stipulations are agreed upon between the Authority and the holders of said bonds or other obligations.***"   9 L.P.R.A. § 2021 (emphasis added); see also 9 L.P.R.A. § 5681.

The preconditions to a "clawback" of the PRHTA Pledged Special Excise Taxes have never been satisfied, because the Commonwealth has at all relevant times had sufficient available resources to pay the public debt in accordance with the Constitutional Debt Priority Provision.

**C.    The OMB Act**

52.   In furtherance of the Constitutional Debt Priority Provision, and consistent with the Authority Bond Priority Provisions, Section 4(c) of the OMB Act sets certain "priority guidelines" for the disbursement of available resources in a fiscal year in which the Constitutional Debt Priority Provision is in effect.  The priorities set by the Legislative Assembly

-15-

in the OMB Act first require "payment of interest and amortizations corresponding to the public debt." 23 L.P.R.A. § 104(c)(1).  The "priority guidelines" next assign a second-priority status to "commitments entered into by virtue of legal contracts in force, judgments of the courts in cases of condemnation under eminent domain, and binding obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico," including, to the extent applicable, the Authority Bonds.[3] Id. § 104(c)(2).

53.     "Regular expenses" related to government operations receive a ***third***-priority status (after public debt and Authority Bonds) under Section 4(c) of the OMB Act, with priority within this group given to expenses related to "[c]onservation of public health," "[p]rotection of persons and property," "[p]ublic education programs," "[p]ublic welfare programs," and "[p]ayment of employer contributions to retirement systems and payment of pensions to individuals granted under special statutes," followed by "remaining public services in the order of priority determined by the Governor."   23 L.P.R.A. § 104(c)(3)(A)-(E). Necessary "adjustments due to reductions may be made" to the appropriations for any of these enumerated "service areas."  Id. § 104(c)(3)(E).

54.     Finally, the OMB Act's "priority guidelines" assign the lowest priorities to "construction of capital works or improvements" (fourth priority) (23 L.P.R.A. § 104(c)(4)) and "contracts and commitments contracted under special appropriations" (fifth priority) (id. § 104(c)(5)).

---

[3]     The Pledged Toll Revenues are not subject to the OMB Act waterfall, because they are not general revenues and do not constitute "available resources." Similarly, the PRHTA Pledged Special Excise Taxes are not subject to the OMB Act waterfall, because the PRHTA Pledged Special Excise Taxes are not general revenues and can never be used for any purpose other than to pay the PRHTA Bonds or, following a ***valid*** clawback, the public debt.  Even in the event the OMB Act waterfall were found to apply to the PRHTA Pledged Special Excise Taxes, however, the Pledged Special Excise Taxes could only be applied to the first two items in the waterfall, namely payment of the public debt or of "legal contracts in force" (i.e., the PRHTA Bonds).

### III.   PROMESA, The Illegal Fiscal Plans And The Fiscal Plan Act

55.     On June 30, 2016, President Barack Obama signed PROMESA into law. The stated purpose of PROMESA is to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes."  H.R. 5278, 114th Cong. (2016) (preamble).

56.     Among other things, PROMESA (i) establishes a process for the Oversight Board to approve fiscal plans governing the future finances and budgets of the Commonwealth and its instrumentalities, including PRHTA (Title II); (ii) establishes a process for the Oversight Board to file a bankruptcy petition on behalf of the Commonwealth or its instrumentalities, including PRHTA (Title III); and (iii) provides for an alternative mechanism for adjusting the Commonwealth's bond debt or the bond debt of its instrumentalities outside of a bankruptcy proceeding by effectuating modifications with the substantial, but not necessarily unanimous, support of the affected bondholders (Title VI).

### A.   The Illegal Fiscal Plans

57.     The Illegal Fiscal Plans approved by the Oversight Board authorize the Commonwealth to illegally divert the PRHTA Pledged Special Revenues from PRHTA and its bondholders to the Commonwealth.  The PRHTA Pledged Special Revenues constitute property of PRHTA that is held in trust for its bondholders.  Further, the Illegal Fiscal Plans authorize the Commonwealth to misappropriate for its own general use the PRHTA Pledged Special Revenues.

58.     In particular, the "Executive Summary" to the Illegal PRHTA Fiscal Plan expressly concedes that "Bondholders of the PRHTA are expected to cease receiving money for debt repayment *by July 2017*, when the reserve funds that have been used until now run out." Ex. B at 5 (emphasis added).

59.    The Illegal Fiscal Plans approved by the Oversight Board also totally disregard constitutional and statutory priorities granted to PRHTA and liens granted to PRHTA and its bondholders and subordinate debt service to all expenses.

60.    Further, the Illegal PRHTA Fiscal Plan diverts and misappropriates PRHTA Pledged Special Revenues to pay all the PRHTA's expenses on a first priority basis, in blatant disregard for PRHTA Bondholders' first priority gross lien on those pledged revenues, thereby impairing each Plaintiff's contractual rights and effecting an unconstitutional taking of each Plaintiff's property without just compensation or due process of law.

61.    Under PROMESA, once fiscal plans are certified for the Commonwealth and its instrumentalities, all governmental actions, including all actions by Defendants, must comply with the certified fiscal plans.  This would include actions taken by applicable Defendants during the pendency of these Title III proceedings.

62.    For example, Section 202 of PROMESA requires the budgets of the Commonwealth and its instrumentalities, including PRHTA, to comply with the applicable certified fiscal plans.  48 U.S.C. § 2142.

63.    Similarly, Section 204 of PROMESA requires future Commonwealth legislation to comply with the certified fiscal plans of the Commonwealth and its instrumentalities, including PRHTA.  48 U.S.C. § 2144.

64.    In addition, Section 314 of PROMESA sets forth the requirements for confirmation of a plan of adjustment in these Title III proceedings.  48 U.S.C. § 2174.  One of these requirements is that "the plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under [Title] II."  Id. § 2174(b)(7).

65.    As a direct result of the requirement in the Illegal Fiscal Plans that the Commonwealth confiscate the PRHTA Pledged Special Revenues from PRHTA and its

bondholders and the subordination of debt service to all expenses as set forth in the Illegal Fiscal

Plans, each Plaintiff faces the imminent prospect of defaults on the PRHTA Bonds that it insures,

which will cause significant, material, and irreparable harm to Plaintiffs.

66.     Certain defaults have already occurred, and further defaults will occur on

July 1, 2017 and thereafter as a result of the implementation of the Illegal Fiscal Plans.

**B.      The Fiscal Plan Act**

67.     On or about April 29, 2017, the Commonwealth enacted the Fiscal Plan

Act.  The Fiscal Plan Act fully effectuates the contract impairments and illegal expropriations of

property purportedly authorized by the Illegal Fiscal Plans.  Chapters 4 and 6 of the Fiscal Plan

Act (translated versions are attached as "Exhibit C") are particularly egregious, illegal, and

unconstitutional.  Chapter 4, entitled "Transfer Of Profits From Authorities To The General

Fund," purportedly authorizes the Commonwealth to misappropriate secured bondholder

collateral and other property to which the Commonwealth has no legal entitlement.  Chapter 6,

meanwhile, similarly purports to authorize the Commonwealth to appropriate for its own use

trust funds held in special accounts in the Commonwealth treasury for the benefit of PRHTA and

its bondholders.

**1.      Chapter 4 Of The Fiscal Plan Act**

68.     Article 4.01 of Chapter 4 of the Fiscal Plan Act provides for the

Commonwealth to expropriate property in the form of "surplus" revenues from its public

corporations and their bondholders:

> Article 4.01.—Transfer of Surplus
>
> Public corporations, agencies, and instrumentalities of the
> Government of Puerto Rico are hereby directed to transfer to the
> Department of the Treasury the surplus of the income produced.
> These funds will be considered as available resources of the State
> and deposited by the Department of the Treasury in the General

Fund of the Government of Puerto Rico to meet the liquidity requirements set out in the Fiscal Plan adopted under the provisions of *"Puerto Rico Oversight, Management and Economic Stability Act of 2016"* Public Law 114-187, also known as PROMESA.

Ex. C.

69.     Article 4.02 of Chapter 4 of the Fiscal Plan Act in turn purports to

establish a committee empowered to determine what amounts of bondholder collateral are to be

expropriated from the Commonwealth's public corporations and transferred to the

Commonwealth pursuant to Article 4.01:

> Article 4.02.—Committee
>
> The amount of funds that each of the corporations and instrumentalities will provide will be determined by a committee composed of the [AAFAF Executive Director], the [Secretary of Treasury] and the [OMB Director], who may establish the necessary tariffs to comply with the provisions of the Fiscal Plan approved for the Government of Puerto Rico and the one which will rule its corporations. This committee will ensure that the transfer of funds as provided in Article 4.01 of this Act do not affect the services provided by public corporations and instrumentalities, and only consist of the available surplus after the operating expenses and obligations of these entities have been covered in accordance with the budgeted expenses approved by the Office of Management and Budget for each fiscal year.

Ex. C.

70.     Chapter 4 makes absolutely no provision for payment by PRHTA of its

secured debt.  Instead, under Chapter 4, the Commonwealth authorizes itself simply to take the

PRHTA Pledged Special Revenues pledged to payment of the PRHTA Bonds.

71.     Equally unlawfully and unconstitutionally, Chapter 4 defines the revenues

that the Commonwealth may expropriate to include all revenues that do not constitute "operating

expenses and obligations" of PRHTA.   Chapter 4 thus ***reverses*** the priorities established by

PRHTA's gross pledge of its revenues to bondholders, essentially providing that PRHTA's

operating expenses have a first-priority status over all of PRHTA's other obligations, including its debt obligations.

72.    Moreover, Article 4.02 defines as "available resources" those PRHTA Pledged Special Revenues (the "PRHTA Operating Revenues") that are generated by PRHTA itself and not assigned to PRHTA by the Commonwealth, such as Pledged Toll Revenues.  Such PRHTA Operating Revenues do not constitute "available resources" under the Commonwealth Constitution and are not subject to "clawback" by the Commonwealth even under the very limited circumstances under which a "clawback" of the PRHTA Pledged Special Excise Taxes is permitted.  The Commonwealth's misappropriation of these PRHTA Operating Revenues under Chapter 4 constitutes an unlawful taking.

### 2.    Chapter 6 Of The Fiscal Plan Act

73.    Chapter 6 of the Fiscal Plan Act amends Act No. 230-1974, known as the "Government Accounting Act of Puerto Rico" (as amended, the "Accounting Act"), among other things by providing under Article 7 of the Accounting Act, as amended:

Article 6.02.—

[A]ll of the state special funds and other revenues of dependencies and public corporations after July 1, 2017, shall be deposited in their totality in the State Treasury under the custody of the Secretary of the Treasury or in the banking institution that he deems adequate[.]

*       *       *

After July 1st, 2017, all those special state funds created by law for specific purposes will be used for those *purposes for which they were assigned by Law in accordance with the Budget recommended by the Office of Management and Budget and with the Fiscal Plan*. . . . *If there is any inconsistency between the law and the use of funds with the Fiscal Plan, the purpose provided in [the] Fiscal Plan approved under the provisions of the Federal Law PROMESA shall prevail*.

Ex. C (emphasis added).

74.     Funds held in "special funds" in the Commonwealth treasury include PRHTA Pledged Special Excise Taxes "assigned" to PRHTA "by law."  Such PRHTA Pledged Special Excise Taxes are held in a special fund in the Commonwealth treasury on behalf of PRHTA for the benefit of its bondholders prior to transfer to the PRHTA Fiscal Agent.  <u>See</u>, <u>e.g.</u>, 13 L.P.R.A. § 31751; 9 L.P.R.A. § 2021.

75.     By conditioning the uses of these special funds on their being "in accordance with the Budget recommended by the Office of Management and Budget and with the Fiscal Plan," Chapter 6 subverts the purposes for which the PRHTA Pledged Special Excise Taxes were assigned by law.  Indeed, the Illegal Fiscal Plans mandate an unlawful treatment of the PRHTA Pledged Special Excise Taxes that does not comply with the liens and priorities established by law.

76.     Chapter 6 further flaunts the fact that the Illegal Fiscal Plans deprive bondholders of their statutory entitlements and substantially impair their contractual rights, stating, "If there is any inconsistency *between the law* and the use of funds with the Fiscal Plan, *the purpose provided in [the] Fiscal Plan . . . shall prevail."*  Ex. C (emphasis added).  The admitted effect of the Fiscal Plan Act, then, is to deprive Plaintiffs and other parties of benefits and other property interests to which they are entitled by law.

## IV.     <u>The Commencement Of These Title III Cases</u>

77.     On May 3, 2017, the Oversight Board commenced a proceeding on behalf of the Commonwealth under Title III of PROMESA.

78.     On May 21, 2017, the Oversight Board commenced a proceeding on behalf of PRHTA under Title III of PROMESA.

79.     As a result of the commencement of PRHTA's Title III proceeding, the special revenue protections of the Bankruptcy Code now apply to the PRHTA Pledged Special Revenues, and the Defendants are required to remit such collateral to the PRHTA Fiscal Agent for payment of debt service on the PRHTA Bonds.

## V.   The Special Revenue Provisions Of The Bankruptcy Code

80.     Section 902(2) of the Bankruptcy Code defines "special revenues" as:

(A) receipts derived from the ownership, operation, or disposition of projects or system of the debtor that are primarily used or intended to be used primarily to provide transportation, utility, or other services, including the proceeds of borrowings to finance the projects or systems;

(B) special excise taxes imposed on particular activities or transactions;

\*       \*       \*

(D) other revenues or receipts derived from particular functions of the debtor, whether or not the debtor has other functions; _**or**_

(E) taxes specifically levied to finance one or more projects or systems, excluding receipts from general property, sales, or income taxes (other than tax-increment financing) levied to finance the general purposes of the debtor[.]

11 U.S.C. § 902(2) (emphasis added).

81.     Section 902(2) of the Bankruptcy Code is phrased in the disjunctive, meaning that only one category specified in Section 902(2) needs to be satisfied for taxes or revenues to qualify as "special revenues."

82.     The PRHTA Bonds are special revenue bonds, secured by, among other things, a contractual lien on Pledged Toll Revenues and PRHTA Pledged Special Excise Taxes. Specifically, the Pledged Toll Revenues are "receipts derived from the ownership, operation, or disposition of projects or system of the debtor that are primarily used or intended to be used to

provide transportation[.]"  11 U.S.C. § 902(2)(A).  Pledged Toll Revenues are also "other revenues or receipts derived from particular functions of the debtor, whether or not the debtor has other functions."  Id. § 902(2)(D).  The PRHTA Pledged Special Excise Taxes are "special excise taxes imposed on particular activities or transactions," id. § 902(2)(B), and are also "taxes specifically levied to finance one or more projects or systems."  Id. § 902(2)(E).

83.    Section 928(a) of the Bankruptcy Code, made applicable to these proceedings by Section 301 of PROMESA, provides in relevant part that "special revenues acquired by the debtor after the commencement of the case shall remain subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."  11 U.S.C. § 928(a); 48 U.S.C. § 2161.

84.    The intent of Section 928(a) of the Bankruptcy Code is "to negate [s]ection 552(a) in the municipal context" and provide distinctive protections to creditors holding consensual prepetition liens on "special revenues."  See S. Rep. No. 100-506, at 12-13 (1988).[4]

85.    Section 922(d) of the Bankruptcy Code, made applicable to these proceedings by Section 301 of PROMESA, provides in relevant part that the filing of a bankruptcy petition under chapter 9 "does not operate as a stay of application of pledged special revenues in a manner consistent with Section 927[5] [of the Bankruptcy Code] to payment of debt secured by such revenues."  11 U.S.C. § 922(d).

86.    Section 922(d) of the Bankruptcy Code applies to all pledged special revenues, including revenues that are not currently in the possession of the secured party.

---

[4]    Although Section 928(a) renders Section 552(a) irrelevant to the Pledged Special Revenues in any event, Plaintiffs also reserve the right to argue that, even absent Section 928(a), Section 552(a) does not apply to the Pledged Special Revenues in the first instance.

[5]    The reference to Section 927 in Section 922(d) appears to be a scrivener's error.  The intended reference appears to be to Section 928.

Consequently, pursuant to Section 922(d) of the Bankruptcy Code, a debtor is required to remit all pledged special revenues to the relevant bond trustee or fiscal agent during the pendency of any Title III proceeding and the automatic stay does not preclude efforts to compel the debtor to transfer such revenues in accordance with the governing bond documents.

87.     Consequently, "special revenues acquired by the debtor after the commencement of [this Title III proceeding] remain subject" to the liens granted in favor of holders of the PRHTA Bonds.  11 U.S.C. § 928(a).  Further, the filing of a Title III petition does not operate as a stay against the application of such pledged special revenues to the payment of the PRHTA Bonds.

88.     While Section 928(b) provides that certain liens on "special revenues . . . derived from a project or system shall be subject to the necessary operating expenses of such project or system . . ." (see 11 U.S.C. § 928(b)), that provision does not apply to the PRHTA Pledged Special Revenues.

89.     First, the PRHTA Pledged Special Excise Taxes are not revenues generated from a project or a system; rather, they are special excise taxes pledged solely for the payment of the PRHTA Bonds.  See 11 U.S.C. § 902(2)(B), (E).  Consequently, the PRHTA Pledged Special Excise Taxes are not subject to any necessary operating expenses of PRHTA. See id. § 928(b).

90.     Further, the application of Section 928(b) to the PRHTA Bonds would be unconstitutional, because the liens securing the PRHTA Bonds predate the provisions of PROMESA that make Section 928(b) applicable to Puerto Rico instrumentalities such as PRHTA.  As set forth above, the PRHTA Bondholders are the beneficiaries of a "gross" lien on the Pledged Toll Revenues and other PRHTA Pledged Special Revenues.  In accordance with the terms of that lien, PRHTA must *first* deposit sufficient funds with the PRHTA Fiscal Agent to

meet the debt service and reserve requirements under the Resolutions **before** PRHTA can apply the funds to other purposes.  Plaintiffs have held these gross liens since the PRHTA Resolutions were adopted in 1968 and 1998, respectively.  Thus, Plaintiffs' property interest in these gross liens has been in existence for decades before PROMESA was enacted.  Subordinating the PRHTA Bondholders' lien to the "necessary operating expenses" of PRHTA would effectively convert PRHTA Bondholders' lien from a "gross" lien into a "net" lien and thereby drastically change the nature of their security.  Such an application of Section 928(b) would violate the Takings and Due Process Clauses of the U.S. Constitution[6] by depriving PRHTA Bondholders of their gross lien without just compensation or due process of law.

91.     In any event, even where Section 928(b) is applicable, it makes liens on special revenues derived from a project or system subject only to the necessary operating expenses of such project or system.  11 U.S.C. § 928(b).  Such operating expenses include only "those necessary to keep the project or system going . . . so that the project or system can be maintained in good condition to generate the revenue to repay bondholders . . . ."  H.R. Rep. No. 100-1011, at 8 (1988).  Necessary operating expenses **do not include** capital improvements or enhancements.  See In re Jefferson Cnty., 503 B.R. 849, 897 (Bankr. N.D. Ala. 2013).

## VI.     The Special Revenue Provisions Preempt The Illegal Fiscal Plans And The Fiscal Plan Act

92.     The Illegal Fiscal Plans and Fiscal Plan Act cannot interfere with Defendants' obligations to remit the PRHTA Pledged Special Revenues for payment of the

---

[6]    The Takings Clause of the Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  The Due Process Clause of the Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.

PRHTA Bonds, because the special revenue provisions of the federal Bankruptcy Code preempt the Illegal Fiscal Plans and Fiscal Plan Act.

93.     Notably, the Illegal Fiscal Plans provide for a treatment of the PRHTA Pledged Special Revenues that is at odds with both (i) lawful liens and priorities in effect prior to the enactment of PROMESA and (ii) the special revenue protections of the Bankruptcy Code, as incorporated into PROMESA.

94.     The Illegal Fiscal Plans and the Fiscal Plan Act violate the lawful liens and priorities in effect prior to the enactment of PROMESA, because they unlawfully commingle the PRHTA Pledged Special Revenues, which are property of the PRHTA Bondholders, with the Commonwealth's unencumbered revenues and assume that these PRHTA Pledged Special Revenues can be used to fund any and all Commonwealth expenses as well as the operating expenses of PRHTA.

95.     Similarly, the Illegal Fiscal Plans and the Fiscal Plan Act fail to first use unencumbered available Commonwealth resources to pay public debt, as required by the Constitutional Debt Priority Provision and the Authority Bond Priority, and fail to segregate PRHTA Pledged Special Excise Taxes for the payment of the PRHTA Bonds or of the public debt, which are the only two purposes for which such PRHTA Pledged Special Excise Taxes could ever possibly be used.

96.     In particular, the Illegal PRHTA Fiscal Plan's treatment of the PRHTA Pledged Special Revenues modifies and violates the Public Debt Priority, the Authority Bond Priority, and PRHTA's gross pledge of the PRHTA Pledged Special Revenues to PRHTA Bondholders, along with PRHTA Bondholders' liens and other property interests.

97.     The Illegal PRHTA Fiscal Plan illegally requires that Pledged Toll Revenues will be used first to fund PRHTA operations, which is an obvious violation of

PRHTA's gross pledge to PRHTA Bondholders.  Specifically, under the Illegal PRHTA Fiscal Plan, Pledged Toll Revenues are applied first to "Total expenses" of PRHTA, and then to debt service.  The Illegal PRHTA Fiscal Plan subordinates debt service to all expenses of PRHTA, including for expenses that have absolutely nothing to do with the assets that generate the Pledged Toll Revenues.  For example, the Illegal PRHTA Fiscal Plan provides that expenses for toll highway maintenance and administration range from approximately $33.3 million to $34.7 million on an annual basis.  Ex. B at 22.  However, the Illegal PRHTA Fiscal Plan makes debt service subordinate to "total expenses," which on a yearly basis range from a staggering $433.7 million to $702.5 million.  Id.  Those figures include capital improvements under the Commonwealth's "Statewide Transportation Improvement Program (STIP)" for fiscal years 2017-2020 for extensions on highways that are subject to a concession agreement, as well as operating expenses for Tren Urbano—neither of which generate Pledged Toll Revenues.  See id. at 21-22.  As a direct result of the illegal subordination of the gross lien to all expenses of PRHTA, the Illegal PRHTA Fiscal Plan indicates that there will be significant shortfalls in cash flow available for debt service.

98.     The Illegal PRHTA Fiscal Plan also requires the Commonwealth to "clawback", i.e., confiscate, all PRHTA Pledged Special Excise Taxes for the foreseeable future, notwithstanding the fact that the conditions to a clawback have not been met and are unlikely ever to be met, which is an obvious violation of the Authority Bond Priority.  The Illegal PRHTA Fiscal Plan expressly acknowledges that PRHTA's "fiscal situation . . . was recently aggravated by the need of the Government of Puerto Rico to clawback revenues pledged to [PRHTA].  These revenues are now used within the Government of Puerto Rico."  Ex. B at 16. The Illegal PRHTA Fiscal Plan then projects these illegal clawbacks as continuing until at least 2026.  See, e.g., Ex. B at 28, 32, 55.

99.     The Illegal PRHTA Fiscal Plan then requires the Commonwealth to transfer a portion of the PRHTA Pledged Special Excise Taxes back to PRHTA, but not in order to allow PRHTA to fulfill its obligation to pay the PRHTA Bonds.  Instead, the PRHTA Pledged Special Excise Taxes transferred back to PRHTA are to be used to fund PRHTA's operating expenses in violation of the Authority Bond Priority and of PRHTA's gross pledge to bondholders.

100.     Finally, the Illegal PRHTA Fiscal Plan authorizes the Commonwealth simply to retain the remainder of the PRHTA Pledged Special Excise Taxes for its own general purposes, notwithstanding the fact that the Commonwealth has no legal entitlement to such PRHTA Pledged Special Excise Taxes.

101.     The Illegal Fiscal Plans and the Fiscal Plan Act cannot, however, override the PRHTA Bondholders' liens.  Congress retained the special revenue provisions of the Bankruptcy Code in PROMESA, and these special revenue provisions preempt any contrary provisions of the Illegal Fiscal Plans or of the Fiscal Plan Act.  <u>See</u> 48 U.S.C. § 2161 (incorporating Sections 922 and 928 of the Bankruptcy Code).  Accordingly, the lien securing the PRHTA Bonds remains enforceable against revenues received after the filing of a Title III petition by PRHTA.

### <u>FIRST CLAIM FOR RELIEF</u>
**(For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 And 2202 For Violations Of Sections 922(d) And 928(a) Of The Bankruptcy Code Against All Defendants)**

102.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 101 hereof, as if fully set forth herein.

103.     The PRHTA Bonds are secured by (i) receipts derived from the operation and ownership of a project or system that provides utility or transportation services to the citizens of Puerto Rico; (ii) special excise taxes on particular transactions or activities;

(iii) receipts or revenues derived from particular functions of the debtor; and (iv) taxes that are specifically levied to finance a project or system.  The PRHTA Bonds are therefore secured by special revenues.  11 U.S.C. § 902(2)(A), (B), (D), (E).

104.    Post-petition revenues securing the PRHTA Bonds remain subject to liens resulting from security agreements entered into by PRHTA.

105.    Plaintiffs are entitled to an order that the filing of a Title III petition by PRHTA does not operate as a stay of the application of PRHTA Pledged Special Revenues to the payment of the PRHTA Bonds.

106.    Plaintiffs are further entitled to an order declaring that the failure to remit revenues securing the PRHTA Bonds for application to debt service during these Title III proceedings violates Sections 922(d) and 928(a) of the Bankruptcy Code as made applicable to these Title III proceedings by Section 301 of PROMESA.

107.    An actual and justiciable controversy has arisen and exists between the parties with respect to these issues and claims and a declaratory judgment is necessary to resolve such controversy.

### SECOND CLAIM FOR RELIEF
**(Injunctive Relief For Violations Of Sections 922(d) And 928(a)
Of The Bankruptcy Code Against All Defendants)**

108.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 107 hereof, as if fully set forth herein.

109.    Plaintiffs are entitled to an injunction prohibiting the Defendants from taking or causing to be taken any action that would further violate Sections 922(d) and 928(a) of the Bankruptcy Code as made applicable to these Title III proceedings by Section 301 of PROMESA.

110.     Unless Defendants are enjoined from taking or causing to be taken any action that would further violate Sections 922(d) and 928(a) of the Bankruptcy Code, Plaintiffs will be irreparably harmed.  There is no adequate remedy at law.

111.     The balance of hardships is in favor of Plaintiffs due to the irreparable harm Plaintiffs will suffer if Defendants are not enjoined from taking or causing to be taken any action that would further violate Sections 922(d) and 928(a) of the Bankruptcy Code. Defendants will not be unduly harmed if they are so enjoined.  Injunctive relief is in the public interest.

**THIRD CLAIM FOR RELIEF**
**(Injunctive Relief For Violations Of Sections 922(d) And 928(a)**
**Of The Bankruptcy Code Against All Defendants)**

112.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 111 hereof, as if fully set forth herein.

113.     Plaintiffs are entitled to an order requiring Defendants to remit revenues securing the PRHTA Bonds in accordance with Sections 922(d) and 928(a) of the Bankruptcy Code as made applicable to these Title III proceedings by Section 301 of PROMESA.

114.     Unless Defendants are ordered to remit revenues securing the PRHTA Bonds in accordance with Sections 922(d) and 928(a) of the Bankruptcy Code, Plaintiffs will be irreparably harmed.  There is no adequate remedy at law.

115.     The balance of hardships is in favor of Plaintiffs due to the irreparable harm Plaintiffs will suffer if Defendants are not ordered to remit revenues securing the PRHTA Bonds in accordance with Sections 922(d) and 928(a) of the Bankruptcy Code.  Defendants will not be unduly harmed if they are so enjoined.  Injunctive relief is in the public interest.

## <u>RELIEF DEMANDED</u>

WHEREFORE Plaintiffs Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corp. respectfully request that the Court enter judgment against Defendants as follows:

(a)      Declaring that the application of PRHTA Pledged Special Revenues to the payment of the PRHTA Bonds is not subject to the automatic stay pursuant to Section 922(d) of the Bankruptcy Code and that Defendants have violated Section 928(a) of the Bankruptcy Code;

(b)      Enjoining Defendants from taking or causing to be taken any action that would further violate Sections 922(d) and 928(a) of the Bankruptcy Code;

(c)      Ordering Defendants to remit revenues securing the PRHTA Bonds in accordance with Sections 922(d) and 928(a) of the Bankruptcy Code; and

(d)      Granting Plaintiffs such other and further relief as this Court may deem just and proper.

Dated:     San Juan, Puerto Rico
             June 3, 2017

CASELLAS ALCOVER & BURGOS P.S.C.


By: */s/ Heriberto Burgos Pérez*
      Heriberto Burgos Pérez
      USDC-PR 204809
      Ricardo F. Casellas-Sánchez
      USDC-PR 203114
      Diana Pérez-Seda
      USDC-PR 232014
      P.O. Box 364924
      San Juan, PR 00936-4924
      Telephone:  (787) 756-1400
      Facsimile:  (787) 756-1401
      Email:  hburgos@cabprlaw.com
              rcasellas@cabprlaw.com
              dperez@cabprlaw.com


CADWALADER, WICKERSHAM & TAFT LLP


By: */s/ Howard R. Hawkins*
      Howard R. Hawkins, Jr.
      (*pro hac vice* admission forthcoming)*
      Mark C. Ellenberg
      (*pro hac vice* admission forthcoming)*
      Ellen Halstead
      (*pro hac vice* admission forthcoming)*
      Thomas J. Curtin
      (*pro hac vice* admission forthcoming)*
      Casey J. Servais
      (*pro hac vice* admission forthcoming)*
      200 Liberty Street
      New York, NY 10281
      Telephone:  (212) 504-6000
      Facsimile:  (212) 406-6666
      Email:  howard.hawkins@cwt.com
              mark.ellenberg@cwt.com
              ellen.halstead@cwt.com
              thomas.curtin@cwt.com
              casey.servais@cwt.com

      * Also admitted *pro hac vice* in No. 17-BK-03283-LTS

      *Attorneys for Assured Guaranty Corp. and Assured
      Guaranty Municipal Corp.*

REXACH & PICÓ, CSP


By: */s/ María E. Picó*
     María E. Picó
     USDC-PR 123214
     802 Ave. Fernández Juncos
     San Juan PR 00907-4315
     Telephone: (787) 723-8520
     Facsimile: (787) 724-7844
     E-mail:    mpico@rexachpico.com


BUTLER SNOW LLP


By: */s/ Martin A. Sosland*
     Martin A. Sosland (*pro hac vice*)
     5430 LBJ Freeway, Suite 1200
     Dallas, TX 75240
     Telephone: (469) 680-5502
     Facsimile: (469) 680-5501
     E-mail:    martin.sosland@butlersnow.com

     Stanford G. Ladner
     (*pro hac vice* admission forthcoming)
     1700 Broadway, 41st Floor
     New York, NY 10019
     Telephone: (646) 606-3996
     Facsimile: (646) 606-3995
     E-mail:    stan.ladner@butlersnow.com

     Christopher R. Maddux
     (*pro hac vice* admission forthcoming)
     J. Mitchell Carrington
     (*pro hac vice* admission forthcoming)
     1020 Highland Colony Parkway, Suite 1400
     Ridgeland, MS 39157
     Telephone: (601) 985-2200
     Facsimile: (601) 985-4500
     E-mail:    chris.maddux@butlersnow.com
              mitch.carrington@butlersnow.com

*Attorneys for Financial Guaranty Insurance*
*Company*

ADSUAR MUNIZ GOYCO SEDA &
PEREZOCHOA PSC

By: */s/ Eric Perez-Ochoa*
    Eric Perez-Ochoa
    208 Ponce de Leon Ave, Suite 1600
    San Juan, PR  00936
    Telephone: (787) 756-9000
    Facsimile:  (787) 956-9010

WEIL, GOTSHAL & MANGES LLP

By: */s/ Marcia Goldstein*
    Marcia Goldstein (*pro hac vice* pending)
    Jonathan Polkes  (*pro hac vice* pending)
    Salvatore A. Romanello (*pro hac vice* pending)
    Gregory Silbert (*pro hac vice* pending)
    Kelly DiBlasi (*pro hac vice* pending)
    Gabriel A. Morgan (*pro hac vice* pending)
        767 Fifth Avenue
        New York, NY  10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email:    jonathan.polkes@weil.com
            marcia.goldstein@weil.com
            salvatore.romanello@weil.com
            gregory.silbert@weil.com
            kelly.diblasi@weil.com
            gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee
Corp.*