*Hearing Date: June 28, 2017 at 9:30 a.m. (Atlantic Time)*
*Objection Deadline: June 20, 2017 at 4:00 p.m. (Atlantic Time)*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>     as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>     as representative of<br><br>The Commonwealth of Puerto Rico,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>     as representative of<br><br>Puerto Rico Sales Tax Financing Corporation ("COFINA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This Document Relates to:[2]<br>17 BK 3283; 17 BK 3284 |

## PUERTO RICO FUNDS AND MUTUAL FUND GROUP'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2] Pursuant to Paragraph 5 of  the Joint Administration Order entered in lead Case No. 17 BK 3283-LTS [ECF No. 242], this pleading will be filed in both the lead Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS.

# Table of Contents

Page

TABLE OF AUTHORITIES .................................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................................... 2

I.     The Movants ........................................................................................................................ 2

II.    Overview of the COFINA Bonds ................................................................................. 3

III.   The Lex Claims Litigation and Certification Motions ............................................ 4

JURISDICTION ..................................................................................................................................... 6

RELIEF REQUESTED ........................................................................................................................... 7

ARGUMENT ......................................................................................................................................... 7

THE NEED FOR A QUICK AND DEFINITIVE DETERMINATION OF COFINA'S
       VALIDITY CONSTITUTES CAUSE FOR RELIEF FROM THE STAY TO ALLOW
       THE CERTIFICATION MOTION TO PROCEED .................................................................. 7

       A.     Certification of the Available Resources Issue Will Allow Complete
              Resolution of an Issue Critical to These Title III Cases ........................................8

       B.     The Interests of Judicial Economy and of Expeditious Judicial Resolution
              Favor Permitting the Puerto Rico Supreme Court to Decide This Crucial
              Issue of Puerto Rico Law .................................................................................... 10

       C.     The Lex Claims Action is Pending in This Court, and a Decision of the
              Certification Motion by This Court Will Not Prejudice Any Party to the
              Title III Cases ....................................................................................................... 12

       D.     The Parties Can Promptly Brief the Certification Motion and Present the
              Available Resources Issues to the Puerto Rico Supreme Court ........................... 13

       E.     Granting this Stay Relief Will Cause No Harm to the Debtors ............................. 13

CONCLUSION ................................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*C & A, S.E. v. P.R. Solid Waste Management*,
    369 B.R. 87 (D.P.R. 2007)....................................................................10, 11, 12, 13

*In re Concepcion*,
    494 B.R. 622 (Bankr. D.P.R. 2013) ......................................................................11

*Easthampton Sav. Bank v. Springfield*,
    736 F. 3d 46 (1st Cir. 2013)....................................................................................10

*Lex Claims, LLC v. Alejandro Garcia Padilla, et al.*,
    No. 16-02374 (FAB) (D. P.R. 2016) ............................................................. *passim*

*Lex Claims, LLC v. Financial Oversight and Management Board*,
    853 F.3d 548 (1st Cir. Apr. 4, 2017)........................................................................5

*In re Lyondell Chemical Co.*,
    402 B.R. 596 (Bankr. S.D.N.Y. 2009) ...................................................................12

*Romero v. Colegio de Abogados de Puerto Rico*,
    204 F. 3d 291 (1st Cir. 2000) .................................................................................10

*In re Sonnax Indus., Inc.*,
    907 F.2d 1280 (2d Cir. 1990)....................................................................8, 10, 12

*In re Tribune*,
    418 B.R. 116 (Bankr. D. Del. 2009) .........................................................................9

*In re Unanue-Casal*,
    159 B.R. 90 (D. P.R. 1993)...............................................................................8, 11

*In re White*,
    851 F.2d 170 (6th Cir. 1988) ...................................................................................9

**Statutes**

Puerto Rico Constitution..............................................................................2, 5, 8, 11

4 L.P.R.A § 24s(f) (2003) ...........................................................................................10

11 U.S.C. § 362(d) ....................................................................................................6, 8

48 U.S.C. §§ 2161.................................................................................................................6

Act of December 26, 2006, No. 291-2006.........................................................................3

Act of July 5, 2007, No. 56-2007........................................................................................3

Act of May 13, 2006, No. 91-2006......................................................................................3

Fiscal Plan Compliance Act, Act No. 26-2017....................................................................6

P.R. Laws Ann. tit. 13, §§ 11a *et seq.*...............................................................................3

P.R. Laws Ann. tit. 13, § 12.............................................................................................3, 4

P.R. Laws Ann. tit. 13, § 13(d)...........................................................................................4

PROMESA § 101(a).............................................................................................................9

PROMESA § 301..................................................................................................................6

PROMESA § 306(d)(3)....................................................................................................7, 12

PROMESA §  405.................................................................................................................5

<u>**PRELIMINARY STATEMENT**</u>

As the Court may have observed over the past few weeks, there are few issues in this case on which the parties agree.  But the parties do agree on one point:  Puerto Rico's current fiscal plan rests on the hotly-contested legal conclusion that it has the unfettered right to take, and to spend for its own purposes, billions of dollars of revenue that Puerto Rico by statute transferred to COFINA and pledged to COFINA's bondholders a decade ago.

To fund its fiscal plan and budget for the year starting July 1, 2017, Puerto Rico will need to use the COFINA revenues.  Any effort by the Commonwealth to take COFINA's revenues would contravene Puerto Rico's statutes and agreements, and would be indefensible unless the legislation that established COFINA is held to violate Puerto Rico's Constitution. Absent a ruling that the COFINA statute is unconstitutional, the Commonwealth will have to revise its fiscal plan and current budget within the next few months to come up with funding that it currently assumes will come from COFINA's revenues.

The question whether, under Puerto Rico's Constitution, the COFINA revenues are "available resources" that belong to the Puerto Rico Government and can be used to pay its expenses is an issue of first impression.  If this Court were to rule on the issue, it would have to predict how Puerto Rico's highest court, the Supreme Court of Puerto Rico, would interpret Puerto Rico's Constitution.  But any ruling by this Court would inevitably be appealed by the losing parties and through that process come before the Supreme Court of Puerto Rico for review.  Immediate certification of this question to the Supreme Court of Puerto Rico will allow for an answer from the one judicial body able to give a final and definitive answer to this question of Puerto Rico constitutional law.

Three motions – pending for months but stayed – seek exactly this relief.  Those motions were filed in the Lex Claims action, a suit filed in this district late last year by a group of general obligation bondholders that challenges COFINA's validity under the Puerto Rico Constitution.  It is only the automatic stay that is preventing these certification motions from being decided.

Certification is the fastest, most efficient and most certain way to a final decision on this critical and unprecedented issue under the Puerto Rico Constitution. The Court should lift the automatic stay to allow the certification motions to be decided and (if those motions are granted) to allow the Supreme Court of Puerto Rico to answer any certified question.

## STATEMENT OF FACTS

### I.      The Movants

The UBS Family of Funds and the Puerto Rico Family of Funds (collectively, the "**Puerto Rico Funds**") hold approximately $613.3 million in accreted principal amount of senior and subordinate bonds (the "**COFINA Bonds**") issued by the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), all of which are uninsured. The shareholders of the Puerto Rico Funds consist of thousands of residents of Puerto Rico, including many retirees and those nearing retirement, who have invested their savings in funds holding COFINA Bonds and depend on these bonds' principal and interest payments to meet their basic living expenses.

Mutual funds managed by Oppenheimer Funds, Inc., Franklin Advisers, Inc., and the First Puerto Rico Family of Funds (the "**Mutual Fund Group**," and collectively with the Puerto Rico Funds, "**Movants**") hold over $3.5 billion in accreted principal amount of COFINA Bonds and over $2.9 billion in other bonds issued by Puerto Rico and other territorial instrumentalities, including over $1.8 billion of Puerto Rico general obligation bonds ("**GO**

Bonds"). These COFINA Bonds, like most of the Mutual Fund Group's bond holdings, are uninsured. The Mutual Fund Group holds bonds on behalf of hundreds of thousands of individual investors, including thousands residing in Puerto Rico.

## II.      Overview of the COFINA Bonds

In 2006 and 2007, to address a decade-long fiscal emergency, Puerto Rico enacted a series of statutes aimed at fiscal reform. *See* Statement of Motives, Act of May 13, 2006, No. 91-2006. The centerpiece of these reforms was the creation of COFINA as a financing vehicle to issue bonds secured by the proceeds of a newly created Puerto Rico sales and use tax (the "**SUT**").

As the first step in this process, Puerto Rico passed Act No. 91-2006 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a *et seq.*), which established an "Urgent Interest Fund," later renamed the *Fondo de Interés Apremiante*, or "**FIA**." *See* P.R. Laws Ann. tit. 13, § 12. Next, Puerto Rico funded the FIA through deposits of a portion of the SUT (the "**Dedicated Sales Tax**"), *see* Act of December 26, 2006, No. 291-2006, § 1.

Then, in 2007, Puerto Rico created COFINA as an independent instrumentality for the purpose of issuing bonds to, among other things, refinance a portion of Puerto Rico's existing debt and pay other government expenses. *See generally* Act of July 5, 2007, No. 56-2007. The FIA, together with the existing and future Dedicated Sales Tax Revenues contained therein, were transferred to COFINA to be used as security for the issuance of the contemplated bonds. *See* P.R. Laws Ann. tit. 13, § 12.

The COFINA legislation specifically provided that, upon their transfer in 2007, the FIA and the Dedicated Sales Tax revenue stream were no longer property of Puerto Rico:

> The FIA and all the funds deposited therein on the effective date of this act
> and all the future funds that must be deposited in the FIA pursuant to the

- 3 -

> provisions of this law *are hereby transferred to, and shall be the property of COFINA*.

Act No. 56-2007, § 2 (codified at P.R. Laws Ann. tit. 13, § 12) (emphasis added).  The Act further provided that the Dedicated Sales Tax Revenues were to be "directly deposited in the FIA at the time of receipt and shall not be deposited in the Treasury of Puerto Rico, nor shall it constitute resources available to the Commonwealth of Puerto Rico."  *Id.*

The COFINA Bonds are obligations of COFINA only, and do not have recourse against Puerto Rico in the event the Dedicated Sales Tax Revenues are insufficient to pay the bonds.  *See* P.R. Laws Ann. tit. 13, § 13(d) ("The bonds . . . shall not constitute a debt or obligation of the Commonwealth of Puerto Rico . . . ."); *see also* Resolution § 201.

When Puerto Rico sold GO Bonds, it clearly disclosed that COFINA was an existing structure with collateral distinct from the source of repayment for the GO Bonds.  For example, the offering documents for the 2014 GO Bonds stated that the FIA and Dedicated Sales Tax revenues "do not constitute 'available resources' of the Commonwealth . . . and are not available for use by the Secretary of the Treasury."  *See* Commonwealth of Puerto Rico, Official Statement for Gen. Obligation Bonds of 2014, Series A, at 29 (Mar. 11, 2014), *available at* https://emma.msrb.org/ER990528.pdf.

## III.    The Lex Claims Litigation and Certification Motions

On July 20, 2016, a group of beneficial holders of Puerto Rico's general obligation bonds (the "**Lex Claims Plaintiffs**") filed a lawsuit in this Court against certain Puerto Rico officials (and, upon modification of their complaint, other defendants, including COFINA) under the caption *Lex Claims, LLC v. Alejandro Garcia Padilla, et al.*, No. 16-02374 (FAB) (D. P.R. 2016) (the "**Lex Claims Litigation**").  The Second Amended Complaint in the

- 4 -

Lex Claims Litigation challenges the COFINA structure on the grounds that it violates Article VI, Sections 2 and 8, of the Puerto Rico Constitution.  [Dkt. No. 78].

On the basis of a flawed constitutional analysis, the Lex Claims Plaintiffs contend that the Dedicated Sales Tax Revenues were improperly transferred to COFINA (and pledged to the Bondholders), that such funds must be remitted instead to the Puerto Rico Treasury, and that the GO Bonds are entitled to be paid first from such funds to the extent other available resources of Puerto Rico are insufficient to satisfy the GO Bonds.  *See generally id.*; *see also Lex Claims, LLC v. Financial Oversight and Management Board*, 853 F.3d 548, 551 (1st Cir. Apr. 4, 2017) (describing relief requested by the Lex Claims Plaintiffs).

The Movants sought, and were granted, leave to intervene in the Lex Claims Litigation to defend the constitutionality of the COFINA structure.  [Dkt. Nos. 95, 184]. Subsequently, the Mutual Fund Group and other intervenor defendants filed motions for judgment on the pleadings or to dismiss, seeking to dismiss the constitutional challenges to COFINA.  [Dkt. Nos. 219, 225, 232].

The Puerto Rico Funds, a group of beneficial holders of senior COFINA bonds (the "**Senior COFINA Coalition**"), and Ambac, an insurer of COFINA senior bonds, moved to certify the question of the constitutionality of COFINA to the Puerto Rico Supreme Court.  [Dkt. Nos. 221, 223, 232] – motions that the U.S. Court of Appeals for the First Circuit stayed through May 1 under PROMESA §  405 and the Oversight Board stayed under Title III's automatic stay by filing petitions for Puerto Rico on May 3 and COFINA on May 5.  Accordingly, no responses to the certification motions have yet been filed.

The Oversight Board on March 31, 2017 certified a Fiscal Plan for Puerto Rico that depends on the use of the Dedicated Sales Tax revenues to fund Puerto Rico's budget, which

would be in violation of the statutes cited above.  The Board approved revisions to the Fiscal Plan two months later that do not fix these proposed statutory violations.[3]

On April 29, 2017, Puerto Rico enacted the Fiscal Plan Compliance Act, Act No. 26-2017, which purports to give Puerto Rico the power to sweep COFINA revenues (pledged to Movants and other bondholders) out of COFINA's collection account and into Puerto Rico's general fund.  Any such diversion would similarly be in violation of the governing statutes.

At the first hearing in these Title III cases on May 17, 2017, the Mutual Fund Group objected to the Oversight Board's proposed order exculpating COFINA's bank from damages in the event it cooperated with Puerto Rico in diverting COFINA's pledged revenues. In response, Puerto Rico offered to give 30 days' prior notice before attempting to seize COFINA's revenues, and Oversight Board counsel represented to the Court that the Fiscal Plan allowed Puerto Rico to operate for several months before it would consider taking the COFINA Dedicated Sales Tax revenues.  5/17/17 Tr. at 57:5-14.  Last week, Puerto Rico proposed a budget for the fiscal year starting July 1, 2017 which contemplates the use of COFINA's Dedicated Sales Tax revenues.

As a result, the issue of COFINA's validity must be determined within the next few months.

## JURISDICTION

The Court has jurisdiction to grant the relief sought in this Motion pursuant to section 362(d) of title 11 of the United States Code, which applies to this proceeding pursuant to section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 ("**PROMESA**").  48 U.S.C. §§ 2161.  Movants file this Motion under the case management

---

[3] The Movants believe the Fiscal Plan is unlawful in multiple respects and reserve all rights to contest it.

procedures entered in the above-captioned cases and Rule 4001-1 of the Local Bankruptcy Rules of the Bankruptcy Court for the District of Puerto Rico.

### RELIEF REQUESTED

Movants request an order, in the form of the proposed order attached as **Exhibit A**, lifting the automatic stay (i) to permit the certification motion filed by the Puerto Rico Funds [Dkt. No. 221], as well as any joinder to that motion or any similar motion that the Mutual Fund Group or any other party may file (the "**Certification Motion**"), to be fully briefed, argued and decided by the District Court, and (ii) if the Certification Motion is granted, to allow the Puerto Rico Supreme Court to consider and decide the certified issues.[4]

### ARGUMENT

### THE NEED FOR A QUICK AND DEFINITIVE DETERMINATION OF COFINA'S VALIDITY CONSTITUTES CAUSE FOR RELIEF FROM THE STAY TO ALLOW THE CERTIFICATION MOTION TO PROCEED

All parties agree that the validity of the COFINA structure – in particular, whether COFINA's Dedicated Sales Tax revenues are "available resources" under Puerto Rico's Constitution – is central to these Title III cases.  This issue must ultimately be decided by the Puerto Rico Supreme Court, and briefing on certification to that court has commenced.  Further briefing will be quick and will put the parties on a clear path for resolution of these cases, either by negotiation or by a decision of Puerto Rico's highest court.  Stay relief is the quickest, most efficient and most certain way for that to happen.

---

[4] In the alternative, Movants request that the Lex Claims Litigation be transferred to this Court to become an adversary proceeding related to the Commonwealth Title III case and the COFINA Title III case, pursuant to PROMESA § 306(d)(3) ("A district court shall transfer any civil proceeding arising under this title, or arising in or related to a case under this title, to the district court in which the case under this title is pending.").  When the Lex Claims Litigation was commenced, and even when plaintiffs filed their second amended complaint in that action, no Title III proceeding had yet been commenced.  The subsequent commencement of these Title III cases lets this Court administratively transfer the Lex Claims Litigation to be administered as an adversary proceeding within this same District Court.

The Bankruptcy Code allows the automatic stay to be lifted "for cause."   11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Code, and courts have considered a wide array of factors, none of which is determinative.  *See, e.g.*, *In re Unanue-Casal*, 159 B.R. 90, 96 (D. P.R. 1993) (citing to different multi-factor tests, including the so-called "Curtis" test, and noting the moving party "need not prove a plurality of Curtis factors or any other factors before it has shown cause exists for lifting the stay").

Among the factors courts will consider are (i) "whether relief would result in a partial or complete resolution of the issues," (ii) "the interests of judicial economy and the expeditious and economical resolution of litigation," (iii) "whether the parties are ready for trial in the other proceeding," and (iv) the "impact of the stay on the parties and the balance of harms."  *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (providing an oft-cited list of twelve factors).  Each of these factors support stay relief here.

## A.    Certification of the Available Resources Issue Will Allow Complete Resolution of an Issue Critical to These Title III Cases

As counsel to the Oversight Board correctly pointed out at the first-day hearing in these cases, the question of whether the Dedicated Sales Tax constitutes an "available resource" under the Puerto Rico Constitution looms large over these proceedings:  "Whether those taxes are property of COFINA or available resources of the Commonwealth is one of the primary and dominant disputed legal issues in this entire situation."  May 17, 2017 Tr. at 13-14.

The "available resources" issue must be resolved for COFINA.  COFINA only owns the Dedicated Sales Tax revenues and the bank accounts in which those revenues are first deposited.  If these revenues don't belong to COFINA, it may be left with nothing.  This may leave the COFINA bondholders, whose claims are non-recourse to Puerto Rico, with nothing more than claims against an entity with no assets.

This is a crucial issue for Puerto Rico as well.  As the Court correctly recognized at the first day hearing, the Fiscal Plan for Puerto Rico assumes that the Commonwealth will be able to "invade" the Dedicated Sales Tax revenues; without those revenues the Fiscal Plan "doesn't work."  Tr. 5/17/17 50:6-8 ("The Commonwealth plan doesn't work unless the COFINA funds can be invaded.").  It is in the interests of both Debtors and their creditors to have this question answered once and for all.  The need to resolve this uncertainty weighs heavily in favor of lifting the stay.  *See In re Tribune*, 418 B.R. 116, 129 (Bankr. D. Del. 2009); *see also In re White*, 851 F.2d 170, 174 (6th Cir. 1988) (finding that the status of the non-debtor spouse would be compromised if the bankruptcy proceedings continued while divorce proceedings were stayed).

Confirming the validity of the COFINA structure will also facilitate resolution of the other Title III cases.  For example, the GO Bondholders will finally understand that, while their constitutional priority puts them at the top of the waterfall for Puerto Rico revenues, those revenues do not include funds such as the Dedicated Sales Tax.  In doing so, GO bondholders will better understand the value of their claims against Puerto Rico.  The Government, Oversight Board, and GO bondholders will be better prepared to reach a consensual Title III restructuring under a post-"available resources" paradigm, which may lead to global settlements.

A final determination of the available resources issue by Puerto Rico's highest court also may help Puerto Rico in its ongoing efforts to regain access to the capital markets – a central goal of PROMESA, *see* PROMESA § 101(a) – by removing the current uncertainty as to whether Puerto Rico's courts will enforce securitization structures such as COFINA or, instead, will strike them down on constitutional grounds.

The proper forum for resolving the available resources issue is through certification to the Puerto Rico Supreme Court.  It is appropriate for a federal court to certify local law questions that raise significant policy concerns, *Easthampton Sav. Bank v. Springfield*, 736 F. 3d 46, 48, 51 (1st Cir. 2013), or to certify "novel or unsettled questions of [local] law for authoritative answers by [its] highest court."  *Romero v. Colegio de Abogados de Puerto Rico*, 204 F. 3d 291, 306 (1st Cir. 2000) (internal citations omitted).  The Puerto Rico Supreme Court will accept such a certification if "matters pertaining to Puerto Rican law are involved that may determine the outcome thereof, and with regard to which, in the opinion of the petitioning court, there are no clear precedents in the jurisprudence of said court." 4 L.P.R.A § 24s(f) (2003) (English translation provided by LexisNexis).

Despite the many statements of the Government of Puerto Rico and its lawyers in support of the COFINA structure, whether or not the Dedicated Sales Tax revenues constitute "available resources" remains an unsettled area of Puerto Rico law, the resolution of which is enormously consequential for the Island.  This matter should be certified to the Puerto Rico Supreme Court to resolve this lynchpin issue once and for all.

**B.     The Interests of Judicial Economy and of Expeditious Judicial Resolution Favor Permitting the Puerto Rico Supreme Court to Decide This Crucial Issue of Puerto Rico Law**

Stay relief is also warranted if it promotes the interests of judicial economy and the most expeditious resolution of the issues between the parties.  *See, e.g., In re Sonnax Indus.*, 907 F.2d at 1287 (court should consider "the interests of judicial economy and the economical determination of litigation" in determining whether to lift the automatic stay).

Courts in Puerto Rico have allowed actions in non-bankruptcy forums to proceed when doing so is in the interests of judicial economy.  *See, e.g., C & A , S.E. v. P.R. Solid Waste*

*Management*, 369 B.R. 87 (D.P.R. 2007); *In re Unanue-Casal*, 159 B.R. 90; *In re Concepcion*, 494 B.R. 622 (Bankr. D.P.R. 2013) (lifting the stay to allow pending litigation to proceed, where resolution would determine rights and obligations in the bankruptcy case). This is particularly true when resolution of the issue in the non-bankruptcy forum "will help the Bankruptcy Court in the administration and determination of [the Debtor's] estate." *C & A , S.E.*, 369 B.R. at 95.

This Court may be able to address the available resources question in another forum, such as the COFINA Title III case or adversary proceedings that may be filed in these cases. But no matter how this Court resolves the issue, it will not be the final word. Any decision by this Court as to how it believes the Supreme Court of Puerto Rico would resolve the question of COFINA's constitutionality under the Puerto Rico Constitution will be appealed by the disappointed parties. The First Circuit would then likely be asked to certify the question to the Puerto Rico Supreme Court. Direct certification, by contrast, allows for a final and definitive decision in the near term, as the Supreme Court of Puerto Rico is the final word on matters of Puerto Rico law. Any approach besides direct certification to Puerto Rico's high court will be inefficient and will unduly delay the administration of these Title III cases.

Since the Certification Motion is already pending in the Lex Claims Litigation, the quickest and most prudent way to begin adjudicating the available resources issue is to allow the parties to complete briefing on the Certification Motion. Three creditors filed certification motions in the Lex Claims Litigation. The motions have been pending for nearly two months. Parties to that action have had ample time to review the merits of those motions and should be prepared to respond accordingly. It will take just 21 days to complete briefing and put the District Court in a position to determine whether to certify the issue to the Puerto Rico Supreme Court.

C.     **The Lex Claims Action is Pending in This Court, and a Decision of the Certification Motion by This Court Will Not Prejudice Any Party to the Title III Cases**

Another stay relief factor is "whether litigation in another forum would prejudice the interest of other creditors and/or other interested parties." *C&A, S.E.*, 369 B.R. at 94-95; *see also In re Sonnax,* 907 F.2d at 1286.  In deciding whether decision in a different forum could prejudice the parties, courts have found that the factor does not weigh against lifting the stay when the issue must ultimately be decided by a court.  *See, e.g., In re Lyondell Chemical Co.*, 402 B.R. 596, 614 (Bankr. S.D.N.Y. 2009) ("I likewise consider . . . 'whether litigation in another forum would prejudice the interests of other creditors' to be a wash, as I note that the issues would have to be litigated somewhere . . .").

Here, the Lex Claims Litigation is pending in the exact same forum as these Title III proceedings: this District Court.  Creditors and parties in interest would face no greater prejudice in participating in the Lex Claims Litigation than in the Title III cases.  Either case would be heard in the same federal courthouse – although potentially before different judges. Appearance before a different District Court judge can hardly be considered prejudice to creditors and other interested parties, especially when either judge would ultimately have to determine whether to certify the available resources issue.[5]

---

[5] As stated above, if the Court finds that the Certification Motion is more properly heard in these Title III cases, Movants support reassigning the Lex Claims action, either as an adversary proceeding tied to COFINA's Title III case pursuant to PROMESA § 306(d)(3).

**D.** **The Parties Can Promptly Brief the Certification Motion and Present the Available Resources Issues to the Puerto Rico Supreme Court**

An additional factor on lifting the stay is whether the non-bankruptcy litigation has "progressed to the point where the parties are prepared for trial." *C&A, S.E.*, 369 B.R. at 94-95.

The Certification Motion does not require a trial, because certification is a matter of law. Even the plaintiffs in the Lex Claims Litigation agree that this is a purely legal issue. *See Informative Motion of the Ad Hoc Group of General Obligation Bondholders Regarding Nature, Sequence, and Timing of Proceedings* at 3 [Dkt. No. 123] ("[T]he GO Group's claim to the Disputed Funds concerns only issues of law. . . ."). The lack of any trial weighs in favor of lifting the stay.

Although further briefing is required, the parties have already begun briefing the certification issues. The first round of briefing is complete, as three defendants already filed their certification motions. The Mutual Fund Group was unable to file a certification motion because on March 20, 2017, the First Circuit stayed the Lex Claims proceedings. It is, however, prepared to join the Certification Motion and participate in further briefing.

Following any certification decision, in a little more than three months from now, the Puerto Rico Supreme Court would be in a position to confirm the validity of the COFINA structure. Granting stay relief as proposed herein would allow the courts to resolve the critical available resources issue constructively and in short order.

**E.** **Granting this Stay Relief Will Cause No Harm to the Debtors**

Movants seek limited stay relief that would allow parties to join and brief whether the District Court should certify this one issue to the Puerto Rico Supreme Court. We do not seek to resume litigation of the causes of action, nor do we seek to prosecute our dispositive

- 13 -

motions or other motions in the Lex Claims Litigation.  The Debtors therefore face no harm, and the rest of the automatic stay will remain in place with respect to COFINA and Puerto Rico.

### <u>CONCLUSION</u>

Movants request an order, in the form attached as **Exhibit A**, lifting the automatic stay (i) to permit the Certification Motion to be fully briefed, argued and decided by the District Court, and (ii) if the Certification Motion is granted, to allow the Puerto Rico Supreme Court to consider and decide the certified issues.

I hereby certify that, on this same date, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, today June 7, 2017.

By:

**/s/ *José C. Sánchez-Castro***

José C. Sánchez-Castro
USDC-PR 213312
janchez@lsplawpr.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@lsplawpr.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@lsplawpr.com

LÓPEZ SÁNCHEZ & PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

*Counsel for Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc. and UBS IRA Select Growth & Income Puerto Rico Fund*

**/s/ *John K. Cunningham***

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc. and UBS IRA Select Growth & Income Puerto Rico Fund*

**TORO, COLÓN, MULLET, RIVERA
& SIFRE, P.S.C.**

 *s/ Manuel Fernández-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

 *s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

*s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC–PR No. 220,510
E-mail: jvankirk@tcmrslaw.com

P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

 *s/ Philip Bentley*
THOMAS MOERS MAYER*
AMY CATON*
PHILIP BENTLEY*
DAVID E. BLABEY JR.*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
        acaton@kramerlevin.com
        pbentley@kramerlevin.com
        dblabey@kramerlevin.com
        dbuckley@kramerlevin.com
*(admitted *pro hac vice*)

*Counsel to the Mutual Fund Group*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>   as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>   as representative of<br><br>The Commonwealth of Puerto Rico,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>   as representative of<br><br>Puerto Rico Sales Tax Financing Corporation ("COFINA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This Document Relates to:<br><br>17 BK 3283; 17 BK 3284 |

# [PROPOSED] ORDER GRANTING
# <u>RELIEF FROM THE AUTOMATIC STAY</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

Upon the motion dated May 7, 2017 (the "**Motion**")[2] of the Puerto Rico Funds and the Mutual Fund Group, pursuant to section 362(d) of the Bankruptcy Code, made applicable to this proceeding by section 301(a) of the Puerto Rico Opportunity Management and Economic Stability Act of 2016 ("**PROMESA**"), 48 U.S.C. § 2161(a); and the Court having jurisdiction over this matter under 28 U.S.C. § 1331, and under section 306(a)-(b) of PROMESA, 48 U.S.C. § 2166(a)-(b); and venue being proper under section 307(a) of PROMESA, 48 U.S.C. § 2167(a); and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and opposition thereto and having heard the statements of counsel at the hearing held before the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that the automatic stay arising under Bankruptcy Code § 362 is vacated (i) to permit the certification motion filed by the Puerto Rico Funds [Dkt. No. 221], as well as any joinder to that motion or any similar motion that the Mutual Fund Group or any other party may file (the "**Certification Motion**"), to be fully briefed, argued and decided by the District Court, and (ii) if the Certification Motion is granted, to allow the Puerto Rico Supreme Court to consider and decide the certified issues; and it is further

**ORDERED** that this Order is without prejudice to the Movants' right to seek other or further relief from the automatic stay in appropriate circumstances; and it is further

---

[2] Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

**ORDERED** that notice of the Motion as provided therein shall be deemed good and sufficient notice of the relief granted herein; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order.

Dated:  San Juan, Puerto Rico
_____, 2017

_____
Honorable Laura Taylor Swain
United States District Judge

KL2 3014474.2