# Exhibit C

ESTADO LIBRE ASOCIADO DE PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Boletín Administrativo Núm. OE-2016-018

ORDEN EJECUTIVA DEL GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, AL AMPARO DE LOS ARTÍCULOS 201 Y 202 DE LA LEY NÚM. 21-2016, CONOCIDA COMO LA "LEY DE MORATORIA DE EMERGENCIA Y REHABILITACIÓN FINANCIERA DE PUERTO RICO", PARA DECLARAR UN PERIODO DE EMERGENCIA PARA LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO (LA "ACT") HASTA EL 30 DE JUNIO DE 2016, SUSPENDER LA OBLIGACIÓN DE LA ACT DE TRANSFERIR O DEPOSITAR EN INSTITUCIONES FINANCIERAS O CUALQUIER OTRA ENTIDAD QUE ACTÚE COMO AGENTE FISCAL LOS INGRESOS DE LOS PEAJES Y CUALQUIER OTRO INGRESO RECIBIDO, Y ORDENAR LA IMPLEMENTACIÓN DE OTRAS MEDIDAS RAZONABLES Y NECESARIAS PARA LA CONTINUACIÓN DE LA PRESTACIÓN DE LOS SERVICIOS ESENCIALES PARA PROTEGER LA SALUD, LA SEGURIDAD Y EL BIENESTAR DE LOS RESIDENTES EN EL ESTADO LIBRE ASOCIADO DE PUERTO RICO.

**POR CUANTO:** El 6 de abril de 2016, firmé la Ley 21-2016, conocida como la "Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico" (la "Ley"). Los términos que comienzan en mayúscula en esta Orden Ejecutiva y que no están definidos aquí tendrán los significados que se le concedieron en la Ley.

**POR CUANTO:** El Artículo 108 de la Ley establece que durante el Periodo Cubierto el Gobernador debe darle prioridad a los servicios esenciales sobre el pago de la deuda no sólo para proveer para la salud, la seguridad y el bienestar de los residentes en el Estado Libre Asociado de Puerto Rico (el "ELA") pero también para evitar una contracción económica adicional y la crisis fiscal y humanitaria que en última instancia materialmente empeoraría el recobro de los acreedores de los bonos de Puerto Rico.

**POR CUANTO:** El 8 de abril de 2016, al amparo de los Artículos 201 y 203 de la Ley, aprobé el Boletín Administrativo Núm. OE-2016-10 (la "OE-2016-10") para declarar un Periodo de Emergencia para el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), establecer restricciones al retiro de depósitos del BGF e implantar otras medidas razonables y necesarias para permitir al BGF continuar llevando a cabo sus operaciones. El 30 de abril de 2016, al amparo de los Artículos 201 y

202 de la Ley, aprobé el Boletín Administrativo Núm. OE-2016-14 (la "OE-2016-14") para declarar una moratoria en el pago de ciertas obligaciones del BGF e implementar otras medidas razonables y necesarias para continuar la prestación de servicios esenciales para proteger la salud, la seguridad y el bienestar de los residentes en el ELA, entre otras cosas.

**POR CUANTO:** La crisis fiscal del ELA ha afectado sustancialmente varias entidades e instrumentalidades públicas, incluyendo, sin limitarse a la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT").

**POR CUANTO:** Históricamente la ACT ha contado con distintas fuentes de ingresos y liquidez para la prestación de servicios esenciales a los residentes en el ELA, que incluyen el mantenimiento y la operación de las carreteras, puentes y autopistas del ELA. Dichas fuentes de ingresos y liquidez consistían principalmente en: (1) ingresos derivados de los peajes y otros cargos impuestos por la ACT por el uso de sus instalaciones de tránsito (en inglés *traffic facilities*) (los "Ingresos de Peajes" y en inglés *Toll Revenues*); (2) ingresos recibidos del impuesto a la gasolina que se destina a la ACT a tenor con la Ley Núm. 75 de 23 de junio de 1965; (3) ingresos recibidos de ciertos impuestos sobre la gasolina, *gas oil* y *diesel oil* que se destina a la ACT a tenor con la Ley Núm. 223 de 30 de noviembre de 1995; (4) ingresos recibidos de un cargo especial anual sobre la licencia para los vehículos de motor destinado a la ACT a tenor con la Ley Núm. 9 de 12 de agosto de 1982, según enmendada; (5) ingresos recibidos del impuesto al crudo destinado a la ACT a tenor con la Ley Núm. 34 de 16 de julio de 1997 (los ingresos referidos en los incisos anteriores (1) al (5) de este Por Cuanto, en conjunto denominados en adelante, los "Ingresos de las Resoluciones 68/98"); (6) ingresos derivados de impuestos a los cigarrillos, cargos sobre licencias de vehículos de motor y excesos de impuestos al petróleo destinados a la ACT de conformidad con las Leyes Núm. 30 y 31, ambas aprobadas el 25 de junio de 2013 (en conjunto, los "Ingresos de las Leyes 30-31"); (7) liquidez proveniente de un acuerdo con el BGF mediante el cual el BGF concedía préstamos a la ACT; (8) fondos recibidos por la ACT del Gobierno federal por conducto de programas de asistencia federal de carreteras del Título 23 del *United States Code* (los "Ingresos Federales de Carreteras"); y (9) fondos recibidos por la ACT del Gobierno federal por conducto de programas de asistencia

federal de tránsito del Título 23 del *United States Code* (los "Fondos Federales de Tránsito"). Como consecuencia de la crisis fiscal del ELA, la disponibilidad de estos ingresos, fondos y fuentes de liquidez ha disminuido significativamente en los pasados seis (6) meses.

**POR CUANTO:** La ACT previamente emitió bonos al amparo de la Resolución de la Autoridad de Carreteras de Puerto Rico Núm. 68-18, aprobada el 13 de junio de 1968 (la cual autoriza y garantiza los *HTA's Highways Revenue Bonds*) y la Resolución de la ACT Núm. 98-06, aprobada el 26 de febrero de 1998 (la cual autoriza y garantiza los *HTA's Transportation Revenue Bonds*) (conjuntamente, las "Resoluciones 68/98"). El 30 de noviembre de 2015, al amparo de la Sección 8 del Artículo VI de la Constitución del ELA, aprobé el Boletín Administrativo Núm. OE-2015-046 (la "OE-2015-046"), mediante el cual, entre otras cosas, se le ordenó al Secretario de Hacienda de Puerto Rico a retener los ingresos asignados a la ACT y redirigirlos para el pago de la deuda pública del ELA y para garantizar los servicios esenciales de los residentes en el ELA (los "Fondos Retenidos de la ACT"). El principal e interés de los bonos emitidos al amparo de las Resoluciones 68/98 están garantizados en parte y son pagaderos en parte de los Fondos Retenidos de la ACT. Los Ingresos de Peajes, los cuales no son fondos retenidos sujetos a la OE-2015-046, también garantizan parte del pago de la deuda emitida al amparo de las Resoluciones 68/98. De conformidad con las Resoluciones 68/98, cualquier exceso relacionado con los Fondos Retenidos de la ACT y los Ingresos de Peajes luego de los depósitos requeridos y el repago del servicio de la deuda debían ser devueltos a la ACT para el pago de sus gastos operacionales. Tras la aprobación de la OE-2015-046, la cual ordena la retención de los Fondos Retenidos de la ACT, la ACT experimentó una disminución significativa en su liquidez, que se exacerbó por el hecho de que la ACT, en cumplimiento con las Resoluciones 68/98, continuó remitiendo la totalidad de los Ingresos de Peajes al fiduciario de los bonos para el servicio de la deuda emitida al amparo de las Resoluciones 68/98.

**POR CUANTO:** La ACT y el BGF son partes de cierto *Loan Agreement*, con fecha del 28 de agosto de 2013, mediante el cual la ACT obtuvo una línea de crédito no rotativa del BGF (el "Préstamo del BGF"). Como condición para el Préstamo del BGF, la ACT y el BGF otorgaron cierto *Assignment and Security Agreement*, pactado el mismo día, mediante el cual la ACT cedió

3

al BGF sus derechos de recibir los Ingresos de las Leyes 30-31 con el fin de garantizar el repago del Préstamo del BGF y otras cantidades debidas al BGF. En un esfuerzo por atender la crisis de liquidez de la ACT y de garantizar la continuidad de la provisión de los servicios esenciales de la ACT para proteger la salud, la seguridad y el bienestar de los residentes en el ELA, el BGF y la ACT entraron en un acuerdo mediante el cual el BGF se comprometió a transferir a la ACT ciertos fondos para cubrir los costos operacionales y gastos de la ACT. El 1 de abril de 2016, el BGF informó a la ACT que no tenía la capacidad financiera de continuar la transferencia de dichos fondos creando un problema de liquidez mayor para la ACT, amenazando la continuidad de la provisión de los servicios esenciales para proteger la salud, la seguridad y el bienestar de los residentes en el ELA y poniendo en riesgo la elegibilidad de la ACT para recibir los Ingresos Federales de Carreteras y los Fondos Federales de Tránsito.

**POR CUANTO:** El 19 de abril de 2016, la ACT enmendó el Contrato de Alianza de las Autopistas PR-22 y PR-5 con Autopistas Metropolitanas de Puerto Rico, LLC (el "Concesionario") para conceder ciertos derechos al Concesionario. A cambio de esos derechos, el Concesionario hizo un pago inicial de $100 millones (el "Pago Inicial") y hará un pago diferido de $15 millones pagadero al momento en que se implementen ciertos carriles bidireccionales o al 30 de junio 2017, lo que ocurra primero. De conformidad con el Artículo 17 de la Ley Núm. 29-2009, según enmendada ("Ley de las APP"), la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (la "AAFAF"), luego de consultarlo con la Oficina de Gerencia y Presupuesto (la "OGP"), sometió ante la consideración del Gobernador una misiva recomendando los usos del Pago Inicial. El BGF también cursó una recomendación sobre los potenciales usos de estos dineros. El 9 de mayo de 2016, luego de evaluar detenidamente las recomendaciones de la OGP, el BGF y la AAFAF, considerando la complicada situación de liquidez que enfrentan el ELA, el BGF y otras entidades gubernamentales, y en virtud de la facultad conferida en los Artículos 9(g)(iv) y 17 de la Ley de las APP, el Gobernador autorizó que los fondos fueran utilizados para el pago de servicios esenciales, según propuesto por la AAFAF y OGP.

4

**POR CUANTO:** Esta situación ha provocado una situación de emergencia pública que amerita la declaración, al amparo del Artículo 201 de la Ley, de un periodo de emergencia para la ACT y suspender ciertas obligaciones de la ACT para garantizar la prestación de servicios esenciales relacionados con la salud, la seguridad y el bienestar de los residentes en el ELA. Esta declaración de emergencia tendrá la breve duración aquí dispuesta y no afectará los derechos de cobro de ningún acreedor de la ACT, pues el fiduciario de los bonos emitidos al amparo de las Resoluciones 68/98 ha recibido y tiene ya depositados por adelantado suficientes fondos para cubrir los pagos vencederos hasta el próximo año.

**POR TANTO:** Yo, ALEJANDRO J. GARCÍA PADILLA, Gobernador del Estado Libre Asociado, en virtud de los poderes inherentes a mi cargo y de la autoridad que me ha sido conferida por la Constitución del Estado Libre Asociado, por la presente dispongo lo siguiente:

**PRIMERO:** Conforme al Artículo 201 de la Ley, por la presente declaro un estado de emergencia para la ACT y el comienzo de un Periodo de Emergencia para la ACT hasta el 30 de junio de 2016, de manera que se proteja la salud, la seguridad y el bienestar de los residentes en el ELA.

**SEGUNDO:** Esta Orden Ejecutiva no declara un Periodo de Emergencia para ninguna Entidad Gubernamental excepto la ACT y no impone una moratoria a ninguna obligación de la ACT. Esta Orden Ejecutiva no autoriza a una Entidad Gubernamental a utilizar fondos que se hayan depositado previo a la fecha de esta Orden Ejecutiva con un fiduciario u otro custodio para el pago de una Obligación Cubierta ni pretende impedir el uso de dichos fondos ya depositados para el pago de dicha Obligación Cubierta.

**TERCERO:** Conforme al Artículo 201 (d) de la Ley, por la presente ordeno la suspensión de toda obligación de la ACT de transferir a, o depositar con, cualquier institución financiera o autoridad que actúe como agente fiscal al amparo de cualquier resolución mediante la cual los bonos en circulación de la ACT hayan sido emitido los Ingresos de Peajes y cualquier otro ingreso asignado o recibido por la ACT. Lo anterior incluye los Ingresos de Peajes correspondientes a bonos emitidos bajo las Resoluciones 68/98, independientemente de cuándo dichos fondos

5

hayan sido recolectados. En adelante se autoriza a la ACT a utilizar los Ingresos de Peajes y cualquier otro ingreso asignado o recibido por la ACT para la continuación de la prestación de servicios esenciales para proteger la salud, la seguridad y el bienestar de los residentes en el ELA. No se afectan por esta Orden Ejecutiva los fondos necesarios para el pago de las obligaciones mencionadas en este párrafo que han sido transferidos o depositados por la ACT a los fiduciarios pertinentes para responder por los pagos vencederos hasta el próximo año.

**CUARTO:** Conforme al Artículo 201 (b) de la Ley, no se tomará acción alguna y no se comenzará o continuará reclamación o procedimiento alguno en alguna corte de cualquier jurisdicción que esté relacionado con o que surja bajo una Obligación Cubierta de la ACT, incluyendo acciones o procedimientos relacionados con las obligaciones mencionadas en el párrafo TERCERO de esta Orden Ejecutiva.

**QUINTO:** Se ordena a la Directora Ejecutiva de la ACT a remitir un informe semanal al Gobernador en el cual se detalle el flujo de efectivo de la entidad.

**SEXTO:** SEPARABILIDAD. Esta Orden Ejecutiva deberá ser interpretada de tal manera que pueda mantener su validez, en la medida que sea posible, conforme a la Constitución del Estado Libre Asociado y la Constitución de los Estados Unidos. Si cualquier cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva fuese declarada inconstitucional por un tribunal con jurisdicción, la orden emitida por dicho tribunal a esos efectos no afectará ni invalidará el resto de esta Orden Ejecutiva. El efecto de dicha orden estará limitado a la cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva declarada inconstitucional y solamente con respecto a la aplicación de la misma a la obligación particular sujeta a dicha controversia.

**SÉPTIMO:** RATIFICACIÓN DE LA OE-2016-10 Y OE-2016-14. Por la presente se ratifica y confirma la OE-2016-10, según enmendada por la OE-2016-14 y la OE-2016-14 en todos sus aspectos, según modificada por esta Orden Ejecutiva, y se dispone que ambas expirarán al final del Periodo Cubierto.

**OCTAVO:** <u>DEROGACIÓN</u>. Se deja sin efecto cualquier otra Orden Ejecutiva que en todo o en parte sea incompatible con esta, hasta donde existiera tal incompatibilidad.

**NOVENO:** <u>VIGENCIA Y PUBLICACIÓN</u>. Esta Orden Ejecutiva entrará en vigor inmediatamente y permanecerá en vigor hasta (i) el 30 de junio de 2016 o (ii) la fecha en la que la misma sea revocada por escrito por el Gobernador, lo que ocurra primero. Se ordena su más amplia publicación y divulgación.

EN TESTIMONIO DE LO CUAL, expido la presente Orden Ejecutiva bajo mi firma y hago estampar en esta el Gran Sello del Estado Libre Asociado de Puerto Rico, en San Juan, Puerto Rico, hoy 17 de mayo de 2016.

ALEJANDRO J. GARCÍA PADILLA
GOBERNADOR

Promulgada de acuerdo a la ley, hoy 17 de mayo de 2016.

VÍCTOR A. SUÁREZ MELÉNDEZ
SECRETARIO DE ESTADO DESIGNADO

7



# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY 10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of New York**
**State of New York**

Date: July 15, 2016

To whom it may concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:

- COMMONWEALTH OF PUERTO RICO; Administrative Bulletin No. OE-2016-018

Riley Russell, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Riley Russell

WI-44, 6/25/2015, Rev 0

Accurate Translation Services 24/7

**COMMONWEALTH OF PUERTO RICO**
**LA FORTALEZA**
**SAN JUAN, PUERTO RICO**

**Administrative Bulletin No. OE-2016-018**

**EXECUTIVE ORDER FROM THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, THE HON. ALEJANDRO J. GARCIA PADILLA, UNDER THE AUTHORITY OF ARTICLES 201 AND 202 OF LAW NO. 21-2016, KNOWN AS THE "EMERGENCY MORATORIUM AND FINANCIAL REHABILITATION OF PUERTO RICO ACT," TO DECLARE A PERIOD OF EMERGENCY FOR THE HIGHWAYS AND TRANSPORTATION AUTHORITY OF PUERTO RICO (THE "ACT"), UNTIL JUNE 30, 2016; TO SUSPEND THE OBLIGATION OF THE ACT TO TRANSFER TO OR DEPOSIT WITH FINANCIAL INSTITUTIONS OR ANY OTHER ENTITY ACTING AS A FISCAL COLLECTIONS AGENT THE REVENUES FROM THE TOLLS AND ANY OTHER REVENUES RECEIVED, AND TO ORDER THE IMPLEMENTATION OF OTHER MEASURES THAT ARE REASONABLE AND NECESSARY TO BE ABLE TO CONTINUE TO PROVIDE ESSENTIAL SERVICES TO PROTECT THE HEALTH, SAFETY AND WELFARE OF THE RESIDENTS OF THE COMMONWEALTH OF PUERTO RICO.**

**WHEREAS**: On April 6, 2016, I signed Law 21-2016, known as the "Emergency Moratorium and Financial Rehabilitation of Puerto Rico Act" (the "Act"). The terms beginning with a capital letter in this Executive Order, and which are not defined herein, will have the meanings given to them in the Act.

**WHEREAS**: Article 108 of the Act establishes that during the Covered Period, the Governor must place a priority on essential services over payment of the debit, not only to provide for the health, safety and welfare of the residents of the Commonwealth of Puerto Rico (the "Commonwealth"), but also to avoid additional economic contraction and a fiscal and humanitarian crisis which in the end would materially worsen the recovery of Puerto Rican bonds by creditors.

**WHEREAS**: On April 8, 2016, backed by Articles 201 and 203 of the Act, I enacted Administrative Bulletin No. OE-2016-10 ("OE-2016-10") to declare a Period of Emergency for the Governmental Development Bank of Puerto Rico (*Banco Gubernamental de Fomento para Puerto Rico*, or "GDB"), establish restrictions on the withdrawal of deposits from the GDB and to implement other reasonable and necessary measures to allow the GDB to continue to carry out its operations. On April 30, 2016, pursuant to Articles 201 and

1

        202 of the Act, I enacted Administrative Bulletin No. OE-2016-14 ("OE-2016-14"), to declare a moratorium on the payment of certain obligations of the GDB and to implement other measures that were reasonable and necessary to continue to be able to protect the health, safety and welfare of residents of the Commonwealth, among other things.

**WHEREAS**: The fiscal crisis that the Commonwealth is undergoing has substantially affected various public entities and operations, including, but not limited to, the Highways and Transportation Authority of Puerto Rico ("HTA").

**WHEREAS**: Historically, the HTA has had different sources of revenues and liquidity to use to provide essential services to residents of the Commonwealth, including maintaining and operating the highways, bridges and freeways of Puerto Rico. Said sources of revenue and liquidity have primarily consisted of: (1) revenues derived from tolls and other fees charged by the HTA for the use of its traffic facilities (Toll Revenues); (2) revenues received from the gasoline tax which goes to the HTA as stipulated by Law No. 75 of June 23, 1965; (3) revenues received from certain taxes on gasoline, gas oil and diesel oil which are earmarked for the HTA under Law No. 223 of November 30, 1995; (4) revenues received from a special annual charge on motor vehicle licenses allocated to the HTA in accordance with Law No. 34 of July 16, 1997 (the revenues referred to in sections (1) through (5) above of this Recital will hereafter collectively be referred to as the "Resolutions 68 & 98 Revenues"); (6) revenues from cigarette taxes, motor vehicle licensing fees and surplus oil taxes allocated to the HTA in accordance with Laws No. 30 and 31, both approved on June 25, 2013 (collectively, "Laws 30 & 31 Revenues"); (7) liquidity stemming from an agreement with the GDB through which the GDB granted loans to the HTA; (8) funds received by the HTA from the Federal Government through federal highway assistance programs under Title 23 of the United States Code ("Federal Highway Revenues"); and (9) funds received for the HTA from the Federal Government through federal transportation

                assistance programs under Title 23 of the United States Code ("Federal Transportation Funds"). As a consequence of the fiscal crisis affecting the Commonwealth, the availability of these revenues, funds and sources of liquidity has declined significantly over the past six (6) months.

**WHEREAS**: Previously, the HTA would issue bonds under Puerto Rican Highway Authority Resolution No. 68-18, approved on June 13, 1968 (which authorizes and guarantees the HTA's Highway Revenue Bonds) and HTA Resolution No. 98-06, approved on February 26, 1998 (which authorizes and guarantees the HTA's Transportation Revenue Bonds) (together, "Resolutions 68 & 98"). On November 30, 2015, under the authority of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, I approved Administrative Bulletin No. OE-2015-046 ("OE-2015-046"), which, among other things, ordered the Secretary of the Treasury of Puerto Rico to withhold the revenues allocated to the HTA and to redirect them toward the payment of the Commonwealth's public debt and to guarantee essential services for the residents of the Commonwealth (the "Withheld HTA Funds"). The principal and interest on the bonds issued with the backing of Resolutions 68 & 98 are guaranteed in part and are payable in part from the Withheld HTA Funds. The Toll Revenues, which are not withheld funds subject to OE-2015-046, also guarantee part of the debt issued under Resolutions 68 & 98. According to Resolutions 68 & 98, any surplus related to the Withheld HTA Funds and the Toll Revenues after the required deposits are made and after repaying the debt service should be returned to the HTA to cover its operating expenses. After the enactment of OE-2015-046, which orders the withholding of the Withheld HTA Funds, the HTA experienced a significant reduction in liquidity, which was exacerbated by the fact that the HTA, in compliance with Resolutions 68 & 98, continued to send all of its Toll Revenues to the trustee of the bonds to service the debt issued under Resolutions 68 & 98.

**WHEREAS**: The HTA and the GDB are parts of a certain Loan Agreement, dated August 28, 2013, through which the HTA obtained a non-rotating GDB credit line (the "GDB Loan"). As a condition of the GDB Loan, the HTA and the GDB executed an Assignment and Security Agreement, signed on the same day, through which the HTA ceded to

3

the GDB its rights to receive the Revenues from Laws 30 & 31 in order to guarantee repayment of the GDB Loan and other amounts owed to the GDB. In an effort to attend to the HTA's liquidity crisis and to guarantee the continued provision of essential HTA services to protect the health, safety and well-being of Commonwealth residents, the GDB and the HTA entered into an agreement by which the GDB committed to transfer certain funds to the HTA to cover the HTA's operational costs and expenses. On April 1, 2016, the GDB informed the HTA that it no longer had the financial capacity to continue to transfer said funds, creating an even greater liquidity problem for the HTA, and threatening the continued provision of services essential for safeguarding the health, safety and welfare of residents of the Commonwealth and putting at risk the eligibility of the HTA to receive Federal Highway Funds and Federal Transportation Funds.

**WHEREAS**: On April 19, 2016, the HTA amended the Partnership Agreement for Highways PR-22 and PR-5 with Autopistas Metropolitanas de Puerto Rico, LLC (the "Concessionaire"), to grant certain rights to the concessionaire. In exchange for these rights, the Concessionaire made an initial payment of $100 million (the "Initial Payment") and would make a deferred payment of $15 million, payable at the time that certain two-way lanes are built or on June 30, 2017, whichever happens first. According to Article 17 of Law No. 29-2009, as amended (the "PPP Law"), the Financial Advisory Authority and Tax Agency of Puerto Rico (*Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico*, or "AAFAF"), after consulting with the Office of Management and Budget ("OMB"), submitted for the consideration of the Governor a memorandum recommending how the Initial Payment should be used. The GDB also sent a recommendation on the potential uses of these funds. On May 9, 2016, after carefully evaluating the recommendations of the OMB, the GDB and the AAFAF, considering the difficult liquidity situation of the HTA, the GDB and other government agencies, and by virtue of the authority conferred by Articles 9(g)(iv) and 17 of the PPP Law, the Governor authorized the funds to be used to pay for essential services, as proposed by the AAFAF and the OMB.

4

**WHEREAS**: This situation has caused a public emergency which merits the declaration, under Article 201of the Act, of a period of emergency for the HTA and the suspension of certain obligations of the HTA in order to guarantee the provision of essential services related to the health, safety and welfare of the residents of the Commonwealth. This state of emergency will have a brief duration as noted herein and will not affect the recovery rights of any HTA creditor, since the trustee of the bonds issued under Resolutions 68 & 98 has received and already has deposited in advance sufficient funds to cover the payments coming due until next year.

**THEREFORE**: I, ALEJANDRO J. GARCIA PADILLA, Governor of the Commonwealth of Puerto Rico, by virtue of the powers vested in me and the authority granted to me by the Constitution of the Commonwealth of Puerto Rico, hereby order the following:

**FIRST**: Pursuant to Article 201 of the Act, I hereby declare a state of emergency for the HTA and the beginning of a Period of Emergency for the HTA until June 30, 2016, in order to protect the health, safety and welfare of the residents of the Commonwealth.

**SECOND**: This Executive Order does not declare a Period of Emergency for any other Governmental Entity except for the HTA, and does not impose a moratorium on any obligation of the HTA. This Executive Order does not authorize a Governmental Entity to use funds that were deposited prior to the date of this Executive Order with a trustee or other custodian for the payment of a Covered Obligation, nor is it intended to impede the use of said already deposited funds to pay said Covered Obligation.

**THIRD**: Pursuant to Article 201(d) of the Act, I hereby order the suspension of all obligations on the part of the HTA to transfer Toll Revenues or any other revenues allocated to or received by the HTA, or to deposit those funds with, any financial institution or authority acting as a fiscal agent under any resolution through which the HTA bonds in circulation were issued. This includes the Toll Revenues corresponding to bonds issued under Resolutions 68 & 98, regardless of when said funds

were collected. Hereafter, the HTA is authorized to use Toll Revenues and any other revenues allocated to or collected by the HTA to continue to provide essential services to safeguard the health, safety and welfare of residents of the Commonwealth. This Executive Order does not affect the funds necessary to pay the obligations mentioned in this paragraph which the HTA has transferred to or deposited with the relevant trustees to satisfy the payments coming due from now until next year.

**FOURTH**: As per Article 201(b) of the Act, no action whatsoever shall be taken and no claim or legal proceeding shall be initiated or continued in any court of any jurisdiction that is related to or arises out of a Covered Obligation of the HTA, including actions or proceedings related to the obligations mentioned in the THIRD paragraph of this Executive Order.

**FIFTH**: The Executive Director of the HTA is hereby ordered to submit a weekly report to the Governor which describes in detail the entity's cash flows.

**SIXTH**: SEVERABILITY. This Executive Order shall be interpreted in such a way that it can maintain its validity, to the extent possible, in accordance with the Constitution of the Commonwealth of Puerto Rico and the Constitution of the United States. If any clause, paragraph, sub-paragraphs, provision or part of this Executive Order should be declared unconstitutional by a court with proper jurisdiction, the ruling issued by said court in that case would not affect nor invalidate the rest of this Executive Order. The effect of said ruling would be limited to the clause, paragraph, sub-paragraph or part of this Executive Order declared to be unconstitutional and only with respect to the application of that part to the particular obligation in dispute.

**SEVENTH**: RATIFICATION OF OE-2016-10 AND OE-2016-14. This Order hereby ratifies and confirms OE-2016-10, as amended by OE-2016-14 and OE-2016-14, in all of its aspects, as modified by this Executive Order, and decrees that both shall expire at the end of the Covered Period.

**EIGHTH**: <u>ANNULMENT</u>: This Order hereby annuls and voids any other Executive Order that is incompatible with it, to the extent of said incompatibility.

**NINTH**: <u>FORCE AND PUBLICATION</u>. This Executive Order shall enter into force immediately and shall remain in effect until (i) June 30, 2016 or (ii) the date on which it is revoked in writing by the Governor, whichever comes first. It is ordered to be published and disseminated as widely as possible.

IN WITNESS THEREOF, I issue this Executive Order under my signature and I affix hereon the Great Seal of the Commonwealth of Puerto Rico, in San Juan, Puerto Rico, today, the <u>17</u>th of <u>May</u> of 2016.

[Great Seal of Puerto Rico]

_____[signature]_____
ALEJANDRO J. GARCIA PADILLA
GOVERNOR

Enacted in accordance with the law, today, <u>May 17</u>, 2016.

_____[signature]_____
VICTOR A. SUAREZ MELENDEZ
SECRETARY OF STATE DESIGNATE

7