**<u>Exhibit C</u>**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE EMPLOYEES RETIREMENT
SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO ("ERS"),

    Debtor.[2]

PROMESA
Title III

No. 17 BK 3566-LTS

(Joint Administration Requested)

This Order relates only to ERS and HTA and shall be filed in the lead Case No. 17 BK 3283-LTS, Case No. 17 BK 3566-LTS (ERS) and Case No. 17 BK 3567-LTS (HTA).

---------------------------------------------------------------x

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

[2] The last four (4) digits of ERS's federal tax identification number are 9686.

```
-------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY ("HTA"),

        Debtor.[3]

-------------------------------------------------------------x
```

PROMESA
Title III

No. 17 BK 3567-LTS

(Joint Administration Requested)

This Order relates only to ERS and HTA and shall be filed in the lead Case No. 17 BK 3283-LTS, Case No. 17 BK 3566-LTS (ERS) and Case No. 17 BK 3567-LTS (HTA).

**Re: ECF No. \_\_\_\_**

## ORDER AUTHORIZING EMPLOYMENT AND PAYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS SERVICE AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the *Application of the Debtors for Entry of an Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Service Agent,* Nunc Pro Tunc *to the Petition Date* (the "Application")[4] filed by the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS," and together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to PROMESA section 315(b); and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found that the Debtors provided adequate and appropriate

---

[3] The last four (4) digits of HTA's federal tax identification number are 3808.

[4] Capitalized terms used but not defined in this Order have the meanings used in the Application.

2

notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard the statements of counsel in support of the Application at a hearing held before the Court (the "Hearing"); and upon the McGuinness Declaration submitted in support of the Application; and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein,

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Application is granted as set forth herein.

2. The Debtors are authorized and required to pay Epiq as Service Agent effective *nunc pro tunc* to the HTA/ERS Petition Date, all amounts arising under the Engagement Agreement, and Epiq is authorized and directed to perform the Services. The Clerk's office shall provide Epiq with ECF credentials that allow Epiq to receive ECF notifications and file certificates of service.

3. In connection with performing the Services, Epiq is authorized to take direction from the Oversight Board and the Debtors and each of their respective representatives, employees, agents, and/or legal and financial professionals (collectively, the "Debtor Parties"); provided, however, that in the case of a conflict, the direction of the Oversight Board and its representatives, employees, agents, and professionals shall control. Epiq may rely upon any requests, advice, or information provided by the Debtor Parties to the same extent as if such requests, advice, or information were provided by the Debtors or the Oversight Board.

4. Subject to the terms of this Order, the applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of the Court, the Debtors are authorized to compensate Epiq in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

5. Epiq shall use its best efforts to avoid any duplication of services provided by any other agent retained by the Oversight Board or the Debtors in the HTA/ERS Title III Cases.

6. Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on AAFAF, the Oversight Board, counsel for AAFAF, counsel for the Oversight Board, counsel for any statutory committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

7. Subject to entry of this Order, the applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of this Court, all invoices shall be due and payable upon receipt.

8. The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices; <u>provided</u> that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9. Pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Epiq under this Order shall be an administrative expense

4

of the Debtors.

10. In case of a good faith dispute with respect to an invoice amount, the Debtors or the Oversight Board shall provide a detailed written notice of such dispute to Epiq within ten (10) days of receipt of the invoice. Subject to the terms of this Order, the applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable order of the Court, the undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.

11. The Debtors shall (a) pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Debtors, the Oversight Board, or the Debtor Parties and (b) pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Epiq.

12. If the employment relationship of Epiq is terminated pursuant to the Engagement Agreement, the Debtors shall remain liable for all amounts then accrued and/or due and owing to Epiq hereunder.

13. Upon entry of this Order, the Debtors shall pay Epiq a retainer of $25,000 that may be held by Epiq as security for the Debtors' payment obligations under the Engagement Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Engagement Agreement. Following termination of the Engagement Agreement, Epiq shall return to the Debtors any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

14. Epiq reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent

an increase greater than 10% from the previous year's levels, Epiq shall provide 60 days' notice to the Debtors of such increases.

15. Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "Property") furnished by Epiq for itself or for use by the Oversight Board or the Debtors under the Engagement Agreement. Fees and expenses paid by the Debtors shall not vest in the Debtors any rights in such Property. Such Property is only being made available for the Oversight Board or the Debtors' use during and in connection with the Services provided by Epiq hereunder.

16. While providing the Services, Epiq shall comply with all applicable laws, rules, and regulations, as well as all applicable Oversight Board policies and rules, including without limitation the Oversight Board's Vendor Code of Conduct and Vendor Conflict of Interest Disclosure Certification, attached as an exhibit to the Engagement Agreement.

17. Epiq is authorized to take such other action to comply with all duties set forth in the Application.

18. The Debtors shall indemnify and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of, or related to Epiq's performance under the Engagement Agreement. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any

Indemnified Party, provided however, that any indemnification obligations will only be with respect to tasks performed in accordance with the terms of the Engagement Agreement. The Debtors' indemnification obligations shall survive the termination of the Engagement Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

19. Epiq shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

20. The Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any losses, claims, damages, judgments, liabilities, and expenses resulting solely from Epiq's gross negligence or willful misconduct. Furthermore, Epiq and the Debtors shall notify each other in writing promptly upon the assertion, threat, or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the services rendered under the Engagement Agreement.

21. If, before the earlier of (a) the entry of an order confirming a plan of adjustment in the HTA/ERS Title III Cases (that order having become a final order no longer subject to appeal) or (b) the entry of an order closing the HTA/ERS Title III Cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by

Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

22. The Debtors and the Oversight Board are responsible for, and Epiq does not verify, the accuracy of the programs, data, and other information provided by such party to Epiq and for the output of such information. The party delivering such information agrees, represents, and warrants to Epiq that before delivery of any information to Epiq: (a) the party delivering such information has full authority to deliver such information to Epiq; and (b) Epiq is authorized to use such information to perform the Services. Any data, storage media, programs, or other materials furnished to Epiq by the Debtors or the Oversight Board may be retained by Epiq until the Services provided under the Engagement Agreement are paid in full. The Debtors shall remain liable for all fees and expenses incurred by Epiq under the Engagement Agreement as a result of data, storage media, or other materials maintained, stored, or disposed of by Epiq. Any such disposal shall be in a manner requested by or acceptable to the Debtors and the Oversight Board; _provided_ that if the Debtors and the Oversight Board have not utilized Epiq's Services for a period of 90 days or more, Epiq may dispose of any such materials, and be reimbursed by the Debtors for the expense of such disposition, after giving the Debtors and the Oversight Board 30 days' notice. The Debtors and the Oversight Board agree to initiate and maintain backup files that would allow the Debtors and the Oversight Board to regenerate or duplicate all programs, data, or information provided by the Debtors and the Oversight Board to Epiq. Disposal of any Debtors or Oversight Board data, storage media, or other materials shall comply with any applicable court orders and rules or the Clerk's office instructions.

23. In the event Epiq is unable to provide the services set out in this Order, Epiq will immediately notify the Clerk and counsel to the Oversight Board.

24. Epiq shall not cease providing the Services during the HTA/ERS Title III Cases for any reason without prior order of the Court authorizing Epiq to do so; <u>provided</u> that Epiq may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Oversight Board, the Debtors, the U.S. Trustee, and any statutory committee of creditors appointed, if any, in these cases by facsimile or overnight delivery; <u>provided</u>, <u>further</u>, that except as expressly provided herein, the Debtors and Epiq may otherwise terminate or suspend other services as provided under the Engagement Agreement.

25. The Debtors and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application and Engagement Agreement.

26. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

27. In the event of any inconsistency between this Order, the Engagement Agreement, and the Application, this Order shall govern.

28. Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2017
San Juan, Puerto Rico

_____
Honorable Laura Taylor Swain
United States District Judge

9