**Hearing Date**: June 28, 2017 at 9:30 a.m. (Prevailing Eastern Time)
**Objection Deadline**: June 16, 2017 at 4:00 p.m. (Prevailing Eastern Time)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

      Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO ("ERS"),[2]

      Debtor.

PROMESA
Title III

No. 17 BK 3566-LTS

(Joint Administration Requested)

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY ("HTA"),[3]

PROMESA
Title III

No. 17 BK 3567-LTS

(Joint Administration Requested)

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

[2] The last four (4) digits of ERS's federal tax identification number are 9686.

[3] The last four (4) digits of HTA's federal tax identification number are 3808.

Debtor.

------------------------------------------------------------x

## MOTION OF DEBTORS PURSUANT TO PROMESA SECTION 317 AND BANKRUPTCY CODE SECTION 105(A) FOR ENTRY OF ORDER (A) AUTHORIZING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS, AND (B) APPOINTING A (I) FEE COMMITTEE, INCLUDING APPROVAL OF PROPOSED COMPOSITION, STRUCTURE, GOVERNANCE, OPERATIONS, AND RESPONSIBILITIES OF SUCH COMMITTEE, AND (II) FEE EXAMINER TO SERVE AS ONE OF ITS MEMBERS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, as Title III debtors (the "ERS," and together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[4] respectfully submit this motion (the "Motion"), pursuant to PROMESA section 317 and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to this case pursuant to PROMESA section 301(a), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) authorizing the establishment of a regular process for the allowance and payment of interim compensation and reimbursement of expenses for the following (collectively, the "Professionals"[5]): (i) attorneys and other

---

[4] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[5] The Debtors take the position that the undefined term "professional person" in PROMESA section 316 includes only professionals engaged in the Debtors' restructuring and does not include ordinary course professionals ("OCP"), which the Debtors can employ in their sole discretion. Accordingly the term "Professionals" in this Motion does not include OCP.

2

professionals employed by the Debtors and all future Title III petitioners to represent or assist the Debtors with respect to these Title III Cases, (ii) attorneys and other professionals employed by the Oversight Board to the extent they render services for the Oversight Board as representative of any Debtors, (iii) attorneys and other professionals employed by any committee appointed under Bankruptcy Code section 1103 in any of the Title III Cases (as defined below), and (iv) any trustee appointed pursuant to Bankruptcy Code section 926 in any of the Title III Cases; (b) appointing a fee committee (the "Fee Committee") comprised of five members: (i) one member appointed by the Oversight Board as representative of the Debtors, (ii) one member appointed by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" or the "Government"), (iii) one member appointed by the statutory creditors' committee from its members or professionals (the "UCC"), (iv) one member appointed by and representative of the U.S. Trustee, and (v) the fee examiner; and (c) approving the appointment of the fee examiner designated herein.  In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction and Venue**

1.    The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.    Venue is proper pursuant to PROMESA section 307(a).

3.    The statutory bases for the relief requested herein are PROMESA sections 316 and 317 and Bankruptcy Code section 105(a), made applicable in the Title III Cases pursuant to PROMESA section 301(a).

**Background**

4.    On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

3

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as covered entities under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Commonwealth's Title III Case").

8.      On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under title III thereof ("COFINA's Title III Case").

9.      On May 21, 2017, the Oversight Board issued restructuring certifications pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS and HTA pursuant to PROMESA section 304(a), commencing cases under title III thereof (the "Additional Title III Cases," and, collectively with the Commonwealth's Title III Case, COFINA's Title III Case, and any subsequent case under Title III of PROMESA commenced by a covered territorial instrumentality under PROMESA, the "Title III Cases").

10.     On May 5, 2017, Chief Justice of the United States John Roberts designated United States District Judge Laura Taylor Swain to serve as the presiding judge in

Commonwealth's Title III case.  By order dated June 1, 2017, Judge Swain directed that the Commonwealth Title III case and the COFINA Title III case would be jointly administered for procedural purposes only [ECF No. 242].  By two orders dated May 26, 2017, Chief Judge John Howard of the United States Court of Appeals for the First Circuit designated Judge Swain, as a United States District Judge for the Southern District of New York assigned for service in the United States District Court for the District of Puerto Rico, to serve as the presiding judge in the Additional Title III Cases.  *See In re Employees Retirement System of the Government of the Commonwealth of Puerto Rico*, Case No. 17-3566  [Docket No. 16];  *In re Puerto Rico Highways and Transportation Authority*, Case No. 17-3567  [Docket No. 7].

11.     Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [ECF No. 1], attached to the Commonwealth's Title III petition.

## **Relief Requested**

12.     By this Motion, pursuant to PROMESA section 317 and Bankruptcy Code section 105(a), the Debtors seek entry of an order, substantially in the form of the Proposed Order, authorizing the establishment of an orderly and regular process for the allowance and payment of interim compensation and reimbursement of expenses for the Professionals that will be required to file fee applications for allowance of payment of compensation and reimbursement of expenses pursuant to PROMESA section 316.  Additionally, the Debtors seek approval of a procedure for reimbursement of reasonable out-of-pocket expenses incurred by members of each statutory committee appointed in the Title III Cases.  Finally, the Debtors seek authorization for the appointment of a (i) Fee Committee, including approval of the proposed composition,

structure, governance, operations, and responsibilities of such committee, and (ii) fee examiner to serve as one of its members.

### Retention of Professionals

13.     The Debtors and the Oversight Board have retained professionals in connection with the instant Title III Cases.   Unlike in cases commenced under the Bankruptcy Code, professionals retained by the Debtors and the Oversight Board do not require court authorization for retention.[6]   Such professionals, however, do need to apply to this Court for approval of compensation and reimbursement of expenses under PROMESA section 316 for services and disbursements such professionals provide to prosecute the Title III Cases.   Moreover, with regard to interim compensation of Professionals and reimbursement of expenses incurred thereby, PROMESA section 317 provides that:

> [A] debtor's attorney, or any professionals person employed by the debtor (in the debtor's sole discretion), the Oversight Board (in the Oversight Board's sole discretion), a committee under section 1103 of title 11, United States Code, or a trustee appointed by the court under section 926 of title 11, United States Code, may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such application or reimbursement of expenses incurred before such date as is provided under section 317 of this title.

PROMESA § 317.

14.     In the ordinary course of business, the Debtors employ hundreds of professionals that provide services to the Debtors relating to issues that directly impact the Debtor' day-to-day operations, including specialized legal services, accounting services, and tax services. Accordingly, the Debtors propose that the Motion and Proposed Order will not apply to

---

[6] *See* PROMESA § 301(a) (omitting Bankruptcy Code sections 327 and 328 from incorporation into PROMESA).  Note, however, that by virtue of PROMESA's incorporation of section 1103 of the Bankruptcy Code, the retention of any Professionals for any official committees will require court approval.

professionals who are not performing any legal, financial, or operational restructuring services

for a Title III Debtor, including, for the avoidance of doubt, professionals performing services

related to the preparation of audited financial statements.

### **Proposed Procedures**

15.    The Debtors propose that the Professionals be permitted to seek interim payment

of compensation and reimbursement of expenses in accordance with the following procedures

(collectively, the "Interim Compensation Procedures"):

    a.  On or before the 25th day of each calendar month, or as soon as practicable thereafter, each Professional may serve a statement (a "Monthly Fee Statement") of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months, by overnight mail, on each of the following entities (collectively, the "Notice Parties"):

        i.    attorneys for the Oversight Board, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Martin J. Bienenstock, Esq. and Ehud Barak, Esq., and Proskauer Rose LLP, 70 West Madison Street, Chicago, IL 60602, Attn: Paul V. Possinger, Esq.;

        ii.   attorneys for the Oversight Board, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918, Attn: Hermann D. Bauer, Esq.;

        iii.  attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq., Suzzanne Uhland, Esq., and Diana M. Perez, Esq.;

        iv.   the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

        v.    attorneys for each statutory committee; and

        vi.   the Fee Committee.

    b.  Any Professional that fails to serve a Monthly Fee Statement for a particular month or months may subsequently serve a consolidated Monthly Fee Statement for such month or months.  All Monthly Fee Statements shall comply with PROMESA and applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the

Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules").

c.  In accordance with the procedures described in subparagraph (d) below, each of the United States Trustee, statutory committees, the Commonwealth, and the Oversight Board, may file and serve upon the Professional that filed the Monthly Fee Statement and the other Notice Parties, so as to be received on or before 4:00 p.m. (Atlantic Standard Time) on the 20th day (or the next business day if such day is not a business day) following service of the Monthly Fee Statement (the "Objection Deadline") any objection to the requested fees and expenses.  Upon expiration of the Objection Deadline, the Debtors shall promptly pay the Professional an amount (the "Permitted Monthly Payment") equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the applicable Monthly Fee Statement (the "Maximum Monthly Payment") and (ii) the Maximum Monthly Payment less the portion thereof subject to an objection (the "Incremental Amount") pursuant to subparagraph (d) below.

d.  If any Notice Party wishes to object to a Professional's Monthly Fee Statement, it must (i) file a written objection (an "Objection") with the Court on or before the Objection Deadline and (ii) serve the Objection on the Professional that filed the Monthly Fee Statement and each of the other Notice Parties, so it is received by each of these parties on or before the Objection Deadline.  Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis.  If the parties are unable to reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the fees and expenses that are subject to the Objection or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court may consider and dispose of the Objection if requested by the parties.

e.  Each Professional may submit its first Monthly Fee Statement no earlier than the 15th day of the second full month of the Debtors' cases.  This initial Monthly Fee Statement shall cover the period from the Petition Date of the Commonwealth's Title III Case through the end of the full month preceding the filing date of the Monthly Fee Statement.  Thereafter, Professionals may serve Monthly Fee Statements in the manner described above.

f.  Consistent with PROMESA section 317, at four-month intervals or such other intervals designated by the Court (the "Interim Fee Period"), each of the Professionals shall file with the Court and serve on the Notice Parties an application (an "Interim Fee Application") for interim Court approval and allowance of the payment of compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Statements, including any holdback, filed during the Interim Fee Period, pursuant to PROMESA section

8

317.   Each Interim Fee Application must include a brief description identifying the following:

    i.   the Monthly Fee Statements that are the subject of the request;

    ii.   the amount of fees and expenses requested;

    iii.   the amount of fees and expenses paid to date or subject to an Objection;

    iv.   the deadline for parties other than the Notice Parties to file objections (the "<u>Additional Objections</u>") to the Interim Fee Application; and

    v.   any other information requested by the Court or required by the Local Rules.

g.   Objections, if any, to the Interim Fee Applications shall be filed and served upon the Professional that filed the Interim Fee Application and the other Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

h.   The Debtors shall request that the Court schedule a hearing on the Interim Fee Applications at least once every six months.  The Debtors, however, may request that a hearing be held every four months or at such other intervals as the Court deems appropriate.  If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

i.   The first Interim Fee Period shall cover the month in which the Petition Date of the Commonwealth's Title III Case occurred and the three full months immediately following such month.  Accordingly, the first Interim Fee Period will cover May 3, 2017, through August 31, 2017.  Each Professional must file and serve its first Interim Fee Application Request on or before the 30th day following the end of the first Interim Fee Period.

j.   The pendency of an Objection to payment of compensation or reimbursement of expenses shall not disqualify a Professional from the future payment of compensation or reimbursement of expenses under the Interim Compensation Procedures.  Any Professional that fails to submit a Monthly Fee Statement or file an Interim Fee Application when due or permitted shall be ineligible to receive further interim payments of fees or reimbursement of expenses under the Interim Compensation Procedures until such time as a Monthly Fee Statement or Interim Fee Application is submitted by the Professional.  There shall be no other penalties for failing to file a Monthly Fee Statement or an Interim Fee Application in a timely manner.

k.  Neither (i) the payment of or the failure to pay, in whole or in part, interim compensation and/or the reimbursement of or the failure to reimburse, in whole or in part, expenses under the Interim Compensation Procedures, nor (ii) the filing of or failure to file an Objection will bind any party in interest or the Court with respect to the final allowance of applications for payment of compensation and reimbursement of expenses of Professionals.  All fees and expenses paid to Professionals under the Interim Compensation Procedures are subject to disgorgement until final allowance by the Court.

l.  For all Professionals, any application made pursuant to PROMESA sections 316 and 317, shall be subject to Appendix B of the U.S. Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines").

16.    The Debtors also request that each member of any statutory committee be permitted to submit statements of expenses (excluding third-party professionals or other fees or expenses of individual committee members) and supporting vouchers to the respective committee's counsel, which counsel will collect and submit for reimbursement in accordance with the Interim Compensation Procedures.    Approval of these Interim Compensation Procedures, however, shall not authorize payment of such expenses to the extent that such authorization does not comply with PROMESA, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, applicable First Circuit law, and the practices of this Court.

17.    In addition, the Debtors request that the Court limit the notice of interim and final fee applications to (a) the Notice Parties and (b) all parties that have filed a notice of appearance with the Clerk of this Court pursuant to Bankruptcy Rule 2002, and requested such notice.  The Debtors further request that (a) the Notice Parties be entitled to receive the Monthly Fee Statements, any Interim Fee Applications, any final fee applications, and any notices of hearing on interim or final fee applications (the "Hearing Notices") and (b) all other parties entitled to notice shall be entitled to receive only the Hearing Notices.  Providing notice of interim and final

fee applications in this manner will permit the parties most active in the Title III Cases to review

and, if warranted, object to Professional fees and expenses, and will save the expense of undue

duplication and mailing.

### Appointment of Fee Committee

18.     Given the size and complexity of these Title III Cases, the Debtors propose the

appointment of a Fee Committee with the composition and structure substantially in the form

outlined in the Proposed Order.

#### Composition and Structure of the Fee Committee

19.     The Debtors propose that the Fee Committee should consist of five members: (i)

one member appointed by the Oversight Board and representative of the Debtors, (ii) one

member appointed by AAFAF and representative of the Debtor entities, (iii) one member

appointed by the UCC, (iv) one member appointed by the U.S. Trustee, and (v) the fee examiner.

20.     The fee examiner must be a natural person who does not work for or represent

any of the professionals whose fees are examined.  The fee examiner shall be Professor Nancy B.

Rapoport who has served as fee examiner in many large reorganization cases.[7]   If the fee

---

[7] **Nancy B. Rapoport** is Special Counsel to the President of the University of Nevada, Las
Vegas.  She is also the Garman Turner Gordon Professor of Law at the William S. Boyd
School of Law, University of Nevada, Las Vegas, and is an Affiliate Professor of Business
Law and Ethics in the Lee Business School at UNLV.  After receiving her B.A., *summa cum
laude,* from Rice University in 1982 and her J.D. from Stanford Law School in 1985, she
clerked for the Honorable Joseph T. Sneed III on the United States Court of Appeals for the
Ninth Circuit and then practiced law (primarily bankruptcy law) with Morrison & Foerster in
San Francisco from 1986-1991.  She started her academic career at The Ohio State University
College of Law in 1991, and she moved from Assistant Professor to Associate Professor with
tenure in 1995 to Associate Dean for Student Affairs (1996) and Professor (1998) (just as she
left Ohio State to become Dean and Professor of Law at the University of Nebraska College of
Law).  She served as Dean of the University of Nebraska College of Law from 1998-
2000.  She then served as Dean and Professor of Law at the University of Houston Law Center
from July 2000-May 2006 and as Professor of Law from June 2006-June 2007, when she left
to join the faculty at Boyd.  She served as Interim Dean of Boyd from 2012-2013, as Senior

examiner position becomes vacant, all the remaining Fee Committee members must promptly agree on a successor by majority vote and must promptly move the court to approve the successor.

21. To the best of Debtors' knowledge, Professor Rapoport has no connection with the Court or the U.S. Trustee which would render approval of the appointment improper.

22. Professor Rapoport's proposed terms for engagement as fee examiner, along with her curriculum vitae, is attached hereto as **Exhibit B**.

23. No retained professional may serve on the Fee Committee in any capacity.

24. The Oversight Board, the Government, the UCC, and the U.S. Trustee may change their Fee Committee members without order of Court. If a position on the Fee Committee other than the fee examiner's position becomes vacant, the party represented must promptly designate a successor.

**Fee Committee Compensation and Reimbursement of Expenses**

25. No member other than the fee examiner shall be entitled to compensation from the Debtors for service on the Fee Committee. Fee Committee members other than the member representing the U.S. Trustee may be entitled to reimbursement from the Debtors for reasonable, actual, and necessary expenses incurred in their service on the Fee Committee, including travel and lodging expenses for attendance at Fee Committee meetings. Requests for reimbursement of expenses must be made by application to the court under the same standards that apply to retained professionals.

26. The fee examiner shall be entitled to reasonable compensation, including reimbursement of reasonable, actual, and necessary expenses, from the Debtors. The fee

---

Advisor to the President of UNLV from 2014-2015, and as Acting Executive Vice President & Provost from 2015-2016.

examiner's compensation and reimbursement must be sought on application and will be subject to Court approval under the same standards and procedures that apply to retained professionals.

### Responsibilities of the Fee Committee

27.     The Fee Committee, along with the fee examiner, shall, among other things, review and report on, as appropriate, Monthly Fee Statements and all Interim Fee Applications and final fee applications for compensation and reimbursement of expenses filed by retained Professionals and in accordance with the Interim Compensation Procedures and other procedures set forth in the Proposed Order.

28.     The Fee Committee is responsible for monitoring, reviewing, and assessing all monthly  invoices and all applications for compliance with:

  a.  The Motion;

  b.  PROMESA sections 316 and 317;

  c.  Rule 2016(a) of the Federal Rules of Bankruptcy Procedure;

  d.  The Local Rules; and

  e.  The U.S. Trustee Guidelines.

29.     The Fee Committee has the authority to:

  a.  Recommend procedures, including the use of specific forms and billing codes, to facilitate preparation and review of monthly invoices and applications;

  b.  Establish procedures to resolve disputes with retained professionals concerning monthly invoices and applications, including:

    i.  Communicating concerns to retained professionals about their monthly invoices and applications and requesting further information as appropriate;

13

    ii.  Presenting reports to retained professionals of the Fee Committee's review of monthly invoices and applications describing the Fee Committee's concerns;

    iii.  Providing a copy of the Fee Committee's reports to the Debtors, the UCC, and the U.S. Trustee;

    iv.  Transmitting, along with a Fee Committee report, any Fee Committee member's written dissent;

    v.  Negotiating with retained professionals any concerns the Fee Committee has concerning monthly invoices and applications; and

    vi.  Resolving consensually any concerns the Fee Committee has about monthly invoices or applications, subject to court approval; and

c.  Make written recommendations to the Court concerning the allowance of compensation sought in all applications.

30.    The Fee Committee is not a party in interest under Bankruptcy Code section 1109 and, unless the Court orders otherwise, may not appear in Court or be heard on any matter.

31.    The Fee Committee is not authorized to retain counsel or any other professional, except that the fee examiner may employ persons to provide non-legal administrative assistance necessary to fulfill the fee examiner's duties. The fee examiner may seek reimbursement from the Debtors for that expense. Requests for reimbursement must be made by application to the Court and are subject to Court approval under the same standards that apply to retained professionals under PROMESA section 316.

**Operation of the Fee Committee**

32.     The fee examiner, member representing the U.S. Trustee, and the member representing the UCC each have one vote on all Fee Committee matters.  All other members each have one-half vote on all Fee Committee matters.  The Fee Committee must make all decisions by majority vote.  In the event of a tie, the vote of the fee examiner controls.

33.     Attendance of Fee Committee members holding a total of two votes, one of whom must be the fee examiner, constitutes a quorum for all purposes except the selection of a successor to the fee examiner.  To select a successor to the fee examiner, the outgoing fee examiner shall not vote and the other four members must be present and vote.

34.     The fee examiner serves as Chairperson of the Fee Committee and is responsible for, among other things, (a) scheduling meetings; (b) overseeing collection, distribution, and review of monthly invoices and applications; (c) overseeing collection, distribution, and review of other information needed by the Fee Committee; and (d) filing and serving reports and recommendations concerning applications.

**Exculpation**

35.     The Debtors request that each Fee Committee member, including the fee examiner, be given the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of his or her duties.  In addition to such immunity, no action may be commenced against the Fee Committee or any Fee Committee member in connection with Fee Committee matters except in this Court.

**Applicable Authority**

36.     Pursuant to PROMESA section 317 and Bankruptcy Rule 2016(a), all professionals are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days or more often if the court permits.  Section 105(a) of the Bankruptcy

Code authorizes the Court to issue any order "that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also* PROMESA section 301(d) (references to "this title" under the Bankruptcy Code are deemed to be references to title III of PROMESA). Thus, this Court has authority to enter an order authorizing the proposed Interim Compensation Procedures.  The proposed Interim Compensation Procedures comply with the requirements of PROMESA section 317 and Bankruptcy Rule 2016(a).

37.     The implementation of the proposed Interim Compensation Procedures is justified in the Title III Cases.  The Title III Cases will add further complexities to the day-to-day administrative burden already being shouldered by the Debtors, their employees and resources, and the Commonwealth's government.  It is anticipated that the Professionals will provide integral advice and services to the Debtors during these cases.  Absent streamlined compensation procedures, the professional fee application and review process would be exceptionally burdensome on the Debtors, the Professionals, the Court, and other parties in interest.  By contrast, the proposed Interim Compensation Procedures will enable the Debtors to closely monitor the costs of administration of the Title III Cases, maintain a level cash flow, and implement efficient cash management procedures.  Moreover, these procedures will also allow the Court, the Fee Committee, and the key parties in interest to verify the reasonableness and necessity of the compensation and reimbursement sought pursuant to the Interim Compensation Procedures.

38.     The proposed procedures are similar to those approved in large cases under the Bankruptcy Code.  *See*, *e.g.*, *In re Breitburn Energy Partners LP*, Case No. 16-11390 (Bankr. S.D.N.Y. June 15, 2016) [ECF No. 132]; *In re Caesars Entertainment Operating Co., Inc.*, Case No. 15-01145 (Bankr. N.D. Ill. Mar. 4, 2015) [ECF No. 587]; *In re NewPage Corp.*, Case No.

11-12804 (Bankr. D. Del. Oct. 4, 2011) [ECF No. 301]; *In re Lehman Bros. Holdings, Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Nov. 5, 2008) [ECF No. 1388]. The Debtors submit that similar relief is warranted in the Title III Cases.

## Notice

39.     The Debtors have provided notice of this Motion to the following parties (the "Notice Parties"): (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against each Debtor; (d) the Office of the United States Attorney for the District of Puerto Rico; (e) counsel to AAFAF; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[8] and (h) all parties filing a notice of appearance in these Title III Cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Reservation of Rights

40.     The Debtors file this Motion without prejudice to or waiver of their rights pursuant to PROMESA section 305.[9]

## No Prior Request

41.     No prior request for the relief sought in this Motion has been made to this or any other court.

---

[8] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

[9] PROMESA section 305 provides: "Subject to the limitations set forth in titles I and II of this Act, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with — (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property."

WHEREFORE the Debtors respectfully request the Court to enter an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the Motion, (b) authorizing the establishment of an orderly and regular process for the allowance and payment of interim compensation and the reimbursement of expenses for all Professionals retained by the Debtors, the Oversight Board, and the statutory committees to provide services in the Title III Cases, (c) authorizing the appointment of a (i) Fee Committee, including approval of the proposed composition, structure, governance, operations, and responsibilities of such committee and (ii) fee examiner to serve as one of its members, (d) approving the Interim Compensation Procedures, and (e) granting the Debtors such other relief as is just and proper.

Dated: June 9, 2017
      San Juan, Puerto Rico

Respectfully submitted,

*/s/* Martin J. Bienenstock

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for the Debtors*

*/s/* Hermann D. Bauer

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board
as Representative for the Debtors*

## Exhibit A

**Proposed Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

      Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO ("ERS"),[2]

      Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3566-LTS

(Joint Administration Requested)

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY ("HTA"),[3]

PROMESA
Title III

No. 17 BK 3567-LTS

(Joint Administration Requested)

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

[2] The last four (4) digits of ERS's federal tax identification number are 9686.

[3] The last four (4) digits of HTA's federal tax identification number are 3808.

Debtor.

------------------------------------------------------------x

## ORDER (A) AUTHORIZING PROCEDURES
## FOR INTERIM COMPENSATION
## AND REIMBURSEMENT OF EXPENSES
## OF PROFESSIONALS, AND (B) APPOINTING
## A (I) FEE COMMITTEE, INCLUDING APPROVAL
## OF PROPOSED COMPOSITION, STRUCTURE, GOVERNANCE,
## OPERATIONS, AND RESPONSIBILITIES OF SUCH COMMITTEE,
## AND (II) FEE EXAMINER TO SERVE AS ONE OF ITS MEMBERS

Upon the *Motion of Debtors Pursuant to PROMESA Section 317 and Bankruptcy Code Section 105(a) for Entry of Order (a) Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, and (b) Appointing a (i) Fee Committee, Including Approval of Proposed Composition, Structure, Governance, Operations, and Responsibilities of Such Committee, and (ii) Fee Examiner to Serve as one of its Members* (the "Motion");[4] and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA sections 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

---

[4] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

2

1.      The Motion is granted as set forth herein.

2.      All Professionals in the Title III Cases may seek interim payment of compensation and reimbursement of expenses in accordance with the following procedures (the "Interim Compensation Procedures"):

    a.  On or before the 25th day of each calendar month, or as soon as practicable thereafter, each Professional may serve a statement (a "Monthly Fee Statement") of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months, by overnight mail, on each of the following entities (collectively, the "Notice Parties"):

        i.  attorneys for the Oversight Board, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Martin J. Bienenstock, Esq. and Ehud Barak, Esq., and Proskauer Rose LLP, 70 West Madison Street, Chicago, IL 60602, Attn: Paul V. Possinger, Esq.;

        ii.  attorneys for the Oversight Board, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918, Attn: Hermann D. Bauer, Esq.;

        iii.  attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq., Suzzanne Uhland, Esq., and Diana M. Perez, Esq.;

        iv.  the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

        v.  counsel to any statutory committee appointed; and

        vi.  the Fee Committee.

    b.  Any Professional that fails to serve a Monthly Fee Statement for a particular month or months may subsequently serve a consolidated Monthly Fee Statement for such month or months.  All Monthly Fee Statements shall comply with PROMESA and applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules").

    c.  In accordance with the procedures described in subparagraph (d) below, each Notice Party may file and serve upon the Professional that filed the Monthly Fee Statement and the other Notice Parties, so as to be received on or before 4:00 p.m.

(Atlantic Standard Time) on the 20th day (or the next business day if such day is
not a business day) following service of the Monthly Fee Statement (the
"Objection Deadline") any objection to the requested fees and expenses.  Upon
expiration of the Objection Deadline, the Debtors shall promptly pay the
Professional an amount (the "Permitted Monthly Payment") equal to the lesser of
(i) 80% of the fees and 100% of the expenses requested in the applicable Monthly
Fee Statement (the "Maximum Monthly Payment") and (ii) the Maximum
Monthly Payment less the portion thereof subject to an objection (the
"Incremental Amount") pursuant to subparagraph (d) below.

d.   If any Notice Party wishes to object to a Professional's Monthly Fee Statement, it
must (i) file a written objection (an "Objection") with the Court on or before the
Objection Deadline and (ii) serve the Objection on the Professional that filed the
Monthly Fee Statement and each of the other Notice Parties, so it is received by
each of these parties on or before the Objection Deadline.  Thereafter, the
objecting party and the affected Professional may attempt to resolve the Objection
on a consensual basis.  If the parties are unable to reach a resolution of the
Objection, the affected Professional may either (i) file a request with the Court for
payment of the fees and expenses subject to the Objection or (ii) forego payment
of the Incremental Amount until the next interim or final fee application hearing,
at which time the Court may consider and dispose of the Objection if requested by
the parties.

e.   Each Professional may submit its first Monthly Fee Statement no earlier than the
15th day of the second full month of the Debtors' cases.  This initial Monthly Fee
Statement shall cover the period from the Petition Date of the Commonwealth's
Title III Case through the end of the full month preceding the filing date of the
Monthly Fee Statement.  Thereafter, Professionals may serve Monthly Fee
Statements in the manner described above.

f.   Consistent with PROMESA section 317, at four-month intervals or such other
intervals convenient to the Court (the "Interim Fee Period"), each of the
Professionals may file with the Court and serve on the Notice Parties an
application (an "Interim Fee Application") for interim Court approval and
allowance of the payment of compensation and reimbursement of expenses sought
by such Professional in its Monthly Fee Statements, including any holdback, filed
during the Interim Fee Period, pursuant to PROMESA section 317.  Each Interim
Fee Application must include a brief description identifying the following:

   i.    the Monthly Fee Statements subject to the request;

   ii.   the amount of fees and expenses requested;

   iii.  the amount of fees and expenses paid to date or subject to an Objection;

   iv.   the deadline for parties other than the Notice Parties to file objections (the
         "Additional Objections") to the Interim Fee Application; and

4

v. any other information requested by the Court or required by the Local Rules.

g. Objections, if any, to the Interim Fee Applications shall be filed and served upon the Professional that filed the Interim Fee Application and the other Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

h. The Debtors shall request that the Court schedule a hearing on the Interim Fee Applications at least once every six months.  The Debtors, however, may request that a hearing be held every four months or at such other intervals as the Court deems appropriate.  If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

i. The first Interim Fee Period shall cover the month in which the Petition Date of the Commonwealth's Title III Case occurred and the three full months immediately following such month.  Accordingly, the first Interim Fee Period shall cover May 3, 2017, through August 31, 2017.  Each Professional must file and serve its first Interim Fee Application Request on or before the 45th day following the end of the first Interim Fee Period.

j. The pendency of an Objection to payment of compensation or reimbursement of expenses shall not disqualify a Professional from the future payment of compensation or reimbursement of expenses under the Interim Compensation Procedures.  Any Professional that fails to submit a Monthly Fee Statement or file an Interim Fee Application when due or permitted shall be ineligible to receive further interim payments of fees or reimbursement of expenses under the Interim Compensation Procedures until such time as a Monthly Fee Statement or Interim Fee Application is submitted by the Professional.  There shall be no other penalties for failing to file a Monthly Fee Statement or an Interim Fee Application in a timely manner.

k. Neither (i) the payment of or the failure to pay, in whole or in part, interim compensation and/or the reimbursement of or the failure to reimburse, in whole or in part, expenses under the Interim Compensation Procedures, nor (ii) the filing of or failure to file an Objection shall bind any party in interest or the Court with respect to the final allowance of applications for payment of compensation and reimbursement of expenses of Professionals.  All fees and expenses paid to Professionals under the Interim Compensation Procedures are subject to disgorgement until final allowance by the Court.

l. For all Professionals, any application made pursuant to PROMESA sections 316 and 317, shall be subject to Appendix B of the U.S. Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines").

5

3.      Notwithstanding anything to the contrary in this Order, professionals who are not performing any legal, financial, or operational restructuring services for a Title III Debtor, including, for the avoidance of doubt, professionals performing services related to the preparation of audited financial statements, shall be exempt from the requirements of applying for Court approval of their fees and reimbursements.

4.      Each member of any statutory committee is permitted to submit statements of expenses (excluding third-party professionals' fees or expenses of individual committee members) and supporting vouchers to the respective committee's counsel, which counsel shall collect and submit for reimbursement in accordance with the Interim Compensation Procedures.

5.      Notice of interim and final fee applications is limited to (a) the Notice Parties and (b) all parties that have filed a notice of appearance with the Clerk of this Court, pursuant to Bankruptcy Rule 2002 and applicable provisions of the Local Rules, and requested such notice.

6.      The Notice Parties shall receive the Monthly Fee Statements, any Interim Fee Applications, any final fee applications, and any Hearing Notices, and all other parties entitled to notice pursuant to this Order shall only receive the Hearing Notices.

7.      The amount of fees and disbursements sought shall be set out in U.S. dollars.

8.      All time periods set forth in this order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Composition and Structure of the Fee Committee**

9.      A Fee Committee is hereby appointed.

10.     The Fee Committee consists of five members: (i) one member appointed by the Oversight Board and representative of the Debtors, (ii) one member appointed by AAFAF and

representative of the Debtor entities, (iii) one member appointed by the UCC, (iv) one member appointed by the U.S. Trustee, and (v) the fee examiner.

42.     The Oversight Board, the Government, the UCC, and the U.S. Trustee may change their Fee Committee members without order of Court.  If a position on the Fee Committee other than the fee examiner's position becomes vacant, the party represented must promptly designate a successor.

11.     The fee examiner shall be a natural person who does not work for or represent any of the professionals whose fees are examined.  If the fee examiner position becomes vacant, the remaining Fee Committee members shall promptly agree on a successor by majority vote and shall promptly request the court to approve the successor.

12.     Professor Nancy B. Rapoport is approved as the fee examiner.

13.     No retained professional may serve on the Fee Committee in any capacity.

14.     No member other than the fee examiner is entitled to compensation from the Debtors for service on the Fee Committee.  Fee Committee members other than the member representing the U.S. Trustee are entitled to reimbursement from the Debtors for reasonable, actual, and necessary expenses incurred in their service on the Fee Committee, including travel and lodging expenses for attendance at Fee Committee meetings.  Requests for reimbursement of expenses must be made by application to the court under the same standards that apply to retained professionals.

15.      Nancy B. Rapoport shall be entitled to reasonable compensation, including reimbursement of reasonable, actual, and necessary expenses, from the Debtors, in accordance with her proposed terms for engagement as fee examiner, attached as <u>Exhibit B</u> to the Motion. The fee examiner's compensation and reimbursement must be sought on application and will be

subject to court approval under the same standards and procedures that apply to retained professionals.

### Responsibilities and Authority of the Fee Committee

16.    The Fee Committee is responsible for monitoring, reviewing, and assessing all monthly invoices and all applications for compliance with:

    a.  The Motion;

    b.  PROMESA sections 316 and 317;

    c.  Rule 2016(a) of the Federal Rules of Bankruptcy Procedure;

    d.  The Local Rules; and

    e.  The U.S. Trustee Guidelines.

17.    The Fee Committee has the authority to:

    a.  Recommend procedures, including the use of specific forms and billing codes, to facilitate preparation and review of monthly invoices and applications;

    b.  Establish procedures to resolve disputes with retained professionals concerning monthly invoices and applications, including:

        i.  Communicating concerns to retained professionals about their monthly invoices and applications and requesting further information as appropriate;

        ii.  Presenting reports to retained professionals of the Fee Committee's review of monthly invoices and applications describing the Fee Committee's concerns;

        iii.  Providing a copy of the Fee Committee's reports to the Debtors, the UCC, and the U.S. Trustee;

      iv.   Transmitting, along with a Fee Committee report, any Fee Committee member's written dissent;

      v.   Negotiating with retained professionals any concerns the Fee Committee has concerning monthly invoices and applications;

      vi.   Resolving consensually any concerns the Fee Committee has about monthly invoices or applications, subject to court approval; and

   c.  Make written recommendations to the Court concerning the allowance of compensation sought in all applications.

18.    The Fee Committee is not a party in interest under Bankruptcy Code section 1109 and, unless the court orders otherwise, may not appear in court or be heard on any matter.

19.    The Fee Committee is not authorized to retain counsel or any other professional at the Debtors' expense, except that the fee examiner may employ persons to provide non-legal administrative assistance necessary to fulfill the fee examiner's duties. The fee examiner may seek reimbursement from the Debtors for that expense.  Requests for reimbursement must be made by application to the Court and are subject to Court approval under the same standards that apply to retained professionals under PROMESA section 316.

**Operation of the Fee Committee**

43.    The fee examiner, the member representing the U.S. Trustee, and the member representing the UCC each have one vote on all Fee Committee matters.  All other members each have one-half vote on all Fee Committee matters.  The Fee Committee must make all decisions by majority vote.  In the event of a tie, the vote of the fee examiner controls.

20.    Attendance of Fee Committee members holding a total of two votes, one of whom must be the fee examiner, constitutes a quorum for all purposes except the selection of a

successor to the fee examiner.  To select a successor to the fee examiner, the outgoing fee examiner shall not vote and the other four members must be present and vote.

21.     The fee examiner shall serve as Chairperson of the Fee Committee and is responsible for, among other things, (a) scheduling meetings; (b) overseeing collection, distribution, and review of monthly invoices and applications; (c) overseeing collection, distribution, and review of other information needed by the Fee Committee; and (d) filing and serving reports and recommendations concerning applications.

**Exculpation**

22.     Each Fee Committee member, including the fee examiner, has the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of his or her duties.  No action may be commenced against the Fee Committee or any Fee Committee member in connection with Fee Committee matters except in this Court.

**Cooperation of Retained Professionals**

23.     This order applies to all Professionals retained in these cases by the Debtors, the Government (as it relates to the Debtor entities in the Title III Cases), the Oversight Board (as representative of the Debtors), and the statutory committees, to the extent the professionals render services in the Title III Cases.  The Debtors, the UCC, the Oversight Board, the Government, and the U.S. Trustee, and all retained professionals must cooperate with the Fee Committee in the discharge of its duties and must promptly respond to any requests from the Fee Committee for information.

24.     Nothing alters or impairs the right of any party in interest in these cases to object to any applications subject to this order.

25.     Nothing herein is intended to, shall constitute, or shall be deemed to constitute the Oversight Board's consent, pursuant to PROMESA section 305, to this Court's interference with (a) any of the political or governmental powers of the Debtors, (b) any of the property or revenues of the Debtors, or (c) the use or enjoyment of the Debtors of any income-producing property.

26.     The Debtors and the Oversight Board, as the Debtors' representative, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this order in accordance with the Motion.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

Dated: _____, 2017
        San Juan, Puerto Rico                    _____
                                                 Honorable Laura Taylor Swain
                                                 United States District Judge

**<u>Exhibit B</u>**

Nancy B. Rapoport Engagement Letter

Nancy B. Rapoport
530 Farrington Court
Las Vegas, NV 89123
(713) 202-1881
owlnbr@gmail.com and nancy.rapoport@unlv.edu

June 9, 2017

VIA EMAIL (mbienenstock@proskauer.com)

Mr. Martin J. Bienenstock, Esq.
Proskauer Rose LLP
Eleven Times Square
New York NY 10036-8299

Dear Martin:

You have asked me whether I am interested in being considered for the position of fee
examiner for the Title III cases for the Commonwealth of Puerto Rico (Case No. 17-03283-LTS).
Naturally, I am.

*Qualifications.*

I have served in a fee examiner capacity in several large cases, and my research area as a law
professor includes nationally recognized work in the area of fees. I began my legal career as an
associate attorney at Morrison & Foerster, working primarily in the Bankruptcy and Workouts
Group, and then moved to academia in 1991. During my entire academic career, one of my
principal fields has been the area of bankruptcy ethics, including the issue of professionals' fees.[1] Of

---

[1] My publications that relate to fees and ethics in large bankruptcy cases include Randy D. Gordon & Nancy B.
Rapoport, *Virtuous Billing,* 15 NEV. L.J. 698 (2015), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2670628; Nancy B. Rapoport, *The Client Who Did Too Much,* 47
AKRON L. REV. 121 (2014) (solicited as part of the Joseph G. Miller and William C. Becker Center for Professional
Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412496; Nancy B. Rapoport, *"Nudging" Better Lawyer Behavior:
Using Default Rules and Incentives to Change Behavior in Law Firms,* 4 ST. MARY'S J. L. ETHICS & MALP. 42 (2014) (solicited
manuscript for symposium on Legal Malpractice and Ethics), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2460078; LOIS R. LUPICA & NANCY B. RAPOPORT, CO-
REPORTERS, FINAL REPORT OF THE ABI NATIONAL ETHICS TASK FORCE (2013), available at https://abi-org-
corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf; Lois R. Lupica & Nancy B. Rapoport,
*Best Practices for Working with Fee Examiners,* 32 AM. BANKR. INST. J. 20 (June 2013), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2279642; Nancy B. Rapoport, *Black Swans, Ostriches, and Ponzi
Schemes,* 42 GOLDEN GATE L. REV. 627 (manuscript solicited as part of a symposium) (2012), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2131393; Nancy B. Rapoport, *The Case for Value Billing in Chapter
11,* 7 J. BUS. L. & TECH. LAW 117 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2039506;
Nancy B. Rapoport, *Rethinking Fees in Chapter 11 Bankruptcy Cases,* 5 J. BUS. & TECH. LAW 263 (2010) (solicited
manuscript for University of Maryland School of Law's symposium on Examining Government Reform in the Financial
Crisis), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1625102; Nancy B. Rapoport, *Through Gritted
Teeth and Clenched Jaw:  Court-Initiated Sanctions Opinions in Bankruptcy Courts,* 41 ST. MARY'S L.J. 701 (2010) (solicited
manuscript for St. Mary's 9th Annual Symposium on *Legal Malpractice and Professional Responsibility),* available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1628275; Nancy B. Rapoport, *The real reason why businesses make bad*

Mr. Martin J. Bienenstock
June 9, 2017
Page 2 of 5

more direct interest to this potential engagement is my work as a fee examiner and a fee expert in several high-profile bankruptcy cases. As you know, I have served as a fee examiner in the following capacities:

- Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2017).
- Consultant for the Liquidating Trust for *In re* Residential Capital, LLC, United States Bankruptcy Court, Southern District of New York, Case No. 12-12020 (MG), regarding the reasonableness of fees (2014).
- Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).
- Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).
- Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).

I have also served as an expert witness in these fee-related cases:

- Expert for the Fee Examiner in Matter of Lehman Brothers Holdings, Inc., U.S. Bankruptcy Court, Southern District of New York, Case No. 08-13555-jmp (2012).
- Expert for the Fee Examiner in *In re* Motors Liquidation Co. (f/k/a General Motors Corp.), U.S. Bankruptcy Court, Southern District of New York, Case No. 09-50026 (2011-2012).
- Expert for the Reorganized Debtor in *In re* ASARCO, LLC, et al., U.S. Bankruptcy Court, Southern District of Texas, Case No. 05-21207 (2010) (testified at trial).

My philosophy as a fee examiner is simple: I first seek to understand the context of what I'm reviewing, and then I apply my experience in past cases to ask questions of professionals when I think that their initial explanations do not fully demonstrate the reasonableness of their fees and expenses. Unlike fee auditors, who use computer programs to identify, e.g., when one person bills .5 for a meeting and another person bills .7 for the same meeting, I take a macro look at the fees. I prefer a big-picture approach, although those who affiliate with me are tasked with a micro, line-by-line look as well. My approach is as follows:

1. Determine the scope of work for each professional whose fees I am reviewing.
2. Download the monthly fees in LEDES format if possible, and in Excel, if LEDES format is not available.

---

*decisions* (reviewing JONATHAN R. MACEY, CORPORATE GOVERNANCE: PROMISES KEPT, PROMISES BROKEN (Princeton University Press 2008)), in 18 BUS. LAW TODAY 52 (July/Aug. 2009), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1425118; BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME UPDATES (contributing editor) (Bloomberg BNA 2014); COLLIER COMPENSATION, EMPLOYMENT AND APPOINTMENT OF TRUSTEES AND PROFESSIONALS IN BANKRUPTCY CASES (Lexis-Nexis 2009) (one of several revision authors).

Mr. Martin J. Bienenstock
June 9, 2017
Page 3 of 5

3. Assign the review of the professionals' fees to my reviewers, each of whom acts as
   an independent contractor. The reviewers will take several cuts at the fees, looking
   for certain patterns and benchmarks that I specify. After I receive the reviewers'
   reports, I will then drill down into areas of concern. I pay particular attention to
   staffing decisions—both the number of professionals assigned to a task and the level
   of professional (as evidenced by billing rate) assigned to a task—and to the time that
   various tasks have taken. I also pay attention to the work product that results from
   the time billed.
4. Raise any questions about fees or expenses with the professionals involved. Some of
   those questions can be answered with additional explanations; others often involve a
   negotiated reduction.
5. Prepare regular reports to the appointing authority.[2]

I do not believe that the success of a fee examiner lies in the amount of fee reductions
achieved over time. Some reductions often accompany fee reviews, especially in the beginning of an
engagement. But I believe that the best fee examiners help a case's professionals to exercise sound
billing judgment by finding mechanisms that confirm the reasonableness of fees and expenses. The
very act of reviewing fees can trigger changed behavior.

If selected, I would plan to affiliate the following professionals as independent contractors:

1. David Schell-Davis: Mr. Davis has worked with me on two cases—RESCAP and
   *Caesars*—and he has developed proprietary software for me that assists my team in
   analyzing fees and expenses.
2. Michael Van Luven: Mr. Van Luven has also worked with me on RESCAP and
   *Caesars,* and he serves as my second-in-command, managing the workflow and
   performing fee reviews.
3. Gabrielle Angle: Ms. Angle has worked with me on *Caesars* as a fee reviewer.
4. Veronica Fink: Ms. Fink has worked with me on *Caesars* as a fee reviewer.
5. Joseph Tiano and Legal Decoder: Mr. Tiano founded Legal Decoder, which has
   developed its own proprietary Legal Spend Authentication (LSA) technology. LSA
   technology is an automated data analytics platform that analyzes complex legal
   spend/invoice data to ensure that the right level of legal professional is handling a
   task appropriate for his or her skill level in the right amount of time for the right
   price.

My curriculum vitae and the resumes of the proposed independent contractors are attached as
appendices to this letter.

Several of the professionals involved in these Title III cases are those whose fees I have
reviewed in other cases (including your own firm's fees in *Caesars*). To the best of my knowledge,

---

[2] Because I am not admitted in the District of Puerto Rico, we would need to discuss the mechanics of how I would file
such reports (and my fee applications) and whether the Court would prefer for me to appear in person, via Court Call, or
not at all. As you know, in *Caesars*, the Debtors filed my reports and fee applications for me, and the court in that case
preferred for me not to attend hearings. In other cases, I have appeared in person at certain hearings. Of course, in all
of those other cases, I was already admitted in those jurisdictions.

Mr. Martin J. Bienenstock
June 9, 2017
Page 4 of 5

neither I nor the independent contractors with whom I would affiliate have any connections other than our experience with fee reviews in other cases or those regular types of connections that legal professionals often have, such as speaking on panel discussions at conferences or being members of organizations such as the American College of Bankruptcy, the American Bankruptcy Institute, or the American Bar Association. It is my understanding that Richard Corbi clerks for Judge Swain, and he and I have interacted on various ABI projects.

*Proposal for payment.*

Traditionally, I bill a mix of (1) a flat monthly rate for my fee review work and (2) an hourly rate for testimony or in-person meetings and for any preparation for testimony or in-person meetings. I bill any travel time at half of my hourly rate unless I am working on the matter while I am traveling. My current monthly rate for fee review work is $20,000, and my current hourly rate is $875/hour. Most of my work will likely take place early in the morning, late at night, or on the weekends. Because I am a professor at the William S. Boyd School of Law and a member of the executive leadership of UNLV, I must also ensure that I do not inadvertently use state resources as part of this engagement. Therefore, I ask that, for each month of the engagement, we make arrangements to pay an additional $1,000 directly to "UNLV FOUNDATION—BOYD SCHOOL OF LAW"; alternatively, we could adjust my monthly rate to $21,000, and I could pay the Foundation that monthly donation directly.

In addition, I intend to affiliate the following independent contractors:

- David Schnell-Davis, internal database manager and fee reviewer: $60/hour.
- Michael Van Luven, fee reviewer and my second-in-command: $60/hour.
- Gabrielle Angle, fee reviewer: $50/hour.
- Veronica Fink, fee reviewer: $50/hour.
- Legal Decoder, automated invoice review technology and data analytics/fee benchmarking provider: flat rate of $35,000/month, plus $300/hour for testimony and in-person meetings and preparation for testimony and in-person meetings (travel time billed at 50% of hourly rate).

I have worked with David Schnell-Davis and Michael Van Luven on both RESCAP and *Caesars*. Mr. Schnell-Davis's database has proven invaluable in giving me the tools to dissect bills in a variety of different ways in order to get a full picture of the work performed. Mr. Van Luven, who worked with me on RESCAP and who became my second-in-command in *Caesars,* is an expert in line-by-line fee review and trend analysis. Ms. Angle and Ms. Fink have worked with me on *Caesars* fee reviews, and their line-by-line fee review work and trend analysis has been very useful.

In this particular engagement, I would also expect to use and leverage the technology of Legal Decoder, a leading-edge company in the LegalTech/Data Analytics space.[3] Legal Decoder

---

[3] Legal Decoder's Founder & Chief Executive Officer, Joseph Tiano, practiced law for nearly 20 years, most recently as a partner at Pillsbury Winthrop Shaw Pittman. When practicing, he had to review and approve hundreds of millions of dollars of invoices. As part of his practice, he observed inefficiencies in how outside counsel delivered legal services and used that knowledge to create the LSA technology. Legal Decoder was founded in 2014 and started marketing its

Mr. Martin J. Bienenstock
June 9, 2017
Page 5 of 5

would help me provide the Court with an additional measure of objective, decision-making analysis, based on extensive industry data. The company has developed Legal Spend Authentication (LSA) technology, which is an automated data analytics platform that analyzes invoice data to ensure that the right level of legal professional is handling a task appropriate for his or her skill level in the right amount of time for the right price. The LSA Compliance Engine automates invoice review by programmatically performing line-by-line analysis. Legal Decoder's LSA Technology will provide me the first level of review, handling technologically 85%-90% of the work otherwise performed manually by human fee auditors. This review, coupled with the work that Messrs. Schnell-Davis and Van Luven, Ms. Angle, and Ms. Fink would do, will provide me with a complete picture of the work performed. Collectively, our speed, accuracy, experience, cost-effectiveness, and a data-driven analysis are the unique capabilities that we can offer.

*Conclusion*

There are many highly qualified fee examiners in the United States, and I understand that the choice of fee examiner will be based on a variety of factors. One of my advantages is that I am not beholden to any particular law firm, given that I am not a member of any firm. Another is that I have both the practical experience and the academic expertise to provide the Court with sound fee analysis based on a deep understanding of theory and practice. I look forward to providing you with any additional information that you might require.

Very truly yours,

Nancy B. Rapoport

Appendices:
My CV and the resumes of Messrs. Schnell-Davis, Van Luven, and Tiano, Ms. Angle, and Ms. Fink

---

LSA Technology in early 2015. Its technology has been used by both Fortune 100 commercial clients and AmLaw 100 law firms, and a case study from an actual bankruptcy case was generated from Legal Decoder's technology and presented to leadership at the U.S. Trustee Program.

# NANCY B. RAPOPORT

Work:                                                    Home:
University of Nevada, Las Vegas                           530 Farrington Court
Box 451002                                               Las Vegas, NV 89123-0622
4505 S. Maryland Parkway
Las Vegas, NV 89154-1002
nancy.rapoport@unlv.edu
Cell: (713) 202-1881
Office:  702-895-3303
Office fax:  702-895-2799

SSRN author page:  http://ssrn.com/author=260022
Google Scholar page:  http://scholar.google.com/citations?user=s7ElcsEAAAAJ&hl=en
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  http://nancyrapoport.blogspot.com

## EMPLOYMENT

**University of Nevada, Las Vegas (Las Vegas, NV)**
**Special Counsel to the President (5/1/16-present).**

Responsibilities as Special Counsel to the President:  Coordinate, with Kyle Kaalberg (Special Projects Director), the continued implementation of UNLV's strategic plan (Top Tier); serve as a member of the President's Cabinet; provide advice to the President.  The Special Projects Director and the Interim Director of the Office of Community Engagement report to me.

**Acting Executive Vice President & Provost (7/1/15-4/30/16).**

Responsibilities as Acting Executive Vice President and Provost:

UNLV is a doctoral-degree-granting institution of more than 28,000 students and 2,900 faculty and staff.  Founded in 1957, the university offers more than 220 undergraduate, masters, and doctoral degree programs and is classified in the category of Research Universities (high research activity) by the Carnegie Foundation for the Advancement of Teaching.  The deans (School of Allied Health Sciences, Lee Business School, School of Community Health Sciences, School of Dental Medicine, College of Education, Howard R. Hughes College of Engineering, College of Fine Arts, Graduate College, Honors College, William F. Harrah College of Hotel Administration, William S. Boyd School of Law, College of Liberal Arts, UNLV School of Medicine (co-reporting to the President), School of Nursing, College of Sciences, and Greenspun College of Urban Affairs), the Senior Vice Provost, the Vice Provost for Information Technology, the Assistant Vice President of Academic Resources, the Associate Vice Provost for the Office of Decision Support, and the Special Assistant to the EVP&P all report to me.  As Provost, I also chair the board of directors of UNLV Singapore Ltd.  UNLV is in the first stages of implementing its Top Tier plan, which is designed to achieve five pathway goals involving (1) research, scholarship, and creative activity; (2) student achievement; (3) an academic health center; (4) community partnerships, and (5) infrastructure and shared

governance.

Significant accomplishments as Acting Executive Vice President and Provost:

Worked with President Jessup, two co-chairs of the Top Tier Plan, and the chairs and co-chairs of five committees, to implement year one of the Top Tier strategic plan; repaired relationships with the Faculty Senate; hired three new deans (Liberal Arts, Fine Arts, and Allied Health) and one acting dean (Sciences); reinstituted the three-year dean review process; and provided more autonomy to the deans of schools and colleges; per request of the Chancellor of the Nevada System of Higher Education and the Chair of the Board of Regents, investigated two issues of concern (one each) for them.

**Senior Advisor to the UNLV President (2014-2015) (member of UNLV Cabinet).**

Significant accomplishments as Senior Advisor to the President:

Worked with former President Donald Snyder, with Jim Thomson (the Special Advisor to the President for Regional Development and also the former CEO of the RAND Corp.), with our consultants (Academic Leadership Associates), with Kyle Kaalberg (the Special Assistant to the President's Chief of Staff), with over 200 stakeholders inside and outside UNLV, and with current President Len Jessup to develop a strategic plan (the Top Tier Plan) for UNLV.

**William S. Boyd School of Law, University of Nevada, Las Vegas (Las Vegas, NV)**
**Garman Turner Gordon Professor of Law (July 1, 2007-present) (formerly Gordon Silver Professor of Law).**
**Affiliate Professor of Business Law and Ethics, Lee Business School (renewable; 2014-present).**
**Leadership Development Academy Coordinator (2013-2014); Co-Coordinator (2014-2015).**
**Co-Chair, Task Force on Scholarship, Lee Business School Strategic Planning Team (2014).**
**Interim Dean (2012-2013).**

Works in progress:

Nancy B. Rapoport, *How Teams Can Help You (or Hurt You) When It Comes to Ethics,* ___ ABI J. ___ (forthcoming 2017).

NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS (3d ed.) (forthcoming 2017).

BERNARD BURK, STEVEN ALAN CHILDRESS, MICHAEL S. FRISCH, JULIA PORTER & NANCY B. RAPOPORT, ETHICAL LAWYERING IN REAL LIFE: MATERIALS AND PROBLEMS (Aspen Publishers / Wolters Kluwer, forthcoming 2018).

Nancy B. Rapoport
Page 3

Teaching:

Basic Bankruptcy Law; Contracts; Professional Responsibility; Seminar on Enron and Other
Corporate Scandals; Colloquium on Lawyers in Pop Culture; Business Law & Ethics.

Service:

Advisor to the NEVADA LAW JOURNAL and the UNLV GAMING LAW JOURNAL; UNLV Law's
representative to the REYNOLDS COURTS & MEDIA LAW JOURNAL; Dean's Advisory Committee
(2007-2008; 2008-2009; 2010-2011) (elected position); member of administration subcommittee of
2011-12 self-study.

Significant accomplishments as Interim Dean of Boyd School of Law:

Managed a budget of roughly $20 million; facilitated the conversion process for legal writing
professors to move from long-term contracts to tenure-track positions and facilitated the hiring of
two new tenure-track professors; raised funds for a stipend for the Director of the Saltman Center
for Conflict Resolution; facilitated a faculty-staff annual giving program; facilitated the dissemination
of the achievements of our faculty and staff with *Boyd Briefs*; systematized certain internal functions;
acted as point person for the sabbatical visits of the American Bar Association and Association of
American Law Schools; chaired the search for the Lee Business School Dean; facilitated a review of
our curriculum to see whether we might be able to respond to changes in law practice and the new
pressures on legal education; and facilitated various technological changes to make the internal
workings of the school more stable.

The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Associate
Dean for Administration and External Affairs, the Associate Dean for Faculty Development and
Research, the Director of the Wiener-Rogers Law Library, the Director of Information Technology
and the Budget Director all reported to me.

Honors:

Named "Dean of the Year" by Boyd law students in 2013.

**University of Houston Law Center (Houston, TX)**
**Professor of Law (June 1, 2006-June 30, 2007).**
**Dean and Professor of Law (August 2000-May 31, 2006).**

Responsibilities as Dean:

Managed all areas of Law Center life; served as primary external spokesperson for the Law Center;
facilitated internal programs of the Law Center; raised public and private funds for the Law Center;
highlighted the University's and Law Center's programs in discussions with various Texas legislators;
and served the state of Texas as CEO of the state's premier urban, public law school.  As Dean,
taught one course per year.

Nancy B. Rapoport
Page 4

The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Director of the O'Quinn Law Library, the Associate Dean for Information Technology, the Associate Dean for Finance and Administration and Chief Operating Officer of the Law Foundation, the Associate Dean for External Affairs and Executive Director of the Law Foundation, and the Director of CLE all reported directly to me.

Significant accomplishments as Dean:

Facilitated the establishment of several new centers, programs, and institutes, including the Criminal Justice Institute, the Institute for Energy, Law & Enterprise (now the Program In Energy, Environment & Natural Resources), and the Center for Consumer Law; reinvigorated the Blakely Advocacy Institute (BAI) and acquired the A.A. White Center for Dispute Resolution as part of the BAI; encouraged the first major revamping of the Law Center's curriculum in twenty years; hired fourteen new faculty members (three of which hold endowed chairs at the Law Center); presided over a record increase in the amount and size of gifts to the Law Center, even during a downturn in the economy. Raised seven new Law Center professorships, in partnership with a special campaign of the University of Houston, in under two months. Facilitated the Law Center's recovery from the devastation caused by Tropical Storm Allison on June 9, 2001, which poured over 12 feet of water into the Law Center's sub-basement and destroyed much of its library collection (over 175,000 volumes and 1,000,000 microfiche lost) as well as much of its facilities.

Service highlights:

The Hon. Arthur L. Moller / David B. Foltz, Jr. Inn of Court (Bankruptcy Inn) (2003-2007), Executive Committee (2004-2006); UH Faculty Senate Commission on University Governance (2004-2006); Texas General Counsel Forum Statewide Advisory Committee (2004-2006); member, Search Committee for Vice President/Vice Chancellor of University Advancement (2004-2005); Garland Walker Inn of Court (2004-2007); State Bar of Texas's Women in the Profession Committee (2002-2005); Texas Supreme Court's Gender Equity Taskforce (2002-2006); Rice University Business & Professional Women (2002-2006); Texas Accountants & Lawyers for the Arts (2002-2006); Houston Bar Association (2000-2007); Houston Bar Foundation, Selection Committee for the Best Article Award (2000-2006); City of Houston Mayor's Pension Governance Advisory Committee (2004-2006); UH Commission on Women (ex officio) (2004-2005); Houston Bar Foundation Fellow (2003-2007); Texas Supreme Court's Gender Fairness Task Force (2002-2006); Executive Committee, A.A. White Inn of Court (2000-2002); community associate, Weiss College (Rice University) (2000-2007).

**University of Nebraska College of Law (Lincoln, NE)**
**Dean and Professor of Law (July 1998-August 2000).**

Responsibilities as Dean:

CEO of Nebraska's land-grant law school. 1999-2000 state budget for the Law College (excluding the Schmid Law Library) was approximately $3.5 million; 1998-1999 private funds had a market value of approximately $35.5 million and a book value of approximately $15.9 million. The Associate Dean, the Assistant Dean for Administration and Student Services, the Assistant Dean for

Nancy B. Rapoport
Page 5

Career Services and Alumni Relations, the Director of the Law Library, the Director of Development, the Office Manager, and the Acting Head of the Nebraska Institute for Technology in the Practice of Law all reported directly to me.

Significant accomplishments as Dean:

Instituted the creation of a new Access database to enable all Law College administrative units to organize and share information; encouraged the establishment of new student organizations (including an organization for law students who prefer non-traditional career paths and a GLBT student organization); encouraged the development of a link between an undergraduate "learning community" and the Law College; helped to organize a campus-wide cross-disciplinary ethics initiative; instituted systems facilitating the scheduling of Law College events, the timely review of employees, and the cultivation and stewardship of donors; initiated the design of the new "image" of the Law College; revamped the furnishings of the student lounge (at zero cost to the Law College); and raised significant funds for such needs as scholarships and professorships.  I was the point person for completing the fund-raising for, and coordinating the design and construction of, the planned addition to the Schmid Law Library.  I also taught at least one course a year, including Sales, Images of Lawyers in Film, and the Skills course for first-year law students; I supervised several independent studies; and I maintained an active research agenda in my areas of professional responsibility and bankruptcy ethics.

Service:

Rotary Club #14, Lincoln, Nebraska (1999-2000); chair, UNL Search Committee for Dean of College of Arts & Sciences (2000); chair, UNL Search Committee for Dean of College of Architecture (1999-2000); member, Chancellor's Special Budget Advisory Committee (1999); member, UNL's Robert Wood Johnson Foundation Partnership Initiative, Policy and Enforcement Workgroup (1998-2000); UNL Mentoring Program (mentoring then-Assistant Professor Julia McQuillan) (1998-2000); member, University-Wide Assessment Committee (1998-2000); member, NSBA Bankruptcy Section Sub-Committee on Legislative Issues (1999-2000); co-chair of Homestead Girl Scout Council's Task Force on Diversity (1999); head of portion of YMCA's "Building Strong Kids" Campaign dealing with UNL contributions (1999).

**The Ohio State University College of Law (now Moritz College of Law) (Columbus, OH)**
**Professor (promoted to the rank of Professor in 1998 as I was leaving to become Dean at Nebraska); Associate Dean for Student Affairs (1996-98).**

Responsibilities:

Supervised admissions, financial aid, and placement offices; managed a staff that included the Assistant Dean of Admissions and Financial Aid, the Financial Aid Counselor and Staff Assistant, the Placement Director, and their associated support personnel; was directly responsible for admissions budget; supervised budgets for financial aid and placement; counseled potential applicants regarding admission to College of Law; counseled existing students on academic and non-academic issues; worked with Development Director regarding the establishment and maintenance of scholarships and other relationships with donors; worked with Assistant Dean of Alumni Affairs

to use alumni in recruiting activities; acted as "Chief Morale Officer" of College.  Concurrently taught a half-load of courses.

**Associate Professor (with tenure) (1995-98).**

Teaching innovations:

Established e/mail listservs in all of my courses, leading to significant additional out-of-class contacts with students; integrated in-class exercises on drafting and negotiation in my Sales and Contracts courses; created "Friday Learning Sessions" to bring 1L, 2L, and 3L students together for discussions of general interest.

**Assistant Professor (1991-95).**

Principal subjects:

Debtor-Creditor Law; Advanced Bankruptcy Seminar (Chapter 11 Issues); Contracts; Sales; Professional Responsibility; Contract Drafting and Negotiation; Legal Writing & Analysis (OSU used full-time faculty to teach this course).

Service:

Member, leadership learning community, Leadership for Institutional Change (1998); member, College of Law Teaching Retreat Planning Committee (1998); member, University Search Committee for the Student Gender & Sexuality Services Director (1997); member, College Search Committee for various internal positions, including Placement Director (1997), Assistant to the Registrar (1997), Assistant to the Dean (1996), and Assistant Dean for Admissions and Financial Aid (1996); vice chair, Special Committee on College Housing (1997-98); member, Faculty Advisory Board, OSU Pro Bono Research Group (1997-98); member, College of Law Affirmative Action/Minority Affairs Committee (1996-98); coordinator, Ohio Women in Legal Education (1995-96); chair, College of Law Admissions Committee (1995-96; 1997-98); member, College of Law Planning Committee (1994-95); member, College of Law Placement and Judicial Clerkship Committee (1991-94); member, College of Law Administration Committee (1991-92); member, College of Law Admissions Committee (1992-94; 1996-97); member, College of Law Minority Affairs Committee (1996-98); faculty advisor to the following College organizations:  the College's chapter of the Association of Trial Lawyers of America (1996-98); Delta Theta Phi (1997-98); the Jewish Law Students' Network (1991-98); and the Women's Law Caucus (1991-98); faculty advisor to the Ballroom Dance Association at Ohio State (1992-98); invited speaker at various College of Law events, including *How to Survive the First-Year Blues* and *How to Outline Law School Courses,* College of Law (1993-96), and various brown-bag discussions (1991-98); member, Teachers' Round Table (affiliated with the Center for Instructional Resources at Ohio State) (1993-96); advisor to The Ohio State University Press regarding the 25th anniversary edition of GRANT GILMORE, THE DEATH OF CONTRACT (25th anniv. ed. 1994); founding member, Junior Faculty Support Network (affiliated with the Office of Faculty & TA Development at Ohio State) (1994-96); dance demonstrator, Hispanic Awareness Week (1993-94); consultant on drafts of lender liability provisions in pending Ohio environmental legislation (1993); co-leader, Brownie Troop 2426 (Discovery Service Unit),

Seal of Ohio Girl Scout Council, Inc. (1996-97); co-leader, Junior Girl Scout Troop 654 (Discovery Service Unit), Seal of Ohio Girl Scout Council, Inc. (1996); representative for the North-Central Region, United States Dance Sport Council Rules Committee (the national rules-making committee of the United States Amateur Ballroom Dancers Association) (1995-98); vice-president, Mid-Ohio Chapter of the United States Amateur Ballroom Dancers Association (1993-95).

**Morrison & Foerster (San Francisco, CA)**
**Associate; Bankruptcy and Workouts Group, Business Department (1986-91).**

Bankruptcy cases included *In re Toy Liquidating Co. (Worlds of Wonder), Plexus, Greyhound, Nucorp,* and *California Land & Cattle Co.;* significant experience in bankruptcies involving industries such as toy manufacturers, computers, livestock, and television stations.  Advised clients on such matters as pre-bankruptcy planning (creditor side), environmental issues, purchase of assets from bankruptcy estates, and creditor protection generally.

**The Hon. Joseph T. Sneed, United States Court of Appeals for the Ninth Circuit (San Francisco, CA)**
**Judicial Clerk (1985-86).**

**EDUCATION**

**Stanford Law School (Stanford, CA)**
**J.D. (1985).**
Note Editor, STANFORD LAW REVIEW (1984-85).
Thesis:  *Computer Program for Secured Transactions* (1985).

Activities and Honors:

Member, STANFORD LAW REVIEW (1983-84); member, Student Assistants to Admissions Program (1984); member, Law School Film Society (1982-85); member, Orientation Committee (1983-84); Vice-President (Alumni Programs), Law Forum (1983-84); technical assistant in various law school and all-university plays (1983-85); First Place, Stanford Women's Intramural Powerlifting Competition (1985).

**Rice University (Houston, TX)**
**B.A., *summa cum laude* (1982).**
*Majors:*  Legal Studies, Honors Psychology.
Senior Thesis:  *The Effects of Time of Day on Cognitive Performance,* Psychology Department (1982).

Activities, Honors, and Scholarships:

Phi Beta Kappa (1981); Houston Psychological Association Award for Excellence in Psychology (1982); Jones College Scholar (1981-82); Academic Coordinator, Jones College (1980-82); President, Rice Hillel (1980-82); Student Advisor, Lovett College (1979-80); member, Student Admissions Committee (1979-82); Rice Pre-Law Society (1979-82); founder, Rapoport Prize in Legal Studies

Nancy B. Rapoport
Page 8

(1982); Max Roy Scholarship (1979-80, 1981-82); Jones College Scholarship (1981-82); Board of Governors Scholarship (1980-81).

## PUBLICATIONS, GRANTS, SPECIAL TRAINING, AND PRESENTATIONS

### Publications—Books

BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME UPDATES (contributing editor) (Bloomberg BNA 2014).

NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW FIRM JOB SURVIVAL MANUAL: FROM FIRST INTERVIEW TO PARTNERSHIP (Wolters Kluwer 2014).

NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW SCHOOL SURVIVAL MANUAL: FROM LSAT TO BAR EXAM (Aspen Publishers / Wolters Kluwer 2010).

NANCY B. RAPOPORT, JEFFREY D. VAN NIEL & BALA G. DHARAN, ENRON AND OTHER CORPORATE FIASCOS: THE CORPORATE SCANDAL READER (Foundation Press 2d ed. 2009).

STEVEN L. EMANUEL, STRATEGIES & TACTICS FOR THE MBE (Aspen Publishers / Wolters Kluwer 2009) (one of several revision authors).

NANCY B. RAPOPORT & BALA G. DHARAN, ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS (Foundation Press 2004).

DAVID B. GOODWIN & NANCY B. RAPOPORT, AN ORAL HISTORY OF THE HONORABLE JOSEPH T. SNEED, Ninth Circuit Historical Society (1994) (solicited oral history).

### Publications—Reports

LOIS R. LUPICA & NANCY B. RAPOPORT, CO-REPORTERS, FINAL REPORT OF THE ABI NATIONAL ETHICS TASK FORCE (2013), available at https://abi-org-corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf.

### Publications—Book Chapters

Nancy B. Rapoport, *Social Media Ethics Missteps for Lawyers (and Others),* PROCEEDINGS OF THE SIXTIETH ANNUAL ROCKY MOUNTAIN MINERAL LAW INSTITUTE 3-1 (July 2014), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2557095.

Nancy B. Rapoport, *Analysis and the Arts,* in ZENON BANKOWSKI, MAKSYMILIAN DEL MAR & PAUL MAHARG, THE ARTS AND THE LEGAL ACADEMY: BEYOND TEXT IN LEGAL EDUCATION 101 (Ashgate Press 2012) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2464202.

Nancy B. Rapoport
Page 9

COLLIER COMPENSATION, EMPLOYMENT AND APPOINTMENT OF TRUSTEES AND PROFESSIONALS IN BANKRUPTCY CASES (Lexis-Nexis 2009) (one of several revision authors).

Nancy B. Rapoport, *Swimming with Shark,* in LAWYERS IN YOUR LIVING ROOM! LAW ON TELEVISION 163 (Michael Asimow, ed., 2009) (solicited manuscript), chapter available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157053.

Nancy B. Rapoport, *Reflections of a Former Dean, in* LAW SCHOOL LEADERSHIP STRATEGIES: TOP DEANS ON BENCHMARKING SUCCESS, INCORPORATING FEEDBACK FROM FACULTY AND STUDENTS, AND BUILDING THE ENDOWMENT 199 (Aspatore Books 2006) (solicited), abstract available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=979321.

Nancy B. Rapoport, *Bankruptcy Ethics Issues for Solos and Small Firms, in* ATTORNEY LIABILITY IN BANKRUPTCY (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).

Nancy B. Rapoport, *Lord of the Flies: The Development of Rules Within an Adolescent Culture, in* SCREENING JUSTICE—THE CINEMA OF LAW: FIFTY SIGNIFICANT FILMS OF LAW, ORDER AND SOCIAL JUSTICE 253 (Rennard Strickland, Teree Foster & Taunya Banks, eds. 2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=949168.

Nancy B. Rapoport & Jeffrey D. Van Niel, *Dr. Jekyll & Mr. Skilling: How Enron's Public Image Morphed from the Most Innovative Company in the* Fortune 500 *to the Most Notorious Company Ever, in* ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 77 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=505662.

**Publications—Articles, Book Reviews, and Essays**

Nancy B. Rapoport, *In Praise of Margaret Howard,* 74 WASH. & LEE L. REV. 641 (2017), available at  http://ssrn.com/abstract=2981404.

Nancy B. Rapoport, *Ethics: Why We Must Play Well with Others (and Why We Don't),* Rocky Mountain Mineral Law Foundation, MANUAL OF THE ADVANCED PUBLIC LANDS SPECIAL INSTITUTE 587 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2917346.

Nancy B. Rapoport, *On Shared Governance, Missed Opportunities, and Student Protests*, 17 NEV. L.J. 1 (2016), available at http://ssrn.com/abstract=2885539.

Randy D. Gordon & Nancy B. Rapoport, *Virtuous Billing,* 15 NEV. L.J. 698 (2015), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2670628.

Nancy B. Rapoport, *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms,* 4 ST. MARY'S J. L. ETHICS & MALP. 42 (2014) (solicited manuscript for symposium on Legal Malpractice and Ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2460078.

Nancy B. Rapoport, *The Client Who Did Too Much,* 47 AKRON L. REV. 121 (2014) (solicited as part of the Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412496.

Nancy B. Rapoport, *Plus Ça Change, Plus C'est La Même Chose,* 17 GREEN BAG 55 (2013) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404069.

Lois R. Lupica & Nancy B. Rapoport, *Best Practices for Working with Fee Examiners,* 32 AM. BANKR. INST. J. 20 (June 2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2279642.

Nancy B. Rapoport, *Rethinking U.S. Legal Education:  No More "Same Old, Same Old,"* 45 CONN. L. REV. 1409 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2275315.

Nancy B. Rapoport, *Managing U.S. News & World Report—The Enron Way,* 42 GONZAGA L. REV. 423 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2255194.

Nancy B. Rapoport, Book Review, Brian Z. Tamanaha*, Failing Law Schools* (2012), 47 L. & SOC. REV. 229 (2013) (solicited review), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2233617.

Nancy B. Rapoport, *Black Swans, Ostriches, and Ponzi Schemes,* 42 GOLDEN GATE L. REV. 627 (manuscript solicited as part of a symposium) (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2131393.

Nancy B. Rapoport, *The Case for Value Billing in Chapter 11,* 7 J. BUS. L. & TECH. LAW 117 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2039506.

Nancy B. Rapoport, *Changing the Modal Law School:  Rethinking U.S. Legal Education in (Most) Schools,* 116 PENN ST. L. REV. 1119 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038409.

Jennifer Gross & Nancy B. Rapoport, *Is the Attorney-Client Privilege Under Attack?,* GP | SOLO MAGAZINE 47 (October-November 2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1704026.

Nancy B. Rapoport*, Rethinking Fees in Chapter 11 Bankruptcy Cases,* 5 J. BUS. & TECH. LAW 263 (2010) (solicited manuscript for University of Maryland School of Law's symposium on Examining Government Reform in the Financial Crisis), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1625102.

Nancy B. Rapoport, *Through Gritted Teeth and Clenched Jaw:  Court-Initiated Sanctions Opinions in Bankruptcy Courts,* 41 ST. MARY'S L.J. 701 (2010) (solicited manuscript for St. Mary's 9th Annual Symposium on *Legal Malpractice and Professional Responsibility),* available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1628275.

Nancy B. Rapoport
Page 11

C.R. Bowles & Nancy B. Rapoport, *Debtor Counsel's Fiduciary Duty: Is There a Duty to Rat in Chapter 11?,* 29 AM. BANKR. INST. JOURNAL 16 (2010), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544930.

Nancy B. Rapoport, *Academic Freedom and Academic Responsibility* (reviewing MATTHEW W. FINKIN & ROBERT C. POST, FOR THE COMMON GOOD: PRINCIPLES OF AMERICAN ACADEMIC FREEDOM (Yale University Press 2009)), in 13 GREEN BAG 2D 189 (Winter 2010) (solicited manuscript), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544932.

Eric Van Horn & Nancy B. Rapoport, *Restructuring the Misperception of Lawyers: Another Task for Bankruptcy Professionals,* 28 AM. BANKR. INST. JOURNAL 44 (2009), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1472211.

Nancy B. Rapoport, *Where Have All the (Legal) Stories Gone?,* M/E INSIGHTS 7 (Fall 2009) (publication of the Association of Media and Entertainment Counsel), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1545443.

Nancy B. Rapoport, *The real reason why businesses make bad decisions* (reviewing JONATHAN R. MACEY, CORPORATE GOVERNANCE: PROMISES KEPT, PROMISES BROKEN (Princeton University Press 2008)), in 18 BUS. LAW TODAY 52 (July/Aug. 2009) (solicited manuscript), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1425118.

Nancy B. Rapoport, *Lessons From Enron—And Why We Don't Learn From Them,* May/June 2009 COMMERCIAL LENDING REVIEW 23, available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1413937.

Colin Marks & Nancy B. Rapoport, *Corporate Ethical Responsibility and the Lawyer's Role in a Contemporary Democracy,* 77 FORDHAM L. REV. 1269 (2009) (solicited manuscript), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1376475.

Nancy B. Rapoport & Roland Bernier III, *(Almost) Everything We Learned About Pleasing Bankruptcy Judges, We Learned in Kindergarten,* 27 AM. BANKR. INST. J. 16 (July/August 2008), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157103.

Nancy B. Rapoport, *The Curious Incident of the Law Firm That Did Nothing in the Night-Time* (reviewing MILTON C. REGAN, JR., EAT WHAT YOU KILL: THE FALL OF A WALL STREET LAWYER (Univ. of Michigan Press 2004)), in 10 LEGAL ETHICS 98 (2007), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1017627 and at
http://www.hartjournals.co.uk/le/index.html.

Nancy B. Rapoport & Roland Bernier, *Bankruptcy Pro Bono Representation of Consumers: The Seven Deadly Sins,* 44 HOUS. LAWYER 18 (June 2007), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1051221.

Nancy B. Rapoport, *Not Quite "Them," Not Quite "Us": Why It's Difficult for Former Deans to Go Home Again,* 38 U. TOLEDO L. REV. 581 (2006) (solicited manuscript), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936251.

Nancy B. Rapoport
Page 12

Nancy B. Rapoport, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* 81 IND. L.J. 359 (2006) (solicited manuscript) (symposium at Indiana University-Bloomington School of Law—*The Next Generation of Law School Rankings*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=703843.

Nancy B. Rapoport, *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936167.

Nancy B. Rapoport, *Decanal Haiku,* 37 U. TOLEDO L. REV. 131 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936166.

Nancy B. Rapoport, *Recent Developments in Bankruptcy Law,* 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938551.

Nancy B. Rapoport, *"Venn" and the Art of Shared Governance,* 35 U. TOLEDO L. REV. 169 (2003) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936247.

Nancy B. Rapoport, *Examining Enron's enablers: Watkins' perspective makes Swartz's account stand out,* HOUSTON CHRONICLE, March 23, 2003, at *Zest* 15 (solicited book review).

Nancy B. Rapoport, *Enron, Titanic, and the Perfect Storm*, 71 FORDHAM L. REV. 1373 (2003) (solicited essay for a special issue on ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=498122; also included as an essay in ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 927 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004).

Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002) (solicited essay for ethics symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936235.

Nancy B. Rapoport, *In Memoriam: Yale Rosenberg,* 39 HOUS. L. REV. 869 (2002) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598446.

Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part II),* August 2002 NORTON BANKRUPTCY LAW ADVISER 2, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963913.

Nancy B. Rapoport, *Multidisciplinary Practice After In Re Enron: Should the Debate on MDP Change At All?,* TEXAS BAR JOURNAL 446 (May 2002), available at http://www.texasbar.com/Template.cfm?Section=Home&Template=/ContentManagement/ContentDisplay.cfm&ContentID=5999.

Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part I),* February 2002 NORTON BANKRUPTCY LAW ADVISER 4, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963912.

Nancy B. Rapoport, *Is "Thinking Like a Lawyer" Really What We Want to Teach?,* in *Erasing Lines: Integrating the Law School Curriculum,* 2001 ALWD CONF. PROCEEDINGS 91, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936248.

Nancy B. Rapoport, *When Local IS Global: Using a Consortium of Law Schools to Encourage Global Thinking,* 20 PENN STATE INT'L LAW REVIEW 19 (2001) (transcript of AALS Annual Meeting session).

Nancy B. Rapoport, *Of Cat-Herders, Conductors, Fearless Leaders, and Tour Guides,* 33 U. TOLEDO L. REV. 161 (2001) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936245.

Nancy B. Rapoport, *Presidential Ethics: Should a Law Degree Make a Difference?,* 14 GEO. J. L. ETHICS 725 (2001), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=260021.

Nancy B. Rapoport, *Going from "Us" to "Them" in Sixty Seconds,* 31 U. TOLEDO L. REV. 703 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936171.

Nancy B. Rapoport, *Dressed for Excess: How Hollywood Affects the Professional Behavior of Lawyers,* 14 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POLICY 49 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936188.

Nancy B. Rapoport, *Ratings, Not Rankings: Why* U.S. News & World Report *Shouldn't Want To Be Compared To* Time *and* Newsweek—*or* The New Yorker, 60 OHIO ST. L.J. 1097 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936246.

Nancy B. Rapoport, *Living "Top-Down" in a "Bottom-Up" World: Musings on the Relationship Between Jewish Ethics and Legal Ethics,* 78 NEB. L. REV. 18 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936241.

Nancy B. Rapoport, *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases,* THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598447.

Nancy B. Rapoport, *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?,* 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=939448.

Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936343.

C.R. Bowles & Nancy B. Rapoport, *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Proceedings?,* 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936240.

Nancy B. Rapoport
Page 14

Nancy B. Rapoport, *Ethics: Is Disinterestedness Still a Viable Concept?  A Roundtable Discussion,* 5 AM.
BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon.
Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936340.

Nancy B. Rapoport, *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential
Conflicts of Interest in Columbus, Ohio,* 58 OHIO ST. L.J. 1421 (1997), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938611.

Nancy B. Rapoport, *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners,* 5 J.
BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=940769.

Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND.
L.J. 783 (1995), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938527.

Nancy B. Rapoport, *Worth Reading: Review of Annual Survey of Bankruptcy Law,* TURNAROUNDS AND
WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).

Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in
Bankruptcy,* 26 CONN. L. REV. 913 (1994), available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936337.

## Publications—Op-Eds

Lois R. Lupica & Nancy Rapoport, *Consumer Debtors Should Not Have To Go It Alone,* DOW JONES
DAILY BANKRUPTCY REVIEW (May 1, 2013), available at
http://bankruptcynews.dowjones.com/article?an=DJFDBR0020130501e951qbfa8&from=alert&pi
d=10&ReturnUrl=http%3a%2f%2fbankruptcynews.dowjones.com%3a80%2farticle%3fan%3dDJF
DBR0020130501e951qbfa8%26from%3dalert%26pid%3d10.

Nancy Rapoport, *Board Smart Not to Raise the Superintendent Salary Stakes,* LAS VEGAS SUN, September
5, 2010, available at http://www.lasvegassun.com/news/2010/sep/05/board-smart-not-raise-
superintendent-salary-stakes/.

Nancy B. Rapoport, *Enron an Example: Grads Lost in Trees,* HOUSTON CHRONICLE, February 24,
2002, at 4H.

Nancy B. Rapoport, *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy,* 26
BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7,
1995, at A3 (solicited editorial).

**Grants**

2002 participant, Harvard Institutes for Higher Education Management and Leadership in Education (MLE) Program (partial scholarship from Harvard, $1,000 in 2001—had to withdraw, due to the aftermath of Tropical Storm Allison, but returned to participate in 2002).

1999 participant, Harvard Institutes for Higher Education Management Development Program (MDP) (partial scholarship from Harvard, $1,000).

1995 Instructional Technology Small Grant (Ohio State funds; $850).

1995 West Publishing/NCAIR Fellow ($15,000 grant for developing a computer program that teaches law students about conflicts of interest in bankruptcy law).

1994 participant in Summer Institute of the Law & Society Association (Wellesley, Massachusetts).

1993 University Seed Grant for the study of creditor representation in bankruptcy (1993 grant from Ohio State University's Office of Research & the College of Law).

**Special training**

Attended STAR: A Systematic Approach to Mediation Strategies, Straus Institute for Dispute Resolution, Pepperdine University School of Law (June 2008) (attended on a grant from Pepperdine); have also attended two Harvard Institutes of Higher Education Management (MDP in 1999 and MLE in 2002) and will be attending IEM in 2016.

**Selected academic presentations**

Society for Applied Anthropology's 77th annual meeting, *Women and Diversity: Being a "First"* (March 2017).

Boyd School of Law, Conference on Psychology and Lawyering: Coalescing the Field, *Using Psychology to Change Law Firms' Default Incentive Structures* (with Randy D. Gordon) (invited panelist) (February 2014).

The Ohio State University Moritz College of Law, faculty workshop presentation on *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms* (November 2013).

The Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20, *What It Means To Be a Lawyer in These Uncertain Times (Part I)* (invited panelist) (April 2013).

Roger Williams University School of Law, Women Who Lead Series, *Why the World Needs Nay-Sayers* (keynote speaker) (March 2010).

Distinguished Lecturer, The Chapman Dialogue Series, Chapman University School of Law, *Why No Amount of Regulation Is Likely to Prevent Corporate Scandals* (February 2010).

Presentation at Fordham Law School's Colloquium, *The Lawyers' Role in a Contemporary Democracy* (with Colin Marks) (September 2008).

Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar), St. John's University School of Law Faculty, *Enron:  Is It Still Relevant?* (March 2006 & March-April 2007).

Symposium at Indiana University-Bloomington School of Law, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools* (March 2005).

Annual Meeting of the Association of American Law Schools, Creditors' & Debtors' Rights Section, *Local Cultures + Judicial Discretion = National Confusion?: Equities, Equations, and the "Uniformity" of the Bankruptcy Code* (January 1998).

Annual Meeting of National Conference of Bankruptcy Judges, *Disinterestedness and the Chapter 11 Professional* (October 1997).

Eastern District of Pennsylvania Bankruptcy Conference, *Bankruptcy Issues* (January 1996, January 1997, January 1998, and January 1999).

**Selected CLE and other professional presentations**

American Bankruptcy Institute's Annual Spring Meeting, *Ethics Jeopardy* (with Nan Roberts Eitel, Lois Lupica, and Bill Rochelle) (April 2017).

2017 Mutual Funds and Investment Management Conference, *Building Successful and Ethical Teams* (March 2017).

American Bankruptcy Institute's Annual Spring Meeting, *A Primer on Dealing with Fee Examiner*s (with Van Durrer, II, William K. Harrington, Robert J. Keach, and John F. Theil) (April 2016).

National Association of Estate Planners' 52nd Annual Conference, *Nudging More Ethical Behavior Through Incentives and Checklists* (November 2015).

The Eugene Kuntz Conference on Natural Resources Law and Policy, *Nudging Better Behavior: How Social Science Can Help Us Make Better Decisions* (November 2015).

29th Annual Central California Bankruptcy Institute, *How to Use Social Science to Improve Ethics in a Law Firm* (September 2015).

89th Annual National Conference of Bankruptcy Judges, *Ethics and Social Media* (panel discussion with the Hon. Hannah Blumenstiel and Peter Fessenden) (September 2015).

National Association of Legal Fee Analysis (NALFA) webinar, *Bankruptcy Fee Examiners in Large Chapter 11 Cases* (panel discussion with Walter W. Theus, Jr., Senior Trial Attorney, USDOJ U.S. Trustee Program and Jeffrey L. Cohen, Partner, Cooley, LLP) (May 2015).

Colombia's Superintendency of Companies, Responsibility of Administrators and Business Ethics Seminar, *Why Smart People Make Bad Decisions* (March 2015) (at request of Colombian government).

Institute for Energy Law, 66th Annual Oil & Gas Conference, *"Nudging" Better Behavior* (February 2015).

Bankruptcy Section of the Federal Bar Association and the Los Angeles Chapter of the Federal Bar Association, 11th Annual Bankruptcy Ethics Symposium, *An Ethics Conversation* (with Gillian N. Brown) (November 2014).

National Association of Estate Planners and Councils, 50th Annual Conference, *Social Science, Human Error & Behavior* (November 2013).

Federal Judicial Center, *Judicial Ethics* (with the Hon. Peter Bowie, the Hon. Arthur Federman, and Prof. Elizabeth Thornburg) (April 2013 and August 2013).

ABA Annual Meeting, Business Law Section, *Cognitive Biases, Blind Spots, and Other Impairments of Ethical Vision: How Good Lawyers Can Go Astray* (with Dr. Larry Richard, James Jones, and Charles McCallum) (August 2013).

Texas Bankruptcy Law Section Bench/Bar Conference, *Recent Attorney Fee Issues* (June 2013).

Gardere Women's Council Ethics CLE, keynote speaker, *Women on Boards* (June 2013).

Rocky Mountain Bankruptcy Conference: IWIRC session on bankruptcy ethics; keynote speaker on *Bankruptcy Ethics in Pop Culture* (January 2013).

Speaker at three sessions of the 86th Annual National Conference of Bankruptcy Judges: ABA session on *Ethical Issues Involving Pro Bono Representation: Spotting the Issues, Solving the Problems;* NCBJ session on *The Ethics of Organizers—Ethical Challenges in Forming Official and Unofficial Committees;* and CLLA session on *Pre-Bankruptcy Ethics—How to Avoid the Minefields Before Battle Begins* (October 2012).

Sacramento Valley Bankruptcy Forum's 11th Annual Northern California Bankruptcy Conference, *Stupid Lawyer Tricks* (March 2012).

National Association of Bankruptcy Trustees' Spring Meeting, panelist on *Friend Me? Ethics and Professionalism Issues Related to the Use of Social Media* (March 2012).

ABA Business Law Section's Annual Spring Meeting, panelist for the sessions on *Ethical Issues in Commercial Transactions, Should In-House Counsel Be Navigating in the Choppy Waters of Corporate Compliance?,* and *Consumer Bankruptcy Clinics for Law Schools* (March 2012).

Southeastern Bankruptcy Law Institute, SBLI Visiting Scholar Presentation, *The Case for Value Billing in Chapter 11* (October 2011).

Bankruptcy Law Section of the State Bar of Texas Bench/Bar Conference, *"Money, Money, Money" Red Flags to Fee Examiners and Solutions to Those Red Flags* (with the Hon. H. Christopher Mott, Kemp Sawers, and Warren H. Smith) (June 2011).

American Bankruptcy Institute's Annual Spring Meeting, *Fulfilling the Fiduciary Duty in a Complex Commercial World* (with Richard M. Meth & Judith Greenstone Miller (plenary session) (April 2011).

Annual Meeting of Association of American Law Schools, Section on Continuing Legal Education (co-sponsored by Section for the Law School Dean), *Exploring the Options for the Future of Legal Education* (with Kellye Y. Teste, Daniel McCarroll, Gary A. Munneke, and Ellen Y. Suni) (January 2010).

Annual Meeting of National Conference of Bankruptcy Judges, *(Almost) Everything You Wanted to Know About…Getting Retained* and *Committee Solicitation Issues – The Problems, the Rules and the Enforcers* (October 2009).

ABI Southwest Bankruptcy Conference, *Multimedia Ethics Presentation; Perspectives from the Bench and Ethical Issues;* and *Ethics—Walking in the Grey Areas: Advising Clients and Avoiding Pitfalls in Ethically Unsettled Areas* (September 2009).

Department of Energy & Contractor Attorneys' Association, Inc.'s Annual Meeting, *Ethics in the Corporate World* (May 2009).

National Conference of Bankruptcy Judges, 82d Annual Conference, *Ethical Fee Limits:  Getting Paid and Getting What You Deserve* (Sept. 2008).

American Bankruptcy Institute's 16th Annual Southwest Bankruptcy Conference, *Multimedia Ethics Extravaganza* (plenary speaker) (Sept. 2008).

Emanuel Bar Review Lecturer (2008-2010).

National Conference of Consumer Bankruptcy Attorneys, 16th Annual Conference, *Ethics Issues* (May 2008).

American Bankruptcy Institute's 26th Anniversary Annual Spring Meeting, *Beyond Ethics: The Coexistence of Zealousness, Professionalism and Civility in the Insolvency Community* (April 2008).

American Bankruptcy Institute's 15th Annual Southwest Bankruptcy Conference, *Ethics: Negotiating the Sanctions Minefield* (September 2007).

American Bankruptcy Institute's 25th Annual Spring Meeting, *The Application of State Ethics Rules in Bankruptcy: Are We Just Holding Our Noses and Looking the Other Way?* (April 2007).

25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling* (November 2006).

10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute, A *Look Inside the Mega-Case* (September 2002).

The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute, *Conflicts, Ethical Duties and Independence: Lessons from Enron* (August 2002).

NASA National Managers Association, *Lessons in Character from Enron* (April 2002).

Twenty-Fourth Annual Bankruptcy Law & Practice Seminar, Stetson University College of Law, *Ethical Problems: Dual Representation in Chapter 11,* and *Ethics: Pre-Bankruptcy Planning and Ethical Limitations* (December 1999).

American Bar Association's Workshop for New Law Deans, *Reflections of an Ex-Novice Dean* (June 1999).

Annual Conference of the National Association for Law Placement, *Reliable Evaluation of Law Schools: Going Beyond Law School Rankings* (April 1999).

**Media appearances**

Appearances on a variety of local, national, and international news broadcasts, and in local, national, and international news articles, on various bankruptcy, corporate law, and other legal issues, including the Enron bankruptcy case, the Arthur Andersen trial, and the Anna Nicole death (December 2001-present).

Appeared in Academy Award®-nominated documentary, *Enron: The Smartest Guys in the Room* (Magnolia Pictures 2005).

*Due Process* with William F. Schenck, Prosecuting Attorney, Greene County, Ohio (October 23, 1996) (discussing legal education).

**Contributor to the following blogs:**

NANCY RAPOPORT'S BLOGSPOT, http://nancyrapoport.blogspot.com/.

LAW SCHOOL SURVIVAL MANUAL, http://lawschoolsurvivalmanual.blogspot.com/.

CORPORATE SCANDAL WATCH, http://corporatescandalwatch.blogspot.com/.

UNLV LAW BLOG, Contributing Editor, http://unlvlawblog.blogspot.com.

MONEYLAW, Contributing Editor, http://money-law.blogspot.com/.

Nancy B. Rapoport
Page 20

LEGAL PROFESSION, Contributing Editor: http://lawprofessors.typepad.com/legal_profession/.

JURIST, Contributing Editor, http://jurist.law.pitt.edu/.

CREDIT SLIPS, Guest Blogger, http://www.creditslips.org/.

THE FACULTY LOUNGE, Guest Blogger, http://www.thefacultylounge.org/.

THE CONGLOMERATE, Guest Blogger, http://www.theconglomerate.org/.

FEMINIST LAW PROFESSORS, Guest Blogger, http://feministlawprofs.law.sc.edu/.

RACE TO THE BOTTOM, Guest Blogger, http://www.theracetothebottom.org/home/.


## EXPERT AND EXPERT WITNESS ACTIVITY

Expert for Diamond State Insurance Company in Gieseke v. Diamond State Insurance Company, U.S. District Court for the District of Nevada, Case No. 3:16-cv-00103-MMD-WGC (2016).

Expert for Mar-Bow Value Partners, LLC, and Lakeview Capital, Inc., on a confidential matter involving Federal Rule of Bankruptcy Procedure 2014 (2016).

Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2017).

Expert for Craig Marquiz in Home Gambling Network, Inc. v. Piche, United States District Court for the District of Nevada, Case No. 2:05-cv-00610-DAE-VCF (2015).

Expert for the Debtor in *In re* The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, United States Bankruptcy Court, Eastern District of Washington, Case No. 04-08822-FPC11 (2014).

Expert for the Trustee in *In re* Fundamental Long Term Care, Inc., United States Bankruptcy Court, Middle District of Florida, Case No. 8:11-bk-22258-MGW (2014-2015) (testified at deposition and at trial).

Expert for the Liquidating Trustee in Mukamal v. Fulbright & Jaworski L.L.P (*In re* Palm Beach Finance Partners, L.P. and Palm Beach Finance Partners II, L.P.), United States Bankruptcy Court, Southern District of Florida, Case No. 09-36379-BKC-PGH (2014) (withdrew due to scheduling issues).

Expert for the law firm of Lipson Neilson Cole Seltzer Garin, P.C. in a case involving conflicts of interest (2014).

Nancy B. Rapoport
Page 21

Consultant for the Liquidating Trust for *In re* Residential Capital, LLC, United States Bankruptcy Court, Southern District of New York, Case No. 12-12020 (MG), regarding the reasonableness of fees (2014).

Expert for the law firm of Frank J. Cremen in Grievance File #SG 1-1156, State Bar of Nevada (2013-2014) (testified at hearing).

Expert for a Nevada law firm (firm and client names kept confidential) in a matter involving attorney disciplinary procedures (2012).

Expert for Irell & Manella LLP, in State of Nevada v. Gary Trafford, et al., Clark County District Court, Case No. C-11-277573-1 (2013).

Expert for the Fee Examiner in Matter of Lehman Brothers Holdings, Inc., U.S. Bankruptcy Court, Southern District of New York, Case No. 08-13555-jmp (2012).

Expert for the Fee Examiner in *In re* Motors Liquidation Co. (f/k/a General Motors Corp.), U.S. Bankruptcy Court, Southern District of New York, Case No. 09-50026 (2011-2012).

Expert for Alverson Taylor Mortensen & Sanders in Stanish et al. v. Catholic Healthcare West, Nevada District Court, Clark County, Case No. A-11-639674-C (2011).

Expert for a multinational firm (name kept confidential) on bankruptcy conflicts of interest.

Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).

Expert for the Office of the United States Trustee in three cases: *In re* Mark Andrew Brown, U.S. Bankruptcy Court, Western District of Maryland, Case No. 09-44254-jwv7; *In re* Tracy L. Quarm, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 09-20498; and *In re* John W. Young, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 10-11404 (2010) (testified in discovery depositions and at trial; deposition and trial testimony done via videotape).

Expert for the Trustee in The Pappg Grantor Trust v. Scott (*In re* Baltimore Emergency Services II, LLC, et al.), U.S. Bankruptcy Court, District of Maryland, Adversary No. 03-8294-esd (2010).

Expert for Lionel, Sawyer & Collins in Michael Racusin v. Lionel Sawyer & Collins, American Arbitration Association, Case No. 79 194 Y 00108 08 (2009-2010) (testified in arbitration).

Expert for the Reorganized Debtor in *In re* ASARCO, LLC, et al., U.S. Bankruptcy Court, Southern District of Texas, Case No. 05-21207 (2010) (testified at trial).

Expert for BuckleySandler LLP in Pulte Homes, Inc. v. Terry Goddard, In His Official Capacity as Attorney General for the State of Arizona and Catherine Cortez Masto, In Her Official Capacity as Attorney General for the State of Nevada, D.C. Circuit, Civil Action No. 1:10-cv-00377 (2010).

Nancy B. Rapoport
Page 22

Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).

Expert for plaintiff in Judy M. Jackson, M.D. v. Ira Levine et al., Nevada District Court, Clark County, Case No. A538983 (2009-2010) (testified in deposition and at trial).

Expert for the Trustee in Asset Funding Group, L.L.C., Scobar Adventures, L.L.C., AFG Investment Fund 2, L.L.C., and HW Burbank, L.L.C. v. Adams and Reese, L.L.P., U.S. District Court, Eastern District of Louisiana, Case No. 07-2965 (2009) (testified in deposition; made available for trial, but case settled).

Expert for Clausen Miller in *In re* Raymond Professional Group, Inc. (Raymond Professional Group, Inc. v. William A. Pope Company), Adv. No. 07-A-00639, U.S. Bankruptcy Court, Northern District of Illinois (2008-2009) (testified in deposition and at hearing).

Expert for the plaintiff in Todd v. Guidance Software, Inc., U.S. District Court, Central District of California, Case No. SACV 08-1354 JVS (ANx) (2008-2009).

Expert for the Debtor in Sports Shinko Co. v. Franklin K. Mukai, U.S. District Court, D. Hawaii, Case No. CV 04-00127 ACK/BMK (2007-2008).

Expert for the Trustee in *In re* Mego Financial Corp., et al., U.S. Bankruptcy Court, D. Nev., Case Nos. BK-N-03-52300-GWZ through BK-N-03-52304-GWZ and BK-N-03-52470-GWZ through BK-N-03-52474-GWZ (2007-2008) (testified at deposition).

Expert for Pillsbury Winthrop in *In re* SONICBlue Incorporated, U.S. Bankruptcy Court, Northern District of California, Case Nos. 03-51775 through 03-51778 MM (2007) (made available to testify in court early in the case; did not testify).

Expert for the Trustee in *In re* Southwest Florida Heart Group, P.A., U.S. Bankruptcy Court, Middle District of Florida, Case No. 9:05-bk-17167-ALP (2007) (testified in deposition).

Expert for Beirne, Maynard & Parsons in Brazos Electric Power Cooperative, Inc. v. Tenaska IV Texas Partners and related cases (2003-2004; 2006-2007) (testified in depositions).

Expert for Beirne, Maynard & Parsons in Hicks v. Charles Pfizer & Co., U.S. District Court, Eastern District of Texas, Civil Action No. 1:04CV201 (2006).

Expert for Benjamin Hall, Esq., in Costilla Energy, Inc., by and through its litigation trustee, George Hicks v. Joint Energy Development Investments II, 49th Judicial District, Zapata County, Texas (2006-2008) (testified in deposition).

Expert for Winstead, Secrest & Minick in an issue involving conflicts of interest (2005).

Nancy B. Rapoport
Page 23

Expert for Beckley, Singleton in Fremont Investment & Loan v. Beckley Singleton, Chtd. and Sidney Bailey, U.S. District Court, D. Nevada, Case No. CV-S-03-1406-JCM-RJJ (2003) (2005-2006) (testified in deposition).

Expert for the debtor in *In re* ACandS, Inc., U.S. Bankruptcy Court, D. Delaware, Case No. 02-12687 (2004-2005) (testified at hearing).

Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).

Expert witness for Latham & Watkins regarding Section 414 of H.R. 333 (changes in "disinterestedness" standard of 11 U.S.C. § 101(14)) (March-April 2003).

Expert witness for the Office of Disciplinary Counsel, *In re* Charles William Ewing, Case No. 97-5, before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio (1998).


## PUBLIC TESTIMONY

Testified at the June 2012 public meeting of the United States Trustee Program regarding the proposed new fee guidelines for larger chapter 11 cases (testimony available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment.pdf, http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_SupplementalComment.pdf, and http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment2.pdf; transcript available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Transcript_June4_Public_Meeting.pdf; Director Clifford J. White III's statement on the adopted guidelines, available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/Fee_Guidelines_Cliff_White_Statement.pdf).


## ADVICE COLUMN

"Ms. Ps and Qs":  ethics advice column for the National Association of Chapter 13 Trustees (2011-present).


## SELECTED AMICUS BRIEFS

*Amicus Brief of Neutral Fee Examiners Supporting Neither Party,* Baker Botts L.L.P. v. ASARCO LLC, No. 14-103, United States Supreme Court (Dec. 10, 2014).

Nancy B. Rapoport
Page 24

*Brief of Amici Curiae, In re* David Marshall Brown, Case No. 12-Cv-60016-KAM, United States District Court, Southern District of Florida (filed by co-counsel George Castrataro) (April 11, 2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038267.

*Brief in Support of Respondent for Amici Curiae Professors Richard Aaron, Laura Beth Bartell, Jagdeep S. Bhandari, Susan Block-Lieb, Robert D'Agostino, Jessica Dawn Gabel, Kenneth N. Klee, George W. Kuney, C. Scott Pryor, Nancy B. Rapoport, Marie T. Reilly, Lynne F. Riley, Keith Sharfman, and Michael Sousa,* RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC v. Amalgamated Bank, Case No. 11-166, United States Supreme Court (March 5, 2012).

*Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amici Curiae in Support of Petitioner,* Maples v. Thomas, Case No. 10-63, United States Supreme Court (May 25, 2011).

*Brief of Amicus Curiae,* Warren v. Seidel, United States District Court for the District of Ohio, Case No. 2:10-cv-01049-MHW (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1843496.

*Brief of 30 Leading Ethicists as Amici Curiae in Support of the Petitioner,* Charles Dean Hood v. State of Texas, Case No. 09-8610, United States Supreme Court (February 18, 2010), available at 2010 WL 638469.

*Brief of Amicus Curiae,* Danny Joe McClure and Kimberly Deskins McClure, Plaintiffs, v. Bank of America, Creditors Financial Group, LLC, and Peter Rebelo, Defendants, Bankr. N.D. Tex. 2010, Adv. No. 08-04000-DML, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1550353.


## HONORS, BAR ADMISSIONS, MEMBERSHIPS, AND COMMUNITY SERVICE

**Honors**

Commercial Law League of America's Lawrence P. King Award for Excellence in Bankruptcy (October 2017).

Inducted into Phi Kappa Phi, Chapter 100 (2017).

Southeastern Bankruptcy Law Institute Distinguished Visiting Scholar (week-long visits at Georgia State College of Law) (2011).

2008 Public Service Counsel of the Year, 4th annual event, Association of Media and Entertainment Counsel (2009).

Fellow, American College of Bankruptcy (2005-present) (Class 16).

Named a "Woman of Vision" by the Houston Delta Gamma Foundation (2004).

Admitted to American Leadership Forum, Class XXII (2004).  Withdrew due to family illness.

Named "Best Local Girl Made Good," HOUSTON PRESS, September 25, 2003, at 24.

Fellow, American Bar Foundation (2002-present; Life Fellow since 2015).

Received a Distinguished Alumna Award from Rice University (2002).

Named by the Greater Houston Area Chapter of the National Council of Jewish Women as a "Woman of Influence" (2001).

Elected to membership in the American Law Institute (2001).

Honored in 2000 by the Nebraska State Bar Association as a Legal Pioneer for Women in the Law (first woman to serve as the dean of a Nebraska law school).

Awarded 1998 Fellowship from the AMERICAN BANKRUPTCY LAW JOURNAL (awarded to five academics attending the 1998 National Conference of Bankruptcy Judges).

1998 Louis Nemzer Memorial Lecture (yearly lecture honoring a Jewish member of the Ohio State faculty).

1997 Outstanding Professor of the Year, The Ohio State University College of Law (third-year students voting) (co-winner, with Professor Barbara Rook Snyder).

**Bar admissions**

United States District Court, District of Nevada (2009).

Nevada Supreme Court (2007).

United States District Court, Northern District of Texas (2003).

Texas Supreme Court (2001).

United States Supreme Court (2000).

Nebraska Supreme Court (1999).

Ohio Supreme Court (1993).

United States District Court for the District of Hawaii (1988).

California Supreme Court (1987).

United States Court of Appeals for the Ninth Circuit (1987).

United States District Courts for the Northern, Eastern, Central, and Southern Districts of California (1987).

**Editorial boards**

THE BUSINESS LAWYER (2014-present).

REYNOLDS COURTS & MEDIA LAW JOURNAL (2011-2013).

Association of American Law Schools, JOURNAL OF LEGAL EDUCATION (2007-2010).

State Bar of Texas, TEXAS BAR JOURNAL Board of Editors (2003-06); State Bar of Texas, TEXAS BAR JOURNAL, Editorial Board Committee (2001-2004).

CALIFORNIA BANKRUPTCY JOURNAL (1995-2002).

**Selected board memberships**

Economic Club of Las Vegas (2017-present).

National Museum of Organized Crime & Law Enforcement ("The Mob Museum") (2013-present); Secretary of the Board (2016-present).

JURIST Board of Directors (http://jurist.law.pitt.edu/) (2008-2014).

American Bankruptcy Institute Board of Directors (2008-2017); Executive Committee (2012-2016); Vice President of Research Grants (2013-2016).

American Board of Certification (board certification for bankruptcy lawyers) (2007-2014) (Dean of Faculty, 2011-2013).

Association of Rice Alumni Board (2006-2009).

Rice Alumni Volunteers for Admission (2007-present) and liaison for RAVA to Association of Rice Alumni Board (2007-2009); involved in Rice Annual Fund solicitations since 2007.

NALP Foundation for Law Career Research and Education (2005-2009).

Texas Center for Legal Ethics (2004-2006).

Texas Supreme Court Historical Society (2004); Advisory Board (2004-2006).

Vinson & Elkins Women's Initiative Advisory Board (2003-2010).

Houston Area Women's Center (2003-2006).

Houston World Affairs Council (2002-2005).

Houston Hillel (2002-2007).

Anti-Defamation League Southwest Regional Board (2001-2006).

Law School Admission Council Board of Trustees (2001-2004).

**Selected national service activities and memberships**

Member, National Association of Legal Fee Analysis (2014-present).

Member, Association of Professional Responsibility Lawyers (2014-2016).

Member, Law School Admission Council Diversity Retention Workshop 2015 Planning Work Group (2014-2015).

Member, Federalist Society (2013-present).

Member, Federal Bar Association (2012-present).

Member, Advisory Committee to the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 (2012-2015) (Governance Subcommittee).

Co-Reporter, American Bankruptcy Institute's National Ethics Standards Task Force (2011-2013).

Co-Chair, American Bankruptcy Institute's Task Force on Young and New Members (2011-2012).

Association of Media and Entertainment Counsel, Law School Section (Co-Chair, 2010-2011; member and temporary Co-Chair, 2012-2013); member, Law School Advisory Board (2014).

American Bar Association, Section on Legal Education, Committee on Law School Administration (2008-2010); Chair-Elect (2010); Chair (2011-2013).

American Bar Association, Section on Business Law, Committee on Corporate Counsel, Subcommittee on Corporate Governance (co-chair, with Roberta Torian) (2007-2010).

Advisory Committee, American Bankruptcy Institute's consumer bankruptcy fee study (advisor to Professor Lois Lupica) (2008-2011).

Advisory Committee, American Bankruptcy Institute's Chapter 11 fee study (advisor to Professor Stephen Lubben) (2005-2007).

American Bankruptcy Institute's Task Force on Pro Bono (2007).

American Bar Association's Task Force on Attorney Discipline (2005).

American Bar Association, Advisory Group on Loan Repayment, Standing Committee on Legal Aid & Indigent Defendants (SCLAID) (2003-2006).

Faculty member, ABA New Deans' School (May-June 2003, June 2004, and June 2005).

Advisory Committee, Baylor College of Medicine-UH Law Center MD/JD Program (2004-2006).

Academic advisor, National Governmental Affairs Committee, Commercial Law League of America (CLLA) (2002-2006).

Co-chair (with Dean Stuart Deutsch), ABA Deans' Workshop (for mid-year ABA meeting in 2003).

Advisory Committee, *The Birth of the Dot-Com Era,* project for the Library of Congress (Project Manager, Prof. David Kirsch, University of Maryland) (advising the Library of Congress on what to do with the records of now-defunct law firm of Brobeck, Phleger & Harrison) (2004-2007).

ABA Commission on Loan Repayment & Forgiveness (2001-2003).

Member, AALS Professional Development Committee (2000-2003).

Communication Skills Committee, ABA Section of Legal Education and Admissions to the Bar (1998-2002).
Chair, AALS Planning Committee for the *Mini-Workshop on Major Issues of the 21st Century: the Impact on the Legal Academy and Law Students* (1999-2000).

Member, Law School Admission Council (LSAC) Services & Programs Committee (1999-2000), Workgroup on Alternative Admissions Models (2000-2003), and Gay, Lesbian, Bisexual & Transgendered Issues Workgroup (2000-2001).

Nebraska State Bar Association (1999-present).

National Association of College & University Attorneys (1998-2006).

Commercial Law League of America (1998-2016).

Ohio State Bar Association (1997-present).

American Bankruptcy Institute (1994-present).

AIDS Legal Referral Panel of the Bar Association of San Francisco (1989-91).

Bar Association of San Francisco (1987-91).

American Bar Association (1987-present).

Nancy B. Rapoport
Page 29

## PERSONAL INFORMATION

Native Texan:  born in Bryan, Texas.  Married to Jeffrey D. Van Niel.  No children; two cats (Grace and Shadow).

# David W. Schnell-Davis

1112 E. Owens Ave., North Las Vegas, NV 89030
(702) 569-0227 — dschnelldavis@gmail.com

## EDUCATION

**Lee Business School, University of Nevada, Las Vegas**  Las Vegas, NV
*Master of Business Administration*  Dec 2013

**William S. Boyd School of Law, University of Nevada, Las Vegas**  Las Vegas, NV
*Juris Doctor, Cum Laude*  May 2013
Honors:  Articles Editor, UNLV Gaming Law Journal (fall 2011 – spring 2013)
CALI Awards, Copyright (fall 2011), Advanced Bankruptcy (fall 2012)
National Finalist, Scribes Law-Review Award (2012) for *High-Tech Casino Advantage Play: Legislative Approaches to the Threat of Predictive Devices*, 3 UNLV GAMING L.J. 299 (2012)

**University of Chicago**  Chicago, IL
*Bachelor of Arts, Economics*  May 1994

## EXPERIENCE

**Nancy Rapoport**  Las Vegas, NV
*Fee Reviewer / Database Designer*  Feb. 2014 – present
Worked with Professor Nancy Rapoport, William S. Boyd School of Law, to review fees of attorneys and related professionals in the RESCAP and Caesars bankruptcy cases. Created database system to enable other fee reviewers to analyze the large quantities of service and expense information faster and in more detail.

**Law Office of Amberlea Davis**  Las Vegas, NV
*Intern*  May 2013 – Feb. 2014
Consulted with clients, reviewed briefs, located documents, provided technical support. Created database system to streamline processing of bankruptcy and HAMP mortgage restructuring settlements.

**Professor Jean Sternlight, William S. Boyd School of Law**  Las Vegas, NV
*Research Assistant*  May 2011 – Sep. 2012
Located and checked citations for articles and forthcoming book, *Psychology and Lawyering*. Worked with multiple authors to overhaul layout of 400-page teacher's manual and prepare it for printing.

**Vegas Seven Magazine and Vegas Inc. Magazine**  Las Vegas, NV
*Freelance Writer*  May 2010 – present
Wrote feature, news and commentary articles for local multiple weekly magazines. Interviewed subjects and worked with editors, photographers and researchers to refine articles and prepare them to be published.

**LifeStockPhotos.com and LasVegasTickets.com**  Las Vegas, NV
*Lead Web Designer*  Jan. 2001 – Nov. 2009
Redesigned and administered complex Web sites for managing and selling photos and tickets online.

**Huntington Press**  Las Vegas, NV
*Head of Internet Development*  Sep. 1999 – Mar. 2002
Built and supported office network, created LasVegasAdvisor.com and related e-commerce websites.

**On Air Internet Services**  Las Vegas, NV
*Founder and Managing Member*  Feb. 1996 – Aug. 1999
Founded Web design company specializing in database driven websites. Managed subcontractors, sales, billing and other business tasks. Customers included KNPR and the Las Vegas Motor Speedway.

## ACTIVITIES AND INTERESTS

Boyd Law Toastmasters (2013, founding officer), UNLV Toastmasters (2007–2009, founding President), eBay power seller (2001–2003), Non-fiction author (2002), Las Vegas Paradise Rotary Club (1996–2000, President 1997–1998), KNPR radio commentator (1996–1999), Skydiver (1996–1999)

# Michael Van Luven, Esq.

## Nevada Bar #13975

7508 Pacific Ridge Ave., Las Vegas, Nevada 89128 | vanluven@unlv.nevada.edu | (702) 528-4329

---

| | |
|---|---|
| **Education** | **William S. Boyd School of Law, University of Nevada Las Vegas** |

- Awarded Juris Doctorate in May, 2015
- Member of the Phi Alpha Delta Law Fraternity
- CALI Award Recipient for Employment Law, Fall 2014 semester

**University of Nevada Las Vegas**
Bachelor of Fine Arts

- Undergraduate Major: History, Concentration in U.S. History
- Graduated *Magna Cum Laude*
- Member of the Golden Key International Honour Society
- Member of the Phi Alpha Theta Honor Society

**Experience**

**Lobo Law:** Contract Attorney
*January 2017 to Present*
*Supervisor: Adrian Lobo, Esq., 702-271-2102*

- Drafting of motion practice, to include oppositions and replies, for senior attorney
- Discuss case strategy for open cases in order to determine appropriate motion practice and responsiveness
- Conduct focused research to support senior attorney's practice, to include research into judicial and legislative history/intent
- Attend round-table conferences and discussions related to case strategy and trial preparation

**Law Offices of Andrea L. Luem, Esq.:** Contract Attorney
*October 2016 to Present*
*Supervisor: Andrea Luem, Esq., 702-575-0481*

- Perform research into case law and other authority to support senior attorney's motion practice and to help prepare for oral arguments
- Draft motion practice, including oppositions and replies
- Coordinate discovery promulgation and responsiveness
- Advise senior attorney on civil law procedure and review filings for accuracy and completeness

**Guymon & Hendron:** Contract Attorney
*January 2016 to Present*
*Supervisors: Gary Guymon, Esq., 702-630-1230; and Lance Hendron, Esq., 702-465-8255*

- Conduct review and evaluation of cases, to include primary intake review and evaluation, and prepare memos of findings for senior attorneys' review
- Participate in client interview and counseling sessions
- Provide court hearing coverage for senior attorneys, to include substantive oral arguments, status checks, entry of plea agreements, and case dispositions
- Conduct research into case law, statutory authority, and other sources in order to prepare motion practice and other pleadings, including habeas petitions, evidentiary motions, and motions in limine

**Boyack Orme & Anthony:** Associate Attorney
*August 2015 to Present*
*Supervisor: Edward (Ted) Boyack, Esq., 702-562-3415*
- Manage a caseload of over thirty active litigation cases in both State and Federal court
- Attend and participate in trial work, to include pre-trial preparation and motion practice
- Conduct discovery, to include preparing and responding to written requests, taking and defending depositions, and engaging in related motion practice
- Review, evaluate, prepare, and respond to pleadings, including motion responsive motion practice
- Engage in settlement negotiations, to include alternative dispute resolution
- Consult directly with clients to prepare formal legal opinions, and to advise on legal matters and procedure

***In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois:** Fee Examiner, Workflow Supervisor
*June 2015 to April 2017*
*Supervisor: Nancy Rapoport, Esq., 713-202-1881*
- Conduct review of fee applications from professional entities (debtor and creditor) to ensure reasonableness of fees and compliance with both bankruptcy standards and court protocols
- Prepare memos and Excel spreadsheets for use by the Fee Review Committee in negotiating reductions of fees or in preparing formal objections before the Bankruptcy Court
- Conduct all duties under strenuous deadlines for filing (live case)
- Coordinate, log, and track submissions from team members to ensure compliance with deadlines, and provide for stability of all open workflows

**Research Assistant:** Assistant to Provost Nancy Rapoport at William S. Boyd School of Law and the University of Nevada, Las Vegas
*December 2014 to May 2015*
*Supervisor: Nancy Rapoport, Esq.*
- Conducted lengthy research into specific topics at Prof. Rapoport's direction
- Drafted memos incorporating research information and results, tailored to Prof. Rapoport's needs
- Largely independent work with no direct supervision

**8th Judicial District Court, Dept. R:** Judicial Intern to the Honorable Bill Henderson
*June 2014 to August 2014*
*Supervisor: Susan Filon, Esq., 702-455-1351; 702-455-1350*
- Reviewed decrees and orders for a variety of family law-related issues (divorce, custody, protective orders, etc.)
- Drafted memoranda to attorneys and litigants, bench orders, and report summations for the judge's review
- Assisted attorneys and litigants with procedural issues
- Participated in CLE preparation for the Domestic Violence Task Force

**Residential Capital (ResCap) Liquidating Trust:** Analyst
*January 2014 to June 2014*
*Supervisor: Nancy Rapoport, Esq.*
- Assisted a liquidating trust in determining the reasonableness of fees in a large Chapter 11 bankruptcy case
- Prepared memos and spreadsheets (Excel) for use by trustee personnel in preparing formal objections before the Bankruptcy Court

- Coordinated analyses of large-scale reports/records with other analysts and with trustee liaison

**Partners in Pro Bono:** Volunteer Legal Assistant
*September 2013 to March 2014*
*Supervisor: A. Maria Maskall, Esq.*
- Assisted in the preparation of a complaint and proposed order under the guidance of a mentor attorney
- Met with client and conducted initial intake interview
- Researched relevant law pertinent to the client's case and prepared points for negotiation with the opposing party and counsel

**Clark County Public Defender's Office:** Law Clerk / Intern
*June 2013 to September 2013*
*Supervisor: Jeff Maningo, Esq.*
- Assisted in the preparation of motions, trial exhibits, cross-examination questions and closing argument for an eight-day, 15-count felony trial
- Prepared draft motions for supervising attorneys
- Conducted jail visits and field interviews with clients and witnesses
- Assisted in the research and preparation of an Opening Brief for a death penalty appeal before the Nevada Supreme Court

**Ewing Brothers Towing and Auto Body:** Office Manager
*September 2011 - August 2012*
- Filed liens on unrecovered and/or lingering vehicles, performed billing and invoicing of vehicles, processed tow orders, dispatched calls, provided customer service, and trained new employees

**CARS Vegas, LLC:** Repossession Agent
*June 2008 - September 2011*
- Performed repossessions of automobiles and related collateral, serviced clients, conducted billing and invoicing, managed the corporate office

**Smith's Food and Drug:** Pharmacy Technician
*January 2008 to June 2008*
- Processed prescriptions and insurance claims, facilitated doctor-patient services, engaged in direct patient therapy management with hospitals and facilities, managed interventions between patient insurance companies and prescribers, and engaged in customer service duties

**Ford Motor Credit Company**: Commercial Lease Auditor/Account Manager
*September 2006 to January 2008*
- Reviewed contracts, processed payments and account services, and finalized the disposition of recovered and/or liquidated assets
- Worked primarily with delinquency and collections; became familiarized with collection law (compliance) across multiple states
- In-house lien expert, facilitated the liens process- both enforcing the company's liens and mitigating liens against the company

**Walgreens Pharmacy:** Pharmacy Technician/Service Clerk
*September 1996 to September 2006*
- Processed prescriptions and insurance claims, facilitated doctor-patient services, performed inventory control, and engaged in customer service

**United States Army Reserve National Guard:** Medical Specialist

*June 1998 to June 2004*

- Served active duty during Operation Noble Eagle in January, 2002; achieved rank of **E-4**

**Gabrielle Angle**
11346 Bedford Commons Drive
Unit 105
Las Vegas, NV 89135
(703) 955-2662 (cell-please note area code); ghangle815@gmail.com

---

## EDUCATION

**William S. Boyd School of Law, University of Nevada, Las Vegas**        Las Vegas, NV
JD, May 2010

Gaming Law Society, President

Lieutenant Governor of Programming, Law Student Division of American Bar Association

Sports and Entertainment Law Association, Secretary

Most Valuable Student Award, Introduction to Gaming Law class

Student Representative, Curriculum Committee

Student Representative, Faculty Appointments Committee

**Brenau University**                                                     Gainesville, GA
B.F.A., *Cum Laude with High Honors*, in Dance Pedagogy, 2007

| | |
|---|---|
| Minor: | Legal Studies and Conflict Resolution |
| Honors: | Dean's List and Merit List |
| | Top Advocate/Client Pair for 2005 Mock Mediation Tournament |
| | Phi Kappa Phi National Academic Honor Society |
| | Order of Omega Greek Honor Society |
| | Alpha Lambda Delta Freshman Honor Society |
| | Brenau Academic Honor Society; Omicron Delta Kappa Leadership Honor Society |
| Leadership: | Alpha Chi Omega Women's Fraternity, Panhellenic Delegate |
| | Gamma Sigma Alpha Greek Academic Honor Society, President |
| | Brenau University Greek Council Executive Board, President, Vice President |
| Activities: | Brenau's Association of Mediators and Legal Scholars |
| | Choreographer, Miss Brenau Scholarship Competition |

---

## EXPERIENCE

**Zuffa, LLC**                                                            Las Vegas, NV
Global Compliance Manager, September 2012-Present
- Oversee and prepare documentation for all visa requirements for US and international events
- Manage the new passport application and renewal process for staff and fighters
- Liaise with fighters, managers, outside counsel, Embassies and USCIS for various visa requirements

**Caesars Entertainment Operating Company**                              Las Vegas, NV
Independent Fee Consultant, June 2015-Present
- Review Professionals' fee applications and identify inappropriate or unnecessary charges
- Draft memoranda with qualified recommendations regarding fee applications in accordance with the court's orders regarding same as well as applicable bankruptcy rules

**Nevada Ballet Theatre**                                                Las Vegas, NV
Executive Assistant to the CEO, March 2011-August 2012
- Manage CEO's schedule, appointments and meetings
- Act as the liaison for the NBT Board of Directors, attend Board meetings and take minutes
- Prepare correspondence and Company Dancer contracts

**Global Cash Access, Inc.**                                             Las Vegas, NV
Licensing Compliance Specialist, September 2010-December 2010

- Prepare gaming license applications for all entities and key employees
- Research compliance issues and gather information
- Otherwise assist VP of Compliance and Counsel as needed

**Aruze Gaming America, Inc.**                          Las Vegas, NV
Legal Intern, May 2009-June 2010
- Prepare gaming license applications for the company and key employees
- Prepare Sales Contracts and Master Agreements
- Otherwise assist the General Counsel as needed

**William S. Boyd School of Law, UNLV**                 Las Vegas, NV
Research Assistant to Professor Nancy Rapoport, Fall 2008-Present
- Research, gather, and edit information for various projects

**The Office of United States Senator Harry Reid**      Las Vegas, NV
Legal Extern, Summer 2008
- Handled immigration casework and drafted correspondence to constituents and agencies.
- Served as a Congressional liaison between constituents and agency on immigration issues.
- Assisted at local events to represent Senator Reid.

**Metropolitan Washington Airports Authority**         Washington, DC
Secretary, Maintenance and Engineering Department, Summer 2007, December 2007-January 2008
- Drafted personnel memoranda and correspondence, processed invoices and tracked expenses.
- Completed projects for department manager such as personnel research and spreadsheets.

**The Loudoun School of Ballet**                       Leesburg, VA
Dance Teacher, August 2001-June 2003, Summer 2006, Summer 2007
- Taught jazz and tap classes throughout the year to children ages 6-14.
- Choreographed several dances for the yearly recitals.

**American Airlines**                                  Washington, DC
Intern, 2001-2003
- Assisted General Manager and Secretary with various office projects.
- Calculated fuel reports and liquor counts for flights
- Assisted gate agents with passengers and boarding flights

2

# Veronica Fink

9639 Simple Life Avenue, Las Vegas, NV 89148
veronicafink@gmail.com · (805) 895-9522 · http://www.linkedin.com/in/veronicafink/

## EDUCATION

**William S. Boyd School of Law,** *JD Candidate* — **Expected May 2017**
- Organization of Part Time Law Students, *President*, 2015-present
- Wiener-Rogers Law Library, *Research Assistant*, 2016
- Academic Standards Committee, 2016
- Highest Pro Bono Honors

**College of Southern Nevada,** *Paralegal Studies, post-graduate C.A., honors* — **Fall 2008**
- Phi Theta Kappa Honor Society, 2007-2008

**University of California at Santa Barbara,** *B.A. Anthropology* — **Spring 2004**
- Anthropology Student Union, 2004

## EXPERIENCE

**Thomas & Mack Legal Clinic, Education Advocacy Clinic,** *Student Attorney* — **August 2016 – December 2016**

**United States Bankruptcy Court,** *Judicial Extern to the Hon. Laurel E. Davis* — **Summer 2016**
- Researched complex issues on bankruptcy and Nevada law including first impression issue
- Prepare memoranda encapsulating legal research

**Zuffa, LLC dba Ultimate Fighting Championship,** *Paralegal* — **September 2015-March 2017**
- Research legislative, law, and state agency materials, investigate facts, and prepare various documents
- Draft corporation bylaws regarding fighter regulatory compliance
- Review and prepare subpoena responses and audit requests from agencies such as the FBI, IRS, and business partners
- Evaluate and prepare internal department presentation to the executive staff and owners
- Prepare various international documents including a SOCAN music license application and Proof of Claim (English equivalent)
- Lead project regarding company impact and compliance with Nevada AB 179
- Continuously identify and brief various new binding opinions that could affect company operations

**Caesars Entertainment Operating Company Bankruptcy,** *Independent Fee Consultant* — **June 2015-present**
- Review professional's fee applications and identify inappropriate or unnecessary charges
- Draft memoranda with qualified recommendations regarding fee applications in accordance with the court's orders regarding same as well as applicable bankruptcy rules

**Carlyon Law Group, PLLC,** *Law Clerk* — **July 2012-August 2015**
- Prepared trial materials, including exhibits, exhibit lists, and trial notebooks. Provided onsite trial support
- Conducted legal research and prepared legal memoranda on bankruptcy and commercial litigation
- Prepared pleadings, orders, correspondence, debtor bankruptcy petitions, creditor proofs of claim, and findings and conclusions
- Prepared discovery requests, responses, and deposition summaries
- Served as Court Clerk for Judge Pro Tempore in Nevada Short Trial Program

**Snell & Wilmer, L.L.P.,** *Paralegal Assistant* — **November 2010-July 2012**
- Prepared commercial litigation pleadings and discovery from commencement to completion of matter
- Assisted in trials, depositions, and arbitrations

**Jolley Urga Woodbury & Little,** *Paralegal* — **March 2009-November 2010**
- Drafted bankruptcy and replevin pleadings, maintained attorneys' calendars, kept clients informed about their matters, electronically filed documents, and recorded judgments

## ORGANIZATIONS AND COMMUNITY SERVICE

**The Howard D. McKibben American Inn of Court,** *Pupil* — **2016-present**

**American Bar Association,** *Member* — **2014-present**
- Participated in the ABA's February 2016, Judicial Clerkship Program (JCP); JCP is designed to bring judges and law students together through structured learning to improve involvement in underrepresented communities

**Legal Aid Center of Southern Nevada,** *Student Volunteer* — **2015**
- Lead community legal education informational classes for potential bankruptcy debtor filers as a perquisite to assistance from Legal Aid of Southern Nevada

**Legal Aid Center of Southern Nevada,** *Educational Surrogate Parent* — **2013-present**

# Joseph Tiano

CEO/Founder at Legal Decoder (LegalTech and Data Analytics)

jtiano@legaldecoder.com

## Summary

Making accurate, data driven business decisions is the key to success. Every year, the legal industry is plagued by $60 billion of pricing uncertainty and inefficiency.

Both clients and their law firms want the same things: Predictability, Visibility, Efficiency and Value.

Legal Decoder's software/data analytics tools delivers those outcomes.  Our software analyzes complex legal spend data and delivers critical insights and trends that make budgeting and pricing more predictable, improves the invoice/legal spend review process and drives greater efficiency and value when it comes to legal services.

Intelligently designed, statistically validated analytic tools that embrace the new age of data driven lawyering are mission critical.

## Experience

**Chief Executive Officer at Legal Decoder**

January 2014  -  Present

Legal Decoder technology turns mountains of valuable and complex legal spend data into actionable information that clients and their law firms can use to make better informed and more strategic decisions. Enhanced business performance and optimized economics result for clients and law firms that use our solution as a competitive edge.

Legal Decoder's solution automatically analyzes legal spend data to gain more insight and transparency for each dollar spent on outside counsel.  It makes budgeting more predictable, improves the invoice/legal spend review process and drives greater value and efficiency.

Our proprietary Legal Spend Authentication technology has "built in" domain expertise and is statistically validated by billions in actual, up-to-date legal spend data.

**Partner - Transactional Business Attorney, Mergers & Acquisitions, Recapitalizations at Pillsbury Winthrop Shaw Pittman**

October 2008  -  January 2014 (5 years 3 months)

As a transactional business lawyer, I concentrated my practice on public and private securities offerings, mergers and acquisitions, restructuring transactions and private equity and venture capital investments.

I grew a multi-million dollar practice and managed the billing, invoicing, economics and day-to-day operations of multi-office, 20 person team.

**Partner at Thelen Reid Brown Raysman & Steiner LLP**
May 2003  -  October 2008 (5 years 5 months)
At Thelen, I was promoted from an associate to a partner having organically grown a multi-million dollar cross boarder finance practice.  My practice focused on securities offerings, financial restructuring and M&A.  I managed practice economics and billing matters for a practice comprised of over 20 legal professionals generating $6 million - $10 million annually.

**Associate at Akin Gump Strauss Hauer & Feld LLP**
2001  -  2003 (2 years)

**Associate at Greenberg Traurig, LLP**
1999  -  2001 (2 years)

**Associate at Tyler Cooper & Alcorn**
1995  -  1998 (3 years)

---

## Education

**University of Pittsburgh School of Law**
JD, Law, 1992 - 1995
**Activities and Societies:** Member of the University of Pittsburgh Law Review. Author, The Liability of Computerized Information Service Providers: A Look Back and a Proposed Analysis for the Future," 56 U. Pitt. L. Rev. 655 (1995).
**Georgetown University**
Business, Marketing/Marketing Management, 1988 - 1992
**Gonzaga College High School**
1984 - 1988
**Activities and Societies:** Honors Student; Varsity Lacrosse
**Potomac School**
1982 - 1984

---

## Honors and Awards

MindShare Class of 2014, Mindshare Class of 2014

# Joseph Tiano

CEO/Founder at Legal Decoder (LegalTech and Data Analytics)

jtiano@legaldecoder.com

---



Contact Joseph on LinkedIn