**Hearing Date**: June 28, 2017 at 9:30 a.m. (Prevailing Eastern Time)
**Objection Deadline**: June 16, 2017 at 4:00 p.m. (Prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## MOTION OF DEBTORS FOR ORDER APPROVING
## PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales

Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Debtors"),

by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight

Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight,*

*Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submit this motion (the

"Motion"), pursuant to PROMESA sections 104(b), 315(a), and section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code"), made applicable by PROMESA section 301(a), for

entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"),

approving (a) appointment of an Oversight Board agent to serve as the Commonwealth

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number
listed as a bankruptcy case number due to software limitations and the last four (4) digits of
each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of
Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:
3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case
No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

representative in the "Commonwealth-COFINA Dispute" (defined below); (b) appointment of an

Oversight Board agent to serve as the COFINA representative in the Commonwealth-COFINA

Dispute; and (c) approving certain procedures related thereto.   In support of this Motion, the

Debtors respectfully represent as follows:

## <u>**Table of Contents**</u>

Jurisdiction and Venue ........................................................................................ 5

Background ......................................................................................................... 5

    A.   The COFINA Bonds ............................................................................ 6

    B.   The Commonwealth-COFINA Dispute ............................................. 8

    C.   The Fiscal Plan ................................................................................. 10

Relief Requested .............................................................................................. 11

Basis for Relief ................................................................................................ 11

Proposed Procedures ........................................................................................ 14

Notice ............................................................................................................... 16

No Prior Request .............................................................................................. 17

## Table of Authorities

**Cases**

*In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986) ........................................ 13

*Bird v. Crown Convenience (In re NWFX, Inc.),* 864 F.2d 588, 590 (8th Cir. 1988) .................. 13

*In re Cooper Properties Liquidating Trust, Inc.,* 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) .. 14

*Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.,* 1991 Del. Ch. LEXIS
215 *108 n. 55 (Del Ch. 1991) .............................................................. 14,15

*Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson,* 390
U.S. 414, 424-425 (1968) ................................................................. 14, 15

**Statutes**

11 U.S.C. § 105(a) .......................................................................... 5, 13

PROMESA § 104(b) ............................................................................ 5,12

PROMESA § 301(a) ............................................................................ 5

PROMESA § 305 .............................................................................. 15

PROMESA § 306(a) ............................................................................ 5

PROMESA § 307(a) ............................................................................ 5

PROMESA § 315(a) ............................................................................ 5,13

PROMESA § 315(b) ............................................................................ 15

P.R. Const. art. VI. § 8 .................................................................... 9

**Jurisdiction and Venue**

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory bases for the relief requested herein are PROMESA sections 104(b), 315(a) and Bankruptcy Code section 105(a), made applicable in the Title III Cases by PROMESA section 301(a).

**Background**

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as covered entities under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Commonwealth's Title III Case").

8.      On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA

5

pursuant to PROMESA section 304(a), commencing a case under title III thereof ("COFINA's Title III Case," and, together with the Commonwealth's Title III Case, the "Title III Cases").

9.      By operation of PROMESA and pursuant to section 315(b) the Oversight Board is the representative of the Commonwealth and COFINA in these Title III Cases.

10.     On June 1, 2017, the Court entered an order granting the joint administration of the Commonwealth's Title III Case and COFINA's Title III Case, for procedural purposes only [Docket No. 242].

11.     Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [ECF No. 1], attached to the Commonwealth's title III petition.

## A. The COFINA Bonds

12.     COFINA is a statutory instrumentality of the Commonwealth.  It was created by Act of July 5, 2007, No. 56-2007, 2007 P.R. Laws 173 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a–16) (as amended, "Act 56") as a related entity for the Government Development Bank (the "GDB") for the purpose of financing the payment, retirement, or defeasance of certain debt obligations of the Commonwealth outstanding as of June 30, 2006.

13.     COFINA issued bonds pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 10, 2009 (the "2009 Resolution" or the "Resolution").  COFINA bonds that have been issued can be grouped into the following tranches: (i) Senior Current Interest Bonds; (ii) Senior Capital Appreciation Bonds; (iii) Subordinate Current Interest Bonds; and (iv) Subordinate Capital Appreciation Bonds (collectively, the "COFINA Bonds").

6

14.     The COFINA Bonds are non-recourse bonds and are payable solely from, and secured by, a security interest granted under the 2009 Resolution in the pledged property, consisting mainly of the pledged sales and use tax (the "Pledged Sales Tax").  As of July 1, 2015, the total sales and use tax in Puerto Rico (to be allocated among the Commonwealth, municipalities, and COFINA) was increased to 11.5%.[3]  COFINA's annual share of the sales and use tax is the greater of (i) a fixed amount (currently ~$725 million), which grows at 4% per year (the "Pledged Sales Tax Base Amount"), or (ii) a 3% sales and use tax.  *See* Act of May 13, 2006, No 91-2006, § 3(a).  Presently, the Pledged Sales Tax Base Amount is in excess of the 3% portion of the sales and use tax.[4]

15.     Act 56 requires the Commonwealth's Secretary of the Treasury to deposit the first receipts of the Commonwealth Sales Tax in each fiscal year in the amount specified by the Pledged Sales Tax in a special fund held separate and apart from the Commonwealth's general fund.  Act No. 56, § 2; P.R. Laws Ann. tit. 13, § 12.

16.     As of July 31, 2016, there is approximately $17.3 billion of COFINA Bonds outstanding ($7.6 billion of Senior Bonds and $9.7 billion of Subordinate Bonds). Approximately $2.6 billion of COFINA bonds are insured.[5]  COFINA's debt service requirement

---

[3] *See* Act of Jan. 24, 2014, No. 18-2014, art. 4, § 6080.14, 2014 P.R. Laws 12.  The total sales and use tax ("SUT") is divided as follows: (I) a 4.5% SUT is paid to the Commonwealth pursuant to Act of July 1, 2015, No. 101-2015, sec. 6, § 4210.01(b); (II) a 6% SUT is divided between the Commonwealth, municipalities, and COFINA pursuant to Act of Jan. 24, 2014, No. 18-2014, art. 2–3, 2014 P.R. Laws 12; and (III) 1% SUT goes directly to Puerto Rico's municipalities pursuant to Act of Jan. 24, 2014, No. 18-2014, art. 4, § 6080.14, 2014 P.R. Laws 12.

[4] *See* Financial Information and Operating Data Report (Dec. 18, 2016), at 91.

[5] Approximately 15% of COFINA debt is insured, including 31% of Senior Bonds and 3% of Subordinated Bonds.  *See* Commonwealth of Puerto Rico Fiscal Plan Appendix, dated Oct. 14, 2016 (the "Fiscal Plan Appendix (Oct. 14, 2016)") at 11.

is approximately $725 million for the fiscal year ending June 30, 2017 and is projected to grow annually.

**B. The Commonwealth-COFINA Dispute**

17.    For purposes of the Title III Cases, the dominant issue is whether, after considering all procedural and substantive defenses, the Pledged Sales Taxes are either (a) property of the Commonwealth within the meaning of PROMESA section 301(c)(5), or (b) subject to an allowable claim of the Commonwealth having priority over all claims of COFINA (the "Commonwealth-COFINA Dispute").  If they are, then there may be no funds available to pay COFINA debt.  If they are not, then there will be $725 million less available per year to pay Commonwealth liabilities and expenses, which annual amount increases over time.

18.    On July 20, 2016, certain holders of the Commonwealth's general obligation debt filed a complaint against the Commonwealth's Governor, Secretary of Treasury, and Office of Management and Budget Director seeking (a) a declaratory judgment that certain measures taken by the Commonwealth permitting transfers outside of the ordinary course or in violation of the Puerto Rico Constitution were prohibited under PROMESA, and (b) an injunction to prevent the same such transfers.  *See Lex Claims, et al. v. Garcia Padilla, et al.*, No. 16-02374-FAB (D.P.R. July 20, 2016) (hereinafter, "Lex Claims").

19.    By motion dated June 7, 2017 [Docket No. 270], the Puerto Rico Funds and Mutual Fund Group requested stay relief to continue the Lex Claims litigation including a certification to the Puerto Rico Supreme Court of the issues identified herein.  The Oversight Board will file a separate pleading explaining why that method of resolution would be improper and inconsistent with the reorganization in process.  Notably, that litigation centers on the question of whether the Pledged Sales Taxes are available resources of the Commonwealth

within the meaning of the Puerto Rico Constitution, whereas the Commonwealth-COFINA Dispute covers the broader question whether federal law impacts the answer to whether the Pledged Sales Taxes are property of the Commonwealth title III debtor or the COFINA title III debtor and what that impact is.

20.     The Commonwealth has issued approximately $17.8 billion in general obligation bond debt (the "GO Debt").  The GO Debt falls into two categories: (i) the Commonwealth's general obligation bonds ("GO Bonds"), which were issued by the Commonwealth, and are backed by a pledge of the Commonwealth's good faith, credit, and taxing power; and (ii) bonds issued by certain of the Commonwealth's public corporations, which are guaranteed by the same pledge of the Commonwealth's good faith, credit, and taxing power ("GO-Guaranteed Bonds").

21.     Holders of the GO Debt argue, among other things, that the Puerto Rico Constitution requires the Commonwealth to pay the GO Debt ahead of any other expenditure. *Lex Claims* [Docket No. 78], at 4.  They point to Article VI, Section 8 of the Puerto Rico Constitution which provides that, if Puerto Rico's "available resources" are insufficient to meet all its appropriations, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  P.R. Const. art. VI, § 8.  In their view, the Pledged Sales Tax is an "available resource" and  COFINA was created and has issued bonds in an attempt to evade the GO Debtholders' claim on available resources and related constitutional limitations on the quantity of public debt the Commonwealth was permitted to issue.  *Lex Claims* [Docket No. 78], at 7.

22.     Holders and insurers of COFINA Bonds argue that the sales and use taxes were legislatively rendered property of COFINA from their inception, thereby eliminating any

possibility the taxes may be property or available resources of the Commonwealth. *Lex Claims* [Docket No. 232], at 30. They point to Act of May 13, 2006, No 91-2006, 2006 P.R. Laws 246 *et seq.* (codified as amended at P.R. Laws Ann. tit. 13, § 12) (as amended, "Act 91") providing the Pledged Sales Tax "shall [not] constitute available resources of the Commonwealth of Puerto Rico nor be available for the use of the Secretary." Act 91, § 2. They further assert that COFINA was essential in permitting the Commonwealth to access the capital markets on preferable terms.

### C. The Fiscal Plan

23.     On March 13, 2017, Puerto Rico's Fiscal Agency and Financial Advisory Authority ("AAFAF") submitted a joint fiscal plan (as amended and corrected, the "Fiscal Plan") to the Oversight Board. On that date, the Oversight Board certified the Fiscal Plan subject to certain amendments.

24.     Whether the funds available for debt service under the Fiscal Plan should satisfy COFINA debt, Commonwealth debt, or be divided between the two depends on which entity(s) own the Pledged Sales Tax.

25.     Promptly after certification of the Fiscal Plan, the Oversight Board and the Commonwealth undertook a joint effort to formulate restructuring proposals for all major creditors based on the debt sustainability analysis in the Fiscal Plan. In March 2017, the Oversight Board and the government requested holders of GO Debt and COFINA Bonds to participate in mediation with the Oversight Board and government, in an attempt to, among other things, resolve the Commonwealth-COFINA Dispute.

26.     The mediation commenced on April 13, 2017, under the auspices of former Bankruptcy Judge Allan Gropper, who was nominated by a plurality of creditors. Despite several mediation sessions and other private negotiations, no agreements were reached before the

expiration of the PROMESA stay on May 1, 2017.  After certain creditors commenced litigation against the Commonwealth and COFINA, the Oversight Board and the Commonwealth decided the best path forward was to file title III cases to protect Puerto Rico and its citizens.

27.     The Oversight Board has not taken sides in the Commonwealth-COFINA dispute.

### Relief Requested

28.     By this Motion, pursuant to PROMESA sections 104(b), 315(a), and Bankruptcy Code section 105(a), the Debtors seek entry of an order, substantially in the form of the Proposed Order, approving the appointment of independent Oversight Board agents to serve separately as the respective representatives of the Commonwealth and COFINA in the Commonwealth-COFINA Dispute (each, an "Agent"), and approving certain procedures related to such appointments and the parameters of each Agent's powers and authority.

### Basis for Relief

29.     The Oversight Board, as representative of the Commonwealth and COFINA, submits this Motion in the interest of creating a fair, transparent, and efficient structure for resolving the Commonwealth-COFINA Dispute.  At the outset of these Title III Cases, counsel for the Oversight Board brought to the Court's attention the importance of the Commonwealth-COFINA Dispute and the procedural efforts to resolve it.  The Court expressed at that time that "transparency is important in these proceedings. And so a method that, if these matters are controversial, will make the steps and the issues as transparent as possible is appropriate."  May 17, 20-17 Hr'g Tr. 63:5-9 [Docket No. 207].

30.     The numbers clearly illustrate the importance of resolving the Commonwealth-COFINA Dispute.   Of the approximately $74 billion in aggregate debt owed by the Commonwealth, the GO Debt and COFINA Bonds together account for approximately 55% of the total bond debt to be restructured.  The outcome of the Commonwealth-COFINA Dispute

will likely be dispositive as to the relative recoveries of the debt holders of COFINA and the Commonwealth.  The debt service on the COFINA Bonds alone is estimated to be $725 million in fiscal year 2017, and is projected to grow each fiscal year.  On the other hand, the Fiscal Plan contemplates an average of $787 million in available funds for debt service.  Should the COFINA structure be determined to be valid, almost the entirety of the funds available for debt service may need to continue to flow to those creditors, leaving very little recovery to creditors of the Commonwealth.

31.     Time is of the essence to resolve the Commonwealth-COFINA Dispute because, if the Commonwealth is not entitled to any of the Pledged Sales Taxes,[6] it will, absent borrowing or further slashing expenses to a counterproductive extent, face acute cash management issues shortly after November 1, 2017.  If there is no settlement or final adjudication as to the Commonwealth-COFINA Dispute by November 1, 2017, the Commonwealth will likely need to borrow funds from COFINA to fund the Commonwealth's operating budget.

32.     Further, until a resolution is reached on this gating issue, it is far less feasible for the Oversight Board to negotiate a consensual title III plan of adjustment for the Commonwealth and COFINA or any of their other Debtor-affiliates.

33.     PROMESA grants the Oversight Board the power to delegate its authority to agents.  Specifically, section 104(b) provides that "[a]ny member or agent of the Oversight Board may, if authorized by the Oversight Board, take any action that the Oversight Board is authorized to take by this section."  PROMESA § 104(b).

---

[6]  The Pledged Sales Tax relates solely to COFINA's potential share of the 6% SUT allocated to the Commonwealth, municipalities, and COFINA by Act of Jan. 24, 2014.  Even if the Pledged Sales Tax is found to be valid, the Commonwealth will receive any remaining revenues from the 6% SUT collections.

34.     PROMESA section 315(a) provides the Oversight Board with the power to take
any action necessary to prosecute the Title III Cases.  *See* PROMESA § 315(a) ("For the
purposes of this title, the Oversight Board may take any action necessary on behalf of the debtor
to prosecute the case of the debtor . . .").  Given the importance of the Commonwealth-COFINA
Dispute to Puerto Rico's overall restructuring, it is prudent to establish an independent debtor
representative for the Commonwealth and COFINA to fully advocate, at arm's length, on behalf
of each Debtor to reach a fair resolution.

35.     Congress mandated that the Oversight Board be the representative of every title
III debtor, notwithstanding that it was self-evident that the title III debtors conduct thousands of
transactions among themselves, creating significant claims among them.   Given the
extraordinary magnitude of the Commonwealth-COFINA dispute, the proposed procedure
submitted to the Court works within the framework that Congress contemplated: ensuring that
each of the Debtors' (and their respective creditors') rights are protected and independently
represented, while making sure that the Oversight Board remains in control of the overall
restructuring of the Commonwealth and its instrumentalities.

36.     PROMESA section 301 makes applicable Bankruptcy Code section 105(a) to title
III cases.  Section 105(a) provides, in relevant part: "The court may issue any order, process, or
judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §
105(a).  Under section 105(a), the Court has expansive equitable powers to fashion any order or
decree that carries out the statute.  *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir.
1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary
pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX,
Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that

13

equitable principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

37.    After discussions with representatives of different types of COFINA creditors and Commonwealth creditors, it became evident the senior and subordinated COFINA creditors were concerned about which type of COFINA creditor the COFINA Agent (defined below) may try to serve.  To ameliorate that concern, we are proposing that each Agent be instructed to assess settlements from the viewpoint of maximizing the result for the Debtor the Agent represents, as opposed to maximizing it for a particular type of creditor of each Debtor.  While title III debtors are not corporate debtors, the same type of issue was hypothesized in *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, 1991 Del. Ch. LEXIS 215 *108 n. 55 (Del Ch. 1991), where directors had to deal with a litigation whose settlement would impact creditors differently than shareholders.  Chancellor Allen explained how the directors should proceed, and his approach is quoted in **Exhibit D** hereto and adopted below for purposes of establishing the Agents' objectives and not to impose here duties unique to the corporate situation in *Credit Lyonnais*.  This is consistent with the settlement framework espoused by the United States Supreme Court in *Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968).

## Proposed Procedures

38.    As representative of each Debtor, the Oversight Board proposes the following procedures (the "Proposed Procedures") to resolve the Commonwealth-COFINA Dispute:

   a. The Oversight Board, as representative of title III debtor Commonwealth of Puerto Rico pursuant to PROMESA section 315(b), shall appoint an independent agent to serve as the Commonwealth representative to litigate and/or settle the

Commonwealth-COFINA Dispute on behalf of the Commonwealth (the "Commonwealth Agent").

b. The Oversight Board shall select the Commonwealth Agent from among the general statutory creditors' committee that may be appointed in the Commonwealth's title III case and at least two nominations made by the creditors of the Commonwealth listed on **Exhibit B**.

c. The Oversight Board, as representative of title III debtor COFINA pursuant to PROMESA section 315(b), shall appoint an independent agent to serve as the COFINA representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA (the "COFINA Agent").

d. The Oversight Board shall select the COFINA Agent from among the statutory creditors' committee that may be appointed in COFINA's title III case and at least two nominations made by the creditors and other interested stakeholders of COFINA listed on **Exhibit C**.

e. If the creditors on **Exhibit B** and/or **Exhibit C** fail to agree on two nominations, Oversight Board members Arthur J. Gonzalez and David A. Skeel shall select the Agent(s) after consulting with creditors and considering potential persons that had and had not been nominated.

f. Each Agent shall be entitled to retain legal and other professionals it reasonably deems appropriate.

  i. Each Agent and each of its retained advisors shall be compensated by the Debtor on whose behalf they are acting, in conformity with PROMESA section 316 and any interim compensation procedures ordered by the Court.

g. The Agents shall cooperate to commence the litigation to resolve the Commonwealth-COFINA Dispute by no later than ten (10) days after the Agents are appointed.  In advance of the commencement of such litigation, the Agents, the Oversight Board, and AAFAF shall agree to a schedule constructed to enable the Court to rule, on a final basis, on the Commonwealth-COFINA Dispute, on or before November 1, 2017, in the absence of a prior settlement. The order shall not impair or release any rights of the government or the Oversight Board under PROMESA or otherwise, including PROMESA section 305.

h. Each Agent shall endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents based on the Agent's estimation of the probabilities of the potential outcomes, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents, consistent with the approach explained by Chancellor Allen of the Delaware Chancery Court in *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, 1991 Del. Ch. LEXIS 215*108 n. 55 (Del. Ch. 1991),[7] and espoused in *Protective*

---

[7] Chancellor Allen's approach is quoted on **Exhibit D** hereto.

*Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414, 424-425 (1968).

i.   To the extent it is necessary or desirable to link a settlement to the treatment of
     creditors' claims in a title III plan of adjustment, the Oversight Board may
     participate in the negotiations in an effort to reach such a settlement.

j.   Any settlement negotiated by the Agents shall only be effective upon (i) consent
     of the Oversight Board, (ii) an order of the Court granting an Oversight Board
     motion requesting approval of such settlement, or (iii) confirmation of a title III
     plan of adjustment incorporating such settlement.

k.   Notwithstanding the appointment of Agents, the Oversight Board shall remain the
     only party authorized by PROMESA to propose a title III plan of adjustment, and
     to carry out that power and duty, the Oversight Board may, at any time, propose a
     title III plan of adjustment for the Commonwealth and/or COFINA that
     incorporates a settlement of the Commonwealth-COFINA Dispute developed by
     the Agents, or developed by the Oversight Board, and the Oversight Board may
     negotiate with creditors to achieve such settlement of the Commonwealth-
     COFINA Dispute.

39.   Nothing herein shall deprive AAFAF and the government of any standing and
other rights to appear that they have in any litigation relating to the Commonwealth-COFINA
Dispute or any other litigations.

## Notice

40.   The Debtors have provided notice of this Motion to the following parties (the
"Notice Parties"): (a) the Office of the United States Trustee for the District of Puerto Rico;
(b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on
the list of creditors holding the 20 largest unsecured claims against each Debtor; (d) the Office of
the United States Attorney for the District of Puerto Rico; (e) counsel to the Puerto Rico Fiscal
Agency and Financial Advisory Authority on behalf of the Governor of Puerto Rico; (f) the
Puerto Rico Department of Justice; (g) the Other Interested Parties;[8] and (h) all parties filing a

---

[8] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and
trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc
groups of holders of bonds issued or guaranteed by the Debtors.

notice of appearance in these Title III Cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

41.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

17

WHEREFORE the Debtors respectfully request the Court to enter an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the Motion, (b) approving the appointment of the Commonwealth Agent, (c) approving the appointment of the COFINA Agent, (d) approving procedures related thereto as described herein, and (d) granting the Debtors such other relief as is just and proper.

Dated: June 9, 2017
      San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for the Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board
as Representative for the Debtors*

## Exhibit A

**Proposed Order**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:                                                          PROMESA
                                                                Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of                        No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO, *et al.*   (Jointly Administered)

        Debtors.[1]

-------------------------------------------------------------x

**ORDER APPROVING**
**PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE**

    Upon the *Motion of Debtors for Order Approving Procedure to Resolve the Commonwealth-COFINA Dispute* (the "Motion");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

and any objections to the relief requested herein having been withdrawn or are overruled on the

merits; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY**

**ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Oversight Board may implement the following actions and procedures

relating to the Commonwealth-COFINA Dispute:

       a.   The Oversight Board, as representative of title III debtor Commonwealth of Puerto Rico pursuant to PROMESA section 315(b), shall appoint an independent agent serve as the Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of the Commonwealth (the "Commonwealth Agent").

       b.   The Oversight Board shall select the Commonwealth Agent from among the general statutory creditors' committee that may be appointed in the Commonwealth's title III case and at least two nominations made by the creditors of the Commonwealth listed on Exhibit B of the Motion.

       c.   The Oversight Board, as representative of title III debtor COFINA pursuant to PROMESA section 315(b), shall appoint an independent agent to serve as the COFINA representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA (the "COFINA Agent").

       d.   The Oversight Board shall select the COFINA Agent from among the statutory creditors' committee that may be appointed in COFINA's title III case and at least two nominations made by the creditors and other interested stakeholders of COFINA listed on Exhibit C of the Motion.

       e.   If the creditors on Exhibit B and/or Exhibit C of the Motion fail to agree on two nominations, Oversight Board members Arthur J. Gonzalez and David A. Skeel shall select the Agent(s) after consulting with creditors and considering potential persons that had and had not been nominated.

       f.   Each Agent shall be entitled to retain legal and other professionals it reasonably deems appropriate.

          i.   Each Agent and each of its retained advisors shall be compensated by the Debtor on whose behalf they are acting, in conformity with PROMESA section 316 and any interim compensation procedures ordered by the Court.

       g.   The Agents shall cooperate to commence the litigation to resolve the Commonwealth-COFINA Dispute by no later than ten (10) days after the Agents are appointed.  In advance of the commencement of such litigation, the Agents, the Oversight Board, and AAFAF shall agree to a schedule constructed to enable

the Court to rule, on a final basis, on the Commonwealth-COFINA Dispute, on or before November 1, 2017, in the absence of a prior settlement. This Order does not impair or release any rights of the government or the Oversight Board under PROMESA or otherwise, including PROMESA section 305.

h. Each Agent shall endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents based on the Agent's estimation of the probabilities of the potential outcomes, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents, consistent with the approach explained by Chancellor Allen of the Delaware Chancery Court in *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, 1991 Del. Ch. LEXIS 215*108 n. 55 (Del. Ch. 1991), and espoused in *Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968).

i. To the extent it is necessary or desirable to link a settlement to the treatment of creditors' claims in a title III plan of adjustment, the Oversight Board may participate in the negotiations in an effort to reach such a settlement.

j. Any settlement negotiated by the Agents shall only be effective upon (i) consent of the Oversight Board, (ii) an order of the Court granting an Oversight Board motion requesting approval of such settlement, or (iii) confirmation of a title III plan of adjustment incorporating such settlement.

k. Notwithstanding the appointment of Agents, the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment, and to carry out that power and duty, the Oversight Board may, at any time, propose a title III plan of adjustment for the Commonwealth and/or COFINA that incorporates a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute.

3.    Nothing herein shall deprive AAFAF and the government of any standing and other rights to appear that they have in any litigation relating to the Commonwealth-COFINA Dispute or any other litigations.

4.    The Debtors and the Oversight Board, as the Debtors' representative, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this order in accordance with the Motion.

5.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

Dated: _____, 2017
      San Juan, Puerto Rico

_____
Honorable Laura Taylor Swain
United States District Judge

4

## **Exhibit B**

List of Commonwealth Creditors and Stakeholders

1. Ad Hoc Group of GO Bondholders
2. Assured Guaranty
3. Financial Guaranty Insurance Co.
4. Syncora
5. UCC[1]

---

[1] To avoid overlap in nominations, only UCC members not otherwise accounted for on this list may provide a nomination on behalf of the UCC.

**<u>Exhibit C</u>**

List of COFINA Creditors and Stakeholders

1. UBS Family of Funds/Puerto Rico Family of Funds
2. Mutual Fund Group
3. COFINA Senior Bondholders
4. Ambac Assurance Corp.
5. National Public Finance Guarantee Corp

**Exhibit D**

Excerpt from Chancellor Allen's Opinion in
*Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*,
1991 Del. Ch. LEXIS 215*108 n. 55 (Del. Ch. 1991).

Chancellor Allen opined as follows:  "The possibility of insolvency can do curious things to
incentives, exposing creditors to risks of opportunistic behavior and creating complexities for
directors. Consider, for example, a solvent corporation having a single asset, a judgment for $
51 million against a solvent debtor. The judgment is on appeal and thus subject to modification
or reversal. Assume that the only liabilities of the company are to bondholders in the amount of
$ 12 million. Assume that the array of probable outcomes of the appeal is as follows:

Expected Value

| | |
|---|---|
| 25% chance of affirmance ($ 51mm) | $ 12.75 |
| 70% chance of modification ($ 4mm) | $ 2.8 |
| 5% chance of reversal ($ 0) | $ 0 |
| Expected Value of Judgment on Appeal | $ 15.55 |

        Thus, the best evaluation is that the current value of the equity is $ 3.55 million. ($ 15.55
million expected value of judgment on appeal $ 12 million liability to bondholders). Now
assume an offer to settle at $ 12.5 million (also consider one at $ 17.5 million). By what
standard do the directors of the company evaluate the fairness of these offers? The creditors of
this solvent company would be in favor of accepting either a $ 12.5 million offer or a $ 17.5
million offer. In either event they will avoid the 75% risk of insolvency and default. The
stockholders, however, will plainly be opposed to acceptance of a $ 12.5 million settlement
(under which they get practically nothing). More importantly, they very well may be opposed
to acceptance of the $ 17.5 million offer under which the residual value of the corporation
would increase from $ 3.5 to $ 5.5 million. This is so because the litigation alternative, with its
25% probability of a $ 39 million outcome to them ($ 51 million -- $ 12 million $ 39 million)
has an expected value to the residual risk bearer of $ 9.75 million ($ 39 million x 25% chance
of affirmance), substantially greater than the $ 5.5 million available to them in the settlement.
While in fact the stockholders' preference would reflect their appetite for risk, it is possible
(and with diversified shareholders likely) that shareholders would prefer rejection of both
settlement offers.

        But if we consider the community of interests that the corporation represents it seems
apparent that one should in this hypothetical accept the best settlement offer available
providing it is greater than $ 15.55 million, and one below that amount should be rejected. But
that result will not be reached by a director who thinks he owes duties directly to shareholders
only. It will be reached by directors who are capable of conceiving of the corporation as a legal
and economic entity. Such directors will recognize that in managing the business affairs of a
solvent corporation in the vicinity of insolvency, circumstances may arise when the right (both
the efficient and the fair) course to follow for the corporation may diverge from the choice that
the stockholders (or the creditors, or the employees, or any single group interested in the
corporation) would make if given the opportunity to act."