IN THE UNITES STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In Re Commonwealth of P.R.        17-01578

**MOTION TO INTERVENE AND REQUESTING DECLARATORY JUDGMENT**

TO THE HONORABLE BANKRUPTCY COURT (HBC):

Comes now the putative Intervenor, appearing here Pro Se (PS) and In Forma Pauperis (IFP) and respectfully States, Alleges and Prays.

1. That this same putative intervenor back on October 14, 2015, timely filed at the Tribunal of First Instance (TFI), Superior Court of San Juan (SCSJ), a Complaint and Declaratory Judgment Petition (CDJP), naming as Defendants all the ex-governors of Puerto Rico (P.R.) from 1985-2012, its Senators, Representatives, Secretaries of Justice and Treasury; all the Directors and Officers (D's and O's) of the Board of Directors (BD's) of the Government Development Bank (GDB), and all the public corporations and entities that issued debt guaranteed by the full faith and credit of the Government of P.R. during same period; the insurance companies that covered the public liability exposure of all the D's and O's of all these BD's; all the D's and O's of all the BD's of all the brokerage firms, banking and/or financial firms, insurance firms, law firms and all the D's and O's of all the insurance companies that covered the public liability exposure of the D's and O's of all the BD's of all of the above for their wrongful and negligent conduct in having been derelict in their ethical, fiduciary, ministerial and legal duties when accepting, acquiescing, approving, buying, condoning,

1

contracting, granting, guaranteeing, issuing, selling, and/or in any other way or manner having been involved in the issuance of debt by the Government of P.R, contrary to and in excess of the limits prescribed in Section 2 of the Article VI of the Constitution of P.R.; that expressly, explicitly and specifically prohibited the issuance of debt in excess of fifteen (15%) percent of the average of the collections of taxes for the previous two years of any issuance. See Exhibit 1.

2. That same CDJP was dismissed without prejudice because I could not come up with legal representation in the time-span the Honorable Judge of the HTPI-SCSJ had ordered. I timely appealed that ruling and it is presently still sub judice at the Honorable Appellate Tribunal of P.R.(HATPR) and a second Mandamus Petition has been filed before the Honorable Supreme Tribunal of P.R. (HSTPR) urging that forum to order the HTAPR to decide the motion for reconsideration pending.

3. That additionally, I timely filed before the HSTPR a Motion for that higher forum to assume jurisdiction on first instance over the legal recourse due to its extreme importance and relevance for the People of P.R., but it was nonetheless denied without reasons.

4. That soon after, I timely filed a Motion To Intervene And Requesting Declaratory Judgment (MIRDJ) before the Honorable U.S. District Court for the District of P.R. (HUSDCDPR), in the Assured Guaranty Corp. Et Al. v. Garcia Padilla, Et Al, 16-01073(FAB) civil action, incorporating as an integral part of same MIRDJ the Complaint I had filed before the HTPI-SCSJ.

2

5. The HUSDCDPR promptly denied same and I timely appealed to the Honorable U.S. Court of Appeals for the First Circuit (HUSCA1C), where it was docketed as 16-2208, and is presently sub judice after that forum ordered and received the appellate briefs of all the parties.

6. That later I filed an amended MIRDJ in the Lex Claims LLC. Et Al. v. Garcia Padilla, Et Al. then, now Financial Oversight and Supervisory Board, Et Al, Et Al, 16-02374 (FAB) civil action, also incorporating as an integral part of same MIRDJ the Complaint I had filed before the HTPI-SCSJ. It was also denied by the Honorable Judge Besosa and timely appealed to the HUSCA1C which docketed it as 17-1337 and which is also sub judice. Actually, on May 17, 2017 the HUSCA1C issued a briefing schedule Order in said appeal only to recant on March 19, 2017 without any reason(s).

7. That as this Honorable Judge Laura Taylor Swine must by now have learned, the residents of P.R. have been all negatively affected by the illegally, recklessly and wantonly issuance of debt of billions of dollars without a source of repayment by officers of the Government of P.R. and from public and private entities whose D's and O's were all derelict in their ethical, fiduciary, ministerial and legal duties after having confederated and aided and abetted the first ones with the second ones in a conspiracy to violate the civil rights of the residents of P.R. See 42 U.S.C. 1985 and 42 U.S. C.1986.

8. These government and non-government officials, all named Defendants in my Complaint incorporated as an integral part of my timely filed MTIRDJ in the civil actions mentioned above, most of them lawyers, knew or should

3

had known that the recklessly and wantonly issuance of the debt we the residents of this otherwise archipelago have been paying and are unjustly supposed to continue paying for the next scores and scores of years, was issued in violation of section 2 of Article VI of the Constitution of P.R..

9. Same section should not be legally underestimated and undervalued since it came about as a result of an amendment to the Constitution of P.R. which after having been most appropriately and consciously drafted and proposed to the U.S. Congress by the People of P.R. through its Legislature, was pre-approved and pre-authorized by the U.S. Congress by way of Public Law 87-121 of August 3, 1961, where the U.S. Congress explicitly, expressly and specifically consented that same amendment in fact amended section 3 of the Federal Relations Act or Public Law 600 of 1950 once and if a majority of the Puerto Rican People voted in favor of same in a referendum that was approved by the Puerto Rican Legislature on September 29, 1961 and held on December 10, 1961 where it was approved by a humongous eighty two (82.8%) percent.

10. On its pertinent and relevant text to the legal issues at stake here, Public Law 87-121 of August 3, 1961 mandated and ordered ad verbatim:

Public Law 87-121

JOINT RESOLUTION

To provide for amending section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458).

August 3, 1961
[H. J. Res. 124]

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458), is amended by deleting therefrom the following language: "*Provided, however,* That no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Rio Piedras and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," and "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted."

Puerto Rican Federal Relations Act, amendment. 50 Stat. 843. 48 USC 745.

Sec. 2. Section 1 of this Act shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth).

Effective date. Public referendum. 48 USC 731d note.

Approved August 3, 1961.

11. As thou may be able to corroborate, Section 1 of this Public Act 87-121 explicitly, expressly and specifically provided for the amending of section 3 of the Puerto Rican Federal Relations Act. After so providing, in Section 2 of this Public Act 87-121 of the U.S. Congress, mandated and ordered that if and when in a referendum for these effects convened by the Government of P.R., the majority of the People of P.R were to "as proposed in the concurrent resolution of the legislative assembly of the Commonwealth voted in favor of this constitutional amendment, approve its text "limiting the debt-incurring capacity of the Commonwealth and its municipalities," same

5

would become the law of the land, in P.R. as a result of the amendment to the Constitution of P.R. and in the U.S. of A., as a result of the its preapproval and preauthorization by the U.S. Congress by way of this Public Law 87-121.

12. If thy Honor may have some of your precious time to see my Complementary Motion To Motion To Intervene And Requesting Declaratory Judgment in the Lex Claims civil action, 16-02374(FAB) of March 15, 2017 (Exhibit 2),where the historical and legal track record of all the U.S. Congress legislation on this theme are illustrated, thou will be able to find and corroborate, that as logic and reason dictate, the members of the U.S. Congress since the beginning of their first experience with one of their first colonies such as P.R. was, were careful enough and acted with due diligence and administrative and managerial fiducia when dealing with the resources of their new colony. See Foraker Act of 1900, the Jones-Shaffroth Act of 1917 and the Federal Relations act of 1950 provisions in this vein.

13. It is only logical and reasonable to infer that the members of the U.S Congress and of all the branches of the then emerging and incipient Empire if you prefer, were not going to acquiesce and condone, much less legally issue a blank check or authorize a carte blanche to the administrators and managers of their most precious colony or new jewel of the Crown as it used to be said, to maladminister and mismanage same colony, irresponsibly and recklessly not only because it did not make any sense, but balso ecause the new empire could run the risk of ending having to pay the tab, as it may happen now depending upon the final fate of this litigation.

6

14. It would be another matter for thyself to rule afterwards, who is going to respond for what percentage of the tab for their wrongful and negligent conduct in the issuance of the debt in excess of the Constitutional limits among all the Defendants in my Complaint hereby made and integral part of this Motion. See Proposed Appeal Brief in 17-1337 at the HUSCA1C. Exhibit 3.

15. For all the above reasons, I respectfully pray to thy Honor, that you take and admit this MIRDJ filed in good faith, that you consider and evaluate same thoroughly and thoughtfully, and after having done so, that you grant same and accord the facts, the evidence, the controlling jurisprudence, your judicial discretion and the sense of Justice that precedes thou; accordingly thou proceed to issue the declaratory judgment requested, ruling that all the debt that was issued against and contrary to the letter and the spirit of the Public Law 87-121 of the U.S. Congress and as its concomitant, of the section 2 of Article VI of the Constitution of P.R. is unconstitutional, and ergo, illegal and null ab initio. In addition all the debt that was issued with a repayment schedule of over thirty (30) years should also be declared null and/or void ab initio since it was also prohibited by same Section 2 of Article VI of the Constitution of P.R.

So I State, Allege and Pray, Respectfully submitted, June 5, 2017.

Angel Ruiz Rivera
Putative Intervenor/Interested Party Pro Se and IFP
Ext. Villa Rica
AA-27 Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.