## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**CENTRO DE PERIODISMO INVESTIGATIVO**

    Plaintiff

v.

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

    Defendant

CIVIL NO. 2017-

COMPLAINT FOR DECLARATORY RELIEF; PRELIMINARY AND PERMANENT INJUNCTION; MANDAMUS

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"To permit the government to manage public affairs under the mantle of secretiveness is to invite arbitrary actions, poor administration, governmental indifference, public irresponsibility and corruption. A citizenry which is alert and militant against these potential evils of all government machinery can perform its fiscalizing function only if it has possession of the information which will permit it to discover the potential dangers in a timely manner and demand responsible action. To deprive the citizenry of this information is equivalent to producing an aggravated collective paralysis attributable to civil myopia of a citizenry which knows only part of the actions of its government or knows only half-truths related thereto."

> Efrén Rivera Ramos, *La libertad de información: Necesidad de su reglamentación en Puerto Rico,* 44 REV. JUR. UPR 67, 69 (1975) (translation provided)

**TO THE HONORABLE COURT:**

NOW COMES the plaintiff **CENTRO DE PERIODISMO INVESTIGATIVO,** *(hereinafter "CPI")* represented by the undersigned attorneys and respectfully states and prays as follows:

1

## I. <u>INTRODUCTION</u>

1.1 This action for declaratory, injunctive and mandamus relief seeks access to information necessary to inform the citizenry of the workings of the government of Puerto Rico and to allow citizens to make informed decisions about their future.

1.2 This **action is** brought before this court pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and the All Writs Act, 28 U.C. §1651, well as the specific jurisdictional provisions of the "Puerto Rico Oversight, Management and Economic Stability Act of 2016.

1.3 Plaintiff **Centro de Periodismo Investigativo ("CPI")** is a non-profit organization dedicated to investigative reporting, access to information litigation and journalist's training, as ways to obtain information necessary for the people of Puerto Rico to make informed decisions and better understand the realities of the current climate, wherein determinations are being made behind closed doors, or by people who have not been elected by the people of Puerto Rico.

1.4 Through this action, the **CPI** seeks access to documents which are within the power and possession of the **Financial Oversight and Management Board of Puerto Rico** (hereinafter, *the Junta,* for its Spanish first name), an organism promulgated by the United States Congress, which granted *the Junta* plenary powers in Puerto Rico, including the power to supersede many actions taken by

2

Puerto Rico officials elected by the citizenry.

1.5 **CPI** has previously made requests to the **Junta** for the documents sought through this action, but the **Junta** has either ignored the requests or provided inadequate or incomplete documentation through its website.

1.6 The actions of the **Junta** violate the Constitution of Puerto Rico, which guarantees access to government documents and information.

1.7 The granting of the relief sought herein will advance the interest of the people of Puerto Rico, who have a right to know the events which will affect their daily lives and the future of Puerto Rico.

1.8 The plaintiff is seeking solely declaratory, injunctive and mandamus relief, requesting access to information.  No damages are sought herein.

1.9 Accordingly, the current action bears no relationship to the recent "Petition for Covered Territory or Covered Instrumentality," presented by the Commonwealth of Puerto Rico on May 3, 2017 pursuant to Title III of the "Puerto Rico Oversight Management and Stability Act" or "PROMESA," hereinafter referred to as the "Law Creating the Junta." *See, Case No. 17-01578, before Judge Laura Taylor Swain, appointed by the Chief Judge of the United States of America.*

## II. JURISDICTION

2.1 The jurisdiction of this court is invoked pursuant to Law Creating the

3

Junta, which in its Section 106, 48 U.S.C. §2126, provides in relevant part that "...

any action against the Oversight Board .... shall be brought in a United States

district court for the covered territory..." (i.e Puerto Rico).

2.2 This is an action "against the Oversight Board" (otherwise known as the

"**Junta**").

2.3  Jurisdiction is also founded on the All Writs Act, 28 U.S.C. §1651(a),

which provides for all courts established by Act of Congress to issue writs

necessary or appropriate in aid of their respective jurisdictions and agreeable to

the usages and principles of law, including the Writ of Mandamus.

2.4 Venue is proper in this court pursuant to the above-cited Section 106.

### III. PARTIES

<u>The Centro de Periodismo Investigativo</u>

3.1 The plaintiff **Centro de Periodismo Investigativo ("CPI")** is a non-profit

organization which was founded in 2007.

3.2 It is a news organization which engages in investigative journalism and

has won more than 15 national awards for its work in this field.

3.3 The **CPI** has a website, www.periodismoinvestigativo.com, where

citizens *inter alia* can access its investigative pieces, and which is visited by some

500,000 unique users on an annual basis.

4

3.4 Since its inception, the **CPI** has published articles which are available for free to interested readers and which have been reproduced by more than 25 other news media outlets in Puerto Rico, the United States and beyond.

3.5 In addition to its work as a news medium, the **CPI** has two other important missions: to assure that the citizens of Puerto Rico have access to the information they require to exercise their basic rights as citizens, and to monitor "fiscalizar" those governmental bodies which make decisions affecting the rights and the future of the public.

3.6 These two areas of work are related to litigation to assure proper access to information, and education and training of both professionals in the field of journalism and lay-people as to the right to access to information and the methods for assuring compliance with these rights.

3.7 Among the employees, contractors and Board members of the **CPI** are dedicated journalists and attorneys who engage in work designed to assuring that the citizenry in Puerto Rico has access to the information necessary to the exercise of democratic rights.

3.8 As stated on its website, "the **CPI** recognizes that the fundamental requirement for a true democracy is that the citizenry be well informed ..."  The CPI engages in work to avoid the citizens being "ill informed, unaware of

important truths, and limited in their capacity to democratically monitor those who hold power. Being convinced that these tendencies have to be combated, this is the vision that nourishes the **CPI** and all of its work." (Translation supplied)

3.9 "With this vision in mind, [the **CPI**] was organized as an autonomous non-profit entity, which allows it to act with independence from political and commercial interests." (*Id., Translation supplied*).

## The Financial Oversight and Management Board for Puerto Rico

3.10 The Financial Oversight and Management Board for Puerto Rico ("the **Junta"**) was created by virtue of the provisions of the "Puerto Rico Oversight, Management, and Economic Stability Act," Public Law 114-187, approved by the 114th Congress of the United States on June 30,2016, and signed by then President Barack Obama. *48 U.S.C. §2121(b)(1)*.

3.11 The **Junta** was established pursuant to Congress's invocation of its power under Article IV §3 of the Constitution of the United States, commonly known as the Territorial Clause. This Clause grants plenary power to the Congress of the United States to dispose of and make all "needful Rules and Regulations" for the territory held by the United States.

3.12 According to Public Law 114-187, "the purpose of the Oversight Board is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access

6

to the capital markets." *48 U.S.C §2121(a)*.

3.13 Public Law 114-187 provides that the **Junta** is to be considered "an entity within the territorial government for which it is established..." (i.e. Puerto Rico), *48 U.S.C §2121(c)(1)*, and all expenses of the Junta are paid for by the Government of Puerto Rico. *48 U.S.C §2127(b)*.

3.14 Congress has provided that the **Junta** "shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government." *48 U.S.C §2121(c)(2)*.

3.15 The seven members of the **Junta** were all appointed by the President of the United States. Two members of the **Junta** were selected from a list submitted by the Speaker of the House of Representatives, Paul Ryan. Two were selected from a list submitted by the Majority Leader of the Senate, Mitch McConnell. Two others were selected from a list submitted by the Minority Leader of the House of Representatives, Nancy Pelosi, and two were selected from a list submitted by the Minority Leader of the Senate of the United States, Harry Reid. The final member was selected by then President Barack Obama. *See, 48 U.S.C §2121(e)*

3.16 The Governor of Puerto Rico is an *ex officio* member of the Junta, without any voting rights. *48 U.S.C §2121(e)(3)*.

3.17 Among other things, the **Junta** has the power to "secure copies,

7

whether written or electronic, of such records, documents, information, data or metadata from the territorial government (Puerto Rico) necessary to enable the Oversight Board to carry out its responsibilities ... At the request of the Oversight Board [it[ shall be granted direct access to such information systems, records, documents, information or data as will enable [it] to carry out its responsibilities under this Act." *48 U.S.C §2124(c ).*

## IV. FACTS

4.1 For the first several months after Public Law 114-187 was passed, there was a lengthy process of selecting the members of the **Junta**.

4.2. After the **Junta's** members were selected, it held its first meeting in the City of New York on September 30, 2016, where the President of the **Junta** was selected and its By-laws were adopted.

4.3 Although the September 30th meeting was open to the public, the determinations reached therein had been previously agreed to by the **Junta.**

4.4 As part of the first public meeting of the **Junta** on September 30, 2016, the President of the Junta, José Carrión stated during the press conference that the members of the Junta had gone through a "rigorous process" with the United States Department of the Treasury, prior to their selection as members of the Junta, during which they submitted financial disclosure and conflict of interest

documents.

4.5 During that same meeting, the **Junta** requested the Government of Puerto Rico a number of documents, including the following:

a. Weekly cash flow reports, including all revenues received and all expenses paid (including any debt service) and broken down by main categories;

b. Monthly downloads of bank account data and statements of all principal banking accounts (provided directly to the Board of each bank);

c. Monthly and year to date report of compliance with the current approved budget by budgetary fund and by agency (including local special funds and federal funds);

d. Monthly and year to date detailed report on revenues and a narrative about collection efforts and main initiatives of the Puerto Rico Treasury Department;

e. Monthly detailed payroll reports by agency;

f. Monthly reports on federal funds received and disbursed by area and by agency;

g. Monthly reports of all debt obligations due this current fiscal year and which have been paid; and

h. Quarterly report on each agency's productivity and performance with

appropriate metrics and a narrative description.

i. Quarterly report on key Puerto Rico economic, financial, social and labor statistics.

4.6  On October 24, 2017, the **Junta** contracted the services of **Forculus PR** (also known as **Forculus Strategic Communications**), a firm specializing in communications, public relations and media management services, with a Resident Agent in the Beverly Hills sector in Puerto Rico.

4.7 This firm, whose employees and/or contractors include Edward Zayas and José Cedeño, was hired by the Junta to *inter alia* develop and market the "reputation (branding) of the **Junta** and its members." (Parenthesis in the original).

4.8 As set forth in the website for **Forculus PR,** this firm has performed communications, public relations and media management services for the Government of Puerto Rico, including the Government Development Bank of Puerto Rico, and its "Public-Private Partnership Arm, the Puerto Rico Industrial Development Company" (Fomento), as well as "the Office of the Governor of Puerto Rico and the Office of Management and Budget."

4.9 In communications with José Cedeño, the **CPI** was informed that all press requests had to be made through Forculus, PR using official emails jcedeno@forculuspr.com and ezayas@forculuspr.com.

4.10 At all times relevant to this complaint and as to the matters set forth herein, **Forculus PR,** and its agents, including employees and/or contractors Edward Zayas and José Cedeño, acted as agents of the Junta.

4.11 On November 16, 2016, Joel Cintrón Arbasetti, a reporter with the **CPI**, made a request to Edward Zayas, of **Forculus, PR**, to be given to access to any and all of the documents listed in ¶4.5 above, which were supposed to be provided by the Government of Puerto Rico to the Junta.

4.12 Since September 30, 2016, Carla Minet, a veteran journalist who is the Executive Director of the **CPI**, requested the federal Office of Government Ethics (OGE) to provide the **CPI** with all financial disclosure and conflict of interest documents which the seven members of the Junta were supposed to submit during their evaluation process. Ms. Minet also submitted the request to the United States Department of Treasury and to The White House, as suggested by **Junta** President Carrión and the OGE.

4.13 Ms. Minet was informed by the OGE on a follow-up phone conversation that the documents had to be requested from the **Junta**, rather than from the federal agencies.

4.14 On December 12, 2016, Ms. Minet directed an email to Edward Zayas and José Cedeño of **Forculus PR**, in which, on behalf of the **CPI**, she requested all

11

financial disclosure and conflict of interest documents which the seven members of the Junta submitted to the United States Department of Treasury, as stated by Junta President Carrión during the September 30th meeting referenced at ¶¶4.2 – 4.4 above.

4.15 Ms. Minet indicated to Messrs. Zayas and Cedeño that a prompt response was required, since the **CPI** was working on a news article for which the information was required.

4.16 On that same day, Mr. Cedeño responded to Ms. Minet that her request would be "processed" and that a response "would be offered as soon as possible." (Translation provided).

4.17 Subsequent emails with respect to these matters yielded no response from the **Junta**.

4.18 On February 9, 2017, **CPI** Executive Director Carla Minet did additional follow-up with respect to the requests made on November 16, 2016 by **CPI** reporter Joel Cintrón Arbasetti.

4.19   At that time, Ms. Minet also followed up with respect to a separate communication which had been sent on December 12th, 2016, wherein Ms. Minet solicited additional documents and information from the **Junta**, via Edward Zayas, from **Forculus PR**.

4.20  The documents requested in the February 9th communication included the following: (a) records relating to communications, inquiries or requests for information, documents, reports or data by any member of the **Junta** and/or its staff to any agency of the federal government or federal government official, or by the federal government, its agencies or staff, to the **Junta**; (b) communications, reports, consultations, updates, documents or information provided by any member of the **Junta** and/or its staff to La Fortaleza, its officers, or any other agency or official of the Government of Puerto Rico, or by the Government of Puerto Rico to the **Junta**, its members or staff; (c) contracts granted by the **Junta** to private entities (also originally requested on November 11, 2016); (d) protocols, regulations, manuals or memorandums generated by the **Junta** to conduct its work; and (e) minutes of meetings held by the **Junta** and its committees or its members.

4.21 On or about February 28, 2017, the **Junta** published on its website certain financial information forms regarding the individual members of the **Junta**. The documents of the seven board members were dated in February 2017.

4.22 On the following day, March 1, 2017, Ms. Minet, on behalf of the CPI, directed a number of questions to the Junta regarding the documents published on the website.

4.23  In her March 1st email to Edward Zayas, of **Forculus PR**, Ms. Minet requested *inter alia* the following information: whether the published documents were the same ones submitted to the U.S. Department of the Treasury, as part of the "rigorous process" referred to by **Junta** President José Carrión in the meeting in New York on September 30, 2016, as set forth in ¶¶4.2 to 4.4 above; to which agency the documents were submitted; why there was missing information on the documents, including but not limited to the signatures of the Ethics official, salary information for some of the Junta member, and financial information concerning spouses of the Board members.

4.24  Ms. Minet indicated to Mr. Zayas that the inquiries were urgent, since the information was needed for a deadline for publication later that day.

4.25  To date, neither **Forculus PR** nor the Junta has provided any substantive response to the inquiries and document requests set forth at ¶¶4.5 and ¶¶4.11-4.21 above.[11]

4.26  To date, the **CPI** has received no response to the inquiries made in Ms.

---

[11]  On February 10th, 2017, the CPI received from the Commonwealth of Puerto Rico certain documents, in response to similar requests for information which had been directed to the Commonwealth itself.  The documents are as follows: Letter to Governor and to newly elected Governor, December 20, 2016; Press Communiqué of the Junta, January 18, 2017; Letter from the Junta to Governor Rosselló, January 18, 2017; Press Communiqué, January 20, 2017; Letter from Governor Rosselló a the Junta, January 21, 2017; Letter from Governor Rosselló to the Junta, January 23, 2017;  Liquidity Plan, January 28, 2017; Puerto Rico fiscal update, January 28, 2017;  Debt service payments, February 1, 2017; Letter from the Junta to Elías Sánchez, February 7, 2017.  With the exception of the document related to debt service payments, all of these documents can be found on the website of the Junta.

Minet's email of March 1, 2017.

## V. CAUSE OF ACTION

5.1  In declarations made when he announced the appointment of the seven members to the **Junta,** then President Barack Obama stated that "[i]n order to be successful, the Financial Oversight and Management Board will need to establish an open process for working with the people and Government of Puerto Rico... [in order to build] a better future for all Puerto Ricans."

5.2 Since the Junta is not considered a federal organism, but rather is "an entity within the territorial government for which it is established..." (i.e. Puerto Rico),*48 U.S.C §2121(c)(1)*, and all expenses of the Junta are paid for by the Government of Puerto Rico, *48 U.S.C §2127(b)*, the Constitution and laws of the Commonwealth of Puerto Rico apply to its operations.

5.3 Pursuant to Section 4 of the "Puerto Rico Oversight, Management, and Economic Stability Act," *48 U.S.C §2103*, Puerto Rico law applies with respect to the operation of the Junta, as long as it is not "inconsistent with [the] Act."

5.4 There is nothing inconsistent between the right of access to information and the Act establishing the Junta.

5.5  In point of fact, providing access to the requested documents would further the purpose of the Financial Oversight and Management Board, as publicly

15

stated by the then President of the United States, Barack Obama, set forth in ¶5.1 above.

5.6  Under the Constitution of Puerto Rico, there exists an undisputed right of the people to access information produced or in the power of the Government of Puerto Rico.

5.7 This right derives from the Constitution of Puerto Rico and is considered a fundamental human right.  *See, for example,* Trans Ad PR v. Junta Subastas, 174 DPR 56, 67 (2008); Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007); Ortiz v. Dir. Adm. Tribunales, 152 DPR 161, 175 (2000).

5.8 The Supreme Court of Puerto Rico has observed that this right is a critical component of the rights of free speech, free press and freedom of association set forth explicitly in the Bill of Rights, Article II of the Constitution of the Commonwealth of Puerto Rico.  *See, eg.,* Soto v. Srio. Justicia, 12 P.R. Offic. Trans. 597, 607-608 (1982).

5.9 As expressed by the Puerto Rico Supreme Court, access to information constitutes an important component of a democratic society, in which the citizen can issue an informed judgment regarding the actions of the government. Colón Cabrera, 170 DPR at 590. The right to redress grievances is also implicated, in that without knowledge of the facts, one cannot judge, nor demand remedies with

16

respect to grievances against the government either through judicial or electoral processes.

5.10  Given the importance of this right under the Constitution of Puerto Rico, the Government cannot deny access to documents capriciously.

5.11 The **Junta**, as an organism "within" the government of Puerto Rico, has a ministerial duty to comply with the Constitution of Puerto Rico with respect to the public nature of the information and documents sought herein.

5.12 The critical role of the press in guaranteeing access to information has also been recognized in the Constitutional law of Puerto Rico. "[T]he press constitutes a vehicle of information and opinion to inform and educate the public, to offer criticism, to provide a forum for discussion and debate, and to act as a surrogate to obtain for readers news and information that individual citizens could not or would not gather on their own." Santiago v. Bobb y El Mundo, 17 P.R. Offic. Trans. 182, 190 (1986) (*citing* B. F. Chamberlain & J. Brown, *The First Amendment Reconsidered* 110, New York, Longman (1982)).

5.13 The right of access to information is also codified in Article 409 of the Código de Enjuiciamiento Civil, 32 LPRA § 1781 (2015), which provides for access to "public documents" in Puerto Rico.

5.14  To date, the Junta has held seven (7) public meetings on the following

17

dates: October 14, 2016 (New York); November 18, 2016 (Fajardo, Puerto Rico); January 28, 2017 (Fajardo, Puerto Rico); March 13, 2017 (New York); March 31, 2017 (San Juan, Puerto Rico); and April 28, 2017 (New York).

5.15 Other than the brief public sessions, largely to reaffirm decisions already made, and the placement of some selected documents on its website, the **Junta** has not provided the citizenry of Puerto Rico with substantive access to the proceedings of the **Junta**, which take place behind closed doors.

5.16 The **Centro de Periodismo Investigativo** has attempted to obtain documents which are critical for providing the citizens of Puerto Rico with the access to information guaranteed under the Constitution and Laws of Puerto Rico and to allow the CPI, as important and respected news organization, to provide information to the citizens regarding the operations of the **Junta**.

5.17 These efforts by the **CPI** have been met with stonewalling on the part of the **Junta** and its designated marketing and branding group. **Forculus PR.**

5.18 Access to the information requested by the CPI is essential to assure an informed citizenry and the validation of the rights existing under the Constitution and laws of Puerto Rico.

5.19 The aforementioned rights apply to the **Junta**, as they are not inconsistent with Law 114-187.

18

5.20 Since Congress designated the Junta not only to be paid for by the people of Puerto Rico, but also to be an entity "within" the government of Puerto Rico, the Constitution and laws of the Commonwealth of Puerto Rico apply to the Junta.

5.21   There is no adequate remedy at law to address the fundamental constitutional harms for which redress is sought herein.

5.22 The citizens of Puerto Rico and the population served by the investigative and reporting work done by the CPI will be irreparably harmed if the relief requested herein is not granted.

5.23   The public interest will be served by the granting of the relief requested herein, be it in the form of injunctive relief or through the issuance of a writ of Mandamus.

5.24 Mandamus is an appropriate writ to assure that **Junta** exercises its ministerial duty to assure compliance with the Constitution and laws of Puerto Rico.

WHEREFORE, the plaintiff **Centro de Periodismo Investigativo** hereby requests the following relief:

1. A Declaratory Judgment that the actions of the Junta in effectively denying access to the documents and information set forth in ¶¶4.4 to 4.26 above.

19

2. Issue a preliminary injunction and a permanent injunction ordering the **Junta** to deliver to the **Centro de Periodismo Investigativo** the following documents:

a. Weekly cash flow reports, including all revenues received and all expenses paid (including any debt service) and broken down by main categories;

b. Monthly downloads of bank account data and statements of all principal banking accounts (provided directly to the Board of each bank);

c. Monthly and year to date report of compliance with the current approved budget by budgetary fund and by agency (including local special funds and federal funds);

d. Monthly and year to date detailed report on revenues and a narrative about collection efforts and main initiatives of the Puerto Rico Treasury Department;

e. Monthly detailed payroll reports by agency;

f. Monthly reports on federal funds received and disbursed by area and by agency;

g. Monthly reports of all debt obligations due this current fiscal year and which have been paid; and

h. Quarterly report on each agency's productivity and performance with

appropriate metrics and a narrative description.

i. Quarterly report on key Puerto Rico economic, financial, social and labor statistics.

j. All financial statements and other financial and conflict of interest submissions made by the members of the Junta prior to their designations or subsequent thereto.

k. Records relating to communications, inquiries or requests for information, documents, reports or data by any member of the **Junta** and/or its staff to any agency of the federal government or federal government official, or by the federal government, its agencies or staff, to the **Junta**;

l. Communications, reports, consultations, updates, documents or information provided by any member of the Board and/or its staff to La Fortaleza, its officers, or any other agency or official of the Government of Puerto Rico, or by the Government of Puerto Rico to the **Junta**, its members or staff;

m. Contracts granted by the **Junta** to private entities;

n. Protocols, regulations, manuals or memorandums generated by the **Junta** to conduct its work;

o. Minutes of meetings held by the **Junta**, its committees or its members;

p. Complete financial disclosure forms for all **Junta** members.

21

3. Issue a Writ of Mandamus requiring the **Junta** to comply with its ministerial duty to provide the information and documents set forth in the previous paragraph.

4. Issue whatever other relief this court deems just and appropriate.

In San Juan Puerto Rico, this 1st day of June, 2017.

*Respectfully Submitted*

*Berkan/Mendez*
*Calle O'Neill G-11*
*San Juan, Puerto Rico 00918-2301*
*Tel.: (787) 764-0814*
*Fax.: (787)250-0986*
*bermen@prtc.net*

By: /s/ Judith Berkan
Judith Berkan
US DC No. 200803
berkanj@microjuris.com

/s/ Steven Lausell Recurt
Steven Lausell Recurt
USDC No. 226402
slausell@gmail.com
(787) 751-1912

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CENTRO DE PERIODISMO INVESTIGATIVO**<br><br>　　Plaintiff<br><br>**v.**<br><br>**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**<br><br>　　Defendant | CIVIL NO. 2017-<br><br>COMPLAINT FOR DECLARATORY RELIEF; PRELIMINARY AND PERMANENT INJUNCTION; MANDAMUS |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"To permit the government to manage public affairs under the mantle of secretiveness is to invite arbitrary actions, poor administration, governmental indifference, public irresponsibility and corruption. A citizenry which is alert and militant against these potential evils of all government machinery can perform its fiscalizing function only if it has possession of the information which will permit it to discover the potential dangers in a timely manner and demand responsible action. To deprive the citizenry of this information is equivalent to producing an aggravated collective paralysis attributable to civil myopia of a citizenry which knows only part of the actions of its government or knows only half-truths related thereto."

> Efrén Rivera Ramos, *La libertad de información: Necesidad de su reglamentación en Puerto Rico,* 44 REV. JUR. UPR 67, 69 (1975) (translation provided)

**TO THE HONORABLE COURT:**

NOW COMES the plaintiff **CENTRO DE PERIODISMO INVESTIGATIVO,** *(hereinafter "CPI")* represented by the undersigned attorneys and respectfully states and prays as follows:

1

# I. <u>INTRODUCTION</u>

1.1 This action for declaratory, injunctive and mandamus relief seeks access to information necessary to inform the citizenry of the workings of the government of Puerto Rico and to allow citizens to make informed decisions about their future.

1.2 This **action is** brought before this court pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and the All Writs Act, 28 U.C. §1651, well as the specific jurisdictional provisions of the "Puerto Rico Oversight, Management and Economic Stability Act of 2016.

1.3 Plaintiff **Centro de Periodismo Investigativo ("CPI")** is a non-profit organization dedicated to investigative reporting, access to information litigation and journalist's training, as ways to obtain information necessary for the people of Puerto Rico to make informed decisions and better understand the realities of the current climate, wherein determinations are being made behind closed doors, or by people who have not been elected by the people of Puerto Rico.

1.4 Through this action, the **CPI** seeks access to documents which are within the power and possession of the **Financial Oversight and Management Board of Puerto Rico** (hereinafter, *the Junta,* for its Spanish first name), an organism promulgated by the United States Congress, which granted *the Junta* plenary powers in Puerto Rico, including the power to supersede many actions taken by

Puerto Rico officials elected by the citizenry.

1.5 **CPI** has previously made requests to the **Junta** for the documents sought through this action, but the **Junta** has either ignored the requests or provided inadequate or incomplete documentation through its website.

1.6 The actions of the **Junta** violate the Constitution of Puerto Rico, which guarantees access to government documents and information.

1.7 The granting of the relief sought herein will advance the interest of the people of Puerto Rico, who have a right to know the events which will affect their daily lives and the future of Puerto Rico.

1.8 The plaintiff is seeking solely declaratory, injunctive and mandamus relief, requesting access to information.  No damages are sought herein.

1.9 Accordingly, the current action bears no relationship to the recent "Petition for Covered Territory or Covered Instrumentality," presented by the Commonwealth of Puerto Rico on May 3, 2017 pursuant to Title III of the "Puerto Rico Oversight Management and Stability Act" or "PROMESA," hereinafter referred to as the "Law Creating the Junta." *See, Case No. 17-01578, before Judge Laura Taylor Swain, appointed by the Chief Judge of the United States of America.*

## II. JURISDICTION

2.1 The jurisdiction of this court is invoked pursuant to Law Creating the

3

Junta, which in its Section 106, 48 U.S.C. §2126, provides in relevant part that "...
any action against the Oversight Board .... shall be brought in a United States
district court for the covered territory..." (i.e Puerto Rico).

2.2 This is an action "against the Oversight Board" (otherwise known as the
"Junta").

2.3 Jurisdiction is also founded on the All Writs Act, 28 U.S.C. §1651(a),
which provides for all courts established by Act of Congress to issue writs
necessary or appropriate in aid of their respective jurisdictions and agreeable to
the usages and principles of law, including the Writ of Mandamus.

2.4 Venue is proper in this court pursuant to the above-cited Section 106.

### III. PARTIES

**The Centro de Periodismo Investigativo**

3.1 The plaintiff **Centro de Periodismo Investigativo ("CPI")** is a non-profit
organization which was founded in 2007.

3.2 It is a news organization which engages in investigative journalism and
has won more than 15 national awards for its work in this field.

3.3 The **CPI** has a website, www.periodismoinvestigativo.com, where
citizens *inter alia* can access its investigative pieces, and which is visited by some
500,000 unique users on an annual basis.

4

3.4 Since its inception, the **CPI** has published articles which are available for free to interested readers and which have been reproduced by more than 25 other news media outlets in Puerto Rico, the United States and beyond.

3.5 In addition to its work as a news medium, the **CPI** has two other important missions: to assure that the citizens of Puerto Rico have access to the information they require to exercise their basic rights as citizens, and to monitor "fiscalizar" those governmental bodies which make decisions affecting the rights and the future of the public.

3.6 These two areas of work are related to litigation to assure proper access to information, and education and training of both professionals in the field of journalism and lay-people as to the right to access to information and the methods for assuring compliance with these rights.

3.7 Among the employees, contractors and Board members of the **CPI** are dedicated journalists and attorneys who engage in work designed to assuring that the citizenry in Puerto Rico has access to the information necessary to the exercise of democratic rights.

3.8 As stated on its website, "the **CPI** recognizes that the fundamental requirement for a true democracy is that the citizenry be well informed ..." The CPI engages in work to avoid the citizens being "ill informed, unaware of

5

important truths, and limited in their capacity to democratically monitor those who hold power. Being convinced that these tendencies have to be combated, this is the vision that nourishes the **CPI** and all of its work." (Translation supplied)

3.9 "With this vision in mind, [the **CPI**] was organized as an autonomous non-profit entity, which allows it to act with independence from political and commercial interests." (*Id., Translation supplied*).

### The Financial Oversight and Management Board for Puerto Rico

3.10 The Financial Oversight and Management Board for Puerto Rico ("the **Junta**") was created by virtue of the provisions of the "Puerto Rico Oversight, Management, and Economic Stability Act," Public Law 114-187, approved by the 114th Congress of the United States on June 30, 2016, and signed by then President Barack Obama. *48 U.S.C. §2121(b)(1)*.

3.11 The **Junta** was established pursuant to Congress's invocation of its power under Article IV §3 of the Constitution of the United States, commonly known as the Territorial Clause. This Clause grants plenary power to the Congress of the United States to dispose of and make all "needful Rules and Regulations" for the territory held by the United States.

3.12 According to Public Law 114-187, "the purpose of the Oversight Board is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access

6

to the capital markets." *48 U.S.C §2121(a)*.

3.13 Public Law 114-187 provides that the **Junta** is to be considered "an entity within the territorial government for which it is established..." (i.e. Puerto Rico), *48 U.S.C §2121(c)(1)*, and all expenses of the Junta are paid for by the Government of Puerto Rico. *48 U.S.C §2127(b)*.

3.14 Congress has provided that the **Junta** "shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government." *48 U.S.C §2121(c)(2)*.

3.15 The seven members of the **Junta** were all appointed by the President of the United States. Two members of the **Junta** were selected from a list submitted by the Speaker of the House of Representatives, Paul Ryan. Two were selected from a list submitted by the Majority Leader of the Senate, Mitch McConnell. Two others were selected from a list submitted by the Minority Leader of the House of Representatives, Nancy Pelosi, and two were selected from a list submitted by the Minority Leader of the Senate of the United States, Harry Reid. The final member was selected by then President Barack Obama. *See, 48 U.S.C §2121(e)*

3.16 The Governor of Puerto Rico is an *ex officio* member of the Junta, without any voting rights. *48 U.S.C §2121(e)(3)*.

3.17 Among other things, the **Junta** has the power to "secure copies,

7

whether written or electronic, of such records, documents, information, data or metadata from the territorial government (Puerto Rico) necessary to enable the Oversight Board to carry out its responsibilities ... At the request of the Oversight Board [it[ shall be granted direct access to such information systems, records, documents, information or data as will enable [it] to carry out its responsibilities under this Act." *48 U.S.C §2124(c ).*

## IV. FACTS

4.1 For the first several months after Public Law 114-187 was passed, there was a lengthy process of selecting the members of the **Junta**.

4.2. After the **Junta's** members were selected, it held its first meeting in the City of New York on September 30, 2016, where the President of the **Junta** was selected and its By-laws were adopted.

4.3 Although the September 30th meeting was open to the public, the determinations reached therein had been previously agreed to by the **Junta.**

4.4 As part of the first public meeting of the **Junta** on September 30, 2016, the President of the Junta, José Carrión stated during the press conference that the members of the Junta had gone through a "rigorous process" with the United States Department of the Treasury, prior to their selection as members of the Junta, during which they submitted financial disclosure and conflict of interest

documents.

4.5 During that same meeting, the **Junta** requested the Government of Puerto Rico a number of documents, including the following:

a. Weekly cash flow reports, including all revenues received and all expenses paid (including any debt service) and broken down by main categories;

b. Monthly downloads of bank account data and statements of all principal banking accounts (provided directly to the Board of each bank);

c. Monthly and year to date report of compliance with the current approved budget by budgetary fund and by agency (including local special funds and federal funds);

d. Monthly and year to date detailed report on revenues and a narrative about collection efforts and main initiatives of the Puerto Rico Treasury Department;

e. Monthly detailed payroll reports by agency;

f. Monthly reports on federal funds received and disbursed by area and by agency;

g. Monthly reports of all debt obligations due this current fiscal year and which have been paid; and

h. Quarterly report on each agency's productivity and performance with

9

appropriate metrics and a narrative description.

    i. Quarterly report on key Puerto Rico economic, financial, social and labor statistics.

    4.6  On October 24, 2017, the **Junta** contracted the services of **Forculus PR** (also known as **Forculus Strategic Communications**), a firm specializing in communications, public relations and media management services, with a Resident Agent in the Beverly Hills sector in Puerto Rico.

    4.7 This firm, whose employees and/or contractors include Edward Zayas and José Cedeño, was hired by the Junta to *inter alia* develop and market the "reputation (branding) of the **Junta** and its members." (Parenthesis in the original).

    4.8 As set forth in the website for **Forculus PR,** this firm has performed communications, public relations and media management services for the Government of Puerto Rico, including the Government Development Bank of Puerto Rico, and its "Public-Private Partnership Arm, the Puerto Rico Industrial Development Company" (Fomento), as well as "the Office of the Governor of Puerto Rico and the Office of Management and Budget."

    4.9 In communications with José Cedeño, the **CPI** was informed that all press requests had to be made through Forculus, PR using official emails jcedeno@forculuspr.com and ezayas@forculuspr.com.

4.10 At all times relevant to this complaint and as to the matters set forth herein, **Forculus PR,** and its agents, including employees and/or contractors Edward Zayas and José Cedeño, acted as agents of the Junta.

4.11 On November 16, 2016, Joel Cintrón Arbasetti, a reporter with the **CPI,** made a request to Edward Zayas, of **Forculus, PR,** to be given to access to any and all of the documents listed in ¶4.5 above, which were supposed to be provided by the Government of Puerto Rico to the Junta.

4.12 Since September 30, 2016, Carla Minet, a veteran journalist who is the Executive Director of the **CPI,** requested the federal Office of Government Ethics (OGE) to provide the **CPI** with all financial disclosure and conflict of interest documents which the seven members of the Junta were supposed to submit during their evaluation process. Ms. Minet also submitted the request to the United States Department of Treasury and to The White House, as suggested by **Junta** President Carrión and the OGE.

4.13 Ms. Minet was informed by the OGE on a follow-up phone conversation that the documents had to be requested from the **Junta,** rather than from the federal agencies.

4.14 On December 12, 2016, Ms. Minet directed an email to Edward Zayas and José Cedeño of **Forculus PR,** in which, on behalf of the **CPI,** she requested all

11

financial disclosure and conflict of interest documents which the seven members of the Junta submitted to the United States Department of Treasury, as stated by Junta President Carrión during the September 30th meeting referenced at ¶¶4.2 – 4.4 above.

4.15 Ms. Minet indicated to Messrs. Zayas and Cedeño that a prompt response was required, since the **CPI** was working on a news article for which the information was required.

4.16 On that same day, Mr. Cedeño responded to Ms. Minet that her request would be "processed" and that a response "would be offered as soon as possible." (Translation provided).

4.17 Subsequent emails with respect to these matters yielded no response from the **Junta**.

4.18 On February 9, 2017, **CPI** Executive Director Carla Minet did additional follow-up with respect to the requests made on November 16, 2016 by **CPI** reporter Joel Cintrón Arbasetti.

4.19  At that time, Ms. Minet also followed up with respect to a separate communication which had been sent on December 12th, 2016, wherein Ms. Minet solicited additional documents and information from the **Junta**, via Edward Zayas, from **Forculus PR**.

12

4.20  The documents requested in the February 9th communication included the following: (a) records relating to communications, inquiries or requests for information, documents, reports or data by any member of the **Junta** and/or its staff to any agency of the federal government or federal government official, or by the federal government, its agencies or staff, to the **Junta**; (b) communications, reports, consultations, updates, documents or information provided by any member of the **Junta** and/or its staff to La Fortaleza, its officers, or any other agency or official of the Government of Puerto Rico, or by the Government of Puerto Rico to the **Junta**, its members or staff; (c) contracts granted by the **Junta** to private entities (also originally requested on November 11, 2016); (d) protocols, regulations, manuals or memorandums generated by the **Junta** to conduct its work; and (e) minutes of meetings held by the **Junta** and its committees or its members.

4.21 On or about February 28, 2017, the **Junta** published on its website certain financial information forms regarding the individual members of the **Junta**. The documents of the seven board members were dated in February 2017.

4.22 On the following day, March 1, 2017, Ms. Minet, on behalf of the CPI, directed a number of questions to the Junta regarding the documents published on the website.

4.23  In her March 1st email to Edward Zayas, of **Forculus PR**, Ms. Minet requested *inter alia* the following information: whether the published documents were the same ones submitted to the U.S. Department of the Treasury, as part of the "rigorous process" referred to by **Junta** President José Carrión in the meeting in New York on September 30, 2016, as set forth in ¶¶4.2 to 4.4 above; to which agency the documents were submitted; why there was missing information on the documents, including but not limited to the signatures of the Ethics official, salary information for some of the Junta member, and financial information concerning spouses of the Board members.

4.24  Ms. Minet indicated to Mr. Zayas that the inquiries were urgent, since the information was needed for a deadline for publication later that day.

4.25  To date, neither **Forculus PR** nor the Junta has provided any substantive response to the inquiries and document requests set forth at ¶¶4.5 and ¶¶4.11-4.21 above.[11]

4.26  To date, the **CPI** has received no response to the inquiries made in Ms.

---

[11] On February 10th, 2017, the CPI received from the Commonwealth of Puerto Rico certain documents, in response to similar requests for information which had been directed to the Commonwealth itself. The documents are as follows: Letter to Governor and to newly elected Governor, December 20, 2016;  Press Communiqué of the Junta, January 18, 2017; Letter from the Junta to Governor Rosselló, January 18, 2017; Press Communiqué, January 20, 2017; Letter from Governor Rosselló a the Junta, January 21, 2017; Letter from Governor Rosselló to the Junta, January 23, 2017;  Liquidity Plan, January 28, 2017; Puerto Rico fiscal update, January 28, 2017;  Debt service payments, February 1, 2017; Letter from the Junta to Elías Sánchez, February 7, 2017.  With the exception of the document related to debt service payments, all of these documents can be found on the website of the Junta.

Minet's email of March 1, 2017.

## V. CAUSE OF ACTION

5.1  In declarations made when he announced the appointment of the seven

members to the **Junta**, then President Barack Obama stated that "[i]n order to be

successful, the Financial Oversight and Management Board will need to establish

an open process for working with the people and Government of Puerto Rico... [in

order to build] a better future for all Puerto Ricans."

**5.2** Since the Junta is not considered a federal organism, but rather is "an

entity within the territorial government for which it is established..." (i.e. Puerto

Rico),*48 U.S.C §2121(c)(1),* and all expenses of the Junta are paid for by the

Government of Puerto Rico, *48 U.S.C §2127(b),* the Constitution and laws of the

Commonwealth of Puerto Rico apply to its operations.

5.3 Pursuant to Section 4 of the "Puerto Rico Oversight, Management, and

Economic Stability Act," *48 U.S.C §2103,* Puerto Rico law applies with respect to

the operation of the Junta, as long as it is not "inconsistent with [the] Act."

5.4 There is nothing inconsistent between the right of access to information

and the Act establishing the Junta.

5.5  In point of fact, providing access to the requested documents would

further the purpose of the Financial Oversight and Management Board, as publicly

stated by the then President of the United States, Barack Obama, set forth in ¶5.1 above.

5.6 Under the Constitution of Puerto Rico, there exists an undisputed right of the people to access information produced or in the power of the Government of Puerto Rico.

5.7 This right derives from the Constitution of Puerto Rico and is considered a fundamental human right. *See, for example,* Trans Ad PR v. Junta Subastas, 174 DPR 56, 67 (2008); Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007); Ortiz v. Dir. Adm. Tribunales, 152 DPR 161, 175 (2000).

5.8 The Supreme Court of Puerto Rico has observed that this right is a critical component of the rights of free speech, free press and freedom of association set forth explicitly in the Bill of Rights, Article II of the Constitution of the Commonwealth of Puerto Rico. *See, eg.,* Soto v. Srio. Justicia, 12 P.R. Offic. Trans. 597, 607-608 (1982).

5.9 As expressed by the Puerto Rico Supreme Court, access to information constitutes an important component of a democratic society, in which the citizen can issue an informed judgment regarding the actions of the government. Colón Cabrera, 170 DPR at 590. The right to redress grievances is also implicated, in that without knowledge of the facts, one cannot judge, nor demand remedies with

16

respect to grievances against the government either through judicial or electoral processes.

5.10   Given the importance of this right under the Constitution of Puerto Rico, the Government cannot deny access to documents capriciously.

5.11 The **Junta**, as an organism "within" the government of Puerto Rico, has a ministerial duty to comply with the Constitution of Puerto Rico with respect to the public nature of the information and documents sought herein.

5.12 The critical role of the press in guaranteeing access to information has also been recognized in the Constitutional law of Puerto Rico. "[T]he press constitutes a vehicle of information and opinion to inform and educate the public, to offer criticism, to provide a forum for discussion and debate, and to act as a surrogate to obtain for readers news and information that individual citizens could not or would not gather on their own." Santiago v. Bobb y El Mundo, 17 P.R. Offic. Trans. 182, 190 (1986) (*citing* B. F. Chamberlain & J. Brown, *The First Amendment Reconsidered* 110, New York, Longman (1982)).

5.13 The right of access to information is also codified in Article 409 of the Código de Enjuiciamiento Civil, 32 LPRA § 1781 (2015), which provides for access to "public documents" in Puerto Rico.

5.14   To date, the Junta has held seven (7) public meetings on the following

17

dates: October 14, 2016 (New York); November 18, 2016 (Fajardo, Puerto Rico);
January 28, 2017 (Fajardo, Puerto Rico); March 13, 2017 (New York); March 31,
2017 (San Juan, Puerto Rico); and April 28, 2017 (New York).

5.15 Other than the brief public sessions, largely to reaffirm decisions
already made, and the placement of some selected documents on its website, the
**Junta** has not provided the citizenry of Puerto Rico with substantive access to the
proceedings of the **Junta**, which take place behind closed doors.

5.16 The **Centro de Periodismo Investigativo** has attempted to obtain
documents which are critical for providing the citizens of Puerto Rico with the
access to information guaranteed under the Constitution and Laws of Puerto Rico
and to allow the CPI, as an important and respected news organization, to provide
information to the citizens regarding the operations of the **Junta**.

5.17 These efforts by the **CPI** have been met with stonewalling on the part of
the **Junta** and its designated marketing and branding group. **Forculus PR.**

5.18 Access to the information requested by the CPI is essential to assure an
informed citizenry and the validation of the rights existing under the Constitution
and laws of Puerto Rico.

5.19 The aforementioned rights apply to the **Junta**, as they are not
inconsistent with Law 114-187.

18

5.20 Since Congress designated the Junta not only to be paid for by the people of Puerto Rico, but also to be an entity "within" the government of Puerto Rico, the Constitution and laws of the Commonwealth of Puerto Rico apply to the Junta.

5.21   There is no adequate remedy at law to address the fundamental constitutional harms for which redress is sought herein.

5.22 The citizens of Puerto Rico and the population served by the investigative and reporting work done by the CPI will be irreparably harmed if the relief requested herein is not granted.

5.23   The public interest will be served by the granting of the relief requested herein, be it in the form of injunctive relief or through the issuance of a writ of Mandamus.

5.24   Mandamus is an appropriate writ to assure that **Junta** exercises its ministerial duty to assure compliance with the Constitution and laws of Puerto Rico.

WHEREFORE, the plaintiff **Centro de Periodismo Investigativo** hereby requests the following relief:

1. A Declaratory Judgment that the actions of the Junta in effectively denying access to the documents and information set forth in ¶¶4.4 to 4.26 above.

19

2. Issue a preliminary injunction and a permanent injunction ordering the **Junta** to deliver to the **Centro de Periodismo Investigativo** the following documents:

a. Weekly cash flow reports, including all revenues received and all expenses paid (including any debt service) and broken down by main categories;

b. Monthly downloads of bank account data and statements of all principal banking accounts (provided directly to the Board of each bank);

c. Monthly and year to date report of compliance with the current approved budget by budgetary fund and by agency (including local special funds and federal funds);

d. Monthly and year to date detailed report on revenues and a narrative about collection efforts and main initiatives of the Puerto Rico Treasury Department;

e. Monthly detailed payroll reports by agency;

f. Monthly reports on federal funds received and disbursed by area and by agency;

g. Monthly reports of all debt obligations due this current fiscal year and which have been paid; and

h. Quarterly report on each agency's productivity and performance with

appropriate metrics and a narrative description.

i. Quarterly report on key Puerto Rico economic, financial, social and labor statistics.

j. All financial statements and other financial and conflict of interest submissions made by the members of the Junta prior to their designations or subsequent thereto.

k. Records relating to communications, inquiries or requests for information, documents, reports or data by any member of the **Junta** and/or its staff to any agency of the federal government or federal government official, or by the federal government, its agencies or staff, to the **Junta**;

l. Communications, reports, consultations, updates, documents or information provided by any member of the Board and/or its staff to La Fortaleza, its officers, or any other agency or official of the Government of Puerto Rico, or by the Government of Puerto Rico to the **Junta**, its members or staff;

m. Contracts granted by the **Junta** to private entities;

n. Protocols, regulations, manuals or memorandums generated by the **Junta** to conduct its work;

o. Minutes of meetings held by the **Junta**, its committees or its members;

p. Complete financial disclosure forms for all **Junta** members.

3. Issue a Writ of Mandamus requiring the **Junta** to comply with its ministerial duty to provide the information and documents set forth in the previous paragraph.

4. Issue whatever other relief this court deems just and appropriate.

In San Juan Puerto Rico, this 1st day of June, 2017.

*Respectfully Submitted*

*Berkan/Mendez*
*Calle O'Neill G-11*
*San Juan, Puerto Rico 00918-2301*
*Tel.: (787) 764-0814*
*Fax.: (787)250-0986*
*bermen@prtc.net*

By: /s/ *Judith Berkan*
Judith Berkan
US DC No. 200803
*berkanj@microjuris.com*

/s/ *Steven Lausell Recurt*
Steven Lausell Recurt
USDC No. 226402
*slausell@gmail.com*
*(787) 751-1912*