**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** | **CASE NO. 17 BK 3283-LTS** <br><br> **TITLE III, PROMESA** |
| **AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO** | |
| **Debtor** | |

**MOTION FOR RELIEF FROM STAY**

**TO THE HONORABLE COURT**:

**NOW COME** Angely M. Aponte-Pagán and other Plaintiffs in the case captioned <u>Aponte-Pagán et al v. Rivera-Aquino et al</u>, Civil No. CC-2016-1153, before the Supreme Court of Puerto Rico, and Javier Andino-Gaudín and other Plaintiffs in the case of <u>Andino-Gaudín et al v. Rivero-Cubano et al</u>, Civil No. K AC2002-5558, before the Court of First Instance of Puerto Rico, through the undersigning counsel, and respectfully allege and pray as follows:

**I.   INTRODUCTION**

1. Appearing parties have pending claims before State Court in the cases of <u>Andino-Gaudín et al v. Rivero-Cubano</u>, et al, Civil No. K AC2002-5558 (hereinafter, "<u>Andino-Gaudín</u>"), and <u>Aponte-Pagán et al v. Rivera-Aquino et al</u>, Civil No. CC-2016-1153 (hereinafter, "<u>Aponte-Pagán</u>"). The defendant and debtor in both <u>Andino-Gaudín</u> and <u>Aponte-Pagán</u> is the Agricultural Enterprises Development Administration (hereinafter, "the ADEA" for its acronym in Spanish), a public corporation separate from the Commonwealth of Puerto Rico. The ADEA has requested to stay both cases pursuant to the captioned Title III proceedings. Insofar as the ADEA is a public corporation, the automatic stay under the Commonwealth's bankruptcy proceedings cannot be extended to it and the stay in <u>Andino-Gaudín</u> and <u>Aponte-Pagán</u> is unsustainable in law. Should

-1-

the stay remain and given that the ADEA is not subject to these Title III proceedings, the Plaintiffs in Andino-Gaudín and Aponte-Pagán would be left with no forum in which to prosecute their claims. It is respectfully requested, therefore, that the stay be lifted.

## II. BACKGROUND

2. On May 31, 2017, the ADEA filed a "Notice of Stay of the Proceedings Pursuant to the Petition under Title III of PROMSEA Filed by the Government of Puerto Rico" (in Spanish, "Aviso de Paralización de los Procedimientos por Virtud de la Petición Presentada por el Gobierno de Puerto Rico Bajo el Título III de Promesa"), in the case of Andino-Gaudín before the Court of First Instance of Puerto Rico. On June 9, 2017, the Court of First Instance ordered the ADEA to reply within 10 days to Plaintiffs' opposition to the Notice of Stay; and the issue is, thus, currently pending.

3. On June 2, 2017, another Notice of Stay was filed before the Supreme Court of Puerto Rico in Aponte-Pagán. On June 7, 2017, the Supreme Court issued a resolution staying that litigation until Title III proceedings have concluded or the stay is lifted. The claims in Aponte-Pagán against the ADEA are identical to the ones in Andino-Gaudín.

4. The ADEA is the defendant in both Aponte-Pagán and Andino-Gaudín. As a public corporation, the ADEA is not covered by the Government's or any other Title III petition. Therefore, the automatic stay under Title III does not apply to claims against the ADEA, such as the Aponte-Pagán and Andino-Gaudín litigations. Moreover, the stay of the proceedings has deprived Plaintiffs in Aponte-Pagán, and in Andino-Gaudín, of a forum in which to pursue their claims, exercise their rights, and protect their interests. Plaintiffs in Aponte-Pagán respectfully appear before this Honorable Court to request the lifting of the stay.

## III. SUBSTITUTION OF THE ASDA AND THE COMMONWEALTH OF PUERTO RICO FOR THE ADEA IN **ANDINO-GAUDÍN** AND **APONTE-**

**PAGÁN**

5. On August 30, 2002, current and former employees of what was then the Agricultural Development and Services Administration (hereinafter, "the ASDA" for its acronym in Spanish), filed suit against that entity in Andino-Gaudín, seeking declaratory judgment and injunctive relief for amounts owed pursuant to Local Laws Nos. 169 of July 29, 1999 and 410 of October 8, 2000. Since the ASDA was not a public corporation at that time, the complaint included in its caption the ASDA, the Department of Agriculture of Puerto Rico and the Government of Puerto Rico. To be clear, the inclusion of the Department of Agriculture and the Government of Puerto Rico in Andino-Gaudín was a technical necessity since the ASDA had no separate legal personality at that time. On March 2, 2005, December 27, 2006, and January 4, 2008, the Court of First Instance issued resolutions and judgments finding for the Plaintiffs in Andino-Gaudín. These resolutions and judgments were not appealed.

6. On March 30, 2010, Plaintiffs in Aponte-Pagán filed suit against the ASDA with the same claims that had been raised in Andino-Gaudín. Again, since the ASDA was not a public corporation, the complaint included in its caption the ASDA, the Department of Agriculture of Puerto Rico and the Government of Puerto Rico. However, no claim against the Government of Puerto Rico was made in Aponte-Pagán. The inclusion of the Department of Agriculture and the Government of Puerto Rico in Aponte-Pagán was a technical necessity since the ASDA had no separate legal personality at that time.

7. Pursuant to Reorganization Plan No. 4 of July 26, 2010, the ADEA was created as a public corporation to replace the ASDA and assume all its responsibilities and obligations. Ortiz Law Office v. Autoridad de Tierras, Civil No. KLAN201200491 (opinion issued by the Appeals Court of Puerto Rico on June 22, 2012) ("Pursuant to the provisions of the Reorganization Plan of 2010, the ASDA ceased to legally exist and was substituted by the ADEA.

Notwithstanding, all of the obligations and responsibilities of the ASDA were assumed by the appellant [ADEA].")(Translation ours.)("A tenor con las disposiciones del Plan de Reorganización del año 2010, la ASDA dejó de existir jurídicamente y fue sustituida por la ADEA. No obstante, todas las obligaciones y responsabilidades que tenía la ASDA fueron asumidas por la parte apelante [ADEA].")

8. On February 11, 2016, the Court of First Instance of Puerto Rico entered Judgment in Aponte-Pagán in favor of Plaintiffs and ordered the ADEA to issue payment to Plaintiffs in compliance with Local Laws Nos. 169-1999 and 410-2000. An appeal was filed and on September 13, 2016, the Court of Appeals entered judgment sustaining the lower court. A writ of certiorari, filed on December 6, 2016, was denied by the Puerto Rico Supreme Court on February 17, 2017. A first motion for reconsideration was denied on April 24, 2017. A second and last motion for reconsideration is still pending before the Supreme Court of Puerto Rico.

9. It is important to note that Local Rule of Civil Procedure 22.4 provides for the automatic substitution of a government official in his/her official capacity when such capacity ceases. 32 L.P.R.A. Ap. R. 22.4. Likewise, Rule 25 of the Federal Rules of Civil Procedure go further to provide that the substitution is automatic and that "…any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. Proc. 25. Thus, the Reorganization Plan of 2010 had the automatic effect of substituting the ASDA and other defendants for the ADEA in Aponte-Pagán and Andino-Gaudín. Following the Reorganization Plan, the ADEA became and is the debtor in Aponte-Pagán and Andino-Gaudín, not the Commonwealth of Puerto Rico.

10. To further demonstrate that the ADEA is the defendant and the debtor in Andino-Gaudín and Aponte-Pagán, cases with identical claims, it is necessary to highlight that in Andino-Gaudín there is a final judgment since 2008. The ADEA has not complied with the judgment in Andino-

-4-

Gaudín and since for the last 9 years there have been dozens of hearings and motions filed to compel that compliance. The Court of First Instance in Andino-Gaudín has on several occasions ordered that certifications of availability of funds be provided, partial payments have been made, and a payment plan has been established. In all these measures, the party that has certified funds, issued partial payment and been subject to the payment plan has been the ADEA, not the Commonwealth of Puerto Rico.

11. In fact, on June 16, 2016, the Court of First Instance in Andino-Gaudín issued an order to the effect that "…given that the ADEA is an instrumentality that generates the majority of its funds, it is ordered that its budget for next fiscal year provide for payment…" (Translation ours.) ("Por lo tanto y siendo ADEA una instrumentalidad que genera la mayoría de sus propios fondos, se ordena que en el presupuesto del próximo año fiscal de dicha agencia [ADEA], se disponga para el pago…".) In Andino-Gaudín, the Local Court's orders to comply with the decade-old judgments and issue payment have been directed at the ADEA, not the Commonwealth of Puerto Rico.

12. Even more, the debt in Andino-Gaudín was not included in the List of Creditors who have the 20 Largest Unsecured Claims are not Insiders filed by the Commonwealth in the captioned Title III proceedings, even though the amount of the debt would warrant its inclusion. (See Commonwealth's Title III Petition, Dkt. 1, Schedule B.) This indicates that the Commonwealth of Puerto Rico did not recognize this debt as its own, and therefore cannot be considered the debtor, at the time of its Title III petition.

13. In light of the above, it is necessary to conclude that in Aponte-Pagán and Andino-Gaudín, the defendant and the debtor is the ADEA, not the Commonwealth of Puerto Rico.

**IV. THE ADEA IS A PUBLIC CORPORATION SEPARATE FROM THE**

**COMMONWEALTH OF PUERTO RICO**

14. On June 7, 2017, the Supreme Court of Puerto Rico stayed the proceedings in <u>Aponte-Pagán</u>. The issue is currently pending before the Court of First Instance in <u>Andino-Gaudín</u>. However, as previously established, <u>Aponte-Pagán</u> and <u>Andino-Gaudín</u> are claims against the ADEA, not the Government of Puerto Rico.

15. By the Commonwealth's own admission, the ADEA is a public corporation separate from the Government of Puerto Rico. This admission stems from the Commonwealth's own Title III filing which states, in pertinent part:

> Set forth below are brief descriptions of some of the Commonwealth's principal public corporations:
>
> - <u>Puerto Rico Highways and Transportation Authority (HTA)</u> – created to assume responsibility for the construction and maintenance of roads and highways and related transportation facilities in Puerto Rico;
>
> […]
>
> - <u>Agricultural Enterprises Development Administration (ADEA)</u> – created to provide a wide array of services and incentives to the agricultural sector;
>
> […]
>
> - <u>Puerto Rico Sales Tax Financing Corporation (COFINA)</u> – created, among other things, to raise money for the Commonwealth in exchange for the Commonwealth's transfer to COFINA of certain sales and use taxes.

See Statement of Oversight Board in Connection with PROMESA Title III Petition, exhibit 1 to the Notice of Statement, Dkt. 1-2, at pages 7-9.

16. The Commonwealth thus indicated that the ADEA is a public corporation on par with the Highway and Transportation Authority ("HTA") and the Sales Tax Financing Corporation ("COFINA"), among others.

17. Moreover, although the HTA, COFINA and the ADEA are all covered entities under PROMESA, they are all considered separate entities from the Commonwealth of Puerto Rico. To

-6-

that effect, on September 30, 2016, the Oversight Board identified the public entities covered by PROMESA. The first on the list was the Commonwealth of Puerto Rico, number 4 was the ADEA, number 30 was the HTA, and number 34 was COFINA. (See Statement of Oversight Board in Connection with PROMESA Title III Petition, exhibit B to the Statement, Dkt. 1-4.) In so doing, the Oversight Board made it clear that the ADEA was a public corporation, separate from the Commonwealth of Puerto Rico.

18. It has been established that the Commonwealth's Title III petition and its stay does not cover public corporations such as the HTA, COFINA and, it necessarily follows, the ADEA. Note that, on May 5, 2017, COFINA filed its own Title III petition in In re The Financial Oversight and Management Board for Puerto Rico in representation of COFINA, Civil No. 17-BK-03284 (LTS). On May 21, 2017, the HTA filed its own Title III petition in In re The Financial Oversight and Management Board for Puerto Rico in representation of HTA, Civil No. 17-BK-03567 (LTS). Had the captioned Title III proceedings covered the HTA and COFINA, their separate Title III filings would not have been necessary.

19. As it is, the ADEA is a public corporation separate from the Commonwealth of Puerto Rico.

### V. THE AUTOMATIC STAY

20. The provisions of Title III of PROMESA establish a restructuring mechanism most closely resembling a bankruptcy proceeding under Chapter 11. The automatic stay found in Section 362 of the Bankruptcy Code is incorporated into PROMESA. In relevant part, Section 362 states:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or

could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

[…]

11 U.S.C.A. § 362.

21. It is evident from the language of the statute that the automatic stay, far-reaching as it is, has one basic limit – no bankruptcy proceeding can extend its automatic stay to actions in which the defendant is not the bankruptcy debtor.

22. It is well established that the automatic stay is the most basic protection afforded by a bankruptcy. <u>Midatlantic National Bank v. New Jersey Department of Environmental Protection</u>, 474 U.S. 594, 503 (1986.) The intent of the automatic stay is to provide breathing room to the debtor by halting collection efforts. <u>In re Soares</u>, 107 F. 3d 969, 976 (CA1 1997). Such automatic stay, however, is not all-encompassing. The prevailing norm is that, barring exceptional circumstances, the automatic stay can only be applied to the debtor, and not to third parties. <u>In re Whitman-Nieves</u>, 519 B.R. 1, 8 (D.P.R. 2014); see also <u>In re Kevin W. White</u>, 415 B.R. 696, 698 (N.D. IL 2009) ("Generally, the automatic stay protects the bankruptcy debtor and does not bar suits against third parties, such as non-debtor entities, even when wholly owned by the debtor, or the debtor's insurers, guarantors, and sureties").

23. The extent of the automatic stay in the above-captioned case is clear from the pleadings filed by the Commonwealth. On June 9, 2017, the Commonwealth of Puerto Rico filed a "Motion of Debtors Pursuant to PROMESA Section 301(A) and Bankruptcy Code Sections 105(A), 362(A), 365, and 922 for Entry of Order Confirming (i) Application of the Automatic Stay to Government Officers, Agents, and Representatives (ii) Stay of Prepetition Lawsuits and Actions Against Inhabitants of Puerto Rico (iii) Application of Contract Protections." (Dkt. 301.) In it, the Commonwealth of Puerto Rico requested this Honorable Court to issue an order to "…expressly confirm the application and enforcement of the Title III Stay to any action or

-8-

proceeding against an officer of the Debtors **that seeks to enforce a claim against the Debtors**, in whatever capacity the applicable officer is serving." (Emphasis ours.) (See Dkt. 1, at page 10.) In its motion, the Commonwealth has made it clear that the stay applies only when there are efforts to "enforce a claim against the Debtors". In Aponte-Pagán and Andino-Gaudín, the claims are made against, and the debtor is, the ADEA, not the Commonwealth of Puerto Rico. Therefore, the stay of proceedings against the Commonwealth of Puerto Rico cannot be extended to cover that claim.

24. Also, Section 362 continues on to provide a mechanism to lift the stay. To wit, Section 362(d) prays, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> […]

11 U.S.C.A. § 362(d)(1).

25. In Andino-Gaudín and Aponte-Pagán, the stay has the effect of depriving the Plaintiffs of adequate protection of an interest in property. The Plaintiffs' claims have been adjudicated in both cases, in Andino-Gaudín more than 9 years ago; and in Aponte-Pagán, for more than a year, with only the last motion for reconsideration permissible under the Puerto Rico Supreme Court's rules pending resolution. Their interests are well established and recognized. The only recourse left for the Plaintiffs is to pursue the ADEA's compliance with these judgments. Yet, the stay precludes Plaintiffs from doing so. Ordinarily, the Plaintiffs would not be left without a forum to pursue their claims because they could then appear before this Honorable Court and continue their efforts. However, since the ADEA is not a party in these Title III proceedings, Plaintiffs in the State cases will be unable to continue to prosecute their claims against the ADEA within these

bankruptcy proceedings. This constitutes a lack of adequate protection which warrants the lifting of the stay.

26. In any event, a specific lack of adequate protection of an interest need not be found to establish cause for the lifting of the stay. In C & A, S. E. v. P.R. Solid Waste Magmt., 369 B.R. 87, 94–95 (D.P.R.2007), the District Court for the District of Puerto Rico used a 13-factor test to determine whether cause existed to lift the stay. These factors are: (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties; (7) whether litigation in another forum would prejudice the interest of other creditors and/or other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor; (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; (12) the impact of the stay on the parties and (13) the balance of hurt. It is well settled that the moving party need not establish all or even a plurality of these factors, as the court will ordinarily rely on only a few factors to determine whether cause exists. C & A, S. E. v. P.R. Solid Waste Magmt., 369 B.R. at 95.

27. In the two cases at hand, factors 1, 2, 6, 7, 9, 10, 11, 12 and 13 are applicable and favor the lifting of the stay. Namely, both Aponte-Pagán and Andino-Gaudín are in extremely advanced stages. Aponte-Pagán is before the Supreme Court of Puerto Rico and only has a second- and last- motion for reconsideration pending resolution. Andino-Gaudín has had final and

-10-

unappealable judgments since 2008 and is only pending compliance by the ADEA to conclude. This satisfies factors 1 and 11, since the lifting of the stay will facilitate the quick resolution of the issues in both cases before the State Court and evidently the proceedings have advanced even beyond trial. Likewise, factors 2, 6, 7 and 9 favor lifting the stay because the defendant in the cases before State Court is the ADEA, a public corporation separate from the Commonwealth of Puerto Rico. The cases in State Court involve third parties to these bankruptcy proceedings. It follows that there is no interference from the State cases with the Title III process. Since the State cases involve third parties, they represent no prejudice for creditors or interested parties in the Commonwealth's bankruptcy. Again, because the State cases do not include the Commonwealth as a debtor, the favorable resolution in those cases would not result in a lien on the Government. It is important to note that the State cases have been on the docket for 15 and 7 years, respectively. Judicial economy would be best served by lifting the stay and allowing these long-standing cases to conclude and avoid further delays. Also, as previously stated, because the ADEA is a public corporation separate from the Commonwealth, this Honorable Court lacks jurisdiction over it in the Title III proceedings currently under way. To apply the stay results in the Plaintiffs in Aponte-Pagán and Andino-Gaudín being left devoid of any forum in which to pursue their claims and protect their interests. This represents a devastating impact on their rights and in effect deprives them of their property without due process. Lastly, no harm will result on the Commonwealth from lifting the stay in the State cases, whereas Plaintiffs will be bereft of any effective mechanism to advance their adjudicated claims.

**VI.    CONCLUSION**

28. Clearly, the ADEA is the defendant and debtor in Aponte-Pagán and Andino-Gaudín. It is also well established that the ADEA is a public corporation separate from the Commonwealth of Puerto Rico. It necessarily follows that the captioned Title III proceedings and its stay do not

-11-

apply to the ADEA and cannot be extended to cover the State cases. The stay in Andino-Gaudín and Aponte-Pagán is therefore unsustainable. Also, the Plaintiffs in the State cases are left without adequate protection and without any viable mechanism with which to pursue their claims as a result of the stay. There is thus ample cause for the stay to be lifted.

29. For the reasons stated above, it is respectfully requested that this Honorable Court issue an order to the effect that the stay is not applicable to Aponte-Pagán and Andino-Gaudín, or otherwise lift the stay in the State cases and order the proceedings before State Court be continued.

**WHEREFORE**, it is respectfully requested that this Honorable Court issue an order to the effect that the stay is not applicable to Aponte-Pagán and Andino-Gaudín, or otherwise lift the stay in the State cases and order the proceedings before State Court be continued.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this June 14, 2017.

**I HEREBY CERTIFY** that on this date, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

    s/Francisco R. González-Colón
**FRANCISCO R. GONZALEZ COLON**
**USDC No. 116410**

FRANCISCO GONZÁLEZ LAW OFFICE
1519 PONCE DE LEÓN AVE.
FIRST FEDERAL BLDG. SUITE 805
SAN JUAN, P.R. 00909
Tel. (787) 723-3222 FAX 722-7099
bufetefrgonzalez@gmail.com