# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | (Jointly Administered) |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3566-LTS |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO ("ERS"), | (Joint Administration Requested) |
| Debtor.[2] | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3567-LTS |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"), | (Joint Administration Requested) |
| Debtor.[3] | |

---------------------------------------------------------------x

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

[2] The last four (4) digits of ERS's federal tax identification number are 9686.

[3] The last four (4) digits of HTA's federal tax identification number are 3808.

**DEBTORS' STATUS REPORT REGARDING (A) FINANCIAL DISCLOSURES TO CREDITORS AND (B) STATUS OF SETTLEMENT DISCUSSIONS**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS," and together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[4] respectfully submit this status report (the "Status Report"), as directed by the Court at the May 17, 2017 hearing in the Initial Title III Cases (as defined herein):

**Background**

1. On June 30, 2016, the Oversight Board was established under PROMESA section 101(b). On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

2. Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

3. On September 30, 2016, the Oversight Board designated the Debtors as covered entities under PROMESA section 101(d).

---

[4] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

4. On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Commonwealth's Title III Case").

5. On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under title III thereof (together with the Commonwealth's Title III Case, the "Initial Title III Cases").

6. On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS and HTA pursuant to PROMESA section 304(a), commencing cases under title III thereof (the "Additional Title III Cases," and collectively with the Initial Title III Cases and any subsequent case under Title III of PROMESA commenced by a covered territorial instrumentality under PROMESA, the "Title III Cases").

7. On May 26, 2017, Judge Laura Taylor Swain was designated as the presiding judge in the Additional Title III Cases. *See In re Employees Retirement System of the Government of the Commonwealth of Puerto Rico*, Case No. 17-3566 [ECF No. 16]; *In re Puerto Rico Highways and Transportation Authority*, Case No. 17-3567 [ECF No. 7].

8. On June 1, 2017, the Court entered an order granting the joint administration of the Initial Title III Cases, for procedural purposes only [ECF No. 242]. On June 9, 2017, the Debtors filed a motion seeking the joint administration of the Additional Title III Cases with the Initial Title III Cases [Bankruptcy Case No. 17 BK 3567-LTS, ECF No. 79; Bankruptcy Case No. 17 BK 3566-LTS, ECF No. 61].

9. Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [ECF No. 1], attached to the Commonwealth's Title III petition.

10. At the May 17, 2017 hearing in the Initial Title III Cases, the Court directed the Commonwealth and COFINA to file a status report on settlement discussions with and financial disclosure to the Debtors' creditors by June 15, 2017. *See Minutes of Proceedings Before Honorable Laura Taylor Swain* [ECF No. 213] (noting that "by June 15, 2017, a status report discussing the status of settlement discussions and financial disclosure to creditors [must be filed]."); *see also* May 17, 2017 Hr'g Tr. at 147:16-25 ("With respect to the disclosure and meditation issues, I would like a status report by mid June as to attention to and I hope further progress on issues relating to the disclosure of information to creditors. And if there are particular points of conflict about the structure or the nature of the information to be informed as to your – not in their granular specifics, but what those issues are and what is being done in terms of work on them, and whether there are, there have been and are ongoing further negotiation sessions, and as to what constituencies.").

11. The Debtors (now including ERS and HTA) submit this Status Report in accordance with the Court's direction.

**Status of Financial Disclosure to Creditors and One Recurring Issue**

**A. Dataroom**

12. The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") has established the Intralinks Project AAFAF Dataroom (the "Dataroom"), in which extensive financial information regarding the Debtors, all of which are covered by the Commonwealth's certified Fiscal Plan dated as of March 13, 2017 (as subsequently amended, the "Certified Fiscal

4

Plan"), has been made available to creditor groups and their financial and legal advisors beginning on April 5, 2017. Such information includes, without limitation, the Certified Fiscal Plan, the Fiscal Plan Model in Excel format,[5] and the Fiscal Plan Debt Model in Excel format.[6] The Dataroom also includes over 40 source documents covering macroeconomic assumptions, revenues, expenses, measures, and other categories, and has been updated and supplemented following discussions with creditor groups and their advisors.

13. A "live" version of the Fiscal Plan Model, which includes formulae and links between tabs of the file, was provided to the creditor groups seeking such information by posting it to the Dataroom on June 6, 2017. A detailed overview of the Fiscal Plan Model, each of its tabs, how they relate to each other, and what relevant sources and documents have been made available to creditor groups through the Dataroom, has been prepared by AAFAF's financial advisor, Rothschild & Co. This overview was provided to creditors requesting financial information on June 13, 2017 as described below. A copy of this overview is attached hereto as **Exhibit A**.

---

[5] The Fiscal Plan Model provides the detailed buildup of the revenue, expenses, and measures presented in the Government of Puerto Rico's Certified Fiscal Plan for Fiscal Years 2017 – 2026.

[6] The Fiscal Debt Model provides the detailed buildup of the forecasted debt service requirements (if not restructured) for the Government of Puerto Rico for Fiscal Years 2017 – 2047. Detailed debt schedules are provided for (a) general obligation ("GO"), (b) Puerto Rico Building Authority, (c) COFINA, (d) HTA, (e) Puerto Rico Convention Center District Authority, (f) Puerto Rico Infrastructure Financing Authority, (g) Puerto Rico Public Finance Corporation, (h) University of Puerto Rico, (i) ERS, (j) GDB (as defined herein), and (k) Puerto Rico Industrial Development Company bonds, with source data from Bloomberg provided as well. Other information includes the capitalization table summarizing the total debt for the Government of Puerto Rico as of February 1, 2017, a summary of public corporation debt outstanding as of December 31, 2016, and a schedule of unpaid principal and interest payments through February 1, 2017.

B. **Publicly-Available Financial Information**

14. In addition to the Dataroom, financial and other information has been made publicly available on the Oversight Board's website, and other governmental websites. This information includes the fiscal year 2018 budget broken down by agency, the fiscal year 2018 general fund budget proposal, the Office of Management and Budget's report on the fiscal year 2018 budget proposal, the Commonwealth's quarterly report, information relating to public pensions, and documents identifying rents paid by the Territorial Government or any Territorial Government Instrumentality to the Public Building Authority, among other information. A further list of publicly available information, including the entity providing the information, the web link, and the type of information, is attached hereto as **Exhibit B**.

15. Although certain creditors have complained that some data provided to them is publically available, the Commonwealth's publication of extensive financial data does not render it any less pertinent.

C. **Q&A with Creditors**

16. On April 6, 2017, AAFAF and the Oversight Board held an initial meeting with 62 representatives of the GO and COFINA creditor groups, including several of their financial advisors. At that meeting, AAFAF provided an introduction to the Certified Fiscal Plan (which was made publicly available on both the AAFAF and Oversight Board's websites on March 13, 2017), and conducted a brief question and answer session. The Oversight Board's economist answered questions about the economic assumptions underlying the fiscal plan. After the meeting, the creditors' financial advisors were invited to submit diligence questions, and a total of 346 questions were submitted on April 7-8, 2017. The questions covered a range of topics, including debt, expenses, healthcare, liquidity, macroeconomic assumptions, measures, the Fiscal Plan Model, pensions, and revenue. The Debtors provided responses to 262 of such

6

questions on April 11, 2017, which are available in the Dataroom. This response rate is high given several factors, including the time constraints, and that many of the requests sought documents and information that do not exist, are privileged, or involve proprietary models of AAFAF or the Oversight Board.

17. Shortly thereafter, on April 11, 2017, a financial diligence session was held with 34 representatives of financial advisors for the GO and COFINA creditor groups, including the monoline insurers. AAFAF and its advisors presented on several topics and answered questions relating to macroeconomic assumptions, baseline revenue and expenses, measures, liquidity, and financial controls and procurement. AAFAF subsequently made additional information available to, and answered myriad questions by, creditor groups in attendance at mediation sessions held on April 13, 17, 20, and 25, 2017. Additionally, several members of the Oversight Board and its business advisors attended and answered creditors' questions at the mediation sessions.

### D. Subsequent Information Requests

18. Following the May 17, 2017 hearing in the Initial Title III Cases, the Debtors received extensive informal information requests (the "Informal Requests") from attorneys for the Ad Hoc Group of Puerto Rico General Obligation Bondholders (the "GO Group"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), and National Public Finance Guarantee Corporation. The requests generally fall into the following categories:

   a. documents relating to the Certified Fiscal Plan, including models, analyses, assumptions, sensitivities, and projections;
   b. documents relating to the Debtors' revenues, including projected revenues and use of taxes;
   c. documents relating to the Debtors' expenses, including projected expenses;
   d. documents relating to the Commonwealth's debt sustainability, including the Commonwealth's access to capital markets and analyses relied upon in determining the Commonwealth's sustainable debt load; and

7

  e. documents relating to the restructuring or wind down of the Government Development Bank of Puerto Rico (the "GDB").[7]

19. Many of the Informal Requests relate directly to information that has already been made available to the requesting parties. As described above, the Commonwealth has made a large amount of the requested data public to comply with its own laws and rules concerning public disclosure.[8] Also, the Dataroom contains relevant data readily understandable and useful to any financial professional willing to examine it.

20. Significantly, the same monoline insurers and other entities requesting data have now filed multiple adversary proceedings involving the same data, including:

  a. Adv. Proc. No. 17-00125, *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*

  b. Adv. Proc. No. 17-00151, *Peaje Investment, LLC v. Puerto Rico Highways & Trans. Authority, et al.*

  c. Adv. Proc. No. 17-00152, *Peaje Investment, LLC v. Puerto Rico Highways & Trans. Authority, et al.*

  d. Adv. Proc. No. 17-00155, *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*

  e. Adv. Proc. No. 17-00156, *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*

  f. Adv. Proc. No. 17-00159, *Ambac Assurance Corporation v. Commonwealth of Puerto Rico, et al.*

---

[7] The GDB has not commenced a Title III Case.

[8] The fact that such information is public does not make the disclosures or availability any less responsive to the requests received, and indeed, the Debtors have already borne the expenses associated with culling through such data and identifying information of particular relevance.

Notably, neither the Oversight Board nor AAFAF has refrained from disclosing additional data based on the filing of the foregoing adversary proceedings. But, given the extensive data already produced and the litigants' implicit admissions that they have sufficient data to allege causes of action, the Oversight Board and AAFAF have reserved their rights to do so.

21. On June 13, 2017, the Oversight Board and AAFAF provided preliminary written responses to the creditors' document requests and provided directions to relevant materials.[9] In their preliminary responses, the Oversight Board and AAFAF agreed to produce a substantial amount of additional data and documents related and responsive to the Informal Requests, including "raw" data (i.e. revenue, cash flow, "clawback," and expense data) used in the Certified Fiscal Plan, to the extent such data exists. Those requests are being fulfilled on an ongoing basis, and the Oversight Board and AAFAF are making every effort to complete uploading of reasonably accessible data to the Dataroom by end of June. The June 13 responses also included the detailed overview of the Fiscal Plan Model and related material in the Dataroom as set forth on **Exhibit A** hereto to assist the requesting parties in making full use of these materials.

22. Although the Debtors and AAFAF have agreed to produce, or have already produced, documents and data responsive to the Informal Requests, the Debtors and AAFAF also reserved their rights and interposed objections to certain of the Informal Requests in their June 13 responses. With respect to certain documents, communications, and analyses, the Debtors have asserted that privileges, protections, or immunities apply and shield production of

---

[9] For example, the GO Group and Assured requested "[a] complete version of the Fiscal Plan, including any amendments mandated by the Board Resolution Adopted March 13, 2017." A complete, live version of the Fiscal Plan has already been uploaded to the Dataroom.

9

those documents, including, without limitation, the attorney-client privilege, the deliberative process privilege or the executive privilege,[10] and/or the attorney work product doctrine.

23. When the Debtors believed certain of the Informal Requests were unduly burdensome, overly broad, or irrelevant to the resolution of the Title III Cases, the Oversight Board and AAFAF invited the requesting parties to meet and confer with them to clarify and narrow the scope of the subject Informal Requests.

24. **The Recurring Issue**. On March 13, 2017, the Oversight Board certified the Commonwealth's fiscal plan which contained a debt sustainability analysis showing exactly how much money would be available to service debt. In a nutshell, the problem is not the disclosure of data. Rather, creditors do not like the disclosed data and the debt sustainability it supports. Accordingly, rather than negotiate to divide up the money available for debt service under the fiscal plan, the creditors have been very clear that they want the Oversight Board to certify a different fiscal plan showing more debt can be sustained. To accomplish their goal of compelling the Oversight Board to redo the fiscal plan, creditors have demanded production of all documents relating to virtually every decision the Oversight Board made to conclude to certify the current fiscal plan. And, while the Oversight Board wishes it could satisfy creditors' desires for higher repayments, the Oversight Board is resolute that it will only certify fiscal plans

---

[10] "[D]eliberative process [privilege] covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). ["The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8-9.] The deliberative process privilege is the federal counterpart of Puerto Rico's official information privilege. *See W Holding Co. v. Chartis Ins. Co. of Puerto Rico*, 42 F. Supp.3d 319, 324 (D.P.R. 2014) (characterizing Puerto Rico's official information privilege and federal deliberative process privilege as "essentially co-extensive").

it believes are feasible and will create fiscal responsibility and capital market access, as PROMESA requires. In chapter 11, creditors sometimes negotiate and litigate the debtor's business plan. PROMESA, however, goes to extraordinary lengths to prevent that from happening.

25. PROMESA section 106(e) provides "There shall be no jurisdiction, in any United States district court to review challenges to the Oversight Board's certification determinations under this Act." Even though Congress barred challenges to certified fiscal plans, many creditors want to take discovery as if the Court has jurisdiction over an action challenging the fiscal plan.[11] Indeed, some creditors have commenced actions challenging the fiscal plan and have requested discovery outside the actions seeking data relating to the actions. *See, e.g.*, Adv. Proc. No. 17-00125, *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico*, *et al.*, and Adv. Proc. No. 17-00159, *Ambac Assurance Corporation v. Commonwealth of Puerto Rico, et al*.

26. The public policies PROMESA carries out are clear, namely to encourage the Oversight Board to make the best judgments its can make in certifying a fiscal plan, by being completely protected from governmental and creditor pressures. PROMESA sections 101(b)(1) and 101(g) establish the Oversight Board as seven uncompensated members, and PROMESA sections 104, 108(a), and 201-207 empower the Oversight Board to make fiscal, budgetary, and other decisions for the Commonwealth and its instrumentalities, independently of the Governor

---

[11] PROMESA section 201(c)(3), among other sections, provides that the Oversight Board "determines in its sole discretion" whether a fiscal plan satisfies PROMESA's requirements. PROMESA section 105 provides "[t]he Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out this Act."

11

and Legislature. The Oversight Board's certifications are not even subject to being second-guessed by the Court. PROMESA § 106(e). In sum, Congress expressly took extraordinary steps to insulate the Oversight Board from third party pressure and the temptation to make overly optimistic economic assumptions to justify more governmental services and more debt service than the Oversight Board believes is realistic.

27. To be clear, creditors' rights under the United States constitution are protected. If a creditor believes its collateral is being taken for public use without just compensation, nothing prevents the creditor from requesting stay relief if it does not obtain adequate protection or just compensation.

28. Some creditors contend they will be entitled to discovery into the Certified Fiscal Plan when they object to confirmation because PROMESA section 201(b)(1)(N) requires fiscal plans to respect lawful priorities and liens, and PROMESA section 314(b)(6) requires a plan of adjustment to be in the best interests of creditors after considering what creditors would receive if they enforced their remedies under Commonwealth law and its priorities. Conversely, the Oversight Board believes the creditors will simply prove what they would receive if they all enforced their claims, and compare that to what the plan of adjustment provides them. No discovery into the fiscal plan would have any relevance. Similarly, some creditors contend that because PROMESA section 314(b)(7) requires a plan of adjustment to be consistent with a certified fiscal plan, discovery into the Certified Fiscal Plan is required. To be sure, the Certified Fiscal Plan and its budget will always be public documents and discoverable. Consistency with the fiscal plan, however, will not turn on the process leading up to certification of the fiscal plan or discovery into that deliberative process.

29. It appears the recurring discovery issue involving the Certified Fiscal Plan will be resolved in the pending adversary proceedings attempting to challenge the certification. For now, the Oversight Board and AAFAF will continue to provide creditors the raw data underlying the Certified Fiscal Plan.

### Progress Toward Resolution of Creditor Disputes

30. On June 10, 2017, the Debtors filed the *Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [ECF No. 303] (the "Dispute Procedures Motion") seeking to establish, among other things, procedures to resolve the ongoing dispute between the Commonwealth, on the one hand, and COFINA, on the other, regarding their competing interests in certain sales and use taxes collected in Puerto Rico (the "SUT Dispute"). By the Dispute Procedures Motion, the Commonwealth and COFINA seek to have independent agents chosen by the Oversight Board from creditor nominations represent their respective interests with respect to the SUT Dispute, with the aspiration of consensual resolution. Absent consensual resolution, and under the schedule contemplated by the Dispute Procedures Motion, the Court should have the opportunity to adjudicate the SUT Dispute, on or before November 1, 2017. The Debtors and Oversight Board are hopeful the Dispute Procedures Motion will result in the consensual resolution of outstanding issues between and among the Commonwealth, COFINA, their creditors, and other parties in interest.

31. By notice and order dated June 14, 2017 [ECF No. 329], the Court established a very eminent mediation team of sitting federal judges having extraordinary restructuring experience. That team can only enhance the prospects of success for Puerto Rico. If the Dispute Procedures Motion is granted, the two agents may well be able to negotiate a settlement with the aid of the mediation team.

32. By motion dated June 7, 2017 [Bankruptcy Case No. 17 BK 3284-LTS, ECF No. 139], The Puerto Rico Funds and the Mutual Funds Group requested stay relief to prosecute a motion requesting that the SUT Dispute be certified to the Puerto Rico Supreme Court. In their responses to that motion, the Oversight Board and AAFAF will explain why they believe the SUT Dispute should be decided by the Title III Court.

33. In addition, the GDB, in coordination with AAFAF, has negotiated a term sheet and restructuring support agreement (the "<u>GDB RSA</u>") with its bondholders and non-Commonwealth affiliated depositors (the "<u>Affected Creditors</u>"). The GDB RSA contemplates a wind-down of the GDB and its assets, with returns from those assets used to fund recoveries to creditors. In exchange for current bonds and non-governmental deposit claims, new bonds will be issued by a special purpose vehicle in a securitization structure and without recourse to the GDB.

34. The GDB and AAFAF have notified the Oversight Board that close to 50% of Affected Creditors are already signatories to the GDB RSA. As a result, the GDB has expressed its desire to pursue a Title VI Qualifying Modification through a voluntary agreement process. The GDB intends to submit a proposed modification to the Oversight Board for certification as a Qualifying Modification under PROMESA section 601(g)(2) within the coming weeks. The Oversight Board has been in close consultation with representatives of AAFAF regarding the information the Oversight Board requires in order to make various certification determinations under Title VI of PROMESA.

## Notice

35. The Debtors have provided notice of this Status Report to the following parties: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on

14

the list of creditors holding the 20 largest unsecured claims against each Debtor; (d) the Office of the United States Attorney for the District of Puerto Rico; (e) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority on behalf of the Governor of Puerto Rico; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[12] and (h) all parties filing a notice of appearance in these Title III Cases.

### **Reservation of Rights**

36. By this Status Report, neither the Debtors nor the Oversight Board waives or releases any rights.

[*Remainder of Page Intentionally Left Blank*]

---

[12] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

| | |
|---|---|
| Dated: June 15, 2017<br>      San Juan, Puerto Rico | Respectfully submitted, |

/s/ Martin J. Bienenstock

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*