# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE EMPLOYEES RETIREMENT
SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO ("ERS"),

    Debtor.[2]

PROMESA
Title III

No. 17 BK 3566-LTS

(Joint Administration Requested)

**This Affidavit relates only to ERS and HTA and shall be filed in the lead Case No. 17 BK 3283-LTS, Case No. 17 BK 3566-LTS, and Case No. 17 BK 3567-LTS (HTA).**

---------------------------------------------------------------x

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2] The last four (4) digits of ERS's federal tax identification number are 9686.

| | |
|---|---|
| ---------------------------------------------------------------x<br>In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY ("HTA"),<br><br>    Debtor.[3]<br>---------------------------------------------------------------x | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>(Joint Administration Requested)<br><br>**This Affidavit relates only to ERS and HTA and shall be filed in the lead Case No. 17 BK 3283-LTS, Case No. 17 BK 3566-LTS, and Case No. 17 BK 3567-LTS (HTA).** |

**AFFIDAVIT OF PAUL V. POSSINGER IN SUPPORT OF
APPLICATION OF DEBTORS FOR ENTRY OF ORDER
AUTHORIZING EMPLOYMENT AND PAYMENT OF EPIQ BANKRUPTCY
SOLUTIONS, LLC AS SERVICE AGENT, *NUNC PRO TUNC* TO PETITION DATE**

STATE OF NEW YORK      )
                                     ) ss :
COUNTY OF NEW YORK   )

    Paul V. Possinger, being duly sworn, deposes and says:

    1.    I am providing this affidavit as counsel to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") in the above-captioned title III cases. I am authorized to submit this affidavit on behalf of the Oversight Board as representative for the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS," and together with the Commonwealth, COFINA, and HTA, the "Debtors"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").[4]

---

[3] The last four (4) digits of HTA's federal tax identification number are 3808.

[4] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

2. On June 9, 2017, the Debtors, by and through the Oversight Board, filed the *Application of the Debtors for Entry of Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Service Agent,* Nunc Pro Tunc *to Petition Date* [ECF No. 299 (Case No. 17 BK 3283-LTS)] (the "Application").[5]

3. On June 13, 2017, the United States District Court for the District of Puerto Rico (the "Court") entered an order [ECF No. 319 (Case No. 17 BK 3283-LTS)] (the "Order") requesting the Oversight Board to file a supplemental affidavit explaining the reasons why the Oversight Board believes it is necessary to retain Epiq Bankruptcy Solutions, LLC ("Epiq"), while simultaneously retaining Prime Clerk LLC ("Prime Clerk"), as the official service agent (the "Service Agent") in the HTA/ERS Title III Cases.

4. I submit this affidavit in response to the Order and in support of the Application. Unless otherwise stated in this affidavit, I have personal knowledge of, and if called as a witness I would testify to, the facts set forth herein.[6]

**The Size and Complexity of the Title III Cases Warrant
the Retention of Epiq as Service Agent in the HTA/ERS Title III Cases**

5. I believe it is prudent to employ Epiq as the Service Agent in the HTA/ERS Title III Cases due to the overall size and complexity of the Title III Cases, and to provide each case the benefit of its agent striving to match and outperform the other agent. As discussed in the Application, the preparation and maintenance of the unique creditor matrices for each of the Debtors and service upon such matrices is a labor-intensive process that warrants the employment of two different service agents out of an abundance of caution. For example, with

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings used in the Application.

[6] Certain of the disclosures set forth herein relate to matters within the knowledge of other attorneys at the Firm and are based on information provided by them.

3

respect to the Commonwealth alone, it is my understanding that the Commonwealth's creditor matrix will contain approximately 400,000 service parties. It is also my understanding that ERS's matrix may exceed 200,000 service parties, if all retirees in the ERS pension system are included. Upon review of the Debtors' books and records—which are maintained through multiple accounting systems in a variety of locations throughout Puerto Rico (sometimes separate and apart from those of the Commonwealth), and some only in hard copy format—it became apparent that the administration of these cases would benefit from the employment of an additional service agent that would maintain the unique creditor matrices for HTA and ERS and handle the service of pleadings upon such matrices.

    6.  While these Title III Cases are still in their infancy and the majority of the Debtors' creditors have yet to be noticed or served, I believe it is vital that an efficient protocol is in place in anticipation of the coming months where the passage of the bar date, the filing and eventual solicitation of a plan or plans of adjustment, and other key events are scheduled to occur. With Epiq maintaining and administering separate service lists for the HTA/ERS Title III Cases, each agent can focus on the efficient service under their responsibility. Additionally, in the event that other instrumentalities file title III cases, having the capability and capacity of two service agents will only be an asset to the Debtors as these Title III Cases continue to get more complex and time consuming. Thus, it is my belief that the additional servicing capabilities provided by Epiq will increase efficiencies for the benefit of the Debtors and their creditors rather than create an additional burden on the Debtors—indeed, Epiq's engagement provides that Epiq will be compensated only for services actually provided. If Epiq were not retained, any compensation that would have been paid to Epiq would have to be paid to Prime Clerk or another agent.

**No Duplication of Services**

7. I do not believe the engagement of Epiq will create any duplication of services provided by Epiq, as Service Agent for the HTA/ERS Title III Cases, and Prime Clerk, as Claims Agent for the Title III Cases. As an initial matter, there is a clear delineation of services that Epiq and Prime Clerk will provide in these cases. At this juncture, Epiq is solely responsible for the preparation and maintenance of, and service upon, the HTA and ERS creditor matrices. Prime Clerk, on the other hand, will continue to host the Debtors' case website, maintain the call center and interface with creditors, and maintain and provide service upon the Commonwealth and COFINA creditor matrices. The Debtors and the Oversight Board delineated the work streams in this manner to ensure that there would be no burden on creditors as all creditor interactions will continue to flow through Prime Clerk only. Service of pleadings on separate (and in the cases of the Commonwealth and ERS, very large) creditor matrices is an independent task that can easily be handled by different service agents. Rather than resulting in any extra expense to the Debtors or creating a burden on creditors, it is anticipated that the efficient coordination of efforts of Epiq and Prime Clerk will add to the progress and effective administration of the Title III Cases.

8. To assure cooperation and avoidance of duplication, the Oversight Board insisted on adding a provision to Epiq's and Prime Clerk's engagement letters to address this concern:

> [Agent] agrees (i) to coordinate with any other agents retained by the FOMB with respect to (A) the cases of the Government under Title III of PROMESA, and (B) any other case commenced by an instrumentality of the Commonwealth under Title III or Title VI of PROMESA, (ii) to avoid duplicating Services provided by any such agents with respect to the foregoing, and (iii) the division of any Services in connection with such cases between [Agent] and

5

any such agents shall be determined in the discretion of the FOMB and the Government.

9.      Further, the Oversight Board and its counsel will provide sufficient oversight of the work streams of both Epiq and Prime Clerk to avoid any duplication of efforts. The various responsible parties have already held several coordination calls to delineate the respective work streams between Epiq and Prime Clerk. Moreover, it is my understanding that Epiq and Prime Clerk are working on a communications protocol to coordinate work streams and ensure that they are complementing each other's efforts and performing their respective services efficiently and effectively. Lastly, as set forth in the Engagement Agreement, Epiq will be compensated in accordance with its hourly rate structure set forth therein and will only be reimbursed for its actual expenses incurred in the HTA/ERS Title III Cases. Neither Epiq nor Prime Clerk is entitled to a set monthly fee or a success fee of any kind. Thus, Epiq will only be paid for those services actually performed and expenses actually incurred on behalf of HTA and ERS.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE I respectfully request that the Court approve the Application and authorize the employment and payment of Epiq as Service Agent in the HTA/ERS Title III Cases.

Respectfully submitted,

/s/ Paul V. Possinger
Paul V. Possinger
Partner
Proskauer Rose LLP

SWORN TO AND SUBSCRIBED before
me this 16th day of June , 2017

/s/ Magali Lespinasse Lee
Notary Public, State of New York
No. 01LE6069014
Qualified in New York County
Commission Expires Jan. 22, 2018