**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | |
| as representative of | ) | No. 17 BK 3283-LTS |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | |
| as representative of | ) | No. 17 BK 3567-LTS |
| | ) | |
| PUERTO RICO HIGHWAYS & | ) | |
| TRANSPORTATION AUTHORITY, | ) | |
| | ) | |
| Debtor. | ) | |

**OMNIBUS OBJECTION OF PEAJE INVESTMENTS LLC TO THE DEBTORS'
(I) MOTION FOR A STAY OF PEAJE'S PENDING ACTIONS, AND (II)
REQUEST MADE IN THE DEBTORS' JOINT ADMINISTRATION MOTION
TO RENDER THE COMMONWEALTH'S AND COFINA'S BANK
<u>ACCOUNTS MOTION APPLICABLE IN HTA'S TITLE III CASE</u>**

23539722

## TABLE OF CONTENTS

Page

STATEMENT ........................................................................................................................... 2
OBJECTION ............................................................................................................................ 5
    A.    The Court Should Deny the Stay Motion Because it is Procedurally Improper, Substantively Overbroad, and Unnecessary .......................................... 5
    B.    The Court Should Deny the Debtors' Request Made in the Joint Administration Motion to Render the Initial Debtors' Bank Accounts Motion Applicable to HTA. ................................................................................... 9
PRAYER FOR RELIEF ........................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
   300 U.S. 227 (1937)..........................................................................................................4

*Bessette v. Avco Fin. Servs., Inc.*,
   230 F.3d 439 (1st Cir. 2000)............................................................................................11

*In re Bora Bora Inc.*,
   424 B.R. 17 (Bankr. D.P.R. 2010)..................................................................................7, 9

*Feld v. Zale Corp.*,
   62 F.3d 746 (5th Cir. 1995)................................................................................................7

*Flast v. Cohen*,
   392 U.S. 83 (1968).........................................................................................................1, 3

*In re Lazy Days' RV Ctr. Inc.*,
   724 F.3d 418 (3d Cir. 2013)...............................................................................................3

*New Engl. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*,
   351 F.3d 86 (2d Cir. 2003)...............................................................................................11

*New York Civil Liberties Union v. Grandeau*,
   528 F.3d 122 (2d Cir. 2008).............................................................................................11

*Song BMG Music Ent. v. Tenenbaum*,
   660 F.3d 487 (1st Cir. 2011)..............................................................................................3

*In re Ying Hua Tam*,
   No. 12-06379 (Bankr. W.D. Mich. Jan. 25, 2013) ............................................................7

**Statutes**

11 U.S.C. § 105................................................................................................................................11

11 U.S.C. § 362........................................................................................................................*passim*

11 U.S.C. § 922........................................................................................................................*passim*

48 U.S.C. § 2161................................................................................................................................2

**Rules**

FED. R. BANKR. P. 7001....................................................................................................................7

Peaje Investments LLC ("Peaje"), a party-in-interest in these cases and the plaintiff in related adversary proceedings pending under Adv. Proc. Nos. 17-151-LTS & 17-152-LTS (together, the "Adversary Proceedings"), through its undersigned counsel, hereby objects to the Debtors' stay motion (Case No. 17 BK 3283-LTS, [Dkt. No. 301]; Case No. 17 BK 3567-LTS, [Dkt. No. 82]) (the "Stay Motion")[1] to the extent it seeks relief that would interfere with the ongoing Adversary Proceedings (among other actions and proceedings) or affect the issues raised in the Adversary Proceedings in a manner adverse to Peaje. Among other things, the Adversary Proceedings involve various claims regarding the scope and applicability of the automatic stays in effect in these cases and those issues should be resolved in accordance with the schedule and procedures the Court has already established. The Stay Motion unnecessarily and improperly seeks an expansive order that the stay provisions apply to a broad range of specific matters, effectively asking the Court to provide an advisory opinion interpreting the scope of the relevant statutes in advance of the proper presentation of any actual case or controversy over their application and scope. This is utterly improper. *See, e.g., Flast v. Cohen*, 392 U.S. 83, 96 (1968). A federal court may not issue an advisory opinion of this kind and the Stay Motion should be denied for this reason alone. More narrowly, the Stay Motion should be denied to the extent it seeks relief that would interfere with the ongoing proceedings and determinations in the Adversary Proceedings.

Additionally, Peaje objects to the Debtors' motion (Case No. 17 BK 3283-LTS, [Dkt. No. 298]; Case No. 17 BK 3567-LTS, [Dkt. No. 79]) (the "Joint Administration Motion") requesting joint administration of the Commonwealth's and COFINA's (together, the "Initial Debtors")

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Stay Motion.

23539722

pending Title III cases with the Title III cases of the Puerto Rico Highways & Transportation Authority ("HTA") and ERS. While Peaje does not take issue with the procedural joint administration of those four cases, Peaje objects to the Debtors' request that any relief granted in respect of the "Bank Accounts Motion" (Case No. 17 BK 3282-LTS, [Dkt. No. 60]) filed by the Initial Debtors be made applicable to HTA. In particular, Peaje objects to the exculpatory relief sought. More generally, as the holder of a lien on various funds collected by HTA, Peaje objects to any determination, authorization, or other form of relief that indicates, suggests, or provides that the Debtors are authorized to continue taking and dissipating Peaje's collateral, or that otherwise purports to defeat or affect Peaje's rights with respect to its collateral.

In support of this objection, Peaje respectfully states as follows:

## STATEMENT

Peaje is the plaintiff in a set of Adversary Proceedings pending before the Court that are part of the Commonwealth's and HTA's reorganization cases administered under Title III of PROMESA. In the Adversary Proceedings, Peaje seeks a declaratory judgment that the automatic stay provisions of Sections 362 and 922 of the Bankruptcy Code[2] do not apply with respect to Peaje's bonds, or, in the alternative, for relief from stay. The basis for Peaje's request for declaratory relief is that Peaje's bonds are secured by a lien on toll revenues that qualify as "special revenues" under the exemption from stay found in subsection (d) of Section 922. The basis for Peaje's alternative request for relief from stay is that its interest in its collateral is not being adequately protected. As part of the Adversary Proceedings, Peaje also seeks a preliminary injunction barring the ongoing taking and dissipation of its collateral in violation of its rights. Peaje seeks injunctive relief based on, among other things, Peaje's strong likelihood of

---

[2] These provisions are applicable in Title III under Section 301 of PROMESA, 48 U.S.C. § 2161.

2

prevailing on the merits of its claim and the ongoing irreparable harm arising from the ongoing destruction of Peaje's lien rights.

The Court has scheduled an evidentiary hearing on Peaje's requests for relief for August 8, 2017. Before that hearing, the Court will have the benefit of moving, opposition, and reply briefing on the scope and applicability of the automatic stay provisions, the extent and nature of Peaje's rights and interests, Peaje's entitlement to adequate protection, and the ongoing irreparable harm caused by the ongoing destruction of Peaje's lien rights. The Debtors are not entitled to interfere with this ongoing litigation by seeking an advance interpretation of the stay provisions, or otherwise by seeking ongoing authorization to take and dissipate funds that are Peaje's collateral.

As the Supreme Court has directed, federal courts will not entertain, and may not issue, advisory rulings on legal questions, but may only decide live cases and controversies properly presented with proper notice and an appropriate opportunity to be heard. *See, e.g., Flast v. Cohen*, 392 U.S. 83, 96 (1968) (federal courts may not entertain or issue advisory opinions); *Song BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) (the "judicial power is constrained to 'real and substantial controvers[ies] admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'") (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)); *see also In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) ("Federal courts have no jurisdiction to render advisory opinions.") (internal citation omitted)). Regardless of whether the Debtors perceive some benefit in obtaining the Court's advance advice on the scope of various provisions of the Bankruptcy Code, the actual case-or-controversy requirement is a hard constitutional limitation that federal courts are not free to disregard. It is

3

one thing for the Court to declare the rights of the parties in a properly framed and litigated declaratory judgment action addressing an actual, live controversy between the specific litigants in the proceeding. *See Hayworth*, 300 U.S. at 239-40 (in upholding the constitutionality of the Declaratory Judgments Act, the Court observed that the Act, "in its limitation to 'cases of actual controversy,'" is "procedural only"). It is quite another for the Court to advise on the scope and meaning of statutory provisions in advance of, or apart from, an actual controversy, as the Debtors request here. More narrowly, there is no basis for pre-determining in advance through the Debtors' Stay Motion issues that are the subject of actual, ongoing litigation pending before the Court.

With respect to Peaje, the Court should defer its consideration of the important issues raised in the Adversary Proceedings until the August 8th hearing, wherein the Court will have an opportunity to not only consider the full set of briefing on the issues, but also any documentary and witness testimony evidence presented by the parties. Because the Debtors' requested relief is procedurally improper and overly broad, the Stay Motion should be denied.

Peaje also objects to the Debtors' Joint Administration Motion insofar as it requests that any relief granted concerning the Initial Debtors' Bank Accounts Motion be made applicable to HTA. The Bank Accounts Motion requests a broad exculpation of the Initial Debtors' banks. Several of the Commonwealth's and COFINA's creditors objected to the Bank Accounts Motion at the first day hearing in the Initial Debtors' cases. The Court, however, declined to rule on the Bank Accounts Motion at the time, instead taking the matter under advisement pending the parties' attempts to reach a consensual resolution. As far as Peaje is aware, a revised proposed form of order has not yet been filed, nor has there been any status update regarding the parties' negotiations.

As applied to HTA, Peaje shares many of the concerns regarding exculpation of the banks that were initially raised at the Initial Debtors' first day hearing. Specifically, because the Court lacks subject matter jurisdiction and further because there is no statutory basis for the relief, the requested exculpation must be denied. Further, because the parties in the Initial Debtors' cases have not resolved whether the exculpation provision will stand in those cases, the Court should deny any attempt to render the Bank Accounts Motion applicable to HTA. To the extent that HTA desires to exculpate its banks, it should file a separate motion on sufficient notice that allows an opportunity for full briefing on the significant jurisdictional and statutory issues presented.

## **OBJECTION**

A.  **The Court Should Deny the Stay Motion Because it is Procedurally Improper, Substantively Overbroad, and Unnecessary.**

The Stay Motion seeks to impose the Debtors' worldview interpretation of the automatic stay provisions found in Sections 362 and 922 of the Bankruptcy Code on Peaje and all other parties with an interest in these cases. The Debtors' interpretation is exceptionally broad, encompassing nearly every kind of potential action relating to the Commonwealth or its instrumentalities, without consideration of whether any particular action should in fact be stayed based on the underlying claims at issue. Among other things, the Stay Motion requests entry of an order staying:

- "lawsuits…filed against the Debtors and various other entities, challenging certain measures taken by those entities" in "the period preceding the commencement of the Title III Cases…." (defined as the "Prepetition Lawsuits") (*see* Stay Motion ¶ 12);

- "suits and proceedings in the Title III case and in other courts filed by creditors and others pertaining to the Debtors' restructuring efforts under PROMESA (collectively, 'Actions Against Inhabitants')…." (*see id.*);

5

- "any action or proceeding against an officer of the Debtors that seeks to enforce a claim against the Debtors, in whatever capacity the applicable officer is serving…." (*see id.* ¶ 25);

- "actions or proceedings against governmental officials (including, without limitation, the Governor), agents, and representatives carrying out functions of the Debtors and any of their instrumentalities (collectively, the 'Government Officers, Agents, and Representatives') whereby parties pursuing such actions seek to enforce claims against any of the Debtors…." (*see id.* ¶ 26); and

- "any attempts by creditors or others to issue and serve third party discovery against the Governor and other individuals in their 'personal capacity' in connection with creditor efforts to enforce rights…." (*see id.* ¶ 30).

Notably, the Debtors characterize the Stay Motion as merely a run-of-the-mill effort to "enforce" the automatic stay which the Debtors are seeking merely "out of an abundance of caution." The Debtors' own characterization, however, conclusively demonstrates that the relief the Debtors seek is entirely improper. The relevant statutory provisions speak for themselves, and the Debtors' efforts to have the Court interpret them expansively "out of an abundance of caution," rather than on an as-needed basis in the context of an actual live dispute between actual litigants, underscores the remarkable absence of a justiciable case or controversy. More important, the Debtors' efforts to downplay the relief they are seeking reveal their hand. If there is truly only a desire for relief "out of an abundance of caution," then there is certainly no constitutional basis for granting the relief the Debtors seek. In contrast, if what the Debtors seek is actually to pre-determine issues they anticipate they might have to litigate at some point in the future, not only is there no constitutional grounds for granting their motion before the relevant issues are actually joined in an actual case or controversy, their efforts to short-circuit the proper resolution of the issues is also obviously improper. Either way, the Stay Motion fails.

Wholly apart from the constitutional consideration raised above, the Stay Motion is otherwise procedurally improper, one-sided, unnecessary, and overbroad. *First*, the motion is

procedurally improper because, fundamentally, the Debtors seek, if not an advisory opinion, declaratory relief regarding the applicability and scope of the limited injunction provided for under the Bankruptcy Code's automatic stay provisions. Rule 7001 of the Federal Rules of Bankruptcy Procedure, applicable in Title III under Section 310 of PROMESA, requires that any request "to obtain an injunction or other equitable relief…[,] or "to obtain a declaratory judgment related [thereto]" must be brought by adversary proceeding. *See* FED. R. BANKR. P. 7001. The Debtors' failure to comply with Rule 7001 warrants the outright denial of their improperly filed Stay Motion. *See Feld v. Zale Corp.*, 62 F.3d 746, 763, 766 (5th Cir. 1995) (dissolving injunction issued by bankruptcy court that was not commenced by adversary proceeding); *In re Ying Hua Tam*, No. 12-06379 (Bankr. W.D. Mich. Jan. 25, 2013), [Dkt. No. 74] (denying a request for declaratory judgment because "a litigant in bankruptcy court may seek declaratory judgment and injunctive relief only by filing a complaint and commencing an adversary proceeding, not by merely filing a motion"); *In re Bora Bora Inc.*, 424 B.R. 17, 24 (Bankr. D.P.R. 2010) ("A request for injunctive relief must be brought by adversary proceeding.").

*Second*, the Stay Motion is improperly one-sided and prejudicial in its presentation of the issues. As noted, the motion requests essentially a blanket stay of numerous actions pending in this Court and elsewhere, citing Sections 362(a) and 922(a) of the Bankruptcy Code as the basis for that relief. The motion, however, fails to address, let alone mention, subsection (d) of Section 922. That subsection provides that bonds secured by "special revenues" are exempt from the stay to begin with. *See* 11 U.S.C. § 922(d); *see also* Brief of Peaje Investments LLC, at 12-16, *Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority, et al.*, Adv. Proc. Nos. 17-00151-LTS & 17-00152-LTS (D.P.R.) [Dkt. No. 2]. Nor does the Stay Motion acknowledge or exclude the Adversary Proceedings pending before the Court in which, among

7

other things, Peaje seeks declaratory relief that the stay does not apply to Peaje's bonds because the bonds are secured by certain toll revenues that qualify as "special revenues" under the statute.

In contrast, as they pertain to Peaje, the relevant issues will be fully briefed and argued in the context of the ongoing Adversary Proceedings. There is no reason for a pre-determination of any of the relevant issues through the vehicle of deciding the Stay Motion.

*Third*, aside from ignoring the "special revenues" exemption from stay, the Debtors' requested relief is overbroad in other respects. Among other things, the Debtors request a blanket stay of the pending Adversary Proceedings in their entirety, without distinguishing between pre- and post-Title III claims. The stay of judicial proceedings found in Section 362(a) of the Bankruptcy Code makes clear that it only applies to "claim[s] against the debtor that arose before the commencement of the case…." 11 U.S.C. § 362(a)(1). In this way, the Stay Motion actually seeks relief beyond what is available under the relevant statute. Moreover, the Stay Motion seeks to extend the stay to Government Officers, Agents, and Representatives of the Commonwealth and its instrumentalities, regardless of whether such individuals are acting in their official capacity or are inhabitants of the island. Such relief is similarly unavailable under the statute. *See* 11 U.S.C. § 922(a).

By the same token, the proposed form of order is problematic because it would stay proceedings against Government Officers, Agents, and Representatives, even if such proceedings do not "seek[] to enforce a claim against the debtor…." The statute clearly forecloses that result. *See id.* To the extent the Debtors want to extend or expand the scope of the stay, they must first file an adversary proceeding and meet a higher standard, either satisfying the elements for a preliminary injunction or showing "unusual circumstances" to extend the stay. *See Bora Bora*, 424 B.R. at 24-28 (denying debtor's motion to extend the protections of the automatic stay to a

non-debtor because the debtor failed to initiate its request by adversary proceeding and further because the debtor failed to show either irreparable harm in the preliminary injunction context or unusual circumstances for an extension of the stay). The Debtors do not even attempt to meet either of those standards.

The Debtors assert that approval of the Stay Motion is necessary "to advise third parties of the existence and effect of the Title III Stay…through a separate Court order." *See* Stay Motion ¶ 23. But that only further underscores the improperly advisory nature of the relief they are seeking. In addition, there is simply no need for the advice. As the Debtors admit, the automatic stay, where applicable, is "self-executing" and "global" in nature. *See id*. at ¶ 22. In the absence of an actual case or controversy over its scope, there is no need for any additional advisory gloss. Accordingly, the Court should deny the Stay Motion.[3]

**B.     The Court Should Deny the Debtors' Request Made in the Joint Administration Motion to Render the Initial Debtors' Bank Accounts Motion Applicable to HTA.**

Peaje does not take issue with the procedural joint administration of the Initial Debtors' Title III cases with the Title III cases of HTA and ERS. Instead, Peaje only objects to the Debtors' request that any relief granted with respect to the Initial Debtors' Bank Accounts Motion be made applicable to HTA.

The Bank Accounts Motion requests a broad exculpation of the Initial Debtors' banks. In particular, the proposed form of order submitted with that motion provides that the banks can rely on the Initial Debtors' payment instructions "without any…duty of further inquiry and

---

[3] At a minimum, to the extent the Court were to grant the Stay Motion, the order should clarify that, as a general matter, the stay's application is subject to the relevant exemptions contained in Sections 362 and 922 of the Bankruptcy Code (including, without limitation, subsection (d) of Section 922), and in particular, that Peaje and the Adversary Proceedings are exempt from the order's effect.

9

Case:17-03283-LTS Doc#:359 Filed:06/16/17 Entered:06/16/17 13:27:43 Desc: Main
Document Page 13 of 15

without incurring any liability therefor." Bank Accounts Motion, Ex. A ¶ 3. Numerous creditors of the Initial Debtors objected to the Bank Accounts Motion on the basis that the Court lacked jurisdiction to grant the exculpation and that there was no statutory basis for the relief. At the first day hearing in the Initial Debtors' cases, the Court declined to rule on the Bank Accounts Motion, instead taking the matter under advisement pending the parties' attempt to negotiate a consensual resolution. To date, a revised form of order has not been presented to the Court. Nor has an update regarding the status of the parties' negotiations been made publicly available.

The Bank Accounts Motion did not seek relief with respect to the financial institutions that provide banking services to HTA. The Joint Administration Motion attempts to change that by requesting that any relief granted in respect of the Initial Debtors' Bank Accounts Motion be made applicable to HTA. As applied to HTA, Peaje has many of the same concerns regarding exculpation of the banks that were raised on the record of the Initial Debtors' first day hearing.

As a threshold matter, the Court lacks subject matter jurisdiction to exculpate the banks because, once again, there is presently no live case or controversy with respect to this issue and any such exculpation would be advisory. The Bank Accounts Motion merely alleges that the exculpation of the banks is necessary because otherwise "the [b]anks may be hesitant" to follow instructions that concern them as potentially breaking the law. *See* Bank Accounts Motion ¶ 14. Absent is any identification of the banks that are to be exculpated. Nor are the to-be-immunized payment instructions actually before the Court at this time. Presented with a completely hypothetical set of facts, the Court does not have any evidence of an actual, ripe controversy.[4]

---

[4] Assuming there were a present case or controversy (which there is not), the Bank Accounts Motion would still be unripe on prudential grounds. *See, e.g.*, *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008) (Sotomayor, J.).

10

Aside from being fraught with jurisdictional infirmities, the requested exculpation of the banks lacks any statutory basis. The only statutory grounds presented in the Bank Accounts Motion is Section 105(a) of the Bankruptcy Code. That provision, however, "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity….'" *New Engl. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (citation omitted)); *see also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000). Because there is no independent right supporting the exculpation, Section 105(a) cannot spring into action.

Further, as the holder of a lien on various funds collected by HTA, Peaje objects to any determination, authorization, or other form of relief that indicates, suggests, or provides that the Debtors are authorized to continue taking and dissipating Peaje's collateral, or that otherwise purports to defeat or affect Peaje's rights with respect to its collateral.

Accordingly, the Court should strike the Debtors' request to render the Initial Debtors' Bank Accounts Motion applicable to HTA. Any request to exculpate any specific HTA bank should be made by separate motion that sets forth the specific bank and specific conduct for which exculpation is sought. Such a motion should be filed on sufficient notice to allow for full briefing on the significant jurisdictional and statutory issues presented. In addition, any order on the motion should provide, at a minimum, that its terms do not authorize the continued taking and dissipation of Peaje's collateral, or otherwise impair Peaje's rights with respect to its collateral. Nonetheless, to the extent that the Joint Administration is granted without modification, Peaje reserves the right to object to any proposed form of order presented in the Initial Debtors' cases with respect to the Bank Accounts Motion.

**PRAYER FOR RELIEF**

WHEREFORE, Peaje respectfully requests that the Court sustain Peaje's objection to the Debtors' Stay Motion and Joint Administration Motion, and grant such further relief to Peaje as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 16th day of June, 2017.

| | |
|---|---|
| **MONSERRATE SIMONET & GIERBOLINI, LLC** | **DECHERT LLP** |
| | |
| | _/s/ Allan S. Brilliant_ |
| Dora L. Monserrate Peñagarícano | Allan S. Brilliant* |
| USDC-PR No. 212612 | Robert J. Jossen* |
| 101 San Patricio Avenue | Andrew C. Harmeyer* |
| Maramar Plaza, Suite 1120 | 1095 Avenue of the Americas |
| Guaynabo, Puerto Rico 00968 | New York, New York 10036 |
| Phone:  (787) 620-5300 | |
| Fax:     (787) 620-5305 | -and- |
| | |
| | G. Eric Brunstad, Jr.* |
| | 90 State House Square |
| | Hartford, Connecticut 06103 |
| | |
| | -and- |
| | |
| | Stuart T. Steinberg* |
| | Cira Centre |
| | 2929 Arch Street |
| | Philadelphia, Pennsylvania 19104 |

*Attorneys for Peaje Investments LLC*

\* Admitted *pro hac vice* in Nos. 17 BK 3283-LTS and 17 BK 3567-LTS.