**Hearing Date:** June 28, 2017 at 9:30 a.m. (Prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>     as representative of<br><br>The Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation ("COFINA"),<br><br>               Debtors. | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>No. 17 BK 3284-LTS<br><br><br>(Jointly Administered)[1] |

## OBJECTION OF MUTUAL FUND GROUP AND
## THE PUERTO RICO FUNDS TO DEBTORS'
## MOTION FOR ORDER APPROVING PROCEDURE
## TO RESOLVE COMMONWEALTH-COFINA DISPUTE

---

[1] Pursuant to Paragraph 5 of the Joint Administration Order entered in lead Case No. 17 BK 3283-LTS [ECF No. 242], this pleading will be filed in both the lead Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND...........................................................................................................................2

ARGUMENT ................................................................................................................................6

I.   PROMESA Does Not Authorize an "Agent" To Take Control of Collateral in
     Which the Bondholders Have the Overwhelming Economic Interest ...............................6

II.  The Proposed Order Orchestrates a Collusive Litigation and Settlement Process
     That Violates Article III and the Due Process Clauses of the United States
     Constitution and Deprives Objectors of Adequate Protection of Their Collateral .............8

     A.   Collusive Litigation Violates Article III. ................................................................8

     B.   The Proposed Order's Settlement Procedures Violate Rule 9019 and Deny
          Due Process.........................................................................................................9

     C.   The Proposed Order Strips Collateral and Denies Adequate Protection ..............10

     D.   The Proposed Order Violates the Federal Rules of Civil Procedure ....................11

     E.   The Litigation Schedule Prejudices COFINA ......................................................12

III. The Proposed Order Improperly Requires this Court to Determine a Controlling
     Issue of Law Under the Puerto Rico Constitution ..........................................................13

CONCLUSION..........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006) ........................................................................7

*Armstrong v. United States*,
    364 U.S. 40 (1960) .........................................................................................................14

*Craig v. McCarty Ranch Trust (In re Cassidy Land & Cattle Co.)*,
    836 F.2d 1130 (8th Cir. 1988) .......................................................................................7

*Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*,
    1991 Del. Ch. LEXIS 215 (Del Ch. 1991) ...................................................................10

*In re Emerging Communications*,
    2007 Bankr. LEXIS 4763 (Bankr. D. V.I. Feb. 13, 2007) ...........................................7

*Lex Claims, LLC v. Financial Oversight and Management Board*,
    853 F.3d 548 (1st Cir. 2017) ..........................................................................................4

*Lex Claims, LLC v. Garcia-Padilla*,
    2017 WL 657432 (D. P.R. Feb. 17, 2017) ..................................................................12

*Louisville Bank v. Radford*,
    295 U.S. 555 (1935) .....................................................................................................14

*Murray v. United States*,
    817 F.2d 1580 (Fed. Cir. 1987) ...................................................................................14

*Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S 414 (1968) ......................................................................................................10

*Romero v. Colegio de Abogados de Puerto Rico*,
    204 F.3d 291 (1st Cir. 2000) ........................................................................................15

*Rudin v. Tax Comm'n (In re Olympia & York Maiden Lane Co., LLC)*,
    233 B.R. 662 (Bankr. S.D.N.Y. 1999) ..........................................................................7

*Santana v. Calderon*,
    342 F.3d 18 (1st Cir. 2003) ..........................................................................................15

*United States v. Johnson*,
    319 U.S. 302 (1943) .......................................................................................................9

*United States v. Sec. Indus. Bank*,
  459 U.S. 70 (1982)................................................................................14

**Statutes**

11 U.S.C. § 105................................................................................6, 7

11 U.S.C. § 552(a)................................................................................14

11 U.S.C. § 928(b)................................................................................14

48 U.S.C. § 2124(b)................................................................................8

Act of July 5, 2007, No.56-2007................................................................................3

Act of May 13, 2006, No. 91-2006................................................................................3

**Other Authorities**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 316 (1977)................................................................................7

S. Rep. No. 95-989, 95th Cong., 2d. Sess. 29 (1978)................................................................................7

The Mutual Fund Group[2] and the Puerto Rico Funds[3] ("**Objectors**"), who collectively hold over $4 billion in COFINA senior and subordinate bonds, object to the Debtors' Motion for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute (the "**Protocol Motion**") [Dkt. No. 303], filed by the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), and in support of their objection respectfully state as follows:

<u>PRELIMINARY STATEMENT</u>

The Court should deny the Protocol Motion. The Oversight Board seeks – without any legal authority – to wrest control over the Commonwealth-COFINA Dispute[4] through entry of an order (the "**Proposed Order**") that would exceed the bounds of PROMESA and violate the United States Constitution.

The Proposed Order would appoint an agent to enforce COFINA's right to pledged revenues in which COFINA itself has only minimal equity – the agent would act as a receiver. There is no authority for such appointment.

The Proposed Order provides for a collusive litigation between the Oversight Board's own agents, on the Oversight Board's own schedule, with the Oversight Board retaining the power to settle, in violation of Article III of the United States Constitution.

---

[2] The Mutual Fund Group consists of mutual funds managed by Oppenheimer Funds, Inc., Franklin Advisers, Inc., and the First Puerto Rico Family of Funds.

[3] The Puerto Rico Funds are the following Puerto Rico-based funds: Puerto Rico AAA Portfolio Bond Fund II, Inc.; Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Investors Bond Fund I; Puerto Rico Investors Tax-Free Fund, Inc.; Puerto Rico Investors Tax-Free Fund, Inc. II; Puerto Rico Investors Tax-Free Fund III, Inc.; Puerto Rico Investors Tax-Free Fund IV, Inc.; Puerto Rico Investors Tax-Free Fund V, Inc.; Puerto Rico Investors Tax-Free Fund VI, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund.

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the Protocol Motion.

The Proposed Order imposes an untenable litigation schedule, prejudicing COFINA in the enforcement of its rights and denying bondholders adequate protection of their collateral.

The Proposed Order authorizes compromise of bondholder collateral without even a hearing – denying bondholders both adequate protection and due process.

Finally, the Proposed Order contemplates determination by this federal Court of an unprecedented issue of law under Puerto Rico's Constitution – contrary to the practice of the U.S. Court of Appeals for the First Circuit and unjustifiable given the pendency of motions to certify the issue to the Puerto Rico Supreme Court in the *Lex Claims* litigation.

Puerto Rico law is the lynchpin. Under the United States Constitution, federal law cannot deprive COFINA and its bondholders of property interests that are valid under Puerto Rico law. If, under Puerto Rico law, COFINA owns the revenues it pledged to its bonds, PROMESA is powerless to take the revenues away. The only issue in this dispute is whether Puerto Rico statutes transferring revenues to COFINA and securing its bonds are valid under Puerto Rico's Constitution – an unprecedented issue that can only be decided definitively by the Puerto Rico Supreme Court, and can be so decided prior to November 1.

## BACKGROUND

The Objectors are mutual funds and long-time holders of COFINA senior and subordinate bonds (the "**Senior Bonds**" and "**Subordinate Bonds**" and together the "**COFINA Bonds**" and the holders of such bonds, the "**COFINA Bondholders**") that manage investments on behalf of hundreds of thousands of individual shareholders residing in Puerto Rico and in virtually every state. Objectors comprise the largest known group of COFINA creditors.

The Commonwealth established COFINA a decade ago, enacting legislation that transferred a portion of its sales and use tax revenues ("**SUT**") to COFINA and pledged the SUT

2

to secure COFINA Bonds. *See generally* Act of May 13, 2006, No. 91-2006 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a *et seq.*); Act of July 5, 2007, No. 56-2007.  COFINA issued over $17 billion of senior and subordinate bonds secured by a pledge of the SUT.

The vast majority of the SUT received by COFINA in any year is used to pay debt service on COFINA Bonds – in the coming fiscal year, COFINA's expected SUT totals $753,074,280.35, covering debt service of $708,429,290.80 (after $3,905,920.95 of net subsidies).[5]  Thus the COFINA Bonds have, through the pledge of the SUT, the overwhelming economic interest in the SUT.

COFINA Bonds were rated higher and sold at lower interest rates than other Commonwealth debt.  They were widely purchased by major institutional holders such as the Mutual Fund Group (who have held COFINA Bonds for years) and many thousands of residents of Puerto Rico.[6]  The COFINA Bonds are governed by an Amended and Restated Sales Tax Bond Resolution, as amended on June 10, 2009 (as amended, the "**Resolution**").

## The *Lex Claims* Litigation

In 2016, holders of general obligation bonds ("**GOs**") led by Lex Claims LLC sued for a declaratory judgment that SUT transferred by statute to COFINA and pledged to COFINA bondholders a decade ago are, nevertheless, "available resources" for the Commonwealth's current and future budgets.  Therefore (they argued) COFINA's SUT was actually dedicated to the prior payment of GOs under Article VI, Section 8 of Puerto Rico's Constitution.  *See generally Lex*

---

[5] Financial information is available on COFINA's website at http://www.bgfpr.com/investors_resources/cofina.html.

[6] Bondcom, the firm hired by the Government Development Bank to compile a database of holders of Puerto Rico bonds, estimates that 50% of all Puerto Rico bonds are held by individuals: "The miracle of Puerto Rico is the enormous quantity of people that have invested and are Puerto Ricans."  Joel Cintrón Arbasetti & Carla Minet, *The GDB Already Knows Who the Bondholders Are but Holds on to The Information*, (Oct. 28, 2015), *available at* http://periodismoinvestigativo.com/2015/10/the-gdb-already-knows-who-the-bondholders-are-but-holds-on-to-the-information.

3

*Claims, LLC v. Alejandro Garcia Padilla, et al.*, No. 16-023744 (FAB) (D. P.R. 2016) (the "**Lex Claims** Litigation**").

*Lex Claims*' novel theory flies in the face of opinions by senior legal officers of both New Progressive Party of Puerto Rico and Popular Democratic Party administrations, as well as by two outside legal counsel that likewise opined that the COFINA transfers were valid and noted that COFINA-like structures were in wide use in other jurisdictions, including New York, which has a constitutional provision similar to that of Puerto Rico.[7]  *See* N.Y. Const. art. VIII, § 2.

Nevertheless, issue was joined before Judge Besosa in the U.S. District Court for the District of Puerto Rico.  The *Lex Claims* plaintiffs named COFINA and COFINA's trustee, Bank of New York Mellon, as defendants.  Numerous COFINA bondholders, including Objectors, sought and were granted leave to intervene on the grounds that none of the putative defendants – not the Trustee and not COFINA – were adequate representatives of the senior and junior COFINA bonds.  Certain intervenors filed motions to dismiss.  The Mutual Fund Group filed an answer and motion for judgment on the pleadings.  [*Lex Claims* Dkt. Nos. 224, 225.]  The Puerto Rico Funds filed a motion to certify the controlling issues of Puerto Rico law to the Puerto Rico Supreme Court, as did Ambac and the COFINA Senior Coalition (the "**Certification Motions**") [Lex Claim Dkt. Nos. 221, 223, 232].

The U.S. Court of Appeals for the First Circuit stayed the *Lex Claims* Litigation under PROMESA § 405, *Lex Claims, LLC v. Financial Oversight and Management Board*, 853 F.3d 548 (1st Cir. 2017), and it remains stayed under Title III's automatic stay.  The Objectors have moved

---

[7] In 2013, 425 state and local governments issued bonds secured by sales tax or similar revenues.  *See* Moody's Investors Service, "Rating Methodology: US Public Finance Special Tax Methodology," at 4 (Jan. 31, 2014).

for relief from the stay to prosecute the Certification Motions.  [Case No. 17-BK-03283, Dkt. No. 270; Case No. 17-BK-03284, Dkt. No. 139.]

**The Commonwealth's Alleged Cash
Needs and the November 1 Deadline**

On April 29, 2017, Puerto Rico enacted the Fiscal Plan Compliance Law; chapters 4 and 6 were perceived as authorizing the Commonwealth's expropriation of funds from COFINA's account.  Governor Rossello later clarified that chapter 4 did not apply to COFINA and the Commonwealth has taken no action under chapter 6.  *See* Explanatory Statement by the Governor of Puerto Rico when Signing House Bill 938, Gov. Ricardo Roselló Nevares (Apr. 29, 2017).

However, the Fiscal Plan certified by the Oversight Board contemplates the Commonwealth's expropriation of all COFINA SUT because the Oversight Board announced in January 2017 – before it had an executive director, staff or an office and after a mere two months' work by its professionals – that the Commonwealth had only $780 million in cash flow available for debt service.  Notwithstanding the Oversight Board's protestations to the contrary, it is not clear that the Commonwealth will need COFINA's SUT to fund its necessary expenses either in the coming fiscal year or in the future.[8]

On May 17, counsel to the Oversight Board and to AAFAF represented to the Court that the Commonwealth would not seek to expropriate COFINA's funds except on 30 days' prior notice.  *See* May 17, 2017 Hearing Transcript at 70:15-21, 73:23-74:3, 78:22-79:2.  The Protocol Motion represents that the Commonwealth will need COFINA's SUT by November 1, although

---

[8] The $780 million estimate appears to be a manufactured number, because it is based on deduction of a budgetary "reserve" of approximately $600 million a year and the pre-funding of future pension benefits and capital expenditures that are, by law, junior to debt service.

that may be a deadline manufactured by voluntary pre-payments[9] and belied by an $800 million increase in cash on hand as of June 30, 2017[10] – an increase exceeding the total amount of COFINA's SUT in the coming fiscal year.  Nevertheless, the Oversight Board justifies its Proposed Order by arguing that it will deliver a final judgment or settlement by November 1.

<u>**ARGUMENT**</u>

**I.      PROMESA Does Not Authorize an "Agent" To Take Control of Collateral in Which the Bondholders Have the Overwhelming Economic Interest**

COFINA's SUT is pledged to secure over $17 billion of bonds – thus it is the COFINA bondholders, not COFINA, that hold the overwhelming economic interest in the Commonwealth-COFINA Dispute, and it is the COFINA bondholders, not COFINA, that should dictate litigation strategy.  The bondholders have already intervened to protect their economic interest in the *Lex Claims* litigation.  The Proposed Order takes the prosecution of the Commonwealth-COFINA Dispute away from bondholders who are the real parties in interest and gives it to an "agent" for a debtor with only a marginal stake.  Doing so prejudices the bonds and constitutes a denial of adequate protection.

The Oversight Board argues that section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and PROMESA section 104(b) authorize the appointment of an agent to prosecute COFINA's rights against the Commonwealth that are pledged to bondholders.  Neither provision contains such authority, which would contradict section 105(b)'s flat prohibition on the appointment of a receiver:

---

[9] The Commonwealth's June 12, 2017 Treasury Single Account ("**TSA**") Cash Flow Report shows $373 million in outstanding accounts payable, down from $1.6 billion as of June 2016 (reported in the Commonwealth's Financial Report) and $2 billion in June 2015.  The Fiscal Plan provides for the General Fund to spend $537 million as "extra pension contribution" – i.e., pension payments not required to pay current benefits.  The 2018 budget projects capital expenditures increasing from $895.2 million in FYE 2017 to $1.2 billion in FYE 2018.

[10] The Commonwealth's Fiscal Plan projected $295 million of cash on hand as of June 30, 2017; the TSA report released on June 12, 2017 shows projected cash on hand at $1.15 billion.

> (b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

11 U.S.C. § 105(b); *see also* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 316 (1977); S. Rep. No. 95-989, 95th Cong., 2d. Sess. 29 (1978) ("[T]he bankruptcy judge is prohibited from appointing a receiver in a case under title 11 under any circumstances.").

The COFINA agent would be a receiver appointed solely by authority of PROMESA, which incorporates Bankruptcy Code section 105(b) and thus specifically precludes the appointment of a receiver.[11]

The relief sought by the Oversight Board could also be likened to parties seeking the appointment of a "non-statutory fiduciary" in chapter 11 cases – which has been rejected.  *See In re Emerging Communications*, 2007 Bankr. LEXIS 4763 at *17-19 (Bankr. D. V.I. Feb. 13, 2007); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006).  As the court noted in *Adelphia*:

> The Second Circuit has repeatedly held that the lower courts cannot use section 105(a) to circumvent the Code.  Using section 105(a) to appoint a fiduciary to act as a trustee shorn of the name, but with few other substantive differences, would be the exact kind of wrongful judicial action that the Second Circuit has forbidden.

336 B.R. at 664 (footnote omitted).

The Oversight Board also relies on PROMESA section 104(b) for authority to appoint a COFINA agent, but the statute instead shows why the Protocol Motion should be denied:

> Any member or agent of the Oversight Board may, if authorized by the Oversight Board, take any action that the Oversight Board is authorized to take by this section.

---

[11] Some cases have allowed bankruptcy courts to appoint (or maintain) receivers under non-bankruptcy law.  *E.g., Craig v. McCarty Ranch Trust (In re Cassidy Land & Cattle Co.)*, 836 F.2d 1130, 1133 (8th Cir. 1988); *Rudin v. Tax Comm'n (In re Olympia & York Maiden Lane Co., LLC)*, 233 B.R. 662, 666-67 (Bankr. S.D.N.Y. 1999).  Those opinions have no relevance here, except in so far as they hold that a bankruptcy court has no power to appoint a receiver in lieu of a trustee – exactly what the Oversight Board is seeking to do here.

48 U.S.C. § 2124(b).

Section 104(b) authorizes the Oversight Board to act through its duly authorized agents, nothing more.  Under the civil law of Puerto Rico, "[a]n agent is a person who has contracted 'to render some service or to do something for the account or at the request of another.'"  *Colon v. Blades*, 914 F. Supp. 2d 181, 189 (D.P.R. 2011) (quoting 31 L.P.R.A. § 4421).  PROMESA authorizes appointment of someone to act on behalf of the Oversight Board: it does not authorize the Oversight Board to appoint an agent to represent COFINA *independent* of the Oversight Board itself.

Indeed, an agent appointed under Section 104(b) would explicitly act *not* as an unconflicted representative of COFINA but as an agent of the Oversight Board.  The Proposed Order itself shows as much:  section 2k provides that the Oversight Board can always take the Commonwealth-COFINA Dispute away from COFINA's agent by proposing a plan.  The Oversight Board's ability to take back the litigation is particularly problematic since the Board speaks for the Commonwealth as well, and its principal goal may be to assist the Commonwealth by taking property pledged to COFINA's secured bondholders.

II. **The Proposed Order Orchestrates a Collusive Litigation and Settlement Process That Violates Article III and the Due Process Clauses of the United States Constitution and Deprives Objectors of Adequate Protection of Their Collateral**

A. **Collusive Litigation Violates Article III**

Proposed Order section 2g provides:

> The Agents shall cooperate to commence the litigation to resolve the Commonwealth-COFINA Dispute by no later than ten (10) days after the Agents are appointed.  In advance of the commencement of such litigation, the Agents, the Oversight Board and AAFAF shall agree to a schedule constructed to enable the Court to rule on a final basis, on the Commonwealth-COFINA Dispute, on or before November 1, 2017, in the absence of a prior settlement.

The Oversight Board thus picks the litigants (and by implication, the litigation strategy of both sides), sets the schedule for the litigation, determines in advance when the litigation must end, and – perhaps most egregious of all – can settle the litigation without the consent of COFINA's agent through a plan.  Even without a plan, the Oversight Board would be the final arbiter of the Commonwealth-COFINA Dispute with authority to approve a settlement without the Court's approval.

Article III of the United States Constitution limits the jurisdiction of the federal courts to "cases and controversies."  The litigation machined by the Proposed Order is collusive.  It does not qualify as a "case and controversy" over which this Court may take jurisdiction.  *See United States v. Johnson*, 319 U.S. 302 (1943) (where landlord arranged for tenant to sue to enforce rent control laws, the suit was "collusive" and therefore did not qualify as a case or controversy subject to the jurisdiction of the federal courts).

### B. The Proposed Order's Settlement Procedures Violate Rule 9019 and Deny Due Process

Proposed Order section 2j provides:

> Any settlement negotiated by the Agents shall only be effective upon ***(i) consent of the Oversight Board***, (ii) an order of the Court granting an Oversight Board motion requesting approval of such settlement, ***or*** (iii) confirmation of a title III plan of adjustment incorporating such settlement.

If the COFINA agent compromises the collateral securing Objectors' bonds, the Oversight Board's "consent" to that compromise eliminates any requirement of court approval in violation of Bankruptcy Rule 9019.  Objectors' rights – which they are seeking to vindicate in their own names in the *Lex Claims* litigation – are destroyed without any judicial process at all.

9

### C.        The Proposed Order Strips Collateral and Denies Adequate Protection

Proposed Order section 2h denies adequate protection by directing the agent to litigate from the perspective of what is best for the Debtors even if that strips collateral from the bondholders:

> Each Agent shall endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents based on the Agent's estimation of the probabilities of the potential outcomes, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents, consistent with the approach explained by Chancellor Allen of the Delaware Chancery Court in *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, 1991 Del. Ch. LEXIS 215* 108 n.55 (Del. Ch 1991) and espoused in *Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S 414, 424-25 (1968).

The *Credit Lyonnais* and *TMT* standards may be appropriate to guide litigation and settlement of an unpledged lawsuit, since the unsecured creditors and shareholders of *Pathe Communications* or *TMT Trailer Ferry* did not hold liens that were entitled to adequate protection.

Those standards are not, however, appropriate to guide litigation and settlement of the COFINA SUT that secures the Objectors' bonds.  Indeed, giving settlement authority to a representative of COFINA, rather than a representative of its secured bondholders, flies in the face of *Credit Lyonnais*'s recognition that parties with only a marginal stake are likely to make decisions contrary to parties with the main stake.

Today, COFINA bondholders have an interest in COFINA SUT that, if vindicated, pays them in full.  The COFINA agent's "business judgment" that COFINA should give up a percentage of its SUT may be justifiable with respect to COFINA, but it should not deprive bondholders, such as Objectors, of collateral they are already litigating to protect.

10

### D.   The Proposed Order Violates the Federal Rules of Civil Procedure

The Proposed Order, in limiting participation in litigation of the Commonwealth-COFINA Dispute to the Oversight Board's two hand-picked adversaries, violates the Federal Rules of Civil Procedure.

Rule 19, dealing with required joinder of parties, provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction ***must be joined as a party*** if . . .
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest . . . .

Fed. R. Civ. P. 19(a)(1)(B)(i) (emphasis added).  The Objectors claim an interest relating to the Commonwealth-COFINA Dispute, and will be impaired in their ability to vindicate that interest if they are not joined as parties.

In addition, Rule 24, dealing with intervention, provides that the court "***must***" permit anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added).  For the same reasons joinder is required under Rule 19, the Objectors also have the right to intervene under Rule 24.  No party to the dispute will adequately represent the Objectors' interests, because the Proposed Order expressly states that the Board's agents owe no duty to "any particular type of creditor."  Proposed Order ¶ 2h.[12]

---

[12] Rules 19 and 24 are applicable to adversary proceedings, *see* Fed. R. Bankr. P. 7019, 7024, and the Commonwealth-COFINA Dispute, which seeks, among other things, to "determine the validity, priority, or extent of a lien or other interest in property," Fed. R. Bankr. P. 7001, would have to be filed as an adversary proceeding.

The Proposed Order is, in reality, a request for this Court to reverse the intervention decisions of Judge Besosa in the *Lex Claims* litigation – who, in granting intervention, has already determined that the original defendants in that litigation (including COFINA) would not adequately represent the interests of COFINA Bondholders. *Lex Claims, LLC v. Garcia-Padilla*, 2017 WL 657432, at *14 (D. P.R. Feb. 17, 2017).

### E.     The Litigation Schedule Prejudices COFINA

The Proposed Order dictates a litigation schedule that prejudices COFINA and denies adequate protection to its bondholders.

First, COFINA and Commonwealth creditors have to come up with nominees for the agents.

Then each nominee will have to make the disclosures necessary to clear conflict of interest restrictions under both federal law[13] (which delayed the appointment of the Oversight Board itself for months[14]) and Puerto Rican law.[15]

Then the Oversight Board will select the agents and finally the agents must find unconflicted Puerto Rico counsel (which may not be possible).

After all that:

- the proposed Order gives "*ten (10) days*" for new counsel to become sufficiently expert in Puerto Rico's constitution, constitutional debates, relevant statutes, legislative history and the aforementioned legal opinions to commence a litigation, and

- the agents must agree on a schedule that completes such litigation in the narrow time still remaining before November 1.

---

[13] PROMESA § 109(a).

[14] http://caribbeanbusiness.com/conflicts-of-interest-rule-weakens-promesa-junta/

[15] https://www.elnuevodia.com/english/english/nota/thefiscaloversightboardwantstotackleconflictsofinterest-2328706/

No responsible advocate for COFINA would agree to such limitations on its litigation – the set-up and schedule are imposed not in COFINA's interests but in the interests of the Commonwealth.

This collusive litigation on untenable conditions will prejudice real parties in interest (bondholders) who won the right to defend their revenue pledge in the *Lex Claims* Litigation.  That litigation is already in progress, with COFINA's interests defended by well-prepared counsel for COFINA Bondholders, including the Objectors.

The Proposed Order does not serve the interests of justice, and denies bondholders adequate protection, by substituting a collusive litigation for a real one.

**III.    The Proposed Order Improperly Requires this Court to Determine a Controlling Issue of Law Under the Puerto Rico Constitution**

The Commonwealth-COFINA Dispute is entirely a matter of Puerto Rican law – because Puerto Rican law determines whether SUT transferred to COFINA in 2006 and pledged to COFINA bondholders in 2007 is nevertheless, as the *Lex Claims* plaintiffs assert, "available resources" under Article VI Section 8 of the Puerto Rican Constitution and thereby dedicated to the prior payment of GOs.

If the *Lex Claims* plaintiffs are wrong, COFINA **_owns_** its SUT – actual title to the SUT. No federal law can take that away:

> [H]owever great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation.

*United States v. Sec. Indus. Bank*, 459 U.S. 70, 77 (1982) (upholding lien against invalidation under Bankruptcy Code).

Thus, the Protocol Motion misconstrues the Commonwealth-COFINA Dispute when it states that it "covers the broader question whether federal law impacts the answer to whether the Pledged Sales Taxes are property of the Commonwealth title III debtor or the COFINA title III

13

debtor and what that impact is."  Neither section 552(a) nor 928(b) of the Bankruptcy Code, nor any other provision therein, can operate to take the Bondholders' property.[16]

COFINA obtained its interest in the SUT, and the COFINA Bondholders obtained their pledge of the SUT, at a time when bankruptcy relief was not available to COFINA or any other Puerto Rico governmental entity.  Federal law cannot retroactively destroy pre-existing liens. *Armstrong v. United States*, 364 U.S. 40, 44-45 (1960); *Louisville Bank v. Radford*, 295 U.S. 555 (1935); *Murray v. United States*, 817 F.2d 1580, 1583-84 (Fed. Cir. 1987) (IRS foreclosure of first lien without allowing second lienholders to redeem property was a taking).

Thus the controlling issue of law, indeed the only issue of law, is an issue of Puerto Rican constitutional law – for which there is no precedent.

The Proposed Order will require this Court to determine this issue of Puerto Rican constitutional law.  Litigation to a final judgment will require this Court (before November 1) to rule on whether Puerto Rico's constitution mandates reversion of COFINA's SUT to the Commonwealth notwithstanding COFINA's statutory rights.  A settlement will require this Court (before November 1) to rule on whether the settlement is "reasonable" in light of the probability (determined by this Court) that the Puerto Rico Supreme Court would rule in COFINA's favor.

Objectors respectfully submit that neither this Court, nor any federal court, should determine, in a final judgment or in approving a settlement, how the Puerto Rico Supreme Court would rule on this crucial question.  *See Santana v. Calderon*, 342 F.3d 18, 30-31 (1st Cir. 2003) (Where government employee asserted right to retain her job, "[o]nly the Supreme Court of Puerto Rico can definitively resolve this property right issue.  Therefore we urge the district court . . . to

---

[16] Indeed, to construe a Code section in such a way would raise serious constitutional questions, which the Court should endeavor to avoid.  *See, e.g., Peaje Investments, LLC v. Garcia-Padilla*, 845 F.3d 505, 511 (1st Cir. 2017) (applying "cardinal principle" of constitutional avoidance to construction of PROMESA stay).

consult with the parties about the appropriateness of certifying to the Puerto Rico Supreme Court the Commonwealth constitutional issue."); *Romero v. Colegio de Abogados de Puerto Rico*, 204 F.3d 291, 305-306 (1st Cir. 2000) (ordering district court, on remand, to certify issues of Puerto Rican law to the Puerto Rico Supreme Court).

The stakes are higher even than the $750 million of contested annual SUT.

If this Court enters judgment invalidating the statutory transfer of revenues to COFINA and statutory pledge of revenues to COFINA, or if this Court imposes a settlement impairing such transfer and pledge, its actions will put in question any pledge, any security interest, and any lien on Commonwealth revenues, existing or future.  All pledges, security interests and liens would forever be subject to attack as an impermissible diversion of "available resources" under Puerto Rico's Constitution.  Puerto Rico would be locked out of the capital markets – if the Commonwealth cannot in the future grant a lien, it may not be able borrow at all.

Only the Supreme Court of Puerto Rico should decide whether the Puerto Rico Constitution voids all secured financing and hence bars Puerto Rico from the capital markets.  This Court should not enter the Proposed Order which requires it to make that decision.

## CONCLUSION

The Proposed Order's collusive litigation and settlement procedure is not only improper and unwise – it is not necessary.  The *Lex Claims* litigation is already set up to deliver a quick and definitive resolution of the COFINA-Commonwealth Dispute, and the parties hold sufficient COFINA Bonds – a majority in each class – to negotiate a settlement if there is to be a settlement.

For the foregoing reasons, Objectors respectfully request that the Court deny the Protocol Motion and the relief requested therein.

I hereby certify that, on this same date, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

**RESPECTFULLY SUBMITTED,**
In San Juan, Puerto Rico, today June 16, 2017.

**TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.**

*s/ Manuel Fernández-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

*s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

*s/ Thomas Moers Mayer*
AMY CATON
THOMAS MOERS MAYER
PHILIP BENTLEY
GREGORY A. HOROWITZ
DAVID E. BLABEY JR.
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: acaton@kramerlevin.com
        tmayer@kramerlevin.com
        pbentley@kramerlevin.com
        ghorowitz@kramerlevin.com
        dblabey@kramerlevin.com

*Counsel to the Mutual Fund Group*

16

 /s/ *José C. Sánchez-Castro*
José C. Sánchez-Castro
USDC-PR 213312
janchez@lsplawpr.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@lsplawpr.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@lsplawpr.com

LÓPEZ SÁNCHEZ & PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

*Counsel for Puerto Rico AAA Portfolio Bond Fund II,
Inc., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto
Rico AAA Portfolio Target Maturity Fund, Inc., Puerto
Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income
Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc.,
Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico
Fixed Income Fund V, Inc., Puerto Rico Fixed Income
Fund VI, Inc., Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico Investors Bond
Fund I, Puerto Rico Investors Tax-Free Fund, Inc.,
Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico
Investors Tax-Free Fund III, Inc., Puerto Rico Investors
Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free
Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI,
Inc., Puerto Rico Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc.,
Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto
Rico Target Maturity Fund, Inc. and UBS IRA Select
Growth & Income Puerto Rico Fund*

 /s/ *John K. Cunningham*
Glenn M. Kurtz
John K. Cunningham
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund
II, Inc., Puerto Rico AAA Portfolio Bond Fund,
Inc., Puerto Rico AAA Portfolio Target Maturity
Fund, Inc., Puerto Rico Fixed Income Fund, Inc.,
Puerto Rico Fixed Income Fund II, Inc., Puerto
Rico Fixed Income Fund III, Inc., Puerto Rico
Fixed Income Fund IV, Inc., Puerto Rico Fixed
Income Fund V, Inc., Puerto Rico Fixed Income
Fund VI, Inc., Puerto Rico GNMA & U.S.
Government Target Maturity Fund, Inc., Puerto
Rico Investors Bond Fund I, Puerto Rico Investors
Tax-Free Fund, Inc., Puerto Rico Investors Tax-
Free Fund, Inc. II, Puerto Rico Investors Tax-Free
Fund III, Inc., Puerto Rico Investors Tax-Free
Fund IV, Inc., Puerto Rico Investors Tax-Free
Fund V, Inc., Puerto Rico Investors Tax-Free
Fund VI, Inc., Puerto Rico Mortgage-Backed &
U.S. Government Securities Fund, Inc., Tax-Free
Puerto Rico Fund, Inc., Tax-Free Puerto Rico
Fund II, Inc., Tax-Free Puerto Rico Target
Maturity Fund, Inc. and UBS IRA Select Growth &
Income Puerto Rico Fund*

17