Hearing Date: June 28, 2017 at 9:30 a.m.

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S OBJECTION TO MOTION OF DEBTORS FOR ORDER APPROVING PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE

**FERRAIUOLI LLC**

221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

**MILBANK, TWEED, HADLEY & MCCLOY LLP**

28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile: (212) 822-5770

*Attorneys for Ambac Assurance Corporation*

---

[1] The Debtors in these title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA" and, together with the Commonwealth, the "Debtors") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

COFINA SENIOR REPRESENTATIVES' POINTS OF AGREEMENT .................................. 4

RELEVANT FACTUAL BACKGROUND ................................................................................ 5

OBJECTION ................................................................................................................................ 7

    I.      The Proposed Procedures Violate the Due Process and Takings Clauses of the Fifth Amendment of the U.S. Constitution ....................................................... 7

    II.     The Intra-COFINA Dispute Must be Resolved Before the Commonwealth-COFINA Dispute ............................................................................................... 9

    III.    The Proposed Procedures Assume the Validity of the Fiscal Plan, Which is Itself an Obstacle to Settlement ............................................................................ 11

    IV.    The Court Should Not Expedite the GO-COFINA Dispute Based on the Oversight Board's Unsubstantiated Assertion of Crisis ....................................... 12

    V.     The Oversight Board's Conflict Must Be Fully Addressed ................................. 13

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boddie v. Connecticut*,
   401 U.S. 371 (1971) ................................................................................................................7

*Marcus Hook dev. Park, Inc. v. T.A. Title Ins. Co.* (*In re Marcus Hook Dev. Park, Inc.*),
   143 B.R. 648 (Bankr. W.D. Pa. 1992) .....................................................................................7

*Richards v. Jefferson Cty., Ala.*,
   517 U.S. 793 (1996) ................................................................................................................8

*U.S. v. Sec. Indus. Bank*,
   459 U.S. 70 (1982) ..................................................................................................................8

**Statutes**

13 L.P.R.A. § 11a .............................................................................................................................5

11 U.S.C. § 105 ...............................................................................................................................1

48 U.S.C. § 2174(b)(7) ..................................................................................................................11

**Other Authorities**

P.R. Const. art. VI, § 8 ...........................................................................................................5, 6, 7

U.S. Const. amend. V ..................................................................................................................7, 9

Ambac Assurance Corporation ("Ambac"), a holder and/or insurer of approximately $2.7 billion of bonds issued by the Commonwealth, COFINA, and other Commonwealth instrumentalities, hereby submits this objection (the "Objection") to the Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute (Dkt. No. 303) (the "Motion"). In support of its Objection, Ambac respectfully submits as follows:

## PRELIMINARY STATEMENT

1. The Oversight Board's Motion reinforces what it acknowledged at the first day hearing in these cases[2]—it is hopelessly conflicted with respect to the dispute (the "GO-COFINA Dispute") between certain beneficial holders of general obligation bonds issued or guaranteed by the Commonwealth (the "GO Group") and COFINA and, as a result, cannot participate in the resolution of that dispute going forward. This Motion further highlights the conflict. Ambac supports an expeditious resolution of the GO-COFINA Dispute, but not on the unnecessarily rushed time frame proposed by the Oversight Board. The Commonwealth's articulated need for cash come November does not, as the Oversight Board suggests, require immediate invasion of COFINA's property. Other financing alternatives, which the Oversight Board has not pursued, may obviate the need to quickly resolve a weighty legal issue. The Oversight Board is plainly not representing COFINA's interests.

2. Ambac does not dispute that the Oversight Board, pursuant to PROMESA, and the Court, pursuant to its equitable powers under section 105 of the Bankruptcy Code, have the authority to appoint an independent fiduciary to act as an agent for the Oversight Board with

---

[2] May 17, 2017 Hr'g Tr. 19:12-21 ("THE COURT: And so if I can just interrupt you as to the assertion in the objections that the Oversight Board as debtor representative is fundamentally and irretrievable conflicted, I think I'm hearing from you that you have a setup in which there is a representative body arguing the COFINA side and a separate representative body arguing the Commonwealth side in the course of this; and generally that structure is expected to be adapted and continued, whether it's litigation or negotiations? MR. BIENENSTOCK: That's exactly right.").

1

respect to COFINA. Indeed, Ambac supports the appointment of a fiduciary to defend and protect the COFINA securitization structure in any future legal attacks and to participate (and even spearhead) settlement negotiations, particularly given the Oversight Board's and AAFAF's inextricable conflicts.

3. To cleanse the Oversight Board of its inherent conflict in connection with the GO-COFINA Dispute, the Oversight Board has offered a set of Proposed Procedures[3] that introduce a different set of problems, and do not go far enough to address the admitted conflict of interest. The Proposed Procedures would vest the COFINA Agent with unilateral authority to settle a dispute concerning property pledged to Ambac. This not only exceeds the authority granted to the Oversight Board by PROMESA, but it also disenfranchises Ambac in violation of its federal constitutional rights. As such, Ambac objects to the Proposed Procedures.

4. Ambac recognizes, however, that the GO-COFINA Dispute requires resolution and supports, and indeed prefers, a consensual resolution of the dispute. But Ambac is unwilling to cede its authority to determine that outcome to a third party, however independent that party may be. In that vein, Ambac joins the other senior COFINA creditors in certain Points of Agreement, which are set out below and are incorporated in an alternative proposed order, attached hereto as Exhibit 1 (the "<u>Proposed Order</u>"),[4] that is jointly submitted by the Senior COFINA creditors. Ambac will agree to withdraw this Objection if the Proposed Procedures are modified to reflect *all* of the changes in the Proposed Order.

5. If the Proposed Procedures are not modified as outlined below, Ambac objects to the Proposed Procedures, which are fundamentally flawed in their current form, for at least three

---

[3] Terms used but not defined herein shall have the meaning ascribed to them in the Motion.

[4] For the convenience of the Court, attached hereto as <u>Exhibit 2</u> is a redline comparing the Proposed Order to the order submitted by the Oversight Board with its Motion.

reasons. First, and most critically, by purporting to vest a "COFINA Agent" with the authority to litigate and settle claims asserted against the Pledged Sales Taxes, the Proposed Procedures raise significant constitutional concerns. The bonds issued by COFINA and insured or held by Ambac have statutory and contractual rights to the deposit of Pledged Sales Taxes into the COFINA structure and are secured by a lien on the Pledged Sales Taxes. The Oversight Board cannot simply vest a fiduciary with the authority to compromise creditors' property rights without the consent of those creditors or just compensation. Although Ambac does not dispute that the Oversight Board has the power to appoint an independent fiduciary to act as an agent for the Oversight Board with respect to COFINA, it cannot grant such agent rights the Oversight Board itself does not have— and the Oversight Board does not have the right, under PROMESA or otherwise, to deny Ambac the right to be heard on matters concerning the disposition of their property.

6.  Second, the GO-COFINA Dispute is not, as the Oversight Board suggests, the gating issue that, once resolved, will unlock a consensual resolution of these cases. Other disputes are required for a settlement; in particular, disputes among COFINA's creditors, which are subject to a pending, and expedited, interpleader adversary proceeding, must be resolved before the GO-COFINA Dispute. In addition, disputes regarding the validity of the Fiscal Plan certified by the Oversight Board are equally important to settlement of these title III cases and must be allowed to proceed in parallel with the GO-COFINA Dispute.

7.  Finally, the Oversight Board's assertion that the GO-COFINA Dispute must be resolved by November 1, 2017 is wholly unsubstantiated. The Oversight Board has presented no evidence supporting its assertion that November 1 is a drop-dead date by which the Commonwealth must invade the COFINA assets. An expedited schedule concerning a legal issue directly impacting billions of dollars of claims should not be set based on self-interested and

3

inherently conflicted assertions. Instead, the Court should be fully briefed on the Commonwealth's "cash management issues"—which Ambac acknowledges may exist—so it can consider an appropriate briefing schedule and canvass any alternative financing arrangements to simply invading COFINA's property at the Oversight Board's whim.

### COFINA SENIOR REPRESENTATIVES' POINTS OF AGREEMENT

8. Ambac has been working diligently with the COFINA Senior Bondholders' Coalition and National Public Finance Guarantee Corporation ("National," and with Ambac and the COFINA Senior Bondholders' Coalition, the "COFINA Senior Representatives") to coordinate a joint response to the Motion. While unable to reach complete agreement on every issue, the COFINA Senior Representatives have identified several areas upon which they unanimously agree. The COFINA Senior Representatives submit that the Proposed Order should include the following:

- ***The COFINA Senior Representatives Must Unanimously Agree on the Selection of A COFINA Agent.*** The COFINA Agent must be an individual upon whom the COFINA Senior Representatives unanimously agree. The COFINA Senior Representatives will submit one or more nominees to serve as the COFINA Agent within 10 days of entry of the Proposed Order, one of whom shall be appointed as the COFINA Agent.

- ***Court Approval of Any Settlement of the Commonwealth-COFINA Dispute Shall Be Required.*** Any settlement reached pursuant to the Proposed Order shall not be effective unless and until the Court has entered an order approving such settlement.

- ***COFINA Senior Representatives Shall Be Granted Intervention in Any Litigation Commenced Pursuant to the Proposed Order.*** The COFINA Senior Representatives shall be authorized to intervene in any litigation commenced pursuant to the Proposed Order without any further order of the Court.

- ***The COFINA Agent Shall Owe Fiduciary Duties to COFINA.*** The COFINA Agent shall owe fiduciary duties to COFINA, and not to any individual creditor or creditor group. For the avoidance of doubt, no Agent shall have the authority to litigate or settle any matter other than the Commonwealth-COFINA Dispute.

4

- ***Pre-Petition Mediation Shall Resume.*** The mediation that began prior to the commencement of the title III cases among the COFINA senior bondholders, COFINA subordinate bondholders, monoline insurers, general obligation ("GO") bondholders, and the Oversight Board, among others, shall resume promptly. The mediator shall be selected from among the members of the Court-appointed Mediation Team.

## RELEVANT FACTUAL BACKGROUND

9. The Court is by now familiar with the factual and legal background to the COFINA structure, which has been described by Ambac, and various other parties, in multiple filings. (*See*, *e.g.*, Dkt. No. 113.) In brief, COFINA is "a corporate and political entity independent and separate from the Commonwealth of Puerto Rico" created in 2006 by the Puerto Rico Legislative Assembly "for the purpose of issuing bonds and utilizing other financing mechanisms." 13 L.P.R.A. §§ 11a(a)-(b). COFINA's enabling legislation provided that a percentage of the Commonwealth's sales-and-use tax (the "Pledged Sales Taxes") would flow directly into a special fund and immediately become the property of COFINA. *Id.* § 12.

10. In addition to requiring the direct deposit of the Pledged Sales Taxes with COFINA, COFINA's enabling legislation further rendered those monies unavailable as a matter of law, providing that the Pledged Sales Taxes **shall not** "constitute resources available to the Commonwealth of Puerto Rico, nor shall these be available for use by the Secretary of the Treasury of the Commonwealth of Puerto Rico." *Id.* The purpose of these statutory protections was to insulate the Pledged Sales Taxes from "clawback"—*i.e.*, the provision of the Puerto Rico Constitution that permits the Commonwealth to use "available resources" first for payment of general obligation debt should revenues in a fiscal year fall short of estimates. *See* P.R. Const. art. VI, § 8.

11. For nearly a decade, the validity of the COFINA securitization structure—a structure that is commonly used by municipalities to finance their operations—went unchallenged.

5

During that time, the COFINA structure proved to be an efficient method of accessing the capital markets and raising financing at reasonable borrowing costs despite a then-ongoing financial crisis. Despite that financial turmoil, COFINA issued $17.3 billion in bonds which were used to pay down outstanding Commonwealth debt and enabled the government to continue to provide services to its citizens.

12. On July 20, 2016, certain members of the GO Group initiated a lawsuit[5] in which they argued that the COFINA structure violates Puerto Rico law on the theory that all revenues generated by Puerto Rico legislation must be deemed "available resources" within the meaning of Article VI, Section 8 of the Puerto Rico Constitution.

13. On March 11, 2017, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" by its Spanish acronym), on behalf of the Commonwealth, COFINA, and several other Commonwealth instrumentalities, submitted an amended fiscal plan (the "Fiscal Plan") to the Oversight Board. The Fiscal Plan, which is premised on the very clawback COFINA's enabling legislation explicitly prohibited, allocates a total of $6.79 billion to debt service for the FY2018 through FY2026 period, or an average of $787 million annually, representing a 77.4% impairment of the applicable debt obligations. *See* Fiscal Plan (D.I. 1-3) at 29. The Oversight Board certified the Fiscal Plan on March 13, 2017, two days after it was submitted.

14. On May 16, 2017, The Bank of New York Mellon ("BNYM") filed an adversary proceeding targeted at an issue much different from the GO-COFINA constitutional dispute: Who among COFINA's bondholders is entitled to payment by the Trustee in light of the conflicting claims of such bondholders? In the days immediately before and after the COFINA title III filing

---

[5] This action is captioned *Lex Claims, LLC v. Garcia Padilla*, No. 1:16-cv-2374) (FAB) (D.P.R.) (the "Lex Claims Action").

6

on May 5, 2017, COFINA, AAFAF, BNYM, and certain creditors of COFINA (including Ambac) exchanged correspondence concerning defaults, Events of Default, and acceleration under the Resolutions. All creditors of COFINA and BNYM agreed that defaults had occurred (only AAFAF disagreed), but views differed as to the curability of those defaults, whether they constituted Events of Default, whether acceleration was appropriate or even possible, and so on. (*See* Adv. Proc. No. 17-133-LTS, Dkt. No. 5-1 et seq.) Accordingly, BNYM sought to interplead the disputed funds so that the competing claims of COFINA's creditors could be adjudicated before those funds were distributed to the appropriate bondholders. (*Id.*, Dkt. Nos. 4-5.)

15. On May 30, 2017, this Court granted the interpleader motion, directing BNYM to interplead the June 1 payment to COFINA's bondholders, and any future payments, "until entry of a final order of this Court directing the timing and manner of the disbursement of such funds[.]" (*Id,* Dkt. No. 110 ¶ 2.) The Scheduling Order subsequently entered by the Court calls for motions for summary judgment to be fully briefed by October 6, 2017. (*Id.*, Dkt. No. 154 ¶ 5.)

**OBJECTION**

I. **The Proposed Procedures Violate the Due Process and Takings Clauses of the Fifth Amendment of the U.S. Constitution**

16. The Proposed Procedures purport to cleanse the Oversight Board's conflict of interest in the GO-COFINA Dispute, but they go much farther than that. By vesting the COFINA Agent with unilateral authority to settle a dispute concerning property pledged to Ambac, the Proposed Procedures not only exceed the authority granted to the Oversight Board, but they also violate Ambac's federal constitutional rights.

17. "The right to be heard in some way at some time extends to all proceedings entertained by courts." *Boddie v. Connecticut*, 401 U.S. 371, 387-88 (1971) (Brennan, J., concurring); *see also Marcus Hook dev. Park, Inc. v. T.A. Title Ins. Co.* (*In re Marcus Hook Dev.*

7

*Park, Inc.*), 143 B.R. 648, 660 (Bankr. W.D. Pa. 1992) ("the due process clause of the Fifth Amendment of the United States Constitution applies to bankruptcy proceedings."). That right "'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'" *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 799 (1996) (internal citation omitted).

18. The Proposed Procedures violate the above principles, denying Ambac the right to be heard concerning the disposition of the Pledged Sales Taxes. Specifically, the Proposed Procedures would empower the COFINA Agent to "litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA." (Mot. ¶ 38.c.) That settlement would then be effective upon (i) consent of the Oversight Board, (ii) Court approval, or (iii) "confirmation of a title III plan of adjustment incorporating such settlement." (*Id.* ¶ 38.j.) The Proposed Procedures make no mention of creditor involvement in settlement discussions, or any requirement that creditors consent to the COFINA Agent's determination "of what result is best for the Debtor the Agent represents[.]" (*Id.* ¶ 38.h.)

19. It would be violative of Ambac's constitutional rights to strip it of its exclusive control over its property without just compensation and due process of law. Indeed, "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *U.S. v. Sec. Indus. Bank*, 459 U.S. 70, 75 (1982). Although it may be appropriate to vest a Commonwealth Agent with settlement authority where the claim at issue constitutes property of the debtor (as with the GO claim against COFINA), it is wholly inappropriate where, as with COFINA, the dispute relates directly to the property in which Ambac has a direct property interest. Ambac's constitutional rights must be respected. Vesting an agent

8

with settlement authority and allowing that agent to compromise Ambac's property interests without just compensation falls far short of that mark.

20. For the court to order that Ambac have no ability to defend its rights, and must be forced to deputize someone else to play that role, violates the core tenets of the due process and takings clauses of the Fifth Amendment to the U.S. Constitution. Thus, Ambac objects to the Oversight Board's Proposed Procedures and the appointment of a fiduciary that usurps Ambac's rights.

## II. The Intra-COFINA Dispute Must be Resolved Before the Commonwealth-COFINA Dispute

21. The Oversight Board claims the GO-COFINA Dispute is a "gating issue" in these cases but the true barrier to a consensual plan of adjustment is the intra-COFINA dispute, which is subject to an active, expedited litigation.[6] That dispute must be concluded before the GO-COFINA Dispute can be meaningfully resolved beyond simply deciding the strict legal question.[7]

22. In its Motion, the Oversight Board implicitly recognized this obstacle, noting that while soliciting COFINA's creditors concerning the appointment of the COFINA Agent, "it became evident the senior and subordinated COFINA creditors were concerned about which type of COFINA creditor the COFINA Agent . . . may try to serve." (Mot. ¶ 37.) Pursuant to the scheduling order entered in the Interpleader Action, it is possible that the intra-COFINA dispute

---

[6] Scheduling Order (Dkt. No. 154), *The Bank of New York Mellon v. Puerto Rico Sales Tax Fin. Corp.*, Adv. Proc. No. 17-133-LTS (D.P.R.).

[7] Notably, the gating issue described by the Oversight Board in its Motion, which it refers to as the "Commonwealth-COFINA Dispute," is a legal theory that has not been presented to this, or any other Court, including in the *Lex Claims* action. The Oversight Board defines the Commonwealth-COFINA Dispute as follows: "whether, after considering all procedural and substantive defenses, the Pledged Sales Taxes are either (a) property of the Commonwealth within the meaning of PROMESA section 301(c)(5), or (b) subject to an allowable claim of the Commonwealth having priority over all claims of COFINA[.]" (Mot. ¶ 17.) That is not the issue presented to this Court by certain members of the GO Group in *Lex Claims*, and not the gating issue described to this Court at the first day hearing. *See* May 17, 2017 Hr'g Tr. 13:25-14:3 ("Whether those taxes are property of COFINA or available resources of the Commonwealth is one of the primary and dominant disputed legal issues in this entire situation."); *see also id.* at 17:21-18:6.

9

will not be resolved before November 1. Accordingly, the Proposed Procedures would require resolution of the GO-COFINA Dispute without Ambac knowing what its rights are. The Oversight Board's proposal fails to recognize that such uncertainty renders consensual resolution of the GO-COFINA Dispute less likely.

23. As the Oversight Board recognizes, it is likely that the consideration and settlement of the GO-COFINA Dispute cannot be done in isolation, and that instead, it will be "necessary or desirable" to link a settlement of the GO-COFINA Dispute with an overall resolution of creditors' rights and claims. Creditors must understand the relative value of their claims before any such resolution can be reached. If, as the subordinated COFINA bondholders (incorrectly) contend, their contractually-agreed subordination is meaningless and they are on equal footing with senior COFINA bonds, it will stand in the way of settlement.

24. Ambac is amenable to the inclusion of a November 1 deadline for resolution of the GO-COFINA Dispute in the Order with the express recognition that such date can be extended by the Court, if is determined to be necessary and appropriate.

25. Additionally, the authority of the COFINA Agent must be expressly limited to the GO-COFINA Dispute, and exclude representation in connection with the intra-COFINA disputes. The interests of senior and subordinated holders of COFINA bonds are fundamentally different. The *Credit Lyonnais* framework endorsed by the Oversight Board illustrates the point. (*See* Mot. Ex. D.) The subordinated bondholders, who take last under the COFINA waterfall, are the "stockholders" in that framework. The senior bondholders are the creditors who are incentivized to settle the dispute "too cheaply." Until the intra-COFINA dispute is resolved, a single fiduciary will be unable to bridge the gap between "stockholders" and creditors, or "any single group

10

interested in" COFINA, and must instead focus solely on maximizing value for the debtor as a whole. (*Id.*)

### III. The Proposed Procedures Assume the Validity of the Fiscal Plan, Which is Itself an Obstacle to Settlement

26. Equally antecedent to the GO-COFINA Dispute is the dispute concerning the validity of the Fiscal Plan. By proposing to press forward with the GO-COFINA Dispute on an arbitrarily expedited timetable, the Oversight Board is trying to make the Fiscal Plan a fait accompli. Creditors of these Debtors, and other Commonwealth instrumentalities, agree on very little, but there is virtual consensus that treating the Fiscal Plan in this manner is improper. Indeed, nearly every creditor of both Debtors disputes, among other things, the Commonwealth's assertion that only $787 million is available, on average, for annual debt service. (*See, e.g.*, May 17, 2017 Hr'g Tr. 22:19 (Dkt. No. 207) (referring to the Fiscal Plan's allocation of funding for debt service as "one of the issues proving most inflammatory"). The Fiscal Plan must, by statute, be the foundation of any confirmable plan and challenges to it must therefore be allowed to proceed in parallel if there is any hope of a global resolution of these cases. *See* 48 U.S.C. § 2174(b)(7) ("The court shall confirm the plan if," among other requirements, "the plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II" of PROMESA).

27. The Oversight Board presents the GO-COFINA Dispute as a zero sum game, claiming that the outcome of the GO-COFINA Dispute "will likely be dispositive as to the relative recoveries of the debt holders of COFINA and the Commonwealth" (Mot. ¶ 30), but the Court should not simply accept that as true. There are a number of assumptions underlying the Fiscal Plan that appear unjustified, including an annual $600 million "cushion" allocated for payment of non-budgetary expenses. To date, however, the development and certification of the Fiscal Plan

11

has been a black box, with almost no information concerning its assumptions having been shared with creditors despite numerous requests.

28. Creditors uniformly pressed back against the Oversight Board's last proposal to mediate the GO-COFINA Dispute in a vacuum, insisting that any mediation must include a discussion of the Fiscal Plan. The Oversight Board and AAFAF agreed, and the Fiscal Plan was a core component of the past mediation. However, the pre-petition posture of those discussions rendered them unripe and unhelpful. The pendency of these title III cases and related adversary proceedings has, of course, altered the dynamic. Ambac fully supports the Court's recent order concerning mediation,[8] but the Fiscal Plan must continue to be included in those discussions. The Oversight Board's attempt to further insulate the Fiscal Plan from creditor and judicial scrutiny through this Motion must be rejected.

### IV. The Court Should Not Expedite the GO-COFINA Dispute Based on the Oversight Board's Unsubstantiated Assertion of Crisis

29. The Oversight Board asserts that "[t]ime is of the essence" to resolve the GO-COFINA Dispute. (Mot. ¶ 31.) Specifically, the Oversight Board claims, without reference to any evidence, that "[i]f there is no settlement or final adjudication as to the Commonwealth-COFINA Dispute by November 1, 2017, the Commonwealth will likely need to borrow funds from COFINA to fund the Commonwealth's operating budget." (Mot. ¶ 31.) Here, too, the Oversight Board asks the Court to accept, on an expedited basis, the premise of the Fiscal Plan on its say-so, without permitting inquiry into the validity of that plan. As the Oversight Board acknowledges through this motion, it is conflicted with respect to the GO-COFINA Dispute, and its assertion that the Commonwealth is desperate for the issue to be resolved by November 1 should not be accepted.

---

[8] Order and Notice of Preliminary Designation of Mediation Team Setting Deadline for Objections to Membership (Dkt. No. 329).

12

The notion that the Commonwealth will be allowed to run out of money is simply not true, but the Oversight Board has failed to solicit any alternatives to its long-planned COFINA cash-grab. Those issues should be reserved at this time and presented to the Court on a full record by an independent agent, not tainted by conflict. The Oversight Board's effort to impose an expedited schedule and an artificial deadline on a significant legal issue for COFINA's creditors, without any motion to expedite or supported showing, should be rejected.

30. As discussed above, there are critical disputes regarding the occurrence of an Event of Default under the Resolution that must be resolved before the GO-COFINA Dispute can be settled or adjudicated, and challenges to the Fiscal Plan must be allowed to proceed in tandem with that dispute.

### V. The Oversight Board's Conflict Must Be Fully Addressed

31. As discussed above, the Oversight Board, as the representative of both the Commonwealth and COFINA, is inherently conflicted with respect to the GO-COFINA Dispute. As a result, the Oversight Board must fully extract itself from all issues relating to the GO-COFINA Dispute. It is not sufficient, as the Oversight Board proposes, for the Oversight Board to select and appoint an "independent" agent, and then also retain control and authority to itself approve, develop and/or negotiate a settlement. The Oversight Board must sit this one out. Moreover, the COFINA Agent should be selected by the creditors, without discretion of the Oversight Board.

### CONCLUSION

For the reasons set forth herein, Ambac respectfully requests that the Court (i) deny the Motion or, in the alternative, enter an order substantially similar to the Proposed Order attached hereto as Exhibit 1, and (ii) grant such other and further relief as the Court deems appropriate.

13

Dated: June 16, 2017
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ *Dennis F. Dunne*
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    28 Liberty Street
    New York, NY 10005
    Telephone: (212) 530-5770
    Facsimile: (212) 822-5770
    Email: ddunne@milbank.com
          aleblanc@milbank.com
          amiller@milbank.com
          gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com