## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO ("ERS"),[2]<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>(Joint Adminsitration Requested) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),[3]<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>(Joint Adminsitration Requested) |

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2]   The last four (4) digits of ERS's federal tax identification number are 9686.

**AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS'
LIMITED OBJECTION TO DEBTORS' MOTION PURSUANT TO
PROMESA SECTION 301(A) AND BANKRUPTCY CODE SECTIONS
105(A), 362(A), 365 AND 922 FOR ENTRY OF ORDER CONFIRMING
(I) APPLICATION OF THE AUTOMATIC STAY TO GOVERNMENT
OFFICERS, AGENTS, AND REPRESENTATIVES, (II) STAY OF
PREPETITION LAWSUITS AND ACTIONS AGAINST INHABITANTS
OF PUERTO RICO AND (III) APPLICATION OF CONTRACT PROTECTIONS**

The Ad Hoc Group of General Obligation Bondholders (the "GO Group"),[4]

holding approximately $3 billion in debt issued or guaranteed by the Commonwealth of

Puerto Rico, hereby submits this limited objection (the "Objection") to the Motion of

Debtors Pursuant to PROMESA Section 301(A) and Bankruptcy Code Sections 105(a),

362(a), 365, and 922 for Entry of Order Confirming (I) Application of the Automatic

Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition

Lawsuits and Actions Against Inhabitants of Puerto Rico and (III) Application of

Contract Protections (Docket No. 301, the "Motion") in the above-captioned Title III

cases.  In support of its Objection, the GO Group respectfully submits as follows:

**OBJECTION**

1.      At first glance, it may seem that the Debtors are seeking a "comfort

order," merely confirming the application and enforcement of Bankruptcy Code sections

362(a), 365, and 922, as made applicable to these Title III cases pursuant to section

301(a) of the Puerto Rico Oversight, Management and Economic Stability Act

("PROMESA").  A close review of the Motion, however, reveals that the Debtors are

actually attempting to expand the scope of certain Bankruptcy Code provisions.

---

[3]     The last four (4) digits of HTA's federal tax identification number are 3808.

[4]     The members of the GO Group filing this Objection are certain funds or entities managed or advised
by Aurelius Capital Management, LP, Autonomy Capital (Jersey) LP, FCO Advisors LP, Monarch
Alternative Capital LP, Senator Investment Group LP, and Stone Lion L.P.

2.      As an initial matter, the GO Group does not see the need for a mere
"comfort order" simply confirming the application of certain Bankruptcy Code sections
to these Title III cases.  The statute speaks for itself and does not warrant unnecessary
repetition (let alone the recharacterization and expansion that the Debtors are actually
seeking) in the form of an order.

3.      The GO Group objects to such order to the extent it seeks to (i) expand the
protections afforded to (a) officers and inhabitants of the Debtors (collectively, the
"Officers and Inhabitants") and (b) government officials, agents and representatives of
the Debtors and any of the Debtors' instrumentalities (collectively, the "Government
Officers, Agents, and Representatives") under the Bankruptcy Code; or (ii) undermine or
conflict with any provision of PROMESA dealing with official misconduct.  It appears
that this expansion is exactly what the Debtors are seeking.

4.      In the Motion, the Debtors seek an order confirming the application of the
automatic stay to "actions or proceedings against [Government Officers, Agents, and
Representatives], whereby parties pursuing such actions seek to enforce claims against
any of the Debtors, interfere with any of the Debtors' activities in these Title III Cases, or
otherwise deny any of the Debtors the protections of the Title III Stay."  Motion ¶ 26.
Section 922(a)(1) of the Bankruptcy Code provides that the automatic stay applies to "the
commencement or continuation … of a judicial, administrative, or other action or
proceeding against ***an officer or inhabitant of the debtor*** that seeks to enforce a claim
against the debtor."  (Emphasis added).  While the Debtors' Officers and Inhabitants are
protected, nothing in section 922(a)(1) indicates that Government Officers, Agents, and
Representatives are shielded by the automatic stay.  To the extent the Government

Officers, Agents, and Representatives are not "officers or inhabitants," this is a clear effort on behalf of the Debtors to expand the scope of the automatic stay to an unprotected class.

5.     Even more, the Debtors seek to have the automatic stay apply to actions or proceedings seeking to "interfere with any of the Debtors' activities in these Title III Cases, or otherwise deny any of the Debtors the protections of the Title III Stay."  Motion ¶ 26.  While section 362(a) of the Bankruptcy Code protects the ***Debtors*** from such actions or proceedings, those protections do not apply to the Debtors' Officers and Inhabitants or Government Officers, Agents, and Representatives.  *See In re City of Stockton*, 499 B.R. 802, 807-08 (Bankr. E.D. Cal. 2013).  As set forth above, section 922(a) clearly states that officers and inhabitants are protected by the automatic stay only to the extent that third-party actions or proceedings seek to "enforce a claim against the debtor."  Similarly, while the Debtors seek "to require creditors to seek relief from this Court before issuing or serving discovery against the Governor or other individuals in their 'personal capacity,'" Motion ¶ 33, section 922(a) of the Bankruptcy Code stays discovery against Officers and Inhabitants only to the extent that the discovery at issue is seeking to "enforce a claim against the debtor."  *See In re City of Stockton*, 499 B.R. at 807-08.

6.     While the Court has the power to broaden the scope of the automatic stay by way of injunction under section 105(a) of the Bankruptcy Code, that relief is only warranted in "unusual circumstances."  *See A.H. Robins Co.* v. *Piccinin*, 787 F.2d 994, 999 (4th Cir. 1986); *Monarch Life Ins.* v. *Ropes & Gray*, 65 F.3d 973, 978-79 (1st Cir. 1995).  The Debtors have not even attempted to make the showing required for such

relief: "(1) That the debtor would suffer irreparable injury if the injunction were not granted; (2) That such injury outweighs any harm which granting injunctive relief would inflict on a defendant; (3) That the debtor has exhibited a likelihood of success on the merits; (4) That the public interest will not be adversely affected by the granting of the injunction." *In re Bora Bora, Inc.*, 424 B.R. 17, 25 (Bankr. D.P.R. 2010) (quoting *In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988)).

7.      The GO Group's vigilance is particularly warranted here given recently surfaced news reports stating that the Debtors have been acting improperly with respect to disclosure of financial information.  Specifically, in the last week, well publicized news articles have reported that the Debtors' financial statements and related disclosures may well have been inaccurate.  These reports indicate that the Debtors' liquidity position may be far better than the Debtors' disclosures have indicated.  *See* Exhibit A.  The presentation of false or misleading financial information is a prohibited offense under PROMESA.[5]  The Debtors certainly cannot reasonably seek to frustrate the proper prosecution of parties who have committed such offenses, among potentially others.

---

[5]      Section 104(l) of PROMESA provides, in part, that:

> (1)   ACTS PROHIBITED.—***Any officer or employee of the territorial government who prepares, presents, or certifies any information*** or report for the Oversight Board or any of its agents that is ***intentionally false or misleading***, or, upon learning that any such information is false or misleading, fails to immediately advise the Oversight Board or its agents thereof in writing, ***shall be subject to prosecution and penalties under any laws of the territory prohibiting the provision of false information to government officials***, which in the case of Puerto Rico shall include 33 L.P.R.A. 4889, as amended.

(Emphasis added).

8.    Accordingly, the GO Group is concerned that the Debtors, despite their innocuous characterization of their Motion, are really seeking an impermissible expansion of the protections that the Bankruptcy Code provides to the Debtors' Officers and Inhabitants and Government Officers, Agents, and Representatives, thus potentially prejudicing the rights of GO Group members and other creditors.

9.    To protect against the impermissible expansion of the automatic stay, the GO Group requests that, if the Court grants the Debtors' requested relief, the order approving that relief be modified to include the following language.

> *Ordered, that nothing in this order shall (i) expand the protections afforded the Debtors' Officers and Inhabitants and Government Officers, Agents, and Representatives under sections 362(a) and 922 of the Bankruptcy Code or (ii) undermine or conflict with any provision of PROMESA dealing with official misconduct.*

## **CONCLUSION**

10.    For the foregoing reasons, the GO Group respectfully requests that (i) the Motion be denied or (ii) to the extent the Court grants the Motion, the language in paragraph 9 above be included in the order.

*[Remainder of page intentionally left blank]*

Dated: June 19, 2017            Respectfully submitted,

/s/ Mark T. Stancil_____
Mark T. Stancil (admitted *pro hac vice*)
Gary A. Orseck (admitted *pro hac vice*)
Ariel N. Lavinbuk (admitted *pro hac vice*)
Donald Burke (admitted *pro hac vice*)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
    UNTEREINER & SAUBER LLP
1801 K Street, NW
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: mstancil@robbinsrussell.com


/s/ Andrew N. Rosenberg_____
Andrew N. Rosenberg (admitted *pro hac vice*)
Walter Rieman (admitted *pro hac vice*)
Richard A. Rosen (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Karen R. Zeituni (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: arosenberg@paulweiss.com


/s/ Ramón Rivera Morales_____
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
JIMÉNEZ, GRAFFAM & LAUSELL
PO Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com


*Counsel to the Ad Hoc Group of General
Obligation Bondholders*

**EXHIBIT A**



City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the following documents are to the best of my
knowledge and belief, true and accurate translations from Spanish into English:

- Los nuevos $1,150 millones… y más
- Otros $395 millones en cuentas del gobierno

Aurora Landman

Sworn to before me this
June 16, 2017

Signature, Notary Public

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

# The new $1.15 billion... and more

The government must end its fiscal year this June 30 with an available $1.15 billion and such
was reported in our edition yesterday
June 15, 2017



Photo: Carlos Rivera Giusti/EL VOCERO

It is difficult for any citizen, and even more for media such as ours, to understand why
governments do not recognize that transparency is a fundamental principle in public
administration.

Yesterday, EL VOCERO summarized again another case of a lack of transparency, this time
from the current government. As a result of a judicial lawsuit, it was obligated to deliver
documents relating to the country's fiscal situation, among which was one from the Treasury
Department that details the state of cash accounts on May 26 of this year.

According to the document, the government must end the fiscal year this June 30 with an
available $1.15 billion, as reported in our edition yesterday. However, we report today that this
figure, deposited into banks on the island, is elevated to $1.545 billion, given that during further
review of the document we found an additional $395 million called "contingency".

In a press conference yesterday, the attorney Elías Sánchez, government representative before the Federal Bureau of Fiscal Oversight, tried to convince the country that the information published by us is not correct. This is despite the fact that 24 hours beforehand, we had asked government spokespersons to explain the information included in the Treasury's document. A request that remained unanswered.

Nevertheless, the actual figures presented by attorney Sánchez, summarized in our edition today, amount to the same as reported by us two days ago.

In the report that we published, at no point did we mention that there has been "economic growth or that the economic situation of the government has dramatically improved". We limited ourselves simply to presenting the same information included in a governmental document.

It satisfies us greatly that the efforts of fiscal discipline and the efforts to amass additional funds to face adverse situations in the next fiscal year have generated a positive cash flow of $1.15 billion dollars; and we recognize the government for this achievement.

What we cannot accept is that public information is not shared unless the government is judicially obligated to do so.

Our work is and will continue being to report the information that citizens need. The information they are entitled to, in order to understand the public administration's fiscal situation.

Attorney Sánchez does this country a disservice when, in a press conference in La Fortaleza, he questions the published information stating that it was incorrect and then confirms it as true, even giving the exact details of the origin of the first summarized statement of $1.15 billion.

As mentioned, today we are establishing the existence of an additional $395 million, which also appears in the reserve "pot".

If what their own documents say is true, then we welcome those millions because they will help to partially resolve the fiscal crisis; but, again, it is the fault of the administration not to provide, on account of transparency, the information.

If it is incorrect and the government shows that it is not, it shall be reported as such.

The lack of information and/or information selectively placed or filtered creates uncertainty, which is the last thing Puerto Rico needs right now.

We insist that transparency, clarity and the availability of public information at all times is mandatory.

That said, the lack of transparency and the act of withholding the correct information here has a first and last name, and it's not the media.

If we all know what to accept and what we can depend on, we will have a clearer future and a greater chance to act according to the real circumstances facing the country.

We hope that this situation does not convert into the "modus operandi" of the current government as was standard in the last administration.

[Treasury Department](#)  [Editorial](#)

# Another $395 million in government accounts

Official information places the government reserves in banks on the island at $1.545 billion
June 15, 2017



Photo: EL VOCERO/ARCHIVE

The argument that the government of Puerto Rico does not have sufficient economic solvency to
maintain its operation and comply with their obligations at levels of requesting the protection of
Title III of the Promesa law, seems to fade away.

A more detailed look at the liquidity report shows that, in addition to the $1.150 billion in cash
accounts deposited in the Island banks, the government has an additional $395 million
accumulated in the 2016-2017 fiscal year that ends on June 30, 2017.

In line 28, in a section named "contingency", this report establishes that the latest figure is
generated with the segregation of monthly sums of between $60 million and $70 million by the
government. This is added to the $1.150 billion reported yesterday by EL VOCERO, raising the
reserve to $1.545 billion.

The information on these accounts arises from the Treasury Department document entitled
"Puerto Rico Department of the Treasury - Treasury Single Account (TSA) Cash Flow Actual-
to-Forecast Comparison", which the government had to disclose due a judicial lawsuit on access

to public information submitted by the Center for Investigative Journalism (CPI). The document
dates from May 26 and includes the state's income and expense report for this fiscal year.

**Reaction from creditors**

For creditors, this finding does not come as a surprise since they are aware that cash flow has
improved a lot. Therefore, they doubt the need to file for bankruptcy. A source in Washington,
where the news has generated a much discussion, told EL VOCERO that "the exorbitant amount
of liquidity reported by the government does not justify a precipitated bankruptcy being brought
on the central government. With more than $1 billion in cash, nobody seeks bankruptcy".

He also added that the manner in which this information was disclosed is evidence of the lack of
transparency of government figures and the growing lack of credibility of financial markets. He
clarified that the money under discussion is a fund that come by means of collections, which, he
thinks, has improved consistently.

"These figures show the level of cash in existence, showing that complaints of the lack of
liquidity are simply not true, since of all these monies, 98% is the General Fund," he stressed.

The president of the Bonistas del Patio, Rafael Rojo echoed this sentiment, crediting the cash
deposit to the lack of payment to bondholders, taxpayers and suppliers, at a time when
collections have increased.

Rojo indicated that, "this available money pays for our proposals, to be used to loosen the game
in the negotiations between creditors and the government, instead of continuing to lose money in
the courts. With this, the trust of the creditor who lent money to the Island would be returned and
he would be willing to do it again".

**Another angle on cash**

Economists interviewed by EL VOCERO have another position on the cash deposited in the
commercial bank. They understand that it is not about money available to be used in a
discretionary way in what they believe are their priorities, but rather as funds allocated for a
specific purpose.

They maintained that, although it is cash that is available in the bank, they are prevented from
using it.
For the economist Nicolás Muñoz, if these monies could be used indiscriminately, both this
administration and the past one could have made use of it to pay reimbursements or suppliers.

"One has to inquire a lot more, since it is a mixture of deposits, both state and federal," he
explained.

For Muñoz, the federal statements included in the total of $1.545 billion should be questioned
based on lack of use. He indicated that these funds must be used during a three-month-period in

the areas or projects for which they were granted. Therefore, they should not have been kept in deposit accounts.

In a somewhat similar manner, the economist Heidi Calero expressed that she understands that this cash deposit is a combination of state funds, a result of public corporations and federal funds.

"Water, electricity, ports, etc, and the federal funds are paid from this money. They could be restricted for specific projects".

**Not ruling out**

Correspondingly, the economist Elías Gutiérrez does not rule out the appearance of other surprises in light of such an enormous budget, which the government has had for decades.

"I do not rule out a huge amount of lost money since the information systems are flawed and there is no way to represent anything. "Only God knows what other surprises will be revealed," he ended.

GOVERNMENT       ECONOMY