**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>      as representative of<br><br>The Commonwealth of Puerto Rico, et al.<br><br>            Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>      as representative of<br><br>The Commonwealth of Puerto Rico,<br><br>            Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>      as representative of<br><br>Puerto Rico Sales Tax Financing Corporation ("COFINA"),<br><br>            Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This Document Relates to:<br>17 BK 3283; 17 BK 3284 |

**OBJECTION OF THE COFINA SENIOR BONDHOLDERS'
COALITION TO THE PUERTO RICO FUNDS AND MUTUAL FUND
<u>GROUP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>**

# TABLE OF CONTENTS

**Page**

I.      Preliminary Statement ...................................................................................................1

II.     Background .....................................................................................................................5

        A.      The Lex Claims Litigation .................................................................................5

        B.      The Title III Filings............................................................................................7

        C.      The Oversight Board's Proposed Procedure to Resolve Commonwealth-
                COFINA Dispute and the COFINA Senior Bondholders' Coalition's
                Response ...........................................................................................................9

III.    Argument ......................................................................................................................10

        A.      Cause Does Not Exist to Lift the Stay ..............................................................10

                1.      Certification is Not Necessary to Obtain a Complete Resolution of
                        the Commonwealth-COFINA Dispute Because this Court Can
                        Bind All Creditors .....................................................................................11

                2.      The Interest of Judicial Economy and Expeditious Judicial
                        Resolution are Best Served by Resolving the Dispute in
                        Accordance with the Protocol Motion, Not Through the
                        Certification Questions ..............................................................................14

                3.      The Lex Claims Litigation is Not Ready for Adjudication........................15

                4.      Lifting the Stay Would Potentially Prejudice the Parties ........................16

        B.      The Court Should Not Lift the Stay to Allow Certification Because the
                Lex Claims Litigation is Not Justiciable in its Present Posture ..........................17

                1.      The Title III Filing Divested the Lex Claims Plaintiffs of Standing
                        to Bring Their Claims Against COFINA ...................................................17

                2.      The Supreme Court of Puerto Rico Requires an Actual Case in
                        Controversy to Render a Decision .............................................................20

IV.     Conclusion ...................................................................................................................21

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**Cases**

*In re Am. Cartage Inc.*,
438 B.R. 1 (D. Mass. 2010), *aff'd*, 656 F.3d 82 (1st Cir. 2011) ............................................. 19

*Flast v. Cohen*,
392 U.S. 83 (1968) ........................................................................................................... 19

*Gener-Villar v. Adcom Grp., Inc.*,
530 F. Supp. 2d 392 (D.P.R. 2007) .................................................................................. 15

*H.E. Vicente Cuesnongle, O.P. v. D.A.C.O.*,
No. CE-85-468, 1987 WL 448283 (P.R. June 30, 1987) ................................................. 20

*Lex Claims, LLC v. Alejandro Garcia Padilla, et al.*,
No. 16-02374 (FAB) (D.P.R. 2016) ............................................................... *passim*

*Lex Claims, LLC v. Fin. Oversight & Mgmt. Board*,
853 F.3d 548 (1st Cir. Apr. 4, 2017) ................................................................................. 3

*In re Lyondell Chem. Co.*,
402 B.R. 596 (Bankr. S.D.N.Y. 2009) .............................................................................. 16

*In re Madison Bentley Assocs., LLC*,
516 B.R. 724 (S.D.N.Y. 2014) .......................................................................................... 18

*Pueblo v. Flores Betancourt*,
No. CR-87-81, 1989 WL 607251 (P.R. Dec. 7, 1989) ..................................................... 15

*Rivera-Cartagena v. Wal-Mart Puerto Rico, Inc.*,
767 F. Supp. 2d 310 (D.P.R. 2011) .................................................................................. 19

*Smart World Tech., LLC. v. Juno Online Servs. (In re Smart World Tech. LLC)*,
423 F.3d 166 (2d Cir. 2005) .............................................................................................. 11

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990) ............................................................................................ 11

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......................................................................................................... 12

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993) ................................................................................................ 11

*In re Van Dresser Corp.*,
　128 F.3d 945 (6th Cir. 1997) ........................................................................... 11, 18

**Statutory Authorities**

11 U.S.C. § 362(d) ..................................................................................................... 11

11 U.S.C. § 944 .......................................................................................................... 12

11 U.S.C. § 1123(b)(3)(A) ......................................................................................... 12

Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48
　U.S.C. § 2101 *et seq.*................................................................................... *passim*

**Rules and Regulations**

Rule 25 of the Rules of the Supreme Court of Puerto Rico........................................ 20

TO THE HONORABLE UNITED STATES DISTRICT JUDGE LAURA TAYLOR SWAIN:

The COFINA Senior Bondholders' Coalition[1] respectfully submits this Objection (the "Objection") to the Puerto Rico Funds and the Mutual Fund Group's (collectively, the "Movants") Motion for Relief from the Automatic Stay (Dkt. No. 270 in Case No. 17-3283; Dkt No. 139 in Case No. 3284) (the "Lift Stay Motion"),[2] and in support hereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.      These restructuring cases, barely six weeks old, are still in their infancy.  The cases present novel, complex, and interlocking issues of law and fact, the resolution of which are of vital importance to the Government of Puerto Rico,[3] its creditors and its citizenry.  The Movants seek to lift the stay in order to have certain of these critical issues decided not as part of the overall Title III Cases but on a standalone basis by the Supreme Court of Puerto Rico ("SCOPR").  The Lift

---

[1]   The COFINA Senior Bondholders' Coalition includes José F. Rodríguez Perelló and the following institutional holders of the COFINA senior bonds:  Aristeia Horizons, L.P.; Camino Cipres LLC; Camino Roble LLC; Canary SC Master Fund, L.P.; Canyon Capital Advisors LLC (on behalf of its participating clients); River Canyon Fund Management LLC (on behalf of its participating clients); Crescent 1, L.P.; CRS Master Fund, L.P.; Cyrus Opportunities Master Fund II, Ltd.; Cyrus Select Opportunities Master Fund, Ltd.; Cyrus Special Strategies Master Fund, L.P.; Decagon Holdings 1, L.L.C.; Decagon Holdings 2, L.L.C.; Decagon Holdings 3, L.L.C.; Decagon Holdings 4, L.L.C.; Decagon Holdings 5, L.L.C.; Decagon Holdings 6, L.L.C.; Decagon Holdings 7, L.L.C.; Decagon Holdings 8, L.L.C.; Decagon Holdings 9, L.L.C.; Decagon Holdings 10, L.L.C.; Merced Partners Limited Partnership; Merced Partners IV, L.P.; Merced Partners V, L.P.; Pandora Select Partners, L.P.; SB Special Situation Master Fund SPC, Segregated Portfolio D; Scoggin International Fund Ltd.; Scoggin Worldwide Fund Ltd.; Taconic Master Fund 1.5 L.P.; Taconic Opportunity Master Fund L.P.; Tilden Park Investment Master Fund LP; Värde Credit Partners Master, L.P.; Värde Investment Partners, L.P.; Värde Investment Partners (Offshore) Master, L.P.; The Värde Skyway Master Fund, L.P; Whitebox Asymmetric Partners, L.P.; Whitebox Institutional Partners, L.P.; Whitebox Multi-Strategy Partners, L.P.; and Whitebox Term Credit Fund I L.P.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Lift Stay Motion.

[3]   Under PROMESA, the Government of Puerto Rico is defined to include the Commonwealth of Puerto Rico (the "Commonwealth"), including all of its territorial instrumentalities.  The Lift Stay Motion concerns one of the Commonwealth's instrumentalities, the Puerto Rico Sales Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Title III Debtors," and the cases of the Title III Debtors are referred to herein as the "Title III Cases").

Stay Motion is premature.  Accordingly, the COFINA Senior Bondholders' Coalition respectfully requests that the Court adjourn the Motion *sine die* or deny it without prejudice.

2.      The Lift Stay Motion must be viewed not in a vacuum, but in the context of these unprecedented and historic restructuring proceedings.  On June 30, 2016, then-President Obama signed the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") into law.[4]   In a rare act of bipartisanship, Congress passed PROMESA to address the worsening financial crisis in Puerto Rico.  Among other things, PROMESA provides tools for a voluntary or judicially-supervised restructuring of the Government of Puerto Rico's debt.   Critically, PROMESA establishes, within the Government of Puerto Rico, a Financial Oversight and Management Board ("Oversight Board") for the purpose of providing Puerto Rico with a method to achieve fiscal responsibility and access to the capital markets.  PROMESA § 101(a).

3.      Prior to the filing of these Title III Cases, certain holders of the Commonwealth's unsecured general obligation bonds commenced an action in this Court before United States District Court Judge Francisco A. Besosa, against, among others, certain Commonwealth governmental officials, COFINA, and the Bank of New York Mellon, as trustee for secured bonds issued by COFINA, seeking declaratory and injunctive relief with respect to the transfer to COFINA of a certain portion of the sales and use tax revenues (the "Dedicated Sales Tax Revenues") over a decade ago, and asserting that such transfers violated PROMESA's prohibition against transfers outside the ordinary course and also violated the Puerto Rico Constitution.  *See Lex Claims, LLC v. Alejandro Garcia Padilla, et al.*, No. 16-02374 (FAB) (D. P.R. 2016) (the "Lex Claims Litigation"*).*  The filing of the Commonwealth Title III Case acted as a stay of the

---

[4]   PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

Lex Claims Litigation under section 362(a) of the United States Bankruptcy Code ("Bankruptcy Code") (incorporated into Title III under section 301(a) of PROMESA).[5]

4.      The Oversight Board has stated that the dominant issue that needs to be resolved in order for it to carry out its Congressional mandate is whether the Dedicated Sales Tax Revenues transferred to COFINA a decade ago, which were then pledged as a statutory lien to secure over $16 billion of bonds issued by COFINA over that same time period, can be clawed back to service the Commonwealth's unsecured general obligation bonds.  *See* Oversight Board's Protocol Motion (defined below), at ¶ 17.  Towards that end, on June 10, 2017, the Oversight Board submitted proposed procedures to this Court for creating a framework to facilitate a speedy and final resolution of the Commonwealth-COFINA Dispute (as defined below) in this Court.

5.      When Congress enacted PROMESA, it intended that the Oversight Board would play a critical role in addressing the Puerto Rico financial crisis, including with respect to a restructuring of debts.  The Court should provide the Oversight Board with a full and fair opportunity to implement its proposed procedures, as modified in accordance with the Protocol Objection (defined below), for resolving the Commonwealth-COFINA Dispute.  The Lift Stay Motion, apparently filed with the intent to preempt the Oversight Board's Protocol Motion, should be held in abeyance unless and until it is conclusively determined that the Oversight Board's proposed process will not result in a resolution of the dispute.

6.      In addition to providing the Oversight Board with the tools necessary to restructure debts and resolve disputes, PROMESA also provides this Court with (i) subject matter jurisdiction over any proceeding related to the Title III Cases, PROMESA § 306(a), (ii) "exclusive jurisdiction

---

[5]   Previously, the First Circuit Court of Appeals, in reversing the District Court's decision, found that the claims asserted in the Lex Claims Litigation were stayed under section 405 of PROMESA.  *See Lex Claims, LLC v. Fin. Oversight & Mgmt. Board*, 853 F.3d 548 (1st Cir. Apr. 4, 2017).

of all property, wherever located," of the debtors as of the commencement of the Title III Cases, *id.* § 306(b), and (iii) personal jurisdiction "over any person or entity." *Id.* § 306(c). This Court's plenary authority to issue a final decision resolving the Commonwealth-COFINA Dispute and bind all Title III creditors may obviate the need for a decision by the SCOPR as to the validity of the COFINA structure.

7.     The present procedural posture of the Lex Claims Litigation further militates in favor of denying the Lift Stay Motion. Upon the filing of the Commonwealth's Title III Case, the Lex Claims Plaintiffs (defined below) were divested of standing to pursue the claims asserted against COFINA. Only the Oversight Board, as representative of the Commonwealth in its Title III Case, has the right to prosecute and settle those claims. As such, there is no justiciable case and controversy in the Lex Claims Litigation, and the SCOPR will likely refrain from considering certified questions based on claims that the Lex Claims Plaintiffs asserted in the Lex Claims Litigation. Unless and until the Oversight Board replaces the Lex Claims Plaintiffs as the proper party to prosecute the Lex Claims Litigation—which it has yet to do—this Court should not lift the stay.

8.     At bottom, the procedures set forth in the Protocol Motion (as may be modified in a manner consistent with the Protocol Objection), including the tight timeframe, will likely promote settlement negotiations, which may be in the best interest of each of the Title III Debtors as the Commonwealth seeks adequate access to short-term and long-term credit markets—one of the stated objectives of PROMESA. *See* PROMESA § 209(1). In addition, a litigated outcome will necessarily prejudice the creditors of at least one of the Title III Debtors by forcing a binary resolution, while a settlement could achieve an outcome that inures to the benefit of both Title III Debtors and their respective creditors. In light of the foregoing, the COFINA Senior Bondholders'

4

Coalition respectfully submits that certification is not at present the best path forward.  As such, this Court should adjourn the Lift Stay Motion or otherwise deny it without prejudice.

## II.    BACKGROUND

### A.    The Lex Claims Litigation

9.    In June 2016, the governor of the Commonwealth issued Executive Order 2016-30 (the "Executive Order") declaring a moratorium on the Commonwealth's obligation to make payments on any bonds or notes issued or guaranteed by the Commonwealth.  The Executive Order did not halt the collection of the sales and use tax or the transfer of the Dedicated Sales Tax Revenues to COFINA.[6]  Under section 405 of PROMESA, all bondholder litigation relating to Puerto Rico's debt was stayed until the earlier of May 1, 2017 or the filing of a Title III case. PROMESA § 405(d)(1)(A).

10.    Notwithstanding the stay on litigation, on July 20, 2016, certain holders of the Commonwealth's unsecured general obligation bonds ("GO Bonds" and the holders of the bonds, the "GO Bondholders") commenced the Lex Claims Litigation against certain officers of the Commonwealth, asserting that the Executive Order violated certain sections of PROMESA.  *See* Complaint (Lex Claims Dkt. No. 1).  On November 4, 2016, the plaintiffs in the Lex Claims Litigation (the "Lex Claims Plaintiffs")[7] filed the Second Amended Complaint, which added as defendants COFINA, the Executive Director of COFINA, and the Bank of New York Mellon, as

---

[6]   The Dedicated Sales Tax Revenues are the portion of the sales and use tax that is transferred to COFINA for the payment of debt service on bonds issued by COFINA.  Holders of COFINA bonds ("COFINA Bondholders") have a statutory lien on the Dedicated Sales Tax Revenues. *See* 13 L.P.R.A §§ 12, 13.

[7]   The Lex Claims Plaintiffs include Lex Claims, LLC, Jacana Holdings I LLC, Jacana Holdings II LLC, Jacana Holdings III LLC, Jacana Holdings IV LLC, Jacana Holdings V LLC, MPR Investors LLC, ROLSG, LLC, RRW I LLC, and SL Puerto Rico Fund II, L.P.

trustee for the COFINA bonds. *See* Second Amended Complaint (Lex Claims Dkt. No. 78) at ¶¶ 29-31. This filing asserted that the COFINA structure violated sections 2 and 8 of Article VI of the Puerto Rico Constitution, and that the Executive Order was preempted by PROMESA 303(3)[8] because it improperly diverted to COFINA "available resources" that should be used to pay GO Bondholders. *Id.* at ¶¶ 135-44, 151-62. The Lex Claims Plaintiffs acknowledged that most of the claims in the Second Amended Complaint against COFINA were stayed by PROMESA § 405, but they alleged that the PROMESA stay did not apply to their claim that the Executive Order improperly diverted "available resources" to COFINA in violation of PROMESA § 303(3). *Id.* at ¶¶ 194-99.

11.     On February 17, 2017, Judge Besosa issued a decision holding that the PROMESA stay did not apply to the Lex Claims Plaintiffs' claim under PROMESA § 303(3). *See* Opinion and Order (Lex Claims Dkt. No. 184) at 16. The Oversight Board and the COFINA Senior Bondholders' Coalition timely appealed this decision, and on April 4, 2017, the United States Court of Appeals for the First Circuit (the "First Circuit") reversed Judge Besosa' decision and held that the PROMESA stay applied to the claims asserted in the Second Amended Complaint. *See* Order of Court (Lex Claims Dkt. No. 268).

12.     Prior to the First Circuit's decision on the applicability of the PROMESA Stay, the COFINA Senior Bondholders' Coalition filed its answer to the Second Amended Complaint and also filed a motion for judgment on the pleadings, wherein it argued that the Second Amended Complaint must be dismissed as a matter of law because (1) PROMESA § 303 does not provide a private right of action; (2) laches and estoppel bar the Lex Claims Plaintiffs' claims under New

---

[8]     Section 303(3) of PROMESA preempts "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory[.]" PROMESA § 303(3)

York and Puerto Rico law; (3) holders of 2014 GO Bonds consented to the COFINA structure under New York law; (4) holders of GO Bonds issued after 2011 are not entitled to constitutional priority because the debt was issued in excess of the debt limit; and (5) the COFINA structure is valid as a matter of Puerto Rico law. *See* COFINA Senior Bondholders' Motion and Incorporated Memorandum of Law for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) (Lex Claims Dkt. No. 219).

13.     On the same day, the COFINA Senior Bondholders' Coalition filed a motion requesting that the District Court certify certain questions of Puerto Rico law to SCOPR; specifically, questions regarding whether the equitable doctrines of laches or actos propios barred the Lex Claims Plaintiffs' claims under Puerto Rico law, and whether the COFINA structure is valid under the Puerto Rico Constitution. *See* Intervenor-Defendants COFINA Senior Bondholders' Motion for Certification of Questions of Puerto Rico Law to the Supreme Court of Puerto Rico and Incorporated Memorandum of Law (Lex Claims Dkt. No. 221) at 1-2.[9] The motion for certification was necessary because, *inter alia*, the District Court in the Lex Claims Litigation lacked the ability to enter a final decision on the "available resources" question that would be binding on all creditors of the Commonwealth and its instrumentalities, in particular, GO Bondholders that were not parties to the Lex Claims Litigation.

**B.     The Title III Filings**

14.     On May 1, 2017, the stay under section 405 of PROMESA expired, and the Lex Claims Plaintiffs were free to pursue litigation on all of the claims raised in their Second Amended Complaint, including those asserted against COFINA. On May 3, 2017, the Oversight Board filed

---

[9] The Puerto Rico Funds, one of the Movants herein, also filed a motion for certification of certain questions of Puerto Rico law to the SCOPR. (Lex Claims Dkt. No. 223).

a petition for relief on behalf of the Commonwealth under Title III of PROMESA in this Court. *See* In re The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, Case No. 3:17-bk-3283 (LTS) (Bankr. D.P.R.) (Dkt. No. 1). On May 5, the Oversight Board filed a petition for Title III relief on behalf of COFINA. *See* In re The Financial Oversight and Management Board for Puerto Rico as Representative of Puerto Rico Sales Tax Financing Corporation ("COFINA"), Case No. 3:17-bk-3284 (LTS) (Bankr. D.P.R.) (Dkt. No. 1). Immediately upon these filings, the automatic stay under § 362(a) of the Bankruptcy Code, made applicable by PROMESA § 301(a), took effect. Thus, the Lex Claims Litigation was again stayed. This stay remains in effect to this day.

15.     Under Title III of PROMESA, the "Oversight Board . . . is the representative of the debtor." PROMESA § 315(b). The Oversight Board is treated as the equivalent of a trustee under the Bankruptcy Code. *See id.* § 301(c)(7) ("The term 'trustee', when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), means the Oversight Board . . . ."). This applies to both the Commonwealth and COFINA as debtors under Title III. *See id.* § 301(c)(2) ("The term 'debtor' means the territory or covered territorial instrumentality concerning which a case under this title has been commenced.").

16.     On June 7, 2017, Movants filed the Lift Stay Motion, wherein they argue that the automatic stay imposed in these Title III Cases should be lifted "(i) to permit the certification motion filed by the Puerto Rico Funds [Dkt. No. 221],[10] as well as any joinder to that motion or

_____

[10]     Presumably, Movants intended to cite to docket number 223 in the Lex Claims Litigation, and request certification of the question presented therein, specifically:  "Does the portion of the revenues of the Commonwealth of Puerto Rico's sales and use tax that was transferred to COFINA and pledged to its bondholders pursuant to Title 13, Puerto Rico Statutes, constitute 'available resources' for purposes of Section 8 of Article VI of the Constitution of Puerto Rico?"  *See* The Puerto Rico Funds' Motion for Certification of a Question of Law to the Supreme Court of Puerto Rico and Incorporated Memorandum of Law (Lex Claims Dkt. No. 223) at 13.  Docket number 221 is the COFINA Senior Bondholders'

any similar motion that the Mutual Fund Group or any other party may file (the 'Certification

Motion'), to be fully briefed, argued and decided by the District Court, and (ii) if the Certification

Motion is granted, to allow the Puerto Rico Supreme Court to consider and decide the certified

issues" (the "Certification Questions").  *See* Lift Stay Motion at 7.

### C.    The Oversight Board's Proposed Procedure to Resolve Commonwealth-COFINA Dispute and the COFINA Senior Bondholders' Coalition's Response

17.    On June 10, 2017, the Oversight Board filed the Motion of Debtors for Order

Approving Procedure to Resolve Commonwealth-COFINA Dispute (the "Protocol Motion") (Dkt.

No. 303).  The Protocol Motion seeks to resolve the dispute regarding "whether, after considering

all procedural and substantive defenses, the Pledged Sales Taxes are either (a) property of the

Commonwealth within the meaning of PROMESA section 301(c)(5), or (b) subject to an allowable

claim of the Commonwealth having priority over all claims of COFINA" (the "Commonwealth-

COFINA Dispute") before November 1, 2017, through either settlement or litigation.  *See* Protocol

Motion at 8, 12.  The Protocol Motion calls for:  (1) the selection of independent agents to represent

both the Commonwealth and COFINA; (2) cooperation between the agents to commence litigation

within 10 days of appointment to resolve the Commonwealth-COFINA Dispute; (3) an agreement

between the agents, the Oversight Board, and the Puerto Rico Fiscal Agency & Financial Advisory

Authority ("AAFAF") regarding a litigation schedule that will allow the Court to rule on or before

November 1, 2017, unless there is a prior settlement; (4) the requirement that the agents act in the

best interests of the debtor they represent; (5) the Oversight Board to participate in negotiations

"[t]o the extent necessary or desirable to link a settlement to the treatment of creditors' claims in

a title III plan of adjustment"; and (6) the requirement that any settlement be approved by the court,

---

Coalition's motion for certification, and that motion seeks to certify additional questions not addressed in
the Lift Stay Motion.

consented to by the Oversight Board, or be a part of a confirmed Title III plan of adjustment.  *Id.* at 14-16.

18.     On June 16, 2017, the COFINA Senior Bondholders' Coalition filed its Objection to Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute ("Protocol Objection") (Dkt. No. 374).  In the Protocol Objection, the COFINA Senior Bondholders' Coalition stated that it was "prepared to participate in the process that the Oversight Board has proposed" subject to certain modifications.  Protocol Objection at 2-3.  These modifications included:  (1) certain adjustments to the COFINA agent selection process; (2) the requirement that any settlement be subject to court approval; (3) authorization for the intervention of certain COFINA senior bondholder representatives; (4) the specification that the COFINA agent is a fiduciary only of COFINA; and (5) the resumption of pre-petition mediation.

19.     For the reasons set forth below, the COFINA Senior Bondholders' Coalition respectfully requests that this Court adjourn the Lift Stay Motion *sine die* or deny it without prejudice and allow the Commonwealth-COFINA Dispute to be addressed, in the first instance, in accordance with the Protocol Motion, as modified in accordance with the Protocol Objection.

## III.   ARGUMENT

### A.   Cause Does Not Exist to Lift the Stay

20.     Movants argue that cause exists to lift the stay under § 362(d) of the Bankruptcy Code because the following four factors weigh in favor of stay relief:  "(i) whether relief would result in a partial or complete resolution of the issues, (ii) the interests of judicial economy and the expeditious and economical resolution of litigation, (iii) whether the parties are ready for trial in

the other proceeding, and (iv) the impact of the stay on the parties and the balance of harms."[11]

Lift Stay Motion at 8 (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990))

(internal quotations omitted).  In light of the filing of the Title III Cases, and the Oversight Board's

Protocol Motion, none of these factors support lifting the stay.  At this time, lifting the stay for the

purposes of having the SCOPR address the Certification Questions would be unnecessary and

premature.

### 1.   Certification is Not Necessary to Obtain a Complete Resolution of the Commonwealth-COFINA Dispute Because this Court Can Bind All Creditors

21.      Unlike the posture that existed prior to the filing of the Title III Cases, a complete

resolution of the Commonwealth-COFINA Dispute may be achieved in this Court without the need

for a decision by the SCOPR on whether the Dedicated Sales Tax Revenues transferred to

COFINA is subject to clawback as available resources.  This Court has jurisdiction over all of the

Debtors' property.  PROMESA § 306(b) ("The district court in which a case under this title is

commenced or is pending shall have exclusive jurisdiction of all property, wherever located, of

the debtor as of the commencement of the case.").  Property of the debtor includes the

Commonwealth's legal claims against COFINA.  *See In re Van Dresser Corp.*, 128 F.3d 945, 947

(6th Cir. 1997) ("[I]t is well established that the interests of the debtor in property include causes

of action.") (internal citations omitted); *Smart World Tech., LLC. v. Juno Online Servs. (In re

Smart World Tech. LLC)*, 423 F.3d 166, 174-75 (2d Cir. 2005) ("[I]t is the debtor-in-possession

who controls the estate's . . . legal claims . . . .").

---

[11]      Under 11 U.S.C. § 362(d), "the court shall grant relief from the stay . . . for cause, including the
lack of adequate protection of an interest in property of such party in interest."  "Cause" is not defined in
the statute (with the exception of lack of adequate protection), but most courts base a finding of cause upon
consideration of certain enumerated factors. *See In re Unanue-Casal*, 159 B.R. 90, 95 (D.P.R. 1993) (citing
12 factors that courts consider in evaluating whether the stay should be lifted), *aff'd*, 23 F.3d 395 (1st Cir.
1994).  In arguing the existence of cause, Movants rely on only the above four factors.

22.     In addition, all creditors of the Commonwealth and COFINA are subject to this Court's jurisdiction.  *See* PROMESA § 306(c) ("The district court in which a case under this title is pending shall have personal jurisdiction over any person and entity").  Thus, unlike the District Court in the Lex Claims Litigation, this Court has the power to bind all creditors with respect to their legal rights and claims regarding the Dedicated Sales Tax Revenues.  For instance, this Court may confirm a plan of adjustment under PROMESA § 314, and pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, made applicable in a Title III case by section 301(a) of PROMESA, "a plan may . . . provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  11 U.S.C. § 1123(b)(3)(A).  In addition, an Order confirming a plan of adjustment under Title III will bind the debtor and all creditors with the debtor receiving a discharge of all debts.  11 U.S.C. § 944 (made applicable to these Title III Cases by section 301(a) of PROMESA).  Therefore, a judgment rendered by this Court, either through litigation or an approved settlement, can constitute a complete resolution of the issue, as this Court has the jurisdiction to bind all creditors with respect to any Commonwealth claim against the Dedicated Sales Tax Revenues.

23.     In contrast, the District Court in the Lex Claims Litigation only had the power to bind the parties that appeared before it and submitted to its jurisdiction.  While the Lex Claims court could have decided the Commonwealth-COFINA Dispute, such a decision would not be binding on non-parties. *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008).  Therefore, the Lex Claims court's determination of the Commonwealth-COFINA Dispute would have been open to collateral attack by any disappointed non-party GO or COFINA bondholder, who could have brought the exact same claims in federal or Puerto Rico courts, effectively obtaining two bites at the apple.  Because of this lack of finality, the COFINA Senior Bondholders' Coalition filed their motion for

certification.  At that time, a ruling from the SCOPR was the only method for achieving a final decision regarding the validity of the COFINA structure that would be binding on all bondholders. But the circumstances have changed, and the concerns that motivated the COFINA Senior Bondholders' Coalition to file their motion for certification currently no longer exist.  Because the Title III filings granted this Court jurisdiction over all creditors, certification is not necessary at this time, and the Lift Stay Motion should be adjourned or denied without prejudice.

24.     Furthermore, the Protocol Motion makes clear that the Oversight Board is taking a central position on the resolution of these issues, as Congress envisioned in PROMESA.[12]  *See* PROMESA § 101(a) ("The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets."); *id* § 315(a) (authorizing the Oversight Board to "take any action necessary on behalf of the debtor to prosecute the case of the debtor").  This Court should provide the Oversight Board and this Court with the opportunity to manage the restructuring process—including the resolution of the Commonwealth-COFINA Dispute—as intended by PROMESA.[13]

---

[12]     The COFINA Senior Bondholders' Coalition objected to the Oversight Board's Protocol Motion, and nothing herein should be construed as contradicting the positions taken by the COFINA Senior Bondholders' Coalition in their objection.  *See* Protocol Objection.  The COFINA Senior Bondholders' Coalition supports the Protocol Motion only *subject to* the modifications requested in the Protocol Objection.

[13]     The COFINA Senior Bondholders' Coalition recognizes that, should the Oversight Board's attempt(s) for speedy resolution of the Commonwealth-COFINA Dispute fail, and litigation become inevitable, certification of this issue may again become the best method for resolving the dispute.  Thus, the COFINA Senior Bondholders' Coalition seeks to have the Lift Stay Motion adjourned *sine die* or denied without prejudice subject to the Motion being renewed as circumstances warrant.

> 2. **The Interest of Judicial Economy and Expeditious Judicial Resolution are Best Served by Resolving the Dispute in Accordance with the Protocol Motion, Not Through the Certification Questions**

25.     Movants argue that having the SCOPR address the Certification Questions is the most expeditious method to achieve a full and final result, pointing to the fact that, should this Court decide the Commonwealth-COFINA Dispute, the disappointed party would inevitably appeal, and there still may be certification.  *See e.g.*, Lift Stay Motion at 11 ("Any decision by this Court as to how it believes the Supreme Court of Puerto Rico would resolve the question . . . will be appealed by the disappointed parties.  The First Circuit would then likely be asked to certify the question to the Puerto Rico Supreme Court.").  At the time that the Lift Stay Motion was filed, it may well have been the case that certification was the most expeditious route to resolving the Commonwealth-COFINA Dispute, but the circumstances have now changed.  In light of the Oversight Board's Protocol Motion, certification as contemplated by the Lift Stay Motion is now premature.  The Protocol Motion calls for an expedited litigation schedule and full resolution of the Commonwealth-COFINA Dispute before November 1, 2017.  Protocol Motion at 15.  The Protocol Motion also expressly contemplates the possibility of a settlement in advance of this expedited litigation.  *Id.* at 15-16.  Consequently, certification to the SCOPR is no longer necessary to achieve an expeditious result.

26.     Furthermore, judicial economy is not served by lifting the stay and certifying questions to the SCOPR, as it necessarily contemplates the involvement of a separate court in an entirely different judicial system.  In contrast, the Protocol Motion, as modified in a manner consistent with the Protocol Objection, provides a workable method for fully resolving the Commonwealth-COFINA Dispute without involving another court.  Accordingly, the interests of judicial economy and expediency weigh in favor of denying the Lift Stay Motion.

### 3.    The Lex Claims Litigation is Not Ready for Adjudication

27.    Movants take the position that the Lex Claims Plaintiffs' challenges to the COFINA structure are pure legal issues that could be adjudicated without a trial.  This is not necessarily true.  For instance, among their legal theories, the Lex Claims Plaintiffs assert that the COFINA structure was intended to improperly circumvent the debt ceiling imposed by Article VI, § 2 of the Puerto Rico Constitution.  *See e.g.*, Second Amended Complaint (Lex Claims Dkt. No. 78) at ¶ 94 (alleging "COFINA's primary purpose is to serve as a vehicle for the Commonwealth to borrow large sums of money in a way that circumvents the carefully prescribed debt limitations and priorities contained in the Puerto Rico Constitution.").  Whether this was truly the intent of those that created COFINA is a factual issue that would require discovery and potentially testimony prior to adjudication.  *See Gener-Villar v. Adcom Grp., Inc.*, 530 F. Supp. 2d 392, 408 (D.P.R. 2007) ("Issues of intent are questions of fact . . . ."); *Pueblo v. Flores Betancourt*, No. CR-87-81, 1989 WL 607251 (P.R. Dec. 7, 1989) ("Intent is a question of fact to be assessed and determined by the jury, or by the judge in non-jury trials.").

28.    Furthermore, the Lex Claims Plaintiffs no longer have standing to pursue the claims raised in the Second Amended Complaint.  *See infra* Section B.1.  Since the proper party (the Oversight Board) is not even the named plaintiff in the Lex Claims Litigation, a final decision from the SCOPR on the Certification Questions likely cannot be completed within three months.[14]

---

[14]    To the extent that the Lex Claims Plaintiffs are able to pursue the claims, the COFINA Senior Bondholders' Coalition has asserted certain equitable arguments (*e.g.*, laches, estoppel, etc.) against the Lex Claims Plaintiffs that may raise factual issues.  *See* COFINA Senior Bondholders' Motion and Incorporated Memorandum of Law for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) (Lex Claims Dkt. No. 219).

### 4.     Lifting the Stay Would Potentially Prejudice the Parties

29.     The Protocol Motion makes clear that the Commonwealth-COFINA Dispute need

not be litigated before the SCOPR at this time.  *See, e.g.*, Protocol Motion at 15 ("In advance of

the commencement of such litigation [certain parties] shall agree to a schedule constructed to

enable the Court to rule, on a final basis, on the Commonwealth-COFINA Dispute, on or before

November 1, 2017, ***in the absence of a prior settlement*** . . . .  Each Agent shall endeavor to the

best of the Agent's ability under the circumstances to litigate ***and negotiate*** from the perspective

of what result is best for the Debtor the Agent represents . . . .") (emphasis added); *id.* at 16 ("To

the extent it is necessary or desirable to link a settlement to the treatment of creditors' claims in a

title III plan of adjustment, the Oversight Board ***may participate in the negotiations in an effort***

***to reach such a settlement***.") (emphasis added).  Movants take the position that no prejudice will

befall any other party because a judge "would ultimately have to determine whether to certify the

available resources issue."  Lift Stay Motion at 12 (citing *In re Lyondell Chem. Co.*, 402 B.R. 596,

614 (Bankr. S.D.N.Y. 2009) ("I likewise consider . . . 'whether litigation in another forum would

prejudice the interests of other creditors' to be a wash, as I note that the issues would have to be

litigated somewhere . . . .")).  This position is simply wrong.

30.     The Protocol Motion specifically contemplates the settlement of the

Commonwealth-COFINA Dispute.  Since litigation of the Commonwealth-COFINA Dispute is

not inevitable, forcing a binary resolution of the dispute, through the Certification Questions, will

certainly prejudice the creditors of at least one of the Title III Debtors.  *See* Protocol Motion at 8

("If [the Dedicated Sales Tax Revenues is property of the Commonwealth], then there may be no

funds available to pay COFINA debt."); *id.* at 12 ("Should the COFINA structure be determined

to be valid, almost the entirety of the funds available for debt service may need to continue to flow

to those creditors, leaving very little recovery to creditors of the Commonwealth.").

31.     Moreover, a settlement of the Commonwealth-COFINA Dispute likely will benefit both Title III Debtors while also providing a viable path forward as the Commonwealth seeks to regain access to the capital markets, a primary goal of Congress when it enacted PROMESA.  *See* PROMESA § 101(a).  A reasonable settlement of the dispute, together with a stabilized economy and a demonstration of fiscal responsibility, will only enhance the Commonwealth's ability to borrow money on a secured and/or unsecured basis.  In contrast, a binary outcome may negatively impact the Commonwealth's efforts to obtain municipal financing.  For example, a trampling of the COFINA structure will undoubtedly have a deleterious and cascading effect on the Commonwealth's ability to access the securitization market, both for itself and its special purpose vehicles (*e.g.*, energy provider, water and sewer provider), greatly hampering a speedy emergence from these Title III Cases.

**B.      The Court Should Not Lift the Stay to Allow Certification Because the Lex Claims Litigation is Not Justiciable in its Present Posture**

**1.      The Title III Filing Divested the Lex Claims Plaintiffs of Standing to Bring Their Claims Against COFINA**

32.     To the extent that the Lex Claims Plaintiffs ever had standing to challenge the Commonwealth's transfer of the Dedicated Sales Tax Revenues to COFINA based on their status as GO Bondholders—and the COFINA Senior Bondholders' Coalition maintains that they did not—that standing unequivocally was stripped when the Oversight Board filed the Commonwealth Title III Case.  As previously acknowledged by counsel for certain GO Bondholders, a claim against COFINA would belong to the Commonwealth—not to any Commonwealth creditor—and a favorable outcome for the Commonwealth of such a claim would be that the Dedicated Sales Tax Revenues constitute property of the Commonwealth under PROMESA § 301(c)(5), not property of any Commonwealth creditor:

> [COUNSEL FOR GO BONDHOLDERS]:   The monies that
> ultimately the Commonwealth is looking to keep or recoup or make
> clear are its property, these are actually Commonwealth funds.
> They're not GO bondholder funds.  They are Commonwealth funds
> that the Commonwealth is looking to keep.  The GO bondholders by
> virtue of their first priority under the constitution on all available
> resources simply have a first claim to those monies once they're
> returned, but I think the dispute is not simply as it's portrayed of
> GOs versus COFINAs.  *I think it's Commonwealth versus
> COFINA to some degree in terms of whose money it is, and then
> we simply have a first claim on it.*

May 17 Hr'g Tr. 67:16-18 (emphasis added).

33.   The Oversight Board, as "trustee" in these Title III Cases, *see* PROMESA §§
301(c)(7) & 315(b), has exclusive standing to bring the Commonwealth's claims against COFINA.
*See In re Madison Bentley Assocs., LLC*, 516 B.R. 724, 728 (S.D.N.Y. 2014) ("A trustee has
standing to assert a claim against a third party if (a) it could have been asserted by the debtor pre-
petition and (b) the claim is a general one, with no particularized injury arising from it, and if that
claim could be brought by any creditor of the debtor."); *In re Van Dresser Corp.*, 128 F.3d at 947
(holding that if the trustee could have asserted the claim at the commencement of the bankruptcy
case, "that claim is the exclusive property of the estate and cannot be asserted by a creditor")
(internal quotations omitted).  While no "estate" is created upon the commencement of a case
under Title III,[15] the Commonwealth's potential pre-petition claims may only be litigated by the
Oversight Board, as the Commonwealth representative, and cannot be asserted by a creditor.

34.   This includes the claims asserted by the Lex Claims Plaintiffs against COFINA, as
the injury alleged in those claims are based on the theory that the transfer of the Dedicated Sales

---

[15]   PROMESA does not incorporate sections 363 and 541 of the Bankruptcy Code.  *See* PROMESA
§ 301(a).  Therefore, there is no "estate" in a Title III case, and the debtor is free to use, sell, or lease
property without court approval.  However, property of a Title III debtor is akin to "property of the estate."
*See* PROMESA § 301(c)(5) ("The term 'property of the estate', when used in a section of title 11, United
States Code, made applicable to a case under this title by subsection (a), means property of the debtor.").

Tax Revenues to COFINA diminishes the value of Commonwealth assets that otherwise would be available for all uses, including for essential services or payment to creditors.  This is a generalized injury to the debtor that could have been brought by the Commonwealth pre-petition.  *In re Am. Cartage Inc.*, 438 B.R. 1, 14 (D. Mass. 2010) *aff'd*, 656 F.3d 82 (1st Cir. 2011) (noting the trustee has exclusive standing to bring post-petition actions alleging general harms to the estate).  Because the claims against COFINA belong to the Commonwealth and may be raised exclusively by the Oversight Board, the Lex Claims Plaintiffs have been divested of standing to pursue the claims against COFINA raised in the Second Amended Complaint.  *See id.* at 14 (noting senior creditor did not have standing to bring claims alleging general harms to the debtor "where the economic harm [the creditor] allegedly suffered is derivative of that suffered by the estate").  As such, the Lex Claims Plaintiffs' claims against COFINA no longer form a justiciable "case or controversy." *See Flast v. Cohen*, 392 U.S. 83, 98 (1968) ("Standing is an aspect of justiciability . . . ."); *Rivera-Cartagena v. Wal-Mart Puerto Rico, Inc.*, 767 F. Supp. 2d 310, 321 (D.P.R. 2011) ("The standing to sue depends, perforce, on the justiciable nature of the claim brought against the defendant.").

35.     Furthermore, the Oversight Board, who has sole authority to pursue these claims, has indicated that it does not believe certification to the SCOPR is the proper course for resolving the Commonwealth-COFINA Dispute.  *See* Protocol Motion at 8-9 (stating that the Oversight Board intends to file a "separate pleading explaining why that method of resolution would be improper and inconsistent with the reorganization in process"); Debtors' Status Report Regarding (A) Financial Disclosures to Creditors and (B) Status of Settlement Discussions (Dkt. No. 350) ("In their responses to [the Lift Stay Motion], the Oversight Board and AAFAF will explain why they believe the SUT Dispute should be decided by the Title III Court.").

      **2.**      **The Supreme Court of Puerto Rico Requires an Actual Case in Controversy to Render a Decision**

36.     Because the Lex Claims Plaintiffs lack standing to pursue their claims against COFINA, any decision of the SCOPR regarding the Lex Claims Litigation would be advisory in nature.  Accordingly, in its present posture, the SCOPR would likely decline to consider the Certification Questions.  Under Puerto Rico law, "certification is in order if (1) the controversy involves questions of Puerto Rican law; (2) *said questions may determine the outcome of the case*; (3) there are no clear-cut precedents in [the] Court's case law; and (4) the case makes an account of all the facts relevant to said questions showing clearly the nature of the controversy giving rise to the questions."  *See H.E. Vicente Cuesnongle, O.P. v. D.A.C.O.*, No. CE-85-468, 1987 WL 448283, at *500 (P.R. June 30, 1987) (emphasis added); *see also* Rule 25 of the Supreme Court of Puerto Rico ("This Court may entertain any matter certified to it . . . should there exist in the petitioner court any judicial matter involving questions of Puerto Rican law that *may determine the outcome of the same* . . . .") (emphasis added).  In addition, the SCOPR has held that, in exercising its discretion, it will decline to consider questions on certification if there is no underlying case or controversy.  *H.E. Vicente Cuesnongle*, 1987 WL 448283 at *500 ("Certified questions must be framed within a *context of detailed and specific facts*, and the court's answer must be *binding on the parties*.  The legal controversy giving rise to the certification must stem from a real case or controversy between the parties.  Otherwise, an advisory opinion would ensue, thus affecting the legitimacy and effectiveness of the adjudication.") (emphasis in original) (internal citations omitted).

37.     Based on the foregoing, the SCOPR's consideration of the Certification Question necessarily cannot "determine the outcome of the case" as required by Puerto Rico law.  Accordingly, the Lift Stay Motion should be denied.

## IV.    CONCLUSION

38.    For the foregoing reasons, the COFINA Senior Bondholders' Coalition respectfully

requests that the Court enter an Order (i) adjourning the Lift Stay Motion *sine die* or denying it

without prejudice, and (ii) granting such other and further relief that the Court deems appropriate.

DATED:  June 21, 2017

Respectfully submitted,

REICHARD & ESCALERA                          QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP

By :    */s/ Rafael Escalera*_____     **Susheel Kirpalani** (*pro hac vice*)
        **Rafael Escalera**                   susheelkirpalani@quinnemanuel.com
        USDC No. 122609
        escalera@reichardescalera.com         **Eric Winston** (*pro hac vice*)
                                             ericwinston@quinnemanuel.com
        */s/ Sylvia M. Arizmendi*_____
        **Sylvia M. Arizmendi**               **Daniel Salinas**
        USDC-PR 210714                         USDC-PR 224006
        arizmendis@reichardescalera.com        danielsalinas@quinnemanuel.com

        */s/ Fernando Van Derdys*_____     **Eric Kay** (*pro hac vice*)
        **Fernando Van Derdys**               erickay@quinnemanuel.com
        USDC-PR 201913
        fvander@reichardescalera.com           **Kate Scherling** (*pro hac vice*)
                                             katescherling@quinnemanuel.com
        */s/ Carlos R. Rivera-Ortiz*_____
        **Carlos R. Rivera-Ortiz**            **Brant Duncan Kuehn** (*pro hac vice*)
        USDC-PR 303409                         brantkuehn@quinnemanuel.com
        riverac@reichardescalera.com
                                             51 Madison Avenue, 22nd Floor
        */s/ Gustavo A. Pabón-Rico*_____     New York, New York 10010-1603
        **Gustavo A. Pabón-Rico**
        USDC-PR 231207
        pabong@reichardescalera.com

        255 Ponce de León Avenue
        MCS Plaza, 10th Floor
        San Juan, Puerto Rico 00917-1913

        Co-Counsel to the COFINA Senior Bondholders' Coalition

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

<u>/s/ Gustavo A. Pabón-Rico</u>
USDC-PR 231207