## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

       Debtors.

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

THE COMMONWEALTH OF PUERTO RICO,

       Debtor.

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

PUERTO RICO SALES TAX FINACING
CORPORATION ("COFINA"),

       Debtor.

-------------------------------------------------------------x

THE PUERTO RICO FUNDS AND THE
MUTUAL FUND GROUP,

       Movants,

v.

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

PROMESA
Title III

No. 17 BK 3284-LTS

PROMESA
Title III

This Document Relates to:[1]
17 BK 3283; 17 BK 3284

---

[1]  Pursuant to Paragraph 5 of the Joint Administration Order entered in lead Case No. 17 BK 3283-LTS [Dkt. No. 242], this pleading will be filed in both the lead Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

       as representative of

THE COMMONWEALTH OF PUERTO RICO
and PUERTO RICO SALES TAX FINACING
CORPORATION ("COFINA"),

       Respondents.

-------------------------------------------------------------x

**OPPOSITION OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO
TO THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY THE
PUERTO RICO FUNDS AND MUTUAL FUND GROUP**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

    A.    The COFINA Bonds ................................................................................ 3

    B.    The Commonwealth-COFINA Dispute .................................................. 3

    C.    The Fiscal Plan......................................................................................... 5

    D.    The Title III Cases .................................................................................. 6

ARGUMENT ........................................................................................................................ 7

I.    THE COMMONWEALTH-COFINA DISPUTE INVOLVES FEDERAL ISSUES
INAPPROPRIATE FOR CERTIFICATION TO THE PUERTO RICO SUPREME
COURT ....................................................................................................................... 8

    A.    The Commonwealth-COFINA Dispute Turns on a Matter of Federal Law That
Must Be Decided by the Title III Court .................................................. 8

    B.    The Federal Nature of the Commonwealth-COFINA Dispute Precludes
Certification ............................................................................................. 10

II.    MOVANTS DO NOT HAVE STANDING TO PROSECUTE THE
COMMONWEALTH-COFINA DISPUTE....................................................... 12

    A.    Movants Do Not Have Derivative Standing ........................................ 12

    B.    PROMESA Bars Movants' Attempts to Assert the Debtors' Claims.................. 13

III.    MOVANTS HAVE NOT SHOWN CAUSE TO LIFT THE AUTOMATIC STAY ....... 15

CONCLUSION...................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
217 F. Supp. 3d 508 (D.P.R. 2016)........................................................................16

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
369 B.R. 87 (D.P.R. 2007)....................................................................................17

*Cuesnongle v. Ramos*,
835 F.2d 1486 (1st Cir. 1987)..............................................................................11

*Fogel v. Zell*,
221 F.3d 956 (7th Cir. 2001) ...............................................................................12

*In re Brown*,
951 F.2d 564 (3d Cir. 1991)..................................................................................18

*In re Collins*,
118 B.R. 35 (Bankr. D. Md. 1990) .......................................................................18

*In re Colonial Realty Inv. Co.*,
516 F.2d 154 (1st Cir. 1975).............................................................................8, 9

*In re Fiedler*,
34 B.R. 602 (Bankr. D. Colo. 1983) .....................................................................19

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990)................................................................16, 17, 19

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993)....................................................................................18

*In re White*,
851 F.2d 170 (6th Cir. 1988) ...............................................................................17

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics
Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003)..................................................................................12

*Pan Am. Comput. Corp. v. Data Gen. Corp.*,
112 D.P.R. 780, 12 P.R. Offic. Trans. 983 (P.R. 1982)...................................10, 11

*Thompson v. Ramirez*,
597 F. Supp. 730 (D.P.R. 1984)............................................................................11

iv

*Twin Cty. Grocers, Inc. v. Mendez and Co.*,
  81 F. Supp. 2d 276 (D.P.R. 1999) .......................................................................11

*Watchtower Bible and Tract Soc'y of N.Y. Inc. v. Municipio de Dorado*,
  192 D.P.R. 73 (P.R. 2014) ................................................................................11

STATUTES

P.R. Laws Ann. tit. 13, § 11a ................................................................................3

P.R. Laws Ann. tit. 13, § 12 ..................................................................................4

P.R. Laws Ann. tit. 13, § 16 ..................................................................................3

P.R. Laws Ann. tit. 4, § 24s(f) ............................................................................11

P.R. Laws Ann. tit. 13, § 2401(b) .........................................................................3

PROMESA § 101 ...................................................................................................5

PROMESA § 104(j) ...............................................................................................6

PROMESA § 206 ...................................................................................................6

PROMESA § 301(c)(5) ..........................................................................................4

PROMESA § 304(a) ..............................................................................................6

PROMESA § 305(2) .............................................................................................14

PROMESA § 306 .......................................................................................... *passim*

PROMESA § 405(b) ..........................................................................................5, 6

11 U.S.C. § 362(d) ..............................................................................................15

RULES

P.R. Sup. Ct. R. 25 .......................................................................................10, 17

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA," and collectively with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as the Debtors' representative pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this opposition to the Motion of the Puerto Rico Funds and the Mutual Fund Group (collectively, the "Movants") for Relief from the Automatic Stay (the "Motion").

## PRELIMINARY STATEMENT

1.      A critical legal issue to be determined in the Debtors' Title III cases is whether and how much of the sales and use taxes imposed by the Commonwealth are property of each Debtor within the meaning of PROMESA § 306(b) (the "Commonwealth-COFINA Dispute"). The Movants wish to have the stay lifted to engage in a two-step process outside of this Court: first, to have briefing in front of a different federal court seeking to certify to the Puerto Rico Supreme Court a different question, *i.e.*, whether the sales and use taxes are "available resources" of the Commonwealth within the meaning of the Puerto Rico Constitution (the "Certification Question"), and, if successful, to have the Certification Question resolved by the Puerto Rico Supreme Court.

2.      The resolution of the Certification Question will not resolve the Commonwealth-COFINA Dispute, which requires the interpretation and application of federal law.  Resolution of the Certification Question is not dispositive of how PROMESA – a federal statute – should be interpreted and applied.  Critically, the First Circuit has ruled that a determination of what constitutes property for purposes of federal bankruptcy law cannot be impeded by the idiosyncrasies of local property laws.

3.      In addition, Movants are creditors of the Debtors and, as such, lack standing to raise the Certification Question because the Debtors themselves own and control their respective claims to the sales and use taxes.  Movants' requested relief would usurp these causes of action from the Commonwealth and COFINA and allow them to be litigated improperly by the creditors in some other forum.

4.      Furthermore, in seeking to lift the automatic stay, Movants overlook the Rules of the Puerto Rico Supreme Court and its jurisprudence on certification.  First, it is not up to a federal court to determine whether a Commonwealth court will decide a certified question; that decision is made by the Commonwealth court itself.  Second, the Puerto Rico Supreme Court does not decide mixed questions of federal and Commonwealth law.  Thus, it is not clear whether or when the Puerto Rico Supreme Court would decide the Certification Question.

5.      In light of these factors, the likelihood of resolving the Commonwealth-COFINA Dispute, especially by settlement, is materially greater if two designated agents of the Debtors litigate and negotiate together in this Court, rather than having a swarm of creditors on each side of the dispute litigate the issue in a different forum.  Such a procedure for unitary resolution is what the FOMB has proposed to join the issue properly and resolve it between the Debtors, either consensually or through litigation in the Title III Court, in accordance with PROMESA.

6.      Finally, creditors, including Movants, are automatically stayed from exercising control over the property of the Debtors, including the Debtors' causes of action.  There is no meritorious basis to grant stay relief to creditors to litigate actions owned by the Debtors, especially when the Debtors are ready and willing to litigate and negotiate them.  Accordingly, Movants' motion for relief from the automatic stay should be denied.

## STATEMENT OF FACTS

### A.    The COFINA Bonds

7.    In July 2006, the Legislative Assembly for the Commonwealth imposed a tax at a rate of 5.5% on the sale or use of certain goods and services in the Commonwealth (the "Sales and Use Tax").  *See* Act of July 4, 2006, No. 117-2006, 2006 P.R. Laws 1231 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16, § 2401(b)).  The following year, the Legislative Assembly created COFINA for the purpose of financing the payment, retirement, or defeasance of certain Commonwealth debt obligations through the issuance of bonds secured by the assignment of a portion of the Sales and Use Tax (the "COFINA Bonds").  *See* Act of July 5, 2007, No. 56-2007, 2007 P.R. Laws 173 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16).

8.    According to Movants, the COFINA Bonds are non-recourse bonds payable solely from, and secured by, a security interest granted under the Resolution in the pledged property, consisting mainly of the pledged Sales and Use Tax (the "Pledged Sales Tax").  As of July 1, 2015, the total Sales and Use Tax in Puerto Rico (to be allocated among the Commonwealth, municipalities, and COFINA) was increased to 11.5%.

### B.    The Commonwealth-COFINA Dispute

9.    The Commonwealth has issued approximately $17.8 billion in general obligation bond debt (the "GO Debt").  The GO Debt falls into two categories:  (*i*) the Commonwealth's general obligation bonds ("GO Bonds"), which were issued by the Commonwealth and are backed by a pledge of the Commonwealth's good faith, credit, and taxing power, and (*ii*) bonds issued by certain of the Commonwealth's public corporations, which bonds are guaranteed by the same pledge of the Commonwealth's good faith, credit, and taxing power ("GO-Guaranteed Bonds").

10.     On July 20, 2016, a group of beneficial holders of GO Bonds (the "*Lex Claims* Plaintiffs*") filed a lawsuit in this Court against certain Commonwealth officials (and, upon modification of their complaint, other defendants, including COFINA) styled as *Lex Claims, LLC v. Alejandro Garcia Padilla, et al.*, No. 16-02374 (FAB) (D.P.R. 2016) (the "*Lex Claims* Litigation"").  The Second Amended Complaint in the *Lex Claims* Litigation challenges the COFINA structure on the ground it violates Article VI, Sections 2 and 8, of the Puerto Rico Constitution.  [Dkt. No. 78.]

11.     The dominant issue in the *Lex Claims* Litigation is whether, after considering all procedural and substantive defenses, the Pledged Sales Taxes are either (*i*) property of the Commonwealth within the meaning of PROMESA § 301(c)(5), or (*ii*) subject to an allowable claim of the Commonwealth having priority over all claims of COFINA.  If either is true, then there may be no funds available to pay the COFINA debt.  If neither is true, then there will be $725 million less available per year to pay Commonwealth liabilities and expenses – an annual shortfall that will increase over time.

12.     The *Lex Claims* Plaintiffs argue, among other things, that the Puerto Rico Constitution requires the Commonwealth to pay the GO Debt ahead of any other expenditure. [*Lex Claims*, Dkt. No. 78, at 4.]  They point to Article VI, Section 8 of the Puerto Rico Constitution, which provides that, if Puerto Rico's "available resources" are insufficient to meet all its appropriations, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  P.R. Const. Art. VI, § 8.  In the view of the *Lex Claims* Plaintiffs, the Pledged Sales Tax is an "available resource," and COFINA was created and has issued bonds in an attempt to evade the GO Debtholders' claim on available resources and related constitutional

limitations on the amount of public debt the Commonwealth was permitted to issue.  [*Lex Claims*, Dkt. No. 78, at 7.]  Conversely, COFINA bondholders point to the statute enacted by the Commonwealth expressly providing the Sales and Use Tax is not an "available resource" of the Commonwealth.  P.R. Laws Ann. tit. 13, § 12.

13.     Movants sought leave to intervene as defendants in the *Lex Claims* Litigation on November 15, 2016.  [*Lex Claims* Dkt. No. 95.]  That motion was granted on February 17, 2017.  [*Lex Claims* Dkt. No. 184.]

14.     On March 20, 2017, a group of holders of senior COFINA bonds, the Puerto Rico Funds, and Ambac Assurance Corporation ("Ambac") (an insurer) filed three motions in the *Lex Claims* Litigation to certify questions to the Puerto Rico Supreme Court (collectively, the "Certification Motions").  [*Lex Claims* Dkt. Nos. 221, 223, 232.]  All three of the Certification Motions requested that the Puerto Rico Supreme Court be asked to decide whether the portion of revenues that the Sales and Use Tax transferred to COFINA (the Pledged Sales Tax) constituted "available resources" under the Commonwealth's Constitution.[2]  [*Lex Claims* Dkt. Nos. 221, 223, 232.]

15.     Briefing on the Certification Motions was stayed by the United States Court of Appeals for the First Circuit pursuant to PROMESA's automatic stay provision.  [PROMESA § 405(b).]  That stay expired on May 1, 2017.

**C.     The Fiscal Plan**

16.     On June 30, 2016, the FOMB was established under PROMESA § 101(b).  On August 31, 2016, President Obama appointed the FOMB's seven voting members.

---

[2] The COFINA Senior Bondholders also requested certification of two additional questions:  (*i*) whether the equitable doctrine of laches bars a challenge to the legislative transfer of the Pledged Sales Taxes to COFINA when the challenge was raised 10 years after COFINA was established, and (*ii*) whether the doctrine of *actos propios* bars a challenge of the Pledged Sales Taxes to COFINA given the language in the bonds' offering circulars.  [*Lex Claims* Litigation Dkt. 221.]

17.     On September 30, 2016, the Oversight Board designated the Debtors as covered entities under PROMESA § 101(d).

18.     On March 13, 2017, Puerto Rico's Fiscal Agency and Financial Advisory Authority ("AAFAF") submitted a joint fiscal plan to the FOMB.  On the same date, the FOMB certified the fiscal plan subject to certain amendments (as amended and corrected, the "Fiscal Plan").

**D.      The Title III Cases**

19.     On May 3, 2017, the FOMB issued a restructuring certification pursuant to PROMESA §§ 104(j) and 206, and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA § 304(a) in this Court (the "Commonwealth Title III Proceeding").

20.     On May 5, 2017, the FOMB issued a restructuring certification pursuant to PROMESA §§ 104(j) and 206, and filed a voluntary petition for relief for COFINA pursuant to PROMESA § 304(a) in this Court (the "COFINA Title III Proceeding," and, collectively with the Commonwealth Title III Proceeding, the "Title III Cases").

21.     The filing of the Title III Cases stayed the *Lex Claims* Litigation (and other lawsuits involving the Commonwealth and COFINA) upon the date of their filing.  [PROMESA § 405(d)(2).]  Accordingly, no objections, oppositions, or responses to the Certification Motions have been filed.

22.     After the Title III Cases were initiated, the FOMB, as representative of COFINA, informed the Court that it intended to submit a requested plan of procedures to address the Commonwealth-COFINA Dispute.  For example, in a June 1, 2017 Informative Motion filed in an adversary proceeding brought by the Bank of New York Mellon ("BNYM") in the COFINA Title III Proceeding, the FOMB stated that the Commonwealth-COFINA Dispute is a "pivotal issue" that "may be settled or litigated in the future based on a protocol the FOMB shall

recommend to the Court." [17-133-LTS, Dkt. No. 128, at ¶ 7.] The following day, the FOMB

reiterated its plan to submit procedures by which the Commonwealth and COFINA could resolve

this issue "in the near term." [17-133-LTS, Dkt. No. 141, at ¶ 3.]

23.    Notwithstanding the FOMB's stated intention to submit procedures to address the

Commonwealth-COFINA Dispute, Movants filed the Motion on June 7, 2017, requesting relief

from the automatic stay imposed by the filing of the Title III Cases. [Dkt. No. 164.] Movants

requested that the Title III Court lift the stay for the purpose of continuing briefing in the *Lex*

*Claims* Litigation on the Certification Motions and, if the Certification Motions are granted,

allowing the Puerto Rico Supreme Court to consider and decide the certified issues. [Motion, at

7.] In the alternative, Movants requested that the *Lex Claims* Litigation be transferred to this

Court as an adversary proceeding. [Motion, at 7 n.4.]

24.    Three days later, the FOMB filed its Motion for an order approving the procedure

to resolve the Commonwealth-COFINA Dispute (the "Procedures Motion"). [Dkt. No. 303.]

The Procedures Motion requests (*i*) the appointment of independent FOMB agents (the

"Agents") to serve separately as the respective representatives of the Commonwealth and

COFINA, and (*ii*) the approval of certain procedures related to their appointments and the

parameters of each Agent's powers and authority. The Procedures Motion also contemplates that

the Commonwealth-COFINA Dispute will be litigated by the Agents in accordance with an

agreed-upon schedule that allows this Court to rule, "on a final basis," on the Commonwealth-

COFINA Dispute on or before November 1, 2017 (unless the Commonwealth-COFINA Dispute

can be settled). [Dkt. No. 303, Ex. A ¶ 2g.]

## **ARGUMENT**

25.    The Court should deny the Motion to lift the automatic stay because (*i*) the

Commonwealth-COFINA Dispute involves federal issues inappropriate for certification to the

Puerto Rico Supreme Court, (*ii*) Movants do not have standing to prosecute the underlying

Commonwealth-COFINA Dispute, and, in any event, (*iii*) Movants have not shown cause to lift

the automatic stay.

**I.    THE COMMONWEALTH-COFINA DISPUTE INVOLVES FEDERAL ISSUES
INAPPROPRIATE FOR CERTIFICATION TO THE PUERTO RICO SUPREME
COURT**

26.    The critical issue in the Commonwealth-COFINA Dispute is whether the Sales

and Use Taxes are property of the Commonwealth or COFINA within the meaning of

PROMESA § 306(b), providing the Title III court "shall have exclusive jurisdiction of all

property, wherever located, of the debtor as of the commencement of the Title III case."

[PROMESA § 306(b).]  What constitutes property of the Debtors is a question of federal

bankruptcy law.  Thus, whether the Sales and Use Taxes are property of the Commonwealth or

COFINA is determined by federal law.

27.    The Certification Question, in contrast, involves the narrower question of whether

the Pledged Sales Taxes constitute "available resources" of the Commonwealth (and therefore

should not be transferred to COFINA).  The answer to this question, however, will not

independently resolve the federal-law issues in the Commonwealth-COFINA Dispute.

**A.    The Commonwealth-COFINA Dispute Turns on a Matter of Federal Law
That Must Be Decided by the Title III Court**

28.    To resolve the Commonwealth-COFINA Dispute, this Court must determine

whether the property at issue – the Sales and Use Tax revenue – is the property of the

Commonwealth or COFINA.  Once that issue has been decided, this Court can proceed with its

statutorily designated task of evaluating plans of adjustment in the Debtors' Title III Cases.  The

resolution of the Commonwealth-COFINA Dispute turns on federal law because federal law

determines who owns the subject property in a bankruptcy case.

29.    The First Circuit has held that "[a] national policy enacted by Congress in the exercise of its constitutional authority to establish uniform Laws on the subject of Bankruptcies cannot be impeded by the idiosyncrasies of local property laws." *In re Colonial Realty Inv. Co.*, 516 F.2d 154, 158 (1st Cir. 1975) (internal citations omitted).  In *Colonial Realty*, a bank, which was the mortgagee on five of the debtors' apartment complexes located in Massachusetts, took possession of the complexes following the debtors' nonpayment on the mortgages three days before the debtors filed for bankruptcy protection.  The district court ordered the bank to return the properties to the debtors to comply with Chapter XII of the Bankruptcy Act of 1898, as amended, which "afford[ed] the debtor or court appointed trustee the right to immediate possession of all property of the debtor in the possession of a mortgagee." *Id.*

30.    On appeal by the bank on the ground Massachusetts law provided the bank owned the property, the First Circuit concluded the bankruptcy court had summary jurisdiction to order turnover of the property notwithstanding that state law provided the debtor did not own it.  *Id.* at 156.  The court specifically rejected the bank's argument that such a turnover was not permissible because Massachusetts law treated the mortgagee as legal owner of the mortgaged property.  *Id.* at 158.  The First Circuit determined that federal bankruptcy law controls and it "cannot be impeded by the idiosyncrasies of local property laws." *Id.* (internal citations omitted).  Thus, the federal bankruptcy court could order that the properties be turned over to the debtors' trustees notwithstanding the existence of the conflicting Massachusetts provision.

31.    The issue here is whether the Commonwealth statute providing the Sales and Use Tax is not an available resource of the Commonwealth is an idiosyncratic local law that is not controlling.  In *Colonial Realty*, federal bankruptcy law stated the property was property of the estate even though state law provided it was property of the mortgagee.

32. Similarly, regardless of how the Puerto Rico Supreme Court would determine the Certification Question, the ultimate issue is a matter of federal law, namely whether the Sales and Use Taxes are property of the debtor.

### B. The Federal Nature of the Commonwealth-COFINA Dispute Precludes Certification

33. The Title III Court has exclusive jurisdiction over the Commonwealth-COFINA Dispute under PROMESA § 306(b).  The issue here turns on the interpretation and application of federal bankruptcy law, including those provisions incorporated into PROMESA, and the determination of what constitutes property of the Debtors under PROMESA.  Although Commonwealth law may inform the Commonwealth-COFINA Dispute, the Title III Court will need to consider (A) on one hand whether the Commonwealth statute is not an idiosyncratic state property law because, among other facts (i) the COFINA bonds were issued on the basis that the Sales and Use Tax were not available resources of the Commonwealth, (ii) the COFINA bondholders relied, (iii) the legal opinions supported the reliance, and (iv) the Sales and Use Tax was transferred to COFINA, and (B) on the other hand whether the Commonwealth statute is an idiosyncratic state property law that should not govern what is property of the Commonwealth for purposes of PROMESA section 306(b) because of the Sales and Use Tax being (i) created by the Commonwealth, and subject to being repealed by the Commonwealth, (ii) generated from transactions in the Commonwealth, (iii) collected by the Commonwealth, and (iv) allocated in different percentages to COFINA and the Commonwealth depending on whether a default exists.

34. Furthermore, the Puerto Rico Supreme Court may not even agree to answer the Certification Question.  The Puerto Rico Supreme Court can, within its discretion, refuse to answer a certified question.  *Pan Am. Comput. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 12 P.R. Offic. Trans. 983, 993 (P.R. 1982) ("The power of this Court to take cognizance of matters

certified to it by the federal court is discretionary, not mandatory."); *see also Watchtower Bible and Tract Soc'y of N.Y. Inc. v. Municipio de Dorado*, 192 D.P.R. 73, 79 (P.R. 2014) ("This Court's authority to consider matters referred for certification is discretional.") (our translation). In particular, it will not answer a certified question that is "a mixed question that involves aspects of federal law . . . and aspects of Puerto Rico's local law." *See* P.R. Sup. Ct. R. 25(b).  It also will answer only those questions that "may determine or are determinant to the outcome of the case." *Pan Am. Comput.*, 12 P.R. Offic. Trans. at 993.[3]

35.    The Puerto Rico Supreme Court's application of these requirements repeatedly results in its rejection of certified questions.  The First Circuit has noted that "where *one* of the possible questions would necessitate analysis reflecting at least an implicit understanding of federal law, then the [Puerto Rico Supreme Court] will refuse to answer the question so as to avoid any risk that part of its analysis would be reviewed, rejected, or modified by a lower federal court." *Cuesnongle v. Ramos*, 835 F.2d 1486, 1492 (1st Cir. 1987) (emphasis in original).  The District of Puerto Rico has put it even more bluntly, concluding that "unless [the Puerto Rico Supreme Court] has the last word on *all* matters presented by a lawsuit, it will not answer specific or limited questions of Commonwealth constitutional or statutory law presented to it for resolution." [4] *Thompson v. Ramirez*, 597 F. Supp. 730, 732 (D.P.R. 1984) (emphasis in original).

---

[3] *See also* P.R. Laws Ann. tit. 4, § 24s(f) (the Supreme Court may consider a writ of certification "in which matters pertaining to Puerto Rican law are involved that *may determine the outcome* thereof . . .") (emphasis added).

[4] The District of Puerto Rico has also observed that the Puerto Rico Supreme Court "has made it crystal clear that no certification shall be accepted in any case wherein there may remain federal constitutional issues notwithstanding that the case may end by certification." *Twin Cty. Grocers, Inc. v. Mendez and Co.*, 81 F. Supp. 2d 276, 282 n.2 (D.P.R. 1999).  Here, the *Lex Claims* Litigation and the Debtors' Title III Cases will continue regardless of any decision to the Certification Question by the Puerto Rico Supreme Court, because both necessarily involve questions of federal constitutional and statutory law based on the claims asserted by the parties in both actions.

36.      Here, the Puerto Rico Supreme Court is likely to decline to answer to answer the Certification Question because doing so would entail federal law and not end the Title III Cases or even resolve the question of whether the Sales and Use Taxes are property of the Commonwealth or COFINA.

37.      In contrast, this Court can itself answer the Certification Question (especially by utilizing the procedures proposed by the FOMB) while also answering the real question, which is whether the Sales and Use Taxes are property of the Commonwealth or COFINA for purposes of PROMESA section 306(b).  This issue of federal law should therefore remain with the Title III court, under its grant of exclusive jurisdiction to decide matters relating to the Debtors' property pursuant to PROMESA.

## II.     MOVANTS DO NOT HAVE STANDING TO PROSECUTE THE COMMONWEALTH-COFINA DISPUTE

38.      Not only does a federal question about the nature of the Debtors' property belong in the Title III court, but Movants do not have standing to pursue the questions in the Certification Motions.  Movants do not have derivative standing to raise claims or defenses on behalf of the Commonwealth or COFINA, and PROMESA bars any such effort.

### A.      Movants Do Not Have Derivative Standing

39.      The cause of action at issue here – whether the Commonwealth or COFINA owns the Sales and Use Tax revenues – belongs to the Commonwealth and COFINA, not their bondholders.  Therefore, only these governmental entities can assert this claim.

40.      Movants are bondholders of the Debtors and therefore could bring this claim on their own only if they have derivative standing.  Given the Debtors' own willingness to resolve the dispute, however, the Movants cannot demonstrate derivative standing and therefore may not control the resolution, either through litigation or settlement, of these issues.

12

41.     Movants, as bondholders, cannot establish derivative standing.  "In such a suit, the creditor corresponds to the shareholder, and the trustee to management, in a shareholder derivative action."  *Fogel v. Zell*, 221 F.3d 956, 965 (7th Cir. 2001).  A creditor wishing to sue derivatively on behalf of a debtor must demonstrate that the claims at issue are colorable and that the debtor "unreasonably fail[ed] to bring suit on its claims."  *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003) (citing *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001)); *see also Fogel*, 221 F.3d at 965 ("If a trustee unjustifiably refuses a demand to bring an action to enforce a colorable claim of a creditor, the creditor may obtain the permission of the bankruptcy court to bring the action in place of, and in the name of, the trustee.").

42.     Regardless of whether the Movants' claims in the Commonwealth-COFINA Dispute are or are not colorable, the Debtors have not refused to adjudicate the claims as to the subject Sales and Use Tax revenues.  To the contrary, in the Procedures Motion, the FOMB (as representative of the Debtors) proposed a comprehensive structure for resolving the Debtors' claims, either by consensual settlement or litigation.  The Debtors are both willing and able to do what is necessary to answer the question at the heart of the Commonwealth-COFINA Dispute.  Accordingly, there is no basis on which Movants – or any other creditors – could assert these claims on the Debtors' behalf.

**B.     PROMESA Bars Movants' Attempts to Assert the Debtors' Claims**

43.     PROMESA itself undermines Movants' efforts to sue derivatively.  As noted above, the claims at issue are property of the Debtors, and multiple provisions of PROMESA therefore require that they be asserted by the Debtors under the jurisdiction of the Title III court.  By attempting to reframe these claims as being best asserted within the *Lex Claims* Litigation, Movants are seeking relief barred by PROMESA.

13

44.     First, the Motion violates PROMESA because the Debtors do not consent to any interference with their use of income-generating property.  Absent a debtor's consent, section 305 of PROMESA does not allow a court to interfere with (*i*) any of the political or governmental powers of the debtor, (*ii*) any of the property or revenues of the debtor, or (*iii*) the debtor's use or enjoyment of any income-producing property.  [PROMESA §§ 305(1), (2), (3).] The relief sought by the Movants would violate all of these subsections in two respects:

- The decision whether to litigate or settle claims on behalf of the public is at the heart of the government's political powers.  This power cannot be given to private parties not subject to government control and accountability.

- Because the Sales and Use Tax revenues are property of either the Commonwealth or COFINA, allowing the court in the *Lex Claims* Litigation to oversee disputes regarding such revenues would violate PROMESA § 305(2).

- Certification of the Commonwealth-COFINA Dispute, depending on its outcome, could interfere with the Debtors' use of income generated from the Sales and Use Taxes under the Fiscal Plan, in violation of PROMESA § 305(3).

Although the Debtors' consent would void these violations, neither Debtor has granted its consent.  Rather, both Debtors wish to proceed to resolve this central issue via the method proposed by the FOMB in the Procedures Motion.

45.     Second, the Motion violates PROMESA's grant of exclusive jurisdiction to the Title III Court on all matters relating to the property of the Debtors.  [PROMESA § 306(b).]  The grant of exclusive jurisdiction is highlighted by the additional requirement that every case over which "related to" jurisdiction exists must be transferred to the Title III Court.  [PROMESA § 306(d)(3).]  These provisions carry out Congress's express intent to have all matters touching on the Debtors' property adjudicated before one judge.  Under no circumstances could these statutes

be read to allow any judge, aside from this Title III federal judge, to address the critical issue of

what constitutes the Debtors' property in the Commonwealth-COFINA Dispute.[5]

46.    The Motion, however, would put this issue in the hands of the judge in the *Lex
Claims* Litigation, on the one hand, and the Puerto Rico Supreme Court on the other.  Such an

outcome would clearly conflict with PROMESA's jurisdictional mandate.

## III.    MOVANTS HAVE NOT SHOWN CAUSE TO LIFT THE AUTOMATIC STAY

47.    Because the questions in the Certification Motions are not appropriate for

certification and because Movants lack standing to raise those questions, the Court could (and

should) stop here and deny the Movants' motion to lift the automatic stay for one or both of

those reasons.  But in addition to those defects, the Movants have not shown good cause for the

Court to exercise any discretion to lift the automatic stay to allow the certification adventure to

proceed.

48.    While courts have discretion in determining whether to lift the automatic stay for

cause under 11 U.S.C. § 362(d), there is no basis to grant stay relief to allow creditors to control

actions owned by debtors when the debtors desire to prosecute them.  Additionally, there is no

basis to grant relief from the stay to prosecute an issue that is not the actual issue to be decided.

Here, the Movants ultimately want to find out whether the Pledged Sales Taxes are available

resources of the Commonwealth.  But, as noted above, the correct question is whether the taxes

are property of the Commonwealth (or COFINA) under federal law.  This is within the Title III

Court's exclusive jurisdiction under PROMESA § 306(b).  The Movants have not demonstrated

cause to lift the stay to resolve that critical and ultimate question.

49.    Factors often considered by courts in exercising their discretion include:

---

[5] The FOMB's proposed procedures respect this grant of exclusive jurisdiction by allowing the Title III Court to
oversee adjudication of the Commonwealth-COFINA Dispute.

"(1) [W]hether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigating in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of the litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms."

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984); *see also Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) (citing *Sonnax*'s list of twelve factors).

50.     At the heart of all of these factors, and therefore at the core of the court's determination, is an equitable case-by-case balancing of the various harms at stake. *Id.* Movants have the burden to show cause to lift the stay; in the absence of such a showing, the court should deny relief without requiring a showing from the debtor that it is entitled to continued protection. *Sonnax*, 907 F.2d at 1285.

51.     Here,  Movants claim that four of the above factors demonstrate cause to lift the stay:  (*i*) the impact of the stay on the balance of harms, (*ii*) whether relief would result in partial or complete resolution of the issues, (*iii*) judicial economy, and (*iv*) whether the parties are ready for trial.  [Motion at 8.]  An examination of these factors, however, reveals that all of them actually support leaving the automatic stay in place.

52.     *First*, the balance of harms does not favor lifting the stay to put the Certification Question to the Puerto Rico Supreme Court.  There is no harm to Movants if the stay is not

lifted, and Movants do not allege that any such harm would result if the stay is left in place.  The

Motion instead includes arguments relating to a claimed need to resolve the question to assist all

parties, including the Debtors.  But assisting all parties is not the same as harm to Movants.

Movants therefore implicitly recognize they would not suffer any unique harm if their Motion is

denied and if the procedure proposed by the FOMB to address the Commonwealth-COFINA

Dispute in the Title III court is followed.

53.     On the other hand, the Debtors stand to suffer substantial harm if the stay is lifted.

When lifting a stay "might doom [the debtor's] attempts to reorganize," relief from the stay is

not warranted.  *Sonnax*, 907 F.2d at 1287.  Although stay relief would not necessarily "doom"

reorganization here, it would reduce the likelihood of a consensual settlement of the

Commonwealth-COFINA Dispute that covers 55% of the total bond debt at issue.  Furthermore,

lifting the stay to allow briefing on the Certification Motions to proceed would require the

Debtors to participate in that procedure – and in any subsequent proceedings in the Puerto Rico

Supreme Court.  See P.R. Sup. Ct. R. 25 (describing briefing and oral argument of motions to

certify).  Furthermore, the FOMB's proposed procedures would ensure that the Commonwealth-

COFINA Dispute be resolved, either by litigation or settlement, by parties (the Agents) charged

with acting in the best interests of their respective Debtors.  Movants, however, as creditors, do

not owe that type of responsibility to the Debtors.

54.     *Second*, relief from the stay would not result in complete resolution of the issues.

If the Certification Motions are denied, then the underlying issues still need to be resolved.

Unlike in the cases cited by Movants, the questions raised in the Certification Motions do not

raise routine, day-to-day issues of state law with which the state court is familiar.  *Cf. In re*

*White*, 851 F.2d 170, 173 (6th Cir. 1988) (allowing state divorce proceeding to continue so state

court "with expertise in such matters" may "decide questions that are an inherent part of the divorce process"); *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 95 (D.P.R. 2007) (same regarding determination of finality for arbitration award). And the matter proposed to be certified would not resolve the entire issue before the Title III Court in the Commonwealth-COFINA Dispute in any event.

55.     *Third*, judicial economy would not be served by involving a Commonwealth court in what is clearly a federal issue that has not progressed very far beyond filing. This factor is often cited by courts that lift the automatic stay to allow a pre-petition action to proceed when that action has been pending for a long time and has progressed substantially. In such circumstances, the purpose of doing so is to avoid duplicating the adjudication efforts previously made by the underlying court. *See, e.g.*, *In re Unanue-Casal*, 159 B.R. 90 (D.P.R. 1993). Here, however, certification would be a far less efficient process, as (*i*) the Certification Motion has to be resolved in federal court, and (*ii*) there is substantial reason to conclude that the Puerto Rico Supreme Court would not agree to determine the issue even if the Certification Motion is granted. [*See* § I.B., above.]

56.     Moreover, even if the question under the Puerto Rico Constitution were the correct and only question to be decided, the *Lex Claims* Litigation in general – and the Certification Motions in particular – have not progressed as far as would be needed to warrant lifting the stay. Briefing on the Certification Motions was in the very early stages, as the Movants acknowledge. [Motion at 5.] And the *Lex Claims* Litigation has not otherwise moved far enough so that allowing it to proceed would avoid duplication of judicial efforts. *In re Collins*, 118 B.R. 35, 38 (Bankr. D. Md. 1990) (declining to lift stay when parties in state-court proceeding had not yet begun discovery). Furthermore, judicial economy would not be served

here because the Movants wish to introduce an entirely new court – the Puerto Rico Supreme Court – to this proceeding, even though that court has not yet been and would not otherwise be involved, has not yet heard any arguments on the issues at bar, and need not be involved given this Court's ability to deal with questions of Commonwealth law, as well as the FOMB's Procedures Motion.  *Cf. In re Brown*, 951 F.2d 564, 570 (3d Cir. 1991) (granting relief from stay because state court was familiar with background of case and had explored some remaining questions on issues of foreclosure of debtor's property); *Unanue-Casal*, 159 B.R. at 98 (lifting stay because state court had spent years litigating domicile and related actions and was familiar with complex litigation surrounding estate).

57.     *Fourth*,  Movants misapply the factor evaluating whether the parties are ready for trial.  Movants argue that, because the questions at issue in the Certification Motions are purely legal, a trial is not necessary and the stay should be lifted as a result.  [Motion at 13.]  Movants turn this factor on its head.  This factor stands for the proposition that cause for relief from the stay may exist where the state-court case has proceeded far enough that the parties *are* prepared for trial.  *In re Fiedler*, 34 B.R. 602, 604 (Bankr. D. Colo. 1983).  Where (as here) this has not happened, and there is no fact issue to try, the ready for trial factor does not apply.  Finally, Movants' characterization of the ultimate issue in the Commonwealth-COFINA Dispute as a legal question not requiring a trial means that it can be adequately evaluated by the Title III Court, especially following the procedures proposed by the FOMB.

58.     Accordingly, all of the factors cited by the Movants weigh in favor of keeping the stay in place and adjudicating the Commonwealth-COFINA Dispute pursuant to PROMESA in the Title III Court.  No other potential factors would suggest otherwise.[6]

---

[6] For example, another *Sonnax* factor evaluates whether the state-court action for which the movants are seeking relief from the stay "lack[s] . . . any connection with or interference with the pending bankruptcy case."  *Sonnax*,

## <u>CONCLUSION</u>

59.     For all of the above reasons, the Court should not lift the automatic stay for

purposes of allowing the Certification Motions to proceed.[7]

*[Remainder of This Page Left Intentionally Blank]*

---

907 at 1285.  Determination of whether the Pledged Sales Taxes constitute "available resources" of the Commonwealth is clearly wrapped up in the adjudication of the Title III Cases, because of those revenues' use in the Fiscal Plan as certified by the FOMB.

[7] For all of the reasons set forth in this Opposition, the *Lex Claims* Litigation should remain stayed under PROMESA, and there is no basis for Movants' alternative request to transfer it to this Court as an adversary proceeding.

Dated: June 21, 2017
    New York, NY

Respectfully submitted,

*/s/* Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: sratner@proskauer.com

Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel: (617) 526-9600
Fax: (617) 526-9899
Email: tmungovan@proskauer.com

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of Puerto Rico Sales Tax
Financing Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/* Hermann D. Bauer____

Hermann D. Bauer
