## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>          Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>          Debtor. | PROMESA<br>Title III<br><br><br>No. 17 BK 3284-LTS<br>(This court filing relates to No. 17 BK 3283-LTS and No. 17 BK -3284-LTS.) |

## AMBAC ASSURANCE CORPORATION'S OBJECTION TO PUERTO RICO FUNDS AND MUTUAL FUND GROUP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**FERRAIUOLI LLC**
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001

**MILBANK, TWEED, HADLEY & McCLOY LLP**
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

*Attorneys for Ambac Assurance Corporation*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284 (Last Four Digits of Federal Tax ID: 8474).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................. 4

I.     The COFINA Bonds And Structure............................................................................ 4

II.    The Background Of The *Lex Claims* Litigation. .................................................. 5

III.   The COFINA Subordinate Bondholders' Lift-Stay Motion. ............................... 8

OBJECTION ...................................................................................................................... 9

I.     Movants' Desire For A Speedy Resolution To A Constitutional Question That Is
       Not Properly Before This Or Any Other Court Does Not Justify Lifting the Stay. ........... 9

II.    The GO Plaintiffs Lack Standing As A Result Of The Commonwealth's Title III
       Filing And Accordingly Are Improper Litigants In Any Constitutional Litigation
       Before The Supreme Court Of Puerto Rico. .................................................... 11

III.   Even If The GO Plaintiffs Had Standing, Movants' Proposal Violates
       Constitutional Avoidance Principles And Prejudices COFINA And Its Creditors. ......... 12

CONCLUSION.................................................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*In re $6,871,042.36,*
  2016 WL 6602613 (D.D.C. Nov. 8, 2016) ...........................................................................11

*In re Applied Theory Corp.,*
  493 F.3d 82 (2d Cir. 2007).................................................................................................12

*Boddie v. Connecticut,*
  401 U.S. 371 (1971)...........................................................................................................14

*Edward J. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Constr. Trades Council,*
  485 U.S. 568 (1988)...........................................................................................................13

*Golden v. Zwickler,*
  394 U.S. 103 (1969)......................................................................................................13, 14

*H.E. Vicente Cuesnongle, O.P. v. D.A.C.O.,*
  119 D.P.R. 457, 463-64 (P.R. 1987) (Hernandez Denton, J., concurring) ............................16

*Jones v. U.S.,*
  526 U.S. 227 (1999)...........................................................................................................13

*In re Lifeco Inv. Grp., Inc.,*
  173 B.R. 478 (Bankr. D. Del. 1994) ....................................................................................12

*Medina & Medina v. Country Pride Foods,*
  122 D.P.R. 172, 181-82 (P.R. 1988)....................................................................................15

*Murray v. The Charming Betsy,*
  2 Cranch 64 (1804) ............................................................................................................13

*Northwest Austin Mun. Util. Dist. No. One v. Holder,*
  557 U.S. 193 (2009)...........................................................................................................12

*In re S.I. Acquisition, Inc.,*
  817 F.2d 1142 (5th Cir. 1987) ............................................................................................12

*In re San Juan Hotel Corp.,*
  847 F.2d 931 (1st Cir. 1988)...............................................................................................11

*Showtime Entm't, LLC v. Town of Mendon,*
  769 F.3d 61 (1st Cir. 2014).................................................................................................16

*State Farm Mut. Auto. Ins. Co. v. Pate,*
    275 F.3d 666 (7th Cir. 2001) ...............................................................15

*In re STN Enterprises,*
    779 F.2d 901 (2d Cir. 1985)...............................................................12

*Watchtower Bible Tract Soc. of N.Y., Inc. v. Municipality of Santa Isabel,*
    Civ. No. 04-1452, 2013 WL 2554879 (D.P.R. June 11, 2013)...............15

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)...........................................................................12

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)...........................................................................12

**Statutes**

13 L.P.R.A. § 11a(a) ..............................................................................4

13 L.P.R.A. § 11a(b) ..............................................................................4

13 L.P.R.A. § 12 ..................................................................................4, 5

13 L.P.R.A. § 13(d)................................................................................4

13 L.P.R.A. § 14(c)...............................................................................11

28 U.S.C. § 1258..................................................................................13

48 U.S.C. § 2163....................................................................................6

**Other Authorities**

P.R. Const. art. VI, § 8.............................................................................5

Ambac Assurance Corporation ("Ambac"), a holder and/or insurer of approximately $1.3 billion in net accreted value of bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), hereby submits this objection (the "Objection") to the Puerto Rico Funds and Mutual Fund Group's Motion for Relief from the Automatic Stay (Dkt. No. 270, the "Motion" or "Mot.") in the above-captioned adversary proceeding.  In support of its Objection, Ambac respectfully submits as follows:

## PRELIMINARY STATEMENT

1.     By their Motion, the Puerto Rico Funds and Mutual Fund Group ("Movants"), creditors with holdings heavily concentrated in COFINA subordinate debt, seek to reopen the controversial *Lex Claims* lawsuit[1] in which general obligation ("GO") bondholders of the Commonwealth of Puerto Rico (the "Commonwealth") sought a judgment declaring the sales-and-use-tax revenues belonging to COFINA and securing its bonds (the "Dedicated Sales Taxes") to be "available resources" of the Commonwealth under the Puerto Rico Constitution, and requiring that those funds be transferred, contrary to Puerto Rico statutes, to the Commonwealth Treasury.

2.     Virtually all of the intervenor-defendants in the *Lex Claims* Action sought dismissal of the GO plaintiffs' claims and only secondarily proposed certification of the "available resources" question to the Supreme Court of Puerto Rico.  Indeed, one of the two Movants here—the Mutual Fund Group—did not even seek certification in the *Lex Claims* Action when the matter was presented to the district court in a live controversy.  Now, after a substantial number of weighty and interconnected issues have been procedurally consolidated before this Court by virtue of three Title III filings under the Puerto Rico Oversight,

---

[1] *Lex Claims LLC v. Alejandro García-Padilla*, Civ. No. 16-2374-FAB (D.P.R.) (the "Lex Claims Action").

Management, and Economic Stability Act ("PROMESA"), Movants assert that the "available resources" question can be neatly excised from those proceedings and sent back to the district court that oversaw Puerto Rico's pre-Title III debt-related litigation to decide whether to certify the question to the Supreme Court of Puerto Rico, all with the ultimate goal of a "definitive" decision by Supreme Court of Puerto Rico in a matter of months.

3.      Ambac does not oppose certification generally, nor does it contest that certification of the "available resources" question to the Supreme Court of Puerto Rico may be warranted in the appropriate context. Indeed, as Movants note, Ambac argued in favor of certification of the "available resources" question in the context of the *Lex Claims* Action. But the landscape has changed dramatically, cautioning strongly against artificially reviving a stayed GO bondholder suit.

4.      The Motion should be denied for three independent reasons.

5.      ***First***, any questions of Puerto Rico constitutional law should be properly presented in a live dispute for this Court to determine whether and what to certify to the Supreme Court of Puerto Rico. In the *Lex Claims* Action, GO bondholders aggressively moved to take COFINA's property and its bondholders' collateral, seeking a court ruling that would declare that money to be resources available to the Commonwealth as a constitutional matter and requiring the Commonwealth to take it. But following the Title III filings, GO bondholders, perhaps in recognition of their lack of standing in light of the Commonwealth's Title III filing, have not sought to advance that litigation. And while the Commonwealth plainly has designs on the money—treating it as its own in the fiscal plan certified by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on March 13, 2017 (the "Fiscal Plan")—the Oversight Board has represented that the Commonwealth will give 30 days' notice

before moving to divert those funds from COFINA.  The Dedicated Sales Taxes are the property of COFINA until a court of competent jurisdiction declares otherwise.  And no litigant, whether the Commonwealth or the GO bondholders, is currently seeking such a declaration.  There is accordingly no basis to lift the stay and press forward with certification at this time.

6.      **Second**, the GO plaintiffs in the *Lex Claims* Action no longer have standing to assert a claim directed at increasing the assets of the Commonwealth estate.  As a result of the Commonwealth's Title III filing, that claim is now property of the Debtor, which cannot be asserted by individual GO bondholders.  Yet Movants' proposal would have those same GO bondholders litigate the "available resources" question directly to the Supreme Court of Puerto Rico, notwithstanding the fact that neither those plaintiffs nor the Commonwealth itself has sought to pursue such litigation at this time.  To the extent the "available resources" question needs to be litigated—and it is not clear that it must be—the GO plaintiffs in *Lex Claims* would be improper litigants.

7.      **Third**, even if the GO plaintiffs had standing, Movants' proposal would seek to revive the *Lex Claims* Action, skip over the dispositive questions, many of which have already been presented and briefed, and go straight to the constitutional question.  Such an approach violates principles of constitutional avoidance and would prejudice COFINA and its creditors, including by denying them the right to have their motions to dismiss or for judgment on the pleadings heard.  Indeed, Movants' proposal purports to restrict the parties' ability to litigate the merits of the claims advanced in the *Lex Claims* Action, essentially ***forcing*** the parties to litigate the "available resources" question while ***preventing*** them from seeking dismissal altogether. Movants' proposal would unfairly restrict Ambac and others from pursuing the litigation strategy of their choosing, in violation of their due process rights under the U.S. Constitution.

8.     In the absence of a live dispute among proper parties that concretely presents the "available resources" question, the request for stay relief followed by certification should be denied.  If, as Movants contend, the "available resources" question is a core threshold issue in these Title III proceedings, it should be properly presented to this Court to determine whether, what, and when to certify any question to the Supreme Court of Puerto Rico.  The Court should not, as urged in the Motion, lift the stay to allow the *Lex Claims* Action to proceed and put the certification decision in the hands of a court that is otherwise divorced from these Title III proceedings.  The Motion should be denied.

## **BACKGROUND**

### I.    **The COFINA Bonds And Structure.**

9.     COFINA is "a corporate and political entity independent and separate from the Commonwealth of Puerto Rico," 13 L.P.R.A. § 11a(a), designed "for the purpose of issuing bonds and utilizing other financing mechanisms," *id.* § 11a(b).  COFINA was created by the Puerto Rico Legislative Assembly in 2006 in response to an urgent fiscal and economic crisis— at that time one of the worst in the Commonwealth's history.  *See id* § 12.

10.    COFINA has issued more than $17 billion in bonds.  The bonds are not obligations of the Commonwealth; rather, they are payable solely from the Dedicated Sales Tax, which was transferred to COFINA under its enabling legislation.  *See id.* § 13(d).  The enabling legislation provides that the Dedicated Sales Tax revenues "are hereby transferred to, and shall be the property of COFINA," and must be deposited in a special fund "at the time of the receipt and shall not be deposited in the Treasury of Puerto Rico."  *Id.* § 12.  The statute further provides that the Dedicated Sales Tax revenues shall not "constitute resources available to the Commonwealth of Puerto Rico, nor shall these be available for use by the Secretary of the

Treasury of the Commonwealth of Puerto Rico." *Id.* Accordingly, under Puerto Rico law, the Dedicated Sales Tax is not subject to "clawback" under the Puerto Rico Constitution.[2]

11.    Securitization structures such as COFINA have been used by municipalities throughout the United States on a large scale, dating back to at least the 1970s when the New York Municipal Assistance Corporation issued sales-tax-secured bonds in the wake of the New York City fiscal crisis.  According to data obtained from Bloomberg, over the past 10 years alone, public entities have issued more than $220 billion notional value of bonds secured by sales, excise, and income taxes ($186 billion in jurisdictions outside Puerto Rico).  Dedicated tax revenue bonds similar to those issued by COFINA are outstanding in New York, California, Illinois, and Massachusetts, among other states, and Connecticut currently appears to be contemplating a multi-billion dollar bond issuance backed by income taxes in order to lower debt service costs.

## II.    The Background Of The *Lex Claims* Litigation.

12.    To understand why the motions filed in the *Lex Claims* Action do not support certification here, it is important to review the unusual procedural history in that case.

13.    On July 20, 2016, GO bondholder plaintiffs filed the *Lex Claims* Action.  (Civ. No. 16-cv-2374-FAB (D.P.R.) (Dkt. No. 1).)  The *Lex Claims* Action initially had nothing to do with COFINA.  Both the opening complaint and a first amended complaint ("FAC") alleged a single substantive cause of action under section 204(c)(3) of PROMESA, which prohibits the enactment of new laws that would transfer assets outside the ordinary course or in violation of Puerto Rico law.  (Dkt. Nos. 1, 25.)  The defendants filed a "Notice of Automatic Stay," which

---

[2] Article VI, Section 8 of the Puerto Rico Constitution provides:  "In case the *available resources* including surplus or any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  P.R. Const. art. VI, § 8 (emphasis added).

the plaintiffs opposed on the basic premise that the PROMESA litigation stay did not apply to claims arising under PROMESA itself.  (Dkt. Nos. 26, 28.)  On September 2, 2016, the district court (Besosa, J.) ruled that the PROMESA litigation stay did not apply to the FAC because the plaintiffs' claim arose under PROMESA and thus could not have been commenced before PROMESA's passage, and because it sought only declaratory and injunctive relief and thus did not constitute an action to recover on a liability claim (the "September 2 Order").  (Dkt. No. 32.)

14.     With a ruling in hand that the PROMESA litigation stay did not apply to claims for declaratory or injunctive relief arising under PROMESA, the GO bondholders then moved to amend their pleadings and recast their lawsuit as an attack on COFINA.  Most significantly, the plaintiffs alleged that an executive order issued by then-Governor García-Padilla declaring a moratorium on payment of GO debt was an "unlawful executive order" and therefore preempted by section 303(3) of PROMESA[3] because it supposedly "permitted" money to flow to COFINA while GO debt was in default.  (Dkt. No. 78.)  Relying on the September 2 Order, the plaintiffs argued that this and other PROMESA-based claims were not stayed, and sought (i) a declaratory judgment that the Dedicated Sales Taxes constituted "available resources" within the meaning of Article VI, Section 8 of the Puerto Rico Constitution, and (ii) an injunction prohibiting the transfer of those revenues to COFINA and directing the Dedicated Sales Taxes to be diverted to the Commonwealth Treasury.  (*Id.*)

15.     In light of this unprecedented attack on the COFINA structure (no legal challenge to the structure's constitutionality had ever been mounted in its decade-long existence), Ambac and other COFINA creditors moved to intervene in the litigation.  (Dkt. Nos. 50, 55.)  Ambac's principal purpose for intervening was to argue in support of the PROMESA litigation stay's

---

[3] Section 303(3) of PROMESA provides that "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act."  48 U.S.C. § 2163.

application to all of the claims in the Second Amended Complaint ("SAC"), including those that, in Ambac's view, only nominally arose under PROMESA. Ambac and others argued that the section 303(3) claim was in fact a constitutional attack on the COFINA structure artfully disguised as a PROMESA-based claim in order to exploit the September 2 Order. (*See*, *e.g.*, Dkt. No. 156.)

16.     On February 17, 2017, the district court issued an order (the "February 17 Order") granting Ambac and others' motions to intervene, but holding that the claims in the SAC that arose under PROMESA were not subject to the PROMESA litigation stay. The district court ordered the intervenors to file their answers to the SAC by March 20, 2017, and further stated that "[a]ll parties may file any motion they may deem appropriate to file, including any dispositive motion, by that date." (Dkt. No. 185.) Various parties, including Ambac, pursued an expedited appeal from the district court's order as it related to the PROMESA litigation stay. (*See* Case Nos. 17-1241, 17-1248, and 17-1272.)

17.     In light of the March 20, 2017 deadline set by the district court for the filing of dispositive motions, Ambac and other COFINA creditors filed various motions on or about that date. Specifically, Ambac filed a "Motion to Dismiss Plaintiffs' PROMESA § 303(3) Claim, to Strike Certain Portions of the SAC's Prayer for Relief, or, in the Alternative, to Certify the COFINA Question to the Supreme Court of Puerto Rico" (the "Ambac Motion"). (Dkt. No. 232.) As is clear from the title of the Ambac Motion, Ambac's principal position was that the PROMESA section 303(3) claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure or that the relief sought—a declaration that the Dedicated Sales Taxes were "available revenues" under the Puerto Rico Constitution and an injunction requiring them to be deposited in the Commonwealth Treasury—should be stricken under Rule 12(f). In the

alternative, Ambac argued that, if the district court were to determine that the SAC could survive under Rule 12 and that the merits of the "available resources" question should be addressed, the appropriate court to address that discrete question of Puerto Rico constitutional law would be the Supreme Court of Puerto Rico.

18.     Other COFINA creditors filed dispositive motions on or about the March 20 deadline.  The COFINA Senior Bondholders and the Mutual Fund Group—one of the Movants here—both filed motions for judgment on the pleadings under Rule 12(c).  The COFINA Senior Bondholders also moved to certify the "available resources" question to the Supreme Court of Puerto Rico; the Mutual Fund Group did not, limiting its motion to one for judgment on the pleadings.  The Puerto Rico Funds—the other Movant here—moved exclusively to certify the "available resources" question.  (Dkt. Nos. 219, 221, 223, 225.)

19.     Later in the day on March 20, 2017, the U.S. Court of Appeals for the First Circuit issued an order staying the district court proceedings in the *Lex Claims* Action pending appeal.  On April 4, 2017, the First Circuit reversed the district court's ruling in the February 17 Order that the SAC's PROMESA-based claims were not stayed, holding that those claims constituted acts to exercise control of COFINA's property within the meaning of section 405(b)(3) of PROMESA.  (Case No. 17-1241, Dkt. No. 00117138330.)

20.     By reversing the district court's application of the PROMESA stay, the First Circuit thwarted the GO bondholders' frenzied attempt to advance its constitutional challenge to the transfer of the Dedicated Sales Taxes to COFINA before any Title III proceedings could be commenced.

### III.     The COFINA Subordinate Bondholders' Lift-Stay Motion.

21.     In a strange procedural twist, Movants—both holders of COFINA subordinate debt who intervened in the *Lex Claims* Action as defendants—now propose effectively to reopen

the *Lex Claims* Action before the district court that oversaw Puerto Rico's debt-related litigation prior to the commencement of these Title III cases.

22.     Specifically, the Motion requests that the Court vacate the automatic stay arising under section 362 of the Bankruptcy Code (incorporated by section 301 of PROMESA) to permit (i) full briefing, argument, and decision exclusively on the certification arguments made on or about March 20, 2017, and (ii) adjudication of the certified issues by the Supreme Court of Puerto Rico (should certification be granted by the district court).  Movants state that their request for stay relief is limited to certification; they "do not seek to resume litigation of the causes of action, nor do [they] seek to prosecute [their] dispositive motions or other motions in the Lex Claims Litigation."  (Mot. 13-14.)

23.     The *Lex Claims* plaintiffs have not requested this relief.  Rather, those plaintiffs have sought to advance their flawed claim to the Dedicated Sales Tax by way of a motion to intervene in the intra-COFINA interpleader action brought by Bank of New York Mellon, as trustee of the COFINA bonds.  Ambac and others have objected to that motion to intervene, including on grounds of lack of standing.  (Case No. 17-00133-LTS, Dkt. Nos. 16, 157-163.)

**OBJECTION**

I.     **Movants' Desire For A Speedy Resolution To A Constitutional Question That Is Not Properly Before This Or Any Other Court Does Not Justify Lifting the Stay.**

24.     The *Lex Claims* Action had numerous flaws both on the merits and in terms of its approach to the PROMESA litigation stay.  While the GO plaintiffs sought a judgment declaring the Dedicated Sales Taxes to be the "available resources" of the Commonwealth and requiring that they be transferred to the Commonwealth Treasury for eventual application to GO debt, Ambac presented detailed argument as to why the "available resources" question did not need to be reached, and that the claims should be dismissed or the relief stricken irrespective of that

question of Puerto Rico constitutional law.  (*See* Civ. No. 16-2374-FAB, Dkt No. 232, at 12-22.)
Only in the alternative did Ambac argue that, were the district court to conclude that the
"available resources" needed to be addressed, the Supreme Court of Puerto Rico would be the
appropriate forum in which to address it.  (*Id.* at 22-26.)

25.     Today, there is no dispute akin to the *Lex Claims* Action.  The GO plaintiffs in
that case are not seeking to lift the stay applicable to that lawsuit nor otherwise to revive it.  And
although the Commonwealth has interfered with the Dedicated Sales Tax through the Fiscal Plan
and related legislation, in violation of its statutory and contractual covenants, the Oversight
Board's counsel has stated that the Commonwealth would not move affirmatively to divert those
funds from COFINA except on 30 days' notice, which notice has not yet been provided.
(5/17/17 Tr. 57, 70, 72-73.)  Instead, the Oversight Board filed a motion to appoint independent
fiduciary agents of the Commonwealth and COFINA and to set a procedure for the resolution of
this issue.

26.     Meanwhile, the expedited intra-COFINA adversary proceeding—the result of
which must be known for Ambac and others to be able to knowledgably consider a negotiated
resolution—is consuming the COFINA parties' attention.  While subordinate bondholders such
as Movants are structurally motivated to go for broke and seek the Supreme Court of Puerto
Rico's constitutional endorsement (counter-intuitive as it may be for intervenor-defendants to
seek to reinvigorate a case the plaintiffs have dropped), Movants' parochial interest should not
be allowed to drive the phasing and pace of the overall Title III proceedings.[4]

---

[4] Nor should the Court's view be influenced by Movants' assertion that the "available resources" question "is a
crucial issue for Puerto Rico," the final determination of which "may help Puerto Rico in its ongoing efforts to
regain access to the capital markets."  (Mot. 9.)  It is not for COFINA's subordinate bondholders to decide what is
"crucial" for Puerto Rico, and in any event the hasty, pseudo-advisory treatment of a significant constitutional issue
is unlikely to foster a durable resolution of the Title III cases.

27.     Movants also argue that certification will enable "GO bondholders [to] better understand the value of their claims against Puerto Rico." (Mot. 9.)  But this is precisely why litigation of the interpleader adversary proceeding is necessarily antecedent to the broader issue of any COFINA/Commonwealth dispute.  Put simply, adjudication of the interpleader will enable Movants to "better understand the value of their claims" against COFINA.  If subordinate bondholders persist in their erroneous view that subordinate debt entitles them to equal treatment with senior bondholders even in conditions of default, they will stand in the way of any negotiated resolution.  Conversely, if they are made to understand that all subordinate bonds are in fact subordinate in class and payment priority to all senior bonds, they will perhaps bring a more reasonable set of assumptions to the negotiating table.

## II.     The GO Plaintiffs Lack Standing As A Result Of The Commonwealth's Title III Filing And Accordingly Are Improper Litigants In Any Constitutional Litigation Before The Supreme Court Of Puerto Rico.

28.     As Ambac has argued elsewhere,[5] in light of the Commonwealth's Title III filing, the GO plaintiffs in the *Lex Claims* Action lack standing to challenge COFINA's constitutionality—only the Commonwealth has standing to pursue that challenge now.[6]  *See In re San Juan Hotel Corp.*, 847 F.2d 931, 938 (1st Cir. 1988); *see also In re $6,871,042.36*, 2016 WL 6602613, at *3-4 (D.D.C. Nov. 8, 2016) (prospective intervenor in an interpleader action must meet standing requirements).  Indeed, counsel to the GO plaintiffs **conceded** at the May 30, 2017 hearing in this adversary proceeding that GO bondholders do not have a direct interest in the Dedicated Sales Taxes.  As counsel explained, "the party for whom it makes most sense to assert [their claim to SUT Revenues], would, of course, be the commonwealth [*sic*]" because "***it is the***

---

[5] *See* Ambac Assurance Corporation's Objection to Motion of the Ad Hoc Group of General Obligation Bondholders for Leave to Intervene (Dkt. No. 162), at 10-11.

[6] We note that, should the Commonwealth in fact pursue such claims, it would be breaching its covenant under COFINA's enabling legislation (13 L.P.R.A. § 14(c)) and section 706 of the Resolution not to "limit or restrict" COFINA's ability to meet its obligations to its bondholders (Resolution § 706), thereby violating Puerto Rico law.

*commonwealth [sic] who would, in the first instance, benefit from the funds*.”  (5/30/17 Tr.

62:25-63:5 (emphasis added).)

29.     Put differently, the GO plaintiffs are, at best and by their own admission, creditors

of a creditor of COFINA.  *See, e.g., In re Lifeco Inv. Grp., Inc.*, 173 B.R. 478, 487-88 (Bankr. D.

Del. 1994).  Their claims, to the extent any exist, belong to the Commonwealth, and the GO

plaintiffs would need to move for derivative standing in order to bring those claims.  *See In re*

*Applied Theory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007) (reaffirming *In re STN Enterprises*, 779

F.2d 901, 904 (2d Cir. 1985)).  They have not done so.  They are therefore disqualified from

litigating the “available resources” question before the Supreme Court of Puerto Rico.[7]

### III.   Even If The GO Plaintiffs Had Standing, Movants’ Proposal Violates Constitutional Avoidance Principles And Prejudices COFINA And Its Creditors.

30.     Ultimately, Movants’ proposal turns the principle of constitutional avoidance on

its head.  *See, e.g.*, *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205

(2009) (“It is a well-established principle governing the prudent exercise of this Court’s

jurisdiction that normally the Court will not decide a constitutional question if there is some

other ground upon which to dispose of the case.” (quotation omitted)).[8]  Movants flout this

principle, seeking to advance a “final determination” of the issue to the Supreme Court of Puerto

Rico even when there is no non-stayed lawsuit challenging COFINA’s constitutionality.  And

they propose to present the certification matter to a different district judge “in just 21 days”

---

[7] Moreover, to permit the GO plaintiffs to prosecute claims belonging to the Commonwealth would implicate the automatic stay in the Commonwealth’s Title III case.  *See In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987) (section 362(a)(3) automatically stayed action belonging to the debtor).

[8] *See also Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (“It is a cardinal principal of statutory interpretation, however, that when [] [legislation] raises ‘a serious doubt’ as to its constitutionality, ‘this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.’” (citations omitted)); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 584 (1952) (finding it “customary judicial practice” to “declin[e] to reach and decide constitutional questions until compelled to do so”).

12

(Mot. 11), with the Supreme Court of Puerto Rico to reach a final, apparently unreviewable[9] decision "in a matter of months" with no intervening consideration by any court.  The Court should view with suspicion an approach that turns centuries of U.S. jurisprudence upside down. *See Edward J. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("This cardinal principle [of constitutional avoidance] has its roots in Chief Justice Marshall's opinion for the Court in *Murray v. The Charming Betsy*, 2 Cranch 64, 118 (1804), and has for so long been applied by this Court that it is beyond debate."); *see also Jones v. U.S.*, 526 U.S. 227, 239-40 (1999) (same).

31.      Movants also argue that their stay relief and certification proposal would cause no harm to the Debtors because they do not wish to litigate the merits of the claims in the *Lex Claims* Action—they only seek a ruling of law from the Supreme Court of Puerto Rico.  (Mot. 13-14.)  But this fact only highlights the inherently advisory nature of Movants' strategy—one that would in fact cause harm to COFINA and its creditors.  There is a reason U.S. courts do not opine on abstract questions of law (especially questions of constitutional law) divorced from live legal proceedings—namely, the risk of erroneous rulings that fail to take into account concrete ramifications.  *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("The federal courts established pursuant to Article III of the Constitution do not render advisory opinions.  For adjudication of constitutional issues concrete legal issues, presented in actual cases, not abstractions are requisite." (internal quotation marks and citation omitted)).

32.      The "available resources" question should not be treated as an abstract intellectual debate; it is one piece of a complicated puzzle of factual and legal questions presented by these Title III cases, including the validity of a widely used securitization structure, the amount of

---

[9] This Objection does not address the scope of the U.S. Supreme Court's appellate authority over decisions of the Supreme Court of Puerto Rico under 28 U.S.C. § 1258.  Ambac reserves all rights and arguments on that issue.

money available to sustain Puerto Rico's government, the timing and dynamics of the "clawback" mechanism under the Puerto Rico Constitution, the relative priorities of COFINA's bondholders, the impact of any resolution of these questions on bonds other than those issued by the Commonwealth and COFINA, and so on.

33.     Indeed, the "available resources" question alone could have significant ramifications beyond Puerto Rico, impacting the multi-trillion dollar U.S. municipal bond market, especially the $186 billion in bonds issued by COFINA-like structures that have been used by municipalities outside of Puerto Rico over the past ten years.  To artificially wrest an abstract question of constitutional law from this Court, place it in the hands of another district court, who would then decide whether to present the issue to the Supreme Court of Puerto Rico, would ignore the wisdom of our system requiring that courts opine on concrete cases or controversies, not abstract legal questions that, while perhaps of great interest to various parties, are not strictly necessary to resolve a dispute.  *See id.*

34.     Movants' claim that the issue can be resolved expeditiously because "the parties have already begun briefing the certification issues" is likewise disingenuous.  (Mot. 13.)  Such speed is possible only if the Court credits Movants' proposal that the stay be lifted **solely** for certification purposes, effectively preventing Ambac and other intervenors or defendants from defending against the claims in the *Lex Claims* Action on the merits.   Due process plainly bars such a result.  *See Boddie v. Connecticut*, 401 U.S. 371, 377 (1971) ("The theme that 'due process of law signifies a right to be heard in one's defense' has continually recurred[.]").

35.     Moreover, while Movants suggest that Ambac and others who proposed certification in the context of the *Lex Claims* Action were affirmatively seeking a determination of the "available resources" issue by the Supreme Court of Puerto Rico, the record makes clear

14

that Ambac and other intervenor-defendants were forced to file dispositive motions by a date certain, and in that context took the position that, if the district court determined that the SAC could survive Rule 12 and thus deemed it necessary to reach the constitutional question, certification would be a preferable means of addressing it. (*See supra* ¶¶ 16-17). But Ambac and other COFINA creditors are not the plaintiffs in the *Lex Claims* Action—on the face of Puerto Rico's statutes, the Dedicated Sales Tax is COFINA's property and bondholders' collateral, and there is no need for COFINA's creditors to seek judicial relief on this issue. While it might be reassuring for COFINA's creditors (especially its subordinate bondholders) to obtain the endorsement of the Supreme Court of Puerto Rico as to COFINA's constitutionality, that is not the standard governing certification. *See State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001) (the "ever-present possibility" that a federal court and a state supreme court may rule differently on an issue is not sufficient to warrant certification, and certification is not appropriate when "what is required is not the promulgation of new law but rather, the exercise of a court's judgment").

36.     To be clear, none of the foregoing is to say that Ambac opposes the certification process generally or disagrees that the Supreme Court of Puerto Rico may, under appropriate circumstances and at the appropriate time, be optimally situated to resolve this or any other novel questions of Puerto Rico constitutional law. *See Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172, 181-82 (P.R. 1988) ("The certification process is a valuable tool used by the federal forum . . . when we have no clear-cut precedents to settle the controversy pending in that jurisdiction."); *Watchtower Bible Tract Soc. of N.Y., Inc. v. Municipality of Santa Isabel*, Civ. No. 04-1452, 2013 WL 2554879, at *5 (D.P.R. June 11, 2013) ("The certification mechanism is widely applauded as increasing the likelihood of a federal court answering the substantive

15

question correctly and demonstrating a federal court's respect for the state court."). But the procedure must be employed in a context that otherwise comports with sound administration of justice. There should be a live dispute, not a disadvantaged party who has an interest in procuring an answer to a legal question so as to maximize negotiating leverage. *See*, *e.g.*, *H.E. Vicente Cuesnongle, O.P. v. D.A.C.O.*, 119 D.P.R. 457, 463-64 (P.R. 1987) (Hernandez Denton, J., concurring) ("Certified questions must be framed within a context of detailed and specific facts, and the court's answer must be binding on the parties. The legal controversy giving rise to the certification must stem from a real case or controversy between the parties."). And the appropriate adjudication of such a dispute should be determined by the presiding judge who lives and breathes the complicated dynamics at work in the proceedings. *See Showtime Entm't, LLC v. Town of Mendon*, 769 F.3d 61, 79 (1st Cir. 2014).

<u>**CONCLUSION**</u>

For the foregoing reasons, Ambac respectfully requests that the Court (i) deny the Motion and (ii) award such other and further relief as the Court deems just and proper.

*(The remainder of this page is left intentionally blank.)*

16

Dated:  June 21, 2017
       San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
        scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**

By: /s/ *Dennis F. Dunne*
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    28 Liberty Street
    New York, NY 10005
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
        aleblanc@milbank.com
        amiller@milbank.com
        gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
