Hearing Date: June 28, 2017 at 9:30 am (Prevailing Eastern Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT<br>AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### LIMITED OBJECTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO MOTION OF DEBTORS FOR ORDER APPROVING PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE

To the Honorable United States District Court Judge Laura Taylor Swain:

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (f/k/a Financial Security Assurance Inc.) (together, "Assured") file (i) this limited objection (the "Limited Objection")[1] to the *Motion Of Debtors For Order Approving Procedure To Resolve Commonwealth-COFINA Dispute* [ECF No. 303] (the "Motion") and (ii) a proposed order attached hereto as Exhibit A to the Limited Objection ("Assured's Proposed Order").[2]

### PRELIMINARY STATEMENT

The Debtors' Motion is based on the false premise, that the "dominant" and "gating" issue in these Title III cases is whether the sales and use tax ("SUT") imposed by Act No. 91 of 2006 was effectively sold to COFINA, or whether the sale conflicts with the

---

[1] On June 16, 2017, the Debtors filed a notice that they had consensually extended Assured's deadline to object to the Motion to June 21, 2017. See ECF No. 361. Capitalized terms not otherwise defined in this Limited Objection have the meanings ascribed to them in the Motion.

[2] Attached hereto as Exhibit B is a blackline of the Debtors' proposed order compared to Assured's Proposed Order.

-1-

Constitutional priority for General Obligation bonds. See Motion ¶ 17. The Debtors present this dispute as the central issue in the Title III cases because the Debtors have committed themselves to a fictitious narrative that only $787 million is available annually for debt service on $73 billion principal amount of debt obligations of the Commonwealth and its instrumentalities. Id. ¶¶ 17, 30.

The Debtors would have the Court believe that this $787 million cap on annual debt service is set in stone because (i) the Oversight Board—without consulting with creditors or disclosing, to date, relevant financial information—approved this cap in the Commonwealth's 2017-2026 fiscal plan on March 13, 2017 (as amended, the "Illegal Fiscal Plan"), and (ii) the Illegal Fiscal Plan is purportedly immutable and unreviewable by this Court, no matter how clearly the Oversight Board ignored PROMESA's prescriptions. As Assured has alleged in an adversary proceeding commenced on May 3, 2017, the Illegal Fiscal Plan fails to satisfy even the most basic requirements of PROMESA, including protections in Title II that were intended to protect creditors' rights under existing law and their constitutional rights. See Assured Guar. Corp. v. Commonwealth, Adv. Pro. No. 17-00125-LTS (D.P.R. May 3, 2017). Moreover, the Illegal Fiscal Plan violates both the U.S. and the Puerto Rico Constitutions by substantially impairing the contractual rights of Assured and other creditors and by depriving them of property without just compensation or due process of law.

Contrary to the Debtors' assertions, the real gating issue in this case is negotiation of a comprehensive economic settlement with the GO Bondholders. Resolution of the legal dispute concerning COFINA may be necessary to reaching that global settlement, but even more important will be resolution of the disputes over the Fiscal Plan. Simply put, there will be no consensual resolution with any creditors in this case if the total amount available for debt service remains unchanged. Moreover, there is no possibility that the GO Bondholders can agree to a

settlement of the COFINA dispute, in the absence of understanding their entire economic recovery. These are the "dominant" and "gating" issues in the Title III cases.

If, following adequate financial disclosures by the Debtors, the Illegal Fiscal Plan is revised so that it complies with PROMESA and the U.S. and the Puerto Rico Constitutions, there is a realistic prospect that the Commonwealth-COFINA Dispute can be resolved within the context of a larger global restructuring. Absent such revisions to the Illegal Fiscal Plan, any purported "resolution" of the Commonwealth-COFINA Dispute will, in fact, resolve nothing. No Title III plan of adjustment can be confirmed if it is premised on an unconstitutional taking of bondholders' property and unconstitutional violations of their liens, nor can any such plan realistically be expected to succeed if secured creditors are asked to accept only 20 cents on the dollar when unsecured creditors are paid far more. For these reasons, Assured submits that the Motion is largely a distraction from what should be the real focus of these Title III cases: the development of a fiscal plan that complies with PROMESA and the U.S. and the Puerto Rico Constitutions and can serve as the basis for a confirmable Title III plan of adjustment.

Furthermore, the procedures proposed in the Motion and Debtor's proposed order are legally deficient in their own right. The Motion should, therefore, be denied unless an order in the form of Assured's Proposed Order is entered by the Court. First, the Motion requests a final resolution of the Commonwealth-COFINA Dispute by November 1, 2017, due to an alleged liquidity crisis at the Commonwealth. However, the Commonwealth's own liquidity projections show an increase in its projected surplus by more than $850 million. Thus, the Debtors have not established the need for an expedited resolution of the Commonwealth-COFINA Dispute.

Second, the Motion contemplates that the Commonwealth-COFINA Dispute will be litigated by two appointed agents for COFINA and the Commonwealth (together, the "Agents") and gives those Agents the power to settle the Commonwealth-COFINA Dispute. The

Motion provides that, among other things, such a settlement may be effective immediately upon consent of the Oversight Board. The Motion does not contemplate giving any opportunity for creditors to object or even be heard with respect to such a settlement. However, the voluntary filing of the Motion and the unprecedented relief sought therein demonstrate that the Oversight Board and the Debtors have consented to this Court's jurisdiction and control over the Commonwealth-COFINA Dispute as well as any related property interests for purposes of section 305 of PROMESA. For these reasons, Assured submits that any purported settlement of the Commonwealth-COFINA Dispute must be subject to this Court's oversight and approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Further, if the Debtors fail to seek immediate approval of any purported settlement, creditors are entitled to object to any such settlement in the context of a hearing on plan confirmation, to the extent that such a settlement is incorporated in any Title III plan of adjustment. Thus, to comply with this Court's clear instruction to maintain transparency in these proceedings, creditors must be given an opportunity to be heard regarding any settlement entered into by the Agents. In order to address these issues, the Court should enter Assured's Proposed Order, attached hereto as Exhibit A, as opposed to the Debtors' proposed order.

## BACKGROUND

Assured insures more than $1.75 billion of bonds issued or guaranteed by Debtor the Commonwealth and $270 million of bonds issued by Debtor COFINA. Under its insurance agreements and insurance policies, Assured is deemed to be the sole owner of the bonds it insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising any and all rights and remedies. Assured is also an express third party beneficiary of the resolutions, indentures, or trust agreements under which the bonds are

issued. As such, as Section 301(c)(3)(B) of PROMESA expressly recognizes, Assured and other financial guaranty insurers are authorized to act on behalf of the holders of the bonds they insure in these Title III cases. 48 U.S.C. § 2161(c)(3)(B). Upon paying the claims of bondholders following a default, Assured is subrogated to the rights of relevant bondholders. Thus, to the extent that Assured makes payments to bondholders, Assured steps into the shoes of such bondholders and effectively becomes the owner of their bonds. To date, Assured has paid approximately $246.9 million in aggregate claims to holders of bonds issued or guaranteed by the Commonwealth and is now fully subrogated to the rights of such bondholders.

## **OBJECTION**

In their Motion, the Debtors assert that the Commonwealth-COFINA Dispute is a "gating issue" that will be crucial to the negotiation and formulation of any plan of adjustment. See Motion ¶ 32. Because of the alleged importance of this issue, the Debtors seek final resolution of the Commonwealth-COFINA Dispute on an expedited basis by November 1, 2017. See id. ¶ 31. The Debtors reason that expedited resolution of the Commonwealth-COFINA Dispute is necessary because the Debtors allegedly "face acute cash management issues shortly after November 1, 2017." Id. However, the Debtors' own most recent cash flow projections undercut their claims of an alleged liquidity crisis because they actually now show that the Debtors have an $850 million increase in its budget surplus. See Ex. C at 5. Thus, given that the Debtors' own cash flow projections show a surplus for the 2017-2018 fiscal year, Assured proposes to strike November 1, 2017 from paragraph 2(g) of the proposed order, with any deadline for the Court's decision to be determined by the Court.

Moreover, notwithstanding the purported importance of the Commonwealth-COFINA Dispute, the Motion and Debtors' proposed order do not give creditors any right to object to any settlement of the Commonwealth-COFINA Dispute. The Motion and Debtors'

proposed order further indicate that any such settlement will be immediately effective solely upon the consent of the Oversight Board. See Motion ¶ 38. To the extent that any settlement is entered into by the Agents prior to plan confirmation, creditors must be given the right and opportunity to object to the terms of that settlement.

To the extent that the Oversight Board argues that section 305 of PROMESA precludes this Court from reviewing any settlement, the jurisdictional limitations imposed in section 305 are subject to a number of conditions, and such limitations are entirely removed once "the Oversight Board consents." Specifically, section 305 of PROMESA provides:

> Subject to the limitations set forth in subchapters I and II of this chapter, notwithstanding any power of the court, ***unless the Oversight Board consents or the plan so provides***, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with--
>
> (1) any of the political or governmental powers of the debtor;
>
> (2) any of the property or revenues of the debtor; or
>
> (3) the use or enjoyment by the debtor of any income-producing property.

48 U.S.C. § 2165 (emphasis added).

Here, the Oversight Board voluntarily filed the Motion on behalf of the Debtors and asked this Court to exercise extraordinary, if not unprecedented, power over the Commonwealth-COFINA Dispute and any settlements arising therein. Specifically, the Motion and Debtors' proposed order:

(1) Contemplate that this Court will approve the appointment of the Agents to negotiate and adjudicate the Commonwealth-COFINA Dispute and outline procedures for resolving that dispute within this Court on an expedited but final basis. See Motion ¶¶ 1, 38(g).

(2) Authorize the Debtors and Oversight Board "to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief

<div style="padding-left: 2em;">

granted in this order in accordance with the Motion." See Debtors' proposed order ¶ 4.

(3) Expressly provide that the "Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order." Id. ¶ 5.

</div>

Given that the Oversight Board has consented to the Court's ability to approve the appointment of Agents and thereafter adjudicate the Commonwealth-COFINA Dispute, it has also consented to this Court's jurisdiction to review any settlements of that particular dispute for the purposes of section 305 of PROMESA. As set forth in Assured's Proposed Order, any settlement of the Commonwealth-COFINA Dispute must be subject to this Court's oversight and approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure—made applicable to these Title III proceedings via section 310 of PROMESA—with creditors having the right and opportunity to object to such a settlement. See Ex. B ¶ 2(j)(i).

Moreover, nothing in PROMESA authorizes the Oversight Board to shield a settlement from judicial inquiry once the Oversight Board proposes a plan of adjustment that incorporates that settlement. Indeed, Section 305 of PROMESA explicitly grants this Court the power to review a settlement once the Oversight Board files its plan of adjustment. See 48 U.S.C. § 2165. ("[U]nless the Oversight Board consents *or the plan so provides*, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . any of the property or revenues of the debtor. . . ."). The terms of any settlement of the Commonwealth-COFINA Dispute will be highly relevant and immensely important to the confirmation of any plan of adjustment. All creditors, therefore, should have the right to object to the terms of such settlement at plan confirmation. See In re City of Stockton, Cal., 486 B.R. 194, 199-200 (Bankr. E.D. Cal. 2013) ("[T]he day of reckoning comes at the plan confirmation hearing. . . . It is not difficult to imagine arguments that evidence of untoward settlements could be probative of § 1129(a)(2) issues."); see also In re City of Detroit, Mich., 524 B.R. 147, 199 n.11 (Bankr. E.D.

Mich. 2014) ("[A]n unapproved settlement in a chapter 9 case might still be the basis for a confirmation objection under § 1129(b)(1) that the plan unfairly discriminates or is not fair and equitable, or an objection under § 1129(a)(2) that the plan is not proposed in good faith or by a means forbidden by law.").

Therefore, as set forth in Assured's Proposed Order, if the Agents enter into any settlement of the Commonwealth-COFINA Dispute and such a settlement is part of the plan of adjustment proposed by the Oversight Board, all creditors must be given the right and opportunity to object to the terms of that settlement in the context of a hearing on plan confirmation. See Ex. B ¶ 2(j)(i).

## CONCLUSION

For the reasons set forth herein, Assured respectfully requests that the Motion be denied unless an order in the form of Assured's Proposed Order is entered by the Court.

Dated:   San Juan, Puerto Rico
June 21, 2017

        CASELLAS ALCOVER & BURGOS P.S.C.

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR 204809
    Ricardo F. Casellas-Sánchez
    USDC-PR 203114
    Diana Pérez-Seda
    USDC-PR 232014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email:   hburgos@cabprlaw.com
                rcasellas@cabprlaw.com
                dperez@cabprlaw.com

CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    Ellen M. Halstead*
    Thomas J. Curtin*
    Casey J. Servais*
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 406-6666
    Email:   howard.hawkins@cwt.com
                mark.ellenberg@cwt.com
                ellen.halstead@cwt.com
                thomas.curtin@cwt.com
                casey.servais@cwt.com

* *Pro hac vice* admission pending in Adv. Proc. Nos. 17-155-LTS, 17-156-LTS.  Admitted *pro hac vice* in No. 17-BK-03283-LTS.

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*