**Hearing Date: June 28, 2017**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION (COFINA),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>(Jointly Administered)<br><br>This Document Relates to:<br>17 BK 3284 |

### OBJECTION TO PUERTO RICO FUNDS AND MUTUAL FUND GROUP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

BACKGROUND ................................................................................................................... 3

     A.    The GO Group And The Commonwealth's Constitutional Debt ........................... 3

     B.    The Commonwealth's Default And The *Lex Claims* Litigation ........................... 4

     C.    The Motion For Relief From The Automatic Stay ................................................. 8

ARGUMENT ....................................................................................................................... 9

CONCLUSION .................................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cruz Aviles v. Bella Vista Hosp., Inc.*,
    112 F. Supp.2d 200 (D.P.R. 2000)..................................................................... 11, 12

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
    687 F. Supp. 716 (D.P.R. 1988)........................................................................... 12

*Lex Claims, LLC v. Fin. Oversight and Mgmt. Bd.*, 853 F.3d 548
    (1st Cir. 2017) .......................................................................................................... 8

*Nieves ex rel Nieves v. Univ. of P.R.*,
    7 F.3d 270 (1st Cir.1993)..................................................................................... 12

*Pan Am. Comput. Corp. v. Data Gen. Corp.*, 112 P.R. Dec. 780 (1982) ..................... 12

*Twin County Grocers, Inc v. Mendez & Co.*, 81 F. Supp.2d 276 (D.P.R. 1999)......... 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 462 (1982).............................................................................................. 9

**Statutes and Rules**

11 U.S.C. § 362(d)(1) .................................................................................................... 9

23 L.P.R.A. § 104(c)(1) ................................................................................................. 3

23 L.P.R.A. § 104(c)(3) ................................................................................................. 4

D.P.R. Local Rule 7 .................................................................................................... 11

P.R. Const., art. VI, § 2 ................................................................................................. 4

P.R. Const., art. VI, § 6 ................................................................................................. 4

P.R. Const., art. VI, § 7 ................................................................................................. 4

P.R. Const., art. VI, § 8 ................................................................................................. 3

P.R. Sup. Ct. R. 25 ...................................................................................................... 11

PROMESA § 204(c)(3).......................................................................................... 3, 4, 5

PROMESA § 303(3) ...................................................................................................... 5

ii

PROMESA § 405......................................................................................................................... 6, 8

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, No. 21-2016................... 9

Puerto Rico Financial Emergency and Fiscal Responsibility Act, Act. No. 5-2017 .......... 9, 10, 13

Puerto Rico Fiscal Plan Compliance Act, Act. No. 26-2017........................................................ 14

U.S. Const. art. III, § 2 ................................................................................................................... 9

**Other Authorities**

Official Statement for Commonwealth of Puerto Rico General Obligation Bonds of 2014,
Series A (2014) ....................................................................................................................... 3

The Ad Hoc Group of General Obligation Bondholders (the "GO Group")[2] submits this objection to the Motion For Relief From The Automatic Stay (Dkt. 270) (the "Motion") filed by the Puerto Rico Funds and the Mutual Fund Group (collectively, "Movants"). The Motion seeks relief from the automatic stay to permit the litigation of certain pending motions to certify questions to the Puerto Rico Supreme Court (the "Certification Motions") in *Lex Claims v. Rosello*, No. 3:16-cv-02374-FAB (the "*Lex Claims* Action"), and to permit the litigation of any certified questions before the Puerto Rico Supreme Court.

There is no question that one of the important issues in these Title III cases is whether certain proceeds of the broad-based sales and use tax ("SUT") imposed by the Commonwealth of Puerto Rico (the "Commonwealth") are (i) property of the Commonwealth that is available for distribution to the Commonwealth's creditors or (ii) property of the Puerto Rico Sales Tax Financing Corporation ("COFINA"). This question will have to be resolved, either conclusively in litigation or as part of a negotiated settlement. But the procedure Movants have proposed for seeking resolution of a portion of this dispute should be rejected. As we explain below, Movants' proposal would utterly divorce the legal questions on which they seek certification from the concrete claims and requests for relief at issue in the *Lex Claims* Action. The federal courts lack jurisdiction to serve as forums for such abstract legal debates. Moreover, the relevant claim that was the subject of the Certification Motions in the *Lex Claims* Action will be mooted by the end of July, making resolution of any certified questions by the Puerto Rico Supreme Court a practical impossibility.

---

[2]     The members of the GO Group filing this reply are certain funds or entities managed or advised by Aurelius Capital Management, LP, Autonomy Capital (Jersey) LP, FCO Advisors LP, Monarch Alternative Capital LP, Senator Investment Group LP, and Stone Lion L.P.

Other defects in Movants' proposal make stay relief unwarranted here.  For example, Movants' proposal would leave the decision to certify questions of Puerto Rico law to another district judge, who is not responsible for these Title III cases and therefore may not be well-positioned to appreciate the full scope of considerations that should inform the certification decision.  Certification could lead to prolonged delay—a risk that *this Court* should consider as part of its overall responsibility for the Title III actions.  Likewise, any decision on certification should await further clarity regarding how COFINA's claim on the Commonwealth's SUT will be adjudicated within these Title III proceedings—*i.e.*, whether the litigation will be pursued by representatives of the Commonwealth and COFINA, as the Oversight Board has proposed, see Dkt. 303, or through some other means.  That is necessary to ensure that the full scope of relevant issues—including any issues of federal law that may be implicated by the purported assignment of SUT revenues to COFINA—can be considered by this Court.  Finally, the *Lex Claims* Action would not even serve as an appropriate vehicle for the questions Movants seek to litigate:  It involved a claim of preemption under federal law, rather than a straightforward claim that the COFINA structure violates the Puerto Rico Constitution.  And the operative complaint in the *Lex Claims* Action was filed more than eight months ago, before a number of relevant events that may bear on the proper resolution of COFINA's claim on the Commonwealth's SUT.  Yet, Movants' one-sided proposal calls for litigation to proceed *only* as to certification, without any provision for amendments to the pleadings or other procedural steps that might be required to take account of these intervening developments.

Under these circumstances, Movants' request for relief from the automatic stay should be denied.

## BACKGROUND

### A.    The GO Group And The Commonwealth's Constitutional Debt

The GO Group is composed of beneficial holders of approximately $3 billion of bonds issued or guaranteed by the Commonwealth and backed by a pledge of its good faith, credit, and taxing power.   Accordingly, these bonds qualify as "public debt" under Puerto Rico's Constitution, which triggers a series of interlocking constitutional and statutory protections.  Due to these protections, these bonds are known as "Constitutional Debt."

Constitutional Debt is entitled to an absolute first-priority claim to and lien on all of the Commonwealth's "available resources."  Article VI, Section 8, of the Puerto Rico Constitution provides that, "[i]n case the available resources[3] including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the [Constitutional Debt] and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  This protection expressly places Constitutional Debt above all other expenditures of the Commonwealth, and, given its constitutional mooring, it cannot be waived or abrogated by legislation.

The "order of priorities established by law" to which Section 8 refers is set forth in a Puerto Rico statute.  That statute provides that "the payment of interest and amortizations corresponding to the [Constitutional Debt]" comes first.  23 L.P.R.A. § 104(c)(1).  Consistent with the Constitutional Debt's absolute first claim on all available resources, other obligations of the Commonwealth, including "[p]rotection of persons and property," "[p]ublic education

---

[3]    The Constitution in English reads "revenues"; in Spanish, it reads "recursos."  The Commonwealth has acknowledged that "recursos" in this context is more accurately translated as "resources."  See, *e.g.*, Official Statement for Commonwealth of Puerto Rico General Obligation Bonds of 2014, Series A, at 28 (2014).

3

programs," and "retirement systems and payment of pensions," have a lower priority.  *Id.* § 104(c)(3).

Other provisions of the Puerto Rico Constitution reinforce the Constitutional Debt's first-priority claim on all of the Commonwealth's "available" resources, including Article VI, Section 2, which grants holders of the Constitutional Debt the immediate right to compel disposition of the Commonwealth's available resources for payment of their bonds.  See also, *e.g.*, P.R. Const., art. VI, § 7 (requiring a balanced budget); *id.* § 6 (overriding any budget that fails to provide funds for payment of Constitutional Debt); *id.* § 2 (limiting the amount of Constitutional Debt the Commonwealth may guarantee or issue, thereby protecting the Commonwealth's creditworthiness); *id.* (providing that the Commonwealth's power "to impose and collect taxes" shall never be "surrendered or suspended").  In short, Constitutional Debt must be paid first and in full, no matter what.

### B.     The Commonwealth's Default And The *Lex Claims* Litigation

Notwithstanding these clear constitutional protections, the Commonwealth defaulted on its Constitutional Debt on July 1, 2016, by failing to pay approximately $817 million in principal and interest then due.  Since that time, the Commonwealth has continued to default on almost all further payments due on the Constitutional Debt.  Today, the full amount overdue on Constitutional Debt (including overdue principal, overdue interest, and statutory interest thereon) exceeds $1.4 billion, a figure that grows with every passing day as interest continues to accrue on these overdue amounts.

On July 20, 2016—shortly after the Commonwealth's default—certain members of the GO Group (the "<u>*Lex Claims* Plaintiffs</u>) filed the *Lex Claims* Action in this Court, where it was assigned to Judge Besosa.  See *Lex Claims* Action Dkt. 1.  In their complaint, the Lex Claims Plaintiffs challenged certain measures and transactions implemented by the Commonwealth

shortly after the enactment of the Puerto Rico Oversight, Management, and Economic Stability

Act, Pub. L. 114-187 ("PROMESA").  The *Lex Claims* Plaintiffs alleged that these measures

violated Section 204(c)(3) of PROMESA (see generally, *Lex Claims* Action Dkt. 1), which

prohibited the Commonwealth from "enact[ing] new laws that either permit the transfer of any

funds or assets outside the ordinary course of business or that are inconsistent with the

constitution or laws of the territory as of the date of enactment of this Act," during the interim

period before the Oversight Board appointed pursuant to PROMESA was operation.  PROMESA

§ 204(c)(3).   In an amended complaint filed on August 15, 2016, the *Lex Claims* Plaintiffs

challenged additional post-PROMESA measures and transactions.  See *Lex Claims* Action Dkt.

25.

On October 7, 2016, the *Lex Claims* Plaintiffs sought (and were subsequently granted)

leave to amend their complaint for a second time.   See *Lex Claims* Action Dkt. 39.   The

centerpiece of their second amended complaint was its Second Cause of Action, which

challenged Executive Order 2016-30, the executive order by which former-Governor Garcia

Padilla declared a moratorium on the payment of the Constitutional Debt, under Section 303(3)

of PROMESA.  See *Lex Claims* Action Dkt. 78, at ¶¶ 135-144.

Section 303(3) of PROMESA preempts "unlawful executive orders that alter, amend, or

modify rights of holders of any debt of the territory or territorial instrumentality."  PROMESA

§ 303(3).  The *Lex Claims* Plaintiffs alleged that Executive Order 2016-30 was preempted by that

provision because it caused the Commonwealth to cease payment on the Constitutional Debt but

did not interrupt the Commonwealth's ongoing transfers of proceeds from its SUT to COFINA.

See *Lex Claims* Action Dkt. 78, at ¶¶ 138-141.  As the *Lex Claims* Plaintiffs' explained, because

all revenues derived from the Commonwealth's SUT are "available resources" under the Puerto

Rico Constitution, Executive Order 2016-30's failure to interrupt these transfers to COFINA while the Constitutional Debt was in default unlawfully altered Constitutional Debtholders' absolute right to be paid first from the Commonwealth's available resources. See *id.* ¶ 140.[4]

After the *Lex Claims* Plaintiffs sought leave to file their second amended complaint, the court granted four separate motions to intervene filed by groups of COFINA bondholders or insurers, as well as a motion to intervene by the Oversight Board. *Lex Claims* Action Dkt. 184 (granting motions filed by the Oversight Board (Dkt. 62); Ambac Assurance Corp. (Dkt. 55); the Puerto Rico Funds (Dkt. 95); and the Mutual Funds Group (Dkt. 113)); *Lex Claims* Action Dkt. 198 (granting motion to intervene by COFINA Seniors Coalition (Dkt. 186)).[5] Several of these intervenors, along with the defendants, argued that the *Lex Claims* Action was subject to the stay on certain forms of creditor litigation imposed by Section 405 of PROMESA.

Judge Besosa rejected that contention in an opinion issued on February 17, 2017, see *Lex Claims* Action Dkt. 184. Litigation on the *Lex Claim* Plaintiffs' Second Cause of Action was brought to a halt roughly one month later, however, when the First Circuit issued an order staying the *Lex Claims* Action pending the resolution of expedited appeals filed by the Oversight Board, a group of COFINA bondholders, and an insurer of COFINA bonds. Order, *Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd.*, 853 F.3d 548 (1st Cir. Mar. 20, 2017).

---

[4] The *Lex Claims* Plaintiffs also asserted claims for declaratory relief regarding the invalidity of the purported assignment of portions of the revenues derived from the Commonwealth's SUT to COFINA. The *Lex Claims* Plaintiffs acknowledged that these claims were subject to the stay on certain forms of creditor litigation imposed by Section 405 of PROMESA, and therefore asserted them only for the purpose of avoiding any potential defenses under the doctrine of claim preclusion. These claims were never the subject of further proceedings in the *Lex Claims* Action.

[5] In the *Lex Claims* Action, many of the same parties who currently appear as the "Mutual Fund Group" and the "COFINA Senior Bondholders Coalition," sought leave to intervene under the names "Major COFINA Bondholders" and "COFINA Senior Bondholders" respectively. To avoid confusion, the GO Group will refer to these groups by their current names.

The weekend before the First Circuit stayed the *Lex Claims* Action pending appeal, three intervenors filed the Certification Motions that Movants currently seek leave to litigate. *Lex Claims* Action Dkt. 221 (COFINA Seniors), Dkt. 223 (Puerto Rico Funds), Dkt. 232 (Ambac). These motions each sought certification of distinctly worded questions to the Puerto Rico Supreme Court:

- The Puerto Rico Funds sought to certify the question: "Does the portion of the revenues of the Commonwealth of Puerto Rico's [SUT] that was transferred to [COFINA] and pledged to its bondholders pursuant to Title 13, Puerto Rico Statutes, constitute 'available resources' for purposes of Section 8 of Article VI of the Constitution of Puerto Rico?" *Lex Claims* Action Dkt. 223, at 1.

- Ambac Assurance Corp., which insures certain bonds issued by COFINA, wished to ask: "Does COFINA's enabling legislation legally render [SUT] revenues COFINA property, making them unavailable to the Secretary of the Treasury such that they are not 'available resources' within the meaning of Article VI, Section 8 of the Puerto Rico Constitution?" *Lex Claims* Action Dkt. 232, at 22.

- The COFINA Senior Bondholders sought certification of three questions, at least two of which assume any number of factual findings:

  o "Whether the equitable doctrine of laches under Puerto Rico law bars a challenge to the legislative transfer of [SUT] to [COFINA], when the challenge was first raised nearly 10 years after the enactment of legislation establishing COFINA, during which time billions of dollars of COFINA bonds were issued and sold in the market;"

  o "Whether the equitable doctrine of 'actos propios' under Puerto Rico law bars a challenge to the legislative transfer of [SUT] to COFINA, when the bond resolutions and offering documents pursuant to which purchased their bonds expressly stated that Plaintiffs would have no claim on the [SUT];" and

  o "Whether the Legislative Assembly, in the exercise of its constitutional power to impose taxes, to determine how the revenues derived from those taxes shall be used and allocated, and to issue debt, validly transferred the [SUT] to COFINA and determined that it is not an 'available resource' under Sections 2 and 8 of Article VI of the Constitution," *Lex Claims* Action Dkt. 221, at 2.

These requests for certification had not been briefed or ruled upon when the First Circuit stayed further litigation pending appeal on the next business day. Because the First Circuit ultimately

ruled that the Lex Claims Action was subject to Section 405's enactment stay, *Lex Claims, LLC v. Fin. Oversight and Mgmt. Bd.*, 853 F.3d 548, 550 (1st Cir. 2017) (per curiam), no further litigation took place on the Certification Motions prior to the Commonwealth's Title III filing on May 3, 2017.

> C.    The Motion For Relief From The Automatic Stay

The Motion seeks relief from the automatic stay to allow the pending Certification Motions in the *Lex Claims* Action to be briefed and decided by Judge Besosa, and (if those motions are granted) to allow the Puerto Rico Supreme Court to answer any certified question. See Dkt. 270, at 2.  Movants apparently envision an entirely abstract inquiry into the propriety of certification and the resolution of any certified question; indeed, they specifically disclaim any intent to "resume litigation of the causes of action" or to pursue the dispositive motions they filed shortly before the First Circuit entered a stay.  *Id.* at 13.

On June 10, 2017, the Oversight Board filed a motion seeking approval of a procedure to resolve the dispute between the Commonwealth and COFINA regarding entitlement to the proceeds of the Commonwealth's SUT.  See Dkt. 303.  Under the Oversight Board's proposed procedure, litigation would be directed (at least in the first instance) by agents appointed to represent the Commonwealth and COFINA.  See *id.* at 14-16.  Observing that Movants sought stay relief to pursue certification to the Puerto Rico Supreme Court, the Oversight Board contended that litigation of the question in this Court is the superior alternative because, in contrast to certification, such litigation could encompass "the broader question whether federal law impacts the answer to whether the Pledged Sales Taxes are property of the Commonwealth title III debtor or the COFINA title III debtor and what that impact is."  *Id.* at 8-9.

## ARGUMENT

## THE MOTION SHOULD BE DENIED BECAUSE MOVANTS' HAVE
## FAILED TO DEMONSRATE CAUSE FOR RELIF FROM THE STAY

To obtain relief from the automatic stay, Movants must establish "cause." 11 U.S.C. § 362(d)(1). Although this standard is flexible, it cannot be stretched to justify Movants' request to establish a highly artificial procedure for litigating the constitutional validity of the COFINA structure in the abstract. The Motion also suffers from serious practical flaws. Stay relief should accordingly be denied.

A. The sort of litigation Movants seek leave to pursue is utterly foreign to the federal court system. As Movants candidly acknowledge (Dkt. 270, at 13), they do not seek stay relief to allow the *Lex Claims* Plaintiffs "to resume litigation of the[ir] causes of action." Rather, Movants seek leave to resurrect the *Lex Claims* Action only in an effort to pose abstract questions regarding COFINA's constitutional validity to the Puerto Rico Supreme Court. If those questions are answered, Movants apparently envision that no further litigation would take place in the *Lex Claims* Action.

But actual "causes of action" are the stuff of litigation in the federal courts, where Article III limits the exercise of the "judicial Power" of the United States to concrete "Cases" and "Controversies." U.S. Const. art. III, § 2. Thus, legal questions presented to a federal court must be resolved, "not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 462, 472 (1982). What Movants propose is exactly the opposite: Because Movants seek only to lift the stay for purposes of certification of questions to the Puerto Rico Supreme Court, the *Lex Claims* Action would serve only as a vehicle for resolution of abstract legal questions, in a manner that is

utterly divorced from the claims at issue in the case and any concrete relief sought by the parties. That proposal is inconsistent with Article III.

Moreover, even if Article III did not foreclose Movants' proposal today, the claim at issue in the *Lex Claims* Action would be moot well before the Puerto Rico Supreme Court could rule on the constitutional validity of the COFINA structure.  As explained above, see pp. 5-6, *supra*, although the *Lex Claims* Plaintiff's Second Cause of Action implicated the validity of the COFINA structure, it was pled as a preemption challenge to Executive Order 2016-30, pursuant to which the Commonwealth defaulted on its Constitutional Debt.   The Commonwealth's statutory authority for implementing Executive Order 2016-30 rests on the Puerto Rico Financial Emergency and Fiscal Responsibility Act, Act. No. 5-2017.[6]  That Act purports to authorize the Governor to promulgate executive orders providing priority rules for the Commonwealth's spending during an "Emergency Period," *id.* §203(c), but provides that the Emergency Period shall expire, at the latest, on August 1, 2017.  See *id.* § 103(q).[7]  At that point, the *Lex Claims* Plaintiffs' PROMESA-based challenge to Executive Order 2016-30 will become moot, because Executive Order 2016-30 will no longer have any basis in any Puerto Rico statute.

---

[6] Former-Governor Garcia Padilla promulgated Executive Order under the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, No. 21-2016.  That Act was repealed in certain respects by Act No. 5-2017, but Executive Order 2016-30 was not withdrawn.  Thus, as a matter of statutory law, the authority for Executive Order 2016-30 rests on Act No. 5-2017.

[7] Section 103(q) provides that the Emergency Period would expire on May 1, 2017, with a possible extension of up to three months at the discretion of the Governor.  The Governor has extended the statutory Emergency Period until August 1, 2017, but no further extensions are possible under Act. No. 5-2017.

To be clear, the GO Group does not accept the constitutional validity of Act No. 5-2017, or any other legislative action purporting to authorize the Commonwealth to declare a moratorium on the payment of its Constitutional Debt.  Under Article VI of the Puerto Rico Constitution and Section 303 of PROMESA, any such payment moratorium is patently unlawful.

If the Court were to grant Movants' request for lift stay relief on June 28, briefing on the Certification Motions would occupy at least another three weeks. See D.P.R. Local Civil Rule 7. Thus, the earliest that Judge Besosa could order certification would be July 19. At that point, there would be less than two weeks before the dispute underlying the *Lex Claims* Action would become moot. There is thus no realistic prospect that granting Movants' request for stay relief would lead to an adjudication of the constitutional questions Movants seek to pose to the Puerto Rico Supreme Court.

2. Aside from these constitutional impediments, the abstract and artificial nature of the litigation Movants propose would create serious practical concerns that counsel against granting their request for relief from the automatic stay.

*First*, Movants seek to pose the certification question to Judge Besosa, rather than to this Court as part of these administratively consolidated Title III proceedings. But this Court has responsibility for the Tittle III cases, and it is uniquely situated to weigh the costs of certification against any benefits the procedure might produce. For example, although Movants predict that certification would promote the resolution of these Title III cases, the procedure in fact creates a meaningful risk of prolonged delay. In one case, the Puerto Rico Supreme Court *denied* a certification request after a two-year delay. See *Cruz Aviles v. Bella Vista Hosp.*, Inc., 112 F. Supp. 2d 200, 203 n.1 (D.P.R. 2000). This Court, in the exercise of its responsibility for the Title III cases, should weigh that possibility against the benefits Movants attribute to certification.[8]

---

[8] The risk that the Puerto Rico Supreme Court would decline to hear one or more certified questions cannot be discounted. Whether to hear a question posed by a federal court is always a matter of discretion for the Supreme Court, except that the court "will not issue the certification sought when the question raised is a mixed question that involves aspects of federal and/or state law" of another jurisdiction, which must be resolved by the petitioner court. P.R. Sup. Ct. R. 25. Before accepting any certified question, the court will consider whether "'(1) questions of Puerto

Likewise, if certification were deemed advisable, it should fall to this Court to fashion the question or questions that would be posed to the Puerto Rico Supreme Court, in order to maximize the likelihood that any answers provided by the Puerto Rico Supreme Court would facilitate the prompt and orderly resolution of these Title III cases.  Movants' proposal, which calls for another district judge to make that decision, should accordingly be rejected.

*Second*, Movants' request for stay relief is premature because it is not yet clear how the dispute regarding COFINA's claim on the Commonwealth's SUT will be resolved in these Title III cases.  As noted above, the Oversight Board has proposed a procedure by which agents appointed by the Oversight Board would direct litigation on this issue on behalf of the Commonwealth and COFINA.  See p. 8, *supra*.  If the Court accepts that proposal, or a variant thereof, then the agents appointed by the Oversight Board should have the opportunity to frame the issues at play in the litigation before any request for certification is adjudicated.  Alternatively, litigation regarding COFINA's claim on the Commonwealth's SUT may be

---

Rican law [are] involved; (2) said questions may determine * * * the outcome of the case; (3) there are no clear precedents in the case law of the Puerto Rico Supreme Court; (4) an account of all the facts relevant to said questions [has been] included, clearly showing the nature of the controversy in which the questions arise.'" *In re San Juan Dupont Plaza Hotel Fire Litig.*, 687 F. Supp. 716, 725 (D.P.R. 1988) (quoting *Pan Am. Comput. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 788 (1982)).

As courts in the First Circuit have long recognized, "the Supreme Court of Puerto Rico has exercised its discretionary powers and narrowed its acceptance of certified questions from the federal court adjudicating certified issue only if the outcome *will* dispose of the entire case." *Twin County Grocers, Inc v. Mendez & Co.*, 81 F. Supp.2d 276, 280 n.2 (D.P.R. 1999) (emphasis added)).  It is not enough that "the case potentially *may* end by resolution of the state issues," *Cruz Aviles*, 112 F. Supp. 2d at 203 n.1 (emphasis added). The Puerto Rico Supreme Court will not accept certification if there is *any* unresolved issue of law or fact, *Nieves v. Univ. of P.R.*, 7 F.3d 270, 277-78 & n.11 (1st Cir.1993) ("The Puerto Rico Supreme Court would reject any certification of [a] factually undeveloped issue.") (citing *Pan Am. Computer Corp. v. Data Gen. Corp.*, 112 P.R. Dec. 780, 788 (1982) (Rule 27 certification is warranted only if, among other things, "the case makes an account of all the facts relevant to said questions showing clearly the nature of the controversy giving rise to the questions")); *Cruz Aviles*, 112 F. Supp. 2d at 201 n.1

12

initiated as adversary proceedings within these Title III cases, either by creditors of Commonwealth or creditors of COFINA.  Before that litigation is initiated, it is premature to ask whether certification would be warranted.  As the Oversight Board has observed (Dkt. 303, ¶ 19), any such litigation may turn on issues of federal law that must be resolved by this Court (and which could potentially lead the Puerto Rico Supreme Court to not accept any certified questions, see note 8, *supra*.).  Moreover, although the GO Group agrees with Movants that the constitutional validity of the COFINA structure can be adjudicated as a matter of law, other potential parties to as-yet unfiled litigation may take a different view and suggest that discovery is required.  Again, the Court should have the benefit of those views before any request for certification is resolved.[9]

*Third*, and finally, the *Lex Claims* Action is a poor vehicle for posing the legal questions Movants seek to have certified, even setting aside the impending mootness of the case.  As noted above, the primary claim in the *Lex Claims* Action posed a preemption question under PROMESA, rather than a straightforward challenge to the constitutional validity of the COFINA structure.  Now that these Title III cases have been filed and a straightforward claim for declaratory relief may proceed in this Court, it would not be prudent to select a case with significant procedural complication as a vehicle for resolving underlying questions regarding COFINA's constitutional validity.  Moreover, the operative complaint in the *Lex Claims* Action was filed more than eight months ago.  See *Lex Claims* Action Dkt. 78.  Since that time, a number of significant developments have occurred, including the Oversight Board's certification of a Fiscal Plan that treats the SUT proceeds earmarked for COFINA as property of the

---

[9] The Court has also established a framework for mediation in these Title III cases, which may provide another vehicle for resolving the dispute over COFINA's claim on the Commonwealth's SUT.  See Dkt. 329.

Commonwealth, Dkt. 1, Ex. A at 12, and the Commonwealth's enactment of a "Fiscal Plan Compliance Act" that implements that understanding.  See Act No. 26-2017, Chs. 4 and 6 (certified translation attached as <u>Exhibit A</u>).  These intervening developments undercut COFINA bondholders' argument that ownership of a portion of the Commonwealth's SUT was transferred to COFINA.  If litigation in the *Lex Claims* Action were to proceed, the *Lex Claims* Plaintiffs would naturally wish to amend their complaint to include allegations regarding these intervening developments.  Yet, because Movants seek to divorce an abstract legal question from the context of the case in which it arose, their proposal would apparently not provide any opportunity for these necessary amendments.  That additional unfairness also counsels against granting the Motion.

In sum, Movants' request to seek certification of questions to the Puerto Rico Supreme Court is premature and procedurally misguided.  It should be rejected.

## CONCLUSION

The Motion should be denied.

Dated: June 21, 2017

Respectfully submitted,

/s/ J. Ramón Rivera
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
JIMÉNEZ, GRAFFAM & LAUSELL
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

/s/ Mark T. Stancil
Lawrence S. Robbins (admitted *pro hac vice*)
Mark T. Stancil (admitted *pro hac vice*)
Gary A. Orseck (admitted *pro hac vice*)
Kathy S. Zecca (admitted *pro hac vice*)
Ariel N. Lavinbuk (admitted *pro hac vice*)
Donald Burke (admitted *pro hac vice*)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411-L
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: mstancil@robbinsrussell.com

/s/ Andrew N. Rosenberg
Andrew N. Rosenberg (admitted *pro hac vice*)
Richard A. Rosen (admitted *pro hac vice*)
Walter Rieman (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Karen R. Zeituni (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: arosenberg@paulweiss.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

# EXHIBIT A

CERTIFIED TRANSLATION

66

…".

### CHAPTER 4.- TRANSFER FROM PUBLIC CORPORATIONS, AGENCIES AND INSTRUMENTALITIES TO THE GENERAL FUND; CREATION OF COMMITTEE AND ADJUSTMENT OF CHARGES, DUTIES AND RATES.

Article 4.01.-Transfer of Surplus

Public corporations, agencies and instrumentalities of the Government of Puerto Rico are hereby ordered to transfer to the Department of the Treasury the surplus of generated income. Said funds shall be considered as available resources of the State and deposited by the Department of the Treasury in the General Fund of the Government of Puerto Rico to comply with the liquidity requirements contemplated in the Fiscal Plan adopted under the provisions of the Puerto Rico Oversight, Management and Economic Stability Act of 2016, Public Law 114-187, also known as PROMESA.

Article 4.02.-Committee

The amount of funds to be contributed by each of the corporations and instrumentalities shall be determined by a committee composed of the Executive Director of the Fiscal Agency and Financial Advisory Authority of Puerto Rico, the Secretary of the Department of the Treasury and the Executive Director of the Office of Budget and Management, having the authority to set the necessary rates to comply with the provisions of the Fiscal Plan approved for the Government of Puerto Rico and the one governing its corporations. Said committee shall make sure that the transfer of funds as provided in Article 4.01 of the present Law does not affect the services offered by public corporations and instrumentalities and that they are the surplus available after the operational expenses and obligations of said entities have been covered, in accordance with the expense budget recommended by the Office of Budget and Management for each fiscal year.

Furthermore, said Committee shall have the authority to revise the sources of income of the public corporations, agencies and instrumentalities, and adjust, increase or reduce any charge, duty, rate, tariff, fee, premium or any income of a similar nature, in order to comply with the metrics provided in the Fiscal Plan of the Government of Puerto Rico. In addition, the Committee shall be able to impose an additional administrative fee on any contributions that it may deem necessary, which may be from five percent (5%) to ten percent (10%), to comply with the metrics of the Fiscal Plan certified by the Financial Oversight and Management Board.

This Law shall have precedence over any law establishing any charge, duty, rate, tariff, fee, premium or any income of a similar nature, and the



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

67

committee shall have the authority to revise, increase or reduce the amount even if it is provided in the Law. The committee shall have the authority to revise, increase or reduce said income without being subject to the provisions of any Law, regulations or administrative order establishing a specific amount for said income.

Any provision of law, regulations, administrative order, corporate resolution, or any other document of a similar nature, restricting or reducing the funds that may be transferred by a public corporation, agency or instrumentality of the Government of Puerto Rico to the General Fund as provided in this Chapter is hereby suspended.

The committee shall have the authority to promote any necessary administrative order, circular letter or regulations for its operation and for compliance with the provisions of the present Law.

Article 4.03.-Exclusions

The provisions of this Chapter shall not apply to the University of Puerto Rico, created by virtue of Law No. 1 enacted on January 20, 1966, as amended, known as the "Law of the University of Puerto Rico," the Puerto Rico Public Corporation for Credit Union Oversight and Insurance, created by virtue of Law 114-2001, as amended, better known as the "Puerto Rico Public Corporation for Credit Union Oversight and Insurance Act," "Municipal Finance Corporation Act," better known as COFIM, Law 19-2014, as amended, "Law of the Special Commission regarding Legislative Funds for Community Impact," Law 20-2015 and "Law of the Joint Commission regarding Special Reports of the Comptroller," Law No. 83 enacted on June 23, 1954, as amended. This Chapter shall not apply to the funds of public corporations and entities for community purposes, when they are funds received by private entities.

As to the "Urgent Interest Fund Act," better known as COFINA, Law 9-2006, as amended, the Executive shall have the authority to use the Funds of COFINA, occasionally, only as a last alternative and subject to submission of a sworn certification to the Legislative Assembly. Submission of said certification shall not be interpreted as the Executive having indefinite use of the funds of COFINA. Said certification shall have to establish the need, period and amount of funds to be used, to cover a significant occasional deficiency in the cash flow to comply with the Fiscal Plan of the Government of Puerto Rico. Said certification shall be signed and sworn by the Executive Director of the Fiscal Agency and Financial Advisory Authority (AAFAF) and by the Director of the Office of Budget and Management. The signature and oath of these officials on the certification shall be non-delegable. In said certification officials

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

68

shall certify that the information is correct, exact and true in accordance with the fiscal reality of the Government of Puerto Rico.

Article 4.04.-Compliance Clause

All transfers made under the provisions of this Chapter shall be subject to the requirements of Section 201(b)(1) (M) of Public Law 114-187 known as the Puerto Rico Oversight, Management and Economic Stability Act or PROMESA.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

66

…".

## CHAPTER 4.- TRANSFER FROM PUBLIC CORPORATIONS, AGENCIES AND INSTRUMENTALITIES TO THE GENERAL FUND; CREATION OF COMMITTEE AND ADJUSTMENT OF CHARGES, DUTIES AND RATES.

Article 4.01.-Transfer of Surplus

Public corporations, agencies and instrumentalities of the Government of Puerto Rico are hereby ordered to transfer to the Department of the Treasury the surplus of generated income. Said funds shall be considered as available resources of the State and deposited by the Department of the Treasury in the General Fund of the Government of Puerto Rico to comply with the liquidity requirements contemplated in the Fiscal Plan adopted under the provisions of the Puerto Rico Oversight, Management and Economic Stability Act of 2016, Public Law 114-187, also known as PROMESA.

Article 4.02.-Committee

The amount of funds to be contributed by each of the corporations and instrumentalities shall be determined by a committee composed of the Executive Director of the Fiscal Agency and Financial Advisory Authority of Puerto Rico, the Secretary of the Department of the Treasury and the Executive Director of the Office of Budget and Management, having the authority to set the necessary rates to comply with the provisions of the Fiscal Plan approved for the Government of Puerto Rico and the one governing its corporations. Said committee shall make sure that the transfer of funds as provided in Article 4.01 of the present Law does not affect the services offered by public corporations and instrumentalities and that they are the surplus available after the operational expenses and obligations of said entities have been covered, in accordance with the expense budget recommended by the Office of Budget and Management for each fiscal year.

Furthermore, said Committee shall have the authority to revise the sources of income of the public corporations, agencies and instrumentalities, and adjust, increase or reduce any charge, duty, rate, tariff, fee, premium or any income of a similar nature, in order to comply with the metrics provided in the Fiscal Plan of the Government of Puerto Rico. In addition, the Committee shall be able to impose an additional administrative fee on any contributions that it may deem necessary, which may be from five percent (5%) to ten percent (10%), to comply with the metrics of the Fiscal Plan certified by the Financial Oversight and Management Board.

This Law shall have precedence over any law establishing any charge, duty, rate, tariff, fee, premium or any income of a similar nature, and the


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

67

committee shall have the authority to revise, increase or reduce the amount even if it is provided in the Law. The committee shall have the authority to revise, increase or reduce said income without being subject to the provisions of any Law, regulations or administrative order establishing a specific amount for said income.

Any provision of law, regulations, administrative order, corporate resolution, or any other document of a similar nature, restricting or reducing the funds that may be transferred by a public corporation, agency or instrumentality of the Government of Puerto Rico to the General Fund as provided in this Chapter is hereby suspended.

The committee shall have the authority to promote any necessary administrative order, circular letter or regulations for its operation and for compliance with the provisions of the present Law.

Article 4.03.-Exclusions

The provisions of this Chapter shall not apply to the University of Puerto Rico, created by virtue of Law No. 1 enacted on January 20, 1966, as amended, known as the "Law of the University of Puerto Rico," the Puerto Rico Public Corporation for Credit Union Oversight and Insurance, created by virtue of Law 114-2001, as amended, better known as the "Puerto Rico Public Corporation for Credit Union Oversight and Insurance Act," "Municipal Finance Corporation Act," better known as COFIM, Law 19-2014, as amended, "Law of the Special Commission regarding Legislative Funds for Community Impact," Law 20-2015 and "Law of the Joint Commission regarding Special Reports of the Comptroller," Law No. 83 enacted on June 23, 1954, as amended. This Chapter shall not apply to the funds of public corporations and entities for community purposes, when they are funds received by private entities.

As to the "Urgent Interest Fund Act," better known as COFINA, Law 9-2006, as amended, the Executive shall have the authority to use the Funds of COFINA, occasionally, only as a last alternative and subject to submission of a sworn certification to the Legislative Assembly. Submission of said certification shall not be interpreted as the Executive having indefinite use of the funds of COFINA. Said certification shall have to establish the need, period and amount of funds to be used, to cover a significant occasional deficiency in the cash flow to comply with the Fiscal Plan of the Government of Puerto Rico. Said certification shall be signed and sworn by the Executive Director of the Fiscal Agency and Financial Advisory Authority (AAFAF) and by the Director of the Office of Budget and Management. The signature and oath of these officials on the certification shall be non-delegable. In said certification officials

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

68

shall certify that the information is correct, exact and true in accordance with the fiscal reality of the Government of Puerto Rico.

Article 4.04.-Compliance Clause

All transfers made under the provisions of this Chapter shall be subject to the requirements of Section 201(b)(1) (M) of Public Law 114-187 known as the Puerto Rico Oversight, Management and Economic Stability Act or PROMESA.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.