# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al*. | (Jointly Administered) |
| Debtors.¹ | |

### RESPONSE TO DEBTORS' MOTION (A) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE LAURA TAYLOR SWAIN**:

**COMES NOW**, Puerto Rico Telephone Company d/b/a Claro (hereafter "Claro"), by and through its undersigned counsel, and respectfully submits this response (the "Response")² to the Puerto Rico Fiscal Agency and Financial Advisory Authority's ("AAFAF"), as the entity authorized to act on behalf of the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA" and together with the Commonwealth, the "Debtors"), motion (the "Utilities Motion") seeking certain relief against the Debtors' utility providers pursuant to section 366 of the Bankruptcy Code (the "Code") (Docket No. 210 of Case No. 17-03283 (LTS)) for the following reasons:

1.  The Financial Oversight and Management Board for Puerto Rico (the "Oversight

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2] The deadline for Claro to file this Response was consensually extended by AAFAF until today at 4 p.m. prevailing Eastern Time. See, Dockets No. 389, 412 and 429 of Case No. 17-03283 (LTS).

Board") was established under section 101(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[3] on June 30, 2016. On August 31, 2016, President Barack Obama appointed the Oversight Board's seven voting members.

2. Pursuant to section 315 of PROMESA, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA]…or otherwise generally submitting filings in relation to the case[s] with the court."

3. On September 30, 2016, the Oversight Board designated the Commonwealth and COFINA as covered entities under section 101(d) of PROMESA.

4. On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to sections 104(j) and 206 of PROMESA, and filed a voluntary petition for relief for the Commonwealth in accordance to section 304(a) of PROMESA (the "Commonwealth Petition-Date"), thus commencing a case under title III on behalf of the Commonwealth (the "Commonwealth's Title III Case").

5. On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to sections 104(j) and 206 of PROMESA, and filed a voluntary petition for relief for COFINA in accordance to section 304(a) of PROMESA (the "COFINA Petition Date", and jointly with the Commonwealth Petition Date, the "Petition Date"), thus commencing a case under title III on behalf of COFINA ("COFINA's Title III Case" and together with the Commonwealth's Title III Case, the "Title III Cases").

6. On May 9, 2017, the Debtors filed a motion seeking the joint administration of the Title III Cases pursuant to section 304(g) of PROMESA and Rule 1015 of the Federal Rules of

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Bankruptcy Procedure (the "Bankruptcy Rules") (as made applicable to these Title III Cases by virtue of section 310 of PROMESA). See, Docket No. 41 of Case No. 17-03283 (LTS). The joint administration of the Title III Cases was authorized by this Court on June 1, 2017. See, Docket No. 242 of Case No. 17-03283 (LTS) and Docket No. 131 of Case No. 17-03284 (LTS).

7. The Debtors, by and through AAFAF, filed the Utilities Motion on May 22, 2017, seeking, among other things, the entry of an order (a) prohibiting utilities from altering, refusing or discontinuing service, (b) determining that Debtors' utility providers are adequately assured within the purview of section 366 of the Code, and (c) finding that Debtors are not required to provide any additional adequate assurance beyond what is proposed in the Utilities Motion. See, Docket No. 210 of Case No. 17-03283 (LTS) at ¶ 12.

8. The Utilities Motion lists and designates Claro as one of those providers that will be affected by the relief sought therein. See, Docket No. 210 of Case No. 17-03283 (LTS) at page 24.

9. The Utilities Motion, as filed, contains various provisions which are of particular concern to Claro. These are:

   (a) The only adequate assurance contemplated by the Debtors is to "…provide Utility Providers with an administrative expense priority claim for postpetition, unpaid Utility Services pursuant to Bankruptcy Code sections 503(b) and 507(a)(2)…" (the "Proposed Assurance");

   (a) It creates a procedure by which a provider can seek additional adequate assurance within a set deadline before counsel for AAFAF and the Oversight Board, which, in turn, will give rise to discussions between the provider and Debtors for the determination of whether additional adequate assurance is warranted (the "Additional Adequate Assurance

Negotiations"). If an agreement cannot be reached during the course of the Additional Adequate Assurance Negotiations, the resolution of this controversy will be brought to the Court's consideration (the "Additional Adequate Assurance Dispute"), *provided*, *however*, that "any objecting Utility Provider [will] be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors over any unpaid charges for prepetition Utility Services or any perceived inadequacy of the proposed adequate assurance, pending final resolution of any [Additional Adequate Assurance Dispute]";

(b) Proposes that "[a]ny Utility Provider that fails to make a timely Additional Assurance Request…shall be deemed to have received adequate assurance…as required by Bankruptcy Code section 366 [through the Proposed Assurance], and will be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on the basis of the commencement of these Title III Cases, on account of any unpaid invoice for services provide before the applicable petition date, or any perceived inadequacy of the [Proposed Assurance]"; and

(c) Provides Debtors with the unilateral authority to "…terminate [at any time] service from any of their Utility Providers…effective immediately upon the Debtors' notice to the Utility Provider..."

See, Docket No. 210 of Case No. 17-03283 (LTS) at ¶ 13(a), (e), (g) and (h).

10. Section 366(b) of the Bankruptcy Code, as made applicable to these proceedings by virtue of section 301(a) of PROMESA, provides (at its pertinent parts) that a utility

> …may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366(b).

11. Section 366(b) "has been read as an exception to the automatic stay, allowing a utility to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court." Jones v. Bos. Gas Co. (In re Jones), 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007). This sub-section is self-executing and the utility is not required to initiate any formal proceeding to enforce these rights. 3-366 Collier on Bankruptcy ¶ 366.03 (16th 2017).

12. "The phrase 'adequate assurance of payment' is not defined in the Code [and its] meaning depends upon the facts and circumstances of each case". In re Keydata Corp., 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). Generally speaking:

> Debtors have a choice in exercising what the bankruptcy code would consider as adequate assurance. **The choice comes in two forms: (1) a deposit with the utility or (2) another security**. Both may be modified by an order of court on request of a party in interest after notice and a hearing.

Martinez v. Autoridad De Acueductos y Alcantarillados (In re Martinez), 504 B.R. 722, 730 (Bankr. D.P.R. 2014) (Emphasis added).

13. While section 366(b) does not necessarily require the issuance of a deposit in every case, and the legislative history appears to suggest that (in some instances) an administrative expense may suffice as adequate assurance, ultimately, *the debtor must show that the proposed adequate assurance is sufficient to protect the utility from an unreasonable risk of non-payment*. Keydata Corp., 12 B.R. at 158. "**It is the debtor (or the trustee) and not the**

**Court who must satisfy the requirement**." In re George C. Frye Co., 7 B.R. 856, 858 (Bankr. D. Me. 1980) (Emphasis added).

14. The Utilities Motion, as filed, fails to satisfy Debtors' burden under section 366(b) of the Code. Specifically, it does not demonstrate how the Proposed Assurance is sufficient to protect utility providers from an unreasonable risk of non-payment.

15. First, the Utilities Motion appears to invert the operation of section 366(b) through the creation of the Additional Adequate Negotiations and Additional Adequate Assurance Dispute mechanisms (jointly, the "Mechanisms"). These Mechanisms seek a blanket impairment of a utility provider's statutory rights to alter, modify or discontinue service, which, in turn, *forces the utility providers to have to obtain relief from this Court in order to exercise their most basic protections under the Code*. This proposal is contrary to the purpose and objective of section 366(b)[4].

16. Second, the Utilities Motion does not present sufficient basis to justify how the Proposed Assurance *by itself* is adequate enough to protect utilities from an unreasonable risk of non-payment.

17. Courts usually consider a number of factors when determining whether an administrative expense *alone* is sufficient adequate assurance under section 366(b). These include: (i) whether debtor had a good payment history, (ii) a high degree of liquidity, (iii) sufficient assets and (iv) borrowing capability, as well as whether the debtor (iv) has provided the utilities which quick access to the court to help them minimize their risk. See, In re Adelphia

---

[4] See, Jones, 369 B.R. at 748 (section 366(b) allows a utility to alter, refuse or discontinue service *without recourse to the court*); Carter v. South County Water System (In re Carter), 133 B.R. 110, 112 (Bankr. N.D. Ohio 1991) (a utility's right to terminate service under section 366(b) is *self-executing and a formal proceeding by the utility is not required*). See also Martinez, 504 B.R. at 730.

-6-

Bus. Sols., 280 B.R. 63, 83 (Bankr. S.D.N.Y. 2002); Va. Elec. & Power Co. v. Caldor, Inc.-NY, 117 F.3d 646, 650-51 (2d Cir. 1997)[5]; Frye, 7 B.R. at 858.

18. This analysis is fact intensive. See, Frye, 7 B.R. at 858. The reason why these additional elements are considered is because "…an administrative priority will be available to the utility as a matter of course, [therefore] **it is suggested that something more may be required, at least in some cases [as], it may be very uncertain whether the estate will have sufficient assets to pay all administrative expenses**." Collier ¶ 366.03 (Emphasis added).

19. Depending on the analysis of these factors, some courts have found that an administrative expense priority *when coupled with the following additional protections* (the "Additional Protections") constitutes sufficient adequate assurance: (i) "creating a streamlined procedure for the [u]tilities to obtain immediate relief and future security if the [d]ebtors were late on a single payment; and" (ii) "requiring the [d]ebtors to provide certain financial reports on a monthly basis to the [u]tilities." Adelphia, 280 B.R. at 82-83 (*referencing* Caldor, 117 F.3d at 647).

20. The Utilities Motion does not discuss these factors. As such, the Court has not been put in a position to decide whether the Proposed Assurance *alone*, without the Additional Protections, constitutes enough assurance for purposes of section 366(b). This situation becomes more paramount given that the Utilities Motion attempts to afford Debtors with the broad and unilateral right to terminate the services of any utility provider *without providing minimum notification procedures or compliance with the termination terms of any existing service agreements*.

21. Based on the above, the Utilities Motion, as filed, should not be approved until such time as the deficiencies outlined herein have been corrected by the Debtors.

---

[5] Caldor was overruled legislatively by the enactment of section 366(c) *with respect to chapter 11 cases*. However, the rationale in Caldor remains good law for non-chapter 11 cases.

**WHEREFORE**, Claro respectfully requests this Court to take note of the foregoing, and, consequently, prays that that the Utilities Motion, as filed (Docket No. 210), be DENIED.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 23rd day of June, 2017.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case. We further certify that, on this same date, we served the foregoing upon all the Standard Parties as identified and defined at ¶ II of the and the Court's *Order (a) Imposing and Rendering Applicable Local Bankruptcy Rules to these Title III Cases, (b) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (c) Granting Related Relief* (Docket No. 249), as amended on June 6, 2017 (Docket No. 262) (the "CMP Order"), as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

**McCONNELL VALDÉS LLC**
*Attorneys for Puerto Rico Telephone Company d/b/a Claro*
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5604
Facsimile: 787-759-9225

By: *s/Antonio A. Arias*
Antonio A. Arias
USDC-PR No. 204906
aaa@mcvpr.com

By: *s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com