IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

Re: ECF No. 305, 306

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO

Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the
Commonwealth and shall only be
filed in the lead Case No. 17 BK
3283-LTS.**

---------------------------------------------------------------x

**OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY
FILED BY SUCESIÓN PASTOR MANDRY MERCADO ECF NO. 305**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay* [ECF No. 305] (the "Motion") filed by Sucesión Pastor Mandry Mercado ("SPMM").[2] In support of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

Objection, the Commonwealth respectfully represents that the Motion should be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. Less than two months ago, the Oversight Board, as the Debtors' representative pursuant to PROMESA section 315(b), filed a voluntary petition for relief for the Commonwealth under PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").[3] Since that time, the Commonwealth has been focused on transitioning into title III.

2. As part of that transition, the Commonwealth is evaluating how best to apply the automatic stay enumerated in Bankruptcy Code sections 362 and 922, made applicable by PROMESA section 301(a), to civil actions against the Commonwealth in Puerto Rico's court system. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. This "breathing room" can be of great importance to the Commonwealth given the massive amount of litigation it must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there are approximately 5,200 pending and threatened litigation cases against the Commonwealth with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf. To this

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

point, approximately six plaintiffs have moved to lift the automatic stay in the Title III Case so far, however, many other plaintiffs may seek similar relief. Rather than evaluating the Motion in insolation, this Court should consider the totality of the circumstances with respect to the litigation docket the Commonwealth faces and the implication of lifting the stay at this juncture of the case. The Commonwealth and its advisors are currently working on proposing a protocol for addressing how to treat all of the prepetition litigation claims asserted against it in the overall context of the Title III Case. The protocol would provide the Commonwealth with the necessary "breathing room" to evaluate these cases but would also allow for the Commonwealth to stipulate (as it has already done) with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous (e.g., agreeing to lift the stay for a movant to pursue claims related to the forfeiture of personal property [ECF No. 272]).

4. Lifting the stay in the first few months of the Title III Case would open the floodgates for the thousands of prepetition litigation plaintiffs to seek similar relief before this Court, effectively denying the Commonwealth of its fundamental right to "breathing room" and cause significant prejudice to the Commonwealth and its stakeholders. To that end, the Commonwealth requests that the Court deny the Motion without prejudice to SPMM to re-file the Motion in 180 days, if needed. While this will not harm SPMM at all, it will allow the Commonwealth the time to assess SPMM's claims along with the rest of the prepetition litigation claims in the overall context of the Title III Case and to establish procedures to lessen the burden on the Commonwealth, its creditors, and this Court.

3

**OBJECTION**

5. Bankruptcy Code section 362(d)(1) provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990).[4] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing In re Sonnax Indus., Inc., 907 F.2d at 1286); C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285.

6. Here, SPMM does not make any showing of "cause" in the Motion or establish how it would suffer harm if the stay remains in place. Instead, SPMM speculates that if this Court were to ultimately find that SPMM's takings claims were non-dischargeable, the stay must

---

[4] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286. Few of these factors weigh strongly in favor of lifting the stay here.

4

be lifted so that SPMM can obtain a determination of just compensation in the state court and file a proof of claim in the Title III Case. Motion ¶ 13. SPMM's dischargeability argument is both premature and besides the point: it is not before the Court at this time nor does it justify lifting the automatic stay now before any process for evaluating or adjudicating proofs of claim against the Commonwealth has been established. The fact that SPMM brings claims pursuant to the Federal and Commonwealth Constitutions does not automatically entitle SPMM to relief from the automatic stay. See Newberry v. City of San Bernardino (In re City of San Bernardino), 558 B.R. 321, 330-31 (C.D. Cal. 2016) (finding that there is no exception to the automatic stay for constitutional claims, even if that category of claims is "deserving" of an exemption). Rather, SPMM "must still demonstrate that the harm flowing from the continuation of those alleged constitutional violations outweighs the detriment that the Commonwealth would suffer if the stay were vacated to address them." Brigade, 217 F. Supp. 3d at 526.

7. The impact on the Debtors if the Motion were to be granted would outweigh any harm that SPMM would suffer if the automatic stay remains in place. As mentioned above, there are approximately 5,200 pending or threatened litigations against the Commonwealth. Granting the Motion will divert the Commonwealth's attention and resources to defending SPMM's takings claims in state court and will encourage other creditors to seek similar relief. The Commonwealth should instead be given the proper "breathing room" to focus on assessing its prepetition litigation claims and formulating a process to address each of those claims in the overall context of the Title III Case. Courts routinely deny motions for relief from stay where granting the motion "may encourage other claimants to file their own stay relief motions." See, e.g., In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits

5

asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Bally Total Fitness of Greater New York, Inc., 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[G]ranting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case . . . ."), aff'd, 411 B.R. 142 (S.D.N.Y. 2009) (citation omitted); In re Residential Capital, LLC, No. 12-12020 (MG), 2012 WL 3556912, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) ("Lifting the stay . . . could open the floodgates for other movants who also seek stay relief. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize, forcing the Debtors to utilize time and resources that would otherwise be spent resolving these chapter 11 cases."); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court asbestos suit to proceed against debtor, even though stay of litigation would cause hardship to defendant since granting of relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits").

8. Even in the context of this case, SPMM's $30 million claim is substantial. At this point, and in a vacuum where not all litigation against the Commonwealth can be fully assessed, letting such a large claim of this type go forward would not be appropriate. Accordingly, denial of the Motion is appropriate where, as here, prosecution of the underlying litigation impacts the bankruptcy case and prejudices the interests of other creditors.

9. Balancing of the harms clearly favors denial of the Motion. The large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend SPMM's claims in state court, and the prejudice to interests of other creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III Case. On the other hand,

6

postponing liquidation of SPMM's claims will neither adversely affect SPMM or promote judicial economy. There is nothing urgent about SPMM's claims. Expedition of the claims will not save the Commonwealth any time or money. Instead, it will force the Commonwealth to spend time and money now to liquidate a claim that may only be paid, if at all, under a confirmed plan of adjustment. Moreover, given the very early stage of the Title III Case, it is premature to decide in what forum a case of this size should be resolved. Thus, as of now, SPMM cannot establish that judicial economy would be served by lifting the stay.

## CONCLUSION

10. For the foregoing reasons, the Court should grant the Objection and deny the Motion without prejudice to SPMM to re-file the Motion in 180 days, if needed.

7

Dated: June 23, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

/s/ *Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*