UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AAFAF'S INFORMATIVE MOTION ON BEHALF OF THE DEBTOR ENTITIES REGARDING GOVERNANCE AND CONFLICT-OF-INTEREST ISSUES**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtor entities under the *Puerto Rico Fiscal Agency and Financial Advisory Authority Act*, Act 2-2017 (the "AAFAF Enabling Act"), respectfully submits this informative motion (the "Motion") to (i) apprise the Court of AAFAF's role and responsibilities in these proceedings and Puerto Rico's restructuring efforts generally, and (ii) correct certain misstatements by financial creditors' counsel at the May 17, 2017 hearing (the "May 17 Hearing") and in their objections to the *Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [D.I. 303] (the "Motion") concerning Puerto Rico public officials' fiduciary duties and AAFAF's ability to represent multiple Puerto Rico public corporations. Put simply, Puerto Rico's public officials and AAFAF are public

---

[1] The Debtors are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

servants whose ultimate and most sacred duties are to the health, safety and welfare of the people of Puerto Rico, not to a single set of financial creditors.

### Background on AAFAF

1. AAFAF was created on April 6, 2016, pursuant to the *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act*, Act 21-2016 (the "Moratorium Act") for the initial purpose of taking over the fiscal responsibilities of the Government Development Bank for Puerto Rico ("GDB"). At the time, GDB (which, unlike AAFAF, was a debt issuer) faced its own significant fiscal crisis and could not satisfy its debt service obligations. *See* Moratorium Act, pt. II.A. This fiscal crisis threatened GDB's ability to effectively carry out its duties as fiscal agent, financial advisor, and reporting agent of the Commonwealth and its agencies, instrumentalities, municipalities, and political subdivisions. *See* 7 L.P.R.A. § 552(A). To ensure that those essential government functions would be carried out unimpeded by the fiscal crisis, the Moratorium Act transferred GDB's duties as fiscal agent, financial advisor, and reporting agent to AAFAF. *See* Moratorium Act § 602. AAFAF was also granted the authority to "oversee all matters related to the restructuring or adjustment" of certain covered obligations, as designated by the Governor. *Id.* § 602(b).

2. On June 30, 2016, Congress enacted the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") to provide the Commonwealth with the tools necessary to address Puerto Rico's fiscal crisis and ensure future access to the capital markets. *See* PROMESA §§ 405(m)(6), 405(n). Among other things, PROMESA provided the federal courts with authority to restructure the Commonwealth's debt obligations, and established an oversight mechanism to assist the Commonwealth in "reforming its fiscal governance and support the implementation of potential debt restructuring." *Id.* § 405(n). Specifically, PROMESA section 101(b) established the Financial Oversight and Management Board for

Puerto Rico (the "Oversight Board"), which is tasked with certifying a fiscal plan, approving the Commonwealth's proposed budgets, filing Title III petitions on behalf of the Commonwealth and other covered entities, and acting as the debtor representative in the Title III proceeding. *See id.* §§ 201, 202, and 315.

3. On January 18, 2017, the Puerto Rico legislature enacted the AAFAF Enabling Act, which expanded AAFAF's authority and designated it as the ***only*** government entity authorized to renegotiate, restructure, and reach agreements with creditors in connection with public debt or any other debt issued by any government entity. *See* AAFAF Enabling Act § 8(q). AAFAF was also granted authority to compel any governmental entity to take action to comply with the Fiscal Plan certified by the Oversight Board, and to take action on behalf of any government entity to ensure compliance. *See id.* §§ 8(m) and (o).

4. Accordingly, AAFAF today acts on behalf of the Commonwealth and all of its related entities and instrumentalities in connection with devising and implementing (in conjunction with the Oversight Board) the strategies necessary to achieve PROMESA's dual goals of achieving fiscal responsibility and regaining access to the capital markets. *See* PROMESA § 101(a). As a practical matter, this means that AAFAF has been authorized and empowered to negotiate with creditors and other parties-in-interest on behalf of the Commonwealth and public corporations such as COFINA to ensure that Puerto Rico's fiscal crisis is resolved in the public's best interest.

**Governance and Conflict Issues Related to the Debtors**

5. Certain creditor parties asserted at the May 17 Hearing and in their objections to the Motion that AAFAF is conflicted because it acts for both the Commonwealth and COFINA and has fiduciary duties to their creditors, who have diverging interests. The creditor parties therefore contend that an independent fiduciary must be appointed to make fiscal, restructuring,

3

and settlement decisions on COFINA's behalf. As discussed below, however, that argument is premised on fiduciary principles applicable only to *private* corporations and ignores AAFAF's statutory mandate to engage with creditors in restructuring COFINA's debts.[2]

6. These Title III cases are not traditional corporate bankruptcies and neither AAFAF nor COFINA's directors have fiduciary duties to creditors. Their authority is derived from the people's sovereign power, and their duties are owed to the public, whose health, welfare, and safety must always be paramount, regardless of a public entity's solvency or insolvency. Creditors of public entities, by contrast, are merely contractual counterparties, whose rights are confined to the terms of the indentures and who are protected by the remedies provided under Puerto Rico or federal law. To the extent there is conflict between those contractual rights and the public good, public officials must make decisions based on sound public policy. Under no circumstances may private parties interfere with those decisions or take over the management of public entities, which must always be subject to oversight and accountability by the elected branches and the public. AAFAF therefore has no conflict of interest in these Title III cases because it must act at all times for the benefit of the public—not individual creditors—in accordance with its statutory and public policy mandate.

7. While this issue may be addressed in connection with specific requests for relief, the record must be clarified now given that certain parties have tried to create a cloud over AAFAF's ability to perform its statutory responsibilities. *See* AAFAF Enabling Act § 5(c). Indeed, AAFAF's ability to represent multiple public entities is critical to the success of these proceedings and to meeting PROMESA's goals.

---

[2] Moreover, even if COFINA's directors have residual powers, they must be exercised on behalf of the public—not COFINA's creditors—because COFINA is a public entity engaged in the act of governing and disposing of public funds.

4

## I. Public Officials Owe Fiduciary Duties to the Public—Not Creditors.

8. Public officials generally have fiduciary duties to the public to serve with the highest fidelity and make decisions in the public's best interest.[3] Public officials do not, however, have fiduciary duties to government creditors (including bondholders), and may treat them as normal contractual counterparties[4]—including by breaching contractual obligations when the public interest requires. *See TM Park Ave. Assoc. v. Pataki*, 214 F.3d 344, 348-49 (2d Cir. 2000) ("The state, like any private party, must be able to breach contracts . . . .").[5]

9. There is no basis to depart from that rule here. There is no statute or regulation imposing on COFINA (or AAFAF acting on COFINA's behalf) fiduciary obligations to its creditors. And there is nothing in COFINA's enabling act (or AAFAF's) stating that it must prioritize creditor interests over the public interest when performing its statutory responsibilities. *See* 13 L.P.R.A. § 11a; *see also Fiscal Plan Compliance Act*, Law 26-2017 (enacted on April 29,

---

[3] *See, e.g.*, *United States v. Nelson*, 712 F.3d 498, 509 (11th Cir. 2013) (holding that public official owed fiduciary duty to the public "to make governmental decisions in the public's best interest," even though the official was not paid for his work and worked only part time); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010) (finding that "public officer occupies a fiduciary relationship to the political entity on whose behalf he serves"); *United States v. Kincaid-Chauncey*, 556 F.3d 923, 944 (9th Cir. 2009) ("A public official's duty to disclose material information need not be expressly imposed by statute or code because a public official inherently owes a fiduciary duty to the public to make governmental decisions in the public's best interest"); Kathleen Clark, *Do We Have Enough Ethics In Government Yet?: An Answer From Fiduciary Theory*, 1996 U. Ill. L. Rev. 57, *74 (1996) ("Numerous courts have recognized the fiduciary obligation of government employees, even in the absence of specific legislative or regulatory endorsements of such duties, and these courts have imposed fiduciary-like remedies in response to violations of the conflict and influence components of that obligation.").

[4] *See Prime Healthcare Mgmt. v. Valley Health Sys. (In re Valley Health Sys.)*, 429 B.R. 692, 715 (Bankr. C.D. Cal. Apr. 8, 2010) (holding in Chapter 9 bankruptcy proceeding that directors of California health care district had no fiduciary duties to creditors because district was neither a chapter 11 debtor in possession nor an insolvent private corporation).

[5] *See also Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250 (7th Cir. 1996) ("[W]hen a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract."); *E & E Hauling, Inc. v. Forest Preserve Dist. of Du Page County, Ill.*, 613 F.2d 675, 679 (7th Cir. 1980) ("A state or its subdivision also may breach a contract and when it pays damages the obligation of the contract has also been dissolved.").

5

2017).[6] Nor have the other public corporations involved in Title III proceedings been assigned fiduciary duties to creditors. *See* 9 L.P.R.A. § 2002 (creating Puerto Rico Highways and Transportation Authority ("HTA") for purpose of "continuing the government's work to provide the people with the best roads and means of transportation"); 3 L.P.R.A. § 761 (establishing Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and imposing on board of trustees fiduciary duties only to participating members and beneficiaries).

10.  COFINA and other public corporations therefore have the right and the obligation to negotiate with their creditors at arms' length and seek the best possible terms for the public, particularly given the scope of Puerto Rico's ongoing fiscal emergency.

11.  AAFAF, as the public corporations' authorized representative, has the same right and obligation, *see* AAFAF Enabling Act § 8(q), which it may exercise by renegotiating and restructuring the terms of their debt through these proceedings. When AAFAF acts on behalf of any public entity, it presents no conflict of interest because AAFAF owes a fiduciary duty only to the public, and it must act in the public's best interest at all times. In its fiduciary capacity, however, AAFAF need not take into account the best interest of creditors.

12.  The fact that Title III cases have been commenced does nothing to change that. PROMESA section 303 provides that (apart from certain provisions in Titles I and II that are inapplicable here) Title III does not "limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise

---

[6] *See* 13 L.P.R.A. § 11a(b)(1) ("To pay or refinance, directly or indirectly, all or part of the extraconstitutional debt of the Commonwealth of Puerto Rico outstanding as of June 30, 2006, and the accrued interest thereon"); 11a(b)(7) ("to pay or finance operating expenses of the Government of the Commonwealth of Puerto Rico corresponding to fiscal years 2012-2013, 2013-2014, and 2014-2015").

of the political or governmental powers of the territory or territorial instrumentality." As explained above, under applicable Puerto Rico law and as an exercise of political power, AAFAF has the sole ability to act on behalf of all Puerto Rico entities in connection with restructurings without any conflicts. Title III does not limit or impair those powers in any way.

**II.    The Fiduciary Duties of Private Corporation Directors Are Irrelevant.**

13.    Because there is no statutory basis in Puerto Rico for imposing on public officials a fiduciary duty to creditors, creditors seem to be relying on case law from other jurisdictions holding that directors of *private* corporations owe fiduciary duties to the corporation's creditors once the corporation is insolvent or in the "zone of insolvency."[7] But the Puerto Rico courts have never recognized such a duty to creditors, let alone imposed it on directors of *public* corporations. Nor would they for several reasons.

14.    First, the rationale in other jurisdictions for recognizing fiduciary duties to creditors of *private* corporations does not apply to *public* corporations.[8] Directors of private corporations generally owe fiduciary duties only to the corporation and its stockholders—not creditors.[9] Upon insolvency, however, some courts have held that the directors' fiduciary duties shift from shareholders to creditors because the creditors become the beneficiaries of any

---

[7]   *See, e.g.*, *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 534 (5th Cir. 2004) ("Officers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' as in this case, have expanded fiduciary duties to include the creditors of the corporation."); *In re Flutie N.Y. Corp.*, 310 B.R. 31, 57 (Bankr. S.D.N.Y. 2004) ("[A] director of a corporation that is in the zone or vicinity of insolvency, owes a fiduciary duty not only to [the corporation] and any shareholders, but also to its creditors."); *Technic Eng'g. Ltd. v. Basic Envirotech, Inc.*, 53 F. Supp. 2d 1007, 1011 (N.D. Ill. 1999) ("A corporate officer or director's duties change . . . if the corporation becomes insolvent" and they "occupy a fiduciary relation towards the creditors").

[8]   *See Katz v. Holzberg*, 2013 U.S. Dist. LEXIS 142989, at *13 (D.N.J. Oct. 2, 2013) (finding no legal basis to apply corporate law principles, such as veil piercing, to municipal entities).

[9]   *See, e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99, 2007 Del. LEXIS 227, at *16-18 (Del. May 18, 2007) ("It is well established that the directors owe their fiduciary obligations to the corporation and its shareholders.").

7

residual value from the corporation's assets (as opposed to the shareholders when a corporation is solvent).[10] But unlike a private corporation, when a public corporation becomes insolvent there is no shift in beneficial ownership from shareholders to creditors that could justify an concomitant shift in fiduciary duties. The ***public*** remains the corporation's sole beneficiary at all times (regardless of its solvency), and its directors retain an unwavering duty to act in the public's best interest.

15. Second, the most influential corporate-law jurisdictions no longer recognize a fiduciary duty to creditors even where a private corporation is insolvent. The Delaware Supreme Court's seminal decision in *Gheewalla*, 930 A.2d 92, is instructive. There, the court held that "[t]he creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against its directors." *Id.* at 103. The Court reasoned:

> Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors, would create uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the [hypothetical] newly recognized direct fiduciary duty to individual creditors. ***Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation***."

*Id.* (emphasis added).

---

[10] *See, e.g.*, *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp. 3d 611, 622 (D.S.C. 2015) ("Several courts have summarized the economic reasoning behind the shift of fiduciary duty from shareholders to creditors upon corporate insolvency. When solvent, a corporation's creditors' rights are protected by the law of contract, whereas shareholders, as the residual owners of the corporation, bear the risk of officers' or directors' mismanagement and are thus owed a fiduciary duty. Upon insolvency, however, creditors displace shareholders as the residual owners of the corporation. Upon insolvency, then, creditors rather than shareholders bear the whole risk of mismanagement and are, therefore, owed the fiduciary duties formerly owed shareholders.") (collecting cases).

8

16. That logic applies with equal force to public corporations. Recognizing that directors of public corporations have fiduciary duties to creditors would create a conflict with their duty to act in the public's best interest. As with private corporations, directors of insolvent public corporations must retain the freedom to "engage in vigorous, good faith negotiations" with creditors if they are to strike the best possible deal *for the public*—as AAFAF intends to do here. Indeed, the public is depending on AAFAF to protect the public interest through the exercise of its statutory authority, whereas "creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights." *Id.* at 99.[11]

### Oversight Board Responsibilities

17. Certain parties asserted at the May 17 Hearing that the Oversight Board is a "trustee" of the Title III Cases, similar to a trustee under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[12] This position is incorrect.

18. Although PROMESA section 301(c) (7) provides that the term "trustee"—when used in sections of the Bankruptcy Code made applicable to the Title III Cases under PROMESA—means the "Oversight Board," the concept of a chapter 11 trustee is not provided for in Title III of PROMESA. Under PROMESA section 315(b), the Oversight Board is the "representative of the debtor" in the Title III Cases, but its powers are limited to "action[s] necessary on behalf of the debtor to prosecute the case of the debtor," such as filing the petition,

---

[11] Even if a corporate analogy were to apply here, all of the government debtors should be considered a single entity with a single set of residual beneficiaries (the public) and different creditor groups. While the creditors may have conflicting interests and agendas, the government entity would not.

[12] For example, counsel to the COFINA Senior Bondholder Coalition stated that: "What PROMESA is is essentially a Chapter 11 trustee case from the get go." May 17 Hr'g Tr. 65:13-14.

9

proposing a plan of adjustment, and otherwise submitting filings in the Title III Cases. PROMESA § 315(a).

19. Unlike appointment of a chapter 11 Trustee, which divests a corporation's board of decision-making authority, the Oversight Board is *expressly barred* from taking control of the Debtors' governmental operations. PROMESA section 303 provides that Title III "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise . . . ." In addition, PROMESA section 301(a) does not incorporate Bankruptcy Code section 1108, which provides that a chapter 11 trustee "may operate the debtor's business." As such, Title III of PROMESA expressly limits the Oversight Board's powers as compared with a chapter 11 trustee because the Oversight Board cannot interfere with the Debtors' governmental operations. Accordingly, the concept of a chapter 11 trustee is not provided for under Title III of PROMESA and the Oversight Board's role and responsibilities in these Title III Cases are distinctly different from those of a chapter 11 trustee under the Bankruptcy Code.

## Notice

20. The Debtor entities have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against each Debtor; (d) the Office of the United States Attorney for the District of Puerto Rico; (e) the Puerto Rico Department of Justice; (f) the Other Interested

Case:17-03283-LTS Doc#:451 Filed:06/24/17 Entered:06/24/17 18:10:47 Desc: Main
Document Page 11 of 12

Parties;[13] (g) counsel to the Oversight Board; and (h) all parties filing a notice of appearance in these Title III Cases. The Debtor entities submit that, in light of the nature of the relief requested, no other or further notice need be given.

### Reservation of Rights

21. AAFAF, on behalf of the Debtor entities, files this Motion without prejudice to or waiver of its rights pursuant to PROMESA sections 303 and 305,[14] and does not by this Motion provide any consent otherwise required by PROMESA section 305.

WHEREFORE, AAFAF, on behalf of the Debtor entities, respectfully submits this Motion for informational purposes only and does not request the Court to enter related relief.

---

[13] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

[14] PROMESA section 305 provides:

LIMITATION ON JURISDICTION AND POWERS OF COURT.

Subject to the limitations set forth in titles I and II of this Act, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the use or enjoyment by the debtor of any income producing property.

**RESPECTFULLY SUBMITTED.**

In San Juan Puerto Rico, this 24th day of June, 2017.

**I HEREBY CERTIFY**: That on this same date, the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record of such filing.

*/s/ John J. Rapisardi*

John J. Rapisardi
Suzzanne Uhland
Diana M. Perez
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s/Andrés W. López*
Andrés W. López
USDC No. 215311
**THE LAW OFFICES OF
ANDRÉS W. LÓPEZ, P.S.C.**
902 Fernández Juncos Ave.
San Juan, PR 00907
Tel: (787) 294-9508
Fax: (787) 294-9519

*Co-Attorney for the Puerto Rico Fiscal Agency and Financial Advisory Authority*