# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AAFAF'S OMNIBUS STATEMENT
## CONCERNING MOTION OF DEBTORS FOR ORDER
## APPROVING PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtor entities under the *Puerto Rico Fiscal Agency and Financial Advisory Authority Act*, Act 2-2017 (the "AAFAF Enabling Act"), respectfully submits this omnibus response and reply (the "Statement") to the various bondholder groups and monoline insurers (collectively, the "Objectors") objections to the *Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [D.I. 303] (the "Motion").[2] In support of this Statement, AAFAF respectfully states as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

**A.     A Dual Plan Track Must Be Pursued.**

1. The filing of the Motion predated this Court's recent orders (the "Mediation Orders") establishing a mediation process (the "Mediation Process"),[3] which is to be explained in further detail at the June 28, 2017 (the "June 28 Omnibus Hearing"), and appointing a mediation team.[4] AAFAF strongly supports the Mediation Process and believes the Motion as previously filed by the Oversight Board, which AAFAF supports, should be consistent with and further that process. But it is critical that the overarching goal of these Title III Cases and PROMESA—confirmation of a plan of adjustment—be at the center of the mediation and the principal focus of the parties.

2. AAFAF believes the most effective way to resolve the Commonwealth-COFINA Dispute is for the parties to simultaneously pursue plan negotiations together with the Mediation Process. If certain legal issues cannot be resolved through mediation, then they should be adjudicated pursuant to the procedures provided for in the Motion. In AAFAF's view, however, the Motion addresses significant, but not the only important, legal issues that must be resolved in these cases. The dialogue that must ensue concerning any potential resolution of bondholder disputes, as well as litigation against the Debtors, must start with determining each party's legal rights and remedies as of the date of commencement of each of the Title III Cases. Indeed, the effect of PROMESA and Title III on rights has been ignored by the creditors.

3. During the first month of these Title III Cases, the various bondholder groups have raised every conceivable issue weighing on the outcome of these cases within the context of

---

[3] *See* Order and Notice of Preliminary Designation of Mediation Team Setting Deadline for Objections to Members, *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS (D. P.R. Jun. 14, 2017) [D.I. 329].

[4] *See* Order Appointing Mediation Team, *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS (D. P.R. Jun. 23, 2017) [D.I. 430].

2

an interpleader proceeding.[5] AAFAF believes that much of the litigation confronting the Court at this time would be preempted by adjudication of the claims of certain bondholders regarding their priority status, statutory liens, and special revenue bond status. For example, if the holders of the Commonwealth's general obligation bonds (the "GO Bondholders") are found to have unsecured claims as of the date of commencement of the Commonwealth's Title III Case, then the GO Bondholders' dispute with the holders of COFINA bonds (the "COFINA Bondholders") would be rendered moot because the GO Bondholders would not have a statutory lien or priority claim to all "available resources" of the Commonwealth. Furthermore, if the COFINA Bondholders are declared to be holders of ordinary secured claims, without a statutory lien or special revenue bond status, then their claim to future sales and use tax ("SUT") revenue would be cut off pursuant to section 552(a) of title 11 of the United States Code (the "Bankruptcy Code"), as incorporated into Title III by PROMESA section 301(a).[6]

---

[5] *See The Bank of New York Mellon v. COFINA (In re The Financial Oversight and Management Board for Puerto Rico, as representative of COFINA)*, Adv. No. 17-133-LTS (D. P.R. May 16, 2017).

[6] Bankruptcy Code section 552(a) provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any *security agreement* entered into by the debtor before the commencement of the case." (emphasis added). Importantly, Bankruptcy Code section 552(a) is limited to cutting off liens resulting from a security agreement, such that claims subject to a statutory lien would not be affected. If the COFINA Bondholders are found to have a statutory lien, then their lien will continue unaffected after petition date of the COFINA Title III Case. However, if the COFINA Bondholders are found not to have a statutory lien, then Bankruptcy Code Section 552(a) would cut off their lien rights, and the Debtors could continue to collect post-petition SUT revenue free and clear of the COFINA Bondholders' lien. Even if COFINA is successful in cutting off the COFINA Bondholders' liens under Bankruptcy Code section 552, the COFINA Bondholders will still have a secured claim in the amount of approximately $700 million (*i.e.,* the amount of cash and securities held at The Bank of New York Mellon from SUT revenue collected prior to the petition date for the COFINA Title III Case) and—by operation of Bankruptcy Code section 1111(b), as incorporated into Title III by PROMESA section 301(a)—an unsecured claim for the deficiency amount of approximately $16.6 billion, for which the COFINA Bondholders would receive only their *pro rata* portion of any recovery provided to all general unsecured creditors pursuant to a confirmed plan of adjustment.

3

4. Moreover, in the context of mediation and plan negotiations each of the bondholder constituencies should be presented with their legal downside risk with respect to a plan of adjustment.

5. In that regard, it should be noted that Congress explicitly included the Bankruptcy Code's "cramdown" provisions in Title III so as to give the Oversight Board effective leverage to bring the creditor parties together to settle their disputes. Bankruptcy Code section 1129 was "enacted to encourage 'consensual' reorganization plans" by incorporating cramdown provisions that are "important as a threat to push the parties toward consent. *See, e.g.*, 6 Norton Bankr. L. & Prac. 3d § 113:6. AAFAF believes that the mediation will be a useful tool to encourage parties to avoid the winner-take-all mentality that has pervaded the pending litigation proceedings. In addition, AAFAF believes there is strong precedent to classify the claims of the GO Bondholders and COFINA Bondholders in the manner described above and would allow a proposed plan of adjustment to provide for the treatment of such claims in accordance with the Bankruptcy Code's cramdown provisions, as incorporated into Title III by PROMESA section 301(a).

B. **Reply to Certain Objections to the Motion.**

6. Certain Objectors request for the Court to appoint an independent representative that is selected by the Objectors and owes duties solely to COFINA presupposes that there exists a conflict with respect to the Commonwealth and COFINA fulfilling their respective fiduciary duties in connection with the Commonwealth-COFINA dispute.[7] As asserted by AAFAF in the *Informative Motion of AAFAF on Behalf of the Debtor Entities Regarding Governance and Conflict-of-Interest Issues,* filed contemporaneously herewith, no such conflict exists. Namely,

---

[7] *See*, *e.g.*, Objection of COFINA Senior Bondholders' Coalition to Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute, *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS (D. P.R. Jun. 16, 2017), at 7.

4

under Puerto Rico law, COFINA's directors and other officials do not owe a fiduciary duty to creditors—those duties are owed solely to the Commonwealth and the general public, whose health, welfare, and safety must always be paramount, regardless of COFINA's solvency. *See* 13 L.P.R.A. § 11a; *see also* Law No. 26, April 29, 2017 (H.R. Bill No. 938). Because COFINA owes fiduciary duties solely to the Commonwealth and the general public (and not to its creditors), its interests are perfectly aligned with that of the Commonwealth. Therefore, no conflicts are raised by the Oversight Board's representation of both the Commonwealth and COFINA in these Title III Cases as contemplated by PROMESA.[8]

7. AAFAF, on behalf of the Debtor entities and in accordance with the AAFAF Enabling Act, intends on continuing to represent the interest of the Debtor entities in ongoing litigation. AAFAF should also participate in any settlement discussions in connection with litigation and a plan of adjustment. Accordingly, AAFAF respectfully requests that the order granting the Motion provide that AAFAF is entitled to participate in any settlement and plan negotiations.

## Notice

8. AAFAF has provided notice of this Statement to: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest

---

[8] PROMESA intends for the Oversight Board to represent all Puerto Rico entities and instrumentalities, implicitly recognizing that there is no conflict raised by such representation. *See* PROMESA §§ 5; 101(b)(1) (establishing the Oversight Board for Puerto Rico); 101(d)(1)(A) (authorizing the Oversight board to designate territorial instrumentalities that will be subject to PROMESA). PROMESA, permits the Oversight Board to represent the interest of the Commonwealth and the instrumentalities it designates as covered entities pursuant to PROMESA section 101(d)(1)(A). In recognizing that the Commonwealth and its instrumentalities share a common interest that can be adequately represented by a single Oversight Board, PROMESA is consistent with Puerto Rico law, which provides that instrumentalities of the Commonwealth owe duties solely to the Commonwealth and the general public.

unsecured claims against each Debtor; (d) the Office of the United States Attorney for the District of Puerto Rico; (e) the Puerto Rico Department of Justice; (f) the Other Interested Parties;[9] (g) counsel to the Oversight Board; and (h) all parties filing a notice of appearance in these Title III Cases.  AAFAF submits that, in light of the nature of the relief requested, no other or further notice need be given.

## Reservation of Rights

9. AAFAF, on behalf of the Debtor entities, files this Statement without prejudice to or waiver of its rights pursuant to PROMESA section 305, and does not by this Statement provide any consent otherwise required by PROMESA section 305.

---

[9] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 24th day of June, 2017.

**I HEREBY CERTIFY**: That on this same date, the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record of such filing.

*/s/ John J. Rapisardi*

John J. Rapisardi
Suzzanne Uhland
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s/Andrés W. López*
Andrés W. López
USDC No. 215311

**THE LAW OFFICES OF
ANDRÉS W. LÓPEZ, P.S.C.**
902 Fernández Juncos Ave.
San Juan, PR 00907
Tel: (787) 294-9508
Fax: (787) 294-9519

*Co-Attorney for the Puerto Rico Fiscal Agency and Financial Advisory Authority*