# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, *et al*.<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>Puerto Rico Sales Tax Financing Corporation ("COFINA"),<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This Document Relates to:[2]<br><br>17 BK 3283; 17 BK 3284 |

**PUERTO RICO FUNDS' AND MUTUAL FUND GROUP'S REPLY IN
SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's Title III case number and the last four (4) digits of each Debtor's federal tax identification number are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2] Pursuant to Paragraph 5 of the Joint Administration Order entered in lead Case No. 17 BK 3283-LTS [Dkt. No. 242], this pleading will be filed in both the lead Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS.

**Table of Contents**

Page

TABLE OF AUTHORITIES .................................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................................. 1

ARGUMENT ................................................................................................................................... 3

I. The Commonwealth-COFINA Dispute Meets the Standards for Certification .................. 3

    A. State Law Determines Property Rights in Bankruptcy ............................................3

    B. A Certified Question Need Not Be Case-Dispositive ...............................................4

II. PROMESA Imposes No Impediment to Certification ......................................................... 5

    A. The Title III Court Need Not Resolve Every Issue Relevant to the Cases ..............5

    B. Section 305 of PROMESA Has No Bearing on Certification ................................6

III. Plaintiffs and Defendants in *Lex Claims* Have Standing, and the Case Is Justiciable ........ 6

    A. Movants Have Standing .................................................................................................7

    B. The *Lex Claims* Plaintiffs' Standing Has Not Been Challenged .............................8

    C. The *Lex Claims* Litigation Presents a Justiciable Case or Controversy..................9

IV. "Cause" Exists to Lift the Stay ........................................................................................... 10

    A. The Balance of Harms Favors Granting the Motion.............................................10

    B. Certification Will Produce the Most Expeditious Resolution of the Dispute ........13

CONCLUSION................................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

*Armstrong v. United States*,
    364 U.S. 40 (1960) ................................................................................................................7

*Burgos-Andujar v. Comision Estatal de Elecciones*,
    2017 WL 1656332 (P.R. Apr. 19, 2017) ..............................................................................14

*Butner v. United States*,
    440 U.S. 48 (1979) .............................................................................................................3, 5

*Caplin v. Marine Midland Grace Trust Co.*,
    406 U.S. 416 (1972) ..............................................................................................................7

*Clark v. Martinez*,
    543 U.S. 371 (2005) ..............................................................................................................9

*In re Colonial Realty*,
    516 F.2d 154 (1st Cir. 1975) .................................................................................................4

*E.F. Hutton & Co v. Hadley*,
    901 F.2d 979 (11th Cir. 1990) ..............................................................................................7

*In re Ferrer & Ortiz*,
    File No. 3-14862, Release No. 513 .....................................................................................12

*Gúzman-Vargas v. Calderon*,
    164 D. P.R. 220, 228-229 (P.R. 2005) ...............................................................................3, 5

*Hundley v. Marsh*,
    603 F.3d 95 (1st Cir. 2010) ................................................................................................3, 5

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988) ..................................................................................................7

*In re Master Key Antitrust Litig.*,
    76 F.R.D. 460 (D. Conn. 1977) ...........................................................................................13

*In re MTBE Prods. Liab. Litig.*,
    56 F. Supp. 3d 568 (S.D.N.Y. 2014) ................................................................................5, 14

*NTA, LLC v. Concourse Holdings Co., LLC (In re NTA, LLC)*,
    380 F.3d 523 (1st Cir. 2004) .................................................................................................3

*Peaje Investments, LLC v. Garcia-Padilla*,
    845 F.3d 505 (1st Cir. 2017) ......................................................................................................6

**Statutes**

28 U.S.C. § 1334(e) ......................................................................................................................5

48 U.S.C. § 2121(b)(2) .................................................................................................................4

48 U.S.C. § 2166(b) ......................................................................................................................5

48 U.S.C. § 2195 ...........................................................................................................................6

4 P.R. Laws Ann. § 24s(g) ............................................................................................................5

Movants file this reply in further support of their motion for relief from the automatic stay (the "**Motion**") [lead Dkt. No. 270] and in response to objections (the "**Objections**") filed by (i) the COFINA Senior Bondholders' Coalition [lead Dkt. No. 406], (ii) the Financial Oversight and Management Board [lead Dkt. No. 407], (iii) Ambac Assurance Corporation [lead Dkt. No. 409], and (iv) the GO Group [lead Dkt. No. 415] (together, the "**Objectors**").[3]

### PRELIMINARY STATEMENT

All parties but one agree that the validity of the COFINA structure under Puerto Rico's Constitution is a crucial "gating" issue in these Title III cases: Little progress can be made until this issue has been either settled or litigated to conclusion. *See* Oversight Board Obj. ¶ 1; GO Group Obj. at 1; Senior Bondholders' Coalition Obj. ¶ 1; *but see* Ambac Obj. ¶ 26 n.4. And no one denies that this dispute hinges on an issue of first impression under Puerto Rico's Constitution, the resolution of which is enormously consequential.

The Commonwealth and the Oversight Board have asserted that this GO-COFINA dispute must be resolved before November 1. Otherwise, the Commonwealth says, it will need to raid COFINA's funds to continue to meet its debt obligations.

As our Motion showed, the route most likely to achieve a resolution of this dispute within this timeframe is certification of the central disputed issue – whether the Puerto Rico statutes that created COFINA violate the "available revenues" clause of Puerto Rico's Constitution – to the Puerto Rico Supreme Court, the one court capable of rendering a definitive and final determination of issues of Puerto Rico constitutional law.

Objectors contend that certification will somehow impede efforts to reach a consensual

---

[3] Terms used but not defined herein have the meanings ascribed to them in the Motion. Certain other parties have filed limited responses to the Motion; this Reply should be construed as a response to those other pleadings as well.

- 1 -

resolution. But settlement is facilitated, not impeded, by the prospect of an impending judicial ruling. No other litigation track will focus the parties' minds as intently as a litigation track that makes imminent a ruling by Puerto Rico's highest court – a ruling the parties know (despite the Oversight Board's unsupported argument to the contrary) will definitively resolve the GO-COFINA dispute. No other litigation track will as effectively support the efforts of the eminent mediation team recently appointed by the Court to obtain a COFINA settlement, and potentially a global settlement of these Title III cases.

The Oversight Board's proposed protocol is no substitute. That proposal is riddled with legal defects, as explained in the objections filed by almost every creditor constituency. If approved, the protocol would proceed at too slow a pace due to the time it would take for the newly-appointed "agents" and their newly-hired professionals to get up to speed. And the protocol's proposed litigation path is not likely to spur a prompt settlement given this Court's inability to render a final determination of issues of Puerto Rico constitutional law.

The remaining Objections are technical arguments that do not withstand scrutiny, and many appear to be tactically motivated. Several parties that previously *sought* certification (the Senior Bondholders' Coalition and Ambac) now oppose it in favor of a protocol that would allow an agent selected by senior COFINA bondholders to settle the rights of junior COFINA bondholders without their consent. These Objectors seek to exclude Movants from litigation or settlement of the GO-COFINA dispute, even though Movants have a larger economic stake than any other creditors.[4]

---

[4] The Mutual Fund Group collectively holds over $3.4 billion in accreted principal amount of COFINA bonds, consisting of $743 million senior bonds and $2.7 billion subordinated bonds, as well as $1.8 billion in GO Bonds and other bonds guaranteed by the Commonwealth. The Puerto Rico Funds hold approximately $617 million in accreted principal amount of senior and subordinate bonds. All of these bonds held by the Mutual Fund Group and the Puerto Rico Funds are uninsured.

The Court should not condone such gamesmanship, nor should the Court assume the burden of deciding a fundamental issue of Puerto Rico constitutional law. Instead, the Court should put these cases on a path to a prompt global resolution by granting the Motion.

**ARGUMENT**

Most of the Objectors acknowledge that certification of the "available resources" question to the Puerto Rico Supreme Court may eventually be necessary and desirable. *See* Ambac Obj. ¶ 36; Senior Bondholders' Coalition Obj. ¶ 24 n.13; GO Group Obj. at 12. Nevertheless, the Objectors raise a host of purported technical impediments to certification. These objections lack merit and should be rejected.

**I. The Commonwealth-COFINA Dispute Meets the Standards for Certification**

The Oversight Board and the GO Group contend that the "available resources" question is but one component of the larger "Commonwealth-COFINA Dispute," which they say is a matter of federal, not Commonwealth, law. This is wrong: COFINA's (and its bondholders') entitlement to the Dedicated Sales Tax hinges on the constitutionality of the COFINA structure under Puerto Rico's Constitution, an issue of Puerto Rico law.

**A. State Law Determines Property Rights in Bankruptcy**

Citing only a 42-year-old First Circuit decision that pre-dated the enactment of the modern Bankruptcy Code, the Oversight Board argues that federal, not state, law determines property rights in bankruptcy. Oversight Board Obj. ¶ 28-29. Remarkably, the Board does not identify any federal law that might possibly apply. Nor does the Board mention the almost four decades of Supreme Court and First Circuit authority establishing the now-black letter principle that "a debtor's interest in property is defined by state law." *See, e.g., Hundley v. Marsh*, 603 F.3d 95, 97 (1st Cir. 2010), *citing Butner v. United States*, 440 U.S. 48, 54-55 (1979). "A

- 3 -

bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy." *NTA, LLC v. Concourse Holdings Co., LLC (In re NTA, LLC)*, 380 F.3d 523, 528 (1st Cir. 2004).

The Oversight Board's citation to *In re Colonial Realty*, 516 F.2d 154 (1st Cir. 1975) is inapposite, as well as out of date. Contrary to the Oversight Board's contention, that case had nothing to do with who *owned* property in a bankruptcy case (the debtor or its mortgagee); rather, the issue was who was entitled to *possession* of the property. *See id*. at 158 (ordering turnover of property held by a mortgagee-in-possession). The decision did not purport to extinguish the mortgagee's security interest, but instead strove to "respect[] the property rights of the secured creditors." *Id*. at 159.

Moreover, the outcome in *Colonial Realty* was dictated by the First Circuit's concern that laws on the subject of bankruptcy should be "uniform" throughout the land, as mandated by the Bankruptcy Clause of the U.S. Constitution, which requires "uniform laws on the subject of Bankruptcies." *Id*. at 158. Such concerns are inapplicable to PROMESA, which was enacted not under the Bankruptcy Clause, but instead under the Territories Clause, which contains no similar uniformity requirement. *See* 48 U.S.C. § 2121(b)(2).

Thus, even if Puerto Rico law were somehow "idiosyncratic" (an unsupported contention), it is determinative of Movants' rights to the Dedicated Sales Tax. Any other holding would raise serious Fifth Amendment concerns.

B.    A Certified Question Need Not Be Case-Dispositive

The Puerto Rico law issue is dispositive here. But even if resolution of the "available resources" question were somehow not entirely dispositive as to ownership of the Dedicated Sales Tax, this would not defeat certification. While older cases cited by the Oversight Board

- 4 -

and the GO Group established fairly strict limits on certification, the newer Judiciary Act in 2003 loosened those rules.[5] 4 P.R. Laws Ann. § 24s(g). The Puerto Rico Supreme Court has since held that the rule against certification of a "mixed question" of federal and state law was "overcome with the passage of the new Judiciary Act," which "substantially broadened the power of [the Supreme Court] to accept requests for certification made by United States courts." *Gúzman-Vargas v. Calderon*, 164 D. P.R. 220, 228-229, ___ P.R. Off. Trans. ___, ___ (P.R. 2005) (per curiam) (unpublished official translation). Thus, the "Puerto Rico Supreme Court, and the rules of the court, are clear that the issue to be decided does not need to be outcome-determinative for every party to the case and for every issue in the case." *In re MTBE Prods. Liab. Litig.*, 56 F. Supp. 3d 568, 575 (S.D.N.Y. 2014). This is particularly true here, where the issue is one of unprecedented importance to Puerto Rico.

## II. PROMESA Imposes No Impediment to Certification

The Oversight Board contends that various PROMESA provisions stand in the way of certification. A straightforward reading of those provisions confirms that they do not.

### A. The Title III Court Need Not Resolve Every Issue Relevant to the Cases

Citing section 306(b) of PROMESA, 48 U.S.C. § 2166(b), the Oversight Board argues that the Title III Court has exclusive jurisdiction over the Commonwealth-COFINA Dispute. Oversight Board Obj. ¶¶ 33, 45. But PROMESA's conferral of "exclusive jurisdiction of all property . . . of the debtor" does not mean the Court is powerless to certify a question of local law. Indeed, 28 U.S.C. § 1334(e) contains a nearly identical jurisdictional provision applicable to Title 11 bankruptcy cases, and yet the First Circuit – in reliance on *Butner* – has still seen fit to certify an issue of state property law in the context of a bankruptcy case. *See Hundley*, 603 F.3d

---

[5] All of the cases cited by the Oversight Board (at ¶¶ 34-35) and the GO Group (at note 8) predate 2003.

at 97 (citing to *Butner* and certifying question of spouses' respective interests in jointly-filed tax refund to the Massachusetts Supreme Judicial Court).[6]

### B. Section 305 of PROMESA Has No Bearing on Certification

The Oversight Board contends that certification would violate the jurisdictional provisions of section 305 of PROMESA. But whatever protections section 305 may confer, it cannot prohibit a secured creditor from establishing the validity of its lien. This would create serious Fifth Amendment issues, which the Court should avoid. *See Peaje Investments, LLC v. Garcia-Padilla*, 845 F.3d 505, 511 (1st Cir. 2017). The Oversight Board's reading of section 305 is also inconsistent with section 407 of PROMESA, which expressly contemplates creditor suits to enforce the property rights of an instrumentality and its creditors. *See* 48 U.S.C. § 2195.

Moreover, each of the Debtors' specific contentions as to the subsections of section 305 is incorrect. *First*, the decision whether to litigate or settle the Commonwealth-COFINA Dispute is not at the "heart of" the Commonwealth's political powers. To the contrary, the Puerto Rico Constitution specifically contemplates that holders of general obligation bonds may sue to enforce the proper application of "available resources." P.R. Const. Art. VI, § 2. *Second*, litigating the dispute does not "*interfere*" with the property or revenues of either Title III debtor. Rather, the debtor that prevails will have had its property interest in the Dedicated Sales Tax *vindicated*, and the debtor that loses will have had no property interest to protect.

### III. Plaintiffs and Defendants in *Lex Claims* Have Standing, and the Case Is Justiciable

Various Objectors contend that (i) Movants lack standing, (ii) the *Lex Claims* plaintiffs

---

[6] The GO Group contends that, because this Court has responsibility for the Title III cases, it is "uniquely situated to weigh the costs of certification against any benefits the procedure might produce." GO Obj. at 11; *see also* Ambac Obj. ¶ 36 (noting the adjudication of the dispute should be determined by a judge who "lives and breathes" the "complicated dynamics" of the case). As noted in the Motion (at note 4), Movants have no objection to a transfer of the *Lex Claims* litigation to this Court pursuant to PROMESA section 306(d)(3).

lack standing, and (iii) the *Lex Claims* litigation does not present a live case or controversy. Each of these arguments is wrong.

### A. Movants Have Standing

The Oversight Board argues that Movants, as creditors of COFINA, must first seek derivative standing before asserting a claim against the Commonwealth (or its creditors) on COFINA's behalf. Oversight Board Obj. ¶ 39-42. But Movants' claims are not derivative of COFINA's. As *secured* creditors of COFINA, Movants have a direct property interest in the Dedicated Sales Tax. *See Armstrong v. United States*, 364 U.S. 40, 48 (1960) ("The total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment taking.") (internal quotation marks omitted).[7]

Movants are entitled to protect this property interest, regardless of whether COFINA itself also may have claims against the Commonwealth. Indeed, COFINA bondholders are the principal parties in interest in a Commonwealth-COFINA dispute. As set forth in Movants' objection to the Oversight Board's motion for approval of a litigation-and-settlement protocol, the vast majority of Dedicated Sales Tax received by COFINA in any given year (some 94%) is used to pay debt service on COFINA Bonds. *See Objection of Mutual Fund Group and the Puerto Rico Funds to Debtors' Motion for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (the "**Protocol Objection**") [lead Dkt. No. 372], at 3.

---

[7] Indeed, no other party could constitutionally assert (or settle) the COFINA bondholders' claims. *See, e.g., E.F. Hutton & Co v. Hadley*, 901 F.2d 979, 985-87 (11th Cir. 1990) (bankruptcy trustee lacks constitutional and statutory standing to assert claims particular to debtor's creditors) (citing, inter alia, *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 643-44 (2d Cir. 1988) (holding that "litigants in federal court are barred from asserting the constitutional and statutory rights of others," and that these "prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context").

### B. The *Lex Claims* Plaintiffs' Standing Has Not Been Challenged

Although no party to the *Lex Claims* litigation has yet sought to dismiss the plaintiffs' claims on this ground, several Objectors contend that plaintiffs' claim to the Dedicated Sales Tax may eventually be dismissed because it now belongs to the Commonwealth. *See* Senior Bondholders' Coalition Obj. ¶¶ 32-34; Ambac Obj. ¶¶ 28-29. Of course, the *Lex Claims* plaintiffs would oppose dismissal, and they would have non-trivial grounds for doing so.[8]

However, this Court need not decide whether a future motion to dismiss the *Lex Claims* plaintiffs' claims for lack of standing would prevail, because such a dismissal would not end the *Lex Claims* action. As noted in Point III.A, COFINA bondholders have standing to sue the Commonwealth even if GO bondholders do not: As secured creditors, they are entitled to vindicate their property rights by suing the Commonwealth for taking their collateral. If a motion were filed to dismiss the *Lex Claims* plaintiffs' claims for lack of standing, Movants would respond by moving to amend their answers to add cross-claims against the Commonwealth, and these claims would be immune to any attack on standing grounds.

---

[8] Objectors erroneously assume that the *Lex Claims* litigation involves only claims against *COFINA*. *See* Senior Bondholders' Coalition Obj. ¶ 32 ("a claim against COFINA would belong to the Commonwealth – not to any Commonwealth creditor"); *id*. ¶ 21. In fact, the *Lex Claims* plaintiffs have sued the Commonwealth as well, pursuant to Article VI, section 2 of the Puerto Rico Constitution. *See* P.R. Const. Art. VI, § 2 ("The Secretary of the Treasury may…apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof … *at the suit of any holder of bonds* or notes issued in evidence thereof.") (emphasis added). The *Lex Claims* plaintiffs argue that their constitutional claim against the Commonwealth gives them standing, independent of any claims the Commonwealth may have against COFINA. *See, e.g.*, Reply Memorandum of Law in Support of Motion of the Ad Hoc Group of General Obligation Bondholders for Leave to Intervene at 3, *Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corp.*, Adv. No. 17-133 [Dkt. No 184].

It bears note that, even if the *Lex Claims* plaintiffs were to prevail on this argument, this would not mean they have standing to intervene in the interpleader litigation currently pending before this Court. The interpleader involves cash in the hands of Bank of New York Mellon. The Ad Hoc GOs do not have a lien that follows "available resources" after they are paid to other parties (indeed, one of the Ad Hoc GOs just applied to be a member of the Commonwealth's *Unsecured* Creditors' Committee). Just as every Commonwealth trade creditor is entitled to retain its payments from funds that once were, unquestionably, "available resources," so Bank of New York Mellon is entitled to retain – and the COFINA bondholders are entitled to receive – monies received even if these were once "available resources."

### C. The *Lex Claims* Litigation Presents a Justiciable Case or Controversy

The GO Group and Ambac contend that the *Lex Claims* litigation does not present a live case or controversy, pointing primarily to the fact that the *Lex Claims* plaintiffs are not seeking to pursue their claims. *See* GO Group Obj. at 9-10; Ambac Obj. ¶¶ 24-26, 31. This is simply incorrect: Defendants, including Movants, have outstanding motions for judgment on the pleadings and for certification to the Puerto Rico Supreme Court. The *Lex Claims* plaintiffs have not sought to voluntarily dismiss the case, nor could they dismiss their claims without leave of court. The plaintiffs cannot, by their own inaction, prevent others from moving forward with pending motions.[9]

The GO Group contends that Movants' request for partial stay relief is a "highly artificial procedure" to resolve a legal issue "in the abstract." GO Group Obj. at 9-10. But limited stay relief is common in bankruptcy, and it makes perfect sense here, where all that is needed to advance these Title III cases is a ruling on the "available resources" question. The certification motions arose in the natural course of litigation, well before the commencement of these Title III cases, and do not address a legal issue "in the abstract." To the contrary, the certification motions seek to resolve the GO Group's claim that "[r]evenues arising from collection of the Commonwealth's SUT are 'available resources'. . . ." Second Amend. Compl. at ¶ 153, *Lex Claims v. Commonwealth of Puerto Rico*, No. 16-cv-02374 (Oct. 6, 2016).

Nor will the *Lex Claims* litigation become moot in the coming months, as the GO Group

---

[9] Ambac also contends that certification would "flout" the doctrine of "constitutional avoidance" by forcing the litigation of a constitutional question that may never need to be resolved. Ambac Obj.¶ 30; *see also id*. ¶¶ 6, 24. But that doctrine is primarily a canon of construction, a "tool for choosing between competing plausible interpretations of a statutory text," *Clark v. Martinez*, 543 U.S. 371, 381 (2005), and Ambac cites no cases in support of the view that it can be used to effect a stay of litigation. In any event, neither Ambac (which separately argues that certification "may be warranted in the appropriate context," *id*. ¶ 3) nor any other party has explained how the dispute over COFINA's constitutionality could possibly be "avoided" in these cases, except by settlement – and as noted, certification is the procedural path most likely to facilitate settlement.

- 9 -

contends. GO Group Obj. at 10. It is true that certain of the *Lex Claims* plaintiffs' claims focus on the impact of the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act. But not all of them do. As the GO Group acknowledges, their complaint also asserts causes of action for "declaratory relief regarding the invalidity of the purported assignment of portions of the revenues derived from the Commonwealth's [Dedicated Sales Tax] to COFINA" (GO Group Obj. at 6 n.4) – claims that will not become moot.

## IV. "Cause" Exists to Lift the Stay

Objectors advance two principal arguments in response to Movants' showing (Mot. at 8-14) that "cause" exists to lift the stay under the traditional *Sonnax* analysis: that the balance of harms weighs against stay relief, and that the Oversight Board's proposed protocol is a superior alternative to stay relief. Neither of these contentions holds water.

### A. The Balance of Harms Favors Granting the Motion

#### (i) Movants Will Suffer Harm Absent Stay Relief

The Oversight Board argues that Movants have not shown particularized harm to themselves justifying stay relief. Oversight Board Obj. ¶ 52. In fact, Movants stand to suffer substantial harm.

The Commonwealth claims to need a resolution of the ownership of the Dedicated Sales Tax by November 1, at which point it says it must raid COFINA to fund its illegal Fiscal Plan.[10] The bona fides of the November 1 deadline are in question given the Commonwealth's recent report of extra $800 million cash on hand,[11] but the Commonwealth's need to either change its

---

[10] The Oversight Board says it may cause COFINA to loan funds to the Commonwealth after November 1, but it is not clear how such loans would be secured. Protocol Mot. ¶ 31. The Oversight Board-certified Fiscal Plan appears to show that the Commonwealth will have no revenues available to repay such loans if COFINA's validity is upheld.

[11] The Fiscal Plan projected $295 million of cash on hand as of June 30, 2017; the Commonwealth's June 12, 2017 Treasury Single Account Cash Flow Report shows projected cash on hand at $1.15 billion.

budget or raid COFINA's funds to support its current budget will build as the fiscal year progresses. Thus a process for resolving the dispute must be initiated now. Movants will be prejudiced if they are forced to litigate that issue on an expedited basis upon the Commonwealth's giving of a 30-day notice of its intent to take COFINA's funds.[12]

In addition, the Oversight Board and certain senior COFINA bondholders are seeking to implement a discriminatory litigation-and-settlement protocol. The Board's proposed protocol – which garnered numerous objections – would preclude Movants from litigating or settling the "available resources" question in favor of a designated "agent," who would owe no duties to Movants and would take no positions on their behalf.

These senior COFINA bondholders have since proposed to exclude Movants from the process of selecting the COFINA "agent," thereby compounding the potential harm Movants face. *See Objection of COFINA Senior Bondholders' Coalition to Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [lead Dkt. No. 374], at ¶¶ 5-8; *Ambac Assurance Corporation's Objection to Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [lead Dkt. No. 375] at ¶ 8.

There is no basis for this exclusion of Movants, which hold the largest known amount of COFINA bonds (including almost $1.2 billion in COFINA senior bonds) and thus have the largest interest in the pledged Dedicated Sales Tax of any creditor group:

- The Senior Bondholders' Coalition contends that the Mutual Fund Group is conflicted because its members hold GO bonds as well as COFINA bonds. However, no party could plausibly dispute that the Mutual Fund Group has been assiduous in its defense of the COFINA structure, having repeatedly litigated on COFINA's behalf in the *Lex Claims* litigation and these Title III cases, and having negotiated for COFINA

---

[12] For this reason, Ambac's suggestion that resolution of the "available resources" issue should be deferred until after conclusion of the pending interpleader action initiated by The Bank of New York Mellon must be rejected. Under the scheduling order entered by the Court, that litigation is not scheduled to be fully briefed until the fall.

in the pre-petition mediation before Judge Gropper, as well as at countless meetings with the Commonwealth, the Oversight Board, the GO bondholders, and the very senior creditors who now challenge their commitment. Moreover, exclusion of the Mutual Fund Group would preclude the single largest creditor group in these Title III cases from litigating or settling what all parties recognize as the central issue in the cases.[13]

- The senior bondholders' attempt to exclude the Puerto Rico Funds from the process of selecting the proposed COFINA fiduciary rests on a demonstrably spurious allegation: that the Puerto Rico Funds have engaged in "misrepresentations and omissions of material facts to numerous retail customers in Puerto Rico." Senior Bondholders' Coalition Obj. at ¶ 7. The Senior Bondholders' Coalition omits to mention two critical facts, each of which puts the lie to this allegation:

  - *First*, the Puerto Rico Funds had no involvement in the arbitrations and SEC enforcement proceedings referenced by the Senior Bondholders' Coalition. Those proceedings involved allegations against an entirely different entity.

  - *Second*, the Senior COFINA Bondholders' Coalition either knows or should know that the allegations it cites have been litigated and determined to be entirely without merit. The Senior COFINA Coalition states that "UBS settled with the SEC, agreeing to pay fines and disgorge funds." *Id*. at 4-5, ¶ 7. What the Senior COFINA Coalition leaves out is that despite the settlement these claims were taken to trial (by two UBS employees whose conduct was the basis of the allegations and who did not settle). After a 13-day trial the SEC's Chief Administrative Law Judge found that **"[t]here is not one bit of evidence that UBS PR [or the two individual employees] engaged in conduct to mislead or a scheme to mislead investors."**[14] The opinion goes on to find no culpability on the part of the employees or UBS PR and to dismiss all claims.

Regardless of whether the senior COFINA bondholders succeed in excluding Movants from the protocol, they have now declared their agenda: to "settle" the Commonwealth-COFINA litigation by surrendering revenues that would otherwise go to pay junior COFINA

---

[13] The Mutual Fund Group is comprised of primary market purchasers of municipal bonds, including some of the largest such purchasers in the U.S. In contrast, both the GO Group and the Senior Bondholders' Coalition are comprised almost entirely of hedge funds and other secondary market (i.e., distressed) purchasers. As holders of $1.8 billion in GO bonds, the Mutual Fund Group believes the hedge funds' attack on the COFINA structure is not only bad for Puerto Rico, but also counterproductive for GO holders themselves: An unwinding of the COFINA structure would further shake investor confidence in Puerto Rico, thereby decreasing GO recoveries. But now that these attacks on the COFINA structure have been brought, it is imperative that the Puerto Rico Supreme Court put these questions to rest and restore investor confidence by sustaining the constitutionality of COFINA.

[14] Initial Decision Dismissing Proceeding at 93, In re Ferrer & Ortiz, File No. 3-14862, Release No. 513 (Oct. 29, 2013) (emphasis supplied), *available at* https://www.sec.gov/alj/aljdec/2013/id513bpm.pdf.

bonds, without Movants' participation or consent – thus denying Movants their statutory and constitutional right to adequate protection.[15] This proposed protocol makes relief from the stay to pursue certification more pressing than ever.

### (ii) The Debtors Will Not Be Harmed By Stay Relief

The Oversight Board contends that lifting the stay will harm the Debtors because it will (i) reduce the likelihood of a consensual settlement, (ii) require the Debtors to participate in the certification process, and (iii) allow Movants to resolve litigation that is better left to representatives (the "agents") of the Debtors. Oversight Board Obj. ¶ 53; *see also* Senior Bondholders' Coalition Obj. ¶ 30 (suggesting, without support, that certification would force a "binary resolution" of the Commonwealth-COFINA Dispute).

These contentions are meritless. *First*, the prospect of a decision from the Puerto Rico Supreme Court will *facilitate* settlement, not doom it. *See, e.g.*, *In re Master Key Antitrust Litig.*, 76 F.R.D. 460 (D. Conn. 1977) ("No one is endowed with the ability to predict the future, particularly the decisions of a majority of the justices of the Supreme Court. But it is precisely this uncertainty that produces settlements."). *Second*, the Debtors will have to expend resources litigating the "available resources" dispute in some forum, regardless. And *third*, Movants are not suggesting that they, alone, would participate in the certification process. All parties with standing to do so can and should be expected to participate.

### B. Certification Will Produce the Most Expeditious Resolution of the Dispute

Various Objectors contend that certification will introduce delay, and that the Debtors'

---

[15] Nothing in the Resolution governing the relative rights of Senior and Junior COFINA bonds deprives junior COFINA holders of their right to adequate protection under both PROMESA and the Fifth Amendment. "Adequate protection is a statutory right that is taken 'very seriously,' and a secured creditor will not be found to have waived its right to adequate protection unless there is more than an ambiguous waiver of that right." *In re Westpoint Stevens*, 600 F.3d 231, 261 (2d Cir. 2010) (citations omitted).

proposed protocol is more likely to lead to an expeditious resolution of these cases. Senior Bondholders' Coalition Obj. ¶ 25; GO Group Obj. at 11. We disagree.

As set forth in Movants' Protocol Objection, the Debtors' protocol would require (i) solicitation of nominees for the "agent" positions, (ii) clearing of conflict of interest restrictions under federal and Puerto Rico law, (iii) selection of agents by the Board, (iv) retention of unconflicted counsel and advisors, (v) familiarization by such agents and advisors with the various claims and arguments at issue, and (vi) commencement and pursuit of an as-yet undetermined litigation or settlement process (which will be subject to substantive and procedural objections). There is no realistic prospect of completing this process by November 1.

Certification of the "available resources" issue – an issue of grave public importance and recognized time-sensitivity – is likely to yield a much faster result. Earlier this year, for instance, the Puerto Rico Supreme Court granted a certification request and decided the case a little over a month later. *See Burgos-Andujar v. Comision Estatal de Elecciones*, 197 D.P.R. ___, 2017 T.S.P.R. 57, 2017 WL 1656332 (P.R. Apr. 19, 2017) (concerning the applicability of the electoral hiring freeze during the plebiscite that was held in June).[16] The entire time from the filing of the certification petition with Puerto Rico Supreme Court to the ruling on the merits was less than 2 months. *See id*. at *1-3 (indicating that the action was filed in early March of 2017, certified on March 30, 2017, and decided on the merits on April 19, 2017).

Certification, moreover, has the benefit of finality. A decision on the constitutionality of the COFINA structure by any federal district court is subject to appeal, and possibly certification many months down the road by the Court of Appeals. *See, e.g., MTBE Prods. Liab. Litig.*, 56 F.

---

[16] This opinion is published in the Spanish language. Movants respectfully request leave from the Court leave to file a certified translation of this opinion within 5 business days.

- 14 -

Supp. 3d at 575 ("If the Commonwealth has to wait until the end of trial to appeal, it will have to appeal to the First Circuit, which will probably certify the issue back to the Puerto Rico Supreme Court."). Certification to the Puerto Rico Supreme Court avoids the potential for such delay.

## CONCLUSION

Movants request that the Court overrule the Objections and enter an order, in the form attached to the Motion, lifting the automatic stay (i) to permit the Certification Motion to be fully briefed, argued and decided by the District Court, and (ii) if the Certification Motion is granted, to allow the Puerto Rico Supreme Court to consider and decide the certified issues.

I hereby certify that, on this same date, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, today June 25, 2017.

By:

| /s/ *Maraliz Vázquez-Marrero* | /s/ *John K. Cunningham* |
|---|---|
| José C. Sánchez-Castro | Glenn M. Kurtz (*pro hac vice*) |
| USDC-PR 213312 | John K. Cunningham (*pro hac vice*) |
| janchez@lsplawpr.com | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez | New York, NY 10036 |
| USDC-PR 215112 | Tel. (212) 819-8200 |
| alavergne@lsplawpr.com | Fax (212) 354-8113 |
| | gkurtz@whitecase.com |
| Maraliz Vázquez-Marrero | jcunningham@whitecase.com |
| USDC-PR 225504 | |
| mvazquez@lsplawpr.com | Jason N. Zakia (*pro hac vice*) |
| | WHITE & CASE LLP |
| LÓPEZ SÁNCHEZ & PIRILLO LLC | 200 S. Biscayne Blvd., Suite 4900 |
| 270 Muñoz Rivera Avenue, Suite 1110 | Miami, FL 33131 |
| San Juan, PR 00918 | Tel. (305) 371-2700 |
| Tel. (787) 522-6776 | Fax (305) 358-5744 |
| Fax: (787) 522-6777 | jzakia@whitecase.com |
| | |
| *Counsel for the Puerto Rico Funds* | *Counsel for the Puerto Rico Funds* |

- 15 -

<div style="display: flex;">

**TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.**

*s/ Manuel Fernández-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com
*s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com
*s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC–PR No. 220,510
E-mail: jvankirk@tcmrslaw.com
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

*s/ Philip Bentley*
THOMAS MOERS MAYER*
AMY CATON*
PHILIP BENTLEY*
DAVID E. BLABEY JR.*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
       acaton@kramerlevin.com
       pbentley@kramerlevin.com
       dblabey@kramerlevin.com
       dbuckley@kramerlevin.com
*(admitted *pro hac vice*)

*Counsel to the Mutual Fund Group*

</div>