# Exhibit A

McCONNELL VALDES LIBRARY

JOSE TRIAS MONGE

Juez Presidente
Tribunal Supremo de Puerto Rico
LL.B., A.M., Universidad de Harvard
J.S.D., Universidad de Yale

# HISTORIA CONSTITUCIONAL DE PUERTO RICO

VOLUMEN III

EDITORIAL DE LA UNIVERSIDAD DE PUERTO RICO
1982

Case:17-03283-LTS Doc#:536-1 Filed:06/29/17 Entered:06/29/17 13:20:03 Desc: Exhibit A Page 3 of 12

ıyoría popular, desde el ıuntos, determinó dejar problema. Sí se le dio ı esta sección como en

E LAS LEYES:

Constitución por la Co- de la Comisión de la auspiciado por la Co- ılo 22 y el inciso sexto ᵌ estilo, la recomenda- como sigue, se adoptó

procedimiento que se ᵌ se determine por la

fue eliminar el torpe a ley, excepto las de tiva al contrario, por esidad imperiosa, en- ación. Ni la Constitu- los de la Unión Ame- una disposición simi- res impuestas por la parlamento local. gados por la Ley de ᵌ dudoso rango cons- ıblea Legislativa. La había originado por e influyentes líderes esidente de la Comi- abiertas hacia acer- ı favor de la Consti-

Méndez y Ferré ar- restituyese el texto

## 6. PROCEDIMIENTO EN CASO DE NO APROBARSE EL PRESUPUESTO: LA SECCION 6 DEL ARTICULO VI

Las recomendaciones sobre este asunto también provinieron de la Comisión de la Rama Legislativa, la cual apoyó una redacción igual a la contenida en la Ley Jones,[64] según enmendada por la Ley Olmsted para resolver el *impasse* de 1909, con ciertas enmiendas.[65] El artículo redactado por la Comisión leía así:

"19. Cuando a la terminación de un año económico no se hubieren aprobado las asignaciones necesarias para los gastos ordinarios del funcionamiento del gobierno y el pago de intereses y amortización de la deuda pública en el siguiente año económico, regirán durante dicho año económico las partidas consignadas en las últimas leyes aprobadas para los mismos fines y propósitos, en todo lo que fueren aplicables, y el Gobernador autorizará los desembolsos necesarios a tales fines." [66]

Iriarte objetó sin éxito las variaciones que se le hacían a la Ley Orgánica.[67] Miguel Angel García Méndez obtuvo, sin embargo, la corrección de un defecto del texto recomendado. Tal como leía el anteproyecto de la Comisión éste podía concebiblemente interpretarse, aunque tal interpretación ciertamente hubiera estado reñida con el historial de la Ley Olmsted, en el sentido que perpetuaba por un año más el presupuesto anterior, no importa cuál fuese la voluntad de la Asamblea Legislativa. La enmienda, tal como quedó finalmente redactada por la Comisión de Estilo, consistió en adicionar la frase final de la sección, que lee "hasta que se aprueben las asignaciones correspondientes".[68] Quedó así claro en el récord el poder de la Asamblea Legislativa y del Gobernador de suspender en cualquier momento un *impasse* surgido en cualquier año sobre la aprobación del presupuesto mediante la adopción de las leyes de asignación correspondientes.

## 7. LIMITACION A LAS ASIGNACIONES: LA SECCION 7 DEL ARTICULO VI

El lenguaje exacto de la actual sección 7 del artículo VI también proviene de una recomendación contenida en la proposición redactada por la Comisión de la Rama Legislativa, que leía así:

"20. Las asignaciones hechas para un año económico no podrán exceder de los recursos totales calculados para dicho año económico, a menos que se

64. Véase el primer párrafo del art. 34.
65. *Infra*, 758 y ss.
66. *Diario de Sesiones*, vol. IV, pág. 2587. Las enmiendas efectuadas por la Comisión a la Ley Orgánica consistían principalmente en añadir una referencia muy necesaria, al pago de intereses y a la amortización de la deuda pública y en delegarle tan sólo al Gobernador, en vez de al Tesorero, previa consulta a aquél, la función de autorizar los desembolsos.
67. *Ibid.*, vol. II, pág. 888.
68. *Ibid.*, vol. II, págs. 890-891.

Case:17-03283-LTS Doc#:536-1 Filed:06/29/17 Entered:06/29/17 13:20:03 Desc: Exhibit A Page 4 of 12

provea por ley de la misma sesión legislativa para la imposición de contribuciones suficientes para cubrir dichas asignaciones."[69]

La fuente de esta disposición fue el último párrafo del artículo 34 de la Ley Jones, el cual, como hemos dicho, se había derogado por la Ley de Bases. En este caso, no obstante, se determinó por voluntad de la mayoría popular repetir la sustancia del mismo, a pesar de su naturaleza limitante y aunque su uso no era muy frecuente en las constituciones estaduales,[70] a fines de mantener el buen crédito de los bonos del pueblo de Puerto Rico y de sus agencias en el mercado de los Estados Unidos, acostumbrado ya a las restricciones que la Ley Jones le imponía al gobierno de Puerto Rico.[71] Igual consideración habría de dictar la redacción de la sección siguiente del artículo VI, la sección 8, la cual comentaremos dentro de breve. En el estudio de estas y otras secciones que podían afectar las finanzas y el crédito de Puerto Rico intervinieron en diversas etapas Rafael Picó, Sol Luis Descartes, Rafael Buscaglia, Cándido Oliveras, Aida Martínez Schettini y otros distinguidos funcionarios que usualmente asesoraban al gobierno en estos asuntos. Igual método se utilizó en otras instancias con otros géneros de asuntos, intentándose en lo posible que la Constitución pasara por el cedazo, al menos en sus aspectos más técnicos, de las personas con mayor experiencia en las diversas materias concernidas.

La Comisión de la Rama Legislativa hizo un cambio muy importante al redactar la sección que ahora discutimos en el antiguo lenguaje de la Ley Orgánica sobre este particular. Lo que prohibía el último párrafo del artículo 34 de dicha Ley era que las asignaciones hechas durante cualquier año económico excediesen de "las rentas totales provistas a la sazón por ley...", mientras que en el texto aprobado por la Convención se habla de no exceder de "los recursos totales calculados para dicho año económico". La diferencia era sustancial. El concepto de "rentas totales" utilizado en la Ley Jones, según explicó Luis Negrón López en el curso de los debates,[72] había llegado a interpretarse como que incluía tan sólo los ingresos contributivos y los excedentes que pudieran estar disponibles de ejercicios económicos anteriores. La nueva frase "recursos totales calculados" era mucho más abarcadora e incluía, en adición a los indicados, ingresos no contributivos, tales como los provenientes de venta de propiedades, ayudas federales, el producto de emisiones de bonos, sobrantes de beneficios obtenidos por corporaciones públicas, etc.

La sección no fue objeto de mayor debate, excepto que Iriarte intentó que se insertase también en la Constitución el párrafo 15 del artículo 34 de la Ley Jones, en que se limitaban los asuntos que podían incluirse en el proyecto de presupuesto general. Tal párrafo era ejemplo del detallismo de la Ley Jones y esta vez la mayoría popular resistió el esfuerzo republicano por asemejar en lo posible la nueva Constitución a la vieja Ley Orgánica.[73]

69. *Ibid.*, vol. IV, pág. 2587.
70. *Notes and Comments...*, pág. 103.
71. El temor a la reacción de los compradores de bonos a la eliminación de este tipo de restricción era parte significativa de la constitución viviente de Puerto Rico en 1952.
72. *Diario de Sesiones*, vol. II, pág. 893.
73. *Ibid.*, págs. 895-899.

8. PRIORIDAD I
LA SECCION

Esta sección,
y perseguía princi
el buen crédito d
Comisión fue el s
"Cuando los
suficientes para
procederá en prir
pública y luego s
norma de priorid
Tan sólo se h
Esta disposic
con la diferencia
alterable por el C
dicha contingenc
ejecutivo y judici
pública..." Como
vención colocó e
Gobernador, el p
circunstancias d
dactó la Ley Jo
embargo, se dep
plena marcha, d
público.[76]
No surgiero
ción.[77] García M
anteproyecto ori
la Ley Orgánica
socialista respal
ción que hacer

9. RESTRICCI
LA SECCIO

Se ha come
cipio de la sepa

74. Así lo indica
*Ibid.*, vol. IV
75. *Loc. cit.*
76. De ahí la co
gen prestata
77. Cf. *Diario d*
78. Véase la Pr
79. Véase la Pr
80. *Ante*, capítu

para la imposición de contri iones."[69]
› párrafo del artículo 34 de la derogado por la Ley de Bases. ›luntad de la mayoría popular ıaturaleza limitante y aunque ·iones estaduales,[70] a fines de ›blo de Puerto Rico y de sus acostumbrado ya a las restric- de Puerto Rico.[71] Igual consi- ción siguiente del artículo VI, breve. En el estudio de estas ıs y el crédito de Puerto Rico Sol Luis Descartes, Rafael ›ttini y otros distinguidos fun- ›rno en estos asuntos. Igual géneros de asuntos, intentán- ›r el cedazo, al menos en sus ›r experiencia en las diversas

n cambio muy importante al l antiguo lenguaje de la Ley el último párrafo del artícu- ›chas durante cualquier año ›vistas a la sazón por ley...", nción se habla de no exceder ño económico". La diferencia ilizado en la Ley Jones, según lebates,[72] había llegado a in- ›os contributivos y los exce- icios económicos anteriores. mucho más abarcadora e in- ontributivos, tales como los derales, el producto de emi- ıidos por corporaciones pú-

excepto que Iriarte intentó ›árrafo 15 del artículo 34 de › podían incluirse en el pro- jemplo del detallismo de la el esfuerzo republicano por a vieja Ley Orgánica.[73]

›s a la eliminación de este tipo tución viviente de Puerto Rico

## 8. PRIORIDAD DE LOS DESEMBOLSOS: LA SECCION 8 DEL ARTICULO VI

Esta sección, como hemos indicado, está íntimamente ligada a la anterior y perseguía principalmente el mismo propósito de proteger y aun acrecentar el buen crédito de los bonos de Puerto Rico.[74] El texto recomendado por la Comisión fue el siguiente:

"Cuando los recursos disponibles para cualquier año económico no sean suficientes para cubrir las asignaciones aprobadas para el mismo año, se procederá en primer término al pago de intereses y amortización de la deuda pública y luego se procederá con los demás desembolsos de acuerdo con la norma de prioridades que la Asamblea Legislativa establezca por ley."[75]

Tan sólo se harían leves cambios de estilo al lenguaje citado.

Esta disposición deriva del párrafo 19 del artículo 34 de la Ley Jones, con la diferencia de que ésta prescribía un orden completo de prioridades, alterable por el Gobernador, y colocaba en primer término, aunque sujeto a dicha contingencia, "Los gastos ordinarios de los departamentos legislativo, ejecutivo y judicial del Gobierno del Estado y los intereses de cualquier deuda pública..." Como puede verse, la disposición finalmente adoptada por la Convención colocó en absoluto primer término, y fuera del alcance del poder del Gobernador, el pago de intereses y la amortización de la deuda pública. Las circunstancias de la constitución real dictaban esta medida. Cuando se redactó la Ley Jones, la deuda pública era irrisoriamente baja. En 1952, sin embargo, se dependía ya fuertemente, con la Operación Manos a la Obra en plena marcha, del mantenimiento y, preferiblemente, la expansión del crédito público.[76]

No surgieron cuestiones de importancia en los debates sobre esta sección.[77] García Méndez, Ferré y otros líderes republicanos apoyaban en su anteproyecto original de constitución la repetición exacta de lo dispuesto en la Ley Orgánica,[78] pero no suscitaron tal asunto en los debates. El sector socialista respaldaba originalmente igual solución, pero tampoco tuvo objeción que hacer a la propuesta popular.[79]

## 9. RESTRICCIONES AL USO DE PROPIEDADES Y FONDOS PUBLICOS: LA SECCION 9 DEL ARTICULO VI

Se ha comentado ya esta sección al discutir la libertad de culto y el principio de la separación de la iglesia y el estado.[80]

---

74. Así lo indica la Comisión en su informe al comentar el art. 21 de su anteproyecto. *Ibid.*, vol. IV, pág. 2587.
75. *Loc. cit.*
76. De ahí la consideración desde 1950 hasta su logro en 1961 de la ampliación del margen prestatario.
77. Cf. *Diario de Sesiones*, vol. III, págs. 1961-1964.
78. Véase la Prop. Núm. 103, art. XXXIX.
79. Véase la Prop. Núm. 94, art. X, sec. 3.
80. *Ante*, capítulo XXXV, 4.

McCONNELL VALDES
LIBRARY

JOSE TRIAS MONGE

Presiding Judge
Supreme Court of Puerto Rico
LL.B., A.M. Harvard University
J.S.D., Yale University

# CONSTITUTIONAL HISTORY OF PUERTO RICO

## VOLUME III

UNIVERSITY OF PUERTO RICO PRESS
1982

Certified to be a true and correct translation from its original.

Aida Torres

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

**6. PROCEDURE IN CASE OF NON-APPROVAL OF THE BUDGET: SECTION 6 OF ARTICLE VI**

The recommendations regarding this matter also originated from the Commission of the Legislative Branch, which supported a text equal to the one contained in the Jones Act,[64] as amended by the Olmsted Act to resolve the *impasse* of 1909, with certain amendments.[6] The article drafted by the Commission read as follows:

"19. When at the termination of an economic year the necessary appropriations for the ordinary expenses of the operation of the government and the payment of the interest and amortization of the public debt in the following economic year have not been approved, there will govern during said economic year the items consigned in the last laws approved for the same goals and purposes, in everything that is applicable, and the Governor will authorize the necessary disbursements to that effect."[66]

Iriarte objected without success the variations that were being made to the Organic Act.[6] Miguel Angel García Méndez obtained, however, the correction of a defect of the recommended text. As the draft of the Commission read, it

---

[64] See first paragraph of Art. 34.

[65] *Infra, 758 et seq.*

[66] *Diary of Sessions,* Vol. IV, page 2587. The amendments made by the Commission to the Organic Act consisted principally in adding a very necessary reference, to the payment of interest and to the amortization of the public debt and in delegating only to the Governor, instead of to the Treasurer, prior consultation with the same, the function of authorizing the disbursements.

[67] *Ibid,* Vol. II, page 888.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 87.723.9488
1 21/15

could conceivably be interpreted, even though said interpretation would have certainly been contrary to the history of the Olmsted Act, in the sense that it perpetuated the prior budget for one more year, regardless of what was the will of the Legislative Assembly. The amendment, as it was finally drafted by the Style Commission, consisted in adding the final phrase of the section, which reads: "until the corresponding appropriations are approved".[68] The power of the Legislative Assembly and of the Governor was left clearly in the record to suspend at any time an *impasse* that arose in any year regarding the approval of the budget through the adoption of the corresponding laws of appropriation.

**7. LIMITATION TO THE APPROPRIATIONS: SECTION 7 OF ARTICLE VI**

The exact language of the current section 7 of Article VI also originates from a recommendation contained in the proposition drafted by the Commission of the Legislative Branch, which reads as follows:

"20. The appropriations made for an economic year may not exceed the total resources calculated for said economic year, unless it is provided by law of the same legislative session for the imposition of sufficient taxes to cover said assignments."[69]

The source of this provision was the last paragraph of Article 34 of the Jones Act, which, as we have stated, had been derogated by the Bases Act. In this case, nevertheless, it was determined by the will of the popular majority to repeat the substance of the same, despite its limiting nature and even though its use was not very frequent

---

[68] *Ibid*, Vol. II, pages 890-891.

[69] *Ibid*, Vol. IV, page 2587.

Certified to be a true and correct translation from its original.

Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

in the constitutions of the states,[70] in order to maintain the good credit of the bonds of the people of Puerto Rico, and of its agencies in the market of the United States, already accustomed to the restrictions that the Jones Act imposed on the government of Puerto Rico.[71] The same consideration would dictate the writing of the following section of Article VI, Section 8, which we will comment briefly. In the study of these and other sections which could affect the finances and the credit of Puerto Rico, there intervened in different phases Rafael Picó, Sol Luis Descartes, Rafael Buscaglia, Cándido Oliveras, Aida Martínez Schettini and other distinguished officials who usually advised the government in these matters. The same method was used in other instances with other types of matters, attempting as far as possible that the Constitution pass through the sieve, at least in its most technical aspects, of the persons with greater experience in the different matters involved.

The Commission of the Legislative Branch made a very important change in drafting the section which we now discuss in the old language of the Organic Act regarding this particular matter. What the last paragraph of Article 34 of said Law prohibited was that the appropriations made during any economic year exceed "the total rents provided pursuant to the law...", while in the text approved by the Convention it talks about not exceeding the "total resources

---

70 Notes and Comments... page 103.

71 The fear to the reaction of the buyers of bonds to the elimination of this type of restriction was a significant part of the constitution the existed in Puerto Rico in 1952.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

calculated for said economic year." The difference was substantial. The concept of "total rents" used in the Jones Act, as explained by Luis Negrón López in the course of the debates,[72] had been interpreted as including only the tax income and the surpluses that could be available from prior economic exercises. The new phrase "total resources calculated" was much more comprehensive and included, in addition to those indicated, non-tax income, such as those originating from the sale of properties, federal aids, the proceeds of the issuance of bonds, the surplus from benefits obtained by public corporations, etc.

The section was not subject to greater debate, except that Iriarte attempted to also insert into the Constitution paragraph 15 of Article 34 of the Jones Act, which limited the matters that could be included in the general budget bill. Said paragraph was an example of the excessive detail of the Jones Act and this time the popular majority resisted the republican effort to make the new Constitution as similar as possible to the old Organic Act.[73]

**8. PRIORITY OF THE DISBURSEMENTS: SECTION 8 OF ARTICLE VI**

This section, as we have indicated, is intimately linked to the prior one and principally pursued the same purpose of protecting and even increasing the good credit of the bonds of Puerto Rico.[74] The text recommended by the Commission was the following:

---

72 Diary of Sessions, Vol. II, Page 893.

73 *Ibid*, pages 895-899.

74 This was indicated by the Commission in its report when commenting on Art. 21 of its draft, *Ibid*, Vol. IV, page 2587.

Certified to be a true and correct translation from its original.

[signature]
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

"When the resources available for any economic year are not sufficient to cover the appropriations approved for the same year, in the first term there will be paid the interest and the amortization of the public debt and then it will proceed with the other disbursements according to the standard of priorities that the Legislative Assembly establishes by law."[75]

Only slight changes will be made to the style of the language cited.

This provision derives from paragraph 19 of Article 34 of the Jones Act, with the difference that it prescribed a complete order of priorities, alterable by the Governor, and placed in the first term, even though subject to said contingency, "The ordinary expenses of the legislative, executive and judicial departments of the Government of the State and the interests of any public debt...." As can be seen, the provision finally adopted by the Convention placed in absolute first term, and beyond the scope of the power of the Governor, the payment of interests and the amortization of the public debt. The circumstances of the real constitution dictated this measure. When the Jones Act was drafted, the public debt was extremely low. In 1952, however, it [the Government] already strongly depended on, Operation Bootstrap was in full swing, the maintenance and, preferably, the expansion of the public credit.[76]

There did not arise issues of importance in the debates on this section.[77] García Méndez, Ferré and other republican leaders supported in their original bill of constitution the

---

[75] *Loc Cit.*

[76] Thus the consideration since 1950 until it was achieved in 1962 of the expansion of the lending margin.

[77] Cf. *Diario de Sesiones*, Vol. III, pages 1961-1964.

exact repetition of what was provided in the Organic Act,[78]

Certified to be a true and correct translation from its original.

[signature]

Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

10/21/15

exact repetition of what was provided in the Organic Act, but they did not present said matter in the debates. The socialist sector originally supported the same solution, but it also had no objection to make to the popular proposal.

**9. RESTRICTIONS TO THE USE OF PROPERTIES AND PUBLIC FUNDS: SECTION 9 OF ARTICLE VI**

This section has already been commented in discussing the freedom of religion and the principle of separation of Church and State.[80]

---

[78] See Prop. No. 103, Art. XXXIX.

[79] See Prop. No. 94, Art. X, Sec. 3

[80] Ante, Chapter XXXV, 4.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

10/21/15