**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

-----------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 343, 353**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH TO MOTION FOR
RELIEF FROM STAY FILED BY ANGELY M. APONTE-PAGÁN
AND JAVIER ANDINO-GAUDÍN [ECF NO. 343]**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 343] (the "Motion") filed by Angely M. Aponte-Pagán and other plaintiffs in the case captioned *Aponte-Pagán, et al. v. Rivera-Aquino, et al.*, Civil No. CC-2016-1153, before the Supreme Court of Puerto Rico, and Javier Andino-Gaudín and other plaintiffs in the case of *Andino-Gaudín, et al. v. Rivero-Cubano,*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

et al., Civil No. K AC2002-5558, before the Court of First Instance of Puerto Rico (collectively, the "Movants").² In support of the Objection, the Commonwealth respectfully requests that the Motion should be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. Less than two months ago, the Oversight Board, as the Debtors' representative pursuant to PROMESA section 315(b), filed a voluntary petition for relief for the Commonwealth under PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").³ Since that time, the Commonwealth has been focused on transitioning into title III.

2. As part of that transition, the Commonwealth is evaluating how best to apply the automatic stay enumerated in Bankruptcy Code sections 362 and 922, made applicable by PROMESA section 301(a), to civil actions filed against the Commonwealth. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200

---

² The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

³ PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

pending and threatened litigation cases against the Commonwealth with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf. To this point, eleven motions to lift the automatic stay have been filed in the Title III Case so far; however, many other plaintiffs may seek similar relief. Rather than evaluating the Motion in isolation, this Court should consider the totality of the circumstances with respect to the litigation docket the Commonwealth faces and the implication of lifting the stay at this juncture of the case. The Commonwealth and its advisors are currently working on proposing a protocol for addressing how to treat all of the prepetition litigation claims asserted against it in the overall context of the Title III Case. The protocol would provide the Commonwealth with the necessary "breathing room" to evaluate these cases but would also allow for the Commonwealth to stipulate (as it has already done) with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous (e.g., agreeing to lift the stay for a movant to pursue claims related to the forfeiture of personal property [ECF No. 272]).

4. Lifting the stay in any one case in the first few months of the Title III Case would open the floodgates for the thousands of prepetition litigation plaintiffs to seek similar relief before this Court, effectively denying the Commonwealth the benefit of the stay and prejudicing the interests of the Commonwealth and its creditors. To that end, the Commonwealth requests that the Court deny the Motion without prejudice to the Movants to re-file the Motion, if needed. While this will not harm the Movants at all, it will allow the Commonwealth the time to assess the Movants' claims along with the rest of the prepetition litigation claims in the overall context

3

of the Title III Case and to establish procedures to lessen the burden on the Commonwealth, its creditors, and this Court.

**OBJECTION**

5. Bankruptcy Code section 362(d)(1) provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[4] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285.

6. The Movants argue that their claims against the Agricultural Enterprises Development Administration (the "ADEA") are not stayed because as a public corporation, the

---

[4] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

4

ADEA is not covered by the Commonwealth's or any other Title III petition. See Motion ¶ 4. The Commonwealth is currently undergoing an evaluation of which of its agencies and instrumentalities are subject to the automatic stay in the Title III Case. While the Commonwealth has not yet made a determination with respect to the ADEA, because part of ADEA's budget is funded from the Commonwealth, any judgment in favor of the Movants would directly impact the Commonwealth as the Commonwealth could be responsible for satisfying such judgment. In addition, it should be noted that the Commonwealth, through the Department of Justice, is responsible for the defense of the ADEA in the underlying actions and the payment of all legal defense fees.

7. As potential prepetition creditors of the Commonwealth, the Movants' claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the Commonwealth to defend the Movants' claims before determination of what that process will look like would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

8. The impact on the Debtors if the Motion were to be granted would outweigh any harm that the Movants would suffer if the automatic stay remains in place. As mentioned above,

5

there are approximately 5,200 pending or threatened litigations against the Commonwealth. Granting the Motion will divert the Commonwealth's attention and resources to defending the Movants' claims in multiple forums and will encourage other creditors to seek similar relief. The Commonwealth should instead be given the proper "breathing room" to focus on assessing its prepetition litigation claims and formulating a process to address each of those claims in the overall context of the Title III Case rather than in a piecemeal fashion. Courts routinely deny motions for relief from stay where granting the motion "may encourage other claimants to file their own stay relief motions." See, e.g., In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Bally Total Fitness of Greater New York, Inc., 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[G]ranting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case . . . ."), aff'd, 411 B.R. 142 (S.D.N.Y. 2009) (citation omitted); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court asbestos suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and

6

detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

9. Balancing of the harms clearly favors denial of the Motion. The large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend the Movants' claims, and the prejudice to interests of other creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III Case. On the other hand, postponing liquidation of the Movants' claims will neither adversely affect the Movants nor promote judicial economy. There is nothing urgent about Movants' claims. Expedition of the claims will not save the Commonwealth any time or money. Instead, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

10. Even in the context of this case, Movants' pending claims of approximately $7 million are substantial. At this point, and in a vacuum where not all litigation against the Commonwealth can be fully assessed, letting such a large claim of this type go forward would not be appropriate. Accordingly, denial of the Motion is appropriate where, as here, prosecution of the underlying litigation impacts the bankruptcy case and prejudices the interests of other creditors.

## CONCLUSION

11. For the foregoing reasons, the Court should grant the Objection and deny the Motion without prejudice to the Movants to re-file the Motion in 180 days, if needed.

Dated: June 29, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*