# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, *et al*.<br><br>            Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17-BJ 3283-LTS |

## MOTION FOR RELIEF FROM *AUTOMATIC STAY*

**TO THE HONORABLE DISTRICT COURT JUDGE LAURA TAYLOR SWAIN**:

COMES NOW the parties in interest, B.P, S.E.; Bahía Park, S.E., (jointly referred to as "Bahía Park"), through the undersigned counsel, and very respectfully, states and prays as follows:

### PRELIMINARY STATEMENT

This Honorable Court should vacate the PROMESA automatic stay with regards to Bahía Park in the prepetition State Court case titled <u>B.P., S.E., Bahía Park, S.E. v. ELA</u>, K2AC 2007-00908, since, among other reasons, the continuation of the constitutional violations and/or irreparable harm against Bahía Park's property rights outweighs the detriment that the Commonwealth of Puerto Rico ("Commonwealth") would suffer if the stay were vacated to address them.

As we will demonstrate below, in the event that this Court does not grant the relief requested herein, Bahía Park will suffer irreparable and non-pecuniary harm, inasmuch as it would be deprived of its due process right to have the Puerto Rico Superior Court, San Juan Part, subject to appellate review, determine (i) whether it has suffered an inverse condemnation from

the Commonwealth; and (ii) in the event that a condemnation has taken place, what would be the amount of constitutionally mandated just compensation to which Bahía Park would be entitled from the Commonwealth. The resolution of this legal controversy is indispensable to prevent irreparable harm by allowing the determination of Bahía Park's liability claims rights against the Commonwealth and prevents an instance in which the application of the automatic stay would proscribe Bahía Park from adequately protecting its property rights arising under the Fifth Amendment of the United States and the Commonwealth's Constitutions.

Moreover, the Commonwealth will suffer no harm as a result of the lifting of the automatic stay, since the same (i) will not disrupt the Commonwealth's processes for managing the Commonwealth; and (ii) will not interfere with the Commonwealth's ability to provide essential services. In other words, vacating the automatic stay in this case will not harm the Commonwealth or the PROMESA process and will not undermine the comprehensive, consolidated and restructuring approach that the statute was ultimately designed to facilitate.

On October 29, 2007, Bahía Park filed an inverse condemnation suit against the Commonwealth in order to request just compensation for the regulatory taking of 685, 706.93 square meters of land located in the Municipality of Cataño, Puerto Rico. After almost ten (10) years of litigation, and for reasons beyond its control, Bahía Park's judicial claims are still at a preliminary stage, and the State Court has not issued a ruling as to whether or not the Commonwealth executed a taking with regards to Bahía Park's real property. Recently, a new Superior Judge was assigned to the case and proceeded proactively in order to resolve the pending controversies. Specifically, as of this date, the parties are awaiting for the State Court's resolution of multi-argument dispositive motions filed by the Commonwealth and a motion for partial summary judgment filed by Bahía Park. Notwithstanding, on May 24, 2017, the

Commonwealth filed a notice of the PROMESA automatic stay before the State Court and, thus, the proceedings have been paralyzed.

The enforcement of the PROMESA stay causes constitutional injuries to Bahía Park, since it places its property and creditor rights in an indefinite state of legal uncertainty, due to the fact that the State Court is currently proscribed from determining (i) whether Bahía Park's real property has been the subject of a taking by the Commonwealth; and (ii) how much constitutionally mandated just compensation the Commonwealth will have to pay to Bahía Park. The resolution of these two (2) legal controversies is determinative for Bahía Park's creditor rights, since, in the event that the state court rules in its favor, it would become a constitutionally protected creditor of the Commonwealth.

Furthermore, should this Honorable Court determine that the automatic stay is applicable to determination by the State Court on whether Bahía Park's constitutionally protected property rights have been transgressed, it would (i) be perpetuating the legal limbo that Bahía Park has involuntarily been in for the past thirteen (13) years; and (ii) preclude Bahía Park from enforcing its rights as a creditor under the instant PROMESA Title III case, or as non-dischargeable creditor of the Commonwealth.

In view of the foregoing, in order to prevent the continuation of Bahía Park's constitutional injuries, it is respectfully requested that this Honorable Court enter an Order lifting the automatic stay in order for the San Juan Superior Court to resolve (i) whether Bahía Park has been the subject of an inverse condemnation; and (ii) if so, what is the amount of just compensation that Bahía Park is constitutionally entitled to.

## I. JURISDICTION

This Honorable Court has jurisdiction to grant the relief sought in the instant Motion pursuant to section 362 (d) of title 11 of the United States Bankruptcy Code, which applies to this proceeding pursuant to section 301 of the *Puerto Rico Oversight, Management, and Economic Stability Act of 2016* ("PROMESA"). 48 USC §§ 2161. Bahía Park files this Motion under the case management procedures applicable in the captioned case and Rule-4001-1 of the Local Bankruptcy Rules of Bankruptcy Court for the District of Puerto Rico.

## II. PROCEDURAL BACKGROUND

1. Bahía Park's inverse condemnation Complaint against the Commonwealth of Puerto Rico was filed on October 29, 2007. The basis for the Complaint is the fact that the Commonwealth effectuated a regulatory taking on Bahía Park's property by virtue of Executive Order OE 2004-049, which was approved on August 27, 2004. The purpose of the Executive Order was to declare a natural reserve in the geographical area denominated as "Ciénaga Las Cuchillas". This natural reserve declaration impaired Bahía Park's property rights, including plans for development duly approved by, among other entities, the Puerto Rico Planning Board. The aforementioned case is titled BP, SE, Bahía Park, SE v. ELA, K2AC 2007-00908.

2. As of this date, the Puerto Rico Superior Court has not made a determination as to (i) whether Bahía Park has been the subject of an inverse condemnation; and (ii) if so, what would be the amount of constitutionally mandated just compensation that Bahía Park would be entitled to.

3. PROMESA was enacted on June 30, 2016.

4. On May 3, 2017, the Oversight Board filed a Title III petition before this Honorable Court.

5. On May 24, 2017, the Commonwealth filed a Notice of Automatic Stay in Bahía Park's state case.

6. The Commonwealth alleges that, as of this date, the PROMESA automatic stay under Title III applies to all actions against the Government without exception, since the "Commonwealth is evaluating how best to apply the automatic stay… to civil actions against the Commonwealth in Puerto Rico's court system". *See* Docket No. 439 at page 2, paragraph 2.

7. Furthermore, the Commonwealth has informed this Honorable Court that "the Commonwealth and its advisors are currently working on proposing a protocol for addressing how to treat all of the prepetition litigation claims asserted against it in the overall context of the Title III Case". *Id* at page 3, paragraph 3. According to the filing at Docket No. 439, the alleged "protocol" would allow the Commonwealth to "evaluate these cases… and to stipulate with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous". *Id*.

### III. APPLICABLE LAW

#### A. PROMESA and the Automatic Stay Provision

On June 30, 2016, the President of the United States signed PROMESA into law. Said legislation seeks to tackle the calamitous fiscal emergency in Puerto Rico and is designed to institute a "comprehensive approach to [Puerto Rico's] fiscal, management and structural problems and adjustments… involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA § 405(m)(4). The statute established a seven-member Oversight Board ("Board") for Puerto Rico with the purpose of providing a method for the island to achieve fiscal responsibility and access to the capital markets. *Id*. at §§ 101(b)(1),

In the relevant part, among PROMESA's provisions is an automatic stay of all liability-related litigation against the Commonwealth, which is applicable once the Board files a Title III petition to commence debt-adjustment proceedings under the legal framework set forth in the statute. *Id* at § 405(d). Under PROMESA, the Honorable Court may, however, grant relief from the stay to "party in interest either "for cause shown", or "to prevent irreparable damage" to the party's interest in property.

In the recent case of <u>Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla *et al.*</u>, 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of PROMESA. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "**certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so**". (Emphasis Added).

Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), states as follows

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

In defining what constitutes "cause" for relief from the automatic stay in the context PROMESA, the First Circuit took into account the (i) judicial interpretations of the term within

the context of section 362 of the United States Bankruptcy Code ("Code"), 11 USC § 362[1], and also, (ii) additional considerations related to the particular circumstances of the PROMESA legal framework. The Court began by noting that section of the Code provides that courts may grant relief from the automatic stay to a party in interest for "cause", but the statute also fails to expressly define how the term must be construed and applied. 11 USC § 362(d)(1); Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al., 217 F. Supp. 3d 508, 517 (1st Cir. 2016).

In *Brigade Leveraged,* the First Circuit reiterated the discretionary nature of the decision to grant relief on a case-by-case basis. See Claughton v. Mixton, 33 F. 4, 5 (4th Cir. 1994) (noting that Congress "has granted broad discretion to bankruptcy courts to lift the automatic stay and the courts must determine when discretionary relief is appropriate on a case-by-case basis".) The Court established that "the process of evaluating whether there is sufficient "cause" to vacate the automatic stay requires the court to engage in an equitable, case-by-case balancing of the various

---

[1] Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F. 2d 1280 (2d Cir. 1990). In the instant case, the Second Circuit Court of Appeals enumerated the twelve factors that should be analyzed for purposes of evaluating relief from the automatic stay:

(1) **Whether relief would result in a partial or complete resolution of the issues**;
(2) Lack of any connection with or interference with the bankruptcy case;
(3) Whether the other proceeding involvers the debtor as a fiduciary;
(4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) Whether the debtor's insurer has assumed full responsibility for defending it;
(6) Whether the action primarily involves third parties;
(7) Whether litigation in another forum would prejudice the interests of other creditors;
(8) Whether the judgment claim arising from the other action is subject to equitable consideration;
(9) Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) The interests of judicial economy and the expeditious and economical resolution of litigation;
(11) Whether the parties are ready for trial in the other proceedings; and
(12) **Impact of the stay on the parties and the balance of harms**.

Not all of the factors are relevant in every case and the Court need not assign equal weight to each factor. Mazzeo v. Lenhart (In re Mazzeo), 167 F. 3d 139, 143 (2d. Cir. 1999); In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). See also C & A, S.E. P.R. Solid Waste Magmt., 369 B.R. 87, 94-95 (D.P.R. 2007).

harms at stake. Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla *et al.*, 217 F. Supp. 3d 508, 518 (1st Cir. 2016); *See*, *e.g.*, Peerless Ins. Co v. Rivera, 208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from the continuation of the stay would outweigh any harm that might be suffered be the debtor…if the stay is lifted."); In re Turner, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("**Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor**."); In re Harris, 85 BR 858, 860 (Bankr. D. Colo. 1998) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and the "hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay."). (Emphasis Added).

In view of the foregoing, the First Circuit held that the Court's "ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted". Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla *et al.*, 217 F. Supp. 3d 508, 518-519 (1st Cir. 2016).

Even though the First Circuit held that the PROMESA stay is interpreted according the case law arising under section 362 of the Code, it stated that "the concept of "cause" embraced by the Court for purposes of the PROMESA stay need not precisely mirror that adopted in the bankruptcy context". *Id* at 520.

B. **Bankruptcy and the Fifth Amendment**

Article II, Section 7, of the Puerto Rico Constitution, P.R. Const. Art. II, § 7, affirms, "[T]he right to life, liberty and enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. **No person shall be deprived of his liberty without due process of law**". (Emphasis Added). Furthermore, Article II, Section 9, of the Puerto Rico Constitution states that, "**private property shall be taken or damaged for public use except upon payment of just compensation and in the manner provided by law**". (Emphasis Added).

The Puerto Rico Supreme Court has clearly established that a non-physical regulatory taking or inverse condemnation occurs when the governmental entity imposes restrictions, limitations or reserves that are so onerous that the property becomes subject to the exclusive control of the government. See Nichols, On Eminent Domain § 6.3, Vol. II, Ed. 1967. The Puerto Rico Supreme Court in the following cases has recognized this form of inverse regulatory condemnation: ELA v. Northwestern Constr. Inc., 103 DPR 377 (1975) (explaining that "inverse condemnation actions are so-named because they are initiated by the property owner, not by the Government); Hampton Development Corp. v. ELA, 139 DPR 877 (1996); and Culebra Enterprises, Inc. v. ELA, 143 DPR 935 (1997).

In other words, just as there is a federal mechanism by which property owners can challenge regulatory takings effectuated without compensation, so too, is there a homologue in Puerto Rico's legal system. The Puerto Rico Supreme Court made its first mention of "inverse condemnation" actions in Heftler Int'l, Inc. v. Junta de Planificación, 99 DPR 467, 473 (1970), stating that property owners could use such an action to "force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation. Hence, inverse condemnation

actions in Puerto Rico are governed by the same norms and principles as condemnation actions brought directly by the Puerto Rico government. Olivero v. Autoridad de Carreteras, 1978 WL 48858 at ** 4 (PRD 1978)

In addition to the aforementioned Puerto Rico constitutional mandates, the Taking Clause of the Fifth Amendment of the United States Constitution establishes that "private property [shall not] be taken for public use, without just compensation. U.S. Const. amend. V. This amendment is made applicable to the states and its instrumentalities through the Fourteenth Amendment. U.S. Const. amend. XIV. In re City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014) citing Dolan v. City of Tigard, 512 US 374, 383, 112 S. Ct. 2309, 129 L. E.d. 2d 304 (1994); Penn Cent. Transp. Co. v. City of NY, 438 US 104, 122, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). The Fourteenth Amendment of the United States Constitution provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The limitations of the Fifth Amendment also apply through the Due Process Clause of the Fourteenth Amendment, to takings by state governments and their subdivisions. *See* e.g., Lucas v. S.C. Coastal Council, 505 US 1003 (1992).

The Supreme Court of the United States has determined that a Takings Clause violation requires (i) a public taking of private property; and (ii) a subsequent denial of just compensation for that taking. *See* Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 US 172, 195 (1985). On several occasions, the Supreme Court of the United States has addressed the takings issue in the bankruptcy scenario and has consistently held that the Fifth Amendment limits the bankruptcy power. United States v. Security Indus. Bank, 459 US 70, 75, 78 (1982); Wright v. Vinton Branch of Mtn. Trust Bank, 300 US 440, 456-58 (1937); Louisville Joint Stock Land Bank v. Radford, 295 US 555, 589 (1935). The Bankruptcy Code does not abrogate the

protections granted by the Fifth Amendment. The legislative history of said statute confirms that the drafters of the Bankruptcy Code specifically considered the Fifth Amendment as a limitation upon the impairment of property rights in bankruptcy, which is supported by modern bankruptcy law.

Section 944 (c)(1) of the Bankruptcy Code provides that "the debtor is not discharged under subsection (v) of this section for any debt—(1) excepted from discharge by the plan or order confirming the plan. 11 USC § 944. To that end, in the case of In re City of Detroit, *supra* at page 270, the Court found that "…**when the Constitution requires a money damage award—as is the case here—sec. 944 (c)(1) allows the Court to except claims for that award from discharge in the confirmation order. This eliminates all issues regarding the constitutionality of chapter 9 in that respect**." (Emphasis Added). Furthermore, the Court stated that courts should avoid "interpreting a statute in a manner that would render it clearly unconstitutional… if there is another reasonable interpretation available. *See* Edmond v. United States, 520 US 651, 658 (1997). Therefore, if the State Court rules that Bahía Park has a valid and cognizable constitutional claim arising under the Takings Clause, such claim would be excepted from any discharge granted to the Commonwealth.

IV.   ARGUMENT

A. **This Honorable Court should grant the relief from the automatic stay, since the harm flowing from the continuation of the constitutional violations suffered by Bahía Park outweighs the detriment that the Commonwealth would suffer if the stay were vacated to address them.**

In the case at hand, Bahía Park respectfully submits that this Honorable Court should lift the automatic stay to allow Bahía Park to continue litigating its inverse condemnation proceedings in order to obtain a final ruling as to (i) whether or not a taking has occurred; and (ii) if so, what

-11-

would be the amount of constitutionally mandated just compensation that Bahía Park would be entitled to. Failure to allow Bahía Park to continue the litigation of these controversies in State Court would continue to cause irreparable, non-monetary injury to its property rights.

In other words, if this Honorable Court denies the present request for relief, Bahía Park would be deprived of its rights to have a clear and definite scenario regarding its bankruptcy rights, since a determination validating the existence of a taking would allow Bahía Park to become a constitutionally secured creditor of the Government with a right to defend its creditor claims in this process. This continuation of the State Court is the only viable means by virtue of which Bahía Park would be in a position to determine whether, as matter of fact, it has a right to file a proof of claim in the Title III case, or whether it is a non-dischargeable creditor in such case.

Contrary to what the Government will contend, the evaluation of a "protocol" to address all prepetition claims against the Commonwealth is not contemplated as one of the reasons for denying relief from the automatic stay. The mere fact that the Commonwealth has 5,200 prepetition civil actions pending does not constitute valid grounds for denying relief to put an end to Bahía Park's constitutional injuries and legal limbo. Furthermore, the Commonwealth cannot speculate that granting the relief requested herein will "encourage other creditors to seek similar relief", when the truth to the matter is that Bahía Park's request is very particular, since it has been suffering a clear constitutional transgression for more than a decade. *See* Docket No. 439 at page 5, paragraph 7.

Bahía Park respectfully submits that, contrary to what the Commonwealth proposes, denial of the instant motion and the approval of an additional term of one hundred eighty (180) days for the Commonwealth to address prepetition claims are unreasonable remedies. This is

indisputable, since the Government will suffer no actual harm from the resolution of two (2) legal controversies that are indispensable to clarify the status of Bahía Park's property and creditor rights.

As we have mentioned in the instant motion, we reiterated that the Commonwealth will suffer no harm as a result of the lifting of the automatic stay, since the same (i) will not disrupt the Commonwealth's processes for managing the Commonwealth; and (ii) will not interfere with the Commonwealth's ability to provide essential services. In other words, vacating the automatic stay in this case will not harm the Commonwealth or the PROMESA process and will not undermine the comprehensive, consolidated and restructuring approach that the statute was ultimately designed to facilitate, including under Title III proceedings.

Bahía Park's sole interest is that this Honorable Court guarantee its due process rights to have a final determination from the State Court that could allow said party to clarify its status as a potential secured creditor or a non-dischargeable creditor of the Commonwealth for purposes of the Title III case before this Honorable Court.

In view of the foregoing, in order to prevent the continuation of Bahía Park's constitutional injuries, it is respectfully requested that this Honorable Court enter an Order lifting the automatic stay in order for the San Juan Superior Court to resolve (i) whether Bahía Park has been the subject of an inverse condemnation; and (ii) if so, what is the amount of just compensation that Bahía Park is constitutionally entitled to. This is essential in order to clarify Bahía Park's creditors rights for purposes of the instant Title III case.

**WHEREFORE** B.P, S.E.; Bahía Park, S.E.; respectfully requests that this Honorable Court (i) take notice of the foregoing; (ii) after notice and hearing, enter an Order vacating the automatic stay arising under §301 (a) of PROMESA and Bankruptcy Code § 362 to allow the

San Juan Superior Court to adjudicate Bahía Park's rights with regards to inverse condemnation claims and just compensation in the case titled <u>B.P., S.E., Bahía Park, S.E., v. ELA</u>, K2AC 2007-00908; and (iii) grant any further relief that may be deemed just and proper under the particular circumstances of the instant case.

    I HEREBY CERTIFY that a true and exact copy of this document was served with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

    **RESPECTFULLY SUBMITTED**.

    In San Juan, Puerto Rico, this 29th day of June 2017.

    **CARLOS J. SAGARDÍA-ABREU**
*Attorney for B.P., S.E.; Bahía Park, S.E.*
1353 Ave. Luis Vigoreaux PMB 678
Guaynabo, PR 00966
Tel. (787) 360-7924
Email: carlos.sagardia@gmail.com
       cjsa@sagardialaw.com

By: s/*Carlos J. Sagardía-Abreu*
    Carlos J. Sagardía-Abreu
    USDC PR No. 227510