UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>        DEBTOR | PROMESA<br>TITLE III<br><br><br><br>No. 17 BK 3283-LTS |

REPLY TO OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF
FROM STAY FILED BY SUCESIÓN PASTOR MANDRY MERCADO ECF. NO 305

TO THE HONORABLE COURT:

    COMES NOW, creditor Sucesión Pastor Mandry Mercado, through its undersigned counsel and very respectfully states and prays:

    1. Creditor Sucesión Pastor Mandry Mercado (hereinafter "the Estate") filed a motion for relief from stay pursuant to §362(d)(1) of the Bankruptcy Code applicable to the present case through section 301 (a) of Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (hereinafter "PROMESA") on June 10, 2017 (docket no. 305).

    2. Debtor, having been authorized by the Financial Oversight and Management Board for Puerto Rico (hereinafter the "Oversight Board") and through the Puerto Rico Department of Justice, filed an "*OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY FILED BY SUCESIÓN PASTOR MANDRY MERCADO ECF. NO 305*" (hereinafter the "Objection"). (Docket no. 447-1).

    3. In its Objection Debtor alleges the Estate does not make any showing of "cause" in

their motion for relief from stay or establish how it would suffer harm if the stay remains in place. Whereas, if the stay is lifted that would open the gates for other creditors seeking similar relief with the effect of diverting Debtor's attention and resources to defending claims at the state court. Debtor also alleges that having a claim pursuant to the Federal and Commonwealth Constitutions does not automatically entitle the Estate to relief from the automatic stay.

4. After reviewing the Objection filed by Debtor, the Estate sustains Debtor has failed to meet its burden by failing to demonstrate that it is entitled to the stay.

**BURDEN OF PROOF**

5. Section 362(d)(1) of the Bankruptcy Code reads as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…11 U.S.C. §362(d)(1)

6. Section 362 (d) should be read in conjunction with § 362(g) since the latter subsection allocates the burden of proof in motions seeking relief from stay. Section 362(g) provides as follows:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section --
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> (2) the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. §362(g)

7. If debtor's equity in property is not an issue, it follows that the debtor has the burden of proof in opposing motions for relief from stay. *In re Highcrest Management Co., Inc.*, 30 Bankr. 776 (Bankr. S.D. N.Y. 1983). Once the moving party establishes cause for relief from

2

stay, a stricter burden then shifts to the debtor to demonstrate he is entitled to the stay. *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 95 (1993); *In Re Unionoil*, 54 Bankr. 192, 194 (Bankr. D. Colo. 1985). See *In re Curtis*, 40 Bankr. 795 (Bankr. D. Utah 1984) ("Once the party seeking relief from stay establishes a legally sufficient basis, i.e., 'cause,' for such relief, the burden then lies with the debtor to demonstrate that it is entitled to the stay.").

**DEBTOR'S OBJECTION**

8. Debtor contends that the Estate does not make any showing of "cause" in their motion for relief from stay or establish how it would suffer harm if the stay remains in place. Objection ¶6. It also mentions that the courts examine numerous different factors, including those set forth in *In re Sonnax Indus.*, 907 F.2d 1280 to determine whether "cause" exists to grant relief from stay. The twelve factors adopted by the court in *Sonnax* are:

> (1) whether relief would result in partial or complete issue resolution; (2) lack of connection with or interference with bankruptcy case; (3) whether other proceeding involves debtor as fiduciary; (4) whether specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice interests of other creditors; (8) whether judgment claim arising from other action is subject to equitable subordination; (9) whether movant's success in other proceeding would result in a judicial lien avoidable by debtor; (10) interests of judicial economy and expeditious and economical resolution of litigation; (11) whether parties are ready for trial in other proceeding; (12) impact of stay on parties and balance of harms. *In re Sonnax Inds.*, supra, at 1287 citing *In re Curtis*, 40 Bankr. 795, 799-800 (Bankr. D. Utah 1984).

Other courts have established that the *Curtis* moving party "need not prove a plurality of *Curtis* factors before it has shown cause existed for lifting the stay." *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, supra, at 96. Some courts have relied on only a few factors to

3

determine that sufficient cause existed to lift the stay. See, e.g., *In re Unioil*, supra, at 194-95 (court considered five factors such as resolution of the issues, lack of connection with the bankruptcy case, judicial economy and balance of hurt). See also *Highcrest Management Co.*, 30 Bankr. at 778-779 (court considered only the debtor's misconduct, without any *Curtis* factors).

The court in *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, supra, at 96 correctly stated that "the question of what is cause . . . is developed primarily by case law." In other words, the determination of cause is made on a case by case basis.

Of the twelve factors adopted by the court in *Sonnax*, at least three apply to the case pending resolution at the Puerto Rico First Instance Court in Ponce were the Estate is awaiting a determination of just compensation for the taking by Debtor of their properties.

First, whether relief would result in partial or complete issue resolution and second, whether parties are ready for trial in other proceeding. The Estate has a state inverse condemnation case pending final disposition in the Puerto Rico Court of First Instance in Ponce against Debtor in which the trial for determination of just compensation was about to begin when Debtor requested the state court to stay the proceedings due to the filing by the Oversight Board of a petition under Chapter III of PROMESA on behalf of the Debtor seeking relief from creditors. After eight years of litigation, the controversy was about to come to an end. Discovery proceedings had been completed and the trial was scheduled to commence on June 9, 2017, for the determination of just compensation and the final disposition of the inverse condemnation issue. The case is ready for a final determination while the dispute is mature in a court with jurisdiction.

Third, interests of judicial economy and expeditious and economical resolution of

litigation. Debtor's litigation of the case in the local courts is being handled by Puerto Rico Department of Justice attorneys. Appeals under guidance of the Puerto Rico Attorney General Office. Government attorneys as employees of the Department of Justice have to be paid regardless of whether the state court awaiting determination of just compensation continues. Moreover, their duties are precisely taking care of the cases and defending Puerto Rico's interest. Thus, the only litigation expense will be for the appraiser that the Government is using as expert witness. In the alternative, removing the case from the state court to this forum will be in detriment to the Estate and Debtor since the costs of litigation will be very burdensome for both parties, e.g., translation costs. The court in *In re Saunders,* 103 Bankr. 298, 299 (B.C.N.D. Fl. 1989) allowed the stay to be lifted on the state proceedings that had begun almost two years before the filing of the bankruptcy petition and also found that that judicial economy was served because the court "could perceive no rationale for curtailing" the efforts of two years in court only for the court to retrace the same path. In the present case, the parties have been litigating in state court for the last eight years. Concluding the litigation at the state court will cause no prejudice to Debtor.

9. Debtor alleges that having a claim pursuant to the Federal and Commonwealth Constitutions does not automatically entitle the Estate to relief from the automatic stay as it was determined in *Newberry v. City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 32. Rather, the Estate "must still demonstrate that the harm flowing from the continuation of those alleged constitutional violations outweighs the detriment that the Commonwealth would suffer if the stay were vacated to address them." *Brigade Leveraged Capital Structures Fund Ltd. V. García-Padilla*, 217 F. Supp.3d 508, (D.P.R. 2016). Objection ¶6.

The case cited before should be distinguished from the case at hand. In *Newberry v. City*

5

*of San Bernardino (In re City of San Bernardino), supra,* Newberry (appellants were collectively named Newberry) appeal from an order denying them relief from stay to pursue a civil rights action against Debtor-Appellee City of San Bernardino and its employees arising almost two years after the City of San Bernardino had filed for filed a voluntary petition under Chapter 9 of Title 11 of the United States Code. Newberry argued that the stay should not apply because it would effectively immunize the City for any constitutional violations it commits against its residents and by not lifting the automatic stay the court left the City's residents without recourse. The court disagreed stating that appellants can file an adversary proceeding against the City, which does not require relief from stay, and which can be used to recover money or property, obtain an injunction, and obtain declaratory relief.

In the case at bar, it would be pointless to file an adversary proceeding were the issue at stake in state court, pending only the trial, is a determination of just compensation, the case has been at that forum for the last eight years and where removing the case to this forum will be very burdensome for both parties. The state court is in a better position to resolve the case and after so many years of litigation has become very familiar with the totality of the judicial record. The Seventh Circuit has noted that "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Matter of Holtkamp*, 669 F. 2d 505 (7th Cir. 1982).

Also, the present case should be distinguished from the determination in *Brigade Leveraged Capital Structures Fund Ltd. V. García-Padilla, supra*. In the referred case, the plaintiffs' arguments were whether there is sufficient "cause" to grant them relief from the automatic stay imposed by section 405(b) of PROMESA. Among PROMESA'S provisions is an

6

automatic stay of all liability-related litigation against the Commonwealth of Puerto Rico, which was or could have been commenced before the law's enactment. PROMESA § 405(b).

The present case can be distinguished from *Brigade* since here the lifting of the automatic stay to prosecute the determination of just compensation will not represent any detriment to Debtor. The state court litigation for the determination of just compensation is not related to the PROMESA process or to the medullar controversy that urged Congress to pass the legislation. The Estate is not a bondholder or a retiree whose pension is at risk because of lack of funds to pay it.

As per established in PROMESA, Congress deemed that the stay component of the legislation is "essential to stabilize the region for the purposes of resolving" Puerto Rico's financial crisis. Id. § 405(m)(5). To that extent, the stay is designed not only to "allow the Government of Puerto Rico a limited period of time 'to negotiate' a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits", but also "to ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment" and to allow the Oversight Board time "to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation." Id. § 405(n)(2) and § 405(m)(5)(B), (A).

In spite of the relevance of the stay for the consecution of PROMESA's objectives, the legislation does provide certain instances under which the court may grant a relief from the stay. In particular, the legislation provides that the court may grant relief from the stay to "a party in interest" either "for cause shown," or "to prevent irreparable damage" to the party's interest in property. Id. § 405(e)(2), (g).

Denying the Estate the relief from stay to obtain a determination of just compensation deprives them not only of a constitutional right but of defining the amount of its claim with

7

certainty in order to have an allowable secured or unsecured claim that can be paid through the plan. In *In re Pro Football Weekly, Inc., supra, at 827* the court noted that the lifting of the stay to permit the continuation of the pending litigation

> [was] in complete harmony with the Code's policy of quickly and efficiently formulating plans for repayment and reorganization. The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure **for all creditors, secured as well as unsecured**, . . . . thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' (Emphasis added) (Citations omitted).

Just compensation has been denied to the Estate for almost nine years since the taking occurred and even the amount of said just compensation has not been determined by the local courts. Having been deprived of their property in a legislative taking that did not provide for the payment of just compensation, the Estate has been forced to litigate utilizing its own resources since 2008.

The balance of interests certainly leans towards giving the Estate leave to prosecute the case in the local courts to obtain a final judgment. By allowing the continuance of the case and to obtain judgment, will not be opening the "floodgate" to other creditors which Debtor seems to fear. Each party has the right to pursue the continuance of his case and avoid uncertainty. Surely, out of the 5,200 cases against the Commonwealth to which Debtor refers in its Objection, no more than a handful is of this nature. The alleged floodgate is not a reason to deny the lift of stay.

## **CONCLUSION**

11. The Estate has established with substantial arguments there is cause for the lifting of

the automatic stay. Thus, once the party seeking relief from stay establishes there is "cause" for such relief, the burden then lies with the debtor to demonstrate that it is entitled to the stay. *In re Curtis, supra.* Nothing in Debtor's Objection weighs against modifying the stay to allow the Estate to obtain a determination of just compensation in state court for the taking of its properties as guaranteed by both the Federal and the Commonwealth constitutions. Furthermore, modifying the stay to allow the state court determination of just compensation promotes the judicial economy and expeditious and economical resolution of the litigation. The Estate would then have a certain and allowable claim to file, facilitating Debtor the formulation of a confirmable plan and its eventual reorganization.

WHEREFORE, it is respectfully prayed that Debtor's objection be denied, creditor the Estate be granted relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) as to the Debtor, and to the estate, to continue the proceedings at the state court civil case number JAC2008-0853 in order to establish an amount of just compensation, with such other and further relief as this Court deems just and proper.

**CERTIFICATE OF SERVICE**: I hereby certify that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Office of the United States Trustee and to the attorneys of record.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 30th of June, 2017.

/s/María E. Vicéns Rivera
MARÍA E. VICÉNS RIVERA
USDC- PR 226711
9140 MARINA ST., SUITE 801
PONCE, PUERTO RICO 00717
TEL. / FAX: (787) 259-1999
E-mail: mevicens@yahoo.com

9