**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** | **CASE NO. 17 BK 3283-LTS** |
| | **TITLE III, PROMESA** |
| **AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO** | |
| **Debtor** | |

**REPLY TO THE "OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY FILED BY ANGELY M. APONTE-PAGÁN AND JAVIER ANDINO-GAUDÍN [ECF NO. 343]"**

**TO THE HONORABLE COURT**:

**NOW COME** Angely M. Aponte-Pagán and other Plaintiffs in the case captioned <u>Aponte-Pagán et al v. Rivera-Aquino et al</u>, Civil No. CC-2016-1153, pending before the Supreme Court of Puerto Rico, and Javier Andino-Gaudín and other Plaintiffs in the case captioned <u>Andino-Gaudín et al v. Rivero-Cubano et al</u>, Civil No. K AC2002-5558, pending before the Court of First Instance of Puerto Rico, through the undersigned counsel, and respectfully allege and pray as follows:

**I.    INTRODUCTION**

1. On June 15, 2017, the appearing parties (hereinafter, the "Movants"), filed a Motion for Relief from Stay because the defendant and debtor in two cases before the state courts – <u>Aponte-Pagán et al v. Rivera-Aquino et al</u>, Civil No. CC-2016-1153 (hereinafter, "<u>Aponte-Pagán</u>"), and <u>Andino-Gaudín et al v. Rivero-Cubano et al</u>, Civil No. K AC2002-5558 (hereinafter, "<u>Andino-Gaudín</u>") – is the Agricultural Enterprises Development Administration (hereinafter, "the ADEA" for its acronym in Spanish), a public corporation separate and legally distinct from the

-1-

Commonwealth of Puerto Rico. (Dkt. 343.)[1] Because the ADEA is a public corporation, the automatic stay under the Commonwealth's bankruptcy proceedings cannot be extended to the ADEA and the stay in Andino-Gaudín and Aponte-Pagán is unsustainable in law.

2. We are baffled by the Opposition filed, as, on June 27, 2017, the attorney of record from the Puerto Rico Department of Justice in Andino-Gaudín called counsel in state court for Movants to inform that they would agree to the lifting of the stay, and even asked for draft of a motion to that effect. This representation was affirmed by means of the attached email, received shortly thereafter.[2] See Exhibit 1, emails. Indeed, on June 28, 2017, at 9:45AM, Movants' counsel sent a draft of a motion to lift the stay to the Department of Justice of Puerto Rico. *Id.*

3. Despite efforts to follow up, no further information was provided by the Puerto Rico Department of Justice with regards to the draft motion. Then, on June 29, 2017, marking a radical shift in its position, the Commonwealth filed an Objection to the Motion for Relief from Stay (hereinafter, "the Objection"). (Dkt. 548.)

4. Still, the Objection fails to refute any of the arguments presented by the Movants, and instead rehashes the same pleas that have been submitted in previous objections to a relief of the stay. The Objection even admits that here, the defendant in Movants' state court cases is not the Commonwealth, but a separate public corporation. Moreover, the Objection is riddled with

---

[1] The arguments made in the Motion for Relief from Stay are incorporated herein by reference.

[2] On June 27, 2017, attorney Luis Villanueva-Nieves of the Puerto Rico Department of Justice sent to the Movant's attorney, Francisco J. González-Magaz, an email stating:

"Cordial greetings:
To summarize our conversation of this morning, I would appreciate you send us a draft of a joint motion to lift the stay in the case of Javier Andino[-Gaudín]. If you can send it on or before Wednesday to review it and coordinate its signature and filing.
Cordially,"

(Translation ours.) See Exhibit 1, emails.

contradictory arguments.

## II. REPLY TO THE OBJECTION'S "PRELIMINARY STATEMENT"

5. The Commonwealth argues that it has 5,200 pending and threatened litigation cases against it, representing nearly $2.2 billion in potential liability. The Commonwealth goes on to ask that the requests for relief of the stay be considered as a whole, and not individually, because any relief could result in "opening the floodgates" and that the Commonwealth is currently developing a protocol "…for addressing how to treat all of the prepetition litigation claims asserted **against it**…" (See Objection, at page 3.)

6. However, the Commonwealth's own Title III Petition contradicts this argument. The debt in Andino-Gaudín was not included in the "List of Creditors who have the 20 Largest Unsecured Claims are not Insiders" filed by the Commonwealth in the captioned Title III proceedings, even though the amount of the debt would warrant such inclusion.[3] (See Commonwealth's Title III Petition, Dkt. 1, Schedule B.) This omission can only be motivated by the fact that the Commonwealth does not recognize Movants' claims as a liability.

7. Also, because Movants' cases are not part of the 5,200 pending litigations against the Commonwealth, this argument is irrelevant to the issue before this Court. As previously stated, the defendant in Movants' cases is the ADEA, a public corporation separate and legally distinct from the Commonwealth. The liable party in Movants' state court cases is therefore the ADEA, not the Commonwealth. The Objection does not question, let alone refute, this fact. Whether there are zero or 5,200 pending litigations against the Commonwealth is irrelevant because the Movants' claims are not included therein.

8. Likewise, the Commonwealth raised that the protocol it is currently developing is for

---

[3] By the Commonwealth's own admission, the ADEA's debt to the Movants is approximately $7 million. The List of the Top 20 Unsecured Creditors shows that 15 of those have debts of less than $7 million.

-3-

addressing those 5,200 cases. But, since the Movants' cases are not included in those pending litigations, the protocol will not apply to them. Andino-Gaudín was originally filed in 2002 and has had a final judgment and order for payment since 2008. Another order establishing a payment plan was issued in June of 2016. Aponte-Pagán was filed in 2010. Both cases experienced slow progress and delays which have adversely affected the Movants. It is unnecessary, and a violation of due process, to delay Andino-Gaudín and Aponte-Pagán any further because of a protocol which will have no bearing in them in any event.

9. Nor is there a risk of "opening the floodgates," since Movants' claims are against the ADEA, not the Commonwealth. In the case law cited by the Commonwealth, the debtor in the bankruptcy proceeding was also the defendant in the cases for which the lifting of the stay was requested. That is not the situation here. Movants' claims in the state courts are against the ADEA, a public corporation that is separate and legally distinct from the Commonwealth. The alleged floodgate the Commonwealth is concerned about is related to cases filed or threatened against it.

10. *Arguendo*, if this Court entertained the Commonwealth's "floodgate" fears, there are other, less drastic ways to address this concern which would not prejudice the Movants. For one, this Court has the authority to allow the state court cases to continue against the ADEA and specify that said claims cannot be unilaterally extended to the Commonwealth.

11. By the same token, lifting the stay for Movants' state court claims would not entail the Commonwealth spending additional resources for litigations. The Movants' claims are not against the Commonwealth, therefore it need not defend itself in the state court cases. Whether the Commonwealth provides legal representation for the ADEA in Movants' claims cannot be a factor. As stated in the prior filing and above, the Commonwealth and ADEA are separate and legally distinct juridical entities, and they cannot erect and then blur the veil between them at their convenience. For the Commonwealth to pretend to extend the stay to Movants based on its legal

-4-

representation of the ADEA is tantamount to claiming that, because a law firm has requested bankruptcy protection, the stay should be applied to its clients.

12. Simply put, Movants' claims cannot be stayed because the Commonwealth provides legal representation to the ADEA. This legal representation provides no legal basis to extend the stay, it does not represent any additional and considerable expense to the Commonwealth, and if it requires any consideration, the solution must be that the ADEA procure new legal representation, not that the proceedings be stayed to the detriment of the Movants.

### III. REPLY TO THE OBJECTION

13. The Objection also points out that the Commonwealth is evaluating which of its agencies and instrumentalities are subject to the stay and that, because the ADEA receives funds from the Commonwealth, any judgment against the ADEA could impact the Commonwealth.

14. The ADEA is not an agency or an instrumentality, but a separate public corporation, a fact that is not (cannot be) refuted by the Commonwealth. The Commonwealth's evaluation as to how the stay applies to litigation against the Department of Education or the Department of Health is necessary because those are government instrumentalities. But such an evaluation is not pertinent with regards to public corporations, as they are separate and legally distinct from the Commonwealth. The Commonwealth cannot cherry-pick which public institutions are subject to the Title III stay, let alone do so arbitrarily, speculatively and contrary to law.

15. By design and necessity, public corporations are separate legal creatures from the government. In fact, this separation is both a *sine qua non* element of a public corporation and the reason why they came into being. Public corporations are defined, in part, as "an institution that offers an economic or social service on behalf of the government, but as an independent juridical entity…" See Commoloco of Caguas, Inc. v. Benitez-Díaz, 126 D.P.R. 478, 490 (1990) (adopting the definition given in W. Friedman, The Public Corporation: A Comparative

Symposium, Toronto, Carswell Co., 1954, page 541.) Also, public corporations began as an effort by governments to undertake economic activities traditionally left to private enterprises. For that reason, they were, and continue to be, structured with fiscal and administrative autonomy in order to remove governmental bureaucratic obstacles and facilitate efficiency and creativity. Huertas v. Compañía de Fomento Recreativo, 147 D.P.R. 12, 20 (1999). The Commonwealth's argument flies against the very nature of a public corporation by suggesting that there are no boundaries between it and the ADEA.

16. The Commonwealth then seeks that a motion for relief of stay be considered jointly with analogous filings in other cases, and not piecemeal. Applying that same standard, due consideration must be given to the effect that including debt from public corporations in the Commonwealth's Title III proceedings can have. The real risk of "opening the floodgates" exists with regards to the Commonwealth ignoring the tight legal boundaries between it and separate public corporations. Should Movants' claims be included in the proceedings in caption, it must follow, to avoid an arbitrary determination, that the debts of other public corporations, such as the University of Puerto Rico, are also included herein. This would create a cascade effect of complications that would require the overhaul of the entire Title III process. The Commonwealth's initial Title III petition would have to be amended because it currently does not offer any information on public corporation debt that would now have to be included in these proceedings. Negotiations and mediation with creditors would be derailed because the Commonwealth's position would be, first, unknown due to the Commonwealth's ongoing evaluation of how the stay applies to public corporations, and second, considerably more precarious now that additional debt from public corporations has been tacked on to the Commonwealth's Title III process. Public trust in the proceedings would be mined because such action can be construed as an abuse of the process. The public corporations, even the financially healthy ones, would encounter difficulties in their operations because the demarcation lines

separating them from the bankrupt Commonwealth will be dismantled. That is the scenario and public policy concerns that the Commonwealth should have raised with this Court.

17. Ultimately, there is no risk that the Commonwealth can be brought to satisfy the payments owed to Movants. Whatever procurement is made by the Commonwealth to the ADEA has already been included in the Budget for Fiscal Year 2017-2018. This Budget was submitted by the Governor of Puerto Rico, approved by the State Senate and the House of Representatives, and certified by the Oversight Board pursuant to PROMESA. In fact, the approved Budget for Fiscal Year 2017-2018 for the ADEA is $14 million more than last year, and PROMESA does not allow for new funds to be distributed without the Oversight Board's approval. 48 U.S.C.A. § 2142.

18. <u>Movants' debtor is the ADEA</u>. In fact, the most recent payment plan and order issued by the state Court of First Instance last year was directed at the ADEA. The ADEA generates its own funds and has autonomy in its fiscal administration.[4] Even more, the ADEA has the legal authority to take loans from private banks and issue debt separate from the Commonwealth.[5] It is up to the ADEA to decide how to spend the funds it has budgeted for a given fiscal year. But failure to comply with the judgments in <u>Andino-Gaudín</u> and <u>Aponte-Pagán</u> can only result in legal action against the ADEA as the defendant in those state court cases. And should this be a concern, this Court can modify the stay with regards to Movants' claims to allow the cases to proceed against the ADEA, specifying that the Commonwealth is not a party therein and that no action

---

[4] The Reorganization Plan No. 4 of July 26, 2010, states in part that "[t]he [ADEA] will have fiscal and operational autonomy…" (Translation ours.) 3 L.P.R.A. Ap. XV § 16.

[5] The Reorganization Plan No. 4 of July 26, 2010, also states in part that the ADEA can "[t]ake money as a loan, receive funds, donations, subsidies, procurements, advances, loans or other analogous payments or aid from the federal, state, or municipal governments, from particular individuals, from banks, or from other private and government entities to carry out its tasks, and enter into agreements with governments, agencies, banks or other private or government entities for the use of those funds or aid, including making payments to such funds in a manner that is not contrary to the purpose and spirit of this Plan." (Translation ours.) 3 L.P.R.A. Ap. XV § 18(12).

can be taken against it.

19. A balance of the interests of the parties also favors the relief of stay. The Commonwealth argues that its interests would be harmed because it would have to divert resources to defend against the Movants' claims and encourage others to request similar relief, negating the "breathing room" the stay is intended to provide. However, the Commonwealth's position rests on the incorrect premise that the Movants' claims are aimed at it. This is not the case, as Movants are not targeting the Commonwealth. It cannot be overstated that here the Movants' state court cases are against a public corporation that is separate and legally disctinct from the Commonwealth. The Commonwealth need not divert any resources to defend itself.

20. Nor is there a risk of additional requests for relief. As the Objection points out, there are currently eleven (11) requests for relief from the stay. With the exception of the Movants, all other claimants have actions pending against a Commonwealth agency or instrumentality. Even then, the Commonwealth has seen fit in several occasions to agree to modify the stay. (See dockets 562 and 272.) In fact, that was what the Department of Justice indicated it would do with respect to Movants here, as expressed in the phone call and email to the undersigned counsel for Movants.

21. The Commonwealth also cites several cases where this Court held that to grant a relief of stay would result in numerous similar requests to be filed. Again, these cases all relate to instances where the bankruptcy debtor was the defendant in movants' actions. Here, that is not the case.

22. The Commonwealth makes an attempt at balancing the harms related to Movants' requests. However, none of the harms stated by the Commonwealth are applicable to the situation Movants have raised before this Court. There may be a large number of cases against the Commonwealth, but, as is evident from the Commonwealth's own Title III petition, Movants' claims are not included on that list. Also, as we have demonstrated, the continuation of Movants' state court cases does not entail any diversion of resources from the Commonwealth because the

defendant in those cases is the ADEA. Likewise, because the Commonwealth is not liable for Movants' claims, there is no prejudice to the interests of the Commonwealth's creditors should the relief sought be granted. To the contrary, as explained, to determine that a public corporation's debt can be included in these proceedings, as the Commonwealth pretends in its Objection, represents a devastating blow to the Commonwealth's creditors. On the other hand, <u>Andino-Gaudín</u> and <u>Aponte-Pagán</u> have been on the docket for 15 and 7 years, respectively. Numerous plaintiffs in those cases have passed on without seeing the conclusion of their claims. If justice delayed is justice denied, then further postponement of Movants' cases is an undue hardship on its own and the urgency of Movants' request is self-evident.

23. The Commonwealth is incorrect in its assertion that granting the requested relief will not save the Commonwealth any money and that the debt is considerable. To be sure, the relief of stay will not save the Commonwealth any money because the Commonwealth is not the defendant in Movants' claims. However, in <u>Andino-Gaudín</u>, because of the ADEA's past failure to abide by the state court's orders, judicial corrective actions were taken which have resulted in significant interests being accrued over the pending debt. Hence, it is in the best interests of the ADEA to address this matter sooner rather than later. Also, while the debt is considerable, the Commonwealth omits the fact that a payment plan was instituted by the state court nearly a year ago. The payment plan calls for two payments per year for the next 10 years, greatly reducing the burden this debt can have on the ADEA.

24. Lastly, this Court should consider whether it has jurisdiction to issue an order to the ADEA should the need to protect the interests of the Movants arise. Given that the ADEA is a public corporation, separate and distinct from the Commonwealth, and is not subject to any current Title III proceeding, the ADEA is not under this Court's jurisdiction. Therefore, the stay is inapplicable and cannot be extended to Movants' state court claims. Should the stay be allowed to continue in the state court cases, and without jurisdiction for this Court to issue an order to the ADEA, the

-9-

Movants would be bereft of any forum in which to litigate their claims.

## IV. CONCLUSION

25. The Objection fails to refute any of the arguments made by the Movants in their Motion for Relief of Stay. Moreover, in the Objection the Commonwealth admits that the defendant in the Movants' state court actions is the ADEA, a public corporation separate and legally distinct from the Commonwealth. As a result, the ADEA's debt to the Movants is not a liability for the Commonwealth, a fact evidenced by its Title III petition. It is therefore irrelevant whether a protocol is being established to deal with pending claims against the Commonwealth. By the same token, the relief sought does not present any harm to the Commonwealth. To the contrary, a finding that a public corporation's debt is subject to the Commonwealth's Title III stay would undermine the proceedings, adversely affect the Commonwealth's creditors, and effectively remove any viable forum for the Movants to advance their claims.

26. Thus, Movants respectfully affirm that the stay is inapplicable to <u>Aponte-Pagán</u> and <u>Andino-Gaudín</u>. Alternatively, Movants respectfully aver that cause has been shown to lift or otherwise modify the stay in <u>Aponte-Pagán</u> and <u>Andino-Gaudín</u> to resume proceedings with regards to the ADEA.

**WHEREFORE**, it is respectfully requested that this Honorable Court issue an order to the effect that the stay is not applicable to <u>Aponte-Pagán</u> and <u>Andino-Gaudín</u>, or otherwise lift or modify the stay for the corresponding state court cases to resume proceedings with regards to the ADEA.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this July 6, 2017.

**I HEREBY CERTIFY** that on this date, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all

attorneys of record.

        <u>s/Francisco R. González-Colón</u>
**FRANCISCO R. GONZALEZ COLON**
**USDC No. 116410**

FRANCISCO GONZÁLEZ LAW OFFICE
1519 PONCE DE LEÓN AVE.
FIRST FEDERAL BLDG. SUITE 805
SAN JUAN, P.R. 00909
Tel. (787) 723-3222 FAX 722-7099
bufetefrgonzalez@gmail.com