# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>**THE FINANCIAL OVERSIGHT MANAGEMENT BOARD FOR PUERTO RICO**<br><br>as representative of<br><br>**THE COMMONWEALTH OF PUERTO RICO, ET ALS.**<br><br>DEBTORS | PROMESA<br>TITLE III<br><br>NO. 17 BKT 3283-LTS |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**TO THE HONORABLE DISTRICT COURT JUDGE LAURA TAYLOR SWAIN:**

**COMES NOW, Caribbean Airport Facilities, Inc.**, (hereinafter referred as "CAF"), through the undersigned attorney and very respectfully states, alleges and prays as follows:

### INTRODUCTION

1. This Honorable Court should vacate the PROMESA Title III automatic stay with regards to CAF in the State Court expropriation case KEF2011-0453 (hereinafter referred as "Expropriation Case") which was filed by the Commonwealth of Puerto Rico (hereinafter referred as "Commonwealth"). Particularly, CAF is a party who suffered a Fifth Amendment Taking by the Commonwealth. The State Court rendered a judgment in the Expropriation Case that noted that the although the Commonwealth was liable for the Taking of CAF's property, the Commonwealth has not justly compensated CAF. Therefore, the State Court had set a Pretrial Conference for August 22nd, 2017 and was eventually going to hold a trial in this same year in order to determine the amount owed in the Expropriation Case.

2. CAF respectfully requests this Honorable Court to GRANT this instant motion for relief of stay and allow CAF and the Commonwealth hold a trial before the Puerto Rico State Court in the Expropriation Case. As CAF will demonstrate, this Honorable Court should lift the automatic stay for cause pursuant to Section 362 (d) (1) of Title 11 of the United States Code because the Expropriation Case filed by the Commonwealth against CAF meets the majority of the factors established by *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2nd Cir. 1990) which permits the lifting of the stay in particular cases that are in this late stage of the judicial proceedings. Additionally, by allowing the trial to be held in the Expropriation Case, it will completely resolve all issues, it will not interfere with the bankruptcy case and it will allow for an expedited resolution that will further clarify the amount owed by the Commonwealth as just compensation to CAF for the Fifth Amendment Taking which is a non-dischargeable debt.

**FACTUAL & PROCEDURAL BACKGROUND**

3. On December 28th, 2011, the Commonwealth filed an expropriation petition in the Expropriation Case in order to attempt to expropriate CAF's leaseholds at the Luis Muñoz Marin International Airport. At that time, the State Court Judge deemed the case extraordinary because he had never seen a government taking of a lease.

4. Presently, the Expropriation Case is ongoing before the Superior Judge Leticia Ortiz Feliciano of the Expropriation Division of the State Courts.

5. After years of litigation, with missed deadlines and delays caused by the Commonwealth, on November 2015 there was a judgment issued establishing the liability of the Commonwealth regarding the temporary taking of the lease agreement. With accordance with the firm and final judgments entered by the State Courts, including the

Appeals Courts, the only pending issue in the Expropriation Case is the determination of Just Compensation for the temporary taking incurred by the Commonwealth of CAF's property rights, including its title and other associated rights.

6. In summary, the State Courts deemed the Commonwealth liable for the temporary taking of CAF's property and it promptly issued case management orders in order to determine the just compensation owed to CAF.

7. On January 24th, 2017 both parties submitted their Joint Proposed Pretrial Report (hereinafter referred as PT Report). In said PT Report, all expert witnesses required for determining just compensation were announced and their expert appraisal reports were identified.

8. On February 29th, 2017, a pretrial conference was held before Judge Ortiz Feliciano to discuss the PT Report. During that pretrial conference, the judge established tthe formulas to be used by the parties in the PT Report should be modified in order to determine the just compensation due to CAF.

9. Therefore, the State Court issued new scheduling orders in which it ordered the Commonwealth to submit their modified appraisal report in light of the formulas to be used by the parties. The State Court ordered the Commonwealth to submit said expert report on or before June 17th, 2017.

10. On June 16th, 2017, the Commonwealth filed a Notice of Automatic Stay Request in the Expropriation Case due to the Commonwealth's Title III PROMESA Petition.

11. On July 5th, 2017, the judge issued an Order notifying the parties that it will stay the case due to the Commonwealth's Notice of Automatic Stay.

12. In light of the decision of the State Court Judge to enter the Stay the

Proceedings, CAF thus submits this instant Motion Requesting Relief from the Automatic Stay.

13. The Commonwealth is thus constitutionally obligated to make CAF Whole and the only issue pending as of this date is determine the just compensation for the temporary taking of its property rights pursuant to the Fifth Amendment of the Constitution of the United States.

**APPLICABLE LAW**

BANKRUPTCY AND THE FIFTH AMENDMENT

14. The Takings Clause of the Fifth Amendment mandates that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This amendment is made applicable to the states, and thus to municipalities, through the Fourteenth Amendment. U.S. Const. amend. XIV; *Dolan DA v. City of Tigard*, 512 U.S. 374, 383 (1994); *Penn Cent. Transp. Co. v. City of N.Y.,* 438 U.S. 104, 122 (1978).

15. The Supreme Court has explained that "because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 n.13 (1985). The Supreme Court further stated, "Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." *Id*. at 194 (citation omitted). "[T]he property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure [for seeking just compensation] and been denied . . . ." *Id*. at 195.

16. Thus, a Takings Clause violation is defined by two elements: (1) the public

4

taking of private property, and (2) the subsequent denial of just compensation for that taking. See *Williamson*, 473 U.S. at 195 n.13.

17. The Supreme Court has consistently held that bankruptcy laws are subject to the prohibition against governmental taking of private property without just compensation. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S. Ct. 854, 79 L. Ed. 1593 (1935), *Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974).

PROMESA AND THE AUTOMATIC STAY PROVISION

18. On June 30th, 2016, the President of the United States signed PROMESA into law. Said legislation seeks to tackle the calamitous fiscal emergency in Puerto Rico and is designed to institute a "comprehensive approach to [Puerto Rico's] fiscal, management and structural problems and adjustments… involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA 405(m)(4). The statute established a seven-member Oversight Board ("Board") for Puerto Rico, which also includes an eight-member chosen by the Governor, with the purpose of providing a method for the island to achieve fiscal responsibility and access to the capital markets. Id. at §§ 101(b)(1).

19. In the relevant part, among PROMESA's provisions is an automatic stay of all liability-related litigation against the Commonwealth, which is applicable once the Board files a Title III petition to commence debt-adjustment proceedings under the legal framework set forth in the statute. Id at § 405(d). Under PROMESA, the Honorable Court may, however, grant relief from the stay to "party in interest either "for cause shown", or "to prevent irreparable damage" to the party's interest in property.

20. In the recent case of *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of PROMESA. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so". (Emphasis Added).

21. Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), states as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

22. In defining what constitutes "cause" for relief from the automatic stay in the context PROMESA, the First Circuit took into account the (i) judicial interpretations of the term within the context of section 362 of the United States Bankruptcy Code ("Code"), 11 USC § 3621, and also, (ii) additional considerations related to the particular circumstances of the PROMESA legal framework. The Court began by noting that section of the Code provides that courts may grant relief from the automatic stay to a party in interest for "cause", but the statute also fails to expressly define how the term must be construed and

applied. 11 USC § 362(d) (1); *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 517 (1st Cir. 2016).

23. In *Brigade Leveraged*, the First Circuit stated that to help guide the analysis of whether to enforce or vacate the stay, some Courts, including those in this district, have relied upon a laundry list of assorted factors. See, e.g., *Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990) (enumerating 12 different factors to be utilized in determining whether there is "cause" to vacate a bankruptcy stay, including the "impact of the stay on the parties and the balance of harms"); see also *C&A, S.E. v. P.R. Solid Waste Mgmt. Auth.,* 369 B.R. 87, 94-95 (D.P.R. 2007) (Casellas, J.) (considering factors similar to those spelled out in *Sonnax*).

24. The *Sonnax* case cites *In re Curtis,* 40 Bankr. 795 (Bankr. D. Utah 1984), which catalogues a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for

trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. See id. at 799-800. *Sonnax, supra,* at 1286.

25. In the discretionary nature of the decision to grant relief on a case-by-case basis. See *Claughton v. Mixton*, 33 F. 4, 5 (4th Cir. 1994) (noting that Congress "has granted broad discretion to bankruptcy courts to lift the automatic stay and the courts must determine when discretionary relief is appropriate on a case-by-case basis".). The Court established that "the process of evaluating whether there is sufficient "cause" to vacate the automatic stay requires the court to engage in an equitable, case-by-case balancing of the various harms at stake. *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 518 (1st Cir. 2016); See, e.g., *Peerless Ins. Co v. Rivera,* 208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from the continuation of the stay would outweigh any harm that might be suffered be the debtor…if the stay is lifted."); *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor."); In re Harris, 85 BR 858, 860 (Bankr. D. Colo. 1998) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and the "hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay."). (Emphasis Added).

26. In view of the foregoing, the First Circuit held that the Court's "ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that

relief is granted". *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 518-519 (1st Cir. 2016).

27. Even though the First Circuit held that the PROMESA stay is interpreted according the case law arising under section 362 of the Code, it stated that "the concept of "cause" embraced by the Court for purposes of the PROMESA stay need not precisely mirror that adopted in the bankruptcy context". *Id* at 520.

**ARGUMENT**

28. If this Honorable Court utilizes the *Sonnex* factors enumerated by the Courts in this Circuit, this Honorable Court will recognize that these factors are met in the Expropriation Case. Therefore, the Plaintiffs respectfully request this Honorable Court to lift the stay in the Expropriation Case so that the State Court may determine the just compensation owed by the Commonwealth to CAF for the Temporary Taking of CAF's property rights.

29. This Honorable Court issued an opinion on July 7th, 2017 (See Docket 600) with regards to a similar case compared to the Expropriation Case, in which it analyzed the *Sonnax* factors and deemed that the factors relevant to this type of case are the following: "whether relief would result in a partial or complete resolution of the issues", "lack of any connection with or interference with the bankruptcy case", "the interests of judicial economy and the expeditious and economical resolution of litigation", "whether the parties are ready for trial in the other proceedings", and the "impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

30. The Expropriation case meets these *Sonnax* factors. The Expropriation Case will completely resolve the issue regarding the quantification of the Commonwealth's

liability for the temporary taking of CAF's property rights. Allowing the Expropriation Case to proceed will not interfere with the Title III Case. The fact that liability has already been resolved and a trial scheduled on damages in the Expropriation Case demonstrates that the interests of judicial economy, and of the expeditious resolution of litigation, are best served by permitting the Expropriation case to proceed in the State Courts.

31. CAF understand that if the Automatic Stay is lifted, the parties may participate in the August 22nd, 2017 Pretrial Conference and be able to set a prompt date for trial in order to adjudicate the just compensation owed by the Commonwealth to CAF, a non-dischargeable constitutional debt because it arises from the Fifth Amendment of the Constitution. As the Supreme Court has consistently held, bankruptcy laws are subject to the prohibition against governmental taking of private property without just compensation. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S. Ct. 854, 79 L. Ed. 1593 (1935), *Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974).

32. The Commonwealth's constitutional debt obligation originated from an expropriation proceeding from 2008. This constitutional debt cannot be discharged in the case at bar.

33. At this moment, CAF is suffering irreparable harm from the automatic stay.

34. The Commonwealth will not be damaged by the lift of stay against the constitutionally protected right of CAF to determine its just compensation for the temporary taking incurred by the Commonwealth. In fact, the lift of stay will allow CAF and the Commonwealth to litigate the issue and clarify the quantity of the just compensation owed. This in turn will further help these Title III proceedings as they continue onward,

when CAF must seek the payment due as a secured creditor.

35. In this case, the balance of harm clearly favors lifting the stay and allowing CAF and the Commonwealth to participate in the trial of the Expropriation Case in order to determine the just compensation owed.

**WHEREFORE**, CAF respectfully requests that this Honorable Court (1) take notice of the foregoing, (2) after notice and hearing, enter Order vacating the automatic stay in the Expropriation Case arising under Title III of PROMESA, (3) allow the Commonwealth and CAF to hold a trial to determine the just compensation owed, (4) Order the Commonwealth to file its modified Expert Report in the Expropriation Case pursuant to the State Court Order, and (5) grant any other further relief that may be deemed just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on this 9th day of July, 2017.

*S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
RIVERA COLÓN, RIVERA TORRES & RIOS BERLY, PSC
1502 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com