**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 503, 565**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH TO MOTION FOR**
**RELIEF FROM STAY FILED BY JOSUÉ AQUINO-COLÓN [ECF NO. 503]**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 503] (the "Motion")

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

filed by Josué Aquino-Colón and the purported class (collectively, the "Movant").[2] In support of the Objection, the Commonwealth respectfully requests that the Motion should be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. Two months ago, the Oversight Board, as the Debtors' representative pursuant to PROMESA section 315(b), filed a voluntary petition for relief for the Commonwealth under PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").[3] Since that time, the Commonwealth has been focused on transitioning into title III.

2. As part of that transition, the Commonwealth is evaluating how best to apply the automatic stay enumerated in Bankruptcy Code sections 362 and 922, made applicable by PROMESA section 301(a), to civil actions filed against the Commonwealth. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the Commonwealth with an estimated aggregate

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf. To this point, 17 motions to lift the automatic stay have been filed in the title III cases so far, with four motions being filed in the last seven days. Rather than evaluating the Motion in isolation, this Court should consider the totality of the circumstances with respect to the litigation docket the Commonwealth faces and the implication of lifting the stay at this juncture of the case.

4. The Commonwealth and its advisors are currently working on revising the protocol for motions for relief from stay contained in the *First Amended Notice, Case Management and Administrative Procedures* [ECF No. 262-1]. The revised protocol would provide the Commonwealth with the necessary "breathing room" to evaluate the prepetition litigation claims asserted against it in the overall context of the Title III Case and would also allow for the Commonwealth to stipulate (as it has already done) with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous (e.g., agreeing to lift the stay for a movant to pursue claims related to the forfeiture of personal property [ECF No. 272, 562]). The Commonwealth anticipates seeking approval of the revised protocol so as to be considered at the next omnibus hearing scheduled for August 9, 2017.

## OBJECTION

5. Bankruptcy Code section 362(d)(1) provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d

Cir. 1990).[4] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285.

6. Movant's underlying action before the Commonwealth of Puerto Rico Court of First Instance, San Juan Part seeks, among other things, the return of vehicles that Movant alleges were illegally seized under Act 218-2014 and payment of at least $10,000 (plus interest) per vehicle in damages due to the alleged due process violations in connection with the seizure of such vehicles (the "Commonwealth Action").[5] The Commonwealth Action also seeks permanent

---

[4] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

[5] Act 218-2014 amended Section 5.06 of Act No. 22-2000, as amended, known as the "Puerto Rico Vehicle and Traffic Act," to provide a new punishment for the offense of drag or speed racing or acceleration competitions; and for other purposes.

4

injunctive relief by which the Commonwealth may no longer seize vehicles under Act 218-2014. In addition, while Movant did not formally move for certification of a class action under Puerto Rico law, the Commonwealth Action seeks improper certification of a class concerning all individuals whose vehicles were similarly seized under Act 218-2014. The Commonwealth filed a motion to dismiss the Commonwealth Action, arguing, among other things, that Movant (a) has no legal standing to bring the damages claims against the Commonwealth and (b) failed to meet the standard for certification of a class action. As of the filing of the Title III Case, the Court of First Instance has not ruled on the Commonwealth's motion to dismiss.[6]

7. As an initial matter, the Motion differs significantly from those motions for relief from stay filed by movants who were seeking to contest the forfeiture of their vehicles under the Uniform Forfeiture Act of 2011 (the "UFA"), 34 L.P.R.A. §1724 et seq. See, e.g., ECF Nos. 229 and 379. The UFA specifically recognizes standing for owners of forfeited vehicles to establish their ownership of the forfeited vehicle and contest such forfeiture in accordance with the procedures outlined in the UFA. 34 L.P.R.A. §1724l. The remedies under the UFA are limited to the return of the property, if available, or if the property has been disposed of, the payment of an amount equal to the appraised value of such property at the time of seizure or the amount for which such property was sold, whichever is higher, plus prevailing legal interest. 34 L.P.R.A. §1724p. Notably, the UFA does not provide for the recovery of damages in connection with the seizure of a vehicle.

8. The Commonwealth does not object to Movant seeking to contest the forfeiture of his vehicle and return of such vehicle under the procedures outlined in the UFA, if Movant

---

[6] Because Movant did not properly seek certification of the class under Puerto Rico law, this issue has not been fully briefed before the Court of First Instance. If the automatic stay is lifted to allow the Commonwealth Action to proceed and the Commonwealth's motion to dismiss the action is denied, the Commonwealth would be required to spend significant time and resources briefing the issues surrounding the certification of the alleged class.

sought such relief, but that is not what Movant is seeking in this case.[7] Rather, the Commonwealth Action is a tort action outside of the UFA, which seeks damages due to the Commonwealth's alleged due process violations in connection with the allegedly illegal seizure of Movant's vehicle. Even in the context of this case, the damages sought by Movant and the alleged class could be substantial. At this point, and in a vacuum where not all litigation against the Commonwealth can be fully assessed, letting claims of this type go forward would not be appropriate.

9. In the Motion, Movant argues that the automatic stay should be lifted under Bankruptcy Code (a) section 362(d)(1) "for cause, including but not limited to, lack of adequate protection" and (b) section 362(d)(2) because the Commonwealth "has no equity in the forfeited vehicles and said vehicles are not necessary to an effective reorganization of the Commonwealth's businesses." Motion ¶¶ 6-7. In making these arguments, Movant ignores one key issue, both of these arguments require Movant to be a secured creditor of the Commonwealth, which is not the case here. As a potential unsecured creditor of the Commonwealth, Movant is not entitled to adequate protection, therefore no "cause" exists to lift the automatic stay for lack of adequate protection. See In re Garland Corp., 6 B.R. 456, 462 (BAP 1st Cir. 1980) ("There is no express statutory requirement that holders of unsecured claims be provided 'adequate protection.'").

10. Under Bankruptcy Code section 362(g)(1), Movant has the burden of proof on the issue of the Commonwealth's equity in the property under section 362(d)(2). See 11 U.S.C. § 362(g)(1). "The classic test for determining equity under section 362(d)(2) focuses on a

---

[7] Movant filed another case that is currently pending in the state court under civil number N3CI2015-00240 in which he, in accordance with the procedures outlined in the UFA, contested the forfeiture of his Ford Mustang vehicle (2013), using the same arguments that Movant presents in the Commonwealth Action, excluding the request for class certification and the remedy of damages. By the Motion, Movant is not seeking to lift the automatic stay with respect to this action.

comparison between the total liens against the property and the property's current value." Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs.), 61 F.3d 197, 206 (3d Cir. 1995) (citations omitted). Again, Movant, misinterpreting the purpose of section 362(d)(2), ignores the key issue: Movant is not a secured creditor seeking to prevent the debtor from foreclosing on its property interest.[8] Indeed, Movant does not have any interest in the forfeited vehicles. As such, Movant cannot meet his burden under section 362 of demonstrating that the Commonwealth does not have an equity interest in the forfeited vehicles. Notably, the Motion is completely silent on how Movant could possibly be a secured creditor of the Commonwealth or how its purported liens on the forfeited vehicles, which there are none, exceed the value of such vehicles.

11. Besides Movant's throwaway argument that the automatic stay should be lifted due to Movant's lack of adequate protection, Movant does not and cannot demonstrate any other "cause" for lifting the automatic stay. Indeed, the majority of the Sonnax factors weigh against lifting the stay: (i) lifting the stay would prejudice the interests of other creditors; (ii) the balance of the harms favors keeping the stay in place; (iii) litigation of Movant's claims would interfere with the bankruptcy case; (iv) the Commonwealth Action does not involve the Commonwealth as a fiduciary; (v) no specialized tribunal has been established to hear the Commonwealth Action; (vi) the Commonwealth does not appear to have insurance coverage for the claims raised in the Commonwealth Action; and (vii) the Commonwealth Action cannot be characterized as primarily involving third parties.

12. As a potential prepetition, unsecured creditor of the Commonwealth, Movant's

---

[8] "[S]ection [362(d)(2)] is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure." 124 Cong. Rec. H11047, H11092-93; 124 Cong. Rec. S17403, S17409.

claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the Commonwealth to defend Movant's claims before determination of what that process will look like would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

13.     The impact on the Debtors if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. Granting the Motion will divert the Commonwealth's attention and resources to defending Movant's claims in multiple forums, including the extensive briefing and discovery that would be necessary to defend Movant's request for certification of a class action and will encourage other creditors to seek similar relief. The Commonwealth should instead be given the proper "breathing room" to focus on assessing its prepetition litigation claims and formulating a process to address each of those claims in the overall context of the Title III Case rather than in a piecemeal fashion. Courts routinely deny motions for relief from stay where granting the motion "may encourage other claimants to file their own stay relief motions." See, e.g., In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could

8

have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Bally Total Fitness of Greater New York, Inc., 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[G]ranting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case . . . ."), aff'd, 411 B.R. 142 (S.D.N.Y. 2009) (citation omitted); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court asbestos suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

14. Balancing of the harms clearly favors denial of the Motion. The large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to interests of other creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III Case. On the other hand, postponing liquidation of Movant's claims will neither adversely affect Movant nor promote judicial economy. There is nothing urgent about Movant's claims. Expedition of the claims will not save the Commonwealth any time or money. Instead, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of

9

adjustment. Accordingly, denial of the Motion is appropriate where, as here, prosecution of the underlying litigation impacts the bankruptcy case and prejudices the interests of other creditors.

## **CONCLUSION**

15. For the foregoing reasons, the Court should grant the Objection and deny the Motion without prejudice to Movant to re-file the Motion, if needed, after the revised protocol for motions for relief from stay can be considered by the Court.

*Remainder of Page Intentionally Left Blank*

Dated: July 11, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*