# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY ("HTA")

    Debtor.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 180, 572**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3567-LTS

**This Objection relates only to HTA and shall be filed in the lead Case No. 17 BK 3283-LTS and Case No. 17 BK 3567-LTS.**

## OBJECTION OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY <u>SOUTH PARCEL OF PUERTO RICO, S.E. [ECF NO. 180]</u>

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") as the entity authorized to act on behalf of the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

*Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay* [ECF No. 180] (the "Motion") filed by South Parcel of Puerto Rico, S.E. ("South Parcel").[2] In support of the Objection, HTA respectfully requests that the Motion should be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. At its core, South Parcel's Motion is a motion by a prepetition, unsecured creditor seeking to jump to the front of the line by collecting on prepetition claims against HTA without any determination on the allowance of such claims in HTA's Title III case. South Parcel is not seeking to lift the automatic stay to determine its damages with respect to a prepetition litigation against HTA. South Parcel has already obtained a judgment against HTA and is now seeking relief from the automatic stay to collect on such judgment. South Parcel argues that that automatic stay should be lifted because its claims arise from the expropriation of its property without just compensation in violation of the Fifth Amendment of the United States Constitution and such claims are non-dischargeable under the Bankruptcy Code. South Parcel's argument fails for two reasons. First, compensation for violations of the Fifth Amendment are dischargeable like any other debt and there is nothing in the Bankruptcy Code or PROMESA to suggest otherwise. This issue, however, is not currently before the Court. Second, even in the unlikely event that the Court would find that South Parcel's claims are not dischargeable under a plan of adjustment, such a finding does not constitute "cause" for lifting the automatic stay. See In re Shayeb, 211 B.R. 390, 391 (Bankr. D. Ariz. 1997) (concluding that finding a debt is nondischargeable does not constitute

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this Response on behalf of HTA. PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

cause to lift the automatic stay). Thus, South Parcel has not, and cannot, demonstrate "cause" for lifting the automatic stay and the Motion should be denied.

## OBJECTION

2. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by PROMESA section 301(a), provides for a stay of certain actions by non-debtor third parties including, among other things, the enforcement against the debtor "of a judgment obtained before the commencement of the case" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a).

3. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[3] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district,

---

[3] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)).

4. As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." Id. (citations omitted).

5. Although the Bankruptcy Code does not specify what constitutes "for cause" within the meaning of section 362(d)(1), section 362(b) enumerates the debts for which the automatic stay does not apply. See 11 U.S.C. §362(b). Notably, compensation for Fifth Amendment violations is dischargeable like any other debt, and there is nothing in the Bankruptcy Code or PROMESA to suggest otherwise. Even if South Parcel's claims are not dischargeable, however, dischargeability of a debt is not an exception to the automatic stay. Allowing nondischargeability, in and of itself, to operate as an additional exception to the automatic stay would render it unnecessary for Congress to have included specified nondischargeable debts, such as domestic support obligations, as not subject to the automatic stay. See Disciplinary Board of the Supreme Court of Pa. v. Feingold (In re Feingold), 730 F.3d 1268, 1277-78 (11th Cir. 2013) ("We agree . . . that nondischargeability alone cannot supply the cause contemplated by § 362(d)(1), otherwise the statutory automatic exceptions for the enumerated nondischargeable debts—like domestic

4

support obligations— found in § 362(b) would be meaningless."); In re Mu'min, 374 B.R. 149, 161 (Bankr. E.D. Pa. 2007) ("[T]he conscious decision of Congress to make an express exception for one nondischargeable debt implies that Congress intended that collection of other nondischargeable debts be subject to the automatic stay.").

6. Accordingly, any attempt by a creditor to collect on a prepetition judgment or claim is stayed, notwithstanding the nondischargeability of such debt. See In re Neilsen, 443 B.R. 718, 720 (Bankr. W.D. Va. 2011) (denying motion for relief from the stay where movant's request to have the automatic stay lifted was in reality an attempt to have the debt in question declared non-dischargeable); In re Haas, Case No. 04–11534, 2004 WL 3132027, at *2 (Bankr. E.D. Va. Dec. 22, 2004) (holding that the holder of a non-dischargeable claim must wait until "the debtor is granted or denied a discharge, the case is dismissed, or the case is closed" to pursue collection of his debt, lest he run afoul of the automatic stay).

7. Relying on the bankruptcy court's non-binding decision on the confirmation of Detroit's eighth amended plan of adjustment in In re City of Detroit, South Parcel argues that its claims arise out of the taking of its property without just compensation in violation of the Fifth Amendment of the United States Constitution and, as a result, South Parcel's claims are non-dischargeable under the Bankruptcy Code. See In re City of Detroit, 524 B.R. 147, 306-307 (Bankr. E.D. Mich. 2014). The bankruptcy court's decision in Detroit is not relevant here. As an initial matter, the Detroit decision is not binding on this Court and South Parcel has failed to cite any binding precedent regarding the dischargeability of takings claims. Moreover, the bankruptcy court in Detroit did not make a finding that takings claims are not dischargeable. Rather, the court exercised its discretion under section 944(c)(1) of the Bankruptcy Code to hold that the takings claims at issue were not dischargeable under Detroit's plan of adjustment. See In re City of Detroit,

5

524 B.R. at 270. Lastly, the Detroit decision is not an automatic stay decision, it is a plan confirmation decision. Notably, prior to ruling on the confirmation issue regarding the dischargeability of the creditors' takings claims, the bankruptcy court in Detroit did not lift the automatic stay to allow the creditors to pursue their claims against the city.

8. While HTA asserts that South Parcel's claim against it is fully dischargeable, adjudication of this issue will require significant briefing and analysis, which is not appropriate at this juncture in the Title III case. As demonstrated by the Detroit case, this is a confirmation issue that will be analyzed in the context of HTA's plan of adjustment. Further, even if this Court did determine such claims could not be discharged, that alone would not constitute "cause" for lifting the stay. See In re Feingold, 730 F.3d at 1277-78 (holding that the nondischargeability of a debt alone cannot supply the cause contemplated by section 362(d)(1) to lift the automatic stay); In re Shayeb, 211 B.R. at 391 (concluding that the finding that a debt is nondischargeable does not constitute cause to lift the automatic stay). South Parcel would have to demonstrate "cause" for lifting the automatic stay independent of the dischargeability of its claims, which, as demonstrated below, it cannot do because the majority of the Sonnax factors are in favor of maintaining the automatic stay.

9. **Sonnax Factors 1, 2, 7, and 10**: Title III of PROMESA applies with respect to all debts, claims, and liens asserted against HTA (as such terms are defined in Bankruptcy Code section 101). See 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." FCC v. NextWave Pers.

6

Commc'ns Inc., 537 U.S. 293, 302 (2003).

10. South Parcel's claims have already been liquidated. The only issue left to be determined is the treatment of such claims in HTA's Title III case, which requires an analysis of bankruptcy law that is not currently before this Court. This issue is central to HTA's Title III case and any determination on such issue directly impacts both HTA and its creditors. Lifting the automatic stay to permit South Parcel to collect its judgment against HTA would undermine the Title III process, prejudicing the interests of other creditors and upending the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

11. Indeed, when lifting the automatic stay to permit other takings claims to proceed to a determination on damages, this Court specifically preserved the automatic stay with respect to the execution of any judgment. See Memorandum Order [ECF No. 600] (lifting the automatic stay to permit movant to proceed with the determination of damages in takings case but maintaining the stay "in all other respects, including as to entry and execution of judgment and provisional remedies"). Accordingly, Sonnax factors 1, 2, 7, and 10 weigh in favor of denying the Motion.

12. **Sonnax Factor 3**: South Parcel's prepetition claims do not involve HTA as a fiduciary and South Parcel has neither made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 3 weighs in favor of denying the Motion.

13. **Sonnax Factor 4**: No specialized tribunal has been established to resolve any issues concerning South Parcel's prepetition claims. As prepetition, unsecured claims against a Title III debtor, any determination regarding the allowance or dischargeability of such claims is properly before this Court. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

14. **Sonnax Factor 5**: HTA does not appear to have insurance coverage for South Parcel's prepetition claims and South Parcel has neither made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 5 weighs in favor of denying the Motion.

15. **Sonnax Factor 6**: South Parcel's prepetition claims are only asserted against HTA and do not involve third parties. Thus, Sonnax factor 6 weighs in favor of denying the Motion.

16. **Sonnax Factor 11**: As discussed above, the only open issue regarding South Parcel's claims is the allowance and dischargeability of such claims in the context of HTA's title III case. These issues have not been briefed and are not currently before this Court. Thus, Sonnax factor 11 weighs in favor of denying the Motion.

17. **Sonnax Factor 12**: South Parcel argues that it will suffer irreparable harm if the automatic stay is not lifted to allow it to collect on its prepetition judgment against HTA because it entered into an agreement with FirstBank Puerto Rico ("FirstBank") whereby South Parcel pledged all payments to be received from HTA to FirstBank, while also personally guaranteeing such payments. South Parcel, not HTA, made the decision to enter into this arrangement with FirstBank, and HTA and its creditors should not be held hostage because of South Parcel's

8

decision. If any harm is incurred by South Parcel, it is due to South Parcel's own conduct. Each of the debtors in these Title III cases has numerous creditors holding significant claims facing similar difficulties. South Parcel's claims will be dealt with in the claims resolution process in the Title III case along with all of HTA's other prepetition claims.

18. Lifting the automatic stay to permit South Parcel to collect on its prepetition judgment without a determination on the allowance of South Parcel's claims in the Title III case, let alone confirmation of a plan of adjustment for HTA, will completely undermine the Title III process and prejudice the interests of HTA and its creditors. At this point, and in a vacuum where not all claims against HTA can be fully assessed, letting claimants of this type proceed to collection would not be appropriate. HTA and its stakeholders would be poorly served if individual creditors were permitted to jump to the front of the line prior to any reconciliation and analysis on the claims against HTA has even begun. The relief requested by South Parcel will not further judicial economy and would prejudice the interests of other creditors in HTA's Title III case. Thus, Sonnax factor 12 weighs in favor of denying the Motion.

## CONCLUSION

19. For the foregoing reasons, the Court should grant the Objection and deny the Motion.

Dated: July 17, 2017
      San Juan, Puerto Rico

9

Respectfully submitted,

*/s/ Suzzanne Uhland*
John J. Rapisardi
Suzzanne Uhland
Diana M. Perez
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s/ Andrés W. López*
Andrés W. López
USDC No. 215311

THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C.
902 Fernández Juncos Ave.
San Juan, PR 00907
Tel: (787) 294-9508
Fax: (787) 294-9519

*Co-Attorney for the Puerto Rico Fiscal Agency and Financial Advisory Authority*