# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>    Debtors. | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>    Debtor | PROMESA<br>Title III<br>No. 17 BK 3567-LTS |
| IN RE: LABOR CLAIMS AGAINST PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY FILED BY TENURED MANAGERIAL EMPLOYEES INCLUDED IN (EXHIBIT I) | |

## MOTION REQUESTING RELIEF FROM STAY

**COME NOW**, the Movants listed in Exhibit I of this Motion, who are or were tenured managerial employees of Debtor, the Puerto Rico Highway Transportation Authority ("HTA"), and who have presented employment claims against the Debtor before administrative and/or

judicial forums which are currently pending and have been stayed pursuant to Title III of PROMESA, represented by the undersigned counsel, seeking relief from the stay to allow the continuation of these actions.

## I.   INTRODUCTION

The appearing parties are or were tenured managerial civil servants of debtor, Puerto Rico Highways and Transportation Authority (hereinafter, "HTA"). They have filed and are currently prosecuting employment claims against the HTA before different judicial and administrative forums. The HTA has requested to stay most of these cases pursuant to the captioned PROMESA Title III proceedings involving the HTA. In some of these cases the forum has acted on the Notice of Stay filed by the HTA through its attorneys. In some others, the Forum has still to act in response to the Notice of Stay filed by HTA. Not all the cases filed by the Movants involve a monetary claim, although most can have an economic impact on the estate of the HTA.[1]

Movants submit that relief from stay of the proceedings corresponding to their claims pending before different forums is appropriate under Section 362 (d) of the Bankruptcy Code. corresponding to their claims against HTA should be allowed to continue because. This, since the appearing parties would be left with no forum to pursue their claims as a result of the stay.

Thus, through this Motion, Movants respectfully request that the stay be lifted to all the proceedings arising from the claims they have filed against the HTA.

## II.   JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to section 306(a) of PROMESA, 48

---

[1] Exhibit I is a chart which contains the list of Movants as well as the information of the nature of their respective claims, number of the matter and the forum before which the claims are pending. It also identifies those matters where the HTA has filed a Notice of Stay pursuant to Title III of PROMESA or Sec. 362 of the Bankruptcy Code and the action taken by the forum in response to such notice. Exhibit II (A, B, C & D) are copies of sample Notices of Stay that have been filed by the HTA in different cases of Movants. The contents of these motions are identical to the notices of stay filed by the HTA in all other matters identified in Exhibit 1.

2

U.S.C. § 2166(a).

Venue is proper pursuant to PROMESA section 307(a), 48 U.S.C. § 2167(a).

The relief requested is based upon section 362 of the Bankruptcy Code, 11 U.S.C. § 362, applicable to this case by section 301(a) of PROMESA, 48 U.S.C. § 2161(a), and Federal Rules of Bankruptcy Procedure 4001 and 9014 and the Local Bankruptcy Rule 4001-1 for the District of Puerto Rico, also applicable to this case by section 301 of PROMESA, 48 U.S.C. § 2161.

### III. BACKGROUND

1. The HTA is a public corporation of the Commonwealth of Puerto Rico created to assume responsibility for the supervision and construction and maintenance of roads, highways and other mass transportation facilities in Puerto Rico. Article 2 of Law No. 74 of June 23, 1965, as amended, 9 P.R. Laws Ann. § 2002.

2. Being a public corporation, the HTA is exempted from the provisions of the Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico, which governs the administration of human resources in the territorial government. Article 5, Section 5.3, of Law No. 184 of August 3, 2004, as amended, 3 P.R. Laws Ann. § 1461e. However, the HTA is required to adopt personnel regulations that incorporate the merit principle within the administration of its human resources. Id.

3. The Puerto Rico Supreme Court has stated that the merit principle guarantees that only the fittest serve the government. González Segarra v. CFSE, 188 D.P.R. 252, 280 (2013). Pursuant to it, employees must be selected, promoted and retained solely on the basis of their capacity and merit. Id. Consequently, the merit principle covers the entire employment relationship of tenured employees with the public employer; from recruitment until termination. Vázquez Cintrón v. Banco de Desarrollo Económico, 171 D.P.R. 1, 22 (2007).

4. On November 30 2011, the HTA approved its current Personnel Manual, which incorporates the merit principle in the administration of its human resources. Art. 1 of Personnel Manual of the HTA, Regulation No. 8111. Pursuant to the merit principle adopted in the Manual, HTA's career (tenured) employees have a protected interest in their employment. See also, Vázquez Cintrón v. Banco de Desarrollo Económico, 171 D.P.R. at p. 21. Such interest cannot be affected by the HTA without providing procedural guarantees that comply with due process of law. Id., at pp. 21-22. In fact, the Supreme Court of Puerto Rico has recognized a protected property interest in the employment of tenured employees of the Government of Puerto Rico and its instrumentalities. Torres Solano vs. PRTC, 127 D.P.R. 499 (1990).

5. As a consequence of the above, the HTA has the responsibility to provide its career employees an adequate process and forum where they can pursue claims arising from actions taken against them by the employer and that affect the areas in which the merit principle is applicable; to wit: (1) recruitment; (2) classification; (3) promotions, demotions and transfers; (4) training; and (5) retention. González Segarra v. CFSE, 188 D.P.R. at p. 285. Such a process should comply with the following basic requirements: (1) adequate notification of the process; (2) impartial judge; (3) opportunity to be heard; (4) right to cross-examine witnesses and to examine the contrary evidence; (5) right to be represented by an attorney, and (6) that the decision be based on the record. Id. See also, Vázquez González v. Mun. San Juan, 178 D.P.R. 636, 643 (2010); Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1, 46-47 (2010); Rivera Rodriguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 889 (1993).

6. Any decision by the HTA that affects the proprietary rights of any of its career (tenures) employees is subject to review through appeals in a process where these requirements are guaranteed. González Segarra v. CFSE, 188 D.P.R. at p. 279; Vázquez González v. Mun. San

4

Juan, 178 D.P.R. at p. 643-644.

7. Pursuant to Article 19 of Regulation No. 8111, the HTA created an independent appellate body, composed of three (3) administrative law judges, before which actual or former managerial employees can pursue their employment claims. To guarantee their independence, Section 19.3 of Regulation No. 8111 provides that the administrative judges cannot be employees of the HTA. Section 19.7 establishes the procedure to be followed by employees challenging employer's actions concerning the areas of the merit principle. The process affords managerial employees or former employees with an adequate opportunity to litigate their cases and it complies with the requirements of the due process of law. HTA's Board of Appeals has primary and exclusive jurisdiction to attend such claims. Section 19.2 of Regulation No. 8111.

8. In addition to the administrative process explained above, certain federal and state statutes give HTA's managerial employees the right to pursue their employment claims against the HTA in other federal and judicial forums such as the Puerto Rico Public Service Appeals Commission (CASP by its Spanish acronym) and the Commonwealth Courts at all levels. In fact, according to Puerto Rico law the decisions of the HTA Board of Appeals are reviewed by the Puerto Rico Appeals Court. See, Art. 4.004 of Puerto Rico's Judiciary Law" (*Ley de la Judicatura de Puerto Rico*", Law 201 of August 22, 2003, as amended, 4 PR Laws Ann., 24 (y) (c); Section 4.4 of the Puerto Rico Uniform Administrative Procedure Act, Law 170 of August 12, 1988, as amended, 3 PR Laws Ann., sec. 2174.

9. Other statutes authorize the filing of claims by the HTA employees before federal and Commonwealth's Courts. See, among others, Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq*.); Americans with Disabilities Act (29 U.S.C. § 706 *et seq*.); Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.); Equal Pay Act (29 U.S.C. § 206(d)); Fair

5

Labor Standards Act (29 U.S.C. § 201 *et seq.*); Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); Puerto Rico's Law Prohibiting Discrimination in Workplace (Act No. 100 of June 30, 1959, as amended, 29 P.R. Laws Ann. §146 *et seq.*); Puerto Rico's Law Prohibiting Discrimination Against Disabled Persons (Act No. 44 of July 2, 1985, 1 P.R. Laws Ann. §501 *et seq.*); Puerto Rico's Working Mothers Act (Act No. 3 of March 13, 1942, 29 P.R. Laws Ann. §§467-474); Puerto Rico's Law Prohibiting Discrimination in Employment for Reasons of Gender (Act No. 69 of July 6, 1985, 29 P.R. Laws Ann. §§1321-1341); Puerto Rico's Law Prohibiting Discrimination at Workplace for Sharing Testimony (Act No. 115 of December 20, 1990, 29 P.R. Laws Ann. §§194-194b); and Puerto Rico's Law Against Sexual Harassment in Employment (Act No. 17 of April 22, 1988, 29 P.R. Laws Ann. §155).

10. Prior to the filing of this Title III case, the appearing parties had filed employment actions in judicial and administrative forums against the HTA. Such cases arise from state and federal employment laws and administrative regulations, unassociated and unrelated to the collection of any public or private debt owed by the HTA.

11. When the instant Title III petition was filed, the cases were active and, as of today, have not concluded.

12. As shown by the chart at Exhibit I, most of the proceedings being conducted in regards to the claims filed by the appearing parties against HTA have been stayed after the HTA filed notices of the commencement of the proceedings under the instant action at the respective forums. The HTA explained in such notices that the filing of a petition under Title III has the effect of an automatic stay pursuant to Section 301(a) of PROMESA, which states, among other things, that 11 U.S.C. §362 of the United States Bankruptcy Code are applicable for petitions under Title

6

III. See Exhibits II A, B, C & D.[2]

13. The Movants are not investors nor creditors of public debt of the HTA.

14. The appearing parties' employment claims do not have any relation with the debts that prompted PROMESA. However, on July 13, 2017 the undersigned received copy of the "Notice of Commencement of Cases Under Title III of PROMESA, Entry of Order for Relief and Related Matters in one of the above captioned matters.

15. The final adjudication of the cases by the judicial and/or administrative forums where the proceedings were filed and are currently pending, is essential to determine the liability, if any owed by the HTA, Debtor in the captioned proceeding. In fact, without the continuation and final adjudication of the proceedings being held by the forums where the Movants filed ther claims it would be impossible to assess, much less determine the extent of the debts that HTA may have with the appearing parties.

## IV. LEGAL GROUNDS FOR RELIEF FROM STAY

16. The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), see 48 U.S.C. §§ 2102-2241, is a bankruptcy-like statute enacted by Congress in June 2016 to help address the financial crisis in Puerto Rico. See generally, Peaje Inv. LLC v. García-Padilla, 845 F.3d 505, 509 (1st Cir. 2017).

17. Congress approved the Act in response to the fiscal crisis faced by the Commonwealth of Puerto Rico and its instrumentalities, including the HTA, resulting from the excessive borrowing with which Puerto Rico has been financing its fiscal deficits for years. By the time PROMESA was enacted, the total public-sector debt was approximately $73 billion,

---

[2] These exhibits are copies of model motions filed by attorneys for the HTA before the different forums where Movants currently are prosecuting claims against the Debtor. The documents submitted correspond to the forums as follows: Exhibit II-A (HTA Board of Appeals); Exhibit II-B (Public Service Appeals Commission); Exhibit II-C (Court of First Instance of Puerto Rico) and Exhibit II-D (Puerto Rico Court of Appeals).

7

including more than $4 billion owed by the HTA.

18. PROMESA created an Oversight Board with the purpose of providing "a method for a covered territory to achieve fiscal responsibility and access to the capital markets." Section 101(d) of PROMESA, 48 U.S.C. § 2121(d). Also, the statute provides two mechanisms for restructuring Puerto Rico's debts: (a) consensual under Title VI, 48 U.S.C. §§ 2231-2232, and (b) judicial pursuant to Title III of PROMESA, 48 U.S.C. §§ 2161-2177.

19. After no consensual agreements were reached under Title VI, the Oversight Board filed a petition to this Court requesting the commencement of Title III judicial proceedings to restructure Puerto Rico's debt. On May 21, 2017, the Board filed a similar petition as to HTA in the above captioned case.

20. PROMESA includes a temporary, automatic stay provision for debt-related litigation against the government of Puerto Rico. See 48 U.S.C. § 2194(a)-(b).

21. Section 362 of the Bankruptcy Code is applicable to Title III cases as expressly stated in Section 301 of PROMESA.

22. Section 362 (d)(1) of the Bankruptcy Code states that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

23. By its plain language, Section 362(d)(1) permits the Court to grant relief from the automatic stay of litigation provided by the Act "for cause." In its common meaning, "cause" can be defined as to trigger, instigate or initiate, among numerous other meanings and synonyms. However, section 362(d)(1) is barren of a statutory definition of "cause".

24. PROMESA also lacks a definition of what constitutes "cause" for purposes of

8

requesting relief from the automatic stay.

25. Since the Bankruptcy Code and PROMESA do not define "cause", in order to ascertain its meaning courts must look at the judicial interpretations of the term within the context of Section 362 of the Bankruptcy.

26. In defining what constitutes "cause" for relief from the automatic stay, courts have held that **allowing a matter to proceed in another forum exemplifies what may constitute cause to lift the automatic stay**. Stephens v. Menninger (In re Credit Life Corp.), 184 B.R. 839, 841 (M.D. Fla. 1995); Murray Indus. v. Aristech Chem. Corp. (In re Murray Indus., Inc.), 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990); Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc. (In re Mid-Atlantic Handling Sys., LLC), 304 B.R. 111, 130 (Bankr. D. N.J. 2003); Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992).

27. The legislative history of section 362(d)(1) supports this notion as well:

> **It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.** S. Rep. No. 95-989 at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836. (Emphasis ours)

28. The definition of "cause" has evolved through case law. The case of In re Fernstrom Storage and Van Co., 938 F.2d 731 (7th Cir.1991), and its progeny paved the way to identify "cause" by inquiring whether: (a) any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, (b) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (c) the creditor has a probability of prevailing on the merits. In re Fernstrom Storage and Van Co., *supra*.

29. This list was expanded by the First Circuit Court of Appeals in opinions rendered in cases that are on point to establish that the rule of law to determine "cause" under section 362(d)

9

hinges on the factual scenario and a case-by-case analysis. In re Unanue-Casal, 159 B.R. 90, 96 (D.P.R.1993), aff'd 23 F.3d 395 (1st Cir.1994). In *Unanue*, the court listed various factors to be considered in determining whether cause exists to lift the automatic stay. Among these are the following:

> (1) Whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the non-bankruptcy proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee or other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the non-bankruptcy proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the "balance of hurt."

159 B.R. at 95-96 (D.P.R. 1993), citing In Re Curtis, 40 B.R. 795, 799-800 (Bankr. D.Utah 1984).

30. The U.S. District Court for the District of Puerto Rico has applied the factor test to determine if cause exists to lift or modify the automatic stay under 362(d) in C & A, S.E. v. P.R. Solid Waste Mgmt., 369 B.R. 87 (D.P.R. 2007). The Court held that in order to lift the stay not all factors have to be proven; some may even not apply to the facts of the case, and therefore, courts may rely on a few factors to find that relief from stay is warranted for cause. C&A, S.E., *supra* ("The party moving for the automatic stay to be lifted need not prove a plurality of these factors. The Courts will generally rely in only a few factors … to determine that sufficient cause exists to lift the stay." Citations omitted.)

31. At its core, the assessment of whether cause exists hinges on a comparative analysis of whether the harm to the movant that would result from a continuation of the stay would

10

outweigh any harm that might be suffered by the debtor or the debtor's estate, if the stay is lifted. In re Montgomery 285 B.R. 345 (Bkrtcy. D.R.I. 2002). Other bankruptcy courts, as in the case of In re Haines, 309 B.R. 668 (Bankr. D. Mass. 2004), have held that "where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial." Hence, the recurring factors courts consider when determining whether "cause" exists to lift stay to allow proceedings to continue in a non-bankruptcy forum, are focused on prejudice and conservation of judicial resources.

32. The *Unanue* factors should be applied in this case. These factors weigh strongly in favor of lifting the stay of the proceedings pending before different adjudicative forums regarding the claims filed by Movants.

33. The expeditious and economical determination of litigation between the parties merits relief from the automatic stay to allow the judicial and administrative forums to properly and finally assess the HTA's liability to the Movants. The alternative option would entail the litigation of such matters before this Court, which would be tantamount to involve this Honorable Court in matters of a specialized nature that require the application of local public labor laws, concepts and regulations which are at the very least foreign to this Honorable Court. These circumstances definitively point to the solution of leaving to *vis a vis* a resolution by the proper forum in each case through the corresponding procedures.

34. The relief from stay is proper in this case since it will cause the resolution of issues in the judicial or administrative forum (Unanue factor 1). Also, the relief requested will not interfere with this Title III proceeding (Unanue factor 2). The relief requested will allow that the cases continue in forums with expertise in the public employment issues prosecuted within the claimants' foreign actions (Unanue factor 4). Relief is also warranted because many of the actions

11

currently paralyzed involve third parties (Unanue factor 6). The familiarity of the original forum with the facts and the claims presented by Movants deserve deference to those forums and relief from stay in the interest of judicial economy and promptness (Unanue factor 10). Some of the cases currently litigated in state or federal judicial or administrative forums are in an advanced stage or proximate to trial or evidentiary hearing, justifying to lift the stay (Unanue factor 11). In addition, relief from stay is merited in this case because it would unduly prejudice the Movants, if they continue to be precluded from prosecuting their causes of action in the original forums (Unanue factor 12). The stay of the Movants' claims causes irreparable damages since it leaves them with no forum in which to prosecute such claims (Unanue factor 12). As seen, a plurality of the Unanue factors apply and tilt the scales in favor of the relief of stay of the actions prosecueted by Movants against HTA.

35. The Court should also bear in mind that the crux of the relief requested is to allow a full adjudication of the causes of action in the judicial or administrative proceedings filed by Movants. No immediate threat of collecting funds from the debtor (HTA) exists because of the fact that the claims would have to be adjudicated before any monies are due to Movant by the HTA.

36. Therefore, the balance of the equities, the interest of judicial economy, and the expeditious and economical determination of litigation for the parties complying with virtually all of the Unanue factors, applicable to the circumstances in this case, constitute cause for relief from the automatic stay to allow Movants to continue and complete litigation before the original forums.

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant this motion for relief from stay to allow Movants to continue employment proceedings currently pending in

case before judicial and administrative forums.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed this Motion with the Clerk of the Court using the CM/ECF System, which will send notice to all registered participants. Movants have also sent via Certified Mail and e-mail copies of this motion to counsel for HTA in various of the proceedings that have been stayed pursuant to the Petition in the above-captioned matter. These are: Lcdo. Juan M. Maldonado De Jesús, Oficina del Asesor Legal ACT, P O Box 42007 San Juan, Puerto Rico 00940-2007 and jumaldonado@dtop.pr.gov; Carlos J. Garcia Bonilla, Oficina de Asesoría Legal ACT, PO Box 42007 San Juan, Puerto Rico 00940-2007 and cjgarcia@dtop.pr.gov; María Elena Vázquez Graziani and Rocío Ramos Santiago, Vázquez Graziani & Rodríguez, 33 Calle Resolución, Suite 805 San Juan, Puerto Rico 00920-2707 and rocioramos@vgrlaw.com and vazgra@vgrlaw.com, respectively; Sarah G. Sáez López and Raúl Castellanos, Development & Construction Law Group LLC PMB 443, Suite 112, 100 Grand Paseos Boulevard San Juan, Puerto Rico 00926 and rcastellanos@devconlaw.com and ssaez@devconlaw.com, respectively.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 19th day of July, 2017.

S/JESÚS R. MORALES CORDERO
USDC-PR 210609
BUFETE MORALES CORDERO, CSP
Attorneys for Movants
PO Box 363085
San Juan, Puerto Rico 00936-3085
Tel. (787) 624-4299/Fax (787) 777-1410
bufetemoralescordero@gmail.com/moracor@gmail.com