# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------X

| | |
|---|---|
| IN RE: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| | No. 17 BK 3283-LTS |
| as representative of | |
| | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Debtor. | |

---------------------------------------------------------------X

| | |
|---|---|
| ACP MASTER, LTD., *et al.*, | Adv. No. 17-189-LTS |
| Plaintiffs, | |
| v. | |
| THE COMMONWEALTH OF PUERTO RICO and<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| Defendants. | |

---------------------------------------------------------------X

| | |
|---|---|
| AMBAC ASSURANCE CORPORATION, | |
| | Adv. No. 17-159-LTS |
| Plaintiff, | |
| v. | |
| THE COMMONWEALTH OF PUERTO RICO, *et al*, | |
| Defendants. | |

---------------------------------------------------------------X

| | |
|---|---|
| ASSURED GUARANTY CORP., *et al.*, | |
| | Adv. No. 17-156-LTS |
| Plaintiffs, | |
| v. | Adv. No. 17-155-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et* | |

*al*,

                Defendants.

---------------------------------------------------------------X

PEAJE INVESTMENTS LLC, *et al.*,

                                          Adv. No. 17-151-LTS

                Plaintiffs,

     v.                                   Adv. No. 17-152-LTS

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY, *et al*,

                Defendants.

---------------------------------------------------------------X

### RESPONSE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD TO INFORMATIVE MOTION OF AD HOC GROUP OF GO CLAIMHOLDERS REGARDING COORDINATION OF BRIEFING AND DISCOVERY

To the Honorable United States District Judge Laura Taylor Swain:

      The Financial Oversight and Management Board for Puerto Rico (the "FOMB"), the Commonwealth of Puerto Rico (the "Commonwealth"), and the Puerto Rico Highways and Transportation Authority ("HTA," and collectively with the Commonwealth, the "Debtors")[1], Carlos Contreras Aponte, Ricardo Rosselló Nevares, Raúl Maldonado Gautier, José Iván Marrero Rosado, Gerardo Portela Franco, Natalie A. Jaresko, José B. Carrión III, Andrew G. Biggs, Carlos M. García, Arthur J. Gonzalez, José R. González, Ana J. Matosantos, David A. Skeel, Jr., Elías Sánchez, and the Puerto Rico Fiscal Agency and Financial Authority (collectively, the "Defendants"), respond to the GO Group's[2] Informative Motion Regarding Coordination of Briefing and Discovery [Adv. No. 17-189-LTS, D.I. 17] (the "Motion") and state as follows:

---

[1] The Debtors respond to this motion by and through the FOMB, as their representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"). PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

[2] The "GO Group" is comprised of the parties identified as plaintiffs in the adversary proceeding captioned *ACP Master, Ltd. v. Commonwealth of Puerto Rico* (the "GO Group Case") in the Commonwealth Title III case. [Adv. No. 17-189, D.I. 1 ¶ 17.]

1

## PRELIMINARY STATEMENT

1. In requesting coordinated discovery and briefing, the GO Group seeks to inject themselves, once again, into adversary proceedings involving issues separate and apart from the claims being asserted by the GO Group in the Commonwealth Title III case. The adversary proceedings brought by claimholders relating to bonds issued by HTA (the "HTA Bonds") relate to whether the HTA plaintiffs have a secured right to certain HTA revenues. The GO Group's claims are far different, and deal with their assertion that certain revenues can be used only to repay the Commonwealth's general obligation debt. The GO Group's participation and focus on their claims would unnecessarily expand and complicate the narrower and more focused issues raised in the HTA cases. Nothing would be gained by coordination of briefing and discovery on the separate issues raised in the HTA cases and the GO Group's case.

2. The GO Group's Motion is simply a repackaged version of the GO Group's unsuccessful intervention motion in an interpleader filed by the Bank of New York Mellon ("BNYM") in the Title III case filed by the Puerto Rico Sales Tax Financing Corporation ("COFINA"). The logic underlying denial of that motion applies here as well.

3. Although there is no need to coordinate briefing and discovery, Defendants recognize there may be a benefit to sharing the discovery in the HTA cases with the GO Group. Doing so could assist in the overall resolution of the issues presented in these Title III cases without complicating and delaying the HTA cases.

## PROCEDURAL HISTORY

4. The procedural history of the cases filed by the Commonwealth and HTA under Title III of PROMESA (the "Title III Cases"), as well as the various adversary proceedings filed thereunder, is well known to this Court. A brief summary regarding the adversary cases at issue in the Motion, however, is worth noting.

5. On May 31, 2017, Peaje Investments LLC, in its capacity as a holder of certain HTA Bonds, initiated adversary proceedings seeking declaratory and injunctive relief in the HTA Title III Case (Adv. No. 17-151 and Adv. No. 17-152, collectively the "*Peaje* Case"). On June 3, 2017, Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), in their capacity as insurers of certain HTA Bonds, initiated adversary proceedings seeking declaratory and injunctive relief in the HTA Title III Case (Adv. No. 17-155 and Adv. No. 156, collectively the "*Assured* Case"). On June 8, 2017, Ambac Assurance Corporation ("Ambac"), in its capacity as holder and insurer of certain HTA Bonds, initiated an adversary proceeding seeking declaratory and injunctive relief in the HTA Title III Case (Adv. No. 17-159, the "*Ambac* Case," and collectively with the *Peaje* and *Assured* Cases, the "HTA Cases").

6. Plaintiffs in the HTA Cases assert that they hold liens on revenues from at least two sources: HTA's toll facilities and, in the *Assured* Case and *Ambac* Case, certain excise tax revenues and fees received by HTA from the Commonwealth. The HTA plaintiffs claim that the Debtors intend to utilize revenues from these sources to address the fiscal crisis, rather than maintaining them as alleged "pledged special revenues" for the sole purpose of satisfying payment obligations under the HTA Bonds. [*See, e.g.*, *Peaje* Compl., Adv. No. 17-151-LTS, D.I. 1 ¶¶ 94-95; *Assured* Compl., Adv. No. 17-155-LTS, D.I. 1 ¶ 31; *Ambac* Compl., Adv. No. 17-159-LTS, D.I. 1 ¶ 14.]

7. On June 27, 2017, the GO Group filed the GO Group Case in the Commonwealth Title III Case. Unlike Peaje, Ambac, and Assured, the GO Group members are not alleged claimholders with respect to HTA Bonds. Rather, they are comprised of a subset of holders of general obligation bonds ("GO Bonds") issued by the Commonwealth. The GO Group alleges that revenues pledged to support the payment of bonds issued by, or obligations of, several other

3

Commonwealth instrumentalities, including but not limited to the HTA Bonds,[3] constitute "available resources" of the Commonwealth, and therefore should be clawed back or set aside to satisfy the Commonwealth's obligations to GO Bondholders. [*See, e.g.*, Adv. No. 17-189, D.I. 1 ¶ 27.] The deadline for the defendants in the GO Group Case to respond to the complaint is August 7, 2017.

8. On July 7, 2017, following a meet-and-confer process and the submission of a detailed preliminary pretrial statement, the Court entered the First Scheduling Order in the HTA Cases. [Adv. No. 17-156, D.I. 33 (the "Scheduling Order").]. The Scheduling Order requires parties producing discovery in the *Peaje* Case to disclose such discovery to the *Ambac* and *Assured* parties. [*Id.* ¶ 1.] The Scheduling Order also set a July 28, 2017 deadline for the defendants in the *Ambac* and *Assured* Cases to respond to the complaints, noting that any dismissal motion practice "must be preceded by a meet-and-confer process aimed at the refinement of the issues to be litigated and coordination of the briefing in all three cases to avoid unnecessary duplication."[4] [*Id.* ¶ 2.] Lastly, the Scheduling Order set a date for a joint pretrial conference in all of the HTA Cases, at which the Court "intends to coordinate discovery and the briefing of motion practice . . . to the greatest extent feasible."[5] [*Id.* ¶ 3.]

9. On July 11, 2017, without having filed any pleadings or motions in the HTA Cases, the GO Group filed the Motion. The GO Group seeks to inject themselves into discovery

---

[3] Other revenues in the GO Group Case are (*i*) excise taxes and vehicle fees pledged to support the payment of bonds issued by or obligations of the Metropolitan Bus Authority, (*ii*) hotel occupancy taxes conditionally pledged to support the payment bonds issued by Puerto Rico Convention Center District Authority, (*iii*) federal excise taxes imposed on rum and other items produced in the Commonwealth and sold in the United States that are conditionally pledged to support the payment of bonds issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA"), (*iv*) revenues from excise taxes on non-diesel petroleum products pledged to support certain PRIFA bonds, and (*v*) revenues from a special property tax levied pursuant to Act 83 of 1991. [Adv. No. 17-189, D.I. 1, ¶¶ 43-46, 48.]
[4] The Court's use of the phrase "all *three* cases," [*id.* (emphasis added)] refers to the two adversary complaints in the *Assured* Proceeding and the single adversary complaint in the *Ambac* Proceeding.
[5] The Scheduling Order set the joint pretrial conference for September 27, 2017. [*Id.* ¶ 3.] The Court subsequently amended the Scheduling Order in order to change the date to September 26, 2017. [Adv. No. 17-156, D.I. 34.]

and briefing in the HTA Cases. [Motion ¶ 16.]

## ARGUMENT

### I. Coordination Is Inappropriate Because the Issues in the HTA Cases Are Different Than the Issues Raised by the GO Group

10. The HTA Cases center on a specific question: whether excise taxes and other HTA revenues constitute "pledged special revenues" that may only be directed to the holders of HTA Bonds. This necessarily implicates the threshold question of whether plaintiffs have an enforceable lien on those revenues.

11. This is distinct from the issues raised in the GO Group Case, which are all based on the GO Group's assertion that whatever revenues the Commonwealth has constitute "available resources" that must first be used to satisfy the Commonwealth's obligations under the GO Bonds. The HTA revenues at issue in the HTA Cases are only one of a laundry list of revenue sources to which the GO Group claims ownership. [*See supra* n.3.]

12. Defendants intend to argue that plaintiffs in the HTA Cases do not have valid enforceable liens on the HTA revenues. If Defendants are successful, the GO Group can pursue – in its own case – any claim it may have to those revenues. The issue of what the Commonwealth is, or is not, permitted to do with its revenues is outside the scope of the HTA cases, but it is the essence of the GO Group's case. If, on the other hand, plaintiffs in the HTA Cases prevail in full, then neither the Commonwealth nor the GO Group would have any interest in the subject revenues.

13. The HTA Cases, therefore, can be fully resolved without interference from any other parties. The parties to the HTA Cases can engage in discovery and evaluate the claims asserted in those actions without touching the issues in the GO Group Case. Especially in light of this Court's desire for a "refinement of the issues to be litigated" [Adv. No. 17-156, D.I. 33 ¶

5

2], there is no need to expand the discovery within the HTA cases to incorporate the GO Group's distinct allegations.

14. The GO Group recognizes that there are many differences between their case and the HTA Cases, including the fact that the *Peaje* Case does not address the claw back of any HTA revenues whatsoever. [Motion ¶¶ 6, 16 n.6.] However, it argues that it is not necessary for the claims to overlap, because the Court entered a joint scheduling order notwithstanding the existence of variations between the claims asserted by Peaje, Ambac, and Assured. [*Id.*] The GO Group ignores the fact that the HTA cases involve HTA bonds – which the GO Group does not own. In addition, there is a unifying threshold issue based on the specific facts in the HTA cases: whether the HTA claimholders have valid and enforceable liens.

15. The GO Group's attempt to insert itself into the HTA Cases is similar to their failed intervention in the BNYM interpleader adversary proceeding (the "BNYM Case"). This Court denied the GO Group's motion to intervene in the BNYM Case, in part based on the distinct issues raised on the one hand by BNYM and the COFINA bondholders, and by the GO Group on the other. [Adv. No. 17-133, D.I. 276 at 5-6.] The Court also held that the GO Group did not have standing to intervene because its members were creditors of the Commonwealth, not COFINA, with only a conditional claim to the subject funds that "lack[ed] the direct interest necessary to establish prudential standing." [*Id.* at 7.]

16. The GO Group has not sought to intervene in the HTA Cases. Nevertheless, the reasons behind this Court's decision to deny intervention in the BNYM Case are applicable here. Like the bonds issued by COFINA, the GO Group members are not holders of HTA Bonds. Instead, they are merely claimholders as to the Commonwealth with no direct claim to the funds at the center of the HTA Cases.

**II. The Defendants Do Not Oppose Sharing Discovery in the HTA Cases with the GO Group**

17. While there are good reasons not to coordinate briefing and discovery, Defendants recognize that there may be benefits to sharing discovery in the HTA cases (including transcripts of depositions) with the GO Group, subject to an appropriate protective order. Sharing discovery in this manner will allow the GO Group access to the documents that it purports to require without complicating and delaying the HTA Cases.

*[Remainder of Page Left Intentionally Blank]*

| | |
|---|---|
| Dated: July 19, 2017<br>New York, NY | Respectfully submitted,<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br>Email: hermann.bauer@oneillborges.com<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Stephen L. Ratner (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>Email: sratner@proskauer.com<br><br>Timothy W. Mungovan (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>One International Place<br>Boston, MA 02110<br>Tel: (617) 526-9600<br>Fax: (617) 526-9899<br>Email: tmungovan@proskauer.com<br><br>*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority* |

*[Remainder of Page Left Intentionally Blank]*

8

Dated: July 19, 2017
    New York, NY

        /s/ Peter Friedman

        John J. Rapisardi
        Suzzanne Uhland
        Diana M. Perez
        (Admitted *Pro Hac Vice*) USDC No. 215205
        **O'MELVENY & MYERS LLP**
        7 Times Square
        New York, NY 10036
        Tel: (212) 326-2000
        Fax: (212) 326-2601

        -and-

        Peter Friedman
        (Admitted *Pro Hac Vice*)
        1625 Eye Street, NW
        Washington, DC 20006
        Tel: (202) 383-5300
        Fax: (202) 383-5414

        *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*


        */s/ Andrés W. López*
        Andrés W. López
        USDC No. 215311

        THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C
        902 Fernández Juncos Ave.
        San Juan, PR 00907
        Tel: (787) 294-9508
        Fax: (787) 294-9519

        *Co-Attorney for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer