# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 584, 596**

(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

------------------------------------------------------------x

## OBJECTION TO MOTION REQUESTING RELIEF OF STAY FILED BY PERFECTO CRESPO-BERMÚDEZ, ET AL. [ECF NO. 584]

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion Requesting Relief of Stay* [ECF No. 584] (the "Motion") filed by Perfecto Crespo-Bermúdez, Janice Vanessa Colón-Vélez, and the Conjugal Partnership

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

Between Them (collectively, the "Movants").[2] The Commonwealth respectfully requests that the Motion be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. Two months ago, the Oversight Board, as the Debtor's representative pursuant to PROMESA section 315(b), filed a voluntary petition for relief for the Commonwealth under PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").[3] Since that time, the Commonwealth has been focused on transitioning into title III.

2. As part of that transition, the Commonwealth is evaluating how best to apply the automatic stay enumerated in Bankruptcy Code sections 362 and 922, made applicable by PROMESA section 301(a), to civil actions filed against the Commonwealth. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it and its agencies and entities must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the Commonwealth and its agencies and entities with an estimated aggregate liability of approximately $2.2 billion. See

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRico FinancialInfoFY201612-18-16.pdf. To this point, 21 motions to lift the automatic stay have been filed in the jointly-administered Title III Case. Rather than evaluating the Motion in isolation, this Court should consider the totality of the circumstances with respect to the litigation docket the Commonwealth and its agencies and entities face and the implication of lifting the stay at this juncture of the case.

4. The Commonwealth and its advisors are currently working on revising the protocol for motions for relief from stay contained in the *First Amended Notice, Case Management and Administrative Procedures* [ECF No. 262-1]. The revised protocol would provide the Commonwealth with the necessary "breathing room" to evaluate the prepetition litigation claims asserted against it in the overall context of the Title III Case and would also allow for the Commonwealth to stipulate (as it has already done) with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous (e.g., agreeing to lift the stay for a movant to pursue claims related to the forfeiture of personal property [ECF Nos. 272, 562]). The Commonwealth anticipates seeking approval of the revised protocol so as to be considered at the next omnibus hearing scheduled for August 9, 2017.

## OBJECTION

5. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v.

3

TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[4] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." Id. (citations omitted).

---

[4] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

4

6. The automatic stay under Bankruptcy Code section 362 is supplemented in the Title III Case by Bankruptcy Code section 922(a), also made applicable by PROMESA section 301(a), which provides as follows:

> A petition filed . . . operates as a stay, in addition to the stay provided by section 362 of [the Bankruptcy Code], applicable to all entities, of –
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and
>
> (2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

11 U.S.C. § 922(a).

7. Movants' underlying action before the Puerto Rico Superior Court (the "Superior Court"), captioned Perfecto Crespo-Bermúdez, et al. v. Instituto de Cultura Puertorriqueña, et al., Case No. K PE2017-0142 (902) (the "Superior Court Action"), alleges, among other things, that Mr. Crespo-Bermúdez's discharge from the Institute of Puerto Rican Culture ("ICPR")[5] was unjustified and discriminatory and seeks reinstatement of his job and back pay.[6] The Superior Court Action was commenced on January 24, 2017, and the proceedings are still at the preliminary stage. Prior to the commencement of the Title III Case, the Commonwealth filed a motion to dismiss the Superior Court Action with respect to Attorney Pedro López Onna (the only

---

[5] While the Commonwealth, through the Department of Justice, does not represent the ICPR in the Superior Court Action, the Commonwealth does represent Attorney López Onna in his personal capacity, the former Deputy Executive Director of the IPRC, who was named in his official and personal capacity as a defendant with the IPRC in the Superior Court Action.

[6] Because the Superior Court Action was brought by Movants in their individual capacity, the Superior Court Action does not fall within the police power exception to the automatic stay. See Lucontoni v. United Air Lines, Inc., 446 F. Supp. 2d 4, 6 (D. Mass 2006) (finding that former employee's employment discrimination action is not exempt from the automatic stay because "[g]overnmental unit actions are exempted from automatic stay provision by 11 U.S.C. § 362(b)(4); private party actions are not." (citations omitted)).

5

party represented by the Commonwealth), which is currently pending before the Superior Court. No dispositive motions have been filed in the Superior Court Action on behalf of the ICPR or Movants.

8. Considering the procedural stage of the Superior Court Action, the majority of the Sonnax factors are in favor of maintaining the automatic stay and denying the Motion.

9. **Sonnax Factors 1, 10, and 11**: As discussed above, the Superior Court Action was filed approximately six months ago and is still at a preliminary stage. The Commonwealth has filed a motion to dismiss only with respect to Attorney López Onna and no other dispositive motions are currently pending before the Superior Court. While the parties may be ready for trial with respect to the pending motion to dismiss, in the event the Superior Court denies the motion, the Commonwealth, through the Department of Justice, would be responsible for conducting discovery, the preparation and filing of dispositive motions, and defending Attorney López Onna at the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense. Moreover, no dispositive motions have been filed on behalf of the ICPR and, as such, the parties are not ready for trial in the Superior Court Action with respect to the ICPR. Accordingly, granting the Motion will neither promote judicial economy nor result in the timely resolution of the overall action. Thus, Sonnax factors 1, 10, and 11 weigh in favor of denying the Motion. See In re Sonnax Indus., Inc., 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); In re Residential Capital, LLC, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency

6

of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

10. **Sonnax Factors 2 and 7**: In support of the Motion, Movants argue, among other things, that (i) they are not "bond investors" and that their claims do not have any relation with the debts that prompted PROMESA; (ii) their claims are not necessary to the resolution of the Title III Case; and (iii) PROMESA was not drafted to manage employment claims. See Motion ¶¶ 4, 5, and 8.

11. Contrary to Movants' arguments, title III of PROMESA applies with respect to all debts, claims, and liens asserted against a title III debtor (as such terms are defined in Bankruptcy Code section 101) created before, on, or after the commencement of the title III case. See 48 U.S.C. § 2101. Bankruptcy Code section 101(5) broadly defines "claim" to include the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003).

12. While Movants may not be "bond investors," they are potential, unsecured creditors of the Commonwealth and therefore subject to the provisions of the Bankruptcy Code made applicable by PROMESA, including Bankruptcy Code sections 362(a) and 922(a).[7] The

---

[7] The ICPR is an entity of the Commonwealth that receives approximately 72.79% of its budget from the Commonwealth. See Certification of Freddy E. Vélez García, Under Executive Director of the

7

automatic stay provisions of the Bankruptcy Code are expansive and "extremely broad in scope and, 'aside from the limited exceptions of subsection (b), appl[y] to almost any type of formal or informal action taken against the debtor or the property of the estate.'" In re Montalvo, 537 B.R. at 140.

13. Movants' claims will be addressed in the claim resolution process that will be undertaken in the Title III Case along with all of the other claims asserted against the Commonwealth and its agencies and entities. Requiring the Commonwealth to address Movants' claims before determination of what that process will look like would undermine such process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

14. Lifting the automatic stay to proceed with the Superior Court Action will divert the Commonwealth's attention and resources to addressing Movants' claims in multiple forums and will encourage other creditors to seek similar relief. Thus, Sonnax factors 2 and 7 weigh in favor of denying the Motion. See In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016)

---

Institute of Puerto Rican Culture, attached hereto as Exhibit A. Because the majority of ICPR's budget is funded from the Commonwealth, any judgment in favor of Movants would directly impact the Commonwealth and its Title III Case as the Commonwealth would be responsible for satisfying such judgment. Therefore, any claim asserted against the ICPR is essentially a claim asserted against the Commonwealth. Moreover, to the extent that there is a judgment entered against Attorney López Onna and the ICPR does not have the funds to satisfy such judgment, the Commonwealth would be liable for satisfying the judgment.

8

(citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to [the employment discrimination] action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

15. **Sonnax Factor 3**: The Superior Court Action does not involve the Commonwealth as a fiduciary and Movants have neither made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 3 weighs in favor of denying the Motion.

16. **Sonnax Factor 4**: No specialized tribunal has been established to hear the Superior Court Action. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

17. **Sonnax Factor 5**: The Commonwealth does not appear to have insurance coverage for the claims raised in the Superior Court Action and Movants have neither made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 5 weighs in favor of denying the Motion.

18. **Sonnax Factor 6**: The ICPR is an entity of the Commonwealth and, as such, is protected under Bankruptcy Code section 362(a). The other defendant in the Superior Court Action, Attorney López Onna, is an inhabitant of the Commonwealth and is protected under Bankruptcy Code section 922(a)(1) as the Superior Court Action seeks to enforce a claim against the Commonwealth. Thus, the Superior Court Action cannot be characterized as primarily involving third parties and Sonnax factor 6 weighs in favor of denying the Motion. See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].")

19. **Sonnax Factor 12:** Movants claim that they will suffer irreparable harm if the automatic stay is not lifted to allow the Superior Court Action to proceed because Mr. Crespo-Bermúdez is without employment. See Motion ¶¶ 6-7. While Movants seek reinstatement of Mr. Crespo-Bermúdez's job at the ICPR, there is nothing that prevents Mr. Crespo-Bermúdez from obtaining gainful employment elsewhere while the Commonwealth is given the time to examine Movants' underlying claims in the overall context of the Title III Case. Accordingly, there is no irreparable harm suffered by Movants here. See In re Northwest Airlines Corp., 2006 WL 694727, at *2 (finding that former employee who was pursing employment discrimination claims against the debtor had not established that she would suffer legally cognizable harm if the stay remained in place as the movant was seeking monetary damages and there were no issues of public health or safety).

20. Moreover, the impact on the Debtors if the Motion were to be granted would outweigh any harm that Movants would suffer if the automatic stay remains in place. The procedural state of the Superior Court Action, the large number of pending lawsuits against the

10

Debtors, the diversion of the Commonwealth's resources to address Movants' claims, and the prejudice to interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III Case. On the other hand, postponing liquidation of Movants' claims will neither adversely affect Movants nor promote judicial economy. Expedition of the claims will not save the Commonwealth any time or money. Instead, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, Sonnax factor 12 weighs in favor of denying the Motion.

## CONCLUSION

21. Movants have failed to establish extraordinary circumstances that justify the lifting of the automatic stay in the Title III Case. Accordingly and for the foregoing reasons, the Court should grant the Objection and deny the Motion without prejudice to Movants to re-file the Motion, if needed, after the revised protocol for motions for relief from stay can be considered by the Court.

Dated: July 19, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

## Exhibit A

**Certification**

# GOBIERNO DE PUERTO RICO
## Instituto de Cultura Puertorriqueña

### CERTIFICATION

I, Freddy E. Vélez García, as Under Executive Director of the Institute of Puerto Rican Culture, hereby certify that the agency I direct, has the following budget for the fiscal year 2017-2018 as amended by the Fiscal Oversight and Management Board:

- According to the Joint Resolution:           $5,847,000[i]
- Related to income produced by the agency:   $1,512,000
- Related to federal funds:                    $ 674,000

Total:                                         $8,033,000

- Special appropriations for transfers         $3,577,000[ii]

Therefore, the Institute of Puerto Rican Culture receives approximately 72.79% of its budget from the General Fund (81.17% if the special appropriations for transfer were included in the computation).

In San Juan, Puerto Rico, July 18th, 2017.

_____
Freddy E. Vélez García
Under Executive Director

---

[i] $5,434,000 for payroll and related expenses and $413,000 for operating expenses.
[ii] These appropriations are funds assigned to various cultural institutions which are paid through the IPRC. These monies are not supposed to be considered as part of the PRIC's budget as the agency only serves as a pass-through for the payment to these institutions.



Dirección Ejecutiva
Apartado 9024184, San Juan, Puerto Rico 00902-4184 • Teléfono: (787) 724-0700