**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 587, 591**

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

---------------------------------------------------------------x

**OBJECTION OF THE COMMONWEALTH TO MOTION FOR
RELIEF OF STAY FILED BY JULIO E. LEANDRY-HERNÁNDEZ
AND ILEANA ORTIZ-SANTIAGO [ECF NO. 587]**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief of Stay* [ECF No. 587] (the "Motion") filed

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

by Julio E. Leandry-Hernández and Ileana Ortiz-Santiago (collectively, "Movants").[2] The Commonwealth respectfully requests that the Motion be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. Two months ago, the Oversight Board, as the Debtor's representative pursuant to PROMESA section 315(b), filed a voluntary petition for relief for the Commonwealth under PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").[3] Since that time, the Commonwealth has been focused on transitioning into title III.

2. As part of that transition, the Commonwealth is evaluating how best to apply the automatic stay enumerated in Bankruptcy Code sections 362 and 922, made applicable by PROMESA section 301(a), to civil actions filed against the Commonwealth. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it and its agencies and entities must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

Commonwealth and its agencies and entities with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf. To this point, 21 motions to lift the automatic stay have been filed in the jointly-administered Title III Case. Rather than evaluating the Motion in isolation, this Court should consider the totality of the circumstances with respect to the litigation docket the Commonwealth and its agencies and entities face and the implication of lifting the stay at this juncture of the case.

4. The Commonwealth and its advisors are currently working on revising the protocol for motions for relief from stay contained in the *First Amended Notice, Case Management and Administrative Procedures* [ECF No. 262-1]. The revised protocol would provide the Commonwealth with the necessary "breathing room" to evaluate the prepetition litigation claims asserted against it in the overall context of the Title III Case and would also allow for the Commonwealth to stipulate (as it has already done) with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous (e.g., agreeing to lift the stay for a movant to pursue claims related to the forfeiture of personal property [ECF Nos. 272, 562]). The Commonwealth anticipates seeking approval of the revised protocol so as to be considered at the next omnibus hearing scheduled for August 9, 2017.

## **OBJECTION**

5. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts

examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[4] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." Id. (citations omitted).

---

[4] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

6. Movants' underlying action before the Court of First Instance, Superior Part of Ponce (the "Commonwealth Court"), captioned <u>Julio E. Leandry Hernández, et al. v. Estado Libre Asociado De Puerto Rico, et al.</u>, Civil Case No. J DP2015-0283 (the "Commonwealth Court Action") seeks, among other things, monetary relief for personal damages, medical expenses, nuisance, and mental distress in connection with a car accident that occurred on September 26, 2014, in the municipality of Ponce. The Commonwealth Court Action was commenced on June 18, 2015, and on September 9, 2015, the Commonwealth filed an answer to the complaint, however, no dispositive motions have been filed in the Commonwealth Court Action. Prior to the commencement of the Title III Case, the parties were undergoing discovery and were in the process of conducting depositions.

7. Considering the procedural stage of the Commonwealth Court Action, the majority of the <u>Sonnax</u> factors are in favor of maintaining the automatic stay and denying the Motion.[5]

8. **<u>Sonnax Factors 1, 10, and 11</u>**: As discussed above, the Commonwealth Court Action is still at a preliminary stage. There are no dispositive motions pending before the Commonwealth Court. The conclusion of the ongoing discovery, the preparation and filing of dispositive motions, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense, are necessary for the Commonwealth Court Action to move forward. As such, the parties are not ready for trial in the Commonwealth Court Action and

---

[5] In the Motion, Movants cite to the three factor test set forth in <u>Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.)</u>, 141 B.R. 574, 576 (Bankr. D. Del. 1992) to determine whether "cause" for lifting the automatic stay exists. See Motion ¶ 10. While the <u>Rexene</u> test does include some of the <u>Sonnax</u> factors, <u>Rexene</u> is not binding authority in this Circuit and fails to consider the majority of the <u>Sonnax</u> factors. See <u>In re Rexene Prod. Co.</u>, 141 B.R. at 576 (examining the following three factors to determine whether "cause" exists to lift the automatic stay: (i) prejudice to the debtor or bankruptcy estate resulting from continuation of the civil suit; (ii) hardship to non-bankruptcy party by maintenance of stay; and (iii) movant's probability of success on the merits).

5

granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, Sonnax factors 1, 10, and 11 weigh in favor of denying the Motion. See In re Sonnax Indus., Inc., 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); In re Residential Capital, LLC, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

9. **Sonnax Factors 2 and 7**: Title III of PROMESA applies with respect to all debts, claims, and liens asserted against a title III debtor (as such terms are defined in Bankruptcy Code section 101), created before, on, or after the commencement of the title III case. See 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003).

10. As potential prepetition, unsecured creditors of the Commonwealth, Movants' claims are subject to the claim resolution process that will be undertaken in the Title III Case. Movants recognize this by asserting in the Motion that they would be "willing to submit any recovery award judgment to be under the Debtor Reorganization Plan." Motion ¶ 13. Requiring the Commonwealth to defend Movants' claims before determination of what that process will

6

look like would undermine such process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

11. Lifting the automatic stay to proceed with the Commonwealth Court Action will divert the Commonwealth's attention and resources to defending Movants' claims in multiple forums and will encourage other creditors to seek similar relief. Contrary to Movants' assertion in the Motion (Motion ¶ 12), because the outcome of the Commonwealth Court Action will impact other creditors in the Title III Case, the Department of Justice will need to coordinate its defense of the Commonwealth with the Commonwealth's and the Oversight Board's bankruptcy advisors, thereby increasing the Commonwealth's defense costs in the Commonwealth Court Action. Thus, Sonnax factors 2 and 7 weigh in favor of denying the Motion. See In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause

hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfer[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

12. **Sonnax Factor 3**: The Commonwealth Court Action does not involve the Commonwealth as a fiduciary and Movants have not made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 3 weighs in favor of denying the Motion.

13. **Sonnax Factor 4**: No specialized tribunal has been established to hear the Commonwealth Court Action. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

14. **Sonnax Factor 5**: Despite Movants' claims to the contrary, the Commonwealth does not have insurance coverage for the claims raised in the Commonwealth Court Action and the Movants have not provided any evidence to support such an assertion. Thus, Sonnax factor 5 weighs in favor of denying the Motion.

15. **Sonnax Factor 6**: The Commonwealth and the Department of Transportation and Public Works, which is an agency of the Commonwealth, are both protected under Bankruptcy Code section 362(a). Thus, the Commonwealth Court Action cannot be characterized as primarily involving third parties and Sonnax factor 6 weighs in favor of denying the Motion. See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of

proceeds and the action impacted the "property and administration of [the debtor's estate].")

16. **Sonnax Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Debtors if the Motion were to be granted would outweigh any harm that Movants would suffer if the automatic stay remains in place. The procedural state of the Commonwealth Court Action, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movants' claims, and the prejudice to interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III Case. On the other hand, postponing liquidation of Movants' claims will neither adversely affect Movants nor promote judicial economy. There is nothing urgent about Movants' claims. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that even Movants have acknowledged should be paid, if at all, under a confirmed plan of adjustment. Moreover, there is nothing that prevents the parties from continuing to negotiate a consensual resolution to the Commonwealth Court Action, which the Commonwealth is willing to discuss. Thus, Sonnax factor 12 weighs in favor of denying the Motion.

17. Lastly, Movants allege that the Commonwealth Court Action is likely to succeed on the merits. Such an assertion is baseless and premature. No dispositive motions have been filed in the Commonwealth Court Action and the parties have not yet fully briefed their positions, which include numerous affirmative defenses raised by the Commonwealth in its answer to the complaint. Thus, it is too early for a court to evaluate the merits of the Movants' case.

9

## **CONCLUSION**

18. Movants have failed to establish extraordinary circumstances that justify the lifting of the automatic stay in the Title III Case. Accordingly and for the foregoing reasons, the Court should grant the Objection and deny the Motion without prejudice to Movants to re-file the Motion, if needed, after the revised protocol for motions for relief from stay can be considered by the Court.

*Remainder of Page Intentionally Left Blank*

Dated: July 20, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*