**Hearing Date**: August 9, 2017 at 9:30 a.m. (Prevailing Eastern Time)
**Objection Deadline**: July 28, 2017 at 4:00 p.m. (Prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------------- x
                                             :

In re:                                :

                                             :

THE FINANCIAL OVERSIGHT AND         :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III

                                             :

         as representative of                   :   Case No. 17-BK-3283 (LTS)

                                             :

THE COMMONWEALTH OF PUERTO RICO *et al.*,   :   (Jointly Administered)

                                             :

         Debtors.[1]                              :
----------------------------------------------------------------------- x

## NOTICE OF HEARING ON MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER BANKRUPTCY CODE SECTIONS 105(a), 107(b), 1102(b)(3) AND 1103 AND BANKRUPTCY RULE 9018, (I) CLARIFYING SCOPE OF AND ESTABLISHING PROCEDURES IN CONNECTION WITH CREDITOR ACCESS TO INFORMATION AND (II) RETAINING PRIME CLERK LLC AS INFORMATION SERVICES AGENT IN CONNECTION THEREWITH

**PLEASE TAKE NOTICE** that a hearing on the annexed *Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Code Sections 105(a), 107(b), 1102(b)(3) and 1103 and Bankruptcy Rule 9018, (I) Clarifying Scope of and Establishing Procedures in Connection with Creditor Access to Information and (II) Retaining Prime Clerk LLC as Information Services Agent in Connection Therewith* (the "<u>Motion</u>") filed by the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico, pursuant to sections 105(a), 107(b), 1102(b)(3), and 1103 of title 11 of the United States Code, and Rule 9018 of the Federal Rules of Bankruptcy Procedure, made applicable to these Title III Cases by sections 301

---

[1]    The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

and 310 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 or

"PROMESA," will be held before the Honorable Laura Taylor Swain United States District

Court Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150

Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on

**August 9, 2017 at 9:30 a.m. (prevailing Eastern Time)** (the "Hearing").

   **PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections")

to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure

and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a)

by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*,

electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico (the

"Local District Court Rules"), and (b) by all other parties in interest, on a CD-ROM, in text-

searchable portable document format (PDF), to the extent applicable, and shall be served in

accordance with the First Amended Case Management Procedures (Docket No. 262-1), so as to

be so filed and received no later than **July 28, 2017 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

District Court may enter an order granting the relief sought without a hearing pursuant to the

First Amended Case Management Procedures.

Dated: July 20, 2017
   San Juan, Puerto Rico   */s/ G. Alexander Bongartz*

        PAUL HASTINGS LLP
        Luc. A. Despins, Esq. *(Pro Hac Vice)*
        Andrew V. Tenzer, Esq. *(Pro Hac Vice)*
        Michael E. Comerford, Esq. *(Pro Hac Vice)*
        G. Alexander Bongartz, Esq. *(Pro Hac Vice)*

200 Park Avenue
New York, New York 10166
Tel:  (212) 318-6000
lucdespins@paulhastings.com
andrewtenzer@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

- and -

*/s/ Patrick D. O'Neill* _____

O'NEILL & GILMORE PSC
Patrick D. O'Neill, Esq., USDC - PR 128202
Charles P. Gilmore, Esq., USDC - PR 209614
252 Ponce de Leon Ave.
Citibank Tower Suite 1701
San Juan, Puerto Rico 00918
Tel.: (787) 620-0670
pdo@go-law.com
cpg@go-law.com

*Proposed Co-Counsel to the Official Committee of
Unsecured Creditors*

**Hearing Date**: August 9, 2017 at 9:30 a.m. (Prevailing Eastern Time)
**Objection Deadline**: July 28, 2017 at 4:00 p.m. (Prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.*,

        Debtors.[1]

    : PROMESA
    : Title III
    :
    : Case No. 17-BK-3283 (LTS)
    :
    : (Jointly Administered)

------------------------------------------------------------------------ x

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER BANKRUPTCY CODE SECTIONS 105(a), 107(b), 1102(b)(3) AND 1103 AND BANKRUPTCY RULE 9018, (I) CLARIFYING SCOPE OF AND ESTABLISHING PROCEDURES IN CONNECTION WITH CREDITOR ACCESS TO INFORMATION AND (II) RETAINING PRIME CLERK LLC AS INFORMATION SERVICES AGENT IN CONNECTION THEREWITH

The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico

(and other title III debtor(s) (if any) for which it acts as the official committee of unsecured

creditors) (the "Committee") hereby moves this Court for entry of an order, pursuant to sections

105(a), 107(b), 1102(b)(3), and 1103 of title 11 of the United States Code (as amended, the

"Bankruptcy Code"), and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), made applicable to these Title III Cases (as defined below) by sections 301

and 310 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016

("PROMESA"), (a) clarifying the scope of and establishing procedures in connection with

---

[1]    The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case

creditor access to information pursuant to section 1102(b)(3) of the Bankruptcy Code and (b)

authorizing the Committee to employ and retain Prime Clerk LLC ("Prime Clerk") as

information services agent (the "Information Agent") in connection therewith (the "Motion ").[2]

In support of the Motion, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to section 306(a) of

PROMESA, and venue is proper pursuant to section 307(a) of PROMESA.

2.      The statutory predicates for the relief requested herein are section 301 of

PROMESA, incorporating sections 105(a), 107(b), 1102, and 1103 of the Bankruptcy Code, and

section 310 of PROMESA, incorporating Bankruptcy Rule 9018.

## BACKGROUND

3.      On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico

(the "Oversight Board") commenced a title III case for the Commonwealth of Puerto Rico (the

"Commonwealth") by filing a voluntary petition for relief pursuant to section 304(a) of

PROMESA (the "Commonwealth Title III Case").[3]  Thereafter, the Oversight Board commenced

title III cases (together with the Commonwealth Title III Case, the "Title III Cases") for each of

COFINA, the Employees Retirement System for the Commonwealth of Puerto Rico, the Puerto

Rico Highways and Transportation Authority, and the Puerto Rico Electric Power Authority

---

No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing
Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

[2]      Given the nature of these title III cases and the associated complexity involved in resolving the myriad issues
for the Commonwealth and its instrumentalities including the need to establish and maintain   effective
communications with general unsecured creditors, the Committee reserves the right to seek to employ
additional agents or professionals in connection with maintaining such communication.

[3]      References to PROMESA are references to 48 U.S.C. §§ 2101 *et. seq.*

(collectively, and together with any other Commonwealth instrumentalities that file title III

cases, the "Debtors").[4]

4.      By order dated June 29, 2017, the Court approved the joint administration of the

title III cases of the Commonwealth, COFINA, the Employees Retirement System for the

Commonwealth of Puerto Rico, and the Puerto Rico Highways and Transportation Authority

(together, the "Jointly Administered Cases") [Docket No. 537].

5.      On June 15, 2017, the Office of the United States Trustee for the District of

Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured

Creditors* [Docket No. 338].  The members of the Committee are the American Federation of

Teachers, Drivetrain, LLC as the Creditors' Trustee for Doral Financial Corporation, Genesis

Security Services, Inc., Puerto Rico Hospital Supply, Service Employees International Union,

Total Petroleum Puerto Rico Corp., and the Unitech Engineering Group, S.E.

6.      On June 26, 2017, the Committee held a meeting at which the Committee selected

Paul Hastings LLP as counsel to the Committee and thereafter O'Neill & Gilmore, LLC to act as

its Puerto Rico counsel, subject to this Court's approval.

7.      On July 6, 2017, the Committee selected Prime Clerk as Information Agent,

subject to this Court's approval.

## **RELIEF REQUESTED**

8.      By this Motion, the Committee seeks entry of an order clarifying the scope of, and

establishing procedures in connection with, creditor access to information pursuant to section

1102(b)(3) of the Bankruptcy Code.   This type of relief has been granted routinely by courts in

large chapter 11 cases.  Specifically, the Committee seeks entry of an order that it shall not be

---

[4]    Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III

required to provide creditors with access to Confidential Information (as defined below) and/or

Privileged Information (as defined below).  A copy of the proposed order is attached hereto as

Exhibit A (the "Proposed Order").   The procedures proposed herein will help ensure that

confidential, privileged, proprietary and/or material non-public information will not be

disseminated to the detriment of the Debtors and will aid the Committee in performing its

statutory function.  For the avoidance of doubt, the restrictions on dissemination of Confidential

Information and Privileged Information contained herein are intended to apply equally to the

Committee as a whole and to each of its members.

        9.      In addition, the Committee requests that the Court enter an order authorizing the

(a) Committee to retain Prime Clerk as Information Agent pursuant to the terms of the Prime

Clerk LLC Engagement Agreement, a copy of which is attached as Exhibit B hereto, *nunc pro*

*tunc* to July 7, 2017, to establish and maintain, subject to the terms of the procedures discussed

herein, a website (the "Committee Website") to provide access to certain information to the

general unsecured creditors (the "Engagement Agreement"), and (b) the Commonwealth (and

other title III Debtors (if any) for which the Committee acts as the official committee of

unsecured creditors) to reimburse Prime Clerk for its services in accordance with the terms of the

Engagement Agreement and the Pricing Structure (as defined below).

### BASIS FOR RELIEF REQUESTED

**A.**      **Procedures Are Necessary and Appropriate**

        10.      Section 105(a) of the Bankruptcy Code empowers the Court to "issue any

order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

---

Case.

105(a).  The Committee submits the requested relief is necessary for the Committee to fulfill its

obligations as set forth under section 1102(b)(3) of the Bankruptcy Code.

11.     Section 1102(b)(3) of the Bankruptcy Code states, in relevant part, that a

creditors' committee appointed under section 1102(a) of the Bankruptcy Code shall "provide

access to information for creditors who (i) hold claims of the kind represented by that committee;

and (ii) are not appointed to the committee."  11 U.S.C. § 1102(b)(3)(A).  Section 1102(b)(3)(A)

does not indicate how a creditors' committee should provide "access to information" to creditors.

There is no legislative history to section 1102(b)(3) to provide guidance on the application of this

provision.

12.     The lack of specificity creates significant issues for debtors and creditors'

committees.  Typically, a debtor will share various confidential and other non-public proprietary

information with a creditors' committee (as defined further in footnote 5, the "Confidential

Information").[5]  Creditors' committees use this information to assess, among other things, a

debtor's debt issuances and debt structure, opportunities for the restructuring of the debtor, the

---

[5]     For purposes of this Motion, the term "Confidential Information" shall mean (i) all matters discussed at
Committee meetings (whether or not memorialized in any minutes thereof) not generally available to the public, and
(ii) all nonpublic information of, or concerning, the Debtors or any of their instrumentalities, including, without
limitation, nonpublic information concerning the assets, liabilities, businesses, projections, analyses,
compilations, studies, and documents of the Debtors or any of their non-Debtor instrumentalities, which is
furnished, disclosed, or made known to the Committee, by the Debtors or any of their non-Debtor
instrumentalities or their agents or advisors, whether intentionally or unintentionally, and in any manner,
including in written form (including, any notes, summaries, compilations, memoranda, or other written
materials disclosing or discussing Confidential Information, whether prepared by the Debtors or the Committee
or their respective advisors), orally, or through any electronic, facsimile or computer-related communication.
Confidential Information shall also include (a) any written Confidential Information that is marked confidential
by the Debtors or their agents and (b) any other Confidential Information conveyed to the Committee orally that
the Debtors or their advisors or other agents advise the Committee should be treated as confidential.
Notwithstanding any of the foregoing, Confidential Information shall not include any information or portions of
information that: (i) is or becomes generally available to the public or is or becomes available to the Committee
on a non-confidential basis, in each case to the extent that such information became so available other than by a
violation of a contractual, legal, or fiduciary obligation to the Debtors or any of their non-Debtor
instrumentalities; or (ii) was in the possession of the Committee prior to its disclosure by the Debtors or any of
their non-Debtor instrumentalities and is not subject to any other duty or obligation to maintain confidentiality.

results of any revised fiscal operations of the debtor in the title III case, and the debtor's overall prospects for a plan of adjustment. In addition, the Committee operates pursuant to written by-laws that include confidentiality provisions. Through these agreements, the Debtors can ensure that the members of the Committee will keep the Debtors' information confidential and will not use Confidential Information except in connection with these Title III Cases.

13.     Section 1102(b)(3)(A) also raises the issue of whether the Committee could be required to share the Confidential Information with any creditor of the Debtors. In the absence of appropriate protections for the Confidential Information, the Debtors might be unwilling to share such information with the Committee, which would undoubtedly impede the Committee's ability to do its work and impair the working relationship between the Debtors and the Committee. Given the importance of the issue, the Committee is seeking an order of the Court confirming that section 1102(b)(3)(A) does not require the Committee in these cases to provide access to the Confidential Information to any creditor except to the extent provided by the procedures set forth below.

14.     The enactment of section 1102(b)(3)(A) also raised the issue of whether a creditors' committee could be required to share, with any creditor, information that is subject to the attorney-client or some other state, federal, or other jurisdictional law privilege, whether such privilege is solely controlled by the Committee or is a joint privilege with the Debtors or some other party (collectively, "Privileged Information"). Given the importance of the issue, the Committee is seeking clarification that the Committee is not required to provide access to Privileged Information except to the extent provided by the procedures set forth below. The Committee would still be permitted, but not required, to provide access to Privileged Information to any party so long as (a) such Privileged Information was not Confidential Information, and

(b) the relevant privilege was held and controlled solely by the Committee and is not subject to a

joint privilege with the Debtors or any other person.

15.     When a statute is clear and unambiguous, "the sole function of the courts is to

enforce it according to its terms."  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241

(1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  However, in "rare cases

[in which] the literal application of a statute will produce a result demonstrably at odds with the

intention of its drafters . . . the intention of the drafters, rather that the strict language, controls."

*Id.* at 242–43 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)) (internal

quotation omitted).

16.     The Committee respectfully submits that section 1102(b)(3)(A) is unclear and

ambiguous.  The statute simply requires a committee "to provide access to information," yet sets

forth no guidelines as to the type, kind and extent of the information to be provided.  In its

extreme, section 1102(b)(3)(A) could be read as requiring a committee to provide access to all

information provided to it by a debtor or developed through the exercise of its investigative

function, regardless of whether the information is confidential, privileged, proprietary, or

material non-public information and regardless of whether disseminating such information

implicates securities laws disclosure requirements.  *See* 17 C.F.R. §§ 243.100–103 (2005).  One

of the first courts to consider this issue was the Bankruptcy Court for the Southern District of

New York in the *Refco* case.[6]  There, Judge Drain issued a detailed opinion and order with

precise guidelines to be followed with regard to the creditors' committee's information sharing

obligations.[7]  Since then, bankruptcy courts which have considered this issue have issued orders

---

[6]     *In re Refco Inc.*, 336 B.R. 187 (Bankr. S.D.N.Y. 2006).

[7]     *See id.* at 199-202.

basically adopting Judge Drain's *Refco* order, clarifying that creditors' committees are not required to provide access to confidential or privileged information.[8]

17.     As discussed above, the legislative history does not provide any further guidance on this point and merely reiterates the language of section 1102(b)(3) of the Bankruptcy Code. *See* H.R. Rep. No. 109-31, 109th Cong., 1st Sess., at 87 (2005) ("Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information.  In addition, the committee must solicit and receive comments for these creditors and, pursuant to court order, make additional reports and disclosures available to them.").

18.     Given the ability to share information through the Internet or otherwise, the drafters of section 1102(b)(3) of the Bankruptcy Code likely intended this provision to mean that a committee's constituency should have easier access to relevant public information about a debtor without the burden of retaining counsel to monitor the numerous proceedings within a title III case.  Congress could not have intended for a committee to be required to provide unfettered access to every type and kind of information that a committee receives from a debtor. If this had been the intention, section 1102(b)(3) would then frustrate numerous provisions of the Bankruptcy Code.

19.     The issue of how the Committee will manage Confidential or Privileged Information is especially salient in these Title III Cases, which involve an unprecedented level of

---

[8]     *See, e.g.*, *BPS US Holdings Inc.*, Case No. 16-12373 (KJC) (Bankr. D. Del. Jan. 6, 2017) [Docket No. 510] (approving procedures under which the creditors' committee is not required to provide access to confidential and privileged information); *In re Linn Energy, LLC*, Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. Aug. 25, 2016) [Docket No. 869] (same); *In re Peabody Energy Corporation*, Case No. 16-42529 (BSS) (Bankr. E.D. Mo. July 21, 2016) [Docket No. 951] (same); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 8, 2016) [Docket No. 507]; *In re GT Advanced Technologies Inc.*, Case No. 14-11916 (HJB) (Bankr. D.N.H. Jan. 7, 2015) [Docket No. 963]; *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Dec. 17, 2014) [Docket No. 3050]; *In re Furniture Brands International, Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Nov. 21, 2013) [Docket No. 799] (same).

public interest and scrutiny, as well as a creditor matrix that, in its currently-filed form, stretches to over 10,000 pages and over 600,000 creditors.

20.     Furthermore, section 107(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to trade secret or confidential research, development, or commercial information."[9]  11 U.S.C. § 107(b)(1). Section 107(b)(1) is mandatory. *Video Software Dealers Ass'n v. Orion Pictures Corp.(In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (providing that the protections of section 107(b)(1) are mandatory upon request of an interested party).  As a result, under section 107(b)(1) and Bankruptcy Rule 9018, this Court is empowered to protect the Debtors' and the Committee's Confidential Information and Privileged Information from disclosure to general creditors.

21.     The Committee proposes the following protocol for providing access to information for creditors ("Creditor Information Protocol") in accordance with section 1102(b)(3)(A) and (B) of the Bankruptcy Code:

(a)     Dissemination of Information to Creditors.  The Committee may, until the earliest to occur of dissolution of the Committee or dismissal of these Title III Cases, and a further order of the Court, set up and maintain a website.  For the sake of efficiency and economy and ease of access by creditors, the Committee proposes to keep creditors informed as required by the statute by directing them to a website, established and maintained by Prime Clerk as directed by the Committee and as set forth in greater detail herein, which will maintain, among other things, specific links for case information.  Further, in fulfillment of its obligation to solicit and receive comments from general unsecured creditors as set forth in subsection 1102(b)(3)(B) of the Bankruptcy Code, the Committee's website information page(s) will include contact information for the Committee's counsel, including an inquiry form, to allow unsecured creditors to send questions and comments in connection with these cases to the Committee's counsel.

---

[9]     Section 107(b)(1) is further supported by Bankruptcy Rule 9018, which states, in relevant part, that "on motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." FED. R. BANKR. P. 9018.

(b)    <u>Access to Information for Unsecured Claimants</u>.  The Committee requests that it shall not be required to disseminate to any entity (all references to "entity" herein shall be as defined in section 101(15) of the Bankruptcy Code, "<u>Entity</u>"), without further order of the Court, (i) Confidential Information or (ii) Privileged Information.  In addition, the Committee proposes that it not be required to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

(c)    <u>Identifying Confidential Information</u>.  The Debtors shall assist the Committee in identifying any Confidential Information concerning the Debtors that is provided by the Debtors or their agents or professionals, or by any third party, to the Committee, its agents and professionals; <u>provided</u>, <u>however</u>, that the Debtors' failure to specifically designate information as "Confidential Information" shall not mean the documents, communications, information or other materials do not constitute Confidential Information.

(d)    <u>Creditor Information Requests</u>.  If a creditor (the "<u>Requesting Creditor</u>") submits a written request to the Committee (the "<u>Information Request</u>") for the Committee to disclose information, the Committee shall, as soon as practicable, but no more than twenty (20) business days after receipt of the Information Request, (a) provide a response to the Information Request (the "<u>Response</u>"), either by providing access to the information requested or the reasons the Information Request cannot be complied with and (b) provide the Debtors with (i) notice of the Information Request within five (5) business days of the Committee's receipt of the Information Request and (ii) a copy of the Response at least five (5) business days before it is disseminated.  If the Response is to deny the Information Request because the Committee believes the Information Request implicates Confidential Information that need not be disclosed pursuant to the terms of the Proposed Order or otherwise under 11 U.S.C. § 1102(b)(3)(A), because the Debtors object to such disclosure, or because the Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee and the Debtors regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion.  Such motion shall be served on (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) the official committee of retirees; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors[10]; (viii) counsel to the Committee; and (ix) all parties that have filed a notice of

---

[10]    Which include the Mutual Fund Group, the Ad Hoc Group of General Obligation Bondholders, the COFINA Senior Bondholders' Coalition, and the QTCB Noteholder Group, each as such group is defined at Docket Nos. 28, 68, 216, and 134, respectively.

appearance in the Title III Cases, and the hearing on such motion shall be noticed and scheduled in accordance with the Bankruptcy Rules, Local Rules, and procedural orders of this Court. The Committee shall not object to any Requesting Creditor's request to participate in any such hearing by telephone conference. Nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee or the Debtors from objecting to such request) that the Committee provide the Requesting Creditor a log or other index of any information specifically responsive to the Requesting Creditor's request that the Committee deems to be Confidential Information or Privileged Information; provided, however, that the log or index does not contain any Confidential Information or Privileged Information. Furthermore, nothing herein or in the Proposed Order shall be deemed to preclude the Requesting Creditor from requesting that the Court conduct an *in camera* review of any information specifically responsive to the Requesting Creditor's request that the Committee asserts is Confidential Information or Privileged Information. The Committee proposes that the Debtors have the right to object to any request for Confidential Information, and nothing in the Proposed Order should in any way limit any of the Debtors' rights.

(e)     Response to Information Request. In its Response to an Information Request for access to Confidential Information, the Committee shall consider whether (a) the Requesting Creditor is willing to agree to reasonable confidentiality and trading restrictions approved by the Debtors with respect to such Confidential Information and represents that such trading restrictions and any information-screening process complies with applicable securities laws; and (b) under the particular facts, such agreement and any information-screening process that it implements will reasonably protect the confidentiality of such information;[11] provided, however, that so long as the Committee complies with the requirements of paragraph (f) below, if the Committee elects to provide access to Confidential Information on the basis of such confidentiality and trading restrictions, the Committee shall have no responsibility for the Requesting Creditor's compliance with, or liability for violation of, applicable securities or other laws. Any disputes with respect to this paragraph shall be resolved as provided in the preceding paragraph, and, to the extent applicable, the next paragraph.

(f)     Release of Confidential Information of Third Parties. If any Information Request implicates Confidential Information of the Debtors (or any other Entity) and the Committee agrees that such request should be satisfied, or if the Committee of its own accord determines to disclose such Confidential Information to creditors, the

---

[11]   In addition, if the Requesting Creditor is involved in purchasing, selling or trading claims against the Debtors, the Requesting Creditor must file with the Court and serve upon counsel to the Committee and the Debtors, and the United States Trustee, a document confirming that it has established an information screening barrier that will be enforced, that no Confidential Information or Privileged Information will be revealed to purchasers, sellers, or claims traders or any persons or entities involved in trading of claims and listing the name of the person that has been designated as monitor to ensure compliance with the provisions hereof.

Committee may demand (the "Demand") for the benefit of the Debtors' creditors: (a) if the Confidential Information is information with respect to the Debtors (or any of their non-Debtor instrumentalities), by submitting a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors stating that such information will be disclosed in the manner described in the Demand unless the Debtors object to such Demand on or before fifteen (15) days after the service of such Demand; and, if the Debtors raise such an objection, the Debtors, the Committee, and the Requesting Creditor shall work in good faith to resolve the Debtors' objection to the Demand, provided that if the Debtors' objection is not resolved, the Debtors, the Committee or the Requesting Creditor may schedule a hearing with the Court to seek a ruling with respect to the Demand and no production shall be made with respect to information subject to an objection until the Court has ruled on the Demand; and (b) if the Confidential Information is information with respect to another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to Debtors' counsel, stating that such information will be disclosed in the manner described in the Demand unless such Entity or the Debtors object to such Demand on or before fifteen (15) days after the service of such Demand; and if the Debtors or the Entity raise an objection, the Debtors, the Committee, the Entity, and the Requesting Creditor shall work in good faith to resolve the Debtors' or the Entity's objection, provided that if not resolved, the Debtors, the Entity, the Committee, or the Requesting Creditor may schedule a hearing with the Court seeking a ruling with respect to the Demand, and no production shall be made with respect to information subject to an objection until the Court has ruled on the Demand.

(g)     Exculpation.  None of the Debtors, the Committee, its members and any of their respective directors, officers, employees, members, attorneys, consultants, advisors and agents (acting in such capacity) (collectively, the "Exculpated Parties"), shall have or incur any liability to any Entity (including the Debtors and their instrumentalities) for any act taken or omitted to be taken in connection with the preparation, dissemination, or implementation of the Creditor Information Protocol, the committee website and other information to be provided pursuant to section 1102(b)(3) of the Bankruptcy Code; provided, however, that the foregoing shall not affect the liability of any Exculpated Party protected pursuant to this paragraph that otherwise would result from any such act or omission to the extent that such act or omission is determined in a final non-appealable order to have constituted a breach of fiduciary duty, gross negligence, or willful misconduct, including, without limitation, fraud and criminal misconduct, or the breach of this paragraph or the Creditor Information Protocol.  Without limiting the foregoing, the exculpation provided in this paragraph shall be coextensive with any Exculpated Party's qualified immunity under applicable law.

(h)     Rule 2004 Examination.  The Committee further requests that any information received (formally or informally) by the Committee from any Entity in connection with an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or in connection with any formal or informal discovery in any

contested matter, adversary proceeding or other litigation shall not be governed by
any order entered with respect to this Motion but, rather, by any order governing
such discovery; provided, however, that any information received by the
Committee from the Debtors shall be governed by the terms of the Proposed
Order and the Committee bylaws (which expressly include the Debtors as third
party beneficiaries).

22.     The public dissemination of the Debtors' Confidential Information likely would

cause serious harm to the Debtors.  The Committee understands that if there is a risk that

Confidential Information given by the Debtors to the Committee would have to be turned over to

any creditor, the Debtors would not support delivering Confidential Information to the

Committee.  The inability of the Committee to gain access to Confidential Information, in turn,

would limit the ability of the Committee to fulfill its statutory obligations under the Bankruptcy

Code.

23.     As such, the relief sought by the Committee is not only for the benefit of the

Debtors and the Committee, but for the benefit of all constituencies in that it ensures the proper

functioning of the title III process.  Further, the Committee needs the benefit of the relief sought

in this Motion to ensure that it does not breach the confidentiality provisions in its bylaws.  A

creditors' committee cannot be put in a position of either violating the statute or breaching a

confidentiality agreement and thereby subjecting itself to suit by the Debtors and potentially

other parties.

24.     Finally, the risk to the Committee of having to provide access to Privileged

Information to the creditors creates obvious and serious problems.  If the Committee believes

that there could be a risk that Privileged Information would need to be turned over to such

creditors, with the possible loss of the relevant privilege at that time, the entire purpose of such

privilege would be eviscerated, and both the Debtors and the Committee would likely be unable

to obtain the independent and unfettered advice and consultation that such privileges are

designed to foster.  Indeed, unless it is made clear that the risk of dissemination of Privileged

Information does not exist, the representation structure envisioned by the Bankruptcy Code and

incorporated into PROMESA would become immediately dysfunctional.

      25.     The Committee submits that the requested relief regarding establishment of a

protocol for dissemination of information to creditors is appropriate and within the Court's

authority.  Indeed, courts in a variety of districts routinely grant the relief requested herein.[12]

      26.     The disclosure of nonpublic or privileged information to creditors will not foster a

reorganization of the Debtors but will likely cause serious harm to the Debtors.  Therefore,

pursuant to sections 105(a), 107(b)(1), and 1102(b)(3)(A) of the Bankruptcy Code, the

Committee respectfully requests that the relief herein be granted to maximize the value of the

Debtors.

**B.**    **Creation of Committee Website and Retention of Prime Clerk as Information Agent is Appropriate**

      27.     The Committee will play a key role as a source of information for an enormous

number of creditors and parties-in-interest in these cases, and communication with these entities

and individuals will be critical to the success of the Title III cases.  The bilingual Committee

Website will provide an efficient and effective means of conveying information to creditors and

interested parties, both in Puerto Rico and elsewhere.  Given the importance of effective

communication and the intense public interest in these unprecedented insolvency cases, in which

---

[12]   *See, e.g.*, *BPS US Holdings Inc.*, Case No. 16-12373 (KJC) (Bankr. D. Del. Jan. 6, 2017) [Docket No. 510] (approving procedures under which the creditors' committee is not required to provide access to confidential or privileged information); *In re Linn Energy, LLC*, Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. Aug. 25, 2016) [Docket No. 869] (same); *In re Peabody Energy Corporation*, Case No. 16-42529 (BSS) (Bankr. E.D. Mo. July 21, 2016) [Docket No. 951] (same); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 8, 2016) [Docket No. 507]; *In re GT Advanced Technologies Inc.*, Case No. 14-11916 (HJB) (Bankr. D.N.H. Jan. 7, 2015) [Docket No. 963]; *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Dec. 17, 2014) [Docket No. 3050]; *In re Furniture Brands International, Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Nov. 21, 2013) [Docket No. 799] (same).

the fate of Puerto Rico and its nearly three and a half million residents is at stake, the Committee

Website is more than warranted.

28.     The Committee believes that the retention of Prime Clerk to create and administer

the Committee Website will be beneficial to the Debtors.  Prime Clerk is one of the country's

leading chapter 11 administrators with expertise in noticing, claims processing, balloting and

distribution.  In the normal course of its business, Prime Clerk is often called upon to create

websites for the purpose of providing access to information to creditors.  Prime Clerk is

particularly well qualified, on behalf of the Committee, to provide the Debtors' creditors with

access to information in connection with these cases, given that Prime Clerk has already been

retained as the solicitation, notice, and claims agent in connection with the Title III Cases of the

Commonwealth of Puerto Rico and COFINA pursuant to an order of this Court [Docket No.

245].  This other role will facilitate the establishment of "links" between the Committee Website

and the website established by Prime Clerk for the Commonwealth, which will "go live" upon

entry of the Proposed Order.

29.     In addition, Prime Clerk has previously been retained as claims, noticing, or

information agent in numerous large chapter 11 cases, including the following: *In re The

Gymboree Corporation*, Case No. 17-32986 (KLP) (Bankr. E.D. Va. June 11, 2017); *In re

Vanguard Natural Resources, LLC*, Case No. 17-30560 (MI) (Bankr. S.D. Tex. Feb. 3, 2017); *In

re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Jan. 20, 2017) (Creditors'

Committee); *In re DirectBuy Holdings, Inc.*, Case No. 16-12435 (CSS) (Bankr. D. Del. Nov. 3,

2016) (Creditors' Committee); *In re Linn Energy, LLC*, Case No. 16-60040 (DRJ) (Bankr. S.D.

Tex. May 13, 2016); *In re SunEdison*, *Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. April

22, 2016); *In re Noranda Aluminum, Inc.*, Case No. 16-10083 (BSS) (Bankr. E.D. Mo. Feb. 12, 2016).

30.     The Committee proposes that the reasonable fees and expenses of Prime Clerk for professional services rendered on behalf of the Committee in connection with these Title III Cases shall be paid by the Commonwealth (and other title III Debtors (if any) for which the Committee acts as the official committee of unsecured creditors) in accordance with the terms of the Engagement Agreement and as set forth herein.   Prime Clerk has provided the Committee with a significant discount of 10% off of its monthly invoices and an additional 10% off of the hourly rates of almost all of Prime Clerk's professionals, as set forth in further detail in the Engagement Agreement.  In addition, Prime Clerk will offer website hosting free of charge.  The Committee believes that, in light of the nature and complexity of these cases and Prime Clerk's qualifications, the compensation structure, and the terms and conditions of Prime Clerk's employment, are reasonable.   Prime Clerk will invoice the Commonwealth on a monthly basis in accordance with their pricing structure, a copy of which is attached hereto as Exhibit C (the "Pricing Structure").  Following Prime Clerk's service of its monthly invoice to the Commonwealth, the Committee and the Office of the U.S. Trustee (the "Notice Parties"), the Notice Parties shall have ten (10) days to advise Prime Clerk and the other Notice Parties of any objections to Prime Clerk's monthly invoices.  If an objection is raised to an invoice, the Commonwealth will remit to Prime Clerk only the undisputed portion of the invoice and, if applicable, will pay the remainder to Prime Clerk upon the resolution of the dispute. All objections that are not resolved by the parties shall be preserved and presented to the Court by the objecting party at the next interim or final fee application hearing to be heard by the Court.

## NOTICE

31.     Notice of this Motion has been provided to the following entities, or their counsel, if known:  (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) the official committee of retirees; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors;[13] and (viii) all parties that have filed a notice of appearance in the Title III Cases.

## **NO PRIOR REQUEST**

32.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

---

[13]   Which include the Mutual Fund Group, the Ad Hoc Group of General Obligation Bondholders, the COFINA Senior Bondholders' Coalition, and the QTCB Noteholder Group, each as such group is defined at Docket Nos. 28, 68, 216, and 134, respectively.

WHEREFORE, the Committee respectfully requests that this Court enter an order substantially in the form attached hereto, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated:  July 20, 2017
      San Juan, Puerto Rico

                                          /s/ G. Alexander Bongartz

                                          PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
Andrew V. Tenzer, Esq. *(Pro Hac Vice)*
Michael E. Comerford, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel:  (212) 318-6000
lucdespins@paulhastings.com
andrewtenzer@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

- and -

*/s/ Patrick D. O'Neill*

O'NEILL & GILMORE PSC
Patrick D. O'Neill, Esq., USDC - PR 128202
Charles P. Gilmore, Esq., USDC - PR 209614
252 Ponce de Leon Ave.
Citibank Tower Suite 1701
San Juan, Puerto Rico 00918
Tel.: (787) 620-0670
pdo@go-law.com
cpg@go-law.com

*Proposed Co-Counsel to the Official Committee of Unsecured Creditors*