# Exhibit B

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946-1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212-373-3158

WRITER'S DIRECT FACSIMILE

212-373-2122

WRITER'S DIRECT E-MAIL ADDRESS

arosenberg@paulweiss.com

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011 JAPAN
TELEPHONE (81-3) 3597 8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
EDWARD T ACKERMAN
JACOB A ADLERSTEIN
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
SCOTT A BARSHAY
JOHN F BAUGHMAN
J STEVEN BAUGHMAN
LYNN B BAYARD
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
DAVID M BERNICK
JOSEPH J BIAL
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
GEOFFREY R CHEPIGA
ELLEN N CHING
WILLIAM A CLAREMAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
ROSS A FIELDSTON
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
ANDREW J FORMAN*
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
ROBERTO J GONZALEZ*
CATHERINE L GOODALL
ERIC GOODISON
CHARLES H GOOGE JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
BRIAN S HERMANN
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
AMRAN HUSSEIN
LORETTA A IPPOLITO
JAREN JANGHORBANI
BRIAN M JANSON
JEH C JOHNSON
MEREDITH J KANE
JONATHAN S KANTER

ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
BRIAN KIM
DAVID M KLEIN
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
GREGORY F LAUFER
BRIAN C LAVIN
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
ALVARO MEMBRILLERA
MARK F MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
VALERIE E RADWANER
CARL L REISNER
LORIN L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
CHARLES F "RICK" RULE*
RAPHAEL M RUSSO
ELIZABETH M SACKSTEDER
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C TARLOWE
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
LAWRENCE G WEE
THEODORE V WELLS JR
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JENNIFER H WU
BETTY YAP*
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
TAURIE M ZEITZER
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

June 6, 2017

**VIA CERTIFIED MAIL AND EMAIL**

U.S. Department of Justice
Office of the United States Trustee
Attn: Guy G. Gebhardt, Acting United States Trustee for Region 21
75 Ted Turner Drive, S.W., Room 362
Atlanta, GA 30303

Re: *In re Commonwealth of Puerto Rico, et al.*, Case No. 17-03283 (Bankr. D.P.R.):
Appointment of Official Committees

Dear Mr. Gebhardt:

We are counsel to the Ad Hoc Group of Puerto Rico General Obligation Bondholders (the "GO Group"), holders of approximately $3 billion of bonds issued or guaranteed by the Commonwealth (collectively, the "GO Bonds" and holders thereof, the "GO Bondholders") in the above-captioned cases under Title III of PROMESA. We have carefully reviewed your *Response of United States Trustee to Motion for Entry of Order Pursuant to 48 U.S.C. § 2161 and 11 U.S.C. § 1102 Directing the Appointment of an Official Retiree Committee and Appointing Pre-Petition Ad Hoc Retiree Committee as the Official Committee* (the "Response") [Docket No. 192] in which you indicated that the United States Trustee intends to appoint three official committees in these Title III

cases: (i) an unsecured creditors committee in the Commonwealth's case; (ii) a retiree committee in the Commonwealth's case; and (iii) an unsecured creditors committee in the COFINA case. The GO Group does not take a position for or against the formation of an official retiree committee in the Commonwealth's case; however, the GO Group is sensitive to the fee burn associated with a potential committee operating beyond the issues for which it was formed. For the reasons set forth below, however, the GO Group does not believe appointing official unsecured creditor committees in either the Commonwealth's case or the COFINA case is appropriate and respectfully requests that the United States Trustee reconsider its decision to solicit interest in such committees. However, to the extent that any such committee is appointed in the Commonwealth's case, for the additional reasons set forth below, it should be primarily, if not entirely, composed of GO Bondholders.[1]

The appointment of a committee in a Title III proceeding, similar to a chapter 9 proceeding and unlike a chapter 11 proceeding, is entirely discretionary. Although section 301 of PROMESA incorporates all of section 1102 of the Bankruptcy Code, by its terms, section 1102 only requires appointing an unsecured creditors committee "after the order of relief under chapter 11". *See In re City of Detroit, Michigan*, Case No. 13-53846, *Order Granting the City's Motion to Vacate the Appointment of the Official Committee of Unsecured Creditors*, at 1 (Bankr. E.D. Mich. Feb. 28, 2014) [Docket No. 2784] (holding that there is no statutory requirement to appoint a committee in a chapter 9 case and disbanding the appointed official unsecured creditors committee). Moreover, in most chapter 9 cases, official unsecured creditor committees are not formed due to the lack of necessity (unsecured creditors are paid in full) and/or the cost associated with such an additional (often duplicative) committee for creditors. Even in the rare municipal bankruptcy situations where it appears that unsecured creditors will be impaired, official committees of retirees have been appointed in lieu of more general unsecured creditor committees with broader mandates. *See e.g. In re City of Stockton*, Case No. 12-32118, *Appointment of Official Committee of Retirees*, (Bankr. E.D. Cal. Apr. 1, 2013) [Docket No. 846]; *In re City Vallejo*, Case No. 08-26813, *Appointment of Official Unsecured Creditors Committee of Retirees* (Bankr. E.D. Cal. Oct. 7, 2008) [Docket No. 286]. In the two largest municipal restructurings that preceded the Title III filing, *Jefferson County, Alabama* and *City of Detroit*, official unsecured creditor committees, while considered, were ultimately abandoned (in the case of Jefferson County) or promptly disbanded (in the case of Detroit). *See In re Jefferson County, Alabama*, Case No. 11-05736, *Order Regarding Recommendation of Appointment of Unsecured Creditors' Committee* (Bankr. N.D. Ala. Jul. 13, 2012) ) [Docket No. 1127]; *In re City of Detroit, Michigan*, Case No. 13-53846, *Order Granting the City's Motion to Vacate the*

---

[1] If the United States Trustee is not inclined to recommend that at least a majority of a duly comprised official committee of unsecured creditors consist of GO Bondholders, then inasmuch as a retiree committee is to be appointed, so should an official committee of GO Bondholders.

*Appointment of the Official Committee of Unsecured Creditors* (Bankr. E.D. Mich. Feb. 28, 2014) [Docket No. 2784].

     Here, there are essentially three primary creditor groups in the Commonwealth's Title III case: pensioners, trade creditors and GO Bondholders. *See Petition for Relief by the Financial Oversight and Management Board of Puerto Rico on Behalf of the Commonwealth of Puerto Rico Pursuant to Title III of PROMESA Against All Parties, Schedule B* [Docket No. 1]. Let's assume a retiree committee is in fact appointed. That leaves trade creditors and GO Bondholders. According to the Commonwealth and Oversight Board's interpretation of certain provisions of PROMESA, trade creditors have been and will continue to be paid in the ordinary course. *See* 48 U.S.C. § 2163 ("[T]his title does not limit or impair . . . the political or governmental powers of the [Commonwealth], including expenditures for such exercise . . . ."); *Id.* at § 2165 ("[T]he court may not . . . interfere with—(1) any of the political or governmental powers of the debtor . . . .").[2] Representatives of the Commonwealth have stressed this point since filing for relief under Title III of PROMESA. *See e.g., AAFAF Says Title III Won't Touch Supplier Payments as Treasury Sends out $70M in Checks This Week*, REORG RESEARCH (May 5, 2017), quoting statement of Fiscal Agency and Financial Advisory Authority Executive Director Gerardo Portela ("The government has the commitment and, more importantly, the ability to pay suppliers and providers as usual. All of the government's bills will be processed under the ordinary process"). Hence, to the extent that the United States Trustee is considering forming a traditional official unsecured creditors committee comprised primarily of trade and other unsecured creditors, such an exercise is unnecessary under the circumstances and such a committee should not be appointed.

     The final major Commonwealth creditor group is the GO Bondholders. In contrast to other Commonwealth creditors, GO Bondholders have *not* been paid since July 1, 2016. As of today, the GO Bondholder claim is more than $19.5 billion in principal amount and overdue interest, interest on overdue interest and principal, and accrued interest – a number that will only continue to grow throughout the pendency of the Title III case. The GO Bonds represent a very substantial percentage of the Commonwealth's total claims and are widely held by retail and institutional investors. Significantly, unlike most other bonds issued by instrumentalities, GO Bonds do not have a trustee; there is no official representative to vigorously defend holders' rights and interests. Those rights and interests are unique and are set forth in Puerto Rico's Constitution, laws and PROMESA itself. Puerto Rico's Constitution clearly provides that, when available resources are insufficient to cover all of the Commonwealth's obligations, GO Bonds shall be paid *first*. *See* P.R. Const. Art. VI, Sec. 8. That Constitutional priority is further codified in Puerto Rico's Management and Budget

---

[2]   While this is not for today, the GO Group disagrees that the Commonwealth has authority under these provisions or otherwise to pay such creditors without paying GO Bondholders.

Office Organic Act, 23 L.P.R.A. 104(c). That Act recognizes the constitutional requirement that payment on GO Bonds shall come *first*, and specifies that payments or disbursements related to contracts, public health, safety, education, welfare, pensions, and capital works and improvements shall only be made *after* payments on GO Bonds. PROMESA further requires that any fiscal plan must "respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements" of Puerto Rico. *See* PROMESA § 201(b)(1)(N). The combination of (i) the GO Bondholders' $19.5 billion plus claim size, (ii) unique Constitutional and other legal rights, and (iii) the real possibility that other Commonwealth creditors will simply be paid off during the pendency of this case necessitates that if the United States Trustee remains inclined to appoint another official committee, that committee should consist primarily of GO Bondholders. We have several members willing to serve and other GO Bondholders not in the GO Group may be willing to serve as well.[3]

Finally, we do not believe that the GO Group's opinion that the GO Bonds are secured by a statutory lien over the Commonwealth's available resources should disqualify GO Bondholders from serving on an official unsecured committee if one is formed. The validity of the GO Bondholders' statutory lien is disputed by the Oversight Board[4] and hence should not preclude their service. In any event, the unique nature of the GO Bondholders' rights vis-à-vis other creditors and sheer size of their $19.5 billion plus claim compel substantial representation by them on any official committee that may be formed.

Although this is not really our concern, we note that an unsecured creditors committee is unnecessary in the COFINA case. Unlike the Commonwealth, the COFINA petition does not even list trade creditors, pension obligations, or other business type creditors. In fact, in its petition for relief under Title III of PROMESA, COFINA only listed *two* unsecured creditors. *See In re Puerto Rico Sales Tax Financing Corporation*, Case No. 17-03284 (Bankr. D.P.R. May 5, 2017) [Docket No. 1] (Schedule B listing creditors who have the largest unsecured claims). In the Response, you also recognized that an unsecured creditors committee in the COFINA case may not be appropriate. *See Response* at 5 (acknowledging that "there may be an insufficient number of unsecured creditors qualified or willing to serve").

Our primary reason for opposing the COFINA committee is that the potential formation of a COFINA committee raises a larger issue. Since the COFINA Title III petition was filed, several other Commonwealth instrumentalities have filed for Title III protection. There should be not be separate official committees for each jointly

---

[3] When considering membership among GO Bondholders, the United States Trustee should be mindful of holders with significant cross-holdings.

[4] *See In re Commonwealth of Puerto Rico, et al.*, Case No. 17-03283 (Bankr. D.P.R. May 3, 2017) [Docket No. 1] (Schedule B listing creditors who have the 20 largest unsecured claims).

administered case. *See In re McLean Industries, Inc.*, 70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987) (court appointed one committee for four cases that were jointly administered but not consolidated and noted "[t]here is no indication that Congress gave any thought to jointly administered cases and intended to require a committee for each case. The cost could be extreme.").

Lastly, assuming an official retiree committee is appointed, the GO Group submits that an agreement should be reached specifically delineating the roles and functions performed by such official committee and imposing an initial budgetary cap for the duration of the Title III cases. A retiree committee is by its very nature limited in scope. If the retiree committee gets involved in every matter arising in these Title III cases, the debtors' estates – and in turn the funds available for the Commonwealth's residents and its creditors – will be greatly diminished. This is particularly true here where the debtors' estates are already bearing the professional fees and costs incurred by both the Oversight Board and AAFAF. Such an outcome is neither necessary nor prudent and can be avoided if the retiree committee only participates in those instances where it can demonstrate that its interests require involvement.

In an effort to minimize costs and inefficiencies, courts have placed limitations on the functions that additional committees could perform. *See In re Pilgrim's Pride Corp.*, 407 B.R. 211, 221 (Bankr. N.D. Tex. 2009) (court requested, without imposing the formal limitation that it felt it had the power to impose, that the equity committee limit its involvement to those matters where its interests were at odds with those of the unsecured creditors committee, and court set quarterly budget for the equity committee for all purposes, including the fees of its counsel and financial advisor); *In re DPH Holdings Holdings Corp. (f/k/a Delphi Corp.)*, Case No. 05-44481, *Order Pursuant to 11 U.S.C. § 1102(a)(2) Directing the United States Trustee to Appoint an Equity Committee* at ¶ 5 (Bankr. S.D.N.Y. Mar. 30, 2006) [Docket No. 3024] (court order appointing equity committee stated that equity committee should not inject itself into negotiations between or among the debtors, the unions and General Motors Corporation); *In re Cumberland Farms, Inc.*, 142 B.R. 593, 594 (Bankr. D. Mass. 1992) (holding that that a second committee of secured lenders could not retain counsel because such counsel's efforts largely duplicate those of the debtors' counsel and the unsecured creditors' committee counsel); *In re Beker Indus. Corp.*, 55 B.R. 945, 951 (Bankr. S.D.N.Y. 1985) ("[T]he cost of the official unsecured creditors, equity and debenture committees does cry out for some prospective management. These committees can and should determine their joint interests and address them jointly; steps to minimize duplication can and should be taken; fees and expenses are to be closely monitored by committee members so that this Court is not presented with matters that have run out of hand and is faced with a plethora of objections."). Similarly, here, narrowly construing the retiree committee's mandate and

holding it to a budget will prevent the unnecessary diversion of the debtors' limited resources.[5]

---

[5] In that same vein, the GO Group strongly opposes the relief sought by certain unions seeking a separate official employee committee in addition to the official retiree committee. *See In re Commonwealth of Puerto Rico, et al.*, Case No. 17-03283, *Response of United Auto Workers International Union and Service Employees International Union to Motion of Ad Hoc Retiree Committee for Appointment of an Official Retiree Committee* (Bankr. D.P.R. May 26, 2017) [Docket No. 222]. While the interests of active employees may in certain instances be somewhat divergent from those of retirees, that is not a sufficient basis for the formation of an additional official committee. *See In re Residential Capital, LLC*, 480 B.R. 550, 558 (Bankr. S.D.N.Y. 2012) ("the mere presence of a conflict of interest does not necessitate an additional committee"). Official committees will often have up to seven members, whose interests are not always aligned. The members, however, must balance the potentially diverging interests and formulate a middle ground position that works for all constituents of the official committee. *See Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 9, 2003) ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.") (internal quotations omitted). To require that official committees be made up of stakeholders whose interests never diverge is not necessary and must be avoided to prevent depleting the debtor's estate. *See In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989) ("separate committees impose additional administrative expenses on the debtor's estate which adversely affect the debtor's ability to reorganize and … separate teams of professionals rarely contribute to the spirit of compromise that is intended as the guiding star of chapter 11."); *In re Baldwin-United Corp.*, 45 B.R. 375, 376 (Bankr. S.D. Ohio Nov. 11, 1983) ("Conflicts among creditors are inherent in all bankruptcy cases. In a case as complex as this one, they are inevitable. Yet, we do not believe, and decline to rule, that a separate committee for each equity security interest will engender harmony or alleviate conflict among creditors. We believe the opposite would result, and at an astronomical cost to the bankruptcy estates."). Indeed, the creation of additional committees is an "extraordinary remedy" – the facts here simply do not warrant such relief. *See In re Residential Capital, LLC*, 480 B.R. at 557. Further, and to avoid any confusion, the unions may represent and defend their constituents' rights and interests in the Title III cases without having to be part of any official committee. In any case, the unions are not the proper parties to sit on a committee; active employees – unionized and salaried employees alike – would be the appropriate members.

7

      We appreciate your attention to this matter. I'm available at your convenience to discuss these important issues and look forward to your response.

Very truly yours,

Andrew N. Rosenberg /krz