**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 603, 606**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY FILED BY CARIBBEAN AIRPORT FACILITIES, INC. [ECF NO. 603]**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay* [ECF No. 603]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

(the "Motion") filed by Caribbean Airport Facilities, Inc. (the "Movant").[2] The Commonwealth respectfully requests that the Motion be denied without prejudice for the reasons set forth below.

## PRELIMINARY STATEMENT

1. Two months ago, the Oversight Board, as the Debtor's representative pursuant to PROMESA section 315(b), filed a voluntary petition for relief for the Commonwealth under PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").[3] Since that time, the Commonwealth has been focused on transitioning into title III.

2. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it and its agencies and entities must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the Commonwealth and its agencies and entities with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf. To this

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

point, 22 motions to lift the automatic stay have been filed in the title III cases. Rather than evaluating the Motion in isolation, this Court should consider the totality of the circumstances with respect to the litigation docket the Commonwealth and its agencies and entities face and the implication of lifting the automatic stay at this juncture of the case.

4. Moreover, as discussed below, even analyzing the circumstances of the Motion in isolation, without reference to the totality of the litigation docket, the automatic stay should be maintained as Movant cannot meet the <u>Sonnax</u> factors here.

5. The Commonwealth and its advisors are currently working on revising the protocol for motions for relief from stay contained in the *First Amended Notice, Case Management and Administrative Procedures* [ECF No. 262-1]. The revised protocol would provide the Commonwealth with the necessary "breathing room" to evaluate the prepetition litigation claims asserted against it in the overall context of the Title III Case and would also allow for the Commonwealth to stipulate (as it has already done) with a movant to modify the stay where the litigation burden on the Commonwealth is minimal or the harm caused to the movant is grievous (<u>e.g.</u>, agreeing to lift the stay for a movant to pursue claims related to the forfeiture of personal property [ECF No. 272, 562]). The Commonwealth anticipates seeking approval of the revised protocol so as to be considered at the next omnibus hearing scheduled for August 9, 2017.

## **OBJECTION**

6. Bankruptcy Code section 362(d)(1) provides that a court may grant relief from the automatic stay "for cause." <u>See</u> 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in <u>Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)</u>, 907 F.2d 1280 (2d

3

Cir. 1990).[4] See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." Id. (citations omitted).

7. Movant's underlying action before the Court of First Instance of the Commonwealth of Puerto Rico (the "Commonwealth Court") is for damages for the temporary taking of certain contractual rights. The action still requires significant work and discovery by

---

[4] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

4

the parties, as detailed below. Because the current claim is one for damages that relates to a prior expropriation proceeding, we include some background on the initial expropriation case.

8. The initial expropriation case to which Movant refers to in the Motion was filed in 2011 as an expropriation action under the caption <u>Estado Libre Asociado de Puerto Rico v. Caribbean Airport Facilities, Inc.</u>, Case No. KEF2011-0453. That initial case was filed by the Commonwealth, on behalf of the Puerto Rico Ports Authority, to expropriate Movant's rights in accordance with a certain lease agreement and its amendment (the "<u>Leasehold Rights</u>"). Per that lease agreement, as amended, Movant is the long term lessee of the cargo area of the Luis Muñoz Marín International Airport, essentially controlling and subleasing such area, including the buildings developed by Movant in the leased premises and which will revert back to the lessor (the Puerto Rico Ports Authority) upon conclusion of the long term lease. When the Commonwealth filed the expropriation action, it deposited approximately $25 million with the Commonwealth Court as just compensation and filed a Declaration of Taking and Material Delivery through which the Commonwealth sought the immediate vesting of title of the Leasehold Rights. Notwithstanding such efforts, the Commonwealth Court noted that the just compensation deposited was insufficient and further noted that there were additional documents that the Commonwealth had to file. As a result, although the Commonwealth deposited a significant amount of money and filed the documents per which it should have acquired immediate title and possession over the Leasehold Rights, it did not in fact acquire possession over the property.[5]

9. Subsequently, the Commonwealth filed a request to voluntarily dismiss the expropriation action. The Commonwealth Court denied the voluntary dismissal with prejudice,

---

[5] At all relevant times Movant has had possession over the property subject to expropriation and has continued to profit from the same. At all relevant times, moreover, the approximately $25 million deposited by the Commonwealth as just compensation has remained deposited with the Commonwealth Court.

requiring the Commonwealth to serve all interested parties and obtain their consent. Subsequently, the Commonwealth sought an appeal of the Commonwealth Court's decision. In the appeal process, the intermediate appellate court found that the Commonwealth had acquired title over the Leasehold Rights—as a technical matter based on the filings and without reference to the possession issue—and noted that upon voluntary dismissal of the petition, Movant could request damages for the temporary taking and the Commonwealth Court should determine the damages caused for the temporary taking. On November 3, 2015, the Commonwealth Court dismissed the Commonwealth's expropriation action without prejudice in light of the Commonwealth's failure to deposit an additional amount as part of the just compensation. At that time, as at all times during the pendency of the expropriation process, Movant has had possession and complete control over the property, as well at the rent proceeds from the various subtenants.

10. When the Commonwealth Court dismissed the expropriation action on November 3, 2015, it retained jurisdiction to address Movant's claims for damages for the temporary taking and ordered that the $25 million that the Commonwealth had deposited as just compensation remain deposited while the Commonwealth Court considered the issue of appropriate compensation (the "<u>Damages Action</u>"). During 2016, the parties submitted opening expert reports regarding the damages due for the temporary taking. While the Commonwealth estimated $0 damages, Movant estimated $20,862,935.65 in damages for the alleged temporary taking of its contractual rights during the period of 2011-2015, despite the fact that during that whole period it had possession over the property and received income from such property. On February 1, 2017, the Commonwealth Court held a hearing and noted that it was not satisfied by the methodology used by the experts to appraise the alleged damages and entered an order requiring

6

the parties to submit new expert reports and, *afterwards*, conduct discovery and then submit a pretrial report. The Commonwealth Court also required certain amendments to the pleadings.

11. As of the commencement of the Commonwealth's Title III Case, the revised expert reports had not been submitted. Moreover, the Commonwealth's expert had expressed an interest in holding a hearing to discuss the methodology issue, in light of his concern over the Commonwealth Court's proposed methodology. Further, the discovery that the parties must conduct to have the case ready for an evidentiary hearing as to the compensation due Movant, if any, has not even commenced. As such, the Damages Action, which is the subject of the Motion, is still in its early stages and the Commonwealth estimates that to advance it all the way to a hearing on the merits of Movant's claims will require significant efforts and expenditures, including expert fees.

12. Considering the procedural stage of the Damages Action, the majority of the Sonnax factors are in favor of maintaining the automatic stay and denying the Motion.

13. **Sonnax Factors 1, 10, and 11**: As discussed above, the Damages Action is still at a preliminary stage. Significant discovery and expert reports are still pending, and pretrial proceedings, including a pretrial report, and any motions (*in limine* or dispositive) that the parties may require have yet to be filed or, in some cases, scheduled. While Movant asserts that a pretrial conference was set for August, that was before certain events leading to the delay in expert reports. As of today, even if the automatic stay were lifted, the case would not be pretrial ready by August. Getting the case ready for a hearing on the merits, and the hearing itself, which has not been scheduled, will require considerable expenditures of time and resources, including expert fees and expert discovery. As such, granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, Sonnax factors 1, 10, and 11

weigh in favor of denying the Motion. See In re Sonnax Indus., Inc., 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); In re Residential Capital, LLC, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

14. **Sonnax Factors 2 and 7**: Title III of PROMESA applies with respect to all debts, claims, and liens against a title III debtor (as such terms are defined in Bankruptcy Code section 101), created before, on, or after the commencement of the title III case. See 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003).

15. As a potential prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the Commonwealth to defend Movant's claims before determination of what that process will look like would undermine such process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11,

8

2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

16. Lifting the automatic stay to proceed with the Damages Action will divert the Commonwealth's attention and resources to defending Movant's claims in multiple forums and will encourage other creditors to seek similar relief. Thus, Sonnax factors 2 and 7 weigh in favor of denying the Motion. See In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

17. **Sonnax Factor 3**: The Damages Action does not involve the Commonwealth as a

9

fiduciary and Movant has neither made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 3 weighs in favor of denying the Motion.

18. **Sonnax Factor 4**: The Damages Action is proceeding before the Court of First Instance, before a Judge that routinely sees expropriation proceedings. However, the Commonwealth Court is deemed to have unified jurisdiction over all matters and is not a specialized tribunal that has been established to hear the Damages Action. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

19. **Sonnax Factor 5**: The Commonwealth does not have insurance coverage for the claims raised in the Damages Action and Movant has neither made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 5 weighs in favor of denying the Motion.

20. **Sonnax Factor 6**: The Commonwealth and Movant are the only parties to the Damages Action. Thus, the Damages Action cannot be characterized as primarily involving third parties and Sonnax factor 6 weighs in favor of denying the Motion. See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].")

21. **Sonnax Factor 12:** Balancing of the harms favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural state of the Damages Action, the large number of pending lawsuits against the Commonwealth, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to interests of other creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III

Case. On the other hand, postponing discovery and eventual adjudication of Movant's claims will neither adversely affect Movant nor promote judicial economy. There is nothing urgent about Movant's claims. As discussed above, at all times Movant has had possession over the property subject to expropriation and has continued to profit from the same. Moreover, expedition of the claims will not save the Commonwealth any time or money. Instead, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, <u>Sonnax</u> factor 12 weighs in favor of denying the Motion.

## **CONCLUSION**

22.     Movant has failed to establish extraordinary circumstances that justify the lifting of the automatic stay in the Title III Case. Accordingly and for the foregoing reasons, the Court should grant the Objection and deny the Motion without prejudice to Movant to re-file the Motion, if needed, after the revised protocol for motions for relief from stay can be considered by the Court.

Dated: July 21, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*