**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors | PROMESA (TITLE III)<br><br><br><br><br>No. 17-BK 3283 (LTS) |

**MOTION FOR RELIEF FROM STAY**

COMES NOW Hospital San Juan Capestrano,Inc., ("Movants") through the undersigned counsel, to respectfully move the Court for an Order pursuant to 11 U.S.C. § 362 for relief from the Automatic Stay and, in support of its motion, states as follows:

**Procedural Background**

1. In November 14, 1980, parents of minors belonging to the Special Education Program of Puerto Rico's *Departmento de Instrucción* (now named *Departamento de Educación*)("DE") filed complaints (on their behalf and on behalf of the minors) seeking an injunction and damages against the Commonwealth of Puerto Rico ("Commonwealth") and the DE.

2. The parents where seeking to move the DE to comply with federal and state legislation that required special education to be provided for students with disabilities. From those complaints, the *Rosa Lydia Vélez vs ELA*, (K PE1980-1738) case was born, and was certified as a class action on September 10, 1981. On that date, the First Instance Court, Judicial Region of San Juan, ("State Court") issued a preliminary injunction imposing the DE with obligations to comply with the requirements of the special education programs.

3. The DE failed to comply with the preliminary injunction, causing complaints on contempt of court to be filed throughout the process.

4. On February 14, 2002, the State Court issued a Partial/Interlocutory Judgment in which 87 stipulations where agreed upon by the parties. Among those stipulations the DE promised to comply with the federal and state requirements for the special education programs and to execute a series of administrative and structural plans to guarantee such compliance.

5. On December 22, 2002, the State Court found the DE in contempt of court for failing to comply with the stipulations and a $1,000.00 daily fine was imposed until compliance was met. The fine was subsequently raised to $2,000.00 daily

   in March 2006 and $10,000.00 daily in November 2014, among other monetary fines and obligations due to the Commonwealth's inability to comply.

6. In claims originating from *Rosa Lydia Vélez vs ELA*[1], supra, *Anastacia Crespo Mulero et al.*, and *Yazira Oliveras Rodriguez et al.*, representing minors Y.L.A.O. and A.L.D.C., filed complaints before the First Instance Court, Judicial Region of San Juan, ("State Court") Civil Case (No. K PE2013-0729) and Civil Case (No. C PE2017-0068 - Later transferred to Superior Part of Arecibo), respectively. Both requested the State Court to issue an injunction instructing the Commonwealth of Puerto Rico, ("Commonwealth") and its pertinent agencies[2], to comply with the previously emitted resolution in *Rosa Lydia Vélez vs ELA*, *supra*, and therefore provide their minors with the special educational programs they needed. As part of the complaints, both parties presented a torts claim against the Commonwealth.

7. On September 15, 2015 the Sate Court, granted the requested injunctions. It ordered the Commonwealth to immediately place minors Y.L.A.O. and A.L.D.C., ("Minors") in a residential program at the Movants' mental health facility.

8. At the present, according to the testimony of psychiatrist Dr. Beatriz Ramirez Ortiz, the multidisciplinary group that provides services to the Minors at the Movants' mental health facility recommends a much less restrictive environment. Specifically, they suggested *Instituto Psicopedagógico* at Bayamón, Puerto Rico.

---

[1] On May 19, 2017, the Commonwealth filed a Notice of Automatic Stay pursuant to Section 301(a) of PROMESA, ("Section 301(a)") 48 U.S.C. § 2101 et. seq. However, on May 26, 2017, the parts presented a Motion of Agreement in the State Court, in which both parties committed to a series of stipulations to include the continuation of the interlocutory phase in State Court, and the modification of the fines for contempt of court.
2. Although the Commonwealth stood ground in terms of the applicability of the Automatic Stay to the interlocutory phase and the fines, it agreed upon citing that the agreement was a result of the Commonwealth's compromise with special education and that Sections 303 and 305 of PROMESA, 48 U.S.C. §§ 2163 and 2165, provided the legal grounds for such agreement.
3. In summary the agreement stated the following:
-The Commonwealth recognized the importance of guaranteeing special education services and established its continuity and development as a government policy priority.
-In accordance with Sections 303 and 305 of PROMESA, which allow for disbursement of funds to maintain Commonwealth's operations, the Commonwealth guaranteed compliance with the interlocutory State Court Sentence of February 14, 2002.
-Both parts agreed on the reduction of fines imposed to the Commonwealth trough the years of incompliance and litigation and established a plan to modify the fines periodically.
-The parts recognized the damages claims to be paralyzed by the Automatic Stay, but compromised to maintain open channels of communication to work on resolving those claims promptly.
-The Commonwealth acknowledged the fact that the agreement was in virtue of Sections 303 and 305 of PROMESA and that such agreement in no way affects the restructuring process of the Commonwealth in the bankruptcy procedures.

[2] Departamento de Educación, Departamento de La Familia, Departamento de Salud, Administración de Servicios de Salud y Contra la Adicción.

9. On June 1, 2017, the State Court ordered the Commonwealth to provisionally place the Minors, if space was available, at *Instituto Psicopedagógico* on or before June 30, 2017.

10. On May 30, 2017, the Commonwealth's legal counsel filed in the Minor's abovementioned cases a *Notice of Automatic Stay* pursuant to Section 301(a) of PROMESA ("Section 301(a)").

11. The Automatic Stay paralyzed the State Court Order placing the Minors' transfer on an indefinite hold at the Movants' facility.

12. Movants attempted to reach an agreement with the Commonwealth in which the parts involved where willing to leave the torts action exclusively under the stay, while continuing with the State Court Order of placing the Minors in a better-suited environment. But subsequently, the Commonwealth's legal counsel rejected the agreement stating: "At the present, we don't have the authority to reach any type of agreement".

13. Section 301(a) of PROMESA states that, among other things, 11 U.S.C. §§ 362 and 922 of the United States Bankruptcy Code are applicable for petitions filed under Title III of such Act.

14. Nevertheless, the automatic stay of Civil Cases (No. K PE2013-0729) and (No. C PE2017-0068) should be lifted pursuant to 11 U.S.C. § 362 (d)(1) for cause, including but not limited to, providing the proper mental health care to the Minors, ensuring the progress of their special education and mental health treatment, complying with federal regulatory laws, local laws and consent decrees.

15. At the moment, while the Automatic Stay is in place, the Minors are confined indefinitely in a facility that provides a much more restrictive environment than what their mental health requires, risking setbacks to their progress, thus not complying with the federal and state statutes that regulate the special education programs for which funds have already been assigned.

## Jurisdiction and Venue

16. This Court has jurisdiction over this matter pursuant to section 306(a) of PROMESA, 48 U.S.C. § 2166(a).

17. Venue is proper pursuant to PROMESA section 307(a), 48 U.S.C. § 2167(a).

18. The relief requested is based upon section 362 of the Bankruptcy Code, 11 U.S.C. § 362, applicable to this case by section 301(a) of PROMESA, 48 U.S.C. § 2161(a), and Federal Rules of Bankruptcy Procedure 4001 and 9014 and the Local Bankruptcy Rule 4001-1 for the District of Puerto Rico, also applicable to this case by section 301 of PROMESA, 48 U.S.C. § 2161.

**Relief Requested**

19. By this Motion, Movants seek relief from the automatic stay to allow them to continue the process in the First Instance Court, Judicial Region of San Juan and Arecibo respectively (or any other court of competent jurisdiction).

20. Movants' requested relief from the automatic stay is exclusively in regards to the action of placing the Minors Y.L.A.O. and A.L.D.C. in a proper mental health environment as ordered by the State Court, and not directed at obtaining relief to pursue the paralyzed damages claim against the Commonwealth.

**Basis For Relief**

Relief from the automatic stay provided by 11 U.S.C. § 362(a) is governed by 11 U.S.C. § 362(d), which reads, in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under the subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay - (1) **for cause**, including the lack of adequate protection of an interest in property of such party in interest... 11 U.S.C. § 362(d)(1).

Although Movants bear the initial burden to show that "cause" exists, once a *prima facie* case of "cause" is shown, the Debtors (as the parties opposing stay relief) have the ultimate burden of disproving the existence of "cause" pursuant to Section 362(g) of the Bankruptcy Code. See, e.g., In re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

The Bankruptcy Code does not define the concept of "cause". Consequently, the Court must decide what constitutes "cause" to lift the automatic stay on a case-by-case basis. See, Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992). According to the Court in *Rexene*, the legislative history of Section 362 of the Bankruptcy Code provides that cause may be established by a single factor such as "a desire to permit an action to proceed… in another tribunal" or "lack of any connection with or interference with the pending bankruptcy case". *Rexene*, 141 B.R. at 576 (citing H.R. rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)). Courts determine what constitutes "cause" based on the totality of the circumstances in each case. *Baldino v. Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

The Court in *Rexene* provides a "balancing test" to determine whether cause exists to lift the automatic stay. 141 B.R. at 576. Such balancing test looks at three (3) factors to decide whether to lift the automatic stay, including:

a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor; and

c) the movant has a probability of prevailing on the merits.

*Rexene*, 121 B.R. at 576; *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993); See also, Int'l Bus. *Machines v. Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir.1991).

To establish "cause", Movants must show that the "balance of hardships from not obtaining relief tips significantly in [their] favor". *Alt. Marine, Inc. v. Am. Classic Voyages, Co.*, 298 B.R. 222, 235 (D. Del. 2003) (internal citations omitted).

### Debtors Will Not Suffer Prejudice

As to the first factor, granting the Movants' relief from the stay will not impose prejudice on the Debtor or delay the administration of the bankruptcy cases. See, In *re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008, 1014 (Bankr. N.D. Alaska 1996) (noting the court should consider the extent to which trial in a non-bankruptcy forum will interfere with the progress of the bankruptcy case.) Nothing before this Court will be held in abeyance because of the Movants continuing their action of transferring the Minors to another facility. Furthermore, if the Commonwealth's Department of Justice is tasked with any aspect of the Minors transfer, it is highly unlikely that the attention of Debtor's counsel will be required. That being said, there should be no reasonable justification in this case, for objecting on the grounds that, if the stay is lifted, it would open the gates for other creditors seeking similar reliefs. As such, the feared effect of diverting Debtor's attention and resources to defending claims at the State Court is non-existent in these particular circumstances.

The Relief from Stay in this case is centered in humane grounds and being able to provide the proper mental health care for the Minors and it is hard to believe that it would open any gates for subsequent similar actions. This is not a monetary claim and will not interfere or divert resources from the debt restructuring process at the bankruptcy court.

In conclusion, the Commonwealth will suffer no harm as a result of the lifting of the Automatic Stay for the sole purpose of complying with the transfer order. It will not disrupt the managing of the Commonwealth and will not interfere with the Commonwealth's ability to provide essential services. In other words, granting the relief of stay in this case will not harm the Commonwealth or the PROMESA process and will not impact in anyway the sought after "breathing room" that the Commonwealth receives by the Stay provision.

### Hardship of the Movants Outweighs That of the Debtors

As an initial matter, it is difficult for the Commonwealth to claim any hardship in this case. The Minors on the other hand, have been forced to stay confined in the Movants medical facility, which can no longer provide the adequate mental health care the Minors require.

The Puerto Rico Mental Health Law 408, 24 L.P.R.A. sec. 6152 et seq., states in its motive of legislative intent: "Mental health is the result of the functional interaction between the person and his environment…" "We ratify that safeguarding the

Commonwealth's mental health is, and must be a matter of absolute interest for the Government of Puerto Rico".

It's evident that the hardship of the Minors, which is resultant from the inability of the Movants facility to provide the level of mental health care required, outweighs that of the Debtors and makes little sense to force Movants to wait indefinitely when the burden on the Debtors if any, is minimal in this specific case.

### Movants are Likely to Succeed on the Merits

As to the third factor, the required showing of probable success is minimal. *In re Rexene*, 141 B.R. at 578 ("Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from stay…").

As previously stated, Movants' Request for Relief is not intended to pursue the torts action against the Commonwealth nor to pursue any other pending claim currently on ligation in the State Court. Movants' request to lift the automatic stay is exclusively in regards to executing the transfer order emitted by the State Court on June 1, 2017, so they can continue to achieve the mental health progress that the Minors deserve.

According to 24 L.P.R.A. § 6161b of Mental Health Law 408, supra, once the objectives of the *Individualized Recuperation and Rehabilitation Plan* have been achieved, the Minors (in this case) will continue in another level of care with greater autonomy, as their mental health condition permits. Evidently, not granting the relief for such matters would risk mayor setbacks on their treatment causing the Minors to suffer irreparable and non-pecuniary harm.

It's imperative to keep in mind that the Commonwealth has already committed to an agreement in the pending State Court case *Rosa Lydia Vélez vs ELA, supra,* from which the present case originated. Trough this Relief from Stay, Movants' seek to protect the Minors' constitutional right to receive a public education that promotes their personality development and strengthens their personal rights. E.L.A. Const. art. II § 5. In addition to the Commonwealth's Constitution, the Individuals with Disabilities Education Improvement Act ("IDEA") 20 U.S.C. § 1400 et. seq., and its Commonwealth version the Integral Educational Services for Persons with Disability ("Law 51"), 18 L.P.R.A § 1351 et. seq., also provide the regulatory scheme that protects the educational and development rights of persons with disabilities. It's also important to mention that federal funds are already assigned to the Commonwealth's DE to provide the services that IDEA is met to ensure.

Finally, Sections 7 and Section 304(h) of PROMESA 48 U.S.C. §§ 2106 and 2163, expressly prohibit the cease of compliance with regulatory federal laws and local law requirements under consent decrees or judicial orders and civil sanctions for the implementation of federal statutes. In addition, the State Court Partial/Interlocutory Sentence from February 14, 2002, is a decree by consent to comply with federal regulatory statutes (in this case IDEA). Therefore PROMESA should not be construed to permit the discharge of such obligations.

In conclusion, since the Movants' Relief from Stay request is in regards to the compliance of the decree by consent agreed upon by the Commonwealth on February 14, 2002, decree that served to implement federal statutes, and that as recent as of May 26, 2017, the Commonwealth agreed to continue the process in the State Court acknowledging that it does not affect the PROMESA proceedings, the Relief from Stay should be granted so that the Minors can receive the special education and mental health treatment they deserve.

No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, Movants respectfully requests that the Court enter an Order granting Movants relief from the automatic stay allowing them to continue with the transfer order currently pending in the First Instance Court, Judicial Region of San Juan, Civil Case (No. KPE2013-0729) and Arecibo, Civil Case (No. C PE2017-0068) and for such other and further relief as the Court deems proper.

### Certificate of Service

I HEREBY CERTIFY that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all participants, including the Debtor and the US Trustee. Copies have been mailed to the "Standard Parties" pursuant to Section II. A. (i)-(vii) of the *First Amended Notice, Case Management and Administrative Procedures* (Docket No. 262-1):

Paper Copies:

Chambers of the Honorable Laura Taylor Swain
United States District Court for the District of Puerto Rico
150 Carlos Chardón Street
Federal Building, Office 150
San Juan, PR 00918-1767

Chambers of the Honorable Laura Taylor Swain
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Suite No. 3212
New York, New York 10007-1312

Office of the United States Trustee for Region 21
Edificio Ochoa, 500 Tanca Street, Suite 301
San Juan, PR 00901-1922

By E-mail:

Puerto Rico Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, PR 00907
Attn: Gerardo J. Portela Franco
    Mohammad Yassin, Esq
E-mail:Gerardo.Portela@aafaf.pr.gov
    Mohammad.Yassin@aafaf.pr.gov

    O'Melveny & Myers LLP
    7 Times Square
    New York, New York, 10036
    Attn:   John J. Rapisardi, Esq.
            Suzzanne Uhland, Esq.
            Peter Friedman, Esq.
            Diana M. Pérez, Esq.
    E-mail: jrapisardi@omm.com
            suhland@omm.com
            pfriedman@omm.com
            dperez@omm.com

    Law Offices of Andrés W. López, Esq.
    902 Fernández Juncos Ave.
    San Juan, PR 00907
    Attn:   Andrés W. López, Esq.
    E-mail: andres@awllaw.com

    Proskauer Rose LLP
    Eleven Times Square
    New York, New York 10036-8299
    Attn:   Martin J. Bienenstock
            Paul V. Possinger
            Ehud Barak
            Maja Zerjal
            Chris Theodoridis
    E-mail: mbienenstock@proskauer.com
            ppossinger@proskauer.com
            ebarak@proskauer.com
            mzerjal@proskauer.com
            ctheodoridis@proskauer.com

    O'Neill & Borges LLC
    250 Muñoz Rivera Ave., Suite 800
    San Juan, PR 00918-1813
    Attn:   Hermann D. Bauer, Esq.
    E-mail: herman.bauer@oneillborges.com

**RESPECFULLY SUBMITTED**

In San Juan, Puerto Rico, on July 24, 2017.

/s/Jessica Esther Méndez Colberg
JESSICA ESTHER MENDEZ COLBERG
USDC 302108
Urb. Constancia
Calle San Francisco
PO Box 10779
Ponce, Puerto Rico 00732-0779
Tel. 787-848-0666
Fax 787-841-1435
Email: jessica@bufete-emmanuelli.com