# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. | NO. 17-BK-3283 (LTS)<br><br>(Jointly Administered)<br><br>PROMESA TITLE III |

## URGENT MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO PROMESA'S SECTIONS 4, 7, 301(c)(3), 304(h), IDEA'S SECTIONS 1400(c)(6), (c)(8), 1412(a)(6)(A), 1415(d)(2)(L), (i)(3)(B), BANKRUPTCY CODE'S SECTIONS 362(b)(4), (d)(1), AND CONGRESS' BROAD POWERS UNDER THE SPENDING CLAUSE OF THE U.S. CONSTITUTION

To the Honorable United States District Court Judge Laura Taylor Swain:

NOW COME Mrs. Bernice Beauchamp-Velázquez**,** personally and on behalf of her minor special needs daughter, AMB (collectively referred to as "Movants"), through their undersigned attorney, and respectfully submits this urgent motion for relief from the automatic stay pursuant to PROMESA's sections 4, 7, 301(c)(3), 304(h), IDEA's sections 1400(c)(6), (c)(8), 1412(a)(6)(A), 1415(d)(2)(L), (i)(3)(B), Bankruptcy Code's sections 362(b)(4), (d)(1), and Congress' Broad Powers under the Spending Clause of the U.S. Constitution. This urgent request for relief from the automatic stay is premised on three independent legal grounds. The first argument in favor of relief from the stay is grounded in PROMESA's provisions holding it expressly inapplicable to cases such as Movants' where Debtors' strict compliance with a federal law (IDEA) is pursued, and on the omission of IDEA-protected children with disabilities and their parents from section 301(c)(3)'s definition of "holder of a claim or interest." If PROMESA is held applicable to Movants' case, there is cause for relief from the stay under section 362(d)(1) of Bankruptcy Code.

1

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

Otherwise, relief from the stay is also requested pursuant to the "government regulatory exemption" provided in section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. §362(b)(4). In support of this urgent request for relief from the stay, Movants state and pray as follows:

## I.  Introduction and Procedural Background

Mrs. Bernice Beauchamp-Velázquez is the mother and legal custodian of minor AMB, a twelve (12) year old female born on April 3, 2005 who is diagnosed with generalized anxiety disorder, severe asthma, cardiac problems and depression, conditions that require specialized education and related services for her to be able to receive a free appropriate public education ("FAPE"). AMB resides with her mother and father, Mr. Nehich Mercedes-Martínez, in the Municipality of San Juan, Puerto Rico. AMB is duly registered with the Department of Education of Puerto Rico (hereinafter referred to as the "PR-DOE") as a child with disabilities with registration number 0012-7194, and is registered in its San Juan II District of the San Juan Region. As a child with disabilities, AMB is qualified by federal and state law to participate in the academic and related services program of the public education system administered by the PR-DOE.

Movants achieved prevailing party status in administrative "due process" case number 2016-107-190 held before hearing officer Mrs. María Ramírez-Montalvo, Esq. in the administrative due process forum created and administered by the PR-DOE pursuant to section 1415(f) of the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 et seq. The administrative case concluded on February 20, 2017 with the hearing officer's issuance of a resolution granting all the relief sought by Movants in the due process complaint. Due to the PR-DOE's abstention from filing a timely judicial review petition, the resolution is final.

As prevailing parties, section 1415(i)(3)(B) of the IDEA provides Movants with the right (or "procedural safeguard" as named in the IDEA) to seek reimbursement of the reasonable

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

attorney's fees as part of the costs incurred in the administrative and judicial litigations against the PR-DOE for the latter's denial of AMB's right to a FAPE. Pursuant to IDEA's section 1415(i)(3)(B), Movants filed on March 31, 2017 a Verified Complaint in this District Court with a sole cause of action for recovery of the reasonable attorney's fees and taxable costs spent in the effective litigation of administrative case number 2016-107-190, plus any additional fees and costs spent in the judicial action for attorney's fees. The action was identified as case number 17-cv-1419 and was assigned to U.S. District Judge William G. Young.

On May 22, 2017, the PR-DOE and the Commonwealth of Puerto Rico (hereinafter collectively referred to as "Debtors") filed a Notice of Automatic Stay of Proceedings Pursuant to the Commencement of Case Under Title III of PROMESA. See Case No. 17-cv-1419 (WGY) at docket entry no. ("DE") 8. Movants filed their opposition to the request to stay the proceedings on May 25, 2017. Id. at DE9. On June 21, 2017, the District Court issued an Order denying the Debtors' request to stay the proceedings. Id. at DE11. Debtors moved to reconsider, and Movants opposed. Id. at DE12, 13. The District Court originally denied the motion for reconsideration, Id. at DE14, but shortly thereafter vacated its prior orders and concluded that the stay applies. Id. at DE15. An Order for Closure followed on July 13, 2017. Id. at DE16.

It is from this Order for Closure issued pursuant to section 301(a) of Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§2101-2241, that Movants respectfully request relief for the following reasons. First and foremost, because sections 7 and 304(h) of PROMESA expressly exempt the statute from being "construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws" such as IDEA, Id. at §2106, and section 4 evidences it does not alter or in any way affect IDEA's requirements enacted under Congress' Spending

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

Clause power. Id. at §2103. Secondly, because Movants are not deemed "holders of a claim" under

section 301(c)(3) of PROMESA, Id. at §2161(c)(3). Thirdly, because there is cause for relief from

the stay pursuant to section 362(d)(1) of the Bankruptcy Code. Fourth and finally, because the

"government regulatory exemption" of section 362(b)(4) of the Bankruptcy Code is applicable to

this case where the District Court serves as the sole governmental unit with "police and regulatory

power" granted by Congress to award Movants with reasonable attorneys' fees as prevailing

parties in the administrative case against the PR-DOE.

## II.     Argument

### A. Movants' case should be held exempt from the automatic stay pursuant to PROMESA's sections 7 and 304(h).

### (1) Movants right to recover attorney's fees is a procedural safeguard expressly afforded by the IDEA, a federal law that binds the Commonwealth and its instrumentalities such as the PR-DOE.

The Commonwealth of Puerto Rico is a deemed a "state" under the IDEA, Id. at §1401(34),

who abrogated its Eleventh Amendment sovereign immunity by accepting federal funding under

the statute, Id. at §1403. See also 20 U.S.C. §1403(b)(express provision allowing suit against States

for remedies "both at law and in equity" for violations of the IDEA."). To become eligible for

federal funding under the IDEA, Puerto Rico is expressly required to "ha[ve] in effect policies and

procedures to ensure that the State meets each of" a total of twenty-five (25) conditions expressly

listed in the section 1412 of the federal statute. Id. at §1412. See Endrew F. v. Douglas County

Sch. Dist., No. 15-827, 580 U.S. ___ (March 22, 2017)(slip op., at 1-2)(recognizing that "[i]n

exchange for the funds, a State pledges to comply with a number of statutory conditions."); Fry v.

Napoleon Comm. Sch., No. 15-497, ___ U.S. ___, 137 S. Ct. 743, 748-49 (2017)(recognizing that

"IDEA offers federal funds to States in exchange for a commitment: to furnish a... FAPE-to all

4

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

children with certain physical or intellectual disabilities."); Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 127 S. Ct. 1994, 1998 (2007)(recognizing that a school district that accepts IDEA federal funding for assistance in the education of children with disabilities "[a]s a condition of receiving funds, it must comply with IDEA's mandates."); Honig v. Doe, 484 U.S. 305, 308 (1988)(recognizing that the EHA (IDEA's predecessor) required, "[a]s a condition of federal financial assistance... the Act establishes a comprehensive system of procedural safeguards designed to ensure parental participation in decisions concerning the education of their disabled children and to provide administrative and judicial review of any decisions with which those parents disagree").

Among the eligibility conditions for federal funding that the Commonwealth of Puerto Rico accepted and received for all times pertinent to Movants' complaint lies Debtors' duty to assure that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section 615" (codified in the U.S. Code as section 1415) of the IDEA. See 20 U.S.C. §1412(a)(6)(A). See also Bd. of Education v. Rowley, 458 U.S. 176, 205-06 (1982) (holding that section 1415 "procedural safeguards" are "not without significance... we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process...").

Having received federal funding under the IDEA for all times pertinent, Puerto Rico is bound to provide AMB, a child with disabilities protected under the federal statute, and her mother, Mrs. Bernice Beauchamp-Velázquez, with the "procedural safeguards" afforded to them in IDEA's section 1415. As a procedural safeguard intended to protect AMB's rights, IDEA's section

5

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

1415(i)(3)(B) affords the District Court with jurisdiction for awarding Movants as prevailing parties with "reasonable attorney's fees as part of the costs" without regard to the amount in controversy. Id. at §1415 (i)(3)(B), 34 C.F.R. §300.517 (attorney's fees). See also Michael G. Congiu, *An End to Empty Distinctions: Fee Shifting, the Individuals with Disabilities Education Act, and DOE v. Boston Public Schools*, 80 Chi.-Kent. L. Rev. 963 (2005) (historical background of IDEA's fee-shifting provision).

**(2) PROMESA's sections 7 and 304(h) expressly exempt Movants' case from the application of the automatic stay.**

Movants' case for recovery of attorney's fees under IDEA's section 1415(i)(3)(B) is expressly exempted from PROMESA's reach under sections 7 and 304(h). See 48 U.S.C. §§2106, 2164(h). Section 7 forbids the use of PROMESA's provisions to "impair[e] or in any manner reliev[e] a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory." Id. To allow the Order of Closure to be maintained would relieve Debtors of their duty to provide Movants with the minimum procedural and substantive rights clearly and unambiguously provided in the IDEA as preconditions to the substantial federal funding that Debtors continue to receive from Congress. Insofar as the stay would "impair" and "relieve" Debtors from complying with federal law (IDEA) and local laws (Laws 51 of 1996 and 238 of 2004), section 7 exempts this action from PROMESA's automatic stay provision.

In addition to section 7's general exemption applicable to all titles of the PROMESA, Title III contains a provision in section 304(h) where it specifically states that Title III bankruptcy petition "may not be construed to permit the discharge of obligations arising under Federal police

6

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

or regulatory laws**,** including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions[,]" and further clarifying that such exemption "includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties." Id. at §2164(h) (our emphasis). Section 304(h) forms part of PROMESA's Title III under whose provisions Debtors filed for bankruptcy on May 3, 2017. Hence, PROMESA's Title III bankruptcy-like proceeding exempts from the automatic stay "obligations arising under Federal policy or regulatory laws," such as Debtors' obligation under section 1415(i)(3)(B) of the IDEA to pay Movants' attorney's fees as prevailing party in a due process complaint for the denial of AMB's right to a FAPE.

PROMESA expressly allows the Commonwealth's Fiscal Oversight Board to annually submit a report that will describe, among others, "recommendations to the President and Congress on changes to [PROMESA] or other federal laws". 48 U.S.C. §2148(a)(3) (our emphasis). Hence, Debtors have been afforded with an avenue to obtain relief from their duty to provide special needs' children with attorney's fees under IDEA's section 1415(i)(3) fee shifting provision. Instead of moving this Court to maintain the stay, Debtors should be focusing on assuring the strict and timely compliance with all of IDEA's safeguards while moving the Oversight Board to issue a recommendation to the President and Congress to amend the IDEA to hold the Commonwealth exempt from compliance with section 1415(i)(3). Until that occurs and Congress and the President agree to amend the IDEA, Debtors must continue to abide strictly and in a timely manner with the procedural requirements set forth in IDEA's sections 1415 to avoid exposure to a finding of a system-wide violation of the IDEA.

There is persuasive authority in favor of holding PROMESA's stay inapplicable to cases brought by individuals with disabilities and their parents to exercise a procedural safeguard

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

(judicial review) under the IDEA. In <u>Vázquez-Carmona v. Department of Education of P.R.</u>, Case

No. 16-cv-1846, 2017 WL 2352153, District Judge Gelpí held on May 31, 2017 and June 9, 2017

that "[t]he PROMESA stay does not apply to" the causes of action brought by a special needs-

child and his mother for judicial review, injunctive relief, and declaratory judgment under section

1415(i)(2) of the IDEA. <u>See</u> Case No. 16-cv-1846 at DE70, 79. <u>See also</u> <u>Beauchamp-Velázquez</u>,

Case No. 17-cv-1419 (WGY) at DE15, p.2-3 (discussing with approval the <u>Vázquez-Carmona</u>

decision); <u>García-Cabeza v. PR-DOE,</u> Case No. 17-cv-1181 (WGY) at DE29, 34 (June 21, 2017

and July 10, 2017 Orders where District Judge William G. Young rules that an action for judicial

review under IDEA's section 1415(i)(2) is not automatically stayed by the Title III bankruptcy

petition because "[w]hat is clear is that special needs students continue to have their rights under

IDEA to special education services. PROMESA, by its express terms, does not impair those

rights."); <u>Canales-Cancel v. Office of Civil Rights</u>, Case No. 16-cv-2609 (FAB) at DE80 (June 23,

2017 Order where District Judge Francisco A. Besosa grants plaintiffs' request to vacate the stay

against the Commonwealth to P.R., the PR-DOE and the Puerto Rico Department of Labor and

Human Resources pursuant to sections 7, 301(c)(3) and 304(h) of PROMESA in a case for

compensatory special education services under the IDEA).

These are persuasive rulings in favor of holding the PROMESA's Title III automatic stay

inapplicable to Movants' case for attorney's fees under the IDEA because both judicial review and

attorney's fees are "procedural safeguards" (as IDEA identifies them) included in the same section

of the federal statute, namely section 1415(i). <u>See</u> 20 U.S.C. §1415(i). The judicial review

procedural safeguard appears in IDEA's section 1415(i)(2), whereas the attorney's fees fee shifting

provision appears in IDEA's section 1415(i)(3)(B). The decisions issued by Honorable District

Judges Gelpí, Young and Besosa in the aforediscussed cases are in line with precedent set in

8

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

Winkleman and favor a decision by this Honorable Court holding the automatic stay of Debtors'

PROMESA's Title III bankruptcy proceedings inapplicable to civil actions brought by special

needs individuals and their parents for exercising the procedural safeguards afforded to them in

IDEA's section 1415, including judicial review (1415(i)(2)) and, for prevailing parties, reasonable

attorney's fees (1415(i)(3)(B)). See Winkleman, 127 S. Ct. at 2005 (recognizing that **IDEA "takes**

**pains to 'ensure that the rights of children with disabilities and parents of such children are**

**protected'"** and holding that the "enforceable rights" granted by the IDEA "are not limited to

certain procedural and reimbursement-related matters, [but] encompass the entitlement to a free

appropriate public education for the parents' child.")(our emphasis). See also Doug C. v. Hawaii

Dept. of Educ., 720 F. 3d 1038, 1040, 1045 (9th Cir 2013)(holding that a state educational agency's

violation of "the IDEA's explicit parental participation requirements" constitutes a denial of a

FAPE, and recognizing that a state is disallowed from "excus[ing its] failure to satisfy the IDEA's

procedural requirements by blaming the parents" because in essence "IDEA's protections are

designed to benefit the student, not the parent.")(citing Anchorage Sch. Dist. v.

M.P., 689 F.3d 1047, 1055 (9th Cir.2012)).

Debtors' concerns regarding their fiscal crisis are legitimate but their economic situation

and PROMESA's text should not be held to override IDEA's section 1415(i) procedural

safeguards. See, e.g., Winkleman, 127 S. Ct. at 2006 (holding that "[e]ffects such as these

[referring to increase of costs borne by the States] do not suffice to invoke the concerns under the

Spending Clause."). In Cedar Rapids Cmty. Sch. Dist. v. Garret F., 526 U.S. 66, 77 (1999), the

Supreme Court found that the educational district's fiscal concerns regarding the cost of

implementing certain IDEA provisions may cause "legitimate financial concerns, but our role in

this dispute is to interpret existing law," and therefore rejected to "accept[] the District's cost-

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

based standard as the sole test for determining the scope of the provision [because it] would require us to engage in judicial lawmaking without any guidance from Congress." (Our emphasis).

As in Garret F., and according to IDEA's plain text, Winkleman, 127 S. Ct. at 2003 (enforcing IDEA according to "the plain language of the statute" and refusing to "ignore the plain text"), that in this case the Court's role is, regardless of the Commonwealth's current fiscal situation, to "in its discretion, may award reasonable attorneys' fees as part of the costs- (I) to a prevailing party who is a parent of a child with a disability." See 20 U.S.C. §§1415(i)(3)(B)(i), 1412(a)(6) (state eligibility conditions for qualifying and maintaining federal funding under the IDEA require that the state "has in effect policies and procedures to ensure…" that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title."). See also Winkleman, 127 S. Ct. at 2002 (agreeing with petitioners argument that IDEA's section 1415(i)(3)(B) **attorney's fees provision, among others, "accord parents independent, enforceable rights under IDEA" and holding that "it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court."**)(our emphasis).

> **(3) Attorney's fees should not be considered "money damages" or "debt collection" under PROMESA because of the exceptions to the term "claim" and due to Movants being excluded from the statute's definition of "claim holder."**

None of the remedies sought by Movants in the captioned case amount to "tort-like money damages," since the IDEA disallows such cause of action. See Nieves-Márquez v. Commonwealth of P.R., 353 F.3d 108, 124 (1st Cir. 2003). Neither should the attorney's fees recovery action be deemed as a "debt collection action" subject to the automatic stay of sections 362(a) and 922(a) of the Bankruptcy Code, since it is an equitable remedy expressly provided by the IDEA for a prevailing party on a section 1415(f) administrative due process case or section 1415(i)(2) judicial

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

review civil action.

As recently as in February 22, 2017, the U.S. Supreme Court held that "the only 'relief'
that IDEA makes 'available' is relief for the denial of a FAPE," and recognized that "an IDEA
officer cannot give-for example… money damages for resulting emotional injury." Fry, 137 S. Ct.
at 755, n.8. The First Circuit in Nieves-Márquez held that the IDEA only provides "compensatory
equitable relief," since "money damages are not available under IDEA." Nieves-Márquez, 353
F.3d at 124. The Court further recognized that even those "[a]wards of compensatory education
and equitable remedies that involve the payment of money" do "not constitute damages." Id. at
125 (citing Town of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 370-71 (1985)).
Consequently, the First Circuit ruled "that IDEA's primary purpose is to ensure FAPE, not to serve
as a tort-like mechanism for compensating personal injury." Id.

Movants' complaint for recovery of attorney's fees is exclusively for an equitable remedy
expressly provided in federal law, namely IDEA's section 1415(i)(3)(B). PROMESA's section
301, 48 U.S.C. §2161, adopts the definition of "claim" available in section 101 of the Bankruptcy
Code. However, PROMESA clarifies that the definitions apply "except as otherwise provided in
this section." Id. at §2161(a). Since PROMESA's sections 7 and 304(h) exclude the statute's
application for avoiding compliance with federal laws, the "except as otherwise provided in this
section" caveat of section 301(a) corroborates Congress' intentions of disallowing Debtors' use of
PROMESA's Title III bankruptcy-like proceedings to avoid or disregard their duties under federal
laws such as the IDEA. Id. at §§2106, 2164(h).

In addition, PROMESA's definition of "holder of a claim or interest" under subsection
301(c)(3) does not include children with disabilities who are protected under the IDEA federal
law. See 48 U.S.C. §2161(c)(3). Special needs individuals who as AMB are duly registered in the

11

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

PR-DOE's Special Education Program are not deemed "holder[s] of a claim or interest" for purposes of PROMESA's Title III bankruptcy-like proceedings. Id. As per the exception in section 301(a)'s definition of "claim" and section 301(c)(3)'s definition of a "holder of a claim or interest," Movants' case for recovery of attorney's fees pursuant to IDEA's section 1415(i)(3)(B) should be held exempted from the stay's application. Id.  Movants are not claim holders under PROMESA's Title III. Furthermore, the stay's application to the underlying case would result in relieving the Commonwealth and PR-DOE "from compliance with Federal laws," as expressly disallowed by Congress in PROMESA's sections 7 and 304(h). Id. at §§2106, 2164(h).

**(4) PROMESA's automatic stay is inapplicable to this case under the IDEA, a federal law enacted under Congress' broad spending power under the U.S. Constitution.**

Section 4 of PROMESA states that it "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act." 48 U.S.C. §2103. Such provision does not include "federal laws" within the list of those territorial or state statutes or regulations preempted by it. See 48 U.S.C. §2103. Hence, PROMESA does not preempt the IDEA. If the express exemptions from PROMESA's application provided in sections 7 and 304(h) are enforced, there would be no conflict amongst the two federal statutes and, therefore no need to weigh which federal statute supersedes the other.

Even if PROMESA's sections 7 and 304(h) are not enforced or deemed inapplicable, IDEA should nonetheless prevail because it was enacted pursuant to the U.S. Constitution's Spending Clause (U.S. Const. art. I, § 8, cl. 1), which is not "limited by the direct grants of legislative power" found in the U.S. Constitution such as Congress' plenary power over territories such as Puerto Rico. See S.D. v. Dole, 483 U.S. 203, 207 (1987)(holding that "the power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

power found in the Constitution.")(quoting United States v. Butler, 297 U.S. 1, 66 (1936)). As discussed in Dole, Congress' spending power is not unlimited but "subject to several general restrictions articulated" via jurisprudence, none of which allow Debtors' use of PROMESA to avoid compliance with IDEA's procedural safeguards. Id.

Citing Dole, in Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 128 (1st Cir. 2003), the First Circuit recognized the following five requisites for the validity of a statute promulgated under Congress' Spending Clause power, namely that (1) its power must be exerted in pursuit of the "general welfare," (2) the funding conditions must be imposed unambiguously for states to be fully cognizant of the consequences of their participation, (3) such conditions must not be "unrelated to the federal interest," (4) the legislation must not be barred by other constitutional provisions, and (5) the financial pressure created by the conditional grant of federal funds "must not rise to the level of compulsion." The IDEA and its section 1415(i)(3)(B) fee-shifting provision satisfy all the requisites identified by the First Circuit to enforce Congress's spending power over Puerto Rico.

The first requirement is clearly satisfied because IDEA pursues the general welfare of special needs children and their parents. The second requisite is also met since the conditions to IDEA federal funding are expressly and unambiguously stated throughout the whole statute and, in pertinent part, in sections 1412(a)(6) and 1415(i)(3)(B)(i). Being expressly related to "the national interest that the Federal Government ha[s of]... assisting State and local efforts to educate children with disabilities in order to improve results of such children and to ensure equal protection of the law," 20 U.S.C. §1400(c)(6), IDEA meets the third requirement. Absent any conflict with the Puerto Rico or U.S. constitutions, the fourth element is also satisfied. Finally, the IDEA cannot be deemed to exert financial pressure "to the level of compulsion" since Congress's conditioned funding under the IDEA to the PR-DOE's Special Education Program amounts to at least

13

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

$117,597,000 for fiscal year 2017 as per the educational agency's budget available at

http://www2.pr.gov/presupuestos/PresupuestoRecomendado2017-2018/PresupuestosAgencias

/Departamento%20de%20Educacion.pdf

Debtors bankruptcy petition under PROMESA's Title III should not be construed as a

discharge of the PR-DOE's obligations under the IDEA as a federal statute promulgated by

Congress under the broad powers conferred by the Spending Clause of the U.S. Constitution. See

Schaffer v. Weast, 546 U.S. 49, 51 (2005) (recognizing that the IDEA "is a Spending Clause statute

that seeks to ensure that "all children with disabilities have available to them a free appropriate

public education.")(citing 20 U.S.C. §1400(d)(1)(A)). The Supreme Court has consistently made

clear that "[s]tates receiving funds under the Act are obliged to satisfy certain conditions." Irving

Ind. Sch. Dist. v. Tatro, 468 U.S. 883, 889 (1984) (discussing IDEA's predecessor statute, the

Education of the Handicapped Act (EHA)). See also 20 U.S.C. §§1407(a)(1) (IDEA plain text

provision requiring states receiving funds to "ensure that any State rules, regulations, and

policies… conform to the purposes of this chapter."), 1412(a)(6) (IDEA plain text provision

requiring "that the State has in effect policies and procedures to ensure that the State meets each

of the following conditions: … (6)(A) Children with disabilities and their parents are afforded the

procedural safeguards required by section 1415 of this title."). In Town of Burlington v.

Department of Education, Commonwealth of Massachusetts, 736 F.2d 773, 788-89 (1ˢᵗ Cir. 1984),

aff'd 471 U.S. 359 (1985), the First Circuit recognized that states can set standards "that exceed

the federal basic floor of meaningful, beneficial educational opportunity" but cannot lower the

"basic floor of education" established by Congress in the IDEA.

IDEA's procedural safeguards seek to level the field between the educational agency –"the

party with the bigger guns [who] also has better access to information, greater expertise, and an

affirmative obligation to provide the contested services," Schaffer, 546 U.S. at 67 (J. Ginsburg,

14

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

dissenting)– and parents of special needs children. See also Burlington, 417 U.S. at 368 (noting

that "[a]pparently recognizing that this cooperative approach would not always produce a

consensus between the school officials and the parents, and that in any disputes the school officials

would have a natural advantage, Congress incorporated an elaborate set of what it labeled

'procedural safeguards' to insure the full participation of the parents and proper resolution of

substantive disagreements.")(our emphasis). Of the procedural safeguards, the Supreme Court

referred to as "perhaps most importantly" the "procedural protection" afforded by section

1415(i)(3)(B) to prevailing parents to recover attorney's fees. Schaffer, 546 U.S. at 61. Another

protection expressly and unambiguously enacted in the IDEA is the "procedural safeguards" notice

that must be provided by the PR-DOE with a "full explanation" of the circumstances were

"attorney's fees" are available. See 20 U.S.C. §1415(d)(2)(L).

IDEA's 1415(i)(3)(B) fee-shifting provision has been found to constitute a valid and

enforceable exercise of Congress' broad powers under the Spending Clause. In Arlington Central

Sch. Dist. Bd. v. Murphy, 548 U.S. 291, 295-98 (2006), the Supreme Court recognized the validity

and enforceability of IDEA's section 1415(i)(3)(B) fee-shifting provision and recognized that its

unambiguous and plain text "language simply adds reasonable attorney's fees incurred by

prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover." Id.

at 297. The Court held that "[i]n a Spending Clause case, the key is… what the States are clearly

told regarding the conditions that go along with the acceptance of those funds." Id. at 304.

According to the Supreme Court, "legislation enacted pursuant to the spending power is much in

the nature of a contract," and therefore, to be bound by "federally imposed conditions," recipients

of federal funds must accept them "voluntarily and knowingly." Id. at 296 (citing Pennhurst State

Sch. and Hosp. v. Halderman, 451 U.S. 1, 17 (1981)). The Schaffer Supreme Court had recognized

a year before that under IDEA's section 1415(i)(3)(B) "[p]revailing parents may also recover

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

attorney's fees." 546 U.S. at 54. The <u>Schaffer</u> Court went further by stressing that "IDEA, in fact, requires state authorities to organize hearings in a way that guarantees parents and children the procedural protections of the Act… and **perhaps most importantly, parents may recover attorney's fees if the prevail**." <u>Id.</u> at 61 (our emphasis). As noted by the Court, "[t]hese protections ensure that the school bears no unique informational advantage" over the child and his or her parents. <u>Id.</u>

The Supreme Court followed the <u>Murphy</u> holding in <u>Forest Grove Sch. Dist. v. T.A.</u>, 557 U.S. 230, 129 S. Ct. 2484, 2495-96 (2009), and again discussed Congress' power under the Spending Clause in the context of the IDEA. The <u>Forest Grove</u> Court recognized the importance of determining whether the IDEA "expressly" and "unambiguously" provides the conditions attached to a State's acceptance of funds, and upheld the possibility of holding the state liable for reimbursement of the cost of the special needs student's education in private school because "[i]n accepting IDEA funding, States expressly agree to provide a FAPE to all children with disabilities." <u>Id.</u> at 2495. Recognizing the clarity and unambiguousness in IDEA's FAPE condition for federal funding, the <u>Forest Grove</u> Court found that Congress' authority under the Spending Clause bound the states that receive federal funding under the IDEA to reimburse parents for the costs of a non-registered special needs-child's education in private school. <u>Id.</u> IDEA's conditions for judicial review and attorney's fees are even clearer that the reimbursement of private tuition at issue in <u>Forest Grove</u> since both are expressly and unambiguously stated in sections 1412(a)(6) and 1415(i)(2)-(3) of the IDEA, and sections 300.156, .157 of IDEA's regulation. <u>See</u> 20 U.S.C. §§1415(i)(2), (3)(A), (B)(i), (C), 34 C.F.R. §§300.516, .517.

It is undisputed that the Commonwealth of Puerto Rico has been receiving for all times pertinent federal funding subject to strict compliance with the IDEA federal law that was enacted pursuant to Congress' broad power under the U.S. Constitution's Spending Clause. According to

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

Shaffer and Murphy, IDEA's fee-shifting provision is clear and unambiguous. Consequently, Debtors cannot avoid strict compliance with their duties to reimburse Movants with reasonable attorney's fees simply because of their dire fiscal situation or the Title III bankruptcy proceeding. Thru IDEA's sections 1412(a)(6)(A), 1415(d)(2)(L) and (i)(3)(B) the Commonwealth was "clearly told" of the conditions "that go along with the acceptance of [IDEA] funds," Murphy, 548 U.S. at 295-96, to potentially be held liable for payment of the reasonable attorney's fees spent by parents who manage to prevail against its educational agency at the administrative and judicial levels. Debtors are therefore bound by federal law to abide strictly by IDEA's fee-shifting provision. Put differently, Congress plainly required that Debtors reimburse prevailing parents of the reasonable attorney's fees spent in the litigation for a violation of a child's right to a FAPE, and they accepted by requesting and receiving federal funding under the IDEA. Consequently, Debtors are obliged to comply, regardless of their Title III bankruptcy filing.

As recognized in Cedar Rapids Cmty. Sch. Dist. v. Garret F., 526 U.S. 66, 77 (1999), Debtors "legitimate financial concerns" do not affect the courts role "to interpret existing law." Hence, the Garret F. Court concluded that accepting a "cost-based standard as the sole test for determining the scope if [an IDEA] provision would require us to engage in judicial lawmaking without any guidance from Congress [and i]t would also create some tension with the purposes of the IDEA." Id. In line with Garret F., this Honorable Court should lift the automatic stay to avoid relieving Debtors from strict compliance with IDEA's plain text provisions, and allow the District Court to proceed to adjudicate the attorney's fees deemed reasonable in light of the work performed by Movants' counsel at the administrative and judicial levels.

The contextual reading of PROMESA and IDEA's plain text provisions demonstrate that both statutes were carefully designed and enacted to be mutually coherent. Congress carefully

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

enacted both statutes with the express purpose of avoiding that Debtors take advantage of the Title

III bankruptcy-like proceeding to be relieved from strict and timely compliance with federal laws

such as the IDEA. As per the aforediscussed Supreme Court precedents, IDEA is a plain text statute

enacted under Congress' plenary Spending Clause powers that courts must strictly enforce as

written regardless of the state's "legitimate financial concerns," Garret F., 526 U.S. at 77, in favor

of assuring that "[s]tates receiving funds under the Act are obliged to satisfy certain conditions,"

Tatro, 468 U.S. at 889, that include procedural protections such as, "and perhaps most

importantly," section 1415(i)(3)(B) fee-shifting provision stating that "parents may recover

attorney's fees if they prevail." Schaffer, 546 U.S. at 61. This conclusion is not only derived from

the plain text of PROMESA's sections 7 and 304(h), but is also the most logical and fair

interpretation of the Act consistent with Congress' intent to disallow any state or even the U.S.

Secretary of Education from implementing any law or regulation that "violates or contradicts" the

provisions of IDEA or "procedurally or substantively lessens the protections provided to children

with disabilities under" the IDEA. 20 U.S.C. §1406(b)(1)-(2). Considering the plain text language

of PROMESA's sections 4, 7, and 304(h), it is hard to envision that, after having disbursed federal

funding under the IDEA, Congress intended to allow Debtors to be suddenly exempted from

meeting their end of the bargain. PROMESA's plain text language clearly supports a ruling in

favor of holding the stay inapplicable to Movants' case under section 1415(i)(3)(B) of the IDEA

federal law.

To deem PROMESA applicable to Movants' case would require this Court to "engage[s]

in judicial lawmaking" by amending the plain text provisions of sections 4, 7, 301(c)(3), 304(h) of

PROMESA and sections 1400(c)(6), (c)(8), (d)(1)(B), 1412(a)(6)(A), 1415(d)(2)(L), (i)(3)(B) of

the IDEA, as forbidden by the Supreme Court in Garret F., 526 U.S. at 77. This Court should

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

therefore avoid such result. Pursuant to Congress' clear intention stated in both the IDEA and

PROMESA federal statutes in favor of disallowing any state, judicial or executive branch member

to promulgate and/or implement any rules or precedents that would contradict or procedurally or

substantively lessen the rights expressly afforded to Movants by IDEA's plain text provisions, this

Court should lift the stay of case number 17-cv-1419 (WGY) by holding the stay inapplicable to

Movants' case.

> **B.** **If PROMESA is held applicable to Movants' case, relief from the automatic stay should be provided under the "for cause" exemption available in section 362(d)(1) of the Bankruptcy Code.**

Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. §362(d)(1), allows this Court to grant

relief from the automatic stay "for cause." See, e.g., Brigade Leveraged Capital Structures Fund

Ltd. v. García-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016). In order to determine whether

cause exists to lift the stay, this District adopted the factors promulgated in In re Sonnax Indus.,

Inc., 907 F.2d 1280, 1286 (2nd Cir. 1990). The Sonnax Court in turn adopted the following twelve

factors from In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984): "(1) whether relief would

result in a partial or complete resolution of the issues; (2) lack of any connection with or

interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a

fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to

hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for

defending it; (6) whether the action primarily involves third parties; (7) whether litigation in

another forum would prejudice the interests of other creditors; (8) whether the judgment claim

arising from the other action is subject to equitable subordination; (9) whether movant's success in

the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of

judicial economy and the expeditious and economical resolution of litigation; (11) whether the

parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

balance of harms." Sonnax, 907 F.2d at 1286.

Of particular relevance to Movants case are factors numbers 1, 2, 4, 7, 9, 10, 11 and 12. As will be discussed hereinafter, all these factors weigh heavily in favor of granting relief from the automatic stay.

Sonnax factor 1: An order to lift the stay of Movants' case would result in a complete resolution of their complaint for attorney's fees insofar as their prevailing party status is undisputed and the only issue remaining is to determine the exact amount of attorney's fees deemed reasonable. See Case No. 17-cv-1419 (WGY) at DE 15, Memorandum and Order, p.2 (recognizing that "[t]he plaintiffs here are such successful claimants."). Hence, the only tasks pending are for Debtors to submit a memorandum stating their objections to any specific time entry from Movants' counsel invoice submitted as Exhibit #1 of the Verified Complaint, Id. at DE 1-2, and to allow for a reply and sur-reply, and the case would be deemed submitted for final adjudication. There is no need for any of the parties to perform discovery, hearings or bench trial. Civil actions for recovery of attorney's fees under IDEA's section 1415(i)(3)(B) fee-shifting statute are customarily promptly adjudicated thru written motions and conclude with the District Court's issuance of an order determining the amount of attorney's fees deemed reasonable, followed immediately by entry of judgment pursuant to such order. See, e.g., Concepción-Torres v. Commonwealth of P.R., 45 F. Supp. 3d 338 (D.P.R. 2014); Hernández-Rodríguez v. Commonwealth of P.R., 764 F. Supp. 2d 338 (D.P.R. 2011); Guerrero-Poché v. PR-DOE, Case No.16-cv-2426 (PAD) at DE22-23 (May 2, 2017); Pérez-Ortiz v. PR-DOE, Case No. 16-cv-2424 (GAG) at DE17 (September 14, 2016); González-Pérez v. Commonwealth of P.R., Case No. 12-cv-1093 (JAF) at DE19 (November 16, 2012); Rodríguez-Grau v. Commonwealth of P.R., Case No. 12-cv-1425 (FAB/CVR) at DE22 (November 16, 2012); Toledo-Barrionuevo v. Commonwealth of P.R., Case No. 11-cv-1949 (FAB/MEL) at DE19 (July 21, 2012); Reyes-Ortiz v. Commonwealth of P.R., Case No. 12-cv-

20

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

1080 (FAB) at DE35 (June 26, 2012), Santos-Díaz v. Commonwealth of P.R., Case No. 11-cv-

1957 (JAF) at DE18 (May 16, 2012); Arroyo-Rivera v. Commonwealth of P.R., Case No. 11-cv-

1927 (DRD) at DE15 (December 6, 2011); Santa-Rodríguez v. Commonwealth of P.R., Case No.

11-cv-1086 (SEC) at DE17 (October 25, 2011). Based on the simplicity of the case and expedited

manner of its adjudication by the District Court, Sonnax factor 1 favors relief from the stay for

allowing the complete and expeditious resolution of Movants' case.

Sonnax factors 2, 7 and 9: There is no connection or interference between Movants case

and Debtors bankruptcy proceeding (Sonnax factor 2). Likewise, creditors will not be affected by

any disbursements for payment of attorney's fees under the IDEA because such funds would come

from separate accounts that should not be made available to them and therefore do not belong to

the bankrupt estate (Sonnax factor 7). For same reasons, any judgment for recovery of attorney's

fees will not result in a lien of the bankrupt estate or otherwise erode the funds available to other

creditors (Sonnax factor 9).

Debtors will probably oppose this motion by asserting that any award of attorney's fees

will erode the bankruptcy estate to the detriment of other creditors. However, this is a deeply

flawed argument that implies an unlawful commingling of federal and state funds that is expressly

proscribed by the IDEA. Debtors' non-IDEA creditors should not be allowed to claim an interest

in, or otherwise seek to collect from, the federal funds that were provided by Congress and/or the

state matching funds that should be held separately and for the exclusive benefit of children with

disabilities aged 3 thru 21 and their parents, as IDEA expressly provides. See 20 U.S.C.

§§1412(a)(17)(C) (requiring that federal funding under the IDEA "be used to supplement the level

of Federal, State, and local funds (including funds that are not under the direct control of State or

local educational agencies) expended for special education and related services provided to

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

children with disabilities under this subchapter and in no case to supplant such Federal, State, and local funds, except [if] the State provides clear and convincing evidence that all children with disabilities have available to them a free appropriate public education."). Because any potential award of attorney's fees that could be provided to Movants pursuant to section 1415(i)(3)(B) of the IDEA will be paid by Debtors from state funds that are required by federal law to be held separate and unavailable to bankruptcy creditors to assure the adequate matching of federal and state funding, Debtors' creditors will not have their interests prejudiced by such disbursement of funds. Stated simpler, Debtors funds for assuring compliance with IDEA's minimum procedural requirements in favor of children with disabilities cannot be made available to creditors, or otherwise belong to the bankrupt estate, regardless of whether Movants are granted their right as prevailing party to recover attorney's fees. Hence, Sonnax factors 2, 7 and 9 favor the lifting of the automatic stay.

To deem the funds that will be destined to payment of Movants' attorney's fees as part of the bankrupt estate would result in a gross violation of IDEA's prohibition of commingling of federal and state funds destined for special education services. See 20 U.S.C. §§1412(a)(17)(B). The strictly conditioned federal funding issued to Debtors pursuant to the IDEA, and the state funds that must be kept separate in order to assure the adequate match of state and federal funding pursuant to the allotment formulae provided in IDEA's section 1411, cannot be made available to creditors or otherwise deemed as part of the bankrupt estate subject to reorganization under PROMESA's Title III proceedings. Such scenario would be a gross violation of IDEA's section 1412(a)(17)(B), of Congress' power and authority under the Spending Clause of the U.S. Constitution, and of the PR-DOE's Secretary Mrs. Julia Keleher's repeated public statements assuring and promising to avoid affecting the continuance of the educational and related services

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

being provided by the agency to special needs' children in Puerto Rico. See, e.g., Article published

on the El Nuevo Día newspaper on May 27, 2017 titled in Spanish "The DOE guarantees the

services to special education children" available at http://www.elnuevodia.com/noticias/locales/

nota/eldegarantizalosserviciosalosninosdeeducacionespecial-2325439/.

Debtors are receiving the amount of $117,597,000[1] in IDEA conditioned federal funding

for fiscal year 2017. Hence, what could effectively assert a "financial pressure" upon Debtors'

bankrupt estate is if Congress acts upon Debtors' gross system-wide violation of IDEA's

procedural safeguards under IDEA's section 1415(i) and deprives them of further funding or, even

worse, if it requires reimbursement of any funds already disbursed. Consequently, what could

really suffocate the Commonwealth's fisc, as Debtors will probably allege, is for them to be found

in a system wide violation of the IDEA which would consequently negate their capacity to continue

to qualify for federal funding under the federal statute. It is therefore in Debtors' best interest to

continue to comply with IDEA's procedural and substantive requirements to secure the generous

federal funding received from Congress that is expressly conditioned to their strict and timely

adherence to the IDEA. See 20 U.S.C. §1412(a)(6) (state eligibility conditions for qualifying and

maintaining federal funding under the IDEA require that Puerto Rico "has in effect policies and

procedures to ensure…" that "[c]hildren with disabilities and their parents are afforded the

procedural safeguards required by section 1415 of this title."). Otherwise, Debtors bankrupt estate

would be in even deeper peril. Furthermore, Debtors have so far avoided to illustrate the District

Court on much money they have spent in judicial review actions and/or attorney's fees awards

---

[1] For up to date information on the amount of IDEA federal funding that the PR-DOE received from 2015 until
presently, and what the agency expects to receive for year 2018, see pages 9-10 of the PR-DOE's budget available at
http://www2.pr.gov/presupuestos/PresupuestoRecomendado2017-2018/PresupuestosAgencias/Departamento
%20de%20Educacion.pdf

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

pursuant to the IDEA on any period pertinent to this case. Neither have they stated what percentage

of the PR-DOE's budget is "eroded" thru disbursements under section 1415(i)(3) or litigation of

section 1415(i)(2) judicial review cases. Absent a connection and/or interference with the

bankruptcy estate or proceedings, or an erosion of any funds that could be held to belong to the

estate under Title III bankruptcy or that could be otherwise made available to creditors, Sonnax

factors 2, 7 and 9 weigh heavily in favor of lifting the automatic stay and allowing Movants civil

action for recovery of attorney's fees under IDEA's section 1415(i)(3)(B) to proceed its course.

Sonnax factor 4: Although the District Court is not a specialized tribunal for hearing IDEA

cases, the fact that Congress opted to delegate the task of adjudicating actions for recovery of

attorney's fees under IDEA's section 1415(i)(3)(B) to federal district courts and state courts, and

no other administrative or judicial forum, demonstrates that Sonnax factor 4 favors Movants. See

Declet-Ríos v. PR-DOE, 177 D.P.R. 765, 772 (2009)(P.R. Supreme Court ruling that this District

Court and local state courts are the only forums capable of awarding attorney's fees to a prevailing

party under the IDEA). Insofar as it was Congress' clear intent to have the District Court, and not

a Bankruptcy Court, adjudicate Movants' case, Sonnax factor 4 favors the lifting of the automatic

stay.

Sonnax factors 10 and 11: The interests of judicial economy and of the expeditious and

economical resolution of the litigation, and the lack of a need to hold trial in the other proceeding,

strongly favor relief from the automatic stay in Movants' favor. The underlying case is one that, if

not stayed, would be expeditiously resolved. In Burlington, the First Circuit recognized that special

needs children cannot be treated "as though they were nonperishable commodities able to be

warehoused until the termination of in rem proceedings." 736 F.2d at 798 (citing 121 Cong. Rec.

37412, 37416 (Nov. 19, 1975)). If the stay is maintained, Movants would be totally deprived of

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

their right to obtain reimbursement of their fees, and therefore unable to procure further legal

representation should the need arise. District Judge Young recognized in Movants' case the

precarious situation in which children with disabilities in Puerto Rico are left due to the stay order.

See Case No. 17-cv-1419 (WGY) at DE15, p.4. In Judge Young's words, the stay leaves lawyers

to stop trying IDEA cases and, "[a]s competent legal representation dries up, parents in Puerto

Rico in need of the protections of IDEA will find themselves bereft of the advantages enjoyed by

their fellow citizens throughout the states of the United States." Id. Consequently, Movants and

every other of the 137,000 plus individuals with disabilities currently registered in the PR-DOE's

Special Education Program "will no longer share equally in the protection of the laws." Id.

Considering the precarious situation of the public educational system in Puerto Rico, and

the fact that AMB is only 12 years old, Movants chances of having to reengage counsel to litigate

their child's right to a FAPE are very high. Without relief from the stay, Movants and every other

IDEA eligible child with disabilities in Puerto Rico will be left devoid of legal representation for

as long as the stay is maintained, and maybe longer if the small number of attorney's practicing

special education law leaves the Island or quits the practice area.

The only controversy among the parties revolves around the reasonableness of Movants'

counsel time entries, which is a controversy that is customarily resolved by the District Court based

on the parties' respective memoranda without the need of trial. Cases for recovery of attorney's

fees usually take less than six months from start to finish. In Movants' case, the District Court has

already found them to be the prevailing party and therefore the only controversy that pends

adjudication is what specific amount of attorney's fees will be deemed reasonable in light of the

work performed in the administrative and judicial actions. See Case No. 17-cv-1419 (WGY) at

DE15, Memorandum and Order, p.2 (recognizing that "[t]he plaintiffs here are such successful

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

claimants."). If relief from the stay is granted, all that is left is for Debtors to submit their

memorandum of law identifying those time entries that they deem excessive, duplicative, clerical

in nature or otherwise unnecessary, to which Movants would reply with a supplemental fees

request followed by the opportunity for a sur-reply, and the case would then be deemed submitted

for final adjudication on the merits without the need of bench trial. For evidence on the usual

procedural history of attorney's fees cases under the IDEA, Movants respectfully refer this

Honorable Court to review the dockets of the cases identified in the discussion of <u>Sonnax</u> factor

1. The simple and expeditious nature of Movants case for recovery of attorney's fees under IDEA's

section 1415(i)(3)(B) is overshadowed by the highly complex and necessarily prolonged duration

of Debtors' Title III bankruptcy case. Consequently, <u>Sonnax</u> factors 10 and 11 strongly favor relief

from the automatic stay.

     <u>Sonnax factor 12</u>: The impact of the stay on the parties and the balance of harms is one of

the most important factors in favor of relief from the automatic stay. First and foremost, it shall be

noted that, as long as the stay is maintained, <u>Movants have no other forum</u> to vindicate their

"procedural safeguard" as prevailing party to obtain reimbursement of the attorney's fees and

taxable costs spent in the administrative and judicial litigations against Debtors. The somber tone

of Judge Young's writing in the July 13, 2017 Memorandum and Order corroborates the magnitude

of the detrimental consequences that the stay inflicts on one of the historically most vulnerable

groups in society: children with disabilities and their parents (especially those from low income

families such as Movants and most of the other individuals currently registered in the PR-DOE's

Special Education Program). <u>See</u> Case No. 17-cv-1419 (WGY) at DE15.

     As recognized by the U.S Supreme Court in <u>Schaffer</u>, 546 U.S. at 61, IDEA's section

1415(i)(3) fee shifting provision is a federally protected procedural right of vital importance to

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

children with disabilities not only in Puerto Rico, but in every IDEA-funded state or territory of

the United States of America. The dismal state of the educational and related services that Debtors

provide to children with disabilities in Puerto Rico has been thoroughly documented in both federal

and state courts. See, e.g., Colón-Vázquez v. PR-DOE, 46 F. Supp. 3d 132 (D.P.R. 2014)(stating

that "it is no secret that the quality level of education in public schools in Puerto Rico is poor,

broken, embarrassing, negligent, disgraceful, pitiful and dishonorable," and asking itself "[h]ow is

it possible that the unacceptable problems of special public education have not been able to see

closure after thirty-four years of state court litigation governed by a judgment entered on February

14, 2002, in the case of *Rosa Lydia Vélez et al. v. Department of Education*, Superior Court, San

Juan, Case # KPE1980-1738 (804)."). Because of the desperate state of public special education

in Puerto Rico is that Debtors have repeatedly acknowledged in the District Court to purportedly

have "hundreds of other cases where collection of monies are made… under IDEA." See, e.g.,

Vázquez-Carmona v. PR-DOE, Case No. 16-cv-1846 (GAG) at DE77, p3, ¶9 (Debtors unverified

allegation of the hundreds of cases for recovery of attorney's fees under IDEA currently pending).

Sadly, litigation is the only recourse that low income families with special needs children have in

Puerto Rico to compel Debtors' compliance with their duty to make a FAPE available to their

offspring.

Allowing Debtors to use PROMESA to continue to benefit from IDEA federal funding

without having to provide children with disabilities in Puerto Rico the procedural safeguard to

attorney's fees would curtail IDEA's plain text provision of assuring that "[c]hildren with

disabilities and their parents are afforded the procedural safeguards required by section 1415 of

this title." 20 U.S.C. §1412(a)(6)(A). As Debtors are well aware, to hold PROMESA applicable to

this case and/or to deny relief from the stay would relieve them from the consequences of their

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

well-known historic failure to provide a free appropriate public education to children with

disabilities in Puerto Rico during the prolonged duration of the bankruptcy proceedings. To add

insult to injury, Debtors would continue to reap federal funding under the IDEA throughout the

duration of the bankruptcy proceedings while they effectively negate children and their parents'

procedural rights to recover attorney's fees if they manage to prevail in an administrative due

process case for the denial of the child's right to a FAPE against its educational agency. See, e.g.,

Winkleman, 127 S. Ct. at 2005 (noting "[t]he potential for injustice" if IDEA was interpreted to

provide differing rights to parents and their children). To avoid this potential injustice and

deprivation of the constitutional right to "share equally in the protection of the laws" against the

vulnerable party (Movants), and every other of the more than 137,000 individuals with disabilities

in Puerto Rico currently registered in Debtors' Special Education Program, it is respectfully

requested that this Honorable Court lifts the automatic stay and thereby disallows Debtors unlawful

use of PROMESA to the detriment Puerto Rican children with disabilities. See Case No. 17-cv-

1419 (WGY) at DE15, p.4.

  If Debtors wish to avoid liability under IDEA's section 1415, they should either assure to

provide a free appropriate public education to every child currently registered in the PR-DOE's

Special Education Program or abstain from accepting federal funding under the IDEA. Debtors

can also request the Fiscal Oversight Board make "recommendations to the President and Congress

on changes to [PROMESA] or other federal laws" such as IDEA. 48 U.S.C. §2148(a)(3). Until the

Oversight Board obtains approval from the President and Congress to amend the IDEA to hold the

Commonwealth exempt from compliance with section 1415(i)(3)'s procedural safeguard, Debtors

must continue to abide strictly and in a timely manner with the procedural safeguard set forth in

IDEA's section 1415(i)(3)(B).

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

What they should not be allowed to do is to continue to receive federal funding—as the

data available in the PR-DOE website evinces that they plan to do at least until 2018[2]—and pretend

to misuse PROMESA to avoid the provision of the section 1415 procedural safeguards to children

with disabilities and their parents in Puerto Rico. Without being able to exercise their right as a

prevailing party to obtain recovery of "reasonable attorney's fees" under IDEA's section

1415(i)(3)(B)(i)(I), parents and their special needs children would be powerless against the PR-

DOE because they would not be able to engage counsel to vindicate their rights under the IDEA

in the PR-DOE's highly contentious administrative due process forum or later in federal or state

courts on judicial review, mandamus or injunction.

Parents who need to recur to the painstaking process of obtaining educational and/or related

services from the PR-DOE for their special needs children do not have the means to engage counsel

for this type of litigation. To make matters worse, the gratuitous legal services for low income

persons in Puerto Rico are scarce, if not non-existent, due in part to the 10-year economic recession

of the Island. See, e.g., Article titled in Poor people's access to justice threatened (our translation

for the Spanish title "Amenazado el acceso a la justicia de los pobres") published on June 15, 2017

on Noticel local news site available at http://www.noticel.com/noticia/204301/amenazado-el-

acceso-a-la-justicia-de-los-pobres.html. Absent readily available free of charge legal services,

indigent and low-income families in Puerto Rico (the main consumers of the PR-DOE's special

education services) would be left devoid of any medium to challenge the PR-DOE's denial of their

right to a free appropriate public education under the IDEA. See 20 U.S.C. §1412(a)(1)(A) (FAPE

requirement for states receiving IDEA funding). To deny relief from the automatic stay would

---

[2] See pages 9-10 of the financial public domain report available in the PR-DOE's webpage which is accessible thru
this direct hyperlink: http://www2.pr.gov/presupuestos/PresupuestoRecomendado2017-2018/PresupuestosAgencias
/Departamento%20de%20Educacion.pdf

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

allow this calamitous scenario to happen to Movants and children with disabilities in general in Puerto Rico. See also Case No. 17-cv-1419 (WGY) at DE15, p.4 (recognizing the stay's calamitous result of depriving special needs' children of their right to obtain competent legal representation).

Upon considering the impact of the stay on the parties and the balance of harms, this Court should note that Debtors exasperated efforts to take advantage of PROMESA's Title III automatic stay to curtail Movants' procedural safeguard under IDEA's section 1415(i)(3)(B) is an intentional and fully knowledgeable violation of PROMESA's sections 7 and 304(h), and of Congress' power under the U.S. Constitution's Spending Clause. Such actions also controvert the duties that were bestowed upon Debtors by the Puerto Rico Legislature in Act 51 of June 7, 1996, known as the Law of Integral Educational Services for Individuals with Disabilities, 18 Laws of P.R. Ann. §§ 1351-1359, and in Act 238 of August 31, 2004, known as the "Bill of Rights of Individuals with Disabilities," 1 Laws of P.R. Ann. §512. Debtors repeated efforts to obtain the stay of Movants' case, and any future efforts to oppose this urgent motion, are brought with utmost disregard to their statutory duties under Act 51 of 1996 for "**assuring that the federal and state funds designated for the provision of educational and related services to individuals with disabilities are utilized in the most effective manner and in compliance with the applicable laws and regulations**," 18 Laws of P.R. Ann. §1355(13)(our emphasis and translation), and under Act 238 of 2006 for undertaking "any task necessary to achieve compliance with public policy and with the rights… provided in the special laws [such as IDEA] promulgated in benefit of individuals with disabilities," 1 Laws of P.R. Ann. 512b(p) (our translation). See also 18 Laws of P.R. Ann. §§1355(15)(requiring that the PR-DOE guarantee the substantive and procedural due process of individuals with disabilities), 1355(18)(mandate to the PR-DOE to "respond to any legal forum

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

for the compliance of this law.")(our translation); 1 Laws of P.R. Ann. §512k (mandate to the

Commonwealth and its agencies such as the PR-DOE and PR-DOJ to "<u>interpret liberally every</u>

<u>statute, regulation or ordinance related to individuals with disabilities… with the social purpose of</u>

<u>protecting, defending and vindicating the rights of individuals with disabilities</u>.")(our emphasis

and translation). Hence, by moving the District Court to apply the stay to avoid their duty to pay

the attorney's fees spent by Movants in effectively litigating a due process case for a denial of the

special needs-child's right to a FAPE, and for any effort to oppose this urgent motion and maintain

the stay, Debtors have and continue to violate their statutory duties under sections 1412(a)(6) and

1415(i)(3) of the IDEA federal law, Congress' power under the Spending Clause, and local laws

51 of 1996 and 238 of 2004. Based on the grossly uneven harm that will continue to be caused to

Movants if the automatic stay is maintained, whilst allowing Debtors the unlawful and deeply

unjust advantage of continuing to receive IDEA federal funding without complying with their duty

to provide children with disabilities the procedural safeguard to recover attorney's fees as

expressly provided in IDEA's section 1415(i)(3), <u>Sonnax</u> factor 12 weighs heavily in favor of this

Honorable Court's lifting of the automatic stay.

**C. If PROMESA is held applicable to Movants' case, relief from the automatic stay should be provided under the "government regulatory exemption" of section 362(b)(4) of the Bankruptcy Code.**

Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. §362(b)(4), also known as the

"government regulatory exemption," allows relief from the automatic stay for "an action or

proceeding by a governmental unit… to enforce such governmental unit's… police and regulatory

power." <u>See</u>, <u>e.g.</u>, <u>Parkview Adventist Medical Cntr v. USA</u>, No. 16-1731 (1st Cir. November 29,

2016)(slip op. at 11-17)(discussing the police and regulatory power exception to the Bankruptcy

Code's automatic stay). Movants are clearly not a "governmental unit" qualified to seek exemption

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

under section 362(b)(4), but the District Court certainly is.

A historical context of IDEA's fee-shifting provision demonstrates the District Court's qualification as the governmental unit of section 362(b)(4). The jurisprudence has recognized that only the Congress can use the "private attorney general" exception to the American rule that each party bears its own costs of a litigation. Only Congress can determine as a matter of public policy when and what party is going to be afforded the right to recover attorneys' fees. Attorneys' fees under the IDEA and the Civil Rights Act are the result of the Congress' reaction to two cases from the U.S. Supreme Court. In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), the Court rejected the "private attorney general" exception that had been jurisprudentially created by various appeals courts to the general rule that each party bears its own costs of a litigation. The Alyeska Court rejected the lower courts decision of when to apply "private attorney general" exception holding that "congressional utilization of the private attorney general concept can in no sense be construed as a grant of authority to the Judiciary to jettison the traditional rule against non-statutory allowances to the prevailing party and to award attorneys' fees whenever the court deems the public policy furthered by a particular statute important enough to warrant the award." Id. at 263. The Court further noted that it is only Congress who "presumably has the power and judgment to pick and choose among its statutes, and to allow attorneys' fees under some, but not others." Id.

Following the Alyeska decision, Congress promulgated the Civil Rights Act of 1976, 42 U.S.C. §1988(b). Later, in Smith v. Robinson, 468 U.S. 992 (1984), the Supreme Court denied the claim for attorneys' fees to the prevailing parents of a child with disabilities finding that the Education of the Handicapped Act did not provided for such remedy. As an immediate reaction, Congress enacted the attorney's fees provision available in IDEA's section 1415(i)(3). See Henry Cohen, *Award of Attorneys' Fees by Federal Courts and Federal Agencies*, CRS Report for

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

Congress, CRS Report No. 94-970 (June 20, 2008). Citing Mr. Cohen's report, Congress Research

Service recognized that "[s]tatutes that allow for award of attorneys' fees often do so with an eye

towards equalizing two unevenly matched parties, and often apply to environmental and consumer

protection litigation. This has the effect of implementing public policy through private litigation."

See *The Judgment Fund: History, Administration, and Common Usage*, CRS Report No. R42835

(March 17, 2013). The exceptions to the general or American rule regarding liability for payment

of attorney's fees are generally enacted to encourage private litigation to implement public policy,

such as the IDEA. This is Congress' mechanism for advancing and promoting compliance with

the procedures set-forth in laws such as the IDEA thru empowerment of the most vulnerable party.

The "private attorney general" exception can only be used by Congress when, as in the

IDEA, it allows attorneys' fees to the prevailing party as an eligibility condition to federal funding.

Once Congress recognized the importance of the public policy being advanced by conceding the

attorneys' fees, and expressly imposed on the judicial branch the duty to award reasonable

attorney's fees to the prevailing party, courts became the government unit in charge of

implementing public policy such as IDEA's procedural safeguard granting attorney's fees to

Movants as prevailing party for Debtors' denial of AMB's right to a FAPE.

The governmental unit in Movants case is the U.S. District Court for the District of Puerto

Rico. The Ninth Circuit Court of Appeals recently held that a court can be deemed to be a

"governmental unit" exempt from the Bankruptcy Code's automatic stay under the police and

regulatory power exception of section 362(b)(4) for holding civil contempt proceedings due to

litigation misconduct against a party in bankruptcy. See In re Mark Dingley, No. 14-60055 (9th

Cir. April 3, 2017)(slip op. at 6-11). The Ninth Circuit also held that a court's power to grant

attorney's fees against a party in bankruptcy as a sanction for frivolous conduct in litigation is a

matter of public policy suitable to the "police and regulatory power" exemption of section

33

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

362(b)(4) and therefore exempted from the Bankruptcy Code's automatic stay. See In re Jerome Berg, 230 F.3d 1165, 1167-68 (9th Cir. 2000).

The District Court was expressly provided by Congress with jurisdiction to "award reasonable attorneys' fees as part of the costs… to a prevailing party who is the parent of a child with a disability" under section 1415(i)(3)(B). Other than the District Court (or local court), no other "governmental unit" was afforded by Congress with jurisdiction and authority to grant attorney's fees to the prevailing party pursuant to IDEA's section 1415(i)(3)(B) fee-shifting provision. See Declet-Ríos v. PR-DOE, 177 D.P.R. 765, 772 (2009)(P.R. Supreme Court ruling that this District Court and local state courts are the only forums capable of awarding attorney's fees to a prevailing party under the IDEA). As the sole "governmental unit" in charge of such task, the District Court should be deemed the "governmental unit" in charge of enforcing its "police and regulatory power" to determine the amount of attorney's fees deemed reasonable to award Movants as prevailing parties under the IDEA.

Once clarified that the District Court can and should be held to constitute the "governmental unit" under IDEA's fee-shifting provision, the next step is to determine whether the action of awarding reasonable attorney's fees under IDEA's section 1415(i)(3)(B) meets either the pecuniary purpose or the public policy tests. The District Court's role pursuant to the IDEA meets both tests. The pecuniary purpose test is met as a result of the First Circuit's holding that attorney's fees are non-pecuniary in nature. See Nieves-Márquez, 353 F.3d at 125 (recognizing that even those "[a]wards of compensatory education and equitable remedies that involve the payment of money" do "not constitute damages.")(citing Burlington, 471 U.S. at 370-71). Hence, attorney's fees under the IDEA are non-pecuniary in nature.

The public policy test is met because awarding reasonable attorney's fees to Movants as

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

prevailing parties under IDEA's section 1415(i)(3)(B) is a task motivated by profound public

policy interest as expressly recognized by Congress and the U.S. Supreme Court. See, e.g.,

Schaffer, 546 U.S. at 61 (stressing that "IDEA, in fact, requires state authorities to organize

hearings in a way that guarantees parents and children the procedural protections of the Act… and

**perhaps most importantly, parents may recover attorney's fees if the prevail**.") (our

emphasis). As noted by the Court, "[t]hese protections ensure that the school bears no unique

informational advantage" over the child and his or her parents. Id. Movants' federally-protected

right to recover reasonable attorney's fees is a matter of national interest as evinced by section

1400(c)(6) of the IDEA where Congress expressed that "it is in the national interest that the Federal

Government have a supporting role in assisting State and local efforts to educate children with

disabilities in order to improve results of such children **and to ensure equal protection of the**

**law**" and "**to ensure that the rights of children with disabilities and parents of such children**

**are protected**." See 20 U.S.C. §§1400(c)(6), (d)(1)(B) (our emphasis).

The fact that this case is one of policing over a matter of public policy is even stronger in

Puerto Rico since the right to an education in Puerto Rico stems from the Commonwealth's

Constitution. See Article II, Section 5 of the Constitution of the Commonwealth of Puerto Rico.

The right to a FAPE by special needs children and the strong public policy in its favor was

expressly recognized by the Puerto Rico Legislature on June 7, 1996 via Law number 51, known

as the Law of Integral Educational Services for Individuals with Disabilities, 18 Laws of P.R. Ann.

§§ 1351-1359. See also 1 Laws of P.R. Ann. §512b(p) (Bill of Rights of Individuals with

Disabilities provision establishing the Commonwealth's duty to perform "any task necessary to

achieve compliance with public policy and with the rights… provided in the special laws [such as

IDEA] promulgated in benefit of individuals with disabilities.") (our translation). Regarding the

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

necessary element of satisfying the "public policy test" in the captioned case, it should be noted that the IDEA expressly states that as a matter of "national interest" the Act is intended to ensure that all children with disabilities have available to them a FAPE and that they and their parents have their rights "protected." See 20 U.S.C. §§1400(c)(5-8), (d)(1)(A-B). Hence, the government action here meets the public policy test needed to exempt Movants case from reach of the automatic stay.

Pursuant to the precedents set in the aforecited Ninth Circuit decisions in Dingley and Berg, this Court should hold Movants' case exempted from the automatic stay under the 362(b)(4) governmental regulatory exemption because under IDEA's section 1415(i)(3) the District and state courts are the exclusive governmental units in charge of the non-pecuniary and public policy interest goal of granting reasonable attorney's fees to a prevailing party in an IDEA administrative and/or judicial proceeding. To hold otherwise would leave Movants devoid of any "governmental unit" suited by law to uphold the procedural safeguards expressly afforded to them by the fee-shifting provision in the federal statute, with whom Debtors agreed to abide by accepting and receiving federal funding under the IDEA.

### III.   Conclusion

For the foregoing legal arguments, Movants respectfully request that this Honorable Court grants this urgent motion and holds their civil action for recovery of attorney's fees under IDEA's section 1415(i)(3)(B) exempt from PROMESA's Title III automatic stay pursuant to sections 4, 7, 301(c)(3), 304(h) and Congress' broad powers under the Spending Clause or, in the event that PROMESA's stay is held applicable, that the automatic stay be lifted for cause under section 362(d)(1) of the Bankruptcy Code, or that the automatic stay be held inapplicable because of the "government regulatory exemption" provided in section 362(b)(4) of the Bankruptcy Code.

Urgent Motion for Relief from the Automatic Stay
Case No. 17-BK-3283 (LTS)

**WHEREFORE**, Movants respectfully request that this Honorable Court grants this urgent

motion and holds their civil action for recovery of attorney's fees under IDEA's section

1415(i)(3)(B) exempt from PROMESA's Title III automatic stay pursuant to sections 4, 7,

301(c)(3), 304(h) and Congress' broad powers under the Spending Clause or, in the event that

PROMESA's stay is held applicable, that the automatic stay be lifted for cause under section

362(d)(1) of the Bankruptcy Code, or that the automatic stay be held inapplicable because of the

"government regulatory exemption" provided in section 362(b)(4) of the Bankruptcy Code, and

issues any other relief deemed proper.

**RESPECTFULLY SUBMITTED.**

**CERTIFICATE OF SERVICE:**  I hereby certify that on this same date I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to counsel for all parties of record.

In San Juan, Puerto Rico, 25th day of July, 2017.

*S/Francisco J. Vizcarrondo-Torres*
FRANCISCO J. VIZCARRONDO-TORRES
USDC-PR No. 221714
P.O. Box 195642
San Juan, P.R. 00919-5642
Tels No. (787) 296-9521/9523
Fax No.  (787) 777-1399
fvizcarrondo@fjvtlaw.com

*Attorney for Movants*