# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

VOYA INSTITUTIONAL TRUST COMPANY,

as Trustee for the University of Puerto Rico Deferred Compensation Plan,

                Plaintiff,

    v.

UNIVERSITY OF PUERTO RICO; CELESTE FREYTES, in her official capacity as President thereof; and ALEJANDRO J. GARCÍA PADILLA, in his official capacity as Governor of Puerto Rico,

                Defendants.

**Civil No. 16-cv-_____**

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Voya Institutional Trust Company ("VITC" or "Trustee"), through its undersigned counsel, by way of its complaint against defendants respectfully alleges and prays:

## INTRODUCTION

1. Plaintiff VITC acts as trustee for the University of Puerto Rico ("UPR") deferred compensation plan ("Plan").[1] VITC brings this action in its capacity as trustee of the trusts established to hold Plan assets ("Trusts").

---

[1] The Plan is not one of Puerto Rico's public employee retirement plans. Instead, it is a voluntary deferred compensation plan under which eligible UPR personnel may participate, separate and distinct from government retirement plans. The Plan is not governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*

2. Trustee seeks relief from this Court relating to its administration of the Trusts in light of the financial crisis in Puerto Rico and its effect on the UPR, an instrumentality of the Commonwealth.

3. The assets of the Plan are the property of the UPR and subject to the terms of the Plan and agreements governing the Trusts ("Trust Agreements"). The Trust Agreements provide that, under ordinary circumstances, Trustee must distribute Plan assets to participants as directed by the UPR. In the case of the UPR's insolvency, however, the Trust Agreements require Trustee to preserve Plan assets for the benefit of the UPR's general creditors (including Plan participants).

4. Puerto Rico's financial crisis has prompted federal legislation limiting rights to exercise control over property of the Commonwealth and its instrumentalities. A new federal law, the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), P.L. 114-187 (2016), stays creditor claims against the Commonwealth and its instrumentalities, bars transfers of government property, and broadly prevents acts to obtain possession or exercise control over such property pending review of the Commonwealth's financial condition by a federal oversight board.

5. Against this legal backdrop, the UPR is seeking to terminate the Plan and distribute all Plan assets to participants.

6. Since April 2016, the UPR has directed Trustee to make approximately $33 million in "emergency" distributions to Plan participants. In light of the significant public information regarding the UPR's insolvency, Trustee did not process these requests and further inquired into the UPR's financial condition.

7. In response to Trustee's suspension of emergency withdrawals and its requests for financial information, the UPR notified Trustee that it intends to remove Trustee and transfer all Plan assets to a successor trustee. On August 19, 2016, the UPR formally notified VITC that it had appointed certain University officials as VITC's successor trustees and designated a new record keeper, to which it requested that VITC transfer all Plan assets. The UPR also forwarded a board resolution, dated June 30, 2016, authorizing the UPR to "dissolve" the Plan and distribute all Plan assets to participants.

8. The UPR's request that VITC transfer all Plan assets to a new trustee so that the UPR can dissolve the Plan and distribute its assets to participants places Trustee in an untenable position. On the one hand, the Trust Agreements provide the UPR the right to remove VITC as Trustee. On the other hand, compliance with the request could subject VITC to potential liability for violation of PROMESA's stay and restrictions on transfers of Commonwealth property. And if the UPR is insolvent, VITC's failure to take action to preserve the assets for creditors of the UPR could subject it to potential liability to those creditors under the Trust Agreements.

9. For these reasons, Trustee files this Complaint for declaratory relief, seeking federal judicial review—as expressly provided for by PROMESA—of the issues arising under PROMESA, the Trust Agreements, and other relevant law, in light of the UPR's financial condition and its efforts to distribute all Plan assets.

## PARTIES

10. VITC is a state-chartered limited purpose trust company under the laws of the State of Connecticut. It is the successor in interest to ING National Trust, the trustee entity that entered into the Trust Agreements with the Plan.

11. The UPR is an instrumentality of the Commonwealth of Puerto Rico.

12. Defendant Celeste Freytes is the President of the University of Puerto Rico. Plaintiff brings this action against President Freytes in her official capacity only.

13. Defendant Alejandro J. García Padilla is the Governor of the Commonwealth of Puerto Rico. Plaintiff brings this action against Governor García Padilla in his official capacity only.

## JURISDICTION AND VENUE

14. Jurisdiction and venue are proper in this Court under Sections 106(a) and 405(e) of PROMESA, which provide that the United States District Court for the District of Puerto Rico shall have original and exclusive jurisdiction over actions arising under PROMESA that involve Puerto Rico, and over actions seeking relief from the PROMESA stay, respectively.

15. This Court has supplemental jurisdiction over any claims that are so related to claims under federal law that they form part of the same case or controversy. 28 U.S.C. § 1367(a); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

## FACTUAL BACKGROUND

### A. THE PLAN AND THE TRUST AGREEMENTS

16. The UPR adopted the Plan, a "nonqualified" deferred compensation plan, in 1985. In general, a nonqualified deferred compensation plan is a vehicle for employees of the plan sponsor to defer income and set aside funds for investment on a pretax basis. Participants do not have a vested right in such amounts until they are withdrawn in accordance with the Plan. Under the Plan, the UPR places monies in trust to be paid to Plan participants or their beneficiaries according to payment schedules determined by the UPR. A true and correct copy of the Plan is attached as Exhibit A.

17. VITC acts as Trustee for the Plan under the Trust Agreements, executed in September 2013, pursuant to which the UPR established the Trusts to hold Plan assets. True and correct copies of the Trust Agreements are attached as <u>Exhibits B and C</u>.

18. Under the Trust Agreements, the UPR is the "Employer" and grantor of the Trusts. Section 1(d) of the Trust Agreements provides:

> (d) The principal of the Trust, and any earnings thereon shall be held separate and apart from other funds of Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth. Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan(s) and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a) herein.

19. Section 2 of the Trust Agreements governs how payments are to be made to Plan participants and their beneficiaries. It provides that such payments shall be made in accordance with a payment schedule set by the UPR. Section 2 states in relevant part:

> (a) Employer shall deliver to Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Plan participant (and his or her beneficiaries), that provides a formula or other instructions acceptable to Trustee for determining the amounts so payable, the form in which such amount is to be paid (as provided for or available under the Plan(s)), and the time of commencement for payment of such amounts. Except as otherwise provided herein, Trustee shall make payments to the Plan participants and their beneficiaries in accordance with such Payment Schedule. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan(s) and shall pay amounts withheld to the appropriate taxing authorities or determine that such amounts have been reported, withheld and paid by Employer.

20. The authority of the Trustee to make payments to Plan participants or their beneficiaries from the Trusts is revoked if the UPR is "insolvent." Section 3 of the Trust Agreements (Exhibits B and C) provides:

5

(a) Trustee shall cease payment of benefits to Plan participants and their beneficiaries if the Employer is Insolvent. Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) Employer is unable to pay its debts as they become due, or (ii) Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

(b) At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of Employer under federal and state law as set forth below.

1. The Board of Directors and the Chief Executive Officer of Employer shall have the duty to inform Trustee in writing of Employer's Insolvency. If a person claiming to be a creditor of Employer alleges in writing to Trustee that Employer has become Insolvent, Trustee shall determine whether Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

2. Unless Trustee has actual knowledge of Employer's Insolvency, or has received notice from Employer or a person claiming to be a creditor alleging that Employer is Insolvent, Trustee shall have no duty to inquire whether Employer is Insolvent. Trustee may in all events rely on such evidence concerning Employer's solvency as may be furnished to Trustee and that provides Trustee with a reasonable basis for making a determination concerning Employer's solvency.

3. If at any time Trustee has determined that Employer is Insolvent, Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of Employer with respect to benefits due under the Plan(s) or otherwise.

4. Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after Trustee has determined that Employer is not Insolvent (or is no longer Insolvent).

21. Section 10(b) of the Trust Agreements provides that Trustee may be removed by the UPR upon 60 days' notice or such shorter notice accepted by the Trustee. Section 10(d)

6

further provides that if no successor trustee is appointed, the Trustee may apply to a court of competent jurisdiction for appointment of a successor trustee or for instruction.

### B. PUERTO RICO'S FINANCIAL CRISIS AND ITS EFFECT ON THE UPR

22. As this Court is aware, the Commonwealth is in the midst of a historic debt crisis. On July 1, 2016, the Commonwealth defaulted on $779 million of its general obligation bonds, which are backed by the full faith and credit of the Commonwealth under the Puerto Rico constitution.

23. More than 70% of the UPR's operating and non-operating revenue consists of Commonwealth and federal appropriations, grants, and contracts. On April 29, 2016, the UPR filed financial information before the Municipal Securities Rulemaking Board (MSRB) for the fiscal period covering 2014-2015, which reported operating revenues (derived from tuition, contracts, and sales) of just over $260 million. Operating expenses, however, exceeded $1.2 billion. To make up the difference, the UPR relies on appropriations from the Commonwealth. The UPR indicated in its MSRB filing that "[t]he severity of [the] risks and uncertainties facing the University together with other factors, have led the University's management to conclude that there is substantial doubt as to the ability of the University to continue as a going concern." A true and correct copy of the UPR's MSRB filing is attached as Exhibit D, p. 38.

24. The Commonwealth's Audited Financial Statements, issued on June 30, 2016, confirm the UPR's financial condition, stating in relevant part:

> The UPR has had significant recurring operating losses and has historically relied on GDB for liquidity and financial management support. Also, approximately 70% of the operating and non-operating revenues of the UPR consist of Commonwealth appropriations, grants, and contracts. The UPR's ability to continue receiving similar operational support and financing from the Commonwealth and GDB is uncertain.

7

25. The UPR is currently facing litigation from its bondholders. On August 19, 2016, the successor trustee for certain UPR revenue bonds filed a complaint before this Court requesting declaratory and injunctive relief and lift of the PROMESA stay to prevent the alleged diversion of approximately $89 million in pledged UPR tuition and fees that constitute collateral for such UPR bonds. *U.S. Bank Trust Nat'l Assn. v. Commonwealth of Puerto Rico*, No. 16-cv-2510 (D.P.R. filed Aug. 19, 2016).

### C. THE UPR'S DEMANDS FOR "EMERGENCY" DISTRIBUTIONS FROM THE PLAN, AND TRUSTEE'S SUSPENSION OF SUCH PAYMENTS

26. Since April 2016, the UPR has directed Trustee to pay a large number of participants pursuant to early withdrawal provisions of the Plan.

27. Under the terms of the Plan, participants may apply for early payment of deferred compensation only in the case of an "unforeseeable emergency." The Plan defines "unforeseeable emergency" as:

> a severe financial hardship to the Participant resulting from a sudden and unexpected illness or accident of the Participant or of a dependent (as defined in the Code) of the Participant, loss of the Participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participants.

Plan (Exhibit A), Art. 7.02. The Plan further provides that "[w]ithdrawals for foreseeable expenditures normally budgetable, such as a down payment on a home or purchase of an auto or college expenses, will not be permitted." Id.

28. The number of emergency withdrawal requests received in May 2016 far exceeded historical numbers of requests for emergency withdrawals from the Plan.

29. On the basis of publicly available information suggesting the Commonwealth's insolvency, Trustee has suspended payments to Plan participants who requested early withdrawals. To date, Trustee has suspended payment of approximately 140 such requests,

8

corresponding to Plan assets of approximately $33 million. Trustee continues to make non-emergency periodic payments to retirees under the Plan.

### D. THE UPR'S NOTICE OF REMOVAL OF VOYA AS TRUSTEE, RESOLUTION TO DISSOLVE THE PLAN AND DISTRIBUTE ALL TRUST ASSETS TO PARTICIPANTS, AND APPOINTMENT OF UPR OFFICIALS AS SUCCESSOR TRUSTEES

30. Upon Trustee's suspension of emergency withdrawal payments, the UPR notified VITC that the UPR would remove VITC as Trustee. On May 27, 2016, the UPR sent a letter to Molly Garrett, Vice President of Voya Retirement Insurance and Annuity Company, purporting to remove VITC as Trustee under the Trust Agreements. However, that letter was not signed by an "Authorized Party" under the Trust Agreements.

31. The UPR sent a second letter to Ms. Garrett, dated May 31, 2016, signed by an authorized party ("Removal Notice"). The Trustee received the Removal Notice on June 7, 2016. A true and correct copy of the Removal Notice is attached as Exhibit E.

32. The Removal Notice states in part:

[T]he University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the Trust effective May 31, 2016. If the effective date of May 31, 2016 is not acceptable to Voya Institutional Trust Company, then the University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the University of Puerto Rico Deferred Compensation Plan effective July 26, 2016.

The University of Puerto Rico will communicate the name and address of the Successor Trustee before the effective date of the removal with instructions for immediate transfer of all assets held in trust to the Successor Trustee.

33. By letter dated August 2, 2016, the UPR advised Plan participants that it had approved the "dissolution" of the Plan and terminated VITC in light of its refusal to distribute Plan assets to participants. The UPR further advised Plan participants that members of the UPR's board of trustees had agreed to assume the position of "trustee" as VITC's successor, and

9

that upon transfer of the Plan assets to the new "trustee," distributions would be made to participants in connection with the termination of the Plan. A true and correct copy of the August 2, 2016 letter and a certified translation thereof are attached as <u>Exhibit F</u>.

34. On August 19, 2016, the UPR provided VITC with copies of UPR Board of Trustees Certification No. 138 (2015-2016) ("UPR Board Certification") and a letter appointing a new record keeper ("Record Keeper Appointment Letter"). These documents provide formal notice to VITC that the members of the UPR board of trustees have appointed themselves as successor trustees in VITC's stead, that the local firm of "Pension Administrators Group, Inc." has been appointed as the new Plan record keeper, that the UPR board has ratified Voya's termination and dissolution of the Plan, and that UPR now requests that the process of transfer of Plan assets commence, so as to proceed to distribution and dissolution of the Plan. Copies of the UPR Board Certification and a translation thereof simultaneously forwarded to VITC by the UPR's counsel are attached as <u>Exhibits G and H</u>. A copy of the Record Keeper Appointment Letter is attached as <u>Exhibit I</u>.

### E. PROMESA AND THE MORATORIUM ACT

35. PROMESA is a comprehensive federal response to the Commonwealth's insolvency crisis. Section 4 of PROMESA provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."

36. Section 101(a) of PROMESA provides for the establishment of an Oversight Board to "provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." Under Section 101(d) of PROMESA, the Oversight Board may designate any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of PROMESA.

37. Section 405 of PROMESA contains a broadly worded automatic stay provision. It provides that "the establishment of an Oversight Board for Puerto Rico (i.e., the enactment of this Act) in accordance with section 101 operates with respect to a Liability as a stay" of certain actions, including, as relevant here, any act to "exercise control over property of the Government of Puerto Rico."

38. Section 405(a)(1) of PROMESA defines "Liability" as:

> a bond, loan, letter of credit, other borrowing title, obligation of insurance or other financial indebtedness for borrowed money, including rights, entitlements, or obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law related to such a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness in physical or dematerialized form, of which—(A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and (B) the date of issuance or incurrence precedes the date of enactment of this Act.

39. Section 405(j) of PROMESA contains an express bar on the exercise, during the stay period, of contractual remedies triggered by a covered entity's insolvency. It provides:

> (1) Notwithstanding any contractual provision or applicable law to the contrary and so long as a stay under this section is in effect, the holder of a Liability Claim or any other claim (as such term is defined in section 101 of title 11, United States Code) may not exercise or continue to exercise any remedy under a contract or applicable law in respect to the Government of Puerto Rico or any of its property
>
>> (A) that is conditioned upon the financial condition of, or the commencement of a restructuring, insolvency, bankruptcy, or other proceeding (or a similar or analogous process) by, the Government of Puerto Rico, including a default or an event of default thereunder.

40. Section 405(j)(1) of PROMESA defines "remedy" as any right to "exercise control over property of the Government of Puerto Rico." The term "Government of Puerto Rico" is defined in section 5(11) as "the Commonwealth of Puerto Rico including all its territorial instrumentalities," which includes the UPR. *Llewellyn-Waters v. University of*

11

*Puerto Rico*, 56 F. Supp. 2d 159, 162 (D.P.R. 1999) ("[T]he University of Puerto Rico is an agency or instrumentality of the Commonwealth of Puerto Rico.").

41. Section 407 of PROMESA imposes liability for the transfer of the property of a Commonwealth instrumentality during the stay period. It provides:

> (a) While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

42. On June 30, 2016, the day of PROMESA's enactment and of the release of the UPR's latest financial statements, the Governor of the Commonwealth issued Executive Order EO-2016-31 ("Executive Order"). The Executive Order places the UPR into a "state of emergency" and expressly subjects the UPR to the Puerto Rico Emergency Moratorium and Rehabilitation Act ("Moratorium Act").

43. Like PROMESA, the Moratorium Act contains a prohibition on the exercise of contractual remedies triggered by a Commonwealth entity's insolvency. Section 201 (b) of the Moratorium Act provides that during the emergency period:

> ii. no entity or person asserting claims or other rights (including a beneficial or assignable interest), no trustee, no collateral agent, no indenture trustee, no fiscal agent, no insurer, and no financial institution that receives or holds funds from such government entity may exercise any remedy, which remedy shall include any right of acceleration or termination, right of set-off, right of attachment or counterclaim related to any covered obligation of such government entity, under any contract or applicable law as a result of
>
> …

C. the accrual of any right that is conditioned upon the financial condition of, or the commencement of a restructuring, insolvency, bankruptcy, or other proceeding, or a moratorium by, such government entity, including a default or an event of default thereunder . . . .

## CLAIMS FOR RELIEF

## COUNT I
## RELIEF FROM STAY UNDER PROMESA § 405(e)

44. VITC realleges and incorporates by reference the allegations in paragraphs 1 through 43 as though set forth in full.

45. The Trust Agreements provide that, upon its removal by the UPR as Trustee and identification by the UPR of a successor, VITC shall transfer Plan assets to the successor trustee. PROMESA, however, may preclude or limit VITC's ability to comply with the UPR's request. This constitutes "cause" under PROMESA § 405(e)(2) to grant relief from the PROMESA stay to allow Trustee to bring this Complaint and to obtain any such further relief as may require relief from stay.

46. VITC thus requests relief from the PROMESA stay to the extent such relief is required to bring this Complaint and obtain such additional relief as warranted relating to Trustee's administration of the Trusts.

## COUNT II
## DECLARATION OF VALIDITY OF TRANSFER OF PLAN ASSETS UNDER PROMESA

47. VITC realleges and incorporates by reference the allegations in paragraphs 1 through 46 as though set forth in full.

48. As Trustee in possession of property of the UPR, VITC is required to administer the Trusts pursuant to the terms of the Trust Agreements and applicable law.

49. The Trust Agreements provide that, upon notice of removal and identification of a successor trustee, Trustee shall transfer Plan assets to the successor trustee.

50. The Plan assets are the property of the Government of Puerto Rico, as defined by PROMESA.

51. Section 405(a) of PROMESA imposes a stay of any act to "exercise control over property of the Government of Puerto Rico." Moreover, PROMESA Section 405(h) provides that any act in violation of the PROMESA stay is void.

52. Section 407 of PROMESA imposes liability upon a transferee for the value of any property of the Government of Puerto Rico transferred in violation of applicable law, including PROMESA and the Trust Agreements.

53. In the absence of authorization from this Court, Trustee's compliance with the UPR's request to transfer Plan assets to a successor trustee could be considered a voidable act and subject Trustee to liability for violations of PROMESA.

54. This Court has the authority to declare the legal rights and obligations of Trustee pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.

55. VITC therefore requests a declaration, upon determination by this Court of the validity of such transfer under PROMESA, that VITC may transfer Plan assets to a successor trustee pursuant to instructions from the UPR without incurring any liability to any party under PROMESA for such transfer.

### COUNT III
### DECLARATION OF VALIDITY OF TRANSFER OF PLAN ASSETS UNDER THE TRUST AGREEMENTS

56. VITC realleges and incorporates by reference the allegations in paragraphs 1 through 55 as though set forth in full.

57. VITC is bound by the Trust Agreements in its administration of the Trusts.

58. The Trust Agreements provide that, in the case of the UPR's insolvency, Trustee shall not make distributions of Plan assets to participants, but instead must preserve Plan assets for the benefit of all general creditors of the UPR.

59. VITC is on notice of public information indicating that the UPR may be insolvent.

60. VITC is also on notice that, upon transfer of Plan assets to a successor trustee, the UPR intends to distribute all Plan assets to participants and dissolve the Plan.

61. Under the circumstances, in the absence of authorization from this Court, compliance with the UPR's request to transfer Plan assets to a successor trustee subjects Trustee to potential liability to general creditors of the UPR under the Trust Agreements and applicable law.

62. This Court has the authority to declare the legal rights and obligations of Trustee pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.

63. VITC therefore requests a declaration, upon determination by this Court of the validity of such transfer under the Trust Agreements and applicable law, that VITC may transfer Plan assets to a successor trustee pursuant to instructions from the UPR, without incurring any liability to any party under the Trust Agreements or applicable law for such transfer.

64. VITC further requests a declaration that, prior to the institution of this action and during the pendency thereof, VITC's suspension of "unforseeable emergency" distributions of Plan assets to participants has been a lawful exercise of its equitable powers as Trustee, which did not constitute the exercise of a contractual remedy triggered by insolvency within the meaning of either Section 405(j) of PROMESA or Section 201(a) of the Moratorium Act, and does not give rise to liability to any party under applicable law.

**WHEREFORE**, Trustee respectfully prays for judgment:

(i) Affording VITC relief from stay pursuant to PROMESA § 405(e)(2) to the extent required to pursue this action and the requested relief;

(ii) Declaring that, upon determination by this Court of the validity of such transfer under PROMESA, VITC may transfer Plan assets to a successor trustee pursuant to instructions from the UPR, without incurring any liability to any party under PROMESA for such transfer;

(iii) Declaring that, upon determination by this Court of the validity of such transfer under the Trust Agreements and applicable law, VITC may transfer Plan assets to a successor trustee pursuant to instructions from the UPR, without incurring any liability to any party under the Trust Agreements or applicable law for such transfer;

(iv) Declaring that, prior to the institution of this action and during the pendency of this action, Trustee's suspension of "unforeseeable emergency" distributions of Plan assets to participants has been a lawful exercise of its equitable powers as Trustee, which did not constitute the exercise of a contractual remedy triggered by insolvency within the meaning of either Section 405(j) of PROMESA or Section 201(a) of the Moratorium Act, and does not give rise to liability to any party under applicable law;

(v) Authorizing VITC's recovery of all fees and costs associated with this action pursuant to the Trust Agreements and applicable law; and

(vi) Granting such other legal and equitable relief as is necessary and appropriate.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, on this 22nd day of August, 2016.

        **ADSUAR MUÑIZ GOYCO SEDA
& PÉREZ-OCHOA, P.S.C.**

*By: /s/ Pedro Jiménez*
Pedro Jiménez
USDC-PR No. 121912
pjime@icepr.com

*By: /s/ Katarina Stipec Rubio*
Katarina Stipec Rubio
USDC-PR No. 206611
kstipec@amgprlaw.com

*By: /s/ Sharlene M. Malave-Vallines*
Sharlene M. Malave-Vallines
USDC-PR No. 227409
smalave@amgprlaw.com

**P. O. Box 70294
San Juan, PR 00936-8294
Tel: (787) 756-9000
Fax: (787) 756-9010**


**FAEGRE BAKER DANIELS LLP**

Michael B. Fisco (*Pro Hac Vice admission pending*)
Robert L. Schnell (*Pro Hac Vice admission pending*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
Email: Michael.Fisco@FaegreBD.com
Email: Robert.Schnell@FaegreBD.com

*Attorneys for Plaintiff Voya Institutional
Trust Company*

17