*Hearing Date*: August 9, 2017 at 9:30 (EST)
*Objection Deadline*: July 28, 2017 at 4:00pm (EST)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

In re:

The Financial Oversight and Management Board for
Puerto Rico,

   as representative of

The Commonwealth of Puerto Rico, *et al.*
( Jointly Administered)

PROMESA Title III

No. 17 BK 3283-LTS

---

## AD HOC PUERTO RICO MUNICIPALITIES COMMITTEE'S REQUEST FOR AN ORDER PURSUANT TO 48 U.S.C. §2161 AND 11 U.S.C. §1102 DIRECTING THE APPOINTMENT OF AN OFFICIAL PUERTO RICO MUNICIPALITIES COMMITTEE

**TO THE HONORABLE COURT:**

**NOW COMES** Ad Hoc Puerto Rico Municipalities Committee (the "Ad Hoc Municipalities Committee" or the "Committee"), and very respectfully states and prays:

The Ad Hoc Municipalities Committee[1], as a party in interest under 11 U.S.C. §§1102(a)(2) and §1109(b), made applicable to the instant proceedings pursuant to 48 U.S.C. §2161(a), hereby requests that the Court enter an Order directing the appointment of an Official Puerto Rico Municipalities Committee (the "Official Municipalities Committee") to represent the

---

[1] The Ad Hoc Committee currently represents the interests of the following Municipalities: Mayagüez, Isabela, Quebradillas, Guayama, Cabo Rojo, San Germán, Adjuntas, Guayanilla, Guanica, Añasco and Barceloneta.

interests of all seventy-eight (78) Puerto Rico Municipalities in the Title III Petitions filed for the Commonwealth of Puerto Rico and any of its instrumentalities and/or public corporations[2].

### *INTRODUCTION*

The seventy-eight municipalities of the Commonwealth not only need a Committee, they are entitled to one. The treatment they will receive – both during the reorganization process and under any plan which might be confirmed – will be different from any other creditors or parties in interest. No other official committee either can or wants to represent the claims, needs, and viewpoints for which seventy-eight mayors are responsible. At the same time, the prospect of each municipality's taking an independent position before the Court would waste their money and this Court's time. Caselaw interpreting Bankruptcy Code Section 1102 establishes that municipalities not only may participate in committees, but under the right circumstances should have their own. PROMESA establishes separate grounds for a committee, given the substantial claims which the municipalities have against not only the Commonwealth but several of its instrumentalities. This Court's directing the appointment of an Official Puerto Rico Municipalities Committee is legally appropriate and critical to the success of the reorganization effort.

---

[2] As of this filing the Title III petitions include the following instrumentalities and/or public corporations: Commonwealth of Puerto Rico (17-03283); Puerto Rico Sales Tax Financ

ing Corporation ("COFINA") (17-03284); Puerto Rico Highways and Transportation Authority ("HTA") (17-03567); Employees Retirement System of the Government of the Commonwealth of Puerto Rico (17-03566); Puerto Rico Energy and Power Authority ("PREPA") (17-01909).

- 2 -

## TABLE OF CONTENTS

JURISDICTION ............................................................................................................................ - 4 -

RELIEF REQUESTED ................................................................................................................. - 5 -

FACTS RELEVANT TO THE REQUEST ................................................................................. - 5 -

LEGAL ANALYSIS ..................................................................................................................... - 7 -

I.   Section 1102 Requires Appointment of a Municipalities Committee to Assure their Adequate Representation in these Cases.................................................................................... - 7 -
   A. Factors Used to Determine Whether Appointment of an Additional Committee is Appropriate ........................................................................................................................... - 7 -
     1.   The Municipalities will be Classified and Treated Differently Under a Plan. ......... - 8 -
     2.   No Existing Committee Can Adequately Represent the Municipalities. ............... - 12 -
     3.   Size and Complexity of the Case Requires Appointment. ..................................... - 12 -
     4.   Appointing the Committee Will Simplify the Case Process and Reduce Representation Expense for Municipalities. ................................................................... - 12 -
   B. Appointment of a "Governmental Unit" Pursuant to 11 U.S.C. §1102 ...................... - 13 -

II.  As "Beneficiaries of Claims" Under PROMESA, the Municipalities are Entitled to a Committee. ................................................................................................................................. - 16 -
   A.   Claims Against the GDB and Commonwealth ......................................................... - 18 -
   B.   HTA Claims ............................................................................................................... - 21 -

III. Alternative Relief ................................................................................................................. - 22 -

CONCLUSION ............................................................................................................... - 22

-

- 3 -

## TABLE OF AUTHORITIES

**Cases**

*Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000) ........................................................ - 22

- *In re Am. Atomics Corp.*, 2 B.R. 526, 527 (Bankr. D. Ariz. 1980) ........................................... - 15

- *In re Baldwin-United Corp.*, 38 B.R. 802, 806 (Bankr. S.D. Ohio 1984) ................................ - 15

- *In re Budd Co., Inc.*, 71 C.B.C.2d 1713, 512 B.R. 910 (Bankr. N.D. Ill. 2014)........................ - 8

- *In re County of Orange*, Ch. 9 Case No. 94-bk-22272 (Bankr. C.D. Cal. Filed Dec. 6, 1994) - 14

-

, - 23 -

*In re Davis Industries, Inc*., Ch. 11 Case No. 99-bk-19302 (Bankr. C.D. Cal. filed May. 27,

1999) ...................................................................................................... - 15 -, - 23 -

*In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D. Mich. 1996............................................ - 8 -

*In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997) ............................................ - 14

- *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209 (Bankr. S.D.N.Y. 1990) ................ - 8

- *In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002 ........................................................ - 8

- *In re Gates Eng'g Co.*, 104 B.R. 653, 654 (Bankr. D. Del. 1989) .................................. - 14 -, - 23

- *In re Heck's Props., Inc.*, 151 B.R. 739 (Bankr. S.D.Va, 1992) ................................................. - 7

- *In re Hills Stores*, 26 C.B.C.2d 1038, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) ............................... - 8

- *In re Lion Capital Grp.*, 44 B.R. 684, 685-686 (Bankr. S.D.N.Y. 1984) ..... - 13 -, -14-, -15-, - 23

- *In re McLean Industries, Inc.*, 70 B.R. 852 (Bankr. S.D.N.Y., 1987) .........................................

7- *In re Salant Corp.*, 53 B.R. 158, 161 (Bankr.S.D.N.Y.1985) .....................................................

7 - *In re VTN, Inc.*, 65 B.R. 278, 279 (Bankr. S.D. Fla. 1986) .......................................................

15 - *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853 (Bankr. M.D. Fla. 2005) ......................................
- 8 -
*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart*
   *Convenience Stores, Inc.)*, 351 F.3d 86 (2d Cir. 2003) ........................................................ - 22 -

**Statutes**
11 U.S.C. §§1102(a) ...................................................................................................... -1-, - 5 -
48 U.S.C. §2161(c) .............................................................................................................. - 16 -
PROMESA §166(a) ............................................................................................................... - 5 -
PROMESA §167(b) ................................................................................................................ - 5
- PROMESA §301(c) ............................................................................... - 16 -, - 17 -, - 21
- PROMESA, 48 U.S.C. §2161 ............................................................................................ - 13
-

**Other Authorities**
Ester E. Tryban Telser, *Affairs of State, Governmental Entities: The Disenfranchised Creditors,*
   31-11 ABIJ 16, 97 (2013) ................................................................................................. - 15 -

### *JURISDICTION*

This Court has jurisdiction over this matter pursuant to PROMESA §166(a) (48 U.S.C.

§2161(a)). Venue is proper in this district pursuant to PROMESA §167(b) (48 U.S.C. §2167(b)).

### *RELIEF REQUESTED*

The Ad Hoc Committee seeks an order directing the United States Trustee (the "US

Trustee") to appoint an Official Municipalities Committee, pursuant to 11 U.S.C. §§1102(a)(2)

and

(b)(2).

### *FACTS RELEVANT TO THE REQUEST*

1.      On May 3, 2017, the Federal Oversight Management Board (the "Over-

sight Board") filed a petition before this Court initiating a case under Title III of PROMESA on

behalf of the Commonwealth of Puerto Rico. The Oversight Board has subsequently initiated Title

III petitions for other instrumentalities and/or public corporations of the Commonwealth.

2.    All of the petitions have been administratively consolidated, except the pe-

tition filed by PREPA.

3.    An Official Unsecured Creditors Committee has been appointed. (Dkt.

338)

4.    An Official Retirees Committee has been appointed. (Dkt. 340)

5.    Puerto Rico has seventy-eight (78) Municipalities.

6.    The Commonwealth used to provide over $450,000,000 in apportionments

and Legislative Assignments to the Municipalities on a yearly basis.[3]

7.    The approved Commonwealth Budget for fiscal year 2018 contemplates a

reduction in apportionments to Municipalities to $220,000,000, or approximately half of the

previous years' apportionments and Legislative Assignments.[4]

8.    The Control Board and the Governor have expressed that in the near future

the apportionments from the Commonwealth to the Municipalities will be eliminated completely.

9.    The Government Development Bank ("GDB") has seized excess funds

from property and sales taxes to which the Municipalities were entitled and which constitute

another of the Municipalities' major sources of funds.[5]

10.    No party or entity is currently representing the interests of the Municipali-

---

[3] The direct apportionment was $395,000,000.
https://juntasupervision.pr.gov/wpcontent/uploads/wpfd/43/596945e562bda.pdf.

ties in the instant Title III petitions.

11.     The Ad Hoc Committee is comprised of the eleven (11) Municipalities listed above and was created to represent the interests of all seventy-eight (78) Puerto Rico Municipalities in the PROMESA proceedings.   Any Municipality that wishes to join in the future will also be joined.

12.     The Ad Hoc Committee has contacted the U.S. Trustee's Office for the appointment of an Official Municipalities Committee and the U.S. Trustee's Office denied the request.

The remaining funds came from Legislative Assignments and/or other benefits.
[4]     https://juntasupervision.pr.gov/wp-content/uploads/wpfd/43/596945e562bda.pdf.
[5]     There are at least two complaints pending against GDB for the return of those funds. One is from the Municipality of San Juan in State Court – Case Num. SJ2017CV00501.  Another is from the Municipality of Caguas, filed in the U.S. District Court – Case Num. 17-cv-01973.

- 6 -
*LEGAL ANALYSIS*

I.     **SECTION 1102 REQUIRES APPOINTMENT OF A MUNICIPALITIES COMMITTEE TO ASSURE THEIR ADEQUATE REPRESENTATION IN THESE CASES**

Section 1102(a)(2) of the Bankruptcy Code (11 U.S.C. §1102(a)(2)), made applicable to these proceedings pursuant to PROMESA §167(a) (48 U.S.C. §2167(a)) provides, "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. §1102(a)(2).

The purpose of Committees in bankruptcy petitions is to adequately represent and protect the interests and rights of entities who are similarly situated. *In re Heck's Props., Inc.*, 151 B.R. 739 (Bankr. S.D.Va, 1992). Section 1102(a)(2) does not establish a standard for "adequate representation"; the courts are given discretion to determine if additional committees are required or warranted in any given case. *In re McLean Industries, Inc.*, 70 B.R. 852 (Bankr. S.D.N.Y., 1987) ("[T]he Code neither mandates nor precludes multiple creditors' committees in a Chapter 11 reorganization case. In each instance, the court is directed to determine whether an additional committee is required to assure adequate representation of creditors." *quoting*, *In re Salant Corp.*, 53 B.R. 158, 161 (Bankr.S.D.N.Y.1985)).

### A. Factors Used to Determine Whether Appointment of an Additional Committee is Appropriate

The Courts examine several factors in determining whether to establish additional com-

– 7 –

mittees: (1) whether different groups are likely to be treated differently under a plan[4]; (2) whether already-named committees can adequately represent the interest of the petitioning group[5]; (3) size and complexity of the case[6]; and (4) whether appointment of an additional committee will add complexity and expense to the case.[7]

---

[4] *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209 (Bankr. S.D.N.Y. 1990)

[5] *In re Budd Co., Inc.*, 71 C.B.C.2d 1713, 512 B.R. 910 (Bankr. N.D. Ill. 2014); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853 (Bankr. M.D. Fla. 2005); *In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D. Mich. 1996)

[6] *In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002)

[7] *In re Enron Corp.*, *supra*; *In re Hills Stores*, 26 C.B.C.2d 1038, 137 B.R. 4 (Bankr. S.D.N.Y. 1992).

In the present case, all of the factors favor the naming of an Official Puerto Rico Municipalities Committee. Let's examine.

**1.      The Municipalities will be Classified and Treated Differently Under a Plan.**

The Puerto Rico Municipalities have an important and vested interest in the Title III Petitions because any plan of adjustment, and the budgets mandated by that plan, will directly affect each and every Municipality. The funding for services and operation of the Municipalities comes from four sources: (1) Commonwealth apportionments[8]; (2) Legislative Assignments[9]; (3) the excess funds from the property and sales taxes after payment of loans deposited in the GDB; and (4) miscellaneous revenues such as permits, licenses, fines and "petentes"[10].

The amount of the apportionment from the Commonwealth for the fiscal year ending in 2018 has reduced the amounts to be received by the Municipalities from $395,000,000 to $220,000,000.[11] The Commonwealth and the Control Board have stated that the Municipalities

---

[8] Each Municipality received a portion of the central government apportionment according to a formula which favors Municipalities who receive less funds from other sources such as property and sales taxes.

[9] Legislative Assignments were mainly used for special construction and/or projects. In the case of the Municipalities most in need, the Legislature provided special Legislative Assignments to help fund the services of those Municipalities. These amounts appear in the municipal budgets as "Compensaciones Estatales". This income can range from 1% to 27% of the Municipalities Budget as in the case of the smallest Municipalities, such as Vieques. http://www.ocam. gobierno.pr/sites/default/files/Presupuesto-Vieques-2015-2016.pdf

- 8 -

[10] "Patentes" is a tax for the right to participate in commercial activity in the Municipality and is based on the volume of sales for the business.

[11] The Puerto Rico Fiscal Plan for the fiscal year 2017-2018, approved by the Oversight Committee, has reduced the apportionment to Municipalities to $220,000,000. See https:// juntasupervision.pr.gov/wp-content/uploads/wpfd/43/596945e562bda.pdf.

will not receive any funding from Commonwealth funds in future budgets. Since a substantial part of the funds available to the Municipalities to operate and provide services has historically come from the central government, the proposed elimination of this apportionment will severely impact the Municipalities. In the last year alone, the Municipalities as a whole received over $450 million dollars from the Commonwealth in direct apportionments and Legislative Assignments, distributions which will be reduced by approximately half for this year. By way of example, the Municipality of Adjuntas received over $5,183,710.00[12] in apportionments from the central government in the fiscal year 2016-2017.[13] Adjuntas' total budget for the same fiscal year was $9,092,763.53.[14] This translates to approximately 57% of Adjuntas' Budget for that year, which under current plans would be totally eliminated.[15]

The decisions reached in the reorganization process will impact the Municipalities' ability to provide essential services from road maintenance to police, schools and garbage collection, to name only a few. These reductions will affect *all* of the citizens of Puerto Rico.[16] Small Municipalities, which are the vast majority, will be even more affected, since they historically

---

When it is added to other funding, this is a reduction of over half of the funds received in the prior year, which including apportionments and Legislative Assignments totaled approximately $450,000,000 in favor of the Municipalities.

[12] See Budget for the Municipality of Adjuntas for Fiscal Year 2016-2017, attached as Exhibit 1. Adjuntas' Budget is publicly available at:http://www.ocam.gobierno.pr/ sites/default/ files/Presupuesto-Adjuntas-2016-2017.pdf..

[13] The Municipality of Adjuntas also received other disbursements from the Commonwealth in the amount of $192,417.00 which will also be eliminated. *Id.*

[14] *Id.*

-- 9 --

[15] *Id.*

[16] These citizens will not have any other representation for the redress of the harm suffered if an Official Municipalities Committee is not appointed.

receive a higher proportional distribution from the central government apportionments and from Legislative Assignments.

The GDB receives the property tax ("CAE" by its Spanish Acronym), the municipal portion of the sales tax ("Sales Tax") and other revenues such as the Municipal portion of Lottery revenues. Those funds are supposed to be held in a Trust Fund created for the sole purpose of holding and distributing those funds.[17] The GDB is supposed to pay the loans taken by each Municipality, be it from the GDB itself or a private entity, from the moneys deposited in the Trust Fund for each individual Municipality. The statute requires that any moneys remaining in the Trust Fund for each individual Municipality (the "Excess CAE") must be disbursed to that Municipality for the payment of its operations and rendering of services to the community it serves. Notwithstanding the fact that those funds are held in trust for the Municipalities, GDB has refused to pay them over as required. Instead, the GDB has used those funds to pay its own bondholders.[18] This has further eroded the Municipalities' financial position and ability to provide basic services to their citizens.

In addition, the reduction in central government apportionments combined with the GDB's actions have made it impossible for the Municipalities to access the financial markets. This inability to reach the financial markets has degraded even further the ability of the Municipalities to provide adequate services and facilities to the citizens of Puerto Rico. This is especially tragic in cases where GDB had made lending commitments to the Municipalities, but had not disbursed

---

[17] The Trust Fund was created by Deed Four (4), signed on November 2, 2015 before Notary Public Roberto C. Rodriguez Poventud, pursuant to Article 4 of Law 80 of August 30, 1991.

[18] There are currently two complaints pending against GDB for the return of those funds.

the full amount of the loan.[21] GDB's insolvency means that it will not disburse the full amount of those loans, but the Municipalities are not able to finish the projects with private financing due to GB's and the Commonwealth's actions.

The net effect of all the actions listed above is that the Municipalities have been deprived of a substantial part of their four main sources of funds from one year to the next, with no plan to substitute those sources.

Moreover, the General Obligations versus COFINA controversy might also affect the Municipalities, since they receive part of their funding from the Sales Tax, over which the controversy arises. The Municipalities are a separate group of parties in interest that will be severely affected by any restructuring/adjustment of debt for the Commonwealth of Puerto Rico and any subsequent budget drafted taking said plan into consideration. It is clear that the Municipalities will be treated differently than unsecured creditors and retirees under any restructuring.

One is from the Municipality of San Juan in State Court – Case Num. SJ2017CV00501. The other is from the Municipality of Caguas, filed in the U.S. District Court – Case Num. 17-cv01973.

[21] Disbursements on construction loans are customarily made when each phase of a project is completed.

- 11 -

## 2. No Existing Committee Can Adequately Represent the Municipalities.

The interests of the Municipalities are not and cannot be represented by any other party, including the Commonwealth, the Unsecured or Retiree Committees, and definitely not by the bondholders. If they are to fulfill their duty to their residents, the Municipalities must be an integral part of the process of reshaping the Commonwealth's future. Although the interests of the

Municipalities may align with those of the other Official Committees in some areas, in other areas they will be completely opposed. The fiscal plan and the proposed budgets make considerable reductions in funding to the Municipalities which will severely affect its citizens and stakeholders; other Committees will be advocating to minimize the cuts made to their own constituents' positions. The Municipalities must be represented in this process. It is important to stress that some of the more affected Municipalities do not have the funds to appear before this Court on their own. If a Committee cannot defend their interests, they will have no representation.

**3.     Size and Complexity of the Case Requires Appointment.**

The Title III cases represent the largest bankruptcies ever filed and arguably the most complex. The size and complexity of the cases and the controversies therein favor the appointment of an Official Puerto Rico Municipalities Committee.

**4.     Appointing the Committee Will Simplify the Case Process and Reduce Representation Expense for Municipalities.**

Allowing unified representation of the Municipalities will simplify the process as opposed to having separate and un-coordinated representation by seventy-eight (78) individual Municipalities. This will aid not only in the litigation and prosecution of the cases, but also in the negotiation and/or mediation of controversies where a unified representation will greatly ex-

- 12 -

pedite the process and reduce costs. *Enron*, *supra* at 690 ("A Committee is a catalyst for negotiation and compromise between parties in the reorganization process.").

In addition, the appointment of an Official Puerto Rico Municipalities Committee will actually reduce costs and expenses instead of increasing them. The costs of representation for individual Municipalities and the costs of an Official Puerto Rico Municipalities Committee would

both be paid from public funds, albeit from different sectors. As such, an Official Puerto Rico Municipalities Committee would economically benefit the Debtor and the Municipalities by paying for only one set of representatives, as opposed to having each of the seventy-eight (78) Municipalities appear individually.

### B. Appointment of a "Governmental Unit" Pursuant to 11 U.S.C. §1102

The U.S. Trustee has previously declined the Ad Hoc Committee's request for the appointment of an Official Municipalities Committee. In so holding, the U.S. Trustee summarily determined that the Municipalities, as "government units," are not "persons" as that term is used in §§1102 and 101(41) of the U.S. Bankruptcy Code, made applicable to the Title III proceedings by Section 301 of PROMESA, 48 U.S.C. §2161. The Ad Hoc Committee respectfully disagrees with the determination of the U.S. Trustee, and would point out to the Court that the relevant provision of the Bankruptcy Code establishing creditors' committees, 11 U.S.C. §1102, makes the composition of the committee permissive. Section 1102(b)(1) states that, "A committee of creditors appointed under subsection (a) of this section *shall ordinarily* consist of the persons...."[*Emphasis added.*] Simply put, nothing about this situation is ordinary.

**But more to the point, courts have previously held that this language is not an absolute bar to the appointment of governmental entities to creditors' committees.** *See In re Lion Capital Grp.,* 44 B.R. 684, 685-686 (Bankr. S.D.N.Y. 1984) (creating a special creditors' committee made up of municipalities and school districts); *see also In re Gates Eng'g Co.,* 104 B.R. 653, 654 (Bankr. D. Del. 1989) (noting that "[t]he alternative request for a governmental entities committee is one upon which the court has authority to act...", but declining to appoint such a committee because to do so would be a waste of resources). In rendering his decision

- 13 -

directing the appointment of government creditors, the bankruptcy judge in *Lion Capital* found it significant that the municipalities were not asserting secured tax claims derived from their status as municipalities, but rather unsecured claims similar in nature to those of other creditors. The bankruptcy judge based his order on the observation that "the provision of [section] 1102(b)(1) providing that only 'persons' could 'ordinarily' serve on a committee was not an absolute bar" to the appointment of government entities. *Lion Capital*, 44 B.R. at 658. *See also In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997) ("Section 1102(b)(1) appears to give the United States Trustee a 'guide' to the type of persons the Trustee may appoint on the committees. Section 1102(b)(1) provides that 'ordinarily' the membership of a committee should consist of the seven largest creditors of the creditor class. It could be interpreted that in a matter that is not an 'ordinary' case, such as a mass tort case, the United States Trustee may appoint members who are not the largest creditors."). Committees of government entities have also been formed in other "out of the ordinary" cases. In the Chapter 9 case of Orange County, California, *In re County of Orange*, Ch. 9 Case No. 94-bk-22272 (Bankr. C.D. Cal. Filed Dec. 6, 1994), the U.S. Trustee appointed not one but three official subcommittees of government entities, including one for school and college districts, one for Orange County Municipalities, and one for non-Orange County Municipalities. An official committee of government creditors was also formed in *In re*

- 14 -

*Davis Industries, Inc.*, Ch. 11 Case No. 99-bk-19302 (Bankr. C.D. Cal. filed May. 27, 1999), a case filed by a gun manufacturer of "Saturday night specials" as a result of municipal lawsuits filed by a number of counties and cities, including Chicago, Los Angles and Detroit.

It is important to note that the proposed committee, like those formed in *Lion Capital*, *Orange County*, and *Davis Ind.*, will be comprised entirely of municipalities. This factor should

not be overlooked, because it distinguishes the present circumstances from those cases where

courts have prohibited government entities from serving on committees with non-government

creditors. *See In re VTN, Inc.*, 65 B.R. 278, 279 (Bankr. S.D. Fla. 1986) (Public Service District

not permitted on unsecured creditors' committee); *In re Baldwin-United Corp.*, 38 B.R. 802, 806

(Bankr. S.D. Ohio 1984) (FDIC not permitted to serve on unsecured creditors' committee); *In re*

*Am. Atomics Corp.*, 2 B.R. 526, 527 (Bankr. D. Ariz. 1980) (school district's motion to join

unsecured creditors' committee denied). So any concern of conflicting priorities between

government and civilian creditors within the same committee are not present here. *See, e.g.,* Ester

E. Tryban Telser, *Affairs of State, Governmental Entities: The Disenfranchised Creditors*, 31-11

ABIJ 16, 97 (2013) ("The limited legislative intent [H.R. Rep. No. 595, 95th Cong., 1st Sess. 313

(1977)] and more pervasive anecdotal history merely evidences the vague fears of governmental

entities (1) having "different agendas" than other creditors, (2) delaying the work of the committees

through some inability to formulate a decision on any matter; and (3) being in possession of

sufficient protection of their interests through the priority treatment accorded to the bulk of their

claims. It is difficult to lend credence to any one of these excuses for the continued exclusion of

today's consensus-driven, decisive and general unsecured claim-holding governmental entities.").

As this is not a "normal" Chapter 11 case, the court should exercise its discre-

– 15 –

tion in authorizing the creation of the requested Official Puerto Rico Municipalities Committee for

the benefit of all parties involved.

The creation of an Official Puerto Rico Municipalities Committee can best represent the

interests of the Municipalities as a unified whole, rather than separate and un-coordinated requests

coming from each Municipality. It will simplify the process and reduce costs significantly for the

Commonwealth. The costs of representation for individual Municipalities and the costs of an Official Puerto Rico Municipalities Committee would both be paid from public funds, albeit from different sectors. As such, there would be no economic harm to the Debtors or their creditors. In fact, an Official Puerto Rico Municipalities Committee would economically benefit the Debtor and the Municipalities by paying for only one set of representatives, as opposed to having each of the seventy-eight (78) Municipalities appear individually. It should be noted that in these difficult times, some Municipalities do not have the funds available to appear in the process, even though their interests are being affected.

## II. AS "BENEFICIARIES OF CLAIMS" UNDER PROMESA, THE MUNICIPALITIES ARE ENTITLED TO A COMMITTEE.

PROMESA §301(c)(3)(A) (48 U.S.C. §2161(c)(3)(A)) provides an additional basis for the appointment of an Official Puerto Rico Municipalities Committee. This section states:

> (3) HOLDER OF A CLAIM OR INTEREST. – The term "holder of a claim or interest," when used in section 1126 of title 11, United States Code, made applicable in a case under this title by subsection (a)—
>
> > (A) Shall exclude any Issuer[19] or Authorized Instrumentality of the Territory Government Issuer (as defined under Title VI of this Act)[23] or a corporation, trust or other legal entity that is controlled by the Issuer or an Authorized Territorial Instrumentality of the Territory Government Issuer, ***provided that the beneficiaries of such claims, to the extent they are not referenced in this subparagraph, shall not be excluded,*** and that, for each excluded trust or other legal entity, ***the court shall,*** *upon the request of any participant or beneficiary of such trust or entity, at any time after the commencement of the case,* ***order the appointment of a separate committee of creditors pursuant to section 1102(a)(2) of title 11, United States Code...***

(emphasis added).

[19] Title VI of PROMESA defines "Issuer" as "the Territory Government Issuer or an Authorized Territorial Instrumentality that has issued or guaranteed at least one Bond that is Out-

The Municipalities of the Commonwealth are entitled, under PROMESA §301(c)(3)(A), to the appointment of a separate committee of creditors to represent their interests, because they are parties in interest in and beneficiaries of claims against not only the Commonwealth, but also the Government Development Bank ("GDB") and the Puerto Rico Highways and Transportation Authority ("HTA"), both of which have been designated as "covered territorial instrumentalities."[24]

standing.
          "

          ...

          (15) Territory Government Issuer - The term "Territory Government Issuer" means the Government of Puerto Rico or such covered territory for which an Oversight Board has been established pursuant to section 101.

[23] Title VI of PROMESA defines a "Authorized Territorial Instrumentality" as "a covered territorial instrumentality authorized in accordance with subsection (e)." ....

          (e) Authorization of Territory Instrumentalities -- A covered territorial instrumentality is an Authorized Territorial Instrumentality if it has been specifically authorized to be eligible to avail itself of the procedures under this section by the Administrative Supervisor [Oversight Board.]

[24] On September 30, 2016, the Fiscal and Management Oversight Board (the "Oversight Board") designated the GDB and HTA as "covered territorial instrumentalities." *See* Financial

- 17 -

**A. Claims Against the GDB and Commonwealth**

As mentioned above, the Municipalities as a whole, especially small economically poor Municipalities, have received a significant portion of their budgetary needs from the Commonwealth and have a vested interest in any process to restructure the Commonwealth finances. This is especially true given the fact that the Commonwealth and the Board propose to eliminate that source of funding completely. So, the Municipalities not only have a claim against

the Commonwealth, for this year's allocation of funds, but also have an interest in the final
restructuring efforts.

Historically, the GDB serves as the primary fiscal agent for the Commonwealth of Puerto
Rico and is in charge of developing financial strategies for the Commonwealth and government
agencies. It helps finance Puerto Rico's economic infrastructure projects and contributes with the
financial structuring for infrastructure, housing, municipal, education and health related projects.
The GDB holds deposits from both government agencies and Municipalities of the
Commonwealth, and the Municipalities deposit both their property tax and sales and use tax
collected with the GDB. The Municipalities of the Commonwealth are financially dependent upon
the GDB in many ways. The Municipal Financing Department of the GDB acts as fiscal agent and
financial advisor to the Municipalities and provides Municipalities with financing for various
purposes, such as construction and reconstruction of public works and facilities.

Oversight and Management Board for Puerto Rico, First Meeting of the Board, Minutes (Sept. 30,
2016), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/581f99a1bb9e8.pdf. As such,
the GDB and HTA are "Authorized Instrumentalit[ies] of the Territory Government Issuer" as that
term is used in Section 301(c)(3)(A). The Municipalities of the Commonwealth of Puerto Rico are
beneficiaries of claims against the GDB and HTA. As such, the Municipalities are enti-

– 18 –

There are also public corporations and instrumentalities of the Commonwealth which are
attached to the GDB and provide vital financial services for the Municipalities. The Municipal
Finance Agency ("MFA") was created to allow the Municipalities of the Commonwealth access
to public capital markets in order to finance public improvement projects. Similarly, the Municipal
Finance Corporation ("COFIM"), only recently created, is authorized to issue bonds and use other
financing mechanisms to pay or refinance the debts of the Municipalities that are payable or backed

by municipal sales and use taxes. The financial solvency of the Municipalities of the Commonwealth is not only related to, but fundamentally dependent upon, the GDB and its various affiliates.

As previously mentioned, the GDB receives the property tax ("CAE"), municipal sales and use tax, and various other revenues collected by the Municipalities of the Commonwealth. These funds are collected by the Municipal Revenue Collection Center ("CRIM") and used for the debt service payment of the Municipalities' bonds and loans.[25] On November 2, 2015, the GDB and CRIM executed a deed of trust created for the sole purpose of holding and distributing the funds collected from the Municipalities.[26] The trust creates three (3) separate funds.[27] The

---

tled, under §301(c)(3)(A), to the appointment of a separate committee of creditors to represent their interests.

[25]    This amounts to an extremely large sum of municipal funds on deposit with the GDB. As of June 30, 2015, the Municipalities, in the aggregate, maintained approximately $515 million on deposit funded primarily from the proceeds of the CAE. *See* http://www.gdbpur.com/investors_resources/documents/MFAauditedfinancialstatementFY2015. pdf at p. 23.

[26]    The Trust Fund was created by Deed Four (4), signed on November 2, 2015 before No-tary Public Roberto C. Rodriguez Poventud, pursuant to Article 4 of Law 80 of August 30, 1991.

[27]    The trust includes the (1) Municipal Redemption Fund, (2) Matching Fund, and (3) State Redemption Fund.

Municipal Redemption Fund (the "Redemption Fund"), in particular, contains those funds corresponding to the proceeds of the CAE. The trust then creates two (2) sub-funds where the funds used to pay the Municipalities' bonds and loans are deposited. Each municipality is statutorily required to maintain a twelve (12) month prepayment in the Redemption Fund (*i.e.,* each municipality must maintain enough CAE revenues to cover the Municipalities' bond and loan obligations for a year). Any funds above and beyond this amount are considered "excess," and are

to be disbursed to the individual Municipalities for use in its ongoing operations. These "excess funds" serve as one of the Municipalities' main sources of revenue and are necessary for the continuation of vital public services.

Most recently, however, faced with impending fiscal crisis, the GDB pursued an unlawful arrangement which resulted in the Municipalities no longer receiving the excess tax revenues rightfully due them from the Redemption Fund. Instead, it illegally diverted them to pay a select group of municipal bondholders. The vehicle for this unlawful action is the GDB Restructuring Support Agreement ("GDB RSA"), dated May 15, 2017, between the GDB and certain noteholders. The GDB RSA divests the GDB of its municipal loans by transferring them to a special purpose vehicle for the benefit of a select group of creditors (*i.e.,* the municipal bondholders). In all, an estimated $200 million has been unlawfully withheld from the Municipalities and used to pay down the debt to GDB bondholders. It is important to stress that those funds are held in trust by the GDB, are not GDB property, and are not GDB deposits.

This unlawful, unilateral action by the GDB caused enormous harm to the Municipalities: though GDB no longer pays the funds due them, they nonetheless must continue paying the municipal loans owing to the GDB in full! The ultimate beneficiary of the GDB's unlawful misap-

– 20 –

propriation of funds is the Commonwealth, whose debt to bondholders has been (improperly) reduced by some $200 million. As such, the Municipalities are creditors of both the GDB and the Commonwealth and are entitled to significant claims against these entities for the tax revenues which have been improperly withheld and improperly paid to bondholders.

**B.    HTA Claims**

The HTA is responsible for maintaining roads which do not belong to but are located in the Municipalities. Any restructuring that affects the maintenance of those roads severely affects the already stretched finances of the Municipalities. Thus, the Municipalities are both parties in interest and claimants of the HTA in as much as the HTA is required to provide maintenance to roads traversing most if not all of the Municipalities.

A separate committee of creditors is needed to represent the interests of the Municipalities of the Commonwealth as it pertains to claims against the Commonwealth, the GDB and the

HTA. PROMESA §301(c)(3)(A) expressly provides for the appointment of such a committee. The interests in and claims against these entities are unique to the Municipalities. The Municipalities' interests in this regard are not and cannot be sufficiently represented by any of the committees thus far appointed.

While there is ample evidence to suggest that a separate committee composed of Municipalities is warranted under the circumstances, should the Court determine that it is unable to appoint such a committee because the Municipalities are not "persons," the Ad Hoc Committee would encourage the Court to consider the "beneficiaries of such claims," as that term is used in §301(c)(3)(A) to be not only the Municipalities, but (perhaps more so) the citizens of the Municipalities. These citizens depend on the tax funds in question for the continuation of vital public –
21 –
services and will be significantly harmed if there is no recourse for the unlawful withholding of these funds. In the instant case, the mayors of the Municipalities of the Commonwealth are appropriate representatives of the citizens of the Municipalities and the Municipalities themselves.

**III.    ALTERNATIVE RELIEF**

In the alternative, the Court can use its equitable powers under §105 (11 U.S.C. §105), made applicable to these proceedings pursuant to PROMESA §167(a). (48 U.S.C. §2167(a)). Section 105 provides the Court with equitable powers to implement the provisions of the Bankruptcy Code, or in this case PROMESA. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000)(district or bankruptcy court may invoke 105(a) if the equitable remedy is necessary to preserve a right provided in the Code.); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86 (2d Cir. 2003)(equitable power of 105 is to be used in carrying out other provisions of the Code.) In the present case, the Municipalities are claimants and have an undeniable interest in the restructuring process. Moreover, the Municipalities, the Debtors and all parties are best served by the appointment of an Official Municipalities Committee.

Therefore, the Court should use its equitable powers to grant the instant request and name an Official Municipalities Committee.

## CONCLUSION

The Municipalities are parties in interest and claimants in the Petitions filed before this Court, and will be severely affected by the restructuring of the Commonwealth and its instrumentalities. All of the factors for the appointment of an additional official committee for the Municipalities are present in the instant case. The Municipalities will be treated differently un-
der the restructuring plan; the actual committees will not and cannot adequately represent the Municipalities; the size and complexity of the case favors appointment; and the appointment of the Municipalities Committee will actually simplify the process and reduce costs. So long as the

22 -

governmental units are grouped in a separate committee from other parties, Courts have found that governmental units may form an official committee pursuant to §1102.[20]

In addition, §301(c)(3)(A) of PROMESA dictates that an official committee be named for beneficiaries of claims against the Commonwealth and its instrumentalities.[21] The Municipalities are beneficiaries of claims against the Debtors and of the Commonwealth's instrumentalities.

In the alternative, the Court should use its equitable powers under §105 to grant the instant request. The equities of the case favor the appointment of an official committee for the Municipalities. They are deeply affected by the restructuring plan and due to the decisions of the Commonwealth and the acts of the GDB are currently in dire financial distress which precludes many of them from participating in the instant case. In the end, all of the citizens of the Municipalities are also affected – it is the student who's school closes, the patient who no longer has a hospital to go to, the business who has less security, the citizen who suffers the accumulation of trash and who is forced to transit on streets filled with potholes.

WHEREFORE, it is hereby requested that the Court GRANT the instant request and order the appointment of an Official Municipalities Committee.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants of the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

---

[20] See, _In re Lion Capital Grp., supra; In re Gates Eng'g Co., supra; In re County of Orange, supra; In re Davis Industries, Inc., supra._

[21] "**the court shall**, upon the request of any participant or beneficiary of such trust or entity, at any time after the commencement of the case**, _order the appointment of a separate com-_**

In San Juan, Puerto Rico, on July 21, 2017.

By: /s/ F. David Godreau Zayas
USDC NO. 123207
dg@g-glawpr.com
By: /s/ Rafael A. Gonzalez Valiente
USDC NO. 225209 rgv@g-
glawpr.com
**Godreau & Gonzalez Law, LLC**
PO Box 9024176
San Juan, PR  00902-4176
Telephone:  787-726-0077

By: /s/ Michael R. Rochelle Texas
Bar # 17026700
Buzz.rochelle@romclaw.com
Kevin D. McCullough
Texas Bar # 00788005
kdm@romclaw.com
Kathryn G. Reid Texas
Bar # 24068126
kreid@romclaw.com
Shannon Thomas
Texas Bar # 24088442
sthomas@romclaw.com
**Rochelle McCullough LLP**
325 North St. Paul, Ste. 4500
Dallas, Texas 75201
Telephone 214-953-0182

Counsel for the Municipalities
Ad Hoc Committee

*mittee of creditors pursuant to section 1102(a)(2) of title*
*11.*

- 24 -