**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNIVERSIDAD DE PUERTO RICO<br><br>                Plaintiff,<br><br>     v.<br><br>VOYA INSTITUTIONAL TRUST COMPANY,<br><br>             Defendant. | **Civil No.** _____ |

**EXHIBIT A**

**TO THE NOTICE OF REMOVAL**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| UNIVERSIDAD DE PUERTO RICO | |
| | CIVIL NUM.: |
| Demandante, | |
| v. | |
| | SOBRE: |
| VOYA INSTITUTIONAL TRUST COMPANY, | |
| | INJUNCTION PRELIMINAR |
| Demandado. | INJUNCTION PERMANENTE |

## DEMANDA JURADA

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante, **Universidad de Puerto Rico** (en adelante la "UPR"), por conducto de la representación legal que suscribe, y muy respetuosamente expone y solicita:

### JURISDICCION

1.      Este Honorable Tribunal tiene jurisdicción para entender en la controversia del caso en autos en virtud de las disposiciones del Artículo 5.001de la Ley  Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. sec. 25(a); de las Reglas 56 y 57 de Procedimiento Civil de 2009, 32 L.P.R.A Ap. V, R. 56.1 y 57, y de los artículos 675-687 del Código de Enjuiciamiento Civil, 32 L.P.R.A. §§ 3521-5333.

### COMPETENCIA

2.      Este Honorable Tribunal tiene competencia para entender en este asunto en virtud de lo dispuesto por el Artículo 5.003 de la Ley de la Judicatura, *supra*, según enmendada, 4 L.P.R.A. sec. 25(e), y de las Reglas 3.2 y 3.4 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 3.2 y R. 3.4.

### LAS PARTES

3.      La demandante UPR es una corporación pública establecida al amparo de la Ley Núm. 1 de 20 de enero de 1966, conocida como la Ley de la Universidad de Puerto Rico, 18 L.P.R.A. § 601 *et seq.*, que se encarga de aspectos relacionados con la educación a través de una Junta de Gobierno. La dirección física de las oficinas centrales de la UPR es Calle Flamboyán, Jardín Botánico Sur, Río Piedras, Puerto Rico 00936-6239. La dirección postal y el número de teléfono de

la UPR son los siguientes: Administración Central, Universidad de Puerto Rico, 1187 Calle Flamboyán, San Juan PR 00926-1117; 787-250-0000.

4.      La demandada Voya Institutional Trust Company ("Voya") es una corporación organizada al amparo de las leyes del estado de Connecticut. Hasta el 26 de julio de 2016 Voya actuó como fiduciario o *Trustee* del Plan de Compensación Diferida No Cualificado del Recinto de Ciencias Médicas (el "Plan"). Voya mantiene contactos mínimos en la jurisdicción de Puerto Rico toda vez que: (i) vino a hacer negocios con la UPR y con otros clientes en Puerto Rico; (ii) los contratos de servicios prestados por Voya fueron suscritos en Puerto Rico por la UPR; y (iii) Voya empleó personal localmente para proveerle servicios a la UPR. La dirección postal y el número de teléfono de Voya son los siguientes: Voya Institutional Trust Company, One Orange Way, C4R, Windsor, CT 06095-4774; 1-877-250-7171.

## TRASFONDO

5.      En 1985 la UPR estableció el Plan para beneficio exclusivo de los miembros de la facultad del Recinto de Ciencias Médicas que son elegibles a participar en el mismo. (Ver Exhibit I: Plan de Compensación Diferida del Recinto de Ciencias Médicas de la UPR.)

6.      El Plan le permite a los empleados elegibles diferir el recibo de parte de su compensación a una fecha futura, que puede ser la fecha de terminación de empleo o la de jubilación del participante.

7.      El dinero correspondiente a la compensación diferida que la UPR le entregaba a Voya era invertido por ésta cuando era *Trustee*, siguiendo las instrucciones de los participantes, en fondos mutuos y otros vehículos de inversión provistos para ese propósito por Voya Financial y/o sus subsidiarias.

8.      A su vez, Voya Financial y/o sus subsidiarias fungieron como los *record-keepers* del Plan manteniendo al día la información de las cuentas de cada participante del Plan.

9.      Voya, entonces llamada ING National Trust, suscribió el 17 de septiembre de 2013 dos contratos con la UPR conocidos como *Trust Agreements* mediante los cuales los fondos custodiados e invertidos por Voya Financial y/o sus subsidiarias fueron fideicomitidos bajo dos *Rabbi Trusts* creados conforme a las leyes del estado de Connecticut. (Ver Exhibits II y III: Trust Agreements.) Por información y creencia, los *Trust Agreements* son o pueden ser considerados

como fideicomisos al amparo de las leyes del estado de Connecticut.[1]

10.    ING National Trust (ahora Voya) fue designado por la UPR como *Trustee* o fiduciario bajo dichos *Rabbí Trusts*.

11.    La sección 10(b) de ambos *Trust Agreements* provee que la UPR puede remover de su puesto a los fiduciarios o *Trustees*, siempre que dicha remoción sea notificada con sesenta (60) días de antelación o un período menor, si la fecha más próxima es aceptada por el *Trustee*.

**HECHOS**

12.    En el ejercicio de sus derechos contractuales, el 27 de mayo de 2016 la UPR envió una notificación a Voya mediante la cual le informó que ésta estaba siendo removida de su puesto como *Trustee* del Plan. (Ver Exhibit IV: <u>Carta Remoción de Voya como Trustee</u>.)

13.    El 31 de mayo de 2016 la UPR envió una segunda notificación a Voya en la cual le informó nuevamente que había sido removida de su puesto como *Trustee* del Plan. (Ver Exhibit V: <u>2da Carta Remoción de Voya como Trustee</u>.)

14.    Tanto en la primera como en la segunda notificación enviada por la UPR a Voya, en las cuales se le notificó su remoción como *Trustee* del Plan, se le indicó a ésta lo siguiente:

> *[T]he University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the Trust effective May 31, 2016. If the effective date of May 31, 2016 is not acceptable to Voya Institutional Trust Company, then the University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the University of Puerto Rico Deferred Compensation Plan effective July 26, 2016. The University of Puerto Rico will communicate the name and address of the Successor Trustee before the effective date of the removal with instructions for immediate transfer of all assets held in trust to the Successor Trustee.*

15.    El 19 de agosto de 2016 la UPR envió a Voya copias en español y en inglés de la Certificación Núm. 138 (2015-2016) de la Junta de Gobierno de la UPR en la que reiteró a Voya, por tercera ocasión en un espacio de tres meses, su remoción como *Trustee* del Plan y, además, le informó de la designación de los miembros de la Junta de Gobierno de la UPR como los nuevos fiduciarios de los *Rabbi Trusts* (*Successor Trustees*). (Ver, Exhibit VI: <u>Envío de la Certificación Núm. 138 (2015-2016)</u>.)

16.    A pesar de que la UPR, como fideicomitente o *Settlor*, le ha notificado a Voya en tres ocasiones que ésta ya no es el fiduciario o *Trustee* del Plan, así como a pesar de que le ha ordenado que transfiera la totalidad de los activos fideicomitidos y bajo su custodia, Voya se ha negado a transferir los activos del Plan.

---

[1] Ello es así aún cuando los *Trust Agreements* no cumplan con las formalidades que exigen las leyes de Puerto Rico para ser considerados como fideicomisos en nuestra jurisdicción.

17.     Al negarse a cumplir con las órdenes provistas por la UPR como *Settlor* del Plan, Voya impide ilegalmente que la UPR pueda ejercer sus funciones como fideicomitente del *Rabbi Trust*, causándole así daños irreparables.

18.     Entre los daños irreparables que es inminente que sufra la UPR, en particular su Recinto de Ciencias Médicas, está el que los profesores de dicho Recinto renuncien a sus funciones afectando así las labores académicas de ese Recinto.  Como cuestión de hecho, al día de hoy han renunciado profesores por motivo de la situación provocada por el incumplimiento de Voya con su obligación de transferir los activos del Plan. De ocurrir renuncias adicionales de los profesores del Recinto de Ciencias Médicas, la UPR enfrentaría serios problemas en el ofrecimiento a los estudiantes y residentes de la Escuela de Medicina del Recinto de Ciencias Médicas pues el reclutamiento de nuevos profesores en esta área es de por sí muy difícil.

19.     Se prevé que esas renuncias adicionales ocurrirán pues los profesores ven la jubilación como el primer paso para solicitar el retiro de los fondos que retiene Voya. Los miembros de la facultad de la Escuela de Medicina del Recinto de Ciencias Médicas han aportado gran parte de sus ingresos en dicho Plan y cuentan con ese dinero para su retiro.  El temor a no poder tener acceso a ese dinero cuando más lo necesiten ha provocado gran ansiedad y frustración entre un sector considerable de los miembros de la facultad de la Escuela de Medicina.  De materializarse las renuncias adicionales de profesores, la Escuela de Medicina se vería sumamente afectada pues resulta sumamente difícil reclutar personal docente con las especialidades indicadas para proveer la educación a los estudiantes y residentes.

20.     El momento es crucial y definitivo, pues el Recinto de Ciencias Médicas está a poco más de un mes para recibir la visita de la agencia acreditadora del programa de Doctor en Medicina (enero 2017).  Lo peor que le puede pasar a la Escuela de Medicina es que el grupo de evaluadores entreviste a una facultad frustrada y en proceso de renunciar como consecuencia del incumplimiento de Voya con su obligación de transferir los activos del Plan, conducta que amenaza y pone en riesgo la acreditación del único programa de Doctor en Medicina que existe en una institución pública en Puerto Rico y del más prestigioso en el país.

21.     A sabiendas de que ya no es el fiduciario o *Trustee* del Plan, y a sabiendas de que no posee autoridad para ello, Voya le ha causado daños y pérdidas irreparables al *Rabbi Trust* al utilizar parte de la compensación diferida por los participantes del Plan, que fue fideicomitida en los *Rabbi Trusts* del Plan, para sufragar los gastos legales relacionados a una demanda incoada por Voya en

contra de la UPR en las cortes del estado de New York,[2] demanda que fue desestimada por dicho foro por falta de jurisdicción.

22.    A sabiendas de que ya no es el fiduciario o *Trustee* del Plan, y a sabiendas de que no posee autoridad para ello, al presente Voya continúa causándole daños irreparables a la parte demandante al utilizar parte de la compensación diferida por los participantes del Plan, que fue fideicomitida en los *Rabbi Trusts* del Plan, para sufragar los gastos legales de una demanda que presentó en contra de la UPR en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico.[3]

23.    Las actuaciones ilegales de Voya antes descritas le están causando y seguirán causándole daños irreparables a la parte demandante.

## CAUSA DE ACCION

24.    Se incorporan y se hacen formar parte de esta causa de acción todas las alegaciones anteriores contenidas en los párrafos 1 al 23.

25.    Este Honorable Tribunal tiene facultad para obligar a una persona a que se abstenga de hacer, o de permitir que se haga por otras personas bajo su control, determinada cosa que infrinja o perjudique el derecho de otras personas. Regla 57 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 57.

26.    Además, el Artículo 677 del Código de Enjuiciamiento Civil dispone en su inciso (7) que puede concederse un *injunction* "cuando la obligación naciere de un fideicomiso." Véase, 32 L.P.R.A. sec. 3523. En esos casos no se requiere que la parte que solicita que se expida un *injunction* establezca que sufrirá un daño irreparable. Ello no obstante, en este caso las actuaciones ilegales de Voya le ocasionan un daño irreparable a la UPR.

27.    La obligación de Voya de cumplir con las órdenes impartidas por la UPR como *Settlor* del *Rabbi Trust* para que transfiera los fondos a los nuevos fiduciarios del Plan, de forma que estos puedan ejercer sus funciones como fiduciarios o *Successor Trustees* del *Rabbi Trust*, nace de los *Trust Agreements* que son fideicomisos al amparo de la ley de Connecticut.

28.    Los hechos antes expuestos, los cuales causan y continuarán causando un daño irreparable a la UPR, cumplen con todos los requisitos necesarios para que este Honorable Tribunal le ordene a Voya que cese y desista de sus prácticas ilícitas e injustas y de sus actuaciones contrarias

---

[2] Véase, In the Matter of the Application of Voya Institutional Trust Company, Index No. 154311/2016 (Supreme Court of the State of New York).

[3] Véase, Voya Institutional Trust Company v. University of Puerto Rico et al., Civil No. 16-2519 (JAG).

a la buena fe.

29.     La concesión del remedio de *injunction* aquí solicitado en nada perjudica a Voya pues ésta fue debidamente removida del puesto de fiduciario o *Trustee* del Plan por la UPR como fideicomitente del Plan.

30.     La demandante UPR no tiene otro remedio adecuado en ley para recuperar la posesión pacífica de los activos sujetos a los *Rabbi Trusts* y así poder ponerlos bajo el control y custodia de los nuevos fiduciarios o *Successor Trustees*.

31.     Los daños irreparables alegados en esta Demanda son continuos toda vez que Voya se niega constantemente a cumplir con las órdenes impartidas por la UPR como *Settlor* del *Rabbi Trust* e impide que los nuevos fiduciarios del Plan puedan ejercer sus funciones como fiduciarios o *Successor Trustees* del *Rabbi Trust*.

32.     **Toda vez que los fondos fideicomitidos en el *Rabbi Trust* constituyen salarios diferidos por empleados de la Universidad de Puerto Rico, este asunto está revestido de un alto interés público, razón por la cual merece la atención inmediata y sin dilación de este Honorable Tribunal.**

33.     La UPR ha obrado en todo momento con diligencia y buena fe al cursar las notificaciones requeridas a Voya en las cuales le anunció que fue removido como fiduciario del *Rabbi Trust*.

34.     Voya, por el contrario, ha actuado de mala fe y negligentemente al no reconocer a los *Successor Trustees* designados por la UPR e impedir la transferencia de los fondos fideicomitidos en el *Rabbi Trust* según se les ha ordenado.

**POR TODO LO CUAL**, la parte demandante ruega muy respetuosamente a este Honorable Tribunal que expida un *Injunction* Preliminar y un *Injunction* Permanente, conforme a las disposiciones del Artículo 677, inciso (7), del Código de Enjuiciamiento Civil, así como de la Regla 57 de Procedimiento Civil de Puerto Rico, ordenándole a Voya:

a.      cesar y desistir inmediatamente de cometer los actos ilegales antes descritos;

b.      reponer en el fondo del Plan la totalidad de los fondos fideicomitidos en los *Rabbi Trusts* que hayan sido utilizados sin autoridad, ilegal e impropiamente para incoar demandas en el estado de New York y en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico;

c.      abstenerse inmediatamente de utilizar los fondos fideicomitidos en los *Rabbi Trusts* para cualquier fin que no sea el de proveer beneficios a los participantes del Plan;

d.      transferir inmediatamente y sin dilación alguna la totalidad de los fondos o activos del

Plan fideicomitidos en los *Rabbi Trusts* a los fiduciarios o *Successor Trustees* legalmente designados;

      e.     transferir a los nuevos fiduciarios cualquier beneficio que Voya haya recibido a partir del 19 de agosto de 2016 por el manejo o tenencia de los activos del Plan; y

      f.     reembolsarle a la UPR los gastos, costas y honorarios de abogados en los que ha tenido que incurrir e incurrirá para obligar a Voya a cumplir con la obligación que tiene de transferir los activos del Plan a los nuevos fiduciarios.

      En San Juan, Puerto Rico, a 28 de diciembre de 2016.

FIDDLER, GONZALEZ & RODRIGUEZ, P.S.C.
P.O. Box 363507
San Juan, Puerto Rico 00936-3507
Tel: (787)759-3163; 759-3258
Fax: (787)250-7545

RICARDO L. ORTIZ-COLÓN          EDGARDO BARRETO-PAGÁN
RUA:  9495                    RUA: 14351

Doc. #1009374; 6873-002

A TRUE COPY
ATTEST:

PROCESS SERVER
RICH ZECHIEL

-7-

### JURAMENTO

Yo, Noel J. Aymat Santana, mayor de edad, casado, Rector del Recinto de Ciencias Médicas de la UPR, y vecino de San Juan, Puerto Rico, bajo el más solemne juramento declaro lo siguiente:

1.  Mi nombre y circunstancias son las anteriormente indicadas.

2.  Estoy autorizado a suscribir la presente declaración jurada en mi capacidad de Rector del Recinto de Ciencias Médicas de la UPR.

3.  Como Rector del Recinto de Ciencias Médicas de la UPR tengo conocimiento personal de los hechos contenidos en esta "Demanda Jurada", o he obtenido conocimiento de dichos hechos ya sea por mis funciones en la UPR o por el examen, revisión y/o análisis de documentos relacionados con el asunto de referencia.

4.  He leído cuidadosamente todos y cada uno de los hechos expuestos en la "Demanda Jurada" que antecede y hago constar que los mismos son ciertos según mi mejor saber, conocer y/o entender.

5.  Presto esta declaración jurada libre y voluntariamente sin que para ello haya mediado promesa o coacción de clase alguna.

**Y PARA QUE ASI CONSTE**, juro y suscribo este escrito en San Juan, Puerto Rico, hoy 28 de diciembre de 2016.

_____
Noel J. Aymat Santana

Affidavit Núm.: _195_

Jurado y suscrito ante mí por Noel J. Aymat Santana, de las circunstancias personales antes expuestas, en su capacidad oficial como Rector del Recinto de Ciencias Médicas de la UPR, a quien conozco personalmente o identifiqué mediante su Licencia de Conducir número ____n/a____, expedida por el Estado Libre Asociado de Puerto Rico.

En San Juan, Puerto Rico, hoy 28 de diciembre de 2016.

_____
NOTARIO PÚBLICO

CRISTINA I. PARÉS ALICEA
ABOGADA - NOTARIA

La Universidad de Puerto Rico
está exenta de la cancelación
de sello bajo 18 LPRA 612 (t)

A TRUE COPY
ATTEST:

PROCESS SERVER
RICH ZECHIEL

EXHIBIT I

AMERICAN  HOSPITAL  ASSOCIATION
MASTER  COMPENSATION  DEFERRAL  PLAN
(TAX-EXEMPT  ORGANIZATIONS)

## ARTICLE  I

### INTRODUCTION

The American Hospital Association ("AHA") Master Compensation Deferral Plan ("Prior Plan") established on April 11, 1975, is hereby amended and restated pursuant to the terms, conditions and provisions contained within this plan ("Plan"). The purpose of the Plan is to attract and retain certain officers, employees and contractors of AHA by permitting them to enter into deferral agreements with the AHA to provide for the payment of deferred compensation on retirement or separation from service as well as death benefits in the event of death before or after retirement.

The Plan is also available for use by any tax-exempt hospital, health care institution or allied hospital association which is a member of or affiliated with the AHA or any other similar tax-exempt entity approved by the AHA. Any such organization may adopt the Plan or amend and restate its Prior Plan by executing a Plan Joinder Agreement whereby such organization agrees to accept the provisions of the Plan as the provisions of its own plan of deferred compensation. Any tax-exempt hospital, health care institution or allied hospital association or tax-exempt entity approved by the AHA thus adopting the Plan shall be solely responsible for carrying out and fulfilling the obligations of the "Employer," as this term is defined herein. Once adopted, the Plan becomes the deferred compensation plan of the adopting Employer, and such Plan shall be maintained and operated independently from the AHA Plan or any other Plan adopted by a different Employer.

The *term* "Employer," wherever it shall appear in the Plan or accompanying Plan documents, shall mean such tax-exempt hospital, health care institution, allied hospital association or tax-exempt entity approved by the AHA which has adopted the Plan. As to any "Participant," as this term is defined herein, the term "Employer" shall mean that entity with which such Participant has executed a "Participation Agreement," as this term is defined herein and in accordance with Article IV. The term "Participant" shall mean the officer, employee or independent contractor who (or which) has executed a Participation Agreement with the Employer adopting the Plan.

Nothing contained in this Plan shall be deemed to constitute an employment contract or agreement for services between the Participant and the Employer nor shall it be deemed to give a Participant any right to be retained in the employ of, or under contract to, the Employer. Nothing herein shall be construed to modify the terms of any employment contract or agreement for services between a Participant and the Employer as this Plan is intended to be a supplement thereto.

## ARTICLE  II

### DEFINITIONS

2.01  *Compensation:* The total annual remuneration for employment or contracted services payable by the Employer that would be included in the federal gross income of the Participant but for the Participant's election to participate in the Plan.

2.02  *Deferred Compensation:* The amount of Compensation not yet earned, as designated in the Participation Agreement which is made a part hereof, which the Participant and the Employer mutually agree shall be deferred in accordance with the provisions of this Plan.

2.03  *Retirement:* Severance of the Participant's employment contract or agreement for services with the Employer on or after the Participant's 65th birthday by reason other than death whereby the Participant thereafter is not providing services for the Employer.

2.04  *Separation from Service:* Severance of the Participant's employment contract or agreement for services with the Employer prior to the Participant's 65th birthday by reason other than death whereby the Participant thereafter is not providing services to the Employer.

2.05  *Beneficiary:* Beneficiary or Beneficiaries of certain benefits of this Plan designated by the Participant in the Participation Agreement. Nothing herein shall prevent the Participant from designating more than one Beneficiary or primary and secondary Beneficiaries or changing the designation of a Beneficiary. If two or more or less than all designated Beneficiaries survive the Participant, payments shall be made equally to all such Beneficiaries, unless otherwise provided in the Beneficiary designation. Elections made by a Participant in the Participation Agreement shall be binding on any such Beneficiary or Beneficiaries.

2.06   *Eligible Person:* Any individual, corporation, partnership or other "person," as defined in the Internal Revenue Code of 1954, as amended ("Code") to include those appointed, elected or under contract, who performs services for the Employer as an employee or independent contractor for which Compensation is paid.

2.07   *Participant:* Any Eligible Person who fulfills the eligibility and enrollment requirements of Article IV.

2.08   *Participation Agreement:* A written agreement between the Employer and a Participant setting forth certain provisions and elections relative to the Plan, establishing the amount of Deferred Compensation and the manner and method of paying benefits under the Plan, incorporating the terms and conditions of the Plan and establishing the Participant's participation in the Plan.

2.09   *Plan Year:* The calendar year.

2.10   *Retirement Age:* The Participant's 75th birthday.

## ARTICLE III

## ADMINISTRATION

3.01   This Plan shall be administered by a committee ("Committee") of one or more individuals under contract to or in the employment of the Employer as appointed by the Employer. The Committee shall represent the Employer in all matters concerning the administration of this Plan. The Employer may remove a Committee member for any reason by giving such member ten (10) days' written notice and may thereafter fill any vacancies thus created.

3.02   The Committee shall have full power and authority: to adopt rules and regulations for the administration of the Plan, provided they are not inconsistent with the provisions of this Plan; to interpret, alter, amend, or revoke any rules and regulations so adopted; to enter into contracts on behalf of the Employer with respect to this Plan; to make discretionary decisions under this Plan such as called for in Article VIII; and to perform any and all administrative duties under this Plan.

3.03   A Committee member shall be eligible to participate in the Plan, but such a member shall not be entitled to participate in discretionary decisions under Article VII relating to such member's own participation in the Plan.

3.04   The Employer or the Committee acting on behalf of the Employer may contract with the IEtna Life Insurance and Annuity Company to issue to the Employer an annuity contract as described in Article V of the Plan and to provide services under the Plan for the convenience of the Employer including, but not limited, the enrollment of Eligible Persons as Participants on behalf of the Employer, the maintenance of individual or other accounts and other records, the making of periodic reports and the disbursement of benefits to Participants and Beneficiaries.

## ARTICLE IV

## PARTICIPATION IN THE PLAN

4.01   Any Eligible Person who performs services for the Employer for which Compensation is paid and who executes a Participation Agreement with the Employer is eligible to participate in the Plan; provided however, such Eligible Person must also meet any additional eligibility standards imposed by the Committee, to include, but not limited to, the requirements of the Employee Retirement Income Security Act of 1974, as amended ("EAISA") for unfunded plans of deferred compensation.

4.02   *Enrollment in the Plan:*

(a)   An Eligible Person may become a Participant and agree to defer Compensation not yet earned by entering into a Participation Agreement prior to the first day of the calendar month for which it is to become effective. With respect to a new Eligible Person, the Participation Agreement may be effective for Compensation not yet earned at any time during the first month such person becomes an Eligible Person provided the Participation Agreement was entered into on or before the first day on which the person became an Eligible Person.

(b)   At the time of entering into or modifying the Participation Agreement hereunder to defer Compensation or at the time of re-entry following a withdrawal under Article VII, a Participant must agree to defer the greater of an amount determined by reference to the minimum provided in the annuity contract described in Article V of the Plan or an amount specified by the Committee.

TE-2

(c) A Participant who agrees to defer Compensation may not modify such agreement to change the amount deferred except with respect to Compensation to be earned in a subsequent calendar month or except as provided in Article VII hereof with respect to withdrawals; provided however, notice of such modification must be given prior to the beginning of the calendar month for which such modification is to be effective.

(d) A Participant may at any time revoke the Participation Agreement to defer Compensation with respect to any calendar month, and the Participant's full Compensation will be thereupon restored in the month subsequent to the effective date of such revocation; provided however, the Participant must notify the Committee in writing of such revocation prior to the beginning of the calendar month for which such revocation is to be effective. However, amounts previously deferred shall be paid only as provided in this plan.

(e) A Participant who has withdrawn from the Plan, as set forth in Article VII, or a Participant who has revoked the Participation Agreement, as set forth in subsection (d) above, or a Participant who returns to perform services for the Employer after a Separation from Service, may again become a Participant in the Plan and agree to defer Compensation not yet earned by entering into a new Participation Agreement prior to the first day of the calendar month for which it is to become effective.

## ARTICLE V

## CALCULATION OF BENEFITS

5.01   The amount of any benefit payment to a Participant or Beneficiary made pursuant to this Plan shall be determined by the value at the time of such payment of the annuity contract described below in accordance with elections in the Participation Agreement and the provisions of the Plan:

(a) An amount equal to the amount which would have been payable to the Employer under an annuity contract issued by the JEtna Life Insurance and Annuity Company ("Annuity Contract") with the Participant included as the annuitant thereunder, and had the manner and method of payment selected been as specified in the Participation Agreement, and had the time of commencement of such payment selected been as provided in the Plan pursuant to elections made in the Participation Agreement, and had the premium been equal to the Participant's Deferred Compensation as if such Deferred Compensation had been applied as a premium to such Annuity Contract within a reasonable time subsequent to the actual deferral and as specified in the Participant's Participation Agreement.

5.02   The Employer at its discretion may acquire the Annuity Contract and invest amounts of Deferred Compensation in the Annuity Contract in order to provide a fund from which it can satisfy its obligation to make benefit payments pursuant to this Plan. Any Annuity Contract so acquired for the convenience of the Employer shall be the sole and exclusive property of the Employer with the Employer named as owner and beneficiary; provided further, such Annuity Contract shall not be held in trust or collateral security for the benefit of any Participant or Beneficiary.

5.03   All amounts of Compensation deferred under this Plan, all property and rights which may be purchased by the Employer with such amounts and all income attributable to such amounts, property or rights to property shall remain the sole property and rights of the Employer without being restricted by the provisions of this Plan, subject only to the claims of the Employer's general creditors. The obligation of the Employer under this Plan is purely contractual and shall not be funded or secured in any way.

5.04   The Employer shall be liable to pay benefits under this Plan only to the extent of amounts that would have been available under the Annuity Contract as measured by elections made in the Participation Agreement, and the Employer shall not be responsible for the investment or performance results of such Annuity Contract. Furthermore, if the Annuity Contract is so acquired to measure benefits payable under this Plan, the value of any benefit shall be determined by the actual value of the Annuity Contract at the time of a benefit payment unaffected by any independent or arbitrary standard of calculation with respect to such Annuity Contract.

ARTICLE   VI

BENEFITS

GENERAL

6.01   *General Benefit Terms:*

    (a)   Benefit payments to a Participant or Beneficiary shall be made according to the manner and method of payment as elected in the Participation Agreement, which election may be changed by a Participant or a Beneficiary as appropriate at any time prior to the commencement of such benefit payments pursuant to the execution of a revised Participation Agreement.

    (b)   In the absence of an election in the Participation Agreement as to the manner and method of such benefit payments as provided in Section 6.01(a), the Employer shall make monthly payments on a fixed basis to the Participant or Beneficiary as a continuous lifetime annuity with one hundred twenty (120) payments guaranteed.

    (c)   At the time benefits commence the present value of all payments to be made to a Participant must exceed one-half of the present value of the total payments to be made to the Participant and the Beneficiary as if no Beneficiary were designated based on the life expectancy of the Participant according to the mortality tables of /Etna Life Insurance and Annuity Company.

    (d)   Benefit payments to a Participant or Beneficiary shall commence at the time provided in the Plan, subject to an election by the Participant or Beneficiary as appropriate, prior to the time such benefits first become payable, to defer the beginning of such payments to a later date as allowed by the Plan and pursuant to the Participation Agreement.

    (e)   For purposes of interpreting the provisions of the Plan, the Committee shall only consider a Participation Agreement signed by the Participant or Beneficiary as appropriate and submitted to the Committee.

6.02   *Benefits Upon Retirement:* Beginning no earlier than thirty-one (31) days and no later than sixty (60) days following the Participant's Retirement, the Employer shall begin benefit payments to the Participant; provided however, the Participant may elect prior to the time such benefits become payable to defer the beginning of any portion of such payments to a later date not later than the Retirement Age as provided in the Participation Agreement.

6.03   *Benefits Upon Separation from Service:*

    (a)   If, upon Separation from Service, the Participant continues to receive remuneration for employment or contracted services and such remuneration is deemed by the Committee to be substantially equivalent to the Participant's Compensation, benefit payments shall be delayed until the Participant attains age 65 at which time benefits shall be payable according to the terms of Section 6.02 of the Plan as if Retirement occurred at age 65.

    (b)   If, upon Separation from Service, the Participant does not satisfy the provisions of 6.03(a), benefit payments shall not be deferred but shall rather commence no earlier than thirty-one (31) days and no later than sixty (60) days following Separation from Service. However, the Participant may elect prior to the time such benefits become payable to defer the beginning of any portion of such payments to a later date not later than the Retirement Age as provided in the Participation Agreement.

6.04   *Benefits Upon Death After Commencement of Benefits:*

    (a)   Should the Participant die at any time after benefit payments have commenced, the Employer shall commence payment to the Beneficiary of the balance remaining of such payments within thirty (30) days of receipt of satisfactory proof of death of the Participant and according to the manner and method selected by the Participant in the Participation Agreement.

    (b)   If no Beneficiary is designated as provided in Section 2.05 or if no Beneficiary survives the Participant for a period of thirty (30) days, the Employer shall pay to the estate of the Participant a single lump sum amount equal to the current value of such remaining payments. If a Beneficiary does not survive the period after the Participant's death during which such payments to the Beneficiary are to be made, the Employer shall pay to the estate of that Beneficiary a single lump sum amount equal to the current value of such remaining payments to that Beneficiary.

6.05   *Benefits Upon Death Prior to Commencement of Benefits:*

(a)   Should the Participant die at any time before benefit payments have commenced, the Employer shall commence benefit payments to the Beneficiary no earlier than sixty-one (61) days and no later than ninety (90) days subsequent to the Participant's death, subject to satisfactory proof of death of the Participant and according to the manner and method provided in the Participation Agreement or as selected by the Beneficiary pursuant to a revised Participation Agreement submitted to the Committee prior to the commencement of such benefit payments.

(b)   However, at the discretion of the Employer the Beneficiary may elect within the sixty (60) day period subsequent to the death of the Participant to defer the beginning of such payments to a later date not later than the date the Participant would have attained Retirement Age. The Beneficiary may also elect, prior to the date when such deferred benefits are to commence, pursuant to Section 6.05(b) of the Plan, the manner and method of benefit payments as allowed under the Plan.

(c)   If no Beneficiary is designated as provided in Section 2.05 or if no Beneficiary survives the Participant for a period of thirty (30) days, the Employer shall pay to the estate of the Participant a single lump amount equal to the current value of any remaining payments. If a Beneficiary does not survive the period after the Participant's death during which such payments to the Beneficiary are to be made, then the Employer shall pay to the estate of that Beneficiary a single lump sum amount equal to the current value of such remaining payments to that Beneficiary.

## ARTICLE VII

## WITHDRAWALS

7.01   In the case of an unforeseeable emergency prior or subsequent to the commencement of benefit payments, a Participant may apply to the Committee for withdrawal of an amount reasonably necessary to satisfy the emergency need. If an application for emergency withdrawal is approved by the Committee, the withdrawal will be effective at the later of the date specified in the Participant's application or the date of approval by the Committee, and the approved amount shall be payable in a lump sum within thirty (30) days of such effective date or in some other manner consistent with emergency need as determined by the Committee.

7.02   For the purposes of this Plan, the term "unforeseeable emergency" means a severe financial hardship to the Participant resulting from a sudden and unexpected illness or accident of the Participant or of a dependent (as defined in the Code) of the Participant, loss of the Participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant. Withdrawals for foreseeable expenditures normally budgetable, such as a down payment on a home or purchase of an auto or college expenses, will not be permitted. The Committee shall not permit withdrawal for unforeseeable emergency to the extent that such hardship is or may be relieved:

(1)   through reimbursement of compensation by insurance or otherwise;

(2)   by liquidation of the Participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship; or

(3)   by cessation of deferrals under the Plan.

7.03   In no event shall the amount of a withdrawal for an unforeseeable emergency exceed the total amount of benefits which would have been available to the Participant at the time of withdrawal. Notwithstanding any other provision of this Plan, if a Participant makes a withdrawal hereunder, the value of benefits under the Plan shall be appropriately reduced to reflect such withdrawal, and the remainder of any benefits shall be payable in accordance with otherwise applicable provisions of the Plan.

## ARTICLE VIII

## LEAVE OF ABSENCE

A Participant on an approved leave of absence with or without Compensation may continue to participate in the Plan subject to all the terms and conditions of the Plan; provided further, Compensation may be deferred for such Participant if such Compensation continues while the Participant is on an approved leave of absence.

## ARTICLE IX

### NON-ASSIGNABILITY CLAUSE

Neither the Participant nor any other person shall have any right to commute, sell, assign, pledge, transfer or otherwise convey or encumber the right to receive any payments hereunder, which payments and rights thereto are expressly declared to be unassignable and non-transferable. Nor shall any unpaid benefits be subject to attachment, garnishment or execution for the payment of any debts, judgments, alimony or separate maintenance owed by the Participant or any other person or be transferrable by operation of law in the event of bankruptcy or insolvency of the Participant or any other person.

## ARTICLE X

### AMENDMENT OR TERMINATION OF PLAN

10.01  The Employer may terminate or amend the provisions of this Plan at any time; provided however, that no termination or amendment shall affect the rights of Participants or their Beneficiaries to the receipt of payment of benefits to the extent of any Compensation deferred before the time of the termination or amendment, as adjusted for investment experience under the Annuity Contract prior to or subsequent to the amendment or termination.

10.02  Upon termination of the Plan, the Participants in the Plan will be deemed to have withdrawn from the Plan as of the date of such termination. The Participant's full Compensation on a non-deferred basis will be thereupon restored, and the Employer shall pay such benefit or benefits as otherwise provided by and according to the terms of the Plan.

## ARTICLE XI

### DISCLAIMER

In making this Plan available for Employers and their respective Participants, the AHA does so solely for their accommodation. As to such Employers and their respective Participants, AHA makes no representations or assurances and assumes no responsibility as to the success, solvency, compliance with state and federal securities laws and regulations or state and federal tax consequences with respect to the Plan or participation therein. It shall be the responsibility of such Employers and their respective Participants to determine such issues or any other pertinent issues to their own satisfaction.

## ARTICLE XII

### APPLICABLE LAW

With respect to the AHA and its Participants, this Plan shall be construed under the law of the State of Illinois. With respect to Employers adopting the Plan, the Plan shall be construed under the laws of the state of the adopting Employer.

IN WITNESS WHEREOF, the AHA has caused this Plan to be signed and attested to by its duly authorized officers on the 1st day of June, 1983.

ATTEST:                                              AMERICAN HOSPITAL ASSOCIATION

Title:  Assistant Secretary                          Title:   Secretary-Treasurer

TE-6

EXHIBIT II

## TRUST UNDER THE UNIVERSITY OF PUERTO RICO DEFERRED COMPENSATION PLAN

(a) This agreement made this  17  day of Sept , 2013,  by and between The University of Puerto Rico (VK8236)  (Employer) and **ING National Trust** (Trustee);

(b) WHEREAS, Employer has adopted a nonqualified deferred compensation Plans(s) as listed under Appendix A.

(c) WHEREAS, Employer has incurred or expects to incur liability under the terms of such Plan(s) with respect to the individuals participating in such Plan(s);

(d) WHEREAS, Employer wishes to establish a Trust (hereinafter called "Trust") and to contribute to the Trust assets that shall be held therein, subject to the claims of Employer's creditors in the event of Employer's Insolvency, as herein defined, until paid to Plan participants and their beneficiaries in such manner and at such times as specified in the Plan(s);

(e) WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Plan(s) as an unfunded Plan maintained for the purpose of providing deferred compensation intention of the parties that this Trust Shall constitute an unfunded arrangement;

(f) WHEREAS, it is the intention of Employer to make contributions to the Trust to provide itself with a source of funds to assist it in the meeting of its liabilities under the Plan(s);

NOW, THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be comprised, held and disposed of as follows:

### Section 1. ESTABLISHMENT OF TRUST.

 (a) Employer hereby deposits with Trustee in Trust such sums of money and such other property acceptable to the Trustee as shall from time to time be paid or delivered to the Trustee, which shall become the principal of the Trust to be held, administered and disposed of by Trustee as provided in this Trust Agreement.

(b) The Trust hereby established shall be irrevocable.

(c) The Trust is intended to be a grantor Trust, of which Employer is the grantor, within the meaning of subpart E, part I, subchapter J, chapter I, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

(d) The principal of the Trust, and any earnings thereon shall be held separate and apart from

1

Exhibit B

other funds of Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth. Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan(s) and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a) herein.

(e) Employer, in its sole discretion, may at any time, or from time to time, make additional deposits of cash or other property in Trust with Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust agreement.  Neither Trustee nor any Plan participant or beneficiary shall have any right to compel such additional deposits.

(f) The Trustee agrees to accept contributions that are paid or remitted to it by the Employer in accordance with the terms of this Trust Agreement.  Such contributions shall be in cash or in such other form as may be acceptable to the Trustee.  The Employer shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions, the transmittal of same to the Trustee, and compliance with any statute or regulation applicable to the contributions.

## Section 2. PAYMENTS TO PLAN PARTICIPANTS AND THEIR BENEFICIARIES.

(a) Employer shall deliver to Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Plan participant (and his or her beneficiaries), that provides a formula or other instructions acceptable to Trustee for determining the amounts so payable, the form in which such amount is to be paid (as provided for or available under the Plan(s)), and the time of commencement for payment of such amounts. Except as otherwise provided herein, Trustee shall make payments to the Plan participants and their beneficiaries in accordance with such Payment Schedule. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan(s) and shall pay amounts withheld to the appropriate taxing authorities or determine that such amounts have been reported, withheld and paid by Employer.

(b) The entitlement of a Plan participant or his or her beneficiaries to benefits under the Plan(s) shall be determined by Employer or such party as it shall designate under the Plan(s), and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan(s).

(c) Employer may make payment of benefits directly to Plan participants or their beneficiaries as they become due under the terms of the Plan(s). Employer shall notify Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to participants or their beneficiaries. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the Plan(s), Employer shall make

2

the balance of each such payment as it falls due. Trustee shall notify Employer where principal and earnings are not sufficient.

**Section 3. TRUSTEE RESPONSIBILITY REGARDING PAYMENTS TO TRUST BENEFICIARY WHEN EMPLOYER IS INSOLVENT.**

(a)  Trustee shall cease payment of benefits to Plan participants and their beneficiaries if the Employer is Insolvent. Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) Employer is unable to pay its debts as they become due, or (ii) Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

 (b)  At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of Employer under federal and state law as set forth below.

1.  The Board of Directors and the Chief Executive Officer of Employer shall have the duty to inform Trustee in writing of Employer's Insolvency. If a person claiming to be a creditor of Employer alleges in writing to Trustee that Employer has become Insolvent, Trustee shall determine whether Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

2.  Unless Trustee has actual knowledge of Employer's Insolvency, or has received notice from Employer or a person claiming to be a creditor alleging that Employer is Insolvent, Trustee shall have no duty to inquire whether Employer is Insolvent. Trustee may in all events rely on such evidence concerning Employer's solvency as may be furnished to Trustee and that provides Trustee with a reasonable basis for making a determination concerning Employer's solvency.

3.  If at any time Trustee has determined that Employer is Insolvent, Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of Employer with respect to benefits due under the Plan(s) or otherwise.

4.  Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after Trustee has determined that Employer is not Insolvent (or is no longer Insolvent).

(c) Provided that there are sufficient assets, if Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) hereof and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to Plan participants or their beneficiaries under the terms of the Plan(s) for the period of such discontinuance, less the aggregate amount of any payments made to Plan participants or their beneficiaries by Employer in lieu of the payments provided for hereunder during any such period

3

of discontinuance.

### Section 4. PAYMENTS TO EMPLOYER.

Except as provided in Section 3 hereof, after the Trust has become irrevocable, Employer shall have no right or power to direct Trustee to return to Employer or to divert to others any of the Trust assets before all payment of benefits have been made to Plan participants and their beneficiaries pursuant to the terms of the Plan(s).

### Section 5. INVESTMENT AUTHORITY.

(a) Employer has elected to invest the assets of the Plan by means of an investment program offered by ING Life Insurance and Annuity Company of its affiliates.

(b) The assets of the Trust shall be invested and reinvested among the investments selected by the Employer. Employer shall have sole responsibility for the investment and reinvestment of the assets of the Trust, except to the extent that the Plan permits participants to instruct Employer with respect to the investment of their individual account credits among investment options selected by Employer for the Plan. The Trustee shall have no duty or responsibility for (a) selecting or providing advice with respect to the selection of any investment options, (b) determining or reviewing any securities or other property purchased or (c) providing advice with respect to the purchase, retention, redemption, or sale of any securities or other property for the Trust. In the event Employer has selected particular investment options offered by ING into which Plan assets previously invested with another investment provider are to be placed (a procedure known as "mapping"), the Trustee shall bear no duty or responsibility for determining the suitability of the ING investment offerings selected for this purpose.

(c) The duties of the Trustee hereunder are as a directed trustee and the Trustee shall act solely in accordance with the instructions of Employer. Nothing in this Agreement is intended to give the Trustee any discretionary responsibility, authority or control with respect to the management or administration of the Plan or the management of Trust assets. Further, the Trustee is not a party to the Plan and has no duties or responsibilities other than those that may be expressly contained in this Agreement. In any case in which a provision of this Agreement conflicts with any provision in the Plan, this Agreement shall control.

(d) In administering the Trust, the Trustee shall be specifically authorized to:
- In accordance with authorized instructions, receive, hold and maintain custody of, and disburse Trust assets;
- Hold securities or other Trust property in book entry form or through another agent or nominee, including without limitation in an omnibus account arrangement;
- Collect income payable to and dividends or other distributions due to the Trust and sign any declarations, affidavits, and certificates of ownership required to collect income and principal payments;
- Collect proceeds from assets of the Trust that may mature or be called;

4

- Until authorized instructions are received, hold the assets of the Trust uninvested, or invest the assets of the Trust in bank accounts of any bank, and the Trustee may retain any earnings on such deposits as part of its compensation for services hereunder;
- Submit or cause to be submitted to Employer all information received by the Trustee regarding ownership rights pertaining to property held in the Trust;
- Make, execute and deliver any and all documents, agreements or other instruments in writing as is necessary or desirable for the accomplishment of any of the powers and duties in this Agreement; and
- Generally take any action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the fulfillment of its duties hereunder.

(e) In no event may Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by Employer, other than a de minimis amount held in common investment vehicles in which Trustee invests. All rights associated with assets of the Trust shall be exercised by Trustee or the person designated by Trustee, and shall in no event be exercisable by or rest with Plan participants except that voting rights with respect to Trust assets will be exercised by Employer.

(f) Employer shall have the right, at any time, and from time to time, in its sole discretion to substitute assets of equal fair market value for any asset held by the Trust.

### Section 6. DISPOSITION OF INCOME.

(a) During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

### Section 7. ACCOUNTING BY TRUSTEE.

Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions required to be made, including such specific records as shall be agreed upon in writing between Employer and Trustee. Within 30 days following the close of each calendar year and 30 days after the removal or resignation of Trustee, Trustee shall deliver to Employer a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be.

### Section 8. RESPONSIBILITY OF TRUSTEE.

(a) Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by Employer which is contemplated by, and in conformity with, the

5

terms of the Plan(s) or this Trust and is given in writing by Employer. In the event of a dispute between Employer and a party, Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b) If Trustee undertakes or defends any litigation arising in connection with this Trust, Employer agrees to indemnify Trustee against Trustee's costs, expenses and liabilities (including, without limitation, attorneys' fees and expenses) relating thereto and to be primarily liable for such payments. If Employer does not pay such costs, expenses and liabilities in a reasonably timely manner, Trustee may obtain payment from the Trust.

(c) Trustee may consult with legal counsel (who may also be counsel for Employer generally) with respect to any of its duties or obligations hereunder.

(d) Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations hereunder.

(e) Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein, provided, however, that if an insurance policy is held as an asset of the Trust, Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy.

(f) Notwithstanding any powers granted to Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.

## Section 9. COMPENSATION AND EXPENSES OF TRUSTEE.

(a) Employer shall pay all administrative and Trustee's fees and expenses. If not so paid, the fees and expenses shall be paid from the Trust.

(b) Trustee shall be entitled to compensation for services under this Agreement as set forth in the Fee Exhibit attached hereto and to reimbursement for expenses incurred by it in the discharge of its duties under this Agreement. Employer acknowledges that the Trustee may increase the amount of compensation on an annual basis with sixty (60) days' prior written notice to the Employer.

(c) The Trustee shall also be entitled to receive as part of its compensation any amounts earned under section 5 (d) related to earnings on deposits. Such earnings shall include earnings on uninvested cash relating to Plan contributions and earnings on uninvested cash pending distributions, or earnings on cash otherwise held uninvested as directed by Employer.

6

**Section 10. RESIGNATION AND REMOVAL OF TRUSTEE.**

(a) Trustee may resign at any time by written notice to Employer, which shall be effective 60 days after receipt of such notice unless Employer and Trustee agree otherwise.

(b) Trustee may be removed by Employer on 60 days notice or upon shorter notice accepted by Trustee.

(c) Upon resignation or removal of Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be completed within 60 days after receipt of notice of resignation, removal or transfer, unless Employer extends the time limit.

(d) If Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11 hereof, by the effective date of resignation or removal under paragraphs (a) or (b) of this section. If no such appointment has been made, Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

**Section 11. APPOINTMENT OF SUCCESSOR.**

(a) If Trustee resigns or is removed in accordance with section 10(a) or (b) hereof, Employer may appoint any third party, such as a bank trust department or other party that may be granted corporate Trustee powers under state law, as a successor to replace Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the Trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by Employer or the successor Trustee to evidence the transfer.

(b) The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing Trust assets, subject to sections 7 and 8 hereof. The successor Trustee shall not be responsible for and Employer shall indemnify and defend the successor Trustee from any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes successor Trustee.

(c) Any entity into which the Trustee may be merged or with which it may be consolidated, or any entity resulting from any merger or consolidation to which the Trustee is a party, or any entity succeeding to the trust business of the Trustee, shall become the successor of the Trustee hereunder, without the execution or filing of any instrument or the performance of any further act on the part of the parties hereto.

**Section 12. AMENDMENT OR TERMINATION.**

(a) The Trustee may amend this Agreement as necessary to comply with the provisions of applicable law and regulations. This Trust Agreement may be amended by a written instrument

7

executed by Trustee and Employer. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan(s) or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b) hereof.

(b) The Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s). Upon termination of the Trust any assets remaining in the Trust shall be returned to Employer.

(c) Upon written approval of participants or beneficiaries entitled to payment of benefits pursuant to the terms of the Plan(s), Employer may terminate this Trust prior to the time all benefit payments under the Plan(s) have been made. All assets in the Trust at termination shall be returned to Employer.

**Section 13. MISCELLANEOUS.**

(a) Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

(b) Benefits payable to Plan participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c) This Trust Agreement shall be governed by and construed in accordance with the laws of Connecticut.

(d) Until such time as the Trustee receives a written notice to the contrary with respect to a particular security, the Trustee may release the identity and the address of the Trust to the security issuer which requests such information pursuant to the Shareholder Communications Act of 1985 for the specific purpose of the direct communication between such security issuer and shareholder.

(e) All notices and other communications hereunder shall be in writing and shall be sufficient if delivered by hand or if sent by telefax or mail (including electronic mail), postage prepaid, addressed:

        (a)      If to the Trustee:

                Molly Garrett
                Vice President, ING Life Insurance and Annuity Company
                One Orange Way, C3N
                Windsor, CT 06095-4774

8

with a copy to:

J. Denise Jackson
President
ING National Trust
One Orange Way, C4R
Windsor, Connecticut 06095-4475

    (b)    If to the Employer:
DR. ANGEL R PAGAN, CHAIRMAN
DEFERRED COMPENSATION PLAN COMMITTEE (OFFICE A-744)
P.O. BOX 365067
SAN JUAN, PR 00936-5067

The parties may by like notice, designate any future or different address to which subsequent notices shall be sent.  Any notice shall be deemed given when received.

(f) Authority to Execute Agreement.  The Employer hereby certifies that it has the power and authority to enter into this Agreement on behalf of the Plan.  The person(s) signing below on behalf of the Employer as Authorized Parties warrant, as individuals, that each is an authorized to act on behalf of the Employer all signatures are genuine and the persons indicated are authorized to sign.

(g) Authorized Parties.  The Employer shall concurrently with the execution of this Agreement, furnish the Trustee with a written list of the names, signatures, and extent of authority of all persons authorized to direct the Trustee and otherwise act on behalf of the Employer under the terms of this Agreement as "Authorized Parties."  Such persons designated by the Employer to act on its behalf hereunder are "Authorized Parties".  The Trustee shall be entitled to rely on and shall be fully protected in acting upon directions, instructions, and any information provided by an Authorized Party until notified in writing by the Employer of a change of the identity or extent of authority of an Authorized Party.

(h) Authorized Instructions.  All directions and instructions to the Trustee from an Authorized Party ("Authorized Instructions") shall be in writing, transmitted by mail (including electronic mail) or by facsimile.  The Trustee shall be entitled to rely on and shall be fully protected in acting in accordance with all such directions and instructions which it reasonably believes to have been given by an Authorized Party and in failing to act in the absence thereof.

**Section 14. EFFECTIVE DATE.**

The effective date of this Trust Agreement shall be September 17, 2013.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the effective date set forth above.

9

UNIVERSITY OF
PUERTO RICO

By: _____

Name: Jose F Rodriguez Orengo

Title: Chancellor

ING National Trust

By: _____

Name: Andrew F. Levergne

Title: Vice President

10

## FEES PAYABLE TO TRUSTEE

In consideration for services rendered according to the terms of this Agreement, the Trustee shall be paid according to the following fee schedule:

$750 for each calendar year:          No explicit charge to the plan.  Included as part of compensation received by ING Life Insurance and Annuity Company for its performance of recordkeeping services

11

EXHIBIT III

**TRUST UNDER** THE UNIVERSITY OF PUERTO RICO **DEFERRED COMPENSATION PLAN**

(a) This agreement made this  17  day of  Sept, 2013,  by and between The University of
Puerto Rico (VFK095)(Employer) and **ING National Trust** (Trustee);

(b) WHEREAS, Employer has adopted a nonqualified deferred compensation Plans(s) as listed
under Appendix A.

(c) WHEREAS, Employer has incurred or expects to incur liability under the terms of such
Plan(s) with respect to the individuals participating in such Plan(s);

(d) WHEREAS, Employer wishes to establish a Trust (hereinafter called "Trust") and to
contribute to the Trust assets that shall be held therein, subject to the claims of Employer's
creditors in the event of Employer's Insolvency, as herein defined, until paid to Plan participants
and their beneficiaries in such manner and at such times as specified in the Plan(s);

(e) WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded
arrangement and shall not affect the status of the Plan(s) as an unfunded Plan maintained for the
purpose of providing deferred compensation intention of the parties that this Trust Shall
constitute an unfunded arrangement;

(f) WHEREAS, it is the intention of Employer to make contributions to the Trust to provide itself
with a source of funds to assist it in the meeting of its liabilities under the Plan(s);

NOW, THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be
comprised, held and disposed of as follows.

**Section 1. ESTABLISHMENT OF TRUST.**

 (a)  Employer hereby deposits with Trustee in Trust such sums of money and such other property
acceptable to the Trustee as shall from time to time be paid or delivered to the Trustee, which
shall become the principal of the Trust to be held, administered and disposed of by Trustee as
provided in this Trust Agreement.

(b) The Trust hereby established shall be irrevocable.

(c) The Trust is intended to be a grantor Trust, of which Employer is the grantor, within the
meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of
1986, as amended, and shall be construed accordingly.

(d) The principal of the Trust, and any earnings thereon shall be held separate and apart from

Exhibit C

other funds of Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth. Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan(s) and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a) herein.

(e) Employer, in its sole discretion, may at any time, or from time to time, make additional deposits of cash or other property in Trust with Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust agreement.  Neither Trustee nor any Plan participant or beneficiary shall have any right to compel such additional deposits.

(f) The Trustee agrees to accept contributions that are paid or remitted to it by the Employer in accordance with the terms of this Trust Agreement.  Such contributions shall be in cash or in such other form as may be acceptable to the Trustee.  The Employer shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions, the transmittal of same to the Trustee, and compliance with any statute or regulation applicable to the contributions.

## Section 2. PAYMENTS TO PLAN PARTICIPANTS AND THEIR BENEFICIARIES.

(a) Employer shall deliver to Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Plan participant (and his or her beneficiaries), that provides a formula or other instructions acceptable to Trustee for determining the amounts so payable, the form in which such amount is to be paid (as provided for or available under the Plan(s)), and the time of commencement for payment of such amounts. Except as otherwise provided herein, Trustee shall make payments to the Plan participants and their beneficiaries in accordance with such Payment Schedule. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan(s) and shall pay amounts withheld to the appropriate taxing authorities or determine that such amounts have been reported, withheld and paid by Employer.

(b) The entitlement of a Plan participant or his or her beneficiaries to benefits under the Plan(s) shall be determined by Employer or such party as it shall designate under the Plan(s), and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan(s).

(c) Employer may make payment of benefits directly to Plan participants or their beneficiaries as they become due under the terms of the Plan(s). Employer shall notify Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to participants or their beneficiaries. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the Plan(s), Employer shall make

2

the balance of each such payment as it falls due. Trustee shall notify Employer where principal and earnings are not sufficient.

### Section 3. TRUSTEE RESPONSIBILITY REGARDING PAYMENTS TO TRUST BENEFICIARY WHEN EMPLOYER IS INSOLVENT.

(a)  Trustee shall cease payment of benefits to Plan participants and their beneficiaries if the Employer is Insolvent. Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) Employer is unable to pay its debts as they become due, or (ii) Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

(b)  At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of Employer under federal and state law as set forth below.

1.  The Board of Directors and the Chief Executive Officer of Employer shall have the duty to inform Trustee in writing of Employer's Insolvency. If a person claiming to be a creditor of Employer alleges in writing to Trustee that Employer has become Insolvent, Trustee shall determine whether Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

2.  Unless Trustee has actual knowledge of Employer's Insolvency, or has received notice from Employer or a person claiming to be a creditor alleging that Employer is Insolvent, Trustee shall have no duty to inquire whether Employer is Insolvent. Trustee may in all events rely on such evidence concerning Employer's solvency as may be furnished to Trustee and that provides Trustee with a reasonable basis for making a determination concerning Employer's solvency.

3.  If at any time Trustee has determined that Employer is Insolvent, Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of Employer with respect to benefits due under the Plan(s) or otherwise.

4.  Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after Trustee has determined that Employer is not Insolvent (or is no longer Insolvent).

(c) Provided that there are sufficient assets, if Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) hereof and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to Plan participants or their beneficiaries under the terms of the Plan(s) for the period of such discontinuance, less the aggregate amount of any payments made to Plan participants or their beneficiaries by Employer in lieu of the payments provided for hereunder during any such period

3

of discontinuance.

**Section 4. PAYMENTS TO EMPLOYER.**

Except as provided in Section 3 hereof, after the Trust has become irrevocable, Employer shall have no right or power to direct Trustee to return to Employer or to divert to others any of the Trust assets before all payment of benefits have been made to Plan participants and their beneficiaries pursuant to the terms of the Plan(s).

**Section 5. INVESTMENT AUTHORITY.**

(a) Employer has elected to invest the assets of the Plan by means of an investment program offered by ING Life Insurance and Annuity Company of its affiliates.

(b) The assets of the Trust shall be invested and reinvested among the investments selected by the Employer. Employer shall have sole responsibility for the investment and reinvestment of the assets of the Trust, except to the extent that the Plan permits participants to instruct Employer with respect to the investment of their individual account credits among investment options selected by Employer for the Plan. The Trustee shall have no duty or responsibility for (a) selecting or providing advice with respect to the selection of any investment options, (b) determining or reviewing any securities or other property purchased or (c) providing advice with respect to the purchase, retention, redemption, or sale of any securities or other property for the Trust. In the event Employer has selected particular investment options offered by ING into which Plan assets previously invested with another investment provider are to be placed (a procedure known as "mapping"), the Trustee shall bear no duty or responsibility for determining the suitability of the ING investment offerings selected for this purpose.

(c) The duties of the Trustee hereunder are as a directed trustee and the Trustee shall act solely in accordance with the instructions of Employer. Nothing in this Agreement is intended to give the Trustee any discretionary responsibility, authority or control with respect to the management or administration of the Plan or the management of Trust assets. Further, the Trustee is not a party to the Plan and has no duties or responsibilities other than those that may be expressly contained in this Agreement. In any case in which a provision of this Agreement conflicts with any provision in the Plan, this Agreement shall control.

(d) In administering the Trust, the Trustee shall be specifically authorized to:
- In accordance with authorized instructions, receive, hold and maintain custody of, and disburse Trust assets;
- Hold securities or other Trust property in book entry form or through another agent or nominee, including without limitation in an omnibus account arrangement;
- Collect income payable to and dividends or other distributions due to the Trust and sign any declarations, affidavits, and certificates of ownership required to collect income and principal payments;
- Collect proceeds from assets of the Trust that may mature or be called;

4

- Until authorized instructions are received, hold the assets of the Trust uninvested, or invest the assets of the Trust in bank accounts of any bank, and the Trustee may retain any earnings on such deposits as part of its compensation for services hereunder;
- Submit or cause to be submitted to Employer all information received by the Trustee regarding ownership rights pertaining to property held in the Trust;
- Make, execute and deliver any and all documents, agreements or other instruments in writing as is necessary or desirable for the accomplishment of any of the powers and duties in this Agreement; and
- Generally take any action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the fulfillment of its duties hereunder.

(e) In no event may Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by Employer, other than a de minimis amount held in common investment vehicles in which Trustee invests. All rights associated with assets of the Trust shall be exercised by Trustee or the person designated by Trustee, and shall in no event be exercisable by or rest with Plan participants except that voting rights with respect to Trust assets will be exercised by Employer.

(f) Employer shall have the right, at any time, and from time to time, in its sole discretion to substitute assets of equal fair market value for any asset held by the Trust.

## Section 6. DISPOSITION OF INCOME.

(a) During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

## Section 7. ACCOUNTING BY TRUSTEE.

Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions required to be made, including such specific records as shall be agreed upon in writing between Employer and Trustee. Within 30 days following the close of each calendar year and 30 days after the removal or resignation of Trustee, Trustee shall deliver to Employer a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be.

## Section 8. RESPONSIBILITY OF TRUSTEE.

(a) Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by Employer which is contemplated by, and in conformity with, the

5

terms of the Plan(s) or this Trust and is given in writing by Employer.  In the event of a dispute between Employer and a party, Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b)  If Trustee undertakes or defends any litigation arising in connection with this Trust, Employer agrees to indemnify Trustee against Trustee's costs, expenses and liabilities (including, without limitation, attorneys' fees and expenses) relating thereto and to be primarily liable for such payments.  If Employer does not pay such costs, expenses and liabilities in a reasonably timely manner, Trustee may obtain payment from the Trust.

(c)  Trustee may consult with legal counsel (who may also be counsel for Employer generally) with respect to any of its duties or obligations hereunder.

(d)  Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations hereunder.

(e)  Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein, provided, however, that if an insurance policy is held as an asset of the Trust, Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy.

(f)  Notwithstanding any powers granted to Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.

## Section 9. COMPENSATION AND EXPENSES OF TRUSTEE.

(a)  Employer shall pay all administrative and Trustee's fees and expenses.  If not so paid, the fees and expenses shall be paid from the Trust.

(b)  Trustee shall be entitled to compensation for services under this Agreement as set forth in the Fee Exhibit attached hereto and to reimbursement for expenses incurred by it in the discharge of its duties under this Agreement.  Employer acknowledges that the Trustee may increase the amount of compensation on an annual basis with sixty (60) days' prior written notice to the Employer.

(c)  The Trustee shall also be entitled to receive as part of its compensation any amounts earned under section 5 (d) related to earnings on deposits. Such earnings shall include earnings on uninvested cash relating to Plan contributions and earnings on uninvested cash pending distributions, or earnings on cash otherwise held uninvested as directed by Employer.

6

**Section 10. RESIGNATION AND REMOVAL OF TRUSTEE.**

(a) Trustee may resign at any time by written notice to Employer, which shall be effective 60 days after receipt of such notice unless Employer and Trustee agree otherwise.

(b) Trustee may be removed by Employer on 60 days notice or upon shorter notice accepted by Trustee.

(c) Upon resignation or removal of Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be completed within 60 days after receipt of notice of resignation, removal or transfer, unless Employer extends the time limit.

(d) If Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11 hereof, by the effective date of resignation or removal under paragraphs (a) or (b) of this section. If no such appointment has been made, Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

**Section 11. APPOINTMENT OF SUCCESSOR.**

(a) If Trustee resigns or is removed in accordance with section 10(a) or (b) hereof, Employer may appoint any third party, such as a bank trust department or other party that may be granted corporate Trustee powers under state law, as a successor to replace Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the Trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by Employer or the successor Trustee to evidence the transfer.

(b) The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing Trust assets, subject to sections 7 and 8 hereof. The successor Trustee shall not be responsible for and Employer shall indemnify and defend the successor Trustee from any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes successor Trustee.

(c) Any entity into which the Trustee may be merged or with which it may be consolidated, or any entity resulting from any merger or consolidation to which the Trustee is a party, or any entity succeeding to the trust business of the Trustee, shall become the successor of the Trustee hereunder, without the execution or filing of any instrument or the performance of any further act on the part of the parties hereto.

**Section 12. AMENDMENT OR TERMINATION.**

(a) The Trustee may amend this Agreement as necessary to comply with the provisions of applicable law and regulations. This Trust Agreement may be amended by a written instrument

7

executed by Trustee and Employer. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan(s) or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b) hereof.

(b) The Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s). Upon termination of the Trust any assets remaining in the Trust shall be returned to Employer.

(c) Upon written approval of participants or beneficiaries entitled to payment of benefits pursuant to the terms of the Plan(s), Employer may terminate this Trust prior to the time all benefit payments under the Plan(s) have been made.  All assets in the Trust at termination shall be returned to Employer.

## Section 13. MISCELLANEOUS.

(a) Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

(b) Benefits payable to Plan participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c) This Trust Agreement shall be governed by and construed in accordance with the laws of Connecticut.

(d)  Until such time as the Trustee receives a written notice to the contrary with respect to a particular security, the Trustee may release the identity and the address of the Trust to the security issuer which requests such information pursuant to the Shareholder Communications Act of 1985 for the specific purpose of the direct communication between such security issuer and shareholder.

(e)  All notices and other communications hereunder shall be in writing and shall be sufficient if delivered by hand or if sent by telefax or mail (including electronic mail), postage prepaid, addressed:

      (a)     If to the Trustee:

          Molly Garrett
          Vice President, ING Life Insurance and Annuity Company
          One Orange Way, C3N
          Windsor, CT 06095-4774

8

with a copy to:

J. Denise Jackson
President
ING National Trust
One Orange Way, C4R
Windsor, Connecticut 06095-4475

(b)  If to the Employer:
DR. ANGEL R PAGAN, CHAIRMAN
DEFERRED COMPENSATION PLAN COMMITTEE - (OFFICE A-744)
P.O. BOX 365067
SAN JUAN, PR 00936-5067

The parties may by like notice, designate any future or different address to which subsequent notices shall be sent. Any notice shall be deemed given when received.

(f) Authority to Execute Agreement. The Employer hereby certifies that it has the power and authority to enter into this Agreement on behalf of the Plan. The person(s) signing below on behalf of the Employer as Authorized Parties warrant, as individuals, that each is an authorized to act on behalf of the Employer all signatures are genuine and the persons indicated are authorized to sign.

(g) Authorized Parties. The Employer shall concurrently with the execution of this Agreement, furnish the Trustee with a written list of the names, signatures, and extent of authority of all persons authorized to direct the Trustee and otherwise act on behalf of the Employer under the terms of this Agreement as "Authorized Parties." Such persons designated by the Employer to act on its behalf hereunder are "Authorized Parties". The Trustee shall be entitled to rely on and shall be fully protected in acting upon directions, instructions, and any information provided by an Authorized Party until notified in writing by the Employer of a change of the identity or extent of authority of an Authorized Party.

(h) Authorized Instructions. All directions and instructions to the Trustee from an Authorized Party ("Authorized Instructions") shall be in writing, transmitted by mail (including electronic mail) or by facsimile. The Trustee shall be entitled to rely on and shall be fully protected in acting in accordance with all such directions and instructions which it reasonably believes to have been given by an Authorized Party and in failing to act in the absence thereof.

## Section 14. EFFECTIVE DATE.

The effective date of this Trust Agreement shall be _September 17_, 2013.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the effective date set forth above.

9

UNIVERSITY OF
PUERTO RICO

By: _____

Name: JOSE F RODRIGUEZ

Title: ACTING CHANCELLOR


ING National Trust

By: _____

Name: Andrew F. Levesque

Title: Vice President


10

### FEES PAYABLE TO TRUSTEE

In consideration for services rendered according to the terms of this Agreement, the Trustee shall be paid according to the following fee schedule:

$750 for each calendar year:     No explicit charge to the plan.  Included as part of compensation received by ING Life Insurance and Annuity Company for its performance of recordkeeping services

11

## INCUMBENCY CERTIFICATE – AUTHORIZED PARTIES

UNIVERSITY OF PUERTO RICO, (the "Employer") hereby certifies that the persons whose names appear below are Authorized Parties to act on behalf of the Employer and the UNIVERSITY OF PUERTO RICO NON QUALIFIED DEFERRED COMPENSATION PLAN and to direct and instruct the Trustee through Authorized Instructions in accordance with Section 13(g) and Section 13(h) of the **TRUST UNDER** UNIVERSITY OF PUERTO RICO NON QUALIFIED DEFERRED COMPENSATION PLAN (the "Agreement") between the Employer and ING National Trust, as Trustee dated September 17 , 2013.

**NAME**                                      **SIGNATURE**

DR ANGEL R. PAGAN

DR. FRANCISCO LOPEZ

**EMPLOYER**

**BY:**

**TITLE:** Chancellor

**DATE:** 9/17/13

12

May 27, 2016

EXHIBIT IV

Molly Garrett
Vice President
Voya Retirement Insurance and Annuity Company
One Orange Way, C3N
Windsor, CT 06095-4774

Re:   **TRUST UNDER THE UNIVERSITY OF PUERTO RICO
      DEFERRED COMPENSATION PLAN;** *REMOVAL OF TRUSTEE*

Dear Mrs. Garrett:

As you know, the University of Puerto Rico (the "Employer") entered into two agreements with ING National Trust for ING National Trust to act as Trustee for the trust created in connection with the University of Puerto Rico Deferred Compensation Plan (the "Trust"). The two agreements are identified as VK8236 and VFK095. After the agreement effective date ING National Trust has been renamed Voya Institutional Trust Company.

Section 10(b) of both agreements indicates that the Trustee may be removed by the Employer on 60 days' notice or upon shorter notice accepted by Trustee. Section 10(d) of both agreements indicates that if the Trustee is removed, a successor shall be appointed by the effective date of removal.

This letter is to communicate that the University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the Trust effective May 31, 2016. If the effective date of May 31, 2016 is not acceptable to Voya Institutional Trust Company, then the University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the University of Puerto Rico Deferred Compensation Plan effective July 26, 2016.

The University of Puerto Rico will communicate the name and address of the Successor Trustee before the effective date of the removal with instructions for immediate transfer of all assets held in trust to the Successor Trustee.

Be advised that the University of Puerto Rico accepts no liability for any expenses incurred by Voya Institutional Trust in the further prosecution of the Petition after this notification or for any expense incurred by Voya Institutional Trust after the effective date of its removal as trustee. Any such expense will be the sole responsibility of Voya Institutional Trust and, as such, shall not be charged to the funds held in trust.

*Molly Garrett*
*Voya Retirement Insurance and Annuity Company*
*May 27, 2016*
*Page 2 of 2*

Given that the University of Puerto Rico has exercised its right to remove Voya Institutional Trust Company as Trustee for the Trust as of the effective date of removal, you are hereby instructed and directed to withdraw the Petition for Instruction filed pursuant to Article 77 of the New York Civil Practice Law and Rules ("CPLR") in the Supreme Court of the State of New York, County of New York (See Index No. 154311/2016) as soon as practicable.

The University of Puerto Rico has retained attorney Edgardo Barreto of Fiddler Gonzalez & Rodriguez, PSC and attorneys Leonardo Trivigno and James Gadsden of Carter Ledyard & Milburn, LLP as legal counsel to all matters related to the Trust. Please, have your legal representatives communicate with them in order to expedite the removal of Voya Institutional Trust Company.

Respectfully,

Uroyoán R. Walker Ramos, Ph.D.

Copies to:          J. Denise Jackson
                    President
                    Voya Institutional Trust Company
                    One Orange Way, C4R
                    Windsor, CT 06095-4774


Copies (Cont'd):    Edgardo Barreto Pagán, FGR
                    Leonardo Trivigno, CLM
                    James Gadsden, CLM
                    Juan Acosta Reboyras, UPR
                    Manuel E. Cámara Montull, UPR
                    Cristina Alcaraz Emmanuelli, UPR
                    Norberto González Pérez, UPR

El Presidente
de la
Universidad
de Puerto Rico

May 31, 2016

EXHIBIT V

Molly Garrett
Vice President
Voya Retirement Insurance and Annuity Company
One Orange Way, C3N
Windsor, CT 06095-4774



**Re:** **TRUST UNDER THE UNIVERSITY OF PUERTO RICO
DEFERRED COMPENSATION PLAN***; REMOVAL OF TRUSTEE*

Dear Mrs. Garrett:

As you know, the University of Puerto Rico (the "Employer") entered into two
agreements with ING National Trust for ING National Trust to act as Trustee for the
trust created in connection with the University of Puerto Rico Deferred Compensation
Plan (the "Trust"). The two agreements are identified as VK8236 and VFK095. After
the agreement effective date ING National Trust has been renamed Voya Institutional
Trust Company.

Section 10(b) of both agreements indicates that the Trustee may be removed by the
Employer on 60 days' notice or upon shorter notice accepted by Trustee. Section 10(d)
of both agreements indicates that if the Trustee is removed, a successor shall be
appointed by the effective date of removal.

This letter is to communicate that the University of Puerto Rico hereby removes Voya
Institutional Trust Company as Trustee for the trust created in connection with the
Trust effective May 31, 2016. If the effective date of May 31, 2016 is not acceptable
to Voya Institutional Trust Company, then the University of Puerto Rico hereby
removes Voya Institutional Trust Company as Trustee for the trust created in
connection with the University of Puerto Rico Deferred Compensation Plan effective
July 26, 2016.

The University of Puerto Rico will communicate the name and address of the
Successor Trustee before the effective date of the removal with instructions for
immediate transfer of all assets held in trust to the Successor Trustee.

Be advised that the University of Puerto Rico accepts no liability for any expenses
incurred by Voya Institutional Trust in the further prosecution of the Petition after this
notification or for any expense incurred by Voya Institutional Trust after the effective
date of its removal as trustee. Any such expense will be the sole responsibility of
Voya Institutional Trust and, as such, shall not be charged to the funds held in trust.

Jardín Botánico Sur
1187 Calle Flamboyán
San Juan, Puerto Rico
00926-1117
(787) 250-0000
Fax (787) 759-6917

Molly Garrett
Voya Retirement Insurance and Annuity Company
May 31, 2016
Page 2 of 2

Given that the University of Puerto Rico has exercised its right to remove Voya Institutional Trust Company as Trustee for the Trust as of the effective date of removal, you are hereby instructed and directed to withdraw the Petition for Instruction filed pursuant to Article 77 of the New York Civil Practice Law and Rules ("CPLR") in the Supreme Court of the State of New York, County of New York (See Index No. 154311/2016) as soon as practicable.

The University of Puerto Rico has retained attorney Edgardo Barreto of Fiddler González & Rodríguez, PSC and attorneys Leonardo Trivigno and James Gadsden of Carter Ledyard & Milburn, LLP as legal counsel to all matters related to the Trust. Please, have your legal representatives communicate with them in order to expedite the removal of Voya Institutional Trust Company.

Respectfully,

Uroyoán R. Walker Ramos, Ph.D.

Noel J. Ayma Santana, DMD, FAAPD, JD

Ángel Pagán, DMD, MPH

Copies to:              J. Denise Jackson
                        President
                        Voya Institutional Trust Company
                        One Orange Way, C4R
                        Windsor, CT 06095-4774

Copies (Cont'd):        Edgardo Barreto Pagán, FGR
                        Leonardo Trivigno, CLM
                        James Gadsden, CLM
                        Juan Acosta Reboyras, UPR
                        Manuel E. Cámara Montull, UPR
                        Cristina Alcaraz Emmanuelli, UPR
                        Norberto González Pérez, UPR

JUNTA DE GOBIERNO
UNIVERSIDAD DE PUERTO RICO

EXHIBIT VI

CERTIFICACIÓN NÚMERO 138
2015-2016

Yo, Gloria Butrón Castelli, secretaria de la Junta de Gobierno de la Universidad de Puerto Rico, CERTIFICO QUE:

La Junta de Gobierno de la Universidad de Puerto Rico, en su reunión ordinaria celebrada el 23 de mayo de 2016 y 27 de junio de 2016, habiendo considerado las recomendaciones del presidente de la Universidad de Puerto Rico, del rector del Recinto de Ciencias Médicas y de la Junta del Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas, aprobó lo siguiente:

1. Ratificar la terminación de *Voya Institutional Trust Company* como *"Trustees"* del *Rabbi-Trust* del Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas, según notificada el 27 de mayo de 2016.

2. Con efectividad inmediata, designar a los miembros de la Junta de Gobierno de la Universidad de Puerto Rico como los *"Successor Trustees"* del *Rabbi-Trust* del Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas.

3. Disolver el Plan de Compensaciones Diferidas No Cualificado del   Recinto de Ciencias Médicas y distribuir los fondos diferidos a sus participantes.

4. Autorizar al presidente de la Universidad de Puerto Rico y al Rector del Recinto de Ciencias Médicas a representar a la Universidad de Puerto Rico, ya sea individualmente o en conjunto, ante todo acto jurídico, otorgación de escrituras públicas o transacción de negocios necesaria para hacer cumplir las resoluciones aquí aprobadas, no más tarde del 31 de julio de 2016, o tan pronto sea administrativamente posible.

5. Dejar sin efecto las Certificaciones Número: 94 (1983-1984), 103 (1984-1985), 87 (1991-1992) y 92 (2011-2012).

Y PARA QUE ASÍ CONSTE, expido la presente Certificación, en San Juan, Puerto Rico, hoy 30 de junio de 2016.

Gloria Butrón Castelli
Secretaria

[Seal: University of Puerto Rico • 1903]
Board of Governors
University of Puerto Rico

Certification Number 138
2015-2016

I, Gloria Butrón Castelli, Secretary of the University of Puerto Rico Board of Governors, DO HEREBY CERTIFY THAT:

The University of Puerto Rico Board of Governors, in its regular meeting held on May 23, 2016 and June 27, 2016, having considered the recommendations of the President of the University of Puerto Rico, the Chancellor of the Medical Sciences Campus and the Medical Sciences Campus Nonqualified Deferred Compensation Plan Board, approved to:

1. Ratify the termination of the *Voya Institutional Trust Company* as "Trustees" of the Rabbi-Trust for the Medical Sciences Campus Nonqualified Deferred Compensation Plan, as notified on May 27, 2016.

2. Effective immediately, appoint the members of the University of Puerto Rico Board of Governors as "Successor Trustees" of the Rabbi-Trust for the Medical Sciences Campus Nonqualified Deferred Compensation Plan.

3. Dissolve the Medical Sciences Campus Nonqualified Deferred Compensation Plan and distribute the deferred funds among its participants.

4. Authorize the President of the University of Puerto Rico and the Chancellor of the Medical Sciences Campus to represent the University of Puerto Rico, either individually or jointly, in any legal act or in the execution of any public document or business transaction necessary to enforce the resolutions approved herein no later than July 31, 2016 or as soon as administratively possible.

5. Repeal Certifications Number: 94 (1983-1984), 103 (1984-1985), 87 (1991-1992), and 92 (2011-2012).

IN WITNESS WHEREOF, I issue the present certification, in San Juan, Puerto Rico, today, June 30, 2016.

[signature Gloria Butrón Castielli]
Gloria Butrón Castielli
Secretary

[Seal: University of Puerto Rico • 1903]