# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNIVERSIDAD DE PUERTO RICO<br><br>Plaintiff,<br><br>v.<br><br>VOYA INSTITUTIONAL TRUST COMPANY,<br><br>Defendant. | **Civil No. _____** |

**EXHIBIT A-1**

**TO THE NOTICE OF REMOVAL**

**COMMONWEALTH OF PUERTO RICO**
**FIRST INSTANCE TRIBUNAL**
**SUPERIOR COURT OF SAN JUAN**

UNIVERSIDAD DE PUERTO RICO

|  |  |
|---|---|
| | CIVIL NO: |
| Plaintiff, | |
| v. | MATTER: |
| VOYA INSTITUTIONAL TRUST COMPANY | |
| | PRELIMINARY INJUNCTION |
| Defendant | PERMANENT INJUNCTION |

**<u>VERIFIED COMPLAINT</u>**

Comes now plaintiff University of Puerto Rico (hereafter "UPR") through the undersigned counsel, and respectfully avers and requests:

**<u>JURISDICTION</u>**

1.      This Honorable Court has jurisdiction to entertain the instant controversy pursuant to the provisions of Article 5.001 of Act No. 201 of August 22, 2003, as amended, known as the Judiciary Law of the Commonwealth of Puerto Rico, 4 L.P.R.A. sec. 25(a); Rules 55 and 56 of the Code of Civil Procedure of 2009, 32 L.P.R.A. Ap. V, R. 56.1 and 57, and Articles 675-687 of the of the [original] Civil Procedure Code, 32 L.P.R.A. §§ 3521-5333.

**<u>VENUE</u>**

2.      Venue to entertain this matter lies is this Honorable Court pursuant to the provisions of Article 5.003 of the Judiciary Law, *supra*, as amended, 4 L.P.R.A. sec. 25(c), and Rules 3.2 and 3.4 of Civil Procedure, 32 L.P.R.A. Ap. V, R. 3.2 and 3.4.

**<u>THE PARTIES</u>**

3.      Plaintiff UPR is a public corporation organized under Act. No. 1 of January 20, 1966, known as the Law of the University of Puerto Rico, 18 L.P.R.A. §601 et seq., which handles matters pertaining to education through a Board of Governors.  The physical address of the central offices of the UPR is Calle Flamboyán Jardín Botánico Sur, Río Piedras, Puerto Rico

00936-6239.  Its postal address and telephone number are as follows:  Central Administration, University of Puerto Rico, 1187 Calle Flamboyán, San Juan, PR 00926-1117; 787-250-0000.

4.      Defendant Voya Institutional Trust Company ("Voya") is a corporation organized pursuant to the laws of the State of Connecticut.  Until July 26, 2016, Voya acted as fiduciary or trustee of the nonqualified deferred compensation plan of the Medical Sciences Campus (the "Plan").  Voya maintains minimum contacts with the jurisdiction of Puerto Rico, inasmuch as (i) it has engaged in business with the UPR and other clients in Puerto Rico; (ii) the services contracts were executed by the UPR in Puerto Rico; and (iii) Voya engaged the services of personnel locally to render services to the UPR.  Voya's postal address and telephone number are: Voya Institutional Trust Company, One Orange Way, C4R, Windsor, CT 06095-4774; 1-877-250-7171.

## BACKGROUND

5.      In 1985, the UPR established a plan for the exclusive benefit of the members of the faculty of the Medical Sciences Campus who are eligible for participation therein.  See, Exhibit 1: Deferred Compensation Plan of the UPR Medical Sciences Campus).

6.      The Plan allows eligible employees to defer receipt of part of their compensation to a future date, which date may be the employment termination date, or the participants' date of retirement.

7.      The funds corresponding to the deferred compensation which the UPR transferred to Voya were invested by Voya while it acted as Trustee, pursuant to the instructions of the participants, in mutual funds and other investment vehicles provided for such purposes by Voya Financial and/or its subsidiaries.

8.       At the same time, Voya Financial and/or its subsidiaries acted as Plan record-keepers maintaining each Plan participant's account information up-to-date.

9.      Voya, known at the time as ING National Trust, executed on September 17, 2013 two contracts with the UPR known as *Trust Agreements* whereby it held in trust the funds kept and invested by Voya Financial and/or its subsidiaries in two *Rabbi Trusts* created pursuant to the laws of the State of Connecticut.  (See, Exhibits II and III: Trust Agreements).   Upon information and belief, the *Trust Agreements* are, or maybe considered, as trusts pursuant to the laws of the State of Connecticut.[1]

10.      ING National Trust (now Voya) was designated by the UPR as *Trustee* or fiduciary under said *Rabbi Trusts*.

---

[1]      This is so even if the Trust Agreements may not comply with the formalities required by Puerto Rico law to be considered trusts in our jurisdiction.

11.     Section 10(b) of both *Trust Agreements* provides that the UPR may remove the fiduciaries or Trustees from their position, as long as such removal is notified 60 days in advance, or within such shorter period as is accepted by the Trustee.

## FACTS

12.      In the exercise of its contractual rights, on May 27, 2016 the UPR sent Voya notice through which it advised that Voya was being removed from its position as Trustee. (See. Exhibit IV, Letter Removing Voya as Trustee).

13.     On May 31, 2016, the UPR sent Voya a second notice in which it again informed that Voya had been removed from its position as Plan Trustee (See. Exhibit IV, 2nd Letter Removing Voya as Trustee).

14.      In both the first and second removal notices sent by the UPR to Voya, where it was informed that it was being removed as Plan Trustee, Voya was advised as follows:

> [T]he University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the Trust effective May 31, 2016. If the effective date of May 31, 2016 is not acceptable to Voya Institutional Trust Company, then the University of Puerto Rico hereby removes Voya Institutional Trust Company as Trustee for the trust created in connection with the University of Puerto Rico Deferred Compensation Plan effective July 26, 2016. The University of Puerto Rico will communicate the name and address of the Successor Trustee before the effective date of the removal with instructions for immediate transfer of all assets held in trust to the Successor Trustee.

15.      On August 19, 2016, the UPR sent Voya copies in Spanish and English of Certification No. 138 (2015-2016) from the Board of Governors of the UPR in which the UPR reiterated to Voya, for the third time in a period of three months, that it had been removed as *Trustee* of the Plan, and moreover, it informed of the designation of the members of the Board of Governors of the UPR as the new fiduciaries of the Rabbi Trusts (*Successor Trustees*).  (See, Exhibit VI: Remittance of Certification No. 138 (2015-2016).

16.      Even if the UPR as Settlor ["fideicomitente"] has notified Voya on three locations that Voya is not the fiduciary or trustee of the Plan any longer, and even though Voya has been holding assets in trust under its custody, Voya has refused to transfer the Plan assets.

17.      In refusing to comply with the orders provided by the UPR as Plan Settlor, Voya is illegally preventing the UPR from exercising its functions as Settlor of the Rabbi Trust, causing it irreparable damages.

18.      Among the irreparable damages that the UPR will imminently sustain, in particular its Medical Sciences Campus, is the fact that the professors of said campus will resign

3

from their positions as such, thus affecting the academic work at the Campus.  As a matter fact, to date professors have resigned in light of the situation caused by Voya's breach of its obligation to transfer Plan assets.  If further resignations by the Medical Sciences Campus professors ensue, the UPR would confront serious problems in offering services to students and residents of the School of Medicine of the Medical Sciences Campus, given that recruitment of new professors in this area is by and of itself rather difficult.

19.     It is foreseen that new resignations will occur, because professors see retirements as a first step to be able to request withdrawal of the funds being held by Voya. The members of the faculty of the School of Medicine of the Medical Sciences Campus have provided a great part of their income to said Plan, and they count with such money for their retirement.  Fear of not having access to such moneys when they need them most has provoked great anxiety and frustration among a considerable sector of the members of the faculty of the School of Medicine.  If additional professor resignations materialize, the School of Medicine would be greatly affected, thus preventing the recruitment of teaching personnel with the required specialties so to provide education to students and residents.

20.     This is a critical and definitive juncture, because the Medical Sciences Campus will receive visits from the accrediting agency of the Doctor in Medicine Program in somewhat over a month (January 2017).  The worst that can happen to the School of Medicine is for a group of evaluators to interview frustrated faculty members who are in the process of tendering their resignations as a consequence of Voya's breach with its obligation to transfer Plan assets, which conduct in turn threatens and places at risk the accreditation of the only Doctor in Medicine program that exists at a public institution in Puerto Rico, apart from it being its most prestigious.

21.     Aware that it is no longer the fiduciary or Plan Trustee, and further aware that it lacks authority therefor, Voya has caused damages and irreparable loss to the Rabbi Trust in utilizing part of the compensation deferred by Plan participants to subsidize its legal fees relating to a complaint filed by Voya against the UPR in the courts of the State of New York,[2] which complain was dismissed by said forum for lack of jurisdiction.

22.     Further aware that it is no longer the fiduciary or Plan Trustee, and aware that it lacks authority therefor, Voya continues causing irreparable harm to plaintiff in utilizing part of the compensation deferred by Plan participants to subsidize its legal fees relating to a complaint filed by Voya against the UPR in the United States District Court for the District of Puerto Rico.[3]

---

[2]     See, In the Matter of the Application of Voya Institutional Trust Company, Index No. 1543 11/16 (Supreme Court of the State of New York).

[3]     See, Voya Institutional Trust Company v. University of Puerto Rico et al., Civil No. 16-2519 (JAG).

4

23.     The above mentioned illegal acts of Voya are causing and will continue to cause irreparable Harm to the plaintiff.

## CAUSES OF ACTION

24.     The allegations set forth in paragraphs 1 through 23 are incorporated herein and made a part of this cause of action.

25.     This Honorable Court has power to compel a person to abstain from doing or from permitting others under its control to do, certain acts that breach or prejudice and the rights of others.  Rule 57 of Civil Procedure of 2009, 32 L.P.R.A. Ap. V, R. 57 in its subpart (7) that that an injunction may issue "when it arises from a trust."  See, 32 L.P.R.A. sec. 3523.  In such cases, it is not a requirement that the party requesting an injunction establish that it will suffer irreparable harm.  This is so even if in this case, Voya's illegal acts are in fact causing irreparable harm to the UPR.

26.     Moreover, Article 677 of the procedural code provides it subpart (7) that an injunction may issue "when it arises from a trust."  See, 32 L.P.R.A. sec. 3523.  In such a case, the party who requires issues of an injunction need not prove that it will suffer irreparable harm.  This is so even if in the present case Voya's illegal acts are causing  irreparable harm to the UPR.

27.     Voya's obligation of complying with the orders issued by the UPR as Settlor of the Rabbi Trust so us to transfer the funds to the new plan fiduciaries, so that they may exercise their functions as fiduciaries or Successor Trustees of the Rabbi Trust, arises from the Trust Agreements which qualify as trusts pursuant to Connecticut law.

28.     The facts set forth before, which cause us and will continue to cause irreparable harm to the UPR, give rise to all of the requirements necessary so that this Honorable Court may order Voya  to cease-and-desist from its illicit and unfair practices, as well as from continuing to engage in acts that are contrary to good faith.

29.     The granting of the remedy of injunction requested hearing does not prejudice Voya, since it was properly removed from the position of fiduciary or trustee.

30.     Plaintiff UPR does not have any other adequate remedy at law to recover the peaceful possession of the assets subject to the Rabbi Trusts and thus to be able to place them under the custody and control of the new fiduciaries or Successor Trustees.

31.     the irreparable harm alleged in this complaint is continuous inasmuch as Voya is consistently  refusing to comply with the orders issued by the UPR as Settlor of the Rabbi Trust and prevents new Plan fiduciaries from exercising their function ask such or as Successor Trustees of the Rabbi Trust.

32.      **Inasmuch as the funds held in trust in the Rabbi Trust constitute salary deferred by  employees of the University of Puerto Rico,  this matter is permeated with a high degree of public interest, for which reason it warrants immediate attention without any delay by this Honorable Court.**

33.      The UPR has to at all times acted with delusions and good faith in forwarding its required notifications to Voya, where it advised that Voya had been removed as fiduciary of the Rabbi Trust.

34.      Voya, on the contrary, has acted in bad faith and negligently in failing to recognize the Successor Trustees designated by the UPR and preventing transfer of funds held in trust in the Rabbi Trust as ordered.

**WHEREFORE**, plaintiff very respectfully requests that this Honorable Court issue a preliminary and permanent injunction pursuant to the provisions of Art. 677, subpart (7) of the Civil Procedure Code as well as pursuant to Rule 57 of Civil Procedure, ordering Voya:

a.       to cease and desist immediately from undertaking the above mentioned illegal acts;

b.       to deposit in the Plan fund the totality of the funds held in trust in the Rabbi trusts that may have been utilized without authority, illegally and improperly to file lawsuits in New York and in the United States District Court for the District of Puerto Rico.

c.       to immediately abstain from using funds held in trust in the Rabbi Trusts for any ends other than providing benefits to Plan participants;

d.       to immediately and without any delay transfer the totality of the funds or assets of the Plan held in trust in the Rabbi Trusts to the fiduciaries or successor trustees legally designated as such;

e.       to transfer to the new fiduciaries any benefits as Voya may have received from August 19, 2016 to present for the management or possession of Plan assets;

f.       to reimburse to the UPR the costs, expenses, and attorney's fees which the UPR has had to incur and may have to incur to compel Voya  to comply with its obligation to transfer Plan funds  to the new fiduciaries.

In San Juan, Puerto Rico, on December 28, 2016.

6

FIDDLER, GONZALEZ & RODRIGUEZ, P.S.C.
P.O. Box 363507
San Juan, Puerto Rico 00936-3507
Tel: (787)759-3163; 759-3258
Fax: (787)250-7545

_____          _____
RICARDO L. ORTIZ-COLON                       EDGARDO BARRETO-PAGAN
RUA: 9495                                                RUA: 14351

Doc. #1009374; 6873-002

                                                     A TRUE COPY ATTEST:

                                                     _____
                                                     PROCESS SERVER
                                                     RICH ZECHIEL

7

## **SWORN STATEMENT**

I, Noel J. Aymat, of legal age, married, Chancellor of the UPR School of Medicine, and resident of San Juan, Puerto Rico, under the most solemn oath, declares as follows:

1. My name and personal circumstances are the ones previously indicated.
2. I am authorized to subscribe the present sworn statement in my capacity as Chancellor of the UPR School of Medicine.
3. As Chancellor of the UPR School of Medicine I have personal knowledge of the facts contained in the "Verified Complaint", or I have obtained knowledge of such facts either through my functions in the UPR or by examination, review and/or analysis of the documents related to the referred matter.
4. I have carefully read all and each one of the facts indicated in the "Verified Complaint" that precedes (this sworn statement), and I attest that such facts are true to the best of my knowledge.
5. I am providing this sworn statement freely and voluntarily without the intervention of a promise or under duress.

AND SO THAT ALL THIS BE KNOWN, I swear and subscribe this statement, in San Juan, Puerto Rico, today the 28th of December, 2016.


_____
Noel J. Aymat Santana

8

Affidavit No. 195

Sworn and subscribed before me by Noel J. Aymat Santana, of the personal circumstances indicated above, in his official capacity as Chancellor of the UPR School of Medicine, whom I know <u>personally</u> or as identified through his Driver's License number <u>n/a</u>, [CPA initials] issued by the Commonwealth of Puerto Rico.

In San Juan, Puerto Rico, today the 28th of December, 2016.

<u>[signature of Cristina Parea]</u>
NOTARY PUBLIC

[seal of notary CRISTINA L. PARES ALICEA
ATTORNEY-NOTARY]

A TRUE COPY ATTEST:

_____
PROCESS SERVER RICH ZECHIEL

[Stamp stating the UPR is exempt from cancellation of the stamp under 18 LPRA 612(f)]

9

CERTIFICATION: I, Moisés S. Hernández Amateau, J.D., a U.S. Court Certified Interpreter, CERTIFY that I translated the Spanish language start text into the English language, that the rendition is a formal and/or functional equivalent of the referenced start text; and that the numerical contents of the translation, if any, are a true and accurate rendition of the original numbers. Therefore, I am attaching my signature to this document, listing the date and location after my signature.

In San Juan, Puerto Rico, January 2017.

AMERICAN   HOSPITAL   ASSOCIATION

MASTER   COMPENSATION   DEFERRAL   PLAN

(TAX-EXEMPT   ORGANIZATIONS)

EXHIBIT I

## ARTICLE  I

## INTRODUCTION

The American Hospital Association ("AHA") Master Compensation Deferral Plan ("Prior Plan") established on April 11, 1975, is hereby amended and restated pursuant to the terms, conditions and provisions contained within this plan ("Plan"). The purpose of the Plan is to attract and retain certain officers, employees and contractors of AHA by permitting them to enter into deferral agreements with the AHA to provide for the payment of deferred compensation on retirement or separation from service as well as death benefits in the event of death before or after retirement.

The Plan is also available for use by any tax-exempt hospital, health care institution or allied hospital association which is a member of or affiliated with the AHA or any other similar tax-exempt entity approved by the AHA. Any such organization may adopt the Plan or amend and restate its Prior Plan by executing a Plan Joinder Agreement whereby such organization agrees to accept the provisions of the Plan as the provisions of its own plan of deferred compensation. Any tax-exempt hospital, health care institution or allied hospital association or tax-exempt entity approved by the AHA thus adopting the Plan shall be solely responsible for carrying out and fulfilling the obligations of the "Employer," as this term is defined herein. Once adopted, the Plan becomes the deferred compensation plan of the adopting Employer, and such Plan shall be maintained and operated independently from the AHA Plan or any other Plan adopted by a different Employer.

The *term* "Employer," wherever it shall appear in the Plan or accompanying Plan documents. shall mean such tax-exempt hospital, health care institution, allied hospital association or tax-exempt entity approved by the AHA which has adopted the Plan. As to any "Participant," as this term is defined herein, the term "Employer" shall mean that entity with which such Participant has executed a "Participation Agreement," as this term is defined herein and in accordance with Article IV. The term "Participant" shall mean the officer, employee or independent contractor who (or which) has executed a Participation Agreement with the Employer adopting the Plan.

Nothing contained in this Plan shall be deemed to constitute an employment contract or agreement for services between the Participant and the Employer nor shall it be deemed to give a Participant any right to be retained in the employ of, or under contract to, the Employer. Nothing herein shall be construed to modify the terms of any employment contract or agreement for services between a Participant and the Employer as this Plan is intended to be a supplement thereto.

## ARTICLE  II

## DEFINITIONS

2.01  *Compensation:* The total annual remuneration for employment or contracted services payable by the Employer that would be included in the federal gross income of the Participant but for the Participant's election to participate in the Plan.

2.02  *Deferred Compensation:* The amount of Compensation not yet earned, as designated in the Participation Agreement which is made a part hereof, which the Participant and the Employer mutually agree shall be deferred in accordance with the provisions of this Plan.

2.03  *Retirement:* Severance of the Participant's employment contract or agreement for services with the Employer on or after the Participant's 65th birthday by reason other than death whereby the Participant thereafter is not providing services for the Employer.

2.04  *Separation from Service:* Severance of the Participant's employment contract or agreement for services with the Employer prior to the Participant's 65th birthday by reason other than death whereby the Participant thereafter is not providing services to the Employer.

2.05  *Beneficiary:* Beneficiary or Beneficiaries of certain benefits of this Plan designated by the Participant in the Participation Agreement. Nothing herein shall prevent the Participant from designating more than one Beneficiary or primary and secondary Beneficiaries or changing the designation of a Beneficiary. If two or more or less than all designated Beneficiaries survive the Participant, payments shall be made equally to all such Beneficiaries, unless otherwise provided in the Beneficiary designation. Elections made by a Participant in the Participation Agreement shall be binding on any such Beneficiary or Beneficiaries.

2.06   *Eligible Person:* Any individual, corporation, partnership or other "person," as defined in the Internal Revenue Code of 1954, as amended ("Code") to include those appointed, elected or under contract, who performs services for the Employer as an employee or independent contractor for which Compensation is paid.

2.07   *Participant:* Any Eligible Person who fulfills the eligibility and enrollment requirements of Article *IV*.

2.08   *Participation Agreement:* A written agreement between the Employer and a Participant setting forth certain provisions and elections relative to the Plan, establishing the amount of Deferred Compensation and the manner and method of paying benefits under the Plan, incorporating the terms and conditions of the Plan and establishing the Participant's participation in the Plan.

2.09   *Plan Year:* The calendar year.

2.10   *Retirement Age:* The Participant's 75th birthday.

## ARTICLE III
## ADMINISTRATION

3.01   This Plan shall be administered by a committee ("Committee") of one or more individuals under contract to or in the employment of the Employer as appointed by the Employer. The Committee shall represent the Employer in all matters concerning the administration of this Plan. The Employer may remove a Committee member for any reason by giving such member ten (10) days' written notice and may thereafter fill any vacancies thus created.

3.02   The Committee shall have full power and authority: to adopt rules and regulations for the administration of the Plan, provided they are not inconsistent with the provisions of this Plan; to interpret, alter, amend, or revoke any rules and regulations so adopted; to enter into contracts on behalf of the Employer with respect to this Plan; to make discretionary decisions under this Plan such as called for in Article *VIII*; and to perform any and all administrative duties under this Plan.

3.03   A Committee member shall be eligible to participate in the Plan, but such a member shall not be entitled to participate in discretionary decisions under Article *VII* relating to such member's own participation in the Plan.

3.04   The Employer or the Committee acting on behalf of the Employer may contract with the IEtna Life Insurance and Annuity Company to issue to the Employer an annuity contract as described in Article *V* of the Plan and to provide services under the Plan for the convenience of the Employer including, but not limited, the enrollment of Eligible Persons as Participants on behalf of the Employer, the maintenance of individual or other accounts and other records, the making of periodic reports and the disbursement of benefits to Participants and Beneficiaries.

## ARTICLE IV
## PARTICIPATION IN THE PLAN

4.01   Any Eligible Person who performs services for the Employer for which Compensation is paid and who executes a Participation Agreement with the Employer is eligible to participate in the Plan; provided however, such Eligible Person must also meet any additional eligibility standards imposed by the Committee, to include, but not limited to, the requirements of the Employee Retirement Income Security Act of 1974, as amended ("EAISA") for unfunded plans of *deferred* compensation.

4.02   *Enrollment in the Plan:*

   (a)   An Eligible Person may become a Participant and agree to defer Compensation not yet earned by entering into a Participation Agreement prior to the first day of the calendar month for which it is to become effective. With respect to a new Eligible Person, the Participation Agreement may be effective for Compensation not yet earned at any time during the first month such person becomes an Eligible Person provided the Participation Agreement was entered into on or before the first day on which the person became an Eligible Person.

   (b)   At the time of entering into or modifying the Participation Agreement hereunder to defer Compensation or at the time of re-entry following a withdrawal under Article *VII*, a Participant must agree to defer the greater of an amount determined by reference to the minimum provided in the annuity contract described in Article *V* of the Plan or an amount specified by the Committee.

TE-2

(c)   A Participant who agrees to defer Compensation may not modify such agreement to change the amount deferred except with respect to Compensation to be earned in a subsequent calendar month or except as provided in Article VII hereof with respect to withdrawals; provided however, notice of such modification must be given prior to the beginning of the calendar month for which such modification is to be effective.

(d)   A Participant may at any time revoke the Participation Agreement to defer Compensation with respect to any calendar month, and the Participant's full Compensation will be thereupon restored in the month subsequent to the effective date of such revocation; provided however, the Participant must notify the Committee in writing of such revocation prior to the beginning of the calendar month for which such revocation is to be effective. However, amounts previously deferred shall be paid only as provided in this plan.

(e)   A Participant who has withdrawn from the Plan, as set forth in Article VII, or a Participant who has revoked the Participation Agreement, as set forth in subsection (d) above, or a Participant who returns to perform services for the Employer after a Separation from Service, may again become a Participant in the Plan and agree to defer Compensation not yet earned by entering into a new Participation Agreement prior to the first day of the calendar month for which it is to become effective.

## ARTICLE V

## CALCULATION OF BENEFITS

5.01   The amount of any benefit payment to a Participant or Beneficiary made pursuant to this Plan shall be determined by the value at the time of such payment of the annuity contract described below in accordance with elections in the Participation Agreement and the provisions of the Plan:

(a)   An amount equal to the amount which would have been payable to the Employer under an annuity contract issued by the JEtna Life Insurance and Annuity Company ("Annuity Contract") with the Participant included as the annuitant thereunder, and had the manner and method of payment selected been as specified in the Participation Agreement, and had the time of commencement of such payment selected been as provided in the Plan pursuant to elections made in the Participation Agreement, and had the premium been equal to the Participant's Deferred Compensation as if such Deferred Compensation had been applied as a premium to such Annuity Contract within a reasonable time subsequent to the actual deferral and as specified in the Participant's Participation Agreement.

5.02   The Employer at its discretion may acquire the Annuity Contract and invest amounts of Deferred Compensation in the Annuity Contract in order to provide a fund from which it can satisfy its obligation to make benefit payments pursuant to this Plan. Any Annuity Contract so acquired for the convenience of the Employer shall be the sole and exclusive property of the Employer with the Employer named as owner and beneficiary; provided further, such Annuity Contract shall not be held in trust or collateral security for the benefit of any Participant or Beneficiary.

5.03   All amounts of Compensation deferred under this Plan, all property and rights which may be purchased by the Employer with such amounts and all income attributable to such amounts, property or rights to property shall remain the sole property and rights of the Employer without being restricted by the provisions of this Plan, subject only to the claims of the Employer's general creditors. The obligation of the Employer under this Plan is purely contractual and shall not be funded or secured in any way.

5.04   The Employer shall be liable to pay benefits under this Plan only to the extent of amounts that would have been available under the Annuity Contract as measured by elections made in the Participation Agreement, and the Employer shall not be responsible for the investment or performance results of such Annuity Contract. Furthermore, if the Annuity Contract is so acquired to measure benefits payable under this Plan, the value of any benefit shall be determined by the actual value of the Annuity Contract at the time of a benefit payment unaffected by any independent or arbitrary standard of calculation with respect to such Annuity Contract.

TE-3

## ARTICLE  VI

### BENEFITS

GENERAL

6.01   *General Benefit  Terms:*

(a)   Benefit payments  to a Participant  or Beneficiary shall be made according to the manner and method of payment as elected in the Participation  Agreement, which election may be changed by a Participant  or a Beneficiary as appropriate  at any time prior to the commencement  of such benefit payments pursuant  to the execution  of a revised Participation  Agreement.

(b)   In the absence  of an election  in the Participation  Agreement  as to the manner and method  of such benefit payments  as provided  in Section 6.01(a), the Employer shall make monthly payments  on a fixed basis to the Participant  or Beneficiary  as a continuous  lifetime annuity with one hundred twenty  (120) payments guaranteed.

(c)   At the time benefits commence  the present value of all payments  to be made to a Participant  must exceed one-half  of the present  value  of the total  payments  to be made  to the Participant  and the Beneficiary as if no Beneficiary  were designated  based on the life expectancy  of the Participant  according  to the mortality tables of /Etna  Life  Insurance  and Annuity  Company.

(d)   Benefit payments  to a Participant  or Beneficiary shall commence  at the time provided  in the Plan, subject to an election by the Participant  or Beneficiary as appropriate,  prior to the time such benefits first become payable, to defer the beginning  of such payments  to a later date as allowed by the Plan and pursuant  to the Participation Agreement.

(e)   For purposes  of interpreting  the provisions  of the Plan, the Committee  shall only consider a Participation Agreement  signed by the Participant  or Beneficiary as appropriate  and submitted  to the Committee.

6.02   *Benefits Upon Retirement:*  Beginning  no earlier than thirty-one  (31) days and no later than sixty (60) days following the Participant's  Retirement,  the Employer  shall begin benefit payments  to the Participant; provided however, the Participant  may elect prior to the time such benefits become payable to defer the beginning of any portion of such payments  to a later date  not later than  the Retirement  Age as provided  in the Participation  Agreement.

6.03   *Benefits  Upon  Separation  from Service:*

(a)   If, upon Separation  from Service, the Participant  continues to receive remuneration  for employment  or contracted services and such remuneration  is deemed by the Committee  to be substantially  equivalent  to the Participant's Compensation,  benefit payments  shall be delayed until the Participant attains age 65 at which time benefits shall be payable according  to the terms of Section  6.02 of the  Plan as if Retirement  occurred  at age 65.

(b)   If, upon Separation  from Service, the Participant  does not satisfy the provisions  of 6.03(a), benefit payments  shall not be deferred  but shall rather commence  no earlier than thirty-one  (31) days and no later than sixty (60) days following  Separation  from  Service.  However,  the Participant  may elect prior to the time such benefits become payable to defer the beginning  of any portion of such payments  to a later date not later than the Retirement  Age as provided  in the Participation  Agreement.

6.04   *Benefits Upon Death After Commencement  of Benefits:*

(a)   Should the Participant  die at any time after benefit payments  have commenced,  the Employer shall commence payment  to the Beneficiary  of the balance remaining  of such payments  within thirty (30) days of receipt of satisfactory  proof of death of the Participant  and according  to the manner and method  selected by the Participant in the Participation  Agreement.

(b)   If no Beneficiary  is designated  as provided  in Section 2.05 or if no Beneficiary  survives the Participant  for a period of thirty (30) days, the Employer  shall pay to the estate of the Participant  a single lump sum amount equal to the current value of such remaining  payments.  If a Beneficiary  does not survive the period after the Participant's  death during  which such payments  to the Beneficiary  are to be made, the Employer shall pay to the estate of that Beneficiary  a single lump sum amount equal to the current value of such remaining payments  to that Beneficiary.

6.05 *Benefits Upon Death Prior to Commencement of Benefits:*

(a) Should the Participant die at any time before benefit payments have commenced, the Employer shall commence benefit payments to the Beneficiary no earlier than sixty-one (61) days and no later than ninety (90) days subsequent to the Participant's death, subject to satisfactory proof of death of the Participant and according to the manner and method provided in the Participation Agreement or as selected by the Beneficiary pursuant to a revised Participation Agreement submitted to the Committee prior to the commencement of such benefit payments.

(b) However, at the discretion of the Employer the Beneficiary may elect within the sixty (60) day period subsequent to the death of the Participant to defer the beginning of such payments to a later date not later than the date the Participant would have attained Retirement Age. The Beneficiary may also elect, prior to the date when such deferred benefits are to commence, pursuant to Section 6.05(b) of the Plan, the manner and method of benefit payments as allowed under the Plan.

(c) If no Beneficiary is designated as provided in Section 2.05 or if no Beneficiary survives the Participant for a period of thirty (30) days, the Employer shall pay to the estate of the Participant a single lump amount equal to the current value of any remaining payments. If a Beneficiary does not survive the period after the Participant's death during which such payments to the Beneficiary are to be made, then the Employer shall pay to the estate of that Beneficiary a single lump sum amount equal to the current value of such remaining payments to that Beneficiary.

## ARTICLE VII

## WITHDRAWALS

7.01 In the case of an unforeseeable emergency prior or subsequent to the commencement of benefit payments, a Participant may apply to the Committee for withdrawal of an amount reasonably necessary to satisfy the emergency need. If an application for emergency withdrawal is approved by the Committee, the withdrawal will be effective at the later of the date specified in the Participant's application or the date of approval by the Committee, and the approved amount shall be payable in a lump sum within thirty (30) days of such effective date or in some other manner consistent with emergency need as determined by the Committee.

7.02 For the purposes of this Plan, the term "unforeseeable emergency" means a severe financial hardship to the Participant resulting from a sudden and unexpected illness or accident of the Participant or of a dependent (as defined in the Code) of the Participant, loss of the Participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant. Withdrawals for foreseeable expenditures normally budgetable, such as a down payment on a home or purchase of an auto or college expenses, will not be permitted. The Committee shall not permit withdrawal for unforeseeable emergency to the extent that such hardship is or may be relieved:

(1) through reimbursement of compensation by insurance or otherwise;

(2) by liquidation of the Participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship; or

(3) by cessation of deferrals under the Plan.

7.03 In no event shall the amount of a withdrawal for an unforeseeable emergency exceed the total amount of benefits which would have been available to the Participant at the time of withdrawal. Notwithstanding any other provision of this Plan, if a Participant makes a withdrawal hereunder, the value of benefits under the Plan shall be appropriately reduced to reflect such withdrawal, and the remainder of any benefits shall be payable in accordance with otherwise applicable provisions of the Plan.

## ARTICLE VIII

## LEAVE OF ABSENCE

A Participant on an approved leave of absence with or without Compensation may continue to participate in the Plan subject to all the terms and conditions of the Plan; provided further, Compensation may be deferred for such Participant if such Compensation continues while the Participant is on an approved leave of absence.

## ARTICLE IX

### NON-ASSIGNABILITV CLAUSE

Neither the Participant nor any other person shall have any right to commute, sell, assign, pledge, transfer or otherwise convey or encumber the right to receive any payments hereunder, which payments and rights thereto are expressly declared to be unassignable and non-transferable. Nor shall any unpaid benefits be subject to attachment, garnishment or execution for the payment of any debts, judgments, alimony or separate maintenance owed by the Participant or any other person or be transferrable by operation of law in the event of bankruptcy or insolvency of the Participant or any other person.

## ARTICLE X

### AMENDMENT OR TERMINATION OF PLAN

10.01  The Employer may terminate or amend the provisions of this Plan at any time; provided however, that no termination or amendment shall affect the rights of Participants or their Beneficiaries to the receipt of payment of benefits to the extent of any Compensation deferred before the time of the termination or amendment, as adjusted for investment experience under the Annuity Contract prior to or subsequent to the amendment or termination.

10.02  Upon termination of the Plan, the Participants in the Plan will be deemed to have withdrawn from the Plan as of the date of such termination. The Participant's full Compensation on a non-deferred basis will be thereupon restored, and the Employer shall pay such benefit or benefits as otherwise provided by and according to the terms of the Plan.

## ARTICLE XI

### DISCLAIMER

In making this Plan available for Employers and their respective Participants, the AHA does so solely for their accommodation. As to such Employers and their respective Participants, AHA makes no representations or assurances and assumes no responsibility as to the success, solvency, compliance with state and federal securities laws and regulations or state and federal tax consequences with respect to the Plan or participation therein. It shall be the responsibility of such Employers and their respective Participants to determine such issues or any other pertinent issues to their own satisfaction.

## ARTICLE XII

### APPLICABLE LAW

With respect to the AHA and its Participants, this Plan shall be construed under the law of the State of Illinois. With respect to Employers adopting the Plan, the Plan shall be construed under the laws of the state of the adopting Employer.

IN WITNESS WHEREOF, the AHA has caused this Plan to be signed and attested to by its duly authorized officers on the tst day of June, 1983.

ATTEST:                                              AMERICAN HOSPITAL ASSOCIATION

Title: _Assistant Secretary_                         Title: _Secretary-Treasurer_

TE-6

EXHIBIT II

**TRUST UNDER** THE UNIVERSITY OF PUERTO RICO **DEFERRED COMPENSATION PLAN**

(a) This agreement made this *17* day of *Sept* , 2013,  by and between The University of Puerto Rico (VK8236)  (Employer) and **ING National Trust** (Trustee);

(b) WHEREAS, Employer has adopted a nonqualified deferred compensation Plans(s) as listed under Appendix A.

(c) WHEREAS, Employer has incurred or expects to incur liability under the terms of such Plan(s) with respect to the individuals participating in such Plan(s);

(d) WHEREAS, Employer wishes to establish a Trust (hereinafter called "Trust") and to contribute to the Trust assets that shall be held therein, subject to the claims of Employer's creditors in the event of Employer's Insolvency, as herein defined, until paid to Plan participants and their beneficiaries in such manner and at such times as specified in the Plan(s);

(e) WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Plan(s) as an unfunded Plan maintained for the purpose of providing deferred compensation intention of the parties that this Trust Shall constitute an unfunded arrangement;

(f) WHEREAS, it is the intention of Employer to make contributions to the Trust to provide itself with a source of funds to assist it in the meeting of its liabilities under the Plan(s);

NOW, THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be comprised, held and disposed of as follows:

**Section 1. ESTABLISHMENT OF TRUST.**

 (a)  Employer hereby deposits with Trustee in Trust such sums of money and such other property acceptable to the Trustee as shall from time to time be paid or delivered to the Trustee, which shall become the principal of the Trust to be held, administered and disposed of by Trustee as provided in this Trust Agreement.

(b) The Trust hereby established shall be irrevocable.

(c) The Trust is intended to be a grantor Trust, of which Employer is the grantor, within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

(d) The principal of the Trust, and any earnings thereon shall be held separate and apart from

1

Exhibit B

other funds of Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth. Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan(s) and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a) herein.

(e) Employer, in its sole discretion, may at any time, or from time to time, make additional deposits of cash or other property in Trust with Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust agreement. Neither Trustee nor any Plan participant or beneficiary shall have any right to compel such additional deposits.

(f) The Trustee agrees to accept contributions that are paid or remitted to it by the Employer in accordance with the terms of this Trust Agreement. Such contributions shall be in cash or in such other form as may be acceptable to the Trustee. The Employer shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions, the transmittal of same to the Trustee, and compliance with any statute or regulation applicable to the contributions.

## Section 2. PAYMENTS TO PLAN PARTICIPANTS AND THEIR BENEFICIARIES.

(a) Employer shall deliver to Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Plan participant (and his or her beneficiaries), that provides a formula or other instructions acceptable to Trustee for determining the amounts so payable, the form in which such amount is to be paid (as provided for or available under the Plan(s)), and the time of commencement for payment of such amounts. Except as otherwise provided herein, Trustee shall make payments to the Plan participants and their beneficiaries in accordance with such Payment Schedule. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan(s) and shall pay amounts withheld to the appropriate taxing authorities or determine that such amounts have been reported, withheld and paid by Employer.

(b) The entitlement of a Plan participant or his or her beneficiaries to benefits under the Plan(s) shall be determined by Employer or such party as it shall designate under the Plan(s), and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan(s).

(c) Employer may make payment of benefits directly to Plan participants or their beneficiaries as they become due under the terms of the Plan(s). Employer shall notify Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to participants or their beneficiaries. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the Plan(s), Employer shall make

2

the balance of each such payment as it falls due. Trustee shall notify Employer where principal and earnings are not sufficient.

**Section 3. TRUSTEE RESPONSIBILITY REGARDING PAYMENTS TO TRUST BENEFICIARY WHEN EMPLOYER IS INSOLVENT.**

(a)  Trustee shall cease payment of benefits to Plan participants and their beneficiaries if the Employer is Insolvent. Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) Employer is unable to pay its debts as they become due, or (ii) Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

 (b)  At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of Employer under federal and state law as set forth below.

    1.   The Board of Directors and the Chief Executive Officer of Employer shall have the duty to inform Trustee in writing of Employer's Insolvency. If a person claiming to be a creditor of Employer alleges in writing to Trustee that Employer has become Insolvent, Trustee shall determine whether Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

    2.   Unless Trustee has actual knowledge of Employer's Insolvency, or has received notice from Employer or a person claiming to be a creditor alleging that Employer is Insolvent, Trustee shall have no duty to inquire whether Employer is Insolvent. Trustee may in all events rely on such evidence concerning Employer's solvency as may be furnished to Trustee and that provides Trustee with a reasonable basis for making a determination concerning Employer's solvency.

    3.   If at any time Trustee has determined that Employer is Insolvent, Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of Employer with respect to benefits due under the Plan(s) or otherwise.

    4.   Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after Trustee has determined that Employer is not Insolvent (or is no longer Insolvent).

(c) Provided that there are sufficient assets, if Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) hereof and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to Plan participants or their beneficiaries under the terms of the Plan(s) for the period of such discontinuance, less the aggregate amount of any payments made to Plan participants or their beneficiaries by Employer in lieu of the payments provided for hereunder during any such period

3

of discontinuance.

**Section 4.  PAYMENTS TO EMPLOYER.**

Except as provided in Section 3 hereof, after the Trust has become irrevocable, Employer shall have no right or power to direct Trustee to return to Employer or to divert to others any of the Trust assets before all payment of benefits have been made to Plan participants and their beneficiaries pursuant to the terms of the Plan(s).

**Section 5.  INVESTMENT AUTHORITY.**

(a)  Employer has elected to invest the assets of the Plan by means of an investment program offered by ING Life Insurance and Annuity Company of its affiliates.

(b)  The assets of the Trust shall be invested and reinvested among the investments selected by the Employer.  Employer shall have sole responsibility for the investment and reinvestment of the assets of the Trust, except to the extent that the Plan permits participants to instruct Employer with respect to the investment of their individual account credits among investment options selected by Employer for the Plan.  The Trustee shall have no duty or responsibility for (a) selecting or providing advice with respect to the selection of any investment options, (b) determining or reviewing any securities or other property purchased or (c) providing advice with respect to the purchase, retention, redemption, or sale of any securities or other property for the Trust.  In the event Employer has selected particular investment options offered by ING into which Plan assets previously invested with another investment provider are to be placed (a procedure known as "mapping"), the Trustee shall bear no duty or responsibility for determining the suitability of the ING investment offerings selected for this purpose.

(c)  The duties of the Trustee hereunder are as a directed trustee and the Trustee shall act solely in accordance with the instructions of Employer.  Nothing in this Agreement is intended to give the Trustee any discretionary responsibility, authority or control with respect to the management or administration of the Plan or the management of Trust assets.  Further, the Trustee is not a party to the Plan and has no duties or responsibilities other than those that may be expressly contained in this Agreement.  In any case in which a provision of this Agreement conflicts with any provision in the Plan, this Agreement shall control.

(d)  In administering the Trust, the Trustee shall be specifically authorized to:
- In accordance with authorized instructions, receive, hold and maintain custody of, and disburse Trust assets;
- Hold securities or other Trust property in book entry form or through another agent or nominee, including without limitation in an omnibus account arrangement;
- Collect income payable to and dividends or other distributions due to the Trust and sign any declarations, affidavits, and certificates of ownership required to collect income and principal payments;
- Collect proceeds from assets of the Trust that may mature or be called;

4

- Until authorized instructions are received, hold the assets of the Trust uninvested, or invest the assets of the Trust in bank accounts of any bank, and the Trustee may retain any earnings on such deposits as part of its compensation for services hereunder;
- Submit or cause to be submitted to Employer all information received by the Trustee regarding ownership rights pertaining to property held in the Trust;
- Make, execute and deliver any and all documents, agreements or other instruments in writing as is necessary or desirable for the accomplishment of any of the powers and duties in this Agreement; and
- Generally take any action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the fulfillment of its duties hereunder.

(e) In no event may Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by Employer, other than a de minimis amount held in common investment vehicles in which Trustee invests. All rights associated with assets of the Trust shall be exercised by Trustee or the person designated by Trustee, and shall in no event be exercisable by or rest with Plan participants except that voting rights with respect to Trust assets will be exercised by Employer.

(f) Employer shall have the right, at any time, and from time to time, in its sole discretion to substitute assets of equal fair market value for any asset held by the Trust.

**Section 6.  DISPOSITION OF INCOME.**

 (a) During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

**Section 7.  ACCOUNTING BY TRUSTEE.**

Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions required to be made, including such specific records as shall be agreed upon in writing between Employer and Trustee. Within 30 days following the close of each calendar year and 30 days after the removal or resignation of Trustee, Trustee shall deliver to Employer a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be.

**Section 8. RESPONSIBILITY OF TRUSTEE.**

(a)  Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by Employer which is contemplated by, and in conformity with, the

5

terms of the Plan(s) or this Trust and is given in writing by Employer. In the event of a dispute between Employer and a party, Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b)  If Trustee undertakes or defends any litigation arising in connection with this Trust, Employer agrees to indemnify Trustee against Trustee's costs, expenses and liabilities (including, without limitation, attorneys' fees and expenses) relating thereto and to be primarily liable for such payments.  If Employer does not pay such costs, expenses and liabilities in a reasonably timely manner, Trustee may obtain payment from the Trust.

(c)  Trustee may consult with legal counsel (who may also be counsel for Employer generally) with respect to any of its duties or obligations hereunder.

(d) Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations hereunder.

(e) Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein, provided, however, that if an insurance policy is held as an asset of the Trust, Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy.

(f) Notwithstanding any powers granted to Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.

## Section 9. COMPENSATION AND EXPENSES OF TRUSTEE.

(a)  Employer shall pay all administrative and Trustee's fees and expenses.  If not so paid, the fees and expenses shall be paid from the Trust.

(b)  Trustee shall be entitled to compensation for services under this Agreement as set forth in the Fee Exhibit attached hereto and to reimbursement for expenses incurred by it in the discharge of its duties under this Agreement.   Employer acknowledges that the Trustee may increase the amount of compensation on an annual basis with sixty (60) days' prior written notice to the Employer.

(c) The Trustee shall also be entitled to receive as part of its compensation any amounts earned under section 5 (d) related to earnings on deposits. Such earnings shall include earnings on uninvested cash relating to Plan contributions and earnings on uninvested cash pending distributions, or earnings on cash otherwise held uninvested as directed by Employer.

6

**Section 10. RESIGNATION AND REMOVAL OF TRUSTEE.**

(a) Trustee may resign at any time by written notice to Employer, which shall be effective 60 days after receipt of such notice unless Employer and Trustee agree otherwise.

(b) Trustee may be removed by Employer on 60 days notice or upon shorter notice accepted by Trustee.

(c) Upon resignation or removal of Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be completed within 60 days after receipt of notice of resignation, removal or transfer, unless Employer extends the time limit.

(d) If Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11 hereof, by the effective date of resignation or removal under paragraphs (a) or (b) of this section. If no such appointment has been made, Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

**Section 11. APPOINTMENT OF SUCCESSOR.**

(a) If Trustee resigns or is removed in accordance with section 10(a) or (b) hereof, Employer may appoint any third party, such as a bank trust department or other party that may be granted corporate Trustee powers under state law, as a successor to replace Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the Trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by Employer or the successor Trustee to evidence the transfer.

(b) The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing Trust assets, subject to sections 7 and 8 hereof. The successor Trustee shall not be responsible for and Employer shall indemnify and defend the successor Trustee from any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes successor Trustee.

(c) Any entity into which the Trustee may be merged or with which it may be consolidated, or any entity resulting from any merger or consolidation to which the Trustee is a party, or any entity succeeding to the trust business of the Trustee, shall become the successor of the Trustee hereunder, without the execution or filing of any instrument or the performance of any further act on the part of the parties hereto.

**Section 12. AMENDMENT OR TERMINATION.**

(a) The Trustee may amend this Agreement as necessary to comply with the provisions of applicable law and regulations. This Trust Agreement may be amended by a written instrument

7

executed by Trustee and Employer. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan(s) or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b) hereof.

(b) The Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s). Upon termination of the Trust any assets remaining in the Trust shall be returned to Employer.

(c) Upon written approval of participants or beneficiaries entitled to payment of benefits pursuant to the terms of the Plan(s), Employer may terminate this Trust prior to the time all benefit payments under the Plan(s) have been made. All assets in the Trust at termination shall be returned to Employer.

**Section 13. MISCELLANEOUS.**

(a) Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

(b) Benefits payable to Plan participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c) This Trust Agreement shall be governed by and construed in accordance with the laws of Connecticut.

(d) Until such time as the Trustee receives a written notice to the contrary with respect to a particular security, the Trustee may release the identity and the address of the Trust to the security issuer which requests such information pursuant to the Shareholder Communications Act of 1985 for the specific purpose of the direct communication between such security issuer and shareholder.

(e) All notices and other communications hereunder shall be in writing and shall be sufficient if delivered by hand or if sent by telefax or mail (including electronic mail), postage prepaid, addressed:

      (a)    If to the Trustee:

            Molly Garrett
            Vice President, ING Life Insurance and Annuity Company
            One Orange Way, C3N
            Windsor, CT 06095-4774

8

with a copy to:

J. Denise Jackson
President
ING National Trust
One Orange Way, C4R
Windsor, Connecticut 06095-4475

(b)   If to the Employer:
DR. ANGEL R PAGAN, CHAIRMAN
DEFERRED COMPENSATION PLAN COMMITTEE (OFFICE A-744)
P.O. BOX 365067
SAN JUAN, PR 00936-5067

The parties may by like notice, designate any future or different address to which subsequent notices shall be sent. Any notice shall be deemed given when received.

(f) Authority to Execute Agreement. The Employer hereby certifies that it has the power and authority to enter into this Agreement on behalf of the Plan. The person(s) signing below on behalf of the Employer as Authorized Parties warrant, as individuals, that each is an authorized to act on behalf of the Employer all signatures are genuine and the persons indicated are authorized to sign.

(g) Authorized Parties. The Employer shall concurrently with the execution of this Agreement, furnish the Trustee with a written list of the names, signatures, and extent of authority of all persons authorized to direct the Trustee and otherwise act on behalf of the Employer under the terms of this Agreement as "Authorized Parties." Such persons designated by the Employer to act on its behalf hereunder are "Authorized Parties". The Trustee shall be entitled to rely on and shall be fully protected in acting upon directions, instructions, and any information provided by an Authorized Party until notified in writing by the Employer of a change of the identity or extent of authority of an Authorized Party.

(h) Authorized Instructions. All directions and instructions to the Trustee from an Authorized Party ("Authorized Instructions") shall be in writing, transmitted by mail (including electronic mail) or by facsimile. The Trustee shall be entitled to rely on and shall be fully protected in acting in accordance with all such directions and instructions which it reasonably believes to have been given by an Authorized Party and in failing to act in the absence thereof.

**Section 14. EFFECTIVE DATE.**

The effective date of this Trust Agreement shall be September 17, 2013.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the effective date set forth above.

9

*UNIVERSITY OF*
PUERTO RICO

*ING National Trust*

By: _____

Name: Jose F Rodriguel Orongo

Title: Chancellor

By: _____

Name: Andrew F. Levergne

Title: Vice President

10

### FEES PAYABLE TO TRUSTEE

In consideration for services rendered according to the terms of this Agreement, the Trustee shall be paid according to the following fee schedule:

$750 for each calendar year:          No explicit charge to the plan.  Included as part of compensation received by ING Life Insurance and Annuity Company for its performance of recordkeeping services

11

EXHIBIT III

**TRUST UNDER** THE UNIVERSITY OF PUERTO RICO **DEFERRED COMPENSATION PLAN**

(a) This agreement made this *17* day of *Sept*, 2013, by and between The University of Puerto Rico (VFK095)(Employer) and **ING National Trust** (Trustee);

(b) WHEREAS, Employer has adopted a nonqualified deferred compensation Plans(s) as listed under Appendix A.

(c) WHEREAS, Employer has incurred or expects to incur liability under the terms of such Plan(s) with respect to the individuals participating in such Plan(s);

(d) WHEREAS, Employer wishes to establish a Trust (hereinafter called "Trust") and to contribute to the Trust assets that shall be held therein, subject to the claims of Employer's creditors in the event of Employer's Insolvency, as herein defined, until paid to Plan participants and their beneficiaries in such manner and at such times as specified in the Plan(s);

(e) WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Plan(s) as an unfunded Plan maintained for the purpose of providing deferred compensation intention of the parties that this Trust Shall constitute an unfunded arrangement;

(f) WHEREAS, it is the intention of Employer to make contributions to the Trust to provide itself with a source of funds to assist it in the meeting of its liabilities under the Plan(s);

NOW, THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be comprised, held and disposed of as follows.

**Section 1. ESTABLISHMENT OF TRUST.**

 (a)  Employer hereby deposits with Trustee in Trust such sums of money and such other property acceptable to the Trustee as shall from time to time be paid or delivered to the Trustee, which shall become the principal of the Trust to be held, administered and disposed of by Trustee as provided in this Trust Agreement.

(b) The Trust hereby established shall be irrevocable.

(c) The Trust is intended to be a grantor Trust, of which Employer is the grantor, within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

(d) The principal of the Trust, and any earnings thereon shall be held separate and apart from

Exhibit C

other funds of Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth. Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan(s) and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a) herein.

(e) Employer, in its sole discretion, may at any time, or from time to time, make additional deposits of cash or other property in Trust with Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust agreement.  Neither Trustee nor any Plan participant or beneficiary shall have any right to compel such additional deposits.

(f) The Trustee agrees to accept contributions that are paid or remitted to it by the Employer in accordance with the terms of this Trust Agreement.  Such contributions shall be in cash or in such other form as may be acceptable to the Trustee.  The Employer shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions, the transmittal of same to the Trustee, and compliance with any statute or regulation applicable to the contributions.

## Section 2. PAYMENTS TO PLAN PARTICIPANTS AND THEIR BENEFICIARIES.

(a) Employer shall deliver to Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Plan participant (and his or her beneficiaries), that provides a formula or other instructions acceptable to Trustee for determining the amounts so payable, the form in which such amount is to be paid (as provided for or available under the Plan(s)), and the time of commencement for payment of such amounts. Except as otherwise provided herein, Trustee shall make payments to the Plan participants and their beneficiaries in accordance with such Payment Schedule. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan(s) and shall pay amounts withheld to the appropriate taxing authorities or determine that such amounts have been reported, withheld and paid by Employer.

(b) The entitlement of a Plan participant or his or her beneficiaries to benefits under the Plan(s) shall be determined by Employer or such party as it shall designate under the Plan(s), and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan(s).

(c) Employer may make payment of benefits directly to Plan participants or their beneficiaries as they become due under the terms of the Plan(s). Employer shall notify Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to participants or their beneficiaries. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the Plan(s), Employer shall make

2

the balance of each such payment as it falls due. Trustee shall notify Employer where principal and earnings are not sufficient.

### Section 3. TRUSTEE RESPONSIBILITY REGARDING PAYMENTS TO TRUST BENEFICIARY WHEN EMPLOYER IS INSOLVENT.

(a)  Trustee shall cease payment of benefits to Plan participants and their beneficiaries if the Employer is Insolvent. Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) Employer is unable to pay its debts as they become due, or (ii) Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

(b)  At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of Employer under federal and state law as set forth below.

1.  The Board of Directors and the Chief Executive Officer of Employer shall have the duty to inform Trustee in writing of Employer's Insolvency. If a person claiming to be a creditor of Employer alleges in writing to Trustee that Employer has become Insolvent, Trustee shall determine whether Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

2.  Unless Trustee has actual knowledge of Employer's Insolvency, or has received notice from Employer or a person claiming to be a creditor alleging that Employer is Insolvent, Trustee shall have no duty to inquire whether Employer is Insolvent. Trustee may in all events rely on such evidence concerning Employer's solvency as may be furnished to Trustee and that provides Trustee with a reasonable basis for making a determination concerning Employer's solvency.

3.  If at any time Trustee has determined that Employer is Insolvent, Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of Employer with respect to benefits due under the Plan(s) or otherwise.

4.  Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after Trustee has determined that Employer is not Insolvent (or is no longer Insolvent).

(c) Provided that there are sufficient assets, if Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) hereof and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to Plan participants or their beneficiaries under the terms of the Plan(s) for the period of such discontinuance, less the aggregate amount of any payments made to Plan participants or their beneficiaries by Employer in lieu of the payments provided for hereunder during any such period

3

of discontinuance.

### Section 4. PAYMENTS TO EMPLOYER.

Except as provided in Section 3 hereof, after the Trust has become irrevocable, Employer shall have no right or power to direct Trustee to return to Employer or to divert to others any of the Trust assets before all payment of benefits have been made to Plan participants and their beneficiaries pursuant to the terms of the Plan(s).

### Section 5. INVESTMENT AUTHORITY.

(a) Employer has elected to invest the assets of the Plan by means of an investment program offered by ING Life Insurance and Annuity Company of its affiliates.

(b) The assets of the Trust shall be invested and reinvested among the investments selected by the Employer.  Employer shall have sole responsibility for the investment and reinvestment of the assets of the Trust, except to the extent that the Plan permits participants to instruct Employer with respect to the investment of their individual account credits among investment options selected by Employer for the Plan.  The Trustee shall have no duty or responsibility for (a) selecting or providing advice with respect to the selection of any investment options, (b) determining or reviewing any securities or other property purchased or (c) providing advice with respect to the purchase, retention, redemption, or sale of any securities or other property for the Trust.  In the event Employer has selected particular investment options offered by ING into which Plan assets previously invested with another investment provider are to be placed (a procedure known as "mapping"), the Trustee shall bear no duty or responsibility for determining the suitability of the ING investment offerings selected for this purpose.

(c) The duties of the Trustee hereunder are as a directed trustee and the Trustee shall act solely in accordance with the instructions of Employer.  Nothing in this Agreement is intended to give the Trustee any discretionary responsibility, authority or control with respect to the management or administration of the Plan or the management of Trust assets.  Further, the Trustee is not a party to the Plan and has no duties or responsibilities other than those that may be expressly contained in this Agreement.  In any case in which a provision of this Agreement conflicts with any provision in the Plan, this Agreement shall control.

(d) In administering the Trust, the Trustee shall be specifically authorized to:
- In accordance with authorized instructions, receive, hold and maintain custody of, and disburse Trust assets;
- Hold securities or other Trust property in book entry form or through another agent or nominee, including without limitation in an omnibus account arrangement;
- Collect income payable to and dividends or other distributions due to the Trust and sign any declarations, affidavits, and certificates of ownership required to collect income and principal payments;
- Collect proceeds from assets of the Trust that may mature or be called;

4

- Until authorized instructions are received, hold the assets of the Trust uninvested, or invest the assets of the Trust in bank accounts of any bank, and the Trustee may retain any earnings on such deposits as part of its compensation for services hereunder;
- Submit or cause to be submitted to Employer all information received by the Trustee regarding ownership rights pertaining to property held in the Trust;
- Make, execute and deliver any and all documents, agreements or other instruments in writing as is necessary or desirable for the accomplishment of any of the powers and duties in this Agreement; and
- Generally take any action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the fulfillment of its duties hereunder.

(e) In no event may Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by Employer, other than a de minimis amount held in common investment vehicles in which Trustee invests. All rights associated with assets of the Trust shall be exercised by Trustee or the person designated by Tr stee, and shall in no event be exercisable by or rest with Plan participants except that voting rights with respect to Trust assets will be exercised by Employer.

(f) Employer shall have the right, at any time, and from time to time, in its sole discretion to substitute assets of equal fair market value for any asset held by the Trust.

## Section 6. DISPOSITION OF INCOME.

(a) During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

## Section 7. ACCOUNTING BY TRUSTEE.

Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transa tions required to be made, including such specific records as shall be agreed upon in writing between Employer and Trustee. Within 30 days following the close of each calendar year and 30 days after the removal or resignation of Trustee, Trustee shall deliver to Employer a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be.

## Section 8. RESPONSIBILITY OF TRUSTEE.

(a) Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by Employer which is contemplated by, and in conformity with, the

5

terms of the Plan(s) or this Trust and is given in writing by Employer. In the event of a dispute between Employer and a party, Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b) If Trustee undertakes or defends any litigation arising in connection with this Trust, Employer agrees to indemnify Trustee against Trustee's costs, expenses and liabilities (including, without limitation, attorneys' fees and expenses) relating thereto and to be primarily liable for such payments. If Employer does not pay such costs, expenses and liabilities in a reasonably timely manner, Trustee may obtain payment from the Trust.

(c) Trustee may consult with legal counsel (who may also be counsel for Employer generally) with respect to any of its duties or obligations hereunder.

(d) Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations hereunder.

(e) Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein, provided, however, that if an insurance policy is held as an asset of the Trust, Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy.

(f) Notwithstanding any powers granted to Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.

## Section 9. COMPENSATION AND EXPENSES OF TRUSTEE.

(a) Employer shall pay all administrative and Trustee's fees and expenses. If not so paid, the fees and expenses shall be paid from the Trust.

(b) Trustee shall be entitled to compensation for services under this Agreement as set forth in the Fee Exhibit attached hereto and to reimbursement for expenses incurred by it in the discharge of its duties under this Agreement. Employer acknowledges that the Trustee may increase the amount of compensation on an annual basis with sixty (60) days' prior written notice to the Employer.

(c) The Trustee shall also be entitled to receive as part of its compensation any amounts earned under section 5 (d) related to earnings on deposits. Such earnings shall include earnings on uninvested cash relating to Plan contributions and earnings on uninvested cash pending distributions, or earnings on cash otherwise held uninvested as directed by Employer.

6

**Section 10. RESIGNATION AND REMOVAL OF TRUSTEE.**

(a) Trustee may resign at any time by written notice to Employer, which shall be effective 60 days after receipt of such notice unless Employer and Trustee agree otherwise.

(b) Trustee may be removed by Employer on 60 days notice or upon shorter notice accepted by Trustee.

(c) Upon resignation or removal of Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be completed within 60 days after receipt of notice of resignation, removal or transfer, unless Employer extends the time limit.

(d) If Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11 hereof, by the effective date of resignation or removal under paragraphs (a) or (b) of this section. If no such appointment has been made, Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

**Section 11. APPOINTMENT OF SUCCESSOR.**

(a) If Trustee resigns or is removed in accordance with section 10(a) or (b) hereof, Employer may appoint any third party, such as a bank trust department or other party that may be granted corporate Trustee powers under state law, as a successor to replace Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the Trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by Employer or the successor Trustee to evidence the transfer.

(b) The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing Trust assets, subject to sections 7 and 8 hereof. The successor Trustee shall not be responsible for and Employer shall indemnify and defend the successor Trustee from any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes successor Trustee.

(c) Any entity into which the Trustee may be merged or with which it may be consolidated, or any entity resulting from any merger or consolidation to which the Trustee is a party, or any entity succeeding to the trust business of the Trustee, shall become the successor of the Trustee hereunder, without the execution or filing of any instrument or the performance of any further act on the part of the parties hereto.

**Section 12. AMENDMENT OR TERMINATION.**

(a) The Trustee may amend this Agreement as necessary to comply with the provisions of applicable law and regulations. This Trust Agreement may be amended by a written instrument

7

executed by Trustee and Employer. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan(s) or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b) hereof.

(b) The Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s). Upon termination of the Trust any assets remaining in the Trust shall be returned to Employer.

(c) Upon written approval of participants or beneficiaries entitled to payment of benefits pursuant to the terms of the Plan(s), Employer may terminate this Trust prior to the time all benefit payments under the Plan(s) have been made.  All assets in the Trust at termination shall be returned to Employer.

## Section 13. MISCELLANEOUS.

(a) Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

(b) Benefits payable to Plan participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c) This Trust Agreement shall be governed by and construed in accordance with the laws of Connecticut.

(d)  Until such time as the Trustee receives a written notice to the contrary with respect to a particular security, the Trustee may release the identity and the address of the Trust to the security issuer which requests such information pursuant to the Shareholder Communications Act of 1985 for the specific purpose of the direct communication between such security issuer and shareholder.

(e)  All notices and other communications hereunder shall be in writing and shall be sufficient if delivered by hand or if sent by telefax or mail (including electronic mail), postage prepaid, addressed:

    (a)    If to the Trustee:

        Molly Garrett
        Vice President, ING Life Insurance and Annuity Company
        One Orange Way, C3N
        Windsor, CT 06095-4774

8

with a copy to:

J. Denise Jackson
President
ING National Trust
One Orange Way, C4R
Windsor, Connecticut 06095-4475

(b)    If to the Employer:
DR. ANGEL R PAGAN, CHAIRMAN
DEFERRED COMPENSATION PLAN COMMITTEE - (OFFICE A-744)
P.O. BOX 365067
SAN JUAN, PR 00936-5067

The parties may by like notice, designate any future or different address to which subsequent notices shall be sent. Any notice shall be deemed given when received.

(f) <u>Authority to Execute Agreement.</u> The Employer hereby certifies that it has the power and authority to enter into this Agreement on behalf of the Plan. The person(s) signing below on behalf of the Employer as Authorized Parties warrant, as individuals, that each is an authorized to act on behalf of the Employer all signatures are genuine and the persons indicated are authorized to sign.

(g) <u>Authorized Parties.</u> The Employer shall concurrently with the execution of this Agreement, furnish the Trustee with a written list of the names, signatures, and extent of authority of all persons authorized to direct the Trustee and otherwise act on behalf of the Employer under the terms of this Agreement as "Authorized Parties." Such persons designated by the Employer to act on its behalf hereunder are "Authorized Parties". The Trustee shall be entitled to rely on and shall be fully protected in acting upon directions, instructions, and any information provided by an Authorized Party until notified in writing by the Employer of a change of the identity or extent of authority of an Authorized Party.

(h) <u>Authorized Instructions.</u> All directions and instructions to the Trustee from an Authorized Party ("Authorized Instructions") shall be in writing, transmitted by mail (including electronic mail) or by facsimile. The Trustee shall be entitled to rely on and shall be fully protected in acting in accordance with all such directions and instructions which it reasonably believes to have been given by an Authorized Party and in failing to act in the absence thereof.

**Section 14. EFFECTIVE DATE.**

The effective date of this Trust Agreement shall be September 17, 2013.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the effective date set forth above.

9

UNIVERSITY OF
PUERTO RICO

By: _____

Name: JOSE F RODRIGUEZ

Title: ACTING CHANCELLOR

ING National Trust

By: _____

Name: Andrew F. Levesque

Title: Vice President

10

## FEES PAYABLE TO TRUSTEE

In consideration for services rendered according to the terms of this Agreement, the Trustee shall be paid according to the following fee schedule:

| | |
|---|---|
| $750 for each calendar year: | No explicit charge to the plan.  Included as part of compensation received by ING Life Insurance and Annuity Company for its performance of recordkeeping services |

11

## INCUMBENCY CERTIFICATE – AUTHORIZED PARTIES

UNIVERSITY OF PUERTO RICO, (the "Employer") hereby certifies that the persons whose names appear below are Authorized Parties to act on behalf of the Employer and the UNIVERSITY OF PUERTO RICO NON QUALIFIED DEFERRED COMPENSATION PLAN and to direct and instruct the Trustee through Authorized Instructions in accordance with Section 13(g) and Section 13(h) of the **TRUST UNDER** UNIVERSITY OF PUERTO RICO NON QUALIFIED DEFERRED COMPENSATION PLAN (the "Agreement") between the Employer and ING National Trust, as Trustee dated September 17 , 2013.

**NAME**                                      **SIGNATURE**

DR ANGEL R. PAGAN

DR. FRANCISCO LOPEZ

**EMPLOYER**

**BY:**

**TITLE:** Chancellor

**DATE:** 9/17/13

12

May 27, 2016

EXHIBIT IV

Molly Garrett
Vice President
Voya Retirement Insurance and Annuity Company
One Orange Way, C3N
Windsor, CT 06095-4774

Re:   **TRUST UNDER THE UNIVERSITY OF PUERTO RICO
      DEFERRED COMPENSATION PLAN;** *REMOVAL OF TRUSTEE*

Dear Mrs. Garrett:

As you know, the University of Puerto Rico (the "Employer") entered into two
agreements with ING National Trust for ING National Trust to act as Trustee for
the trust created in connection with the University of Puerto Rico Deferred
Compensation Plan (the "Trust"). The two agreements are identified as VK8236
and VFK095. After the agreement effective date ING National Trust has been
renamed Voya Institutional Trust Company.

Section 10(b) of both agreements indicates that the Trustee may be removed by the
Employer on 60 days' notice or upon shorter notice accepted by Trustee.
Section 10(d) of both agreements indicates that if the Trustee is removed, a
successor shall be appointed by the effective date of removal.

This letter is to communicate that the University of Puerto Rico hereby removes
Voya Institutional Trust Company as Trustee for the trust created in connection
with the Trust effective May 31, 2016. If the effective date of May 31, 2016 is not
acceptable to Voya Institutional Trust Company, then the University of Puerto Rico
hereby removes Voya Institutional Trust Company as Trustee for the trust created
in connection with the University of Puerto Rico Deferred Compensation Plan
effective July 26, 2016.

The University of Puerto Rico will communicate the name and address of the
Successor Trustee before the effective date of the removal with instructions for
immediate transfer of all assets held in trust to the Successor Trustee.

Be advised that the University of Puerto Rico accepts no liability for any expenses
incurred by Voya Institutional Trust in the further prosecution of the Petition after
this notification or for any expense incurred by Voya Institutional Trust after the
effective date of its removal as trustee. Any such expense will be the sole
responsibility of Voya Institutional Trust and, as such, shall not be charged to the
funds held in trust.

*Molly Garrett*
*Voya Retirement Insurance and Annuity Company*
*May 27, 2016*
*Page 2 of 2*

Given that the University of Puerto Rico has exercised its right to remove Voya Institutional Trust Company as Trustee for the Trust as of the effective date of removal, you are hereby instructed and directed to withdraw the Petition for Instruction filed pursuant to Article 77 of the New York Civil Practice Law and Rules ("CPLR") in the Supreme Court of the State of New York, County of New York (See Index No. 154311/2016) as soon as practicable.

The University of Puerto Rico has retained attorney Edgardo Barreto of Fiddler Gonzalez & Rodriguez, PSC and attorneys Leonardo Trivigno and James Gadsden of Carter Ledyard & Milburn, LLP as legal counsel to all matters related to the Trust. Please, have your legal representatives communicate with them in order to expedite the removal of Voya Institutional Trust Company.



Respectfully,

Uroyoán R. Walker Ramos, Ph.D.

Copies to:                J. Denise Jackson
                          President
                          Voya Institutional Trust Company
                          One Orange Way, C4R
                          Windsor, CT 06095-4774


Copies (Cont'd):          Edgardo Barreto Pagán, FGR
                          Leonardo Trivigno, CLM
                          James Gadsden, CLM
                          Juan Acosta Reboyras, UPR
                          Manuel E. Cámara Montull, UPR
                          Cristina Alcaraz Emmanuelli, UPR
                          Norberto González Pérez, UPR

El Presidente
de la
Universidad
de Puerto Rico

May 31, 2016

EXHIBIT V

Molly Garrett
Vice President
Voya Retirement Insurance and Annuity Company
One Orange Way, C3N
Windsor, CT 06095-4774



Re:   **TRUST UNDER THE UNIVERSITY OF PUERTO RICO
      DEFERRED COMPENSATION PLAN; *REMOVAL OF TRUSTEE***

Dear Mrs. Garrett:

As you know, the University of Puerto Rico (the "Employer") entered into two
agreements with ING National Trust for ING National Trust to act as Trustee for the
trust created in connection with the University of Puerto Rico Deferred Compensation
Plan (the "Trust"). The two agreements are identified as VK8236 and VFK095. After
the agreement effective date ING National Trust has been renamed Voya Institutional
Trust Company.

Section 10(b) of both agreements indicates that the Trustee may be removed by the
Employer on 60 days' notice or upon shorter notice accepted by Trustee. Section 10(d)
of both agreements indicates that if the Trustee is removed, a successor shall be
appointed by the effective date of removal.

This letter is to communicate that the University of Puerto Rico hereby removes Voya
Institutional Trust Company as Trustee for the trust created in connection with the
Trust effective May 31, 2016. If the effective date of May 31, 2016 is not acceptable
to Voya Institutional Trust Company, then the University of Puerto Rico hereby
removes Voya Institutional Trust Company as Trustee for the trust created in
connection with the University of Puerto Rico Deferred Compensation Plan effective
July 26, 2016.

The University of Puerto Rico will communicate the name and address of the
Successor Trustee before the effective date of the removal with instructions for
immediate transfer of all assets held in trust to the Successor Trustee.

Be advised that the University of Puerto Rico accepts no liability for any expenses
incurred by Voya Institutional Trust in the further prosecution of the Petition after this
notification or for any expense incurred by Voya Institutional Trust after the effective
date of its removal as trustee. Any such expense will be the sole responsibility of
Voya Institutional Trust and, as such, shall not be charged to the funds held in trust.

Jardin Botánico Sur
1187 Calle Flamboyán
San Juan, Puerto Rico
00926-1117
(787) 250-0000
Fax (787) 759-6917

Molly Garrett
Voya Retirement Insurance and Annuity Company
May 31, 2016
Page 2 of 2

Given that the University of Puerto Rico has exercised its right to remove Voya Institutional Trust Company as Trustee for the Trust as of the effective date of removal, you are hereby instructed and directed to withdraw the Petition for Instruction filed pursuant to Article 77 of the New York Civil Practice Law and Rules ("CPLR") in the Supreme Court of the State of New York, County of New York (See Index No. 154311/2016) as soon as practicable.

The University of Puerto Rico has retained attorney Edgardo Barreto of Fiddler González & Rodríguez, PSC and attorneys Leonardo Trivigno and James Gadsden of Carter Ledyard & Milburn, LLP as legal counsel to all matters related to the Trust. Please, have your legal representatives communicate with them in order to expedite the removal of Voya Institutional Trust Company.

Respectfully,

Uroyoán R. Walker Ramos, Ph.D.

Noel J. Ayma Santana, DMD, FAAPD, JD

Ángel Pagán, DMD, MPH

Copies to:            J. Denise Jackson
                      President
                      Voya Institutional Trust Company
                      One Orange Way, C4R
                      Windsor, CT 06095-4774

Copies (Cont'd):      Edgardo Barreto Pagán, FGR
                      Leonardo Trivigno, CLM
                      James Gadsden, CLM
                      Juan Acosta Reboyras, UPR
                      Manuel E. Cámara Montull, UPR
                      Cristina Alcaraz Emmanuelli, UPR
                      Norberto González Pérez, UPR

JUNTA DE GOBIERNO
UNIVERSIDAD DE PUERTO RICO

EXHIBIT VI

CERTIFICACIÓN NÚMERO 138
2015-2016

Yo, Gloria Butrón Castelli, secretaria de la Junta de Gobierno de la Universidad de Puerto Rico, CERTIFICO QUE:

La Junta de Gobierno de la Universidad de Puerto Rico, en su reunión ordinaria celebrada el 23 de mayo de 2016 y 27 de junio de 2016, habiendo considerado las recomendaciones del presidente de la Universidad de Puerto Rico, del rector del Recinto de Ciencias Médicas y de la Junta del Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas, aprobó lo siguiente:

1. Ratificar la terminación de *Voya Institutional Trust Company* como *"Trustees"* del *Rabbi-Trust* del Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas, según notificada el 27 de mayo de 2016.

2. Con efectividad inmediata, designar a los miembros de la Junta de Gobierno de la Universidad de Puerto Rico como *"Successor Trustees"* del *Rabbi-Trust* del Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas.

3. Disolver el Plan de Compensaciones Diferidas No Cualificado del Recinto de Ciencias Médicas y distribuir los fondos diferidos a sus participantes.

4. Autorizar al presidente de la Universidad de Puerto Rico y al Rector del Recinto de Ciencias Médicas a representar a la Universidad de Puerto Rico, ya sea individualmente o en conjunto, ante todo acto jurídico, otorgación de escrituras públicas o transacción de negocios necesaria para hacer cumplir las resoluciones aquí aprobadas, no más tarde del 31 de julio de 2016, o tan pronto sea administrativamente posible.

5. Dejar sin efecto las Certificaciones Número: 94 (1983-1984), 103 (1984-1985), 87 (1991-1992) y 92 (2011-2012).

Y PARA QUE ASÍ CONSTE, expido la presente Certificación, en San Juan, Puerto Rico, hoy 30 de junio de 2016.

Gloria Butrón Castelli
Secretaria

[Seal: University of Puerto Rico • 1903]
Board of Governors
University of Puerto Rico

Certification Number 138
2015-2016

I, Gloria Butrón Castelli, Secretary of the University of Puerto Rico Board of Governors, DO HEREBY CERTIFY THAT:

The University of Puerto Rico Board of Governors, in its regular meeting held on May 23, 2016 and June 27, 2016, having considered the recommendations of the President of the University of Puerto Rico, the Chancellor of the Medical Sciences Campus and the Medical Sciences Campus Nonqualified Deferred Compensation Plan Board, approved to:

1. Ratify the termination of the *Voya Institutional Trust Company* as "Trustees" of the Rabbi-Trust for the Medical Sciences Campus Nonqualified Deferred Compensation Plan, as notified on May 27, 2016.

2. Effective immediately, appoint the members of the University of Puerto Rico Board of Governors as "Successor Trustees" of the Rabbi-Trust for the Medical Sciences Campus Nonqualified Deferred Compensation Plan.

3. Dissolve the Medical Sciences Campus Nonqualified Deferred Compensation Plan and distribute the deferred funds among its participants.

4. Authorize the President of the University of Puerto Rico and the Chancellor of the Medical Sciences Campus to represent the University of Puerto Rico, either individually or jointly, in any legal act or in the execution of any public document or business transaction necessary to enforce the resolutions approved herein no later than July 31, 2016 or as soon as administratively possible.

5. Repeal Certifications Number: 94 (1983-1984), 103 (1984-1985), 87 (1991-1992), and 92 (2011-2012).

IN WITNESS WHEREOF, I issue the present certification, in San Juan, Puerto Rico, today, June 30, 2016.

[signature Gloria Butrón Castielli]
Gloria Butrón Castielli
Secretary

[Seal: University of Puerto Rico • 1903]