Hearing Date: August 9, 2017 at 9:30 a.m. (prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------x

AD HOC GROUP OF GENERAL OBLIGATION
BONDHOLDERS (the "GO Group"),

    Movant,

    v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Respondents.

**Re: ECF No. 694**

-----------------------------------------------------------------x

**OBJECTION OF DEBTORS TO MOTION OF AD HOC
GROUP OF GENERAL OBLIGATION BONDHOLDERS TO
<u>RECONSTITUTE STATUTORY COMMITTEE OF UNSECURED CLAIMHOLDERS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................... 1

Pertinent Facts ....................................................................................................................... 4

Objection ............................................................................................................................... 5

    a.    Creditors Claiming to Hold Secured Claims Have No Place on a Statutory Committee of Unsecured Claimholders ................................................................. 5

    b.    Appointing Creditors Holding Claims with Priority Over All Other Unsecured Claims Would Disrupt the UCC ........................................................... 8

    c.    The Constitutional Debtholders Are Adequately Represented, and Circumstances Do Not Warrant the Reconstitution of the UCC ............................ 9

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*In re Beker Indus. Corp.*,
 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) ................................................................................9

*In re Churchill Coal Corp.*,
 31 B.R. 115 (Bankr. S.D.N.Y. 1983) ........................................................................................7

*In re Cumberland Farms*,
 142 B.R. 593 (Bankr. D. Mass. 1992) ..................................................................................7, 8

*In re Daig Corp.*,
 17 B.R. 41 (Bankr. D. Minn. 1981) ..........................................................................................7

*In re Dana Corp.*,
 344 B.R. 35 (Bankr. S.D.N.Y. 2006) ..................................................................................9, 10

*In re Dow Corning Corp.*,
 194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd,* 212 B.R. 258 (E.D. Mich.
 1997) .........................................................................................................................................6

*In re Drexel Burnham Lambert Grp., Inc.*,
 118 B.R. 209 (Bankr. S.D.N.Y. 1990) ......................................................................................6

*In re Garden Ridge Corp.*,
 No. 04-10324 (DDS), 2005 Bankr. LEXIS 323 (Bankr. D. Del. Mar. 2, 2005) ........................6

*In re Grynberg*,
 10 B.R. 256 (Bankr. D. Colo. 1981) .........................................................................................7

*In re Hills Stores*,
 137 B.R. 4 (Bankr. S.D.N.Y. 1992) ......................................................................................8, 9

*In re Laclede Cab Co.*,
 145 B.R. 308 (Bankr. E.D. Mo. 1992) ......................................................................................7

*In re Microboard Processing, Inc.*,
 95 B.R. 283 (Bankr. D. Conn. 1989) ........................................................................................7

*In re Ne. Dairy Co-op. Fed'n, Inc.*,
 59 B.R. 531 (Bankr. N.D.N.Y. 1986) .......................................................................................6

*In re Park W. Circle Realty, LLC*,
 No. BKR. 10-12965 AJG, 2010 WL 3219531
 (Bankr. S.D.N.Y. Aug. 11, 2010) ...................................................................................6

*In re Richmond Tank Car Co.*,
 93 B.R. 504 (Bankr. S.D. Tex. 1988) ............................................................................7

*In re Salant Corp.*,
 53 B.R. 158 (Bankr. S.D.N.Y. 1985) .............................................................................6

*In re Seaescape Cruises, Ltd.*,
 131 B.R. 241 (Bankr. S.D. Fla. 1991) ...........................................................................7

*In re Shorebank Corp.*,
 467 B.R. 156 (Bankr. N.D. Ill. 2012) ...........................................................3, 6, 12, 13

*In re Wang Labs., Inc.*,
 149 B.R. 1 (Bankr. D. Mass. 1992) ..............................................................................9

**STATUTES**

11 U.S.C. § 506(b) ...........................................................................................................7, 8

11 U.S.C. § 1102(a)(1).........................................................................................................5

11 U.S.C. § 1102(a)(4).........................................................................................................9

11 U.S.C. § 1109...........................................................................................................10, 12

PROMESA § 106(e) ..........................................................................................................11

PROMESA § 201(c)(3).......................................................................................................11

PROMESA § 301(a) ..................................................................................................5, 6, 10

PROMESA § 315(b) ............................................................................................................1

PROMESA § 405(m)(2) ......................................................................................................2

PROMESA § 503(b) ............................................................................................................9

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"),[2] the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submit this objection (the "Objection") to the *Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(4)* [ECF No. 694] (the "Motion"), and respectfully represent as follows:

**Preliminary Statement**

1.  **The Ad Hoc Group of General Obligation Bondholders (the "GO Group") Is a Main Focal Point in these Title III Cases.** Before and during these Title III cases, the Oversight Board, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and their advisors have spent more time attempting to formulate a plan acceptable to the GO Group than in any other single endeavor. Regardless of whether GO Group representatives are put on the existing statutory creditors' committee, we intend to continue to work with the GO Group and its two law firms, the Paul Weiss firm and the Robbins Russell firm, to reach a successful plan.

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion (as defined herein) or are defined below.

[3] PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

2. <u>The GO Group Asserts It Is Secured and Has First Priority on All Available Resources</u>. On page 1, footnote 3 of its Motion, the GO Group asserts it is secured by a statutory lien against all "available resources" of the Commonwealth. On page 4, paragraph 6 of its Motion, the GO Group acknowledges it asserts that regardless of its secured position, it has a first priority claim to all available resources. Not only do the GO Group's admissions render its representatives ineligible and/or inappropriate for membership on a statutory committee, but in the context of this case where there does not appear to be sufficient assets to pay the Constitutional Debtholders in full, the admissions show the GO Group would have to be excluded from virtually every committee discussion that entails paying anything to a creditor who is not a Constitutional Debtholder. And, bottom line, it is clear the GO Group is adequately represented.

3. The Motion seeks an order (i) directing the United States Trustee (the "<u>U.S. Trustee</u>") to reconstitute the statutory committee of unsecured claimholders (the "<u>UCC</u>") so that Constitutional Debtholders are appointed to the UCC, or, in the alternative, (ii) appointing an additional committee of Constitutional Debtholders.

4. The Motion must be considered in the unique and emergency circumstances faced by the Commonwealth. First, the Commonwealth is fighting for its life and future within a fiscal emergency declared by Congress where the Commonwealth cannot "provide its citizens with effective services" (PROMESA § 405(m)(2)). Second, to provide for its citizens, the Commonwealth needs all its component parts to work in harmony for the Commonwealth to exist and survive. This mission cannot be accomplished if separate groups divert the

Commonwealth's and Oversight Board's time and resources to pursue their parochial interest at the expense of others and the integrated enterprise.[4]

5. The Motion should be denied. Primarily, as the U.S. Trustee put it in denying the reconstitution of the UCC to include Constitutional Debtholders, creditors asserting secured claims or full priority over other unsecured claims have no place on an existing or separate[5] statutory committee of unsecured claimholders.[6] Secondly, the GO Group also fails to show that a change in committee membership is at all "necessary" to ensure adequate representation of unsecured claimholders—let alone in the "usual sense [of the "necessary"] of 'absolutely required,' 'essential,' or 'indispensable.'" *In re Shorebank Corp.*, 467 B.R. 156, 164–65 (Bankr. N.D. Ill. 2012) (internal citations omitted).

6. <u>First</u>, the GO Group cannot join an unsecured claimholders' committee on the basis that the unsecured claimholders object to the GO Group's asserted secured status. The GO Group itself contends the debt its constituency holds is secured. *See, e.g.*, Motion ¶ 1 n.3. On this basis alone, the GO Group's request for the reconstitution of the UCC must fail.

---

[4] For example, the GO Group appears not to appreciate the importance of the Commonwealth's integrated enterprise and the preservation of public services. *See, e.g.*, Motion ¶ 4 ("the Committee is construed to 'preserve the public services,' even at the cost of . . . Constitutional Debtholders"); ¶ 46 ("Constitutional Debtholders' primary goal is to maximize recoveries on their claims.").

[5] In their 35-page Motion, the GO Group spends barely half a page arguing for its alternative request for relief—an additional statutory committee of Constitutional Debtholders. Appointing such committee would serve literally nothing but shift the GO Group's advisor costs to the Debtors and add another layer of expense. Because of that, other reasons stated herein, and the reasons set forth in the Debtors' objections to the requests for additional statutory committees submitted by the University of Puerto Rico Retirement System Trust [ECF Nos. 607, 692] and the Ad Hoc Puerto Rico Municipalities Committee [ECF No. 709], no additional statutory committees should be appointed in these cases.

[6] The U.S. Trustee's letter denying the GO Group's request for the reconstitution of the UCC is attached as Exhibit D to the Motion.

7. <u>Second</u>, the GO Group asserts Constitutional Debtholders have priority over all other creditors of the Commonwealth. *See, e.g.*, Motion ¶¶ 44, 46. It does not serve any purpose to appoint to the UCC a constituency that believes it is entitled to all available funds before anyone else can get a penny, other than inserting a deeply-rooted conflict into the UCC that would inevitably disrupt or, worse, completely halt the UCC's ability to function and represent the groups of unsecured claimholders that truly need a voice.

8. <u>Third</u>, the Constitutional Debtholders are more than adequately represented in these cases by the GO Group, a group of sophisticated funds represented by prominent counsel. The GO Group has been closely involved with the Commonwealth's restructuring long before these cases were commenced and has actively participated in practically every aspect of these Title III cases without the "official" status of a statutory committee. There is no reason it cannot continue to do so without the appointment of Constitutional Debtholders to the UCC.

**Pertinent Facts**

9. On June 15, 2017, the U.S. Trustee appointed the UCC. *See Appointment of Official Committee of Unsecured Creditors in the Commonwealth of Puerto Rico* [ECF No. 338].[7] Its seven members include two labor unions, trade creditors, and a tax refund claimant.

10. As set forth in the Motion, before the U.S. Trustee appointed the UCC, the GO Group sent a letter urging the U.S. Trustee not to appoint a statutory committee of unsecured claimholders *at all*, or, in the alternative, to appoint one composed primarily, if not entirely, of Constitutional Debtholders, or appoint a separate committee of Constitutional Debtholders. Motion ¶ 12. In addition, two members of the GO Group (and perhaps other Constitutional Debtholders) expressed willingness to serve on the UCC and attended the formation meeting.

---

[7] On the same day, the U.S. Trustee appointed the Retiree Committee. *See Appointment of Official Committee of Retirees in the Commonwealth of Puerto Rico* [ECF No. 340].

Motion ¶ 13.  In spite all that, the U.S. Trustee did not appoint any Constitutional Debtholders to the UCC.  After formation of the UCC, the GO Group sent another letter to the U.S. Trustee asking for the relief it is requesting by the Motion:  the reconstitution of the UCC to include Constitutional Debtholders.  Motion ¶ 16.  The U.S. Trustee denied such request, reasoning that "the general unsecured creditors . . . appointed to the [UCC] do not assert that their claims are either in some manner secured or entitled to priority payment," and the UCC would not be reconstituted "to add creditors claiming that their claims are secured or otherwise have full priority."  Motion at Exhibit D.

## Objection

### a. Creditors Claiming to Hold Secured Claims Have No Place on a Statutory Committee of Unsecured Claimholders

11. The UCC is a committee appointed pursuant to Bankruptcy Code section 1102(a)(1), made applicable to these cases by PROMESA section 301(a), which provides that "the United States trustee shall appoint a committee of creditors holding *unsecured claims* . . . ." 11 U.S.C. § 1102(a)(1) (emphasis added).  The GO Group contends Constitutional Debtholders hold secured claims.  *See, e.g.*, Motion ¶ 1 n.3 ("The GO Group disputes the Commonwealth's assertion that Constitutional Debtholders are general unsecured creditors.  In due course, the GO Group will establish that Constitutional Debt is protected by a statutory lien . . . .").  As such, appointing Constitutional Debtholders to the UCC would cause the UCC to cease satisfying the statutory mandate in section 1102(a)(1) that there should be a committee of creditors holding unsecured claims.[8]  Pursuant to Bankruptcy Code section 502(a), made applicable by PROMESA

---

[8] The GO Group's suggestion that the Court and the U.S. Trustee retain the ability to remove Constitutional Debtholders from the UCC if the Court determines their claims are secured is simply self-serving.  Motion ¶ 6.  Instead of wasting UCC's, the Oversight Board's, and the UCC's time and resources by reconstituting the UCC only to potentially undo such change later, the U.S. Trustee or Court could do the opposite:  wait until the determination that the

section 301(a), a proof of claim is deemed allowed until a party in interest objects. Therefore, the GO Group claims are deemed allowed secured claims until objected to.

12. Contrary to the GO Group's assertion, this **is** a disqualifying conflict. Given the Constitutional Debtholders' unique motives and interests, as further described below, appointing the Constitutional Debtholders to the UCC would create the type of conflict that would prevent the UCC from upholding its fiduciary obligations to *all* unsecured claimholders. *See, e.g.*, *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 Bankr. LEXIS 323, *12 (Bankr. D. Del. Mar. 2, 2005) (adequate representation would be lacking where conflicts of interests "prevent an official committee from upholding its fiduciary obligations to all general unsecured creditors") (internal citations omitted); *see also In re Shorebank Corp.*, 467 B.R. at 163 (same). The decisions the GO Group cites regarding the diverse and/or conflicting groups of creditors that may participate on statutory committees do not support a different outcome.[9] Indeed, none of

---

Constitutional Debtholders' claims are unsecured, and then reconsider the present request—and even then, the conclusion would have to be that the Constitutional Debtholders need not participate on the UCC to be adequately represented.

[9] *See, e.g.*, *In re Park W. Circle Realty, LLC*, No. BKR. 10-12965 AJG, 2010 WL 3219531, *1, 3 (Bankr. S.D.N.Y. Aug. 11, 2010) (appointing claimholder with largest unsecured claim to committee where no other committee member objected—one member even offered to withdraw to make room for such claimholder—and noting that under different circumstances, a guarantee claim could be a basis not to appoint an entity to a committee due to such entity's ability to recover from additional sources); *In re Dow Corning Corp.*, 194 B.R. 121, 146 (Bankr. E.D. Mich. 1996), rev'd, 212 B.R. 258 (E.D. Mich. 1997) (appointing committee of physician claimants who were wholly unrepresented and who never asserted secured claims); *In re Ne. Dairy Co-op. Fed'n, Inc.*, 59 B.R. 531, 535 (Bankr. N.D.N.Y. 1986) (enlarging committee membership to allow for one member each from a pension trustee with unpaid contribution claims and a union with unpaid compensation claims against the debtor, where such claimants were not adequately represented and who professed to have unsecured claims); *In re Salant Corp.*, 53 B.R. 158, 160 (Bankr. S.D.N.Y. 1985) (ordering U.S. Trustee to appoint additional members to committee to represent previously unrepresented non-management employee claimholders with unsecured claims); *see also In re Drexel Burnham Lambert Grp., Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990) (declining to appoint movant to a statutory committee for failure to demonstrate lack of adequate representation).

these decisions presents a situation like the one at hand in which creditors claiming to hold secured claims were appointed to a committee of *unsecured* claimholders.[10] Indeed, "[u]nlike an unsecured creditor who looks only to general estate assets for payment, a [secured claimholder] looks primarily to its own collateral for payment." *In re Cumberland Farms*, 142 B.R. 593, 595 (Bankr. D. Mass. 1992) (where a committee of lenders holding secured claims was appointed, the court denied their request to employ counsel, finding that in light of the appointment of an unsecured claimholders' committee, any benefit provided by the secured lenders' committee would simply flow to such lenders and not the estate, and instructed the lenders' committee to either bear the costs of counsel or disband).[11]

---

[10] The only remotely applicable decision cited by the GO Group, *In re Seaescape Cruises, Ltd.*, 131 B.R. 241, 243 (Bankr. S.D. Fla. 1991), involved claimants that were not yet required to elect to assert a maritime lien or not—unlike the Constitutional Claimholders, who have unequivocally expressed their intent to assert a statutory lien. Also, unlike in *In re Seaescape Cruises, Ltd.*, where the Court took a rarely-followed position that a creditor holding both unsecured and secured claims can serve on a committee, the GO Group does not even allow for the possibility that part of their claims are unsecured. None of the other decisions the GO Group relies on relate to disputed claims in which the dispute was whether a claim was secured or not. *See In re Laclede Cab Co.*, 145 B.R. 308, 309 (Bankr. E.D. Mo. 1992) (disputed claim based on pre-petition default judgment obtained against the Debtor and its amount and/or validity was appealed by the Debtor prior to the commencement of case); *In re Microboard Processing, Inc.*, 95 B.R. 283, 285 (Bankr. D. Conn. 1989) (disputed claim arose out of alleged breaches of contracts and is amount and/or validity are now the subject of litigation); *In re Richmond Tank Car Co.*, 93 B.R. 504, 506 (Bankr. S.D. Tex. 1988) (the creditor had a "disputed" claim the amount of which was being litigated in state court); *In re Churchill Coal Corp.*, 31 B.R. 115, 116 (Bankr. S.D.N.Y. 1983) (party filing of a proof of claim is prima facie evidence of the validity and amount of such claim, and can remain on creditor's committee notwithstanding debtor's claim the party is not a creditor); *In re Daig Corp.*, 17 B.R. 41, 42 (Bankr. D. Minn. 1981) (a party (who claimed no security) holding the largest single claim against the debtor should not be removed from committee merely because the debtor disputes the claim); *In re Grynberg*, 10 B.R. 256, 257 (Bankr. D. Colo. 1981) ("we find that a creditor whose [right to payment] is disputed is nonetheless a creditor holding an unsecured claim [and should not be excluded from a creditors' committee]").

[11] In *In re Cumberland Farms*, the court noted that where a number of secured lenders share common collateral, a committee may serve the interest of all—but even in such case, the expenses of committee counsel would be added to the debt only to the extent permitted by Bankruptcy Code section 506(b). *In re Cumberland Farms*, 142 B.R. at 595. Here, the GO

### b. *Appointing Creditors Holding Claims with Priority Over All Other Unsecured Claims Would Disrupt the UCC*

13. The Constitutional Debtholders' asserted first priority claim to all available resources, *see, e.g.*, Motion ¶ 32, creates a similarly disqualifying conflict that weighs against appointing representatives of such group to the UCC. In fact, as the GO Group correctly notes, the "economic effect—and therefore the potential conflict—is no different under either [the statutory lien or first priority claim against all available resources]." Motion ¶ 69. In the same vein, the Motion complains that Constitutional Debtholders should be appointed to the UCC because of the size of their claims. Yet, it is also the size of their claims that makes the Constitutional Debtholders inherently conflicted because their purported priority may result in them getting everything at the expense of all other unsecured claimholders at the Commonwealth, which would directly impact the Commonwealth's ability to successfully restructure as an integrated enterprise.

14. When such a strong conflict of interests exists, the jurisprudence cited by the GO Group does not suggest a conflicted group should be inserted into a statutory committee at any cost. *See, e.g.*, *In re Hills Stores*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992) ("[T]he ultimate aim is to strike a ***proper*** balance . . . The inclusions of [various groups of unsecured claimholders] within one committee ***may*** facilitate the . . . negotiation of a consensual plan") (emphasis added). Additionally, diverse interests already are represented on the UCC, whose members represent unions, trade creditors, and tax refund claimants. None of these groups have legal positions even remotely similar to the Constitutional Debtholders, and are certainly not as well represented as the Constitutional Debtholders have been in and out of these Title III cases.

---

Group is clearly not asking for a separate statutory committee of Constitutional Debtholders whose cost would be allowed solely if permitted by section 506(b).

### c. *The Constitutional Debtholders Are Adequately Represented, and Circumstances Do Not Warrant the Reconstitution of the UCC*

15. Even if Constitutional Debtholders did not have disqualifying conflicts barring their appointment to the UCC, the requirements for the reconstitution of the UCC are not met. Bankruptcy Code section 1102(a)(4) provides that the court can order the U.S. Trustee to change the membership of a statutory committee "if the court determines that the change is necessary *to ensure adequate representation of creditors* . . . ." 11 U.S.C. § 1102(a)(4) (emphasis added); *In re Wang Labs., Inc.*, 149 B.R. 1, 2 (Bankr. D. Mass. 1992) ("['adequacy of representation'] must be determined by the facts of the case.") (citing *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985)). The Bankruptcy Code does not define "adequate representation." While there is no "bright-line" test for adequate representation, *In re Hills Stores Co.*, 137 B.R. at 5, courts have considered the following criteria in determining whether a creditor is adequately represented:

> (1) the ability of the committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) the ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to § 503(b); (5) whether different classes may be treated differently under a plan and need representation; (6) the motivation of the movants; (7) the delay and additional cost of granting the motion; (8) the point in the proceeding when the motion is made; (9) the tasks the committee is to perform; and (10) any other relevant factors.

*In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citations omitted). Each such criteria warrants against the reconstitution of the UCC.[12]

16. <u>The Constitutional Debtholders are More Than Able to Participate in These Cases Without a Statutory Committee</u>. As the GO Group admits, a statutory committee does not need

---

[12] Because certain of these factors overlap in the circumstances of these cases, each factor is not addressed separately, but may be addressed together with other factors or in other sections herein.

to precisely reflect the makeup of the debtor's creditors—but it asserts creditors should have a voice commensurate with their importance in the case. Motion ¶ 2. In these cases, the Constitutional Debtholders have more than an adequate voice.[13] The GO Group has actively participated in practically every aspect of these Title III cases and has vigorously defended the positions of Constitutional Debtholders without the "official" status of a statutory committee. In light of that, it is unsurprising the Motion spends a mere three sentences attempting to argue that the Constitutional Debtholders have no ability to participate in these cases without participation on the UCC. Motion ¶ 60. The GO Group's contention that there is no indenture trustee to speak on behalf of all Constitutional Debtholders and that many smaller Constitutional Debtholders are unable to meaningfully participate is disingenuous. *Id*. The "smaller" Constitutional Debtholders have the same types of claims the GO Group holds, and are therefore equally benefitted by the GO Group's vigorous pursuit of its interests.

17. <u>Appointing Constitutional Debtholders to the UCC Would Disrupt or Halt the UCC's Ability to Function Because of the Constitutional Debtholders' Rights</u>. The GO Group clearly states what the mission of Constitutional Debtholders serving on the UCC would be: maximize recoveries on their claims (apparently at the expense of, and regardless of, the successful reorganization of the Commonwealth) by enforcing their first priority status, seeking

---

[13] In light of that, if the Constitutional Debtholders' claims are treated differently under a plan, they certainly do not *need* representation, as the sixth factor of the criteria outlined in *In re Dana Corp.*, 344 B.R. at 38 would require. The GO Group argues (unpersuasively) that the UCC will be unable to weigh-in on the treatment of the Constitutional Debtholders' class if no such claimants are part of the UCC, Motion ¶ 44—first, as a party in interest, the UCC may be heard on any issue pursuant to Bankruptcy Code section 1109, incorporated in PROMESA section 301(a), and second, as amply explained herein, the Constitutional Debtholders are perfectly capable of weighing in and negotiating for themselves.

to invalidate the COFINA structure, and rectify the flaws in the Fiscal Plan.[14] Motion ¶ 46. In other words, the GO Group seeks to get its constituency appointed to the UCC to hijack its mission by furthering its agenda. The GO Group even admits that these interests "may" (a gross understatement) diverge from the interests of lower-priority creditors in certain regards. *Id*. These facts do nothing but support the U.S. Trustee's decision not to create an insurmountable conflict in the UCC by appointing a well-represented and active group of creditors with potential priorities to a statutory committee now comprised of groups of unsecured claimholders that risk receiving meager, if any, recoveries at the expense of the Constitutional Debtholders. These are the groups that really need a voice. If Constitutional Debtholders are appointed to the UCC, their voice may be silenced, and the UCC's ability to function may be completely halted by conflicts so deep that could make the UCC completely stagnant and inefficient, rather than facilitating the consensual resolution of conflicting priorities, as the GO Group would have the Court believe. Motion ¶ 46.

18. Moreover, the GO Group's letters to the U.S. Trustee advocating for either no statutory committee of unsecured claimholders or one comprised primarily, if not exclusively, of Constitutional Debtholders, coupled with the Motion's sentiment that "the failure to include any Constitutional Debtholder on the Committee ensures that the Committee will not advocate zealously on behalf of all creditors," Motion ¶ 4, shows that the GO Group is merely interested in controlling the UCC, now that there is one, and maximizing its recoveries rather than the welfare of the integrated enterprise. The GO Group asserts that a UCC "that reflects the views of different types of creditors will be better able to function and better motivated to maximize the

---

[14] In suggesting that the UCC may play a significant role in addressing the "numerous flaws" raised with the Fiscal Plan, Motion ¶ 55, the GO Group disregards that the Oversight Board's certification of the Fiscal Plan is not subject to review. PROMESA §§ 106(e) and 201(c)(3).

assets available for distribution." Motion ¶ 61. But in these very specific cases, simply maximizing assets available for distribution is not a viable path towards the Commonwealth's turnaround, and constituencies currently represented on the UCC may be more concerned with the future of the Commonwealth than immediate distributions to creditors.[15] Indeed, if the Motion is denied, the UCC can continue acting as an advocate for the Commonwealth's unsecured claimholders that do not have the protections and priorities the Constitutional Debtholders claim to have, and can continue providing a view separate and apart from the well-known positions the Constitutional Debtholders have taken through the GO Group and otherwise.

19. In a case with many parallels, *In re Shorebank Corp.*, 467 B.R. 156, the court denied a motion seeking to reconstitute the statutory unsecured claimholders' committee. The movants (two former directors and a personal injury claimant) alleged that certain creditors dominated the committee and would pursue their own interests—akin to what the GO Group is accusing the current UCC constituents of. Yet, like in *In re Shorebank Corp.*, the GO Group cannot furnish the Court with specific evidence that the existing UCC members have breached or are likely to breach their fiduciary duty to the creditor body, or demonstrate that the conflict would prevent the UCC from upholding its fiduciary obligations to all unsecured claimholders. *Id.* at 163. Accordingly, "there is simply no reason to send the U.S. Trustee back to the drawing board and disrupt the bankruptcy case any more than it has already been disrupted." *Id.* at 164. And, as the court in *In re Shorebank Corp.* suggested, Bankruptcy Code section 1109 allows the

---

[15] At the June 28, 2017 hearing, the UCC's proposed counsel stated, among other things: "[P]eople who are actually creditors also live on the island. Everything has an impact on them." June 28, 2017 Hr'g Tr. 29:4–6.

GO Group or other Constitutional Debtholders to object and be heard directly, without the status of a statutory committee. *Id.*

20. <u>Granting the Motion Will Result in Significant Cost and Delay</u>. Contrary to the GO Group's assurances, Motion ¶ 59, granting the Motion will result in cost and delay. If the UCC is reconstituted, as described above, the UCC's functioning will be hampered (by way of requested changes either in positions already taken by the UCC, or strategies to be employed in the future) by the motivations of the Constitutional Debtholders, which would most likely increase the time and resources required by not just the UCC's, but also the Oversight Board's and Commonwealth's professionals. Obviously, if the Court were to grant the relief the GO Group is seeking alternatively—the appointment of a separate committee—the cost and delay would skyrocket.

21. <u>The UCC's Role in the Commonwealth-COFINA Dispute</u>. Finally, that the UCC would serve as the Commonwealth's agent in the Commonwealth-COFINA dispute certainly does not preclude Constitutional Debtholders from participating in that process, even though they are not members of the UCC. First, the GO Group has been actively involved in the development of the Commonwealth-COFINA protocol. Second, in the GO Group's own words, the claims of the unsecured claimholder groups represented on the UCC are subordinated to the Constitutional Debtholders' claims. If that is the case, the UCC has an even greater incentive to achieve the best possible result for the Commonwealth—at a minimum, that would secure a recovery for unsecured claimholders subordinated to Constitutional Debtholders.[16]

---

[16] It is unclear why the GO Group thinks Commonwealth claimholders other than Constitutional Debtholders have no significant stake in the Commonwealth-COFINA dispute, Motion ¶ 5—to the contrary, creditor groups represented on the UCC may have the largest stake in such dispute because they risk getting nothing at all.

WHEREFORE the Debtors respectfully request the Court to (a) sustain the Objection, (b) deny the Motion, and (c) grant the Debtors such other and further relief as is just.

Dated: July 28, 2017
      San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/ Ubaldo M. Fernández

Ubaldo M. Fernández
USDC No. 224807
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*