*Hearing Date*: August 9, 2017 at 9:30 (EST)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | Case No. 17-cv-01578 |
| As representative of | (Jointly Administered)[1] |
| THE COMMONWEALTH OF PUERTO RICO, | Hon. Laura Taylor Swain |
| Debtor, | |

## UNITED STATES TRUSTEE'S RESPONSE TO THE MOTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS TO RECONSTITUTE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 1102(a)(4)

Guy G. Gebhardt, the Acting United States Trustee for Region 21 (the "U.S. Trustee"), files this response to the request for an order (i) directing the U.S. Trustee to change the membership of the Official Committee of Unsecured Creditors of the Commonwealth (the "Committee"), or (ii) in the alternative, appointing an additional committee of Constitutional Debtholders, dated July 21, 2017, ECF No. 696 (the "Motion"), filed by the Ad Hoc Group of General Obligation Bondholders (the "Ad Hoc Group").

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). Case Nos. 17 BK 3283-LTS and 17 BK 3284-LTS are jointly administered by order of the court.

## INTRODUCTION

In the Motion, the Ad Hoc Group argues that creditors who firmly assert that they are *secured* are nevertheless entitled to representation on an official committee of *unsecured* creditors. The motion should be denied. In this case, the U.S. Trustee conducted a robust committee formation process and appointed a Committee which adequately represents the unsecured creditors. While the general obligation ("General Obligation") bondholders sought membership on the Committee, the U.S. Trustee, after considering their request, properly excluded the requesting General Obligation bondholders from membership on the Committee because they are actively and aggressively pursuing their secured status and thus cannot serve as fiduciaries for the unsecured creditor body.

We understand the unusual facts bearing on committee representation in this case. But there simply is no provision in the Bankruptcy Code for "provisional seating" on a committee. As long as the bondholders assert that they are wholly secured, they are not entitled to representation. As acknowledged by the Committee in these proceedings, to the extent that the General Obligation bondholders are later adjudicated to be unsecured claimants, the Committee already has a fiduciary duty to protect their rights. Furthermore, it is highly likely that General Obligation bondholders would be added to the committee soon after such an adjudication. The irony is that General Obligation bondholders zealously argue that they are secured and that position disqualifies them from representation on the Committee unless and until their position is rejected by the court.

## STATUTORY BACKGROUND

Section 1102 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., applies to these Title III proceedings. *See* Section 301(a) of the Puerto Rico Oversight, Management and

Economic Stability Act or PROMESA, 48 U.S.C. § 2161. In applicable part, section 1102 provides:

> **(a) (1)** Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.
>
> **(2)** On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.
>
> * * * *
>
> **(4)** On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. . . .
>
> **(b) (1)** A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

11 U.S.C. § 1102(a)(1), (2), and (4) and (b)(1).

## FACTUAL BACKGROUND

Although these cases are quite complex, the facts germane to the determination of the Motion are straightforward. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico filed a petition with this Court under title III of PROMESA for the Commonwealth of Puerto Rico (the "Commonwealth"). Under PROMESA, the filing of a Title III petition constitutes an "order for relief." PROMESA, section 304(c).

3

Even before the passage of PROMESA in the summer of 2016, persons following the Commonwealth's financial situation would know that a central, if not *the* central, issue in any financial restructuring of the Commonwealth and its related entities would be the degree of legal protection afforded General Obligation bonds and other public debt backed by the full faith and credit of the Commonwealth. In litigation that commenced soon after the passage of PROMESA, holders of General Obligation bonds strongly asserted that they held first priority statutory liens on Commonwealth revenues, including revenues that had been assigned to other classes of bonds. *Lex Claims, LLC v. Puerto Rico*, No. 3:16cv2374 (D.P.R. July 20, 2016). These disputes among varying groups of creditors have continued after the filing of the Title III proceedings.

The U.S. Trustee, while mindful of the unsettled circumstances in the Commonwealth proceeding, acted pursuant to his duties under section 1102(a)(1), to "appoint a committee of creditors holding *unsecured claims*" against the Commonwealth. 11 U.S.C. § 1102(a)(1) (emphasis added). He solicited expressions of interest from parties in interest and interviewed many creditors at a formation meeting held in San Juan on June 9, 2017. On June 15, 2017, the U.S. Trustee filed with the Court the Appointment of the Committee of Unsecured Creditors in the Commonwealth of Puerto Rico. ECF No. 338.

On July 11, 2017, the Ad Hoc Group sent the U.S. Trustee a letter demanding that the Committee be reconstituted to include holders of Commonwealth general obligation bonds. The arguments in the July 11 letter were virtually identical to the arguments in the Motion. For the reasons recited in this response, the U.S. Trustee declined to reconstitute the Committee. The Motion followed on July 19, 2017.

4

**ARGUMENT**

### 1. The claims for "Constitutional Debt" held by the Ad Hoc Group cannot be considered unsecured claims for purposes of representation by the Committee.

The Ad Hoc Group holds several billion dollars in general obligation bonds and other obligations of Puerto Rico secured by the full faith and credit of the Commonwealth. For the sake of brevity, the U.S. Trustee will accept the Ad Hoc Group's description of such claims as "Constitutional Debt." The Ad Hoc Group has adamantly asserted that its claims for Constitutional Debt are fully secured by a statutory lien on "available resources" of the Commonwealth. *See, e.g.,* Complaint at ¶¶ 2-4, *ACP Master, Ltd. v. Puerto Rico*, No. 17-00189-LTS (D.P.R. Jun. 29, 2017), ECF No. 1.

Despite their entrenched position that holders of Constitutional Debt are fully secured creditors, the Ad Hoc Group paradoxically argues that, because *the Commonwealth* believes that the Constitutional Debt is unsecured, the Constitutional Debt is unsecured and entitled to representation on the Committee. *The U.S. Trustee takes no position on whether the Constitutional Debt is secured or unsecured.* But it is one or the other.[2] The Ad Hoc Group simply cannot have it both ways.

In support of its Motion, the Ad Hoc Group cites decisions holding that holders of disputed, unliquidated, and contingent claims are eligible to serve on unsecured committees. The U.S. Trustee agrees with these decisions. But they simply do not apply to these facts. The disputed, unliquidated, and contingent claims in those cases are all *unsecured* claims. Here the

---

[2] Note that this case differs from the common bankruptcy scenario where a secured creditor has an unsecured deficiency claim. If that creditor seeks membership on the unsecured creditors' committee, the U.S. Trustee will seek to determine if the creditor seeks to vindicate its rights as a secured creditor or its rights as an unsecured creditor. If the U.S. Trustee decides that the secured claim has primacy, the U.S. Trustee will ordinarily refrain from appointing that creditor to the unsecured creditors' committee.

5

dispute is over whether the claims are secured. Such disputes are not uncommon. What is uncommon, if not unprecedented, is for the creditor asserting secured status to try to use the dispute over its status to establish some kind of conditional unsecured status to seek appointment to the Committee.

> **2. The Committee need not "adequately represent" the interests of the Ad Hoc Group because the Ad Hoc Group are not creditors whom the Committee was appointed to represent.**

The Ad Hoc Group asserts that the Court should "reconstitute" the Committee under section 1102(a)(4) to ensure adequate representation of creditors. But the Committee is the statutorily-mandated "committee of creditors holding unsecured claims" appointed by the U.S. Trustee under section 1102(a)(1). A proper motion under section 1102(a)(4) asserts that a committee does not adequately represent the constituency it was appointed to represent. If, therefore, the U.S. Trustee were to appoint a committee to represent unsecured tort claimants in a mass tort case, a motion claiming that the committee structure favored one group of tort claimants over another group of such claimants might properly be brought under section 1102(a)(4). On the other hand, the landlord on a defaulted lease would have no legal basis to seek membership on the tort claimants' committee.

The Ad Hoc Group's Motion is much the same as the last example. The statute is clear that the Committee can only consist of "creditors holding unsecured claims," 11 U.S.C. § 1102(a)(1), and therefore its fiduciary obligation is to represent the interests of unsecured creditors. *See In re Smart World Technologies, LLC*, 423 F.3d 166, 175 n.12 (2d Cir. 2005) (a creditors' committee owes a fiduciary duty to the class it represents); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1315 (1st Cir. 1993) ("the committee is a fiduciary for those whom it represents"). The Ad Hoc Group, in its many pleadings with this Court, has repeatedly asserted

6

that holders of Constitutional Debt have the legal right to exercise control over the Commonwealth's available assets by virtue of a statutory lien. Therefore it maintains that the Constitutional Debt is secured.[3] But secured creditors are not entitled to adequate representation by committees of unsecured creditors. In fact, the interests of secured and unsecured creditors almost always conflict. Nor could secured creditors carry out their duties as fiduciaries to the unsecured creditors were they to be appointed to an unsecured creditors' committee. *See*, *e.g.*, *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 256 (3d Cir. 2001) (a committee member violates its fiduciary duty by pursuing a course of action that furthers its self-interest to the potential detriment of fellow committee members). The Ad Hoc Group cannot use section 1102(a)(4) to gain membership on the Committee because the Constitutional Debt is not, according to the Ad Hoc Group, debt of the type represented by the Committee.

The Ad Hoc Group argues that the Court should ignore what it asserts about its claims and instead believe the representations by the debtors and the Committee that those claims are unsecured. If the Ad Hoc Group were willing to relinquish its alleged lien rights the situation might be different. As part of the Committee formation process, the U.S. Trustee formally interviewed a significant number of creditors who wished to serve on the Committee. Many held interests in Constitutional Debt. But neither the Ad Hoc Group nor any other holder or insurer of Constitutional Debt that the U.S. Trustee interviewed was willing to forego its claim of secured status.

---

[3] In the Motion the Ad Hoc Group "reserves it rights" to recover interest, interest on interest, interest at the default rate, etc. Motion at 12, n.7. Such rights are generally available only to secured creditors.

> 3. **The cited decisions on "adequate representation" under section 1102(a)(2) do not advance the Ad Hoc Group's section 1102(a)(4) argument.**

The Ad Hoc Group provides a thorough catalogue of the case law under section 1102(a)(2) about when the appointment of additional committees is necessary to assure the adequate representation of creditors. The U.S. Trustee agrees with most if not all of the cited decisions. For example, *In re Enron Corp.*, 279 B.R. 671 (Bankr. S.N.D.Y. 2002), arose after the U.S. Trustee appointed a single committee to represent the unsecured creditors of the various Enron debtor entities. Certain constituencies of unsecured creditors claimed that they were not adequately represented by the single committee, and that one or more additional committees were necessary to assure their adequate representation. The court denied the section 1102(a)(2) motion, finding that an additional committee or committees was not necessary to assure the adequate representation of the movants in the cases.

One could read the Ad Hoc Group's Motion and conclude that U.S. Trustees rarely if ever appoint unsecured creditors' committees representing different types of creditors. That is simply not true. Large corporate groups will frequently have complex financial structures, and the U.S. Trustee will seek to reflect those structures in the makeup of their unsecured creditors' committees. A committee might have a mix of trade debt, unsecured bond debt, unsecured bank debt, tort claims, and other types of unsecured debt. What the unsecured creditors' committee *will not* have as a member, however, is a large creditor or group of creditors who, like here, claim to be secured by all revenues of the estate. Inclusion of such a creditor on the unsecured creditors' committee would make the committee less representative of the holders of unsecured claims, not more, and inject uncertainty about the ability of those creditors to exercise their fiduciary duties to the committee's constituents–the unsecured creditors.

8

The U.S. Trustee agrees that the section 1102(a)(2) decisions cited by the Ad Hoc Group can inform a proper request for a change of committee membership under section 1102(a)(4). But the Ad Hoc Group's effort to use section 1102(a)(4) to gain secured creditor membership on an unsecured creditors' committee is improper. Section 1102(a)(1) mandates that the U.S. Trustee appoint a committee of unsecured creditors. The U.S. Trustee would violate this statutory obligation if he were to appoint a "mixed" committee of secured and unsecured creditors. Section 1102(a)(4) provides a limited remedy for the court to direct the adjustment of committee membership to assure that the committee adequately represents its constituency—in this case unsecured creditors. The section 1102(a)(2) decisions and section 1102(a)(4) do not empower the court to change the constituency of the committee, which by statute must be unsecured creditors. *Cf. RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065 (2012) (court cannot rely on general statutory language to overcome detailed statutory requirements).

4. **The Ad Hoc Group has not established grounds for the appointment of an additional committee under section 1102(a)(2) comprising and representing holders of Constitutional Debt.**

As alternative relief, the Ad Hoc Group asks the Court to direct the U.S. Trustee to appoint an additional committee of holders of Constitutional Debt pursuant to section 1102(a)(2), noting only that the same case law applies under section 1102(a)(2) as under 1102(a)(4). This is overly simplistic, because the issue in section 1102(a)(4) is whether a committee that has already been appointed adequately represents its intended constituency, while the issue in section 1102(a)(2) is whether a constituency not already represented by a committee cannot be adequately represented in the case unless an additional committee is appointed.

In the context of this case, no relief is available to the Ad Hoc Group under section 1102(a)(4) because it holds secured claims and the Committee represents unsecured creditors. Thus, as constituted, the Committee is adequately representative of the unsecured creditors. Under section 1102(a)(2), the inquiry is different: is a committee necessary to assure their adequate representation?

The U.S. Trustee suggests that a review of the dockets in these cases will reveal that the Ad Hoc Group, the various monoline insurers, and other bondholders are extremely active in these cases and hardly need a separate committee and a spate of estate-compensated committee professionals to represent their interests. Unless the Ad Hoc Group makes a stronger showing than is indicated by the Motion, this alternative relief should be denied.

## CONCLUSION

Based on the foregoing, the Ad Hoc Group's motion for an order (i) directing the U.S. Trustee to change the membership of the Official Committee of Unsecured Creditors of the Commonwealth, or (ii) in the alternative, appointing an additional committee of Constitutional Debtholders, should be denied.

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that on this day I electronically filed a true and exact copy of the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the parties on the master service list and by email as provided in the Court-approved Case Management Procedures in this case.

**DATED: July 28, 2017.**

GUY G. GEBHARDT
Acting United States Trustee for Region 21

U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, Puerto Rico 00901-1922
Tel.: (787) 729-7444
Fax: (787) 729-7449

(Electronically Filed)

By: s/ *Monsita Lecaroz-Arribas*
Monsita Lecaroz-Arribas
Assistant U.S. Trustee
USDC-PR No. 207707