Hearing Date: August 9, 2017 at 9:30 a.m. (prevailing Eastern Time)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br><br><br><br><br>(Jointly Administered) |

-----------------------------------------------------------------x

| | |
|---|---|
| UNIVERSITY OF PUERTO RICO RETIREMENT<br>SYSTEM TRUST (the "<u>Trust</u>"),<br><br>    Movant,<br><br>  v.<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Respondents. | **Re: ECF Nos. 607 and 692** |

-----------------------------------------------------------------x

**OBJECTION OF DEBTORS TO MOTION REQUESTING
APPOINTMENT OF ADDITIONAL COMMITTEE OF GOVERNMENT
EMPLOYEES AND ACTIVE PENSION PLAN PARTICIPANTS OR, IN THE
<u>ALTERNATIVE, FOR THE RECONSTITUTION OF THE RETIREE COMMITTEE</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

The Commonwealth and All its Instrumentalities Must Be Integrated - Not at War with Each Other ................................................................................................................................................1

Pertinent Facts................................................................................................................................4

Objection.........................................................................................................................................6

      a.    Active Plan Participants are Not Entitled to a Committee .........................................6

      b.    The Trust is Adequately Represented .........................................................................6

      c.    The Costs Associated with an Additional Committee Substantially Outweigh Any Benefits Thereof......................................10

      d.    An Additional Committee Would Imperil the Debtors' Restructuring Efforts........11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Exide Techs. v. State of Wisconsin Invest. Bd.*,
 No. 02-11125-KJC, 2002 WL 32332000 (D. Del. Dec. 23, 2002)..........................................10

*In re Beker Indus. Corp.*,
 55 B.R. 945 (Bankr. S.D.N.Y. 1985).......................................................................................6

*In re City of Detroit, Mich.*,
 519 B.R. 673 (Bankr. E.D. Mich. 2014)................................................................................6, 9

*In re Dana Corp.*,
 344 B.R. 35 (Bankr. S.D.N.Y. 2006).........................................................................3, 7, 8, 10

*In re Dow Corning, Corp.*,
 194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258
 (E.D. Mich. 1997) ...................................................................................................................10

*In re Drexel Burnham Lambert Grp., Inc.*,
 118 B.R. 209 (Bankr. S.D.N.Y. 1990).....................................................................................7

*In re Enron Corp.*,
 279 B.R. 671 (Bankr. S.D.N.Y. 2002)...................................................................................10

*In re First RepublicBank Corp.*,
 95 B.R. 58 (Bankr. N.D. Tex. 1988)................................................................................... 7, 8

*In re Grant Broad. of Philadelphia, Inc.*,
 71 B.R. 655 (Bankr. E.D. Pa. 1987) ......................................................................................10

*In re Hills Stores Co.*,
 137 B.R. 4 (Bankr. S.D.N.Y. 1992).........................................................................................7

*In re McLean Indus., Inc.*,
 70 B.R. 852 (Bankr. S.D.N.Y. 1987).......................................................................................8

*In re ShoreBank Corp.*,
 467 B.R. 156 (Bankr. N.D. Ill. 2012) ......................................................................................8

*In re Sharon Steel Corp.*,
 100 B.R. 767 (Bankr. W.D. Pa. 1989) ..................................................................................10

## **TABLE OF AUTHORITIES**
(Cont'd)

*In re Spansion, Inc.*,
    421 B.R. 151 (Bankr. D. Del. 2009) ........................................................................10

*In re Wang Labs., Inc.*,
    149 B.R. 1 (Bankr. D. Mass. 1992) .......................................................................6, 10

*Matter of Mansfield Ferrous Castings, Inc.*,
    96 B.R. 779 (Bankr. N.D. Ohio 1988) ........................................................................ 7

*Shaw & Levine v. Gulf & Western Industries, Inc.*,
    607 F.2d 258 (2d Cir. 1979) ......................................................................................8

**STATUTES**

11 U.S.C. § 1102 ...........................................................................................................6

11 U.S.C. § 1102(a)(1) ..................................................................................................5

11 U.S.C. § 1102(a)(2) ............................................................................................6, 10

PROMESA § 315(b) .....................................................................................................1

PROMESA § 405(m)(2) ...............................................................................................1

**OTHER AUTHORITIES**

Letter to the Honorable José B. Carrión III, Chairman, Financial Oversight and
    Management Board for Puerto Rico (Apr. 19, 2017), *available at*
    https://www.aft.org/sites/ default/files/ltr_aft-ampr_041917.pd ...............................5

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"),[1] the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submit this objection (the "Objection") to the *Motion Requesting Appointment of Additional Committee of Government Employees and Active Pension Plan Participants or, in the Alternative, for the Reconstitution of the Retiree Committee* [ECF Nos. 607 and 692] (the "Motion"),[3] and respectfully represent as follows:

### The Commonwealth and All its Instrumentalities
### Must Be Integrated - Not at War with Each Other

1.  Any request for an additional statutory committee must be considered in the unique and emergency circumstances faced by the Commonwealth. *First*, the Commonwealth is fighting for its life and future within a fiscal emergency declared by Congress where the Commonwealth cannot "provide its citizens with effective services." PROMESA § 405(m)(2). *Second*, to provide for its citizens, the Commonwealth needs all its component parts, such as water and sewers, highways, electricity, university, and convention center, to name a few. These

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion (as defined herein).

[2] PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[3] The pleadings filed under ECF Nos. 607 and 692 are substantively identical except that ECF No. 692 added a notice of hearing. All page number references to the Motion herein are to the filing at ECF No. 692.

parts must work in harmony for the Commonwealth to exist and survive, just as a human being's arms, legs, heart, and lungs must work together for the human being to live.

2. The Commonwealth's critical need for all its components to work together means its components cannot square off against each other like lone rangers with each fighting for its independent glory. This may sound obvious, but the numerous pending requests for separate statutory committees for different entities and groups show it is not so obvious. Creation of new committees to focus on one group or entity, rather than the integrated enterprise, imperils the Commonwealth's survival, just as one would expect when a committee arms itself to pursue one parochial interest at the expense of others. Moreover, the spreading of Oversight Board time and Commonwealth time among more than the two existing committees takes precious time away from the overall effort to revitalize the Commonwealth.

3. Put differently and succinctly, more committees mean more fighting, destruction, and expense, as each new committee carries out its narrowed fiduciary duties to one component of the Commonwealth at the expense of others. None of this is to say that any entities should be substantively consolidated or that each creditor should not be paid from its debtor. Rather, each debtor's and creditor's rights should be respected by a committee understanding how all components and entities must work together. Otherwise, the Commonwealth fails because all its parts are at war with one another in the middle of a fiscal emergency.

4. The instant Motion seeks the appointment of an additional committee in the Commonwealth case for active government employees, which it asserts should include Active Trust Participants, or, in the alternative, the reconstitution of the Retiree Committee to exclude any Retired Trust Participants and include at least one Active Trust Participant. Motion at 5. The request for a new committee should be denied. But, the request to put one or more

representatives on the Retiree Committee should be granted, so one retirees' committee can fashion solutions for retirees with the big picture in mind. The existing statutory creditors' committee already represents active employees. Indeed, the existing committee has numerous union members who represent tens of thousands of employees of the Commonwealth and its instrumentalities, and other interested parties participating in these cases.

5. While the University of Puerto Rico Retirement System Trust (the "Trust") asserts it and, derivatively, the Active Trust Participants do not have adequate representation in the Title III cases, the facts of these cases demonstrate otherwise. Indeed, the interests of the Trust, and derivatively, its participants, are represented by statutory committees, numerous unions, and other parties in interest. To the extent the Motion seeks the appointment of an additional committee of active government employees and pension plan participants, Motion at 10, it neglects noting that two labor unions representing employees of the Commonwealth and its instrumentalities are members of the statutory committee of unsecured claimholders (the "UCC"), and the statutory committee of retirees (the "Retiree Committee") represents approximately 160,000 retirees of Puerto Rico. It is simply incorrect that all facets of labor are not adequately represented in the Title III cases. Further, the law is clear that not all shades of creditors must have a seat on a committee to be adequately represented. *See*, *e.g.*, *In re Dana Corp.*, 344 B.R. 35, 38–39 (Bankr. S.D.N.Y. 2006) ("Creditor committees often contain creditors having a variety of viewpoints . . . however, these differing views do not require a separate homogeneous committee unless they impair the ability to reach a consensus."). Similarly, not every subset of creditors is entitled to have its own statutory committee.

6. The monetary costs and the time investment that Debtors' and Oversight Board's management and advisors would be required to invest with an additional committee completely

overwhelm the marginal benefit, if any, such a committee would provide. Accordingly, even assuming these circumstances, the Court should exercise its discretion by declining to appoint an additional committee.

7. Appointment of an additional committee in these Title III cases, or in other Title III cases would have a substantial, negative impact on the Debtors' restructuring efforts. In particular, the Debtors' turnaround is premised and dependent on integrated fiscal plans (as amended, the "Fiscal Plans"), which serve to end negative economic growth and end outmigration from the Commonwealth. Each action of the Debtors and their non-Debtor instrumentalities, in and outside the Title III cases, affects the entire Commonwealth restructuring efforts. Accordingly, it is of the utmost importance that (a) the UCC deal with the Commonwealth and other Debtors on an integrated basis and with a holistic view, as "a rising tide lifts all boats," and (b) there not be individual committees seeking help for particular entities, special interest groups, or constituencies, such as the Trust or Active Trust Participants.

**Pertinent Facts**

8. On June 15, 2017, the acting United States Trustee for Region 21 (the "U.S. Trustee") appointed the UCC. *See Appointment of Official Committee of Unsecured Creditors in the Commonwealth of Puerto Rico* [ECF No. 338]. Among its seven members, the UCC includes both the American Federation of Teachers ("AFT") and the Service Employees International Union ("SEIU"), two labor unions that have been very active in the Title III cases. The AFT has over 1.6 million members, and has been working together with, among others, the 29,000-member Puerto Rico Teachers Association to advocate the interests of the Commonwealth's education system, including avoiding funding cuts that would affect the

4

system's employees.[4] Moreover, approximately 16,000 employees of the Commonwealth and its instrumentalities are members of the SEIU.[5] Accordingly, employees of the Commonwealth and its instrumentalities have direct and adequate representation on the UCC.

9. On the same day, the U.S. Trustee appointed the Retiree Committee. *See Appointment of Official Committee of Retirees in the Commonwealth of Puerto Rico* [ECF No. 340]. The Retiree Committee represents approximately 160,000 retirees of Puerto Rico, and accordingly, it has a vested interest in making funds available to satisfy the pension obligations of the Commonwealth and its instrumentalities.[6]

10. As set forth in the Motion, the Trust previously requested the U.S. Trustee to appoint an additional committee. *See* Motion at Exhibits 1–2. Upon review, the U.S. Trustee declined to make such an appointment, implicitly finding the Trust's interests were adequately represented by the two statutory committees appointed,[7] but "encourage[d the Trust] to stay

---

[4] *See*, *e.g.*, Letter to the Honorable José B. Carrión III, Chairman, Financial Oversight and Management Board for Puerto Rico (Apr. 19, 2017), *available at* https://www.aft.org/sites/default/files/ltr_aft-ampr_041917.pdf (last visited July 28, 2017).

[5] *See Response and Reservation of Rights of International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Service Employees International Union, and American Federation of State, County & Municipal Employees to Debtors' Motion for an Order Confirming Application of Automatic Stay, Stay of Prepetition Lawsuits, and Application of Contract Protections [Docket Entry No. 301]* [ECF No. 356] at ¶ 3.

[6] *See Response and Reservation of Rights of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico to (I) Puerto Rico Funds and Mutual Fund Group's Motion for Relief from the Automatic Stay (ECF No. 270) and (II) the Debtors' Motion for an Order Approving Procedures to Resolve Commonwealth-COFINA Dispute (ECF No. 303)* [ECF No. 410] at ¶ 1 (noting "pension funds are expected to run out of money to fund those pension liabilities as soon as this summer," and accordingly, "the Retiree Committee and its constituents have a vested and very personal interest in the resolution of any dispute that will determine whether certain funds are property of a particular creditor group.").

[7] *See* 11 U.S.C. § 1102(a)(1) ("[T]he United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders *as the United States trustee deems appropriate*.") (emphasis added).

5

active in the case and take whatever action is needed to protect [the Active Trust Participants'] interests." *See* Motion at Exhibit 3.

## Objection

### a. Active Plan Participants are Not Entitled to a Committee

11. The Active Trust Participants are adequately protected by the UCC,[8] the Retiree Committee, and the numerous unions active in the Debtors' Title III cases.[9] Suffice it to say, labor interests have been participating, and will continue to participate, extensively in the Title III cases, and the marginal benefit, if any, of an additional committee is substantially outweighed by the monetary costs and the time investment that Debtors' and Oversight Board's management and advisors are required to invest with each additional committee. *See In re City of Detroit, Mich.*, 519 B.R. 673, 681 (Bankr. E.D. Mich. 2014) (disbanding a second committee as prohibitively expensive given the minimal value the committee would bring to the case).

### b. The Trust is Adequately Represented

12. With respect to the Trust itself and its status as an unsecured creditor, Bankruptcy Code section 1102 provides that an additional committee may be warranted "*if necessary* to assure adequate representation of creditors . . . ." 11 U.S.C. § 1102(a)(2) (emphasis added); *In re Wang Labs., Inc.*, 149 B.R. 1, 2 (Bankr. D. Mass. 1992) ("['adequacy of representation'] must be determined by the facts of the case.") (citing *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr.

---

[8] As noted above, two labor unions, SEIU and AFT, are members of the UCC, which represents the interests of general unsecured creditors, including the Trust (and derivatively, the Active Trust Participants).

[9] For example, the American Federation of State, County and Municipal Employees ("AFSCME") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") have been active in the Debtors' cases. AFSCME purports to represent approximately 12,000 active Commonwealth employees, and at least 25,000 active and retired participants in the Debtors' retirement programs [ECF No. 191 at ¶¶ 1–2]. The UAW purports to represent approximately 6,800 members employed by the Commonwealth and its instrumentalities [ECF No. 356 at ¶ 4].

6

S.D.N.Y. 1985)); *see also In re Dana Corp.*, 344 B.R. at 37 (the movant has the burden of proving the appointment of an additional committee is necessary to insure "adequate representation").

13. While there is no "bright-line" test for adequate representation, *In re Hills Stores Co.*, 137 B.R. 4, 5 (Bankr. S.D.N.Y. 1992), the appointment of an additional committee to represent the Trust is neither necessary nor warranted here because the interests of the Trust are adequately protected by the two statutory committees already appointed and the additional active participation of labor unions in the Debtors' Title III cases. Indeed, the Retiree Committee has been tasked with the *sole* responsibility of advocating and protecting the interests of the Debtors' retirees, and nothing conditions such responsibility on whether an employee with vested retirement obligations owed by the Debtors is, or is not, an active, contributing member of the Debtors' workforce. Accordingly, there is no reason to doubt the Retiree Committee provides ample and adequate representation of the interests of the Trust and Active Trust Participants with respect to their retiree claims, and the Retiree Committee's vested interest in making funds available to satisfy the pension obligations of the Commonwealth and its instrumentalities provides substantial benefit to, among others, the Trust and its participants.[10]

---

[10] To the extent relevant, the Trust's reliance on *Matter of Mansfield Ferrous Castings, Inc.*, 96 B.R. 779 (Bankr. N.D. Ohio 1988), Motion at 7, is misplaced. In *Mansfield*, employees of the debtor had retirement funds invested in an employee stock ownership plan and trust, which was itself both a creditor and shareholder of the debtor. *Id.* at 780. Importantly, it was due to this multifaceted relationship, including equity ownership, that led the Court to reason this group was not adequately represented. *Id.* at 781. As the Trust's sole relationship with the Debtors is that of an unsecured claimholder, *Mansfield's* reasoning is inapplicable. Moreover, all other cases relied upon and cited by the Trust also weigh against the appointment of a committee. *See In re First RepublicBank Corp.*, 95 B.R. 58, 61 (Bankr. N.D. Tex. 1988) (declining to alter committee membership due to movant's failure to demonstrate behavior inconsistent with fiduciary duties); *In re Drexel Burnham Lambert Grp., Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990) (declining to appoint movant to a statutory committee for failure

7

14. Further, the Trust fails to explain why the UCC, which represents the interests of all unsecured claimholders generally, and whose members include not one, but two labor unions, cannot adequately represent its interests. Indeed, the UCC is actively involved in the Title III cases: it has filed numerous pleadings, has attended mediation sessions, and is engaged in ongoing discussions with the Oversight Board and other interested parties. Moreover, the Trust does not argue its unsecured claims against the Debtors are likely to be treated differently from other unsecured claims. *See In re Drexel Burnham Lambert Grp., Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990) (denying the appointment of an additional committee, where, among other things, movants made no claim similarly situated debt was going to be treated differently). Importantly, even divergence of interests alone among general unsecured claimholders does not prevent an unsecured creditors' committee from adequately representing all its constituents. *See*, *e.g.*, *In re Dana Corp.*, 344 B.R. at 38–39 ("Creditor committees often contain creditors having a variety of viewpoints . . . however, these differing views do not require a separate homogeneous committee unless they impair the ability to reach a consensus."); *In re McLean Indus., Inc.*, 70 B.R. 852, 861 (Bankr. S.D.N.Y. 1987) ("the presence of potential conflict may not always require separate committees for representation to be adequate").[11] Given these facts, it is evident

---

to demonstrate lack of adequate representation); *In re ShoreBank Corp.*, 467 B.R. 156, 164 (Bankr. N.D. Ill. 2012) (same).

[11] It should be noted, if the Trust has claims against "other retirement systems, agencies or instrumentalities of the Commonwealth of Puerto Rico," Motion at 8, which themselves are not Debtors, the Trust can pursue those claims outside of the Title III cases. However, as an unsecured creditor of the Debtors, its interests are adequately represented, at the very least, by the UCC and the Retiree Committee. As set forth in *First RepublicBank*, cited by the Trust, "[a] member of a creditors' committee owes a fiduciary duty to *all creditors* represented by the committee." 95 B.R. at 61 (emphasis added); *see also Shaw & Levine v. Gulf & Western Industries, Inc.*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) ("[T]he committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors."). Simply put, it goes without saying the Debtors should not be required to fund, in any way, the Trust's pursuit of claims against non-Debtors.

the Trust's interests have been, and will continue to be, adequately represented in the Title III cases.

15. Finally, the appointment of a <u>third</u> statutory committee in these Title III cases would be unprecedented. In *Detroit*, the largest municipal restructuring in the history of the United States, only a single committee, representing retiree interests, was appointed. Although the Office of the United States Trustee appointed a second committee—a committee of unsecured creditors—the court disbanded this second committee as prohibitively expensive given the minimal value the committee would bring to the case, noting that "the participation and representation of various groups of unsecured creditors in this case has been extraordinary." *See In re City of Detroit, Mich.*, 519 B.R at 681. Participation has likewise been extraordinary in these cases. No fewer than 19 parties were required to attend the mediation meeting held on July 12, 2017.[12] The parties in interest have been extremely active in communicating with the Debtors and advocating the interests of their clients. Accordingly, it strains credulity to believe the interests of the Trust and Active Trust Participants are <u>not</u> being adequately represented. Moreover, in addition to the Motion, there are two other pending requests for the appointment or reconstitution of committees.[13] It simply is not the case that each entity or constituency participating in the Title III cases lacks adequate representation and needs its own committee, funded at the Debtors' expense, to represent its interests.

---

[12] *See* Exhibit A to the *Order and Notice of Meeting with Representatives of Mediation Team* [ECF No. 560].

[13] *See Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(4)* [ECF No. 694] and *Ad Hoc Puerto Rico Municipalities Committee's Request for an Order Pursuant to 48 U.S.C. §2161 and 11 U.S.C. §1102 Directing the Appointment of an Official Puerto Rico Municipalities Committee* [ECF No. 709].

   *c. The Costs Associated with an Additional
      Committee Substantially Outweigh Any Benefits Thereof*

16. "[T]he Court must then consider whether it should exercise its discretion and make the appointment." *Wang Labs*, 149 B.R. at 2. This second level of analysis involves consideration of such factors as the costs involved, the time of the application, the potential for added complexity and the presence of other avenues for creditor participation. *In re Dow Corning, Corp.*, 194 B.R. 121, 143 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997). However, the appointment of an additional committee under Bankruptcy Code section 1102(a)(2) constitutes "extraordinary relief." *In re Dana Corp.*, 344 B.R. at 38 (citing *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002); *In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989); *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 655, 661 (Bankr. E.D. Pa. 1987)); *see also In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009) ("The court's appointment of an additional committee is considered 'extraordinary relief' and should be the 'rare exception.'") (quoting *In re Dana Corp.*, 344 B.R. at 38; *Exide Techs. v. State of Wisconsin Invest. Bd.*, No. 02-11125-KJC, 2002 WL 32332000 (D. Del. Dec. 23, 2002)).

17. Even assuming the Trust lacks adequate representation, the costs and burdens associated with an additional committee would substantially outweigh any benefit it would provide to its constituents, and accordingly, this extraordinary relief is not justified. The various professional fees in the Title III cases to be paid by the heavily indebted and cash-strapped Debtors, and ultimately by the Commonwealth's taxpayers and creditor bodies, are expected to cost millions of dollars per month. An additional committee would only serve to add to those costs, but would provide marginal, if any, benefit to its constituency above the work of other committees and parties in interest. Those costs are unreasonable and unjustifiable under the

10

circumstances. Indeed, the Trust's own active efforts demonstrate an additional statutory committee is unnecessary to protect its, or its constituents', interests.

### d. An Additional Committee Would Imperil the Debtors' Restructuring Efforts

18. In addition to all the above, the appointment of an additional statutory committee would have a substantial, negative impact on the Debtors' restructuring efforts. In particular, the Debtors' turnaround is premised and dependent on integrated Fiscal Plans, which serve to end negative economic growth and end outmigration from the Commonwealth. Each action of the Debtors and their non-Debtor instrumentalities, in and outside the Title III cases, affects their restructuring efforts. Accordingly, it is of the utmost importance that (a) the UCC deal with the Commonwealth and other Debtors on an integrated basis, and (b) there not be individual committees not having the big picture view. Notably, this is not a disadvantage for individual entities or creditor groups. It does no good for an instrumentality of the Commonwealth to act independently and to obtain a result at the expense of other instrumentalities because that type of outcome maximizes the prospects of failure of the Commonwealth as a whole. Individualistic help could prove detrimental to those entities and constituencies if they further positions that help their own constituencies in a vacuum, without taking into consideration the effect on the Commonwealth's economy as a whole, which would prevent a turnaround of the Debtors.

19. Moreover, the management time of the Debtors, the Oversight Board, and all professionals in dealing with an additional committee would be substantial, and each extra committee means there is less time to address all other issues. Indeed, this loss of time is even more detrimental than any marginal monetary cost associated with the committee alone due to the additional time that will necessarily be devoted to litigation, requests for review, access to information, and the like.

11

20. Further, if the Trust's request were granted, it would also serve as terrible precedent for the future Title III cases. To the extent an additional committee is appointed in the Debtors' Title III cases, each disgruntled creditor in future cases would cite such an outcome as an additional reason why it should receive its own committee as well. This outcome would undoubtedly drain significant resources from the Commonwealth and its instrumentalities that could otherwise be used toward the Debtors' restructuring, to satisfy the claims of their creditors, and provide much-needed services to residents of the Commonwealth.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request the Court to (a) sustain the Objection, (b) deny the Motion except for reconstituting the Retiree Committee, and (c) grant the Debtors such other relief as is just and proper.

Dated: July 28, 2017
      San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/ Ubaldo M. Fernández

Ubaldo M. Fernández
USDC No. 224807
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*