**Hearing Date:** August 9, 2017 at 9:30 a.m. (prevailing Eastern Time

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------ x
: 
In re: :
 :
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
 :
     as representative of : Case No. 17 BK 3283-LTS
 :
THE COMMONWEALTH OF PUERTO RICO, :
 :
     Debtor.[1] :
 :
 :
 :
 :
 :
------------------------------------------------ x

## OBJECTION OF SANTANDER SECURITIES LLC, SANTANDER ASSET MANAGEMENT LLC AND BANCO SANTANDER PUERTO RICO TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER BANKRUPTCY RULE 2004, AUTHORIZING DISCOVERY PROGRAM WITH <u>RESPECT TO CERTAIN CAUSES OF PUERTO RICO FINANCIAL CRISIS</u>

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474).

**TABLE OF CONTENTS**

           **Page**

ARGUMENT ..................................................................................................................................3

    A.    Notwithstanding the Broad Availability of Discovery under Rule 2004, the Court Cannot Authorize the Committee's Requested Discovery Absent Good Cause. ...........................................................................................................3

    B.    The Committee's Proposed "Program of Investigation" Duplicates Unnecessarily the Investigation that PROMESA Specifically Authorizes the Oversight Board to Conduct. ............................................................................4

    C.    The Committee's Motion Asks the Court to Overstep the Bounds of Its Power Regarding the Operations and Assets of the Commonwealth of Puerto Rico........................................................................................................7

    D.    The Committee Improperly Seeks to Use Rule 2004 to Investigate Harm to Private Parties and to Pursue Purported Claims on Behalf of the Residents of Puerto Rico at Large. ......................................................................10

    E.    The Scope of the Committee's Proposed Document Requests are Overly Broad.................................................................................................................11

CONCLUSION.............................................................................................................................13

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

In re Addison Cmty. Hosp. Auth.,
　175 B.R. 646 (Bankr. E.D. Mich. 1994) ................................................................................7

In re AOG Entm't, Inc.,
　558 B.R. ................................................................................................................................5

In re AOG Entm't, Inc.,
　558 B.R. 98 (Bankr. S.D.N.Y. 206) ....................................................................3, 6, 8, 11

In re Barnwell Cty. Hosp.,
　459 B.R. 903 (Bankr. D.S.C. 2011) ......................................................................................8

In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,
　258 B.R. 580 (Bankr. S.D.N.Y. 2001) ..................................................................................3

In re Buccaneer Res., LLC,
　No. 14-60041, 2015 WL 8527424 (Bankr. S.D. Tex. Dec. 10, 2015) .......................2, 6, 12

In re Coffee Cupboard, Inc.,
　128 B.R. 509 (Bankr. E.D.N.Y. 1991) ..................................................................................8

In re Comm. Fin. Servs., Inc.,
　247 B.R. 828 (Bankr. N.D. Okla. 2000) .............................................................................12

ePlus, Inc. v. Ktaz (In re Metiom, Inc.),
　318 B.R. 263 (S.D.N.Y. 2004) ..............................................................................................3

In re Express One Int'l, Inc.,
　217 B.R. 215 (Bankr. E.D. Tex. 1998) .................................................................................3

In re MF Global Holdings Ltd.,
　465 B.R. 736 (Bankr. S.D.N.Y. 2012) ..................................................................................5

In re MF Global Inc.,
　2013 WL 74580 ........................................................................................................3, 5, 9, 10

Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
　No. 09-11893 (SMB), 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014) ..................3, 10

In re Texaco, Inc.,
　79 B.R. 551 (Bankr. S.D.N.Y. 1987) ....................................................................................6

<u>In re Williams Commc'ns Grp., Inc.</u>,
   281 B.R. 216 (Bankr. S.D.N.Y. 2002) ................................................................................5

**Statutes**

11 U.S.C § 902 ..........................................................................................................................2

11 U.S.C § 903 ..........................................................................................................................7

11 U.S.C § 904 ..........................................................................................................................7

48 U.S.C. § 2124 .......................................................................................................................4

48 U.S.C. §§ 2161 .............................................................................................................2, 7, 8

48 U.S.C. § 2172 .......................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 45(d)(1) ...........................................................................................................12

Fed. R. Banrk. P. 2004 ..................................................................................................... *passim*

Santander Securities LLC ("Santander Securities"), Santander Asset Management LLC ("Santander Asset Management"), and Banco Santander Puerto Rico ("Banco Santander" and, collectively with Santander Securities and Santander Asset Management, "Santander") hereby file their objection (this "Objection") to the *Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery Program With Respect to Certain Causes of Puerto Rico Financial Crisis* [Dkt. No. 706] (the "Motion"), filed July 21, 2017. In further support of the Objection, Santander respectfully states as follows:

## PRELIMINARY STATEMENT

1. Santander provided important financial operations in Puerto Rico since the 1970s. Santander Securities served as a bond underwriter as the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities issued more debt into the municipal markets, that provided funds for important government programs, including infrastructure and services, in the face of increasing economic challenges. Santander Securities performed underwriting and other services for the Commonwealth and its subdivisions and organizations in connection with the issuance of billions of dollars of securities, including bond issuances for the Puerto Rico Sales Tax Financing Corporation ("COFINA") and the Government Development Bank for Puerto Rico ("GDB"), aimed in part at alleviating Puerto Rico's fiscal crisis. Santander Asset Management acted as an investment advisor to certain public corporations. In addition, Santander Asset Management managed mutual funds established pursuant to Puerto Rico law and exempt from the provisions of the Investment Company Act of 1940. The referenced mutual funds primarily invested in Puerto Rico debt securities as required by the Puerto Rico laws. As is evident from the Committee's Motion itself, the role of the entities (which forms the basis for the Committee's assertion that there may be "conflicts of interest") are a matter of public knowledge and were subject to requirements, review and oversight by the Office of the

1

Commissioner of Financial Institutions. Those relationships are readily ascertainable in the offering materials for the various securities and other publicly available sources.

2. Whatever the merits of the Committee's contentions regarding the causes of Puerto Rico's financial crisis, the Committee's request for permission to take extraordinary discovery under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") is both overbroad and outside the bounds of the Committee's authority in this case. When Congress drafted and passed the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), it created a unique procedure for the adjustment of debts belonging to the Commonwealth and its territorial instrumentalities. PROMESA borrows heavily, although not exclusively, from the provisions of chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") relating to the adjustment of municipal debts. And PROMESA, like chapter 9, emphasizes the extent to which the debtor entity retains exclusive control over its assets and limits court interference in the debtor's affairs. See 48 U.S.C. §§ 2161 (incorporating section 902 of the Bankruptcy Code), 2163. With regard to the type of claims the Committee seeks to investigate, Congress already has granted authority, through PROMESA, to the Financial Oversight and Management Board established pursuant to section 101 of PROMESA (the "Oversight Board") to conduct that investigation. Thus, as discussed in greater detail below, the Committee's proposal to embark on a "broad program of investigation into the underwriting, packaging, sale, or marketing of debt issued by the Commonwealth" would be unnecessarily duplicative and would inappropriately exceed the proper role of the Committee in a case proceeding under Title III of PROMESA.

# ARGUMENT

### A. Notwithstanding the Broad Availability of Discovery under Rule 2004, the Court Cannot Authorize the Committee's Requested Discovery Absent Good Cause.

3. Although it is widely understood that Rule 2004 provides broad authority for discovery, it is not without limits. In re Buccaneer Res., LLC, No. 14-60041, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. Dec. 10, 2015) ("Though long recognized that the scope of a 2004 examination is broad, it is not limitless") (citing In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) and In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987)); Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. 09-11893 (SMB), 2014 WL 5486279 at *3 (Bankr. S.D.N.Y. Oct. 30, 2014) ("Despite its broad scope, Rule 2004 has limits.").

4. A party seeking discovery pursuant to Rule 2004 bears the burden of demonstrating good cause to authorize the discovery it is requesting, and a court considering a request under Rule 2004 has broad discretion to determine whether and to what extent the discovery should be authorized. ePlus, Inc. v. Ktaz (In re Metiom, Inc.), 318 B.R. 263, 268 (S.D.N.Y. 2004); In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001); In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). In order to demonstrate good cause, a party must typically demonstrate that the discovery it seeks is "necessary to establish the claim of the party seeking the examination, or [that] denial of such request would cause the examiner undue hardship or injustice." In re AOG Entm't, Inc., 558 B.R. 98, 109 (Bankr. S.D.N.Y. 206) (quoting In re Metium, Inc., 318 B.R. at 263).

5. In addition, "[t]he Court must also weigh the relevance of the discovery against the burden it will impose on the producing party." MF Global Inc., No. 11-02790 (MG), 2013 WL 74580, at *1 citing In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).

3

See also In re AOG Entm't, Inc., 558 B.R. at 109 ("In evaluating a request to conduct a Rule 2004 examination, the Court must 'balance the competing interests of the parties, weighing the relevance and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.").

6. For the reasons discussed below, the Committee has not and cannot satisfy its burden to demonstrate that the discovery it is seeking is necessary to the pursuit of claims belonging to the Committee or its constituents[2] and that the burden on the parties from whom it seeks discovery are outweighed by the necessity and relevance of the information sought.

### B. The Committee's Proposed "Program of Investigation" Duplicates Unnecessarily the Investigation that PROMESA Specifically Authorizes the Oversight Board to Conduct.

7. The very investigation that the Committee seeks authority to pursue has already been placed, by Congress, in the hands of the Oversight Board. Although the Committee's Motion asserts that "the Committee is best placed to conduct this investigation," this claim is belied by Sections 104(o) and 104(p) of PROMESA, which expressly authorize the Oversight Board to pursue this investigation and publicly report the findings of such investigation. 48 U.S.C. §§ 2124(o), (p). Specifically, PROMESA authorizes the Oversight Board to "investigate the disclosure and selling practices in connection with the purchase of bonds issued by a covered territory for or on behalf of any retail investors including any underrepresentation of risk for such investors and any relationships or conflicts of interest maintained by such broker, dealer, or

---

[2] At present, the Committee does not include any bondholders. See *Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a) and 1192(a)(4)* [Dkt. No. 694], filed July 21, 2017.

4

investment adviser as provided in applicable laws and regulations."[3] 48 U.S.C. § 2124(o). The Committee's Motion proposes an investigation into "the underwriting, packaging, sale, or marketing of debt issued by the Commonwealth" that mirrors the investigation contemplated by the statute. At issue here is more than the mere potential for incidental overlap between the Committee's proposed investigation and the Oversight Board's work. The Committee's Motion, if granted, would result in a complete duplication of effort and expense.

8. Because of the potential for unnecessary duplication, bankruptcy courts have restricted the availability of Rule 2004 discovery by third parties when inquiries are already underway by institutions charged with similar investigations. In In re MF Global Holdings Ltd., for example, the Bankruptcy Court for the Southern District of New York denied discovery requested under Rule 2004 because a trustee appointed under the Securities Investor Protection Act already had been granted authority to investigate and report on facts and potential claims similar to those identified by the party seeking discovery. 465 B.R. 736, 743-44 (Bankr. S.D.N.Y. 2012). The MF Global court held that allowing additional overlapping discovery was "unnecessary and would hinder ongoing investigations." Id. at 743. The court noted that it might later determine that additional discovery was warranted, but that granting yet another layer of discovery while the SIPA Trustee's investigation was underway was not appropriate. Id. at 744. See also In re AOG Entm't, Inc., 558 B.R. ate 109 (holding that the denial of Rule 2004 discovery would not impose an "undue hardship or injustice" on the party seeking such discovery because the events and transactions that the movant sought to investigate had already

---

[3] Indeed, in a letter to Governor Nevares, the Oversight Board announced that it would be engaging a forensic accounting firm to, among other things, investigate the Commonwealth's debt issuances. Letter from José B. Carrión, Chair, Fiscal Oversight and Management Board for Puerto Rico, to the Honorable Ricardo A. Roselló Nevares, Governor of Puerto Rico (Jan. 18, 2017) (avail. at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/587fea840f998.pdf).

5

been investigated by two other parties); In re Williams Commc'ns Grp., Inc., 281 B.R. 216, 222 (Bankr. S.D.N.Y. 2002) (denying a request to establish a shareholders committee for the purpose of investigating the subordination or disallowance of certain claims that might result in the preservation of value for shareholders, where "the Creditors' Committee ha[d] already taken significant steps in investigating [such] claims" and the "task need not be duplicated by an equity committee"); In re Texaco Inc., 79 B.R. at 553 (refusing to allow discovery under Rule 2004 that would duplicate, or be unnecessary in light of, discovery already being conducted by other committees).

9. In addition to the duplication of effort and expense, parallel investigations with an identical scope of inquiry by the Oversight Board and the Committee would be chaotic and unduly burdensome for the parties responding to discovery requests. As noted above, when considering a request for discovery under Rule 2004, "the Court must 'balance the competing interests of the parties, weighing the relevance of *and necessity of* the information sought by examination." In re AOG Entm't, Inc., 558 B.R. at 109 (emphasis added) (quoting In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)). Discovery requests should be tailored so as not to be "more disruptive and costly to the [party being examined] than beneficial to the [party requesting the examination]." In re Buccaneer Res., LLC, 2015 WL 8527424, at *6 (quoting Texaco, 79 B.R. at 553). "If the cost and disruption to the person being examined outweigh the benefits to the examiner, the examination should be denied." Id. (citing In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998)). Here, where the Committee's proposed investigation overlaps so completely with that of the Oversight Board (and the Committee's document requests are so overly broad, see infra Section E), there is *no*

6

"necessity" for the investigation by the Committee (and the burden on Santander in responding to two investigations would be significant).

10. To avoid the inefficient use of resources available in this case, potential interference with the work of the Oversight Board, and the unnecessary imposition of additional burdens on Santander and the other parties from whom documents are sought, this Court should decline to authorize the Committee to pursue requests for production at this time. Once the Oversight Board has had a full opportunity to complete its investigation, the Committee can, if necessary, petition the Court for additional discovery not already covered by the Oversight Board's inquiry, and the Court can evaluate the propriety of such discovery at that time.

C. **The Committee's Motion Asks the Court to Overstep the Bounds of Its Power Regarding the Operations and Assets of the Commonwealth of Puerto Rico.**

11. In a case under PROMESA, like under chapter 9 of the Bankruptcy Code, respect for and judicial restraint in favor of territorial autonomy are paramount. In re Addison Cmty. Hosp. Auth., 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994) ("Congress has explicitly stated in the legislative history that the courts do not have jurisdiction to interfere with the political and policy choices a municipality makes in running its organization; rather courts are limited to approving or disapproving proposed plans for debt adjustment) (citing H.R. Rep. No. 595, 262-64, 95th Cong., 1st Sess. (1997), reprinted in 1978 U.S.C.C.A.N. 5787, 5963). Accordingly, under PROMESA, as in chapter 9, the Court has limited powers over the operations and assets of the Commonwealth. See 48 U.S.C. §§ 2161 (incorporating section 904 of the Bankruptcy Code), 2163 (reserving the power of the Commonwealth to exercise its political and governmental powers with language similar to that used in section 903 of the Bankruptcy Code). By its motion, the Committee invites the Court to ignore the confines of its authority under PROMESA

7

and authorize the Committee to conduct an investigation into claims that remain the exclusive property of the Debtor.

12. The Committee asserts that it is entitled to examine whether Santander and other parties "harmed the Commonwealth's estate" (Mot. ¶ 22) and determine "whether any valuable causes of action exist" (Mot. ¶ 8). Although these tasks can be within the province of a committee appointed in a case under chapter 11 of the Bankruptcy Code, the role of the Committee in this case is necessarily different. When a case is commenced under Title III of PROMESA, no estate is created, and the assets of the debtor—including any causes of action it may possess—remain the property of the debtor. 48 U.S.C. § 2161(c)(5) ("The term 'property of the estate', when used in a section of title 11 made applicable in a case under this subchapter by section (a), means property of the debtor."). Because all causes of action remain the exclusive property of the Commonwealth and the statute constrains the Court's power to administer the Commonwealth's assets, the Committee cannot, at least absent the Commonwealth's express consent, pursue the causes of action the Committee proposes to investigate. In re Barnwell Cty. Hosp., 459 B.R. 903, 910-11 (Bankr. D.S.C. 2011) ("Congress has cautioned, 'The powers of the court are subject to a strict limitation—that no order or decree may in any way interfere with . . . the property or revenue of the petitioner'") (quoting Addison Cmty. Hosp., 175 B.R. at 649 (quoting 121 Cong. Rec. H39409-10 (daily ed. Dec. 9, 1975) (statement of Rep. Edwards))). It is, therefore, unsurprising that the Committee has not identified any precedent for a committee (for example, in a case under chapter 9) taking the reins from a municipal/territorial debtor and investigating claims that might belong to that debtor. Indeed, where, as here, the Court does not have the power to authorize the Committee to pursue any causes of action belonging to the Commonwealth that it might discover through its proposed investigation, permission to conduct

8

discovery under Rule 2004 should not be granted. In re Coffee Cupboard, Inc., 128 B.R. at 515 ("[A] Rule 2004 examination 'must be limited to issues which the court . . . has the power to entertain.'") (quoting In re Cinderella Clothing Indus., Inc., 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988)); see also In re AOG Entm't, Inc., 558 B.R. at 109 (noting that "[a] party seeking to conduct a Rule 2004 examination typically shows good cause by establishing that the proposed examination is necessary to establish the claim *of the party seeking the examination*, or . . . [that] denial of such request would cause the examiner undue hardship or injustice") (emphasis added; internal quotations omitted).

13. Municipal debt adjustment cases also do not typically see efforts to target third parties with causes of action for the purpose of funding the case and the consummation of the debtor's plan, as is common in cases under chapters 7 and 11. The bankruptcy cases of governmental entities are principally focused on restructuring municipal debt in a manner that allows the debtor entity to continue its operations for the benefit of the people it serves. PROMESA has a similar focus, and the Committee's proposed investigation only serves to distract from the principal goal of the Commonwealth's case. Although questions about the legitimacy of certain debts and even potential wrongdoing by claimants may be relevant to structuring a plan under PROMESA, the responsibility for structuring and proposing a plan is indisputably the role of the Oversight Board (48 U.S.C. § 2172 ("Only the Oversight Board . . . may file a plan of adjustment of the debts of the debtor.")), and the time for the Committee and other parties in interest to comment on the Oversight Board's proposed plan is not at hand. Indeed, we do not even know yet how the Oversight Board's plan will propose to treat the unsecured creditors the Committee represents—a fact that will be critical to the Court's assessment of the Committee's proper role in the plan confirmation process.

9

D. **The Committee Improperly Seeks to Use Rule 2004 to Investigate Harm to Private Parties and to Pursue Purported Claims on Behalf of the Residents of Puerto Rico at Large.**

14. The Committee's professed purposes for seeking discovery under Rule 2004 greatly exceed the permitted uses for discovery of that type. Discovery under Rule 2004 is intended to "permit the debtor and other estate fiduciaries and court-appointed officers, as needed, to determine the extent of the estate's assets and recover those assets for the benefit of creditors." In re MF Global Inc., 2013 WL 74580, at *1 (citing In re Drexel Burnham Lambert Group, Inc., 123 B.R. at 708); see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 2014 WL 5486279, at *2 ("The underlying purpose of Rule 2004 is to 'allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate.'") (quoting Keene Corp. v. Johns-Manville Corp (In re Johns-Manville Corp.), 42 B.R. 362, 364 (S.D.N.Y. 1984)). Rule 2004 "does not permit parties in interest to investigate their private (non-estate) claims." In re MF Global Inc., 2013 WL 74580, at *1 (denying a request for discovery under Rule 2004 made by a party acting in a "watchdog" capacity because it was seeking discovery "in furtherance of its *own* interest, not those of the estate") (emphasis in original).

15. Yet, much of what the Committee says it wants to accomplish through its requested 2004 discovery is unrelated to identifying, valuing and recovering the Commonwealth's assets. Nor is the Committee focused exclusively on causes of action that the Committee believes the Commonwealth may possess against financial institutions. Instead, as justifications for its proposed investigation of non-debtor third parties, the Committee raises unanswered questions about harms that certain financial institutions allegedly caused to private purchasers of Puerto Rico bonds and makes sweeping statements about the interests of Puerto Rico's residents at large and the universal virtue of truth-seeking. In paragraph 8 of the Motion, the Committee boldly proclaims that "[t]he people of Puerto Rico," in addition to the unsecured

10

creditors the Committee represents, "deserve answers about what happened, and they deserve answers from an independent party with the power to shine sunlight into the darkest corners of Puerto Rico's public and private banking institutions." Mot. ¶ 8. In the following paragraph, the Committee wonders, "Did banks such as Santander and Popular knowingly or recklessly misrepresent the risks associated with the Puerto Rico bonds they were selling to retail and other investors?" Mot. ¶9. Ultimately, the Committee proclaims that "Puerto Rico's restructuring will never be complete if activities by the island's most important public and private financial institutions are not thoroughly investigated and exposed to the light of day." Id. This agenda that the Committee has articulated far exceeds the bounds of what is permissible under Rule 2004, and the Committee should not be granted authority to use the unique bankruptcy tool of Rule 2004 to compel discovery on topics unrelated to the adjustment of the Commonwealth's debts.

### E. The Scope of the Committee's Proposed Document Requests are Overly Broad.

16. If the Court is inclined to grant the Committee authority to commence an investigation, the Court should tailor the discovery sought to the allegations the Committee has cited in its Motion to ensure that the proposed scope of discovery "is necessary to establish the claim of the party seeking the examination." In re AOG Entm't, Inc., 558 B.R. at 109 (quoting In re Metiom, Inc., 318 B.R. at 268 (internal quotation marks omitted).

17. As it currently stands, the discovery sought by the Committee goes far beyond the "fishing expedition" that might be permitted in the typical Rule 2004 context. Indeed, the document requests appended to the Motion are more akin to draining the entire ocean. The Requests relate to a period of more than *11 years* (going back to January 2006) and seek absurdly broad categories of documents. For instance, the Committee seeks from each of the Santander entities any and all documents or communications concerning COFINA,

11

unconstrained by any relevancy limitations. This request likely captures an inordinate number of documents, provides nothing of consequence to the Committee, and imposes a substantial burden on Santander. Indeed, nearly every one of the *more than 50* requests issued to each of the Santander entities is similarly unfocused and broad, and would impose unnecessary and unfair burdens on the recipients.[4]

18.  Responding to the overbroad document requests proposed by the Committee would impose a heavy financial burden on Santander—one the Court should relieve by requiring the Committee to reimburse any and all legal fees and expenses Santander incurs in responding to the Committee's Rule 2004 discovery requests. In re Comm. Fin. Servs., Inc., 247 B.R. 828 (Bankr. N.D. Okla. 2000) (holding that a bankruptcy court has authority in Rule 2004 discovery to enter orders as justice requires to protect a person from undue burden or expense). Under Federal Rule of Civil Procedure 45 (incorporated into Rule 2004 through Federal Rule of Bankruptcy Procedure 9016), "the Court is required to protect persons who are not parties or officers of a party from incurring significant expense in connection with document production." In re Buccaneer Res., LLC, 2015 WL 8527424, at *6 (applying the requirement of Fed. R. Civ. P. 45(d)(2)(b)(ii) to discovery pursued by a creditors' committee under Rule 2004). Similarly, "the Court is required to implement appropriate measures" to ensure that responding to the discovery does not "impos[e] an undue burden or expense." Id. (applying Fed. R. Civ. P. 45(d)(1) to committee's Rule 2004 discovery). In Buccaneer Resources, the Bankruptcy Court for the Southern District of Texas, achieved "an appropriate balance of the competing interests"

---

[4] Even the definitions of the various Santander entities are excessively overbroad, as each request purports to request materials from all Santander "parents, subsidiaries, and affiliates, as well as . . . officers, directors, attorneys, agents, accountants, employees, representatives, financial advisors" and others. As drafted, the requests improperly seek documents and information from literally thousands of entities and individuals.

of the party seeking discovery and the party from whom it was sought by "impos[ing] the financial burden of the [discovery] on the entity for whom the discovery was ultimately undertaken." Id. at *7. This fee-shifting was merited because, among other reasons, the court did not believe that the Rule 2004 movant in that case had "a present need for the discovery." Id. Here, too, where the investigation the Committee proposes to pursue is premature and duplicative, requiring the Committee to bear the costs of Santander's compliance with the investigation would appropriately align the parties' respective incentives.

19. In addition, although the Motion purports to preserve the rights of Santander and other financial institutions "with respect to scope, burden or privilege as to specific document requests," (Mot. ¶ 36), that statement is arguably contradicted by the provision in the Committee's proposed order stating generally that the Committee "is authorized to commence an investigation concerning the issuance, sale, and creation of Commonwealth Debt." For this reason, if the Court is inclined to grant the Motion in full or in part, Santander respectfully requests that the Court strike numbered paragraph 1 (containing the foregoing language) from its order. Santander also expressly reserves all of its rights, including but not limited to the right to object to the scope of any examination or request for production of documents by the Committee, including those documents requests attached as exhibits to the Motion, and to assert a right not to produce specific documents or answer particular questions.

## CONCLUSION

Under the standard applicable to Rule 2004 requests, the Committee has not demonstrated that the discovery it seeks is necessary to establish a claim belonging to the Committee or its constituents; the Committee and its constituents do not have (and cannot obtain) authority to assert derivatively claims belonging to the Commonwealth, and the investigation the Committee proposes to conduct far exceeds any direct claims the creditors

13

represented by the Committee may possess. Moreover, the Committee's attempt to duplicate an investigation already assigned to the Oversight Board and to commence its discovery with exceedingly broad document requests cannot be squared with the requirement that the burden imposed on the recipient of the discovery requests be proportional to the requesting party's need for the documents. For these reasons and all other reasons discussed herein, Santander respectfully requests that the Court deny the Motion or, in the alternative, strike Paragraph 1 of the Proposed Order.

Date: July 28 2017

By: /s/Juan R. Rivera Font

JUAN R. RIVERA FONT
USDC-PR No. 221703
juan@riverafont.com
JUAN R RIVERA FONT, LLC
27 González Giusti Ave.
Office 602
Guaynabo, PR 00968
Telephone: (787) 751-5290
Facsimile: (787) 751-6155

*Local Counsel for Santander Securities LLC, Santander Asset Management LLC and Banco Santander Puerto Rico*

SIDLEY AUSTIN LLP
Andrew W. Stern (*pro hac vice* pending)
Nicholas P. Crowell (admitted *pro hac vice*)
Alex R. Rovira (*pro hac vice* pending)
James Heyworth (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for Santander Securities LLC, Santander Asset Management LLC and Banco Santander Puerto Rico*

14