**Hearing Date**: August 9, 2017 at 9:30 a.m. (prevailing Eastern Time)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.¹ | (Jointly Administered) |

---------------------------------------------------------------x

| | |
|---|---|
| TAMRIO, INC., CONSTRUCTORA SANTIAGO II, CORP., and FERROVIAL AGROMAN, S.A., | **Re: ECF Nos. 614, 627, and 685** |
| Movants, | |
| v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Respondents. | |

---------------------------------------------------------------x

**OMNIBUS OBJECTION OF DEBTORS TO MOTIONS TO
COMPEL THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY TO ASSUME OR REJECT EXECUTORY CONTRACTS**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

Preliminary Statement .................................................................................................................... 2

Omnibus Objection ......................................................................................................................... 4

    a.    Whether the Debtor has had Sufficient Time to Appraise its Financial Situation and the Potential Value of the Assets in Formulating a Plan .................. 6

    b.    The Safeguards Afforded to Movants ................................................................... 6

    c.    The Nature of the Interests at Stake ...................................................................... 7

    d.    The Balance of Harms and the Good to Be Achieved Favor HTA ........................ 8

    e.    Whether the Action to be Taken is so in Derogation of Congress' Scheme that it would be Arbitrary ................................................................................... 10

    f.    The Debtor's Ability to Satisfy Postpetition Obligations .................................... 10

    g.    The Damage the Non-Debtor Will Suffer Beyond the Compensation Available under the Bankruptcy Code .................................................................. 11

    h.    The Importance of the Contract to the Debtor's Business and Reorganization .................................................................................................... 11

    i.    Above All, the Successful Rehabilitation of Debtors .......................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Adelphia Commc'ns Corp.*,
   291 B.R. 283 (Bankr. S.D.N.Y. 2003)..................................................................................5, 8

*In re Dana Corp.*,
   350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006)...........................................................................4,5

*In re Hawker Beechcraft, Inc.*,
   483 B.R. 424 (Bankr. S.D.N.Y. 2012).....................................................................................5

*In re Klein Sleep Prod., Inc.*,
   78 F.3d 18 (2d Cir. 1996).....................................................................................................4, 6

**STATUTES**

11 U.S.C. § 365...................................................................................................................................4

11 U.S.C. § 365(d)(2) .....................................................................................................................4,7

11 U.S.C. § 365(d)(4)(A)..................................................................................................................10

11 U.S.C. § 365(d)(4)(B)..................................................................................................................10

11 U.S.C. § 503...................................................................................................................................4

11 U.S.C. § 503(b) .............................................................................................................................7

48 U.S.C. §§ 2101-2241 ....................................................................................................................2

PROMESA § 104(j).............................................................................................................................2

PROMESA § 206.................................................................................................................................2

PROMESA § 301.................................................................................................................................7

PROMESA § 304(a) ............................................................................................................................2

PROMESA § 312(a) ............................................................................................................................5

PROMESA § 315(b) ............................................................................................................................2

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"),[1] the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submit this omnibus objection (the "Omnibus Objection") to each *Motion to Compel the Puerto Rico Highways and Transportation Authority to Assume or Reject Executory Contracts* [ECF Nos. 614, 627, and 685] (collectively, the "Motions"), and respectfully represent as follows:

**Preliminary Statement**

1. On May 21, 2017 (the "HTA Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under title III thereof.

2. Since the HTA Petition Date, the Oversight Board, HTA, and their respective advisors have been working diligently toward resolving HTA's more than $6 billion in liabilities,

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motions (as defined herein).

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

2

including over $4 billion in funded debt. The Motions seek an order requiring the Oversight Board and HTA to turn their focus to cure prepetition obligations allegedly owed to Tamrio, Inc., Constructora Santiago II, Corp., and Ferrovial Agroman, S.A. (collectively, the "Movants"), representing certain construction counterparties to HTA on relatively small projects in various stages of construction. Simply put, the Oversight Board and HTA should not be required to do so at this early stage of HTA's title III case, especially since HTA will honor all its postpetition obligations to Movants.

3. HTA has hundreds of executory contracts, all of which are important to its purpose of providing a transportation system and related services to the Commonwealth and its residents. HTA is in the process of reviewing those contracts as part of its restructuring. Movants have explained in their Motions that they each have many employees generating weekly payrolls, no doubt in part due to their contracts with HTA. The Oversight Board is sensitive to their positions, and has confirmed with HTA or AAFAF that Movants are being regularly advised of the postpetition work HTA needs from them and they are being paid in the ordinary course. The Motions do not provide any basis to advance Movants' contracts to a decision as to whether to assume or reject now, since they are being paid in the ordinary course of business for postpetition performance. Moreover, before certain litigation implicating HTA is resolved, HTA cannot accurately assess which contracts should be assumed or rejected, as the outcome of such litigation will have a substantial impact on HTA's decision-making. If HTA were required to decide now and assumed Movants' contracts, and litigation were ultimately resolved in a manner adverse to HTA, it may be unable to perform under Movants' assumed contracts. If so, HTA would be saddled with an administrative expense claim for all amounts due under the contract, including the cure amounts that are prepetition amounts that would

otherwise be prepetition unsecured rejection damage claims. *See In re Klein Sleep Prod., Inc.*, 78 F.3d 18 (2d Cir. 1996) (claims under assumed executory contracts are entitled to administrative expense treatment pursuant to Bankruptcy Code section 503). On the other hand, if HTA rejects the contracts, and the litigation were resolved in its favor, HTA may lose out on valuable contracts. Both of these outcomes would significantly prejudice HTA and its other stakeholders. Such risk can be avoided by simply affording HTA its statutory right under Bankruptcy Code section 365 to determine whether to assume or reject HTA's hundreds of executory contracts, including Movants' contracts, in the context of its plan of adjustment. For these reasons and the reasons set forth below, the Motions should be denied.

## Omnibus Objection

4. The power to assume and reject contracts is fundamental to a debtor, as is giving the debtor enough time to make an informed exercise of that power. "Permitting the debtor to make its decision as late as the plan confirmation date enables the debtor to carefully evaluate the possible benefits and burdens of an [executory contract]." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001) (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 388 (Bankr. W.D. Pa. 1985)). "It is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision . . . ." *Id*. Although section 365(d)(2) permits a party to seek to shorten a debtor's statutory period to assume or reject an executory contract or unexpired lease, "the burden is on the movant to demonstrate cause." *See In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006). Moreover, courts have required the movant to demonstrate a "compelling reason" why such relief is appropriate. *Physician Health*, 262 B.R. at 295 (denying motion to compel assumption or rejection where movant "failed to establish a compelling reason for the Debtors to decide whether to assume or reject its contract now"). Because the burden is high and giving time to the debtor is so important, "courts rarely force a

debtor [to] assum[e] or reject[] a contract." *In re K-Mart Corp.,* 290 B.R. 614, 620 (Bankr. N.D. Ill. 2003).

5. As set forth in the Motions, courts generally consider the following factors in determining whether to fix a date by which a debtor must assume or reject an executory contract: (a) whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan, (b) the safeguards afforded to the movants, (c) the nature of the interests at stake, (d) the balance of harm to the litigants, (e) the good to be achieved, (f) whether the action to be taken is so in derogation of Congress' scheme that it would be arbitrary, (g) the debtor's failure or ability to satisfy postpetition obligations, (h) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code, (i) the importance of the contract to the debtor's business and reorganization, and (j) above all, the successful rehabilitation of debtors.[3] As explained in further detail below, each of these factors weighs in favor of HTA, and Movants have failed to satisfy their burden. *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) ("The burden rests with the movant to demonstrate cause.") (citing *In re Dana Corp.*, 350 B.R. at 147).

---

[3] *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 292–93 (Bankr. S.D.N.Y. 2003). Courts also consider (a) whether there is a need for judicial determination as to whether an executory contract exists, and (b) whether exclusivity has been terminated. However, both of these factors are inapplicable to the Court's determination of the Motions. Given there are material obligations left unperformed on both sides of Movant's contracts, the Debtors do not believe there is a need for judicial determination as to whether such contracts are executory. Moreover, exclusivity is inapplicable to the Debtors' title III cases because only the Oversight Board may propose a plan of adjustment. PROMESA § 312(a) ("Only the Oversight Board . . . may file a plan of adjustment of the debts of the debtor."). However, HTA should not be required to determine to assume or reject the contracts at this early stage of HTA's title III case.

### a. *Whether the Debtor has had Sufficient Time to Appraise its Financial Situation and the Potential Value of the Assets in Formulating a Plan*

6. Since the HTA Petition Date, HTA and the Oversight Board have been working with parties in interest on a global restructuring of HTA's obligations, along with those of the other Debtors. They have also been defending against myriad lawsuits that seek to divert HTA's revenues to debt service. Indeed, given this ongoing litigation with bondholders and various pending motions seeking stay relief, the Court should not require HTA to make a determination regarding the assumption or rejection of any of its executory contracts at this time. If the Court were to impose a deadline with respect to Movant's contracts prior to HTA's formulation of its plan of adjustment, and HTA chose to assume the contracts, substantial risk would be shifted to HTA and its other stakeholders if subsequent circumstances warrant rejection, in which case HTA will have incurred material, unnecessary administrative expenses. *Klein Sleep*, 78 F.3d at 30. On the other hand, if HTA were to reject Movants' contracts, and subsequently determine that they were beneficial or essential to its restructuring, HTA would lose the benefit of otherwise valuable contracts. Such outcomes would also require HTA to conduct further diligence and investigation into HTA's financial situation, and could result in material amendments to the Debtors' fiscal plans, affecting all stakeholders involved in the Debtors', and not just HTA's, restructuring.

7. These potential adverse outcomes can be avoided by simply providing HTA the time set forth in the Bankruptcy Code (*i.e.*, until plan confirmation) to review its hundreds of executory contracts and determine which are needed and which are not in the context of the plan.

### b. *The Safeguards Afforded to Movants*

8. By contrast, Movants have substantial safeguards provided to them under PROMESA and, through incorporation, the Bankruptcy Code, during the period provided to a

6

debtor from its petition date through plan confirmation to decide whether to assume or reject executory contracts. *See* 11 U.S.C. § 365(d)(2), made applicable by PROMESA § 301. Importantly, Movants are being paid in the ordinary course of business for postpetition work performed under their respective contracts, and have the right to assert an administrative expense claim for such work in the unlikely event they are not paid. *See* 11 U.S.C. § 503(b), made applicable by PROMESA § 301. Moreover, if HTA does not pay them in the ordinary course, Movants can seek relief from this Court. HTA is operating and generating revenues, is overseeing executory contracts, including Movants' contracts, and is communicating with contract counterparties, as necessary, concerning scope and performance, in the ordinary course of business. Movants have not asserted such rights are insufficient to protect their interests during this period. Accordingly, Movants have ample protection, and are not harmed by the need of the Oversight Board and HTA for more time before determining whether to assume or reject Movants' contracts.

### c. *The Nature of the Interests at Stake*

9. The interests at stake weigh in favor of HTA. Without sufficient resources to operate and maintain the transportation system and related services provided by HTA, the Commonwealth's roads and other transportation services would suffer and likely fall into disrepair. Residents of Puerto Rico would be unable to easily or effectively transport themselves throughout the island. Such an outcome would cause massive disruption to Puerto Rico's already-vulnerable economy. HTA should therefore be allowed to focus its efforts on preventing such consequences, focus on its restructuring efforts and which of its contracts are necessary or beneficial to such efforts, and decide whether to assume or reject Movants' contracts in the context of the overall resolution of this title III case.

10. Movants' interests, by contrast, involve current payment of prepetition cure amounts and postpetition obligations arising from construction projects at various stages of completion, which postpetition obligations, as explained above, are being paid in HTA's ordinary course of business. At this early stage of the case HTA's efforts should be focused on stabilizing the operation of the system and preserving liquidity to support a plan of adjustment, and HTA should not be required to divert resources to a rushed assessment of Movants' contracts and inherent risk in premature assumption or rejection.

### d. *The Balance of Harms and the Good to Be Achieved Favor HTA*

11. The balance of the harm and risk, as well as the good to be achieved, also weigh strongly in HTA's favor.[4] As noted above, the Oversight Board and HTA are acutely focused on restructuring HTA's billions of dollars of liabilities, including its outstanding funded debt exceeding $4.1 billion in principal amount. If resources are diverted to address Movant's contracts and to incur the risk of premature assumption or rejection, HTA's restructuring efforts may well be materially prejudiced for little or no benefit to Movants. Moreover, granting the relief requested in the Motions would likely result in additional contract counterparties filing similar motions, further hindering progress in HTA's title III case and distracting it and the Oversight Board from their main mission.

12. HTA's time and efforts are better spent focusing on operations, restructuring, and ensuring litigation with its bondholders does not result in a harmful or fatal liquidity crisis. An adverse ruling in such litigation could have an adverse effect on HTA's ability to operate and would undoubtedly change the priorities of certain projects. Accordingly, to the extent HTA's efforts can be focused on addressing and restructuring its largest debts, they should be. While

---

[4] The *Adelphia* court described these two factors as largely variants of one another. *In re Adelphia Commc'ns Corp.*, 291 B.R. at 296.

Movants may understandably prefer the certainty inherent in their requested relief, all other parties, including residents of the Commonwealth, would be prejudiced thereby, as HTA, and its professionals, would be required to divert resources from more pressing matters, the net effect of which would produce substantially more harm than good across all interested parties. HTA and the Oversight Board can, and will, turn to the decision to assume or reject HTA's executory contracts, including Movant's contracts, as soon as sufficient uncertainty is resolved to enable them to make the right decisions.

13. While Movants will face some delay in knowing whether their contracts will be assumed, the harm presented thereby, if any, is *de minimis* due to Movants being paid in the ordinary course for postpetition performance under their contracts and HTA remaining in communication with all contract counterparties to provide information, as necessary, for internal planning purposes. Movants have not carried their heavy burden of explaining why or how they are prejudiced by HTA's making a determination at the same time it reviews all its other contracts in light of the statutory protections afforded them. Indeed, Movants' prepetition claims will either be treated as administrative expenses, if assumed, or receive the same treatment as other unsecured claims, if rejected, and, regardless of the treatment of prepetition claims, their postpetition claims are being paid in the ordinary course.[5] Thus, no harm will befall Movants by allowing HTA its statutory period to assume or reject contracts. In short, the balance of harm and the good to be achieved fall clearly in favor of HTA and denial of the Motions.

---

[5] Because Bankruptcy Code section 363 does not apply in HTA's Title III case, *see* PROMESA section 301(a), HTA may determine, in its sole discretion, to pay certain prepetition obligations in the ordinary course of business, as HTA has been doing for certain prepetition charges of these Movants.

### e. *Whether the Action to be Taken is so in Derogation of Congress' Scheme that it would be Arbitrary*

14. HTA's proposed course of action is also inherently not in derogation of Congress' scheme and not arbitrary. Indeed, by omitting a deadline to assume or reject executory contracts prior to plan confirmation, it is evident Congress intended to give each debtor sufficient time to contemplate its restructuring and whether it would be best served by assuming or rejecting each executory contract it possesses. Congress' intent is further evidenced by the 2005 amendment to the Bankruptcy Code that requires a debtor to determine within the first 120 days of its petition whether to assume or reject leases of nonresidential real property, *see* 11 U.S.C. § 365(d)(4)(A),[6] but declined to impose any similar requirements with respect to other types of executory contracts (which would include Movants' contracts). Given that not even the first 120 days have passed since the HTA Petition Date, it is clear that HTA's course of action could not possibly be in derogation of Congress' scheme. Accordingly, this factor also weighs in favor of HTA.

### f. *The Debtor's Ability to Satisfy Postpetition Obligations*

15. The Debtors, including HTA, have been satisfying postpetition obligations in the ordinary course of business. As noted above, HTA is operating and generating revenues, is overseeing executory contracts, including Movants' contracts, and is communicating with contract counterparties, as necessary, concerning scope and performance, in the ordinary course of business. Accordingly, Movants have not argued or shown that HTA will become unable to satisfy its postpetition obligations as they become due and owing. Thus this factor favors denial of the Motions.

---

[6] The time period to assume or reject nonresidential real property leases may be extended by an additional 90 days. 11 U.S.C. § 365(d)(4)(B).

      g. *The Damage the Non-Debtor Will Suffer Beyond the Compensation Available under the Bankruptcy Code*

16. Movants have the burden to demonstrate how they will suffer damage beyond the compensation available under the Bankruptcy Code, and they have failed to make such a showing. As noted above, Movants are being paid in the ordinary course for postpetition services through their continued work between the HTA Petition Date and the date HTA determines to assume or reject Movants' contracts. As such amounts are being compensated in full in the ordinary course, and the prepetition amounts owed to Movants will either be paid in full, if assumed, or provided the same treatment as other unsecured claims, if rejected, Movants will not suffer any marginal increase in damages. Accordingly, this factor weighs in favor of HTA.

      h. *The Importance of the Contract to the Debtor's Business and Reorganization*

17. The executory contracts implicated by the Motions provide for the development and construction of infrastructure projects through the Commonwealth. Accordingly, the contracts may be very valuable to HTA, as they ultimately provide essential services and meaningful benefits to the residents of the Commonwealth. Indeed, without the ability to develop, construct, and maintain infrastructure, HTA's purpose would be severely frustrated and hampered. Therefore, HTA, the Commonwealth, and the Oversight Board should not be required at this early stage of HTA's title III case to make such significant decisions regarding their infrastructure plan before there has been adequate time to resolve more pressing issues and to develop a corresponding plan of adjustment.

      i. *Above All, the Successful Rehabilitation of Debtors*

18. The Debtors, including HTA, desire above all else to successfully, and to the extent possible, consensually, restructure their debts for the benefit of their creditors, parties in

11

interest, and the residents of the Commonwealth. As this Court has previously noted, "[f]ailure, frankly, is not an option." May 17, 2017 Hr'g Tr. at 8:8. Therefore, HTA should be afforded the necessary time to (a) engage meaningfully with creditors both higher in the capital structure and holding significantly more debt, (b) resolve the current litigation, and (c) negotiate a plan of adjustment, before determining whether to assume or reject Movants' contracts. To allow otherwise could materially delay restructuring efforts of HTA and all Debtors – inflicting substantially more costs on other parties than any benefit provided by a determination of assuming or rejecting Movants' contracts.

19. For all the reasons set forth herein, the Motions should be denied, and a timeline for HTA to assume or reject executory contracts, including Movants' contracts, should not be established now.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request the Court to (a) sustain the Omnibus Objection, (b) deny the Motions, and (c) grant the Debtors such other relief as is just and proper.

Dated: July 28, 2017  
      San Juan, Puerto Rico

Respectfully submitted,

*/s/*   Martin J. Bienenstock

Martin J. Bienenstock  
Paul V. Possinger  
Ehud Barak  
Maja Zerjal  
(Admitted *Pro Hac Vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/*   Ubaldo M. Fernández

Ubaldo M. Fernández  
USDC No. 224807  
**O'NEILL & BORGES LLC**  
250 Muñoz Rivera Ave., Suite 800  
San Juan, PR 00918-1813  
Tel: (787) 764-8181  
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*