# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

      Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## REQUEST FOR JUDICIAL NOTICE
## IN SUPPORT OF AAFAF'S OBJECTION TO THE MOTION OF THE
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER
## BANKRUPTCY RULE 2004, AUTHORIZING DISCOVERY PROGRAM WITH
## RESPECT TO CERTAIN CAUSES OF PUERTO RICO FINANCIAL CRISIS

To the Honorable United States District Court Judge Laura Taylor Swain:

      Pursuant Federal Rule of Evidence 201, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Commonwealth of Puerto Rico (the "Commonwealth") and the Government Development Bank for Puerto Rico (the "GDB") under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, hereby move this Court to take judicial notice of the following document, a true and correct copy of which is annexed hereto as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Exhibit A**: Resolution adopted by the Financial Oversight and Management Board for Puerto Rico ("FOMB") on May 26, 2017, entitled *Procedures for Conducting PROMESA Investigations*.

Rule 201(b) of the Federal Rules Evidence provides that a fact may be judicially noticed if it is either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(d) of the Federal Rules of Evidence provides that a court shall take judicial notice of such material if requested by a party and supplied with the necessary information.

Exhibit A is a Resolution adopted by the FOMB on May 26, 2017, entitled *Procedures for Conducting PROMESA Investigations* (the "Procedures"), for the express purpose of "fulfilling the duties and responsibilities assigned and granted to it by the United States Congress." Exhibit A at § 1.2.   The Procedures authorize the FOMB's General Counsel, Jaime A. El Koury, to conduct both "Informal Investigations" and "Formal Investigations" into matters specified in PROMESA Section 104(o).

The above-referenced and attached document falls within the class of materials appropriate for judicial notice upon a party's request. The document is in the public domain, its contents are readily susceptible to verification, and its existence is not subject to reasonable dispute. *See, e.g., United States ex rel. Dingle v. BioPort Corp.,* 270 F. Supp.2d 968, 972 (WD. Mich 2003) (noting that public records and government documents are generally considered "not to be subject to reasonable dispute").   For these reasons, AAFAF respectfully requests that the Court take judicial notice of the above-referenced and attached Exhibit A.

Dated: July 31, 2017
San Juan , Puerto Rico

Respectfully submitted,

/s/ *Peter Friedman*

John Rapisardi
Suzzanne Uhland
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Tel:  (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

/s/ *Andrés W. López*
Andrés W. López
USDC No. 215311

**THE LAW OFFICES OF
ANDRÉS W. LÓPEZ, P.S.C.**
902 Fernández Juncos Ave.
San Juan, PR 00907
Tel:  (787) 294-9508
Fax: (787) 294-9519

*Co-attorney for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**<u>Exhibit A</u>**



## BOARD RESOLUTION ADOPTED ON MAY 26, 2017

## (PROCEDURES FOR CONDUCTING PROMESA INVESTIGATIONS)

WHEREAS, on June 30, 2016, the federal Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") was enacted; and

WHEREAS, PROMESA Section 104(o) authorizes the Financial Oversight and Management Board for Puerto Rico that was created pursuant to PROMESA (the "Board") to "investigate the disclosure and selling practices in connection with the purchase of bonds issued by [Puerto Rico and its instrumentalities] for or on behalf of any retail investors including any underrepresentation of risk for such investors and any relationships or conflicts of interest maintained by such broker, dealer, or investment advisor . . . as provided in applicable laws and regulations"; and

WHEREAS, PROMESA Sections 104(a), (c) and (f) also grant investigative powers to the Board; and

WHEREAS, the Board desires to have in place a set of procedures to be followed for any investigation that it or any agent authorized by it pursues under PROMESA;

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT the Board adopts the "Procedures Adopted by the Financial Oversight and Management Board for Puerto Rico for Conducting Investigations Pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act" (the "Procedures"), a copy of which Procedures is attached as an exhibit to this Resolution; and

FURTHER RESOLVED that these Procedures shall be followed in any investigations undertaken by the Board or its authorized agent; and

FURTHER RESOLVED that the Procedures shall be posted to the Board's website and, pursuant to PROMESA Section 101(h)(1), submitted by the Board to the Governor, the Legislature, the President and Congress.



**PROCEDURES ADOPTED BY THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO FOR CONDUCTING INVESTIGATIONS PURSUANT TO THE PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT**

## 1. Introduction

### 1.1 Purpose and Disclosure

a. These Procedures, adopted by the Board pursuant to PROMESA Section 101(h)(1), set out the manner in which Investigations undertaken by the Board shall be conducted.

b. Pursuant to PROMESA Section 101(h)(1) and Board Bylaw 11.3, these Procedures shall be posted on the Board's website and submitted by the Board to the Governor, the Legislature, the President and Congress.

### 1.2 Mission Statement

a. The Board is committed to fulfilling the duties and responsibilities assigned and granted to it by the United States Congress under PROMESA, including, as it determines to be appropriate, exercising its authority to conduct Investigations pursuant to PROMESA Section 104(o) or pursuant to any other authority invested in the Board by PROMESA.

b. If, after conducting an Investigation pursuant to PROMESA Section 104(o), the Board concludes that misconduct of any sort has occurred, the Board shall issue Board Investigative Findings as appropriate under PROMESA Section 104(p) and shall take such steps as it deems appropriate to address such misconduct, including referring such misconduct to the appropriate regulatory or prosecutorial bodies and/or pursuing such other relief with respect to such misconduct as authorized by PROMESA.

### 1.3    Definitions

a.    For purposes of these Procedures, unless expressly stated to the contrary, the following terms shall have the meanings set out in this Section 1.3:

(1)    "Board" means the Financial Oversight and Management Board for Puerto Rico established under PROMESA.

(2)    "Board Counsel" means the counsel retained by the Board to assist in conducting any Investigation.

(3)    "Board Counsel Recommendations" means Board Counsel's recommendations to the Board addressing one or more findings of misconduct.

(4)    "Board Investigative Findings" means any findings adopted by the Board pursuant to PROMESA Section 104(p) or otherwise regarding an Investigation.

(5)    "Ethics Advisor" means the outside ethics consultant retained by the Board.

(6)    "Formal Investigation" means any formal inquiry or review of Relevant Activities undertaken by the Board pursuant to PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA, for which inquiry or review the Board or its designated agent has adopted an Investigative Resolution.

(7)    "Formal Investigation Witness" means any individual who is compelled or requested to provide Investigative Materials or to attend and provide an interview or testimony in a Formal Investigation.

(8)    "Formal Investigation Witness Rights" means the rights accorded to any Formal Investigation Witness, which rights are described in Exhibit A.

(9)    "General Counsel" means the individual appointed by the Board to be its General Counsel.

(10)    "Informal Investigation" means any inquiry or review of Relevant Activities undertaken by the Board pursuant to

PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA for which the Board has not adopted an Investigative Resolution.

(11)   "Investigation" means an Informal Investigation and/or a Formal Investigation, as the case may be.

(12)   "Investigative Executive Session" means a non-public Executive Session of the Board to be convened to consider whether to adopt Board Investigative Findings in connection with an Investigation.

(13)   "Investigative Materials" means books, records, correspondence, memoranda, papers, documents, electronic files, metadata, tapes, and materials of any nature relating to any matter involved in an Investigation, including any materials or information obtained pursuant to PROMESA Section 104(f)(1).

(14)   "Investigative Record" means all of the factual and legal information of any sort underlying an Investigation, including (without limitation) Investigative Materials, witness transcripts, memoranda of witness interviews, communications to the Board regarding an Investigation and minutes of any Board meetings regarding an Investigation.

(15)   "Investigative Resolution" means a resolution adopted by the Board initiating a Formal Investigation, which Resolution shall be substantially in the form set out in Exhibit B.

(16)   "Investigative Subpoena" means a subpoena issued by the Board or its authorized agent pursuant to PROMESA Section 104(f)(1), which subpoena shall be substantially in the form set out at Exhibit C.

(17)   "Procedural Guidelines" means the Financial Oversight and Management Board for Puerto Rico Procedural Guidelines for Maintaining the Confidentiality of Investigatory Records Compiled for Law Enforcement Purposes, adopted by the Board on May 5, 2017, a copy of which is attached as Exhibit D.

(18)   "Procedures" means the Procedures for Investigations by the Financial Oversight and Management Board for Puerto Rico

pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act.

(19)   "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act.

(20)   "Puerto Rico Government" means the government of the Commonwealth of Puerto Rico and all of its covered territorial instrumentalities, as defined in PROMESA Section 5(7) and 5(11) designated by the Board pursuant to PROMESA Section 101(d)(1)(A) at a September 30, 2016 Board meeting, including any modifications to such designations as the Board may make.

(21)   "Recommendation Notice" means a notice that Board Counsel has preliminarily determined to recommend to the Board that the Board adopt Board Investigative Findings of misconduct.

(22)   "Relevant Activity" or "Relevant Activities" means (*i*) the disclosure and selling practices in connection with the purchase of bonds issued by the Puerto Rico Government for or on behalf of any retail investor including any underrepresentation of risk for such investors and any relationships or conflicts of interest maintained by such broker, dealer, or investment adviser as provided in applicable laws and regulations regarding which the Board has authority to investigate pursuant to PROMESA 104(o) and (*ii*) such other activit(ies) or conduct regarding which the Board has authority to investigate pursuant to any other provision of PROMESA.

## 2.    Authority to Conduct Investigations

### 2.1    Delegation to General Counsel

a.    Pursuant to PROMESA Section 104(b), and until the Board determines otherwise, the Board authorizes the General Counsel to conduct and/or oversee all Investigations.

b.    The authorization granted to the General Counsel pursuant to Section 2.1.a above shall include the following functions to be performed by the General Counsel or, as he or she shall authorize, by Board Counsel:

(1)     to initiate and conduct Informal Investigations;

(2)     to advise the Board and recommend to it that Formal Investigations be initiated as the General Counsel, in collaboration with Board Counsel, deems appropriate;

(3)     to engage Board Counsel to assist in conducting an Investigation and to seek such assistance from Board Counsel in conducting the Investigation as the General Counsel deems necessary and appropriate;

(4)     to authorize Board Counsel to undertake such functions as the Board has authorized the General Counsel to undertake pursuant to this Section 2.1 as he or she deems necessary and appropriate;

(5)     subject to Section 5.1 below, to issue Investigative Subpoenas;

(6)     to involve the Ethics Advisor in any Investigation as the General Counsel, in collaboration with Board Counsel, deems appropriate;

(7)     to retain such professional consultants and third-party vendors to assist in an Investigation as the General Counsel, in collaboration with Board Counsel, deems appropriate;

(8)     to authorize Board Counsel to administer oaths and affirmations, subpoena witnesses, compel witness attendance, take evidence, and require the production of Investigative Materials in connection with a Formal Investigation;

(9)     to authorize Board Counsel to provide copies of the Investigative Resolution to individuals and entities to which Investigative Subpoenas have been issued, subject to their agreeing to maintain the confidentiality of the Investigative Resolution;

(10)    subject to Section 4.2.a(4)(c), to grant written requests of individuals to procure copies of the transcript of their testimony (subject to their agreeing to maintain the confidentiality of the transcript) or to deny such requests;

(11)    to authorize the Recommendation Notice described in Section 7.1 below;

(12)    to accept responses to a Recommendation Notice from relevant individuals and entities pursuant to Section 7.2 below;

(13)    to recommend to the Board resolution of matters (other than termination and closure) that are subject to an Investigation with involved individuals or entities pursuant to Section 6.3 below;

(14)    to terminate and close Investigations as the General Counsel, in collaboration with Board Counsel, deems appropriate;

(15)    to terminate any delegated authority to administer oaths and affirmations, subpoena witnesses, compel witness attendance, take evidence, and require the production of Investigative Materials; and

(16)    to institute subpoena enforcement proceedings pursuant to PROMESA Section 104(f)(2).

## 2.2   Reports to Board Regarding Investigations

a.    The General Counsel shall from time to time update the Board regarding the status of an Investigation and/or direct Board Counsel to do so.

b.    Notwithstanding anything in Section 2.1 above and subject to Section 8 below, at the end of an Investigation in which Board Counsel, in collaboration with the General Counsel, determines to recommend to the Board that it adopt Board Investigative Findings, the General Counsel shall direct Board Counsel to report its proposed findings and recommendations to the Board.

## 3.   Initiation of Investigations

## 3.1   Informal Investigations

a.    An Informal Investigation may be initiated pursuant to Sections 2.1.a and 2.1.b.(1) above where, from complaints received from members of the public, communications with departments or agencies of the United States, communications with the Puerto Rico

Government, examination of publicly available information, or otherwise, it appears that misconduct may have occurred in connection with Relevant Activities.

b.　No process may be issued or testimony compelled in any Informal Investigation.

c.　If the General Counsel determines to initiate an Informal Investigation, the General Counsel shall inform the Board promptly of the initiation of such Investigation.

**3.2　Formal Investigations**

a.　If the General Counsel, in collaboration with Board Counsel, determines that (*i*) evidence appears to support a finding that misconduct has occurred, is occurring, or is about to occur regarding any Relevant Activities (*a*) based upon information developed in an Informal Investigation or (*b*) even though an Informal Investigation has not been initiated, based upon information otherwise available, or (*ii*) an Informal Investigation has been initiated, but Board Counsel has been unable to conduct such Investigation without access to Investigative Subpoenas, the General Counsel shall so advise the Board and recommend to it that a Formal Investigation be initiated.

b.　If, after considering the recommendations of the General Counsel and Board Counsel and all available information, the Board determines to initiate such Formal Investigation, it shall

(1)　adopt an Investigative Resolution authorizing the General Counsel to initiate a Formal Investigation and

(2)　authorize the use of process to obtain Investigative Materials and compel testimony pursuant to Section 5 below as the General Counsel, in collaboration with Board Counsel, deems necessary and appropriate

**3.3 Non-Public Nature of Investigations**

a.　Given the sensitive nature of Investigations, and the fact that such Investigations will include privileged information and information provided to Board Counsel under promises of confidentiality, unless otherwise ordered by the Board, Investigative Resolutions and the

conduct of, and materials obtained and/or generated regarding, any Investigation shall be non-public.

b.  The Board may, in its sole discretion, determine that it is appropriate for an Investigation, or portions of an Investigation, to be public and, if so, to what extent.

## 4.  Conduct of Investigations

### 4.1  Informal Investigations

a.  In conducting an Informal Investigation, Board Counsel should undertake whatever review and development of facts it deems necessary and appropriate to determine whether misconduct has occurred, including seeking:

(1)  information relevant to the Informal Investigation from any department or agency of the United States pursuant to and consistent with the terms of PROMESA Section 104(c)(1);

(2)  the production of documents and other information relevant to the Informal Investigation from the Puerto Rico Government pursuant to and consistent with the terms of PROMESA Section 104(c)(2); and

(3)  Investigative Materials and interviews on topics relating to the Informal Investigation from any relevant individuals or entities.

b.  After reviewing the information obtained in connection with an Informal Investigation, Board Counsel, in collaboration with the General Counsel, shall determine whether it is appropriate to recommend initiation of a Formal Investigation.

c.  If an Informal Investigation leads to a conclusion that no misconduct has occurred, is occurring or is about to occur, the General Counsel shall terminate the Informal Investigation and advise the Board of its termination.

### 4.2  Formal Investigations

a.  In conducting a Formal Investigation, Board Counsel should undertake whatever review it deems necessary and appropriate to

determine whether misconduct has occurred, is occurring or is about to occur, including seeking:

(1)     information relevant to the Formal Investigation from any department or agency of the United States pursuant to and consistent with the terms of PROMESA Section 104(c)(1);

(2)     the production of documents and other information relevant to the Formal Investigation from the Puerto Rico Government pursuant to and consistent with the terms of PROMESA Section 104(c)(2); and

(3)     Investigative Materials from any individual or entity not covered by Sections 4.2.a(1) and 4.2.a(2) as follows:

    (a)     unless the individual or entity has already declined to voluntarily produce Investigative Materials relevant to the Formal Investigation, Board Counsel shall first seek to obtain Investigative Materials on a voluntary basis;

    (b)     if an individual or entity covered by Section 4.2.a(3) refuses (or has refused in connection with an earlier request) voluntarily to provide Investigative Materials as requested by Board Counsel, Board Counsel may request that the General Counsel issue an Investigative Subpoena pursuant to Section 5 below compelling the individual or entity to provide Investigative Materials.

(4)     an interview and/or testimony of any witness it deems relevant to the Formal Investigation pursuant to PROMESA Section 104 including,

    (a)     if (*i*) a witness refuses to agree to an interview (or has refused to agree to an interview in connection with an earlier request), (*ii*) after interviewing a witness, Board Counsel determines it would be appropriate to take testimony from the witness or (*iii*) Board Counsel determines it would be appropriate to take testimony of a witness in the first instance, rather than interview the witness, Board Counsel may request that the General Counsel issue an

Investigative Subpoena pursuant to Section 5 below compelling the witness to testify;

(b)    if Board Counsel determines to take testimony of a witness, Board Counsel shall administer an oath to the witness and provide for a transcriber to transcribe the testimony; and

(c)    a witness who has provided testimony in a Formal Investigation may be entitled, upon written request and agreement to maintain the confidentiality of the transcript, to procure a copy of a transcript of his or her testimony on payment of the appropriate fees; *provided however*, the General Counsel may for good cause deny a request for a transcript of a witness's testimony, in which case, any witness (or his or her counsel) upon proper identification, shall have the right to inspect the official transcript of the witness's own testimony at a location to be determined by Board Counsel.

### 4.3    Rights of Formal Investigation Witnesses

a.    Formal Investigation Witnesses shall have the rights set out in Exhibit C.

## 5.    Investigative Subpoenas

### 5.1    Issuance of Board Investigative Subpoenas

a.    The General Counsel shall issue an Investigative Subpoena upon a showing by Board Counsel that:

(1)    with respect to Investigative Materials,

(a)    the witness will not voluntarily produce Investigative Materials and/or

(b)    delay in obtaining access to Investigative Materials may result in destruction of or tampering with evidence;

(2)    with respect to testimonial evidence, (*i*) the witness will not voluntarily provide an interview, (*ii*) although the witness

has provided an interview, Board Counsel has determined it would be appropriate to have the witness testify under oath or (*iii*) Board Counsel determines it would be appropriate to have the witness testify under oath without first interviewing the witness;

(3)    the requested Investigative Materials and/or testimony of the witness are relevant to the Formal Investigation; and

(4)    consistent with PROMESA 104(f)(1), jurisdiction exists under 32 L.P.R.A. App. III, R. 4.7 to compel production of the requested Investigative Materials and/or attendance and testimony from witnesses.

b.    Subject to 32 L.P.R.A. App. III. F. 47, Investigative Subpoenas requiring attendance and testimony from witnesses shall provide that such testimony shall occur in San Juan, Puerto Rico, Washington, D.C. or New York, New York; *provided however*, that, after issuance of an Investigative Subpoena, Board Counsel may agree with a witness or his/her counsel to have testimony occur in a mutually agreeable location other than as identified in this Section 5.b.

c.    Investigative Subpoenas requiring the production of Investigative Materials shall require that such production be made consistent with the Addenda to Exhibit C.

**5.2    Service and Enforcement of Board Investigative Subpoenas**

a.    Board Investigative Subpoenas shall be served consistent with PROMESA Section 104(f)(3).

b.    If an individual or entity fails to comply with an Investigative Subpoena, the General Counsel may, in collaboration with Board Counsel, seek to enforce the Investigative Subpoena consistent with PROMESA Section 104(f)(2).

**6.    Resolution of Formal Investigation Without Recommendation for Investigative Board Findings**

**6.1    Termination of Formal Investigation**

a.    In instances where Board Counsel has concluded a Formal Investigation and has determined not to recommend that the Board

adopt Investigative Board Findings of misconduct respecting any individual or entity, the General Counsel, in collaboration with Board Counsel, shall terminate the Formal Investigation and advise the Board of its termination.

### 6.2   Notification of Relevant Individuals and Entities of Termination

a.   Upon termination of a Formal Investigation pursuant to Section 6.1 above, the General Counsel, after conferring with Board Counsel, may, in his or her discretion, direct Board Counsel to advise any individuals or entities involved in the Formal Investigation that the Formal Investigation has been terminated.

b.   Advice provided pursuant to Section 6.2.a above should not be construed as indicating that an individual or entity has been exonerated or that no action may ultimately result from an individual's or entity's involvement in Relevant Activities.

### 6.3   Resolution of Matters with Involved Individuals or Entities

a.   In the course of any Investigation, the General Counsel, in collaboration with Board Counsel, may discuss with involved individuals or entities resolution of such matter.

b.   If the General Counsel, in collaboration with Board Counsel, determines that a proposed resolution of any matter that is the subject of an Investigation should be pursued, he or she shall advise the Board of the proposed resolution.

c.   The Board shall, in its sole discretion, determine whether adoption of any proposed resolution is consistent with the Board's duties and responsibilities under PROMESA.

## 7.   Communications with Individuals and Entities Regarding Board Counsel Preliminary Determination to Recommend Findings of Misconduct

### 7.1   Recommendation Notice

a.   If, after completing its collection and review of factual material (including interviews and/or testimony from witnesses) and conducting and analyzing such legal research as Board Counsel deems appropriate, Board Counsel preliminarily determines to recommend findings of misconduct to the Board, Board Counsel

may, in collaboration with the General Counsel, provide a Recommendation Notice to relevant individuals and entities.

b.    The Recommendation Notice shall advise the involved individuals and entities of the general nature of the Investigation, Board Counsel's preliminary determination to recommend misconduct as it pertains to them, the opportunity to submit a statement responding to the Recommendation Notice, the amount of time that may be available for preparing and submitting a responsive statement and, unless otherwise agreed to by Board Counsel, a page limit for such responsive statement of 20 double-spaced pages.

**7.2    Responses to Recommendation Notice**

a.    Subject to Section 7.1.b above, individuals and entities that have received a Recommendation Notice may submit a written statement setting forth their interests and positions in regard to the subject matter of the Investigation and responding to the assertions made by Board Counsel in the Recommendation Notice.

b.    Submissions by interested individuals or entities should be forwarded to the General Counsel with a copy to Board Counsel within the time period provided.

c.    If Board Counsel determines to make recommendations of findings of misconduct to the Board, any submissions by interested individuals and entities shall be forwarded to the Board.

**8.    Board Counsel Recommendations of Findings of Misconduct**

**8.1    Board Counsel Determination**

a.    If, after reviewing responses (if any) to a Recommendation Notice, Board Counsel, in collaboration with the General Counsel, determines to make recommendations to the Board of findings of misconduct, Board Counsel shall prepare Board Counsel Recommendations for presentation to the Board.

**8.2    Board Counsel Recommendations**

a.    Board Counsel and the General Counsel shall confer as to the appropriate format for Board Counsel Recommendations with respect to any particular Investigation.

b.   Board Counsel Recommendations shall address the following:

(1)   a summary of the factual evidence developed;

(2)   a summary of the legal research conducted and the legal conclusions reached;

(3)   whether there is any reason that any Board member should recuse himself or herself from deliberating and participating in decisions as to the action the Board should take with respect to Board Counsel Recommendations;

(4)   recommendations as to how the Board should proceed; and

(5)   such other issues as Board Counsel deems appropriate.

## 9.   Board Consideration of Board Counsel Recommendations

### 9.1   Investigative Executive Session

a.   Upon receipt of Board Counsel Recommendations, the Board shall convene an Investigative Executive Session to consider the Recommendations, with staff members, Board Counsel and such other professional advisors in attendance as the Board deems appropriate.

b.   Such Investigative Executive Session may continue for as many days as the Board deems necessary to adequately address the issues addressed by Board Counsel Recommendations.

c.   Before discussing the substantive recommendations set out in the Board Counsel Recommendations, the Board shall, taking into account Board Counsel's findings and recommendations on this issue, consider whether any Board member should recuse himself or herself from deliberating and participating in decisions as to the action the Board should take with respect to Board Counsel Recommendations.

d.   Any Board member who recuses himself or herself shall not participate in the discussions and deliberations of the Investigative Executive Session regarding the substantive recommendations contained in Board Counsel Recommendations.

e.  In considering the action to be taken respecting the Formal Investigation, the Board shall take into account, but not be bound by the Board Counsel Recommendations.

f.  Minutes of the Investigative Executive Session shall be kept by the General Counsel.

## 9.2   Board Investigative Findings

a.  At or after the conclusion of the Investigative Executive Session, the Board shall, taking into account Board Counsel Recommendations, discussions with Board Counsel and other professional advisors (if any) and such other information and materials relevant to the Investigation that are available to the Board, and after due deliberation, determine whether to adopt Board Investigative Findings.

b.  If the Board determines it should adopt Board Investigative Findings, such Findings shall address

(1)  the Board's factual findings; and

(2)  the Board's determinations of further action (if any) to be taken, including referring such misconduct to the appropriate regulatory or prosecutorial bodies and/or pursuing such other relief with respect to such misconduct as authorized by PROMESA.

c.  Board Investigative Findings shall be posted to the Board's website after their adoption as appropriate under PROMESA and any Board procedures.

## 10.   Confidentiality

## 10.1   Investigative Record

a.  An Investigation Record may contain sensitive, privileged and confidential information, disclosure or public dissemination of which could, among other things

(1)  interfere with the Board's ability to conduct an objective and thorough Formal Investigation;

(2)  constitute an unwarranted invasion of personal privacy;

(3)     constitute an unwarranted disclosure of business trade secrets;

(4)     expose a confidential source;

(5)     expose privileged and/or attorney work product protected materials;

(6)     breach a commitment made to a department or agency of the United States or to the Puerto Rico Government to maintain the confidentiality of information and/or documents obtained from such entities;

(7)     breach a commitment made to an individual or entity to maintain the confidentiality of information and/or documents obtained from such individuals or entities;

(8)     interfere with an investigation being conducted by a department or agency of the United States or by the Puerto Rico Government; and

(9)     expose the deliberative and investigatory process of the Board in conducting an Investigation and in adopting Board Investigative Findings.

b.     To avoid any of the consequences set out in Section 10.1.a or any other adverse consequences that could result from disclosure or public dissemination of confidential or sensitive information contained in the Investigative Record, and notwithstanding the Board's general intent to publicly disclose relevant Board materials on a timely basis as set out in the Board's Bylaw 11.3, the Board shall, subject to Section 10.3 below, take all reasonable steps to maintain the confidentiality of all materials contained in the Investigative Record unless disclosure and/or publication of specific types of materials underlying an Investigation is expressly required in these Procedures or PROMESA.

## 10.2   Treatment of Materials and Information Received Pursuant to PROMESA Section 104(c)

a.     To the extent the Board obtains information and/or documents from agencies or departments of the United States or from the Puerto Rico Government pursuant to PROMESA Section 104(c), the

16

confidentiality of such information and/or documents shall be subject to the Procedural Guidelines.

b.  In making requests for information and/or documents from agencies or departments of the United States or from the Puerto Rico Government, the Board, through the General Counsel and Board Counsel, shall work with the relevant entity to ensure that the Board sets in place any specific measures that maintain the confidentiality of the information and/or documents consistent with the requirements of such agency or department of the United States or of the Puerto Rico Government (as the case may be).

**10.3    Board's Discretion to Disclose Materials Contained in Investigative Record**

a.  Notwithstanding Section 10.1 above, and taking into account Section 10.2 above, the Board may disclose or publish some or all of the materials that are part of the Investigative Record if

(1)  the materials to be disclosed or published have become publicly available from another source;

(2)  the Board is compelled to produce such materials pursuant to a court order;

(3)  the Board is compelled to produce such materials pursuant to a Congressional subpoena; or

(4)  the Board determines, in its sole discretion, that disclosure of such materials is

(a)  in the public interest;

(b)  required by PROMESA; and/or

(c)  necessary to enable the Board to fulfill its obligations under PROMESA, including if disclosure of such materials is necessary to implement any of the actions adopted by the Board in the Board Investigative Findings.

**Exhibit A**



## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

### RIGHTS OF WITNESSES IN FORMAL INVESTIGATIONS

1. Any individual who is compelled or requested to furnish documentary evidence or testimony in a Formal Investigation shall, upon request, be shown the Investigative Resolution, copies of which shall be provided to the individual subject to execution of a written agreement to maintain the confidentiality of the Investigative Resolution.

2. Any individual compelled to appear, or who appears by request of Board Counsel, in person in connection with a Formal Investigative proceeding may be accompanied, represented and advised by counsel; *provided however*, that all witnesses shall be sequestered, and, unless permitted in the discretion of Board Counsel, no witness or the counsel accompanying any such witness shall be permitted to be present during the examination of any other witness called in the Formal Proceeding.

3. The right to be accompanied, represented and advised by counsel shall mean the right of a person testifying to have an attorney present with him during any portion of the Formal Investigative and to have this attorney (*i*) advise such individual before, during and after the conclusion of such examination, (*ii*) question such person briefly at the conclusion of the examination to clarify any of the answers such person has given, and (*iii*) make summary notes during such examination solely for the use of such individual.



# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

## INVESTIGATIVE RESOLUTION
## INITIATING FORMAL INVESTIGATION

WHEREAS, on June 30, 2016, the federal Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") was enacted; and

WHEREAS, PROMESA Section 104(o) authorizes the Financial Oversight and Management Board for Puerto Rico that was created pursuant to PROMESA (the "Board") to "investigate the disclosure and selling practices in connection with the purchase of bonds issued by [Puerto Rico and its instrumentalities] for or on behalf of any retail investors including any underrepresentation of risk for such investors and any relationships or conflicts of interest maintained by such broker, dealer, or investment advisor . . . as provided in applicable laws and regulations"; and

WHEREAS, PROMESA Sections 104(a), (c) and (f) also grant investigative powers to the Board; and

WHEREAS, the Board has adopted procedures for conducting investigations pursuant to PROMESA ("Procedures"), which procedures are posted on the Board's website; and

WHEREAS, unless otherwise defined, capitalized terms in this Investigative Resolution shall have the meanings ascribed to them in the Procedures; and

WHEREAS, pursuant to PROMESA Section 104(a), (c), (f) and (o), the Board may, among other things, initiate Formal Investigations pursuant to Section 3.2 of the Procedures whenever it appears that misconduct regarding Relevant Activities has occurred, is occurring or is about to occur;

WHEREAS, based on the information available, the General Counsel, in collaboration with [_____], which has been retained by the General Counsel as Board Counsel, has recommended that a basis exists under Section 3.2 of the Procedures for initiation of a Formal Investigation regarding [brief general description of Relevant Activit(ies)]; and

WHEREAS, based on this determination, the Board has determined to initiate a Formal Investigation by adopting this Investigative Resolution;

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT a Formal Investigation regarding [brief general description of Relevant Activit(ies)] is initiated, to be captioned "In the Matter of Formal Investigation Regarding [_____]"; and

FURTHER RESOLVED that this Formal Investigation shall be conducted pursuant to the Procedures and that, unless otherwise directed by the Board, the Investigation shall remain non-public pursuant to Section 3.3 of the Procedures; and

FURTHER RESOLVED that the General Counsel is authorized to conduct and/or oversee the Formal Investigation consistent with the Procedures, including Section 2.1, pursuant to which the General Counsel may, among other things:

    a.    Seek such assistance from Board Counsel in conducting the Formal Investigation as the General Counsel deems appropriate and necessary;

    b.    Issue Investigative Subpoenas; and

    c.    Authorize Board Counsel to administer oaths or affirmations, take testimony and receive documentary evidence in furtherance of the Formal Investigation pursuant to PROMESA Section 104(a), (b), (c), (f) and (o).

Adopted: _____ __, 20__.

**Exhibit C**



**SUBPOENA**

# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

### In the Matter of Formal Investigation Regarding [_____]

To:     [name]
        [c/o counsel, if known]
        [address]

---

[  ]   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to the offices of [Board Counsel] on _____ __, 201_, at __:__ _.m.

---

[  ]   **YOU MUST TESTIFY** before [Board Counsel], at the place, date and time specified below:
[address] on _____, __, 201_, at __:__ _.m.

---

**UNDER THE PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT, THIS SUBPOENA IS ENFORCEABLE BY THE SUPERIOR COURT OF PUERTO RICO**
Failure to comply may subject you to punishment by such court
in accordance with civil contempt laws

By: _____          Date:_____
        [Name]
        [General Counsel]

I am the General Counsel of the Financial Oversight and Management Board for Puerto Rico and am authorized to issue subpoenas in this matter. A resolution has been adopted authorizing this investigation under Section 104 of the Puerto Rico Oversight, Management, and Economic Stability Act.

**ATTACHMENT TO SUBPOENA DUCES TECUM**
**DATED [_____] TO [_____]**
**In the Matter of Formal Investigation Regarding [_____]**

## I.   DEFINITIONS AND INSTRUCTIONS

A.   Please produce the documents electronically in the form set forth in the attached Electronic Data Delivery Standards.

B.   As used in this attachment, the term "documents" means all non-identical preliminary, interim and final drafts or versions of paper writings, electronically or magnetically stored information or data, photographic records or materials and all other tangible forms of expression or recordation, including, but not limited to, tapes, cassettes, diskettes, disks, computer files (whether or not they have been deleted from file directories), books, notes, memoranda, files, reports, statements, summaries, lists, correspondence, letters, records of oral communications, telephone records, telephone messages and log books, electronic mail, journals, charts, graphs, drawings, calendars, agendas, itineraries, diaries, minutes, resolutions, ledgers, work papers, worksheets, books of account, journals, audits, accountants' calculations, bills, invoices, receipts, orders, confirmations, trade blotters, studies, schedules, appraisals, analyses, surveys, budgets, forecasts, projections, contracts, assignments, agreements, loan agreements, guarantees, records of collateral, notes and other instruments of indebtedness, diagrams, pamphlets, brochures, exhibits, transcripts, interviews, speeches, depositions, press releases, periodicals, securities account statements, checks and drafts (front and back), deposit slips, debit and credit memoranda, wire confirmations, account statements for bank, thrift, money market and brokerage accounts, however or by whomever prepared, in your possession or custody or subject to your control.

C.   The term "concerning" means having any relationship or connection to, commenting on, responding to, containing, mentioning, evidencing, memorializing, describing, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical or causal connection.

D.   The following rules of construction apply to this attachment:  (*i*) the terms "all" or "each" shall be construed as to all and each; (*ii*) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope; and (*iii*) the use of

the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

E.   The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic, and includes without limitation:  conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail and text messaging), and telephone lines and wires.

F.   A communication or document "concerning," "involving," "relating," "related," or "that relates" to any given subject means any communication or document that constitutes, contains, discusses, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

G.   Please provide a list of the documents you produce, stating in each instance the request to which the document is responsive.  Also, please identify and generally describe all requested documents that you do <u>not</u> produce, and state the location of each such document and your reason for not producing it.

H.   If any of the documents called for are not produced, for whatever reason, please provide the following information as to each such document:  (*i*) the creator(s) of the document; (*ii*) the date that the document was created; (*iii*) the present or last known custodian of the document; (*iv*) the subject matter of the document; (*v*) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; and (*vi*) the reason the document is not produced.  If any document called for is withheld because of a claim of attorney-client privilege or attorney work product, in addition to the above information, please identify the attorney and the client involved.

## II.   PRODUCTION

Produce all the following documents within your possession, custody or control for the time period _____ to _____:

1.   [description of documents]

Exhibit C/Attachment 2



## Financial Oversight and Management Board for Puerto Rico

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the Financial Oversight and Management Board for Puerto Rico (the "Board"). **Any questions or proposed file formats other than those described below must be discussed with [Board Counsel] prior to submission.**

General Instructions................................................................................................................1

Delivery Formats..................................................................................................................3

    I.   *Concordance*®Imaged Productions...........................................................................3

        1.  Images ...................................................................................................3

        2.  *Concordance Image*® or Opticon Cross Reference File...........................3

        3.  *Concordance*® Data File.........................................................................3

        4.  Text ......................................................................................................4

        5.  Linked Native Files ...............................................................................4

    II.   Native File Productions without Load Files.............................................................4

    III.   Adobe PDF File Productions.................................................................................4

    IV.  Audio Files .........................................................................................................4

    V.  VideoFiles............................................................................................................5

    VI.  Electronic Trade and Bank Records .......................................................................5

    VII.  Electronic Phone Records ....................................................................................5

    VIII.  Audit Workpapers ............................................................................................5

**General Instructions**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the Board will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by Board Counsel. If your production will be de-duplicated it is vital that you (*i*) preserve any unique metadata associated with the duplicate files, for example, custodian name and, (*ii*) make that unique metadata part of your production to the Board.

---

General requirements for **ALL** document productions are:

1.  A cover letter should be included with each production and include the following:
    a. A list of each piece of media included in the production with its unique production volume number.
    b. A list of custodians, identifying the Bates range for each custodian.
    c. The time zone in which the emails were standardized during conversion.
2.  Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range
3.  All submissions must be organized by **custodian** unless otherwise instructed.
4.  All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5.  All load-ready collections should include only one data load file and one image pointer file.
6.  All load-ready text must be produced as separate text files.
7.  All load-ready collections should account for custodians in the custodian field.
8.  Audio files should be separated from data files if both are included in the production.
9.  Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
11. Electronic productions may be submitted via Secure File Transfer.  The Board **cannot** accept productions made using file sharing sites.
12. Productions containing BSA or SARs material must be delivered on encrypted physical media. The Board **cannot** accept electronic transmission of BSA or SARs material. Any BSA or SARs material produced should be segregated and appropriately marked as BSA or SARs material, or should be produced separately from other case related material.

13. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
14. All electronic productions should be produced free of computer viruses.
15. Additional technical descriptions can be found in the addendum to this document.

*Please note that productions sent to the Board via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.*

**Delivery Formats**

**I.** *Concordance® Imaged Productions*
The Board prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper and electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

**1. Images**
   a. Black and white images must be 300 DPI Group IV single-page TIFF files.
   b. Color images must be produced in JPEG format.
   c. File names cannot contain embedded spaces or special characters (including the comma).
   d. Folder names cannot contain embedded spaces or special characters (including the comma).
   e. All TIFF image files must have a unique file name, i.e. Bates number.
   f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
   g. The number of TIFF files per folder should not exceed 500 files.
   h. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
   i. AUTOCAD/photograph files should be produced as a single page JPEG file.

**2. *Concordance Image®* OR Opticon Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
   *ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount*

**3. *Concordance®* Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.
   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:
      Comma ASCII character (020)
      Quote þ ASCII character (254)
   c. Date fields should be provided in the format: mm/dd/yyyy
   d. Date and time fields must be two separate fields.
   e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

    f.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.

    g.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.

    h.   BEGATTACH and ENDATTACH fields must be two separate fields.

    i.   A complete list of metadata fields is available in **Addendum A** to this document.

**4.  Text**

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. Please note in the cover letter if any non-ANSI text files are included in the production. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

**5.  Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

a. Native file documents must be named per the FIRSTBATES number.

b. The full path of the native file must be provided in the .DAT file for the LINK field.

c. The number of native files per folder should not exceed 1,000 files.

**II.  Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

**III.  Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).

2. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.

3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.

4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.  Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file.  The metadata must include, at a minimum, the following fields:

       1) Caller Name:             Caller's name or account/identification number

| | |
|---|---|
| 2) Originating Number: | Caller's phone number |
| 3) Called Party Name: | Called party's name |
| 4) Terminating Number: | Called party's phone number |
| 5) Date: | Date of call |
| 6) Time: | Time of call |
| 7) Filename: | Filename of audio file |

**V.    Video Files**
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**
When producing electronic trade and bank records, provide the files in one of the following formats:

1.    MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.
2.    Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**
When producing electronic phone records, provide the files in the following format:

1.    MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a.    The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**
The Board prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the Board Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. When possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>** The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>** This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the n umber of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>** semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>** semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>** semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including Extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |

| Field Name | Sample Data | Description |
|---|---|---|
| TIME_SENT/TIME _ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |

| Field Name | Sample Data | Description |
|---|---|---|
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | **Email: original location of email including original file name.**<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

# ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

    1) Account Number
    2) Connection Date – Date the call was received or made
    3) Connection Time – Time call was received or made
    4) Seizure Time – Time it took for the call to be placed in seconds
    5) Originating Number – Phone that placed the call
    6) Terminating Number – Phone that received the call
    7) Elapsed Time – The length of time the call lasted, preferably in seconds
    8) End Time – The time the call ended
    9) Number Dialed – Actual number dialed
    10) IMEI Originating – Unique id to phone used to make call
    11) IMEI Terminating– Unique id to phone used to receive call
    12) IMSI Originating – Unique id to phone used to make call
    13) IMSI Terminating- Unique id to phone used to receive call
    14) Call Codes – Identify call direction or other routing information
    15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

    1) Account Number
    2) Connection Date – Date the text was received or made
    3) Connection Time – Time text was received or made
    4) Originating Number – Who placed the text
    5) Terminating Number – Who received the text
    6) IMEI Originating – Unique id to phone used to make text
    7) IMEI Terminating– Unique id to phone used to receive text
    8) IMSI Originating - Unique id to phone used to make text
    9) IMSI Terminating- Unique id to phone used to receive text
    10) Text Code – Identify text direction, or other text routing information
    11) Text Type Code – Type of text message (sent SMS, MMS, or other)
    12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

    1) Account Number
    2) Connection Date – Date the data was received or made
    3) Connection Time – Time data was received or made
    4) Originating number – Number that used data
    5) IMEI Originating – Unique id of phone that used data
    6) IMSI Originating - Unique id of phone that used data
    7) Data or Data codes – Identify data direction, or other data routing information
    8) Time Zone – Time Zone in which the call was received or placed, if applicable

**Exhibit D**

### Financial Oversight and  Management Board for Puerto Rico
### Procedural Guidelines for
### Maintaining the Confidentiality of
### Investigatory Records Compiled for Law Enforcement Purposes

Pursuant to PROMESA Section 104(c)(1), the Financial Management and Oversight Board for Puerto Rico (the "Oversight Board") may from time to time secure directly from any department or agency of the United States information, records, documents, data or metadata ("Information") necessary to enable it to carry out its responsibilities under PROMESA.  Similarly, PROMESA Section 104(c)(2) provides that the Oversight Board shall have the right to secure Information from the Commonwealth of Puerto Rico and any of its instrumentalities necessary to enable the Oversight Board to carry out its responsibilities under PROMESA.

To the extent that Information requested by the Oversight Board under Sections 104(c)(1) and 104(c)(2) is specified, by department or agency of the United States or the Commonwealth and any of its instrumentalities, as investigatory records compiled for law-enforcement purposes and is deemed by the producing entity as confidential, and the Oversight Board is requested to maintain the confidentiality of such Information, the Oversight Board will seek to preserve the confidentiality of such data (i) until the entity from which the Information was received determines that it either is or may be made publicly available; (ii) the Board, in its sole discretion, determines that disclosure of such Information is in the public interest; or (iii) the Information is requested by the Congress of the United States.

These procedural guidelines are issued pursuant to the authority granted to the Oversight Board under PROMESA Section 101(h).