**Hearing Date:** August 9, 2017 at 9:30am (Prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.<br>　　　　Debtors.[1] | PROMESA<br>Title III<br><br>NO. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

### OMNIBUS REPLY TO OBJECTIONS TO MOTION REQUESTING APPOINTMENT OF ADDITIONAL COMMITTEE OF GOVERNMENT EMPLOYEES AND ACTIVE PENSION PLAN PARTICIPANTS OR, IN THE ALTERNATIVE, FOR THE RECONSTITUTION OF THE RETIREE COMMITTEE

**TO THE HONORABLE COURT:**

**COMES NOW** creditor University of Puerto Rico Retirement System Trust (the "Trust"), through the undersigned counsel, and respectfully states and prays as follows:

## I.　　INTRODUCTION

On July 21, 2017 the Trust filed a "Motion Requesting Appointment of Additional Committee of Government Employees and Active Pension Plan Participants or, in the Alternative, for the Reconstitution of the Retiree Committee" (the "Motion") pursuant to 11 U.S.C. §1102(a)(2) and (4). Docket No. 692. The following parties filed objections to said Motion: (1) the U.S. Trustee

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).

(Docket No. 785); (2) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (Docket No. 790); (3) the Retiree Committee (Docket No. 799); (4) the Commonwealth of Puerto Rico (the "Commonwealth") (Docket No. 805); and (5) the Unsecured Creditors Committee (Docket No. 810) (collectively, the "Objections"). While all the Objections state reservations to the creation of a separate committee of active employees and government pension plan participants (mostly based on the cost of such a committee), only two of the Objections—those filed by the U.S. Trustee and AAFAF—state specific reservations to the reconstitution of the Retiree Committee pursuant to §1102(a)(4). In fact, the Commonwealth actually **agrees** with the addition of one or more members to the Retiree Committee, "with the big picture in mind." See Docket No. 805 at 2-3.

The U.S. Trustee and the Retiree Committee adduce two main objections to the reconstitution of said committee and the inclusion of an active plan participant and current employee of the University of Puerto Rico ("UPR"): (1) that the retired employee of the UPR currently serving as a member of the Retiree Committee has standing to serve as such; and (2) that the Unsecured Creditors Committee can adequately represent the interests of active employees and plan participants. Without waiving the Trust's request pursuant to §1102(a)(2), this reply succinctly addresses these two arguments and highlights the evident conclusion, espoused by the Commonwealth itself, that there is simply no legal or practical reason not to include an active UPR employee and plan participant in the Retiree Committee.

## II. ARGUMENT

### A. Retired UPR employees are not creditors in any active case pursuant to Title III of PROMESA.

Pursuant to §1102(a)(2), "[o]n request of a party in interest, the court may order the appointment of additional committees **of creditors or of equity security holders** if necessary to

assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee" (emphasis added). Committees in bankruptcy proceedings are composed of creditors or equity security holders. A retired employee of the UPR, whose pension benefits come from the Trust's funds and not from any of the debtors in the currently active Title III proceedings, is neither of those. While the Trust is deeply aware of the concerns of UPR retired employees—which it is actively defending in other fora—as a legal matter UPR retired employees are not creditors in this case nor parties in interest with a right to be heard. See 11 U.S.C. §1109(b); In re Addison Community Hosp. Auth., 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994) ("Where a party is merely interested in the outcome of the matter and does not have a direct legal interest in the chapter 9 proceeding, that party is not a 'party in interest.'").

In its objection, the U.S. Trustee makes a troublesome assertion. The U.S. Trustee argues that retired Trust participants are creditors or otherwise have standing in this case because "Commonwealth appropriations are the primary funding source for Trust distributions and any reduction to such appropriations clearly affect retired Trust participants." Docket No. 785 at 10.[2]

Generally, courts have denied individual or taxpayer standing to challenge government appropriations. See, i.e., Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 599 (2007) ("As a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing."); Frothingham v. Mellon, 262 U.S. 447 (1923).[3]

---

[2] The Retiree Committee makes a similar argument. See Docket No. 799 at 6. This argument is not only legally flawed, but lays bare the committee's lack of knowledge of the differences between the actual claims of active UPR employees, vis-à-vis the general interest of UPR retired employees in the outcome of this case. The Retiree Committee's failure to distinguish these nuances underscores the need to include a UPR active employee in the Retiree Committee.

[3] It must be noted that the UPR and/or the Trust might have standing to challenge certain appropriations pursuant to Puerto Rico law, but the standing of the UPR and/or the Trust vis-à-vis retired UPR employees is irrelevant to this inquiry. The Trust reserves all of its rights in this regard.

3

Evidently, Commonwealth appropriations have a real and tangible effect on a number of individuals—arguably on all Puerto Rico residents. However, such effect does not automatically create Art. III standing or make each and every Puerto Rican a party in interest in this case. If it were otherwise, there would be no end to these proceedings. See In re Addison Community Hosp. Auth., 175 B.R. at 650 ("By allowing a large number of non-creditors to be heard in this action, the Court would be granting a blanket invitation to all parties in the area serviced by [debtor]. This would hamper, and unduly delay, the debt adjustment process."). Ironically, the argument raised by the U.S. Trustee in opposition to the Trust's Motion is completely at odds with the argument raised by the Unsecured Creditors Committee to oppose the creation of a municipalities committee. See Docket No. 810 at 6-7 ("…concerns about levels of appropriations are political issues to be addressed through the political process; they do not create a claim or make the Municipalities a creditor.").

Simply put, at present the Retiree Committee does not include a member with standing to adequately represent the interests of UPR retirement plan participants.[4] We can see no more compelling reason to reconstitute a committee created for the sole purpose of representing the interests of government pension plan participants than to include at least one member with standing to represent the active participants of one of those pension plans, whose interests are actually at stake in this case, especially when all the other relevant pension plans appear to be represented.

**B.     The Unsecured Creditors Committee does not adequately represent the interests of active UPR employees and plan participants.**

The Retiree Committee argues that, "as the United States Trustee's composition of the two committees demonstrates, the Retiree Committee represents existing retirees, and the [Unsecured

---

[4] There is no doubt that the Trust is a creditor in this case on behalf of UPR employees and active plan participants. See Docket No. 568-3 at 1918. The scope of some of these claims are explained in some detail below.

4

Creditors Committee] represents active employees." This assertion is negated by the current constitution of the Retiree Committee (Docket No. 340), whose members include at least one active employee of the Police Department of Puerto Rico, Mr. José Marín (Docket No. 8-1 at 6), who presides a syndicate that purports to represent at least 1,560 active members of the police force (Docket No. 8-1 at 9).

On the other hand, the blanket assertion that the Unsecured Creditors Committee represents active employees in all matters[5] is negated by statements of the U.S. Trustee himself. While certainly said committee may represent the interest of government employees in connection with unsecured claims, it is not the representative or fiduciary of pension plan beneficiaries, regardless of whether they are active or retired government employees. Otherwise, there would be no need for a separate Retiree Committee as currently constituted.

The objection of the U.S. Trustee underscores this distinction. For example, in its objection, the U.S. Trustee states as follows:

> The Official Committee of Retirees (the "Retiree Committee") represents **all beneficiaries of vested pension and other post-employment benefits** while the Official Committee of Unsecured Creditors (the "Mandatory Committee") represents **any residual creditor claims that active employees hold**.

Docket No. 785 at 2 (emphasis added). In other words, the position of the U.S. Trustee, who appointed the Retiree Committee members in the exercise of his discretion, directly contradicts the position assumed by the Retiree Committee in its objection. According to the Trustee himself, the Retiree Committee represents **all beneficiaries** of vested pension benefits. This definition necessarily includes active employees already vested in certain benefits by virtue of law and/or regulation, regardless of whether they have reached their retirement age. See id. at 7-8 ("The Retiree Committee has an interest in maximizing recoveries on the primary claims held **by active**

---

[5] The Unsecured Creditors Committee also makes this blanket assertion in its objection. See Docket No. 810 at 8.

5

**employees**: pension benefits, health care, and other post-employment benefits.") (emphasis added). Naturally, the prosecution of any residual creditor claims of employees, to the extent they are unsecured, could fall within the duties of the Unsecured Creditors Committee.

As shown above, at present the Retiree Committee does not include a single UPR pension plan participant with standing in this case. The U.S. Trustee's objection to the creation of a separate committee of active employees actually highlights the need to include an active UPR employee and plan participant in the Retiree Committee.

The Trust takes issue with the representations made in several of the Objections to the effect that the claims of UPR active employees and beneficiaries of the Trust might be simple, unsecured claims that can be adequately prosecuted by the Unsecured Creditors Committee. PROMESA[6] is a complex and unique statute, the scope of which is yet to be decided in many respects, including its express protection of pension benefits. See PROMESA, § 201(b)(1)(C), 48 U.S.C. § 2141(b)(1)(C). The scope and extent of the claims of pension plan beneficiaries, including UPR employees, depends in large part on the interplay between the relevant statutes and regulations and the different fiscal plans approved by the Oversight Board, including but not limited to the fiscal plan for the UPR, which, as of the filing of this reply, has not been certified by the Oversight Board. The Trust reserves all of its rights with respect to the scope, security or priority of any claims it may file in the future.[7]

The arguments advanced by several parties in their Objections highlight a lack of understanding of the claims of the Trust in this case and underscore the need to reconstitute the

---

[6] The Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 et seq.

[7] At present, and in connection with these Title III proceedings, the Trust is owed in excess of $2.5M from different government instrumentalities pursuant to the Reciprocity Act, PR Law No. 59 of June 10, 1953, 3 P.R. Laws Ann. §797, et seq. This sum continues to increase as government employees are relocated from other agencies or instrumentalities to the UPR and their prior employer's contributions, among others, have to be transferred to the Trust pursuant to the Reciprocity Act.

6

n
n

Retiree Committee to include a member that represents the interests of active UPR employees. For example, Art. 3 of the Reciprocity Act, PR Law No. 59 of June 10, 1953, 3 P.R. Laws Ann. §797, et seq., provides as follows:

> Any employee who leaves the service of an employer to enter in the service of another employer maintaining a retirement plan as defined in § 798 of this title shall automatically become a member of that system, wherefore he shall not be entitled to reimbursement of the contributions accumulated in his favor in the retirement system from which he withdrew. The joint contributions and the credits for accumulated services in his favor, as recognized to the employee by the system to which he belonged, shall be transferred to the new system as soon as the employee starts contributing to same. Said system shall credit to the employee the services transferred from the former system or systems. **Provided, that in case the joint contributions are not sufficient to credit him in the new system, the time to which he was entitled under the former system, in accordance with the rules and regulations in force, the employee may contribute the amount necessary to cover the difference in the individual contribution and in that case, the employer shall contribute the difference in the employer's contribution, or in its default there shall only be credited the period of services covering the contributions transferred**. Likewise, any excess in the joint contributions, after having been credited to the employee, the period transferred shall be returned by the system receiving the contributions. The excess in the individual contribution shall be returned to the employee and the excess in the employer's contribution to the retirement system to which the participant belonged.

3 P.R. Laws Ann. §799 (emphasis added). In plain English, an employee who relocated from a position with an agency or instrumentality covered by these proceedings to the UPR may, for example, have accumulated 10 years of retirement benefits in the previous system and only 8 years of retirement benefits in the UPR system, taking into consideration the employer and employee contributions required by each system at different periods in time.[8] To the extent the employee covers the difference in his or her individual contribution, the previous employer must make the matching contribution. Otherwise, the employee in this random example would have to either work two more years in order to retire or receive less retirement benefits than she or he ordinarily would.

---

[8] The opposite could in theory be true for employees relocating from the UPR to another agency, but that is wholly irrelevant to the present inquiry, as the UPR is not a debtor in this case.

7

A Fiscal Plan or Plan of Adjustment that fails to take into consideration these employer contributions would be at odds with PROMESA. 48 U.S.C. §§ 2141(b)(1)(C) and 2174(b)(7).

The claims laid out in this hypothetical example, of which there are hundreds, materially differ from the types of claims handled by the Unsecured Creditors Committee. In fact, the interests of general unsecured creditors could eventually be at odds with, if not in direct conflict with, those of pension plan beneficiaries, regardless of whether these claims are deemed secured or unsecured, to the extent PROMESA mandates the preservation of pension benefits. It is no accident that in this case the fiduciaries of pension plan beneficiaries are different from the fiduciaries of general unsecured creditors.

In sum, to the extent this Court denies the Trust's requests to create a separate committee of active employees and pension plan participants, which request is expressly reserved, it is evident that over ten thousand active UPR employees and Trust beneficiaries are not being adequately represented by the Retiree Committee, as currently constituted. At this early stage of this complex PROMESA case, there is no legal or practical reason not to include an active UPR employee in said committee who can adequately represent the interests of one of the largest groups of pension plan participants the Retiree Committee was tasked to represent.

**WHEREFORE**, on behalf of all Trust participants, particularly its 10,432 active members not currently represented by the Retiree Committee, the Trust respectfully requests that the Court grant its Motion filed at Docket No. 692.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 4th day of August, 2017.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

**ANTONETTI MONTALVO & RAMIREZ COLL**
P.O. Box 13128
San Juan, PR 00908
Tel: (787) 977-0303
Fax: (787) 977-0323

**s/ Jose L. Ramirez-Coll**
JOSE L. RAMIREZ-COLL
USDC-PR No. 221702
jramirez@amrclaw.com

9