Hearing Date: August 9, 2017 at 9:30 a.m. AST

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## REPLY IN SUPPORT OF MOTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS TO RECONSTITUTE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 1102(a)(4)

---

[1] The Debtors in these title III cases (collectively, the "Title III Cases"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

**Table of Contents**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I. The Committee Is Made Up Entirely Of Politically Favored Constituencies And Does Not Adequately Represent Creditors .......................................................... 3

II. The Objectors' Narrow Focus On Asserted Liens Is A Red Herring ................................ 7

III. The Committee Does Not Speak On Behalf Of Constitutional Debtholders ................... 12

IV. The Court Should Appoint A Separate Committee Of Constitutional Debtholders In The Alternative ................................................................................................. 14

CONCLUSION ......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Garden Ridge Corp.*,
 No. 04-10324 (DDS), 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005) ................................. 6

*In re Hills Stores Co.*, 137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992) ....................................................... 14

*In re Park W. Circle Realty, LLC*,
 No. 10-12965 (AJG), 2010 WL 3219531 (Bankr. S.D.N.Y. Aug. 11, 2010) ......................... 14

*In re Sharon Steel Corp.*,
 100 B.R. 767 (Bankr. W.D. Pa. 1989) ................................................................................... 12

**STATUTES**

11 U.S.C. § 105(a) ......................................................................................................................... 15

11 U.S.C. § 1102(a)(2) ............................................................................................................ 14, 15

11 U.S.C. § 1102(a)(4) .................................................................................................................. 15

The Ad Hoc Group of General Obligation Bondholders (the "GO Group"),[2] by and through its undersigned counsel, hereby submits this reply to the objections (the "Objections")[3] filed in opposition to the *Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(4)* [ECF No. 694] (the "Motion"),[4] and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The objectors concede that Constitutional Debtholders are not adequately represented on the Committee, and that a creditors' committee should include different kinds of creditors, including creditors with diverse and even conflicting interests. Nonetheless, the objectors argue that Constitutional Debtholders should not be on the Committee because Constitutional Debtholders claim they are secured by a statutory lien. They argue that the assertion of a lien presents an "insurmountable" conflict because, as secured creditors, Constitutional Debtholders would be paid before other unsecured creditors.

2. The GO Group recognizes that it is not common for creditors asserting secured status to seek appointment on an unsecured creditors' committee. But the objectors must recognize an equally uncommon fact: the Oversight Board and the Commonwealth are paying the constituencies currently represented by the Committee *in full* and before other creditors.

---

[2] The GO Group files this Motion exclusively on its own behalf and does not assume any fiduciary or other duties to any other creditor or person.

[3] *See* (i) *Statement of Puerto Rico Fiscal Agency and Financial Advisory Authority In Opposition to Various Motions Requesting Appointment of Additional Statutory Committees and/or the Reconstitution of Statutory Committees* [ECF No. 790] (the "AAFAF Objection"); (ii) *Objection of Debtors to Motion* [ECF No. 802] (the "FOMB Objection"); (iii) *United States Trustee's Response to Motion* [ECF No. 804] (the "UST Objection"); and (iv) *Objection of Official Committee of Unsecured Creditors to Motion* [ECF No. 824] (the "UCC Objection").

[4] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Motion.

Indeed, the objectors concede that the Fiscal Plan provides that employees, trade creditors, and tax refund claimants will be paid *before all other creditors*, including Constitutional Debtholders. The Committee "welcomes" and "appreciates" those promises.

3. The objectors (except for the Oversight Board) also concede that Constitutional Debtholders' first priority status under the Puerto Rico Constitution, as opposed to their asserted statutory lien, is not a basis for exclusion from the Committee. Rather, they recognize that senior and subordinated unsecured bondholders often serve on the same creditors' committee without creating an "insurmountable" conflict. In other words, even if Constitutional Debtholders are determined to be unsecured, they will continue to claim the same entitlement to be paid before other creditors, and that assertion would not disqualify them from serving on the Committee. The concerns over Constitutional Debtholders' potential secured status are thus no more than a classic red herring.

4. The objectors have no issue with creditors that stand to be paid in full and ahead of other creditors serving on the Committee. If being paid before other creditors on account of political favoritism or an enforceable priority does not prohibit membership on the Committee, then why does the assertion of a statutory lien? A statutory lien (if upheld) has the same economic effect on other unsecured creditors as the political favoritism embedded in the Fiscal Plan or the priorities set forth in Puerto Rico law. Additionally, the Oversight Board asserts that there is no valid statutory lien at all and that Constitutional Debtholders are in fact the Commonwealth's largest unsecured creditor.

5. The Committee's rationale for why Constitutional Debtholders' assertion of a statutory lien presents a more "insurmountable" conflict than the political favoritism bestowed on the current members of the Committee is that the Commonwealth's promise to pay its

2

constituencies in full is not "set in stone." The Committee therefore concludes that it is proper for creditors promised full payment to serve on the Committee, at least "[u]ntil the most recent promise is kept by way of actual payment." UCC Obj. at 14. The same explanation applies equally to Constitutional Debtholders, whose statutory lien has been challenged by the Oversight Board and is similarly not "set in stone." Thus, by the Committee's logic, Constitutional Debtholders should also be able to serve on the Committee until they are actually paid in full.

6. The objectors' true concern is that changes to the membership of the Committee might produce a Committee that actually speaks on behalf of *creditors* who aren't slated to be paid in full. The Oversight Board concedes that the "constituencies currently represented on the UCC may be more concerned with the future of the Commonwealth than immediate distributions to creditors." FOMB Obj. at 12. But that is precisely why the membership of the *creditors*' committee should be changed.

7. As presently constituted, the Committee does not speak on behalf of Constitutional Debtholders or any other constituency that the Oversight Board has not already promised to pay in full. To be effective in these Title III Cases, and to satisfy the adequate representation standard, the Committee must comprise creditors that the Oversight Board believes are unsecured *and* that the Oversight Board does not intend to pay in full. That means creditors that might dare to place their legitimate interests in receiving "distributions" first.

## ARGUMENT

### I. The Committee Is Made Up Entirely Of Politically Favored Constituencies And Does Not Adequately Represent Creditors

8. The Objections confirm that the Committee, as presently constituted, is composed entirely of creditors (and unions) that the Commonwealth promises to pay in full. The Committee acknowledges that "the Commonwealth has expressed its intention to pay employees

3

and trade creditors in full," and notes that these intentions are "*welcomed*" by the Committee. UCC Obj. at 3 (emphasis added). The Committee further notes that "the GO Group correctly points out that the Commonwealth has stated that it intends to pay certain types of creditors that are currently on the Committee (though notably, not current employee pension claimants), and *the Committee members appreciate this sentiment*." *Id*. at 14 (emphasis added). Not surprisingly, neither the Oversight Board nor AAFAF challenge the fact that the Commonwealth seeks to pay employees, trade creditors and tax refund claimants in full. Notably, many of the constituencies represented by the Committee *are already being paid in full*, they are not merely waiting for full payment under a Title III plan of adjustment. In sum, during the course of these Title III Cases, most (if not all) members of the Committee may in fact be paid in full and no longer have any claims against the Commonwealth.

9. The Committee and Oversight Board further assert that these Title III Cases require a zero sum or "all or nothing" outcome, in which increased recoveries to Constitutional Debtholders come at the direct expense of the employees, trade creditors, and tax refund claimants. In particular, the objectors argue:

- Constitutional Debtholders' "purported priority may result in them getting everything at the expense of all other unsecured claimholders at the Commonwealth." FOMB Obj. at 8.

- The Committee comprises "groups of unsecured claimholders that risk receiving meager, if any, recoveries at the expense of the Constitutional Debtholders." *Id*. at 11.

- Conflicts would be insurmountable "given the 'all or nothing' nature of the GO Group's asserted liens" which "would deprive unsecured creditors of any recovery on their claims to the extent that the Commonwealth cannot pay the general obligation bonds in full." Committee Obj. at 3.

- "The resolution of whether the GO Group has secured or unsecured bonds is a central question in the Title III Cases, for the answer will dictate who else, besides the GO Group, may recover on its claims in these cases. *Id*. at 11.

4

- "The GO Group and its monoline acolytes want to divert all available resources of Puerto Rico to repayment of Commonwealth Bonds *at the expense of all unsecured creditors*." *Id*. at 19 (emphasis in original).

- The GO Group has "instituted litigation for the purpose of recovering on their 'collateral' (i.e., all available resources of Puerto Rico) to repay Commonwealth Bonds and leave general unsecured creditors without a source of repayment." *Id*. at 20-21.

10. In the all or nothing world the Committee and Oversight Board paint, it is Constitutional Debtholders who are getting virtually nothing, and the present members of the Committee who are getting everything. It is no secret, therefore, that those parties promised payment in full may oppose changes to the Fiscal Plan that pay Constitutional Debtholders more than currently contemplated. The Committee acknowledges as much by noting that while the Commonwealth's intention to pay them in full is "welcomed," "negotiations may take place in the future, and the Fiscal Plan may well change." UCC Obj. at 3-4. Similarly, the Committee states that it will diligently press their rights "*[u]ntil the most recent promise is kept* by way of actual payment." *Id*. at 14 (emphasis added). The Committee is motivated to hold the Commonwealth to its promise to pay politically favored constituencies in full, even if that means bondholder claims are reduced by nearly 80%.

11. The current Committee members also have a vested interest in ensuring increased future government spending. Given the acknowledgment that employees are being, and will continue to be, paid in full, it remains unclear what claims, if any, the two employee unions serving on the Committee have against the Commonwealth. Their interest appears to be in seeing that the Commonwealth does not cut public services in the future, which explains the American Federation of Teachers' press release stating that the Title III Case "needs to put the people of Puerto Rico first—not Wall Street financiers and hedge funds. . . . the government must work with teachers and the entire community to preserve the public services the island

5

needs to prosper." Motion, Ex. A. Trade creditors promised full payment on their existing claims are also likely motivated to support efforts to expand government services and spending, thereby providing future opportunities for additional contracts with the Commonwealth.

12. There is, of course, no prohibition on employee unions and trade creditors advocating for greater public services and spending, but such interests are not the interests of *creditors at-large*. Rather, those interests are perfectly aligned with the Commonwealth, which seeks to expand government spending while paying bondholders pennies on the dollar. The Oversight Board's objection confirms this is the case. It criticizes the GO Group for "merely" being interested in "maximizing its recoveries rather than the welfare of the integrated enterprise." FOMB Obj. at 11. The Oversight Board states that Constitutional Debtholders should not be on the Committee because they "appear[] not to appreciate the importance of the Commonwealth's integrated enterprise and the preservation of public services." *Id*. at 3 n.4. In contrast, the Oversight Board seems quite content with the current members of the Committee:

> But in these very specific cases, simply maximizing assets available for distribution is not a viable path towards the Commonwealth's turnaround, *and constituencies currently represented on the UCC may be more concerned with the future of the Commonwealth than immediate distributions to creditors*.

*Id*. at 12 (emphasis added). However, the "chief purpose of an official committee is to maximize distribution" to unsecured creditors, not to look out for the "integrated enterprise" of the Commonwealth, an amorphous standard that has no legal significance in these Title III Cases. *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005). The Oversight Board and AAFAF are each equipped with significant authority and tools to protect the interests of Puerto Rico and its provision of future public services. It is not the job of the Committee to also look out for these same interests.

6

13. The GO Group also strongly disagrees that the interests of Constitutional Debtholders and other creditors of the Commonwealth require a zero sum outcome in these Title III Cases. Instead, the GO Group believes that the Fiscal Plan fails to adopt measures that would permit the payment of Constitutional Debtholders *and* the payment of lower priority claims and expenditures of the Commonwealth. The Oversight Board's belief that the numbers in the Fiscal Plan cannot change and therefore requires a zero sum outcome among creditors and other parties-in-interest is disputed by most creditors. The Committee's embrace of this zero sum worldview reflects an unfortunate and premature implicit adoption of the Fiscal Plan by the very entity that should be leading the charge to revise it so that all unsecured creditors can have the greatest possible recovery, in accordance with their respective legal entitlements.[5]

## II. The Objectors' Narrow Focus On Asserted Liens Is A Red Herring

14. The objectors focus almost exclusively on Constitutional Debtholders' asserted statutory lien as the basis for excluding Constitutional Debtholders from the Committee. The objectors argue that the problem with Constitutional Debtholders' asserted statutory lien is twofold. First, the secured status would entitle Constitutional Debtholders to be paid before other unsecured creditors.[6] Second, the right to be paid before other creditors would purportedly create an "insurmountable conflict" that might paralyze the Committee.[7]

---

[5] *See also* June 28, 2017 Hr'g Tr. 30:12-16 (noting that while some creditors wished to wage a "holy war" against the Fiscal Plan, the Committee's view would be "key" and "a very important data point") (L. Despins); *Motion of Official Committee of Unsecured Creditors for Leave to Intervene Under Bankruptcy Rule 7024*, Adv. Proc. No. 17-00125 (Bankr. D.P.R.) [ECF No. 37] (opposing efforts to have Fiscal Plan judicially reviewed).

[6] UCC Obj. at 12 (Committee cannot include fully secured creditors "entitled to get paid before any other creditor of the Commonwealth."); FOMB Obj. at 4 ("It does not serve any purpose to appoint to the UCC a constituency that believes it is entitled to all available funds before anyone else can get a penny.").

[7] UCC Obj. at 3 (conflicts "would be insurmountable given the 'all or nothing' nature" of Constitutional Debtholders' asserted liens); FOMB Obj. at 6 (noting that the "unique motives and interests" of Constitutional Debtholders' presents a "disqualifying conflict").

7

15. Each of these arguments needlessly elevates form over substance: denying representation on the Committee when creditors are paid first on account of an interest labeled a "lien," while permitting (or even requiring) representation on the Committee when creditors are paid first on account of an interest labeled "political favoritism" or "priority." The instant dispute in these Title III Cases demonstrates that there are three ways in which a creditor could potentially be paid before other creditors. The objectors, however, inexplicably assert that a disqualifying conflict arises in only one of those three instances.

16. <u>First</u>, the Commonwealth could seek to pay a creditor before other creditors simply because the Commonwealth wants to do so, even if that violates Puerto Rico law.[8] As discussed above, the Commonwealth has already pledged to pay employees, trade creditors and tax refund claimants comprising the Committee in full. Even more, the Fiscal Plan provides that *all* employees, trade creditors, and tax refund claimants will be paid *before* a single penny is allocated to debt service for bondholders.[9] The Fiscal Plan is constructed so that bondholders receive only the "remainder" of revenues *after* all other expenses are first paid, which include payments to each of the constituencies serving on the Committee.

17. The current constituencies represented by the Committee will therefore be "paid before any other creditor of the Commonwealth" under the current Fiscal Plan. UCC Obj. at 12. Notwithstanding that these constituencies stand to be paid before Constitutional Debtholders, the objectors uniformly agree that these creditors *must* be represented on the Committee. UCC Obj. at 15 ("[T]he standing and desires of trade creditors, unions, tax claimants, and others with far less resources, require the representation of the Committee."); FOMB Obj. at 11 ("These are the

---

[8] The GO Group reserves all rights to challenge all payments made in violation of Puerto Rico law.

[9] The Fiscal Plan further provides that all pension liabilities (whose interests are represented by the separate Official Retirees Committee) will also be paid before bondholders.

8

creditors that really need a voice."). Despite spending dozens of pages detailing the insurmountable conflicts arising from Constitutional Debtholders' assertion that they should be paid before other creditors, not one of the objectors suggests that the unions, trade creditors or tax claimants that *are currently being paid in full* (in the case of employees, and certain trade creditors and tax claimants) or are *promised full payment* under the Fiscal Plan (in the case of future employees and certain unpaid trade creditors and tax refund claimants) present any conflict at all.

18. <u>Second</u>, a creditor would be entitled to be paid before other creditors if it held an enforceable priority. Interestingly, the United States Trustee initially explained that Constitutional Debtholders could not serve on the Committee because they asserted both secured *and priority* status. Motion, Ex. D. The United States Trustee appears to have concluded that a priority is not disqualifying, and now argues exclusively that the assertion of secured status prohibits membership on the Committee.[10] The Committee follows suit, arguing only that the assertion of a statutory lien is disqualifying, while saying nothing about Constitutional Debtholders' priority status under Puerto Rico law and PROMESA. Indeed, if Constitutional Debtholders were unsecured, the United States Trustee and Committee agree they would likely be entitled to serve on the Committee.[11] Although Constitutional Debtholders would still seek to be paid before other unsecured creditors, the Committee agrees with the "uncontroversial point" that "it is not uncommon for the United States trustees to appoint trustees of both the senior and the subordinated unsecured bond debt to the unsecured creditors' committee." UCC Obj. at 17.

---

[10] UST Obj. at 2 (noting that United States Trustee "properly excluded" Constitutional Debtholders "because they are actively and aggressively pursuing their secured status").

[11] UST Obj. at 2 ("[I]t is highly likely that General Obligation bondholders would be added to the committee if adjudicated unsecured"); UCC Obj. at 4 ("If, in the future, they concede they are unsecured creditors, or the Court makes that determination for them, it may be appropriate for Trustee to add representation from the Commonwealth Bondholders to the Committee.").

"So what?" the Committee asks (*id.*), but the answer is obvious: even if Constitutional Debtholders are unsecured creditors, their senior priority status under Puerto Rico law entitles them to payment before all other creditors, just as senior unsecured bondholders are entitled to payment before subordinated unsecured bondholders. The more pertinent question is why the label of "secured" or "priority" should dictate Committee eligibility when the economic effect on other unsecured creditors is the same?

19. The Oversight Board is the only objector arguing that priority treatment alone is disqualifying. FOMB Obj. at 8. The Oversight Board fails to cite any case supporting that position, and does not refute the many cases cited in the Motion stating that creditors' committees often include ***both*** senior and subordinated bondholders. The Oversight Board argues that the "purported priority may result in them getting everything at the expense of all other unsecured claimholders," which is perplexing considering that the Oversight Board has certified a Fiscal Plan that seeks to give current Committee members "everything at the expense" of Constitutional Debtholders. Put differently, if Constitutional Debtholders are *per se* disqualified because they claim to be entitled to a valid priority under Puerto Rico law that the Fiscal Plan ignores, shouldn't the current members of the Committee similarly be disqualified because the Fiscal Plan affords them a priority that violates Puerto Rico law?[12] The Committee responds that "nothing is set in stone and the Committee members have not yet been paid." UCC Obj. at 14. The Committee's retort only highlights the similarities between Constitutional Debtholders and the current Committee members: each believe (for very different reasons) that they should (or will) be paid before other creditors, but nothing is "set in stone." To the extent

---

[12] The prospect of non-financial unsecured creditors promised payment in full at least partially explains why unsecured creditors' committees were not appointed (or were quickly disbanded) in other large municipal restructurings. *See* Motion at 23 n.15.

10

current Committee members are eligible to serve "[u]ntil . . . actual payment," Constitutional Debtholders are eligible to serve on the Committee until their statutory lien is upheld.

20. <u>Third</u>, a creditor would be entitled to be paid before all other creditors (to the extent of its collateral) if it held an enforceable lien. The objectors argue that this is a bridge too far, and would create insurmountable conflicts of interest. The only distinction between a valid lien and a valid priority (or political favoritism) is that the secured creditor would, in addition to being paid before other creditors, also be entitled to other protections afforded secured creditors under the Bankruptcy Code. Otherwise, as the Oversight Board concedes, the economic effects of a lien and a priority are no different. FOMB Obj. at 8.

21. The objectors make no attempt to distinguish between these three forms of preferred treatment—all of which create the same conflicts of interest—and instead reflexively argue that the mere assertion of secured status is disqualifying.[13] That argument does not withstand scrutiny in the unique circumstances of these Title III cases, especially where the Oversight Board claims that Constitutional Debtholders are not secured by any lien at all and are the Commonwealth's largest unsecured creditor.

---

[13] Their other objections are either easily addressed or pure speculation. For example, Constitutional Debtholders would not use their position on the Committee to advance their secured claims, and would recuse themselves from any Committee deliberations concerning the validity of liens securing Constitutional Debt. *See e.g. Statements of the Royal Bank of Scotland plc and JP Morgan Chase Bank, N.A.*, *In re Capmark Financial Group, Inc., et al.*, Case No. 09-13684 (CSS) (Bankr. D. Del.) [ECF No. 1652] (noting that unsecured creditors' committee members with both secured and unsecured claims would recuse themselves from committee's challenges to secured lenders). The suggestions that Constitutional Debtholders are trying to "neuter" or "hijack" the Committee to further the GO Group's agenda (UCC Obj. at 16; FOMB Obj. at 11), or "create a '*fifth column*' resistance movement on the Committee" (UCC Obj. at 18) are completely unfounded and only underscore the concern that the Oversight Board and Committee already view Constitutional Debtholders as adversaries.

### III. The Committee Does Not Speak On Behalf Of Constitutional Debtholders

22. None of the objectors seriously dispute that Constitutional Debtholders lack adequate representation on the Committee.[14] The United States Trustee clarifies that the Committee was not even intended to represent Constitutional Debtholders. UST Obj. at 6 ("[T]he [Constitutional Debtholders] are ***not creditors whom the Committee was appointed to represent***.") (emphasis added). The Oversight Board also appears to take the position that the Committee does not represent Constitutional Debtholders. FOMB Obj. at 12 (noting that "the UCC can continue acting as advocate for the Commonwealth's unsecured claimholders that do not have the protections and priorities the Constitutional Debtholders claim to have.").

23. The Committee and AAFAF, however, take a different view. AAFAF asserts that Constitutional Debtholders are "adequately represented by the UCC." AAFAF Obj. at 2. The Committee takes a step back from its earlier position that the Committee was "a fiduciary for all unsecured creditors, and that means the GO Bonds as well." June 28, 2017 Hr'g Tr. 28:11-25 (L. Despins); *id.* at 104:15-20 ("You need fiduciaries. And the fact that there are no GO bondholders on the committee as of the moment, we owe a duty to all of them, and therefore there is only one fiduciary which has the broadest mandate, which is the creditors committee."). Now, the Committee argues only that to the extent Constitutional Debtholders "hold[] *unsecured* claims, they will have been adequately represented by the Committee." UCC Obj. at 24. In other words, the Committee claims to owe some form of ***contingent*** fiduciary duty to

---

[14] Several objectors improperly conflate that the GO Group's active role in the Title III Cases with adequate representation on the Committee itself. *See* FOMB Obj. at 9-10 ("In these cases, the Constitutional Debtholders have more than an adequate voice."). However, the applicable test is whether a particular class of creditors has adequate representation **on** the creditors' committee. *In re Sharon Steel Corp.*, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989) ("The legal principle to be distilled from [the] cases is clear: adequate representation exists through a single committee as long as the diverse interests of the various creditor groups ***are represented on and have participated in that committee***.") (emphasis added).

12

Constitutional Debtholders that will take retroactive effect upon a later determination that Constitutional Debtholders are unsecured.

24. Objectors cannot have it both ways. They cannot argue that Constitutional Debtholders "share no commonality" (UCC Obj. at 19) and are not "even remotely similar" (FOMB Obj. at 8) to other unsecured creditors while simultaneously asserting that the Committee owes some form of fiduciary duties to Constitutional Debtholders. The Committee either represents Constitutional Debtholders because their interests are similar or it does not represent Constitutional Debtholders because their interests are too different. The shifting and inconsistent views espoused by the objectors prove our point.

25. Moreover, the Committee's suggestion that it represents Constitutional Debtholders "*to the extent [they] hold[] unsecured claims*" is difficult to accept at face value. UCC Obj. at 8 (emphasis in original). The Committee's objection focuses exclusively on Constitutional Debtholders' asserted statutory lien. The Committee's objection ignores that— even as unsecured creditors—Constitutional Debtholders are entitled to a first priority claim on all available resources under the Puerto Rico Constitution and related statutes, and that Congress incorporated those priorities into PROMESA. Nevertheless, the Committee's objection indicates that it would contest Constitutional Debtholders' priority because the Committee draws no distinction between a lien and a priority. Rather, the Committee opposes creditors claiming they are "entitled to get paid before any other creditor of the Commonwealth." UCC Obj. at 12. Given that stance, the Committee's suggestion that it would represent Constitutional Debtholders to the extent they are unsecured rings hollow. In addition, the Committee's members are already promised to be paid in full, and their interests are to ensure that the Fiscal Plan does not change, so that the Commonwealth will keep its "promise" of full payments. UCC Obj. at 14. The

13

Committee has no meaningful incentive to challenge the projections and assumptions of a Fiscal Plan that promises full payment to them and 80% haircuts to bondholders. The Committee represents employees, trade creditors, and tax refund claimants; it does not represent bondholders.

### IV. The Court Should Appoint A Separate Committee Of Constitutional Debtholders In The Alternative

26. To the extent the Court concludes that Constitutional Debtholders' interests do create an insurmountable conflict with the current Committee, then the Court should exercise its discretion to appoint a separate official committee of Constitutional Debtholders pursuant to section 1102(a)(2). As set forth in the Motion, the standards for appointing a separate committee are the same as for reconstituting an existing committee. *In re Park W. Circle Realty, LLC*, No. 10-12965 (AJG), 2010 WL 3219531, at *4 (Bankr. S.D.N.Y. Aug. 11, 2010). If, as objectors suggest, the sole reason for excluding Constitutional Debtholders from the Committee is their assertion of a statutory lien, then the appointment of a Constitutional Debtholder committee provides an expedient method for providing adequate representation to Constitutional Debtholders while avoiding the purported conflict.

27. Conceding that Constitutional Debtholders lack adequate representation, the objectors primarily raise three objections. First, they argue that a committee of Constitutional Debtholders would be too costly, but costs alone cannot justify denying representation to a group of creditors holding claims *fifty* times larger than the trade creditors holding the majority of seats on the Committee. *See In re Hills Stores Co.*, 137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992) ("The potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate."). Second, they argue the existence of the GO Group eliminates the need for a separate committee. UCC Obj. at 27. But just last month

14

the Committee warned the Court of "thousands of creditors on the island that hold" Constitutional Debt, an "unrepresented creditor group" that was "very important." June 28, 2017 Hr'g Tr. 28:11-25 (L. Despins). Finally, the objectors argue that granting relief under section 1102(a)(2) would lead to even more requests for additional committees, but there are no other creditors in these Title III Cases holding more than $19 billion in claims that have no representation on an official committee and lack an indenture trustee.

## CONCLUSION

For the foregoing reasons, the GO Group respectfully requests that the Court overrule the Objections and enter an order substantially in the form attached to the Motion (a) directing the United States Trustee to change the membership of the Committee pursuant to sections 105(a) and 1102(a)(4) of the Bankruptcy Code and appoint Constitutional Debtholders to the Committee in a manner that is commensurate to the Constitutional Debtholders' position in these Title III Cases and that ensures adequate representation of Constitutional Debtholders on the Committee, (b) in the alternative, appointing an additional official committee of Constitutional Debtholders pursuant to sections 105(a) and 1102(a)(2) of the Bankruptcy Code, and (c) granting such other and further relief as this Court deems fair and just.

[*Remainder of page intentionally left blank.*]

Dated: August 4, 2017  Respectfully submitted,

/s/ J. Ramón Rivera Morales  /s/ Mark T. Stancil
J. Ramón Rivera Morales  Lawrence S. Robbins (admitted *pro hac vice*)
USDC-PR Bar No. 200701  Gary A. Orseck (admitted *pro hac vice*)
JIMÉNEZ, GRAFFAM & LAUSELL  Kathryn S. Zecca (admitted *pro hac vice*)
P.O. Box 366104  Mark T. Stancil (admitted *pro hac vice*)
San Juan, PR 00936  Ariel N. Lavinbuk (admitted *pro hac vice*)
Telephone: (787) 767-1030  Donald Burke (admitted *pro hac vice*)
Facsimile: (787) 751-4068  ROBBINS, RUSSELL, ENGLERT, ORSECK,
Email: rrivera@jgl.com  UNTEREINER & SAUBER LLP
 1801 K Street, N.W., Suite 411-L
 Washington, DC 20006
 Telephone: (202) 775-4500
 Facsimile: (202) 775-4510
 Email: mstancil@robbinsrussell.com

 /s/ Andrew N. Rosenberg
 Andrew N. Rosenberg (admitted *pro hac vice*)
 Richard A. Rosen (admitted *pro hac vice*)
 Walter Rieman (admitted *pro hac vice*)
 Kyle J. Kimpler (admitted *pro hac vice*)
 Karen R. Zeituni (admitted *pro hac vice*)
 PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
 1285 Avenue of the Americas
 New York, NY 10019
 Telephone: (212) 373-3000
 Facsimile: (212) 757-3990
 Email: arosenberg@paulweiss.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

16