*Hearing Date*: August 9, 2017 at 9:30 (EST)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br>   as representative of<br><br>The Commonwealth of Puerto Rico, *et al.* | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OMNIBUS REPLY OF AD HOC PUERTO RICO MUNICIPALITIES COMMITTEE TO OBJECTIONS TO REQUEST FOR AN ORDER PURSUANT TO 48 U.S.C. § 2161 AND 11 U.S.C. § 1102 DIRECTING THE APPOINTMENT OF AN OFFICIAL PUERTO RICO MUNICIPALITIES COMMITTEE [ECF NO. 709]**

**TO THE HONORABLE LAURA TAYLOR SWAIN**
**UNITED STATES DISTRICT COURT JUDGE:**

     **NOW COMES** the Ad Hoc Puerto Rico Municipalities Committee (the "Municipalities Committee"), and respectfully submit this omnibus reply to the responses (the "Objections")[1] filed to the *Ad Hoc Puerto Rico Municipalities Committee's Request for an Order Pursuant To 48 U.S.C. § 2161 and 11 U.S.C. § 1102 Directing the Appointment of an Official Puerto Rico*

---

[1] *See* (i) Objection to Ad Hoc Municipalities Committee's Request for Appointment of an Official Puerto Rico Municipalities Committee (the "San Sebastian Objection") [ECF No. 780]; (ii) United States Trustee's Response to the Ad Hoc Puerto Rico Municipalities Committee's Request for an Order Directing the Appointment of an Official Committee of Puerto Rico Municipalities (the "UST Objection") [ECF No. 786]; (iii) Statement of Puerto Rico Fiscal Agency and Financial Advisory Authority in Opposition to Various Motions Requesting Appointment of Additional Statutory Committees and/or the Reconstitution of Statutory Committees (the "AAFAF Objection") [ECF No. 790]; (iv) Objection of Debtors to Ad Hoc Municipalities Committee's Motion Requesting Appointment ff Additional Committee of Municipalities (the "Debtors' Objection") [ECF No. 807]; (v) Omnibus Objection of Official Committee of Unsecured Creditors to Motions of University of Puerto Rico Retirement System Trust and Ad Hoc Puerto Rico Municipalities Committee Requesting Appointment of Additional Official Creditors' Committees (the "UCC Objection") [ECF No. 810]; (vi) Limited Objection of Ambac Assurance Corporation to Ad Hoc Puerto Rico Municipalities Committee's Request for an Order Pursuant To 48 U.S.C. § 2161 and 11 U.S.C. § 1102 Directing the Appointment of an Official Puerto Rico Municipalities Committee (the "Ambac Objection") [ECF No. 812]. Collectively, the objecting parties are referred to herein as the "Objectors."

*Municipalities Committee* (the "Motion") [ECF No. 709], and in support thereof respectfully state as follows:

**OMNIBUS REPLY**

1. The Oversight Board argues that the Municipalities simply want an official committee to seek redress of political grievances, and courts will not decide political questions. Puerto Rico's problems certainly have their origin in the political process. That same *political* process created PROMESA, which in turn created the Oversight Board. But the Board then chose to use PROMESA's *judicial* features to solve the Island's problems. The politicians, therefore, have punted the matter back to this Court, and made the political process a judicial one. It is only by appearing here that the Municipalities can be heard in the reorganization of the Island's finances.

2. The Objectors' other arguments fall into four categories. They do not stand in the way of this Court's appointing an Official Municipalities' Committee.

3. The argument that the Municipalities are not creditors of the Commonwealth is simply false. Some municipal claims have been filed already, and more will come. Even the Objectors admit that the Municipalities have substantial claims against the Government Development Bank ("GDB"); what they want to ignore is that, under Puerto Rican law, the GDB is an alter ego, "an arm of the state," and acts at its direction.

4. The claim that Municipalities are already represented by the Creditors' Committee does not stand scrutiny. The current members, a mix of union and trade creditors, have no government experience or method for routinely dealing with the challenges and dislocations which this case is causing local government. The situation mandates a committee which can serve as a forum and focus for the Municipalities' real and urgent needs. ***Moreover,***

*the Municipalities, as opposed to general unsecured creditors, have to weigh other considerations aside from simple economic recovery – to wit, the wellbeing of their citizens*.

5. The Objectors' cannot distinguish away appointment of previous official municipal committees, especially given that they seemed to work. The scant legislative history that exists on the matter feared that cities serving as committee members might be overbearing in commercial bankruptcies. But this is no garden-variety chapter 11 case, and the Municipalities have no ability to bully anyone. To the contrary, they need an official committee to keep from being bullied – or even forgotten entirely – as deals get made and the restructuring is finalized.

## I. THE APPOINTMENT OF AN OFFICIAL PUERTO RICO MUNICIPALITIES COMMITTEE IS NECESSARY TO ENSURE THAT PUERTO RICO'S LARGEST GROUP OF PUBLIC CREDITORS ARE ADEQUATELY REPRESENTED

6. Several objections (collectively, "Objections") have been filed in response to the Ad Hoc Puerto Rico Municipalities Committee's Request for an Order Directing the Appointment of an Official Puerto Rico Municipalities Committee (the "Request"). Among the most common issues raised in opposition to the Request for an Official Puerto Rico Municipalities Committee (the "Official Municipalities Committee") are: (1) the specious claim that Puerto Rico's seventy-eight municipalities (the "Municipalities") are not permitted to obtain a court-ordered committee appointment because they are not creditors of the Commonwealth of Puerto Rico ("Puerto Rico," "the Commonwealth," or "Debtors"); and, in the alternative, (2) the equally erroneous notion that, assuming that the Municipalities are creditors of the Commonwealth, they are adequately represented by the seven private entities that make up the unsecured creditors committee (the "Creditors Committee" or the "Committee"). The above contentions are dispelled below.

### A. Puerto Rico's Seventy-Eight Municipalities are, Collectively, the Commonwealth's Most Significant Public Creditors.[2]

7. The Municipalities properly sought a court order for the appointment of an Official Municipalities' Committee, given their status as the largest group of public creditors of the Commonwealth and GDB. The Objectors want to create the impression that the Municipalities do not have an established debtor-creditor relationship with the Commonwealth. *See, e.g.,* Debtors' Objection, at 5-6. They concede that the Municipalities meet the requirements of section 101(10)(A) of the U.S. Bankruptcy Code (the "Code"), which defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A); Debtors' Objection, at 5. The Debtors insist, however, that the Municipalities are *only* creditors of the GDB—*not* the Commonwealth itself. *See* Debtors' Objection, at 5. Therefore, they say, the Municipalities do not have the requisite standing to request the formation of an Official Municipalities Committee under section 1102(a)(2) of the Code. 11 U.S.C. § 1102(a)(2); Debtors' Objection, at 5.

8. As a preliminary matter, a plain reading of PROMESA rejects the Objectors' position outright, as the statute treats the Commonwealth and its instrumentalities as one and the same. The law defines the "territorial government" of Puerto Rico to include its "territorial instrumentalities." 48 U.S.C. § 2104(18), (19). Moreover, it includes within the latter term "any instrumentality that is also a *bank*," and notes that a territorial instrumentality "should be broadly construed" under the statute. *Id.* § 2104(19)(A).

---

[2] In their opposition, the Debtors made an impassioned argument as to why the Municipalities' interpretation of section 301(c)(3)(A) was incorrect and inapplicable to the current situation. Having thoroughly reviewed the Debtors' argument, the Municipalities acknowledge that it is the better interpretation. Nonetheless, as the Commonwealth's largest and most significant group of public creditors, the Municipalities are entitled to the appointment of a separate committee pursuant to section 1102(a)(2) to ensure their adequate representation in the

9. Aside from PROMESA, the Objectors' argument does not hold up because the GDB is an alter ego of the Commonwealth; there is ample evidence to confirm this point. In order to determine whether a state agency or instrumentality is an alter ego, or "arm of the state," federal courts—including the First Circuit—have looked at a series of factors, among them: (1) how state law defines the entity's nature and relationship to the state; (2) whether the entity is performing a governmental or proprietary function; (3) whether the entity has been incorporated separately from the state; (4) the degree of autonomy or control over its operations; (5) whether the entity can sue and be sued; (6) whether it is immune from taxation; and (7) whether the state has immunized itself from responsibility for the entity's operations. *See, e.g.*, *Mt. Healthy City Sch. Dist. Bd of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977); *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 402 (1979) (state law providing financial obligations of agency would not be binding on state suggested agency was not alter ego); *Ainsworth Aristocrat Intern. Pty. Ltd. v. Tourism Co. of Com. Of Puerto Rico*, 818 F.2d 1034 (1st Cir. 1987) (public tourism company that operated all slot machines in Puerto Rico engaged in proprietary, rather than government function); *Culebras Enter. Corp. v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir. 1987) (immunity of agency from taxation under Puerto Rican law led court to conclude that agency an alter ego of the government); *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1520 (11th Cir. 1983) (state legislation showed that entity was an arm of the state because the entity's finances were controlled by the state through budgeting and reporting requirements); *Kovats v. Rutgers*, 822 F.2d 1303, 1312 (3d Cir. 1987) (separate incorporation from state, and ability to sue and be sued, suggested public university was not an arm of the state); *Hefley v. Textron*, 713 F.2d 1487 (10th Cir. 1983) (state national guard subject

---

reorganization process.

to state control where the Governor had the ability to appoint and discharge officers).[3] These factors are applicable here as well.

10. The factors set forth above weigh strongly in favor of the court finding that the GDB is an "arm of the state"—that is, an arm of the Commonwealth. The GDB is, admittedly, incorporated separately, and can independently sue and be sued. 7 L.P.R.A. §§ 551; 552. There is also some suggestion that the Commonwealth has immunized itself from liability of the GDB. *Id.* § 553 (stating that the "debts or obligations of the Bank shall not be debts or obligations of the Commonwealth Government . . ."). The preponderance of the remaining factors suggest, however, that the Commonwealth is *not* otherwise a distinct entity separate and apart from the GDB. For one, Puerto Rican law defines the GDB's purpose as one intended to benefit the Commonwealth. The governing statute provides that the GDB is a "governmental instrumentality" that works to "aid the Commonwealth Government in the performance of its fiscal duties and more effectively to carry out its governmental responsibility to develop the economy of Puerto Rico." 7 L.P.R.A. § 551. In addition, the GDB's charter states that its purpose is to "act as fiscal agent and as paying agent and as a financial advisory and reporting agency of the Commonwealth Government," as well as its numerous public entities and instrumentalities, and to "act as depositary or trustee" of such funds. *Id.* § 552(A), (B). The charter further provides that the GDB is to "lend money" to the Commonwealth and its agencies and instrumentalities, or to other persons in order to "further the governmental purpose of

---

[3] While these factors have often been utilized to determine whether a state agency or instrumentality should benefit from the Eleventh Amendment protections afforded the state by out-of-state and foreign plaintiffs, it has been utilized in other contexts as well. *See, e.g.*, *Lesinski v. South Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014) (adopting the Eleventh Amendment "arm of the state" analysis to determine whether a state entity is a

developing the economy of Puerto Rico." *Id.* § 552(C), (D). Bearing these purposes in mind, there can be no doubt that the GDB exists to serve the Commonwealth's interests. As such, its role is governmental, not proprietary.

11. Also indicative of the GDB's character as an alter ego of the Commonwealth is its tax exempt status. Given its "public purpose in all respects for the benefit of the Commonwealth," under Puerto Rican law, the GDB is exempt from paying taxes on its property, on its "operations or activities," or on the income "derived from any of its operations or activities." 7 L.P.R.A. § 553. Moreover, any bonds, notes, or debentures or other obligations held by the GDB are exempt from taxation. *Id.*

12. Lastly, the degree of autonomy and control afforded to the GDB is not total; much to the contrary, the Commonwealth is involved in its highest levels of operation through the powers of the Governor of Puerto Rico. In its charter, the Governor appoints the members of the GDB's Board of Directors to four-year terms. *Id.* § 552. In addition to his power to appoint members of the Board, the Governor, upon the submission of a report and recommendations by the Secretary of the Treasury of Puerto Rico, can initiate a meeting of the Council of Secretaries. The Council may respond by removing the director and taking any "additional action it may deem necessary." Therefore, the Puerto Rican government exacts ultimate control over the GDB's operations because it has the sole power to staff it.

**B. The Appointment of an Official Puerto Rico Municipalities Committee is Essential to the Municipalities' Adequate Representation.**

13. Under section 1102(a)(1) of the Code, the United States Trustee (the "U.S. Trustee") must appoint a committee of unsecured creditors; and at her discretion, the U.S.

---

"person" subject to the False Claims Act).

Trustee may appoint "additional committees" of creditors or equity security holders. 11 U.S.C. § 1102(a)(1). Moreover, under section 1102(a)(2), on request of a party in interest, the court is empowered to order the appointment of such "additional committees" of creditors or equity security holders to ensure that certain creditors or equity security holders are "adequate[ly] represent[ed]." *Id.* § 1102(a)(2). The U.S. Trustee, in turn, must appoint any such committee ordered by the court. *Id.*

14. The Municipalities are integral to providing citizens with critical services they deserve and expect. Municipalities provide police protection, medical services, schools and education, trash collection, maintain roads and parks, among other services. If their voice is not heard the true losers are all the citizens of Puerto Rico. This clearly makes them creditors and parties in interest.

15. The Objectors would have this Court believe that the creation of an Official Municipalities' Committee would increase costs and complicate the Title III process. Nothing could be further from the truth.

16. An Official Municipalities' Committee will simplify the legal and negotiation process. It is easier to deal with one unified voice than 78 individual ones. In addition, the Municipalities have unique insights and knowledge into the problems faced by their citizens and the services that need to be provided that other creditors do not have. If the Municipalities are not properly represented, the Puerto Rican people may find themselves without critical services nobody thought to include in the restructuring process.

## II. The Ad Hoc Municipalities Committee is Not Asking the Court to do Anything that Hasn't Been Done Before.

17. The appointment of official municipal committees is not unprecedented, and the Motion cites ample legal authority in that regard. The Debtors' Objection attempts to distinguish two of those cases, *In re County of Orange*, Ch. 9 Case No. 94-bk-22272 (Bankr. C.D. Cal. Filed Dec. 6, 1994) and *In re Davis Industries, Inc.*, Ch. 11 Case No. 99-bk-19302 (Bankr. C.D. Cal. filed May. 27, 1999), on the basis that the municipal creditors in those cases held direct prepetition claims against the debtors. *See* Debtors' Objection at ¶ 17. That argument suggests that the Puerto Rico Municipalities do not have prepetition claims against the Commonwealth, which is patently incorrect, as set forth above.

18. The Objections perpetuate the discriminatory treatment of governmental entity participation on committees that legal scholars have routinely criticized. *See, e.g.,* Ester E. Tryban Telser, *Affairs of State, Governmental Entities: The Disenfranchised Creditors*, 31-11 ABIJ 16, 97 (2013) ("The financial interests of these [government] entities cannot continue to suffer due to their exclusion from the important work done on reorganization plans by creditors' committees, and confirmation of these finely honed plans should not be delayed or denied because of the failure of debtors and creditors' committees to consider the interests of these types of creditors until after a plan has been proposed."); Richard Niles Chassin, *Judicial Misinterpretations of Creditors' Committees*, 1 Bank. Dev. J. 107, 113 (1984) ("Governmental units are excluded from the definition of 'person' for the purposes of the Code to avoid the problems which might result if the United States were held an eligible debtor for Chapter 7 relief. Draftsmen feared that municipalities would file for Chapter 7 liquidation creating problems with far reaching ramifications. Nowhere in the legislative history or Code is there

mention of any concern over governmental units sitting on creditors' committees."); Kenneth N. Klee and K. John Shaffer, Symposium on Bankruptcy: *Chapter 11 Issues: Creditors' Committees Under Chapter 11 Of The Bankruptcy Code*, 44 S.C. L. Rev. 995, 1008 (1993) ("There also does not appear to be any reason why a governmental unit cannot serve on an additional creditors' committee established pursuant to section 1102(a)(2)").

19. The vague fear that a governmental unit usually has additional powers, resources and protections that other creditors do not possess is not present in this case. The Municipalities as a group are extremely poor in resources and have no effective representation by the constituted committees. The fact that no Municipality is present in the Creditors Committee guarantees that their interests will not be taken into consideration by said Committee.

20. The U.S. Trustee's argument that prior appointments were mistakes that should not be perpetuated is at best self-serving and at worst discriminatory. The fact is that in several prior cases one or more official municipal committees have been appointed. What has never happened is the appointment of a governmental unit to a regular creditors' committee, which is understandable given the fundamental difference in interests between regular unsecured creditors and ***governmental units who must weigh public policy along with mundane monetary concerns***.

21. As this is not a "normal" Chapter 11 case, the Court should exercise its discretion in authorizing the creation of the requested Official Puerto Rico Municipalities Committee for the benefit of all parties involved.

### III. The Costs for an Official Committee of Municipalities is Justified by the Benefits to the Debtors' Restructuring Efforts.

22. Forcing the 78 Municipalities to hire individual bankruptcy counsel and other professionals to represent their interests will only increase the costs to the public. Any funds spent by the individual Municipalities would still come from public coffers. Since the Municipalities would have to spend their already limited resources, the citizens of Puerto Rico are the ones who will be affected in the end. But in addition, this will also increase the costs of representation for the Debtor and the currently appointed committees since they would have to review and respond to filings from 78 separate entities.

23. A good example is the complaints filed against the GDB. There are already three separate and distinct complaints by different municipalities and it is logical to expect additional complaints. Centralized representation by an official committee will reduce costs and simplify the process.

24. Moreover, any additional cost to the Debtors has to be weighed against the needs and interests of parties requesting the appointment of the official committee. In this case the balance falls squarely on the side of appointing the committee, especially when you consider the fact that the municipalities to be most affected by the debt adjustment plan are the ones who have the least resources to properly represent themselves.

WHEREFORE, it is hereby requested that the Court GRANT the Motion and order the appointment of an Official Municipalities Committee.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants of the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on August 4, 2017.

By: */s/ F. David Godreau Zayas*
USDC NO. 123207
*dg@g-glawpr.com*

By: */s/ Rafael A. Gonzalez Valiente*
USDC NO. 225209
*rgv@g-glawpr.com*

**Godreau & Gonzalez Law, LLC**
PO Box 9024176
San Juan, PR 00902-4176
Telephone: 787-726-0077

*By: /s/ Michael R. Rochelle*
Michael R. Rochelle, admitted *pro hac vice*
Texas Bar # 17026700
*Buzz.rochelle@romclaw.com*

Kevin D. McCullough, admitted *pro hac vice*
Texas Bar # 00788005
*kdm@romclaw.com*

**Rochelle McCullough LLP**
325 North St. Paul, Ste. 4500
Dallas, Texas 75201
Telephone 214-953-0182

Counsel for the Municipalities
Ad Hoc Committee