**Hearing Date**: August 9, 2017 at 9:30 a.m. (prevailing Eastern Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : PROMESA<br>: Title III |
| | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
| | : |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | : (Jointly Administered) |
| | : |
| Debtors.[1] | : |

---

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee | : Adv. Proc. No. 17-00133 (LTS) |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"), WHITEBOX MULTI-STRATEGY PARTNERS, L.P.; WHITEBOX ASYMMETRIC PARTNERS, L.P.; WHITEBOX INSTITUTIONAL PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.; AMBAC ASSURANCE CORPORATION; FRANKLIN ADVISERS, INC., and CEDE & CO., as nominee for The Depository Trust Company, | : |
| | : |
| Defendants. | : |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

**INFORMATIVE MOTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS REQUESTING TO BE HEARD AT AUGUST 9-10, 2017
HEARING WITH RESPECT TO MOTION OF COFINA SENIOR
BONDHOLDERS' COALITION FOR MODIFICATION OF
INTERPLEADER ORDER AND RELATED PLEADINGS**[2]

To the Honorable United States District Court Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (and other title III debtor(s) (if any) for which it acts as the official committee of unsecured creditors) (the "Committee") respectfully submits this informative motion pursuant to the *Order Regarding Procedures for Attendance, Participating and Observation of August 9-10, 2017 Omnibus Hearing* [Docket No. 837] (the "Procedures Order") requesting to be heard at the August 9-10, 2017 Omnibus Hearing (the "Hearing") with respect to the *Motion of COFINA Senior Bondholders' Coalition for Modification of Interpleader Order* [Docket No. 290 in Adv. Proc. No. 17-133 (LTS)] (the "Modification Motion") and the related pleadings, *Response of Financial Oversight and Management Board to COFINA Senior Bondholders' Coalition's Motion for Modification of Order Granting Interpleader* [Docket No. 298 in Adv. Proc. No. 17-133 (LTS)] (the "COFINA Response") and the Court's August 1, 2017 Order denying the Committee's Intervention Motion[3] [Docket No. 301 in 17-133 (LTS)] (the "Denial Order"). In support of this informative motion (the "Committee/COFINA Informative Motion"), the Committee respectfully states as follows:

---

[2] An identical motion is also being filed on the docket of the Bank of New York Mellon adversary proceeding, Adv. Proc. No. 17-113 (LTS). In addition, the Committee will file an additional informative motion with respect to other matters scheduled to be heard at the August 9-10, 2017 omnibus hearing.

[3] The "Intervention Motion" is the *Motion of Official Committee of Unsecured Creditors for Leave to Intervene Under Bankruptcy Rule 7024 for Limited Purpose of (I) Presenting Limited Objection to Motion of COFINA Senior Bondholders' Coalition for Modification of May 30, 2017 Interpleader Order and (II) Cross Moving for Limited Stay of Interpleader Action and Clarification of May 30, 2017 Interpleader Order* [Docket No. 296 in Adv. Proc. No. 17-133 (LTS)]. Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Intervention Motion.

2

**Committee/COFINA Informative Motion**

1. The Committee requests to be heard at the Hearing with respect to the Modification Motion and the related pleadings, the COFINA Response, and the Denial Order.

2. The Committee understands the Court's ruling in the Denial Order that the Intervention Motion was premature in light of the fact that the Court has not yet approved entry of the Commonwealth-COFINA Stipulation, and apologizes for the prematurity of its request. Therefore, the Committee files this Committee/COFINA Informative Motion to be heard at the Hearing with the understanding that the Commonwealth-COFINA Stipulation will either be approved or not approved at such hearing, and the Committee respectfully requests, for the reasons set forth below, to be heard regardless of the outcome of the approval of the Commonwealth-COFINA Stipulation.

3. If the Commonwealth-COFINA Stipulation is approved at the Hearing, the Committee will be the agent for the Commonwealth and should therefore be heard with regards to the Modification Motion for all the reasons set forth in the Intervention Motion.[4]

4. If, on the other hand, the Court declines to approve the Commonwealth-COFINA Stipulation at the Hearing,[5] the Committee believes that it should nevertheless be heard to address the Modification Motion, specifically in connection with the COFINA Response. First, the COFINA Response makes clear that the Oversight Board was not appearing and/or taking a position on behalf of the Commonwealth in the COFINA Response and therefore the Oversight Board was not representing the Commonwealth's interests. Second, the Committee, in its unique statutory role as "watchdog," must be heard if it is to meet its fiduciary obligations to protect all

---

[4] To the extent necessary, the Committee also requests clarification that the Denial Order is without prejudice to the Committee renewing its Intervention Motion.

[5] To be clear, the Committee fully supports the Commonwealth-COFINA Stipulation, which has been approved by all major constituencies in the Title III Cases—itself a significant accomplishment—and will provide a roadmap for resolving one of the most complex and contentious issues in the Title III Cases and, ultimately, for a successful reorganization.

3

of the Commonwealth's general unsecured creditors and to monitor and, if necessary, challenge, the debtor. Even if the Oversight Board was adequately representing the Commonwealth's interests (which, to be clear, is not supported by the clear record here), the Committee must still be heard to monitor the debtor, as to have the debtor monitoring itself would be akin to setting the fox to watch the henhouse. <u>Third</u>, the COFINA Response raises some, but by no means all, of the issues the Committee identified in its Proposed Pleading. The COFINA Response is silent regarding certain critical "account neutrality language" found in the Proposed Pleading and, unlike the COFINA Response, the Proposed Pleading requests a limited stay of the Interpleader Action. Therefore, even if the COFINA Response does adequately represent the Commonwealth's interests with regards to the issues it does address, the same cannot be said for critical issues discussed in the Proposed Pleading and on which the COFINA Response is entirely silent.

### Relevant Background[6]

5. On July 31, 2017, the Committee filed the Intervention Motion, seeking to intervene in the Interpleader Action for the limited purpose of ensuring that the Commonwealth's rights to or in the Disputed Funds were protected pending resolution of the Commonwealth-COFINA Dispute.

6. On July 31, 2017, COFINA, through its representative the Oversight Board, filed the COFINA Response.

7. On August 1, 2017, the Court entered the Denial Order.

---

[6] In the interest of economy and to avoid burdening the Court with unnecessarily lengthy pleadings, the Committee incorporates the facts and other relevant background set forth in the Intervention Motion.

4

I. **Oversight Board Did Not Purport to Appear on Behalf of Commonwealth and Therefore Could Not Have Represented Commonwealth's Interests in COFINA Response**

8. The Denial Order states that the most important basis for denying the Intervention Motion is "the fact that *the Commonwealth*, through its statutory representative, the FOMB, *has filed a response* to the [Modification] Motion," and that therefore the Commonwealth's interests are adequately represented by the Oversight Board.[7]

9. The Committee respectfully submits that, in this, the Court may have erred. The Commonwealth, with or through the Oversight Board, has not filed any response to the Modification Motion. To the contrary, the Oversight Board only did so on behalf of COFINA. As the below quotes from the COFINA Response demonstrate, the COFINA Response leaves no doubt that the Oversight Board has chosen to speak only for COFINA in the COFINA Response:

- The **Puerto Rico Sales Tax Financing Corporation** ("COFINA" or "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as the Debtor's representative . . . **responds** to the COFINA Senior Bondholders' Coalition's [Modification Motion] . . . .[8]

- **COFINA submits** there is a right and wrong answer . . .

- **COFINA agrees** that . . . .

- **COFINA leaves** to the Court . . . .

- **COFINA requests** that the Court . . . .[9]

10. Not only does the Oversight Board not even claim to represent the Commonwealth, the COFINA Response advances or fails to advance various theories, which positions are adverse to the Commonwealth in a number of ways. First, the COFINA Response

---

[7] Denial Order at 5 (emphases added).
[8] The Court itself has noted that the Oversight Board "*as representative of COFINA* . . . has responded to the COFINA Senior Bondholders' Motion." Denial Order at 3 (emphasis added). The Committee respectfully submits that this appears to be inconsistent with the Court's later determination that "*the Commonwealth*, through its statutory representative, the FOMB, has filed a response." *Id.* at pg. 5 (emphasis added).
[9] COFINA Response at 1, 8 and ¶¶ 2, 3, 4.

5

states that "the [Disputed Funds] may be increasing in amount" during the pendency of the Title III Cases.[10] In other words, the sales and tax revenues (the "SUT") continue to be deposited with BNYM every day. As explained in the Proposed Pleading, the Oversight Board is well aware that continuing to deposit the SUT at BNYM is potentially adverse to the Commonwealth's legal position with respect to such funds, yet the Oversight Board (in a clear indication of its inability to represent both the Commonwealth and COFINA) has withdrawn the Amended Bank Account Motion that would have cut off the flow of the SUT to BNYM.[11] The COFINA Response fails to even address this issue, and in fact would allow the SUT to continue to be deposited at BNYM indefinitely, which is potentially adverse to the Commonwealth's litigation position. Second, the COFINA Response contemplates that "the COFINA Senior Bondholders should have an early opportunity for immediate payment of some interest," and that the COFINA creditors would be entitled to money held at COFINA "even if it was property of the Commonwealth before it was transferred to COFINA."[12] This is entirely inconsistent with the Commonwealth's litigation position[13] and represents a position *no sole representative of the Commonwealth would ever take*. In point of fact, while there is no doubt that the Commonwealth has a direct claim to the Disputed Funds, *no one except the Committee has stood up to represent the Commonwealth*.

---

[10] COFINA Response ¶ 2.
[11] The Committee notes that the Oversight Board filed the Amended Bank Account Motion on behalf of the Commonwealth and COFINA (as well as the other jointly administered title III debtors), thereby establishing that the Oversight Board knows when and how to file pleadings on behalf of one, two, or all debtors. Regardless of statements made by the Oversight Board or its counsel in the Amended Bank Account Motion or elsewhere recognizing the importance of the account neutrality language, at the end of the day mere statements in pleadings bind no one in the absence of an express court order.
[12] COFINA Response ¶ 4.
[13] And ignores the Bankruptcy Code's avoiding powers and other non-bankruptcy claims available to the Commonwealth and its creditors.

6

## II. Committee Is Party in Interest

11. The Denial Order states that the Committee "is not a creditor of COFINA" and therefore is not entitled to intervene under section 1109(b) of the Bankruptcy Code.[14] The Committee respectfully submits that regardless of whether it is a *creditor* of COFINA, it is nonetheless a *party in interest* pursuant to section 1109(b) of the Bankruptcy Code whose standing to be heard and appear cannot be evaluated only through the prism of economic impact used to evaluate individual creditors advocating their parochial interests, but rather such analysis must be informed by the unique role envisioned for the Committee by Congress.

### a. Committee Is Watchdog of the Debtor

12. "The function of an official creditors committee is to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected." *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006). An official committee is "not merely a conduit through whom the debtor speaks," and its statutory obligation to monitor and investigate the debtor "must necessarily be adversarial in a sense." *Id.* (internal citations omitted).

13. "Thus, a creditors committee serves something of a "watchdog" function in bankruptcy and enjoys unique rights and responsibilities under the Code." *In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 577–78 (Bankr. D. Colo. 1998); *see also Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 280–81 (8th Cir. 2015) ("The support of the unsecured creditors' committee is noteworthy. Creditor Committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents.") (citing *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 519 (8th Cir. 2004)); *Matter of Advisory Comm. of Major Funding Corp.*, 109 F.3d 219,

---

[14] Denial Order at 4.

7

224 (5th Cir. 1997) ("[S]ection 1103 convinces us that the use of the permissive "may" throughout the section cannot be read to impose only powers, and not duties. A more reasonable reading comes to light when section 1103 is interpreted in the context of the Bankruptcy Code. Under the Code, section 1103 governs the workings of Creditor Committees. Creditor Committees have the responsibility to protect the interest of the creditors; in essence, "the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents." Section 1103 provides the tools with which the creditors' committee works.").

14. It goes without saying that it is impossible for the Committee to meet its statutorily-imposed fiduciary obligation if it cannot be heard. ***Importantly, a committee must be allowed to be heard on any issue related to its watchdog function, regardless of whether it has a direct economic interest***. *In re W. Pac. Airlines, Inc.*, 219 B.R. at 577–78 (holding committee had standing to appeal settlement order between debtor and third parties and declining to accept "[a] rule that would preclude [the committee] from appealing any decision of the bankruptcy court in which it lacks a pecuniary interest even if that decision implicates those rights and responsibilities"); *see also In re El Comandante Mgmt. Co.*, 359 B.R. 410, 417 (Bankr. D.P.R. 2006) (a party with "***a significant legal stake . . . as opposed to a financial stake***, is also a party in interest").

15. One of the Committee's statutory obligations is to "investigate the . . . assets, liabilities, and financial condition of the debtor." 11 U.S.C. § 1103(c)(2). The Commonwealth-COFINA Dispute falls squarely within the ambit of section 1103, and there can be no question that the ultimate disposition of the Disputed Funds will directly impact the general unsecured

8

creditors represented by the Committee.[15]  For example, if the Oversight Board was to propose a plan of adjustment for COFINA purporting to distribute the Disputed Funds prior to determination of the Commonwealth-COFINA Dispute, it cannot be disputed that the Committee would be a party in interest with standing to be object to such a plan.  In seeking to protect the Commonwealth's rights with respect to the Disputed Funds, the Committee "does nothing but make this same objection, albeit outside the context of a plan of reorganization."  *See In re E. Boston Neighborhood Health Ctr. Corp.*, 242 B.R. 562, 566–67 (Bankr. D. Mass. 1999) ("The Committee has standing, without leave of court, to object to confirmation of a plan of reorganization on behalf of the interests of general unsecured creditor.").[16]

### b. Committee Is Only Entity Representing Commonwealth's Interest with Respect to Disputed Funds

16.     It is the case in every bankruptcy that the official committee is unique and has unique statutory powers and responsibilities because "there is simply no other entity established by the Code to guard those interests."  *In re Refco Inc.*, 336 B.R. at 195.  This has perhaps never been truer than in the Title III Cases.

---

[15] The fact that the Interpleader Action is an adversary proceeding in COFINA's title III case does not change this. To the contrary, the interconnectivity between the Commonwealth's title III case and COFINA's title III case means that the Committee is a party in interest in the COFINA case even if it is not a creditor of COFINA. *See In re El Comandante*, 359 B.R. at 417 (Bankr. D.P.R. 2006) (Caribbean, a creditor of only one debtor, was party in interest with standing to appear in all of the cases because "the outcome of each of the debtors' cases directly affects the outcome of [the case] wherein Caribbean is a creditor" and "such combined effect" is "sufficient to grant it standing to appear in [all of the] cases").

[16] *See also In re Kinderknecht*, No. 09-13443, 2011 WL 841141, at *2 (Bankr. D. Kan. Mar. 4, 2011) (recovery . . . from defendants could increase the value of the estate to be administered . . . and affect distribution to unsecured creditors"); *In re Spectrum Info. Techs., Inc.*, 183 B.R. 360, 365 (Bankr. E.D.N.Y. 1995) ("resolution of this dispute . . . will inevitably affect [the debtor]'s unsecured creditors by affecting the size of the estate"); *In re Brookhaven Textiles, Inc.*, 21 B.R. 204, 207 (Bankr. S.D.N.Y. 1982) ("Any decision made in this dispute . . . will inevitably affect the [debtor]'s unsecured creditors because the size of the estate will be affected."); *see generally In re Water's Edge Ltd. P'ship*, 251 B.R. 1, 6–7 (Bankr. D. Mass. 2000) (unsecured creditors are "the prime beneficiaries of the estate").  Failing to allow the Committee to be heard and participate in any aspect of the Title III Cases that relates to the Disputed Funds "implicates those rights and responsibilities," *In re W. Pac. Airlines*, in a negative manner.  *See In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 400 (Bankr. N.D. Ill. 2009) (oversight role in connection with debtor's funds held to pay unsecured creditors was within committee's watchdog function).

9

17. As demonstrated above, *no one except the Committee has stood up to represent the Commonwealth*.[17] As the "watchdog" of the debtor, the Committee must be allowed to ensure that the general unsecured creditors are not forced to bear the consequences of the Commonwealth abandoning its rights and of the Oversight Board's clear and incurable conflict. Moreover, even if, *arguendo*, the Oversight Board was representing the Commonwealth's rights, it is axiomatic that the Commonwealth (and its representatives), as the party that is supposed to be watched by the watchdog, cannot at the same time be deemed to adequately represent the watchdog for intervention purposes, as this would be inimical to the watchdog's role.

### III. Committee Is Not Seeking "Second Bite at the Apple"

18. As a final matter, the Committee understands that its request to be heard at the Hearing on the matters discussed herein may at first glance appear to be an attempt to get a "second bite at the apple." As should be clear from the above, the instant informative motion is prompted by the COFINA Response, which was filed on the same day (and after) the Intervention Motion and of which the Committee had no advance knowledge. Therefore, to the extent the Court is inclined to view the Committee/COFINA Informative Motion as a motion for reconsideration,[18] the Committee could not have addressed the COFINA Response in its Intervention Motion.

### Notice

19. Notice of the Committee/COFINA Informative Motion has been provided to the following entities, or their counsel, if known: (i) the Bank of New York Mellon; (ii) the U.S. Trustee; (iii) the Office of the United State Attorney for the District of Puerto Rico; (iv) the Oversight Board; (v) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (vi) the

---

[17] Section 307 of the Bankruptcy Code (which gives the United States Trustee standing to appear) is not incorporated into PROMESA, removing an additional entity that otherwise may be concerned with ensuring that the rights of unsecured creditors are protected.

[18] The Committee reserves all rights to so move.

10

official committee of retirees; (vii) the insurers of the bonds issued or guaranteed by the Debtors; (viii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors;[19] and (ix) all parties that have filed a notice of appearance in the Title III Cases.[20]

## No Prior Request

20. No previous request for the specific relief sought herein has been made by the Committee to this or any other court.

*[Remainder of page intentionally left blank]*

---

[19] Which include the Mutual Fund Group, the Ad Hoc Group of General Obligation Bondholders, the COFINA Senior Bondholders' Coalition, and the QTCB Noteholder Group, each as such group is defined at Docket Nos. 28, 68, 216, and 134 in the Commonwealth Title III Case, respectively.

[20] While the Committee, out of an abundance of caution, served the instant papers as described herein, the Committee does not expect written responses or objections to the Committee/COFINA Informative Motion, and is not asking the Court to set an objection deadline.

WHEREFORE, the Committee respectfully requests that the Court allow the Committee to be heard at the Hearing as requested herein and grant such other and further relief as this Court deems just.

Dated: August 4, 2017
      San Juan, Puerto Rico

/s/ G. Alexander Bongartz

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
Andrew V. Tenzer, Esq. *(Pro Hac Vice)*
Michael E. Comerford, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
andrewtenzer@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

- and –

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Proposed Replacement Local Counsel to the Official Committee of Unsecured Creditors*