IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>As representative of the Commonwealth of Puerto Rico | Case No. 17-BK-03283(LTS)<br><br>TITLE III PROMESA |

**MOTION FOR RELIEF FROM STAY**

TO THE HONORABLE COURT:

Comes now the Movant, Alvin Marrero-Méndez, through the undersigned attorneys, and respectfully states as follows:

**PROCEDURAL BACKGROUND**

Alvin Marrero-Méndez has been an officer in the Puerto Rico Police Department ("PRPD") for more than 20 years. He is the plaintiff in a civil rights case filed against three police supervisors sued in their personal and official capacities for violations of the Establishment Clause of the First Amendment to the U.S. Constitution, in what the First Circuit has described as a "clear case of punishment on religious grounds." *Marrero–Méndez v. Calixto–Rodríguez*, 830 F.3d 38, 45 (1st Cir. 2016). In his Complaint,[1] filed in March 2013, Officer Marrero-Méndez alleged that his immediate supervisor, co-defendant Guillermo Calixto-

[1] *See Marrero Mendez v. Pesquera* et al, No. 13-cv1203 (JAG).

Rodríguez coerced him to participate in a Christian prayer during an officers' briefing and retaliated against him when he refused to do so. According to the Complaint, Calixto-Rodriguez summoned a group of PRPD officers for a meeting in the parking lot of a shopping mall to discuss a plan for an intervention to take place nearby. Officer Marrero-Méndez was among those ordered to attend the briefing, as were two of his superiors, co-defendants Mario Rivera and Ricardo Cruz-Domínguez. As the officers were lined up in formation, at the closing of the briefing Calixto-Rodriguez asked for a volunteer to lead the group in a prayer. Officer Marrero-Méndez, an atheist, called Calixto-Rodriguez aside, expressed his objection to the prayer, and told him that the prayer violated PRPD regulations, which provided that "[a] strict separation shall be maintained between the church and state." (See attachment 1), *Marrero Mendez v. Pesquera et al*., 13-cv1203 (JAG).

Calixto-Rodriguez became upset and ordered Marrero-Méndez to abandon the formation. As Marrero- Méndez was walking away from the group, Calixto-Rodriguez shouted, in front of the rest of the officers, that Marrero-Méndez should stop and stand still until the prayer was finished. He then told the officers in formation that Marrero-Méndez was standing apart from the group because "he doesn't believe in what we believe in." Officer Marrero-Méndez felt humiliated. Obeying the order, he stood, with his back to the formation, until the prayer ended. *Id.*

In response to the events in the parking lot and Officer Marrero-Méndez's complaint about the religious coercion, Defendants subsequently targeted him for further harassment and retaliation, disarming him and demoting from his usual duties as a patrol officer. Instead, Officer Marrero-Méndez was assigned menial tasks like washing cars. Defendants were sued in their

personal and official capacities, and in the Complaint, Officer Marrero-Méndez requests both equitable relief and monetary damages against Defendants in their personal capacities, as allowed by section 1983 of the Civil Rights Act. 42 U.S.C. § 1983. Defendants argued that they were entitled to qualified immunity for their conduct. The district court disagreed, and the First Circuit affirmed the denial of qualified immunity in 2016, holding that a "reasonable officer in March 2012 would have known that appellants' conduct amounted to direct and tangible coercion, a paradigmatic example of an impermissible establishment of religion." *Marrero–Méndez*, 830 F.3d at 48.

After the First Circuit's ruling denying qualified immunity to Defendants, all discovery proceedings were completed and briefing for dispositive motions was scheduled. On June 5, 2017, however, Defendants, in their personal capacities, filed a Notice of Automatic Stay of Proceedings Pursuant to the Commencement of Case Under Title III of PROMESA. *See* 13-cv1203 Dkt. 125 (Attachment 2). On June 6, 2017, the Court clerk modified the docket to title the filing a "Motion to Stay." *Id.* Dkt 127. Through said motion, Defendants notified the District Court that they believe they are entitled to an automatic stay of the instant proceedings under Sections 362(a) and 922(a) of the Bankruptcy Code (11 U.S.C. §§ 362 and 922(a)), as a result of the filing of the Commonwealth of Puerto Rico's petition of debt adjustment under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).

Following Movant's objection,[2] the District Court determined that "all of Plaintiff's claims are covered by PROMESA's automatic stay. Thus, this case is stayed pursuant to 48 U.S.C. 2161(a) and 11 U.S.C. 362 (a), and 922(a). *Any request to lift or vacate the stay must be*

---

[2] *See* 13-cv1203, Dkt. 126 (Attachment 3)

*filed in the Bankruptcy Court in the District Court in Case No. 17-BK-03283(LTS).”* (Emphasis added).[3]

Accordingly, Movant is hereby requesting this Honorable Court to lift the stay imposed by the District Court in the original case or, alternately, to modify the stay as to allow the continuation of the litigation holding in abeyance any monetary claims for violations of the U.S. Constitution.

**ARGUMENT**

THE AUTOMATIC STAY IMPOSED UNDER PROMESA DOES NOT APPLY TO THE CLAIMS AGAINST DEFENDANTS IN THEIR PERSONAL CAPACITIES, AND EVEN IF THE AUTOMATIC STAY WERE PROPER HERE, IT SHOULD BE LIFTED PURSUANT TO THE *SONNAX* CRITERIA.

The Puerto Rico Oversight, Management, and Economic Stability Act (“PROMESA”), 48 U.S.C. §§ 2102-2241, is a *sui generis* bankruptcy-like statute enacted by Congress in June 2016 to address the imminent financial crisis in Puerto Rico. *See generally Peaje Inv. LLC v. García-Padilla*, 845 F.3d 505, 509 (1st Cir. 2017) (discussing the statute’s purpose). Title IV of PROMESA includes a temporary, automatic stay provision for debt-related litigation against the government of Puerto Rico upon the establishment of an Oversight Board for Puerto Rico. 48 U.S.C. § 2194(a)-(b). Title III of the statute also incorporates by reference many provisions of the Bankruptcy Code, including Sections 362 and 922 of the Bankruptcy Code, 48 U.S.C. § 2161(a), although it is unclear the extent to which these provisions are fully incorporated into the PROMESA statute.[4]

---

[3] *Id.* Dkt. 131 (Attachment 4)

[4] The District Court of Puerto Rico has evaluated similar stay requests under Sections 362(a) and 922(a), without making any distinction to the temporary automatic stay of Title IV of PROMESA. *See Vázquez-Carmona v.*

In evaluating a petition to lift an automatic stay under PROMESA, this Court has applied the factors enumerated by the United States Court of Appeals for the Second Circuit in *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir. 1990) ("*Sonnax*"). *See, e,g., Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) (citing *Sonnax*). These factors include (1) "whether relief would result in a partial or complete resolution of the issues," (2) whether there is a "lack of any connection with or interference with the bankruptcy case," (3) "the interests of judicial economy and the expeditious and economical resolution of litigation," (4) "whether litigation in another forum would prejudice the interests of other creditors," and (5) the "impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

The stay provisions of PROMESA are inapplicable here, however, because Movant's civil rights claims against the individual defendants are separate and completely unrelated to any claim for collection debt or credit of the nature that PROMESA was designed to address. *See, e.g. Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F.Supp.3d 508 (D.P.R. 2016) (discussing the application of the temporary stay of Title IV of PROMESA for claims brought by bonds holders). Even if an automatic stay were proper here under PROMESA, it should be lifted pursuant to the *Sonnax* standard. As discussed in detail below, since the Defendants are not debtors under terms of PROMESA, Movant's claim would not in any way prejudice the interests of PROMESA's creditors. Also, after five years of intense litigation at this advanced stage of the proceedings in which the parties have already completed discovery, a stay

*Department of Education,* Slip Copy, Civil No. 16-1846, 2017 WL 2352153 (D.P.R. 2017).

would be harmful to Plaintiff's right to a expeditious and final resolution of his constitutional claims Finally, Movant's request for equitable relief, namely the adoption of sound constitutional policies regarding religious practices within the Puerto Rico Police Department, is completely unrelated to any monetary claim and in no way affects the interest that Debtors seek to protect under PROMESA.

I. Because Defendants In Their Personal Capacities Are Not "Debtors" Under PROMESA, Movant's Claims Against Them Lack Any Connection To Or Interference With The Bankruptcy Case.

As mentioned above, Plaintiff's claim for compensatory relief is directed at Defendants in their personal capacities. Thus, Defendants are not entitled to an automatic stay of Plaintiff's claims for compensatory relief because Defendants are not "debtors" within the meaning of the PROMESA statute. Even assuming sections 362(a) and 922(a) of the Bankruptcy Code were fully incorporated into PROMESA, automatic stay only stays actions against a "debtor." *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (internal quotation marks omitted). "[I]t is universally acknowledged that an automatic stay . . . may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *Id*. (internal quotation marks omitted).

PROMESA provides for the adjustment of the Commonwealth's debts, initiated through a petition filed by the Oversight Board on behalf of a debtor, in this instance, the Commonwealth of Puerto Rico. 48 U.S.C. § 2164. Under PROMESA, a debtor means "the territory or covered territorial instrumentality concerning which a case under this subchapter has been commenced." See 48 U.S.C. § 2161(c)(2). Section 2162 also establishes that an entity may be a debtor under Section III if: "(1) the entity is (A) a territory that has requested the establishment of an

Oversight Board or has had an Oversight Board established for it by the United States Congress . . . ; or (B) a covered territorial instrumentality of a territory described in paragraph (1)(A); (2) the Oversight Board has issued a certification under section 2146(b) . . . for such entity; and (3) the entity desires to effect a plan to adjust its debts." 48 U.S.C. § 2162. The statute's definition of debtor does not encompass natural persons, and none of the Defendants, who are sued in their personal capacities, satisfies to those terms. Nor do the debtor in the PROMESA petition (i.e., the Commonwealth) and Defendants Guillermo Calixto, Ricardo Cruz Dominguez and Mario Rivera share an identity of interest sufficient to invoke the limited exception to this "universally acknowledged" rule. *Cf. In re Siskin*, 231 B.R. 514, 518–19 (Bankr. E.D.N.Y. 1999) (noting that special circumstances may exist where "there is such identity between a debtor and a third party that judgment against a non-debtor would be binding upon a debtor" so that the automatic stay would also apply to the non-debtor).

Movant's claims seeking compensatory relief against the individual officers in their personal capacities under Section 1983 of the Civil Rights Act, which provides for a private cause of action for constitutional violations. *Cao v. Puerto Rico*, 525 F.3d 112 (1st Cir. 2008). It is the individual Defendants, then, and not the Commonwealth, who are liable for compensatory damages, since state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. *See Hafer v. Melo*, 502 U.S. 21 (1991) (holding that (1) state officers may be personally liable for damages under § 1983 based upon actions taken in their official capacities; (2) officers' potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within their authority and necessary to performance of governmental functions; and (3) Eleventh Amendment

does not erect a barrier against suits to impose individual and personal liability on state officers under § 1983).

The automatic stay imposed in this case is founded on the premise that "the Commonwealth of Puerto Rico has assumed the costs of [Individual Defendants'] representation and possibly the payment of any adverse judgment,"[5] as authorized by Law 104 of June 29, 1955, as amended. P.R. Laws Ann. Title 32 Secs 3085 *et seq*. The benefits provided by Law 104 do not alter or modify the nature of Movant's Section 1983 claim against the individual defendants. Puerto Rico's Law 104 permits an official, charged in a civil rights action relating to official duties, to voluntarily request legal representation by the Commonwealth, and it permits the Commonwealth to subsequently assume payment of any judgment. P.R. Laws Ann. tit. 32, § 3085. But, under the statute, labeled by the First Circuit as "idiosyncratic" in nature, the Puerto Rico Secretary of Justice has discretion to decide in which cases the Commonwealth assumes representation and "subsequently, after considering the findings of the court or which arise from the evidence presented," whether it is "in order" to pay the judgment. *Id.* § 3087. *See Whitfield v. Municipality of Fajardo,* 564 F.3d 40, 42 (1st Cir. 2009); *Ortiz-Feliciano v. Toledo Díaz,* 175 F.3d 37 (1st Cir. 1999); *Burgos-Yantin v. Municipality of Juana Diaz, Slip Copy,* Civil No. 07–1146 (JA), 2013 WL 435203 (D.P.R. Jan. 2, 2013). Moreover, under the Eleventh Amendment the Movant is unable to request an execution of monetary judgment against the Commonwealth, even when the Secretary of Justice has granted the judgment debtors' request to indemnify them with respect to the judgment. *See Ortiz-Feliciano supra*, at 40. *Pietri-Giraldi v. Alvarado-Santos* 443 F. Supp. 2d 214, 217 (D..P.R. 2006) (holding that pursuant to Section 3085 of Law 104, the

[5] *See* Attachment 4, Order on Motion to Stay

claim for indemnification concerning payment of judgment lies with defendant public officers, not with the plaintiff).

Hence, the benefits provided by Law 104 do not constitute a substitution of parties or an admission of liability for the Commonwealth. It ultimately is an arrangement between the Defendants and Puerto Rico Department of Justice in which the Secretary retains the discretion to provide ongoing legal representation and potentially pay the judgment against individual defendants pursuant to certain conditions established by law, and subject to the available resources. *See* P.R. Laws Ann. Tit. 32 sec. 3092[6]; P.R. Laws Ann. Tit. 32 sec. 3085 ("[T]hese provisions shall not be construed, for any reason whatsoever, *as making the Commonwealth an insurer of the aforesaid public servants, nor as a waiver of the sovereign immunity of the Commonwealth.")* (emphasis added). Accordingly, contrary to Defendants' suggestion, there is no identity of interest between themselves and the Commonwealth sufficient to apply the automatic stay to this case.[7] Plaintiff's ability to protect his fundamental constitutional rights,

6 Section 3092 of Law 9 provides that "[t]he Secretary of Justice shall notify the Secretary of the Treasury of his determination regarding the payment, on the basis of the provisions of §§ 3085-3092a of this title. If the Secretary of Justice decides payment should occur, the Secretary of the Treasury shall pay the judgment, costs and attorney's fees imposed on the defendants *from available funds* in the Treasury of Puerto Rico. P.R. Laws Ann. Tit. 32 sec. 3092.

7 The order to stay in this case heavily relied on *In re City of Stockton*, 484 B.R. 372 (Bankr. E.D. Cal. 2012). However, *Stockton* does not support Defendants' argument. As Defendants note, *Stockton* was premised on California Government Code § 825, which—contrary to Movant's contention—is *not* "very similar to the provisions" of Law 104. *See* Mot. to Stay ¶ 10 & n. 5. As discussed above, Law 104 confers discretion on the Commonwealth as to whether it will provide legal representation to an official who requests it, and thereafter, it gives discretion to the Commonwealth as to whether it will pay any damages award on behalf of an official who requests it—a determination that is not made until after any such award is entered against the official. Pursuant to Law 104, the initial determination to grant legal representation to the public official sued for violations of a citizen's civil rights and the subsequent determination of whether the Commonwealth will assume the payment of judgment are two separate and independent proceedings. The payment of the judgment is not automatic, but at the discretion if the Secretary of Justice. *See Ortiz et al. v. E.L.A.*, 158 D.P.R. 62, 71-72 (P.R. 2002). California law, by contrast, is not discretionary, providing that, once a municipal official requests representation in writing, and the official "reasonably cooperates in good faith in the defense of the claim or action, the public entity *shall pay any judgment* based thereon or any compromise or settlement of the claim or action to which the public entity has agreed." Cal.

and the authority of this District Court to enforce federal law through Section 1983 of the, should not yield to Puerto Rico's idiosyncratic Law 104.

II. In Any Event, Plaintiff's Claim For Equitable Relief Should Not Be Stayed Under PROMESA.

PROMESA provides that "nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory." 48 U.S.C. § 2106. The automatic stay authorized by the PROMESA statute does not, therefore, "apply to suits to enforce federal rights*.*" *See Vazquez-Carmona v. Dep't of Educ. of Puerto Rico*, No. CV 16-1846 (GAG), 2017 WL 2352153, at *1 (D.P.R. May 31, 2017). Plaintiff's complaint seeks equitable relief against Defendants for their egregious violation of his First Amendment rights – specifically, the adoption of sound constitutional policies related to religious practices in the work environment to prevent constitutional violations as the one narrated in the complaint. PROMESA should not be used as a vehicle to thwart that relief. *See id.*

IIIV. A Stay Would Impose Undue Hardship And Prejudice On Plaintiff, Preventing Him From Obtaining An Expeditious Resolution Of His Constitutional Claims.

Finally, a stay at this stage of the judicial proceedings is unwarranted, considering that this litigation has taken more than four years, discovery is complete, the First Circuit has conclusively resolved the qualified immunity issue, and only dispositive motions and the trial

---

Gov't Code § 825 (emphasis added). Moreover, as discussed above, PROMESA has a very specific definition of "debtor," which did not apply in *Stockton*.

remain. See Dkt. 120. A stay would place this litigation in an indefinite procedural limbo, leaving Plaintiff without any permanent equitable relief and unfairly prejudicing his ability to present his case should there be a trial.

Moreover, even assuming that Plaintiff's claim for compensatory relief might eventually fall within the reach of PROMESA, it does not qualify for a stay now because it is not currently a payable claim against the Commonwealth's resources: Damages would have to be awarded to Plaintiff; the Secretary of Justice would have to agree for the Commonwealth to pay those damages on behalf of Defendants; and it would have to be determined whether that liability would be qualify as a payment of credit, obligation, or debt as defined under PROMESA. Under these circumstances, public policy favors the resolution of this civil rights action and denial of Defendants' request for a stay. *See In re Santa Clara County Fair Ass'n, Inc*., 180 B.R. 564, 566-567 (9th Cir. B.A.P. 1995) (holding that the Bankruptcy Court did not abuse its discretion in modifying an automatic stay to allow prosecution of a district court civil rights action, concluding that "the public policy favored the resolution of civil rights actions and outweighed any competing policy served by the automatic stay under the circumstances").

**CONCLUSION**

This Court should take care to apply PROMESA in a manner that honors the clearly established constitutional rights of individuals like Movant Alvin Marrero-Méndez. As the District Court of Puerto Rico recently noted,

> In Puerto Rico's unique circumstances, any over breadth in the application of the automatic stay [under PROMESA] implicates most difficult issues of statutory interpretation and possibly transgress the constitutional rights of United States citizens. Let's

> be clear – the Commonwealth of Puerto Rico continues to be a viable government. Its citizens continue to enjoy all their constitutional rights (and it would appear they continue to enjoy all their federal statutory rights as well)'whatever may happen to their monetary claims against the Commonwealth.

*Cruz Rodríguez v. Administración de Corrección.* Civil Action 17-01464 (WGY), Order Re Purported Stay, Dkt 11, June 20, 2017 (Young, D.J., sitting by designation) (Attachment 5). This statement eloquently summarizes the core of Movant's arguments regarding the use of PROMESA by the Government in order to avoid accountably for violations of constitutionality protected rights. The unique financial crisis in Puerto Rico that PROMESA is intended to deal with should not be used as free pass for individual government actors to violate fundamental rights, nor should constitute an additional burden for litigants in Puerto Rico to have access to a fair judicial remedy in federal court.

WHEREFORE, Plaintiff respectfully requests that this Court to lift the stay of in this case, or alternately allows the continuation of the judicial proceedings holding in abeyance any monetary relief the Commonwealth would be compelled to comply by judgment.

Respectfully submitted, in San Juan Puerto Rico, on August 8, 2017

/s/ Josue Gonzalez-Ortiz,
Josue Gonzalez-Ortiz, Esq.
USDC-PR NO: 221808
William Ramirez-Hernandez, Esq.
American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Ave. Ponce de Leon
San Juan, Puerto Rico, 00918
Tel: 787-753-8493
Fax: 787-753-4268

Email: jgonzalez-ortiz@aclu.org

Daniel Mach (Pro Hac Vice Admission)
Heather L. Weaver (Pro Hac Vice Admission)
American Civil Liberties Union Foundation
915 15th Street, NW, Suite 600
Washington, D.C. 20005
Tel: 202- 675-2330
Fax: 202- 546-0738
Email: dmach@aclu.org
hweaver@aclu.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this same date, I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Josue Gonzalez-Ortiz,

Josue Gonzalez-Ortiz, Esq.
USDC-PR NO: 221808