## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.*,

     Debtor. [1]

-----------------------------------------------------------------------------x

CENTRO DE PERIODISMO INVESTIGATIVO, INC.,

     Movant,

     against

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Respondent.

-----------------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS COMMONWEALTH REPRESENTATIVE, TO MOTION FOR RELIEF FROM AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); and (*iii*) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567) (Last Four Digits of Federal Tax ID: 3808).

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

RELEVANT BACKGROUND ..................................................................................4

ARGUMENT ............................................................................................................5

     A.     CPI's Suit Would Interfere with the FOMB's Mission and the Title III
Cases. ..........................................................................................................8

     B.     Lifting the Stay Would Prejudice Creditors............................................10

     C.     The Judicial Efficiency Factors Also Weigh Against Lifting the Stay.................11

     D.     The "Complete Resolution" Factor Favors Maintaining the Stay. ........................13

     E.     The Balance of Harms Favors Maintaining the Stay. ...........................................14

     F.     The Allegedly "Constitutional" Nature of CPI's Claim Is Irrelevant...................16

     G.     The Remand of the *Bhatia Gautier* Matter Is Irrelevant.......................................17

CONCLUSION........................................................................................................18

REQUEST FOR HEARING....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Arizona v. United States*,
 567 U.S. 387 (2012).................................................................................................6

*Atiles-Gabriel v. Commonwealth*,
 No. 15-2108, 2017 WL 2709757 (D.P.R. June 23, 2017). ...................................17

*Barton v. Barbour*,
 104 U.S. 126 (1881)...............................................................................................11

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
 217 F. Supp. 3d 508 (D.P.R. 2016).................................................................7, 16

*In re 234-6 West 22nd St. Corp.*,
 214 B.R. 751 (Bankr. S.D.N.Y. 1997)...................................................................6

*In re Breitburn Energy Partners LP*,
 No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017).....................7

*In re City of Stockton*,
 484 B.R. 372 (Bankr. E.D. Cal. 2012).......................................................9, 11, 14

*In re Cummings*,
 221 B.R. 814 (Bankr. N.D. Ala. 1998) ................................................................13

*In re Jefferson Cty.*,
 491 B.R. 277 (Bankr. N.D. Ala. 2013) ................................................................10

*In re Motors Liquidation Co.*,
 No. 09-50026, 2010 WL 4630327 (S.D.N.Y. 2010).......................................11, 14

*In re Murrin*,
 477 B.R. 99 (D. Minn. 2012) ...............................................................................13

*In re Plumberex Specialty Prod., Inc.*,
 311 B.R. 551 (Bankr. C.D. Cal. 2004)..................................................................10

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*,
 200 B.R. 514 (Bankr. S.D.N.Y. 1996)..................................................................12

*In re Residential Capital, LLC*,
 No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)............8, 10, 14

ii

*In re Sonnax Indus., Inc.*,
   907 F.2d 1280 (2d Cir. 1990) ............................................................................................7

*In re Taub*,
   413 B.R. 55 (Bankr. E.D.N.Y. 2009) ..............................................................................13

*In re Unanue-Casal*,
    159 B.R. 90 (D.P.R. 1993) .............................................................................................6, 7

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ..........................................................................................................11

*Vazquez-Carmona v. Dep't of Educ.*,
    No. 16-1846, 2017 WL 2352153 (D.P.R. May 31, 2017) ...............................................17

**STATUTES**

5 U.S.C. § 552 ...........................................................................................................................15

11 U.S.C. § 362 ...........................................................................................................................4

11 U.S.C. § 362(a)(1) ..................................................................................................................4

11 U.S.C. § 362(d)(1) ..................................................................................................................6

11 U.S.C. § 362(d)(2)-(4) ............................................................................................................6

11 U.S.C. § 922 ...........................................................................................................................9

48 U.S.C. § 2127(b) ..................................................................................................................10

Puerto Rico Oversight, Management, and Economic Stability Act, § 4 .....................................16

Puerto Rico Oversight, Management, and Economic Stability Act, § 101(a) ...............................4

Puerto Rico Oversight, Management, and Economic Stability Act, § 105 ................................2, 9

Puerto Rico Oversight, Management, and Economic Stability Act, § 106(e) ...............................9

Puerto Rico Oversight, Management, and Economic Stability Act, §§ 201-02 ............................4

Puerto Rico Oversight, Management, and Economic Stability Act, § 301(a) ............................3, 4

Puerto Rico Oversight, Management, and Economic Stability Act, § 315(a) ...............................4

Puerto Rico Oversight, Management, and Economic Stability Act, § 315(b) ...............................4

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico ("FOMB"), as

representative of the Commonwealth of Puerto Rico pursuant to section 315(b) of the Puerto

Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-

2241, and Defendant in the matter of *Centro de Periodismo Investigativo ("CPI") v. Financial*

*Oversight and Management Board for Puerto Rico*, Civil No. 17-1743 (JAG) (D.P.R.), and

respondent in this contested matter, hereby avers as follows:

## PRELIMINARY STATEMENT

Dissatisfied with the disclosures Congress requires the FOMB to provide pursuant to

PROMESA and the materials Congress protects from public disclosure, CPI has brought its own

action to compel disclosures beyond what Congress requires and which interfere in the FOMB's

ability to carry out PROMESA.  And, CPI wants this Court to bless its pursuit of that agenda.

We respectfully submit that to state CPI's request is to refute it.

Section 4 of PROMESA, labeled "Supremacy," makes clear that Congress intends

PROMESA to preempt Commonwealth law.   PROMESA carefully specifies what it wants the

FOMB to disclose and what should or may not be disclosed.  Section 101(h)(1) of PROMESA

requires public disclosure of the bylaws, rules, and procedures governing the FOMB's activities

under PROMESA.  Section 109(b) requires disclosure by FOMB members and designated staff

of their financial interests.  Conversely, section 101(h)(4) expressly provides the FOMB may

conduct business it specifies in "executive session," which shall be "closed to the public."

PROMESA section 104(p) requires the FOMB to publicize the findings of any investigation it

performs pursuant to section 104(o) into the disclosure and selling practices of Commonwealth

debt.  Significantly, Congress requires disclosure of the investigation's findings, but not all

correspondence and other data leading up to the findings.

PROMESA section 108(a)(1) expressly bars the Governor and Legislature from exercising, among other things, any oversight or review of the FOMB and its activities.  Yet, CPI requests the Court to approve its pursuit of oversight and review beyond what PROMESA allows, notwithstanding that PROMESA section 105 insulates the FOMB and all its members and employees from any liability or obligation for any claim arising from its actions taken to carry out PROMESA.

Manifestly, for CPI's action to have any merit at all, Congress had to have wasted its time announcing PROMESA's supremacy and carefully designating what the FOMB must disclose, if CPI is entitled to virtually all of FOMB's documents pursuant to the Puerto Rico Constitution.

Puerto Rico is in the midst of a grave fiscal and economic crisis.  One of Congress's responses to that crisis was to create the FOMB, a Board of uncompensated individuals charged with overseeing the Commonwealth's attainment of fiscal responsibility and capital market access.  The Commonwealth and several of its most indebted instrumentalities have commenced PROMESA Title III cases to restructure their debts while at the same time they are implementing fiscal and operational reforms prescribed by their FOMB-certified Fiscal Plans.  The FOMB is the representative of the debtor in each of the five Title III cases.  These are crucial and time-consuming tasks.

The FOMB and its members should not be distracted from these critical tasks by being forced to defend against CPI's lawsuit seeking nearly all the FOMB's documents, including those Congress did not require to be disclosed and expressly protected from disclosure  Contrary to CPI's suggestion, its lawsuit is no "simple matter."   CPI seeks production of sixteen broad categories of documents, including every communication between the FOMB and a Commonwealth official and every communication between the FOMB and the federal

2

government.  The lawsuit will involve the demonstration that its varied document requests are preempted by PROMESA.  For whatever production is not preempted—if any—collecting documents from every member, reviewing and redacting if necessary, and producing that volume of documents is acutely burdensome when the FOMB's focus must be on its ongoing restructuring efforts and statutory missions.  Although we do not believe any production would be required beyond what the FOMB already discloses, any additional production will entail disputes over privilege (including the executive, deliberative-process, attorney-client, and work-product privileges).

CPI's suit has barely gotten off the ground because U.S. District Judge Garcia-Gregory determined it was automatically stayed pursuant to Bankruptcy Code section 362(a), made applicable by PROMESA section 301(a).  Defending this suit would impose a huge burden on the FOMB at a critical juncture in the Title III cases for minimal, if any benefit.  As the Court knows, the FOMB maintains a website on which it posts extensive categories of documents required or permitted by PROMESA, including without limitation, its contracts, its bylaws, its codes of conduct, its members' financial disclosures, its certified fiscal plans and budgets, and key correspondence with the Governor.  All docketed documents in each of the Title III cases are also online on websites maintained by Prime Clerk and Epiq.  Moreover, all the foregoing documents are available to the public at no charge whatsoever.

Consequently, there is no basis for stay relief.  Any burden on CPI caused by delaying its suit is minor.  CPI has already brought suit against the Commonwealth seeking many of these same documents, and it can make a FOIA request to the federal government for the communications between the FOMB and the federal government.  Conversely, the burden on the FOMB from defending this suit is significant.

By making the FOMB an entity within the Commonwealth government, Congress assured the FOMB would have the benefit of the automatic stay.  More importantly, Congress clearly preempted CPI's action by announcing the supremacy of PROMESA and making clear what must be disclosed, while protecting the FOMB from other oversight and review.

### RELEVANT BACKGROUND

The FOMB was created by Congress "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  PROMESA § 101(a).  To that end, Congress imbued the FOMB with significant authority over the Commonwealth, including the "sole discretion" to review and certify the Commonwealth's budgets and long-term Fiscal Plan, *id.* §§ 201-02, the power to commence a Title III case to allow the Commonwealth to restructure its debts under Court supervision, *id.* § 315(a), and the authority to serve as the Commonwealth's exclusive representative in its Title III case, *id.* § 315(b).

On May 3, 2017, the FOMB commenced a Title III case on behalf of the Commonwealth. Pursuant to section 362(a)(1) of the Bankruptcy Code, made applicable to the Commonwealth's Title III case by PROMESA § 301(a), the commencement of the Title III case stayed "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ."  11 U.S.C. § 362(a)(1); *see also* PROMESA § 301(a) (incorporating 11 U.S.C. § 362 into Title III case).

Since then, the FOMB has commenced four additional Title III cases – on behalf of COFINA, HTA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Electric Power Authority.  It is also engaged in Court-supervised mediations involving the five entities for which Title III cases have been filed, as well as other Commonwealth instrumentalities.

4

On June 1, 2017, the movant, CPI, filed a complaint with the United States District Court for the District of Puerto Rico seeking to compel the FOMB to produce documents to CPI. *See* Ex. 1.  CPI contends the Puerto Rico Constitution guarantees citizens a right to access certain government documents and that this right extends to documents in the possession of the FOMB. *Id.* ¶¶ 5.1-5.12.  Not even mentioning PROMESA's supremacy, CPI seeks an order requiring the FOMB to turn over sixteen broad categories of documents, including (*i*) all communications and documents exchanged between the FOMB and "any [] agency or official of the Commonwealth"; (*ii*) all records relating to communications between the FOMB and "any agency of the federal government" or "federal government official"; and (*iii*) nine separate categories of economic data concerning various agencies of the Commonwealth government.  *Id.* at 20-21.

On June 13, the FOMB moved to reassign CPI's case to this Court as a related case under Local Rule 3A.  The district court denied the motion, concluding that "[a]t this time," it "sees no reason to transfer this case."  Ex. 2 at D.I. 9.  The district court, however, ordered the parties to brief the issue of whether the case was subject to the automatic stay.  *Id.*

On July 14, the district court ruled CPI's lawsuit is stayed under 11 U.S.C. § 362(a)(1). Ex. 3.  As the Court observed, PROMESA created the FOMB as "an entity within the [Commonwealth government]" and decreed that all of the FOMB's funding would be paid by the Commonwealth.  *Id.* at 2 (citing 48 U.S.C. §§ 2121(c)(1), 2127(b)).  Accordingly, "an action against the Board is an action against the Commonwealth" that is stayed under 11 U.S.C. § 362(a)(1).  *Id.*

For the reasons set forth below, CPI's request for stay relief should be denied.

## ARGUMENT

Context matters.  This is no garden variety stay relief motion.  CPI's motion asks the Court to allow CPI to consume the FOMB's uncompensated members' time and the

Commonwealth's resources in pursuit of its quest for the District Court to rule that CPI can

enforce the Puerto Rico Constitution to compel more disclosure than PROMESA requires, and

some disclosure PROMESA shelters, notwithstanding PROMESA's supremacy and cardinal

principles of federal express, conflict, and field preemption.  *See Arizona v. United States*, 567

U.S. 387, 397-400 (2012).

An order lifting the automatic stay is an "extraordinary remedy."  *In re 234-6 West 22nd

St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  As such, a court may lift the automatic

stay only upon a showing of cause.  11 U.S.C. § 362(d)(1)  (incorporated into Title III case by

PROMESA § 301).[1]  "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159

B.R. 90, 95-96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).  In deciding whether "cause" to

lift a stay exists, courts typically balance a number of factors, including:

(1)     whether relief would result in complete or partial resolution of the issues;

(2)     the lack of any connection with or interference with the bankruptcy case;

(3)     whether the foreign proceeding involves the debtor as fiduciary;

(4)     whether a specialized tribunal has been established to hear the cause of action at
        issue;

(5)     whether the debtor's insurance carrier has assumed full financial responsibility for
        defending the litigation;

(6)     whether the action essentially involves third parties rather than the debtor;

(7)     whether the litigation could prejudice the interest of other creditors;

(8)     whether a judgment in the foreign action is subject to equitable subordination;

(9)     whether movant's success in the foreign proceeding would result in a judicial lien
        avoidable by the debtor;

---

[1]  Although there are other grounds for lifting the stay, *see* 11 U.S.C. § 362(d)(2)-(4), CPI moves
only on the basis of cause.

(10)     the interest of judicial economy and the expeditious and economical
determination of litigation for the parties;

(11)     whether the foreign proceedings have progressed to the point where the parties are
prepared for trial; and

(12)     the impact of the stay on the parties and the "balance of hurt."

*In re Unanue-Casal*, 159 B.R. at 95-6.  These are commonly referred to as the "*Sonnax* factors"

because they derive from the Second Circuit decision in *In re Sonnax Indus., Inc.*, 907 F.2d

1280, 1286 (2d Cir. 1990).

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case

balancing of the various harms at stake" and will lift the stay only if the harm engendered by

allowing the stay to remain in place outstrips the harm caused by lifting it.  *Brigade Leveraged*

*Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518, 529 n.12 (D.P.R.

2016).  CPI bears the burden of establishing cause, *id.*, and when the movant is not a secured

claimholder claiming a lack of adequate protection, that burden is a high one, *In re Breitburn*

*Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

The burden is impossible for CPI to carry here, where so much disclosure already exists on the

FOMB's website and elsewhere, and additional disclosure would require the upending of

PROMESA's supremacy.

It is therefore no surprise that the *Sonnax* factors point squarely towards maintaining the

stay and against awarding the extraordinary remedy CPI seeks here.  *First*, forcing the FOMB to

defend against CPI's suit would interfere with this and the other Title III cases and the

Commonwealth's overall recovery effort by diverting the FOMB's attention and resources away

from the critical tasks assigned to it by Congress.  *Second*, the FOMB's defense costs would be

paid by the Commonwealth; accordingly, allowing the suit to go forward would drain

Commonwealth resources and thereby prejudice its creditors.  *Third*, there is no efficiency to be

gained by allowing the suit to go forward.  CPI's suit has barely gotten off the ground, and it will

take substantial time to resolve.  Where, as here, a case is in its nascent stages, it is not efficient

to lift the stay.  *Fourth*, CPI's case will not resolve any preliminary non-bankruptcy issues that

will expedite the Title III case.  *Fifth*, the balance of harms strongly favors maintaining the stay.[2]

### A.    CPI's Suit Would Interfere with the FOMB's Mission and the Title III Cases.

Contrary to CPI's contention, lifting the stay to allow CPI's case to go forward would

interfere with this and the other pending Title III cases and the overall effort to restore Puerto

Rico to fiscal health.  As part of PROMESA's mandate, the FOMB—a Board comprised of

seven voting members, an *ex officio* member, and eight staff members—is now acting as the sole

representative of the Commonwealth in this Title III case, as well as the representative of four

Commonwealth instrumentalities in their Title III cases.  At the same time, the FOMB is

overseeing the Commonwealth's recovery effort, including the certification and implementation

of the Fiscal Plans developed by the Commonwealth and its covered instrumentalities and efforts

to revitalize Puerto Rico's infrastructure.  Distracting the FOMB from these critical tasks by

forcing it to defend against claims seeking production of documents would only serve to tax and

distract the FOMB's efforts to lead Puerto Rico's fiscal recovery and the Commonwealth's Title

III actions.  *See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6

(Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in

non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors

to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter

11 cases.").

---

[2] CPI does not argue that any of the other *Sonnax* factors supports lifting the stay.

In this regard, *In re City of Stockton* is directly on point.  484 B.R. 372 (Bankr. E.D. Cal. 2012).  There, plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy.  *Id.* at 374.  The case was stayed under 11 U.S.C. § 922.  484 B.R. at 374.  Plaintiff then moved to lift the stay, arguing that allowing the suit to go forward would not interfere with the Chapter 9 case.  *Id.* at 378.  The court disagreed, holding that plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case."  *Id.*  "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months."  *Id.*

The holding in *City of Stockton* applies doubly to the FOMB, whose time and attention is critical not only to the success of five separate Title III cases, but also to the very survival of the Commonwealth.  Congress recognized that the FOMB's full attention would be required for Puerto Rico's recovery efforts to be successful, and it therefore enacted measures to protect the FOMB from lawsuits that would distract from its task.  *See* PROMESA § 105 (broadly exempting the FOMB and its members from claims); PROMESA § 106(e) (barring suits challenging the FOMB's certification decisions).  Congress further protected the FOMB from distracting lawsuits by making it an entity within the government of Puerto Rico, PROMESA § 101(c)(1), which gives it the benefit of the Title III automatic stay, *see* Ex. 3 at 2.  Forcing the FOMB to defend against CPI's suit would undermine the goals of PROMESA by unnecessarily distracting the FOMB from its all-consuming, critical tasks at a time when its focus must be on guiding successful Title III reorganizations and other efforts to improve the Commonwealth's economic prospects.

9

Accordingly, CPI's contention that the Commonwealth would not be harmed if the stay is lifted because the Commonwealth is not a defendant in CPI's suit misses the mark. Dkt. 724 at 5. The reality is that the Commonwealth would be harmed if the stay is lifted because the FOMB would be pulled away from its oversight duties at a critical juncture in the five pending Title III cases. *See In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay"; "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"). Moreover, it is undisputed that the costs of defending against CPI's claims are ultimately borne by the Commonwealth.

### B.    Lifting the Stay Would Prejudice Creditors.

CPI asserts without support that "[a]llowing the Litigation to proceed will cause absolutely no prejudice to the interest of other creditors." Dkt. No. 724 at 5. That *ipse dixit* is false. Any time consumed by the CPI action is time the creditors want the FOMB spending on their claims, mediations, and litigation. Any money expended by the FOMB to defend against CPI's claim would come from the Commonwealth's coffers. *See* 48 U.S.C. § 2127(b). Accordingly, defending this suit would reduce the amounts available for the Commonwealth's creditors in a Title III restructuring, a factor that numerous courts have recognized counsels against lifting a bankruptcy stay. *See, e.g.*, *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Residential Capital*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11

10

plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09-50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

### C.     The Judicial Efficiency Factors Also Weigh Against Lifting the Stay.

*Sonnax* factors four, ten, and eleven also support maintaining the stay because CPI's lawsuit had not progressed beyond the filing of the complaint before it was stayed.  Accordingly, the parties are nowhere close to being prepared for trial or a final resolution (*Sonnax* factor 11). To the contrary, if the case were to continue, the FOMB would move to dismiss on a number of grounds, including federal preemption and the *Pennhurst* and *Barton* doctrines.[3]

Even if CPI were able to survive a motion to dismiss, it would have to overcome objections to its far-reaching document demands, and there would almost certainly be extensive disputes concerning the applicability of various privileges (including the executive, deliberative-process, attorney-client, and work-product privileges) given the unbridled demands for the FOMB's communications with the United States government and the Commonwealth. Accordingly, CPI's assertion that its litigation is a "simple matter" that "will be resolved expeditiously,"  Dkt. No. 724 at 5, is only true to the extent CPI loses, which it almost certainly

---

[3] The *Pennhurst* doctrine holds that that federal courts lack subject-matter jurisdiction over suits against state entities for the violation of state law in carrying out their official duties. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).  The *Barton* doctrine holds that suit against a trustee or other representative of an insolvent entity under court supervision requires prior leave of the bankruptcy court (here, the Title III court) as such litigation affects the administration of the case.  *Barton v. Barbour*, 104 U.S. 126, 127-29 (1881).

will on the ground of federal preemption.  To any extent that CPI's complaint is not dismissed, this is far from  a "simple matter."

Because CPI's case is in its infancy, lifting the stay would not promote judicial efficiency (*Sonnax* factor 10).  *See* Dkt. No. 668 (Order from this Court refusing to lift stay where "the Litigation is in its very early stages").  For that reason, this case is easily distinguishable from other matters where this Court has lifted the stay.  For instance, this Court allowed an arbitration to proceed because the hearing in that matter had already occurred and the parties were merely waiting for the award.  *See* Dkt. No. 620; *see also* Dkt. No. 617 (lifting stay for sole purpose of determining motion to dismiss in part because Commonwealth had already filed its moving papers).  Where another tribunal has already made considerable progress towards resolving an issue, it is efficient to allow that tribunal to finish what it started.  Here, however, CPI's case has not gotten off the ground— all that has happened is that a complaint was filed, a reassignment of the case to this Court was denied, and it was determined to be automatically stayed.  There is thus no efficiency gained by allowing the case to go forward during the stay.[4]

Moreover, many of the disputes over executive and attorney-client privilege likely to arise from any portion of CPI's litigation that survives a motion to dismiss, are also likely to be adjudicated by this Court during discovery in the Title III cases.  Efficiency is not promoted by having the same issues litigated concurrently in front of two separate tribunals.  *See, e.g.*, *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996), *corrected* (Sept. 18, 1996) (denying stay relief in part because "necessity of

---

[4]  *Sonnax* factor 4 also counsels against lifting the stay because there has not been any special tribunal constituted to resolve CPI's case.

simultaneously conducting two proceedings in two different courts regarding [the same issue] would be neither expeditious nor economical").[5]

### D.     The "Complete Resolution" Factor Favors Maintaining the Stay.

CPI is wrong when it argues that the first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—supports lifting the stay.  According to CPI, litigating whether it is entitled to the documents it seeks would "completely resolve the question of whether the CPI has the right to access the documents it has requested."  Dkt No. 724 at 5.  In so arguing, CPI distorts the meaning of the first *Sonnax* factor.  It is not sufficient that the separate litigation would eventually resolve the issues *in that litigation*.  If that were the test, the first *Sonnax* factor would *always* favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.

Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant *to the bankruptcy case*.  *See, e.g.*, *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).  CPI's litigation would not resolve any issues remotely relevant to the

---

[5] In addition, in conjunction with the Title III cases, the FOMB is engaged in extensive and multifaceted negotiations with creditors in an effort to reach a consensual restructuring.  The production of information – including potentially confidential communications the disclosure of which could put the FOMB at a disadvantage in the negotiations – is more appropriately overseen by this Court.

Commonwealth's Title III plan or to financial claims made against the Commonwealth, and therefore the first *Sonnax* factor does not support lifting the stay.

Where the non-bankruptcy litigation would be unable to resolve an issue expeditiously, the first *Sonnax* factor weighs against lifting the stay. *See, e.g.*, *In re Motors Liquidation*, 2010 WL 4630327, at *4 (holding that the first *Sonnax* factor supported maintaining the stay because "the bankruptcy court reasonably found that granting Appellant relief from the stay would more likely expose [the debtor] to protracted litigation rather than speedily resolve the ERISA suit.").

### E.    The Balance of Harms Favors Maintaining the Stay.

Lifting the stay to permit CPI's case to proceed would have a damaging effect on the Commonwealth's Title III case (as well as the other pending Title III cases) and the Commonwealth's overall restructuring efforts. Time is precious for the Commonwealth and its people, and time spent on the CPI action is FOMB time not spent on its statutory missions including the restructurings. The FOMB is a Board comprised of seven voting members and one *ex officio* member (supported by only eight staff members). The FOMB is responsible for overseeing all aspects of the Commonwealth's recovery effort as well as its efforts to revitalize its infrastructure. Forcing the FOMB to expend time, attention, and resources defending against CPI's lawsuit would only serve to distract the FOMB from the tasks it was commissioned by Congress to undertake. The FOMB should not be sidetracked from its critical endeavor. *See, e.g.*, *In re Residential Capital,* 2012 WL 3860586, at *8 (denying motion to lift stay and concluding that "the balance of the harms[] weighs in favor of maintaining the stay because the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend [] in the [] Litigation is great in light of their ongoing chapter 11 cases"); *In re City of Stockton*, 484 B.R. at 378 (declining to lift stay of case against officials of debtor because "[i]t is

14

apparent to the court that [the officials'] undivided time and attention will continue to be required [for the chapter 9 case] at least for a number of months").

Conversely, any harm caused by delaying CPI's suit would be minor.  CPI acknowledges in its complaint that it first requested the documents at issue in the fall of 2016. Ex. 1, ¶¶ 4.16-4.14.  It nevertheless did not bring a suit seeking the documents until May 2017.  If acquiring these documents were an urgent matter, CPI would not have waited more than half a year to press for them.

Moreover, many of the most significant documents CPI seeks are *already available* to CPI on the FOMB's web site.  *See* https://juntasupervision.pr.gov/index.php/en/documents/ (last visited August 5, 2017).  The available documents include the FOMB members' financial disclosure forms (requested by CPI in Ex. 1 at 21, ¶ p); FOMB meeting minutes (requested in Ex. 1 at 21, ¶ o); the FOMB's contracts with private entities (requested in Ex. 1 at 21, ¶ m); various official communications between the FOMB on the one hand and the Commonwealth or the federal government on the other (requested in Ex. 1 at 21, ¶¶ k-l); and scores of other documents pertaining to the FOMB's oversight of the Commonwealth and its instrumentalities. The web site is frequently updated with new documents, including several that were uploaded earlier this month.  Accordingly, any harm to CPI from delaying its lawsuit has been mitigated.

Furthermore, CPI has other avenues for acquiring many of the documents it seeks through this litigation.  For example, CPI has alleged that many of the documents are in the possession of federal agencies.  *See, e.g.*, Ex. 1, ¶ 4.23 (seeking disclosure forms submitted to the U.S. Department of Treasury); *id.* at 21, ¶ 2(k) (seeking communications between FOMB and "any agency of the federal government").  CPI can request those documents directly from the federal government under the Freedom of Information Act.  *See* 5 U.S.C. § 552.  Moreover, CPI

15

has filed a separate lawsuit against Governor Ricardo Rosselló Nevares seeking many of these same documents, *see Centro de Periodismo Investigativo, Inc. v. el Gobernador del Estado Libre Asociado de Puerto Rico, et.al*, SJ2017cv00396 (C.P.R. June 1, 2017), and the Commonwealth has already produced some of the documents that CPI seeks from the FOMB.  *See* Ex. 1 ¶ 4.5(a)-(i); *id.* at 20-21 ¶¶ 2(a)-(i), (l).

> **F.       The Allegedly "Constitutional" Nature of CPI's Claim Is Irrelevant.**

Having failed to establish cause to lift the stay, CPI resorts to arguing that it is entitled to special treatment because it has brought a claim under the Puerto Rico Constitution.  Dkt. No. 724 at 6-7.  As explained above, CPI's reliance on the Puerto Rico Constitution is actually the reason its action should be dismissed based on federal preemption.  Moreover, this Court has already squarely rejected that position.  *See Brigade Leveraged Capital*, 217 F. Supp. 3d at 526 ("The mere fact that plaintiffs bring claims pursuant to the Federal and Commonwealth Constitutions does not, however, entitle them to automatic circumvention of the PROMESA stay.").  Although the *Brigade Leveraged Capital* Court made its ruling in the context of the stay imposed by PROMESA § 405, it made clear that its holding applies equally to the automatic stay under § 362 of the Bankruptcy Code.  *Id.* (citing *In re City of San Bernardino*, 558 B.R. 321, 330 (C.D. Cal. 2016), for the proposition that "there is no exception to the Bankruptcy Code's automatic stay for constitutional claims, even if that category of claims is 'deserving' of an exemption").  To the extent that there is any conflict between the automatic stay and CPI's claim under the Puerto Rico Constitution, the federal automatic stay prevails.  PROMESA § 4.

None of the authority cited by CPI in connection with its "constitutional" argument supports lifting the stay because none involved a lift-stay motion.  Dkt. No. 724 at 6-7.  Instead, those cases involved the question of whether the stay applies in the first place, which is an issue

16

already resolved against CPI by Judge Garcia-Gregory and which is not before this Court. *See*
Ex. 3.

In any event, none of CPI's cases undercuts Judge Garcia-Gregory's considered ruling
that the automatic stay applies here. Contrary to CPI's suggestion, Judge Young did not reject
the application of the automatic stay in *Cruz-Rodriguez v. Administración de Corrección de
Puerto Rico*; he merely asked for additional briefing on the issue. No. 17-cv-1464, Dkt. No. 11
(D.P.R. June 20, 2017). In *Vázquez-Carmona v. Dep't of Educ.*, the Court declined to apply the
stay because the plaintiff sought "to enforce a *federally protected right*" and, according to the
Court, PROMESA "expressly contemplates that the temporary stay will not apply to suits to
enforce *federal rights*." No. 16-1846, 2017 WL 2352153, at *1 (D.P.R. May 31, 2017) (citing 48
U.S.C. § 2106) (emphasis added). No federal rights are implicated by CPI's action other than the
action's attempt to defy the supremacy of PROMESA, and *Vazquez-Carmona* does not support
the position that CPI's *state-law* claim falls outside the automatic stay.[6] Similarly, *Atiles-
Gabriel v. Commonwealth* was a *habeas* case decided solely on the basis that the automatic stay
does not suspend the Constitutional *habeas* right. No. 15-2108, 2017 WL 2709757, at *3-4
(D.P.R. June 23, 2017). The court recognized that the section 362(a)(1) stay is "nearly all-
encompassing," *id.* at *3, but it drew a narrow exception for *habeas* petitions, *id.* As such,
*Atiles-Gabriel* is inapposite to this case.

### G. The Remand of the *Bhatia Gautier* Matter Is Irrelevant.

Finally, CPI's reliance on this Court's Order remanding the *Bhatia Gautier* matter is
misplaced. *See* Dkt. No. 724 at 7-8 (citing Dkt. No. 16 of Adversary Proceeding No. 17-BK-

---

[6] In all events, the holding in *Vazquez-Carmona* is not correct. The court there held that
PROMESA § 7 forbids the application of the PROMESA automatic stay to suits that seek to
enforce a federally protected right. 2017 WL 2352153, at *1. However, PROMESA § 7
applies only to federal health, safety, and environmental laws, not every federal law.

136, attached hereto as Exhibit 4).  That Order neither involved the applicability of the automatic stay nor a motion to lift the automatic stay.  The sole issue before the Court was whether a claim for government documents from Commonwealth officials (and not the FOMB) under the Puerto Rico Constitution was more appropriately adjudicated by the Title III Court or a Commonwealth court.  Ex. 4 at 7-8.  The Court ultimately remanded because the claim "exclusively involves Puerto Rico law," "Commonwealth legal issues substantially predominate," and the issues pertaining to the document claim are "greatly attenuated from the core issues on which [the Title III case] will turn."  *Id.*  In so ruling, the Court noted that the defendants in that case had not shown that the "outcome of the litigation"—i.e., the legal rulings by the Commonwealth court— would affect the Commonwealth's adjustment of debts or the treatment of its property in the Title III case.  *Id.* at 7.  Federal preemption was not raised there because the action was not against the FOMB.

No aspect of that Order is helpful to CPI's position.  The Order said nothing about the automatic stay, and its statement that the outcome of the litigation would not affect rights in the Commonwealth's property or the Commonwealth's ultimate plan of adjustment is irrelevant.  No one is arguing that legal rulings in CPI's case will determine parties' rights in the Title III case. Instead, CPI's case should remain stayed because it would distract the FOMB from its critical business of prosecuting five Title III cases and overseeing the Commonwealth's ultimate return to fiscal health, and would expend Commonwealth funds at a time when those funds should be preserved for creditors.

## CONCLUSION

For the reasons set forth above, the motion to lift the automatic stay should be denied.

**REQUEST FOR HEARING**

Pursuant to the Court's order scheduling briefing for this motion (D.I. 745), the FOMB

respectfully reserves its right to request a hearing once the motion is deemed fully submitted.

Dated: August 8, 2017
    San Juan, PR

                                      */s/ Hermann D. Bauer*
                                      Hermann D. Bauer
                                      USDC No. 215205
                                      **O'NEILL & BORGES LLC**
                                      250 Muñoz Rivera Ave., Suite 800
                                      San Juan, PR 00918-1813
                                      Tel:  (787) 764-8181
                                      Fax:  (787) 753-8944
                                      Email: hermann.bauer@oneillborges.com


                                      */s/ Martin J. Bienenstock*
                                      Martin J. Bienenstock (*pro hac vice*)
                                      Stephen L. Ratner  (*pro hac vice*)
                                      Timothy W. Mungovan (*pro hac vice*)
                                      **PROSKAUER ROSE LLP**
                                      Eleven Times Square
                                      New York, NY 10036
                                      Tel:  (212) 969-3000
                                      Fax:  (212) 969-2900
                                      Email:  mbienenstock@proskauer.com
                                            sratner@proskauer.com
                                          tmungovan@proskauer.com


                                      *Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer