## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**<br><br>as representative of<br><br>**THE COMMONWEALTH OF PUERTO RICO, et al**<br><br>Debtors | **PROMESA**<br><br>**Title III**<br><br>**No. 17 BK 3283-LTS** |
| **CENTRO DE PERIODISMO INVESTIGATIVO, INC.**<br><br>Movant/Plaintiff<br><br>v.<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**<br><br>Respondent/Defendant | |

## REPLY TO OPPOSITION TO
## MOTION FOR RELIEF FROM STAY

**TO THE HONORABLE JUDGE LAURA TAYLOR SWAIN:**

**NOW COMES THE CENTRO DE PERIODISMO INVESIGATIVO, INC.** ("the CPI"), through undersigned counsel, and respectfully replies to the filing presented by the defendant Financial Oversight and Management Board for Puerto Rico ("the PROMESA Board") at Docket No. 959 in the instant case, in which the PROMESA Board opposes the CPI's request for relief from the automatic stay imposed by Judge Jay García Gregory in the case of *CPI v. Board, Civil No. 17-1743 (JAG) (D.P.R.)*

In this reply, the CPI will not repeat the arguments it set forth in Docket No. 740. Rather, it will focus on the specific points presented by the PROMESA Board in its quest to prohibit the CPI from securing access to the documents it seeks. *See, Opposition at Docket No. 959.*

## I. <u>PRELIMINARY STATEMENT</u>

The Centro de Periodismo Investigativo, Inc. is a non-profit organization dedicated to investigative journalism and transparency in government. It was formed for the express purpose of assisting the citizenry through efforts designed to promote transparency in governmental affairs, including education of journalists and citizens, litigation to gain access to documents and information, and through publication of investigative news stories. The Board of the CPA is made up of distinguished journalists and researchers, as well as renowned attorneys and law professors, including a former Dean of the University of Puerto Rico School of Law and a former Dean of the Interamerican University School of Law. Its journalists have been honored with several well-recognized awards for the quality of their investigative research and publications.

To fulfill its mission, the CPI frequently makes requests for information and documents from governmental entities, including state, federal and local government entities. When, as here, a governmental agency resists complying with the clear dictates of the Constitutional law of Puerto Rico requiring citizen access to governmental information, the CPI files judicial actions to assure that the law is followed. The CPI has been widely successful in such efforts, with the courts affirming the organization's right to access public documents.

The instant actions was filed as part of the CPI's mission to inform the citizenry. Plainly and simply, the CPI is requesting the court to force the PROMESA Board, as an entity within the government of Puerto Rico, to comply with its duty pursuant to the Constitution of Puerto Rico. The CPI has no pecuniary interest in this matter. No damages are requested. No injunctive relief beyond the delivery of documents is sought.

In that sense, the instant case is analogous to *See, Bhatia Gautier v. Rosselló-Nevares, Case No. 17-01636, Docket 4,* in which a local Senator questioned the failure of the government of Puerto Rico to provide him with certain budget documents. *Bhatia* is currently being heard in the courts of Puerto Rico, after this court remanded the removed case to state court. The Commonwealth in *Bhatia* had not made a showing "that the outcome of the litigation regarding access to the documents could affect the Commonwealth's rights, liabilities or freedom of action, or otherwise conceivably have an effect on the adjustment of its debts or treatment of its property, in the context of this Title III Proceeding." *Id, at page 7.*

As in *Bhatia,* the law to be applied herein is exclusively the law of Puerto Rico. It is the same Constitutional law on the basis which the Court of First Instance required the government to turn over the documents. *See, Bhatia Gautier v. Rosselló, SJ 2017-CV-00271, Resolution and Order, July 26, 2017,* and the Puerto Court of Appeals refused review. *Bhatia Gautier v. Rosselló Neváres, KLCE 2017-01385, Resolution, August 4, 2017 (denying certiorari)* The current action, like *Bhatia,* involves a request for documents. The PROMESA Board, which exercises major authority over fiscal decisions affecting the people of Puerto Rico, is not somehow exempt from the Constitutional provisions which apply to every other

entity within the Puerto Rico government.[1]

The PROMESA Board was created by virtue of the "Puerto Rico Oversight, Management, and Economic Stability Act," *48 U.S.C. §2101 et seq,* for the purpose of providing "a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." *48 U.S.C §2121(a).* Made up of seven appointed members and with a full staff of employees, consultants and contractors,[2] the Board is by virtue of the law "an entity within the territorial government for which it is established..." (i.e. Puerto Rico), *48 U.S.C §2121(c)(1).* All expenses of the Junta are paid for by the Government of Puerto Rico. *48 U.S.C §2127(b).*

When Congress approved PROMESA, it anticipated a small set of actions by the Board which would occur in private sessions, providing for "executive sessions" which would be "closed to the public." *PROMESA Sec. 101(h)(4); 48 U.S.C. §2121(h)(4).* Congress also saw fit to assure that under PROMESA, there would be full disclosures on certain other matters: The Board's bylaws, rules and procedures, the financial interests of Board members, and the findings of investigations into the disclosure and selling practices of the

---

[1] In its Opposition, the PROMESABoard makes a feeble attempt to distinguish *Bhatia* because that case dealt with a Remand and the current case involves the lifting of a stay. *Docket No. 959, pages 17-18.* This is a distinction which does not make a difference. As will be seen below, moreover, the fact that this case is against the Board, as opposed to the Government of Puerto Rico, is also of no consequence since, as argued by the PROMESA Board itself, the Board is to be considered part of that government.

[2] The CPI accepts for this purpose the Board's representation in the Opposition, at page 12 of Docket No. 959, that the PROMESA Board has eight staff members, including its Executive Director whose annual salary is at least $625,000.00. From the Board's publications on its website, it also indicates that there are a number of contractors, including for example, its newly named Revitalizataion Coordinator, who earns a yearly salary of no less than $325,000.00.

-4-

public debt.  These limited provisions regarding public access do not imply that Congress intended to "occupy the field" of public disclosure or that Congress decided to prevent the application of the Constitution of Puerto Rico to this entity within the government of Puerto Rico.

Nor does PROMESA's Section 4 "supremacy" clause demonstrate an intent to occupy the field.  This provision is limited to mirroring Article VII §2 of the United Sates Constitution, providing in its totality that the PROMESA statute "prevail[s] over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this act." *48 U.S.C. §2103*.  Defendant's notion that this one phrase, along with the scant specific provisions in PROMESA regarding public access, demonstrate Congress's intent to "clearly preempt CPI's action," *Opposition, page 4,* is wholly without authority. Supremacy is not the same as preemption.  The mere fact that Congress saw fit to explicitly require publication of certain documents, while authorizing private executive sessions regarding certain actions, does not evince an intention to occupy the field with respect to disclosure of the work of the PROMESA Board.

Similarly unavailing is the PROMESA Board's contention that Congress made the Board an entity "within" the Government of Puerto Rico for the exclusive purpose of preventing the litigation of actions against it, even in a case such as the instant one, which seeks only access to the requested documents.  *See, Opposition at Docket No. 959, page 4.* Nothing in the legislative history or the text of the law supports such a proposition. Indeed, the "supremacy" clause supports exactly the opposite conclusion, since it permits the application of Puerto Rico law unless it is "inconsistent" with PROMESA.  There is no

inconsistency whatsoever between the PROMESA law and the CPI request for documentation. A well-informed citizenry, with access to PROMESA documents in furtherance of a right specifically guaranteed under the Constitution of Puerto Rico, *Soto v. Sro. de Justicia, 112 DPR 477 (1982); 12 P.R. Offic. Trans. 597 (1982),* is entirely consistent with the goal of reorganizing Puerto Rico's finances for the benefit of — and with the acceptance — of the citizens of this island.

On the other hand, the defendant PROMESA Board is certainly correct in pointing out that "context matters." *Opposition at Docket No. 959, page 5.* While the Board's motion conceives of "context" as the hardship a request for documents will represent to the "uncompensated members" of the Board, the true context pertinent to this lawsuit is completely different.

Puerto Rico is home to some 3.5 million people whose daily lives are right now being affected by decisions made by entities which are largely shielded from public view. The budgetary oversight by the Board and the Title III actions pending before this court affect these citizens. Budget decisions are not wholly the sphere of accountants and financial advisors. They impact upon the citizens of Puerto Rico who daily meet the challenge of struggling through difficult times, and of making personal decisions regarding their future (eg: whether to move away from Puerto Rico or stay; whether to send their children to private schools or public schools; whether they will be able to survive on a government pension; whether the university will remain open and be a viable option for their children).

For the people of Puerto Rico, this is not an abstraction. This case is about our daily

lives and the future of Puerto Rico. It is respectfully submitted that the more light that is shined on the Board and its processes, the more the citizens will be able to make informed decisions about their futures.  The application of a stay of this litigation will do harm to that process, adversely affecting not only the CPI but also the people of Puerto Rico.

## II. THE PROMESA BOARD'S CONTENTIONS AND CPI'S RESPONSE THERETO

In its Opposition to CPI's request to lift the stay, the PROMESA Board goes over the standard *"Sonnax* factors"[3] as to when a stay can be lifted.  Since these factors were already addressed by the CPI at Docket No. 740, the CPI will not burden the court with a discussion of each one.  Rather, it will provide a brief response to new arguments and specific contentions raised in the Opposition presented by the PROMESA Board at Docket No. 959.

### A. PROMESA does not preempt Puerto Rico law.[4]

According to the PROMESA Board, Congress demonstrated its intention to preempt Puerto Rico law by virtue of its inclusion of the Section 4 "Supremacy" Clause and a number of sections of PROMESA referring to disclosure of certain documents. This contention, at pages 1-4 of the Board's Opposition, flies in the face of the basic law concerning preemption.

---

[3]*In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990).*

[4]The Board's "preemption" argument, like several other of its contentions, really goes to the *merits* and not the question of the Stay.  Nonetheless, since the Board chose to hang its hat on this argument, it will be addressed herein.

The federal government preempts a field either by explicit or implicit means. There is express preemption when Congress expressly states that intent in a statute's language. *See, eg. Chamber of Commerce of United States of America v. Whiting, 563 U.S. 582 (2011)* Thus, when examining a law for express preemptive effect, a court will look towards the specific statutory language. By contrast, <u>implicit</u> preemption occurs when Congress does not include precise language preempting local law, but the intention is implied, either through "field" preemption or through "conflict" preemption.

There is implicit field preemption when the federal government has fully occupied a field it has chosen to regulate or because of a unique federal interest in the field. *See, Gade v. National Solid Wastes Management Assn, 505 U.S. 88, 115 (1992)*. The intent to displace state law can be inferred from a framework of regulations "so pervasive .... that Congress left no room for the States to supplement it", or when the field is one in which the "federal interest [is] ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" *Rice v. Santa Fe Elevator Corp, 331 U.S. 218, 230 (1947).*

Another form of implicit preemption arises when state laws conflict with federal law. This will be the case if there is a direct conflict so as to make it impossible to comply with both federal and state law at the same time. *Florida Lime & Avocado Growers, Inc., v. Paul, 373 U.S. 132, 142-43 (1963).* Conflict implicit preemption also applies to those instances in which the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowits, 312 U.S. 52, 67 (1941).*

-8-

In the case at bar, the Board surely does not posit that there is express preemption. Congress, pursuant to its broad powers under the Territorial Clause, *Article IV section 3(2)*, could have stated that PROMESA simply abrogated all of Puerto Rico law, but it chose not to do so, despite the careful crafting of the law to which the Board consistently makes reference in its Opposition.  The bipartisan bill approved by the Congress to deal with the fiscal crisis in Puerto Rico contains no language even hinting at preemption.  In fact, the "supremacy" clause of section 4 maintains that which is fundamental Constitutional law as set forth in Article VI of the United States Constitution— that federal enactments are supreme and prevail over local law.

There also is no indication of any *implicit* intention of Congress to preempt local laws.   Access to information is not a key focus of the PROMESA bill, which addresses disclosure of information as a collateral matter, addressed only in Section 101(h)(1) (requiring public disclosure of bylaws, regulations and procedures); in Section 109(b) (regarding disclosure of financial interests of the Board and certain staff members);[5] Section 104(p) requiring disclosure of certain investigations relating to the debt; and in Section 101(h)(4), allowing the possibility of executive sessions closed to the public, except for the Board's "voting members and any professionals the Oversight Board determines necessary," in which case the closed session can address "only .. the business items set forth as part of the vote to convene an executive session."   This is hardly the picture of

---

[5]It should be noted that the CPI has requested complete financial information, which has yet to be disclosed.  *See, Complaint, appended as Exhibit A to Docket No. 740, at paragraphs 4/12 tp 4/17.*

comprehensive regulation of disclosure of the Board's activities to which the PROMESA Board refers in its Opposition at page 2 of Docket 959.[6]

Nor is there any intention of Congress to preempt *all* of Puerto Rico law on all matters addressed in the PROMESA legislation. Quite the opposite is true. Section 4 of PROMESA specifically contemplates the application of Puerto Rico law, except when it is in "conflict" with the statute.

Similarly inapplicable to this matter is "conflict" preemption. Nothing in the CPI's requests makes it impossible for the PROMESA Board to comply with its obligation pursuant to the PROMESA statute and those that arise under the Constitution of Puerrto Rico. In fact, the Board's argument on this score is hopelessly contradictory. On the one hand, it asserts complete preemption as to matters of public disclosure, yet on the other it claims that it would be burdensome to have the Board members have to decide "whatever production is not preempted, if any..." *Opposition, Docket No. 959, at page 3.* Preemption is an all or nothing proposition. Either state regulation is allowed or it is not. Nothing in the PROMESA law or its foundational basis provides any reason to conclude that Congress intended to preclude an action by a non-profit organization to assure that the people of Puerto Rico have a better understanding of the events which have affected and which will continue to affect their lives.

---

[6]The PROMESA Board argues that "... for CPI's action to have any merit at all, Congress had to have wasted its time announcing PROMESA's supremacy and carefully designating what [the Board] must disclose...." This is a *non-sequitor* which, if anything, goes to the merits of the disclosure request, rather than the lifting of the stay.

Plainly, allowing CPI to pursue this request for documents will not "upend PROMESA's supremacy." *Opposition, Docket No. 959, page 11.*

### B. The fact that PROMESA requires disclosure of certain documents does not mean that all others are protected from disclosure

Independently of the "preemption" issue, the Board appears to advance the notion that if Congress specifically required certain disclosures by the PROMESA Board, all othe information is protected from public disclosure. This is a true *non-sequitor*. A statute which makes reference to certain events does not imply that all other events are excluded. The Board's argument boils down to the notion that it can operate in complete secrecy, hidden from the people of Puerto Rico whose lives are being affected by its actions — and those of its highly paid staff and bevy of consultants — merely because Congress mentioned four areas where disclosure is required.

### C. The PROMESA law prohibitions against "oversight" by the government of Puerto Rico and its immunity provisions have no bearing on this controversy

At page 2 of its Opposition, the Board makes two assertions that are, quite frankly, completely incomprehensible. On the one hand, the Board makes much of Section 108(a)(1) of PROMESA, which expressly prohibits any oversight or review of the Board's activities by the Governor and Legislature of Puerto Rico, noting that despite this prohibition, the ".... CPI requests the Court to approve its pursuit of oversight and review beyond what PROMESA allows." The Board then goes on to imply that Section 105 of the act providing for immunity protection for the Board's actions "insulates the [Board] and all its members and employees from any liability or obligation for any claim arising from its actions taken

to carry out PROMESA" means that the current action must fail. *Opposition, Docket 959, page 2.* These assertions are nonsensical.

The CPI is <u>not</u> a governmental entity. It does not have any official <u>oversight</u> functions. The mere fact that Congress saw fit to prohibit the government of Puerto Rico from having any oversight functions has absolutely nothing to do with the controversy at hand. Similarly irrelevant to this controversy is the fact that the Board members are immunized from liability or obligation from claims arising from their actions. The case at bar does not involve "liability" relating to claims. Rather, it is an effort by a non-profit organization dedicated to transparency to allow the people of Puerto Rico to see the documents which are being utilized to determine their future.

**D. <u>The Board's contention that there already is "so much disclosure" totally minimizes the importance of this case</u>**

At page 7 of the Opposition, the Board asserts that CPI cannot meet the high standard for lifting the stay applicable to "unsecured creditors" because "so much disclosure already exists on the [Board's] website and elsewhere" that the lawsuit really is not necessary. This contention can be dispensed quickly.

The CPI is obviously requesting information which is <u>not</u> currently available on the Board's website or at some unidentified "elsewhere." Moreover, even if this were the case with respect to <u>some</u> of the documents, all the Board would have to do is direct the CPI to where the information is available, thus resolving a portion of the litigation. Unfortunately, this has <u>not</u> been the case. The Board has completely stonewalled the

-12-

requests for information. This action by the Board is counter to its Constitutional obligations pursuant to the law of Puerto Rico.

### E. **The Board underestimates the harm to the CPI if relief is not granted**

According to the Board, the CPI really will not suffer any harm in this case, not only because most of the information sought is purportedly available on the web-site -- which is not in fact the case – but also because it is available from other sources. The Board also makes much of the fact that the CPI waited several months before filing this lawsuit.

These concerns are misplaced. The prelude to the instant action was the presentation of a number of requests for information made by the CPI to the Financial Oversight and Management Board for Puerto Rico, as well as the Government of Puerto Rico and several agencies of the federal government. After a separate suit was filed against the Puerto Rico Government, some, but not all, of the requested documents were supplied. However, both the PROMESA Board and the federal government continue to stonewall, refusing to provide documents or simply ignoring the requests, and in the case of the federal Office of Government Ethics, informing the CPI that it would have to direct its requests to the PROMESA Board itself.

This case was not filed on a whim. It was made necessary due to concerted action on the part of all pertinent governmental agencies — including the PROMESA Board— to deny the CPI the documents to which it is clearly entitled pursuant to the Constitution of Puerto Rico. The right of public access is not only guaranteed in Puerto Rico, it is also an essential element of participatory democracy which is a fundamental aspect of the

constitutional system.  The harm caused by the Board's refusal to comply with the Puerto

Rico Constitution is not to be dismissed in the cavalier manner which permeates the

Board's Opposition to the lifting of the stay.

### F. The Board's "burden" and "distraction" arguments are overstated, illogical and exaggerated

According to the PROMESA Board, this action should be stayed because litigation

of this case will be very burdensome for the "uncompensated" Board members and will

"distract" them from their more important work. *Opposition, Docket No. 959,  pages 5 and*

*8*.  Taking these contentions at face value, one would imagine that the seven Board

members would spend their days sifting through multiple documents to find the requested

information,  making it impossible for them to do the required financial analysis and

decision-making pursuant to the law.

This, in all candor, is absurd.  The uncompensated Board members will not have to

actually review the documents to be produced.  The PROMESA Board has a budget which

is reported to be in the order of $60 million dollars for FY 2017-2018, or $5 million dollars

monthly.[7]  It has eight full-time staff members and an Executive Director who earns more

than $52,000.00 monthly.  Added to this is a coterie of contracted professionals (whose

contracts are actually on the PROMESA Board website, albeit without precise information

regarding payments made.  Plainly, the Board has more than enough resources to locate

---

[7] *See*,  https://www.metro.pr/pr/noticias/2017/06/01/presupuesto-otorga-60-millones-a-la-junta-de-control-fiscal.html

and analyze the requested documents.  Moreover, it is presumed that in light of the importance of its mission, the Board maintains fully organized records which can be easily accessed and which, presumably, are archived in digital format.

Moreover, as alleged at paragraphs 4.6 to 4.10 of the Complaint presented by the CPI, the Board long ago contracted the services of a firm specializing in communications, *Forculus Strategic Communications,* to which the Board has required all requests for information to be directed.  *See, Exhibit A to Docket No. 740.* This is a paid contractor, compensated by the Board at high hourly rates, to perform a number of functions, including responding to press requests.  The gathering of the documents will certainly not be a difficult task.

Nor will the litigation itself create major "distraction" for the Board.  The defendant would have this court believe that the instant case would devolve into a very complex litigation, in which Board members would spend countless late nights "collecting documents, reviewing and redacting if necessary, and producing that volume of documents..." *Opposition, Docket No. 959, page 3.*  This would be followed by "disputes over privilege, including the executive, deliberative process privilege, attorney-client, and work-product privileges." *Id.*  This clearly overstates the nature of this litigation.

What is involved here is a simple request for documents.  The law is also not complicated, as it is based on clearly established case law interpreting the Puerto Rico Constitution. *See, eg., Soto v. Sro. de Justicia, supra.*  A quick review of the requests made makes it clear that there will be few privilege issues, if any.  Moreover, the Board plainly has access to competent counsel, who are presumed to be well-versed in matters related

-15-

to privileges.  This is not a case involving complex discovery.  Typically, matters of this nature are resolved on the papers, with at most *in camera* reviews to address privilege disputes.

The defendant is making a mountain of a mole-hill.  The Board claims that if the case continues, it would "move to dismiss on a number of grounds, including federal preemption and the *Pennhurst* and *Barton* doctrines." *See, Opposition at page 11.*  It is respectfully submitted that if defense counsel were to do so, these attorneys would be creating unnecessary work which would be better spent in complying with the document requests.  Not every case merits a Motion to Dismiss.

The three suggested bases for a Motion to Dismiss are plainly inapplicable to the case at bar:

(1) As noted above, the preemption doctrine does not bar this action. Congress has manifested no express intention to occupy the field.  Nor does the PROMESA statute remotely imply that Congress has precluded the application of Puerto Rico law on issues relating to the disclosure of documents.  In any event, the law firm hired by PROMESA to address the current stay dispute has already briefed this issue *en extenso.*

(2)The *Pennhurst* doctrine is plainly inapplicable to the case at bar.  *See, Pennbhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984).* The doctrine that federal courts lack subject-matter jurisdiction over suits against state entities based on violations of state law certainly cannot apply to a claim against the Board, given PROMESA's explicit provision that ""any action against the

-16-

Oversight Board ... <u>shall</u> be brought in a United States district court for the covered territory ..." *Section 106(a) of PROMESA, 48 U.S.C. §2126 (emphasis supplied.)* Had the CPI brought this action against the Board in the Court of Puerto Rico, there can be little doubt that the Board would make reference to the exclusive jurisdiction which the federal court in Puerto Rico has over this claim. Clearly, *Pennhurst* provides no basis for a Motion to Dismiss.

(3) The Board's final argument on its anticipated "Motion to Dismiss" is equally unavailing. *Barton v. Barbour, 104 U.S. 126 (1881)* limits suits against a trustee or other representatives of an insolvent entity which has presented a bankruptcy action, unless prior leave is granted by the bankruptcy court. Once the stay is lifted in the instant case, this will constitute such "prior leave." Were the defendant to present a Motion to Dismiss on this basis, it would be wasting the court's time, draining the resources of both the court and the Commonwealth, based on a plainly incorrect contention.

## G. **The purported prejudice to creditors is another red herring**

According to the Board, this case will likely result in "protracted litigation" which will imply the expenditure of "the amounts available for the Commonwealth's creditors." *Opposition, Docket No. 959, page 10.* This concern is based on a mis-statement of applicable case law and fails to give appropriate import to the needs of the people of Puerto Rico who are the ones truly burdened by the current financial crisis. The Board's argument also undercuts then President Obama's statement that

"[i]n order to be successful, the Financial Oversight and Management Board will need to establish an <u>open process</u> for working with the people and Government of Puerto Rico... [in order to build] a better future for all Puerto Ricans."[8]

In its contentions related to the "protection of creditors", the Board cites a number of cases which are entirely inapposite to the matter at hand:

(1) In *In re Plumberex, 311 B.R. 551 (C.D. Cal 2004),* a creditor requested the lifting of a stay, seeking to file for contempt against the bankrupt debtor in a separate litigation.  The resolution of the issue against the creditor was based on a number of the *Sonnax* factors.  On the issue of prejudice to other creditors, the court prominently considered that the litigation would likely take more than two years to complete and that the estate would incur attorney's fees and costs of up to $500,000 "defending the action through discovery and a trial on the merits." *Id, at 564.*

(2) For its part, *In re Motors Liquidation Company, 2010 WL 4630327 (S.D. NY 2010)*, concerns the bankruptcy petition by a pension fund in the automobile industry.  Allowing the particular creditor to bring an ERISA suit against the Pension Plan and General Motors would, according to the unreported decision, open up the floodgates to claims by other pensioners and would violate "one of the fundamental concepts of bankruptcy law ... that there should be an <u>equality of distribution among creditors</u>." *Id, page 4 (internal citations omitted; emphasis*

---

[8]*See,* https://obamawhitehouse.archives.gov/the-press-office/2016/08/31/president-obama-announces-appointment-seven-individuals-financial

*supplied).* The *Motors Liquidation* case is based on "equality" concerns wholly inapplicable to the case at bar.

(3) the Board's citation to the third case purportedly supporting the need to preserve assets for other creditors is particularly troubling. In its citation to the unpublished decision in *In re Residential Capital, 2012 WL 380586 (S.D. NY 2012),* the language of the case is mis-quoted entirely.

At page 10 of the Board's *Opposition* at Docket No. 959, it is asserted that *Residential Capital* held that "other creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization." The quoted language, however, is <u>nowhere to be found in the case</u> cited. After considerable effort, the undersigned counsel were able to ascertain that the cited language is from a <u>different</u> decision issued apparently in the same bankruptcy case, *In re Residential Capital, 2012 WL 3249641.*[9]

Moreover, on its substance, the *Residential Capital* case arose in a context so markedly different from the one at bar as to make any doctrine derived from that unpublished case from the District of New York inapplicable. In the case, the bankruptcy judge applied the *Sonnax* factors in deciding against the lifting

---

[9]While incorrectly citing a case would be a grave error for any litigant, it is certainly ironic that such an error is committed by a law firm compensated at rates up to $1,000 per partner and $650 for associates, which has come before this court expressing the Board's purported concern about "depleting" the resources available to the creditors. *See, Proskauer contract available on the PROMESA website,* https://juntasupervision.pr.gov/index.php/en/documents/

of a stay to allow the pursuit of an individual action by home-owners named Gilbert against the debtor, which was the fifth-largest mortgage servicing business and the tenth-largest mortgage origination business in the United States, facing close to 2000 claims by different creditors.  The only language in the opinion with respect to the rights of creditors is found at page *6, wherein the court observes that "[a]llowing the Gilberts to bring their claims now, in a different forum, would be unfair to other creditors who must bring their claims in this Court at a later date.  Any litigation costs would diminish the bankruptcy estate.  The Gilberts must be treated as any other unsecured creditors and litigate their claims in this Court along with the Debtors' other similarly situated creditors."  The bankruptcy doctrine of equal treatment of creditors was a key concern.  This is a factor which is totally inapposite to the case at bar, in which the CPI is not a "creditor" and in which allowing the litigation to proceed would not produce a hardship to any "similarly situated creditor."

As a final note on this question, the CPI must take a moment to address the assertion made by the Board at page 10 of its Opposition that the time the Board expends on the instant case "is time the creditors want the [Board] spending on their claims, mediations and litigation."  This court can take judicial knowledge of the ample criticism of the Board as an entity whose sole interest is to protect the interests of the holders of the debt.  The Board, perhaps unwittingly, is confirming the truth of this accusation, explicitly stating that its priority is to satisfy what the creditors "want," as opposed to what the people of Puerto Rico need.

-20-

**WHEREFORE**, the Centro de Periodimso Investigativo respectfully reiterates its request that this court enter an Order vacating the PROMESA stay issued by Judge García in the case of *Centro de Periodismo Investigativo, Inc. v. Financial Oversight and Management Board for Puerto Ric, Civ. No. 17-1745.*

Respectfully submitted in San Juan, Puerto Rico this 15th day of August, 2017

**Berkan/Mendez**
O'Neill St. G-11
San Juan, P.R. 00918-2301
Tel. (787) 764-0814;Fax (787) 250-0986
bermen@prtc.net

By:   /s/ JUDITH BERKAN
        USDC No.200803
        berkanj@microjuris.com

        /s/ STEVEN P. LAUSELL RECURT
        USDC No. 226402
        Slausell@gmail.com

**CERTIFICATION**: This is to certify that this motion is being submitted through the ECF filing system, which will automatically notify all counsel of record.

I also certify that I am sending a copy of this motion Martin J. Bienestock, Stephen L. Ratner, and Timothy W. Mungovan at their email addresses of record, mbienestock@proskauer.com; sratner@proskauer.com and tmungovan@proskauer.com. I also certify that I am sending a copy of this motion to Hermann D. Bauer, at his email of record, hermann.bauer@oneillborges.com.

/s/ JUDITH BERKAN

-21-