**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

## Official Form 410
# Proof of Claim
04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Levy Echeandia Trust
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   Ricardo Levy Echeandia Trustee

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Levy Echeandia Trust
Name

P.O. Box 16820
Number   Street

San Juan         PR         00908
City             State       ZIP Code

Contact phone   787-466-3624

Contact email   rle466b@gmail.com

Where should payments to the creditor be sent? (if different)

Name _____

Number   Street _____

City   State   ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___/___/____
                                                                   MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410               Proof of Claim               page 1

### Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _3_ _6_ _7_ _7_

**7. How much is the claim?** $10,542. Does this amount include interest or other charges?
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Amount not paid of Bond Principal & Interest

**9. Is all or part of the claim secured?**
☐ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____
Amount of the claim that is secured: $_____
Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: _____

| | | |
|---|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. Check one: | Amount entitled to priority |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☒ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/14/2017
                  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

Name      Ricardo          Francisco         Levy-Echeandia
          First name       Middle name       Last name

Title     Trustee

Company   Levy Echeandia Trust
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   P.O. Box 16820
          Number    Street
                                             PR        00908
          San Juan
          City                               State     ZIP Code

Contact phone  787-466-3624          Email   rle466b@gmail.com

Official Form 410                    Proof of Claim                           page 3

P.O. Box 2044
Lakewood, NJ 08701

**Merrill Lynch**
Wealth Management
Bank of America Corporation

Merrill Lynch
Office Serving Your Account
2#15 SECOND STREET, SUITE 210
GUAYNABO PR 00968
(787) 294-3400

TO THE HOUSEHOLD OF:
RICARDO F LEVY ECHEANDIA
RAMON F LEVY
P.O. BOX 16820
SAN JUAN PR 00908

LEVY ECHEANDIA TRUST
RICARDO F LEVY, TTEE
U/A DTD 11/27/2001
P.O. BOX 16820
SAN JUAN PR 00908

TRADE CONFIRMATIONS FOR THE FOLLOWING ACCOUNTS INCLUDED IN THIS PACKAGE:

5PR-14660

LEVY ECHEANDIA TRUST
RICARDO F LEVY, TTEE
U/A DTD 11/27/2001
P.O. BOX 16820
SAN JUAN PR 00908

Account Number: **5PR-14660**

# TRADE CONFIRMATION     Date: February 23, 2012

*We confirm the following transaction(s) subject to the agreement below.*

**BOUGHT**  PUERTO RICO COMWLTH AQUEDUCT & SWR AUTH REV SR LIEN   RF SER B ISSUED 2/29/2012

| | | | | | | |
|---|---|---|---|---|---|---|
| Quantity | 500000 | Price | 100.000000 | Amount | 500000.00 | Trade Date 02/23/12 |
| Processing Fee | | | | | | Settle Date 02/29/12 |
| Transaction Fee | | | | | | ML Symbol |
| Accrued Interest/Dividends | | | | | | Security # TBPU1 |
| | | | | | | Cusip # 745160RY9 |
| **NET AMOUNT** | | | | | 500000.00 | FA # 2761 |

5 PCT 7/01/2023   YIELD 5.00% @$100.00 7/01/23 PRICED TO CALL.   CALLABLE-MAY AFFECT YIELD. DETAILS UPON REQUEST.   WHEN AS AND IF ISSUED. NEXT CALL 07/01/15 @ 100.00.   OFFICIAL STATEMENT AVAILABLE @ WWW.EMMA.MSRB.ORG BY SETTLEMENT DATE. PLEASE CONTACT YOUR FINANCIAL ADVISOR FOR A PHYSICAL COPY.   INTEREST FROM 02/29/12. FIRST COUPON 04/01/12.   INTEREST PAYMENTS MONTHLY. BOOK ENTRY ONLY.

ML ACTED AS PRINCIPAL

Payment for securities or other investment instruments purchased, and delivery of securities or other investment instruments sold, are due not later than SETTLEMENT DATE unless otherwise indicated by a DATE DUE. Please preserve this confirmation for income tax purposes. If submitting a check, money order or correspondence, please write your account number, forward to "Merrill Lynch Office Serving your Account", shown at the top of the page above your account number. If you have moved or plan to move notify your Financial Advisor of your new address.

Merrill Lynch Wealth Management makes available products and services offered by Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S) and other subsidiaries of Bank of America Corporation. MLPF&S is a registered broker-dealer, member Securities Investor Protection Corporation (SIPC) and a wholly owned subsidiary of Bank of America Corporation. Investment products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |

Account Number: 5PR-14660          Date: 02/23/2012          Page 1 of 2

**IT IS AGREED BETWEEN MERRILL LYNCH (ML)(24) AND YOU THAT:**

(1) All transactions are subject to the constitution, rules, customs, usages and rulings of the exchange or market and its clearing house, if any, where executed, as well as applicable federal and state laws and regulations, FINRA rules and the provisions of any other written agreement and shall be governed by the laws of the State of New York, excluding choice of law principles.
(2) This confirmation shall be deemed conclusive if not objected to in writing within ten (10) business days after delivery or communication to you. We reserve the right to correct any errors.
(3) Time of execution will be provided upon written request.
(4) All purchase transactions for your account require by settlement date: (a) with respect to a cash account, full payment and (b) with respect to a margin or good faith account, any required margin. All purchase transactions in a cash account are based on your agreement that you will promptly make full cash payment for the security or asset before selling it and that you do not contemplate selling it prior to making such payment, with the understanding that net settlement of transactions done on a DVP/RVP basis may be permitted at our discretion. All sale transactions in a cash account are based on your representation that you own the security and that you will deposit it promptly in your account (if not already held therein). Late delivery may result in additional charges for premium payment on securities borrowed. ML reserves the right to close transactions through buy ins or sell outs without further notice when ML deems such action to be appropriate.
(5) ML will hold for your account all securities bought and proceeds of securities sold unless you instruct us otherwise.
(6) If ML carries your securities in a cash account and these securities have been sold to you or purchased from you in this account, until these securities have been paid for in full, such securities may be hypothecated under circumstances which will permit the commingling thereof with securities carried for the account of other customers. If you have pledged securities or other property to ML as collateral, until all your obligations of any kind to ML are discharged, we may without notice to you (a) pledge or hypothecate such securities or property, including under circumstances that will permit them to be commingled with securities or property of others and (b) lend, sell or otherwise transfer such securities or other property owned by you or deliver the same on others' contracts of sale without ML having in its possession and control for delivery a like amount of similar securities or property.
(7) All of your securities and other property in any account (margin or cash) in which you have an interest, or which at any time are in your possession or under your control, other than retirement accounts (IRAs), and all proceeds of the foregoing, shall be subject to a lien for the discharge of any and all indebtedness or any other obligations you may have to ML or any ML affiliate. Securities and other property held in retirement accounts are not subject to this lien, and are not used as security for the payment of your obligations or indebtedness for other accounts you maintain with ML. You agree that ML holds all securities and other property in margin or cash accounts, other than retirement accounts, as security for the payment of any such obligations or indebtedness to ML in any account in which you have an interest. Subject to applicable laws, ML may, at any time and without giving you prior notice, use and or transfer any or all securities and other property in any account in which you have an interest, other than retirement accounts, without regard to ML having made any advances in connection with such security and other property and without regard to the number of accounts you may have with ML. In enforcing the lien, ML, at its sole discretion, may determine which securities and other property are to be sold or which contracts are to be closed.
(8) If securities loaned for a short sale are no longer available, ML reserves the right to decide, by random selection, which positions will be subject to a buy-in.
(9) It is your responsibility to cancel any open order for your account, including, under circumstances when entering a substitution order.
(10) Except for certain custodian accounts, ML holds all bonds and preferred securities in bulk segregation. In the event of a partial call, the securities to be called will be selected at random; the probability of your holdings being selected will be in proportion to all such securities held with us. We may not receive any allocations from the depository for any such partial call. If we do receive such an allocation, your position may not be selected in the random process. Callable securities may be called prior to your receipt of any notice (unless you are the registered holder).
(11) Municipal and other bonds may have call features that could affect the yield; ML will provide information on written request. Debt securities (including municipal securities) with a zero coupon, if callable, may be called at a price below their maturity value.
(12) If this transaction is for a single mortgage-backed security pool that is TBA eligible during the applicable distribution period, additional pool information is available by telephoning the toll free number for the issuer found in the issuer's offering documents.
(13) Any attempt by you to vote securities will be void if such securities are not in our possession or control. For the purposes of proxy voting, customers will not be notified that the securities are not in ML's possession or control or that a vote was void.
(14) If this transaction involves a debt security subject to redemption, such security may be redeemed in whole or in part before maturity. Such redemption could affect the yield represented. ML will provide information on written request.
(15) When a security is quoted ex-dividend or ex-interest, all buy, sell, stop and sell stop limit orders will be reduced on the ex-date by the value of the payment unless otherwise specified. When a security is ex-rights or ex-distribution, such orders will be reduced without exception.

All sell, buy stop and buy stop limit orders will not be reduced.
(16) ML is associated with a NYSE Designated Market Maker (DMM) that may make a market in the securities that are the subject of this confirmation. The DMM may at any time have a "long" or "short" inventory position in such security and, as a result if its function as a market maker, it may be on the opposite side of transactions in the security executed on the floor of the NYSE. ML also acts as a market maker, dealer, block positioner or arbitrageur in certain securities. ML may act to stabilize or maintain the market price of certain securities at a level above that which might otherwise prevail on the open market. Such stabilization may be discontinued at any time. As a result of these activities, ML may have a position on the opposite side of a transaction that we execute for you and may profit from such trading. In certain cases, there may not have been any market in such securities other than that made by ML. We reserve the right to offer for sale and to sell from time to time as principal or agent an amount of the securities described on the front hereof in excess of the amount owned by us (or the seller for whom we act as agent) at the time such offers and/or sales are made. Such offers or sales ("short sales" or "overallotments") may or may not be made in conjunction with stabilizing transactions.
(17) Where a foreign currency is indicated in the security description or where you choose to convert from the currency in which the security or payment thereon is denominated, information provided as to principal, interest, dividend and yield is subject to fluctuation in applicable exchange rates and costs. Any foreign currency conversion may have been conducted through ML or an ML affiliate, which may have profited in connection with such conversion.
(18) Transactions executed in non-U.S. markets may have been conducted through a ML affiliate.
(19) For transactions executed as principal, ML bought or sold the security for or from its own account. For investment advisory accounts, execution as principal was done with your pretrade consent and disclosure. For transactions executed as agent, the name of the other party to the transaction (where applicable) and the source and amount of any additional remuneration received will be furnished upon written request.
(20) The term "Quantity," in the case of fixed income securities, is the principal amount. For reported securities, unless otherwise indicated "price" is the reported price.
(21) If this transaction involves an asset-backed security (an interest in or an interest secured by a pool of receivables or other such financial assets that are subject continuously to prepayment), then its actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life and the prepayment assumptions underlying yield) will be provided upon written request.
(22) If this transaction involves a "When-As and If-Issued" or "When-As and If-Distributed" security, the final trade details will be forwarded to you when obtainable on issue or delivery.
(23) If an odd-lot differential or fee has been charged, the amount of any such odd-lot differential or fee will be furnished upon request.
(24) The name "ML" may include transactions with: Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), Merrill Lynch Government Securities, Inc. or Merrill Lynch Money Markets Inc. or other ML affiliate. MLPF&S is a registered broker-dealer and a wholly-owned subsidiary of Bank of America Corporation (BAC). Unless otherwise agreed with you in writing, this agreement will apply to any successor of ML, whether by merger, consolidation or other means, and ML may transfer your account to any such successor.
(25) Unless otherwise disclosed, INVESTMENTS THROUGH MLPF&S ARE NOT FDIC INSURED, ARE NOT BANK GUARANTEED, AND MAY LOSE VALUE.
(26) BofA Merrill Lynch Research is research produced by MLPF&S or one of its affiliates. Third party research ratings from selected vendors are provided where available for informational purposes and not as a solicitation or recommendation on such security. Neither MLPF&S nor any of its affiliates bears any responsibility or liability with respect to third party research which may have been made available to you. You assume full responsibility for any trading decision you make based upon third party research ratings or reports.
(27) MLPF&S makes available investment products sponsored, managed, distributed or provided by companies that are affiliates of BAC or in which BAC has a substantial economic interest, including BofA Global Capital Management, BlackRock and Nuveen Investments.
(28) ML and its affiliates may acquire, hold or sell positions in the securities or related derivatives purchased from or sold to you and may have an investment banking or banking relationship with the issuers thereof.
(29) Ratings information is provided based on sources deemed reliable, but its accuracy or completeness cannot be guaranteed.

SALES CHG PD and SALES CHG % represent the total commissions and the percentage of commissions, respectively, paid on the purchase of a mutual fund containing front-end sales charges. Purchases at certain dollar thresholds, and other criteria, may qualify purchases for lower sales charges. Please see the fund's prospectus for additional information.

Transaction Fee - A fee charged to recoup part or all of a fee assessed on brokerage firms by others.

Pricing information provided for certain thinly traded securities may be stale.

**Account Name:**   Levy Echeandia Trust

**Statement - Itemizing Principal and interest**

| | | |
|---|---|---|
| **Description** | PUERTO RICO AQUEDUCT-SWR ATRV SR SER B RF TAXABLE FEB12 05.000%JUL01 2023 | |
| **CUSIP** | | 745160RY9 |
| **Coupon** | | 5.00% |
| **Maturity** | | 7/1/2023 |
| **Principal** | | 500,000 |
| **Monthly Interest Payment** | | 2,083.33 |

| Date | Amount Not Paid | Status |
|---|---|---|
| Jul-16 | - | PAID |
| Aug-16 | - | PAID |
| Sep-16 | - | PAID |
| Oct-16 | - | PAID |
| Nov-16 | - | PAID |
| Dec-16 | - | PAID |
| Jan-17 | - | PAID |
| Feb-17 | - | PAID |
| Mar-17 | - | PAID |
| Apr-17 | - | PAID |
| May-17 | - | PAID |
| Jun-17 | - | PAID |
| Jul-17 | - | PAID |

**Total Principal and Unpaid Monthly Interests**   500,000

**Note:**

Case:17-03283-LTS Doc#:1051-3 Filed:08/16/17 Entered:08/16/17 13:30:48 Desc: proof of claim Page 7 of 8

| NEW ISSUE – BOOK-ENTRY ONLY | RATINGS (see RATINGS herein): | Moody's: | Baa2 |
|---|---|---|---|
| | | S&P: | BBB- |
| | | Fitch: | BBB |

$295,245,000
**PUERTO RICO AQUEDUCT AND SEWER AUTHORITY**
Revenue Bonds, Series 2012B (Senior Lien)

The Revenue Bonds, Series 2012B (Senior Lien) (the "Series B Bonds") of Puerto Rico Aqueduct and Sewer Authority (the "Authority"), the sole provider of public water and wastewater service in Puerto Rico, are being issued pursuant to a Master Agreement of Trust, dated as of March 1, 2008, as amended and restated as of February 15, 2012 (the "Trust Agreement"), with Banco Popular de Puerto Rico, trustee (the "Trustee"). The Series B Bonds will be issued to provide funds to be used by the Authority principally to repay or refinance certain outstanding indebtedness of the Authority. Concurrently with the issuance of the Series B Bonds, the Authority is issuing its $1,800,450,000 Revenue Bonds, Series 2012A Bonds (Senior Lien) (the "Series A Bonds" and, together with the Series B Bonds, the "2012 Senior Bonds") to provide funds to be used by the Authority principally to (i) repay or refinance certain outstanding indebtedness of the Authority, (ii) finance a portion of the Authority's capital improvement program for the five fiscal year period ending June 30, 2016, and (iii) fund the newly created Budgetary Reserve Fund. The Series A Bonds are being offered for sale in the United States tax-exempt markets pursuant to a separate Official Statement. The issuance of the Series B Bonds is not contingent upon the issuance of the Series A Bonds. Capitalized terms not otherwise defined in this Official Statement are defined in "Definition of Certain Terms" in the *Summary of the Trust Agreement and Summary of the Proposed Amendment to the Trust Agreement* included as *Appendix III*.

The 2012 Senior Bonds and any additional Senior Indebtedness (as defined herein on page 2) that the Authority has incurred or may incur from time to time under the Trust Agreement are payable solely from Authority Revenues as more fully described herein. The Trust Agreement generally establishes a gross lien on Authority Revenues as security for payment of debt service on Senior Indebtedness (including Senior Bonds) and Bonds (as defined herein on page III-3). The 2012 Senior Bonds will be secured on a parity in payment priority with the Authority's outstanding Senior Indebtedness (including Senior Bonds) and any additional Senior Indebtedness (including Senior Bonds) that may be incurred. The Trust Agreement also allows the Authority to issue Bonds and incur other obligations payable from such Authority Revenues but with a claim thereon subordinate to the claim of the Senior Indebtedness.

The Series B Bonds will be issued as fully registered bonds without coupons in denominations of $5,000 principal amount and integral multiples thereof. The Series B Bonds will be issued by means of a book-entry only system evidencing ownership and transfer of the Series B Bonds on the records of The Depository Trust Company ("DTC") and its participants. Interest on the Series B Bonds will be payable on a monthly basis commencing on April 1, 2012. The Series B Bonds are subject to redemption at the option of the Authority, the earliest redemption date being July 1, 2015, as described herein. The inside cover page of this Official Statement contains information concerning the maturity schedules, interest payment dates, interest rates, prices and approximate yields of the Series B Bonds. Prospective investors should consider the information set forth in RISK FACTORS AND INVESTMENT CONSIDERATIONS before investing.

In the opinion of Pietrantoni Méndez & Alvarez LLC, Special Puerto Rico Tax Counsel, as described herein, under existing statutes, the Series B Bonds, and the interest thereon, are exempt from Commonwealth income, municipal license and property taxes. Under most circumstances, interest on the Series B Bonds will be exempt from United States federal income taxation to (i) individuals who are bona fide residents of Puerto Rico during the entire taxable year in which such interest is received and (ii) Puerto Rico corporations. The Series B Bonds are not otherwise exempt from United States federal income taxation. See TAX MATTERS herein regarding certain other tax considerations.

**The Series B Bonds are not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than the Authority, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions, other than the Authority, shall be liable for the payment of the principal of or interest on said Bonds.**

The issuance of the Series B Bonds and their purchase by the Underwriters are subject to the approval of legality by Nixon Peabody LLP, New York, New York, Bond Counsel, and certain other conditions. Pietrantoni Mendez & Alvarez LLC, San Juan, Puerto Rico will pass upon certain legal matters for the Underwriters and will act as Special Puerto Rico Tax Counsel, and Cancio Covas & Santiago, LLP, San Juan, Puerto Rico, will pass upon certain legal matters for the Authority. The Series B Bonds will be dated their date of delivery and are expected to be available for delivery through DTC on or about February 29, 2012.

**BofA Merrill Lynch**

| Popular Securities | Santander Securities | UBS FS Puerto Rico |
|---|---|---|
| Barclays Capital | BBVAPR MSD | Citigroup | FirstBank PR Securities |
| Oriental Financial Services | Ramirez & Co. Inc. | Raymond James | Scotia MSD |

February 15, 2012

## $295,245,000
## PUERTO RICO AQUEDUCT AND SEWER AUTHORITY
### Revenue Bonds, Series 2012B (Senior Lien)

| Maturity Date July 1 | Principal Amount | Interest Rate | Price | CUSIP[△] |
|---|---|---|---|---|
| 2014 | $31,035,000 | 3.35% | 100.00 | 745160RT0 |
| 2016 | 33,665,000 | 3.92 | 100.00 | 745160RU7 |
| 2018 | 36,705,000 | 4.45 | 100.00 | 745160RV5 |
| 2020 | 40,255,000 | 4.90 | 100.00 | 745160RW3 |
| 2023 | 46,470,000 | 5.00 | 100.00 | 745160RY9 |

$107,115,000   5.35% Term Bonds due July 1, 2027   - Price 100.00   CUSIP[△] 745160RX1

---

[△] Copyright, American Bankers Association. CUSIP data herein is provided by Standard & Poor's, CUSIP Service Bureau, a division of the McGraw-Hill Companies, Inc. This data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Services. CUSIP numbers are provided for convenience of reference only. Neither the Authority nor the Underwriters take any responsibility for the accuracy of such numbers.