**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Laura Levy
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor _____

2. **Has this claim been acquired from someone else?**

   ☒ No
   ☐ Yes. From whom? _____

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   Where should notices to the creditor be sent?

   Ricardo Levy Echeandia
   Name

   P.O. Box 16820
   Number    Street

   San Juan        PR        00908
   City            State     ZIP Code

   Contact phone  787-466-3624

   Contact email  rle466b@gmail.com

   Where should payments to the creditor be sent? (if different)

   _____
   Name

   _____
   Number    Street

   _____
   City      State     ZIP Code

   Contact phone  _____

   Contact email  _____

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):

   __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

4. **Does this claim amend one already filed?**

   ☒ No
   ☐ Yes. Claim number on court claims registry (if known) _____     Filed on ___/___/_____
                                                                              MM   DD   YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☒ No
   ☐ Yes. Who made the earlier filing? _____

Official Form 410                              Proof of Claim                              page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
   - ☐ No
   - ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __2__ __5__ __4__ __1__

7. How much is the claim? $63,510. Does this amount include interest or other charges?
   - ☐ No
   - ☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   Amount not paid of Bond Principal and Interest

9. Is all or part of the claim secured?
   - ☐ No
   - ☐ Yes. The claim is secured by a lien on property.

   Nature of property:
   - ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   - ☐ Motor vehicle
   - ☐ Other. Describe: _____

   Basis for perfection: _____
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property: $_____
   Amount of the claim that is secured: $_____
   Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition: $_____

   Annual Interest Rate (when case was filed) _____%
   - ☐ Fixed
   - ☐ Variable

10. Is this claim based on a lease?
    - ☒ No
    - ☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

11. Is this claim subject to a right of setoff?
    - ☒ No
    - ☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. Check one: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☒ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/14/2017
                  MM / DD / YYYY

*(signature)*
Signature

Print the name of the person who is completing and signing this claim:

Name: Ricardo (First name) Francisco (Middle name) Levy-Echeandia (Last name)

Title: Authorized agent

Company: _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: P.O. Box 16820
         Number  Street
         San Juan            PR      00908
         City                State   ZIP Code

Contact phone: 787-466-3624    Email: rle466b@gmail.com

P.O. Box 2044
Lakewood, NJ 08701

 Merrill Lynch
Wealth Management
Bank of America Corporation

Merrill Lynch
Office Serving Your Account
2#15 SECOND STREET, SUITE 210
GUAYNABO PR 00968
(787) 294-3400

LAURA LEVY
PO BOX 16820
SAN JUAN PR 00908-6820

LAURA LEVY
PO BOX 16820
SAN JUAN PR 00908

Account Number: 5PR-14466

# TRADE CONFIRMATION

Date: May 06, 2013

*We confirm the following transaction(s) subject to the agreement below.*

**BOUGHT** PUERTO RICO COMWLTH GOVT DEV BK SR NTS ISSUED 8/26/2010 RF SER C

| Quantity | 60000 | Price | 99.000000 | Amount | 59400.00 | Trade Date | 05/06/13 |
|---|---|---|---|---|---|---|---|
| Processing Fee | | | | | 5.35 | Settle Date | 05/09/13 |
| Transaction Fee | | | | | | ML Symbol | |
| Accrued Interest/Dividends | | | | | 72.00 | Security # | TS564 |
| | | | | | | Cusip # | 745177ET8 |
| **NET AMOUNT** | | | | | 59477.35 | FA # | 2761 |

5.4 PCT 8/01/2019 YIELD 5.59% @ $99.00 8/01/19 CALLABLE-MAY AFFECT YIELD.
DETAILS UPON REQUEST. NEXT CALL 06/06/13 @ 100.00. TAXABLE, EXCEPT FOR PUERTO
RICO RESIDENTS. 8 DAYS INTR-PAYS.MONTHLY BOOK ENTRY ONLY. FOR MORE
INFORMATION ABOUT THIS BOND GO TO WWW.EMMA.MSRB.ORG.

ML ACTED AS PRINCIPAL

Payment for securities or other investment instruments purchased, and delivery of securities or other investment instruments sold, are due not later than SETTLEMENT DATE unless otherwise indicated by a DATE DUE. Please preserve this confirmation for income tax purposes. If submitting a check, money order or correspondence, please write your account number and forward to "Merrill Lynch Office Serving Your Account", shown at the top of the page above your account number. If you have moved or plan to move, notify your Financial Advisor of your new address.

Merrill Lynch Wealth Management makes available products and services offered by Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S) and other subsidiaries of Bank of America Corporation. MLPF&S is a registered broker-dealer, member Securities Investor Protection Corporation (SIPC) and a wholly owned subsidiary of Bank of America Corporation. Investment products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |

Note: CDs are FDIC-insured (subject to applicable limits).

**IT IS AGREED BETWEEN MERRILL LYNCH (ML)(24) AND YOU THAT:**

(1) All transactions are subject to the constitution, rules, customs, usages and rulings of the exchange or market and its clearing house, if any, where executed, as well as applicable federal and state laws and regulations. FINRA rules and the provisions of any other written agreement and shall be governed by the laws of the State of New York, excluding choice of law principles.
(2) This confirmation shall be deemed conclusive if not objected to in writing within ten (10) business days after delivery or communication to you. We reserve the right to correct any errors.
(3) Time of execution will be provided upon written request.
(4) All purchase transactions for your account require by settlement date (a) with respect to a cash account, full payment and (b) with respect to a margin or good faith account, any required margin. All purchase transactions in a cash account are based on your agreement that you will promptly make full cash payment for the security or asset before selling it and that you do not contemplate selling it prior to making such payment, with the understanding that net settlement of transactions done on a DVP/RVP basis may be permitted at our discretion. All sale transactions in a cash account are based on your representation that you own the security and that you will deposit it promptly in your account (if not already held therein). Late delivery may result in additional charges for premium payment on securities borrowed. ML reserves the right to close transactions through buy ins or sell outs without further notice when ML deems such action appropriate.
(5) ML will hold for your account all securities bought and proceeds of securities sold unless you instruct us otherwise.
(6) If ML carries your securities in a cash account and these securities have been sold to you or purchased from you in this account, until these securities have been paid for in full, such securities may be hypothecated under circumstances which will permit the commingling thereof with securities carried for the account of other customers. If you have pledged securities or other property to ML as collateral, until all your obligations of any kind to ML are discharged, we may without notice to you (a) pledge or hypothecate such securities or property, including under circumstances that will permit them to be commingled with securities or property of others and (b) lend, sell or otherwise transfer such securities or other property owned by you or deliver the same on others' contracts of sale without ML having in its possession and control for delivery a like amount of similar securities or property.
(7) All of your securities and other property in any account (margin or cash) in which you have an interest, or which at any time are in your possession or under your control, other than retirement accounts (IRAs), and all proceeds of the foregoing, shall be subject to a lien for the discharge of any and all indebtedness or any other obligations you may have to ML or any ML affiliate. Securities and other property held in retirement accounts are not subject to this lien, and are not used as security for the payment of your obligations or indebtedness for other accounts you maintain with ML. You agree that ML holds all securities and other property in margin or cash accounts, other than retirement accounts, as security for the payment of any such obligations or indebtedness in any account in which you have an interest. Subject to applicable laws, ML may, at any time and without giving you prior notice, use and or transfer any or all securities and other property in any account in which you have an interest, other than retirement accounts, without regard to ML having made any advances in connection with such security and other property and without regard to the number of accounts you may have with ML. In enforcing the lien, ML, at its sole discretion, may determine which securities and other property are to be sold or which contracts are to be closed.
(8) If securities loaned for a short sale are no longer available, ML reserves the right to decide, by random selection, which positions will be subject to a buy-in.
(9) It is your responsibility to cancel any open order for your account, including, under circumstances when entering a substitution order.
(10) Except for certain custodian accounts, ML holds all bonds and preferred securities in bulk segregation. In the event of a partial call, the securities to be called will be selected at random; the probability of your holdings being selected will be in proportion to all such securities held with us. We may not receive any allocations from the depository for any such partial call. If we do receive such an allocation, your position may not be selected in the random process. Callable securities may be called prior to your receipt of any notice (unless you are the registered holder).
(11) Municipal and other bonds may have call features that could affect the yield; ML will provide information on written request. Debt securities (including municipal securities) with a zero coupon, if callable, may be called at a price below their maturity value.
(12) If this transaction is for a single mortgage-backed security pool that is TBA eligible during the applicable distribution period, additional pool information is available by telephoning the toll free number for the issuer found in the issuer's offering documents.
(13) Any attempt by you to vote securities will be void if such securities are not in our possession or control. For the purposes of proxy voting, customers will not be notified that the securities are not in ML's possession or control or that a vote was void.
(14) If this transaction involves a debt security subject to redemption, such security may be redeemed in whole or in part before maturity. Such redemption could affect the yield represented. ML will provide information on written request.
(15) When a security is quoted ex-dividend or ex-interest, all buy, sell, stop and sell stop limit orders will be reduced on the ex-date by the value of the payment unless otherwise specified. When a security is ex-rights or ex-distribution, such orders will be reduced without exception.

All sell, buy stop and buy stop limit orders will not be reduced.
(16) ML acts as a market maker, dealer, block positioner or arbitrageur in certain securities. ML may act to stabilize or maintain the market price of certain securities at a level above that which might otherwise prevail on the open market. Such stabilization may be discontinued at any time. As a result of these activities, ML may have a position on the opposite side of a transaction that we execute for you and may profit from such trading. In certain cases, there may not have been any market in such securities other than that made by ML. We reserve the right to offer for sale and to sell from time to time as principal or agent an amount of the securities described on the front hereof in excess of the amount owned by us (or the seller for whom we act as agent) at the time such offers and/or sales are made. Such offers or sales ("short sales" or "overallotments") may or may not be made in conjunction with stabilizing transactions.
(17) Where a foreign currency is indicated in the security description or where you choose to convert from the currency in which the security or payment thereon is denominated, information provided as to principal, interest, dividend and yield is subject to fluctuation in applicable exchange rates and costs. Any foreign currency conversion may have been conducted through ML or an ML affiliate, which may have profited in connection with such conversion.
(18) Transactions executed in non-U.S. markets may have been conducted through a ML affiliate.
(19) For transactions executed as principal, ML bought or sold the security for or from its own account. For investment advisory accounts, execution as principal was done after pre-trade disclosure and with your consent. In non-discretionary advisory accounts you may revoke your general consent to principal trades at any time in writing on a form provided by your Advisor. For transactions executed as agent, the name of the other party to the transaction (where applicable) and the source and amount of any additional remuneration received will be furnished upon written request.
(20) The term "Quantity," in the case of fixed income securities, is the principal amount. For reported securities, unless otherwise indicated "price" is the reported price.
(21) If this transaction involves an asset-backed security (an interest in or an interest secured by a pool of receivables or other such financial assets that are subject continuously to prepayment), then its actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life and the prepayment assumptions underlying yield) will be provided upon written request.
(22) If this transaction involves a "When-As and If-Issued" or "When-As and If-Distributed" security, the final trade details will be forwarded to you when obtainable on issue or delivery.
(23) If an odd-lot differential or fee has been charged, the amount of any such odd-lot differential or fee will be furnished upon request.
(24) The name "ML" may include transactions with: Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), Merrill Lynch Government Securities, Inc. or Merrill Lynch Money Markets Inc. or other ML affiliate. MLPF&S is a registered broker-dealer and a wholly-owned subsidiary of Bank of America Corporation (BAC). Unless otherwise agreed with you in writing, this agreement will apply to any successor of ML, whether by merger, consolidation or other means, and ML may transfer your account to any such successor.
(25) Unless otherwise disclosed, INVESTMENTS THROUGH MLPF&S ARE NOT FDIC INSURED, ARE NOT BANK GUARANTEED, AND MAY LOSE VALUE.
(26) BofA Merrill Lynch Research is research produced by MLPF&S or one of its affiliates. Third party research ratings from selected vendors are provided where available for informational purposes and not as a solicitation or recommendation on such security. Neither MLPF&S nor any of its affiliates bears any responsibility or liability with respect to third party research which may have been made available to you. You assume full responsibility for any trading decision you make based upon third party research ratings or reports.
(27) MLPF&S makes available investment products sponsored, managed, distributed or provided by companies that are affiliates of BAC or in which BAC has a substantial economic interest, including BofA Global Capital Management.
(28) ML and its affiliates may acquire, hold or sell positions in the securities or related derivatives purchased from or sold to you and may have an investment banking or banking relationship with the issuers thereof.
(29) Ratings information is provided based on sources deemed reliable, but its accuracy or completeness cannot be guaranteed.

SALES CHG PD and SALES CHG % represent the total commissions and the percentage of commissions, respectively, paid on the purchase of a mutual fund containing front-end sales charges. Purchases at certain dollar thresholds, and other criteria, may qualify purchases for lower sales charges. Please see the fund's prospectus for additional information.

Transaction Fee - Includes fees originated by ML for services provided by ML, as well as fees charged to recoup part or all of a fee assessed on brokerage firms by others.

Pricing information provided for certain thinly traded securities may be stale.

Account Number: **5PR-14466**    Date: **05/06/2013**    Page 2 of 2

**Account Name:** Laura Levy

## Statement - Itemizing Principal and interest

| | |
|---|---|
| **Description** | PUERTO RICO COMWLTH GOVT DEV BK SR C RF TAXABLE AUG10 05.400%AUG01 2019 |
| **CUSIP** | 745177ET8 |
| **Coupon** | 5.40% |
| **Maturity** | 8/1/2019 |
| **Principal** | 60,000 |
| **Monthly Interest Payment** | 270 |

| Date | Amount Not Paid | Status |
|---|---|---|
| Jul-16 | 270.00 | UNPAID |
| Aug-16 | 270.00 | UNPAID |
| Sep-16 | 270.00 | UNPAID |
| Oct-16 | 270.00 | UNPAID |
| Nov-16 | 270.00 | UNPAID |
| Dec-16 | 270.00 | UNPAID |
| Jan-17 | 270.00 | UNPAID |
| Feb-17 | 270.00 | UNPAID |
| Mar-17 | 270.00 | UNPAID |
| Apr-17 | 270.00 | UNPAID |
| May-17 | 270.00 | UNPAID |
| Jun-17 | 270.00 | UNPAID |
| Jul-17 | 270.00 | UNPAID |

**Total Principal and Unpaid Monthly Interests** 63,510

**Note:** July 14, 2017 GDB petitioned under Title VI of Promesa

NEW ISSUE - BOOK ENTRY ONLY
See "Book-Entry Only System" under *The Notes*

## $1,086,478,000
## Government Development Bank for Puerto Rico
## Senior Notes, 2010 Series C

The Senior Notes, 2010 Series C are being issued by Government Development Bank for Puerto Rico pursuant to the provisions of a trust indenture, dated February 17, 2006, as amended or supplemented, between the Bank and Banco Popular de Puerto Rico, as trustee. The Bank will use the proceeds from the sale of the Notes for general corporate purposes, including, but not limited to, redeeming other notes issued by the Bank, increasing its investment portfolio, making loans to, and purchasing obligations of, the Commonwealth and its public corporations, instrumentalities and municipalities, and repaying certain outstanding debt. In particular, the Bank is planning to use a portion of the proceeds of the Notes to redeem the issued and outstanding notes of each of the following series previously issued under the Indenture: (i) 2008 Series A Notes; (ii) 2008 Series B Notes; (iii) 2009 Series A Notes; and (iv) 2009 Series B Notes. See *Use of Proceeds* herein.

Concurrently with the issuance of the Notes, the Bank expects to issue its Senior Notes, 2010 Series D (Issuer Subsidy Build America Bonds) (the "Series D Notes"). The issuance of the Notes is not contingent on the issuance of the Series D Notes.

The Notes have the following characteristics:

- Interest will accrue from their date of issuance and will be payable monthly on the first day of each month, commencing on October 1, 2010.

- Redeemable at the option of the Bank beginning on September 1, 2011 and on any date thereafter, without premium.

- Issued as fully registered notes without coupons in denominations of $5,000 principal amount and integral multiples of $1,000 in excess thereof.

*The inside cover page contains information on the maturities, interest rates, and prices or yields of the Notes.*

The Notes, the outstanding notes previously issued under the Indenture, and any additional notes that the Bank may from time to time issue under the indenture are general, unsecured, senior obligations of the Bank, ranking on a parity with all other general, unsecured and unsubordinated obligations of the Bank.

The Notes and the interest thereon are exempt from Puerto Rico and local income taxation. Under the provisions of existing federal statutes and regulations now in force, under certain circumstances, interest on the Notes will be exempt from United States federal income taxation to individuals who are bona fide residents of Puerto Rico and corporations organized under the laws of Puerto Rico. Except as described above and in *Tax Matters* herein, interest on the Notes is included in gross income for United States federal income tax purposes. See *Tax Matters* herein.

**The Notes do not constitute an obligation of the Commonwealth of Puerto Rico or any of its political subdivisions or public instrumentalities, other than the Bank, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions or public instrumentalities is liable thereon. Neither the good faith, credit and taxing power of the Commonwealth of Puerto Rico nor that of any of its political subdivisions or instrumentalities, is pledged for the payment of the Notes.**

*The Notes are offered for delivery when, as and if issued and accepted by the underwriters, subject to the approval of legality by O'Neill & Borges, Bond Counsel, and certain other conditions. Certain legal matters will be passed upon for the underwriters by Fiddler González & Rodríguez, P.S.C., San Juan, Puerto Rico.*

The Notes will be dated their date of delivery and are expected to be available for delivery through the facilities of The Depository Trust Company on or about August 26, 2010.

### UBS Financial Services Incorporated of Puerto Rico

| | | |
|---|---|---|
| **Popular Securities** | | **Santander Securities** |
| **Barclays Capital** | | **BBVAPR MSD** |
| **BofA Merrill Lynch** | **FirstBank Securities** | **Oriental Financial Services** |
| **Raymond James** | **Samuel A. Ramírez & Co., Inc.** | **Wells Fargo Securities, LLC** |

August 24, 2010

**$1,086,478,000**
**Government Development Bank for Puerto Rico**
**Senior Notes, 2010 Series C**

| Maturity Date August 1, | Amount | Interest Rate | Price | CUSIP |
|---|---|---|---|---|
| 2012 | $ 39,190,000 | 3.00% | 100.00% | 745177EV3 |
| 2013 | 212,942,000 | 4.00 | 100.00 | 745177EQ4 |
| 2014 | 212,407,000 | 4.25 | 100.00 | 745177ER2 |
| 2017 | 404,224,000 | 5.15 | 100.00 | 745177ES0 |
| 2019 | 217,715,000 | 5.40 | 100.00 | 745177ET8 |