# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 840, 846**

(Jointly Administered)

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

-----------------------------------------------------------x

## OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY KAREN ODALYS FUENTES RIVERA, LUIS IVÁN FUENTES VÁZQUEZ, AND CARMEN IRIS RIVERA COSME [ECF NO. 840]

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay* [ECF No. 840] (the "Motion") filed by Karen Odalys Fuentes Rivera, Luis Iván Fuentes Vázquez, and Carmen

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Iris Rivera Cosme (collectively, "Movants").[2] The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.

## PRELIMINARY STATEMENT

1. By the Motion, Movants are seeking to lift the automatic stay to proceed with a prepetition civil action that is still in the preliminary stage of litigation. The conclusion of the evidentiary process, pretrial hearing(s), the preparation and filing of dispositive motions, and the ensuing trial are all necessary for the underlying action to proceed. As potential prepetition, unsecured creditors of the Commonwealth, Movants have failed to demonstrate extraordinary circumstances as to why their claims cannot be resolved through the claims resolution process to be undertaken in the Title III cases. In support of the Motion, Movants rely on conclusory statements regarding why cause exists to lift the automatic stay while vaguely applying five of the twelve Sonnax factors to the facts of the underlying action. Notably, Movants argue that the automatic stay should be lifted in order for the underlying action to proceed against the defendants other than the Commonwealth without recognizing that the majority of the defendants are protected by the Title III stay, including the Puerto Rico Highways and Transportation Authority ("HTA"), which commenced a case under Title III of PROMESA on May 21, 2017. Given Movants' failure to make an initial showing of cause as to why the automatic stay should be lifted with respect to the underlying action and the amount of time necessary for the underlying action to be ready for trial, the majority of the Sonnax factors weigh in favor of denying the Motion.

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

2

**OBJECTION**

2. The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to Title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[3] See Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)).

---

[3] The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

4. As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." Id. (citations omitted).

5. The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it and its agencies and entities must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the Commonwealth and its agencies and entities with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf. To this point, 36 motions to lift the automatic stay have been filed in the Title III cases.

6. Movants' underlying action before the Puerto Rico Court of First Instance, Superior Court of Caguas (the "State Court"), captioned Karen Odalys Fuentes Rivera, et al. v. Departamento de Transportación y Obras Públicas, et al., Case No. E DP2016-0075 (the "State Court Action") seeks monetary relief for damages allegedly suffered by Movants due to a traffic accident where Movants allege that the road was kept in an unsafe condition. The State Court

4

Action was commenced on March 23, 2016 by Movants against the Commonwealth, the Department of Transportation and Public Works (the "DPW")[4], the Municipality of Aguas Buenas, the Puerto Rico Road and Transportation Authority,[5] and Mapfre Praico Insurance Company. Prior to the commencement of the Commonwealth's Title III case, the parties were in the middle of conducting discovery and a pretrial hearing was scheduled for August 8, 2017. On June 26, 2017, the State Court issued an order granting the Commonwealth's petition for a stay due to the commencement of the Title III case.[6]

7. Given the procedural status of the State Court Action, the majority of the Sonnax factors weigh in favor of maintaining the automatic stay and denying the Motion.

8. **Sonnax Factors 1, 10, and 11**: As discussed above, the State Court Action is still at a preliminary stage. There are no dispositive motions pending before the State Court. The conclusion of the evidentiary process, pretrial hearing(s), the preparation and filing of dispositive motions, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense, are necessary for the State Court Action to move forward. As such, the parties are not ready for trial in the State Court Action and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, Sonnax factors 1, 10, and 11 weigh in favor of denying the Motion. See In re Sonnax Indus., Inc., 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state

---

[4] The DPW is an agency of the Commonwealth protected under Bankruptcy Code section 362(a).

[5] The "Puerto Rico Road and Transportation Authority" is the same entity as the HTA, which commenced a case under Title III of PROMESA on May 21, 2017 (Bankruptcy Case No. 17 BK 3567-LTS). While Movants did not seek to lift the automatic stay in HTA's Title III case, the automatic stay with respect to HTA should also be maintained for the reasons discussed herein.

[6] In the State Court Action both the Commonwealth and HTA presented notices of automatic stay in connection with the commencement of the Title III cases. In a status conference on June 19, 2017, the State Court expressed that it would stay the State Court Action for all the parties involved in the Title III cases. However, on June 26, 2017, the State Court entered a partial judgment to stay the State Court Action only with respect to the Commonwealth. As of the date of this filing, the State Court has not entered a judgment staying the State Court Action with respect to HTA.

5

court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); In re Residential Capital, LLC, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done"); see also Memorandum Order Denying Julio E. Leandry-Hernandez and Ileana Ortiz-Santiago's Motion for Relief of Stay, Case No. 17 BK 3283-LTS, ECF No. 847 (denying movants request to lift stay where "it is unclear whether the Lawsuit is ready for trial . . . [and] any remaining pretrial proceedings and a trial would require the expenditure of Debtor resources and potentially disrupt the claims resolution process established by the bankruptcy code and incorporated into PROMESA.").

9. **Sonnax Factors 2 and 7**: Title III of PROMESA applies with respect to all debts, claims, and liens asserted against a Title III debtor (as such terms are defined in Bankruptcy Code section 101), created before, on, or after the commencement of the Title III case. See 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003).

10. As potential prepetition, unsecured creditors of the Commonwealth, Movants' claims are subject to the claim resolution process that will be undertaken in the Commonwealth's Title III case. Indeed, Movants acknowledge this by asserting that any judgment in the State

6

Court Action will be listed as an unsecured claim in the Commonwealth's Title III case. See Motion at 5. However, Movants fail to acknowledge that the same is true for any judgment against HTA (which is also a Title III debtor) and the DPW (which because the DPW is an agency of the Commonwealth, the Commonwealth would be responsible for satisfying any judgment against the DPW). Further, because no insurance coverage exists for Movants' claims in the State Court Action, any judgment obtained by Movants against the Commonwealth and its agency would be satisfied by the Commonwealth directly. Requiring the Commonwealth to defend Movants' claims before determination of what the claim resolution process will look like would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

11. Lifting the automatic stay to proceed with the State Court Action will divert the Commonwealth's attention and resources to defending Movants' claims in the State Court and will encourage other creditors to seek similar relief. Because the outcome of the State Court Action will impact other creditors in the Title III case, the Department of Justice will need to coordinate its defense of the Commonwealth with the Commonwealth's and the Oversight Board's advisors, thereby increasing the Commonwealth's defense costs. Thus, Sonnax factors 2

7

and 7 weigh in favor of denying the Motion. See In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfer[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

12. **Sonnax Factor 3**: The State Court Action does not involve the Commonwealth as a fiduciary and Movants have not made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 3 weighs in favor of denying the Motion.

13. **Sonnax Factor 4**: No specialized tribunal has been established to hear the State Court Action. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

14. **Sonnax Factor 5**: Contrary to Movants' assertions in the Motion, the Commonwealth does not have insurance coverage for the claims raised in the State Court Action. Thus, Sonnax factor 5 weighs in favor of denying the Motion.

15. **Sonnax Factor 6**: In addition to the Commonwealth, the defendants in the State

Court Action include HTA, a Title III debtor and the DPW, an agency of the Commonwealth that does not have a separate legal existence. Thus, both the DPW and HTA are protected under Bankruptcy Code section 362(a). Movants rely on <u>Adria Maldonado Rivera v. Estado Libre Asociado de Puerto Rico</u>, 195 D.P.R. 182, 210 (P.R. 2016) to argue that the automatic stay should be modified to allow the State Court Action to proceed against the other defendants because Movants would not be able to enforce their full monetary judgment against the codefendants if the Commonwealth was not given an opportunity to defend itself in the State Court Action. <u>See</u> Motion at 4-5.[7] Movants are essentially arguing that the Commonwealth is an indispensable party to the State Court Action and that no proceedings should take place without the Commonwealth's participation. This argument supports the finding that the State Court Action should be stayed in its entirety. Thus, the State Court Action cannot be characterized as primarily involving third parties and <u>Sonnax</u> factor 6 weighs in favor of denying the Motion. <u>See</u> <u>City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

16. **Sonnax Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movants would suffer if the automatic stay remains in place. The procedural status of the State Court Action, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movants' claims, and the prejudice to interests of other

---

[7] Movants' reliance on <u>Rivera</u> is misplaced. In <u>Rivera</u>, the issue before the Puerto Rico Supreme Court was whether a joint tortfeasor could file a third party complaint to include an action for reimbursement or contribution against an alleged co-tortfeasor to whom the principal tort claim was time-barred. The Puerto Rico Supreme Court denied movant's request to include that action against the time-barred co-tortfeasor, finding that if the principal action underlying the tort claim was time-barred, then the right of contribution could not proceed because it was dependent on the principal action.

similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. On the other hand, postponing liquidation of Movants' claims will neither adversely affect Movants nor promote judicial economy. There is nothing urgent about Movants' claims. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment, which Movants have acknowledged. See Motion at 5. Thus, Sonnax factor 12 weighs in favor of denying the Motion.

## CONCLUSION

17. Movants have failed to establish extraordinary circumstances that justify the lifting of the automatic stay in the Title III cases of the Commonwealth and HTA. Accordingly and for the foregoing reasons, the Court should deny the Motion and find that the automatic stay should be maintained with respect to the Commonwealth (including against the DPW) and the HTA.

*Remainder of Page Intentionally Left Blank*

Dated: August 16, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*