**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND | |
| MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | **Re: ECF No. 849, 860** |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND | |
| MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | **This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.** |
| THE COMMONWEALTH OF PUERTO RICO | |
| Debtor. | |

------------------------------------------------------------x

**OBJECTION OF THE COMMONWEALTH TO URGENT MOTION FOR RELIEF
FROM STAY FILED BY MARIA J. DIAZ CASTRO [ECF NO. 849]**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this

objection (the "Objection") to the *Urgent Motion for Relief from Stay* [ECF No. 849]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

(the "Motion") filed by Maria J. Diaz Castro ("Movant").[2] The Commonwealth respectfully

requests that the Court deny the Motion for the reasons set forth below.

## PRELIMINARY STATEMENT

1.      By the Motion, Movant is seeking to lift the automatic stay to proceed with a

prepetition civil action for money damages against the Commonwealth that is still in the

preliminary stage of litigation. The conclusion of the evidentiary process, pretrial hearing(s), the

preparation and filing of dispositive motions, and the ensuing trial are all necessary for the

underlying action to proceed. As a potential prepetition, unsecured creditor of the

Commonwealth, Movant has failed to demonstrate extraordinary circumstances as to why her

claims should not be resolved through the claims resolution process to be undertaken in the Title

III cases. Given Movant's failure to make an initial showing of cause as to why the automatic

stay should be lifted with respect to the underlying action and the amount of time necessary for

the underlying action to be ready for trial, the majority of the Sonnax factors weigh in favor of

denying the Motion.

## OBJECTION

2.      The automatic stay is considered "one of the cornerstone protections under

bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and

PROMESA applies it with full force to Title III cases. See Montalvo v. Autoridad de Acueducto

y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v.

Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

3.      The automatic stay under Bankruptcy Code section 362 is supplemented in the

Title III cases by Bankruptcy Code section 922(a), also made applicable by PROMESA section

---

[2]      The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to
section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has
authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

301(a), which provides as follows:

> A petition filed . . . operates as a stay, in addition to the stay
> provided by section 362 of [the Bankruptcy Code], applicable to
> all entities, of –
>
> (1) the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other
> action or proceeding against an officer or inhabitant of the debtor
> that seeks to enforce a claim against the debtor; and
>
> (2) the enforcement of a lien on or arising out of taxes or
> assessments owed to the debtor.

11 U.S.C. § 922(a).

4.      Bankruptcy Code section 362(d)(1), made applicable by PROMESA section

301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C.

§ 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts

examine numerous different factors, including those set forth in Sonnax Indus., Inc. v.

TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[3] See

Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla, 217 F. Supp. 3d 508, 518

(D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some

courts, including those in this district, have relied upon a laundry list of assorted factors." (citing

Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R.

---

[3]     The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

2007)).

5.    As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." Id. (citations omitted).

6.    The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it and its agencies and entities must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the Commonwealth and its agencies and entities with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.   To  this point, 36 motions to lift the automatic stay have been filed in the Title III cases.

7.    Movant's underlying action before the United States District Court for the District of Puerto Rico (the "District Court"), captioned Maria Judith Díaz-Castro, representing her minor age son W.C.D. v. Commonwealth of Puerto Rico, et al., Civil Case No. 16-2873 (CCC) (the "District Court Action") seeks monetary relief for damages suffered by Movant in

4

connection with Movant's alleged wrongful imprisonment. The District Court Action was commenced on October 25, 2016 by Movant against the Commonwealth and certain inhabitants of Puerto Rico in their personal capacity, including a police officer and Department of Justice attorneys. Prior to the commencement of the Commonwealth's Title III case, the parties were in the middle of conducting discovery, which was scheduled to continue through September 22, 2017, and dispositive motions were to be filed 30 days after the conclusion of discovery. See District Court Action Case Management Order attached hereto as Exhibit A. The first settlement conference for the District Court Action is scheduled for February 21, 2018, and a jury trial is scheduled for May 11, 2018. Id. On June 30, 2017, the District Court issued an order granting the Commonwealth's petition for a stay due to the commencement of the Commonwealth's Title III case.

8.      Given the procedural status of the District Court Action, the majority of the Sonnax factors weigh in favor of maintaining the automatic stay and denying the Motion.

9.      **Sonnax Factors 1, 10, and 11**: As discussed above, the District Court Action is still at a preliminary stage. There are no dispositive motions pending before the District Court. The conclusion of the evidentiary process, pretrial hearing(s), the preparation and filing of dispositive motions, and the ensuing trial (which is scheduled for May 2018), all of which will require the Commonwealth to expend considerable time and expense, are necessary for the District Court Action to move forward. As such, the parties are not ready for trial in the District Court Action and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, Sonnax factors 1, 10, and 11 weigh in favor of denying the Motion. See In re Sonnax Indus., Inc., 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage

[and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the
disputed issues."); In re Residential Capital, LLC, 2012 WL 3860586 at *6 (denying motion to
lift the stay where, among other things, "there has been no motion practice addressing the
sufficiency of the pleadings or of the evidence supporting the claims or defenses [and]
[d]iscovery, trial preparation and, absent a settlement, trial all remain to be done"); see also
Memorandum Order Denying Julio E. Leandry-Hernandez and Ileana Ortiz-Santiago's Motion
for Relief of Stay, Case No. 17 BK 3283-LTS, ECF No. 847 (denying movants' request to lift
the automatic stay where "it is unclear whether the Lawsuit is ready for trial . . . [and] any
remaining pretrial proceedings and a trial would require the expenditure of Debtor resources and
potentially disrupt the claims resolution process established by the bankruptcy code and
incorporated into PROMESA.").

10.     **Sonnax Factors 2 and 7**: Title III of PROMESA applies with respect to all debts,
claims, and liens asserted against a Title III debtor (as such terms are defined in Bankruptcy
Code section 101), created before, on, or after the commencement of the Title III case. See 48
U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal
obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the
bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R.
Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a
"claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537
U.S. 293, 302 (2003).

11.     Movant argues that she "is not an investor nor a creditor seeking to take
possession or distribute assets belonging to the Commonwealth's estate" and that her claim
"should be excluded from a bankruptcy discharge, given that her civil action will have very little

or no effect on this bankruptcy." <u>See</u> Motion ¶ 3. While Movant may not be "an investor" of the Commonwealth, by seeking money damages against the Commonwealth related to the Commonwealth's alleged prepetition actions, Movant is a potential prepetition, unsecured creditor of the Commonwealth and therefore subject to the provisions of the Bankruptcy Code made applicable by PROMESA, including Bankruptcy Code sections 362(a) and 922(a). The automatic stay provisions of the Bankruptcy Code are expansive and "extremely broad in scope and, 'aside from the limited exceptions of subsection (b), appl[y] to almost any type of formal or informal action taken against the debtor or the property of the estate.'" <u>In re Montalvo</u>, 537 B.R. at 140.

12.     Despite Movant's wholly unsupported contention that her claims should be excluded from a bankruptcy discharge, as a potential prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Commonwealth's Title III case. Further, because no insurance coverage exists for Movant's claims in the District Court Action, any judgment obtained by Movant would be satisfied by the Commonwealth directly. Requiring the Commonwealth to defend Movant's claims before determination of what the claim resolution process will look like would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." <u>See</u> <u>Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)</u>, 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); <u>see also</u> <u>In re BFW Liquidation, LLC</u>, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the

automatic stay and the summary process for adjudicating and liquidating claims.").

13.     Lifting the automatic stay to proceed with the District Court Action will divert the Commonwealth's attention and resources to defending Movant's claims in the District Court and will encourage other creditors to seek similar relief. Because the outcome of the District Court Action will impact other creditors in the Title III case, the Department of Justice will need to coordinate its defense of the Commonwealth with the Commonwealth's and the Oversight Board's bankruptcy advisors, thereby increasing the Commonwealth's defense costs. Thus, Sonnax factors 2 and 7 weigh in favor of denying the Motion. See In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfer[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

14. **Sonnax Factor 3**: The District Court Action does not involve the Commonwealth as a fiduciary and Movant has not made such an assertion nor provided any evidence to support such an assertion. Thus, Sonnax factor 3 weighs in favor of denying the Motion.

15. **Sonnax Factor 4**: No specialized tribunal has been established to hear the District Court Action. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

16. **Sonnax Factor 5**: The Commonwealth does not have insurance coverage for the claims raised in the District Court Action and Movant has not made such an assertion or provided any evidence to support such an assertion. Thus, Sonnax factor 5 weighs in favor of denying the Motion.

17. **Sonnax Factor 6**: In addition to the Commonwealth, the defendants in the District Court Action include certain inhabitants of the Commonwealth. Despite Movant's incorrect assumption that "the automatic stay does not apply to a non-debtor," the inhabitants of the Commonwealth who are named in the District Court Action are protected under Bankruptcy Code section 922(a) as the District Court Action seeks to enforce a claim against the Commonwealth. Thus, the District Court Action cannot be characterized as primarily involving third parties and Sonnax factor 6 weighs in favor of denying the Motion. See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

18. **Sonnax Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the District Court Action, the large number of pending lawsuits against the Debtors, the diversion of

the Commonwealth's resources to defend Movant's claims, and the prejudice to interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. On the other hand, postponing liquidation of Movant's claims will neither adversely affect Movant nor promote judicial economy. There is nothing urgent about Movant's claims for money damages. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, Sonnax factor 12 weighs in favor of denying the Motion.

19.    Lastly, Movant alleges that the automatic stay should be lifted because the District Court Action is likely to succeed on the merits. See Motion ¶ 6.[4] Such an assertion is baseless and premature. No dispositive motions have been filed in the District Court Action and the parties have not yet fully briefed their positions. Thus, it is too early for a court to evaluate the merits of the Movant's case.

## CONCLUSION

20.    Movant has failed to establish extraordinary circumstances that justify the lifting of the automatic stay in the Commonwealth's Title III case. Accordingly and for the foregoing reasons, the Court should grant the Objection and deny the Motion.

---

[4]    Movant's reliance on Tribune Media Serv., Inc. v. Beatty (In re Tribune Co.), 418 B.R. 116 (Bankr. D. Del. 2009) in support of this proposition is misplaced. As an initial matter, in Tribune the bankruptcy court applied a three-pronged test for determining whether cause existed to lift the automatic stay that explicitly examines whether the creditor has a probability of prevailing on the merits. Id. at 126. Such an analysis is absent from the Sonnax factors and should not be considered by this Court. Further, in Tribune, the movant "introduced into evidence a Declaration detailing specific dates, potential witnesses, and other facts to support his position . . . and a copy of an agreement between [movant] and Turner Classic Movies, Inc. . . . ." Id. at 128. Even if this Court were to analyze Movant's success on the merits, which it should not, Movant has failed to introduce any evidence to support its argument that it will most likely succeed on the merits in the District Court Action.

10

Dated: August 16, 2017
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

## Exhibit A

**District Court Action Case Management Order**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

MARIA JUDITH DIAZ-CASTRO,
representing her minor age son
W.C.D.

Plaintiff

vs

COMMONWEALTH OF PUERTO
RICO; JUAN J. COLON-BAEZ;
MARIO RIVERA-GEIGEL; LUIS
RIOS-DIAZ; LUIS NAVAS-DE LEON;
LEILANY CARRION-DEL TORO;
JOHN DOES 1-100

Defendants

CIVIL 16-2873CCC

## CASE MANAGEMENT ORDER

The Court issues this Case Management Order pursuant to Fed. R. Civ. P. 16(b). The purpose of the Case Management Order is to schedule and plan the course of litigation to achieve a just, speedy and inexpensive determination of this action. The Court expects that counsel will (1) be mindful that, as officers of the Court, they are duty-bound to conduct themselves with utmost civility and professionalism to each other and the Court, (2) faithfully adhere to the Federal Rules of Civil Procedure and the Court's Local Rules, (3) earnestly attempt to resolve discovery disputes without the need for Court intervention.

### I.    CASE MANAGEMENT DEADLINES

The Court has organized the Case Management Order according to the successive milestones that occur throughout the life of the average "standard track" lawsuit. See Amended Civil Justice Expense and Delay Reduction Plan for Implementation of the Civil Justice Reform Act of 1990 in the District of Puerto Rico. The parties are advised that the Court has been lenient in allocating time for completion of each milestone to avoid later amendments to

CIVIL 16-2873CCC                           2

the schedule.  Unless the Court orders otherwise, the conditions and deadlines set forth in this Order are binding on all parties and counsel.

    A.   <u>Preliminary Deadlines</u>

    Any defendant who has not answered the complaint, notwithstanding having filed a motion to dismiss or other dispositive motion,  shall file the answer within fifteen (15) days after notice of this order, unless the court  has already granted a specific term in which to answer the complaint by separate order.  **All unidentified "John Doe" type defendants shall be identified by their true names within thirty (30) days after notice of this order**.  Failure to do so will result in their dismissal without prejudice.

    B.   <u>Rule 26(a)(1) Initial Mandatory Disclosures</u>

    Pursuant to Fed. R. Civ. P. 26(a)(1), the parties must, <u>without awaiting a discovery request</u>, provide to the other parties the following information: (1) the names and, if known, the address and telephone numbers of each individual likely to have discoverable information that the discovering party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information of all individuals who have discoverable information regarding the case, (2) a copy of, or a description by category and location of all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment, (3) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, (4) for inspection and copying as

CIVIL 16-2873CCC                    3

under Rule 34 any insurance agreement under which any person carrying on

an insurance business may be liable to satisfy part or all of a judgment which

may be entered in the action or to indemnify or reimburse for payments made

to satisfy the judgment.  <u>See</u> Fed. R. Civ. P. 26(a)(1)(A)-(D).

These Rule 26(a)(1) mandatory disclosures, if still not made, shall be

made by **APRIL 28, 2017**.  The parties are reminded that they must make their

initial disclosures based on the information then reasonably available to them

and are not excused from making their disclosures because they have not fully

completed their investigation of the case or because they challenge the

sufficiency of another party's disclosures or because another party has not

made its disclosure.

C.   Rule 26(a)(2) Mandatory Disclosures of Expert Testimony

Pursuant to Rule 26(a)(2)(A), in addition to the disclosures required

above, a party shall disclose to other parties the identity of any person who

may be used at trial to present evidence  under Rules 702, 703 or 705 Federal

Rules of Evidence.

Pursuant to Rule 26(a)(2)(B):

> [T]his disclosure shall, with respect to a witness who is retained or
> specially employed to provide expert testimony in the case or
> whose duties as an employee of the party regularly involve giving
> expert testimony, be accompanied by a written report prepared and
> signed by the witness.   The report shall contain a complete
> statement of all opinions to be expressed and the basis and
> reasons therefor; the data or other information considered by the
> witness in forming the opinions; any exhibits to be used as a
> summary of or support for the opinions; the qualifications of the
> witness, including a list of all publications authored by the witness
> within the preceding ten years; the compensation to be paid for the
> study and testimony; and a listing of any other cases in which the
> witness has testified as an expert at trial or by deposition within the
> preceding four years.

These Rule 26(a)(2)(B) mandatory disclosures on experts shall be made

in the following manner:

CIVIL 16-2873CCC                    4

(1)  Plaintiff's expert report is due sixty (60) days **before** expiration of the discovery deadline.

(2)  All defendant's expert reports are due thirty (30) days **before** expiration of the discovery deadline. The parties must file any objections under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 US 579 (1993), no later than thirty (30) days after conclusion of discovery.   Response(s) are due twenty (20) days thereafter.  Failure to raise objections within this timeframe will be deemed to constitute a waiver of any Daubert challenge.

The parties are admonished that, pursuant to Rule 26(b)(4)(A) the deposition of an expert witness shall not be conducted unless the report has been timely provided pursuant to Section C(1) and (2) of this Order.

D.   Discovery Deadline

The parties are GRANTED until **SEPTEMBER 22, 2017** to conduct discovery.  By this deadline, all interrogatories and requests for admissions must be answered and all depositions and examinations taken. This means that interrogatories and requests for admissions must be served at least thirty (30) days prior to the deadline and notice of depositions given within a reasonable time within the deadline. The parties are advised that the discovery period established herein will not be postponed or altered except for good cause shown**.** Any motion seeking an extension of the discovery deadline must be filed well in advance of the deadline, and shall contain the specific reasons why the Court shall extend the discovery deadline as well as the extension proposed.

During the discovery period the parties shall engage in cooperative efforts to conclude all their discovery.  The parties will not be allowed to extend discovery on their own by merely agreeing to do so.  Nor may the parties stay

CIVIL 16-2873CCC                     5

the discovery by agreement. **A stay of proceedings requires a Court order.**
In the absence of a Court order, discovery shall continue even if there is a
dispositive motion pending. Any discovery problem which may not be solved
informally as required by the Local Rules of Procedure, shall be brought
promptly to the Court's attention. However, a party with a discovery dispute
must first confer with the opposing party in a good faith effort to resolve by
agreement the issues in dispute, as required by Local Civil Rule 26(b). If that
good faith effort is unsuccessful, the moving party may seek a prompt hearing
with a Magistrate Judge by telephone or in person. While any such problem
is pending resolution by the Court, discovery on all other matters shall
continue. The parties are reminded that they are not to file any discovery
papers with the Court other than as permitted by Local Civil Rule 26(c).

    E.   Dispositive Motions Deadline

    Any dispositive motion shall be filed within thirty (30) days after the
conclusion of discovery. If not filed by said date, the arguments thereunder
shall be deemed waived. Any opposition will be filed within ten (10) days after
notice of the filing of the motion. If any reply to the opposition is needed, it
shall be filed only after requesting leave from the Court as required by Local
Civil Rule 7(c). No other pre-trial dispositive motion shall be filed without first
requesting and obtaining the Court's permission. The filing of dispositive
motions does not serve as a basis to vacate the pretrial and settlement
conference settings, nor does it interrupt discovery or suspend any of the
deadlines set in this Case Management Order.

    Notwithstanding the deadline established above, if a given issue is
mature for summary disposition the Court expects the parties to file a motion
under Fed. R. Civ. P. 56 as soon as the issue ripens. The Court advises

CIVIL 16-2873CCC                    6

counsel to be selective when filing summary judgment motions.  Dispositive motions as a whole are useful tools for managing certain kinds of issues and cases, but they should be used sparingly, and only after a close examination of the facts and applicable law.  Motions anchored on tenuous grounds should be avoided at all costs.

The Court will not accept so-called motions "to dismiss and/or for summary judgment." The standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim requires the Court to take all well-pleaded allegations of fact as true, while the standard applicable to a Rule 56 motion for summary judgment requires only that the Court indulge in favor of the non-moving party all reasonable inferences arising from such facts as may have been established by affidavit, deposition, or other such reliable method. Furthermore, the requirements of Local Civil Rule 56 apply only to motions for summary judgment.  Filing hybrid motions is inappropriate and fosters only confusion and delay.

Dispositive motions shall not exceed twenty-five (25) pages in length. The Court will not consider motions which exceed that length unless the filing party requests prior leave from the Court, and then only for good cause shown.

The Court reminds the parties that when moving for summary judgment they are required to file, as an annex to the motion:

> [A] separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue . . . to be tried.  Each fact asserted in the statement shall be supported by a record citation as required by subsection (e) of [Local Civil Rule 56(e)].

See Local Civil Rule 56(b).  The Court will deny any motion for summary judgment that fails to comply with **any** part of this rule.

CIVIL 16-2873CCC                      7

F.    Motions in Limine

Deadline for filing motions in limine will be established at the Pretrial/Settlement Conference.

G.    Pretrial Conference

**The pretrial conference will be held on FEBRUARY 21, 2018 at 5:00 PM.**  This conference will be governed by Fed. R. Civ. P. 16 and Local Civil Rule 16(c), (d), (e), (f), (g) and (h).  Each party shall be represented by the attorney who expects to conduct the actual trial and each attorney shall be familiar with the rules of pretrial aforementioned.

Counsel are directed to meet informally at least fifteen (15) days prior to the date of the pretrial conference to discuss settlement and if settlement cannot be reached, to review, mark, and designate exhibits and depositions, discuss and prepare the proposed Joint Pretrial Order.  A sample of a Joint Proposed Pretrial Order is available and may be requested from the undersigned's Courtroom Deputy Clerk.  The proposed Joint Pretrial Order shall be filed with the Clerk of the Court  at least five (5) days before the scheduled date for the pretrial conference.  **A courtesy copy of the Joint Pretrial Order must be sent to the undersigned's chambers.**  Counsel are reminded that failure to participate in good faith in the preparation of the required Joint Pretrial Order, or participating while being substantially unprepared, are noncompliant acts under Fed. R. Civ. P. 16(f) and 41(b), that may result in sanctions, including the payment of reasonable expenses incurred by the noncompliance or fines levied upon attorneys personally; dismissal of the complaint; the prohibition of certain witness' testimony and the admission of facts.  See Boettcher v. Hartford Insurance Co., 927 F.2d 23 (1st Cir. 1991); Vakalis v. Shawmut Corp., 925 F.2d 34, 36 (1st Cir. 1991).

CIVIL 16-2873CCC                    8

Once the Joint Proposed Pretrial Order is approved by the Court, it will govern the trial proceedings and amendments will only be allowed by the Court to prevent manifest injustice.

H.   Settlement Conference

**A settlement conference will also be held on FEBRUARY 21, 2018 at 5:00 PM.**  The Court will explore settlement prospects at the conference because it believes that extrajudicial resolution of disputes is the most efficient and effective way to end litigation.  To that end, counsel must have their clients available by telephone or in person for immediate consultation during the settlement conference**.**

I.   Trial

**The jury trial in this action will be held on MAY 11, 2018 from 9:30 AM to 1:00 PM and from 2:00 PM to 5:00 PM.**  The parties are hereby GRANTED a term of fifteen (15) days after notice to inform of any calendar conflicts or other reasons which may justify a continuance of this setting.  The parties are admonished that if no objections are raised to this setting within the term allowed, NO CONTINUANCES WILL LATER BE GRANTED.  They are expressly advised that trial will not be continued because counsel have agreed to recommend a settlement.   A trial date will be passed ONLY IF A SETTLEMENT HAS BEEN FIRMLY BOUND.

*1.   Calendar conflicts*

The parties are advised that pursuant to Local Civil Rule 3.2(f), the following order of precedence is established to resolve calendar conflicts amongst judicial officers:

a.   Trials shall take precedence over all other hearings.

b.   Jury trials shall take precedence over non-jury trials.

CIVIL 16-2873CCC                              9

c.    Criminal cases shall take precedence over civil cases.

d.    Criminal cases involving defendants in custody shall take precedence over other criminal cases.

e.    Among criminal cases not involving defendants who are in custody, the case having the earliest docket number shall take precedence over the others.

f.    Among civil cases, the case having the earliest docket number shall take precedence over the others.

Counsel are advised that, pursuant to said Rule, when there is a conflict between court appearances they have the obligation to  notify each Judge involved, in writing, not later than three (3) business days after receipt of the notice giving rise to the conflict, indicating the names and docket numbers of each case and the date and time of the conflicting hearings.

*2.  Marking of exhibits*

At least ten (10) working days before the date scheduled for trial, the parties will meet to mark all evidence to be presented at trial and prepare an exhibit list.  A sample of the exhibit list form is available and may be requested from the undersigned's Courtroom Deputy Clerk.  The parties must deliver the exhibits and identifications, along with the typed list, to the Courtroom Deputy Clerk at least five (5) days before the date of the trial.  Each party is to prepare its own separate list, and if there are any joint exhibits, a separate list for them shall also be prepared.  The exhibits for the plaintiff(s) are to be marked with numbers, those for the defendant(s) with **letters**, and the joint exhibits with **Roman numerals**.

In filling out the exhibit list forms, the boxes for the dates shall be left blank.  The Courtroom Deputy Clerk will fill them on the first day of trial.  In the

CIVIL 16-2873CCC                    10

"marked" box the parties shall indicate "E" for exhibit or "ID" for identification.
If and when the Court admits an identification, and it becomes an exhibit, the
Courtroom Deputy Clerk will indicate in the "admitted" box the appropriate date.
The parties shall provide a short description of the exhibit, but do not have to
identify the witness that will be used to present it. Any questions on how to fill
the forms may be addressed to the Courtroom Deputy Clerk who will be
available to assist the parties.

Failure to comply with this procedure shall result in the imposition of
sanctions, including the exclusion of the exhibit or identification at trial.

The parties are reminded that all exhibits must be officially translated into
English before they are marked. This includes any deposition transcripts or
parts thereof that will be used at trial whether as evidence or for impeachment
purposes. The Court will strictly enforce this translation requirement and will
not admit any exhibit which is not in English. See U.S. v. Rivera-Rosario,
300 F.3d 1 (1st Cir. 2002).

Additionally, the parties are advised that it is the policy of this Court that
the party who presents Spanish-speaking witnesses must pay the interpreter.
This interpreter must be certified by the Administrative Office of the
U.S. Courts. The Court only provides interpreters for criminal proceedings.

   3.   *Proposed Voir Dire and Jury Instructions*

The basic voir dire and jury instructions are, in general, prepared by the
Court. **The parties shall not submit instructions of the type that are
ordinarily used in every case.** They shall submit **only** special instructions or
wording that they believe necessary for the specific facts of their case.
Instructions should be carefully reviewed prior to submission. The Court is not
interested in receiving a panoply of possible suggested instructions from which

CIVIL 16-2873CCC                                    11

to choose, for each point.   One for each specific point will suffice and differences in specific wording will be resolved at the charge conference.

In an effort to streamline and facilitate the compilation of the instructions, the attorneys shall follow the requested format.  Submissions not complying with these requirements will not be considered.

a.   Any preliminary jury instructions shall be packaged with the proposed voir dire.

b.   Each instruction shall appear on a separate page, and be numbered and identified as to the party:  e.g. Plaintiff's Proposed Instruction #1.

c.   Each instruction shall have a caption identifying its contents, e.g. Interstate Commerce - Definition.

d.   Each instruction shall be followed by a citation to a source, either an accepted pattern book or supporting case law.  Instructions taken from pattern books must be from the current edition and be identified by the year as well as the title.

e.   All instructions supported by case law, treatises, articles, and the like, shall include as an addendum photocopies of the complete cases or materials cited therein.   Each photocopy shall be identified as to which instruction number(s) it supports, and the specific section supporting each instruction should be either highlighted or marked with brackets.  **The copies of cases and materials should not be filed.**

Requested voir dire and instructions shall be filed no later than seven (7) working days before trial.  **Two sets of working copies and one set of photocopies of supporting cases shall be delivered to chambers, in addition to the set filed.**

CIVIL 16-2873CCC                              12

***Parties failing to timely file their instructions, or to fully comply with***
***the requirements for courtesy copies and case photocopies will waive***
***their right to propose instructions***.

**II.   SANCTIONS FOR FAILURE TO COMPLY WITH THE CASE**
**MANAGEMENT ORDER**

The parties are advised that failure to comply with any part of this Order
will result in the imposition of appropriate sanctions.

SO ORDERED.

At San Juan, Puerto Rico, on March 28, 2017.

S/CARMEN CONSUELO CEREZO
United States District Judge