IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico, as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17-BJ 3283-LTS |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**TO THE HONORABLE DISTRICT COURT JUDGE LAURA TAYLOR SWAIN**:

COMES NOW the party in interest, Gerson Gonzalez-Ricaño, through the undersigned counsel, and very respectfully, states and prays as follows:

### INITIAL STATEMENT

Movant urges this Court to vacate the PROMESA automatic stay regarding his case in the U.S. District Court for The District of Puerto Rico titled Gerson Gonzalez-Ricaño v. Commonwealth of Puerto Rico, et al., Civil No. 17-1683 (WGY). For various reasons, including the lack of adequate protection, the continuation of the constitutional violations and irreparable harm against Mr. Gonzalez-Ricaño's constitutional and property rights outweighs the detriment that the Commonwealth of Puerto Rico ("Commonwealth") would suffer, if any, if the stay were vacated to address them.

As we will demonstrate, in the event that this Court does not grant the relief requested herein, Plaintiff Gonzalez-Ricaño will suffer irreparable and non-pecuniary harm, inasmuch as it would be deprived of its due process right to have the US District Court for the District of Puerto Rico, determine (i) whether his Second Amendment rights were violated; (ii) if he has been the

1

subject of an illegal seize or taking by the Commonwealth with his constitutional right to property violated; and (iii) in the event that a violation has taken place, how much just compensation the Commonwealth will have to pay.

On August 7 and 8 of 2015, Puerto Rico Police (PRP) officers visited Mr. Gonzalez-Ricaño and informed him that since his firearms license renewal was past due they were seizing his firearms, ammunition and license. As a matter of fact the officers told Mr. Gonzalez-Ricaño that as soon as he renewed his license he could pick up his firearms and ammunition at PRP headquarters.

A week after the seize, on August 14, 2015, Mr. Gonzalez-Ricaño submitted his license renewal forms with all the required documentation and paid double the accumulated fine as required by state law. A few days later Mr. Gonzalez-Ricaño received his renewed license with the date of August 20, 2015 as the date it was reissued and an expiration date of August 19, 2020.

On September 2, 2015 Mr. Gonzalez-Ricaño went to the PRP headquarters with his renewed license to pick up his seized firearms and ammunition. There in clear violation of his constitutional rights the return of his property was denied and further more his recently renewed licensed was also seized without any valid reason. To this date the PRP has not return his property or offer any kind of compensation for it and most importantly had not return his weapons license which is preventing Mr. Gonzalez-Ricaño to exercise his constitutionally fundamental right to self-defense.

## I. JURISDICTION

This Honorable Court has jurisdiction to grant the relief sought in the instant Motion pursuant to section 362(d) of title 11 of the United States Bankruptcy Code, which applies to this proceeding pursuant to section 301 of the *Puerto Rico Oversight, Management, and Economic*

2

*Stability Act of 2016* ("PROMESA"). 48 USC §§ 2161. Movant files this Motion under the case management procedures applicable in the captioned case and Rule-4001-1 of the Local Bankruptcy Rules of Bankruptcy Court for the District of Puerto Rico.

## II. PROCEDURAL BACKGROUND

Mr. Gonzalez Ricaño Complaint against the Commonwealth of Puerto Rico was filed on May 19, 2017, case Civil No. 17-1683 (WGY). The basis for the Complaint is the fact that the PRP seized and refuses to return Mr. Gonzalez Ricaño's firearms license, firearms and ammunition. All this even after Mr. Gonzalez Ricaño filled his renewal papers, paid all applicable penalties and received his renewed licensed issued by the PRP Firearms License Office.

As of this date, the U.S. District Court for the District of Puerto Rico has not made a determination as to (i) whether Mr. Gonzalez Ricaño's Second Amendment rights were violated; (ii) if he has been the subject of an illegal seizure or taking by the Commonwealth with his constitutional right to property violated; and (iii) in the event that a violation has taken place, how much just compensation the Commonwealth will have to pay him.

PROMESA was enacted on June 30, 2016. On May 3, 2017, the Oversight Board filed a Title III petition before this Honorable Court. On July 5, 2017, the Commonwealth filed a Notice of Automatic Stay in Mr. Gonzalez- Ricaño's U.S. District Court case.

The Commonwealth alleges that, pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under Section 301(a) of PROMESA, the commencement or continuation "of a judicial, administrative, or other actions or proceedings against the debtor that was or could have been commenced before the commencement" of the petition under Title III or "any act to collect, assess, or recover a claim against the debtor that

3

arose before the commencement of the case under" a Title III proceeding is automatically stayed without further action.

The Commonwealth requested the U.S. District Court to take judicial notice of the above and stay the proceedings in the case pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA, 48 USC § 2161(a).

On July 10, 2017, the U.S. District Court issue an order staying the above mention case (Docket 13).

### III. APPLICABLE LAW

**A. Automatic Stay Provision in PROMESA**

On June 30, 2016, the President of the United States signed PROMESA into law. Said legislation seeks to tackle the calamitous fiscal emergency in Puerto Rico and is designed to institute a "comprehensive approach to [Puerto Rico's] fiscal, management and structural problems and adjustments… involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA § 405(m)(4). The statute established a seven-member Oversight Board ("Board") for Puerto Rico with the purpose of providing a method for the island to achieve fiscal responsibility and access to the capital markets. *Id*. at §§ 101(b)(1),

Among PROMESA's provisions is an automatic stay of all liability related litigation against the Commonwealth, which is applicable once the Board files a Title III petition to commence debt-adjustment proceedings under the legal framework set forth in the statute. *Id* at § 405(d). Under PROMESA, the Honorable Court may, however, grant relief from the stay to "party in interest either "for cause shown", or "to prevent irreparable damage" to the party's interest in property.

**B. Vacating the automatic stay "for cause"**

In the recent case of Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla *et al*., 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of PROMESA. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so".

Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), states as follows (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

In defining what constitutes "cause" for relief from the automatic stay in the context PROMESA, the First Circuit took into account the (i) judicial interpretations of the term within the context of section 362 of the United States Bankruptcy Code ("Code"), 11 USC § 3621, and also, (ii) additional considerations related to the particular circumstances of the PROMESA legal framework. The Court began by noting that section of the Code provides that courts may grant relief from the automatic stay to a party in interest for "cause", but the statute also fails to expressly define how the term must be construed and applied. 11 USC § 362(d)(1); Brigade

5

Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla *et al*., 217 F. Supp. 3d 508, 517 (1st Cir. 2016).

In *Brigade Leveraged,* the First Circuit reiterated the discretionary nature of the decision to grant relief on a case-by-case basis. *See* Claughton v. Mixton, 33 F. 4, 5 (4th Cir. 1994) (noting that Congress "has granted broad discretion to bankruptcy courts to lift the automatic stay and the courts must determine when discretionary relief is appropriate on a case-by-case basis".) The Court established that "the process of evaluating whether there is sufficient "cause" to vacate the automatic stay requires the court to engage in an equitable, case-by-case balancing of the various. *See*, *e.g*., Peerless Ins. Co v. Rivera, 208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from the continuation of the stay would outweigh any harm that might be suffered by the debtor…if the stay is lifted."); In re Turner, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor."); In re Harris, 85 BR 858, 860 (Bankr. D. Colo. 1998) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and the "hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay").

In view of the foregoing, the First Circuit held that the Court's "ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted". Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla *et al*., 217 F. Supp. 3d 508, 518-519 (1st Cir. 2016).

Finally, in determining whether cause exists, most courts "balance the hardship to the creditor, if he is not allowed to proceed with his lawsuit, against potential prejudice to the debtor, debtor's estate and other creditors." In re R.J. Groover Constr., LLC, 411 B.R. 460, 463-64 (Bankr. N.D. Ga. 2008). In carrying out this balancing test, courts have considered numerous factors.

**B. The Second, Fourth and Fifth Amendments**

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, **the right of the people to keep and bear Arms, shall not be infringed**." U.S. Const. amend. II. In United States v. Heller, the Supreme Court confirms that the Second Amendment secured an individual, not just a collective, right to bear arms. 554 U.S. 570, 576–95 (2008). It elevated "above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635.

In *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the Supreme Court concluded that "the Framers and ratifiers of the Fourteenth Amendment, U.S. Const. amend. XIV, counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty". The Court also held that the Second Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment.

The Fourth Amendment to the U.S. Constitution, U.S. Const. amend. IV, protects personal privacy, and every citizen's right to be free from unreasonable government intrusion into their persons, homes, businesses, and property, whether through police stops of citizens on the street, arrests, or searches of homes and businesses. "The protection of the Fourth Federal Amendment has been extended in its entirety to Puerto Rico. Torres v. Com. of Puerto Rico, 442 U.S. 465, 471 (1979).

7

Section 10 of Article II of the Constitution of Puerto Rico provides that "the right of the people to the protection of their persons, houses, papers and effects against unreasonable searches and **seizures** shall not be violated." P.R. Const. art. II, § 10.

The Fifth Amendment, U.S. Const amend. V, states that no one shall be "deprived of life, liberty or **property** without due process of law." The Fourteenth Amendment, U.S. Const amend. XIV, ratified in 1868, uses the same eleven words, these words have as their central promise an assurance that all levels of government must operate within the law and provide fair procedures.

Article II, Section 7, of the Puerto Rico Constitution, P.R. Const. Art. II, § 7, affirms, "[T] he right to life, liberty and **enjoyment of property** is recognized as a fundamental right of man".

## IV. ARGUMENT

This Honorable Court should grant the relief from the automatic stay, since the harm flowing from the continuation of the constitutional violations suffered by Mr. Gonzalez-Ricaño outweighs the detriment that the Commonwealth would suffer if the stay were vacated to address them.

If Mr. Gonzalez-Ricaño is not allowed to continue the litigation of these controversies in the U.S. District Court it will continue to cause him irreparable, non-monetary injury to his constitutional and property rights. In the event this Honorable Court denies the present request for relief, Mr. Gonzalez-Ricaño would be deprived of its rights to have a clear and definite understanding regarding its bankruptcy rights, since a determination validating the existence of an illegal seizure or taking of property would allow Mr. Gonzalez-Ricaño to become a constitutionally secured creditor of the Government with a right to defend its creditor claims in

8

this process. The continuation of the U.S. District Court case is the only viable means in which Mr. Gonzalez-Ricaño would be in a position to determine whether, as matter of fact, he has a right to file a proof of claim in the Title III case, or whether it is a non-dischargeable creditor in such case.

On the other hand, the Commonwealth will suffer no harm as a result of the lifting of the automatic stay, since the same (i) will not disrupt the Commonwealth's processes for managing the Commonwealth; and (ii) will not interfere with the Commonwealth's ability to provide essential services. In other words, vacating the automatic stay in this case will not harm the Commonwealth or the PROMESA process and will not undermine the comprehensive, consolidated and restructuring approach that the statute was ultimately designed to facilitate, including under Title III proceedings.

Also, in this case there is a lack of connection or interference with the bankruptcy case, litigation in the U.S. District Court will not interfere with this Court's handling of the bankruptcy. The litigation in the District Court does not involve bankruptcy law or require the expertise of a bankruptcy judge. Leaving the adjudication of the merits to the District Court will enable this Court to focus its attention and expertise on the bankruptcy proceedings. However this case does require the expertise of a court that has manage constitutional and civil rights violation cases. This factor supports lifting the stay so the case may continue before the U.S. District Court judge.

There is a probability of success in the District Court case, Mr. Gonzalez-Ricaño is likely to prevail on the merits of its case. Ulpiano Unanue Casal, 159 B.R. at 96 (citing Pro Football Weekly, 60 B.R. at 824). "Even a slight probability of success on the merits may be sufficient to

support lifting an automatic stay in an appropriate case." In re Tribune Co., 418 B.R. 116, 129 (Bankr. D. Del. 2009) (quotation omitted).

The enforcement of the PROMESA stay will cause constitutional injuries to Mr. Gonzalez-Ricaño, since it places his constitutional right to keep and bear arms for self defense, his property and creditor rights in an indefinite state of legal uncertainty, due to the fact that the U.S. District Court is currently proscribed from determining (i) whether Mr. Gonzalez-Ricaño's Second Amendment rights were violated; (ii) he has been the subject of a taking by the Commonwealth with his constitutional right to property violated; and (iii) how much just compensation the Commonwealth will have to pay. The resolution of these three (3) legal controversies is determinative for Mr. Gonzalez-Ricaño's creditor rights, since, in the event that the District Court rules in its favor, it would become a constitutionally protected creditor of the Commonwealth.

Furthermore, should this Honorable Court determine that the automatic stay is applicable to determination by the U.S. District Court on whether Mr. Gonzalez-Ricaño's constitutionally protected rights to self defense and property use have been transgressed, it would (i) be un-penalizing the acts of civil violations of the PRP; (ii) impede Mr. Gonzalez-Ricaño to exercise his constitutionally fundamental right to self-defense and the enjoyment of his property; and (iii) preclude Mr. Gonzalez-Ricaño from enforcing its rights as a creditor under the instant PROMESA Title III case, or as non-dischargeable creditor of the Commonwealth.

In view of the foregoing, in order to prevent the continuation of Mr. Gonzalez-Ricaño's constitutional injuries, it is respectfully requested that this Honorable Court enter an Order lifting the automatic stay in order to continue his case at the U.S. District Court for the District of Puerto Rico.

**CONCLUSION**

The resolution of this legal controversy is indispensable to prevent irreparable harm by allowing the determination of Mr. Gonzalez-Ricaño's liability claims rights against the Commonwealth and prevent an instance in which the application of the automatic stay would proscribe Mr. Gonzalez-Ricaño from adequately protecting his constitutional and property rights arising under the Second, Fourth and Fifth Amendments of the United States and the Commonwealth's Constitutions. Moreover, the Commonwealth will suffer no harm as a result of the lifting of the automatic stay, since the same (i) will not disrupt the Commonwealth's processes for managing the Commonwealth; and (ii) will not interfere with the Commonwealth's ability to provide essential services. In other words, vacating the automatic stay in this case will not harm the Commonwealth or the PROMESA process and will not undermine the comprehensive, consolidated and restructuring approach that the statute was ultimately designed to facilitate.

In order to prevent the continuation of Mr. Gonzalez-Ricaño's constitutional injuries, it is respectfully requested that this Honorable Court enter an Order lifting the automatic stay in order for the U.S. District Court for the District of Puerto Rico to resolve (i) whether his Second Amendment rights were violated; (ii) if he has been the subject of an illegal seizure or taking by the Commonwealth with his constitutional right to property violated; and (iii) in the event that a violation has taken place, how much just compensation the Commonwealth will have to pay. This is essential in order to clarify Mr. Gonzalez-Ricaño creditor's rights for purposes of the instant Title III case.

**WHEREFORE** Mr. Gonzalez-Ricaño respectfully requests that this Honorable Court (i) take notice of the foregoing; (ii) after notice and hearing, enter an Order vacating the automatic

stay arising under §301 (a) of PROMESA and Bankruptcy Code § 362 to allow the District Court for the District of Puerto Rico to adjudicate Mr. Gonzalez-Ricaño rights with regards to his constitutional violations and just compensation in the case titled Gerson Gonzalez-Ricaño v. Commonwealth of Puerto Rico, et al., Civil No. 17-1683 (WGY).; and (iii) grant any further relief that may be deemed just and proper under the particular circumstances of the instant case.

**I HEREBY CERTIFY** that a true and exact copy of this document was served with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 22nd day of August 2017.

**/S/Roberto Otero-Ortega**
Roberto Otero-Ortega
USDC-PR 231003
Ponce de León Ave. #712
San Juan, P.R. 00918
Tel. (787) 773-7765
Fax. (787) 777-1347
E-mail: rotero@ccdlawpr.com
Attorney for Plaintiff