### UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

      Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO

      Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 952, 1015**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the
Commonwealth and shall only be
filed in the lead Case No. 17 BK
3283-LTS.**

### OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY FILED BY ALVIN MARRERO-MÉNDEZ [ECF NO. 952]

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

OBJECTION ........................................................................................................ 2

    A.    Movant's Claim that the Title III Stay Does Not Apply to the District
Court Action is Barred by the Doctrines of Res Judicata and Collateral
Estoppel.................................................................................................4

    B.    The Title III Stay Applies To The District Court Action.........................7

    C.    The Title III Stay Applies to the Officers .............................................9

    D.    Movant Has Failed to Establish that Cause Exists to Lift the Title III Stay
to Continue the District Court Action ................................................10

CONCLUSION..................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alvin Marrero-Méndez, et al. v. Hector Pesquera, et al.,
  Case No. 13-cv-1203 (D.P.R. July 20, 2017) .....................................................2, 4, 6

Atiles-Gabriel v. Puerto Rico,
  No. CV 15-2108 (GAG), 2017 WL 2709757 (D.P.R. June 23, 2017) .....................................7

Aunyx Corp. v. Canon U.S.A., Inc.,
  978 F.2d 3 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993) ..................................5

In re BFW Liquidation, LLC,
  No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) ....................14

Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,
  217 F. Supp. 3d 508 (D.P.R. 2016)...........................................................2, 9, 11, 13

C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,
  369 B.R. 87 (D.P.R. 2007)...................................................................11

In re Chesapeake Contractors, Inc.,
  413 B.R. 254 (Bankr. D. Md. 2008) ...........................................................5

City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),
  28 B.R. 324 (Bankr. S.D.N.Y. 1983) ........................................................16

In re City of San Bernardino,
  558 B.R. 321 (C.D. Cal. 2016) ...............................................................9

In re City of Stockton, Cal.,
  484 B.R. 372 (Bankr. E.D. Cal. 2012)........................................................9

Estate of Cowart v. Nicklos Drilling Co.,
  505 U.S. 469 (1992)..........................................................................7

In re Elsinore Shore Assocs.,
  66 B.R. ...........................................................................................9

FCC v. NextWave Pers. Commc'ns Inc.,
  537 U.S. 293 (2003)..........................................................................14

Federated Dep't Stores, Inc. v. Moitie,
  452 U.S. 394 (1981)...........................................................................5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

In re Gatke Corp.,
    117 B.R. 406 (Bankr. N.D. Ind. 1989)...................................................................15

Grella v. Salem Five Cent Sav. Bank,
    42 F.3d 26 (1st Cir. 1994)................................................................................5

McCartney v. Integra Nat. Bank N.,
    106 F.3d 506 (3d Cir. 1997)...........................................................................10

Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo),
    537 B.R. 128 (Bankr. D.P.R. 2015) ..............................................................2, 13

Montana v. United States,
    440 U.S. 147 (1979)........................................................................................6

In re Northwest Airlines Corp.,
    No. 05-17930 (ALG), 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13, 2006) ..........................15

Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),
    980 F.2d 110 (2d Cir. 1992)...........................................................................14

Quiles Rodriguez v. Calderon,
    172 F. Supp. 2d 334 (D.P.R. 2001).................................................................7

In re Residential Capital, LLC,
    Case No. 12-12020 (MG), 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) .............11, 12

Soares v. Brockton Credit Union (In re Soares),
    107 F.3d 969 (1st Cir. 1997)...........................................................................2

Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990).....................................................................10, 11, 12

Southern Pac. R. Co. v. United States,
    168 U.S. 1 (1897)...........................................................................................6

In re SunEdison, Inc.,
    557 B.R. 303 (Bankr. S.D.N.Y. 2016)............................................................15

Vazquez-Carmona v. Dep't of Educ. of Puerto Rico,
    No. CV 16-1846 (GAG), 2017 WL 2352153 (D.P.R. May 31, 2017) ....................8

**Statutes**

32 L.P.R.A. § 3085 ..........................................................................................3, 10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

32 L.P.R.A. § 3092 ..................................................................................................10

11 U.S.C. § 101 ......................................................................................................13

11 U.S.C. § 101(4) ...................................................................................................9

11 U.S.C. § 105(A) ..................................................................................................8

11 U.S.C. § 362 .............................................................................................1, 2, 7, 9

11 U.S.C. § 362(a) ......................................................................................... *passim*

11 U.S.C. § 362(d)(1) ........................................................................................10, 11

11 U.S.C. § 365 ......................................................................................................8

11 U.S.C. § 922 ............................................................................................1, 7, 8, 10

11 U.S.C. § 922(a) ......................................................................................... *passim*

11 U.S.C. § 922(b) ...................................................................................................10

48 U.S.C. 2101 ........................................................................................................13

48 U.S.C. § 2106 .....................................................................................................9

48 U.S.C. § 2161(a) ............................................................................................7, 8, 10

48 U.S.C. 2194 ........................................................................................................13

P.R. Laws Ann. tit. 32, §§ 3085, et seq. .....................................................................3

P.R. Laws Ann. tit.32, § 3092 ....................................................................................3

P.R. Laws Ann. tit. 32, § 3092a ..................................................................................3

PROMESA § 301 .....................................................................................................4

PROMESA § 301(a) .......................................................................................1, 2, 8, 10

PROMESA § 315(b) .................................................................................................1

PROMESA § 405(a) .................................................................................................13

PROMESA § 405(b) .................................................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

PROMESA § 7 ........................................................................................................................9

**Other Authorities**

Commonwealth of Puerto Rico Financial Information and Operating Data Report
(December 18, 2016) at 283, available at http://www.gdb-
pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-
16.pdf ...................................................................................................................................12

H.R. Rep. No. 95–595 (1977) ........................................................................................................13

Memorandum Order Denying Julio E. Leandry-Hernandez and Ileana Ortiz-
Santiago's Motion for Relief of Stay, Case No. 17 BK 3283-LTS .........................................13

Regulation Regarding Legal Representation and Payment of Judgment,
Regulation No. 8405 of 2013 ...........................................................................................3

To the Honorable United States District Court Judge Laura Taylor Swain:

  The Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") respectfully submits this objection (the "<u>Objection</u>") to the *Motion for Relief from Stay* [ECF No. 952] (the "<u>Motion</u>") filed by Alvin Marrero-Méndez ("<u>Movant</u>").[2] The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.

### <u>PRELIMINARY STATEMENT</u>

  1. The Motion is a scattershot attempt to have this Court re-examine whether the automatic stay under Bankruptcy Code sections 362(a) and 922(a) applies to Movant's prepetition action pending before the United States District Court for the District of Puerto Rico (the "<u>District Court</u>"). While Movant spends considerable time citing to inapposite cases that do not address this issue, Movant ignores that the District Court entered an order finding that Bankruptcy Code sections 362(a) and 922(a), made applicable to the Commonwealth's Title III case by PROMESA section 301(a) (the "<u>Title III Stay</u>"), apply to Movant's claims. Movant seeks to disregard the District Court's order in its entirety and re-litigate the same claims, between the same parties, under the same statutes, and before the same court but now within the context of the Commonwealth's Title III case. This Court should not entertain Movant's flagrant attempt to end-run the District Court's order that found the Title III Stay applies to Movant's claims.

  2. Not only does PROMESA section 301(a) specifically apply Bankruptcy Code sections 362(a) and 922(a) to cases commenced under Title III, but this Court entered an order expressly confirming the application of the automatic stay under sections 362(a) and 922(a) to the Commonwealth's Title III case. As Movant is seeking to continue a prepetition action against

---

2  The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

inhabitants of the Commonwealth that seeks to enforce a claim against the Commonwealth, Movant's prepetition action is stayed under the Title III Stay. Despite Movant's contentions that enforcing a claim under a federal law somehow exempts it from the Title III Stay, Movant "must still satisfy the relevant balancing analysis applicable to all proceedings seeking relief from stay 'for cause shown.'" See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 526 (D.P.R. 2016). As demonstrated below, Movant has failed to satisfy this burden and thus, the Motion should be denied

## OBJECTION

3.      The automatic stay is considered "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," and PROMESA applies it with full force to Title III cases. See Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).

4.      The automatic stay under Bankruptcy Code section 362 is supplemented in the Title III cases by Bankruptcy Code section 922(a), also made applicable by PROMESA section 301(a), which provides as follows:

> A petition filed . . . operates as a stay, in addition to the stay provided by section 362 of [the Bankruptcy Code], applicable to all entities, of –
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and
>
> (2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

11 U.S.C. § 922(a).

5.      Movant's underlying action before the District Court captioned Alvin Marrero-

2

Méndez, et al. v. Hector Pesquera, et al., Case No. 13-cv-1203 (JAG) (the "District Court
Action") seeks equitable relief and monetary compensation for alleged violations of Movant's
First Amendment rights of free exercise of religion during Movant's employment as a police
officer in the Puerto Rico Police Department (the "Police Department"). The District Court
Action was commenced on March 8, 2013, against certain members of the Police Department in
their official and personal capacities (collectively, the "Officers").

6.      The Commonwealth, through the Department of Justice, represents those Officers
in the District Court Action in accordance with the benefits of legal representation under Law
No. 104 of June 29, 1955, as amended, P.R. Laws Ann. tit. 32, §§ 3085, et seq. and the
Regulation Regarding Legal Representation and Payment of Judgment, Regulation No. 8405 of
2013.[3] Moreover, under Law 104 and its Regulation 8405, the Commonwealth assumes the
payment of a subsequent adverse judgment against every official, ex-official, employee, or ex-
employee of the Commonwealth covered by the provisions of §§ 3085-3092a. P.R. Laws Ann.
tit.32, §§ 3085, 3092. Particularly, section 3092 provides, in part, the following:

> The Secretary of Justice shall notify the Secretary of the Treasury
> of his determination regarding the payment, on the basis of the
> provisions of §§ 3085—3092a of this title. The Secretary of the
> Treasury shall pay the judgments, costs and attorney's fees
> imposed on the defendants from available funds in the Treasury of
> Puerto Rico.

P.R. Laws Ann. tit.32, § 3092. As a result, the Commonwealth is responsible for the costs of

---

[3]     Article 12 of law 104, as amended, is clear and precise in determining that:

> Every official, ex-official, employee or ex-employee of the Commonwealth of Puerto Rico who is sued for
> damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's
> civil rights, due to acts or omissions committed in good faith, in the course of his employment and within
> the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal
> representation, and to subsequently assume the payment of any judgment that may be entered against his
> person.

32 L.P.R.A. § 3085 (emphasis added). Law 9 of November 26, 1975 amended Law 104 by adding, among
others, Article 12.

defending the Officers in the District Court Action and the satisfaction of any adverse judgment entered against the Officers.

7.    Prior to the commencement of the Commonwealth's Title III case, the parties to the District Court Action concluded discovery, however, no dispositive motions have been filed. On July 20, 2017, the District Court issued an order granting the Commonwealth's petition for a stay of the District Court Action, finding that the automatic stay under Bankruptcy Code sections 362(a) and 922(a), made applicable by PROMESA section 301(a), applied to the District Court Action and stayed all of Movant's claims, including Movant's claim for equitable relief (the "District Court Order"). See Order at 2, Alvin Marrero-Méndez, et al., v. Hector Pesquera, et al., Case No. 13-cv-1203 (JAG) (D.P.R. July 20, 2017), ECF No. 131.[4]

## A.    Movant's Claim that the Title III Stay Does Not Apply to the District Court Action is Barred by the Doctrines of Res Judicata and Collateral Estoppel

8.    The District Court Order clearly holds that "all of Plaintiff's claims are covered by PROMESA's automatic stay." District Court Order at 2. While Movant acknowledges that the District Court found that the Title III Stay applies to the District Court Action (Motion at 3), Movant still argues in the Motion that "[t]he stay provisions of PROMESA are inapplicable here, however, because Movant's civil rights claims against the individual defendants are separate and completely unrelated to any claim for collection debt or credit of the nature that PROMESA was designed to address." Motion at 5. Not only is Movant's claim that the Title III Stay does not apply to the District Court Action contrary to Movant's acknowledgment of the District Court Order in the Motion but such claim is barred by the doctrines of res judicata and collateral estoppel.

9.    Under the doctrine of res judicata or claim preclusion, "[a] final judgment on the

---

[4]    The District Court Order is attached hereto as Exhibit A.

4

merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) (applying res judicata and holding that plaintiff cannot file a state court action to avoid the preclusive effect of a prior federal judgment). Res judicata applies when a party attempts to re-litigate a claim where there is (i) a final judgment on the merits in the earlier action; (ii) an identity of parties in the two suits; and (iii) an identity of the cause of action in both suits. Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993). Once these elements are established, res judicata bars the re-litigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation. Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994).

10.     Each of the elements of res judicata is satisfied with respect to Movant's claim that the Title III Stay does not apply to the District Court Action. First, the District Court Order is a final order. See In re Chesapeake Contractors, Inc., 413 B.R. 254, 259 (Bankr. D. Md. 2008) (denying creditors' request for relief from stay where "motion for relief from stay by the same creditor and as to the same collateral [was] precluded by the entry of a prior order deciding a previous motion seeking the identical relief . . . [because] [a]n order that fully and finally decides the matter set forth in a motion for relief from stay, such as an order after a final hearing which order denies all relief from the automatic stay, is a final order for purposes of the application of the doctrine of res judicata"). Second, the parties in the District Court Action are the same parties implicated by the Motion. The District Court Action was brought by Movant against the Officers (who are represented by the Commonwealth, through the Department of Justice) in the District Court and now Movant filed the Motion in the Commonwealth's Title III case pending before the District Court. Not only is there an identity of parties in the two actions, but both actions are

before the District Court. Third, by the Motion, Movant is asserting the exact same claims against the Commonwealth that it asserted against the Commonwealth with respect to the District Court Order.[5] The District Court already examined the identical arguments now raised by Movant in the Motion when it entered the District Court Order, which clearly provides that the Title III Stay applies to the District Court Action. Accordingly, Movant is precluded under the doctrine of res judicata from re-litigating its claims that were previously resolved by the District Court in the District Court Action and the Court should deny the Motion with respect to Movant's argument that the Title III Stay does not apply to the District Court Action.

11.    Similarly, under long-standing principles of collateral estoppel, Movant is not free to re-litigate whether the Title III Stay applies to the District Court Action. Under the doctrine of collateral estoppel or issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citations omitted). This doctrine ensures that a "'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties . . . ." Id. (quoting Southern Pac. R. Co. v. United States, 168 U.S. 1, 48-49 (1897)). This "secure[s] the peace and repose of society by the settlement of matters capable of judicial determination." Southern Pac. R. Co., 168 U.S. at 49. Here, the District Court's prior ruling that the Title III Stay applies to the District Court Action estops Movant from re-litigating this issue through a motion to lift the automatic stay in the

---

[5]    See Opposition to Motion to Stay, Case No. 13-cv-1203 (D.P.R.), ECF No. 126: "The automatic stay authorized by the PROMESA statute does not, therefore, 'apply to suits to enforce federal rights.'" Opposition at 3; "Defendants are not entitled to an automatic stay of Plaintiff's claims for compensatory relief because Defendants are not 'debtors' within the meaning of the PROMESA statute. Even assuming sections 362(a) and 922(a) of the Bankruptcy Code were fully incorporated into PROMESA, automatic stays issue only against a 'debtor.'" Id.; "Moreover, even assuming that Plaintiff's claim for compensatory relief might eventually fall within the reach of PROMESA, it does not qualify for a stay now because it is not currently a payable claim against the Commonwealth's resources . . . ." Id. at 7.

Commonwealth's Title III case.

**B.     The Title III Stay Applies To The District Court Action**

12.     Even if this Court were to find that Movant is not barred by the doctrines of res judicata and collateral estoppel from pursuing its claim that the Title III Stay does not apply to the District Court Action, the District Court's prior decision was manifestly correct. Because Movant is seeking to continue a prepetition action against an inhabitant of the Commonwealth that seeks to enforce a claim against the Commonwealth, such claims are subject to the Title III Stay.

13.     Title III incorporates by reference many sections of the Bankruptcy Code, including Bankruptcy Code sections 362 and 922, which provide for an automatic stay upon the filing of a Title III petition. See 48 U.S.C. § 2161(a) ("Sections . . . 362 [and] . . . 922 . . . of Title 11, apply in a case under this subchapter [2161(a)] . . . ."); see also Atiles-Gabriel v. Puerto Rico, No. CV 15-2108 (GAG), 2017 WL 2709757, at *1 (D.P.R. June 23, 2017) ("Title III incorporates by reference . . . 11 U.S.C. § 362 and 11 U.S.C. § 922 . . . ."). It has been clearly established that in construing a statute, a reviewing court must look first to the statutory language and, if such language is clear and unambiguous, the court must give effect to the statute as written. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992) ("If the language is clear and unambiguous, judicial inquiry is at an end in all but the most extraordinary circumstances, and the court must give effect to the clear meaning of the statute as written."); see also Quiles Rodriguez v. Calderon, 172 F. Supp. 2d 334, 339 (D.P.R. 2001) ("It has been clearly established that in construing a statute, a reviewing court must look first to the statutory language . . . if the language is clear . . . the court must give effect to the clear meaning of statutes as written.").

14.     The statutory language of PROMESA is clear, upon the commencement of a Title

III case, the automatic stay applies to any action "against the debtor that was or could have been commenced before" the Title III proceeding as well as actions against "an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. §§ 362(a), 922(a); 48 U.S.C. § 2161(a). Thus, the Title III Stay applies to both claims brought against the Commonwealth and inhabitants of the Commonwealth where the movant is seeking to enforce a claim against the Commonwealth, such as the District Court Action. In the event there is any doubt regarding the application of Bankruptcy Code sections 362(a) and 922(a) to the Commonwealth's Title III case, this Court entered an order explicitly confirming that the automatic stay applied to Title III cases. See Order Pursuant to PROMESA Section 301(A) and Bankruptcy Code Sections 105(A), 362(A), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections, ECF No. 543, at ¶¶ 2, 4 ("Pursuant to Bankruptcy Code 362(a) made applicable by PROMESA section 301(a) . . . all persons . . . are hereby stayed, restrained, and enjoined from . . . commencing or continuing any judicial, administrative, or other action or proceeding against the Debtors . . . that could was or could have been commenced before the Title III Cases were commenced."); ("Pursuant to Bankruptcy Code 922(a), made applicable by PROMESA section 301(a) . . . all persons . . . are hereby stayed, restrained, and enjoined from . . . commencing or continuing any judicial, administrative, or other proceeding against an officer or inhabitant of the Debtors . . . that seeks to enforce a claim against the Debtors.").

15.     Further, Movant's argument that the "automatic stay authorized by the PROMESA statute does not, therefore, 'apply to suits to enforce federal rights'" is misplaced. See Motion at 10 (citing Vazquez-Carmona v. Dep't of Educ. of Puerto Rico, No. CV 16-1846

8

(GAG), 2017 WL 2352153, at *1 (D.P.R. May 31, 2017)). PROMESA section 7 provides that "[e]xcept as otherwise provided in this Act, nothing in this Act shall be construed as impairing or in any manner relieving a territorial government . . . from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory." 48 U.S.C. § 2106 (emphasis added). The District Court Action does not involve "a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory." Rather, the District Court Action involves Movant's First Amendment right to the free exercise of religion. The fact that Movant's claims arise under Federal law or the Constitution does not automatically exempt such claims from the Title III Stay. See Brigade, 217 F. Supp. 3d at 526 ("The mere fact that [Movant] bring[s] claims pursuant to the Federal and Commonwealth Constitutions does not, however, entitle them to automatic circumvention of the PROMESA stay."); In re City of San Bernardino, 558 B.R. 321, 330 (C.D. Cal. 2016) (finding that there is no exception to the Bankruptcy Code's automatic stay for constitutional claims, even if that category of claims is "deserving" of an exemption).

16.     Lastly, Movant's argument that its claim is outside the scope of the Title III Stay because it is unliquidated and "is not currently a payable claim against the Commonwealth's resources" is contrary to the purpose of the automatic stay and relevant case law. See In re Elsinore Shore Assocs., 66 B.R. at 732 ("Unliquidated claims are cognizable within 11 U.S.C. § 101(4), and are subject to the automatic stay.").

## C.     The Title III Stay Applies to the Officers

17.     The "automatic stay [under 11 U.S.C. § 922(a)] supplements the basic automatic stay of 11 U.S.C. § 362 by stopping actions against municipal officers and inhabitants to enforce a claim against the municipal[ity]." In re City of Stockton, Cal., 484 B.R. 372, 374 (Bankr. E.D.

Cal. 2012) (applying section 922 to stay an action against municipal officers where the action sought to enforce a claim against the debtor because "the City, having undertaken their defense, will be required to pay the judgment."). While the Officers are not debtors in the Title III cases, as inhabitants of the Commonwealth, which is a Title III debtor, the Officers are protected by the automatic stay under section 922(a). 11 U.S.C. § 922(a); 48 U.S.C. § 2161(a).

18.     As discussed above, under Law 104, the Commonwealth has taken on the responsibility of defending the Officers in the District Court Action and satisfying any adverse judgment entered against the Officers. See 32 L.P.R.A. §§ 3085, 3092. Whether the Commonwealth's assumption of liability in the District Court Action was mandatory is irrelevant. Under Puerto Rico law, the Officers have the right to request that the Commonwealth assume the costs of defending the District Court Action and then also can request the payment of any judgment entered in connection with such action. The Officers elected to do so, and the Commonwealth agreed to assume the liability of defending them. Therefore, Movant's claims against the Officers are seeking to enforce claims against the Commonwealth in violation of Bankruptcy Code section 922(a).[6]

**D.     Movant Has Failed to Establish that Cause Exists to Lift the Title III Stay to Continue the District Court Action**

19.     Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C.

---

[6]     Movant relies on McCartney v. Integra Nat. Bank N., 106 F.3d 506 (3d Cir. 1997), to argue that the automatic stay should not be "invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." See Motion at 6. McCartney is inapplicable here because it is a chapter 7 case and therefore only the automatic stay provisions of Bankruptcy Code section 362(a) were applicable. The automatic stay in PROMESA and chapter 9 cases is expanded by Bankruptcy Code section 922 to specifically cover all "officers" and "inhabitants" of the debtor. 11 U.S.C. § 922(a); 48 U.S.C. § 2161(a).

§ 362(d)(1).[7] To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous different factors, including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).[8] See Brigade, 217 F. Supp. 3d at 518 ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 94-5 (D.P.R. 2007)).

20.     As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d at 1285. Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are

---

[7]     Bankruptcy Code section 362(d)(1) applies to a stay under Bankruptcy Code section 922(a) "the same as such subsection[] appl[ies] to a stay under section 362(a)." 11 U.S.C. § 922(b).

[8]     The twelve factors adopted by the Second Circuit in Sonnax are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) impact of the stay on the parties and the balance of harms.

See In re Sonnax Indus., Inc., 907 F.2d at 1286.

established to justify such relief." Id. (citations omitted).

21.     The "breathing room" afforded to the Commonwealth is of utmost importance given the massive amount of litigation it and its agencies and entities must deal with (both in terms of the volume of cases and the dollar value of liability asserted). As of December 2016, there were approximately 5,200 pending and threatened litigation cases against the Commonwealth and its agencies and entities with an estimated aggregate liability of approximately $2.2 billion. See Commonwealth of Puerto Rico Financial Information and Operating Data Report (December 18, 2016) at 283, available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.

22.     Given the procedural status of the District Court Action, the majority of the Sonnax factors weigh in favor of maintaining the automatic stay and denying the Motion.

23.     **Sonnax Factors 1, 10, and 11**: As discussed above, the District Court Action is still at a preliminary stage. There are no dispositive motions pending before the District Court. Although discovery has concluded, pretrial hearing(s), the preparation and filing of dispositive motions, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense, are necessary for the District Court Action to move forward. As such, the parties are not ready for trial in the District Court Action and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, Sonnax factors 1, 10, and 11 weigh in favor of denying the Motion. See In re Sonnax Indus., Inc., 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); In re Residential Capital, LLC, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has

been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting
the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all
remain to be done"); see also Memorandum Order Denying Julio E. Leandry-Hernandez and
Ileana Ortiz-Santiago's Motion for Relief of Stay, Case No. 17 BK 3283-LTS, ECF No. 847
(denying movants' request to lift stay where "it is unclear whether the Lawsuit is ready for trial .
. . [and] any remaining pretrial proceedings and a trial would require the expenditure of Debtor
resources and potentially disrupt the claims resolution process established by the bankruptcy
code and incorporated into PROMESA.").

24.    **Sonnax Factors 2 and 7**: Movant's argument that its "civil right claims against
the individual defendants are separate and completely unrelated to any claim for collection debt
or credit of the nature that PROMESA was designed to address" (Motion at 5) is simply wrong
and Movant's reliance on Brigade to support this argument is misplaced. In Brigade, the District
Court was reviewing the applicability of the temporary stay under PROMESA section 405(b),
which by its terms is "limited in nature" and only applies to Liability Claims (as defined in
PROMESA section 405(a)). See 217 F. Supp.3d at 518; 48 U.S.C. § 2194. In contrast, the
automatic stay provisions of the Bankruptcy Code are expansive and "extremely broad in scope
and, 'aside from the limited exceptions of subsection (b), appl[y] to almost any type of formal or
informal action taken against the debtor or the property of the estate.'" In re Montalvo, 537 B.R.
at 140. Further, Title III of PROMESA applies with respect to all debts, claims, and liens
asserted against a Title III debtor (as such terms are defined in Bankruptcy Code section 101),
created before, on, or after the commencement of the Title III case. See 48 U.S.C. § 2101. The
definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the
debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case .

13

. . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003).

25.     As a potential prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Commonwealth's Title III case. Further, because no insurance coverage exists for Movant's claims in the District Court Action, any judgment obtained by Movant against the Officers would be satisfied by the Commonwealth directly. Requiring the Commonwealth to defend Movant's claims before determination of what the claim resolution process will look like would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); see also In re BFW Liquidation, LLC, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

26.     Lifting the automatic stay to proceed with the District Court Action will divert the Commonwealth's attention and resources to defending Movant's claim in the District Court and will encourage other creditors to seek similar relief. As discussed above, under Law 104, the Commonwealth is responsible for defending the Officers in the District Court Action and—if certain conditions are met or agreed to—may be required to pay for any adverse judgment

entered against the Officers.[9] Because the outcome of the District Court Action will impact other creditors in the Commonwealth's Title III case, the Department of Justice will need to coordinate its defense of the Officers with the Commonwealth's and the Oversight Board's advisors, thereby increasing the Commonwealth's defense costs. Thus, Sonnax factors 2 and 7 weigh in favor of denying the Motion. See In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where "debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); In re Gatke Corp., 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfer[ing] with judicial economy and the Debtors' process of reorganization."

---

[9]   Although the initial decision to either assume the representation of the officer-defendant or pay the adverse judgment lies in the Commonwealth Secretary of Justice, the government employee indemnity statute provides all officer-defendants with an avenue for judicial review. 32 L.P.R.A. § 3087. Hence, although the Commonwealth may initially decline to represent or pay the adverse judgment of an officer-defendant, in that event, the officer-defendant may seek judicial review from that denial and a court may well impose on the Commonwealth both the duty to defend, and the duty to indemnify from the adverse judgment. Id. Ultimately, as a matter of practice, the Commonwealth provides legal representation to an overwhelming majority of employee defendants, pursuant to the indemnity and duty to defend provisions of Law 104. It thus bears the cost of litigation of suits against its employees, regardless of what capacity they are sued in. Likewise, the Commonwealth pays for the vast majority of adverse judgments against its employees and officers for civil rights suits by way of the indemnity provisions of Law 9-1955. Plaintiffs litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if they prevail, secure payment from the Commonwealth. Notably, the Commonwealth has assumed the representation of the Officers in this case, Guillermo Calixto, Ricardo Cruz, and Mario Rivera, pursuant to Law 104.

(citations omitted)).

27.      **Sonnax Factor 3**: The District Court Action does not involve the Commonwealth as a fiduciary and Movant have not made such an assertion nor provided any evidence to support such an assertion. Thus, <u>Sonnax</u> factor 3 weighs in favor of denying the Motion.

28.      **Sonnax Factor 4**: No specialized tribunal has been established to hear the District Court Action. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

29.      **Sonnax Factor 5**: The Commonwealth does not have insurance coverage for the claims raised in the District Court Action. Thus, <u>Sonnax</u> factor 5 weighs in favor of denying the Motion.

30.      **Sonnax Factor 6**: The Officers are the named defendants in the District Court Action. However, as discussed above, the automatic stay applies to actions against an "inhabitant of the debtor that seeks to enforce a claim against the debtor . . . ." 11 U.S.C. §922(a); Stay Order ¶ 5. The Officers are inhabitants of the Commonwealth and because the Commonwealth has assumed the cost of defending the Officers and—if certain conditions are met or agreed to—may be required to pay for any adverse judgment entered against the Officers, Movant is seeking to enforce a claim against the Commonwealth. Accordingly, the Officers are protected under Bankruptcy Code section 922(a) and the District Court Action cannot be characterized as primarily involving third parties and <u>Sonnax</u> factor 6 weighs in favor of denying the Motion. <u>See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

31.      **Sonnax Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm

that Movant would suffer if the automatic stay remains in place. The procedural status of the District Court Action, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case.[10] On the other hand, postponing liquidation of Movant's claims will neither adversely affect Movant nor promote judicial economy. There is nothing urgent about Movant's claims—indeed, the underlying action has been pending since 2013. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate a claim that may only be paid, if at all, under a confirmed plan of adjustment. Thus, Sonnax factor 12 weighs in favor of denying the Motion.

## **CONCLUSION**

32.     Movant has failed to establish extraordinary circumstances that justify the lifting of the Title III Stay. Accordingly and for the foregoing reasons, the Court should deny the Motion and find that the automatic stay should be maintained.

---

[10]     Movant cites to In re Santa Clara Cty. Fair Ass'n, Inc., 180 B.R. 564, 565 (B.A.P. 9th Cir. 1995) for the proposition that "public policy favors the resolution of this civil rights action and denial of Defendants' request for a stay." Motion at 11. While the bankruptcy court in Santa Clara did consider public policy as one of several factors that favored modifying the automatic stay, the court's determination was based on a finding that due to the fundamental question of whether the bankruptcy court had jurisdiction over movant's Title VII claims "judicial economy and economy for the parties would be better served by allowing the action to proceed in the district court" due to the "considerable risk that after resolution of the claim by the bankruptcy court, these issues would be revisited by the losing party in the district court." Id. at 566. Moreover, in its appeal of the bankruptcy court's decision, the debtor in Santa Clara did not address the bankruptcy court's judicial economy analysis but instead argued the merits of movant's claims. Id. at 567. Relying on jurisdictional concerns, the panel found that the debtor's "line of argument simply reinforce[d] that the bankruptcy court's decision to forego resolving [the underlying matter and letting it proceed in the district court] was provident." Id. Accordingly, because there are no jurisdictional issues with respect to the resolution of Movant's claims, the bankruptcy appellate panel's decision in Santa Clara is inapposite and not applicable to the claims at issue here.

Dated:  August 22, 2017
        San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

## Exhibit A

**District Court Order**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALVIN MARRERO-MENDEZ, *et al.*, | |
| **Plaintiffs,** | |
| v. | CIVIL NO. 13-1203 (JAG) |
| HECTOR PESQUERA, *et al.*, | |
| **Defendants.** | |

### ORDER

GARCIA-GREGORY, D.J.

The Court GRANTS Defendants' Motion to Stay this case, Docket No. 125, pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101, *et seq.* PROMESA's automatic stay applies to any action "against the debtor that was or could have been commenced before" the Title III proceeding. 11 U.S.C. § 362(a); 48 U.S.C. § 2161(a) (incorporating by reference 11 U.S.C. § 362). This includes actions for equitable relief. *See Advanced Computer Servs. of Michigan, Inc. v. MAI Sys. Corp.*, 161 B.R. 771, 774 (E.D. Va. 1993) ("There is no merit to the argument that a suit for injunctive and declaratory relief is an equitable suit and not a 'judicial action' as to which a stay is applicable.").

The automatic stay also applies to actions against "an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a); 48 U.S.C. § 2161(a) (incorporating by reference 11 U.S.C. § 922). The police officers in this case are represented under Law 104 of June 29, 1955, as amended, P.R. Laws Ann. tit. 32, §§ 3085, *et seq.* ("Law 104"). Docket No. 125. Thus, the Commonwealth of Puerto Rico has assumed the costs of their representation and possibly the payment of any adverse judgment. *Id.* §§ 3087, 3088. As a result, the claims against

Civil No. 13-1203 (JAG)                                                                              2

the officers in their personal capacities are also covered by the stay, because they ultimately "seek to enforce a claim against the debtor." *See In re City of Stockton, Cal.*, 484 B.R. 372, 376 (Bankr. E.D. Cal. 2012) (holding that an action against officers of the City of Stockton, California, who were being represented by the City under a California law that is similar to Law 104, was covered by the automatic stay of actions against the City, because the action was one that "seek[ed] to enforce a claim against the debtor" since "[t]o the extent that there is a judgment against the individuals, the City, having undertaken their defense, will be required to pay the judgment.").

Accordingly, all of Plaintiffs' claims are covered by PROMESA's automatic stay. Thus, this case is stayed pursuant to 48 U.S.C. § 2161(a) and 11 U.S.C. §§ 362(a), 922(a). Any request to lift or vacate the stay must be filed in the Bankruptcy Court in the District of Puerto Rico in Case No. 17-BK-03283 (LTS).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of July, 2017.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge