**Hearing Date**: October 4, 2017 at 9:30 a.m. (Prevailing Eastern Time)
**Objection Deadline**: September 19, 2017 at 4:00 p.m. (Prevailing Eastern Time)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

      Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),[2]

      Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

PROMESA
Title III

No. 17 BK 4780-LTS

(Joint Administration Requested)

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

[2] The last four (4) digits of PREPA's federal tax identification number are 3747.

**MOTION FOR ORDER
(A) PURSUANT TO PROMESA SECTION
304(G), DIRECTING JOINT ADMINISTRATION
OF INITIAL TITLE III CASES AND ADDITIONAL
TITLE III CASE, (B) PURSUANT TO SECTION 105(A) OF
THE BANKRUPTCY CODE, MAKING CERTAIN ORDERS
ENTERED IN THE INITIAL TITLE III CASES APPLICABLE
TO THE ADDITIONAL TITLE III CASE, AND (C) PURSUANT
TO SECTION 105(A) OF THE BANKRUPTCY CODE, MAINTAINING THE
EFFECT OF CERTAIN PLEADINGS FILED IN THE ADDITIONAL TITLE III CASE**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Highways and Transportation Authority ("HTA," and together with the Commonwealth, COFINA, and ERS, the "Initial Debtors") and the Puerto Rico Electric Power Authority ("PREPA" or the "Additional Debtor," and together with the Initial Debtors, the "Debtors," and each, a "Debtor") by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submit this motion (the "Motion"), pursuant to PROMESA section 304(g), Rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these cases by PROMESA section 310, and section 105 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these cases by PROMESA section 301, for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) directing the joint administration of the Title III cases of the Initial Debtors and the Additional Debtor, (b) making certain pleadings filed, and the orders entered respectively therewith, in the Title III cases of the Initial Debtors applicable as

---

[3]  PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

though filed or entered in the Title III case of the Additional Debtor, and (c) maintaining the

effect of certain pleadings filed, and the orders entered respectively therewith, in the Title III

case of the Additional Debtor notwithstanding the subsequent joint administration with the Initial

Debtors.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory bases for the relief requested herein are PROMESA section 304(g),

Bankruptcy Code section 105, made applicable to these Title III cases by PROMESA section

301, and Bankruptcy Rule 1015(b), made applicable to these Title III cases by PROMESA

section 310.

### Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section

101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting

members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this

title is the representative of the debtor[s]" and "may take any action necessary on behalf of the

debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of

[PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the

court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as covered

entities under PROMESA section 101(d).

7.       On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under Title III thereof (the "Commonwealth's Title III Case").

8.       On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under Title III thereof ("COFINA's Title III Case").

9.       The Commonwealth and COFINA filed the following motions, among others, in their Title III cases (collectively, the "First Day Pleadings"):[4]

- Motion of Debtors Pursuant to PROMESA Section 304(g) and Bankruptcy Rule 1015(b) for Entry of Order Directing Joint Administration of Title III Cases and Granting Related Relief [Case No. 17-3283, Docket No. 41] (the "Joint Administration Motion");

- Motion of Debtors for Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to these Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief [Case No. 17-3283, Docket No. 43] (the "Case Management Motion");

- Application of Debtors for Entry of Order Authorizing Employment and Payment of Prime Clerk LLC as Solicitation, Notice, and Claims Agent, *Nunc Pro Tunc* to Petition Dates [Case No. 17-3283, Docket No. 45] (the "Prime Clerk Application"); and

- Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4) [Case No. 17-3283, Docket No. 705] (the "365(d)(4) Motion").

10.       On May 21, 2017, the Oversight Board issued restructuring certifications pursuant to PROMESA sections 104(j) and 206 and filed voluntary petitions for relief for ERS and HTA

---

[4] Only the First Day Pleadings relevant to the relief requested herein are listed below.

pursuant to PROMESA section 304(a), commencing cases under Title III thereof (collectively with the Commonwealth's Title III Case and COFINA's Title III Case, the "Initial Title III Cases").

11.     On June 1, 2017, on June 29, 2017, and on August 10, 2017,  the Court entered the following orders (collectively, the "Preexisting Jointly Administered Orders") in the Commonwealth's Title III Case and COFINA's Title III Case:[5]

- Order Pursuant to PROMESA Section 304(g) and Bankruptcy Rule 1015(b) Directing Joint Administration of Title III Cases and Granting Related Relief [Case No. 17-3283, Docket No. 242]  (the "Joint Administration Order");

- Order Authorizing Employment and Payment of Prime Clerk LLC as Solicitation, Notice, and Claims Agent, *Nunc Pro Tunc* to the Petition Dates [Case No. 17-3283, Docket No. 245] (the "Prime Clerk Order"); and

- Order Granting Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4) [Case No. 17-3283, Docket No. 994] (the "365(d)(4) Order").

12.     On June 9, 2017, the Initial Debtors filed a similar motion to this Motion, seeking to (i) jointly administer the Commonwealth's Title III Case and COFINA's Title III Case with the Title III cases of HTA and ERS and (ii) make the Preexisting Jointly Administered Orders and subsequent orders entered on the First Day Pleadings applicable to the Title III cases of HTA and ERS.  *See In re Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [Case No. 17-3566, Docket No. 61]; *In re Puerto Rico Highways and Transportation Authority* [Case No. 17-3567, Docket No. 79] (the "Initial Motion").  On June

---

[5] By order entered June 2, 2017 [Docket No. 249] (the "Case Management Order"), as amended on June 6, 2017 [Docket No. 262], as further amended on August 17, 2017 [Docket No. 1065], the Court granted the Case Management Motion.  On July 3, 2017, the Court made the Case Management Order applicable to the Additional Title III Case in all relevant respects [Case No. 17 BK 4780-LTS, Docket No. 11], and accordingly, the Debtors do not seek any relief with respect thereto by this Motion, although the Debtors reserve the right to file proposed amendments to the Case Management Order to remedy any logistical issues that arise from having the Initial Debtors and the Additional Debtor jointly administered.

5

29, 2017, this Court entered an order approving the Initial Motion. *See In re Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [Case No. 17-3566, Docket No. 156]; *In re Puerto Rico Highways and Transportation Authority* [Case No. 17-3567, Docket No. 167].

13.     On June 29, 2017, the Oversight Board issued a restructuring certification for PREPA pursuant to PROMESA sections 104(j) and 206.  On July 2, 2017 ("PREPA's Petition Date"), the Oversight Board filed a voluntary petition for relief for PREPA pursuant to section 304(a) of PROMESA, commencing a case under Title III thereof (the "Additional Title III Case," and together with the Initial Title III Cases, the "Title III Cases").

14.     On July 3, 2017, Judge Laura Taylor Swain was designated as the presiding judge in the Additional Title III Case.  *See In re Puerto Rico Electric Power Authority* [Case No. 17-4780, Docket No. 11].

15.     On August 10, 2017, the Court entered the following orders in the Additional Title III Case:

- Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Solicitation, Notice, and Claims Agent, *Nunc Pro Tunc* to the Petition Date [Case No. 17-4780, Docket No. 222] (the "PREPA Epiq Order");

- Order (a) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, ((b) Deeming Utilities Adequately Assured of Future Performance, and (c) Establishing Procedures for Determining Adequate Assurance of Payment [Case No. 17-4780, Docket No. 224] (the "PREPA Utilities Order"); and

- Order (a) Fixing Date to File Creditor Matrix and List of Creditors, and (b) Waiving Local Bankruptcy Rule 1007-1 [Case No. 17-4780, Docket No. 225] (the "PREPA Creditor Matrix Order").

16.     On August 17 and 18, 2017, PREPA filed the following notices of presentment:

- Notice of Presentment of Revised Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Case No. 17-4780, Docket No. 239]; and

- Notice of Presentment of Second Revised Proposed Order Regarding PREPA's Motion for Entry of an Order (a) Approving Form of Notice of Commencement of Title III Case and (b) Manner of Service and Publication Thereof [Case No. 17-4780, Docket No. 243].

Any orders entered by the Court with respect to the foregoing notices of presentment along with the PREPA Utilities Order and the PREPA Creditor Matrix Order are collectively referred to herein as the "Preexisting PREPA Orders").

17.     Background information regarding PREPA and the commencement of PREPA's Title III Case is contained in the *Notice of Statement of Oversight Board Regarding PREPA's Title III Case* [Case No. 17-4780, Docket No. 2].

**Relief Requested**

18.     By this Motion, the Debtors request entry of an order (a) pursuant to PROMESA section 304(g) and Bankruptcy Rule 1015(b), made applicable to these cases by PROMESA section 310, directing joint administration of the Initial Title III Cases and the Additional Title III Case, solely for procedural purposes, (b) pursuant to Bankruptcy Code section 105(a), made applicable to these cases by PROMESA section 301, and Bankruptcy Rule 1015(c), made applicable to these cases by PROMESA section 310, providing that the First Day Pleadings, and the Preexisting Jointly Administered Orders and subsequent orders entered on the First Day Pleadings, be made applicable to the Additional Title III Case on the terms set forth below,[6] and (c) pursuant to Bankruptcy Code section 105(a), made applicable these cases by PROMESA section 301, and Bankruptcy Rule 1015(c), made applicable to these cases by PROMESA section 310, providing that the Preexisting PREPA Orders will maintain their effect on the Additional Debtor notwithstanding the joint administration of the Additional Debtor and the Initial Debtors.

---

[6]  Where PROMESA or the Bankruptcy Code sets a time frame to be calculated from the petition date, such time will be calculated separately for PREPA from PREPA's Petition Date.

**Joint Administration of Initial Title III Cases and Additional Title III Case**

19.     To facilitate the joint administration of these cases, the Debtors respectfully
request that the Court apply the order for joint administration to the Initial Title III Cases [Case
No. 17-3283, Docket No. 242], for the reasons set forth more fully in the Joint Administration
Motion, such that the Initial Title III Cases and the Additional Title III Case shall be jointly
administered for procedural purposes only, and implement two administrative procedures.  First,
the Debtors request that the Clerk of the Court maintain a single file and docket for the jointly-
administered cases under the lead case of the Commonwealth, and that the cases be administered
under a consolidated caption, as follows:

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

        Debtors.[7]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

20.    Second, to reflect such joint administration, and to alert parties who may access the docket for any of the Title III cases other than the Commonwealth's Title III Case that pleadings will be maintained on the docket of the Commonwealth's Title III Case, the Debtors request that the following notice be entered on the Additional Debtor's docket (but not on the Commonwealth's docket):

> An order has been entered in accordance with PROMESA section 304(g) and Federal Rule of Bankruptcy Procedure 1015(b), made applicable to this Title III case by PROMESA section 310, directing the procedural consolidation and joint administration of the Title III cases of the Commonwealth of Puerto Rico and its affiliated debtors.  All further pleadings and other papers shall be

---

[7] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

filed in, and all further docket entries shall be made in, lead Case No. 17 BK 3283-LTS; provided, however, that if the pleading or other paper relates solely to this Title III case, such pleading shall be filed in both the lead Case No. 17 BK 3283-LTS and this Title III case.

21.     The Debtors also request that the Proposed Order provide that to the extent a party files a motion, pleading, application, objection, reply, response, or other similar court filing (any or all of the foregoing,  a "Court Filing") applicable to fewer than all of the jointly administered Debtors, such party shall supplement the above case caption with a second case caption (positioned immediately underneath the main caption above) with the name(s) of the particular Debtor(s) and respective Title III case number(s) implicated by the party's Court Filing.  If the Court Filing relates only to a particular Debtor or Debtors (other than the Commonwealth), such Court Filing shall be filed in both the lead Case No. 17 BK 3283-LTS and the applicable Title III case(s).  A legend shall accompany the second case caption providing the Court Filing relates only to the applicable Debtor(s), and the pleading shall be filed in both the lead Case No. 17 BK 3283-LTS and the applicable Title III case(s).

22.     To reiterate, through this Motion, the Debtors are seeking to jointly administer the Initial Title III Cases and the Additional Title III Case *for procedural purposes only*.  The relief sought in this Motion will not prejudice the rights of any party in interest, and all rights are reserved for parties in interest to later dispute that this Motion has in fact prejudiced their rights.

## Application of First Day Pleadings and Relief Granted

23.     Additionally, the Debtors seek application of the other relief actually granted in respect of the First Day Pleadings, in each instance only when actually granted, in the Initial Title III Cases in an effort to eliminate the filing of duplicative applications and motions and, therefore, reduce the burdens on the Court and parties in interest.  Specifically, this Motion seeks to have applied to the Additional Debtor the three Preexisting Jointly Administered Orders and

any subsequent orders entered on the First Day Pleadings filed in the Initial Title III Cases, as of

the PREPA Petition Date.  The relief set forth in the First Day Pleadings and the Preexisting

Jointly Administered Orders is necessary for the Additional Debtor to experience a smooth

transition into Title III with a minimum of delay, cost, and expense for the benefit of all parties

in interest.  In the absence of the relief requested in this Motion, the Additional Debtor will be

required to file individual motions seeking this same relief.

24.     There are two Preexisting Jointly Administered Orders that the Debtors seek to

have applied to the Additional Debtor with slight modifications.  First, the Debtors seek to

modify the 365(d)(4) Order, so that, solely with respect to the Additional Debtor, the deadline to

assume or reject any nonresidential real property lease be extended to January 28, 2018, with all

rights reserved by the Additional Debtor to seek further extensions as contemplated by

Bankruptcy Code section 365(d)(4)(B)(ii).  The Additional Debtor is party to hundreds of

nonresidential real property leases that support its operations.  To date, the Additional Debtor has

not yet had an opportunity to determine conclusively which nonresidential real property leases

should be assumed or rejected as part of its overall restructuring objectives.  Rather, the

Additional Debtor has been principally focused on transitioning into title III by, among other

things, obtaining the entry of orders approving vital relief and liaising with key creditor groups.

The Additional Debtor therefore requires additional time to complete its analysis of

nonresidential real property leases in light of its overarching statutory obligation to achieve fiscal

responsibility and access to the capital markets.

25.     Second, with respect to the Prime Clerk Application and Prime Clerk Order, the

Debtors seek application of the Debtors' employment of Prime Clerk LLC ("Prime Clerk")

pursuant to the second amended and restated Engagement Letter attached hereto as **Exhibit B**

(which Engagement Letter is in form and substance identical to the amended Engagement Letter included with the initial Motion, except that it provides for the inclusion of the Additional Debtor).[8]

26.     Notably, the Debtors are not seeking to have the existing *Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Service Agent, Nunc Pro Tunc to the Petition Date* [Case No. 17-3283, Docket No. 540] apply to the Additional Debtor, because the Additional Debtor already has an executed engagement agreement with Epiq Bankruptcy Solutions, LLC ("Epiq") that was approved in the *Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Solicitation, Notice, and Claims Agent, Nunc Pro Tunc to the Petition Date* [Case No. 17-4780, Docket No. 222].  Given that the executed engagement agreement between the Additional Debtor and Epiq provides that services will be provided by Epiq "on an as-needed basis and upon request or agreement of [the Oversight Board] and [PREPA],"[9] the Additional Debtor can easily modify the scope of services it requests from Epiq so that there is no duplication of services between Epiq and Prime Clerk with respect to the Additional Debtor.  Further, there is protective language in the engagement agreement that ensures the different agents will coordinate with other agents retained by the Oversight Board and avoid any duplication of services.[10]

---

[8] A redline showing changes made to the amended Engagement Letter included with the initial Motion, filed under Docket No. 296, is also attached in Exhibit B.

[9] *See* Epiq Systems Standard Services Agreement § 1.2, Exhibit B to *Application of PREPA for Entry of Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Solicitation, Notice, and Claims Agent, Nunc Pro Tunc to the Petition Date* [Case No. 17-4780, Docket No. 93].

[10] *See Id.* § 1.3 ("Epiq agrees (i) to coordinate with any other agents retained by the FOMB with respect to (A) the cases of the Government under Title III of PROMESA, and (B) any other case commenced by an instrumentality of the Commonwealth under Title III or Title VI of PROMESA, (ii) to avoid duplicating Services provided by any such agents with respect to the

27.     Although Epiq will continue to perform other tasks for the Additional Debtor, Prime Clerk will remain the claims agent for the jointly administered cases.  Epiq's scope of services will be adjusted accordingly to avoid confusion and/or duplication.[11] For the avoidance of doubt, Epiq will continue to be the Additional Debtor's service/noticing agent in the same manner that it is in the HTA and ERS title III cases.

28.     Epiq will continue to maintain the website, call center, and other related services it has operated to date for the Additional Debtor, and the Additional Debtor will also appear under a separate subtab in Prime Clerk's website.  Both the Prime Clerk and Epiq websites will have all the pleadings filed in the Additional Debtor's title III case.  This will avoid confusion for the Additional Debtor's creditors and vendors.

### The Court has Authority to Grant the Relief Requested Herein

29.     PROMESA section 301 makes applicable Bankruptcy Code section 105(a) to Title III cases.  Section 105(a) provides, in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), the Court has expansive equitable powers to fashion any order or decree that carries out the statute.  *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . .

---

foregoing, and (iii) the division of any Services in connection with such cases between Epiq and any such agents shall be determined in the discretion of the FOMB and the Government.").

[11] Epiq will no longer be the solicitation and claims agent for the Additional Debtor and, unless specifically requested by the Oversight Board, will not perform the tasks that will be performed by Prime Clerk (such as processing all proofs of claim, maintaining copies of all proofs of claim, etc.).

. is that equitable principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

30.     Bankruptcy Rule 1015(b), made applicable to Title III cases by PROMESA section 310, provides that the Court may order joint administration of cases commenced by the filing of two or more petitions by a debtor and its affiliate(s) in the same court.  Further, Bankruptcy Rule 1015(c) provides that, when an order for consolidation or joint administration of two or more cases is entered, the Court may "enter orders as may tend to avoid unnecessary costs and delay."  Bankruptcy Rule 1001 sets forth how the Bankruptcy Rules should be construed, and states that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."  This Motion does exactly that.

31.     The entry of an order directing that the First Day Pleadings and the Preexisting Jointly Administered Orders and subsequent orders entered on the First Day Pleadings be made applicable to the Additional Debtor will obviate the need for duplicative notices, motions, applications, affidavits, and orders to be filed in these cases.  Similarly, the entry of an order directing that the Preexisting PREPA Orders will maintain their effect against the Additional Debtor notwithstanding the joint administration of the Additional Debtor with the Initial Debtors will eliminate the need to refile similar pleadings in the jointly administered cases.  The Debtors simply seek to save time and expense for their estates and to reduce the burden on the Court and parties in interest by proceeding in this manner.  The Additional Debtor requires the protections and authorizations that are set forth in the Preexisting Jointly Administered Orders to continue in

14

Title III in an orderly manner.  The Preexisting Jointly Administered Orders deal with certain issues and other matters that most debtors (especially large debtors) must address, such as joint administration of the cases and extensions of time to assume or reject nonresidential real property leases.

32.     If the Additional Title III Case were commenced at the same time as the Initial Title III Cases, PREPA would have been a movant with respect to all the First Day Pleadings. By proceeding in the manner set forth in this Motion, the Debtors seek to streamline the motion practice for requesting such relief, while at the same time providing the same requisite facts and justification for such relief as if the Additional Debtor were filing the First Day Pleadings in its own Title III case.  Further, the Title III Cases are several months old and the Debtors have been continuing to operate without disruption during the postpetition period, so joint administration will provide all the efficiencies it is designed to provide without the risk of vendors or other claimholders incorrectly assuming that joint administration will affect any substantive rights.

33.     The Debtors believe that the relief requested herein is appropriate to carry out the provisions of the Bankruptcy Code provisions made applicable to Title III cases.   Similar procedures have been authorized in complex bankruptcy cases pursuant to section 105(a) of the Bankruptcy Code.  *See In re Arcapita Bank B.S.C.(c), et al.*, Case No. 12-11076 (SHL) (Bankr. S.D.N.Y. 2012); *In re Lyondell Chemical Company, et al.*, Case No 09-10023 (REG) (Bankr. S.D.N.Y. 2009); *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. 2008); *In re Delphi Corporation, et al.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. 2005); *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2001).

34.     Further, on June 29, 2017, this Court entered an order approving the Initial Motion.  *See In re Employees Retirement System of the Government of the Commonwealth of*

*Puerto Rico* [Case No. 17-3566, Docket No. 156]; *In re Puerto Rico Highways and Transportation Authority* [Case No. 17-3567, Docket No. 167]. The Initial Motion was similar to this Motion in that it sought to (i) jointly administer the Commonwealth's Title III Case and COFINA's Title III Case with the Title III cases of HTA and ERS and (ii) make the Preexisting Jointly Administered Orders and subsequent orders entered on the First Day Pleadings applicable to the Title III cases of HTA and ERS.

35.      Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and, therefore, should be granted.

## Notice

36.      The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against each Debtor; (d) the Office of the United States Attorney for the District of Puerto Rico; (e) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[12] and (h) all parties filing a notice of appearance in the Debtors' Title III cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

37.      No prior request for the relief sought in this Motion has been made to this or any other court with respect to the Additional Title III Case.

---

[12] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

16

## **Reservation of Rights**

38.     Should other covered territorial instrumentalities seek protection under Title III of

PROMESA, the Oversight Board reserves the right to file a similar motion at that time.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request the Court to enter the Proposed Order, (a) directing the joint administration of the Initial Title III Cases and the Additional Title III Case; (b) making the First Day Pleadings and Preexisting Jointly Administered Orders, as modified herein, and subsequent orders on the First Day Pleadings applicable to the Additional Debtor; (c) providing that the Preexisting PREPA Orders will maintain their effect on the Additional Debtor notwithstanding the joint administration of the Additional Debtor and the Initial Debtors; and (d) granting the Debtors such other relief as is just and proper.

Dated: August 23, 2017
       San Juan, Puerto Rico

Respectfully submitted,

*/s/* Martin J. Bienenstock

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/* Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

## Exhibit A

**Proposed Order**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:                                                    PROMESA
                                                          Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of                        No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO, *et al.*   (Jointly Administered)

      Debtors.[1]                              **Re: Docket No. _____**

-------------------------------------------------------------x

**ORDER (A) PURSUANT
TO PROMESA SECTION 304(G),
DIRECTING JOINT ADMINISTRATION OF INITIAL
TITLE III CASES AND ADDITIONAL TITLE III CASE, (B)
PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE,
MAKING CERTAIN ORDERS ENTERED IN THE INITIAL TITLE III CASES
APPLICABLE TO THE ADDITIONAL TITLE III CASE, AND (C) PURSUANT
TO SECTION 105(A) OF THE BANKRUPTCY CODE, MAINTAINING THE
EFFECT OF CERTAIN PLEADINGS FILED IN THE ADDITIONAL TITLE III CASE**

Upon the *Motion for Order (a) Pursuant to PROMESA Section 304(g), Directing Joint
Administration of Initial Title III Cases and Additional Title III Case, (b) Pursuant to Section
105(a) of the Bankruptcy Code, Making Certain Orders Entered in the Initial Title III Cases
Applicable to the Additional Title III Case, and (c) Pursuant to Section 105(a) of the Bankruptcy*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Code, Maintaining the Effect of Certain Pleadings Filed in the Additional Title III Case* (the
"Motion");[2] and the Court having found it has subject matter jurisdiction over this matter
pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to
PROMESA section 307(a); and the Court having found that the relief requested in the Motion is
in the best interests of the Debtors, their creditors, and other parties in interest; and the Court
having found that the Debtors provided adequate and appropriate notice of the Motion under the
circumstances and that no other or further notice is required; and the Court having reviewed the
Motion and having heard statements in support of the Motion at a hearing held before the Court
(the "Hearing"); and the Court having determined that the legal and factual bases set forth in the
Motion and at the Hearing establish just cause for the relief granted herein; and any objections to
the relief requested herein having been withdrawn or overruled on the merits; and after due
deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The above-captioned Title III Cases are consolidated for procedural purposes only
and shall be jointly administered by this Court under lead Case No. 17 BK 3283-LTS.

3.      The caption of the jointly administered cases shall read as follows:

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in
the Motion.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
---------------------------------------------------------x
```

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

     Debtors.[3]

```
---------------------------------------------------------x
```

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

  4. An entry shall be made on the docket of the Additional Debtor's Title III Case

(but not on the docket of the Commonwealth's Title III Case), substantially as follows:

> An order has been entered in accordance with PROMESA section 304(g) and Federal Rule of Bankruptcy Procedure 1015(b), made applicable to this Title III case by PROMESA section 310, directing the procedural consolidation and joint administration of the Title III cases of the Commonwealth of Puerto Rico and its affiliated debtors. All further pleadings and other papers shall be filed in, and all further docket entries shall be made in, lead Case No. 17 BK 3283-LTS; provided, however, that if the pleading or other paper relates solely to this Title III case, such pleading shall be filed in both the lead Case No. 17 BK 3283-LTS and this Title III case.

---

[3] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

5.      To the extent a party files a motion, pleading, application, objection, reply, response, or other similar court filing (any or all of the foregoing, a "Court Filing") applicable to fewer than all of the jointly administered Debtors, such party shall supplement the above case caption with a second case caption (positioned immediately underneath the main caption above) with the name(s) of the particular Debtor(s) and respective Title III case number(s) implicated by the party's Court Filing.  If the Court Filing relates only to a particular Debtor or Debtors (other than the Commonwealth), such Court Filing shall be filed in both the lead Case No. 17 BK 3283-LTS and the applicable Title III case(s).  A legend shall accompany the second (and any additional) case caption(s) stating that the Court Filing relates only to the applicable Debtors(s), and the pleading shall be filed in both the lead Case No. 17 BK 3283-LTS and the applicable Title III case(s).

6.      The Clerk of the United States District Court for the District of Puerto Rico (the "Clerk's Office") shall maintain one consolidated docket and one file for each of the Title III Cases.  The Clerk's Office may, for administrative purposes only, maintain the consolidated docket and the dockets of the underlying Title III Cases on the CM/ECF system of the United States Bankruptcy Court for the District of Puerto Rico.  The notice, claims, and solicitation agent for the Title III Cases shall maintain one consolidated service list on behalf of the Clerk's Office.

7.      Nothing contained in the Motion or this order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the Debtors' cases.

8.      The Preexisting Jointly Administered Orders, set forth in Schedule A to this Order, and each subsequent order entered on the First Day Pleadings listed on Schedule A hereto are hereby made applicable to the Additional Debtor *nunc pro tunc* to the date of commencement

4

of the Additional Debtor's Title III case, as if the Additional Debtor were a debtor referred to in said orders, subject to the following modifications:[4]

- The Order Granting Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4) [Case No. 17-3283, Docket No. 994] shall apply to the Additional Debtor, provided, however, that, with respect solely to the Additional Debtor, the deadline to assume or reject any nonresidential real property lease be extended to January 28, 2018, with all rights reserved by the Additional Debtor to seek further extensions as contemplated by Bankruptcy Code section 365(d)(4)(B)(ii).

- The Order Authorizing Employment and Payment of Prime Clerk LLC as Solicitation, Notice, and Claims Agent, *Nunc Pro Tunc* to the Petition Dates [Case No. 17-3283, Docket No. 245] shall be extended to incorporate the Additional Debtor's retention of Prime Clerk LLC pursuant to the second amended and restated Engagement Letter attached to the Motion as Exhibit B.[5]

9.      The Preexisting PREPA Orders, set forth on Schedule A to this Order, will maintain their effect on the Additional Debtor notwithstanding the joint administration of the Additional Debtor and the Initial Debtors.

10.      Notwithstanding any applicability of any Bankruptcy Rule, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

11.      The Debtors and the Oversight Board, as the Debtors' representative, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this order in accordance with the Motion.

12.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

---

[4] Where PROMESA or the Bankruptcy Code sets a time frame to be calculated from the petition date, such time will be calculated separately for PREPA from PREPA's Petition Date.

[5] For the avoidance of doubt, the second amended and restated Engagement Letter attached to the Motion as Exhibit B shall apply to all Debtors as of August 21, 2017 and shall supersede the amended Engagement Letter attached to the Initial Motion, filed under Docket No. 296 in Case No. 17-3283.

Dated: _____, 2017
       San Juan, Puerto Rico

_____
Honorable Laura Taylor Swain
United States District Judge

## **Schedule A**

Preexisting Jointly Administered Orders

1. Order Pursuant to PROMESA Section 304(g) and Bankruptcy Rule 1015(b) Directing Joint Administration of Title III Cases and Granting Related Relief [Case No. 17-3283, Docket No. 242].

2. Order Authorizing Employment and Payment of Prime Clerk LLC as Solicitation, Notice, and Claims Agent, *Nunc Pro Tunc* to the Petition Dates [Case No. 17-3283, Docket No. 245].

3. Order Granting Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4) [Case No. 17-3283, Docket No. 994].

Preexisting PREPA Orders

1. Order Authorizing Employment and Payment of Epiq Bankruptcy Solutions, LLC as Solicitation, Notice, and Claims Agent, *Nunc Pro Tunc* to the Petition Date [Case No. 17-4780, Docket No. 222].

2. Order (a) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, ((b) Deeming Utilities Adequately Assured of Future Performance, and (c) Establishing Procedures for Determining Adequate Assurance of Payment [Case No. 17-4780, Docket No. 224].

3. Order (a) Fixing Date to File Creditor Matrix and List of Creditors, and (b) Waiving Local Bankruptcy Rule 1007-1 [Case No. 17-4780, Docket No. 225].

4. Any order issued with respect to the Notice of Presentment of Revised Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Case No. 17-4780, Docket No. 239].

5. Any order issued with respect to the Notice of Presentment of Second Revised Proposed Order Regarding PREPA's Motion for Entry of an Order (a) Approving Form of Notice of Commencement of Title III Case and (b) Manner of Service and Publication Thereof [Case No. 17-4780, Docket No. 243].

## **Exhibit B**

**Second Amended and Restated Prime Clerk Engagement Letter**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of August 21, 2017, between Prime Clerk LLC ("***Prime Clerk***") and the Financial Oversight and Management Board for Puerto Rico (the "***FOMB***").

For the avoidance of doubt, this Agreement supersedes any prior agreement entered into by the FOMB and Prime Clerk.

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to act as Calculation, Information, and Notice Agent under Title VI of the Puerto Rico Oversight, Management, and Economic Stability Act ("***PROMESA***") and/or to act as Solicitation, Notice, and Claims Agent under Title III of PROMESA and to provide any other services in connection therewith as agreed upon by the FOMB and Prime Clerk or otherwise required by applicable law, governmental regulations or court rules or orders, including for the avoidance of doubt, providing legal noticing (including consultation services), assistance with the preparation of first day motions and petitions, claims management and reconciliation, solicitation on any plans of adjustment, balloting, disbursements, and preparation of schedules (all such services collectively, the "***Services***").

   (b) The FOMB acknowledges and agrees that Prime Clerk will take direction from the (i) FOMB, (ii) Commonwealth of Puerto Rico (the "***Commonwealth***"), (iii) Puerto Rico Sales Tax Financing Corporation, (iv) Puerto Rico Highways and Transportation Authority, (v) Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and (vi) Puerto Rico Electric Power Authority (collectively, the "***Government***") and each of their representatives, employees, agents and/or professionals (collectively, the "***Debtor Parties***") with respect to providing Services hereunder; *provided, however*, that in the case of a conflict, the direction of the FOMB and its representatives, employees, agents, and professionals shall control. The parties agree that Prime Clerk may rely upon, and the FOMB agrees to be bound by, any requests, advice or information provided by the Debtor Parties to the same extent as if such requests, advice or information were provided by the FOMB or the Government.

   (c) Prime Clerk agrees (i) to coordinate with any other agents retained by the FOMB with respect to (A) the cases of the Government under Title III of PROMESA, and (B) any other case commenced by an instrumentality of the Commonwealth under Title III or Title VI of PROMESA, (ii) to avoid duplicating Services provided by any such agents with respect to the foregoing, and (iii) the division of any Services in connection with such cases between Prime Clerk and any such agents shall be determined in the sole discretion of the FOMB and the Government.

   (d) The FOMB agrees and understands that Prime Clerk shall not provide the FOMB or any other party (including the Government) with legal advice.

   (e) While providing services under this Agreement, Prime Clerk shall comply with all applicable laws, rules and regulations, as well as all applicable FOMB policies and rules, including without limitation the FOMB's Vendor Code of Conduct and its disclosure certification. A copy of the



FOMB's Vendor Code of Conduct and its Vendor Conflict of Interest Disclosure Certification is attached as *Exhibit B* hereto.

**2.   Rates, Expenses and Payment**

    (a)  Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the FOMB and the Government, in each case in accordance with the rate structure provided to the FOMB, and incorporated by reference herein (the "***Rate Structure***", which is attached hereto as ***Exhibit A***).  For a case under Title III of PROMESA, payment for the Services provided by Prime Clerk will be pursuant to an order of the presiding Court approving Prime Clerk's retention (the "***Retention Order***"), the terms of which shall be in form and substance reasonably acceptable to the FOMB, the Government, and Prime Clerk.  For the avoidance of doubt, the FOMB shall not be liable for any and all fees and expenses incurred or any other amounts whatsoever under this agreement.

    (b)  The Rate Structure sets forth individual unit pricing for each of the Services.  The FOMB may request separate Services or all of the Services.

**3.   Retention by Court**

If the Government restructures its debts under Title III of PROMESA, the FOMB shall, if applicable, seek authority from the presiding Court to retain Prime Clerk as Solicitation and Claims Agent, subject to section 2 above.

**4.   Confidentiality**

    (a)  The FOMB and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

    (b)  If any party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.   Bank Accounts**

Subject to section 1(b) above, at the request of the FOMB or the Government Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the FOMB or the Government to facilitate distributions pursuant to a restructuring plan or other transaction.  To the extent that certain financial products are provided to the FOMB or the Government pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

**6.   Term and Termination**



(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "*Cause*" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the FOMB's and the Government's restructuring efforts under Title VI or Title III of PROMESA, (ii) subject to the terms of the Retention Order, any applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of the presiding Court, the failure of Prime Clerk to receive payment for more than 60 days from the date of invoice, (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid, or (iv) if the Retention Order, whether as proposed or as entered by the presiding Court, is not in form and substance reasonably acceptable to both the FOMB and Prime Clerk.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Court order, the FOMB promptly shall seek entry of a Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, Prime Clerk shall coordinate with the FOMB and the Government and, to the extent applicable, any applicable Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.

(d) Prime Clerk's obligation to maintain the confidentiality of information as set forth in Paragraph 4 shall continue post termination of this Agreement.

## 7.  No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 8.  Non-Solicitation

The FOMB agrees that it shall not directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 9.  Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 10.  Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of State of New York.



**11. <u>Arbitration</u>**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

**12. <u>Integration; Severability; Modifications; Assignment</u>**

(a)  Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)  This Agreement may be modified only by a writing duly executed by an authorized representative of the FOMB and an officer of Prime Clerk.

(d)  This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the FOMB or the Government's consent.

**13. <u>Effectiveness of Counterparts</u>**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**14. <u>Notices</u>**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Prime Clerk:　　　Prime Clerk LLC
　　　　　　　　　　　830 3rd Avenue, 9th Floor
　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　Attn: Shai Waisman
　　　　　　　　　　　Tel: (212) 257-5450
　　　　　　　　　　　Email: swaisman@primeclerk.com

If to the FOMB:　　　　Financial Oversight and Management Board for Puerto Rico
　　　　　　　　　　　26 Federal Plaza Room 2-128



New York, NY 10278]
Attn: Jaime El Koury
Tel:  (212) 225-2570
Email: jelkoury@outlook.com


With a copy to:        Proskauer Rose LLP
Eleven Times Square
New York, NY  10036
Attn: Ehud Barak, Esq.
Tel: (212) 969-3983
Email: ebarak@proskauer.com



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Benjamin Schrag
Title: Executive Vice President

**Financial Oversight and Management Board for Puerto Rico**

By:
Title:      Natalie Jaresko
            Executive Director

6

# 03 Prime Clerk Rates

| DISCOUNTS FOR THIS ENGAGEMENT | COST |
| --- | --- |
| Initial 3 Month Discount | 10% off monthly invoices (other than Media noticing, PACER, or postage related charges) |
| | Additional 20% off hourly rates (other than Director of Solicitation and Solicitation Consultant) |
| Preferred Client Discount (following initial 3 months) | 10% off monthly invoices (other than Media noticing, PACER, or postage related charges) until such discounts total $300,000 |
| | Additional 10% off hourly rates for the life of the matter (other than Director of Solicitation and Solicitation Consultant) |
| Printing Discount | $0.08 per image |
| Case Management<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | No charge |

**Prime Clerk**

CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $25-$50 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35-$95 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | $60-$165 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $170-$195 |

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours.  Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

**Prime Clerk**

| SOLICITATION, BALLOTING AND TABULATION RATES[2] | COST |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | $185 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | $210 |

### PRINTING AND NOTICING SERVICES

| | |
|---|---|
| Customization / Envelope Printing | $0.05 each |
| Document Folding and Inserting | No Charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No Charge |
| Fax Noticing | $0.04 per page |
| Proof of Claim Acknowledgment Card | No Charge |
| Envelopes | Varies by Size |

### NEWSPAPER AND LEGAL NOTICE PUBLISHING

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

**Prime Clerk**

| CASE WEBSITE | COST |
|---|---|
| Case Website Setup | No Charge |
| Case Website Hosting | No Charge |
| Update Case Docket and Claims Register | No Charge |

| CLIENT ACCESS | |
|---|---|
| Access to Secure Client Login (Unlimited Users) | No Charge |
| Client Customizable Reports on Demand or Via Scheduled Email Delivery (Unlimited Quantity) | No Charge |
| Real Time Dashboard Analytics Measuring Claim and Ballot Information and Document Processing Status | No Charge |

| DATA ADMINISTRATION AND MANAGEMENT | |
|---|---|
| Inputting Proofs of Claim and Ballots | Standard hourly rates (no per claim or ballot charge) |
| Processing Undeliverable Mail | No Charge |
| Electronic Imaging | $0.05 per image |
| Data Storage, Maintenance and Security | $0.05 per record, per month |
| Virtual Data Rooms | Available upon request |

| ONLINE CLAIM FILLING SERVICES | |
|---|---|
| Online Claim Filing | No Charge |

**Prime Clerk**

| CALL CENTER SERVICES | COST |
|---|---|
| Case-Specific Voice-Mail Box | No Charge |
| Interactive Voice Response ("IVR") | No Charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

| DISBURSEMENT SERVICES | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

**EXHIBIT B**

**VENDOR/CONSULTANT/REPRESENTATIVE CODE OF CONDUCT**

The Financial Oversight and Management Board for Puerto Rico (the "Board") is committed to ethical and lawful behavior, and to acting professionally and fairly in all of its business dealings and relationships. The Board seeks to maintain high ethical standards and to comply with all applicable laws and regulations. The Board expects its vendors, consultants, and representatives to embrace this commitment to ethical and lawful behavior by complying with and training its employees on the Board's Vendor Code of Conduct. The Board also expects its vendors to have their own codes of conduct that ensure ethical business conduct and practices.

## I.     Compliance with the Vendor Code of Conduct

All vendors, consultants, and representatives and their employees, agents, and subcontractors (collectively referred to as "Vendors") must adhere to this Code of Conduct while conducting business with or on behalf of the Board. Vendors must promptly inform the Executive Director, the General Counsel, or a member of the Board when any situation develops that causes, or may cause, the Vendor to violate any provision of this Code of Conduct. Although Vendors are expected to self-monitor and demonstrate their compliance with this Code of Conduct, the Board may audit Vendors and/or inspect Vendors' facilities and records to confirm compliance.

The Board may require the immediate removal from any project or engagement of any Vendor representative(s) or personnel who behave in a manner that is unlawful or inconsistent with this Code of Conduct or any Board policy. Compliance with this Code of Conduct, as well as attendance at any training on this Code of Conduct as may be offered by the Board, is required in addition to any other contractual obligations a Vendor may have to the Board.

## II.     Legal and Regulatory Compliance Practices

Vendors must conduct their business activities on behalf of the Board in full compliance with the letter and spirit of all applicable laws and regulations.

- **Anti-Corruption**. The Board takes a zero-tolerance approach to bribery and corruption, and it requires its Vendors to do the same. Vendors must not participate in bribes or kickbacks of any kind, whether in dealings with the Board, government and public officials, or individuals in the private sector. Vendors must also comply with all applicable anti-corruption and anti-money laundering laws, as well as laws governing gifts and payments to public officials, political campaign contribution and lobbying laws, and other related regulations. In particular, Vendors must not:

  - Offer, promise, or allow anything of value (including travel, gifts, hospitality expenses, and charitable donations) to be given on behalf of the Board to influence a business or government decision, gain an improper advantage, or otherwise improperly promote the interests of the Board in any respect;

  - Offer, promise, or allow anything of value to be given to a Board member or employee to influence a Board decision or otherwise gain an improper advantage; or

B-1

- o  Ask for or accept anything of value which the Vendor knows or suspects is being offered to influence a Board decision or otherwise obtain an improper advantage in connection with the Vendor's work with or on behalf of the Board.

- **Antitrust/Fair Business Practices**.  Vendors must conduct their business in full compliance with antitrust and fair competition laws that govern the jurisdictions in which they conduct business.  Vendors must also uphold all standards of fair dealing and abide by all fair business practices, including truthful and accurate advertising.

- **Trade**.  Vendors shall comply with all applicable trade controls, as well as any applicable export, re-export, and import laws and regulations.  Vendors must not knowingly employ or do business with anyone reasonably suspected of being connected with criminal or terrorist activities or who is otherwise subject to applicable trade sanctions.

- **Freedom from Unlawful Harassment and Discrimination.**  Vendors shall provide a workplace free from harassment and/or discrimination in hiring, compensation, access to training, promotion, termination, and/or retirement on the basis of race, color, creed, religion, sex, gender identity or expression, sexual orientation, pregnancy, status as a parent, age, marital status, national origin, ancestry, citizenship status, physical or mental disability or serious medical condition, protected genetic information, political beliefs, status as a veteran, or any other characteristic protected by law.  Vendors shall further prohibit any form of reprisal or retaliation against any employee for reporting harassment or discrimination in good faith or for participating in good faith in a harassment or discrimination investigation.

- **Wages, Benefits and Working Hours**.  Vendors must comply with local applicable laws regarding wages, overtime hours and mandated benefits.  Vendors must also communicate with workers about compensation, including any overtime pay, in a timely and honest manner.

- **Freely Chosen Employment**.  No Vendor shall use any form of indentured, slave, or forced labor, including involuntary prison labor.  Vendors are also prohibited from supporting or engaging in any form of human trafficking of involuntary labor through threat, force, fraudulent claims, or other coercion.

- **Child Labor**.  Vendors shall comply with all local and national minimum working age laws or regulations and not use child labor.  All employees shall be age 18 and over unless: (i) a country's legal age for employment or age for completing compulsory education is under 18; and (ii) the work is non-hazardous.

## III.  <u>Business Practices and Ethics</u>

Vendors must conduct their business interactions and activities with integrity.

- **Honesty and Integrity**.  Vendors must at all times be honest, direct, and truthful in discussions with the Board, its staff and agents, regulatory agency representatives, and government officials.

- **Business and Financial Records**.  The Board expects Vendors to timely, honestly, and accurately record and report all business information, including without limitation any invoices for payment, and comply with all applicable laws regarding their creation, completion, accuracy,

B-2

retention, and disposal. All invoices must be (i) timely submitted, (ii) itemized, (iii) supported by appropriate documentation, and (iv) must comply with all other requirements as set out in the relevant contract(s).

- **Conflicts of Interest**. Vendors shall scrupulously avoid any conflict, real or perceived, direct or indirect, between their own individual, professional, or business interests and the interests of the Board. Among other things, Vendors must not deal directly with any Board member or *ex officio* member or employee whose spouse, domestic partner, or other family member or relative is associated with and/or holds any ownership or other financial interest in the Vendor. In the course of negotiating the Vendor agreement or performing the Vendor's obligations, dealing directly with a Vendor personnel's spouse, domestic partner, or other family member or relative employed by the Board is also prohibited. Complying with this requirement includes, but is not limited to, each Vendor's completion of the Vendor Conflict of Interest Disclosure Certification attached as **Appendix A** hereto.

- **Gifts and Entertainment**. Vendors should avoid any actions with Board members or *ex officio* members or employees during any vendor selection or re-selection process that could give others the impression of favoritism or other improper advantage. Furthermore, Vendors should not offer, and Board members, *ex officio* members, and employees must not accept, gifts or entertainment that might compromise, or appear to compromise, the Board member or employee's judgment or independence. Even a well-intentioned gift might constitute or be perceived to be a bribe under certain circumstances, or create a conflict of interest or the appearance of a conflict of interest. Board employees are required to conduct all business and interactions with Vendors in strict compliance with the applicable provisions of the Board's business ethics and conflict of interest policies.

- **Confidentiality, Privacy and Data Security**. Vendors shall, at all times while they are engaged by the Board and thereafter, (i) hold all proprietary and confidential information of the Board in strictest confidence, (ii) not use or disclose for any purpose any proprietary and confidential information of the Board to any person, business or entity, except as specifically authorized in writing by the Board, and (iii) not disclose for any purpose any non-public information concerning their retention by the Board or their services for the Board, except as specifically authorized in writing by the Board. Vendors shall abide by all Board requirements and procedures for protecting the proprietary and confidential information of the Board, including signing and abiding by the Board's confidentiality agreements. Vendors who handle proprietary and confidential information on behalf of the Board or belonging to the Board must apply and maintain sufficient privacy and information security safeguards. Vendors shall also be subject to an information and data security assessment.

- **Media**. Vendors are prohibited from speaking to the press or making any public statements, oral or written, concerning their work for or on behalf of the Board without the express written authorization of the Board.

- **Reporting Concerns**. Vendors shall maintain a hotline or other reporting system for their workers to confidentially and anonymously report any information or concerns about suspected non-compliance or violations of law or improper conduct by any Vendor employee or agent without threat of reprisal, intimidation or harassment. If concerns are reported, Vendors shall

promptly and thoroughly investigate any such report and take corrective action as necessary and appropriate.


I certify by my signature below that I have received and reviewed, and am authorized on Vendor's behalf to agree that Vendor shall abide by this Code of Conduct:


Vendor Name: _Prine Clerk LLC_


_[signature]_           _8/21/17_

Signature of Vendor Authorized Representative     Date


_Benjamin Schrag, Executive Vice President_

Printed Name and Title of Vendor Authorized Representative


B-4

## APPENDIX A

## VENDOR CONFLICT OF INTEREST DISCLOSURE CERTIFICATION

All vendors, consultants, and or experts ("Vendors") interested in conducting business with the Financial Oversight and Management Board for Puerto Rico (the "Board") must complete and return this Vendor Conflict of Interest Disclosure Form to be eligible for a contract award. Disclosing a potential conflict of interest will not automatically disqualify the Vendor. The potential conflict of interest will be investigated to determine whether it precludes the contract award. In the event, however, that the Vendor does not disclose potential conflicts of interest and they are discovered by the Board, the Vendor will be barred from doing business with the Board.

Please note that all Vendors must comply with the Board's Vendor Code of Conduct as stated within the certification section below.

**No Conflict of Interest**: Except as otherwise fully disclosed below (attach additional pages as needed), the Vendor affirms, to the best of its knowledge, information and belief, that no Interested Party (as defined in Schedule A hereto), nor any person associated with any Interested Party, is an employee, Director or Trustee, Officer or consultant to/of, or has any financial interest, direct or indirect, in the Vendor, or has received or will receive any financial benefit, directly or indirectly, from the Vendor or from the contract associated with this certification.

For the purposes of this certification, "associated" persons include: a spouse, domestic partner, child, parent or sibling of an Interested Party; a person with whom an Interested Party has a business or other financial relationship, including but not limited to employees of an Interested Party and/or a spouse, domestic partner, child, parent or sibling of such employees; and each firm in which an Interested Party has a present or potential interest.

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 1 | Is any Interested Party, or any person associated with any Interested Party, associated with any employee, Director or Trustee, Officer or consultant to/of the Vendor? | | X |
| If you answered "yes" to Question 1, please identify the names of the persons who are associated and describe the nature of their association below: | | | |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 2 | Does any Interested Party, or any person associated with an Interested Party, have an ownership interest in the Vendor's company? | | X |

If you answered "yes" to Question 2, please identify the name(s) of the person(s) who has/have such an ownership interest and describe the nature of the interest:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 3 | Has any Interested Party, or any person associated with an Interested Party, received, or will any Interested Party, or any person associated with an Interested Party receive, a financial benefit from the Vendor or from this contract? | | X |

If you answered "yes" to Question 3, please identify the name(s) of the person(s) who have received or will receive such a financial benefit and describe the nature of the benefit below:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 4 | Is any Interested Party, or any person associated with an Interested Party, contemporaneously employed or prospectively to be employed with the Vendor? | | X |

If you answered "yes" to Question 4, please identify the name(s) and title(s) of the person(s) who are or will be so employed below:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 5 | Is any Interested Party, or any person associated with an Interested Party, acting as a consultant for the Vendor? | | X |

If you answered "yes" to Question 5, please identify the name(s) of the person(s) acting as a consultant and describe the nature of his/her/their consulting services below:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 6 | Has the Vendor provided, or will the Vendor provide, any gifts or hospitality of any dollar value or any other gratuities to any Interested Party or elected official to obtain or maintain a contract? | | X |

If you answered "yes" to Question 6, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 7 | Has any Interested Party, or any person associated with an Interested Party, provided any gifts of any dollar value or any other gratuities to Vendor? | | X |

If you answered "yes" to Question 7, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities:

I certify that the information provided is true and correct by my signature below:

_____
Signature of Vendor Authorized Representative

8/21/17
_____
Date

Benjamin Schrag, Executive Vice President
_____
Printed Name of Vendor Authorized Representative

B-8

## SCHEDULE A

For purposes of the Financial Oversight and Management Board for Puerto Rico's (the "Board") Vendor Conflict of Interest Disclosure Certification, the following entities and individuals are Interested Parties:

Ramón M. Ruiz, Interim Executive Director of the Board

Jaime A. El Koury, General Counsel of the Board

_____, Revitalization Coordinator

Andrew G. Biggs, Member of the Board

Jose B. Carrión III, Member of the Board

Carlos M. Garcia, Member of the Board

Arthur J. Gonzalez, Member of the Board

José R. González, Member of the Board

Gov. Alejandro García Padilla, Ex-Officio Member of the Board

Ana J. Matosantos, Member of the Board

David A. Skeel Jr., Member of the Board

Richard Ravitch, *Ex Officio* Member of the Board

Commonwealth of Puerto Rico (Primary Government)

9-1-1 Service Governing Board

Additional (Electronic) Lottery

Agricultural Enterprises Development Administration

Automobile Accidents Compensation Administration

Cardiovascular Center Corporation of Puerto Rico and the Caribbean

Commonwealth of Puerto Rico Regional Center Corporation

Company for the Integral Development of the "Península de Cantera"

Corporation for the "Caño Martin Peña" Project (ENLACE)

Corporation of Industries for the Blind and Mentally Retarded and Incapacitated Persons of Puerto Rico

Culebra Conservation and Development Authority

Economic Development Bank for Puerto Rico

Employees' Retirement System (ERS)

Employment and Training Enterprises Corporation

Farm Insurance Corporation of Puerto Rico

Fine Arts Center Corporation

Fiscal Agency and Financial Advisory Authority (AAFAF)

Governmental Development Bank for PR (GDB)

Institute of Puerto Rican Culture

Institutional Trust of the National Guard of Puerto Rico

Judiciary Retirement System (JRS)

Land Authority of Puerto Rico

Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads

Model Forest

Municipal Revenue Collection Center (CRIM)

Musical Arts Corporation

Port of the Americas Authority

PR Aqueduct and Sewer Authority (PRASA)

PR Electric Power Authority (PREPA)

PR Highways and Transportation Authority (HTA)

PR Infrastructure Finance Authority (PRIFA)

PR Maritime Shipping Authority

PR Medical Services Administration (ASEM)

PR Sales Tax Financing Corporation (COFINA)

Public Building Authority (PBA)

Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives (COSSEC)

Puerto Rico and Municipal Islands Transport Authority

Puerto Rico Conservatory of Music Corporation

Puerto Rico Convention Center District Authority (PRCCDA)

Puerto Rico Council on Education

Puerto Rico Health Insurance Administration (HIA / ASES)

Puerto Rico Industrial Development Company (PRIDCO)

Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority (AFICA)

Puerto Rico Integrated Transit Authority (PRITA)

Puerto Rico Land Administration

Puerto Rico Metropolitan Bus Authority (AMA)

Puerto Rico Municipal Finance Agency (MFA)

Puerto Rico Ports Authority

Puerto Rico Public Broadcasting Corporation

Puerto Rico Public Private Partnerships Authority (PPP)

Puerto Rico School of Plastic Arts

Puerto Rico Telephone Authority

Puerto Rico Tourism Company

Puerto Rico Trade and Export Company

Solid Waste Authority

Special Communities Perpetual Trust

State Insurance Fund Corporation (SIF)

Teachers' Retirement System (TRS)

The Children's Trust Fund (CTF)

Traditional Lottery

Unemployment Insurance Fund

University of Puerto Rico (UPR)

University of Puerto Rico Comprehensive Cancer Center



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of ~~May~~August 21, 2017, between Prime Clerk LLC ("***Prime Clerk***") and the  Financial Oversight and Management Board for Puerto Rico (the "***FOMB***").

For the avoidance of doubt, this Agreement supersedes any prior agreement entered into by the FOMB and Prime Clerk.

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a)  Prime Clerk agrees to act as Calculation, Information, and Notice Agent under Title VI of the Puerto Rico Oversight, Management, and Economic Stability Act ("***PROMESA***") and/or to act as Solicitation, Notice, and Claims Agent under Title III of PROMESA and to provide any other services in connection therewith as agreed upon by the FOMB and Prime Clerk or otherwise required by applicable law, governmental regulations or court rules or orders, including for the avoidance of doubt, providing legal noticing (including consultation services), assistance with the preparation of first day motions and petitions, claims management and reconciliation, solicitation on any plans of adjustment, balloting, disbursements, and preparation of schedules (all such services collectively, the "***Services***").

   (b)  The FOMB acknowledges and agrees that Prime Clerk will take direction from the (i) FOMB, (ii) Commonwealth of Puerto Rico (the "***Commonwealth***"), (iii) Puerto Rico Sales Tax Financing Corporation, (iv) Puerto Rico Highways and Transportation Authority, ~~and~~ (v) Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and (vi) Puerto Rico Electric Power Authority (collectively, the "***Government***") and each of their representatives, employees, agents and/or professionals (collectively, the "***Debtor Parties***") with respect to providing Services hereunder; *provided, however*, that in the case of a conflict, the direction of the FOMB and its representatives, employees, agents, and professionals shall control.  The parties agree that Prime Clerk may rely upon, and the FOMB agrees to be bound by, any requests, advice or information provided by the Debtor Parties to the same extent as if such requests, advice or information were provided by the FOMB or the Government.

   (c)  Prime Clerk agrees (i) to coordinate with any other agents retained by the FOMB with respect to (A) the cases of the Government under Title III of PROMESA, and (B) any other case commenced by an instrumentality of the Commonwealth under Title III or Title VI of PROMESA, (ii) to avoid duplicating Services provided by any such agents with respect to the foregoing, and (iii) the division of any Services in connection with such cases between Prime Clerk and any such agents shall be determined in the sole discretion of the FOMB and the Government.

   (d)  The FOMB agrees and understands that Prime Clerk shall not provide the FOMB or any other party (including the Government) with legal advice.

   (e)  While providing services under this Agreement, Prime Clerk shall comply with all applicable laws, rules and regulations, as well as all applicable FOMB policies and rules, including without limitation the FOMB's Vendor Code of Conduct and its disclosure certification.  A copy of the



FOMB's Vendor Code of Conduct and its Vendor Conflict of Interest Disclosure Certification is attached as *Exhibit B* hereto.

**2.   Rates, Expenses and Payment**

(a)  Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the FOMB and the Government, in each case in accordance with the rate structure provided to the FOMB, and incorporated by reference herein (the "***Rate Structure***", which is attached hereto as ***Exhibit A***).  For a case under Title III of PROMESA, payment for the Services provided by Prime Clerk will be pursuant to an order of the presiding Court approving Prime Clerk's retention (the "***Retention Order***"), the terms of which shall be in form and substance reasonably acceptable to the FOMB, the Government, and Prime Clerk.  For the avoidance of doubt, the FOMB shall not be liable for any and all fees and expenses incurred or any other amounts whatsoever under this agreement.

(b)  The Rate Structure sets forth individual unit pricing for each of the Services.  The FOMB may request separate Services or all of the Services.

**3.   Retention by Court**

If the Government restructures its debts under Title III of PROMESA, the FOMB shall, if applicable, seek authority from the presiding Court to retain Prime Clerk as Solicitation and Claims Agent, subject to section 2 above.

**4.   Confidentiality**

(a)  The FOMB and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b)  If any party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.   Bank Accounts**

Subject to section 1(b) above, at the request of the FOMB or the Government Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the FOMB or the Government to facilitate distributions pursuant to a restructuring plan or other transaction.  To the extent that certain financial products are provided to the FOMB or the Government pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

**6.   Term and Termination**



(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the FOMB's and the Government's restructuring efforts under Title VI or Title III of PROMESA, (ii) subject to the terms of the Retention Order, any applicable provisions of PROMESA, the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of the presiding Court, the failure of Prime Clerk to receive payment for more than 60 days from the date of invoice, (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid, or (iv) if the Retention Order, whether as proposed or as entered by the presiding Court, is not in form and substance reasonably acceptable to both the FOMB and Prime Clerk.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Court order, the FOMB promptly shall seek entry of a Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, Prime Clerk shall coordinate with the FOMB and the Government and, to the extent applicable, any applicable Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.

(d) Prime Clerk's obligation to maintain the confidentiality of information as set forth in Paragraph 4 shall continue post termination of this Agreement.

## 7.  No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 8.  Non-Solicitation

The FOMB agrees that it shall not directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 9.  Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 10. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of State of New York.



**11. <u>Arbitration</u>**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

**12. <u>Integration; Severability; Modifications; Assignment</u>**

(a)  Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)  This Agreement may be modified only by a writing duly executed by an authorized representative of the FOMB and an officer of Prime Clerk.

(d)  This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the FOMB or the Government's consent.

**13. <u>Effectiveness of Counterparts</u>**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**14. <u>Notices</u>**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

      If to Prime Clerk:           Prime Clerk LLC
                                        830 3rd Avenue, 9th Floor
                                        New York, NY 10022
                                        Attn: Shai Waisman
                                        Tel: (212) 257-5450
                                        Email: swaisman@primeclerk.com

      If to the FOMB:           Financial Oversight and Management Board for Puerto Rico
                                        26 Federal Plaza Room 2-128



New York, NY 10278]
Attn: Jaime El Koury
Tel:  (212) 225-2570
Email: jelkoury@outlook.com


With a copy to:          Proskauer Rose LLP
                         Eleven Times Square
                         New York, NY  10036
                         Attn: Ehud Barak, Esq.
                         Tel: (212) 969-3983
                         Email: ebarak@proskauer.com