## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------X

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et
al.*,

                         Debtors.[1]

-----------------------------------------------------------X

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

                        Plaintiff,

       v.

HON. RICARDO ANTONIO ROSSELLÓ
NEVARES (in his official capacity),

                       Defendant.

-----------------------------------------------------------X

PROMESA
Title III

No. 17 BK 3283-LTS


Adversary No:_____

### ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

     Plaintiff the Financial Oversight and Management Board for Puerto Rico (the "FOMB"),

alleges as follows for its Adversary Complaint against Defendant Hon. Ricardo Antonio Rosselló

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number
listed as a bankruptcy case number due to software limitations and the last four (4) digits of
each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of
Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:
3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case
No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

Nevares, in his official capacity as the Governor of the Commonwealth of Puerto Rico (the "Governor"):

## NATURE OF THE ACTION

1.      This action seeking declaratory and injunctive relief is brought pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("PROMESA").

2.      "The purpose of the [FOMB] is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a). Congress provided for the FOMB to certify fiscal plans for the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities. PROMESA dictates that "[a] Fiscal Plan . . . shall . . . provide a method to achieve fiscal responsibility and access to the capital markets." PROMESA § 201(b)(1). Any fiscal plan that would "achieve fiscal responsibility and access to the capital markets" in Puerto Rico may require unpopular and difficult choices. Congress insulated the FOMB from political and other pressures by providing that whether a fiscal plan satisfies the requirements set forth in PROMESA is a matter reserved to the FOMB "in its sole discretion." PROMESA § 201(c)(3). Congress also deprived federal district courts of subject-matter jurisdiction over challenges to the FOMB's fiscal plan certifications.

3.      On March 13, 2017, the FOMB certified the fiscal plan for the Commonwealth (the "Commonwealth Fiscal Plan"). The Commonwealth Fiscal Plan included, among other things, two amendments: (i) the implementation of a furlough program and removal or reduction of all Christmas bonuses unless the FOMB determines in its sole discretion that certain benchmarks have been met and (ii) an overhaul of the public pensions systems. The FOMB

required these two amendments to achieve sufficient liquidity and budgetary savings that the FOMB determined were necessary to make the fiscal plan compliant with PROMESA.

4.      By letter dated March 15, 2017, the FOMB delivered to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico its certification of the Commonwealth Fiscal Plan, and the entirety of the Commonwealth Fiscal Plan itself which included the two amendments.

5.      On March 13, 2017, at the public meeting at which the FOMB certified the Commonwealth Fiscal Plan, the Governor's representative serving as an *ex officio* member of the FOMB, then Elias Sanchez, neither contended the two amendments were not integral parts of the Commonwealth Fiscal Plan, nor that either or both of the amendments were recommendations the Governor was free to adopt or reject pursuant to PROMESA § 205 which permits the FOMB to make recommendations to the Governor or Legislature "to ensure compliance with the Fiscal Plan, or to otherwise promote the financial stability, economic growth, management responsibility, and service delivery efficiency of the territorial government."  Shortly after the FOMB certified the plan, the Governor stated he was confident his administration would be able to take steps to avoid the furlough requirements.  Moreover, the Governor subsequently signed into law the Fiscal Plan Compliance Act, H.B. 938, Act 26-2017 (the "Fiscal Plan Compliance Act"), which in its preamble states that the law "is the only option that the Government of Puerto Rico has to be able to comply with the [Commonwealth Fiscal Plan] certified by the [FOMB] and avoid the imposition of a reduction in workday for our public employees."

6.      At no time within ninety days after March 15, 2017, did the Governor or Legislature notify the FOMB, the U.S. President, the Majority Leader of the United States Senate, or the Speaker of the United States House of Representatives of a decision not to adopt

the furlough program or any other provisions in the Commonwealth Fiscal Plan and provide explanations therefor, as required by PROMESA § 205(b) for recommendations made pursuant to PROMESA § 205(a).

7.     On August 4, 2017, at its ninth public meeting, the FOMB passed a resolution (the "Fiscal Plan Enforcement Resolution") notifying the Governor that the benchmarks had not been met, which meant the required furlough program under the Commonwealth Fiscal Plan would commence, and detailed a required pension overhaul.  During this public meeting, the Governor's *ex officio* representative to the FOMB, now Christian Sobrino, stated that the Governor would not comply with the Commonwealth Fiscal Plan, saying: (i) "There will be no furloughs.  You can take that to the bank."; and (ii) there would be no pension cuts.  Later that day, the Governor himself stated in a press conference that he would not comply with the Commonwealth Fiscal Plan by refusing to implement (i) the furlough program or (ii) the pension overhaul.  The Governor later that same day sent a letter to the U.S. President and U.S. Congressional leaders reiterating that he would not comply with the Commonwealth Fiscal Plan because he refused to implement the furlough program.  Since that date, the Governor has reiterated that he will not implement the required furlough program.

8.     PROMESA does not countenance any role for the Governor to determine whether the FOMB-certified Commonwealth Fiscal Plan (or any fiscal plan) satisfies PROMESA, or whether to comply with any portion of the FOMB-certified Commonwealth Fiscal Plan (or any certified fiscal plan).  Once certified by the FOMB in its sole discretion, the Governor must comply with the fiscal plan.

9.     Accordingly, the FOMB seeks a declaration that (i) the furlough program and the pension overhaul are mandatory parts of the Commonwealth Fiscal Plan certified by the FOMB

pursuant to PROMESA § 201, and (ii) the Governor must enforce and comply with all aspects of the Commonwealth Fiscal Plan, including but not limited to the furlough program and the pension overhaul. The FOMB also seeks injunctive relief prohibiting the Governor from continuing to refuse to comply with any aspect of the Commonwealth Fiscal Plan, including the furlough program and pension overhaul.

## PARTIES

10.     Plaintiff FOMB is an entity within the Commonwealth government established pursuant to PROMESA.

11.     Defendant Hon. Ricardo Antonio Rosselló Nevares is the Governor of the Commonwealth. Plaintiff sues the Governor, and any successors thereto, in his official capacity.

## JURISDICTION AND VENUE

12.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA. This Court also has subject-matter jurisdiction over this action pursuant to PROMESA § 106(a) because this action arises out of PROMESA. This Court also has subject-matter jurisdiction over this action pursuant to PROMESA § 306(a)(2) because this action relates to the Commonwealth Title III case and it has a connection to, or likelihood of interference with, such Title III case, which has the principal purpose of adjusting the financial liabilities of the Commonwealth.

13.     This Court has personal jurisdiction over the Governor because he is located in this District and conducts the official business of the territorial government of Puerto Rico in this District. This Court also has personal jurisdiction over the Governor pursuant to PROMESA § 306(c).

14. Venue is proper in this District pursuant to PROMESA § 106(a) because this action arises out of PROMESA. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in and conducted a substantial part of the events or omissions giving rise to this action in this District. Venue is also proper in this District pursuant to PROMESA § 307.

15. This is an appropriate action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. There currently exists an actual, justiciable controversy between the parties regarding the Governor's obligation and failure to comply with and implement the Commonwealth Fiscal Plan the FOMB certified under PROMESA. The FOMB has standing to seek this declaratory relief pursuant to PROMESA §§ 104(k), 108, and 315.

16. The Court may grant temporary and preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure (applicable in Title III under Rule 7065 of the Federal Rules of Bankruptcy Procedure), and PROMESA § 310.

## FACTS

## PROMESA, the FOMB, and the Fiscal Plan Process

17. In 2016, the U.S. Congress enacted PROMESA and created the FOMB in an effort to stabilize Puerto Rico's economy by establishing oversight of the government's budget and fiscal policies and by providing a way for the Commonwealth to modify or restructure its debts. PROMESA § 101(a). Congress found that severe economic decline—combined with accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing—had created a fiscal emergency in Puerto Rico that affected its long-term stability and rendered the Government of Puerto Rico unable to provide its citizens with effective services. PROMESA § 405(m). Congress enacted PROMESA as a comprehensive measure to

6

address Puerto Rico's fiscal, management, and structural problems through the FOMB's independent oversight of the Commonwealth's fiscal and budgetary policies.  PROMESA § 405(m).

18.    PROMESA grants numerous powers to the FOMB to address Puerto Rico's fiscal, management, and structural problems.  The FOMB has the exclusive authority to certify fiscal plans, in its sole discretion, for the Commonwealth and its instrumentalities as compliant with PROMESA's requirements.  PROMESA § 201(c)(3), (e).  Congress provided that "[a]s soon as practicable" after the FOMB was constituted, the FOMB "shall" initiate "the process for the development, submission, approval, and certification of Fiscal Plans."  PROMESA § 201(a).

19.    Many of the FOMB's other responsibilities flow from and must be consistent with the fiscal plans that the FOMB certifies.   The FOMB must approve budgets for the Commonwealth and its instrumentalities, "compliant with the applicable Fiscal Plan."  PROMESA § 202(c)(1).  The FOMB reviews all legislative acts to ensure they are consistent with the applicable Fiscal Plan, certain contracts to ensure they are "not inconsistent with the approved Fiscal Plan," and rules, regulations, and executive orders to ensure that they "will not adversely affect [Puerto Rico's] compliance with the Fiscal Plan."  PROMESA § 204.  In the context of the FOMB's responsibility for debt restructuring, the FOMB cannot certify any entity for a Title III case without a certified fiscal plan in place, and a plan of adjustment cannot be confirmed unless "the plan is consistent with the applicable Fiscal Plan certified by the [FOMB]."  PROMESA §§ 206(b), 314(b)(7).

20.    "A Fiscal Plan . . . shall . . . provide a *method* to achieve fiscal responsibility and access to the capital markets, and . . . (B) ensure the funding of essential public services; (C) provide adequate funding for public pension systems; (D) provide for the elimination of

structural deficits; . . . (F) improve fiscal governance, accountability, and internal controls; [and] (G) enable the achievement of fiscal targets." PROMESA § 201(b)(1) (emphasis added).

21.     PROMESA provides that the FOMB "shall review any proposed Fiscal Plan to determine whether it satisfies the requirements set forth in [PROMESA § 201(b)] and, if the [FOMB] determines in its sole discretion that the proposed Fiscal Plan (A) satisfies such requirements, the [FOMB] shall approve the proposed Fiscal Plan; or (B) does not satisfy such requirements, the [FOMB] shall provide to the Governor a notice of violation . . . and an opportunity to correct [it]." PROMESA § 201(c)(3).

22.     PROMESA also sets forth a process by which fiscal plans are to be created, reviewed, and certified by the FOMB. PROMESA requires the FOMB to "deliver a notice to the Governor providing a schedule for the process of development, submission, approval and certification of" a fiscal plan. PROMESA § 201(a). The Governor then must submit a proposed fiscal plan by the due date set forth in the notice, which the FOMB must review to determine, in its sole discretion, if it meets PROMESA's requirements. PROMESA § 201(c)(2)-(3).

23.     If the FOMB determines that a fiscal plan proposal does not meet PROMESA's requirements, the FOMB must provide to the Governor a notice of violation with recommendations for revisions to the proposed fiscal plan and an opportunity to correct any violations by a set date. PROMESA § 201(c)(3)(B). The Governor may submit as many revised fiscal plans to the FOMB as the schedule established by the FOMB permits. PROMESA § 201(d)(1).

24.     Should the Governor fail to submit a revised fiscal plan that the FOMB determines, in its sole discretion, satisfies PROMESA's requirements by the deadline set forth in the FOMB's notice, the FOMB is empowered to "develop and submit to the Governor and the

Legislature a Fiscal Plan that satisfies the requirements set forth in" PROMESA § 201(b).
PROMESA § 201(d)(2).  In that instance, the FOMB's fiscal plan "shall be deemed approved by
the Governor and the [FOMB] shall issue a compliance certification for such Fiscal Plan to the
Governor and the Legislature."  PROMESA § 201(e)(2).

25.     Regardless of the path by which the FOMB certifies a fiscal plan, Congress
provided it sole and complete discretion regarding fiscal plan certification decisions.
PROMESA § 201(c)(3).  Congress also provided that such certifications are beyond challenge,
depriving the federal courts of subject matter jurisdiction to hear any challenge to a certification
decision by the FOMB.  PROMESA § 106(e).

### The Certified Fiscal Plan for the Commonwealth of Puerto Rico

**A.     The First Proposed Fiscal Plan**

26.     On September 30, 2016, the FOMB held its first meeting.  At that meeting, the
FOMB passed a motion calling for the Governor of Puerto Rico to provide the FOMB with the
Fiscal Plan for the Commonwealth of Puerto Rico by no later than October 14, 2016.

27.     On October 14, 2016, then-Governor Alejandro García Padilla submitted a
proposed fiscal plan for the Commonwealth to the FOMB (the "First Proposed Fiscal Plan").

28.     On November 18, 2016, the FOMB held a public meeting at which the First
Proposed Fiscal Plan was discussed.  The majority of the stakeholders who testified at the
meeting agreed that the First Proposed Fiscal Plan did not meet the requirements of PROMESA,
required a more balanced approach between structural reforms, fiscal consolidation, and debt
restructuring, and required more structural reforms and better financial controls.

29.     At the November 18, 2016 meeting, the FOMB adopted five principles to evaluate
the proposed fiscal plan for the Commonwealth and assess the degree to which it met the 14
fiscal plan criteria established by § 201(b) of PROMESA.  These five principles required that the

fiscal plan: (1) "cover at least the next 10 fiscal years with meaningful progress in the next five and meet the standards set forth in [PROMESA] (the 14 criteria)"; (2) "work to stabilize the current economic situation, increase the economy's resilience, shore up public finances, support long-term, durable growth, meet the basic needs of the citizenry, and restore opportunity for the people of Puerto Rico"; (3) "assume no additional federal support beyond that which is already established by law" and not rely "on unsustainable Act 154 revenues in light of the expiration of said act"; (4) "include an appropriate mix of structural reform, fiscal adjustment, and debt restructuring"; and (5) "be accompanied by relevant operational plans that show how the [Government of Puerto Rico] will achieve the changes and reforms it proposes."

30.     On November 23, 2016, the FOMB sent then-Governor García Padilla a notice of violation concerning the First Proposed Fiscal Plan pursuant to § 201(c)(3)(B) of PROMESA and requested that he prepare and submit a revised fiscal plan by December 15, 2016.  In addition to the five principles adopted at the November 18, 2016 meeting, the FOMB provided guidance with respect to the matters it sought to be addressed in the revised fiscal plan.  The FOMB also shared a timeline by which it could be in a position to certify a fiscal plan for the Commonwealth by January 31, 2017.

31.     On December 20, 2016, the FOMB sent a letter to both then-Governor García Padilla and then-Governor-Elect Ricardo A. Rosselló Nevares, identifying a framework for a PROMESA-compliant Commonwealth fiscal plan.  Among other things, the FOMB stated that a compliant fiscal plan that achieved a sustainable fiscal balance may require furloughs and freezes as right-sizing measures.  The FOMB also noted that "[c]hange is also needed to ensure the pension costs are sustainable and to address the massive pension liabilities built up over decades."

32.     On January 18, 2017, the FOMB sent a letter to newly inaugurated Governor Rosselló Nevares identifying specific goals and objectives that should be included in a compliant fiscal plan.  The FOMB stated that the fiscal plan "must target a structurally balanced budget by fiscal year 2019 and must articulate a clear path to achieving that goal, while simultaneously pursuing restoration of Puerto Rico's access to the capital markets" and that the path to achieve that goal would involve "a mix of fiscal initiatives and structural reform proposals."

**B.      The Second Proposed Fiscal Plan**

33.     On January 4, 2017, the Governor requested a 45-day extension to propose a fiscal plan to the FOMB.  The FOMB granted the extension, and on February 28, 2017, the Governor submitted a proposed fiscal plan to the FOMB (the "Second Proposed Fiscal Plan").

34.     On March 9, 2017, after reviewing the Second Proposed Fiscal Plan, the FOMB sent the Governor a second notice of violation pursuant to § 201(c)(3)(B) of PROMESA, informing him that it had determined that the Second Proposed Fiscal Plan did not satisfy PROMESA's requirements.  The FOMB determined that the Second Proposed Fiscal Plan

> is based on unrealistic projections of economic growth, substantially underestimates spending, and reflects overly optimistic revenue projections.  The [Second] Proposed [Fiscal] Plan also fails to provide for the scale and timing of expenditure reduction required to achieve medium-term structural balance and near term liquidity.  As such, the [Second] Proposed [Fiscal] Plan does not provide a path to restructuring debt and pension obligations to reach a sustainable level, and ensuring funding of essential services for the people of Puerto Rico.  The [Second] Proposed [Fiscal] Plan also does not provide the specificity of implementation detail required to fully evaluate the feasibility of most measures.

35.     The FOMB also stated that "the [Second] Proposed [Fiscal] Plan needs significant improvement in terms of specificity, scale and timing, to achieve structural balance," including

specifically the "need for aggressive, emergency measures to reduce Government spending starting in FY18 (e.g., furloughs….)."

36.     The FOMB also concluded that the Second Proposed Fiscal Plan lacked a plan to sufficiently reduce pension costs, and as a result the Plan would "shift an excessive amount of cost burdens to other stakeholders, including those who already are suffering from reductions in government outlays to health, education and other priorities."   The FOMB required from the Governor "[m]ore detailed implementation plans for pension reforms . . . including provisions to ensure that the administrator chosen to manage employee accounts does so in a responsible way at the lowest possible cost to employees."

37.     The FOMB gave the Governor until March 11, 2017 to submit another proposed fiscal plan addressing the matters raised in the FOMB's notice of violation.

### C.     The Third Proposed Fiscal Plan

38.     On March 11, 2017, the Governor submitted a revised proposed fiscal plan (the "Third Proposed Fiscal Plan").  After review, the FOMB determined, in its sole discretion, that the Third Proposed Fiscal Plan did not meet PROMESA's requirements and would not be certified as submitted.

39.     The FOMB found the Third Proposed Fiscal Plan was in need of additional safeguards to comply with PROMESA, and to ensure sufficient liquidity and budgetary savings were realized to fund essential services in the following fiscal year.  It determined the Third Proposed Fiscal Plan had two deficiencies.

40.     First, the FOMB determined that the Third Proposed Fiscal Plan did not meet PROMESA's requirements because it lacked sufficient safeguards to ensure sufficient liquidity and budgetary savings were realized to fund essential services in fiscal year 2018.  In other words, the Third Proposed Fiscal Plan did not sufficiently: "(B) ensure the funding of essential

public services," "(D) provide for the elimination of structural deficits," or "(G) enable the achievement of fiscal targets."  PROMESA § 201(b)(1).  The FOMB determined furloughs of up to four days per month for most executive branch employees and up to two days per month for teachers and frontline personnel at 24-hour institutions (excluding frontline law enforcement personnel) would need to take place unless the FOMB determined, in its sole discretion, that the Government met specific requirements relating to liquidity and to development of implementation plans clearly demonstrating necessary budget savings would be achieved.  The FOMB also determined that absent demonstrated sufficient savings in Commonwealth's personnel costs, Christmas bonuses should be eliminated or reduced.

41.     Second, the FOMB determined that the Third Proposed Fiscal Plan did not adequately address the instability in Puerto Rico's pension systems and need for structural changes to ensure long-term stability and to restore public confidence in the pension system without reducing pension outlays.  In other words, the Third Proposed Fiscal Plan did not sufficiently: "(C) provide adequate funding for public pension systems."    PROMESA § 201(b)(1).  It determined the Third Proposed Fiscal Plan needed to be "supplemented to provide for progressively reduced total pension outlays by 10% by fiscal year 2020, to ensure the system can meet its obligations, with protections to ensure that no member is pushed below the federal poverty line as a result of the reductions."

D.     **The FOMB Amends the Governor's Proposed Fiscal Plan**

42.     The FOMB determined that the Governor's Third Proposed Fiscal Plan would be compliant with PROMESA provided that it contained additional provisions relating to furloughs, Christmas bonuses, and pensions.

43.     The FOMB made two amendments to the Third Proposed Fiscal Plan to address the deficiencies it had identified so that it could conclude that the fiscal plan fully complied with

PROMESA. First, the FOMB amended the Third Proposed Fiscal Plan to include, among other things, a requirement that furloughs for up to four days per month for all but front-line police be implemented and government employee Christmas bonuses be reduced or eliminated unless the FOMB determined, in its sole discretion, that the Government met specific requirements relating to liquidity and to development of implementation plans clearly demonstrating necessary budget savings would be achieved by June 30, 2017 (the "First Amendment"). Second, the FOMB amended the Third Proposed Fiscal Plan to require, among other things, progressively reduced total pension outlays by 10% by fiscal year 2020, to ensure the Commonwealth's pension system could meet its obligations, with protections to ensure that no individual is pushed below the federal poverty line as a result of the reductions (the "Second Amendment" and, together with the First Amendment, the "Amendments").

44.     On March 13, 2017, the FOMB unanimously passed a resolution certifying the Commonwealth Fiscal Plan, that is, the Third Proposed Fiscal Plan as modified by the Amendments.

45.     On March 15, 2017, as required by § 201(e) of PROMESA, the FOMB delivered a compliance certification letter and a copy of the certified Commonwealth Fiscal Plan to the Governor, President of the Senate of Puerto Rico Thomas Rivera Schatz, and Speaker of the House of Representatives of Puerto Rico Carlos J. Méndez Núñez.

46.     After finding typographical and formatting errors in the certified Commonwealth Fiscal Plan, the FOMB corrected the errors in a corrected version of the certified Commonwealth Fiscal Plan. In a letter dated April 15, 2017, the FOMB informed the Governor, President Rivera Schatz, and Speaker Méndez Núñez of the errors and provided a copy of the corrected version of the certified Commonwealth Fiscal Plan.

47.     In a letter dated May 31, 2017, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Government of Puerto Rico, requested that the certified Commonwealth Fiscal Plan be amended in accordance with AAFAF's revised revenue forecasts for the Commonwealth.  The FOMB determined to adopt AAFAF's suggested revisions and incorporate them into the certified Commonwealth Fiscal Plan.  The FOMB re-certified the Commonwealth Fiscal Plan with these revisions and transmitted a compliance certification to the Governor and Legislature on June 2, 2017.

**E.     The Governor's Recent Disavowal of the Commonwealth Fiscal Plan**

48.     Upon receiving the FOMB's compliance certification sent on March 15, 2017, the Governor stated to the press that he felt "confident his administration [would] find ways to head off the furloughs and the elimination of Christmas bonuses."  Notably, he did not question or challenge what constituted the Commonwealth Fiscal Plan.  Instead, the Governor worked with the FOMB to commence the Title III case under PROMESA on behalf of the Commonwealth.

49.     On April 29, 2017, the Governor signed into law a bill that serves as a mechanism to ensure the Government's compliance with the Commonwealth Fiscal Plan, as approved and certified by the FOMB.  The preamble to the Fiscal Plan Compliance Act (the "Compliance Law Preamble") explains that the law's single purpose is to ensure that the Government "faithfully compl[ies] with the [Commonwealth Fiscal Plan] approved by the [FOMB]."  The Compliance Law Preamble acknowledges the First Amendment is part of the certified Commonwealth Fiscal Plan.  The Compliance Law Preamble provides that "[o]n March 15, 2017, the [FOMB] accepted and certified [the Government's] Fiscal Plan accompanied by a series of contingencies," including the First Amendment.  The Compliance Law Preamble provides that "the [FOMB] established that if the government is not able through the implementation of other expense reduction measures that generate sufficient funds and an additional cash reserve of $200 million,

15

by June 30, 2017, a program will enter into effect, effective July 1, 2017, for the reduction of the workday of all public employees." The Compliance Law Preamble further provides that the Compliance Law "constitutes a reasonable, equitable, uniform, and necessary means to confront the current crisis and it is the only option that the Government of Puerto Rico has to be able to comply with the [Commonwealth Fiscal Plan] certified by the [FOMB] and avoid the imposition of a reduction in workday for our public employees." The Compliance Law Preamble explains compliance with the Commonwealth Fiscal Plan, and meeting the required right-sizing targets, is necessary "to avoid more severe measures that are part of the contingencies of the [Commonwealth Fiscal Plan] approved by the [FOMB], such as the total elimination of the Christmas Bonus to all public employees and decreeing a reduction in working hours."

50.    On June 22, 2017, in a letter to the FOMB, the Governor for the first time took the position the Amendments were not part of the Commonwealth Fiscal Plan. After acknowledging the Amendments "were required unless the Government" met certain conditions, the Governor stated that the measures required by the Amendments were merely "recommendations" under § 205(a) of PROMESA that the FOMB could "not impose . . . without the Government's acquiescence." Section 205(b) of PROMESA provides the Governor with ninety days to respond to recommendations from the FOMB. By June 22, 2017, more than ninety days had elapsed since the FOMB had delivered its certification and the Commonwealth Fiscal Plan (which included the Amendments) to the Governor and Legislature. The Governor added he would consider these "recommendations" "[u]pon formal notification from the [FOMB] in accordance with PROMESA section 205(a)."

51.    In a June 27, 2017 press release, the Governor again took the position that "by virtue of Section 205 of [PROMESA]" he was not required to comply with the Amendments.

52.     On August 4, 2017, the FOMB held a public meeting where it passed the Fiscal

Plan Enforcement Resolution and announced it had determined that a $218 million gap remained

of the $880 million in required right sizing savings for the current fiscal year.  As a result, the

FOMB determined the furlough program included in the Commonwealth Fiscal Plan must begin

on September 1, 2017, to cover that shortfall.  During that August 4 meeting, Mr. Sobrino, the

Governor's designed representative to the FOMB and *ex officio* member of the FOMB, reiterated

the Governor's position that the furloughs required by the Commonwealth Fiscal Plan were

"recommendations," stating: "There will be no furloughs. You can take that to the bank."

Concerning the pension reductions contained in the Second Amendment, Mr. Sobrino stated

there would be none.

53.     On August 4, 2017, the FOMB sent a letter (the "Fiscal Plan Enforcement

Letter") to the Governor informing him that the FOMB had determined the furlough program, as

set forth in the certified Commonwealth Fiscal Plan, could "be reduced but [could not] be

repealed."  The FOMB "adopted the furlough program as an integral, mandatory part of the

[Commonwealth Fiscal Plan]," and "the decision of whether to implement, repeal or reduce the

furlough program . . . rests solely with the [FOMB], as laid out in the [Commonwealth Fiscal

Plan]."  The Fiscal Plan Enforcement Letter provided "[t]he implementation of this furlough

program must result in a net savings of at least $218 million for fiscal year 2018," and the

implementation date would be extended to September 1, 2017 to provide sufficient time for the

Government to plan its implementation. The FOMB reiterated that, as was written in the

Commonwealth Fiscal Plan, the First Amendment "established clear criteria, including a

deadline of April 30, 2017, for the submission of required implementation plans for right-sizing

measures." The Fiscal Plan Enforcement Letter stated that while the FOMB recognized the

significant progress made by the Government, the FOMB had "provided the Government ample opportunities to comply" with the $880 million right-sizing target.  The FOMB stated it would not grant any further extensions or provide any more flexibility given the considerable work required to achieve the savings targets set forth in the Commonwealth Fiscal Plan.  The FOMB also noted that, "[s]hould the Government fail to implement the furlough program as described herein, the [FOMB] intends to pursue all appropriate means to enforce the certified [Commonwealth Fiscal Plan], as required by PROMESA."

54.     On August 4, 2017—142 days after the FOMB delivered the compliance certificate for the Commonwealth Fiscal Plan to the Governor—the Governor sent a letter to the U.S. President, the Majority Leader of the U.S. Senate, and the Speaker of the U.S. House of Representatives purporting to explain the basis for not adopting the FOMB's furlough "recommendations" as required under § 205(b)(3) of PROMESA.

55.     On August 4, 2017, William E. Villafañe Ramos, the Governor's Chief of Staff and Chief Administrative and Operating Officer of the State, sent a memorandum to "Secretaries, Directors, Agency Heads, Departments, Offices, Commissions, Administrations, Organisms, Public Corporations, and other instrumentalities of the Executive Branch of the Government of Puerto Rico" with the subject: "Order to NOT implement the work schedule reduction in the Entities of the Executive Branch of Puerto Rico."  In his memorandum, the Chief of Staff and Chief Administrative and Operating Officer of the State challenged the FOMB's ability to require furloughs as "*ultra vires* and beyond the scope of the provisions of PROMESA . . . ."  He then instructed all entities of the Executive Branch to "continue their operations as usual," and ordered that "no entity of the Executive Branch is authorized to implement a reduction in work schedule to any human resource."  The memorandum stated that

the Administration promised to "defend" the Commonwealth's public servants "in all forums to which we may have to resort, including before the courts . . . ."

56.     The Governor's statements, as well as the statements of other government representatives speaking on his behalf, including the Governor's *ex officio* member of the FOMB, to the public and to the FOMB, make clear the Governor will not implement the furlough program required under the Commonwealth Fiscal Plan on September 1, 2017.

## COUNT I

DECLARATORY JUDGMENT THAT THE AMENDMENTS ARE BINDING
COMPONENTS OF THE FISCAL PLAN
(28 U.S.C. §§ 2201, 2202; § 104(k) OF PROMESA)

57.     FOMB repeats and incorporates by reference the allegations in paragraphs 1-56 as if fully set forth herein.

58.     PROMESA governs the process for the development, adoption, and implementation of a fiscal plan, which shall provide a method for the Commonwealth to achieve fiscal responsibility and access to the capital markets.

59.     Under § 201 of PROMESA, the FOMB has the sole authority to certify a proposed fiscal plan when the FOMB determines, in its sole discretion, that such plan complies with the requirements of § 201(b) of PROMESA.

60.     The Governor submitted the Second Proposed Fiscal Plan to the FOMB for its review on February 28, 2017.   The FOMB reviewed the Second Proposed Fiscal Plan and ultimately determined, in its sole discretion, that it did not satisfy PROMESA's requirements and issued a notice of violation under § 201(c)(3) of PROMESA.   The FOMB delivered a notice of violation to the Governor on March 9, 2017, identifying the deficiencies in the Second Proposed Fiscal Plan and providing suggestions for revisions.   The FOMB provided the Governor until March 11, 2017 to submit a revised proposed fiscal plan.

61.     The Governor submitted the Third Proposed Fiscal Plan on March 11, 2017. After reviewing the Third Proposed Fiscal Plan, the FOMB determined, in its sole discretion, that the Third Proposed Fiscal Plan did not completely satisfy PROMESA's requirements.

62.     The FOMB unanimously certified the Commonwealth Fiscal Plan as modified by the Amendments on March 13, 2017.  As such, the Fiscal Plan was certified pursuant to § 201(e) of PROMESA.

63.     As required by PROMESA § 201(e), the FOMB submitted the compliance certification for the Commonwealth Fiscal Plan, and a copy of the Commonwealth Fiscal Plan, to the Governor, President of the Senate of Puerto Rico Thomas Rivera Schatz, and the Speaker of the House of Representatives of Puerto Rico Carlos J. Méndez Núñez in a letter dated March 15, 2017.

64.     The Amendments are part of the Commonwealth Fiscal Plan as a matter of law under PROMESA.

65.     The Governor and his agents have stated that the Amendments are not part of the Commonwealth Fiscal Plan, and therefore, are not mandatory components of the Commonwealth Fiscal Plan.

66.     The Governor's refusal to recognize the Amendments as part of the Commonwealth Fiscal Plan challenges the FOMB's certification of the Commonwealth Fiscal Plan in contravention of § 201 of PROMESA, which provides that the FOMB has the sole discretion to determine whether the Commonwealth Fiscal Plan satisfied the requirements of § 201 of PROMESA.

67.     As such, the Governor's actions also constitute a "policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the [FOMB]" contrary to § 108 of PROMESA.

68.     Section 104(k) of PROMESA permits the FOMB to "seek judicial enforcement of its authority to carry out its responsibilities" under PROMESA, including its responsibility, exclusive authority, and sole discretion to certify a fiscal plan.

69.     An actual, substantial, and justiciable controversy exists between FOMB and the Governor concerning the status of the Amendments as part of the Commonwealth Fiscal Plan and the Governor's obligations vis-a-vis the Amendments.

70.     Therefore, the FOMB is entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that the Commonwealth Fiscal Plan includes the Amendments, that the Amendments are mandatory and binding parts of the Commonwealth Fiscal Plan, and that the Governor is legally obligated to enforce and comply with the entire Commonwealth Fiscal Plan, including its Amendments.

## COUNT II

### INJUNCTION PROHIBITING THE GOVERNOR FROM TREATING THE AMENDMENTS AS OPTIONAL RECOMMENDATIONS SUBMITTED UNDER SECTION 205 OF PROMESA
### (SECTION 104(k) OF PROMESA)

71.     The FOMB repeats and incorporates by reference the allegations in paragraphs 1-70 as if fully set forth herein.

72.     The FOMB seeks equitable relief in the form of a preliminary injunction prohibiting the Governor from (a) refusing to enforce or comply with the Commonwealth Fiscal Plan (including the Amendments) and (b) otherwise treating the Amendments as not part of the

Commonwealth Fiscal Plan.  Additionally, the FOMB requests that the preliminary injunction against the Governor be converted into a permanent injunction after trial.

73.     FOMB will likely succeed on the merits of its claims or, alternatively, has raised sufficiently serious questions going to the merits.  Without an injunction to this effect, the implementation of the Commonwealth Fiscal Plan would be delayed, burdened, or otherwise impeded, thereby further endangering the financial future of the Commonwealth and its residents.  The grant of injunctive relief is in the public interest for the same reason—to avoid further endangering the financial future of the Commonwealth.  Conversely, the Governor will not be harmed by a preliminary injunction to this effect, as the Amendments are part of the certified Commonwealth Fiscal Plan with which he is required to comply as a matter of federal law.

74.     Section 104(k) of PROMESA permits the FOMB to "seek judicial enforcement of its authority to carry out its responsibilities" under PROMESA, including its responsibility, sole authority, and sole discretion to certify a fiscal plan.

75.     Therefore, the FOMB is entitled to equitable relief in the form of a preliminary injunction and a permanent injunction prohibiting the Governor from refusing to enforce or comply with the Commonwealth Fiscal Plan (including the Amendments) or otherwise treating the Amendments as not part of the Commonwealth Fiscal Plan.

## **PRAYER FOR RELIEF**

WHEREFORE the FOMB prays that Judgment be entered for FOMB and against Defendant as follows:

A.     Declaring that the Commonwealth Fiscal Plan certified by the FOMB includes the Amendments;

B.      Declaring that the Amendments are mandatory and binding parts of the Commonwealth Fiscal Plan;

C.      Declaring that the Governor must enforce and comply with the entire Commonwealth Fiscal Plan, including its Amendments;

D.      Issuing an injunction prohibiting the Governor from refusing to enforce or comply with the Commonwealth Fiscal Plan (including the Amendments) and otherwise treating the Amendments as not part of the Commonwealth Fiscal Plan;

E.      Granting FOMB such further relief, in law and/or equity, as the Court deems just and proper.

Dated: August 28, 2017
San Juan, Puerto Rico

*s/Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
*s/Carla García-Benítez*
Carla García-Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com
        carla.garcia@oneillborges.com


*s/Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
        sratner@proskauer.com
        tmungovan@proskauer.com

*Attorneys for The Financial Oversight and
Management Board for Puerto Rico*