**Reply Deadline**: September 18, 20017 at 5:00 p.m. (AST)
**Hearing Date (if Requested)**: October 4, 2017 Omnibus Hearing

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## DEBTOR'S OPPOSITION TO MOTION OF
## <u>INTERAMERICAS TURNKEY, INC. TO REVIEW AND STAY</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY....................................................................................................3

ARGUMENT ........................................................................................................................5

I.      The Court Lacks Subject-Matter Jurisdiction To Consider The Motion Or To Grant
        The Relief Requested By Movant........................................................................................5

II.     Movant Lacks Standing To Seek The Relief Requested By The Motion...........................8

III.    The Motion Should Be Denied Because It Is Procedurally, And Fatally, Defective.........11

IV.     The Motion Should Be Denied Because Movant Has Not Made An Adequate
        Showing Of Entitlement To The Relief Requested ............................................................12

        A.      The Furlough Program and Elimination of Christmas Bonuses Are Not A
                Tax. ...................................................................................................................13

        B.      The Planned Measures Will Not Constrain the Court's Ruling on a Plan of
                Adjustment or Violate the Separation of Powers.......................................................13

        C.      The Furlough Program And The Planned Elimination of Christmas
                Bonuses Do Not Violate The Equal Protection Clause ........................................16

CONCLUSION....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Association of Retired Employees of City of Stockton v. City of Stockton (In re
City of Stockton)*,
478 B.R. 8 (Bankr. E.D. Cal. 2012)................................................................6, 7

*Bolling v. Sharpe*,
347 U.S. 497 (1954)...........................................................................................16

*Camreta v. Greene*,
563 U.S. 692 (2011)........................................................................................9, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).........................................................................................11

*Franklin Cal. Tax-Free Trust v. Puerto Rico*,
805 F.3d 322 (1st Cir. 2015), *aff'd*, 136 S. Ct. 1938 (2016)...................................7

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) .................................................................7

*In re City of Stockton*,
486 B.R. 194 (Bankr. E.D. Cal. 2013) ...................................................................7

*In re Johnson*,
No. 99-10629-RGM, 2004 WL 758186 (Bankr. E.D. Va. Jan. 23, 2004)...............................11

*In re Mount Carbon Metro Dist.*,
242 B.R. 18 (Bankr. D. Colo. 1999) .....................................................................7

*In re N.Y.C. Off-Track Betting Corp.*,
434 B.R. 131 (Bankr. S.D.N.Y. 2010) ...................................................................7

*In re Richmond Unified Sch. Dist.*,
133 B.R. 221 (Bankr. N.D. Cal. 1991) ...................................................................7

*In re Valley Health Sys.*,
429 B.R. 692 (Bankr. C.D. Cal. 2010)....................................................................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................10, 11

*Lyda v. City of Detroit (In re City of Detroit)*,
841 F.3d 684 (6th Cir. 2016) ..............................................................................7

*Lyng v. UAW*,
    485 U.S. 360 (1988)................................................................................16, 17

*Northcross v. Bd. Of Educ.*,
    412 U.S. 427 (1973)................................................................................6

*The Pitt News v. Fisher*,
    215 F.3d 354 (3d Cir. 2000)................................................................10

*Reddy v. Foster*,
    845 F.3d 493 (1st Cir. 2017)................................................................11

*SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
    530 F.3d 230 (3d Cir. 2008)................................................................12

*United States v. Klein*,
    80 U.S. 128 (1872)................................................................................14, 15

*United States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669 (1973)................................................................................10

*Valley Forge Christian College v. Americans United for Separation*,
    454 U.S. 464 (1982)................................................................................9, 10

*Vaqueria Tres Monjitas, Inc.*,
    2007 WL 7733665 (D.P.R. 2007)........................................................17

*Wal-Mart Puerto Rico, Inc. v. Juan C. Zaragoza-Gomez*,
    174 F. Supp. 3d 585, 648 (D.P.R. 2016)............................................17

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)................................................................................9, 10

**STATUTES**

11 U.S.C.
    § 904................................................................................................................6
    § 1109(b)........................................................................................................9
    § 1129(a)(6)..................................................................................................14

PROMESA
    § 101(c)(1) ..................................................................................................13, 15
    § 202(e)(3) ..................................................................................................3, 5, 12, 13
    § 305............................................................................................................2, 5, 6
    § 314............................................................................................................14
    § 314(b)(7) ..................................................................................................14

**RULES**

Fed. R. Bankr. P.
 2018(a) ...........................................................................................................................9
 7001(7) ....................................................................................................................11, 12
 7004.............................................................................................................................12
 9014.............................................................................................................................12

Fed. R. Evid. 201 .................................................................................................................3

**OTHER AUTHORITIES**

P.R. Const. art. VI, § 2 ......................................................................................................13

U.S. Const. art. III, § 2 ........................................................................................................9

H.R. Rep. No. 95-595 (1977).............................................................................................7

*Collier on Bankruptrcy* ¶ 7001.08 (16th ed. 2011) ........................................................11

**To The Honorable United States District Court Judge Laura Taylor Swain:**

Debtor The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the

Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as the Debtors'

representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and

Economic Stability Act ("PROMESA"), hereby submits the Commonwealth's opposition to the

"Motion to Review and Stay Debtor's Representative to Deprive the Commonwealth of Internal

Revenue" (Dkt. No. 1167) (the "Motion") filed by Interamericas Turnkey, Inc. ("Movant").[2]

## INTRODUCTION

The Motion seeks a "temporary stay" of any action by the FOMB to cut public

employees' salaries by 20%, and cut public employees' Christmas bonuses.  Motion at 2, ¶ 3.

More specifically, the order proposed by Movant (Dkt. No. 1167-1) (the "Proposed Order to

Show Cause") requested an order to show cause why the Court should not issue a temporary stay

of any action by the FOMB "to reduce the Commonwealth of Puerto Rico Internal Revenue, by

forcing a two (2) days monthly furlough of the employees of the Executive Branch."  Proposed

Order to Show Cause at 3.  The Motion contends that any actions by the FOMB to implement the

furlough program or cut Christmas bonuses – both of which actions are required by the

Commonwealth's Conformed Certified Fiscal Plan – amount to impermissible "legislative

actions" that will reduce the Commonwealth's "Internal Revenue" by cutting public employee

income, which will in turn reduce the Commonwealth's gross tax receipts.  Motion at 2-3.

On August 28, 2017, the Court denied the Proposed Order to Show Cause because

Movant had "not made a facial showing of entitlement to the relief requested," and set a schedule

---

[2] The Commonwealth also is filing this response in the Title III case filed by HTA, Case No. 17-3567-LTS, given the Motion was filed in both Title III cases by Movant.

for filing opposition and reply briefs.  (Dkt. No. 1188).  As discussed in detail below, the Motion
should be denied on at least four independent grounds.

First, under PROMESA § 305, the Court lacks subject-matter jurisdiction to grant the
relief requested by Movant.

Second, Movant, a self-described "[e]minent domain creditor of the Puerto Rico
Highways and Transportation Authority, that has appeared in Bcy. No. 17-3567-LTS" (Motion at
2 n. 1), is without standing to prosecute the Motion.  As a prefatory matter, a *different entity*,
represented by the same counsel as Movant, Interamerican Turnkey Development Co. Inc.
("Interamerican Turnkey Development"), appeared in the Title III case filed by the Puerto Rico
Highways and Transportation Authority ("HTA") as a purported eminent domain creditor.  The
Motion fails to explain the relationship, if any, between Movant and Interamerican Turnkey
Development or why, if Interamerican Turnkey Development is a creditor of HTA, the Motion is
being brought by Movant.  In any event, even assuming Movant were an "eminent domain
creditor" of HTA, Movant would lack standing to challenge any plan to reduce the salaries of
public employees, whether by furlough or otherwise, or cut Christmas bonuses.  Movant's
request is akin to a creditor or employee of a company suing to block the company's business
plan.  The creditor or employee has no right to control the business plan.  If it did, then tens of
thousands other creditors and employees could take inconsistent positions, and Movant does not
allege the other creditors and employees of HTA or the Commonwealth anointed Movant to
speak for them.

Third, the Motion should be denied because it is procedurally defective.  Movant cannot
simply file a motion in this Title III case to bring what is essentially a request for preliminary
injunctive relief against a non-party.  Movant instead must commence an adversary proceeding

2

naming the person or entity it seeks to enjoin – here the FOMB – as a defendant.  Moreover, the

Local Rules require that a motion for injunctive relief be supported by evidence and a

memorandum of points and authorities, neither of which has been filed by Movant.

Fourth, as this Court found in denying the Proposed Order to Show Cause, Movant has

not made an adequate showing of entitlement to the relief requested.  Movant makes several bald

assertions about the proposals it seeks to enjoin.  It claims (i) reducing public employee income

by eliminating Christmas bonuses and cutting salaries by 20%, presumably through

implementation of the furlough program, would be a "surtax" on public employees; (ii) the final

plan of adjustment that will be confirmed by the court will violate the separation of powers

because the fiscal plan certified by the FOMB, a "legislative" department pursuant to

PROMESA § 202(e)(3), will "have a pre-determination, a rule of decision" (Motion at 2, ¶ 5)

that constrains the court's judgment; and (iii) the reduction of public employee income would

violate the Fifth Amendment's equal protection clause.  None of these assertions, however, has

any validity and the Commonwealth requests that the Motion be denied in its entirety.

## PROCEDURAL HISTORY

On May 23, 2017, an entity named Interamerican Turnkey Development filed a Notice of

Appearance and Request for Notice in HTA's Title III case, Case No. 17-3567-LTS (the "HTA

Title III case").[3]  In the filing, Interamerican Turnkey Development described itself as "a creditor

in land condemnation cases *Puerto Rico Highway and Transportation Authority v. Interamerican*

*Turnkey Development Co., Inc*. Nos. KEF2003-0205/0206 (1002) filed by petitioner before the

Commonwealth of Puerto Rico Court of First Instance, San Juan Section."  Exhibit 1 at 1.

---

[3] A true and correct copy of the Notice of Appearance and Request for Notice filed by
Interamerican Turnkey Development in the HTA Title III case (Dkt. No. 2) is attached and
marked as Exhibit 1.  Pursuant to Fed. R. Evid. 201, the Commonwealth hereby asks the Court to
take judicial notice of the fact the Notice was filed by Interamerican Turnkey Development.

Movant, represented by the same counsel who filed the Notice of Appearance and
Request for Notice on behalf of Interamerican Turnkey Development, initially filed the Motion
and the Proposed Order to Show Cause in the HTA Title III case on August 4, 2017 (HTA Title
III case, Dkt. No. 228, 229).  The Motion was not accompanied by any supporting evidence or
memorandum of points and authorities.

On August 8, 2017, the Court issued a Scheduling Order (HTA Title III case, Dkt.237)
directing Movant to file its moving papers in this Title III case (as the lead case) by August 11,
2017.  The Court set deadlines for opposition and reply papers, cautioning that, if Movant failed
to timely file its moving papers in the lead Title III case, the Motion would be denied without
prejudice.  Movant failed to timely file the moving papers in this Title III case and, on August
16, 2017, the Court issued an Order denying the Motion without prejudice (HTA Title III case,
Dkt. 244).

On August 25, 2017, Movant filed the renewed Motion in the HTA Title III case and this
case.  Dkt. 1167, 1167-1; HTA Title III case, Dkt. 253, 253-1.  As before, the Motion is not
accompanied by any supporting evidence or memorandum of points and authorities.

Claiming that Movant is an eminent domain creditor of HTA "that has appeared in" the
HTA Title III case, the Motion challenges the implementation of the furlough program, which
allegedly would cut the salaries of public employees by twenty percent (20%), as well as any
future effort to cut their Christmas bonuses.  Motion at 1, ¶ 1.  Both the furlough program and
the elimination of Christmas bonuses are found in the Fiscal Plan of the Commonwealth of
Puerto Rico, certified by the FOMB on March 13, 2017.

According to the Motion: (i) reducing public employee income by eliminating Christmas
bonuses and cutting salaries would amount to a "surtax" on public employees; (ii) a final plan of

4

adjustment eventually confirmed by the Court will violate the separation of powers because the
Fiscal Plan certified by the FOMB, a "legislative" department pursuant to PROMESA §
202(e)(3), will "have a pre-determination, a rule of decision" that constrains the Court's
judgment; and (iii) the reduction of public employee income would violate the Fifth
Amendment's equal protection clause.  Motion at 1-2, ¶ 2-7.  The Motion does not mention
Interamerican Turnkey Development, let alone explain its relationship, if any, to Movant.

On August 28, 2017, the Court issued an Order on the Motion.  Dkt. 1188.  The Court
concluded that "Movant has not made a facial showing of entitlement to the relief requested,"
and as such denied the "request to proceed by order to show cause."  *Id*. at 1.  In the Order, the
Court set a briefing schedule on the Motion.

## ARGUMENT

**I.     The Court Lacks Subject-Matter Jurisdiction To Consider The Motion Or To
Grant The Relief Requested By Movant**

PROMESA does not grant individual entities a private right of action to bring such a
claim.  PROMESA does not expressly provide one, and Movant has not established that either
Congress or the Puerto Rico legislature intended to create any implied private right of action for
creditors or employees to challenge fiscal plans.[4]  PROMESA § 305, entitled "Limitation on
Jurisdiction and Powers of Court," expressly deprives the Court of subject-matter jurisdiction to
grant the relief sought by the Motion.  PROMESA § 305 states as follows:

---

[4] As the FOMB has said in other litigation, to the extent the requested relief is a challenge to
certification of the fiscal plan, PROMESA § 106(e) prohibits the Court from reviewing the fiscal
plan.  But, to the extent Movant seeks compensation for the carrying out of the fiscal plan
through subsequent budgets and other actions on the ground such actions cause unconstitutional
takings or the like, nothing prevents Movant from seeking compensation or stay relief, as
appropriate.  Many creditors have done so.  Here, we respectfully submit Movant has no
meritorious claims arising from the carrying out of the furlough provisions in the fiscal plan.

5

> Subject to the limitations set forth in titles I and II of this Act, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with – (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property.

Courts interpreting section 904 of the Bankruptcy Code, 11 U.S.C. 904 (on which PROMESA § 305 is modeled), have repeatedly held that it deprives a court of any power to enjoin a municipal debtor from engaging in cost-cutting measures absent the debtor's express consent.[5] *Association of Retired Employees of City of Stockton v. City of Stockton (In re City of Stockton)*, 478 B.R. 8 (Bankr. E.D. Cal. 2012), is instructive here.  To balance its 2012 fiscal budget, the Stockton city council imposed significant cost-cutting measures, including a unilateral reduction in retiree health benefits.  *Id.* at 14.  When affected employees moved for a preliminary injunction prohibiting Stockton from implementing the reduction or requiring the city to continue payment of such benefits, the *Stockton* court held that it lacked jurisdiction to grant the requested injunction because the relief requested would necessarily require the court to interfere with the debtor's "property or revenues" in violation of Bankruptcy Code section 904:

> § 904 performs the role of the clean-up hitter in baseball.  Its preambular language "[n]otwithstanding any power of the court, . . . the court may not, by any stay, order, or decree, in the case or otherwise . . ." is so comprehensive that it can only mean that a federal court can use no tool in its toolkit – no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order – to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment of income-producing property.  11 U.S.C. § 904.  *As a practical matter, the § 904 restriction functions as an anti-injunction statute – and more.*

---

[5] In light of the similarity between PROMESA section 305 and Bankruptcy Code section 904, it is presumed that Congress intended PROMESA section 305 to operate in the same manner as Bankruptcy Code section 904.  *See Northcross v. Bd. Of Educ.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [the statutes] is, of course, a strong indication that the two statutes should be interpreted *pari passu*.").

6

*Id*. at 20 (emphasis supplied).[6]

The same rationale applies here.  Unlike a typical chapter 11 case, "[t]he primary purpose of [a] debt restructur[ing] for a municipality is not future profit, but rather continued provision of public services."  *In re City of Detroit*, 524 B.R. 147, 248 (Bankr. E.D. Mich. 2014) (quoting *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999)); *In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991) ("Chapter 9 does not attempt to balance the rights of the debtor and its creditors, but rather, to meet the special needs of a municipal debtor."); H.R. Rep. No. 95-595 (1977) ("Chapter 9 provides essentially for Federal court protection, and supervision of a settlement between the debtor municipality and a majority of its creditors.  A municipal unit cannot liquidate its assets to satisfy its creditors totally and finally.  Therefore, the primary purpose of Chapter 9 is to allow the municipal unit to continue operating while it adjusts or refinances creditor claims …").  Granting the relief Movant seeks would run contrary to these principals, and necessarily interfere with the Commonwealth's and the FOMB's powers to develop and certify fiscal plans and budgets and the treatment of the Commonwealth's property and revenues pursuant to the fiscal plan – all without the FOMB's consent.

---

[6] *See also Lyda v. City of Detroit (In re City of Detroit)*, 841 F.3d 684, 696 (6th Cir. 2016) (affirming lower court's holding that, under Bankruptcy Code section 904, it lacked jurisdiction to order the chapter 9 debtor city not to terminate residential customers' water service for non-payment, because such an order would necessarily interfere with the city's governmental powers and its property and revenues); *accord Franklin Cal. Tax-Free Trust v. Puerto Rico*, 805 F.3d 322, 341-42 (1st Cir. 2015), *aff'd*, 136 S. Ct. 1938 (2016); *In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131, 140 (Bankr. S.D.N.Y. 2010) ("Section 904's command is clear.  A bankruptcy court may not interfere with a chapter 9 debtor's political or governmental powers, or the use of the debtor's property, without the debtor's consent.") *In re City of Stockton*, 486 B.R. 194, 200 (Bankr. E.D. Cal. 2013) (chapter 9 municipal debtor was not required to move for court approval of a settlement because, under Bankruptcy Code section 904, court could not prevent debtor "from spending its money for any reason, even foolishly or in a manner that disadvantages other creditors, unless the municipality consents to such judicial oversight."); *In re Valley Health Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010) (by virtue of Bankruptcy Code section 904, municipal debtor "retains title to, possession of, and complete control over its property and its operations, and is not restricted in its ability to sell, use, or lease its property.").

## II.    Movant Lacks Standing To Seek The Relief Requested By The Motion

The Motion also should be denied on the independent ground that Movant lacks standing to pursue the requested relief.

Movant bases its purported standing on the theory that it is an "eminent domain creditor" of HTA and, as such, may seek to effectively enjoin the FOMB from taking action that would adversely impact the Commonwealth's revenue and, ultimately, the amount available for creditors under a plan of adjustment.

Preliminarily, Movant does not offer any evidence to support the bare assertion that it is a creditor, an assertion that appears to be contradicted by the earlier filing by a different entity, Interamerican Turnkey Development, through the same counsel.  Exhibit 1, HTA Title III case, Dkt. No. 2.  The caption of the lawsuit identified by Interamerican Turnkey Development certainly suggests that the land condemnation lawsuit brought by HTA is against Interamerican Turnkey Development, rather than Movant.  If there is a satisfactory explanation regarding why Movant should be treated as a creditor, Movant has failed to provide it or to substantiate it with any supporting evidence.  The Court may not and should not simply accept Movant's bare assertion at face value, particularly when there is contradictory evidence in the record and Movant seeks what is essentially injunctive relief.

Even assuming *arguendo*, despite this complete lack of evidentiary support, that Movant were an "eminent domain creditor" of HTA, Movant still would lack standing to challenge any plan to reduce the salaries of public employees, whether by furlough or otherwise, or to cut Christmas bonuses.

Recognizing that it is not a public employee of the Commonwealth that would be directly impacted by any salary reduction, furlough or bonus cuts, Movant asserts, again without any

8

evidence or authority, that "[a]ll classes of creditors will be adversely affected because the reduction in the amount collected in taxes, the less the eventual payout to creditors in going to be [*sic*]." Proposed Order to Show Cause at 1, ¶ 4.  This assertion, however, is of no help to Movant, and does not confer standing.  (Nor is Movant's assertion correct.  Without the savings from the furloughs, the Commonwealth may run short of cash.)

The Bankruptcy Code, the Bankruptcy Rules, and the jurisprudence recognize two types of standing: (a) standing to prosecute or defend, and control settlement of, a cause of action; and (b) standing to intervene, appear, and be heard.  The latter standing is (i) granted specifically by Bankruptcy Code section 1109(b) to parties in interest in chapter 11 cases, and (ii) grantable "generally" to "any interested entity" for cause shown pursuant to Bankruptcy Rule 2018(a) in title 11 cases and SIPA proceedings removed to the Bankruptcy Court.

*Constitutional standing* refers to the need to ensure there is a case and controversy because Article III, section 2 of the U.S. Constitution only authorizes the Article III judicial power to be used to resolve cases and controversies.  *Valley Forge Christian College v. Americans United for Separation*, 454 U.S. 464, 475-76 (1982).[7]  Constitutional standing requires a showing of an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  A litigant must also establish that the injury "fairly can be traced to the challenged action and is likely to be redressed by a

---

[7] The Supreme Court acknowledges that while it has not been totally consistent on constitutional standing requirements, it is "sure" that constitutional standing exists to circumscribe Article III judicial power: "But of one thing we may be sure:  Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.  Article III, which is every bit as important in its circumscription of the judicial power of the United States as in its granting of that power, is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated . . . ."  *Valley Forge Christian College*, 454 U.S.at 475-76.  *See also Camreta v. Greene*, 563 U.S. 692, 701 (2011) ("Article III of the Constitution grants this Court authority to adjudicate legal disputes only in the context of 'Cases' or 'Controversies.'").

favorable decision." *Id.* "[T]he opposing party also must have an ongoing interest in the dispute, so that the case features that concrete adverseness which sharpens the presentation of the issues."[8] The initial standard is met as long as the party alleges a "specific, identifiable trifle of injury," *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686-90, n.14 (1973), or a "personal stake in the outcome of [the] litigation," *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000).

In addition to "injury in fact," the party seeking standing must demonstrate that it has *prudential standing*. Prudential standing means the litigant must assert its own, non-abstract, legal rights or interest intended to be protected by the statute, regulation, or constitutional guarantee in issue. *Valley Forge Christian College*, 454 U.S. at 474-75.

Consequently, to establish standing here, Movant has the burden of demonstrating an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical … [and] there must be a causal connection between the injury and the conduct complained of…." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). The purported injury asserted by Movant – reducing the income of public employees would lead to reduced income tax and reduced purchasing and payment of sales tax, and consequently, less revenue to pay creditors under a future plan of adjustment that has not been proposed – is none of these. To the contrary, such a purported injury is conjectural, hypothetical, highly speculative, and wrong. Moreover, under Movant's apparent theory, any causal connection between furloughs, salary reductions or bonus cuts would be highly attenuated.

---

[8] *Camreta*, 563 U.S. at 701 (internal quotations omitted).

Movant has not and cannot establish standing, and the Motion should be denied. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lujan*, 504 US. at 560; *Reddy v. Foster*, 845 F.3d 493, 501, 505 (1st Cir. 2017) (affirming dismissal because plaintiffs lacked standing until some future time when the statute at issue caused particular and cognizable harm).

## III.     The Motion Should Be Denied Because It Is Procedurally, And Fatally, Defective

Movant improperly brings its Motion – which seeks "a temporary stay of any legislative action by the [FOMB] to reduce the Commonwealth['s] internal revenue" – as a contested matter.  The correct procedural vehicle for the Motion, which seeks what is essentially an injunction against the FOMB, is an adversary proceeding.  Moreover, because the Motion seeks affirmative relief against the FOMB, the FOMB, which appears in this case solely as the Commonwealth's representative pursuant to PROMESA, would have to be joined as a defendant in such an adversary proceeding in its non-representative capacity.

Fed. R. Bankr. P. 7001(7) requires that "a proceeding to obtain an injunction or other equitable relief" be brought as an adversary proceeding.  Fed. R. Bankr. P. 7001(7).  The Motion requests that the Court enjoin certain actions, including furloughs, reducing salaries, cutting Christmas bonuses and pursuing claims on behalf of the Commonwealth before the Court – precisely the type of relief that Rule 7001 requires be brought as an adversary proceeding.  *See, e.g.*, *In re Johnson*, No. 99-10629-RGM, 2004 WL 758186, at *1 (Bankr. E.D. Va. Jan. 23, 2004) ("A proceeding to obtain an injunction is an adversary proceeding.  An adversary proceeding is commenced by filing a complaint, not by filing a motion. … In this instance, the matter was commenced by motion and for that reason alone must be dismissed."); *see also Collier on Bankruptcy* ¶ 7001.08 (16th ed. 2011) ("[A]n adversary proceeding is necessary to obtain an injunction …. Situations in which injunctive relief has been denied by reason of not

11

having been sought by adversary proceedings include … a motion for a temporary restraining order [and] a motion to enjoin the enforcement of a settlement …. Failure to commence an adversary proceeding when seeking the relief of the kind listed in Rule 7001 has resulted in denial of the motion or dismissal of the proceeding.").

Rule 7001 is not a mere formality.  By requiring that certain types of proceedings – including requests for injunctive relief – be brought through adversary proceedings, the rules ensure that these requests are subject to the heightened level of procedural protections entailed by adversary proceedings.  *See, e.g.*, *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 242 (3d Cir. 2008) (the "Rules require an adversary proceeding – which entails a fundamentally different, and heightened, level of procedural protections – to resolve . . . particular issue[s].").  Bankruptcy Rule 9014 shows how some, but not all provisions of the Federal Rules of Civil Procedure apply to contested matters, which are brought by motions. Movant's caption demonstrates its procedural shortcomings arising out of its failure to commence and adversary proceeding which can only be brought by complaint pursuant to Bankruptcy Rule 7004.  Movant's caption doesn't identify the parties!

## IV.     The Motion Should Be Denied Because Movant Has Not Made An Adequate Showing Of Entitlement To The Relief Requested

As this Court found in denying the Order to Show Cause, the Motion should be denied because Movant has not made an adequate showing of entitlement to the relief requested. Movant asserts, without supporting argument or evidence, it is entitled to relief for three main reasons: (i) the reduction of public employee salaries and elimination of Christmas bonuses effectively imposes a "confiscatory" "surtax" on public employees; (ii) a final plan of adjustment eventually confirmed by the court will violate the separation of powers because the fiscal plan certified by the FOMB, a "legislative" department pursuant to PROMESA § 202(e)(3), will

"have a pre-determination, a rule of decision" (Motion at 2, ¶ 5) that constrains the Court's

judgment; and (3) reducing public employee income would violate the Fifth Amendment's equal

protection clause. Each of these assertions is incorrect, as any reductions in employee salaries

are not a tax, the FOMB is not a "legislative" department, and reducing public employee income

would not violate the Fifth Amendment.

A.      <u>The Furlough Program and Elimination of Christmas Bonuses Are Not A Tax.</u>

The premise of Movant's argument – that the furlough program and elimination of

Christmas bonuses are taxes on public employees – fundamentally misunderstands the facts.

Even if the FOMB could implement any measures, it does not have any power under the

Puerto Rico Constitution to impose a tax. The power of the Puerto Rican government to impose

taxes is expressly addressed in the territory's Constitution, which vests the Commonwealth's

power "to impose and collect taxes" in the Legislative Assembly. P.R. Const. art. VI, § 2. The

FOMB is, of course, not a part of the Legislative Assembly; it is an independent, complementary

entity of the territorial government. It is therefore incapable of imposing a tax. PROMESA §

101(c)(1).

B.      <u>The Planned Measures Will Not Constrain the Court's Ruling on a Plan of
Adjustment or Violate the Separation of Powers.</u>

Movant alleges a final plan of adjustment will violate the separation of powers because

the fiscal plan certified by the FOMB, a purported "legislative" department, will "have a pre-

determination, a rule of decision" (Motion at 2, ¶ 5) constraining the Court's judgment. This

argument hinges on the FOMB's status as a "legislative department." The *sole* basis for this

assertion is PROMESA § 202(e)(3).

Section 202(e)(3), titled "Deemed Certification of Territory Budgets," states as follows:

> If the Governor and the Legislature fail to develop and approve a Territory
> Budget that is a compliant budget by the day before the first day of the fiscal year

13

for which the Territory Budget is being developed, the Oversight Board shall submit a Budget to the Governor and the Legislature (including any revision. to the Territory Budget made by the Oversight Board pursuant to subsection (d)(2)) and such Budget shall be— (A) deemed to be approved by the Governor and the Legislature; (B) the subject of a compliance certification issued by the Oversight Board to the Governor and the Legislature; and (C) in full force and effect beginning on the first day of the applicable fiscal year.

When the FOMB proposes a Title III plan of adjustment, the Court will rule on its confirmability based on the standards set forth in PROMESA § 314.  The FOMB will be a litigant urging confirmation.  The FOMB will not have any role other than as a litigant in connection with the Court's ruling.  That the plan of adjustment must be consistent with the Fiscal Plan pursuant to PROMESA § 314(b)(7), does not implicate the separation of powers or detract from the other confirmation requirements.  Confirmation of plans of adjustment, like chapter 11 plans, must be consistent with various regulatory approvals.  *See* Bankruptcy Code section 1129(a)(6).  None of such requirements intrudes on the Court's independent and unilateral determination to confirm a plan or not to confirm it.

*United States v. Klein*, 80 U.S. 128 (1872), the sole case cited by Movant, is inapposite. *Klein* addressed whether a federal statute, duly passed by Congress, depriving the Court of Claims and Supreme Court of jurisdiction to award and affirm judgments for confiscated property if a claimant accepted a Presidential pardon, violated the separation of powers and the President's power to grant pardons.  In the aftermath of the Civil War, Congress created a system permitting property captured by the Union armies during the war to be returned to its original owners or otherwise sold.  Shortly thereafter, the President issued widespread pardons to individuals who had participated in the Confederate cause if they pledged loyalty to the United States.  In reaction to the President's pardons, Congress passed a statute depriving pardoned individuals of their right to participate in the property return system by proving they did not aid

14

the rebellion.  Congress did so by providing acceptance of the pardon would be conclusive evidence the person aided the rebellion and that the jurisdiction of the Court of Claims and Supreme Court would cease:

> "…It is further provided that whenever any pardon, granted to any suitor in the Court of Claims, for the proceeds of captured and abandoned property, shall recite in substance that the person pardoned took part in the late rebellion, or was guilty of any act of rebellion or disloyalty, and shall have been accepted in writing without express disclaimer and protestation against the fact so recited, such pardon or acceptance shall be taken as conclusive evidence in the Court of Claims, and on appeal, that the claimant did give aid to the rebellion; and on proof of such pardon, or acceptance, which proof may be made summarily on motion or otherwise, the jurisdiction of the court shall cease, and the suit shall be forthwith dismissed."

*United States v. Klein*, 80 U.S. at 143-144.

Congress's 1870 statute *required* that if a court had evidence that a party had accepted a pardon, the outcome of the party's case was preordained: "an acceptance of a pardon, without disclaimer, *shall be conclusive evidence* of the acts pardoned, … [b]ut the court is *forbidden* to give the effect to [that] evidence which, in its own judgment, such evidence should have, and is directed to give it an effect precisely contrary."  *Id.* at 144, 147 (emphasis added).  By doing so, the Court held, Congress violated the separation of powers by invading the province of the judicial branch and impaired the President's power to grant pardons by burdening them with the inability to retrieve confiscated property.  *Id.* at 143-48.

The FOMB is "an entity within the *territorial* government," not the federal government.  PROMESA § 101(c)(1).  Consequently, the constitutional concerns which animated *Klein* – namely, the separation of powers among the three co-ordinate branches of the federal government – simply do not apply here.  Moreover, Congress has not intruded on the Court's unfettered ability to confirm or not to confirm a plan of adjustment by imposing any conclusive fact findings on the Court.

15

C.    The Furlough Program And The Planned Elimination of Christmas Bonuses Do
Not Violate The Equal Protection Clause

The Motion also asserts that the Board's proposals violate the "Equal Protection Clause"
of the Vth Amendment" because (i) public employees are the only employees subjected to the
20% surtax and (ii) the 20% surtax is sufficiently high as to be confiscatory.[9]

Both contentions fail at the outset for the reasons discussed above.  Any reduction in
salaries or elimination of Christmas bonuses simply are not "taxes."  Even assuming *arguendo*
that such reductions were a "tax," Movant's contentions are without merit and should be
rejected.

In analyzing an equal protection claim, courts first examine whether the challenged
statute or regulation has a "substantial impact on any fundamental interest," and whether it
"affect[s] with particularity any protected class."  *Lyng v. UAW*, 485 U.S. 360, 370 (1988).
While the FOMB highly values the public employees and has gone to great lengths to protect
90% of their pensions while other creditors may receive much lower proportions of their claims,
Movant has not presented any evidence that for constitutional purposes, public employees are a
protected class, or that the proposals have a "substantial impact on any fundamental interest."
Nor can it, because the case law indicates the opposite.  In *Lyng*, the Court considered a
challenge by two labor unions and several individual union members to a statute that provided, in
part, that "no household shall become eligible to participate in the food stamp program during
the time that any member of the household is on strike."  *Id.* at 362.  The Court held that these
employees were not a protected class, and that their ineligibility for food stamp benefits did not

---

[9] The Fifth Amendment does not have an "Equal Protection Clause" as such; however, "the
concepts of equal protection and due process, both stemming from our American ideal of
fairness, are not mutually exclusive … [A]s [the Supreme] Court has recognized, discrimination
may be so unjustifiable as to be violative of due process."  *Bolling v. Sharpe*, 347 U.S. 497, 499
(1954).

16

create a "substantial impact on any fundamental interest." *Id.* at 370. If the unionized, striking employees in *Lyng* are not a protected class, the public employees here surely are not. And if ineligibility for food stamps, which serve to supplement income, does not substantially impact a fundamental interest, then a reduction in salary also does not.

The Court therefore need only consider whether the planned cuts in salaries and Christmas bonuses are "rationally related to a legitimate governmental interest" – a determination that "is typically quite deferential; legislative classifications are presumed to be valid, largely for the reason that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Lyng*, 485 U.S. at 370 (internal citations and quotations omitted). Here, the answer clearly is yes. The governmental interest at stake – rectifying the Commonwealth's dire fiscal and economic crisis – is a core governmental interest of significant import, and reduction of public expenditures through limited changes to the number of employee work days is unquestionably rationally related to that interest.

Movant separately asserts that the so-called "tax" is "confiscatory" because it would result in a deprivation of property without due process of law. Deeming a rate to be "confiscatory," however, is a fact-intensive inquiry – and Movant has not offered a shred of evidence to support its assertion. *See Vaqueria Tres Monjitas, Inc.*, 2007 WL 7733665, at *36 (D.P.R. 2007) ("[T]he analysis of whether confiscation or a taking of property in a regulated market has actually occurred cannot be done in a vacuum. … [T]he impact of certain rates can only be evaluated in the context of the system under which they are imposed."). This failure of proof is particularly troubling where, as here, the bar for determining that a tax is confiscatory is quite high. For example, in *Wal-Mart Puerto Rico, Inc. v. Juan C. Zaragoza-Gomez*, 174 F. Supp. 3d 585, 648 (D.P.R. 2016), the Court held that a tax rate was "confiscatory" only upon

17

evidence that it would take all of Wal-Mart's profits, "effectively telling the largest retailer on the island that if it wants to do business in Puerto Rico, Wal-Mart Stores must sell merchandise to Wal-Mart PR at a loss, cover the costs of shipping and handling for free, and forgo any return on its labor and investment. We agree with *Zaragoza* that a business operating under those terms would be 'economically irrational.'" (internal citations omitted).  Movant cannot show that the proposed cuts in salaries and bonuses contemplated by the Conformed Certified Fiscal Plan even come close to meeting this standard.

Because Movant has failed to make an adequate showing of entitlement to the relief requested, the Motion should be denied.

## <u>CONCLUSION</u>

WHEREFORE for the foregoing reasons, the Commonwealth respectfully requests the Court deny the Motion in its entirety.

[*Remainder of Page Intentionally Left Blank*]

18

Dated: September 11, 2017
     New York, N.Y.

Respectfully submitted,

*/s/Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
       sratner@proskauer.com

Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel:  (617) 526-9600
Fax:  (617) 526-9899
Email:  tmungovan@proskauer.com

*Attorneys for The Financial Oversight and
Management Board for Puerto Rico, as
representative of The Commonwealth of Puerto
Rico*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

<u>/s/Hermann D. Bauer</u><br>Hermann D. Bauer