**Objection Deadline:** September 19, 2017, 4:00 p.m.
**Hearing Date:** October 4, 2017, 9:30 a.m.

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284 (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

JURISDICTION ................................................................................................................ 3

RELEVANT FACTUAL BACKGROUND ........................................................................ 3

RELIEF REQUESTED ...................................................................................................... 6

BASIS FOR RELIEF REQUESTED .................................................................................. 7

      A.     Ambac is entitled to information relating to the
Commonwealth's Fiscal Plan and Budget. ...........................................................7

      B.     Ambac and other creditors must have substantive financial
information relating to the Fiscal Plan and Budget to
meaningfully participate in the resolution of these Title III
cases. ...................................................................................................................10

CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1.......... 13

NOTICE ......................................................................................................................... 13

NO PRIOR REQUEST FOR RELIEF ............................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ambac v. HTA*,
No. 16-cv-1893 (D.P.R. 2016), Dkt. No. 44 .................................................. *passim*

*In re China Fishery Grp. Ltd.*,
2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ............................................10

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991) ...........................................................10, 11

*In re Drexel Burnham Lambert Grp., Inc.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991) .............................................................8, 11

*ePlus, Inc. v. Katz* (*In re Metiom, Inc.*),
318 B.R. 263 (S.D.N.Y. 2004) ...........................................................................9

*Freeman v. Seligson*,
405 F.2d 1326 (D.C. Cir. 1968) ..........................................................................9

*In re Gawker Media LLC.*,
2017 WL 2804870 (Bankr. S.D.N.Y. 2017) ..................................................8, 9, 10

*In re Hilsen*,
2008 WL 2945996 ......................................................................................8, 10

*In re Hughes*,
281 B.R. 224 (Bankr. S.D.N.Y. 2002) ..................................................................9

*In re Ionosphere Clubs, Inc.*,
156 B.R. 414 (Bankr. S.D.N.Y. 1993) ...............................................................8, 9

*In re Johns-Manville Corp.*,
36 B.R. 743 (Bankr. S.D.N.Y. 1984) ...................................................................9

*Lorber v. Vista Irrigation Dist.*,
127 F.2d 628 (9th Cir. 1942) ............................................................................12

*In re Recoton Corp.*,
307 B.R. 751 (Bankr. S.D.N.Y. 2004) ............................................................10, 11

*In re Summit Corp.*,
891 F.2d 1 (1st Cir. 1989) .................................................................................9

*In re Velo Holdings Inc.*,
 472 B.R. 201 (Bankr. S.D.N.Y. 2012)...................................................................12

**Statutes**

13 L.P.R.A. § 12 ...............................................................................................20, 22

11 U.S.C. § 105(a) ....................................................................................................8

11 U.S.C. § 1109(b) ..................................................................................................9

11 U.S.C. § 1125 .....................................................................................................11

11 U.S.C. § 1129(b)(1) ...........................................................................................12

28 U.S.C. § 1331 .................................................................................................3, 17

28 U.S.C. § 1391(b) ...........................................................................................3, 17

48 U.S.C. §§ 2101 *et seq*........................................................................................21

48 U.S.C. § 2170 ......................................................................................................7

PROMESA § 310 ..................................................................................................1, 7

PROMESA § 315(b) ...............................................................................................16

**Other Authorities**

Fed. R. Bankr. P. 2004....................................................................................1, 8, 9, 16, 31

Fed. R. Civ. P. 34 ....................................................................................................23

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u> <u>Rules</u>"), made applicable to this proceeding by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("<u>PROMESA</u>"), Ambac Assurance Corporation ("<u>Ambac</u>") respectfully submits this motion (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as Exhibit A (the "<u>Proposed Order</u>"), to take discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as representative of the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>" or the "<u>Debtor</u>"); (ii) the Commonwealth; and (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") and approving procedures to take related discovery from other parties.  In support of this Motion, Ambac respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Rule 2004 of the Bankruptcy Rules allows the Court to order an examination of "the liabilities and financial condition of the debtor." Fed. R. Bankr. P. 2004(b).  In accordance with Rule 2004, Ambac seeks from the Oversight Board, AAFAF, the Commonwealth, and other third parties basic financial information that is necessary for Ambac and its advisors to understand the Commonwealth's financial condition and its fiscal plan, as certified by the Oversight Board on March 13, 2017 (the "<u>Fiscal Plan</u>").

2.      This information is critical to the eventual confirmation of any proposed plan of adjustment.  Without information regarding the assumptions and methodology underlying the Fiscal Plan, including key financial information regarding the Debtor's assets and projected revenues and expenses, Ambac cannot accurately evaluate and react to any restructuring proposals made by the Debtor, including in connection with any proposed plan of adjustment, which by law must be based on the Fiscal Plan.

3.     Ambac has sought this information from the Commonwealth, the Oversight Board, and AAFAF, to no avail.  Ambac, through its counsel, has submitted multiple requests for financial information and other diligence that would allow Ambac to evaluate the financial condition of the Commonwealth and its instrumentalities, including various fiscal plans and their implications for stakeholders.  The Oversight Board, AAFAF, the Commonwealth and its representatives have yet to produce most of the requested information.

4.     At the outset of these proceedings, the Court emphasized the importance of transparency and expressed hope that the Commonwealth would make "progress on issues relating to the disclosure of information to creditors."[2]  To that end, the Court ordered the Oversight Board to submit a status report (the "Status Report") to keep the Court apprised of such progress and also the status of settlement discussions.

5.     The Status Report filed by the Oversight Board on June 15, 2017, focused on information that the Oversight Board had previously deposited into a data room shortly before the commencement of the Title III Cases.[3]  This information is insufficient, as it does not allow Ambac or other creditors to understand the Fiscal Plan or the Commonwealth's budget.  In the Status Report, the Oversight Board acknowledged that the Commonwealth had received extensive follow-up diligence requests.  Nevertheless, the Commonwealth and its representatives have repeatedly ignored or refused requests to provide even basic financial information to its creditors.

6.     The Oversight Board, AAFAF, and the Commonwealth have failed to show any intent to voluntarily engage in a cooperative process to provide this critical information to

---

[2] See 5/17/17 Hr'g Tr. at 63:5-9; 147:16-25.

[3] See Debtors' Status Report Regarding (A) Financial Disclosures to Creditors and (B) Status of Settlement Discussions, Case No. 17-03283 (D.P.R. June 15, 2017), Dkt. No. 350.

- 2 -

creditors.  Ambac accordingly seeks an order from this Court compelling the Oversight Board,

AAFAF, the Commonwealth, and related third parties to produce this information.

## JURISDICTION

7.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and

PROMESA § 306(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and

PROMESA § 307(a).

## RELEVANT FACTUAL BACKGROUND

8.     Ambac is a provider of financial guaranty insurance to United States public

finance and infrastructure markets.  Ambac insures: (i) approximately $1.3 billion in net accreted

value of senior bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA");

(ii) approximately $494 million of bonds issued by the Puerto Rico Highways and Transportation

Authority ("HTA"); (iii) approximately $137 million of bonds issued by the Puerto Rico

Convention Center District Authority ("PRCCDA"); (iv) approximately $565 million of bonds

issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA"); (v) approximately $56

million of general obligation ("GO") bonds issued by the Commonwealth ("GO Bonds"); and

(vi) approximately $131 million of bonds issued by the Puerto Rico Public Buildings Authority

("PBA") containing a guarantee of repayment by the Commonwealth.

9.     In passing PROMESA, Congress established a process by which the Oversight

Board must approve a fiscal plan governing the Commonwealth's future finances.  An approved

fiscal plan then forms the basis for future plans of adjustment proposed in a Title III proceeding

or voluntary debt modifications proposed under Title VI of PROMESA.

10.     Critically, PROMESA explicitly requires that a fiscal plan, and, consequently, a

plan of adjustment, respect constitutional and statutory priorities. PROMESA § 201(b)(1)(N)

(requiring that any fiscal plan must respect lawful liens and priorities); § 201(b)(1)(M) (requiring

that a fiscal plan must "ensure that assets, funds, or resources of a territorial instrumentality are not . . . transferred to . . . [the Commonwealth]" except in accordance with law).

11.     On March 13, 2017, the Oversight Board certified the Fiscal Plan.

12.     The certified Fiscal Plan does not comply with PROMESA's requirements. For instance, the Fiscal Plan impairs the COFINA structure by treating the entirety of the sales and use tax, including the portion pledged to COFINA, as if it is a general Commonwealth revenue source, effectively requiring the appropriation of COFINA's property.  In addition, the Fiscal Plan diverts the revenues securing bonds issued by HTA, PRIFA, and PRCCDA in a manner that bears no resemblance to the limited "clawback" mechanism provided for by Puerto Rico constitutional and statutory law.  In these and other ways, the Fiscal Plan fails to respect lawful liens and priorities as required by Section 201(b)(1)(N) of PROMESA.

13.     The Oversight Board filed a Title III petition in this Court on (i) May 3, 2017 on behalf of the Commonwealth; (ii) May 5, 2017 on behalf of COFINA; and (iii) May 21, 2017 on behalf of HTA.

14.     Ambac has sought to understand the Commonwealth's financial condition for years.  On April 6, 2015, Ambac requested information regarding the financial condition[4] of COFINA, HTA, PRIFA, and PRCCDA from each of these issuers in accordance with Ambac's contractual right to receive such information under the agreements governing Ambac's financial

---

[4] Ambac requested (i) documents identifying the financial institution or government entity that held the various accounts identified in each issuer's governing trust agreement or resolution; (ii) account statements reflecting receipts into and disbursements from these accounts; (iii) liquidity forecasts; (iv) documents identifying unencumbered assets of each issuer, and (v) documents detailing or reflecting each issuer's budget for capital expenditures for the current and two subsequent fiscal years, along with certain issuer-specific information from each issuer.

guaranty insurance policies.  When no response was received,[5] Ambac reiterated its requests for information on July 9, 2015.  These requests were similarly ignored.

15.     In May of 2016, Ambac brought suit against HTA for breach of fiduciary duty and seeking to appoint a receiver at HTA.   In connection with that suit, Ambac sought production of the same information Ambac had previously requested, to which it has a right to receive under the documents governing Ambac's insurance of HTA bonds.  At a hearing before the Court on May 26, 2016, HTA acknowledged that it was contractually obligated to produce certain financial information to Ambac, and the Court ordered HTA to begin producing documents to Ambac upon the execution of a suitable protective order.  The Court's minute entry from this hearing reflects HTA's commitment to produce documents to Ambac:  "[HTA] pointed out that it would start gathering *and producing* the information."  *Ambac v. HTA*, No. 16-cv-1893 (D.P.R. 2016), Dkt. No. 44 (Minutes of Proceedings: Motion Hearing) (emphasis added).

16.     Nonetheless, after a protective order was negotiated and so-ordered, HTA ignored repeated requests as to the status of its document production, eventually requiring Ambac to file a motion to compel the very documents that HTA had stated to the Court it was contractually obligated to produce.  *Id.* (Dkt. No. 58.)  By that time, however, it became clear it that HTA's strategy was to run out the clock on discovery while PROMESA was pending in Congress.  After PROMESA was passed on June 30, 2016, HTA promptly filed a notice of stay pursuant to PROMESA, precluding the relief Ambac would have almost certainly obtained in light of HTA's representations to the Court.

17.     This pattern of behavior continued into 2017 when Ambac requested information concerning the Fiscal Plan and the assumptions underlying it.  For instance, on April 7, 2017,

---

[5] Ambac received a response from PRCCDA on April 28, 2015, requesting 15 additional days in which to produce documents, to which Ambac agreed.  No further response was received from PRCCDA.

Ambac submitted a list of financial due diligence questions to AAFAF as part of the initial mediation process.   Although AAFAF posted responses in the data room on April 11, the responses were insufficient and did not answer the questions posed by Ambac and its counsel.

18.     The Status Report filed by the Oversight Board on June 15, 2017, focused on information that the Oversight Board had previously deposited into a data room shortly before the commencement of the Title III Cases.[6]  A large number of the documents posted in the data room have little relevance to the questions asked.   Many of the documents that have been produced are linked to hardcoded sources, which have not been provided.  Simple requests have been ignored.

19.      In the Status Report, the Oversight Board acknowledged that the Commonwealth had received extensive follow-up diligence requests.  Nevertheless, the Commonwealth and its representatives have repeatedly refused to engage in a dialogue with Ambac and other creditors to discuss the information needed for creditors to understand the Commonwealth's Fiscal Plan or budget.

20.     As Ambac and its financial advisor, Moelis, have continued to meet with the Commonwealth and the Oversight Board throughout the Title III process, it has continued to verbally reiterate its requests for more transparent and thorough information regarding the underlying assumptions of the Fiscal Plan.  These requests have been met with silence.

## RELIEF REQUESTED

21.     Pursuant to Bankruptcy Rule 2004, Ambac requests entry of an order:

---

[6] *See* Debtors' Status Report Regarding (A) Financial Disclosures to Creditors and (B) Status of Settlement Discussions, Case No. 17-03283 (D.P.R. June 15, 2017), Dkt. No. 350.

a.  Directing the Oversight Board, AAFAF, and the Commonwealth to produce responsive, non-privileged documents requested on the attached Exhibit 1 hereto for examination by Ambac;

b.  Directing that each of José B. Carrión III, Raúl Maldonado, Gerardo José Portela Franco, and Natalie Jaresko submit to an examination under oath on such date and time and at a location in Puerto Rico as designated in writing by Ambac on not less than 14 days' notice;

c.  Directing each of the Oversight Board, the Commonwealth, and AAFAF to designate an individual or individuals with knowledge of the matters described in Exhibit 1 hereto and to produce that individual(s) to be examined by Ambac under oath on such date and time and at such location in Puerto Rico as may be designated in writing by Ambac on not less than 14 days' notice; and

d.  Authorizing Ambac to issue subpoenas directing the production of documents and the examination of other witnesses who may have knowledge of the matters described in Exhibit 1 hereto without separate application to this Court for each subpoena or witness, and in accordance with the procedures set forth herein and in the Proposed Order.

### BASIS FOR RELIEF REQUESTED

**A.      Ambac is entitled to information relating to the Commonwealth's Fiscal Plan and Budget.**

22.      Pursuant to PROMESA § 310, the Federal Rules of Bankruptcy Procedure apply to Title III proceedings and civil proceedings arising thereunder.   48 U.S.C. § 2170. Accordingly, Rule 2004 of the Bankruptcy Rules is applicable to these proceedings.

23.     Rule 2004 is aimed at allowing the examination relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  Fed. R. Bankr. P. § 2004(b).  "The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad," *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991), even broader than discovery under the Federal Rules of Civil Procedure.  *See In re Hilsen*, 2008 WL 2945996, at *1 (Bankruptcy Rule 2004 "allows considerable leeway for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case"); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993) ("The investigation of an examiner in bankruptcy, unlike civil discovery under Rule 26(c), is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner.") (internal citations omitted); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. at 711 (noting that Rule 2004 provides few of the procedural safeguards of the Federal Rules of Civil Procedure).

24.     The granting of a motion under Bankruptcy Rule 2004 is within the discretion of the Court.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. 2017) ("Rule 2004 gives the Court 'significant' discretion.") (internal citation omitted).  Furthermore, section 105(a) of the Bankruptcy Code "sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code." *Drexel Burnham Lambert*, 123 B.R. at 711 (quoting *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986)).

25.     In line with the broad scope of Rule 2004, the target of Rule 2004 discovery is not limited to the debtor itself.  "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can

be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 432; *see also Freeman v. Seligson*, 405 F.2d 1326, 1333 (D.C. Cir. 1968) ("Broadly speaking, the examination of a third person may be as comprehensive as that permitted of the bankrupt [it]self."); *ePlus, Inc. v. Katz* (*In re Metiom, Inc.*), 318 B.R. 263, 268 (S.D.N.Y. 2004) (Rule 2004 examination may be employed to compel discovery of information maintained by creditors or third parties where such information relates to the reorganization and administration of the debtor).

26.    Rule 2004 provides that any party in interest may move for examination.  Fed. R. Bankr. P. 2004(a).   As a significant long-term creditor of the Commonwealth and its instrumentalities, and as a party committed to the long-term fiscal health of Puerto Rico, Ambac unquestionably qualifies as a party in interest and is entitled to information regarding the state of the Commonwealth's finances and its Fiscal Plan.  *See In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally."); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1984) (finding that the term "party in interest" is to be construed broadly).

27.    Courts have found that basic financial information about the debtor, its assets and liabilities, and its projected revenues and expenses are appropriate subjects of a Rule 2004 request. *See*, *e.g.*, *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors[.]"); *In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017) ("[T]he [Rule 2004] examination may extend to matters relating 'to the operation of any business and the desirability of its continuance . . . and

any other matter relevant to the case or to the formulation of a plan.'"  (citing Fed. R. Bankr. P. 2004(b))).

28.      Similarly, courts have found that creditors may obtain discovery into any matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Hilsen*, 2008 WL 2945996, at *4 (defining Rule 2004 examinations to cover "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge"); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).

**B.      Ambac and other creditors must have substantive financial information relating to the Fiscal Plan and Budget to meaningfully participate in the resolution of these Title III cases.**

29.      In assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination."  *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017).  Further, courts look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause.  *In re Gawker Media LLC*, 2017 WL 2804870, at *5.  This can include a showing that the information requested is necessary to the claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice.  *Id.* (citation omitted).

- 10 -

30.     Ambac has demonstrated good cause to be granted a Rule 2004 investigation.  As the Title III proceedings move forward, it is critical that creditors have fulsome information concerning the financial condition of the Debtors.   Information that falls in this category includes, but is not limited to, assets and liabilities, revenue stream forecasts, and projected expenses.

31.     In addition, Ambac will clearly suffer "undue hardship [and] injustice" if it is not provided the information it seeks.  *See Drexel Burnham Lambert*, 123 B.R. at 712. Without the information sought, Ambac—and creditors more generally—cannot participate meaningfully in the process of advancing these Title III cases towards successful plans of adjustment.

32.     Discovery of this critical information is the very "purpose of a Rule 2004 examination." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).

33.     Creditor access to such information is also a fundamental tenet of PROMESA. Both Titles III and VI of PROMESA provide that creditors are entitled to information that enables them to make informed decisions about potential restructurings. *See, e.g.*, PROMESA § 206(a) (providing that in order for the Oversight Board to issue a restructuring certification (a prerequisite to Title III eligibility), an entity must have "made public draft financial statements and other information sufficient for any interested person to make an informed decision with respect to a possible restructuring"); *id.* at § 301(a) (incorporating the disclosure requirements of 11 U.S.C. § 1125 to a Title III plan of adjustment); *id.* at § 601(f) (requiring delivery of certain information, including "a description of the Issuer's economic and financial circumstances" to creditors prior to soliciting votes on a bond modification under Title VI of PROMESA).

34.     Similarly, this focus on transparency is consistent with Puerto Rico law.  The
Puerto Rico legislative and executive branches have taken steps to ensure that citizens have
access to information about public entities such as AAFAF, the Oversight Board, and the
Commonwealth itself.  For example, subject to certain exceptions, Puerto Rico law grants every
citizen the right to inspect and copy any public document. *See* 32 L.P.R.A. § 1781. Recently, in
Executive Order OE 2017-10, the Governor reinforced the Commonwealth's public policy in
favor of transparency and access to information concerning government entities, and outlined a
procedure by which citizens can obtain such information.

35.     Furthermore, the information sought is relevant to the requirement that, to be
confirmed (over an impaired class's objection), a plan of adjustment must be "fair and
equitable." 11 U.S.C. § 1129(b)(1); *see* PROMESA §§ 301(a), 314(b)(1) (incorporating this
requirement).   This inquiry necessarily considers both the revenue and expense sides of the
Commonwealth's Budget, which inform the assumptions and projections in the Fiscal Plan.  *See,
e.g., Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942) (finding that a municipal
debtor's plan of adjustment may be approved only upon a factual finding that the recovery
proposed for creditors is "the maximum that the [debtor] could reasonably pay"); *see also In re
Velo Holdings Inc.*, 472 B.R. 201, 211 (Bankr. S.D.N.Y. 2012) (noting that one of the goals of
Chapter 11 is to maximize recovery for creditors).

36.     In any contested confirmation proceeding, the Oversight Board will have to
demonstrate to the Court's satisfaction that the proposed plan of adjustment does all that is
reasonably possible to maximize creditor recoveries. *See Lorber*, 127 F.2d at 639; *see also* 6
Collier 943.03[1][f][i] ("A plan under chapter 9 is fair and equitable if the amount to be received
by the bondholders is all that they can reasonably expect in the circumstances." (quotation marks

- 12 -

omitted)); H.R. Rep. No. 94- 686, 94th Cong., 1st Sess. 33 (1977) (noting that the debtor "must exercise its taxing power to the fullest extent possible for the benefit of its creditors"). Creditors will be entitled to challenge the assumptions, projections, and analyses that underlie the Fiscal Plan's proposed debt-service figures, if and when the Oversight Board proposes a plan of adjustment premised on the current Fiscal Plan.

37.     Finally, Ambac is contractually entitled to this information under its financial guaranty insurance policies. For years, the Commonwealth has rejected Ambac's efforts to obtain this information, preventing Ambac from enforcing its contractual rights.

38.     Ambac's information requests are narrowly focused, targeting specific information needed to better understand the Fiscal Plan and the Commonwealth's finances. The Commonwealth, Oversight Board, and AAFAF have failed to identify an appropriate basis on which to deny these requests.

### CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1

39.     Undersigned counsel hereby certifies that, prior to filing this motion, they requested a conference with counsel for the Oversight Board and AAFAF concerning Ambac's intent to conduct an examination of the Debtor pursuant to Rule 2004. A conference was held on September 12, 2017. Counsel to the Oversight Board and AAFAF stated that neither was willing to engage in Rule 2004 discovery on the topics set forth herein. In light of that position, Ambac certifies that a further meet and confer would not be fruitful.

### NOTICE

40.     Under the Second Amended Case Management Procedures, the deadline to file an objection to this Motion is September 19, 2017. Ambac therefore provides the following notice pursuant to Rule 2004-1(d) of the Puerto Rico Local Bankruptcy Rules, modified accordingly with respect to the objection deadline: Any party who objects to the examination shall serve and

- 13 -

file an objection or motion for protective order with the United States Bankruptcy Court for the District of Puerto Rico by 4:00 p.m. on September 19, 2017.  If no objection or motion for protective order is timely filed, the court may grant the motion for examination without further notice or a hearing.

## NO PRIOR REQUEST FOR RELIEF

No previous request for the relief sought herein has been made by Ambac to this or any other Court.

**WHEREFORE,** Ambac respectfully requests authority to direct the examination of witnesses and the production of documents pursuant to Bankruptcy Rule 2004 as set forth herein and consistent with the Proposed Order, and that Ambac be granted such other and further relief as is just.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 12th day of September, 2017.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

- 14 -

Dated:  September 12, 2017
       San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
       scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile:  (212) 822-5770
Email: ddunne@milbank.com
       aleblanc@milbank.com
       amiller@milbank.com
       gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

**Exhibit A**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[7]

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

## ORDER GRANTING AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004

Upon the motion ("the Motion")[8] of Ambac Assurance Corporation ("Ambac"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing Ambac to take Rule 2004 discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"); (ii) the Commonwealth; and (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as well as the examination of and production of documents from entities determined by Ambac to have information in connection with Ambac's investigation, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

---

[7] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284 (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).

[8] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

therein in accordance with 28 U.S.C. § 1331 and PROMESA § 306(a); and venue being proper
before this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a); and notice of the
Motion having been given as provided in the Motion, and such notice having been adequate and
appropriate under the circumstances; and it appearing that no other or further notice of the
Motion need be provided; and the Court having held a hearing to consider the relief requested in
the Motion; and the Court having found and determined that the relief sought in the Motion and
granted herein is in the best interests of the Debtor, its respective creditors, and all parties in
interest, and that the legal and factual bases set forth in the Motion establish just cause for the
relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as provided herein.

2.      The Oversight Board, AAFAF, and the Commonwealth shall comply with the
document requests attached hereto as **Schedule A** by no later than ten (10) days after entry of
this Order.

3.      The Commonwealth and AAFAF shall each designate an individual or individuals
with knowledge of the matters described in **Schedule A** hereto (the "Designated Individual(s)").
Each member of the Oversight Board and each of the Designated Individual(s) shall produce
themselves for examination by counsel to Ambac under oath and in accordance with Bankruptcy
Rule 2004 on such date and time and at such location as may be designated in writing by counsel
to Ambac.

4.      Ambac is authorized, pursuant to Bankruptcy Rule 2004, to issue such subpoenas
as may be necessary to compel the production of documents and/or testimony of a third party
witness to accomplish the discovery authorized by this Order.

5.     Third party witnesses shall have fourteen (14) days from the service of a subpoena to either (i) produce to Ambac all responsive non-privileged documents requested in Ambac's subpoena, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

6.     Third party witnesses are directed to either (i) submit to oral examination upon reasonable notice and, absent other agreement with Ambac, in no event more than fourteen (14) days from the date of the service of a deposition subpoena upon such witness, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

7.     Ambac shall serve each subpoena and a copy of this Order on the target of the subpoena.

8.     Nothing herein shall limit Ambac's right to request additional discovery, including any additional documents or depositions, under Bankruptcy Rule 2004 and applicable law, based on any information that may be revealed as a result of the information provided pursuant to this Order or otherwise.

9.     This Court shall retain jurisdiction to resolve any dispute arising or related to this Order and to interpret, implement and enforce the provisions of this Order.

10.    This Order is without prejudice to Ambac's right to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004(a) or any other applicable law.

SO ORDERED.

Dated: _____, 2017
          San Juan, Puerto Rico


                                        _____
                                        HONORABLE LAURA TAYLOR SWAIN
                                        UNITED STATES DISTRICT JUDGE

## SCHEDULE A

**DEFINITIONS**

1.      "<u>AAFAF</u>" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and each of its present or former officers, directors, agents, representatives, employees, and members.

2.      "<u>April 25 Letter</u>" refers to the letter, dated April 25, 2017, from the Oversight Board to United States Senators Thom Tillis and Tom Cotton.

3.      "<u>Budget</u>" means the budget(s) adopted for Fiscal Year 2018 for the Territorial Government, including the Commonwealth and any agency or instrumentality thereof, as well as the Oversight Board.

4.      "<u>Commonwealth</u>" means the Commonwealth of Puerto Rico, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

5.       "<u>Dedicated Sales Tax</u>" means the portion of the Sales and Use Tax that, pursuant to 13 L.P.R.A. § 12, is transferred to COFINA.

6.      "<u>Document</u>" or "<u>documents</u>" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

7.      "February 28 Fiscal Plan" means the fiscal plan submitted by the administration of Governor Ricardo A. Rosselló and AAFAF to the Oversight Board on February 28, 2017.

8.      "Fiscal Plan" means the fiscal plan for the Commonwealth dated March 13, 2017, as corrected on April 18, 2017.

9.      "Including" means including but not limited to.

10.      "Instrumentality" or "Instrumentalities" means any "covered territorial instrumentality, as defined by PROMESA.

11.      "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

12.      "Oversight Board Annual Report" means the annual report released on July 30, 2017.

13.      "Petition" means the Title III Petition for Covered Territory or Covered Instrumentality filed by the Oversight Board, on behalf of the Commonwealth, on May 3, 2017 in the above-captioned proceeding.

14.      "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act as codified at 48 U.S.C. §§ 2101 *et seq.*

15.      "Proposal" means the proposed Title VI plan of adjustment disclosed publicly by AAFAF on April 28, 2017.

16.      "Request" means a document request made in this Rule 2004 motion.

17.      "Revised Fiscal Plan" means the revisions made through the Oversight Board's Unanimous Written Consent dated May 31, 2017, as attached to a June 2, 2017 letter from the

Oversight Board to the Governor of Puerto Rico, the Speaker of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico ("May 31 Letter").

18.     "Sales and Use Tax" means the tax imposed at 11.5% on certain sales, the proceeds of which secure COFINA Bonds pursuant to 13 L.P.R.A. § 12.

19.     "You" or "Your" refers to (1) the Oversight Board; and (2) the Commonwealth, and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## INSTRUCTIONS

1.     Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of Your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.  This includes, but is not limited to, documents physically held by Your agents, representatives, employees, attorneys, financial advisors, or other advisors.  It also includes any communications and documents contained in any computer, mobile device, server, mainframe, or other storage device (including (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site

or at an off-site facility, within Your possession, custody, or control. For the avoidance of doubt, this also includes any communications and documents contained on any personal computer, mobile device, server, mainframe, or other storage device within the possession of Your agents, representatives, employees, attorneys, financial advisors, or other advisors, regardless of whether the device is issued or owned by You.

2.      As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, documents and communications contained in Your electronic e-mail, cloud-based, and mobile device directories, including, but not limited to: (a) "deleted" documents and communications that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3.      As the Requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, You are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4.      With respect to the documents produced, You shall produce them as they are kept in the usual course of business as defined in Rule 34 of the Federal Rules of Civil Procedure.

5.      With respect to electronically stored information, You shall produce them in the format set forth in the annexed Exhibit A.

6.      Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

7.      File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

8.      Documents attached to each other shall not be separated.

9.      A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

10.     Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto. If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

11.     In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

12.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Request.

13.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

14.     Any ambiguity in a Request shall be construed to bring within the scope of the Request all responses that otherwise could be construed to be outside of its scope.

15.     If You withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating: (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

16.     If You object to a Request, You must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If You object to only a portion of a Request, You must clearly indicate to which part of the Request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the Request were propounded as a separate Request.

17.     If Your response to a particular Request is that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information, item, or category of information must be identified.

18.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

19.     Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

20.     Unless otherwise specified, the time period covered by these Requests is from January 1, 2014 to the present, and shall encompass all documents and information relating in whole or in part to such period.

21.     The Requests shall be deemed to be continuing so as to require supplemental productions as You obtain additional documents between the time of the initial production hereunder and the time of trial in this action.

## RELEVANT TIME PERIOD

Unless otherwise specified, the relevant time period for these Requests is January 1, 2014 to the present.

## DOCUMENT REQUESTS

### REQUEST NO. 1

All documents, communications, studies, and/or analyses prepared for or relied upon in connection with the development of the February 28 Fiscal Plan.

### REQUEST NO. 2

All documents, communications, studies, and/or analyses prepared for or relied upon in connection with the development of the Fiscal Plan.

### REQUEST NO. 3

All documents, communications, studies, and/or analyses prepared for or relied upon in connection with the determination of which Commonwealth Instrumentalities would be covered by the Fiscal Plan.

### REQUEST NO. 4

Document sufficient to identify the list of governmental agencies and Instrumentalities that were relied upon to source the information underlying the Fiscal Plan.

**REQUEST NO. 5**

All documents, communications, studies, and/or analyses relating to what due diligence was undertaken with regard to the data underlying the Fiscal Plan.

**REQUEST NO. 6**

All documents, communications, studies, and/or analyses that relate to the assertion that the Fiscal Plan is a "living document."  This Request includes, but is not limited to, documents that explain the methodologies for updating the Fiscal Plan to reflect new data and key developments, and the identities of the people involved in such updates.

**REQUEST NO. 7**

All documents, communications, studies, analyses, models, and/or workbooks (in native format) that support the assertion, contained on page 2 of the April 25 Letter, that the Oversight Board "has cut *all* categories of expenses up to the point where its economist have determined that further material annual cuts for the foreseeable future would . . . prevent growth from reaching levels needed to ensure fiscal sustainability."

**REQUEST NO. 8**

All documents, communications, studies, and/or analyses that support the assertion, contained on page 9 of the April 25 Letter, that "additional short-term cuts might produce slightly higher resources over the first 10 years, but never do over the longer 2018-60 period."

**REQUEST NO. 9**

All documents, communications, studies, and/or analyses concerning the Oversight Board's decision to reject the February 28 Fiscal Plan.

**REQUEST NO. 10**

All documents, communications, studies, and/or analyses concerning the Oversight Board's decision to certify the Fiscal Plan.

**REQUEST NO. 11**

All documents, communications, studies, and/or analyses prepared for or relied upon in connection with the changes reflected in the Revised Fiscal Plan as set forth in the May 31 Letter.

**REQUEST NO. 12**

All documents, communications, studies, and/or analyses prepared for or relied upon in connection with the development of the Budget.

**REQUEST NO. 13**

Documents sufficient to identify the portion of annual expenses contained in the Fiscal Plan that are for essential services.

**REQUEST NO. 14**

Documents sufficient to identify which government services are essential services and which government services are non-essential services.

**REQUEST NO. 15**

All documents, communications, studies, and/or analyses relied upon in connection with the determination of the estimated cost of essential services during the Fiscal Year 2017 to Fiscal Year 2026 period.

**REQUEST NO. 16**

All documents, communications, studies, and/or analyses concerning the "Reconciliation Adjustment" described on page 15 of the Fiscal Plan.

**REQUEST NO. 17**

All documents, communications, studies, and/or analyses concerning the estimated payroll expenses contained in the Fiscal Plan.

**REQUEST NO. 18**

All documents, communications, studies, and/or analyses concerning the estimated operational expenses contained in the Fiscal Plan.

**REQUEST NO. 19**

All documents, communications, studies, and/or analyses concerning the estimated component unit expenses contained in the Fiscal Plan.

**REQUEST NO. 20**

Documents sufficient to identify the components of Gross National Product utilized in the Fiscal Plan.

**REQUEST NO. 21**

Documents sufficient to identify the fiscal multiplier utilized in the Fiscal Plan.

**REQUEST NO. 22**

Documents sufficient to identify the inflation assumptions utilized in the Fiscal Plan.

**REQUEST NO. 23**

Documents sufficient to identify the impact of structural policy measures utilized in the Fiscal Plan.

**REQUEST NO. 24**

All documents, communications, studies, and/or analyses concerning the potential privatization of Commonwealth assets.

**REQUEST NO. 25**

Documents sufficient to show the aggregate book and market value of government and public enterprise-owned land and real estate and other marketable assets.

**REQUEST NO. 26**

All documents, communications, studies, and/or analyses concerning the estimated Sales and Use Tax collection rates contained in the Fiscal Plan.

**REQUEST NO. 27**

All documents, communications, studies, and/or analyses concerning any actual or projected federal transfer allotted to Puerto Rico for use in its Medicaid program contained in the Fiscal Plan, including but not limited to the $295.9 million allotment passed by Congress on or about May 1, 2017, and any potential allotment proposed by the President of the United States  in the budget.

**REQUEST NO. 28**

All documents, communications, studies, and/or analyses prepared for or relied upon in connection with the development of the Proposal.

**REQUEST NO. 29**

All models or workbooks (in native format), including any backup or linked spreadsheets and any data run through such models or workbooks, prepared in connection with the development and/or analysis of the February 28 Fiscal Plan, the Fiscal Plan, the Revised Fiscal Plan, the Budget, and the Proposal.

**REQUEST NO. 30**

All documents, communications, studies, and/or analyses prepared in relation to the economic model cited in the Oversight Board Annual Report with a 50-year long-term projection.

- 11 -

**REQUEST NO. 31**

Documents sufficient to show the percentage of retirement system beneficiaries associated with the pension expenses in the Fiscal Plan that live off-island.

**REQUEST NO. 32**

All documents and data You intend to use to support any plan of adjustment You may make in the above-captioned proceeding.

**REQUEST NO. 33**

All documents and/or communications with the Commonwealth, its Instrumentalities, the administration of Governor Ricardo A. Rosselló, and/or AAFAF related to or concerning each of the above document Requests.

**REQUEST NO. 34**

All documents that You produce to any party in interest in these Title III proceedings pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.