Hearing Date: October 4, 2017 at 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
Debtors.[1] :
------------------------------------------------------------------------ x

## INFORMATIVE MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND STATUS REPORT REGARDING DISCOVERY DISCUSSIONS, RENEWED REQUEST FOR AUTHORIZATION OF DISCOVERY UNDER BANKRUPTCY RULE 2004, AND AGREED NOTICE TO CONDUCT HEARING ON MOTION AT OCTOBER 4, 2017 OMNIBUS HEARING

The Official Committee of Unsecured Creditors of all title III debtors (other than COFINA) (the "Committee") hereby submits this status report regarding the Committee's discussions with the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and its renewed request for authorization of discovery (the "Renewed Request for Discovery") as contemplated in the *Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery Program With Respect to Certain Causes of Puerto Rico Financial Crisis* [Docket No. 706] (the "Motion").[2] The Oversight Board and the Committee have agreed that the Motion should be heard at the upcoming Omnibus

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474).

[2] Capitalized terms used but not otherwise defined in this Reply have the meanings set forth in the Motion.

Hearing on October 4, 2017, and the Committee has filed an Agreed Notice setting the hearing for that date.[3]

**Background**

1.  On July 21, 2017, the Committee filed the Motion, requesting to commence a discovery program targeting the most significant actors that, based on publicly available information, were identified as reaping potentially billions of dollars of fees while advising on financial structures and arrangements which crippled the Commonwealth and its related debtors—all the while creating a "revolving door" for individuals bouncing back and forth between those entities. In the Motion, the Committee sought judicial approval under Bankruptcy Rule 2004 to issue discovery requests and begin the meet-and-confer process with entities associated with three financial institutions: Santander entities (collectively, "Santander"), Banco Popular entities (collectively, "Banco Popular"), and the Government Development Bank for Puerto Rico (the "GDB")[4] (collectively, the "Puerto Rico Financial Institutions").

2.  Despite the Committee's broad grant of authority to investigate such misconduct under 11 U.S.C. § 1103(b)[5] the Oversight Board argued that **it** was the sole proper party to conduct this discovery—noting that it had some powers under section 104(o) of PROMESA to review retail transactions. *See generally* Oversight Board Objection [Docket No. 859].

3.  At the hearing before Magistrate Judge Judith Dein on August 22, 2017, the court recognized the Committee's broad grant of authority, stating that "I don't see anything in

---

[3] The Committee recognizes that the Court requested a joint report. However, as described more fully here, the Oversight Board and the Committee were unable to reach agreement on the substantive issues raised by the Motion or on the court's request to attempt to apportion responsibilities between them. As a result, the parties concluded that separate reports would be preferable. The Committee apologizes for any inconvenience the filing of separate reports may cause the court.

[4] The GDB's current successor-in-interest is the Puerto Rico Fiscal and Financial Advisory Authority (known by its Spanish acronym, "AAFAF").

[5] 11 U.S.C. § 1103 is made applicable to these proceedings by section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which has been codified at 48 U.S.C. § 2101-2241.

2

PROMESA [section 104(o)] that makes the Oversight Board's investigation mandatorily exclusive" and "I think we all agree that the UCC 2004 investigation is authorized by PROMESA, within my discretion." *See* Exhibit A, August 22, 2017 Transcript of Proceedings (the "August 22 Transcript"). As a result, and based on the Oversight Board's representations that it would retain an "independent" investigator within the coming week, the court ordered the parties to meet and confer with that investigator to determine whether any investigation topics could be "spun off" and whether any topics could be handed directly to the Committee:

> I want the Board's investigator to coordinate with – to meet and confer with the Creditors' Committee to determine whether or not there are protocol[s] to go forward and coordinated efforts **and whether or not there are certain areas that should be spun off to be pursued, for the lead to be either the Creditors' Committee or the investigator**. You know, are there certain areas that should be divided among them, and is there a way to coordinate the investigation?

Exhibit A, August 22 Transcript, at p. 89, line 17 to p. 90, line 1 (emphasis added).

4. The court also recognized the need to have the discovery process started as quickly as possible, due in large part to the accelerated schedule of the pending Commonwealth-COFINA dispute:

> The need for cooperation is huge, but I don't want to stall things while the Board is kind of getting its investigation started.
>
> . . .
>
> This is what I want to happen: I want the COFINA-Commonwealth litigation to be – to go forward **as soon as possible** and to be coordinated between the adversary proceeding and any extra in the 2004 investigation of those issues.

Exhibit A, August 22 Transcript, at 71, lines 10-12 & 89, lines 12-16.

5. In light of these timing concerns, and the need to determine how to segregate responsibilities between the Committee and the Oversight Board, the court required that the parties meet and confer and report back on their discussions by no later than September 12, 2017.

3

*See Interim Order In Respect of Rule 2004 Motion of Official Committee of Unsecured Creditors* (entered August 24, 2017) [Docket No. 1163].

6. As described in greater detail below, the Oversight Board sat silent on these issues for weeks, only to come forward with a last-minute "work plan" proposal (which itself was devoid of any detail and fails to comply with the court's directives to at least attempt to apportion responsibilities between the Oversight Board and the Committee) late the night of September 11, 2017.[6] On the morning of September 12, 2017, the Oversight Board offered a proposed joint status report that sought nothing more than to memorialize its work plan and to defer adjudication of the Motion indefinitely.[7] As a result, the Committee is filing this Renewed Request for Discovery separately in an effort to expedite the investigatory process that has now been stalled for nearly two months.

## Status of Current Discussions

7. At the hearing on August 22, 2017, Committee counsel suggested that the Committee be allowed to move forward with discovery on the Puerto Rico Financial Institutions and the Oversight Board could participate in that effort and pursue other investigations as it saw fit. Counsel for the Oversight Board flatly rejected that proposal, but offered no counterproposal.

---

[6] A slightly revised version of the work plan that recharacterizes the scope of the proposed investigation was provided the morning of September 12, 2017. *See* Exhibit B, Redline of Work Plan Proposed by Kobre & Kim LLP. That redline removed a reference to a planned review of the **validity** of Puerto Rico debt. At this stage, because of the vagueness of the Oversight Board's proposed scope (referring generally to, among other things, "a review of Puerto Rico's debt" and the relationship of that debt to Puerto Rico's budget deficit), it is unclear whether the Oversight Board intends to move beyond the bounds set forth in section 104(o) of PROMESA. That section limits the Oversight Board's review to issues surrounding "the disclosure and selling practices in connection with the purchase of bonds issued by a covered territory[.]" Of course, the Committee's powers are far broader—touching on "the acts, conduct, assets liabilities . . . **and any other matter relevant to the case or formulation of a plan**." 11 U.S.C. § 1103 (emphasis added).

[7] As with the work plan, the proposed joint status report offered by the Oversight Board failed to comply with the request to explore the apportionment of issues—offering only to provide the Committee with access to materials "as appropriate."

4

8. Since the August 22, 2017 hearing, the Oversight Board has made no progress at all—and apparently intends to make no progress—in addressing the court's request to at least attempt to divide responsibilities between its investigation and the Committee's investigation. Not until September 7, 2017 did counsel for the Oversight Board schedule a conference call with Committee counsel to introduce the Oversight Board's lead investigator—John Couriel of the Kobre & Kim law firm. Before that date, the Committee received no information from the Oversight Board on any proposal for moving forward with the coordination effort requested by the court.

9. The call with Mr. Couriel reflected that the Oversight Board was still in the earliest stages of investigatory planning. Mr. Couriel indicated that he was developing a "work plan" which would be shared with the Committee, but provided no detail about that plan on the call. During that call, counsel for the Committee suggested that while the work plan was being formulated, the Oversight Board could at least agree to jointly move forward with the discovery requests served by the Committee over a month ago on the Puerto Rico Financial Institutions. Counsel made clear that pursuing those requests would be without prejudice to which entity would actually conduct the investigation. Mr. Couriel demurred on that suggestion, and only late on September 12, 2017 did counsel for the Oversight Board make a general commitment to seek (but not through a joint Oversight Board/Committee process) documents from the Puerto Rico Financial Institutions.

10. The work plan was ultimately provided late in the evening of September 11, 2017. *See* Exhibit B, Redline of Work Plan of Kobre & Kim LLP. The work plan is heavy on process and light on substance. It identifies no specific entities which would be the recipients of discovery requests (only a promise to identify such entities through future discussions with the

5

"special committee" of the Oversight Board, *see* Exhibit B, ¶ 25), no proposed document requests, and no specific topics of its investigations beyond some commentary regarding Puerto Rico's economy, its debt, and bond selling practices. *See* Exhibit B, ¶ 20. A revised work plan transmitted on September 12, 2017 provides some further detail on the scope of the investigation but still is largely silent on particulars and on the Puerto Rico Financial Institutions.

11. In contrast, the Committee filed its detailed Motion two months ago and, using public information, identified the parties most likely culpable in the lead-up to Puerto Rico's Financial Crisis, outlined the various concerns with those entities, and requested judicial authorization for specific document requests which had already been served on those entities. The Committee's approach is hardly unsupported. At the August 22, 2017 hearing, counsel for the Oversight Board was in full agreement that the Santander and Banco Popular entities should be a focus of any investigative effort:

> But the important thing for Your Honor to know is that all indications are that, if these investigations are going to create meaningful sunlight or create causes of action beneficial to the Commonwealth, **the two most promising are Banco Popular and Santander[.]**

Exhibit A, August 22 Transcript, at p. 84, lines 7-12. Yet, these entities are not even identified in the proposed work plan, which also fails to even address the Committee's request to **at least** commence the meet-and-confer process with the Santander and Banco Popular entities by utilizing the already existing and already served discovery. Instead, perhaps out of concern with granting the Committee **any role here at all**, counsel for the Oversight Board made only a general commitment that documents would be sought (but not through a joint Oversight Board/Committee process) from the Puerto Rico Financial Institutions.

12. The work plan also ignores the court's directive to identify whether certain areas "should be spun off to be pursued" by the Committee. *See* Exhibit A, August 22 Transcript, at p. 89, line 17 to p. 90, line 1. Rather, the work plan states only that the investigator will "maintain open lines of communication" with the Committee and other interested parties—an approach which effectively sidelines the Committee and ignores its authority under 11 U.S.C. § 1103(b) to act as an independent investigator.

13. Finally, the Committee remains deeply concerned about the lack of transparency surrounding the Oversight Board's "investigation." Committee counsel inquired of Mr. Couriel on the September 7, 2017 call what **connections** Mr. Couriel had with the Puerto Rico Financial Institutions or with two members of the Oversight Board who have been excluded from the Oversight Board's special committee because of their prior employment and relationships with the Puerto Rico Financial Institutions. Mr. Couriel did not directly answer the question and by email later stated that he had "met" Oversight Board member Carlos Garcia (who worked at Banco Popular, Santander, and the GDB) some years ago but did not provide additional detail with respect to this connection. Committee counsel responded with a request for further information on this issue—and whether Mr. Couriel had any other similar interactions with respect to the other Oversight Board members and the Puerto Rico Financial Institutions—but received no response. *See* Exhibit C, September 8, 2017 Email from L. Despins to J. Couriel.

14. This situation aptly demonstrates why the Committee must be empowered to move forward with its investigation of the Puerto Rico Financial Institutions—and why it should be able to do so now, regardless of whatever investigation the Oversight Board eventually commences. Indeed, the continued failure of the Oversight Board to speedily advance an

7

investigation in conjunction with the Committee, and to ensure that the process surrounding the "investigation" is transparent, has a number of negative consequences.

15. First, it frustrates an investigation into the conduct of the Puerto Rico Financial Institutions that may have significant consequences in terms of claims against those entities, individuals associated with those entities, and/or the ultimate subordination or disallowance of claims, including claims those entities might choose to advance. Instead, the extended delay has allowed the Banco Popular and Santander entities to enjoy a vacation from their discovery obligations without conferring regarding the document requests (which were served almost two months ago), searching for and reviewing documents, or producing any initial sets of the materials that will be highly relevant to the resolution of these title III cases. This is inconsistent with the court's stated desire not to "stall things while the Board is kind of getting its investigation started." *See* Exhibit A, August 22 Transcript, at 71, lines 10-12. Despite the work plan's silence on the matter, it remains abundantly clear that, during the course of these title III cases, discovery will need to be sought from these entities. *See* Exhibit A, August 22 Transcript, at p. 84, lines 7-12 (statement by Oversight Board counsel that Banco Popular and Santander as "the two most promising" targets).

16. Second, the continued delay has frustrated another of the court's directives from the August 22, 2017 hearing—namely, for the Commonwealth-COFINA litigation and discovery to go forward "as soon as possible." Due in no small part to the lack of movement on the 2004 issues, counsel for the Committee has been stonewalled in its attempts to obtain discovery from the Puerto Rico Financial Institutions while the Oversight Board formulates its plans. On August 30, 2017, counsel for the Committee contacted counsel for the Banco Popular and Santander entities in an attempt to meet and confer regarding whether materials relating to the

Commonwealth-COFINA dispute could be produced on a rolling basis while the Bankruptcy Rule 2004 Motion was pending. *See* Exhibits D and E (email correspondence with counsel for Banco Popular and Santander).[8] In response, counsel for the Santander and Banco Popular entities each indicated that they were not willing to discuss discovery issues at that time—preferring instead to wait for the formal commencement of the Commonwealth-COFINA dispute. *Id.* Had the Bankruptcy Rule 2004 meet-and-confer process been underway, this delay tactic would not have been available to the Santander and Banco Popular entities.

17. In sum, the discussions with the Oversight Board have revealed that the Oversight Board's "investigation" under PROMESA section 104(o) is still in the most preliminary stages and is by no means sufficiently concrete to justify still further delay in the discovery which will be needed to resolve some of the most important issues in these title III cases—namely, whether the Puerto Rico Financial Institutions engaged in any misconduct in the lead-up to Puerto Rico's financial crisis. Nor has the Oversight Board indicated any willingness to engage substantially with the Committee on even attempting an apportioning of investigative responsibilities—despite the court's request that it do exactly that. The work plan's silence on even taking advantage of discovery already pending with the Santander and Banco Popular entities aptly demonstrates that the Oversight Board has no intention of developing or sharing (or even discussing a sharing arrangement) **any** investigatory role for the Committee here at all.

18. Finally, the Committee submits that even with the appointment of its investigator, the Oversight Board has failed to assuage the Committee's concerns about transparency and the need to avoid the **appearance** of any conflicts. The Committee remains concerned that Mr. Couriel's failure to voluntarily disclose any and all connections with the Puerto Rico Financial

---

[8] The Committee has subsequently (after filing of the "Commonwealth-COFINA Dispute" complaint) issued subpoenas to these entities, but those subpoenas pertain to the document requests that address the COFINA issues—not the various other issues which may impact the other aspects of these title III cases.

9

Institutions or Oversight Board members will undermine the perception of independence of the Oversight Board's "investigation." Thus, at least with regard to the Puerto Rico Financial Institutions, the Committee should be allowed to move forward with discovery regardless of whatever other investigations or entities the Oversight Board may pursue.

19. As a result, the Committee requests that it be heard at the upcoming October 4, 2017 omnibus hearing. Counsel for the Oversight Board has agreed to this date as well. The Committee submits that the Motion should be granted in full, the Committee should be authorized to issue the discovery requests submitted as Exhibits B to H to the Motion, and the Puerto Rico Financial Institutions should be directed to engage in the meet-and-confer process immediately. The Committee has invested a material amount of time and energy into the Bankruptcy Rule 2004 process, and it has been ready, willing, and able to proceed for in excess of two months. The Committee therefore should not be stymied further by the Oversight Board's "investigation."

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: September 12, 2017<br>San Juan, Puerto Rico | */s/ Luc A. Despins*<br><br>PAUL HASTINGS LLP<br>Luc. A. Despins, Esq. *(Pro Hac Vice)*<br>James R. Bliss, Esq. *(Pro Hac Vice)*<br>James B. Worthington, Esq. *(Pro Hac Vice)*<br>G. Alexander Bongartz, Esq. *(Pro Hac Vice)*<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 318-6000<br>lucdespins@paulhastings.com<br>jamesbliss@paulhastings.com<br>jamesworthington@paulhastings.com<br>alexbongartz@paulhastings.com<br><br>*Counsel to the Official Committee of Unsecured Creditors*<br><br>- and –<br><br>*/s/ Juan J. Casillas Ayala, Esq.*<br><br>CASILLAS, SANTIAGO & TORRES LLC<br>Juan J. Casillas Ayala, Esq., USDC - PR 218312<br>Diana M. Batlle-Barasorda, Esq., USDC - PR 213103<br>Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710<br>Ericka C. Montull-Novoa, Esq., USDC - PR 230601<br>El Caribe Office Building<br>53 Palmeras Street, Ste. 1601<br>San Juan, Puerto Rico 00901-2419<br>Telephone: (787) 523-3434<br>jcasillas@cstlawpr.com<br>dbatlle@cstlawpr.com<br>aaneses@cstlawpr.com<br>emontull@cstlawpr.com<br><br>*Proposed Replacement Local Counsel to the Official Committee of Unsecured Creditors* |