# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------X

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

----------------------------------------------------------------X

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF PUERTO RICO,

     Movant,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Respondents.

----------------------------------------------------------------X

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)


PROMESA
Title III

**Re: ECF No. 706**

## STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO REGARDING MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF ORDER, UNDER BANKRUPTCY RULE 2004, AUTHORIZING DISCOVERY PROGRAM

To the Honorable United States District Judge Laura Taylor Swain and the Honorable United

States Magistrate Judge Judith Dein:

     The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax

Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal TaID: 9686); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474).

("HTA"), and the Employees Retirement System of the Government of the Commonwealth of

Puerto Rico (the "ERS," and together with the Commonwealth, COFINA, and HTA, the

"Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the

"Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico*

*Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submit this

status report (the "Status Report"), as directed by the Court in its *Interim Order in Respect of*

*Rule 2004 Motions of Official Committee of Unsecured Creditors* [D.I. 1163] (the "Interim

Order"):

### Background

1.        On May 3, 2017, the Oversight Board filed a voluntary petition for relief for the

Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III

thereof (the "Commonwealth Title III Case").  Thereafter, the Oversight Board commenced title

III cases (together with the Commonwealth Title III Case, the "Title III Cases") for each of

COFINA, ERS, HTA, as well as the Puerto Rico Electrical Power Authority.

2.        On June 15, 2017, the Office of the United States Trustee for the District of

Puerto Rico filed a *Notice Appointing Creditors Committee for Unsecured Creditors.*  [D.I. 338.]

The members of the UCC are the American Federation of Teachers, Drivetrain, LLC as the

Creditors' Trustee for Doral Financial Corporation, Genesis Security Services, Inc., Puerto Rico

Hospital Supply, Service Employees International Union, Total Petroleum Puerto Rico Corp.,

and the Unitech Engineering Group, S.E.

3.        On July 21, 2017, the UCC filed a *Motion for Order, Under Bankruptcy Rule*

*2004, Authorizing Discovery Program with Respect to Certain Causes of Puerto Rico Financial*

*Crisis* (the "Rule 2004 Motion").  [D.I. 706.]  The Debtors, by and through the Oversight Board,

---

[2]        PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

responded on August 3, 2017 [D.I. 859], and the UCC filed a reply on August 18, 2017 [D.I. 1080].

4.      On August 22, 2017, the Honorable Magistrate Judge Judith Dein held a hearing on the Rule 2004 Motion (the "August 22 Hearing").  Following the August 22 Hearing, the Court entered the Interim Order, which requires, *inter alia*, that the Oversight Board and the UCC file a joint status report on or before September 12, 2017.[3]

### Status of the Investigation

5.      Pursuant to its powers granted by section 104 of PROMESA, the special committee of the Oversight Board, consisting of Oversight Board Members Ana J. Matosantos, David A. Skeel, and Judge Arthur J. González (Ret.) (the "Special Investigation Committee"), has initiated an investigation regarding the Commonwealth's debt and its connection to the current fiscal crisis (the "Investigation").  On May 26, 2017, the Oversight Board adopted the PROMESA Investigative Procedures which set forth the procedures for informal and formal investigations under PROMESA.  On August 16, 2017, the Oversight Board promulgated a Request for Proposal ("RFP") seeking an independent investigation team to carry out the Investigation, with a deadline for responses from interested parties of August 23, 2017. Following an interview process, the Special Investigation Committee selected the law firm of Kobre & Kim LLP (the "Independent Investigator") to serve as the investigator in the Investigation.  The Independent Investigator was formally engaged on September 1, 2017.  The Independent Investigator reports to the Special Investigation Committee and to the Oversight Board's General Counsel.

6.      The Independent Investigator began developing its plan of investigation on

---

[3]      Despite the Oversight Board's efforts to agree to a joint status report, the parties were unable to do so. Accordingly, the parties are submitting separate reports.

September 1, 2017.  In so doing, the Independent Investigator has engaged in analyzing the potential scope of the Investigation, evaluating efficiencies with concurrent investigations, determining the timeframe of the Investigation, and coordinating with other parties, including the UCC.  As a result of these efforts, the Independent Investigator has drafted an initial work plan (the "Initial Work Plan"), a copy of which is attached hereto as **Exhibit A**.  Consistent with the Interim Order, the Initial Work Plan provides, "to the extent currently known, individual topics and targets of investigation and timelines for commencing and completing each investigation." [Interim Order ¶ 5(c).]  More specifically, the Initial Work Plan includes a timeline of the Investigation, which contemplates that the Investigation will be completed within six months.

7.      The Independent Investigator intends to further refine the Initial Work Plan as it commences its investigation and as it continues to consult with the UCC.

## Coordination Between the Independent Investigator and the UCC

8.      The Interim Order requests that the parties advise the Court as to whether any agreements have or likely will be reached resolving all or parts of the UCC's Rule 2004 Motion and the terms of any agreements already reached.  [Interim Order ¶ 5(a).]  The Interim Order also requests that the parties inform the Court of any "remaining unresolved issues in the Rule 2004 Motion for which rulings are requested and proposed hearing dates for such unresolved issues." [Interim Order ¶ 5(d).]

9.      Below is a summary of the coordinated efforts taken thus far between the Independent Investigator, the Oversight Board, and the UCC.

10.      The Independent Investigator, counsel for the UCC, and counsel for the Oversight Board conducted a meet and confer on September 7, 2017 in accordance with the Court's Interim Order.  Following the meet and confer, the Independent Investigator provided a copy of the Independent Investigator's Initial Work Plan to the UCC.

11.     The UCC and the Independent Investigator have agreed to engage in further

meetings and conferences over the coming weeks as the scope, goals, and work plan for the

Investigation are refined.

12.     During the course of the Investigation, the Independent Investigator intends to

continue to maintain open lines of communication with the UCC, among others, while

maintaining the overarching independence and efficiency of the investigation.

13.     Specifically, the Independent Investigator intends to solicit input from the UCC

and other interested parties regarding document requests, areas of inquiry, and deposition

questions.  In particular, the Independent Investigator will seek documents, including but not

limited to those sought by the UCC, consistent with the Initial Work Plan.

14.     Further, the Independent Investigator intends to provide the UCC and other

interested parties, as appropriate, with access to the investigative materials, including documents

and deposition transcripts.

### The Oversight Board's Proposal

15.     The Oversight Board requests that the Court adopt the following proposal

regarding the UCC's Rule 2004 Motion.  Based on the meet and confer and the Initial Work

Plan, the Oversight Board proposes that the UCC's motion be deferred, and that no decision be

made on the UCC's request to conduct an investigation at this time.  The Oversight Board makes

this proposal based on its belief that there is no need for the UCC to conduct a separate,

potentially duplicative investigation at this time.   It would be premature for the UCC to conduct

its own investigation given the Independent Investigator's commitment to maintain open lines of

communication with the UCC, to solicit input from the UCC, and to seek documents, including

but not limited to those already sought by the UCC.  The Investigation should proceed as

outlined above and, if there comes a time when the UCC is not satisfied with the speed or

substance of the Investigation, it should make an application to the Court to pursue its own investigation on the specific matters on which it is not satisfied.

16.     The Oversight Board proposed to the UCC that the Rule 2004 Motion be deferred on this basis.  The UCC rejected the Oversight Board's proposal.

## **Hearing on Remaining Issues**

17.     The Oversight Board and the UCC agree that, subject to the Court's schedule, the Oversight Board's proposal, and any issues remaining to be decided on the Rule 2004 Motion, should be heard by Magistrate Judge Dein on October 4, 2017.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 12, 2017
  New York, NY

Respectfully submitted,

*/s/ Hermann D. Bauer*_____
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com


Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
Email:  sratner@proskauer.com
Email:  tmungovan@proskauer.com


*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of Puerto Rico Sales Tax
Financing Corporation and the
Commonwealth of Puerto Rico*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing and all supporting documents thereto with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*Hermann D. Bauer*
Hermann D. Bauer

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

       Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## INITIAL WORK PLAN OF KOBRE & KIM LLP,
## THE OVERSIGHT BOARD'S INDEPENDENT INVESTIGATOR

To the Honorable United States District Judge Laura Taylor Swain and the Honorable United

States Magistrate Judge Judith Dein:

     Kobre & Kim LLP, the independent investigator ("Independent Investigator") retained by

the Financial Oversight and Management Board of Puerto Rico (as representative of the

Commonwealth of Puerto Rico and the other Debtors in these Title III cases, the "Oversight

Board"), acting by and through the Special Investigation Committee of the Oversight Board,

provides this initial work plan and report on the first days of its engagement in this matter, in

accordance with the Interim Order, dated August 24, 2017, of United States Magistrate Judge

Judith Gail Dein [ECF No. 1163] (the "Interim Order").  The Independent Investigator is

---

[1]     The Debtors in these Title III cases, along with each Debtor's respective Title III case number
listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's
federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy
Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax
Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of
Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of
Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:
9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17
BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

providing this initial work plan for the purpose of assisting the Court in adjudicating the UCC's
*Motion for Order, Under Bankruptcy Rule 2004, Authorizing Discovery Program with Respect to*
*Certain Causes of Puerto Rico Financial Crisis* [ECF No. 706] (the "2004 Motion").

## **INTRODUCTION**

1.     On August 16, 2017, the Oversight Board issued a request for proposal for an
independent investigation team.

2.     Pursuant to the Interim Order, "[o]n or before September 12, 2017, the Oversight
Board and the Creditors' Committee shall file with the Court . . . a joint schedule or separate
schedules proposing, to the extent currently known, individual topics and targets of investigation
and timelines for commencing and completing each investigation[.]" *See* Interim Order ¶ 5.

3.     On September 1, 2017, the Oversight Board informed the Independent
Investigator that it would be retained.  The Independent Investigator began work immediately,
developing the plan here submitted after consultation with numerous stakeholders, including
counsel for the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico
(the "UCC").

4.     The Independent Investigator's sole interest in this matter is to find facts as
effectively and efficiently as possible to assist the Oversight Board in achieving its mandate
under PROMESA, while maintaining the independence of the investigation.  To that end, the
Independent Investigator reports to the Oversight Board's General Counsel and the Oversight
Board's Special Investigation Committee.[2]

5.     Consistent with the Interim Order, this initial work plan sets forth, "to the extent

---

[2]     The Special Investigation Committee of the Oversight Board comprises of Members Ana J.
Matosantos, David A. Skeel, and Judge Arthur J. Gonzalez (Ret.), and is charged with pursuing
investigations pursuant to the authority granted to the Oversight Board by PROMESA Section 104(o) and
such other authority invested in the Oversight Board pursuant to PROMESA.

2

currently known, individual topics and targets of investigation and timelines for commencing

and completing each investigation."[3]  The initial work plan is based on information known to the

Independent Investigator at this time.  It is subject to material change and may be supplemented

and amended as the Independent Investigator continues to evaluate the facts and evidence over

the course of the investigation commenced on September 1, 2017.

## THE INDEPENDENT INVESTIGATOR'S
## WORK TO DATE AND CONTINUING EFFORTS

6.     To determine the initial scope of its investigation and identify efficiencies, the

Independent Investigator conferred immediately and at length with certain members of the

Special Investigation Committee, the Oversight Board's General Counsel, the Oversight Board's

outside Ethics Advisor, the Oversight Board's outside legal representatives at Proskauer Rose

LLP, and the Oversight Board's accounting advisors at Ernst & Young ("EY").  As a result of

these meetings, the Independent Investigator has already gathered substantial facts and evidence

that are readily available and helpful in providing scope to the investigation and its timing.

7.     Data that has to date been reviewed by the Independent Investigator, includes, by

way of example, the Oversight Board's May 26, 2017 Board Resolution on Procedures for

Conducting PROMESA Investigations (the "PROMESA Investigative Procedures"), the October

14, 2016 Commonwealth of Puerto Rico Fiscal Plan, the March 7, 2017 Financial Bridge

---

[3]     While the investigation by the Independent Investigator is not subject to court approval, this work plan generally follows the format and level of detail of the initial plans submitted by the court-appointed examiners in *In re Residential Capital, LLC,* No.12-12020 (MG) (Bankr. S.D.N.Y August 6, 2012), ECF No. 1010, *In re Dynegy Holdings, LLC,* No. 11-38111 (CGM) (Bankr. S.D.N.Y. Jan. 24, 2012), ECF No. 356, *In re Lehman Brothers Holdings, Inc.,* No. 08-13555 (JMP) (Bankr. S.D.N.Y. Feb. 6, 2009), *In re SemCrude, L.P.,* No. 08-11525 (BLS) (Bankr. Del. Nov. 24, 2008), ECF No. 2330, *In re Tribune Co.,* No. 08-13141 (KJC) (Bankr. Del. May 7, 2010), ECF No. 4261, and *In re Extended Stay Inc.,* No. 09-13764 (JMP) (Bankr. S.D.N.Y. Oct. 13, 2009), ECF No. 507.  Similar to these examiner plans, the Independent Investigator has worked to strike a balance between providing the Court, interested parties, and the public with a sufficient level of detail to adjudicate if necessary the 2004 Motion without interfering with the overriding goal of an independent investigation or compromising the Independent Investigator's ability to collect evidence.

Analysis prepared by EY, other documents prepared by the Oversight Board's professionals concerning debt issuances by the Debtors, and a preliminary review of official statements of certain Debtors concerning their debt issuances.

8. On September 7, 2017, the Independent Investigator, along with the Oversight Board's counsel at Proskauer Rose LLP, conferred with counsel for the UCC regarding the UCC's proposed requests for documents to the Santander Entities and Banco Popular Entities,[4] and relayed the Independent Investigator's commitment to an independent investigation and reiterated the Oversight Board's willingness to share the results of such an investigation with the UCC and other interested parties. The Independent Investigator is committed to engaging in further meetings and conferences with the UCC over the coming weeks to further develop an understanding of the UCC's views on the scope and goals of the investigation, and to include in its investigation appropriate suggestions made by the UCC.

9. During the week of September 11, 2017, the Independent Investigator will conduct further meetings with the Special Investigation Committee to further implement the scope, means, and proposed timing of the Independent Investigator's investigation.

## OVERSIGHT BOARD'S PROCEDURES
## FOR CONDUCTING PROMESA INVESTIGATIONS

10. On May 26, 2017, the Oversight Board adopted the PROMESA Investigative Procedures, setting forth the procedures for informal and formal investigations under PROMESA.

11. Under the PROMESA Investigative Procedures, an "Informal Investigation" is defined as "any inquiry or review of Relevant Activities undertaken by the Board pursuant to PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA

---

[4]     These capitalized terms have the same meaning as those in the 2004 Motion, ECF No. 706.

for which the Board has not adopted an Investigative Resolution." *See* PROMESA Investigative Procedures, § 1.3(10).

12.     The Oversight Board's General Counsel may authorize an Informal Investigation, without further Oversight Board resolution, from complaints received from members of the public, communications with departments or agencies of the United States, communications with the Puerto Rico Government, examination of publicly available information, or otherwise, if it appears that misconduct may have occurred in connection with Relevant Activities. *See* PROMESA Investigative Procedures, § 3.1.

13.     A "Formal Investigation" is defined as "any formal inquiry or review of Relevant Activities undertaken by the Board pursuant to PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA, for which inquiry or review the Board or its designated agent has adopted an Investigative Resolution." *See* PROMESA Investigative Procedures, § 1.3(6).

14.     If the General Counsel, in collaboration with the Oversight Board's counsel, determines that (*i*) evidence appears to support a finding that misconduct has occurred, is occurring, or is about to occur regarding any Relevant Activities (*a*) based upon information developed in an Informal Investigation or (*b*) even though an Informal Investigation has not been initiated, based upon information otherwise available, or (*ii*) an Informal Investigation has been initiated, but the Oversight Board's counsel has been unable to conduct such Investigation without access to Investigative Subpoenas, the General Counsel shall so advise the Oversight Board and recommend to it that a Formal Investigation be initiated. *See* PROMESA Investigative Procedures, § 3.2.a.

15.     If, after considering the recommendations of the General Counsel and the

Oversight Board's counsel and all available information, the Oversight Board determines to initiate such Formal Investigation, it shall: (1) adopt an Investigative Resolution authorizing the General Counsel to initiate a Formal Investigation, and (2) authorize the use of process to obtain Investigative Materials and compel testimony as the General Counsel, in collaboration with the Oversight Board's counsel, deems necessary and appropriate.  *See* PROMESA Investigative Procedures, § 3.2.b.

### PRELIMINARY NOTE ON THE INDEPENDENCE OF THE INVESTIGATION

16.     The Oversight Board has retained the Independent Investigator because the Independent Investigator, as a law firm devoted exclusively to disputes and investigations, with no transactional practice, is well-positioned to conduct an independent investigation, and has regularly been called upon to perform investigations and monitorships requiring freedom from potential conflict.

17.     The Independent Investigator is committed to its mandate to maintain the independence of the investigation.  To that end, the Independent Investigator will regularly update the Special Investigation Committee and the Oversight Board's General Counsel on the status of the investigation and will consult the Special Investigation Committee and the Oversight Board's General Counsel, as appropriate.

18.     The Oversight Board members who are not on the Special Investigation Committee will have no role in considering whether any investigation should proceed into the Santander Entities and Banco Popular Entities, or whether any viable causes of action exist against the Santander Entities and Banco Popular Entities.

19.     As the investigation progresses, should the Independent Investigator identify any witnesses, subjects, or targets that may give rise to even the appearance of bias or conflict of

interest, the Independent Investigator will consult with the Special Investigation Committee and the Oversight Board's General Counsel, as appropriate, to assess the propriety of further recusals.

## SCOPE OF INVESTIGATION

20.     At this time, the Oversight Board's General Counsel has authorized the Independent Investigator to conduct an Informal Investigation, as defined in Section 4.1 of the PROMESA Investigative Procedures, regarding: (i) a review of the factors contributing to Puerto Rico's fiscal crisis, including changes in the economy, expansion of spending commitments and entitlement programs, changes in the federal funding it receives, and its reliance on debt to finance a structural budget deficit; (ii) a review of Puerto Rico's debt, the general use of proceeds, the relationship between the debt and Puerto Rico's structural budget deficit, the range of its debt instruments, and how Puerto Rico's debt practices compare to the debt practices of states and large municipal jurisdictions; and (iii) a review of Puerto Rico's debt issuance, disclosure, and selling practices, including its interpretation of Puerto Rico's constitutional debt limit.

21.     To the extent evidence received and assessed by the Independent Investigator appears to support a finding that misconduct has occurred, is occurring, or is about occur, or in the event the Independent Investigator determines that an Investigative Subpoena is needed to conduct the investigation, the Independent Investigator will escalate to the Special Investigation Committee for consideration of the initiation of a Formal Investigation under Section 3.2 of the PROMESA Investigative Procedures.

## <u>THE INDEPENDENT INVESTIGATOR'S PROPOSED WORK PLAN</u>

22.     The Independent Investigator has developed this initial work plan in consultation with the Oversight Board's General Counsel, outside counsel, and other advisors, and upon a preliminary review of information available as of this writing concerning the Debtors' debt issuances, Puerto Rico's debt and financial status, and certain documents provided by the Special Investigation Committee and the Oversight Board's advisors.

23.     The Independent Investigator proposes a staged investigation, to begin as an Informal Investigation, drawing when necessary upon the tools available upon declaration of a Formal Investigation, as those terms are defined in the PROMESA Investigative Procedures, to include, but not be limited to, the measures set forth below.  A projected timeframe for the investigation and reporting to the Special Investigation Committee and other interested parties is attached as **Appendix A**.

### A.     Identification of Potential Witnesses, Subjects, and Targets and Efforts to Preserve Evidence and Claims

24.     The Independent Investigator has undertaken to identify potential witnesses, subjects, and targets, and causes of action, and is working to preserve relevant evidence and related limitations periods.

25.     By September 15, 2017, the Independent Investigator will address with the Special Investigation Committee the key documents to be preserved and the universe of entities and individuals to receive document preservation notices in the coming days.

26.     As the Independent Investigator continues to identify potential witnesses, subjects, and targets, the Independent Investigator will send additional document preservation notices, as it identifies additional potential witnesses, subjects, and targets on a rolling basis, with a target substantial completion date of September 26, 2017 (*i.e.*, fourteen days).  To the extent

additional potential witnesses, subjects, and targets are identified subsequent to September 26, 2017, the Independent Investigator shall send a document preservation notice to any such person or entity, as may be appropriate, within seven days of identification of same.

27.     Additionally, as the Independent Investigator continues to identify potential subjects or targets of potential claims, the Independent Investigator will endeavor to obtain tolling agreements, as may be appropriate, with regard to potential claims.

28.     The Independent Investigator may submit to interested parties, as may be appropriate, a list of the potential witnesses, subjects, and targets provided with document preservation notices and with whom tolling agreements have been executed.  To the extent necessary to maintain the independence and confidentiality of the ongoing investigation, the Independent Investigator may require interested parties to enter into appropriate confidentiality and non-disclosure agreements.

### B.     Factual Investigation

### i.     Document and Records Collection

29.     In addition to the offering documents and related financial data already provided to the Independent Investigator, the Independent Investigator intends to seek documents and communications related to the Debtors' debt issuances, including, for example, those relaying or relying upon professional advice, as well as financial data from the various recipients of the bond proceeds.

30.     As an initial step and as a matter of efficiency, the Independent Investigator will first seek the production of this information on a voluntary basis, as well as pursuant to any contractual obligations for the turnover of records.  Additionally, the Independent Investigator may invoke Sections 104(c)(1) & (2) of PROMESA to request relevant documents and records from the Puerto Rico Government and other United States departments and agencies.  The

Independent Investigator endeavors to substantially complete propounding requests for the voluntary, contractual, and/or PROMESA-authorized requests for documents within 21 days from today.

32. To the extent any of the aforementioned parties decline or fail to produce the requested documents, and compulsory process becomes necessary, the Independent Investigator may seek Special Investigation Committee approval to issue Investigative Subpoenas pursuant to Section 5 of the PROMESA Investigative Procedures.

32. Once this initial information has been gathered and a thorough review is underway, the Independent Investigator will identify any additional third parties that may be in possession of information relevant to the investigation, and proceed with document requests accordingly.

### ii.    Witness Interviews and Depositions

33. The Independent Investigator anticipates that it will conduct interviews with and take sworn testimony from numerous witnesses and subjects, including underwriters, professionals, and government officials.

34. The Independent Investigator will generally seek to conduct voluntary interviews of witnesses with respect to the issues subject to the investigation.  To the extent, however, the Independent Investigator requires compulsory process, as with the document requests, the Independent Investigator will take steps to invoke the investigative subpoena powers of PROMESA.

35. The Independent Investigator aims to commence witness interviews and/or depositions within 60 days of the date of this work plan.  *See* Appendix A.

### C.     Retention of Professionals

36.     The Independent Investigator is consulting with the Oversight Board's advisors at EY.

37.     The Independent Investigator is continuing to evaluate whether advice from additional independent advisors or professionals is appropriate, including as to any matters of Puerto Rico law that may arise.

### D.     Maintaining Open Lines of Communication and Coordination with the UCC and Other Interested Parties

38.     During the course of the investigation, the Independent Investigator will continue to maintain open lines of communication with the U.S. Trustee, the Debtors, the UCC, and other interested parties, while maintaining the overarching independence and efficiency of the investigation.

39.     Specifically, the Independent Investigator will solicit input from the UCC and other interested parties regarding documents requests, areas of inquiry, and deposition questions.

40.     Further, the Independent Investigator will provide the UCC and other interested parties, as appropriate, with regular access to the investigative materials, including documents and deposition transcripts.

### E.     Independent Investigator's Report

41.     At this time, based upon discussions with the Oversight Board's General Counsel and the Oversight Board's advisors, the Independent Investigator believes that a realistic time frame for the preparation of a final investigation report is 180 days from the date of this submission, subject to adjustment if after meaningful due diligence a different time period appears to be more reasonable. The scope of the Informal Investigation authorized by the General Counsel is broad, and could expand as the Independent Investigator uncovers facts,

identifies targets, and crystalizes the relevant legal issues to claims identified or policy proposals made.  Given this, while the Independent Investigator believes that the size and complexity of the Debtors' debt issuances, claims, and issues to be examined make the proposed 180-day timeframe an ambitious one, the Independent Investigator is committed to completing the investigation as efficiently and effectively as possible.

## RESERVATION OF RIGHTS

42.    The Independent Investigator's work plan is based upon currently available information and presumes the full and complete cooperation of the Oversight Board, the Debtors, the UCC, and other parties in interest.  Given the early stage of the investigation, the volume of potentially relevant data, and the number of potential witnesses, subjects, and targets, it will take significant time to assemble, review, and analyze the documents and related information.  As the investigation unfolds, the Independent Investigator shall supplement and amend the work plan to fulfill the Oversight Board's directives regarding the scope and goals of the investigation.

Dated: September 12, 2017

Respectfully submitted,

KOBRE & KIM LLP

By: */s/ D. Farrington Yates*
    John D. Couriel
    Stephanie L. Hauser
    201 South Biscayne Boulevard, Suite 1900
    Miami, Florida 33131
    (305) 967-6100
    John.Couriel@kobrekim.com
    Stephanie.Hauser@kobrekim.com

    D. Farrington Yates
    Daniel J. Saval
    800 Third Avenue
    New York, New York 10022
    (212) 488-1200
    Farrington.Yates@kobrekim.com
    Daniel.Saval@kobrekim.com

## APPENDIX A

| 21 days: | • **Independent Investigator will request voluntary turnover of documents** |
|---|---|
| 30 days: | • **Independent Investigator, as appropriate, will provide the Special Investigation Committee with recommendations to approve formal investigations and/or seek investigative subpoena power from the Oversight Board pursuant to Section 5 of the PROMESA Investigative Procedures** |
| 60 days: | • **Independent Investigator will commence interviews and/or depositions** |
| 180 days: | • **Independent Investigator will publish its final investigation report** |

13