**Hearing Date:** October 4, 2017, 9:30 a.m

.

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

[*Caption continued on next page*]

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

-----------------------------------------------------------x

| | |
|---|---|
| NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, *et al.* | PROMESA Title III |
| Movants, | |
| v. | **Re: ECF No. 1177** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Respondents. | |

-----------------------------------------------------------x

| | |
|---|---|
| AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, ASSURED GUARANTY CORP., AND THE MUTUAL FUND GROUP, | PROMESA Title III |
| Movants, | |
| v. | **Re: ECF No. 1178** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Respondents. | |

-----------------------------------------------------------x

| | |
|---|---|
| AMBAC ASSURANCE CORPORATION, | |
| Movants, | PROMESA Title III |
| v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | **Re: ECF No. 1283** |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Respondents. | |

-----------------------------------------------------------x

# DEBTORS' OMNIBUS OBJECTION TO
## MOTIONS FOR ORDERS AUTHORIZING RULE 2004 DISCOVERY

2

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

RELEVANT BACKGROUND ................................................................................................ 7

    I.    The National/Assured Group, Ad Hoc Group and Ambac Adversary Proceedings ............ 7

    II.   The Oversight Board and Commonwealth's Disclosure of Financial Information ........... 12

    III.  The Motions ....................................................................................................................... 15

ARGUMENT ....................................................................................................................... 17

    I.    THE PENDING PROCEEDING RULE BARS MOVANTS FROM SEEKING
         RULE 2004 DISCOVERY ON ISSUES RELATED TO PENDING
         ADVERSARY PROCEEDINGS ....................................................................................... 17

         A.   Movants Fail to Show the Pending Proceeding Rule Does Not Apply ................... 19

         B.   The Court's Discretion Does Not Override the Pending Proceeding Rule .............. 21

         C.   The Requested Rule 2004 Discovery Duplicates the Issues Raised in the
             Adversary Proceedings ............................................................................................ 22

    II.   THE OVERSIGHT BOARD AND COMMONWEALTH HAVE PROVIDED
         EXTENSIVE DISCLOSURE ........................................................................................... 27

    III.  THE DELIBERATIVE PROCESS PRIVILEGE BARS THE PRODUCTION
         OF CERTAIN DOCUMENTS ......................................................................................... 29

93229719v30

TABLE OF AUTHORITIES

Page

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re 2435 Plainfield Ave., Inc.,*
  223 B.R. 440 (Bankr. D.N.J. 1998) ...................................................................17

*In re Bennett Funding Grp., Inc.,*
  203 B.R. 24 (Bankr. S.D.N.Y. 1996).....................................................20, 21, 22

*City of Virginia Beach, Va. v. U.S. Dep't of Commerce,*
  995 F.2d 1247 (4th Cir. 1993) ............................................................................30

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001)..........................................................................................30, 32

*In re Dinubilo,*
  177 B.R. 932 (E.D. Cal. 1993)......................................................................17, 18

*In re Enron Corp.,*
  281 B.R. 836 (Bankr. S.D.N.Y. 2002) ....................................................17, 18. 20

*Freeman v. Seligson,*
  405 F.2d 1326 (D.C. Cir. 1968) .........................................................................18

*In re Hammond,*
  140 B.R. 197 (S.D. Ohio 1992) ..........................................................................19

*Judicial Watch, Inc. v. U.S. Dep't of the Treasury,*
  796 F. Supp. 2d 13 (D.D.C. 2011).......................................................................31

*In re Noone v. St. Cyr (In re Noone),*
  188 B.R. 710 (Bankr. D. Mass. 1995) .................................................................21

*Providence Journal Co. v. U.S. Dep't of Army,*
  981 F.2d 552 (1st Cir. 1992)........................................................................29, 32

*Texaco P.R., Inc. v. Dep't of Consumer Affairs,*
  60 F.3d 867 (1st Cir. 1995)................................................................................30

*W Holding Co. v. Chartis Ins. Co. of P.R.,*
  42 F. Supp. 3d 319, 324 (D.P.R. 2014)...............................................................30

*In re Wash. Mut. Inc.,*
  408 B.R. 45 (Bankr. D. Del. 2009) .....................................................................19

93229719v30

**STATUTES**

48 U.S.C. §§ 2101–2241 ...................................................................................................................1

PROMESA § 106(e) ...................................................................................................................5, 6

PROMESA § 201(b) ....................................................................................................................26,31

PROMESA § 303 .........................................................................................................................11

PROMESA § 312(a) .....................................................................................................................6

PPROMESA §§ 315(a)(2) ...........................................................................................................5

P.R. LBR 2004-1 .........................................................................................................................17,22

**OTHER AUTHORITIES**

FED R. BANKR. P. 2004 ............................................................................................................ passim

FED R. BANKR. P. 7026 ..............................................................................................................25

FED R. BANKR. P. 7026–7037 ....................................................................................................18

FED R. BANKR. P. 9014 ..............................................................................................................17

Fed. R. Civ. P. 12(b)(1) and (b)(6) .............................................................................................7, 10

Fed. R. Civ. P. 26(a) ...................................................................................................................10

Fed. R. Civ. P. 26(f) ...................................................................................................................10

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" and together with the Commonwealth, COFINA, and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),[2] as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submit this omnibus objection (the "Omnibus Objection") to (i) the "Motion of National Public Finance Guarantee Corporation ["National"] for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery" [ECF No. 1177] (the "National Motion"); (ii) the "Joint Motion by the Ad Hoc Group of General Obligation Bondholders [the "Ad Hoc Group"], Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Mutual Fund Group [together with the Ad Hoc Group, the "GO Group"] for Order Authorizing Rule 2004 Examination" [ECF No. 1178] (the "GO Motion"); and (iii) "Ambac Assurance Corporation's ["Ambac"] Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004" [ECF No. 1283] (the "Ambac Motion") (the "National Motion," the "GO Motion," and the "Ambac Motion" are collectively referred to as the "Motions"[4] and National, the GO Group, and Ambac are collectively referred to as the "Movants"[5]).  The Motions have been referred to Magistrate Judge Dein.[6]

---

[2]  Although the Oversight Board submits this Omnibus Objection in its capacity as representative of the Debtors, to the extent the Motions (defined below) are targeted towards the Oversight Board, this Omnibus Objection covers the Oversight Board as well.

[3]  PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[4]  Capitalized terms used but not defined herein have the meanings given to them in the Motions.

[5]  Because the Rule 2004 requests propounded by Movants overlap in material part, and to avoid duplication, unless stated otherwise, the Omnibus Objection refers principally to the GO Motion, although the arguments are equally applicable to the National and Ambac Motions.

## PRELIMINARY STATEMENT

Movants have filed overlapping and largely duplicative Motions seeking permission pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") to propound a combined 181 exhaustive document requests, leave to take testimony from the Debtors and their representatives, and to issue subpoenas for the production of documents and examination of other third parties.  That Movants demand  the documents ten days after a Rule 2004 order is entered speaks for itself, as does the fact that Ambac chose not to disclose to the Court that it has requested much of the same discovery in its pending adversary proceeding.  In fact, all three Movants have filed adversary proceedings,[7] and discovery is stayed in all three in light of pending dismissal motions.[8]  Entirely apart from these procedural flaws, it is hard to imagine more oppressive and abusive discovery requests.

The GO Group admits (GO Motion at 2) that their motion is calculated to obtain discovery about the Fiscal Plan to use at the confirmation hearing regarding a plan of adjustment which has yet to be proposed, on the grounds a plan of adjustment must be consistent with the certified Fiscal Plan.[9]  They seek Rule 2004 disclosure to determine if "any plan of adjustment . . . *is confirmable*," a question which, of course, cannot be answered in the absence of an actual proposed plan of

---

[6]   *See* ECF Nos. 1183, 1186, and 1294.

[7]   *See Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 17-00125 (Bnkr. D. P.R.) (the "125 Proceeding"), filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National; *ACP Master, Ltd. v. Commonwealth*, Adv. Proc. No. 17-00189- LTS (Bankr. D. P.R.) (the "189 Proceeding"), filed by the Ad Hoc Group, which is one of the movants within the GO Group; and *Ambac Assurance Corp v. Commonwealth of Puerto Rico*, Adv. Proc. No. 17-00159-LTS (Bankr. D. P.R.) (the "159 Proceeding"), filed by Ambac.  (The three proceedings are referred to collectively as the "Adversary Proceedings.")

[8]   *See* Order Deferring Issuance of Pre-Trial Discovery Order [ECF No. 59; Adv. Proc. No. 17-00125]; Order Deferring Issuance of Pre-Trial Discovery Order [ECF No. 42; Adv. Proc. No. 17-00189]; Order Deferring Issuance of Pre-Trial Discovery Order [ECF No. 68; Adv. Proc. No. 17-00159].

[9]   "Specifically, this Motion seeks an examination of documents and key witnesses concerning the projections in the Fiscal Plan, which will no doubt form the basis of any plan of adjustment, and the Commonwealth's fiscal health in general."  Go Motion at 2.  The Commonwealth's Fiscal Plan, as required by PROMESA, was approved and certified by the Oversight Board on March 13, 2017.

adjustment.  GO Motion at 2 (emphasis in original).  Assured and National are currently

prosecuting an adversary proceeding for an injunction barring the Oversight Board from proposing

any plan of adjustment based on the certified Commonwealth Fiscal Plan.  Manifestly, Assured

and National believe they know enough about the Fiscal Plan to try to bar the proposal of any plan

of adjustment based on it.  That alone deprives Movants of their right to discovery under Rule

2004, which is designed for discovery *before* a litigant knows its cause of action or defenses.  They

are absolutely precluded from Rule 2004 discovery because (a) if they prevail on their complaint,

there cannot be any plan of adjustment based on the Fiscal Plan, which clearly eliminates any need

for discovery on the Fiscal Plan, and (b) they already have sufficient information to have

determined they will oppose the plan of adjustment they anticipate that will be filed.

        Notwithstanding that the certified Fiscal Plan and budgets are all public, thereby enabling

Movants to assess every expense in every entity's budget, Movants are demanding the Oversight

Board's analyses of virtually all issues (as well as every scrap of paper generated by the

Government of Puerto Rico in promulgating that budget).  Suffice it to say that Movants'

contentions that they need the discovery they demand to understand the Fiscal Plan and that

respondents have failed to provide meaningful discovery are, as discussed below, the opposite of

the facts.  One only has to look at a handful of Movants' demands to see how disproportionate and

oppressive they are.

        It is not an exaggeration to say Movants have likely requested every non-privileged

document created in the last few years (and in some cases the last 17 years) that the Oversight

Board and most of the debtors possess.  The documents include:

        (i)        the Oversight Board's communications with Congress;

93229719v30

(ii)     all discovery provided and received in all adversary proceedings and other

         litigation;

(iii)    new discovery concerning statements the Oversight Board made in other litigation

         in which Movants are not parties;

(iv)     all documents created since 2000 relating to the Government of Puerto Rico's

         subsidies to municipalities;

(v)      documents relating to the GDB restructuring support agreement for which GDB

         has not yet applied for court approval;

(vi)     minutes of Oversight Board meetings Congress expressly allows to be conducted in

         executive session;

(vii)    documents relating to contemplated public-private partnerships the Oversight

         Board or other entities are working on; and

(viii)   documents relating to matters Movants have made clear they intend to litigate, such

         as PREPA, GDB, and essential services.

In seeking what they describe as "a 'broad and unfettered' look into [the Commonwealth's]

financial affairs" (GO Motion at 8 (citation omitted)), Movants argue erroneously that the Debtors,

their representatives, and the Government of Puerto Rico have deprived them of documents and

data.  In reality, Movants have received the Fiscal Plan and  extensive documents and data

underlying it via the data room (and are continuing to receive more information through the

mediation process).  Movants have access to this information – which significantly overlaps with

the requests they propound pursuant to Rule 2004 – even though PROMESA does not afford them

the right to propose a plan of adjustment or to seek relief from this Court challenging the Oversight

4

93229719v30

Board's certification of the Commonwealth's Fiscal Plan. *See* PROMESA §§ 315(a)(2) and 106(e).

Belying their assertion that the scope of disclosure to date is inadequate, Movants assert that the Commonwealth's plan for recovery, as outlined in the Fiscal Plan, suffers from "fundamental weaknesses and errors" and "inaccuracies" (GO Motion at 7), and that "the Commonwealth will not recover from its current economic downturn unless it *jettisons* the Fiscal Plan and provides appreciably more funds for debt service" (*i.e.,* for Movants) (GO Motion at 13 (emphasis in original)).  Clearly, Movants have drawn their conclusions.  Accordingly, they have no need for, or entitlement to, Rule 2004 discovery.[10]

For all the following reasons, Movants have no entitlement to Rule 2004 examinations and the Motions should be denied:

> ➢ A Rule 2004 examination cannot be used to take requested discovery on issues being litigated by Movants in their pending Adversary Proceedings.  Local Rule of Bankruptcy Procedure 2004-1 makes this clear.  In plain derogation of the rule against utilizing Rule 2004 when adversary proceedings are underway, Movants are attempting inappropriately to use Rule 2004 as a pretext for obtaining discovery materials related to the Adversary Proceedings in which this Court has ordered that discovery be deferred pending disposition of motions to dismiss.[11]

---

[10]   Movants never explain how by sending more money to creditors outside the Commonwealth and spending less in the Commonwealth than already decreed by the 30% expense cuts the Fiscal Plan mandates, the Commonwealth's negative economic growth will turn positive, as opposed to leading to a death spiral.

[11]   Movants seek a blanket order approving their document requests and compelling the Oversight Board and the Commonwealth to produce responsive documents and to designate witnesses for depositions.  *See* GO Motion at 1.  Movants' demand is *ultra vires* because it does not contemplate a normal objection and meet-and-confer process.  To the extent that the Court grants Movants' applications, the Oversight Board and the Commonwealth request that the Court authorize a schedule for a normal objection and meet-and-confer process to address the Oversight Board and Commonwealth's specific objections to the multitude of requests.

93229719v30

➢ Although not a justification for seeking Rule 2004 discovery in light of the pending Adversary Proceedings, Movants misrepresent the scope of disclosure made by the Oversight Board and the Commonwealth regarding the financial underpinnings of the Fiscal Plan. Starting long before the Motions were filed and having nothing to do with Rule 2004, after publishing the Fiscal Plan, the Oversight Board and the Commonwealth uploaded extensive back-up documents and data to the data room, and are continuing to disclose information, including through the mediation process.

➢ Movants' blunderbuss Rule 2004 requests seek categories of documents subject to the deliberative process privilege, and therefore are immune from disclosure. The deliberative process privilege is an essential tool to promote the uninhibited and free exchange of ideas and recommendations in the government decision making process – here the development of the Fiscal Plan. Unfettered disclosure, as sought by Movants, would risk imposing the chilling effect that the privilege is designed specifically to prevent.[12]

➢ Overall, only the Oversight Board has authority to propose or modify a plan of adjustment.[13] The Oversight Board has yet to propose a plan of adjustment in any Title III case. Claimholders' contention that their Rule 2004 requests are necessary to assess a non-existent plan of adjustment are premature and a mere pretext for challenging the Fiscal Plan, for which the Court does not have subject matter jurisdiction.[14]

As reflected by the materials made available to creditors relative to the Fiscal Plan which, themselves, constitute substantial disclosure, the Oversight Board has endeavored to provide

---

[12]  While beyond the scope of this motion, in numerous instances Movants' specific requests are overbroad and unduly burdensome, and seek irrelevant information. The Oversight Board and Commonwealth reserve their rights to assert specific objections if Movants are authorized to serve their proposed Rule 2004 discovery.

[13]  PROMESA § 312(a).

[14]  PROMESA § 106(e).

93229719v30

financial disclosure to all creditors.  Movants, however, should not be permitted to force

burdensome and excessively costly disclosure that neither reflects the established standards

applicable to Rule 2004 nor the special procedures established by Congress in adopting

PROMESA.  The Motions should therefore be denied.

## RELEVANT BACKGROUND

The Oversight Board has previously submitted relevant background information to the

Court covering the current state of Puerto Rico's economy, the adoption of PROMESA, the

Compliance Law, the Oversight Board and its certification of the Fiscal Plan, and the various

bonds at issue in the Title III case.  To avoid unnecessary duplication, the Oversight Board

respectfully refers the Court to those prior presentations.[15]

Although the Motions before the Court have been filed in the Commonwealth's Title III

case, Movants have previously filed the Adversary Proceedings that, as discussed below, implicate

many of the issues that underlie the discovery requests in the Motions.  The pendency of the

Adversary Proceedings, among other things, precludes the relief requested here and, accordingly,

we begin with brief descriptions of these proceedings.  The positions taken by Movants in the

following Adversary Proceedings amply demonstrate that contrary to their rhetoric, they have

already developed their attacks on the Fiscal Plan and do not need Rule 2004 discovery.

I.      **The National/Assured Group, Ad Hoc Group and Ambac Adversary Proceedings**

*The National/Assured Group Adversary Proceeding.*  On May 3, 2017, National, together

with the Assured group of companies (collectively, the "National/Assured Group"), commenced

*Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 17-00125

---

[15]     *See* the Oversight Board's "Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and
(b)(6)," filed in the 125 Proceeding (defined below) (ECF No. 27 at 7-14).

93229719v30

(the "125 Proceeding").  The National/Assured Group are insurers of GO and PBA bonds, as well
as HTA, PRIFA and PRCCDA bonds (the "Authority Bonds").[16]  The 125 Proceeding plaintiffs
allege that, under the Puerto Rico Constitution, the GO and PBA bonds are entitled to a first
priority debt payment over all other government obligations.  They further allege that the special
tax and other revenues "pledged" for payment on the Authority Bonds entitle the 125 Proceeding
plaintiffs to a lien on those revenues.

The National/Assured Group takes direct aim at the Fiscal Plan.  It contends that by
assuming all non-debt expenses will be paid before debt service, the Fiscal Plan violates
PROMESA by failing to respect existing debt priorities and liens.  Plaintiffs further assert that the
Compliance Law misappropriates the Authority Bonds revenue by clawing back funds to which
the Commonwealth has no legal entitlement.  Plaintiffs contend that the Fiscal Plan and
Compliance Law violate (1) the Contract Clause of the U.S. Constitution by impairing the
contractual rights of bondholders and Plaintiffs by allegedly ignoring the debt priority,
incorporated into the bond insurers' contracts, and allegedly diverting the Authority Bond
revenues to the Commonwealth from their contractually agreed purpose, and (2) the Takings and
Due Process Clauses of the U.S. Constitution by allegedly taking the Authority Bond revenues
without just compensation.  Plaintiffs seek injunctive relief enjoining the Oversight Board from
presenting or seeking or obtaining confirmation of a plan of adjustment based on the Fiscal Plan.[17]

On July 10, 2017, the Oversight Board moved to dismiss the 125 Proceeding.

---

[16]   National/Assured Group's descriptions of the Authority Bonds can be found in their *Adversary Complaint* [ECF
No. 1; Adv. Proc. No. 17-00125].

[17]   National is also a plaintiff in *Assured Guaranty Corp. v. Commonwealth of Puerto Rico*, Adv. Proc. No.
17-00155-LTS, 17-001156-LTS (the "155/156 Proceeding") (discussed in GO Motion at 6).  The 155/156
Proceeding similarly implicates the discovery sought by the Motions.  Because the overlap between the discovery
sought in the Motions and the issues presented in the 125 and 189 Proceedings is manifest, it is not necessary for
the Oversight Board to describe the details of the 155/156 Proceeding or any other proceeding in demonstrating
that the Motions violate the "pending proceeding" rule.  *See infra* at 17-26.

8

93229719v30

The plaintiffs filed their opposition on August 14, 2017 and the Oversight Board filed its reply on August 28, 2017.  The motion is scheduled to be heard on September 27, 2017.

The National/Assured Group has not yet served discovery requests in the 125 Proceeding.  The Court has ordered that pre-trial discovery will be deferred in that proceeding pending the motion to dismiss.[18]

***The Ad Hoc Group Adversary Proceeding.***  On June 27, 2017, the Ad Hoc Group commenced the 189 Proceeding, claiming a priority debt payment status in bonds issued by the Commonwealth and in bonds issued by certain public corporations and guaranteed by the Commonwealth under the Puerto Rico Constitution and contract and statutory liens. They claim interests in two streams of revenue: (1) proceeds of taxes and fees earmarked to pay instrumentality debt (HTA, MBA, PRCCDA, and PRIFA) but subject to claw back to pay GO debt when available resources are insufficient to do so, and (2) proceeds of property taxes purportedly statutorily required to be levied, collected and segregated in a trust to pay GO debt.

The plaintiffs in the 189 Proceeding seek judicial declarations that (a) the property tax and claw back revenues are restricted and that the Commonwealth [and Oversight Board] are prohibited from collecting or using the revenues for any purpose other than paying GO debt, (b) they, and not the Commonwealth, have property interests in the revenues, (c) they have statutory liens on the revenues, (d) their liens on the claw back revenues are liens on special revenues, (e) the Commonwealth's use of the revenues

---

[18]    Order Deferring Issuance of Pre-Trial Discovery Order [ECF No. 59; Adv. Proc. No. 17-00125].

without just compensation is an unlawful taking, and (f) property tax revenues should be segregated in a trust and used only to pay GO debt. The 189 Proceeding plaintiffs also seeks injunctive relief requiring the Commonwealth and Board to segregate and preserve the revenues.

On August 21, 2017, the Oversight Board moved to dismiss the 189 Proceeding.[19] Plaintiffs' opposition is due by September 25, 2017, the Oversight Board's reply is due by October 13, 2017, and the return date is October 26, 2017.

The plaintiffs in the 189 Proceeding have not yet served discovery requests, but has requested a Rule 26(f) conference and has requested that initial disclosures under Rule 26(a) proceed.[20] The Court has similarly deferred discovery pending the motion to dismiss.[21]

**The Ambac Adversary Proceeding.** On June 8, 2017, Ambac commenced the 159 Proceeding. Ambac insures and is the direct owner of bonds issued by HTA. In the 159 Proceeding, Ambac alleges rights to priority payment of the HTA bonds senior to payment of any other non-debt expenses (second only to payment of GO debt) and entitlement to streams of future HTA revenues allegedly "pledged" for payment on the bonds it insured and owns.

---

[19]   See Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed R. Civ. P. 12(b)(1) and (b)(6) [ECF No. 35; Adv. Proc. No. 17-00125].

[20]   The Oversight Board has responded to these requests, stating that (i) Rule 26 initial disclosures should be deferred while financial disclosures would continue to be added to the data room and (ii) while the Oversight Board would be willing to participate in a Rule 26(f) conference, discovery should be stayed pending the outcome of the motion to dismiss the 189 Proceeding (*see* ECF No. 35). *See* Letter of Kevin J. Perra, Esq. to Kathryn S. Zecca, Esq., dated September 13, 2017, annexed as Exhibit D to the accompanying Declaration of Timothy W. Mungovan, dated September 19, 2017 ("Mungovan Decl.").

[21]   Order Deferring Issuance of Pre-Trial Discovery Order [ECF No. 42; Adv. Proc. No. 17-00189].

10

Ambac alleges the Fiscal Plan violates these rights by, among other things, allegedly failing to "respect" lawful priorities and liens as required by PROMESA by prioritizing Commonwealth general expenses to be paid ahead of debt service, and allegedly impermissibly seeking to claw back HTA revenue to pay for those expenses. Ambac claims the Fiscal Plan and Compliance Law impair the HTA bonds by failing to provide a proper debt sustainability analysis, inverting the debt priority, failing to define essential services and diverting HTA bond revenue. Ambac also alleges that the Fiscal Plan and Compliance Law violate the Contract Clause by ignoring the debt priority and diverting HTA revenues, and violate the Takings and Due Process Clauses by taking HTA revenues without just compensation. Ambac further alleges the Fiscal Plan and Compliance Law are preempted by PROMESA § 303 and violate § 407 regarding inter-debtor transfers. Ambac makes similar claims with respect to other Commonwealth legislation and executive orders (including the Emergency Moratorium and Financial Rehabilitation Act (P.R. Act No. 21-2016), the Financial Emergency and Fiscal Responsibility Act (together, the "Financial Emergency Legislation") and Executive Orders 18, 30 and 31 of 2016 (together, the "Executive Orders").

Ambac seeks: (1) declaratory relief that the Fiscal Plan, Compliance Law, Financial Emergency Legislation and Executive Orders (a) violate the Contract Clause, (b) violate the Taking and Due Process Clauses, (c) are preempted by § 303 and violate § 407 of PROMESA, and (d) are liable for the value of any transfers made pursuant thereto; and (2) injunctive relief (a) enjoining defendants from taking any action pursuant to the Fiscal Plan or Compliance Law, including any future legislation or budget, or seeking

11

conformation of any plan of adjustment based on the Fiscal Plan, (b) compelling

defendants to remit HTA revenues to HTA for payment of the HTA bonds and enjoining

defendants from taking any action that would interfere with the flow of HTA revenues to

HTA; and (c) reversing certification of Fiscal Plan and declaring it invalid, void and

without force or effect.

On July 7, 2017, Ambac filed an Amended Adversary Complaint.  On July 28,

2017, defendants moved to dismiss the 159 Proceeding.  Ambac filed its opposition on

September 12, 2017.  The Oversight Board's reply is due October 12, 2017 and the motion

is scheduled to be heard on November 15, 2017.

Although Ambac has filed the 159 Proceeding, *inter alia*, challenging the Fiscal

Plan, the Ambac Motion fails even to mention the 159 Proceeding or inform the Court that

Ambac has indeed served discovery requests in that litigation.  Notably, many of Ambac's

discovery requests in the 159 Proceeding overlap with its Rule 2004 requests here.[22]  The

Court has similarly deferred discovery pending the motion to dismiss.[23]

## II.    The Oversight Board and Commonwealth's Disclosure of Financial Information

Although Movants are not entitled to invoke Rule 2004 in the Commonwealth's

Title III case and Movants should not be entitled to take discovery in any of the 125, 189,

159 or 155/156 Proceedings pending disposition of the motions to dismiss of the Debtors

and the Oversight Board, the Oversight Board and the Puerto Rico Fiscal Agency and

---

[22]   *See* Exhibit C-1 annexed to the Mungovan Decl., which is a chart demonstrating the relationship
between the Ambac Motion Rule 2004 requests and Ambac's discovery requests in Ambac Adversary
Proceeding 17-00159.

[23]   Order Deferring Issuance of Pre-Trial Discovery [ECF No. 68; Adv. Proc. No. 17-00159].

93229719v30

Financial Advisory Authority ("AAFAF") have nonetheless provided creditors with visibility into the underpinnings of the Fiscal Plan and will continue to do so. This disclosure regimen is not compelled by Rule 2004, PROMESA, or any other rules of discovery. Rather, it flows from the efforts by the Oversight Board and AAFAF to provide claimholders and stakeholders with transparency into the restructuring process.

Beginning in April 2017, AAFAF and the Oversight Board have uploaded materials related to the March 13, 2017 Fiscal Plan to an online data room. Access to the data room was provided to parties that signed a non-disclosure agreement, which includes the Movants' respective legal counsel and financial advisors. The first set of materials was uploaded on April 5, 2017, and included the Fiscal Plan model in Excel format. The Fiscal Plan model is a consolidated model that includes, among other things, financial projections for (i) general fund revenue and expenses, (ii) the Commonwealth instrumentalities covered by the Fiscal Plan, (iii) special appropriations, and (iv) Commonwealth revenue enhancement and expense measures. Seventeen additional documents, which serve as the source for many of the assumptions and methodologies employed in developing the projections in the Fiscal Plan model, were also uploaded on April 5.

On April 6, 2017, following an initial meeting that AAFAF held with over 60 representatives of various claimholder groups, Rothschild & Co. (AAFAF's financial advisor) notified the claimholder groups' financial advisors of a financial due diligence session scheduled for April 11, 2017, and gave the advisors an opportunity to submit questions in advance of the diligence session. Detailed responses to 262 of the 364 of questions Rothschild received were posted to the data room on April 11th. The

13

unanswered questions were either overbroad or requested information that (i) did not exist, (ii) was privileged, or (iii) involved proprietary models.  The responses were also supplemented by 25 source documents, which included cash flow models and additional information related to revenue, expenses, and Commonwealth fiscal measures.

In response to a June 2, 2017 letter from the GO Group, and a June 5, 2017 letter from National, additional materials were uploaded to the data room on June 26, 2017 and July 31, 2017.  These documents included cash flow models for various instrumentalities and memoranda on the macroeconomic methodologies reflected in the Fiscal Plan.  A "live" version of the Fiscal Plan model, which included internal links to other tabs in the Excel file and the formulas used to calculate various line items, was also uploaded on July 31, 2017 at the request of the GO Group and Assured.[24]

The ongoing mediation process has also been a source of substantial additional disclosures.  The parties that attended the mediation sessions that began on August 29, 2017, which included the Movants' legal and financial advisors, were provided with a detailed presentation that connects the various sections of the Fiscal Plan model with the relevant source information in the data room.  This presentation also includes descriptions of the methodologies used to develop numerous projections that appear across the Fiscal

---

[24]    Upon request, the Oversight Board will provide the Court with access to the data room to the same degree as the claimholders.

Plan.  Copies of this presentation will be made available in the data room to those parties

that sign an additional non-disclosure agreement requested by the mediators.[25]

AAFAF and the Oversight Board have begun work on responding to questions

submitted during the mediation that require follow up, and will upload answers to these

questions (and relevant supporting documentation) to the data room on a rolling basis.

Additional financial information for certain Commonwealth instrumentalities, including

the HTA Fiscal Plan model and supporting source materials produced in the *Peaje*

litigation, can be found in other data room folders.

### III.     The Motions

Following the (i) failure of a cursory meet and confer process initiated by the GO

and National Movants, and despite the failure of the GO and National Movants to pursue

any rights they believe they may have pursuant to the Federal Rules of Civil Procedure in

either or both of the 125 or 189 Proceedings (to which the Oversight Board would object

based on the pending motions to dismiss), and (ii) an equally superficial meet and confer

process initiated by Ambac, Movants filed the Motions pursuant to Rule 2004 seeking to

(1) compel the Oversight Board and the Commonwealth to produce the documents

requested in the combined 181 requests contained in the respective Schedules A attached to

the Motions, (2) authorize Movants to depose Oversight Board members, (3) require the

Oversight Board, Commonwealth and AAFAF to designate deposition witnesses with

---

[25]    For the avoidance of doubt, use of all information uploaded to the data room or provided in connection
with mediation is subject to the terms and conditions set forth in the applicable non-disclosure
agreements.

15

knowledge of Schedule A topics, and (4) authorize Movants to serve subpoenas on third parties with knowledge of Schedule A topics.

In support of the Motions, Movants fail to address the impropriety of seeking Rule 2004 disclosure given the pendency of adversary proceedings.[26]  Movants also misstate or understate the magnitude of disclosure made by AAFAF and the Oversight Board (*see supra* at 12-16), and claim that, starting in fall 2015 and continuing until June 2017, the Oversight Board and Commonwealth have repeatedly rejected their out-of-court attempts to obtain information regarding the Commonwealth's finances and the data used to develop the Fiscal Plan.  And Movants fail to acknowledge the disclosure in the mediation process.

Overall, Movants proceed as if this were a chapter 11 case, at best paying lip service to the Court's lack of subject-matter jurisdiction to entertain a challenge to the Oversight Board's certification decision, ignoring entirely the Oversight Board's exclusive authority to propose a plan of adjustment, ignoring that  "fishing expedition" discovery is inappropriate in light of their pending Adversary Proceedings and brushing aside the substantial financial information that has been and is continuing to be made available to claimholders.  The Motions should be denied.

---

[26]    The GO Group may attempt to explain away the Ad Hoc Group's failure to seek discovery in the 189 Proceeding on the ground that the Oversight Board has objected to discovery pending disposition of its motion to dismiss.  National is silent on its failure to seek to discovery in the Rule 125 Proceeding. Ambac, in failing to disclose the filing of its 159 Proceeding, fails to disclose that it has served discovery requests under the Federal Rules of Civil Procedure in that litigation (to which the Oversight Board and Commonwealth have served written responses and objections, but agreed to produce certain documents).

16

## ARGUMENT

**I.    THE PENDING PROCEEDING RULE BARS MOVANTS
FROM SEEKING RULE 2004 DISCOVERY ON ISSUES
RELATED TO PENDING ADVERSARY PROCEEDINGS**

Rule 2004 is a prelitigation device, and its use is barred when an adversary

proceeding already is pending.  *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993); *In re*

*Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002) (denying motion for discovery

under Rule 2004 because of the "well recognized rule that once an adversary proceeding or

contested matter is commenced, discovery should be pursued under the Federal Rules of

Civil Procedure and not Rule 2004."); *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 455

(Bankr. D.N.J. 1998) (denying discovery under Rule 2004 in a pending adversary

proceeding because "[t]he majority of courts that have addressed this issue have prohibited

a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is

pending" (collecting cases)).[27]  The preclusive effect of the "pending proceeding rule" on

Rule 2004 discovery is beyond question.  It has been explicitly incorporated into the Puerto

Rico Local Bankruptcy Rules:

> (a) Inapplicability to Adversary Proceedings and Contested Matters. The provisions
> for examination under this LBR are inapplicable to pending adversary proceedings
> and contested matters. The discovery provisions made applicable by Part VII of
> Federal Rules of Bankruptcy Procedure and Fed. R. Bankr. P. 9014 govern
> discovery in connection with pending adversary proceedings and contested matters.

P.R. LBR 2004-1.

---

[27]  *See generally* this Court's remarks at the August 22, 2017 Hearing, Tr. at 28:20-24 ("But then I run into
the principle that, if the same discovery is being sought in an adversary proceeding, it seems to be a
pretty bright line about having the discovery at least be governed by the Rules of Civil Procedure for that
category.").

17

The pending proceeding rule ensures that Rule 2004 cannot be used as a tactic to circumvent the procedural safeguards of the Federal Rules of Civil Procedure (made applicable by Part VII of the Federal Rules of Banruptcy Procedure). *Enron*, 281 B.R. at 841; *2435 Plainfield*, 223 B.R. at 456. The basis for the rule "lies in the distinction between the broad fishing expedition-like nature of the Rule 2004 exam … and the more restrictive nature of discovery under Fed. R. Bankr. P. 7026–7037." *2435 Plainfield*, 223 B.R. at 456 (internal citations omitted); *Enron,* 281 B.R. at 841 (citing *Dinubilo*, 177 B.R. at 939–40) (noting limitations on rights of witnesses in Rule 2004 examinations). Rule 2004 should not be treated interchangeably with discovery under other provisions of the Federal Rules of Bankruptcy Procedure. Indeed, without any limiting principles on the use of Rule 2004 as a discovery tool, the Bankruptcy Rules' incorporation of the Federal Rules of Civil Procedure for conducting discovery in contested bankruptcy matters would be rendered superfluous. *Dinubilo*, 177 B.R. at 940. Here, Movants have already instituted numerous adversary proceedings on core issues that would unavoidably and necessarily be implicated in their requested Rule 2004 discovery. As a result, Movants cannot use Rule 2004 as a "back door through which [they] could avoid using the Federal Rules of Civil Procedure." *Enron*, 281 B.R. at 841.

Movants have failed to meet their burden under Rule 2004 to establish that their requested Rule 2004 examination is proper in light of the pending Adversary Proceedings they (and others) have commenced. *See Freeman v. Seligson,* 405 F.2d 1326, 1336 (D.C. Cir. 1968) (where related adversary proceedings are pending, "the examiner has the burden of establishing that 'good cause' exists for the taking of the examination."); *Enron,* 281

18

B.R.at 842, 844 (movants failed to "allege[], much less substantiate[]" the need for Rule 2004 discovery where they were parties to an adversary proceeding and the relief sought was "nothing more than a pretext for discovery" in the adversary proceeding); *In re Wash. Mut. Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding.").  To establish good cause for a Rule 2004 examination, the party requesting the examination must demonstrate that an examination is reasonably necessary to protect its legitimate interests.  *In re Hammond*, 140 B.R. 197 (S.D. Ohio 1992).  As shown below, Movants cannot establish good cause that a Rule 2004 fishing expedition is reasonably necessary where they have already commenced the Adversary Proceedings and where discovery must be confined to those proceedings in accordance with the Federal Rules of Civil Procedure.

### A.  Movants Fail to Show the Pending Proceeding Rule Does Not Apply

The GO Group seeks to sidestep the pending proceeding rule by arguing it should not apply because no discovery has been sought within the 189 Proceeding.  GO Motion at 18 ("the [pending proceeding] doctrine has no application here, where the Movants are seeking Rule 2004 discovery in the main Title III case, not in an adversary proceeding).[28] The GO Group overlooks that once a litigant has enough information to file a complaint or motion, as the GO Group has done, it can no longer avail itself of Rule 2004.

---

[28]   National and Ambac make no reference to the pending proceeding rule and Ambac does not even mention that it has commenced the 159 Proceeding.  (National relegates to a footnote (National Br., n. 10) the existence of the 125 Proceeding.)

19

The GO Group cites no support for its erroneous contention, which would negate the purpose of the pending proceeding rule, because no support exists.  If this facile argument were correct, any party to an adversary proceeding would be incentivized to seek discovery through Rule 2004 so as to avoid the limitations of discovery under Part VII of the Bankruptcy Rules.  Instead, it is well established that the pending proceeding rule is dispositive even though discovery has not yet commenced, or has been stayed, in the pending proceedings.  *See Enron*, 281 B.R. 836 (movants not entitled to Rule 2004 discovery under the pending proceeding rule even though discovery had been stayed in the pending proceeding); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 27 (Bankr. S.D.N.Y. 1996) (once an adversary proceeding had been commenced, discovery under Rule 2004 must cease and discovery in furtherance of the litigation is properly obtained through the Federal Rules of Civil Procedure).

Further, it would be particularly inappropriate to permit Rule 2004 discovery here because doing so would enable Movants to circumvent the Court's orders deferring discovery pending motions to dismiss.[29]  It is a quintessential purpose of the pending proceeding rule to prevent exactly this type of attempt to "back door" the proper discovery protocol in the adversary proceedings by seeking expanded discovery in the bankruptcy case.

---

[29]   *See supra* n. 8.

### B.  The Court's Discretion Does Not Override the Pending Proceeding Rule

The GO Group's argument that the Court retains discretion to determine whether the requested Rule 2004 discovery is appropriate under the particular circumstances of the case is also without merit.  GO Motion at 18.  The Court's discretion to grant Rule 2004 discovery despite the pendency of adversary proceedings relates to granting discovery on issues *unrelated* to pending proceedings.  Indeed, the very case Movants cite for their proposition that the Court can override the pending proceeding rule (GO Motion at 18), denied Rule 2004 discovery because it found that the movants could not persuasively establish that the Rule 2004 discovery they sought was meaningfully different from subjects at issue in the adversary proceeding they initiated.  *Bennett Funding*, 203 B.R. at 29-30.

*In re Noone*, relied upon by the GO Group (GO Motion at 18), actually undermines their position.  *In re Noone v. St. Cyr (In re Noone)*, 188 B.R. 710, 713 (Bankr. D. Mass. 1995).  There, the debtors commenced an adversary proceeding to challenge a foreclosure sale based on a theory of collusion.  The court noted that *prior* to initiating the proceeding, the debtors could have sought discovery by way of Rule 2004, but failed to do so.  *Id.*  Once the adversary proceeding had commenced, however, that discovery device was no longer available to the debtors.[30]

---

[30]   As the Court noted: "The foreclosure sale took place on July 25, 1995, and the Debtors commenced this adversary proceeding on September 22, 1995. Accordingly, they had two months to conduct discovery by way of Rule 2004 examinations to obtain evidence of collusion."  *Id.* at 713.

21

Finally, as noted above, the distinction between discovery in a bankruptcy case and an adversary proceeding is expressly recognized by Puerto Rico's Local Bankruptcy Rules. Movants, in fact, concede that "it is true that the Puerto Rico's Local Bankruptcy Rules direct that Rule 2004 'is inapplicable to pending adversary proceedings and contested matters.'" GO Motion at 17 (citing P.R. LBR 2004-1), but provide no rationale for ignoring the Rules.

### C. The Requested Rule 2004 Discovery Duplicates the Issues Raised in the Adversary Proceedings

It is obvious why Movants did not even attempt to show that the materials they seek are unrelated to the Adversary Proceedings. They cannot. They simply contend that applying the pending proceeding rule to prevent them from seeking discovery via Rule 2004 is too broad an application of the doctrine, inexplicably relying on *Bennett Funding.* GO Motion at 18. That case proves the opposite. In *Bennett Funding,* the complex nature of the relationship between the parties and the subject matter of the requested Rule 2004 discovery rendered the requests inseparable from the issues raised in the adversary proceedings. *See id.,* 203 B.R. at 30. There, the court issued an order to show cause as to why a trustee, who had initially been granted Rule 2004 discovery, should not be compelled to conduct discovery under the Federal Rules of Civil Procedure once adversary proceedings had been initiated. Despite the trustee's representations that no matter raised in the pending adversary proceedings would be addressed in the Rule 2004 discovery, the court found that, because of the "financial superweb" created by defendants, it would be difficult, if not impossible, to differentiate whether and to what extent information obtained from Rule 2004 would be unrelated to the parties and subject matter of the

22

adversary proceeding.  *Id.* at 29-30.  Based on this analysis, the court held that the trustee was limited to discovery under the Federal Rules of Civil Procedure.

Puerto Rico's financial system and economy form a "financial superweb" on a virtually unprecedented scale in the history of municipal restructuring law.  The complexity and interconnectedness of Puerto Rico's economy is such that it is impossible to pull one thread without tugging on the others.  Where, as here, a movant has already commenced an adversary proceeding putting at issue matters regarding Puerto Rico's finances that are inextricably tied to the matters for which it seeks Rule 2004 discovery, discovery must be sought under the Federal Rules of Bankruptcy Procedure because the interconnected nature of Puerto Rico's restructuring renders the requested Rule 2004 discovery unavoidably relevant to the adversary proceeding.

To show the overlap among the Rule 2004 requests and the issues underlying the Adversary Proceedings, the Oversight Board has prepared four charts that summarize major areas of commonality, which are annexed as Exhibits A, B, C and C-1 to the Mungovan Decl.

As demonstrated in Exhibit A, the materials sought by National pursuant to Rule 2004 discovery obviously relate to the issues it has raised in the 125 Proceeding.  In the 125 Proceeding, the National/Assured Group seeks declaratory and injunctive relief on the basis the so-called "Illegal Fiscal Plan" violates PROMESA and the U.S. Constitution, and among other things, seeks to "stay confirmation of any plan of adjustment in the Title III proceedings pending development of a fiscal plan compliant with PROMESA and the U.S. Constitution."  125 Proceeding *Adverysary Complaint* [ECF No. 1], at 151; *see supra* at

7-9 (describing the 125 Proceeding).  Yet, while the National/Assured Group is actively

litigating the legality of the Fiscal Plan under PROMESA as part of the 125 Proceeding, it

is simultaneously seeking Rule 2004 discovery to conduct "an examination of documents

and key witnesses concerning the projections in the Fiscal Plan."  National Motion at 2.  It

is clear that Rule 2004 discovery is simply an alternative vehicle for National and Assured

to obtain materials to use in the 125 Proceeding or in a confirmation hearing.  This is

precisely what the pending proceeding rule seeks to prevent, and the National/Assured

Group should not be allowed to use Rule 2004 as a back door to circumvent the Part VII of

the Federal Rules of Bankruptcy Procedure.

Exhibit B shows the same point regarding the 189 Proceeding.  There, the

plaintiffs, including some members of the GO Group, claim priorities in bonds issued or

guaranteed by the Commonwealth, as well as contract and statutory liens.  As explained

earlier (*supra* at 9-10), the 189 Proceeding plaintiffs claim rights in two streams of

revenue: (1) proceeds of certain taxes and fees earmarked to pay instrumentality debt

(HTA, MBA, PRCCDA, and PRIFA) but subject to clawback to pay general obligation

debt ("GO Debt") when available resources are insufficient to do so; and (2) proceeds of

property taxes purportedly required by statute to be levied and collected and segregated in

a trust to pay GO debt.  As with the 125 Proceeding, the plaintiffs in the 189 Proceeding

allege that the Fiscal Plan and the Commonwealth budget violate PROMESA because they

fail to "respect lawful priorities or lawful liens" and disregard Commonwealth law.

The majority of the GO Group's 2004 requests overlap with the issues at stake in

the 189 Proceeding.  The 2004 requests relate to the Commonwealth's budget and to

assumptions or conclusions in the Fiscal Plan concerning debt sustainability, estimates of revenues and expenses, and measures to increase reforms or decrease expenses – all issues raised in the 189 Proceeding.  As detailed in Exhibit B, the overlap is manifest.  The GO Group should not be permitted to circumvent the Federal Rules of Bankruptcy Procedure by seeking Rule 2004 discovery.

Finally, as demonstrated in <u>Exhibit C</u>, Ambac's requests violate the pending proceeding rule as well.  In the 159 Proceeding, Ambac seeks, among other things, a declaratory judgment that the Fiscal Plan and Fiscal Plan Compliance Act are unconstitutional and illegal, an injunction against presenting, continuing, modifying, or confirming any plan of adjustment premised on the "illegal Fiscal Plan" or the Fiscal Plan Compliance Act, and an injunction against taking any other actions based upon, or pursuant to, the Fiscal Plan or the Fiscal Plan Compliance Act.  *See* 159 Proceeding, *Adversary Complaint* [ECF No. 1], at 7.  Ambac contends the Fiscal Plan is "the centerpiece of the PROMESA framework" and "***escalates*** and entrenches as the foundation of Puerto Rico's future the ongoing lawlessness."  *Id.* at 4 (emphasis in original).  Ambac's Rule 2004 requests, which overlap with its Rule 7026 request in the 159 Proceeding (*see supra* n. 22), are directly relevant to Ambac's litigation over the legality of the Fiscal Plan, from which, Ambac contends, all subsequent Commonwealth actions must flow (including its actions with respect to HTA).[31]  Thus, for example,

---

[31]    *Id.* at 4 ("The Fiscal Plan is the centerpiece of the PROMESA framework—not only must all Commonwealth budgets and laws adhere to it, but any consensual "Title VI" restructuring or involuntary "Title III" restructuring under PROMESA must also be premised on it. Thus, a Fiscal Plan that flouts constitutional and statutory rights will require continued constitutional breaches and illegal acts by the Commonwealth to adhere to it. That is exactly what is happening now in Puerto Rico.").

Ambac's Rule 2004 Requests No. 9 and 10[32] seek documents regarding the Oversight

Board's decision to reject the February 28, 2017 fiscal plan and then certify the March 13,

2017 Fiscal Plan, which implicates directly the 159 Proceeding's challenge to whether the

Fiscal Plan complies with PROMESA § 201(b) and the various factors that the Oversight

Board had to consider in certifying the Fiscal Plan.

      While it is Movants' burden to show that their requests are unrelated to the

Adversary Proceedings, the charts annexed to the Mungovan Decl. as Exhibits A, B, C and

C-1 demonstrate the opposite is the case:  each of the requests is related to the issues raised

in the Adversary Proceedings.  Even if a few of the 181 requests could debatably be seen as

unrelated (which, as described above, cannot be shown since all issues relating to the

Puerto Rico insolvency are inescapably intertwined), Movants should not be allowed to

embark on a full blown Rule 2004 fishing expedition simply because they threw everything

at the wall to see what would stick.  It is an understatement to say that it would be an

inefficient use of the Debtors' limited resources to respond to such discovery when, if

appropriate, discovery can be taken through more appropriate avenues.  Moreover, the

potential for Movants to use Rule 2004 discovery authority as a "back door" to obtain

materials to aid their current litigation would be too high.

---

[32]    Ambac Motion, Schedule A, Request No. 9, p. 8: "All documents, communications, studies, and/or
analyses concerning the Oversight Board's decision to reject the February 28 Fiscal Plan."  Request No.
10, p. 9: "All documents, communications, studies, and/or analyses concerning the Oversight Board's
decision to certify the Fiscal Plan."

26

## II.    THE OVERSIGHT BOARD AND COMMONWEALTH
HAVE PROVIDED EXTENSIVE DISCLOSURE

Although, as demonstrated above, Movants have failed to satisfy their burden to

demonstrate an entitlement to pursue Rule 2004 examinations given the pendency of the

Adversary Proceedings, they should not be permitted to obscure this flaw by arguing that

they have been denied any meaningful transparency into the restructuring process.  As

demonstrated above (pp. 12-16), the Commonwealth (via AAFAF) and Oversight Board

have made and are continuing to make substantial disclosures on a voluntary basis.  As a

result, and beyond the legal infirmities underlying the Motions, the Court should recognize

the Oversight Board and the Commonwealth are, contrary to the specter Movants struggle

to present, committed to conducting the restructuring process with transparency.

The weakness of Movants' otherwise conclusory accusations that they have been

denied essential disclosure is amply demonstrated by the "two examples" – presumably

their strongest –they offer to illustrate their inadequate disclosure claims. GO Motion at

10-11.

In Request 10, Movants seek "a fully functional version of the macroeconomic

growth model used to calculate the forward looking projections contained in the Fiscal

Plan . . . ."  GO Motion at 10.  They ignore that they were given a live macroeconomic

growth model in the data room months ago, located in file 1.1.5.3.2, "Puerto Rico

Macroeconomic Model."  By "live," the Debtors mean that all interested parties can

manipulate the assumptions to generate their own output.  In addition, as a result of the

mediation session held on September 13, 2017, AAFAF and Oversight Board economists

will make additional data files available to creditors and their economic advisors relative to

27

information sought by this request, subject to their executing the appropriate NDAs.  This

further disclosure will include the source files used as inputs into econometric and

statistical software that generated the macroeconomic forecast used in the certified Fiscal

Plan.[33]

In the only other example in the GO Group's memorandum, relating to Request 17,

Movants seek voluminous information regarding the underpinnings of the Bridge Analysis

created by Ernst & Young ("E&Y") and utilized by the Oversight Board to estimate

expenses for FY 2017.  GO Motion at 10-11.  According to the Request itself, Movants

seek the underlying "Bridge" report prepared by the Commonwealth and each of the

versions that preceded the final version as well as every piece of underlying data.  To

describe this request as overly broad, unduly burdensome and wasteful is an

understatement.  In the first instance, Movants have the Bridge Analysis prepared by E&Y,

which devotes substantial attention to the Commonwealth's Bridge.  They also have, or

shortly will have (upon signing the new NDA), the power point presentation E&Y

prepared for the mediation regarding its Bridge Analysis (this presentation is filed in the

data room in File Folder 2.1.1.3, titled "20170830Mediation session_Commonwealth

Topics of interest v Final").  Movants nonetheless seek every morsel of information that

went into and relates to preparation of the Bridge.  This is excessive and unnecessary.

In preparing the Bridge, the Commonwealth had audited financials only for

FY2014.  The calculation of expenses in order to "bridge" to the FY2017 forecast lacked

---

[33]   AAFAF has determined not to object to the production of financial models relative to request 10 on the
basis that they are proprietary, so long as properly executed NDAs are in place.

audited expense figures for FY 2015 and FY 2016.  The audit of FY 2015 is in the process

of being finalized and the updated preliminary results for FY 2016 are also in process.  The

audited and updated figures for FYs 2015 and 2016 will be utilized by E&Y in preparing an

updated Bridge Analysis that is projected to be completed by the end of this calendar year.

Under these circumstances, Movants' effort to use Rule 2004 to ferret out every

conceivable detail of the soon to be superseded version of the Bridge cannot be justified

under the most expansive reading of Rule 2004, even if they were entitled to invoke this

Rule in this context, which they are not.

In sum, Movants have failed to present an accurate picture of the substantial

disclosure made by the Commonwealth and the Oversight Board and, most significantly,

the recent and continuing disclosure being made.  They have not established good cause for

the Rule 2004 disclosure they seek.  Moreover, the law could not be clearer that Rule 2004

cannot be utilized, as Movants plainly seek to do, as a back door method to obtain

discovery relative to their Adversary Proceedings.

### III.   THE DELIBERATIVE PROCESS PRIVILEGE
BARS THE PRODUCTION OF CERTAIN DOCUMENTS

The deliberative process privilege "is designed to safeguard and promote agency

decisionmaking" by assuring, among other things, "'that subordinates within an agency

will feel free to provide the decisionmaker with their uninhibited opinions and

recommendations.'"  *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st

Cir. 1992) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.

Cir. 1980)).  The privilege applies to communications that are "(1) predecisional, that is,

'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related

to the process by which policies are formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The deliberative process privilege is the federal counterpart of Puerto Rico's official information privilege. *See W Holding Co. v. Chartis Ins. Co. of P.R.*, 42 F. Supp. 3d 319, 324 (D.P.R. 2014) (characterizing Puerto Rico's official information privilege and federal deliberative process privilege as "essentially co-extensive").

Many of Movants' requests strike at the core of the deliberative process privilege.

In seeking disclosure pursuant to Rule 2004, certain of Movants' requests implicate government deliberations related to (1) the Commonwealth's development of budget and assumptions or conclusions in the Fiscal Plan concerning debt sustainability, estimates of revenues and expenses, and measures to increase reforms or decrease expenses, and (2) public policy decisions including enacting legislation, complying with PROMESA, and initiating a Title III proceeding. While the Fiscal Plan itself and certain financial inputs into the Fiscal Plan are not subject to the privilege (and, as explained earlier, the Oversight Board has made substantial disclosure in addition to the Fiscal Plan itself), the deliberative materials utilized to create the final work product are covered by the privilege and immune from disclosure. *See Dep't of Interior*, 532 U.S. at 8 (deliberative process "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,"); *City of Virginia Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1255 (4th Cir. 1993) ("the

government need not anchor documents to a single, discrete decision amidst ongoing

deliberative processes"); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp.

2d 13, 31 (D.D.C. 2011) (post-decisional "documents properly fall under the deliberative

process privilege when they recount or reflect pre-decisional deliberations" and documents

"generated as part of a continuous process of agency decision-making" were protected by

the deliberative process privilege).

More specifically, among other things, Movants seek:

(a) "all non-identical copies and drafts of each document";[34]

(b) analyses regarding evaluation of the Commonwealth's economic condition and how the treatment of debt service will affect ability to access capital markets;[35]

(c) analyses used to create or assess reasonableness of the Fiscal Plan and the determination of what would constitute a sustainable debt load;[36]

(d) "Documents, Communications, analyses or models relating to the request to amend the Fiscal Plan in the letter from Gerald J. Portela Franco, Executive Director of AAFAF, to Natalie A. Jaresko, Executive Director of [the Oversight Board], on May 31, 2017;[37]

---

[34]    GO Motion, Schedule A, ¶ 4.

[35]    *Id.*, Request No. 15, pp. 20-21: "[A]ny analyses, including models (in native format) and data, regarding the creditworthiness of the Territorial Government, including but not limited to any financial modeling, evaluation or analysis of (1) the economic condition, economic activity, and economic performance of the Territorial Government, or (2) how the amounts available for debt service proposed on page 8 of the Fiscal Plan, the *Assured* Motion, the *Peaje* Opposition, the *PREPA* Opposition, the Budget, or the August 4, Letter, will, if implemented, affect Puerto Rico's future ability to access the capital markets as required by PROMESA § 201(b)(1). To the extent that any model(s) were used to estimate the impact that the proposed haircut reflected in the Fiscal Plan will have on future market access, this Request explicitly includes any backup or linked spreadsheets (in native format) and all data run through any piece of these model(s)."

[36]    *Id.*, Request No. 16, p. 21: "Documents and Communications concerning benchmarking analyses You used to create the Fiscal Plan or assess the reasonableness thereof. This Request explicitly includes, but not limited to, any analyses comparing Puerto Rico's debt situation to that of other economies that were relied upon in determining what would be a sustainable debt load (*cf.* Fiscal Plan at 27-29), including Documents sufficient to identify any comparable economies considered."

[37]    *Id.*, Request No. 18, p. 21.

31

(e) "Any non-privileged Documents, analyses or Communications that reflect Your basis for stating, 'No podemos considerar el reintegro de un contribuyente como una deuda del gobierno con un acreedor.' [Google Translate: "We are not able to consider reimbursement of a taxpayer as a government debt to a creditor."]  House Bill 1135;[38] and

(f) "Documents relating to [the Oversight Board's] request for 'Amendment No. 1: Furlough and Christmas Bonus Amendment to the Commonwealth's Proposed Fiscal Plan,' in the March 13 Resolution, which required a furlough program rather than a reduction in the government work force."[39]

Permitting discovery of all drafts and internal memoranda leading up to the submission, review and certification of the Fiscal Plan, and the above-listed documents that fall within the deliberative process would undermine the essential interests that the privilege is intended to protect.  First, it would discourage the free exchange of ideas among public officials by subjecting their private deliberations to public scrutiny.  *See Dep't of Interior*, 532 U.S. at 8-9 ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government"); *Providence Journal Co.*, 981 F.2d at 557 (privilege intended to encourage "uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism").  Second, it could confuse and mislead the public by "suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Providence Journal Co.*, 981 F.2d at 557.

---

[38] *Id.*, Request No. 46, p. 30.

[39] *Id.*, Request No. 53, p. 32.

32

Movants have not articulated a countervailing interest in the requested deliberative materials sufficient to overcome the inevitable and destructive chilling effect that would result from invading the privilege.  Instead, they seek the requested materials for their own pecuniary interests, contrary to the paramount interests of the Commonwealth, as recognized by Congress in adopting PROMESA, in resolving Puerto Rico's financial crisis.  In addition to the other reasons for denying the Motions, the Motions should be denied to the extent that Movants seek discovery of deliberative materials.

*[Remainder of Page Intentionally Left Blank]*

93229719v30

WHEREFORE the Debtors respectfully request the Court to (a) deny the National

Motion, (b) deny the GO Motion, (c) deny the Ambac Motion, and (d) grant the Debtors

such other relief as is just and proper.

Dated: September 19, 2017                 Respectfully submitted,
       San Juan, Puerto Rico

                                          */s/ Timothy W. Mungovan*
                                          Martin J. Bienenstock
                                          Stephen L. Ratner
                                          Timothy W. Mungovan
                                          Paul V. Possinger
                                          (Admitted *Pro Hac Vice*)
                                          **PROSKAUER ROSE LLP**
                                          Eleven Times Square
                                          New York, NY 10036
                                          Tel:  (212) 969-3000
                                          Fax:  (212) 969-2900

                                          *Attorneys for the Financial Oversight and
                                          Management Board as representative for
                                          the Debtors*

                                          Hermann D. Bauer
                                          USDC No. 215205
                                          **O'NEILL & BORGES LLC**
                                          250 Muñoz Rivera Ave., Suite 800
                                          San Juan, PR 00918-1813
                                          Tel:  (787) 764-8181
                                          Fax:  (787) 753-8944

                                          *Co-Attorneys for the Financial Oversight
                                          and
                                          Management Board as representative for
                                          the Debtors*

93229719v30