0 15 DS 10 6 1

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**DEPARTAMENTO DE SALUD**
**SAN JUAN, PUERTO RICO**

*mayo/abril/*
*mayo/jun/oc.*

**CONTRATO PARA PRESTAR SERVICIOS DE EDUCACION MÉDICA GRADUADA**
**LOS PROGRAMAS DE RESIDENCIA DEL HOSPITAL UNIVERSITARIO**
**DR. RAMON RUIZ ARNAU**

**COMPARECEN**

**DE LA PRIMERA PARTE: EL DEPARTAMENTO DE SALUD,** representado por su Secretaria de Salud, **ANA C. RIUS ARMENDARIZ, MD,** mayor de edad, soltera, médico de profesión y vecina de Guaynabo, Puerto Rico, o representado por el Subsecretario de Salud **GREDUVEL DURAN GUZMAN, MD, MPH,** mayor de edad, casado y vecino de San Juan, Puerto Rico, quien comparece en representación de la Secretaria de Salud y está autorizado a firmar este contrato en virtud de la delegación hecha por la Secretaria en comunicación del 16 de septiembre de 2013, de conformidad con la Ley Núm. 81 de 14 de marzo de 1912, según enmendada en adelante denominado la **PRIMERA PARTE.**

**DE LA SEGUNDA PARTE: LA UNIVERSIDAD CENTRAL DEL CARIBE** una corporación sin fines de lucro, creada al amparo de las Leyes del Estado Libre Asociado de Puerto Rico, representada por, el **Dr. José Ginel Rodríguez Irizarry** en calidad de Presidente, mayor de edad, soltero y vecino de **San Juan,** Puerto Rico, en adelante denominada la **SEGUNDA PARTE.**



**AMBAS PARTES LIBRE Y VOLUNTARIAMENTE EXPONEN:**

A tenor con la Ley Núm.81 de 14 de marzo de 1912, según enmendada, el Memorando Circular Número 07-93, emitido el 8 de marzo de 1993 y el Boletín Administrativo Núm. OE-1991-24, emitido el 18 de junio de 1991, según enmendado por el Boletín Administrativo Núm. OE-1992-52 de 28 de agosto de 1992, **AMBAS PARTES** convienen en efectuar este contrato, con arreglo a las siguientes:

La **PRIMERA PARTE** es dueña, dirige, administra y opera el Hospital Universitario Dr. Ramón Ruiz Arnau (HURRA), ubicado en el Municipio de Bayamón, de aquí en adelante denominado **"EL HOSPITAL".**

La **PRIMERA PARTE** ha acordado otorgar el presente contrato a **LA SEGUNDA PARTE** para qué ésta última utilice el Hospital como taller clínico para la enseñanza post graduada de la medicina y de otras profesionales aliadas a la salud que ofrezca la Universidad Central del Caribe.

Acuerdan LAS **PARTES** que este es un contrato dirigido a la prestación de servicios de docencia en los programas de Educación Médica Postgraduada en el Hospital Universitario Dr. Ramón Ruiz Arnau, en virtud del cual la facultad docente supervisa al cuerpo de residentes en la prestación de servicios médicos y ofrece las actividades educativas en dichos programas.

**CLAUSULAS Y CONDICIONES**

**PRIMERA: SERVICIOS:**

A.   LA **UNIVERSIDAD** será responsable de efectuar las gestiones necesarias para mantener en vigor la acreditación de los antes referidos programas posgraduados de LA **PRIMERA PARTE** existentes en **EL HOSPITAL,** conforme a las exigencias establecidas por el "Accreditation Council of Graduate Medical Education" (ACGME) y La Junta de Licenciamiento y Disciplina Médica de Puerto Rico.

113

2 0 15 **DS 10 6 1**

## I. FACULTAD

A.   El personal docente contratado por **LA UNIVERSIDAD**, que trabaje bajo las disposiciones de este contrato, deberá pertenecer a la facultad de **LA UNIVERSIDAD** y deberá ser miembro de la Facultad Médica de **EL HOSPITAL**.

Como tal, cumplirá con las normas y reglamentos de **LA UNIVERSIDAD** y de **EL HOSPITAL** participará en todas aquellas actividades dirigidas a mantener las acreditaciones que **EL HOSPITAL** y **LA UNIVERSIDAD** tengan al presente o puedan tener en el futuro, como lo es la participación en los distintos comités de la Facultad que laboran en estos menesteres.

B.   La responsabilidad de la supervisión de los médicos en adiestramiento postgrado de los programas mencionados previamente en este contrato recae en el personal docente de **LA UNIVERSIDAD** el cual documentará las gestiones docentes que efectúe.

La atención y el cuidado de los pacientes será responsabilidad primaria del médico "attending". La **SEGUNDA PARTE** se asegurará de que los residentes de los primeros niveles presten sus servicios bajo la supervisión directa de un "attending" o un "junior attending".

La **SEGUNDA PARTE** se compromete a cumplir con las disposiciones en torno a los turnos de guardia, de la Sentencia Declaratoria del Tribunal superior de Puerto Rico en el caso civil KPE99-1412, la cual forma parte de este contrato.



C.   **LA SEGUNDA PARTE** no discriminará por razones de raza, sexo, edad, color, nacimiento, origen, credo religioso, creencias políticas o condiciones socioeconómicas en las gestiones que realice para el cumplimiento de la obligación de servicios de educación y supervisión a médicos en adiestramiento contraída en virtud del presente contrato y los privilegios y responsabilidades del Hospital Universitario Dr. Ramón Ruiz Arnau.

D.   **LA SEGUNDA PARTE** se compromete a mantener funcionando los Programas de Residencia, conforme a las exigencias establecidas por la "Accreditation Council on Graduate Medical Education" (**ACGME**), de forma tal que se cumplan los requisitos para la acreditación de dichos programas.

E.   Se hace formar como parte de este contrato una copia del desglose detallado de los servicios a ofrecerse para el Programa de Residencia de Medicina Interna con las respectivas cantidades asignadas que totalizarán los **$210,378.88** anuales.

F.   En el caso de que los médicos se contraten a través de grupos por **LA UNIVERSIDAD**, estos grupos deberán también tener un seguro de responsabilidad médica grupal por mínimo de cien mil dólares ($100,000.00) por incidente y trescientos mil dólares ($300,000.00) por agregado.



2

2 0 1 5  DS 1 0 6 1

G.    Los médicos contratados por la **UNIVERSIDAD,** para prestar servicios bajo este contrato, se comprometerán a atender con prontitud, esmero, eficiencia y de acuerdo a las exigencias profesionales generalmente reconocidas por la profesión médica para la práctica de la medicina y sus especialidades, a todo aquel paciente que recurra al **EL HOSPITAL** en busca de la atención médica a la que **LA UNIVERSIDAD** se obliga a prestar bajo contrato.  El servicio será brindado independientemente de la capacidad de pago del paciente.

H.    Los médicos de guardia estarán disponibles para **EL HOSPITAL** en todo momento, "on call" o físicamente presente, conforme a los anejos que detallan los servicios a proveedores.  En caso de fuerza mayor, en la que el médico de guardia no pueda estar disponible, será la responsabilidad del médico y del Director del Departamento y de **LA UNIVERSIDAD** conseguir quien los sustituya.

I.    Los médicos bajo contrato con **LA UNIVERSIDAD** dentro de este contrato podrán ser activados conforme al Plan Institucional de Contingencia de Desastres Internos y Externos pre-establecido y programado por el Comité de Seguridad del **HOSPITAL.**   Todos los facultativos deberán responder conforme al plan, según el tipo de contingencia para la cual serán orientados.

J.    La responsabilidad de la supervisión de los residentes de los programas de **LA UNIVERSIDAD** recae en los profesores y facultativos de esta.

K.    Los médicos contratados por **LA UNIVERSIDAD** igualmente cumplirán con las tareas que la Dirección del **HOSPITAL** le asigne, a los fines de mantener la acreditación del **HOSPITAL** por todas las agencias acreditadoras y certificadoras estatales y federales.



L.    Los médicos contratados por **LA UNIVERSIDAD**  quienes incurra en faltas crasas de competencia profesional, faltas graves a la moral o a la ética profesional o violen cualquiera de los incisos de este contrato, no podrán continuar prestando servicios a LA **PRIMERA PARTE** bajo los términos de este contrato, de acuerdo al debido proceso de los estatutos, reglas y reglamentos de la Facultad Médica del **HOSPITAL.**

M.    Los Directores de los Departamentos y /o Secciones aquí contratados, será seleccionados, de conformidad con las normas y reglamentos de la Facultad Médica del **HOSPITAL,** y su reclutamiento o selección se someterá ante la consideración del Secretario de Salud o su representante en el Gobierno del **HOSPITAL** para confirmación o rechazo.  Dichos directores serán evaluados periódicamente, de conformidad con las normas y criterios pertinentes que tenga a bien seleccionar LA **UNIVERSIDAD,** en consulta con el Gobierno del **HOSPITAL.**  La Facultad como siempre será de carácter abierto y no se podrá discriminar en el paciente de la Reforma a la hora de otorgar privilegios a un médico que así lo solicite siempre y cuando cumplan con todos los credenciales y lo establecido por los estándares y los reglamentos de la Facultad.  Dichos médicos facultativos no estarán relacionados contractualmente con **LA UNIVERSIDAD.**

N.    **LA UNIVERSIDAD** se compromete a que los facultativos contratados utilicen  de forma preferencial las facilidades y servicios del Hospital Universitario Dr. Ramón Ruiz Arnau, para el tratamiento y hospitalización de todos los pacientes atendidos, en especial los pacientes de Mi Salud.





**3**

( 2 0 15 DS 10 6 1

O. Será responsabilidad de **LA UNIVERSIDAD** velar porque los médicos contratados, sub-contratados, internos, residentes, "fellows" y estudiantes de medicina completen los expedientes médicos de los pacientes en forma clara y detallada, incluyendo cual ha dado el tratamiento administrado, señalando las observaciones haciendo recomendaciones relevantes. Además, **LA UNIVERSIDAD** velará porque sus médicos completen el expediente médico de pacientes Medicare, a más tardar antes de cinco (5) días laborables a partir de la fecha en que el expediente está disponible al facultativo en cuestión. En caso de pacientes médico-indigente y otros, el expediente se completará a más tardar dentro de los quince (15) días laborables a partir de que el expediente esté disponible al facultativo en cuestión. Será responsabilidad que el Facultativo conteste en un periodo no mayor de treinta (30) días, todos los casos médicos en cuestión y a su vez, los interrogatorios y el resumen de todos aquellos casos de carácter médico legal cuando estos sean requeridos por las entidades jurídicas o sus representantes, a partir de que el expediente esté disponible al facultativo en cuestión. El incumplimiento de esta acción será notificado oficialmente por escrito por el Director Ejecutivo del Hospital o su representante al Decano de la Escuela de Medicina quien tendrá quince (15) días a partir del recibo del aviso o el periodo que establezca el ente jurídico para remediar la situación.

De no ser remediada dentro de dicho término ello será motivo para que **LA PRIMERA PARTE** retenga la mensualidad a pagar a **LA UNIVERSIDAD**, hasta tanto los expedientes médicos sean debidamente completados. El expediente médico será propiedad exclusiva del paciente y **EL HOSPITAL** será su custodio.

P. Las partes reconocen que las funciones de docencia en un taller hospitalario automáticamente y obligatoriamente implican servicio a los pacientes y clientes de la **PRIMERA PARTE**. Por lo tanto la facultad de la **SEGUNDA PARTE** se comprometen a adherirse a las guías de práctica reconocidas en la industria de la salud y conforme con patrones de utilización responsables. A tales efectos se comprometen a:



1. Actuar como Attending. Los Attending/Hospitalistas admitirán a todos aquellos pacientes que no tengan su propio Médico de cabecera y serán responsables por estos pacientes hasta que sean dados de alta.
2. Los Attending /Hospitalistas pasarán visita, diariamente in situ (no por teléfono) incluyendo fines de semana.
3. Los Attending/Consultores atenderán a todos los pacientes admitidos sobre los cuales se les solicite consulta por otros Attending ó médicos de cabecera.
4. Todos los Attending participarán de un programa de guardias "On Call" según programado por el Jefe de Servicio de la Facultad Médica del hospital o el Director Médico. Estas guardias pueden coincidir con los programas de guardias de Attending de los Residentes.
5. Los Attending supervisarán procedimientos invasivos que se realizan en los cuartos de pacientes (bed-side), como canalización de vena sub-clavia para velar el cumplimiento con protocolos y garantizar la seguridad de los pacientes.
6. Los Attendings "On Call" (según programa mensual) pueden y deben intervenir en la fase estabilizadora de pacientes de Sala de Emergencia y admitir, dar de alta o trasladar al paciente si considera que no debe quedarse en el Hospital.

4

( 2 0 1 5 DS 1 0 6 1

Q.   **OBLIGACIONES EDUCATIVAS DE LA FACULTAD**: (Estas actividades pueden variar según el programa de residencia)

1.   **Grand Rounds:** Actividad docente dirigida por un facultativo donde participen los residentes y facultativos (duración 1 Vi a 2 horas).

2.   **Pase de Visita:** Esto lo hace diariamente cada facultativo con los residentes de su grupo (duración mínima de una (1) hora.

   • El "attending" deberá contrafirmar el historial y físico, RAN (Resident Admission Note) del paciente en menos de 24 horas, luego del residente haber evaluado al paciente. (Artículo KR.2 Medical Record #2)

   • El "attending" sera responsable de contrafirmar diariamente las notas de progreso, el resumen de alta y revisar que la documentación sea la adecuada. Según establecido en los By Laws (Artículo RR 6 Progress Note # 4 y 5)

      El "attending" se compromete a completar la hoja informativa del paciente, antes de los 30 días siguientes al alta.

3.   **Conferencias:** Cada Director de Programa será responsable de tener un programa semanal de conferencias.

4.   **Journal Club:** Uno semanal o cuatro al mes.

5.   **Clínicas:** En cada clínica que participen médicos internos y/o Residentes estará presente el "Attending" quien será responsable de discutir los pacientes y supervisar los residentes en adiestramiento, en el servicio a los pacientes. Todas las intervenciones en las clínicas debe estar documentada la Fecha, Hora, Num. de Licencia y los By Laws (Artículo RR.2 Medical Record # 17)

6.   **Mortalidad y Morbilidad:** Evaluación del 100% de la    mortalidad mensualmente,  y rendir informe al Programa de Mejoramiento Organizacional. Revisar la morbilidad no esperada mensualmente y rendir informe al Programa de Mejoramiento Organizacional. Cada director de programa velara porque exista un calendario mensual para las conferencias de " Mortalidad y Morbilidad". Participan todos los "attendings"  y residentes. (duración 1 a 2 horas)

7.   **Guardias:** Habrá un "Attending" de guardia diariamente para la supervisión de los médicos en adiestramiento. Durante las horas de tarde y noche el residente podrá consultar con el "attending" "on call" vía telefónica y el "attending" se presentara al hospital cuando la situación así lo amerite. Durante los fines de semana y feriados el "attending" asignado realizara pases de visita, discusiones, supervisión y contrafirmara todas las admisiones realizadas por los residentes. (Artículo RR12 # 20 (Trainees and Medical Students Supervisión)

8.   **Evaluaciones Mensuales:** Los facultativos evaluaran a los residentes mensualmente y estas evaluaciones serán auditadas por el director del programa.

9.   **Reuniones:** Reuniones del Comité Institucional para Educación Medica Graduada. Los "attendings" y los residentes deben asistir a reuniones de Evaluaciones de Cuidado Medico y Comité establecidos en la institución tales como: Uso de Sangre y Componentes, Procedimientos Quirúrgicos, Farmacia y Terapéutica, Control de Infecciones, Manejo de Información y Expedientes Médicos, Seguridad Ambiente de Cuidado, Consejo de Calidad, Comité de Utilización y otros comités de Facultad.

10.   **Otras actividades de índole educativa a ser determinadas por la facultad y el director de programa**

11.   Cumplir con las Normas, Políticas y Procedimientos establecidos en la institución, esto incluye pero no lo limita a; Derechos y Responsabilidades de Pacientes, Protocolo No Resucitación (DNR), Protocolo Restricción, Directrices Anticipadas, Protocolo Manejo de Dolor, Donación de Organos, Manejo de Información, Protocolo de Caídas, Protocolo Ulceras, Protocolos Paciente en Ventilador Mecánico, Protocolo de Sedación Consciente, Metas Nacionales de Seguridad de Pacientes (National Safety Goals) y otros. Cumplir con los requisitos de las Agencias que licencian, certifican y acreditan tales como Departamento de Salud (Reglamento 117), Medicare y TJC.

12.   La Facultad Medica se compromete a utilizar el Sistema de Información del Hospital y Expediente Medico electrónico ClinNet, propiedad de la **PRIMERA PARTE.**



B. **LA UNIVERSIDAD,** a través de la Oficina de Educación Médica Graduada del Decanato de Medicina, también será responsable de velar por la calidad de la enseñanza en dichos programas y mantendrá la política institucional requerida por el "Accreditation Council of Graduate Medical Education" (ACGME).

## II. PROGRAMAS DE INVESTIGACION

A. **LA UNIVERSIDAD** proveerá todo el equipo y material a ser usado en sus programas de investigación clínica e informará a la Junta de Gobierno del Hospital sobre la implantación y proceso de los programas que se efectúen en el Hospital.

B. **LA UNIVERSIDAD** proveerá todo el equipo y material de oficina necesario para llevar a cabo sus programas de investigación.

C. Todo programa de investigación que se lleve a cabo en el Hospital será aprobado por el "Institutional Review Board (IRB) y el Gobierno del **HOSPITAL.**

## III. PROGRAMA DE TRABAJO



A. **LA UNIVERSIDAD,** a través de los Directores de Departamento, será responsable de proveer al Director Ejecutivo de **HOSPITAL** o a su representante, el programa de trabajo, no más tarde del día primero del mes, del personal médico internos, residentes, estudiantes y los servicios que éstos prestarán las veinticuatro (24) horas, de forma tal que en todo momento los funcionarios del **HOSPITAL** y de **LA UNIVERSIDAD** sepan los médicos que proveerán los servicios asignados.



B. **LA UNIVERSIDAD** será responsable ante el Gobierno del **HOSPITAL** por el cuidado médico y los servicios médicos prestados por el personal médico provisto y/o supervisado por **LA UNIVERSIDAD** mediante éste contrato.

## IV. MEDICOS EN ADIESTRAMIENTO POSGRADO

A. Los programas posgraduados son de **LA PRIMERA PARTE.**

B. El sueldo y beneficios marginales de los internos, residentes y "Fellows" de los programas posgraduados de la **PRIMERA PARTE** serán sufragados en su totalidad por ésta, quien es su patrono y/o contratante.

C. La **PRIMERA PARTE** proveerá todo el equipo y material necesario para el proceso de docencia postgrado, así como las instalaciones hospitalarias adecuadas y talleres para llevar a cabo las mismas en conformidad con las normas y reglamentos de las agencias acreditadoras estatales y federales.

D. La **SEGUNDA PARTE** mantendrá una Oficina de Educación Médica Graduada, la cual proveerá la estructura administrativa para los antes referidos programas.

E. La **PRIMERA PARTE** permitirá a los médicos en adiestramiento posgraduado participar en el cuidado directo a pacientes para los cuales tengan la habilidad y requisito, según determinado por su nivel de entrenamiento durante su periodo de adiestramiento en el Hospital bajo la supervisión de la facultad de la Universidad Central del Caribe.

Los médicos en adiestramiento posgraduado serán supervisados por la facultad de **LA SEGUNDA PARTE** y residentes de un nivel superior mientras estén en entrenamiento en el Hospital.

**6**

F.   La **SEGUNDA PARTE** proveerá servicios de apoyo tales como Biblioteca, salones para discusiones y seminarios, equipos de computadora, fotocopiadora y audiovisuales, Centro para el Desarrollo de Destrezas Clínicas y Oficina para el Desarrollo de la Facultad.

G.   Los residentes seguirán las reglas y reglamentos del Hospital, del Departamento de Salud y del "Accreditation Council of Graduate Medical Education" (ACGME) que apliquen a los programas correspondientes.

H.   En el proceso de evaluación de los médicos en adiestramiento posgraduado, la **SEGUNDA PARTE** proveerá formas de evaluación que serán completadas por la facultad designada y deberán ser discutidas con médicos en el adiestramiento como parte de su experiencia educativa.

**SEGUNDA: RESOLUCION:**

Este contrato podrá ser resuelto antes de su vencimiento, por cualquiera de **AMBAS PARTES**, mediante notificación escrita a la **OTRA PARTE**, con treinta (30) días de antelación a la fecha de resolución deseada, sin que por ello incurran las **PARTES** entre sí en obligación alguna.

La insuficiencia de fondos será causa suficiente para la terminación inmediata o modificación en la cláusula de Compensación de este contrato.

Serán causas suficientes para que la **PRIMERA PARTE** declare el contrato terminado inmediatamente, por la infracción o incumplimiento por la **SEGUNDA PARTE**, sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices, a las siguientes condiciones y la **PRIMERA PARTE** queda relevada de toda obligación y responsabilidad bajo el mismo:



1.   La infracción o infracciones por la **SEGUNDA PARTE** a la Ley Núm. 1 de 3 de enero de 2012, conocida como Ley de Ética Gubernamental de Puerto Rico.

2.   El desempeño negligente por la **SEGUNDA PARTE** de sus funciones o por el abandono de éstas.

3.   El incumplimiento por la **SEGUNDA PARTE** de los Reglamentos y procedimientos establecidos por la **PRIMERA PARTE.**

4.   La convicción o determinación de causa probable para arresto contra la **SEGUNDA PARTE** por la comisión de algún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

5.   De la **SEGUNDA PARTE** incurrir en actos que van en contravención con legislación de Política Pública, tales como, Hostigamiento Sexual, Discrimen y Uso y Abuso de Sustancias Controladas.

6.   En caso de que la **SEGUNDA PARTE** haya sido acusada, administrativamente o criminalmente, o convicta de haber obtenido fraudulentamente cualquier credencial.

7.   Si la **SEGUNDA PARTE** queda desprovista de su licencia profesional durante la vigencia del contrato o de no mantener su licencia profesional vigente.

8.   Quedar desprovisto de la Licencia Estatal y Federal para la prescripción de Drogas y Narcóticos durante la vigencia de este contrato.

9.   La cancelación o modificación de la póliza de responsabilidad profesional y/o pública de la **SEGUNDA PARTE.**



**7**

_ 0 15 DS 10 6 1

10. La **PRIMERA PARTE** podrá terminar inmediatamente este contrato si en su total y única discreción determina que la **SEGUNDA PARTE** ha incurrido en una violación de los acuerdos de privacidad, confidencialidad y seguridad en cuanto al uso y divulgación de la información de salud protegida de los pacientes de la **PRIMERA PARTE**. Será causa de terminación contractual la falta de notificación a la **PRIMERA PARTE** de cualquier violación al manejo de la Información de Salud Protegida ( Protected Health Information PHI por sus siglas en inglés) por parte de la **SEGUNDA PARTE**, sus asociados y/o sub- contratistas. La **PRIMERA PARTE** se reserva el derecho de referir al Departamento de Salud y Servicios Humanos Federal sobre violaciones no subsanadas de la **SEGUNDA PARTE**.

11. El incumplimiento con las credenciales profesionales necesarias para ejercer las funciones para las que se le contrata, expedidas por la Junta Acreditadora correspondiente.

12. El incumplimiento con cualquier cláusula del contrato será causa suficiente para la terminación inmediata del mismo.

Queda expresamente convenido que la **SEGUNDA PARTE** completará cualquier trabajo que quede pendiente al momento de la resolución, sin que por ello la **PRIMERA PARTE** venga obligada a pagar a la **SEGUNDA PARTE** retribución o compensación adicional sobre el mismo.

## TERCERA: VIGENCIA Y DURACION:

Este contrato entrará en vigor a partir de la firma de la **PRIMERA PARTE** y estará vigente hasta el <u>30 de junio de 2015</u> y podrá ser renovado durante períodos adicionales, previa enmienda escrita a esos efectos, firmada por **AMBAS PARTES.**



## CUARTA: COMPENSACION Y FORMA DE PAGO

La **PRIMERA PARTE** se compromete con la **SEGUNDA PARTE** a pagar por la prestación de servicios docentes en los programas de educación posgraduada del **HURRA** objeto de este contrato la cantidad total anual de **$210,378.88** pagadero en cuantías mensuales de **$52,594.72**.

A. Los servicios serán pagados a la **SEGUNDA PARTE** por mensualidades vencidas, previa presentación de las correspondientes facturas que detallen los servicios prestados por la Facultad Docente, las cuales vendrán acompañadas de los siguientes documentos: una Certificación del Departamento de Record Médico de que los expedientes médicos están completos y al día, una Certificación del Director del programa de Garantía de Calidad de Servicios como evidencia de que las minutas y el contenido de las mismas están al día, dentro del área bajo su control, y se han realizado mensualmente, de acuerdo a las funciones de Facultad establecidas en los Estatutos, Reglas y Reglamentos de la Facultad Médica. Además, someterá una Certificación del presidente de la Facultad, como evidencia de que la **SEGUNDA PARTE** cumple con las credenciales requeridas por la Facultad Médica para la otorgación de privilegios a todos y cada uno de los miembros de la Facultad contratada por la **SEGUNDA PARTE**.

B. Bajo ninguna circunstancia, la **SEGUNDA PARTE** solicitará o aceptará donativos de clase alguna de los pacientes atendidos en virtud de este contrato.

La **PRIMERA PARTE** se responsabiliza de llevar las estadísticas mensuales de los pacientes atendidos por categoría de pago.

**QUINTA: RECURSOS PARA PAGAR LOS SERVICIOS:** Los servicios prestados por la **SEGUNDA PARTE** se pagarán de la cifra de cuenta **PS.8.4-571-0712105-06B-2002, 571-0712105-06M-2000, v/o PRIFAS- 571-0710000-780-2002, 571-0710000-783-2000** y/o cualquier otra cifra de cuenta disponible durante la vigencia del contrato.



2 0 1 5  DS 1 0 6 1

**SEXTA: CONTRATISTA INDEPENDIENTE: AMBAS PARTES** libre y voluntariamente acuerdan que mediante este contrato no se están estableciendo relaciones de patrono o empleado entre éstas y que la **SEGUNDA PARTE** actuará y prestará servicios en todo momento como contratista independiente y convienen que ninguno de los miembros de ésta, así como los que trabajen para ésta, reclamarán a la **PRIMERA PARTE** por concepto de vacaciones, licencias por enfermedad, retiro, póliza de responsabilidad profesional, pagos para el Seguro Social Federal y Fondo del Seguro del Estado.

A La **SEGUNDA PARTE** no se le efectuarán retenciones ni descuentos de sus honorarios para el pago del Seguro Social Federal. La **PRIMERA PARTE** podrá retener del pago debido a la **SEGUNDA PARTE** por servicios prestados hasta el 7% que dispone la Sección 1062.3 del Código de Rentas Internas (2011), según enmendado, de conformidad con los reglamentos aprobados por el Secretario de Hacienda.

La **SEGUNDA PARTE** se obliga, como condición necesaria a este contrato, a presentar las certificaciones, relevos y documentos que acrediten su situación contributiva, que sean requeridos por la **PRIMERA PARTE** o su representante autorizado.

La **SEGUNDA PARTE** es responsable de rendir sus planillas y pagar las aportaciones correspondientes, al Seguro Social Federal y al Negociado de Contribución Sobre Ingresos del Departamento de Hacienda, por cualquier cantidad tributable como resultado de los ingresos devengados bajo este contrato. La **PRIMERA PARTE** notificará al Negociado de Contribución Sobre Ingresos los pagos y reembolsos que sean efectuados a la **SEGUNDA PARTE.**



La **SEGUNDA PARTE** será responsable de asegurar a sus empleados y a todo el personal que preste servicios bajo este contrato, con el Fondo del Seguro del Estado. Copia de la póliza del Fondo del Seguro del Estado se une y hace formar parte de este contrato.

**SEPTIMA: INTERES PECUNIARIO:**

La **SEGUNDA PARTE** hace constar que ningún funcionario o empleado de la agencia contratante o algún miembro de su unidad familiar tienen directa o indirectamente interés pecuniario en este contrato.

La **SEGUNDA PARTE** hace constar que ningún funcionario o empleado de la agencia contratante ha tenido durante los últimos cuatro (4) años antes de ocupar su cargo, directa o indirectamente interés pecuniario en este contrato.

La **SEGUNDA PARTE** certifica NO tener relación de parentesco, con ningún funcionario o empleado que tenga facultad de decidir o influenciar y participar en las decisiones institucionales de la agencia con quien estoy en trámite de contratar.

N/A La **SEGUNDA PARTE** certifica tener relación de parentesco, con algún funcionario o empleado que tenga facultad de decidir o influenciar y participar en las decisiones institucionales de la agencia con quien estoy en trámite de contratar. La **SEGUNDA PARTE** se obliga, a indicar la relación de parentesco, nombre y lugar de trabajo, del funcionario o empleado de la agencia con quien estoy en trámite de contratar, según queda expresamente establecido en la certificación que se hace formar parte del expediente del contrato.

La **PRIMERA PARTE** certifica que, a su mejor entender, ningún empleado o funcionario de esta agencia o algún miembro de su unidad familiar tiene, directa o indirectamente, interés pecuniario en este contrato y que ningún funcionario o empleado de la Rama Ejecutiva tiene interés en las ganancias o beneficios producto de este contrato.

**OCTAVA: DISCRIMEN EN LA PRESTACION DE LOS SERVICIOS:**

La **SEGUNDA PARTE** se compromete a no discriminar en la prestación de estos servicios por razones de índole política, religiosa, de raza, condición social, sexo, edad, nacionalidad, condición o impedimento físico o mental o por orientación sexual o identidad de género.



2 0 1 5 DS 1 0 6 1

**NOVENA: NEGLIGENCIA O ABANDONO:** El desempeño negligente de sus funciones o el abandono de éstas por la **SEGUNDA PARTE** se considerará una violación a este contrato y será causa suficiente para que la **PRIMERA PARTE** lo declare terminado inmediatamente, sin sujeción a la Cláusula de Resolución y quede relevada de toda obligación y responsabilidad bajo el mismo. Queda expresamente convenido que la **SEGUNDA PARTE** completará cualquier trabajo que quede pendiente al momento de la resolución, sin que por ello la **PRIMERA PARTE** venga obligada a pagar a la **SEGUNDA PARTE** retribución o compensación adicional sobre el mismo.

**DECIMA: CONFLICTOS DE INTERESES:**

La **SEGUNDA PARTE** reconoce que en el descargo de su función profesional tiene un deber de lealtad completa hacia la **PRIMERA PARTE**, lo que incluye el no tener intereses adversos a dicho organismo gubernamental. Estos intereses adversos incluyen la representación de clientes que tengan o pudieran tener intereses encontrados con la **PRIMERA PARTE**. Este deber, además, incluye la obligación contínua de divulgar a la **PRIMERA PARTE** todas las circunstancias de sus relaciones con clientes y terceras personas y cualquier interés que pudiera influir en la agencia al momento de otorgar el contrato o durante su vigencia.



La **SEGUNDA PARTE** certifica que no está representando ni representará durante la vigencia de este contrato, intereses particulares en casos o asuntos que involucren conflictos de intereses o de política pública contra la **PRIMERA PARTE.**

La **SEGUNDA PARTE** representa intereses encontrados cuando, en beneficio de un cliente es su deber promover aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente anterior, actual o potencial. Representa intereses en conflicto, además, cuando su conducta es descrita como tal en las normas éticas reconocidas a su profesión, o en las leyes y reglamentos del Estado Libre Asociado de Puerto Rico.

En contratos con sociedades o firmas constituirá una violación de esta prohibición el que alguno de sus directores, asociados o empleados incurra en la conducta aquí descrita. La **SEGUNDA PARTE** evitará aún la apariencia de la existencia de intereses encontrados.

La **SEGUNDA PARTE** reconoce el poder de fiscalización de la **PRIMERA PARTE** con relación al cumplimiento de las prohibiciones aquí contenidas. De entender la **PRIMERA PARTE** que existen o han surgido intereses adversos para con la **SEGUNDA PARTE**, le notificará por escrito sus hallazgos y su intención de resolver el contrato en el término de treinta (30) días. Dentro de dicho término la **SEGUNDA PARTE** podrá solicitar una reunión a la **PRIMERA PARTE** para exponer sus argumentos a dicha determinación de conflicto, la cual será concedida en todo caso. De no solicitarse dicha reunión en el término mencionado o de no solucionarse satisfactoriamente la controversia durante la reunión concedida, este contrato quedará resuelto.

**DECIMA PRIMERA: CERTIFICACION CONTRIBUTIVA:**

La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha rendido su planilla contributiva durante los cinco (5) años previos a este contrato y no adeuda contribuciones al Estado Libre Asociado de Puerto Rico. También certifica que no tiene deuda contributiva alguna, entendiéndose por deuda contributiva, cualquier deuda por concepto de contribución sobre ingresos, impuesto sobre ventas y uso-IVU, arbitrios, contribución sobre la propiedad mueble e inmueble, incluyendo cualquier imposición de carácter especial, derechos de licencias, contribuciones retenidas en el origen en el pago de salarios a empleados, en el pago de intereses, dividendos, rentas, salarios y otros emolumentos a individuos o por cualquier otro concepto.

O



_N/A_ La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha rendido planilla contributiva durante los cinco (5) años previos a este contrato y que se encuentra acogida a un plan de pago, con cuyos términos y condiciones está cumpliendo. **Copia del o de los Planes de Pago, forman parte del expediente de este contrato.**

<p style="text-align:center">O</p>

_N/A_ La **SEGUNDA PARTE** certifica que al momento de suscribir este contrato **NO** ha rendido su planilla contributiva durante alguno de los periodos contributivos dentro de los cinco (5) años previos a este contrato y que no adeuda contribuciones al Estado Libre Asociado de Puerto Rico. También certifica que no tiene deuda contributiva alguna, entendiéndose por deuda contributiva, cualquier deuda por concepto de contribución sobre ingresos, arbitrios, contribución sobre la propiedad mueble e inmueble, incluyendo cualquier imposición de carácter especial, derechos de licencias, contribuciones retenidas en el origen en el pago de salarios a empleados, en el pago de intereses, dividendos, rentas, salarios y otros emolumentos a individuos o por cualquier otro concepto. Además, de los documentos requeridos en esta cláusula la **SEGUNDA PARTE** someterá el **Modelo SC 2781, Certificación de Razones por las cuales no está obligada en Ley a rendir Planilla de Contribución sobre Ingresos.**

<p style="text-align:center">O</p>

_N/A_ La **SEGUNDA PARTE** certifica que tiene una deuda contributiva, pero que la misma está en proceso de revisión o ajuste en el Departamento de Hacienda o por el CRIM. La **SEGUNDA PARTE** expresamente reconoce y se obliga a que, de no proceder la revisión o el ajuste, se compromete a cancelar dicha deuda, mediante retención con cargo a los pagos a que tiene derecho a recibir por los servicios prestados bajo este contrato. Además de los documentos requeridos en esta cláusula la **SEGUNDA PARTE someterá una Certificación emitida por el Departamento de Hacienda y o por el CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPAL (CRIM), donde se informe que la SEGUNDA PARTE tiene deuda en revisión. La SEGUNDA PARTE está obligada a informar trimestralmente (marzo 31, junio 30, septiembre 30 y diciembre 31) a la PRIMERA PARTE del progreso o denegación de la revisión o el ajuste.**



<p style="text-align:center">Y</p>

La **SEGUNDA PARTE** someterá, en original, del Departamento de Hacienda **Certificación de Radicación de Planillas de Contribución Sobre Ingresos (Modelo SC 6088), si procede, Corrección Manual a la Certificación de Radicación de Planillas de Contribución sobre Ingresos (Modelo SC 2888), Certificación de Deuda (Modelo SC 6096), y la Certificación de Radicación de Planillas del Impuesto sobre Ventas y Uso-IVU (Modelo SC 2942), Certificación de Deuda del Impuesto sobre Ventas y Uso (Modelo SC 2927) y del CENTRO DE RECAUDACION DE INGRESOS MUNICIPAL (CRIM), Certificación de Radicación de Planillas de Contribución sobre Propiedad Mueble (de no poseer propiedad mueble y de no figurar radicando planilla en el sistema contributivo mecanizado del CRIM, la SEGUNDA PARTE someterá una Declaración Jurada, en cumplimiento con los términos requeridos en la Carta Circular 1300-25-14 del Departamento de Hacienda) y una Certificación de Deuda por Todos los Conceptos, las cuales forman parte de este contrato.**

La **SEGUNDA PARTE** se compromete además, a someter con su última factura el Modelo **SC-6096, Certificación de Deuda expedido por el Departamento de Hacienda. La SEGUNDA PARTE acepta y reconoce que el último pago a efectuarse bajo el contrato, sólo se tramitará si la Certificación de Deuda indica que la SEGUNDA PARTE no tiene deuda con el Departamento de Hacienda. De tener deuda, la SEGUNDA PARTE se compromete a cancelar la misma mediante retención en los pagos a que tiene derecho a recibir por los servicios objetos de esta contratación.**

Expresamente se reconoce que éstas son condiciones esenciales del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tenga que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.



0 15 DS 10 6 1

**DECIMA SEGUNDA: POLIZA DE SEGURO Y RESPONSABILIDAD**

A. **LA UNIVERSIDAD** se compromete a tener vigente, durante el periodo de vigencia de este contrato, una póliza por impericia médica o auto aseguro, aprobado por el Comisionado de Seguros de Puerto Rico, para cubrir eventos o incidentes de alegada impericia medica atribuible al personal docente de la Universidad en la supervisión de los residentes, "fellows" e internos. Los limites de dicha póliza o auto seguro no serán menores de cien mil (**$100,000.00**) dólares por incidente y trescientos mil (**300,000.00**) por agregado. Las pólizas, si alguna, contendrán una disposición de que las mismas no serán canceladas ni modificadas a menos que medie una notificación por escrito con treinta (30) días de anticipación a la **PRIMERA PARTE**, Oficina de Seguros y Riesgos, apartado 70184, Santurce, P. R 00936-8184. En cuanto al auto seguro de la **SEGUNDA PARTE**, ésta se compromete a brindar igual aviso a la **PRIMERA PARTE**, de éstas suspenderse, perder su vigencia, cubierta o autorización.

B. La **SEGUNDA PARTE** exonera a la **PRIMERA PARTE**, de cualquier reclamación judicial o extra judicial de cualquier médico o de cualquier persona o entidad, respecto a la calidad de entrenamiento que sea atribuible a la **SEGUNDA PARTE** y que no dependa de recursos, servicios o infraestructura del Hospital Dr. Ramón Ruiz Arnau lo cual continua siendo responsabilidad de la **PRIMERA PARTE**.



C. El personal médico contratado por la Universidad para prestar servicios de docencia y supervisión al amparo de este contrato, deberá tener vigente un seguro de Impericia Medica con limites no menores de ($100,000.00) por incidente médico y ($300,000.00) por agregado. Copia de las pólizas forman parte indispensable del expediente de este contrato y tienen término de cancelación de treinta (30) días y "Certificate Holder" a favor del Departamento de Salud.

**DECIMA TERCERA: CERTIFICACION A FAVOR DEL DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS:**

La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha pagado las contribuciones de:

Seguro por Desempleo

Incapacidad Temporal

Seguro Social para Choferes

N/A La **SEGUNDA PARTE** se encuentra acogida a un Plan de Pago, con cuyos términos y condiciones está cumpliendo. Copia del Plan de Pago forma parte del expediente de este contrato.

Expresamente se reconoce que ésta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la **SEGUNDA PARTE** tenga que reintegrar a la **PRIMERA PARTE** toda suma de dinero recibida bajo este contrato.

**DECIMA CUARTA: AUDITORIAS:**

La **SEGUNDA PARTE** se compromete a viabilizar las auditorías que la **PRIMERA PARTE** o la Oficina del Contralor de Puerto Rico consideren necesarios, por lo cual deberán:

1. Mantener disponible para examen o inspección, en cualquier momento por la **PRIMERA PARTE** o la Oficina del Contralor de Puerto Rico, todos los expedientes, documentos, libros y datos relacionados con los asuntos objeto de este contrato.

**12**

( J 15 DS 10 6 1

2. Retener todos los expedientes o cualquier documento pertinente a este contrato, por un período de seis (6) años luego de terminado el mismo. De haberse iniciado una auditoría cuyos resultados no se hubieran solucionados al finalizar los seis (6) años, los expedientes deberán ser retenidos hasta que se emitan los resultados de la auditoría.

## DECIMA QUINTA: DELITOS CONTRA EL ERARIO PUBLICO:



La **SEGUNDA PARTE** certifica que ni ella, ni ninguno de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices ha sido convicto, ni se ha encontrado causa probable para su arresto, por ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

La **SEGUNDA PARTE** reconoce su deber contínuo de informar, durante la vigencia del contrato, cualquier hecho que se relacione con la conducción de cualquier investigación por la comisión de un delito contra el erario, la fe o con la función pública; contra el ejercicio gubernamental; que involucre fondos o propiedad pública, en el ámbito federal o estatal.

La **SEGUNDA PARTE** certifica que durante los diez años anteriores a la formalización del contrato, ni ella, ni ninguno de sus accionistas, socios, oficiales principales, empleados, subsidiarias o compañías matrices, no han cometido ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

## DECIMA SEXTA:   LEY FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT DEL 1996:

A. La ley federal Health Insurance Portability and Accountability Act del 1996 (mejor conocida por sus siglas en inglés HIPAA) y su Regla de Privacidad y Seguridad requieren que toda entidad cubierta por dicha legislación adiestre a su fuerza laboral y establezca Políticas y Procedimientos en cuanto a las disposiciones sobre la privacidad, confidencialidad y seguridad de la información de salud de los pacientes, sea dicha información creada, almacenada, manejada, accesada o transmitida en papel o por medios electrónicos.

B. HIPAA define su fuerza laboral como aquellos empleados regulares, por contrato, transitorios, voluntarios, estudiantes, practicantes y cualquier persona que lleve a cabo una labor en el área asignada por la **PRIMERA PARTE**, sea o no remunerada.

C. La **SEGUNDA PARTE** forma parte de esa fuerza trabajadora y como tal, está sujeto al cumplimiento de las políticas y procedimientos establecidos por la **PRIMERA PARTE** para el cumplimiento con la Ley HIPAA y su reglamentación relacionada. A tales efectos, deberá:

i. Ser adiestrado sobre dicha ley, su Regla de Privacidad, Códigos, Transacciones e Identificadores y su Regla sobre la Seguridad de la Información de Salud que es accesada, creada, mantenida, o transmitida por medios electrónicos (ePHI).

ii. Conocer y obligarse a cumplir con los términos establecidos en la Política y Procedimientos Sobre Prácticas de Privacidad y Seguridad de la **PRIMERA PARTE**.

iii. Informar de inmediato a la **PRIMERA PARTE**, por escrito, de cualquier uso y/o divulgación de la información de salud protegida de los pacientes que no cumpla con los términos de este contrato. 45 C.F.R. §164.504(e)(2)(ii)(C).



iv. La **SEGUNDA PARTE** deberá asegurarse de que cualquier agente o subcontratista suyo acepte por escrito las mismas condiciones y restricciones que le aplican a LA **SEGUNDA PARTE** en relación a la privacidad de dicha información. 45C.F.R. §164.502 (e) (1) (ii) §164.308 (b) (2) §164.504(e)(2)(ii)(D).

v. En caso de que la **SEGUNDA PARTE** tuviere que divulgar a terceros información de salud protegida de los pacientes, para efectos de cumplir con los términos y condiciones de este contrato y sus deberes y responsabilidades bajo el mismo, antes de divulgar la información obtendrá una seguridad razonable y adecuada de dicho TERCERO, de que la información se mantendrá confidencial y segura, que sólo será divulgada según requerido por ley y únicamente para los propósitos para los que le fue divulgada y de que notificará de inmediato a la **PRIMERA PARTE** cualquier violación a la confidencialidad de la información de que tenga conocimiento. 45C.F.R. §§164.504(e)(2)(i), §§164.504(e)(2)(i)(B), §§164.504(e)(2)(ii)(A) y §§164.504(e)(4)(ii).

vi. Cumplir con todas las políticas de la **PRIMERA PARTE** para la protección de la privacidad, confidencialidad y seguridad de la información de salud de los pacientes, se encuentre esta información en papel o por medios electrónicos. Cumplir con la reglamentación federal para el manejo y custodia de la información de salud protegida, (Protected Health Information, en adelante PHI por sus siglas en inglés), en relación al aspecto administrativo, físico y técnico según estatuido en el 45 CFR secs. 164.308, 164.310, 164.312, 164.316).

D. En cuanto al manejo de la información de salud protegida, PHI que comparten **LAS PARTES,** se requerirá de la **SEGUNDA PARTE** los siguientes estándares para el manejo de PHI:

1. Mantener sistemas que protejan la información de salud protegida, ya sea por medios físicos y/o electrónicos (Protected Health Information, PHI por sus siglas en inglés), contra accesos no autorizados y mantener el cumplimiento con las reglas de seguridad electrónicas de HIPAA, incluyendo pero no limitado a la elaboración de un análisis de riesgo electrónico.

2. Previa solicitud por escrito a la **PRIMERA PARTE**, podrá permitir al individuo, dueño del PHI, accesos a su información de salud. En cumplimiento con la Política de la **PRIMERA PARTE** de divulgar solamente el mínimo necesario a la solicitud de información.

3. Llevar un registro de la información de salud protegida que divulga, del cual deberá tener libre acceso la **PRIMERA PARTE** y mostrado según requerido por esta ultima 45 CFR &164.528.

4. Informar de inmediato a la **PRIMERA PARTE**, cualquier uso o divulgación no autorizada tan pronto tenga conocimiento de este hecho.

5. Exigir a cualquiera de sus sub-contratistas o agentes a que acaten las restricciones y condiciones que les son de aplicación a la **PRIMERA PARTE** en el manejo de información de salud protegida, incluyendo aquella información de salud electrónica. Deberá además, la **SEGUNDA PARTE**, a requerimiento de la **PRIMERA PARTE**, mostrar los arreglos a los cuales haya incurrido con cualquiera de sus sub-contratistas en el manejo de información de salud protegida que se produzca como resultado a su vez de la relación contractual entre ellos a la **PRIMERA PARTE.**

6. Incorporar cualquier enmienda a la información de un individuo que le sea transmitida por la **PRIMERA PARTE.**

7. Poner a la disposición del Departamento de Salud y Servicios Humanos Federal (Department of Health and Human Services, DHHS por sus siglas en inglés), sus prácticas internas, libros y expedientes relacionados con el uso y divulgación de información protegida recibida de la **PRIMERA PARTE.**

8. Devolver a la **PRIMERA PARTE** toda la información de salud protegida que mantenga después de terminado el contrato suscrito con la **PRIMERA PARTE**.

9. La **SEGUNDA PARTE** será responsable de la seguridad e integridad de la información de salud de nuestros pacientes y participantes, en particular, aquella que se comparte por artefactos electrónicos móviles. Por lo cual, la **SEGUNDA PARTE**, vendrá obligado a cumplir con los siguientes requisitos:

   a. El manejo de información de salud por métodos electrónicos de los pacientes que reciben servicios del Departamento de Salud, nuestros programas, clínicas, hospitales y demás áreas de servicios directo a pacientes, se realizará a través de los equipos que provee el Departamento de Salud.

   b. Se limita el manejo de la información de salud por otros métodos móviles a casos extremos en los cuales su intercambio sea necesario para preservar la salud y seguridad de los pacientes y cuando la comunicación sea entre profesionales de la salud debidamente autorizados por la entidad cubierta a compartir información de salud. En tales casos, la información a compartirse será totalmente de- identificada, de manera que no se identifique al paciente a quien se le presta el servicio.

   c. En todos los demás casos, se prohíbe el intercambio, posesión y/o uso de información de salud protegida y confidencial bajo la custodia del Departamento de Salud y sus empleados, a través de artefactos electrónicos móviles tales como:

      i. Teléfonos celulares.
      ii. Computadoras portátiles, (cuando su uso sea fuera de los predios del Departamento de Salud y/o que no tenga un mecanismo de cifrado de información autorizado por el Departamento de Salud).
      iii. Memorias portátiles, ("flash drives").
      iv. Discos portátiles.
      v. Cualquier otro método de intercambio de información electrónica no autorizado por el Departamento de Salud



E. La **SEGUNDA PARTE** será responsable de lo dispuesto en la Subparte C del 45 CFR § 164 relativo al cumplimiento con la protección de la información de salud que se maneja por métodos electrónicos. Deberá informar de inmediato a la **PRIMERA PARTE** tan pronto tenga conocimiento sobre cualquier uso o divulgación de información de salud protegida no autorizada, así como de informar cualquier incidente de seguridad electrónica en la cual se pueda ver expuesta la información de salud de los participantes y pacientes según requerido por 45 CFR § 164.410. Será responsable de costear los gastos que puedan generarse en caso de una violación al manejo de información de salud protegida en su forma física y/o electrónica.

F. La **SEGUNDA PARTE** será responsable con su propio pecunio, de notificar a cada uno de los pacientes y participantes de que ha ocurrido un incidente de seguridad electrónica que afecta o compromete su información de salud, y procederá a reportar el incidente de seguridad a la Oficina de Derechos Civiles del Departamento de Salud Federal, (OCR), Health and Human Services) en cumplimiento con la Health Information Technology for Economic and Clinical Health ACT, (HITECH) y la Genetic Information Nondiscrimination ACT, (GINA) y dará cuentas de dichas gestiones a la **PRIMERA PARTE** mediante informe que incluya todas las gestiones realizadas para la solución del incidente. De la misma forma deberá notificar a la Oficina de Administración y Monitoreo de la HIPAA del Departamento de Salud.

2 0 15 DS 10 6 1

G. De no cumplir la **SEGUNDA PARTE** con los estándares establecidos tanto en la ley federal HIPAA, como en su reglamentación relacionada, las leyes estatales que protegen la privacidad, confidencialidad y seguridad de la información de salud de los pacientes y las Políticas y Prácticas de Privacidad y Confidencialidad y Seguridad de la **PRIMERA PARTE**, se expone a ser sancionado por el **DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS)** y su contrato puede ser terminado inmediatamente. La **PRIMERA PARTE** se reserva el derecho de resolver este contrato conforme establecido en la **CLAUSULA DE RESOLUCION** de este contrato.

H. La **SEGUNDA PARTE** reconoce que de existir una violación a las leyes Federales, su reglamentación, así como a la legislación local en cuanto al manejo de información de salud protegida, sea física o material, será responsable de pagar aquella(s) multa(s) que por dicho concepto imponga el Departamento de Salud Federal así como la Oficina de Derechos Civiles, (OCR).

I. Si el personal de la **SEGUNDA PARTE**, que presta servicios bajo las disposiciones de este contrato, incumple con los estándares establecidos tanto en la ley federal HIPAA, como en su reglamentación relacionada, las leyes estatales que protegen la privacidad, confidencialidad y seguridad de la información de salud de los pacientes y las Políticas y Prácticas de Privacidad y Confidencialidad y Seguridad de la institución, estos pueden ser sancionados y este contrato puede ser terminado inmediatamente.

**DECIMA SEPTIMA: TERCEROS BENEFICIARIOS**

A. Nada de lo expresado directamente o que pudiere ser entendido como consecuencia de lo expresado en este contrato se entenderá como que confiere o pretende conferir a ninguna persona natural o jurídica que no sean la **PRIMERA y SEGUNDA PARTE** y sus respectivos sucesores, ningún remedio, obligación, derecho o responsabilidad.

**DECIMA OCTAVA: OBLIGACIONES Y RECONOCIMIENTOS DE LA SEGUNDA PARTE:**

A. La **SEGUNDA PARTE** reconoce y acepta que no es el dueño, ni tiene ningún derecho propietario sobre la información de salud protegida existente en papel o en medios electrónicos de la **PRIMERA PARTE** y que durante la vigencia de este acuerdo notificará de cualquier instrucción, uso no autorizado, divulgación no autorizada, violación de la privacidad o seguridad y/o sospecha de que haya ocurrido, en violación de las disposiciones de las leyes federales y locales aplicables.

B. LA **SEGUNDA PARTE** se compromete a mitigar, en la medida que sea posible, cualquier efecto dañino que sea de su conocimiento o que le sea razonablemente anticipable relacionado al uso o divulgación de información de salud protegida, ya sea en papel o en forma electrónica por la **SEGUNDA PARTE** en violación de los requerimientos de este contrato.

C. La **SEGUNDA PARTE** reconoce y acepta que bajo las disposiciones de la ley federal HIPAA y según dispuesto en este contrato, la violación a la privacidad y confidencialidad de la información de salud del paciente puede dar lugar a la terminación del mismo. En caso de terminación de este contrato por cualquier razón, la **SEGUNDA PARTE** y sus agentes o subcontratistas, devolverán o destruirán la información de salud protegida, existente en papel o almacenada y/o transmitida electrónicamente de la **PRIMERA PARTE**. De mantener alguna información porque fuere imposible destruirla o devolverle a la **PRIMERA PARTE**, la misma seguirá protegida por las disposiciones de Privacidad y Seguridad de HIPAA y su uso se limitará a las causas por las que no puede ser destruida o devuelta



D. La **SEGUNDA PARTE** reconoce y acepta que de ser requerido por la **PRIMERA PARTE**, deberá hacer disponible sus libros, récords y prácticas relacionadas con el uso de información de salud protegida existente y/o transmitida en papel o por medios electrónicos, recibido o creado  por la **SEGUNDA PARTE** de la **PRIMERA PARTE** al Departamento de Salud y Recursos Humanos del gobierno de los Estados Unidos, para propósitos de determinar el cumplimiento de la **PRIMERA PARTE** con la ley federal HIPAA

E. Si ocurriera algún error, negligencia o mala conducta por parte de la **SEGUNDA PARTE**, éste indemnizará y relevará de daños a la **PRIMERA PARTE**, sus agentes, servidores y empleados de cualquier y de todas las reclamaciones, demandas, acciones, pleitos, sentencias y responsabilidad que puedan resultar o estén relacionados con éste contrato o con el uso de la información de salud recibida, creada, accesada, mantenida y/o transmitida en papel o por medios electrónicos según los términos y condiciones de éste contrato.

La **PRIMERA PARTE** tiene el derecho absoluto de suspender sin previo aviso éste contrato, por cualquier sospecha de violación a los términos de este contrato. Luego de esto, la **PRIMERA PARTE** podrá cancelar unilateralmente este contrato si en su total discreción determina que ha violado material o sustancialmente alguna de las cláusulas establecidas en éste contrato. Además, la **SEGUNDA PARTE** reconoce y acepta que bajo las disposiciones de la ley federal HIPAA la violación a la privacidad, confidencialidad y seguridad de la información de salud del paciente puede dar lugar a la terminación inmediata de este contrato.

**DECIMA NOVENA: CUMPLIMIENTO CON POLÍTICA PUBLICA:**

De los profesionales que ofrecen servicios bajo las disposiciones de este contrato incurrir en actos que van en contravención con legislación de Política Pública, tales como Hostigamiento Sexual, Discrimen y Uso y Abuso de Sustancias Controladas, el contrato será terminado de inmediato sin sujeción a la Cláusula de Resolución.



**VIGESIMA: LITIGIOS:**

La **SEGUNDA PARTE** certifica que al momento de suscribir este contrato no tiene litigios en proceso contra ninguna agencia o instrumentalidad gubernamental, incluyendo al Departamento de Salud.

**VIGESIMA PRIMERA: INTRANSFERIBILIDAD:** Los servicios que prestará la **SEGUNDA PARTE** no pueden ser transferidos, sin previa notificación y acuerdo con la **PRIMERA PARTE**. La delegación de estos, sin previa notificación y acuerdo con la **PRIMERA PARTE** será causa suficiente para dar por terminado inmediatamente este contrato. El incumplimiento de esta cláusula hará responsable a la **SEGUNDA PARTE** por cualesquiera daños y perjuicios que fueran causados a la **PRIMERA PARTE**, ya sean éstos en forma directa o indirecta

**VIGESIMA SEGUNDA: RESPONSABILIDAD POR DAÑOS Y PERJUICIOS:** La **SEGUNDA PARTE** será responsable por cualesquiera daños y perjuicios causados por el desempeño negligente o abandono de las obligaciones asumidas bajo este contrato y releva así de cualquier obligación y responsabilidad a la **PRIMERA PARTE**.

**VIGESIMA TERCERA: POLITICA ADMINISTRATIVA:** Convienen las **PARTES** que la **SEGUNDA PARTE** no podrá alterar los procedimientos de servicios o tomar decisiones que afecten sustancialmente la Política Administrativa establecida por la **PRIMERA PARTE**, sin el previo consentimiento por escrito de ésta.



**VIGESIMA CUARTA: EX-SERVIDORES PUBLICOS:**

_____ La **SEGUNDA PARTE** certifica que nunca ha sido servidor público.

_____ La **SEGUNDA PARTE** certifica que ninguno de los socios y/o incorporadores ha sido servidor público.

__N/A__ La **SEGUNDA PARTE** certifica que han transcurrido más de dos (2) años desde el cese de sus funciones como servidor público y que no ha ofrecido información, intervenido, cooperado, asesorado en forma alguna o representado directa o indirectamente a persona privada, negocio o entidad pública, ante la agencia para la que laboró, ésta de conformidad con la sección 4.6 de la Ley de Ética Gubernamental, Ley Núm. 1 del 3 de enero de 2012.

__N/A__ La **SEGUNDA PARTE** certifica que han transcurrido más de dos (2) años desde el cese de las funciones como servidores público de alguno de sus socios y/o incorporadores y que no han ofrecido información, intervenido, cooperado, asesorado en forma alguna o representado directa o indirectamente a persona privada, negocio o entidad pública ante la agencia para la que laboró, ésta de conformidad con la sección 4.6 de la Ley de Ética Gubernamental, Ley Núm. 1 del 3 de enero de 2012

__N/A__ La **SEGUNDA PARTE** certifica que no han transcurrido más de dos (2) años desde el cese de las funciones de alguno de sus socios y/o incorporadores como servidores públicos, no obstante presta servicios _ad honorem_ de conformidad con la sección 4.6 de la Ley de Ética Gubernamental, Ley Núm. 1 del 3 de enero de 2012.

__N/A__ La **SEGUNDA PARTE** certifica que ha sido servidor público en el Departamento de Salud y no han transcurrido más de dos (2) años desde el cese de sus funciones.

Cuando medien circunstancias excepcionales y a discreción de la Oficina de Ética Gubernamental podrá expedir dispensa, siempre que resulte en beneficio del servicio público la contratación dentro de los dos (2) años del ex-servidor público.

__N/A__ La **SEGUNDA PARTE** certifica alguno de sus socios y/o incorporadores han sido servidores públicos en el Departamento de Salud, y no han transcurrido más de dos (2) años desde el cese de las funciones.



Cuando medien circunstancias excepcionales y a discreción de la Oficina de Ética Gubernamental podrá expedir dispensa, siempre que resulte en beneficio del servicio público la contratación dentro de los dos (2) años del ex-servidor público.

**VIGESIMA QUINTA: CERTIFICACIÓN DE LA ADMINISTRACIÓN PARA EL SUSTENTO DE MENORES:**

La **SEGUNDA PARTE** someterá a la **PRIMERA PARTE** una Certificación de Estado de Cumplimiento de la Administración para el Sustento de Menores (**ASUME**).

Esta certificación se emite en los casos de personas jurídicas (compañías, corporaciones) para corroborar que cumplen con las órdenes emitidas a su nombre como patrono, para retener del salario de sus empleados los pagos de pensión alimentaria.

**VIGESIMA SEXTA: SUBCONTRATACION:**

La **SEGUNDA PARTE** no podrá subcontratar con entidad privada alguna para delegar los servicios esenciales objeto de esta contratación. La **SEGUNDA PARTE** sólo podrá subcontratar servicios personales y servicios profesionales y consultivos con el fin de dar cumplimiento a los servicios objeto de esta contratación. De ninguna manera y bajo ninguna circunstancia debe interpretarse que el consentimiento de la **PRIMERA PARTE** para autorizar dichas subcontrataciones implica que la **PRIMERA PARTE** incurre en obligaciones adicionales al monto total en dólares convenido en este contrato, o que la **SEGUNDA PARTE** queda relevada de responsabilidad por cualesquiera daños y perjuicios que pueda ocasionar la parte que se subcontrate.



Cualquier subcontratación que la **SEGUNDA PARTE** estime necesaria realizar y que no esté contemplada entre las subcontrataciones permisibles, requerirá la autorización escrita de la **PRIMERA PARTE.** Todo subcontrato estará sujeto a las condiciones especiales estipuladas en este contrato y a cualquier otra condición que la **PRIMERA PARTE** estime necesaria para su aprobación, y a todas las leyes y reglamentos estatales y federales aplicables al contrato originado entre la **PRIMERA PARTE** y la **SEGUNDA PARTE.**

**VIGESIMA SEPTIMA: PROPIEDAD Y EQUIPO**

A. Todas las instalaciones físicas, los equipos, máquinas y accesorios que son propiedad exclusiva de la **PRIMERA PARTE**, estarán bajo el control y cuidado administrativo del **HOSPITAL**.

B. La **UNIVERSIDAD** se compromete a no efectuar cambios de clase alguna en los equipos, máquinas, accesorios y estructura del **HOSPITAL** sin la previa autorización escrita de la **PRIMERA PARTE.**

C. La **UNIVERSIDAD** se compromete a que su Personal Docente, empleados y/o contratistas utilicen y cuiden prudente y razonablemente los equipos, máquinas y accesorios y propiedad de suministraos de la **PRIMERA PARTE**, salvo el desgaste usual y ordinario en su uso.

D. La **PRIMERA PARTE** será responsable del mantenimiento requerido para el buen funcionamiento de dichas instalaciones físicas, equipos, máquinas y accesorios, así como su reemplazo luego de expirada su vida útil o por obsolecia.

E. La **PRIMERA PARTE** suplirá además, los materiales, medicinas, equipo, servicios de mantenimiento, vigilancia, teléfonos, agua, luz y cualquier otro similar a los aquí contratados, salvo en el caso de que por razón de fuerza mayor, los mismos no estén disponibles en un momento dado.

**VIGESIMA OCTAVA:   CREDENCIALES:**

La **SEGUNDA PARTE** presentará una certificación jurada, la cual se hará formar parte del presente contrato, donde certifica que al momento de firmar este contrato y durante la vigencia del mismo, tiene vigente las credenciales de los profesionales necesarios para ejercer las funciones para las que se le contrata, expedidas por la Junta Acreditadora correspondiente. Certificará además, contar con la evidencia de su preparación académica, y documentación relacionada al ejercicio de su profesión, a saber: la Licencia Profesional, la Colegiación, el Certificado de Educación Continua o Certificación de Registro, el Certificado de "Good Standing" y de tener médicos que presten servicios bajos este contrato tienen que tener vigentes sus Licencias Estatales y Federales para la prescripción de Drogas y Narcóticos y Póliza de Responsabilidad Profesional (Malpractice). La **SEGUNDA PARTE** en adición a la certificación jurada, presentará un listado de los profesionales de la salud que prestarán el servicio que indique el nombre con apellidos, la profesión y el porciento de tiempo que trabajará bajo el contrato. La **SEGUNDA PARTE** proveerá a la **PRIMERA PARTE** las certificaciones contributivas de los profesionales subcontratados en cumplimiento con los términos requeridos en la Carta Circular 1300-25-14 del Departamento de Hacienda.

La evidencia de la preparación académica, credenciales y documentación relacionada al ejercicio de su profesión, estarán disponibles a petición de la de la **PRIMERA PARTE.**

En caso de que algún miembro y/o empleado de la **SEGUNDA PARTE** haya sido acusado, administrativa o criminalmente, o convicto de haber obtenido fraudulentamente cualquier credencial, la **SEGUNDA PARTE** se obliga a sustituirlo inmediatamente, de lo contrario la **PRIMERA PARTE** podrá dar por terminado este contrato inmediatamente.



Queda claramente establecido que si algún miembro y/o empleado de la **SEGUNDA PARTE** queda desprovisto de su licencia profesional, la **SEGUNDA PARTE** se obliga a sustituirlo inmediatamente, de lo contrario esto será motivo suficiente para dar por terminado este contrato inmediatamente

**VIGESIMA NOVENA: INTERPRETACION:** Este contrato estará sujeto en todo momento a las Leyes y Reglamentos del Estado Libre Asociado de Puerto Rico y será interpretado de acuerdo a los mismos. Si cualquiera de las cláusulas párrafos, oraciones, palabras o partes de este contrato es declarado nulo o inconstitucional por un Tribunal de Justicia, el resto de las cláusulas, párrafos, oraciones, palabras o partes de este contrato continuarán en efecto para asegurar la intención de las partes contratante, pudiendo ser interpretados de acuerdo a las provisiones aplicable del Código Civil de Puerto Rico y las leyes que gobiernan la contratación del Estado Libre Asociado de Puerto Rico.

**TRIGESIMA: CODIGO DE ETICA:** La **SEGUNDA PARTE** se compromete a cumplir con las disposiciones de la Ley Núm. 84 de 18 de junio de 2002, mediante la cual se establece el Código de Ética para Contratistas, Suplidores y Solicitantes de Incentivos Económicos de las Agencias Ejecutivas del Estado Libre Asociado de Puerto Rico.

**TRIGESIMA PRIMERA: ESCENARIO DE TRABAJO LIBRE DE HUMO:** La **SEGUNDA PARTE** se compromete con las disposiciones de la Ley Núm. 40 de 3 de agosto de 1993, según enmendada, conocida como "Ley para Reglamento la Práctica de Fumar en Determinados Lugares Públicos y Privados"; y con el Reglamento del Secretario de Salud y la Policía de Puerto Rico Núm.7304, según enmendado, las cuales prohiben la práctica de fumar en sus instalaciones, incluyendo áreas internas y externas tanto abiertas como cerradas, entre otros.



**TRIGESIMA SEGUNDA:**   <u>**PRUEBAS DE DOPAJE:**</u>

La **SEGUNDA PARTE** será responsable de que el personal que preste sus servicios bajo este contrato se haya realizado la prueba de detección de sustancias controladas y que su resultado haya sido negativo.

En caso de que la Dirección del Hospital tenga dudas razonables sobre el uso de drogas por parte de los empleados de la **SEGUNDA PARTE**, la **SEGUNDA PARTE** vendrá obligada a referir nuevamente al empleado o empleados a una prueba de dopaje en las próximas veinticuatro horas de habérsele notificado por la Dirección del Hospital. Una vez recibida la notificación de la Dirección del Hospital. La **SEGUNDA PARTE** se compromete a relevar de inmediato al empleado de las funciones de cuidado directo a pacientes hasta al tanto se reciba el resultado negativo de la prueba.

El incumplimiento de esta cláusula por la **SEGUNDA PARTE** será causa suficiente para que la **PRIMERA PARTE** pueda resolver este contrato inmediatamente, sin sujeción a la cláusula de resolución y quede relevada de toda obligación y responsabilidad bajo el mismo. La **SEGUNDA PARTE** será la única responsable de cualesquier daños o perjuicios ocasionados por el incumplimiento de esta cláusula.

**TRIGESIMA TERCERA: CERTIFICACIÓN DE IMPUESTO SOBRE VENTAS Y USO-IVU:**

La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha rendido su planilla mensual contributiva por concepto de impuesto sobre ventas y uso-IVU durante los cinco (5) años previos a este contrato y no adeuda contribuciones al Estado Libre Asociado de Puerto Rico.

o



_N/A_ La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha rendido planilla mensual contributiva durante los cinco (5) años previos a este contrato y que se encuentra acogida a un plan de pago, con cuyos términos y condiciones está cumpliendo. **Copia del o de los Planes de Pago, forman parte del expediente de este contrato.**

O

_N/A_ La **SEGUNDA PARTE** certifica que al momento de suscribir este contrato **NO** tiene obligación de rendir la planilla mensual como Agente Retenedor del IVU.

Y

La **SEGUNDA PARTE someterá, en original, del Departamento de Hacienda Certificación de Radicación de Planillas del Impuesto sobre Ventas y Uso-IVU (Modelo SC 2942), Certificación de Deuda del Impuesto sobre Ventas y Uso (Modelo SC 2927) en cumplimiento con los términos requeridos en la Carta Circular 1300-25-14 del Departamento de Hacienda.**

Expresamente se reconoce que éstas son condiciones esenciales del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tenga que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

**TRIGESIMA CUARTA : CUMPLIMIENTO CON LA LEY NUM. 168 DE 12 DE AGOSTO DE 2000:**

_N/A_ La **SEGUNDA PARTE** certifica y garantiza que está obligada a cumplir con las disposiciones de la Ley Núm. 168 del 12 de agosto de 2000, conocida como la "Ley de Mejoras al Sustento de Personas de Edad Avanzada de Puerto Rico" mediante la cual se establece el Programa para el Sustento de Personas de Edad Avanzada adscrito a la Administración para el Sustento de Menores **(ASUME),** conllevará la terminación inmediata del presente contrato.

Expresamente se reconoce que esta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

La **SEGUNDA PARTE** certifica y garantiza que no está obligada a cumplir con las disposiciones de la Ley Núm. 168 del 12 de agosto de 2000, conocida como la "Ley de Mejoras al Sustento de Personas de Edad Avanzada de Puerto Rico" mediante la cual se establece el Programa para el Sustento de Personas de Edad Avanzada adscrito a la Administración para el Sustento de Menores **(ASUME),** conllevará la terminación inmediata del presente contrato

Expresamente se reconoce que esta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

**TRIGESIMA QUINTA: OTRAS DISPOSICIONES:**

_N/A_ La **SEGUNDA PARTE** hace constar que trabaja bajo contrato para _____ y que los servicios que presta bajo el mismo no confligen de forma alguna con los que prestara bajo las disposiciones de este contrato.



**21**

2 0 15 DS 10 6 1

**TRIGESIMA SEXTA: ULTRAVIRES: CONFORME A NUESTRO ESTADO DE DERECHO VIGENTE Y LAS NORMAS QUE RIGEN LA CONTRATACION DE SERVICIOS, LOS COMPARECIENTES EN ESTE CONTRATO TOMAN CONOCIMIENTO DE QUE NO SE PRESTARA SERVICIO ALGUNO BAJO ESTE CONTRATO HASTA TANTO SEA FIRMADO POR AMBAS PARTES. DE LA MISMA FORMA, NO SE CONTINUARA DANDO SERVICIOS BAJO ESTE CONTRATO A PARTIR DE SU FECHA DE VENCIMIENTO, EXCEPTO QUE A LA FECHA DE VENCIMIENTO EXISTA YA UNA ENMIENDA FIRMADA POR AMBAS PARTES. NO SE PAGARAN SERVICIOS PRESTADOS EN VIOLACION A ESTA CLAUSULA, YA QUE CUALQUIER FUNCIONARIO QUE SOLICITE Y ACEPTE SERVICIOS DE LA OTRA PARTE EN VIOLACION A ESTA DISPOSICION, LO ESTA HACIENDO SIN AUTORIDAD LEGAL ALGUNA, POR LO QUE LA AGENCIA NO TENDRA LA OBLIGACION DE PAGAR SERVICIOS QUE NO HAN SIDO CONTRATADOS.**

**EN TESTIMONIO DE LO CUAL, LAS PARTES** contratantes suscriben este contrato obligándose así formalmente a cumplir con todas sus cláusulas y condiciones.

En San Juan, Puerto Rico, hoy 1 de Marzo de 20 15 .

_____
**SEGUNDA PARTE**

_____
**PRIMERA PARTE**

**Seguro Social Patronal: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**

**Seguro Social Patronal: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**

Este contrato fue presentado para registro en la Oficina del Contralor el 15 de Marzo de 20 15 .

---

ESTADO LIBRE ASOCIADO DE
**PUERTO RICO**
Departamento de Salud

**CERTIFICACIÓN**

Yo, Gladys N. Torres Díaz Abogado(a) de la Oficina de Asesores Legales del Departamento de Salud certifico que he revisado el contrato en todos sus pormenores y, he encontrado el mismo satisfactorio desde el punto de vista legal. Recomiendo su firma.

Firma: Gladys Fecha: 27-Feb-15

---

CERTIFICO QUE ES COPIA FIEL Y EXACTA
DE CONTRATO BAJO MI CUSTODIA

FIRMA

FECHA 29/abr/15

22