UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | |
| Debtors.[1] | |
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3567-LTS |
| as representative of | |
| PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | |
| Debtor. | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                        Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS |

**URGENT JOINT MOTION OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ORDER CONCERNING RECEIPT AND USE OF ANTICIPATED FEDERAL DISASTER RELIEF FUNDS AND <u>PRESERVING RIGHTS OF PARTIES</u>**

To The Honorable United States District Court Judge Laura Taylor Swain:

       The Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), Puerto Rico Highways and Transportation Authority ("HTA"), and Puerto Rico Electric Power Authority ("PREPA") (collectively, the "Debtors") in these Title III cases pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtors pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submit this *Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority For Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties* (the "Urgent

2

Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") made applicable in these cases by section 301(a) of PROMESA,[2] and consistent with and in furtherance of PROMESA section 305, 48 U.S.C. § 2165, for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order").

This Urgent Motion seeks an Order to clarify that desperately needed Federal Disaster Relief Funds[3] being provided to Puerto Rico will be used solely for their intended and required purposes, will be deposited into segregated and non-commingled accounts, and will not be subject to any existing creditor or third-party claims. *See* 42 U.S.C. § 5157; 44 C.F.R. § 206.14. The FOMB and AAFAF do not believe that the Commonwealth and its instrumentalities are required to obtain Court approval to receive, deposit, transfer, or use Federal Disaster Relief Funds, either under the agreement entered between FEMA and the Commonwealth or under applicable law. The pendency of these Title III cases, however, requires certain assurances be given to federal agencies and vendors who are or will be working on relief efforts and paid from the Federal Disaster Relief Funds.

In support of the Urgent Motion, the FOMB and AAFAF respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this Urgent Motion pursuant to PROMESA section 306(a), 48 U.S.C. § 2166(a).

2. Venue is proper in this district pursuant to PROMESA section 307(a), 48, U.S.C. §

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] "Federal Disaster Relief Funds" means "funds made available, disbursed by, and/or otherwise earmarked or provided by the Federal Emergency Management Agency ("FEMA"), or any other federal agency, to the Commonwealth and Non-Federal Entities (defined below), whether directly or indirectly, for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance in the form of grants; *provided, however*, that Federal Disaster Relief Funds shall not include funds received by the Commonwealth as reimbursement for Commonwealth Disaster Relief Advances."

3

2167(a).

3. The statutory predicate for relief sought herein is Bankruptcy Code section 105(a), consistent with and in furtherance of PROMESA section 305, 48 U.S.C. § 2165, and made applicable in this Title III case through PROMESA section 301(a).

## BACKGROUND

### I. Current Conditions in Puerto Rico

4. As a result of two devastating storms, Puerto Rico is currently facing one of its worst crises in modern history. Thousands of families have been displaced from their homes, many of which have been destroyed, and are now either living with family members or being indefinitely relocated to shelters. Floodwaters damaged dams, impaired sanitary services, and increased the risks of tropical diseases (such as the dengue and Zika viruses), mudslides, and environmental contamination.

5. Puerto Rico's key infrastructure systems have suffered critical damage. For some time after Hurricane Maria first struck, the entire PREPA electric system was inoperable and unable to serve any customers. Today, PREPA remains unable to provide electric power to a majority of its clients. Much of Puerto Rico remains without phone or internet connection. PREPA and the Commonwealth are collecting detailed information on the damage to electrical generation facilities and the power grid, in order to implement the massive restoration effort that will be required to return electrical power to the people of Puerto Rico. In the interim, the lack of a fully functional telecommunications infrastructure has been a significant obstacle in coordinating the Commonwealth's relief efforts and has negatively affected local businesses.

6.    In addition, the Puerto Rico Aqueduct and Sewer Authority, which provides water and sewer service to the Island, also suffered damage and a significant number of residents are without potable water. While debris removal is underway, many roads remain impaired.

7.    Not only is the island facing extensive costs in the aftermath of Hurricanes Irma and Maria, it is also in the midst of a decade-long economic depression while attempting to restructure its debt under PROMESA through these Title III cases.

## II.    Federal Disaster Relief Funding

8.    Upon a declaration from the President of the United States that an emergency or major disaster exists, the Robert T. Stafford Disaster Relief and Emergency Assistance Act, as Amended (the "Stafford Act"), Title 42 of the United States Code § 5121 *et seq.*, authorizes the President to provide federal assistance when the magnitude of an incident or threatened incident exceeds the affected State[4] government's capabilities to respond or recover. *See* 42 U.S.C. §§ 5170, 5170a, 5170b.

9.    On September 5, 2017, the President declared an "emergency" for Hurricane Irma. On September 18, 2017, the President also declared an "emergency" in the Commonwealth due to conditions resulting from Hurricane Maria. Under the Stafford Act, an emergency can be declared for any incident where the President determines federal assistance is needed to "supplant State and local efforts and capabilities to save lives and to protect property and public health and safety, or to lessen or avert the threat of a catastrophe in any part of the United States." 42 U.S.C. § 5122(1). Emergency declarations must be based on a FEMA recommendation indicating whether those conditions are present. 44 C.F.R. § 206.37(c)(2). Once an emergency is declared, FEMA may

---

[4] The term "State" includes the Commonwealth. *See* 44 C.F.R § 206.2(a)(22).

5

provide up to $5 million in assistance. 42 U.S.C. § 5193(b)(1). That limit may be exceeded, however, if (i) "continued emergency assistance is immediately required;" (ii) "there is a continuing and immediate risk to lives, property, public health or safety;" and (iii) "necessary assistance will not otherwise be provided on a timely basis." 42 U.S.C. § 5193(b)(2).

10. On September 10, 2017, the President issued a "major disaster" declaration for Hurricane Irma and on September 20, 2017, approved a "major disaster" declaration authorizing FEMA to provide disaster assistance funding and services in connection with Hurricane Maria. A "major disaster" is "any natural catastrophe," including hurricanes, "in any part of the United States, which in the determination of the President causes damage of sufficient severity and magnitude to warrant major disaster assistance . . . to supplement the efforts and available resources of States, local governments, and disaster relief organizations in alleviating the damage, loss, hardship, or suffering caused thereby." 42 U.S.C. § 5122(2).

11. A "major disaster" declaration must be based on "a finding that the situation is . . . of such severity and magnitude as to be beyond the capabilities of the State and its local governments." 44 C.F.R. § 206.37(c)(1). As a prerequisite to "major disaster" assistance the chief executive of a State must show that he or she has taken appropriate responsive action under State law and executed the State's emergency plan and commit State resources to the response effort. 42 U.S.C. § 5170(a). Major disaster declarations must be based on the recommendation of FEMA considering multiple factors, including (i) "the amount and type of damage;" (ii) "the impact of damages on affected individuals, the State, and local governments;" (iii) "the available resources of the State and local governments, and other disaster relief organizations;" (iv) "assistance available from other [f]ederal programs and other sources;" (v) "imminent threats to public health and safety;" and (vi) "recent disaster history in the State." 44 C.F.R. § 206.37(c)(2).

12. A "major disaster" declaration is granted when a catastrophe has occurred. 44 C.F.R. § 206.36. In comparison, an "emergency" declaration is granted when the threat of an incident (*i.e.* States immediately threatened by a major hurricane) or an incident has occurred that would not reach the severity or magnitude of a "major disaster" 44 C.F.R. § 206.35. A "major disaster" declaration may provide a more robust array of federal assistance, including funding for direct assistance to individuals, repair, restoration, and replacement of infrastructure, and hazard mitigation. 42 U.S.C. §§ 5170a-5189c.

13. Recipients of disaster relief funding in connection with both "major disaster" and "emergency" declarations are usually required to share the cost of recovery efforts with the federal government. *See* 44 C.F.R. § 206.47(a). However, President Trump waived this condition, and authorized the federal government to bear 100% of the cost for debris removal and emergency protective measures in Puerto Rico for 180 days starting on September 17, 2017 (the "Initial Federal Disaster Relief Funds"). *See* President Donald J. Trump Amends Puerto Rico Declaration, FEMA, https://www.fema.gov/news-release/2017/09/26/president-donald-j-trump-amends-puerto-rico-declaration. Relief projects funded other than by the Initial Federal Disaster Relief Funds may be subject to cost-sharing requirements.

14. On September 23, 2017, Governor Ricardo Rosselló Nevares and the FEMA Regional Administrator executed a FEMA-State Agreement establishing the understandings, commitments, and conditions for assistance under which Federal Disaster Relief Funds will be provided to the Commonwealth and its instrumentalities (the "FEMA Agreement"). Under the FEMA Agreement, the Commonwealth is designated as the sole recipient of all Federal Disaster

7

Relief Funds provided by FEMA.[5] The Commonwealth is then responsible for administering sub-grants and transferring Federal Disaster Relief Funds to Commonwealth instrumentalities, public corporations, municipalities, and other eligible non-federal entities, as determined under applicable law, including HTA and PREPA ("Non-Federal Entities"). Non-Federal Entities may include eligible private nonprofit organizations, including educational, utility, emergency, medical, or custodial care facilities that apply for or have approved sub-grants. *See* 2 C.F.R. 200.69; 44 C.F.R. § 206.222. Non-Federal Entities are obligated to use the Federal Disaster Relief Funds to pay or reimburse for emergency relief and recovery costs. The funds may not be used for any other purposes.

15. For certain relief projects, payment of the federal share will be made to the Commonwealth upon approval of a Project Worksheet (as defined in part 206 of Title 44 of the Code of Federal Regulations), and the Commonwealth will pay the federal share to the Non-Federal Entities as soon as practicable. *See* 44 C.F.R. § 206.205(a) ("Final payment of the [f]ederal share of these projects will be made to the recipient upon approval of the Project Worksheet. The recipient will make payment of the [f]ederal share to the subrecipient as soon as practicable after [f]ederal approval of funding.") For other projects, the Commonwealth may advance the costs of FEMA approved projects to a Non-Federal Entity and then seek reimbursement from FEMA or, in certain circumstances, seek an advance from FEMA for a percentage of the estimated costs. *See* 44 C.F.R. § 206.205. In either case, the Commonwealth and the Non-Federal Entities must certify that the costs for which payment is sought will be (or were) incurred in the performance of eligible work, that the approved work was completed (or later certify that it was completed where funds

---

[5] While all Federal Disaster Relief Funds provided by FEMA will flow through the Commonwealth, Federal Disaster Relief Funds provided by other federal agencies may be transferred directly to Non-Federal Entities in accordance with federal law and regulation.

8

were advanced), that the project is in compliance with the FEMA Agreement, and that payments for that project have been made in accordance with 2 C.F.R. § 200.305 (establishing uniform standards for payment of federal grant funds). *See id.*

16. Non-Federal Entities are responsible for administering federal funds in a manner consistent with underlying agreements (*i.e.* the Project Worksheet), program objectives, and terms and conditions of the federal award. *See* 2 C.F.R. §§ 200.300(b), 200.400(b). The FEMA Agreement makes clear that the Commonwealth has a limited interest in the Federal Disaster Relief Funds made available by FEMA prior to the disbursement of such funds to the Non-Federal Entities. Similarly, Non-Federal Entities receiving Federal Disaster Relief Funds do not have the flexibility to use the federal funds other than in the manner called for in the Project Worksheet's scope of work.

17. Indeed, FEMA is permitted to disallow costs and recover Federal Disaster Relief Funds based on a later audit or review to ensure compliance with the Stafford Act, applicable regulations, and the FEMA Agreement. 2 C.F.R. § 200.338(b). The Commonwealth, as the sole recipient of Federal Disaster Relief Funds, is liable for any disallowed costs, even if it merely acted as a conduit to transfer those funds to a Non-Federal Entity. 2 C.F.R. § 200.410.

18. Certain other federal agencies, such as the U.S. Department of Housing and Urban Development and the U.S. Department of Health and Human Services, may also provide Federal Disaster Relief Funds. To the extent any Federal Disaster Relief Funds are received from agencies other than FEMA, the Commonwealth and Non-Federal Entities will comply with applicable federal law and regulation with respect to those funds.

19. The Commonwealth will establish segregated, non-commingled accounts specifically and exclusively devoted to holding Federal Disaster Relief Funds, and it has advised

its instrumentalities and public corporations to do the same for such funds as well as Commonwealth Disaster Relief Advances.[6]

20. The Commonwealth is also already coordinating with FEMA to identify work necessary to repair and restore Puerto Rico's infrastructure, including its electricity grid, damaged by Hurricane Maria. However, because FEMA has never before provided disaster relief funds to governmental entities in bankruptcy-like proceedings, the FOMB and AAFAF file this Urgent Motion to provide FEMA (and other applicable federal agencies) assurances that the Federal Disaster Relief Funds will be applied toward the statutorily mandated disaster relief work, and not be subject to creditor claims in the Title III cases, and vendors comfort that they will be timely paid for work completed on FEMA approved projects and projects otherwise approved under applicable federal law and regulation.

21. Moreover, in order to comply with its monitoring and reporting requirements under applicable federal regulations, the Commonwealth, as the recipient of Federal Disaster Relief Funds, must have assurance that Federal Disaster Relief Funds and Commonwealth Disaster Relief Advances will be free from creditor claims and interests. *See* 44 C.F.R. §§ 200.327-200.329, 206.205.

**RELIEF REQUESTED**

22. By this Urgent Motion, the FOMB and AAFAF seek an order confirming that with respect to the Commonwealth and its instrumentalities' receipt and use of anticipated Federal Disaster Relief Funds: (i) the Commonwealth and its instrumentalities, including public corporations, will deposit Federal Disaster Relief Funds into new, segregated, non-commingled,

---

[6] "Commonwealth Disaster Relief Advances" means "advances by the Commonwealth of funds other than Federal Disaster Relief Funds to any Commonwealth instrumentality, including public corporations, to pay the costs of a project approved by a federal agency, including FEMA, and to be reimbursed by Federal Disaster Relief Funds."

10

unencumbered accounts held in the name of the instrumentality to whom the funds have been allocated according to a governing Project Worksheet or otherwise under applicable law (the "Disaster Relief Accounts"); (ii) no liens, encumbrances, priorities, or other claims by pre-existing creditors of the Commonwealth or Non-Federal Entities in any form whatsoever, shall be asserted against such Federal Disaster Relief Funds, Commonwealth Disaster Relief Advances, or the Disaster Relief Accounts; (iii) such funds shall be applied only to pay or reimburse parties for expenditures within the scope of work identified on a FEMA Project Worksheet or otherwise in accordance with federal law or regulation, and shall not be considered available funds, resources, or revenues for any other purpose in connection with any restructuring proceeding under PROMESA; (iv) no other party in interest shall be permitted to interfere with the transfer of Federal Disaster Relief Funds to Disaster Relief Accounts or parties entitled to payment; and (v) to the extent any Federal Disaster Relief Funds become disobligated, the Commonwealth, as recipient of such funds, shall have a superpriority administrative expense claim against any Non-Federal Entity that is a debtor in a case under Title III of PROMESA to which it transferred such funds.

23. The FOMB and AAFAF request a hearing on this Urgent Motion be set for October 25, 2017 or, in any event, as soon as the Court's calendar will permit, with responses to the Urgent Motion due by October 19, 2017 and replies due by October 23, 2017.

**BASIS FOR RELIEF REQUESTED**

24. Bankruptcy Code section 363, governing the use of property, does not apply to the Title III cases. Nor do the FOMB and AAFAF believe that any other provision of Title III requires the Commonwealth to obtain Court approval to perform under the FEMA Agreement. Moreover, to the extent required under PROMESA section 305, the FOMB has consented to relief requested herein. Nonetheless, to facilitate the Federal Disaster Relief Funds being made available to the

11

Commonwealth and its instrumentalities and in furtherance of PROMESA section 305, 42 U.S.C. § 2165, the FOMB and AAFAF are seeking entry of the Order pursuant to Bankruptcy Code section 105(a). Bankruptcy Code section 105(a) provides, in relevant part that: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25. Under section 105(a), the Court has expansive equitable powers to fashion any order or decree that carries out PROMESA. *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

26. As noted above, FEMA, the vendors, and the Commonwealth and Non-Federal Entities require assurances that the Federal Disaster Relief Funds will be applied to their statutorily mandated purposes and not be subject to creditor claims. There should be no meaningful objection to the Order, as no party other than the Commonwealth and the Non-Federal Entities can claim an interest in Federal Disaster Relief Funds, which can only be used for the purposes for which they are approved under applicable federal law. With respect to Federal Disaster Relief Funds provided by FEMA pursuant to the Stafford Act, criminal and civil penalties exist for any person who knowingly misapplies such funds. *See* 42 U.S.C. § 5157; 44 C.F.R. § 206.14.

27. It is well established that the federal government retains an interest in federal funds

in the hands of a grantee unless and until expended in accordance with the terms of the grant and are not subject to attachment or garnishment by creditors. *See U.S. Dep't of Hous. & Urban Dev. v. K. Capolino Const. Corp.*, No. 01 CIV. 390 (JGK), 2001 WL 487436, at *4 (S.D.N.Y. May 7, 2001) (citing *Buchannan v. Alexander*, 45 U.S. (4 How.) 20-21, (1846)); *In re Joliet-Will Cty. Cmty. Action Agency*, 847 F.2d 430, 433 (7th Cir. 1988). The federal government's property interest can take the form of an "equitable lien," stemming from the federal government's right to ensure that the funds are used only for authorized purposes, or a "reversionary interest" which requires funds that are not being used for grant purposes to revert to the federal government. *See In re Alpha Center, Inc.*, 165 B.R. 881, 884-85 (Bankr. S.D. Ill. 1994).

28. Moreover, federal law prohibits any unauthorized assignment of, including granting a lien on, any federal contract or funds. *See* 31 U.S.C. § 3727; 41 U.S.C. § 15 (collectively, the "Anti-Assignment Acts"); *see also Saint John Marine Co. v. U.S.*, 92 F.3d 39, 48 (2d Cir. 1996) (lien on right to payment from federal government was "assignment" for purposes of Anti-Assignment Acts). Thus, Federal Disaster Relief Funds received by the Commonwealth pursuant to the FEMA Agreement must be applied to the projects designated by that agreement, and cannot be used for any other purpose. Any attempt by existing creditors to attach, encumber, or otherwise assert claims against the Commonwealth's rights under the FEMA Agreement or the Federal Disaster Relief Funds would violate the Anti-Assignment Acts' broad prohibition. *See United States v. Gillis*, 95 U.S. 407, 413 (1877) (referring to the Anti-Assignment Acts: "No language could be broader or more emphatic than these enactments. The words embrace every claim against the United States, however, arising, of whatever nature it may be, and wherever and whenever presented."); *see also Marger v. Ball*, 510 F.Supp. 9, 13 (D. Me. 1980) (same).

29. If Federal Disaster Relief Funds are not used for their intended purposes or are

13

otherwise disallowed, the Commonwealth, as the sole recipient, is obligated to reimburse FEMA. 2 C.F.R. § 200.410. Under the Stafford Act and the FEMA Agreement, the Commonwealth merely acts as a conduit to administer the Federal Disaster Relief Funds and facilitate payment. To ensure that the Commonwealth is made whole for any payment on account of disallowed Federal Disaster Relief Funds, the Commonwealth should be granted a superpriority administrative expense claim against any Non-Federal Entity that is a debtor in a case under Title III of PROMESA to which it transferred Federal Disaster Relief Funds that are subsequently disallowed.

30. The FOMB and AAFAF recognize that notwithstanding the forgoing restrictions under federal law, certain creditors may still seek to assert that Federal Disaster Relief Funds are subject to liens or priorities under the relevant bond documents and applicable law. While the FOMB and AAFAF believe that under applicable federal law no creditors' liens or priorities (if any) can extend to Federal Disaster Relief Funds, they are willing to reserve creditors' rights in certain limited circumstances to argue that Federal Disaster Relief Funds would have fallen within the defined scope of their collateral, provided such arguments do not prevent or otherwise interfere with the Commonwealth and Non-Federal Entities putting those funds to their required purposes.

31. Accordingly, the FOMB and AAFAF request that the Order be entered without prejudice to (i) any party's rights under applicable agreements or applicable law to assert a lien, encumbrance, priority, or other claim against any property other than Federal Disaster Relief Funds, Commonwealth Disaster Relief Advances, or Disaster Relief Accounts, or to argue solely for the purposes of determining the extent of its claim or treatment in respect of such claim that the Federal Disaster Relief Funds or the proceeds thereof would, notwithstanding any restrictions under applicable federal law and/or this order, be subject to that party's lien or priority, or otherwise subject to the terms of agreement with creditors or any rights granted under the terms of

applicable agreements or law; and (ii) the right of the Commonwealth, any Non-Federal Entity, federal agency, or other party to dispute the same. For avoidance of doubt, the reservation of creditors' rights in no way permits any creditor to assert its rights (if any) against the Federal Disaster Relief Funds, the Commonwealth Disaster Relief Advances, or the Disaster Relief Accounts or the right to seek adequate protection for the use of the same.

## **URGENT MOTION CERTIFICATION**

32. Pursuant to Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico and the Second Amended Notice, Case Management and Administrative Procedures [ECF No. 1065] established for these Title III cases, the FOMB and AAFAF certify that: (i) it has carefully examined the matter and concluded that there is a true need for an urgent hearing to seek an order in aid of anticipated federal disaster relief funding so that disaster relief work may be timely carried out; and (ii) on the morning of October 6, 2016, the AAFAF, its counsel, and counsel to the FOMB convened a call with Judge Houser and forty-plus representatives and advisors to key creditor groups to notify them of the situation, inform them of the FOMB and AAFAF's intent to file this Urgent Motion, address questions, and receive comments regarding this Urgent Motion. The FOMB and AAFAF have endeavored to incorporate comments received from the creditor groups into this Urgent Motion and the Order. Counsel for the co-movants are prepared to conduct reasonable good faith communications with parties in interest regarding the Order prior to the hearing.

## **NOTICE**

33. The FOMB and AAFAF have provided notice of this Urgent Motion to the following parties: (i) the Office of the United States Trustee for the District of Puerto Rico; (ii) the

15

indenture trustees and/or agents, as applicable, for the Debtors' bonds; (iii) the entities on the list of creditors holding the 20 largest unsecured claims against each Debtor; (iv) counsel to the statutory committees appointed in the Title III cases; (v) the Office of the United States Attorney for the District of Puerto Rico; (vi) the Puerto Rico Department of Justice; (vii) the Other Interested Parties;[7] and (viii) all parties filing a notice of appearance in the Title III cases. The FOMB and AAFAF submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the FOMB and AAFAF respectfully request entry of the Order substantially in the form of **Exhibit A**, granting the relief requested herein and any other relief as is just and proper.

DATED: October 15, 2017

---

[7] The "Other Interested Parties" include the following: The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

Respectfully submitted,

| | |
|---|---|
| /s/ *Martin J. Bienenstock* | /s/ *Hermann D. Bauer* |
| Martin J. Bienenstock | Hermann D. Bauer |
| Paul V. Possinger | O'NEILL & BORGES LLC |
| Ehud Barak | 250 Muñoz Rivera Ave., Suite 800 |
| Maja Zerjal | San Juan, PR 00918-1813 |
| (Admitted Pro Hac Vice) | Tel: (787) 764-8181 |
| PROSKAUER ROSE LLP | Fax: (787) 753-8944 |
| Eleven Times Square | |
| New York, NY 10036 | *Co-Attorneys for the Financial* |
| Tel: (212) 969-3000 | *Oversight and Management Board* |
| Fax: (212) 969-2900 | *as Representative for the Debtors* |

*Attorneys for the Financial
Oversight and Management Board
as representative for the Debtors*

Respectfully submitted,

/s/ Nancy A. Mitchell
Kevin D. Finger (admitted pro hac vice)
David D. Cleary (admitted pro hac vice)
Greenberg Traurig, LLP
77 West Wacker Drive Suite 3100
Chicago, IL 60601
Phone: 312.456.8400
Fax: 312.456.8435
Email: fingerk@gtlaw.com
clearyd@gtlaw.com

Nancy A. Mitchell (admitted pro hac vice)
Nathan A. Haynes (admitted pro hac vice)
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Phone: 212.801.9200
Fax : 212.801.6400
Email: mitchelln@gtlaw.com
haynesn@gtlaw.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

Respectfully submitted,

/s/ John J. Rapisardi
John J. Rapisardi
Suzzanne Uhland
Diana M. Perez
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

Respectfully submitted,

/s/ Andrés W. López
Andrés W. López
USDC No. 215311
**THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C.**
902 Fernández Juncos Ave.
San Juan, PR 00907
Tel: (787) 294-9508
Fax: (787) 294-9519

*Co-Attorney for the Puerto Rico Fiscal Agency and Financial Advisory Authority*