**EXHIBIT C**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA Title III<br><br>No. 17 BK 3567-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico  (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax  Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS)  (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the  Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax  ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last  Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software  limitations).

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br><br>(Jointly Administered) |

**[PROPOSED] ORDER GRANTING URGENT JOINT MOTION OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ORDER CONCERNING RECEIPT AND USE OF ANTICIPATED FEDERAL DISASTER RELIEF FUNDS AND PRESERVING RIGHTS OF PARTIES**

Upon consideration of the *Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties* (the "Urgent Motion") filed jointly by the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), Puerto Rico Highways and Transportation Authority ("HTA"), and Puerto Rico Electric Power Authority ("PREPA") (collectively, the "Debtors") in these Title III cases pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtors pursuant to the authority

granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017; the Court having jurisdiction pursuant to PROMESA section 306(a); it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Urgent Motion is in the best interest of the Debtors, their creditors, and other parties in interest; and the Court having found that the FOMB and AAFAF, as co-movants, provided adequate and appropriate notice of the Urgent Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Urgent Motion and having heard statements in support of the Urgent Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Urgent Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief granted herein having been withdrawn or are overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1. The Urgent Motion is GRANTED to the extent set forth herein;

2. All Federal Disaster Relief Funds,[2] Commonwealth Disaster Relief Advances,

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Urgent Motion; except that:

- "Federal Disaster Relief Funds" shall mean "funds made available by, disbursed by, and/or otherwise provided by the Federal Emergency Management Agency ("FEMA"), or any other federal agency pursuant to the Stafford Act, 42 U.S.C. § 5121 *et seq.*, to the Commonwealth and Non-Federal Entities for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance in the form of grants; *provided, however*, that Federal Disaster Relief Funds shall not include funds received by the Commonwealth as reimbursement for Commonwealth Disaster Relief Advances; and *provided further*, for the avoidance of doubt, that Federal Disaster Relief Funds shall not include any Reimbursement Claim or any funds received by the Commonwealth on account of any Reimbursement Claim."
- "Commonwealth Disaster Relief Advances" shall mean "advances by the Commonwealth to Non-Federal Entities of, or expenditures by the Commonwealth from, funds other than Federal Disaster Relief Funds, to pay the costs of a project approved by a federal agency,

and Disaster Relief Accounts shall not be subject to any liens, encumbrances, priorities, or other claims by pre-existing creditors in any form whatsoever;

       3.       All Federal Disaster Relief Funds shall be received by the Commonwealth and deposited by the Commonwealth or the Non-Federal Entity to which such funds are transferred solely into Disaster Relief Accounts and shall be used solely for the purposes designated in the FEMA Agreement and/or any governing Project Worksheet;

       4.       Any Commonwealth Disaster Relief Advances shall be received and deposited by Non-Federal Entities into Disaster Relief Accounts and used solely for the purposes set forth in the FEMA Agreement and/or any governing Project Worksheet. The Commonwealth and the Non-Federal Entities shall not deposit any funds, other than Federal Disaster Relief Funds and Commonwealth Disaster Relief Advances into Disaster Relief Accounts; *provided, however*, that, notwithstanding the foregoing prohibition, in the event that any funds are so deposited, such funds shall, immediately upon discovery, be transferred out of such accounts and remain subject to any lien, encumbrance, priority, or other claim that such funds would have otherwise been subject to but for the improper deposit of such funds in a Disaster Relief Account;

       5.       No creditor of the Commonwealth or any Non-Federal Entity shall assert a lien

---

    including FEMA, and to be reimbursed by funds made available by, disbursed by, and/or otherwise provided by FEMA or any other federal agency pursuant to the Stafford Act, 42 U.S.C. § 5121 *et seq.*, to the Commonwealth and Non-Federal Entities for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance in the form of grants; *provided,* for the avoidance of doubt, that Commonwealth Disaster Relief Advances shall not include any Reimbursement Claim or any funds received by the Commonwealth on account of any Reimbursement Claim."

- "Disaster Relief Accounts" shall mean "new, segregated, non-commingled, unencumbered accounts held in the name of the Commonwealth or of the instrumentality to whom the funds have been allocated according to a governing Project Worksheet."

on or priority to or shall exercise any remedies against any Federal Disaster Relief Funds, Commonwealth Disaster Relief Advances, or Disaster Relief Accounts whether held by the Commonwealth or Non-Federal Entities, or be entitled to take any enforcement action against such funds or accounts or interfere in any way with the payment of Federal Disaster Relief Funds or Commonwealth Disaster Relief Advances to parties entitled to such payment, in each case so long as such funds and accounts are used solely for the purposes set forth in the FEMA Agreement and/or any governing Project Worksheet;

6. No creditor shall be entitled to adequate protection premised on the Commonwealth's or any Non-Federal Entity's use of Federal Disaster Relief Funds or Commonwealth Disaster Relief Advances;

7. To the extent any Federal Disaster Relief Funds become disobligated, de-obligated, disallowed, unallowed, or are otherwise required to be reimbursed, repaid or returned to the federal government, or to the extent the Commonwealth fails to receive reimbursement from the federal government for any Commonwealth Disaster Relief Advances or the Commonwealth is required to reimburse, repay, or return any funds made available by, disbursed by, or otherwise provided by any federal agency that reimbursed a Commonwealth Disaster Relief Advance, the Commonwealth shall have a claim against the Non-Federal Entity to which it transferred Federal Disaster Relief Funds or made a Commonwealth Disaster Relief Advance (such claim, a "Reimbursement Claim"). To the extent the Commonwealth asserts a Reimbursement Claim against a Non-Federal Entity that is a debtor under Title III of PROMESA, such Reimbursement Claim shall be a superpriority administrative expense claim in such Non-Federal Entity's Title III Case. To the extent the Commonwealth seeks to transfer Federal Disaster Relief Funds or make Commonwealth

Disaster Relief Advances to a Non-Federal Entity that is not a debtor under Title III of PROMESA, the Commonwealth shall condition such transfer of Federal Disaster Relief Funds or Commonwealth Disaster Relief Advances on the prior grant from such Non-Federal Entity of a lien in favor of the Commonwealth on all of that Non-Federal Entity's real and personal property, in what whatever form, wherever located, and whether now or hereafter existing, and all parts thereof, all accessions thereto, and all replacements therefor, which lien shall be immediately perfected and shall secure all potential Reimbursement Claims; *provided, however*, that to the extent such Non-Federal Entity's real and personal property are subject to an existing, valid, and enforceable lien in favor of another party, then the lien granted to the Commonwealth shall be junior to such existing, valid, and enforceable lien to the extent required under applicable agreements and law;

8. This Order shall be without prejudice to: (i) any party's rights under applicable agreements or applicable law to assert a lien, encumbrance, priority, or other claim against any property other than Federal Disaster Relief Funds, Commonwealth Disaster Relief Advances, or Disaster Relief Accounts, or to argue solely for the purposes of determining the extent of its claim or treatment in respect of such claim that the Federal Disaster Relief Funds, Commonwealth Disaster Relief Advances, or Disaster Relief Accounts, would, notwithstanding any restrictions under applicable federal law and/or this Order, be subject to that party's lien, encumbrance, priority, or other claim, or otherwise subject to the terms of agreement with creditors or any rights granted under the terms of applicable agreements or law; and (ii) the right of the Commonwealth, any Non-Federal Entity, federal agency, or other party to dispute the same;

9. Immediately upon entry by the Court of this Order, (i) AAFAF, the

Commonwealth, the Non-Federal Entities, and the FOMB, as the Debtors' representative in the Title III cases, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted herein, and (ii) this Order shall be binding on all entities having received prior notice of the Urgent Motion;

10. The Court shall retain exclusive jurisdiction to hear and determine any and all disputes related to or arising from the implementation, interpretation, and enforcement of this order.

SO ORDERED.

Dated: October_____, 2017

HON. LAURA TAYLOR SWAIN
United States District Judge