UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. 1444 |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA Title III<br><br>No. 17 BK 3567-LTS<br><br>Re: ECF No. 302 |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br><br>Re: ECF No. 345 |

**OMNIBUS REPLY OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO RESPONSES TO URGENT JOINT MOTION FOR ORDER CONCERNING RECEIPT AND USE OF ANTICIPATED FEDERAL DISASTER RELIEF FUNDS AND PRESERVING RIGHTS OF PARTIES**

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), Puerto Rico Highways and Transportation Authority ("HTA"), and Puerto Rico Electric Power Authority ("PREPA") (collectively, the "Debtors") in these Title III cases pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtors pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submit this *Omnibus Reply of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority to Responses to Urgent Motion For Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights*

2

*of Parties* (the "Reply"). In support of this Reply, the FOMB and AAFAF respectfully state as follows:

1. The FOMB and AAFAF filed the Urgent Motion[2] seeking an order to clarify that desperately needed Federal Disaster Relief Funds[3] and Commonwealth Disaster Relief Advances[4] being provided to Puerto Rico will be used solely for their intended purposes—aiding the ongoing disaster relief and recovery efforts—and will not be subject to existing creditor claims. As discussed in the Urgent Motion, the FOMB and AAFAF do not believe that the Commonwealth and its instrumentalities are required to obtain Court approval to receive, deposit, transfer, or use Federal Disaster Relief Funds. The FOMB and AAFAF also believe that under the FEMA Agreement and applicable federal law, no party other than the Commonwealth and Non-Federal Entities can claim an interest in the Federal Disaster Relief Funds. Moreover, federal law is clear that no lien, encumbrance, priority, or other claim can be asserted against the funds.

2. However, to facilitate the transfer and use of Federal Disaster Relief Funds, the

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in *Urgent Joint Motion Of The Commonwealth Of Puerto Rico, Puerto Rico Highways And Transportation Authority, Puerto Rico Electric Power Authority, And The Puerto Rico Fiscal Agency And Financial Advisory Authority For Order Concerning Receipt And Use Of Anticipated Federal Disaster Relief Funds And Preserving Rights Of Parties* [Case No. 17-3283, ECF No. 1444].

[3] "Federal Disaster Relief Funds" means "federal assistance as defined in 2 C.F.R. § 200.40 made available, disbursed by, and/or otherwise earmarked or provided by the Federal Emergency Management Agency ("FEMA"), or any other federal agency, to the Commonwealth and Non-Federal Entities, whether directly or indirectly, and related program income, that may be used for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance; *provided, however*, that Federal Disaster Relief Funds shall not include funds received by the Commonwealth as reimbursement for Commonwealth Disaster Relief Advances; and *provided further*, for avoidance of doubt, that Federal Disaster Relief Funds shall not include any Reimbursement Claim or any funds received by the Commonwealth on account of any Reimbursement Claim."

[4] "Commonwealth Disaster Relief Advances" means "advances by the Commonwealth to Non-Federal Entities of, or expenditures by the Commonwealth from, funds other than Federal Disaster Relief Funds, to pay the costs of a project approved by FEMA or another federal agency entitled to approve the use of Federal Disaster Relief Funds, and to be reimbursed by funds made available by, disbursed by, and/or otherwise provided by FEMA or any other federal agency to the Commonwealth and Non-Federal Entities for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance in the form of grants; *provided* for the avoidance of doubt, that Commonwealth Disaster Relief Advances shall not include any Reimbursement Claim or any funds received by the Commonwealth on account of any Reimbursement Claim."

FOMB and AAFAF seek entry of the revised proposed order, attached hereto as **Exhibit A** (the "Order").[5] By providing federal agencies and vendors comfort that the Federal Disaster Relief Funds will be used solely for their statutorily mandated purposes, the Order will ensure that such funds are received and put to use as expeditiously and efficiently as possible.

3. Several parties filed responses to the Urgent Motion, none of which fundamentally oppose the requested relief.[6] In fact, each responding party expressed its desire that Federal Disaster Relief Funds promptly be made available to Puerto Rico free of creditor interference. Instead, the Responses assert limited objections to the scope of the requested relief and the form of the proposed order.

4. The FOMB and AAFAF have endeavored to incorporate the comments included in the Responses and additional comments they have received from creditor groups and the U.S. Department of Justice in the Order. In particular, changes were made to the definition of "Federal Disaster Relief Funds" and paragraphs 3, 4, 6, 11, and new paragraph 8 and 12 were added to the proposed order, in response to comments received from the U.S. Department of Justice. The FOMB and AAFAF have not been able to resolve all outstanding objections. This Reply responds to those objections that remain outstanding.

A. *The Scope of the Requested Relief is Appropriate.*

5. The Ad Hoc Group of General Obligation Bondholders (the "GO Bondholders") object to the scope of the requested relief. They would have the Order apply only to Federal

---

[5] A redline of the Order against the proposed order attached to the Urgent Motion, setting forth changes to that proposed order, is attached as **Exhibit B** hereto

[6] *See* Ambac Assurance Corporation's Limited Objection to Urgent Motion [Case No. 17-3283, ECF No. 1469] ("Ambac Limited Objection"); Response and Reservation of Rights of National Public Finance Guarantee Corporation to Urgent Motion [Case No. 17-3283, ECF No. 1470] ("National Response"); Limited Objection of the Ad Hoc Group of General Obligation Bondholders [Case No. 17-3283, ECF No. 1472] ("GO Bondholder Limited Objection" and together with the Ambac Limited Objection and the National Response, the "Responses").

Disaster Relief Funds provided pursuant to the Stafford Act, 42 U.S.C. § 5121 *et seq.*[7] As discussed in the Urgent Motion, federal agencies other than FEMA may provide Federal Disaster Relief Funds under federal programs not covered by the Stafford Act. The Government does not yet know the full extent of Federal Disaster Relief Funds that will be provided to Puerto Rico and under what federal programs those funds will be made available. However, whether Federal Disaster Relief Funds are made available pursuant to the Stafford Act or under programs not covered by the Stafford Act, the relevant federal agencies and vendors will need the assurances afforded by the Order.

6. The GO Bondholders would have the Debtors return to the Court in each instance where Federal Disaster Relief Funds are made available under new federal program to seek comfort that the funds will not be subject to creditor claims or liens. Such a requirement may unnecessarily delay the receipt and use of urgently needed aid. In light of the significant burden this would place on the Debtors, such a requirement is inappropriate. Indeed, in its comments to the Order, the U.S. Department of Justice expressly requested language to ensure that the protections afforded by the Order apply not only to funds provided under the FEMA Agreement but also to Federal Disaster Relief Funds provided pursuant to agreements with other federal agencies.

7. Moreover, applicable federal law protects not only funds provided by FEMA, but funds provided by the federal government and its agencies generally. Federal law provides that all Federal Disaster Relief Funds will not under any circumstances be subject to any liens, encumbrances, priorities, or other claims by pre-existing creditors. The federal government retains an interest in federal funds in the hands of a grantee, unless and until expended, in accordance with

---

[7] GO Bondholder Limited Objection at ¶ 1.

5

the terms of the grant and are not subject to claims of creditors. *See U.S. Dep't of Hous. & Urban Dev. v. K. Capolino Const. Corp.*, No. 01 CIV. 390 (JGK), 2001 WL 487436, at *4 (S.D.N.Y. May 7, 2001) (citing *Buchannan v. Alexander*, 45 U.S. (4 How.) 20-21, (1846)); *In re Joliet-Will Cty. Cmty. Action Agency*, 847 F.2d 430, 433 (7th Cir. 1988). Federal law also broadly prohibits any unauthorized assignment of, including granting a lien on, any federal contract or funds. *See* 31 U.S.C. § 3727; 41 U.S.C. § 15 (collectively, the "Anti-Assignment Acts"); *see also Saint John Marine Co. v. U.S.*, 92 F.3d 39, 48 (2d Cir. 1996) (lien on right to payment from federal government was "assignment" for purposes of Anti-Assignment Acts); *United States v. Gillis*, 95 U.S. 407, 413 (1877) (referring to the Anti-Assignment Acts: "No language could be broader or more emphatic than these enactments. The words embrace every claim against the United States, however, arising, of whatever nature it may be, and wherever and whenever presented."); *Marger v. Ball*, 510 F. Supp. 9, 13 (D. Me. 1980) (same).

8. These restrictions apply uniformly to all federal grants, whether made available pursuant to the Stafford Act or otherwise. Thus, Federal Disaster Relief Funds will not be subject to creditor claims under any circumstances. Identifying with particularity the funds and the federal program pursuant to which they are being made available in each instance would not change this conclusion. Accordingly, in light of the burden and delay associated with requiring the Debtors to seek relief each time Federal Disaster Relief Funds are made available under a new federal program, the Order should be entered with respect to all Federal Disaster Relief Funds.

**B.** *The Order Should Not Include Any Reporting Requirements.*

9. Ambac Assurance Corporation ("Ambac") asserts that the Order should include a requirement that the Commonwealth, AAFAF, and the FOMB communicate with creditors in good faith to identify all recipients of Federal Disaster Relief Funds and the use to which such funds

have been put. Federal law and the FEMA Agreement impose rigorous monitoring and reporting requirements on the Commonwealth and Non-Federal Entities that receive Federal Disaster Relief Funds. *See, e.g.*, 2 C.F.R. §§ 200.301, 200.302, 200.327, 200.333, 200.336. In particular, the Commonwealth must submit Federal Financial Reports (Standard Form 425) to FEMA quarterly. These reports must include reports of expenditures by Non-Federal Entities and subrecipients. In addition, the Commonwealth must submit performance and progress reports to FEMA quarterly, which include the status of the project and amount of expenditures on each project. These monitoring and reporting requirements are sufficient to ensure that the Federal Disaster Relief Funds are put to their intended purposes in compliance with the FEMA Agreement and applicable federal law.

10. Notably, there is no obligation under federal law or the FEMA Agreement to report to creditors or other interested parties. As discussed above, existing creditors have no interest in the Federal Disaster Relief Funds. Thus, there is no basis to require Debtors to report to creditors how Federal Disaster Relief Funds are used.

11. Moreover, any additional reporting requirements would impose an unnecessary burden on the Commonwealth and the Non-Federal Entities. The existing reporting requirements under federal law and the FEMA Agreement already place significant demands on the Commonwealth and Non-Federal Entities' limited resources. The Order should not add to that burden by imposing additional monitoring and reporting requirements not otherwise required under federal law or the FEMA Agreement.

12. For these reasons, the FOMB and AAFAF request that the Court overrule Ambac's Limited Objection and grant the Urgent Motion.

C.   *The Prohibition on Seeking Adequate Protection is Appropriate.*

13.   National Public Finance Guarantee Corporation ("National") asserts that determining the creditors' rights to adequate protection is premature. Allowing creditors to seek adequate protection on account of the Debtors' use of the Federal Disaster Relief Funds and Commonwealth Disaster Relief Advances would undermine the assurances provided by the Order. By seeking adequate protection, creditors could effectively make a backdoor claim against the Federal Disaster Relief Funds.

14.   Puerto Rico is facing one of its worst crises in modern history in the aftermath of Hurricanes Maria and Irma. The extensive costs of restoring basic government services and providing aid to victims of the storms are severely straining the Debtors' already limited liquidity. In addition, the storms have disrupted government operations and dramatically reduced incoming revenues. As a result, the Debtors are facing an acute liquidity crisis. The Debtors cannot afford to divert much needed revenue away from the relief and recovery effort to provide creditors with adequate protection on account of Federal Disaster Relief Funds and Commonwealth Disaster Relief Advances. The Debtors' obligations with respect to existing creditors should not be enlarged because of their receipt of Federal Disaster Relief Funds in which they have a narrowly circumscribed interest.

15.   While the FOMB, AAFAF, and the U.S. government do not believe that any existing creditors can have an interest in Federal Disaster Relief Funds or Commonwealth Disaster Relief Advances, the Order nonetheless reserves creditors' rights to argue that such funds would fall within the defined scope of their collateral, provided such arguments do not prevent or otherwise interfere with the Commonwealth and Non-Federal Entities use of those funds. Accordingly, the Order expressly prohibits creditors from seeking adequate protection because

being required to provide adequate protection would interfere with the Commonwealth's and Non-Federal Entities' use of the funds. By contrast, the Order reserves creditors' rights to argue, among other things, that under section 506(a) of the Bankruptcy Code that Federal Disaster Relief Funds and Commonwealth Disaster Relief Advances should be considered for purposes of valuing their secured claims. The Order's reservation of rights strikes an appropriate balance between preserving creditors' rights and providing assurances that the funds will be put to their intended uses free from creditor interference.

16. For these reasons, the FOMB and AAFAF request that the Court overrule National's objection and enter the Order, including the prohibition on adequate protection.

### D. Granting the Commonwealth a Superpriority Claim to the Extent of Any Disobligated Award is Appropriate.

17. Similarly, National asserts that granting the Commonwealth a superpriority administrative claim to the extent of any disobligated or otherwise disallowed Federal Disaster Relief Funds or Commonwealth Disaster Relief Advances is premature. This is not so. The Commonwealth should not be made to wait until funds are disobligated to protect its interest.

18. As discussed in the Urgent Motion, if Federal Disaster Relief Funds are not used for their intended purposes or are otherwise disallowed, the Commonwealth, as the recipient, is obligated to reimburse the applicable federal agency. *See* 2 C.F.R. § 200.410. A significant portion of the Federal Disaster Relief Funds ultimately will be provided to Non-Federal Entities other than the Commonwealth. Under the Stafford Act and the FEMA Agreement, the Commonwealth is the "recipient" of the grant, but in practice acts as a conduit to transfer the funds to the applicable Non-Federal Entity.

19. The Commonwealth should have assurance that it will be made whole for any payment on account of disallowed Federal Disaster Relief Funds. Granting the Commonwealth a

9

superpriority administrative expense claim against any Non-Federal Entity that is or becomes a debtor in a case under Title III of PROMESA to the extent of any disobligated funds will provide that assurance.

20. The GO Bondholders request that the Commonwealth be afforded further protection. They assert that any transfer of Federal Disaster Relief Funds or Commonwealth Disaster Relief Advances from the Commonwealth to a Non-Federal Entity should be conditioned on the Non-Federal Entity granting the Commonwealth a lien, provided that the lien does not prime holders of preexisting liens. The FOMB and AAFAF considered this approach and determined that granting the Commonwealth a superpriority administrative claim represented a more appropriate balance between the rights of the Commonwealth, the Non-Federal Entities, and their respective creditors. In addition, with respect to certain Non-Federal Entities, granting a lien on their property may be disruptive and unduly complicated. Accordingly, the FOMB and AAFAF determined that requesting a superiority administrative expense claim presented a simpler mechanism to protect the Commonwealth's right to repayment for any payments made on account of disobligated funds.

WHEREFORE, the FOMB and AAFAF respectfully request that the Court overrule the limited objections and enter the Order substantially in the form of **Exhibit A**, granting the relief requested in the Urgent Motion and any other relief as is just and proper.

DATED: October 23, 2017

Respectfully submitted,

| | |
|---|---|
| */s/ Martin J. Bienenstock* | */s/ Hermann D. Bauer* |

Martin J. Bienenstock  Hermann D. Bauer
Paul V. Possinger  O'NEILL & BORGES LLC
Ehud Barak  250 Muñoz Rivera Ave., Suite 800
Maja Zerjal  San Juan, PR 00918-1813
(Admitted *Pro Hac Vice*)  Tel: (787) 764-8181
PROSKAUER ROSE LLP  Fax: (787) 753-8944
Eleven Times Square
New York, NY 10036  *Co-Attorneys for the Financial*
Tel: (212) 969-3000  *Oversight and Management Board*
Fax: (212) 969-2900  *as Representative for the Debtors*

*Attorneys for the Financial
Oversight and Management Board
as representative for the Debtors*

11

Respectfully submitted,

/s/ Nancy A. Mitchell
Kevin D. Finger (*admitted pro hac vice*)
David D. Cleary (*admitted pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive Suite 3100
Chicago, IL 60601
Phone: 312.456.8400
Fax: 312.456.8435
Email: fingerk@gtlaw.com
clearyd@gtlaw.com

Nancy A. Mitchell (*admitted pro hac vice*)
Nathan A. Haynes (*admitted pro hac vice*)
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Phone: 212.801.9200
Fax : 212.801.6400
Email: mitchelln@gtlaw.com
haynesn@gtlaw.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

Respectfully submitted,

/s/ Peter Friedman
John J. Rapisardi
Suzzanne Uhland
Diana M. Perez
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel:   (212) 326-2000
Fax:  (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Tel:   (202) 383-5300
Fax:  (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

Respectfully submitted,

/s/ Andrés W. López
Andrés W. López
USDC No. 215311
**THE LAW OFFICES OF
ANDRÉS W. LÓPEZ, P.S.C.**
902 Fernández Juncos Ave.
San Juan, PR 00907
Tel:  (787) 294-9508
Fax:  (787) 294-9519

*Co-Attorney for the Puerto Rico Fiscal Agency and Financial Advisory Authority*