UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>    Debtors | PROMESA<br>Title III<br><br>No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

# MOTION FOR RELIEF FROM AUTOMATIC STAY

TO THE HONORABLE COURT:

GAM Realty, LLC ("GAM") moves for relief from the stay of the action decreed by the United States District Court for Puerto Rico in *GAM Realty LLC v. Nelson J. Santiago Marrero, et al.*, Civil Action No. 16-2910 (PAD) (the "Action") pursuant to 48 U.S.C. § 2161(a) and 11 U.S.C. §§ 362(a) and 922.

**I.   Procedural Background**

On November 2, 2016, GAM filed a complaint against two Puerto Rico government officers in their official capacities: Nelson J. Santiago Marrero, the Secretary of the Department of Natural and Environmental Resources of Puerto Rico ("DRNA" for its Spanish acronym), and Alberto Lastra Power, the Executive Director of the Permits Management Office of Puerto Rico ("OGPe" for its Spanish acronym) (together, the "Officers"). (*See* Ex. 1, GAM's complaint.)

GAM's claims for relief against the Officers arose under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments of the United States

Constitution. The complaint did not seek damages against the Officers. It sought only injunctive relief under 42 U.S.C. § 1983 and Fed. R. Civ. P. 65 and a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Fed. R. Civ. P. 57.

GAM filed the complaint to enjoin the deprivation of its constitutional rights. The Officers, under color of law, have required GAM to renounce its rights under the Takings Clause and the Due Process Clause, U.S. Const. amend. V, before they will allow GAM to develop and use a valuable real estate property that it owns in the municipality of Cataño, Puerto Rico.

In 2014, GAM proposed to build a parking lot in the property to accommodate the growing needs of a car storage facility operated there by Sojitz de Puerto Rico, Corp., a distributor of Hyundai motor vehicles. The proposed parking lot complied with the property's zoning and with the municipality of Cataño's territorial ordering plans. It also counted with the municipality's formal approval. Its construction did not imply the destruction of any natural resources of great ecological value, since none exist in it.

Nevertheless, the Officers conditioned the issuance of the permit for the parking lot upon GAM's renouncement of its rights under the Takings Clause. They required GAM to cede to the DRNA for free and in perpetuity title to 2.8 *cuerdas*[1] of the property out of the five acres where the development of the parking lot was planned, and to establish, in addition, two disproportionately large buffer zones, one 20 meters wide, the other 25 meters wide. They further required reforestation, the use of special permeable asphalt in the parking lot, and the planting of a line of trees as a barrier between the parking lot and the buffer zone(s).

The Officers justified these measures as a purported mitigation for the parking lot's environmental impact. However, neither they nor the agencies they head made any findings of an

---

[1] A *cuerda* is "a Puerto Rican unit of land measure equal to 0.97 acre." (www.merriam-webster.com/dictionary/cuerda).

environmental impact. Instead, they arbitrarily reclassified the property's habitats to impose the need for mitigation.

Without a basis in fact or law, the Officers reclassified the 2.8 *cuerdas* they seek to take from GAM as a habitat with "a high degree of biodiversity of flora and fauna or a high density of species of wildlife." This reclassification contradicted a study of the property carried out at the DRNA and GAM's joint request, which found that (1) the property had little variety of flora and, except for trees, no element that would support fauna; (2) the property's conditions were such that the lack of support for fauna could hardly be surmounted; (3) no critical or vulnerable elements that would merit protection could be detected at the property; (4) the property simply resembled a grassland or savanna; and (5) the portion of the property under study could only qualify as a habitat with a low development potential. The Officers ignored these factual findings to reclassify incorrectly and arbitrarily the 2.8 *cuerdas* they sought to take from GAM as a sort of habitat requiring unwarranted and onerous mitigation measures.

As a result of these actions, GAM sought, first, injunctive relief to enjoin the Officers from depriving GAM of its property through the imposition of unconstitutional conditions on the issuance of the parking lot's permit and through the misclassification of the habitats in GAM's property. Secondly, GAM sought a declaratory judgment that the Officers' conditions and demands lacked an essential nexus to the purported aim of protecting the natural habitats at or near the property, and further lacked proportionality with any need to protect those habitats from the parking lot's environmental effects or to mitigate such effects. Thirdly, GAM sought a declaratory judgment that the Officers' reclassification of the habitats in its property was arbitrary, lacked basis in fact and law, and aimed to deprive GAM of its property without due process of law.

The Officers did not answer GAM's complaint. Instead they filed a motion to dismiss for an alleged failure to state a claim upon which relief can be granted. GAM opposed the motion, and the District Court denied it, noting that the Officers' "motion does not, however, discuss specific Supreme Court case law – which GAM noted in its Opposition – where conditions on issuance of permits for land use or development analogous to the ones alleged here were considered unconstitutional." (Ex. 2, ECF No. 27, at p. 3, of the Action.)

Upon denying the motion to dismiss, the District Court ordered the Officers to answer the complaint by June 22, 2017. (*Id.*) The Officers did not comply. Instead, on June 27, 2017, five days after the deadline and technically in default, they filed a notice of automatic stay asking the District Court to take judicial notice that the action was stayed because a petition had been filed for the Commonwealth of Puerto Rico (the "Commonwealth") to become a debtor under PROMESA's Title III, which incorporates by reference the automatic stay provisions of the Bankruptcy Code. (Ex. 3, ECF No. 29 of the Action.)

GAM opposed the notice of automatic stay as an inadmissibly broad and unconstitutional application of PROMESA. It pointed out that the plain statutory language of the automatic stay provisions, Sections 362(a) and 922(a) of the Bankruptcy Code, did not include within their scope an action of the nature of GAM's complaint. GAM further noted that PROMESA itself excluded actions such as GAM's from the stay, because the Commonwealth's compliance with federal laws was involved as well as the territorial government's regulatory powers. GAM finally argued that interpreting the PROMESA stay to include actions such as GAM's, where a person is being deprived of rights under the United States Constitution, would make PROMESA's stay unconstitutional.

Despite these issues, the District Court ordered that "[t]his case is stayed pursuant to 48 U.S.C. sec. 2161(a) and 11 U.S.C. sec. 362(a) and 922. Any request to lift or vacate the stay must be filed in the bankruptcy court in Bankruptcy Case No. 17-bk-03283 (LTS)." (Ex. 4, ECF No. 33 of the Action.)

Subsequently GAM filed a notice of appeal from District Court's order.[2] Before the parties filed their briefs, however, the United States Court of Appeals for the First Circuit entered the following order:

> The order on appeal confirmed that the underlying case is automatically stayed in light of the Commonwealth of Puerto Rico's PROMESA Title III case. The appellant was directed that "any request to lift or vacate the stay must be filed in the bankruptcy court in Bankruptcy Case No. 17-bk-03283 (LTS)." This appeal shall be held in abeyance pending further related proceedings in the Title III case. The parties shall file status reports with this court every 90 days from the date of this order. (Ex. 5.)

In compliance with the First Circuit Court's order, GAM is filing the present motion, requesting that the Court either rule that the Title III stay does not apply to GAM's complaint or that it lift the stay so that the litigation of GAM's complaint can continue.

## II. The Title III Automatic Stay is Inapplicable to GAM's claims for relief

The District Court stayed the action under Sections 362(a) and 922 of the Bankruptcy Code, which became applicable to actions and proceedings against the Commonwealth once the latter became a debtor under PROMESA's Title III. Sections 362(a) and 922 are, however, inapplicable to GAM's action.

The nature of GAM's complaint places the action outside the scope of the automatic stay decreed by Sections 362(a) and 922. GAM's complaint does not state an action or proceeding against the Commonwealth. It does not aim to control the Commonwealth's property. It does not

---

[2] Case No. 17-1859 at the U.S. Court of Appeals for the First Circuit.

seek to collect, assess, recover, or enforce a "claim" against the Commonwealth, as the term is defined in the Bankruptcy Code and for purposes of PROMESA's Title III. GAM's complaint seeks only equitable and declaratory relief to enjoin the Officers' acts to deprive GAM of due process and to coerce GAM into renouncing its rights under the Takings Clause. The action arises from the Officers' imposition of unconstitutional conditions on a permit requested by GAM for the construction of a parking lot on its real estate property.

GAM's action also falls outside the scope of the stay because PROMESA does not relieve the Puerto Rico government from complying with the United States Constitution and is not meant to affect actions involving the Puerto Rico government's regulatory powers. The stay of the action runs counter to both of these aspects of PROMESA. The action seeks relief from the Officers' abuse of the Puerto Rico government's regulatory powers to deprive GAM of its rights under the Fifth Amendment of the Constitution. PROMESA cannot, by means of the Title III stay, immunize the Officers from actions to enjoin their unconstitutional acts. Extending the automatic stay to such actions would make the stay itself unconstitutional. Since as a rule Congress is not presumed to have intended its statutes to raise constitutional problems, PROMESA cannot lead to that result. Therefore, the scope of the stay excludes actions like GAM's that seek to enjoin Puerto Rico government officers' acts to deprive a person's constitutional rights.

1. ***The plain language of Bankruptcy Code Sections 362(a) and 922 excludes GAM's claims for relief from the scope of the automatic stay.***

The District Court's order stayed the Action under Section 301(a) of PROMESA, which incorporates by reference the automatic stays of sections 362(a) and 922 of the Bankruptcy Code. However, neither section includes within its scope an action such as GAM's that is not

pled against a debtor and that fails to set forth a "claim" against a debtor, as defined by the Bankruptcy Code.

The first of the Bankruptcy Code provisions, Section 362(a), states in the parts relevant to this action that a bankruptcy petition or, by extension, a petition to commence a case as a debtor under PROMESA's Title III:

> (a) …operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> ...
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

None of these provisions of Section 362(a) apply to the Action. First, the Action is not against the Commonwealth, but only against two of its officers. In other words, it is not "the commencement or continuation…or other action or proceeding against the debtor" in the Title III proceeding. As defined by PROMESA, "[t]he term 'debtor' means the territory or covered territorial instrumentality concerning which a case under this title has been commenced." Section 301(c)(2) of PROMESA, 48 USC 2161(c)(2). Under this definition, the Officers do not qualify as a debtor.

Second, the Action in no way concerns a "claim" against the Commonwealth. For PROMESA's Title III, the term "claim" has the same meaning as in the Bankruptcy Code. *See* Section 301(b) of PROMESA, 48 USC 2161(b) ("[a] term used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), has the meaning given to the term for the purpose of the applicable section, unless the term is otherwise defined in this title") and Section 2(b)(2) of PROMESA ("Titles III and VI shall apply with respect to debts,

7

claims, and liens (as such terms are defined in section 101 of title 11, United States Code) created before, on, or after such date").

The Bankruptcy Code defines a "claim" as follows:

> (5) The term "claim" means—
>   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5).

Under this definition, GAM's complaint does not contain any sort of "claim." In the first place, the complaint nowhere alleges a right to payment, whether against the Commonwealth or the Officers. It does not ask for damages or monetary compensation. It does not involve a debt, lien, or property of the Commonwealth. It does not seek to direct the way in which the Commonwealth uses or disposes of its funds and resources.[3] Thus, GAM's complaint fails to state a "claim" in the sense of Section 101(5)(A). Likewise, the equitable relief that GAM is requesting against the Officers neither arises as a "remedy for breach of performance" nor "gives rise to a right to payment" against the Officers or the Commonwealth. Thus, the complaint also fails to plead a "claim" in the sense of Section 101(5)(B).

The absence of any sort of "claim" in GAM's complaint means that the Action cannot be viewed as seeking "to recover a claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(1), nor as seeking "to collect, assess, or recover a

---

[3] These features distinguish the Action from the litigation that was stayed in *Lex Claims, LLC v. Financial Oversight and Mgmt. Bd.*, 853 F.3d 548 (1st Cir. 2017). Even though the plaintiffs in *Lex* sought declaratory and injunctive relief, they aimed to control the Commonwealth's property: "the express purpose of the lawsuit [wa]s to preclude the Commonwealth from using its own funds as it sees fit." *Id.* at 552. GAM's complaint does not concern the Commonwealth's property or use of funds in any way. Instead it seeks to enjoin the imposition of unconstitutional conditions on the development, use, and enjoyment of GAM's property.

claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(6). None of the scenarios included in Section 362(a)(1) and (6) is posed by GAM's complaint. As a result, Section 362(a) is inapplicable and does not to stay the Action.

The other provision implied in the automatic stay, Section 922(a) of the Bankruptcy Code, is more to the point but it, too, is inapplicable. Section 922(a) provides that:

> (a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and
> (2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

Since GAM's complaint is only against officers of the debtor, not the debtor itself, Section 922(a)(1) is actually the provision that would determine whether the Action is stayed. While Section 362(a) applies only to actions against the debtor or the debtor's property, Section 922(a)(1) extends the stay to actions or proceedings against the debtor's officers. It, however, only stays an action against an officer of the debtor that "seeks to enforce a claim against the debtor." But as already noted, the Action does not seek in any way to enforce a "claim" against the Commonwealth. Therefore, Section 922(a), too, is inapplicable and does not stay the Action.

### 2. PROMESA itself precludes the application of the automatic stay to actions such as GAM's, where the territorial government's compliance with the United States Constitution and the territorial government's regulatory powers are involved.

Not only the plain language of Sections 362(a) and 922, but also PROMESA itself supports the exclusion of the Action from the automatic stay. Section 7 of PROMESA, 48 U.S.C. § 2106, establishes that "[e]xcept as otherwise provided in this chapter, nothing in this chapter shall be construed...in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws." GAM's claims for relief arise under the United

9

States Constitution and are brought under a federal statute, 42 U.S.C. § 1983. Any interpretation that PROMESA's Section 7 excludes from "Federal Laws" the "rights, privileges, or immunities secured by the Constitution" (42 U.S.C. § 1983) would be untenable. It would place in doubt PROMESA's constitutionality.

Such an interpretation must therefore be rejected. "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martínez*, 543 U.S. 371, 380-81 (2005). This canon of Constitutional Avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark*, 543 U.S., at 381.

In this case, interpreting Section 7's reference to "Federal Laws" as failing to include the "rights, privileges, or immunities secured by the Constitution" would "raise a multitude of constitutional problems," not the least of which would be the Congress's authority to establish such an exclusion. The interpretation would mean that Congress intended the territorial government to comply with Federal Laws, but not the Constitution, an unreasonable reading and presumption. Hence the canon of Constitutional Avoidance requires that the alternative interpretation be chosen: that the Commonwealth's "compliance with Federal Laws" under PROMESA includes compliance with the "rights, privileges, or immunities secured by the Constitution."

From another perspective, other provisions in PROMESA support excluding GAM's action from the automatic stay. They imply that Title III should not stay actions that concern the Puerto Rico government's regulatory powers.

10

For instance, Section 305 of PROMESA, 48 U.S.C. § 2165, provides that "[s]ubject to the limitations set forth in subchapters I and II of this chapter, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with...(1) any of the political or governmental powers of the debtor." Along similar lines, Section 304(h) of PROMESA, 48 U.S.C. § 2164(h), establishes that PROMESA "may not be construed to permit the discharge of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions." Lastly, Section 362(b)(4) of the Bankruptcy Code includes among the exceptions to the automatic stay "under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit...to enforce such governmental unit's or organization's police and regulatory power."

These three provisions evidence a general intention to exclude from the automatic stay those actions where the Puerto Rico government's regulatory powers are involved. GAM's Action is precisely of this kind. It concerns the Officers' abuse of the territorial government's regulatory powers, an abuse that aims to deprive GAM of its constitutional rights. Thus, PROMESA's intention to exclude from the Title III stay actions concerning the territorial government's regulatory powers places the Action beyond the scope of the automatic stay.

3. ***Extending the automatic stay to actions such as GAM's, which seek equitable and declaratory relief from the deprivation of rights under the Takings and Due Process Clauses, would be unconstitutional.***

PROMESA's Title III cannot be viewed as allowing the Officers to misuse the territorial government's regulatory powers to extort GAM into renouncing its constitutional rights, while removing, by means of the stay, GAM's right to challenge the constitutionality of the Officers'

11

acts. Such a view deprives GAM of its constitutional due process rights. In the present case, it also deprives GAM of its rights under the Takings Clause. The deprivation of these rights would make the Title III stay of PROMESA unconstitutional. "[A] law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

PROMESA cannot be interpreted in this fashion to deprive injured persons of their constitutional rights. *Clark,* 543 U.S., at 380-81. The Action, in which no claim or lien against the debtor, no property or debt of the debtor, and no right to payment from the debtor is involved, but where the issues solely concern the Officers' abuse of the government's regulatory powers to coerce GAM into renouncing its constitutional rights through extortionate demands, in no way implicates the aims that PROMESA was meant to achieve: "to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." Section 101(a) of PROMESA, 48 USC 2121(a). The Constitution's Supremacy Clause[4] and the statutory text of PROMESA provide enough grounds to exclude the Action from the stay and so avoid the problem of the overbroad and unconstitutional scope that the District Court order and the Commonwealth's[5] indiscriminate, scattershot, boilerplate filings of the notice of stay have provoked.

Other constitutional grounds also require that the Action be placed outside the scope of the stay. Beside the inapplicability the stay that follows from the plain language of Sections 362(a) and 922(a), *supra*, the Action is not covered by these Bankruptcy Code provisions because it is premised on the Constitution's Fifth Amendment, which trumps them. "The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without

---

[4] "This Constitution, and the laws of the United States which shall be made *in pursuance thereof*…shall be the supreme law of the land." U.S. Const. Art. VI (emphasis added).
[5] This reference to the Commonwealth is meant to include the Commonwealth's many agencies, instrumentalities, and officers.

12

compensation." *United States v. Security Indus. Bank*, 459 U.S. 70, 75 (1982). Therefore, PROMESA cannot incorporate or implement the Bankruptcy Code's automatic stay in a way that, directly or indirectly, deprives GAM of its rights under Takings Clause. *See also Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935). Subsuming the Action under the automatic stay would further such a deprivation, since the Action is aimed at enjoining the Officers from coercing GAM into renouncing its rights under the Takings Clause, and the stay would impede GAM from seeking relief from the Officers' unconstitutional acts.

### 4. *GAM's action is outside the scope of the stay*

GAM's Action falls outside the scope of PROMESA's Title III automatic stay. The Action does not interfere in any way with the Commonwealth's adjustment of debts under Title III, and does not involve the property or the disposition of resources of the Commonwealth. The stay of the Action under PROMESA and the Bankruptcy Code sections incorporated into it is a misuse of the automatic stay in order to deprive GAM of its constitutional rights. On their face, the Bankruptcy Code provisions establish that the stay does not apply to an action such as GAM's that is not directed at the debtor and does not seek to recover, assess, or collect a claim against the debtor. The application of the stay to the Action also conflicts with PROMESA's requirement that the territorial government comply with Federal laws, including the Constitution, and with PROMESA's intention to exclude from the stay actions concerning the territorial government's regulatory powers. Interpreting the stay to include the Action also implies the stay's unconstitutionality, so that the alternative interpretation that the scope of the stay does not extend to actions for declaratory and equitable relief to enjoin the deprivation of constitutional rights under the Due Process and Takings Clause is necessary to avoid the stay's unconstitutionality.

**III.     The Applicable Factors Justify Lifting the Stay for GAM's Action**

Under Section 362(d) of the Bankruptcy Code, applicable to PROMESA, the Court may grant a party in interest relief from the automatic stay. In GAM's case, where no property of the debtor is involved, the Court may grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). Also, the issues presented by GAM's request for relief from the stay do not present an issue of "the debtor's equity in property," so that once GAM makes an initial showing of cause, the burden of proof on all issues falls on the Commonwealth. 11 U.S.C. § 362(g). *See, e.g. In re Unanue-Casal*, 159 B.R. 90, 95 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ("the weight of authority explains that once the moving party establishes cause for such relief, a stricter burden then shifts to the debtor to demonstrate that he is entitled to the stay").

The Court has already established as the law of the case in this Title III proceeding that the factors used to determine whether cause exists for lifting the stay are those enumerated in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). (*See, e.g.*, ECF No. 600, at p. 2.)

> These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d, at 1286.

Of these twelve factors, five are relevant to the Action and support lifting the stay: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case…(7) whether litigation in another

14

forum would prejudice the interests of other creditors…(10) the interests of judicial economy and the expeditious and economical resolution of litigation…and (12) impact of the stay on the parties and the balance of harms."

First, relief from the stay would result in a complete resolution of the issues. The District Court can give GAM all the relief it requires. No further recourse to or intervention of the Title III Court would be needed. Since the Action only requests prospective equitable and declaratory relief, no issues would be left over that would need to be addressed in the Title III proceeding. An adverse judgment against Defendants would not give rise to a right to payment or a claim against the Commonwealth or its property, as defined in 48 U.S.C. § 2101(b)(2). Any declaratory or equitable relief that the District Court could grant would concern exclusively the conditions imposed on the issuance of a permit for the use and development of GAM's property. In no sense would the Title III debtor's estate be affected by such relief, so no issues would arise concerning the application of PROMESA's Title III as a result of any relief that could be granted.

Second, the Action has no connection with the Commonwealth's Title III case. No debt, lien, or property of the Commonwealth or its agencies and no claim—in the bankruptcy sense—against them is involved. Neither the litigation nor resolution of the Action interferes with the Commonwealth's reorganization under Title III. The main relief being requested is an equitable one that does not concern, affect, or interfere with the operations, property, or disposition of resources of the Commonwealth. The Action does not seek to possess or control any of the Commonwealth's property or resources. It concerns nothing more than GAM's own property. It asks only for the removal of the unconstitutional conditions that Defendants have imposed on GAM, and for the way to be cleared for the issuance of the permit that GAM needs for the use

15

and development of its property, which Defendants have barred for as long as GAM does not yield to their demands that it renounce its constitutional rights.

Third, the litigation of the Action will not prejudice the interests of the Commonwealth's creditors. Even if an adverse judgment is obtained against Defendants, the Action will not give rise to any claim against or right to payment from the Commonwealth that would compete with or have to be included among the creditors' claims. The Action will not impair the value of any property of the Commonwealth. It will not result in any lien or claim that could conflict with claims from the Commonwealth's creditors. It will not affect the operations of the Commonwealth or its agencies in any financial or economic sense, and cannot therefore affect their solvency or their capacity to satisfy their creditors' claims or the value, creditworthiness, or security of the latter.

Fifth, the impact of the stay on the parties and the balance of the harms favor lifting the stay. Defendants' unconstitutional conditions are costing GAM $30,000 monthly in lost rent, a loss that cannot be recouped. (*See* Ex. 1, Compl., at ¶ 45.) They are depriving GAM of the use of valuable property, (*id.* at ¶ 44), and to make matters worse, the bar they are placing on the property's use and development has put at risk the lease contract between GAM and Sojitz de Puerto Rico, Corp. (*See id.* at ¶¶ 12, 15-16.) Critically, Sojitz needs for its operation the parking lot that Defendants are preventing from being built until GAM meets their extortionate demands. The need is urgent. The lease contract between GAM and Sojitz is nearing its end. Eight of its ten years term have run out, and Sojitz is unlikely to renew the lease if the parking lot is not built soon. The lease's loss would cause GAM great economic harm, and the probability that Sojitz may decide not to renew the lease increases every day the Action remains unresolved.

16

On Defendants' side, any potential harm is negligible to null. The only harm that Defendants would suffer from lifting the stay is that they would have to litigate the Action, spending a limited amount of resources to do so. This harm cannot outweigh the continued deprivation of GAM's constitutional rights throughout the stay's indefinite duration; the financial loss that GAM is facing every month as a result of Defendants' unconstitutional actions; and the loss of Sojitz's lease contract that GAM is likely to suffer if the stay remains in effect.

### IV. Conclusion

The automatic stay should be lifted with respect to GAM's Action, given that the Action does not interfere in any way with the Commonwealth's reorganization under Title III, nor does it involve the property or disposition of resources of the Commonwealth. Allowing the Action to go forward in the District Court would allow a complete resolution of the issues, and would promote the expeditious and economical resolution of the Action. More importantly, the balance of harms favors lifting the stay. Every day the Action continues unresolved, GAM is unconstitutionally deprived of its property rights, suffers the loss of significant rental revenues, and faces the likely risk of losing a valuable lease contract. Defendants, on the other hand, would suffer at best the slight harm of some litigation expenses.

In the alternative, the Court may interpret its Order to determine that GAM's Action is outside the scope of the Order and the PROMESA Title III automatic stay. On their face, the Bankruptcy Code provisions that establish the stay do not apply to GAM's Action, since the Action is not directed at the debtor, and does not seek to recover, assess, or collect any claim against the debtor. Lastly, the application of the stay to GAM's Action raises serious constitutional issues, which could make PROMESA unconstitutional.

17

WHEREFORE, GAM moves for the stay to be lifted with regard to the Action, so that the latter may be litigated in the District Court, or for the Action to be declared outside the scope of the Title III automatic stay.

Respectfully submitted.

At San Juan, Puerto Rico, October 25, 2017.

    CASELLAS ALCOVER & BURGOS, P.S.C.
    PO Box 364924
    San Juan, PR 00936-4924
    Tel. (787) 756-1400
    Fax (787) 756-1401

    s/Ricardo F. Casellas Sánchez
    Bar No. 203114
    E-mail: rcasellas@cabprlaw.com

    s/Mariano A. Mier Romeu
    Bar No. 217203
    E-mail: mmier@cabprlaw.com

    *Attorneys for GAM Realty, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 25, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. The foregoing is also being e-mailed separately to Defendants' counsel of record, Joel Torres, at joeltorres@justicia.pr.gov, and Luis J. López-Valdés, at llopez@justicia.pr.gov.

At San Juan, Puerto Rico, October 25, 2017.

                                                **s/Mariano A. Mier Romeu**
                                                Bar No. 217203
                                                Casellas Alcover & Burgos, P.S.C.
                                                PO Box 364924
                                                San Juan PR  00936-4924
                                                Tel. (787) 756-1400
                                                Fax (787) 756-1401
                                                Email: mmier@cabprlaw.com