UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

               Debtors.[1]

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

The Court has received and reviewed the attached correspondence, described below, from interested persons in the above-captioned cases. Although the Court cannot respond individually to all of those who have expressed their thoughts or concerns, the Court is deeply mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the importance of the issues that are raised in these unprecedented cases.

1.     Letter dated October 17, 2017 from Mark Daniel Elliot.

Dated: October 27, 2017

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).






Mark Daniel Elliott

October 17, 2017

RE: Title III – The Financial Oversight and Management Board for Puerto Rico, as representative of No 17BK3284 LTS

Puerto Rico Sales Tax Financing (Joint Administration Corporation (COFINA), requested debtor

Honorable Judge Swain
United States District Court
Southern District of NY
500 Pearl Street
New York, NY 10007

Dear Honorable Judge Swain,

Summary:

- Puerto Rico is in dire need of capital at competitive rates.
- COFINA was set up to provide access to capital at competitive rates by properly (contractually/constitutionally) pledging assets as collateral.
- The best manner to allow Puerto Rico continued access to capital and competitive rates is to uphold the legal structure as intended in the original COFINA documentation.
- A restructuring must happen soon-COFINA holders must agree to a settlement of less than 100% owed (we own both senior and first subordinated issues) for Puerto Rico to retire their current COFINA debt and access capital at a more competitive rate immediately.

Page 1 of 13

We have some points of view that will help Puerto Rico gain access to capital markets at competitive rates needed for a path to a successful financial future. The current situation with the repayment of debt needs to be resolved in a way that affirms individual property rights so that access to financing sources are available immediately. There is a way that the current debt can be restructured in a manner that will leave Puerto Rico stronger financially while asserting property rights that will immediately allow access to much needed capital.

To say that the current crisis conditions in Puerto Rico are regrettable is an understatement. To say that the crisis has been a long time in the making is also an understatement. In these circumstances, it is literally impossible to please all parties involved. The population is not directly at fault for the inaction of their elected officials. However, the nature of the bloated bureaucracy of what has led to the demise of the PR economy and the entrenchment of the political class are related – as we noticed in the cases of Greece and other governments that have been in similar predicaments. When such a large percentage of the population is reliant on government inefficiently to provide the "jobs" and social welfare programs for such a large majority then an economy cannot effectively work. It is for these reasons that REAL reform and accountability is needed for ALL involved, not just a select few. If the entire burden of the mismanagement of the failed economy is simply born by those who lent to prop it up in what should have been temporary measures then this crisis is doomed to repeat itself – and likely on ever greater scales as the entire US population ages and governments are slow to respond by trimming their bloated expenses and payrolls and making their economies more productive and competitive for the private sector to provide the core jobs that are needed for an economy to run, pay taxes, and support itself.

This type of overall reform was understood to be needed by the United States Congress when it created PROMESA and the Federal Oversight Board that was appointment by President Obama. It was clearly understood that the elected officials didn't have the ability to pass much needed reforms for a population that is amazingly dependent on the state for jobs and social programs. Unfortunately, rather than tackling the difficult issues at hand that the elected officials never addressed, the PROMESA Federal Oversight Board Members did not take a balanced and holistic approach to solving the crisis, instead taking the easy road of past elected officials and punting the problem further down the road. In that process, they sought out any revenue to continue PR's oversized government. And that is when the raiding of a previously almost unquestionably (for about a decade) legally pledged asset was proposed.

In fact, the two main tasks that the Oversight Board was charged with were ensuring a fair and orderly transition to a sustainable economic future for PR (including fair resolution of private investor and collective public rights) and access to the capital markets at "reasonable" rates. And I believe the two are inherently connected. Without a sound long-term economic plan that makes sense and without manageable debt where bondholders can have faith in getting repaid then no free market investor will lend at "reasonable" (read "low") rates to the Commonwealth. I don't think it is much of a stretch to state that in assuring private investors their pledge of repayment will be honored that by taking away prior pledges accomplishes just the opposite of that confidence in the rule of law.

**Why Honoring the COFINA Pledged Asset is not only the Correct Legal Course of Action, but the Best for PR Public and Government, Overall**

The Question at Hand is Simply if COFINA Assets Were Properly Pledged as Collateral to The Original "Bailout" Loan, Over a Decade Ago

(Court's ruling that GO were not direct interested stakeholders – comes down to a question if COFINA assets were properly pledged. Nothing more, nothing less.) And this I believe to be a matter of United States Constitutional Law, as well as contract law. It is also a matter of PR Constitutional Law but that is being trumped by the Constitution of the United States and the fact that all legislation of PR Legislature is assumed to be constitutional.

It is easy to justify in such cases that one is simply taking from rich investors to give back to the greater good. But this oversimplification has led to the more serious economic disasters of Communist Russia, Cuba, North Korea, and more recently Venezuela. In fact, economists, almost are universal in the understanding the protection of private property rights, including investor rights, are necessary for economies to be most productive. When those rights are called into question or curtailed then private parties will require much higher rates of return to invest or lend – which leads to less for everyone involved. This confidence in the law of the land and necessity for a properly functioning economy is precisely why our forefathers enshrined in our Constitution that the government cannot seize private property without due compensation. Similarly, the government cannot pledge assets to private investors at one time then take away those pledged assets at a later time. To do so would turn the financial markets on their head and increase borrowing and cost of doing business for everyone – and this doesn't only harm the investors and individuals who are first harmed by any government expropriation. Again, one only need look at the Venezuelan economy to see how those short-sighted actions manifest themselves.

It is also for this reason that one of the principles the Federal Oversight Board was given was to ensure access to the capital market at reasonable rates. It seems quite backward that the oversight board felt the best way to do this was to collectivize properly hypothecated assets. Regarding COFINA the pledged assets, only unto themselves without any further guarantee, were enough to be awarded high investment grade ratings of A+ and AA- per S&P and other ratings agencies at the time of issue of each of the Senior. and Junior COFINA issues, respectively, since they both were in existence. This while the P.R. General Obligation Bonds ("GO" and "Gos") were relegated to the lowest investment grade rating of BBB-, or just a hair away from being "junk" bonds. The markets priced the risks accordingly and thus GO bonds had to be offered at higher interest rates than COFINA bonds to pay investors for the extra risk.

A more pressing matter at hand is the question of COFINA. As you may know COFINA is the Spanish acronym for "*Corporación del Fondo de Interés Apremiante,*" which essentially translates to "Emergency Interest/Lending Corporation." The name of the corporation speaks volumes as to its legislated purpose: to get PR access to the capital markets at an affordable rate during the last time that it faced exclusion from the capital markets. It was for these reasons that the PR legislature provided such strong lockbox mechanisms and carefully worded pledges of the new

Page 3 of 13

tax assets when the Corporation was chartered back over a decade ago. The strong "successful" (per numerous S&P and other bond ratings reports, Government Development Bank and COFINA investor presentations, independent law teams hired by both the Government of PR and by private analysis firms, and statements by past Governors, Legislators on both sides of the aisle, and PR Supreme Court Justices) that among others) COFINA is the Spanish acronym for the Puerto Rico Urgent Interest Corporation. As the name suggests, it was created at a tumultuous time when the Commonwealth had severe economic problems and was effectively shut out of the lending markets, as it the case now. But back then Puerto Rico had one last option that is similar to what individuals and corporations often resort to when they face tough times: the option to pledge assets in a secured debt transaction to access capital market at attractive rates to give them time to right the sinking ship. This ability to pledge assets in a secured transaction is almost the same as corporations and individuals do when getting a mortgage: the underlying asset protect investors money and therefore they will lend at lower rates. Most individuals, corporations, and governments effectively use this to lower overall borrowing costs and get their financial house in order. In most circumstances this leads to everyone being better off including unsecured debt lenders who otherwise would not get paid. And the public sees a decrease in debt service costs allowing services to continue uninterrupted.

More than a decade ago when the Puerto Rico Urgent Interest Corporation was founded this was exactly the situation at hand. "COFINA," was a last opportunity bail-out to provide that second chance that many of us are very familiar with. And it was the "First" bailout loan of the then cash strapped Puerto Rico government of more than a decade ago. COFINA was specifically created and structured by the legislature of the Commonwealth of Puerto Rio to allow the Commonwealth access to private investor funds at an attractive rate when the Commonwealth was virtually locked out of accessing the capital markets. It is clear considering the amount of effort placed into creating the COFINA (literally the Spanish acronym for Emergency Interest Corporation, underscoring its purpose) To secure lending at attractive finances a new tax was created and the assets of that tax corporation were pledged as collateral for much lower cost financing than available elsewhere. The laws were written and passed in a way that gave all the attorneys, rating agency analysts, and even Supreme Court justices who were asked about the legality of the pledged assets protecting the bonds extreme confidence that they were legally and permanently pledged. To that end, all three ratings agencies agreed. The initial COFINA bonds were rated A+ by the ratings agencies back in early 2007 – and in 2009, when the first bonds were issued in both Senior and Junior series, the bonds were rated AA- and A+ by S&P and similar ratings by the other agencies. Even back in 2009 these very high rating contrasted with the almost junk grade rating of Puerto Rico obligation bonds at BBB-. It as for these strong asset protections that investors were able to give Puerto Rico an important opportunity to right it's financial ship as is done regularly by government, companies, and individuals when they fall upon hard times – and in most instances the entities use that opportunity to correct underlying problems and improve thing for all. But not always. And that is why it is important for entities and individuals to maintain access to secured financing in the instance they run into tough times. Without it many more governments, companies, and individuals would fail much more frequently – wreaking havoc on the economy and making jobs and personal lives be destroyed with much more regularity.

Further It is very shaky legal foundations and… that P.R. ties to claim the assets were not legally pledge more than a decade ago now that billions of dollars have been borrowed against the value of those assets with ONLY those assets to cover them. And the assets were used for the benefit of the Commonwealth and a bond "contract" for all practical terms) that has since the creation of COFINA even the G.O. bondholders as those borrowed resources were made to pay off the interest and principal on then outstanding bonds and new bonds that were issued – and even issued with the clear indenture that explicitly stated the pledged bond revenue that were pledged to cover existing essential services and even P.R. GO debt servicing were "not 'available resources' to repay any other Government of Puerto Rico obligations, including for GO bond servicing." Again, the pledge of these assets is what made investors, including small investors on the island of Puerto Rico (at a reported ratio of 7 to 1) invest in COFINA bonds as they were both a way to save for retirement, protect their investments (the bonds were of very strong quality and it was clearly PR's intention to give very strong protection to the COFINA bondholders who lent their money to secure their money for a lower interest rate.  The government, GDB, all 3 major ratings agencies, and independent researchers all received strong legal opinions from independent counsel and strong grade rating) and help their own government and people get through rough times and continue to provide services. These are not vultures who lent their money. This is the Commonwealth offering to pledge certain assets to get access to cheaper financing. And individuals acting on the research and reports done by both the government and within the bond ratings agencies lending their money at low interest rates, even though PR general finances were a mess, relying on the due [process of law to protect them. In fact, I would venture that few anticipated there would ever be any contention over whether these assets were pledged to protect their investments. That is how much people believe in the rule of law and the Constitution of the United States of America. This confidence plays a very important role in our success as a nation.

Counsel had provided an indication of valid lien and separation of assets for the COFINA issue. It was for that reason the original COFINA bonds issued over 10 years ago were rated "A+" by S&P for the original issue and the following year, after financial data had come in, the Senior Bonds were rated AA- and the Junior COFINA bonds A+. Even back then the PR General Obligation bonds were ranked one notch above "junk" at BBB-. The ratings agencies and other experts all agreed the pledged assets were property of the corporation. Furthermore, to ensure solid access to the lowest cost financing PR legislature also passed laws requiring PR to uphold the validity of the lien and to not challenge the lien, among other protections. This enabled PR to access the capital markets (receive bondholders' money) at reasonable rates of interest. The PR Commonwealth, it's citizens, and other PR Bondholders (including the General Obligation bondholders) all benefitted from PR being able to access COFINA funds for lower rates. It cannot be overstated that these rates were so low and the bond ratings so high because of the universal acceptance that the COFINA bonds were insulated from the challenges the PR Commonwealth was having managing its finances – even back then. COFINA allowed PR a lifeline that unarguable was wasted and squandered. For ten years no one challenged the constitutionality of the COFINA bonds as everyone reaped benefits.

It should also be noted that in further assurance of COFINA's integrity and it not being an "available resource" to pay off GO debt other laws were passed AND ALL BOND INDENTURES for PR General Obligation debt for more than ten years have also clearly stated in the indenture that COFINA funds are "NOT available resources to pay G.O debt or other obligations." The vast majority of PR G.O. debt was accumulated after the creation of COFINA more than ten years ago. Those bondholders who bought G.O debt for higher interest rates than the COFINA holders, as they knew they had no claim on COFINA's legally pledged assets, not only were aware of COFINA, the legislation that created and legally created the entity, but also had it clearly stated on their bond offering statements (not that it *needed* to be repeated) had no ability to access COFINA funds. Now those same bondholders who benefitted from COFINA and who bought bonds that were the most speculative of investment grade bonds (and the largest "junk" debt offering in history), now the result of the known financial mismanagement of PR Commonwealth are seeking access to the legally pledged assets of COFINA that is the only asset that protects the bondholders. It should be noted that this appears to be a very direct case of a government entity (PR) pledging an asset to private citizens. Now the same government wants to a "redo" and to get access to those legally pledged assets. That is in direct violation of the most important legal document in the entire U.S.A., the United States Constitution, which specifically and clearly forbids such behavior. It may be one thing for the court to try to overlook this constitutional breach for the short-term benefit on the PR "situation" but it has much, much, greater legal ramifications. To put it succinctly: to allow any government entity to run ram shod over the very clear and concise statutes emboldened in our Constitution would have disastrous effect on all privately-owned property and property rights in the U.S.A. Seizure of private assets by the government without full and just compensation is Constitutionally forbidden. The U.S. Constitution is clear that this seizure shall not happen, even temporarily. U.S. citizens (and noncitizens who are private property holders) enjoy protection of their property rights. Those who question why the USA economy performs so well over time, despite our shortgivings, most often point to the very strong protections the USA enshrines in private asset ownership. Furthermore, all other attempts to collectivize and expropriate private property for the "public good" have led to disaster, most acutely in the formerly strictly communist countries and the PR. Of Venezuela. Taking private assets to make up for poor governance leads to greater poor governance, worsening crises, and an overwhelming chilling effect on private investment. P.R. and the USA cannot afford to be associated with such myopic quick fixes that lead to far much more damage in the short and medium term.

To help the layperson understand the nature of the competing interests at the time of issue of these high investment grade bonds (COFINAs at issue were never rated below mid to high investment grade), versus the "junk bond" ratings of PR GO last issue and near-junk ratings GO bonds have had for years would be to compare it with general household or corporate finances. This illustration is more than metaphorical as the governments taking properly pledged assets could turn the investment markets on their heads.

For a household, the "general obligation" debt can most closely be described as credit card/personal debt for an individual or household – and an unsecured corporate debt of a corporation. Each individual and corporation promises to pay and do everything possible to pay,

as is the case of P.R. GO unsecured debt. But the payments available are limited to income received and a host of other factors. The COFINA debt, an asset back SECURITIZED debt, is more like a mortgage. The person holding the mortgage has a right to the underlying asset in the event the borrower can't meet his/her/its other debt obligations. Therefore, mortgage rates in the USA are much lower than credit card loans. As with any corporation or individual with a mortgage if they can't pay the bills the entity holding the mortgage is protected by the underlying asset. The risk the person or entity takes is some with the overall entity or person but they have a secured interest an underlying asset. This is precisely the reason why COFINA was created and its borrowing rates were so low. To take away that security would set a catastrophic precedence that would almost certainly herald the demise of other asset backed debt – especially in distressed circumstances. And PR is not alone in resorting to asset-backed debt offering when the finances start to get difficult: corporations regular do this with their properties in sale and leaseback transactions, remortgage buildings, as do families and other small business owners. The fact that entities can pledge assets as security enables access to low interest funding that MOST entities use to get themselves out of the mess they started to get into – or simply lower their overall cost of borrowing. However, if that pledged asset (property) is then expropriated by the government or other entity that pledged it and the individuals and entities who lent at, say, 5% interest knowing they had a more secure investment suddenly can have that asset seized and used to pay off unsecured debt holders or other claimants WHO WILL THEN LEND TO INDIVIDUALS, COMPAINES, AND GOVERNEMNT ENTITIES AT A LOWER INTEREST RATE IF THE ASSETS SECURING THOSE OBLIGATIONS CAN SIMPLY BE TAKEN AWAY? This cannot be allowed to happen.

It is irrelevant from a legal and constitutional perspective as the US Constitution is the most heralded and enshrined basic legal principles we have in the entire U.S.A., however it should be noted that the "Financial Oversight Board" who were vested with the task of both ensuring private property owner's rights, ensuring fiscal discipline on a habitually horrendously managed government, and ensuring "access to capital markets at reasonable rates" (meaning access to be able to borrow at reasonable rates) ARE NOT SERVED by taking the privately owned and legally pledged assets of private citizens in a clearly unconstitutional maneuver. In fact, the courts and the Financial Oversight Board would be best served in UPHOLDING THE CONSITUTION OF THE USA AND private property owners' rights. In fact, when rating the COFINA bond entities AA- and A+ the ratings agencies sited the inability to separate itself from the poor finances for the PR Commonwealth.

Later when downgrading the bonds, the ratings agencies sited the "potential for PR, desperate for access to money to try to raid the soundly created legal structure that protected the rights of private property owners over seizure of pledged assets from the government. In their downgrades, it was sited that the chance of a default event though initially low was possible but they maintained their views on the legality of the property transfer from public to private owners. In fact, in preparation for what most thought would be a "COFINA 3" offering when the government of PR found itself with one last crisis (and opportunity to correct the poor and inefficient government practices" the GDB had an investor meeting where they had independent experts hail the iron-clad nature of the pledged assets that protected COFINA.

Page **7** of **13**

It was a surprise to most when PR instead opted to use a junk offering of GO bonds to fill the last emergency loans. It is thought that PR paid a higher interest rate to access the unsecured debt markets than they would have using a further lien on COFINA assets. The speculative and very well-informed investor groups who bought those bonds knew of the risks involved and, as usual, in their bond indentures, it was clearly stated that COFINA REVENUES WERE NOT AVAILABLE RESOURCES TO Pay OFF GO DEBT. As Was created and enshrined by law when COFINA was created as the first "second chance" to let PR get its's financial house in order. Now those same holders are crying foul and trying to access the assets that were legally pledge by the government entity to private investors to pay back the speculative debt they lent out AT OFFERING of almost 9% tax-free? Surely this cannot be allowed.

It should be noted that most COFINA debt is issued as "junior" credits, meaning they in many ways get second dibs on assets in the event of a problem with the underlying payments. However, the Senior. COFINA bondholders group (that which is pending the time and effort in court) appear to have a conflict of interest and do not represent all COFINA bondholders. The way the bond indentures for COFINA are written suggest that if default events happen the senior bondholders will have their payments accelerated. This means that many senior COFINA bondholders may, in fact, have incentive for COFINA to DEFAULT, as that (in a strange twist of events) may mean they get all interest that would be payable over many years all at once! If this can happen the vast majority of bond holders (the first subordinate holders) would have to wait a very long time to receive any payments on their holdings. This would cause irreparable harm to such holders. At EAM we own both Senior and Junior COFINA debt. We are very unusual in the way we are managed and the level of efforts we put forth to advocate for our clients.

Access to credit enhanced by protecting COFINA – can call coupon bonds at 5.5% avg. and refinance for around 2% - huge cost savings and set up ability to borrow IMMEDIATELY at very low rates … traditional amount… this can help PR overall stimulus and recovery rates for other bonds (after all COFINA was used to finance GO debt and shortfalls before) if reaffirmed we believe the current debt will be rated between A+ and AA+ and a 3rd lien bond would be BBB to BBB+ range depending on constraints… and reaffirming and high ratings would mean capacity freed up for 1st and second lien for average of perhaps under 2%. Immediate access to capital markets would ensue and no Constitutional crisis would occur.

All legislature presumed constitutional enacted by PR and went through tremendous lengths to secure COFINA private investors to get low rate – very hard to go back. Judge mentioned no irreparable harm – perhaps the large hedge fund Senior holders and even some Juniors will be ok but EAM manages money for not only high net worth individuals. We have helped more modest income individuals in need of expert and creative solutions, sticking our necks to provide a service that does little to add to our bottom line. This is why we were highlighted in Wall Street Journal creative solution for school teachers and we did similar things for other investors including a retired gentleman who was healthy and in his 70s and didn't have enough by any measure to live through his expected good health. We worked with the family to backstop a higher risk investment plan that has been relatively a good workout for the investor, who knew the risks but did read the bond ratings reports and knew something COULD happen if the economy went to hell… but the risk to reward was worth it. He is now drawing money and if

doesn't receive his interest payment on his Senior and Junior Securities will have to sell them for a fraction of what the pledged assets would suggest if the court allows even the continued private property rights abuses of a few deep pocketed and sophisticated investors in efforts to try to recover more than is justly theirs. They never tried to touch the COFINA revenues until the past year. They are set up to be a lockbox that can't be touched. Faith in the law of the land and private property rights is what emboldened some, including yours truly to invest in these bonds. And I too will be irreparably harmed if my property rights are not upheld and payment are missed or delayed as I depend on my investments for the vast majority of my income. What EAM charges clients is a drop in the bucket relatively speaking.

Encourage the judge to follow a logical court and note that this a constitutional private property rights matter and not just a simple contractual one. Consider if any legislative branch of the US government is permitted to pass VERY STRONG and well thought out and informed legislation and then able to destroy any security that was backing that private investment at the stroke of a pen. That is what the world witnessed in China, Russia, and Cuba during the communist revolutions. It is what has led to a complete freeze of private capital and small business investments in Venezuela. Taking away private property rights to protect the short-term rights of the inefficient government entity history shows that history punishes and it serves no one's good except the short-term benefit of entrenched inefficient politicians. It always come homes to roost and it is EVERYONE who pays dearly for public appropriation of private assets. That is precisely why our forefathers enshrined that principle in the Constitution of the United States of America. It IS truly what makes America such a success story. I urge you, your honor, to err on the side of protecting the constitution – not a far-fetched plan by lazy political class not interested in any meaningful reform that is needed and who will readily resort to private property grabs using any far-fetched excuse they can dream up of. If a credit card company could take a home pledged as security for a mortgage then the entire financial markets would be turned on its head. The whole concept of secured debts would cease to have any confidence and interest rates on all debts would skyrocket. Take the correct and just measure of protecting the US Constitution and rights of private property owners to not have their assets unjustly seized after they were clearly pledged with all players' strong approval and clear intent by the legislature and tremendous efforts to ensure they were pledged to lure in private investment at lower rates. To take that away would not only serve to effect of freezing PR out of access to the credit markets, that would be SERVED by reaffirming pledges of property to private individuals, but also allow PR immediate access at better rates AND not lead investors to look at every other US Government entity and wonder if their mortgages, toll highway liens, and other pledges can simply be wiped out when things get tough… cascading through the financial system like a cancerous monstrosity that makes the confidence in our very way of life and doing business suffer the repercussions and economic fallout felt by EVERYONE. If private property rights are not upheld then the only source of investment will be, proven many times over by PR, Venezuela, and other state behemoths, only state-directed investments that are riddled with. corruptions, inefficiencies and lead to a much poorer and alienated populace.

Section 303(1) of PROMESA provides that "a territory law prescribing a method of composition of indebtedness or a moratorium law . . . may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium." Section 303(3) further provides that "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act."

Laws passed by the PR Legislature are presumed to be constitutional unless proven otherwise. If this is, indeed, correct and furthermore the Commonwealth and GDB went through extraordinary measures to ensure their intentions to secure this US Constitutionally pledged asset as collateral (private party assets) as the sole and single recourse private investors had in having their monies ever repaid – and surely would not have done so unless the laws and regulations were written in the strongest possible languages with virtually an "ironclad" guarantee then by preemptively placing a cloud and interfering with the private property owners of beneficial interest to their government-pledged collateral is by definition infringing on the United States Constitutional rights of private property owners for the benefit of a far-fetched plan to appropriate clearly intended pledged assets and to essentially undo a contractual and legally pledged assets beyond what most would even consider a reasonable doubt. In other words, the legislative actions of the PR government were to enact the strongest of property liens for COFINA and that all players have supported, benefits, and been aware of this strong pledge. Not the government has mismanaged the recue money given by private investors it wants to challenge of laws that the government wrote and passed to protect the private party property interests of COFINA bondholders so they would lend at a time when the PR Commonwealth was essentially locked out of borrowing more from weaker resources, notably unsecured G.O. Debt, that P.R's newfound contractual dispute with, essentially, itself – this contractual dispute within itself should never usurp the protections offered by the most revered doctrines of law and private property rights enshrined by the United States Constitution. To subrogate the Constitutional rights of private property owners to a far-fetched and completely improbable challenge of its own contractual law would not put the laws in their respected orders. The constitution of the USA should be upheld and not be subjected to private property hinderment – even if temporary – as this uncertainly causes undue financial and emotional burden on current bondholders. Try to explain the rationale for allowing the withholding of validly pledged asset bond repayments to the private investors who, out of fear their constitutional rights were being usurped by self-serving short-sighted and conflicting statutes put a substantial cloud over their constitutionally pledged assets. We are not making any claim or taking any position as to the claims of other bondholders who have not had their money and assets they lent to the PR Commonwealth. Simply stating that if the courts are given a challenge and the opportunity to protect the nearly-certain constitutional rights of a group of private property owners to protect very unlikely contractual retirement claims of the government that is placing the priorities in an unconstitutional manner. If other claimants are found to have had their constitutional rights infringed upon that should not make it more acceptable for others to ALSO have their constitutional rights openly infringed and a cloud

placed over their assets. In fact in order for an asset or something to truly be pledged then the cloud over such a pledge must be eliminated – and that was precisely and clearly what the PR legislature and repeated legislative and government and other PR executive and judicial and other offices have gone through immense pains to maintain – and, once again why the COFINA holders lent their money to the PRC entity at much lower interest rates – an substantially higher bond ratings by ALL THREE OF THE RATINGS AGENCIES, from the outset. the constitutionality of its own law.

Other irreparable harm: EAM, as RIAs that are fee-only receive essentially all of our revenue from fees charged that are a percentage of assets under management ("AUM"). As it appeared more and more likely that our constitutionally protected rights of private property ownership may be challenged the market value of these assets declined very meaningfully. EAM was not negligent in doing due diligence when researching these obligations of the PRC. Despite being a firm of very modest size, we invested incalculable number of hours in researching these obligations, even going to PR to meet with some of the key players in the creation and funding of the initial bonds. EAM believed that PR's financial situation was worse than the then ratings on GO were and specifically invested the vast majority of our personal and client assets allocated to PR debt into the COFINA structure due to its very strongly pledged asset and revenue stream that was largely "separated and insulated from the problems of the overall Commonwealth of PR" and thus the very high bond ratings and substantially higher bond ratings than PR GO debt, which it appears that all or virtually all the debt purchased by the Lex Claims and other litigants suddenly and opportunistically trying to challenge COFINA's property pledge that virtually none thought had even a remote chance of being challenged when the bonds were created and the GO bondholders were told by the PRC that such amounts were NOT AVAILABLE RESOURCES to pay back GO debt or to be used for any other PR general fund purposes" in their bond indentures. And several times legislators and the governor of PR stated they continued to allow payment of COFINA debt as "they had no access or right to interfere with COFINA pledged revenue stream payments." IN other words, EAM and EAM advisors/managers relied on the clearly powerfully protected private property rights as enshrined in the US Constitution to ensure the repayment of EAM investor money but also our fees that pay for our living expenses. EAM and EAM management has already suffered irreparable harm from the declined market value of the securities as the various govt entities willingness to protect our pledge private property rights was put into question. Even though the repayment of our investments until recently was still made to investors, EAM already suffered irreparable harm due to the cloud put over our own and our clients beneficial interest in the pledged property. Now EAM and investors are facing greater irreparable harm as the bond payments have been discontinued further clouding our beneficial private property ownership and our income and necessitating asset sales everywhere.

The cloud over the private property rights of COFINA investors legally pledge assets causes more damage the longer it can go unchecked. One completely overlooked irreparable harm damages that are being sustained by longer-term bond owners is that with the cloud over their property rights increasing over time and the market value continued to decrease those who were so emotionally harmed or lost faith in their private property rights sold out to new investors at

much lower price points. This changes the nature of the entire makeup of the bondholders and, unto itself, encourages the larger group of investors in sum to be ready to accept a consensual restructuring adverse to more seasoned investor interests. In other words, the fact of having a cloud over one's property rights in within a larger group of asset holders can, unto itself, create conditions that lead to irreparable harm of those who invested at higher price points – those who counted on due process and protects under the highest laws of the land. In fact, EAM told investors that the biggest risk comes not from an adverse court decision but from bondholders (especially new short-term investors) accepting a negotiated settlement at less than the full amount original investors made in this secured debt transaction. Each day this is allowed to continue the irreparable harm worsens on the oldest and most impaired of creditor groups – especially those that paid generally close to or the full par value and – quite often – ABOVE the offering prices of the originally issued bonds.  The new populace of bondholders who bought for, say 20cent on the dollar as investors who fear their rights won't be protected panic and sell to protect what they can will clearly have different notions of what it will take to make them whole than those who may have paid upward of 110% of par (paid over $1100 to lend only $1000 in face value of money over time, with the clear understanding that money invested was backed by a very strong and dedicated and legally pledge asset and revenue stream. Those who have bought the *distressed* assets (which the decreased market value and term distressed clearly indicate harm) sell to new investors for, perhaps less than 20 cents on the dollar ($200 invested for each $1000 in face value) will surely be willing to accept much less than full par $1000 value to "make" a quick return as opposed to those whom invested at much higher levels who would seek to have their constitutional rights fully protected as was strongly suggested by their very high initial credit ratings in comparison to other PR debt. Notably the BBB- of the GO bonds versus the AA-/A+ ratings of COFINA are not cut to the Senior bonds being on par with the GO and the Juniors often being rated less than the GO – though now virtually all are now rated D, default, thanks to the courts allowing the continued impairment and cloud over ownership rights to investor money – clearly causing irreparable harm to many to protect an attempted rescission of very storing worded laws that lead to analysts apparently universally giving these bonds some of their highest investment grade ratings with only the pledged assets to guarantee payment.

We believe strongly that by upholding COFINA property rights, irreparable harm can be avoided, and a restructuring can occur that will allow Puerto Rico the ability to immediately gain access to the capital markets at competitive rates.

Regards,

Mark Daniel Elliott
CEO
Elliott Asset Management