**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 1276, 1381**

(Jointly Administered)

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Response relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

-------------------------------------------------------------x

**RESPONSE OF THE COMMONWEALTH TO**
**COOPERATIVA DE SEGUROS MÚLTIPLES' MOTION**
**FOR CLARIFICATION OF AUTOMATIC STAY AND IN THE ALTERNATIVE**
**RELIEF FROM THE AUTOMATIC STAY IN THE TITLE III CASE [ECF NO. 1276]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this response (the "Response") to the *Cooperativa De Seguros Múltiples' Motion For Clarification Of Automatic Stay And In The Alternative Relief From The Automatic Stay in the Title III Case* [ECF No. 1276] (the "Motion") filed by Cooperativa de Seguros Múltiples de Puerto Rico ("Movant").[2]

## PRELIMINARY STATEMENT

1. Movant seeks to lift the automatic stay with respect to 114 prepetition actions pending before various Puerto Rico state courts (the "State Courts"), where the Movant, an insurance company, is contesting actions by the Commonwealth (the "Forfeiture Actions") in connection with vehicles seized by the Commonwealth (the "Forfeited Property") under the Uniform Forfeiture Act of 2011, 34 L.P.R.A. § 1724 et seq. (the "UFA"). While the Commonwealth maintains its position that the automatic stay set forth in Bankruptcy Code section 362 (the "Title III Stay"), made applicable by PROMESA section 301(a), applies to the Forfeiture Actions, the Commonwealth does not object to modifying the Title III Stay to allow the Forfeiture Actions to proceed to judgment in the ordinary course in accordance with the UFA and, if judgment is entered in Movant's favor, to allow Movant to pursue remedies against the Commonwealth under section 19 of the UFA solely with respect to the return of the Forfeited Property or compensation owed in connection with the disposition of the Forfeited Property; however the Commonwealth does not consent to any waiver or modification of the Title III Stay so as to permit the prosecution against the Commonwealth or any of the other Title III debtors of any claim or claims by anyone other than Movant as provided for herein and the Commonwealth reserves all

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Response on behalf of the Commonwealth.

2

rights, defenses, and protections with respect to any matters pending or that may arise in the Title III Case, including the treatment of any claims arising from the Forfeiture Actions under a plan of adjustment or otherwise in the Title III Case.

2. Because the Commonwealth consents to Movant's alternative requested relief to lift the Title III Stay to allow the Forfeiture Actions to proceed under the UFA, Movant's request to clarify whether the Title III Stay applies to the Forfeiture Actions [ECF No. 1276] is moot and need not be decided by the Court. In fact, in an almost identical situation where a party sought clarification regarding the applicability of the Title III Stay and the Commonwealth had consented to modifying the stay to allow litigation to proceed to completion, this Court held "[i]n light of the Commonwealth's consent, the Court need not address the arguments raised by the Movants . . . [t]he hearing scheduled . . . in connection with the Motion, is hereby cancelled because the Movants have been granted complete relief." See *Memorandum Order Granting Urgent Motion for Relief from the Automatic Stay filed by Bernice Beauchamp-Velázquez* [ECF No. 1125] (the "August 22 Order"). Consistent with that decision and in light of the Commonwealth's consent to modifying the Title III Stay, the Court need not address the issue of the applicability of the Title III Stay.

3. However, should the Court address the issue of whether the Title III Stay applies to the Forfeiture Actions, the Court should deny the Movant's requested relief for the following reasons. First, contrary to Movant's assertions, the Forfeiture Actions are against the Debtor and its property. Section 15 of the UFA requires that the Forfeiture Actions be initiated against the Commonwealth, and as a defendant, the Commonwealth is required to expend a significant amount of its resources to defend against such actions. In addition, as more fully explained below, the Commonwealth holds either a property interest or conditional interest in the Forfeited Property

3

pursuant to the UFA. The Title III Stay protects the Commonwealth on both of these counts – it cannot be sued for prepetition conduct nor can creditors make claims against its property. See 11 U.S.C. §§ 362(a)(1), (2); see also PROMESA § 301(a) (incorporating Section 362 into Title III cases).

4. Second, the "police power" exception under section 362(b)(4) of the Bankruptcy Code does not exempt Movant's claims from the Title III Stay. By its plain language, that section protects *the government's* exercise of its police powers to protect public health, safety and welfare; it does not permit creditors to escape application of the Title III Stay. Movant is not a governmental entity, much less one trying to protect the health and safety of the public. Accordingly, the police power exception to the Title III Stay does not apply to Movant or the Forfeiture Actions.

## **RESPONSE**

### I. THE COMMONWEALTH DOES NOT OBJECT TO MOVANT'S REQUEST TO LIFT THE TITLE III STAY TO PERMIT ALL NECESSARY FORFEITURE DETERMINATION PROCEEDINGS IN THE FORFEITURE ACTIONS

5. After reviewing the pertinent facts and circumstances with respect to the 114 Forfeiture Actions pending before various State Courts under the UFA, the Commonwealth does not object to modifying the Title III Stay to allow the Forfeiture Actions to proceed to judgment in the ordinary course in accordance with the UFA and, if judgment is entered in Movant's favor, to allow Movant to pursue remedies against the Commonwealth under section 19 of the UFA, solely with respect to the return of the Forfeited Property or compensation owed in connection with the disposition of the Forfeited Property.

6. The Commonwealth conveyed its position to Movant in an effort to avoid unnecessary briefing. However, Movant was unwilling to enter into a stipulation that would provide it with complete relief, wasting critical time and resources of the Commonwealth and this

4

Court. Given the circumstances and the Commonwealth's willingness to permit Movant to proceed with the Forfeiture Actions, the Commonwealth respectfully submits that the Court (i) enter an order modifying the Title III Stay in accordance with this Response, and consistent with the August 22 Order, and (ii) need not further consider the legal issues raised by Movant so as to avoid rendering an advisory opinion. See Golden v. Zwickler, 394 U.S. 103, 108 (1969) (holding federal courts "do not render advisory opinions").[3]

## II. THE TITLE III STAY APPLIES TO THE FORFEITURE ACTIONS

7. Should the Court deem it necessary to address Movant's legal issues, the Commonwealth respectfully submits that the Title III Stay applies to the Forfeiture Actions. Section 362(a) of the Bankruptcy Code, made applicable by Section 301(a) of PROMESA, 48 U.S.C. § 2161, imposes an automatic stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the cause under this title." 11 U.S.C. § 362(a)(1); *see also* PROMESA § 301(a) (incorporating Section 362 into Title III cases). Similarly, subsection 362(a)(6) automatically stays "any act to collect, assess, or recover a claim against the debtor" arising before the filing of the bankruptcy petition. 11 U.S.C. § 362(a)(6).

8. The automatic stay is "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," see Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo), 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing

---

[3] Nothing contained in this Response should be construed as a waiver or modification of the Title III Stay to permit the prosecution against the Commonwealth of any claim by anyone other than Movant as provided for herein, and the Commonwealth reserves all rights, defenses, and protections with respect to any other motions for relief of stay or any other matters pending or that may arise in the Commonwealth's Title III case. The Commonwealth further reserves its rights with respect to any claim currently pending in the Forfeiture Actions or hereinafter asserted by Movant.

Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)), and PROMESA applies it with full force to Title III cases. See *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543]. Moreover, the automatic stay "is extraordinarily broad: it protects the debtor from nearly any act to collect a pre-petition claim and any action affecting the property of the debtor's estate, subject only to section 362(b)'s narrow exceptions." *Atiles-Gabriel v. Commonwealth of P.R.*, No. 15-2108 (GAG), 2017 WL 2709757 at * 2 (D. P.R. June 23, 2017) (citation omitted).

   **1. The Forfeiture Actions Are Actions Against the Commonwealth and its Property and Are Thus Subject to the Title III Stay**

   9.    Under Bankruptcy Code section 362(a)(1), made applicable to this Title III case pursuant to PROMESA section 301(a), the Title III Stay applies to the "commencement or continuation . . . of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of [a Title III case]." 11 U.S.C. § 362(a)(1); 48 U.S.C. § 2161.  The UFA expressly provides that the Forfeiture Actions must be initiated against the Commonwealth.  Movant argues that the Title III Stay does not apply to the Forfeiture Actions because the Movant has not brought any action against the Commonwealth or its property. See Motion at 13. This is incorrect. The Forfeiture Actions are actions initiated against the Commonwealth. Specifically, under section 15 of the UFA, a movant "may contest the forfeiture . . . by filing a complaint *against the Commonwealth of Puerto Rico*, and the official who authorized the seizure … [and n]otice shall be served to the Secretary of Justice . . . ." UFA § 1724q (emphasis added).  The UFA provides that the Secretary of Justice "shall represent the Commonwealth of Puerto Rico in all forfeiture contests . . . ." *Id.* § 1724q.  Furthermore, contrary

6

to Movant's assertion that the Commonwealth faces no "personal" liability on the Forfeiture Actions, section 19 of the UFA provides that if the Forfeited Property has been disposed of, the Commonwealth "shall pay an amount equal to the appraisal value at the time of the seizure, or the amount for which it was sold, whichever is higher, plus the prevailing legal interest pursuant to the Rules of Civil Procedure . . ." *Id.* § 1724t. Thus, the plan language of the UFA provides that the Commonwealth is a defendant in the Forfeiture Actions and carries the burden of personal liability in such actions.[4]

10. Furthermore, as the defendant in the Forfeiture Actions under section 15 of the UFA, the Commonwealth (represented by the Department of Justice) must expend time and estate resources to defend such challenges by Movant, which the Title III Stay protects against in order to afford the Debtor a "breathing spell" from creditors and financial pressures. H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) ("The automatic stay in one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.").

11. Bankruptcy Code section 362(a)(1) also stays all actions "to recover a claim against the debtor." Bankruptcy Code section 101(5) defines "claim" as including a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal equitable, secured, or unsecured." 11 U.S.C. § 101(5). Here, the Movant is seeking to recover a claim against the Commonwealth in the Forfeiture Actions as

---

[4] Movant's contention that the Commonwealth's "posture as a forfeiture claimant" under the UFA "is not worthy of the automatic stay's protection under §362 or §922," see Motion at 15, is belied by the fact that the Commonwealth indeed does face personal liability under section 19 of the UFA.

7

the UFA provides that Movant can seek monetary recovery if the Forfeited Property has been disposed of. See UFA § 1724t ("If the Board has already disposed of said property, the Commonwealth of Puerto Rico shall pay an amount equal to the appraisal value at the time of the seizure, or the amount for which it was sold, whichever is higher, plus the prevailing legal interest pursuant to the Rules of Civil Procedure . . ."); *see also* H.R. Rep. No. 95–595, at 309 (1977) (noting that the definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court."). FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003) (holding that a "claim" has "the broadest available definition."). Thus, the Forfeiture Actions are the types of actions the Title III Stay specifically applies to.[5]

### 2. The Forfeited Property is Property of the Estate

12. Movant argues that the Forfeited Property is not property of the Commonwealth under section 902 of the Bankruptcy Code, because the Commonwealth's interest in the Forfeited Property does not vest until the underlying forfeiture proceedings have concluded. This is an incorrect and oversimplified view of the Forfeiture Actions. There are two relevant categories of Forfeiture Actions: cases where (i) plaintiffs posted a bond for the Forfeited Property, and (ii) plaintiffs failed to post a bond. First, those Forfeiture Actions where plaintiffs failed to post a bond have no right to the Forfeited Property since the failure to post a bond under section 16 of the UFA extinguished all liens and security interests on the Forfeited Property and passes title to

---

[5] Cases cited by Movant for proposition that forfeiture proceedings are in rem, and thus not against the Commonwealth, are inapposite, since they either involve a governmental entity being excepted from the stay under the police power exception or discusses the predecessor to the UFA no longer applicable. See In re Rodriguez, No. 03-BK-12360-EWH, 2008 WL 8448043, at *5 (B.A.P. 9th Cir. July 10, 2008) (holding that a governmental entity was excepted from the automatic stay under the police power exception to continue in rem forfeiture proceeding against a non-governmental debtor); Gen. Accident Ins. Co. v. E.L.A., No. CE-94-328, 1994 WL 909546 (P.R. Nov. 22, 1994) (discussing background of predecessor of UFA).

8

the Commonwealth. See UFA §1724q. In these actions, the Commonwealth clearly has unrestricted title and right to the Forfeited Property, and any action against such property is subject to the Title III Stay.

13. Second, in those Forfeiture Actions where the plaintiff has posted a bond prior to contesting the seizure, the Commonwealth has a conditional right to the property depending on the outcome of the proceeding, which still affords the Commonwealth the protection of the Title III Stay. The automatic stay protects any action against property of the debtor's estate, and includes those interests that are "future, nonpossessory, contingent, speculative, and derivative." In re Jefferson Cty., Ala., 491 B.R. 277, 295 (Bankr. N.D. Ala. 2013) (holding that "'property of the estate' within the meaning of § 362(a) is governed by 11 U.S.C. § 541(a) and includes '[e]very conceivable interest of the debtor,' including those that are 'future, nonpossessory, contingent, speculative, and derivative.'"); see also In re Anderson, 128 B.R. 850, 853 (D.R.I. 1991) (holding that contingent interest in $75,000 under will was "property of the estate" and imposing Rule 11 sanctions on claimant for attorney's "frivolous argument" that contingent nature of debtor's interest under her mother's will prevented interest from being included in "property of estate"); In re Hoblit, 89 B.R. 756 (Bankr. C.D. Ill. 1986) (contingent remainder in real property); In re Stumpff, 109 B.R. 1014 (Bankr. E.D. Okla. 1989) (future payments of widow's allowance); Middleton v. Plumbing and Air Conditioning Contractor's Ass'n (In re Greer Stamp Plumbing, Inc.), 9 B.R. 181 (Bankr. D. Ariz. 1981) (right to employment bonus from reduction of work injuries, contingent on the date of the petition); United States Trustee v. Mucelli (In re Mucelli), 21 B.R. 601 (Bankr.S.D.N.Y.1982) (personal injury claim); Rutledge v. Toyota Motor Credit (In re Rutledge), 115 B.R. 344 (Bankr. N.D. Ala.), aff'd, 121 B.R. 609 (N.D. Ala. 1990) (equitable interest in a car). Thus, the case law is clear that the Commonwealth has a property interest in the

9

Forfeited Property that is subject to the Title III Stay.[6]

14. Further, under section 19 of the UFA, the Commonwealth is obligated to make a cash payment to movants in the Forfeiture Actions if (i) such movants receive a favorable outcome in the State Courts and (ii) the Commonwealth already disposed of the Forfeited Property prior to a judgment. See UFA § 1724t. Under these circumstances, the Commonwealth is disbursing funds from the Title III estate to satisfy such judgments in the Forfeiture Actions, which is clearly estate property subject to the Title III Stay.

15. Lastly, Movant argues the Commonwealth's "posture as a forfeiture claimant" under the UFA "is not worthy of the automatic stay's protection under §362 or §922." See Motion at 15. Movant alleges that the Commonwealth is a "creditor" in the Forfeiture Actions. See Motion at 15. The characterization of the Commonwealth's interest in the Forfeiture Actions is irrelevant. Under section 15 of the UFA, the Commonwealth is responsible for defending any challenges to the seizure of vehicles. As an action against the Commonwealth, the Movant's challenge of the seizure of the Forfeited Property is subject to the Title III Stay. See 11 U.S.C. § 362(a)(1).[7]

---

[6] All the cases cited by Movant in support of the proposition that the Commonwealth does not "own" the forfeited property are inapposite and actually hold that upon a favorable outcome for the government in a forfeiture proceeding their right to title in the property relates back to the date of forfeiture, further demonstrating the Commonwealth's conditional interest in the Forfeited Property. See United States v. Stowell, 133 U.S. 1, 12 (1890) (holding that, under a forfeiture statute from 1875, title to premise owned by individual operating illegal distillery perfects upon "judicial condemnation," however the date title passes relates back to the date of forfeiture); United States v. A. Grp. of Islands Knows As "Cayos De Barca'" Together with Appurtenances, Attachments, Improvements Thereon, Located Offshore Salinas, Puerto Rico, 185 F. Supp. 2d 117, 120 (D.P.R. 2001) (holding that "[p]roperties forfeited to the United States are owned by them as of the date of the activity which renders the property forfeitable, pursuant to the 'Relation Back Doctrine'"); In re Chapman, 264 B.R. 565, 569 (B.A.P. 9th Cir. 2001) (holding that government entity was excepted from stay against a non-governmental debtor to continue forfeiture proceedings, as such proceedings were in the interest of public safety, and government's title to property would relate-back to date of seizure of property).

[7] The cases cited by Movant for the proposition that the government is not worthy of protections of the stay in a situation where the government is acting "as a forfeiture claimant" have no relevance to this case because they involve situations where a government entity is seeking to recover property from a non-governmental debtor. See In re Chapman, 264 B.R. 565, 569 (B.A.P. 9th Cir. 2001) (non-debtor governmental entity seeking to lift stay to recover property from a non-governmental debtor that was used in illegal drug business); In re James, 940 F.2d 46, 47 (3d Cir. 1991) (state of New Jersey sought to lift stay against non-governmental debtor to continue vehicle forfeiture proceedings).

10

### 3. The "Police Power" Exception Does Not Apply To The Forfeiture Actions

16. Section 362(b)(4) of the Bankruptcy Code provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of an action or proceeding *by a governmental unit* . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's policy of regulatory power." 11 U.S.C. § 362(b)(4) (emphasis added).[8] Section 362(b)(4) applies to actions and proceedings commenced or continued *by a governmental unit*. The purpose of this exception to the automatic stay is to "permit regulatory, police and criminal actions to proceed in spite of section 362(a)(1) . . ." such that the bankruptcy court does not become a haven for wrongdoers. 3-362 Collier on Bankruptcy ¶ 362.05[5][a] (16th ed.). As such, section 362(b)(4) does not apply in situations where the governmental unit is a debtor, but rather is limited to specific examples of government action against a creditor. Accordingly, it provides private creditors no affirmative rights under any circumstance against a governmental unit who is a debtor. Because Movant is not a governmental unit, it cannot assert that this exemption applies to actions brought by it. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

17. Ignoring the statute's unambiguous text, Movant argues that since the Commonwealth exercised its police power to seize the Forfeited Property the police power exception applies here. This is without support in the law or logic. The police power exception is

---

[8] The term governmental unit is defined as "the United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States, … a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27)

11

limited to specific examples of government action against a creditor; it provides private creditors with no affirmative rights under any circumstance against a debtor.

18. The cases cited by Movant prove this point. See Boricua Motors Leasing Corp. v. Com. of Puerto Rico, 154 B.R. 834, 835 (D.P.R. 1993) (holding that the Commonwealth of Puerto Rico and Department of Justice was excepted from the automatic stay, *as governmental entities seeking to secure public welfare*, in state civil forfeiture action); In re James, 940 F.2d 46, 51 (3d Cir. 1991) (affirming the district court's holding that a civil forfeiture action proceeding is an excepted from the automatic stay under the "police power" exception *when a governmental entity is seeking to continue proceedings against a non-governmental debtor*); In re Chapman, 264 B.R. at 571 (holding that the *government* could use "police or regulatory power" exception in order to obtain forfeiture judgment against *non-governmental* debtor's property, on theory that property had been used in manufacture and distribution of marijuana); see also Motion at 15 ("In all of these cases the government is attempting to avoid the stay to prosecute its forfeiture claims and the debtors are using it as a defense to prevent the forfeiture claims from depleting the estate."). Accordingly, it is clear only a governmental entity may utilize the police power exception to the automatic stay, which Movant is not, and, thus, Movant's claims are not excepted from the Title III Stay under section 362(b)(4).

**CONCLUSION**

19. For the foregoing reasons, the Commonwealth requests that the Court modify the Title III Stay to allow the Forfeiture Actions to proceed to judgment in the ordinary course in accordance with the UFA and, if judgment is entered in Movant's favor, to allow Movant to pursue remedies against the Commonwealth under section 19 of the UFA, solely with respect to the return of the Forfeited Property or compensation owed in connection with the disposition of the Forfeited Property; provided, however, that the Commonwealth reserves all rights, defenses, and protections with respect to any matters pending or that may arise in the Title III Case, including the treatment of any claims arising from the Forfeiture Actions under a plan of adjustment or otherwise in the Title III Case.

20. Nothing contained herein shall operate as a waiver or modification of the Title III Stay so as to permit the prosecution against the Commonwealth or any of the other Title III debtors of any claim or claims by anyone other than Movant as provided for herein.

Dated: October 30, 2017
      San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*