IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors,[1] | PROMESA<br>Title III<br><br>No. 3:17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOUARD FOR PUERTO RICO,<br><br>as a representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 3: 17-BK-03567 (LTS)<br><br>RE: ECF No. 272<br><br>**This Opposition relates only to HTA and shall be filed in the lead Case No. 17 BK 3283-LTS and Case No. 17 BK 3567-LTS.** |

**OBJECTION TO SIEMENS TRANSPORTATION PARTNERSHIP, S.E.'S
MOTION FOR AUTHORIZATION TO CONDUCT EXAMINATION OF THE
GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, CARLOS
VIZCARRONDO AND HECTOR BETANCOURT, PURSUANT TO FEDERAL RULE
OF BANKRUPTCY PROCEDURE 2004 AND LOCAL BANKRUPTCY RULE 2004-1**

COME NOW, the Puerto Rico Fiscal Agency & Financial Advisory Authority ("AAFAF")[2] and the Government Development Bank for Puerto Rico ("GDB"), *through a*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

*special appearance and without submitting itself to the jurisdiction of the Court,*[3] through the undersigned counsel and very respectfully submit this objection (the "Objection") to *Siemens Transportation Partnership, S.E.'s [("Siemens")] Motion for an Authorization to Conduct Examination of the Government Development Bank for Puerto Rico and Messrs. Carlos Vizcarrondo and Héctor Betancourt, Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1* ("Motion for Examination") filed on September 14, 2017 [ECF No. 272].

## I.  INTRODUCTION

1. The Motion for Examination seeks to improperly use this Title III case to discover information from a non-debtor as anticipatory discovery to advance Siemens' contentions that it has an interest in an account held at non-debtor GDB. As such, Siemens' request should be denied as outside of the scope of Rule 2004 and for failure to show good cause.

2. Siemens claims to be a creditor of debtor Puerto Rico Highways and Transportation Authority ("HTA"),[4] and seeks discovery under Fed. R. Bankr. P. 2004 ("Rule 2004") to determine its ability to recover on account of a claim it purportedly has against HTA,

---

[2]  The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this opposition on behalf of HTA.

[3]  GDB makes this special appearance solely to oppose the Motion for Examination (as defined below). GDB is not a Title III debtor and is not a party in interest to the captioned proceedings and other than as relates to the request directed at it, has no interest in these proceedings.

[4]  Notably, the Motion for Examination is brought by Siemens Transportation Partnership, S.E., referred to as Siemens in the Motion for Examination and the Objection. The party to the Settlement Agreement, however, is Siemens Transportation Partnership Puerto Rico, S.E. **Siemens offers no explanation as to this discrepancy and generally alleges facts and makes arguments regarding the Settlement Agreement and claim as if Siemens Transportation Partnership, S.E. and Siemens Transportation Partnership Puerto Rico, S.E. were the same entity**. To the extent the movant is Siemens Transportation Partnership, S.E., and not Siemens Transportation Partnership Puerto Rico, S.E., the motion should be rejected outright as such party has not established any claim against either HTA or GDB.

2

and which Siemens claims is allegedly subject to a GDB guaranty. See Motion for Examination ¶¶ 12-13, 15, 25.

3. Yet, the Motion for Examination does not really relate to any claim Siemens may have against HTA, but rather a claim it may have against GDB on account of the purported guaranty. Indeed, the factual predicate for the Motion for Examination is the balance of a purported account (the "Account"), which Siemens contends is an escrow account, for certain monies held at GDB. See Motion for Examination ¶¶ 15-19. GDB has already certified that, in its books, the Account reflects a balance of $13,000,000. See José Santiago Ramos' Declaration under Penalty of Perjury dated October 31, 2017 at ¶ 2, attached hereto and identified as Exhibit 1. As such, the remaining queries concern the extent, if any, to which Siemens has an interest in the monies deposited in the Account—which are legal, not factual, issues that need to be determined through an independent action against GDB, or, at best, an adversary proceeding in this Title III case. See Fed. Bankr. Rule 7001(2) ("a proceeding to determine . . . interest in property [is an adversary proceeding]").

## II. RELEVANT FACTUAL BACKGROUND

4. On May 28, 2010, HTA and Siemens Transportation Partnership Puerto Rico, S.E. ("Siemens Puerto Rico"), among other parties, entered into a certain settlement agreement (the "Settlement Agreement") through which they resolved disputes concerning performance of Siemens Puerto Rico under a services agreement for construction of the *Tren Urbano* and payments to Siemens Puerto Rico and others. See Motion for Examination ¶ 13.

5. Siemens contends that the Settlement Agreement required HTA to make a certain "Completion Payment" to Siemens Puerto Rico of $13 million. See Motion for Examination ¶

3

14.[5] GDB executed a guaranty agreement (the "Guaranty Agreement") in favor of Siemens Puerto Rico, guaranteeing HTA's payment under the Settlement Agreement. See Motion for Examination ¶ 15. Siemens further contends that to fund HTA's payment obligations under the Settlement Agreement, an escrow account was established at GDB to hold such amount. See Motion for Examination ¶ 16. However, no escrow agreement was ever executed between HTA and GDB, or between Siemens Puerto Rico (much less, Siemens) and GDB. See José Santiago Ramos' Declaration under Penalty of Perjury, Exhibit 1 ¶ 3.

6. The funds in question are not held in escrow,[6] but rather as deposits in the name of HTA, and therefore, these are liabilities in GDB's books and records. Id. ¶ 2. And GDB can certify that in its books such an account contains $13,000,000.[7] Id. ¶ 2.

7. The final payment set forth in the Settlement Agreement, the "Completion Payment" to which Siemens refers had not been paid as of early 2017. Such Completion Payment could only be released upon completion by Siemens Puerto Rico of certain work and open items specified in the Settlement Agreement and exhibits thereto.

### III. LEGAL ARGUMENT

**a. Rule 2004 may not be used to ascertain details on private, non-estate claims.**

8. Rule 2004 does not permit parties in interest to investigate their private (non-estate) claims. See, e.g., In re Hilsen, No. 87-11261, 2008 WL 2945996 (S.D.N.Y. July 25,

---

[5] Notably, pursuant to a certain amendment to the Settlement Agreement, the Completion Payment was reduced to $12 million (a fact Siemens conveniently omits). See Motion for Examination at note 3 and José Santiago Ramos' Declaration under Penalty of Perjury, Exhibit 1 at ¶ 4 and Letter from Siemens Puerto Rico to GDB dated June 23, 2017 attached thereto.

[6] Whether the Account is an escrow account or not is not properly before the Court at this time and, such a dispute, would clearly be one that would have to be adjudicated in a proceeding where GDB is allowed a right to properly defend itself and have equal participation in discovery.

[7] As set forth in Note 5, the alleged Completion Payment liability is limited to $12,000,000 and GDB reserves all rights to dispute the amount allegedly owed, if any, under the Guaranty Agreement in any adversary proceeding Siemens may file against GDB.

4

2008) (Rule 2004 "does not provide the authority to undertake what amounts to a private investigation under the guise of bankruptcy-related discovery"); In re Lufkin, 255 B.R. 204, 208–09 (Bankr. E.D. Tenn. 2000); In re GHR Energy Corp., 33 B.R. 451 (Bankr. D. Mass. 1983); In re MF Global Inc., 2013 Bankr. LEXIS 129 (Bankr. S.D.N.Y. 2013). Moreover, courts rarely permit Rule 2004 to be used for discovery in connection with pending adversary proceedings or contested matters. In re Bd. of Directors of Hopewell Int'l Ins. Ltd., 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001). Indeed, Courts have discouraged the use of Rule 2004 where the party seeking the examination could benefit a pending litigation outside the bankruptcy court against the proposed Rule 2004 examinee. Snyder v. Socý Bank, 191 B.R. 40, 42 (S.D. Tex. 1994) (use of Rule 2004 to further a non-bankruptcy action is inappropriate). The reasoning behind these rulings is that Rule 2004 discovery cannot be used by a party in interest or creditor to obtain an improper advantage on discovery as to claims that are private and unrelated to the estate. That is, claims that are private ought to be asserted in a proper adversary proceeding where the adverse party, as would be GDB here, is allowed a fair opportunity to assert its defense and avail itself from conducting discovery under the Federal Rules of Civil Procedure. Accordingly, a claimant may not "take a Rule 2004 examination in furtherance of its own interests, [and] not those of the estate." See In re MF Global Inc., 2013 Bankr. LEXIS 129, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013). Here, granting the Motion for Examination would only further Siemens' interest in any prospective action against GDB or an adversary proceeding in the HTA Title III case and, as such, the pretended examination is improper.

9. There is no dispute that, per GDB's books and records, the funds at issue here are held in a deposit account in the name of HTA and that the funds have not been transferred to third parties. See José Santiago Ramos' Declaration under Penalty of Perjury, Exhibit 1 at ¶ 2.

5

10. As such, Siemens' intended discovery to ascertain "whether […] its claim against HTA may be satisfied from assets in the Siemens Escrow Account" and as to whether "Siemens' claim against HTA may be paid from funds that are not property of HTA or GDB; and […] any third parties have received funds from the account, and if so, whether such transfers may give rise to a claim for fraudulent transfer, conversion or other action, such that Siemens may recover on account of its claim against HTA from parties or assets other than the HTA" is moot by virtue of the certification included with this Objection. Siemens' claim against HTA cannot be satisfied from assets in the Account because, despite the fact that a GDB deposit account with $13,000,000 in the name of HTA is reflected in GDB's books, no escrow account exists and thus said funds are not segregated from GDB's liquidity and cannot be disbursed as a matter of law.[8] Therefore, the only purpose that would be served by the pretended discovery is Siemens' purported right to payment against GDB on the basis of the Guaranty Agreement (see, e.g., Motion for Examination, Exhibit A and Motion for Examination ¶ 15) and/or its right to payment due to purported representations to Siemens Puerto Rico by GDB (see Motion for Examination ¶¶ 15-21 & Exhibit A). To this end, on June 13, 2017, Siemens served on GDB a demand letter and Form of Drawing Certificate for $12 million **under the Guaranty Agreement**. See Letter from Siemens Puerto Rico to GDB dated June 23, 2017 attached to Exhibit 1.

---

[8]     Beginning in 2016 and due to the fiscal situation of GDB, an Emergency Period was declared for GDB during which the GDB's disbursements, including payments of funds deposited at GDB were restricted and subject to a particular application process and to GDB's liquidity. See Act 21-2016, Section 203 and Executive Orders 2016-10 and 2016-14, enacted as per the authority granted in Act 21-2016, Section 203(b).

In 2017, the Puerto Rico Financial Emergency and Fiscal Responsibility Act ("Act 5-2017") was enacted, specifically allowing the Governor to issue new Executive Orders and expressly maintaining in full force the prior Executive Orders issued pursuant to Act 21-2016, until amended, rescinded, or superseded. See Act 5-2017, Sections 204(b) and 208(e). Act 5-2017 also set a new Emergency Period. See Act 5-2017, Section 103(q). That Emergency Period is now set to expire on December 31, 2017. See Act 46-2017, Section 7. Act 5-2017 also provides that if any restriction is placed on disbursements by GDB, then "the Bank shall not disburse any loans or credit facility unless authorized by the Governor." See Act 5-2017, Section 204(c)(i). Such restrictions were placed on GDB as per Executive Orders 2016-10 and 2016-14, which Act 5-2017 specifically maintained in place and in full force and effect. See Executive Order 2016-10 ¶¶ 3, 6, and 11 and Act 5-2017, Section 208(e).

11. Siemens may not use Rule 2004 to seek discovery for its potential claims against GDB in HTA's Title III case. The scope of Rule 2004 is limited to acts, conduct, or property of the debtor, *i.e.*, HTA. Alleged acts or liability of a third party, such as GDB, relate to a private claim unrelated to property of the debtor and fall outside the purview of Rule 2004. See In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("The proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous procedural safeguards against unfairness to the party from which discovery is sought."); In re Rothstein Rosenfeldt, 2011 WL 5417086, at *2 (Bankr. C.D. Ill. 2011) ("discovery pertaining to a cause of action owned by a non-debtor third party is not within the scope of Rule 2004, notwithstanding that the Debtor (or its trustee) might someday acquire the right to enforce it."). Whatever claim Siemens Puerto Rico may have against HTA, and whether Siemens Puerto Rico does in fact have a viable claim for the $12 million Completion Payment that was subject to Siemens Puerto Rico first complying with certain obligations it had towards HTA, will not be furthered by allowing a Rule 2004 examination of GDB.

12. Indeed, none of the cases cited by Siemens support its position when examined in detail. In In re Fearn, 96 B.R. 135 (Bankr. S.D. Ohio 1989), the debtor had pledged stock it owned in a corporation to one of the debtor's creditors. The corporation in which the debtor held the stock was liquidated, and, during the liquidation, the debtor, the corporation and other parties interested in the corporation agreed to a liquidation plan. It was alleged that the liquidation plan gave the debtor less favorable distributions than it gave other shareholders, including members of the debtor's own family. A creditor of the debtor sought examination of the corporation's records pertaining to the liquidation. This was granted by the court, but only as it "pertain[ed] to

the debtors' property" as it could establish "that other parties obtaining distribution pursuant to the [corporation's] liquidation plan *received a fraudulent transfer from the debtors*." Id. at 138 (emphasis added). While conveniently abridged in Siemens' motion, the court's entire statement of principle reads, "[a]lthough the primary purpose of a Rule 2004 examination is to permit a party in interest *to quickly ascertain the extent and location of the estate's assets*, such examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor." Id. at 138 (internal citations omitted). The use of the word "such" in that sentence makes it clear that the examination the court was contemplating was one that may ascertain property of the debtor. In this case, however, no party alleges that any Rule 2004 discovery will, or even could, unearth any property of the debtor. There are only two possibilities: (a) either the GDB Account is held on trust for Siemens Puerto Rico, which it is not, but if it were, it would not be property of HTA (see Motion for Examination at Exhibit A at page 2 ¶ 3, Letter from ReedSmith to O'Melveny & Myers LLP dated August 9, 2017, arguing that the purported "Siemens Escrow Account" should be treated as property of Siemens), or (b) it is an undisputed, admitted claim held by HTA against GDB, in which case Rule 2004 discovery will serve absolutely no purpose. As one court put it, the "examination of a witness as to matters having . . . no effect on the administration of his estate is improper." In re Wilcher, 56 B.R. at 433. As is apparent from these statements of principle, it is improper here.

13. Furthermore, discovery is not permissible simply to delve into unspecified allegations regarding property held in the hands of third parties. In re Wilcher is instructive in this regard. Id. Real property was sold to the movant during bankruptcy proceedings. However, due to various allegations of wrongdoing and irregularities in the sale, an examiner sought Rule

8

2004 discovery of the purchaser. This was denied by the court. Relying on case law from the First Circuit, it was held that "although Rule 2004 permits examinations of 'third parties' the language of the rule makes it evident that an examination may be had *only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy*. It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a nondebtor's private business affairs." Id. at 434 (emphasis added) (citing In re GHR Energy Corp., 35 B.R. 534, 537 (Bankr. D. Mass. 1983)). It was further held that "[i]n the absence of any actual evidence of duplicity, [the purchaser] is not properly subject to a Rule 2004 examination." Id. Here, no allegations have been made that GDB has any such knowledge of a debtor's acts, conduct or financial affairs, nor of any duplicity. If anything, this case has far less of a nexus to the debtor than in In re Wilcher: there is no contention that property of the debtor has been unlawfully transferred to third parties, and Siemens is, in reality, seeking to examine GDB on account of a guaranty agreement to which the debtor was not even a party, to establish the existence of an account the existence of which in GDB's books is not disputed, arguing it is owned beneficially by an entity which is not even party to this motion (Siemens Puerto Rico).[9] On these facts, Rule 2004 disclosure is simply unwarranted.

14. The other cases cited by Siemens are even further removed from the case at hand and fail to substantiate Siemen's claims. In In re Mitco, 44 B.R. 35 (Bankr. E.D. Wis. 1984), the court permitted Rule 2004 discovery of an accountant of the debtor, including of the accountant's records of the debtor's audited financial statements. The court stated, as quoted by Siemens, that such discovery was permissible when it *"may lead to the discovery of assets"* of

---

[9] See discussion in Note 4.

the debtor. The court, however, also said, immediately thereafter, that "[n]evertheless, there are limits. An examination cannot be used for purposes of abuse or harassment. It also cannot stray into matters which are not relevant to the basic inquiry." The basic inquiry, as made clear from the context, is to discover assets of the debtor. Again, as made clear above, Siemens' sought-after discovery cannot possibly lead to this result. If there were an escrow agreement—and again, there is none—it could lead to the discovery of assets beneficially owned by Siemens Puerto Rico, an entity which is not even a party to this motion (*see* n. 4 above) let alone the debtor, or to the discovery of no new information about a claim owned by HTA against GDB that is already known, quantified and undisputed.

15. In re Mantolesky, 14 B.R. 973 (Bankr. D. Mass. 1981) also provides no support to Siemens' position. In it, the Court allowed discovery (under former Rule 205) of a business partner of the debtor, who had handled all administrative matters of the debtor's business, who was alleged to have complete control over bank accounts owned by the debtor, and, further, possessed most of the records of the debtor's business. See id. at 974-75. Under such circumstances, discovery was clearly permissible to uncover the financial state of the assets owned by the debtor. But to quote the Court:

> Rule 205 is not a device to be used to delve into all matter of the private non-related affairs of a third party. The primary concern for this debtor, at this time, is to obtain all of his past financial records and information …. the inquiry to be made of third persons should be limited to the facts of their association with the debtor. Here we are concerned at present only with obtaining as much financial information about this debtor from [the partner] as he is capable of providing, and not with his overall personal business affairs.

Id. at 976-77. Indeed, the court went on to say that questioning of the partner's overall personal business affairs was impermissible "until it can be shown that there is a reasonable likelihood that such inquiry is necessary to complete the debtor's financial picture." The case at hand

cannot be further removed from the facts In re Mantolesky, and the discovery sought by Siemens is manifestly not necessary for this purpose, as has been made abundantly clear above. Therefore, Rule 2004 discovery unwarranted.

16. In re Romas, 458 B.R. 275 (Bankr. D.S.C. 2011), and In re Coleman Craten, LLC, 15 F. Appx. 184 (4th Cir. 2001), do not change the complexion of the case. In re Romas permitted the Rule 2004 examination, by the U.S. Trustee, of an alleged creditor of a debtor who had asserted a mortgage over certain of the debtor's assets but had failed to disclose how, when or even if it had actually become owner of the mortgage. The examination was allowed, given the U.S. Trustee's role of "protecting the bankruptcy system from fraud and abuse." In re Romas, 458 B.R. at 279. Siemens clearly has no such role. In re Coleman Craten, LLC contains little reasoning, but apparently revolved around Fifth Amendment privileges, involved a 'third party' who was actually a debtor in a jointly administered case and the majority owner and senior officer of the debtor, and who at least allegedly voluntarily appeared and testified at a Rule 2004 examination—facts far removed from the case at hand. See In re Coleman Craten, L.L.C., Case No. 99-56381-SD (Bankr. D. Md. Nov. 20, 2000) [ECF No. 274].

17. It is a well-known fact that GDB is pursuing a modification of its financial debt under Title VI of PROMESA and—unlike Title III—Rule 2004 does not apply in such a proceeding. See Case No. 17-2383, Docket No. 249 at 2. And this Honorable Court has already rejected any argument that GDB and the Commonwealth or HTA should be treated on a consolidated basis. See Case No. 17-3283, Docket No. 1014 at 3 (finding that creditors of GDB are not, on account of such a relationship, creditors of the Commonwealth and the "treatment of GDB and the Commonwealth as a single entity for Title III purposes would run afoul of this statutory structure"). Therefore, any examination into GDB and the deposits it holds, including

11

GDB's purported liability under the Guaranty Agreement with Siemens Puerto Rico, should be deemed outside the scope of the instant case.

  **b. Siemens fails to show good cause for examining GDB.**

  18. Furthermore, a party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks. See, e.g. In re AOG Entm't, Inc, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016); In re Youk-See, 450 B.R. 312, 319-20 (Bankr. D. Mass 2011). Siemens has not met this burden, and therefore, the Motion for Examination should be denied.

  19. Rule 2004 expressly limits the scope of an examination to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." See Fed. R. Bankr. P. 2004(b).

  20. A party seeking to conduct a Rule 2004 examination typically shows good cause by establishing that the proposed examination is necessary to establish the proof of claim of the party seeking the examination, or denial of such request would cause the examiner undue hardship or injustice. In re AOG Entm't, Inc, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016). In evaluating a request to conduct a Rule 2004 examination, the Court must balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination; that documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production. Id.

  21. GDB has confirmed to Siemens that in its books the Account contains a balance of $13,000,000. See José Santiago Ramos' Declaration under Penalty of Perjury, Exhibit 1 at ¶ 2.

  22. The remaining issues for which discovery is sought by Siemens are legal, not factual, such as (i) the extent of Siemens' interests in these monies and (ii) whether the Account

(200079-420-001-004-06) is a valid escrow account as a matter of Puerto Rico law. Procedurally, these queries are not properly the subject of a Rule 2004 Examination and require the commencement of an action against GDB, or, at best, an adversary proceeding in the HTA Title III case. See Fed. Bankr. Rule 7001(2) ("a proceeding to determine . . . interest in property [is an adversary proceeding]").

23.     Finally, Siemens' statement pursuant to Local Bankruptcy Rule 2004-1 flies in the face of such rule, which states, in pertinent part, that "counsel for the party moving for an examination under Fed. R. Bankr. P. 2004 must confer with counsel for the proposed examinee(s) to arrange a mutually agreeable date, place, and time for the examination *before filing a motion for examination.*" See P.R. LBR 2004-1(b) (emphasis added). Siemens included a *pro forma* statement to the effect that a month had passed since it informed GDB that it wanted to take discovery and that no conference has occurred. See Motion for Examination ¶ 32. Yet, Siemens did not even have the courtesy of allowing GDB to provide the requested information—as Siemens admits, Motion for Examination ¶ 23, GDB indicated it would provide such information by September 15, yet, a day before that, on September 14, Siemens simply decided to file the Motion for Examination—perhaps recognizing that the information to be provided would moot its baseless Rule 2004 request. Indeed, GDB's attempts to reach a consensual resolution since the filing of the Motion for Examination have likewise been rejected by Siemens.

**WHEREFORE**, AAFAF and GDB respectfully request the Siemens's Motion for Examination be denied.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 31st day of October, 2017.

13

**IT IS HEREBY CERTIFIED** that a true copy of this document has been filed with the Clerk of the Court electronically using the CM/ECF system, which automatically serves notification of the filing to parties in interest.

| | |
|---|---|
| **PIETRANTONI MENDEZ & ALVAREZ LLC**<br>Popular Center – 19th Floor<br>208 Ponce de León Avenue<br>San Juan, PR 00918<br>Tel. 787-274-1212<br>Fax. 787-274-1470<br><br>/s/ ORESTE R. RAMOS<br>Oreste R. Ramos<br>USDC No. 216801<br>oramos@pmalaw.com<br><br>/s/ MARÍA D. TRELLES HERNÁNDEZ<br>María D. Trelles Hernández<br>USDC No. 225106<br>mtrelles@pmalaw.com<br><br>**LAW OFFICES OF GISELLE LÓPEZ SOLER**<br>PMB 257<br>Rd. 19 1353<br>Guaynabo, Puerto Rico 00966<br>Tel. (787) 667-0941<br>Email gls@lopezsolerlaw.com<br><br>/s/ GISELLE LÓPEZ SOLER<br>Giselle López Soler<br>USDC No. 224010<br><br>*Attorneys for the Government Development Bank for Puerto Rico* | /s/ Andrés W. López<br>Andrés W. López<br>USDC No. 215311<br><br>THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C.<br>902 Fernández Juncos Ave.<br>San Juan, PR 00907<br>Tel: (787) 294-9508<br>Fax: (787) 294-9519<br><br>*Attorney for the Puerto Rico Fiscal Agency & Financial Advisory Authority* |