UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                    Debtors. | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. 1518 |

**OBJECTION OF THE PBA FUNDS TO THE MOTION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED LEASES**

The PBA Funds,[1] who hold Government Facilities Revenue Bonds and Government Facilities Revenue Refunding Bonds (collectively, the "PBA Bonds" and the holders of PBA Bonds, the "PBA Bondholders") issued by the Puerto Rico Public Buildings Authority (the "PBA"), hereby submit this objection (the "Objection") to the *Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4)* [ECF No. 1518] (the "Motion").  In support of this Objection, the PBA Funds respectfully state as follows:

**PRELIMINARY STATEMENT**[2]

1.    The Oversight Board and AAFAF seek to extend the time to assume or reject leases to a date so far off that it may never occur—the effective date of plans of adjustment that have

---

[1] The PBA Funds currently consist of (a) Fir Tree Partners and (b) Candlewood Investment Group, each of which holds PBA Bonds (defined herein) or acts as investment manager or advisor (or is an affiliate of entities which act as investment managers or advisors) to funds and/or accounts that hold PBA Bonds.  The PBA Funds intend to file a verified statement in accordance with Rule 2019 of the Federal Rules of Bankruptcy Procedure and the *Order Further Amending Case Management Procedures* [ECF No. 1512].

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms in the Motion or the body of the Objection, as applicable.

ny-1303216

neither been conceived nor proposed, with respect to a fiscal plan that has been rendered moot by reason of changed circumstances and that needs to be reformulated for a Commonwealth that is still reeling from the impacts of an historically devastating natural disaster. That very real disaster has been made the pretext to eliminate important protections built into the Bankruptcy Code for the benefit of lessors.

2. What ordinarily would be a routine procedural motion does not appear the least bit routine or benign in light of the extraordinary nature of the relief being sought. The motion reflects an extreme overreach that disregards the interests of holders of bonds issued by the PBA, a real property owning instrumentality of the Commonwealth.

3. The Motion blithely seeks an order of this Court that would effectively override the central thesis of Bankruptcy Code section 365(d)(4)—the well-established timing imperatives of lease assumption and rejection enacted by Congress for the benefit of landlords. The overly broad and open ended nature of the relief sought is taking place within the context of lease transactions where PBA as lessor has chosen to act in a commercially unreasonable manner. This may be explained by the natural influence that the Commonwealth has over one of its instrumentalities, but that fact alone is sufficient cause for heightened scrutiny of the actions taken and the Motion itself. It is unthinkable that independent, unconflicted managers of the PBA properties would ever agree to such a plainly unfair arrangement that grants complete optionality to the tenant debtor and that allows the tenant to defer the decision to assume or reject leases indefinitely and without any fixed timing deadline. It amounts to a gift.

4. In its capacity as landlord, the PBA has acted unreasonably in consenting to an extension that no rational landlord would ever deem acceptable, especially at a time when full rental payments are not being paid as mandated under Bankruptcy Code section 365(d)(3). This

proposed extension—"negotiated" between related entities—has none of the characteristics of an arm's length agreement. It is clearly unfavorable to the PBA and tilts dramatically in favor of the Debtors. The requested unlimited extension is so manifestly one-sided that it serves as a warning of the potential for other unreasonable management decisions that can occur when there is no independent fiduciary to protect the interests of the PBA and its stakeholders.

5. The PBA Funds accept the proposition that an extension is warranted here, but not an unlimited one. The extension should be granted to a date certain without prejudice to additional extensions. The PBA Funds request that the Court deny the Motion to the extent that it seeks an open ended extension and enter an order that imposes appropriate limits on the time to assume or reject leases.

## BACKGROUND

6. The PBA Funds hold bonds issued by the PBA. Repayment of the PBA Bonds is supported by payments made pursuant to agreements (the "PBA Leases") under which the PBA leases facilities to various departments, agencies, instrumentalities and municipalities of the Commonwealth and other entities. Under a 1995 bond resolution[3] (the 1995 Resolution"), the PBA covenanted that "all Lease Agreements which it enters into for the leasing of Authority Facilities will . . . require the lessee or lessees of such Facilities to pay rentals which in the aggregate will be sufficient to provide the sums needed from time to time to" timely pay principal, interest, and certain amortization requirements relating to bonds issued by the PBA in connection with such facilities. *See* 1995 Resolution § 701. The PBA also covenanted that it would not agree to any amendment, modification or termination of the PBA Leases that would reduce the amount

---

[3] *See* Puerto Rico Public Buildings Authority, Resolution No. 468, Authorizing and Securing Government Facilities Revenue Bonds Guaranteed by the Commonwealth of Puerto Rico, adopted June 22, 1995, *available at* http://www.gdb-pur.com/investors_resources/PBA-Res468.pdf.

3

ny-1303216

of rental payments to levels insufficient to make the payments described above. *See* 1995 Resolution § 702.

7. On August 10, 2017, the Court entered an order [ECF No. 994] extending the time for the Debtors to assume or reject unexpired leases of nonresidential real property pursuant to Bankruptcy Code section 365(d)(4) through (a) November 29, 2017 for the Commonwealth, (b) December 1, 2017 for COFINA, and (c) December 18, 2017 for HTA and ERS. On October 6, 2017, the Court entered an order [ECF No. 1417] directing joint administration of PREPA's Title III case and specifying that PREPA's deadline to assume or reject unexpired leases of nonresidential real property pursuant to Bankruptcy Code section 365(d)(4) would expire on January 28, 2017 unless further extended.

8. On October 24, 2017, the Oversight Board filed the Motion, seeking a further extension of the time to assume or reject certain unexpired leases of nonresidential real property through the "effective date of plan of adjustment for each Debtor," as consented to by certain landlords. As of the date the Motion was filed, the only such consenting landlord was the PBA. *See* Motion, Exhibit B at 1.

**OBJECTION**

9. Bankruptcy Code section 365(d)(4) requires that a debtor must assume or reject an unexpired lease of nonresidential real property within 120 days after the petition date. *See* 11 U.S.C. § 365(d)(4)(B)(i). This period may be extended an additional 90 days "for cause," but any further extensions may only be granted "upon prior written consent of the lessor[s]." 11 U.S.C. § 365(d)(4)(B)(ii). The Debtors purport to have complied with these statutory requirements, citing the consent of the PBA to further extend the period prescribed by section 365(d)(4), perhaps indefinitely. In reality any such consent is illusory, because the PBA is an instrumentality of the

Commonwealth whose decisions are not being dictated by the prudent exercise of reasonable business judgment. Indeed, upon the purported consent of the PBA, the Motion seeks overly broad and extraordinary relief—a court order that would effectively nullify the provisions of section 365(d)(4) by overriding the obligation of the Debtors as lessees to timely decide whether to assume or reject the PBA Leases. By tying the proposed deadline for assumption or rejection of the PBA Leases to the effective date of plans of adjustment that have not yet been formulated or proposed, and which in any event may never be confirmed, the Debtors are asking the Court to bless the indefinite postponement of a critical decision to which no commercially reasonable landlord would ever acquiesce (especially considering that the Debtors have remained on PBA premises while paying only a small fraction of the rental payments due under the PBA Leases).

10. The Debtors cite a handful of unpublished orders to suggest that this sort of open-ended relief is regularly granted as a matter of course. A closer examination of these cases demonstrates the contrary to be true. In three of the cases cited (*Mesa Air Group*, *Bulk Petroleum*, and *Buckingham Oil*) the period to assume or reject leases was extended through a date certain.[4] And in all instances, the requisite consent was obtained by the affected landlords, with no

---

[4] *See In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y. Aug. 3, 2010) [ECF No. 956] (extending period to assume or reject leases through the earlier of (i) the plan effective date and (ii) a date certain); *In re Bulk Petrol. Corp.*, Case No. 09-21782 (SVK) (Bankr. E.D. Wis. Jan. 15, 2010) [ECF No. 926] (extending period through date certain upon consent of all parties in interest); *In re Buckingham Oil Interests, Inc.*, Case No. 15-13441 (JNF) (Bankr. D. Mass. Nov. 30, 2015) [ECF No. 402] (extending period through date certain). Although the Debtors state that the *Bulk Petroleum* court extended the debtor's deadline under Bankruptcy Code section 365(d)(4) through the effective date of a plan of reorganization (Motion ¶ 20), the Debtors are incorrect. In that case, the Court's order appears to have inadvertently omitted Exhibit A. *See In re Bulk Petrol. Corp.*, Case No. 09-21782 (SVK) (Bankr. E.D. Wis. Jan. 15, 2011) [ECF No. 926] (extending debtor's deadline "as specified in the attached Exhibit A or to the date of the entry of an order confirming a plan . . . <u>because each of the interested parties has consented to this extension</u>." (emphasis added)). When viewed in conjunction with the corresponding motion, however, the order appears to have extended the debtor's deadline to assume or reject various leases to dates that were between three and sixty-two days from the date of entry of the order. *See In re Bulk Petrol. Corp.*, Case No. 09-21782 (SVK) (Bankr. E.D. Wis. Dec. 18, 2009) [ECF No. 840-1] (listing dates to which consensual extensions were granted by lessors).

independent party in interest raising an objection to the proposed extensions.[5] Critically, none of these cases appear to have involved any sort of related-party dealing such as that between the Commonwealth and the PBA.[6]

11. The Motion suggests that if the Debtors are forced to "decide prematurely whether to assume" the PBA Leases, they would "be saddled with an administrative expense claim for all amounts due. . . ." Motion ¶ 21. While the Debtors are correct to point out that assumption of certain PBA Leases could convert what would otherwise be unsecured rejection damages into administrative expenses of the estates, it is disingenuous to suggest that a decision to reject the PBA Leases would absolve the Debtors of the obligation to pay postpetition rent as an administrative expense. Bankruptcy Code section 365(d)(3) requires a debtor to "timely perform all the obligations . . . under any unexpired lease of nonresidential real property, until such lease is assumed or rejected. . . ." 11 U.S.C. § 365(d)(3). This duty to keep current on rent obligations is unqualified and absolute, as unlike other administrative expenses, payments pursuant to section 365(d)(3) are exempted from the requirement that such payments represent "actual, necessary costs" of preserving the estate. *See Thinking Machs. Corp. v. Mellon Fin. Servcs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1024 (1st Cir. 1995) (citation omitted).

12. Notwithstanding their unequivocal obligation to pay rent as it comes due, the Debtors have not made their full rental payments on the PBA Leases since the commencement of these Title III cases—long before Hurricanes Irma and Maria wrought havoc upon the Commonwealth and its restructuring efforts. That the PBA has apparently failed to demand the

---

[5] *See id.*; *see also In re Walker Land & Cattle, LLC*, Case No. 13-41437 (JDP) (Bankr. D. Id. Apr. 29, 2014) [ECF No. 328] (extending period to assume or reject through confirmation for one consenting landlord who withdrew previous objection to the motion).

[6] *See, e.g., In Bulk Petrol. Corp.* Case No. 09-21782 (SVK) (Bankr. E.D. Wis. Dec. 18, 2009) [ECF No. 840-1] (specifically stating that all counterparties were "nonaffiliate[s]").

payments to which it is statutorily entitled, and instead allowed the Commonwealth to remain in its premises while paying only minimal rent for nearly six months (and perhaps indefinitely), further belies any notion that the PBA's consent to the extension sought by the Motion is the product of a disinterested, arm's length business decision. The Motion instead evinces an intent to postpone business decisions with respect to the PBA Leases indefinitely and is indicative of a disregard of the customary obligations of lessees, namely to pay rent.

13. The Motion recites a parade of horribles that would allegedly occur should the Debtors be "required to decide prematurely whether to assume" or reject the PBA Leases, and suggests that the "Debtors' restructuring efforts would be jeopardized without the relief requested. . . ." *See* Motion ¶ 21. That the circumstances on the island justify a deferment of the decision to assume or reject the PBA Leases is without question; what the Motion fails to demonstrate is why this decision may be put off indefinitely. Instead of the open-ended extension currently sought, the Commonwealth should seek a more limited extension of the section 365(d)(4) period through a date certain (*e.g.*, 120 days) of the sort that is regularly agreed upon between commercial landlords and tenants dealing at arm's length. As it stands, however, the Motion should not be granted.

## RESERVATION OF RIGHTS

14. The PBA Funds hereby reserve any and all rights with respect to the relief sought by the Motion and the issues raised by this Objection, including, but not limited to, the right to pursue any and all remedies with respect to currently outstanding or future rents or other amounts due to the PBA and to seek the appointment of a committee or independent fiduciary to represent the interests of the PBA, its creditors, or its other stakeholders.

ny-1303216

**CONCLUSION**

15. For the foregoing reasons, the PBA Funds respectfully request that the Court deny the Motion.

Date: October 31, 2017

By: /s/ Gerardo A. Carlo
Gerardo A. Carlo
USDC PR No. 112009
E-mail: gacarlo@carlo-altierilaw.com

By: /s/ Kendra Loomis
Kendra Loomis
USDC PR No. 227408
E-mail: loomislegal@gmail.com
Mobile: (787) 370-0255

By: /s/ Fernando O. Zambrana Aviles
Fernando O. Zambrana Aviles
USDC No. 227012
Email: fernando@cszlawpr.com
Tel. 787-919-0026

**G. CARLO-ALTIERI LAW OFFICES, LLC**
254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Phone: (787) 247-6680
Fax: (787) 919-0527

-and-

By: /s/ James M. Peck
James M. Peck (*pro hac vice* admission pending)
Gary S. Lee (*pro hac vice* admission pending)

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the PBA Funds*

ny-1303216