# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,[1]<br><br>                        Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

### OBJECTION OF THE QTCB NOTEHOLDER GROUP
### TO MOTION FOR ENTRY OF ORDER EXTENDING TIME TO
### ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL
### REAL PROPERTY PURSUANT TO BANKRUPTCY CODE SECTION 365(d)(4)

The QTCB Noteholder Group,[2] whose members collectively hold hundreds of millions of dollars in principal amount of those certain Qualified School Construction Bonds and Qualified Zone Academy Bonds (collectively, the "QTCBs") issued by the Puerto Rico Public Buildings Authority (the "PBA"), and guaranteed by the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to Act No. 56 of the Legislative Assembly of Puerto Rico, approved June 19, 1958, (as amended, the "PBA Enabling Act") and under the provisions of PBA Resolution No. 468 adopted June 22, 1995, as supplemented by Resolution No. 1596

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

[2] The QTCB Noteholder Group shall have the same meaning as set forth in Notice of Appearance and Request for Notice [ECF No. 134] and Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019 [ECF No. 1053].

adopted August 10, 2011, and Resolution No. 1618 adopted December 19, 2011, (collectively, the "PBA Bond Resolution") submit this objection (the "Objection") in the above-captioned Title III cases (the "Title III Cases") to the Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4) [ECF No. 1518] (the "Motion"). The Motion seeks to extend the time for the Debtors to assume or reject hundreds of Real Property Leases[3] under which PBA is the lessor (the "PBA Leases"), through the effective date of a plan of adjustment for each Debtor.

## Preliminary Statement

First and foremost, the QTCB Noteholder Group recognizes and appreciates the gravity of the situation in which Puerto Rico and its residents find themselves and the flexibility that the circumstances warrant. Accordingly, the QTCB Noteholder Group does not object to a reasonable extension of the deadline for the Commonwealth and/or any other Debtors to assume or reject the PBA Leases under section 365(d)(4) of the Bankruptcy Code (the "Deadline"). However, the Motion proposes an extension that entirely guts PBA's important rights as a lessor under section 365(d)(4) of the Bankruptcy Code pursuant to an "agreement" reached solely between related parties on terms that no third party lessor (or third party beneficiary) would ever accept. The relief sought in the Motion is unnecessarily broad and intrusive of the rights of PBA and its stakeholders.

The QTCB Noteholder Group has consistently sought to maximize value by promoting a constructive and consensual reorganization of PBA and the Commonwealth's related obligations. The Group has provided PBA and the Commonwealth with forbearances relating to numerous payment defaults that are ongoing. In response to the Commonwealth's first motion for an

---

[3] All terms not otherwise defined herein shall have the meaning given thereto in the Motion.

-2-

extension of the Deadline, the QTCB Noteholder Group observed that "[a]dequate creditor participation and transparency will be critical to ensure the integrity of any effort by the Commonwealth to further extend the deadline and/or modify or restructure the PBA Leases." Despite these proactive efforts, the Oversight Board elected to file the Motion without any effort to communicate with the QTCB Noteholder Group.

To promote the prospect of an improved process for an appropriate extension of the Deadline and, at the appropriate time, an efficient restructuring of PBA and the Commonwealth's obligations related thereto, the QTCB Noteholder Group respectfully submits that the Deadline should be extended for no more than 120 days from entry of a revised order to permit the parties to negotiate an appropriate process with adequate creditor participation and transparency to discuss further extensions of the Deadline.

In support of this Objection, the QTCB Noteholder Group respectfully represents as follows:

**Background**

1. On May 3, 2017, the Oversight Board, on behalf of the Commonwealth, commenced the Commonwealth's Title III case pursuant to sections 104(j) and 206 of the PROMESA. On May 5, 2017, the Oversight Board, on behalf of COFINA, commenced COFINA's Title III case pursuant to sections 104(j) and 206 of the PROMESA. On May 21, 2017, the Oversight Board, on behalf of ERS and HTA, commenced the ERS and HTA Title III cases pursuant to sections 104(j) and 206 of the PROMESA. On July 2, 2017, the Oversight Board, on behalf of PREPA, commenced PREPA's Title III case pursuant to sections 104(j) and 206 of the PROMESA.

2. The Commonwealth has guaranteed approximately $5.7 billion of bonds issued

by other agencies, instrumentalities and public corporations, including approximately $4 billion of bonds issued by PBA ($877 million of which relates to the QTCBs). PBA is not currently a debtor under Title III of PROMESA, but the Oversight Board has designated it a "Covered Entity" under PROMESA and the Commonwealth Fiscal Plan. PBA and the Commonwealth have defaulted on their payment obligations to PBA bondholders, including the QTCBs.

3. PBA is a body corporate and politic with corporate franchise and perpetual existence as a corporation, created and established by the Legislature of Puerto Rico on June 19, 1958, as an instrumentality of the Commonwealth, exercising public and essential functions of the Puerto Rico government. Puerto Rico Act No. 56 of June 19, 1958, as amended; 22 L.P.R.A. §§ 902, 906. PBA has all corporate powers conferred on corporations under Puerto Rico law, with authority to exercise such powers within Puerto Rico and abroad to the same extent that a natural person would or may do so. 22 L.P.R.A. § 906(a)(1), (22).

4. PBA was created 59 years ago to direct the ongoing preparation of plans and designs of buildings for schools, health facilities, offices, headquarters, courts, warehouses, workshops and any other physical facilities related to government services, as well as buildings or developments in those localities and in such manner as PBA may deem necessary and desirable and which seek to contribute to the public purpose of assisting the different departments, agencies, instrumentalities, authorities, public corporations and municipalities of the Commonwealth to the performance of their governmental functions. *See* 22 L.P.R.A. § 903.

> [PBA has] complete control and supervision over each and every one of its properties and activities, and the investment of its funds, including, among others: . . . the power to determine the nature and need of each of its expenses; . . . to sue and be sued, complain and defend itself in all courts of justice . . . ; to execute contracts, agreements and other instruments . . . ; to acquire any kind of property and rights thereon in any lawful manner, including . . . by agreement or through the exercise of the power of eminent domain, lease, bequest, legacy or gift, and to

>possess, keep, lease, pledge, mortgage or otherwise encumber, assign, and exploit any venture or part thereof.

22 L.P.R.A. § 906(a)(3)-(6). PBA also has power to assign or lease such properties, in whole or in part, as lessor, or to exchange any property thus acquired or any interest thereon. 22 L.P.R.A. § 906(a)(8).

5. PBA's organizational structure includes the following components: Board of Directors, Comptroller's Office, Conservation and Maintenance, Executive Director's Office, General Administration, the Communications Department, Human Resources and Labor Relations, Internal Audit Office, Internal Security Office, Legal Services, Office of Acquisition and Procurement of Goods and Services, Project Development, the Bids Division, and Technology and Information.[4]

6. PBA has approximately one thousand employees with annual payroll obligations that have ranged from $79,162,000 to $96,828,000. PBA manages 418 schools, 106 police/fire and other emergency service stations, 55 governmental centers and 36 judicial and court buildings as well as numerous hospitals, jails and parking lots.[5]

7. To support its operations, PBA has issued bonds for decades, including approximately $4.0 billion in principal amount of which remain outstanding. As explained in more detail below, these bonds are repaid primarily from rental payments from lessees of the buildings that PBA builds and manages, passing the cost of such building and management on to

---

[4] Divisions and offices are generally overseen by a director of such division, including the Executive Director (Dr. Amilcar González Ortiz), the Deputy Director, the Director of Human Resources and Labor Relations, the Director or Project and Development, the Director of Conservation and Maintenance, the Director of Legal Services, the Director of the Comptroller's Office, Director of Internal Audits, Director of Internal Security, Director of Technology and Information, the Director of Management, and the Director of Efficiency and Quality. These divisions serve the entire island of Puerto Rico, which PBA divides for administrative purposes into nine regions: Aguadilla, Arecibo, Bayamón, Caguas, Carolina, Guayama, Humacao, Mayaguez and Ponce.

[5] *See, e.g.,* https://www2.pr.gov/presupuestos/Budget_2012_2013/Aprobado2013Ingles/162.htm (last visited Sept. 11, 2017).

the various departments, instrumentalities and municipalities who make up the vast majority of lessees.

8. PBA leases and subleases its portfolio of real estate assets primarily to various departments, agencies, instrumentalities and municipalities of the Commonwealth. The rental payments from these leases are used to pay principal and interest on bonds issued by PBA, including the QTCBs. The Commonwealth has guaranteed the payment obligations under the vast majority of the PBA Leases. 22 L.P.R.A. § 916. In 2016, the Commonwealth ceased making direct and/or guaranteed rental payments under the PBA Leases. As a result, PBA and the Commonwealth have failed to fully satisfy their interest payment obligations with respect to PBA bonds (including the QTCBs) since late 2016.[6]

9. If the Commonwealth fails to cure the breach of the PBA Lease payment obligations, PBA and its stakeholders will have substantial claims against the Commonwealth.

10. The QTCB Noteholder Group has provided forbearances (dated November 22, 2016, and May 31, 2017, respectively) in an effort to promote an efficient and consensual process to discuss the restructuring of PBA and avoid an unnecessary Title III filing and adverse tax consequences to PBA and its stakeholders.

11. On July 21, 2017, the Debtors filed the first Motion for Entry of an Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property [ECF No. 705] (the "First Motion to Extend"). On July 28, 2017, the QTCB Noteholder Group (the only party to file a response to the First Motion to Extend) submitted a Reservation of Rights [ECF No. 783] (the "Reservation of Rights") reserving "all rights, including the right to object to

---

[6] PBA and the Commonwealth have defaulted on a portion of their QTCB interest payment obligations five times, including the interest payments due on October 1, 2016, January 1, 2017, April 1, 2017, July 1, 2017 and October 1, 2017.

-6-

or intervene in any motion, request, argument, act or effort to further extend the time for the assumption or rejection of the Real Property Leases."

12. On August 10, 2017, the Court granted the First Motion to Extend [ECF No. 994], extending the time for "Debtors to assume or reject any Real Property Leases for 90 days, through and including (i) November 29, 2017 for the Commonwealth, (ii) December 1, 2017 for COFINA, and (iii) December 18 for ERS and HTA."

**Objection**

13. The QTCB Noteholder Group objects to the Motion because it is the product of an insular negotiation between related parties to surrender PBA's fundamental rights as a landlord under the Bankruptcy Code (incorporated into PROMESA) without compensation to PBA, and to the detriment of PBA and the QTCB Noteholder Group, who has consistently sought to facilitate a constructive approach to discussions about PBA.

14. Congress enacted section 365(d)(4) of the Bankruptcy Code to protect lessors, like PBA, by providing them with substantial leverage to protect their interests in the chapter 11 proceedings of their lessees.[7] The requested "extension" defies the statutory framework for a debtor's assumption or rejection of leases, seeking to replace a definite deadline with a deadline that is so open-ended, it may occur years from now after a plan of adjustment is confirmed by this Court—or not at all. Indeed, the Motion does not seek an "extension," but instead it requests

---

[7] *See In re 440 Kings Way, LLC*, 430 B.R. 915, 918 (Bankr. S.D. Ga. 2007) ("[Section] 365(d)(4) was designed for the benefit of the lessor"); *In re Locke,* 180 B.R. 245, 251 (Bankr. C.D. Cal. 1995) ("Congress enacted [section] 365(d)(4) to expedite determinations of lessors' interests in unexpired leases of non-residential real property); *Matter of Haute Cuisine, Inc.,* 57 B.R. 200, 203 (Bankr. M.D. Fla. 1986) ("[T]he sixty day termination rule of [section] 365(d)(4) was enacted for the benefit of lessors and is intended to protect them from unreasonable risks occasioned by the precarious financial condition of the lessee-debtors."); and *In re T.F.P. Res., Inc.*, 56 B.R. 112, 115–16 (Bankr. S.D.N.Y. 1985) ("[T]he 60-day termination rule is for the benefit of lessors . . .").

the Court to render section 365(d)(4) inapplicable to the PBA Leases. Notably, while the Motion is styled in a manner ostensibly to apply to numerous lessors, there are no third party lessors on the relevant Exhibits—PBA is the only listed lessor.

15. Granting the motion would surrender forever PBA's right to require the Commonwealth to decide whether to assume or reject hundreds of PBA Leases at a time when the Commonwealth has been in material breach of its lease payment obligations for over a year, including administrative expense claims that are accruing while the Commonwealth continues to enjoy and use the properties during the pendency of this Title III case. The Motion surrenders all of PBA's rights and leverage under section 365(d)(4) in exchange for nothing. No unrelated third party lessor would agree to such a deal.[8]

16. Moreover, the relief sought in the Motion would impair the rights and interests of third party beneficiaries of the PBA Leases (including the QTCB Noteholder Group) under the terms of the leases and applicable law. Instead of engaging with supportive stakeholders who, upon information and belief, are entitled to third party beneficiary rights under the PBA Leases, the behavior related to the Motion undermines constructive dialogue and could needlessly force noteholders to assert their rights and potentially force a filing of PBA. There is a better path.

17. Despite the QTCB Noteholder Group's constructive efforts, including the forbearances, the Motion seeks to eliminate PBA's consent rights—and the third party beneficiary rights of PBA bondholders—to seek relief under section 365 of the Bankruptcy Code. More cooperation and transparency is necessary if there is to be any prospect of a consensual restructuring of PBA at the appropriate time.

---

[8] The Motion cites a handful of cases where landlords granted assumption/rejection deadline extensions to the date of confirmation. However, each of those cases involved arms-length agreements between unrelated parties. That is not the case here.

18. Discussions about the treatment of the PBA Leases and how they relate to the ultimate restructuring of the obligations of PBA (in a Title VI proceeding, for example) and the Commonwealth guarantee obligations (in the Title III Cases) cannot occur solely between related parties without meaningful creditor participation and transparency.

19. On numerous occasions since the inception of these Title III Cases, the QTCB Noteholder Group has reached out to the Oversight Board and AAFAF to discuss consensual approaches with respect to the QTCBs and the recovery of Puerto Rico. Despite these efforts and filing the Reservation of Rights, at no time did AAFAF or the Oversight Board seek the QTCB Noteholder Group's input or consent, to the extent such consent is required, on the extension sought in this Motion.

20. Adequate creditor participation and transparency is critical to ensure the integrity of any effort to assume or reject the PBA Leases and/or to ultimately determine the rights of PBA and its bondholder under the PBA Leases. PBA has substantial claims against the Commonwealth that continue to accrue and must be protected for the benefit of PBA and its stakeholders. The Commonwealth cannot be permitted to use its Title III proceeding to abandon PBA's rights and/or to settle or relinquish PBA's substantial claims through related party "agreements" while PBA is not subject to a Title III proceeding. Put simply and colloquially, the Commonwealth cannot have its cake and eat it too.

21. The QTCB Noteholder Group's Reservation of Rights highlighted this issue:

> Adequate creditor participation and transparency will be critical to ensure the integrity of any effort by the Commonwealth to further extend the deadline, to assume or reject the PBA Leases and/or to modify or restructure the PBA Leases. In addition, there are material tax sensitivities relating to any effort to restructure PBA and/or the PBA Leases that must be carefully considered to avoid further economic damage to PBA, the Commonwealth and their various stakeholders.

22. The QTCB Noteholder Group remains constructive and does not object in principal to a reasonable extension of the Deadline. But there is no need to immediately extend the Deadline into perpetuity. The QTCB Noteholder Group therefore objects to the Motion and requests that any Order approving the Motion should extend the Deadline no more than 120 days (without prejudice to the Commonwealth's right to seek further extensions) to permit the parties to negotiate an appropriate process with adequate creditor participation and transparency to discuss further extensions of the Deadline and, at the appropriate time, the ultimate restructuring of PBA.

23. In addition, the Order should clarify that nothing in the Order (i) impairs or modifies PBA's rights and claims under or related to the PBA Leases under PROMESA and applicable law; nor (ii) impairs or modifies the rights or claims of any bondholders and/or third party beneficiaries under or related to the PBA Leases under PROMESA and applicable law.

24. The QTCB Noteholder Group further expressly reserves any and all (direct or derivative) claims and rights to object, intervene, act, or bring or make any motion, request, or argument regarding the PBA Leases arising under the PBA Leases, the PBA Enabling Act, the PBA Bond Resolution, the Bankruptcy Code, PROMESA and all other applicable laws.

Dated: October 31, 2017

        **BRACEWELL LLP**

        */s/ Kurt A. Mayr*
        Kurt A. Mayr (*pro hac vice*)
        David L. Lawton (*pro hac vice*)
        City Place I, 34th Floor
        185 Asylum Street
        Hartford, CT 06103
        Telephone: (860) 256-8534
        Email: kurt.mayr@bracewell.com

*Counsel for the QTCB Noteholder Group*

**CORREA ACEVEDO & ABESADA LAW OFFICES, P.S.C.**
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R. 00968
Tel. (787) 273-8300; Fax (787) 273-8379

*/s/ Sergio E. Criado*
Sergio E. Criado
USDC-PR No. 226307
E-Mail: scriado@calopsc.com

*Co-Counsel for the QTCB Noteholder Group*

  **I HEREBY CERTIFY** that on October 31, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

                */s/ Sergio E. Criado*
                Sergio E. Criado
                USDC-PR No. 226307
                Centro Internacional de Mercadeo II
                #90 Carr. 165 Suite 407
                Guaynabo, Puerto Rico 00968-8064
                scriado@calopsc.com
                (787) 273- 8300

                */s/ Kurt A. Mayr*
                Kurt A. Mayr
                Bracewell LLP
                City Place I, 34th Floor
                185 Asylum Street
                Hartford, CT 06103
                Tel: (860) 254-8534
                Email: kurt.mayr@bracewell.com