**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. 1514 |

**THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY
AUTHORITY'S OBJECTION TO URGENT MOTION OF FINANCIAL GUARANTY
INSURANCE COMPANY REGARDING PROPOSED 90-DAY STAY OF ALL
LITIGATION TO FACILITATE THE RECOVERY FROM HURRICANES IRMA AND
MARIA**

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtor entities under its authority under the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017, respectfully submits this objection to the *Urgent Motion of Financial Guaranty Insurance Company regarding Proposed 90-Day Stay of All Litigation to Facilitate the Recovery from Hurricanes Irma and Maria* (the "Motion") [ECF No. 1514] and states as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**BACKGROUND**

1. On September 20, 2017, Hurricane Maria made landfall in Puerto Rico. It was the strongest storm to hit Puerto Rico since 1932, arriving only two weeks after Hurricane Irma, one of the strongest storms ever recorded in the Atlantic. As a result of these storms, Puerto Rico is currently facing one of the worst crises in modern history. Families have been displaced from their homes, many of which have been destroyed. Key infrastructure has been severely damaged, leaving thousands without potable water, electricity, and access to communications. Floodwaters damaged dams, impaired sanitary services, and increased the risks of tropical diseases, mudslide, and environmental contamination.

2. Not only is Puerto Rico facing extensive costs in the aftermath of the storms, which are severely straining its already limited liquidity, it is also in the midst of a decade-long economic depression while attempting to restructure its debt under PROMESA through these Title III cases.

3. On October 24, 2017, Financial Guaranty Insurance Company ("FGIC") filed the Motion requesting a 90-day stay of the Title III cases and all related litigation. The only matters exempted from FGIC's proposed stay are the constitutional issues raised by the *Objection and Motion of Aurelius to Dismiss Title III Petition* [ECF No. 913], *Motion of Aurelius for Relief from the Automatic Stay* [ECF No. 914], and *Union de Trabajadores de la Industria Electrica y Riego v. Puerto Rico Electric Power Authority* [Adv. Pro. No. 17-228].

**OBJECTION**

*A.    The Title III Cases Should Proceed With As Minimal Delay As Possible.*

4.    AAFAF objects to any blanket stay of the Title III cases and related litigation. As it has previously explained,[2] AAFAF desires to move forward with the Title III cases and related litigation with minimal disruption. While AAFAF appreciates FGIC's expressed concern for Puerto Rico's recovery, the democratically elected Government of Puerto Rico (the "Government") has determined that it is in the best interest of the people of Puerto Rico that these Title III cases continue as expeditiously as possible.

5.    The Title III cases are an essential element of Puerto Rico's recovery. As the Government turns its focus to rebuilding infrastructure and laying the foundation for long-term economic recovery, greater clarity regarding Puerto Rico's fiscal future is critical. In order to provide much needed clarity, these Title III cases and related litigation must continue to clear Puerto Rico's legal uncertainties and resulting economic uncertainties. Absent a prompt resolution of these issues, Puerto Rico cannot achieve the twin aims of PROMESA—attaining fiscal responsibility and access to the capital markets. *See* PROMESA § 101(a).

6.    There is no basis to impose a blanket stay of the Title III cases and related litigation. Many currently pending matters address fundamental questions of the Debtors and creditors' rights in the Title III cases. For example, adjudication of issues regarding the relative rights, priorities, and secured status (or lack thereof) of creditors should proceed without delay. The determination of these issues is not affected by the current circumstances in Puerto Rico and any uncertainty resulting therefrom. Instead, the rights of creditors are generally determined as

---

[2] *See Urgent Informative Motion Regarding Hurricane Maria and Request for Adjournment of Certain Upcoming Deadlines* [Dkt. No. 1332]; *Urgent Informative Motion Regarding the Impact of Hurricane Maria and Proceeding Within the Title III Cases* [Dkt. No. 1360].

of the petition date.[3]  Progress must be made on these issues before the Debtors can emerge from Title III.  Even if the resolution of certain issues is delayed, litigation regarding all issues capable of being determined now should proceed, including determination of issues bearing on the rights of creditors as of the commencement of the Title III cases.

7.  Indeed, elected leaders and public employees have been working tirelessly in coordination with AAFAF and the FOMB to continue to prosecute the Title III cases and related litigation.  Since the passage of Hurricane Maria, the parties have continued discovery and motion practice on many matters that are critical to advancing these cases.  Now, over a month after the passage of Hurricane Maria, there are no practical or logistical impediments preventing the adjudication of the vast majority of matters currently pending before the Court.

8.  In addition, many matters currently pending before the Court present limited or no factual issues.  Resolution of these issues is not dependent on extensive discovery and coordination with Government officials in Puerto Rico.  Thus, matters that present predominantly legal issues can be decided without delay.

9.  The approach taken by the FOMB, AAFAF, and other parties in interest in the aftermath of the hurricanes demonstrates that an across-the-board stay is unnecessary and counterproductive.  In recognition that the conditions in Puerto Rico have made some delay unavoidable, AAFAF and the FOMB have engaged with parties in interest to seek adjournments and extensions of deadlines when appropriate.[4]  The Court, upon consideration of the parties'

---

[3] *See In re DLC, Ltd.*, 295 B.R. 593, 605 (8th Cir. BAP 2003) ("The date of the filing of the petition is important because it generally fixes the rights of the estate and other parties in interest."); *see also Slentz v. Jobs.com Inc.*, 393 F.3d 508, 527 (5th Cir. 2004) ("[T]he rights of holders of claims and interests are fixed as of the Petition Date."); *In re Polichuk*, 506 B.R. 405 (Bankr. E.D. Penn. 2014) ("[T]he correct approach is to use the petition date to determine whether a creditor has an allowable claim."); *In re DVI, Inc.*, 306 B.R. 496, (Bankr. D. Del. 2004) (debtor-in-possession occupies position of hypothetical creditor holding a judgment lien as of the petition date in exercising avoidance powers).

[4] *See, e.g., Second Notice and Stipulation Amending Deadlines Agreed Concerning the Request for Relief of Stay Filed by HTA Managerial Employees* [ECF No. 1517] (extending deadlines because "widespread power outages,

4

requests, has adjourned certain matters[5] and allowed others to proceed.[6] Going forward, adjournments and extensions of deadlines should continue to be considered on a case-by-case basis. This approach will permit the cases to proceed to the fullest extent possible, while also retaining flexibility for the parties to seek adjournments and extensions when the circumstances warrant.

### B. *FGIC Does Not Have Standing to Request a Stay of the Title III Cases and All Related Litigation.*

10. In addition to the above described reasons, the motion should also be denied for lack of standing to seek the relief requested. Namely, FGIC has no right to request a stay of cases in which it has no interest.

11. The breadth of FGIC's request is striking. It requests that all Title III cases and adversary proceedings be stayed for three months, with the single, narrow exception of certain litigation proceeding under the appointments clause of the U.S. Constitution. Yet while FGIC has gone to great lengths to explain its views on how best to serve the interests of the people of

---

lack of fully functional telecommunications infrastructure, and closure of various offices, has prevented Movants from finishing the gathering of information that HTA needs to make an individual assessment of the request for relief."); *Notice of Withdrawal, Without Prejudice, of Debtors' Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 1442] (withdrawing motion to establish claims bar date "in light of the passage of Hurricane Maria and the Commonwealth's ongoing recovery efforts, and conversations with creditors."); *Urgent Informative Motion of Defendant Financial Oversight and Management Board for Puerto Rico Regarding Deadlines Related to the Adversary Complaint* [Adv. No. 17-228, Dkt. No. 40] (seeking extension of deadlines "in light of the conditions in Puerto Rico resulting from Hurricane Maria" at the request of plaintiff's counsel).

[5] *See, e.g., Order Adjourning Pietrantoni Mendez & Alvarez LLC's Motion to Quash Subpoena* [Adv. No. 17-257, Dkt. No. 52]; *Order Further Adjourning Pietrantoni Mendez & Alvarez LLC's Motion to Quash Subpoena* [Adv. No. 17-257, Dkt. No. 72]; *Order Regarding Briefing and Hearing Schedule in Connection with the Aurelius Motions and UTIER Adversary Proceedings* [Adv. No. 17-228, Dkt. No. 48].

[6] *See, e.g., Order Granting Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties* [Dkt. No. 1547]; *Order Scheduling Briefing and Hearing in Connection with the Urgent Motion to Appoint a Chief Transformation Officer* [Case No. 17-4780, Dkt. No. 362].

5

Puerto Rico, its Motion fails entirely to explain on what basis it seeks a stay so sweeping in scope.

12. FGIC insures general obligation bonds issued by the Commonwealth and bonds guaranteed by the Commonwealth.[7] It also insures bonds issued by HTA and other instrumentalities of the Commonwealth that are not currently debtors in cases under Title III.[8] It has no interest in the many issues that are unique to COFINA, ERS, and PREPA. For example, FGIC has no interest in issues regarding whether the ERS bondholders hold valid secured claims, which are currently being litigated in *Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Altair Global Credit Opportunities Fund (A) LLC* [Adv. No. 17-213]. Similarly, FGIC has no interest in issues regarding the ownership of certain sales and uses taxes held by the Bank of New York Mellon, as trustee, which are being litigated in *The Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corporation* [Adv. No. 17-133].[9] These are but two examples of many where FGIC seeks to stay pending cases to which it is a complete stranger.

13. While Bankruptcy Code[10] section 1109(b) grants broad rights to appear and be heard, "party in interest" standing is not unlimited.[11] To qualify as a "party in interest," the party

---

[7] *See Joinder of Financial Guaranty Insurance Company to Joint Motion by the Ad Hoc Group of General Obligation Bondholders, Assured Guaranty Corp., Assured Gauranty Municipal Corp., and the Mutual Fund Group for Order Authorizing Rule 2004 Examination* at ¶ 1 [Dkt. No. 1335].

[8] *See id.*

[9] *See Memorandum Opinion and Order* at 7 [Adv. No. 13-133, Dkt. No. 276] ("Under these circumstances, the [general obligation bondholders] lack[] the direct interest necessary to establish prudential standing . . . ."); *see also Memorandum Order Denying Financial Guaranty Ins. Co.'s Motion for Leave to Intervene* at 2 [Adv. No. 17-133, Dkt. No. 284] (denying FGIC's motion to intervene for "substantially the reasons" the Court denied the general obligation bondholders motion because "FGIC is identically situated to the GO bondholders for purposes of the Article III standing analysis.") ("FGIC Intervention Order").

[10] Incorporated to Title III by PROMESA section 301(a).

[11] *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 64 n. 7 (1st Cir. 2017) (party in interest must also satisfy constitutional requirements for standing).

6

must show that it is not "merely interested in the outcome of the matter" but that it has a "direct legal interest" that could be affected by the outcome of the case.[12] FGIC has failed to demonstrate what interest it has in the vast majority of the Title III cases and adversary proceedings it seeks to stay. Indeed, issues currently pending in the COFINA, ERS, and PREPA Title III cases and related adversary proceedings do not implicate its rights. The Court recognized this fact when it denied FGIC's motion to intervene in the COFINA interpleader proceeding because FGIC failed to establish that it "independently satisfies Article III's requirements for standing."[13] Thus, FGIC lacks standing to seek the relief requested.

14. Accordingly, AAFAF respectfully requests that the Court deny the Motion in its entirety.

*Remainder of Page Intentionally Left Blank*

---

[12] *In re Addison Comm. Hos. Auth.*, 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994); *see also James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (a party in interest is one who has a "legally protected interest that could be affected by a bankruptcy proceeding.").

[13] FGIC Intervention Order at 3.

Dated: October 31, 2017
San Juan, Puerto Rico

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| */s/ John J. Rapisardi* | */s/ Andrés W. López* |
| John J. Rapisardi | Andrés W. López |
| Suzzanne Uhland | USDC No. 215311 |
| (Admitted *Pro Hac Vice*) | **THE LAW OFFICES OF** |
| **O'MELVENY & MYERS LLP** | **ANDRÉS W. LÓPEZ, P.S.C.** |
| 7 Times Square | 902 Fernández Juncos Ave. |
| New York, NY 10036 | San Juan, PR 00907 |
| Tel:  (212) 326-2000 | Tel:  (787) 294-9508 |
| Fax:  (212) 326-2061 | Fax:  (787) 294-9519 |
| | |
| Peter Friedman | *Co-Attorney for the Puerto Rico Fiscal* |
| (Admitted *Pro Hac Vice*) | *Agency and Financial Advisory Authority* |
| **O'MELVENY & MYERS LLP** | |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | |
| Tel:  (202) 383-5300 | |
| Fax:  (202) 383-5414 | |

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*