**Hearing Date:** November 13, 2017 at 11:00 a.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
-------------------------------------------------------- x
                                                         :
                                                         :
In re                                                    :
                                                         :   PROMESA
THE FINANCIAL OVERSIGHT AND                              :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                        :
                                                         :
     as representative of                                :   Case No. 17-BK-3283 (LTS)
                                                         :
THE COMMONWEALTH OF PUERTO RICO,                         :   (Jointly Administered)
et al.,                                                  :
                                                         :
     Debtors.                                            :
                                                         :
-------------------------------------------------------- x
                                                         :
                                                         :
In re                                                    :
                                                         :
                                                         :   PROMESA
THE FINANCIAL OVERSIGHT AND                              :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                        :
                                                         :
     as representative of                                :   Case No. 17-BK-04780 (LTS)
                                                         :
PUERTO RICO ELECTRIC POWER                               :   Court Filing Relates Only to PREPA
AUTHORITY (PREPA)                                        :
                                                         :
     Debtor.                                             :
                                                         :
-------------------------------------------------------- x
```

**RESPONSE OF SCOTIABANK DE PUERTO RICO, AS ADMINISTRATIVE AGENT, TO URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO FOR ENTRY OF ORDER CONFIRMING APPOINTMENT <u>AND AUTHORITY OF CHIEF TRANSFORMATION OFFICER</u>**

## TABLE OF CONTENTS

**Page**

RESPONSE ........................................................................................................................................1

I. PROMESA does not authorize the Oversight Board to control the management of PREPA. .........................................................................................................................3

II. Without appointing a new chief executive for PREPA, the Oversight Board has ample authority to oversee PREPA's recovery effort. ..............................................9

III. Conclusion ...................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bessette* v. *Avco Fin. Servs., Inc.*,
   230 F.3d 439 (1st Cir. 2000) ................................................................................................ 7

*In re Dicroce*,
   1998 WL 35416878 (1st Cir. B.A.P. Feb. 25, 1998) ................................................................ 7

*In re SPM Mfg. Corp.*,
   984 F.2d 1305 (1st Cir. 1993) ................................................................................................ 7

*INS* v. *Nat'l Ctr. for Immigrants' Rights, Inc.*,
   502 U.S. 183 (1991) ............................................................................................................... 8

*Jarecki* v. *G.D. Searle & Co.*,
   367 U.S. 303 (1961) ............................................................................................................... 6

*Maracich* v. *Spears*,
   133 S. Ct. 2191 (2013) ........................................................................................................... 6

*Noonan* v. *Sec. of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*,
   124 F.3d 22 (1st Cir. 1997) .................................................................................................... 7

**Statutes**

11 U.S.C. § 105(a) ................................................................................................................. 6, 7

11 U.S.C. § 363 ........................................................................................................................... 5

11 U.S.C. § 365 ...................................................................................................................... 4 n.4

11 U.S.C. § 1108 ......................................................................................................................... 5

48 U.S.C. §§ 2101-2241 ......................................................................................................... 3 n.3

PROMESA § 101 ....................................................................................................................... 9

PROMESA § 104 ................................................................................................................... 3, 9

PROMESA § 201 *et seq.* ........................................................................................................... 9

PROMESA § 204 ....................................................................................................................... 9

PROMESA § 205 ....................................................................................................................... 3

PROMESA § 301 ....................................................................................................................... 4

PROMESA § 305 .............................................................................................................. 6, 7-8, 8 n.6

PROMESA § 306 ..............................................................................................................................6, 8

PROMESA § 315 ................................................................................................................................5, 6

**Other Authorities**

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts* (2012) ....................................................... 8 n.6

*Black's Law Dictionary* (10th ed. 2014) ........................................................................................ 8

H.R. Rep. No. 114-602 (2016) .................................................................................................... 8 n.5

Scotiabank de Puerto Rico ("Scotiabank"), as administrative agent for lenders owed approximately $550 million (the "Fuel Line Lenders") by the Puerto Rico Electric Power Authority ("PREPA"), respectfully submits this response to the *Urgent Motion of Financial Oversight and Management Board for Puerto Rico for Entry of Order Confirming Appointment and Authority of Chief Transformation Officer* (the "CTO Motion") [Docket No. 361].

### RESPONSE[1]

1.  No one involved in these Title III cases, indeed no one who is concerned with the plight of Puerto Rico, can disagree with the Oversight Board's premise that the situation in Puerto Rico is dire, and that urgent action is needed to ensure that PREPA's post-hurricane recovery efforts are conducted with maximum speed and efficiency. It is deeply troubling that, after approximately six weeks, residents and businesses of Puerto Rico lack access to electricity and other essentials, including potable water. Restoring electricity to the island, along with basic services, is a moral and economic imperative that must be addressed through coordinated action by PREPA, the Commonwealth of Puerto Rico, and the federal government.

2.  The CTO Motion, however, while invoking Hurricane Maria and the need to expedite PREPA's hurricane-recovery efforts, does not seek relief that is either authorized by PROMESA or limited to the hurricane-recovery efforts. Through the CTO Motion, the Oversight Board seeks to appoint a new chief executive of PREPA for the duration of these Title III cases, displacing PREPA's current Executive Director and its Board. The proposed CTO would not only develop and implement a disaster recovery plan for PREPA but would also be

---

[1] Capitalized terms that are not defined have the meanings ascribed to them in the CTO Motion.

-1-

responsible, over the much longer term, for "implementing PREPA's long and short term plans." CTO Motion ¶ 4.

3. The CTO Motion should be denied on the basis that PROMESA does *not* authorize the relief being sought. If the CTO Motion were granted, the proposed CTO would have "all powers of a chief executive officer reporting to the Oversight Board." *Id*. at 1. The CTO would "have the responsibility for overseeing management and the business and affairs of PREPA" and would "perform all duties and have all powers that are commonly incident to the chief executive officer." *Id*. ¶ 42. The PROMESA statute, however, does not provide the Oversight Board with authority to take control of the management of PREPA. Rather, under the statute, the Oversight Board is intended to perform an oversight function, which is important in itself but different from a management role.

4. To be clear, the Fuel Line Lenders would not object to the engagement of a CTO to help the Oversight Board in effectuating its statutory mandate. In particular, if the Oversight Board wishes to engage a CTO for a limited time to aid in supervising the hurricane-recovery effort, the Board's decision should be respected. But the relief sought by the CTO Motion goes much further: It would allow the Oversight Board to replace and supplant the management of PREPA for all purposes, without an appropriate process to ensure that any new leadership has the experience and support necessary to succeed. Rather than working at cross purposes, the Fuel Line Lenders urge PREPA, the Commonwealth, and the Oversight Board to work together (in consultation with creditors) to ensure that PREPA has the best leadership and staff available, including the specialized staff needed to direct the restoration of the PREPA power grid.

**I.    PROMESA does not authorize the Oversight Board to control the management of PREPA.**

5.    The Oversight Board is a creature of statute: it was created by PROMESA, and its powers and duties are limited by that statute. To grant the CTO Motion, this Court would have to conclude that the Oversight Board is empowered by PROMESA to exercise managerial and operational control over PREPA and to appoint PREPA's senior management. PROMESA, however, simply does not provide the Oversight Board with such authority.

6.    The "Powers of [the] Oversight Board" are set forth in section 104 of PROMESA.[2] The Oversight Board has the power to conduct hearings, obtain information from governments and creditors, issue subpoenas, enter into contracts, certify voluntary restructuring agreements, file petitions and plans of adjustment, seek judicial enforcement of its authority to carry out its responsibilities, and conduct investigations of bond issuances. Notably absent from this list is any power to operate or manage the business of a debtor.

7.    Title II of PROMESA describes the responsibilities of the Oversight Board. The Oversight Board is charged with the responsibility to approve fiscal plans and budgets, to monitor a debtor's compliance with such fiscal plans and budgets, to analyze a debtor's pension liabilities, to make "recommendations" on financial stability and management to the Governor or the Legislature,[3] and to intervene in litigation against the debtor. Finally, Title III, Adjustments of Debts, provides the Oversight Board with the power to file petitions under PROMESA, to propose a plan of adjustment, and to employ professionals.

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]  Notably, PROMESA's one reference to a role of the Oversight Board with respect to management is a grant of authority to "submit recommendations" concerning management to the responsible officials. PROMESA § 205(a)(1).

-3-

8. No provision of PROMESA authorizes the relief being sought here. Although the Oversight Board points to various provisions from which it seeks to imply the power to appoint a new chief executive, those provisions do not support the relief being sought.

9. First, the Oversight Board cites section 301(c)(7) of PROMESA, which — for purposes of the Bankruptcy Code provisions that are incorporated into PROMESA — defines the term "trustee" as the Oversight Board. Because the Oversight Board is a "trustee," it argues, the Oversight Board "*must* be able to manage the debtor." CTO Motion ¶ 33 (emphasis added). As purported support for this conclusion, the Oversight Board invokes this Court's decision denying the PREPA bondholders' motion for relief from the stay to seek the appointment of a receiver, which was based in part on a finding that a receiver would interfere with the Oversight Board's role as "trustee." *Id.* (citing Order Denying Receiver Motion at 13). In its decision, however, this Court did not suggest that the Oversight Board, as "trustee," can displace the management of PREPA, by court order or otherwise. To the contrary, the decision acknowledged that Congress "denied the Title III court power to displace PREPA's management." Order Denying Receiver Motion at 13.

10. By its plain terms, section 301(c)(7) does *not* provide the Oversight Board with any and all powers that *could* be available to a "trustee"; instead, it provides the Oversight Board only with those powers granted to a trustee in the specific Bankruptcy Code provisions that are "made applicable in a case under this title by subsection (a)." Section 301(a), however, does not incorporate any provision of the Bankruptcy Code that would authorize the Oversight Board, as "trustee," to appoint or supplant PREPA's senior management.[4] To the contrary, there are two

---

[4] The sole provision referenced by the CTO Motion of any relevance is section 365 of the Bankruptcy Code, which is the power to assume or reject executory contracts. The Oversight

-4-

notable *exceptions* to the Bankruptcy Code provisions incorporated into PROMESA that undermine any claim that the Oversight Board has such expansive powers.

11. First, under section 1108 of the Bankruptcy Code, a "trustee" is authorized to operate the debtor's business. The provision states simply that "[u]nless the court . . . orders otherwise . . . the trustee may operate the debtor's business." 11 U.S.C. § 1108. But section 1108 is *not* incorporated into PROMESA. That alone refutes the Oversight Board's assertion that it has "management" authority over PREPA. CTO Motion ¶ 33.

12. Second, section 363 of the Bankruptcy Code also is not incorporated into PROMESA. Section 363(c)(1) grants the debtor or trustee, if authorized to operate the business of the debtor under section 1108, the power to enter into transactions with respect to property of the estate "in the ordinary course of business." Section 363(b)(1), in turn, authorizes use of the debtor's property outside the ordinary course of business if authorized by the court. By excluding section 363 from the provisions incorporated into PROMESA, Congress opted not to provide the Oversight Board with the authority to direct the use of PREPA's property in the ordinary course of business or even outside the ordinary course of business with court approval. The Oversight Board's claim that it can appoint and control PREPA's senior management ignores Congress's choice not to incorporate section 363 into PROMESA.

13. In a related argument, the Oversight Board invokes its role as "representative" of the debtor pursuant to section 315 of PROMESA, which authorizes the Oversight Board to "take any action necessary on behalf of the debtor to prosecute the case of the debtor." CTO Motion

---

Board asserts that "[i]nstalling [a] CTO is consistent" with the Oversight Board's power to assume or reject executory contracts. CTO Motion ¶ 33 n.28. But nothing in section 365 permits appointment of the CTO; the Oversight Board's reliance on section 365 confirms the lack of actual statutory authority for the relief being sought.

-5-

¶ 34. But prosecution of a Title III case is fundamentally different from managing the business of the debtor. Indeed, section 315 of PROMESA, entitled "Role and Capacity of Oversight Board," specifically enumerates the actions that the Oversight Board may take "to prosecute the case of the debtor," including (a) filing petitions; (b) submitting plans of adjustment; and (c) submitting filings in relation to the case with the court. Although the Oversight Board points out, correctly, that the list in section 315(a) uses the word "including," the actions listed nonetheless illustrate what types of actions are "necessary . . . to prosecute the case." They are activities that are required by a debtor to obtain judicial approval of a restructuring; they offer no support for the Oversight Board's attempted usurpation of PREPA's management function. *See Maracich* v. *Spears*, 133 S. Ct. 2191, 2201 (2013) (finding the phrase "in connection with . . . litigation" narrowed to activities where an attorney is acting as an officer of the court, rather than as a commercial actor, by statutory examples listed after the word "including"); *Jarecki* v. *G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." (emphasis added)).

    14.    The Oversight Board next contends that sections 305 and 306 of PROMESA, and section 105(a) of the Bankruptcy Code, provide it the authority to operate PREPA and control its senior management. CTO Motion ¶¶ 38-41. As has often been stated, section 105(a) of the Bankruptcy Code, which permits the court to enter any order "necessary or appropriate to carry out the provisions of" the Bankruptcy Code, does not authorize the court to alter the Code's carefully crafted provisions. Thus, the First Circuit has explained that "section 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense

-6-

constitutes a roving commission to do equity. Instead, the equitable discretion conferred upon the bankruptcy court by section 105(a) is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code." *Noonan* v. *Sec. of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997) (internal quotation marks and citations omitted). Accordingly, use of section 105(a) is appropriate only in limited circumstances to supplement and support rights and powers that are already set forth in the Bankruptcy Code, such as to impose contempt sanctions in connection with enforcement of court orders. *Bessette* v. *Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000).

15. By contrast, where a more specific statutory provision addresses a debtor's rights, section 105(a) cannot be used to expand those rights. *Noonan*, 124 F.3d at 28; *see also In re Dicroce*, 1998 WL 35416878, at *3-4 (1st Cir. B.A.P. Feb. 25, 1998) (rejecting expansion of power to set bar date because "[a] proper application of § 105(a) will effectuate the Bankruptcy Code without fashioning or altering substantive rights of debtors or creditors"); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (holding that "section 105(a) is not a source of substantive rights" and reversing bankruptcy court's order that lacked authority in any other provision of the Bankruptcy Code). Here, PROMESA specifically prescribes and limits the power of the Oversight Board. Section 105(a) of the Bankruptcy Code cannot be employed to override the limits imposed by Congress.

16. The Oversight Board also invokes section 305 of PROMESA, which provides that, "[s]ubject to the limitations set forth in subchapters I and II of this chapter, notwithstanding any power of the court, unless the Oversight Board consents or the [debtor's Title III] plan [of adjustment] so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with — (1) any of the political or governmental powers of the debtor; (2) any

-7-

of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property." PROMESA § 305. By its terms, however, this provision *restricts* the authority of the Court to interfere with the debtor's property;[5] it does not *expand* the powers of the Oversight Board or provide the Board with any specific powers at all. The Oversight Board asserts that, because section 305 permits it to consent to the Court's issuance of an order interfering with the powers of the debtor, "it follows that" the Oversight Board may itself exercise any authority it wishes as long as it has court approval. CTO Motion ¶ 41. But this turns the provision on its head. The provision, although permitting *the Court* to interfere with the debtor's powers or property when the Oversight Board consents, is not an independent source of power for the Oversight Board. Indeed, section 305 is expressly "subject" to titles I and II of PROMESA, but nothing in those sections provides the Oversight Board with the power it seeks to exercise here.[6]

17. Finally, the Oversight Board cites section 306 of PROMESA, which vests this Court with exclusive jurisdiction over the property of PREPA. But a conferral of jurisdiction over the debtor's property does not create affirmative rights or powers that can be exercised by the Oversight Board with respect to that property. Jurisdiction refers merely to the "court's power to decide a case or issue a decree." *Black's Law Dictionary* (10th ed. 2014). Here, the

---

[5] "This section limits a court from interfering with the political or governmental powers of the debtor, with any of the property or revenues of the debtor, or with the debtor's enjoyment of income-producing property, unless the debtor consents to such interference or the plan of adjustment provides otherwise." H.R. Rep. No. 114-602, pt. 1, at 48-49 (2016).

[6] Notably, section 305 is entitled "Limitation on Jurisdiction and Powers of Court." PROMESA § 305; *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (2012) ("The title and headings are permissible indicators of meaning.") (citing *INS* v. *Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991)).

-8-

grant of power to the Oversight Board is in section 104 — entitled "Powers of [the] Oversight Board." Section 306 has no relevance.

## II. Without appointing a new chief executive for PREPA, the Oversight Board has ample authority to oversee PREPA's recovery effort.

18. The sections of PROMESA that describe the powers and responsibilities of the Oversight Board show that a principal function of the Oversight Board is to serve as a fiscal monitor for the territorial entity for which it has filed a petition. *E.g.*, PROMESA §§ 101(d)(1)(B), 104, 201 *et seq.* Rather than seeking to expand its power by appointing a new chief executive for PREPA, the Oversight Board should exercise the power it already has to supervise and monitor PREPA's recovery effort and to ensure that the resources devoted to that effort are properly employed.

19. The recent experience relating to PREPA's $300 million contract with Whitefish Energy Holdings demonstrates that the Oversight Board has an important role to fulfill without exceeding its authority. As the Court is no doubt aware, Whitefish is a small firm located in Montana that was selected to lead the efforts to reconstruct the electrical grid after Hurricane Maria. The Oversight Board was granted the authority to prevent PREPA from entering into contracts such as the Whitefish arrangement. Specifically, in section 204(b)(2) of PROMESA, the Oversight Board is empowered to "establish policies to require prior Oversight Board approval of certain contracts" and "to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan" for PREPA.

20. Consistent with this statutory authority, on October 31, 2017, the Oversight Board adopted a Contract Review Policy that requires the Board's review of all contracts with a value of $10 million or more. Enforcement of this policy will hopefully avoid future problems such as

-9-

the Whitefish arrangement, and exemplifies the role to be played by the Oversight Board in facilitating PREPA's recovery.

21. To the extent the Oversight Board wishes to engage a CTO or other individuals to fulfill its statutory oversight role, the Fuel Line Lenders have no objection. In particular, if the Oversight Board has concluded that a CTO will add value in supervising the power restoration process (including through review and approval of contracts), the engagement should go forward on that basis.

22. The appointment of a long-term chief executive to take over PREPA's management is completely different. As noted, the Oversight Board has no authority to supplant PREPA's management. But if PREPA itself were to supplement its senior leadership, the utility would need to undertake an organized process to attract the best available individuals. A standard approach would be to engage an independent search firm (such as Russell Reynolds, which identified candidates to serve on PREPA's board of directors) to search for individuals, inside or outside PREPA, with significant knowledge of the utility industry and experience managing a large utility such as PREPA. Scotiabank, as agent for the Fuel Line Lenders, stands ready and willing to participate in any such process along with PREPA, the Commonwealth, the Oversight Board, and other stakeholders.

### III. Conclusion

23. For the reasons stated above, the Fuel Line Lenders respectfully urge the Court to deny the CTO Motion on the basis that the relief sought — in particular, the appointment of a new chief executive for the duration of these Title III cases — exceeds the authority of the Oversight Board. As noted, however, the Fuel Line Lenders do not object to the Oversight Board's appointment of a CTO or other individuals to help oversee and support the recovery and repair efforts that are ongoing and urgently needed.

Dated: November 3, 2017                    Respectfully submitted,

/s/ Nayuan Zouairabani                     /s/ Richard G. Mason
Nayuan Zouairabani                         Richard G. Mason (admitted *pro hac vice*)
USDC-PR No. 226411                         Amy R. Wolf (admitted *pro hac vice*)
nzt@mcvpr.com                              Emil A. Kleinhaus (admitted *pro hac vice*)
MCCONNELL VALDÉS LLC                       Brian Bolin (admitted *pro hac vice*)
270 Muñoz Rivera Avenue, Suite 7           Kim B. Goldberg (admitted *pro hac vice*)
Hato Rey, Puerto Rico 00918                WACHTELL, LIPTON, ROSEN & KATZ
P.O. Box 364225                            51 West 52nd Street
San Juan, PR 00936                         New York, New York 10019
Telephone: (787) 250-5619                  Telephone: (212) 403-1000
Facsimile: (787) 759-9225                  Facsimile: (212) 403-2000
                                           Email: rgmason@wlrk.com
                                                  arwolf@wlrk.com
                                                  eakleinhaus@wlrk.com
                                                  bbolin@wlrk.com
                                                  kbgoldberg@wlrk.com

                                           *Attorneys for Scotiabank de Puerto Rico, as Administrative Agent*