# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.*,

      Debtors. [1]

---------------------------------------------------------------------------x

AURELIUS INVESTMENT, LLC, AURELIUS
OPPORTUNITIES FUND, LLC, AND LEX CLAIMS, LLC,

      Movants,

    v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Respondent.

---------------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**Re:  ECF No. 914**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com
        ubaldo.fernandez@oneillborges.com

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr. (*pro hac vice*)
Ginger D. Anders (*pro hac vice*)
Chad I. Golder (*pro hac vice*)
Sarah G. Boyce (*pro hac vice*)
Adele M. El-Khouri (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Tel:  (202) 220-1100
        Fax:  (202) 220-2300Email:
        Donald.Verrilli@mto.com
        Ginger.Anders@mto.com
        Chad.Golder@mto.com
        Sarah.Boyce@mto.com
        Adele.El-Khouri@mto.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Mark D. Harris (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
        sratner@proskauer.com
        tmungovan@proskauer.com
        mharris@proskauer.com
        cfebus@proskauer.com

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

**PRELIMINARY STATEMENT** .................................................................1

**RELEVANT BACKGROUND** ...............................................................3

    I.   <u>The Automatic Stay Applies to Aurelius's Proposed Action</u> ...................................6

    II.   <u>Aurelius Cannot Demonstrate Good Cause Exists To Lift The Automatic
       Stay</u> ...................................................................................9

**CONCLUSION** ..................................................................................**20**

## **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*In re 234-6 West 22nd St. Corp.,*
    214 B.R. 751 (Bankr. S.D.N.Y. 1997)..................................................................9

*In re AMR Corp.,*
    485 B.R. 279 (Bankr. S.D.N.Y.), *aff'd,* 730 F.3d 88 (2d Cir. 2013) ......................12

*Arnold Dev., Inc. v. Collins (In re Collins),*
    118 B.R. 35 (Bankr. D. Md. 1990) ........................................................................15

*Barton v. Barbour,*
    104 U.S. 126 (1881)................................................................................................6

*In re Breitburn Energy Partners LP,*
    No. 16-10992, 571 B.R. 59 (Bankr. S.D.N.Y. 2017)............................................10

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
    217 F. Supp. 3d 508, 518, 526 (D.P.R. 2016)............................................9, 11, 18

*Burley v. Am. Gas & Oil Inv'rs (In re Heafitz),*
    85 B.R. 274 (Bankr. S.D.N.Y. 1988) ......................................................................9

*Centro de Periodismo Investigativo, Inc. v. Financial Oversight & Management*
    *Board for Puerto Rico,*
    Case No. 17-CV-1743 (D.P.R. 2017) ......................................................................7

*In re City of San Bernardino*
    558 B.R. 321 (C.D. Cal. 2016)) ............................................................................18

*In re City of Stockton, Cal.*
    484 B.R. 372 (Bankr. E.D. Cal. 2012) ....................................................13, 16, 17

*Commonwealth of N. Mariana Islands v. Atalig,*
    723 F.2d 682 (9th Cir. 1984) ................................................................................20

*Dorr v. United States,*
    195 U.S. 138 (1904)..............................................................................................20

*In re iHealthcare, Inc.,*
    No. 07-20612 JPK, 2011 Bankr. LEXIS 2107 (Bankr. N.D. In. June 9, 2011)......10

*Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd.,*
    853 F.3d 548 (1st Cir. 2017)..................................................................................8

*In re Linton*,
  136 F.3d 544 (7th Cir. 1998) ...................................................................6

*Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*,
  474 U.S. 494 (1986).................................................................................9

*Montoyo-Rivera v. Pall Life Scis. PR, LLC*,
  245 F. Supp. 3d 337, 342 (D.P.R. 2017).........................................10, 16

*Morrison v. Olson*,
  487 U.S. 654 (1988).................................................................................20

*In re Motors Liquidation Co.*,
  No. 09-50026 REG, 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010)..........17

*Muratore v. Darr*,
  375 F.3d 140 (1st Cir. 2004)....................................................................6

*In re Plumberex Specialty Prod., Inc.*,
  311 B.R. 551 (Bankr. C.D. Cal. 2004)....................................................17

*In re Project Orange Assocs., LLC*,
  432 B.R. 89 (Bankr. S.D.N.Y. 2010) .......................................................19

*In re Residential Capital, LLC*,
  No. 12-12020 MG, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) .............10, 13, 16, 17

*Ritchie Capital Mgmt., L.L.C. v. Jeffries*,
  653 F.3d 755 (8th Cir. 2011) ...................................................................10

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990).............................................................11, 15

*Sutcliffe Storage & Warehouse Co. v. United States*,
  162 F.2d 849, 851 (1st Cir. 1947) ...........................................................10

*In re Unanue-Casal*,
  159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ...............11

*In re WorldCom, Inc.*,
  No. 02 13533 AJG, 2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) ...............15

STATUTES

11 U.S.C. § 362.........................................................................6, 7, 8, 18

11 U.S.C. § 362(a) ....................................................................5, 7, 8, 9

iii

11 U.S.C. § 362(d)(1) ..................................................................................................................10

11 U.S.C. § 922 ..........................................................................................................................14

48 U.S.C. §§ 2101–2241 ..............................................................................................................1

48 U.S.C. § 2121(a) .....................................................................................................................3

48 U.S.C. § 2121(c)(1) ..............................................................................................................3, 8

48 U.S.C. § 2124(j) .......................................................................................................................3

48 U.S.C. § 2126(a) ......................................................................................................................6

48 U.S.C. § 2127(b) ...............................................................................................................16, 17

48 U.S.C. § 2141 ...........................................................................................................................3

48 U.S.C. § 2146 ...........................................................................................................................3

48 U.S.C. § 2164 .......................................................................................................................3, 4

48 U.S.C. § 2172(a) .......................................................................................................................4

48 U.S.C. § 2175 ...........................................................................................................................3

48 U.S.C. § 2175(a) .......................................................................................................................4

48 U.S.C. § 2175(b) .......................................................................................................................7

PROMESA § 101 ......................................................................................................................3, 8

PROMESA § 101(c)(1) ...............................................................................................................14

PROMESA §104 ............................................................................................................................3

PROMESA § 105 .........................................................................................................................14

PROMESA § 106(a) ......................................................................................................................6

PROMESA § 106(e) ..........................................................................................................2, 14, 18

PROMESA § 201 ...........................................................................................................................3

PROMESA § 206 ...........................................................................................................................3

PROMESA § 301(a) ...................................................................................................................7, 8

PROMESA § 304 .......................................................................................................................3, 4

PROMESA § 312(a) ................................................................................................4

PROMESA § 315 ..................................................................................................3

PROMESA § 315(a) ..............................................................................................4

PROMESA § 315(b) ........................................................................................1, 7

PROMESA § 405 ................................................................................................18

**OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO
RICO, TO MOTION OF AURELIUS FOR RELIEF FROM AUTOMATIC STAY**

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "FOMB" or the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this objection (the "Objection") to the *Motion of Aurelius for Relief from the Automatic Stay* [ECF No. 914] (the "Motion"), filed by Aurelius Capital, LLC, Aurelius Opportunities Fund, LLC, and Lex Claims, LLC (collectively, "Aurelius"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

The constitutional claim Aurelius wants to bring is already pending in this Court in its request to dismiss the Commonwealth Title III case.  Accordingly, Aurelius' instant Motion raises a different and narrower issue, namely whether Aurelius should be allowed to prosecute duplicative litigation designed to leave the Commonwealth with no automatic stay, a stampede to the courthouse, and no means to restructure its debts, before its constitutional claims are decided on a final basis.  We submit to ask the question is to answer it.

In the first two pages of its Motion, Aurelius admits it brings its Motion as the beneficial holder of claims against the Commonwealth and contends it has been seriously harmed by the Oversight Board's certifications of an unlawful fiscal plan, faulty budget, and commencement of the Title III case.  Aurelius' purported serious harm can only be harm to its claims.  For the balance of its Motion, Aurelius turns around and contends the action it desires to bring to declare the Oversight Board unconstitutional and its acts void (including its commencement of the Title

---

[1] PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

III case) is not an act to recover its claims against the Commonwealth.  What other purpose could its action have than to allow it to enforce its claims?  None.

The Motion seeks an order either (a) declaring the automatic stay does not apply to Aurelius' action against the Oversight Board (*i.e.*, that it is not an action to recover its claims), or (b) terminating the automatic stay premised on Aurelius' allegations, which include its allegations that the Oversight Board wrongfully certified fiscal plans, budgets, and restructurings.

The Motion should either be (1) denied because the stay applies because Aurelius' proposed action can only be to recover its claims, and (2) denied because there can be no cause for stay relief when the underpinnings of Aurelius' request for stay relief (i.e., the Oversight Board's alleged illegal certifications) are not harms Congress recognizes, as shown by its putting such certifications outside the Court's subject matter jurisdiction to adjudicate pursuant to PROMESA § 106(e), or (3) adjourned until Aurelius' identical constitutional claims concerning the Oversight Board's appointment separately pending in this Court are disposed of by final order.

By its Motion, Aurelius seeks relief so it can attempt to disrupt the functioning of the FOMB and the Commonwealth's restructuring.  The consequence of voiding all the Oversight Board's actions inclusive of the Title III cases would be chaos.  Aurelius would leave the Commonwealth and its people with no automatic stay while creditors stampede to enforce claims, and no means of restructuring, notwithstanding the Commonwealth's fiscal emergency and devastation from Hurricane Maria.  Aurelius' Motion is silent about the chaos it requests permission to unleash.  Tellingly, Aurelius nowhere explains how its success would help it or anyone else.

2

As set forth in the FOMB's opposition to Aurelius' motion to dismiss the Commonwealth's Title III petition, the Motion is also predicated on the faulty premise that the Oversight Board was not appointed in conformity with the Constitution's Appointments Clause. Accordingly, the Motion should be denied.

## RELEVANT BACKGROUND

In 2016, with Puerto Rico facing insolvency amidst a severe economic crisis, the U.S. Congress enacted PROMESA and designated the FOMB as "an entity within the territorial government" of Puerto Rico. 48 U.S.C. § 2121(c)(1) [PROMESA § 101]. The FOMB's purpose is to "provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." *Id.* at § 2121(a) [PROMESA § 101]. To that end, Congress charged the Oversight Board with certifying in its sole discretion fiscal plans for the Commonwealth and its instrumentalities that would eliminate structural deficits, provide for a sustainable debt burden, provide adequate funding for public pension systems, provide for capital expenditures and investments necessary to promote economic growth, and ensure necessary funding for essential public services, while respecting creditors' relative lawful priorities and other rights. *Id.* at § 2141 [PROMESA § 201]. On March 13, 2017, the Oversight Board certified a fiscal plan for the Commonwealth of Puerto Rico ("Conformed Certified Fiscal Plan") to further satisfy these responsibilities.

The FOMB is also empowered to petition, as the representative of the Commonwealth and its instrumentalities as debtors, for restructuring under the supervision of a federal court. *Id.* at §§ 2124(j), 2146, 2164, 2175 [PROMESA §§ 104, 206, 304, 315]. To date, the Oversight Board has filed five such cases: on behalf of the Commonwealth (No. 17-BK-3284) (D.P.R.), the Puerto Rico Sales Tax Financing Corporation (COFINA) (No. 17-BK-3284) (D.P.R.), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (No.

17-BK-3566) (D.P.R.), the Puerto Rico Highways and Transportation Authority (No. 17-BK-3567) (D.P.R.), and the Puerto Rico Electric Power Authority (No. 17-BK-4780) (D.P.R.). The FOMB's role in these cases is extensive. It may seek procedural and administrative relief, *id.* at § 2164 [PROMESA § 304], and make substantive filings in relation to the case as the representative of the debtor, *id.* at § 2175(a) [PROMESA § 315(a)], and it has the exclusive right to certify and file a plan of adjustment for a debtor, which plan must conform with the debtor's fiscal plan, *id.* at § 2172(a) [PROMESA § 312(a)].

Aurelius is a creditor holding general obligation bonds issued by the Commonwealth. Motion at 1. Nearly a year after the FOMB was created and began its work, Aurelius, apparently unsatisfied with its anticipated recoveries, adopted a scorched-earth litigation strategy to disrupt the Commonwealth's restructuring efforts, including two motions in the Commonwealth's Title III proceeding: (1) a motion to dismiss the Title III proceeding, on the ground that the FOMB was improperly appointed and therefore lacked authority to initiate the proceedings, Dkt. 913 (the "Motion to Dismiss"); and (2) the instant Motion, which requests relief from the automatic stay so Aurelius might pursue an independent action against the FOMB and its members on these same grounds. Motion at 1. Aurelius is also prosecuting *Aurelius Capital Master, Ltd. v. Commonwealth of Puerto Rico*, Adv. Proc. No. 17-189 (D.P.R. June 29, 2017) (seeking declaratory judgment that property tax revenues and clawback revenues can only be used to pay general obligation bonds and challenging content of fiscal plan).

Aurelius leaves vague the precise nature of its proposed suit, and fails to annex a proposed complaint for the Court and parties to evaluate. The sole "harms" identified are "an unlawful fiscal plan, unlawful budget, and the issuance of an unlawful restructuring certification, among other things." Motion at 24. The relief it would request in its proposed lawsuit would be

injunctive and declaratory relief rendering all of the FOMB's acts void and enjoining it from further acts.  Motion at 10, 25-36.

Aurelius therefore seeks substantially the same relief as it does in its Motion to Dismiss: namely, a determination that the FOMB was unconstitutionally appointed, as well as invalidation of both the FOMB's acts to date and any future acts it might take until it is lawfully constituted. *Compare* Motion to Dismiss, Ex. A. (Proposed Order) at 2 (seeking an order that the "[FOMB's] acts were void ab initio" because the FOMB was unconstitutionally appointed and dismissing the Commonwealth's Title III petition [thereby foreclosing future FOMB actions]) *with* Motion, Ex. A. (Proposed Order) at 2 (seeking an order allowing the proposed Aurelius litigation to seek "declaratory and injunctive relief as to the alleged unconstitutionality of the [FOMB], and the subsequent invalidity of the Board's actions").

## **ARGUMENT**

The Motion starts from the erroneous premise that the automatic stay does not apply to actions filed against the FOMB.  Aurelius is incorrect for at least two reasons.  First, as this Court has already recognized, the FOMB is protected by the automatic stay as the representative of the Debtors.  *See* Dkt. 543 at 4, 6.  Second, Aurelius's Motion seeks to do precisely what 11 U.S.C. § 362(a) forbids – recover property of the debtor and collect its claim.

Since the automatic stay applies to Aurelius's proposed lawsuit, cause must exist to lift the stay, and none exists here.  Granting the Motion would result in duplicative actions, promote judicial diseconomies, and harm the Oversight Board and Commonwealth disproportionately while not providing Aurelius or anyone else any benefit.

5

I.    **The Automatic Stay Applies to Aurelius's Proposed Action**[2]

Aurelius argues its proposed action is not barred by 11 U.S.C. § 362 for two reasons: first, it "would not be against the 'debtor,'" but rather against the Oversight Board and its members, Motion at 9; and second, it would not seek to "recover a claim," "enforce[] … a judgment," "obtain possession of property," "create, perfect, or enforce any lien," "collect, assess, or recover a claim," "setoff … any debt," or commence or continue proceedings "concerning a tax liability," Motion at 9-10.  Aurelius is wrong on both counts.

A.    **Aurelius Proposes to Take an Action "Against the Debtor."**

Aurelius's first contention – that its proposed action "would not be against the 'debtor'" – is directly contravened by an order of this Court and another court in this district.  On  June  29, 2017, the Court entered an order confirming that the "Title III Stay applies in all respects to… *representatives of the (i) the Debtors* and (ii) any of the Debtors' instrumentalities," Dkt. 543 at 4 (emphasis added), and that "*the Oversight Board, as the Debtors' representative*, is authorized to

---

[2] Even if the automatic stay does not apply to FOMB, under the *Barton* doctrine, Aurelius cannot bring its proposed lawsuit because, unless it receives prior permission from this Title III Court (which it has not sought), federal district courts lack subject-matter jurisdiction over claims against trustees, receivers, managers of property, and their representatives and agents in a bankruptcy proceeding unless the bankruptcy court first grants leave to assert those claims. *Barton v. Barbour*, 104 U.S. 126, 127–29 (1881); *Muratore v. Darr*, 375 F.3d 140, 143–48 (1st Cir. 2004).

The *Barton* doctrine and the policies underlying it fit the FOMB to a tee.  Without the supervision of this Court, the FOMB will undoubtedly be "burdened with having to defend [itself] against suits by litigants disappointed by [its] actions" with the result that "[its] work for the court will be impeded."  *See In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998).

Aurelius, preemptively and defensively, asserts that the *Barton* doctrine is "inapplicable" because of "PROMESA's recognition [under 48 U.S.C. § 2126(a)] that the Board can be sued." Motion at 9 n.5.  That is a flat mischaracterization of the law.  PROMESA § 106(a) merely states *if* an action is brought against the FOMB (for example, because the court granted leave as contemplated in *Barton*), "it shall be brought in a United States district court for the covered territory."  48 U.S.C. § 2126(a) [PROMESA § 106(a)].  It does not purport to allow the FOMB to be sued after a Title III action is filed.

take all actions… to effectuate the relief granted in this Order…" (emphasis added).[3]  *Id.* at 6.

*See also* 48 U.S.C. § 2175(b) [PROMESA § 315(b)] ("*The Oversight Board* in a case under this

subchapter *is the representative of the debtor*.") (emphasis added).   Thus, the FOMB, as a

representative of the Commonwealth in this Title III proceeding, is protected by the automatic

stay.[4]

Judge Garcia-Gregory reached the same conclusion in *Centro de Periodismo

Investigativo, Inc. v. Financial Oversight & Management Board for Puerto Rico*, Case No. 17-

CV-1743 (D.P.R. 2017) ("<u>CPI</u>").   In CPI, the plaintiff brought an action seeking access to

documents in the FOMB's possession, and made the same argument advanced by Aurelius here

– that § 362(a) did not apply to its action because the FOMB was not the "debtor."  The court

disagreed, holding that the stay applied because an action against the FOMB *is* an action against

the Commonwealth.   *CPI*, Dkt. 18, at 2-3.  Because PROMESA "created the Board as an entity

within the Commonwealth's government" and the "Board's funding comes entirely from the

Commonwealth's budget," the court reasoned, "an action against the Board is an action against

the Commonwealth." *Id.*[5]

To support its position, Aurelius relies on the Court's ruling lifting the stay in response to

a motion for stay relief filed in this Title III case by Angely M. Aponte-Pagán.   Dkt. 618

[3] Pursuant to Section 301(a) of PROMESA, 11 U.S.C. § 362 applies in all Title III cases.

[4] Aurelius argues that this order is ambiguous as to whether the FOMB is protected by the
automatic stay.  Motion at 10.  Aurelius is wrong.  The order is crystal clear the FOMB is a
representative of the Debtor protected by the automatic stay.

[5] The plaintiff in the CPI litigation moved for relief from the automatic stay in the
Commonwealth's Title III proceeding.  Dkt. 740.  This Court granted the request because the
proposed litigation would only result in the disclosure of documents in the public interest "on
behalf of the Puerto Rican people" and because it was most economically resolved in another
forum and would not interfere with these cases.  Dkt. 1084 at 3.  These factors are not present
with respect to the instant Motion.

("*Aponte-Pagán*").  But *Aponte-Pagán* is inapposite.  It involved a claim for monetary damages against the Agricultural Enterprises Development Administration ("ADEA"), a public corporation that was formed by the Commonwealth but was "indisputably a separate legal entity from the Commonwealth."  *Id.* at 3.  Because of that *independent* legal status, the Court held "the automatic stay in this Title III case [does not] cover litigation against the ADEA, which is a separate legal entity from the Debtor."  *Id.*  Unlike the ADEA, however, the FOMB is "*within the Commonwealth's government*," and therefore is within the protection of the automatic stay. *CPI*, Dkt. 18, at 2-3 (citing 48 U.S.C. § 2121(c)(1) [PROMESA §101]).

### B.    Aurelius Seeks to Take Control Over Property of the Debtor and Collect on its Claims.

Aurelius's second contention – that it does not seek to undertake any actions proscribed by 11 U.S.C. § 362 as incorporated by PROMESA § 301(a) – fares no better.  Motion at 9-10. Section 362(a) automatically stays commencement of *any* actions "to collect…or recover a claim against the debtor," or "to obtain possession of property of the estate or of property from the estate *or to exercise control over property of the estate*."  11 U.S.C. § 362(a)(1), (3), (6) (emphasis added).

Recovering a claim against the debtor and exercising control over the property of the estate are exactly what Aurelius seeks to do.  What else do creditors do with claims?  Nothing. Recover and collect are general, expansive terms.  "Control" is expansively defined, and includes the exercise of "restraining or directing influence over property."  *See Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd.*, 853 F.3d 548, 552 (1st Cir. 2017).  Litigation that seeks to "preclude the Commonwealth from using its own funds as it sees fit," then, is nothing more than an attempt to exercise control over Commonwealth property, *see Lex Claims*, 853 F.3d at 552, and is subject to 11 U.S.C. § 362(a)(3).

8

To avoid the operation of section 362(a), Aurelius contends its proposed action is only against the Board and not to recover its claims.  Motion at 9-10.  It is not a coincidence, however, that the relief Aurelius requests would invalidate the Board's prior acts, including its issuance of restructuring certifications for the Title III cases, thereby invalidating the cases and eliminating the automatic stay.  Bankruptcy Code section 362(a) is broadly worded to stay automatically "any act" to collect or recover a claim.  The language does not restrict itself to staying actions requesting payment.  It stays "any act."

Aurelius seeks relief as to "the unconstitutionality of the Board and the resulting unlawful nature of all the Board's official actions (including certification of the fiscal plan and the restructuring certifications)."  Motion at 10.  Therefore, its proposed action is an action to collect and recover a claim against the Commonwealth and is stayed by 11 U.S.C. §§ 362(a)(1) and (6).  *See, e.g.*, *Burley v. Am. Gas & Oil Inv'rs (In re Heafitz)*, 85 B.R. 274, 280 (Bankr. S.D.N.Y. 1988) ("[Section 362(a)(6)] prevents creditors from attempting *in any way* to collect a prepetition debt. … This provision prevents evasion of the purpose of the bankruptcy law by sophisticated creditors") (emphasis in original).

## II.   Aurelius Cannot Demonstrate Good Cause Exists To Lift The Automatic Stay

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," *see, e.g.*, *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).  An order lifting the automatic stay is an "extraordinary remedy."  *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).

Aurelius bears the burden of establishing cause to lift the stay.  *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518, 526 (D.P.R. 2016).  When the movant is not a secured claimholder claiming a lack of adequate protection – which Aurelius does not claim here – that burden is a high one, because "the policies of the automatic

9

stay weigh against granting the relief requested." *In re Residential Capital, LLC*, No. 12-12020 MG, 2012 WL 3860586, at \*5 (Bankr. S.D.N.Y. Aug. 8, 2012).  "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."  *Id.* (citations omitted); *In re Breitburn Energy Partners LP*, No. 16-10992, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).  Aurelius cannot carry its burden.

"Cause" does not exist to modify the stay to commence a lawsuit asserting the appointment of the FOMB violates the Appointments Clause, when such lawsuit is duplicative of a proceeding already before this court.  A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  *Montoyo-Rivera v. Pall Life Scis. PR, LLC*, 245 F. Supp. 3d 337, 342 (D.P.R. 2017) (internal citations omitted).  Accordingly, the "pendency of a prior pending action in the same federal court is ground for abatement of the second action."  *Id.* (citing *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947)).  Proceedings are duplicative if the issues in one case "substantially duplicate those raised by a case pending in another court."  *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.3 (8th Cir. 2011).  After finding that a suit is duplicative and "weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions."  *Id.* at \*4; *see also In re iHealthcare, Inc.*, No. 07-20612 JPK, 2011 Bankr. LEXIS 2107, at \*7-8 (Bankr. N.D. In. June 9, 2011) ("If the cases are indeed duplicative, there is a rebuttable presumption that the first should proceed and the second case should be dismissed").

"Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96

(D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994).  To determine whether there is cause to lift the

automatic stay, courts typically balance the following factors:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) the lack of any connection or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether there is a specialized tribunal with the necessary expertise has been
> established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action involves primarily third parties;
> (7) whether litigation in another forum would prejudice the interests of other
> creditors;
> (8) whether the judgment claim arising from the other action is subject to
> equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial
> lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical
> resolution of litigation;
> (11) whether the parties are ready for trial in the other proceedings; and
> (12) the impact of the stay on third parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).  No one factor is dispositive;

instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake"

and will lift the stay only if the harm engendered by allowing it to remain in place outstrips the

harm caused by lifting it.  *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,

217 F. Supp. 3d 508, 518, 526 (D.P.R. 2016).

In its Memorandum Order resolving CPI's motion to lift the stay in the Commonwealth's

Title III cases, the Court followed the *Sonnax* test and found the following factors of particular

relevance:  (i) whether relief would result in a partial or complete resolution of the issues, (ii) the

lack of any connection or interference with the bankruptcy case, (iii) the interests of judicial

economy and the expeditious and economical resolution of litigation, and (iv) the impact of the

stay on third parties and the balance of harms.  *See* Dkt. 1084 at 2.[6]  Here, all four of these factors militate in favor of maintaining the automatic stay.

     A.     **Aurelius's proposed suit would not result in a partial or complete resolution of the issues (Factor 1 of the *Sonnax* test).**

Aurelius has brought a number of lawsuits seeking to challenge actions taken by the Oversight Board, including an adversary proceeding challenging the content of the Conformed Certified Fiscal Plan, which is subject to a motion to dismiss.  *See Aurelius Capital Master, Ltd. v. Commonwealth of Puerto Rico*, Adv. Proc. No. 17-189 (D.P.R. June 29, 2017) (seeking declaratory judgment that property tax revenues and clawback revenues can only to be used to pay general obligation bonds and challenging content of fiscal plan).  It has also brought its Motion to Dismiss the Commonwealth's Title III case.  Another proposed lawsuit as contemplated by the Motion, which would seek to enjoin further actions from the Oversight Board, will not completely resolve the issues Aurelius raises.

If Aurelius prevails on its proposed litigation, utter chaos would ensue in these Title III cases, and bring us further away, rather than closer to, the resolution of these cases and returning the Commonwealth to fiscal health.  Far from resolving the issue of the management of the affairs of the Commonwealth and its instrumentalities, "an order enjoining the Board from operating until it is lawfully constituted," as Aurelius seeks to request, Motion at 25, would freeze all action by the Commonwealth until the FOMB is reconstituted.  Presumably, the Commonwealth's restructuring would be held in abeyance until Congress reconstituted the FOMB.  In the interim, rather than resolving the issues Aurelius truly cares about – the treatment of general obligation bondholders under a plan of adjustment – Aurelius's proposed injunction

---

[6] *See also In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y.), *aff'd,* 730 F.3d 88 (2d Cir. 2013) (condensing the *Sonnax* test and analyzing only the two relevant factors in the context of a lift stay motion).

would open up the floodgates to countless litigations regarding fiscal plans, the validity of restructuring certifications, questions of authority as to who manages the Commonwealth's fiscal plan (does it revert to the Governor and Puerto Rico's legislature or is it temporarily suspended?), and countless other issues. Left hanging in the balance would be the task of returning the Commonwealth and its instrumentalities to fiscal health.

> **B.    Aurelius's proposed suit would greatly interfere with these Title III cases (Factor 2 of the *Sonnax* test).**

PROMESA was enacted to provide the tools to restore Puerto Rico's economic and fiscal health, and the FOMB is the means by which PROMESA endeavors to achieve these goals. While the FOMB performs numerous functions, there are three in particular – the implementation of budgets, issuance of debt, and enforcement of laws – which must continue if the Commonwealth is to function.

Aurelius's proposed suit would eliminate the Oversight Board's authority to undertake any of these critical functions. With the stakes so high, defending itself against this suit would necessarily take priority over many of the FOMB's ongoing activities. It would therefore be a significant drain on the time and resources the FOMB can commit to its ongoing efforts to oversee both the ongoing court proceedings and Puerto Rico's broader fiscal recovery. *See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases").

*In re City of Stockton, Cal.* is instructive here. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, a plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed

under 11 U.S.C. § 922. *Id.* When the plaintiff requested that the stay be lifted, the court refused, holding that plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

Here, the FOMB's time, attention, and resources are critical not only to the success of five separate Title III cases, over twenty adversary proceedings, and the ongoing restructuring efforts regarding other Commonwealth entities, but also to the Commonwealth's very survival. PROMESA confirms the FOMB's critical role in ensuring the success of Puerto Rico's recovery efforts: Congress incorporated a plethora of provisions designed to insulate the FOMB and its members from the distraction of ancillary lawsuits that would prevent them from focusing on the critical tasks at hand. *See* PROMESA § 105 (broadly exempting the Oversight Board and its members from claims); PROMESA § 106(e) (eliminating subject matter jurisdiction over suits challenging the Oversight Board's certification decisions); PROMESA § 101(c)(1) (making the Oversight Board an entity within the government of Puerto Rico, which gives it the benefit of the Title III automatic stay). Forcing the FOMB to defend against Aurelius's suit would frustrate the purpose of PROMESA and impede the progress of the five ongoing Title III cases by requiring the FOMB to divert its finite time and resources away from the critical task of guiding successful Title III reorganizations and other efforts to improve the Commonwealth's economic prospects.

### C. Lifting the stay would not benefit judicial economy and the expeditious and economical resolution of litigation (Factor 10 of the *Sonnax* test).

This factor favors lifting the stay only when another tribunal has already made considerable progress towards resolving an issue; it disfavors lifting the stay if doing so would result in duplicative litigation. *See* Dkt. 620 at 3 (lifting the automatic stay to allow resolution of

14

an arbitration proceeding where a hearing was already conducted by a specialized tribunal); *see also* Dkt. No. 617 at 3 (lifting stay for sole purpose of determining motion to dismiss in part because Commonwealth had already filed its moving papers); *see also In re Sonnax Indus.*, 907 F.2d at 1287 (declining to lift stay largely because "the litigation in state court has not progressed even to the discovery stage."); *Arnold Dev., Inc. v. Collins (In re Collins)*, 118 B.R. 35, 38 (Bankr. D. Md. 1990) (declining to lift stay when the parties in the non-bankruptcy proceeding had not yet begun discovery); *In re WorldCom, Inc.*, No. 02 13533 AJG, 2007 WL 841948, at *7–*8 (Bankr. S.D.N.Y. Mar. 12, 2007) (declining to lift stay when parties are not ready for trial on non-bankruptcy forum).

If the Motion were granted, Aurelius would file a lawsuit that would raise the same underlying legal issues and arguments relating to the FOMB's alleged appointment under the Appointments Clause that it has already alleged in its Motion to Dismiss in the Title III case.

It is the opposite of judicial economy to have the same legal issue – whether or not the Oversight Board's members were appointed in violation of the Appointments Clause – decided once by this Court presiding over the Commonwealth's Title III case, and again by another court in the District of Puerto Rico.  Aurelius has already moved to dismiss the Title III case on these very grounds.  A briefing schedule has been set.  A hearing has been scheduled, and that Motion to Dismiss will likely be decided long before any decision is reached in Aurelius's proposed non–Title III suit.  To promote judicial economy, that Motion to Dismiss should be decided before a decision is made as to whether litigation outside this court – which is duplicative of the issues raised in the Motion to Dismiss – can move forward.

Moreover, if a final order is entered granting Aurelius's Motion to Dismiss the Commonwealth's Title III case, there would no longer be any automatic stay, and Aurelius

15

would be free to bring the exact claims it describes in the Motion. Specifically, allowing determination on Aurelius's Motion to Dismiss *first* prevents the unnecessary expenditure of "scarce federal judicial resources," which would be squandered if another federal court heard Aurelius's Appointments Clause challenge concurrently with this Court. *See Montoyo-Rivera*, 245 F. Supp. 3d at , at *9–*10.

**D.     The balancing of the harms favors keeping the stay in place (Factor 12 of the *Sonnax* test).**

Lifting the stay to permit Aurelius's proposed action would impose immediate, severe harms on the Commonwealth and the other instrumentalities currently undergoing Title III cases; on the creditors and other interested parties currently participating in the ongoing Title III cases; on the FOMB itself; and on the Commonwealth's overall restructuring efforts.

The Commonwealth's time and financial resources are precious. Any time spent on the Aurelius action by the FOMB drains the debtors' scarce resources at a time when they can least afford it. *See, e.g.*, *In re Residential Capital, LLC*, 2012 WL 3860586, at *8 (denying motion to lift stay and concluding that "the balance of the harms[] weighs in favor of maintaining the stay because the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend [] in the [] Litigation is great in light of their ongoing chapter 11 cases"); *In re City of Stockton*, 484 B.R. at 378 (declining to lift stay of case against officials of debtor because "[i]t is apparent to the court that [the officials'] undivided time and attention will continue to be required [for the chapter 9 case] at least for a number of months").

Likewise, resources spent on the Aurelius action would harm all other creditors of the Commonwealth and its instrumentalities by diverting resources that could otherwise be spent on addressing *their* claims, mediations, and litigations. Any money expended by the FOMB to defend against Aurelius's claim would come from the Commonwealth's coffers. *See* 48 U.S.C.

16

§ 2127(b).    Defending this suit would therefore reduce the amounts available for the Commonwealth's creditors in a Title III restructuring, a factor that numerous courts have recognized counsels against lifting a bankruptcy stay.  *See, e.g.*, *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563–64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Residential Capital LLC*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09-50026 REG, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

   Set against the significant harms described above, the harm to Aurelius is minimal. Aurelius has sought a ruling on the same legal issues it now seeks to raise outside this Court. Declining to lift the stay would not prevent the issues it wants heard from being determined.  The only harm it faces by maintaining the stay is an inability to have its Appointments Clause claim heard in another court in this district.

   Moreover, the harms Aurelius claims allegedly result from "the certification of an unlawful fiscal plan, unlawful budget, and the issuance of an unlawful restructuring certification."  Motion at 24.  Aurelius fails to explain why those "harms" differentiate it from

any other creditor unhappy with the recovery offered under the Commonwealth's current fiscal plan and budget.  Instead, Aurelius attempts to dress up its harms by asserting that these are "structural, constitutional harms of the highest order and are thus irreparable."  *Id.*  But, in the context of analyzing if cause exists to lift the stay, Aurelius fails to explain why the "constitutional" nature of these harms is relevant.  *See Brigade Leveraged Capital*, 217 F. Supp. 3d at 526 ("The mere fact that plaintiffs bring claims pursuant to the Federal and Commonwealth Constitutions does not, however, entitle them to automatic circumvention of the PROMESA stay.").[7]  Nor do the cases Aurelius cites – which all relate to the loss of fundamental constitutional rights, rather than constitutional attacks on a government entity's structure – compel otherwise.  Without more, the balance of harms strongly favors maintaining the stay.

Aurelius also fails to confront the fact that it has alleged as cause for stay relief harms from the Oversight Board's certifications, which Congress expressly deprived all district courts from adjudicating.  PROMESA § 106(e).  Congress could not have intended that cause for stay relief can be harm from a wrongful certification that Congress bars courts from determining.  Put differently, Congress left to the Oversight Board the discretion to certify fiscal plans and did not grant creditors the right to any particular fiscal plan.  Rather, creditors were granted the right to object to confirmation, but not to fiscal plan certifications.  Therefore, Aurelius can have no legally cognizable harm from fiscal plans, budgets, and restructuring certifications it does not like.

---

[7] Although the *Brigade Leveraged Capital* Court made its ruling in the context of the stay imposed by PROMESA § 405, it made clear that its holding applies equally to the automatic stay under § 362 of the Bankruptcy Code.  *Id.* (citing *In re City of San Bernardino*, 558 B.R. 321, 330 (C.D. Cal. 2016), for the proposition that "there is no exception to the Bankruptcy Code's automatic stay for constitutional claims, even if that category of claims is 'deserving' of an exemption").

The balance of harms weighs particularly heavily against Aurelius where, as here, its claim is not meritorious.  *See, e.g.*, *In re Project Orange Assocs., LLC*, 432 B.R. 89, 106 (Bankr. S.D.N.Y. 2010) (noting other courts have applied factors almost identical to those used by the *Sonnax* court, in addition to evaluating "the creditor's chances of success on the merits," when determining if to lift the automatic stay) (internal citations omitted).   As the FOMB explains in its opposition to the Motion to Dismiss filed contemporaneously herewith, Aurelius's Appointments Clause arguments fundamentally misperceive the nature of the FOMB.

Aurelius's Appointments Clause challenge depends on its inaccurate assertion that the FOMB's members are federal officers rather than territorial officers.  But, Aurelius ignores Congress's plenary Article IV authority over the territories.   Under the Territories Clause, Congress acts in the capacity of a state or local government when it structures a territorial government, and therefore has the power to fashion a territorial government as it sees fit.  Dkt. 1622 at 7-12.  Consequently, when Congress legislates for the territories, the Appointments Clause does not apply because Congress is not creating officers *of the United States*, but rather, is creating officers of the territorial government.   *Id.*  The FOMB's members are quintessential territorial officers: their offices were created by Congress pursuant to its Article IV powers; the ambit of their authority is strictly limited to territorial affairs; their offices terminate when the territorial government has achieved certain fiscal markers; they are empowered only to deal with the Commonwealth and its instrumentalities; and they are funded entirely by the territorial government.  *Id.* at 13-20.  Worse, construing the FOMB's members as federal officers subject to the Appointments Clause would upend the governmental structure of not just Puerto Rico, but every other United States territory, and the District of Columbia, as well.  *Id.* at 21.  Requiring the FOMB's members to be appointed in a manner consistent with the Appointments Clause

would render all territorial governors, heads of departments, Supreme Court justices, and the like, for each of these entities, constitutionally suspect. *Id.*

Regardless, even if the FOMB were not territorial in nature, the Appointments Clause does not govern in Puerto Rico because it is an unincorporated territory. *Id.* at 23-27. Only "fundamental" constitutional rights – *i.e.*, "limitations in favor of personal rights [that are] the basis for all free government," *Commonwealth of N. Mariana Islands v. Atalig*, 723 F.2d 682, 690 (9th Cir. 1984) (quoting *Dorr v. United States*, 195 U.S. 138, 146 (1904)) – apply in unincorporated territories. Dkt. 1622 at 25. The Appointments Clause does not protect such a "fundamental" constitutional right; indeed, numerous other "free" societies do not share this structure for federal appointments. *Id.* at 25.

Even if the Appointments Clause were to apply, however, the FOMB's members would still be constitutionally appointed, because they are inferior officers. *Id.* at 27-32. Like the independent counsels deemed to be inferior officers in *Morrison v. Olson*, 487 U.S. 654 (1988), they have limited duties, are constrained by PROMESA's requirements that they work closely with the Commonwealth's Governor and Legislature, have limited tenure, and are subject to removal for cause. Dkt. 1622 at 27-28. Nor does PROMESA's list mechanism result in an impermissible constraint on the President's authority to appoint inferior officers. Not only is the President not *required* to select individuals from the lists, but the lists may contain more recommendations than the number of Oversight Board openings, and may require that additional candidates be furnished for his selection at any time. *Id.* at 28-32.

## CONCLUSION

For the reasons set forth above, the Oversight Board respectfully requests the Court deny the Motion; and grant the Oversight Board such other and further relief as the Court deems just and proper.

Dated: November 3, 2017
San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com
         ubaldo.fernandez@oneillborges.com


/s/ Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr. (*pro hac vice*)
Ginger D. Anders (*pro hac vice*)
Chad I. Golder (*pro hac vice*)
Sarah G. Boyce (*pro hac vice*)
Adele M. El-Khouri (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Tel:  (202) 220-1100
Fax:  (202) 220-2300
Email: Donald.Verrilli@mto.com
         Ginger.Anders@mto.com
         Chad.Golder@mto.com
         Sarah.Boyce@mto.com
         Adele.El-Khouri@mto.com


/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Mark D. Harris (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
         sratner@proskauer.com
         tmungovan@proskauer.com
         mharris@proskauer.com
         cfebus@proskauer.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
