Hearing Date: November 15, 2017 at 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------------- x
                                                                                                          :

In re:                                                                                               :

THE FINANCIAL OVERSIGHT AND             : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,  : Title III
                                                                                               :

    as representative of                       : Case No. 17-BK-3283 (LTS)
                                                                                                 :

THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
                                                                                                   :

    Debtors.[1]                                                                                                          :
---------------------------------------------------------------------------- x

**STATUS REPORT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
REGARDING CREDITORS' COMMITTEE'S BANKRUPTCY RULE 2004 MOTION**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

To the Honorable United States Magistrate Judge Judith G. Dein:

The Official Committee of Unsecured Creditors of all title III debtors (other than COFINA) (the "Committee") hereby submits this status report[2] regarding the Committee's discussions with the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and other parties and its renewed request for authorization of discovery (the "Renewed Request for Discovery") as contemplated in the *Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery Program With Respect to Certain Causes of Puerto Rico Financial Crisis* [Docket No. 706] (the "Motion").[3]

**Introduction**

1. The Creditors' Committee's position has not changed, and the Creditors' Committee respectfully requests a ruling on its pending Bankruptcy Rule 2004 Motion after oral argument on November 15, 2017.

2. As the court is aware, the Creditors' Committee initially proposed what it believed to be a sensible division of responsibility in this matter: the Creditors' Committee—in part due to the fact that it would be pursuing these entities as part of the Commonwealth-COFINA Dispute—would focus investigative efforts on the GDB, Santander, and Popular entities (as defined in the Motion, the "Puerto Rico Financial Institutions") and the Oversight Board would pursue all other matters. The Oversight Board was, however, unwilling to agree that the Creditors' Committee could take on even this limited engagement and moved to block the Creditors' Committee's Bankruptcy Rule 2004 Motion in its entirety. The results of that

---

[2] The Committee apologizes for the filing of a separate report, but notes that the Committee's insert was rejected by counsel for the Oversight Board as being "like a brief." Although the Creditors' Committee believes that the joint report prepared by the objectors was also, at least in part, "like a brief," the Creditors' Committee made no attempts to censure or otherwise control those statements. The Oversight Board did not extend the Creditors' Committee the same courtesy. Therefore, the Creditors' Committee has no choice but to file its own report.

[3] Capitalized terms used but not otherwise defined in this Reply have the meanings set forth in the Motion.

1

action have been entirely predictable. While the Creditors' Committee has been actively engaged in seeking discovery from the Puerto Rico Financial Institutions in its capacity as the Commonwealth Agent for the Commonwealth-COFINA Dispute, the Board's investigation remains in its infancy and is not focused on the issues most central to the Creditors' Committee and its creditor stakeholders. Specifically:

- The Interim Report published by the Oversight Board on October 30, 2017[4] highlights that the Oversight Board's investigator, John Couriel, has just begun his work—with limited activity to date besides a review of publicly available materials, the issuance of preservation notices to unnamed individuals, and issuing subpoenas to the Popular entities (something the Creditors' Committee was prepared to do months ago). Equally troubling, Mr. Couriel has indicated it will be at least another 200 days before his work is complete.

- In its pursuit of issues related to the Commonwealth-COFINA Dispute, the Creditors' Committee has served document requests on each of the GDB, Santander, and Popular entities and has had extensive meet-and-confer dialogues with each. Each party will be making substantial productions shortly. As a result, the Creditors' Committee will already have, of necessity, a detailed understanding of the activities of these potentially culpable parties. It remains the case that allowing the Creditors' Committee's proposed further Bankruptcy Rule 2004 investigation into these entities to proceed is an entirely sensible, and rather modest, extension of work the Creditors' Committee is already undertaking.

- **Mr. Couriel's investigation is expressly not directed at the central issues the Creditors' Committee desires to examine.** Mr. Couriel has described this investigation as intended not to identify culpable third parties or potential claims but instead "sole[ly] [] to find facts" related to, among other things, "the factors contributing to Puerto Rico's fiscal crisis" and its debt issuance.[5] However interesting this effort may be in developing a historical record of the financial foibles of various Commonwealth actors, the Creditors' Committee's interest is rather different. Because it represents the interests of creditors holding billions of dollars in claims that will be satisfied only partially, its intent is in determining whether claims exist that might benefit these creditors. Mr. Couriel is not pursuing that end.

3. For these reasons, it remains necessary for the court to grant the relief requested in the Creditors' Committee's Bankruptcy Rule 2004 Motion. As the court noted, the Creditors'

---

[4] *See* Independent Investigator's First Interim Report (Oct. 30, 2017), available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59f751d7658d2.pdf (the "Interim Report").

[5] *Id.* ¶¶ 2 & 14.

2

Committee has the statutory authority under 11 U.S.C. § 1103 and Bankruptcy Rule 2004 to pursue the investigation it has identified and the compelling rationale for that investigation is only highlighted by what has transpired with the Oversight Board's activity to date.

## I. BACKGROUND

4. On July 21, 2017, the Creditors' Committee filed the Motion, requesting to commence a discovery program targeting the most significant actors that, based on publicly available information, were identified as reaping billions of dollars of fees while advising on financial structures and arrangements which crippled the Commonwealth and its related debtors—all the while creating a "revolving door" for individuals bouncing back and forth between those entities. In the Motion, the Creditors' Committee sought judicial approval under Bankruptcy Rule 2004 to issue discovery requests and begin the meet-and-confer process with entities associated with the Puerto Rico Financial Institutions. The selection of these three entities out of the numerous institutions involved was not accidental. It was based on the fact that the Oversight Board was conflicted as to those three.

5. Despite the Creditors' Committee's broad grant of authority to investigate such misconduct under 11 U.S.C. § 1103(b)[6] the Oversight Board objected, arguing that **it** was the sole proper party to conduct this discovery, noting that it had some powers under section 104(o) of PROMESA to review retail transactions. *See* Oversight Board Objection [Docket No. 859].[7]

---

[6] 11 U.S.C. § 1103 is made applicable to these proceedings by section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which has been codified at 48 U.S.C. §§ 2101-2241.

[7] As the court is aware, the Retiree Committee has objected to the Creditors' Committee's Bankruptcy Rule 2004 request. From the outset, the Retiree Committee has been transparent about its goal. It cannot accept that the Creditors' Committee would be granted the right to conduct an investigation without the Retiree Committee being granted a co-lead role. *See* Retiree Committee Objection [Docket No. 806], ¶ 3 ("Because of this shared interest . . . the Retiree Committee requested that the UCC amend the proposed order granting the 2004 Motion to permit the Retiree Committee to participate in all aspects of the Discovery Program and to treat the proposed subpoenas as jointly-issued discovery requests."). When that leadership role was not available, the Retiree Committee quickly abandoned its interest in the Discovery Program and refused to support the Creditors'

3

6. At the hearing before Magistrate Judge Judith Dein on August 22, 2017, the court recognized the Creditors' Committee's broad authority, stating "I don't see anything in PROMESA [section 104(o)] that makes the Oversight Board's investigation mandatorily exclusive" and "**I think we all agree that the UCC 2004 investigation is authorized by PROMESA**, within my discretion." *See* Exhibit A, Aug. 22, 2017 Transcript of Proceedings (the "August 22 Transcript"). As a result, and based on the Oversight Board's representations that it would retain an "independent" investigator shortly, the court ordered the parties to meet and confer with that investigator to determine whether any investigation topics could be "spun off" and whether any topics could be handed directly to the Creditors' Committee:

> I want the Board's investigator to coordinate with – to meet and confer with the Creditors' Committee to determine whether or not there are protocol[s] to go forward and coordinated efforts **and whether or not there are certain areas that should be spun off to be pursued, for the lead to be either the Creditors' Committee or the investigator**. You know, are there certain areas that should be divided among them, and is there a way to coordinate the investigation?

Exhibit A, August 22 Transcript, at p. 89, line 17 to p. 90, line 1 (emphasis added).

7. The Oversight Board subsequently retained John Couriel and the law firm of Kobre & Kim to serve as its "investigator" (the "<u>Investigator</u>").[8]

8. Despite the court's request that the parties consider dividing responsibilities, the Oversight Board remained unwilling to cede **any** matters to the Creditors' Committee or to allow the Creditors' Committee to proceed on **any** topic, and the parties submitted separate status reports on September 12, 2017 outlining their respective positions in advance of the October Omnibus Hearing. *See Informative Motion of Official Committee of Unsecured Creditors and*

---

Committee's Motion. As such, the court should see the Retiree Committee's position for what it is—mere disappointment about the failure to first bring these issues to the forefront.

[8] *See* Engagement Letter Between Oversight Board and Kobre & Kim LLP (Sept. 6, 2017), available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59dff8956bf6f.pdf ("<u>Kobre & Kim Engagement Letter</u>").

*Status Report Regarding Discovery Discussions, Renewed Request for Authorization of Discovery Under Bankruptcy Rule 2004, and Agreed Notice to Conduct Hearing on Motion at October 4, 2017 Omnibus Hearing* [Docket No. 1284] (outlining the minimal efforts expended by the Oversight Board in contrast to the Creditors' Committee's detailed proposals for discovery). As a result of Hurricane Maria, the Motion was then continued to the upcoming November 15, 2017 Omnibus Hearing.

9. Since that time, and in anticipation of the upcoming hearing, the Oversight Board's Investigator has issued a "First Interim Report" outlining his efforts to date (the "Interim Report").[9] As set forth below, the Interim Report does little more than highlight the continued need for the Creditors' Committee to be involved here—at least with regard to the Puerto Rico Financial Institutions.

## II. CURRENT SITUATION HIGHLIGHTS CONTINUED NEED FOR CREDITORS' COMMITTEE INVOLVEMENT

### A. Oversight Board's Investigation in its Infancy

10. On August 2, 2017, in response to the Creditors' Committee's Motion, the Oversight Board announced that it intended to commence an investigation of Puerto Rico's debt issuing practices.[10] Four months later, the Interim Report reveals that the investigation is only in the most preliminary stages.[11] As highlighted by the Interim Report, the Investigator has done little more than create a work plan, review publicly available financial information (e.g., offering

---

[9] *See* Independent Investigator's First Interim Report (Oct. 30, 2017), available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59f751d7658d2.pdf .

[10] *See* Press Release, FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *Oversight Board to Conduct Investigation of Puerto Rico's Debt*, (August 2, 2017), available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/49/598239c5a7286.pdf.

[11] The Creditors' Committee understands, of course, that certain delays would be inevitable as a result of the extensive devastation caused by Hurricane Maria. However, as the Interim Report acknowledges, many of the sources of this material and counsel responsible for key discussions are located on the mainland United States. *See* Interim Report, ¶ 26 (the "Investigator has prioritized obtaining copies of materials from off-island sources while taking all measures available to preserve records likely to exist in Puerto Rico").

5

documents and fiscal plans, *see* Interim Report, ¶¶ 19-20), issue preservation notices to unnamed individuals, and subpoena the Popular entities. Much of this action has apparently only taken place in recent days—with subpoenas to the Popular entities, for example, being issued only on October 27, 2017. *See* Interim Report, ¶ 28 ("Investigator issued subpoenas on October 27, 2017 to Popular, Inc., Popular Securities, LLC, and Banco Popular de Puerto Rico").

11. All of these were tasks that the Creditors' Committee was prepared to undertake, and did undertake, months ago when the Creditors' Committee filed its Motion and detailed proposed discovery requests on July 21, 2017. Indeed, by that point the Creditors' Committee had already delivered document requests to seven of the entities associated with the Puerto Rico Financial Institutions—triggering preservation obligations—and was prepared promptly to engage in meet-and-confer discussions regarding the scope of those requests.

12. Moreover, the Interim Report reflects that the Oversight Board intends to take up to 200 days before reaching and publishing final findings. While this timeline may be reasonable for the Oversight Board's purposes, it is unacceptable in the context of these fast-moving Title III Cases, where it will be necessary to determine promptly whether affirmative claims exist against the Puerto Rico Financial Institutions or whether claims made by the Puerto Rico Financial Institutions should be subordinated or disallowed.

B. **Creditors' Committee's Request is Limited in Nature and Only Expands Upon Work Performed in Context of Commonwealth-COFINA Dispute**

13. As explained at the August 22, 2017 hearing, the Creditors' Committee's sole focus here is the Puerto Rico Financial Institutions. The Creditors' Committee notes, as it did in its reply, that it does not seek to prevent the Oversight Board from any activity it chooses to undertake. Instead, the Creditors' Committee simply requests that the Oversight Board not block

6

the Creditors' Committee's work regarding the Puerto Rico Financial Institutions. This very limited request is appropriate for two reasons.

14. First, the Creditors' Committee's proposal prevents the Oversight Board from being the **only** party to examine the role of these particular entities. As the Creditors' Committee explained in its Reply, and will expand upon with additional facts at the upcoming November 15, 2017 hearing, a "second set of eyes" here is important because the Puerto Rico Financial Institutions appear, at least based on publicly available information, to have played one of the largest causative roles in Puerto Rico's financial crisis, and because the Oversight Board's conflicts give rise to public doubts about the integrity of any investigation it, or its "special" committee, may undertake.

15. Second, the Creditors' Committee's proposal was limited in nature and restricted to those areas where the Creditors' Committee is able to utilize the benefit of the work performed in the Commonwealth-COFINA Dispute. As expected, and indeed predicted at the August 22, 2017 hearing, discovery has progressed in the Commonwealth-COFINA Dispute, and counsel for the Creditors' Committee has engaged in regular discussions with counsel for Santander, the GDB, and Banco Popular for the past two months. In the context of those discussions, materials are currently being collected for exchange. The Creditors' Committee could easily have incorporated the additional Bankruptcy Rule 2004 discovery issues into those discussions but has been precluded from doing so due to this dispute. Even now, allowing the Creditors' Committee to pursue discovery from the Puerto Rico Financial Institutions and to benefit from the work conducted as part of the Commonwealth-COFINA Dispute is still an entirely sensible and efficient way to proceed. Indeed, due to its role as the Commonwealth Agent and its active ongoing discovery activities in the context of the Commonwealth-COFINA Dispute, the

7

Creditors' Committee is, and will remain, the party with the most fulsome picture of the role of the Puerto Rico Financial Institutions in the issuance of Puerto Rico's debt. Whether the Oversight Board and its special committee decide to evaluate the actions of the Puerto Rico Financial Institutions as part of developing a history of the Commonwealth's financial practices will remain up to the Oversight Board.

### C. Interim Report Indicates that Investigator's Mandate Differs From Creditors' Committee's

16. At the Oversight Board's public meeting on October 31, 2017, its Investigator spoke regarding the goals and aims for his work. In particular, Couriel highlighted the fact that **he would not advance any particular claims against individuals or entities and would only seek to publish a scholarly assessment**:

> We have no interest in goring any particular ox here . . . **We're not getting paid to sue anyone; we're not getting paid to find or set causes of action**. . . . We have no interest other than the correct and accurate assessment of what went wrong and **what can be done differently in the future, with the focus always being on restoring Puerto Rico's access to the capital markets**.[12]

17. This statement is consistent with the Investigator's engagement letter. That letter provides that the purpose of the retention is to (1) a "review of the factors contributing to [Puerto Rico's] fiscal crisis"; (2) "a review of Puerto Rico's debt" including the use of proceeds and how those practices compared to other states and municipalities; and (3) "a review of Puerto Rico's debt issuance, disclosure, and selling practices, including its interpretation of Puerto Rico's constitutional debt limit."[13] Indeed, the redline of the work plan provided to the Creditors' Committee indicates that the Investigator has been specifically restricted from identifying

---

[12] Tenth Public Meeting, FINANCIAL OVERSIGHT & MANAGEMENT BOARD FOR PUERTO RICO (Oct. 31, 2017) (Spanish video translation available at https://livestream.com/fombpr/events/7895155/videos/165212525) (emphasis added). (The Creditors' Committee understands that an English language livestream of the video will be posted to the Oversight Board's website in the coming days.)

[13] *See supra* note 8, Kobre & Kim Engagement Letter, pp. 1-2.

8

potential claims, removing language regarding the Investigator's responsibility to identify "whether there was any misconduct relating to disclosure, selling practices, or use of proceeds in connection with the issuance of debt . . . including the identification of any potential claims . . . as well as the targets of those claims." *See* Redline to Investigator's Work Plan, attached as Exhibit B to Creditors' Committee's Status Report on 2004 Motion [Docket No. 1284-2].[14]

18. While the report the Investigator will publish may be interesting, it bears little relationship to the Creditors' Committee's mandate. The Creditors' Committee is charged with the role of maximizing recovery for its creditor constituency. *See In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 577–78 (Bankr. D. Colo. 1998) ("Thus, a creditors committee serves something of a 'watchdog' function in bankruptcy and enjoys unique rights and responsibilities under the Code."); *see also Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 280–81 (8th Cir. 2015) ("The support of the unsecured creditors' committee is noteworthy. Creditor Committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents.") (internal quotations omitted). Bankruptcy Rule 2004 supports that effort, as it provides a window into "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). Indeed, the very nature of this discovery is aimed at determining the nature and extent of the bankruptcy estate, "discovering

---

[14] Indeed, the special committee structure the Oversight Board has established is almost uniquely unsuited to the task of evaluating and pursuing claims against the Puerto Rico Financial Institutions. The full Oversight Board remains conflicted and representatives who must consider the interests of, and report to, the full Oversight Board remain in important positions with respect to the investigation run by the special committee. *See* Interim Report, ¶ 4 (setting forth that Mr. Couriel's team will regularly update the Oversight Board's general counsel regarding continued progress); *id.* ¶ 9 (requiring the Oversight Board's general counsel to authorize any "informal investigation" as to any specific parties); *id.* ¶ 11 (requiring that the Oversight Board's general counsel and its outside counsel must first determine whether to request Oversight Board approval of a "formal investigation" before any entity may be subpoenaed).

9

assets, examining transactions, **and determining whether wrongdoing has occurred**." *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).

19. Only by allowing the Creditors' Committee to go forward will the discovery here be useful to the Title III Cases. If the Creditors' Committee discovers misconduct in the course of its investigation, it will not simply note that for the historical record. Rather, it will take all available legal action to benefit the Commonwealth and its creditors, including but not limited to seeking affirmative claims against the Puerto Rico Financial Institutions or requesting the subordination or disallowance of any claims made by the Puerto Rico Financial Institutions.

### III. CONCLUSION AND REQUEST FOR BANKRUPTCY RULE 2004 AUTHORIZATION

20. Given this plethora of concerns, and the risk of continued delay and inefficiency posed by the Oversight Board's refusal to engage with the Creditors' Committee and allow the Creditors' Committee to proceed where it most sensible for the Committee to do so, the Creditors' Committee respectfully requests that the court grant the Creditors' Committee's Motion and enter a ruling directing that the Creditors' Committee may commence the discovery program as to the Puerto Rico Financial Institutions.

*[Remainder of page intentionally left blank]*

Dated:  November 3, 2017
San Juan, Puerto Rico

*Luc A. Despins, Esq.*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and –

*Juan J. Casillas Ayala, Esq.*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*