**Hearing Date:** November 15, 2017, at 9:30 a.m.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## REPLY BRIEF IN SUPPORT OF MOTION BY THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND THE MUTUAL FUND GROUP FOR ORDER AUTHORIZING RULE 2004 EXAMINATION

---

[1]     The Debtors in these title III cases (collectively, the "Title III Cases"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

Preliminary Statement ................................................................................................. 1

I.      The "Pending Proceeding" Doctrine Does Not Insulate The Commonwealth
        And The Board From All Discovery ........................................................... 4

II.     Respondents' Limited Voluntary Production Is Not Grounds To Deny Rule
        2004 Examination ..................................................................................... 10

III.    Respondents' Assertion That The Deliberative Process Privilege Shields
        "Certain Documents" From Discovery Is No Basis For Denying The Rule
        2004 Motion ............................................................................................ 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cameron v. United States*,
231 U.S. 710 (1914).............................................................................................................. 8

*Cobell v. Norton*,
213 F.R.D. 1 (D.D.C. 2003)......................................................................................... 13, 14

*EPA v. Mink*,
410 U.S. 73 (1973)............................................................................................................. 14

*In re 2435 Plainfield Ave., Inc.*,
223 B.R. 440 (Bankr. D.N.J. 1998) .................................................................................. 5, 6

*In re Buick*,
174 B.R. 299 (Bankr. D. Colo. 1994) ................................................................................... 7

*In re Dinubilo*,
177 B.R. 932 (Bankr. E.D. Cal. 1993) .................................................................................. 5

*In re Drexel Burnham Lambert Group, Inc.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991)............................................................................... 5, 8

*In re Enron Corp.*,
281 B.R. 836 (Bankr. S.D.N.Y. 2002)............................................................................... 1, 5

*In re Int'l Fibercom, Inc.*,
283 B.R. 290 (Bankr. D. Ariz. 2002)................................................................................. 6, 9

*In re Noone v. St. Cyr*,
188 B.R. 710 (Bankr. D. Mass. 1995) ................................................................................... 8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
254 F.R.D. 35 (D. Mass. 2008)....................................................................................... 13, 15

*In re Sunridge Assoc.*,
202 B.R. 761 (E.D. Cal. 1996).............................................................................................. 5

*In re The Bennett Funding Grp., Inc.*,
203 B.R. 24 (Bankr. N.D.N.Y. 1996) ................................................................................... 7

*In re Washington Mut., Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) ............................................................................... 4, 6, 7

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ................................................................................................ 14

*Snyder v. Society Bank*,
    181 B.R. 40 (S.D. Tex. 1994) .................................................................................. 6

*Williams v. City of Boston*,
    213 F.R.D. 99 (D. Mass. 2003) .............................................................................. 14

**Statutes and Rules**

11 U.S.C. § 1129(b)(1) ................................................................................................ 9

Fed. R. Bankr. P. 2004(b) ................................................................................... *passim*

Fed. R. Bankr. P. 7026-7037 ................................................................................... 6, 7

Fed. R. Civ. P. 26 ........................................................................................................ 7

**Other Authorities**

6 Norton Bankruptcy Law and Practice § 141-35 (2d ed. 1998) .................................. 6

iii

## Preliminary Statement

Movants have sought basic transparency as to the Commonwealth's finances for years, to no avail.  The Oversight Board and the Commonwealth ("Respondents"), however, want nothing to do with discovery.  Not in the Title III cases, not in any adversary proceeding, not under Bankruptcy Rule 2004(b), not under the Rules of Civil Procedure, not now, not ever.  But the creditors have an indisputable right to the documents and data that reveal the "financial condition of the debtor."  Fed. R. Bankr. P. 2004(b).  That is because any plan of adjustment cannot be confirmed unless it is "fair and equitable" which means that the recovery proposed for creditors must be "'the maximum that the [debtor] could reasonably pay.'"  See Opening Br. 1, 12 (ECF No. 1178).  And in this case, where the debtor's ability to pay will be subject to intense scrutiny by creditors and the Court, it is essential that all parties have access to the relevant information.

Respondents initially objected that Movants had sought this information "for no purpose other than litigating the propriety of the [Board's] certification of the Fiscal Plan," which is "not reviewable by any court pursuant to PROMESA."  Opening Br. Ex. B at 5 (June 13, 2017 letter).  In other words, their position was that, although creditors are entitled to a "broad and unfettered" look into a debtor's financial affairs (*In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)), PROMESA's certification procedures serve to prohibit all discovery.  As Movants explain in the Joint Motion (at 9-17), that argument is baseless as a matter of law; what is more, there is no way to litigate a contested confirmation proceeding (much less negotiate a consensual resolution) unless all stakeholders have this basic information.

Respondents now abandon the facile argument that PROMESA itself somehow immunizes them from discovery.  Nevertheless, and to no surprise, they maintain their long-held position that discovery has no place in this case.

*First*, Respondents contend that, by initiating separate adversary proceedings, Movants have forfeited the right to any discovery in this Title III case.  FOMB Opp. 17.  That is wrong. For one thing, Movant Mutual Fund Group *has not filed* any adversary proceeding in the Commonwealth's Title III case.[2]  That alone is sufficient grounds to reject Respondents' "pending proceeding" objection.  In any event, the pending proceeding doctrine prohibits only the use of broad Rule 2004 examinations (rather than civil discovery) during the pendency of an adversary proceeding.  But Movants have never sought to circumvent the procedural protections of civil discovery via Rule 2004, so the pending proceeding doctrine is beside the point.  Nor is there anything to Respondents' argument that Movants are attempting to use Rule 2004 as a "pretext" to obtain discovery for use in the adversary proceedings.  The target of Movants' requests here has little to do with the pending adversary proceedings filed by some (but not all) of the Movants.

Relatedly, Respondents advance the puzzling argument that because Movants have asserted that there are deficiencies in the Fiscal Plan, they already "have drawn their conclusions," and "[a]ccordingly, they have no need for, or entitlement to, Rule 2004 discovery." FOMB Opp. 5 (ECF No. 1345); see *id*. at 3 (because Assured and National "already have sufficient information to have determined they will oppose the plan of adjustment," they "are absolutely precluded from Rule 2004 discovery.").  That is arrant nonsense.  There is no precedent (or logic) for denying Rule 2004 discovery on the basis of what the movant thinks about the debtor's position.  Rule 2004 exists so that the parties—not to mention the Court—can determine whether the requirements for confirmation of a plan of adjustment are satisfied.

---

[2]      The Mutual Fund Group has voluntarily dismissed without prejudice its adversary proceeding in the PREPA Title III case.

*Second*, Respondents raise a number of request-specific objections that are commonly hashed out in the meet-and-confer process. They say certain requests are overbroad or pose an undue burden, and that Respondents already have provided "extensive disclosure." FOMB Opp. 30. They also assert that "[m]any of Movants' requests" implicate the deliberative process privilege. They are wrong on all counts: The requests are carefully targeted to seek relevant information; the limited disclosure provided so far (for which Movants have had to fight tooth and nail) is woefully inadequate; and Respondents cannot invoke deliberative process as a blanket defense to production of the basic financial information that is provided in every municipal bankruptcy case. But that is scarcely the point: Whether or not individual document requests are overbroad or unduly burdensome (they are not), or tread on the deliberative process (they do not) is no basis to deny discovery altogether. As Movants advised Respondents long ago, Movants are happy to discuss any specific objections they may have once discovery is permitted to go forward.

*Last*, in a pair of additional filings made just last week, Respondents urge (i) that Movants' motion is "particularly inappropriate" in light of the dire situation on the Island (AAFAF Opp. (ECF No. 1582) 2), and (ii) that the Board's recent announcement that it plans to certify a new Fiscal Plan renders the requested discovery "irrelevant and moot" (Supp. (ECF No. 1616) 3). These cynical arguments should not be countenanced. Movants are not disputing that millions of U.S. citizens living in Puerto Rico are still suffering. The Board, however, should not be permitted to leverage that situation to avoid routine (and readily available) discovery. Indeed, Respondents have been emphatic that this case should proceed "as expeditiously as possible" (ECF No. 1586, at ¶ 4), but that will be *impossible* unless creditors are provided all relevant information. And the fact that the Board intends to certify a new Fiscal Plan does not

lessen Movants' need to discover the underlying "financial condition of the debtor."  Fed. R. Bankr. P. 2004(b).

There is no chance that this Title III case can be resolved, either consensually or through the confirmation process, while Respondents maintain a monopoly on the key information.  The Court should put a stop to Respondents' ongoing effort to operate in secret.  The motion for examination under Rule 2004 should be granted.

## I.      The "Pending Proceeding" Doctrine Does Not Insulate The Commonwealth And The Board From All Discovery

Rather than contesting that the requested materials are the proper subject of a Rule 2004 discovery request, the Board's principal objection is that the Movants forfeited their right to this discovery, as a matter of law, by initiating various adversary proceedings.  This argument fails, first and foremost, because Movant the Mutual Fund Group *does not have* any pending adversary proceeding in this Title III case.  That is dispositive as to the Board's "pending proceeding" objection.  See *In re Washington Mut. Inc.*, 408 B.R. 45, 53 (D. Del. 2009) ("The 'pending proceeding' rule is predicated on there actually being a pending action involving the two parties . . . .  Since JPM is not a party to the [adversary] Action, the concern that the Debtors are attempting to circumvent the Federal Rules of Civil Procedure is not present.").  In any event, the Board's theory rests on a misapplication of the doctrine, the purpose of which is to enforce the procedural protections that apply in civil discovery—not to shield the Board's restructuring efforts from scrutiny by creditors and the Court.

A.   The Board's misreliance on the pending proceeding doctrine is apparent when one pauses to consider the *purpose* of the doctrine—which is to ensure that litigants in an adversary proceeding cannot circumvent the procedural and evidentiary constraints, prescribed by the Federal Rules of Civil Procedure, that apply to discovery in such proceedings.

"A Rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct." *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 456 (Bankr. D.N.J. 1998) (citing cases). Consistent with its broad purpose, the discovery limitations that ordinarily apply in civil litigation are relaxed. Thus, in Rule 2004 discovery, "'[1] the witness has no right to be represented by counsel except at the discretion of the court; [2] there is only a limited right to object to immaterial or improper questions; [3] there is no general right to cross-examine witnesses; and [4] no right to have issues defined beforehand.'" *In re Enron Corp.*, 281 B.R. at 841 (quoting *In re Dinubilo*, 177 B.R. 932, 939-40 & n. 12 (Bankr. E.D. Cal. 1993)).

By contrast, discovery in an adversary proceeding (like discovery in other types of civil litigation) is not a "broad investigation." It is instead defined by the substance of the specific matter in dispute, and designed, to a greater extent, to protect the personal interests of the litigants. Accordingly, discovery in an adversary proceeding is circumscribed by the Federal Rules of Civil Procedure, which "are much more stringent since any person has the right to have counsel present and all rules of evidence apply." *In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 456 (internal quotation marks omitted); see also *In re Sunridge Assoc.*, 202 B.R. 761, 762 (E.D. Cal. 1996) ("The discovery rules available in adversary proceedings . . . are more restrictive in scope with respect to requirements of relevance and to protections available."); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards.").

The purpose of the pending proceeding doctrine is to preserve "the distinction between the broad fishing expedition-like nature of the Rule 2004 exam . . . and the more restrictive

5

nature of discovery under Fed. R. Bankr. P. 7026-7037." *In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 456 (citations omitted); see also *In re Washington Mut., Inc.*, 408 B.R. at 51 ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure."). Accordingly, courts have invoked the doctrine to refuse requests for Rule 2004 discovery where "the debtor is impermissibly using the broad Rule 2004 examination as a substitute for discovery in the . . . adversary proceeding in an attempt to avoid more stringent procedural rules that govern discovery under the Federal Rules of Civil Procedure." *In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 455; see *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("The reason for the rule is to avoid Rule 2004 usurping the narrower rules for discovery in a pending adversary proceeding.").[3]

The concerns addressed by the pending proceeding doctrine are not presented here. The Board is not objecting because it is worried that it will be exposed to discovery without the procedural protections of the Federal Rules; it is objecting because it wants there to be no discovery *at all*. The pending proceeding doctrine is intended to ensure application of the appropriate *procedural and evidentiary* rules—it is not a pass to avoid discovery altogether.[4]

For Movants' part (and for the record), Movants are not seeking to avoid the "procedural safeguards" that apply to discovery under the Federal Rules. Indeed, Movants are happy for the Board and the Commonwealth to be represented by counsel in all phases of discovery, and to object and cross-examine as appropriate. See *In re The Bennett Funding Grp., Inc.*, 203 B.R. 24,

---

[3]    See also 6 Norton Bankruptcy Law and Practice § 141-35 (2d ed. 1998) (application of the pending proceeding doctrine is based upon the concern that the party seeking Rule 2004 discovery "is likely seeking to avoid the procedural safeguards of Bankruptcy rules 7026-7037"); cf. *Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) (bankruptcy court did not abuse its discretion by refusing to allow discovery under Rule 2004 where party's primary motivation was to use those materials in a separate state court action against the opposing party).

[4]    The Board coyly notes (FOMB Opp. 26) that, "if appropriate, discovery can be taken through more appropriate avenues," but it never tells us what "avenues" it has in mind, or when those avenues might open up.

6

30 (Bankr. N.D.N.Y. 1996) (declining to allow discovery to proceed under Rule 2004, but allowing that "the Trustee is limited to discovery . . . in accordance with the Fed. R. Bankr. P. 7026 *et seq.*").  Given that Movants are willing to conduct discovery in accordance with the procedural constraints of Fed. R. Civ. P. 26, the Board's "pending proceeding" objection is moot.

B.  The Board argues that Rule 2004 discovery in the Title III case should be denied, because substantially all of the documents Movants request are "inextricably tied" to the substance of pending adversary proceedings.  FOMB Opp. 23.  The Board supplies a series of charts intended to demonstrate "the overlap among the Rule 2004 requests and the issues underlying the Adversary proceedings."  *Id.*  The Board's "overlap" theory fails.

Most obviously, Movant the Mutual Fund Group has not *filed* any adversary proceeding in the Commonwealth's Title III case.  The Mutual Fund Group's Rule 2004 requests therefore cannot be said to "overlap" with the substance of a non-existent adversary proceeding.  See *In re Washington Mut. Inc.*, 408 B.R. at 52; *In re Buick*, 174 B.R. 299, 305 (Bankr. D. Colo. 1994) (pending proceeding doctrine applies only to "issues within the scope of the pending adversary proceeding(s)" and does not apply to parties that are not involved in separate adversary proceedings).  Respondents elect to deal with this gaping hole in their theory by simply ignoring it:  In their three separate briefs and elaborate charts, Respondents make no mention of the Mutual Fund Group, as though it were not among the Movants seeking relief.

Instead, Respondents' lead argument (see FOMB Opp. 23-24), illustrated by a 7-page chart (Exhibit A), is that the materials requested here relate to the substance of the "125 Proceeding" filed by Assured and National.  But Assured and National voluntarily dismissed that proceeding without prejudice on October 6, 2017.  It cannot serve as a predicate for the Board's "overlap" theory.

Respondents attempt to get around this exceedingly inconvenient fact by pronouncing that Rule 2004 discovery is allowed only "*before* a litigant knows its cause of action" so it can "determine whether to bring an adversary proceeding."   Supp. 5 (emphasis in original).[5] Presumably, once a litigant "knows" enough to bring any type of adversary proceeding, Rule 2004 is no longer available, and that remains true even if the adversary proceeding is dismissed. But there is no such rule; it is the Respondents' invention.  The purpose of Rule 2004 discovery is not (as Respondents suggest) just to help creditors decide whether to file an adversary proceeding; it is "to show the condition of the estate and to enable the Court to discover its extent and whereabouts."  *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 708 (citing *Cameron v. United States*, 231 U.S. 710 (1914)).[6]

That leaves the Respondents' invocation of the "189 Proceeding" (FOMB Opp. 24-25 and Exhibit B), in which the GO Group asserts that it has a statutory lien, and other property interests, in two categories of revenues, which may be used only to pay the Commonwealth's constitutionally protected "public debt."  But as Respondents acknowledge, those claims present fundamentally "legal issues."  Supp. 4.  By contrast, the documents that Movants request here relate more broadly to the "financial condition of the debtor" (Fed. R. Bankr. P. 2004(b)), which in turn will inform whether a plan of adjustment is "fair and equitable."  11 U.S.C. § 1129(b)(1). See Opening Brief at 9-17.

---

[5]     See FOMB Opp. 5 ("Movants have drawn their conclusions.  Accordingly, they have no need for, or entitlement to, Rule 2004 discovery."); *id*. at 3 ("Assured and National believe they know enough about the Fiscal Plan to try to bar the proposal of any plan of adjustment based on it.  That alone deprives Movants of their right to discovery under Rule 2004.").

[6]     *Noone v. St. Cyr*, 188 B.R. 710 (Bankr. D. Mass. 1995) (Supp. 5), does not support the Respondents' made-up rule of law.  The court there held only that the movant's failure to pursue Rule 2004 discovery on a timely basis was no reason to delay entry of summary judgment.  *Id*. at 713.

C.    Respondents' remaining "pending proceeding" arguments are meritless.    *First*, Respondents inexplicably continue to press the argument that the Puerto Rico Local Bankruptcy Rules "explicitly" compel that Movants' Rule 2004 motion must be denied.  See FOMB Opp. 17, 22.   But the Local Rule states only that the provisions for discovery under Rule 2004 "are inapplicable to pending adversary proceedings and contested matters."   P.R. Local Bankr. R 2004-1.  That Rule is irrelevant:  Movants do not seek Rule 2004 discovery in any "pending adversary proceedings [or] contested matters."

*Second*, Respondents pretend that the Movants' argument here is that the pending proceeding doctrine is inapplicable only because "no discovery has been sought within the [adversary proceedings]."   FOMB Opp. 19.    Movants have never advanced that argument. Rather, Movants have established a right to Rule 2004 discovery independent of whether discovery goes forward in the adversary proceedings.   But since Respondents raise the point, it is worth noting that courts are *especially* reluctant to invoke the pending proceeding rule where discovery is unavailable elsewhere—as is the case here.   See, *e.g.*,  *In re Int'l Fibercom, Inc.*, 283 B.R. at 293 ("strict application of the 'pending litigation' analysis would be adverse to the purpose underlying the Bankruptcy Rule 2004" where "discovery is not presently available in any of the other pending litigation").

Relatedly, Respondents' reckless charge (FOMB Opp. 5) that "Movants are attempting inappropriately to use Rule 2004 as a pretext for obtaining discovery materials related to the Adversary Proceedings in which this Court has ordered that discovery be deferred" is baseless. In fact, this Court issued its *sua sponte* Notices that it would hold off on issuing any pre-trial discovery orders in the Adversary Proceedings, so long as motions to dismiss are pending, a week *after* Movants filed this motion for Rule 2004 discovery.  See, *e.g.*, *ACP Master, Ltd. v.*

9

*Commonwealth of Puerto Rico*, Adv. Proc. No. 17-189, ECF No. 42 (Sept. 1, 2017).  Movants could not have filed this motion as a "pretext" to evade an order that had not yet been issued, and that they had no reason to believe was forthcoming.

## II.   Respondents' Limited Voluntary Production Is Not Grounds To Deny Rule 2004 Examination

Respondents argue that this motion should be denied because they already have provided "substantial disclosures on a voluntary basis."  FOMB Opp. 27.  But the disclosure provided to date is plainly inadequate.

For example, the Board's Executive Director, Natalie Jaresko, stated in a reported interview in September that the Commonwealth was providing the Board a report showing budgeted-to-actual spending, department by department.  Ex. 1 (Bond Buyer Interview, Sep. 19, 2017); *see also* Ex. 2 at 9 (N. Jaresko Prepared Testimony) (referencing a "budget compliance report").  That report (or reports) has never been produced.  The Commonwealth has also provided the Board with a weekly report showing cash and liquidity.  Ex. 3 at 6 (TSA Variance Report as of October 20, 2017).  To date, the Board has published only one such liquidity report—just before the Board's most recent meeting held on October 31.

What Respondents *have* provided is obviously incomplete.  They contend, for example (FOMB Opp. 27-28), that Movants have been provided all the information needed to understand the Commonwealth's macroeconomic forecasts.  That is just not so.  With respect to the models that have been produced, [7] those models incorporate undefined variables:  Movants are not able to ascertain what they purport to represent or how they were derived.  Relatedly, the Board's

---

[7]   It also is unclear whether Movants may use these documents in court filings.  As the Board's objection states, these productions were made in the context of mediation and may be subject to NDAs.  FOMB Opp. 27.  And the Board has taken the position that mediation materials may not be used in litigation.  See Mungovan Decl. Ex. D. Accordingly, the Board has arrogated to itself the right to disclose self-selected pieces of information under the auspices of mediation while denying creditors the right to use that same information in court proceedings.

economist, Andrew Wolfe, has twice testified that Puerto Rico must sustain economic growth of at least 0.8% to achieve fiscal and debt sustainability. *Peaje Invs. LLC v. P.R. Highway Transp. Auth.*, Adv. Proc. No. 17-151, ECF No. 99 ¶ 10 (July 14, 2017); *In re Fin. Oversight & Mgmt. Bd. for PR as representative of PREPA*, No. 17-4780, Dkt. 149 Ex. B at ¶ 10 (July 31, 2017). But Movants still do not have the information necessary to determine how Wolfe reached that conclusion.

Nor can Respondents avoid discovery just because the Board has announced there will be a revised Fiscal Plan in the coming months. See Supp. 3-5. As noted above, Rule 2004(b) permits examination of the "financial condition of the debtor," which is the ultimate target of Movants' proposed discovery requests. See, *e.g.*, Request 15 (documents regarding Commonwealth's ability to re-access the capital markets); Request 61 (documents breaking down non-publicly traded debt of Commonwealth and its instrumentalities). No revision to the Fiscal Plan will change the underlying financial condition of the Commonwealth. And to the extent some of Movants' requests seek to discover the basis for projections in the existing certified Fiscal Plan, those materials remain just as relevant as they were before the Board announced there would be a new Fiscal Plan. For one thing, Respondents may well rely on the same methodologies in the new Fiscal Plan as they did in the old one. See, *e.g.*, Request 14 (information models and sensitivity analyses used to evaluate growth initiatives), Requests 17, 19 (documents relating to Reconciliation Adjustment). If they do, information regarding such methodologies is not "stale." Supp 2. And, if Respondents use different methodologies, Movants need to understand the before, as well as the after, to determine whether any change in methodology is properly tied to the change in economic circumstances on the island.

For related reasons, the devastating impact of the hurricane makes Rule 2004 discovery more important, not less.  To resolve this Title III case, all parties will have to be supplied with all relevant information as to how the hurricane is likely to affect Puerto Rico's economic production going forward.   And contrary to Respondents' claims (see AAFAF Opp. 2-3), many of Movants' requests seek information that the Commonwealth already has been provided to other parties[8] or should be easily retrievable from Respondents' (or their consultants') records.[9]

Respondents' refusal of all discovery requests cannot be justified by its insistence that the creditors will get whatever they legitimately need by relying upon the Board's good graces. FOMB Opp. 27-29.  Notably, in September, the Official Committee of Unsecured Creditors ("UCC") filed a response to this motion stating that the UCC intended to try "work cooperatively with the Debtor Parties to receive additional information" rather than press for formal discovery. Dkt. 1344 ¶ 3.  Just last week, however, the UCC filed a joinder to this motion, explaining that "given the lack of progress the Committee has had in obtaining financial information," the UCC now supports the requests for document production and depositions.  ECF No. 1603 ¶ 4.

The Board does not have unchecked authority to decide what it will disclose to (and what it will withhold from) creditors.  If Congress had intended such an outcome, it would have provided in PROMESA that Rule 2004 was inapplicable to any Title III debtor.  If the Board and AAFAF believe that certain requests are overbroad or duplicative, then Movants remain willing to meet-and-confer to determine the proper scope of production.  Here, however, the Board has refused to produce *anything* under Rule 2004.  That blanket refusal is unwarranted.

---

[8]      See, *e.g.*, Requests 1, 2 (information provided to other parties); Request 4 (information provided to regulators); and Requests 19-24 (information provided to non-legal consultants).

[9]      See, *e.g.*, Request 5 (notes and minutes of meetings), Request 16 (benchmarking analysis performed by FOMB); Request 37 (analysis of Board's recommendation to alter Fiscal Plan).

### III.   Respondents' Assertion That The Deliberative Process Privilege Shields "Certain Documents" From Discovery Is No Basis For Denying The Rule 2004 Motion

Respondents' final argument is that "many" or "certain" of Movants' requests call for materials that are protected from disclosure by the deliberative process privilege.  FOMB Opp. 30.  Respondents misconceive both the procedural and substantive requirements of that doctrine.

A.  The threshold problem with Respondents' argument is that even if some of Movants' requests implicated deliberative process, that is no reason to refuse an examination under Rule 2004.  Objections relating to deliberative process—like other discovery objections—should be worked out in the first instance among counsel.  Indeed, Respondents take care to reserve their right to "a normal objection and meet-and-confer process to address the Oversight Board and Commonwealth's specific objections" in the event this motion is granted.  FOMB Opp. 5 n.11; see also AAFAF Opp. 1-2 (same).  That is fine; in fact, Movants *invited* Respondents to meet and confer before filing this motion.  But they insisted that a Rule 2004 examination is categorically unavailable, as a matter of law.  See Opening Brief 2 n.3.

Movants remain available to meet and confer with Respondents to resolve any individual objections they may have.  And as this Court already has advised, if the parties are unable to reach agreement, a claim of deliberative process as to any particular document "needs to be logged" and "needs to be described" (*The Bank of N.Y. Mellon v. Puerto Rico Sales Tax Fin. Corp.*, July 5, 2017 Tr. at 55), so that the Court can "conduct an individualized review of each piece of evidence."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008).[10]  Respondents have taken none of these steps—not a meet-and-confer, and not a

---

[10]      See also *Cobell v. Norton*, 213 F.R.D. 1, 7 (D.D.C. 2003) ("[T]he proper invocation of the privilege requires: (1) a formal claim of privilege by the head of the department possessing control over the requested information, (2) an assertion of the privilege based on actual personal consideration by that official, and (3) a

log for the Court.  Respondents' broad complaint that "certain" requests are improper is no basis to deny discovery altogether.[11]

B.  The Board is wrong on the merits in any event.  The policy behind the deliberative process privilege is that "the 'frank discussion of *legal or policy matters*' in writing might be inhibited if the discussion were made public."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (emphasis added).  See *EPA v. Mink*, 410 U.S. 73, 87 (1973) (same); *Williams v. City of Boston*, 213 F.R.D. 99, 101 (D. Mass. 2003) (Dein, J.) ("'people who contribute to *policy formulation* will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies.'") (emphasis added).  The requests Movants propose to serve do not implicate the issues and concerns addressed by the deliberative process privilege.

The proposed document requests are directed to the "financial condition of the debtor." Fed. R. Bankr. P. 2004(b).  They do not attempt to expose the potentially embarrassing sausage-making of government "policy."  They are instead designed to reveal the data that underlie Respondents' projections of cash flows for debt service.  "Documents, Communications, analyses or models relating to the Territorial Government's liquidity position and cash balances" (Request 57), for example, do not tread on the Commonwealth's deliberative process.  See *Cobell*, 213 F.R.D. at 6 ("[O]bjective facts. . . are not protected.").

The proposed requests also seek straightforward answers to mysteries such as where various revenues the Commonwealth has collected may be found (see, *e.g.*, Request 30 ("Documents sufficient to ascertain the status and treatment of any taxes collected on behalf of

---

detailed specification of the information for which the privilege is claimed, along with an explanation why it properly falls within the scope of the privilege.").

[11]    For the same reason, the assertions that some of Movants' requests are unduly burdensome (AAFAF Opp. 2); or pursue materials that are insufficiently relevant (Supp. 3-5) should be addressed in the meet-and-confer process.  They are no basis for denying discovery altogether.

municipalities by the central government of Puerto Rico")); how many individual employee salaries are reflected in that expense line in the Fiscal Plan and budget (see Request 44 ("Documents sufficient to identify the total number of permanent employees, temporary hires, subcontractors and consultants, of the Territorial Government."); and how much the Commonwealth provides in subsidies to the University of Puerto Rico, municipalities and other entities (Request 58). Movants also have included what should be an uncontroversial request that Respondents produce any materials they already have produced to other parties in these proceedings. Requests 1 & 2. The Commonwealth's deliberations will not grind to a halt as a consequence of it producing (or re-producing) these materials.

Finally, even if a particular document meets the threshold definition of deliberative process, that does not mean it is shielded from production. Rather, because the privilege is qualified, the Court must apply a multi-factor analysis to exercise its discretion. For present purposes, the most important factor is "the movant's particularized need for the information as evidence in the case before it." *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. at 40. In this case, whatever institutional interest Respondents assert in shielding information from scrutiny is heavily outweighed by the interests recognized in the Bankruptcy Code and incorporated into PROMESA. In particular, Movants, who own or insure billions of dollars of debt issued by Puerto Rico or its instrumentalities, are entitled to complete transparency into the "financial condition of the debtor." Fed. R Bankr. P. 2004(b). That statutorily mandated inquiry cannot be conducted unless the creditors and the Court are in possession of the same underlying data that the Commonwealth has.

Dated:  November 7, 2017
        San Juan, Puerto Rico

Respectfully submitted.

**JIMÉNEZ, GRAFFAM & LAUSELL**

By: /s/ Andrés F. Picó Ramírez

J. Ramón Rivera Morales
   (USDC-PR No. 200701)
Andrés F. Picó Ramírez
   (USDC-PR No. 302114)
PO Box 366104
San Juan, PR 00936-6104
Telephone:  (787) 767-1030
Email:  rrivera@jgl.com
        apico@jgl.com

**PAUL, WEISS, RIFKIND, WHARTON &**
   **GARRISON, LLP**

Andrew N. Rosenberg (*pro hac vice*)
Kyle J. Kimpler (*pro hac vice*)
Karen R. Zeituni (*pro hac vice*)
1285 Avenue of the Americas
New York, NY  10019
Telephone:  (212) 373-3000
Email:  arosenberg@paulweiss.com
        kkimpler@paulweiss.com
        kzeituni@paulweiss.com

**ROBBINS, RUSSELL, ENGLERT, ORSECK,**
   **UNTEREINER & SAUBER LLP**

Lawrence S. Robbins (*pro hac vice*)
Mark T. Stancil (*pro hac vice*)
Gary A. Orseck (*pro hac vice*)
Kathryn S. Zecca (*pro hac vice*)
Ariel N. Lavinbuk (*pro hac vice*)
Donald Burke (*pro hac vice*)
1801 K Street, NW
Washington, D.C.  20006
Telephone: (202) 775-4500
Email:  lrobbins@robbinsrussell.com
        mstancil@robbinsrussell.com
        gorseck@robbinsrussell.com
        kzecca@robbinsrussell.com
        alavinbuk@robbinsrussell.com
        dburke@robbinsrussell.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

16

**CASELLAS ALCOVER & BURGOS P.S.C**
.
By: */s/ Heriberto Burgos Pérez*_____
   Heriberto Burgos Pérez
     USDC-PR 204809
   Ricardo F. Casellas-Sánchez
     USDC-PR 203114
   Diana Pérez-Seda
     USDC-PR 232014
   P.O. Box 364924
   San Juan, PR 00936-4924
   Telephone: (787) 756-1400
   Facsimile: (787) 756-1401
   Email: hburgos@cabprlaw.com
      rcasellas@cabprlaw.com
      dperez@cabprlaw.com

**CADWALADER, WICKERSHAM &
TAFT LLP**

By: */s/ Howard R. Hawkins*_____
   Howard R. Hawkins, Jr. (*pro hac vice*)
   Mark C. Ellenberg (*pro hac vice*)
   Ellen Halstead (*pro hac vice*)
   Thomas J. Curtin (*pro hac vice*)
   Casey J. Servais (*pro hac vice*)*
   200 Liberty Street
   New York, NY 10281
   Telephone: (212) 504-6000
   Facsimile: (212) 406-6666
   Email: howard.hawkins@cwt.com
      mark.ellenberg@cwt.com
      ellen.halstead@cwt.com
      thomas.curtin@cwt.com
      casey.servais@cwt.com

*Counsel for Assured Guaranty Corp and Assured Guaranty Municipal Corp.*

**TORO, COLÓN, MULLET, RIVERA&
SIFRE, P.S.C.**

*s/ Manuel Fernandez-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

*s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

*s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC-PR No. 220,510
E-mail: jvankirk@tcmrslaw.com

P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

*s/ Gregory A. Horowitz*
THOMAS MOERS MAYER*
AMY CATON*
GREGORY A. HOROWITZ*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
        acaton@kramerlevin.com
        ghorowitz@kramerlevin.com
        dbuckley@kramerlevin.com
*(admitted *pro hac vice*)

*Counsel to the Mutual Fund Group*