**Hearing Date:** November 15, 2017, 9:30 a.m. (AST)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

### OMNIBUS REPLY OF NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO THE OVERSIGHT BOARD'S AND AAFAF'S OBJECTIONS TO NATIONAL'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT..............................................................................................................3

I.   THE PENDING PROCEEDING DOCTRINE DOES NOT BAR THE RULE
     2004 DISCOVERY ...........................................................................................3

    A.   The Pending Proceeding Doctrine Is a Court-Made Exception Not
     Supported by the Plain Text of Rule 2004 ...............................................4

    B.   The Pending Proceeding Doctrine Does Not Apply On These Facts ....................6

        1.   The Discovery Sought Does Not Go Squarely to the Subjects in the
          Remaining Adversary Proceedings ...........................................6

        2.   National and Other Creditors Seek to Streamline Discovery, Not to
          Circumvent the Federal Rules...............................................8

    C.   Alternatively, Even Assuming the Pending Proceeding Doctrine Applied
     Here, It Would Not Bar *All* Rule 2004 Discovery ................................10

II.  THERE IS GOOD CAUSE FOR THE RULE 2004 DISCOVERY ...............................10

III. THE OBJECTORS HAVE NOT PROVIDED SUFFICIENT DISCLOSURE...............13

IV.  THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY ........................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Corporacion Insular de Seguros v. Garcia*,
709 F. Supp. 288 (D.P.R. 1989) ............................................................................15

*Doe v. City of San Antonio*,
2014 WL 6390890 (W.D. Tex. Nov. 17, 2014) ....................................................15

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) .................................................................................................6

*In re Analytical Systems, Inc.*,
71 B.R. 408 (Bankr. N.D. Ga. 1987) ...................................................................4, 9

*In re Bennett Funding Group, Inc.*,
203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...................................................................10

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991) ..................................................................11

*In re Countrywide Home Loans, Inc.*,
384 B.R. 373 (Bankr. W.D. Pa. 2008) ....................................................................7

*In re Enron Corp.*,
281 B.R. 836 (Bankr. S.D.N.Y. 2002) ....................................................................5

*In re Glitnir banki hf.*,
2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ..........................................10

*In re International Fibercom, Inc.*,
283 B.R. 290 (Bankr. D. Ariz. 2002) ..............................................................passim

*In re Job P. Wyatt & Sons' Co.*,
2011 WL 5909534 (Bankr. E.D.N.C. July 14, 2011) ..........................................6, 7

*In re M4 Enterprises, Inc.*,
190 B.R. 471 (Bank. N.D. Ga. 1995) ....................................................................10

*In re Martin*,
403 B.R. 359 (Bankr. D.S.C. 2009) .........................................................................7

*In re Mirant Corp.*,
326 B.R. 354 (Bankr. N.D. Tex. 2005) ....................................................................4

*In re Pan American Hospital Corp.*,
2005 WL 2445907 (Bankr. S.D. Fla. Feb. 25, 2005) ..........................................4, 5

*In re Poirier*,
214 B.R. 53 (Bankr. D. Conn. 1997) .......................................................................9

*In re Sun Medical Management, Inc.*,
104 B.R. 522 (Bankr. M.D. Ga. 1989) ....................................................................4

*In re Washington Mutual, Inc.*,
   408 B.R. 45 (Bankr. D. Del. 2009) ......................................................................7

*In re Whitley*,
   2011 WL 6202895 (Bankr. M.D.N.C. Dec. 13, 2011).........................................10

*In re WorldCom, Inc. Securities Litigation*,
   308 F. Supp. 2d 236 (S.D.N.Y. 2004)................................................................6

*In re Youk-See*,
   450 B.R. 312 (Bankr. D. Mass. 2011)..........................................................10, 11

*Melendez-Colon v. U.S.*,
   56 F. Supp. 2d 142 (D.P.R. 1999).....................................................................15

*Sanchez v. Ameriquest Mortgage Co.*,
   372 B.R. 289 (Bankr. S.D. Tex. 2007)................................................................8

*Stern v. Marshall*,
   564 U.S. 462 (2011)...........................................................................................6

*Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*,
   60 F.3d 867 (1st Cir. 1995)..............................................................................15

*Williams v. City of Boston*,
   213 F.R.D. 99 (D. Mass. 2003).........................................................................15

TO THE HONORABLE COURT:

National Public Finance Guarantee Corporation ("National"), a party in interest in these Title III cases, submits this reply (the "Reply") supporting its *Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery* [ECF No. 1177] (the "Motion").[1]

## PRELIMINARY STATEMENT

1.  After National filed its Motion seeking discovery under Bankruptcy Rule 2004 ("Rule 2004"), Puerto Rico was hit by Hurricanes Irma and Maria.  National recognizes the difficulties that Puerto Rico faces due to the effects of the hurricanes, and will continue to work with the Commonwealth and the Oversight Board to facilitate reconstruction, restoration of fiscal health, and a return to the municipal markets.

2.  The information sought in National's Motion will help advance these efforts.  The Oversight Board and AAFAF (together, the "Objectors") have taken the position that these Title III cases should continue "as expeditiously as possible," and that "there are no practical or logistical impediments preventing the adjudication of the vast majority of matters currently pending before the Court."  AAFAF Objection to Stay [ECF No. 1586], at ¶¶ 4, 7; *see also* Oversight Board Objection to Stay [ECF No. 1581], at ¶¶ 1-2, 9 ("The Oversight Board is singularly focused on achieving confirmable Plans as expeditiously as possible...").  Moreover, the Oversight Board has set an aggressive schedule for certifying a revised Fiscal Plan.  *See* October 31, 2017 Oversight Board Press Release, attached hereto as Exhibit A (certification of a revised Fiscal Plan by February 2, 2018).[2]  If these Title III cases are to proceed as expeditiously

---

[1] Capitalized terms not defined in this Reply have the meanings set forth in National's Motion.

[2] In the Objectors' Joint Supplemental Brief Opposing Rule 2004 Discovery [ECF No. 1616] (the "Supplemental Brief"), they repeatedly state that the Oversight Board's press release set a February 23, 2018 target for certification of a revised Fiscal Plan.  *See id.*, Motion at 2; *id.*, Brief

as possible, then the Rule 2004 discovery requested by National remains highly relevant at this time—perhaps even more so.  It is inconsistent and unreasonable for the Objectors to advocate for accelerated adjudication of these proceedings, on the one hand, while refusing to provide the very information needed to advance that adjudication on the other.  Indeed, the best way to achieve the speed and efficiency that the Objectors purportedly seek is through Rule 2004 discovery, which will allow creditors to work with the Objectors on a path forward.  So long as the Objectors intend to "proceed without delay" after the hurricanes (AAFAF Objection to Stay at ¶ 6), they should not be permitted to simultaneously use the hurricanes as a reason for blocking creditors like National from obtaining needed information.

3.    Further, the legal arguments posed by the Objectors to preclude Rule 2004 discovery are without merit.  The doctrine they rely on is wholly inapplicable; they have not made fulsome disclosure; and the deliberative process privilege is inapt.  In fact, the Objectors' overarching argument that Rule 2004 discovery should be denied because the creditors already "know enough" about the Commonwealth's finances—despite the continuing lack of transparency—begs the question of what the Objectors are trying to hide and further illustrates the need for Rule 2004 discovery.

4.    Even though the Objectors use inflammatory language to describe the Rule 2004 discovery as "oppressive" and "abusive,"[3] the discovery's purpose is to accelerate the path toward confirmation by allowing creditors to understand *now* what the Commonwealth is

---

at 2.  But the date contained in the actual press release at the link the Objectors provide in their Supplemental Brief—and in Exhibit A—is February 2, 2018, a still more aggressive date.

[3] *See, e.g.*, Oversight Board's Omnibus Objection to Rule 2004 Discovery [ECF No. 1345], at 2 (the "OB Objection"); AAFAF Joinder to Omnibus Objection to Rule 2004 Discovery [ECF No. 1582], at 2.

proposing, so that they can meaningfully participate in these cases.  Waiting for a plan of adjustment, as the Objectors urge (quite inconsistently with their call for expedited proceedings), would just hamper cooperation and delay inevitable discovery.  For the reasons set forth below, National respectfully requests that the Court grant its Motion in its entirety.

## ARGUMENT

## I.  THE PENDING PROCEEDING DOCTRINE DOES NOT BAR THE RULE 2004 DISCOVERY

5.   The Objectors argue that the pending proceeding doctrine bars use of Rule 2004 discovery "when an adversary proceeding already is pending," and as such National "can no longer avail itself of Rule 2004."  OB Objection at 17-26.  This argument mischaracterizes the nature and application of the pending proceeding doctrine.

6.   At the outset, it should be noted that the Fiscal Plan adversary proceeding[4] is no longer pending.  *See* Order Dismissing Case and Cancelling Oral Argument, Case No. 17-00125 [ECF No. 109].  This undermines the Objectors' assertion that the pendency of this adversary proceeding precludes Rule 2004 discovery.  While they argue that this dismissal was "strategic" and does not impact the analysis, Supplemental Brief at 5-6, the fact is that National dismissed the proceeding to allow the Commonwealth to focus on recovering from the hurricanes.  Since the Objectors have now indicated that they intend to move forward with these Title III cases on a fast-track basis—in spite of the hurricanes—National and other creditors require the information needed to meaningfully participate in that process.

7.   Beyond that, the Objectors' argument fails for at least three independent reasons.  *First*, the Objectors ask this Court to adopt a doctrine as though it were grounded in the

---

[4] *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*, Case No. 17-00125.

text of Rule 2004 and universally accepted—which it is not.  *Second*, even if this Court were to accept the validity of this extra-textual doctrine, it does not apply in these circumstances.  *Finally*, even if this Court were to conclude that the pending proceeding doctrine is both valid and applicable, it would not operate to bar *all* Rule 2004 discovery, as the Objectors contend.

A.    **The Pending Proceeding Doctrine Is a Court-Made Exception Not Supported by the Plain Text of Rule 2004**

8.    Although the Objectors claim that the pending proceeding doctrine is "beyond question," OB Objection at 17, this doctrine is neither mandated by the language of Rule 2004, nor accepted by all courts.  "Generally, when construing a bankruptcy rule, the court should look to its plain language."  *In re Mirant Corp.*, 326 B.R. 354, 356 (Bankr. N.D. Tex. 2005).  Rule 2004 plainly and broadly reads: "On motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  Rule 2004 does not impose ***any*** limitations or restrictions related to pending proceedings—much less the "preclusive effect" suggested by the Objectors.  *See id.*; *see also In re Mirant Corp.*, 326 B.R. at 356-57 ("Rule 2004 contains no exceptions. … Th[e] language is not limited to exclude instances where litigation is, or may soon be, pending, though the drafters of the rule might easily have so provided.").

9.    Consistent with the plain language of Rule 2004, courts have rejected the pending proceeding doctrine.  For instance, the *Mirant* court declined to invoke what it described as "a court-made exception to the plain language of Rule 2004."  326 B.R. at 356-57.  And other courts have similarly rejected the pending proceeding doctrine.  *See, e.g.*, *In re Analytical Sys., Inc.*, 71 B.R. 408, 413 (Bankr. N.D. Ga. 1987) ("The fact that there is pending litigation between the parties is not relevant to a decision to allow a Rule 2004 examination."); *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002) ("[T]he court holds the ultimate discretion whether to permit the use of Rule 2004, and courts have for various reasons done so despite the

existence of other pending litigation."); *In re Sun Med. Mgmt., Inc.*, 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989) (allowing Rule 2004 discovery where it was in aid of pending litigation); *In re Pan Am. Hosp. Corp.*, 2005 WL 2445907, at *3 (Bankr. S.D. Fla. Feb. 25, 2005) (recognizing that some courts have applied the doctrine, but stating that its "blind invocation … elevates form over substance"). Thus, far from being "beyond question," the pending proceeding doctrine has not only been questioned, but has also been rejected by a number of courts.

10.     The Objectors attempt to bolster this extra-textual doctrine in two ways. First, they claim that the pending proceeding doctrine is "explicitly incorporated" into Puerto Rico Local Bankruptcy Rule 2004-1. OB Objection at 17. But that is not what the Local Rule says. Rather, it advises that Rule 2004 is "inapplicable *to pending adversary proceedings and contested matters*." P.R. LBR 2004-1 (emphasis added). National's Motion seeks Rule 2004 discovery in these Title III cases—not in a pending adversary proceeding or contested matter— so this Local Rule does not bar the requested relief.[5]

---

[5] As the Objectors admit, National has not actually taken discovery in the adversary proceedings still pending, and discovery is stayed. *See* OB Objection at 2, 9. Yet the Objectors incongruously argue that the Rule 2004 discovery is duplicative of such nonexistent discovery, and that the discovery stay is irrelevant to the pending proceeding doctrine's applicability. *See id.* at 20, 22-26. In fact, the discovery stay further supports ***not*** applying the pending proceeding doctrine here. *See In re Int'l Fibercom*, 283 B.R. at 293 (granting Rule 2004 motion where discovery was stayed in pending proceedings, because applying pending proceeding doctrine in that circumstance "would be adverse to the purpose underlying the Bankruptcy Rule 2004" and would perpetuate an "information deficit" created by the stay).

While the Objectors rely on *Enron*, that case was readily distinguished in this precise context by the *International Fibercom* court. *See id.* ("[The objector's] only authority in which discovery had been stayed is *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002). … [T]he court [in *Enron*] denied the 2004 order not because of the other pending litigation, but because the proponents of the discovery 'have not satisfied th[e] threshold inquiry' that the discovery is proper under Rule 2004." (quoting *In re Enron Corp.*, 281 B.R. at 842)).

11.     Second, the Objectors argue that although the pending proceeding doctrine lacks textual support, it should be accepted under the canon against superfluity.  *See* OB Objection at 18.  Canons of interpretation should be resorted to only if the text is unclear.[6]  Here, because the text of Rule 2004 is clear, it does not "leave[] any room for the canon [against superfluity]." *Stern*, 564 U.S. at 478.  This Court retains discretion to order Rule 2004 discovery.

**B.     The Pending Proceeding Doctrine Does Not Apply On These Facts**

12.     Even if this Court were to accept the pending proceeding doctrine as a general matter, it would not apply here for two reasons:  First, the doctrine only applies where the requested Rule 2004 discovery goes squarely to subjects at issue in the pending proceeding, which is not the case here.  Second, the doctrine only applies where the moving party seeks to circumvent the procedural safeguards of the Federal Rules, which is certainly not National's aim.

1.     *The Discovery Sought Does Not Go Squarely to the Subjects in the Remaining Adversary Proceedings*

13.     By representing that Rule 2004 discovery is "barred when an adversary proceeding already is pending," OB Objection at 17, the Objectors oversimplify the pending proceeding doctrine.  In fact, it does not automatically trigger whenever an adversary proceeding is pending; it applies (if at all) only in limited circumstances.  For one, it only applies where the Rule 2004 discovery sought goes "squarely to issues involved in the [pending proceeding]," *not* when "*information on other aspects of a relationship or transaction is sought*." *In re Job P. Wyatt & Sons' Co.*, 2011 WL 5909534, at *2 (Bankr. E.D.N.C. July 14, 2011) (emphasis added).

---

[6] *See In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 244 (S.D.N.Y. 2004) ("It is well established that statutory construction must begin with the plain text, and, where the statutory language provides a clear answer, it ends there as well." (quotation omitted) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)); *Stern v. Marshall*, 564 U.S. 462, 478 (2011) (where text is clear, canon of interpretation is not used).

In other words, the doctrine does not apply where the information sought via Rule 2004 is different and broader in scope than the adversary proceedings.

14.     Here, the Rule 2004 discovery undeniably has a different and broader scope than any of the remaining adversary proceedings, and as such it does not go squarely to the issues in those cases.[7]  *See In re Job P. Wyatt & Sons' Co.*, 2011 WL 5909534, at *2.  In similar circumstances, courts have allowed Rule 2004 discovery and declined to apply the pending proceeding doctrine.  *See, e.g.*, *In re Int'l Fibercom*, 283 B.R. at 292 (granting Rule 2004 motion where the discovery sought was different and broader than that of the pending litigation, which was "precisely in line with the purpose of Rule 2004"); *In re Martin*, 403 B.R. 359, 362 (Bankr. D.S.C. 2009) (granting Rule 2004 motion where the discovery sought was different and broader than in adversary proceeding); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 401 (Bankr. W.D. Pa. 2008) (concluding that a pending contested matter did not preclude Rule 2004 discovery because "the Rule 2004 examination is *broader in degree* than that which is sought … in the underlying contested matter" (emphasis added)).

15.     The reasoning of these cases applies with particular force because: (1) the Fiscal Plan adversary proceeding has been dismissed, eliminating any overlap that allegedly existed with that case; and (2) National has not taken any discovery in the remaining adversary proceedings, and discovery is stayed.  *See supra* n. 5.

---

[7] To the extent there is any overlap between the Rule 2004 discovery and the narrower adversary proceedings, conducting this much-needed discovery now will obviate the need to produce piecemeal discovery to different parties later, resulting in significant efficiencies and furthering the Objectors' stated goal of expediency.

2.    *National and Other Creditors Seek to Streamline Discovery, Not to Circumvent
the Federal Rules*

16.    The pending proceeding doctrine also only applies when the moving party seeks to circumvent the procedural safeguards of the Federal Rules.  *See In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure."); *In re Int'l Fibercom*, 283 B.R. at 292 (same).  While the Objectors recognize this requirement in claiming that National desires to "use Rule 2004 as a back door to circumvent the [Federal Rules]," OB Objection at 24, their unsupported claim is totally inaccurate.

17.    Although the Objectors claim that National seeks to circumvent the discovery stay in the remaining adversary proceedings, OB Objection at 20, they do not otherwise identify what procedural safeguards National purportedly seeks to circumvent via its Motion, or why.  And, as discussed in Footnote 5 *supra*, the discovery stay actually counsels *in favor* of Rule 2004 discovery.  *See In re Int'l Fibercom*, 283 B.R. at 293.

18.    More importantly, National's purpose is plainly *not* to circumvent any procedural safeguards.  Ordinarily a debtor would voluntarily produce the sort of financial information requested here, without the need for formal discovery.[8]  But National and other creditors have been forced to use Rule 2004 in order to obtain the necessary information.[9]  *See* Motion at ¶¶ 3-6, 10-18; Joint Motion for Order Authorizing Rule 2004 Examination [ECF No.

---

[8] *See Sanchez v. Ameriquest Mortg. Co.*, 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007) ("The three most important words in the bankruptcy system are: disclose, disclose, disclose."); *id.* at 297 ("[E]very entity involved in a bankruptcy proceeding must fully disclose all relevant facts.").

[9] Similarly, the ERS bondholders were forced to file a motion to compel in an attempt to obtain the necessary information from the Commonwealth in the context of an adversary proceeding. *See* Defendants' Motion to Compel Production of Documents, Case No. 17-00213 [ECF No. 38].

1178], at 1-2, 4-5, 15 (the "Joint Motion").  The large number of creditors involved in these requests demonstrates that there is in fact a significant disclosure and transparency problem— one that this Court should not condone.[10]  The creditors seek to resolve this problem with efficient and expeditious Rule 2004 discovery; such discovery would allow creditors to meaningfully participate in these cases, and would avoid the unnecessary difficulties associated with delaying discovery (as well as potential objections).

19.    The efficient discovery process contemplated in National's Motion— whereby information would be shared now with creditors in a uniform, orderly manner—is another factor weighing in favor of Rule 2004 discovery.  *See In re Int'l Fibercom*, 283 B.R. at 293-94 (granting Rule 2004 discovery and noting that the discovery could accordingly be shared with other parties in the pending proceeding); *see also In re Poirier*, 214 B.R. 53, 58 (Bankr. D. Conn. 1997) (Rule 2004 "guarantee[s] the orderly, efficient, and fair administration of justice"); *In re Analytical Sys.*, 71 B.R. at 410 (granting rule 2004 discovery and noting that "[a]n efficient and full discovery process is particularly important in a bankruptcy proceeding").  Given the Objectors' express desire to move forward with these Title III cases as quickly as possible, all parties' objectives would appear to be best served by Rule 2004 discovery, as it would facilitate cooperation and enable all parties to understand the Fiscal Plan.[11]

---

[10] *See* Motion at ¶ 4 & n.5 (citing this Court's recognition that "transparency is important in these proceedings" and its hope that the Commonwealth would make "progress on issues relating to the disclosure of information to creditors").

[11] The Objectors argue that Rule 2004 discovery is unnecessary because a plan of adjustment has not yet been proposed.  OB Objection at 2, 6.  However, any plan of adjustment must accord with the Fiscal Plan, so this distinction is meaningless.  Denying discovery based on this argument would only delay the inevitable and hamper the resolution of creditors' potential objections to the Fiscal Plan—in other words, it would contravene the Objectors' stated goal.

9

### C.   Alternatively, Even Assuming the Pending Proceeding Doctrine Applied Here, It Would Not Bar *All* Rule 2004 Discovery

20.     As explained above, the pending proceeding doctrine is not binding on this Court, and at any rate it does not apply on these facts.  But even if this Court were to conclude otherwise—with respect to both points—that would still not be reason to deny Rule 2004 discovery outright.  The Objectors appear to argue that this doctrine completely precludes any Rule 2004 discovery.[12]  In fact, even where the pending proceeding doctrine is applied, any Rule 2004 discovery unrelated to the pending proceeding remains fair game.  *See, e.g.*, *In re Glitnir banki hf.*, 2011 WL 3652764, at *4 n.11 (Bankr. S.D.N.Y. Aug. 19, 2011) ("The 'pending proceeding' rule does not prevent parties in interest from using Rule 2004 to obtain unrelated discovery.").  Thus, even assuming the pending proceeding doctrine applied (and it does not), it would not justify the complete denial of any Rule 2004 discovery.  At most, if this Court were to apply the pending proceeding doctrine, it would result in the tailoring of the Rule 2004 discovery to those requests not deemed to overlap with the remaining pending proceedings.[13]

## II.   THERE IS GOOD CAUSE FOR THE RULE 2004 DISCOVERY

21.     The Objectors oppose Rule 2004 discovery on the ground that it is unnecessary and would be unduly burdensome.[14]  If Rule 2004 discovery is objected to, the

---

[12] *See, e.g.*, OB Objection at 17, 18, 26.

[13] Based on a 20-year-old case that dealt with materially different facts, the Objectors argue that the Rule 2004 discovery is precluded because the Commonwealth's finances are complex.  OB Objection at 22-23 (citing *In re Bennett Funding Grp., Inc.*, 203 B.R. 24 (Bankr. N.D.N.Y. 1996)).  But in *Bennett Funding*, "the clear wording of the subpoena" directly related to the adversary proceeding.  203 B.R. at 29.  *Bennett Funding* is inapt because, among other things, the Rule 2004 discovery here does not go squarely to the adversary proceedings.

[14] To the extent the Objectors argue the Rule 2004 discovery is overbroad, OB Objection at 3-4, such an objection is improper here.  *See, e.g.*, *In re Whitley*, 2011 WL 6202895, at *2 (Bankr. M.D.N.C. Dec. 13, 2011) (over-breadth objection to Rule 2004 discovery "does not present a

10

moving party must show good cause, which requires a balancing of the importance of the issues being investigated against the burden of discovery on the target.[15]  *In re Youk-See*, 450 B.R. at 320 (movant must show that "examination is reasonably necessary for the protection of its legitimate interests" (quotation omitted)).  Here, this balancing test strongly favors discovery.

22.     *First*, the necessity of the Rule 2004 discovery—which is critical to the efficient and transparent administration of these matters—cannot be overstated.  As discussed *supra*, providing the creditors with the necessary information at this juncture would serve all parties' interests; this is particularly true given the Objectors' stated desire to advance these Title III cases on a fast-track basis.  On the other hand, delaying inevitable discovery until after a plan of adjustment is proposed would impede the fair and expeditious resolution of these matters, reduce the chance of cooperation, and needlessly keep creditors in the dark.

23.     The Objectors respond that Rule 2004 discovery is unnecessary because the creditors already "know enough" about the Commonwealth's finances, as purportedly shown by the filing of adversary complaints.  OB Objection at 3, 5, 7, 19; Supplemental Brief at 3, 5-6.  Yet, just because the creditors were able to identify *legal* deficiencies in the Fiscal Plan does not mean that they understand and have sufficient information about the *factual* information underlying it—*i.e.*, the Fiscal Plan's critical assumptions, projections, and methodology.  Any path forward must involve information-sharing that allows creditors to factually investigate the

---

valid reason for limiting [discovery]"); *In re M4 Enters., Inc.*, 190 B.R. 471, 474 (Bank. N.D. Ga. 1995) (same).  To the extent they argue the Rule 2004 discovery is duplicative or requires an unreasonably fast response, OB Objection at 2, these issues can be addressed at meet and confers as appropriate, and certainly do not justify denying discovery outright.

[15] The Objectors appear to argue that National, in its Motion, failed to meet its burden of establishing good cause.  *See* OB Objection at 18, 26-27.  But this showing is not required unless and until the discovery is objected to.  *See In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass. 2011).  As such, National did not fail to meet any burden in its Motion.

Objectors' legal claim that the Fiscal Plan is reasonable.  Further, Rule 2004 discovery is not just about obtaining information to file a complaint, as the Objectors urge.  Instead, it is about holistically understanding the debtor's financial condition.  *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." (quotation omitted)).  It is telling that the Objectors would deny even the most basic information while claiming that the creditors already "know enough."

24.     The Objectors also argue that the Rule 2004 discovery is "irrelevant and moot" after the hurricanes, because a revised Fiscal Plan will differ from the prior one.  Supplemental Brief at 3-4.  This argument has several fatal flaws.  At the outset, it completely overlooks the fact that numerous requests do not concern the Fiscal Plan.  And for those requests that do, information about the prior Fiscal Plan remains relevant as an important baseline for the creditors to understand any revisions thereto.[16]  The creditors must be able to assess how the Commonwealth is now accounting for the hurricanes.  Moreover, the methodology underlying the prior Fiscal Plan is important to understanding a revised plan, contrary to the Objectors' argument that the methodology is irrelevant because it "may well change."  Supplemental Brief

---

[16] The requests relating to the plan remain relevant even assuming some numbers and inputs change.  As an example, Request 38 relates to the Reconciliation Adjustment, which will likely be included in any revised plan without meaningful change resulting from the hurricanes.  And any potential plan revisions will not change the Commonwealth's underlying financial condition, which is a general subject of the Rule 2004 discovery.

at 4. According to the Objectors' self-serving argument, discovery into the Fiscal Plan should be precluded so long as the methodology might change at some future time.[17]

25.    *Second*, the Rule 2004 discovery is not unduly burdensome, but rather seeks the same type of information that creditors typically seek in these circumstances.  To minimize any burden, the creditors intend to coordinate with one another in the discovery process, as they have done thus far.  *See* Motion at 1, 16; Joint Motion at 3.  Such cooperation and shared discovery will yield efficiencies for both the parties and the Court.

## III.    THE OBJECTORS HAVE NOT PROVIDED SUFFICIENT DISCLOSURE

26.    National appended to its Motion a detailed declaration from its financial advisor, which described the continuing deficiencies in the disclosure by the Objectors.  *See generally Declaration of James Baird*, ECF No. 1177-1.  Tellingly, the Objectors did not respond with any contrary statements from a financial advisor declarant, but rely instead on unadorned, lawyer-driven assertions that they have made "substantial" and "extensive" disclosure.[18]  OB Objection at 27-29.  The Objectors' position is contrary to the facts.

27.    First, the Objectors claim they made "[d]etailed responses" to requests for information on April 11, June 26, and July 31, 2017.  *See* OB Objection at 12-15.  Yet, the information provided on those occasions was neither detailed nor complete—it did not even attempt to answer all the questions posed by National's financial advisor, and many of the responses received were limited and vague.  As an example, National's advisor requested a

---

[17] National acknowledges that some of the numbers and inputs may change, but any such new information should be shared by the Commonwealth as it becomes available—not postponed until after a plan is finalized and a plan of adjustment is proposed.

[18] The Objectors also reference purported disclosure in the context of mediation, where National is limited in responding by its confidentiality obligations.

breakdown of collection rates for five different categories of taxes, which together represent the majority of the Commonwealth's revenue and therefore are of critical importance in these proceedings. The response addressed only *one* of the five requested categories.

28.     Second, the Objectors claim that a "live macroeconomic growth model" was provided, which allows "all interested parties [to] manipulate the assumptions to generate their own output." OB Objection at 27. The Objectors exaggerate the utility of the model they provided—it was artificially simplified and lacked multiple layers of information, rendering an audit impossible. Finally, the Objectors claim they have provided sufficient information related to Ernst & Young's Bridge Analysis. OB Objection at 28-29. That is inaccurate: the presentation they reference was viewed by National's financial advisor and did not appear to provide any further information about the Bridge Analysis or answer any of National's requests.

29.     In fact, the Commonwealth continues to inconsistently dribble out information rather than providing what is needed, in an apparent attempt to stall creditors. The Objectors' complaints about the burden of discovery are belied by the recent report of Kobre & Kim LLP, the Oversight Board's independent investigator. The Oversight Board has separately authorized an investigation into many of the very same topics for which it now attempts to block Rule 2004 discovery. *See* Independent Investigator's First Interim Report, attached hereto as Exhibit B, at ¶ 14. To serve the Objectors' own interests, this investigator was immediately provided with "voluminous documents and materials" and "substantial facts and evidence" of the same type that the creditors have long struggled to obtain. *Id.*, ¶¶ 19-22. What burden would it be to provide copies of the same to creditors? The Objectors' refusal to do so is stark evidence of the Oversight Board's true motives, and illustrates the urgent need for Rule 2004 discovery.

## IV.   THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY

30.   Without identifying which of National's requests—let alone which documents—are purportedly subject to the deliberative process privilege, the Objectors claim that "[m]any of Movants' requests strike at the core of the deliberative process privilege." OB Objection at 30. Even if true, this would not be a reason to deny Rule 2004 discovery, because privilege claims should be asserted and resolved during the discovery process. But the Objectors also cannot pass the hurdles necessary to invoke the deliberative process privilege.

31.   *First*, the deliberative process privilege only applies when the materials in question are pre-decisional and deliberative; "factual statements or post-decisional documents explaining or justifying a decision already made are not shielded." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884-85 (1st Cir. 1995). "Moreover, any factual material that can be reasonably severed from deliberative material is discoverable." *Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288, 296 (D.P.R. 1989). Although it is not clear what the Objectors seek to claim privilege over, the numbers, assumptions, models, forecasts, analyses, and data they reference are all factual, and therefore not covered by this privilege. *Second*, "[i]t is universally recognized that the deliberative process privilege is qualified and not absolute, and that the courts 'are obliged to balance conflicting interests on a case-by-case basis.'" *Williams v. City of Boston*, 213 F.R.D. 99, 100 (D. Mass. 2003) (citation omitted). Thus, even if a document is pre-decisional and deliberative, it may be subject to disclosure based on certain factors, including: (1) the relevance of the evidence; (2) the availability of other evidence; and (3) the presence of issues concerning alleged governmental misconduct. *See Doe v. City of San Antonio*, 2014 WL 6390890, at *2 (W.D. Tex. Nov. 17, 2014). All three factors weigh strongly in favor of discovery. First, as discussed above, the evidence is highly relevant to these proceedings. Second, the evidence is not available elsewhere; National and other creditors have

nowhere else to turn.[19]  Finally, there are issues concerning improper treatment of creditors by the Commonwealth.[20]  The deliberative process privilege does not apply in these circumstances. And to the extent the Objectors believe in good faith that it does apply to certain documents— which they have thus far failed to identify—those documents should be logged so that the creditors and the Court can evaluate their claim.

---

[19] *See Melendez-Colon v. U.S.*, 56 F. Supp. 2d 142, 146 (D.P.R. 1999) (rejecting deliberative process privilege claim where "Defendant is the only party with information and evidence").

[20] Along these lines, discovery is further favored where the nature of the decision-making process is itself the subject of the litigation, as here.  *Williams*, 213 F.R.D. at 102.

**WHEREFORE,** National respectfully requests authority to direct the examination of witnesses and the production of documents pursuant to Bankruptcy Rule 2004 as set forth in National's Motion and consistent with the Proposed Order attached thereto, and that National be granted such other and further relief as is just.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 7th day of November, 2017.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this reply was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

Dated: November 7, 2017
        San Juan, Puerto Rico

                                    */s/ Eric Pérez-Ochoa*
                                    Eric Pérez-Ochoa (USDC-PR No. 206314)
                                    Luis Oliver-Fraticelli (USDC-PR No. 209204)
                                    Alexandra Casellas-Cabrera (USDC-PR. No. 301010)
                                    Lourdes Arroyo-Portela (USDC-PR No. 226501)

                                    **ADSUAR MUÑOZ GOYCO**
                                    **SEDA & PÉREZ-OCHOA, P.S.C.**
                                    208 Ponce de León Avenue, Suite 1600
                                    San Juan, Puerto Rico 00936
                                    Telephone: 787. 756.9000
                                    Facsimile: 787. 756.9010
                                    Email: epo@amgprlaw.com
                                           loliver@amgprlaw.com
                                           acasellas@amgprlaw.com
                                           larroyo@amgprlaw.com

                                    – and –

Marcia Goldstein
Jonathan Polkes
Salvatore A. Romanello
Gregory Silbert
Kelly DiBlasi
Gabriel A. Morgan
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:  marcia.goldstein@weil.com
        jonathan.polkes@weil.com
        salvatore.romanello@weil.com
        gregory.silbert@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corporation*