**Hearing Date:** November 15, 2017, 9:30 a.m.

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

### AMBAC ASSURANCE CORPORATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

- i -

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding by Section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Ambac Assurance Corporation ("Ambac") respectfully submits this reply in further support of its motion (the "Motion") for entry of an order, substantially in the form attached thereto as Exhibit A (the "Proposed Order"), to take discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"); (ii) the Commonwealth; and (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and approving procedures to take related discovery from other parties.

In further support of the Motion and in reply to the Debtors' Omnibus Objection filed on September 19, 2017 (Dkt. No. 1345) (the "Omnibus Objection"), the Debtors' Objection to Motions for Orders Authorizing Rule 2004 Discovery filed on September 29, 2017 (Dkt. No. 1380), AAFAF's Objection filed on October 31, 2017 (Dkt. No. 1582) (collectively, the "Objections"), and the Debtors' and AAFAF's Joint Proposed Supplemental Memorandum of Law in further support of the Omnibus Objection (Dkt. No. 1616), Ambac respectfully states as follows:

**A.      Rule 2004 Discovery Is Necessary In Order To Allow Ambac To Meaningfully Participate In the Resolution Of These Title III Cases.**

1.      Rule 2004 of the Bankruptcy Rules is aimed at allowing examination relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. § 2004(b).

2.      "The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711

(Bankr. S.D.N.Y. 1991).  Courts have found that creditors may obtain discovery into matters regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Hilsen*, 2008 WL 2945996, at *4 (defining Rule 2004 examinations to extend to "the acts, conduct, or property and financial condition of the debtor, or to any matter that may affect the administration of the debtor's estate or the debtor's right to a discharge"); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).

3.  As set forth more fully in the Motion, Ambac has demonstrated good cause to be granted a Rule 2004 investigation. *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017) (in assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination").  Ambac unquestionably qualifies as a party in interest and is entitled to information regarding the state of the Commonwealth's finances.  Ambac is also contractually entitled to this information under the financing documents related to its financial guaranty insurance policies.  For years, the Commonwealth has rejected Ambac's efforts to obtain this information, preventing Ambac from enforcing its contractual rights.

4.  Most importantly, Ambac has a fundamental interest in key financial information concerning the Commonwealth's financial condition and fiscal plan.  Courts have found that financial information about the debtor, its assets and liabilities, and its projected revenues and

expenses are appropriate subjects of a Rule 2004 request. *See*, *e.g.*, *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors[.]"). In addition, and contrary to assertions in the Objections that the Rule 2004 requests relating to potential plans of adjustment are premature and pretextual, *see, e.g.,* Omnibus Objection at 6, Rule 2004 examinations may extend to matters relevant to "the formulation of a plan." *In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017).

5. Without this information, Ambac cannot accurately evaluate and react to any restructuring proposals made by the Debtor, including in connection with any proposed plan of adjustment. As such, the Motion should be granted.

**B. In Light of Hurricanes Maria and Irma, Ambac Requires This Information More Than Ever.**

6. In its proposed Joint Proposed Supplemental Memorandum, the Debtor and AAFAF maintain that good cause does not exist to allow a Rule 2004 examination in light of Hurricanes Maria and Irma, stating that the revenue and expense projections sought will be different than those underlying any revised fiscal plan.

7. Despite these concerns, the majority of information sought in the Motion has not changed. While Ambac acknowledges that there may be additional revenue and expense information in light of any revised fiscal plan, the underlying financial information remains the same. Furthermore, Ambac and other creditors need to understand the models and methodologies used by the Commonwealth in formulating a fiscal plan.

8. Discovery of historical financial information that sheds light on the financial condition of the debtors, as well as the Commonwealth's models and methodologies, remains relevant, and indeed, fundamental to Ambac's ability to evaluate any restructuring proposals.

- 3 -

9. Creditor access to such information is a fundamental tenet of PROMESA and Puerto Rico law. Both Titles III and VI of PROMESA provide that creditors are entitled to information that enables them to make informed decisions about potential restructurings. *See, e.g.*, PROMESA §§ 206(a), 301(a), 601(f). In addition, the Puerto Rican government has taken steps to ensure that citizens have access to information about public entities such as AAFAF, the Oversight Board, and the Commonwealth itself. *See, e.g.*, 32 L.P.R.A. § 1781 (granting citizens the right to inspect and copy any public documents, subject to certain exceptions).

10. The recently-canceled $300 million contract between PREPA and Whitefish Energy Holdings emphasizes the need for Rule 2004 discovery to understand the procedures and methodologies employed by the Commonwealth. In recent weeks, a number of parties, including stakeholders in these Title III proceedings, have raised the many suspicious circumstances surrounding the Whitefish contract, including the fact that numerous provisions in the contract were unfavorable to PREPA, the apparently incorrect representation by PREPA that the PROMESA board and FEMA had approved the Whitefish contract, and suggestions that the selection of Whitefish may have been the result of political favoritism. *See, e.g., UCC's Urgent Motion of Official Committee of Unsecured Creditors for Order, Under 11 U.S.C. § 1103 and Bankruptcy Rule 2004, Authorizing Discovery with Respect to PREPA Engagement of Whitefish Energy Holdings, LLC* (Case No. 17-4780, Dkt. No. 364).

11. The process behind the selection of Whitefish and the subsequent cancellation of the contract clarifies the need for transparency in order to ensure that any proposed plan of adjustment does all that is reasonably possible to maximize creditor recoveries. *See Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942) (finding that a municipal debtor's plan of adjustment may be approved only upon a factual finding that the recovery proposed for

creditors is "the maximum that the [debtor] could reasonably pay"); *see also* 6 Collier 943.03[1][f][i] ("A plan under chapter 9 is fair and equitable if the amount to be received by the bondholders is all that they can reasonably expect in the circumstances." (quotation marks omitted)).

C.   **The Pending Proceeding Rule Does Not Apply.**

12.   Ambac has initiated one adversary proceeding within these Title III cases and served discovery requests that are designed to address the claims therein.  *See Ambac Assurance Corp. v. Commonwealth of Puerto Rico & HTA, et al.*, No. 17-ap-159.  The Oversight Board argues that the mere fact that an adversary proceeding is pending bars Ambac from seeking Rule 2004 discovery.  Omnibus Obj. at 17.  This is wrong.

13.   The pending proceeding rule does not provide grounds to deny the Motion.  As a preliminary matter, while the Oversight Board maintains that the pending proceeding rule has been "explicitly incorporated into the Puerto Rico Bankruptcy Rules," *see id.*, the rule cited by the Oversight Board merely provides that Rule 2004 is inapplicable to adversary proceedings and contested matters.  The Oversight Board cites no other legal support for its proposition that the pending proceeding rule has been broadly adopted by the First Circuit.

14.   Further, even if this Court concludes that the pending proceeding rule has been adopted in the First Circuit, existing exceptions to the pending proceeding rule render it inapplicable here.

15.   Courts have recognized that "aggressive application of the 'pending proceeding' rule may prevent legitimate Rule 2004 examinations on matters wholly unrelated to the pending proceeding, thereby interfering with the trustee's fiduciary duty to maximize estate assets." *In re Washington Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009).  Accordingly, while "discovery of evidence related to the pending proceeding must be accomplished in accord with more restrictive

provisions of the Federal Rules of Bankruptcy Procedure, . . . unrelated discovery should not be subject to those rules simply because there is an adversary proceeding pending." *In re Washington Mut., Inc.*, 408 B.R. at 51; *see also In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply"); *In re M4 Enters., Inc.*, 190 B.R. 471, 475 n. 4 (Bankr. N.D. Ga. 1995) (finding that the 2004 examination did not relate to the pending adversary proceeding and thus the 'pending proceeding' rule did not apply).

16. The relevant inquiry, therefore, is whether the "*primary* purpose in the Rule 2004 examination/production is to further the administration of the bankruptcy case or to aid its pending state court litigation." *In re Ramadan*, 2012 WL 1230272, at *3 (Bankr. E.D.N.C. Apr. 12, 2012).

17. Ambac's information requests in the Motion are narrowly focused, targeting specific information needed to better understand the Commonwealth's finances. The fact that some of the Rule 2004 requests contain certain similarities to the HTA requests does not establish that the relief sought here is a pretext for discovery in the adversary proceeding.[2]

18. In fact, Ambac's primary purpose in seeking discovery pursuant to Rule 2004 is to allow it to evaluate both the Commonwealth's financial condition and any restructuring proposals made by the Commonwealth in order to further the administration of the bankruptcy case. Therefore, the pending proceeding doctrine is inapplicable here.

---

[2] While the Oversight Board claims that discovery has been stayed in the HTA proceeding, a review of the docket reveals no such order. The court did state that it "will not issue further pre-trial discovery orders while [the motion to dismiss] is pending, unless so requested by a party to the above-captioned case." *Ambac Assurance Corp. v. Commonwealth of Puerto Rico & HTA, et al.*, No. 17-ap-159 (Dkt. No. 68). Nowhere does the court indicate that it intended discovery to stop.

**D.** **The Deliberative Process Privilege Does Not Apply.**

19. The Oversight Board asserts that many of the documents sought in the Motion are protected by the deliberative process privilege. However, the vast majority of the information covered by Ambac's requests is factual in nature or statements designed to explain and justify a decision already made, which fall well outside the scope of this privilege. The deliberative process privilege is not implicated here.

20. To qualify for the deliberative process privilege, a document must be both predecisional and deliberative. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). Predecisional means that a document is "antecedent to the adoption of agency policy." *Id.* (quoting *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988)). A document qualifies as deliberative if it "(i) form[s] an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559 (1st Cir. 1990) (quoting *National Wildlife Fed'n*, 861 F.2d at 1118-19).

21. The privilege is designed to protect deliberations, not facts. *Town of Norfolk v. U.S. Army Corp. of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) ("[F]actual information that may be segregated from the rest of the document is not protected by the privilege."); *see also Melendez-Colon v. U.S.*, 56 F. Supp. 2d 142, 145 (D.P.R. 1999) ("Further, factual statements or documents that are post-decisional and explain or justify a decision already made do not fall within the privilege."). And where "the decision-making process itself is the subject of the litigation, it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information." *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003).

22. Here, Ambac's requests are narrowly tailored and do not seek advisory opinions, recommendations or deliberations comprising part of a process by which a governmental decision or policy was formulated.

23. Ambac's requests are concerned with *facts*, not opinions. Ambac seeks the factual underpinnings of the Fiscal Plan in order to be able to intelligently evaluate any proposed plan of adjustment. The Oversight Board itself admits that the financial inputs into the Fiscal Plan are not subject to the privilege. *See* Omnibus Obj. at 30.

24. Additionally, Ambac's requests are not targeted at documents that could be deemed predecisional. For instance, requests that seek information about essential services, estimated payroll expenses, and/or estimated operational expenses, are not inherently antecedent to the adoption of any agency policy. Rather, those are basic financial and operational data that would be generated in the ordinary course irrespective of any particular agency decision-making.

25. Accordingly, Ambac's Rule 2004 requests are not shielded from disclosure by the deliberative process privilege.

26. However, even if the court were to find any of Ambac's requests to be targeted at documents that are both predecisional and deliberative, it is "universally recognized that the deliberate process privilege is qualified and not absolute, and that the courts 'are obliged to balance conflicting interests on a case-by-case basis.'" *Williams*, 213 F.R.D. at 100; *see also Texaco*, 60 F.3d at 885 (listing "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government" as factors that courts should consider). These Title III cases have massive implications for the Commonwealth of Puerto Rico, its people, and its creditors. Transparency and openness regarding the financial condition of the debtor is in the public's best interest.

**E.  The Information Provided By The Oversight Board Is Insufficient To Allow Ambac And Other Creditors To Meaningfully Participate In the Resolution Of These Title III Cases.**

27.  The information previously provided by the Oversight Board is insufficient, as it does not allow Ambac or other creditors to evaluate the financial condition of the Commonwealth and its instrumentalities, including various fiscal plans and their implications for stakeholders.

28.  While the Oversight Board argues that Ambac and other creditors have not been candid with the amount of information they have already received from the Commonwealth, the Oversight Board, AAFAF, the Commonwealth and its representatives have failed to show any intent to voluntarily engage in a cooperative process to provide this critical information to creditors.  Rather, Oversight Board, AAFAF, and the Commonwealth have indicated that they do not believe Ambac is entitled to much of this information.

29.  Ambac accordingly seeks an order from this Court compelling the Oversight Board, AAFAF, the Commonwealth, and related third parties to produce this information.

## CONCLUSION

For the foregoing reasons, Ambac respectfully requests that the Court (i) grant the Motion and (ii) grant such other and further relief as the Court deems appropriate.

**WHEREFORE,** Ambac respectfully requests authority to direct the examination of witnesses and the production of documents pursuant to Bankruptcy Rule 2004 as set forth herein and consistent with the Proposed Order, and that Ambac be granted such other and further relief as is just.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 12th day of September, 2017.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

Dated: November 7, 2017
       San Juan, Puerto Rico

FERRAIUOLI LLC

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
       scolon@ferraiuoli.com

MILBANK, TWEED, HADLEY & McCLOY LLP

By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
       aleblanc@milbank.com
       amiller@milbank.com
       gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*