# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.,*

       Debtors.[1]

     PROMESA

     Title III

     Case No. 17-BK-3283 (LTS)

     (Jointly Administered)

------------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

       as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

       Debtor.

     Adv. Proc. No. 17-BK-4780-LTS

     **Court Filing Relates Only to
PREPA and Shall Only be Filed
in Case No. 17-BK-4780-LTS
and Main Case 17-BK-3283-
LTS**

------------------------------------------------------------------------x

### AMENDED[2] URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER 11 U.S.C. § 1103 AND BANKRUPTCY RULE 2004, AUTHORIZING DISCOVERY WITH RESPECT TO PREPA ENGAGEMENT OF WHITEFISH ENERGY HOLDINGS, LLC AND URGENT REQUEST FOR HEARING

---

[1]    The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747)

[2]    This document only amends the previously filed motion with respect to paragraph 20 by incorporating the denial by Mr. Elías Sánchez Sifonte of certain allegations contained in that paragraph. [*See* Docket No. 364 in Adv. Proc. No. 17-BK-4780-LTS and Docket No. 1567 in Case No. 17-BK-3283 (LTS)]

## TABLE OF CONTENTS

JURISDICTION AND VENUE ................................................................................................... 1

BACKGROUND .................................................................................................................... 1

FOLLOWING DEVASTATION, PREPA ENTERS INTO SUSPICIOUS CONTRACT
WITH WHITEFISH.............................................................................................................. 2

    Questionable Nature of Whitefish's Selection.................................................... 3

    Questionable Qualifications of Whitefish.......................................................... 5

    Troubling Provisions in Whitefish Contract ..................................................... 8

    PREPA Misrepresents Role of Other Entities ................................................ 10

    Potential Political Influence as to Choice of Whitefish .................................. 11

    Current Situation – Cancellation of Agreement and Replacement of Whitefish............. 13

LEGAL STANDARD.......................................................................................................... 16

RELIEF REQUESTED........................................................................................................ 19

URGENT MOTION CERTIFICATION .................................................................................. 21

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1.................................... 22

RULE 2004 NOTICE ....................................................................................................... 233

NOTICE .......................................................................................................................... 23

NO PRIOR REQUEST ...................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Hilsen*,
No. 87–11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. 2008) ........................................17

*In re Hughes*,
281 B.R. 224 (Bankr. S.D.N.Y. 2002) ....................................................................................17

*In re Pub. Serv. Co. of New Hampshire*,
91 B.R. 198 (Bankr. D.N.H. 1988) ........................................................................................17

*In re Recoton Corp.*,
307 B.R. 751 (Bankr. S.D.N.Y. 2004) ....................................................................................17

*Ritchie Capital Mgmt., L.L.C. v. Kelley*,
785 F.3d 273 (8th Cir. 2015) .................................................................................................15

*In re Sheetz*,
452 B.R. 746 (Bankr. N.D. Ind. 2011) ...................................................................................18

*South Florida Water Mgmt. Dist. v. Fed. Emerg. Mgmt. Agency*,
Case No. 13-80533-CIV, 2014 WL 4805856 (S.D. Fla. Sept. 18, 2014) ...............................14

*In re Summit Corp.*,
891 F.2d 1 (1st Cir. 1989) ......................................................................................................17

*In re W. Pac. Airlines, Inc.*,
219 B.R. 575 (Bankr. D. Colo. 1998) ...............................................................................15, 18

*In re Washington Mut., Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) .........................................................................................17

*In re Youk-See*,
450 B.R. 312 (Bankr. D. Mass. 2011) ...............................................................................17, 21

**Statutes**

11 U.S.C.
§ 1103.....................................................................................................................................18
§ 1103(c)(2) .......................................................................................................................1, 19
§ 1103(c)(5) .......................................................................................................................1, 19

42 U.S.C.
§ 5170.................................................................................................................3
§ 5170a...............................................................................................................3
§ 5170b...............................................................................................................3

48 U.S.C. § 2101-2241 ...........................................................................................1

Fed. R. Bankr. P.
2004............................................................................................................ *passim*
2004(a).............................................................................................................16
2004(b)......................................................................................................16, 17
2004(c)..............................................................................................................17

Local Bankruptcy Rule
2004-1..............................................................................................................22
9013-1..............................................................................................................21
9016..................................................................................................................17

Local District Court Rule 5(g) ...............................................................................12

Puerto Rico Oversight Management and Economic Stability Act ("PROMESA")
§ 301........................................................................................................... *passim*
§ 304(a)..............................................................................................................1
§ 306(a)..............................................................................................................1
§ 307(a)..............................................................................................................1
§ 310..................................................................................................................1

Robert T. Stafford Disaster Relief and Emergency Assistance Act .................3, 14

**Other Authorities**

RADIOISLA, *Acevedo Vilá asegura Elías Sánchez cabildeó por contrato de
Whitefish (English: Acevedo Vilá says Elías Sánchez lobbied for Whitefish
contract)*, Oct. 26, 2017, available at https://www.radioisla1320.com/acevedo-
vila-asegura-elias-sanchez-cabildeo-contrato-whitefish/..........................................12

Alexia Campbell, VOX, *Puerto Rico just hired 2 contractors with little experience
to fix its broken power grid*, Oct. 26, 2017, available at
https://www.vox.com/policy-and-politics/2017/10/26/16533512/puerto-rico-
power-contracts............................................................................................................6

AM. PUB. POWER ASS'N, *Progress continues in restoring power to customers in
Puerto Rico, Virgin Islands*, Oct. 19, 2017, available at
https://www.publicpower.org/periodical/article/progress-continues-restoring-
power-customers-puerto-rico-virgin-islands...............................................................8

Andrew Scurria, WALL STREET JOURNAL, *FEMA Raises Concerns Over Puerto Rico Power Grid Contract*, Oct. 27, 2017 available at https://www.wsj.com/articles/puerto-rico-utility-contracting-sparks-new-probes-1509115635................................................................................................11

CBS EVENING NEWS, *Visiting the Remote headquarters of Whitefish Energy, recipient of controversial contract* Oct. 27, 2017 https://www.cbsnews.com/amp/news/whitefish-energy-headquarters-montana-contract-puerto-rico/ ................................................................................................6

CBS NEWS, *Puerto Rico to scrap $300M Whitefish Energy contract* Oct. 29, 2017, available at https://www.cbsnews.com/news/puerto-rico-to-scrap-300m-whitefish-energy-contract/ ................................................................................4, 13

Christopher Flavelle, Naureen Malik, and Michael Smith, BLOOMBERG NEWS, *FEMA Probing $300 Million No-Bid Contract for Puerto Rico Grid*, October 26, 2017, available at https://www.bloomberg.com/news/articles/2017-10-26/no-bid-puerto-rico-contract-spotlights-troubled-fema-grants................................6

Cirstiano Lima and Ben Lefebvre, POLITICO, *Zinke says he had 'absolutely nothing to do with' Puerto Rico contract*, Oct. 27, 2017, available at https://www.politico.com/story/2017/10/white-house-denies-role-whitefish-contract-244252 ................................................................................12

Danica Coto, ASSOCIATED PRESS, *Puerto Rico says it's scrapping $300M Whitefish contract*, Oct. 29, 2017, available at https://apnews.com/0de9d002a14a40908bfa24b57981414d/Puerto-Rico-gov-seeks-to-cancel-$300M-Whitefish-contract?utm_campaign=SocialFlow&utm_source=Twitter&utm_medium=AP ................................................................................5, 16

FEDERAL EMERGENCY MANAGEMENT AGENCY, *Release – Updated: FEMA Statement on Puerto Rico Electric Power Authority's Contract with Whitefish*, Oct. 27, 2017, available at https://www.fema.gov/news-release/2017/10/27/update-fema-statement-puerto-rico-electric-power-authoritys-contract ................................................................................11

*First Lady answers Eduardo Bhatia about Whitefish)*, TELEMUNDOPR, available at http://www.telemundopr.com/noticias/destacados/Primera-Dama-le-constesta-a-Eduardo-Bhatia-telemundo-telenoticias-puerto-rico-whitefish-aee-453212023.html................................................................................12

Florida Power & Light, *FPL Newsroom – FPL Restores more than 2 million customers within the first day of Hurricane Irma's exit from its service territory*, Sept. 12, 2017, available at http://newsroom.fpl.com/2017-09-12-FPL-restores-more-than-2-million-customers-within-the-first-day-of-Hurricane-Irmas-exit-from-its-service-territory ................................................................................7

iv

Gabe Gutierrez, NBC NEWS, *Whitefish CEO Defends Puerto Rico Deal, Says
Critics on 'Witch Hunt,'* Oct. 28, 2017, available at
https://www.nbcnews.com/storyline/puerto-rico-crisis/puerto-rico-governor-
calls-whitefish-energy-contact-bee-canceled-immediately-n815396 ........................................6

Gavin Bade, UTIL. DIVE, *Prepa forgoes mutual aid, opting for little-known
contractor*, Oct. 10, 2017, available at
https://www.utilitydive.com/news/prepa-forgoes-mutual-aid-opting-for-little-
known-contractor/506920/..................................................................................................7, 8

Ginger Gibson, REUTERS, *Puerto Rico governor calls for cancellation of
Whitefish contract*, Oct. 29, 2017, available at
https://www.reuters.com/article/us-usa-puertorico-power/puerto-rico-
governor-calls-for-cancellation-of-whitefish-contract-idUSKBN1CY0L9.........................4, 13

https://apps.npr.org/documents/document.html?id=4151304-Whitefish-Contract-
Signed-10-17-Copy.......................................................................................................4

Marcus Stern, *As Congress Questions Whitefish Contract, Federal Oversight
Board Appoints Emergency Manager for Power Authority That Awarded It*,
Oct. 25, 2017, WEATHER.COM, available at
https://weather.com/news/news/2017-10-25-whitefish-power-contract-puerto-
rico-emergency-manager-appointed ...........................................................................9

Nick Brown, REUTERS, *Puerto Rico, Whitefish defend controversial power
contract*, Oct. 24, 2017, available at https://www.reuters.com/article/us-usa-
puertorico-power/puerto-rico-whitefish-defend-controversial-power-contract-
idUSKBN1CU020 ...................................................................................................5, 6

Nicky Ouellet, NPR NEWS, *Tiny Montana Firm Gets $300 Million Contract to
Help Restore Power in Puerto Rico*, Oct. 24, 2017, available at
http://www.npr.org/sections/thetwo-way/2017/10/24/559864118/tiny-
montana-firm-gets-300-million-contract-to-help-restore-power-in-puerto-rico.......................7

NPR – ALL THINGS CONSIDERED, *Small Montana Company Awarded $300
Million To Help Restore Puerto Rico's Power Grid*, Oct. 24, 2017, available
at http://www.npr.org/2017/10/24/559889621/small-montana-company-
awarded-300-million-to-help-restore-puerto-ricos-power-gri ...................................................8

NPR NEWS, *Here's What's In That $300 Million Whitefish Contract*, Oct. 27,
2017, available at  http://www.npr.org/sections/thetwo-
way/2017/10/27/560422492/heres-what-s-in-that-300-million-whitefish-
contract...................................................................................................................8

Richard Perez-Pena, N.Y. TIMES,
*FEMA Cites 'Significant Concerns' With Puerto Rico Contract*, Oct. 27, 2017,
available at https://www.nytimes.com/2017/10/27/us/whitefish-puerto-rico-
electricity.html?_r=0................................................................................................12

Steven Mufson, Jack Gillum, Aaron Davis, and Arelis Hernandez, WASHINGTON
POST, *Small Montana firm lands Puerto Rico's biggest contract to get the
power back on*, Oct. 23, 2017, available at
https://www.washingtonpost.com/national/small-montana-firm-lands-puerto-
ricos-biggest-contract-to-get-the-power-back-on/2017/10/23/31cccc3e-b4d6-
11e7-9e58-e6288544af98_story.html?utm_term=.7a989453c10f............................................7

U.S. Department of Energy, Hurricanes Nate, Maria, Irma & Harvey October 26
Event Summary (Report # 71) available at
https://energy.gov/sites/prod/files/2017/10/f38/Hurricanes%20Maria%20and
%20Irma%20Event%20Summary%20October%2026%2C%202017.pdf (last
visited Oct. 29, 2017)................................................................................................................2

EL NUEVO DIA, *Zamot pondrá el ojo en los contratos de la AEE (English: Zamot
will put the eye on the AEE contracts)*, Oct. 26, 2017, available at
https://www.elnuevodia.com/noticias/locales/nota/zamotpondraelojoenloscont
ratosdelaaee-2369372/ ............................................................................................................12

To the Honorable United States District Court Judge Laura T. Swain:

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to the above-captioned cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[1] the Official Committee of Unsecured Creditors of all title III debtors (other than COFINA) (the "Committee") hereby requests authorization to pursue discovery with respect to the bidding, negotiation, and engagement process used by the Puerto Rico Electric Power Authority ("PREPA") to identify contractors for the repair of Puerto Rico's utility system—in particular, its engagement of Whitefish Energy Holdings, LLC ("Whitefish")—beginning with targeted document requests (collectively, the "Document Requests"[2]) to PREPA and Whitefish and depositions of relevant individuals as may be identified.

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      Relief is requested pursuant to 11 U.S.C. § 1103(c)(2) & (5) and Bankruptcy Rule 2004, made applicable to these title III cases by PROMESA sections 301 and 310.

## BACKGROUND

4.      On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") commenced a title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to PROMESA section 304(a) (the "Commonwealth

---

[1]     PROMESA has been codified at 48 U.S.C. § 2101-2241.

[2]     Copies of the Document Requests are attached to this Motion as Exhibits B and C as follows:  (1) Ex. B, Request for Documents from Committee of Unsecured Creditors of the Commonwealth of Puerto Rico to Whitefish Energy Holdings, LLC; and (2) Ex. C, Request for Documents from the Committee of Unsecured Creditors of the Commonwealth of Puerto Rico to the Puerto Rico Electric Power Authority.

1

<u>Title III Case</u>"). Thereafter, the Oversight Board commenced title III cases (together with the Commonwealth Title III Case, the "<u>Title III Cases</u>") for each of COFINA, the Employees Retirement System for the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, and PREPA (collectively, and together with any other Commonwealth instrumentalities that file title III cases, the "<u>Debtors</u>").[3]

5. On August 25, 2017, the Committee was appointed as the Official Committee of Unsecured Creditors in PREPA's title III case. *See* Docket No. 1171.

6. On October 6, 2017, the Court entered an order directing that PREPA's title III case be jointly administered with the Title III Cases. *See* Docket No. 340 in PREPA title III case.

## <u>FOLLOWING DEVASTATION, PREPA ENTERS INTO SUSPICIOUS CONTRACT WITH WHITEFISH</u>

7. As is well-known, the devastation caused by Hurricanes Irma and Maria resulted in a natural disaster of vast scale. The hurricanes swept through Puerto Rico in a span of roughly two weeks, leaving thousands of families displaced and crippling key infrastructure. As of today, Puerto Rico's power authority, PREPA, remains essentially offline—with 73.8% of electricity customers without power.[4] The situation entirely hobbles recovery efforts as the ability to generate and deliver electricity is crucial to Puerto Rico's economy and to its ability to recover economically and repay creditors. Every day that passes without a coordinated and

---

[3] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

[4] *See* U.S. Dep't of Energy, Hurricanes Nate, Maria, Irma & Harvey October 26 Event Summary (Report # 71), available at https://energy.gov/sites/prod/files/2017/10/f38/Hurricanes%20Maria%20and%20Irma%20Event%20Summary%20October%2026%2C%202017.pdf (last visited Oct. 29, 2017) ("Approximately 26.2% of normal peak load has been restored and 35 of 78 municipalities are partially energized or have energized facilities. Installation of two generators installed by the U.S. Army Corps of Engineers (USACE) at the Palo Seco Power Plant site is complete and the generators will be fully connected on October 26. DOE continues to coordinate closely with FEMA, Puerto Rico, and the U.S. Army Corps of Engineers to support restoration efforts and facilitate industry support.").

efficient response to this power generation and distribution crisis inhibits the ability of Puerto Rico's economy to rebound.

8.    As a result of this devastation, and in order to speed up the island's recovery, the President of the United States issued emergency declarations pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act, as Amended (the "Stafford Act"), Title 42 U.S.C. §§ 5170, 5170a, & 5170b, and Congress is currently in the process of authorizing funding packages for the President's signature.  A significant portion of that funding will likely be dedicated to the repair of PREPA's electrical grid.  As the Oversight Board noted in a recent filing, PREPA generates, transmits, and distributes substantially all of the electric power used in the Commonwealth, and ranks first in the United States among municipal utilities in number of clients and revenues.[5]  Therefore, PREPA's reconstruction and ability to provide reliable power distribution at reasonable rates is essential not only to PREPA's recovery, but also to the recovery of the Commonwealth and its instrumentalities.  It is imperative for Puerto Rico's residents and its creditors that this money is spent wisely and in a manner that quickly and efficiently promotes the recovery on the island.

Questionable Nature of Whitefish's Selection

9.    Given the centrality of PREPA to Puerto Rico's recovery, the Committee is concerned about PREPA's recent actions and the public controversy those actions have created. As has been widely reported, on October 17, 2017, PREPA's Executive Director Ricardo Luis Ramos Rodriguez signed a $300 million contract with Whitefish making Whitefish a central party to the repair and upgrade of the Commonwealth's utility grid.  *See* Exhibit D, First

---

[5]    *See Urgent Motion of Financial Oversight and Management Board for Puerto Rico for Entry of Order Confirming Appointment and Authority of Chief Transformation Officer*, [Docket No. 361 – PREPA Docket Only], ¶ 21; *see also* FINANCIAL OVERSIGHT & MANAGEMENT BOARD FOR PUERTO RICO, *Puerto Rico Electric Power Authority Fiscal Plan* (May 3, 2017), available at https://juntasupervision.pr.gov/wpcontent/uploads/wpfd/50/590a2c5d7d41d.pdf, at 8.

3

Amendment to Emergency Master Services Agreement for PREPA's Electrical Grid Repairs –

Hurricane Maria (the "Whitefish Contract").[6]

10.     Unfortunately, the process behind the selection of Whitefish appears to carry the

risk that the natural disasters that befell the Puerto Rico electrical grid will be followed by a

man-made disaster.  Public reports and a review of the Whitefish Contract suggest that:

- Whitefish lacked the qualifications and experience to perform the tasks PREPA has
  assigned it;

- The Whitefish Contract contained numerous suspicious provisions that do not work to
  PREPA's benefit, including what appear to be grossly excessive fees (e.g., hourly rates
  that appear to be multiples of prevailing market costs);

- PREPA represented, apparently incorrectly, that the Oversight Board and the Federal
  Emergency Management Agency ("FEMA") approved the Whitefish Contract; and

- The selection of Whitefish may have been the result of political favoritism rather than a
  choice of the best available contractor.

11.     In a news conference on October 29, 2017, as a result of these concerns, Governor

Ricardo Rosselló called for the Whitefish Contract to be canceled "immediately."[7]  Later that

day, PREPA's Executive Director Ricardo Ramos announced that the agreement would be

terminated once Whitefish completes all of its outstanding work.[8]  According to Ramos, the

process of hiring (and then replacing) Whitefish will likely have delayed work by 1**0 to 12**

**weeks**, and PREPA has already committed itself to pay Whitefish $21 million for the work to

---

[6]     A copy of this contract was obtained and posted by a reporter from the news outlet, Caribbean Business, and
        shared by other news outlets such as NPR.  *See, e.g.*,
        https://apps.npr.org/documents/document.html?id=4151304-Whitefish-Contract-Signed-10-17-Copy

[7]     Ginger Gibson, REUTERS, *Puerto Rico governor calls for cancellation of Whitefish contract*, Oct. 29, 2017,
        available at https://www.reuters.com/article/us-usa-puertorico-power/puerto-rico-governor-calls-for-
        cancellation-of-whitefish-contract-idUSKBN1CY0L9 ("'Following the information that has emerged, and with
        the goal of protecting public interest, as governor I am asking government and energy authorities to
        immediately activate the clause to cancel the contract to Whitefish Energy,' Rosselló said in a statement to
        reporters.").

[8]     CBS NEWS, *Puerto Rico to scrap $300M Whitefish Energy contract*, Oct. 29, 2017, available at
        https://www.cbsnews.com/news/puerto-rico-to-scrap-300m-whitefish-energy-contract/  ("Ramos said the
        cancellation will delay work by 10 to 12 weeks.").

4

date on top of **at least $11 million to cancel the agreement**.[9]  These serious questions around

the Whitefish Contract highlight the risk that PREPA may squander or otherwise compromise

any entitlement to much-needed federal funding, a result that would be disastrous for PREPA,

the Commonwealth, and its creditors.  These questions also raise serious concerns around

PREPA's core ability to manage the critical tasks it must undertake.  The discovery sought here

is, therefore, warranted both to evaluate the propriety of the original engagement of Whitefish

and to evaluate PREPA's ongoing ability to execute its responsibilities.  Even though PREPA

apparently plans to cancel the Whitefish Contract, discovery remains essential to understand the

extent of any potential gaps in procedures or controls that may have allowed the Whitefish

Contract to be signed, and to ensure the stakeholders in these Title III Cases that such missteps

have not already occurred with other contracts and, at a minimum, will not be repeated.

Questionable Qualifications of Whitefish

12.    Based on the information in the public record to date, PREPA does not appear to

have undertaken any sort of open and competitive bidding process related to the selection of

Whitefish, nor does Whitefish appear to have the background or experience required to helm the

rebuilding of the Commonwealth's electric utility infrastructure.[10]  In fact, it appears that, at the

---

[9]    *Id.*; *see also* Danica Coto, ASSOCIATED PRESS, *Puerto Rico says it's scrapping $300M Whitefish contract*, Oct.
29, 2017, available at https://apnews.com/0de9d002a14a40908bfa24b57981414d/Puerto-Rico-gov-seeks-to-
cancel-$300M-Whitefish-contract?utm_campaign=SocialFlow&utm_source=Twitter&utm_medium=AP
("Ramos said the company already has paid Whitefish $10.9 million to bring its workers and heavy equipment
to Puerto Rico and has a $9.8 million payment pending for work done so far.  Ramos said cancellation of the
contract will not lead to a penalty, but it's likely the government will pay at least $11 million for the company to
go home early, including all costs incurred in the month after the cancellation.")

[10]   Nick Brown, REUTERS, *Puerto Rico, Whitefish defend controversial power contract*, Oct. 24, 2017, available at
https://www.reuters.com/article/us-usa-puertorico-power/puerto-rico-whitefish-defend-controversial-power-
contract-idUSKBN1CU020 ("Whitefish was awarded the deal without a competitive bidding process, and
despite the facts that it had just two full-time employees and was established only two years ago. That drew
criticism from legislators who suggested cheaper options might have been available.").

time Hurricane Maria hit, Whitefish had only **two** employees[11] and was operated out of a one-story wooden house in Whitefish, Montana.[12] And, Whitefish's only prior federal experience related to "two small federal contracts in Arizona with the Department of Energy: a $172,000 deal to replace metal poles and install 3 miles of wiring, and a $1.3 million contract to revamp sections of a 4.8-mile transmission line."[13] Indeed, Whitefish's CEO Andy Techmanski told NBC News that he landed the contract because "**he first made contact with officials on Puerto Rico through the business networking site LinkedIn** shortly after Hurricane Irma hit in September . . . [and] said he kept in contact with them through Hurricane Maria's devastation."[14]

13.    When confronted by these claims, PREPA told reporters that it chose Whitefish because it was the only reasonably available option, and that no other bidders were willing and ready to assist the island without requiring a substantial down payment[15] —ignoring the fact that it appears Whitefish also received $3.7 million up front to "mobilize personnel and equipment." *See* Exhibit D, Whitefish Contract, at p. 2. This response appears open to question as PREPA has yet to explain what steps it took to locate other parties capable of performing the work

---

[11]   *Id.*; *see also* Christopher Flavelle, Naureen Malik, and Michael Smith, BLOOMBERG NEWS, *FEMA Probing $300 Million No-Bid Contract for Puerto Rico Grid*, Oct. 26, 2017, available at https://www.bloomberg.com/news/articles/2017-10-26/no-bid-puerto-rico-contract-spotlights-troubled-fema-grants ("Whitefish Energy Holdings LLC, a Montana-based company that had just two employees prior to beginning its work in Puerto Rico, was selected last week by the Puerto Rico Electric Power Authority to lead the rebuilding of Puerto Rico's hurricane-ravaged electrical grid with the expectation that the money would come from FEMA.").

[12]   CBS EVENING NEWS, *Visiting the Remote headquarters of Whitefish Energy, recipient of controversial contract*, Oct. 27, 2017 https://www.cbsnews.com/amp/news/whitefish-energy-headquarters-montana-contract-puerto-rico/ (segment on nightly news containing video of visit to Whitefish's headquarters, revealing an empty one-story wooden house in a rural area).

[13]   Alexia Campbell, VOX, *Puerto Rico just hired 2 contractors with little experience to fix its broken power grid*, Oct. 26, 2017, available at https://www.vox.com/policy-and-politics/2017/10/26/16533512/puerto-rico-power-contracts.

[14]   Gabe Gutierrez, NBC NEWS, *Whitefish CEO Defends Puerto Rico Deal, Says Critics on 'Witch Hunt,'* Oct. 28, 2017, available at https://www.nbcnews.com/storyline/puerto-rico-crisis/puerto-rico-governor-calls-whitefish-energy-contact-bee-canceled-immediately-n815396.

[15]   According to Governor Rosselló, the other contractor requested "a substantial amount of money – which PREPA had no liquidity for – and another [meaning Whitefish] did not require it." *See* supra note 10, REUTERS – *Puerto Rico, Whitefish defend controversial power contract*.

Whitefish has undertaken or why an entity with only two employees and apparently quite limited

experience could ever be the correct choice for a critical, $300 million contract.  Moreover,

PREPA has failed to offer any convincing justification for flatly refusing "mutual aid" offers

from the American Public Power Association ("APPA"), of which PREPA is a member.[16]  Those

mutual aid arrangements, which were utilized in Texas and Florida following Hurricanes Harvey

and Irma, were established in order to organize a network of state and regional public power

utilities to restore electricity quickly in the event of emergencies like Hurricane Maria.[17]  In fact,

in Florida, just one day after Hurricane Irma's departure from that state, Florida Power & Light

said that it had more than **20,000 workers from 30 states—and even Canada—**deployed to

restore power.[18]  Following its own recovery, Florida Power & Light further stated that it had

teams assembled as early as October 1, 2017 "ready to help Puerto Rico."[19]  According to the

Washington Post, Florida Power & Light never received a response from PREPA's management

to the offer of assistance.[20]  In fact, the APPA vice president for engineering, Michael Hyland,

---

[16]   Gavin Bade, UTIL. DIVE, *Prepa forgoes mutual aid, opting for little-known contractor*, Oct. 10, 2017, available
at https://www.utilitydive.com/news/prepa-forgoes-mutual-aid-opting-for-little-known-contractor/506920/

[17]   Nicky Ouellet, NPR NEWS, *Tiny Montana Firm Gets $300 Million Contract to Help Restore Power in Puerto
Rico*, Oct. 24, 2017, available at http://www.npr.org/sections/thetwo-way/2017/10/24/559864118/tiny-montana-
firm-gets-300-million-contract-to-help-restore-power-in-puerto-rico ("Meena Dayak, the association's
spokeswoman, tells NPR that the mutual aid program is 'basically a matchmaking service' — utilities contract
directly with one another to provide services and work out payment.  That's what happened in Texas after
Harvey, and in Florida following Irma. **The day after Irma's departure, Florida Power & Light said it had
more than 20,000 workers from 30 states and Canada deployed to restore power**.")

[18]   *Id.*; Florida Power & Light, *FPL Newsroom – FPL Restores more than 2 million customers within the first day
of Hurricane Irma's exit from its service territory*, Sept. 12, 2017, available at http://newsroom.fpl.com/2017-
09-12-FPL-restores-more-than-2-million-customers-within-the-first-day-of-Hurricane-Irmas-exit-from-its-
service-territory.

[19]   *See* Steven Mufson, Jack Gillum, Aaron Davis, and Arelis Hernandez, WASH. POST, *Small Montana firm lands
Puerto Rico's biggest contract to get the power back on*, Oct. 23, 2017, available at
https://www.washingtonpost.com/national/small-montana-firm-lands-puerto-ricos-biggest-contract-to-get-the-
power-back-on/2017/10/23/31cccc3e-b4d6-11e7-9e58-e6288544af98_story.html?utm_term=.7a989453c10f
("On Oct. 1, FPL had teams assembled to assess damage in Puerto Rico.  It posted notices in Spanish and
English on its Facebook page: 'FPL is ready to help Puerto Rico.'  Florida Gov. Rick Scott mentioned the offer
in a news release.  The Florida utility says it never received a reply.").

[20]   *Id.*

7

told reporters that "[o]nce they had called in they briefed out [reported to us] that they had signed an agreement with Whitefish. . . . PREPA at that point told us everything was taken care of."[21] Instead, PREPA apparently contracted with Whitefish—which then went ahead and **subcontracted** with those same utilities, including Jacksonville Electric Authority and Kissimmee Utility Authority—even though a mutual aid agreement likely could have been arranged at a lower cost.[22]

Troubling Provisions in Whitefish Contract

14.     The Whitefish Contract contains numerous troubling provisions that call into question whether it reflected a vigorous arms-length transaction.  The contract sets forth eye-popping reimbursement rates of up to $330 per hour for a site supervisor—climbing to $462 for supervisors hired by subcontractors, who will presumably make up much of Whitefish's workforce.  *See* Exhibit D, Whitefish Contract (Exhibit B – Bid Schedule – Subcontractor Rate Schedule).[23]  Likewise, the Whitefish Contract provides that Whitefish would be paid $319.04

---

[21]  *See* supra note 16, UTIL. DIVE – *PREPA forgoes mutual aid, opting for little-known contractor; see also* NPR – ALL THINGS CONSIDERED, *Small Montana Company Awarded $300 Million To Help Restore Puerto Rico's Power Grid*, Oct. 24, 2017, available at http://www.npr.org/2017/10/24/559889621/small-montana-company-awarded-300-million-to-help-restore-puerto-ricos-power-gri  (interview between Robert Siegel and Nicky Oullet of Montana Public Radio, in which Oullet states: "[w]hen I spoke with the state-owned Puerto Rico power electric authority, which is also called PREPA, they said that they had already signed on with Whitefish before Hurricane Maria. And Whitefish had beat out a couple of other companies bidding on a contract with PREPA. Those other companies asked for a payment guarantee. Whitefish did not, so PREPA went with Whitefish. It seems like phone lines were down, and communications just weren't happening after Maria struck. And so PREPA was never able to make that call for mutual aid that typically happens.").

[22]  AM. PUB. POWER ASS'N, *Progress continues in restoring power to customers in Puerto Rico, Virgin Islands*, Oct. 19, 2017, available at https://www.publicpower.org/periodical/article/progress-continues-restoring-power-customers-puerto-rico-virgin-islands ("Florida-based public power utility Jacksonville Electric Authority has sent linemen and assets to assist the U.S. Army Corps of Engineers and Puerto Rico in restoration efforts. **Currently Florida-based Kissimmee Utility Authority and JEA are in Puerto Rico under contract with Whitefish Energy Holdings working on the transmission system restoration**."); *see also* Laurel Wamsley, NPR NEWS, *Here's What's In That $300 Million Whitefish Contract*, Oct. 27, 2017, available at http://www.npr.org/sections/thetwo-way/2017/10/27/560422492/heres-what-s-in-that-300-million-whitefish-contract ("Whitefish then subcontracted with utilities including Jacksonville Electric Authority and Kissimmee Utility Authority to help it with transmission system restoration — the same thing a mutual aid agreement might have arranged at a lower cost. It's unusual for electrical utilities to work under a contractor.").

[23]  On October 29, 2017, alongside its press conference announcing the planned termination of Whitefish, PREPA defended the deal by releasing a comparative chart of the bids that it supposedly received.  *See* Exhibit E,

per hour worked by a journeyman lineman.  *See id.*  One press report indicated that this rate for

journeyman line workers is "**almost 10 times the average rate for a journeyman line worker

in the United States**, according to the website Payscale.com."[24]  Nightly accommodations

would cost $332.41 per person per day, and each worker's per diem meal costs would be $79.82.

*See* Exhibit D, Whitefish Contract (Exhibit B – Bid Schedule – Subcontractor Rate Schedule).

**The agreement even provides that "unskilled labor" would be charged to PREPA at

$138.60 per hour**.  *Id.*

15.     Whether these rates reflect prevailing market conditions is open to question given

PREPA's failure to pursue competitive bidding of any sort.  Even more troubling is the fact that

PREPA apparently negotiated away audit rights—for itself and others—to evaluate these

economic terms in the future.  The Whitefish Contract provides that **no agency or entity would

ever be able to audit these exorbitant charges:** "[i]n no event shall PREPA, the

Commonwealth of Puerto Rico, the FEMA Administrator, the Comptroller General of the United

States [GAO], or any of their authorized representatives have the right to audit or review the cost

and profit elements of the labor rates specified herein."  *See* Exhibit D, Whitefish Contract, art.

59.  In other words, PREPA surrendered the right to audit one of the most significant cost

components Whitefish is likely to charge.

---

AUTORIDAD DE ENERGÍA ELÉCTRICA (PREPA), Chart of Comparative Rates (hereinafter "Chart of Comparative Rates") (showing hourly rates for Whitefish's workers as compared with other bids from Power Secure, Southern Electric, State Electric, B&B Electric, and Cobra) .  As PREPA's chart acknowledges, though, the rates for Whitefish show only half the story.  In fact, the rates shown on this chart for Whitefish are only the **contractor** rates, and the **subcontractor** rates are significantly higher.  For example, the chart indicates that journeyman labor would be paid at $227.88 per hour, when in reality Whitefish's subcontractor rate would be $319.04 per hour—**almost 48% higher than the next most expensive option**, Power Secure ($216.24 per hour).  *Compare* Exhibit D, Whitefish Contract (Exhibit B – Bid Schedule – Subcontractor Rate Schedule), *with* Exhibit E, Chart of Comparative Rates.  Likewise, Whitefish's hourly rate for subcontracted general foremen would be $336.34, while the other bids ranged from $217 to $285.71.  *Id.*

[24]     Marcus Stern, *As Congress Questions Whitefish Contract, Federal Oversight Board Appoints Emergency Manager for Power Authority That Awarded It*, Oct. 25, 2017, WEATHER.COM, available at https://weather.com/news/news/2017-10-25-whitefish-power-contract-puerto-rico-emergency-manager-appointed

16.     The contract is rife with other questionable provisions.  For example, the

Whitefish Contract does not require Whitefish to obtain a performance bond or surety, and it

only requires that Whitefish obtain Commercial General Liability Insurance coverage of up to $1

million—far less than what would be normally expected for an agreement of this scope.  *See*

Exhibit D, Whitefish Contract, art. 12.   Moreover, the Whitefish Contract also provides that

"PREPA waives any claim against Contractor related to delayed completion of the work."  *See*

Exhibit D, Whitefish Contract, art. 4.2.  The removal of any such penalties for slow

performance—penalties which are commonplace in construction agreements—effectively

removed any incentive for Whitefish to efficiently and expeditiously complete repairs.

PREPA Misrepresents Role of Other Entities

17.     PREPA also apparently attempted to improperly shield its efforts by referring to

the imprimatur of the Oversight Board and FEMA.  In Article 50 of the Agreement, PREPA

represented that it "has the authority to enter into this Contract with Contractor, including but not

limited to with respect to the Government Oversight Board [meaning the Financial Oversight and

Management Board for Puerto Rico] and all other relevant authorities."  Exhibit D, Whitefish

Contract, art. 50.  Yet there is no evidence that the Oversight Board ever approved the contract.

18.     In what is perhaps the boldest assertion in the Whitefish Contract, Article 68

included a statement that "[b]y executing this Contract, PREPA hereby represents and warranties

that FEMA has reviewed and approved of this Contract, and confirmed that this Contract is in an

acceptable form to qualify for funding from FEMA or other U.S. governmental agencies."

Exhibit D, Whitefish Contract, art. 68.  To the contrary, on October 27, 2017, FEMA expressly

disclaimed that representation, stating in a news release that "**[a]ny language in any contract**

10

between PREPA and Whitefish that states FEMA approved that contract is inaccurate."[25]

In response to FEMA's release, PREPA's Executive Director Ricardo Ramos admitted that the

contract language was in error, telling the Wall Street Journal that "[t]here's no other explanation

for that other than an 'oops,'" and that "[t]here was a lot of pressure to sign the contract

immediately, not from Whitefish but from me."[26]

19.     FEMA also announced that it "**has significant concerns with how PREPA**

**procured this contract** and has not confirmed whether the contract prices are reasonable."[27]

FEMA's release added that it "is presently engaged with PREPA and its legal counsel to obtain

information about the contract and contracting process, including how the contract was procured

and how PREPA determined the contract prices were reasonable."[28]  FEMA left no doubt about

the potential implications associated with PREPA's actions: "Applicants [such as PREPA] who

fail to abide by these requirements **risk not being reimbursed by FEMA for their disaster**

**costs**."[29]

Potential Political Influence as to Choice of Whitefish

20.     Given the various issues surrounding the Whitefish Contract, it is not surprising

that reports have surfaced suggesting the Whitefish Contract was awarded not on the basis of

merit but instead on the basis of political favoritism.  While the Committee has no present ability

to validate the troubling news stories available, it notes with concern reports that:

---

[25]   FEDERAL EMERGENCY MANAGEMENT AGENCY, *Release – Updated: FEMA Statement on Puerto Rico Electric Power Authority's Contract with Whitefish*, Oct. 27, 2017, available at https://www.fema.gov/news-release/2017/10/27/update-fema-statement-puerto-rico-electric-power-authoritys-contract (hereinafter "FEMA Release")

[26]   Andrew Scurria, WALL ST. J., *FEMA Raises Concerns Over Puerto Rico Power Grid Contract*, Oct. 27, 2017 available at https://www.wsj.com/articles/puerto-rico-utility-contracting-sparks-new-probes-1509115635

[27]   *See supra* note 25, FEMA Release.

[28]   https://www.fema.gov/news-release/2017/10/27/update-fema-statement-puerto-rico-electric-power-authoritys-contract*Id.*

[29]   *Id.*

- Whitefish CEO Andy Techmanski was from the same small town (Whitefish, Montana) as Interior Secretary Ryan Zinke and further that Messrs. Techmanski and Zinke are friends and that Mr. Zinke's son worked with Whitefish this past summer.[30]  Mr. Zinke has denied that had he had any involvement in the selection of Whitefish[31];

- Elías Sánchez Sifonte, formerly the Governor's representative to the Oversight Board and rumored to be a close personal friend of the Governor, lobbied PREPA to hire Whitefish, perhaps to benefit himself.   In fact, former Puerto Rico Governor Anabel Acevedo Vilá recently stated on a radio program that, "instead of becoming a bona fide advisor to the Governor . . . [Sánchez] saw it as a business opportunity."[32]  Mr. Sanchez has denied these allegations; and

- According to Eduardo Bhatia, the former president of the Puerto Rico Senate and sitting Senate minority leader, both Whitefish and the Office of the First Lady share the same director of Public Relations.[33]

---

[30]   Richard Perez-Pena, N.Y. TIMES, *FEMA Cites 'Significant Concerns' With Puerto Rico Contract*, Oct. 27, 2017, available at https://www.nytimes.com/2017/10/27/us/whitefish-puerto-rico-electricity.html?_r=0 ("Whitefish Energy is based in Whitefish, Mont., home of Ryan Zinke, the interior secretary and former member of Congress.  Mr. Zinke and Andy Techmanski, the chief executive of Whitefish Energy, know each other, and the secretary's son worked on a Whitefish job over the summer.").

[31]   *Id.* ("[White House spokeswoman Sarah Huckabee Sanders] said Mr. Trump asked Mr. Zinke, during a private meeting at the White House, whether he had been involved.  Mr. Zinke told the president that, 'the federal government, and specifically he,' had nothing to do with this,' Ms. Sanders added."); Cristiano Lima and Ben Lefebvre, POLITICO, *Zinke says he had 'absolutely nothing to do with' Puerto Rico contract*, Oct. 27, 2017, available at https://www.politico.com/story/2017/10/27/white-house-denies-role-whitefish-contract-244252 ("'Any attempts by the dishonest media or political operatives to tie me to awarding of influencing any contract involving Whitefish [Energy Holdings] are completely baseless. Only in elitist Washington, D.C., would being from a small town be considered a crime,' Zinke wrote in a statement.").

[32]   RADIOISLA, *Acevedo Vilá asegura Elías Sánchez cabildeó por contrato de Whitefish (English: Acevedo Vilá says Elías Sánchez lobbied for Whitefish contract)*, Oct. 26, 2017, available at https://www.radioisla1320.com/acevedo-vila-asegura-elias-sanchez-cabildeo-contrato-whitefish/ ("Former Gov. Anibal Acevedo Vilá, said today in his program Sobre la Mesa that the former representative to the Fiscal Control Board (JCF), Elías Sánchez, was the one who lobbied to hire the company Whitefish Energy Holdings.") (translated); *see also* EL NUEVO DÍA, *Zamot pondrá el ojo en los contratos de la AEE (English: Zamot will put the eye on the AEE contracts)*, Oct. 26, 2017, available at https://www.elnuevodia.com/noticias/locales/nota/zamotpondraelojoenloscontratosdelaaee-2369372/  ("The ex-governor also said that Sánchez Sifonte has been seen in the Emergency Operations Center (COE) and has held meetings there behind closed doors with AEE officials. . . . **The statements of Acevedo Vilá coincide with sources in this newspaper, who say that Sánchez Sifonte has played a role in the process of granting several contracts to private companies by the government in the context of the emergency caused by Hurricane Maria.**") (translated).  The Committee apologizes to the Court because, due to the need to file this Urgent Motion promptly, it was unable to obtain certified translations of these articles and the article in footnote 33 using the court-approved translators specified by Local District Court Rule 5(g).  Nevertheless, the Committee is willing to provide certified translations of these articles if any party so requests.

[33]   *Primera Dama le contesta a Eduardo Bhatia sobre Whitefish* (English: *First Lady answers Eduardo Bhatia about Whitefish*), TELEMUNDOPR, available at http://www.telemundopr.com/noticias/destacados/Primera-Dama-le-constesta-a-Eduardo-Bhatia-telemundo-telenoticias-puerto-rico-whitefish-aee-453212023.html ("At a time when the grant of $300 million to the company Whitefish Energy Holdings by the Electric Power

Current Situation – Cancellation of Agreement and Replacement of Whitefish

21.    In a news conference on Sunday, October 29, 2017, Governor Ricardo Rosselló announced that he would seek the immediate cancellation of the Whitefish Contract and had discussed the use of mutual aid agreements with the governors of New York and Florida.[34]  Just a few hours later, PREPA director Ricardo Ramos announced that the contract would be canceled once Whitefish had completed its current work—which would delay the repair of Puerto Rico's electrical grid by 10 to 12 weeks.[35]  The situation remains fluid at the moment, but one thing is clear: there is a need to ensure that PREPA's bidding process is conducted transparently and that any contractors selected by PREPA—both now and in the future—do not put the Commonwealth or its instrumentalities at risk of losing FEMA funds.  Even though the Whitefish Contract will apparently be terminated, the need to ensure that PREPA does not misstep in the future remains.

22.    Whatever the merit of the news reports from recent days, the circumstances of, and contractual giveaways that potentially took place in, the negotiation of the Whitefish Contract give rise to concerns—and those concerns require further investigation.  The Committee truly hopes that absolutely nothing untoward occurred with respect to the Whitefish Contract and that Whitefish performs admirably for the remainder of the work necessary before its contract is terminated or completed.  However, at this stage, there is simply too much concern

---

Authority is being investigated closely, another question arises about the possible connection between the company and the Office of the First Lady of Puerto Rico Beatriz Rosselló. According to [former senate president and current minority leader] Eduardo Bhatia, both the company established in Whitefish, Montana and the Office of the First Lady share the same director of Public Relations, the name of which he did not offer during his interview with Telenoticias.") (translated).

[34]    *See* supra note 7, REUTERS—*Puerto Rico governor calls for cancellation of Whitefish contract*("'Following the information that has emerged, and with the goal of protecting public interest, as governor I am asking government and energy authorities to immediately activate the clause to cancel the contract to Whitefish Energy,' Rosselló said in a statement to reporters.").

[35]    See supra note 8, CBS NEWS—*Puerto Rico to scrap $300M Whitefish Energy contract* ("Ramos said the cancellation will delay work by 10 to 12 weeks.")

for the Committee not to investigate.  Indeed, ensuring the wisdom and propriety of the
contractors that PREPA hires is essential to the revitalization of Puerto Rico's economy because
it ensures that qualified and capable contractors—not inexperienced ones selected for political
reasons—are managing one of the most important tasks of the recovery effort.  Moreover, any
potential impropriety in the negotiation of the PREPA's contracts or deficiencies with the
services provided to PREPA runs the risk of leaving the stakeholders in these Title III Cases and
the residents of Puerto Rico with a hefty bill.  Under the Stafford Act, the federal government is
entitled to de-obligate any funds that were improperly offered or were unreasonable.  *See, e.g.,
South Florida Water Mgmt. Dist. v. Fed. Emergency Mgmt. Agency*, Case No. 13-80533-CIV,
2014 WL 4805856, at *7 (S.D. Fla. Sept. 18, 2014) (citing 42 U.S.C. § 5205(c), which provides
that reimbursement is required to the extent that "costs were reasonable" and "the purpose of the
grant was accomplished").  In short, FEMA could refuse to provide funds to PREPA for
contractors' services and/or demand the return of any funds provided to PREPA that were paid
onward to Whitefish or to any other contractor running afoul of FEMA.  Were that to occur, the
Commonwealth would be obligated to pay a priority claim back to the United States, which
would be a superpriority administrative expense and taken directly out of the money available for
creditors and residents. *See Order Granting Urgent Joint Motion of the Commonwealth of
Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power
Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order
Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights
of Parties* [Docket No. 1547], ¶ 9 ("To the extent any costs charged to an award of Federal
Disaster Relief Funds become disobligated, de-obligated, disallowed, unallowed [ . . . ] the

14

United States shall have an allowed, priority claim [ . . . ] which claim shall be a superpriority administrative expense claim . . . .").[36]

23.     The only way to address these concerns through the lens of the stakeholders in these Title III Cases is through discovery under Bankruptcy Rule 2004.  As the official committee appointed to represent all of the unsecured creditors in PREPA's title III case, no party stands better suited to investigate and evaluate these issues than the Committee.  *See In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 577–78 (Bankr. D. Colo. 1998) ("Thus, a creditors committee serves something of a 'watchdog' function in bankruptcy and enjoys unique rights and responsibilities under the Code."); *see also Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 280–81 (8th Cir. 2015) ("The support of the unsecured creditors' committee is noteworthy. Creditor Committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents."). (internal quotations omitted).

24.     This discovery must be conducted promptly—indeed as near to real time as possible.  PREPA is already advancing funds to Whitefish and other contractors.  As the contract notes, PREPA has paid Whitefish $3.7 million to "mobilize personnel and equipment," and more payments are likely forthcoming shortly even though the contract is supposedly in the process of being terminated.  *See* Exhibit D, Whitefish Contract, at p. 2.   As the Associated Press has reported, PREPA executive director Ricardo Ramos stated at the October 29, 2017 press

---

[36]   In fact, this risk is not merely theoretical.  On October 29, 2017, counsel for the Commonwealth Government and AAFAF submitted a letter to the Court officially walking back certain statements made at the October 25, 2017 hearing on the *Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority1, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties*.  In this letter, counsel for AAFAF wrote that "[i]n light of these developments, **the Commonwealth Government and AAFAF can no longer represent that they believe the Contract is compliant with FEMA regulations**."  *See* Oct. 29, 2017 Letter from Peter Friedman to Judge Laura Taylor Swain [Exhibit A to Docket No. 1562].

15

conference that PREPA "already has paid Whitefish $10.9 million to bring its workers and heavy

equipment to Puerto Rico[,] has a $9.8 million payment pending for work done so far," and will

likely "pay at least $11 million for the company to go home early, including all costs incurred in

the month after the cancellation."[37]  Once distributed, those funds may not be easily recoverable.

Every day that passes means that more money is spent in a manner that may hinder the ability of

creditors and the Commonwealth to recover those costs.  Moreover, now that Whitefish is

apparently in the process of being terminated, it is imperative for PREPA to transparently select

a competent replacement as quickly as possible.  To the extent that discovery ultimately suggests

any individual wrongdoing or procedural gaps, those issues will need to be identified

**immediately** so that the issues (if any) can be remedied promptly and potential bad actors

removed from the contracting process.  The stakes are too high for second chances or additional

delay.

## **LEGAL STANDARD**

25.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the

court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  Bankruptcy

Rule 2004(b) further provides that the scope of such examination may relate to "the acts,

conduct, or property or to the liabilities and financial condition of the debtor, or to any matter

which may affect the administration of the debtor's estate, or to the debtor's right to a

discharge."  Fed. R. Bankr. P. 2004(b). Such an examination:

> may also relate to the operation of any business and the desirability
> of its continuance, the source of any money or property acquired or

---

[37]    *See* supra note 9, ASSOCIATED PRESS —*Puerto Rico says it's scrapping $300M Whitefish contract*; *see also*
Gabe Gutierrez, NBC NEWS, *Whitefish CEO Defends Puerto Rico Deal, Says Critics on 'Witch Hunt,'* Oct. 28,
2017, available at https://www.nbcnews.com/storyline/puerto-rico-crisis/puerto-rico-governor-calls-whitefish-
energy-contact-bee-canceled-immediately-n815396 ("Techmanski said Whitefish has been paid about $8-10
million so far.").

> to be acquired by the debtor for purposes of consummating a plan
> and the consideration given or offered therefor, and any other
> matter relevant to the case or to the formulation of a plan.

*Id*.  In addition, "the attendance of an entity for examination and for the production of documents

. . . may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or

trial."  Fed. R. Bankr. P. 2004(c).

26.     The purpose of a Bankruptcy Rule 2004 examination is to assist a party in interest

in determining the nature and extent of the bankruptcy estate, "discovering assets, **examining**

**transactions, and determining whether wrongdoing has occurred**."  *See In re Washington*

*Mut.*, *Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (internal quotations omitted); *see also In re*

*Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).  Courts consistently have

emphasized that the scope of a Bankruptcy Rule 2004 examination is extremely broad, broader

than discovery available under the Federal Rules of Civil Procedure, and **can legitimately be in**

**the nature of a "fishing expedition**."  *See In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass.

2011) ("The examination [] is of necessity to a considerable extent a fishing expedition.")

(internal citations omitted);  *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) (affirming Rule

2004 discovery order; noting that "Rule 2004 is broad in nature"); *In re Pub. Serv. Co. of N.H.*,

91 B.R. 198, 199 (Bankr. D.N.H. 1988) ("The scope of discovery afforded under Bankruptcy

Rule 2004 is 'unfettered and broad.'"); *In re Washington Mut.*, 408 B.R. at 50 ("The scope of a

Rule 2004 examination is unfettered and broad . . . [and] is commonly recognized as more in the

nature of a 'fishing expedition.'") (internal citations omitted)); *see also In re Hughes*, 281 B.R.

224, 226 (Bankr. S.D.N.Y. 2002) ("[I]t is well settled that the scope of examination allowed

under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure

and may be in the nature of a 'fishing expedition.'"); *In re Hilsen*, No. 87–11261 (JMP), 2008

WL 2945996, at *1 (Bankr. S.D.N.Y. 2008) (Bankruptcy Rule 2004 "allows considerable leeway

for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's estate.").

27.    Although Bankruptcy Rule 2004 may be used by "any party in interest," the Committee is not simply another party to these Title III Cases.  Instead, by incorporating section 1103 into PROMESA, Congress granted the **Committee specific statutory authority to investigate the "acts, conduct, assets, [and] liabilities . . . of the debtor . . . [or] any other matter relevant to the case or formulation of a plan."** 11 U.S.C. 1103.[38]   As such, the Committee is the proper party with the responsibility to examine the appropriateness of the engagement of Whitefish.  *See In re W. Pac. Airlines, Inc.*, 219 B.R. at 577–78 ("Thus, a creditors committee serves something of a 'watchdog' function in bankruptcy and enjoys unique rights and responsibilities under the Code.").

28.    In addition, the scope of the investigation need not be fully understood or detailed at the time it is commenced.  Indeed, courts routinely reject arguments that the exact improprieties or potential claims being examined must be laid out in advance.  For example, in *In re Sheetz*, 452 B.R. 746, 750 (Bankr. N.D. Ind. 2011), the court rejected an argument that the trustee seeking an examination "failed to provide enough specific examination concerning the discrepancies she wants to investigate[.]"  The court held that this level of detail was unnecessary because "Rule 2004 can properly be a fishing expedition and upon setting out for such an expedition one does not usually limit the fish one sets out to catch."  In fact, "*[i]t is perfectly permissible to troll for whatever might bite*."  *Id.* (emphasis added).

29.    Here, even just weeks after the announcement of the agreement with Whitefish, publicly available information suggests the possibility of wrongdoing.  Although the Committee

---

[38]    11 U.S.C. § 1103 is made applicable to these proceedings by PROMESA section 301.

has no present means to validate these suspicions (and truly hopes they remain just that), there is more than enough information here to give rise to the duty to investigate. Were any wrongdoing to have occurred, it could lead to the need to dispute any continuing obligations under the Whitefish Contract (or any other contracts entered into by PREPA), claims by the Commonwealth for recovery of all funds paid to Whitefish or other contractors, claims against PREPA individuals for breach of duty in entering into misguided contracts, and/or the disallowance of any claims contractors such as Whitefish may assert against PREPA or other Commonwealth entities. Accordingly, discovery is amply justified here.

## RELIEF REQUESTED

30.     By this Motion, the Committee seeks entry of an order pursuant to sections 1103(c)(2) and (5) of the Bankruptcy Code and Bankruptcy Rule 2004 permitting the Committee to initiate discovery into the negotiation and execution of the Whitefish Contract, and other related issues including the reasonableness of that arrangement and the appropriateness of the selection of Whitefish as PREPA's vendor to perform these services.  This discovery will begin with discovery requests to PREPA and Whitefish as well as requests for live examinations of relevant individuals from those entities as they may be identified.

31.     Importantly, the Committee is not simply requesting that it receive permission to "go fishing" for some undefined target. Instead, as detailed above, the Committee is seeking simply to perform its fiduciary duty to understand the extent of the specific concerns which have been brought to light in the context of a particular third party engagement.

32.     The Committee thus seeks authority to investigate the following issues:

- The process by which PREPA identified potential contracting parties for utility construction and repair work in Puerto Rico;

- The efforts PREPA made to evaluate the party or parties best suited to the utility construction and repair work contemplated;

19

- The process used to evaluate Whitefish and any other potential contractors for the work contemplated;

- The negotiation of the terms, conditions, and economic provisions of the Whitefish Contract;

- Any connections between Whitefish and government officials or others or any potential lobbying efforts which may have influenced the selection of Whitefish as a contractor or other conflict of interest issues which may have affected the selection of Whitefish and/or the negotiation of the Whitefish Contract;

- Any evidence of Whitefish's actual incurred costs or cost estimates bearing on the reasonableness of the services provided by Whitefish;

- Whether Whitefish was properly determined to be both qualified to, and capable of, performing under the Whitefish Contract;

- Any discussions between PREPA, Whitefish, and other government agencies (including but not limited to FEMA) and the Oversight Board related to the execution of the Whitefish Contract.

33.     These areas of concern remain relevant now that the Whitefish Contract is apparently set to be terminated.  If validated, the concerns surrounding the engagement of Whitefish suggest troubling issues with PREPA's bidding and procurement procedures, its ability to protect the interests of its stakeholders when negotiating contracts and fees, and potential mismanagement on the part of individuals at PREPA.

34.     The Document Requests, which are attached in Exhibits B and C, are reasonably tailored to these concerns and are targeted at two entities: PREPA and Whitefish.  Moreover, the Document Requests are targeted specifically at the practices that gave rise to these concerns—seeking documents regarding PREPA's bidding procedures, efforts, and bidding history, PREPA's diligence of Whitefish's suitability for the utility work contemplated by the Whitefish Contract, internal and external communications from both parties concerning the negotiation of the Whitefish Contract and Whitefish's ability to perform under that contract, any formal bid packages submitted by Whitefish or others, any potential lobbying efforts or communications

20

from third parties related to Whitefish's selection, and evaluations of Whitefish's anticipated or reasonable costs. *See, e.g.*, *In re Youk-See*, 450 B.R. at 323 ("reiterat[ing] its rejection of [the examinee's] arguments as to the scope of the [trustee's] discovery requests" which were focused on, among other things, the examinee's internal policies and procedures regarding loan modifications).

35.     In addition to the document requests, the Committee seeks authorization to issue subpoenas for live examination to relevant individuals from PREPA and Whitefish and/or for corporate representative testimony as deemed necessary.  As with the document requests, these examinations will be targeted at the relevant conduct giving rise to these concerns, including but not limited to the bidding discussions between PREPA and Whitefish, the procedures by which Whitefish was selected as a contractor (including other potential options offered to PREPA), negotiations between PREPA and Whitefish surrounding cost issues, and the negotiation of specific provisions in the Whitefish Contract.

36.     The Committee requests a hearing on this Urgent Motion be set at the earliest date that the Court's calendar will permit or, in any event, no later than November 13, 2017,[39] with responses to this Urgent Motion due by November 6, 2017 and replies due by November 9, 2017.

## URGENT MOTION CERTIFICATION

37.     Pursuant to Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico and the Third Amended Notice, Case Management and Administrative Procedures [Docket No. 1512] established for the Title III Cases, the Committee certifies that: (i) it has carefully examined the matter and concluded that

---

[39]   This is the same date that has been set for the hearing on the *Urgent Motion of Financial Oversight and Management Board for Puerto Rico for Entry of Order Confirming Appointment and Authority of Chief Transformation Officer* [Docket No. 361 – PREPA Docket Only].

there is a true need for an urgent hearing to seek an order approving Bankruptcy Rule 2004 discovery into the issues surrounding the execution of the Whitefish Contract; (ii) it has not created the urgency through any lack of due diligence; and (iii) it has made a bona fide effort to resolve the matter without a hearing, contacting various parties including Whitefish and PREPA to inform them of the need for discovery.  As indicated above, time is of the essence with regard to this discovery due to the need to protect the stakeholders in these Title III Cases from the potential misuse of federal funds and to ensure that Puerto Rico's power generation system is brought back online in a speedy, efficient, and effective manner.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1**

38.     Pursuant to Local Rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Puerto Rico, the undersigned counsel hereby certifies that prior to filing this motion, Paul Hastings LLP attempted to confer concerning the Document Requests on October 27, 2017, reaching out to counsel for Whitefish and for PREPA by email and telephone.   A call with Whitefish's counsel was held on Monday, October 30, 2017, during which Whitefish's counsel declined to say whether she would consent or not to the relief requested.   A preliminary telephonic meet-and-confer call was held on October 27, 2017 with counsel for PREPA, who stated that she needed to confer with her client on Friday morning and resurfaced on Sunday afternoon to state that PREPA would not consent to the relief sought.  Due to the urgent nature of the relief sought and the necessity of bringing this issue to the Court's attention promptly, the parties were not able to reach agreement.  The Committee will endeavor to use the time between the filing of this motion and the hearing date to have another meet-and-confer session with Whitefish and PREPA.

**RULE 2004 NOTICE**

39.     Any party who objects to the examination shall serve and file an objection or

motion for protective order with the United States Bankruptcy Court for the District of Puerto

Rico within the objection deadlines set by the court for responding to this Motion for a Fed. R.

Bankr. P. 2004 Examination. If no objection or motion for protective order is timely filed, the

court may grant the motion for examination without further notice or a hearing.

**NOTICE**

40.     Notice of this Motion has been provided to the following entities, or their counsel,

if known: (i) Whitefish, (ii) PREPA, (iii) the U.S. Trustee; (iv) the Office of the United State

Attorney for the District of Puerto Rico; (v) the Oversight Board; (vi) the Puerto Rico Fiscal

Agency and Financial Advisory Authority; (vii) the official committee of retirees; (viii) the

insurers of the bonds issued or guaranteed by the Debtors; (ix) counsel to certain ad hoc groups

of holders of bonds issued or guaranteed by the Debtors;[40] and (x) all parties that have filed a

notice of appearance in the above-captioned title III cases.

**NO PRIOR REQUEST**

41.     No prior request for the relief sought in this Urgent Motion has been made to this

or any other court.


*[Remainder of page intentionally left blank]*

---

[40]   Which include the Mutual Fund Group, the Ad Hoc Group of General Obligation Bondholders, the COFINA
Senior Bondholders' Coalition, and the QTCB Noteholder Group, each as such group is defined at Docket Nos.
28, 68, 216, and 134 in the Commonwealth Title III Case, respectively.

**WHEREFORE**, the Committee respectfully requests that this Court enter an order substantially in the form attached hereto granting the relief requested herein, and granting the Committee such other relief as this Court deems just and proper.

Dated:  November 7, 2017
San Juan, Puerto Rico

*Luc A. Despins, Esq_____*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and –

*Juan J. Casillas Ayala, Esq. ____*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

24