## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 1518, 1583, 1584, 1666** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Movants,<br><br>-against-<br><br>THE PBA FUNDS; THE QTCB NOTEHOLDER GROUP; and AMBAC ASSURANCE CORPORATION,<br><br>Respondents. | |

## OMNIBUS REPLY OF FINANCIAL OVERSIGHT
## AND MANAGEMENT BOARD TO OBJECTIONS OF PBA
## FUNDS AND QTCB NOTEHOLDER GROUP, AND AMBAC JOINDER, TO THE
## MOTION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED LEASES

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Electric Power Authority ("PREPA," and together with the Commonwealth, COFINA, HTA, and ERS the "Debtors," and each individually a "Debtor"), as Title III debtors, by and through the Financial Oversight and Management Board for Puerto Rico(the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] respectfully submit this omnibus reply (the "Reply") to:

(a) the *Objection of the PBA Funds to the Motion to Extend Time to Assume or Reject Unexpired Leases* [ECF No. 1583] (the "PBA Funds Objection") filed by the PBA Funds (as defined in the PBA Funds Objection);

(b) the *Objection of the QTCB Noteholder Group to Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4)* [ECF No. 1584] (the "QTCB Objection") filed by the QTCB Noteholder Group (as defined in the QTCB Objection); and

(c) *Ambac Assurance Corporation's (I) Statement Concerning Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4) and (II) Joinder to (A) Objection of the PBA Funds and (B) Objection of the QTCB Noteholder Group*

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Regarding Same* [ECF No. 1666] (the "Ambac Joinder", and together with the PBA Funds Objection and QTCB Objection, the "Objections") filed by Ambac Assurance Corporation ("Ambac", and together with the PBA Funds and QTCB Noteholder Group, the "Objectors").

In support of this Reply, the Debtors respectfully state as follows:[3]

## Preliminary Statement

1.      The Title III Debtors, as tenants, have requested that the Court enter an order extending their deadlines to assume or reject their respective nonresidential real property leases. The Objectors argued, among other things, that the proposed extension of time should be limited to a date certain.  As a preliminary matter, the Objections should be overruled without a hearing on the merits because the Objectors lack standing to object.  The PBA Funds hold Government Facilities Revenue Bonds and Government Facilities Revenue Refunding Bonds issued by the Puerto Rico Public Buildings Authority ("PBA").  The QTCB Noteholder Group holds Qualified School Contraction Bonds and Qualified Zone Academy Bonds issued by PBA.  Ambac is an insurer of certain bonds issued by PBA and guaranteed by the Commonwealth.  As creditors of PBA, the Objectors do not have standing to object to the Motion.  To circumvent this issue, the Objectors attempt to step into the shoes of PBA by asserting arguments that directly implicate PBA's rights.  However, PBA has already asserted its rights as a lessor by consenting to the extension of the time periods under Bankruptcy Code section 365(d)(4).  The Objectors have failed to establish grounds under applicable nonbankruptcy law (as PBA is not a Title III debtor) to assert rights as a creditor of PBA on behalf of PBA, especially where PBA has already exercised such rights in its own discretion to consent to the requested extension.  Moreover, even

---

[3]   Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the *Motion for Entry of Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Bankruptcy Code Section 365(d)(4)* [ECF No. 1518] (the "Motion").

if PBA were a Title III debtor, the Objectors would lack the standing of a party because Bankruptcy Code section 363 governing the use, sale, and lease of property is not applicable to Title III cases.  *See* PROMESA § 301(a).  At most, the Objectors would have party-in-interest standing under Bankruptcy Code section 1109(b), and could be heard, but could not control any defense to the requested extensions.

2.      Should the Court deem it necessary to address the merits of the Objections, the Objections fail on the merits because they seek to have the Court impose a new standard under Bankruptcy Code section 365(d)(4)(B)(ii) where the debtor has obtained the written consent of the lessor to an extension.  Bankruptcy Code section 365(d)(4)(B)(ii) expressly provides the court may "grant a subsequent extension only upon prior written consent of <u>the lessor</u> in each instance."  11 U.S.C. § 306(d)(4)(B)(ii) (emphasis added).  The Objections seek to have the Court impose a new standard under section 365(d)(4) that looks to the business judgment of the non-debtor lessor (here, as purportedly exercised by the lessor's creditors)—which is not supported by any legal authority and is contrary to the plain language of the statute. Accordingly, the Objections should be overruled.

<u>**Reply**</u>

**I.     The Objectors Lack Standing to Object**

3.      The Objectors lack standing to object to the Motion because the Objections assert rights belonging to PBA—the right of a lessor to consent to an extension of the period during which a debtor-tenant must assume or reject unexpired leases of nonresidential real property pursuant to Bankruptcy Code section 365(d)(4), made applicable to these Title III cases by PROMESA section 301(a).  As expressly provided in section 365(d)(4), the court may grant an extension upon the written consent of <u>the lessor</u> (and no other party).  *See* 11 U.S.C. §

4

365(d)(4)(B)(ii).  As noted in the Motion, PBA has considered and exercised its rights under section 365(d)(4) and provided written consent to the requested extensions.

4.      Section 365(d)(4) does not confer on the Objectors (as creditors of PBA, a creditor-lessor, in these Title III cases) any rights with respect to the requested extensions in the Motion.  Courts have held that, where the Bankruptcy Code has conferred rights upon a party, creditors of that party do not have standing to enforce such party's rights under the Bankruptcy Code.[4]  For example, in *In re Riverside Nursing Home*, 43 B.R. 682 (Bankr. S.D.N.Y. 1984), the court held that an assignee of rents does not have standing under section 365(d)(2) to compel a debtor-lessee to assume or reject the lease following the mortgagor-lessor's default.   In interpreting section 365(d)(2), the court noted that "the statutory language does not say that any creditor or party in interest who may appear and be heard on any issues in a Chapter 11 case may compel a debtor to assume or reject a lease.  Only 'a party to such contract or lease' has standing to seek such relief."  *Id.* at 684.  The court rejected the rent assignee's argument it had standing because the rent assignee was the only real party in interest who may collect the rent from the debtor due to the economic relationship between the rent assignee and mortgagor-lessor.  *Id.* at 685.  The court noted, "[t]his argument elides the fact that the statutory language in 11 U.S.C. § 365(d)(2) does not specify that a party in interest, or, for that matter, a creditor with an economic relationship to a debtor's unexpired lease, may compel the debtor to assume or reject it."  *Id.* Conferring standing upon creditors of lessors under section 365(d)(4) is not supported under the plain statutory language, and would only to provoke controversies.  *See In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) ("[W]e find it very difficult to see who might be an

---

[4]   *See In re Irwin Yacht Sales*, 164 B.R. 678 (Bankr. M.D. Fla. 1994) (finding ex-wife of lessor, who was awarded one-half interest in the leased property, did not have standing to oppose debtor's motion to assume lease under section 365); *see also In re Tubular Techs., LLC*, 362 B.R. 243, 245 (Bankr. D.S.C. 2006) (finding that lessor has standing under section 365(d)(4) "[d]espite the fact that [lessor] is not receiving and may not be entitled to receive rental income").

intended beneficiary of [section 364(d)(4)] other than the lessor . . . . A rule that allows other creditors to complain that the lease was not assumed will simply provoke arid controversies . . . .").

5.     Furthermore, the Objectors have failed to demonstrate they have standing under any principle of Puerto Rico law.  At the heart of the Objections is the contention that the Motion may cause PBA to experience decreased revenues and that such decreased revenues will prejudice the Objectors.  This argument reveals the derivative nature of the Objectors' interests and is thus an attempt by the Objectors to step into the shoes of PBA and assert arguments that directly implicate PBA's rights.  They cite no legal authority providing them derivative standing to assert rights of PBA, an instrumentality of the Commonwealth.

## II.     The Objectors Impermissibly Request the Court Circumvent the Plain Language of Bankruptcy Code Section 365(d)(4)

6.     The plain language of Bankruptcy Code section 365(d)(4) and the legislative history provides that where the lessor's written consent has been obtained, a court may extend the time periods under section 365(d)(4).  Bankruptcy Code section 365(d)(4)(B)(ii) provides, "the court may grant a subsequent extension only upon prior written consent of the lessor in each instance."  11 U.S.C. § 365(d)(4)(B)(ii) (emphasis added).[5]  By requiring only the lessor's consent for extensions under this section, Congress intended to limit the court's discretion.  *See In re Dickinson Theatres, Inc.*, 2012 Bankr. LEXIS 5684, at *8 (Bankr. D. Kan. Dec. 4, 2012) ("The legislative history of § 365(d)(4) indicates that the provision requiring lessor consent for extensions of time in excess of 90 days, was 'designed to remove the bankruptcy judge's discretion' . . . ." (quoting H.R. Rep. No. 109-31, Pt.1, p. 86 109th Cong. 1st Sess. (2005),

---

[5]   H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 86 (2005) ("Any subsequent extension can only be granted by the judge upon the prior written consent of the lessor either by the lessor's motion for an extension or on motion of the trustee, provided that the trustee has the prior written approval of the lessor.")

reprinted in E-2 *Colliers on Bankruptcy*, App. Pt. 10(b) at 10-354 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2012))).  Notably, section 365(d)(4)(B)(ii) imposes no other requirements other than the written consent of the lessor.

7.      Yet, the Objectors seek to have the Court ignore the plain language of the statute premising the extension of the time period under section 365(d)(4) upon the prior written consent of the lessor, which has been obtained from PBA by the Debtors here.[6]  Instead, the Objections would have the Court determine the Motion under a new standard under section 365(d)(4)(B)(ii) that would require the Court to examine the non-debtor *lessor's* business judgment—for which the Objectors provide no legal support.  The Objectors overlook that, even if PBA were a Title III debtor, Bankruptcy Code section 363(b) under which the debtor's business judgment is tested does not apply because PROMESA section 301(a) does not render it applicable to Title III cases.  The PBA Funds' basis for the Court to circumvent such plain statutory language is the insinuation that "[PBA's] decisions are not being dictated by the prudent exercise of reasonable business judgment" due to "the natural influence that the Commonwealth has over one of its instrumentalities."   PBA Funds Objection ¶¶ 3–4.  Likewise, the QTCB Noteholder Group alludes to "an insular negotiation" and suggests that an extension under section 365(d)(4) may require the consent of the QTCB Noteholder Group.  QTCB Objection ¶¶ 13, 19 ("[A]t no time did AAFAF or the Oversight Board seek the QTCB Noteholder Group's input or consent, to the extent such consent is required, on the extension sought in this Motion.").  However, the Objectors' allusions are red herrings that do not justify a deviation from the clear statutory language of section 365(d)(4),[7] which Congress incorporated into PROMESA pursuant to

---

[6]   As the PBA Funds note, in all the cases they purport to distinguish, "the requisite consent was obtained by the affected landlords."  PBA Funds Objection ¶ 10, n.4.

[7]   The PBA Funds' citation to *In re Bulk Petrol. Corp.*, Case No. 09-21782 (SVK) (Bankr. E.D. Wis. Dec. 18, 2009) [ECF No. 840-1] only notes that the lessors in that case were nonaffiliates, however, this case does not

PROMESA section 301(a).[8]  Furthermore, "when the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917))).  Here, all that section 365(d)(4)(B)(ii) requires for an extension of time to assume or reject a lease is the prior consent of the lessor, which the Debtors have obtained.

8.     The Objectors also overlook that PBA is an instrumentality of the Commonwealth.  The Commonwealth's instrumentalities are not a band of lone rangers, each out for themselves.  They form an integrated territory under which all instrumentalities participate for the overall good, subject to all applicable statutes and jurisprudence protecting creditors.

## III.     The Debtors' Restructuring Efforts Would Be Jeopardized Without the Relief Requested in the Motion.

9.     As explained more fully in the Motion, if the Debtors are required to decide prematurely whether to assume the Real Property Leases, only to find that such leases are not necessary for their reorganization, the Debtors would be saddled with an administrative expense claim for all amounts due under the leases (which may extend for many years after a plan of adjustment is confirmed), including the cure amounts that would otherwise be prepetition unsecured rejection damage claims.  The PBA Funds contend that "it is disingenuous to suggest

---

provide a legal basis for the Court to impose a new standard under section 365(d)(4) where the lessor has an affiliated relationship to the debtor.

[8]   Congress clearly envisioned that PROMESA would provide a holistic view to the restructuring and revitalization of the Commonwealth and its instrumentalities.  *See* PROMESA § 101(a).  Congress incorporated section 365(d)(4) into PROMESA with full awareness of the complex web of claims and other relationships among the Commonwealth and its instrumentalities, which should not be reason to deviate from the explicit statutory language of section 365(d)(4).  "The island has issued 18 different classes of debt—from general obligation to COFINA, to [Government Development Bank], to utility bonds.  Various local and State laws are involved, and the result is a web of confusion."  162 Cong. Rec. H3600-01, at H3632 (daily ed. June 9, 2016) (statement of Rep. Velazquez).

that a decision to reject the PBA Leases would absolve the Debtors of the obligation to pay postpetition rent as an administrative expense,"[9] because the Debtors would nonetheless be required to keep current on rent obligations under section 365(d)(3).[10] This argument misses the point as even if the Debtors were obligated to pay postpetition rent as administrative expenses (which is not at issue here), such obligation would cease upon the rejection of the lease and potentially save the Debtors many years of lease payments.  However, in a scenario where the lease was unnecessary for the reorganization of the Debtors and was assumed only because the Debtors were forced to decide prematurely whether to reject or assume the lease, the Debtors would be saddled with lease payments until the full term ended.

10.     Accordingly, for the reasons stated above, the Court should overrule the Objections.

*[Remainder of Page Intentionally Left Blank]*

---

[9]   PBA Funds Objection ¶ 11

[10]   This argument reveals that the purpose of the PBA Funds Objection is to substitute the PBA Funds' business judgment (as a de facto trustee or receiver) for that of PBA, who has considered and exercised its right under section 365(d)(4).

WHEREFORE the Oversight Board respectfully requests the Court (a) overrule the

Objections, (b) enter the Proposed Order substantially in the form of **Exhibit A** attached to the

Motion, and (c) grant the Debtors such other relief as is just and proper.


Dated: November 8, 2017                              Respectfully submitted,
      San Juan, Puerto Rico

      */s/ Martin J. Bienenstock*

      Martin J. Bienenstock (*pro hac vice*)
      Paul V. Possinger (*pro hac vice*)
      Ehud Barak (*pro hac vice*)
      Maja Zerjal (*pro hac vice*)
      **PROSKAUER ROSE LLP**
      Eleven Times Square
      New York, NY 10036
      Tel:  (212) 969-3000
      Fax:  (212) 969-2900

      *Attorneys for the Financial Oversight and*
      *Management Board as Representative for the*
      *Debtors*

      */s/ Herman D. Bauer*

      Hermann D. Bauer
      USDC No. 215205
      **O'NEILL & BORGES LLC**
      250 Muñoz Rivera Ave., Suite 800
      San Juan, PR 00918-1813
      Tel:  (787) 764-8181
      Fax:  (787) 753-8944

      *Co-Attorneys for the Financial Oversight and*
      *Management Board as Representative for the*
      *Debtors*