|  |  |
|---|---|
| **Hearing Date:** | TBD |
| **Objection Deadline:** | December 4, 2017 |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------x

*[Caption continued on next page]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

```
--------------------------------------------------------------x
```

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
|      as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO | |
|         Debtor. | |

```
--------------------------------------------------------------x
```

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
|      as representative of | |
| PUERTO RICO SALES TAX FINANCING<br>CORPORATION, | No. 17 BK 3284-LTS |
|         Debtor. | This Document Relates to:[2]<br>17 BK 3283; 17 BK 3284 |

```
--------------------------------------------------------------x
```

## MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO FOR ENTRY OF ORDER (A) CONFIRMING SCOPE OF COFINA AND COMMONWEALTH AGENTS' AUTHORITY UNDER STIPULATION AND ORDER AND (B) DETERMINING CERTAIN CLAIMS TO EXCEED SCOPE OF THE COMMONWEALTH-COFINA DISPUTE

---

[2] Pursuant to Paragraph 5 of the Joint Administration Order entered in lead Case No. 17 BK 3283-LTS [ECF No. 242], this pleading will be filed in both the lead Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS.

2

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................... 1

Jurisdiction and Venue .................................................................................................. 3

Background ..................................................................................................................... 4

Relief Requested .......................................................................................................... 17

Basis for Relief ............................................................................................................ 18

I.        The Scope of the Agents' Authority Under the Stipulation and Order is Narrow. 18

II.       The Agents Have Exceeded the Scope of Their Authority Under the Stipulation
          and Order. ........................................................................................................ 20

   A.     The COFINA Agent's Answer and Counter-Claims Exceed the Scope of the
          Narrow Authority Delegated to the Agent Under the Stipulation and Order. ...... 20

   B.     The Commonwealth Agent's Adversary Complaint Exceeds the Scope of the
          Narrow Authority Delegated to the Agent Under the Stipulation and Order. ...... 22

III.      The Oversight Board, as Principal, Should Determine the Litigation Schedule As
          Necessary. ........................................................................................................ 23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Banco de San Juan v. Registrador*,
   103 D.P.R. 417 (1982) ...........................................................................................18

*Davis. v. Daubón*,
   140 D.P.R. 49 (1996) .............................................................................................19

*First National Bank v. Registrador*,
   89 D.P.R. 766 (1964) .............................................................................................19

*Font v. Registrador*,
   57 D.P.R. 635 (1940) .............................................................................................19

*García v. Suro, Inc.*,
   19 D.P.R. 755 (1913) .............................................................................................18

*Zarelli v. Registrador de la Propriedad de San Juan*,
   124 D.P.R. 635 (1940) ...........................................................................................19

STATUTES

11 U.S.C. § 541 .............................................................................................................18

48 U.S.C. §§ 2101-2241 ..................................................................................................1

48 U.S.C. § 2125 .............................................................................................................4

PROMESA § 104(b) ........................................................................................................4

PROMESA § 105 .............................................................................................................4

PROMESA § 301(c)(7) ....................................................................................................4

PROMESA § 306(a) .........................................................................................................3

PROMESA § 307(a) .........................................................................................................3

PROMESA § 312 .............................................................................................................4

PROMESA § 315 .............................................................................................................4

PROMESA § 407 ...........................................................................................................21

i

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Debtors"),[3] by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[4] respectfully submit this Motion (the "Motion") for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to the Stipulation and Order (a) confirming the scope of the authority of the Oversight Board's agents appointed thereunder for the purpose of resolving the Commonwealth-COFINA Dispute (as defined below) and (b) determining certain claims to exceed the scope of the Commonwealth-COFINA Dispute.  In support of the Motion, the Oversight Board respectfully states as follows:

## Preliminary Statement

1.      The Oversight Board appointed the Commonwealth Agent and the COFINA Agent (collectively, the "Agents") to answer one narrow question – whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt (the "Pledged Sales Taxes") are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  The Oversight Board proposed the appointments for the simple reason that

---

[3]   Capitalized terms used but not defined herein have the meanings given to them in the Application (as defined herein) or the Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute [ECF No. 996; Case No. 17-03283-LTS] (the "Stipulation and Order"), as applicable.

[4]   PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

1

the Oversight Board declined to choose a side in this dispute – not, as the COFINA Agent has

suggested, because it believes it has a disabling conflict of interest.[5]

2.      In actuality, both the COFINA Agent and Commonwealth Agent have exceeded

the scope of their respective agencies by making claims and seeking relief that go beyond the

narrow issue for which they were appointed to resolve—the Commonwealth-COFINA Dispute.

The Oversight Board thus seeks an order confirming the scope of the tasks it expressly assigned

to its Agents, so the Agents can answer the single question posed to them, through litigation or

authorized settlement, and the Oversight Board can then use that answer to carry out its duty to

restructure the debts of the Commonwealth and COFINA.  Additionally, given the narrow issue

assigned to the Agents for resolution, and with the benefit of confirmation on scope, the

pleadings can be tailored to eliminate several causes of action and avoid further delay.  By this

motion, the Oversight Board does not waive, and expressly reserves, its rights under the

Stipulation and Order to propose and negotiate its own settlement of the Commonwealth-

COFINA Dispute in the form of plans of adjustment.

3.      Not to be outdone, and seizing on an opportunity, certain "Permitted Intervenors"

have jumped into this limited fray to vent their views concerning not necessarily the

Commonwealth-COFINA Dispute, but rather, a myriad of other issues which are clearly outside

the scope of the limited mandate, including the assertion of claims for monetary recoveries

against the Commonwealth and its claimholders.  Indeed, the "Permitted Intervenors" have

collectively filed several dozen new counts, most of which are beyond the scope of this dispute

and depend upon a resolution of the ownership question before they can be properly considered.

---

[5]   Congress established a single Oversight Board for the Commonwealth and all of its instrumentalities with full
knowledge of claims and potential claims among them, to enable a comprehensive restructuring of the island's
debt, as opposed to a never-ending battle among multiple warring boards.

Numerous other counts asserted by the Permitted Intervenors' are duplicative of the Agents' counts, and therefore violate the limited scope of intervention set forth in paragraph 5 of the Stipulation and Order.  Moreover, the Permitted Intervenors, as claimholders, cannot step into the shoes of the debtor and assert rights of the debtor where their interest is derivative of the debtor's interest.  Thus, in accordance with the Stipulation and Order and this Court's Order, dated October 31, 2017 [ECF No. 77] (the "Scheduling Order"), the Oversight Board seeks to limit the Commonwealth-COFINA Dispute to its original extent and purpose and to require all parties, Agents and Permitted Intervenors alike, to "color within the lines" and adhere to the solitary question posed.

4.    In filing the Motion, the Oversight Board does not wish to limit parties' rights, interests, or claims and causes of action.  Rather, in an event to move this process forward, the Oversight Board merely seeks that the extraneous claims and causes of action being proposed to be heard be considered at a time and in a forum more appropriate.

5.    Accordingly, and for the reasons set forth below, the Oversight Board respectfully requests the Court enter the Proposed Order to reign in the unauthorized actions of the Agents and prevent resolution of the Commonwealth-COFINA Dispute from being sidetracked or derailed by various parties' extraneous agendas.

**Jurisdiction and Venue**

6.    The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a), paragraph 8 of the Stipulation and Order and the Scheduling Order.

7.    Venue is proper in this district pursuant to PROMESA section 307(a).

8.     The statutory predicates for the relief sought herein are PROMESA §§ 104(b), 301(c)(7), 312, and 315, and Bankruptcy Code section 105, made applicable to these Title III cases by PROMESA section 301(a).

### Background

9.     The Commonwealth-COFINA Dispute involves a narrow question: whether the sales and use taxes purportedly pledged by COFINA to secure debt (the "Pledged Sales Taxes") are property of the Commonwealth or COFINA under applicable law.  *See* Stipulation and Order ¶ 4.  The Oversight Board, after due deliberation, declined to take a position on this question. Instead, it delegated a limited, specific portion of its authority to each of its Agents.  The scope of the litigation and, relatedly, the scope of both the Commonwealth Agent's and the COFINA Agent's authority to resolve this dispute were set forth in the Stipulation and Order.

10.     The Court specifically retained jurisdiction with respect to all matters arising from, or related to the implementation, interpretation, and enforcement of this Stipulation and Order.  *See* Stipulation and Order ¶ 8.

11.     On August 21, 2017, the COFINA Agent filed a motion in the Commonwealth Title III case seeking, among other relief, confirmation that the exemption of liability for claims, as provided in 48 U.S.C. § 2125 and PROMESA § 105, applied to actions taken by the COFINA Agent as part of its work done to resolve the Commonwealth-COFINA Dispute (the "Section 105 Motion").  [ECF No. 1121; Case No. 17-03283-LTS.]

12.     On September 19, 2017, the Oversight Board filed an objection to the Section 105 Motion (the "Oversight Board Objection").  [ECF No. 1348; Case No. 17-03283-LTS.]  In the context of the Oversight Board Objection, the Oversight Board demonstrated that the Answer and Counter-Claims, as defined below, contained various causes of action outside the scope of

4

the authority delegated to the Agent and the sole legal question presented by the dispute—that is, "whether the Commonwealth or COFINA owns certain sales and use taxes." *Id.* at ¶ 1.

13.     At the hearing on October 25, 2017 on the Section 105 Motion (the "<u>Hearing</u>" or "<u>Hrg.</u>"), the Court indicated that the scope of the COFINA Agent's authority may be challenged. Hrg. Tr. at 46:24- 47:12.  Counsel for the COFINA Agent did not dispute that the scope of the Agents' authority needed to be clarified.  *See id.* at 47:13-14 ("Your Honor is correct, that there are scope issues.").  Similarly, counsel for the Commonwealth Agent conceded "[t]he scope [of the Agents' authority] needs to be determined." *Id.* at 60:4.

14.     In the context of this discussion, counsel for the COFINA Agent stated that "[t]he COFINA [A]gent was appointed in order to carry out the [O]versight [B]oard's responsibilities in litigating and mediating the [C]ommonwealth-COFINA dispute.  In other words, she's stepping into the shoes of the [O]versight [B]oard for those purposes." *Id.* at 45:5-9.

15.     While the Stipulation and Order authorizes the Agents to assert claims, affirmative defenses, and counter-claims, those claims, defenses, and counter-claims must remain within the limited scope of the Agents' authority.  *See id.* at 66:5-6.  Accordingly, neither Agent is empowered to do such acts as (a) bringing counterclaims against the other Agent when the real defendants are other entities, (b) exercising control over sovereign powers of the Commonwealth or COFINA, and (c) requesting remedies for hypothetical future illegal acts of the Commonwealth or COFINA.

## I.   The Agents and Certain Permitted Intervenors Have Pursued Actions Exceeding the Scope of the Commonwealth-COFINA Dispute

### A.   <u>The Commonwealth Agent Complaint</u>

16.     Pursuant to the Stipulation and Order, on September 8, 2017, the Commonwealth Agent initiated an adversary proceeding against the COFINA Agent to adjudicate the

5

Commonwealth-COFINA Dispute (the "Adversary Complaint").  [ECF No. 1; Adv. Proc. No.

17-00257].[6]  Therein, the Commonwealth Agent asserted thirteen (13) separate counts and

causes of action.  The Oversight Board has reviewed the Adversary Complaint and submits that

Count III is outside the scope of the Commonwealth-COFINA Dispute:

| Count | Reason the Count is Outside the Scope of the Stipulation and Order |
|---|---|
| Count III: "[T]he Commonwealth Agent hereby indicates its intent to breach, revoke, and/or reject that unsecured promise" that sales and use tax ("SUT") "revenues would be transferred to COFINA in the future." | This Count seeks to change the taxes imposed by the Commonwealth.  The Agent's scope does not include controlling the Commonwealth's taxing power.  For purposes of carrying out its mission, the Commonwealth Agent may allege and prove the Commonwealth has the power to repeal or reject the taxes, but it may not exercise that power. |

### B.  The COFINA Agent Answer and Counter-Claims

17.     On September 15, 2017, the COFINA Agent filed its answer to the

Commonwealth Agent's complaint (the "Answer and Counter-Claims").  [ECF No. 27; Adv.

Proc. No. 17-00257.]  Besides its denial of the claims asserted by the Commonwealth Agent, the

COFINA Agent asserted nine (9) counterclaims, including, without limitation, seeking the

dismissal of the COFINA Title III case.  On October 30, 2017, the COFINA Agent filed its

Amended Answer, Defenses and Counterclaims.  [ECF No. 75; Adv. Proc. No. 17-00257], with

the only substantive difference between the COFINA Agent's original and amended Answer and

Counterclaims being that the COFINA Agent deleted her original demand that the COFINA Title

III case be dismissed.  The Oversight Board has reviewed the Answer and Counter-Claims and

---

[6]   On October 25, 2017, the Commonwealth Agent filed an amended complaint correcting technical errors in the
original complaint.  [ECF No. 73; Adv. Proc. No. 17-00257.]

the following chart illustrates the COFINA Agent's counterclaims which the Oversight Board

submits remain outside the scope of the Commonwealth-COFINA Dispute:

| Count | Reason the Count is Outside the Scope of the Stipulation and Order |
|---|---|
| Count II: Declaration that the "Commonwealth's misappropriation of the Pledged Sales Tax and/or Dedicated Sales Tax" constitutes a violation of the U.S. and Puerto Rico Constitutions. | This Count presupposes (a) that COFINA is the owner of the Pledged Sales Taxes and (b) the Commonwealth will illegally take Pledged Sales Tax revenues otherwise channeled to COFINA.  The purpose of the Commonwealth-COFINA Dispute is to determine the ownership question and not to litigate issues that may or may not occur after such determination.  The Oversight Board has already advised the Court that if the Commonwealth requires Pledged Sales Tax revenues before the litigation is resolved, it will request authorization to borrow them.  The COFINA Agent has no power to hypothesize the legality of future transfers and to litigate them. |
| Count III: Declaration that the "Commonwealth's misappropriation of the Pledged Sales Tax and/or Dedicated Sales Tax through the Compliance Law" constitutes a violation of PROMESA. | This Count is outside the scope because the COFINA Agent was not granted power to block future hypothetical transfers.  Further, there can be no issue with the Compliance Law if COFINA is not the owner of the Pledged Sales Taxes.  Thus, such actions, if any, could only be brought after the determination of the Commonwealth-COFINA Dispute.  Moreover, Article 4.04 of the Compliance Law expressly provides it is subject to PROMESA section 407 which protects creditors from inter-debtor transfers |
| Count VII: Permanent Injunctive Relief against the Commonwealth, preventing the Commonwealth from "interfering" with the Funds. | The COFINA Agent is unauthorized to enjoin the Commonwealth from exercising its sovereign powers, nor is it authorized to seek injunctive relief against the Commonwealth that would interfere with its property or political and governmental powers under PROMESA section 305.  Therefore, this count is outside the COFINA Agent's power to bring.  There would only be interference with Funds if it is determined that COFINA is the |

| | rightful owner of the Pledged Sales Tax. This is an issue that will only be determined at the conclusion of the Commonwealth-COFINA Dispute. |
|---|---|
| Count VIII: Declaration that "the GO Bonds, PBA Bonds and Other Debt Issued in Violation of the Debt Limit" Are Not Entitled to Priority under the Constitution. | The COFINA Agent has no authority to object to claims against the Commonwealth. The COFINA Agent can only bring counterclaims that can be brought against the Commonwealth Agent, not against Commonwealth claimholders. In addition, this has no bearing on the resolution of the Commonwealth-COFINA Dispute. |

**C. Several Permitted Intervenors Exceed the Scope**

18.   The following charts illustrate the claims brought by Ambac, the COFINA Senior Bondholders, the Mutual Fund Group/Puerto Rico Funds, and National which the Oversight Board submits are outside the scope of the Commonwealth-COFINA Dispute:

| Ambac | |
|---|---|
| **Count** | **Reason the Count is Outside the Scope of the Stipulation and Order** |
| Count I: Breach of Contract Against the Commonwealth with respect to the Non-Impairment Covenants in Act 91 (and demanding that, in the event COFINA is unable to pay claims under the Policy, that the Commonwealth "indemnify Ambac for all such losses"). | The Commonwealth-COFINA Dispute is confined solely to the issue of ownership of the Pledged Sales Taxes and is not the proper place for Ambac to assert a breach of contract claim against the Commonwealth. If Ambac seeks to assert such a claim, it may do so in a separate proceeding. Ambac acknowledges that the claim may be premature and may be best resolved after the resolution of the Commonwealth-COFINA Dispute: "[T]o the extent there can be no breach of the Non-Impairment Covenants until the Commonwealth has been granted relief upon one of the Causes of Action in its Complaint, Ambac hereby realleges and asserts the above counterclaims (¶¶ 56-65), contingent upon the Commonwealth being awarded relief upon one of the Causes of Action in its Complaint." Ambac Answer ¶ 66. |

8

| | |
|---|---|
| Count II: Breach of Good Faith Performance Against the Commonwealth, for failing to fulfill its obligations under the Non-Impairment Covenants (and demanding that, in the event COFINA is unable to pay claims under the Policy, that the Commonwealth "indemnify Ambac for all such losses"). | The Commonwealth-COFINA Dispute is confined solely to the issue of ownership of the Pledged Sales Taxes and is not the proper place for Ambac to assert a breach of good faith performance claim against the Commonwealth. If Ambac seeks to assert such a claim, it may do so in a separate proceeding. Ambac acknowledges that the claim may be premature and may be best resolved after the resolution of the Commonwealth-COFINA Dispute: "[T]o the extent there can be no breach of good faith performance until the Commonwealth has been granted relief upon one of the Causes of Action in its Complaint, Ambac hereby realleges and asserts the above counterclaims (¶¶ 67-76), contingent upon the Commonwealth being awarded relief upon one of the Causes of Action in its Complaint." *Id.* ¶ 77. |
| Count III: "Contingent" Claim for Fraud Against the Commonwealth, for "creating COFINA . . . to unlawfully evade certain provisions of the Puerto Rico Constitution." | This claim is duplicative of the COFINA Agent's Sixth Cause of Action and is therefore outside the scope of permitted intervention pursuant to the Stipulation and Order.[7] Ambac acknowledges that this claim is "contingent" upon the resolution of the Commonwealth-COFINA Dispute and is therefore clearly outside the scope of the litigation. *See id.* ¶ 83 (recognizing that Ambac should only be entitled to the requested relief "if a Court grants relief on the Commonwealth Agent's Twelfth and Thirteenth Causes of Action"). If Ambac seeks to assert this claim against the Commonwealth, it may do so in a separate proceeding, after resolution of the Commonwealth-COFINA Dispute. |
| Count IV: "Contingent" Claim for *Dolo* Against the Commonwealth, for using deceit to | This claim is duplicative of the COFINA Agent's Sixth Cause of Action and is therefore |

---

[7]   *See* Stipulation and Order ¶ 5 ("Intervention; Rights To Participate. Each of the creditor parties, statutory committees, and Creditor Representatives, that are Signatories (the "Permitted Intervenors"), shall be authorized to intervene, in its individual capacity or as part of a group, and be heard in any litigation between the Agents to resolve the Commonwealth-COFINA Dispute without further order of the Court; *provided, however*, that the Court may impose reasonable limitations on participation by the Permitted Intervenors to avoid duplication and undue burdens on the Court.").

| | |
|---|---|
| fraudulently induce Ambac to issue its Policy. | outside the scope of permitted intervention pursuant to Paragraph 5 of the Stipulation and Order. Ambac acknowledges that this claim is "contingent" upon the resolution of the Commonwealth-COFINA Dispute and is therefore clearly outside the scope of the litigation. *See id.* ¶ 88 (recognizing that Ambac should only be entitled to the requested relief "if a Court grants relief on the Commonwealth Agent's Twelfth and Thirteenth Causes of Action"). |
| Count V: "Contingent" Claim Against the Commonwealth for Violation of the Contracts Clause of the U.S. Constitution. | Ambac acknowledges that this claim is "contingent" upon the resolution of the Commonwealth-COFINA Dispute and is therefore clearly outside the scope of the litigation. *See id.* ¶ 97 (recognizing that constitutional violation alleged will have occurred only "if this Court were to find that the transfers of [Dedicated Sales Tax] revenues from the Commonwealth to COFINA were not subject to or controlled by the Old Puerto Rico UCC, but are subject to or controlled by the New Puerto Rico UCC"). |
| Count VI: "Contingent" Claim Against the Commonwealth for Violations of the Takings and Due Process Clauses of the U.S. Constitution. | Ambac acknowledges that this claim is "contingent" upon the resolution of the Commonwealth-COFINA Dispute and is therefore clearly outside the scope of the litigation. *See id.* ¶ 97 (recognizing that "[i]f the transfer of [Dedicated Sales Tax] revenues from the Commonwealth to COFINA is limited or restrained in any way, and just compensation is not provided therefor, then such limits or restraints constitute an unconstitutional taking and a violation of Ambac's due process rights"). |
| Count VII: "Contingent" Declaration, in order to prevent a violation of the Contracts Clause of the U.S. Constitution, stating that "the effect of any invalidation of Act 91—in whole or in part—is to cause the COFINA bonds to become revenue bonds subject to clawback, and which must be repaid second only to the public debt." | Ambac acknowledges that this claim is "contingent" upon the resolution of the Commonwealth-COFINA Dispute and is therefore clearly outside the scope of the litigation. *See id.* ¶ 97 (recognizing that "if this Court finds that the [Dedicated Sales Tax] revenues are 'available resources' of the Commonwealth, the complete remedy is excising from Act 91 the provision that |

| | exempts the DST revenues from being 'available resources'"). |
|---|---|

| COFINA Senior Bondholders | |
|---|---|
| **Count** | **Reason the Count is Outside the Scope of the Stipulation and Order** |
| Count II: Declaratory Judgment Against the Commonwealth and Permitted Intervenors that the Commonwealth's alleged "misappropriation" of the Funds, through the Compliance Law, violates the Takings and Due Process Clauses of the U.S. and P.R. Constitutions. | This claim is premature and presupposes resolution of the ownership question. To the extent that the Commonwealth-COFINA Dispute is resolved in the Commonwealth's favor, the COFINA Senior Bondholders will have no claim. If the dispute is resolved in COFINA's favor, and the Commonwealth misuses the funds, the COFINA Senior Bondholders may bring this claim in a separate proceeding. |
| Count III: Declaratory Judgment Against the Commonwealth and Permitted Intervenors that any award of just compensation or damages for violation of the Takings Clauses cannot be impaired by a PROMESA Plan or an Order Confirming a PROMESA Plan. | This claim is contingent upon resolution of the ownership issue in the Commonwealth's favor. This claim is not directed to the quantum of damages, if any, but the treatment of bondholders' claim under a Plan and should be considered at confirmation. |
| Count IV: Declaratory Judgment Against the Commonwealth and Permitted Intervenors for violations of the Contracts Clauses of the U.S. and P.R. Constitutions. | This claim is premature and presupposes resolution of the ownership question. To the extent that the Commonwealth-COFINA Dispute is resolved in the Commonwealth's favor, the COFINA Senior Bondholders will have no claim. If the dispute is resolved in COFINA's favor, and the Commonwealth misuses the funds, the COFINA Senior Bondholders may bring this claim in a separate proceeding. |
| Count V: Declaratory Judgment Against the Commonwealth and Permitted Intervenors that the Compliance Law violates PROMESA. | There can be no issue with the Compliance Law if COFINA is not the owner of the Pledged Sales Tax. Thus, such actions, if any, could only be brought after the determination of the Commonwealth-COFINA Dispute. Moreover, Article 4.04 of the Compliance Law expressly provides it is subject to PROMESA section 407 which protects creditors from inter- |

11

| | debtor transfers. |
| | The Pledged Sales Taxes are not being transferred from the Dedicated Sales Tax Fund to the Commonwealth's General Fund, and will not be until a resolution of the ownership question. |
| Count VII: Declaratory Judgment Against the Commonwealth and Permitted Intervenors that (i) the reduction of the amount of SUT proceeds COFINA receives from 6% to 5.5%, implemented by Act 84, is void and invalid because it violates PROMESA; and (ii) COFINA is entitled to 6% of the SUT proceeds collected by the Commonwealth until the Pledged Base Amount is reached in a given year. | This claim is duplicative of the COFINA Agent's Fourth Cause of Action and is therefore outside the scope of permitted intervention pursuant to Paragraph 5 of the Stipulation and Order. Moreover, this claim presumes COFINA's ownership of the Pledged Sales Taxes. To the extent COFINA is determined to be the owner of the Pledged Sales Tax, claimholders can bring a separate proceeding to determine whether the reduction of Pledged Sales Tax under Act 84 violated PROMESA. |
| Count VIII: Tortious Interference with Contract, against the Commonwealth, and the imposition of a constructive trust in "their or COFINA's favor." | This claim is duplicative of the COFINA Agent's Fifth Cause of Action and is therefore outside the scope of permitted intervention pursuant to Paragraph 5 of the Stipulation and Order. This claim also presumes COFINA's ownership of the Pledged Sales Taxes. |
| Count IX: Fraud, against the Commonwealth, for inducing bondholders to purchase COFINA bonds while knowing that they are exceeding the constitutional debt limit. | This claim is duplicative of the COFINA Agent's Ninth Cause of Action and is therefore outside the scope of permitted intervention pursuant to Paragraph 5 of the Stipulation and Order. This claim presumes that the COFINA structure is invalid. Moreover, this claim should be brought by the bondholders in a separate proceeding. |
| Count X: An order permanently enjoining the Commonwealth from: "(i) diverting or transferring the Pledged Sales Tax proceeds, including all Pledged Sales Tax proceeds collected in the future, or the funds in the Dedicated Sales Tax Fund away from COFINA and COFINA's creditors; (ii) designating the Pledged Sales Tax, including all Pledged Sales Tax proceeds collected in the future, or the funds in the Dedicated Sales Tax | Count X is not a cause of action but a theory of relief that is premised on the COFINA Agent or Permitted Intervenors prevailing on other claims. |

12

| | |
|---|---|
| Fund as "available resources" under the Constitution of Puerto Rico; (iii) taking any action to 'breach, revoke, and/or reject' the transfer of the Pledged Sales Tax, including all Pledged Sales Tax collected in the future, or the Dedicated Sales Tax Fund to COFINA and for the benefit of COFINA's creditors; (iv) taking any action to interfere with or attempt to interfere with COFINA's rights or the rights of its creditors to the Pledged Sales Tax, including all Pledged Sales Tax collected in the future, or the funds in the Dedicated Sales Tax Fund; and (v) taking any action to interfere with or attempt to interfere with COFINA's or the COFINA bondholders' rights and obligations under the Resolution." | |
| Count XI: Declaratory Judgment Against the Commonwealth and Permitted Intervenors that if the Commonwealth "did not transfer ownership, then it equitably assigned the Pledged Sales Tax to COFINA or its creditors." | This claim is contingent on the resolution of the ownership issue and is therefore outside the scope of the litigation.  Moreover, even if this issue was within the scope, it concerns COFINA's rights, of which the bondholders' interests are derivative, and therefore the bondholders lack standing to bring this claim. |
| Count XII: Declaratory Judgment against the Commonwealth and Permitted Intervenors that if "the Commonwealth did not effectuate a legally valid transfer of ownership of the future Pledged Sales Tax to COFINA, then the Pledged Sales Tax is [should be held] in a resulting trust for COFINA's and its creditors' benefit." | This claim is contingent on the resolution of the ownership issue and is therefore outside the scope of the litigation.  Moreover, even if this claim was within the scope, it concerns COFINA's rights, of which the bondholders' interests are derivative, and therefore the COFINA senior bondholders lack standing to bring this claim. |
| Count XIII: Declaratory Judgment against the Commonwealth and Permitted Intervenors that if "the Commonwealth did not effectuate a legally valid transfer of ownership of the future Pledged Sales Tax to COFINA and the Commonwealth in fact did not intend to transfer ownership of the future Pledged Sales Tax to COFINA, the Pledged Sales Tax must be held in constructive trust for COFINA.." | This claim is contingent on the resolution of the ownership issue and is therefore outside the scope of the litigation.  Moreover, even if this issue was within the scope, it concerns COFINA's rights, of which the bondholders' interests are derivative, and therefore the COFINA senior bondholders lack standing to bring this claim. |
| Count XIV: Declaratory Judgment against the Commonwealth and Permitted Intervenors that if "the Commonwealth did not transfer | This count does not pertain to the Commonwealth-COFINA Dispute. Rather, this count seeks a remedy in the event the |

13

| | |
|---|---|
| ownership, and COFINA does not have a security interest, the Bankruptcy Code and PROMESA preempt any priority of payment in the Puerto Rico Constitution." | Commonwealth is deemed to own the Pledged Sales Tax. Moreover, the count goes to the treatment of a claim under a Plan and it is directed towards the GO Bondholders and not the Commonwealth itself. |
| Count XV: Declaratory Judgment Against the Commonwealth and Permitted Intervenors that the GO Bonds, PBA Bonds, and Other Debt Issued in "Violation of the Puerto Rico Constitution's Debt Limit are Not Entitled to Priority." | This count does not pertain to the Commonwealth-COFINA Dispute. Rather, this count seeks a remedy in the event the Commonwealth is deemed to own the Pledged Sales Tax. Moreover, the count goes to the treatment of a claim under a Plan and it is directed towards the GO Bondholders, PBA Bondholders, and other debtholders, and not the Commonwealth itself. COFINA's bondholders should not use this adversary proceeding to challenge the Commonwealth bondholders' status when it is more properly litigated under a separate proceeding. |
| Count XVII: Declaratory Judgment against the 2014 GO Bondholders that they "contractually disclaimed any entitlement to the Pledged Sales Tax." | This count does not pertain to the Commonwealth-COFINA Dispute. Rather, this count seeks a remedy in the event the Commonwealth is deemed to own the Pledged Sales Tax. Moreover, the count goes to the treatment of a claim under a Plan and it is directed towards the 2014 GO Bondholders and not the Commonwealth itself. COFINA's bondholders should not use this adversary proceeding to challenge the Commonwealth bondholders' rights when it is more properly litigated under a separate proceeding. |
| Count XVIII: Unjust Enrichment, against the Commonwealth and the GO Bondholders. | To the extent this claim relates to the GO Bondholders, it is outside the scope of the Commonwealth-COFINA Dispute. COFINA's bondholders should not use this adversary proceeding to challenge the Commonwealth bondholders' rights when it is more properly litigated under a separate proceeding. |
| Count XIX: Contractual Subordination, against the Permitted Intervenors. "If the Commonwealth did not transfer ownership, and COFINA does not have a security interest," then the COFINA Senior Bondholders seek "subordination of the claims | This count does not pertain to the Commonwealth-COFINA Dispute. Rather, the count goes to the treatment of a claim under a Plan and it is directed towards the Commonwealth's bondholders and not the Commonwealth itself. COFINA's bondholders |

14

| | |
|---|---|
| of [the] GO Bondholders to those of COFINA and its creditors." | should not use this adversary proceeding to challenge the Commonwealth bondholders' rights when it is more properly litigated under a separate proceeding. |
| Count XX: Equitable Subordination Against the Permitted Intervenors. "If the Commonwealth did not transfer ownership, and COFINA does not have a security interest," then the COFINA Senior Bondholders seek "equitable subordination of the claims of [the] GO Bondholders to those of COFINA and its creditors." | This count does not pertain to the Commonwealth-COFINA Dispute. Rather, the count goes to the treatment of a claim under a Plan and it is directed towards the Commonwealth's bondholders and not the Commonwealth itself. COFINA's bondholders should not use this adversary proceeding to challenge the Commonwealth bondholders' rights when it is more properly litigated under a separate proceeding. |
| Count XXI: Declaratory Judgment Against the Commonwealth that any post-petition transfer of the Pledged Sales Tax to entities other than COFINA violates Section 362(a) of the Bankruptcy Code. | This claim is unrelated to the narrow ownership issue and is contingent on the ownership issue being decided in COFINA's favor. Moreover, it is COFINA, and not its bondholders, that has standing to prosecute the breach of the automatic stay against a third party.<br><br>The Pledged Sales Taxes are not being transferred from the Dedicated Sales Tax Fund to the Commonwealth's General Fund until a resolution of the ownership question. |

| Mutual Fund Group/Puerto Rico Funds | |
|---|---|
| **Count** | **Reason the Count is Outside the Scope of the Stipulation and Order** |
| Count II: Declaratory Judgment regarding an "unconstitutional application of PROMESA and the Bankruptcy Code," and seeking a declaration that "Commonwealth's appropriation of the Dedicated Sales Tax and/or the Dedicated Sales Tax Fund would constitute violations of the Constitutions of the United States and the Commonwealth of Puerto Rico." | This claim is contingent on the resolution of the ownership issue and is therefore outside the scope of the litigation. If the issue is resolved in COFINA's favor, then this claim does not survive because there is no taking. If ownership is decided in favor of the Commonwealth, there is no taking because it is not COFINA's property. |
| Count III: Declaratory Judgment that "upon | The issue of how the COFINA claimholders |

| | |
|---|---|
| acceleration of the COFINA Bonds, the COFINA enabling act provides that all SUT revenues collected in subsequent fiscal years are the property of COFINA and are required to be deposited in the [Urgent Interest Fund] until COFINA's obligations to its bondholders are paid in full." | divide the Pledged Sales Tax is an inter-creditor issue that is being adjudicated in another adversary proceeding.  As a result, it is outside the scope of the Commonwealth-COFINA Dispute. |
| Prayer for Relief: A permanent injunction against the Commonwealth, Commonwealth Agent, and the Oversight Board from: (i) diverting the Dedicated Sales Tax from COFINA; (ii) designating the Dedicated Sales Tax proceeds as "available resources"; (iii) taking any action to "breach, revoke, and/or reject" the transfer of the Dedicated Sales Tax; (iv) taking any action to interfere with or attempt to interfere with COFINA's rights to the Dedicated Sales Tax; and (v) taking any action "to interfere with or attempt to interfere with COFINA's rights and obligations under the Resolution ." | The requested relief is outside the scope of the ownership question and is contingent on the ownership question having been resolved in COFINA's favor. |

| National | |
|---|---|
| **Count** | **Reason the Count is Outside the Scope of the Stipulation and Order** |
| Count II: Declaratory Judgment that the Commonwealth's "misappropriation" of the Pledged Sales Tax and Dedicated Sales Tax Fund "would violate the Takings and Due Process Clauses" of the U.S. and P.R. Constitutions. | This Count presupposes (a) that COFINA is the owner of the Pledged Sales Taxes and (b) the Commonwealth will illegally take Pledged Sales Tax revenues otherwise channeled to COFINA.  The purpose of the Commonwealth-COFINA Dispute is to determine the ownership question and not to litigate issues that may or may not occur after such determination.  The Oversight Board has already advised the Court that if the Commonwealth requires Pledged Sales Tax revenues before the litigation is resolved, it will request authorization to borrow them. National has no power to hypothesize the legality of future transfers and to litigate them. Moreover, this count is duplicative of the |

| | COFINA Agent's Second Cause of Action. |
|---|---|
| Count III: Declaratory Judgment that the Commonwealth's "misappropriation" of the Pledged Sales Tax and Dedicated Sales Tax Fund "would violate the Contracts Clauses" of the U.S. and P.R. Constitutions. | This claim presupposes that the Funds belong to COFINA—if COFINA is not the owner of the funds, there are no constitutional violations.  If COFINA is determined to be the rightful owner of the Funds, National may bring these claims in a separate proceeding in the event that the Commonwealth disregards COFINA's adjudicated ownership rights. |
| Count IV: Declaratory Judgment that the Compliance Law violates PROMESA. | There can be no issue with the Compliance Law if COFINA is not the owner of the Pledged Sales Tax.  Thus, such actions, if any, could only be brought after the determination of the Commonwealth-COFINA Dispute and in the event that the Commonwealth disregards COFINA's adjudicated ownership rights in the Pledged Sales Taxes.<br><br>Moreover, Article 4.04 of the Compliance Law expressly provides it is subject to PROMESA section 407 which protects creditors from inter-debtor transfers.<br><br>The Pledged Sales Taxes are not being transferred from the Dedicated Sales Tax Fund to the Commonwealth's General Fund until a resolution of the ownership question. |
| Prayer for Relief: Dismissal of COFINA's Title III Petition | This claim is outside the scope of the ownership issue. The COFINA Agent has conceded as much, having removed a similar request from its Amended Answer and Counter-claims. |

## **Relief Requested**

19.     The Oversight Board seeks an order ruling (i) the counts pursued by the Agents, as set forth above, are outside the respective scope of the Agents' authorities to resolve the Commonwealth-COFINA Dispute, as provided in the Stipulation and Order ¶ 4; (ii) the counts pursued by the Permitted Intervenors, as set forth above, are outside the scope of the

Commonwealth-COFINA Dispute; and (iii) setting a trial, to the extent needed to resolve factual

issues, on March 5, 2018 or as soon thereafter as convenient for the Court.

<u>Basis for Relief</u>

I.      **The Scope of the Agents' Authority Under the Stipulation and Order is Narrow.**

20.      The Agents were appointed by the Oversight Board to perform the tasks they

were delegated.  Contrary to assertions by the COFINA Agent, they do not hold fiduciary duties

to the Debtors' "estates"[8] and the Debtors' creditors are not their "constituents."  The Agents'

sole constituent is the Oversight Board, the principal that appointed them.  The Agents have

admitted they are, in fact, the agents of the Oversight Board.  Indeed, at a hearing on October 25,

the COFINA Agent acknowledged that they "stepped into the shoes" of the Oversight Board, and

the Commonwealth Agent made the same admission at a hearing on September 15.[9]  The Puerto

Rico Supreme Court has ruled that agency contracts must be interpreted in a restrictive matter.

*See Banco de San Juan v. Registrador*, 103 D.P.R. 417 (1982); *García v. Suro*, 19 D.P.R. 755

(1913).  Accordingly, those powers not expressly stated in the contract, or that may reasonably

be deduced from it, should be considered as not having been conferred to the agent.  *See* José

Ramón Vélez Torres, *Curso de Derecho Civil*, Tom. IV, Vol. II (1990), at p. 422.[10]

---

[8]    Unlike a bankruptcy case under chapter 7 or 11 of the Bankruptcy Code, a Title III petition does not create an estate.  Bankruptcy Code section 541 is not made applicable to Title III cases.

[9]    On September 17, 2017, the Oversight Board filed a motion in an adversary proceeding brought by the Bank of New York Mellon ("BNYM") in the COFINA Title III case clarifying the role of the Agents for purposes of resolving the Commonwealth-COFINA Dispute (the "<u>Clarification Letter</u>").  [ECF No. 410, Adv. Proc. 17-0133.]  The Clarification Letter stated that the Stipulation and Order "substantially renders the Committee the agent of the Oversight Board in its capacity as representative of the Commonwealth for purposes of litigating and negotiating the Commonwealth-COFINA Dispute."  *Id.* at Ex. A.  The Clarification Letter also stated that, "[s]imilarly, for purposes of the Commonwealth-COFINA dispute only and in accordance with the [Stipulation and] Order, Bettina Whyte is the agent of the Oversight Board in its capacity as the representative of COFINA." *Id.*  Neither of the Agents objected to or otherwise challenged the Oversight Board's motion clarifying their roles.

[10]    The Commonwealth and COFINA Agents each hold a specific agency, established for a specific limited purpose.  Under Puerto Rico law, a specific agency is required to authorize an agent to compromise, alienate, encumber, mortgage, or execute any other act of strict ownership relative to the property or business of the principal.  *See* 31

21.     The Stipulation and Order established clearly that the Agents' respective roles are confined to resolution of one purely legal issue, *i.e.* "[w]hether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt . . . are property of the Commonwealth or COFINA under applicable law[.]" Stipulation and Order ¶ 4.  In other words, litigation of the Commonwealth-COFINA Dispute is meant to resolve the discrete issue of whether the Commonwealth or COFINA has a past, present, and/or future right to the Pledged Sales Tax.

22.     The Stipulation and Order repeatedly underscores the limitations it imposes on the Agents' authority:

a.     "Each Agent shall have the rights of its respective debtor solely in respect of the conduct of the litigation and settlement of the Commonwealth-COFINA Dispute." *Id.* ¶ 4.f.

b.     In regard to "[a]ny settlement negotiated pursuant to the protocol approved herein . . . . .other than with respect to ensuring that such settlement is properly embodied within the title III plan of adjustment, the COFINA Agent shall not participate in the negotiations of a title III plan of adjustment in the COFINA title III case." *Id.* ¶ 4.i.

c.     "For the avoidance of doubt, the litigation or negotiation by the Agents shall not include issues other than the Commonwealth-COFINA Dispute." *Id.* ¶ 4.m.

23.     The phrase "issues other than the Commonwealth-COFINA Dispute," as stated in the Stipulation and Order, necessarily includes questions as to what happens after the Commonwealth-COFINA Dispute has been decided.  Furthermore, once the issue of ownership has been adjudicated, questions about what the Commonwealth or COFINA may do with the

---

P.R. Stat. Ann. § 4425; *Davis v. Daubón*, 140 D.P.R. 49 (1996); *Zarelli v. Registrador de la Propiedad de San Juan*, 124 DPR 543 (1989); *First National City Bank v. Registrador*, 89 D.P.R. 766 (1964); *Font v. Registrador*, 57 D.P.R. 635 (1940).  The agency contract must therefore itemize those actions which are authorized as part of the specific agency.  Otherwise, the agent may only carry out general acts of administration, which, under Puerto Rico Law, are limited to maintenance, protection, and up-keep, but not disposition of property.  *Zarelli*, 124 DPR 543.

Pledged Sales Taxes, either with respect to each other or to third parties (including bondholders), would also be outside of their scope of the Agents' authority.

24.     In delegating this narrow authority to the Agents, the Oversight Board explicitly retained all other powers delegated to it under PROMESA with respect to COFINA, its Title III case, and its restructuring.  *Id.* ¶ 11.  Moreover, under the Stipulation and Order, the Oversight Board retained the authority to negotiate a settlement of the Commonwealth-COFINA Dispute and can propose a plan embodying such a settlement on its own.  *Id.* ¶ 4.n.; Hrg. Tr. at 71:5-12.

25.     Based on the foregoing, the Oversight Board respectfully requests that the Court enter an order, substantially in the form of the Proposed Order, ruling certain Counts brought by the Agents, identified above, are outside the scope of the Agents's authority under the Stipulation and Order.  The grounds for such order are (*i*) the Oversight Board's grants of authority to the Agents are limited to questions relating solely to the ownership of the Pledged Sales Taxes, (*ii*) such authority excludes issues requiring the exercise of the sovereign powers of the Commonwealth or COFINA, and (*iii*) the Agents' respective authority to assert counterclaims is restricted to counterclaims against the other Agent, as opposed to counterclaims requiring joinder of creditors or other entities.

## II.     The Agents Have Exceeded the Scope of Their Authority Under the Stipulation and Order.

26.     As stated by the Oversight Board at the Hearing, granting the Agents unlimited powers under the Stipulation and Order was "not intended, [was not] the deal, and is dangerous." *Id.* at 65:20-23.  Nevertheless, the pleadings filed by both Agents contain claims outside the scope of the narrow question the Oversight Board authorized them to resolve.

### A.     The COFINA Agent's Answer and Counter-Claims Exceed the Scope of the Narrow Authority Delegated to the Agent Under the Stipulation and Order.

27.     The Stipulation and Order authorized the COFINA Agent to assert affirmative defenses and counterclaims.  Such counterclaims, however, "have to be within the scope of what they were charged to do," *id.* at 66:3-6, and, most fundamentally, must be assertable as counterclaims against the other Agent, not as claims against other entities.  Neither Agent was granted any authority whatsoever to prosecute a debtor's claims against other entities.

28.     The COFINA Agent's Answer and Counter-Claims exceeds the COFINA Agent's authority.  Counts II, III, VII, and VIII do not concern the limited issue of the ownership of the Pledged Sales Tax.  Counts II and III hypothesize the Commonwealth will wrongfully take the Pledged Sales Tax.  Such claims necessarily rely on a determination that COFINA is the rightful owner of the Pledged Sales Tax, and ignore the plain language of the Compliance law that it is subject to PROMESA § 407.  The Agent was not charged with policing future hypothetical acts by the Commonwealth.  Count VII requests an injunction against the Commonwealth interfering with the Pledged Sales Tax-which would only constitute "interference" if COFINA is determined to be the rightful owner of the Pledged Sales Tax, and, in any event, is outside any power delegated to the COFINA Agent.  Count VIII seeks a declaration that certain bonds were issued in violation of the Constitutional Debt limit.  It is therefore outside the scope of the Commonwealth-COFINA Dispute and cannot be brought by the COFINA Agent as it would have to be prosecuted against Commonwealth claimholders, not the Commonwealth Agent.

29.     The above counts have a common connecting thread, they all assume that COFINA has already won or lost the question of ownership of the Funds.  Once such a determination is made, the COFINA Agent's role is complete and she does not have any authority to bring further actions or speak for the Oversight Board or COFINA.

30. In addition, Count VIII purports to seek a declaration that certain debts of the Commonwealth are not entitled to priority, even though those bondholders are not a party to the Commonwealth-COFINA Dispute.[11]

31. Time is of the essence, particularly as the COFINA Agent, who was given a discrete and narrow set of powers, has gone far beyond the scope of her agency. *See* Hrg. Tr. at 71:17-19. In this instance, the Oversight Board's motion is the proper vehicle for the requested relief, as it is not a party to the Commonwealth-COFINA Dispute and cannot move in that adversary proceeding to dismiss the claims that exceed the COFINA Agent's authority. *Id*. at 70:7-11.

32. The Oversight Board therefore respectfully requests that this Court enter an order confirming the limited scope of Agents' authority provided in the Stipulation and Order and directing the COFINA Agent to further amend the Answer and Counterclaims to delete Counts II, III, VII, and VIII in accordance therewith.

**B.    The Commonwealth Agent's Adversary Complaint Exceeds the Scope of the Narrow Authority Delegated to the Agent Under the Stipulation and Order.**

33. As noted above, the Commonwealth Agent similarly asserts a cause of action in its Adversary Complaint outside the scope of its agency. In short, the Commonwealth Agent attempts to repeal the Pledged Sales Tax and reject the Commonwealth's promise to transfer such taxes to COFINA. Under no interpretation of the Stipulation and Order is the Commonwealth Agent granted the right to control the Commonwealth's taxing power. As explained above, nothing prevents the Commonwealth Agent from proving the Commonwealth

---

[11] Furthermore, the COFINA Agent appeared to recognize that its initial request to dismiss the COFINA Title III case in its prayer for relief was outside the scope of the Stipulation and Order. Counsel for the COFINA Agent stated at the Hearing that it "would be prepared to withdraw it without prejudice," Hrg. Tr. at 51:10-15, and the COFINA Agent did not include that demand in its amended Answer and Counterclaims. Compare Adv. Proc. No. 17-00257-LTS, ECF No. 27 with Adv. Proc. No. 17-00257-LTS, ECF No. 75.

22

has the power to repeal the Pledged Sales Tax as one of its arguments why the Commonwealth

owns the tax in the first instance.  But, the Agent cannot actually repeal or impose any taxes.

### III.    The Permitted Intervenors' Counter-Claims Exceed the Scope of the Dispute.

34.    The Stipulation and Order allows the Permitted Intervenors to "be heard in any

litigation between the Agents to resolve the Commonwealth-COFINA Dispute."  Stipulation and

Order ¶ 5.  The Court may "impose reasonable limitations on participation by the Permitted

Intervenors to avoid duplication and undue burden on the Court."  *Id.*  Thus, the intervention is

limited and should not enable the Permitted Intervenors to introduce duplicate issues or issues

that could be properly brought in a separate proceeding.  In other words, intervention was

permitted so as to flush out the issues between the Agents as it pertains to the Commonwealth-

COFINA Dispute, but not to expand the dispute.  The Oversight Board respectfully submits that

such limitations are needed, given that Ambac, the COFINA Senior Bondholders, the Mutual

Fund Group/Puerto Rico Funds, and National have intervened with the intention of litigating a

variety of issues wholly unrelated to the ownership dispute and most of which depend upon a

resolution of the ownership question before they can be properly considered.  Moreover, the

Stipulation and Order contemplates a swift resolution of the Commonwealth-COFINA Dispute.

Stipulation and Order ¶ 4.e. Thus it is clear that the Stipulation and Order did not intend the

adjudication of other claims outside the scope of the Commonwealth-COFINA Dispute, and

certainly did not intend to have all parties in interest fight each other on all causes of action in a

"battle royale."

35.    Ambac's Counter-Claims Counts I and II have no relationship to the ownership

issue, while Counts III through VII admittedly seek relief "contingent" upon resolution of the

ownership question.  These contingent claims fall outside the scope of the Commonwealth-

COFINA Dispute, as their viability depends entirely on the outcome of the ownership issue.

23

Moreover, Counts III and IV are duplicative of counts being pursued by, and adequately represented by, the COFINA Agent.

36.     The COFINA Senior Bondholders' Counter-Claims Counts II through XV (excluding Count VI), and XVII through XXI are similarly unrelated to the ownership issue or are contingent upon a particular outcome to the Commonwealth-COFINA Dispute.  These contingent claims, if still viable, should be brought in subsequent proceedings.  Moreover, Counts XI-XX are outside the scope as they seek to pursue claims against the Commonwealth's claimholders and should be brought in a separate proceeding.  To the extent Count XVIII relates solely to the Commonwealth and not the GO Bondholders, the Count is within the scope.  The Commonwealth-COFINA Dispute is intended to shed light on the owner of the Pledged Sales Taxes and should not be used as forum for resolving disputes among the debtors' various claimholders.  The COFINA Senior Bondholders also lack standing to assert certain counts as the rights they assert belong not to them, but to COFINA.

37.     The Mutual Fund Group and Puerto Rico Funds' Counter-Claims Count II, III, and the prayer for relief requesting a permanent injunction against the Commonwealth, Commonwealth Agent, and Oversight Board, are outside the scope of the ownership issue.  Moreover, Count III is outside the scope of the dispute as it relates to an inter-creditor issue currently being adjudicated in a separate proceeding.

38.     National's Counter-Claims Counts II and III are outside the scope of the Commonwealth-COFINA Dispute because they presuppose that the Pledged Sales Taxes belong to COFINA, while Count IV is wholly unrelated to the ownership issue.  Moreover, Count II assumes that the Commonwealth would take the property even if the Pledged Sales Taxes are determined to be the property if COFINA.  Moreover, this Count is premised on a future act that

24

has not yet occurred, namely a taking of property that has been adjudicated to COFINA. If such

acts actually materialize, National can pursue those claims at that time. National's additional

request in its prayer for relief that the COFINA Title III petition be dismissed is also outside the

scope of the Commonwealth-COFINA Dispute.

39.     Therefore, the Oversight Board respectfully requests that this Court enter an order

directing the Permitted Intervenors to amend or remove the counter-claims that are outside the

scope of the Commonwealth-COFINA Dispute.

**IV.   The Oversight Board, as Principal, Should Determine the Litigation Schedule As
Necessary.**

40.     The Stipulation and Order provides the Commonwealth-COFINA Dispute must

be resolved by December 15, 2017 unless the Court extends it.  That was a major and critical

term of the agreement.  Absent resolution of the dispute, the proposal of plans of adjustment is

exceedingly difficult because the Pledged Sales Tax is so large.  In turn, the longer it takes the

Commonwealth to resolve its $74 billion of bond debt and $50 billion of unfunded pension debt,

the longer it will take to attract new investment to the Commonwealth by showing that its

financial house is in order.  The Oversight Board, as the appointing principal, should have

substantial input on matters of scheduling because the ownership of the Pledges Sales Taxes is a

gateway issue for the restructuring process, and the Oversight Board is a party to the Stipulation

and Order entitled to enforce the deadline.

41.     The Oversight Board recognizes that, notwithstanding the terms of the

Stipulation and Order and the Agents' prior acceptance of such schedule, upon a subsequent

request by the Agents and despite the Oversight Board's objection, the Court entered an order

establishing, the following schedule: (i) Motions for Summary Judgment shall be served by

January 31, 2018; (ii) opposition briefs due no later than February 21, 2017, and (iii) reply briefs

shall be served by February 28, 2018. While the Oversight Board appreciates that the Court may take any such matters under advisement, due to the magnitude of the issue and the desire to expeditiously continue the restructuring process, the Oversight Board requests that a trial, to the extent needed to resolve factual issues, shall be held on March 5, 2018, or beginning the first day thereafter the Court is available.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Oversight Board respectfully requests the Court enter the Proposed

Order, granting the relief requested herein and all other relief as is just and proper.


Dated: November 13, 2017                      Respectfully submitted,
      San Juan, Puerto Rico

                                                              */s/ Martin J. Bienenstock*

                                                              Martin J. Bienenstock
                                                              Paul V. Possinger
                                                              Ehud Barak
                                                              Maja Zerjal
                                                              (Admitted *Pro Hac Vice*)
                                                              **PROSKAUER ROSE LLP**
                                                              Eleven Times Square
                                                              New York, NY 10036
                                                              Tel: (212) 969-3000
                                                              Fax: (212) 969-2900

                                                              *Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*


                                                              */s/ Hermann D. Bauer*

                                                              Hermann D. Bauer
                                                              USDC No. 215205
                                                              **O'NEILL & BORGES LLC**
                                                              250 Muñoz Rivera Ave., Suite 800
                                                              San Juan, PR 00918-1813
                                                              Tel: (787) 764-8181
                                                              Fax: (787) 753-8944

                                                              *Co-Attorneys for the Financial Oversight
and Management Board as representative
for the Debtors*

27

### CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*

Hermann D. Bauer
