UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------x

In re:                                                    PROMESA
                                                          Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of                              No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO,                          (Jointly Administered)
et al.,

        Debtors.[1]
---------------------------------------------------------x

In re:                                                    PROMESA
                                                          Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of                              No. 17 BK 4780-LTS

PUERTO RICO ELECTRIC POWER                                This document relates only to
AUTHORITY,                                                17 BK 4780 and shall also be
                                                          filed in 17 BK 3283
        Debtor.
---------------------------------------------------------x

OPINION AND ORDER DENYING URGENT MOTION OF FOMB TO
CONFIRM APPOINTMENT OF A CHIEF TRANSFORMATION OFFICER (DOCKET ENTRY NO. 361)

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4) digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS)
(Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation
("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No.
17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement
System of the Government of the Commonwealth of Puerto Rico ("ERS"); and (v) Puerto Rico
Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits
of Federal Tax ID: 3747) (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal
Tax ID: 9686).  (Title III case numbers are listed as Bankruptcy Case numbers due to software
limitations).

APPEARANCES:

O'NEILL & BORGES LLP
By: Hermann D. Bauer
250 Muños Rivera Ave., Suite 800
San Juan, Puerto Rico 00918


PROSKAUER ROSE LLP
By: Martin J. Bienenstock
    Paul V. Possinger
    Ehud Barak
    Maja Zerjal
Eleven Times Square
New York, New York 10036

*Attorneys for Financial Oversight and
Management Board for Puerto Rico, as
representative of the Commonwealth of
Puerto Rico and the Puerto Rico Electric
Power Authority*


AGRAIT LAW
By: Fernando E. Agrait
701 Avenida Ponce de Leon
Edificio Centro de Seguros
Oficina 414
San Juan, Puerto Rico 00907

*Attorneys for Instituto de Competitividad y
Sostenibilidad Económica de Puerto Rico*


PUERTO RICO FISCAL AGENCY AND
FINANCIAL ADVISORY AUTHORITY
By: Mohammad S. Yassin
Robert Sánchez Vilella (Minillas)
Government Cetner
De Diego Avenue, Stop 22
San Juan, Puerto Rico 00907

O'MELVENY & MYERS LLP
By: John Rapisardi
    Suzzanne Uhland
    William J. Sushon
7 Times Square
New York, New York 10036

*and*

M. Randall Oppenheimer
1999 Avenue of the Stars 8th Floor
Los Angeles, California 90067

*and*

Peter Friedman
1625 Eye Street, NW
Washington, D.C. 20006

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*


TORO, COLÓN, MULLET, RIVERA &
SIFRE, P.S.C.
By: Manuel Fernández-Bared
    Linette Figueroa-Torres
    Nayda Pérez-Román
P.O. Box 195383
San Juan, Puerto Rico 00919


KRAMER LEVIN NAFTALIS & FRANKEL
LLP
By: Amy Caton
    Gregory A. Horowitz
    Thomas Moers Mayer
    Alice J. Byowitz
    Douglas Buckley
1177 Avenue of the Americas

New York, New York 10036

*Attorneys for the Ad Hoc Group of PREPA
Bondholders*

ADSUAR MUÑIZ GOYCO SEDA &
PÉREZ-OCHOA, P.S.C.
By: Eric Pérez-Ochoa
     Luis Oliver-Fraticelli
     Alexandra Casellas-Cabrera
     Lourdes Arroyo-Portela
208 Ponce De León Avenue, Suite 1600
San Juan, Puerto Rico 00936

WEIL, GOTSHAL & MANGES LLP
By: Marcia Goldstein
     Jonathan Polkes
     Salvatore A. Romanello
     Gregory Silbert
767 Fifth Avenue
New York, New York 10153

*and*

Stephen A. Youngman
200 Crescent Court, Suite 300
Dallas, Texas 75201

*Attorneys for National Public Finance
Guarantee Corp.*

MCCONNELL VALDÉS LLC
By: Nayuan Zouairabani
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918

WACHTELL, LIPTON, ROSEN & KATZ
By: Richard G. Mason
     Amy R. Wolf
     Emil A. Kleinhaus
     Brian Bolin
     Kim B. Goldberg
51 West 52nd Street
New York, New York 10019

*Attorneys for Scotiabank de Puerto Rico, as
Administrative Agent*


RIVERA, TULLA AND FERRER, LLC
By: Eric A. Tulla
     Iris J. Cabrera-Gómez
50 Quisqueya Street
San Juan, Puerto Rico 00917


MASLON LLP
By: Clark T. Whitmore
     Jason M. Reed
90 South Seventh Street, Suite 3300
Minneapolis, Minnesota 55402


*Attorneys for U.S. Bank National Association,
in its capacity as trustee*


CANCIO, NADAL, RIVERA & DÍAZ,
P.S.C.
By: Arturo Díaz Angueria
     Katiuska Bolaños Lugo
P.O. Box 364966
San Juan, Puerto Rico 00936


GREENBERG TRAURIG LLP
By: Nancy A. Mitchell
     Kevin D. Finger
     David D. Cleary
77 West Wacker Drive Suite 3100
Chicago, Illinois 60601


*Attorneys for the Governing Board of the
Puerto Rico Electric Power Authority*


CASELLA ALCOVER & BURGOS P.S.C.
By: Heriberto Burgos Pérez
     Ricardo F. Casellas-Sánchez
     Diana Pérez-Seda
P.O. Box 364924
San Juan, Puerto Rico 00936

CADWALADER, WICKERSHAM & TAFT
LLP
By: Howard R. Hawkins, Jr.
    Mark C. Ellenberg
    Ellen Halstead
    Thomas J. Curtin
    Casey J. Servais
200 Liberty Street
New York, New York 10281

*Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*


GOLDMAN ANTONETTI & CORDOVA,
LLC
By: Carlos A. Rodríguez-Vidal
    Solymar Castillo-Morales
P.O. Box 70364
San Juan, Puerto Rico 00936

DEBEVOISE & PLIMPTON LLP
By: My Chi To
    Craig A. Bruens
    Elie J. Worenklein
919 Third Avenue
New York, New York 10022

*Attorneys for Syncora Guarantee Inc.*


PUERTO RICO ENERGY COMMISSION
By: Alejandro J. Figueroa-Ramírez
    Tania M. Negrón-Vélez
268 Muñoz Rivera Ave., Suite 702
San Juan, Puerto Rico 00918

SCOTT HEMPLING ATTORNEY AT
LAW, LLC
By: Scott Hempling
417 St. Lawrence Drive
Silver Spring, Maryland 20901

*Attorneys for the Puerto Rico Energy
Commission*

LAURA TAYLOR SWAIN, United States District Judge

Before the Court is an urgent motion, filed on October 26, 2017, by the Financial

Oversight and Management Board for Puerto Rico (the "FOMB," or the "Oversight Board"),

seeking entry of an order confirming the appointment and authority of a Chief Transformation

Officer ("CTO") for the debtor Puerto Rico Electric Power Authority ("PREPA") (docket entry[2]

no. 361 (the "Motion")).  This Court has jurisdiction of this matter pursuant to 48 U.S.C. §

2166(a).

The FOMB seeks court confirmation of its appointment of Noel Zamot as CTO of

PREPA with all the powers of a chief executive officer, reporting to the FOMB.  (Motion ¶ 4.)

The FOMB asserts that a PREPA CTO is necessary in the wake of Hurricane Maria, particularly

given the historical challenges that have "degraded [PREPA's] financial and operating

condition" over the last several years.  (Motion ¶¶ 18-25.)  The Ad Hoc Group of PREPA

Bondholders (the "Ad Hoc Group"), the National Public Finance Guarantee Corporation

("National"), Scotiabank de Puerto Rico ("Scotiabank"), the Puerto Rico Fiscal Agency and

Financial Advisory Authority ("AAFAF"), U.S. Bank National Association ("U.S. Bank"), the

PREPA Governing Board ("Governing Board"), Assured Guaranty Corp. ("Assured"), and

Syncora Guarantee Inc. ("Syncora") (collectively, the "Opposing Parties") oppose the FOMB's

Motion.  The Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico ("ISCE")

has filed papers in support of the appointment of a CTO, and the Puerto Rico Energy

Commission ("PREC") has filed comments to the Motion raising broader policy coordination

issues.

---

[2]     All docket entries refer to case no. 17 BK 4780, unless otherwise specified.

The Court heard oral argument on the Motion on November 13, 2017 (the "November 13th Hearing").  The Court has carefully reviewed and considered all of the submissions made in connection with this Motion, including the arguments presented at the November 13th Hearing and, for the following reasons, the Motion is denied.  This Opinion and Order memorializes and expands upon the brief oral ruling delivered by the Court at the close of the November 13th Hearing.

BACKGROUND

PREPA is an instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth," or "Puerto Rico") created pursuant to the laws of Puerto Rico.  See Puerto Rico Electric Power Authority Act, 22 L.P.R.A. §§ 191-218.  Under Commonwealth law, PREPA's operations are overseen by the PREPA Governing Board, a group of nine individuals, six of whom are appointed by the Governor of Puerto Rico.  22 L.P.R.A. § 194.  The PREPA Governing Board is empowered to appoint an Executive Director who is responsible for the "general supervision" of PREPA's operations and employees.  See id.

The proposed CTO would essentially displace the PREPA Executive Director and Governing Board by assuming "management and control of the business and affairs of PREPA." (Docket entry no. 414-1, ¶ 3.)  Among other powers and duties, the CTO would have the power to sign all PREPA contracts; supervise and direct all PREPA employees; develop and implement a power restoration plan; finalize and implement an industry modernization strategy for the power sector; oversee the administration of federal funds; and revise and implement the PREPA fiscal plan.  (Id. ¶¶ 3-4.)  The CTO would be compensated by, and report directly to, the FOMB. (Id. ¶¶ 6-7.)  Under the FOMB's proposal, PREPA's Executive Director would be required to report to the CTO, bypassing the PREPA Governing Board and the Governor.  (Id. ¶ 8.)  The

FOMB-appointed CTO's tenure would last until the effective date of a confirmed plan of adjustment for PREPA.  (Id. ¶ 9.)

The FOMB contends that the broad powers granted to it by the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("PROMESA"), necessarily subsume the power to act as a "chief executive officer" overseeing both long term strategic planning and day-to-day management of PREPA.  (Docket entry no. 413 (the "Reply"), ¶ 2.)  The FOMB argues that, collectively, PROMESA Titles I and II, along with sections 301(c)(7), 305, and 315 of the statute, bestow upon the FOMB "quintessential managerial, business, and executive" powers that allow it to direct any activities incidental to the execution of certified fiscal plans, approved budgets and, ultimately, a plan of adjustment.  (Reply ¶¶ 18-33.)  The Opposing Parties assert that nothing in PROMESA gives the FOMB the power to insert a CTO into PREPA's organizational structure.  Several Opposing Parties have also proposed alternative and ancillary relief.  (See, e.g., docket entry no. 376, at 10-13; docket entry no. 377, at 15-20; docket entry no. 379, ¶¶ 4-7, 16; docket entry no. 390, ¶ 2.)  The FOMB argues that these additional requests are procedurally improper and should accordingly be denied.

DISCUSSION

The issue at the heart of the FOMB's Motion is whether PROMESA grants the FOMB authority to unilaterally displace a statutorily-created management structure and direct the executive functions of a Title III debtor—in this case, PREPA.  The Court notes that this is an issue of first impression, and that there is no provision of Commonwealth law authorizing the creation of a PREPA CTO, and no explicit provision in PROMESA for such a position.  Any power to take over direct management of PREPA through a CTO in the context of these PROMESA Title III proceedings must, therefore, be implied from the express provisions of

PROMESA Titles I, II, and/or III.  For the following reasons, the Court finds no basis for such a broad power in any of the provisions relied upon by the FOMB as authority for its appointment of the CTO.

PROMESA Titles I and II

In the absence of a direct provision permitting the FOMB to create new territorial governance structures or redefine existing ones, the FOMB argues that PROMESA indirectly grants it "many broad powers" that "render[] it impossible for any entity other than the Oversight Board to exercise the powers of a chief executive officer without the Oversight Board's consent."  (Reply ¶ 2.)  Among other things, the FOMB points out that it has the power to develop and certify its own fiscal plans and budgets under PROMESA sections 201(d)(2), 201(e)(2), and 202(e)(4); the power to make certain budget reductions under section 203(d); and the power to review new legislation for compliance with the certified fiscal plan under section 204(a).  The FOMB further asserts that it has the power to "control all old and new contracts," which is "tantamount to the power to control virtually everything PREPA does," under PROMESA section 204(b)(2) and section 365 of the Bankruptcy Code, which is incorporated by PROMESA section 301(a); the power to "install an agent to obtain . . . every piece of information PREPA possesses" under PROMESA section 104(c); the power to incur and control all old and new PREPA debt under section 207; and the power to "[b]ar the Governor and Legislature from enacting and enforcing any law" that the Oversight Board determines is contrary to the purposes of PROMESA under section 108(a)(2).[3]  (See Reply ¶¶ 2, 5, 12, 19-21,

---

[3]      The FOMB further cites its express power under PROMESA section 104(h) to enforce certain specific anti-strike and anti-lockout provisions of existing Commonwealth labor laws, PROMESA section 104(k)'s grant of authority to "seek judicial enforcement of [the FOMB's] authority to carry out its responsibilities under this Act," and its powers to: issue subpoenas

Appendix C.)  The FOMB asserts that, taken together, these provisions lead to the inescapable

conclusion that it has broad executive and managerial authority over PREPA's operations and

organizational structure, which empowers the FOMB to appoint a CTO.  However, when read

carefully and in the context of the statute as a whole, none of the Title I and II provisions cited

by the FOMB provides it with the authority it claims here.

The primary mechanism through which fiscal plans and instrumentality budgets

are developed under PROMESA sections 201 and 202 looks first to the territorial government,

not the FOMB, for origination and refinement.  While the FOMB can certify its own fiscal plan

and budget under certain circumstances, it may only do so after an interactive process with the

territorial government does not yield a plan or budget that is acceptable to the FOMB.  See

PROMESA § 201(d)(2) (allowing the FOMB to develop a fiscal plan only "if the Governor fails

to submit" an acceptable plan within the time specified by the FOMB); id. § 202(e)(4) (allowing

the FOMB to develop an instrumentality budget only "[i]f the Governor fails to develop an

Instrumentality Budget that is a compliant budget by the day before the first day of the fiscal

year").  If the FOMB develops and certifies its own fiscal plan and/or budget under these

circumstances, the Commonwealth's government is deemed to have accepted the FOMB's plan

or budget.  See id. §§ 201(e)(2); 202(e)(3).

Even though the FOMB is empowered to monitor and enforce compliance with

the instrumentality's certified budget or fiscal plan under PROMESA section 203, responsibility

---

under section 104(f); enter into contracts to carry out its responsibilities under section 104(g);
investigate selling and disclosure practices under section 104(o); institute hiring freezes under
section 203(d)(2)(B)(i); and review certain rules and regulations for compliance with the
FOMB's policies under section 204(b)(5).  (See Reply ¶¶ 2. 12, 19-21, Appendix C.)  The Court
reaches the same conclusions as to the import of these provisions individually and collectively as
it does with respect to the provisions of Titles I and II discussed in the text.

rests in the first instance with the territorial government to prepare reports and respond to

requests for information from the FOMB.  See id. §§ 203(b), 203(c).  The power to make budget

reductions arises only after the Governor has failed to correct an inconsistency identified by the

FOMB between the Commonwealth's projected and actual performance in relation to a

previously-certified budget.  See id. § 203(d).  The FOMB's power under PROMESA section

204 to review new legislation and executive acts is likewise tied to the Commonwealth

government's initial responsibility to present certifications as to lack of significant inconsistency

with the approved fiscal plan, and to respond to requests by the Oversight Board for information

and explanation.  See id. § 204(a)(5) (permitting the FOMB to act to ensure that the enactment or

enforcement of new legislation will not adversely affect compliance with the fiscal plan only

"[i]f the territorial government fails to comply with a direction given by the Oversight Board to"

provide a missing estimate or certification, or correct a significant inconsistency).

Similarly, the FOMB's negative power to review contracts under section 204(b) is

limited to "certain contracts," and is granted to enable the FOMB to ensure that those contracts

"promote market competition and are not inconsistent with the approved [f]iscal [p]lan."  Id. §

204(b)(2).  By denying approval, the FOMB can prevent the Commonwealth or an

instrumentality from going forward with a proposed course of action, but nothing in section

204(b) affirmatively grants the FOMB the power to "control virtually everything PREPA does."

(See Reply ¶ 5.)[4]  The Court need not attempt to map the boundaries of the FOMB's contracting-

related power at this juncture, but the plain language of section 204(b) makes clear that it cannot

be read to reach any and all contracts.  Although the FOMB could conceivably use its power

---

[4]      Similarly, the power to assume or reject executory contracts on the debtor's behalf with
the Court's approval under Bankruptcy Code section 365 does not give the FOMB absolute
control over all of PREPA's actions.  See 11 U.S.C. § 365.

under section 204(b) to create bureaucratic obstacles to hobble PREPA's day-to-day functions,

such actions would be irresponsible in this Court's view, and would be directly contrary to the

sense of Congress expressed in section 204(b)(3).  See PROMESA § 204(b)(3) ("[A]ny policies

established by the Oversight Board . . . should be designed to make the government contracting

process more effective, to increase the public's faith in this process, to make appropriate use of

the Oversight Board's time and resources, to make the territorial government a facilitator and not

a competitor to private enterprise, and to avoid creating any additional bureaucratic obstacles to

efficient contracting.").

        Similar principles animate the PROMESA provisions defining the FOMB's

powerful role in the development and certification of fiscal plans and budgets under PROMESA

sections 201 and 202.  These foundational documents provide blueprints for revenues, expenses,

debt, and capital resources, and they are used to substantiate methods for responsible financial

management.  The FOMB's authority to withhold approval and to make recommendations

clearly gives it significant leverage to guide and to cabin the expectations of the Commonwealth

entities responsible for proposing and refining the plans and budgets.  But nothing in the fiscal

plan, budgeting, and enforcement provisions of PROMESA sections 201, 202, 203, and 204

suggests that the FOMB is the principal body empowered to manage PREPA's day-to-day

functions, or that it has direct authority to alter PREPA's reporting structure and install a CTO.

Although the FOMB's fiscal plan and budgeting powers give it a strong and substantially

determinative voice in overall strategy regarding the Commonwealth's revenues, expenses, and

general direction for responsible financial management, they do not imply that the FOMB's role

includes detailed operational planning or direct executive authority over the implementation of

those plans and budgets.

This distinction is borne out in other provisions of PROMESA, which limit the

FOMB's authority to exercise the type of plenary executive power it asserts in the instant

Motion.  For example, PROMESA authorizes the Governor, and not the FOMB, to initiate

disciplinary action against territorial officers for intentionally reporting false or misleading

information.  See PROMESA § 104(l).  Likewise, PROMESA authorizes the FOMB to make

"recommendations" to the territorial government on matters relating, inter alia, to the "the

structural relationship of departments, agencies, and independent agencies within the territorial

government."  Id. § 205(a)(2).  If such recommendations are made, the Commonwealth's

government can reject them after providing an explanation to the FOMB, the President, and

Congress.  Id. § 205(b).[5]

The degree of unilateral power that Congress has granted to the FOMB stands in

contrast to the powers Congress granted to the District of Columbia Financial Control Board (the

"D.C. Board") under the District of Columbia Financial Responsibility and Management

Assistance Act of 1995.  The D.C. Board was empowered, for example, to essentially declare

significantly inconsistent legislative acts null and void unilaterally, and to pre-review every

contract the D.C. government proposed to execute.  In drafting PROMESA section 204,

Congress declined to include such provisions.  See H.R. Rep. No. 114-602, at 111 (2016)

("[PROMESA] establishes a board that is robust but reasonable.  Its powers are far less potent

than the powers the Congress conferred upon the board that it established for the District of

---

[5]      The FOMB argues that section 201(b)(1)(K) of PROMESA, which provides that a fiscal
plan "shall" adopt "appropriate recommendations submitted by the Oversight Board under
section 205(a)," effectively permits it to override an objection by the Commonwealth by
incorporating any and all recommendations into its own fiscal plan.  The statutory structure is
ambiguous in this regard, particularly in its use of the qualifier "appropriate."  It is unnecessary
for the Court to resolve this issue at this juncture, since there is no fiscal plan in place that even
purports to require a restructuring of management and reporting authority within PREPA.

Columbia in Public Law 104-8 . . . ."); <u>id.</u> at 113 ("An earlier version of PROMESA . . . required

the oversight board to review every legislative act enacted by the Puerto Rico government and to

make a determination—in the board's sole discretion—about whether each act was consistent

with the certified fiscal plan . . . .  [I]f the board determined that the act was significantly

inconsistent with the fiscal plan, the board was required to declare the act "null and void."  This

was essentially the procedure in place for the District of Columbia under Public Law 104-8 . . .

."); <u>id.</u> at 114 ("Section 204(b) authorizes—but does not require—the board to establish a policy

to review certain contracts . . . . [c]ompare this to Public Law 104-8 . . . which authorized the

oversight board to pre-review every contract proposed to be executed by the District of Columbia

government.").  Congress also forewent provisions that would have allowed a Congressionally-

created entity to appoint an emergency manager with all the powers of a board of directors for

any territorial public corporation whose expenditures exceeded its revenues for at least two

consecutive years.  <u>See</u> S. 2381, 114th Cong. § 322(a)(5) (2016).  Instead, Congress created a

PROMESA Oversight Board with significant leverage in the form of guidance, gatekeeping, and

enabling powers that would in essence provide guardrails for the territorial government on its

journey to fiscal credibility and responsibility.  Congress did not grant the FOMB the power to

supplant, bypass, or replace the Commonwealth's elected leaders and their appointees in the

exercise of their managerial duties whenever the Oversight Board might deem such a change

expedient.  <u>See</u> H.R. Rep. No. 114-602, at 112 (2016) ("[T]he oversight board . . . will provide

guardrails for the Puerto Rico government, but will not supplant or replace the territory's elected

leaders, who will retain primary control over budgeting and fiscal policymaking.").  Indeed, the

only reference to a chief executive in PROMESA is in the statute's definition of the office of

Governor.  <u>See</u> PROMESA § 5(12).

The remaining provisions cited by the FOMB do not create a framework empowering the FOMB to exercise the broad, chief executive role the FOMB claims in its Motion.  The power to access information under PROMESA section 104(c) does not imply a grant of managerial authority.  To the contrary, section 104(c) recognizes the separate institutional existence of instrumentalities like PREPA, and requires their leadership to grant the FOMB's requests for access.  See id. § 104(c)(2) ("The head of the entity of the territorial government responsible shall provide the Oversight Board with such information and assistance (including granting the Oversight Board direct access to automated or other information systems) as the Oversight Board requires under this paragraph.").  Nothing in section 104(c) authorizes the FOMB's unilateral takeover of management and information systems, or sanctions FOMB-directed changes in PREPA's command structure.

The same is true of PROMESA section 207, which requires the territorial government to obtain the FOMB's consent prior to issuing new debt or entering into certain transactions with respect to its debt.  See id. § 207.  The plain language of section 207 does not suggest that the FOMB can alter the management and reporting structure of PREPA.  It may well be that the FOMB finds itself in a position to incentivize the Commonwealth or its instrumentalities to agree to operational measures they dislike in order to gain the FOMB's consent, but such leverage is not tantamount to a grant of chief executive officer status.

The FOMB also relies on PROMESA section 108(a), which preserves the autonomy of the FOMB by prohibiting the Governor and Legislature from exercising control over the FOMB, or enacting rules and policies that would impair or defeat the purposes of PROMESA.  See id. § 108(a).  Section 108(a) serves as a restraint on territorial officials, but it does not provide an affirmative grant of authority to the FOMB to take any and all actions it

believes are necessary to further its role under PROMESA.  Nor, contrary to the Oversight

Board's argument that the government lacks standing even to object to the FOMB's Motion,

does section 108 prevent the Governor from participating in the instant motion practice and

seeking court determinations regarding the FOMB's authority under PROMESA.


PROMESA Title III

            The FOMB's assertion that Title III creates or reinforces direct managerial power

granted by Titles I and II rings hollow as well.  PROMESA section 303 reserves the territory's

political and governmental powers to the territory or "any territorial instrumentality thereof,"

subject only to Titles I and II.  See id. § 303.[6]  As the Court has explained, nothing in Titles I and

II permits the FOMB to displace local government structures and authority by declaration.

Similarly, sections 305 and 306 do not empower the FOMB to interfere unilaterally with the

debtor's political and governmental powers, or with the debtor's property or revenues.  Section

306 is a jurisdictional provision, and does not confer any powers on the FOMB.  See id. § 306.

Section 305 restrains territorial government concessions of authority or property without the

FOMB's consent, and serves as a defense against third party invasions of the same.  See id. §

---

[6]        To the extent that the FOMB argues that PREPA does not exercise political or
governmental power covered by section 303, the Court finds the FOMB's position inconsistent
with the plain language of PROMESA.  Section 5(19) of PROMESA broadly defines a territorial
instrumentality as "any political subdivision, public agency, instrumentality—including any
instrumentality that is also a bank—or public corporation of a territory, and this term should be
broadly construed to effectuate the purposes of this Act."  PROMESA § 5(19).  The Riefkohl
case cited by the FOMB, which dealt with Eleventh Amendment immunity, does not support the
FOMB's argument, and in fact affirmatively characterizes PREPA as a governmental agency
maintained to carry out public purposes.  See Riefkohl v. Alvarado, 749 F. Supp. 374, 375
(D.P.R. 1990) ("That PREPA has at its core a public objective cannot be denied.").

305.  It does not authorize the FOMB to interfere proactively with PREPA's governance structure.

The FOMB also invokes its PROMESA status as a trustee and debtor representative under Title III as sources of implied operational management authority.  However, the language and context of Title III make it clear that the trustee and representative status provided to the FOMB by Title III are granted in relation to the Bankruptcy Code provisions specifically adopted by PROMESA, and are conferred for the purpose of the prosecution of the Title III proceedings.  They are not stand-alone grants of executive operational authority.

Section 301(c)(7) of PROMESA provides that references to the term "trustee," as used in Bankruptcy Code provisions incorporated into PROMESA, are to be read as references to the FOMB with one exception that is not relevant here.  The Title III powers granted to the FOMB are powers of a trustee arising from a debtor-creditor relationship in the exercise of structuring its debts.  Although a trustee in bankruptcy may exercise certain fiscal powers, the FOMB's status as a trustee under PROMESA does not collapse management of the debtor's affairs with management of the Title III proceeding.  Notably, Congress did not make the FOMB an operating trustee by incorporating section 1104 of the Bankruptcy Code.  See PROMESA § 301(a).  Nor did Congress incorporate Bankruptcy Code section 1107, which pertains to a debtor in possession, or section 1108, which authorizes the trustee to operate the debtor's business.  See 11 U.S.C. §§ 1107, 1108.  By only selectively incorporating certain chapter 11 provisions, Congress gave neither the FOMB nor the territorial debtor acting alone the full range of authority of a chapter 11 debtor in possession.  Rather, Congress chose to grant the FOMB more limited trustee powers, which are nonetheless crucial to the achievement of readjustment.  For instance, the FOMB is empowered to assume and reject contracts, avoid certain obligations, and enter into

credit arrangements.  See 11 U.S.C. §§ 365, 506(c), 544, 545, 547, 548 549(a), made applicable

by PROMESA § 301(a).  PROMESA requires a debtor to work alongside the FOMB and divides

the debtor's authority by putting key restructuring tools in the hands of the FOMB, while

preserving the elected government's operational control and voice in management and strategic

decisions.

PROMESA's grant of trustee status to the FOMB thus does not empower the

FOMB to sweep the elected government aside.  That is not to say that the FOMB's Title III

powers are not pivotal.  The FOMB is the only entity that can propose a plan of adjustment and

exercise certain fiscal powers within the Title III proceeding.  See PROMESA §§ 301(a), 312(a).

A feasible plan of adjustment must, however, be premised on a functioning and credible

government structure that will execute the plan of adjustment long after the FOMB is dissolved.

That is doubtless one reason that PROMESA leaves the elected government in place and does

not suspend it in favor of direct management by the FOMB.

Section 315(a) of PROMESA authorizes the FOMB to take actions necessary to

prosecute the debtor's case.  These actions include: filing a petition under PROMESA section

304, submitting or modifying a plan of adjustment under sections 312 and 313, or otherwise

generally submitting filings in relation to the case.  See id. § 315(a).  These enumerated actions

do not imply a general power to manage PREPA's daily operations, or alter its management and

reporting structure.  Section 315(b), which denominates the Oversight Board as representative of

the debtor in the Title III, grants the FOMB authority to speak and act for the debtor in the Title

III debt adjustment process.  But the title of representative does not, by itself, necessarily

implicate the power to control the debtor's operations.  Since Titles I to III, read in their totality,

do not implicate such authority either, the FOMB's reliance on its "representative" status as a source of ultimate executive authority is unavailing.

Based on its careful review of PROMESA, and after consideration of the parties' arguments, the Court finds that there is no express provision within PROMESA and its incorporated Bankruptcy Code provisions, nor any inferential grant of power, that authorizes the FOMB to impose changes in structure or reporting lines within PREPA by appointing a CTO, or to exercise the authority of a chief executive officer, much less to delegate that authority to an agent of the FOMB. The structure established by Titles I and II, alongside the reservation of territorial power in section 303, requires the FOMB and the territorial government to work together to establish a fiscally responsible path forward that is acceptable to the FOMB. Congress might have chosen to make the FOMB's job easier in the short term by granting it direct control and disabling the Commonwealth government's ability to dissent, but it did not do so. Congress deliberately divided responsibility and authority between the two.

It is notable here that the FOMB has not asserted that PREPA is non-compliant with a certified fiscal plan or budget. The post-hurricane fiscal plan and budgeting process were only recently announced by the FOMB, on October 31, 2017. PREPA's proposal is due on December 22, 2017, with certification or recommendations by the FOMB to be made by January 12, 2018. But serious collaborative work, drawing upon all available wisdom and expertise, cannot await this timetable. Every day and every minute counts for American citizens who are living in darkness and danger on the island. At this crucial juncture, the FOMB and the government must work together respectfully, candidly, and cooperatively within their roles, as defined by Commonwealth law and by PROMESA, to earn the confidence of outside funding sources and to forge informal consensus on a path forward that may then be embodied in a fiscal

plan and budget.  These duties are solemn ones, and are critical for the residents of Puerto Rico,

creditors, insurers, government agencies, and contractors involved in the reconstruction process,

and for the prospects of these Title III proceedings and the future of Puerto Rico itself.

With talented individuals working in good faith on both sides, the joint structure

created by PROMESA is one that can create sound, long-lasting change in which all can have

confidence going forward.  That is the challenge and the expectation.  The power sharing

structure created by PROMESA is also fraught with the potential for mutual sabotage.  The

FOMB could repeatedly stymie plans proposed by the government, disapprove contracts, deny

access to credit, and invoke myriad other barriers to progress.  Territorial authorities could

provoke such actions by acting irresponsibly or by refusing to adopt sensible recommendations

that might not have been the first choice for those in local government, but which can, through

work with the FOMB, garner outside government and market support.  And, while section 108 of

PROMESA does not preclude the government from pushing back and seeking court

determinations regarding the FOMB's interpretations of PROMESA, every moment spent in

complicated and expensive litigation is a moment lost for attention to the future of Puerto Rico

and her people.  These negative possibilities should motivate the parties to work together,

quickly, for positive change.

Requests for Alternative Relief

The Court denies the various requests made by the Opposing Parties to appoint

other forms of emergency managers and co-managers.  These requests have not properly been

raised by motion practice, and the Court need not, and does not, address their pertinence or

merits.  See In re W.R. Grace & Co., 2008 Bankr. LEXIS 2532, at *2 n.2 (Bankr. D. Del. Oct.

10, 2008) ("Requests for affirmative relief cannot be combined with a response to a motion.");

Fed. R. Bank. P. 9014 ("In a contested matter not otherwise governed by these rules, relief shall

be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the

party against whom relief is sought.").

CONCLUSION

For the foregoing reasons, the FOMB's Motion is denied in its entirety.  This

order resolves docket entry no. 361.


SO ORDERED.

Dated: New York, New York
        November 16, 2017

/s/ Laura Taylor Swain        
LAURA TAYLOR SWAIN
United States District Judge