# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGE-MENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: Dkt. 914** |

## REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY

Luis A. Oliver-Fraticelli
Katarina Stipec-Rubio
USDC-PR Bar Nos. 209204, 206611
ADSUAR MUÑIZ GOYCO SEDA &
   PÉREZ-OCHOA PSC
208 Ponce de Leon Ave., Suite 1600
San Juan, P.R.  00918
Phone:  (787) 756-9000
Fax:  (787) 756-9010
Email: loliver@amgprlaw.com
kstipect@amgprlaw.com

Theodore B. Olson  (*pro hac vice*)
Matthew D. McGill  (*pro hac vice*)
Helgi C. Walker  (*pro hac vice*)
Lucas C. Townsend  (*pro hac vice*)
Lochlan F. Shelfer  (*pro hac vice*)
Jeremy M. Christiansen  (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone:  (202) 955-8500
Fax:  (202) 467-0539
Email:  tolson@gibsondunn.com

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................1

I.  The Stay Does Not Preclude Aurelius's Proposed Action....................................3

    A.  The Board Is Neither The "Debtor" Nor Covered By The Automatic
        Stay ........................................................................................................... 3

    B.  Aurelius's Suit Does Not Seek Control Over Property Of The Debtor ................. 5

II.  There Is Cause To Lift The Stay ..........................................................................8

    A.  The Balance Of Harms Weighs In Aurelius's Favor ............................................. 9

        1.  Aurelius Is Suffering Irreparable Harm ........................................ 9

        2.  Neither The Board's Litigation Costs, Nor Fear Of "Distraction,"
            Outweigh The Harm To Aurelius ........................................... 12

    B.  Aurelius's Suit Would Fully Resolve The Issues And Would Promote
        Judicial Economy .................................................................................... 13

CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ................................................11

*Barton v. Barbour,*
  104 U.S. 126 (1881) ................................................................7

*Bhatia Gautier v. Rosello-Nevares,*
  No. 17-136-LTS (D.P.R. June 13, 2017) ............................7, 14

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
  217 F. Supp. 3d 508 (D.P.R. 2016) ..........................................8

*Clinton v. City of New York,*
  524 U.S. 417 (1998) ................................................................1

*In re Curtis,*
  40 B.R. 795 (Bankr. D. Utah 1984) ........................................15

*Dominic's Rest. of Dayton, Inc. v. Mantia,*
  683 F.3d 757 (6th Cir. 2012) ...................................................7

*Edmond v. United States,*
  520 U.S. 651 (1997) ..............................................................10

*Free Enter. Fund v. PCAOB,*
  561 U.S. 477 (2010) ..............................................................10

*Freytag v. C.I.R.,*
  501 U.S. 868 (1991) ................................................................9

*In re Furlong,*
  660 F.3d 81 (1st Cir. 2011) ......................................................6

*Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.,*
  739 F.2d 466 (9th Cir. 1984) ..................................................11

*Kuretski v. C.I.R.,*
  755 F.3d 929 (D.C. Cir. 2014) ..................................................9

*Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd.,*
  853 F.3d 548 (1st Cir. 2017) ....................................................6

*Lopez Leon v. Rosello-Nevares*,
  No. 17-137-LTS, Dkt. 14 (D.P.R. July 7, 2017)....................................................14

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*,
  501 U.S. 252 (1991)..........................................................................................9, 10

*Muratore v. Darr*,
  375 F.3d 140 (1st Cir. 2004)..................................................................................7

*NLRB v. Noel Canning*,
  134 S. Ct. 2550 (2014).........................................................................................11

*Oswald v. United States*,
  96 F.2d 10 (9th Cir. 1938) .....................................................................................9

*Peaje Invs. LLC v. García-Padilla*,
  845 F.3d 505 (1st Cir. 2017).................................................................................11

*In re Plumberex Specialty Prod., Inc.*,
  311 B.R. 551 (Bankr. C.D. Cal. 2004)..................................................................12

*In re Residential Capital, LLC*,
  2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) ............................................13

*Romero Feliciano v. Torres Gaztambide*,
  836 F.2d 1 (1st Cir. 1987).....................................................................................11

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990)..................................................................................8

*Stern v. Marshall*,
  564 U.S. 462 (2011)..............................................................................................11

*In re Taub*,
  413 B.R. 55 (Bankr. E.D.N.Y. 2009)....................................................................15

*Texas v. United States*,
  787 F.3d 733 (5th Cir. 2015) ................................................................................12

*United States v. Ferreira*,
  54 U.S. (12 How.) 40 (1852) ..................................................................................9

*United States v. Inslaw, Inc.*,
  932 F.2d 1467 (D.C. Cir. 1991)..............................................................................6

*In re VistaCare Grp., LLC*,
  678 F.3d 218 (3d Cir. 2012)....................................................................................7

*Wright v. Union Cent. Life Ins. Co.*,
 311 U.S. 273 (1940)..................................................................................................11

**Constitutional Provisions**

U.S. Const. art. IV, § 3, cl. 2......................................................................................9

**Statutes**

11 U.S.C. § 362..........................................................................................3, 4, 5, 6, 7, 8

28 U.S.C. § 2201(a)....................................................................................................4

48 U.S.C. § 2121(e)(2)(G)........................................................................................10

48 U.S.C. § 2125........................................................................................................4

48 U.S.C. § 2126(a)....................................................................................................7

48 U.S.C. § 2126(d)....................................................................................................3

48 U.S.C. § 2127(b)................................................................................................4, 7

48 U.S.C § 2128(a)(1).................................................................................................4

48 U.S.C. § 2143(c)....................................................................................................4

48 U.S.C. § 2162....................................................................................................2, 3

48 U.S.C. § 2175(b)....................................................................................................3

T. 3 Ap. XV, § 5..........................................................................................................5

## ARGUMENT

Aurelius filed its Stay Relief Motion neither to duplicate proceedings nor to avoid this Court ruling on Aurelius's Appointments Clause challenge, but to ensure that Aurelius could obtain complete relief that this Court, consistent with its limited Title III jurisdiction, cannot award.  The objections filed by the Financial Oversight and Management Board for Puerto Rico (the "Board") and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") to Aurelius's Stay Relief Motion ignore this critical point.  They are also at odds with settled law and this Court's prior orders with respect to stay relief.  To mask these failings, the Board and the Retiree Committee resort to the same baseless scare tactics employed in their opposition to Aurelius's Objection and Motion to Dismiss, hoping that empty threats of "chaos" will distract the Court from the legal issues.  In sounding those false alarms, they apparently believe that it is better that the people of Puerto Rico remain subject to an unconstitutionally appointed super-governor than that the Board should be inconvenienced by additional litigation.  But "[t]he Constitution's structure requires a stability which transcends the convenience of the moment."  *Clinton v. City of New York*, 524 U.S. 417, 449 (1998) (Kennedy, J., concurring).

Moreover, Aurelius is not seeking "to disrupt the functioning of the [Board] and the Commonwealth's restructuring."  Board Opp. 2.  Quite the contrary, Aurelius is asking only that a *validly constituted* Board preside over Puerto Rico's economic future.  As explained in Aurelius's reply on the Objection and Motion to Dismiss, all the parties to address remedies agree that a ruling in Aurelius's favor on Appointments Clause and separation-of-powers grounds would result merely in severance of the relevant portions of PROMESA.  The members of a new Board could then be quickly nominated by the President and confirmed by the Senate, and the reconstituted Board could decide which of the prior Board's actions should be ratified.  Aurelius's proposed

stand-alone challenge, like its Objection and Motion to Dismiss in these Title III proceedings, would *not* result in the invalidation of PROMESA as a whole or prevent Puerto Rico from availing itself of the protection of Title III.

On the merits of the Stay Relief Motion, this Court should either declare the stay inapplicable to Aurelius's separate suit or lift the stay. The stay does not apply to Aurelius's proposed litigation because, contrary to the Board's arguments, the Board is not the debtor. *See* 41 U.S.C. § 2162. Nor does Aurelius's proposed litigation seek to recover the money the Commonwealth owes it. The suit would merely be one against the Board concerning its appointment.

But even if the stay did apply, there is cause to lift it here. For all of the Board's and the Retiree Committee's rhetoric, neither bothers to refute a fundamental reason for Aurelius's request for stay relief: This Court has already indicated that its Title III jurisdiction does not reach Board actions taken pursuant to Title II—the actions that form the basis of Aurelius's claims for declaratory and injunctive relief. The Board and the Retiree Committee ignore this point, insisting that Aurelius's proposed litigation will be duplicative of its Objection and Motion to Dismiss. Although it is true that the same Appointments Clause and separation-of-powers *claim* has been presented to this Court, the *relief* sought in the proposed suit is not the same as the relief requested here. Aurelius cannot seek dismissal of the Title III action in another court; and Aurelius cannot receive declaratory and injunctive relief relating to Title II actions in a Title III proceeding.

Moreover, there is good cause to grant Aurelius relief from the stay because the Board is an unconstitutionally appointed entity that is irreparably harming Aurelius and other creditors, among others, both within this proceeding and elsewhere. That alone warrants stay relief. In response, the Board complains about the "distraction" of litigation, but this Court has already rejected the Board's word-for-word recitation of these same arguments in its dispute with the Centro

2

de Periodismo Investigativo ("CPI").  Dkt. 1084.  Those failed arguments (and the Retiree Com-

mittee's tag-along points) are no more meritorious now than they were then.  Moreover, the Board

has retained separate counsel to handle the constitutional issues, so there is no possible diversion

of effort from the Title III and other legal work of the Board's primary counsel.

For these reasons, the Court should grant Aurelius's Stay Relief Motion.  But in all events,

the Court must ensure that the merits of the Appointments Clause challenge are promptly decided

in a final appealable order.  48 U.S.C. § 2126(d) (imposing "duty" on district court to "expedite to

the greatest possible extent the disposition of any matter brought under this chapter").  Prompt

resolution of the merits is in the best interest of all concerned.

## I.      The Stay Does Not Preclude Aurelius's Proposed Action.

The Board claims that the automatic stay precludes Aurelius's proposed litigation for two

reasons.  *First*, the Board asserts that it enjoys the protections of a "debtor."   *Second*, the Board

says that because it will have to spend money to defend the suit, Aurelius is trying to control the

Commonwealth's resources.  The Board errs on both counts.

### A.      The Board Is Neither The "Debtor" Nor Covered By The Automatic Stay.

The Board argues that Aurelius's proposed suit against the Board is tantamount to a suit

against the debtor, and thus covered by the automatic stay that protects the "debtor" under 11

U.S.C. § 362(a).  Board Opp. 7.  PROMESA conspicuously omits the Board from the provision

specifying who may be a debtor under Title III, 48 U.S.C. § 2162, and instead deems the Board to

be only "the *representative* of the debtor," *id.* § 2175(b) (emphasis added).  Straining to bridge this

gap and assert the Commonwealth's protections for itself, the Board invokes this Court's June 29,

2017, order regarding application of the stay, Dkt. 543, but grossly mischaracterizes that order.[2]

---

[2]  The Retiree Committee's argument that this Court lacks constitutional authority to resolve this
Stay Relief Motion, Retiree Opp. 2–4, is refuted by the existence of this Court's June 29, 2017,

This Court ruled only that the Title III stay applies to "representatives of . . . the Debtors . . . *solely with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors*." *Id.* at 4 (emphasis added). By omitting the italicized limitation, the Board hopes that this Court will *extend* the stay to bar Aurelius's proposed lawsuit, which would not seek to enforce claims against any debtor but instead seek only a declaration that the Board's members were unlawfully appointed and an injunction against further unconstitutional acts pending the installment of a new, validly constituted Board. Extending the stay would be unwarranted.

This conclusion is consistent with PROMESA, which establishes the Board as a separate legal entity that operates with absolute independence from the Commonwealth. No part of the Commonwealth government has "any control, supervision, [or] oversight . . . over the Oversight Board or its activities." 48 U.S.C § 2128(a)(1). Neither "[t]he Oversight Board [nor] its members" are liable "for any obligation or claim against . . . the territorial government." *Id.* § 2125. The text of PROMESA also contrasts the decisions of "the territorial government" with those of "the Oversight Board" at every turn. *Id.* § 2143(c). Even the Board's funding is expressly distinguished in PROMESA from "the Territory Budget." *Id.* § 2127(b). Board funds are "not subject to subsequent legislative appropriations" by the Commonwealth (*i.e.*, they are unavailable to the Commonwealth), and are held in a segregated "new account." *Id.* § 2127(b)(1)–(2). Indeed, those funds are given back to "the territorial government"—if at all—only in the Board's "sole discretion." *Id.* § 2127(b)(3). There can be no doubt that the Board is a separate legal entity that is in no reasonable sense the "debtor" within the meaning of 11 U.S.C. § 362.

---

order with respect to the scope of the stay, as well as by the fact that this is a live controversy. Aurelius believes that the stay does not apply; the Board and Retiree Committee disagree. The Court has power to resolve that question. *Cf.* 28 U.S.C. § 2201(a). The fact that Aurelius took the prudent course of seeking a ruling from this Court does not change that.

The Board and the Retiree Committee struggle to explain away this Court's decision in *Aponte-Pagán*, Dkt. 618, which sharply distinguished between the Agricultural Enterprises Development Administration ("ADEA"), "a public corporation formed by the Debtor," on the one hand, and "the Commonwealth itself," on the other, *id*. at 2.  That distinction was the very basis of this Court's holding:  ADEA—*an instrumentality of the Commonwealth* over which the Board claimed stay protection—was "indisputably a separate legal entity from the Commonwealth."  *Id.* at 3.  Both the Board and the Retiree Committee argue that the Board is unlike ADEA because the Board "is established within the government of the Commonwealth."  Retiree Opp. 5; *see also* Board Opp. 8.  But the same was true of ADEA, which was established "within the Executive Branch" of the Commonwealth government.  T. 3 Ap. XV, § 5 ("Through this Plan, the Department is hereby created as [an] entity within the Executive Branch . . . .").[3]  Indeed, this Court allowed litigation to proceed against ADEA even though that litigation sought millions of dollars in damages that "may come from funds appropriated by the Commonwealth for the ADEA."  Dkt. 618 at 3.  Aurelius's proposed action, by contrast, does not seek a money judgment.  As this example shows, what matters is that the Board is not in fact the "debtor" under § 362(a), not that it is notionally part of the Commonwealth government (which it is not, in any event).

### B.   Aurelius's Suit Does Not Seek Control Over Property Of The Debtor.

With no basis whatsoever, the Board asserts that Aurelius's proposed litigation "seeks to . . . recover property of the debtor and collect its claim."  Board Opp. 5.  The Retiree Committee parrots that assertion.  *See* Retiree Opp. 5.  Both are wrong.  A suit to collect property or damages would indeed be covered by the stay; but Aurelius was unequivocal that it seeks no such thing.  In

---

[3]  *See* Exhibit A.

its proposed order, Aurelius stated that, "[f]or the avoidance of doubt, nothing in this Order authorizes Aurelius to sue the Oversight Board or its members [for] . . . monetary damages, the enforcement of liens, etc." Dkt. 914, Ex. A at 2. Aurelius would ask for declaratory and injunctive relief regarding the constitutionality of the Board's members' appointments, not to enforce liens, litigate priority, or resolve other issues properly confined to the Title III proceeding.

To prop up its flimsy argument, the Board advances the broadest conceivable interpretation of 11 U.S.C. § 362(a): If "any act" taken by a party could lead the Board to spend money it does not want to spend, that act is an attempt to control the Commonwealth's property. Board Opp. 9. For multiple reasons, the automatic stay does not "have the sweeping scope that [the Board] would assign it." *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991).

*First*, not all litigation that might ultimately involve a debtor's resources is covered by the automatic stay. *In re Furlong*, 660 F.3d 81, 89–90 & n.9 (1st Cir. 2011) (holding that the "automatic stay 'does not extend to the assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock,'" and citing cases). This Court expressly recognized as much in ruling that neither "defense costs . . . incurred" by the Commonwealth itself, nor even "the payment of a judgment against [an instrumentality]" using "funds appropriated by the Commonwealth for the [instrumentality]," justified extending the stay to litigation against the ADEA. Dkt. 618 at 3. The Board cites no case law endorsing its boundless interpretation of § 362(a).[4]

*Second*, as demonstrated above, *supra* at 4, the funding that the Board would use to litigate Aurelius's challenge does not even belong to the Commonwealth and cannot be touched by the

---

[4]  Contrary to the Board's argument, *Lex Claims, LLC v. Financial Oversight & Management Board*, 853 F.3d 548 (1st Cir. 2017), merely held that a suit seeking to direct (through declaratory and injunctive relief) the allocation of specific Commonwealth tax revenues that were pledged to secure debt was an attempt to "exercise control" over "Commonwealth revenues." *Id.* at 552. That suit bears no resemblance to Aurelius's proposed action here.

6

Commonwealth.  Rather, Congress has decreed that the Board's budget derives from a "dedicated funding source" wholly segregated from "the Territory Budget."  48 U.S.C. § 2127(b).  The Commonwealth has no further legal interest in those funds.  *See id.* § 2127(b)(3) (granting the Board "sole discretion" to remit funds to the "territorial government").

*Third*, "[t]he automatic stay provision was intended to prevent interference with a bankruptcy court's orderly disposition of the property of the estate" and "was not intended to preclude post-petition suits to enjoin unlawful conduct."  *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760–61 (6th Cir. 2012).  "If [Section 362(a)] were read to prevent the injunctive relief [against the Board] sought here," the Board's actions "could violate [Aurelius's] rights with impunity."  *Id.*  Moreover, those rights include interests that lie beyond this Court's jurisdiction—including harm stemming from the Board's actions under Title II of PROMESA.  *See Bhatia Gautier v. Rosello-Nevares*, No. 17-136-LTS, Dkt. 16 at 5 (D.P.R. June 13, 2017); *infra* at 14.  Aurelius's right to seek redress for these constitutional injuries is fundamental, and the Board's theory runs roughshod over these bedrock principles.

*Fourth*, the Board finds no refuge in the *Barton* doctrine.  Board Opp. 6 n.2 (citing *Barton v. Barbour*, 104 U.S. 126 (1881)).  *Barton* held that without leave of the bankruptcy court, no other court has subject-matter jurisdiction to hear a suit against a trustee.  *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004).  But this "common law" doctrine is subject to statutory override, *id.*, which PROMESA accomplishes by allowing suits against the Board and placing subject-matter jurisdiction of "*any action*" against the Board "in [the] United States district court for [Puerto Rico]," 48 U.S.C. § 2126(a) (emphasis added).[5]

---

[5]  Moreover, the standard for granting leave is low, requiring only that the claim on its face "is not without foundation."  *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012).

*Fifth*, if the Board were correct that "any act" that would require it to spend money is barred as an attack on Commonwealth property, then literally *all* litigation against it would be prohibited—from suits against the Board as an employer, to suits against the Board for breach of contract. Nothing in PROMESA or 11 U.S.C. § 362(a) contemplates such an extreme outcome.

In sum, the stay does not apply to Aurelius's proposed lawsuit.

## II.   There Is Cause To Lift The Stay.

Even assuming *arguendo* that the stay applied to Aurelius's proposed litigation, there is cause to lift the stay.  "[T]he hardships realistically borne by [Aurelius] . . . outweigh the harm likely to be visited upon the Commonwealth."  *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518–19 (D.P.R. 2016).  Relying on *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990), the Board makes three arguments for keeping the stay in place:  (1) the balance of harms weighs against stay relief; (2) Aurelius's suit would not fully resolve the issues Aurelius has raised; and (3) Aurelius's suit does not promote judicial economy.

If the Board's arguments with respect to cause seem familiar, it is because the Board made them nearly verbatim in its failed attempt to dissuade the Court from lifting the stay as to CPI. Dkt. 1084 (lifting the automatic stay).  There, as here, *see* Board Opp. 14–18, the Board invoked the *Sonnax* factors and argued, among other things, that CPI's suit would "[d]istract . . . the FOMB from [its] critical tasks by forcing it to defend" against CPI, Dkt. 959 at 8, threaten "the very survival of the Commonwealth," *id.* at 9, "reduce the amounts available for the Commonwealth's creditors in a Title III restructuring" through litigation costs, *id.* at 10, and fail to "result in complete or partial resolution of the issues," *id.* at 13.  Now, the Board reprises these failed arguments, with only minimal efforts at repackaging.  They remain unpersuasive.

## A.   The Balance Of Harms Weighs In Aurelius's Favor.

The Board is unconstitutionally structured and its actions have imposed and will continue to visit irreparable harm on Aurelius.  In response, the Board claims that Aurelius's suit is unmeritorious, Aurelius has no fundamental rights at stake, and constitutional injuries are irrelevant to the stay-lift inquiry.  There is no support for these contentions.  The Board next tries to balance the substantial harms being inflicted on Aurelius against, of all things, the Board's litigation expenses.  None of the Board's supposed "harms" outweighs the irreparable harm to Aurelius (and others) that flows from the operation of an unconstitutionally appointed entity.

### 1.   Aurelius Is Suffering Irreparable Harm.

The Board contends that Aurelius's constitutional challenge "is not meritorious" nor even "relevant" to the stay relief analysis because no "fundamental constitutional rights" are implicated by an unconstitutionally appointed Board.  *See* Board Opp. 17–20.  As explained in Aurelius's reply on the Objection and Motion to Dismiss, the Board lacks legal or historical support for the radical position that the Appointments Clause and the separation of powers are irrelevant when Congress legislates with respect to the territories.

The Board and the other entities opposing Aurelius (the "Opposing Parties") never provide the Court with a full account of the Supreme Court's case law.  The Constitution's structural protections apply to Congress, even when Congress takes action "in the course of [its] exercise of . . . power" under "Art. IV, § 3, cl. 2."  *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc*., 501 U.S. 252, 270 (1991) ("*MWAA*").  Both the historical record and judicial precedent leave no doubt that officers in the territories have always been considered federal officers subject to the Appointments Clause.  *See Freytag v. C.I.R*., 501 U.S. 868, 892 (1991); *United States v. Ferreira*, 54 U.S. (13 How.) 40, 51 (1851); *Kuretski v. C.I.R.*, 755 F.3d 929, 941 (D.C. Cir. 2014); *Oswald v. United States*, 96 F.2d 10 (9th Cir. 1938).  Moreover, it is well established

9

that Congress "may not invest itself or its Members with . . . executive power," *MWAA*, 501 U.S. at 254, and "if any power whatsoever is in its nature Executive, it is the power of appointing . . . those who execute the laws," *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 492 (2010).

Relatedly, the Opposing Parties insist that the Board's powers are limited, and only local in nature, and its members are thus not officers of the United States. That conveniently narrow view of the Board's authority is contrary to the Board's own representations in this proceeding. *See* Dkt. 1153, Tr. 44–46 (Aug. 22, 2017) (Board's counsel arguing that Congress "empowered [it] . . . with powers that no other board in bankruptcy has ever had before"). It also contravenes Supreme Court precedent. The Board's powers far exceed those found by the Supreme Court to constitute significant executive authority in *MWAA*. *See* 501 U.S. at 260 (involving entity over-seeing two airports that exercised fewer powers than the Board possesses).

Finally, the Opposing Parties take a brief pass at defending the constitutionality of PROMESA's list mechanism, claiming that it does not actually limit the President's powers. That is wrong. The list mechanism in PROMESA, like the "list system" in *MWAA*, "guarantee[d] Congress effective control over appointments." *MWAA*, 501 U.S. at 269. In unambiguous text that the Opposing Parties ignore, PROMESA dictated that, in the event no Board members were appointed within the impossibly short period of time provided, "the President *shall* appoint an individual from the list for the current vacant category." 48 U.S.C. § 2121(e)(2)(G) (emphasis added).

In light of all this, it strains credulity for the Board to argue—in reliance on the discredited *Insular Cases* that deprive citizens of unincorporated territories of certain constitutional rights based on racist concepts—that no fundamental rights are at stake. Board Opp. 20. The Supreme Court has unequivocally explained that the Appointments Clause is "among the [most] significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659–

60 (1997).  Several hundred years of judicial and political thought confirm that "there is no liberty" under our system of government without the separation of powers.  *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting 1 Montesquieu, Spirit of Laws 181).  That *other* governments "do not share this structure for federal appointments," Board Opp. 20, says nothing about whether, under *our* government, the structural check of Presidential nomination and Senate confirmation is a necessary and indeed fundamental guarantee of a free society.  Moreover, even if the Opposing Parties were correct that the citizens of Puerto Rico do not enjoy the benefits of the Constitution's structural safeguards, Aurelius and the numerous other creditors throughout the United States adversely affected by the Board's actions *do*.

The Board also argues that Aurelius's harms are not irreparable.  But when the government violates fundamental constitutional rights, the resulting harm is *always* irreparable.  *E.g.*, *Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir. 1987); *Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984).  Indeed, separation-of-powers violations are presumptively irreparable.  *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).  The Board cites no authority for its argument that violations of these provisions—designed to "safeguard individual liberty," *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014)—are different than "individual-rights" violations in this regard.

It is also well settled that the Constitution's protections are not merely "relevant," but critical, to the stay lift analysis.  For instance, in the context of lifting a stay for lack of adequate protection, "creditors are constitutionally entitled to protection 'to the extent of the value of the[ir] property.'"  *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 511 (1st Cir. 2017) (quoting *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273 (1940)).  The danger of inadequate protection, which always constitutes cause to lift the stay, is at bottom a constitutional harm safeguarded by due

process principles.  The suggestion that the unconstitutionality of the Board's appointment and the resulting irreparable harm are not "relevant" here must be rejected.

### 2.   Neither The Board's Litigation Costs, Nor Fear Of "Distraction," Outweigh The Harm To Aurelius.

The Board fails to identify any concrete harm to the Commonwealth or its instrumentalities from lifting the stay, other than additional litigation expenses and the supposed "distraction of ancillary lawsuits."  Board Opp. 14.  But this Court has already recognized that "the balance of harms tips *decidedly* in favor" of issues in the broader public interest when compared to the Board's litigation costs.  Dkt. 1084 at 3 (granting stay relief in CPI's favor) (emphasis added).  An order that "maintains the separation of powers" is at least as much in "the public interest" as CPI's proposed suit over disclosure of documents.  *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015).  What could be more important to the public interest than answering the question of whether the People of Puerto Rico enjoy the Constitution's structural protections?  Although the Board and the AAFAF, who purport to represent the interests of the citizens of the Commonwealth, would answer that question with a "no," the stay should be lifted so the question can be resolved.

The Board's supposed fear of "distraction" is overblown.  The Board has retained able counsel for the specific purpose of defending the Appointments Clause and separation-of-powers challenge.  *See* Munger, Tolles & Olson, LLP Contract 1–4 (Oct. 12, 2017).  The Board's existing counsel overseeing the Title III proceedings would continue their work unimpeded.

The Board and the Retiree Committee also argue that Aurelius's separate lawsuit could prejudice other creditors, but that is not so either.  The Retiree Committee is the only creditor group to oppose Aurelius's Stay Relief Motion.  In any event, unlike the cases the Board relies on, Aurelius is not seeking to instigate litigation that will last for years in a far-removed venue, *In re*

*Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 564 (Bankr. C.D. Cal. 2004), nor to litigate hundreds of claims in fact-intensive mortgage foreclosure litigation "in courts around the country," *In re Residential Capital, LLC*, 2012 WL 3860586, at *1 (Bankr. S.D.N.Y. Aug. 8, 2012). Aurelius's suit would be litigated in Puerto Rico, involves one legal issue, and can be resolved quickly.

To obscure these points, the Board claims that "chaos" will ensue if Aurelius's suit is allowed to proceed, Board Opp. 2, 12, but the Board elsewhere undoes its own argument. In response to the Objection and Motion to Dismiss, the Board has asserted that if Aurelius's claims are correct, the offending language of PROMESA should be severed, the Court's order declaring the Board unconstitutionally appointed should be stayed pending the appointment of a new Board, and the Title III petition thus should stay in place. *See* Board Opp. 12; Dkt. 1622 at 32–35. Other interested parties, as well as Aurelius, *agree* that the proper remedy is severance and that the Court has procedural tools to minimize any possible disruption. *See* Dkt. 1627 at 2–3 (GO Bondholders' Stmt.); Dkt. 1622 at 34 (Board); Dkt. 1629 at 35 (Retiree Comm.); Dkt. 1640 at 31 (AAFAF); Dkt. 1631 at 28 (Unsecured Creditors Comm.). Aurelius's stand-alone suit would similarly seek the remedy of severance, allowing the prompt installation of a validly constituted Board to decide which of the past Board's actions should be ratified.

### B.      Aurelius's Suit Would Fully Resolve The Issues And Would Promote Judicial Economy.

The Board and the Retiree Committee try to paint Aurelius's litigation as "duplicative," but they ignore the fact that this Court lacks jurisdiction over the Board's actions under Title II. Importantly, the Board recently announced its intention to further modify the fiscal plan, an action that is outside this Title III proceeding that will inflict *additional* irreparable harm on Aurelius, and makes clear that the Board plans to scrap much of its existing work regardless of any

future litigation. *See* General Release Regarding the Results of the Tenth Public Mtg. 1–2 (Oct. 31, 2017). Only Aurelius's proposed litigation can fully resolve the issues at play.

Rather than rebut Aurelius's primary argument—that it cannot be afforded full relief in the Title III proceedings, Dkt. 914 at 25–26—the Board and the Retiree Committee pretend that "Aurelius . . . seeks substantially the same relief as it does in its Motion to Dismiss." Board Opp. 5. Indeed, neither party as much as acknowledges this Court's decisions in *Lopez Leon v. Rosello-Nevares*, No. 17-137-LTS, Dkt. 14 (D.P.R. July 7, 2017), and *Gautier*, which held that the Court's Title III "jurisdictional grant" does not extend to actions taken pursuant to "Title II of PROMESA," *Gautier*, Dkt. 16 at 5. The Board does not dispute that Aurelius's proposed suit arises from Board actions unrelated to Title III. *See* Dkt. 914 at 25–26. Thus, while the Appointments Clause and separation-of-powers *claim* that Aurelius would like to raise in the contemplated action has been presented to this Court, the *relief* sought there is not—and cannot be—the same.

The Retiree Committee, for its part, mischaracterizes Aurelius's argument as "conced[ing]" that this Court can grant Aurelius full relief in an adversary action. Retiree Opp. 6 (citing Dkt. 914 at 11 n.7). Aurelius said no such thing. As Aurelius argued in its Stay Relief Motion, *if* this Court has jurisdiction to grant full declaratory and injunctive relief, then the Court should so hold. The problem with such a holding, however, is that it would be in significant tension with the Court's decisions in *Gautier* and *Leon Lopez*. In ignoring those rulings, the Retiree Committee, like the Board, offers no solution.

The Board's remaining attempt to argue that Aurelius's proposed suit "would not result in [either] a partial or complete resolution of the issues," Board Opp. 12, fares no better. The Board mistakenly believes that this factor concerns the resolution of *all* the Title III cases. Board Opp. 12. But the pertinent inquiry under *Sonnax* is whether the legal issue raised by Aurelius's proposed

14

litigation—whether the Board is properly constituted to act under Titles II and III of PROMESA— would be completely resolved in its proposed litigation outside the bankruptcy proceedings. *See*, *e.g.*, *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009); *In re Curtis*, 40 B.R. 795, 804 (Bankr. D. Utah 1984). That is just how this Court approached the question in lifting the stay as to CPI's suit. Dkt. 1084 at 2–3 ("The Litigation would completely resolve the CPI's issues . . . .").

The Board also speculates on the "issues Aurelius truly cares about," Board Opp. 12, but the constitutionality of PROMESA's appointments mechanism has nothing to do with Aurelius's motivations for litigating. In any event, all that Aurelius seeks is a *validly constituted* Board. Aurelius thus would seek declaratory relief to that effect and injunctive relief against the current Board's actions apart from actions under Title III—relief that appears to lie outside this Court's jurisdiction. Like the CPI ruling, "[a]lthough the [Board] [would] be required to expend time and resources defending the Litigation, the most significant effect of continuing the stay . . . would be to deprive [Aurelius]" of a remedy. Dkt. 1084 at 3.

The Court should lift the stay. However the Court resolves the issue, it should not delay prompt resolution of these substantial constitutional questions via a final order in these Title III proceedings while at the same time blocking Aurelius's path to broader relief.

## CONCLUSION

For the foregoing reasons and for the reasons contained in Aurelius's Stay Relief Motion, the Court should hold that the stay does not apply to Aurelius's proposed litigation or, alternatively, that cause exists to lift the stay, permitting Aurelius to seek full relief.

15

Dated:  November 17, 2017

Respectfully submitted,

 /s/ Luis A. Oliver-Fraticelli

 /s/ Theodore B. Olson

Luis A. Oliver-Fraticelli
Katarina Stipec-Rubio
USDC-PR Bar Nos. 209204, 206611
ADSUAR MUÑIZ GOYCO SEDA &
    PÉREZ-OCHOA PSC
208 Ponce de Leon Ave., Suite 1600
San Juan, P.R.  00918
Phone:  (787) 756-9000
Fax:  (787) 756-9010
Email: loliver@amgprlaw.com
kstipec@amgprlaw.com

Theodore B. Olson  (*pro hac vice*)
Matthew D. McGill  (*pro hac vice*)
Helgi C. Walker  (*pro hac vice*)
Lucas C. Townsend  (*pro hac vice*)
Lochlan F. Shelfer  (*pro hac vice*)
Jeremy M. Christiansen  (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone:  (202) 955-8500
Fax:  (202) 467-0539
Email:  tolson@gibsondunn.com
mmcgill@gibsondunn.com
hwalker@gibsondunn.com
ltownsend@gibsondunn.com
lshelfer@gibsondunn.com
jchristiansen@gibsondunn.com

# EXHIBIT A



translations@geotext.com
www.geotext.com

STATE OF CALIFORNIA

)
)
)
COUNTY OF SAN FRANCISCO ) ss

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached excerpt "§ 5 Creation of the Department of Agriculture" from the Annotated Laws of Puerto Rico.

Zach Duncan, Senior Project Manager
Geotext Translations, Inc.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California, County of San Francisco

Subscribed and sworn to (or affirmed) before me

on this 15th day of _November_, 20 17,

by _Zach Duncan_,

proved to me on the basis of satisfactory evidence

to be the person(s) who appeared before me.

Signature: _____

**KURT ADAM SHULENBERGER**
Commission No. 2208160
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires AUGUST 27, 2021

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

T. 3 Ap. XV, § 5

ANNOTATED LAWS OF PUERTO RICO  Currentness
  TITLE 3A. EXECUTIVE BRANCH APPENDICES 3A L.P.R.A. [Annotated Laws of Puerto Rico] AP.
  XV. DEPARTMENT OF AGRICULTURE
    **§ 5 Creation of the Department of Agriculture**

T. 3 Ap. XV, § 5

Through this Plan, the Department is hereby created as the entity within the Executive Branch, with responsibility for implementing public policy and establishing and carrying out—on its own or through its components—plans and programs aimed at promoting, developing and enhancing the agricultural economy, in accordance with the powers, authority and duties conferred upon it by the Constitution, this Plan and the applicable laws currently in force.

T. 3 L.P.R.A. [Annotated Laws of Puerto Rico] App. XV, § 5, PRS ST T. 3 Ap. XV, § 5
  THIS SECTION IS UP-TO-DATE FOR THE 2017 SUPPLEMENT (SESSION OF THE LEGISLATIVE ASSEMBLY OF
2016) AND LAWS 1 to 17 OF 2017

ANNOTATED LAWS OF PUERTO RICO(c) ANNOTATED LAWS OF PUERTO RICO Property Rights; 1955-2017 by the Secretary of State of Puerto Rico and LEXISNEXIS of Puerto Rico, Inc. Rights reserved.

**End of Document**     © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**T. 3 Ap. XV, § 5**

LEYES DE PUERTO RICO ANOTADAS *Currentness*
 TÍTULO 3A. PODER EJECUTIVO APÉNDICES 3A L.P.R.A. AP.
 XV. DEPARTAMENTO DE AGRICULTURA
  **§ 5 Creación del Departamento de Agricultura**

T. 3 Ap. XV, § 5

Mediante este Plan, se crea el Departamento como el organismo dentro de la Rama Ejecutiva responsable de implantar la política pública y de establecer y llevar a cabo, por sí o a través de sus componentes, planes y programas dirigidos a promover, desarrollar y acrecentar la economía agropecuaria, de acuerdo con los poderes, facultades y funciones que le son conferidos por la Constitución, este Plan y las leyes vigentes aplicables.

T. 3 L.P.R.A. App. XV, § 5, PRS ST T. 3 Ap. XV, § 5
   ESTA SECCION ESTA CORRIENTE PARA EL SUPLEMENTO DE 2017 (SESION DE LA ASAMBLEA
           LEGISLATIVA DE 2016) Y LAS LEYES 1 a 17 DE 2017

LEYES DE PUERTO RICO ANOTADAS(c) LEYES DE PUERTO RICO ANOTADAS Derecho de Propiedad; 1955-2017 por El Secretario de Estado de Puerto Rico y LEXISNEXIS de Puerto Rico, Inc.Derechos reservados

**End of Document**                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.