**Hearing Date:**  December 14, 2017, 1:30 p.m. A.S.T.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## URGENT RENEWED JOINT MOTION BY THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATION

---

[1]       The Debtors in these Title III cases (collectively, the "Title III Cases"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these Title III Cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[1] and to this Court's Order of November 21, 2017 (Dkt. 1847[2]), the Ad Hoc Group of General Obligation Bondholders,[3] Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation (collectively "Movants") submit this urgent renewed motion (the "Renewed Motion") for entry of an order compelling the Commonwealth and the Federal Oversight and Management Board for Puerto Rico (the "Oversight Board" or the "Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (collectively the "Respondents"), to produce documents responsive to the requests listed in **Schedule A**.

### INTRODUCTION

As Movants explained in their initial Rule 2004 motions, Bankruptcy Rule 2004 allows the Court to order a sweeping examination of "the liabilities and financial condition of the debtor." It is critical that Movants have access to that information, because a plan of adjustment can be confirmed only if it does all that is reasonably possible to maximize creditor recoveries. And it is impossible to know what the maximum creditor recoveries are here without first gaining a thorough understanding of the Commonwealth's financial condition. In addition, PROMESA imposes the separate requirement that a plan of adjustment must be consistent with

---

[1]     PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

[2]     Unless otherwise specified, all docket citations in this Renewed Motion refer to *In re Financial Oversight and Management Board for Puerto Rico as representative of the Commonwealth of Puerto Rico*, No. 17 BK 3283-LTS.

[3]     Members of the Ad Hoc Group of General Obligation Bondholders file this Renewed Motion exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

the certified fiscal plan; accordingly, creditors have the unquestionable right to transparency as to the information and methodology underlying that fiscal plan.

Movants' right to this information is all the more immediate now that Respondents' counsel have announced publicly that the Board already has concluded that any new fiscal plan will allocate *no funds* to debt service.  11-15-17 Tr. at 22.  Without prejudice to Movants' rights to seek additional information at a later date, including the depositions and third-party discovery requested in the initial motions, this Renewed Motion seeks a limited universe of documents that will shed light of the current condition of the Commonwealth.  This information will no doubt form the basis of any new fiscal plan, and any subsequent plan of adjustment.  Respondents concede that the information exists.  And there is no reason to think it would be a significant burden to produce it now.  The Renewed Motion should be granted.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Renewed Motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## BACKGROUND

Movants have been seeking basic information regarding the state of Puerto Rico's finances for more than six months.  Respondents have cited an ever-changing litany of reasons why they can't, or shouldn't be required to, produce that information.  Respondents have argued (among other things) that it is too *early* for discovery because there is no plan of adjustment on the table (11-15-17 Tr. at 111-112); and that it is too *late* for discovery because the Fiscal Plan that was in effect when Movants propounded their initial requests will be superseded (*id.* at 105-106).  Respondents also urged the Court that there is no need for it to get involved because "[t]he

Oversight Board, the government, and AAFAF have worked tirelessly" to produce the relevant information (*id.* at 105), and "[t]he amount of information and data that has been provided is overwhelming" (*id.* at 117).[4]  Respondents assured the Court that "[w]e have been and will give all of the raw data that we get."  *Id*. at 132.

The factual premise of Respondents' position is false.  Movants have *not* been given all "raw data" that Respondents have and that they will presumably rely upon "to formulate a sensible, successful fiscal plan."  11-15-17 Tr. at 132.  There have been numerous public reports of financial data that is regularly provided to the Board that the creditors have not received, including but not limited to:

1. Monthly reports comparing budgeted to actual revenues and expenses, department by department, for Fiscal Years 2017 and 2018, see *Puerto Rico Bond Payments Will Improve After Nine Years: Jaresko*, The Bond Buyer (Sept. 19, 2017), Dkt. 1665 Ex. 1;

2. Monthly reports of all debt obligations due in the current fiscal year, including which such obligations have been paid, see Ex. A (Oversight Board Tr. 9-30-2016) at 12-13;

3. Quarterly reports on key Puerto Rico economic, financial, social and labor statistics, see *id*. at 13; and

4. Monthly reports of federal funds received and disbursed by area and agency, see *id.* at 12.

See also Ex. B (Aug. 4, 2017 Reorg Research Article) (referencing "a long list of weekly and monthly reports" that would be made public).

After initially concluding that Movants' Rule 2004 motions were premature, on November 21, 2017, the Court invited creditors to file a "joint Rule 2004 motion . . . limited to no more than 20 targeted requests" without prejudice to Movants' rights to "subsequently seek[]

---

[4]    We will not burden the Court by repeating the full list of excuses proffered by Respondents, but instead refer the Court to this prior briefing.  See Dkt. Nos. 1177, 1178, 1283, 1334, 1340, 1344, 1353, 1603, 1630, 1667, 1668, and 1670.

additional discovery after the resolution of the Joint Motion."  Dkt. 1847 at 2.  This Renewed

Motion follows.

## RELIEF REQUESTED

By this Renewed Motion, Movants request entry of an order, pursuant to Bankruptcy

Rule 2004, directing the Oversight Board, AAFAF, and the Commonwealth to produce

responsive, non-privileged documents requested on the **Schedule A** attached hereto for

examination by Movants.

## ARGUMENT

### I.    Movants Are Entitled To Information Regarding The Commonwealth's Fiscal Condition

Rule 2004 provides the Court with discretion to allow a "broad and unfettered" look into

a debtor's financial affairs.  *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); see

also *In re Youk-See*, 450 B.R. 312, 319-320 (Bankr. D. Mass. 2011).  As parties in interest to the

Commonwealth's Title III case, Movants have standing to pursue an examination under Rule

2004.  See *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed

the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally.").  Respondents do not

contend otherwise.

The evidence Movants seek—data about and analyses regarding the Commonwealth's

financial condition—is exactly the kind of evidence that Rule 2004 is designed to elicit.

"[A]ssist[ing] a party in interest in determining the nature and extent of the bankruptcy estate,

revealing assets, [and] examining transactions" is the very "purpose of a Rule 2004

examination."  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); see also *In re

Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).  And such information is

critical to assessing the confirmability of any proposed plan of adjustment.  That is so because

the Court cannot confirm a plan of adjustment over the dissenting votes of a class of creditors unless the plan is "fair and equitable."   11 U.S.C. § 1129(b)(1); see PROMESA §§ 301(a), 314(b)(1).  This means that the Board's proposed plan of adjustment may be approved only upon a factual finding that the recovery proposed for creditors is "the maximum that the [debtor] could reasonably pay."  *Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942).[5]  A plan of adjustment also must be "in the best interests of creditors."  PROMESA § 314(b)(6).  That rule "require[s] the court to consider whether available remedies under the non-bankruptcy laws and constitution of the [Commonwealth] would result in a greater recovery for the creditors than is provided by such plan."  *Id.*  Both inquiries necessarily depend on the Commonwealth's revenues and expenses, as well as the assumptions and projections in any revised fiscal plan that the Commonwealth may propose.

Counsel for Respondents nevertheless argued at the November 15 Omnibus Hearing that discovery into such basic financial information was inappropriate.  They urged that the then-operative Fiscal Plan is being revised, and that creditors have no interest in the revised fiscal plan other than the amount allocated to debt service—which counsel advised will be "zero" for the first five years.  *Cf.*, *e.g.*, 11-15-17 Tr. at 21-22.  But Respondents' position is precisely backwards:  The development of a revised fiscal plan that the Board has already predetermined will pay creditors *nothing* makes immediate transparency all the more critical.  As the Court recognized at the Omnibus Hearing, "it will be nothing less than a major sin if this gets to the end and then we start doing discovery."  *Id.* at 110.  Now is the time to get Respondents and

---

[5]      See also 6 *Collier on Bankruptcy* ¶ 943.03[1][f][i][A] (16th ed.) ("A plan under chapter 9 is fair and equitable if the amount to be received by the bondholders is all that they can reasonably expect in the circumstances." (quotation marks omitted)).

creditors on the same footing in terms of financial information so that the parties can negotiate, if possible, or contest, if necessary, any plan of adjustment.

## II.   Movants' Requests Are Narrowly Tailored To Seek Information Directly Relevant To The Commonwealth's Financial Condition, And Will Not Place Undue Burden On The Commonwealth

At the Court's direction, Schedule A contains fewer than 20 (17, to be exact) targeted requests that seek information directly relevant to the current and projected financial condition of the Commonwealth.  Production of the requested documents should impose minimal—if any—burden on Respondents, and will not disrupt day-to-day recovery from Hurricane Maria:

- Requests 1 through 7 seek reports regarding the Commonwealth's revenues, expenditures, liquidity, receipt of federal funds, and debt burden—all of which directly evidence the financial condition of the debtor.  With respect to each of these reports, the Board either has publicly stated that they exist or has previously publicly requested that the Commonwealth provide the Board with such a report.

- Requests 8 through 10 seek information relating to the Commonwealth's macroeconomic projections, which will form the basis for the Commonwealth's projection of its future financial condition, and the impact of any financial measures, in the revised fiscal plan.  Specifically, these requests seek documents explaining testimony provided by, and models produced by, two Commonwealth consultants—Andrew Wolfe and DevTech—neither of which is on-island.

- Requests 11 and 12 seek documents relating to fundamental expense projections that must be contained in the contemplated revised fiscal plan:  "essential services," and medical expenses.  Because the Commonwealth necessarily must evaluate what constitutes an essential service, and projected medical expenses, production of

6

documents containing such analysis should not be burdensome.

- Request 13 seeks production to *all* Movants of documents that have *already* been produced to other parties, in order to put all creditors on the same playing field. Additionally, to the extent that certain documents have been produced to a subset of Movants with limitations on their use (*e.g.*, limiting their use to a specific adversary proceeding), the request asks that all Movants be able to use such productions in all Title III proceedings.  Because these documents have already been produced to some parties, reproduction of such material should impose no burden on Respondents.

- Requests 14 and 15 seek documents relating to revenues that have been or are subject to being "clawed back" from certain Commonwealth agencies for purposes of paying the Commonwealth's general obligation debt, as well as documents relating to special taxes dedicated to paying such debt.  Such information is necessary to understand what assets are available to pay those obligations.  Because this request seeks only such documents sufficient to demonstrate the amount and location of such revenues, it should not be burdensome to comply with these requests.

- Request 16 seeks copies of the forthcoming submissions of the fiscal plans of the Commonwealth or any instrumentality to the Oversight Board, as well as documents necessary to understand the live model of the Fiscal Plan for Puerto Rico certified on March 13, 2017 and the Puerto Rico Electric Power Authority Fiscal Plan certified on April 28, 2017.  Movants believe that such information will be necessary to understand and analyze the revised fiscal plans.  The requested documents contain formulae and inputs that are used in the existing Fiscal Plans, or any revisions to those plans or new fiscal plans that are submitted to the Oversight Board, and

therefore should not be burdensome to locate or produce.

- Request 17 seeks documents related to the analysis that led to the creation of a $600 million "Reconciliation Adjustment" in the Fiscal Plan certified on March 13, 2017, which is layered onto projected expenses each year, and serves to wipe out the effect of the Commonwealth's proposed financial reform measures. This request seeks analysis conducted by Ernst & Young, which should not be on-island.

Because documents responsive to these targeted requests can be produced with minimal burden, particularly when compared to the "undue hardship [and] injustice" that will be imposed on Movants if they are not provided the information they seek (*In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)), they should be produced.

## **CERTIFICATION**

Undersigned counsel hereby certify:

1.      Pursuant to Local Bankruptcy Rule 2004-1, and also in accordance with Local Bankruptcy Rule 9013-1(a) and paragraph I.H of the *Third Amended Notice, Case Management and Administrative Procedures* (Dkt. 1512-1), prior to filing their initial motions for examination pursuant to Bankr. R. 2004, undersigned counsel conferred with counsel for the Oversight Board and AAFAF, on August 21, 2017, to "arrange a mutually agreeable date, place, and time for the examination," Local Bankr. R. 2004-1(b), and in an effort to resolve or narrow the issues presented herein. Movants filed this Renewed Motion pursuant to the procedures set forth in the Court's order dated November 21, 2017 (Dkt. 1847).

2.      Pursuant to Local Bankruptcy Rule 9013-1(a)(1), undersigned counsel has carefully examined the matter at issue and concluded that there is a true need for an urgent hearing and that undersigned counsel has not created the urgency through a lack of due diligence.

In particular, the Court's Order date November 21, 2017 (Dkt. 1847) provides that this Renewed Motion may be heard on December 14, 2017.  Because that hearing date is prior to the next scheduled Omnibus hearing date of December 20, 2017, a motion on ordinary notice is not feasible.  Movants propose that the Court enter an order setting the deadline to object to this Renewed Motion by **December 6, 2017**, which would give the parties sufficient time to meet and confer as provided in Paragraph 1.c of the November 21, 2017 Order prior to filing a joint status report on December 11, 2017.  See *id.* ¶¶ 1.c, 2.  Movants further propose that the Court enter an order setting the deadline for any reply brief in support of the Renewed Motion to be filed by **December 11, 2017**.

Dated:  November 28, 2017
        San Juan, Puerto Rico

Respectfully submitted.

**JIMÉNEZ, GRAFFAM & LAUSELL**

By: /s/ J. Ramón Rivera Morales

J. Ramón Rivera Morales
    (USDC-PR No. 200701)
Andrés F. Picó Ramírez
    (USDC-PR No. 302114)
PO Box 366104
San Juan, PR 00936-6104
Telephone:  (787) 767-1030
Email:  rrivera@jgl.com
        apico@jgl.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**

By: /s/ Andrew N. Rosenberg
Andrew N. Rosenberg**
Kyle J. Kimpler**
Karen R. Zeituni**
1285 Avenue of the Americas
New York, NY  10019
Telephone:  (212) 373-3000
Email:  arosenberg@paulweiss.com
        kkimpler@paulweiss.com
        kzeituni@paulweiss.com

**ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**

By: /s/ Mark T. Stancil
Lawrence S. Robbins**
Mark T. Stancil**
Gary A. Orseck**
Kathryn S. Zecca**
Ariel N. Lavinbuk**
Donald Burke**
1801 K Street, NW
Washington, D.C.  20006
Telephone: (202) 775-4500
Email:  lrobbins@robbinsrussell.com
        mstancil@robbinsrussell.com
        gorseck@robbinsrussell.com
        kzecca@robbinsrussell.com
        alavinbuk@robbinsrussell.com
        dburke@robbinsrussell.com

** *admitted pro hac vice*

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

10

**FERRAIUOLI LLC**

By: _/s/ Roberto Cámara-Fuertes_
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
            scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: _/s/ Dennis F. Dunne_
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted _pro hac vice_)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile:  (212) 822-5770
Email: ddunne@milbank.com
            aleblanc@milbank.com
            amiller@milbank.com
            gmainland@milbank.com

_**Attorneys for Ambac Assurance Corporation**_

11

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
Heriberto Burgos Pérez
USDC-PR 204809
Ricardo F. Casellas-Sánchez
USDC-PR 203114
Diana Pérez-Seda
USDC-PR 232014
P.O. Box 364924
San Juan, PR 00936-4924
Telephone:  (787) 756-1400
Facsimile:  (787) 756-1401
Email: hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

*Attorneys for Assured Guaranty Corp.
and Assured Guaranty Municipal
Corp.*

**CADWALADER, WICKERSHAM & TAFT
LLP**

By:  /s/ *Howard R. Hawkins*
Howard R. Hawkins, Jr. *
Mark C. Ellenberg*
Ellen Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 406-6666
Email: howard.hawkins@cwt.com
          mark.ellenberg@cwt.com
          ellen.halstead@cwt.com
          thomas.curtin@cwt.com
          casey.servais@cwt.com

* Admitted pro hac vice

*Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

12

**TORO, COLÓN, MULLET, RIVERA&
SIFRE, P.S.C.**

 *s/ Manuel Fernandez-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

 *s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

*s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC-PR No. 220,510
E-mail: jvankirk@tcmrslaw.com

P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

 *s/ Gregory A. Horowitz*
THOMAS MOERS MAYER*
AMY CATON*
GREGORY A. HOROWITZ*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
     acaton@kramerlevin.com
     ghorowitz@kramerlevin.com
     dbuckley@kramerlevin.com
*(admitted *pro hac vice*)

*Counsel to the Mutual Fund Group*

 /s/ Eric Pérez-Ochoa (USDC-PR No. 206314)

Eric Pérez-Ochoa (USDC-PR No. 206314)
Luis Oliver-Fraticelli (USDC-PR No. 209204)
Alexandra Casellas-Cabrera (USDC-PR. No. 301010)
Lourdes Arroyo-Portela (USDC-PR No. 226501)

**ADSUAR MUÑOZ GOYCO SEDA & PÉREZ-
OCHOA, PSC, P.S.C.**
208 Ponce de León Avenue, Suite 1600
San Juan, Puerto Rico 00936
Telephone: (787) 756-9000
Facsimile: (787) 756-9010
Email: epo@amgprlaw.com
        loliver@amgprlaw.com
        acasellas@amgprlaw.com
        larroyo@amgprlaw.com

– and –

Marcia Goldstein
Jonathan Polkes
Salvatore A. Romanello
Gregory Silbert
Kelly DiBlasi
Gabriel A. Morgan
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153

*Counsel to National Public Finance Guarantee
Corporation*

**Exhibit A**

**Proposed Order**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br><br>(Jointly Administered) |

**[PROPOSED] ORDER GRANTING RENEWED JOINT MOTION BY
THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AMBAC
ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED
GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP, AND
NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION
FOR ORDER AUTHORIZING RULE 2004 EXAMINATION**

Upon the renewed motion (the "**Renewed Motion**")[2] of the Ad Hoc Group of

General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp.,

Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Renewed Motion.

Guarantee Corporation ("**Movants**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing Movants to take Rule 2004 discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**"), pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("**PROMESA**"); (ii) the Commonwealth; and (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") (collectively the "**Respondents**"), as more fully set forth in the Renewed Motion; and the Court having jurisdiction to consider the Renewed Motion and the relief requested therein in accordance with 48 U.S.C. § 2166; and venue being proper before this Court pursuant to 48 U.S.C. § 2167; and notice of the Renewed Motion having been given as provided in the Renewed Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Renewed Motion need be provided; and the Court having held a hearing to consider the relief requested in the Renewed Motion; and the Court having found and determined that the relief sought in the Renewed Motion and granted herein is in the best interests of the Commonwealth, its creditors, and all parties in interest, and that the legal and factual bases set forth in the Renewed Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.    The Renewed Motion is granted as provided herein.

2.    The Oversight Board, AAFAF, and the Commonwealth shall comply with the document requests attached hereto as **Schedule A** by no later than ten (10) days after entry of this Order.

3.      This Court shall retain jurisdiction to resolve any dispute arising from or related to this Order and to interpret, implement, and enforce the provisions of this Order.

4.      This Order is without prejudice to Movants' rights to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004(a) or any other applicable law.

Dated: _____, 2017
      San Juan, Puerto Rico

_____
HONORABLE JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE

# SCHEDULE A

## DEFINITIONS

1.      "Title III Proceedings" means all litigation relating to any effort to restructure the debt of the Commonwealth or any of its public instrumentalities that is filed pursuant to Title III of PROMESA, including but not limited to *In re FOMB for P.R. as representative of The Commonwealth of Puerto Rico*, No. 17 BK 3283; *In re FOMB as representative of Puerto Rico Sales Tax Financing Corporation ("COFINA")*, No. 17 BK 3284; *In re FOMB as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS")*, No. 17 BK 3566; *In re FOMB for P.R. as representative of Puerto Rico Highways and Transportation Authority ("HTA")*, No. 17 BK 3567; and *In re FOMB as representative of Puerto Rico Electric Power Authority ("PREPA")*, No. 17 BK 4780.

2.      "TSA" means Treasury Single Account.

3.      "You" or "Your" refers to (1) the Financial Oversight Management Board; and (2) the Commonwealth, and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## INSTRUCTIONS

1.      You are required to answer these Document Requests drawing upon all materials in Your possession, custody, or control, as well as materials that are not in Your custody but are owned in whole or in part by You and those that You have an understanding, express or implied, that You may use, inspect, examine, or copy.  You must provide all information in response to a

Document Request which is known to You, Your agents, consultants, employees, accountants, attorneys, or experts, or which appears in Your records.

2.      The following rules of construction shall apply to these Document Requests.

a.      The terms "<u>all</u>" and "<u>any</u>," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material.

b.      The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Request all responses that might otherwise be construed to be outside of its scope.

c.      The term "<u>including</u>" shall be construed to mean "<u>including, but not limited to</u>," or "<u>including, without limitation</u>" to encompass more than the specifically identified materials.

d.      The present tense shall also include the past tense and vice versa.

e.      The use of the singular form of any word includes the plural and vice versa.

3.      Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these Document Requests.

4.      You are required to produce all non-identical copies and drafts of each document. The originals of all Documents produced in copy form shall be made available for inspection upon request.

5.      Documents attached to each other in their original form should not be separated.

6.      If no information or Documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

7.      The fact that a Document has or will be produced by another plaintiff, third party, or other party to these or related proceedings does not relieve You of the obligation to produce Your copy of the same Document.

8.      If any Document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Fed. R. Civ. P. 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, and PROMESA § 310, 48 U.S.C. § 2170, You are to provide a list of such Documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

    a.      the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

    b.      all facts relied upon in support of the claim of privilege or immunity;

    c.      all Persons on whose behalf the privilege or immunity is claimed;

    d.      the type of Document (*e.g.*, letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

    e.      the subject matter (without revealing the information as to which privilege is claimed);

    f.      its Date, author(s), sender(s), addressee(s), and recipient(s); and

    g.      the paragraph(s) of these Document Requests to which production of the document is responsive.

You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all Documents or portions thereof not subject to Your objection.

9.      If any Document requested was, but is no longer, in Your possession, custody, or control, identify the document and state what disposition was made of it and the Date or Dates upon which such disposition was made, and additionally, produce all Documents relating to the disposition of such document.

10.     If You object to any Document Request (or portion thereof), state the reason for the objection in detail and respond to that Document Request as narrowed by Your objection.

11.     Unless otherwise specified in a specific request, electronically stored information ("ESI") as that term is used in Fed. R. Civ. P. 34 should be produced as follows:

    a.    TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

    b.    Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

    c.    Text Files.  Extracted full text in the format of document level text files shall be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  Text from redacted pages will be produced in OCR format rather than extracted text.

    d.    Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

    e.    Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters:
  Comma        ¶        ASCII        character        (020)
  Quote þ ASCII character (254)

7

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

- A complete list of metadata fields is included in paragraph 11(f).

f.    Metadata.  For all ESI records, provide all of the following metadata fields:  Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and Time, Last Modified Date and Time, Parent Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

g.    Spreadsheets.   For spreadsheets that were originally created using common, off-the-shelf software (*e.g.*, Microsoft Excel), produce the spreadsheets in native format and, in addition, in TIFF format.  Native file Documents must be named per the Beginning Bates Number.  The full path of the native file must be provided in the .dat file.

12.    Hard copy Documents shall be produced as follows:

a.    TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

b.      Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

c.      OCR.  High-quality document level OCR text files should be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  For redacted Documents, provide the re-OCR'd version.

d.      Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters: Comma          ¶          ASCII          character          (020) Quote þ ASCII character (254)

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

9

e.     Unitizing of Records.  In scanning hard copy records, distinct records should not be merged into a single record, and single records, should not be split into multiple records (*i.e.*, hard copy records should be logically unitized).

f.     Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

g.     Objective Coding Fields.  The following objective coding fields should be provided:  Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

13.     These Documents Requests are continuing in nature.  If any information or Document responsive to a Document Request herein is not presently in Your possession, custody, or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation pursuant to Fed. R. Civ. P. 26(e), and are hereby requested, to supplement Your responses to these Document Requests within a reasonable period of time after it comes into Your possession, custody, or control.

## **RELEVANT TIME PERIOD**

Unless otherwise specified, the relevant time period for these requests is January 1, 2014 to the present.

## **DOCUMENT REQUESTS**

## **REQUEST NO. 1**

Documents sufficient to show actual revenues and expenses, department by department, for Fiscal Years 2016, 2017 and year-to-date 2018.  See, *e.g.*, Oversight Board Initial Request for Information, announced at The Financial Oversight And Management Board First Public Meeting (Sept. 30, 2016) (hereinafter, "FOMB Initial Request").

**REQUEST NO. 2**

Monthly reports comparing budgeted to actual revenues and expenses, department by department, for Fiscal Years 2017 and 2018.  See *Puerto Rico Bond Payments Will Improve After Nine Years: Jaresko*, THE BOND BUYER (Sept. 19, 2017) (Ex. A to GO Group Reply Brief In Support of Motion for Rule 2004 Examination, filed Nov. 7, 2017).

**REQUEST NO. 3**

All unproduced and future weekly liquidity reports, in the form provided to the Oversight Board to the extent they are provided to the Oversight Board.  See, *e.g.*, TSA FY 2018 Cash Flow Report dated Oct. 27, 2017 previously published by AAFAF; and TSA Cash Flow Actual-to-Forecast Comparison dated May 26, 2017, available at https://drive.google.com-/file/d/0BwUldNJ-sOg_TkJGdFVtelZCTms/view.

**REQUEST NO. 4**

Monthly reports on Federal Funds received and disbursed by area and agency and monthly reports on any hurricane-related expenditures that have not yet been or will not bereimbursed from Federal Funds.  See, *e.g.*, FOMB Initial Request.

**REQUEST NO. 5**

Monthly reports of all debt obligations due in the current fiscal year, including which such obligations have been paid.  See FOMB Initial Request.

**REQUEST NO. 6**

Quarterly reports on key Puerto Rico economic, financial, social and labor statistics.  See FOMB Initial Request.

**REQUEST NO. 7**

Monthly payroll reports by agency.  See FOMB Initial Request.

**REQUEST NO. 8**

Items not produced (both methodological and inputs) with respect to the DevTech models or codes that generate anticipated inflation and GNP, including but not limited to information regarding the meaning and method of calculation of any undefined variables.

**REQUEST NO. 9**

All models, analyses, and other documents supporting Andrew Wolfe's conclusion that "Puerto Rico's real economic growth needs to reach at least 0.8% to achieve fiscal and debt sustainability" and that "if Puerto Rico's real economic growth were to fall below the 0.8% threshold, a downward economic spiral would occur."  Declaration of Andrew Wolfe ¶ 10, filed in *Peaje Investments LLC v. Puerto Rico Highways and Transportation Authority*, Adv. Proc. No. 17-152, Dkt. 92 (July 14, 2017).

**REQUEST NO. 10**

All models, analyses, and other documents supporting Andrew Wolfe's conclusion that "(i) adopting a rate above $0.214 per kWh or (ii) increasing the rate (even if not above $0.214 per kWh) at a pace that is disproportionate to rate increases adopted by other Caribbean countries and the U.S. mainland region would eventually contribute to a downward economic spiral that would result in Puerto Rico returning to a path of declining economic activity, which would in turn adversely impact the demand for electricity and in the end lead to another debt service payments crisis for PREPA."  Declaration of Andrew Wolfe ¶ 12, filed in *In re Fin. Mgmt. & Oversight Bd as Representative of PREPA*, No. 17-4780, Dkt. 149-2 (July 31, 2017).

**REQUEST NO. 11**

Documents relating to historical participation levels on an aggregate basis for each service line in the healthcare system, and the total cost by service line in the healthcare system on

an historical basis, as well as assumed participation levels and assumed total costs by service line in any Fiscal Plan projections.

## REQUEST NO. 12

Materials reflecting the definition of "essential services," and any supporting workbook or schedule analyzing the cost of the same.

## REQUEST NO. 13

All documents that You have produced or received, and all transcripts of depositions taken, in connection with discovery or disclosure in (1) these Title III Proceedings, including any adversary proceedings filed in any of the Title III Proceedings; (2) *Leon v. Rosselló-Nevares*, Civil No. SJ2017cv00107; (3) *Bhatia Gautier v. Rosselló-Nevares*, Civil No. SJ2017cv00271; and (4) *Centro Periodismo Investigativo v. Rosselló-Nevares*, Civil No. SJ2017cv00396.[3]

## REQUEST NO. 14

Documents sufficient to show the (i) amounts and (ii) location and/or (iii) use of all revenues that have been or are subject to being "clawed back" from each of the Puerto Rico Highways and Transportation Authority, the Metropolitan Bus Authority, the Puerto Rico Convention Center District Authority, the Puerto Rico Infrastructure Financing Authority, the Puerto Rico Integrated Transportation Authority, or any other instrumentality of the Commonwealth for the purpose of paying the Commonwealth's general obligation debt.

## REQUEST NO. 15

Documents sufficient to show the (i) amount and (ii) location and/or use of the proceeds of the "[s]pecial tax" imposed by 21 L.P.R.A. § 5002 "for the amortization and redemption of the

---

[3]    To the extent some such documents and transcripts have been produced to certain Movants with the restrictions that their use be limited to specified adversary proceedings, Movants request use of such documents in all Title III proceedings.

general obligations of the Commonwealth," including records reflecting amounts held in the "Commonwealth Debt Redemption Fund" required to be established pursuant to 21 L.P.R.A. § 5004(a).

**REQUEST NO. 16**

To the extent not already produced or requested above, any inputs, calculations, or formulae underlying (i) the Fiscal Plan for Puerto Rico certified on March 13, 2017, and the Puerto Rico Electric Power Authority Fiscal Plan certified on April 28, 2017, (ii) revisions to either of such fiscal plans, and (iii) forthcoming fiscal plans for the Commonwealth, PREPA, PRASA, and any instrumentality when and as submitted (and/or resubmitted) to the Oversight Board, together with copies of such forthcoming fiscal plans when and as submitted (and/or re-submitted) to the Oversight Board.

**REQUEST NO. 17**

A fully functional model or workbook (in native format) showing how the Reconciliation Adjustment discussed on Page 15 of the Fiscal Plan for Puerto Rico certified on March 13, 2017 was calculated including but not limited to any backup or linked spreadsheets and all data run through such model(s) or workbook(s), and analysis or documents sufficient to show how the Reconciliation Adjustment is reflected in the budgets for the Commonwealth, any agency or instrumentally therefor and the FOMB including, but not limited to, any analysis prepared to compare or "bridge" each line item in the 2014, 2015, or 2016 preliminary or final audits to that Fiscal Plan.