**Objection Deadline:** December 5, 2017, 4:00 p.m. (AST)
**Hearing Date:** December 20, 2017, 9:30 a.m. (AST)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

## AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

JURISDICTION ..................................................................................................... 2

RELEVANT FACTUAL BACKGROUND............................................................. 2

RELIEF REQUESTED............................................................................................ 5

BASIS FOR RELIEF REQUESTED....................................................................... 6

      A.    Ambac Is Entitled To A Rule 2004 Examination Relating
            To The Debtor's Collection Of The SUT In The Aftermath
            Of Hurricane Maria..........................................................................6

      B.    Ambac Must Have Information Relating To The Collection
            Of The SUT To Meaningfully Participate In The
            Resolution Of These Title III Cases................................................8

      C.    Ambac's Information Requests are Narrowly Focused,
            Targeting Specific Information Needed To Understand The
            Impact Recent Events Have Had on The Collection Of The
            SUT................................................................................................10

      D.    The Information Provided By The Oversight Board Is
            Insufficient To Allow Ambac And Other Creditors To
            Meaningfully Participate In the Resolution Of These Title
            III Cases. ......................................................................................11

CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1.......... 11

NOTICE................................................................................................................. 12

NO PRIOR REQUEST FOR RELIEF.................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re China Fishery Grp. Ltd.*,
   2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ..............................................9

*In re Coffee Cupboard, Inc.*,
   128 B.R. 509 (Bankr. E.D.N.Y. 1991).....................................................................10

*In re Drexel Burnham Lambert Grp., Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991).................................................................7, 10

*ePlus, Inc. v. Katz* (*In re Metiom, Inc.*),
   318 B.R. 263 (S.D.N.Y. 2004)...................................................................................8

*Freeman v. Seligson*,
   405 F.2d 1326 (D.C. Cir. 1968)................................................................................8

*In re Gawker Media LLC.*,
   2017 WL 2804870 (Bankr. S.D.N.Y. 2017)..........................................................7, 9

*In re Hilsen*,
   2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ...........................................7, 8

*In re Hughes*,
   281 B.R. 224 (Bankr. S.D.N.Y. 2002).......................................................................8

*In re Ionosphere Clubs, Inc.*,
   156 B.R. 414 (Bankr. S.D.N.Y. 1993).......................................................................8

*In re Johns-Manville Corp.*,
   36 B.R. 743 (Bankr. S.D.N.Y. 1984).........................................................................8

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004)..................................................................8, 10

*In re Summit Corp.*,
   891 F.2d 1 (1st Cir. 1989).........................................................................................8

**Statutes**

11 U.S.C. § 1109(b) ........................................................................................................8

28 U.S.C. § 1331 ............................................................................................................2

28 U.S.C. § 1391(b) ......................................................................................................2

48 U.S.C. §§ 2101 *et seq.*........................................................................................................1

48 U.S.C. § 2170 ..................................................................................................................7

**Other Authorities**

Fed. R. Bankr. P. 2004.................................................................................................1, 7, 8

Fed. R. Civ. P. 34 .................................................................................................................3

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Ambac Assurance Corporation ("Ambac") respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), to take discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Debtors"); (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"); (iii) the Commonwealth; and (iv) COFINA, and approving procedures to take related discovery from other parties.  In support of this Motion, Ambac respectfully states as follows:

### PRELIMINARY STATEMENT

1.     In September 2017, Hurricane Maria slammed into Puerto Rico, shutting down basic power, water, and communications services throughout the island.

2.     Hurricane Maria also impacted collection of the sales-and-use tax ("SUT"), a portion of which is pledged as collateral for COFINA bonds.  Specifically, Hurricane Maria has led to a decrease in business activity, functional impediments to collection, and the issuance of Executive Order 2017-068 (the "SME Executive Order"), which suspended SUT collection on small and medium-sized enterprises ("SMEs").

3.     Rule 2004 of the Bankruptcy Rules allows the Court to order an examination of "the liabilities and financial condition of the debtor."  Fed. R. Bankr. P. 2004(b).  In accordance with Rule 2004, Ambac seeks from the Oversight Board, AAFAF, the Commonwealth, and COFINA information that is necessary for Ambac to fully understand how the collection of the SUT has been affected by Hurricane Maria.

4.      Specifically, Ambac seeks information relating to the impact on SUT generation due to depressed consumption and business activity following Hurricane Maria, as well as any logistical impediments to collecting the tax.  Ambac also seeks information relating to the impact or projected impact on SUT collection of the SME Executive Order.

5.      Information that sheds light on the financial condition of the Debtors is critical to Ambac's ability to evaluate any restructuring proposals.  Without the information sought, Ambac cannot participate meaningfully in the process of advancing these Title III cases towards successful plans of adjustment.

6.      The Oversight Board, AAFAF, the Commonwealth, and COFINA have failed to show any intent to voluntarily engage in a cooperative process to provide this critical information to creditors.  Ambac accordingly seeks an order from this Court compelling the Oversight Board, AAFAF, the Commonwealth, and COFINA to produce this information.

## JURISDICTION

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## RELEVANT FACTUAL BACKGROUND

8.      Ambac is a provider of financial guaranty insurance to United States public finance and infrastructure markets.  Ambac insures approximately $1.35 billion in net accreted value of senior bonds issued by COFINA, as well as hundreds of millions of dollars of bonds issued by other Commonwealth instrumentalities.

9.      In 2006, COFINA was established by the Puerto Rico Legislative Assembly "for the purpose of issuing bonds and utilizing other financing mechanisms." 13 L.P.R.A. § 11a.  Under COFINA's enabling legislation, the Commonwealth transferred legal ownership of a portion of

the SUT to COFINA (the "Dedicated Sales Tax"), protected the Dedicated Sales Tax from "clawback" by the Commonwealth for any purpose, and authorized COFINA to pledge the Dedicated Sales Tax as collateral for bonds. *Id.* § 12. COFINA's enabling legislation further required the segregation of the Dedicated Sales Tax from the Commonwealth's general fund and prohibited the use of those monies for anything other than repayment of bonds issued by COFINA and related expenses.

10. On May 3, 2017, the Oversight Board filed a voluntary petition for relief on behalf of the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof styled as *In re the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico*, No. 17-BK-3283-LTS (D. P.R. May 3, 2017) (the "Commonwealth Title III Case").

11. On May 5, 2017, the Oversight Board filed a voluntary petition for relief on behalf of COFINA pursuant to PROMESA section 304(a), commencing a case under Title III thereof styled as *In re the Financial Oversight and Management Board for Puerto Rico, as Representative of the Puerto Rico Sales Tax Financing Corporation*, No. 17-3284-LTS (D. P.R. May 5, 2017) (together with the Commonwealth Title III case, the "Title III Cases").

12. On September 20, 2017, Hurricane Maria made landfall in Puerto Rico. In anticipation of the storm, Governor Ricardo Rosselló issued an executive order that declared a state of emergency for the Commonwealth. *See* Executive Order, OE-2017-047 (Sept. 17, 2017). Governor Rosselló subsequently suspended the SUT on prepared foods and petroleum products.

13. Hurricane Maria substantially impaired Puerto Rico's water and electricity services, Internet access, and other communications. The island's only electricity service provider, the Puerto Rico Electric Power Authority, could not provide power to the vast majority of its

customers and reportedly continues to have difficulty providing such services to this day.  As a result, the electronic payment system (the "SUT Payment System") used to collect and transmit the SUT was, according to AAFAF's representations, disabled.

14.     In the weeks following Hurricane Maria, questions concerning the generation and collection of the SUT persisted.  The Commonwealth and others considered a number of measures to address issues with SUT generation and collection.

15.     In October 2017, Governor Rosselló presented two bills to the Commonwealth's Legislative Assembly, including the proposed Law to Address Emergencies and Disasters in Puerto Rico, which purported to grant the Commonwealth the power to stop collecting the SUT, including the revenues owned by COFINA and pledged to the repayment of COFINA's bonds. The Commonwealth's Legislative Assembly reportedly expressed constitutional and other legal concerns regarding the proposed legislation, although the bills remain before the Legislative Assembly.

16.     On November 8, 2017, Governor Rosselló signed the SME Executive Order, which exempted an estimated 60,000 small and midsize businesses from collecting and remitting the SUT from November 20 through December 31, 2017.  The order covered businesses that generate $1 million or less in annual sales.  The order also established a 10% reimbursement for the businesses on their monthly SUT filings from August through November.  *See* Executive order OE-2017-068 (Nov. 8, 2017).

17.     Creditors such as Ambac lack any visibility into how much SUT has been collected and deposited into the relevant accounts (whether at Banco Popular de Puerto Rico or elsewhere); whether the money has been appropriately segregated; and the degree to which an electronic deposit structure remains in place (and what percentage of the SUT is collected in that manner).

- 4 -

## RELIEF REQUESTED

18.     Pursuant to Bankruptcy Rule 2004, Ambac requests entry of an order:

a.  Directing the Oversight Board, AAFAF, the Commonwealth, and COFINA to produce responsive, non-privileged documents requested on the attached Exhibit 1 hereto for examination by Ambac;

b.  Directing that Raúl Maldonado, the Secretary of the Treasury of the Commonwealth, submit to an examination under oath on such date and time and at a location in Puerto Rico as designated in writing by Ambac on not less than 14 days' notice;

c.  Directing the Oversight Board, the Commonwealth, AAFAF, and COFINA to designate an individual or individuals with knowledge of the matters described in Exhibit 1 hereto and to produce that individual(s) to be examined by Ambac under oath on such date and time and at such location in Puerto Rico as may be designated in writing by Ambac on not less than 14 days' notice; and

d.  Authorizing Ambac to issue subpoenas directing the production of documents and the examination of other witnesses who may have knowledge of the matters described in Exhibit 1 hereto without separate application to this Court for each subpoena or witness, and in accordance with the procedures set forth herein and in the Proposed Order.

## BASIS FOR RELIEF REQUESTED

**A.    Ambac Is Entitled To A Rule 2004 Examination Relating To The Debtor's Collection Of The SUT In The Aftermath Of Hurricane Maria.**

19.    Pursuant to Section 310 of PROMESA, the Federal Rules of Bankruptcy Procedure apply to Title III proceedings and civil proceedings arising thereunder.   48 U.S.C. § 2170. Accordingly, Rule 2004 of the Bankruptcy Rules is applicable to these proceedings.

20.    Rule 2004 is aimed at allowing examination relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. § 2004(b); *see also In re Hilsen*, 2008 WL 2945996, at *1 (Bankr. S.D.N.Y. July 25, 2008) (Rule 2004 discovery is warranted so long as "there is a reasonable nexus to the debtor and the administration of the debtor's case").

21.    The granting of a motion under Rule 2004 is within the discretion of the Court.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. 2017) ("Rule 2004 gives the Court 'significant' discretion.") (internal citation omitted).  Furthermore, section 105(a) of the Bankruptcy Code "sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (quoting *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986)).

22.    "The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad." *In re Drexel Burnham*, 123 B.R. at 711.  In line with the broad scope of Rule 2004, the target of Rule 2004 discovery is not limited to the debtor itself.  "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."

*In re Ionosphere Clubs, Inc.*, 156 B.R. at 432; *see also Freeman v. Seligson*, 405 F.2d 1326, 1333 (D.C. Cir. 1968); *ePlus, Inc. v. Katz* (*In re Metiom, Inc.*), 318 B.R. 263, 268 (S.D.N.Y. 2004).

23.     Rule 2004 provides that any party in interest may move for examination.  Fed. R. Bankr. P. 2004(a).  As a significant long-term creditor of COFINA, Ambac unquestionably qualifies as a party in interest and is entitled to information regarding the state of the Commonwealth's SUT collection.  *See In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally."); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1984) (finding that the term "party in interest" is to be construed broadly).

24.     Courts have found that financial information about the debtor, its assets and liabilities, including information relating "to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan," are appropriate subjects of a Rule 2004 request.  *In re Gawker Media LLC*, 2017 WL 2804870, at *5; *see In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors[.]").

25.     Similarly, courts have found that creditors may obtain discovery into any matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Hilsen*, 2008 WL 2945996, at *4 (defining Rule 2004 examinations to cover "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge").

26.     As such, information relating to the impact of Hurricane Maria on SUT collection is precisely the type of information that Rule 2004 is designed to cover.  *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).

**B.     Ambac Must Have Information Relating To The Collection Of The SUT To Meaningfully Participate In The Resolution Of These Title III Cases.**

27.     Ambac seeks information relating to the impact on SUT generation due to depressed consumption and business activity following Hurricane Maria, as well as any logistical impediments to collecting the SUT, as discussed above.  Ambac also seeks information relating to any impact or projected impact on SUT collection of the SME Executive Order.

28.     In assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination."  *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017).  Further, courts look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause.  *In re Gawker Media LLC*, 2017 WL 2804870, at *5.  This can include a showing that the information requested is necessary to the claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice.  *Id*. (citation omitted).

29.     Ambac has demonstrated good cause to be granted a Rule 2004 investigation.  As the Title III proceedings move forward, it is critical that creditors have fulsome information concerning the financial condition of the Debtors.  Information that falls in this category includes, but is not limited to, assets and liabilities, projected expenses, and revenue stream forecasts, including forecasts of SUT collection.

30.     In addition, Ambac will clearly suffer "undue hardship [and] injustice" if it is not provided the information it seeks.  *See In re Drexel Burnham*, 123 B.R. at 712. Without the information sought, Ambac—and creditors more generally—cannot participate meaningfully in the process of advancing these Title III cases towards successful plans of adjustment.

31.     Discovery of this critical information is the very "purpose of a Rule 2004 examination." *In re Recoton Corp.*, 307 B.R. at 755; *see also In re Coffee Cupboard, Inc.*, 128 B.R. at 514.  Information that sheds light on the financial condition of the Debtors is fundamental to Ambac's ability to evaluate any restructuring proposals.

32.     Creditor access to such information is a fundamental tenet of PROMESA and Puerto Rico law.  Both Titles III and VI of PROMESA provide that creditors are entitled to information that enables them to make informed decisions about potential restructurings. *See, e.g.*, PROMESA §§ 206(a), 301(a), 601(f).  In addition, the Puerto Rican government has taken steps to ensure that citizens have access to information about public entities such as AAFAF, the Oversight Board, and the Commonwealth itself.  *See, e.g.*, 32 L.P.R.A. § 1781 (granting citizens the right to inspect and copy any public documents, subject to certain exceptions).

33.     Ambac is also contractually entitled to this information under its financial guaranty insurance policies.  As early as April 6, 2015, Ambac requested information regarding the financial condition of COFINA (among other Commonwealth public corporations).  When no response was received, Ambac reiterated its requests for information on July 9, 2015.  These requests were similarly ignored.

34.     The surge of executive orders and proposed legislation in the aftermath of Hurricane Maria clarifies the need for transparency to ensure that any proposed plan of adjustment does all that is reasonably possible to maximize creditor recoveries.  *See Lorber v. Vista Irrigation*

*Dist.*, 127 F.2d 628, 639 (9th Cir. 1942) (finding that a municipal debtor's plan of adjustment may be approved only upon a factual finding that the recovery proposed for creditors is "the maximum that the [debtor] could reasonably pay"); *see also* 6 Collier 943.03[1][f][i] ("A plan under chapter 9 is fair and equitable if the amount to be received by the bondholders.").

### C.    Ambac's Information Requests are Narrowly Focused, Targeting Specific Information Needed To Understand The Impact Recent Events Have Had on The Collection Of The SUT.

35.    Ambac's information requests are narrowly tailored and targeted at discovering specific information needed to understand the impact of Hurricane Maria on the generation and collection of the SUT, as well as any impact or projected impact on SUT collection of the SME Executive Order.

36.    Ambac is a party to three adversary proceedings within these Title III cases and is entitled to receive discovery relating to the claims therein.  However, the information requests here do not relate to any of the issues raised in the adversary proceeding.

37.    Ambac's primary purpose in seeking discovery pursuant to Rule 2004 here is to allow it to evaluate the impact that Hurricane Maria has had on SUT generation and collection, in order to better understand the Commonwealth's financial condition and any restructuring proposals made by the Commonwealth in the future.  As such, there are no grounds to deny the motion based on the pending proceeding rule.  *See In re Washington Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) (while "discovery of evidence related to the pending proceeding must be accomplished in accord with more restrictive provisions of the Federal Rules of Bankruptcy Procedure, . . . unrelated discovery should not be subject to those rules simply because there is an adversary proceeding pending"); *see also In re Int'l Fibercom, Inc.,* 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply").

**D.    The Information Provided By The Oversight Board Is Insufficient To Allow Ambac
And Other Creditors To Meaningfully Participate In the Resolution Of These Title
III Cases.**

38.    To the extent the Oversight Board or AAFAF has provided information concerning

SUT collection, that information has only been at an aggregate level, precluding meaningful

analysis of the trends and causal factors leading to current SUT collection levels.  Such aggregate

information is insufficient, as it does not allow Ambac or other creditors to meaningfully evaluate

the impact that Hurricane Maria has had on SUT generation and collection.

39.    The Oversight Board, AAFAF, the Commonwealth, and COFINA have failed to

show any intent to voluntarily engage in a cooperative process to provide this critical information

to creditors.  Rather, the Oversight Board, AAFAF, the Commonwealth, and COFINA have

indicated that they do not believe Ambac is entitled to much of this information.

40.    Ambac accordingly seeks an Order from this Court compelling the Oversight Board

and AAFAF (both representatives of the Debtors), and the Commonwealth and COFINA (the

Debtors themselves), to produce this information.

**CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1**

41.    Undersigned counsel hereby certifies that, prior to filing this motion, they notified

counsel for the Oversight Board and AAFAF of Ambac's intent to conduct an examination of the

Debtors pursuant to Rule 2004 and offered to meet and confer regarding this motion.  Counsel to

the Oversight Board and AAFAF did not respond to Ambac's offer in time for Ambac to meet the

deadline for motions to be heard at the December 20, 2017 omnibus hearing.  Accordingly, and in

light of the Oversight Board and AAFAF's prior objections to Rule 2004 discovery sought by Ambac, undersigned counsel does not believe that a meet and confer would be fruitful.

### NOTICE

42.    Under the Second Amended Case Management Procedures, the deadline to file an objection to this Motion is December 5, 2017.  Ambac therefore provides the following notice pursuant to Rule 2004-1(d) of the Puerto Rico Local Bankruptcy Rules, modified accordingly with respect to the objection deadline: Any party who objects to the examination shall serve and file an objection or motion for protective order with the United States Bankruptcy Court for the District of Puerto Rico by 4:00 p.m. (Atlantic Standard Time) on December 5, 2017.  If no objection or motion for protective order is timely filed, the court may grant the motion for examination without further notice or a hearing.

### NO PRIOR REQUEST FOR RELIEF

No previous request for the relief sought herein has been made by Ambac to this or any other Court.

**WHEREFORE,** Ambac respectfully requests authority to direct the production of documents and examination of witnesses pursuant to Rule 2004 as set forth herein and consistent with the Proposed Order, and that Ambac be granted such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 28th day of November, 2017.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

- 12 -

Dated:  November 28, 2017
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
       scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile:  (212) 822-5770
Email: ddunne@milbank.com
      aleblanc@milbank.com
      amiller@milbank.com
      gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

**<u>Exhibit A</u>**

**Proposed Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[2] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

## ORDER GRANTING AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004

Upon the motion ("the <u>Motion</u>")[3] of Ambac Assurance Corporation ("<u>Ambac</u>"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of an Order authorizing Ambac to take Rule 2004 discovery of (i) the Financial Oversight and

---

[2] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Management Board for Puerto Rico (the "Oversight Board"), as representative of the
Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing
Corporation ("COFINA," and together with the Commonwealth, the "Debtors") pursuant to
section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act
("PROMESA"); (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF");
(iii) the Commonwealth; and (iv) COFINA, as well as the examination of and production of
documents from entities determined by Ambac to have information in connection with Ambac's
investigation, as more fully set forth in the Motion; and the Court having jurisdiction to consider
the Motion and the relief requested therein in accordance with 28 U.S.C. § 1331 and PROMESA
§ 306(a); and venue being proper before this Court pursuant to 28 U.S.C. § 1391(b) and
PROMESA § 307(a); and notice of the Motion having been given as provided in the Motion, and
such notice having been adequate and appropriate under the circumstances; and it appearing that
no other or further notice of the Motion need be provided; and the Court having held a hearing to
consider the relief requested in the Motion; and the Court having found and determined that the
relief sought in the Motion and granted herein is in the best interests of the Debtor, its respective
creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion
establish just cause for the relief granted herein; and after due deliberation and sufficient cause
appearing therefor,

      **IT IS HEREBY ORDERED THAT**:

1.     The Motion is granted as provided herein.

2.     The Oversight Board, AAFAF, the Commonwealth, and COFINA shall comply
with the document requests attached hereto as **Schedule A** by no later than ten (10) days after entry
of this Order.

3.      The Oversight Board, AAFAF, the Commonwealth, and COFINA shall designate an individual or individuals with knowledge of the matters described in **Schedule A** hereto (the "Designated Individual(s)").   The Designated Individual(s) shall produce themselves for examination by counsel to Ambac under oath and in accordance with Bankruptcy Rule 2004 on such date and time and at such location as may be designated in writing by counsel to Ambac.

4.      Ambac is authorized, pursuant to Bankruptcy Rule 2004, to issue such subpoenas as may be necessary to compel the production of documents and/or testimony of a third party witness to accomplish the discovery authorized by this Order.

5.      Third party witnesses shall have fourteen (14) days from the service of a subpoena to either (i) produce to Ambac all responsive non-privileged documents requested in Ambac's subpoena, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

6.      Third party witnesses are directed to either (i) submit to oral examination upon reasonable notice and, absent other agreement with Ambac, in no event more than fourteen (14) days from the date of the service of a deposition subpoena upon such witness, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

7.      Ambac shall serve each subpoena and a copy of this Order on the target of the subpoena.

8.      Nothing herein shall limit Ambac's right to request additional discovery, including any additional documents or depositions, under Bankruptcy Rule 2004 and applicable law, based on any information that may be revealed as a result of the information provided pursuant to this Order or otherwise.

9.      This Court shall retain jurisdiction to resolve any dispute arising or related to this

Order and to interpret, implement and enforce the provisions of this Order.

10.     This Order is without prejudice to Ambac's right to file further motions seeking

additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

SO ORDERED.


Dated: _____, 2017
            San Juan, Puerto Rico


                                    _____
                                    HONORABLE LAURA TAYLOR SWAIN
                                    UNITED STATES DISTRICT JUDGE

# SCHEDULE A

**DEFINITIONS**

1.        "<u>AAFAF</u>" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and each of its present or former officers, directors, agents, representatives, employees, and members.

2.        "<u>COFINA</u>" means the Puerto Rico Sales Tax Financing Corporation and each of its present or former officers, directors, agents, representatives, employees, and members.

3.        "<u>Commonwealth</u>" means the Commonwealth of Puerto Rico, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

4.        "<u>Document</u>" or "<u>documents</u>" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

5.        "<u>Including</u>" means including but not limited to.

6.        "<u>Oversight Board</u>" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

7.        "<u>PROMESA</u>" means the Puerto Rico Oversight, Management, and Economic Stability Act as codified at 48 U.S.C. §§ 2101 *et seq.*

8.     "Sales and Use Tax" or "SUT" means the sales-and-use tax, including the Dedicated Sales Tax belonging to COFINA and securing COFINA's bonds pursuant to 13 L.P.R.A. § 11a *et seq*. ("COFINA SUT"), the proceeds flowing to the General Fund ("General Fund SUT") , and the proceeds flowing to the Municipal Assistance Fund ("FAM SUT").

9.     "SME Executive Order" means Executive Order 2017-068," the executive order signed by Governor Ricardo Rosselló on November 8, 2017, which exempted an estimated 60,000 small and midsize businesses from collecting and remitting the SUT from November 20 through December 31, 2017.

10.     "You" or "Your" refers to (1) the Oversight Board; and (2) the Commonwealth, and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

**INSTRUCTIONS**

1.     Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of Your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.  This includes, but is not limited to, documents physically held by Your agents, representatives, employees, attorneys, financial advisors, or other advisors.  It also

includes any communications and documents contained in any computer, mobile device, server, mainframe, or other storage device (including (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within Your possession, custody, or control.   For the avoidance of doubt, this also includes any communications and documents contained on any personal computer, mobile device, server, mainframe, or other storage device within the possession of Your agents, representatives, employees, attorneys, financial advisors, or other advisors, regardless of whether the device is issued or owned by You.

2.   As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, documents and communications contained in Your electronic e-mail, cloud-based, and mobile device directories, including, but not limited to: (a) "deleted" documents and communications that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3.   As the Requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, You are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4.   With respect to the documents produced, You shall produce them as they are kept in the usual course of business as defined in Rule 34 of the Federal Rules of Civil Procedure.

5.      With respect to electronically stored information, You shall produce them in the format set forth in the annexed Exhibit A.

6.      Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

7.      File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

8.      Documents attached to each other shall not be separated.

9.      A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

10.      Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto. If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

11.      In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

12.      The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Request.

13.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

14.     Any ambiguity in a Request shall be construed to bring within the scope of the Request all responses that otherwise could be construed to be outside of its scope.

15.     If You withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating: (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

16.     If You object to a Request, You must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If You object to only a portion of a Request, You must clearly indicate to which part of the Request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the Request were propounded as a separate Request.

17.     If Your response to a particular Request is that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information, item, or category of information must be identified.

18.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s)

- 5 -

should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

19.     Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

20.     Unless otherwise specified, the time period covered by these Requests is from September 1, 2017 to the present, and shall encompass all documents and information relating in whole or in part to such period.

21.     The Requests shall be deemed to be continuing so as to require supplemental productions as You obtain additional documents between the time of the initial production hereunder and the time of trial in this action.

## **RELEVANT TIME PERIOD**

Unless otherwise specified, the relevant time period for these Requests is September 1, 2017 to the present.

## **DOCUMENT REQUESTS**

### **REQUEST NO. 1**

All documents, communications, studies, and/or analyses concerning the impact of Hurricane Maria on SUT generation, including, but not limited to, (1) the impact of depressed consumption and/or business activity; and (2) the identity of retailers that have not transferred SUT collections (in whole or in part) since Hurricane Maria made landfall.

### **REQUEST NO. 2**

All documents, communications, studies, and/or analyses concerning any logistical impediments to collecting the SUT following Hurricane Maria, including, but not limited to, problems with the SUT Payment System, guidance provided by the Commonwealth to merchants regarding problems

with the transmission of the SUT, and any proposal that contemplated that merchants store the SUT until it could be transferred.

## REQUEST NO. 3

All documents, communications, studies, and/or analyses concerning the impact or projected impact on SUT collections of the SME Executive Order, including, but not limited to, analyses that distinguish between the COFINA SUT, General Fund SUT, and FAM SUT.

## REQUEST NO. 4

All documents, communications, studies, and/or analyses concerning plans or proposals to extend the exemption period for collection of the SUT.

## REQUEST NO. 5

All documents, communications, studies, and/or analyses concerning any plans to temporarily suspend the SUT (in whole or in part), including, but not limited to, analyses that distinguish between the COFINA SUT, General Fund SUT, and FAM SUT.

## REQUEST NO. 6

All documents, communications, studies, and/or analyses concerning any permanent suspension of the SUT (in whole or in part), including, but not limited to, the replacement of the SUT with any tax or revenue stream, any analyses concerning the collectability of such tax or revenue stream.

## REQUEST NO. 7

Documents sufficient to show, for Fiscal Year 2017, the total amount of SUT collected; the twenty-five merchants that have contributed the most SUT; and the total dollar amounts of SUT contributed by those twenty-five merchants.