**Objection Deadline:** December 5, 2017, 4:00 p.m. (AST)
**Hearing Date:** December 20, 2017, 9:30 a.m. (AST)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

## THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY OBJECTION TO AMBAC ASSURANCE CORPORATION BANKRUPTCY RULE 2004 MOTION

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf

of itself and as the entity authorized to act on behalf of the Debtor entities under the *Enabling Act*

*of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017 (the "AAFAF Enabling

Act"), respectfully submits this objection to the *Motion for Entry of Order Authorizing Discovery*

*under Bankruptcy Rule 2004* [ECF No. 1873] (the "Motion"), filed by Ambac Assurance

Corporation ("Ambac") on November 28, 2017.[2]

## PRELIMINARY STATEMENT

1.      Notwithstanding the procedural and substantive infirmities underlying the Ambac

discovery requests, AAFAF has been making public targeted data and information regarding

SUT[3] generation and collection post-Hurricane María.[4]  However, nothing in the Motion justifies

Ambac's requests for information regarding the Government's deliberations over tax policy and

legislation, which comprise the bulk of Ambac's Motion.  In fact, Title III of PROMESA does

not permit Ambac as a claimholder to inquire into or seek oversight over those governmental

functions.  Accordingly, the Motion should be denied to the extent it seeks such documents and

deposition testimony.

2.      The Motion's overbroad and unduly burdensome requests for relief fall into five

categories:[5]

- Request Nos. 1, 2, and 3 demand production of every document and
  communication concerning post-Hurricane Maria SUT generation and collection;

---

[2] The COFINA Senior Bondholders' Coalition filed a *Statement in Support of, and Joinder to, Ambac Assurance
Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004* [ECF No. 1905] on
December 4, 2017, but the Coalition did not make any additional requests.

[3] Capitalized terms used but not defined herein shall have the meaning set forth in the Motion.

[4] *See* row 3 of page 7 of Exhibit 1, and row 3 on page 6 of each of Exhibits 2-5, attached hereto.  The Exhibits are
publicly available under the heading "Recent Documents" on the home page of AAFAF's website, available at
http://www.aafaf.pr.gov/ (last visited on December 5, 2017).  The SUT information in the Exhibits includes a
comparison between actual and forecasted SUT collections.

[5] Although Ambac directs its discovery requests at the Oversight Board, AAFAF, the Commonwealth, and
COFINA, AAFAF objects to the Motion only on behalf of itself, as well as the Commonwealth and COFINA,
pursuant to its authority under the AAFAF Enabling Act.

Request No. 1 additionally seeks the identity of every retailer in Puerto Rico "that [has] not transferred SUT collections (in whole or in part) since Hurricane Maria made landfall."  (Motion, Schedule A at 6-7.)

- Request Nos. 4 and 5 call for production of every document and communication concerning any plans or proposals to extend the exemption period for SUT collection, or to temporarily suspend the SUT.  And although it does not say so expressly, Request No. 6 also seeks documents concerning plans or proposals, demanding production of every document and communication regarding a potential permanent suspension of the SUT—a step that the Government has not taken.  (Motion, Schedule A at 7.)

- Request No. 7 demands production of documents showing the total amount of SUT collected in Fiscal Year 2017, and identifying the twenty-five merchants that have contributed the most SUT along with the total dollar amount each contributed.  (Motion, Schedule A at 7.)

- Ambac also requests the depositions of the Secretary of the Treasury as well as representatives of the Oversight Board, the Commonwealth, AAFAF, and COFINA, on the above-listed topics.  (Motion ¶ 18, Relief Requested.)

- Finally, Ambac requests authority to issue subpoenas for document production and depositions to "other witnesses who may have knowledge" responsive to the Requests.  (Motion ¶ 18, Relief Requested.)

Ambac's ostensible purpose for seeking essentially every government document and communication concerning the SUT since Hurricane Maria made landfall on September 20 is "to better understand the Commonwealth's financial condition and any restructuring proposals made by the Commonwealth *in the future*."  (Motion ¶ 37 (emphasis added).)

3.      While the Government already is, and is prepared to continue, sharing information regarding current and projected SUT collections, Ambac has no right to a wide-ranging inquiry into either the granular details of all operations related to SUT collections or the Government's ongoing considerations and deliberations related to tax policy.  Ambac's requests are inconsistent with PROMESA and impose unreasonable and inappropriate financial and logistical burdens on the Commonwealth for no legitimate purpose.

4.       First, Request Nos. 1-6 impermissibly seek discovery into core governmental functions, including documents and depositions assessing and addressing SUT generation and collection after Hurricane Maria, and the development of plans and proposals regarding future SUT generation and collection.  Discovery by claimholders into governmental decisions regarding tax policy cannot be squared with PROMESA Sections 303 and 305, which provide that creditors cannot use the Title III process to interfere with governmental functions.

5.       Second and relatedly, the demands in Request Nos. 1-6 for all documents and communications concerning SUT generation and collection since Hurricane Maria, along with any plans and proposals regarding future SUT generation and collection, largely aim at obtaining documents protected from production by the deliberative process privilege, including virtually all intragovernmental communication regarding the manner in which the Government could or could not collect SUT in light of Hurricane Maria's devastation.  As a consequence, the scope of Ambac's overly broad requests are directly aimed at obtaining the Government's deliberations on the SUT issue.  Namely, Ambac has demanded *all* communications regarding SUT generation and collection, including three requests for inherently deliberative documents such as any "plans or proposals."  This is improper.

6.       Third, responding to the overly broad document and deposition requests would place an undue burden on the Government, which is already dealing with the many informational, fiscal, and budgetary demands it must meet both with respect to the revisions of fiscal plans and other legitimate pending informational requests, and particularly because AAFAF has been making SUT collection data after Hurricane Maria publicly available on its website on an ongoing basis.  Ambac fails to provide an adequate justification for its requests and offers only boilerplate assertions.

3

7.     Finally the Motion is improper because Ambac acknowledges that it did not meet and confer with AAFAF before filing the Motion.  (*See* Motion ¶ 41.)  In fact, Ambac did not advise AAFAF and the Oversight Board that it would be seeking the discovery covered by this motion until just before 11:00 am (EST) on November 28, 2017, roughly ***twelve hours*** before it filed the motion.  According to Ambac's motion, it simply presumed that a meet-and-confer call would not be "fruitful."  (*See* Motion ¶ 41.)  This is untrue, as evidenced by AAFAF's willingness to facilitate production of useful data and information regarding Request Nos. 1, 2, 3, and 7 that would provide Ambac with an understanding of current and future projected SUTs and Hurricane María's actual and anticipated effect on SUT collections.

## OBJECTION

## I.    AMBAC'S MOTION SHOULD BE DENIED BECAUSE THE DISCOVERY IT SEEKS WOULD VIOLATE PROMESA SECTIONS 303 AND 305.

8.     Ambac's 2004 discovery request seeks to interfere with the Commonwealth's political and governmental functions as recognized under PROMESA Sections 303 and 305. Namely, PROMESA Section 303 expressly reserves the power to control the territory and its instrumentalities, including "political or governmental powers," to the Commonwealth, subject to the Oversight Board's powers.  48 U.S.C. § 2163.  PROMESA Section 305 provides that "notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . any of the political or governmental powers of the debtor."[6]  48 U.S.C. § 2165.  Ambac's discovery requests are a thinly-veiled attempt to conduct a wide-ranging investigation into—and to second-guess—the Government's post-hurricane deliberations and decisions regarding the

---

[6] Numerous courts have recognized the broad sweep of 11 U.S.C. § 904, which is Chapter 9's analog to PROMESA section 305. *See, e.g., In re City of Stockton, Cal.*, 478 B.R. 8 (Bankr. E.D. Cal. 2012); *In re City of Detroit, Mich.*, 841 F.3d 684, 696 (6th Cir. 2016).

4

SUT.  The broad-natured discovery requests, as described above, represent a clear effort by a claimholder to interfere with the Government's exercise of its protected "political or governmental powers" under PROMESA.

9.    Request Nos. 1-3 seek documents and depositions concerning the "communications, studies, and/or analyses" regarding Hurricane Maria's impact on the generation and collection of the SUTs that ultimately led to the Governor issuing the SME Executive Order.[7]  Requests Nos. 4-6 are forward-looking, seeking documents and depositions concerning plans or proposals regarding future SUT collections.[8]  Assessing and addressing Hurricane Maria's impact on Puerto Rico's economy generally and, in particular, the generation and collection of the SUT, is indisputably a core governmental function—as is considering plans and proposals for dealing with future SUT collections.  PROMESA Section 303 makes clear that creditors have no role to play in investigating this exercise of the Government's "political or governmental powers."  Ambac's demand for virtually every post-hurricane SUT-related document is an impermissible attempt to gain access to deliberations plainly within the Government's exclusive province.

## II.    AMBAC CANNOT ESTABLISH A BASIS FOR THE SCOPE AND EXTENT OF ITS RULE 2004 DISCOVERY REQUESTS.

10.    The decision whether to permit a creditor to seek discovery from a debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure rests within the Court's sound discretion.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. 2017).

---

[7] The SME Executive Order is Executive Order 2017-068, dated November 8, 2017.
[8] Request No. 7 seeks a single data point (SUT collected in Fiscal Year 2017) but, with no justification, inexplicably seeks confidential information concerning specific taxpayers.

11.     It is well established that a creditor seeking to conduct Rule 2004 discovery "has the burden to show good cause for the examination it seeks." *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 14-01840, 2014 WL 5486279, at \*2 (Bankr. S.D.N.Y. Oct. 30, 2014). The "level of good cause required . . . will vary depending on the potential intrusiveness involved." *In re Countrywide Home Loans, Inc*., 384 B.R. 373, 393 (W.D. Pa. 2008). The Rule 2004 examination "should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor." *In re Texaco, Inc*., 79 B.R. 551, 556 (Bankr. S.D.N.Y.1987). At a minimum, the discovery requested must have "a reasonable nexus to the debtor and the administration of the debtor's case." *In re Hilsen*, 2008 WL 2945996, at \*1 (Bankr. S.D.N.Y. July 25, 2008). A movant's burden of demonstrating good cause for Rule 2004 discovery is evaluated on a sliding scale that takes into account the costs and disruption that would be borne by the examined parties. *In re Countrywide Home Loans, Inc*., 384 B.R. at 393. Courts have been reluctant to empower parties to conduct "discovery which is redundant, onerous, unnecessarily costly or unreasonably intrusive[.]" *In re Buick*, 174 B.R. 299, 305-06 (Bankr. D. Colo. 1994).

12.     Ambac cannot establish that it is entitled to the Rule 2004 discovery it seeks because (i) virtually all aspects of its requests are barred by the deliberative process privilege, and (ii) the requests would impose significant burdens on the Government that far outweigh Ambac's current minimal need, if any, for this discovery.

**A.     The Deliberative Process Privilege Bars the Production of Certain Documents Because the Chilling Effect of Disclosure Outweighs Ambac's Interest in Discovery.**

13.     The deliberative process privilege "is designed to safeguard and promote agency decision making" by assuring, among other things, "'that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations.'"

6

*Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992) (quoting

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  The privilege

applies to communications that are "(1) predecisional, that is, 'antecedent to the adoption of

agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are

formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995)

(quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)); *see also*

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The

deliberative process privilege rests on the obvious realization that officials will not communicate

candidly among themselves if each remark is a potential item of discovery and front page

news").  The privilege specifically protects "against premature disclosure of ***proposed***

government policies."  *New Hampshire Right to Life v. U.S. Dep't of Health and Human*

*Services*, 778 F.3d 43, 52 (1st Cir. 2015) (emphasis added).[9]

14.     It is difficult to identify any aspect of Ambac's requested discovery, other than

Request No. 7, that does not seek to invade the deliberative process privilege.  Request Nos. 1-6

seek broad categories of documents, including "[a]ll documents, communications, studies, and/or

analyses," reflecting the Government's internal discussions and deliberations—both past and

present—about how to meet the challenges of collecting the SUT in the midst of Puerto Rico's

devastation.  Deliberations regarding a continuous crisis, including plans and proposals, fall well

within the privilege's protective sphere.  *See City of Virginia Beach, Va. v. U.S. Dep't of*

*Commerce*, 995 F.2d 1247, 1255 (4th Cir. 1993) ("the government need not anchor documents to

a single, discrete decision amidst ongoing deliberative processes"); *Dep't of Interior*, 532 U.S. at

---

[9] The deliberative process privilege is the federal counterpart of Puerto Rico's official information privilege. *See W Holding Co. v. Chartis Ins. Co. of P.R.*, 42 F. Supp. 3d 319, 324 (D.P.R. 2014) (characterizing Puerto Rico's official information privilege and federal deliberative process privilege as "essentially co-extensive").

8 (deliberative process "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,"); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011) (post-decisional "documents properly fall under the deliberative process privilege when they recount or reflect pre-decisional deliberations" and when they are "generated as part of a continuous process of agency decision-making").

15.     Ambac has not identified any legitimate purpose that would be served by allowing it to intrude into the Government's *deliberations* regarding SUT generation and collection, as distinct from *data* about SUT generation and collection, which will be produced.  Ambac's desire to learn facts about SUT collection so that it can "better understand the Commonwealth's financial condition and any restructuring proposals made by the Commonwealth *in the future,*" (Motion at ¶ 37 (emphasis added)) can be satisfied with production of such data.  But Ambac's demand to see *all* of the post-hurricane "documents, communications, studies, and/or analyses" concerning SUT generation and collection shows how unreasonable its requests are.  Indeed, Request No. 7 would be more than sufficient for the purpose of assessing the Commonwealth's SUT-related financial condition.

16.     As for future restructuring proposals, any such proposals would be in their infancy, and while AAFAF does not concede that the existence of an operative restructuring proposal would justify the discovery Ambac seeks, there is no basis for casting aside the deliberative process privilege's protections to serve some ill-defined future need for that information.  Discovery into Government discussions regarding the SUT might give Ambac insight into why the Government did what it did, or into what the Government might be planning or internally proposing to do—*i.e.*, what it is deliberating about.  But courts have been clear that

disclosure of such information would have a chilling effect on the Government's policy-making process, and therefore the value of protecting such information outweighs the movant's interest in accessing it. Ambac is not entitled to such information, nor does it legitimately need it.

**B.    The Requests Are Overly Broad and Unduly Burdensome and Are Not Counterbalanced by Ambac's Interest in the Documents and Information It Seeks.**

17.    Ambac cannot show good cause for the Rule 2004 discovery it seeks because its Requests are excessively broad and burdensome, and Ambac cannot establish that this burden is outweighed by "the relevance of and necessity of the information sought." *In re China*, 2017 WL 3084397, at *5.

18.    There can be no legitimate dispute that the discovery Ambac seeks would impose an extensive burden on the Government. Requests Nos. 1-6 seek production of *every* document and communication in the Government's possession concerning post-hurricane SUT generation and collection. And Ambac further demands depositions on the subjects of Requests Nos. 1-6 from Puerto Rico's Treasury Secretary and one or more individuals identified by the Oversight Board, the Commonwealth, AAFAF and COFINA. Ambac's document and deposition requests would require the Government to expend vast amounts of its extremely limited time and resources, diverting those resources from the efforts to recover from the catastrophe of Hurricane Maria. The search, collection, review, and production of *all* documents and communications concerning various aspects of SUT collection, which would include virtually every communication that the people who deal with SUT collection have had since Hurricane Maria— likely thousands of e-mails and phone text messages—would strain the capacity of the Government's officials as well as its coffers. Depositions would likewise impose an extreme burden on the Government in terms of expense and diverted resources—taking key officials away from their hurricane recovery work. Moreover, the burden of responding to Ambac's

discovery requests would be especially great because, as demonstrated above, virtually all of the information Ambac seeks is protected by the deliberative process privilege and, thus, would never be produced to Ambac.  Requiring the Government to search for responsive documents and prepare deposition witnesses under the present circumstances would be short-sighted and wasteful.[10]

19.     The burden Ambac's proposed discovery would impose on the Government clearly outweighs Ambac's purported current need for the information it seeks.  In the place of a particularized showing of need, Ambac offers mere platitudes.  Its generalized assertion that "it is critical that creditors have fulsome information concerning the financial condition of the Debtors" (*see* Motion ¶ 29), fails to explain why Ambac has a current need for the extensive document and deposition discovery concerning SUT generation and collection it seeks.  Ambac's discovery requests are particularly perplexing because AAFAF makes SUT collection data publicly available on its website on an ongoing basis, including post-Hurricane Maria. Further, as discussed above, Ambac's contention that it seeks discovery concerning the SUT "in order to better understand the Commonwealth's financial condition and any restructuring proposals made by the Commonwealth in the future" (Motion ¶ 37), identifies a purported need that is, at best, premature and, in reality, reflects nothing more than an intrusive curiosity—a mere pretext for fishing for information about core government policy functions that it has no right to.

20.     Ambac lacks good cause for the Rule 2004 discovery it requests because, in balancing "the competing interests of the parties," the undeniably extreme burden on the

---

[10] Although Request No. 7 is not particularly burdensome in and of itself, it is nonetheless improper to the extent it seeks personally identifiable information concerning particular taxpayers, which is confidential under Puerto Rico Law.  *See* L.P.R.A. §§ 30021(b), 33213(a)(2).

Government that Ambac's discovery would cause far outweighs Ambac's boilerplate assertions of need.  The Motion should therefore be denied.

## RESERVATION OF RIGHTS

21.    AAFAF, the Commonwealth, and COFINA reserve their rights to assert other general and specific objections to Ambac's discovery requests if Ambac's Rule 2004 Motion is granted.[11]

## CONCLUSION

22.    Ambac's Motion for permission to take Rule 2004 discovery runs counter to applicable law and would impose unreasonable and inappropriate financial and logistical burdens on Puerto Rico for no legitimate purpose.  Accordingly, AAFAF respectfully requests that the Court deny the Motion except to the extent it seeks *data* regarding the amount of SUT collections after Hurricane Maria and projections as to future SUT collections, as can be identified by AAFAF after a reasonable search of appropriate custodians.

---

[11] Ambac's Proposed Order appears to contemplate that the Court will not only grant Ambac's request to take discovery, but summarily approve the requests themselves, regardless of any objections the discovery targets may have.  *See* Motion, Exhibit A: Proposed Order at 2 ("It is hereby ordered that . . . The Oversight Board, AAFAF, the Commonwealth, and COFINA shall comply with the document requests attached hereto as Schedule A by no later than ten (10) days after entry of this Order").  Therefore, should the Court grant the Motion, AAFAF respectfully requests that the Proposed Order be revised to make clear that the respective rights and objections of all recipients of Ambac's Requests, including the Oversight Board, AAFAF, the Commonwealth, and COFINA, are preserved.

Dated: December 5, 2017
          San Juan, Puerto Rico

Respectfully submitted,                              Respectfully submitted,

*/s/John Rapisardi*                                  */s/ Andrés W. López*
John J. Rapisardi                                    Andrés W. López
Suzzanne Uhland                                      USDC No. 215311
Daniel L. Cantor
Peter Friedman
(Admitted *Pro Hac Vice*)                            **THE LAW OFFICES OF**
**O'MELVENY & MYERS LLP**                            **ANDRÉS W. LÓPEZ, P.S.C.**
7 Times Square                                       902 Fernández Juncos Ave.
New York, NY 10036                                   San Juan, PR 00907
Tel:  (212) 326-2000                                 Tel:  (787) 294-9508
Fax: (212) 326-2061                                  Fax:  (787) 294-9519

*Attorneys for the Puerto Rico Fiscal*               *Co-Attorney for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*            *Agency and Financial Advisory Authority*

12