IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br>Title III<br>No. 17 BK 3283-LTS |
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")<br><br>Debtor | PROMESA<br>Title III<br>No. 17 BK 3284<br><br>(Joint Administration Requested) |

**MOTION FOR DECLARATION THAT STAY IS NOT APPLICABLE OR IN THE ALTERNATIVE, LIFTING OF THE STAY**

**TO THE HONORABLE COURT:**

COMES NOW the Corporación de Servicios Integrales de Salud del Area de Barranquitas, Comerío, Corozal, Naranjito y Orocovis (Coporación de Servicios Integrales) and very respectfully states, alleges and prays:

## I. INTRODUCTION

1. The Corporación de Servicios Integrales is a corporation incorporated in PR with its principal place of business in Naranjito, receives grant funds under Section 330 of the Public Health Service ("PHS") Act, 42 U.S.C. § 254b ("Section 330"), in order to provide care to medically underserved populations in their communities. 42 U.S.C. §§ 254b(e), (k). Hence, it provides essential medical services to the most needy in PR. Federal law requires the Commonwealth to make special payments to the Corporación de Servicios Integrales for certain Medicaid services. It is considered a "Federally-qualified health center" (commonly known as FQHC).

2. In 1997, Congress mandated a two-part payment system for FQHCs in managed care: First, a state's contract with a managed care contractor (or managed care organization, "MCO") must require the MCO to pay an FQHC "not less" than the MCO would pay any other provider for similar services. *See* H. Rep. 105-217, at 869 (2007) (MCO required to "pay the FQHC . . . at least as much as it would pay any other provider for similar services"). Second, states must make supplemental payments (generally referred to as "wraparound payments" and in this Report "WAPs") to each FQHC equal to the amount by which the FQHC's per visit cost-based or PPS rate exceeds the payment the FQHC received from the MCO. States must make these WAPs "in no case less frequently than every 4 months." 42 U.S.C. § 1396a(bb)(5).

3. Every United States Court of Appeals that has considered the issue, including the First Circuit, has concluded that FQHCs have an enforceable right to obtain such payments by suing states under 42 U.S.C. § 1983 for prospective injunctive relief. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 74–75 (1st Cir. 2005); *California Ass'n of Rural*

2

*Health Clinics v. Douglas*, 738 F.3d 1007, 1011–13 (9th Cir. 2013); *New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Human Servs.*, 722 F.3d 527, 539 (3d Cir. 2013); *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 209–12 (4th Cir. 2007); *Cmty. Health Ctr. v. Wilson–Coker*, 311 F.3d 132, 136, 140 (2d Cir. 2002). The Commonwealth since 1989 has largely ignored FQHC payment requirements.

4. Several FQHC, including movant filed for an injunction in federal court against the Commonwealth for future payments and won and filed in Commonwealth Court to recover retroactive payments barred buy the Eleventh Amendment and also won. Corporación de Servicios Integrales has judgments in Commonwealth Court totaling in excess of $51,000,000. To date, the Commonwealth has used dilatory tactics not to pay said judgments.

5. Moreover, the Commonwealth claims that Law 66-2014, specifically sections 28 and 29, allow it to extend payment of any judgment in excess of $20,000,000 to no more than $3,000,000 per year. Hence, payment of said judgments would take over 17 years. The law does not allow for payment of interest on judgments unless the Government decides that in a particular year it will not have enough money to pay the judgments. These provisions violate several sections of the U.S. Constitution, PROMESA and are preempted by the Bankruptcy Code.

**II. THE AUTOMATIC STAY DOES NOT APPLY TO MOVANTS' FUTURE CHALLENGE**

6. Section 7 of PROMESA states:

Except as otherwise provided in this Act, nothing in this Act shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory.

3

7. Since the services provided by movant are for health, the automatic stay of Title III is inapplicable to the instant case. It would be inconsistent with section 7 of PROMESA to argue that the territorial government must comply with federal law as it applies to health without providing a plaintiff with the right to file a case to force the Commonwealth to comply with said law. Therefore, the automatic stay does not apply to a case where the enforcement of payment of judgments for health services does not apply. Movant, in an abundant of caution, however, will still argue that the stay should be lifted if applicable.

**III. RELIEF REQUESTED**

8. Movant seeks a modification of the stay imposed by Section 362 of the Bankruptcy Code so that it may bring forth an action to declare sections 28 and 29 of Law 66-2014 unconstitutional.

**IV. BASES FOR MODIFICATION OF STAY**

9. Pursuant to 11 U.S.C. § 362(d), a bankruptcy court may modify the automatic stay "for cause" to permit the liquidation of a claim in a different court in a pending action. See, *In re Murray Industries, Inc.*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990). Although a creditor must make a prima facie case to justify relief from the stay, the Debtor has the ultimate burden of persuasion that "cause" for relief does not exist under § 362 (d). See, *In re Anton*, 145 B.R. 767, 769 (Bankr. E.D.N.Y. 1992).

10. In *Peerles Insurance Company v. Peerless Insurance Comapany*, 208 B.R. 313, 315 (D.R.I. 1997), discussed the term cause:

> Section 362(d)(1) permits a "party in interest" to obtain relief from the Bankruptcy Code's automatic stay provision "for cause." 11 U.S.C. § 362(d)(1). The statute does not define "cause"; but, generally speaking, "cause" is said to exist when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted. Determining whether "cause" exists requires a fact intensive

inquiry that must be made on a case by case basis

Courts have identified a number of factors to be considered in making that determination. *See In re Unanue-Casal,* 159 B.R. 90, 95-96 (D.P.R.1993), *aff'd,* 23 F.3d 395 (1st Cir.1994) (listing twelve factors). Four factors that are especially applicable in this case are:
1. the harm to the party seeking relief from the stay (i.e., Peerless) if the stay is not lifted;
2. the harm to the debtor (i.e., Annie's) if the stay is lifted;
3. the interests of creditors; and
4. the effect on the fair and efficient administration of justice.

11. In addition, other courts have considered the following factors:

a. Whether relief would result in a partial or complete resolution of the issue;

b. The lack of any connection with or interference with the bankruptcy case;

c. Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

d. Whether litigation in another forum would prejudice the interests of other creditors;

e. Whether the judgment claim arising from the other litigation is subject to equitable subordination;

f. The interests of judicial economy and the expeditious and economic resolution of litigation;

See e.g., *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) and *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

11. As discussed, a bankruptcy court, may consider many factors when deciding whether to allow existing litigation related to a debtor to continue outside the bankruptcy court. However, bankruptcy courts consistently modify the stay to allow pending litigation to continue when, as in this case, the requested relief from the stay will promote judicial economy and create saving for the litigants without undue prejudice to the estate. See, e.g. *In re Tricare*

5

*Rehabilitation Systems, Inc.*, 181 BR 569 (Bankr. N.D. Ala. 1994); *In re Robbins*, 964 F.2d 342 (4th Cir. 1992).

12. As stated before, pursuant to Law 66-2014, the Commonwealth may extend indefinitely payment of judgments by determining it does not have enough money to pay on a given year. Moreover, even if payments are regularly made it will take 17 years to satisfy said judgments. In addition, although movant would be harmed by not receiving payment for services is has rendered, the Commonwealth would not be harmed since it has the legal obligation under federal law to pay said wraparound payments. The determination of the constitutionality of Law 66-2014 would result in definite resolution of an important issue that will impact any future plan of adjustment filed by the Commonwealth and hence the administration of this case[1]. Movant contends that the interests of judicial economy and the expeditious and economic resolution of litigation favor the lifting of the stay since this issue is one that should be decided promptly to simplify the future plan of adjustment. Hence, the balance of equities and the Sonnax factors weight in favor of lifting the stay as herein requested.

13. In sum, the Court should determine that the automatic stay does not apply to the constitutional challenge movant seeks to file. If the Court believes the automatic stay applies to the constitutional challenge it will file, then it should modify the automatic stay and allow the filing of said challenge, as there is "cause" pursuant to Section 362(d)(1) of the Bankruptcy Code. Hence, movant request the modification of the automatic stay.

---

[1] It is movant's contention that the debts it is owed are not dischargeable debts pursuant to Title III and the Bankruptcy Code. Already an adversary proceeding has been filed by another party advancing said theory, Atlantic Medical Center, Inc. v. Commonwealth, 17-278. Movant will file a similar adversary proceeding in the next few days.

6

14. Corporación de Servicios Integrales files this Motion for Lifting of the Stay pursuant to Paragraph III.Q of the operative Case Management Order. Movant certifies that pursuant to Paragraph III.Q, it conferred and met with debtor via telephone during the required Lift Stay Notice period prior to filing the instant motion but could not come to any agreements.

WHEREFORE: the Corporación de Servicios Integrales requests that should determine that the automatic stay does not apply to the constitutional challenge movant seeks to file. If the Court believes the automatic stay applies to the constitutional challenge it will file, then it should modify the automatic stay and allow the filing of said challenge, as there is "cause" pursuant to Section 362(d)(1) of the Bankruptcy Code.

Respectfully submitted on this 9th day of December, 2017.

CERTIFY: That on this same day, the ECF system sent a copy of this motion to all parties in this litigation.

/s John E. Mudd
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787) 413-1673
Fax. (787) 753-2202
jemudd@yahoo.com