# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS<br><br>Re: ECF Nos. 482 (Case No. 17-4780), 1853 (Case No. 17-3283) |
| PBJL Energy Corp.,<br><br>    Movant,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Respondent. | **Objection Relates Only to PREPA and Shall Only be Filed in Case Nos. 17 BK 4780-LTS and 17 BK 3283-LTS** |

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OPPOSITION OF PUERTO RICO
ELECTRIC POWER AUTHORITY TO PBJL ENERGY
CORP.'S MOTION REQUESTING LIFTING OF THE STAY**

To the Honorable United States District Court Judge Laura Taylor Swain:

On behalf of the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion Requesting Lifting of the Stay* [Case No. 17-4780, ECF No. 482; Case No. 17-3283, ECF No. 1853] (the "Motion") filed by PBJL Energy Corporation ("PBJL").[2] In support of the Objection, AAFAF respectfully states as follows:

**I.    PRELIMINARY STATEMENT**

PREPA faces a severe fiscal crisis with liabilities exceeding $14 billion and must be restructured to remain a viable business entity. *See Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief from Automatic Stay* [Case No. 17-4780, ECF No. 149], at 7–8. On September 30, 2016, the FOMB issued a restructuring certification for PREPA pursuant to PROMESA sections 104(j) and 206. On July 2, 2017, the FOMB, as representative of PREPA pursuant to PROMESA, filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a case under Title III thereof and triggering the automatic stay. *See* PROMESA § 301 (incorporating 11 U.S.C. §§ 362 and 922—the automatic stay provisions—into the Title III case).

---

[2] The Financial Oversight and Management Board for Puerto Rico ("FOMB"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§ 2101-2241, has authorized AAFAF to file this Objection on behalf of PREPA.

2

The passage of Hurricanes Irma and Maria has compounded the severe fiscal crisis facing PREPA. Following the devastation of Hurricane Maria, PREPA was unable to provide electric power to the vast majority of the residents of Puerto Rico, and for some time after Hurricane Maria struck, the entire PREPA electric system was inoperable. Since Hurricane Maria made landfall on Puerto Rico on September 20, 2017, PREPA has been in a critical recovery period, with its efforts focused on repairing Puerto Rico's electric grid and providing critical, reliable electric service to the Island.

On November 27, 2017, PBJL filed the Motion seeking relief from the automatic stay to proceed with the matter of *PBJL Energy v. AEE*, Civil No. KAC 2015-0465 (the "Commonwealth Action"), pending before the Court of First Instance in San Juan, Puerto Rico. PBJL seeks in the Commonwealth Action specific performance of a Power Purchase Agreement between PREPA and PBJL, and in the alternative, "contractual and extracontractual damages." (Mot. ¶ 1.) In the Motion, PBJL notes in its request for relief that "movants [*sic*] will not execute against any assets of the estate, without further order of this Court," (*id.* at 5), which presumably means PBJL ultimately intends to seek enforcement of an equitable remedy such as specific performance against PREPA.

As further explained below, the Motion should be denied because PBJL has failed to show "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). First, lifting the automatic stay would force PREPA to expend valuable resources to defend against the Commonwealth Action, thereby interfering with PREPA's Title III case. Second, PREPA's creditors would be prejudiced by lifting the automatic stay, as PREPA's time and resources will be diverted from its recovery and reorganization efforts. Third, the Commonwealth Action has not progressed to trial, and lifting the automatic stay would

3

not promote judicial efficiency. Fourth, allowing the Commonwealth Action to proceed would not resolve any bankruptcy issue. Finally, PBJL has failed to show any harm it would suffer from maintaining the automatic stay, while PREPA would be forced to divert critical resources to defend against the Commonwealth Action at this delicate time during its post-hurricane recovery.

## II. ARGUMENT

Lifting the automatic stay with respect to the Commonwealth Action will further complicate PREPA's recovery efforts at this critical moment following the passage of Hurricanes Irma and Maria, and would be contrary to the purposes and goals of Bankruptcy Code Section 362, incorporated by PROMESA pursuant to PROMESA Section 301(a), to provide the debtor temporary relief from the pressures of creditors while it conducts an orderly reorganization. Given the circumstances, PBJL has failed to show cause to lift the automatic stay.

An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). The purpose of the automatic stay is to provide the debtor "a breathing spell" from creditors and financial pressures that drove the debtor to bankruptcy. *See Unisys Corp. v. Dataware Prod., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) (stating that the automatic stay "forestalls a race of diligence by creditors for the debtor's assets"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'"); *Assoc. of St. Croix Condo Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) ("[The automatic stay] permits the debtor to attempt a repayment or reorganization plan or simply to be relieved from the financial pressures that drove him into bankruptcy.").

4

As such, a court may lift the automatic stay only upon a showing of cause. 11 U.S.C. § 362(d)(1) (incorporated into Title III case by PROMESA section 301). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). In deciding whether "cause" to lift a stay exists, courts in this district typically balance a number of factors, including:

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Unanue-Casal*, 159 B.R. at 95–96; *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016); *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016). These are commonly referred to as the "*Sonnax* factors" because they derive from the Second Circuit decision in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. PBJL bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one, *see In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

The *Sonnax* factors point squarely toward maintaining the automatic stay and against awarding the remedy PBJL seeks here. *First*, forcing PREPA to defend against the Commonwealth Action would interfere with its Title III case and the overall recovery effort by diverting PREPA's attention and resources away from critical work necessary to repair the electric grid and provide reliable electric service to the residents of the Commonwealth. Accordingly, the second *Sonnax* factor supports denial of the Motion. Litigating the Commonwealth Action necessarily requires the participation and attention of multiple PREPA employees as witnesses and corporate representatives as well as substantial monetary expenditure by PREPA. Further, if PBJL prevails in the Commonwealth Action, it appears PBJL ultimately intends to procure a court order that would presumably allow it to execute any equitable remedy such as specific performance (*see* Mot. at 5), which would further interfere with PREPA's operational and financial reorganization. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

In this regard, *In re City of Stockton* is directly on point. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, the plaintiff brought a wrongful termination suit against the City Manager and

6

Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374. Plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

Accordingly, PBJL's conclusory assertion that "resolution of the case would not interfere with the management of this Title III case" is belied by the fact that critical PREPA resources and attention would be diverted from PREPA's recovery and reorganization in its Title III case, and toward defense of the Commonwealth Action. *See In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan").

*Second*, *Sonnax* factor seven weighs in favor of denying the Motion because lifting the automatic stay would prejudice creditors. Any time consumed by the Commonwealth Action is time creditors want PREPA spending on the overall recovery and reorganization of PREPA. Any money expended by PREPA to defend against the Commonwealth Action would be diverted from PREPA's already financially-strained resources, a factor that numerous courts have recognized counsels against lifting a bankruptcy stay. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the

7

interests of other creditors of the estate"); *In re Residential Capital*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

*Third*, *Sonnax* factors ten and eleven support maintaining the automatic stay because the Commonwealth Action has not progressed to the appoint where parties are close to being prepared for trial or a final resolution. Although PBJL states that discovery has ended, the parties still have to prepare for pre-trial briefing, motions in limine, witness preparation, trial preparation, trial, post-trial preparation, and appeal. Because the Commonwealth Action has not progressed to trial, lifting the stay would not promote judicial efficiency.

*Fourth*, the first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—does not support lifting the automatic stay. Although PBJL contends that "any decision by the state court would decide the issue of whether movant's contract was valid and if there has been any breach" (Mot. ¶ 6), the first *Sonnax* factor does not focus on the issues in the separate litigation. It is not sufficient that the separate litigation would eventually resolve the issues in that litigation. If that were the test, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.

8

Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). The Commonwealth Action would not resolve any issues relevant to PREPA's Title III plan of adjustment, and PBJL's claims, if any, against PREPA can be separately resolved through the claims resolution process. Therefore, the first *Sonnax* factor does not support lifting the automatic stay.

*Fifth*, PBJL has not stated any harm it would suffer from the delay of the resolution of the Commonwealth Action. The stay simply maintains the status quo of the Commonwealth Action and does not adversely impact any of PBJL's claims or arguments. In addition, nothing in the Motion suggests the existence of any exigent circumstances such that time is of the essence to proceed with trial in the Commonwealth Action. On the other hand, PREPA will suffer harm from the distraction and encumbrance on PREPA's resources if the stay on the Commonwealth Action is lifted. Thus, the balance of equities (embodied by the twelfth *Sonnax* factor) tips in favor of denying the Motion.[3]

In the alternative, in the event the Court decides to grant the Motion, the lifting of the

---

[3] The remaining *Sonnax* factors (whether the foreign proceeding involves the debtor as a fiduciary, whether a specialized tribunal has been established to hear the cause of action at issue, whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation, whether the action essentially involves third parties rather than the debtor, whether a judgment in the foreign action is subject to equitable subordination, and whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

9

automatic stay should be limited to the resolution of the Commonwealth Action and should not extend to PBJL enforcing any monetary and/or equitable judgment against PREPA upon resolution of the underlying Commonwealth Action.

*[Remainder of page intentionally left blank]*

**III. CONCLUSION**

For the reasons set forth above, on behalf of PREPA, AAFAF respectfully requests that the Motion be denied. In the alternative, in the event the Court decides to grant the Motion, the lifting of the automatic stay should be limited to the resolution of the Commonwealth Action and should not extend to PBJL enforcing any monetary and/or equitable judgment against PREPA upon resolution of the underlying Commonwealth Action.

Dated: December 11, 2017
      San Juan, Puerto Rico

                Respectfully submitted,

                THE PUERTO RICO FISCAL AGENCY
                AND FINANCIAL ADVISORY
                AUTHORITY,

                By its attorneys,

                /s/ *Kevin D. Finger*

                Kevin D. Finger (*admitted pro hac vice*)
                David D. Cleary (*admitted pro hac vice*)
                Greenberg Traurig, LLP
                77 West Wacker Drive Suite 3100
                Chicago, IL 60601
                Phone: 312.456.8400
                Fax: 312.456.8435
                Email: fingerk@gtlaw.com
                        clearyd@gtlaw.com

                Nancy A. Mitchell (*admitted pro hac vice*)
                Nathan A. Haynes (*admitted pro hac vice*)
                Greenberg Traurig, LLP
                200 Park Avenue
                New York, NY 10166
                Phone: 212.801.9200
                Fax: 212.801.6400
                Email: mitchelln@gtlaw.com
                        haynesn@gtlaw.com

PUERTO RICO ELECTRIC POWER AUTHORITY

By its attorneys,

*/s/ Arturo Díaz Angueria*
USDC No. 117907

*/s/ Katiuska Bolaños Lugo*
USDC No. 231812
CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.
PO Box 364966
San Juan, PR 00936-4966
Phone: (787) 767-9625
Fax: (787) 764-4430
Email: adiaz@cnrd.com
kbolanos@cnrd.com