# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 1866** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 3566-LTS<br><br>**This filing relates only to Debtor ERS and shall be filed in the lead Case No. 17 BK 3283-LTS and Case No. 17 BK 3566-LTS** |

**ERS'S OPPOSITION TO THE PUERTO RICO FUNDS' MOTION CONDITIONING THE AUTOMATIC STAY ON THE CONTINUATION OF ERS BONDHOLDER PROTECTIONS OR, ALTERNATIVELY, TO ENFORCE THE COURT'S <u>JULY 17, 2017 ORDER</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable here, are (i) The Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporations ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

## INTRODUCTION

1. With summary judgment fully briefed in the Declaratory Relief Action and a decision imminent, there is no basis to award the Bondholders additional adequate protection payments. ERS fully complied with the July 14, 2017 Joint Stipulation, ECF No. 170 ("Joint Stipulation"), and pursuant to it has made over **$148 million** in interest and other adequate protection payments.[2] No additional payments are necessary to ensure the Bondholders' purported security interests are adequately protected pending the Court's decision on the summary judgment motions.

2. The Joint Stipulation payment obligations ended on October 31, 2017. Subsequently, nothing has diminished the Bondholders' alleged lien rights in the prepetition and postpetition accounts. The funds in these accounts have remained undisturbed. If the Court rules for the Bondholders in the Declaratory Relief Action, the funds will be available to the Bondholders as specified in the Joint Stipulation.[3] Without diminution in value of the segregated

---

[2] ERS has made over $55.5 million in interest payments to the Bondholders from the prepetition account ($13,876,582.48 payments each for July 1, August 1, September 1, and October 1, 2017) pursuant to Paragraph D of the Joint Stipulation and deposited over $92.5 million in the postpetition account pursuant to Schedule 2 of the Joint Stipulation ($18.5 million payments each on July 19, July 31, September 30, and October 31, 2017 in addition to the Employers' Contributions received by ERS from May 22 through May 31, 2017, which were less than $200,000). The total of over $148 million does not include the unauthorized interest payment the Bank of New York Mellon made on November 1, 2017 to the Bondholders. *See infra* ¶ 6.

[3] While the Bondholders are, at most, unsecured creditors for the reasons stated in ERS's summary judgment motion, the parties have stipulated that the Bondholders' asserted security interest will extend to these funds pending the Court's summary judgment ruling. *See, e.g.*, Order Approving Stipulation, *Altair Global Credit Opportunities Fund (A), LLC. v. Rosello-Nevares*, No. 16-2696-FAB, ECF No. 82, ¶ 3 (D.P.R. January 17, 2017) (creating prepetition segregated account that "shall (1) constitute Pledged Property under the ERS Bond Resolution, (2) be subject to the pledge and assignment of, and the grant of a security interest in and over, the Pledged Property set forth in the ERS Bond Resolutions, and (3) be subject to a security interest and lien with the same validity, perfection, priority and enforceability and subject to the same defenses, if any, as the Pledged Property currently on deposit with the Fiscal Agent."); Joint Stipulation ¶ F ("Post-Petition Segregated Account shall be and hereby is made subject to a security interest and lien in favor of the Creditors having the same prepetition and postpetition validity, attachment, perfection, priority and enforceability, if any, and subject to the same defenses, if any, as existed prior to the commencement of the ERS Title III case…."). ERS reserves all rights regarding its claims and defenses (including that the ERS bond issuance was ultra vires) in the Title III case, the adversary proceedings, and all other proceedings involving the Bondholders.

accounts pending the Court's summary judgment decision, the Bondholders' claim for additional adequate protection lacks merit both under fact and law.

3. Equally without merit is the Bondholders' contention that the Joint Stipulation provides for continued adequate protection interest payments to the Bondholders unabated beyond October 31, 2017. Under the Joint Stipulation, ERS and the Bondholders agreed that "[i]nterest on the ERS Bonds shall be paid when due **through the interest payment due on October 1, 2017.**" Joint Stipulation ¶ D (emphasis added). That should settle the matter.

4. Despite the unequivocal language in Paragraph D, the Bondholders claim Paragraph F of the Joint Stipulation requires interest payments "until the conclusion of this Court's ruling on the parties' summary judgment motions." Mot. ¶ 3. That is incorrect. Paragraph F does not require or authorize any *payments* to the Bondholders and instead states the procedure for *how* ERS must transfer funds to BNY for a specified period of time:

> ERS shall transfer to the Fiscal Agent for the payment of interest on the ERS Bonds … those amounts from the Prepetition Segregated Account necessary to pay interest that became due and payable on July 1, 2017. ***Thereafter, until the conclusion of the Briefing Period, ERS shall transfer from the Prepetition Segregated Account to the Fiscal Agent for the payment of interest on the ERS Bonds, no later than the 20th day of each subsequent month,*** the amount necessary to pay interest on the ERS Bonds due and payable on the first day of the next succeeding month, in accordance with the ERS Bond Resolutions.

Joint Stipulation ¶ F (emphasis added). "Briefing Period" is defined as "the date hereof through and including the date that the Court renders a ruling with respect to the Parties' motions for summary judgment on the Declaratory Relief Action *in accordance with Schedule 1*." Joint Stipulation ¶ C (emphasis added). Schedule 1, in turn, specifies an October 31, 2017 end date. Thus, at most, Paragraph F required ERS to transfer funds to BNY by the 20th of each month

until October 31, 2017. But Paragraph F does not mandate any interest *payments* from BNY to the Bondholders. That separate step is exclusively governed by Paragraph D.[4]

5. Rather than allow for a November 1, 2017 interest payment in the Joint Stipulation and beyond that (as the Bondholders would have it), Paragraph F instead preserved ERS's right to authorize a voluntary payment to the Bondholders depending on the outcome of summary judgment, which should have occurred on or shortly after October 31, 2017 under the original case schedule. Because the funds had already been transferred to BNY, such a payment would have been easy to execute upon ERS's authorization after a summary judgment ruling.

6. Consistent with Paragraph F's exact language, ERS transferred funds to BNY by the 20th of each month, with the last transfer on October 17, 2017. ERS did not give BNY authorization to make an additional interest payment beyond what is specified in Paragraph D. BNY, however, erroneously transferred the funds to the Depository Trust Company ("DTC") for distribution to the Bondholders on November 1, 2017. After learning what had happened, ERS promptly informed BNY and the Bondholders that ERS did not authorize the November 1, 2017 interest payment and that the payment violated Paragraph D of the Joint Stipulation.

7. ERS's reading of the Joint Stipulation is the only one that gives full meaning to the plain language of both Paragraphs D and F. In contrast, the Bondholders' interpretation that adequate protection interest payments continue until the Court issues a summary judgment ruling, whenever that may be, would render the October 1, 2017 date in Paragraph D superfluous. Such a reading of Paragraphs D and F would violate the canon of construction that all terms (e.g., the October 1 expiration date) should be given effect. The Bondholders' reading

---

[4] Paragraph F also requires adequate protection payments of $18.5 million each, as specified in Schedule 2, to be deposited in a new postpetition account. There is no dispute that ERS complied with its obligations to make the payments set forth in Schedule 2, which, like Schedule 1, has an end date of October 31, 2017. *See* Joint Stipulation ¶ F; Schedule 2.

would also inappropriately supplant the specific payment date in Paragraph D with more general terms stating the mechanism for transfers to BNY, thereby violating the canon that specific contract provisions should govern over general ones. Thus, the Joint Stipulation required no additional interest payments after October 1, 2017.

## ARGUMENT

### I. THERE IS NO BASIS TO MODIFY THE AUTOMATIC STAY.

8. The Bondholders ask the Court to condition the continuation of the automatic stay on ERS making additional interest payments, as well as additional monthly deposits of $18.5 million into the postpetition segregated account, until the Court issues a decision on the motions for summary judgment. *See* Proposed Order; Mot. at pp. 17-18. In the alternative, the Bondholders request that the Court grant the prior Stay Relief Motion and, to that end, incorporate by reference their prior arguments.[5] Mot. at pp. 17-18.

9. As a threshold issue, the Bondholders have not alleged or established that their alleged lien rights in the prepetition or postpetition segregated accounts will be diminished in the absence of additional interim adequate protection payments. Indeed, these funds remain segregated and are not diminishing. Declaration of Luis Collazo Rodriguez in Support of ERS's Opposition ("Collazo Decl.") ¶ 3. The Bondholders do not allege otherwise. Because the amounts in these accounts remain available and undisturbed, additional adequate protection payments are unwarranted and unnecessary. *See In re Aegean Fare, Inc.*, 33 B.R. 745, 749 (Bankr. D. Mass. 1983) (creditor only entitled to adequate protection to the extent necessary "to protect the value of the collateral behind the lien and see to it that this value was not diminished."); *In re Timbers of Inwood Forest Ass'n, Ltd.*, 793 F.2d 1380, 1389 (5th Cir. 1986)

---

[5] ERS also incorporates by reference the arguments previously set forth in its Stay Relief Opposition, ECF No. 98.

(adequate protection is intended to "to protect a secured creditor against a decrease in the value of its collateral…."); *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995) ("[C]reditors are entitled to adequate protection only to the extent that the value of the property securing their claim diminishes . . . .").

10. Nor would any additional payments be appropriate now that the motions for summary judgment are fully briefed and set for a hearing that will conclude a week before this Motion can be heard. If the Court rules in favor of ERS, then the Bondholders will not be entitled to any adequate protection payments.[6] *See First Nat'l Bank of Denver v. Turley,* 705 F.2d 1024, 1027 (8th Cir. 1983) (creditor "is not entitled to relief from the automatic stay . . . because [it] had an unperfected security interest at the time of the filing of the bankruptcy petition . . . ."); *In re Utah Aircraft Alliance*, 342 B.R. 327, 338 (10th Cir. BAP 2006) (creditor's "failure to perfect its security interest relieves the Trustee from having to show adequate protection of a secured interest."). Thus, judicial economy favors awaiting the Court's ruling on summary judgment before awarding any additional payments. *See In re Island Helicopter Corp.*, 63 B.R. 809, 819 (Bankr. E.D.N.Y. 1986) (deferring final determination on adequate protection for 45 days to allow debtor to provide additional information on condition of collateral).

## II. THE JOINT STIPULATION REQUIRES INTEREST PAYMENTS ONLY "THROUGH THE INTEREST PAYMENT DUE ON OCTOBER 1, 2017."

11. The Bondholders are also not entitled to any additional adequate protection interest payments under the Joint Stipulation. The plain language of Paragraph D required only four interest payments on each of July 1, August 1, September 1 and October 1, 2017: "[i]nterest

---

[6] The Bondholders assert that this and other courts have recognized that they "hold a constitutionally-protected property interest, unless and until this Court rules otherwise," and thus, they are entitled to additional adequate protection or, in the alternative, relief from the automatic stay. Mot. ¶ 21. ERS disagrees with the Bondholders' characterization of the prior court proceedings. But whatever may have happened previously is now irrelevant because the Court's imminent summary judgment decision will determine if the Bondholders have perfected security interests and how the funds in the prepetition and postpetition accounts should be treated.

-5-

on the ERS Bonds shall be paid when due **through the interest payment due on October 1, 2017** from the prepetition segregated account established pursuant to the Order and Stipulation dated January 17, 2017 . . . **commencing with the interest payment that became due on July 1, 2017**." Joint Stipulation ¶ D (emphasis added). No interest payment for November 1 (or beyond) is required anywhere in the Joint Stipulation.

12. The Bondholders, however, contend that Paragraph F requires interest payments "until the conclusion of this Court's ruling on the parties' summary judgment motions." Mot. ¶ 3 (citing Joint Stipulation ¶ C (defining "Briefing Period" as "the date hereof through and including the date that the Court renders a ruling with respect to the Parties' motions for summary judgment on the Declaratory Relief Action in accordance with Schedule 1")). This interpretation, however, ignores that "Briefing Period" is defined expressly "**in accordance with Schedule 1**," which in turn, sets October 31, 2017 as the end date.[7] Thus, Paragraph F, at most, requires ERS to transfer interest payments to BNY by the 20th of each month until October 31, 2017. ERS followed the exact letter of the Joint Stipulation and made the required transfer to BNY, but Paragraph F did not authorize additional interest payments to be made to the Bondholders beyond the payments specified in Paragraph D.[8] Without ERS's express

---

[7] The Bondholders repeatedly omit the phrase "in accordance with Schedule 1" when they reference the definition of Briefing Period, instead replacing it with ellipses. The only place in which the Bondholders quote the entire and correct definition is in footnote 6. *See* Mot. ¶ 1, n. 6.

[8] The Bondholders claim ERS's transfer of funds to BNY is course of conduct evidence that supports their interpretation that a November 1, 2017 interest payment was required by the Joint Stipulation. Mot. ¶ 34. This is incorrect. Even assuming such evidence were relevant to interpreting the plain language of the Joint Stipulation, ERS's transfer of funds to BNY merely shows ERS's strict compliance with the precise terms of Paragraph F. But the transfer did not alter the plain language specifying payments in Paragraph D. ERS made the transfer to ensure that it was complying with the letter of the Joint Stipulation. But ERS did not authorize BNY to make an interest payment on November 1, 2017, and did not intend to make a voluntary interest payment. Collazo Decl. ¶ 3. After learning of the November 1 interest payment, there is no dispute that ERS informed BNY and the Bondholders that BNY's distribution of the payment was an error and ERS had not authorized the payment. To the extent the Court deems extrinsic evidence relevant or necessary here, ERS reserves its right to present evidence regarding notice or directions regarding the November 1, 2017 interest payment.

authorization, BNY should not have made an interest payment on November 1 in contravention of the clear language in Paragraph D.[9]

13. The Joint Stipulation was structured this way to preserve ERS's right to authorize a voluntary payment to the Bondholders depending on the outcome of summary judgment, which the parties had expected to occur on or shortly after October 31, 2017. ERS declined to agree to make a November 1, 2017 interest payment to the Bondholders and instead committed to making the transfer to BNY so that BNY could distribute an interest payment after the resolution of summary judgment if authorized by ERS.

14. Any other interpretation would render the October 1, 2017 payment date in Paragraph D meaningless. The Bondholders claim Paragraph D was intended to clarify that payments would be due *at a minimum* through October 1, 2017 but *could* be due for an indeterminate time period after October 1. *See* Mot. ¶ 31 ("In other words, the Joint Stipulation provides that Monthly Interest Payments 'shall' be due through October 1, but they might also be due thereafter if the Briefing Period remains open."). But no such conditional language appears in Paragraph D requiring interest payments past October "*if the Briefing Period remains open.*"

15. Reading the Joint Stipulation as the Bondholders suggest fails to give effect to the October 1, 2017 date in Paragraph D and therefore makes it superfluous to Paragraph F. *See Crowe v. Bolduc*, 365 F.3d 86, 97 (1st Cir. 2004) ("[A]n inquiring court should, whenever possible, avoid an interpretation that renders a particular word, clause, or phrase meaningless or

---

[9] In light of the clear language in Paragraph D, BNY should have sought confirmation from ERS or clarification from this Court before it made the payment. BNY does not deny that it received notice of the Joint Stipulation, nor could it. BNY was one of the four parties (along with the FOMB, AAFAF, and the Bondholders) that filed Notice of the Stipulation and asked the Court to approve it. *See* ECF No. 170 at 3. The Court then entered the Stipulation and Order, binding BNY and the parties to the terms of the Stipulation. *See McMillan v. LTV Steel Co., Inc.*, 2007 WL 2838975 at *10 (N.D. Ohio Sept. 26, 2007) (order approving stipulation is binding on all parties receiving notice of the stipulation); *see also In re Shank*, 569 B.R. 238, 251 (Bankr. S.D. Tex. 2017) (bankruptcy court order is binding on party that had actual notice of the requested relief).

relegates it to the category of mere surplusage."); *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1996) (rejecting interpretation of one section of an agreement that would render superfluous two other sections and noting "[i]t is hornbook law that an interpretation which gives effect to all the terms of a contract is preferable to one that harps on isolated provisions, heedless of context."); *Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 179 (1st Cir.1995); *see also Restatement (Second) of Contracts* § 202 cmt. d (1981) (explaining that "[w]here the whole can be read to give significance to each part, that reading is preferred").

16. In contrast, ERS's interpretation gives full meaning and effect to the plain language of both Paragraphs D and F. Paragraph F sets forth the fund transfer mechanism, which ERS followed correctly by transferring funds by the 20th of each month to BNY until October 31, 2017, and Paragraph D provides for interest payments to the Bondholders only through October 1, 2017.[10]

17. To the extent there is any uncertainty, the more specific and direct language in Paragraph D providing for an October 1, 2017 payment applies rather than the more general language in Paragraph F describing the mechanism for how ERS must transfer funds to BNY. *See Newharbor Partners, Inc. v. F.D. Rich Co., Inc.*, 961 F.2d 294, 299 (1st Cir. 1992) ("A common principle of contract construction is that a specific term will control over a conflicting general term. . . . Similarly, it is only logical that a[n] unequivocal term will control over a conflicting ambiguous term."); *see also In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1357 (1st Cir. 1992) ("Specific terms are given greater weight than general language.").

---

[10] ERS's interpretation also harmonizes Paragraph C's language stating that the Joint Stipulation resolved the Bondholders' Stay Relief Motion "without prejudice to being re-filed on or after October 31, 2017." Joint Stipulation ¶ C. There would be no purpose for including the October 31, 2017 date if the Joint Stipulation authorized any payments to the Bondholders after October 31, 2017.

18. Finally, ERS has not consented to any modification of the automatic stay other than what is expressly specified in the Joint Stipulation, and Paragraph H makes clear that "nothing herein shall constitute a waiver of any automatic stay under Title III of PROMESA." Joint Stipulation ¶ H. The parties could have specified interest payments until the Court's ruling on the motions for summary judgment, but they did not do so. ERS would not have been willing to agree to such open-ended language, because it would have incentivized the Bondholders to delay resolution of the case to extract additional multi-million dollar adequate protection payments from ERS. Indeed, this is exactly what the Bondholders have tried to do by demanding a five-week extension of the case schedule over ERS's objection and then using the extension as justification for more money.[11]

## CONCLUSION

19. For the foregoing reasons, the Motion should be denied. Neither the Joint Stipulation, nor the current circumstances in the case, require additional interim adequate protection payments pending the Court's summary judgment ruling.

Dated: December 12, 2017

San Juan, Puerto Rico

Respectfully submitted,

*/s/ Paul V. Possinger*
Martin J. Bienenstock
Paul V. Possinger
Kevin J. Perra
Timothy W. Mungovan
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**

Eleven Times Square
New York, NY 10036

---

[11] *See* ERS's Opposition to Defendant's Urgent Motion to Extend Deadlines in Joint Stipulation, Case No. 17-213-LTS, ECF No. 65 ("If and when [the Bondholders] lose this case, any possible right to adequate protection payments stop; but while the case lingers, the Bondholders will try to seek additional monthly adequate protection payments (in the form of both postpetition deposits into a segregated account and payment of interest to the Bondholders from a separate prepetition segregated account). To be clear, the Bondholders have no claim to any payments beyond October 31, 2017 under the parties' stipulation.").

Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
kperra@proskauer.com
tmungovan@proskauer.com

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

*/s/ Peter Friedman*
John J. Rapisardi
Suzzanne Uhland
Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1-949-823-6900
Fax: +1-949-823-6994

-10-

        */s/ Andrés W. López*
        Andrés W. López
        USDC No. 215311

        **THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C.**
        902 Fernández Juncos Ave.
        San Juan, PR 00907
        Tel: (787) 294-9508
        Fax: (787) 294-9519

        *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

-11-