**Hearing Date:** December 20, 2017, 9:30 a.m. (AST)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

**AMBAC ASSURANCE CORPORATION'S REPLY IN FURTHER SUPPORT
OF ITS MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY
UNDER BANKRUPTCY RULE 2004**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | The Information Produced by the Commonwealth to Date Is Wholly Inadequate to Understand the Financial Condition of the Debtor. | 3 |
| B. | Ambac's Requests Are Consistent With Sections 303 and 305 of PROMESA. | 5 |
| C. | AAFAF's Blanket Assertion of the Deliberative Process Privilege Is Exceedingly Overbroad. | 7 |
| D. | Ambac's Requests Are Narrowly Tailored and Any Concerns About Scope or Privilege Should Be Easily Resolved. | 10 |
| E. | Ambac's Offer to Meet and Confer With AAFAF Was Rebuffed. | 12 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Coffee Cupboard, Inc.*,
  128 B.R. 509 (Bankr. E.D.N.Y. 1991)...............................................................................................4

*In re Franklin Nat. Bank Sec. Litig.*,
  478 F. Supp. 577, 585 (E.D.N.Y. 1979) ..........................................................................................10

*In re Gawker Media LLC*,
  2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017)..............................................................5

*In re Hilsen*,
  2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ...............................................................5

*Providence Journal Co. v. U.S. Dep't of Army*,
  981 F.2d 552 (1st Cir. 1990)..............................................................................................................8

*In re Recoton Corp.*,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004).............................................................................................5

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995).................................................................................................................8

**Statutes**

48 U.S.C. § 4163............................................................................................................................................6

48 U.S.C. § 4165............................................................................................................................................7

**Other Authorities**

Fed. R. Bankr. P. 2004........................................................................................................ *passim*

Ambac Assurance Corporation ("Ambac") respectfully submits this Reply in Further Support of Its Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 (Dkt. No. 1873, the "Motion").[2] In further support of the Motion, and in reply to AAFAF's Objection (Dkt. No. 1908, the "Objection") and the Joinder filed by the Oversight Board, on behalf of itself and the Commonwealth and COFINA (Dkt No. 1909), Ambac states as follows:

1. By its Motion, Ambac seeks targeted discovery—seven categories of documents covering a time period of less than four months—into the impact of Hurricane María on the Dedicated Sales Tax. This subject is critically important to COFINA's creditors, as the Dedicated Sales Tax is the sole means of repayment of COFINA's bonds. And there can be no serious dispute that Ambac is entitled to this discovery. Rule 2004 applies with full force in these proceedings by virtue of Section 310 of PROMESA. The concerns articulated by AAFAF concerning scope or privilege apply, at most, at the margins, and should have been resolvable had AAFAF been willing to engage. Unfortunately, its Objection only reconfirms the Commonwealth's continued wholesale unwillingness to respond meaningfully even to narrow requests seeking readily accessible information.

2. The Objection advances five reasons why the Motion should be denied: (i) the Commonwealth has already provided sufficient post-María information concerning SUT collection and deposit; (ii) the requests are barred by Sections 303 and 305 of PROMESA; (iii) the requests are barred by the deliberative process privilege; (iv) the requests are overly broad and unduly burdensome; and (v) the Motion is procedurally defective because Ambac supposedly failed to meet and confer with AAFAF. Each of these arguments fails.

---

[2] The Motion was joined by the COFINA Senior Bondholders' Coalition (Dkt. No. 1905), the Financial Guaranty Insurance Company (Dkt No. 1907), Assured Guaranty Corp. (Dkt. No. 1946), the Mutual Fund Group (Dkt. No. 1950), and the Official Committee of Unsecured Creditors (Dkt. No. 1897).

3. First, the Commonwealth's claim that it has already produced sufficient information regarding the hurricane's impact on the SUT is belied by the exhibits attached to the Objection. Those documents contain only a repeat line item showing certain aggregate variances in SUT collection. They provide no visibility into the causes of the variances beyond, generically, "the impact of Hurricane María." Second, Sections 303 and 305 are unavailing because the requests do not "interfere" with the political or governmental powers of the Debtors—they seek to *understand* the financial condition of those Debtors. In any event, the Oversight Board has consented to Rule 2004 discovery by filing Title III petitions on behalf of the Commonwealth and COFINA. Third, the deliberative process privilege is not a basis on which to object to discovery, but rather a privilege that can be asserted as to specific responsive documents. And Ambac does not seek "deliberative" information; it only seeks financial information concerning the hurricane's impact on actual or projected SUT collection and/or deposit. Fourth, AAFAF's references to an "extreme burden" requiring "vast amounts" of time and resources are utter hyperbole—the requests extend no further than September 1, 2017, and any concerns about scope should be resolved through a meaningful meet-and-confer process. Fifth, and relatedly, AAFAF's claim that Ambac failed to meet and confer is contradicted by the record. Ambac provided AAFAF's (and the Oversight Board's) counsel with the requests in advance of the filing and asked whether AAFAF believed a meet and confer would be productive. AAFAF's counsel did not respond.

4. Ultimately, the Objection is but the latest installment in a years-long pattern of resistance to *any* effort by creditors to obtain basic financial information—information that the Commonwealth contractually agreed to provide to Ambac even outside of bankruptcy, and that the Debtors are obligated to provide in bankruptcy pursuant to Rule 2004. This information is

core to understanding the financial condition of the Debtors. In the absence of a Court order to the contrary, the Commonwealth's obstruction will continue unabated, precluding meaningful efforts at consensual resolution of these Title III proceedings.

**A. The Information Produced by the Commonwealth to Date Is Wholly Inadequate to Understand the Financial Condition of the Debtor.**

5. AAFAF claims that it "has been making public targeted data and information regarding SUT generation and collection post-Hurricane María." (¶ 1.)[3] In support of this claim, AAFAF ostentatiously includes 66 pages of exhibits to its Objection. Tellingly, however, it is only able to point to a single line item in each of the exhibits as conveying information about post- María SUT collection. And that line item demonstrates precisely why the information publicly available to creditors is wholly insufficient to evaluate and consider the hurricane's actual impact on SUT collection and deposit.

6. Specifically, the line item provides three basic pieces of information—actual SUT collection, forecasted SUT collection, and the variance between the two (*i.e.*, basic math)—followed by a "comment" that is so vague as to be meaningless. For example, Exhibit 1, an AAFAF document regarding cash flow as of October 20, 2017, comments that "[c]ollections variances are mainly driven by lower collections due to the impact of Hurricane María." (Dkt. No. 1908-1 at 7.) Later versions of that document either repeat the same language or add equally vague comments, such as: "The negative $12M variance in collections for the week ending 11/3 is due to overall lower collections due to Hurricane María, mainly driven by lower than forecast collections from corporations and from Act 154 [an excise tax having nothing to do with the SUT]." (Dkt. No. 1908-3 at 6.)

---

[3] All paragraph references in this Reply are to the Objection.

7. These high level variance numbers and the equally obscure comments accompanying them show why Ambac and other COFINA creditors have no visibility into Hurricane María's real impact on SUT collection and deposit. Among the many legitimate questions that remain unanswered are:

- What are the specific causes of the decline in SUT collection (beyond the generic description of "the impact of Hurricane María")?

- How much of the decline has been caused by policy changes, including the SME Executive Order, and how much is the result of lower economic activity?

- Which retailers are responsible for the decline in SUT collection?

- How have the COFINA SUT, General Fund SUT, and FAM SUT fared comparatively?

- Is the decline caused by delayed remittance or decreased collections?

- What kind of SUT collection is currently projected? Are declines expected to continue or to abate?

- How much SUT has been collected and deposited into the relevant accounts (whether at Banco Popular de Puerto Rico or elsewhere)?

- Has the SUT been appropriately segregated?

- Does an electronic deposit structure remain in place? If so, what percentage of the SUT is collected in that manner?

8. These questions are particularly urgent against the backdrop of recent acts undertaken by the administration of Governor Rosselló—first, suspension of the SUT on prepared foods and petroleum products; second, the SME Executive Order, which exempted an estimated 60,000 small and midsize businesses from collecting and remitting the SUT through at least the end of the year—as well as AAFAF's representation that the SUT payment system used to collect and transmit the SUT was disabled as a result of the storm.

9. These issues go straight to the "financial condition of the debtor." Fed. R. Bankr. P. 2004(b). The information AAFAF attaches to its Objection comes nowhere near shedding

adequate light on that financial condition. And the information Ambac seeks is precisely the type of information that Rule 2004 is designed to cover. *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved."); *In re Gawker Media LLC*, 2017 WL 2804870, *5 (Bankr. S.D.N.Y. June 28, 2017) (information relating "to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan" are appropriate subjects of a Rule 2004 request); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (creditors may obtain Rule 2004 discovery regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred"); *In re Hilsen*, 2008 WL 2945996, *4 (Bankr. S.D.N.Y. July 25, 2008) (Rule 2004 extends to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge").

**B. Ambac's Requests Are Consistent With Sections 303 and 305 of PROMESA.**

10. Unable to credibly claim that meaningful information has already been provided concerning the impact of Hurricane María on the Dedicated Sales Tax, AAFAF resorts to Sections 303 and 305 of PROMESA, arguing that Ambac's inquiry into the financial condition of COFINA somehow impinges on the Commonwealth's sovereignty. Those provisions are unavailing. Were a Chapter 9 or Title III debtor permitted to evade Rule 2004 discovery on the ground that such discovery "interferes" with the political or governmental powers of the debtor, Rule 2004 would be rendered effectively unavailable in municipal bankruptcy cases—a result at odds with Section 310 of PROMESA (which incorporates Rule 2004) and precedent supporting the critical role Rule 2004 plays in such cases. *See In re City of Vallejo*, Case No. 08-26813

(Bankr. E.D. Cal. Aug. 9, 2010) (Dkt. No. 758) (rejecting argument that Rule 2004 is inapplicable to Chapter 9 debtors).

11. Section 303 of PROMESA provides, in pertinent part, that Title III "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality." 48 U.S.C. § 2163. Section 305 provides, again in pertinent part, that "unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, . . . interfere with . . . the political or governmental powers of the debtor." *Id.* § 2165. AAFAF contends that "[a]ssessing and addressing Hurricane Maria's impact on Puerto Rico's economy generally and, in particular, the generation and collection of the SUT, is indisputably a core governmental function." (¶ 9.) From this premise, AAFAF concludes that "creditors have no role to play in investigating this exercise of the Government's 'political or governmental powers'" (*id.*)—in other words, only the Commonwealth is entitled to understand the impact of the hurricane on the SUT.

12. As a threshold matter, AAFAF's assertion of sovereign concerns as a basis for its objection to Rule 2004 discovery fails for the simple reason that the Oversight Board has consented to the application of Rule 2004. Section 305 states that orders "interfer[ing] with . . . the political or governmental powers of the debtor" are barred "**unless the Oversight Board consents**." 48 U.S.C. § 2165 (emphasis added). The Oversight Board, by availing itself (as representative of the Debtors) of the protections of Title III, necessarily consented to the provisions of Title III, including Section 310's incorporation of the Federal Rules of Bankruptcy Procedure. It cannot at the same time take the position that "the generation and collection of the SUT"—COFINA's sole means to repay its creditors and thus the exclusive bellwether of

- 6 -

COFINA's financial condition—"is indisputably a core governmental function" and therefore beyond the scope of Rule 2004 inquiry. (¶ 9.) The Oversight Board's consent thus should end the inquiry at the outset.

13. Even if the Oversight Board had not consented, the suggestion that Ambac's requests implicate Sections 303 and 305 is preposterous. Sections 303 and 305 protect the Commonwealth's exercise of its "political or governmental powers" from "limit[ation] or impair[ment]" (Section 303) or "interfere[nce] (Section 305). 48 U.S.C. §§ 2163, 2165. Ambac's requests for data and information collected by the Commonwealth and/or COFINA do nothing to limit, impair, or interfere with those powers. The Motion does not ask the Court to order the Commonwealth to do anything differently with respect to assessing or addressing the impact of Hurricane María on SUT collection or deposit. As with any Rule 2004 motion, the requests are informational in nature only and aimed at *understanding* the hurricane's impact on the Dedicated Sales Tax—Ambac's only collateral—not *interfering* with the Commonwealth's administration of it.[4] Indeed, AAFAF's claim that "creditors have no role to play in investigating" the impact of the hurricane on their collateral is a telling (and, frankly, outrageous) admission of their fundamental misunderstanding of Rule 2004, Ambac's requests, and creditors' need for information.

### C. AAFAF's Blanket Assertion of the Deliberative Process Privilege Is Exceedingly Overbroad.

14. AAFAF's assertion of the deliberative process privilege is equally marred by a fundamental misunderstanding of that privilege and of the nature of Ambac's requests. AAFAF

---

[4] Of course, should Ambac learn anything in Rule 2004 discovery that compromises its rights with respect to the Dedicated Sales Tax, Ambac reserves all rights to mount an appropriate legal challenge. But granting the Motion would in no way impair AAFAF's or the Oversight Board's ability to attempt to defend against such action, including in reliance on Sections 303 or 305 should they deem those sections applicable. The issue before the Court is much narrower—whether AAFAF should be compelled to provide basic financial information concerning the Debtors.

contends that "[i]t is difficult to identify any aspect of Ambac's requested discovery, other than Request No. 7 [seeking retailer information[5]], that does not seek to invade the deliberative process privilege." (¶ 14.) The basis for this blanket claim is that Ambac supposedly seeks internal government documents "about how to meet the challenges of collecting the SUT in the midst of Puerto Rico's devastation." (*Id.*) In fact, Ambac's requests are not at all focused on the reasoning or deliberation concerning the Commonwealth's policy response to the devastation wrought by Hurricane María; they are focused on the *impact* of the hurricane and the SME Executive Order on Ambac's collateral, and any concrete data or empirical analysis regarding the same. This is a critical distinction.

15. As AAFAF acknowledges (¶ 13), to qualify for the deliberative process privilege, a document must be both "predecisional" and "deliberative." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). Predecisional means that a document is "antecedent to the adoption of agency policy." *Id*. (quoting *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988)). A document qualifies as deliberative if it "(i) form[s] an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559 (1st Cir. 1992) (internal quotation marks and citation omitted).

16. First, many of Ambac's requests do not sensibly fall within the concept of "predecisional" documents as most of them simply seek to understand the impact of the

---

[5] Request No. 7 is the only request to which AAFAF does not categorically object, noting that it "is not particularly burdensome in and of itself" (¶ 18 n.10) and acknowledging that it only seeks "data" (¶ 9 n.8). However, AAFAF appears to be willing to produce such data only at the aggregate level, not broken down by the twenty-five merchants that have contributed the most SUT, as called for by Request No. 7. (*Id.*) Without such a breakdown, it is impossible for Ambac to assess, as it is entitled to do, the causes of the decline in SUT collection. Any confidentiality concerns regarding those taxpayers can be dealt with through an appropriate protective order.

hurricane itself, not any policy decision. For instance, Request Nos. 1 and 2 seek documents concerning "the impact of Hurricane Maria on SUT generation" or "any logistical impediments to collecting the SUT following Hurricane Maria." Neither, by its terms, calls for any information concerning the Commonwealth's political or governmental decisionmaking. Accordingly, these requests do not implicate the deliberative process privilege. *See Providence Journal*, 981 F.2d at 557 (to be considered "predecisional," a document must have been prepared "for the purpose of assisting the agency official charged with making the agency decision").

17. As for those requests that have some nexus to policymaking, AAFAF distorts the nature of the information Ambac actually seeks. For instance, Request No. 3 asks for documents concerning "the impact or projected impact on SUT collections of the SME Executive Order." To be sure, the request seeks information relating to a governmental act—the SME Executive Order—but the information sought relates to ***impact***, not ***deliberation***. There can be no dispute that documents concerning the actual impact of the SME Executive Order are not protected, as they are necessarily post-decisional. With respect to documents concerning the projected impact, to the extent any of those were predecisional, they are still not protected. Ambac does not seek documents reflecting the policy debate undergirding the decision to issue the SME Executive Order; it simply wants to understand the Commonwealth's view of the impact the SME Executive Order will have on SUT collection. This information is inherently non-deliberative in nature and is essential to Ambac's understanding of the financial condition of the Debtors. Objective data does not become subject to the deliberative process privilege simply because it was reviewed or considered in connection with a policy decision. *See, e.g.*, *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 585 (E.D.N.Y. 1979).

18. The Objection muddies the issue by latching on to those aspects of the requests that seek documents concerning "plans or proposals" relating to the SUT. (¶¶ 5, 14.) It does not follow, however, that by seeking such documents, Ambac is requesting "deliberative" information. For instance, one can easily imagine a document that to some degree bears on policy deliberations, but also contains basic financial facts (whether actual financials or projections) relating to the SUT. To the extent such a document contains genuinely deliberative content—*e.g.*, analysis or recommendations as to an appropriate policy response to those financials—Ambac does not seek such information and AAFAF would be within its rights to redact it (assuming the information was also predecisional). But AAFAF is not now—any more than it has been in its prior assertions of the deliberative process privilege—entitled to use the privilege as a blunderbuss objection to requests that may touch upon the Commonwealth's governmental function, a subject matter inevitably and appropriately at issue in a municipal bankruptcy case to which Rule 2004 applies with full force.

**D. Ambac's Requests Are Narrowly Tailored and Any Concerns About Scope or Privilege Should Be Easily Resolved.**

19. In addition to attempting to shroud in secrecy the hurricane's impact on SUT collection and deposit, AAFAF interposes a hackneyed objection to Ambac's requests on burden and overbreadth grounds, repeatedly emphasizing that most of Ambac's requests by their terms seek "all documents" on a given subject matter. (¶¶ 5, 18.) Of course, as AAFAF (and its experienced counsel) are aware, discovery requests are customarily framed in terms of "all documents," and to the extent such a request is viewed as imposing an unreasonable burden, the parties are expected to negotiate a narrower scope. As explained below (*see infra* Point E), neither the Commonwealth nor AAFAF accepted Ambac's offer to meet and confer in advance of the Motion. In any event, Ambac's requests are narrowly tailored.

20. First, as a temporal matter, Ambac's requests cover the time period extending from September 1, 2017 to the present—approximately three-and-a-half months (as of the date of this filing). In other words, far from requesting the Commonwealth to dredge up materials from dusty archives, Ambac is seeking documents that by definition were created in the last handful of months. Given that recent and modest temporal scope, the relevant custodians should be immediately knowable and their files readily obtainable without undue burden.

21. Second, as a substantive matter, AAFAF's apparent concerns about overbreadth are overblown. AAFAF contends that the requests would impose an "undeniably extreme burden" on the Commonwealth that would "require the Government to expend *vast amounts of its extremely limited time and resources*" and "strain the capacity of the Government's officials as well as its coffers." (¶¶ 18, 20 (emphasis added).) In fact, the amount the Commonwealth has already spent (and will continue to spend) on objecting to the Motion likely amounts to a significant portion of the resources that would have been expended in engaging the requests in good faith. This is especially so given that, of course, the precise contours of AAFAF's response to Ambac's requests are subject to negotiation and could be modified to ameliorate any legitimate burden, as is routinely the case in discovery matters.

22. Third, as concerns depositions, AAFAF makes much of the request for a deposition of the Secretary of the Treasury and a 30(b)(6) witness of each of the relevant entities—the Commonwealth and COFINA (each a Debtor entity) and the Oversight Board and AAFAF (each a purported representative thereof). Here, too, however, AAFAF hyperbolically objects to the discovery sought. The only witness specifically sought for deposition is the Treasury Secretary—admittedly a senior official but one with undeniably discoverable information pursuant to Rule 2004. Ambac also sought the testimony of a witness of each of the

Debtors and their representatives so as to be certain the requests cover persons with relevant knowledge. It is to be expected, however, that only one such 30(b)(6) witness may be necessary. Unfortunately, these are alternatives that AAFAF refused to even consider by declining to engage Ambac prior to the filing of the Motion.

23. Fourth, in seeking to bolster its burden and overbreadth objection, AAFAF seeks to belittle the requests themselves, framing them as an "intrusive curiosity [and] mere pretext for fishing for information" and a "purported need that is, at best, premature." (¶ 19.) To describe the treatment of COFINA's property and its bondholders' sole collateral in that manner—as if Ambac's concern for its constitutionally protected property rights is merely a "curiosity" and an "intrusive" one at that—only underscores the counter-productive arrogance that has come to typify the Commonwealth's relations with the creditors who loaned it tens of billions of dollars. And in referring to a "premature" need, AAFAF identifies no qualification to Rule 2004 discovery that limits it to late-stage bankruptcy proceedings. Offensive and misleading rhetoric aside, understanding the impact of Hurricane María—a storm that AAFAF has repeatedly described in nearly apocalyptic terms—on COFINA's sole source of repayment is a legitimate topic of Rule 2004 discovery into this particular Debtor. One would be hard-pressed to envision a more appropriate topic of discovery into COFINA.

E. **Ambac's Offer to Meet and Confer With AAFAF Was Rebuffed.**

24. Finally, AAFAF's contention that the Motion should be denied because Ambac "did not meet and confer with AAFAF before filing the Motion" is egregiously misleading. The record is clear, as reflected in the email chain attached hereto. (*See* email of G. Mainland to T. Mungovan et al., dated November 28, 2017 (attached as Exhibit A).) As AAFAF admits, more than twelve hours before filing its Motion, Ambac sent its Rule 2004 requests to counsel to the Oversight Board and AAFAF. Ambac explained that, based on the Oversight Board and

- 12 -

AAFAF's objections to prior Rule 2004 motions, Ambac anticipated that similar objections might be advanced here, but asked counsel to both entities to "let us know if we are mistaken in that expectation, in which case we would be happy to meet and confer." Counsel to the Oversight Board responded only to ask whether Ambac's Rule 2004 motion would be included as part of certain creditors' joint renewed Rule 2004 motion concerning the Fiscal Plan, to which Ambac's counsel responded that its request concerning SUT collection and deposit was distinct. (*Id.*) Counsel to AAFAF did not respond. Against that record, AAFAF's contention that it is "untrue" that a meet-and-confer with Ambac would not have been fruitful (¶ 7) should be taken with a substantial grain of salt—such a meet-and-confer was expressly offered, and AAFAF's counsel declined to indicate any willingness to engage.

**WHEREFORE,** Ambac respectfully requests that the Court grant the Motion and such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: December 12, 2017
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
      scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
      aleblanc@milbank.com
      amiller@milbank.com
      gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

# Exhibit A

## Mainland, Grant

| | |
|---|---|
| **From:** | Miller, Atara |
| **Sent:** | Tuesday, November 28, 2017 3:25 PM |
| **To:** | 'Dale, Margaret A.'; Mainland, Grant |
| **Cc:** | Mungovan, Timothy W.; Friedman, Peter; Cantor, Daniel L.; Rosen, Brian S.; Mashberg, Gregg M.; McKeen, Elizabeth L. (emckeen@omm.com) |
| **Subject:** | RE: Rule 2004 Examination re SUT Collection |

Margaret,

These requests are distinct from the ones previously submitted and we do not view them as the subject of Judge Dein's order. These are narrow and relate solely to the COFINA SUT revenues.

**From:** Dale, Margaret A. [mailto:mdale@proskauer.com]
**Sent:** Tuesday, November 28, 2017 3:20 PM
**To:** Mainland, Grant
**Cc:** Miller, Atara; Mungovan, Timothy W.; Friedman, Peter; Cantor, Daniel L.; Rosen, Brian S.; Mashberg, Gregg M.; McKeen, Elizabeth L. (emckeen@omm.com)
**Subject:** RE: Rule 2004 Examination re SUT Collection

Dear Grant,
With respect to the 2004 requests included with your email, we had understood Judge Dein's order to require a Joint Motion with all of the Bondholders that had previously made 2004 requests. Do the current 6 Ambac requests represent the requests of all of the Joint Movants? If not, what are the other requests? Once we have this information, we can get back to you quickly regarding a meet and confer.
Thanks.
Margaret

**Margaret A. Dale**
Partner

Proskauer
Eleven Times Square
New York, NY 10036-8299
d 212.969.3315
f 212.969.2900
mdale@proskauer.com

**Visit our Commercial Litigation blog:**
**www.mindingyourbusinesslitigation.com**

greenspaces
Please consider the environment before printing this email.

**From:** Mainland, Grant [mailto:GMainland@milbank.com]
**Sent:** Tuesday, November 28, 2017 10:46 AM
**To:** Mungovan, Timothy W.; Friedman, Peter; Cantor, Daniel L.; McKeen, Elizabeth L. (emckeen@omm.com); Rosen, Brian S.; Mashberg, Gregg M.; Dale, Margaret A.
**Cc:** Miller, Atara
**Subject:** Rule 2004 Examination re SUT Collection

1

All:  Ambac intends to file a Rule 2004 motion concerning post-Maria sales-and-use tax collection issues (specific topics set forth in the attached).  As you know, Ambac has sought Rule 2004 discovery on different topics in a prior motion, and the Oversight Board and AAFAF objected to that motion, including on grounds of deliberative process privilege and the pending proceeding doctrine.  Though we continue to disagree that there is a basis for those objections, we anticipate that similar objections may be advanced here.  Please let us know if we are mistaken in that expectation, in which case we would be happy to meet and confer.

Regards,
Grant

---

**Grant R. Mainland** | **Milbank**
28 Liberty Street | New York, NY 10005
T: +1 212.530.5251 | F: +1 212.822.5251
gmainland@milbank.com | www.milbank.com

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.



***********************************************************************************
***********************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
***********************************************************************************
***********************************************************