# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **In re** | ) **PROMESA** |
|  | ) **Title III** |
|  | ) |
| **THE FINANCIAL OVERSIGHT AND** | ) **No. 17 BK 3283-LTS** |
| **MANAGEMENT BOARD FOR PUERTO RICO,** | ) |
|  | ) **(Jointly Administered)** |
|  | ) |
| As a representative of | ) **Re: ECF No. 1806** |
|  | ) |
| **THE COMMONWEALTH OF PUERTO RICO** | ) **Objection deadline for any party other than** |
| ***et al.,*** | ) **the Fee Examiner:** December 5, 2017 |
|  | ) |
| **Debtors.**[1] | ) **Hearing date:** December 20, 2017 at 10:00 a.m. |
|  | ) (Atlantic Standard Time) |
|  | ) |
|  | ) |

## FEE EXAMINER'S STATUS REPORT ON REVIEW PROCESS AND FIRST INTERIM FEE APPLICATION SCHEDULED FOR HEARING ON DECEMBER 20, 2017

TO:   THE HONORABLE LAURA TAYLOR SWAIN,
      UNITED STATES DISTRICT JUDGE:

### SUMMARY

The Fee Examiner appointed in the above-captioned Title III cases (the "**Fee Examiner**")

respectfully submits this summary report (the "**Report**") concerning the first interim fee

application (the "**Application**") of the sole first interim fee period applicant now pending for the

Court's consideration.  Bennazar, García & Milián, C.S.P (the "**Applicant**") seeks $280,175.00

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

in fees and $7,952.24 in expenses [Dkt. No. 1806] for work performed during the "**First Interim**

**Fee Period**" (May 3, 2017-September 30, 2017), as summarized on **Exhibit A**.  Following

review by the Fee Examiner and discussions with the Applicant, the Applicant has agreed to

adjust and reduce its fee and expense requests consistent with the Fee Examiner's findings.  The

Fee Examiner respectfully recommends approval of the Application, pursuant to section 316 of

the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), 48 U.S.C.

§§ 2101-2241, in the adjusted amounts of $279,987.50 in fees and $6,946.24 in expenses.

On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316*

*and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief*

(the "**Fee Examiner Order**") [Dkt. No. 1416], appointing the Fee Examiner to provide analysis

and recommendations throughout these proceedings.  On October 31, the Fee Examiner filed the

*Urgent Motion of the Fee Examiner to Amend the Interim Compensation Order, Including the*

*Due Date and Hearing Date for Interim Compensation* (the "**Fee Examiner's Urgent Motion**")

[Dkt. No. 1594].  On November 8, 2017, the Court granted the Fee Examiner's Urgent Motion,

amending the previously-established interim compensation procedures and moving the deadline

for First Interim Fee Period applications for most professionals from November 14, 2017 to

December 15, 2017.  *See First Amended Order Setting Procedures for Interim Compensation*

*and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "**Interim Compensation**

**Order**").

As noted in the Fee Examiner's Urgent Motion, any professional based in Puerto Rico

wishing to have a First Interim Fee Period application heard before year-end was to file the

application by November 15, 2017 and notice the application for the December 20, 2017

omnibus hearing.

A single professional, the Applicant, submitted its Application by the stated deadline. The Fee Examiner and his proposed counsel have completed their review and recommend the Application to the Court for approval—adjusted as noted on **Exhibit A**—on an uncontested basis at or before the omnibus hearing scheduled in these matters for December 20, 2017.[2]

## FEE EXAMINER PROCESS

Shortly after entry of the Fee Examiner Order, on November 10, 2017, the Fee Examiner sent a memorandum to all Retained Professionals,[3] outlining a schedule for interim fee applications and setting forth the detailed fee and expense criteria that the Fee Examiner would apply and the specific electronic data formats required for the efficient and effective review of interim and final fee applications.[4]

Bennazar filed the *First Interim Application of Bennazar, García & Milián, C.S.P. for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Official Committee of Retired Employees of the Commonwealth of Puerto Rico From June 16, 2017 Through September 30, 2017* [Dkt. No. 1805] on November 15, 2017.

The Fee Examiner, through counsel, immediately began analysis and line-by-line review of the Application.  Attorneys reviewed the Application and associated time records, under the direction of the Fee Examiner.  On December 8, 2017, the Fee Examiner issued the Initial Letter Report to the Applicant (the "**Letter Report**"), setting forth findings and recommendations with respect to the Court's potential treatment of the Application.  The Fee Examiner then engaged in

---

[2] Pursuant to ¶ 2(j) of the Interim Compensation Order, the Court may grant an Interim Fee Application without a hearing if no objection is pending and if the Fee Examiner has recommended its approval in full or in part.

[3] Capitalized terms in this motion, if not otherwise defined, shall have the meanings defined in the Interim Compensation Order.

[4] The November 10, 2017 memorandum outlining the Fee Examiner's fee and expense criteria (the "**Fee Examiner Guidelines**") is attached to this Report as **Exhibit B**.

discussions with the Applicant, reaching a consensual resolution of all issues raised in the Letter
Report—subject to the Court's approval.

## OBSERVATIONS AND RECOMMENDATIONS

1.      The Applicant is a law firm based in Puerto Rico, retained by the Official
Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retirees'
Committee**") because of its expertise in civil, commercial and administrative law related to
Puerto Rico's retirement systems enabling acts and related procedures.  *See Application of the
Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Order
Approving the Employment of Bennazar, García & Milián, C.S.P.* (the "**Bennazar Retention
Application**") [Dkt. No. 683-1] at ¶¶ 14-15.  Notwithstanding its substantive expertise in these
areas, the Applicant has had limited experience in Chapter 11 matters that would provide
familiarity with the billing practices and conventions unique to bankruptcy proceedings.

2.      In addition, the Applicant reports that its offices were destroyed by Hurricane
Maria, making strict compliance with the Fee Examiner Guidelines even more challenging.

3.      The Fee Examiner's review and analysis of the Application has, therefore, been
framed by an appreciation for the exigent circumstances facing Puerto Rico-based professionals.
The Fee Examiner also is cognizant that during the first weeks and months of an engagement of
this nature, professionals often must employ an "all hands" approach to familiarizing themselves
with the case, identifying issues and strategies, and developing appropriate work-streams.  For all
of those reasons, the Fee Examiner does not recommend Court-imposed reductions of the
Applicant's fees based on the noted deficiencies in the Application that otherwise would merit
adjustment.

4.      The Fee Examiner has communicated the requirements and expectations for future fee applications, and the Applicant will endeavor—as infrastructure allows—more strict adherence to the Fee Examiner Guidelines in future fee periods.

5.      <u>Segregation by Matter Category</u>.  Bankruptcy professionals are required to utilize segregated matters in billing to allow for more meaningful evaluation of the reasonableness and necessity of their work.  These categories typically include: debtor financing and cash collateral, communications with constituents, asset sales, asset analysis and valuation, due diligence of loan and security documents, assumption and rejection of leases or executory contracts, avoidance actions, budgeting, business operations, case administration, claims objections, governance matters, retention and disclosure applications, fee applications, plan and disclosure statement, tax issues, and non-working travel.  Until September 2017, the Applicant did not segregate tasks by matter, but the Fee Examiner does not recommend a corresponding deduction from requested fees.  The Applicant has been advised and already has implemented procedures to comply with the required matter billing format in subsequent fee applications.

6.      <u>Block or Lumped Billing</u>.  The U.S. Trustee Guidelines and Fee Examiner Guidelines unequivocally prohibit "lumped" or block billing, defined as failing to separately identify the amount of time spent on each discrete task for time entries totaling more than 0.5 hours.  U.S. Trustee Guidelines, § (B)(2)(h).  For example, individual phone calls or communications, drafting projects, or other identifiable activities should be recorded separately so that a party reviewing the fees can fully evaluate the accuracy of the timekeeping.  Meeting and hearing attendance is more easily verified when timekeepers record these events separately from time spent traveling to, preparing for, or conferencing about them before or afterward.

Most of the Applicant's timekeeping was block billed.  The Applicant has been advised that timekeepers must keep task-segregated work records to support future fee applications.

7.     <u>Retention and Fee Application Matters</u>.  Certain tasks in the Retention and Fee Application category are non-compensable because they are tasks that any professional would perform, without charge, for any client—such as routine conflicts checks, obtaining conflict waivers, and monitoring the case docket for developments with respect to the retention application.  Other tasks are performed primarily for the convenience of the professional itself, or constitute administrative billing activities that generally are a required, but not compensable, part of any professional's practice.  The Fee Examiner has asked that all professionals segregate retention and fee application time into separate task categories to facilitate a comparison of professionals' expenditure of time in this area.  With the exception of September 2017, the Applicant did not segregate retention and fee application time by matter.  Nonetheless, the Fee Examiner's review did not reveal any apparent excess in the Applicant's expenditure of time on retention and fee application matters, though this will be an area for the Fee Examiner's continued scrutiny in subsequent applications.

8.     <u>Time Increments</u>.  Proper time record-keeping enables the Court to determine the reasonableness of the work performed.  "Any uncertainties due to poor record keeping are resolved against the applicant." *See In re Poseidon Pools of America*, 216 B.R. 98, 100-101 (E.D.N.Y. 1997).  Specifically, pursuant to the U.S. Trustee Guidelines, timekeepers must record their time contemporaneously in tenth-of-an-hour increments.

Time entries repeatedly billed in whole and half-hour increments—significantly in excess of the 20 percent that might be expected in a statistically perfect sample—raise at least two adverse inferences.  First, the pattern raises a concern that the timekeeper's minimum increment

was a half-hour, ignoring the requirement that the minimum increment be one-tenth of an hour.

Second, the billing pattern raises a question of whether the timekeeper failed to keep accurate

and contemporaneous records, leading to estimating or rounding.

The Fee Examiner's review identified some timekeepers who regularly failed to bill in

tenths-of-an-hour.  These timekeepers—most of whom are not experienced bankruptcy

practitioners—were noteworthy because they appeared to record their time in half-hour or

whole-hour increments with unusual frequency.  The Applicant has acknowledged the problem

and agreed to remedy the issue in subsequent fee applications.  No reduction in fees has been

recommended for this deficiency.

9.     <u>Translation Service</u>.  The Fee Examiner noted that several Bennazar attorneys

performed document translation services for the benefit of Retirees' Committee members.  The

Fee Examiner evaluated the reasonableness of this work by comparing the cost to that of a

commercially available translation service in the area.  Given that the translation services were

interspersed with legal analysis and counsel, and were performed at generally low hourly rates,

the Fee Examiner did not recommend any deduction in compensation for translation services.

Professionals now know that, when it is cost effective to do so, translation tasks should be

delegated to an appropriate professional or vendor at a lower hourly rate.  The Fee Examiner will

continue to monitor professionals' performance of translation services.

10.     <u>Vague Task Descriptions</u>.  To be compensable, all time entries should be

sufficiently detailed to allow a reviewer to determine their compliance with applicable Code

sections, rules, standards, and guidelines.  Time entries for telephone calls, letters, and other

communications should give sufficient detail to identify the parties to and the nature of the

communication.  In addition, professionals should identify the final intended work product or

purpose and identify the documents (or data) being reviewed, edited or analyzed so that the
services may be evaluated for reasonableness.  *See, e.g.*, *In re CCT Commc'ns*, No. 07-10210,
2010 WL 3386947, at *8 (Bankr. S.D.N.Y. Aug. 24, 2010).

      11.    The Applicant acknowledged instances of vague timekeeping and resolved to
remedy the problem in subsequent fee applications.  The continued use of vague task
descriptions will be subject to a recommended percentage reduction in subsequent fee periods.

      12.    <u>Reviewing and Monitoring Docket Entries.</u>  Many professionals routinely record
time on a daily basis to review documents filed to the case's docket, whether or not they pertain
directly to that professional's pending work on the case.  The Applicant's time records include
time spent to read filings or other documents without any apparent associated work product.
Routine or daily docket checks or review generally should be delegated to a paralegal or junior
associate.  That person should, when appropriate, alert attorneys to filings that relate to matters
directly pertinent to work on the case.  Further, timekeepers are encouraged to describe their time
reviewing documents or communications in a way that demonstrates the need for their
professional review and judgment.  It is untenable for multiple professionals to bill .1 hour or
more to read every docket entry, regardless of relevance to their work.  A nexus between the
document's review and the professional's role must be demonstrated for the time to be
compensable.

      13.    <u>Multiple Attendees</u>.  The Fee Examiner will pay particular attention to multiple
attorney attendance at meetings, hearings, mediation sessions, and other events.  Professionals
should be mindful of the number of attorneys and staff whose attendance at an event is required,
relying on telephonic participation to reduce expense to the estate.  The Fee Examiner has not
recommended any deductions from the Applicant's requested fees for multiple attendance, but

professionals without a direct participating role in a hearing or other event may well be subject to question and/or recommended for disallowance in subsequent applications.

14.    <u>Expense Issues</u>.  The Fee Examiner Guidelines permit photocopying reimbursement at $.10 per page.  The Applicant charged $.40 per page.  The Fee Examiner noted other minor expense issues, including several refreshment charges that would have been recommended for disallowance.  The Applicant has agreed to the adjustments summarized on **Exhibit A**.

## CONCLUSION

The Applicant's agreed reductions to the requested fees and expenses adequately address the Fee Examiner's concerns.  In light of the extreme circumstances facing the Applicant, the Fee Examiner respectfully requests that the Court allow the fees and expenses requested in the Application, subject to the negotiated resolution set forth on **Exhibit A** and the final fee application process, and direct the Debtors to pay the balances owed to the Applicant within ten days of entry of the proposed order attached to this report as **Exhibit C.**[5]

---

[5] The Applicant has reviewed the form of order attached as **Exhibit C**, and the Fee Examiner is authorized to represent to the Court that the Applicant consents to its entry without a hearing pursuant to ¶ 2(j) of the Interim Compensation Order.

Dated:  December 12, 2017.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

EDGE LEGAL STRATEGIES, PSC

*s/Eyck O. Lugo*
Eyck O. Lugo
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone:  (787) 522-2000
Facsimile:  (787) 522-2010

*Proposed Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Katherine Stadler (*Pro Hac Vice*)

*Proposed Counsel for the Fee Examiner*

18161093.1

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.

PROMESA Title III  No. 17 BK 3283-LTS

**Report – EXHIBIT A**

**First Interim Fee Period**

| Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|
| *Attorneys for the Official Committee of Retired Employees* | | | | | | | |
| Bennazar, Garcia & Milian C.S.P. [D.I. 1806] | 5/3/2017 - 9/30/2017 | $ 280,175.00 | $ 187.50 | $ 7,952.24 | $ 1,006.00 | $ 279,987.50 | $ 6,946.24 |

18169385.1

# EXHIBIT B



ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911   FAX • 608.257.0609

WWW • GKLAW.COM

# MEMORANDUM

| | |
|---|---|
| **TO:** | PROMESA Title III Professionals |
| **FROM:** | Brady Williamson, Fee Examiner |
| **DATE:** | November 10, 2017 |
| **SUBJECT:** | Fee Review—Timeline and Process |

On November 8, 2017, the Court entered the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "Interim Compensation Order"), moving the deadline for submitting first interim fee applications to December 15, 2017, except as noted below for professionals based in Puerto Rico.[1]

As you prepare your first interim fee submissions, this introductory memorandum will provide some additional guidance on the fee review process. It's based, in part, on the experience gained in the *Energy Future* proceeding pending in Delaware and the *Lehman Brothers* proceeding in the Southern District of New York, where most of the PROMESA-Title III firms not based in Puerto Rico have practiced. The memorandum is also based on the U.S. Trustee Guidelines and an initial and cursory review of the limited number of monthly fee statements the Fee Examiner has received.

As you know, the Court appointed the Fee Examiner on October 6, 2017, when it entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Dkt. No. 1416] (the "**Fee Examiner Order**"). That Order also anticipated the retention of Godfrey & Kahn, S.C. as counsel and EDGE Legal Strategies, P.S.C., subject to Court approval. *See Application of Fee Examiner to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner Nunc Pro Tunc to October 6, 2017* [Dkt. No 1548].

You'll receive memoranda like this one, periodically, providing updates on the review process and addressing common matters, questions, and concerns that arise. This process is collaborative and, to that end, we are always available for individual discussion. Please do not hesitate to contact us at any time to discuss fee applications or provide feedback as part of a productive and open dialogue with professionals.

---

[1] As noted in the Fee Examiner's filings and the Interim Compensation Order, any professional based in Puerto Rico may file a first interim fee application on or before November 15, 2017, noticed for Court consideration at the December 20, 2017 omnibus hearing.

OFFICES IN MILWAUKEE, MADISON, WAUKESHA, GREEN BAY AND APPLETON, WISCONSIN AND WASHINGTON, D.C.
GODFREY & KAHN, S.C. IS A MEMBER OF TERRALEX,® A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

This memorandum provides basic information about the initial timing of the fee examination process, the budget requirement, and instructions and suggestions on the process for submitting fee applications for review, including the substantive standards that apply. The goal is a constructive and collaborative process that, recognizing and reserving everyone's rights, makes it less onerous for the Court to review and approve professional fee applications efficiently and promptly. As of today, no professional has submitted an interim fee application, though we have received Monthly Fee Statements and data from some firms.

### *Schedule*

Pursuant to the Interim Compensation Order, the schedule for the Fee Examiner's process is outlined below:

| Fee Period | First Interim May 3, 2017 – September 30, 2017 | Second Interim October 1, 2017 – January 31, 2018 | Third Interim February 1, 2018 – May 31, 2018 | Fourth Interim June 1, 2018 – September 30, 2018 |
|---|---|---|---|---|
| End of Interim Compensation Period | September 30, 2017 | January 31, 2018 | May 31, 2018 | September 30, 2018 |
| Interim Fee Applications Due | December 15, 2017 | March 19, 2018 | July 16, 2018 | November 16, 2018 |
| Initial Letter Report to Retained Professionals | February 15, 2018 | May 18, 2018 | September 14, 2018 | January 14, 2019 |
| Final (Summary) Report Filed | February 28, 2018 (or 7 days prior to scheduled hearing date) | May 30, 2018 (or 7 days prior to scheduled hearing date) | 7 days prior to scheduled hearing date | 7 days prior to scheduled hearing date |
| Estimated Hearing Date | March 7, 2018 (Omnibus Hearing) or an earlier date as ordered by the Court | June 6, 2018 (Omnibus Hearing) or an earlier date as ordered by the Court | Mid-October | Mid-February |

### *Budgets*

Retained Professionals should provide a non-binding, confidential budget for each month beginning with January 2018. Please submit budgets no later than the 15th of the month prior to the budgeted month. Budgets should be e-mailed directly to the Fee Examiner, counsel, and the U.S. Trustee. These budgets—which are prospective—are advisory only. Budgets should be substantially in the format of Attachment A, setting forth an estimate of the projected fees and expenses for each month, a general description of the categories of anticipated services, and an

explanation for any significant increase over the previous month's fees.  These are budgets—not caps, not minimums, not maximums—submitted and reviewed in good faith.

### Fee Review Criteria

The Fee Examiner Order provides, among other things, that the Fee Examiner shall determine whether requested fees and expenses comply with:

1.  PROMESA sections 316 and 317;
2.  Rule 2016-2 of the Federal Rules of Bankruptcy Procedure;
3.  The Local Bankruptcy Rules;
4.  The Interim Compensation Order [and First Amended Interim Compensation Order]; and
5.  The *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines").

### Initial Points

The Guidelines that follow are just that, guidelines and not rigid rules.  On the face of the guidelines or as applied in the reports that you will receive, the process invites dialogue. Particularly in light of the hurricane, the approach to fee submission and review that has proven practical and effective elsewhere may well require adaptation.  Just appointed on October 6, 2017, the Fee Examiner is well aware that a significant amount of professionals' work will have occurred prior to this memorandum.  While these parameters are generally consistent with the requirements of PROMESA and the U.S. Trustee Guidelines, and accordingly considered standard bankruptcy billing practice, in some instances strict compliance may not be possible. Please try to conform your fee and expense requests to the guidelines below, keeping in mind that significant deviations from the requested formats may result in a delay in processing the application.

A number of firms have submitted monthly applications pursuant to the Interim Compensation Order.  With some exceptions, it will not be our practice to object to monthly statements, in whole or in part.  Yet an initial assessment of the monthly statements suggests prospective problems—for example, with vague and incomplete descriptions of the services provided (e.g., "analyze bankruptcy issues" and "miscellaneous emails" or "attention to…") or non-compensable administrative work.  On expenses, it is already clear that transportation and meal charges will raise questions.  One of the reasons we've asked to defer the due date for the initial interim compensation applications is to provide everyone with the opportunity to conform their billing practices to the standards.

Many firms increase rates at the beginning of the calendar year and, in addition, during the calendar year—whether characterized as "step increases" for associates or as "general" or "across the board rate increases."  Rate increases, no less than the basic hourly rate itself, whether or not discounted for the circumstances here, are subject to the reasonableness standard. While the market rate for professional services in a difficult and complex case like this is always

3

a factor in setting and reviewing rates, it is not the only factor.  That is especially true in the extraordinary environment—legal and practical—of these proceedings.  The length of these proceedings cannot be predicted or projected, at least at this point, but rate increases proposed by firms here should be given careful consideration by the professionals before they are submitted as part of the monthly or interim fee process.

## GUIDELINES

### *Contents of Interim and Final Fee Applications*

Based upon the criteria outlined in the Fee Examiner Order and on the Fee Examiner's experience, each interim fee application should disclose:

1.  Whether the applicant is seeking compensation under PROMESA sections 316 and 317 or another authority;

2.  A summary of the terms and conditions of the Retained Professional's employment and compensation, including a statement consistent with Bankruptcy Rule 2016 and, for the first application, a copy of the engagement letter;

3.  Identification of all professionals who billed time during the relevant period, including each professional's billing rates and year of bar admission;

4.  A list of all rate increases of any kind—including rate increases due to increasing seniority—by timekeeper and amount, proposed by the Retained Professional since it began working on these cases;

5.  A statement that the Retained Professional's client has (or has not) explicitly consented to all rate increases;

6.  The precise time period covered by the application;

7.  Time and service entries in the appropriate electronic format, discussed below, identifying participants, activities, and subject matters, arranged by specific project categories, including brief narrative summaries of each project and its benefit to the estate (non-working travel time should be a specific project category);[2]

8.  Time entries, in tenths of an hour, without "lumping" services together unless the aggregate amount of time spent for those lumped services does not exceed 0.5 hours;

9.  Explanations of tasks involving multiple individuals and the contributions of each individual; and

---

[2] Electronic data should mirror precisely the amounts sought in the interim or final fee application.  If write-offs or other adjustments are made to the timekeeping, in the exercise of billing judgment, the electronic data will need to reflect those adjustments.  Data submitted on time, complete and consistent with the amounts requested in the application, are all essential to the schedule outlined above.

10.      A detailed itemization of actual, necessary expenses.

***Means of Service Upon the Fee Examiner***

Interim Fee Applications, supporting data, and budgets should be provided in the appropriate electronic format (described below) by e-mail to adalton@gklaw.com, kstadler@gklaw.com, and bwilliam@gklaw.com.  In addition, please provide supporting data to the Office of the U.S. Trustee by e-mail to Guy.Gebhardt@usdoj.gov.  To minimize expense, please **do not** serve hard copies of fee applications and supporting materials.  Expenses for duplicating or mailing fee application materials will be recommended for disallowance.

***Electronic Data Format for Billing and Expense Detail***

All fee and expense detail should be submitted only in electronic format.  *YOU NEED NOT PROVIDE PAPER COPIES OF BILLS OR INVOICES.*

1.      For law firms:  simultaneously with the submission of any interim or final fee application, please provide electronic versions of any billing information in unedited LEDES™ (Legal Electronic Data Exchange Standard) file format.

2.      For non-law firms:  simultaneously with the submission of any interim or final fee application, Retained Professionals other than law firms should provide electronic versions of any billing information in Excel format using the fields and formats outlined on the attached *Required Format for the Submission of Fee Requests by Professionals Other Than Law Firms*.

3.      In the event that any documentation accompanying an Interim Fee Application contains internal codes, which could assist in evaluating the Interim Fee Application (such as codes for fee, project or expense categories), the professional should submit an explanation of how the codes relate to any fee, project or expense categories.

4.      When submitting a summary or cover sheet of all individuals who billed time in the Interim Fee Application, the summary should list the individuals alphabetically by last name within their particular category (e.g., all partners should be listed alphabetically).

***Expenses***

The parameters set forth here are not hard and fast rules, and the Fee Examiner will consider atypical reimbursement requests that are actual and necessary, especially in light of the hurricane and its aftermath.  With that in mind, the review and analysis generally will follow these principles:

### *Overhead and Administrative Charges*

- In general, overhead and administrative expenses are not reimbursable, nor are infrastructure improvements, rent, utilities, office equipment, furnishings, insurance, custodial fees, internal storage fees, and property taxes.

- Internal photocopying and printing are reimbursable at 10 cents per page for black and white and, where color copies are necessary, 50 cents per page.  Please provide vendor invoices for outside photocopying projects.  The initial monthly statements already reflect excessive copying charges.

- Charges for internal printing, converting documents to electronic formats, scanning charges, and charges to convert and upload documents are not reimbursable.

- Word processing, proofreading, secretarial and other support expenses are not reimbursable, nor overtime charges.

- Telephone charges—including cellular phone fees and subscriptions, text fees, data fees, and roaming charges, other than actual charges for multi-party calls incurred by counsel in connection with the cases—are not reimbursable.

- Subscription, publication, or library charges are not reimbursable, nor office supplies.

### *Travel Expenses*

- Neither the time nor travel expenses associated with traveling to other offices within a professional's own firm are reimbursable—except for travel to attend hearings, client or third party meetings, or to prepare for them.  Meetings should be conducted telephonically or by video conference wherever possible.

- Clothing, dry-cleaning, accessories, and travel sundries are not reimbursable.

- Local travel expenses (train, bus, subway, mileage, car service, taxi) to or from a professional's home are not reimbursable unless a professional *has worked at least four hours on these cases on the day for which the expense is sought* and works after 9:00 p.m. local time *on these cases*.

- For travel to or from airports, the maximum allowable amounts are outlined below.  In each instance, they represent charges from a city center to an appropriate airport:

| | |
|---|---|
| San Juan | $75.00 |
| New York | $100.00 |
| Chicago | $ 75.00 |
| San Francisco | $100.00 |
| Los Angeles | $100.00 |
| Other Cities | $ 75.00 |

- While professionals are free to travel in any manner they wish, the Fee Examiner will not recommend reimbursement for first class travel. Please provide receipts for any travel expense exceeding $300.00.

- Tips or other service charges are reimbursable only if part of another itemized expense (for example, taxi or car service gratuity included on the receipt). Documented wait staff tips are reimbursable up to the applicable expense caps outlined below. Housekeeping, valet, concierge, and bell services tips are not reimbursable.

- Hotel expenses should be limited to reasonable market rates for the locale, but will not be reimbursed above $500.00 for New York City and Washington, D.C., $350.00 for all other continental locations, and $300.00 for Puerto Rico. Taxes, service fees, and other charges are *included* in the reimbursement caps. Health or athletic facilities, in-room movies, or other entertainment charges are not reimbursable. In addition, in-room dining or other hotel food and beverage charges are subject to the meal guidelines in this memorandum.

*Meals*

- In-office meals are capped at $20.00 per person per meal and are reimbursable if:

  o The professional attends a necessary lunch-hour business meeting; or

  o The professional works *on these cases* after 8:00 p.m. and has worked more than four hours *on these cases* during the billing day for which meal reimbursement is sought.

- Coffee and snack charges are not reimbursable unless charged *in lieu of* in office meals allowable under the above-stated guideline.

- All catering orders must be supported by receipts or invoices. Catering invoices (internal and external) must indicate both the number of persons actually attending a business meeting and the amount charged per person.

- Out-of-office meals are capped at $40.00 per person per meal, reimbursable only if the professional has travelled to prepare for or attend a hearing, client or third party meeting, or other event. If a professional's attendance at a hearing, meeting, or other event is unnecessary, the Fee Examiner will recommend both the professional's fees and associated travel and meal expenses for disallowance.

- Regardless of the number of attendees, please provide receipts for any single meal costing more than $200.00 in the aggregate.

- Alcohol is never reimbursable.

Note that the meal reimbursement cap is *not* a per diem.  Applicants may be reimbursed for either the actual cost of the meal, or the reimbursement cap, whichever is less.

### *Other Expenses*

- Contract attorneys are reimbursable at their actual cost (that is, the rate charged by the agency or other provider placing the attorneys) without markup.  Professionals should submit detailed billing statements for all contract attorneys, who are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness as any other professional.

- In general, Retained Professionals should not submit reimbursement requests for any other firm's professional (legal, financial advisory, investment banking, or accounting) services.  If retention terms allow for sub-retentions, contract professionals must nonetheless submit detailed billing statements.  All professional fees are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness.

- Charges for electronic research services (Westlaw, Lexis-Nexis) should be accompanied by a general description of the research performed.  Please include invoices for research expenses with your submission.

- Expenses related to seeking committee or other representation (pitching) are not reimbursable, nor is client entertainment.

- Expenses incurred prior to the Retained Professional's *nunc pro tunc* retention date are not reimbursable unless otherwise permitted by the Court's order authorizing the Retained Professional's employment.

- Please provide receipts for all unusual or extraordinary expenses.

Please note that this list is not meant to be exhaustive, nor does it preclude individual explanations for unusual items—any of which may meet the section 316 and 317 standards or those suggested by the U.S. Trustee Guidelines and local rules.  These general statements reflect the Fee Examiner's starting point for expense review, not its conclusion.

### *Fee Examiner Analysis of Billing Detail*

The Fee Examiner's review is both quantitative and qualitative, including, at a minimum and without limitation, examining:

The hourly rates charged:

- Ensure that billing rates for each professional are the rates approved in the applicable engagement agreement, retention order, or supplement;

- Evaluate reasonableness of rates and the time spent in relation to the nature and character of the work and each professional's role and experience;

- Calculate blended rates;

- Evaluate multiple rates billed to particular projects; and,

- Eliminate charges for work performed by law students, clerks, or summer associates.

Hours billed:

- Evaluate hours billed against any limitations in the engagement agreement or retention order;

- Analyze average billable hours each day and identify extended periods of above average billing days;

- Calculate fees or billable hours for preparation of firm retention documents and fee applications as a percentage of total fees and hours—time spent preparing and editing time records is never compensable, nor is time spent preparing monthly fee statements (which should be minimal);

- Evaluate legal research to determine whether it is being conducted appropriately and at the lowest appropriate rate;

- Review clerical and administrative tasks to determine either the propriety of the billing rate for the task or whether the task is non-compensable;

- Ensure that time is billed in one-tenth of an hour increments unless a retention order permits another time increment;

- Identify vague task descriptions that do not permit a reviewer to determine the task's necessity;

- Identify improperly "lumped" or "block billed time";

- Ensure the use of properly segregated matter numbers for project categories, generally consistent with the following:

    o Debtor financing and cash collateral

    o Communications with creditors/debtors

10

- o Asset sales

- o Asset analysis and valuation

- o Due diligence-analysis of loan and other security documents

- o Lift stay or adequate protection matters

- o Assumption and rejection of leases or executory contracts

- o Avoidance actions (significant avoidance actions should have their own matter identifier)

- o Budgeting

- o Business operations

- o Case administration

- o Claims and claims objections

- o Governance matters

- o Retention applications and disclosures-self

- o Retention applications and disclosures-others

- o Fee applications-self

- o Fee applications-others

- o Litigation (each litigation matter should have its own matter identifier)

- o Non-working travel

- o Plan and disclosure statement

- o Tax issues (individual governmental entity audits should have their own matter identifiers)

- Identify meetings, hearings, or other events attended by an excessive number of timekeepers given the nature of the hearing or meeting and the necessity of multiple attendees;

- Ensure that non-working travel is billed only at 50 percent of the timekeeper's standard hourly rate;

- Identify all calculation or billing errors;

- Identify instances of duplication or overlap in work performed by multiple Retained Professionals;

- Ensure that tasks are appropriately delegated to the professional with the lowest suitable billing rate for the task performed;

11

- Evaluate time spent monitoring or overseeing others' work without substantial contribution to work product; and

- Waiting time or "standby time" is not reimbursable.

### *Fee Examiner Contacts*

We look forward to working you and trust that this memorandum will begin an open and productive dialogue with professionals subject to the Fee Examiner Order.  The Fee Examiner and counsel can be reached using the contact information below.  Please do not hesitate to contact the Fee Examiner's counsel if you have comments, questions or concerns about the fee review process.

Attorney:  Katherine Stadler
kstadler@gklaw.com

Data Specialist/Attorney:  W. Andrew Dalton
adalton@gklaw.com

Paralegal:  Kathleen Boucher
kboucher@gklaw.com

**Fee Examiner**

Brady C. Williamson
bwilliamson@gklaw.com
Office: (608) 284-2636 (direct)
Office: (608) 257-3199 (main)
Cell: (414) 510-9049

Godfrey & Kahn, S.C.
1 East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: (608) 257-3911

17979371.2

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | ) **PROMESA** |
| | ) **Title III** |
| | ) |
| **THE FINANCIAL OVERSIGHT AND** | ) **No. 17 BK 3283-LTS** |
| **MANAGEMENT BOARD FOR PUERTO RICO,** | ) |
| | ) **(Jointly Administered)** |
| | ) |
| As a representative of | ) |
| | ) |
| **THE COMMONWEALTH OF PUERTO RICO** | ) **Re: D.I. 1806** |
| *et al.,* | ) |
| | ) |
| **Debtors.**[1] | ) |
| | ) |

## ORDER ALLOWING BENNAZAR, GARCÍA & MILIÁN
## INTERIM COMPENSATION FOR SERVICES
## <u>RENDERED AND FOR REIMBURSEMENT OF EXPENSES</u>

This matter coming before the Court on the interim fee application of Bennazar,

García & Milán (Dkt. No. 1806, the "**Application**"), pursuant to section 316  of the *Puerto Rico*

*Oversight, Management and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§ 2101-2241,

and Rule 2016 of the Federal Rules of Bankruptcy Procedure, for the interim allowance of certain

fees and expenses, including all holdbacks, incurred by the Applicant for the specific period of

time set forth in the Application (the "**Compensation Period**"), filed in accordance with the *First*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "**Interim Compensation Order**") and the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Dkt. No. 1416] (the "**Fee Examiner Order**"); and the Court having reviewed the Application with respect to the Applicant and/or the report filed by the Fee Examiner with respect to the Application (*see* Dkt. No. _____), recognizing the circumstances described in the report; and the Court finding that:  (a) the Court has jurisdiction over this matter pursuant to PROMESA section 306(a); and (b) notice of the Application and the hearing thereon was adequate under the circumstances; and (c) all parties with notice of the Application have been afforded the opportunity to be heard on the Application, and no objections having been filed; now therefore

IT IS HEREBY ORDERED THAT:

1.       The Application is GRANTED on an interim basis, to the extent set forth on the attached **Exhibit A**.

2.       The Applicant is allowed (a) interim compensation for services rendered during the Compensation Period and (b) interim reimbursement for actual and necessary expenses incurred during the Compensation Period, each in the respective and adjusted amounts set forth on the attached **Exhibit A**, including any and all holdbacks.

3.       To the extent not already paid pursuant to the Interim Compensation Order, the Debtors are hereby authorized and directed to pay the Applicant—within 10 days of the entry of this order—100 percent of the fees and 100 percent of the expenses listed on **Exhibit A** hereto under the columns "Interim Fees Approved" and "Interim Expenses Approved," respectively, for services rendered and expenses incurred during the Compensation Period.

2

Dated:  December _____, 2017.


_____
THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE

3

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of PUerto Rico, et al.

PROMESA Title III No. 17 BK 3283-LTS

**Order - EXHIBIT A**

**First Interim Fee Period**

| Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Approved | Interim Expenses Approved |
|---|---|---|---|---|---|---|---|
| *Attorneys for the Official Committee of Retired Employees* | | | | | | | |
| Bennazar, Garcia & Milian C.S.P. [D.I. 1806] | 5/3/2017 - 9/30/2017 | $ 280,175.00 | $ 187.50 | $ 7,952.24 | $ 1,006.00 | $ 279,987.50 | $ 6,946.24 |

18169385.1