Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 1 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 1 of 19

Proposed Hearing Date: December 20, 2017 at 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

    Debtor.

PROMESA
Title III

Case No. 17 BK 4780-LTS

**This Urgent Motion relates only to PREPA, and shall be filed in Case No. 17 BK 4780-LTS**

---------------------------------------------------------------------x

## URGENT JOINT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ORDER CONCERNING RECEIPT AND USE OF PUERTO RICO ELECTRIC POWER AUTHORITY INSURANCE PROCEEDS

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Puerto Rico Electric Power Authority ("PREPA") in this Title III case pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of PREPA pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submit this urgent joint motion (the "Urgent Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this Title III case by section 301(a) of PROMESA, and consistent with and in furtherance of PROMESA section 305, requesting entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), providing that (i) no liens, encumbrances, priorities, or other claims by pre-existing creditors of PREPA may be asserted against a $50 million advance of insurance proceeds (the "Insurance Proceeds") payable under PREPA's property insurance (the "Property Insurance"); (ii) no third party shall be permitted to interfere with the transfer of the Insurance Proceeds to PREPA or PREPA's use of the Insurance Proceeds; and (iii) PREPA's insurers (the "Insurers") shall not be subject to claims of PREPA's existing creditors or third parties with respect to the advance made to PREPA on account of the Property Insurance. Additionally, the Oversight Board and AAFAF request the Court approve PREPA's proposed procedures to expedite the payment of future Property Insurance proceeds to PREPA.

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

1

PREPA intends to utilize the Insurance Proceeds to repair, replace or reconstruct damaged or destroyed property covered by the Property Insurance. Significantly, PREPA's creditors have no liens against PREPA's tangible insured property. Some of them have liens against net revenues. The estimated losses covered by the Property Insurance well exceed the coverage limits. PREPA is therefore entitled to receive and use the Insurance Proceeds for their intended purpose. The Oversight Board and AAFAF believe PREPA's creditors do not have a claim against the Insurance Proceeds, which are to be used for repair, replacement or reconstruction, and do not believe that PREPA is required to obtain the Court's approval to receive or utilize the Insurance Proceeds. Nonetheless, the Insurers are requiring that PREPA obtain an order from this Court approving the payment of the Insurance Proceeds to PREPA, as opposed to creditors or other stakeholders, prior to releasing any funds.

Receipt of the Insurance Proceeds is critical because PREPA is currently facing a liquidity crisis. PREPA's projected revenues were materially and negatively impacted by Hurricanes Irma and Maria. Repair and restoration costs related to storm-related damage have significantly strained PREPA's already fragile financial state. PREPA is working diligently with FEMA on reimbursement of those expenditures, but the timing and amount of reimbursements is unclear. Moreover, FEMA funds may not be utilized to pay for repairs for which insurance proceeds are available and anticipated.[3] PREPA does not forecast sufficient cash-flow to continue to operate and to continue to fund the cost of repairs from its own funds. Thus, PREPA's ability to continue its restoration and recovery efforts to repair damage depends, in part, on the receipt of the Insurance Proceeds.

---

[3] FEMA must deduct from its assistance any available insurance proceeds provided for eligible work. *See* 42 U.S.C. § 5155.

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Main Document Page 4 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 4 of 19

**Jurisdiction and Venue**

1. The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2. Venue is proper pursuant to PROMESA section 307(a).

3. The statutory predicate for the relief sought herein is Bankruptcy Code section 105(a), consistent with and in furtherance of PROMESA section 305, made applicable in this Title III case by PROMESA section 301(a).

**Background**

**I.      Hurricanes Irma and Maria Caused Significant Damage to PREPA**

4. On September 6, 2017, Hurricane Irma passed near the northeast shores of Puerto Rico, damaging the power grid and causing a loss of power to several parts of the Island.

5. Just as parts of the power grid were recovering from Hurricane Irma, on September 19-20, 2017, Hurricane Maria hit Puerto Rico, ravaging the Island and causing severe damage to, among other things, Puerto Rico's electric system and infrastructure: transmission lines were toppled, substations were damaged or destroyed and power lines and poles were knocked down, damaged or destroyed. PREPA's generation plants, though still standing, suffered structural and water damage.

6. Within days following Hurricane Maria, officials had aerial surveys conducted to determine, on a preliminary basis, the degree of damage suffered by the Island. Shortly thereafter, efforts began on the ground to remove debris and, among other things, restore power to the Island. PREPA, outside contractors, the U.S. Army Corps of Engineers, and brigades from Florida, New York, the American Public Power Association, and the Edison Electric Institute have all contributed to the ongoing restoration efforts.

3

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 5 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 5 of 19

7. Repairs to Puerto Rico's electric system and infrastructure are ongoing. At this time, approximately 61.40% of the power based on peak load has been restored on the Island.[4]

## II. Federal Disaster Relief Funds Are Not Sufficient To Sustain Repair Operations

8. Even before Hurricanes Irma and Maria hit Puerto Rico, the Island was facing a decade-long economic depression. In the aftermath of the hurricanes, which caused severe damage to key infrastructure systems, displaced thousands of families from their homes, and increased the risks of tropical diseases and environmental contamination, the extensive costs of recovery and repair only added to the Island's looming economic distress.

9. The Federal Emergency Management Agency ("FEMA") agreed to provide Puerto Rico with disaster relief funds. To date, FEMA has awarded over $1 billion for survivor assistance, emergency work, and debris removal on the Island.[5]

10. On September 23, 2017, Governor Ricardo Rosselló Nevares and the FEMA Regional Administrator executed a FEMA-State Agreement (the "FEMA Agreement") establishing the understandings, commitments, and conditions for assistance under which federal funds would be provided to the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities (including PREPA). Such federal funds are made available to provide emergency assistance, disaster relief, and/or recovery and restorative assistance in the form of grants. Pursuant to the FEMA Agreement, the Commonwealth is the sole recipient of funds provided by FEMA, and is tasked with transferring such funds to Commonwealth instrumentalities, public corporations, municipalities, and other eligible non-federal entities, including PREPA.

---

[4] The percentages of the recovery of certain services in Puerto Rico are provided by the Government of Puerto Rico, made available to the public at http://status.pr/. The stated percentage of recovery of electric power to the island is as of December 13, 2017.

[5] Value provided as of December 9, 2017, as provided by FEMA; available at https://www.fema.gov/news-release/2017/12/09/4339/more-1-billion-assistance-approved-puerto-rico.

4

11. On October 15, 2017, the Oversight Board, PREPA and AAFAF filed the *Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties* [Case No. 17-bk-3283; ECF No. 1444] (the "FEMA Funds Motion"), seeking an order clarifying that funds provided by FEMA and other federal agencies to Puerto Rico to fund critical needs of the Island's residents and essential repairs were, among other things, to be used solely for authorized recovery efforts and were not subject to any existing creditor or third-party claims.

12. On October 26, 2017, the Court granted the FEMA Funds Motion [Case No. 17-bk-3283; ECF No. 1547], finding that FEMA funds are not subject to any liens, encumbrances, priorities or other claims by pre-existing creditors, and such funds are not to be considered available funds, revenues, or resources for distribution in any restructuring case under Title III of PROMESA.

13. Importantly, while federal disaster-relief funds have been critical to PREPA's recovery efforts, FEMA must deduct from its assistance any available insurance proceeds provided for FEMA-eligible work.[6] As a result, PREPA does not receive funds from FEMA for the costs for which insurance proceeds are available and anticipated—and so does not have funds to make repairs unless insurance proceeds are actually received. PREPA is in the midst of a liquidity crisis, and lacks the financial resources necessary to cover the extensive repair costs. Absent receipt of the Insurance Proceeds, PREPA will be unable to continue its recovery efforts.

---

[6] *See* 42 U.S.C. § 5155 ("The President, in consultation with the head of each Federal agency administering any program providing financial assistance to persons, business concerns, or other entities suffering losses as a result of a major disaster or emergency, shall assure that no such person, business concern, or other entity will receive such assistance with respect to any part of such loss as to which he has received financial assistance under any other program or from insurance or any other source.").

5

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Main
Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 7 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main
Document Page 7 of 19

Completion of the substation and other repairs to be funded by the Insurance Proceeds is particularly critical to restoration of power across Puerto Rico. As a result of PREPA's liquidity crisis, absent the $50 million advance (and other grants or loans), these repair operations will come to a halt as FEMA funds do not cover these repairs, and PREPA does not project sufficient cash flow to continue to pay for them with its own funds.

### III. The Insurance Proceeds Are Not Available to Pay Creditors

14. PREPA's Property Insurance provides coverage to PREPA for damage to or loss of commercial property, losses resulting from business interruption, and expenses incurred to normalize PREPA's operations. The Property Insurance was in effect during the time Hurricanes Irma and Maria caused severe damage to PREPA, including property damage and losses caused by disruption to the business. Together with an excess policy (which excess policy does not cover business disruption or normalization expenses), the Property Insurance covers up to $550 million in losses.

15. On October 30, 2017, after engaging in initial damage assessments together with the Insurers' adjustors, PREPA submitted a preliminary claim summary to the Insurers, indicating losses well in excess of the coverage limits. Thereafter, in light of the urgent need to fund expenses relating to covered losses, including repair of its electric substations, PREPA negotiated with the Insurers for a $50 million preliminary advance payment on PREPA's claim. The Insurers, however, will not release the funds to PREPA due to concerns that a third party may lay claim to the funds, thereby exposing the Insurers to a risk of double payment. As explained below, the Oversight Board and AAFAF maintain that these concerns are without merit, but in order to expedite receipt of critical funds, have filed this Urgent Motion.

16. PREPA is entitled to the full benefits of the Insurance Proceeds: no other person or entity holds any interest in the damaged property, PREPA has not issued any certificates of insurance naming any other person or entity as a loss payee, and PREPA has not assigned the Property Insurance or its claims arising from the damage caused by the hurricanes to any person or entity. Therefore, no person or entity other than PREPA has any right, title, or interest in any of the proceeds to be paid on account of the damage suffered by PREPA, and PREPA is entitled to the Insurance Proceeds free and clear of any third-party claims.

17. Further, holders of bonds issued by PREPA (the "Bonds") pursuant to that certain trust agreement, dated as of January 1, 1974 (as amended and supplemented from time to time, the "Trust Agreement"), between PREPA and U.S. Bank National Association, as successor trustee, do not have a claim against the Insurers arising from the Insurers' payment of the Insurance Proceeds to PREPA. Section 707 of the Trust Agreement provides that insurance proceeds remitted to PREPA are to be applied to the repair, replacement or reconstruction of damaged or destroyed property, and not to payment of the Bonds.[7] In pertinent part, Section 707 states:

> All such policies shall be for the benefit of the Authority, shall be made payable to the Authority and shall be deposited with the Treasurer, and the Treasurer shall have the sole right to receive the proceeds of such policies and to collect and receipt for claims thereunder. The proceeds of any and all such insurance shall be deposited by the Treasurer in the name of the Authority in a Depositary
>
> . . .
>
> The proceeds of all insurance policies referred to in this Section shall be available for, and shall to the extent necessary be applied to, the repair, replacement or reconstruction of the damaged or

---

[7] In addition, under the terms of the Trust Agreement, bondholders are entitled only to payment of "Net Revenues" as the bondholders' right to payment is subordinated to the payment of "Current Expenses." Trust Agreement § 505. Absent the funds needed to restore the electric utility (including the Insurance Proceeds), PREPA will not have any meaningful revenues, let alone sufficient revenues that will cover necessary operating expenses.

7

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 9 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 9 of 19

> destroyed property, and shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund . . . .

Trust Agreement § 707.

18. PREPA will utilize the Insurance Proceeds to pay for expenditures in connection with the repair, replacement or reconstruction of substations or other damaged or destroyed property covered by the Property Insurance. The expenditures will be tracked, consistent with PREPA's internal policies and procedures, to ensure they are properly allocated to pay for repair, replacement or reconstruction of damaged or destroyed property covered by the Property Insurance. Thus, there are no creditors who may lay claim to the Insurance Proceeds, and the Insurers will not be required to double-pay any proceeds.

## IV. Future Payments of Insurance Proceeds

19. As noted above, although this Urgent Motion addresses an advance of $50 million of insurance proceeds, PREPA's Property Insurance covers up to $550 million in losses. In light of the massive losses caused by the hurricanes, PREPA expects to receive additional Insurance Proceeds payable under the Property Insurance.

20. To expedite PREPA's receipt of such Insurance Proceeds, the Oversight Board and AAFAF propose the following procedures with respect to additional payments to PREPA of insurance proceeds under the Property Insurance:

> a. PREPA, after consultation with the Oversight Board, shall provide to counsel for the Official Committee of Unsecured Creditors appointed in this case, the Oversight Board and to the Trustee under the Trust Agreement written notice (each, a "<u>Supplemental Insurance Payment Notice</u>") containing the following:
>
>> i. The amount of insurance proceeds the Insurers are prepared to remit to PREPA; and
>>
>> ii. A general statement of PREPA's contemplated usage of such insurance proceeds.

8

b. Recipients of a Supplemental Insurance Payment Notice shall have seven (7) calendar days from the date of service of a Supplemental Insurance Payment Notice (the "Review Period") to provide attorneys for the Oversight Board and AAFAF written notice of any objection to payments specified in the applicable Supplemental Insurance Payment Notice.

c. The objecting party shall have seven (7) calendar days from the end of the Review Period (such period, the "Objection Notice Period") to file with the Court, with a copy provided to attorneys for the Oversight Board and AAFAF, a motion to challenge such payment.

d. During the Objection Notice Period, PREPA and any objecting party shall meet and confer (in person or telephonically) to attempt to resolve, in whole or in part, any objections to payments specified in the applicable Supplemental Insurance Payment Notice.

e. To the extent a motion to challenge any payment specified in a Supplemental Insurance Payment Notice is filed with the Court, the Court shall hear argument on any such motion as soon as the Court's calendar permits.

f. If no objection challenging a Supplemental Insurance Payment Notice is provided to the Oversight Board and AAFAF before the Initial Notice Deadline expires, the terms of the Proposed Order shall be deemed to apply to the Insurers and PREPA with respect to the payment and uses of Insurance Proceeds specified in the Supplemental Insurance Payment Notice, and such additional payments under the Property Insurance specified in the Supplemental Insurance Payment Notice, as applicable.

## Relief Requested

21. By this Urgent Motion, the Oversight Board and AAFAF seek an order confirming that, with respect to PREPA's receipt and use of the Insurance Proceeds, (i) no liens, encumbrances, priorities, or other claims by pre-existing creditors of PREPA may be asserted against the Insurance Proceeds; (ii) no third party shall be permitted to interfere with the transfer of the Insurance Proceeds to PREPA or PREPA's use of the Insurance Proceeds; and (iii) the Insurers shall not be subject to claims of PREPA's existing creditors or third parties with respect to the advance made to PREPA on account of the Property Insurance. Additionally, the Oversight Board and AAFAF request the Court approve PREPA's proposed procedures in connection with future payments of insurance proceeds payable under the Property Insurance.

9

The Oversight Board and AAFAF request that this Urgent Motion be heard at the next omnibus hearing, which is currently scheduled to take place on December 20, 2017 or, in any event, as soon as the Court's calendar will permit, with responses to the Urgent Motion due by December 15, 2017 and replies due by December 18, 2017.

22. Bankruptcy Code section 363, governing the use of property, does not apply to the Title III case. Nor do the Oversight Board and AAFAF believe that any other provision of Title III requires PREPA to obtain Court approval to receive and use the Insurance Proceeds remitted pursuant to the Property Insurance. Moreover, to the extent required under PROMESA section 305, the Oversight Board has consented to the relief requested herein. Nonetheless, to ease concerns voiced by the Insurers and facilitate the payment of the Insurance Proceeds to PREPA, and in furtherance of PROMESA section 305, the Oversight Board and AAFAF seek entry of the requested order pursuant to Bankruptcy Code section 105(a).

23. Section 105(a) of the Bankruptcy Code provides, in relevant part, that: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), the Court has expansive equitable powers to fashion any order or decree that carries out PROMESA. *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a

10

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Main
Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 12 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main
Document Page 12 of 19

manner consistent with the bankruptcy laws."). Here, in furtherance of PREPA's recovery, the Oversight Board has agreed that the Court's approval of this Urgent Motion is appropriate pursuant to PROMESA Section 305.[8]

24. As explained above, the Insurers require assurances that the Insurance Proceeds remitted to PREPA will not be subject to creditor claims, and that creditors may not otherwise pursue claims against the Insurers on account of covered losses. The relief sought herein is similar in nature to that previously approved by the Court in connection with the FEMA Funds Motion.

25. No party other than PREPA may claim an interest in the Insurance Proceeds because PREPA is the named insured under the Property Insurance, and PREPA has not authorized insurance payments to be made to any other person or entity as a loss payee. Moreover, as set forth in section 707 of the Trust Agreement, the Property Insurance is for the benefit of PREPA, and the Insurance Proceeds are to be utilized by PREPA to cover costs related to the repair, replacement or reconstruction of damaged or destroyed property. Thus, creditors do not even have a prepetition claim to the insurance proceeds. PREPA urgently needs these funds, and respectfully requests the Court's assistance in entering an order providing the Insurers with comfort that they may release the Insurance Proceeds to PREPA.

### Urgent Motion Certification

26. Pursuant to Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico and the Third Amended Notice, Case Management and Administrative Procedures [Case No. 17-bk-3283; ECF No. 1512-1]

---

[8] Section 305 of PROMESA generally provides that the Court may not interfere with any of the property or revenues of a Title III debtor absent consent of the Oversight Board.

11

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 13 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 13 of 19

established in this Title III case, the Oversight Board and AAFAF certify that there is a true need for urgent relief and that such urgency was not created through any lack of due diligence.

27. Finally, no prior request for the relief sought in this Urgent Motion has been made to this or any other court.

**WHEREFORE** the Oversight Board and AAFAF respectfully request the Court enter the Proposed Order attached as **Exhibit A**, granting the relief requested herein and all other relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 14 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 14 of 19

Dated: December 13, 2017

Respectfully submitted,

| | |
|---|---|
| /s/ Nathan A. Haynes | /s/ Martin J. Bienenstock |
| Nancy A. Mitchell (Admitted *Pro Hac Vice*) | Martin J. Bienenstock (Admitted *Pro Hac Vice*) |
| Nathan A. Haynes (Admitted *Pro Hac Vice*) | Paul V. Possinger (Admitted *Pro Hac Vice*) |
| **GREENBERG TRAURIG LLP** | Ehud Barak (Admitted *Pro Hac Vice*) |
| MetLife Building | Maja Zerjal (Admitted *Pro Hac Vice*) |
| 200 Park Avenue | PROSKAUER ROSE LLP |
| New York, NY 10166 | Eleven Times Square |
| Tel: (212) 801-9200 | New York, NY 10036 |
| Fax: (212) 801-6400 | Tel: (212) 969-3000 |
| Email: mitchelln@gtlaw.com | Fax: (212) 969-2900 |
| haynesn@gtlaw.com | |
| | *Attorneys for the Financial Oversight and Management Board as Representative for the Debtors* |
| -and- | |
| David D. Cleary (admitted *pro hac vice*) | |
| Kevin D. Finger (admitted *pro hac vice*) | /s/ Hermann D. Bauer |
| Greenberg Traurig, LLP | Hermann D. Bauer |
| 77 West Wacker Drive | O'NEILL & BORGES LLC |
| Suite 3100 | 250 Muñoz Rivera Ave., Suite 800 |
| Chicago, IL 60601 | San Juan, PR 00918-1813 |
| Phone: 312.456.8400 | Tel: (787) 764-8181 |
| Fax: 312.456.8435 | Fax: (787) 753-8944 |
| Email: clearyd@gtlaw.com | |
| fingerk@gtlaw.com | *Co-Attorneys for the Financial Oversight and Management Board as Representative for the Debtors* |
| *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, as Fiscal Agent for PREPA* | |

13

# Exhibit A

**Proposed Order**

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Main
Document Page 16 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main
Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 16 of 19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

    Debtor.

PROMESA
Title III

Case No. 17 BK 4780-LTS

**This Order relates only to PREPA, and shall be filed in Case No. 17 BK 4780-LTS**

---------------------------------------------------------------------x

ORDER GRANTING URGENT JOINT MOTION OF FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY
AUTHORITY FOR ORDER CONCERNING RECEIPT AND USE OF
<u>PUERTO RICO ELECTRIC POWER AUTHORITY INSURANCE PROCEEDS</u>

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 17 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 17 of 19

Upon consideration of the *Urgent Joint Motion of Financial Oversight and Management Board For Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority For Order Concerning Receipt and Use of Puerto Rico Electric Power Authority Insurance Proceeds* (the "Urgent Motion"),[2] filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Puerto Rico Electric Power Authority ("PREPA") in this Title III case pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of PREPA pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017; and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found the relief requested in the Urgent Motion is in the best interests of PREPA, its creditors, and other parties in interest; and the Court having found the Oversight Board and AAFAF provided adequate and appropriate notice of the Urgent Motion under the circumstances and no other or further notice is required; and upon the record herein, after due deliberation thereon, the Court having found good and sufficient cause exists for granting the relief as set forth herein,

**IT IS HEREBY FOUND, DETERMINED, AND ORDERED:**

1. The Urgent Motion is GRANTED as set forth herein.

2. The Insurance Proceeds shall not be subject to any liens, encumbrances, priorities, or other claims by pre-existing creditors in any form whatsoever, and such funds shall not be

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Urgent Motion.

2

TCO 362809930v15

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 18 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 18 of 19

considered available for the payment of any creditor claims in connection with PREPA's restructuring case under Title III of PROMESA.

3. No creditor of PREPA or other party shall assert a lien against or priority to or shall otherwise exercise any remedies against the Insurance Proceeds or be entitled to take any enforcement action against such funds or interfere with the transfer of the Insurance Proceeds to PREPA or PREPA's use of the Insurance Proceeds.

4. The Insurers shall not be subject to claims of PREPA's existing creditors or third parties with respect to the payment of the Insurance Proceeds to PREPA.

5. With respect to any future payments of insurance proceeds payable to PREPA on account of the Property Insurance:

   a. PREPA, after consultation with the Oversight Board, shall provide to attorneys for the Official Committee of Unsecured Creditors appointed in this case, the Oversight Board and to the Trustee under the Trust Agreement written notice (each, a "Supplemental Insurance Payment Notice") containing the following:

      i. The amount of insurance proceeds the Insurers are prepared to remit to PREPA; and

      ii. A general statement of PREPA's contemplated usage of such insurance proceeds.

   b. Recipients of a Supplemental Insurance Payment Notice shall have seven (7) calendar days from the date of service of a Supplemental Insurance Payment Notice (the "Review Period") to provide attorneys for the Oversight Board and AAFAF written notice of any objection to payments specified in the applicable Supplemental Insurance Payment Notice.

   c. The objecting party shall have seven (7) calendar days from the end of the Review Period (such period, the "Objection Notice Period") to file with the Court, with a copy provided to attorneys for the Oversight Board and AAFAF, a motion to challenge such payment.

   d. During the Objection Notice Period, PREPA and any objecting party shall meet and confer (in person or telephonically) to attempt to resolve, in whole or in part, any objections to payments specified in the applicable Supplemental Insurance Payment Notice.

3

Case:17-03283-LTS Doc#:2004-1 Filed:12/14/17 Entered:12/14/17 20:17:55 Desc: Exhibit 1 - Urgent Joint Motion (PREPA Docket No. 491) Page 19 of 19

Case:17-04780-LTS Doc#:491 Filed:12/13/17 Entered:12/13/17 19:36:06 Desc: Main Document Page 19 of 19

  e. To the extent a motion to challenge any payment specified in a Supplemental Insurance Payment Notice is filed with the Court, the Court shall hear argument on any such motion as soon as the Court's calendar permits.

  f. If no objection challenging a Supplemental Insurance Payment Notice is provided to the Oversight Board and AAFAF before the Initial Notice Deadline expires, the terms of the Proposed Order shall be deemed to apply to the Insurers and PREPA with respect to the payment and uses of Insurance Proceeds specified in the Supplemental Insurance Payment Notice, and such additional payments under the Property Insurance specified in the Supplemental Insurance Payment Notice, as applicable.

6. Immediately upon entry by the Court of this Order, AAFAF, and the Oversight Board, as PREPA's representative in the Title III case, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted herein.

7. The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Order.

Dated:_____

                _____
                HON. LAURA TAYLOR SWAIN
                United States District Judge

TCO 362809930v15