**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>   as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*, <br><br>   Debtors.[1] | PROMESA <br> Title III <br><br> No. 17 BK 3283-LTS <br><br> (Jointly Administered) |
| IN RE: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>   as representative of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, <br><br>   Debtor. | PROMESA <br> Title III <br><br> No. 17 BK 3566-LTS <br><br> **This filing relates only to Debtor Employees Retirement System of the Commonwealth of Puerto Rico** |

**LIMITED RESPONSE OF THE BANK OF NEW YORK MELLON,
AS FISCAL AGENT, TO THE PUERTO RICO FUNDS' MOTION
CONDITIONING THE AUTOMATIC STAY ON THE CONTINUATION
OF ERS BONDHOLDER PROTECTIONS OR, ALTERNATIVELY,
<u>TO ENFORCE THE COURT'S JULY 17, 2017 ORDER</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Bank of New York Mellon ("BNYM"), as fiscal agent, through its undersigned counsel, files this limited response to the *Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections or, Alternatively, to Enforce the Court's July 17, 2017 Order* [ECF No. 1866] (the "Motion") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. BNYM is the fiscal agent under the Pension Funding Bond Resolution (as supplemented, the "Resolution"), adopted on January 24, 2008, by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), pursuant to which ERS issued several series of pension funding bonds (collectively, the "Bonds"). As fiscal agent, BNYM has a limited, administrative role: when it receives funds from ERS, it distributes them to the Bondowners.[2]

2. This limited response serves two purposes.

    a. *First*, insofar as the Court grants the Motion, BNYM requires certain technical clarifications regarding its role and responsibilities in making *pro rata* distributions to holders of current interest Bonds and capital appreciation Bonds (as requested by the Puerto Rico Funds). To that point, BNYM understands that the Puerto Rico Funds will submit a revised proposed order containing necessary clarifications.

    b. *Second,* BNYM responds to certain misstatements in ERS's opposition (the "Opposition") to the Motion. ERS unnecessarily and improperly attacks BNYM's performance as fiscal agent with regard to the distribution of interest due and payable

---

[2] Capitalized terms used but not defined in this limited response have the meanings given in the Motion or the Resolution, as the context requires.

on November 1, 2017. Although ERS's allegations are not germane to the ultimate issues raised by the Motion, they demand a response.

## LIMITED RESPONSE

I. **ANY ORDER REQUIRING *PRO RATA* DISTRIBUTIONS TO HOLDERS OF DIFFERENT CLASSES OF BONDS SHOULD CLARIFY THAT SUCH PAYMENTS ARE MADE AS ADEQUATE PROTECTION PAYMENTS RATHER THAN INTEREST.**

3. ERS issued two types of Bonds under the Resolution: (i) senior "term" or "current interest" bonds (the "CIBs") in the aggregate principal amount of $2,657,870,000.00; and (ii) senior capital appreciation bonds (the "CABs") in the aggregate principal amount of $289,778,342.65. Interest on the CIBs is payable on a current basis on fixed dates prior to maturity. Interest on the CABs is "capitalized," or added to the principal balance, to be paid only at maturity or earlier redemption.

4. The Motion seeks an order requiring BNYM to distribute any future adequate protection payments ratably to the holders of CIBs (based upon actual monthly interest) and CABs (based upon accreted monthly interest). *See* Motion ¶ 5 n. 12.

5. Because interest is not presently payable to holders of the CABs, BNYM cannot make distributions to holders of the CABs without clear direction from the Court as to the allocation of adequate protection payments to each class of holder per $1,000.00 of principal amount of the Bonds. Additionally, any such order should clarify that all parties' rights are reserved as to the ultimate characterization of such payments as principal or interest and that BNYM is protected from liability in receiving and distributing funds in accordance with such order. BNYM understands that the Puerto Rico Funds will submit a revised proposed order prior to the hearing on the Motion reflecting these clarifications.

## II. BNYM PROPERLY DISTRIBUTED THE NOVEMBER 1 INTEREST PAYMENT.

6. As part of its opposition to the Motion, ERS unnecessarily and improperly attacks BNYM's conduct as fiscal agent in distributing the November 1 interest payment to the intended recipients on a timely basis and in accordance with the governing Resolution. Although ERS's allegations as to BNYM are not relevant to the relief requested by the Puerto Rico Funds, BNYM is compelled to respond to the allegations and clarify the record in order to avoid any implication that the Fiscal Agent erred in distributing the November 1 interest payment in the ordinary course.

7. BNYM and ERS are bound by the terms of their contract—the Resolution. *See* Resolution §§ 102, 801. Under the Resolution, BNYM generally is required to pay interest on the Bonds as and when due and payable so long as ERS has deposited funds sufficient to make such payment. *See generally* Resolution §§ 504-505, 701.

8. In accordance with the Resolution and consistent with the parties' past practice, ERS transferred the sum of $13,876,582.48 to BNYM on October 18, 2017.[3] In accordance with the Resolution, BNYM distributed these funds to the Bondowners when due and payable on November 1, 2017. Chang Decl. ¶¶ 7-8. Neither ERS nor AAFAF directed BNYM to withhold the scheduled interest payment prior to the November 1 payment date. *Id.* ¶ 9. Indeed, neither ERS nor AAFAF objected to the payment in any manner until November 17, 2017—a full thirty days after the payment was remitted to BNYM.[4] *Id.* ¶ 10.

---

[3] *Declaration of (Alex) Tae-Ho Chang in Support of the Limited Response of The Bank of New York Mellon, as Fiscal Agent, to the Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections or, Alternatively, to Enforce the Court's July 17, 2017 Order* (the "Chang Decl."), attached hereto as **Exhibit A**, at ¶ 6.

[4] By comparison, when AAFAF believed that ERS's May 2017 debt service payment was sent in error, ERS submitted a requisition on the same day demanding that the funds be returned. No similar objection was raised here.

9. ERS's voluntary payment of interest to BNYM on October 18, 2017, in accordance with the Resolution and the Joint Stipulation, and clearly intended to fund the interest payment due on November 1, 2017, constituted complete authorization to distribute that amount in accordance with the Resolution. Far from requiring any second confirmation from ERS that funds should be distributed to the Bondowners, the Resolution requires BNYM to make timely distributions. *See*, *e.g.*, Resolution § 505.4. That ERS belatedly decided—thirty days after remitting payment to BNYM and sixteen days after BNYM performed its administrative duties in accordance with the Resolution—that it wished the distribution had not been made does not retroactively make BNYM's distribution erroneous.

10. ERS now claims that, despite remitting funds to BNYM, ERS did not intend to make a voluntary interest payment.[5] In attempting to blame BNYM for what may have been a mistake by ERS, ERS seeks to impose duties that do not exist under the Resolution.[6] BNYM has "only such duties as are specifically set forth in the Resolution, and no implied covenants or obligations shall be read into [the] Resolution against [BNYM]." Resolution § 802. ERS's theory would import additional terms into the Resolution, requiring BNYM to contact ERS after receiving each monthly payment and obtain written confirmation that ERS actually intended to make the payment. This obligation to police ERS's conduct and ensure that ERS really did not remit any payment in error does not exist under the Resolution and cannot be imposed by implication. To the contrary, BNYM has the right to rely on the terms of the Resolution and to assume that, when ERS voluntarily sends an interest payment to BNYM, ERS

---

[5] *See Declaration of Luis M. Collazo Rodriguez in Support of ERS's Opposition to the Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections or, Alternatively, to Enforce the Court's July 17, 2017 Order* [No. 17-3283-LTS, ECF No. 1978-1] ("Collazo Decl.") ¶ 3.

[6] It is not clear when ERS determined that the payment was a mistake. There is no evidence that ERS made its determination prior to the November 17 letter to BNYM. And, in any event, nothing was communicated to BNYM before November 17.

intends that it be distributed in accordance with the Resolution. *See* Resolution § 803.1 (BNYM may conclusively rely and shall be fully protected in acting upon any paper or document believed by it to be genuine). If ERS did not want to make an interest payment to the Bondowners, it should not have made that payment to BNYM, whose primary administrative function is distributing payments from ERS to the Bondowners or, at a very minimum, contacted BNYM prior to the payment date to state that ERS paid BNYM in error and/or did not want the payment made. In the absence of such direction, BNYM merely performed its administrative function as required by the parties' agreement.

11. ERS also argues that BNYM made the November 1 interest payment in contravention of paragraph D of the Joint Stipulation. *See* Opposition ¶ 12. Reference to the Joint Stipulation in this context is improper and mistaken. *First*, it is improper because BNYM is not a party to the Joint Stipulation and it is not binding upon BNYM.[7] *Second*, even were the Stipulation binding upon BNYM, nothing in the Joint Stipulation precludes ERS from making voluntary payments after October 1, 2017, and nothing in the Joint Stipulation alters or limits BNYM's rights and obligations as fiscal agent when it receives a voluntary payment from ERS. Indeed, ERS admits that it has authority to make voluntary payments to the Bondowners, *see* Opposition ¶ 13, and that it intended to transfer funds to BNYM in the amount necessary to

---

[7] Despite the identification of BNYM as a party to the Joint Stipulation in the introductory paragraph, neither BNYM nor its counsel is a signatory. *See* Joint Stipulation at 8-11; *see also* Declaration of Eric A. Schaffer in Support of the Limited Response of The Bank of New York Mellon, as Fiscal Agent, to the Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections or, Alternatively, to Enforce the Court's July 17, 2017 Order (the "Schaffer Decl."), attached hereto as **Exhibit B**, at ¶ 5. In fact, BNYM was excluded from negotiations concerning the Joint Stipulation, and the Joint Stipulation was filed without BNYM's knowledge or approval. Schaffer Decl. ¶¶ 6-7. BNYM's counsel promptly advised the parties to the Joint Stipulation of this error and reserved all rights with regard to the Joint Stipulation and, as appropriate, the Court's order approving the same. *Id.* ¶ 8. After filing the Opposition, counsel to AAFAF verbally acknowledged to counsel to BNYM that AAFAF erred in stating in the Opposition that BNYM "was one of the four parties . . . that filed Notice of the Stipulation and asked the Court to approve it." *See* Opposition ¶ 12 n. 9. BNYM is not bound by the agreements of others, and its rights under the Resolution, as well as its obligations to make distributions, cannot be altered thereby.

make the November 1 interest payment. *See* Opposition ¶ 12. However, ERS never communicated to BNYM its alleged intent not to make a payment to the Bondowners prior to the applicable payment date. *See* Chang Decl. ¶¶ 9-10. The Resolution does not obligate BNYM to read minds. *Cf. United States v. Ladd*, 885 F.2d 954, 961 (1st Cir. 1989) ("[R]obes and gavels are the tools of a jurist's trade—not tea leaves or crystal balls.").

12. If there is any question of fact as to the foregoing and these issues become relevant in connection with this Motion or any other contested matter, BNYM reserves its right to seek discovery of ERS and AAFAF.

## CONCLUSION

13. For the foregoing reasons, insofar as the Court grants the Motion and provides for ratable adequate protection payments to holders of the CIBs and CABs, BNYM respectfully requests that the Court's order: (i) provide clear direction as to the allocation of adequate protection payments to each class of holder per $1,000.00 of principal amount of the Bonds; (ii) clarify that all parties' rights are reserved as to the ultimate characterization of such payments as principal or interest; and (iii) provide that BNYM is protected from liability in receiving and distributing funds in accordance with such order.

*[The remainder of this page was intentionally left blank.]*

| | |
|---|---|
| Dated: December 15, 2017<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>SEPULVADO & MALDONADO, PSC |

By: */s/ Elaine Maldonado-Matías*
Elaine Maldonado-Matías
USDC-PR No. 217309

*/s/ Albéniz Couret-Fuentes*
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207

*/s/ José Javier Santos Mimoso*
José Javier Santos Mimoso
USDC-PR Bar No. 208207
AON Center, Suite 990
304 Ponce de León Ave.
San Juan, P.R. 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: emaldonado@smlawpr.com
Email: acouret@smlawpr.com
Email: jsantos@smlawpr.com

REED SMITH LLP
Eric A. Schaffer (*pro hac vice*)
Luke A. Sizemore (*pro hac vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: eschaffer@reedsmith.com
Email: lsizemore@reedsmith.com

REED SMITH LLP
Kurt F. Gwynne (*pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7550
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com

*Counsel for The Bank of New York Mellon, as fiscal agent*