**Hearing Date: March 7, 2018 at 9:30 a.m. AST**
**Objection Deadline: January 4, 2018** (for parties other than the Fee Examiner)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## SUMMARY COVER TO THE FIRST INTERIM APPLICATION OF SEGAL CONSULTING FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ACTUARIES AND CONSULTANTS TO THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF <u>PUERTO RICO FROM JUNE 27, 2017 THROUGH SEPTEMBER 30, 2017</u>

| | |
|---|---|
| Name of Applicant: | Segal Consulting |
| Authorized to Provide Services To: | The Official Committee of Retired Employees of the Commonwealth of Puerto Rico |
| Retention Date: | June 27, 2017 |

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| Period for which compensation is sought: | June 27, 2017 through September 30, 2017 |
| Monthly Fee Statements subject to the request: | June-July 2017<br>August 2017<br>September 2017 |
| Amount of interim compensation sought as actual, reasonable, and necessary: | $223,475.00 |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $5,305.47 |
| Are your fee or expense totals different from the sum of previously served monthly statements? | No. |
| Blended rate in this application for all attorneys: | N/A |
| Blended rate in this application for all timekeepers: | $521.58 |

This is an *interim* **application.**

The total time expended for Segal's fee application preparation for the Interim Fee Period is approximately 20 hours and the corresponding compensation requested is approximately $11,000.

| | |
|---|---|
| Date of Order Approving Employment: | August 10, 2017 |
| Total compensation approved by interim order to date: | None |
| Total expenses approved by interim order to date: | None |
| Total compensation paid to date: | None |
| Total expenses paid to date: | None |
| Total compensation subject to objection: | None |
| Total expenses subject to objection: | None |
| Number of Professionals Included in this Application: | 14 |
| Difference Between Fees Budgeted and Compensation Sought: | N/A |
| Number of Professionals Billing Fewer than 15 Hours to this Case: | 5 |

Rates Higher than Those Disclosed at Retention:        None

Objection Deadline:                                    January 4, 2018 (for parties other than the Fee Examiner)

| Name | Title | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|
| Bohlman, Katherine R. | Actuary Associate | Pension | $320.00 | 15.80 | $5,056.00 |
| Bridges, Geoffrey W. | Actuary | Pension | $450.00 | 48.90 | $22,005.00 |
| Clark, Melanie C. | Senior Health Consultant | Health | $380.00 | 3.60 | $1,368.00 |
| Janus, Paul J | Actuary | Health | $420.00 | 36.60 | $15,372.00 |
| Kovach, Patricia L. | Analyst | Health | $250.00 | 23.20 | $5,800.00 |
| Levy, Thomas | Senior Vice President | Pension | $890.00 | 8.00 | $7,120.00 |
| Libauskas, Jacob | Actuary | Pension | $370.00 | 24.70 | $9,139.00 |
| Nicholl, Kim M. | Senior Vice President | Pension | $680.00 | 131.00 | $89,080.00 |
| Nolan, James | Vice President & Actuary | Pension | $400.00 | 1.80 | $720.00 |
| Noonan, Mark J. | Vice President & Consulting Actuary | Health | $550.00 | 0.90 | $495.00 |
| Reusz, Dan | Senior Analyst | Pension | $300.00 | 1.20 | $360.00 |
| Strom, Matthew A. | Vice President & Actuary | Pension | $530.00 | 39.90 | $21,147.00 |
| Tabernacki, Patryk | Senior Analyst | Pension | $290.00 | 33.50 | $9,715.00 |
| Wohl, Stuart | Senior Vice President Regional Manager | Health | $590.00 | 75.10 | $44,309.00 |
| **Sub-Total** | | | | **444.20** | **$231,686.00** |
| Less 50% Discount on Non-working Travel Matter | | | | | ($8,211.00) |
| **Total:** | | | | | **$223,475.00** |

## FEE EXAMINER'S REQUESTED ATTACHMENTS TO FEE APPLICATIONS

**List of Professionals** – Exhibit E
**Compensation by Project Category** – Exhibit G
**Expense Summary** – Exhibit F
**List of Professionals by Matter** – Exhibit H
**Detailed Time Records** – Exhibit H
**Detailed Expense Records** – Exhibit I
**Customary and Comparable Disclosures** – Exhibit D
**Budget & Staffing Plan –** Submitted to the Fee Examiner under separate cover

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | |
| Debtors.[1] | |

## FIRST INTERIM APPLICATION OF SEGAL CONSULTING FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ACTUARIES AND CONSULTANTS TO THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO FROM JUNE 27, 2017 THROUGH SEPTEMBER 30, 2017

To the Honorable United States District Court Judge Laura Taylor Swain:

Segal Consulting ("**Segal**"), actuaries and consultants for The Official Committee of

Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") in the above-

captioned Title III cases ("**Title III Cases**"), hereby submits this first application ("**Application**")

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

for an award of interim compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services, for the period from June 27, 2017 through September 30, 2017 (the "**Interim Period**").  Segal submits this Application pursuant to sections 316 and 317 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("**PROMESA**"),[2] 48 U.S.C. §§ 2176, 2177; sections 105(a) and 503(b) of the Bankruptcy Code,[3] 11 U.S.C. § 503(b); Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")[4]; Rule 2016-1 of the Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "**Local Rules**")[5]; the Court's *Order Authorizing the Employment of Segal Consulting as Actuary and Consultants for the Committee of Retired Employees* (the "**Retention Order**") [Dkt. No. 1002]; the Court's *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") [Dkt. No. 1715]; the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"); and the Fee Examiner's November 10, 2017 Memorandum (the "**Fee Examiner Memorandum**").  In support of the Application, Segal submits the Certification of Kim Nicholl (the "**Nicholl Certification**"), attached hereto as **Exhibit A**, and respectfully represents as follows:

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] The Bankruptcy Code is codified at 11 U.S.C. §§ 101–1532.  Unless otherwise noted, all Bankruptcy Code sections cited in the Application are made applicable to these Title III Cases pursuant to section 301(a) of PROMESA.

[4] All Bankruptcy Rules referenced in this Application are made applicable to these Title III Cases pursuant to section 310 of PROMESA.

[5] The Local Rules are made applicable here by the Court's *Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to These Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief* [Dkt. No. 249].

## Preliminary Statement

1.    On August 10, 2017, Segal was retained to represent the Retiree Committee, effective June 27, 2017.  A copy of Segal's engagement letter is attached hereto as **Exhibit B**.  The Retiree Committee represents approximately 160,000 retired employees of the Commonwealth and various governmental bodies and their surviving beneficiaries, including Puerto Rico's retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories (the "**Retirees**").  The Retirees' pensions are underfunded by at least $49 billion.  They are the largest group of creditors in these Title III Cases.

2.    During the Interim Period, Segal performed a variety of actuarial and consulting services that were necessary and appropriate for the efficient and economical resolution of the Retiree Committee's interests in the Title III Cases, including, among other things: meeting and conferring with the Retiree Committee, advising the Retiree Committee regarding proposed modifications to Retirees' pension, healthcare, and other accrued retirement benefits, and advising the Retiree Committee with respect to employee benefits and litigation related to the Retirees' benefits.

3.    Segal's work during the Interim Period was necessary for, and beneficial to, the Retirees and served to ensure that the interests of the Retirees were properly represented and safeguarded in these Title III Cases.  Segal respectfully requests that the Court award the fees and expenses requested in this Application.

## Jurisdiction

4.    The United States District Court for the District of Puerto Rico (the "**Court**") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

5.    Venue is proper pursuant to PROMESA section 307(a).

6

6.     Segal makes this Application pursuant to PROMESA sections 316 and 317, Bankruptcy Code sections 105(a) and 503(b), Bankruptcy Rule 2016, Local Rule 2016-1, the Retention Order, the Interim Compensation Order, and the UST Guidelines.

## **Background**

7.     On May 3, 2017, the Commonwealth of Puerto Rico (the "**Commonwealth**"), by and through the Financial Oversight and Management Board for Puerto Rico (the "**FOMB**"), as the Commonwealth's representative pursuant to section 315(b) of PROMESA, filed a petition with the Court under title III of PROMESA.

8.     On May 5, 2017, the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), by and through the FOMB, as COFINA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

9.     On May 21, 2017, the Puerto Rico Highways and Transportation Authority ("**HTA**"), by and through the FOMB, as HTA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

10.    On May 21, 2017, the Employees Retirement System for the Commonwealth of Puerto Rico ("**ERS**"), by and through the FOMB, as ERS's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

11.    On July 3, 2017, the Puerto Rico Electric Power Authority ("**PREPA**"), by and through the FOMB, as PREPA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

12.    Through Orders of this Court, the Commonwealth, COFINA, HTA, ERS, and PREPA Title III Cases are jointly administered for procedural purposes only, pursuant to PROMESA section 304(g) and Bankruptcy Rule 1015.  [*See* Dkt. Nos. 242, 537, 1417.]

13.     On June 15, 2017, U.S. Trustee, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Retiree Committee, consisting of the following nine individuals: Blanca Paniagua, Carmen Nunez, José Marin, Juan Ortiz, Lydia Pellot, Marcos A. Lopez, Miguel Fabre, Milagros Acevedo, and Rosario Pacheco.  [Dkt. No. 340.]

### Segal's Retention and Fee Request

14.     On June 27, 2017, the Retiree Committee elected to employ Segal as its actuarial consultant.  A copy of the Engagement Letter is attached hereto as **Exhibit B**.

15.     On July 19, 2017, the Retiree Committee filed its *Application for an Order Approving the Employment of Segal* [Dkt. No. 671] (the "**Retention Application**") pursuant to section 105(a) and 1103 of the Bankruptcy Code.[6]

16.     On August 10, 2017, the Court entered an Order (the "**Retention Order**") approving Segal's retention as counsel to the Retiree Committee, effective June 27, 2017, on the terms and conditions identified in the Retention Application.  A copy of the Retention Order is attached hereto as **Exhibit C**.  Pursuant to the Retention Order, Segal is entitled to compensation for reasonable, actual, and necessary professional services rendered and reimbursement of expenses incurred in connection with the Title III Cases.

17.     Segal's fees are based upon hours charged, recorded in tenth of an hour increments, at Segal's ordinary and customary hourly rates in effect as of January 1 of the calendar year in which the services are rendered, plus reimbursement of actual, necessary out-of-pocket expenses incurred by Segal on behalf of the Retiree Committee.  Segal adjusts its rates annually at the start

---

[6] In a chapter 11 case, a committee appointed under section 1102 of the Bankruptcy Code ordinarily would seek authority to employ counsel pursuant to section 327.  Because PROMESA does not incorporate section 327 of the Bankruptcy Code, the Retiree Committee moved for approval of its Retention Application pursuant to sections 105(a) and 1103(a).  *See* PROMESA § 301(a) (omitting Bankruptcy Code sections 327 and 328 from incorporation into PROMESA).

of each calendar year.  The rates set forth herein are Segal's 2017 rates, and are consistent with the rates charged to other clients, including outside of bankruptcy.

18.     The cover sheet to this Application contains a schedule setting forth all Segal actuaries, consultants, and professionals who have performed services in the Title III Cases during the Interim Period, the capacity in which each individual is employed by Segal, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this case and fees billed therefore.

19.     By this Application, Segal seeks allowance of compensation in the amount of $223,475.00 and reimbursement of expenses in the amount of $5,305.47.  Segal has not received any payment for services performed or reimbursement for expenses incurred during the Interim Period.

20.     This is Segal's first request for interim compensation in these Title III Cases.  As set forth in the Nicholl Certification, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Retiree Committee in connection with these chapter 11 cases.  To the best of the Segal's knowledge and as disclosed in the *Declaration Of Kim Nicholl In Support Of Application of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Order Approving the Employment and Retention of Segal Consulting* [Dkt. No. 671-1] (the "**Nicholl Declaration**"), Segal is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and except as otherwise specified in the Nicholl Declaration, Segal's actuaries, consultants, and professionals do not hold or represent any interest adverse to the Retiree Committee.

21.     Segal might have in the past provided actuarial and consulting services, might currently provide actuarial and consulting services, and likely in the future will provide actuarial

9

and consulting services to parties in interest in this case in connection with matters unrelated to the Retiree Committee or the Title III Cases.  In the Nicholl Declaration, Segal disclosed its connections to parties in interest in the Title III Cases that it has been able to ascertain using its reasonable efforts.  Segal will update such disclosures, as appropriate, if Segal becomes aware of relevant and material new information.

22.     Segal performed the services for which it is seeking compensation on behalf of the Retiree Committee and not on behalf of any other committee, creditor, or other entity.

23.     Segal has not received payment or promise of payment from any source other than the Retiree Committee for services provided or to be provided in any capacity whatsoever in connection with the Title III Cases.

<strong>Fees and Expenses Incurred During Interim Period</strong>

**A.      Customary Billing Disclosures**

24.     Segal's hourly rates are set at a level designed to compensate Segal fairly for the work of its actuaries, consultants, and professionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Segal in these cases are equivalent to the hourly rates and corresponding rate structure used by Segal for similar complex actuarial consulting assignments, regardless of whether a fee application is required.  The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

25.     **Exhibit D** to this Application is a summary of blended hourly rates for timekeepers for which Segal is seeking hourly compensation in this Application, as required by the UST Guidelines.

10

**B.      Fees Incurred During Interim Period**

26.      In the ordinary course of Segal's practice, Segal maintains records of the time spent on the professional services provided to the Retiree Committee.  **Exhibit E** to this Application is a summary of fees incurred and hours worked during the Interim Period for which compensation is sought on an hourly basis in this Application, setting forth the following information:

- the name of each actuary, consultant, and professional for whose work compensation is sought;
- the aggregate time worked and fees billed by each actuary, consultant, and professional during the Interim Period;
- the hourly billing rate for each such actuary, consultant, and professional at Segal's current billing rates; and
- a calculation of total compensation requested using the rates disclosed in the Segal Application.

**C.      Expenses Incurred During Interim Period**

27.      In the ordinary course of Segal's practice, Segal maintains a record of expenses incurred in rendering professional services to the Retiree Committee and for which reimbursement is sought.  **Exhibit F** to this Application is a summary for the Interim Period of the total amount of expenses for which Segal seeks reimbursement with respect to each category of expenses.  The out-of-pocket disbursement sum is broken down into categories of charges.

<u>**Summary of Legal Services Provided During the Interim Period**</u>

28.      During the Interim Period, Segal provided important professional services to the Retiree Committee in connection with the Title III Cases.  Detailed descriptions of the specific services provided and the time expended performing such services are attached as **Exhibit H**, and a summary of the services Segal provided to the Retiree Committee during the Interim Period is set forth in paragraphs 31 through 38 below.

11

29.     Segal has established, in accordance with its internal billing procedures, subject matters categories (each, a "**Matter Category**") for keeping time records of the work performed for the Retiree Committee.  A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Segal actuaries, consultants, and professionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit G**.  In addition, subject to redaction for work product and confidentiality where necessary to protect the Retiree Committee, Segal's records of time worked providing professional services to the Retiree Committee are attached hereto as **Exhibit H**, and Segal's records of expenses incurred during the Interim Period in the rendition of professional services to the Retiree Committee are attached as **Exhibit I**.

30.     The following is a summary, by Matter Category, of the professional services provided by Segal during the Interim Period.  This summary is organized in accordance with Segal's internal system of matter numbers.

**Actuarial Analysis**
**Fees: $17,603.00        Total Hours: 46.10**

31.     Segal's recorded time entries in this category reflect review of actuarial reports and review of materials in data room; valuation programming for ERS and TRS plans, and importing complete data for valuation software.

**Research**
**Fees: $44,162.00        Total Hours: 74.30**

32.     Segal's recorded time entries in this category reflect review of the FOMB's proposal; researching Medicaid information; researching current retiree health benefits; review draft 2016 valuation reports; discussions to prepare for upcoming meetings; and preparations for the mediation.

12

**Data Analysis**

**Fees: $36,331.00     Total Hours: 91.90**

33.     Segal's recorded time entries in this category reflect creating data request and review data received including census and retiree data; analysis of data compared to the valuation reports; import beneficiary and active data.

**Calls & Meetings with other Professionals**
**Fees: $59,849.00     Total Hours: 102.90**

34.     Segal's recorded time entries in this category reflect conference calls to discuss strategy and roles, work coordination, health care issues, determination of pension liabilities in the fiscal plans; update calls to discuss mediation and preparation of committee call with other advisors.

**Preparation of Reports**
**Fees: $11,325.00     Total Hours: 30.90**

35.     Segal's recorded time entries in this category reflect time spent reviewing open enrollment materials, discussing and analyzing benefits report development; developing and updating presentations outlining health system for retirees, and reviewing changes to benefits document.

**Retiree Committee Meetings**
**Fees: $29,150.00     Total Hours: 44.2**

36.     Segal's recorded time entries in this category reflect Segal's participation in the scheduled meetings of the Retiree Committee.  During these meetings, Segal professionals advised the Retiree Committee on actuarial matters.

**Case Administration**
**Fees: $16,844.00        Total Hours: 32.00**

37.    Segal's recorded time entries in this category reflect its review of filings in the Title III Cases, general discussions on health issues and pension issues and coordination on the workplan, and general updates regarding the case and strategy.

**Non-Working Travel Time**
**Fees: $16,422.00        Total Hours: 25.50**

38.    This time entry reflects non-productive travel time, including travel for court appearances, committee meetings, and mediation sessions.  Pursuant to Local Rule 2016-1(a), Segal is seeking compensation at one-half of its normal rate for time spent traveling in connection with its providing actuarial consulting services to the Retiree Committee.

**II.    Actual and Necessary Expenses Incurred by Segal During the Interim Period**

39.    As summarized in Exhibit F and as set forth in detail in Exhibit I, Segal has incurred a total of $5,305.47 in expenses on behalf of the Retiree Committee during the Interim Period. These charges are intended to reimburse Segal's direct costs that are not included in Segal's hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit F of this Fee Application are separately charged for such services.

**Segal's Requested Compensation and Reimbursement Should be Allowed**

40.    The services for which Segal seeks compensation in this Application were, at the time provided, necessary for and beneficial to the Retiree Committee.  Segal performed these services economically, effectively, and efficiently, and they benefited the Retiree Committee. Segal submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to the Retiree Committee.  Accordingly, Segal submits the compensation sought in this Application is warranted and should be approved.

14

**A.    Compensation Under Sections 316 and 317 of PROMESA.**

41.    Section 317 of PROMESA authorizes interim compensation of professionals and incorporates the substantive standards of section 316 of PROMESA to govern the Court's award of interim compensation.   Section 316 of PROMESA provides that a court may award a professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered," and "reimbursement for actual, necessary expenses."   48 U.S.C. § 2176(a)(1), (2).  Section 316(c) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1)    the time spent on such services;
>
> (2)    the rates charged for such services;
>
> (3)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (6)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or Title 11.

48 U.S.C. § 2176(c).

42.    As analyzed below, Segal submits the elements governing awards of compensation under PROMESA justify the allowance requested.

15

1.      **The Time and Labor Required**

43.     During the Interim Period, Segal's actuaries, consultants, and professionals spent 444.20 hours providing professional services to the Retiree Committee for which Segal seeks compensation on an hourly basis.  Segal required this amount of time to conduct its actuarial analyses arising from the Title III Cases and the other tasks described herein.

2.      **The Rates Charged for Such Services**

44.     During the Interim Period, Segal's hourly billing rates ranged from $590.00 to $890.00 per hour for Senior Vice President, from $400.00 to $550.00 for VP & Actuary, from $300.00 to $490.00 for Actuaries, from $280 to $540 for consultants, and from $225 to $340 for analysts.   Based on the recorded hours expended by Segal's actuaries, consultants, and professionals, the average hourly billing rate for Segal's services was $522.55.

45.     Segal's hourly rates are set at a level designed to compensate Segal fairly for the work of its actuaries, consultants, and professionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

46.     The hourly rates and corresponding rate structure that Segal charges in these cases are equivalent to or less than the hourly rates and corresponding rate structure that Segal charges for similar complex actuarial consulting assignments, regardless of whether a fee application is required.

**3.      The Necessity of the Services and the Benefit to the Estate's Retirees**

47.      As described herein, the services rendered by Segal were necessary for the efficient and economical resolution of the Retiree Committee's interests in the Title III Cases.  All of those services directly benefitted the Retiree Committee.

48.      The Retiree Committee has reviewed the Application and has approved the compensation and reimbursement of expenses requested herein.

**4.      The Reasonableness of the Time Spent, Based on the Complexity, Importance, and Nature of the Issues**

49.      Segal's work involved the representation of the Title III Cases' largest creditor constituency—Puerto Rico's 160,000 retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories.  Segal's professional services during the Interim Period were necessary to ensure that the interests of the Retirees were properly represented and safeguarded and that all matters relevant to the Retiree Committee were handled in an appropriate manner.  The compensation requested is reasonable in light of those services.

**5.      The Experience, Reputation, and Ability of the Actuaries and Consultants Providing Services**

50.      Segal actuaries and consultants have achieved a high degree of expertise and positive reputations in their respective fields.  Segal's public plan actuaries and consultants frequently receive recognition for their skill and achievements, and Segal is frequently cited as one of the leading actuarial consulting firms in this field.

**6.      Customary Compensation**

51.      The work for which Segal seeks compensation in this Application is of the type and nature for which Segal customarily would seek compensation at the rates identified in this

17

Application.  In addition, the compensation Segal seeks in this Application is comparable to the compensation it would have sought for comparable work outside of a chapter 11 case.

52.      Segal submits that the compensation requested is reasonable under all the factors considered under sections 316 and 317 of PROMESA and that the factors justify the allowance in full of Segal's compensation and reimbursement request.

53.      In view of the foregoing, Segal respectfully requests that it be allowed interim compensation in the amount of $223,475.00 for services rendered during the Interim Period.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Retiree Committee.**

54.      For the Interim Period, Segal requests reimbursement of $5,305.47 for reasonable and necessary costs and expenses incurred on behalf of the Retiree Committee.

55.      Segal's normal billing rates do not take these costs and expenses into consideration. Rather, Segal bills each cost and expense to the applicable client.  Because of the disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Segal's ordinary billing rates.  Accordingly, Segal generally charges each client for such costs and expenses separately, in each case, at Segal's costs.

56.      Segal does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

57.      Pursuant to Local Rule 2016-1(b)(7), Segal seeks reimbursement for air travel limited to the amount spent on coach fare.

58.      Segal has made reasonable efforts to minimize its costs and expenses in connection with its representation of the Retiree Committee.  Each of the costs and expenses Segal has

18

incurred in providing professional services to the Retiree Committee was necessary, reasonable, and justified under the circumstances to serve the needs of the Retiree Committee.

### Statement by Segal Under ¶ C(5) of the UST Guidelines

59.      None of the professionals included in this Application varied their hourly rate based on the geographic location of the Title III Cases.

60.      The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

61.      The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

62.      The hourly rates specified in the Retention Application were effective January 1, 2017, and have not increased since that time.  For certain services rendered prior to January 1, 2017, Segal's hourly rates were lower than the rates described in the Retention Application. Segal's engagement letter with the Retiree Committee provides that Segal's scheduled hourly rates are periodically adjusted, generally at the beginning of a calendar year.

63.      Consistent with the UST Guidelines and the Fee Examiner Memorandum Segal will submit a budget to the Fee Examiner beginning January 2018.

### Reservation of Rights and Notice

64.      It is possible that some professional time expended or expenses incurred during the Interim Period are not reflected in the Application.  Segal reserves the right to include such amounts in future fee applications.

65.      Pursuant to the Interim Compensation Order, the Retiree Committee has provided notice of this Application to: (a) the U.S. Trustee; (b) counsel to the FOMB; (c) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority; (d) counsel to the Official

Committee of Unsecured Creditors; (e) the Fee Examiner; and (f) all parties that have filed a notice

of appearance with the Clerk of this Court, pursuant to Bankruptcy Rule 2002 and applicable

provisions of the Local Rules, and requested such notice.

## **No Prior Request**

66.     No prior application for the relief requested by this Application has been made to

this or any other court.

WHEREFORE, Segal respectfully requests that the Court enter an order: (a) awarding Segal compensation for actuarial, consulting, and professional services provided during the Interim Period in the amount of $231,686.00; (b) reimbursement of actual, reasonable, and necessary expenses incurred in the Interim Period in the amount of $5,305.47; (c) granting such other relief as is appropriate under the circumstances.

Dated: December 15, 2017                    Respectfully submitted,


                                            */s/ Robert Gordon*_____
                                            Robert Gordon (admitted *pro hac vice*)
                                            Richard Levin (admitted *pro hac vice*)
                                            919 Third Ave
                                            New York, NY 10022-3908
                                            rgordon@jenner.com
                                            rlevin@jenner.com
                                            212-891-1600 (telephone)
                                            212-891-1699 (facsimile)

                                            Catherine Steege (admitted *pro hac vice*)
                                            Melissa Root (admitted *pro hac vice*)
                                            353 N. Clark Street
                                            Chicago, IL 60654
                                            csteege@jenner.com
                                            mroot@jenner.com
                                            312-222-9350 (telephone)
                                            312-239-5199 (facsimile)

                                            *Counsel for The Official Committee of Retired Employees of Puerto Rico*