**Hearing Date: March 7, 2018 at 9:30 a.m. AST**
**Objection Deadline: January 4, 2018** (for parties other than the Fee Examiner)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**SUMMARY COVER SHEET TO THE FIRST INTERIM APPLICATION OF JENNER & BLOCK LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM JUNE 16, 2017 THROUGH SEPTEMBER 30, 2017**

| | |
|---|---|
| Name of Applicant: | Jenner & Block LLP |
| Authorized to Provide Services To: | The Official Committee of Retired Employees of the Commonwealth of Puerto Rico |
| Retention Date: | June 16, 2017 |

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| Period for which compensation and reimbursement is sought: | June 16, 2017–September 30, 2017 |
| Amount of interim compensation sought as actual, reasonable, and necessary: | $2,051,975.37 |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $60,916.21 |
| Are your fee or expense totals different from the sum of previously served monthly statements? | Yes.[2] |
| Petition Date: | May 3, 2017 |
| Blended rate in this application for all attorneys: | $891.65 |
| Blended rate in this application for all timekeepers: | $855.01 |

This is an ***interim*** application.

The total time expended for Jenner's fee application preparation for the Interim Fee Period is approximately 90 hours and the corresponding compensation requested is approximately $75,000.

| | |
|---|---|
| Total compensation approved by interim order to date: | None |
| Total expenses approved by interim order to date: | None |
| Total compensation paid to date: | None |
| Total expenses paid to date: | None |
| Total compensation subject to objection: | None |
| Total expenses subject to objection: | None |
| Number of Professionals Included in this Application: | 27 |

---

[2] In accordance with the Fee Examiner Memorandum (defined herein), Jenner has voluntarily reduced its request for reimbursement of expenses by $3,660.44 for non-reimbursable airfare, ground transportation, and business meals identified in its previously served monthly statements. This reduction is in addition to voluntary reductions made by Jenner in its monthly fee statements.

Difference Between Fees Budgeted and
Compensation Sought:                       N/A

Number of Professionals Billing Fewer than
15 Hours to this Case:                     11

Rates Higher than Those Disclosed at       None
Retention:

Objection Deadline:                        January 4, 2018 (for parties other than the
                                           Fee Examiner)

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| ANTHONY B. BORICH | Partner | 2009 | Complex Commercial Litigation | $770.00 | 6.30 | $4,851.00 |
| ELIZABETH A. EDMONDSON | Partner | 2007 | Complex Commercial Litigation | $840.00 | 21.20 | $17,808.00 |
| ROBERT D. GORDON | Partner | 1989 | Restructuring and Bankruptcy | $1,025.00 | 464.70 | $476,317.50 |
| LINDSAY C. HARRISON | Partner | 2003 | Appellate & Supreme Court Practice | $850.00 | 107.90 | $91,715.00 |
| CARTER H. KLEIN | Partner | 1972 | Corporate | $775.00 | 84.90 | $65,797.50 |
| RICHARD B. LEVIN | Partner | 1975 | Restructuring and Bankruptcy | $1,250.00 | 326.30 | $407,875.00 |
| MICHELLE M. MCATEE | Partner | 1998 | Real Estate | $820.00 | 0.50 | $410.00 |
| LANDON S. RAIFORD | Partner | 2008 | Restructuring and Bankruptcy | $785.00 | 99.70 | $78,264.50 |
| MELISSA M. ROOT | Partner | 2003 | Restructuring and Bankruptcy | $840.00 | 575.10 | $483,084.00 |
| CATHERINE L. STEEGE | Partner | 1982 | Restructuring and Bankruptcy | $1,025.00 | 311.10 | $318,877.50 |
| ADAM G. UNIKOWSKY | Partner | 2007 | Appellate & Supreme Court Practice | $800.00 | 6.40 | $5,120.00 |
| NICHOLAS E. BALLEN | Associate | 2015 | Restructuring and Bankruptcy | $510.00 | 7.30 | $3,723.00 |
| PENELOPE P. CAMPBELL | Associate | 2009 | Real Estate | $750.00 | 2.50 | $1,875.00 |
| WILLIAM K. DREHER | Associate | 2013 | Appellate & Supreme Court Practice | $625.00 | 196.90 | $123,062.50 |
| OLIVIA G. HOFFMAN | Associate | 2015 | Litigation | $535.00 | 24.20 | $12,947.00 |

| ABRAHAM M. SALANDER | Associate | 2012 | Complex Commercial Litigation | $665.00 | 91.20 | $60,648.00 |
|---|---|---|---|---|---|---|
| JOHN D. VANDEVENTER | Associate | 2014 | Restructuring and Bankruptcy | $565.00 | 161.40 | $91,191.00 |
| CARL N. WEDOFF | Associate | 2010 | Restructuring and Bankruptcy | $785.00 | 239.10 | $187,693.50 |
| AMANDA E. FACTOR | Paralegal | N/A | Litigation | $335.00 | 4.70 | $1,574.50 |
| TOI D. HOOKER | Paralegal | N/A | Restructuring and Bankruptcy | $365.00 | 41.60 | $15,184.00 |
| CHERYL L. OLSON | Paralegal | N/A | Litigation | $365.00 | 5.10 | $1,861.50 |
| NEBOJSA REBIC | Paralegal | N/A | Litigation | $335.00 | 16.30 | $5,460.50 |
| TRICIA J. PEAVLER | Library Services | N/A | Information Services | $335.00 | 0.70 | $234.50 |
| MARY E RUDDY | Library Services | N/A | Information Services | $335.00 | 3.10 | $1,038.50 |
| ASHLEIGH N. HONESTY | Project Assistant | N/A | Litigation | $205.00 | 5.50 | $1,127.50 |
| MARC A. PATTERSON | Project Assistant | N/A | Restructuring and Bankruptcy | $215.00 | 71.70 | $15,415.50 |
| ANNETTE M. YOUNG | Project Assistant | N/A | Litigation | $215.00 | 22.90 | $4,923.50 |
| **Sub-Total*** | | | | | **2898.30** | **$2,478,080.00** |
| Less 15% Fee Discount on all matters except the Non-working Travel Matter | | | | | | $348,400.88 |
| Less 50% Discount on Non-working Travel Matter | | | | | | $77,703.75 |
| **Total** | | | | | **2898.30** | **$2,051,975.37** |

## FEE EXAMINER'S REQUESTED ATTACHMENTS TO FEE APPLICATIONS

**List of Professionals** – Exhibit E
**Compensation by Project Category** – Exhibit G
**Expense Summary** – Exhibit F
**List of Professionals by Matter** – Exhibit H
**Detailed Time Records** – Exhibit H
**Detailed Expense Records** – Exhibit I; additional detail submitted to the Fee Examiner under separate cover
**Customary and Comparable Disclosures** – Exhibit D
**Budget & Staffing Plan** – Submitted to the Fee Examiner under separate cover

iv

**Hearing Date: March 7, 2018 at 9:30 a.m. AST**
**Objection Deadline: January 4, 2018** (for parties other than the Fee Examiner)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## FIRST INTERIM APPLICATION OF JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO FROM JUNE 16, 2017 THROUGH SEPTEMBER 30, 2017

To the Honorable United States District Court Judge Laura Taylor Swain:

Jenner & Block, LLP ("**Jenner**"), attorneys for The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") in the above-captioned Title III cases ("**Title III Cases**"), hereby submits this first application ("**Application**")

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

for an award of interim compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services, for the period from June 16, 2017 through September 30, 2017 (the "**Interim Period**").   Jenner submits this Application pursuant to sections 316 and 317 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("**PROMESA**"),[2] 48 U.S.C. §§ 2176, 2177; sections 105(a) and 503(b) of the Bankruptcy Code,[3] 11 U.S.C. § 503(b); Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")[4]; Rule 2016-1 of the Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "**Local Rules**")[5]; the Court's *Order Authorizing the Employment of Jenner & Block LLP as Attorneys for the Committee of Retired Employees* ("**Retention Order**") [Dkt. No. 1002]; the Court's *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Dkt. No. 1715]; the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"); and the Fee Examiner's November 10, 2017 Memorandum (the "**Fee Examiner Memorandum**"). In support of the Application, Jenner submits the Certification of Robert D. Gordon (the "**Gordon Certification**"), attached hereto as **Exhibit A**, and respectfully represents as follows:

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] The Bankruptcy Code is codified at 11 U.S.C. §§ 101–1532.  Unless otherwise noted, all Bankruptcy Code sections cited in the Application are made applicable to these Title III Cases pursuant to section 301(a) of PROMESA.

[4] All Bankruptcy Rules referenced in this Application are made applicable to these Title III Cases pursuant to section 310 of PROMESA.

[5] The Local Rules are made applicable here by the Court's *Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to These Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief* [Dkt. No. 249].

**Preliminary Statement**

1.      On August 10, 2017, this Court approved the Retiree Committee's employment of Jenner, effective as of June 16, 2017.  A copy of Jenner's engagement letter is attached hereto as **Exhibit B**.  The Retiree Committee represents approximately 160,000 retired employees of the Commonwealth of Puerto Rico ("**Commonwealth**" or "**Puerto Rico**") and various governmental bodies and their surviving beneficiaries, including Puerto Rico's retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories (the "**Retirees**").  The Retirees' pensions are underfunded by at least $49 billion.  They are the largest group of creditors in these Title III Cases.

2.      During the Interim Period, Jenner performed a variety of legal services that were necessary and appropriate for the effective advancement of the Retiree Committee's interests in the Title III Cases, including, among other things: meeting and conferring with the Retiree Committee; advising the Retiree Committee of its powers and duties; advising the Retiree Committee regarding proposed modifications to Retirees' pension, healthcare, and other accrued retirement benefits; representing the Retiree Committee at court hearings and mediation sessions involving matters pertaining to the benefits of the Retirees; preparing on behalf of the Retiree Committee motions, applications, orders, and other legal papers; advocating for Retirees in adversary proceedings and contested matters; and advising the Retiree Committee with respect to bankruptcy, labor, employee benefits, and litigation issues concerning the Retirees' benefits.

3.      Jenner's work during the Interim Period was necessary for, and beneficial to, the Retirees and served to ensure that the interests of the Retirees were properly represented and safeguarded in these Title III Cases.  Jenner respectfully requests that the Court award the fees and expenses requested in this Application.

## Jurisdiction

4.     The United States District Court for the District of Puerto Rico (the "**Court**") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

5.     Venue is proper pursuant to PROMESA section 307(a).

6.     Jenner makes this Application pursuant to PROMESA sections 316 and 317, Bankruptcy Code sections 105(a) and 503(b), Bankruptcy Rule 2016, Local Rule 2016-1, the Retention Order, the Interim Compensation Order, and the UST Guidelines.

## Background

7.     On May 3, 2017, Puerto Rico, by and through the Financial Oversight and Management Board for Puerto Rico ("**FOMB**"), as Puerto Rico's representative pursuant to section 315(b) of PROMESA, filed a petition with the Court under title III of PROMESA.

8.     On May 5, 2017, the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), by and through the FOMB, as COFINA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

9.     On May 21, 2017, the Puerto Rico Highways and Transportation Authority ("**HTA**"), by and through the FOMB, as HTA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

10.     On May 21, 2017, the Employees Retirement System for the Commonwealth of Puerto Rico ("**ERS**"), by and through the FOMB, as ERS's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

11.     On July 3, 2017, the Puerto Rico Electric Power Authority ("**PREPA**"), by and through the FOMB, as PREPA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

4

12. Through Orders of this Court, the Commonwealth, COFINA, HTA, ERS, and PREPA Title III Cases are jointly administered for procedural purposes only, pursuant to PROMESA section 304(g) and Bankruptcy Rule 1015. [*See* Dkt. Nos. 242, 537, 1417.]

13. On June 15, 2017, the U.S. Trustee, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Retiree Committee, consisting of the following nine individuals: Blanca Paniagua, Carmen Nunez, José Marin, Juan Ortiz, Lydia Pellot, Marcos A. Lopez, Miguel Fabre, Milagros Acevedo, and Rosario Pacheco. [Dkt. No. 340.]

### Jenner's Retention and Fee Request

14. On June 16, 2017, the Retiree Committee elected to employ Jenner to represent the Retiree Committee. A copy of the Engagement Letter is attached hereto as **Exhibit B**.

15. On July 19, 2017, the Retiree Committee filed its *Application for an Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 670] (the "**Retention Application**") pursuant to sections 105(a) and 1103 of the Bankruptcy Code.[6]

16. On August 10, 2017, the Court entered an Order (the "**Retention Order**") approving Jenner's retention as counsel to the Retiree Committee, effective June 16, 2017, on the terms and conditions identified in the Retention Application. A copy of the Retention Order is attached hereto as **Exhibit C**. Pursuant to the Retention Order, Jenner is entitled to compensation for reasonable, actual, and necessary professional services rendered and reimbursement of expenses incurred in connection with the Title III Cases.

---

[6] In a chapter 11 case, a committee appointed under section 1102 of the Bankruptcy Code ordinarily would seek authority to employ counsel pursuant to section 327. Because PROMESA does not incorporate section 327 of the Bankruptcy Code, the Retiree Committee moved for approval of its Retention Application pursuant to sections 105(a) and 1103(a). *See* PROMESA § 301(a) (omitting Bankruptcy Code sections 327 and 328 from incorporation into PROMESA).

17.     Jenner's fees are based upon hours charged, recorded in tenth of an hour increments, at Jenner's ordinary and customary hourly rates in effect as of January 1 of the calendar year in which the services are rendered, plus reimbursement of actual, necessary, out-of-pocket expenses and other charges incurred by Jenner on behalf of the Retiree Committee.  Jenner adjusts its rates annually at the start of each calendar year.  The rates set forth herein are Jenner's 2017 rates, and are consistent with the rates charged to other clients, including outside of bankruptcy. For this matter, Jenner agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, to 15% off of its rates in effect at the time the services are rendered.

18.     The cover sheet to this Application contains a schedule setting forth all Jenner professionals and paraprofessionals who have performed services in the Title III Cases during the Interim Period, the capacity in which each individual is employed by Jenner, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this case and fees billed therefore, and the year in which each professional was first licensed to practice law.

19.     By this Application, Jenner seeks allowance of compensation in the amount of $2,051,975.27 and reimbursement of expenses in the amount of $60,916.21.  As of the date of this Application, Jenner has not received any payment for services performed or reimbursement for expenses incurred during the Interim Period.

20.     This is Jenner's first request for interim compensation in these Title III Cases.  As set forth in the Gordon Certification, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Retiree Committee in connection with these Title III Cases.  To the best of Jenner's knowledge and as disclosed in the *Declaration of Robert D. Gordon in Support of Application of the Official Committee of Retired Employees of the Commonwealth*

*of Puerto Rico for Order Approving the Employment of Jenner and Block LLP* [Dkt. No. 670-2]

and the *First Supplemental Declaration of Robert Gordon in Support if Application for Order*

*Approving the Employment of Jenner & Block LLP* [Dkt. No. 1766] (together, the "**Gordon**

**Declarations**"), Jenner is a "disinterested person" as defined in section 101(14) of the Bankruptcy

Code, and except as otherwise specified in the Gordon Declarations, Jenner's partners, associates,

and special attorneys do not hold or represent any interest adverse to the Retiree Committee.

21.     Jenner might have in the past represented, might currently represent, and likely in

the future will represent parties in interest in this case in connection with matters unrelated to the

Retiree Committee or the Title III Cases.   In the Gordon Declarations, Jenner disclosed its

connections to parties in interest in the Title III Cases that it has been able to ascertain using

reasonable efforts.   Jenner will update such disclosures, as appropriate, if Jenner becomes aware

of relevant and material new information.

22.     Jenner performed the services for which it is seeking compensation on behalf of the

Retiree Committee and not on behalf of any other committee, creditor, or other entity.

23.     Jenner has not received payment or promise of payment from any source other than

the Commonwealth for its services rendered and expenses incurred on behalf of the Retiree

Committee or to be provided in any capacity whatsoever in connection with the Title III Cases.

24.     Jenner does not share fees with any attorneys except to the extent permitted by

section 504 of the Bankruptcy Code.

### Fees and Expenses Incurred During Interim Period

**A.      Customary Billing Disclosures**

25.     Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the

work of its attorneys and paraprofessionals and to cover fixed and routine expenses.   The hourly

rates and corresponding rate structure utilized by Jenner in the Title III Cases are equivalent to the

hourly rates and corresponding rate structure used by Jenner for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.  For this matter, Jenner agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, by 15% off of its rates in effect at the time the services are rendered.

26.      **Exhibit D** to this Application is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers for which Jenner is seeking hourly compensation in this Application, as required by the UST Guidelines.

**B.      Fees Incurred During Interim Period**

27.      In the ordinary course of Jenner's practice, Jenner maintains records of the time spent on the professional services provided to the Retiree Committee.  **Exhibit E** to this Application is a summary of fees incurred and hours worked during the Interim Period for which compensation is sought on an hourly basis in this Application, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;
- each attorney's year of bar admission and area of practice concentration;
- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Interim Period;
- the hourly billing rate for each such attorney and paraprofessional at Jenner's current billing rates; and
- a calculation of total compensation requested using the rates disclosed in the Jenner Application.

**C.      Expenses Incurred During Interim Period**

28.      In the ordinary course of Jenner's practice, Jenner maintains a record of expenses incurred in rendering professional services to the Retiree Committee and for which reimbursement

is sought.  **Exhibit F** to this Application is a summary for the Interim Period of the total amount of expenses for which Jenner seeks reimbursement with respect to each category of expenses.  The out-of-pocket disbursement sum is broken down into categories of charges.

### Summary of Legal Services Provided During the Interim Period

29.     During the Interim Period, Jenner provided important professional services to the Retiree Committee in connection with the Title III Cases.  A summary of the services Jenner provided to the Retiree Committee during the Interim Period is set forth in paragraphs 32 through 47 below.

30.     Jenner has established, in accordance with its internal billing procedures, subject matter categories (each, a "**Matter Category**") for keeping time records of the work performed for the Retiree Committee.  A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Jenner attorneys and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit G**. In addition, subject to redaction for attorney-client privilege, work product, and confidentiality where necessary to protect the Retiree Committee, Jenner's records of time worked providing professional services to the Retiree Committee are attached hereto as **Exhibit H**, and Jenner's records of expenses incurred during the Interim Period in the rendition of professional services to the Retiree Committee are attached as **Exhibit I**.

31.     The following is a summary, by Matter Category, of the professional services provided by Jenner during the Interim Period.  This summary is organized in accordance with Jenner's internal system of matter numbers.

9

### Rule 2004 Investigation
**Fees: $26,828.00        Total Hours: 30.30**

32.      Jenner's recorded time entries in this category reflect (a) review, analysis, and preparation of court documents concerning Rule 2004 discovery relating to bond offerings by Puerto Rico and its instrumentalities; (b) discussions with counsel to the FOMB, the Fiscal Agency and Financial Advisory Authority ("**AAFAF**"), and Official Committee of Unsecured Creditors (the "**UCC**") regarding Rule 2004 discovery; and (c) negotiations with the FOMB investigatory firm, Kobre & Kim, regarding access to discovery and a non-disclosure agreement.

### Case Administration/Miscellaneous
**Fees: $386,866.00        Total Hours: 522.70**

33.      Jenner's recorded time entries in this category reflect (a) communications with Retiree Committee members about developments in the Title III Cases; (b) review of and preparation of pleadings and court submissions not attributable to another Matter Category; (c) time spent conferring with counsel to other parties in interest and other constituents regarding developments in the Title III Cases; (d) reviewing case developments and litigation activity generally; (e) internal meetings and communication not attributable to another Matter Category; (f) communications with the FOMB, AAFAF, the UCC, and other parties-in-interest in the Title III Cases regarding general matters; and (g) case and project management.  Jenner conducts a weekly call among Jenner professionals and a weekly call among Jenner and the Retiree Committee's other retained professionals to discuss the case status, delegate work, and collaborate on strategy.  These calls are designed to promote efficiency, coordinate the work plan, and eliminate duplication of effort among the Retiree Committee's retained professionals.

**Challenges to PROMESA**

**Fees: $190,322.00      Total Hours: 261.70**

34.     Jenner's recorded time entries in this category reflect (a) review and analysis of pleadings and other submissions challenging the constitutionality and implementation of PROMESA; (b) preparation of memoranda concerning PROMESA's constitutionality and the propriety of its implementation; and (c) preparation of pleadings objecting to PROMESA challenges.  In particular, during the Interim Period, Jenner attorneys billed time to this matter researching PROMESA and arguments made by certain parties regarding its constitutionality and drafting a brief in opposition to a motion filed by certain bondholders to dismiss the Title III Cases on the basis that the FOMB was unconstitutionally appointed.

**Claims Issues**

**Fees: $6,432.00      Total Hours: 6.60**

35.     Jenner's recorded time entries in this category reflect time spent reviewing the bar date motion filed by the FOMB and providing comments.  Although the FOMB ultimately withdrew the bar date motion following Hurricane Maria, Jenner provided substantive comments to the proposed form of order that it expects will be reflected in the bar date motion and proposed order when it is filed with the Court.

**Committee Governance and Meetings**

**Fees: $251,811.50      Total Hours: 255.00**

36.     Jenner's recorded time entries in this category reflect (a) counsel and assistance of the Retiree Committee in the proper performance of its duties; (b) conducting and participating in all meetings of the Retiree Committee; (c) assisting the Retiree Committee in preparing agendas and minutes for those meetings; and (d) reviewing and preparing opposition to a University of Puerto Rico Trust motion to reconstitute the Retiree Committee.  For each committee meeting, the Jenner and Bennazar attorneys attending the meeting divide up responsibility for presenting to the

11

Retiree Committee the various agenda items and updates.  During the Interim Period, Jenner met in person with the Retiree Committee in San Juan in connection with the June and August omnibus hearing dates.  Jenner conducted telephonic meetings with the Retiree Committee on a regular basis at other times.

### Communications with Retirees
**Fees: $235.50          Total Hours: 0.30**

37.    Jenner's recorded time entries in this category reflect coordination with the Retiree Committee's Information Agent to develop a Retiree Committee website, as well as Jenner's communications with Retirees regarding the Title III Cases.  Specifically, Jenner worked with the Retiree Committee's Information Agent to develop and review content for the Retiree Committee website.  Time entries in this Matter Category also relate to Jenner's development of frequently asked questions and answers as well as other materials to provide information about the Title III Cases to Retirees.

### Court Hearings
**Fees: $76,806.50          Total Hours: 100.20**

38.    Jenner's recorded time entries in this category reflect (a) attendance and representation of the Retiree Committee at Court hearings; (b) preparation for Court hearings; and (c) review of pleadings and other submissions considered at or relevant to Court hearings.

### Employment of Professionals/Fee Applications
**Fees: $137,236.00          Total Hours: 173.60**

39.    Jenner's recorded time entries in this category reflect (a) preparation of Jenner's Retention Application and monthly fee statements; (b) communication with the United States Trustee's office and the Fee Examiner and his team concerning appropriate compensation and retention procedures; and (c) assisting the Retiree Committee's financial advisors, actuaries, and Information Agent with the preparation of their retention applications and monthly statements.

12

**ERS Bond Issues (Adversary Proceedings 17-213, 17-219, and 17-220)**
**Fees: $396,022.50     Total Hours: 484.80**

40.     Jenner's recorded time entries in this category reflect (a) review and analysis of litigation challenging the legality and constitutionality of the Commonwealth's actions with respect to ERS; (b) review and analysis of the priority and secured status of ERS bond debt; (c) preparation of research memoranda regarding ERS bondholder claims; (d) preparation of an intervention motion and motion to dismiss in ERS bondholder adversary proceedings, *Altair v. ERS*, Adv. Proc. Nos. 17-219 and 17-220; and (e) review and analysis of the *ERS v. Altair*, Adv. Proc. No. 17-213 adversary proceeding.

**Fiscal Plan/Plan of Adjustment**
**Fees: $65,151.50     Total Hours: 74.60**

41.     Jenner's recorded time entries in this category reflect review and analysis of the Fiscal Plan and documents pertaining to the Fiscal Plan, as well as communications with the Retiree Committee and the Retiree Committee's advisors and actuaries regarding the Fiscal Plan. Time entries in this category also relate to Jenner's review of analyses regarding the Fiscal Plan prepared by the Retiree Committee's advisors and actuaries.

**GO Bonds Issues (Adversary Proceeding No. 17-189)**
**Fees: $144,590.50     Total Hours: 173.90**

42.     Jenner's recorded time entries in this category reflect (a) review and analysis of general obligation ("**GO**") bonds; (b) review and analysis of competing bondholder claims and court submissions; (c) legal research regarding priority and clawback disputes; (d) communication with the Retiree Committee and the Retirees Committee's advisors and actuaries regarding bondholders' claims; (e) preparation of a motion to intervene and motion to dismiss complaint in *ACP Master Ltd. v. Commonwealth*, Adv. Proc. No. 17-189; and (f) legal research and analysis regarding the legal issues presented in the *ACP Master Ltd.* adversary proceeding.

13

**COFINA Issues**

**Fees: $177,355.50      Total Hours: 208.10**

43.     Jenner's recorded time entries in this category reflect (a) review and analysis of COFINA bonds; (b) review and analysis of competing bondholder claims and court submissions; (c) review and analysis of Court orders regarding same; (d) participating in negotiation of a stipulation setting forth procedures for resolving the dispute with COFINA over ownership of the sales tax revenues; (e) consulting with the Commonwealth Agent regarding the COFINA dispute; (f) communication with the Retiree Committee and the Retirees Committee's advisors and actuaries regarding bondholders' claims; and (g) preparation of notice of intervention in *Unsecured Creditors' Committee v. Whyte*, Adv. Proc. No. 17-257 and review of the Court filings by the Commonwealth Agent, the COFINA Agent, and other parties relating to the COFINA dispute.  Under the *Stipulation and Order Approving Procedure to Resolve the Commonwealth-COFINA Dispute* [Dkt. No. 996], the Retiree Committee is a Commonwealth Creditor Representative on behalf of the non-COFINA interests in the COFINA dispute.

**Healthcare and Other Postemployment Benefit Analysis**

**Fees: $8,581.00      Total Hours: 7.90**

44.     Jenner's recorded time entries in this category reflect (a) review and analysis of healthcare and other postemployment benefits ("**OPEB**") and proposed modifications to same; (b) review and analysis of OPEB analysis; and (c) communication with Retiree Committee's financial advisors and actuaries regarding OPEB treatment.

**Mediation**

**Fees: $417,638.00      Total Hours: 405.60**

45.     Jenner's recorded time entries in this category reflect representation of the Retiree Committee in all aspects of the confidential mediation process.  Due to the confidential nature of the mediation the time entries have been redacted.

**Non-Working Travel Time**

**Fees: $77,703.75        Total Hours: 156.00**

46.     This time entry reflects non-working travel time, including travel for court appearances, committee meetings, and mediation sessions.  Pursuant to Local Rule 2016-1(a), Jenner is seeking compensation at one-half of its normal rate for time spent traveling in connection with its representation of the Retiree Committee.

**Pension Analysis**

**Fees: $36,796.00        Total Hours: 37.00**

47.     Jenner's recorded time entries in this category reflect (a) review and analysis of retiree pension plans and proposed modifications to the Retiree Committee's constituents' accrued benefits; (b) communication with other parties in interest, including the FOMB and AAFAF; (c) review and analysis of pension analysis prepared by the Retiree Committee's financial advisors and actuaries and third parties; (d) efforts to obtain necessary actuarial records and other materials from AAFAF and the Commonwealth's actuaries; and (e) communication with the Retiree Committee's financial advisors and actuaries regarding pension treatment.

### Actual and Necessary Expenses Incurred by Jenner During the Interim Period

48.     As summarized in Exhibit F and as set forth in detail in Exhibit I, Jenner has incurred a total of $60,916.21 in expenses on behalf of the Retiree Committee during the Interim Period.[7]  These charges are intended to reimburse Jenner's direct costs that are not included in Jenner's hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit F of this Fee Application are separately charged for such services.

---

[7] Exhibit I reflects the total expenses identified in Jenner's previously served monthly statements prior to a voluntary reduction of $3,660.44 for non-reimbursable airfare, ground transportation, and business meals.

### Jenner's Requested Compensation and Reimbursement Should be Allowed

49.   The services for which Jenner seeks compensation in this Application were, at the time provided, necessary for and beneficial to the Retiree Committee.  Jenner performed these services economically, effectively, and efficiently.  Jenner submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to the Retiree Committee.  Accordingly, Jenner submits the compensation sought in this Application is warranted and should be approved.

**A.    Compensation Under Sections 316 and 317 of PROMESA.**

50.   Section 317 of PROMESA authorizes interim compensation of professionals and incorporates the substantive standards of section 316 of PROMESA to govern the Court's award of interim compensation.  Section 316 of PROMESA provides that a court may award a professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered," and "reimbursement for actual, necessary expenses."  48 U.S.C. § 2176(a)(1), (2).  Section 316(c) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1)   the time spent on such services;
>
> (2)   the rates charged for such services;
>
> (3)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

16

(6)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or Title 11.

48 U.S.C. § 2176(c).

51.     As analyzed below, Jenner submits the elements governing awards of compensation under PROMESA justify the allowance requested.

### 1.     The Time and Labor Required

52.     During the Interim Period, Jenner's partners, associates, and paraprofessionals spent 2,898.30 hours providing professional services to the Retiree Committee for which Jenner seeks compensation on an hourly basis.  Jenner coordinated its efforts with co-counsel to prevent duplication of efforts and thereby not spend more time than required.  Jenner required this amount of time to conduct its investigation, research and analyze numerous, complex, novel issues arising from the Title III Cases, advise the Retiree Committee with respect to these issues, participate in resolution of these issues, and the other tasks described herein.

### 2.     The Rates Charged for Such Services

53.     During the Interim Period, Jenner's hourly billing rates ranged from $635.00 to $1,250.00 per hour for partners, from $405.00 to $795.00 for associates, from $295.00 to $365.00 for paraprofessionals, and from $200.00 to $215.00 for project assistants.  Based on the recorded hours expended by Jenner's attorneys and paraprofessionals, the average hourly billing rate was $891.65 for Jenner attorneys and $855.01 for all Jenner timekeepers prior to application of the 15% discount for fees in these Title III Cases.

54.     Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These

hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

55.     The hourly rates and corresponding rate structure that Jenner charges in these cases are equivalent to or less than the hourly rates and corresponding rate structure that Jenner charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

### 3.     The Necessity of the Services and the Benefit to the Estate's Retirees

56.     As described herein, the services rendered by Jenner were necessary for the efficient and economical resolution of the Retiree Committee's interests in the Title III Cases.  All of those services directly benefitted the Retiree Committee and the Retirees.

57.     The Retiree Committee has reviewed the Application and has approved the compensation and reimbursement of expenses requested herein.

### 4.     The Reasonableness of the Time Spent, Based on the Complexity, Importance, and Nature of the Issues

58.     Jenner's work involved the representation of the Title III Cases' largest creditor constituency—Puerto Rico's 160,000 retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories.  Jenner's professional services during the Interim Period were necessary to ensure that the interests of the Retirees were properly represented and safeguarded and that all matters relevant to the Retiree Committee were handled in an appropriate manner.  The Title III Cases present complex and vitally important issues of first impression.  In light of the foregoing, Jenner submits that the compensation requested is reasonable.

18

5. **The Experience, Reputation, and Ability of the Attorneys Providing Services**

59.     As set forth in the Retention Application, the Retiree Committee selected Jenner as its counsel because its attorneys have extensive experience, knowledge, and resources in the areas of complex restructuring and bankruptcy, municipal finance, employee benefits and litigation, and Jenner has the ability to commit substantial resources to the representation of the Retiree Committee.  The attorneys representing the Retiree Committee have particular expertise in the areas of municipal bankruptcies and retiree committee representation.  Jenner attorneys have achieved a high degree of expertise and positive reputations in their respective fields.  Jenner's Restructuring and Litigation departments frequently receive recognition for their skill and achievements, and Jenner is frequently cited as one of the leading U.S. law firms in these fields.

6. **Customary Compensation**

60.     The work for which Jenner seeks compensation in this Application is of the type and nature for which Jenner customarily would seek compensation at the rates identified in this Application.  In addition, the compensation Jenner seeks in this Application is comparable to the compensation it would have sought for comparable work outside of the Title III Cases.

61.     Jenner submits that the compensation requested is reasonable under all the factors considered under sections 316 and 317 of PROMESA and that the factors justify the allowance in full of Jenner's compensation and reimbursement request.

62.     In view of the foregoing, Jenner respectfully requests that it be allowed interim compensation in the amount of $2,051,975.37 for services rendered during the Interim Period.

B.     **Reasonable and Necessary Expenses Incurred in Providing Services to the Retiree Committee.**

63.     For the Interim Period, Jenner requests reimbursement of $60,916.21 for reasonable and necessary costs and expenses incurred on behalf of the Retiree Committee.

64.     Jenner's normal billing rates do not take these costs and expenses into consideration.  Rather, Jenner bills each cost and expense to the applicable client.  Because of the disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Jenner's ordinary billing rates.  Accordingly, Jenner generally charges each client for such costs and expenses separately, in each case, at Jenner's costs.

65.     Jenner does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

66.     Jenner represents that its rate for duplication for black-and-white copies is $0.11 per page and for color copies is $0.25 per page.  In accordance with the Fee Examiner's guidance, Jenner is seeking reimbursement for black-and-white copies at the rate of $0.10 per page.  Jenner does not charge for telecopier transmissions.

67.     Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to the Retiree Committee in the amount billed to and paid by Jenner.  Like many large law firms, Jenner has negotiated a special arrangement with computerized research companies under which Jenner pays a flat rate monthly fee for computerized research services.  Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, Jenner separately charges each client for computer-assisted research.  To account for such charges while passing through Jenner's cost savings resulting from its special arrangements, Jenner charges those clients for which such services are required at a reduced rate that is less than the rate charged by the

computerized research companies to the general public for such services. These charges are intended to cover Jenner's direct costs for computerized research.

68.     Pursuant to Local Rule 2016-1(b)(7), Jenner seeks reimbursement for air travel limited to the amount spent on coach fare.

69.     Jenner has made reasonable efforts to minimize its costs and expenses in connection with its representation of the Retiree Committee. Prior to the submission of this Application, Jenner voluntarily reduced its request for reimbursement of expenses by $3,660.44 in order to comply with the Fee Examiner Memorandum. Each of the costs and expenses Jenner has incurred in providing professional services to the Retiree Committee was necessary, reasonable, and justified under the circumstances to serve the needs of the Retiree Committee.

### Statement by Jenner Under Paragraph C(5) of the UST Guidelines

70.     This engagement involves variations from Jenner's standard and customary billing rates. Jenner has agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, by 15% off of its rates in effect at the time the services are rendered.

71.     None of the professionals included in this Application varied their hourly rate based on the geographic location of their cases.

72.     The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

73.     The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

74.     The hourly rates specified in the Retention Application were effective January 1, 2017, and have not increased since that time. For certain services rendered prior to January 1, 2017, Jenner's hourly rates were lower than the rates described in the Retention Application.

Jenner's engagement letter with the Retiree Committee provides that Jenner periodically adjusts its scheduled hourly rates, generally at the beginning of a calendar year.

75.     Consistent with the UST Guidelines and the Fee Examiner Memorandum, Jenner will submit a budget to the Fee Examiner for the period beginning January 2018.

**Reservation of Rights and Notice**

76.     It is possible that some professional time expended or expenses incurred during the Interim Period are not reflected in the Application.  Jenner reserves the right to include such amounts in future fee applications.

77.     Pursuant to the Interim Compensation Order, the Retiree Committee has provided notice of this Application to: (a) the U.S. Trustee; (b) counsel to the FOMB; (c) counsel to AAFAF; (d) counsel to the UCC; (e) the Fee Examiner; and (f) all parties that have filed a notice of appearance with the Clerk of this Court, pursuant to Bankruptcy Rule 2002 and applicable provisions of the Local Rules, and requested such notice.

**No Prior Request**

78.     No prior application for the relief requested by this Application has been made to this or any other court.

WHEREFORE, Jenner respectfully requests that the Court enter an order: (a) awarding Jenner compensation for professional and paraprofessional services provided during the Interim Period in the amount of $2,051,975.37; (b) reimbursement of actual, reasonable, and necessary expenses incurred in the Interim Period in the amount of $60,916.21; (c) granting such other relief as is appropriate under the circumstances.

Dated: December 15, 2017                    Respectfully submitted,


*/s/ Robert Gordon*
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

*Counsel for The Official Committee of Retired Employees of Puerto Rico*