Hearing Date: December 20, 2017 at 9:30 a.m. (Atlantic Standard Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | PROMESA |
| | ) | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) ) ) | Case No. 17-03283 (LTS) |
| as representative of | ) | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) ) ) | |
| Debtors.[1] | ) ) | |

| | | |
|---|---|---|
| In re: | ) | PROMESA |
| | ) | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) ) ) | Case No. 17-03566 (LTS) |
| as representative of | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | ) ) ) ) | **This Court filing relates only to Debtor Employees Retirement System of the Commonwealth of Puerto Rico** |
| Debtor. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF THE PUERTO RICO FUNDS'
MOTION CONDITIONING THE AUTOMATIC STAY ON THE
CONTINUATION OF ERS BONDHOLDER PROTECTIONS OR,
ALTERNATIVELY, TO ENFORCE THE COURT'S JULY 17, 2017 ORDER**

---

[1] The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number and last four (4) digits of each Debtor's federal tax identification number are (i) The Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No. 17-bk-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iv) Puerto Rico Highways and Transportation Authority (Bankr. Case No. 17-bk-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority (Bankr. Case No. 17-bk-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ................................................................................................................................ 3

I. BECAUSE ERS HAS NOT MET ITS BURDEN THE AUTOMATIC STAY
SHOULD BE CONDITIONED ON THE CONTINUATION OF THE INTERIM
BONDHOLDER PROTECTIONS .................................................................................... 3

II. ERS IGNORES THE ORDER'S PLAIN LANGUAGE, AND, THEREFORE, IN
THE ALTERNATIVE, THE COURT SHOULD ENFORCE THE PROVISION
OF MONTHLY INTEREST PAYMENTS ....................................................................... 6

CONCLUSION ........................................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................................... 13

## **TABLE OF AUTHORITIES**

### **CASES**

*Altair Global Credit Opportunities Funds (A) LLC, et. al. v. Commonwealth of Puerto Rico, et al.*,
Case No. 17-00219/220 (D. P.R.) ...................................................................................5

*Gomez v. Rivera Rodriguez*,
344 F.3d 103 (1st Cir. 2003) ............................................................................................9

*In re Island Helicopter Corp.*,
63 B.R. 809 (Bankr. E.D.N.Y. 1986) ...............................................................................6

*McAdams v. Mass. Mut. Life Ins. Co.*,
391 F.3d 287 (1st Cir. 2004) ..........................................................................................10

*Newharbor Partners, Inc. v. F.D. Rich Co., Inc.*,
961 F.2d 294 (1st Cir. 1992) ............................................................................................9

*Peaje Invs. LLC v. García-Padilla*,
845 F.3d 505 (1st Cir. 2017) ............................................................................................5

### **STATUTES AND OTHER AUTHORITY**

11 U.S.C. § 362 ........................................................................................................................4

11 U.S.C. § 362(d)(1) ..............................................................................................................6

11 U.S.C. § 362(g) ....................................................................................................................4

48 U.S.C. § 2161(a) ..................................................................................................................4

The Puerto Rico Funds hereby file this reply to ERS's *Opposition to the Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections, Or Alternatively, to Enforce the Court's July 17, 2017 Order* (the "Opposition"),[2] and in further support of the *Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections, Or Alternatively, to Enforce the Court's July 17, 2017 Order* (the "Motion").[3]

**PRELIMINARY STATEMENT**

1. ERS's Opposition is most notable for what it does *not* say. It does not dispute that the Commonwealth is diverting all employer contributions *away* from ERS to the Commonwealth to continue to fund pension obligations without first paying the ERS Bondholders – an obvious impairment of Movants' collateral.[4] It does not dispute that ERS twice agreed to provide adequate protection before its Title III case was even filed, and then agreed to provide further protection during this Title III case through at least October 31, 2017 – the date of the anticipated summary judgment hearing in the Declaratory Relief Action. It does not dispute that the summary judgment hearing was unavoidably delayed in part because of Hurricanes Maria and Irma. It does not dispute that, in any event, ERS agreed to transfer funds even *after* October 31, 2017 (until the conclusion of the Briefing Period) to the Fiscal Agent "***for the payment of interest on ERS Bonds***…the amount necessary to pay interest on the ERS Bonds due and payable…***in accordance with the ERS Bond Resolutions***."[5] It does not dispute that the Briefing Period, as that term is defined in the Joint Stipulation, has not yet concluded. And finally, it does not dispute that the Joint

---

[2] Case No. 17-3283, Dkt No. 1978; Case No. 17-3566, Dkt. No. 230.

[3] Case No. 17-3283, Dkt No. 1866; Case No. 17-3566, Dkt. No. 221.

[4] Terms not otherwise defined herein shall have the meaning ascribed to them in Motion.

[5] Joint Stipulation, ¶ F (emphasis added).

- 1 -

Stipulation expressly reserves the ERS Bondholders' right to seek further adequate protection from this Court on or after October 31, 2017, if necessary.[6]

2. Instead, ERS essentially argues that the Court should deny the Motion because ERS has already made some adequate protection payments under the Joint Stipulation, which it unilaterally deems legally sufficient, and because the Court's ruling on the motions for summary judgment is purportedly "imminent." These are not grounds for denying adequate protection where ERS Bondholders' collateral is blatantly being diverted, or for ignoring the mandates of this Court's Order, at a time when the ERS Bondholders' liens have not been avoided. To be clear, all that Movants seek is to maintain the *status quo* by continuing the Interim ERS Bondholder Protections pending this Court's ruling on the parties' motions for summary judgment in the Declaratory Relief Action.

3. Alternatively, Movants seek, at the very least, enforcement of the Court's Order and the Joint Stipulation, which require payment of the Monthly Interest Payments pending the Court's summary judgment ruling in the Declaratory Relief Action. ERS attempts to avoid the Joint Stipulation's plain language requiring such payments by arguing that Schedule 1 required the Court to rule on summary judgment by October 31, 2017. But there is no summary judgment "ruling deadline" in Schedule 1, much less a firm October 31 deadline. Indeed, Schedule 1 does not even require that the summary judgment *hearing* take place on October 31; rather, such hearing was expressly subject to the Court's schedule. Moreover, ERS's interpretation of the Joint Stipulation completely ignores the explicit language in paragraph F that requires ERS to transfer funds to the Fiscal Agent until the conclusion of the Briefing Period "***for the payment of interest***

---

[6] Joint Stipulation, ¶ C ("By entry into this Stipulation, the Bondholders' Motion is resolved, *without prejudice to being re-filed on or after October 31, or due to changed circumstances.*") (emphasis added).

- 2 -

*on the ERS Bonds*," which shall be "*in accordance with the ERS Bond Resolutions.*"[7]

4.  Movants are based in Puerto Rico and fully appreciate the devastation caused by Hurricanes Maria and Irma. It is this devastation that compelled Movants to file the Motion in the first place. The majority of Movants' thousands of Puerto Rico-based shareholders are retirees who heavily rely on the Monthly Interest Payments to meet their most basic living expenses. For them, ERS's assurance that the Court's summary judgment ruling is "imminent" is not adequate substitute for the Court-ordered payments that both Judge Besosa and this Court approved as these residents strive to rebuild their lives in the midst of an unprecedented crisis.

## ARGUMENT

### I. BECAUSE ERS HAS NOT MET ITS BURDEN THE AUTOMATIC STAY SHOULD BE CONDITIONED ON THE CONTINUATION OF THE INTERIM BONDHOLDER PROTECTIONS

5.  ERS argues two reasons for why the Court should not modify the automatic stay: *first*, Movants are not entitled to additional adequate protection because the funds in the Prepetition Segregated Account and Post-Petition Segregated Account "remain available and undisturbed," Opposition at 4; and, *second*, "judicial economy favors awaiting the Court's ruling on summary judgment before awarding any additional payments," *id.* at 5. Neither of these arguments is availing or legally sufficient to establish adequate protection of Movants' property interests.[8]

---

[7] *See* Joint Stipulation, ¶ F (emphasis added).

[8] The Official Committee of Retiree Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") filed a "joinder" to ERS's Opposition on December 15, 2015 [17-BK-3283, Dkt. No. 2028; 17-BK-3566, Dkt. 231]. Rather than merely joining the Opposition, however, the Retiree Committee attempts to argue that (i) the Motion does not seek to maintain the status quo where it seeks interest payments; and (ii) ERS Bondholders are under-secured and therefore not entitled to interest payments. As an initial matter, these objections to the Motion are untimely and should not be considered. But in any event, they do not warrant denial of the Motion. The Motion seeks to preserve the status quo and ERS Bondholders are entitled to interest payments because, as described more fully in Section II below, the Court's Order mandates them. In other words, Movants seek nothing more than that which they are already entitled to under the Order. Moreover, the Retiree Committee's argument that adequate protections payments are "unnecessary" where "the existence of future payments itself provides adequate protection," Joinder at 3, fails because, as described more fully below, it wholly ignores the fact that the Commonwealth has enacted

6. As a threshold matter, the Joint Stipulation expressly reserves the ERS Bondholders' right to seek further adequate protection on or after October 31, 2017. Joint Stipulation, ¶ C ("By entry into this Stipulation, the Bondholders' Motion is resolved, *without prejudice to being re-filed on or after October 31, 2017, or due to changed circumstances.*") (emphasis added). This right is unqualified; thus, it is wholly irrelevant that the funds in the Prepetition and Post-Petition Segregated Accounts may "remain available and undisturbed." By filing the Motion, the Movants renew their request for adequate protection as permitted by the Joint Stipulation.

7. Secondly, ERS as the debtor bears the burden of proof on the question of adequate protection. *See* 11 U.S.C. § 362(g) ("In any hearing…concerning relief from the stay…the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property…and the party opposing such relief has the burden of proof on all other issues."); 48 U.S.C. § 2161(a) (incorporating by reference 11 U.S.C. § 362). ERS has not satisfied that burden. Perhaps because the diversion of the ERS Bondholders' collateral is so blatant, ERS chooses to narrowly focus on the ERS Bondholders' lien rights in the Prepetition and Post-Petition Segregated Accounts and ignore the broad scope of Movants' property interests, which are required to be protected and that need protection as a result of the Oversight Board's and the Commonwealth's efforts to divert the ERS Bondholders' collateral and use it.

8. As set forth more fully in the Stay Relief Motion, Movants hold a security interest in the "Pledged Property," which the ERS Bond Resolution defines broadly to include (a) all "Revenues," including, among other things, all employer contributions received by the ERS or the Fiscal Agent "and any assets in lieu thereof or derived thereunder which are payable to [the ERS]

---

legislation that cuts off any future payments. Indeed, even before the Commonwealth enacted this more recent legislation, the First Circuit had already recognized that the uncertainty surrounding future employer contributions to ERS could affect the repayment of the ERS Bonds and, without a replacement lien on the diverted employer contributions, the ERS Bondholders were faced with "the prospect of being left with a mere unsecured claim." *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 513 (1st Cir. 2017).

pursuant to [the Enabling Act]"; (b) all "right, title, and interest of [the ERS] in and to" the property described in (a) and "all rights to receive the same"; (c) the funds, accounts, and subaccounts held by the Fiscal Agent; (d) any and all other rights and personal property of every kind pledged and assigned by the ERS for additional security; and (e) "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property. ERS Bond Resolution § 501 & Exh. B, VI-33, VI-36, VI-37. *See* Stay Relief Motion at 19-21. In other words, the ERS Bondholders' collateral is broader than just the funds in the Prepetition and Post-Petition Segregated Accounts.

9. As the Court is aware, at the direction of the Commonwealth, ***employer contributions have been diverted away from ERS since July 1, 2017***. ERS does not dispute this in its Opposition because it cannot. Future employer contributions flowing to ERS are not expected either, as the Commonwealth enacted legislation that completely dismantles ERS and replaces it with a new way of collecting and distributing employer contributions. *See* Motion at 11. This blatant conversion of the ERS Bondholders' Pledged Property is the subject of various post-petition claims by the ERS Bondholders against ERS and others. *See Altair Global Credit Opportunities Funds (A) LLC, et. al. v. Commonwealth of Puerto Rico*, *et al.,* Case No. 17-00219/220 (D. P.R.). In short, without the Post-Petition Deposits the ERS Bondholders have no protection, much less adequate protection, from such continuing harm. *See Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 513 (1st Cir. 2017) (noting that the uncertainty surrounding future employer contributions to ERS could affect the repayment of the ERS Bonds and, without a replacement lien on the diverted employer contributions, the ERS Bondholders were faced with "the prospect of being left with a mere unsecured claim").

10. ERS's "judicial economy" argument likewise fails. ERS simply assumes that the Court will "imminently"[9] rule on the summary judgment motions in the Declaratory Relief Action, and that ERS will prevail when the Court does. Meanwhile, the Court announced at the December 13, 2017 summary judgment hearing that it would take the motions under advisement and gave no indication of how soon it would rule. Moreover, ERS provides no authority whatsoever to support the proposition that it can unilaterally disregard (i) Bankruptcy Code section 362(d)'s adequate protection requirement, or (ii) the ERS Bondholders' constitutionally protected property interests, or (iii) this Court's Order, simply because it is purportedly easier to do so in the interim.[10]  *See* Stay Relief Motion at 18 (explaining that the adequate protection requirement is a constitutional imperative that safeguards a secured creditor's property rights). Indeed, ERS's prediction that a ruling is "imminent" is cold comfort to the ERS Bondholders who, in the interim, are being deprived of their Monthly Interest Payments and Post-Petition Deposits while they watch the Commonwealth diver their collateral.

11. In sum, because Movants' property interests are not adequately protected, Movants are entitled to relief from the automatic stay triggered by ERS's Title III filing. *See* 11 U.S.C. § 362(d)(1) ("the court shall grant relief from the stay . . . for cause, including the lack of adequate protection").

## II. ERS IGNORES THE ORDER'S PLAIN LANGUAGE, AND, THEREFORE, IN THE ALTERNATIVE, THE COURT SHOULD ENFORCE THE PROVISION OF

---

[9] *See* Opposition at 1, 5 n. 6.

[10] ERS cites *In re Island Helicopter Corp.*, 63 B.R. 809, 819 (Bankr. E.D.N.Y. 1986) for the proposition that judicial economy favors awaiting the Court's ruling before awarding any further adequate protection payments. Opposition at 5. But the court in *Island Helicopter* only deferred ruling on a final adequate protection determination in order to allow the debtor time to provide additional information on the condition of the collateral *after* it first reached a preliminary finding that the creditor's security interests were already being adequately protected. Further, the court in *Island Helicopter* found that the "debtors have taken significant steps to maintain and upgrade the value of the [collateral]" and "have further offered [the creditor] replacement liens in all new engines purchased for the collateral," *id.*, —quite different from the situation here where the ERS Bondholders' collateral is being blatantly diverted.

- 6 -

**MONTHLY INTEREST PAYMENTS**

12. ERS acknowledges its obligation under paragraph F of the Joint Stipulation to transfer Monthly Interest Payments to the Fiscal Agent until the conclusion of the Briefing Period, but now argues that the term "Briefing Period" (defined in paragraph C of the Joint Stipulation) has a hard stop of October 31, 2017. *See* Opposition at 6. ERS emphasizes the concluding phrase in the definition – "in accordance with Schedule 1" – for support.[11] But nowhere does Schedule 1 provide that the Court must render a *ruling* by October 31. *See* Joint Stipulation, Sch. 1. In fact, Schedule 1 does not even require the Court to *hear* the motions for summary judgment on October 31. *Id*. (noting that the anticipated October 31 hearing is "*subject to Court's schedule*") (emphasis added).

13. To be sure, the parties in drafting the Joint Stipulation could not – and did not – impose any such firm "ruling deadline" on the Court. It is precisely because the parties could *not* anticipate when the Court would render its ruling that they drafted the only unambiguous hard stop for the Monthly Interest Payments as that date when the Court renders its summary judgment ruling, whenever that may be.[12]

14. ERS argues paragraph F of the Joint Stipulation only requires ERS to transfer the Monthly Interest Payments to the Fiscal Agent by the 20th of each month until October 31, but does not authorize the Fiscal Agent to pay those funds as interest payments to the ERS Bondholders

---

[11] "The term 'Briefing Period' shall mean the date hereof through and including the date that the Court renders a ruling with respect to the Parties' motions for summary judgment on the Declaratory Relief Action in accordance with Schedule 1." Joint Stipulation at ¶ C.

[12] Moreover, ERS's argument that the original litigation schedule set forth in Schedule 1 is controlling ignores the Court's subsequent order extending the litigation schedule, which explicitly said that the "parties shall proceed according to the schedule below *which replaces the calendar set by the Joint Stipulation*[.]" *Order Granting Defendants' Urgent Motion to Extend Deadline in Joint Stipulation*, Dkt. No. 687 at 2 (emphasis added). That Order granted the ERS Bondholders' motion to extend the litigation deadlines set forth in Schedule 1 based on ERS's dilatory discovery practices and the Hurricanes, *see* Dkt. No. 62, and set December 13, 2017 as the summary judgment deadline.

after October 1. Opposition at 6. As stated above, however, this October "deadline" argument is wrong. Moreover, ERS ignores the explicit language that paragraph F requires ERS to make such transfers to the Fiscal Agent "***for the payment of interest on the ERS Bonds***," which shall be "***in accordance with the ERS Bond Resolutions.***" *See* Joint Stipulation, ¶ F (emphasis added). On October 18, 2017, ERS transferred funds to the Fiscal Agent "for payment of interest on the ERS Bonds," as paragraph F requires, which the Fiscal Agent in turn paid "in accordance with the ERS Bond Resolutions" when it disbursed the November 1 interest payment to the ERS Bondholders, as paragraph F requires.[13]

15. Indeed, paragraph F carries over the identical language from the earlier stipulated adequate protection order that Judge Besosa entered prior to ERS's Title III case[14] – and each time, ERS deposited the funds with the Fiscal Agent, and the Fiscal Agent made the monthly interest payments to the ERS Bondholders. ERS has never alleged that the Fiscal Agent was not authorized to make those interest payments under identical language as contained in the Joint Stipulation. Nor did ERS ever take the position, as it does now, that the Fiscal Agent was required to first seek "confirmation" from ERS before it made any such interest payments. *See* Opposition at 7 n. 9. Indeed, neither the Joint Stipulation nor the ERS Bond Resolution requires that the Fiscal Agent

---

[13] ERS tries to down play this course of conduct by arguing that it transferred the funds to the Fiscal Agent on October 18, 2017 "so that BNY could distribute an interest payment *after* the resolution of summary judgment *if* authorized by ERS." Opposition at 7 (emphasis added). This argument is nonsensical. First, paragraph F of the Joint Stipulation requires that ERS make such transfers for the payment of interest in accordance with the ERS Bond Resolution. And, as the Fiscal Agent points out in its letter to AAFAF regarding the payment of the November 1 Monthly Interest Payment, the ERS Bond Resolution generally *requires* the Fiscal Agent to pay interest on the ERS Bonds as and when due and payable so long as there are funds on deposit to make such payment. *See* Motion, Exh. E at 2 (citing ERS Bond Resolution §§ 504-505,701).

[14] *See* Stay Lift Motion, Exh. E at 3 (April 11, 2017 order approving stipulation provides that "ERS shall transfer to the Fiscal Agent for the payment of interest on the ERS Bonds, no later than the 20th day of that month, the amount necessary to pay interest on the ERS Bonds due and payable on the first day of the next succeeding month, in accordance with the ERS Bond Resolution.").

do so.

16. ERS argues that Movants' interpretation of Joint Stipulation fails to give effect to October 1, 2017 date in paragraph D and should therefore be rejected. Opposition at 7. But Movants' interpretation *does* give effect to paragraph D, and in fact harmonizes paragraphs D and F to give them consistent meaning. S*ee* Motion at 14. Meanwhile, ERS's interpretation requires the Court to ignore the explicit language that ERS's transfers to the Fiscal Agent are "***for the payment of interest on the ERS Bonds***" which shall be "***in accordance with the ERS Bond Resolutions.***" *See* Joint Stipulation, ¶ F.[15] It also requires the Court to ignore the fact that the Joint Stipulation contains a provision expressly delineating the dates on which the Post-Petition Deposits are to be made *irrespective* of whether the Briefing Period remained open, but does not contain any such limiting language for the Monthly Interest Payments. *Compare* Joint Stipulation, ¶ F ("Except as set forth in Schedule 2, no further deposits into the [Post-Petition Segregated Account] shall be required without further Court order until the Briefing Period ends, at which time the rights of the Parties will be determined by applicable law.") *with id.* ("[U]ntil the conclusion of the Briefing Period, ERS shall transfer from the Prepetition Segregated Account to the Fiscal Agent for the payment of interest on the ERS Bonds…the amount necessary to pay interest on the ERS Bonds due and payable…in accordance with the ERS Bond Resolution").

17. ERS finally argues that contract interpretation principles provide that specific language supersedes general language, and therefore its interpretation prevails. Opposition at 8. As ERS's own authority recognizes, however, this principle only applies where (1) the contract's

---

[15] ERS argues that there would be no need to reserve the ERS Bondholders' right in the Joint Stipulation to seek further adequate protection after October 31 if the Joint Stipulation authorized Monthly Interest Payments after October 31. Opposition at 8 n. 10. But the Joint Stipulation is clear that the adequate protection package consists of *both* the Monthly Interest Payments *and* the Post-Petition Deposits. *See* Joint Stipulation, ¶¶ C, D, F.

terms are conflicting, *and* (2) one term is ambiguous while the other is unequivocal. *See Newharbor Partners, Inc. v. F.D. Rich Co., Inc.*, 961 F.2d 294, 299 (1st Cir. 1992) ("[I]it is only logical that an unequivocal term will control over a conflicting ambiguous term."). Neither of those conditions is present here.

18. Paragraphs D and F are not conflicting but rather can, and indeed must, be read in harmony. *See Gomez v. Rivera Rodriguez*, 344 F.3d 103, 121 (1st Cir. 2003) (stating that it "is axiomatic that a contractual term should be construed in the context of the contract as a whole" and "separate clauses should be reconciled whenever possible"); *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 299 (1st Cir. 2004) (terms should be reconciled "[e]ven if a contract might arguably appear ambiguous from its words alone…if the alternative reading is inherently unreasonable when placed in context"). Paragraph D explicitly mandates Monthly Interest Payments "through the interest payment due on October 1, 2017," while paragraph F explicitly addresses the specific circumstance faced by the parties today – what happens when the Court has not yet ruled on the summary judgment motions – and mandates the transfer "for the payment of interest on the ERS Bonds" continue through the date of this Court's ruling on the summary judgment motions.

19. Paragraphs D and F are also both equally unequivocal. Paragraph F is entirely precise in providing that payments are due through the end of the Briefing Period, which is a defined term meaning that certain date on which the Court rules on the summary judgment motions. Unlike in *Newharbor*, paragraph F is no "less obvious" than paragraph D. *Cf. id.* (one clause that was "quite clear" controlled over another that was "far less obvious").

20. Accordingly, neither paragraph controls over the other, and the two must be read in harmony just as Movants propose. *See* Motion at 14-15. For this reason, the Court should enforce

- 10 -

its Order and require, at a minimum, that the Monthly Interest Payments continue until the Court renders a ruling on the summary judgment motions in the Declaratory Relief Action.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the Motion, Movants respectfully request that the Court enter an order (a) conditioning the automatic stay on the continuation of the *status quo* Interim ERS Bondholder Protections mandated in this Court's Order through and until such time as the Court enters a ruling on the parties' motions for summary judgment in the Declaratory Relief Action; (b) in the alternative, enforcing the Court's Order and requiring ERS to continue Monthly Interest Payments through and until such time as the Court enters a ruling on the parties' motions for summary judgment in the Declaratory Relief Action; or (c) in the alternative, granting the Stay Relief Motion and any such other and further relief as the Court may deem proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today December 16, 2017.

By:

| | |
|---|---|
| */s/ Alicia I. Lavergne-Ramírez* | */s/ John K. Cunningham* |
| José C. Sánchez-Castro | Glenn M. Kurtz (*pro hac vice*) |
| USDC-PR 213312 | John K. Cunningham (*pro hac vice*) |
| jsanchez@sanpir.com | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez | New York, NY 10036 |
| USDC-PR 215112 | Tel. (212) 819-8200 |
| alavergne@sanpir.com | Fax (212) 354-8113 |
| | gkurtz@whitecase.com |
| Maraliz Vázquez-Marrero | jcunningham@whitecase.com |
| USDC-PR 225504 | |
| mvazquez@sanpir.com | Jason N. Zakia (*pro hac vice*) |
| | WHITE & CASE LLP |
| SÁNCHEZ PIRILLO LLP | 200 S. Biscayne Blvd., Suite 4900 |
| 270 Muñoz Rivera Avenue, Suite 1110 | Miami, FL 33131 |
| San Juan, PR 00918 | Tel. (305) 371-2700 |
| Tel. (787) 522-6776 | Fax (305) 358-5744 |
| Fax: (787) 522-6777 | jzakia@whitecase.com |

*Counsel for Movants Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*

*Counsel for Movants Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send certifications of such filing to all CM/ECF participants in this case.

*/s/ Alicia I. Lavergne-Ramírez*
Alicia I. Lavergne-Ramírez
