## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO<br>RICO,<br><br>Plaintiff,<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO<br>RICO<br><br>Debtor[1] | CIVIL NO.: 17-BK-03283 (LTS)<br><br>PROMESA<br><br>TITLE III |

### COOPERATIVA DE SEGUROS MULTIPLES' REPLY TO MOTION FOR RECONSIDERATION OF ORDER [ECF NO. 1765]

**TO THE HONORABLE COURT:**

**COMES NOW** creditor **Cooperativa de Seguros Múltiples de Puerto Rico ("Cooperativa")**, through the undersigned counsel, and respectfully replies to Debtor's Opposition to its Motion for Reconsideration of its November 13, 2017 Order [ECF No. 1765] ("the Order) as follows:

### INTRODUCTION

Debtor's Objection to the Motion for Reconsideration lays bare the consequences of the November 13, 2017 Order's manifest errors of law. Debtor now posits that Uniform Forfeiture Act

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and PROMESA prevail over the Takings Clause to the Fifth Amendment of the United States Constitution and the United States Supreme Court's jurisprudence interpreting it, allowing it to forfeit private property absent a judicial determination that the forfeiture was proper. It demonstrates how Debtor has employed PROMESA Title III to violate Cooperativa and its loss payees' Fifth Amendment property rights. This is the natural result of the Order's failure to limit Debtor's use of PROMESA Title III to prevent property owners from defending their property.

The Order also failed to clarify whether Debtor reserved the right to assert PROMESA Title III remedies against Cooperativa's UFA Article 19 postjudgment collection efforts, as it claimed in the Opposition to the Motion to Lift Stay and in the Objection which this Reply addresses. The Order's rejection of Cooperativa's request for adequate protection as moot is manifest error insofar as it allows Debtor to use PROMESA Title III remedies to stymie Cooperativa's postjudgment collection efforts.

Cooperativa also brings to the Court's attention persuasive authority from the Commonwealth of Puerto Rico Court of Appeals in support of its argument that 11 U.S.C. §362(b)(4)'s police power exception applies as to allow UFA proceedings to continue as an exception to the PROMESA §301 automatic stay.

## NEITHER PROMESA NOR THE UFA PREVAIL UPON THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

The November 13, 2017 Order held that Cooperativa and its loss payees' property was subject to the PROMESA §301 Stay because Debtor has at least a conditional interest in the property subject to the Stay. In doing so the Order created a situation where the Debtor may now take private property from its owners without observing due process. This is reduced to its simplest form in Debtor's Objection:

"The Commonwealth retains a conditional interest in any proceeds from a sale of

the Forfeited Property under section 19 of the UFA. See UFA § 1724t. Such conditional interest affords any sale proceeds protection as property of the Debtor's estate….**Accordingly, the sale proceeds constitutes property of the Commonwealth** and any Court order requiring the Commonwealth to segregate such proceeds is an impermissible attempt to interfere with and control property of the Commonwealth."

*Objection*, at p. 8-9 (Emphasis ours)

Debtor also points to PROMESA §305 in support of this argument. *Id.,* at FN9.[2]

Debtor's conduct, endorsed by the Order, inverts the constitutionally protected relationship between the parties and the property. It allows Debtor to treat its conditional interest in the property pursuant to the UFA as superior to the owner's title. It also allows Debtor to assert title over the property prior to a Commonwealth Court ruling on whether the forfeiture was proper, and treats the owner's defense of its own property as a claim from which Debtor must be protected.

Debtor's conversion of its interest from conditional to absolute, made possible by the Order, contravenes clearly established Supreme Court precedent which holds that such an interest is not self-executing. *U.S. 92 Buena Vista Ave.*, 507 U.S. 111, 127 (1992) ("*The vesting of its title in the property relates back to the moment when the property became forfeitable. Until the Government does win such a judgment, however, someone else owns the property. That person may therefore invoke any defense available to the owner of the property before the forfeiture is decreed.*")  The Order also allows Debtor to achieve this goal using the relation-back doctrine, again contrary to established Supreme Court precedent. ("*The Government cannot profit from the common-law doctrine of relation back until it has obtained a judgment of forfeiture. And it cannot profit from the statutory version of that doctrine …until respondent has had the chance to invoke and offer evidence to support the innocent owner defense." ) Id.*

---

[2] The Objection argues that Cooperativa's issue is properly with the UFA and not PROMESA. This argument ignores that Debtor has and continues to employ PROMESA to thwart the constitutionally required defenses that the UFA provides property owners.

The UFA grants seized property owners a window of opportunity to post a bond and avoid Debtor's sale of its property. Debtor used the PROMESA §301 Stay to prematurely close that window and now claims that the sale proceeds are its own. It is now using PROMESA Title III including §305 to keep said property beyond their original owners' reach and avoid returning it even after its owners' superior title is validated by Commonwealth Courts. Cooperativa submits that Debtor's use of the §301 stay and PROMESA Title III in forfeiture proceedings in general is a manifestly erroneous affront to Cooperativa's Fifth Amendment property rights as interpreted by the United States Supreme Court, and that the November 13, 2017 Order enables that affront. This miscarriage of justice requires the Court's correction.

## THE NOVEMBER 13 ORDER REQUIRES CLARIFICATION CONCERNING THE SCOPE OF THE RELIEF GRANTED

The November 13 Order also held that Cooperativa is not entitled to adequate protection because Debtor's consent to the lifting of the stay rendered such relief moot. At the start, it merits noting that two distinct forms of property exist in the Forfeiture Cases, to wit: (1) the seized vehicle, and (2) the security interest in the same. The November 13 Order provides Cooperativa *no relief whatsoever* with respect to Debtor's destruction of the security interest when it disposes of them pursuant to the UFA. The Order does not so much as address this form of property. This omission is compounded by Debtor's argument that Cooperativa's sole remedy is a PROMESA Title III claim. The Order allows Debtor to further compromise Cooperativa's property by removing the security interest that would otherwise grant it a higher priority of recovery.

With respect to the seized vehicles, the Order held that Debtor's consent to the lifting of the stay rendered Cooperativa's request for adequate protection moot. Debtor's Objection cited *HSBC Bank USA v. United Airlines, Inc. (In re UAL Corp.)*, 360 B.R. 780 (N.D. IL 2007), in support of this holding. The *HSBC* Court held that that adequate protection is no longer necessary

4

when (1) the debtor is no longer using the asset or (2) when lift of the stay has been granted allowing the creditor to pursue all nonbankruptcy remedies to claim its interest in the property.[3]

Debtor clearly continues to administer the seized assets in those cases where it refuses to honor the UFA bond process. Thus the only manner in which the Order would moot Cooperativa's request were if the lift of the stay allowed it to pursue all nonbankruptcy remedies against Debtor.

Cooperativa submits that the November 13 Order does not unqualifiedly lift the stay insofar as it is based on Debtor's qualified consent to the same. *See Debtor's Response to Cooperativa Motion to Lift Stay, ECF No. 1574,* at. P. 13[4]; *November 13, 2017 Order, ECF No. 1765*, at. P. 4.[5] Through this limited consent Debtor reserved the right to assert PROMESA Title III remedies against Cooperativa's efforts to collect UFA judgments pursuant to UFA Article 19 ***including treatment of the Forfeiture Actions under a Title III plan of adjustment***. Debtor's Objection reiterates this reservation. *Objection*, at p. 11. Also, the Objection's argument cited above posits

---

[3] "Thus, adequate protection operates only prospectively. If the automatic stay is no longer in effect--because relief from the stay has been granted or the property has been surrendered or sold--adequate protection has no function. Relief from the stay leaves the creditor free to claim whatever interest in the property it has under applicable nonbankruptcy law, and surrender or sale of the property eliminates any effect of the automatic stay. Section 363(e)--the provision of the Code under which HSBC seeks an award of adequate protection--clearly reflects its prospective nature: "[O]n request of an entity that has an interest in property used . . . by the trustee, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." If the property in question is no longer being administered by a trustee (or debtor in possession) under the protection of the automatic stay, there is no use of the property by the trustee that can be "conditioned" on the trustee providing adequate protection. When the bankruptcy estate's use of collateral has ceased, so has the rationale for adequate protection. *See In re Best Prods. Co., 149 B.R. 346, 348* (S.D.N.Y. 1993) (affirming denial of an award of adequate protection after the debtor surrendered the collateral and noting that "Section 363(e) is by its terms inapplicable when the Bankruptcy Court has no effective ability to condition the property's present or future use").

[4] "*For the foregoing reasons, the Commonwealth requests that the Court modify the Title III Stay to allow the Forfeiture Actions to proceed to judgment in the ordinary course in accordance with the UFA and, if judgment is entered in Movant's favor, to allow Movant to pursue remedies against the Commonwealth under section 19 of the UFA, solely with respect to the return of the Forfeited Property or compensation owed in connection with the disposition of the Forfeited Property; provided, however, that the Commonwealth reserves all rights, defenses, and protections with respect to any matters pending or that may arise in the Title III Case, including the treatment of any claims arising from the Forfeiture Actions under a plan of adjustment or otherwise in the Title III Case.*" (Emphasis ours)

[5] "*The Court finds that the Commonwealth's proffered consent, which permits Cooperativa's prosecution through all phases of its actions under the UFA, including UFA remedies with respect to the return of property or compensation owed in connection with the disposition of property, is sufficient to permit Cooperativa to protect its rights under Commonwealth law.*"

that UFA seized asset sale proceeds are Debtor's property beyond Cooperativa's reach pursuant to

PROMESA §305, is inconsistent with the notion that Cooperativa may freely pursue UFA Article

19 postjudgment remedies to recover those very same sale proceeds. *Objection*, at p. 4

Debtor has represented to at least one Commonwealth Court of First Instance that the

November 13 Order keeps the PROMESA §301 Stay in effect as it respects to UFA Article 19

postjudgment collection proceedings. As late as today, it moved a Court of Appeals to stay one of

the Forfeiture Cases despite the consent upon which the November 13 Order is predicated.[6] In

doing so Debtor alleged before a Court of Appeals that the PROMESA §301 Stay prohibits

Cooperativa from collecting a judgment pursuant to UFA Article 19.[7] A copy of the Motion is

attached as Exhibit A. Cooperativa will move the Court for an extension of time to submit an

English translation of the Judgment in compliance with Local Rule 5(g).

---

[6] Motion to Lift Stay Attachment A No. 108., *Cooperativa de Seguros Multiples v. Estado Libre Asociado de Puerto Rico*, Case No. KLAN2017-01470, Commonwealth of Puerto Rico Court of Appeals, Caguas-San Juan Panel III;

[7] "It must not be ignored that, according to the provisions of Article 19 of Law No. 119-2011, should judgment be entered granting the complaint challenging the forfeiture, the Government of Puerto Rico will be required to return the property to the Plaintiff. When it has disposed of the same, the Government of Puerto Rico shall pay the assessed value at the time of seizure or the amount for which it was sold, whichever is greater, plus legal interest, in accordance with the Rules of Civil Procedure as amended assuming the assesed value as the principal amount.  34 L.P .R.A. § 1724p. Therefore, the Commonwealth would be disbursing public funds to satisfy the referenced judgment, which are clearly the property of the estate, subject therefor to PROMESA Title III's automatic stay.
...
If the Government of Puerto Rico is obligated to comply with the payment of the assessed value of the seized vehicle, the estate will be affected to the detriment of the remaining creditors." (Our translation)

"No se puede pasar por alto, que de acuerdo a las disposiciones del Artículo 19 de la Ley Núm. 119-2011, de recaer sentencia declarando con lugar la demanda impugnando la confiscación, el Gobierno de Puerto Rico está obligado a devolver la propiedad ocupada al demandante. Cuando haya dispuesto de la misma, el Gobierno de Puerto Rico le pagara el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más el interés legal prevaleciente, de conformidad con las Reglas de Procedimiento Civil, según enmendadas, tomando como base el valor de tasación, a partir de la fecha de la ocupación. 34 L.P .R.A. § 1724p. Así pues, el Estado estaría desembolsando fondos públicos para satisfacer la referida sentencia, los que claramente son propiedad del caudal o "estate", sujeto así a la protección que ofrece la paralización automática del Título III de PROMESA....

Si el Gobierno de Puerto Rico es obligado a cumplir con el pago del valor de tasación del bien ocupado, el caudal ("estate") se vería afectado en detrimento de los demás acreedores." Debtor's Motion for Reconsideration, Exhibit A, at P. 3.

It cannot simultaneously be true that the November 13 Order both permits Cooperativa to exercise all nonbankruptcy remedies to collect UFA judgments as *HSBC* requires and keeps such claims subject to Title III remedies as Debtor proposes. If the Order allows Debtor to assert Title III remedies against Cooperativa's UFA postjudgment actions, then Cooperativa's adequate protection request is not moot and the Order's holding to the contrary is manifestly erroneous and unjust. Cooperativa respectfully requests that the Court clarify whether or not its lifting of the stay allows it to pursue UFA Article 19 postjudgment remedies free of the Title III reservations with which Debtor qualified its consent to the lifting of the stay and which it continues to assert before Commonwealth courts.

### PUERTO RICO STATE COURT HELD THAT 11 USC §362' AUTOMATIC STAYS' POLICE POWER EXCEPTION APPLIES TO UFA PROCEEDINGS AGAINST DEBTOR

On December 5, 2017, the Puerto Rico Court of Appeals for the Bayamon and Aibonito Judicial Region, entered Judgment affirming a trial court judgment for Cooperativa in the matter of *Luis O. Rodriguez Velez v. Commonwealth of Puerto Rico,* Case No. KLAN2016-00095. In this matter the Debtor appealed an adverse judgment in a prepetition UFA proceeding, and subsequently sought stay of the proceedings pursuant to PROMESA §301. The Court of Appeals *motu propio* rejected Debtor's argument that PROMESA §301 warranted staying the appeal, holding that 11 U.S.C. §362's police power exception applied. It held that Debtor seized the property pursuant to the UFA in furtherance of public safety, public welfare and public policy concerns and not due to a pecuniary interest in the seized property. It further held that such actions fall within §362's police power exception to the automatic stay pursuant to *In re Nortel Networks, Inc.*, 669 F.3d 128, 139-140 (3d Cir. 2011); *In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004); *Chao v. Hosp. Staffing Servs. Inc.,* 270 F.3d 374, 385 (6th Cir. 2001); *In re Spookyworld, Inc.*, 346 F.3d 1, 9 (1st Cir. 2003).

7

Cooperativa is aware that this ruling is not a binding precedent for this Court but presents it as a persuasive authority. A copy of the Judgment is attached as Exhibit B. Cooperativa will move the Court for an extension of time to submit an English translation of the Judgment in compliance with Local Rule 5(g).

CONCLUSION

This Court's November 13, 2017 Order held that UFA Forfeiture Proceedings are subject to the PROMESA §301 Stay and that Cooperativa was not entitled to adequate protection under 11 U.S.C. §362. In doing so, the Order allows Debtor to employ UFA in conjunction with PROMESA Title III in a manner that violates Cooperativa and its loss payees' Fifth Amendment rights by placing assets seized under UFA beyond their owners' reach. This structure contravenes Cooperativa's property rights as and is manifestly erroneous.

The Order also contains manifest error as it regards Cooperativa's adequate protection claim. It ignores an entire form of property for which Cooperativa sought protection. It also failed to address Debtor's argument that it may assert PROMESA Title III defenses to Cooperativa's UFA Article 19 postjudgment collection proceedings. Were Debtor allowed to so proceed the Order's holding that adequate protection is moot would be manifestly erroneous. Cooperativa requests that the Court clarify the scope lift of the stay and of Debtor's PROMESA Title III remedies in the Forfeiture Actions.

Finally, Cooperativa brings to the Court's attention as persuasive authority a Puerto Rico Court of Appeals judgment holding that 11 U.S.C. §362's police power exception may serve to deny Debtor's request for stay pursuant to PROMESA §301 as Cooperativa argued in its Motion to Lift Stay.

RESPECTFULLY SUBMITTED.

In Lake Worth, Florida, for San Juan, Puerto Rico, on this 19th day of December 2017.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

> VALDES ORTIZ LAW OFFICES, PA
> 8461 Lake Worth Rd.
> Suite 420
> Lake Worth, FL 33467
> Tel: (561) 340-1410
>
> **s/ Hector E. Valdes Ortiz**
> HECTOR E. VALDES ORTIZ
> USDC-PR No. 219411
> hvaldes@v-olaw.com
>
> *Counsel for Creditor*
> *Cooperativa de Seguros Múltiples*
> *De Puerto Rico*

# EXHIBIT

# A

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN Y AIBONITO
PANEL VI

| | | |
|---|---|---|
| LUIS O. RODRÍGUEZ VÉLEZ<br><br>Apelado<br><br>v.<br><br>ESTADO LIBRE ASOCIADO<br>DE PUERTO RICO<br><br>Apelante<br><br>COOPERATIVA DE SEGUROS<br>MÚLTIPLES DE PUERTO<br>RICO; RELIABLE FINANCIAL<br>SERVICES, INC.<br><br>Apelado<br><br>v.<br><br>ESTADO LIBRE ASOCIADO<br>DE PUERTO RICO<br><br>Apelante | **KLAN201600095** | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil Núm.:<br>DAC2012-3114<br>DAC2012-1611<br><br>Sobre:<br>Impugnación de Confiscación |

Panel integrado por su presidenta, la Jueza Surén Fuentes, la Jueza Birriel Cardona y el Juez Flores García[1]

Surén Fuentes, Jueza Ponente

### *SENTENCIA*

En San Juan, Puerto Rico, a _13_ de noviembre de 2017.

Acude ante nos el Estado Libre Asociado de Puerto Rico (ELA), por conducto de la Oficina del Procurador General, quien solicita revisión de una *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 8 de abril de 2015, notificada a las partes el 16 de abril de 2015. Mediante el referido dictamen el Foro Primario declaró Con Lugar la *Moción Solicitando se Dicte Sentencia Sumaria a Favor de la Parte Demandante*, instada por la

---

[1] Véase Orden Administrativa Núm. TA-2017-192.

Cooperativa de Seguros Múltiples de Puerto Rico (Cooperativa), parte apelada ante nos.

I.

El 28 de marzo de 2012, la Policía de Puerto Rico ocupó un vehículo de motor, marca Kia Sportage del año 2011, tablilla HRA-557, registrado bajo el nombre del señor Luis O. Rodríguez Vélez, bajo el fundamento de que el mismo había sido utilizado en violación a los Artículos 192, 216, 235, y 235(a) del Código Penal.

El 31 de mayo de 2012 la Cooperativa y Reliable Financial Services, Inc. (Reliable), instaron *Demanda* sobre Impugnación de Confiscación contra el ELA. Reliable indicó ser acreedor financiero del automóvil objeto de ocupación, y la Cooperativa compareció en calidad de la aseguradora que expidió la póliza que cubre el riesgo de confiscación del vehículo de motor ocupado, y quien se subroga en los derechos como acreedor financiero del mismo.

Luego de varios trámites procesales, el 27 de agosto de 2014, la Cooperativa compareció por sí y en representación de Reliable mediante *Moción Solicitando se Dicte Sentencia Sumaria a Favor de la Parte Demandante*. Señaló que el Estado falló en notificarles la confiscación del vehículo objeto del litigio, ello en contravención con el Art. 13 de la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, 34 LPRA sec. 1724j (Ley de Confiscaciones). Fundamentado en lo anterior, solicitó la nulidad de la confiscación por falta de notificación al acreedor financiero.

Por su parte, el 5 de noviembre de 2014 el ELA presentó oposición a la solicitud presentada por los apelados. Argumentó que Reliable no poseía a su favor un gravamen sobre el vehículo en cuestión, que constara debidamente inscrito en el Departamento de Transportación y Obras Públicas (DTOP), y por tal razón, a su entender, la apelante no venía obligada a notificar al acreedor financiero la confiscación del automóvil.

El 23 de diciembre de 2014 la Cooperativa presentó escrito de Réplica, en la cual indicó que, contrario a lo argumentado por el ELA, Reliable presentó ante el DTOP una Solicitud de Registro de Gravamen Mobiliario sobre el vehículo objeto del caso, el 29 de junio de 2011, ello con anterioridad a la ocupación del mismo. Añadió que, también con anterioridad al 28 de marzo de 2012, fecha en que se realizó la confiscación impugnada, había completado todas las gestiones de su parte para perfeccionar dicho gravamen mobiliario, y que el ELA no demostró que dicha solicitud hubiese sido rechazada o devuelta por la agencia administrativa. Por último, la Cooperativa destacó que conforme a la Ley de Transacciones Comerciales, 29 LPRA sec. 2211, *et seq.*, el gravamen sobre la cosa se constituye desde la presentación del gravamen mobiliario y el pago de los correspondientes derechos arancelarios.

El 8 de abril de 2015, el TPI dictó *Sentencia Sumaria*, en la cual declaró Con Lugar la *Moción Solicitando se Dicte Sentencia Sumaria a Favor de la Parte Demandante*, instada por la Cooperativa. Indicó que el 29 de julio de 2011, Reliable presentó todos los documentos relacionados a la titularidad y el registro de gravamen mobiliario sobre el vehículo de motor en cuestión para su inscripción. Acentuó que dichos documentos fueron aceptados por el DTOP, empero, la agencia administrativa no había inscrito los mismos para la fecha de la confiscación del automóvil, razón por la cual, dicha tardanza en la inscripción del gravamen no podía ser imputada a Reliable. Concluyó el Foro *a quo* que la falta de diligencia por parte del Estado, fue lo que provocó la omisión de notificar a Reliable dentro del término de treinta (30) días que establece la Ley de Confiscaciones, por lo que declaró nulo el acto confiscatorio.

El 1 de mayo de 2015 el ELA solicitó *Reconsideración* del dictamen sumario emitido. Alegó que en vista de que Reliable no sometió copia del contrato de compraventa al por menor a plazos

correspondiente al vehículo de motor gravado, la aquí apelada incumplió con los requisitos para la imposición de gravámenes mobiliarios de venta condicional sobre vehículos de motor, según dispone el Reglamento Núm. 7357 del DTOP para la Imposición y Cancelación de Gravámenes Bajo la Ley de Vehículos y Tránsito (Reglamento Núm. 7357).

La instada solicitud de la apelante fue declarada No Ha Lugar por el TPI, mediante *Resolución* emitida el 4 de noviembre de 2015, y archivada en autos para su notificación el 23 de noviembre de 2015. Indicó el Foro *a quo* que Reliable cumplió con los requisitos que dispone el Reglamento Núm. 7357, toda vez que sometió ante la Instrumentalidad Administrativa, una Declaración de Financiamiento del vehículo de motor objeto de la controversia de marras. Enfatizó el TPI que conforme a la Ley de Instrumentos Negociables y Transacciones Comerciales, 19 LPRA sec. 2324, (Ley de Instrumentos Negociables) dicho documento es suficiente en Derecho para cumplir con los requisitos del Reglamento Núm. 7357, ya que del mismo surgía el nombre del acreedor, el nombre del deudor, y la descripción de la propiedad gravada sujeta a la declaración del financiamiento.

Inconforme, el ELA acudió ante este Tribunal de Apelaciones el 22 de enero de 2017, mediante *Escrito de Apelación*, en el cual formuló el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al declarar Con Lugar la Demanda incoada por la Cooperativa de Seguros Múltiples y Reliable Financial Services, Inc., por no haberse notificado la confiscación conforme lo dispuesto en la Ley Uniforme de Confiscaciones de 2011.

El 29 de enero de 2016 emitimos *Resolución,* concediendo término a la parte apelada para que presentara su posición respecto al Recurso de Apelación instado.

El 1 de junio de 2017 el Departamento de Justicia del Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General (Departamento de Justicia), presentó *Aviso de Paralización de los*

*Procedimientos por Virtud de la Petición Presentada por el Gobierno de Puerto Rico Bajo el Título III de Promesa.* Señaló que, en virtud del Título III de la Ley Federal conocida como "Puerto Rico Oversight Mangement, and Economic Stability Act" (PROMESA), la Junta de Supervisión y Administración Financiera para Puerto Rico presentó una Petición de Quiebra a nombre del Gobierno de Puerto Rico ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. En vista de lo anterior, el Departamento de Justicia solicitó a este Tribunal de Apelaciones, que ordenemos la paralización de los procedimientos del caso de epígrafe, de conformidad con las Secciones 362(a) y 922(a) del Código de Quiebra, según incorporadas por referencia bajo la Sección 301(a) de la Ley PROMESA, 48 USC sec. 2161(a).

II.

La referida Sección 301(a) del Título III de la Ley PROMESA, dispone sobre la aplicación de las Secciones 362(a) y 922(a) del Código de Quiebra. Ello así, dicha disposición permite que ciertas entidades del Gobierno de Puerto Rico (denominadas *covered entities*) puedan hacer una petición de quiebra por conducto de la Junta de Supervisión Fiscal (*Financial Oversight and Management Board*).

Mediante Opinión *Per Curiam*, del 3 de agosto de 2017, en el caso *Rafael Lacourt Martínez, y otros v. Junta de Libertad Bajo Palabra, y otros,* 2017 TSPR 144, el Tribunal Supremo de Puerto Rico señaló que "tanto los tribunales federales como los estatales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad a los casos ante nos."[2] Enfatizó nuestro más Alto Foro en derecho local, que en *Atiles-Gabriel v. Puerto Rico,* 2017 WL 2709757, 2 (D. PR 2017), se rechazó una interpretación excesivamente amplia de la paralización automática bajo PROMESA, y exhortó al Tribunal Apelativo a proceder con cautela



---

[2] Citando, *In Mid-City Parking, Inc.,* 332 B.R. 798, 803 (N.D. Ill. 2005)("Nonbankruptcy forums in both the state and federal systems have jurisdiction to at least initially determine whether pending litigation is stayed"); Véase también: *In re Lenke,* 249 B.R. 1, 10 (D. Az. 2000); *In re Singleton,* 230 B.R. 533, 538-539 (6th Cir. 1999); M.B. Culhane & M.M. White, *Bankruptcy Issues for State Trial Court Judges,* pág. 23 (American Bankruptcy Institute).

en el contexto de la quiebra gubernamental y la paralización de pleitos en virtud de la Ley PROMESA. Conforme a dicha exhortación, analizamos el Derecho aplicable al caso de autos.

Como regla general, la presentación de una acción de quiebra tiene el efecto inmediato y directo de paralizar toda acción civil que cualquier persona natural jurídica haya iniciado, intente continuar o de la cual solicite el pago de Sentencia (debt – related litigation) contra el Gobierno de Puerto Rico, mientras los procedimientos de quiebra se encuentran pendientes ante el Tribunal. 11 U.S.C. Secs. 362(a), 922(a); 48 U.S.C. Sec. 2161(a).

Sin embargo, el propio Código de Quiebras reconoce varios supuestos en los cuales, a modo de excepción, no opera la paralización automática de la acción contra el deudor. Sobre lo anterior, señala la Sección 362(b)(4) del referido estatuto:

> **(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay-
>
> **(1)** [...]
>
> **(2)** [...]
>
> **(3)** [...]
>
> **(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, **to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;** (Énfasis nuestro).

Conforme a la citada Sección, los procedimientos de las agencias gubernamentales en el ejercicio de su poder de razón de Estado, constituye una excepción a la paralización automática. Por lo tanto, como norma general, sus órdenes no son nulas ni anulables por el



hecho de que el perjudicado esté bajo la protección de quiebra cuando las mismas se producen. Claramente, el Congreso persiguió exceptuar el poder de razón del Estado (*police power*) de la regla general suscrita, de forma tal que las agencias gubernamentales ejerzan su poder de regulación, de forma irrestricta ante las disposiciones del Código de Quiebras. *Board of Governors of the Federal Reserve System* v. *MCorp. Financial Inc.,* 502 U.S. 32, 41 (1991); *Word* v. *Commerce Oil Co.,* 847 F.2d 291, 295 (6th Cir. 1988).

La doctrina jurisprudencial ha establecido una distinción en cuanto a si el *police power* del Estado persigue un propósito pecuniario (*pecunary purpose test*), o un propósito de política pública (*public policy test*). Si mediante su acción el Estado persigue proteger un interés gubernamental pecuniario en la propiedad del deudor, entonces procede la paralización automática del pleito. En cambio, si la acción del Estado promueve la seguridad pública, el bienestar público, o la política pública, entonces aplica la excepción a la norma general de la paralización automática. *In re Nortel Networks, Inc..,* 669 F.3d 128, 139-140 (3d Cir.2011); *re McMullen,* 386 F.3d 320, 325 (1st Cir.2004); *Chao v. Hosp. Staffing Servs., Inc.,* 270 F.3d 374, 385 (6th Cir.2001); *In re Spookyworld, Inc.,* 346 F.3d 1, 9 (1st Cir.2003).

A.

La confiscación es el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad **sobre cualquier bien que haya sido utilizado en relación con la comisión de ciertos delitos**. (Énfasis nuestro) Art. 9 de la Ley Núm. 119, 34 LPRA sec. 1724 (f); *Ford Motor v. E.L.A.,* 174 DPR 735, 741 (2008). Su fin es uno punitivo, pues persigue evitar que el vehículo o la propiedad confiscada pueda volverse a utilizar para fines ilícitos, y también sirve de castigo para disuadir los actos criminales. *Ford Motor v. E.L.A.,* supra; *Centeno Rodríguez v. E.L.A.* 170 DPR 907, 913 (2007).




La facultad que tiene el Estado para apropiarse de propiedades que han estado relacionadas o han sido parte de ciertas actividades delictivas comprende dos modalidades. La primera de estas modalidades es de naturaleza penal y va dirigida contra la persona imputada del delito o el poseedor de dicha propiedad al realizarse el delito imputado. *MAPFRE v. ELA*, 188 DPR 517, 525 (2013). Esta modalidad es un procedimiento *in personam*, el cual es parte de la acción criminal que se realiza en contra del alegado autor del delito base que permite la confiscación. *Coop. Seg. Múltiples v. E.L.A.*, 180 DPR 655, 664 (2011). En dicho proceso criminal, de encontrarse culpable a la persona imputada, la sanción impuesta por la sentencia consiste en la confiscación del bien incautado. *MAPFRE v. ELA*, supra, pág. 525; *Coop. Seg. Múltiples v. E.L.A.*, supra, pág. 664.

La segunda modalidad de confiscación es una de carácter *in rem* distinta y separada del proceso *in personam*. *MAPFRE v. ELA*, supra, pág. 525. Se trata de una acción civil, dirigida contra el bien confiscado y no contra el dueño de la propiedad, poseedor, encargado, o cualquier otra persona con interés legal sobre el bien. Véase, Artículo 8 de la Ley Núm. 119, 34 LPRA sec. 1724e; *Doble Seis Sport TV v. Depto. De Hacienda*, 190 DPR 763, 784 (2014); *B.B.V. V. E.L.A.*, 180 DPR 681, 686 (2011). La evaluación de la procedencia de una confiscación civil requiere la comprobación de los siguientes elementos: (1) prueba suficiente y preponderante de que se ha cometido un delito, y (2) de un nexo entre la comisión del delito y la propiedad confiscada. *Doble Sport TV v. Depto. De Hacienda*, supra; *Suárez v. E.L.A.*, 162 DPR 43, 52 (2004).

A esos efectos, la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, 34 LPRA 1724, *et seq.*, fue creada con el propósito de adelantar los esfuerzos de las instrumentalidades del Estado para viabilizar la confiscación de bienes utilizados en violación a los estatutos de las distintas legislaciones, así como establecer un



procedimiento que provea una solución justa, rápida y económica de las demandas entabladas para impugnar la determinación administrativa de confiscar. La referida ley derogó expresamente la Ley Uniforme de Confiscaciones de 1988.

El Artículo 13 de la Ley 119, *supra,* 34 LPRA sec. 1724 (j), establece cual es el procedimiento que se sigue para notificar la confiscación y quienes tienen derecho a ser notificados. La misma dispone que:

(a) A la persona que tuviere la posesión física del bien al momento de la ocupación.
(b) A aquéllas que por las circunstancias, información y creencia, el Director Administrativo considere como dueños de dicho bien.
(c) En los casos de vehículos de motor, se notificará, además, al dueño, según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y **al acreedor condicional que a la fecha de la ocupación tenga su contrato inscrito.**
(d) En los casos de bienes inmuebles se notificará, además, al dueño, según consta en el Registro de la Propiedad del municipio donde ubica el bien y a la institución hipotecaria que a la fecha de la ocupación aparezca en dicho Registro como acreedor hipotecario del bien.
**Toda confiscación se notificará por correo certificado dentro de un término jurisdiccional de treinta (30) días, siguientes a la fecha de la ocupación física de los bienes.** La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación.
En el caso de vehículos de motor que sean ocupados en virtud de la Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como "Ley para la Protección de la Propiedad Vehicular", la notificación se hará dentro de los treinta (30) días siguientes a partir del término de treinta (30) días dispuestos para que los oficiales del orden público lleven a cabo una investigación sobre el bien ocupado. Un vehículo ocupado al amparo de la "Ley para la Protección de la Propiedad Vehicular", no será confiscado a favor del Gobierno de Puerto Rico hasta tanto se culmine el procedimiento dispuesto en dicha ley. El mismo se mantendrá bajo la custodia de la Policía hasta que se culmine la investigación correspondiente.
**En aquellos casos en los que se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción penal, civil, administrativa o cuando el bien es indispensable para la investigación o como evidencia en el caso, el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación.**

(Énfasis nuestro).

En relación al acreedor condicional el cual, conforme a la Ley 119, *supra*, debe ser notificado de la confiscación del vehículo objeto del gravamen, el Reglamento Núm. 7357, fue adoptado con el fin de establecer las normas y requisitos legales para proceder, administrativamente y judicialmente, ante la identificación, imposición y cancelación de gravámenes en la licencia, la autorización o en el registro de los vehículos de motor, por medio de la autoridad que la antes citada ley le confiere al Secretario.

En su Art. VIII, Inciso 9-a, el mencionado Reglamento establece que para registrar un gravamen mobiliario de venta condicional, el acreedor garantizado o su representante debe someter al Centro de Servicios al Conductor (CESCO) los siguientes documentos:

> a. Formulario DTOP-770 "Solicitud Presentación Gravamen Mobiliario sobre Vehículos de Motor", debidamente completado (Véase Anejo IV).
>
> b. Copia de los Comprobantes de Pago de Rentas Internas del Departamento de Hacienda, correspondientes a los derechos de anotación del gravamen mobiliario, con el valor de cinco ($5.00) dólares.
>
> c. Copia de la hoja del documento del contrato de venta al por menor a plazos, que evidencie el monto del precio de venta del vehículo de motor.

Cónsono con dicho Reglamento, la Ley de Instrumentos Negociables, supra, igualmente dispone que un gravamen mobiliario sobre un vehículo de motor queda perfeccionado cuando el mismo se registra en el Registro de Vehículos de Motor y Arrastres del DTOP, 19 LPRA sec. 2163. En su Sección 9-310, 19 LPRA sec. 2260, dicha Ley establece que para perfeccionarse una garantía mobiliaria, es requisito presentar una declaración de financiamiento. Sobre lo anterior, la Sección 9-502 dispone:



> **(a)** *Suficiencia de una declaración de financiamiento*. Sujeto a la subsección (b), una declaración de financiamiento será suficiente solamente si ésta:
> > **(1)** provee el nombre del deudor;
> > **(2)** provee el nombre del acreedor garantizado o un representante de un acreedor garantizado; e

**(3)** indica la propiedad gravada sujeta a la declaración de financiamiento.

Específicamente, la Sección 9-504, de la reseñada Ley, 19 LPRA sec. 2324, establece que una declaración de financiamiento indicará suficientemente la propiedad gravada que cubre si la declaración de financiamiento provee:

**(1)** una descripción de la propiedad gravada según la sección 9-108;
**(2)** una indicación que la declaración de financiamiento cubre todos los activos o todos los bienes muebles; o
**(3)** una descripción del vehículo de motor, que incluye el año de fabricación, marca, modelo, número de serie de manufacturero, número de serie del vehículo (VIN), color, si es nuevo o usado, caballos de fuerza, número de tablilla u otro número de identificación. Una declaración de financiamiento (incluyendo una que afecte un vehículo de motor con certificado de título) no tendrá que incluir la cantidad de la obligación asegurada, la fecha de comienzo o la fecha de terminación de la misma, o cualquier otra descripción de la obligación asegurada.

A su vez la Sección 9-516 de la Ley de Instrumentos Negociables dispone que:

**(a)** *Qué constituye la radicación.* Excepto que de otro modo se disponga en la subsección (b), **el comunicar un récord a la oficina de registro y el pago de los derechos de registros o el aceptar el récord por la oficina de registro constituye la radicación.**

**(b)** *Rechazo de la radicación; el registro no ocurre.* La radicación no ocurre con relación al récord que la oficina del registro rehúse aceptar porque:
**(1)** el récord no se ha comunicado por el método o medio de comunicación autorizado por la oficina de registro;
**(2)** una cantidad igual o mayor al derecho de radicación aplicable no se ha pagado;
**(3)** la oficina de registro no puede incluir el récord en el índice porque:
  **(A)** en el caso de una declaración de financiamiento inicial, el récord no provee un nombre para el deudor;
  **(B)** en el caso de una enmienda o declaración de información, el récord:
    **(i)** no identifica la declaración de financiamiento inicial según lo requieren las Secciones 9-512 ó 9-518, según aplique; o
    **(ii)** identifica una declaración de financiamiento inicial cuya vigencia ha vencido bajo la Sección 9-515;
  **(C)** en el caso de una declaración de financiamiento inicial que provee el nombre del deudor identificado como un individuo o una enmienda que provea un nombre de un deudor identificado como un individuo



el cual no había sido provisto previamente en la declaración de financiamiento al cual el récord se refiere, el récord no identifica el apellido del deudor; o

**(D)** en el caso de que una escritura radicada o registrado en la oficina de registro descrito en la Sección 9-501(a)(1), la escritura no provee una descripción suficiente de la propiedad inmueble a la cual se refiere;

**(4)** en el caso que una declaración de financiamiento inicial o una enmienda que añada a un acreedor garantizado, el récord no provea el nombre y dirección postal para el acreedor garantizado;

**(5)** en el caso que una declaración de financiamiento inicial o una enmienda que provea el nombre de un deudor el cual no había sido provisto previamente en la declaración de financiamiento a la cual la enmienda se refiere, el récord no:

**(A)** provee una dirección postal para el deudor; o

**(B)** indica si el nombre proporcionado como el nombre del deudor es el nombre de un individuo o una organización.

**(6)** en el caso que una cesión reflejada en una declaración de financiamiento inicial bajo la Sección 9-514(a) o una enmienda radicada bajo la Sección 9-514(b), el récord no provee el nombre y dirección postal del cesionario; o

**(7)** en el caso de una declaración de continuación, el récord no se radicara dentro del período de seis (6) meses prescrito por la Sección 9-515(d).

**(c)** *Reglas aplicables a la subsección (b).* Para propósitos de la subsección (b):

(1) un récord no provee la información si la oficina de registro no puede leer o descifrar la información; y

(2) un récord que no indique que es una enmienda o no identifica una declaración de financiamiento inicial a la cual se refiere, según se requiere por la Sección 9-512, 9-514 ó 9-518, es una declaración de financiamiento inicial.

**(d)** *No aceptar el récord; el récord es válido como récord registrado.* **Un récord enviado a la oficina de registro con el pago de derechos para la radicación, que la oficina de registro rehúsa aceptar por razones que no sean las provistas en la subsección (b), será válido como un récord registrado** excepto en contra de un comprador de la propiedad gravada que provee valor confiando razonablemente en ausencia del récord en los expedientes.

19 LPRA sec. 2336 (Énfasis nuestro).



Por último, la Sección 9-520 de la Ley de Instrumentos Negociables, dispone el procedimiento a seguir por la Agencia Administrativa para rechazar un récord a ser registrado:

**(a)** *Rechazo obligatorio de un récord.* Una oficina de registro deberá rechazar un récord a ser registrado por la razón

que se indique en la Sección 9-516(b) y podrá rechazar
un récord a ser registrado sólo por la indicada en la
Sección 9-516(b).

(b) *Comunicación relacionada al rechazo*. **Si una oficina de
registro rechaza un récord presentado para ser
registrado, deberá comunicarle a la persona que
presentó el récord el hecho y la razón de ese rechazo
y la fecha y la hora en que el récord hubiese sido
registrado si la oficina de registro lo hubiese
aceptado.** La comunicación debe de hacerse en el
momento y en la manera prescrita por la regla de la
oficina de registro, de ninguna manera tal comunicación
será enviada más tarde de los dos días hábiles luego de
que la oficina de registro reciba un récord.

(c) *Cuándo es válida una declaración de financiamiento
registrada*. Una declaración de financiamiento
registrada que cumpla con las Secciones 9-502(a) y (b)
será válida, aun cuando la oficina de registro se le
requiera, bajo la subsección (a), que la rechace al ser
presentada para registrarse. Sin embargo, la Sección 9-
338 aplicará a la declaración de financiamiento
registrada que provea la información descrita en la
Sección 9-516(b) (5) que es incorrecta en el momento
que la declaración de financiamiento sea radicada.

19 LPRA sec. 2340 (Énfasis suplido).

III.
A.

Como cuestión de umbral, entendemos prudente entender sobre
la solicitud de paralización incoada por el Departamento de Justicia en
el caso de marras.

Según dispone el ordenamiento de Derecho en Puerto Rico, la
confiscación del vehículo de motor objeto del litigio, llevada a cabo por
el Estado en el caso presente, consistió en un acto de ocupación sobre
un bien que, en su momento, se alegaba haber sido utilizado en
relación con la comisión de delito.



**Entiéndase entonces, que tal acción, en el ejercicio del poder
de razón del Estado, no fue producto de un interés pecuniario
sobre la propiedad ocupada, sino que la misma persiguió promover
la seguridad pública, el bienestar público, y la política pública.**
Siendo esto así, a la luz del Derecho anteriormente reseñado, la
facultad del Estado para ejercer dicha política pública, realizada en el
caso presente, consta dentro de las excepciones a la regla general de

paralización automática reconocidas por el Código de Quiebras, según incorporadas por referencia bajo la Sección 301(a) de la Ley PROMESA, 48 USC sec. 2161(a).

Por tal razón, en virtud de lo anteriormente expuesto, declaramos NO HA LUGAR a la solicitud de paralización presentada por el Departamento de Justicia, y procedemos a entender en los méritos sobre el recurso ante nos.

B.

En el caso presente, Reliable demostró ante el TPI ser la institución que financió el préstamo sobre el vehículo objeto de la confiscación. Surge del expediente del caso de marras, que el 29 de julio de 2011, Reliable presentó ante la Directoría de Servicios al Conductor, del Departamento de Transportación y Obras Públicas, una *Solicitud Presentación Gravamen Mobiliario Sobre Vehículos de Motor (Formulario DTOP-770)*. Conforme a la documentación provista en el recurso de autos, dicha Solicitud corresponde al Vehículo de motor KIA Sportage, tablilla HRA-557, objeto de la posterior ocupación por parte del Estado. La apelada acompañó el mencionado formulario con una Declaración de Financiamiento de la cual se desprende el nombre y la firma del acreedor condicional, el nombre y a firma del deudor, y la descripción del vehículo de motor, entiéndase, de la propiedad mueble gravada sujeta a la Declaración de Financiamiento.



Ello así, conforme a la Ley de Instrumentos Negociables, *supra*, dicho documento es suficiente en Derecho para establecer la propiedad gravada. Por tal razón, concluimos que Reliable sometió un récord suficiente en Derecho ante el registro del DTOP, acompañó el mismo con el pago de los derechos de registros.



Más aun, toda la documentación provista por la apelada en relación a la titularidad y registro de gravamen mobiliario sobre el automóvil, fue aceptada por la Oficina de Registro de la Directoría de Servicios al Conductor del DTOP. Dicha Instrumentalidad

Administrativa no acreditó haber comunicado a Reliable el rechazo del récord registrado, por ninguna de las razones que provee la Sección 9-516b de la Ley de Instrumentos negociables.

Concluimos que, conforme a la normativa antes reseñada, Reliable probó ser el acreedor condicional del vehículo confiscado por el Estado, con contrato inscrito a la fecha de la ocupación impugnada. Ello así, toda vez que la apelada demostró tener interés suficiente en Derecho sobre la propiedad mueble en cuestión, previo a la confiscación de la misma, correspondía al Estado, cumplir con el Artículo 13 de la Ley 119, *supra*, y notificar a Reliable sobre la ocupación de dicho vehículo de motor.

**Por ende, resolvemos que el TPI no erró al determinar sumariamente la nulidad del acto confiscatorio por parte del Estado, y ordenar la devolución del vehículo de motor en cuestión.**

IV.

Por los fundamentos antes expuestos, CONFIRMAMOS la Sentencia Sumaria dictada por el Tribunal de Primera Instancia, Sala de Bayamón.

El Juez Flores García reitera sus expresiones sobre la paralización automática de los casos bajo PROMESA, consignados en el voto concurrente del caso KLAN2017-00183.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones





ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
REGION JUDICIAL DE BAYAMON


RODRIGUEZ VELEZ, LUIS O                    CASO NÚM. KLAN201600095


                    VS

                                           SOBRE:
E L A DE PR                                APELACION CIVIL


A: LIC. FRANCESCHI FIGUEROA, ARMANDO
   PMB 360
   CALLE TABONUCO B 5 SUITE 216
   GUAYNABO PR 00968-3029


                N O T I F I C A C I Ó N


   HONORABLE PROCURADOR GENERAL
   PO BOX 9020192
   SAN JUAN          PR 00902-0192

   SECRETARIO GENERAL BAYAMON (SUP)
   PO BOX 60619
   BAYAMON          PR 00960

   LIC. RIVERA GONZALEZ, VICTOR M
   PO BOX 9953
   SAN JUAN PR 00908-0953

   LIC. HERNANDEZ MARTIN, MARIA A
   PO BOX 9020192
   SAN JUAN PR 00902-0192

   LIC. CRUZ RUIZ, ALBERTO
   APARTADO 9020192
   SAN JUAN PR 00902-0192

   LIC. ANGLERÓ FIGUEROA, JORGE L
   PO BOX 3240
   CAGUAS PR 00726-3240


EL[LA] SECRETARIO[A] QUE SUSCRIBE CERTIFICA Y NOTIFICA A USTED QUE CON RELACIÓN
AL[A LA]:APELACION-22 DE ENERO DE 2016

ESTE TRIBUNAL EMITIÓ UNA SENTENCIA, EL 13 DE NOVIEMBRE DE 2017,
DE LA CUAL SE ANEJA COPIA A CONTINUACIÓN O INCLUYE ENLACE:

*SE LE* ADVIERTE QUE AL SER UNA PARTE O SU REPRESENTANTE LEGAL EN EL CASO SUJETO
A ESTA SENTENCIA , DE LA CUAL PUEDE PRESENTARSE UN RECURSO DE
APELACIÓN O CERTIORARI, DE CONFORMIDAD CON EL PROCEDIMIENTO  Y EL TÉRMINO
ESTABLECIDO POR LEY, REGLA O REGLAMENTO, DIRIJO A USTED ESTA NOTIFICACIÓN.

CERTIFICO ADEMÁS QUE, EN EL DÍA DE HOY, ENVIÉ COPIA DE ESTA NOTIFICACIÓN A LAS

PERSONAS ANTES INDICADAS, A SUS DIRECCIONES REGISTRADAS EN EL CASO, CONFORME
A LA NORMATIVA APLICABLE. EN ESTA MISMA FECHA FUE ARCHIVADA EN AUTOS COPIA DE
ESTA NOTIFICACIÓN.

EN SAN JUAN, PUERTO RICO, EL 05 DE DICIEMBRE DE 2017.


LILIA M. OQUENDO SOLIS                    Por:f/YAHAIRA MARTINEZ MORALES
_____          _____
NOMBRE DEL [DE LA] SECRETARIO[A]          NOMBRE Y FIRMA DEL [DE LA]
DEL TRIBUNAL DE APELACIONES               SECRETARIO[A] AUXILIAR DEL TRIBUNAL

OAT1835-Formulario Único de Notificación-Tribunal de Apelaciónes (Marzo 2017)

# EXHIBIT

# B

**ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN-CAGUAS
PANEL III**

| | | |
|---|---|---|
| **COOPERATIVA DE SEGUROS MÚLTIPLES Y RELIABLE FINANCIAL SERVICES** | | *Petición de Certiorari* **procedente del Tribunal de Primera Instancia, Sala Superior de San Juan** |
| Recurridas | | |
| **v.** | **KLCE2017-01470** | **Civil Núm.: KAC2013-0477** |
| **ESTADO LIBRE ASOCIADO DE PUERTO RICO** | | |
| Peticionario | | **Sobre: Impugnación de Confiscación** |

## MOCIÓN DE RECONSIDERACIÓN

**AL HONORABLE TRIBUNAL:**

Comparece el Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General, y respetuosamente **EXPONE, ALEGA y SOLICITA**:

### I. INTRODUCCIÓN

Mediante Petición de *Certiorari* presentada el 21 de agosto de 2017, solicitamos la revisión de la Resolución emitida por el Tribunal de Primera Instancia el 9 de junio de 2017, archivada en autos y notificada el 14 de junio de 2017, mediante la cual se declaró "sin lugar" la solicitud de paralización presentada por el Gobierno de Puerto Rico bajo el Título III de PROMESA.

El 19 de octubre de 2017, notificada el 4 de diciembre de 2017, esta Ilustre Curia emitió una Resolución en la que declinó acoger el aviso de paralización por entender que la paralización automática autorizada bajo PROMESA no procede en los casos sobre impugnación de confiscación.

La presente moción se presenta en atención a las disposiciones contenidas en la Regla 84 del Reglamento del Tribunal de Apelaciones, que permite que la parte, que así lo considere apropiado, presente una moción de reconsideración dentro del plazo improrrogable de quince (15) días contados a partir del archivo en autos de copia de la notificación de la resolución o sentencia de este Alto Foro. Con la presentación de este escrito el Estado no renuncia de ninguna forma a ningún derecho o protección bajo PROMESA.

## II. ARGUMENTACIÓN

Entiende este Honorable Tribunal que la paralización automática autorizada bajo PROMESA no procede en el caso de autos por entender que cae bajo una de las excepciones dispuestas en la Ley de Quiebras Federal.

De la jurisprudencia reseñada por este Honorable Tribunal para apoyar su decisión, surge que el deudor lo era una persona particular o una entidad privada, contrario al caso incoado por el Gobierno de Puerto Rico bajo las disposiciones de la Ley PROMESA donde el deudor es el propio Gobierno, y por medio del aviso de paralización pretende detener un pleito que de resultar adverso para el Estado, y no estar disponible para su entrega el vehículo confiscado, tendría que desembolsar una cantidad de dinero igual al valor de tasación al momento de la ocupación o el producto de la venta de dicho vehículo, lo que resulte mayor, más el interés legal prevaleciente de acuerdo a lo dispuesto en la Reglas de Procedimiento Civil, tomando como base el valor de tasación, a partir de la fecha de la ocupación. No hay duda que lo anterior, tendría un impacto en la erogación de fondos públicos, ya que la parte apelada se convertiría en un "acreedor" del Estado. Cantidad que en esta caso en particular son doce mil dólares ($12,000.00)

Precisa recordar, que la Ley PROMESA fue aprobada para atender la emergencia fiscal en que se encuentra el Gobierno de Puerto Rico.[1] En lo pertinente, el Título III de PROMESA establece un procedimiento de ajuste de deudas, en el cual específicamente se adoptaron ciertas disposiciones del Código de Quiebras.[2] Cónsono con lo anterior, el Tribunal Federal para el Distrito de Puerto Rico emitió una Orden el 1 de junio de 2017 en la cual aclaró –en lo pertinente y conforme a la Sección 301 de PROMESA– que las paralizaciones automáticas dispuestas en las Secciones 362 y 922 del Código de Quiebras aplicarían en la petición del Gobierno –por medio de la Junta de Supervisión y Administración Financiera para Puerto Rico creada por PROMESA–[3] bajo el Título III de PROMESA, lo cual incluye la paralización de los procedimientos judiciales y administrativos comenzados contra el Gobierno y sus oficiales, así como las reclamaciones de cobro contra las mencionadas partes. Por tanto, con la presentación de la mencionada petición y acorde con lo dispuesto en la Sección 301(a) de PROMESA, se activó la paralización automática que surge del Código de Quiebras. 48 USC sec. 2161(a); 11 USC secs. 362 y 922.

---

[1] Véase Exposición de Motivos y Artículo 102 de la Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico, Ley Núm. 5 de 29 de enero de 2017.

[2] Sección 301 de PROMESA, 48 USC sec. 2161.

[3] Sección 101 de PROMESA, 48 USC sec. 2121.

Dicha paralización tiene el efecto de dejar en suspenso toda acción, sea judicial, administrativa o de cualquier índole, en contra del Gobierno de Puerto Rico, así como evitar que se inicien acciones en su contra, con el propósito de proveerle un respiro al deudor y de igual forma proteger a sus acreedores evitando que los activos del deudor desaparezcan de forma desorganizada ante las acciones individuales de otros acreedores. Collier On Bankruptcy, Lawrence P. King (1996), 15th ed., Vol. 3, sec. 362, págs. 13 y 14.

Sus efectos se manifiestan desde que se presenta la petición de quiebra hasta que recae la sentencia final, y no se requiere una notificación formal para que surta efecto. Además, tiene el efecto de que los tribunales estatales queden privados de jurisdicción automáticamente, e incluso, es tan abarcadora que paraliza litigios que tienen poco o nada que ver con la situación financiera del deudor. Marrero Rosado v. Marrero Rosado, 178 D.P.R. 476, 490-491 (2010).

No se puede pasar por alto, que de acuerdo a las disposiciones del Artículo 19 de la Ley Núm. 119-2011, de recaer sentencia declarando con lugar la demanda impugnando la confiscación, el Gobierno de Puerto Rico está obligado a devolver la propiedad ocupada al demandante. Cuando haya dispuesto de la misma, el Gobierno de Puerto Rico le pagará el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más el interés legal prevaleciente, de conformidad con las Reglas de Procedimiento Civil, según enmendadas, tomando como base el valor de tasación, a partir de la fecha de la ocupación. 34 L.P.R.A. §1724p. Así pues, el Estado estaría desembolsando fondos públicos para satisfacer la referida sentencia, los que claramente son propiedad del caudal o "estate", sujeto así a la protección que ofrece la paralización automática del Título III de PROMESA.

El caso de autos gira en torno a la demanda sobre impugnación de confiscación presentada por la parte apelante bajo las disposiciones de la Ley Núm. 119-2011, donde de resultar victoriosa la parte apelante el Gobierno de Puerto Rico se expone a tener que pagar la cantidad doce mil dólares ($12,000.00), tal y como indicáramos anteriormente. Por tanto, de acuerdo con lo dispuesto en las Secciones 362(a) y 922(a) del Código de Quiebras, incorporadas por referencia bajo la Sección 301(a) de PROMESA, la demanda impugnando la confiscación del caso de epígrafe constituye "an act to collect and/or recover a monetary claim" del Gobierno de Puerto Rico y, en consecuencia, debe ser paralizado ("stayed").

Si el Gobierno de Puerto Rico es obligado a cumplir con el pago del valor de tasación del bien ocupado, el caudal ("estate") se vería afectado en detrimento de los demás acreedores. 11

4

U.S.C. Sección 362. Véase además, In re García, 553 B.R. 1 (Bankr. D.P.R. 2016) donde se

indicó:

> [T]he policy behind the statute, which is to protect the bankrupt's estate from
> being eaten away by creditors' lawsuits and seizures of property before the trustee
> has had a chance to marshal the estate's assets and distribute them equitably
> among the creditors. H.R. Rep. No. 595, 95th Cong. & Admin. News 1978, p.
> 5787. The fundamental purpose of bankruptcy, from the creditors' standpoint, is
> to prevent creditors from trying to steal a march on each other, In re Holtkamp,
> 669 F.2d 505, 508 (7th Cir.1982), and the automatic stay is essential to
> accomplishing this purpose.

El caso que nos ocupa no puede escapar de los efectos de la protección que concede la

paralización automática de las Secciones 362(a) y 922(a) del Código de Quiebras, que como ya

indicamos, fue incorporada por referencia bajo la Sección 301(a) de PROMESA. Como muy

bien indicó la Jueza Taylor Swain en la Orden emitida en el caso In Re The Financial Oversight

and Management Board of Puerto Rico, No. 17 BK 3283-LTS:

> For the avoidance of doubt the protections of the Bankruptcy Code Sections
> 105(a) and 922(a)(1), made applicable by PROMESA section 301(a), the Title III
> stays **applies in all respects** to (a) Government officials (including without
> limitation, the Governor), agents, and representatives of (i) the Debtors and (ii)
> **any of the Debtor's instrumentalities**, and (b) any inhabitant of the Debtors,
> each solely with respect to actions whereby parties, pursuing such action **seek to
> enforce claims against any of the Debtors**, and provided such Title III Stay is in
> effect respect to such Debtor and the pursued action.

(Énfasis nuestro).

Mediante la paralización en los casos civiles de impugnación de confiscación, el Estado

busca protección ante la posibilidad de que recaiga una sentencia adversa y esto signifique una

erogación de fondos públicos que es, precisamente, lo que se intenta proteger con la petición de

la quiebra presentada al amparo del Título III de PROMESA.

Al analizar las secciones concernientes del Código de Quiebras federal al caso de

epígrafe, notamos que no existe disposición alguna en dicho estatuto donde se indique que una

demanda impugnando una confiscación realizada por el Estado, cae bajo alguna de las

excepciones a la protección que ofrece la paralización automática.

El enfoque limitado que este Honorable Tribunal pretende imponerle a la paralización

automática resulta contrario a lo dispuesto en la orden emitida por la Honorable Laura Taylor

Swain –nombrada por el Juez Presidente del Tribunal Supremo de los Estados Unidos bajo el

Título III de PROMESA–[4] quien adoptó lo dispuesto en la Sección 362 (a) (1) del Código de

Quiebras para proteger los bienes del Estado durante la reestructuración de sus deudas.

Precisa destacar que este Honorable Tribunal ha resuelto que la presencia de una

reclamación monetaria en contra del Estado es un factor fundamental para que aplique la

---

[4] Sección 308 de PROMESA, 48 USC sec. 2168.

paralización del Título III de PROMESA. Véase Lacourt Martínez v. Junta de Libertad bajo Palabra, 2017 TSPR 7; Laboratorio Clínico Irizarry v. Departamento de Salud, 2017 TSPR 8 (Opinión *Per Curiam* del 3 de agosto de 2017). El caso de marras claramente involucra una potencial reclamación monetaria en contra del Estado y por tanto el mismo debe ser paralizado.[5]

Como conoce este Alto Foro, la parte recurrida puede solicitar que la paralización del caso se deje sin efecto. Sin embargo, para ello debe presentar su solicitud en el pleito de quiebras ante el foro federal acorde con la Orden emitida el 24 de octubre de 2017, por la Honorable Laura Taylor Swain, Jueza de Distrito de los Estados Unidos, dictó en el caso In re: Commonwealth of Puerto Rico, Case No. 17-03283, un "Third Amended Notice, Case Management and Administrative Procedures" ("Case Management Procedures") mediante la cual, entre otros asuntos, enmienda la Sección III del Procedimiento de Manejo de Caso vigente, a los fines de incorporar un protocolo revisado para las peticiones de levantamiento de la paralización automática ("Stay Relief Motions"). **ANEJO I.**

Dicho Protocolo establece que toda las partes que pretendan presentar una moción para el relevo de la paralización automática del Título III ("Stay Relief Motion") deberán cumplir con el párrafo III.Q y dar aviso de dicha solicitud a la Junta y a la Autoridad de Asesoría Financiera y Agencia Fiscal (AAFAF) en un término de quince (15) días laborables previo a su presentación y reunirse y conferenciar con los representantes de dichas entidades[6] antes de presentar una solicitud de relevo de paralización. Nada de lo dispuesto en dicho inciso afecta los derechos de una parte para solicitar la consideración de un relevo de paralización de forma acelerada, o los derechos del Estado o de cualquier otra parte interesada para impugnar dicha solicitud de consideración expedita.  Si una parte no cumple con el párrafo III.Q del "Case Management Procedures" antes de presentar un "Stay Relief Motion", y no puede mostrar la ocurrencia de circunstancias extraordinarias para dicho incumplimiento, el Tribunal denegará sin perjuicio el "Stay Relief Motion" hasta que dicha parte cumpla con los "Case Management Procedures". Véase **Exhibit I**, Third Amended Notice, Case Management and Administrative Procedures.

Como podrá notar este Honorable Tribunal la parte apelada no queda indefensa ante una Orden de Paralización ya que puede retar la misma dentro del procedimiento de quiebra ante el

---

[5] Reiteramos que la paralización de este caso surtió efecto con la mera presentación de la solicitud de quiebra por parte de la Junta, y no requiere de solicitud alguna del Estado o del dictamen de un tribunal para entrar en vigor. Morales v. Clínica Femenina de P.R., 135 D.P.R. 810, 820 n. 5 (1994) (Sentencia). La actuación judicial que así lo disponga es meramente declarativa del estado fijado por la ley federal. Asimismo, la declaración de paralización por un tribunal de Puerto Rico no implica que un reclamante se quede sin ningún remedio, pues las partes pueden acudir al Tribunal que atiende el caso del Gobierno de Puerto Rico bajo el Título III de PROMESA a solicitar el levantamiento de la paralización, de conformidad con lo dispuesto en la Sección 362(d) del Código de Quiebras federal. 11 U.S.C. Sección 362(d).

[6] Los representantes de dichas entidades se identifican en la Sección III.Q del "Case Management Procedures".

6

foro federal, siempre y cuando cumpla con el "Third Amended Notice, Case Management and Administrative Procedures" ("Case Management Procedures"), al que hicimos anteriormente.

Por tanto, acorde con lo anteriormente expuesto procede que este Honorable Tribunal reconsidere su dictamen y ordene la paralización de los procedimientos del caso que nos ocupa cónsono con las Secciones 362(a) y 922(a) del Código de Quiebras.

## III. SÚPLICA

**POR TODO LO CUAL**, respetuosamente se solicita a este Honorable Tribunal que reconsidere la sentencia emitida el 19 de octubre de 2017 de 2017, y paralice los procedimientos del caso acorde con las disposiciones del Título III de PROMESA.

**RESPETUOSAMENTE SOMETIDO**.

En San Juan, Puerto Rico, a 19 de diciembre de 2017.

**LUIS R. ROMÁN NEGRÓN**
Procurador General
T.S. Núm. 14265

**ISAÍAS SÁNCHEZ BÁEZ**
Subprocurador General
T.S. Núm. 18853

**JOSEPH G. FELDSTEIN DEL VALLE**
Subprocurador General
T.S. Núm. 18720

**MARÍA ASTRID HERNÁNDEZ MARTÍN**
Procuradora General Auxiliar
T.S. Núm. 8955

7

# IV. NOTIFICACIÓN

**CERTIFICO**: Que se ha enviado por correo certificado con acuse de recibo, así como por correo electrónico, copia fiel y exacta de la presente Moción de Reconsideración a:

**LCDO. ARMANDO FRANCESCHI FIGUEROA**
T.S Núm. 13842
B5 Calle Tabonuco Suite 216
PMB 360
Guaynabo, Puerto Rico  00968-3029
Tel. (787) 787-7320
Fax (787) 705-6417
franceschilaw@gmail.com

Copia de cortesía enviada por correo electrónico a:

**LCDO. PABLO TUFIÑO SOTO**
T.S. Núm. 20568
Departamento de Justicia
Secretaria Auxiliar de lo Civil
Apartado 9020192
San Juan, PR 00902-0192
ptufino@justicia.pr.gov
jburgos@justicia.pr.gov
divisionconfiscaciones@justicia.pr.gov

En San Juan, Puerto Rico, a 19 de diciembre de 2017.

**MARIA ASTRID HERNÁNDEZ MARTÍN**
Procuradora General Auxiliar
T.S.Núm. 8955
Departamento de Justicia
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel. (787) 509-9862[7]
Fax No disponible
mhernandez@justicia.pr.gov
mahm1962@hotmail.com
lrroman@justicia.pr.gov

---

[7] El 20 de septiembre de 2017 el Huracán María afectó seriamente la sede del Departamento de Justicia en Miramar, donde también ubicaba la Oficina del Procurador General. A consecuencia de lo anterior, dicha agencia y oficina no estarán operando desde la referida sede. Provisionalmente, la Oficina del Procurador General está ubicada en el edificio del Banco de Desarrollo Económico, Segundo piso, Oficina 204, al final de la Avenida Jesús T. Piñero. Sin embargo, en dichas facilidades no contamos con teléfono ni fax, y, además, no todo el personal tiene acceso a sus correos electrónicos oficiales. Por tal razón, es que se incluye en el presente escrito el número de teléfono celular, correo electrónico personal y oficial de la abogada que suscribe, así como el correo electrónico oficial del Procurador General, Lcdo. Luis R. Román Negrón.

ANEJO

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

  as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

-----------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

Re: ECF No. 262, 249, 898, 1065,
1299, 1434

### ORDER FURTHER AMENDING CASE MANAGEMENT PROCEDURES

  Upon the *Debtor Entities' Motion to Amend Second Amended Notice, Case
Management and Administrative Procedures to Further Revise Protocol for Stay Relief Motions*
(the "Motion");[2] and the Court having found it has subject matter jurisdiction over this matter
pursuant to PROMESA section 306; and it appearing that venue in this district is proper pursuant
to PROMESA section 307; and the Court having found that the relief requested in the Motion is
in the best interests of the Debtors, their creditors, and other parties in interest; and the Court
having found that the Debtors provided adequate and appropriate notice of the Motion under the
circumstances and that no other or further notice is required; and the Court having reviewed the
Motion; and the Court having determined that the legal and factual bases set forth in the Motion

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4)
digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico
(Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax
Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS)
(Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the
Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax
ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last
Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software
limitations).

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is **HEREBY ORDERED THAT:**

      1.     The Motion is granted as set forth herein.

      2.     Paragraph III.Q of Section III (Scheduling) of the Case Management

Procedures is hereby amended as follows:

> Subject to Paragraphs III.F and III.T, at least fifteen (15) business days prior to filing a Stay Relief Motion to continue a prepetition ordinary course civil action against a Debtor other than PREPA, the movant shall contact counsel for the Oversight Board (Attn: Hermann Bauer (Hermann.Bauer@oneillborges.com) and Ubaldo M. Fernández Barrera (ubaldo.fernandez@oneillborges.com)) and counsel for AAFAF (Attn: Diana M. Perez (dperez@omm.com) and Andrés W. López (andres@awllaw.com)), and, for all Lift Stay Notices related to PREPA, the movant shall contact counsel for the Oversight Board (Attn: Hermann Bauer (Hermann.Bauer@oneillborges.com) and Ubaldo M. Fernández Barrera (ubaldo.fernandez@oneillborges.com)) and counsel for AAFAF (Attn: Kevin Finger (fingerk@gtlaw.com)) by electronic-mail to advise them of the movant's intent to seek relief from the automatic stay (the "Lift Stay Notice" and the notice period, the "Lift Stay Notice Period"). The Lift Stay Notice Period and the procedures set forth below shall not apply to Stay Relief Motions that are filed by creditors seeking to enforce a financial debt claim.

> The Lift Stay Notice shall include (i) the identity of the movant and its contact information, (ii) the claim(s), lawsuit(s), or other proceeding(s) for which movant seeks relief from the automatic stay, including the relevant case number and court information, (iii) the amount of the claim(s) and the asserted causes of action, (iv) a brief description of the status of the underlying claim(s), lawsuit(s), or proceeding(s), and (v) cause as to why the stay should be lifted.

> During the Lift Stay Notice Period, the Debtors and the movant shall meet and confer (in person or telephonically) to attempt to resolve, in whole or in part, the movant's request for relief from the automatic stay.

> If (i) the Debtors disagree with the movant's request for relief from the automatic stay and/or (ii) the Lift Stay Notice Period expires without the parties reaching an agreement governing the scope of the relief from the automatic stay, then the movant may file a Stay Relief Motion pursuant to the Case Management Procedures. Such Stay Relief Motion must include a certification that the movant has met and conferred with the Debtors regarding the requested relief. If movant did not meet and confer with the Debtors prior to filing a Stay Relief Motion, and cannot show exigent circumstances for failing to meet and confer, the Court shall deny the Stay Relief Motion without prejudice until the movant has met and conferred with the Debtors.

The Debtors, in their discretion (subject to the Oversight Board's consent) and without immediate leave of Court, may (i) enter into stipulations modifying or lifting the automatic stay and (ii) agree to Court, may to modify or lift the automatic stay with respect to any prepetition ordinary course civil action against a Debtor.

The Debtors shall file an omnibus motion, every sixty (60) days, identifying each automatic stay modification agreed to by the Debtors during the relevant period and seeking Court approval of such modifications *nunc pro tunc* to the relevant modification date (an "Omnibus Lift Stay Motion").

Each Omnibus Lift Stay Motion shall include personalized information for each automatic stay modification including, as applicable, a brief description of the modification, case information (including case number and court), and counterparty.

For the avoidance of doubt, nothing in this Paragraph III.Q prejudices the rights of a party to request the consideration of any Stay Relief Motion on an expedited basis, or the rights of the Debtors or any other party in interest to contest such request for expedited consideration.

3.      The Court shall retain jurisdiction to hear and determine all matters (a) arising from or related to the implementation, enforcement, or interpretation of this order and (b) concerning the execution or enforcement in the Title III Cases of any judgment entered in a prepetition ordinary course civil action where the Debtors agreed to modify or lift the Title III Stay to allow the action to proceed to judgment by the underlying court.

4.      The following are attached to this Order as Exhibit 1 and its Annex: (a) the text of the Third Amended Case Management Procedures incorporating the above modification, as well as certain non-substantive changes to reflect the cancellation of certain hearings and the joint administration of the Puerto Rico Electric Power Authority's Title III Case with the other Title III Cases, and (b) a blackline against the Second Amended Case Management Procedures.

SO ORDERED.

Dated: October 24, 2017

                            /s/ Laura Taylor Swain
                            LAURA TAYLOR SWAIN
                            United States District Judge

**Exhibit 1**

**Third Amended Case Management Procedures**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:                                                      PROMESA
                                                            Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of                                    No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO, *et al.*   (Jointly Administered)

                    Debtors.[1]

-------------------------------------------------------------x

**THIRD AMENDED**
**NOTICE, CASE MANAGEMENT AND ADMINISTRATIVE PROCEDURES**

On June 2, 2017, the Court entered an order (the "Procedures Order"): (a) incorporating the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules") for these Title III cases; (b) approving and implementing the notice, case management, and administrative procedures (collectively, the "Case Management Procedures"); and (c) granting certain related relief.

Anyone may obtain a copy of the Procedures Order and any amendments thereto, as well as any document filed with the Court in these Title III Cases by: (a) accessing the website maintained by Prime Clerk LLC (the "Claims and Noticing Agent") at https://cases.primeclerk.com/puertorico (the "Case Website"); (b) contacting the Claims and Noticing Agent directly at (844)-822-9231 (toll free for U.S. and Puerto Rico) or (646)-486-7944 (for international callers); or (c) for a nominal fee, accessing the PACER system through the Court's website at www.prd.uscourts.gov. Finally, paper copies of all pleadings filed in these Title III Cases may be available from the Court

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Clerk pursuant to the Court's procedures and miscellaneous fee schedule of the District of Puerto Rico.

Pursuant to the Procedures Order, all notices, motions, applications, briefs, memoranda, affidavits, declarations, objections, responses, replies, and other documents filed in these Title III Cases are subject to, and will not be deemed properly served, unless they are served in accordance with, these Case Management Procedures as they may be amended from time to time.

Additionally, while the Bankruptcy Rules and the Local Bankruptcy Rules apply to these Title III Cases, to the extent there is a conflict between the foregoing and the Case Management Procedures, the Case Management Procedures govern in all respects to the extent that such variance is permitted by the relevant rules.

These Third Amended Notice, Case Management and Administrative Procedures are implemented by the Court to (a) clarify certain matters related to the procedures for filing motions for relief from the automatic stay in the Title III Cases, and (b) make certain non-substantive changes to reflect the cancellation of certain hearings and the joint administration of the Puerto Rico Electric Power Authority's Title III Case with the other Title III Cases.

**ALL PARTIES IN INTEREST ARE STRONGLY ENCOURAGED TO REVIEW THESE CASE MANAGEMENT PROCEDURES IN THEIR ENTIRETY AND CONSULT THEIR OWN LEGAL COUNSEL WITH RESPECT TO THE MATTERS DISCUSSED HEREIN PRIOR TO FILING ANY DOCUMENTS IN THESE TITLE III CASES.**

### Third Amended Case Management Procedures

I.       **General Case Administration and Pleadings**

    A.    The Claims and Noticing Agent is authorized to establish the Case Website available at https://cases.primeclerk.com/puertorico, where, among other things, all pleadings, key dates, and information about these Title III Cases will be posted.

    B.    All documents filed in these Title III Cases, including, but not limited to, all notices, motions, applications, other requests for relief, all briefs, memoranda, affidavits, declarations, and other documents filed in support of such papers seeking relief (collectively, the "Pleadings"), objections or responses to the Pleadings (the "Objections"), statements related thereto ("Statements"), and replies thereto (the "Replies" and together with the Pleadings, the Statements, and the Objections, the "Documents") shall be filed electronically with the Court on the docket of *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS (the "Docket"), by registered users of the Court's case filing system in searchable portable document format ("PDF").

    C.    A hearing notice ("Notice of Hearing") shall be filed and served concurrently with all Pleadings and shall include the following:  (i) the title of the Pleading; (ii) the parties upon whom any Objection to the Pleading is required to be served; (iii) the date and time of the applicable Objection Deadline (as defined below); (iv) the date of the

hearing at which the Pleading shall be considered by the Court; and (v) a statement that the relief requested may be granted without a hearing if no Objection is timely filed and served in accordance with the Case Management Procedures.

D.   The applicable Objection Deadline and hearing date shall appear on the upper right corner of the first page of the Notice of Hearing and on the upper right corner of the first page of each Pleading. The applicable hearing date shall appear on the upper right corner of the first page of any filed Objection.

E.   Unless prior permission has been granted, notices of motion are limited to five (5) pages, memoranda of law in support of motions or Objections are limited to thirty-five (35) pages and memoranda of law in support of Replies are limited to fifteen (15) pages. All memoranda shall be double-spaced, 12-point font, with 1" margins. Memoranda of ten (10) pages or more shall contain a table of contents and a table of authorities. The page(s) with the case caption shall not be counted for purposes of the foregoing page limits.

F.   Nothing in the Case Management Procedures shall prejudice the right of any party to move the Court to request relief under Bankruptcy Code section 107(b) or Bankruptcy Rule 9018 to protect: (i) any entity with respect to a trade secret or confidential research, development, or commercial information, or (ii) any person with respect to a scandalous or defamatory matter, or personally identifiable information, contained in a Document filed in these Title III Cases.

G.   If any Pleading or Objection seeks an evidentiary hearing, the evidentiary hearing request shall be prominently displayed on the Pleading or Objection. The Court retains full discretion regarding the scheduling of evidentiary hearings.

H.   Scheduling requests (other than from the Debtors) must be brought by urgent motion ("Urgent Motion"). All Urgent Motions must be preceded by reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court in such Urgent Motion request. All Urgent Motions shall have a certification that the reasonable, good-faith communications took place, and if there is knowledge that there will be an objection to the Urgent Motion, the anticipation of an objection shall be prominently disclosed in the Urgent Motion. Courtesy copies of all Urgent Motions shall be e-mailed to the Court at swaindprcorresp@nysd.uscourts.gov.

I.   All Pleadings, whether Urgent Motions or not, that are requesting relief, shall be accompanied by a proposed order. A copy of the proposed order shall be emailed to the Court at swaindprcorresp@nysd.uscourts.gov in Microsoft word format.

J.   All communications filed in these Title III Cases that are informative and do not request any relief shall be labeled as an informative motion.

K.   Counsel who have been admitted pursuant to a pro hac vice order in a Title III case shall be deemed admitted without further application for all adversary proceedings in connection with that Title III case and in all other jointly administered Title III cases. Notices of appearance must still be filed for each adversary proceeding.

## II.      Service

A.      All Documents shall be served, in the manner described herein, on the following parties (collectively, the "Standard Parties"):

(i)      Chambers of the Honorable Laura Taylor Swain (two copies shall be delivered to the chambers):

   United States District Court for the Southern District of New York
   Daniel Patrick Moynihan United States Courthouse
   500 Pearl St., Suite No. 3212
   New York, New York 10007-1312

(ii)     Office of the United States Trustee for Region 21
   Edificio Ochoa, 500 Tanca Street, Suite 301
   San Juan, PR 00901-1922

(iii)    Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF):

   Puerto Rico Fiscal Agency and Financial Advisory Authority
   Roberto Sánchez Vilella (Minillas) Government Center
   De Diego Ave. Stop 22
   San Juan, Puerto Rico 00907
   Attn:     Gerardo J. Portela Franco
             Mohammad Yassin, Esq.
   E-Mail:   Gerardo.Portela@aafaf.pr.gov
             Mohammad.Yassin@aafaf.pr.gov

(iv)     Counsel for AAFAF:

   O'Melveny & Myers LLP                    Law Offices of Andrés W. López, Esq.
   7 Times Square                           902 Fernández Juncos Ave.
   New York, New York 10036                 San Juan, PR 00907
   Attn:     John J. Rapisardi, Esq.        Attn: Andrés W. López, Esq.
             Suzzanne Uhland, Esq.          E-Mail: andres@awllaw.com
             Peter Friedman, Esq.
             Diana M. Perez, Esq.
   E-Mail:   jrapisardi@omm.com
             suhland@omm.com
             pfriedman@omm.com
             dperez@omm.com

(v)      Counsel for AAFAF (PREPA):

   Greenberg Traurig LLP                    Cancio, Nadal, Rivera & Díaz, P.S.C.
   MetLife Building                         PO Box 364966
   200 Park Avenue                          San Juan, PR  00936-4966

New York, New York 10166
Attn:     Nancy A. Mitchell, Esq.
          David D. Cleary, Esq.
          Nathan A. Haynes, Esq.
          Kevin D. Finger, Esq.
E-Mail:   mitchelln@gtlaw.com
          clearyd@gtlaw.com
          haynesn@gtlaw.com
          fingerk@gtlaw.com

Attn:     Arturo Diaz-Angueira, Esq.
          Katiuska Bolaños-Lugo, Esq.
E-Mail:   adiaz@cnrd.com
          kbolanos@cnrd.com

(vi)     <u>Counsel for the Oversight Board:</u>

Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
Attn:     Martin J. Bienenstock
          Paul V. Possinger
          Ehud Barak
          Maja Zerjal
          Chris Theodoridis
E-Mail:   mbienenstock@proskauer.com
          ppossinger@proskauer.com
          ebarak@proskauer.com
          mzerjal@proskauer.com
          ctheodoridis@proskauer.com

O'Neill & Borges LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Attn:     Hermann D. Bauer, Esq.
E-Mail:   herman.bauer@oneillborges.com

(vii)    <u>Counsel for the Creditors' Committee:</u>

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn:     Luc. A. Despins
          James Bliss
          James Worthington
          G. Alexander Bongartz
E-Mail:   lucdespins@paulhastings.com
          jamesbliss@paulhastings.com
          jamesworthington@paulhastings.com
          alexbongartz@paulhastings.com

Casillas, Santiago & Torres LLC
El Caribe Office Building
·53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Attn:     Juan J. Casillas Ayala
          Diana M. Batlle-Barasorda
          Alberto J. E. Añeses Negrón
          Ericka C. Montuil-Novoa
E-Mail:   jcasillas@cstlawpr.com
          dbatlle@cstlawpr.com
          aaneses@cstlawpr.com
          emontuil@cstlawpr.com

(viii)   <u>Counsel for the Retiree Committee:</u>

Jenner & Block LLP
919 Third Avenue
New York, New York 10022
Attn:     Robert Gordon

Bennazar, García & Milián, C.S.P.
Edificio Union Plaza PH-A piso 18 Avenida
Ponce de León #416
Hato Rey, San Juan, Puerto Rico 00918
Attn:     A.J. Bennazar-Zequeira

|  | Richard Levin | E-Mail: | ajb@bennazar.org |
|---|---|---|---|
|  | Catherine Steege |  |  |
| E-Mail: | rgordon@jenner.com |  |  |
|  | rlevin@jenner.com |  |  |
|  | csteege@jenner.com |  |  |

(ix)    The entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims in COFINA's Title III Case.

(x)    Counsel to any other statutory committee appointed in these Title III Cases.

B.    All paper and e-mail courtesy copies served on the Court shall include the applicable Case Management/Electronic Case Files ("CM/ECF") header information.

C.    For purposes of service pursuant to Bankruptcy Rules 7004(b)(6), 7004(b)(9), and 7004(g), all service to the Debtors shall be made both to counsel to the Oversight Board and counsel to AAFAF, as listed above.

D.    Any creditor or party in interest that wishes to receive notice in these Title III Cases and is not otherwise entitled to notice pursuant to the Case Management Procedures shall file a notice of appearance (a "Notice of Appearance") and request for service of papers in accordance with Bankruptcy Rules 2002 and 9010(b) and the Case Management Procedures. Any party that has previous filed a *pro hac vice* motion but not a Notice of Appearance should file a Notice of Appearance to ensure that such party receives notice of Documents filed in these Title III Cases. For purposes of these Title III Cases, creditors or parties in interest filing such Notices of Appearance shall be included in the CM/ECF system for noticing purposes and will be considered to have accepted, upon filing of such Notice of Appearance, to receive documents and notices through the CM/ECF system. Alternatively, if direct inclusion in the CM/ECF system is not possible, the filer of a Notice of Appearance shall be considered to have consented to receive electronic notices pursuant to Local Bankruptcy Rule 5005-4(g), unless the filing party complies with the certificate requirement set forth in the second paragraph of this Section II.D and the Court approves such certification.

The Notice of Appearance shall include the following: (i) the requesting party's name, address, and telephone number; (ii) the name and address of the requesting party's counsel, if any; (iii) the requesting party's email address for service by electronic transmission; (iv) the requesting party's address for service by U.S. mail, hand delivery, and/or overnight delivery; and (v) the requesting party's facsimile number for service by facsimile. Any creditor or party-in-interest that files a Notice of Appearance and request for service of papers in accordance with the Case Management Procedures shall receive notice via electronic transmission. Any individual or entity that does not maintain and cannot practicably obtain an email address must include in its Notice of Appearance a certification stating the same and state the reasons why obtaining such email address is not feasible or unduly burdensome. Notice will be provided to these individuals or entities by U.S. mail, overnight delivery, or facsimile at the filing party's discretion. Notwithstanding Bankruptcy Rules 2002 and 9010(b), no request for

service filed in these Title III Cases shall have any effect unless the foregoing requirements are satisfied.

E.    The Claims and Noticing Agent shall maintain a master service list (the "Master Service List"), which shall include all persons and entities that have filed a Notice of Appearance pursuant to Bankruptcy Rules 2002 and 9010(b) and the Case Management Procedures (the "Rule 2002 Parties") and the Standard Parties.  The Master Service List shall contain addresses, facsimile numbers, and email addresses. The Claims and Noticing Agent shall use reasonable efforts to update and post on its website the Master Service List as often as practicable, but in no event less frequently than every fifteen (15) days.  The Master Service List and any updates thereto shall be filed electronically on the website of the United States Bankruptcy Court for the District of Puerto Rico, www.prb.uscourts.gov, and on the Case Website commencing as of the date that is no later than ten (10) days from the date hereof.

F.    All Documents must be served, in the manner described herein, on the Master Service List and on any person or entity with a particularized interest in the subject matter of a certain Document (each, an "Affected Party").  Subject to Paragraph II.H, Documents filed in adversary proceedings are not required to be served on the Master Service List.

G.    The proceedings with respect to which notice is limited to the Master Service List shall include all matters covered by Bankruptcy Rule 2002, with the express exception of the following:  (a) notice of (i) the time fixed for filing proofs of claim pursuant to Bankruptcy Rule 3003(c) and (ii) the time fixed for filing objections to, and the hearings to consider, approval of a disclosure statement and plan; and (b) notice and transmittal of ballots for accepting or rejecting a plan, which notices shall be given in accordance with Bankruptcy Rule 2002 and other applicable Bankruptcy Rules, unless otherwise ordered by the Court or otherwise prescribed by the Bankruptcy Code.

H.    Pleadings related to a compromise or settlement must be served on the Master Service List and any Affected Parties, but need not be served on all creditors.

I.    Parties shall serve the Court and the U.S. Trustee by U.S. mail, overnight delivery, or hand delivery.  Service of courtesy copies on the Court must be made promptly, and must be completed within one business day after filing for all papers relating to Urgent Motions, or where the papers relate to a hearing scheduled to be held within one week of the filing date.  Parties may serve the Standard Parties and the Affected Parties, with the exception of the Court and the U.S. Trustee, via the CM/ECF system described in Section II.D, and no further notice shall be required on such Standard Parties and Affected Parties unless the Bankruptcy Rules, the Local District Court Rules, or Local Bankruptcy Rules require otherwise or the Court orders otherwise.

J.    [RESERVED]

K.    Parties shall be authorized to rely to the maximum extent possible on CM/ECF notice for all Documents on the Rule 2002 Parties.  To the extent it is known that one or more Affected Party will not receive CM/ECF notice, there shall be an obligation on the

moving party to ensure service by the most efficient and timely manner possible on such Affected Parties (including service by e-mail unless the Affected Party has included a certification on its Notice of Appearance that it does not maintain an e-mail address).

L.  All Documents served by email shall include access to an attached file containing the entire Document, including the proposed form(s) of order and any exhibits, attachments and other relevant materials in PDF format, readable by Adobe Acrobat or an equivalent program. Notwithstanding the foregoing, if a Document cannot be annexed to an email (because of its size, technical difficulties or otherwise), the party serving the Document may, in its sole discretion: (i) serve the entire Document by U.S. mail or overnight delivery, including the proposed form(s) of order and any exhibits, attachments and other relevant materials or (ii) email the parties being served and include a notation that the Document cannot be annexed and will be (a) mailed if requested or (b) posted on the Case Website.

M.  Service by email shall be effective as of the date the Document is sent to the email address provided by the party.  If service is made by email, the Debtors shall not be required to serve a paper copy of the Document on interested parties and email service shall satisfy the Court's rules for service.

N.  If a party entitled to notice of a Document does not have an email address or an email address is not available in the Master Service List, the party shall be served by U.S. mail, overnight delivery, facsimile, or hand delivery, the choice of the foregoing being in the sole discretion of the party who is required to serve.

O.  Upon the completion of noticing any particular matter, the party seeking relief shall file with the Court within three (3) business days either an affidavit of service or a certification of service attaching the list of parties that received notice; provided, however, that parties shall not be required to serve the affidavits of service on such recipients.

P.  Upon the request of a non-Debtor Movant for the Claims and Noticing Agent to serve Pleadings, and provided the Oversight Board as the instructing entity permits the Claims and Noticing Agent to serve such Pleadings, the Claims and Noticing Agent shall serve such Pleadings and bill the related service expense directly to the applicable non-Debtor movant.

## III.   Scheduling

A.  The Debtors shall be authorized to schedule, in cooperation with the Court, periodic omnibus hearings (the "Omnibus Hearings") at which Pleadings shall be heard.  Upon scheduling, the Claims and Noticing Agent shall post the date of the Omnibus Hearings on the Case Website.  The next Omnibus Hearings shall be scheduled for the following dates and times:

  • 9:30 a.m. on the 15th day of November, 2017;

- 9:30 a.m. on the 20th day of December, 2017;

- 9:30 a.m. on the 7th day of February, 2018;

- 9:30 a.m. on the 7th day of March, 2018;

- 9:30 a.m. on the 25th day of April, 2018;

- 9:30 a.m. on the 6th day of June, 2018;

- 9:30 a.m. on the 25th day of July, 2018; and

- 9:30 a.m. on the 12th day of September, 2018.

B.   All Omnibus Hearings may be scheduled for two consecutive days, if needed.

C.   Those in attendance in the main courtroom at any hearing shall refrain from wearing cologne or perfume.

D.   Subject to consultation with Chambers via email to swaindprcorresp@nysd.uscourts.gov, hearings in connection with individual and omnibus claim objections, applications for professional compensation and reimbursement, pre-trial conferences, asset sales and trials related to adversary proceedings, approval of a disclosure statement, confirmation of a plan, and any other Pleading filed by the Debtors may be scheduled for dates other than the Omnibus Hearing dates; provided, however, that hearings in connection therewith may be scheduled on a non-Omnibus Hearing date only after consultation with counsel to the Oversight Board and counsel to the Debtors (which consultation shall occur as soon as practicable); provided, further, that initial pre-trial conferences scheduled in connection with adversary proceedings involving the Debtors shall be set on the next available Omnibus Hearing date that is at least 45 days after the filing of the complaint; unless the Court expedites the pre-trial conference; provided, further, that hearings on all other Pleadings, except for those Pleadings specifically referenced in this Paragraph III.D, filed by any party must be scheduled for an Omnibus Hearing except for a Pleading requiring emergency or expedited relief in accordance with these Case Management Procedures.

E.   Except for filings that have previously been authorized by the Court in response to an Urgent Motion establishing such scheduling, if a Document is filed by a party other than the Debtors and purports to set a hearing date inconsistent with the Case Management Procedures (an "Inconsistent Filing"), the hearing shall be scheduled without the necessity of Court order for the first Omnibus Hearing date after the applicable notice period has expired and all applicable deadlines shall be accordingly extended, and the Debtors shall provide such party with notice of the Case Management Procedures within three (3) business days of receipt of the Inconsistent Filing.

F.   If a movant, applicant, or other party determines that a motion, application, or pre-trial conference requires emergency or expedited relief, the movant, applicant, or other party may, for good cause shown, seek an expedited hearing or pre-trial conference pursuant to Urgent Motion, and the Debtors and other parties in interest, as applicable, shall have the right to contest such request for expedition. All requests for emergency or expedited relief shall comply with the applicable Local Bankruptcy Rule.

G.   If a Pleading seeks relief pursuant to Bankruptcy Rule 2002(a) or Bankruptcy Rule 2002(b), the hearing to consider such Pleading shall be set in accordance with the time period set forth in Bankruptcy Rules 2002(a) and (b) and 9006. For all other Pleadings, with the exception of Pleadings filed pursuant to the Presentment Procedures (as described below), Pleadings shall not be considered unless filed and served in accordance with the Case Management Procedures at least twenty-two (22) calendar days before the next applicable hearing date; provided, however, that nothing in the Case Management Procedures shall prejudice the right of any party to move the Court to request an enlargement or reduction of any time period under Bankruptcy Rules 9006(b) and (c).

H.   Notwithstanding the immediately preceding paragraph, a party may present a proposed order addressing administrative matters for approval by the Court; provided, however, that the presentment of a proposed order for administrative relief must be filed and served at least seven (7) calendar days before the presentment date, and Objections thereto must be filed and served at least one (1) calendar day before presentment date (the "Presentment Procedures").

I.   The deadline to file an Objection (the "Objection Deadline") to any Pleading shall be (i) 4:00 p.m. (Atlantic Standard Time) on the date that is fifteen (15) calendar days before the applicable hearing date or (ii) any date otherwise ordered by the Court. The Objection Deadline may be extended with the consent of the movant or applicant. If such an extension has been agreed upon, the parties need not file a stipulation or other pleading with the Court reflecting the extension; provided, however, that movant shall provide notice of the extension to Chambers by e-mail to swaindprcorresp@nysd.uscourts.gov. However, if an Objection Deadline was set by a separate scheduling order of the Court, any extension must be noticed by the filing of an informative motion. The Objection shall not be considered timely unless filed with the Court and received by the movant and the Standard Parties on or before the applicable Objection Deadline. All parties filing an Objection shall include their telephone number, facsimile number, and email in the signature block on the last page of the Objection.

J.   Unless the Court orders otherwise, if any Pleading, including a Stay Relief Motion (as defined below), is adjourned, the Objection Deadline with respect thereto shall be extended to 4:00 p.m. (Atlantic Standard Time) on the date that is fifteen (15) calendar days prior to the applicable hearing and all other applicable deadlines shall be likewise extended.

K.     The deadline to file Replies, joinders to an Objection, or any Statement shall be (i) for
       all parties other than the Debtors and any statutory committee, 4:00 p.m. (Atlantic
       Standard Time) on the date that is eight (8) calendar days before the applicable hearing
       date, (ii) for the Debtors and any statutory committee, 4:00 p.m. (Atlantic Standard
       Time) on the date that is seven (7) calendar days before the applicable hearing date, or
       (iii) any date and time otherwise ordered by the Court.

L.     Sur-replies shall not be permitted or considered unless authorized by the Court.

M.     Two (2) business days before a scheduled hearing, the Debtors shall, after consultation
       via email with the Court, file with the Court an agenda (the "Agenda") setting forth
       each matter to be heard at the hearing (updated after the initial submission, if necessary)
       and shall serve the Agenda by email or facsimile on (i) the Standard Parties, (ii) the
       Rule 2002 Parties, and (iii) any party that filed Documents referenced in the Agenda;
       provided, however, that where the Debtors have less than 48 hours' notice of a hearing,
       the Debtors shall file an agenda only to the extent feasible.

N.     The Agenda shall include, to the extent known by the Debtors: (i) the docket number
       and title of each matter scheduled to be heard at the hearing, including the initial filing
       and any Objections, Statements, Replies, or Documents related thereto; (ii) whether the
       matter is contested or uncontested; (iii) whether the matter has been settled or is
       proposed to be continued; (iv) the identification number of any proof(s) of claim(s)
       implicated in the Document; and (v) other comments that will assist the Court;
       provided, however, that the matters listed on the Agenda shall be limited to matters of
       substance and shall not include administrative filings such as notices of appearance and
       affidavits of service.

O.     The Agenda may include notice of matters that have been consensually adjourned to a
       later hearing date in lieu of parties filing a separate notice of such adjournment.

P.     In the event a matter is properly noticed for hearing and the parties reach an agreement
       to settle the dispute prior to the hearing, the parties may announce the settlement at the
       scheduled hearing; provided, however, that the parties shall notify the Court, the Office
       of the United States Trustee, counsel for the Oversight Board, as representative of the
       Debtors, and the Creditors' Committee of such agreement as soon as practicable prior
       to the hearing.  In the event the Court determines that notice of the dispute and the
       hearing is adequate notice of the effects of the settlement (i.e., that the terms of the
       settlement are not materially different from what parties in interest could have expected
       if the dispute were fully litigated), the Court may approve the settlement at the hearing
       without further notice of the terms of the settlement.  In the event the Court determines
       that additional or supplemental notice is required, the Debtors shall serve such notice
       in accordance with the Case Management Procedures and a hearing to consider such
       settlement shall be on the next hearing day deemed appropriate by the Court.

Q.     Subject to Paragraphs III.F and III.T, at least fifteen (15) business days prior to filing a
       Stay Relief Motion to continue a prepetition ordinary course civil action against a
       Debtor other than PREPA, the movant shall contact counsel for the Oversight Board

(Attn: Hermann Bauer (Hermann.Bauer@oneillborges.com) and Ubaldo M. Fernández Barrera (ubaldo.fernandez@oneillborges.com)) and counsel for AAFAF (Attn: Diana M. Perez (dperez@omm.com) and Andrés W. López (andres@awllaw.com)), and, for all Lift Stay Notices related to PREPA, the movant shall contact counsel for the Oversight Board (Attn: Hermann Bauer (Hermann.Bauer@oneillborges.com) and Ubaldo M. Fernández Barrera (ubaldo.fernandez@oneillborges.com)) and counsel for AAFAF (Attn: Kevin Finger (fingerk@gtlaw.com)) by electronic-mail to advise them of the movant's intent to seek relief from the automatic stay (the "Lift Stay Notice" and the notice period, the "Lift Stay Notice Period"). The Lift Stay Notice Period and the procedures set forth below shall not apply to Stay Relief Motions that are filed by creditors seeking to enforce a financial debt claim.

The Lift Stay Notice shall include (i) the identity of the movant and its contact information, (ii) the claim(s), lawsuit(s), or other proceeding(s) for which movant seeks relief from the automatic stay, including the relevant case number and court information, (iii) the amount of the claim(s) and the asserted causes of action, (iv) a brief description of the status of the underlying claim(s), lawsuit(s), or proceeding(s), and (v) cause as to why the stay should be lifted.

During the Lift Stay Notice Period, the Debtors and the movant shall meet and confer (in person or telephonically) to attempt to resolve, in whole or in part, the movant's request for relief from the automatic stay.

If (i) the Debtors disagree with the movant's request for relief from the automatic stay and/or (ii) the Lift Stay Notice Period expires without the parties reaching an agreement governing the scope of the relief from the automatic stay, then the movant may file a Stay Relief Motion pursuant to the Case Management Procedures. Such Stay Relief Motion must include a certification that the movant has met and conferred with the Debtors regarding the requested relief. If movant did not meet and confer with the Debtors prior to filing a Stay Relief Motion, and cannot show exigent circumstances for failing to meet and confer, the Court shall deny the Stay Relief Motion without prejudice until the movant has met and conferred with the Debtors.

The Debtors, in their discretion (subject to the Oversight Board's consent) and without immediate leave of Court, may (i) enter into stipulations modifying or lifting the automatic stay and (ii) agree to modify or lift the automatic stay with respect to any prepetition ordinary course civil action against a Debtor.

The Debtors shall file an omnibus motion, every sixty (60) days, identifying each automatic stay modification agreed to by the Debtors during the relevant period and seeking Court approval of such modifications *nunc pro tunc* to the relevant modification date (an "Omnibus Lift Stay Motion").

Each Omnibus Lift Stay Motion shall include personalized information for each automatic stay modification including, as applicable, a brief description of the modification, case information (including case number and court), and counterparty.

For the avoidance of doubt, nothing in this Paragraph III.Q prejudices the rights of a party to request the consideration of any Stay Relief Motion on an expedited basis, or the rights of the Debtors or any other party in interest to contest such request for expedited consideration.

R.    Subject to Paragraphs III.F, III.S, and III.T, a motion for relief from the automatic stay (a "Stay Relief Motion") in accordance with Bankruptcy Code section 362 shall be noticed for consideration on the Omnibus Hearing Date that is at least 22 days after the Stay Relief Motion is filed and notice thereof is served upon counsel for the Oversight Board, as representative of the Debtors.  Unless otherwise ordered by the Court, the Objection Deadline with respect thereto shall be the later to occur of (i) fifteen (15) calendar days after the date of filing and service of the Stay Relief Motion and (ii) eight (8) calendar days prior to the hearing scheduled with respect thereto; effectively, this means that the Objection Deadline will be eight (8) calendar days prior to the hearing scheduled with respect to the Stay Relief Motion, except in certain situations where an expedited hearing is scheduled with respect to the Stay Relief Motion.  The movant may file and serve a reply four (4) calendar days prior to the hearing.

S.    If a moving party notices a Stay Relief Motion for an Omnibus Hearing Date that falls on or after the thirtieth (30th) day after the filing of the Stay Relief Motion, or consents to the adjournment of an Omnibus Hearing to a date that falls on or after the thirtieth (30th) day after the filing of the Stay Relief Motion, the moving party shall be deemed to have consented to the continuation of the automatic stay in effect pending the conclusion of, or as a result of, a final hearing and determination under Bankruptcy Code section 362(d), and shall be deemed to have waived its right to assert the termination of the automatic stay under Bankruptcy Code section 362(e) with respect to that Stay Relief Motion.  Any moving party shall be permitted to request an expedited hearing on its Stay Relief Motion, as provided in Paragraph III.F, and in that case, the moving party shall not be deemed to have waived its right to assert the termination of the automatic stay under Bankruptcy Code section 362(e); provided, however, that any expedited hearing granted in accordance with this paragraph shall be without prejudice to the right of the parties to request, and/or the Court to otherwise treat, such expedited hearing as a preliminary hearing in accordance with Bankruptcy Code section 362(e). For the avoidance of doubt, any hearing on a Stay Relief Motion shall be scheduled as a final hearing (which the Court may later treat as a preliminary hearing in the Court's discretion) unless the Affected Parties agree otherwise or the Court orders otherwise. A hearing on a Stay Relief Motion will take place only if an Objection is timely filed; if no Objection is timely filed, an order may be entered granting the relief requested.

T.    Notwithstanding Paragraphs III.Q, III.R, and III.S, nothing in the foregoing paragraphs prejudices the rights of a party to request the expedited consideration of any motion seeking relief from stay, or the rights of the Debtors or any other party in interest to contest such request for expedited consideration.

U.    If the date any Document would be due falls on a day other than a business day, such Document must be filed and served by the first business day preceding such date, except where the Document relates to a hearing scheduled to be held within one week

of the filing date, in which event the Document must be filed on the calendar date it is due.

## IV.   Disclosure Requirements

A.   Every group, committee and entity described in Federal Rule of Bankruptcy Procedure 2019(b)(1) (each, a "Rule 2019(b) Group") that, on or before August 9, 2017, has taken a position before the Court[2] must file a verified statement that complies with the disclosure requirements enumerated by Federal Rule of Bankruptcy Procedure 2019 by August 24, 2017 at 5:00 p.m. (Atlantic Standard Time). For the avoidance of doubt and for the purposes of these Title III cases, compliance with Bankruptcy Rule 2019 includes disclosure of: (i) all economic interests with respect to each Debtor in whose Title III case the group, committee and/or entity has taken a position, including derivative interests, and (ii) the existence and amount of any bond insurance or other credit protection, including by a monoline insurer.

B.   A Rule 2019(b) Group that first takes a position before the Court or solicits votes regarding the confirmation of a plan on behalf of another after August 9, 2017, must file a verified statement compliant with Federal Rule of Bankruptcy Procedure 2019(c) within five (5) calendar days of taking such position before the Court or soliciting such votes. Federal Rule of Bankruptcy Procedure 9011(b) applies to attorneys filing such statements.

C.   If any fact disclosed in the Rule 2019(b) Group's most recently filed statement (including, but not limited to, information concerning the composition of the Rule 2019(b) Group) changes materially, the Rule 2019(b) Group must file a supplemental verified statement contemporaneously with or within 48 hours after the next instance in which the Rule 2019(b) Group takes a position before the Court or solicits votes on the confirmation of a plan. Federal Rule of Bankruptcy Procedure 9011 applies to attorneys filing such supplemental statements. The absence of such a supplemental statement shall be deemed a representation that no material changes have occurred.

## V.   Other Case Management Procedures

A.   Nothing in the Procedures Order shall prejudice the rights of any party in interest to seek an amendment or waiver of the provisions of the Case Management Procedures upon a showing of good cause.

B.   The Debtors may seek to amend the Case Management Procedures from time to time throughout these Title III Cases, and shall present such amendments to the Court by notice of presentment in accordance with the Case Management Procedures.

C.   Within three (3) business days of entry of the Procedures Order or any amendment thereto, the Claims and Noticing Agent shall serve a printed copy of the relevant

---

[2]   For the avoidance of doubt, the phrase "takes a position before the Court" includes, but is not limited to, the filing of any Pleading, including informative motion practice containing factual or legal representations or arguments.

Procedures Order upon all parties on the Master Service List and post a copy of that Procedures Order on the Case Website.

D.     The Court retains jurisdiction to hear and determine all matters arising from or relating to the implementation of the Procedures Order.

E.     The Court retains power to provide notice of *sua sponte* amendments to the Case Management Procedures and/or Procedures Order.

Dated:  October 24, 2017