# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO

     Debtor.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 543, 1922**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY FILED BY BEATRIZ NIEVES-LÓPEZ, ET AL. [ECF NO. 1922]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

OBJECTION...................................................................................................................3

      I.       THE TITLE III STAY APPLIES TO THIS PREPETITION ACTION.......3

           A.     Judge Garcia-Gregory Has Already Determined the Title III Stay
Applies to This Action. ...............................................................................3

           B.     The Stay Under Bankruptcy Code Section 362(a) and the
Additional Stay Under Section 922(a) Apply to the
Commonwealth's Title III Case......................................................4

      II.     MOVANTS HAVE FAILED TO ESTABLISH THAT CAUSE EXISTS
TO LIFT THE STAY...................................................................................9

CONCLUSION.............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvin Marrero-Méndez, et al., v. Hector Pesquera, et al.*,
 Case No. 13-cv-1203 (JAG) (D.P.R. July 20, 2017) ........................................8

*In re BFW Liquidation, LLC*,
 Case No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14,
 2009) ........................................................................................................13

*Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla*,
 217 F. Supp. 3d 508 (D.P.R. 2016)..................................................................10

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
 369 B.R. 87 (D.P.R. 2007)..............................................................................10

*Cano-Rodríguez v. De Jesús-Cardona*,
 Case No. 16-1532 (1st. Cir. 2017) ....................................................................8

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
 28 B.R. 324 (Bankr. S.D.N.Y. 1983) ...............................................................15

*In re City of Stockton*,
 484 B.R. 372 (Bankr. E.D. Cal. 2012) ..................................................... *passim*

*FCC v. NextWave Pers. Commc'ns Inc.*,
 537 U.S. 293 (2003)........................................................................................12

*In re Gatke Corp.*,
 117 B.R. 406 (Bankr. N.D. Ind. 1989)..............................................................14

*Guadalupe-Baez v. Pesquera*,
 Case No. CV 13-1529 (GAG), 2017 WL 3837187 (D.P.R. Aug. 29, 2017) .....9

*In re Kmart Corp.*,
 Case No. 02-2474, 2002 U.S. Dist. LEXIS 24141 (N.D. Ill. Nov. 15, 2002)....8

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
 474 U.S. 494 (1986)..........................................................................................4

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
 537 B.R. 128 (Bankr. D.P.R. 2015) ...................................................................4

*Montana v. United States*,
 440 U.S. 147 (1979)..........................................................................................3

*Newberry v. City of San Bernardino (In re City of San Bernardino)*,
 558 B.R. 321 (C.D. Cal. 2016) ..................................................................5, 6, 8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Nieves-López, et al. v. Bhatia-Gautier et al.*,
    Case No. 14-cv-01220 (JAG) (D.P.R. 2014) .............................................1, 2, 3

*In re Northwest Airlines Corp.*,
    Case No. 05-17930 (ALG), 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13,
    2006) ...........................................................................................................14

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
    980 F.2d 110 (2d Cir. 1992)...........................................................................13

*In re Residential Capital, LLC*,
    Case No. 12-12020 (MG), 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8,
    2012) ......................................................................................................10, 12

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
    907 F.2d 1280 (2d Cir. 1990).............................................................2, 10, 11

*Southern Pac. R. Co. v. United States*,
    168 U.S. 1 (1897)............................................................................................3

*In re SunEdison, Inc.*,
    557 B.R. 303 (Bankr. S.D.N.Y. 2016) ...........................................................14

*Unisys Corp. v. Dataware Prod., Inc.*,
    848 F.2d 311 (1st Cir. 1988)............................................................................4

*Vazquez-Carmona v. Dep't of Educ. of Puerto Rico*,
    Case No. CV 16-1846 (GAG), 2017 WL 2352153 (D.P.R. May 31, 2017)......9

**Statutes**

11 U.S.C. § 101 ....................................................................................................12

11 U.S.C. § 101(5) ...............................................................................................12

11 U.S.C. § 362(a) .................................................................................................5

11 U.S.C. § 362(d)(1) .........................................................................................2, 9

11 U.S.C. § 922(a) .................................................................................................5

48 U.S.C. § 2161(a) ...............................................................................................5

Cal. Gov't Code § 825 ...........................................................................................6

Cal. Gov't Code § 825.2 ........................................................................................6

P.R. Laws Ann. tit.32, § 3085................................................................................7

# TABLE OF AUTHORITIES

## (continued)

**Page(s)**

P.R. Laws Ann. tit. 32, § 3087.................................................................7

P.R. Laws Ann. tit.32, § 3092.................................................................7

P.R. Laws Ann. tit. 32, § 30851 et seq. ....................................................1

**Other Authorities**

H.R. Rep. No. 95–595 (1977) ................................................................12

iv

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 1922] (the "Motion") filed by Beatriz Nieves López and 26 other plaintiffs (collectively, "Movants") in the case captioned *Nieves-López, et al. v. Bhatia-Gautier et al.,* Case No. 14-cv-01220 (JAG) (D.P.R. 2014) (the "Prepetition Action"), pending in the United States District Court for the District of Puerto Rico (the "Prepetition Court").[2] The Commonwealth respectfully requests the Court deny the Motion for the reasons set forth below.

## PRELIMINARY STATEMENT

1.      This Court should not lift the stay under Bankruptcy Code sections 362(a) and 922(a), made applicable to the Commonwealth's Title III case by PROMESA section 301(a) (the "Title III Stay"), to permit Movants to proceed with a Prepetition Action that seeks money damages and injunctive relief against various officials of the Commonwealth sued in their personal and official capacities under 42 U.S.C. § 1983.  *See* Motion ¶ 4.  Under Law No. 104 of June 29, 1955, as amended, P.R. Laws Ann. tit. 32, § 30851 et seq. ("Law 104") and the *Regulation Regarding Legal Representation and Payment of Judgment*, Regulation No. 8405 of 2013 ("Regulation 8405"), the Commonwealth represents the defendants in the Prepetition Action.

2.      The Motion should be denied because there is no good cause to lift the stay, which another Court has already held applies to Movants' claims.  More specifically, Judge Jay A. García-Gregory entered an order staying the Prepetition Action (the "Stay Order"), on June 16, 2017, directing Movants to file "any request to lift or vacate the stay" in this Court. *See* Case No.

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

14-cv-01220-JAG, ECF No. 67. Yet notwithstanding this Stay Order, Movants argue that the Title III Stay is inapplicable to the Prepetition Action because it seeks relief against officials of the Commonwealth in both their personal and official capacity.

3.      Not only are Movants collaterally estopped from re-litigating this issue, were this Court to consider the applicability of the stay on the merits, it would conclude that the stay very clearly applies. PROMESA section 301(a) specifically incorporates Bankruptcy Code sections 362(a) and 922(a) to cases commenced under Title III.   As other courts have held, Section 1983 suits brought against government officials in their personal and official capacities are stayed under sections 362(a) and 922(a). *See, e.g., In re City of Stockton*, 484 B.R. 372, 375 (Bankr. E.D. Cal. 2012). Moreover, this Court entered an order expressly confirming the application of the automatic stay under sections 362(a) and 922(a) to the Commonwealth's Title III case. Movants' arguments that the Title III Stay is inapplicable to the Prepetition Action are therefore unpersuasive.

4.      Given that the stay unquestionably applies here, Movants have failed to demonstrate "cause" as to why the Title III Stay should be lifted. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous different factors, including those set forth in *Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280 (2d Cir. 1990).  The overwhelming majority of these factors weigh in favor of denying the Motion.

## OBJECTION

## I.   THE TITLE III STAY APPLIES TO THIS PREPETITION ACTION

### A.   *Judge García-Gregory Has Already Determined the Title III Stay Applies to This Action*

5.   On June 16, 2017, Judge García-Gregory entered the Stay Order staying the Prepetition Action and directing Movants to file "any request to *lift or vacate* the stay" before this Court. *See* Case No. 14-cv-01220-JAG, ECF No. 67 (emphasis added) ("This case is stayed pursuant to 48 U.S.C. sec. 2161(a), and 11 U.S.C. sec. 362(a) and 922."), ECF No. 69 (same). Despite the Stay Order, Movants argue in the Motion that the Title III Stay is inapplicable to the Prepetition Action because its claims are against officials of the Commonwealth in both their personal and official capacities. *See* Motion at ¶¶ 2, 3. Movants simply ignore that under long-standing principles of collateral estoppel, they are not free to re-litigate whether the Title III Stay applies to the Prepetition Action. Per the Stay Order, Movants' only available relief is to request this Court to lift or vacate the Title III Stay.[3] *See id.*

6.   Under the doctrine of collateral estoppel or issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). This doctrine ensures that a "'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties . . . .'"

---

[3] Another option for the Court to utilize to dispose of Movants' argument that the Title III Stay does not apply is that this Court does not have subject matter jurisdiction to review Movants' collateral attack on Judge Garcia-Gregory's Stay Order.  *See*, *e.g.*, *Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1501 (1995) (holding that bankruptcy court's injunction under Bankruptcy Code Section 105 cannot be collaterally attacked in a separate proceeding, and noting "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967))

*Id.* (quoting *Southern Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)). This "secure[s] the peace and repose of society by the settlement of matters capable of judicial determination." *Southern Pac. R. Co*., 168 U.S. at 49. Judge García-Gregory's prior ruling that the Title III Stay applies to the Prepetition Action estops Movants from re-litigating this issue here, as this Court has already held the Title III Stay to apply in a similarly postured proceeding. *See Memorandum Order Denying Alvin Marrero-Méndez's Motion for Relief from Stay (Docket Entry No. 952)* [ECF No. 1234] at 2-3 ("As a preliminary matter, the Court will not consider whether the automatic stay . . . applies to the Lawsuit. That issue has already been decided by Judge García-Gregory.").

> **B.     The Stay Under Bankruptcy Code Section 362(a) and the Additional Stay Under Section 922(a) Apply to the Commonwealth's Title III Case**

7.     Even if this Court were to find that Movants are not collaterally estopped from arguing that the Title III Stay does not apply to the Prepetition Action, Movants are attempting to pursue a prepetition action against inhabitants of the Commonwealth that seeks to enforce a claim against the Commonwealth and thus, the Title III Stay applies to the Prepetition Action.

8.      "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1ˢᵗ Cir, 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference.

4

*See Unisys Corp. v. Dataware Prods.*, Inc., 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)).

9.     Under Bankruptcy Code section 362(a), made applicable to the Title III cases by PROMESA section 301(a), the commencement or continuation "of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement" of the Title III case or "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under" Title III is automatically stayed without further action. 11 U.S.C. § 362(a); 48 U.S.C. § 2161(a). "[I]n addition to the stay provided by [Bankruptcy Code section 362(a)]," Bankruptcy Code section 922(a) supplements the stay under section 362 and extends the stay to all actions against "an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a); 48 U.S.C. § 2161(a).

10.     The application of Bankruptcy Code sections 362(a) and 922(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order"), which also clarified that, as to officers and inhabitants of the Debtors, the section 922 stay applies "in all respects to the Debtors' officers *in both their official and personal capacities* with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors." Title III Stay Order ¶ 5 (emphasis added).

11.     The extent of the automatic stay under Bankruptcy Code sections 362(a) and 922(a) is illustrated by *In re City of Stockton*, 484 B.R. 372 (Bankr. E.D. Cal. 2012) and *Newberry v.*

5

*City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 321 (C.D. Cal. 2016), two important Chapter 9 decisions that support the Commonwealth's argument that the Title III Stay applies to the Prepetition Action.

12.     In *Stockton*, a plaintiff sought relief from the automatic stay to continue its suit for wrongful termination and violation of federal civil rights against two Stockton officials in their personal and official capacities. 484 B.R. at 375. The city in *Stockton* had assumed the legal representation of the officials pursuant to a California indemnification statute, but the plaintiff theorized "that the City's insurer will pay defense expenses." *Id.*; *see also* Cal. Gov't Code §§ 825, 825.2. Recognizing that an action against the city's officials "is an exercise of the well-known strategy of suing a sovereign by falsely pretending to sue an officer," the court in *Stockton* rejected the plaintiff's argument and held that the section 1983 action against the officials "'seeks to enforce a claim against the debtor' within the meaning of § 922(a)." *Stockton*, 484 B.R. at 376 (citations omitted). The *Stockton* court found it problematic that the city was exposed to the financial risk of the judgment, and, furthermore, that "[t]he City having undertaken the defense of the individual defendants, it follows that the expense of further litigation against them will deplete the coffers of the City treasury." *Id.* at 379.

13.     Similarly, in *San Bernardino*, the court denied the plaintiff's request for relief from the automatic stay to proceed with its civil rights action against the city and several city officials in federal district court, finding that sections 362(a) and 922(a) barred plaintiff's claims for injunctive relief against the city and its officials. 558 B.R. at 328 ("A lawsuit [seeking injunctive relief] unquestionably seeks to 'exercise control' over the estate's 'property' when it seeks to enjoin the debtor from certain uses of its income-producing property, or seeks to force the defendant to destroy its income-producing property"). The *San Bernardino* court premised its

6

decision on the fact that the city's defense of the officials and the constraint upon the city's decision-making power affects the city's resources, including personnel costs and the making and enforcement of policy, in a way that the automatic stay is intended to protect. *Id.* at 329.

14.     Movants assert claims against officials of the Commonwealth for both monetary and injunctive relief under section 1983, seeking damages and reinstatement to their former positions at the Office of Legislative Services ("OLS"). *See* Motion ¶ 6. Similar to the indemnification statute at issue in *Stockton*, under Law 104 and Regulation 8405, the Commonwealth both assumes the legal representation and payment of a subsequent adverse judgment against every official, ex-official, employee or ex-employee of the Commonwealth covered by provisions 3085-3092a. P.R. Laws Ann. tit.32, §§ 3085, 3092.[4] The Commonwealth bears the cost of litigation of suits, and pays for the vast majority of adverse judgments, against its employees and officials regardless of what capacity they are sued in. Plaintiffs litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if they prevail, secure payment from the Commonwealth.

15.     In the instant case, even though OLS would be responsible for satisfying any injunctive remedy of reinstatement imposed upon the defendants in the Prepetition Action, under Law 104 and Regulation 8405, the Commonwealth has the exclusive responsibility regarding the legal representation and payment of any judgment against the defendants. Like in *Stockton*, the claims against the Commonwealth officials, whether in their personal or official capacities, seek payment from the Commonwealth and are thus, stayed under the Title III Stay. *See In re City of*

---

[4] While the initial decision to either assume the representation of the officer-defendant or pay the adverse judgment lies with the Commonwealth Secretary of Justice, Law 104 provides all officer-defendants with an avenue for judicial review. *See* 32 L.P.R.A. § 3087. Although the Commonwealth may initially decline to represent or pay the adverse judgment of an officer-defendant, the officer-defendant may seek judicial review of such denial and a court may well impose on the Commonwealth both the duty to defend, and the duty to indemnify from the adverse judgment. *Id.*

*Stockton*, 484 B.R. at 376 ("To the extent that there is a judgment against the individuals, the City, having undertaken their defense, will be required to pay the judgment. Hence, the civil action against the individuals 'seeks to enforce a claim against the debtor' within the meaning of § 922(a)." (citations omitted)); *see also Cano-Rodríguez v. De Jesús-Cardona*, Case No. 16-1532 (1st. Cir. 2017), Appellate Doc. No. 00117225999 (issuing order confirming applicability of Title III Stay to officials of the Commonwealth [in both their official and personal capacities]); *see also Alvin Marrero-Méndez, et al., v. Hector Pesquera, et al.*, Case No. 13-cv-1203 (JAG) (D.P.R. July 20, 2017), ECF No. 131 (finding that the Title III Stay applied to the movant's lawsuit in the District Court and stayed all of movant's claims, including movant's claim for equitable relief).

16.     The fact that Movants only seek injunctive relief against the officials in their official capacities does not preclude the Title III Stay from applying to these claims. Movants' claims for injunctive relief for employment reinstatement are an attempt to effectively exercise control over the Commonwealth's property in violation of section 362(a)(3).  *See In re City of San Bernardino*, 558 B.R. at 328 ("A lawsuit [seeking injunctive relief] unquestionably seeks to "exercise control" over the estate's "property" when it seeks to enjoin the debtor from certain uses of its income-producing property, or seeks to force the defendant to destroy its income-producing property"); *In re Kmart Corp.,* Case No. 02-2474, 2002 U.S. Dist. LEXIS 24141, at *4, *8 (N.D. Ill. Dec. 10, 2002) (denying stay motion where underlying action only sought injunctive relief as Kmart would have to absorb the cost of litigating the state court action and also could be required to pay attorneys' fees pursuant to fee-shifting provision); *see also Alvin Marrero-Méndez, et al., v. Hector Pesquera, et al.*, Case No. 13-cv-1203 (JAG) (D.P.R. July 20, 2017), ECF No. 131 (finding that the Title III Stay applied to the movant's lawsuit in the District Court and stayed, among other things, movant's claim for injunctive relief). The reasoning behind the *San Bernardino* decision is

8

sound: the aggregate effect of allowing the Prepetition Action to proceed would thwart the Commonwealth's restructuring efforts.  *See* 558 B.R. at 329, n.5 ("The financial effect of such an injunction is even more pronounced when the Court considers the aggregate effect of potentially multiple other lawsuits seeking similar injunctive relief against the City.").

17.    As demonstrated by the *Stockton* and *San Bernardino* decisions, Movants' argument that they are somehow excepted from the Title III Stay because they are only pursuing claims for injunctive relief against the officials in their official capacity and monetary damages against the officials in their personal capacity is contrary to the prevailing case law.[5] By pursuing their claims against the Commonwealth's officials regardless of their capacity, Movants are seeking to enforce a claim against the Commonwealth in an attempt to assert control over the Commonwealth's property, which triggers the application of the Title III Stay to the Prepetition Action.

## II.    MOVANTS HAVE FAILED TO ESTABLISH THAT CAUSE EXISTS TO LIFT THE STAY

18.    Movants have not established that cause exists to lift the Title III Stay. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous different factors,

---

[5] Movant's reliance on *Vazquez-Carmona v. Dep't of Educ. of Puerto Rico*, Case No. CV 16-1846 (GAG), 2017 WL 2352153 at *1 (D.P.R. May 31, 2017) and *Guadalupe-Baez v. Pesquera*, Case No. CV 13-1529 (GAG), 2017 WL 3837187 (D.P.R. Aug. 29, 2017), is misplaced. The facts of *Vazquez-Carmona* are distinguishable as that case involves the necessity of urgent care for a special needs child under the Disabilities Education Improvement Act. 2017 WL 2352153 at *1. The District Court's decision in *Guadalupe* is also distinguishable in that the court's decision relied on the ability of the Commonwealth to decline representation of an official under Law 104. 2017 WL 3837187 at * 2. In *Guadalupe,* the court did not make any finding as to whether the Commonwealth did assume representation in that case, however, the court noted that "a personal capacity claim for damages may or may not seek to 'enforce a claim' when the Commonwealth elects to provide representation." *Id.* Here, the Commonwealth has assumed the representation of the defendants Hon. Eduardo Bhatia Gautier, Denise M. Rivera González, and Maritza Torres Rivera. Accordingly, because the Commonwealth is responsible for the cost of defending and satisfying any judgments against the defendants, Movants are seeking to enforce a claim against the Commonwealth in violation of the Title III Stay.

9

including those set forth in *In re Sonnax Indus., Inc.*, 907 F.2d 1280.[6] *See Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax,* 907 F.2d at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)).

19.     As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.,* 907 F.2d at 1285.

20.     Where a motion seeking relief from the automatic stay is filed by an unsecured creditor, "the policies of the automatic stay weigh against granting the relief requested." *In re Residential Capital, LLC*, Case No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012). "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *Id*. (citations omitted).

21.     Here, Movants fail to demonstrate in the Motion that the *Sonnax* factors are

---

[6] The twelve factors adopted by the Second Circuit in <u>Sonnax</u> are:

    (1) whether relief would result in a partial or complete resolution of the issues;
    (2) lack of any connection with or interference with the bankruptcy case;
    (3) whether the other proceeding involves the debtor as a fiduciary;
    (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
    (5) whether the debtor's insurer has assumed full responsibility for defending it;
    (6) whether the action primarily involves third parties;
    (7) whether litigation in another forum would prejudice the interests of other creditors;
    (8) whether the judgment claim arising from the other action is subject to equitable subordination;
    (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
    (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
    (11) whether the parties are ready for trial in the other proceedings; and
    (12) impact of the stay on the parties and the balance of harms.

*See In re Sonnax Indus., Inc., 907 F.2d at 1286.*

satisfied. Movants use conclusory statements with respect to the stage of the Prepetition Action and the fact that the Prepetition Action is against officials in both their personal and official capacity, as evidence that the *Sonnax* factors are satisfied. Despite Movants' assertions, given the procedural status of the Prepetition Action and the fact that Movants are asserting claims against the Commonwealth since the costs associated with defending the officials in the Prepetition Action will be borne by the Commonwealth, the majority of the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying Movants' Motion.

22.    **Sonnax Factors 1, 10, and 11**: The Prepetition Action is still at the early stages and the Commonwealth will be required to expend considerable time and expense for the Prepetition Action to move forward. Prior to the commencement of the Commonwealth's Title III case, the parties were in the process of conducting discovery, which was scheduled to continue through June 30, 2017.  Motions for summary judgment and a joint pretrial memorandum are pending before the Prepetition Court.  However, as a result of the case being stayed, the relevant due dates and trial dates were vacated. If the Prepetition Action went forward and the summary judgment motions were denied, the Commonwealth, through the Department of Justice, would be responsible for conducting discovery, the preparation and filing of dispositive motions, and defending the officials at the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.  The parties are not ready for trial in the Prepetition Action and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 1, 10, and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re*

*Residential Capital, LLC,* 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done.").

23.     **Sonnax Factors 2 and 7**: Title III of PROMESA applies with respect to all debts, claims, and liens asserted against a Title III debtor (as such terms are defined in Bankruptcy Code section 101), created before, on, or after the commencement of the Title III case.  *See* 11 U.S.C. § 101(5) (including equitable remedy in the term "claim").[7] The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

24.     Movants argue that because the defendants in their personal capacities are separate from the Commonwealth, the Prepetition Action involves third parties and there is thus, no prejudice for creditors or interested parties. *See* Motion ¶ 27. As discussed above, by seeking money damages against officials of the Commonwealth represented by the Department of Justice in accordance with Law 104 and Regulation 8405, Movant is asserting claims against the

---

[7] Bankruptcy Code section 101(5), defines "claim" as:

   (A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, *equitable*, secured, or unsecured; or

   (B) right to an *equitable remedy* for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101 (emphasis added).

Commonwealth since the costs associated with defending, and any judgment against, the officials

in the Prepetition Action will be borne by the Commonwealth. As potential prepetition, unsecured

creditors of the Commonwealth, Movants' claims are subject to the claim resolution process that

will be undertaken in the Commonwealth's Title III case. Further, because no insurance coverage

exists for Movants' claims in the Prepetition Action, any judgment obtained by Movants would

most likely by satisfied by the Commonwealth directly. Requiring the Commonwealth to defend

Movants' claims before determination of what the claim resolution process will look like would

undermine that process and upend the "strong bankruptcy code policy that favors centralized and

efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v.*

*United States* (*In re Cuyahoga Equip. Corp.*)*,* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted);

*see also In re BFW Liquidation*, *LLC*, Case No. 09-00634-BGC-11, 2009 WL 8003536, at *3

(Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and

requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the

claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the

goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

     25.    Lifting the automatic stay to proceed with the Prepetition Action will divert the

Commonwealth's attention and resources to defending Movants' claims in the Prepetition Court

and will encourage other creditors to seek similar relief. Because the outcome of the Prepetition

Action will impact other creditors in the Title III case, the Department of Justice will need to

coordinate its defense of the Commonwealth with the Commonwealth's and the Oversight Board's

bankruptcy advisors, thereby increasing the Commonwealth's defense costs. Thus, *Sonnax* factors

2 and 7 weigh in favor of denying the Motion. *See In re SunEdison, Inc.,* 557 B.R. 303, 308 (Bankr.

S.D.N.Y. 2016) (citation omitted) (holding "cause" did not exist to lift automatic stay where

"debtors [were] defendants in several lawsuits asserting 'massive' claims that could have a 'very major effect on stakeholder recoveries'" and allowing relief from stay in that instance would open up the "floodgates" for creditors seeking similar relief); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.,* Case No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfer[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

26. **Sonnax Factor 3**: The Prepetition Action does not involve the Commonwealth as a fiduciary and Movants have not made such an assertion nor provided any evidence to support such an assertion. Thus, *Sonnax* factor 3 weighs in favor of denying the Motion.

27. **Sonnax Factor 4**: No specialized tribunal has been established to hear the Prepetition Action. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

28. **Sonnax Factor 5**: The Commonwealth does not have insurance coverage for the claims raised in the Prepetition Action and Movants have not made such an assertion or provided any evidence to support such an assertion. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

29. **Sonnax Factor 6**: In addition to the Commonwealth, the defendants in the Prepetition Action include certain inhabitants of the Commonwealth. Despite Movants' incorrect

14

assumption that "the automatic stay does not apply to a non-debtor," the inhabitants of the Commonwealth who are named in the Prepetition Action are protected under Bankruptcy Code section 922(a) as the Prepetition Action seeks to enforce a claim against the Commonwealth. *See In re City of Stockton*, 484 B.R. at 376.  Thus, the Prepetition Action cannot be characterized as primarily involving third parties and *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate.").

30.     **Sonnax Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were granted would outweigh any harm that Movants would suffer if the automatic stay remains in place. The procedural status of the Prepetition Action, the large number of pending lawsuits against the Debtor, the diversion of the Commonwealth's resources to defend Movants' claims, and the prejudice to interests of other similarly situated creditors all weigh in favor of continuing the automatic stay. On the other hand, postponing liquidation of Movants' claims will neither adversely affect Movants nor promote judicial economy. There is nothing urgent about Movants' claims.  Granting the relief requested will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.

## CONCLUSION

31.     The doctrine of collateral estoppel requires that the Court find that the Title III Stay applies to the Prepetition Action. However, in the event the Court determines that Movants are not collaterally estopped from re-litigating the applicability of the Title III Stay, as demonstrated above, the Title III Stay applies to the Prepetition Action as Movants are seeking to enforce a claim

15

against the Commonwealth and Movants have failed to establish extraordinary circumstances that justify the lifting of the Title III Stay. Accordingly and for the foregoing reasons, the Court should deny the Motion in its entirety and find that the Title III Stay should be maintained with respect to the Prepetition Action.

*[Remainder of Page Left Intentionally Blank]*

Dated:  December 20, 2017
        San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*