## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

      Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 03283-LTS

(Jointly Administered)

## THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S REPLY TO THE UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF THE CONSTITUTIONALITY OF PROMESA

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Hermann D. Bauer
USDC No. 215205
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
        ubaldo.fernandez@oneillborges.com


Donald B. Verrilli, Jr. (*pro hac vice*)
Ginger D. Anders (*pro hac vice*)
Chad I. Golder (*pro hac vice*)
Sarah G. Boyce (*pro hac vice*)
Adele M. El-Khouri (*pro hac vice*)
Rachel G. Miller-Ziegler (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Tel: (202) 220-1100
Fax: (202) 220-2300
Email: Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Chad.Golder@mto.com
Sarah.Boyce@mto.com
Adele.El-Khouri@mto.com
Rachel.Miller-Ziegler@mto.com


Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Mark D. Harris (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
        sratner@proskauer.com
        tmungovan@proskauer.com
        mharris@proskauer.com
        cfebus@proskauer.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

I.  THE APPOINTMENTS CLAUSE DOES NOT GOVERN THE
    APPOINTMENT OF MEMBERS OF THE FINANCIAL OVERSIGHT AND
    MANAGEMENT BOARD ............................................................................................2

    A.  The Appointments Clause Is Inapplicable When Congress Creates
        Territorial Offices Under Article IV..................................................................2

    B.  The Board Members Are Territorial Officials....................................................9

II. THE APPOINTMENTS CLAUSE IS NOT A "FUNDAMENTAL"
    CONSTITUTIONAL PROVISION AND DOES NOT APPLY TO PUERTO
    RICO..........................................................................................................................11

III. PROMESA'S APPOINTMENT SCHEME DOES NOT VIOLATE
    SEPARATION OF POWERS, AND THE BOARD MEMBERS WERE
    PROPERLY APPOINTED ..........................................................................................12

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Benner v. Porter,*
50 U.S. 235 (1850) ........................................................................................4

*Binns v. United States,*
194 U.S. 486 (1904) ......................................................................................5

*Boumediene v. Bush,*
553 U.S. 723 (2008) ....................................................................................11

*Brewer v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,*
953 F. Supp. 406 (D.D.C. 1997)..................................................................13

*Buckley v. Valeo,*
424 U.S. 1 (1976) ..........................................................................................8

*Clinton v. Englebrecht,*
80 U.S. 434 (1871) ........................................................................................6

*Dorr v. United States,*
195 U.S. 138 (1904) ....................................................................................11

*Federal Election Commission v. NRA Political Victory Fund,*
6 F.3d 821 (D.C. Cir. 1993)........................................................................15

*First Nat'l Bank v. Yankton Cnty.,*
101 U.S. 129 (1879) ............................................................................3, 7, 13

*Free Enterprise Fund v. PCAOB,*
561 U.S. 477 (2010) ..............................................................................12, 15

*Freytag v. Comm'r of Internal Revenue,*
501 U.S. 868 (1991) ......................................................................................4

*Glidden Co. v. Zdanok,*
370 U.S. 530 (1962) ......................................................................................7

*INS v. Chadha,*
462 U.S. 919 (1983) ......................................................................................5

*McAllister v. United States,*
141 U.S. 174 (1891) ......................................................................................4

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Morrison v. Olson,*
    487 U.S. 654 (1988) .................................................................................. 12

*Metro. Wash. Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.*
    *(MWAA),*
    501 U.S. 252 (1991) ............................................................................. 4, 5, 14

*N. Mariana Islands v. Atalig,*
    723 F.2d 682 (9th Cir. 1984) ................................................................... 11

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.,*
    458 U.S. 50 (1982) ...................................................................................... 4

*NLRB v. Noel Canning,*
    134 S. Ct. 2550 (2014) ......................................................................... 1, 8, 14

*Puerto Rico v. Sanchez Valle,*
    136 S. Ct. 1863 (2016) .............................................................................. 2, 8

*Simms v. Simms,*
    175 U.S. 162 (1899) .................................................................................... 1

*Tuaua v. United States,*
    788 F.3d 300 (D.C. Cir. 2015) ................................................................. 12

*United States v. Hilario,*
    218 F.3d 19 (1st Cir. 2000) ................................................................... 12, 13

*United States v. State of California,*
    332 U.S. 19 (1947) ...................................................................................... 5

**REGULATORY CASES**

*Executive Authority To Remove the Chief Justice of Minnesota,*
    5 Op. Att'y Gen. 288 (1851) ....................................................................... 6

*Territorial Judges Not Liable to Impeachment,*
    3 Op. Att'y Gen. 409 (1839) ................................................................. 3, 5, 6

**FEDERAL STATUTES**

48 U.S.C. §§ 2121(b)(2), (c) ............................................................................. 9

48 U.S.C. § 2121(c) ....................................................................................... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

48 U.S.C. § 2121(e)(2)(A)..................................................................................................13

Puerto Rico Oversight, Management, and Economic Stability Act of 2016......................1, passim

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article II, § 2, cl. 2........................................................................................12

U.S. Const. Article IV, § 3, cl. 2.........................................................................................3

## PRELIMINARY STATEMENT

The United States is exactly right: Aurelius's constitutional challenge is groundless.  In its response to Aurelius's Motion To Dismiss, the United States correctly explains that: (1) the "Appointments Clause does not govern the appointment of territorial officers"; (2) Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 (PROMESA) "pursuant to its plenary authority under the Territory Clause of Article IV"; (3) in exercising that Article IV power, "Congress created the Oversight Board as an entity within the territorial government of Puerto Rico to pursue purely local, territorial objectives . . . leav[ing] no doubt as to its territorial character"; and therefore (4) PROMESA's appointment mechanism is "not subject to the Appointments Clause."  U.S. Br. 1-2.

The United States also correctly points out that Aurelius fails to appreciate that when Congress legislates for the territories, it exercises local—not national—power.  When exercising its Article IV authority, as it did in PROMESA, Congress "has full legislative power over all subjects upon which the legislature of a state might legislate within the state."  *Simms v. Simms*, 175 U.S. 162, 168 (1899) (cited in U.S. Br. 8).  Thus, Congress is no more bound by constitutional separation-of-powers constraints (such as the Appointments Clause) than state governments are in structuring municipal governments.  These principles are sufficient to demonstrate that Congress's creation of the Board members as territorial officials need not have complied with the Appointments Clause.

In addition, the United States correctly concludes that PROMESA's recommendatory appointment mechanism does not unlawfully constrain the President's authority or aggrandize Congress's power.  Like the Board, it explains that Aurelius's "counterfactual speculation" about the Senate calendar is not "'legally []or practically appropriate'" for this Court to consider.  U.S. Br. 33 (quoting *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2576 (2014)).  Pause on this for a

1

moment. The Executive Branch, which has the greatest interest in safeguarding the President's constitutional authority over appointments, finds no constitutional problem in PROMESA's appointment mechanism. Despite that, a single hedge fund and a single union ask this Court to derail the vital work of restoring Puerto Rico to financial health in order to protect ostensible Executive prerogatives that the Executive itself does not believe are at risk. That speaks volumes about the credibility of their separation-of-powers claims. Quite simply, there is no separation-of-powers flaw in PROMESA's list-based mechanism, whether or not the Board members' selection is subject to the Appointments Clause.

All in all, the United States' position is hardly a "stunning" one. Aurelius Reply (AR) 2. Quite the opposite. If anything, it is *Aurelius's* attempt to shackle Congress's "broad latitude to develop innovative approaches to territorial governance" that is stunning. *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1876 (2016). The principle that Congress enjoys plenary authority to structure a territorial government without regard to separation-of-powers constraints is supported by "Supreme Court precedent and more than two centuries of evolving territorial governance." U.S. Br. 8; *see* Bd. Opp. 8–12. It is also supported by virtually every party participating in this case—including the United States of America. This unity of precedent, history, policy, and parties conclusively demonstrates that Aurelius's outlying position is meritless. Its motion to dismiss should be denied.

## I. THE APPOINTMENTS CLAUSE DOES NOT GOVERN THE APPOINTMENT OF MEMBERS OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD

### A. The Appointments Clause Is Inapplicable When Congress Creates Territorial Offices Under Article IV

1.     As the United States notes, Congress's plenary authority under the Territories Clause "has long been settled." U.S. Br. 8. "The Territories are but political subdivisions of the

outlying dominion of the United States," and "[t]heir relation to the general government is much the same as that which counties bear to the respective States." *First Nat'l Bank v. Yankton Cnty.*, 101 U.S. 129, 133 (1879). Thus, when Congress makes those "needful Rules and Regulations respecting the Territory" of the United States, U.S. Const. art. IV, § 3, cl. 2, it acts in the capacity of a state regulating its municipalities—and not in its more familiar capacity as a national legislature.

The United States correctly recognizes that when Congress legislates with respect to territorial governments, it is not bound by the same structural principles that constrain its power when it legislates in its more common national capacity. U.S. Br. 9–12. Notably, the United States does *not* contend (and the Board did not contend) that Congress is "free to ignore the rest of the Constitution because it acts under the Territories Clause." AR 2. Instead, the United States adopts a position that is fully supported by the text of the Appointments Clause and by centuries of Supreme Court precedent: Congress need not comply with the Appointments Clause in creating Article IV territorial offices, because the individuals who fill those offices are not "officers of the United States" within the meaning of the Clause.[2]

As the United States' brief demonstrates, this understanding of the Appointments Clause finds ample support in Supreme Court precedent. In case after case, the Court has confirmed that "structural constraints similar to the limitations imposed by the Appointments Clause are inapplicable to the territories and the District of Columbia." U.S. Br. 10–11; *see* Bd. Opp. 8–9

---

[2] Aurelius also mischaracterizes the Board's position when it asserts that the Board is arguing that "even if the Appointments Clause does apply, the Board Members are not officers of the United States." AR 5. This gets it backwards. The Board's position is that the Appointments Clause does not apply *precisely because* the Board members are not "officers of the United States." Aurelius's inability to appreciate that the Appointments Clause does not apply because Board members are *territorial* officers created under Congress's Article IV authority is the root of its meritless motion to dismiss.

(collecting cases).   For example, the Supreme Court has repeatedly held that while the Constitution commands "that the 'judicial Power of the United States' . . . be reposed in an independent Judiciary," it makes no similar demands on Congress's structuring of a territorial judiciary.  *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60 (1982) (plurality op.); *see Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 914 (1991) (Scalia, J., concurring) (noting that Congress "may dispense with the . . . [territorial] judiciary altogether").  Thus, although Congress cannot legislate away life tenure or reduce the salary of Article III judges, it can structure the terms and salaries of territorial judges as it pleases.  *See McAllister v. United States*, 141 U.S. 174, 184–85 (1891).  In much the same way, even though Congress cannot sidestep the advice-and-consent process for federal officers who fall within the scope of the Appointments Clause, it *can* devise different appointments processes for territorial officials because they do not fall within the scope of the Clause.

Aurelius has no coherent answer to this line of precedent.   Faced with multiple decisions reinforcing the expansive flexibility Congress enjoys under Article IV, Aurelius argues that even though Congress need not follow Article III in creating territorial judges, Congress must follow the Appointments Clause.  AR 10-11.  But that position is wholly unsupported.

Aurelius stakes much of its case on a single decision, *Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252 (1991) (*MWAA*), involving Congress's authority under Article IV's Property Clause.  AR 2, 6, 7-8, 16-17, 20, 21.  But as the United States explains, *MWAA* is inapposite because it concerned Congress's creation of a "federal entity wielding federal power."  U.S. Br. 19.  By contrast, under PROMESA the Board "exercises only that portion of Congress's territorial authority that is not subject to the 'complex distribution of the powers' applicable at the national level."  *Id.* (quoting *Benner v.*

*Porter*, 50 U.S. 235, 242 (1850)).  When acting under Article IV, "Congress . . . has plenary power, save as controlled by the provisions of the Constitution."  *Binns v. United States*, 194 U.S. 486, 491 (1904).

In addition, Aurelius uses *MWAA* to attack a point nobody is making.  It argues that *MWAA* states that Article IV acts are not "'immune from scrutiny for constitutional defects.'" AR 2, 6 (quoting *MWAA*, 501 U.S. at 270).  But, as explained above (at 3), neither the Board nor the United States espouses such a view.  The relevant question is not *whether* the Constitution applies when Congress exercises its Article IV authority—it surely does—but instead *which* "provisions of the Constitution" "control[]" Congress's authority.  *Binns*, 194 U.S. at 491.  As both the United States and the Board explain, the Appointments Clause does not control when Congress is legislating for territorial officials because, unlike the body at issue in *MWAA*, they are not officers of the United States wielding federal power.  U.S. Br. 19.[3]

Aside from *MWAA*, Aurelius cites a handful of decisions that address courts in certain territories.  Nearly all of these decisions, however, consider *federal* district courts in the territories—not *territorial* courts.[4]  AR 10–11.  The difference between these types of courts is meaningful, despite Aurelius's best efforts to elide it.  Judges on Article III district courts in the territories are federal officers who must be appointed in conformity with the Appointments

---

[3] Aurelius also cites *United States v. State of California*, 332 U.S. 19 (1947), but as the United States notes, that case is even farther afield.  *California* held that congressional legislation pursuant to Article IV's Property Clause was subject to presidential veto.  As the United States correctly explains, that is because "bicameralism and presentment is the only way for Congress" to enact legislation, whether it acts pursuant to Article IV or Article I.  U.S. Br. 19 (citing *INS v. Chadha*, 462 U.S. 919, 951 (1983)).  Congress cannot enact law under its Article IV powers without following the constitutional procedures for passing legislation.  As "there is no question that PROMESA satisfied" these requirements, *California* does nothing to undermine the law's constitutionality.  *Id.*

[4] As for the few decisions Aurelius cites that *do* involve territorial courts, the United States ably demonstrates why the dicta Aurelius plucks from them cannot support its position.  U.S. Br. 20.

5

Clause; judges on Article IV territorial courts, by contrast, are not and need not.  U.S. Br. 10 (explaining that territorial judges can be "elected by the people of the Territory[] and commissioned by the governor"—that is, that they need not be selected pursuant to the Appointments Clause (quoting *Clinton v. Englebrecht*, 80 U.S. 434, 447 (1871))).[5]

2.      As the United States correctly recognizes, the history of appointments in the territories supports the conclusion that the Appointments Clause does not apply to territorial officers.  As the United States chronicles, the primary consistency in the history of territorial officer appointment is the utter lack of consistency.  Since it began recognizing territories in the late eighteenth century, Congress has provided for some territorial officials to be appointed by the President with the Senate's advice and consent.  But it has provided for others to be appointed by the President alone, some to be elected by popular vote, and still others to be selected by territorial legislatures.[6]  U.S. Br. 12-15.  As the United States ably explains, Congress's use of a

---

[5] Aurelius also points to an 1851 Attorney General opinion.  AR 23 (citing *Executive Authority To Remove the Chief Justice of Minnesota*, 5 Op. Att'y Gen. 288, 290 (1851)).  But that source provides no help.  The 1851 opinion concerns whether the President has the power to remove a territorial judge who was required by statute to be appointed through advice and consent.  *Id.* at 289.  The fact that the President may enjoy the inherent power to remove any officer whom he also has the statutory authority to appoint has nothing to do with whether territorial officials like the Board members (or, as the opinion considers, a territorial judge in the Territory of Minnesota) are "officers of the United States" under the Appointments Clause.  The far more relevant opinion is Attorney General Grundy's 1839 opinion, which actually analyzes the phrase "civil officers of the United States" and concludes that territorial judges do not qualify.  *Territorial Judges Not Liable to Impeachment*, 3 Op. Att'y Gen. 409, 411 (1839).  Though that opinion focused on the Impeachment Clause, its reasoning concerning whether territorial officials constitute "officers of the United States" is equally applicable to the Appointments Clause.  And as the United States correctly explains, the Board "members are *not* 'Officers of the United States' within the meaning of the Appointments Clause."  U.S. Br. 12 (emphasis added).

[6] Aurelius's assertion that "since 1789, territorial governors have been treated as officers of the United States subject to the Appointments Clause" is thus flatly wrong.  AR 3.  Territorial governors have been appointed using a wide range of mechanisms, some of which have complied with the Appointments Clause and others of which have not.  Currently, of course, *not a single territorial governor* is appointed through advice and consent.  These governors thus are clearly *not* being "treated as officers of the United States subject to the Appointments Clause."

wide variety of appointment mechanisms reveals a longstanding view that no one appointment scheme is constitutionally required for territorial officers.

The United States properly rejects Aurelius's contrary analysis of the historical evidence, which rests on three primary errors. *First*, rather than undertaking a comprehensive review of the historical record, Aurelius cherry-picks the history—conveniently focusing its attention on those times when Congress provided for territorial officers to be appointed by the President with the Senate's advice and consent. But Congress's *irregular* decisions to *sometimes* follow the procedures set forth in the Appointments Clause are not evidence that Congress thought that compliance was constitutionally compelled. If anything, it supports the opposite conclusion. The Appointments Clause requires that all "officers of the United States" be appointed pursuant to its requirements. It does not foreclose Congress from using the Clause's procedure for territorial offices should Congress choose to incorporate it by legislation. This robust history of congressional use of alternative appointment mechanisms for territorial officials underscores that Congress necessarily must have chosen an appointment scheme mirroring the Appointments Clause for some officers "as a matter of legislative grace and not of constitutional compulsion." *Glidden Co. v. Zdanok*, 370 U.S. 530, 548 (1962).

*Second*, whereas the United States appreciates the significance of territorial home rule, Aurelius deems it irrelevant by relying on a distinction without support in law or logic. Over the last century, Congress has frequently decided that territorial officers who had previously been appointed through advice and consent should instead be selected through local election or by locally elected representatives. As the United States rightly understands, these examples confirm that Congress has never understood itself to be bound by the Appointments Clause in choosing the appointments process for territorial offices. Aurelius seeks to write off this inconvenient

7

history by insisting that whether the Appointments Clause applies depends on whether a particular officer is federally appointed or locally selected.

The United States correctly rejects Aurelius's invented distinction. Nothing in the text of the Appointments Clause suggests that Congress can toggle the Clause's requirements on and off by delegating the appointment power for an office to the local people or to local officials. Aurelius's wholly circular approach, moreover, stands in direct conflict with the Supreme Court's Appointments Clause jurisprudence, which looks to what an officer does—not who selects him—to determine whether the officer falls within the Clause's scope. *See* U.S. Br. 17 (discussing *Buckley v. Valeo*, 424 U.S. 1 (1976)). Equally problematic, Aurelius's approach is incompatible with the Court's recent decision in *Puerto Rico v. Sanchez Valle*—as evidenced by Aurelius's resort to reliance on that decision's dissent. *See* AR 15. As the *Court* in *Sanchez Valle* explains, even in instances of territorial home rule, the "ultimate" source of authority is the federal government. 136 S. Ct. at 1875. Aurelius's distinction between officials who are federally appointed and those who are locally selected is therefore an empty one.

*Third*, struggling to find support for its alternative history, Aurelius assigns outsized weight to instances where the President has made recess appointments of officers in the territories. But almost all of the examples on which Aurelius relies involve appointments of federal officers operating in the territories, not officers who were part of territorial governments. AR 12 (citing Br. for Pet. at 3a, 4a, 67a, *Noel Canning*, 134 S. Ct. 2550 (No. 12-1281), 2013 WL 5172004 (Receiver of Public Moneys, Register of Land Office, Indian Agent, Deputy Postmaster, U.S. Marshal, and U.S. Attorney)). The use of recess appointments to fill *federal* vacancies is an unexceptional application of the Recess Appointments Clause. Bd. Opp. 21 n.10.

Equally to the point, what remains of Aurelius's history consists of just a few instances where the President made an appointment during a recess that, outside of that recess, would have required the advice and consent of the Senate.  On those anomalous occasions, the President may have deemed it reasonable to think that where Congress had delegated him a statutory appointment power requiring advice and consent, it had also delegated the concomitant power to make recess appointments when Congress is not available.  Aurelius certainly provides no evidence that the President thought that he was acting under his Recess Appointments Clause authority—rather than a statutory power—in filling these vacancies.  Alternatively, it may be that these few appointments were simply *ultra vires*.  This Court need not decide.  Whatever the case, Aurelius's strained attempt to bootstrap these isolated and ambiguous events into a constitutional imperative about the Appointments Clause exposes the weakness of its position.[7]

### B.    The Board Members Are Territorial Officials

1.    Having first established that the Appointments Clause does not govern the appointment of territorial officials, the United States then properly characterizes the Board members as such officials.  U.S. Br. 21–27.  To support this conclusion, the United States rightly emphasizes the fact that, in the statute itself, Congress expressly declared that it was acting pursuant to its plenary authority under Article IV and said that the Board constituted a territorial entity.  *Id.* at 21 (citing 48 U.S.C. §§ 2121(b)(2), (c)).  The Supreme Court, the United States correctly notes, has consistently given such statements considerable deference.  *See id.*

Echoing much of the evidence that the Board put forward in its Opposition Brief, *see* Bd. Opp. 13–21, the United States points out that "the Board's statutory authority, characteristics,

---

[7] So too does Aurelius's assertion that the President's provision of commissions to territorial officers proves that the Appointments Clause applies to such officers.  The most that can be said of this history is that the President wished to provide newly appointed officers a formalized record of their new roles.  That he chose to use a familiar form for doing so is as unsurprising as it is constitutionally unenlightening.

and relationship with the Federal Government" are all entirely consistent with Congress's choice to make the Board a part of Puerto Rico's territorial government.  U.S. Br. 21–24.  Congress's characterizations are therefore not "statutory *ipse dixit*," as Aurelius claims.  AR 21.  To the contrary, as the United States confirms, the nature of the Board's authority and responsibilities forcefully validate Congress's characterization of the Board as "an entity within the territorial government."  48 U.S.C. § 2121(c).

2.      The United States rightly rejects Aurelius's other half-hearted efforts to undermine the Board's territorial status.  Initially, Aurelius put forward a three-part test asking whether (1) the Board members took their offices by virtue of federal or territorial authority, (2) the Board members are overseen by the federal government, and (3) the Board members' authority was confined to purely local matters.  Aurelius Mot. 18.  Not only was this test entirely Aurelius's own invention, Aurelius did not even bother discussing—much less satisfying—its third factor. *See* Bd. Opp. 17-21.

It is therefore unsurprising that Aurelius essentially abandons its three-part test in its reply, and instead focuses on whether the Board exercises "significant federal authority."  AR 19–21.  As the United States makes clear in its brief, however, the Board does *not* exercise significant *federal* authority; it was "indisputably created to pursue local, territorial objectives," and its "statutory powers extend no further than the territory of Puerto Rico itself."  U.S. Br. 21–22.  Moreover, to the extent Aurelius's point is that the Board's authority derives from a federal statute, that argument holds no water.  As the Board explained (at 20) and Aurelius fails to answer, Congress cannot act *except* through a federal statute, so any time it provides authority to territorial officers under Article IV, that authority will necessarily arise from federal law.  As the

United States recognizes, the fact that officers exercise "authority pursuant to . . . a federal law" cannot possibly be enough to render them subject to the Appointments Clause.  U.S. Br. 12.

Aside from its significant-authority argument, Aurelius makes no other case for why the Board members are federal, as opposed to territorial, officials.  It ignores completely the fact that the Board is funded entirely by Puerto Rico, and it does not even attempt to explain why Congress felt it necessary to extend certain federal laws to the Board that would extend automatically to federal entities.  The United States, not surprisingly, is unmoved by Aurelius's response (or lack thereof).  This Court's reaction should be the same.

## II.   THE APPOINTMENTS CLAUSE IS NOT A "FUNDAMENTAL" CONSTITUTIONAL PROVISION AND DOES NOT APPLY TO PUERTO RICO

The foregoing analysis, supported completely by the United States, conclusively demonstrates why Aurelius's motion must be dismissed.  But as the United States also correctly points out, the Supreme Court also has repeatedly—and recently—recognized that the Constitution does not extend of its own force to Puerto Rico.  U.S. Br. 9 n.5.  Aurelius wrongly describes this principle as rooted in "a series of decisions from the turn of the last century," when the Court held as recently as 2008 that the Constitution applies "only in part in unincorporated Territories."  *Boumediene v. Bush*, 553 U.S. 723, 757 (2008).  Aurelius completely ignores this twenty-first century precedent.

Strikingly, Aurelius also does not address the case law demonstrating the Appointments Clause is not a "fundamental right" that applies to unincorporated territories.  As the Board explained (at 25), a constitutional provision is "fundamental" only if it imposes one of those "'limitations in favor of personal rights' which are 'the basis of all free government.'"  *N. Mariana Islands v. Atalig*, 723 F.2d 682, 690 (9th Cir. 1984) (quoting *Dorr v. United States*, 195 U.S. 138, 146 (1904)).  Aurelius's only response (at 18) is to cite general language about the

11

importance of the separation of powers to the American constitutional scheme. Aurelius has no

answer to the Board's argument (at 25) that if the rights to birthright citizenship and trial by jury

are not "fundamental," then the Appointments Clause cannot possibly be "fundamental" either.

Nor does Aurelius explain why the Appointments Clause is not "idiosyncratic to the American

social compact," or why "numerous free and democratic societies" do not feature similar

appointment mechanisms. *Tuaua v. United States*, 788 F.3d 300, 308 (D.C. Cir. 2015).

Ultimately, Aurelius all but concedes that it loses under the *Insular Cases*. AR 18 n.7.

Faced with that reality, Aurelius can only attack these cases as "racist," "controversial,"

"discredited," and "in the mold of *Plessy v. Ferguson*." AR 16–18. Although these cases

certainly have been criticized for "rest[ing] on anachronistic views of race and imperialism," "the

Court has continued to invoke the *Insular* framework when dealing with questions of territorial

and extraterritorial application." *Tuaua*, 788 F.3d at 307. Because the *Insular Cases* remain

good law, Aurelius's Appointments Clause challenge fails for this reason as well.

## III.   PROMESA'S APPOINTMENT SCHEME DOES NOT VIOLATE SEPARATION OF POWERS, AND THE BOARD MEMBERS WERE PROPERLY APPOINTED

1.     The United States correctly explains why PROMESA's appointment scheme does not

violate the separation of powers. U.S. Br. 27–35. In its opening brief, Aurelius rightly

contended that this issue was relevant only if the Board members were "inferior" officers, such

that their appointment must be vested "in the President alone." U.S. Const. Art. II, § 2, cl. 2.

And contrary to Aurelius's contention in both that brief and its reply, the Board members are, in

fact, "inferior" officers under controlling First Circuit precedent, *United States v. Hilario*, 218

F.3d 19 (1st Cir. 2000), because they satisfy the test set forth in *Morrison v. Olson*, 487 U.S. 654

(1988).

Conspicuously, Aurelius does not dispute that the Board meets *Morrison*'s test. Instead,

Aurelius insists that *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), overruled *Hilario* by clarifying that "there is only one test": whether an officer has a "superior." AR 24. But in *PCAOB*, the employees had superiors and therefore easily satisfied one of the two tests that *Hilario* recognized. 561 U.S. at 510. *PCAOB* had no occasion to consider—and thus said nothing about—whether the employees at issue "might still be considered inferior officers if the nature of their work suggests sufficient limitations of responsibility and authority." *Hilario*, 218 F.3d at 25. *Hilario* therefore remains good law. Because it is undisputed that the Board members satisfy the *Hilario/Morrison* test, and because (as explained below) PROMESA's selection mechanism does not constrain the President's appointment flexibility, the current members were constitutionally appointed *even if* the Appointments Clause applies.

2.     The United States offers four responses to Aurelius's contention that PROMESA's list mechanism unlawfully constrains the President's discretion or aggrandizes Congress's power. U.S. Br. 27–35. Each is persuasive. *First*, the United States correctly points out that Aurelius's separation-of-powers argument is premised on an assumption that Board members are federal officers. *Id*. at 29. But for the reasons explained above and in the United States' brief, they are Article IV officials. The United States is therefore correct that any constraints on the President's appointment of Board members "do not raise the same separation-of-powers concerns as when the President is selecting federal officers." *See id*. at 30 (discussing *Brewer v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 953 F. Supp. 406, 410 (D.D.C. 1997), which rejected a separation-of-powers challenge to the D.C. Financial Control Board because "[t]he Executive Branch has no constitutional role with respect to the District that corresponds or competes with that of Congress"); Bd. Opp. 31-32 (discussing the Sentencing Commission).

Second*, the United States agrees with the Board that PROMESA's text *does not require*

13

the President to select the Board members from the congressional lists.  As both the Board and the United States explain, PROMESA expressly provides that the President "should"—rather than "shall"—appoint members of the Board from the congressional lists.   48 U.S.C. § 2121(e)(2)(A).  As a result, PROMESA "merely encourages" the President to appoint from those lists.  U.S. Br. 32.  At the very least, the United States rightly explains that this Court should read PROMESA's relevant provisions to permit the President to exercise such discretion to avoid any constitutional concerns with the list mechanism.  *Id.* at 34 n.15; Bd. Opp. 29-30.

*Third*, the United States exposes the weakness of Aurelius's reliance on *MWAA*.  There, the Supreme Court invalidated the relevant statute's list-based appointment procedure because "appointments *must* be made from the lists, and there is no requirement that the lists contain more recommendations than the number of . . . openings."  501 U.S. at 268.  Like the Board (at 32), the United States recognizes (at 28) that this is the proper test for whether a list-based appointment mechanism is valid—and that PROMESA passes it.  PROMESA does not include *either* of those forbidden features, nor has it "invested a congressional agent with executive power," as was critical to the Court's reasoning in *MWAA*.  U.S. Br. 32.

*Fourth*, the United States rightly dismisses Aurelius's asserted practical constraints on the President's appointment discretion as legally and factually incorrect.  U.S. Br. 32-34.  The United States points to the Supreme Court's recent admonishment in *Noel Canning*, 134 S. Ct. at 2576, that such considerations are "legally . . . [in]appropriate."  U.S. Br. 33; Bd. Opp. 30 n.15.  And as a factual matter, the United States explains that, while President Obama had the authority to appoint anyone he wanted to the Board, he was clearly satisfied with his choices on the lists because he made his selections "without asking Congress to supplement the recommendatory lists of candidates."  U.S. Br. 32.  And even if the President was unsatisfied, the United States

14

explains that Aurelius's emphasis on the Senate calendar is misplaced.  The Senate had a full 60 days in which to hold a confirmation vote, which is more than sufficient time, especially given the "political branches' common goal" to expeditiously solve Puerto Rico's crisis.  *Id.*  That only eight of these days were "legislative days" was purely a matter of the Senate's choice to hold only "*pro forma* sessions" during this period.  It could easily have come back into full session if a vote on Board nominees were needed.

In sum, the United States' arguments persuasively demonstrate that there was no separation-of-powers problem with PROMESA's list-based appointment mechanism for the current Board, even if the Board members' selection as inferior officers is subject to the Appointments Clause.[8]

## **CONCLUSION**

For the reasons stated in the United States' submission, as well as those stated in the Board's brief, Aurelius's motion to dismiss should be denied.

---

[8] The United States agrees with the Board that Aurelius lacks standing to challenge any alleged practical constraints on the President's appointment discretion.  U.S. Br. 33 n.14 (citing *Federal Election Commission v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993)); Bd. Opp. 30 n.15.  Aurelius contends that *PCAOB* supports its standing to bring such a challenge.  AR 25 n.8.  But that case addressed limitations on the discretion of an agency Chairman—not the President.  *NRA Political Victory Fund*, by contrast, relied on the special separation-of-powers and justiciability concerns related to asserted practical restrictions on the President's appointment power.  6 F.3d at 824 (citing presidential signing statements).

Dated: December 22, 2017
San Juan, Puerto Rico

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
　　　ubaldo.fernandez@oneillborges.com


*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr. (*pro hac vice*)
Ginger D. Anders (*pro hac vice*)
Chad I. Golder (*pro hac vice*)
Sarah G. Boyce (*pro hac vice*)
Adele M. El-Khouri (*pro hac vice*)
Rachel G. Miller-Ziegler (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Tel: (202) 220-1100
Fax: (202) 220-2300
Email: Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Chad.Golder@mto.com
Sarah.Boyce@mto.com
Adele.El-Khouri@mto.com
Rachel.Miller-Ziegler@mto.com


*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Mark D. Harris (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
　　　sratner@proskauer.com
　　　tmungovan@proskauer.com

1

mharris@proskauer.com
cfebus@proskauer.com

*Attorneys for The Financial Oversight and
Management Board for Puerto Rico, as
representative of The Commonwealth of Puerto
Rico*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all

CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
