UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY ("HTA"),

    Debtor.

PROMESA
Title III

No. 17 BK 3567-LTS

**This filing relates only to HTA and shall be filed in the lead Case No. 17 BK 3283-LTS and Case No. 17 BK 3567-LTS.**

Re: ECF No. 316

---------------------------------------------------------------x

GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS,
AND DISCLAIMERS REGARDING THE CREDITOR LIST
FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

**Introduction**

1. The Puerto Rico Highways and Transportation Authority ("HTA"), with the assistance of its advisors, herewith files its list of creditors (the "Creditor List") with the United States District Court for the District of Puerto Rico (the "District Court"), pursuant to section 924 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to HTA's Title III Case (as

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

defined below) by sections 301(a) and 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), respectively.

2. These *Global Notes and Statement of Limitations, Methods, and Disclaimers Regarding the Creditor List for the Puerto Rico Highways and Transportation Authority* (the "Global Notes") pertain to, are incorporated by reference in, and constitute an integral part of, the Creditor List. Any party reviewing the Creditor List should refer to, consider, and consult the Global Notes in connection with such review.

## Background

3. On June 30, 2016, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") was established under PROMESA section 101(b). On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

4. Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

5. On September 30, 2016, the Oversight Board designated HTA as a "covered instrumentality" under PROMESA section 101(d).

6. On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA in the District Court pursuant to PROMESA section 304(a), commencing a case under title III thereof ("HTA's Title III Case"). Pursuant to PROMESA section 315(b), the Oversight Board is HTA's representative in HTA's Title III Case.[2]

## Global Notes

7. The Creditor List includes the information contemplated by Bankruptcy Code section 924 and Bankruptcy Rule 1007(a), made applicable by PROMESA sections 301(a) and 310, respectively, as qualified by the assumptions, explanations, and reservations of rights set forth below.

8. Unless otherwise stated, all claims listed in the Creditor List are general unsecured claims. No claim priorities are accorded recognition under PROMESA except for those claims eligible for priority under Bankruptcy Code section 507(a)(2), which is made applicable to HTA's Title III Case by PROMESA section 301(a). With respect to any secured claims identified by HTA, the value of the collateral, if any, securing the claim and the amount of any unsecured deficiency claim are undetermined, and HTA reserves all rights with respect thereto.

9. HTA historically has closed its books at the end of its fiscal year on June 30. The audit process is complex and time consuming. Delays in invoicing, reconciliation, or accounting for outstanding invoices and payments in the HTA financial system also impact the amounts identified in HTA's

---

[2] For the avoidance of doubt, unless otherwise provided in PROMESA, the Oversight Board can perform any action on behalf of HTA as its representative in Title III (including when the Oversight Board is not specifically referenced in connection to such action herein).

books and records at any given point in time. Accordingly, in many cases, HTA cannot be certain that it has identified its precise liability to a specific creditor as of the Petition Date, and reserves all rights related thereto. Furthermore, HTA has not finalized an audit since fiscal year 2015. Where possible, HTA has provided the claim amount as of the Petition Date, unless otherwise specifically noted.

10. The financial information disclosed herein was not prepared in accordance with federal securities laws or other applicable non-bankruptcy laws or in lieu of complying with any reporting requirements thereunder. Entities trading in or otherwise purchasing, selling, or transferring claims against HTA should evaluate this financial information in light of the purposes for which it was prepared. HTA and the Oversight Board, as HTA's representative, are not liable for, and undertake no responsibility to indicate, variations between any information and reports prepared (a) for securities law disclosure purposes, and (b) for any evaluations of HTA based on this financial information or any other information.

11. Amendment and Reservation of Rights

    a. While HTA and the Oversight Board, as HTA's representative, have exercised best efforts to ensure the Creditor List and other information are accurate and complete, the Creditor List is based on information known at the time of its preparation and inadvertent errors or omissions may exist. In addition, the discovery of conflicting or subsequent information could cause a material change to the Creditor List. Moreover, because the Creditor List contains unaudited information that is subject to further review and potential adjustment, there can be no assurance the Creditor List is wholly accurate and complete. Accordingly, HTA and the Oversight Board, as HTA's representative, reserve the right to amend, supplement, or otherwise modify the Creditor List from time to time, in all respects, as may be necessary or appropriate to recharacterize, reclassify, recategorize, re-designate, add, or delete items reported in the Creditor List at a later time as is necessary or appropriate as additional information becomes available. Without limiting anything else expressly reserved herein, HTA and the Oversight Board, as HTA's representative, reserve the right to dispute, offset against, or assert defenses to, any claim reflected in the Creditor List as to amount, priority, liability, or classification.

    b. Nothing contained in the Creditor List shall constitute a waiver of rights with respect to HTA's Title III Case, including, without limitation, issues involving claims, the validity, extent, or perfection of any lien, substantive consolidation, defenses, equitable subordination, recharacterization, assumption or rejection of any executory contracts or unexpired leases, and/or any causes of action arising under chapter 5 of the Bankruptcy Code, made applicable by PROMESA section 301(a), and other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in these Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

    c. In no event shall HTA, the Oversight Board, as HTA's representative, or their respective agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against HTA or damages to business reputation, lost business, or profits), whether foreseeable or not and however caused, even if HTA, the Oversight Board, as HTA's representative, or their respective agents, attorneys, and financial

      advisors are advised of the possibility of such damages, arising out the inclusion or omission of any claim in the Creditor List.

    d. Except as otherwise ordered by the District Court, HTA and the Oversight Board, as HTA's representative, reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset for the benefit of an entity or person listed in the Creditor List. HTA and the Oversight Board, as HTA's representative, reserve all rights to dispute or challenge the secured nature or priority of any such claim or the characterization of the structure of any such transaction or any document or instrument related to such claim as well as any proof of claim filed by a purported creditor.

    e. HTA files the Creditor List without prejudice to or waiver of the Oversight Board's rights pursuant to PROMESA section 305, and nothing herein is intended to, shall constitute, or shall be deemed to constitute the Oversight Board's consent, pursuant to PROMESA section 305, to the District Court's interference with (a) any of the political or governmental powers of HTA, (b) any of the property or revenues of HTA, or (c) HTA's use or enjoyment of any income-producing property.

**General Assumptions**

12. <u>Unaudited.</u>  The books and records and financial statements of HTA utilized in the preparation of the Creditor List are unaudited.

13. <u>Currency.</u> All amounts are reflected in U.S. dollars, unless otherwise indicated.

14. <u>As of Information Date</u>.  The information provided herein, except as otherwise noted, represents the data of HTA as of the close of business on May 20, 2017.

15. <u>Totals</u>.  While HTA made good faith efforts to list all known amounts for each creditor in the aggregate, all creditor relationships may not have been identified. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

16. <u>Undetermined Amounts.</u>  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

17. <u>Confidentiality</u>.  To ensure confidentiality of personal information, all address information for individuals has been redacted from Schedule C — Employee Benefits and Schedule D — HTA Act 70 and Act 211-2015 Obligations. In addition, HTA has made best efforts to redact address information for individuals included in Schedule B — Trade Vendor Obligations.

18. <u>Claims Description</u>.  Any failure to designate a claim listed in the Creditor List as "disputed," "contingent," or "unliquidated" does not constitute an admission by HTA that such claim is not "disputed," "contingent," or "unliquidated" or that such claim is not subject to objection. HTA reserves the right to dispute or to assert setoff rights, counterclaims, or defenses to, any claim reflected on the Creditor List as to amount, liability, priority, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated," whether by amending the Creditor List or in another filing. Additionally, HTA reserves its right to object to any listed claims, including, without limitation, on the grounds they have been satisfied. Listing a

19. <u>Satisfied Claims</u>.  The identification herein of any creditor or claim amount does not constitute an admission by HTA or the Oversight Board, as HTA's representative, that HTA has any ongoing liability to any party. HTA may have satisfied certain claims identified in the Creditor List in whole or in part since the Petition Date or may satisfy such claims in whole or in part in the future.

20. <u>Schedule Classification</u>. The Creditor List divides HTA's potential creditors and claimants into 9 separate schedules (collectively, the "<u>Schedules</u>"), as follows:

| Schedule | Classification |
|---|---|
| A | Long Term Debt Obligations |
| B | Trade Vendor Obligations |
| C | Employee Obligations |
| D | Act 70 Obligations |
| E | Act 211-2015 Obligations |
| F | Litigation and Similar Claims |
| G | Liabilities to Banks and other Agreement Obligations |
| H | Tax-related Obligations |
| I | Intragovernmental Obligations |

The foregoing classifications are used for convenience of presentation and are not intended to be, and shall not be deemed to be, dispositive of the nature of any particular claim or obligation listed in any schedule.

**Summary of Schedules**

21. The Schedules are preceded by a summary that identifies, with respect to each Schedule, the aggregate estimated amount of the claims therein (if known) and the percentage that these liabilities represent of HTA's total estimated liabilities on all of the Schedules.

**Schedule A – Long Term Debt Obligations**

22. Schedule A lists the long-term bond obligations of HTA. Schedule A identifies the (a) original principal amount, year, and series of the obligation; (b) whether HTA considers the obligation secured or unsecured; (c) the amount of principal and interest outstanding as of the Petition Date; and (d) the identity and capacity of any trustee or similar entity with respect to the obligation.

23. The description provided in Schedule A is intended only to be a summary. Reference to the applicable bond agreements and related documents is necessary for a complete description of the bonds. Nothing in these Global Notes or the Schedules shall be deemed a modification or interpretation of the terms of such documents.

24. No interest payments on the bonds have been made since May 20, 2017. The balances listed for each series is as of May 31, 2017. For these reasons, HTA has categorized these claims as contingent and unliquidated.

25. HTA's long term debt obligation balance includes approximately $154M related to net bond premiums/discounts that are reflected in HTA's balance sheet but not itemized by bond series in detailed bond roll forward schedules.

**Schedule B – Trade Debt Obligations**

26. Schedule B reflects all trade liabilities recorded in HTA's financial system as of May 31, 2017. Accordingly, Schedule B may inadvertently include postpetition liabilities. Further, there may be additional unrecorded invoices or amounts due as of May 31, 2017, which may include prepetition liabilities.

27. Pursuant to the authority granted to the Oversight Board under PROMESA section 305, and the non-applicability of Bankruptcy Code section 363 to HTA's Title III Case, HTA may have satisfied some or all of its prepetition obligations to certain trade vendors since the Petition Date, or may do so in the future, which payments are not reflected in Schedule B. In addition, the amounts identified as liabilities of HTA on Schedule B may include checks that HTA has issued but the applicable payee has not yet presented for payment.

28. For these reasons, and out of an abundance of caution, HTA has categorized each of the obligations identified in Schedule B as contingent and unliquidated.

**Schedule C – Employee Obligations**

29. Since the Petition Date, HTA has paid, and intends to continue to honor and pay, all accrued obligations for wages and salaries. Accordingly, except as specifically identified elsewhere in Creditor List, HTA believes that it has satisfied or will satisfy all prepetition claims of active employees for wages and salaries.

30. Schedule C represents the accrued vacation and sick leave benefit for each active HTA employee as of May 31, 2017. Accordingly, Schedule C may inadvertently include postpetition liabilities. For these reasons, and out of an abundance of caution, HTA has categorized each of the obligations identified in Schedule C as contingent and unliquidated.

**Schedule D – HTA Act 70**

31. Schedule D lists former HTA employees entitled to early retirement benefits and those who have elected to receive economic incentives for voluntary employment termination. HTA funds the employee and employer contributions to the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and pays the corresponding pension obligation until the employee complies with the age requirements and 30 years of credited service in ERS.

32. The balances listed in Schedule D are as of May 31, 2017. Accordingly, Schedule D may inadvertently include postpetition liabilities. For these reasons, and out of an abundance of caution, HTA has categorized each of the obligations identified in Schedule D as contingent and unliquidated.

**Schedule E – HTA Act 211-2015**

33. Schedule E lists former HTA employees entitled to pre-retirement benefits under Act No. 211-2015, which was implemented for the purpose of providing government agencies and municipalities with a mechanism to help them design and adopt a program that would allow them to generate savings in payroll and fringe benefit costs, as well as to afford employees who enrolled in the retirement systems prior to April 1, 1990, the opportunity to receive certain benefits until they reach the optional retirement age, which for most people is 61 years.

34. The balances listed in Schedule E are as of June 31, 2017. Accordingly, Schedule E may inadvertently include postpetition liabilities. For these reasons, and out of an abundance of caution, HTA has categorized each of the obligations identified in Schedule E as contingent and unliquidated.

**Schedule F – Litigation and Similar Claims**

35. HTA is still in the process of reviewing the various litigation claims and judgements asserted against it, as well as demands that fall short of litigation, but may ultimately result in litigation against HTA by employees, vendors, citizens, and other parties. Generally, these cases are related to construction projects and estimates are made annually related to the liability amounts not adequately covered by the required public liability insurance. After HTA has completed its review of these litigation claims it will file a supplement to the Creditor List that includes a listing of such claims in Schedule F.

**Schedule G – Liabilities to Banks and Other Agreement Obligations**

36. Schedule G lists the total lines of credit with the Government Development Bank of Puerto Rico ("GDB") as of May 31, 2017. The GDB, as fiscal agent and bank of the Commonwealth, has extended lines of credit to HTA to finance capital improvement projects and operational deficits. As of May 31, 2017, HTA had an outstanding balance of approximately $1,700,000,000 under these lines of credit, with a cumulative interest payable of $400,000,000, for a total obligation of approximately $2,100,000,000. Out of an abundance of caution, HTA has categorized these obligations as contingent and unliquidated.

37. Schedule G also includes the deferred revenue related to the upfront concession fee payments under two service concession agreement with Autopistas Metropolitanas de Puerto Rico, LLC, one for the operation of PR-5 and PRR-22 highways for a period of 40 years and the other for the design, construction, operation, and maintenance of a toll bridge for a period of 50 years.

**Schedule H – Tax Related Obligations**

38. Schedule H contains amounts due to the Internal Revenue Service ("IRS"). Amounts due to the Puerto Rico Department of Treasury are listed in Schedule I – Obligations to Other Agencies.

39. Some of these obligations may have been satisfied partially or in full postpetition. For these reasons, and out of an abundance of caution, HTA has categorized each of the obligations identified in Schedule H as contingent and unliquidated.

**Schedule I – Obligations to Other Agencies**

40. Schedule I lists amounts due to other agencies for various cost sharing and other pass through agreements. Many of these obligations may have been satisfied partially or in full postpetition. For these reasons, and out of an abundance of caution, HTA has categorized each of the obligations identified in Schedule I as contingent and unliquidated.

* * * *