IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

   Debtors.[1]

PROMESA
Title III

No. 17 BK 03283-LTS

(Jointly Administered)

------------------------------------------------------------------ x

# AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES' REPLY TO UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF THE CONSTITUTIONALITY OF PROMESA

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................2

REPLY ...........................................................................................................................................4

    I.    THE *INSULAR CASES* SHOULD BE OVERTURNED WITH RESPECT TO PUERTO RICO ...................4

    II.    UNTIL THE *INSULAR CASES* ARE OVERTURNED WITH RESPECT TO PUERTO RICO, THEY
         DISPOSE OF THE APPOINTMENTS CLAUSE CHALLENGES .......................................................6

CONCLUSION..............................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**

*Agostini v. Felton*,
 521 U.S. 203 (1997)...................................................................................................................6

*Balzac v. Porto Rico*,
 258 U.S. 298 (1922).........................................................................................................4, 8, 9

*Bond v. United States*,
 131 S. Ct. 2355 (2011)............................................................................................................11

*Boumediene v. Bush*,
 553 U.S. 723 (2008).......................................................................................................6, 7, 10

*Califano v. Torres*,
 435 U.S. 1 (per curiam)............................................................................................................7

*Consejo de Salud Playa de Ponce v. Rullan*,
 586 F.Supp.2d 22 (D.P.R. 2008).........................................................................................6, 7

*Consejo de Salud Playa de Ponce v. Sec'y of Health of P.R.*,
 705 F.Supp.2d 163 (D.P.R. 2010)...........................................................................................6

*Downes v. Bidwell*,
 182 U.S. 244 (1901).................................................................................................................5

*Dred Scott v. Sandford*,
 60 U.S. 393 (1857)...................................................................................................................5

*Duncan v. Louisiana*,
 391 U.S. 145 (1968).................................................................................................................9

*Examining Bd. v. Flores de Otero*,
 426 U.S. 572 (1976).................................................................................................................6

*Gov't of Virgin Islands v. Boynes*,
 2003 WL 1936136 (Terr. V.I. Apr. 9, 2003) ..........................................................................8

*Granville-Smith v. Granville-Smith*,
 349 U.S. 1 (1955)................................................................................................................9, 10

*Harris v. Rosario*,
 446 U.S. 651 (per curiam).......................................................................................................7

*Igartua-De La Rosa v. United States*,
 417 F.3d 145 (1st Cir. 2005) ...................................................................................................4

*Puerto Rico v. Sanchez Valle*,
    136 S. Ct. 1863 (2016) ..................................................................................................3, 6

*Reid v. Covert*,
    354 U.S. 1 (1957).................................................................................................................5

*Rodriguez v. Popular Democratic Party*,
    457 U.S. 1 (1982).................................................................................................................3

*Torres v. Puerto Rico*,
    442 U.S. 465 (1979).............................................................................................................7

*Tuaua v. United States*,
    788 F.3d 300 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2461 (2016) .......................................8

*United States v. Gillock*,
    445 U.S. 360 (1980)...........................................................................................................11

*United States v. Ptasynski*,
    462 U.S. 74 (1983).............................................................................................................10

**OTHER AUTHORITIES**

Bartholomew H. Sparrow, *The Centennial of Ocampo v. United States*, in
    *Reconsidering the Insular Cases*: *The Past and Future of the American Empire*
    (Harv. Univ. Press 2015) ...................................................................................................11

Bartholomew H. Sparrow, *The Insular Cases and the Emergence of American
    Empire* (Univ. Kansas Press 2006) ......................................................................................5

Puerto Rico Government Employees Retirement System June 30, 2015 Actuarial
    Valuation Report, available at http://www.retiro.pr.gov/wp-
    content/uploads/PRGERS_Val_June302015.pdf..................................................................2

Working Paper from the George Washington University, Institute for International
    Economic Policy (available at
    https://EconPapers.repec.org/RePEc:gwi:wpaper:2017-17)..................................................2

American Federation of State, County and Municipal Employees ("AFSCME"), on behalf of the thousands of active Commonwealth employees represented by AFSCME's Puerto Rico affiliate Servidores Publicos Unidos (the "AFSCME Employees") and the thousands of retired Commonwealth employees represented by AFSCME's separately-chartered Retiree Chapter for Puerto Rico (the "AFSCME Retirees"), respectfully submits this reply, which is addressed to both (1) the Memorandum of Law in Support of PROMESA submitted by the United States of America (the "United States Brief") [Docket No. 1929], and (2) the Omnibus Opposition to Defendants' Motions to Dismiss submitted by the Union de Trabajadores del Industria Electrica y Riego (the "UTIER Opposition") in the adversary proceeding captioned *UTIER v. PREPA* [Adv. Pro. No. 17-228] (the "UTIER Adversary Proceeding", which together with the Objection and Motion of Aurelius to Dismiss Title III Petition [Docket No. 913] (the "Aurelius Motion") constitute the "Appointments Clause Challenges" to these Title III cases). For the Court's convenience, AFSCME notes that this submission is being filed today in both the Commonwealth's Title III case and the UTIER Adversary Proceeding,[2] and respectfully states as follows:

---

[2] On October 2, 2017, the Court entered its "Order Regarding Briefing and Hearing Schedule in Connection with the Aurelius Motions and UTIER Adversary Proceeding" [Docket No. 1392], which set today, December 23, 2017, as the "[d]eadline for (i) all parties to reply to the United States and (ii) all reply briefs to be filed in connection with any motions to dismiss in the UTIER Adversary Proceeding." In addition to being a creditor entitled to object to the Aurelius Motion, AFSCME has been granted "the right to intervene" in the UTIER Adversary Proceeding "for the limited purpose of filing briefing in connection with the Pending Motion to Dismiss" the UTIER Adversary Proceeding. *See* Order Granting Limited Intervention [Adv. Pro. No. 17-228, Docket No. 93]. In accordance with the Court's Orders, AFSCME has thus far timely filed an Objection to the Motion of Aurelius to Dismiss Title III Petition [Docket No. 1610] (the "AFSCME Objection"), as well as a Statement in Support of Dismissal of the UTIER Adversary Proceeding for failure to state a claim [Adv. Pro. No. 17-228, Docket No. 95] and an Opposition to Dismissal of the UTIER Adversary Proceeding for lack of standing [Adv. Pro. No. 17-228, Docket No. 99]. Other than the title page, the instant submission being filed by AFSCME in the Commonwealth's Title III case and the UTIER Adversary Proceeding are identical in all respects. Where not otherwise noted, all docket numbers refer to the Commonwealth's Title III case.

1

**PRELIMINARY STATEMENT**

AFSCME opposes the Appointments Clause Challenges unless and until the offensive doctrine of territorial incorporation as set forth in the *Insular Cases* is overturned with respect to Puerto Rico. The AFSCME Employees, AFSCME Retirees, and the people of Puerto Rico cannot afford a moment of delay in these Title III cases. The average salary of a Commonwealth central government employee is less than $28,000 per year, and the average pension of a retired central government employee is less than $14,000 per year.[3] These modest wages and benefits should not be viewed as a burden that needs to be shed via these Title III cases. To the contrary, they are a necessary component to any sustainable recovery. In exchange for a life of service, the AFSCME Employees ask (and the AFSCME Retirees asked) very little—much less than it would cost to contract out the essential services they provide to private-sector workers via outsourcing contracts, which re-route scarce government funds off-Island where wages are much higher across all sectors. Moreover, in the midst of an unprecedented fiscal crisis and natural disaster, cutting the jobs and wages of modestly-compensated public employees who live on-Island or reducing pensions to the AFSCME Retirees (an estimated 95% of whom still live on-Island) could have a devastating macroeconomic impact on Puerto Rico and accelerate already worrisome outmigration of the working-age Puerto Ricans needed for a recovery.[4] But if the Appointments Clause Challenges succeed and Puerto Rico's Title III case is substantially delayed, austerity may become inevitable as Puerto Rico's insolvency worsens even further.

The Appointments Clause Challenges seek to sidestep—unpersuasively—the offensive *Insular Cases* which have denied rights to citizens of Puerto Rico and other territories for more

---

[3] *See* Puerto Rico Government Employees Retirement System June 30, 2015 Actuarial Valuation Report, available at http://www.retiro.pr.gov/wp-content/uploads/PRGERS_Val_June302015.pdf.

[4] *See* Paul Carrillo, Anthony Yezer, and Jozefina Kalaj, "Could Austerity Collapse the Economy of Puerto Rico?," Working Paper from the George Washington University, Institute for International Economic Policy (available at https://EconPapers.repec.org/RePEc:gwi:wpaper:2017-17).

than a hundred years. Like most Puerto Ricans, AFSCME is offended by the current state of Supreme Court law with respect to territories. AFSCME believes the *Insular Cases* should be overturned. However, only the Supreme Court can overrule its own decisions. Therefore, unless and until the *Insular Cases* are overturned by the Supreme Court with respect to Puerto Rico, AFSCME absolutely opposes all efforts to derail Puerto Rico's recovery based on a claim that, in addition to being baseless, asserts a "right" (to have President Trump appoint a new Oversight Board and shut down these Title III cases in the meantime, not to eliminate PROMESA writ large) that pales in comparison to the rights that everyday Puerto Ricans are denied under the *Insular Cases*. That the Appointments Clause Challenges raise an issue they characterize as "structural" does not place them outside the reach of the *Insular Cases*, which contain no such exemption and themselves address structural issues.

Although this reply is focused on the *Insular Cases,* AFSCME also reiterates its worry that if the Court were to accept the theory that the Appointments Clause applies to territorial officials, it could also threaten the democratic election of the Puerto Rican government. The democratic right to self-governance which Puerto Ricans have fought so hard to win should not be called into question lightly. Many other objectors have ably argued this point and others, and AFSCME joins and incorporates their arguments in opposition to the Appointments Clause Challenges.[5]

---

[5] However, in addition to its position on the *Insular Cases,* AFSCME parts ways with some objectors in two respects. First, as AFSCEME set forth in its an Opposition to Dismissal of the UTIER Adversary Proceeding for lack of standing [Adv. Pro. No. 17-228, Docket No. 99], AFSCME disagrees with the Oversight Board and others that UTIER lacks standing to challenge the makeup of the Board. Second, AFSCME disagrees with the broad assertions, made by a number of parties opposing the Appointments Clause Challenges, to the effect that "[e]ach territorial [government] office exists only as a matter of legislative grace." Objection of Official Committee of Unsecured Creditors to Objection and Motion of Aurelius to Dismiss Title III Petition [Docket No. 1631] ("UCC Objection") at p. 24. Although the Supreme Court held in *Puerto Rico v. Sanchez Valle* that the United States and Puerto Rico "are not separate sovereigns" for double jeopardy purposes, it also "readily acknowledge[s]" the right of the Puerto Rican people to "democratic self-governance." 136 S. Ct. 1863, 1876. *See also Rodriguez v. Popular*

3

24207210.4

**REPLY**

### I.      The *Insular Cases* Should be Overturned with Respect to Puerto Rico

To the extent that UTIER[6] has now clarified that it seeks to have the *Insular Cases* overturned, AFSCME agrees.  *See* AFSCME Objection at 2.  In this respect, AFSCME apparently differs from some of the other parties opposing the Appointments Clause Challenges, including the United States,[7] for the following reasons.

Like UTIER, AFSCME agrees with Judge Torruella that the *Insular Cases*—which culminated in the holding that Congress's plenary Article IV power over so-called "unincorporated territories" is limited only by those provisions of the Constitution which guarantee "fundamental personal rights," *Balzac v. Porto Rico*, 258 U.S. 298, 312 (1922)—are "on par with the Court's infamous decision in *Plessy v. Ferguson* in licensing the downgrading of the rights of discrete minorities within the political hegemony of the United States." *Igartua-De La Rosa v. United States*, 417 F.3d 145, 162 (1st Cir. 2005) (Torruella, J., dissenting).

The *Insular Cases* and the offensive doctrine of territorial incorporation should be overturned by the Supreme Court with respect to Puerto Rico for at least three reasons.

***First***, as Judge Torruella has written, the *Insular Cases* "are the product of an era which is a blot on our national and judicial history" and "permi[t] the perpetuation, without limitation, of a class of citizens unequal in rights to the rest of the body politic, an anachronism that is unsupportable morally, logically or legally." *Id.* at 169.  They are based on racist assumptions that are false and must be discarded.  *See, e.g., Balzac*, 258 U.S. at 310 ("Congress has thought

---

*Democratic Party*, 457 U.S. 1, 8 (1982) ("Puerto Rico, like a state, is an autonomous political entity, sovereign over matters not ruled by the Constitution.").

[6] Aurelius does not explicitly ask that the *Insular Cases* be overturned, but seeks to preserve its right to do so. Aurelius Reply at p. 18 n.7.

[7] *See, e.g.,* United States Brief at p. 9 and n.5; Financial Oversight and Management Board for Puerto Rico's Opposition to the Motion to Dismiss Title III Petition [Docket No. 1622] ("FOMB Objection") at pp. 23-27; Official Committee of Unsecured Creditors to Objection and Motion of Aurelius to Dismiss Title III Petition [Docket No. 1631] ("UCC Objection") at pp. 5, 14-21.

that a people like the Filipinos or the Porto Ricans . . . liv[e] in compact and ancient communities, with definitely formed customs and political conceptions[.]").

***Second***, even the offensive dominion over unincorporated territories granted to Congress by the *Insular Cases* was meant to be temporary. *See Reid v. Covert*, 354 U.S. 1, 14 ("The *Insular Cases* . . . involved the power of Congress . . . to govern *temporarily* territories with wholly dissimilar traditions and institutions." (emphasis added)); *Downes v. Bidwell*, 182 U.S. 244, 287 (1901) (Brown, J.) ("If those possessions are inhabited by alien races, differing from us in religion, customs, laws, methods of taxation and modes of thought, the administration of government and justice, according to Anglo-Saxon principles, may *for a time* be impossible[.]" (emphasis added)). The temporary nature of all territorial governance was even recognized by the Supreme Court in the otherwise-detestable *Dred Scott* decision. *See Dred Scott v. Sandford*, 60 U.S. 393, 446 (1857) ("There is certainly no power given by the Constitution to the Federal Government to establish or maintain colonies bordering on the United States or at a distance, to be ruled or governed at its own pleasure . . . [N]o power is given to acquire a Territory to be held and governed permanently in that character."). Yet Puerto Rico has been a possession of the United States now for 120 years—longer than any other territory since the ratification of the Constitution. *See* Bartholomew H. Sparrow, *The Insular Cases and the Emergence of American Empire*, p. 3 (Univ. Kansas Press 2006) (listing "time between when an area came under U.S. sovereignty and when Congress admitted it as a state or part of a state").

***Third and relatedly***, the relationship between Puerto Rico and the United States has changed since the *Insular Cases* "in ways that are of constitutional significance" such that "[w]hatever the validity of the [*Insular Cases*] in the particular historical context in which they were decided, those cases are clearly not authority for . . . the Commonwealth of Puerto Rico in

5

24207210.4

the 1970's." *Boumediene v. Bush*, 553 U.S. 723, 758 (2008) (Kennedy, J.) (dicta) (quoting *Torres v. Puerto Rico*, 442 U.S. 465, 475-76 (1979) (Brennan, J., concurring)). The Supreme Court has held "that Puerto Rico's laws are 'state statutes' within the terms of the Three-Judge Court Act" because Puerto Rico's post-1952 local governance "by the people of Puerto Rico under their own constitution . . . distinguish[es] Puerto Rico's laws from those of other Territories." *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1883 (2016) (Breyer, J., dissenting) (quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 672-73 (1974)); *see also Examining Bd. v. Flores de Otero*, 426 U.S. 572, 594 (1976) ("[The] purpose of Congress in the 1950 and 1952 legislation was to accord to Puerto Rico the degree of autonomy and independence normally associated with a State of the Union."). These changes have led at least one federal judge to hold that Puerto Rico—regardless of its status as Commonwealth versus State—is no longer an unincorporated territory subject to the holdings of the *Insular Cases*. *See Consejo de Salud Playa de Ponce v. Rullan*, 586 F.Supp.2d 22 (D.P.R. 2008).[8]

## II. Until the *Insular Cases* are Overturned with Respect to Puerto Rico, They Dispose of the Appointments Clause Challenges

Despite its desire for the offensive *Insular Cases* and unincorporated territory doctrine to be overturned with respect to Puerto Rico, AFSCME acknowledges that only the Supreme Court can accomplish that result. Regardless of how dubious its foundations, whenever a Supreme Court precedent "has direct application in a case"—as the *Insular Cases* do here—a lower court "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation omitted). Unfortunately, the Supreme Court has held as recently as 2008 that "[t]his century old

---

[8] This decision never benefited from appellate review because the constitutional claim was withdrawn due to enactment of federal legislation amending the provision of the statute at issue in the case. *See Consejo de Salud Playa de Ponce v. Sec'y of Health of P.R.*, 705 F.Supp.2d 163 (D.P.R. 2010).

24207210.4

doctrine" remains on the books and still "informs" the Court's analysis of "'which . . . provisions [of the Constitution] are applicable by way of limitation upon the exercise of executive and legislative power'" in unincorporated territories. *Boumediene v. Bush*, 553 U.S. 723, 758 (2008) (quoting *Balzac v. Porto Rico*, 258 U.S. 298, 312 (1922)).

The dicta from *Boumedine* quoted in Section 1, *supra*—suggesting that the *Insular Cases* should perhaps no longer apply to Puerto Rico in light of changed circumstances—is not only inconclusive, but is actually indicative of just how alive and harmful the *Insular Cases* remain. That dicta quotes from a 1979 concurrence by Justice Brennan in *Torres v. Puerto Rico*, a case in which the majority opinion actually reaffirmed the "distinction between incorporated and unincorporated territories." 442 U.S. at 469. Just one year earlier, the Court had held—in reliance on the *Insular Cases—*that "Congress has the power to treat Puerto Rico differently" by excluding Puerto Ricans from the basic entitlement to Supplemental Security Income (SSI) that aged, blind, and disabled residents of the fifty states receive. *Califano v. Torres*, 435 U.S. 1 at n.4 (per curiam) (citing *Balzac*, *Dorr*, and *Downes*). In 1980, one year *after* Justice Brennan's concurrence in *Torres v. Puerto Rico,* the Supreme Court reaffirmed *Califano* and upheld a congressional statute providing fewer welfare benefits to "families with needy dependent children" who reside in Puerto Rico. *Harris v. Rosario*, 446 U.S. 651 (per curiam) ("Congress . . . is empowered under the Territory Clause of the Constitution, to . . . treat Puerto Rico differently from States so long as there is a rational basis for its actions."). *See also Consejo de Salud Playa de Ponce*, 586 F.Supp.2d at 26 (*Califano* and *Hilario* hold that unlike with states, "[i]n an unincorporated United States territory Congress can also discriminate against the territory and its citizens so long as there exists a rational basis for such disparate treatment.").

7

In other words, the *Insular Cases* are not, unfortunately, a dead letter. This is further evidenced by recent lower court decisions continuing to deny important rights to residents of U.S. territories with reference to the *Insular Cases* and the doctrine of territorial incorporation. *See, e.g., Tuaua v. United States*, 788 F.3d 300, 308 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2461 (2016) ("We are unconvinced a right to be designated a citizen at birth . . . rather than a non-citizen national, is . . . fundamental under the *Insular Cases*' constricted understanding of the term."); *Gov't of Virgin Islands v. Boynes*, 2003 WL 1936136, at *2 (Terr. V.I. Apr. 9, 2003) ("Until this Court receives a clearer signal from the Supreme Court or the Third Circuit to do otherwise, it will continue to treat the right to a jury trial as a remedial right. Therefore, Congress is not required to secure such a right to the U.S. Territory of the Virgin Islands.").

Applying the *Insular Cases*, however reluctantly, it is clear that the Appointments Clause Challenges do not implicate "the narrow category of rights 'and principles which are the basis of all free government.'" *Tuaua*, 788 F.3d at 308 (quoting *Dorr v. United States*, 195 U.S. 138, 147 (1904)). UTIER (and Aurelius) contend that all separation-of-powers arguments assert "unquestionably fundamental" rights, UTIER Opposition at 33, but this misses the point that "the *Insular Cases* distinguish as universally fundamental those rights so basic as to be integral to free and fair society" from "those artificial, procedural, or remedial rights that—justly revered though they may be—are nonetheless idiosyncratic to the American social compact or to the Anglo–American tradition of jurisprudence." *Id.* (citations omitted). As the UCC Objection amply explains—but UTIER (and Aurelius) have not addressed—there are numerous examples of "free and fair society" that exist without the Appointments Clause. *See* UCC Objection at 19-20. Likewise, any personal right that plausibly exists under the Appointments Clause pales in comparison to the jury trial right found in *Balzac* not to be fundamental for purposes of the

8

unincorporated territory doctrine. For even assuming *arguendo* that the Appointments Clause creates personal rights, they are part of the "American scheme of justice" only—a distinction recognized by the fact that the Supreme Court incorporated the Sixth Amendment right to a criminal jury trial against the States via the Fourteenth Amendment without even mentioning *Balzac*. *See Duncan v. Louisiana*, 391 U.S. 145, 149-51 (1968) (holding that "trial by jury in criminal cases is fundamental to the American scheme of justice" as reflected by the fact that "jury trial in criminal cases had been in existence in England for several centuries and carried impressive credentials traced by many to Magna Carta").

UTIER (and Aurelius) unsuccessfully attempt to distinguish the *Insular Cases* by arguing that those cases "at most prevent the application of a few individual rights in the territory" and that "[n]one has held that structural provisions of the Constitution are inapplicable when Congress legislates with respect to a territory." Aurelius Reply at 17; UTIER Opposition at 33.[9] But this argument turns the *Insular Cases* on their head. The *Insular Cases* do *not*, as UTIER contends, stand for the narrow proposition that only "a few individual rights" do *not* apply to unincorporated territories. Rather, they state a much broader and more damaging holding: that *only* those "fundamental personal rights declared in the Constitution" apply in unincorporated territories as a "limitation" on the otherwise-plenary "sovereign congressional faculty, granted under Article IV, § 3, of . . . making all needful rules and regulations respecting the territory belonging to the United States." *Balzac*, 258 U.S. at 312-13; *see also Granville-Smith v.*

---

[9] Aurelius, but not UTIER, argues—without any citations—that "[e]ven if the citizens of Puerto Rico do not enjoy the benefits of the Constitution's structural safeguards . . . Aurelius and the many other entities throughout the United States, such as pension plans and financial institutions, who are adversely affected by the Board's actions *do*." Aurelius Reply at pp. 18-19. This argument is frivolous because the act Aurelius complains of—the filing of the Title III petition it seeks to have dismissed—occurred in Puerto Rico, and the territorial incorporation doctrine applies to acts on Puerto Rican soil regardless of who the injured party is. *See Balzac*, 258 U.S. at 309 ("The citizen of the United States living in Porto Rico cannot there enjoy a right of trial by jury under the Federal Constitution, any more than the Porto Rican. It is locality that is determinative of the application of the Constitution, in such matters as judicial procedure, and not the status of the people who live in it.").

9

*Granville-Smith*, 349 U.S. 1, 5 (1955) (reaffirming *Insular Cases* holding as being that in unincorporated territories "only some essentials, withal undefined, of the Constitution extended"). And to the extent that *Boumediene* may perhaps have qualified that test by emphasizing "that questions of extraterritoriality turn on objective factors and practical concerns, not formalism," 553 U.S. at 2258, that is all the more reason to reject the hyper-formalism of the Appointments Clause Challenges.

UTIER (and Aurelius) are also incorrect that "[n]one of the *Insular Cases* involved" any "structural constitutional provision or principle." UTIER Opposition at 33. First, the Uniformity Clause, U.S. Const. Art. I, Sec. 8, Cl. 2, at issue in *Downes v. Bidwell*, is not found in the Bill of Rights but rather is a structural provision of the Constitution. "'[The purpose of the Uniformity Clause] was to cut off all undue preferences of one State over another in the regulation of subjects affecting their common interests.'" *United States v. Ptasynski*, 462 U.S. 74, 81 (quoting 1 J. Story, Commentaries on the Constitution of the United States § 957 (T. Cooley ed. 1873)). The decision not to extend the Uniformity Clause to Puerto Rico in *Downes* is thus one example of an *Insular Case* addressing a "structural constitutional provision or principle."

Furthermore, the Supreme Court has deployed the *Insular Cases* in refusing to apply the Tenth Amendment—which provides as a structural matter that any "powers not delegated to the United States by the Constitution . . . are reserved to the states respectively, *or to the people*"—to the people of unincorporated territories. *See, e.g., Granville-Smith*, 349 U.S. at 5-6 ("The legislative power of territories has customarily been expressed as extending to 'all rightful subjects of legislation' not inconsistent with the Constitution or laws of the United States. This conventional phrasing was altered to subjects of 'local application,' or 'not locally inapplicable,' in the case of unincorporated territories." (quotations omitted)) (holding that Virgin Islands could

10

24207210.4

not pass its own divorce statute); *see also id.* at 27 (Clark, J., dissenting) ("The Tenth Amendment does not operate as a limitation upon the powers, express or implied, delegated to the national government. The Congress has the power to deal with the Islands, granting or withholding from them the powers of a State as it sees fit." (quotation omitted)); Bartholomew H. Sparrow, *The Centennial of Ocampo v. United States*, in *Reconsidering the Insular Cases: The Past and Future of the American Empire* (Harv. Univ. Press 2015) (discussing Tenth Amendment implications of *Granville-Smith*).[10]

In sum, because the *Insular Cases* and the unincorporated territory doctrine unfortunately remain the law; because the Appointments Clause Challenges do not assert a fundamental right within the meaning of those cases; and because those cases do not except so-called "structural" questions from their reach, unless and until the *Insular Cases* are overturned with respect to Puerto Rico, the Appointments Clause Challenges must fail.

## CONCLUSION

Based on the foregoing, AFSCME respectfully requests that this Court (i) deny the Aurelius Motion; (ii) dismiss the UTIER Adversary Proceeding for failure to state a claim; and (iii) grant any further relief as it just and proper.

---

[10] Any rejoinder by UTIER (or Aurelius) that *Granville-Smith* was not a case about the "structure" of the Constitution is refuted by *Bond v. United States*, 131 S. Ct. 2355 (2011). *Bond* held that a person indicted for violating a federal statute has standing to challenge its validity on the ground that, by enacting it, Congress intruded upon the sovereignty and authority of the States in violation of the Tenth Amendment. In reaching that conclusion, the Court praised the "federal structure" repeatedly and referred to the "analogous context" of cases in which individuals have standing to vindicate "structural principles secured by the separation of powers." *Id.* at 2365. The upshot of *Bond* is that the "structural" nature of Tenth Amendment claims and separation-of-powers claims are one and the same. That individuals have standing to bring these claims, of course, says nothing about whether they assert rights necessary to all free government, as is required for a right to be fundamental under the territorial incorporation doctrine. To the contrary, "our structure of federalism . . . had no counterpart in England," *United States v. Gillock*, 445 U.S. 360, 369 (1980), and thus these idiosyncratic structures cannot be said to be "principles of natural justice inherent in the Anglo-Saxon character," *Downes*, 182 U.S. at 280 (Brown, J.), for purposes of the *Insular Cases* and the unincorporated territory doctrine.

11

| | |
|---|---|
| Dated: December 22, 2017 | **SAUL EWING ARNSTEIN & LEHR LLP** |

By: */s/ Sharon L. Levine*
Sharon L. Levine *(pro hac vice)*
Dipesh Patel *(pro hac vice)*
1037 Raymond Blvd.
Suite 1520
Newark, NJ 07102
(973) 286-6713 (Telephone)
(973) 286-6821 (Facsimile)
sharon.levine@saul.com; dipesh.patel@saul.com

-and-

*/s/ Judith E. Rivlin*
**AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES**
Judith E. Rivlin (*pro hac vice*)
Teague P. Paterson *(pro hac vice)*
Matthew S. Blumin *(pro hac vice)*
1101 17th Street NW, Suite 900
Washington, DC 20011
(202) 775-5900 (Telephone)
(202) 452-0556 (Facsimile)
jrivlin@afscme.org; tpaterson@afscme.org;
mblumin@afscme.org

-and-

*/s/ Manuel A. Rodriguez Banchs*
Manuel A. Rodriguez Banchs
P.O. Box 368006
San Juan, Puerto Rico 00936-8006
(787) 764-8896 (Telephone)
(787) 721-0975 (Facsimile)
manuel@rodriguezbanchs.com

*Attorneys for the American Federation of State,
County and Municipal Employees*

12

24207210.4