AMERICAN BANKRUPTCY INSTITUTE JOURNAL

*Issues and Information for the Insolvency Professional*

## Chapter 11 - "101"

# An Overview of the Automatic Stay

*Contributing Editors:*
*Prof. John D. Ayer*
*University of California at Davis; Chico, Calif.*
*jdayer@ucdavis.edu*

*Michael Bernstein*
*Arnold & Porter; Washington, D.C.*
*michael_bernstein@aporter.com*

*Jonathan Friedland*
*Kirkland & Ellis LLP; Chicago*
*jonathan_friedland@chicago.kirkland.com*

**Editor's Note:** *This month's column provides an overview of the automatic stay, its exceptions and how to obtain relief from the stay. The automatic stay is among the most central debtor protections. You cannot venture far into the world of chapter 11 without understanding it.*

It is sometimes said that the two primary objectives of chapter 11 are to maximize the going-concern value of the bankruptcy estate and to assure equality of distribution among similarly situated creditors. The automatic stay, which comes into effect immediately upon the debtor's bankruptcy filing without the need for any court order, is integral to chapter 11 because it furthers both of these goals. It preserves going-concern value by preventing creditors from picking apart the debtor one asset at a time—the "death by a thousand cuts" that can convert an operating business into little more than a pile of spare parts. At the same time, the automatic stay also helps to assure the second chapter 11 objective, equality of distribution, by preventing one creditor from seizing assets before others have an opportunity to do so. By putting all creditors on a level playing field, the stay replaces the chaotic "race to the courthouse" that would otherwise ensue in the absence of bankruptcy with an organized distribution scheme. Thus, the automatic stay protects not only debtors, by providing some "breathing room" from their creditors, but it also protects the creditors from one another, and from the loss of going-concern value.

As Bankruptcy Code sections go, §362 is easier than most to understand: Section 362(a) lists the actions that are stayed by the bankruptcy filing; §362(b) sets forth exceptions to the automatic stay; §362(c) describes the duration of the automatic stay; §362(d) sets forth the grounds for seeking relief from the automatic stay; §362(e) provides the time framework under which the courts must operate in response to a motion for relief from the automatic stay; §362(f) provides a limited mechanism for emergency relief from the stay where it is necessary to prevent irreparable harm; §362(g) allocates the burdens of proof in a motion for relief from stay; and §362(h) provides for damages in the event that a party willfully violates the automatic stay. Although much of what you need to know about the automatic stay can be learned by simply reading the statute, we will highlight some of the more important provisions of §362, providing a discussion of the issues that are most often litigated and a bit of strategic advice.

## What Is Stayed?

Section 362(a) contains a long list of actions that are stayed by the filing of a bankruptcy petition. A brief perusal of this list will make it clear that the prohibited actions include those that tend to be of most concern to creditors. For example, after a debtor files for bankruptcy, a creditor cannot file or continue to litigate a lawsuit against the debtor to recover on claims that arose before the petition date. If a lawsuit has been filed against the debtor prior to the petition date, that lawsuit, at least as it relates to the debtor, must immediately halt. Typically, a debtor who is a defendant in pre-petition litigation will provide written notice to the court and other parties that the action is stayed shortly after it files its bankruptcy petition. Note that the automatic stay does not apply to suits against the debtor based wholly on post-petition conduct; such suits can be filed in any court that has jurisdiction and are not implicated by the automatic stay.

The automatic stay precludes creditors from enforcing pre-petition judgments against the debtor, perfecting or enforcing liens granted pre-petition, foreclosing on collateral, terminating contracts on account of pre-petition defaults, or taking any number of other actions against the debtor or its property.

The stay halts rights of setoff as well. Thus, if a creditor and the debtor owe each other mutual pre-petition debts arising from different transactions, the creditor cannot, without relief from the stay, apply the debt owing to it against the debt it owes. However, if the debtor's obligation to the creditor and the creditor's obligation to the debtor both arise from the same transaction, the creditor may have a right of recoupment (a close relative to setoff). Courts hold that the right of recoupment is not subject to the automatic stay.

## Exceptions to the Automatic Stay

Section 362(b) of the Bankruptcy Code lists exceptions to the automatic stay. These exceptions reflect policy decisions made by Congress that the rights of certain parties should take precedence over the debtor's need for breathing room.

The most commonly sought exceptions are actions by parties to securities contracts to close out open positions; eviction of a debtor by a landlord where the lease has been fully terminated prior to the bankruptcy filing; actions by taxing authorities to conduct tax audits, issue deficiency notices, demand tax returns and make tax assessments; and, perhaps the most common of all, the right of a governmental unit to enforce its police and regulatory power.

A key issue that is often litigated in connection with this exception is whether the governmental unit is truly exercising its "police or regulatory" powers, or is instead simply acting as a creditor trying to collect a debt owed to the government. Courts have held that where a governmental entity acts to enforce its regulatory authority, such as protecting the public health, safety or welfare, its actions are exempt from the

automatic stay. But where the government merely seeks to collect a debt, even if the entity doing so has regulatory authority, such an action is not exempt from the automatic stay, and the government must take its place in line just like any other creditor. Unfortunately, there is no bright-line rule that would tell us precisely when the government is acting in a regulatory capacity as opposed to a creditor capacity.

Another issue that has arisen under §362(b)(4), particularly with debtors who operate in highly regulated environments, is the battle between bankruptcy court jurisdiction and the jurisdiction of federal and state regulatory authorities. Debtors sometimes believe that bankruptcy courts should curtail the authority of federal or state regulatory bodies in order to achieve the bankruptcy objective of a successful reorganization. On the other hand, the regulators, often relying on §362(b)(4), assert that they are entitled to, and indeed required to, continue to perform their regulatory functions notwithstanding the bankruptcy filing, and that the bankruptcy courts should not usurp their authority. As additional regulated entities become subject to bankruptcy proceedings, we are likely to see more case law addressing the conflicts between the bankruptcy courts' jurisdiction and the authority of the regulators.

Other exceptions to the automatic stay apply only to very highly specialized situations, and you will rarely see them. These include, for example, state decisions regarding the licensing of educational institutions, certain ship and vessel mortgage foreclosures by the Secretary of Commerce or the Secretary of Transportation, and certain HUD mortgage foreclosures on multi-unit properties.

Finally, certain exceptions arise more frequently in individual bankruptcy cases than in corporate cases, such as criminal proceedings against the debtor, and alimony and support proceedings.

## Is Stay Relief Necessary?

Practitioners are often called upon to provide advice on whether a contemplated action would constitute a violation of the automatic stay and would thus require "relief from the stay." Although the answer may be obvious in some cases, the following is a selection of some less clear-cut situations practitioners may encounter:

- A plaintiff believes that its lawsuit relates wholly to post-petition conduct, but the debtor alleges that it is based on pre-petition events;
- A creditor believes that it is exercising a right of recoupment (not subject to the stay), while the debtor characterizes the action as a setoff, which is subject to the stay;
- A party to a contract with the debtor believes that it has the right to terminate the contract based on a post-petition default without court approval, while the debtor takes the position that doing so constitutes an act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and is therefore subject to the automatic stay;
- A creditor with a contract to supply goods to the debtor wants unilaterally to modify credit terms post-petition to minimize its risk, but the debtor argues that the unilateral contract modification violates the stay; or
- There may be a dispute over whether a transaction between the debtor and a counterparty constitutes a securities transaction of the type that is exempt from the stay.

These and other similar situations pose difficult strategic choices for the non-debtor party and its counsel. On the one hand, creditors often want to act quickly, and many believe that the court will be predisposed against them because it is charged with protecting the interests of the debtor and its estate. On the other hand, as discussed below, consequences for violating the automatic stay can be severe. Under these circumstances, many creditors opt to seek relief from the bankruptcy court as a precautionary measure. One approach is to file a motion seeking a determination that the stay does not apply or, in the alternative, file a motion for relief from the stay.

## How to Get Relief from the Automatic Stay

If a creditor believes that it qualifies for relief from the stay, it must seek such relief by filing a motion under §362(d). Such a motion is a contested matter, rather than an adversary proceeding.

Section 362(e) provides that the court may hold a preliminary hearing followed by a final hearing on a motion for relief from the stay, or may consolidate the two and just hold a single hearing. Except in particularly complex matters, as a practical matter the courts tend to hold a single hearing, but local practices vary. The court must hold a preliminary hearing within 30 days after a motion for stay relief is filed, unless the movant agrees otherwise. If the initial hearing is a preliminary hearing, then a final hearing must be concluded by no later than 30 days after the conclusion of the preliminary hearing, unless the parties agree otherwise or the court finds "compelling circumstances." These provisions are intended to provide a prompt resolution of motions for relief from stay, recognizing that creditors who are entitled to relief from the stay often face substantial risk and imminent harm: Justice delayed may be justice denied. But as you will see if you read §362(e), there is some room in the statute for delay, and while motions for relief from the stay are usually decided relatively promptly, that is not always the case.

There are cases where a creditor will seek relief from the automatic stay on a very expedited basis. While counsel would be well advised not to invoke emergency proceedings unless there is a legitimate emergency (the fact that a client wants immediate relief is not, by itself, an emergency), where immediate relief is necessary to avoid irreparable harm, courts are often willing to give expedited consideration. See §362(f).

Section 362(d) provides three grounds for obtaining relief from the automatic stay. The first ground for obtaining relief from the automatic stay is set forth in §362(d)(1), which states that relief from the stay may be granted "for cause, including the lack of adequate protection of an interest in property..." Regular readers of this column will recall that we described the concept of adequate protection last month. Secured creditors, and certain other parties that have an interest in property of the estate, are entitled to adequate protection to protect against diminution in the value of their collateral (or other property in which they have an interest) during the chapter 11 case. For example, a mortgage lender whose pre-petition collateral is diminishing in value during the bankruptcy case may be entitled to periodic cash payments to compensate for the loss in collateral value. If a party is entitled to adequate protection, but the debtor is unable or unwilling to provide such adequate protection, this is a basis for relief under §362(d)(1) of the Bankruptcy Code.

You will note that §362(d)(1) refers to "cause, including the lack of adequate protection..." Thus, the statute appears to contemplate types of "cause" other than lack of adequate protection, although it does not say what they are. The lack of concrete enumerated types of "cause" (other than adequate protection) justifying relief from the stay leaves the court with broad discretion in granting such relief. The following describes only a few examples of situations found to constitute "cause" warranting relief from stay: failure to maintain and preserve collateral, waste or mismanagement, failure to pay taxes, and undue delay by the debtor in proposing a reorganization plan.

Secured creditors who want to foreclose on their collateral are just one group in the universe of parties who often seek stay relief. Others include contract parties who want to terminate contracts, litigants who want to continue with litigation (or arbitration) in a non-bankruptcy forum and plaintiffs who want to name the debtor in a lawsuit in order to seek payment under an insurance policy. Of course, these are just a few examples. The concept of "cause" under §362(d)(1) is flexible enough to allow the court to balance the interests of the non-debtor party against the interests of the estate, and act accordingly.

The next basis for granting relief from the automatic stay is found in §362(d)(2). This section provides that a secured creditor may obtain relief from the automatic stay with respect to an act against property of the bankruptcy estate if "(A) the debtor does not have an equity in such property, and (B) such property is not necessary to an effective reorganization."

To meet the first requirement, the value of the property must not exceed the amount of all debts secured by liens on such property. This is what is meant by "an equity in such property." The second factor requires a finding that the property is not necessary to an effective reorganization. This requirement may be satisfied either by showing that an effective reorganization may occur without the particular piece of property at issue or, alternatively, that the debtor is unlikely to successfully reorganize (the definition of "reorganization" in this context is sometimes subject to dispute).

The third provision in §362(d)(3) deals with a special subsection of bankruptcy cases—single-asset real estate bankruptcy cases involving less than $4 million in secured debt. Single-asset real estate bankruptcy cases are generally two-party contests. Secured creditors tend to argue that these are not "real" reorganization cases, and that it is unfair to impose delay and market risk on the secured creditor. Debtors, meanwhile—or in any event their partners or shareholders—use the breathing room afforded by the stay to wait for market improvement, seek to enhance value through leasing or a going-concern sale, or at least to delay the tax effect of a foreclosure. This is, of course, a slight oversimplification of these cases, but nonetheless they are a special category of chapter 11 cases and do not resemble the typical business reorganization contemplated by chapter 11.

Recognizing this, Congress enacted a special provision aimed at ensuring that these cases move quickly or, in the event that this does not happen, that the secured creditor nevertheless obtains relief. Section 362(d)(3) provides that a secured creditor in one of these single-asset cases is entitled to relief from the stay to foreclose on its collateral unless the debtor has filed a reorganization plan that has a reasonable prospect for confirmation or begins paying monthly interest to the secured creditor at a market rate of interest by no later than 90 days after the bankruptcy filing (although the court has the power to extend this period). It is important to emphasize, however, that this provision applies only to those single-asset real estate cases involving less than $4 million in debt, a relatively small subset of chapter 11 cases.

### Stay Relief Strategy

The first strategic decision many creditors face with respect to the automatic stay is how early to seek relief. On the one hand, creditors often want to obtain relief quickly so as to minimize the delay and inconvenience resulting from bankruptcy. Second, they may want to seek relief early in the case before their collateral value begins to decline. Third, even if the secured creditor believes that it may not obtain relief from the stay, the creditor may want to file an early motion for relief from the stay in order to obtain adequate protection payments.

On the other hand, there may be a downside to moving too quickly. As a general matter, very early motions for relief from the automatic stay are more likely to fail than those filed later on in the case. Judges tend to be more concerned with the debtor's rights early in the case and correspondingly less sympathetic to a non-debtor's desire to immediately extricate itself from the bankruptcy. In fact, sometimes a very early motion for relief from the stay will be seen by the court as an overly aggressive move by a secured creditor. The creditor takes a risk that the overzealousness will cause the judge to view him or her as unreasonable and that it may prejudice future arguments that the creditor may want to make. As with any general principle, however, there will be times—such as where a creditor's collateral value is eroding precipitously or where the requirements for stay relief can very clearly be demonstrated—where circumstances justify seeking early relief from the stay. But in most circumstances, the creditor must carefully balance a desire for prompt relief against preserving greater chances for success later in the case.

Section 362(g) sets out the movant's and non-movant's respective burdens in a motion for relief from stay as follows: The party requesting relief from the stay has the burden of proof on the issue of whether the debtor has equity in the property (see §362(d)(2)), but the party opposing relief from the stay has the burden of proof on all other issues. As a practical matter, however, both the movant and the responding party are well-advised to be prepared to present evidence on all of the relevant issues.

In order to streamline a hearing on a motion for relief from stay, it is sometimes possible for the parties to stipulate on issues for which there is no real dispute. For example, sometimes the parties are able to avoid lengthy valuation evidence by stipulating as to the value of certain collateral. It makes sense to look for opportunities to reduce the matters being disputed, as long as such an agreement does not prejudice your case. If nothing else, the judge is likely to appreciate being spared long presentations on uncontested or peripheral issues.

Sometimes a creditor or a debtor will use a motion for relief from the automatic stay to presage arguments that it may want to make later in the case, including at the plan confirmation stage. The creditor, for example, may want to use the opportunity to show that the debtor has little prospect for successful reorganization. Or the debtor may use an early lift-stay motion to outline its preliminary reorganization plans and efforts. This can be a useful litigation strategy, but it pays to carefully measure any arguments you forward at an early lift-stay hearing lest these arguments come back to bite you later on in the case. For example, a secured creditor may want to claim that it is undersecured at an early lift stay hearing to show that its position is at risk. However, if that creditor fails to obtain relief, it may later want to take the position that it is oversecured in order to obtain post-petition interest under §506(b). Thus, at a lift-stay hearing, a lawyer must not only be aware of his or her present arguments, but also take heed to preserve arguments that may become necessary later in the case.

Finally, it is incumbent upon lawyers for non-debtor parties to caution their clients not to violate the automatic stay. A creditor will ordinarily not be punished for inadvertent violations of the automatic stay, although any actions taken in violation of the stay are void as a matter of law. Under §362(h), however, the bankruptcy court may extract damages, including attorney's fees and even punitive damages, from a party who willfully violates the automatic stay. There are few more effective ways to paint yourself as a "bad actor" in the eyes of the court than to willfully violate the automatic stay. ■

Reprinted with permission from the ABI Journal, *Vol. XXII, No. 10, December/January 2004.*

The American Bankruptcy Institute is a multi-disciplinary, non-partisan organization devoted to bankruptcy issues. ABI has more than 10,000 members, representing all facets of the insolvency field. For more information, visit ABI World at www.abiworld.org.