IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br>Title III<br>No. 17 BK 3283-LTS |
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")<br><br>Debtor | PROMESA<br>Title III<br>No. 17 BK 3284<br><br>(Joint Administration Requested) |
| CORPORACIÓN DE SERVICIOS INTEGRALES DE SALUD DEL AREA DE BARRANQUITAS, COMERÍO, COROZAL, NARANJITO Y OROCOVIS<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO<br><br>Defendant | PROMESA<br>Title III<br>Adv. Proc. No. Civil No. 17- |

**ADVERSARY COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW the Corporación de Servicios Integrales de Salud del Area de Barranquitas, Comerío, Corozal, Naranjito y Orocovis (Corporación de Servicios) through its attorney and very respectfully states, alleges and prays:

**I. THE FACTS**

1. The Corporación de Servicios Integrales is a corporation incorporated in PR with its principal place of business in Naranjito, receives grant funds under Section 330 of the Public Health Service ("PHS") Act, 42 U.S.C. § 254b ("Section 330"), in order to provide care to medically underserved populations in their communities. 42 U.S.C. §§ 254b(e), (k). Hence, it provides essential medical services to the neediest in PR. Federal law requires the Commonwealth to make special payments to the Corporación de Servicios Integrales for certain Medicaid services. It is considered a "Federally-qualified health center" (commonly known as FQHC).

2. In 1997, Congress mandated a two-part payment system for FQHCs in managed care: First, a state's contract with a managed care contractor (or managed care organization, "MCO") must require the MCO to pay an FQHC "not less" than the MCO would pay any other provider for similar services. *See* H. Rep. 105-217, at 869 (2007) (MCO required to "pay the FQHC . . . at least as much as it would pay any other provider for similar services"). Second, states must make supplemental payments (generally referred to as "wraparound payments" and in this Report "WAPs") to each FQHC equal to the amount by which the FQHC's per visit cost-based or PPS rate exceeds the payment the FQHC received from the MCO. States must make these WAPs "in no case less frequently than every 4 months." 42 U.S.C. § 1396a(bb)(5).

3. Every United States Court of Appeals that has considered the issue, including the First Circuit, has concluded that FQHCs have an enforceable right to obtain such payments by suing states under 42 U.S.C. § 1983 for prospective injunctive relief. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 74–75 (1st Cir. 2005); *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1011–13 (9th Cir. 2013); *New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Human Servs.*, 722 F.3d 527, 539 (3d Cir. 2013); *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 209–12 (4th Cir. 2007); *Cmty. Health Ctr. v. Wilson–Coker*, 311 F.3d 132, 136, 140 (2d Cir. 2002). The Commonwealth since 1989 has largely ignored FQHC payment requirements.

4. Several FQHC, including movant filed for an injunction in federal court against the Commonwealth for future payments and won and filed in Commonwealth Court to recover retroactive payments barred buy the Eleventh Amendment and also won. Corporación de Servicios Integrales has judgments in Commonwealth Court totaling in excess of $51,000,000. To date, the Commonwealth has used dilatory tactics not to pay said judgments.

5. On June 17, 2014, Law 66-2104 was enacted by PR. Section 28 of said act establishes that if there is a judgment against the Commonwealth, a municipality or a public corporation the following will occur:

> The Secretary of Justice shall evaluate the applicable payment plan in accordance with the amount of the judgment, upon which he/she shall request a certification of the availability of funds to the Director of the Office of Management and Budget, the Board of Directors or the governing body of the public corporation in question, or of the Mayor of the corresponding Municipality.

6. Section 28 continues establishing "payment plans" that go from 1-3 years for judgments of less than $100,000 to no more than $3 million a year for judgments that exceed $20 million. In addition, section 28(g) states that "[i]f there were no funds available to honor

3

the payment plan during a specific fiscal year, it shall be postponed for the following fiscal year, thus said payment plan shall be automatically extended for the number of unpaid installments."

7. Section 29 of Law-66 states that neither the Commonwealth, its municipalities or public corporations may be forced to pay judgments if they do not have funds. It also establishes that if there are no funds to pay the judgments, the only remedy is the payment of interest as per the Rules of Civil Procedure. Hence, only if the payment of the judgment is postponed due to lack of funds is that the judgment-creditor may receive interest.

8. In the case of the $51 million in judgments in favor of plaintiff against the Commonwealth based on the contractual relationship it has with it. It is the Commonwealth's position in those cases that it only has to pay a maximum of $3 million for the judgments as a whole, although this interpretation of the law, if constitutional, is being challenged in Adversary Proceeding 17-227 and not here.

9. Plaintiff seeks declaratory judgment relief determining that sections 28 and 29 of Law 66-2014 is contrary to the United States Constitution. They are also unconstitutional as they are preempted by 11 U.S.C. § 903 and section 303 of PROMESA, 48 U.S.C. § 2163.

**II. JURISDICTION AND VENUE**

10. The Honorable Court's jurisdiction is based on 28 U.S.C. § 1331 since PROMESA is a federal statute. The Court also has jurisdiction pursuant to 48 U.S.C. § 2166 because this action arises in and relates to a Title III proceeding under PROMESA. Jurisdiction is also based on 42 U.S.C. § 1983. Venue is proper in this District under 28 U.S.C. § 1391(b). Venue is also proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in a case filed under Title III of PROMESA.

4

11. The declaratory relief is sought under under 28 U.S.C. §§ 2201 and 2202 and 11 U.S.C. § 105(a) and 42 U.S.C. § 1983.

**III. CLAIMS FOR RELIEF**

a. Substantive Due Process

12. Plaintiff realleges paragraphs 1-11.

13. The Fifth Amendment of the United States Constitution states that no person will "be deprived of life, liberty, or property, without due process of law." Plaintiff is a person within the definition of a person in the Fifth Amendment. In addition, the 14th Amendment of the United States Constitution states "nor shall any state deprive any person of life, liberty, or property, without due process of law." Although the Supreme Court nor the First Circuit have not made it clear which of the two Amendments applies to PR, they have stated the doctrine of due process applies to the island.

14. Plaintiff has a property right on the money owed by the Commonwealth of PR and it also has a liberty interest in that money guaranteed by the 5th and 14th Amendments. By enacting law 66-2014, the Commonwealth has interfered with the right plaintiff has under state law to get paid and at the same time, it has unlawfully altered the contractual relationship it has with the Government of PR.

15. Sections 28 and 29 of Law 66-2014 has converted a right to payment which plaintiff has pursuant to federal law into a discretionary payment scheme where the Commonwealth at its whim, determines to sparse payment of judgments though several years without payment of interest. This procedure can only be considered as arbitrary, capricious, shocking to the conscience and in clear violation of plaintiff's property and liberty interests of substantive due

5

process. Sections 28 and 29 of Law 66-2014 are repugnant to the Constitution and are therefore invalid and plaintiff has a right to a declaration to that effect.

b. Procedural due process

16. Plaintiff realleges paragraphs 1-15.

17. The 5th and 14th Amendment also guarantee procedural due process before a person is deprived of his liberty or property. These guarantees extend to plaintiff and are violated by sections 28 and 29 of law 66-2014.

18. Paragraphs 28 and 29 provide for the Government to determine if it has enough money to pay for the judgments it owes. However, neither section provides a procedure to challenge this determination by the Government. This lack of procedural due process violates plaintiff's constitutional rights and is repugnant to the United States Constitution since the deprivation of plaintiff's liberty and property rights requires at least a post-deprivation hearing to determine if in fact the Government is unable to pay the judgments against it. Given that plaintiff's procedural due process is violated by sections 28 and 29 of law 66-2014, it has a right to a declaration to that effect.

c. Impairment of contractual obligations

19. Plaintiff realleges paragraphs 1-18.

20. Article I, section 10, clause 1 of the United States Constitution prohibits any state from passing any "Law impairing the Obligation of Contracts." This prohibition, however, is not absolute and under certain particular circumstances a state can impair contractual. Both the US Supreme Court and the First Circuit have established a two-prong test to analyze whether a claim for impairment of contractual obligations is valid. See, *United Automobile, Areospace, Agricultural, Implement Workers of America International Union*, 633 F.3d 30 (1st Cir. 2011).

6

21. The "first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). There can be no doubt that sections 28 and 29 of law 66-2014 do just that.

22. Plaintiff has a contract with the Commonwealth that includes the wraparound payment mentioned above. The Commonwealth reneged on said payment in the past until a federal court imposed an injunction for future payment. Due to the 11th Amendment bar, the claims for past payment had to be take to state court, which issued judgments in favor of plaintiff in the amount of $51 million. This judgment created a creditor-debtor contractual relationship between plaintiff and the Commonwealth and sections 28 and 29 of law 66-2014 impair said contractual relationship. Before law 66-2014, plaintiff would be entitled to payment thirty-days after the judgment became final and if payment was not forthcoming after that, it would be entitled to interest and an order from the Court to place payment of said judgment in the next fiscal budget. All this has changed with sections 28 and 29 of law 66-2014.

23. At this time, plaintiff has to take whatever part of the $3 million the Commonwealth will pay to the consolidated judgment it paid. At this time, there was no payment for the year 2017. Moreover, plaintiff cannot, pursuant to law 66-2014, section 30, there is no new rights or causes of action created by the act and no procedure to challenge the Commonwealth's decision not to pay, no interest unless one year it decides not to pay. Clearly this is a substantial impairment, the first prong in the analysis.

24. The second prong in the test; "whether the impairment was reasonable and necessary to effectuate an important governmental purpose." *Aerospace,* at pages 41-42. At this stage, since the Commonwealth is impairing obligations in which it is involved, the statute is

7

given less deference than if it was not involved, but still it is given some deference. Law 66-2014 definitely claims, with some reason, that the Commonwealth suffers from economic woes and subsequently asked the Supervisory Board to allow Title III filing. The reasons stated in law 66-2014, however, do not justify the impairment that plaintiff suffers; they are both unreasonable and unnecessary, as explained *infra*.

25. As stated before, plaintiff provides medical services to the poorest strata of PR's society. Hence, it provides essential services to the people of PR. In its findings and legislative history of law 66-2014, the Commonwealth stresses the need to provide essential services and that the act's purpose, *inter alia*, is to provide such. For example, at page 3 of the English version of law 66-2014 (included here as Exhibit I), it states "[i]f the government does not have enough money to meet such obligations, the public employees' payroll, as well as other money disbursements that are essential to provide services to the people, will be in jeopardy." At page 5 of Exhibit I, it states:

> In accordance with the foregoing, by virtue of the State's police power, and pursuant to Sections 18 and 19 of Article II, and Sections 7 and 8 of Article VI of our Constitution, a serious economic and fiscal emergency is hereby declared in Puerto Rico, which renders necessary the approval of this special Act of socioeconomic nature to provide the State with the tolls to meet both its liquidity needs and the payroll of public employees, as well as to cover the costs of essential services offered to the people.

26. At page 54 of Exhibit I, it states:

Although the measures contemplated herein will result in savings, the size of the gap and the limited operating expenses basis after excluding the payroll and payments to public corporations, call for a broad and comprehensive reduction program, including the impact on the payroll, appropriations by formula, and <u>all those actions that may be taken without affecting essential healthcare, security and welfare services provided to the people</u>. (underlining ours)

27. At page 59 of Exhibit I, it states:

8

>For all of the foregoing, this Legislative Assembly deems it necessary to approve this Act <u>in order to guarantee the continuity of government operations and the general well-being of the Island, thus ensuring that essential services are provided to the people regardless the fiscal emergency undergone by the Island. . .</u> Therefore, this Legislative Assembly is fully empowered to adopt the socioeconomic measures herein in order to cut back on spending and, thus, prevent a government shutdown and <u>guarantee essential services to the people</u>. (underlining ours)

28. Further, section 2 of law 66-2014 makes several mentions of the law being necessary to manage the fiscal crisis, restore credit and the for the provision of essential services. Unfortunately, law 66-2014 was not able to restore PR's credit and it had to resort to a Title III filing. Experience shows that allowing the Commonwealth to take its own sweet time to pay judgments did not result in the reestablishment of the island's credit or in preventing further deterioration of its credit. Hence, law 66-2014 is an unreasonable and arbitrary exercise of police power that was not and is not necessary for the purposes stated in its Preamble, much less for the intended purpose of guaranteeing the provision of essential services to the people of PR. Moreover, law 66-2014 is not a temporary measure to deal with a liquidity problem. It is a permanent way for the Commonwealth to renege on its debts and continue with its negligent and defaulting ways.

29. Moreover, as the U.S. Supreme Court stated in *City of El Paso v. Simmons*, 379 U.S.509, 509 (1965)

>Of course, the power of a State to modify or affect the obligation of contract is not without limit.
>
>"[W]hatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would

9

permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them."[1]

30. Articles 28 and 29 of law 66-2014 deny plaintiff the means to enforce its contract against the Commonwealth, something federal case law prohibits. The way the statute is written the Commonwealth may determine year after year *per secula saeculorum* as long as it determines that it does not have enough money to pay the judgment and this determination cannot be challenged since law 66-2014 does not provide a procedure to do so. Hence, this is another reason the impairment of plaintiff's contractual obligations is unconstitutional.

31. Moreover, there are lesser measures than this draconian impairment to fulfill the legislatures intent. For example, the Government could have raised taxes further in 2014. Also, the Government could, as it is claiming now, could have reduced expenses by shrinking the number of agencies it had. Also, the Government could have furloughed employees involved in non-essential services or outright firing them. It could have actually engaged in a reduction of contracts and leases. Finally, given the emphasis of the legislature in providing essential services in the area of health, it could have exempted those providing health services from law 66-2104. Instead, the Commonwealth resorted to the draconian measure of paying whatever it wanted, whenever it wanted, to judgment creditors. This clearly violates the prohibition against impairment of contractual obligations, see, *Unite States Trust Co. v. Simmons*, 431 U.S. 1, 31 (1977)("Similarly, a State is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well.") Hence, plaintiff is entitled to a declaration that law 66-2014 impairs its contractual obligations with the Commonwealth of PR.

d. Law 66-2014 is unconstitutional as it is preempted by 11 U.S.C. § 903.

32. Plaintiff realleges paragraphs 1-32.

---

[1] Quoting *Home Building & Loan Assn. v. Blaisdell,* 290 U. S. 398, 290 U. S. 428, 439 (1934).

33. In *Puerto Rico v. Franklin California*, 579 U.S. __ (2016) the United States Supreme Court made it clear that 11 U.S.C. § 903 was applicable to PR and that a Commonwealth "law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition." A "composition is a method of adjusting among creditors rights in property in which all are interested." See, *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 585 (1935).

34. Law 66-2014 is a method of composition whereas the Commonwealth unilaterally changes the conditions of payment, stops paying interest and if the whim comes along, decides not to pay and leave for another year. This method of composition is preempted by 11 U.S.C. § 903 and thus unconstitutional. Plaintiff has a right to a declaration by this Honorable Court to that effect.

e. Law 66-2014 is unconstitutional as it is preempted by PROMESA section 303

35. Plaintiff realleges paragraphs 1-34.

36. As stated before, the Commonwealth is in Title III. Section 303(1) of PROMESA, 48 U.S.C. § 2163(1) states, *inter alia*, as follows:

> a territory law prescribing a method of composition of indebtedness or a moratorium law, but solely to the extent that it prohibits the payment of principal or interest by an entity not described in section 109(b)(2) of title 11, United States Code, may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium;

37. In the consolidated actions of Brigade v. García Padilla, 16-1610 (FAB), Opinion and Order issued on November 15, 2016, docket 140, Judge Besosa stated:

> Moreover, in the event that debt adjustment proceedings become necessary, the provisions of title III may effectively unwind the government's controversial actions. Section 303(1), for example, prohibits the application of any territory

law prescribing a method of composition of indebtedness or moratorium on the indebtedness of the territory or its instrumentalities to a creditor who does not consent to the composition or moratorium. PROMESA, § 303(1).

38. As in 11 U.S.C. § 303, PROMESA 303(1) precludes any territory in Title III from making use of any method of composition, which is exactly what sections 28 and 29 of law 66-2014 are. Hence, sections 28 and 29 of law 66-2014 are preempted by section 303 of PROMESA and are unconstitutional. Plaintiff has a right to a declaration by this Honorable Court to that effect.

f. Sections 28 and 29 of law 66-2014 are preempted by Medicaid Law

39. Plaintiff realleges paragraphs 1-38.

40. As stated before, states (and the Commonwealth) must make supplemental payments (generally referred to as "wraparound payments" and in this Report "WAPs") to each FQHC equal to the amount by which the FQHC's per visit cost-based or PPS rate exceeds the payment the FQHC received from the MCO. States must make these WAPs "in no case less frequently than every 4 months." 42 U.S.C. § 1396a(bb)(5). Moreover, every United States Court of Appeals that has considered the issue, including the First Circuit, has concluded that FQHCs have an enforceable right to obtain such payments by suing states under 42 U.S.C. § 1983 for prospective injunctive relief. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 74–75 (1st Cir. 2005); *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1011–13 (9th Cir. 2013); *New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Human Servs.*, 722 F.3d 527, 539 (3d Cir. 2013); *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 209–12 (4th Cir. 2007); *Cmty. Health Ctr. v. Wilson–Coker*, 311 F.3d 132, 136, 140 (2d Cir. 2002). This enforceable right is based on federal law.

41. Federal law requires that the Commonwealth pay plaintiff this wraparound payment but law 66-2014 requires that payment be differed. When state law forbids something that federal law requires, there is definite conflict and the state law is preempted, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963). Hence, federal law that requires said payment preempts sections 28 and 29 of law 66-2014 and is therefore, unconstitutional. Plaintiff has a right to a declaration by this Honorable Court to that effect.

g. Sections 28 and 29 of law 66-2014 has taken plaintiff's property without just compensation in violation of the 5th Amendment

42. Plaintiff realleges paragraphs 1-41.

43. The Fifth Amendment prohibit the Commonwealth from taking property without just compensation. In this case, sections 28 and 29 of law 66-2014 take away the payment of plaintiff's contract and judgment without any compensation. Moreover, sections 28 and 29 of law 66-2014 takes away the payment of interest as per the PR Rules of Civil Procedure and the right to have the Court order the Commonwealth to put the payment of the judgment in the next budget. All this without any compensation, in clear violation of the 5th or 14th Amendments. Hence, sections 28 and and 29 of law 66-2014 and are unconstitutional. Plaintiff has a right to a declaration by this Honorable Court to that effect.

h. Nothing in PROMESA allows the non-payment of federal obligations by the Commonwealth

44. Plaintiff realleges paragraphs 1-43.

45. Section 7 of PROMESA prohibits the "impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in

13

such territory." 48 U.S.C. § 2106. Both the Medicaid and Section 330 programs are the type of federally authorized or federally delegated programs protecting the health and safety of persons in the Commonwealth referenced in 48 U.S.C. § 2106. Hence, nothing in PROMESA precludes and actually it mandates payment by the Commonwealth of its debts to plaintiff. Hence, Plaintiff has a right to a declaration by this Honorable Court to that effect.

WHEREFORE: the Corporación de Servicios Integrales de Salud del Area de Barranquitas, Comerío, Corozal, Naranjito y Orocovis respectfully requests from the Honorable Court that it enter declaratory judgment declaring the following:

a. Sections 28 and 29 of law 66-2014 violate plaintiff's Substantive Due Process liberty and property interests and are therefore unconstitutional;

b. Sections 28 and 29 of law 66-2014 violate plaintiff's procedural due process rights and are therefore unconstitutional;

c. Sections 28 and 29 of law 66-2014 violate the constitutional prohibition against the impairment of contractual obligations and is therefore unconstitutional;

d. Sections 28 and 29 of law 66-2014 is preempted by 11 U.S.C. § 903 and are therefore unconstitutional;

e. Sections 28 and 29 of law 66-2014 is preempted by PROMESA section 303 and are therefore unconstitutional;

f. Sections 28 and 29 of law 66-2014 are preempted by Medicaid Law and are there unconstitutional;

g. Sections 28 and 29 of law 66-2014 has taken plaintiff's property without just compensation in violation of the 5th Amendment and this action is therefore unconstitutional;

14

h. Nothing in PROMESA allows the non-payment of federal obligations by the Commonwealth and actually requires payment of its contractual obligations with plaintiff and the judgments therein pertaining to past wraparound payments.

Respectfully submitted on this 29th day of December, 2017.

.

/s John E. Mudd
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787) 413-1673
Fax. (787) 753-2202
jemudd@yahoo.com