# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

In re:

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**

   **as representative of**

**THE COMMONWEALTH OF PUERTO RICO, et al.**
     **Debtors**

PROMESA
TITLE III

**NO. 17 BK 3283-LTS**

**(Jointly Administered)**

## MOTION TO FILE LEGAL BRIEF AS AMICUS CURIAE

TO THE HONORABLE COURT:

  Comes Now Gregorio Igartua, the undersigned attorney, and very respectfully states and prays:

1. That the herein appearing attorney is filing this Motion in this case to request the Honorable Court to appear as "Amicus Curiae".

2. That the arguments by the Financial Oversight and Management Board for Puerto Rico in their Motion of Opposition To The Motion To  Dismiss Title III Petition, that Puerto Rico is an unincorporated territory of the United States is legally incorrect, as it will be set forth below, and its judicial disposition by this Honorable Court has constitutional significance for the 3.5 million American citizens residents of Puerto Rico, including for the appearing attorney.

3. That the appearing attorney respectfully submits the legal opinion set forth below, supporting the constitutional legal status of Puerto Rico as that of a de facto incorporated territory of the United States, and as pertinent to such legal issue now before the Court.

**LEGAL OPINION:**

2

### *The de facto Incorporated Territory of Puerto Rico*

**I.  INTRODUCTION**

This opinion is submitted in support of the proposition that the legal relation that Puerto Rico has with the United States is that of a de facto incorporated territory in transit to statehood. Moreover, one that has a federalist relation as States do since its constitution was adopted in 1952.  It will be shown that today there is sufficient evidence for the Federal Courts to declare that Puerto Rico is an incorporated territory of the United States where the U.S. Constitution applies. The degree of incorporation of Puerto Rico to be like a state can be considered by implication as strong as to exclude any other view than that it is an incorporated territory of the United States (See, *Balzac v People of Puerto Rico*, 258 US 298, 306). (See also, R. Sam Garrett, Political Status of Puerto Rico: Brief Background and Recent Developments for Congress, Congressional Research Service, Dec. 28, 2016).

Considering the political relation that Puerto Rico has with the United States, the question that must follow within its proper legal context is: Can the Federal Government continue to "switch on and off" the applicability of the US Constitution to the  de facto incorporated territory of Puerto Rico, given the gradual legal, economic, political and social integration to the United States to be like a state since the year 1898? An analysis of this question and the answers to it are  set forth below:

**II.    THE UNITED STATES HAS GRADUALLY INCORPORATED
PUERTO RICO TO BE "LIKE A STATE."**

**II A 1)          US TERRITORIAL POLICY
ACQUIRED TERRITORIES BEFORE 1898**

Since the adoption of the US Constitution it is Congress, not the Federal Courts who  has the

authority to dispose of territories. US Constitution Art. IV Paragraph 3 Clause 2 (Territorial Clause) states as follows:

> …."Congress is empowered to make all needful Rules and Regulations respecting the Territory belonging to the United States…"

Within this authority in 1787 Congress adopted the Northwest Ordinance, which established the requirements for territories north of the Ohio River to become states. These included: a geographical area, a minimum population, an organized republican form of government, (Article IV Section 4 Guarantee Clause) and a territorial delegate to Congress (Now Resident Commissioner for Puerto Rico). Thus the Ordinance set the National policy that was expected for territories to become States once they met the requirements as set forth in the Ordinance.

Attorney Gregorio Igartua, is an American citizen resident of Puerto Rico. As an attorney he has been litigating cases in the Federal Courts for over twenty five years dealing with the right to vote in federal elections for the American citizens of Puerto Rico, and with the territorial incorporation of Puerto Rico to the United States, ad honorem. (e.g., Igartua v US 229, F3d 80, 1ˢᵗ Cir. 2000; *US v Puerto Rico Police Dept. 922 F Supp. 2ⁿᵈ 185*). As an American citizen, he has an interest in promoting solutions to the fiscal problems faced by the Government of Puerto Rico in a manner consonant with the laws and Constitution of the United States of America, that the social, economic, legal and constitutional solutions for Puerto Rico be solved within the proper context of what the political and legal relation of Puerto Rico to the United States really is presently, that of a de facto incorporated U.S. territory where 3.5 million American citizens by birth live, not on what they could hypothetically be.

That territories acquired before 1900 to be admitted as states can be evidenced also from judicial opinions. For example, in *Holden v. Hardy*, 169 U.S. 366, the Court said:

> "...The territories acquired by Congress, whether by deed of cession from the original states, or by treaty with a foreign country, are held with the object, as soon as their population and condition justify it, of being admitted into the union as states, upon an equal footing with the original states in all respects...."
>
> "...In the future growth of the nation, as heretofore, it is not impossible that Congress may see fit to Annex territories whose jurisprudence is that of the Civil law. One of the considerations moving to such annexation might be the very fact that the territory so annexed should enter the Union with its tradition, laws and systems of administration unchanged..."

## II A 2)   U.S. ACQUIRES PUERTO RICO IN 1898

Puerto Rico was in 1898 an overseas province of Spain. (Constitution of the Spanish Monarchy, June 30, 1876 Article 89). Over the years Puerto Rico had sent 100 senators and deputies to the Spanish Parliament in Madrid. By the Treaty of Paris Spain ceded Puerto Rico to the United

4

States in 1898 (Art. II Treaty of Paris- 30 Stat. 1754). The Treaty granted Congress full powers over

Puerto Rico. Article IX of the Treaty specifically provided: "…The civil rights and political status of

the native inhabitants of the territories hereby ceded to the United States shall be determined by

Congress…." . Within this original legal source of authority, Congress started a local process of

gradual incorporation over the years adopting legislation to organize the government of Puerto Rico to

be compatible with its federalist structure, like states are to the federal government. In fact, as will be

shown, Puerto Rico has been legally incorporated to be like a state  gradually to the same (or more)

extent as any other territory before becoming a state, or as the territories that were incorporated in

transit to statehood under the Northwest Ordinance.

**II A 3)        US TERRITORIAL POLICY AFTER 1898**
**INCORPORATED AND NON**
**INCORPORATED TERRITORIES BY JUDICIAL INTERPRETATION**

*INSULAR CASES OF 1901*

In 1901 the U.S. Supreme Court decided the Insular Cases, usurping congressional powers for

U.S. territorial policy as set forth in Article IV, Section 3, Clause 2 of the U.S. Constitution. In the

Insular Cases the U.S. Supreme Court established its own judicial interpretation of when the U.S.

Constitution would apply to newly acquired territories. The Court decided that newly acquired

territories could be incorporated by the United States to be like states, or could be kept temporarily as

non-incorporated until Congress determined that the residents of those territories could be considered

to be part of the American Family, at which time the U.S. Constitution would fully apply.

The Court, however, did not offer the criteria that the federal Courts and Congress would use

to determine when a newly acquired territory was fit to be part of the American Family, and thus

would be ready for the full application of the Constitution of the U.S. In failing to do so the Court left

the door open for the federal courts and for Congress to discriminate against the American citizens

5

residing in Puerto Rico, regardless of where they were born, just as it did concerning American

citizens of African ancestry in *Plessy v. Ferguson*. (163 US 537. 1896). The U.S. Supreme Court gave

permission to the federal courts and Congress to "switch on and off" the applicability of the U.S.

Constitution in Puerto Rico on a case by case basis, as will be shown. This discriminatory practice

has continued for more than 115 years.

Three opinions qualifying Puerto Rico as a non-incorporated territory are cited below:

**II A 3 (a)      *DOWNES V. BIDWELL 182 US 244; 1901***

In the Downes case of 1901, as in other cases similarly decided by the US
Supreme Court and known as the Insular Cases, the Court said:

". . . .Incorporation into the United States of territory acquired by treaty of cession, in
which there are conditions against the incorporation of the territory until Congress
provides there for, will not take place until in the wisdom of Congress it is deemed that
the acquired territory has reached that state where it is proper that It should enter into
and form a part of the American family......

If those possessions are inhabited by alien races, differencing from us in
religion, customs, laws, methods of taxation, and modes of thought, the administration of
government and. justice, according to Anglo-Saxon principles, may for a time be
impossible ….." (See also, e.g., *DeLima v Bidwell*, 182 U.S. 1; (1901)).

**II A 3( b)      *BALZAC V. PUERTO RICO 258 US 298, at 312-13 (1922)***

This case involved a claim to trial by jury in a criminal prosecution in which the Court

concluded that it was unavailable in Puerto Rico because trial by jury was not a fundamental

right, thus ignoring one of the pillars of the Common Law system, a right dating at least back to

the Magna Carta. The application of the Constitution was to be determined by the locality of

the person, not the person's citizenship. US Constitution Amendment VI was found not to apply

to a territory that belonged to the United States but was not incorporated, and where its

population was not familiar with the jury system. The Court Stated:

"… As previously stated, under the Insular Cases doctrine only fundamental constitutional
rights extend to unincorporated United States territories, whereas in incorporated

6

territories all constitutional provisions are in force.

## II A 3 ( c )    *HARRIS V. ROSARIO (446 US 651, 1980).*

*Harris v. Rosario*  is another judicial decision decided under the veil of the Insular Cases

doctrine affecting Puerto Rico adversely. It was decided under wrong and incorrect legal bases. This

case questioned the validity of policy under which Puerto Rico received less assistance than states do

in program of Aid to Families with Dependent Children. (AFDC) The Court held that there was a

rational basis for the statutory classification since:

1)      Puerto Rico's residents do not contribute to the Federal Treasury. (Incorrect.
        See US Tax Code Section 933).
2)      the cost of treating Puerto Rico as a state for purposes of AFDC assistance
        would be high. (Incorrect and discriminatory).
3)      granting greater AFDC benefits could disrupt the Puerto Rican economy.
        (Discriminatory- Paraphrasing Justice Thurgood Marshall's dissent, … "those
        programs designed to help those who need them the most should not be
        extended to Puerto Rico's poor out of concern that if extended they would
        disrupt the local economy…."

The cases cited above do not define any specific legal criteria to be followed by the courts to
implement non incorporation or incorporation status to a territory. From a reading of the cases above
one can conclude  that the Courts have adopted expressly, or by implication  to classify a territory as
non-incorporated, in this case Puerto Rico,  using discriminatory arguments as follows:

1)  Puerto Rico is a non-incorporated territory of the United States.
2)  The 4th , 5th and 6th  generation American citizens of Puerto Rico are still not part of the
    "American Family", and will only be apt when Congress determines.
3)  Puerto Rico is a territory belonging to the United States, but is not a part of the United States.
4)  Only fundamental constitutional rights extend to the American citizens residing in Puerto Rico,
    notwithstanding congressional and judicial dispositions to the contrary.
5)   The American citizens of Puerto Rico don't pay Federal taxes. (Incorrect as will be shown in
    this article. U.S. Tax Code Section 933.)
6)  The cost of treating Puerto Rico like a state,  like an incorporated territory, would be big for
    purposes of federal assistance (Incorporated with parity in federal funds like states).
7)  Granting greater benefits to Puerto Rico like to states would disrupt the Puerto Rico economy,
    as if it were not disrupted already.
8)  The blessings of a free government under the Constitution cannot still be extended to the
    American citizens of Puerto Rico.
9)  Puerto Rico is still inhabited by an alien race. (Aborigines.)

7

The three cases cited above classifying Puerto Rico as a non-incorporated territory have been used in the past century by the Federal Courts to discriminatorily switch on and off the U.S. Constitution in controversies arising in or in relation to Puerto Rico, blatantly ignoring congressional policies that have gradually incorporated Puerto Rico.  As a consequence, the in transit to statehood process that the incorporated status carries with it is in "detente". How discriminatory and incorrect is the non-incorporated treatment given to Puerto Rico by the Courts will be shown below. Should a Federal Court dispose of a case under such discriminatory premises? Can such discriminatory treatment be applied to all future judicial dispositions concerning Puerto Rico? Does the judicial theory of incorporation fit within the U. S. constitutional framework? Before considering the incorporation process of Puerto Rico it is pertinent to consider that the  non-incorporation cases cited above were decided with dissident opinions which evidence that from the outset the majority supporting the non-incorporation theory confronted opposition.

## II  A 4        COMMENTS IN OPPOSITION TO THE INSULAR CASES- *DOWNES V.  BIDWELL*, 244 US (1901)

-        This case was decided with a split vote (5-4) by the Court. Hon. Supreme Court Judge Harlan wrote a dissenting opinion which may be quoted in part as follows:

> "….The idea that this country may acquire territories anywhere upon the earth, by conquest or treaty, and hold them as mere colonies or provinces,-the people inhabiting them to enjoy only such rights as Congress chooses to accord to them is wholly inconsistent with the spirit and genius as well as with the words, of the Constitution…"

> I reject altogether the theory that Congress, in its discretion, can exclude the Constitution from a domestic territory of the United Sates acquired, and which could only have been acquired, in virtue of the Constitution…."

> (See: *DeLima v, Bidwell*, *182 US 1 (1901)*.  Puerto Rico is part of the U.S. for tariff purposes. Ironically the court said: "We are unable to acquiesce in this assumption that a territory may be at the same time both foreign and domestic.

## COMMENTS IN OPPOSITION TO THE BALZAC DECISION (258 US 298, 1922)

The Court refused to acknowledge that American citizenship granted in 1917, the presence of a U.S. Federal District Court in San Juan, military service, "extension of revenue, navigation, and immigration" laws, and the use of U.S. stamps were de jure and de facto acts of incorporation.

- **COMMENTS IN OPPOSITION TO THE HARRIS V ROSARIO DECISION (446 US 651, 1980)**

The Harris case was decided on wrong premises. It is incorrect to say (as in Harris) that the American residents of Puerto Rico do not contribute to the Federal Treasury, they do. Today the American citizens residents of Puerto Rico pay more than three billion dollars annually to the US Treasury in taxes from different sources, as required by the Federal Income Tax Law, but with a discriminatory applicability to Puerto Rico by unequal transfer of payments in Federal Funds. There cannot be any rational basis for Congress to discriminate against a class of citizens, the 3.5 million American citizens who live in Puerto Rico. To treat any American citizen differently on a basis other than on individual merit fulfills the dictionary definition of discrimination, especially taking into consideration the fact that the Equal Protection Under the Laws clause of the U.S. Constitution applies in Puerto Rico. ( U.S. v. P.R. Police Dept. 922 FS 2nd. 185 (2013).

Since the Insular Cases were decided an intention of Congress to incorporate new territory into the Union is not to be admitted without express declaration or an implication so strong as to exclude any other view. (*Balzac v Puerto Rico, 258 US 306*). Moreover, nowhere in the U.S. Constitution is a non-incorporated or incorporated territory defined, nor even referred to.

## II (B)       LEGAL INCORPORATION PROCESS OF PUERTO RICO

Contrary to non-incorporation status the legal incorporation process for Puerto Rico by Congress, the Federal Courts and by the Executive Branch to be like a state fits into the U. S.

9

Constitutional framework. Consider that that process has been gradually implemented by Congress, ignoring the Insular Cases and/or other judicial dispositions denying constitutional applicability to Puerto Rico. As a consequence, such a degree of incorporation of Puerto Rico to be like a state can be considered by implication so strong as to exclude any other view than that it is an incorporated territory of the U.S.

Consider the de facto territorial and incorporation process of Puerto Rico to be like a state since 1898 as evidenced below:

**II (B)   (1)   STATEMENT OF GENERAL NELSON A. MILES—1898**

On July 28, 1898, three days after the landing of American troops at Guánica, Puerto Rico General Nelson A. Miles, who commanded the expeditionary force, proclaimed:

" … In the prosecution of war against the kingdom of Spain by the people of the United States, in the cause of liberty, justice and humanity, its military forces have come to occupy the island of Puerto Rico. They come bearing the banner of freedom inspired by noble purposes.....

They bring you the fostering arms of a free people, whose greatest power is justice and humanity to all living within their fold....

They have come not to make war on the people of the country, who for centuries have been oppressed; but, on the contrary, to bring protection, not only to yourselves, but to your property, promote your prosperity and bestow the immunities and blessings of our enlightenment and liberal institutions and government….

**II B  (2)   OATH OF LOYALTY BY P.R. GOVT. OFFICIALS 1898**

Since 1898 all Civil Government officials in Puerto Rico have been required to subscribe the following document:

…"And, I also swear, that I will support with and defend the United States Constitution against all enemies, exterior or interior; I will accept it with loyalty and submission and that I make this commitment freely and without reserve or purpose to evade it"….

**II B  (3)   THE HENRY CARROL REPORT / EXECUTIVE ORDER 1899**

President William McKinley sent a commission headed by Henry K. Carroll to Puerto Rico to study all aspects of the Island in 1899. The commission studied government, commerce, industry, roads, tariffs and currency. The commissioners held

10

hearings in many towns. The report was submitted to President McKinley on October 6, 1899. Some of the recommendations were:

1. "That the Constitution and laws of the United States be extended to Porto Rico; that all citizens..............be declared citizens of the United States...............

2. "That a Territorial form of government, similar to that established for Oklahoma, be provided for Porto Rico.............

3. "That the legislative power shall extend to all rightful subjects of legislation consistent with the Constitution of the United States...................

Practically all recommendations were ratified by Congress.

### II B  (4)        1900- FORAKER ACT. (31 Stat. 77)

Shortly after the Treaty of Paris was ratified, the Foraker Act, being the Act of April 12, 1900, (31 Stat. 77), became law. This legislation established a civil government for Puerto Rico, including provisions for courts, and it extended the statutory laws of the United States not locally inapplicable. The President was authorized to appoint, with the consent of the Senate, the Governor of Puerto Rico, and its chief executive officers, the justices of the Supreme Court of Puerto Rico, and the judges of the local United States District Court.

### II B (5)        JONES ACT. -1917 (39 Stat. 951)- AMERICAN CITIZENSHIP

In 1917 Congress adopted the Organic Act, also known as the Jones Act. (39 Stat. 951). This legislation: accorded the Federal District Court jurisdiction over all cases cognizable in the district courts of the United States; generally granted Puerto Rico citizens United States citizenship, and codified a bill of rights which remained in effect until 1952 with nearly all of the personal guarantees found in the United States Constitution. The provision was continued concerning the applicability of the statutory laws of the United States to Puerto Rico.

In relation to American citizenship for the people of Puerto Rico Congress also legislated in 1951 so that: all persons born in Puerto Rico on or after April 11 1899, and before January 13, 1941

11

in the jurisdiction of the United States, who subject to the jurisdiction of the United States, who

resided on January 13, 1941 in Puerto Rico or other territory over which the United States had

jurisdiction under any other statute, were citizens of the United States as of January 13, 1941. All

persons born in Puerto Rico on or after January 13, 1941, and subject to the jurisdiction of the United

States, become citizens of the United States at birth. (UDCS 1402). (See *Afroyim v. Rusk*. 387 US.

253, at 268 (1967); *Santori v. US* 30 F 3' 126; and, *Lozada Colon v. US Dept.. of State,* #97-1831,

US District, Court, 4/23/1998). Thus, by granting American citizenship by birth to the residents of

Puerto Rico, these became part of the national federalist cooperative affair, in which the citizens

became part of the country. (Part of the "American Family") (Id. Afroyim). (See also, U.S. *v Lucienne*

*D' Hotelle De Rexach*, 558 F2d 37 (1977).

### II B (6)          1947 – US Const. Art. IV Section 2

In 1947 Congress granted to Puerto Rico the applicability of the "Same Privileges and

Immunities "clause (US Const. Art. IV- Section 2.1). (64 Stat. 319 ch. 444, Art.4). Consider that the

U.S. Supreme Court proclaimed in 1905 that Alaska was an incorporated territory where the U.S.

Constitution fully applied because the above cited clause was extended to Alaska and because its

Federal District Court was assigned to the 9th. Circuit Court of Appeals, even though Alaska did not

have a constitution until 50 years later. (1956). ( Rasmussen v. U.S. 197 US 516, 1905).

### II B (7)          1948 - RIGHT TO ELECT A GOVERNOR

In 1947 Congress granted the qualified voters of Puerto Rico for the first time the right to elect
their own governor by popular suffrage. (Act of Aug. 5, 147, c 490, 61 Stat. 770).

### II B (8)          RIGHT TO ADOPT A CONSTITUTION AS IN STATES

In 1952 Congress enacted the Puerto Rican Federal Relations Act, (64 Stat. 319). (Also
referred to as Law 600). One important disposition of the "Law" was that, within the jurisdictional
territorial boundaries, the People of Puerto Rico were authorized to adopt their own constitution. Like
those of the different "states" of the Union, it provided for a republican form of government, and was
adopted with the consent of the people of Puerto Rico subject to the approval of the US Congress,

12

which it did subject to the condition that any amendment or revision be consistent with the applicable provisions of the Constitution of the United States. (66 Stat. 327). It was stated in Congress that "... as regards local matters, the sphere of action and the methods of government bear a resemblance to that of any State of the Union.." (S Rep. No. 1270, 82 d Cong, 2d Sec., 6 1952). (Compare with, Art. IV - Section 4 - US Constitution – Guaranty Clause). (With the adoption of the constitution Puerto Rico ceased to be a U.S. Territory ruled under an Organic Act of Congress, unlike the other territories and D.C. )

The Preamble reads in pertinent part as follows:

…."We, the People of Puerto Rico, in order to organize ourselves politically on a fully democratic basis, do ordain and establish this Constitution for the commonwealth which in the exercise of our natural rights, we now create within our union with the United States of America. In so doing, we declare:…

….The democratic system is fundamental to the life of the Puerto Rican community…

….We understand that the democratic system of government is one in which the will of the people is the source of public power, the political order is subordinate to the rights of man, and the free participation of the citizen in collective decisions is assured…

….We consider as determining factors in our life our citizenship of the United States of America and our aspiration continually to enrich our democratic heritage in the individual and collective enjoyment of its rights and privileges; our loyalty to the principles of the Federal Constitution…."

The union with the United States was considered as irrevocable. (Don Luis Muñoz Marin, Gov. of Puerto Rico, Proclamation #10, July 25, 1952, Creation of the Commonwealth of Puerto Rico).

In Art. VIII of the PR Constitution the federalist relation of Puerto Rico with the Federal Government under the "Supremacy Clause, like states have, was accepted by the People of Puerto Rico. (See US Const. Article VI). The approval of the Constitution to organize a local government (like for "states"), with the requirement that it, or any amendment or revision, be consistent with the applicable provisions of the Constitution of the United States, particularly with its Preamble;

- by the free and voluntary direct vote of the American citizens residents of Puerto Rico,
- its free and voluntary transmittal to Congress by the President of the United States,
- and, the free and voluntary ratification by direct vote of the members of the Congress,

was a democratic process carried under the veil of US Constitutional requirements. It was a democratic commitment carried on with the mutual consent of the People of the United States and by the People of Puerto Rico, all American citizens, by American citizens and for American citizens (Compare with U.S. Const. Art. IV - 4). It was a democratic commitment by the United States to the People of Puerto Rico, and the legal basis to support incorporation of Puerto Rico to the US has to be considered as supported by that commitment.

13

The autonomy granted to Puerto Rico with the adoption of the Constitution was to rule its internal affairs like states do, in a federalist relation where the Federal Government has supremacy over the sovereignty of the territory as over that of the states. (U. S. Constitution, Art. VI) It is pertinent to emphasize that no political arrangement or association other than legal territorial incorporation was adopted in 1952 by the direct vote of the People of Puerto Rico and ratified by Congress.

Within this context it is also pertinent to consider how the process has been legally interpreted. Of particular interest:

--- House Majority Leader John McCormick in approving the P.R. Constitution stated: "… it is a new experiment turning away from territorial status … it is between the territorial status and statehood, 98 Cong. Rec. 5728 (1952 c)…."

--- "....the procedure provided in "Law 600 was carried out. "As to substance Law 600 does not differ at all from the enabling acts passed in the procedure for admission into the Union of new states..." Rafael Hernandez Colon, The Commonwealth of Puerto Rico: Territory or State. P.R. Bar Journal 207, at 239 (1959). (Honorable Rafael Hernandez Colon is a former Secretary of Justice of Puerto Rico, 1966; also, an Ex-Governor of Puerto Rico) (1972-1976, 1984-1992). (See also. G. Igartua. Muñoz El Americano 2005).

As a result of the procedure of Law 600 the Puerto Rico government was presently and permanently restricted by federal law and federal principles. (*Hernandez Agosto v. Romero Barceló* 594 FS 1390). Evidently this includes democratic and human rights principles, (Id. 48 USCA 731 (b)). (See also, *Consentino V. International Longshoremen Assn. et. Als.* 126 FS 420); Examining *Board v. Flores* 426 US 572 (1976)). (See *Hon. .Judge Gustavo A Gelpi* "Mensaje en Ocasión de los Actos Conmemorativos del Quinquagesimo Aniversario. La Constitución del Estado Libre Asociado. (July 25,2002)" Congress accorded Puerto Rico the degree of autonomy and independence associated with States of the Union. (*US v Cirino* 419 F.3d 1001 1004 (9th Cir. 2005; U.S. v. Quiñones 758 F.2d 40, 42 (1st Cir. 1985).

## II B (9)   ACTS OF   INCORPORATION OF PUERTO RICO BY THE
FEDERAL   JUDICIAL BRANCH

With respect to the Federal Judicial Branch in Puerto Rico, the Federal District Court of

Puerto Rico is included as a judicial district of the United States; and in matters of jurisdiction,

powers, and procedures, it is in all respects equal to other United States District Courts. Rules of

Federal criminal and civil procedure are applicable. Diversity jurisdiction of American citizens

residents in states and of those residing in Puerto Rico apply in the local Federal District Court as in

states. (Compare with Art. III U.S. Const.). (See also: "…the Puerto Rico Courts provide an "adequate

state forum" for the adjudication of federal constitutional claims…." *Coors Brewing Company v.*

*Mendez –Torres, Secretary of the Treasury of P.R.*, No. 11-1559- 1st Circuit April 27, 2012).

Every year hundreds of cases originating in Puerto Rico are judicially disposed of by federal

courts basing their decisions on the applicability of the U.S. Constitution and federal laws to Puerto

Rico.  Consider  the  following  FEDERAL  JUDICIAL  OPINIONS  OF  CONSTITUTIONAL

APPLICABILITY TO PUERTO RICO:

>>     *U.S. Const. Amendment 1,  Balzac v People of Porto Rico, 258 U.S. 298, 314 (1922),*
       *implies that the First Amendment applies to Puerto Rico.*
>>     *Art. I Sect. 10 Buscaglia v. Ballester, 162 F 2d 805 (1st Cir. 1947), cert. denied. 336 U.S.*
       *816 (1947).*
>>     *U.S. Const. Amendment XIV, Examining Board v. Flores de Otero, 426 U.S. 572,599-601*
       *(1976).*
>>     *U.S. Const. Amendment 4, Torres v. Puerto Rico, 442 U.S. 465 (1979).*
>>     *U.S. Const. Amendment 8, Feliciano v. Barcelo, 497 F. Supp. 14, 33 (D.P.R. 1979)*
>>     *Art.1 Sect. 8.c Sea-Land Services. Inc. v Municipality of San Juan, 505 F. Supp. 533)*
       *(D.P.R. 1980).*
>>     *US Const. Amendment XI - Ezratty v Puerto Rico, 648 F 2"' 770, (1981) - The principles*
       *of the Eleventh Amendment which protect a state from suit without its consent, are fully*
       *applicable to the Commonwealth of Puerto Rico.*
>>     *U.S. Const. Amendment 11, Fernandez v. Chardon, 681 F. 2d 42 (1st Cir.1982).*
>>     *U.S. Const. Amendment XIV, Rodriguez V. Popular Democratic Party, 457 U.S. 1. 7-8*
       *(1982).*
>>     *Art. IV U.S. Const. Sect. 1,  Americana of Puerto Rico v. Kaplus, 368 F. 2d 431 (3d Cir.*
       *1966). See also 28 U. S.C. 1738 (1988).*
>>     *Dormant Clause applies in Puerto Rico -  Trailer Marine Transport v. Rivera 977 F2d 1st*
       *Cir.(1992) (U.S. Const. Art. 1 Section 8).*

**JUDICIAL OPINIONS THAT ARE OF PARTICULAR IMPORTANCE TO THE
INCORPORATION PROCESS**

**---** *Consejo de Salud Playa de Ponce v Rullan* – 586 FS 2nd (2008). Hon. Judge Gustavo
Gelpi holding Puerto Rico is an incorporated territory of the United States.

      "....The court, rather today holds that in the particular case of Puerto Rico, a
      monumental constitutional evolution based on continued and repeated congressional
      annexation has taken place. Given the same, the territory has evolved from an
      unincorporated to an incorporated one. Congress today, thus, must afford Puerto

Rico and the 4,000,000 United States citizens residing therein all constitutional guarantees. **To hold otherwise, would amount to the court blindfolding itself to continue permitting Congress *per* omnia saecula saeculorum to switch on and off the Constitution...."**

--- *U.S. v Laboy – 553 F3d 715 (2011)*, In this case the U.S. Dept. of Justice argued for the Applicability of U.S. constitutional provisions. The Court said: "…. These arguments demonstrate only that Puerto Rican sovereignty is of an extent and character similar to that of States…." Congress incorporation of Puerto Rican connections is *unambiguous*. Opinion by (Retired Supreme Court Judge Sandra Day O'Connor in this case by special assignment). In this case the U.S. Dept. of Justice supported Plaintiff's US constitutional applicability to Puerto Rico related to a judgment by a state Court in Puerto Rico, while simultaneously litigating to deny it, in opposition to Plaintiffs in *Igartua* v *U.S.* before the Appeals Court (1st. Cir.) related to a complaint to vote in federal elections.  Discriminatorily, and ironically the U.S. Dept. of Justice District Attorney in his brief in *U.S. v. Laboy* cleverly used as supporting arguments the same arguments that Igartua used in his brief in *Igartua v. U.S.* in support of his request  for residents of Puerto Rico to elect voting representatives to Congress. In *Igartua v. U.S.* the U. S. Attorney took the opposite stance, that is, he argued vigorously that the U.S. Constitution does not fully apply in Puerto Rico. Ethical ?

--- *U.S. v. Puerto Rico Police Dept. 922 F Supp. 2nd 185, (2013).*

In said case the U.S. Dept. of Justice filed Complaint at ensuring that the U.S. Constitution  applies in Puerto Rico to all American Citizens, and even to illegal aliens. There the U.S. Department of Justice argued as follows:

**-Pleading # 7:** This action is brought to enforce the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.

The case was settled by mutual agreement and the Government of Puerto Rico was forced to pay a penalty of $100 million over a 10 year period to ensure the P.R. Police Department would guarantee the security of the American citizens in Puerto Rico under the First, Fourth and Fourteenth amendments to the U.S. Constitution.

--- *US v Mercado Flores* (109 FS 3d , 467 2015, GAG, DPR).

"… Puerto Rico is no longer a mere unincorporated territory of the United States…"

"…Puerto Rico is a U.S. Territory which is between being incorporated and being a state, it is a commonwealth…."

--- *US v. Rivera Hernández) (155 F Supp. 3d 137-2015)*
P.R. is indeed  a state for purposes of the Sherman Antitrust Act, as    argued by the U.S. Dept., of Justice.

16

**---** *Wal-Mart v Puerto Rico* - (No. 16-1370, 16-1406)

The First Circuit Court of Appeals declared illegal a Puerto Rico Government tax on Wal-Mart because it:

1.  Violated the Dormant Clause of the US Constitution.
2.  Violated the Equal protection Clause
3.  Violated the Federal Relations Act.
4.  Was Against the Environmental Protection Agency

**---** *Igartua v US* - at pg. 23, #15 -1336, Nov 23, 2016, 1st Cir., 2016 (626 F3d 592, 1st Circuit 2016).

"… Absent a clear constitutional intent to deny Congress the power to treat Puerto Rico as a state for purposes of representation in the House the broad language of the Territorial Clause seems at least to provide a clearer source of power to enfranchise non state citizens than does Seat of Government Clause (D.C. Residents)…."

**NOTE:** The arguments of the U.S. Dept. of Justice in the above mentioned cases, supporting or requiring US Constitutional applicability to Puerto Rico, are in direct opposition to the arguments of the U.S. Dept. of Justice as Amicus Curiae in other cases, litigated in 2015-2016, as in the case of Commonwealth of P.R. v. Sanchez Valle, Petition of Certiorari # 15-108. In the Sanchez Case the U.S. Dept. of Justice opposed constitutional applicability of the Double Jeopardy Clause in Puerto Rico. This is another example of the discriminatory litigation practice of the US Dept. of Justice to cases related to Puerto Rico to switch "on and off" the constitution as it conveniently pleases, a practice that needs to be judicially disallowed. Moreover, the attorneys for all parties in the Sanchez case ignored to mention and/or inform the Supreme Court in their Brief the cases of incorporation cited above which are the most recent cases which support incorporation. In practice the attorneys litigated the case as if Martin Luther King would support equality for Americans of African ancestry using the arguments of the Supreme Court Opinion in *Plessy v Ferguson* (163 US 537, 1896).

In short, under the discriminatory statements adopted by the US Supreme Court of non-incorporation, the American citizens of Puerto Rico were left out of the US constitutional benefit of the double jeopardy clause in the case of *Commonwealth of Puerto Rico v Sanchez Valle* (USSC, 15-108).  Under the same argument Puerto Rico was left defenseless against its creditors, like no other United States jurisdiction in the case of *Commonwealth of Puerto Rico v Franklin Trust (15-233, 2015 California Free Tax Trust)*.  On the other hand, simultaneously Puerto Rico was ordered to comply with the payment of a penalty of $100 million dollars to guarantee the applicability of the First, Fifth and XIV Amendments of the US Constitution to the American citizens of Puerto Rico for civil rights purposes. ( U.S. v P.R. Police Dept. Supra).

### II B (10)      FEDERAL LAWS APPLY IN PUERTO RICO (39 STAT 954- LAW 600 SECTION 9)

Congress disposed that the laws of the United States, which are not locally inapplicable, apply in Puerto Rico with the same effect and to the same extent and validity as in the United States. Every year hundreds of laws enacted by Congress are made applicable to Puerto Rico as if it is a state. (This includes tax laws).

### II B (11)      U.S. AGENCIES TREAT PUERTO RICO AS A STATE

All U. S. Agencies and /or subdivisions of the Executive Branch treat Puerto Rico similarly as a "State", and many have offices in Puerto Rico.  Every year hundreds of regulations adopted for applicability to the 50 states are enacted by Federal Agencies to Puerto Rico also as if it is a state. There are more than 9,000 Federal Government Civil Service employees in Puerto Rico.

### II B (12)      FEDERAL TAXES PAID FROM    PUERTO RICO TO THE U.S. TREASURY

Most Federal internal revenue laws are applicable within the jurisdiction of Puerto Rico as if Puerto Rico were a state, to the extent that in certain categories more taxes are paid to the Federal Treasury than from some states. The Internal Revenue Service operates several offices, and US Customs Service also operates in Puerto Rico.

In 2014 the residents of Puerto Rico contributed more than three billion dollars to the U.S. Treasury, contributed more to the U.S. Treasury in Social Security (FICA) taxes than Employees and Employers in some states, contributed more to the U.S. Treasury in Unemployment Insurance taxes than more than the residents of 15 states. (IRS 2014 Highlights).

18

## II B (13)       FEDERAL ELECTORAL PROCESS IN PUERTO RICO

The American citizens residing in Puerto Rico have been sending voting delegates to the quadrennial conventions of both main political parties for over 50 years. Presidential primaries have been held in Puerto Rico over the past 35 years as in the states.

## II B (14)       PARTICIPATION IN WORLD WARS BY AMERICAN CITIZENS RESIDENTS OF PUERTO RICO

Thousands of American citizens residents of Puerto Rico have defended democracy and the Nation in military conflicts in which the Nation has been involved since 1917.

In summary "[t]he Puerto Rico of the present, is one which Congress pursuant to Article IX of the Treaty of Paris in 1898, and pursuant to the territorial clause (US Const. Art IV), has assimilated and integrated gradually over the years in the very image and likeness of the United States system of government and laws,  in which an Article III Federal Court sits, and under a federalist relation like states.

## WHY IS THE NON INCORPORATION TERRITORIAL STATUS DOCTRINE STILL BEING DISCRIMINATORILY APPLIED TO PUERTO RICO ?

Several factors can be identified as the reason for why the discriminatory applicability of the non-incorporation territorial policy to Puerto Rico still continues:

---It is a contradictory and confusing policy adopted as an interpretation of the U.S. Constitution by the U.S. Supreme Court, limiting newly acquired territories to a non-incorporation status, one where the Constitution of the U.S. does not apply in full, in a Nation where the Constitution fully applies. This doctrine has left the door open for Federal Courts to switch the U.S. Constitution "on and off" on a case by case basis, with the U.S. Dept. of Justice arguing that a specific clause of the Constitution applies, while in another contemporaneous case arguing that that same clause does not apply.

---      The Judicial Branch, specifically the US Supreme Court, usurped by interpretation with its non-incorporation theory the constitutional mandate that it is Congress who has the power to adopt the rules and regulations for territories under US Const. Art. IV- Section 3,  and Congress has actually moved Puerto Rico to be a de facto incorporated territory or to be like a state for the purpose of many federal laws.

---      Absence of judicial criteria of what qualifies a territory as non-incorporated or incorporated has provoked confusion and has led to an arbitrary practice of the      U.S. Dept. of Justice to discriminatorily and selectively support U.S. constitutional applicability in some cases and not in others.

---      Some politicians in Puerto Rico, including leaders of the Popular Democratic Party, continue to promote a political status where the American citizens residing in Puerto Rico do not participate in federal elections. They do not wish to accept the fact that such a   status does not fit within the framework of the Constitution of the U.S. ( Amend. XIV

19

and XV). They and those in Congress who support them are not aware of the fact that to deny a class of American citizens the right to participate in the electoral process of their Nation may be in violation of Amendment XV of the Constitution of the U.S.

---   Some individuals and institutions in Puerto Rico oppose incorporation and statehood because they simply do not wish to pay federal taxes on income from sources inside Puerto Rico. Such individuals and institutions are placing their economic interests in front of the right of their fellow American citizens residing in Puerto Rico to have government with the consent of the governed.

---   Blind insistence for non-incorporation status of supporters who want to keep a door open for independence, or by supporters of statehood who ironically don't want to accept incorporation just for the sake of saying that they are legally correct in qualifying Puerto Rico as a non-incorporated territory for years, and/or that statehood will be better supported by not claiming our federal acquired rights.

---   Ignorance of the Congressional integration of Puerto Rico as an incorporated territory of the United States, to be like a state, by some judges, federal officials, and politicians which leads to confusion about the real territorial status of Puerto Rico, particularly when implementing policy, and or judicially disposing of policies applicable to Puerto Rico even if it does not fit within the U.S. Constitutional framework.

The most recent example of the implementation of congressional policy for Puerto Rico without taking into account the gradual incorporation process which has taken place over the past century is that of the Congressional Committee Task Force on Economic Growth in Puerto Rico Report to the House and Senate, 114th. Congress, December 20, 2016. The Congressional Committee incorrectly and discriminatorily defined Puerto Rico's political status as follows:

a) Puerto Rico—along with American Samoa, Guam, the Northern Mariana and the U.S. Virgin Islands—is an unincorporated territory of the United States. In citing the *Downes v. Bidwell* decision (supra) as a source of authority the Report capitulated the powers granted to Congress under Article IV, Section 3, Clause 2 of the U.S. Constitution to regulate territories to a U.S. Supreme Court decision. It is as if Congress had continued to follow *Plessy v. Ferguson* after the Civil Rights Act and the Voting Rights Act were signed into law. Ironically the Report was signed by Puerto Rico's Resident Commissioner and by a Congresswoman from New York, who was born in Puerto Rico. As far as the members of the Congressional Committee are concerned the 3.5 million American citizens who reside in Puerto Rico are still not fit to be part of the American Family.

b) As a territory, Puerto Rico is subject to Congress' plenary powers under the Territory Clause of the United States Constitution. [111] The U.S. Supreme Court has held that, so long as Congress does not abridge the fundamental rights of individuals living in the territories,

20

Congress can enact laws that treat the territories differently than the states if there is any rational basis for the differential treatment. Puerto Rico and the other territories are treated differently than the states under a variety of federal programs.

Not a single one of the Congressional Committee members can identify a rational basis to support a differential treatment in federal aid programs to Puerto Rico. To treat a class of citizens, that is the 3.5 million American citizens residing in Puerto Rico, on a basis other than their individual merit fulfills the definition of discrimination.

(111)        See U.S. Constitution, Article IV, Section 3, Clause 2.

## CONCLUSION OF OPINION

As it can be seen, for Federal Courts to follow the Insular Cases, the case of Balzac, and/or the case of *Harris v Rosario* to legally support Puerto Rico's special relation with the U.S. as a non-incorporated territory is today legally unfounded and incorrect. The practice of treating Puerto Rico as a non-incorporated territory where constitutional dispositions do not apply, and as an incorporated for others, must end. The uncertainty of whether the U.S. Constitution applies in Puerto Rico on a case by case basis allows and leads to an arbitrary, partial, capricious, unequal and discriminatory treatment by each of the three Branches of the Federal Government against its own American Citizens, those residing in Puerto Rico. (3.5 million American Citizens).

In 2017 the ties between the United States and Puerto Rico have strengthened in such a way, and in such a constitutional significance, that it is definitely an incorporated territory of the United States on its way to statehood, one where the fullness of the U.S. Constitution applies, just as the U.S. Supreme Court did in 1954 by deciding Brown v. Board of Education. The theory of a permanent non-incorporation status does not fit within the U.S. constitutional framework. The degree of incorporation of Puerto Rico to be like a state can be considered by implication as strong as to exclude any other view that it is an incorporated territory of the United States.

21

**NOTE:**

--In the November 2016 elections the New Progressive Party, the party that supports statehood for Puerto Rico, won the gubernatorial race and a majority in the Senate and in the House of Representatives.

--In the June 2017 status referendum a majority of the American citizens living in Puerto Rico voted in favor of statehood.  (over 95%).

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, December 28,  2017.

s/ Gregorio Igartua

**GREGORIO IGARTUA**
**ATTORNEY AS AMICUS CURIAE**
**COMERCIO ST. #52, AGUADILLA, PR**
**BOX 3911, AGUADILLA, PR 00605**
**TEL (787) 891-9040,FAX (787) 882-3011**
**USDC ATTY. NO. 130712**
**bufeteigartua@yahoo.com**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this same date, the undersigned attorney filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties in this action.