**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**BRIEF OF AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS,
AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP,
AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION IN SUPPORT
OF PRODUCTION AND USE OF FISCAL PLAN DEVELOPMENT MATERIALS**

---

[1]     The Debtors in these Title III cases (collectively, the "Title III Cases"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

Pursuant to this Court's December 23, 2017 Order (Dkt. 2166[2]), Movants[3] submit this brief in support of their request for an order compelling production, and allowing the use, of Fiscal Plan Development Materials. Dkts. 2154 at 3 (Joint Report of Movants and Respondents With Respect to Order Authorizing Rule 2004 Examination, or the "Joint Report"), 2166 (Order Dated Dec. 22, 2017 on Joint Report).

## INTRODUCTION

On December 15, 2017, the Court granted Movants' motion to take discovery pursuant to Rule 2004, subject to Respondents' objections as to specific categories of documents. Dkt. 2033 at 2 ("Rule 2004 Order"). The parties were unable to resolve Respondents' objections to the production and use of "Fiscal Plan Development Materials," which are defined in the Joint Report to include materials responsive to Movants' Requests 8, 16 and 17.[4] See Joint Rpt. at 3.

Respondents have agreed to produce, and acknowledge that Movants may use in the litigation, certain raw "data and factual information" related to the Commonwealth's financial condition. See Joint Rpt. at 1-2. And the final, certified Fiscal Plan will be made public. "Fiscal Plan Development Materials" comprise everything in between the raw data and the certified Fiscal Plan, including models, assumptions, formulas, and inputs.

---

[2] Unless otherwise specified, docket numbers shall refer to filings on the docket of *In re Financial Oversight and Management Board of Puerto Rico as Representative of the Commonwealth of Puerto Rico*, No. 17-3283. Capitalized terms shall have the meaning assigned to them in the Urgent Renewed Joint Motion By The Ad Hoc Group Of General Obligation Bondholders, Ambac Assurance Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., The Municipal Fund Group, And National Public Finance Guarantee Corporation For Order Authorizing Rule 2004 Examination (Dkt. 1870).

[3] Members of Movant Ad Hoc Group of General Obligation Bondholders file this Brief exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

[4] This morning, counsel for AAFAF advised it anticipates producing by next week documents responsive to certain requests regarding health care expenses, which remained pending at the time of the last hearing. Dkt. 1972 at ¶ 7. Movants do not currently seek to compel production of that information, but reserve their rights to do so in the future.

Some of these Fiscal Plan Development Materials—such as the live model that underlies the Commonwealth Fiscal Plan, certified in March 2017—were provided to Movants in the "data room." Those data room materials are subject to the strict constraints of an NDA (or in some cases, the mediation agreement), which prohibits their use in any way in the litigation. Among other things, they cannot be used as evidence-in-chief or for impeachment purposes, nor can they ever be shown to the Court. As for the rest of the Fiscal Plan Development Materials—such as versions of the new fiscal plan submitted to (but not certified by) the Oversight Board—Respondents refuse to produce them at all. Joint Rpt. at 3. Either way, Respondents, who continue to tout their "commitment to transparency" (Dkt. 1928 at 1), insist that these Fiscal Plan Development Materials must never see the light of day.

That position is unprincipled, not to mention contrary to law. The materials Movants have requested will reveal *how* Respondents calculate the figures presented in the Fiscal Plan. Everyone, especially the Court, must see the basis for those calculations. That is because the Movants have a right to receive the maximum that the debtor could reasonably pay. Respondents want the Court to take their word as to how much the Commonwealth could reasonably pay. But the entire purpose of Rule 2004 is to allow the rest of us to see for ourselves. The Movants request that the Court order Respondents to produce the Fiscal Plan Development Materials forthwith.

**ARGUMENT**

**I.    The Fiscal Plan Development Materials Fall Within The Scope Of Rule 2004.**

A. As Movants have previously explained, all information underlying the development of a Fiscal Plan is made directly relevant to the Title III case by the terms of PROMESA. First, for any plan of adjustment to be confirmed over the objections of a dissenting class of creditors,

2

it must be, among other things, "fair and equitable." 11 U.S.C § 1129(b)(1). One component of that test requires that the plan provide creditors with "the maximum that the [debtor] could reasonably pay" under the circumstances. *Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942); see also 6 *Collier on Bankruptcy* ¶ 943.03[1][f][i]. Second, and relatedly, a plan of adjustment must be "consistent with the applicable Fiscal Plan." PROMESA § 314(b)(7). It follows that "the applicable Fiscal Plan"—the basis for any confirmable plan of adjustment— must in turn allocate to creditors all that the Commonwealth can reasonably pay. Accordingly, creditors are entitled to receive (and to use in the litigation) all information that bears on how the Fiscal Plan was developed, what assumptions, projections and data were used, and what assumptions, projections and data were rejected. See Nov. 15, 2017 Tr. at 110-11 (rejecting Respondents' argument that all information regarding the Fiscal Plan is immune from discovery).

B. The Fiscal Plan Development Materials are discoverable under Rule 2004 because they relate to the "liabilities and financial condition" of the debtor. Fed. R. Bankr. P. 2004(b). Specifically:

- *Request 8* calls for documents related to a financial model created by DevTech, one of the Commonwealth's consulting firms. DevTech's model projects the Commonwealth's GNP and rate of inflation, which are major drivers of the projected revenues in the Fiscal Plan. The DevTech model was placed in the data room by Respondents, under terms providing that *it cannot be used in the litigation in any way*. If Respondents have their way, Movants will be prohibited from (i) using the model to cross-examine the DevTech experts who developed it; (ii) having their *own* experts comment on it; and (iii) directing the Court to any flaws in the model that may render the Fiscal Plan inaccurate. Under these constraints, how exactly is the

3

Court to determine whether Respondents' plan of adjustment meets the requirements of PROMESA?

- *Request 16* seeks the inputs, calculations and formulas used to develop (i) the March 2017 certified Commonwealth Fiscal Plan; (ii) the April 2017 certified PREPA Fiscal Plan; and (iii) similar information with respect to the Fiscal Plans currently being developed. This would include live models of all such plans including all incorporated and linked-to worksheets, as well as documents sufficient to explain any inputs or calculations that are not defined or included in those live plans.[5] This would also include all versions of the in-development Fiscal Plans submitted to the Oversight Board, drafts of those fiscal plans, and communications between the Oversight Board and the Commonwealth with respect to those fiscal plans. Respondents have previously asserted that information regarding prior fiscal plans is "stale" because new fiscal plans are being developed. Dkt. 1616 at 2. That is not so. For instance, Respondents may rely on the same methodologies and assumptions in the new fiscal plans as in the prior fiscal plans. If different methodologies or assumptions are used, Movants are entitled to know this and to understand the reason for such changes. There is no way for the Court to know whether a proposed plan of adjustment satisfies PROMESA's requirements unless it can see where that plan comes from.

- *Request 17* seeks documents related to the "Reconciliation Adjustment" included in the certified Commonwealth Fiscal Plan, which has the effect of reducing the primary surplus (and, accordingly, the funds available for debt service) by $600 million *annually*. And, because Respondents try to justify the Reconciliation Adjustment by asserting that actual spending

---

[5] As stated above, although Respondents have posted a live model of the March 2017 Commonwealth Fiscal Plan to the data room, the NDA governing that document prohibits its use in litigation. Accordingly, it is among the documents that Respondents seek to have produced or deemed produced pursuant to the 2004 Order.

typically exceeds budgeted or projected spending, Request 17 also seeks documents relating to any attempts by the Commonwealth to compare or "bridge" 2014, 2015, and 2016 actual expenditures to budgeted expenditures. Movants have a right to know, and to advise the Court, whether this $600 million allocation of money that *otherwise* would be used to service debt is justified. But Respondents refuse to produce the requested materials.

C. It is not sufficient, as Respondents would have it, for them to produce (and allow use of) only raw data and a final certified plan, while hiding all of the steps in between. Without allowing the Court to see how the Fiscal Plan was developed, the Court cannot know which data was relied on and which data was left on the cutting room floor. Similarly, without access to a complete live model, the Court will be (quite purposely) left in the dark as to how any inputs were used, and what assumptions were used, in developing a Fiscal Plan.

To make things more concrete, take one example: The new Fiscal Plan, like the last one, will include a per-year expenditure for health care costs. That number is derived from certain inputs and assumptions, including among other things (i) how many people are being provided health care, (ii) the cost-per-person of that care, and (iii) the rate of growth of health care costs. Respondents refuse to release this information from the constraints of the NDA, notwithstanding that health care is a major component of the total expenses in the Fiscal Plan. Without this information, creditors entitled to vote on the plan of adjustment will not have sufficient information to make an informed decision to accept or reject the plan. What is more, the Court will be unable to determine whether the plan of adjustment is confirmable.

Movants are likewise entitled to versions of the Fiscal Plan submitted to the Oversight Board that the Board does *not* certify, drafts of the Fiscal Plan, and communications between the Oversight Board and the Commonwealth regarding those plans. Knowledge of the alternatives

5

that were presented but rejected—and, critically, the reasons for the rejection—is necessary to know whether the Fiscal Plan that is ultimately certified does, in fact, provide creditors with the maximum that the debtor could reasonably pay.

The process that led up to the certification of the March 2017 Fiscal Plan is illustrative. Just after the Commonwealth submitted a proposed Fiscal Plan to the Oversight Board, the Board announced that the plan "could . . . understate[]" expenditures and recommended that the Commonwealth add the Reconciliation Adjustment, which increased expenditures and decreased debt service by $600 million annually. See Ex. A (Mar. 9, 2017 Ltr. from Oversight Board to Governor Roselló Nevares). At the same time, the Board decreed a number of other "recommendations" that had the effect of decreasing projected revenue and increasing projected expenditures—all of which, again, would decrease the funds available for debt service. See *id.* Discovering the basis for such back and forth is essential to understanding whether the certified Fiscal Plan, as revised, does all it reasonably can to maximize creditor recoveries. See *In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) ("'Good cause is established if the party in interest seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests.'") (quoting *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992)).

**II. There Is No Legally Cognizable Basis For Refusing Production Of The Fiscal Plan Development Materials.**

None of the reasons proffered for refusing production and use of the Fiscal Plan Development Materials has merit.

*First*, Respondents contend that it's too soon to require production of these materials. Production, they maintain, should be permitted only in a contested matter regarding plan confirmation or if relevant in an adversary proceeding. See Dec. 14, 2017 Tr. at 27. But that is

6

no basis for refusing a Rule 2004 examination. Indeed, there is no good reason to wait until confirmation to produce these materials, because any plan of confirmation must be consistent with the certified Fiscal Plan. In other words, the Fiscal Plan Development Materials inevitably will be relevant and at issue at confirmation. As this Court has observed, "it will be nothing less than a major sin if this gets to the end and then we start doing discovery. . . . [T]hat is just not going to happen." Nov. 15, 2017 Tr. at 110.

*Second*, Respondents maintain that some of these materials—presumably, uncertified and draft Fiscal Plans, and communications between AAFAF and the Oversight Board—are subject to the deliberative process privilege. Joint Rpt. at 2. And, Respondents say, because they are not required to *produce* these materials pursuant to the Rule 2004 Order, they also are not required to *log* them. Joint Rpt. at 3; see also Dec. 14, 2017 Tr. at 42. The deliberative process privilege, of course, is not absolute and not as broad as Respondents have asserted. In particular, materials generated by financial advisors and consultants are not per se protected by the deliberative process privilege. Such materials should be produced. And, because Respondents should be required to produce the Fiscal Plan Development Materials under the Rule 2004 Order, they should be required to provide a categorical log of any other materials withheld based upon a claim of privilege. See Joint Rpt. at 3, 4. Respondents also should be ordered to identify in their log the number of documents being withheld in each category. Respondents object to providing such information (see *id.* at 4), but such information is not burdensome to provide.

*Third,* Respondents have objected to any discovery request that, like Request 8, calls for the production of "proprietary" work product prepared by non-legal third-party consultants. *E.g.*, Dkt. 1178 Ex. B at 2. This objection is baseless. There is no such thing as a third-party-

7

consultant privilege, and courts routinely require production of financial advisors' work product.[6]

*Finally*, drafts of a Fiscal Plan are not analogous to draft expert witness reports, which are generally shielded from disclosure under Fed. R. Civ. P. 26. As Rule 26 makes clear, an expert report is considered an advocacy piece, "prepared in anticipation of litigation or for trial," and thus *draft* reports are treated like other work product. See Fed. R. Civ. P. 26(b)(4)(B) and 26(b)(3)(A). A Fiscal Plan is nothing like that. As the Oversight Board explained in its Statement in Support of the Title III Petition, the Fiscal Plan is a creature of statute. It is intended to "provide a method to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 214(b)(1), and must comport with the requirements of PROMESA. Dkt. 1-3 at 17.

In any event, even if the Court were to analogize the Fiscal Plan to an expert report, that would not preclude production and use of the materials the drafters relied upon. It is well settled that any facts or data "'considered'" by an expert are discoverable, whether or not the expert actually relied upon them. *Voice Domain Techs., LLC v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 143903, at *29 (D. Mass. Oct. 8, 2014) (quoting *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 840 F. Supp. 2d 1072, 1080 (N.D. Ill. 2012)).

## CONCLUSION

For the foregoing reasons, Movants respectfully request the Court to order that Respondents complete production of all Fiscal Plan Development Materials within two weeks.

---

[6] See, *e.g.*, *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 229 (D. Mass. 2010) (requiring production of documents from financial advisor in leveraged buyout); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (compelling disclosure of communications with financial advisor); see also *Sher v. SAF Fin., Inc.*, No. RDB 10-1895, 2011 U.S. Dist. LEXIS 42192, at *8-9 (D. Md. Apr. 19, 2011) (requiring production of documents from bankruptcy financial advisor); *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005) (same).

<table>
<tr><td>

Dated: January 5, 2018
        San Juan, Puerto Rico

</td><td>

Respectfully submitted.

**JIMÉNEZ, GRAFFAM & LAUSELL**

By: /s/ J. Ramón Rivera Morales

J. Ramón Rivera Morales
   (USDC-PR No. 200701)
Andrés F. Picó Ramírez
   (USDC-PR No. 302114)
PO Box 366104
San Juan, PR 00936-6104
Telephone: (787) 767-1030
Email: rrivera@jgl.com
       apico@jgl.com

</td></tr>
<tr><td>

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**

By: /s/ Andrew N. Rosenberg
Andrew N. Rosenberg**
Kyle J. Kimpler**
Karen R. Zeituni**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: arosenberg@paulweiss.com
       kkimpler@paulweiss.com
       kzeituni@paulweiss.com

</td><td>

**ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**

By: /s/ Mark T. Stancil
Lawrence S. Robbins**
Mark T. Stancil**
Gary A. Orseck**
Kathryn S. Zecca**
Ariel N. Lavinbuk**
Donald Burke**
1801 K Street, NW
Washington, D.C. 20006
Telephone: (202) 775-4500
Email: lrobbins@robbinsrussell.com
       mstancil@robbinsrussell.com
       gorseck@robbinsrussell.com
       kzecca@robbinsrussell.com
       alavinbuk@robbinsrussell.com
       dburke@robbinsrussell.com

*\*\* admitted pro hac vice*

</td></tr>
</table>

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

**FERRAIUOLI LLC**
By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
 scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
 aleblanc@milbank.com
 amiller@milbank.com
 gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

| | |
|---|---|
| **CASELLAS ALCOVER & BURGOS P.S.C.** | **CADWALADER, WICKERSHAM & TAFT LLP** |
| By: /s/ *Heriberto Burgos Pérez* <br> Heriberto Burgos Pérez <br> USDC-PR 204809 <br> Ricardo F. Casellas-Sánchez <br> USDC-PR 203114 <br> Diana Pérez-Seda <br> USDC-PR 232014 <br> P.O. Box 364924 <br> San Juan, PR 00936-4924 <br> Telephone: (787) 756-1400 <br> Facsimile: (787) 756-1401 <br> Email: hburgos@cabprlaw.com <br>     rcasellas@cabprlaw.com <br>     dperez@cabprlaw.com <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | By: /s/ *Howard R. Hawkins* <br> Howard R. Hawkins, Jr. * <br> Mark C. Ellenberg* <br> Ellen Halstead* <br> Thomas J. Curtin* <br> Casey J. Servais* <br> 200 Liberty Street <br> New York, NY 10281 <br> Telephone: (212) 504-6000 <br> Facsimile: (212) 406-6666 <br> Email: howard.hawkins@cwt.com <br>     mark.ellenberg@cwt.com <br>     ellen.halstead@cwt.com <br>     thomas.curtin@cwt.com <br>     casey.servais@cwt.com <br><br> * Admitted pro hac vice <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

<div style="column-count:2">

**TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.**

*s/ Manuel Fernandez-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

*s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

*s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC-PR No. 220,510
E-mail: jvankirk@tcmrslaw.com

P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

*s/ Gregory A. Horowitz*
THOMAS MOERS MAYER*
AMY CATON*
GREGORY A. HOROWITZ*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
      acaton@kramerlevin.com
      ghorowitz@kramerlevin.com
      dbuckley@kramerlevin.com
*(admitted *pro hac vice*)

*Counsel to the Mutual Fund Group*

</div>

/s/ Eric Pérez-Ochoa (USDC-PR No. 206314)
Eric Pérez-Ochoa (USDC-PR No. 206314)
Luis Oliver-Fraticelli (USDC-PR No. 209204)
Alexandra Casellas-Cabrera (USDC-PR. No. 301010)
Lourdes Arroyo-Portela (USDC-PR No. 226501)

**ADSUAR MUÑOZ GOYCO SEDA & PÉREZ-OCHOA, PSC, P.S.C.**
208 Ponce de León Avenue, Suite 1600
San Juan, Puerto Rico 00936
Telephone: (787) 756-9000
Facsimile: (787) 756-9010
Email: epo@amgprlaw.com
loliver@amgprlaw.com
acasellas@amgprlaw.com
larroyo@amgprlaw.com

– and –

Marcia Goldstein
Jonathan Polkes
Salvatore A. Romanello
Gregory Silbert
Kelly DiBlasi
Gabriel A. Morgan
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153

*Counsel to National Public Finance Guarantee Corporation*