I1AsPROpm1

```
 1    UNITED STATES DISTRICT COURT
      DISTRICT OF PUERTO RICO
 2    ------------------------------x
      IN RE: THE FINANCIAL OVERSIGHT      PROMESA
 3    & MANAGEMENT BOARD FOR PUERTO
      RICO,                               TITLE III
 4
           as representative of
 5                                        17 BK 3283 (LTS)
      THE COMMONWEALTH OF
 6    PUERTO RICO, et al.            (Jointly Administered)
                       Debtors.
 7    ------------------------------x
      THE OFFICIAL COMMITTEE OF UNSECURED
 8    CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,
 9               as agent of     Adv. Proc. No. 17-257 (LTS)
10    THE COMMONWEALTH OF PUERTO RICO,
11                   Plaintiff,
12          v.                       in 17 BK 3283 (LTS)
13    BETTINA WHYTE,
14               as agent of
15    THE PUERTO RICO SALES TAX FINANCING
      CORPORATION,
16
                   Defendant.
17    ------------------------------x
                                     Motion Hearing
18                                   January 10, 2018
                                     2:00 p.m.
19
      Before:
20
                       HON. LAURA TAYLOR SWAIN,
21
                                     District Judge
22

23

24

25
```

I1AsPROpm1

1                                    APPEARANCES

2

3    PROSKAUER ROSE LLP
          Attorneys for FOMB Oversight Board
4    BY:  MARTIN J. BIENENSTOCK
          TIMOTHY W. MUNGOVAN

5    PAUL HASTINGS LLP
          Attorneys for Official Committee of Unsecured Creditors
6              and its capacity as Commonwealth agent
     BY:  LUC A. DESPINS
7         JAMES BLISS

8    WILLKIE FARR & GALLAGHER LLP
          Attorneys for COFINA Agent
9    BY:  MATTHEW A. FELDMAN

10        JAMES C. DUGAN

11   ROBBINS RUSSELL ENGLERT ORSECK UNTEREINER & SAUBER LLP
          Attorneys for Ad Hoc Group of General Obligation
12   Bondholders
     BY:  DONALD BURKE
13        MARK T. STANCIL

14   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for COFINA Senior Bondholders
15   BY:  SUSHEEL KIRPALANI
          ERIC M. KAY

16

17   WHITE & CASE LLP
          Attorneys for Altair
     BY:  JASON ZAKIA

18

19   KRAMER LEVIN NAFTALIS & FRANKEL LLP
          Attorneys for Mutual Fund Group
20   BY:  PHILIP BENTLEY

21   MILBANK, TWEED, HADLEY & McCLOY LLP
          Attorneys for Ambac Assurance Corp.
     BY:  ATARA MILLER

22

23   JENNER & BLOCK LLP
          Attorneys for The Official Committee of Retired Employees
     BY:  RICHARD LEVIN

24

25   O'MELVENY & MYERS LLP
          Attorneys for AAFAF
     BY:  PETER FRIEDMAN

I1AsPROpm1

```
 1

 2              (Case called)

 3              THE COURT:  Again, good afternoon, counsel, parties of

 4   interest, members of the press and public gathered here in San

 5   Juan as well as to those listening on the phone.

 6              I would just like to remind everyone, as I did this

 7   morning, of the restrictions on the use of electronic devices.

 8   We are, again, honored to have present the Gretchen Rodriguez,

 9   the assistant operations manager for the District Court in

10   Puerto Rico.

11              We are here now for oral argument on the Commonwealth

12   agency's motion for clarification of the December 21, 2017,

13   scope order, or alternatively, for reconsideration for leave to

14   amend.  I have received your agreed time allocations.

15              I would ask Mr. Despins to step to the podium, and

16   remind everyone to speak directly into the microphone and

17   project so that we can be heard at the remote locations.

18              MR. DESPINS:  Good afternoon, your Honor.  Luc Despins

19   with Paul Hastings on behalf of the official creditors

20   committee for all debtors other than COFINA, but here we are in

21   the capacity as the Commonwealth agent in the adversary

22   proceeding.

23              Your Honor, we are not naive of these motions,

24   especially the reconsideration aspect of our motions, are

25   rarely granted and the standards are very high.  We are well
```

1    aware of that.  But we believe here that there are compelling

2    reasons to address this.

3           Before I launch into the argument, perhaps it might

4    make sense to hear from your Honor if you so choose to give us

5    a sense of where you are on the clarification aspect first.

6    That could allow us to focus on certain aspects.  We don't need

7    to that, but if you want to share something with us on the

8    first aspect, which is clarification, that might shorten the

9    argument.

10           THE COURT:  Well, frankly, thinking so much about the

11    vehicle, what I would like you to focus on is the degree to

12    which you believe there are elements of the 12th and 13th

13    clauses of action that are consistent with the guiding

14    principal of the scope order, which is that only issues

15    antecedent to the binary question of Commonwealth or COFINA

16    ownership of the SUT that, for whatever number of reasons,

17    didn't fall into the right part of the sorting tray when I

18    issued the scope order.

19           For instance, a question related to that is that in

20    both your 12th and your 13th causes of action, as originally

21    pleaded and as proposed to be repleaded, you request relief

22    that declares that all of the revenues, including the monies at

23    Bank of New York, are the exclusive property of the

24    Commonwealth.  It seems to me that could be read to reach lien

25    issues, beneficial interests, claims for equitable

1   subordination, as opposed to the question, the binary question

2   of property of the Commonwealth, not COFINA, with issues such

3   as fraud avoidance, liens, all that to be resolved later.

4           It would be helpful to me if you could be as clean and

5   bottom line as to which of the issues in 12 and 13 you believe

6   are necessarily and fundamentally antecedent to that binary

7   ownership issue.

8           MR. DESPINS:  Thank you, your Honor.

9           Very briefly, the use of the word "exclusive" was not

10  meant to bring in through the back door the issues you just

11  listed:  The subordination, security interest, and all that.

12  We covered that through other sections of the complaint, which

13  you dismissed and we are not challenging today.  Exclusive

14  really meant -- it belongs to the Commonwealth, not the COFINA.

15  We can dispense with the word "exclusive."

16          Everything that is in Counts 12 and 13, which are

17  based on the constitutional issues of whether the purported

18  transfer that was made pursuant to the COFINA statute violated

19  the Constitution, all of that, we believe, is antecedent based

20  on the precedence we cited, and also based on fact that nobody

21  is really challenging the fact that if the court were to find

22  that the statute violated the Constitution, either because it

23  didn't respect the priority issue or the debt limit issue or

24  the financing of deficit issue, that the consequence of that

25  would be that the Commonwealth would own those proceeds and

I1AsPROpm1

1    therefore it is antecedent.  It is as antecedent as the other

2    issues that your Honor left standing.

3              In fact, your Honor, in this case, because of the pace

4    at which we're going, six months feels like six years.  And it

5    is very helpful sometimes to go back.  And I went back to the

6    June 28 hearing, the first hearing I ever appeared at.

7              At that hearing, your Honor, there was a motion filed

8    by the Junior COFINA holders to lift the stay, you'll recall,

9    to send the Lex claims back to Judge Besosa for the purpose of

10   having that certified to the Puerto Rico Supreme Court.

11             Mr. Bentley, who is here today, said the issue, your

12   Honor, is which court should decide the issue of whether the

13   Puerto Rico statutes -- meaning the COFINA statutes -- that

14   created the COFINA structure are a valid or not under the

15   Puerto Rico Constitution.

16             Very interestingly, both AMBAC and COFINA said, no,

17   don't allow that, your Honor -- in fact, you denied that

18   request -- but don't allow that, your Honor.  And if you look

19   at what I was quoting was page 51 of that transcript.

20             If you look at Mr. Kirpalani's statement at page 62

21   and 63 of that statement, he says only the trustee in

22   bankruptcy, meaning the Commonwealth, has the right to sue on

23   basis of these constitutional claims.

24             In fact, Mr. Dunn said the same thing, page 65.  It is

25   an asset of the Commonwealth.  He said, you know why the

I1AsPROpm1

1   Juniors are doing this?  Because they don't like what is coming

2   next.  And what was coming next is the motion to approve the

3   stipulation, which you denied as well.  But that request was

4   made at a later date, I believe, and later granted.

5        The point I want to make there is that the issue of

6   the constitutional challenge to the COFINA statute was clearly

7   front and center, and it was one of the impetus for this

8   stipulation being approved to have a state representative take

9   on that issue.  In fact, the language of the stipulation does

10  refer to constitutional issues in the plural.

11       The only thing that is left, your Honor -- and I would

12  say the acid test, is really when it was time to challenge the

13  scope, what did people say regarding cause of action 12 and 13,

14  other than your Honor.  No one said anything, other than AMBAC,

15  and I'll come back to that in a second.

16       The COFINA seniors didn't say anything about that.

17  The COFINA agent did not complain about that.  The bottom line

18  is that they thought it was clearly within the scope.  AMBAC

19  said, well, they always do this.  They always try to decide

20  which claims to bring and how we should bring them.  But

21  basically said the Lex claims are OK, the issue of priority is

22  OK, but not the rest of the constitutional claims.  Of course,

23  there is no basis to limit our challenges that way.

24       That, your Honor, should really be the acid test here.

25  Nobody ever disputed that 12 and 13 were in scope because they

I1AsPROpm1

1  go to the issue of, if you find for us, the Commonwealth owns

2  these proceeds.

3       Your Honor, today the position taken by AMBAC is a

4  little bit different.  They are saying that, yes, but there is

5  another antecedent issue, which is the one you stated that you

6  kept in, but the fact that we have the one issue that is

7  antecedent doesn't mean that the issues, the other issues are

8  not antecedent.  Again, AMBAC should not be in a position to

9  dictate which claims we go forward with first or last.  They

10 are in the scope and the certificate should proceed with those

11 two claims.

12       I'm just looking at my notes here for two seconds.

13       Basically, these are the arguments, your Honor.  I

14 just want to make clear that the board and who is our principal

15 here, our principal is saying that that was within the intent.

16 If it is antecedent, which I think we have established and

17 nobody really challenges that, then it is within the scope.

18 That's probably one of the most important aspects of what the

19 board saying about this.

20       Thank you.

21       THE COURT:  Thank you.

22       Mr. Stancil.  We have you down for one minute,

23 30 seconds.

24       MR. STANCIL:  That sounds about right.  I will be

25 brief.

I1AsPROpm1

```
 1          I represent the Ad Hoc Group of General Obligation

 2   bondholders.  We filed a one-count complaint.  Nobody moved to

 3   dismiss that complaint as outside the scope.  However, in

 4   response to the reconsideration requests, several folks on the

 5   other side of the pro COFINA side said, while you're at it,

 6   take out the general obligation bondholders count.  That would

 7   be incorrect for a very clear and simple procedural reason,

 8   which is nobody moved to dismiss it as outside the scope.  It

 9   is also telling why no one moved to dismiss it as outside the

10   scope, because it is not.

11          Our complaint has a single count that says -- I am

12   reading from paragraph 79 -- Commonwealth's purported transfer

13   of SUT revenue to COFINA is invalid because of the violation of

14   the Puerto Rico institution.  That is, as I read it, squarely

15   within the ambit of the stipulation, which says whether, after

16   considering all procedural and offenses and counterclaims,

17   including constitutional issues, the sales and taxes purported

18   by COFINA to procure debt are properly under the Commonwealth

19   of COFINA under applicable law.  We think it is clear as day.

20          I would be end, moreover, as this court held recently

21   when discussing the CTO issue, it is just not appropriate to

22   seek affirmative relief and opposition to somebody else's

23   motion.  So this is procedurally wrong and defaulted twice

24   over.

25          In my last six seconds, I will just say briefly, we
```

I1AsPROpm1

1   have been trying to get this issue teed up for over a year.

2   The Lex claims was our case.  We are never going anywhere until

3   we get this resolved.

4          Thank you, your Honor.

5          THE COURT:  Thank you.

6          Mr. Levin.

7          MR. LEVIN:  Richard Levin, Jenner & Block, for the

8   Official Committee of Retirees and the creditor representative

9   in this litigation.

10         Two points.  Number one, you asked what is antecedent

11  to the ownership issue.  It is a simple statement.  If the

12  statute is unconstitutional, it is void, unenforceable, no

13  effect, and therefore the property remains with the

14  Commonwealth.  That has got to be an antecedent issue as to the

15  ownership.

16         Number two point.  As Mr. Stancil has suggested and as

17  his motion made clear, there are some inconsistencies because

18  elsewhere in the scope or some of the constitutional issues

19  were left standing, and I think the 12th and 13th claims in the

20  complaint might need some shaping to make sure that they are

21  the antecedent issue, but they are clearly within the scope of

22  the other matters that your Honor permitted in the scope order.

23         THE COURT:  Thank you.

24         MR. LEVIN:  Thank you.

25         THE COURT:  Now we turn to the opponents of the

I1AsPROpm1

1   motion.

2           I have Mr. Dugan as the first speaker.

3           MR. DUGAN:  Thank you, your Honor.  Good afternoon.

4           THE COURT:  Good afternoon.

5           MR. DUGAN:  Jim Dugan from Willkie Farr & Gallagher

6   for the COFINA Agent.

7           Your Honor, we believe that the scope order was fairly

8   clear on this point, which is that although your Honor is

9   entertaining constitutional issues of this case, you clearly

10  ruled that the Commonwealth agent's 12th and 13th causes of

11  action were outside the scope order and not authorized by the

12  stipulation, because the stipulation didn't authorize an attack

13  on the legality of the COFINA entity or structure.

14          Now, we haven't heard from the Commonwealth agent's

15  attorney today how it is that their 12th and 13th causes of

16  action somehow survive given your Honor's clear ruling.  In

17  fact, they have indicated that they believe the entirety of

18  those claims should be within the scope order.  But I think

19  your Honor is very clear that they are not within the scope

20  order.

21          On the point of antecedents to the property ownership

22  issue, we heard the Commonwealth agent's argument.  In our

23  view, the way the 12th and 13th causes of action are framed, we

24  believe they presume an answer to the ownership question

25  because they are framed as an evasion of constitutional limits

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I1AsPROpm1

1   that apply to the Commonwealth, not to COFINA.  In order to

2   find that those constitutional limits, that that limit and the

3   balanced budget limit applied to COFINA, one has to either

4   assume or establish that COFINA is not an independent, validly

5   created organization or entity.  One has to assume, therefore,

6   that it can't own anything.  It assumes the answer to the

7   ultimate question that I think your Honor has asked us to

8   litigate on this issue.  We believe the 12th and 13th of are

9   outside the scope order.

10          Your Honor, I think that is the only point we really

11  wanted to make here.

12          THE COURT:  Thank you.

13          MR. DUGAN:  Thank you.

14          THE COURT:  Mr. Kirpalani.

15          MR. KIRPALANI:  Susheel Kirpalani from Quinn Emanuel

16  Urquhart & Sullivan on behalf of the COFINA Senior Bondholders

17  Coalition.

18          Good afternoon, your Honor.  Happy New Year.  Happy

19  New Year to our friends in Puerto Rico.

20          Judge, the whole point of this protocol was to remove

21  the cloud on COFINA's title to dedicated sales tax so the

22  Oversight Board could understand how to treat the Island's

23  competing creditors.

24          I think I follow the Commonwealth's agent's theory in

25  counts 12 and 13, and here is how it actually goes, even though

I1AsPROpm1

 1     it is not the way Mr. Despins articulated.  If COFINA issued

 2     bonds for an improper purpose and if that means that the bonds

 3     go poof in the night, then under the COFINA legislation, cash

 4     that is not needed to pay COFINA debt service would

 5     automatically flow back to the Commonwealth's general fund.

 6     That is the COFINA statutory waterfall.

 7         That is why the Commonwealth agent keeps trying to

 8     assert that COFINA bonds may have been issued in violation of

 9     the debt limit or the balance budget clause of the

10     Constitution, because if some portion of COFINA's bond

11     issuances can be punctured, then maybe some of the dedicated

12     sales tax can leak to the Commonwealth's general fund pursuant

13     to the COFINA statutory waterfall.

14         They don't clearly say it that way, but that is really

15     what this is about.  We don't think it is the Commonwealth

16     agent's theory.  We don't think this theory has any legs

17     because we don't believe that municipal bonds can go poof in

18     the night, thanks to Article 8 of the UCC.

19         I am trying to explain what our position is in light

20     of the theory of the Commonwealth agent.  Initially, your

21     Honor, you remember the Commonwealth agent threw a kitchen sink

22     of claims at COFINA and we responded likewise.  We thought the

23     scope admittedly should be very broad, because we want to get

24     everything into the pot and make soup.  We wanted there to be

25     global peace.

I1AsPROpm1

1          The court, your Honor, stripped the claims down to

2     what the court ruled the protocol stipulation actually said and

3     were only going to determine which debtor entity owned the

4     dedicated sales tax.  Nothing more.  That is fine.  We are OK

5     with that.  We can live with that.

6          But Counts 12 and 13 are seeking to say that even if

7     COFINA is the owner of the dedicated sales tax, maybe, just

8     maybe, some of the issuances of COFINA bonds can be knocked

9     out.  To remind the court, the bulk of COFINA senior bonds were

10    issued in 2007 and in 2008.  Starting in 2009, subordinate

11    bonds were issued, and then some senior bonds were issued later

12    to refinance earlier bonds.

13         Paragraph 142 of Mr. Despins' complaint admits that

14    bonds issued prior to 2009 are not even susceptible to the debt

15    limit theory at all.  So the Commonwealth agent has alleged no

16    plausible claim that COFINA was invented in 2006 to work at end

17    run around the Constitution.  The only thing invented is that

18    theory itself.

19         But if the court is going to permit the agent to try

20    to develop this theory, then a symmetrical argument about

21    Commonwealth full faith and credit bonds equally applies, and

22    let me explain why.

23         It seems to us, Judge, that if COFINA is the owner of

24    the dedicated sales tax, and by definition the dedicated sales

25    tax cannot be part of the property of the Commonwealth debtor,

1    let alone the available resources of the Commonwealth debtor,

2    we think that follows as a matter of law and logic.  But,

3    Judge, if there is some theory being advanced that says the

4    valuable resources remedy can nevertheless be used by a GO

5    bondholder to reach across debtor lines to another entity's

6    property, that kind of leaves me scratching my head.

7            But if that is the theory, then naturally the remedy

8    can only be invoked by GO bondholders entitled to full faith

9    and credit under the Constitution.  We have long asserted,

10   including in the Lex claims litigation, that billions of

11   dollars of bonds issued after 2011, with the purported full

12   faith in credit guarantee, were actually in excess of the debt

13   limit.  Also, that every GO bond issued after COFINA was

14   created contractually disclaimed a right to the dedicated sales

15   tax, waived and subordinated any rights to be paid from that

16   until COFINA bonds were paid in full.

17           Our point is pretty simple, Judge, how can the

18   Commonwealth side be permitted to attack the issuances of

19   tranches of COFINA bonds so as to have more dedicated sales

20   tax flow into the general fund, but the COFINA side is not

21   permitted to show that the Commonwealth side could only tap

22   into COFINA to pay proper full faith and credit bonds.

23           We are only seeking fairness and symmetry.  We think

24   the court should keep the protocol, as your Honor ruled,

25   because it seems to us, from a plausibility perspective, if

I1AsPROpm1

```
1   COFINA is the owner of the property, and by definition it isn't
2   Commonwealth property, so by definition it isn't available
3   resources.  If COFINA is the owner of the property, then by
4   definition, its bondholders don't count against the
5   Commonwealth's debt limit or debt maturity limit.  But if the
6   Commonwealth agent can assert that some of the bonds were
7   issued in violation of the Constitution to get around debt
8   limits in violation of a balanced budget amendment, then it has
9   to be symmetrical, your Honor, so we can protect ourselves and
10  mitigate against those claims.
11          Your Honor, Mr. Despins said -- this is my last
12  comment, I know I am out of time -- Mr. Despins says I stood
13  here -- I was actually in San Juan -- and says that Lex claims,
14  back in June 20-something, Lex claims must be asserted by the
15  trustee in bankruptcy.  Of course I stand by that.  But he
16  neglects to tell you that Lex claims did not include Counts 12
17  and 13.  And he neglects to tell you, your Honor, that we
18  asserted these counterclaims in Lex claims.
19          So we are just seeking symmetry and fairness, Judge.
20  Thank you.
21          THE COURT:  Thank you.
22          Ms. Miller.
23          MS. MILLER:  Good afternoon, your Honor.  Atara
24  Miller, Milbank Tweed Hadley & Mc Cloy, on behalf of AMBAC.
25          I appreciate that I found a friend in Mr. Kirpalani
```

I1AsPROpm1

1    and I am not standing here alone asking for a narrow scope.

2    Mr. Despins frames it as AMBAC tries to control what claims

3    they can bring and we somehow always can mastermind and control

4    what our adversaries can do.  That is not what is at issue

5    here.

6         What is at issue here is a negotiated protocol and

7    stipulation, which based on our preservation of rights that we

8    filed contemporaneous with that, our client was reluctant to

9    enter into.  It is not about what issues are on the table, but

10   it is about a delegation of authority beyond just the

11   litigation, but also in settlement and said there very

12   carefully, and as was mentioned in the papers, mediated scope

13   of what would be part of this.  That was very specifically and

14   narrowly, as the court pointed out, in the scope order,

15   narrowly defined to the limited binary issue of whose property

16   is the SUT.

17        I would stand up here, in response to Mr. Stancil's

18   argument, and say that the reason why nobody attacked or at

19   least we didn't challenge their counterclaim was because we did

20   understand that the narrow question of available resource,

21   which we saw as a question of whether the nature of the

22   property right that was granted, whether it was unfettered or

23   somehow conditional subject to clawback, that that was part of

24   it, and because of that, we didn't expressly and directly

25   challenge it.  But your Honor saw that available resources

I1AsPROpm1

1   question differently, and we respect your Honor's opinion on

2   that.

3           What needs to happen here is there needs to be

4   consistency across the board with the guiding principals that

5   your Honor laid out.  I think to accomplish that, you do need

6   to take out the GO's counterclaim as well.

7           With respect to the 12th and 13th claims of the

8   Commonwealth agent, I want to go directly to your Honor's

9   question to Mr. Despins, which was tell me how, as concisely

10  and precisely as you can, these implicate antecedent property

11  questions.

12          The answer, as I heard it, was, well, if the court

13  were to find that the statute violated the Constitution, then

14  nobody has ever challenged that the consequence is that the

15  Commonwealth would own the SUT.  I will stand up here and say

16  we have challenged it before.  We challenge today in our

17  answer.  We challenge it again here, because what Mr. Despins

18  is saying, if you look at the counterclaims, what they are

19  challenging is not the statute, but the "COFINA structure."

20  While that is undefined, what is clear that what is being

21  challenged is not whether COFINA itself was legally and

22  constitutionally established as a separate and independent

23  entity.  What is not being challenged is whether the

24  Commonwealth actually transferred property to that entity.

25          What they are challenging is what happened with that

I1AsPROpm1

1    pledge, with that transfer of property, was that properly

2    pledged, was that constitutional, was the incurrence of debt

3    constitutional, was that a violation of taxing authority, was

4    that a violation of constitutional debt limits.

5            Those are precisely the issues that are in the 12th

6    and 13th causes of action and that is not an antecedent

7    question.  What happens, those questions do not need to be

8    answered to determine whose property the SUT is today.

9            So, your Honor, we would just close by saying that we

10   think that your Honor properly and appropriately construed the

11   narrow scope of the stipulation and that all of the

12   counterclaims and all of the claims in this action should be

13   revisited and narrowed consistent with the guiding principles

14   that you laid out in terms of what is appropriately considered

15   and antecedent question to the very binary issue of whose

16   property is it, Commonwealth or COFINA.

17           THE COURT:  Thank you.

18           MS. MILLER:  Thank you.

19           THE COURT:  That brings us back to Mr. Despins, unless

20   Mr. Levin wants to rebut those.

21           Actually, I'm sorry, Mr. Levin and Mr. Stancil.

22           (Continued on next page)

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I1AYPROPM2

1          THE COURT:  And that brings us back to Mr. Despins,

2     unless Mr. Levin wants to rebut.

3          Actually, I'm sorry.  Mr. Stancil.

4          MR. LEVIN:  Your Honor, I waive rebuttal.

5          THE COURT:  Thank you.

6          MR. STANCIL:  Thank you, your Honor.

7          Very briefly, I heard nothing about the GO complaints

8     from Mr. Dugan or Mr. Kirpalani.  Only Ms. Miller addressed it,

9     and she didn't answer a question.

10          The question first was procedurally what would justify

11     a failure to move and now to ask to strike or modify our own

12     count.  All Ms. Miller offered was well, now they wish they

13     had.

14          I would recommend to the Court paragraph 1 of our

15     complaint:  "This action seeks a declaratory judgment that all

16     revenues derived from the SUT imposed and collected by the

17     Commonwealth are property of the Commonwealth."  We weren't

18     hiding the ball at all.  This is the core question.

19          Moreover, there is absolutely no response to the fact

20     that it's improper to move for affirmative relief in opposition

21     to someone else's motion.  There simply is no basis to strike

22     or modify the GO claims.

23          But I think more fundamentally, there is confusion

24     offered here by the other side, which is that the issues as to

25     why COFINA, the transfer of COFINA, the property taxes attempt

1    to transfer the sales and use tax to COFINA was improper is

2    because of these other constitutional violations.

3         They're confusing the why it's unconstitutional with

4    whether it's unconstitutional, and I think we need to get to

5    the core of this complaint which is notwithstanding what the

6    Constitution says about all available resources and the many,

7    many other interlocking provisions that say where this tax

8    money goes, you can just by ipse dixit wave your wand and say,

9    but these don't count.  You have to get to that, or this case,

10   as I said a moment ago, will go nowhere, and we really do need

11   to get this question resolved, your Honor.

12        THE COURT:  Thank you.

13        MR. DESPINS:  Very briefly, your Honor.  I agree with

14   Mr. Stancil that what's attempted here is to confuse a bunch of

15   issues so that the Court basically says, oh, I need to stick to

16   what we have.  Otherwise, there's going to be chaos.  We are

17   not challenging the bonds.  We are challenging the creation of

18   COFINA as a structure that was meant -- that had the effect of

19   going around constitutional, very clear constitutional

20   provisions.

21        If we are correct that in fact there was

22   constitutional evasion, the consequence of that is that the

23   transfer of SUT by the Commonwealth to COFINA would not be

24   valid, and therefore, the SUT would be owned by the

25   Commonwealth.

I1AYPROPM2

1          THE COURT:  Would not be valid because COFINA does not

2    legitimately exist as an entity, or would not be valid because

3    at some point certain ceilings were exceeded so that some

4    elements of what COFINA obligated itself to do were

5    unconstitutional and, therefore, shouldn't be funded with SUT?

6          MR. DESPINS:  No.  It's not a question of whether it's

7    not a valid legal entity or not.

8          The question is did the transfer of SUT, which was

9    clearly an asset of the Commonwealth and an available resource,

10   as defined in the Constitution, did that violate the

11   Puerto Rico Constitution and, therefore, did any structure that

12   accomplished that transfer -- is any structure that

13   accomplished that structure void because it violates the

14   Constitution, either because of debt priority or either because

15   it was designed or had the effect, designed or had the effect,

16   of evading other constitutional motivations such as deficit

17   funding or exceeding the debt limits.

18         But what they want is to actually litigate the issue.

19   They're saying, no.  No.  Those claims don't make sense.

20   Therefore, find they're out of scope, but that's not the

21   standard, your Honor.

22         The standard is we've pled them.  They're very clear

23   in articles 12 and 13 of the complaint.  Whether they're in

24   scope or not is not a mini trial on whether they think those

25   claims make sense or not.

I1AYPROPM2

1          Clearly they do make sense.  Other courts have held

2    that similar structures are void and, therefore, must --

3    because they violate the local Constitution in those cases, and

4    it's exactly the same thing that we're doing here, your Honor.

5          THE COURT:  Thank you.

6          I will take this under advisement.  I understand the

7    pressures of the summary judgment schedule.  So I will try not

8    to keep you all waiting long.  Thank you all for your work here

9    today.  Safe travels.  We are adjourned.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I1AYPROPM2

```
1  UNITED STATES DISTRICT COURT)
                                      ) ss.
2  OF PUERTO RICO                     )
```

6                              REPORTERS' CERTIFICATE

8            I, Kelly Surina and Lisa Picciano Fellis, do hereby

9    certify that the above and foregoing, consisting of the

10   preceding 23 pages, constitutes a true and accurate transcript

11   of my stenographic notes and is a full, true and complete

12   transcript of the proceedings to the best of our ability.

13            Dated this 10th day of January, 2018.

14            S/Kelly Surina_____

15            Kelly Surina, RMR, CSR, RPR, CRR

16            S/Lisa Picciano Fellis_____

17            Lisa Picciano Fellis, RMR, CSR, RPR

18            Official Court Reporters

19            500 Pearl Street

20            New York, NY 10007

21            212-805-0320