**Hearing Date:** February 7, 2018, 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline:** January 23 , 2018, 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
|     as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
|     Debtors.[1] | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
|     as representative of | **This Motion relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.** |
| THE COMMONWEALTH OF PUERTO RICO, | |
|     Debtor. | |

---------------------------------------------------------------x

### JOINT MOTION OF AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO AND AMERICAN FEDERATION OF TEACHERS, AFL-CIO, FOR AN ORDER TO PERMIT THE PROCESSING THROUGH RESOLUTION OF EMPLOYMENT ARBITRATION AND GRIEVANCE PROCEEDINGS

The American Federation of State, County and Municipal Employees International Union, AFL-CIO ("AFSCME") and the American Federation of Teachers, AFL-CIO ("AFT"), on behalf of themselves, their local affiliates in Puerto Rico and their members (collectively, the "Unions" or "CBA Counterparties"), through their undersigned counsel, respectfully move the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Court for an Order pursuant to 11 U.S.C. §§ 105 and 362 with respect to the processing through resolution of employment arbitration and grievance proceedings and, in support of their motion, state as follows:

## PRELIMINARY STATEMENT

1. From the outset of these title III cases, the Court has recognized the desirability of, and has encouraged the parties to negotiate, a "global protocol" to permit the efficient administration of employment arbitration and grievance proceedings. Today, there are thousands of such proceedings, virtually all of them stopped in their tracks by the Commonwealth of Puerto Rico's ("Commonwealth") erroneous assertion that they are subject to the stay provided under section 301(a) of title III of the *Puerto Rico Oversight, Management and Economic Stability Act of 2016* ("PROMESA") (the "Title III Stay"). The Unions disagree with the Commonwealth and submit that the Title III Stay does not apply to these agency administrative proceedings.

2. Regardless, no one can dispute that these thousands of routine administrative proceedings must be processed and resolved at some point. Nor can there be any dispute that these matters are having and will have profound personal implications for the wellbeing of the involved employees and their families, including in many cases a determination of whether employees will keep their jobs or will lose the ability to sustain themselves in Puerto Rico's hurricane-ravaged economy.

3. The need for fair and expeditious resolution of arbitration and grievance proceedings is all the more urgent in the wake of Hurricanes Irma and Maria. All parties acknowledge that (1) the revival of Puerto Rico's post-hurricane economy is essential if the Commonwealth is to have any chance of a confirmable plan of adjustment in its title III case, and (2) a chief threat to that revival is the out-migration of hundreds of thousands of Puerto Ricans who may give up hope of making a future on their devastated island. The tens of thousands of

Commonwealth workers represented by the Unions are critical to the rebuilding and sustainability of Puerto Rico. The services they provide in the island's schools, correctional institutions, and public agencies are vital to the recovery and safety of the communities they serve; the dollars they spend are the lifeblood of Puerto Rico's economy. Perversely, the continued stay of routine administrative proceedings on which these employees rely to assure that they will have safe and fair conditions of employment runs directly counter to the Commonwealth's efforts to rebuild. By depriving employees of a timely hearing and resolution of arbitrations and grievances, the misapplication of the Title III Stay to these routine administrative matters sends public employees exactly the wrong message at the wrong time: it tells them that their rights as public employees are not respected and that they cannot have any certainty about their employment status, work conditions or compensation. It effectively encourages them to join the exodus from the island.

4. By this motion, the Unions therefore respectfully ask the Court to grant a limited and common sense order to prevent those destructive consequences. In particular, the Unions request entry of an order substantially in the form of the annexed Exhibit A (the "Proposed Order"):

- Declaring that the Title III stay does not apply (or lifting it to the extent it does) with respect to all prepetition employment arbitration and grievance proceedings or other statutory disciplinary or discharge proceedings to the limited extent of permitting such proceedings to proceed in the normal course through resolution, provided, however, that any amounts awarded in such proceeding shall not be collected from the Commonwealth, but shall be treated, as applicable, as a liquidated claim under a plan of adjustment for the Commonwealth;

- Declaring that postpetition employment arbitration and grievance proceedings or other statutory disciplinary or discharge proceedings are not subject to the stay and may proceed to disposition and award in the normal course; and

- Preserving all rights and defenses of all parties with respect to employment arbitrations and grievances or other statutory disciplinary or discharge proceedings, including the Commonwealth's right to contend that any disposition or award in such

proceedings violates applicable Commonwealth or federal law or any certified fiscal plan.

In the alternative, the Unions request that with respect to the most urgent Prepetition Proceedings—those involving discharge and discipline—the Court at least enter an order lifting the stay to permit such proceedings to proceed in the normal course through resolution, but not to the collection of any monetary award against the Commonwealth.[2]

### THE UNIONS

5. AFSCME, a labor union affiliated with the AFL-CIO that represents 1.4 million members, has two affiliated local chapters in Puerto Rico: Servidores Públicos Unidos, AFSCME Council 95 (in English, "United Public Servants") ("SPU"), and Capítulo de Retirados de SPU, the independently-chartered AFSCME chapter for retired employees of the Commonwealth of Puerto Rico. SPU serves as the exclusive collective bargaining representative under Commonwealth law for approximately 12,000 active Commonwealth employees, ranging from social workers to corrections officers to nurses who care for juvenile wards of the Commonwealth.

6. The AFT, a labor union affiliated with the AFL-CIO that represents over 1.6 million members (including both education and other professionals) in more than 3,000 local

---

[2] Prior to the Court's entry of its Order Further Amending Case Management Procedures (Docket No. 1512) (the "Case Management Procedures")—which requires a movant seeking to lift the automatic stay with respect to certain prepetition civil matters to provide a "Lift Stay Notice" to AAFAF (defined below) "at least 15 business days prior to filing a Stay Relief Motion" and to meet and confer during those 15 days—the Unions, without conceding that the stay applied, provided to AAFAF lists of all the Prepetition Proceedings involving discipline and discharge. The Unions and AAFAF then met and conferred over a process for allowing those particular grievances to move forward. Specifically, on August 2, 2017, AFSCME supplied AAFAF with a detailed list of the 123 active prepetition discipline and discharge matters in which SPU represents Commonwealth employees, including the following data points: employee name, parties to the dispute (including Commonwealth agency), filing date, forum, grievance or case number, relief sought and current stage of the dispute. Likewise, on August 7, 2017 and August 29, 2017, the AFT supplied AAFAF with a detailed list of all active prepetition matters, including discipline and discharge matters, in which AMPR represents Commonwealth employees, including the following data points: case number, date of filing, type of case, brief explanation of the claim, stage of the case, relief sought and forum. Thus, although it is the Unions' position that the Lift Stay Notice requirement does not apply here (*see* note 3, *infra*), that requirement has been satisfied with respect to the discipline and discharge matters over which the Unions and the Commonwealth have already met and conferred for much longer than 15 business days, and thus there is no procedural bar to the Court ordering the alternative stay relief requested here.

affiliates across the United States, has an affiliated local chapter in Puerto Rico, the Asociación de Maestros de Puerto Rico-Local Sindical ("AMPR"). The AMPR represents over 30,000 active teachers in the Commonwealth's public schools, making it the largest public employee union on the island.

## PROCEDURAL BACKGROUND

7. On May 3, 2017, the Commonwealth, by and through the Financial Oversight and Management Board ("Oversight Board"), as the Commonwealth's representative pursuant to PROMESA section 315(b), filed a petition with the United States District Court for the District of Puerto Rico under title III of PROMESA (the "Title III Case").

8. The Commonwealth has asserted the applicability of the automatic stay under sections 362(a) and 922(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to the Title III Case by PROMESA section 301(a), with respect to prepetition grievances and arbitrations or other statutory disciplinary or discharge matters arising from prepetition conduct brought under the grievance and arbitration procedures in unrejected collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes, including, but not limited to, Law 184-2004 and Law 32-1972 (the "Prepetition Proceedings").

9. The Commonwealth has also erroneously asserted the Title III Stay with respect to postpetition grievances and arbitrations or other statutory disciplinary or discharge matters arising from postpetition conduct brought under the grievance and arbitration provisions in unrejected collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes, including, but not limited to Law 184-2004 and Law 32-1972 (the "Postpetition Proceedings").

10. At a hearing on June 28, 2017, the Oversight Board and the CBA Counterparties informed the Court of ongoing negotiations regarding the processing of Prepetition Proceedings. At that time, the Oversight Board recognized that there could be "hundreds" of lift say motions regarding the Prepetition Proceedings. *See* Transcript from the June 28, 2017 Omnibus Hearing Before the Hon. U.S. District Court Judge Laura Taylor Swain ("Transcript"), at p. 45, line 16. Counsel for the Oversight Board admitted that a global protocol would alleviate the Court's workload of having to "address [each motion] as they arise, piecemeal." *Id.*, at lines 15-16. The Court noted its appreciation for the efforts of the parties and indicated it would continue to hear lift stay motions "as they come in and until…given notice of some agreed global protocol" (*id.*, at lines 19-21) and further indicated a preference for not having to address the Prepetition Proceedings "motion by motion" (*id.*, at p. 46, line 2-4).[3]

11. Following the June 28 hearing, and in accordance with the Court's direction, the Unions engaged in discussions with the Commonwealth, represented by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), regarding proceeding with the Prepetition Proceedings. During July and August of 2017, counsel for the Unions, the Oversight Board and AAFAF had several meetings and conference calls to discuss how the Prepetition Proceedings can continue in the ordinary course without materially impacting the Commonwealth's Title III Case or any future plan of adjustment that may be proposed therein. In the course of those discussions, the Unions provided AAFAF with detailed information regarding pre-petition discipline and discharge matters. *See* note 2, *supra.* Regrettably, those

---

[3] The Case Management Procedures for lift stay motions are not applicable here because (i) as set forth herein, the Title III Stay does not apply to the Prepetition Proceedings; and (ii) the Case Management Procedures expressly apply to matters involving "the continuance of an ordinary course civil action," which grievances and arbitrations are not. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17 BK 3282-LTS (October 24, 2017) (Docket Entry #1512). Further, as this Court has already made clear, it does not make sense for the Court, the Commonwealth or the Unions to negotiate over routine employee grievances one matter at a time, as contemplated by the Case Management Procedures.

-6-

discussions were disrupted for months by the hurricanes that devastated Puerto Rico in September.

12. Discussions resumed briefly in late November. The parties, however, were unsuccessful in their efforts to agree on a protocol on the resolution of Prepetition and Postpetition Proceedings.

13. Due to the breakdown in discussions, the Unions are left with no alternative other than to move this Court for the relief requested herein. The Commonwealth has had more than ample opportunity to work with the Unions to establish a protocol for proceeding with the Prepetition Proceedings. Indeed, negotiations commenced almost six months ago. Many of the employees affected by these Prepetition Proceedings are struggling in the wake of the hurricanes without the pay or other resources to which they are entitled.

14. Wrongfully discharged employees remain out of work with no recourse at the worst possible time. One salient example is AFSCME/SPU member Sra. Maria Sanchez Texidor, who on November 22, 2016 was found by the Puerto Rico Public Service Commission ("the Commission") to have been wrongfully discharged by the Commonwealth, which was ordered by the Commission to reinstate her to her position. That decision was appealed by the Commonwealth to a Puerto Rico trial court, which on April 26, 2017, ruled for AFSCME/SPU and Sra. Sanchez Texidor once again, affirming her right to reinstatement. *See Administracion de Rehabilitacion Vocacional v. Servidores Publicos Unidos de Puerto Rico/AFSCME*, Tribunal de Primera Instancia Centro Judicial de San Juan Sala Superior (Civ. Num. KAC2016-1215, April 26, 2017). Yet Sra. Sanchez Texidor remains out of work because the Commonwealth, after filing a motion to reconsider the trial court's decision against the Commonwealth, now refuses to proceed with its own reconsideration motion or to reinstate her, citing to the automatic stay. As a result, Sra. Sanchez Texidor lacks the necessary resources to support not only herself post-

hurricane, but also her elderly parents, with whom she lives and whose significant medications she helps purchase.

15. Under these circumstances, the Unions submit that their request is reasonable and appropriate at this time.[4]

## THE STAYED PROCEEDINGS

16. At present, there are thousands of arbitration and grievance proceedings and other statutory discharge and discipline matters involving members of the Unions that have been stayed by the misapplication of the Title III Stay. That number increases every day. We note that if allowed to proceed as the Unions propose, such proceedings would not be heard immediately or at the same time but, rather, would be scheduled and heard in the ordinary course under a schedule to be set by the Public Sector Labor Relations Commission (for matters governed by Law 45-1998 or Law 184-2004) or Comisión de Investigación, Procesamiento y Apelación (for matters governed by Law 32-1972) (*see infra*).

17. These proceedings have been brought pursuant to the grievance and arbitration procedures in unrejected collective bargaining agreements between the Commonwealth and the Unions, or under applicable statutes, including but not limited to Law 184-2004 and Law 32-1972. Puerto Rico labor law requires that all collective bargaining agreements in the public sector contain a mechanism for resolving workplace disputes and that the parties to the collective bargaining agreement avail themselves of the Public Sector Labor Relations Commission's arbitration services, *see* 3 L.P.R.A. §1452, or for certain disciplinary proceedings specific to

---

[4] It is particularly appropriate for the Court to hear this motion in connection with the bar date motion being heard on February 7, 2018. The Unions intend to object, if necessary, to any requirement that proofs of claim be filed concerning Prepetition Proceedings. The Commonwealth's refusal to process the Prepetition Proceedings has resulted in a mass of unprocessed, unliquidated grievances. Filing proofs of claim for each individual grievance would not only be unduly burdensome for the Unions and the employees, but also would result in widespread confusion.

particular public safety employees, that administrative proceedings be handled by the Comisión de Investigación, Procesamiento y Apelación under Law 32-1972, *see* 1 L.P.R.A. § 172.

18. The Unions respectfully submit that an order to allow the Unions and the Commonwealth to proceed with the Prepetition and Postpetition Proceedings is warranted both as a matter of law and equity. As will be shown below, the Title III Stay does not even apply to the routine administrative proceedings that are now wrongfully held in limbo by the Commonwealth's unilateral invocation of the stay. In major bankruptcy cases across many industries, chapter 11 debtors have continued to comply with grievance and arbitration procedures without jeopardizing their reorganization. Indeed, the United States Supreme Court has not only endorsed the use of a grievance and arbitration procedure in resolving contractual disputes but also restrained court involvement in such disputes by imposing a judicial deference to the process. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960) ("the courts…have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument that will support the claim"); *United Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574 ("the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) ("the question of interpretation of the collective bargaining agreement is a question for the arbiter") (collectively the "*Steelworkers Trilogy*"). As emphasized in the *Steelworkers Trilogy,* the grievance and arbitration procedure of a collective bargaining agreement serves to permit employees their day in court and the processing of even the most frivolous claims can be "therapeutic" to an employee. The organized public employees of Puerto Rico are being denied this opportunity wholesale.

19. Moreover, even if the stay did apply—and it does not—PROMESA, like the Bankruptcy Code, permits the Court to lift the stay to allow proceedings to continue. Here, all the relevant facts as well as considerations of public policy and equity compel the conclusion that cause exists to lift the stay as to all Prepetition Proceedings to allow them to proceed in the normal course through resolution, but not to the collection of any monetary award against the Commonwealth. In the alternative, the Court should at the very least enter an order to lift the stay with respect to the most urgent Prepetition Proceedings—those involving discharge and discipline, all of which the Unions have already provided ample notice to AAFAF and met and conferred over specifically—so that Commonwealth employees can be heard on their basic right to earn a living during this difficult time.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

21. This is a non-core proceeding pursuant to 28 U.S.C. § 157(G)(2). The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105 and 362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

22. The Unions request entry of an order substantially in the form of the Proposed Order declaring that the Title III Stay does not apply to the Prepetition Proceedings (or, to the extent it may apply, lifting that stay) and permitting the Prepetition Proceedings to proceed in the normal course through resolution (but not to the collection of any monetary award against the Commonwealth), while preserving all defenses, including in relation to a fiscal plan.

23. In the alternative, the Unions request that this Court enter an order lifting the automatic stay as to the most urgent Prepetition Proceedings—those involving discharge or

-10-

discipline of an employee, all of which the Unions have already provided ample notice to AAFAF and met and conferred over specifically—until such time as a global protocol can be agreed upon for resolving all of the outstanding Prepetition Proceedings, and again understanding that these discharge or discipline matters would proceed in the normal course through resolution but not to the collection of any monetary award against the Commonwealth.

24. Finally, the Unions request an order declaring that the Title III Stay does not apply in any event to the Postpetition Proceedings.

## ARGUMENT

### A. The Title III Stay Does Not Apply to the Prepetition Proceedings

25. PROMESA itself exempts the Prepetition Proceedings from the Title III Stay. PROMESA section 301 (48 U.S.C. § 2161) makes section 362(b)(4) of the Bankruptcy Code applicable to this Title III Case. Section 362(b)(4) provides that "the filing of a petition…does <u>not</u> operate as a stay…of the commencement or continuation of an action or proceeding by a governmental unit…to enforce such governmental unit's…police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's …police or regulatory power." (Emphasis added). PROMESA further provides that, unless the Oversight Board consents, a Court, by stay, order, or decree may <u>not</u> interfere with "any of the political or governmental powers of the debtor." 48 U.S.C. § 2165(3).

26. All the Prepetition Proceedings are creatures of Commonwealth statute and government agency processes and entail the exercise of the Commonwealth's governmental power. The dispute resolution procedures governing public-employee arbitrations in Puerto Rico are established and mandated by Commonwealth statute, not just by collective bargaining agreements, and mandate the use of a government agency to conduct the arbitrations. Puerto

-11-

Rico Law 45 requires the Commonwealth to appoint a Public Sector Labor Relations Commission (the "Commission") to preside over grievances the CBA Counterparties take to arbitration, including, without limitation, discharge and discipline cases. This statutory authority and mandatory use of a government agency to conduct the arbitrations places all public employee arbitration and grievance proceedings squarely in the realm of the Commonwealth's exercise of its governmental power.

27. It follows as a matter of law that the Title III Stay cannot apply to the Prepetition Proceedings because the Prepetition Proceedings are creatures of, and governed by, Puerto Rico law and agencies in the exercise of the Commonwealth's police power (as opposed to under the terms of collective bargaining agreements). Any bankruptcy stay is inapplicable, as it cannot apply to administrative proceedings established by statute. For example, cases are legion holding that section 362(b)(4) exempts proceedings before the National Labor Relations Board ("NLRB"), including those involving disciplinary matters, from the automatic stay in chapter 11 bankruptcies, with only questions of priority and payment of financial remedies to be determined by the court. *See, e.g.*, *N.L.R.B. v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992) (*per curiam*) (holding that the NLRB is a "governmental unit" within the meaning of the Bankruptcy Code and proceeding to enforce the NLRB's regulatory powers was within the exception to the automatic stay); *Ahrens Aircraft, Inc. v. N.L.R.B.*, 703 F.2d 23, 24 (1st Cir. 1983) (*per curiam*) (enforcing NLRB order to reinstate employees as, among other reasons, the automatic stay did not apply to NLRB proceedings); *Asseo for & on Behalf of N.L.R.B. v. Bultman Enterprises, Inc.*, 951 F.Supp. 307, 314 (D.P.R. 1996) (holding that 11 U.S.C. §362(b)(5) "does not proscribe the NLRB as a governmental unit from continuing [a] contempt proceeding and seeking the entry of a money judgment as penalty for civil contempt").

28. Further, the United States Supreme Court has made clear that a bankruptcy court should not interpret a collective bargaining agreement where the relevant governing statute specifically required that it be interpreted by a specialized tribunal. *Order of Ry. Conductors of America v. Pitney*, 326 U.S. 561, 565-66 (1946).

29. The same result should obtain here because the Commission and CIPA are governmental agencies created by statute and charged with resolving statutorily mandated disputes. Accordingly, the Title III Stay can no more apply to Prepetition Proceedings before the Commission or CIPA than section 362's automatic stay can apply to proceedings before the NLRB or the specialized tribunal referenced in *Pitney*.

### B. Ample Cause Exists to Lift any Stay of the Prepetition Proceedings

30. Even if the Court were to determine that the Title III Stay could apply, ample cause exists to lift the stay to the limited extent required to grant the relief set forth in the Proposed Order. Section 362(d)(1) of the Bankruptcy Code, made applicable here through PROMESA section 301 (48 U.S.C. § 2161), permits a court to grant relief from the automatic stay "for cause." To determine whether cause exists to lift the stay, courts look to the oft-cited *Sonnax* factors:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In Re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984)).

31. This Court has applied these very criteria in granting a motion for relief from the automatic stay in this Title III Case for a labor arbitration. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17 BK 3282-LTS (July 12, 2017) (Docket Entry #620). There, the Court found that the movant had "demonstrated that many of the *Sonnax* criteria weigh[ed] in his favor with respect to continuing the arbitration" and ordered that "the automatic stay be lifted to allow the [a]rbitration to proceed to the rendering, but not enforcement, of an award." *Id.*, at p. 4.

32. Those *Sonnax* factors that possibly apply here – factors 1, 2, 4, 7, 10 and 12 – all weigh heavily in favor of lifting the stay of all Prepetition Proceedings to the extent of allowing them to proceed through resolution as set forth in the Proposed Order. Thus:

> **Resolution.** The relief requested would permit the complete resolution of thousands of routine employment arbitrations and grievances, disputes that must be resolved in any event.
>
> **Lack of Interference with the Title III Case**. Allowing Prepetition Proceedings to proceed through resolution without any monetary recovery against the Commonwealth, while preserving all defenses, including in relation to any certified fiscal plan cannot possibly interfere with progress of the Title III Case. Indeed, this Court has already found that lifting stay to allow rendering of a discharged employee's arbitration award, since rendering the award "would not interfere materially, if at all, with the Title III [C]ase." *Fin. Oversight & Mgmt. Bd. for Puerto Rico*, *supra*.
>
> **Specialized Tribunal.** The Commission is a body appointed by the Commonwealth for the sole purpose of implementing, applying and enforcing the provisions of Puerto Rico's labor law in the public sector. This Court has recognized that the Commission is a specialized tribunal that can address both equitable and monetary claims. *Id.*
>
> **Prejudice to Other Creditors**. As with the lack-of-interference factor, allowing the Prepetition Proceedings to proceed through resolution, without any monetary recovery, cannot possibly prejudice other creditors. Should any monetary award be rendered, recovery of that award would be subject to the same process applicable to all creditors.
>
> **Judicial Economy.** As the Court recognized during the June 28, 2017 hearing, to require the thousands of routine arbitrations and grievances to move forward on a motion-by-motion basis would be extremely time-consuming and would divert the Court's resources from the primary Title III Case. Judicial economy is best served by allowing arbitrations and grievances to proceed through the established statutory process.

**Impact on the Parties and Balance of Harms**. Failure to move ahead with the Prepetition Proceedings will leave the thousands of employees without any recourse to address workplace injustices. For many, the harm could be irreparable. The uncertainty and chaos that has arisen due to the unresolved disputes is currently having a direct impact on whether these families choose to remain in Puerto Rico or rebuild their lives elsewhere. Those who are forced to leave Puerto Rico may never return.

33. The possibility of an adverse impact on the Title III Case is even more remote because of the limited scope of relief requested. The Proposed Order would only provide that the Prepetition Proceedings will proceed through the claim and grievance handling process and to arbitration, or similar process in the case of Proceedings under Law 184-2004 or Law 32-1972, through resolution, whether it be a monetary award, administrative decision or settlement. To the extent that any portion of a disposition of a Prepetition Proceeding includes a liquidated damage award, that award will <u>not</u> be collected from the Commonwealth, but will be treated as a liquidated claim under a plan of adjustment for the Commonwealth and/or under any cure process established under such a Plan or under section 365(b) of the Bankruptcy Code, except (i) to the extent that the Commonwealth chooses to permit any such award to be collected upon, or (ii) such award is covered by applicable insurance, in which case it shall be subject to collection. In addition, the proposed order requested by the Unions would expressly preserve all rights and defenses of all parties with respect to employment arbitrations and grievances, including the Commonwealth's right to contend that any disposition or award in such proceedings violates applicable Commonwealth, federal law or the fiscal plan.

34. Most important, this case presents far more momentous considerations than the usual *Sonnax* factors considered on a garden variety lift stay motion. At issue here is the very survival of a sovereign territory of the United States. All parties recognize that the key to Puerto Rico's survival and to its ability to formulate a feasible plan of adjustment is the immediate restoration of essential government services and the stanching of the post-hurricane human exodus from the island. The tens of thousands of public employees represented by the Unions

-15-

are essential to that effort; Puerto Rico cannot survive without their continued support and their continued participation in the Puerto Rican economy. If the Commonwealth is to preserve this irreplaceable workforce, if the Commonwealth is to take a meaningful step to encourage its workers to stay and to not join the hundreds of thousands of their compatriots who are moving to the mainland, the least it can do is to afford its workers the due process of allowing their ordinary employment arbitration and grievance proceedings to move to resolution. For this reason alone, the relief requested should be granted.

35. At a minimum, and as an alternative to lifting of the Title III Stay for all Prepetition Proceedings, the Court should at least lift the stay as to discharge and disciplinary matters as these are the most urgent matters for employees. Discharges are crucial for obvious reasons: these employees are currently out of work and, particularly under the current circumstances on the island, this is untenable for many. *See, e.g.,* ¶ 14, *supra.* Disciplinary proceedings are equally troubling as they may be a step in the discharge process. These employees deserve to have their voices heard through the grievance and arbitration process. Further, as at least one Puerto Rico appellate court has held, *sua sponte* in a discharge case under Law 32-1972 in which the Commonwealth had asserted application of the automatic stay, the stay should not apply in disciplinary and discharge matters because those matters are, at bottom, initiated by the Commonwealth seeking the discharge or discipline, and are not economic in nature but rather impact the fundamental right of a public employee to self-sustenance. *See*

*Alexis Alvarez del Valle v. Oficina de Servicios con Antelacion a Juicio,* Puerto Rico Appellate Court of the San Juan-Caguas Region (Case Num. KLRA201700136, Nov. 16, 2017).[5]

### C. The Title III Stay Does Not Apply to Postpetition Proceedings

36. By its express terms, the automatic stay of section 362(a)(1) and (2) applies only to causes of action that arise <u>prior</u> to the bankruptcy filing:

> [A] petition filed under section 301, 302 or 303 of this title…operates as a stay, applicable to all entities of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor <u>that was or could have been commenced before</u> the commencement of the case under this title, or to recover a claim against the debtor <u>that arose before</u> the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained *before* the commencement of the case under this title…

11 U.S.C. §362(a) (emphasis added); *see also In re Vacuum Cleaner Corp. of America*, 58 B.R. 101, 102 (E.D. Penn. 1986) ("the automatic stay does not bar the commencement of an action against the debtor on a postpetition claim"). Accordingly, the Title III Stay cannot apply to Postpetition Proceedings here.

37. Regrettably, however, the Commonwealth has ignored this limitation of section 362(a) and has purported to apply the Title III Stay indiscriminately to Pre- and Postpetition Proceedings alike. The Unions therefore request that any order issued by the Court on this motion expressly declare that Postpetition Proceedings are not stayed by the Title III Stay and may continue to final resolution in the ordinary course and without further delay.

---

[5] SPU represents the discharged employee in this case, which was included in the August 2, 2017 list provided by AFSCME to AAFAF as discussed in note 2, *supra*. Subsequently, as soon as AFSCME became aware of the judge's *sua sponte* decision that the stay did not apply to the *Alvarez del Valle* case, AFSCME notified AAFAF and, without either party conceding whether the stay does or does not apply, the parties stipulated to allow that particular case to move forward on terms substantially similar to those which the Unions are asking for in this Motion. *See* Stipulation Modifying the Automatic Stay Between the Commonwealth of Puerto Rico and Alexis Alvarez del Valle (annexed hereto as Exhibit B).

## CONCLUSION

For all the forgoing reasons, the Unions respectfully request that the Court grant this motion in all respects and enter the Proposed Order or, in the alternative, lift the Title III Stay as to discharge and disciplinary matters so that at least those especially urgent matters may proceed in the normal course through resolution (but not to the collection of any monetary award against the Commonwealth) while the parties continue to negotiate a global resolution to this important issue.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify all counsel of record and caused to be mailed or emailed a copy, as provided in the Court-approved Case Management Procedures in this case.

Dated: January 16, 2018

*/s/José Luis Barrios-Ramos*
José Luis Barrios-Ramos

| | |
|---|---|
| Dated: January 16, 2018 | /s/ *Curtis C. Mechling* <br> Curtis C. Mechling (USDC CM5957) <br> Sherry J. Millman (USDC CM6105) <br> Stroock & Stroock & Lavan LLP <br> 180 Maiden Lane, New York, NY 10038 <br> (212) 806-5434 <br> cmechling@stroock.com <br> smillman@stroock.com <br><br> and <br><br> /s/ *José Luis Barrios-Ramos* <br> José Luis Barrios-Ramos (USDC 223611) <br> McLeary Ave., Suite #303 <br> San Juan, Puerto Rico 00936-8006 <br> (787) 593-6641 <br> Barrios.jl@outlook.com <br><br> *For American Federation of Teachers, AFL-CIO, as authorized agent for the Asociación de Maestros de Puerto Rico-Local Sindical* <br><br> /s/ *Sharon L. Levine* <br> Sharon L. Levine <br> Dipesh Patel <br> Saul Ewing LLP <br> 1037 Raymond Blvd., Suite 1520 <br> Newark, NJ 07102 <br> (973) 286-6713 <br> slevine@saul.com <br><br> and <br><br> Judith Rivlin <br> Teague P. Paterson <br> Matthew S. Blumin <br> American Federation of State, County and Municipal Employees <br> 1101 17th Street NW, Suite 900 <br> Washington, DC 20011 <br> (202) 775-5900 <br><br> *For the American Federation of State, County and Municipal Employees* |