Objection Deadline: January 23, 2018
Hearing Date: February 7, 2018

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS & TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**MOTION OF NATIONAL PUBLIC FINANCE
GUARANTEE CORPORATION FOR ENTRY OF AN
ORDER UNDER BANKRUPTCY RULE 2004 AUTHORIZING LIMITED
<u>DISCOVERY OF THE GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION AND VENUE ....................................................................................................2

BACKGROUND ............................................................................................................................3

I. Creation of the PR SIB Trust Fund ........................................................................3
II. PRHTA Represented That the SIB Funds Were Held In Trust In the Offering Statement for the 1998 Subordinated Bonds...........................................................6
III. GDB Misclassifies the PR SIB Trust Fund as a General Deposit Account and Refuses to Release the SIB Funds ..........................................................................7
IV. Counsel for GDB Admits that Money Held in Escrow Is Not Part of the PRHTA Estate........................................................................................................................9

RELIEF REQUESTED .................................................................................................................10

BASIS FOR RELIEF REQUESTED............................................................................................10

CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1..........15

NOTICE ........................................................................................................................................15

NO PRIOR REQUEST FOR RELIEF..........................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*,
 156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ......................................... 12

*Cameron v. United States*,
 231 U.S. 710 (1914) .................................................................................................................. 11

*In re Coffee Cupboard, Inc.*,
 128 B.R. 509 (Bankr. E.D.N.Y. 1991) ..................................................................................... 11

*Dynamic Fin. Corp. v. Kipperman (In re N. Plaza LLC)*,
 395 B.R. 113 (S.D. Cal. 2008) .................................................................................................. 11

*In re Enron Corp.*,
 281 B.R. 836 (Bankr. S.D.N.Y. 2002) ..................................................................................... 11

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*,
 318 B.R. 263 (S.D.N.Y. 2004) .................................................................................................. 12

*In re Gawker Media LLC*,
 No. 16-11700, 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ............................... 12, 14

*In re Hilsen*,
 Case No. 87-11261, 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ............................. 11

*In re Hughes,*
 281 B.R. 224 (Bankr. S.D.N.Y. 2002) ............................................................................... 12, 14

*In re Recoton Corp.*,
 307 B.R. 751 (Bankr. S.D.N.Y. 2004) ....................................................................... 11, 12, 14

*In re Summit Corp.*,
 891 F.2d 1 (1st Cir. 1989) .......................................................................................................... 12

*In re Youk-See*,
 450 B.R. 312 (Bankr. D. Mass. 2011) ...................................................................................... 11

**Federal Statutes**

11 U.S.C. § 1109(b) ....................................................................................................................... 11

23 U.S.C. § 601 ................................................................................................................................ 4

48 U.S.C. § 2166 ............................................................................................................................2

48 U.S.C. § 2167 ............................................................................................................................2

48 U.S.C. § 2170 ..........................................................................................................................10

1997 DOT Appropriations Act ......................................................................................................4

Moratorium Act ..........................................................................................................................7, 8

National Highway System Designation Act of 1995 § 350 .............................................. 4, 5, 6, 7

Puerto Rico Oversight, Management, and Economic Stability Act.................................... 1, 2, 10

Transportation Equity Act Transportation Equity Act for the 21st Century .................................4

**Rules**

Fed. R. Bankr. P. 2004 ........................................................................................................*passim*

Bankr. D.P.R. R. 2004-1 ........................................................................................................ 10, 15

National Public Finance Guarantee Corporation ("National"), a party in interest in these Title III Cases, files this motion (the "Motion") for an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to the Title III Cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), substantially in the form attached hereto as Exhibit A (the "Proposed Order"). National seeks authorization to take discovery of the Government Development Bank for Puerto Rico ("GDB") regarding the existence, historical treatment, and status of a State Infrastructure Bank ("SIB") trust account (the "PR SIB Trust Fund") created at GDB for the benefit of Puerto Rico Highway and Transit Authority ("PRHTA") bondholders pursuant to an agreement (the "Puerto Rico Infrastructure Bank Agreement" or the "Bank Agreement") between the Puerto Rico Department of Transportation and Public Works ("the Department"), PRHTA, and GDB on June 12, 1998 and to conduct examinations of designated representatives of GDB.

In support of this Motion, National respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. Starting in 1998, GDB served as trustee and fiscal agent of a trust account that was established, under federal and Commonwealth law, to provide financial assistance to public and private entities sponsoring transportation infrastructure projects. This account, the PR SIB Trust Fund, houses all funds constituting the Commonwealth's SIB (the "SIB Funds"), and serves as collateral to a series of 1998 PRHTA bonds insured by National.

2. By its express terms, the Bank Agreement establishing the PR SIB Trust Fund created an "irrevocable trust fund . . . held in the custody of GDB in trust, separate and apart

1

from all other funds of the Department, PRHTA and GDB."[1] In contravention of these express terms, in June 2016—nearly 20 years after the creation of the trust fund—representatives of GDB asserted for the first time that, despite its contractual obligations and repeated representations to the contrary, GDB held the SIB Funds in a *deposit* account, rather than a trust account. Accordingly, GDB refused to release the SIB Funds to cover a series of defaults on PRHTA bonds. Because of those defaults, National was forced to pay millions in bond insurance payments due on the 1998 subordinated PRHTA bonds that were secured by the PR SIB Trust Fund and should have been paid with SIB Funds.

3. National now seeks from GDB discovery regarding the existence, history, and status of the PR SIB Trust Fund and the treatment of all accounts and deposits within that Fund. This information is necessary to determine whether GDB is currently holding—or has ever held—the SIB Funds in a trust account, as it repeatedly represented was the case. Moreover, this information will confirm whether GDB is improperly holding the PR SIB Trust Funds as property of the PRHTA estate, because as counsel for GDB recently admitted to this Court, funds held in escrow *are not part of the PRHTA estate*.

## JURISDICTION AND VENUE

4. The United States District Court for the District of Puerto Rico (the "Court") has jurisdiction to consider this matter under section 306 of PROMESA. 48 U.S.C. § 2166. Venue is proper under section 307 of PROMESA. 48 U.S.C. § 2167.

---

[1] The Bank Agreement is attached hereto as Exhibit B.

2

**BACKGROUND**

**I.     Creation of the PR SIB Trust Fund**

5.     National insures approximately $626 million of outstanding bonds issued by PRHTA, including a series of Subordinated Transportation Revenue Bonds (the "1998 Subordinated Bonds") that were issued in 1998 pursuant to PRHTA Resolution No. 98-06 (the "1998 Resolution"), as amended, and PRHTA Resolution 98-31 (the "98-31 Resolution").[2] National has the right to assert bondholders' rights in these Title III cases under applicable bond and insurance documents.

6.     Under PRHTA's enabling act and various PRHTA resolutions, PRHTA bonds are secured by a gross lien on (i) revenues derived from PRHTA's toll facilities; (ii) gasoline, diesel, crude oil, and other special excise taxes levied by the Commonwealth; and (iii) special excise taxes consisting of motor vehicle licenses fees collected by the Commonwealth. In addition, monies held in a reserve account within the PR SIB Trust Fund secure the 1998 Subordinated Bonds. *See* Puerto Rico Highway and Transportation Authority Subordinated Transportation Revenue Bonds (Series 1998) Offering Statement (July 15, 1998) at 11, attached as Exhibit C.[3]

---

[2] The $626 million figure does not include the $58.5 million in bond insurance payments that National has already paid on HTA's behalf.

[3] The 1998 Resolution established a 1998 Subordinated Bond Reserve Fund. Under the 1998 Resolution, the monies in that fund were to be held, *in trust*, by the Fiscal Agent and "subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution." *See* 1998 Resolution § 401, attached as Exhibit D. These monies were to be "used for the purpose of paying interest on each Series of subordinated bonds and maturing principal of serial subordinated bonds of each such Series to which such account relates whenever and to the extent that the moneys held for the credit of the Subordinated Bond Service Account shall be insufficient for such purpose." *See id.* § 408.

Under the 1998 Resolution, the 1998 Subordinated Reserve Fund is subject to a Subordinated Reserve Requirement, an amount "required to be held to the credit of a separate account in the Subordinated Bond Reserve Fund corresponding to such Series." *Id.* at 14. The 1998 Resolution

3

7. The PR SIB Trust Fund was established through a cooperative agreement entered among the Federal Highway Administration (the "FHWA"), the Federal Transit Administration (the "FTA"), the Department, and PRHTA on December 22, 1997 (the "Cooperative Agreement"), attached as <u>Exhibit E</u>, and the Bank Agreement.

8. The Cooperative Agreement created a SIB, or state investment fund, for the Commonwealth under section 350 of the National Highway System Designation Act of 1995 (the "NHS Act") for the purpose of "making loans and providing other assistance to public and private entities carrying out or proposing to carry out" certain transportation-related infrastructure improvements. NHS Act § 350(a)(1) (1995) (current version at 23 U.S.C. § 601 (2015)).[4] The NHS Act empowered states with SIBs to transfer up to 10% of certain federal funds apportioned to that state in a given year into SIB accounts as capitalization grants, provided that the state match a designated percentage of the federal contribution with non-federal funds. *See id.* § 350(b)(2)–(3), (e).

9. The NHS Act required all SIBS, including the Commonwealth's SIB (the "PR SIB"), to maintain separate "highway" and "transit" accounts within the SIB. *Id.* § 350(b)(1).

---

further provides, however, that "[f]or purposes of determining the amount on deposit to the credit of any such separate account, any agreement between the Fiscal Agent and a financial institution serving as the depository institution of the Commonwealth of Puerto Rico state infrastructure bank (or other similar fund) created by virtue of Section 350 of the National Highway System Designation Act of 1995 . . . or any similar federal legislation, pursuant to which agreement such depository institution irrevocably agrees to provide funds to the Fiscal Agent for deposit to the credit of any separate account in the Subordinated Bond Reserve Fund shall be treated as satisfying the applicable Subordinated Reserve Requirement to the extent of the maximum amount of funds so available to be provided to the Fiscal Agent for deposit to the credit of such separate account." *Id.*

[4] The NHS Act was later expanded by the 1997 DOT Appropriations Act—which, among other things, authorized the contribution of $150 million in general funds to capitalize SIBs—and section 1511 of the Transportation Equity Act for the 21st Century.

4

The Act also prohibited the commingling of SIB funds. *Id.* ("No Federal funds contributed or credited to an account of an infrastructure bank established under this section may be commingled with Federal funds contributed or credited to any other account of such bank.").

10. Accordingly, under the terms of the Cooperative Agreement, PRHTA agreed "to create within the SIB a separate account to be designated as the Highway Account and a separate account to be designated as the Transit Account, each of which shall be dedicated solely to providing loans or other forms of financial assistance consistent with the NHS Act and permitted under Puerto Rico law." Cooperative Agreement § 1.2. The FTA and FHWA agreed to make payments to PRHTA for deposit in the PR SIB, and the Department agreed to match a set percentage of the federal contributions from non-federal sources. *See id.* § 1.3. In the Cooperative Agreement, the parties acknowledged that both the federal and non-federal SIB funds "may be used as a source of security for bonds issued by Puerto Rico or PRHTA to finance or refinance projects funded through the SIB." *Id.* §1.4(v).

11. Consistent with the requirements of the Cooperative Agreement, the Department and PRHTA entered the Bank Agreement with GDB in June 1998. As administrator and custodian of the SIB, respectively, the Department and PRHTA sought "to have the funds constituting the SIB held by GDB, as trustee and as fiscal agent." Bank Agreement at 1. To that end, the Bank Agreement established "[a]n irrevocable trust fund," designated the "Puerto Rico State Infrastructure Bank Trust Fund," with separate "Highway" and "Transit" accounts. *Id.* § 101. Under the Bank Agreement, "[t]he moneys in the Trust Fund" were to "be held in the custody of GDB *in trust*, separate and apart from all other funds of the Department, PRHTA, and GDB and shall be applied as hereinafter provided and as set forth in the Cooperative Agreement

5

and the NHS Act." *Id.* (emphasis added). The Bank Agreement further made clear that GDB would have "no lien on the moneys and Investments in the Trust Fund." *Id.* § 108.

12. Within the PR SIB Trust Fund's Highway Account, a subaccount designated "Puerto Rico Highway and Transportation Authority Subordinated Transportation Revenue bonds (Series 1998) Highway Subaccount" was created and later capitalized by federal capitalization grants and Commonwealth matching funds in the amount of $15,010,735. *See* Offering Statement at 11.

## II. PRHTA Represented That the SIB Funds Were Held In Trust In the Offering Statement for the 1998 Subordinated Bonds

13. The Offering Statement published in connection with the issuance of the 1998 Subordinated Bonds detailed the establishment of the PR SIB Trust Fund, explaining that the SIB funds were held in trust and would serve as security for the 1998 Subordinated Bonds. *See* Offering Statement at 3 ("The 1998 Subordinated Bonds are also payable from moneys required to be transferred to an account established in the 1998 Subordinated Bond Reserve Fund from an account within the Puerto Rico State Infrastructure Bank Trust Fund.").

14. The Offering Statement explicitly noted that GDB served "as trustee of the SIB Trust Fund," which was established pursuant to the Bank Agreement. *Id.* at 11. It also noted that "[f]or so long as the 1998 Subordinated Bonds shall be outstanding, the SIB Trustee will make no withdrawals and expenditures, pledges or other encumbrances of amounts held to the credit of the 1998 Subordinated Bonds Highways Subaccount, other than to make deposits to the credit of the 1998 Subordinated Bonds Reserve Account." *Id.*[5]

---

[5] The Offering Statement is thus consistent with section 350 of the NHS Act, which states that "[f]ederal funds in the highway account of an infrastructure bank established under this section may be used only to provide assistance with respect to construction of Federal-aid highways.

6

15. In the Offering Statement, PRHTA also represented that, as of the date of issuance for the 1998 Subordinated Bonds, "[t]he Series 1998 Bonds Highway Subaccount of the SIB Trust Fund was . . . capitalized by federal capitalization grants and Commonwealth matching funds in the amount of $15,010,735." PRHTA represented that this account would "equal the 'Subordinated Reserve Requirement for the 1998 Subordinated Bonds' fixed by the Authority in Resolution 98-31." *Id.* at 3, 11.

16. Thereafter, at least through June 2014, HTA's audited financials provided that the SIB Funds were held in Trust. *See* HTA Audited Financial, Exhibit F at 42.

### III. GDB Misclassifies the PR SIB Trust Fund as a General Deposit Account and Refuses to Release the SIB Funds

17. In response to a Demand for Payment from the PR SIB Trust Fund made by the Bank of New York Mellon ("BNY") as Fiscal Agent under the 1998 Subordinated Bonds in anticipation of a potential July 1, 2016 PRHTA default, the President of GDB, Melba Acosta-Febo, acknowledged that GDB served as "SIB Trustee" for the SIB Funds. *See* June 22, 2016 Letter, attached as Exhibit G. Nevertheless, Ms. Acosta-Febo maintained that the SIB funds "constitute[d] deposits held by GDB," and, as such, were "subject to the provisions of the Moratorium Act . . . and the Executive Orders," which, among other things, placed restrictions on the withdrawal and transfer of deposits held by GDB. *Id.*

18. Counsel for National responded to Ms. Acosta-Febo's letter on June 29, 2016, explaining that the SIB Funds were not subject to either the Moratorium Act or the pertinent Executive Orders because the SIB Funds "do not constitute ordinary GDB deposits." June 29, 2016 Letter, attached as Exhibit H. National thus demanded that the SIB Funds immediately be

---

Federal funds in the transit account of such bank may be used only to provide assistance with respect to capital projects." NHS Act § 350(d).

7

released to BNY for the 1998 Subordinated Bond debt service payment due on July 1, 2016. *See id.*

19. On June 30, 2016, counsel for GDB replied to National, stating without any explanation that "whether or not GDB was contractually obligated to hold the SIB Funds in a trust account — the SIB Funds were in fact held in a deposit account at GDB." June 30, 2016 Letter, attached as Exhibit I. Accordingly, counsel for GDB maintained that the SIB Funds were subject to the restrictions of the Moratorium Act. *See id.*

20. On July 1, 2016, PRHTA defaulted on a debt service payment due on the 1998 Subordinated Bonds. Subsequent PRHTA defaults on those bonds occurred in January 2017, July 2017, and January 2018. Based upon information and belief, up to $12 million of the debt service payments due between July 2016 and January 2018 on the 1998 Subordinated Bonds should have been covered by the PR SIB Trust Fund.[6] As a result of these defaults, National has paid approximately $9.6 million in bond insurance payments.

21. On July 13, 2016, counsel for National responded to GDB's June 30, 2016 correspondence, reiterating that GDB's refusal to release the SIB Funds violated both federal and Commonwealth law and questioning whether the SIB Funds "were ever held in trust." July 13, 2016 Letter, attached as Exhibit J.

22. On July 27, 2016, counsel for GDB replied to National. Once again, counsel for GDB represented without any explanation that "the SIB Funds were in fact held in a deposit account at GDB." July 27, 2016 Letter, attached as Exhibit K.

---

[6] National insures approximately 80% of the total debt service due on the 1998 Subordinated Bonds between July 2016 and January 2018.

8

**IV. Counsel for GDB Admits that Money Held in Escrow Is Not Part of the PRHTA Estate**

23. On September 14, 2017, Siemens Transportation Partnership filed a motion in these proceedings seeking "specific and targeted" discovery relating to a GDB escrow account established with PRHTA funds for Siemens's benefit. *See* Siemens's Rule 2004 Motion, Dkt. No. 272. In opposition to that motion, GDB and the Puerto Rico Fiscal Agency & Financial Advisory Authority ("AAFAF") submitted an unsworn statement by Jose Santiago Ramos, GDB's Chief Financing Officer, stating that the Siemens account was not, in fact, an escrow account but, rather, a demand deposit account owned by HTA. *See* Exhibit 1, GDB Objection to Siemens's Rule 2004 Motion, Dkt. No. 321-1. On reply, Siemens argued that Mr. Ramos's statement "belie[d] repeated assurances, both verbal and written, by high ranking GDB employees, that funds earmarked for Siemens'[s] benefit were in 'escrow para pago a Siemens.'" Siemens Reply to GDB Objection to Rule 2004 Motion, Dkt. No. 323.

24. During an omnibus hearing on November 15, 2017, Judge Dein heard argument on Siemens's Rule 2004 motion. During the course of that argument, counsel for GDB admitted that funds held in escrow by GDB "would not be a part of HTA's estate and therefore . . would be payable." Nov. 15, 2017 Hr'g Tr. at 41. Ultimately, Judge Dien granted Siemens's motion in part, allowing Siemens to take discovery in the form of document production and one deposition. *See id.* at 42–43. In so doing, Judge Dien concluded that Siemens's request for Rule 2004 discovery was appropriate for the "inquiry as to whether or not these accounts, these funds are held in an escrow account, because that deals with whether or not these assets are part of HTA's estate." *Id.* at 42.

25. As with Siemens, GDB has appeared to misrepresent the status of funds held for its benefit in a GDB escrow account. Although GDB was required by contract and federal law to

9

hold the SIB Funds in trust, representatives for GDB now insist that the SIB Funds are held in an ordinary deposit account, despite their repeated assurances otherwise, including in the Cooperative Agreement and the Offering Statement. Thus, National is similarly entitled to Rule 2004 discovery regarding the status of the PR SIB Trust Fund. Accordingly, the Court should grant National's Rule 2004 motion and allow National to investigate whether the SIB Funds are, or ever were, actually held in trust by GDB.

## RELIEF REQUESTED

26. By this Motion, National requests entry of an order (1) directing GDB to produce documents regarding the current and historical status of the PR SIB Trust Fund and the treatment of all funds in the Trust Fund's accounts and (2) authorizing National to conduct examinations, under oath, of designated representatives of GDB on such date and time and at a location in Puerto Rico as designated in writing by National on not less than 14 days' notice.

27. National is entitled to the relief requested in this motion under Federal Rule of Bankruptcy Procedure 2004, as made applicable to the above-captioned Title III proceedings by section 310 of PROMESA, Puerto Rico Local Bankruptcy Rule 2004-1, and the orders of this Court incorporating the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico to these proceedings.

## BASIS FOR RELIEF REQUESTED

28. Pursuant to section 310 of PROMESA, the Bankruptcy Rules apply in cases under Title III. 48 U.S.C. § 2170. Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of any examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may

10

affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

29. The granting of a motion under Bankruptcy Rule 2004 is within the discretion of the Court, *see In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination . . . ."), and the scope of the discovery granted pursuant to a Rule 2004 motion may be extremely broad. Courts consistently have emphasized that the scope of a Bankruptcy Rule 2004 examination is broader than discovery available under the Federal Rules of Civil Procedure. *See In re Youk-See*, 450 B.R. 312, 319–20 (Bankr. D. Mass. 2011) (citing *Dynamic Fin. Corp. v. Kipperman (In re N. Plaza LLC)*, 395 B.R. 113, 122 n. 9 (S.D. Cal. 2008) ("It is well established that the scope of a Rule 2004 examination is exceptionally broad and provides few of the procedural safeguards found in Federal Rule of Civil Procedure 26.")). Bankruptcy Rule 2004 "allows considerable leeway for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case." *In re Hilsen*, Case No. 87-11261, 2008 WL 2945996, at *1 (Bankr. S.D.N.Y. July 25, 2008) (Peck, J.).

30. Thus, creditors may obtain discovery into any matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions a*nd assessing whether wrongdoing has occurred.*" *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (emphasis added); *see In re Hilsen*, 2008 WL 2945996, at *4; *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)). Examinations under Bankruptcy Rule 2004 may be

11

conducted by any party in interest, not merely the trustee. *See In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally.").

31. Moreover, the target of Rule 2004 discovery is not limited to the debtor itself. "Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation." *In re Recoton Corp.*, 307 B.R. at 755 (citing *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)); *see also ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (holding that Bankruptcy Rule 2004 may be employed to compel discovery of information maintained by creditors or third parties where such information relates to the effective reorganization and administration of the estate).

32. Indeed, courts routinely authorize Rule 2004 discovery of third parties in order to facilitate the investigation into those parties' alleged wrongdoing. *See, e.g.*, *In re Gawker Media LLC*, No. 16-11700, 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017) (approving Rule 2004 discovery of third parties where discovery was sought to "determin[e] whether wrongdoing has occurred on behalf of the Debtors' estate," which "fit[] squarely within the purpose of Rule 2004"); *In re Recoton Corp.*, 307 B.R. at 755–56 (concluding that Rule 2004 discovery related to potential securities law violations by former directors and officers of the debtor was appropriate because it would allow party seeking discovery "to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims"); *In re Hughes,* 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (denying third-party objector's motion to quash subpoenas for Rule 2004 examination because it "would not be an improper use of discovery

12

under Rule 2004" for party seeking Rule 2004 discovery to "assess potential claims" against third party).

33. National, as one of PRHTA's largest creditors, is entitled to pursue Rule 2004 discovery of GDB with respect to the PR SIB Trust Fund. As an initial matter, such discovery is necessary to allow National, as the party directly harmed by the GDB's claim that the SIB Trust Funds are not held in a trust account, to determine what wrongdoing occurred with respect to the SIB Trust Fund. If the PR SIB Trust Fund is, in fact and as required by law, held in a trust account at GDB, those funds would not be part of PRHTA's estate and would be subject to immediate release. The discovery requested in this Motion will thus allow National to understand whether and to what extent its claims against PRHTA may be satisfied from assets in the PR SIB Trust Fund. Because the information sought by National will directly affect the debtor's estate by assessing its liabilities, it is a proper subject for Rule 2004 discovery.

34. The requested discovery will also allow National to investigate potential wrongdoing by GDB concerning the SIB funds. For nearly 20 years, PRHTA bondholders have assumed, based on the express terms of the Cooperative Agreement and the Bank Agreement, the clear representations made by PRHTA in the Offering Statement, and the references in PRHTA's audited financial statements, that the SIB Funds have been held safely *in trust*, "separate and apart from all other funds of the Department, PRHTA and GDB." Bank Agreement § 101.[7] Yet, in the midst of an unprecedented financial crisis, GDB revoked that security, representing *for the first time* that the funds were, inexplicably, held in an ordinary deposit account at GDB.

---

[7] There can be no doubt that holders of the 1998 Subordinated Bond bondholder relied on PRHTA's representations regarding the bond's securitization when purchasing the bonds.

13

Needless to say, the timing of the representation is suspect, begging the question of whether the SIB funds were ever held in trust, and if so, at what point they were moved into deposit accounts.

35. As it stands, GDB has either been violating the express terms of the Bank Agreement for twenty years *or* has recently misappropriated the SIB Funds for PRHTA's benefit. National is plainly entitled to find out which of these scenarios is at play. *See In re Gawker Media LLC*, 2017 WL 2804870, at *6; *In re Recoton Corp.*, 307 B.R. at 755–56; *In re Hughes,* 281 B.R. at 226. Indeed, the requested discovery is necessary to allow National to obtain the information for it to determine whether it has a claim against GDB related to the SIB Funds, which would directly affect PRHTA's liabilities.

36. This situation is particularly alarming in light of the unnerving similarities between Siemens's and National's experience with GDB. As with the PR SIB Trust Fund, GDB recently revoked prior representations made to Siemens that certain funds were held in an escrow account. In so doing, GDB claimed that Siemens's funds were *never* held in escrow account and instead were held in an unrestricted demand deposit account in PRHTA's name. These stories suggest potential widespread misconduct by GDB with respect to trust and escrow accounts connected to PRHTA. Accordingly, like Siemens, National is entitled to investigate whether the SIB funds are—or ever have been—held in trust by GDB and why, after years of assurances to the contrary, GDB recently represented that the SIB Funds were held in a deposit account.

37. National thus seeks the production of documents and examination of witnesses regarding the existence, historical treatment, and status of the PR SIB Trust Fund, including documents concerning the initial opening of, and all changes to, the PR SIB Trust Fund and the 1998 Subordinated Bonds Highways Subaccount.

14

**CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1**

38. Undersigned counsel hereby certifies that, on December 28, 2018, they requested a conference with counsel for GDB to "arrange a mutually agreeable date, place, and time for the examination." Rule 2004-1(b) of the Puerto Rico Local Bankruptcy Rules. A conference was held on January 5, 2018. In light of counsel's refusal to commit to a mutually-agreeable schedule for the production of documents, the undersigned counsel certifies that further meet and confer would not be fruitful.

**NOTICE**

39. Under the Third Amended Case Management Procedures, the deadline to file an objection to this Motion is January 23, 2018, 4:00 p.m. (AST). National therefore provides the following notice pursuant to Rule 2004-1(d) of the Puerto Rico Local Bankruptcy Rules, modified accordingly with respect to the objection deadline: Any party who objects to the examination shall serve and file an objection or motion for protective order with the United States Bankruptcy Court for the District of Puerto Rico by January 23, 2018, 4:00 p.m. (AST) for a Fed. R. Bankr. P. 2004 Examination. If no objection or motion for protective order is timely filed, the Court may grant the motion for examination without further notice or a hearing.

**NO PRIOR REQUEST FOR RELIEF**

40. National has made no previous request for the relief sought herein to this or any other Court.

**WHEREFORE,** National respectfully requests authority to direct the production of documents and the examination of witnesses pursuant to Bankruptcy Rule 2004 as set forth herein and consistent with the Proposed Order, and that National be granted such other and further relief as is just.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 16th day of January 2018.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

| | |
|---|---|
| **ADSUAR MUÑIZ GOYCO**<br>**SEDA & PÉREZ-OCHOA, P.S.C.**<br>208 Ponce de León Avenue, Suite 1600<br>San Juan, PR 00936<br>Telephone: 787.756.9000<br>Facsimile: 787.756.9010<br>Email: epo@amgprlaw.com<br>　　　　acasellas@amgprlaw.com<br>　　　　larroyo@amgprlaw.com<br><br>By: */s/ Eric Pérez-Ochoa*<br>Eric Pérez-Ochoa<br>USDC-PR No. 206314<br><br>*/s/ Alexandra Casellas-Cabrera*<br>Alexandra Casellas-Cabrera<br>USDC-PR No. 301010<br><br>*/s/ Lourdes Arroyo Portela*<br>Lourdes Arroyo Portela<br>USDC-PR No. 226501 | **WEIL, GOTSHAL & MANGES LLP**<br>Marcia Goldstein (admitted *pro hac vice*)<br>Salvatore A. Romanello (admitted *pro hac vice*)<br>Kelly DiBlasi (admitted *pro hac vice*)<br>Jared Friedmann (admitted *pro hac vice*)<br>Gabriel A. Morgan (admitted *pro hac vice*)<br><br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>Email: marcia.goldstein@weil.com<br>　　　　salvatore.romanello@weil.com<br>　　　　kelly.diblasi@weil.com<br>　　　　gabriel.morgan@weil.com |