# EXHIBIT   G

COMMONWEALTH OF
# PUERTO RICO
Government Development Bank
for Puerto Rico

June 22, 2016

**VIA OVERNIGHT MAIL AND E-MAIL**

Ms. Diana Torres
The Bank of New York Mellon
101 Barclay Street
New York, NY 10286

> Re:    **Letter regarding that certain agreement (the "<u>Agreement</u>"), dated as of August 1, 1998, between the Government Development Bank for Puerto Rico as SIB Trustee ("<u>GDB</u>"), The Bank of New York Mellon, as successor fiscal agent (the "<u>Fiscal Agent</u>"), and the Puerto Rico Highways and Transportation Authority (the "<u>Authority</u>")**

Dear Ms. Torres:

We are in receipt of your letter dated May 25, 2016 in which you reference (i) the Agreement, (ii) the Authority's Subordinated Transportation Revenue Bonds, Series 1998 (the "<u>Bonds</u>"), issued pursuant to Resolution 98-06, as amended and supplemented, for which you serve as Fiscal Agent, and (iii) Act No. 21-2016, otherwise known as the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, as amended (the "<u>Moratorium Act</u>"). Reference is also made to our previous letter dated June 3, 2016, Executive Order No. OE-2016-10 (the "<u>OE-2016-10</u>"), signed by the Governor of Puerto Rico on April 8, 2016, a copy of which is attached hereto as **Annex A**, and Executive Order No. OE-2016-14, signed by the Governor of Puerto Rico on April 30, 2016 (the "<u>OE-2016-14</u>," and together with the OE-2016-10, the "<u>Executive Orders</u>"), a copy of which is attached in Spanish hereto as **Annex B** and an *unofficial* copy of which is attached in English hereto as **Annex C.**

As you are aware, and as GDB's counsel has previously discussed with the Fiscal Agent's counsel, the Executive Orders implement certain provisions of the Moratorium Act with respect to deposits currently held by GDB. Because the funds held by GDB, as SIB Trustee, pursuant to the Agreement, constitute deposits held by GDB, these deposits are subject to the provisions of the Moratorium Act and the Executive Orders. *First*, OE-2016-10 declares a state of emergency for GDB and seeks to protect the liquidity of GDB by placing restrictions on the withdrawal and transfer of deposits held by GDB pursuant to Section 203 of the Moratorium Act.

PO Box 42001
San Juan, PR 00940-2001
Telephone (787) 722-2525


GOVERNMENT
DEVELOPMENT
BANK FOR
PUERTO RICO

*Second*, OE-2016-14 (i) declares all deposits held by GDB — including the deposits at issue here — to be "enumerated obligations" subject to the provisions of the Moratorium Act until the expiration of the "covered period" (currently January 31, 2017) and (ii) suspends any rights of the Fiscal Agent to take any action, including initiating any proceeding or exercising any remedy, against GDB related to the aforementioned deposits until the expiration of the covered period.

GDB intends to comply with its obligations under the Moratorium Act and the Executive Orders.  Should the Fiscal Agent request to draw all or a portion of these deposits, it must follow the procedures approved by the relevant government authorities and GDB for withdrawals under relevant law.

Please do not hesitate to contact me with any further questions.

Very truly yours,

Melba Acosta-Febo
President

cc:     Richard J. Cooper, Esq.
        Carmen A. Villar Prado
        Eric A. Schaffer, Esq.

## ANNEX A

### OE-2016-10

COMMONWEALTH OF PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Administrative Bulletin Num. OE-2016-010

**EXECUTIVE ORDER ISSUED BY THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, PURSUANT TO SECTIONS 201 AND 203 OF ACT NO. 21-2016, KNOWN AS THE "PUERTO RICO EMERGENCY MORATORIUM AND FINANCIAL REHABILITATION ACT," TO DECLARE AN EMERGENCY PERIOD FOR GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, ADDRESS THE DISBURSEMENT OF DEPOSITS AND LOANS BY SUCH BANK AND ORDER THE IMPLEMENTATION OF OTHER MEASURES THAT ARE REASONABLE AND NECESSARY TO ENABLE SUCH BANK TO CONTINUE CARRYING OUT ITS OPERATIONS**

**WHEREAS:** This Administration has taken historic measures to address the current fiscal crisis by reducing government expenses, increasing revenues and implementing structural changes. Notwithstanding such efforts, the Government of Puerto Rico continues to face severe fiscal and liquidity challenges. Similar challenges have also adversely affected Government Development Bank for Puerto Rico ("GDB").

**WHEREAS:** During the past months, GDB has been implementing extraordinary cash management measures in order to preserve and maximize its liquidity and continue its operations, which are essential to the overall operations of the Government of the Commonwealth of Puerto Rico (the "Commonwealth"). Notwithstanding such efforts, GDB's financial condition has continued to deteriorate and, absent the measures ordered in this Executive Order, there is an imminent risk of a drastic decrease in GDB's liquidity in the immediate term. This, in turn, would jeopardize the provision of essential services by the Commonwealth and the Commonwealth's agencies, public corporations and instrumentalities (collectively, the "Commonwealth Entities," and each a "Commonwealth Entity") that are also depositors of GDB.

**WHEREAS:** As has been publicly announced, the Commonwealth and GDB are engaged in negotiations with a significant portion of the holders of their debt and that of other Commonwealth Entities to achieve a comprehensive debt restructuring in order to

address the immediate liquidity challenges of the Commonwealth, the Commonwealth Entities, and the GDB, and achieve sustainable levels of debt service in the long-term. Any such restructuring transaction, however, will take time to implement and, in the meantime, the Commonwealth has a duty to take any and all actions reasonable and necessary to protect the health, safety and welfare of its residents by ensuring the continuation of essential services.

**WHEREAS:** On April 6, 2016, I signed into law Act 21-2016, known as the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act" (the "Act"). Section 201 and Section 203 of the Act, respectively, authorize me to declare a state of emergency for GDB in order to protect the health, safety and welfare of the residents of the Commonwealth and to take any and all actions that are reasonable and necessary to allow GDB to continue carrying out its operations. All actions authorized herein are reasonable and necessary to achieve such purposes and are in the best interests of the Commonwealth, GDB and all stakeholders, including GDB creditors.

**WHEREFORE:** I, ALEJANDRO J. GARCÍA PADILLA, Governor of the Commonwealth, by virtue of the inherent powers of my position and the authority vested in me by the Constitution and the laws of the Commonwealth, do hereby order as follow:

**FIRST:** Pursuant to Section 201 of the Act, I hereby declare that GDB is in a state of emergency and announce the commencement, as of the date of this Executive Order, of an emergency period (as defined in the Act) for GDB in order to protect the public health, safety and welfare of the residents of Puerto Rico. Notwithstanding the declaration of an emergency period for GDB pursuant to this Executive Order, other than as prescribed herein, this Executive Order does not impose a moratorium on any obligations of GDB pursuant to Section 202 of the Act, including, without limitation, outstanding notes of GDB. GDB shall continue discussions with its noteholders in an effort to come to a reasonable agreement regarding the obligations of GDB. GDB shall provide periodic updates to me so that I remain informed of the status of these discussions. Nothing in this Executive Order shall be construed as limiting GDB's ability to

2

pay operating expenses and other ordinary course disbursements, as determined by GDB. This Executive Order does not declare an emergency period for the Commonwealth or for any Commonwealth Entity, other than GDB.

SECOND:       I hereby order the creation of the "Government Development Bank for Puerto Rico Disbursements Committee" (the "Disbursements Committee"), which shall be comprised of one representative of each of the Department of Treasury, the Office of Management and Budget of the Commonwealth ("OMB") and GDB appointed by the head of each of such Commonwealth Entities.

THIRD:        Pursuant to Section 203 of the Act, in order to preserve the liquidity of GDB and allow the continuation of its operations, while ensuring the provision of essential services that are paid from funds of certain Commonwealth Entities deposited at GDB, GDB is hereby instructed to honor withdrawal, payment, and transfer requests, including by check or other means, only if they are reasonable and necessary to fund the provision of essential services, relying on the certifications provided pursuant to Section 203(c)(ii) and (iii) of the Act and paragraphs FOURTH through SIXTH of this Executive Order.

FOURTH:       All withdrawal, payment, and transfer requests, including by check or other means, submitted to GDB by any Commonwealth Entity (other than the Department of Treasury of the Commonwealth (the "Department of Treasury") and the Commonwealth Entities listed in paragraph SIXTH of this Executive Order) shall be accompanied by (a) a joint certification from OMB and the Department of Treasury finding that the funds requested are necessary to fund the provision of essential services in the ordinary course, which services must be identified in such certification, provided that in making such certification, OMB and the Department of Treasury may (i) rely on a certification provided to them by the head of the applicable Commonwealth Entity or his or her designee and (ii) reduce the amount of any request to an amount deemed necessary to fund essential services, and (b) a certification by the depositor to the effect that, based on its cash flow needs, it does not project to

3

have an alternate source of funds available from which to pay for such essential services.

FIFTH:  All withdrawal, payment, and transfer requests, including by check or other means, submitted to GDB by the Department of Treasury exclusively for operating expenses of the Department of Treasury or with respect to funds administered by the Department of Treasury on behalf of any Commonwealth Entity shall be accompanied by (a) a certification from OMB finding that the funds requested are necessary to fund the provision of essential services in the ordinary course, which services must be identified in such certification, provided that in making such certification, OMB shall be able to rely on a certification provided to it by the Department of Treasury, and (b) a certification from the Department of Treasury or the entity on whose behalf the Department of Treasury is acting finding that the disbursement of such funds is consistent with the cash management guidelines adopted by the Working Group for the Fiscal and Economic Recovery for Puerto Rico pursuant to Executive Order 2015-049.

SIXTH:  All withdrawal, payment, and transfer requests, including by check or other means, submitted to GDB by the Judicial Branch, the Legislative Branch, UPR, the Office of the Comptroller, the Office of the Electoral Comptroller, the State Elections Commission, the Government Ethics Office, the Independent Prosecutors Panel or municipalities shall be accompanied by a certification from the head of such Commonwealth Entity or the mayor of such municipality or their respective designee, as applicable, to the effect that (a) such funds are necessary to fund the provision of an essential service in the ordinary course, and (b) based on the depositor's cash flow needs, it does not project to have an alternate source of funds available from which to pay for such essential services.

SEVENTH:  The Disbursements Committee shall develop a process to identify whether any check or similar instrument issued by any depositor (other than the Department of the Treasury) prior to the date of this Executive Order is related to the provision of essential services in the ordinary course. The Disbursements Committee shall implement measures to identify whether any

4

check that (i) has been issued and delivered to the payee prior to the date of this Executive Order but has not been presented for payment and (ii) has not been authorized pursuant to paragraph FOURTH through SIXTH of this Executive Order is necessary to fund the provision of essential services in the ordinary course and shall instruct GDB to return to the issuer any check or similar instrument so identified.

EIGHTH:          GDB is authorized to impose weekly limitations on the aggregate amount of all withdrawals and transfers of deposits (other than checks issued and delivered to payees prior to the date of this Executive Order, which shall be subject to paragraph SEVENTH of this Executive Order) certified pursuant to paragraphs FOURTH through SIXTH of this Executive Order in order to preserve its liquidity. GDB shall inform me on a weekly basis, and as soon as practicable, of (1) the weekly limitations to be imposed each week on the aggregate amount of all withdrawals and transfers of deposits and (2) the total amount of withdrawal, payment, and transfer requests received each week, including by checks or other means. To the extent that the total amount of withdrawal, payment, and transfer requests, including by check or other means, certified pursuant to paragraphs FOURTH through SIXTH of this Executive Order exceed the applicable weekly limitation, such withdrawal, payment, and transfer requests, including by check or other means, shall be prioritized according to the following order:

> (1) Federal funds received after the date of this Executive Order for the benefit of third parties;
>
> (2) Amounts related to payroll, salaries, commissions or other similar payments;
>
> (3) Amounts required to cover ordinary course expenses related to the provision of police, firefighting, medical, education, disaster recovery and related services; and
>
> (4) Other essential services.

No withdrawal, payment, or transfer requests, including by check or other means, shall be made with respect to a given priority until all requests corresponding to a higher priority have been satisfied. To the extent that amounts remaining under the weekly limit are not sufficient to cover all requests

corresponding to any given priority, disbursements of requests corresponding to such priority shall be distributed pro rata.

NINTH:    Effective as of the date of this Executive Order, all GDB depositors are hereby prohibited from printing or writing new checks or similar instruments creditable against their account(s) at GDB unless they obtain a temporary waiver from this provision from GDB. All new checks or similar instruments printed or written after the date of this Executive Order in violation of this provision shall not be honored and shall be null and void. Any person that intentionally issues any check or similar instrument in violation of Section 203(h) of the Act shall be subject to the criminal penalties set forth therein.

TENTH:    Every Commonwealth Entity shall provide to GDB and/or the Department of Treasury, upon their request, any and all information with respect to funds and accounts, including deposit and/or investment accounts, held by such Commonwealth Entity outside GDB.

ELEVENTH:    Pursuant to Section 203 of the Act, (a) the disbursement of any and all loans and advances by GDB, and (b) the payment of any and all obligations guaranteed by GDB are hereby temporarily suspended.

TWELFTH:    Pursuant to Section 203(b)(i) of the Act, Article 6 of Act No. 17 of September 23, 1948, as amended, known as the "Enabling Act of Government Development Bank for Puerto Rico" (the "GDB Act") is hereby temporarily suspended.

THIRTEENTH:    To the extent not specifically prohibited or inconsistent with the terms herein, GDB is hereby delegated, pursuant to section 203(b)(v) of the Act, full authority to take any and all actions that are reasonable and necessary to continue carrying out its operations. GDB shall continue to closely monitor its liquidity and shall promptly notify the Governor if any of the restrictions imposed by this Executive Order or any subsequent action taken pursuant to this Executive Order are no longer necessary for it to continue carrying out its operations or if any additional actions are necessary.

6

**FOURTEENTH:**    Nothing in this Executive Order shall relieve any party of any obligation to GDB, including with respect to the repayment of loans.

**FIFTEENTH:**    All disbursements made by GDB in the ordinary course shall be exempt from Article 14 of the GDB Act pursuant to Section 203(f) of the Act. All persons and entities acting pursuant to this Executive Order, including any financial intermediary or institution acting as an agent for clearing of GDB, shall be protected by the immunity provisions of Section 105 of the Act. No financial institution or agent thereof providing clearing services or other financial services to GDB or any other government entity pursuant to any agreement with GDB or such government entity shall have any liability, civil, criminal, or otherwise, for, and without further notice or order shall be exonerated from, actions taken or not taken in connection with such agreement, nor for any transfer or withdrawal of deposits or other funds made pursuant thereto if any such transfer or withdrawal is found by a court to be in violation of the GDB Act, sections 1243, 1244 and 1249 of the Civil Code of Puerto Rico, or any other similar or analogous law or provision.

**SIXTEENTH:**    SEVERABILITY. This Executive Order shall be interpreted in a manner to render it valid to the extent practicable in accordance with the Commonwealth Constitution and the U.S. Constitution. If any clause, paragraph, subparagraph, provision or part of this Executive Order were to be declared unconstitutional by a competent court, the order to such effect issued by such court will neither affect nor invalidate the remainder of this Executive Order. The effect of such an order shall be limited to the clause, paragraph, subparagraph, provision or part of this Executive Order declared unconstitutional and only with respect to the application thereof to the particular obligation subject to such challenge.

**SEVENTEENTH:**    DEROGATION. This order shall prevail over any other Executive Order that may, in whole or in part, be inconsistent with this Executive Order, to the extent of such incompatibility.

**EIGHTEENTH:**      <u>EFFECTIVENESS AND PUBLICATION.</u> This Executive Order shall
take effect immediately. Its widest publication and dissemination
are hereby ordered.

**NINETIETH**      <u>TERMINATION</u>. This Executive Order shall remain in full force
and effect until the earlier of (i) June 30, 2016, or (ii) revocation
of this Executive Order as provided by the Governor in writing.

IN TESTIMONY BY WHICH, I issue this order under my
signature and I stamp on it the Great Seal of the Commonwealth of
Puerto Rico, in the city of San Juan, today, the _8_ day of April,
2016.



_____
ALEJANDRO J. GARCÍA-PADILLA
GOVERNOR

Enacted pursuant to applicable law, on _April 8_, 2016.

_____
VÍCTOR A. SUÁREZ-MELÉNDEZ
DESIGNATED SECRETARY OF STATE

# ANNEX B

## OE-2016-14

ESTADO LIBRE ASOCIADO DE PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Boletín Administrativo Núm. OE-2016-014

**ORDEN EJECUTIVA DEL GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, AL AMPARO DE LOS ARTÍCULOS 201, 202 Y 203 DE LA LEY NÚM. 21-2016, CONOCIDA COMO LA "LEY DE MORATORIA DE EMERGENCIA Y REHABILITACIÓN FINANCIERA DE PUERTO RICO", PARA DECLARAR UNA MORATORIA EN EL PAGO DE CIERTAS OBLIGACIONES DEL BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO, DECLARAR UN PERIODO DE EMERGENCIA PARA LA AUTORIDAD PARA EL FINANCIAMIENTO DE LA INFRAESTRUCTURA DE PUERTO RICO, PARA ORDENAR LA IMPLANTACIÓN DE OTRAS MEDIDAS QUE SON RAZONABLES Y NECESARIAS PARA PERMITIR QUE SE CONTINÚEN BRINDANDO SERVICIOS ESENCIALES PARA PROTEGER LA SALUD, SEGURIDAD Y EL BIENESTAR DE LOS RESIDENTES DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, Y PARA ENMENDAR EL DECIMOQUINTO DE LOS POR TANTO DEL BOLETÍN ADMINISTRATIVO NÚM.: OE-2016-10.**

POR CUANTO:    El 6 de abril de 2016, firmé la Ley 21-2016, conocida como la "Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico" (la "Ley") (los términos que se utilizan en mayúscula en esta Orden Ejecutiva y que no están definidos aquí tendrán los significados que se le dieron en la Ley). El 8 de abril de 2016, al amparo de los Artículos 201 y 203 de la Ley, aprobé el Boletín Administrativo Núm.: OE-2016-10 (la "OE-2016-10") para declarar un Periodo de Emergencia para el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), establecer restricciones al retiro de depósitos del BGF e implantar otras medidas razonables y necesarias para permitirle al BGF continuar llevando a cabo sus operaciones para proteger la salud, seguridad y el bienestar de los residentes de Puerto Rico.

POR CUANTO:    Durante las pasadas semanas la liquidez del BGF ha empeorado. Hoy vence un pago de servicio de deuda de aproximadamente $423 millones por concepto de notas emitidas por el BGF. Actualmente el BGF no tiene suficiente liquidez para hacer dicho pago en su totalidad. Agotar la liquidez limitada del BGF afectaría significativamente la habilidad de éste de continuar llevando a cabo sus operaciones, lo que, a su vez, pondría en peligro la prestación de servicios esenciales que se pagan con fondos de ciertas entidades gubernamentales que están depositados en el BGF.

**POR TANTO:** Yo, ALEJANDRO J. GARCÍA PADILLA, Gobernador del Estado Libre Asociado, en virtud de los poderes inherentes a mi cargo y de la autoridad que me ha sido conferida por la Constitución del Estado Libre Asociado, por la presente dispongo lo siguiente:

**PRIMERO:** Conforme al Artículo 201 de la Ley, por la presente declaro que todas las cartas de crédito emitidas por el BGF y todos los depósitos del BGF son "Obligaciones Enumeradas" de BGF para todos los propósitos dispuestos en la Ley. Por la presente también ratifico y extiendo hasta el final del Periodo Cubierto la declaración del Periodo de Emergencia para el BGF, así como todas las disposiciones de la OE-2016-10.

**SEGUNDO:** Conforme al Artículo 201 de la Ley, por la presente declaro que la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico ("AFI") está en un estado de emergencia y anuncio el comienzo, efectivo a la fecha de esta Orden Ejecutiva, de un Periodo de Emergencia para AFI. No obstante, para todos los propósitos contemplados en la Ley, por la presente se excluyen de la definición de Obligaciones Cubiertas de AFI todas las obligaciones de AFI, excepto aquellas relacionadas con los bonos denominados "Puerto Rico Infrastructure Financing Authority Revenue Bonds (Ports Authority Project), Series 2011B".

**TERCERO:** Conforme a los Artículos 201 y 202 de la Ley, por la presente declaro una moratoria en el pago de todas las Obligaciones Cubiertas del BGF que sean pagaderas durante el Periodo de Emergencia excepto: (a) depósitos, y (b) Obligaciones de Intereses que no requieran que el pago de intereses se haga en efectivo.

**CUARTO:** Esta Orden Ejecutiva no declara un Periodo de Emergencia para ninguna Entidad Gubernamental, excepto el BGF y AFI, y no impone una moratoria en ninguna obligación, excepto las que se enumeran en el párrafo TERCERO. Esta Orden Ejecutiva no autoriza a una Entidad Gubernamental a utilizar fondos que se hayan depositado previo a la fecha de esta Orden Ejecutiva con un fiduciario u otro custodio para el pago de una Obligación Cubierta ni pretende impedir el uso de dichos fondos para el pago de dicha Obligación Cubierta.

**QUINTO:**   No obstante el párrafo TERCERO de esta Orden Ejecutiva, si su liquidez lo permite, la Junta de Directores del BGF podrá solicitar autorización del Gobernador para realizar el pago de toda o cualquier porción de una Obligación de Intereses que requiera pago en efectivo y que hubiese vencido durante el Periodo de Emergencia.

**SEXTO:**   Conforme a los incisos i. al iv. del Artículo 201(d) de la Ley, por la presente ordeno la suspensión de todas las obligaciones allí identificadas en la medida en que estén relacionadas con las Obligaciones Cubiertas sujetas a una moratoria de pago conforme al párrafo TERCERO de esta Orden Ejecutiva.

**SÉPTIMO:**   Conforme al Artículo 201(b) de la Ley, no se tomará acción alguna y no se comenzará o continuará reclamación o procedimiento alguno en alguna corte de cualquier jurisdicción que esté relacionado con o que surja bajo una Obligación Cubierta de AFI o BGF, incluyendo acciones o procedimientos relacionados con las obligaciones mencionadas en los párrafos PRIMERO, SEGUNDO, TERCERO y SEXTO de esta Orden Ejecutiva. Ninguna entidad o persona podrá ejercer remedio alguno, incluyendo cualquier derecho de aceleración, que esté relacionado, ya sea directa o indirectamente, con la declaración de una moratoria para cualquier Obligación Cubierta del BGF a tenor con el párrafo TERCERO de esta Orden Ejecutiva o el impago de alguna de Obligación Cubierta de AFI según incluida en el párrafo SEGUNDO.

**OCTAVO:**   No obstante el párrafo PRIMERO de esta Orden Ejecutiva y las restricciones impuestas a la transferencia y el retiro de fondos depositados en el BGF bajo la OE-2016-10, y como parte de un esfuerzo para mejorar la liquidez del BGF, por la presente declaro que el BGF estará autorizado a permitir a sus depositantes utilizar sus fondos depositados en el BGF como pago parcial de un préstamo con el BGF si la cantidad de los fondos depositados es menor a la cantidad pendiente de pago bajo el préstamo y dicho depositante paga concurrentemente el balance de dicho préstamo con fondos que no están depositados en el BGF.

**NOVENO:**   Por la presente aclaro que cualquier fondo transferido después de la fecha de la OE-2016-10 por cualquier departamento, agencia, corporación pública, instrumentalidad o municipio del Estado Libre

Asociado (cada una, una "Entidad del Estado Libre Asociado") al BGF, únicamente en su capacidad como agente pagador de obligaciones de deuda de dicha Entidad del Estado Libre Asociado, no se considerarán fondos en depósito en el BGF para propósitos de la OE-2016-10 y, por lo tanto, no estarán sujetas a las restricciones de desembolso ahí establecidas.

**DÉCIMO:** Se enmienda el párrafo DECIMOQUINTO de la OE 2016-10 y se añade la siguiente oración al final del mismo: "Cualquier institución financiera en la cual se deposite un cheque emitido por cualquier Entidad del Estado Libre Asociado o que reciba cualquier instrucción para transferir fondos de una Entidad del Estado Libre Asociado podrá honrar dicho cheque o instrucción en el curso ordinario de sus operaciones bancarias sin indagar sobre los cumplimientos de esa Entidad del Estado Libre Asociado con cualquier boletín administrativo. Con referencia a las transacciones anteriormente mencionadas, las Entidades del Estado Libre Asociado aplicables serán las únicas responsables por el cumplimiento con cualquier disposición de la Ley o de cualquier reglamento o boletín administrativo emitido bajo la Ley, incluyendo cualquier boletín administrativo que restrinja el uso de fondos gubernamentales o la emisión de cheques u otra instrucción relacionada con fondos gubernamentales en manos de dichas instituciones financieras."

**UNDÉCIMO:** SEPARABILIDAD. Esta Orden Ejecutiva deberá ser interpretada de tal manera que pueda mantener su validez, en la medida que sea posible, conforme a la Constitución del Estado Libre Asociado y la Constitución de los Estados Unidos. Si cualquier cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva fuese declarada inconstitucional por un tribunal con jurisdicción, la orden emitida por dicho tribunal a esos efectos no afectará ni invalidará el resto de esta Orden Ejecutiva. El efecto de dicha orden estará limitado a la cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva declarada inconstitucional y solamente con respecto a la aplicación de la misma a la obligación particular sujeta a dicha controversia.

**DUODÉCIMO:** RATIFICACIÓN DE LA OE-2016-10. Por la presente se ratifica y confirma la OE-2016-10 en todos sus aspectos, según modificada por

4

esta Orden Ejecutiva, y se dispone que expirará al final del Periodo
Cubierto.

**DECIMOTERCERO:**  DEROGACIÓN. Se deja sin efecto cualquier otra Orden Administrativa
que en todo o en parte sea incompatible con esta, hasta donde existiera
tal incompatibilidad.

**DECIMOCUARTO:**  VIGENCIA Y PUBLICACIÓN. Esta Orden Ejecutiva entrará en vigor
inmediatamente y permanecerá en vigor hasta (i) el final del Periodo
Cubierto o (ii) la fecha en la que la misma sea revocada por escrito por
el Gobernador, lo que ocurra primero. Se ordena su más amplia
publicación y divulgación.

EN TESTIMONIO DE LO CUAL, expido la presente Orden Ejecutiva bajo
mi firma y hago estampar en esta el Gran Sello del Estado Libre
Asociado de Puerto Rico, en San Juan, Puerto Rico, hoy 30 de abril de
2016.

ALEJANDRO J. GARCÍA PADILLA
GOBERNADOR

Promulgada de acuerdo a la ley, hoy 30 de abril de 2016.

VÍCTOR A. SUÁREZ MELÉNDEZ
SECRETARIO DE ESTADO DESIGNADO

5

## ANNEX C

## OE-2016-14 (Unofficial Courtesy English Translation)

ESTADO LIBRE ASOCIADO DE PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Boletín Administrativo Núm. OE-2016-010

**ORDEN EJECUTIVA DEL GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, AL AMPARO DE LOS ARTÍCULOS 201 Y 203 DE LA LEY NÚM. 21-2016, CONOCIDA COMO LA "LEY DE MORATORIA DE EMERGENCIA Y REHABILITACIÓN FINANCIERA DE PUERTO RICO", PARA DECLARAR UN PERÍODO DE EMERGENCIA PARA EL BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO, ATENDER EL DESEMBOLSO DE DEPÓSITOS Y PRÉSTAMOS POR DICHO BANCO Y ORDENAR LA IMPLEMENTACIÓN DE OTRAS MEDIDAS RAZONABLES Y NECESARIAS PARA PERMITIR A DICHO BANCO CONTINUAR LLEVANDO A CABO SUS OPERACIONES**

POR CUANTO:     Esta Administración ha tomado medidas históricas para atender la crisis fiscal por la que atraviesa el País reduciendo gastos gubernamentales, aumentando ingresos e implementando cambios estructurales.  A pesar de nuestros esfuerzos, el Gobierno del Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado") continúa enfrentando retos fiscales y de liquidez muy serios.   El Banco Gubernamental de Fomento para Puerto Rico (el "BGF") también se ha visto afectado por retos similares.

POR CUANTO:     Durante los meses pasados, el BGF ha implementado medidas extraordinarias de manejo de efectivo para preservar y maximizar su liquidez y continuar sus operaciones, las cuales son esenciales para las operaciones generales del Estado Libre Asociado.  A pesar de dichos esfuerzos, la condición financiera del BGF ha continuado deteriorándose y, en ausencia de las medidas contempladas en esta Orden Ejecutiva, hay un riesgo inminente de que la liquidez del BGF se reduzca drásticamente en el futuro cercano.  Esto, a su vez, pondría en peligro la prestación de servicios esenciales por el Estado Libre Asociado y los departamentos, agencias, corporaciones públicas e instrumentalidades del Estado Libre Asociado (en conjunto, las "Entidades del Estado Libre Asociado" y, por separado, una "Entidad del Estado Libre Asociado") que también son depositantes del BGF.

**POR CUANTO:** Tal y como se ha anunciado públicamente, el Estado Libre Asociado y el BGF se encuentran negociando con un grupo significativo de los tenedores de su deuda y de la deuda de otras Entidades del Estado Libre Asociado para lograr una reestructuración abarcadora de dicha deuda en aras de atender los problemas inmediatos de liquidez del Estado Libre Asociado, de las Entidades del Estado Libre Asociado y del BGF, y de reducir el servicio de la deuda a niveles sostenibles a largo plazo. Sin embargo, cualquier transacción de reestructuración tomará tiempo de implementar y, mientras tanto, el Estado Libre Asociado tiene el deber de tomar todas aquellas medidas que sean razonables y necesarias para proteger la salud, la seguridad y el bienestar de los residentes del Estado Libre Asociado asegurando la continuidad de la prestación de servicios esenciales.

**POR CUANTO:** El 6 de abril de 2016 firmé la Ley Núm. 21-2016, conocida como la "Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico" (la "Ley de Moratoria"). El Artículo 201 de la Ley de Moratoria me autoriza a declarar un estado de emergencia para el BGF para proteger la salud, la seguridad y el bienestar de los residentes del Estado Libre Asociado. A su vez, el Artículo 203 de la Ley de Moratoria me autoriza a tomar todas las medidas que sean razonables y necesarias para permitirle al BGF continuar llevando a cabo sus operaciones. Todas las acciones autorizadas en esta Orden Ejecutiva son razonables y necesarias para lograr dichos propósitos y velan por los mejores intereses del Estado Libre Asociado, el BGF y todas las partes interesadas, incluyendo los acreedores del BGF.

**POR TANTO:** Yo, ALEJANDRO J. GARCÍA PADILLA, Gobernador del Estado Libre Asociado, en virtud de los poderes inherentes a mi cargo y de la autoridad que me ha sido conferida por la Constitución del Estado Libre Asociado por la presente dispongo lo siguiente:

**PRIMERO:** Conforme al Artículo 201 de la Ley de Moratoria, por la presente declaro que el BGF está en un estado de emergencia y anuncio, a la fecha de esta Orden Ejecutiva, el comienzo de un período de emergencia (según definido en la Ley de Moratoria) para el BGF para proteger la salud, la seguridad y el bienestar de los residentes del Estado Libre Asociado. A pesar de la declaración de un período de emergencia para

2

el BGF en virtud de esta Orden Ejecutiva, y a menos que se disponga lo contrario, esta Orden Ejecutiva no impone una moratoria sobre las obligaciones del BGF al amparo del Artículo 202 de la Ley de Moratoria, incluyendo, sin limitación, las notas emitidas por el BGF. El BGF deberá continuar las discusiones con sus tenedores de notas con el propósito de llegar a un acuerdo razonable con respecto a las obligaciones del BGF. El BGF deberá proveerme actualizaciones periódicas sobre dichas discusiones para mantenerme al tanto del estado de las mismas. Nada en esta Orden Ejecutiva debe interpretarse como que limita la capacidad del BGF para pagar gastos operacionales u otros desembolsos en el curso ordinario, según lo determine el BGF. Esta Orden Ejecutiva no declara un período de emergencia para el Estado Libre Asociado ni para otra Entidad del Estado Libre Asociado, excepto el BGF.

SEGUNDO:      Por la presente ordeno la creación de "El Comité de Desembolsos del Banco Gubernamental de Fomento para Puerto Rico" (el "Comité de Desembolsos"), que estará integrado por un representante del Departamento de Hacienda del Estado Libre Asociado ("Departamento de Hacienda"), un representante de la Oficina de Gerencia y Presupuesto del Estado Libre Asociado ("OGP") y un representante del BGF, cada uno a ser nombrado por el jefe de dichas Entidades del Estado Libre Asociado.

TERCERO:      Conforme al Artículo 203 de la Ley de Moratoria, con el propósito de preservar la liquidez del BGF y permitir al BGF continuar con sus operaciones, mientras se garantiza la prestación de servicios esenciales que se pagan con fondos de ciertas Entidades del Estado Libre Asociado depositados en el BGF, por la presente se instruye al BGF a honrar sólo aquellas solicitudes de retiros, pagos y transferencias, incluyendo a través de cheque o por cualquier otro medio, que sean razonables y necesarias para el pago de servicios esenciales, basándose en la certificaciones entregadas de acuerdo con el Artículo 203(c)(ii) y (iii) de la Ley de Moratoria y los párrafos CUARTO al SEXTO de esta Orden Ejecutiva.

CUARTO:       Todas las solicitudes de retiro, pago y transferencia, incluyendo a través de cheques u otros medios, presentadas al BGF por cualquier

Entidad del Estado Libre Asociado (con excepción del Departamento de Hacienda y las Entidades del Estado Libre Asociado enumeradas en el párrafo SEXTO de esta Orden Ejecutiva) deberán estar acompañadas por:

(a) una certificación conjunta emitida por la OGP y el Departamento de Hacienda a los efectos de que los fondos solicitados son necesarios para el pago de servicios esenciales en el curso ordinario, cuyos servicios deberán especificarse en dicha certificación, disponiéndose que, al hacer dicha certificación, la OGP y el Departamento de Hacienda podrán

(i) apoyarse en cualquier certificación emitida por el jefe de la Entidad del Estado Libre Asociado aplicable, o una persona designada por este, y

(ii) reducir la cantidad de cualquier solicitud a una cantidad que consideren necesaria para el pago de servicios esenciales, y

(b) una certificación del depositante a los efectos de que, basado en sus necesidades de flujo de efectivo, no proyecta tener una fuente alterna de fondos disponibles de la cual pagar dichos servicios esenciales.

QUINTO:    Todas las solicitudes de retiro, pago y transferencia, incluyendo a través de cheque o cualquier otro medio, presentadas al BGF por el Departamento de Hacienda, exclusivamente para gastos operacionales del Departamento de Hacienda o con relación a fondos administrados por el Departamento de Hacienda a nombre de cualquier Entidad del Estado Libre Asociado, deberán estar acompañadas por:

(a) una certificación de la OGP estableciendo que los fondos solicitados son necesarios para el pago de servicios esenciales en el curso ordinario, cuyos servicios deberán especificarse en dicha certificación, disponiéndose que, al proveer dicha certificación, la OGP podrá apoyarse en cualquier certificación emitida por el Departamento de Hacienda, y

(b) una certificación del Departamento de Hacienda o de la Entidad del Estado Libre Asociado representada por el Departamento de Hacienda a los efectos de que el desembolso de dichos fondos es consistente con las guías para el manejo de efectivo adoptadas por el Grupo de Trabajo para la

Recuperación Fiscal y Económica de Puerto Rico bajo la Orden Ejecutiva 2015-049.

**SEXTO:** Todas las solicitudes de retiro, pago y transferencia, incluyendo a través de cheque o cualquier otro medio, presentadas al BGF por la Rama Judicial, la Rama Legislativa, la Universidad de Puerto Rico, la Oficina del Contralor, la Oficina del Contralor Electoral, la Comisión Estatal de Elecciones, la Oficina de Ética Gubernamental, la Oficina del Fiscal Especial Independiente o por un municipio deberá estar acompañada por una certificación emitida por el jefe de dicha Entidad del Estado Libre Asociado o por el alcalde de dicho municipio o por una persona designada por éstos, según sea aplicable, a los efectos de que (a) los fondos solicitados son necesarios para la prestación de servicios esenciales en el curso ordinario, y (b) basado en las necesidades de flujo de efectivo del depositante, no proyecta tener una fuente alterna de fondos disponibles con la cual pagar dichos servicios esenciales.

**SÉPTIMO:** El Comité de Desembolsos deberá desarrollar un proceso para identificar si un cheque u otro instrumento similar emitido por cualquier depositante del BGF (excepto el Departamento de Hacienda) antes de la fecha de esta Orden Ejecutiva está relacionado con la prestación de servicios esenciales en el curso ordinario. El Comité de Desembolsos deberá implementar medidas para identificar si cualquier cheque o instrumento similar que (i) fue emitido y entregado al beneficiario antes de la fecha de esta Orden Ejecutiva, pero aún no ha sido presentado para pago, y (ii) no ha sido autorizado al amparo de los párrafos CUARTO al SEXTO de esta Orden Ejecutiva, es necesario para el pago de servicios esenciales en el curso ordinario, e instruirá al BGF devolver al emisor cualquier cheque u otro instrumento similar así identificado.

**OCTAVO:** Se autoriza al BGF a establecer un límite semanal para la cantidad total de retiros, pagos y transferencias de depósitos (con excepción de cheques emitidos y entregados a beneficiarios antes de la fecha de esta Orden Ejecutiva, los cuales estarán sujetos al párrafo SÉPTIMO de esta Orden Ejecutiva) certificados a tenor con lo dispuesto en los párrafos CUARTO al SEXTO de esta Orden Ejecutiva, con la finalidad de preservar su liquidez. El BGF deberá de informarme semanalmente, y

tan pronto como sea práctico, sobre (1) las limitaciones semanales que se impondrán cada semana en el monto total de todos los retiros, pagos y transferencias de depósitos, y (2) la cantidad total de solicitudes de retiro, pago y transferencia recibidas cada semana, incluyendo a través de cheques u otros medios.  En la medida en que la cantidad total de solicitudes de retiro, pago y transferencia, incluyendo a través de cheques u otros medios, certificadas según los parámetros establecidos en los párrafos CUARTO al SEXTO de esta Orden Ejecutiva, excedan el límite semanal, se dará la siguiente prioridad a dichas solicitudes de retiro, pago y transferencia:

    (1) Fondos federales recibidos después de la fecha de esta Orden Ejecutiva para el beneficio de terceros;

    (2) Cantidades relacionadas con nómina, salarios, comisiones u otros pagos similares;

    (3) Cantidades requeridas para cubrir gastos en el curso ordinario relacionados con la prestación de servicios de policía, bomberos, médicos, educación, manejo de emergencias y servicios relacionados; y

    (4) Otros servicios esenciales.

Ninguna solicitud de retiro, pago o transferencia, incluyendo mediante cheque u otro medio, con respecto a una prioridad se hará hasta tanto todas las solicitudes correspondientes a una prioridad más alta hayan sido satisfechas.  En la medida que las cantidades restantes bajo el límite semanal no sean suficientes para cubrir todas las solicitudes correspondientes a una prioridad, los desembolsos de solicitudes correspondientes a dicha prioridad serán distribuidos pro rata.

**NOVENO:**    A partir de la fecha de esta Orden Ejecutiva, se prohíbe a todos los depositantes del BGF imprimir o escribir cheques o instrumentos similares pagaderos de su(s) cuenta(s) en el BGF, a menos que obtengan una exención temporal por parte del BGF.  Todo cheque o instrumento similar impreso o escrito después de la fecha de esta Orden Ejecutiva en violación a este párrafo no será honrado y será nulo e inválido.  Cualquier persona que intencionalmente emita cualquier

cheque o instrumento similar en violación al Artículo 203(h) de la Ley de Moratoria estará sujeta a las penalidades criminales allí establecidas.

**DÉCIMO:** Cada Entidad del Estado Libre Asociado deberá proveer al BGF y/o al Departamento de Hacienda, según sea solicitado por éstos, toda la información relacionada a fondos y cuentas, incluyendo cuentas de depósito y/o inversiones, que tengan dichas entidades fuera del BGF.

**UNDÉCIMO:** Conforme al Artículo 203 de la Ley de Moratoria, se suspende temporalmente (a) el desembolso de todos los préstamos y adelantos del BGF y (b) el pago de todas las obligaciones garantizadas por el BGF.

**DUODÉCIMO:** Conforme al Artículo 203(b)(i) de la Ley de Moratoria, se suspende temporalmente el Artículo 6 de la Ley Núm. 17 del 23 de septiembre de 1948, según enmendada, conocida como la "Ley Orgánica del Banco Gubernamental de Fomento para Puerto Rico" (la "Ley del BGF").

**DECIMOTERCERO:** En la medida en que no se prohíba expresamente o que no sea inconsistente con esta Orden Ejecutiva, por la presente se delega al BGF, de conformidad con el Artículo 203(b)(v) de la Ley de Moratoria, la autoridad para tomar cualquier acción que sea razonable y necesaria para continuar llevando a cabo sus operaciones. El BGF deberá continuar monitoreando de cerca su liquidez y deberá informar al Gobernador prontamente si cualquiera de las restricciones establecidas en esta Orden Ejecutiva o cualquier acción subsiguiente tomada de conformidad con esta Orden Ejecutiva ya no es necesaria para poder llevar a cabo sus operaciones o si se requiere cualquier acción adicional.

**DECIMOCUARTO:** Nada de lo contenido en esta Orden Ejecutiva releva a parte alguna de cualquier obligación hacia o con el BGF, incluyendo lo relacionado con el repago de préstamos.

**DECIMOQUINTO:** Todo desembolso hecho por el BGF en el curso ordinario estará exento del Artículo 14 de la Ley del BGF, conforme al Artículo 203(f) de la Ley de Moratoria. Toda persona y entidad que actúe conforme a esta Orden Ejecutiva, incluyendo cualquier intermediario financiero o institución

que actúe como agente de procesamiento de cheques u otros instrumentos para el BGF, estará protegido por las disposiciones de inmunidad del Artículo 105 de la Ley de Moratoria. Por lo tanto, de conformidad con el Artículo 105 de la Ley de Moratoria, ninguna institución financiera o agente de ésta que provea servicios de procesamiento de cheques o instrumentos similares u otros servicios financieros al BGF o a cualquier otra Entidad del Estado Libre Asociado bajo cualquier acuerdo con el BGF o con dicha entidad, tendrá responsabilidad alguna, ya sea civil, criminal u otra, por, y sin notificación u orden adicional serán exonerados de, acciones u omisiones relacionadas a dicho acuerdo, ni por transferencias o retiros de depósitos u otros fondos hechos bajo dicho acuerdo, si un tribunal determina que dicha transferencia o retiro viola la Ley del BGF o las secciones 1243, 1244 y 1249 del Código Civil de Puerto Rico o cualquier cláusula o ley similar o análoga.

DECIMOSEXTO:   SEPARABILIDAD. Esta Orden Ejecutiva deberá ser interpretada de tal manera que pueda mantenerse su validez, en la medida de lo posible, conforme a la Constitución del Estado Libre Asociado y la Constitución de los Estados Unidos. Si cualquier cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva fuese declarada inconstitucional por un tribunal con jurisdicción, la orden emitida por dicho tribunal a esos efectos no afectará ni invalidará el resto de esta Orden Ejecutiva. El efecto de tal orden judicial estará limitado a la cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva declarada inconstitucional y solamente con respecto a la aplicación de la misma a la obligación particular sujeta a dicha controversia.

DECIMOSÉPTIMO:   DEROGACIÓN. Esta Orden Ejecutiva deja sin efecto cualquier otra Orden Ejecutiva que en todo o en parte sea incompatible con ésta, hasta donde existiera tal incompatibilidad.

DECIMOOCTAVO:   VIGENCIA Y PUBLICACIÓN. Esta Orden Ejecutiva entrará en vigor inmediatamente. Se ordena su más amplia publicación y divulgación.

**DECIMONOVENO:**     <u>TERMINACIÓN</u>. Esta Orden Ejecutiva permanecerá en vigor hasta (i) el
30 de junio de 2016, o (ii) la fecha en la que la misma se deje sin efecto
por escrito por el Gobernador, lo que ocurra primero.

EN TESTIMONIO DE LO CUAL, expido la presente Orden Ejecutiva bajo
mi firma y hago estampar en ella el Gran Sello del Estado Libre Asociado
de Puerto Rico, en San Juan, Puerto Rico, hoy 8 de abril de 2016.

ALEJANDRO J. GARCÍA PADILLA
GOBERNADOR

Promulgada de acuerdo a la ley, hoy 8 de abril de 2016.

VÍCTOR A. SUÁREZ MELÉNDEZ
SECRETARIO DE ESTADO DESIGNADO

9

**COMMONWEALTH OF PUERTO RICO**
**LA FORTALEZA**
**SAN JUAN, PUERTO RICO**

Administrative Bulletin Num. OE-2016-14

**EXECUTIVE ORDER ISSUED BY THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, PURSUANT TO SECTIONS 201, 202 AND 203 OF ACT NO. 21-2016, KNOWN AS THE "PUERTO RICO EMERGENCY MORATORIUM AND REHABILITATION ACT," TO DECLARE A MORATORIUM ON THE PAYMENT OF CERTAIN OBLIGATIONS OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, TO DECLARE AN EMERGENCY PERIOD FOR THE PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY, TO ORDER THE IMPLEMENTATION OF OTHER MEASURES THAT ARE REASONABLE AND NECESSARY TO ALLOW FOR THE CONTINUED PROVISION OF ESSENTIAL SERVICES TO PROTECT THE HEALTH, SAFETY AND WELFARE OF THE RESIDENTS OF THE COMMONWEALTH OF PUERTO RICO, AND TO AMEND PARAGRAPH FIFTEENTH OF ADMINISTRATIVE BULLETIN NUMBER: OE-2016-10.**

WHEREAS:      On April 6, 2016, I signed into law Act 21-2016, known as the "Puerto Rico Emergency Moratorium and Rehabilitation Act" (the "Act") (capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Act). On April 8, 2016, pursuant to Sections 201 and 203 of the Act, I approved Administrative Bulletin No. 2016-10 ("EO 2016-10") to declare an Emergency Period for Government Development Bank for Puerto Rico ("GDB"), establish restrictions on the withdrawal of deposits from GDB and implement other measures that were reasonable and necessary to allow GDB to continue carrying out its operations to protect the public health, safety and welfare of the residents of Puerto Rico.

WHEREAS:      During the past weeks, GDB's liquidity has deteriorated. A debt service payment of approximately $423 million with respect to notes issued by GDB is due today. GDB does not currently have sufficient liquidity to make such payment in full. Exhausting GDB's limited liquidity would significantly impair its ability to continue performing its operations, which would, in turn, jeopardize the provision of essential services that are funded from funds of certain government entities deposited at GDB.

WHEREFORE:      I, ALEJANDRO J. GARCÍA PADILLA, Governor of the Commonwealth, by virtue of the inherent powers of my position and the authority

421362

vested in me by the Constitution and the laws of the Commonwealth, do hereby order as follow:

**FIRST:** Pursuant to Section 201 of the Act, I hereby declare all letters of credit issued by GDB and all deposit liabilities of GDB to be "Enumerated Obligations" of GDB for all purposes under the Act. I hereby also ratify and extend until the end of the Covered Period the declaration of the Emergency Period for GDB as well as all of the provisions contained in EO 2016-10.

**SECOND:** Pursuant to Section 201 of the Act, I hereby declare the Puerto Rico Infrastructure Financing Authority ("PRIFA") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for PRIFA, provided that all obligations of PRIFA, other than the obligations of PRIFA under the Puerto Rico Infrastructure Financing Authority Revenue Bonds (Ports Authority Project), Series 2011B, are hereby excluded from the definition of Covered Obligations of PRIFA for all purposes contemplated in the Act.

**THIRD:** Pursuant to Sections 201 and 202 of the Act, I hereby declare a moratorium on the payment of all Covered Obligations of GDB coming due during the Emergency Period other than: (a) deposit liabilities and (b) Interest Obligations that may be paid in kind.

**FOURTH:** This Executive Order does not declare an Emergency Period for any Government Entity other than GDB and PRIFA and does not impose a moratorium on any obligations other than those listed in paragraph THIRD. This Executive Order does not authorize any Government Entity to use any funds that have been deposited with a trustee or other custodian for the payment of a Covered Obligation prior to the date hereof nor does it seek to prevent the use of any such funds for the payment of said Covered Obligation.

**FIFTH:** Notwithstanding paragraph THIRD of this Executive Order, so long as its liquidity so permits, the Board of Directors of GDB may request the Governor's authorization to pay all or any portion of any Interest Obligation that requires payment in cash and that would have become due during the Emergency Period.

**SIXTH:**   Pursuant to subparagraphs i. and iv. of Article 201(d) of the Act, I hereby order the suspension of any and all obligations listed therein as they relate to the Covered Obligations subject to a payment moratorium pursuant to paragraph THIRD of this Executive Order.

**SEVENTH:**   Pursuant to Section 201(b) of the Act, no act shall be done, and no action or proceeding shall be commenced or continued in any court of any jurisdiction that is related to or arises under any Covered Obligation of PRIFA or GDB, including actions or proceedings related to or arising under such obligations mentioned in paragraphs FIRST, SECOND, THIRD, and SIXTH of this Executive Order. No entity or person may exercise any remedy, including any right of acceleration, related to, whether directly or indirectly, the declaration of a moratorium for any Covered Obligation of GDB under paragraph THIRD of this Executive Order or the non-payment of any Covered Obligation of PRIFA included in paragraph SECOND.

**EIGHTH:**   Notwithstanding paragraph FIRST of this Executive Order and the restrictions imposed on the transfer and withdrawal of funds deposited in GDB pursuant to EO 2016-10, and in an effort to enhance GDB's liquidity, I hereby declare that GDB shall be authorized to permit depositors to use their deposits at GDB as partial payment of a loan with GDB if the amount of funds on deposit is less than the outstanding amount of the loan and such depositor concurrently pays off the balance of such loan with funds that are not deposited at GDB.

**NINTH:**   I hereby clarify that any funds transferred after the date of EO 2016-10 by any department, agency, public corporation, instrumentality or municipality of the Commonwealth (each a "Commonwealth Entity") to GDB, solely in its capacity as paying agent for debt obligations of such Commonwealth Entity, shall not be considered funds on deposit at GDB for purposes of EO 2016-10 and, therefore, are not subject to the disbursement restrictions established therein.

**TENTH:**   Paragraph FIFTEENTH of EO 2016-10 is hereby amended to include the following sentence at the end of such paragraph: "Any financial institution in which a check issued by any Commonwealth Entity is deposited or which receives any other instruction from any Commonwealth Entity to transfer funds shall be entitled to honor such check or instruction in the ordinary course of its banking operations without inquiring about the compliance of such

3

Commonwealth Entity with the requirements of any administrative bulletin. With respect to such transactions, the applicable Commonwealth Entities shall be solely responsible and liable for compliance with any provision of the Act or any regulation or administrative bulletin issued thereunder, including any administrative bulletin that restricts the use of government funds or the issuance of checks or other instructions relating to government funds held by financial institutions."

**ELEVENTH:**   SEVERABILITY. This Executive Order shall be interpreted in a manner to render it valid to the extent practicable in accordance with the Commonwealth Constitution and the U.S. Constitution. If any clause, paragraph, subparagraph, provision or part of this Executive Order were to be declared unconstitutional by a competent court, the order to such effect issued by such court will neither affect nor invalidate the remainder of this Executive Order. The effect of such an order shall be limited to the clause, paragraph, subparagraph, provision or part of this Executive Order declared unconstitutional and only with respect to the application thereof to the particular obligation subject to such challenge.

**TWELFTH:**   RATIFICATION OF EO 2016-10. EO 2016-10, as modified pursuant to this Executive Order, is hereby ratified and confirmed in all respects and shall expire at the end of the Covered Period.

**THIRTEENTH:**   REPEAL. This order shall prevail over any other Administrative Order that may, in whole or in part, be inconsistent with this one, to the extent of such incompatibility.

**FOURTEENTH:**   EFFECTIVENESS AND PUBLICATION. This Executive Order shall take effect immediately and shall remain in effect until the earlier of (i) the end of the Covered Period or (ii) revocation of this Executive Order as provided by the Governor in writing. Its widest publication and dissemination are hereby ordered.

IN TESTIMONY BY WHICH, I issue this order under my signature and I stamp on it the Great Seal of the Commonwealth of Puerto Rico, in the city of San Juan, today, the 30th day of April, 2016.

_____
ALEJANDRO J. GARCÍA-PADILLA
GOVERNOR

4

Enacted pursuant to applicable law, on April 30, 2016.

_____

VÍCTOR A. SUÁREZ-MELÉNDEZ
DESIGNATED SECRETARY OF STATE