# **EXHIBIT J**

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Salvatore A. Romanello
+1 (212) 310-8454
salvatore.romanello@weil.com

July 13, 2016

**Via Email and Fedex**

Richard J. Cooper
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

Dear Richard:

I write in response to your June 30, 2016 letter, which attempts to explain Government Development Bank's ("GDB") refusal to release to Bank of New York Mellon, as Fiscal Agent, State Infrastructure Bank ("SIB") funds to cover July 1, 2016 payments due to holders of PRHTA 1998 Subordinated Bonds ("Bonds"). Despite your letter's refusal to acknowledge any obligation on behalf of GDB to hold SIB funds in trust, there is no question that GDB's holding such funds in deposit accounts, and its refusal to release such funds to the Fiscal Agent, violates GDB's contractual obligations as well as its obligations under federal law.

As you are fully aware, the Puerto Rico Infrastructure Agreement dated June 12, 1998, executed by GDB ("Bank Agreement"), provides in no uncertain terms that the SIB funds "shall be held in the custody of GDB *in trust, separate* and *apart* from all other funds of ... GDB." There can be no dispute over the meaning of this clear language.

Likewise, the SIB accounts held by GDB as SIB Trustee were created pursuant to the terms of the National Highway System Designation Act of 1995 ("NHS Act"), which requires that "an infrastructure bank established under this section shall maintain a separate highway account for Federal funds contributed to the bank ..." NHS Act § 350(b)(1). Accordingly, GDB's failure to maintain the SIB funds in a separate trust account, not only violates the terms of the Bank Agreement, but also directly violates the NHS Act's clear statutory language.

Moreover, GDB's refusal to release the funds to the Fiscal Agent directly contravenes statements made by the Commonwealth in the Offering Statement published in connection with the issuance of the Bonds. The Offering Statement makes clear that the "SIB Trust Fund" was established under the terms of the Bank Agreement, and that GDB would "serve as trustee of the SIB Trust Fund." The Offering Statement further provides that "for so long as the 1998 Subordinated Bonds shall be outstanding, the

Richard J. Cooper  
July 13, 2016  
Page 2

**Weil, Gotshal & Manges LLP**

SIB Trustee will make no withdrawals and expenditures, pledges or other encumbrances of amounts held to the credit of the 1998 Subordinated Bonds Highway Subaccount, other than to make deposits to the credit of the 1998 Subordinated Bonds Reserve Account." This statement is consistent with federal law establishing the SIB, which provides that "[f]ederal funds in the highway account of an infrastructure bank established under this section may be used only to provide assistance with respect to construction of Federal-aid highways. Federal funds in the transit account of such bank may be used only to provide assistance with respect to capital projects." NHS Act § 350(d).

Accordingly, the decision to deny the Fiscal Agent's request to release the SIB Funds is particularly troubling, given that federal law requires that the funds cannot be used for any other purpose. Indeed, the Offering Statement provides that under the NHS Act, the SIB "*irrevocably agrees* to provide funds to the 1998 Fiscal Agent for deposit to the credit of any separate account in the Subordinated Bond Reserve Fund. . ." Offering Statement at pp. 11. GDB's refusal to release the funds is at diametric odds with this language from the Offering Statement. Accordingly, by failing to release the funds, and by failing to keep the funds in separate accounts, GDB has violated federal law.[1]

Finally, your letter indicates that because the funds "were in fact held in a deposit account at GDB" such funds could not be distributed due to Act 21-2016. This begs the question as to whether such funds were ever held in trust, and if so, at what point were the SIB trust funds moved into deposit accounts. If the funds were never held in trust, then the statements in the Offering Statement to the contrary constitute clear misrepresentations. And if the funds were moved from a trust account to a deposit account, for what purpose were they moved? Unless GDB and the Commonwealth reconsider their refusal to release the SIB funds, these very troubling questions will eventually have to be answered as part of the discovery process.

Sincerely,

*/s/ S. A. Romanello*

Salvatore Romanello

cc: Patricia Ferrari, National Public Finance Guarantee Corporation

---

[1] We note that PRHTA and the Puerto Rico Department of Transportation and Public Works ("TPW") are parties to a Cooperative Agreement with the Federal Highway Administration and the Federal Transit Administration, which among other things requires that PRHTA and TPW "agree that they and all recipients of financial assistance directly made available to the SIB pursuant to the provisions of the NHS Act will comply with all applicable Federal laws and regulations."