I1AsPROpm1

```
 1  UNITED STATES DISTRICT COURT
    DISTRICT OF PUERTO RICO
 2  ------------------------------x   AMENDED
    IN RE: THE FINANCIAL OVERSIGHT    PROMESA
 3  & MANAGEMENT BOARD FOR PUERTO
    RICO,                             TITLE III
 4
         as representative of
 5                                    17 BK 3283 (LTS)
    THE COMMONWEALTH OF
 6  PUERTO RICO, et al.               (Jointly Administered)
                     Debtors.
 7  ------------------------------x
    THE OFFICIAL COMMITTEE OF UNSECURED
 8  CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,
 9             as agent of       Adv. Proc. No. 17-257 (LTS)
10  THE COMMONWEALTH OF PUERTO RICO,
11                  Plaintiff,
12         v.                       in 17 BK 3283 (LTS)
13  BETTINA WHYTE,
14             as agent of
15  THE PUERTO RICO SALES TAX FINANCING
    CORPORATION,
16
                 Defendant.
17  ------------------------------x   AMENDED
                                      Motion Hearing
18                                    January 10, 2018
                                      2:00 p.m.
19
    Before:
20
                    HON. LAURA TAYLOR SWAIN,
21
                                      District Judge
22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I1AsPROpm1

1                              APPEARANCES

2   PROSKAUER ROSE LLP
         Attorneys for FOMB Oversight Board
3   BY:  MARTIN J. BIENENSTOCK
         TIMOTHY W. MUNGOVAN
4
    PAUL HASTINGS LLP
5        Attorneys for Official Committee of Unsecured Creditors
                     and its capacity as Commonwealth agent
6   BY:  LUC A. DESPINS
         JAMES BLISS
7
    WILLKIE FARR & GALLAGHER LLP
8        Attorneys for COFINA Agent
    BY:  MATTHEW A. FELDMAN
9        JAMES C. DUGAN

10  ROBBINS RUSSELL ENGLERT ORSECK UNTEREINER & SAUBER LLP
         Attorneys for Ad Hoc Group of General Obligation
11  Bondholders
    BY:  DONALD BURKE
12       MARK T. STANCIL

13  QUINN EMANUEL URQUHART & SULLIVAN LLP
         Attorneys for COFINA Senior Bondholders
14  BY:  SUSHEEL KIRPALANI
         ERIC M. KAY
15
    WHITE & CASE LLP
16       Attorneys for Altair
    BY:  JASON ZAKIA
17
    KRAMER LEVIN NAFTALIS & FRANKEL LLP
18       Attorneys  for Mutual Fund Group
    BY:  PHILIP BENTLEY
19
    MILBANK, TWEED, HADLEY & McCLOY LLP
20       Attorneys for Ambac Assurance Corp.
    BY:  ATARA MILLER
21
    JENNER & BLOCK LLP
22       Attorneys for The Official Committee of Retired Employees
    BY:  RICHARD LEVIN
23
    O'MELVENY & MYERS LLP
24       Attorneys for AAFAF
    BY:  PETER FRIEDMAN
25

I1AsPROpm1

```
1         (Case called)
2         THE COURT:  Again, good afternoon, counsel, parties of
3    interest, members of the press and public gathered here in San
4    Juan as well as to those listening on the phone.
5         I would just like to remind everyone, as I did this
6    morning, of the restrictions on the use of electronic devices.
7    We are, again, honored to have present the Gretchen Rodriguez,
8    the assistant operations manager for the District Court in
9    Puerto Rico.
10        We are here now for oral argument on the Commonwealth
11   agency's motion for clarification of the December 21, 2017,
12   scope order, or alternatively, for reconsideration for leave to
13   amend.  I have received your agreed time allocations.
14        I would ask Mr. Despins to step to the podium, and
15   remind everyone to speak directly into the microphone and
16   project so that we can be heard at the remote locations.
17        MR. DESPINS:  Good afternoon, your Honor.  Luc Despins
18   with Paul Hastings on behalf of the official creditors
19   committee for all debtors other than COFINA, but here we are in
20   the capacity as the Commonwealth agent in the adversary
21   proceeding.
22        Your Honor, we are not naive of these motions,
23   especially the reconsideration aspect of our motions, are
24   rarely granted and the standards are very high.  We are well
25   aware of that.  But we believe here that there are compelling
```

I1AsPROpm1

```
 1    reasons to address this.

 2           Before I launch into the argument, perhaps it might

 3    make sense to hear from your Honor if you so choose to give us

 4    a sense of where you are on the clarification aspect first.

 5    That could allow us to focus on certain aspects.  We don't need

 6    to that, but if you want to share something with us on the

 7    first aspect, which is clarification, that might shorten the

 8    argument.

 9           THE COURT:  Well, frankly, thinking so much about the

10    vehicle, what I would like you to focus on is the degree to

11    which you believe there are elements of the 12th and 13th

12    clauses of action that are consistent with the guiding

13    principal of the scope order, which is that only issues

14    antecedent to the binary question of Commonwealth or COFINA

15    ownership of the SUT that, for whatever number of reasons,

16    didn't fall into the right part of the sorting tray when I

17    issued the scope order.

18           For instance, a question related to that is that in

19    both your 12th and your 13th causes of action, as originally

20    pleaded and as proposed to be repleaded, you request relief

21    that declares that all of the revenues, including the monies at

22    Bank of New York, are the exclusive property of the

23    Commonwealth.  It seems to me that could be read to reach lien

24    issues, beneficial interests, claims for equitable

25    subordination, as opposed to the question, the binary question
```

I1AsPROpm1

1   of property of the Commonwealth, not COFINA, with issues such

2   as fraud avoidance, liens, all that to be resolved later.

3         It would be helpful to me if you could be as clean and

4   bottom line as to which of the issues in 12 and 13 you believe

5   are necessarily and fundamentally antecedent to that binary

6   ownership issue.

7         MR. DESPINS:  Thank you, your Honor.

8         Very briefly, the use of the word "exclusive" was not

9   meant to bring in through the back door the issues you just

10  listed:  The subordination, security interest, and all that.

11  We covered that through other sections of the complaint, which

12  you dismissed and we are not challenging today.  Exclusive

13  really meant -- it belongs to the Commonwealth, not the COFINA.

14  We can dispense with the word "exclusive."

15        Everything that is in Counts 12 and 13, which are

16  based on the constitutional issues of whether the purported

17  transfer that was made pursuant to the COFINA statute violated

18  the Constitution, all of that, we believe, is antecedent based

19  on the precedence we cited, and also based on fact that nobody

20  is really challenging the fact that if the court were to find

21  that the statute violated the Constitution, either because it

22  didn't respect the priority issue or the debt limit issue or

23  the financing of deficit issue, that the consequence of that

24  would be that the Commonwealth would own those proceeds and

25  therefore it is antecedent.  It is as antecedent as the other

I1AsPROpm1

1   issues that your Honor left standing.

2           In fact, your Honor, in this case, because of the pace

3   at which we're going, six months feels like six years.  And it

4   is very helpful sometimes to go back.  And I went back to the

5   June 28 hearing, the first hearing I ever appeared at.

6           At that hearing, your Honor, there was a motion filed

7   by the Junior COFINA holders to lift the stay, you'll recall,

8   to send the Lex claims back to Judge Besosa for the purpose of

9   having that certified to the Puerto Rico Supreme Court.

10          Mr. Bentley, who is here today, said the issue, your

11  Honor, is which court should decide the issue of whether the

12  Puerto Rico statutes -- meaning the COFINA statutes -- that

13  created the COFINA structure are a valid or not under the

14  Puerto Rico Constitution.

15          Very interestingly, both AMBAC and COFINA said, no,

16  don't allow that, your Honor -- in fact, you denied that

17  request -- but don't allow that, your Honor.  And if you look

18  at what I was quoting was page 51 of that transcript.

19          If you look at Mr. Kirpalani's statement at page 62

20  and 63 of that statement, he says only the trustee in

21  bankruptcy, meaning the Commonwealth, has the right to sue on

22  basis of these constitutional claims.

23          In fact, Mr. Dunn said the same thing, page 65.  It is

24  an asset of the Commonwealth.  He said, you know why the

25  Juniors are doing this?  Because they don't like what is coming

I1AsPROpm1

1    next.  And what was coming next is the motion to approve the

2    stipulation, which you denied as well.  But that request was

3    made at a later date, I believe, and later granted.

4            The point I want to make there is that the issue of

5    the constitutional challenge to the COFINA statute was clearly

6    front and center, and it was one of the impetus for this

7    stipulation being approved to have a state representative take

8    on that issue.  In fact, the language of the stipulation does

9    refer to constitutional issues in the plural.

10           The only thing that is left, your Honor -- and I would

11   say the acid test, is really when it was time to challenge the

12   scope, what did people say regarding cause of action 12 and 13,

13   other than your Honor.  No one said anything, other than AMBAC,

14   and I'll come back to that in a second.

15           The COFINA seniors didn't say anything about that.

16   The COFINA agent did not complain about that.  The bottom line

17   is that they thought it was clearly within the scope.  AMBAC

18   said, well, they always do this.  They always try to decide

19   which claims to bring and how we should bring them.  But

20   basically said the Lex claims are OK, the issue of priority is

21   OK, but not the rest of the constitutional claims.  Of course,

22   there is no basis to limit our challenges that way.

23           That, your Honor, should really be the acid test here.

24   Nobody ever disputed that 12 and 13 were in scope because they

25   go to the issue of, if you find for us, the Commonwealth owns

I1AsPROpm1

1   these proceeds.

2        Your Honor, today the position taken by AMBAC is a

3   little bit different.  They are saying that, yes, but there is

4   another antecedent issue, which is the one you stated that you

5   kept in, but the fact that we have the one issue that is

6   antecedent doesn't mean that the issues, the other issues are

7   not antecedent.  Again, AMBAC should not be in a position to

8   dictate which claims we go forward with first or last.  They

9   are in the scope and the certificate should proceed with those

10  two claims.

11       I'm just looking at my notes here for two seconds.

12       Basically, these are the arguments, your Honor.  I

13  just want to make clear that the board and who is our principal

14  here, our principal is saying that that was within the intent.

15  If it is antecedent, which I think we have established and

16  nobody really challenges that, then it is within the scope.

17  That's probably one of the most important aspects of what the

18  board saying about this.

19       Thank you.

20       THE COURT:  Thank you.

21       Mr. Stancil.  We have you down for one minute,

22  30 seconds.

23       MR. STANCIL:  That sounds about right.  I will be

24  brief.

25       I represent the Ad Hoc Group of General Obligation

Case:17-03283-LTS   Doc#:2253   Filed:01/16/18   Entered:01/16/18 19:27:26   Desc: Main
Document    Page 9 of 24

I1AsPROpm1

```
1    bondholders.  We filed a one-count complaint.  Nobody moved to
2    dismiss that complaint as outside the scope.  However, in
3    response to the reconsideration requests, several folks on the
4    other side of the pro COFINA side said, while you're at it,
5    take out the general obligation bondholders count.  That would
6    be incorrect for a very clear and simple procedural reason,
7    which is nobody moved to dismiss it as outside the scope.  It
8    is also telling why no one moved to dismiss it as outside the
9    scope, because it is not.
10           Our complaint has a single count that says -- I am
11   reading from paragraph 79 -- Commonwealth's purported transfer
12   of SUT revenue to COFINA is invalid because of the violation of
13   the Puerto Rico institution.  That is, as I read it, squarely
14   within the ambit of the stipulation, which says whether, after
15   considering all procedural and offenses and counterclaims,
16   including constitutional issues, the sales and taxes purported
17   by COFINA to procure debt are properly under the Commonwealth
18   of COFINA under applicable law.  We think it is clear as day.
19           I would be end, moreover, as this court held recently
20   when discussing the CTO issue, it is just not appropriate to
21   seek affirmative relief and opposition to somebody else's
22   motion.  So this is procedurally wrong and defaulted twice
23   over.
24           In my last six seconds, I will just say briefly, we
25   have been trying to get this issue teed up for over a year.
```

I1AsPROpm1

1    The Lex claims was our case.  We are never going anywhere until

2    we get this resolved.

3              Thank you, your Honor.

4              THE COURT:  Thank you.

5              Mr. Levin.

6              MR. LEVIN:  Richard Levin, Jenner & Block, for the

7    Official Committee of Retirees and the creditor representative

8    in this litigation.

9              Two points.  Number one, you asked what is antecedent

10   to the ownership issue.  It is a simple statement.  If the

11   statute is unconstitutional, it is void, unenforceable, no

12   effect, and therefore the property remains with the

13   Commonwealth.  That has got to be an antecedent issue as to the

14   ownership.

15             Number two point.  As Mr. Stancil has suggested and as

16   his motion made clear, there are some inconsistencies because

17   elsewhere in the scope or some of the constitutional issues

18   were left standing, and I think the 12th and 13th claims in the

19   complaint might need some shaping to make sure that they are

20   the antecedent issue, but they are clearly within the scope of

21   the other matters that your Honor permitted in the scope order.

22             THE COURT:  Thank you.

23             MR. LEVIN:  Thank you.

24             THE COURT:  Now we turn to the opponents of the

25   motion.

1          I have Mr. Dugan as the first speaker.

2          MR. DUGAN:  Thank you, your Honor.  Good afternoon.

3          THE COURT:  Good afternoon.

4          MR. DUGAN:  Jim Dugan from Willkie Farr & Gallagher

5     for the COFINA Agent.

6          Your Honor, we believe that the scope order was fairly

7     clear on this point, which is that although your Honor is

8     entertaining constitutional issues of this case, you clearly

9     ruled that the Commonwealth agent's 12th and 13th causes of

10    action were outside the scope order and not authorized by the

11    stipulation, because the stipulation didn't authorize an attack

12    on the legality of the COFINA entity or structure.

13         Now, we haven't heard from the Commonwealth agent's

14    attorney today how it is that their 12th and 13th causes of

15    action somehow survive given your Honor's clear ruling.  In

16    fact, they have indicated that they believe the entirety of

17    those claims should be within the scope order.  But I think

18    your Honor is very clear that they are not within the scope

19    order.

20         On the point of antecedents to the property ownership

21    issue, we heard the Commonwealth agent's argument.  In our

22    view, the way the 12th and 13th causes of action are framed, we

23    believe they presume an answer to the ownership question

24    because they are framed as an evasion of constitutional limits

25    that apply to the Commonwealth, not to COFINA.  In order to

I1AsPROpm1

```
1    find that those constitutional limits, that that limit and the

2    balanced budget limit applied to COFINA, one has to either

3    assume or establish that COFINA is not an independent, validly

4    created organization or entity.  One has to assume, therefore,

5    that it can't own anything.  It assumes the answer to the

6    ultimate question that I think your Honor has asked us to

7    litigate on this issue.  We believe the 12th and 13th of are

8    outside the scope order.

9            Your Honor, I think that is the only point we really

10   wanted to make here.

11           THE COURT:  Thank you.

12           MR. DUGAN:  Thank you.

13           THE COURT:  Mr. Kirpalani.

14           MR. KIRPALANI:  Susheel Kirpalani from Quinn Emanuel

15   Urquhart & Sullivan on behalf of the COFINA Senior Bondholders

16   Coalition.

17           Good afternoon, your Honor.  Happy New Year.  Happy

18   New Year to our friends in Puerto Rico.

19           Judge, the whole point of this protocol was to remove

20   the cloud on COFINA's title to dedicated sales tax so the

21   Oversight Board could understand how to treat the Island's

22   competing creditors.

23           I think I follow the Commonwealth's agent's theory in

24   counts 12 and 13, and here is how it actually goes, even though

25   it is not the way Mr. Despins articulated.  If COFINA issued
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I1AsPROpm1

1    bonds for an improper purpose and if that means that the bonds

2    go poof in the night, then under the COFINA legislation, cash

3    that is not needed to pay COFINA debt service would

4    automatically flow back to the Commonwealth's general fund.

5    That is the COFINA statutory waterfall.

6         That is why the Commonwealth agent keeps trying to

7    assert that COFINA bonds may have been issued in violation of

8    the debt limit or the balance budget clause of the

9    Constitution, because if some portion of COFINA's bond

10   issuances can be punctured, then maybe some of the dedicated

11   sales tax can leak to the Commonwealth's general fund pursuant

12   to the COFINA statutory waterfall.

13        They don't clearly say it that way, but that is really

14   what this is about.  We don't think it is the Commonwealth

15   agent's theory.  We don't think this theory has any legs

16   because we don't believe that municipal bonds can go poof in

17   the night, thanks to Article 8 of the UCC.

18        I am trying to explain what our position is in light

19   of the theory of the Commonwealth agent.  Initially, your

20   Honor, you remember the Commonwealth agent threw a kitchen sink

21   of claims at COFINA and we responded likewise.  We thought the

22   scope admittedly should be very broad, because we want to get

23   everything into the pot and make soup.  We wanted there to be

24   global peace.

25        The court, your Honor, stripped the claims down to

1    what the court ruled the protocol stipulation actually said and

2    were only going to determine which debtor entity owned the

3    dedicated sales tax.  Nothing more.  That is fine.  We are OK

4    with that.  We can live with that.

5        But Counts 12 and 13 are seeking to say that even if

6    COFINA is the owner of the dedicated sales tax, maybe, just

7    maybe, some of the issuances of COFINA bonds can be knocked

8    out.  To remind the court, the bulk of COFINA senior bonds were

9    issued in 2007 and in 2008.  Starting in 2009, subordinate

10   bonds were issued, and then some senior bonds were issued later

11   to refinance earlier bonds.

12       Paragraph 142 of Mr. Despins' complaint admits that

13   bonds issued prior to 2009 are not even susceptible to the debt

14   limit theory at all.  So the Commonwealth agent has alleged no

15   plausible claim that COFINA was invented in 2006 to work at end

16   run around the Constitution.  The only thing invented is that

17   theory itself.

18       But if the court is going to permit the agent to try

19   to develop this theory, then a symmetrical argument about

20   Commonwealth full faith and credit bonds equally applies, and

21   let me explain why.

22       It seems to us, Judge, that if COFINA is the owner of

23   the dedicated sales tax, and by definition the dedicated sales

24   tax cannot be part of the property of the Commonwealth debtor,

25   let alone the available resources of the Commonwealth debtor,

I1AsPROpm1

1    we think that follows as a matter of law and logic.  But,

2    Judge, if there is some theory being advanced that says the

3    valuable resources remedy can nevertheless be used by a GO

4    bondholder to reach across debtor lines to another entity's

5    property, that kind of leaves me scratching my head.

6           But if that is the theory, then naturally the remedy

7    can only be invoked by GO bondholders entitled to full faith

8    and credit under the Constitution.  We have long asserted,

9    including in the Lex claims litigation, that billions of

10   dollars of bonds issued after 2011, with the purported full

11   faith in credit guarantee, were actually in excess of the debt

12   limit.  Also, that every GO bond issued after COFINA was

13   created contractually disclaimed a right to the dedicated sales

14   tax, waived and subordinated any rights to be paid from that

15   until COFINA bonds were paid in full.

16          Our point is pretty simple, Judge, how can the

17   Commonwealth side be permitted to attack the issuances of

18   tranches of COFINA bonds so as to have more dedicated sales

19   tax flow into the general fund, but the COFINA side is not

20   permitted to show that the Commonwealth side could only tap

21   into COFINA to pay proper full faith and credit bonds.

22          We are only seeking fairness and symmetry.  We think

23   the court should keep the protocol, as your Honor ruled,

24   because it seems to us, from a plausibility perspective, if

25   COFINA is the owner of the property, and by definition it isn't

1   Commonwealth property, so by definition it isn't available

2   resources.  If COFINA is the owner of the property, then by

3   definition, its bondholders don't count against the

4   Commonwealth's debt limit or debt maturity limit.  But if the

5   Commonwealth agent can assert that some of the bonds were

6   issued in violation of the Constitution to get around debt

7   limits in violation of a balanced budget amendment, then it has

8   to be symmetrical, your Honor, so we can protect ourselves and

9   mitigate against those claims.

10          Your Honor, Mr. Despins said -- this is my last

11  comment, I know I am out of time -- Mr. Despins says I stood

12  here -- I was actually in San Juan -- and says that Lex claims,

13  back in June 20-something, Lex claims must be asserted by the

14  trustee in bankruptcy.  Of course I stand by that.  But he

15  neglects to tell you that Lex claims did not include Counts 12

16  and 13.  And he neglects to tell you, your Honor, that we

17  asserted these counterclaims in Lex claims.

18          So we are just seeking symmetry and fairness, Judge.

19  Thank you.

20          THE COURT:  Thank you.

21          Ms. Miller.

22          MS. MILLER:  Good afternoon, your Honor.  Atara

23  Miller, Milbank Tweed Hadley & Mc Cloy, on behalf of AMBAC.

24          I appreciate that I found a friend in Mr. Kirpalani

25  and I am not standing here alone asking for a narrow scope.

I1AsPROpm1

1    Mr. Despins frames it as AMBAC tries to control what claims

2    they can bring and we somehow always can mastermind and control

3    what our adversaries can do.  That is not what is at issue

4    here.

5            What is at issue here is a negotiated protocol and

6    stipulation, which based on our preservation of rights that we

7    filed contemporaneous with that, our client was reluctant to

8    enter into.  It is not about what issues are on the table, but

9    it is about a delegation of authority beyond just the

10   litigation, but also in settlement and said there very

11   carefully, and as was mentioned in the papers, mediated scope

12   of what would be part of this.  That was very specifically and

13   narrowly, as the court pointed out, in the scope order,

14   narrowly defined to the limited binary issue of whose property

15   is the SUT.

16           I would stand up here, in response to Mr. Stancil's

17   argument, and say that the reason why nobody attacked or at

18   least we didn't challenge their counterclaim was because we did

19   understand that the narrow question of available resource,

20   which we saw as a question of whether the nature of the

21   property right that was granted, whether it was unfettered or

22   somehow conditional subject to clawback, that that was part of

23   it, and because of that, we didn't expressly and directly

24   challenge it.  But your Honor saw that available resources

25   question differently, and we respect your Honor's opinion on

I1AsPROpm1

```
 1    that.
 2              What needs to happen here is there needs to be
 3    consistency across the board with the guiding principals that
 4    your Honor laid out.  I think to accomplish that, you do need
 5    to take out the GO's counterclaim as well.
 6              With respect to the 12th and 13th claims of the
 7    Commonwealth agent, I want to go directly to your Honor's
 8    question to Mr. Despins, which was tell me how, as concisely
 9    and precisely as you can, these implicate antecedent property
10    questions.
11              The answer, as I heard it, was, well, if the court
12    were to find that the statute violated the Constitution, then
13    nobody has ever challenged that the consequence is that the
14    Commonwealth would own the SUT.  I will stand up here and say
15    we have challenged it before.  We challenge today in our
16    answer.  We challenge it again here, because what Mr. Despins
17    is saying, if you look at the counterclaims, what they are
18    challenging is not the statute, but the "COFINA structure."
19    While that is undefined, what is clear that what is being
20    challenged is not whether COFINA itself was legally and
21    constitutionally established as a separate and independent
22    entity.  What is not being challenged is whether the
23    Commonwealth actually transferred property to that entity.
24              What they are challenging is what happened with that
25    pledge, with that transfer of property, was that properly
```

I1AsPROpm1

1    pledged, was that constitutional, was the incurrence of debt

2    constitutional, was that a violation of taxing authority, was

3    that a violation of constitutional debt limits.

4         Those are precisely the issues that are in the 12th

5    and 13th causes of action and that is not an antecedent

6    question.  What happens, those questions do not need to be

7    answered to determine whose property the SUT is today.

8         So, your Honor, we would just close by saying that we

9    think that your Honor properly and appropriately construed the

10   narrow scope of the stipulation and that all of the

11   counterclaims and all of the claims in this action should be

12   revisited and narrowed consistent with the guiding principles

13   that you laid out in terms of what is appropriately considered

14   and antecedent question to the very binary issue of whose

15   property is it, Commonwealth or COFINA.

16        THE COURT:  Thank you.

17        MS. MILLER:  Thank you.

18        THE COURT:  That brings us back to Mr. Despins, unless

19   Mr. Levin wants to rebut those.

20        Actually, I'm sorry, Mr. Levin and Mr. Stancil.

21        (Continued on next page)

22

23

24

25

I1AYPROPM2

1          THE COURT:  And that brings us back to Mr. Despins,

2     unless Mr. Levin wants to rebut.

3          Actually, I'm sorry.  Mr. Stancil.

4          MR. LEVIN:  Your Honor, I waive rebuttal.

5          THE COURT:  Thank you.

6          MR. STANCIL:  Thank you, your Honor.

7          Very briefly, I heard nothing about the GO complaints

8     from Mr. Dugan or Mr. Kirpalani.  Only Ms. Miller addressed it,

9     and she didn't answer a question.

10          The question first was procedurally what would justify

11     a failure to move and now to ask to strike or modify our own

12     count.  All Ms. Miller offered was well, now they wish they

13     had.

14          I would recommend to the Court paragraph 1 of our

15     complaint:  "This action seeks a declaratory judgment that all

16     revenues derived from the SUT imposed and collected by the

17     Commonwealth are property of the Commonwealth."  We weren't

18     hiding the ball at all.  This is the core question.

19          Moreover, there is absolutely no response to the fact

20     that it's improper to move for affirmative relief in opposition

21     to someone else's motion.  There simply is no basis to strike

22     or modify the GO claims.

23          But I think more fundamentally, there is confusion

24     offered here by the other side, which is that the issues as to

25     why COFINA, the transfer of COFINA, the property taxes attempt

1    to transfer the sales and use tax to COFINA was improper is

2    because of these other constitutional violations.

3           They're confusing the why it's unconstitutional with

4    whether it's unconstitutional, and I think we need to get to

5    the core of this complaint which is notwithstanding what the

6    Constitution says about all available resources and the many,

7    many other interlocking provisions that say where this tax

8    money goes, you can just by ipse dixit wave your wand and say,

9    but these don't count.  You have to get to that, or this case,

10   as I said a moment ago, will go nowhere, and we really do need

11   to get this question resolved, your Honor.

12           THE COURT:  Thank you.

13           MR. DESPINS:  Very briefly, your Honor.  I agree with

14   Mr. Stancil that what's attempted here is to confuse a bunch of

15   issues so that the Court basically says, oh, I need to stick to

16   what we have.  Otherwise, there's going to be chaos.  We are

17   not challenging the bonds.  We are challenging the creation of

18   COFINA as a structure that was meant -- that had the effect of

19   going around constitutional, very clear constitutional

20   provisions.

21           If we are correct that in fact there was

22   constitutional evasion, the consequence of that is that the

23   transfer of SUT by the Commonwealth to COFINA would not be

24   valid, and therefore, the SUT would be owned by the

25   Commonwealth.

1          THE COURT:  Would not be valid because COFINA does not

2     legitimately exist as an entity, or would not be valid because

3     at some point certain ceilings were exceeded so that some

4     elements of what COFINA obligated itself to do were

5     unconstitutional and, therefore, shouldn't be funded with SUT?

6          MR. DESPINS:  No.  It's not a question of whether it's

7     not a valid legal entity or not.

8          The question is did the transfer of SUT, which was

9     clearly an asset of the Commonwealth and an available resource,

10    as defined in the Constitution, did that violate the

11    Puerto Rico Constitution and, therefore, did any structure that

12    accomplished that transfer -- is any structure that

13    accomplished that structure void because it violates the

14    Constitution, either because of debt priority or either because

15    it was designed or had the effect, designed or had the effect,

16    of evading other constitutional motivations such as deficit

17    funding or exceeding the debt limits.

18          But what they want is to actually litigate the issue.

19    They're saying, no.  No.  Those claims don't make sense.

20    Therefore, find they're out of scope, but that's not the

21    standard, your Honor.

22          The standard is we've pled them.  They're very clear

23    in articles 12 and 13 of the complaint.  Whether they're in

24    scope or not is not a mini trial on whether they think those

25    claims make sense or not.

I1AYPROPM2

 1         Clearly they do make sense.  Other courts have held

 2    that similar structures are void and, therefore, must --

 3    because they violate the local Constitution in those cases, and

 4    it's exactly the same thing that we're doing here, your Honor.

 5         THE COURT:  Thank you.

 6         I will take this under advisement.  I understand the

 7    pressures of the summary judgment schedule.  So I will try not

 8    to keep you all waiting long.  Thank you all for your work here

 9    today.  Safe travels.  We are adjourned.

10         (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I1AYPROPM2

1    UNITED STATES DISTRICT COURT)
                                ) ss.
2    OF PUERTO RICO             )

3

4

5

6                      REPORTERS' CERTIFICATE

7

8         I, Kelly Surina and Lisa Picciano Fellis, do hereby

9    certify that the above and foregoing, consisting of the

10   preceding 23 pages, constitutes a true and accurate transcript

11   of my stenographic notes and is a full, true and complete

12   transcript of the proceedings to the best of our ability.

13        Dated this 10th day of January, 2018.

14        S/Kelly Surina_____

15        Kelly Surina, RMR, CSR, RPR, CRR

16        S/Lisa Picciano Fellis_____

17        Lisa Picciano Fellis, RMR, CSR, RPR

18        Official Court Reporters

19        500 Pearl Street

20        New York, NY 10007

21        212-805-0320

22

23

24

25