**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**Re: ECF No. 2223**

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

```
-------------------------------------------------------------------X
```
AD HOC GROUP OF GENERAL OBLIGATION
 BONDHOLDERS, AMBAC ASSURANCE
CORPORATION, ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP.,
THE MUTUAL FUND GROUP, AND NATIONAL
PUBLIC FINANCE GUARANTEE CORPORATION,

         Movants,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of THE COMMONWEALTH OF
PUERTO RICO, THE COMMONWEALTH OF
PUERTO RICO, AND THE PUERTO RICO FISCAL
AGENCY AND FINANCIALADVISORY AUTHORITY,

         Respondents.
```
-------------------------------------------------------------------X
```

## BRIEF OF THE OVERSIGHT BOARD, THE
## COMMONWEALTH AND AAFAF IN OPPOSITION TO MOVANTS' DEMAND FOR
## PRODUCTION AND USE OF FISCAL PLAN DEVELOPMENT MATERIALS

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

PROCEDURAL BACKGROUND ............................................................................................2

ARGUMENT ............................................................................................................................3

   I.   MOVANTS' ARGUMENTS REGARDING RESTRICTIONS ON USE
      OF INFORMATION IN THE DATA ROOM ARE PREMATURE .................................3

   II.  MOVANTS HAVE BROADENED THEIR REQUESTS......................................................4

   III. MOVANTS' DEMAND FOR PRODUCTION OF EVERY
      DOCUMENT CONCERNING THE FISCAL PLANS IS LEGALLY
      BASELESS AND CHILLS GOVERNMENTAL DELIBERATIONS .............................5

   IV. COMMUNICATIONS BETWEEN THE COMMONWEALTH AND
      OVERSIGHT BOARD IN DEVELOPING THE FISCAL PLANS ARE
      PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE ................................7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ...............................................................................................8

*In re ACandS, Inc.*,
Case No. 02-12687 (RJN) (Bankr. D. Del.) ...................................................9

*In re Combustion Engineering*,
Case No. 03-10495 (JKF) (Bankr. D. Del.) (May 2 Tr. ) ...............................9

*In re Eagle-Picher Indus.*,
169 B.R. 130 (Bankr. S.D. Ohio 1994) ..........................................................9

*In re Pittsburgh Corning Corp.*,
Case No. 00-22876 (JKF) (Bankr. W.D. Pa.) (Feb. 19 Tr. ) ..........................9

*Judicial Watch, Inc. v. U.S. Dep't of the Treasury*,
796 F. Supp. 2d 13 (D.D.C. 2011)...................................................................8

*Providence Journal Co. v. U.S. Dep't of Army*,
981 F.2d 552 (1st Cir. 1992)............................................................................7

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
60 F.3d 867 (1st Cir. 1995)..............................................................................8

*W Holding Co. v. Chartis Ins. Co. of P.R.*,
42 F. Supp. 3d 319, 324 (D.P.R. 2014) ..........................................................8

**STATUTES**

11 U.S.C. § 1123(a)(3) .............................................................................................6

11 U.S.C. § 1128 ......................................................................................................6

48 U.S.C. §§ 2101–2241 ..........................................................................................1

Bankruptcy Code section 1123(a)(3)........................................................................5

PROMESA § 201(c).................................................................................................7

PROMESA § 201(d).................................................................................................7

PROMESA § 201(e)...........................................................................................................7

PROMESA § 314(b)(6)......................................................................................................6

**OTHER AUTHORITIES**

F.R.C.P. 26(b)(1) ...........................................................................................................10

F.R.C.P. 26(b)(2)(C)(iii)..................................................................................................10

The Financial Oversight and Management Board for Puerto Rico (the "Oversight

Board"), and the Commonwealth of Puerto Rico (the "Commonwealth"), by and through

the Oversight Board as the Commonwealth's representative pursuant to section 315(b) of

the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and

the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," together

with the Oversight Board and the Commonwealth, the "Respondents"), hereby submit this

brief in response to the "*Brief of Ad Hoc Group of General Obligation Bondholders, [et al].*

*in Support of Production and Use of Fiscal Plan Development Materials*" [ECF No. 2223]

("Mov. Br.").[3]

## INTRODUCTION

All of Movants' discovery requests have been resolved except for three.  As for

those three, despite the plethora of information already provided, Movants continue to

demand production of every conceivable document, including drafts, relating to the soon to

be superseded Fiscal Plans and the new Fiscal Plans under development, as well as

communications among officials of AAFAF, the Commonwealth and the Oversight Board.

Putting aside that the voluminous documents Movants now seek (including a privilege log)

were not even included in their Renewed Joint Motion, such documents are not properly

the subject of Rule 2004 discovery.  Not only is this discovery unnecessary to enable the

Movants to understand the Commonwealth's financial condition in light of myriad other

---

[2]     PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[3]     Capitalized terms not defined herein shall have the meaning given to them in the Joint Report of
Movants and Respondents With Respect to Order Authorizing Rule 2004 Examination [ECF No. 2154] (the
"Joint Report").

1

disclosures, the requested documents – including real time communications regarding

development of the new Fiscal Plans – are protected by the deliberative process privilege.

Notably, the documents called for under PROMESA section 201(c), (d), and (e)

have all been furnished.  These include the Oversight Board's notifications of violations

and suggested revisions to the Governor's proposed fiscal plans.  Movants, however, are

asking for all other writings leading up to the Oversight Board's conclusions.  Compelling

discovery of the efforts of AAFAF, the Commonwealth, and the Oversight Board on Fiscal

Plans would chill their collaboration to the detriment of this critical process.  Not only is

there no good cause to permit such discovery pursuant to Bankruptcy Rule 7026(c)(1),

there is affirmatively good cause to prevent it from occurring.  The requests, if permitted,

would cast a pall over the ongoing process of finalizing the new Fiscal Plans and divert

Respondents from that primary task.

## PROCEDURAL BACKGROUND

On November 28, 2017, Movants filed an Urgent Renewed Joint Motion for Order

Authorizing Rule 2004 Examination [ECF No. 1870] ("Renewed Joint Motion"), seeking

17 categories of documents ("Renewed Joint Requests").  Respondents served their

objection on December 6, 2017 [ECF No. 1928] ("Respondents' Objection").  The Court

issued an order on December 15, 2017, allowing a Rule 2004 examination as to the

Renewed Joint Requests, subject to limitations on use of certain documents and also

subject to Respondents' specific objections to the individual requests [ECF No. 2033] (the

"December 15 Order").  On December 22, 2017, the Parties submitted a Joint Report

informing the Court that they reached agreement regarding Requests 1-7, 9-11, and 13-15,[4]

(*see* Joint Report at 1-2), but not as to Requests 8, 16, and 17 (*id.* at 3). Movants filed their

brief on January 5, 2018.

In the wake of the hurricanes and the Fiscal Plans requiring revisions, Movants'

insistence upon obtaining virtually limitless discovery to understand "*how* Respondents

calculate the figures presented in the Fiscal Plan" (Mov. Br. at 2 (emphasis in original)), is

not authorized by Rule 2004, will not achieve Movants' stated goals and cannot be

justified. Significantly, Movants are demanding this discovery in the face of PROMESA

section 106(e) that deprives all district courts of power to preside over challenges to the

Oversight Board's certifications of fiscal plans.

## ARGUMENT

### I. MOVANTS' ARGUMENTS REGARDING RESTRICTIONS ON USE OF INFORMATION IN THE DATA ROOM ARE PREMATURE

Movants seek production of "'Fiscal Plan Development Materials' compris[ing]

everything in between the raw data and the certified Fiscal Plan, including models,

assumptions, formulas and inputs." Mov. Br. at 1. Movants, however, acknowledge that

some "of these Fiscal Plan Development Materials—such as the live model that underlies

the Commonwealth Fiscal Plan, certified in March 2017—were provided to Movants in the

'data room,'" but are "subject to the strict constraints of an NDA (or in some cases, the

mediation agreement, which prohibits their use in any way in the litigation.)" Mov. Br. at

---

[4] Movants previously informed the Court that they were no longer pursuing Request 12. *See*
Movants' reply brief in support of Renewed Joint Motion [ECF No. 1973] at 8.

3

2.[5] Given the bar of PROMESA section 106(e) against district courts reviewing fiscal plan

certifications, Movants' demands are particularly unwarranted. In any event, the parties

are in discussions regarding the application of the NDAs to certain documents.

## II.    MOVANTS HAVE BROADENED THEIR REQUESTS.

Despite Movants' arguments to the contrary, Respondents have already provided

the materials "in between the raw data and the Fiscal Plan" in the form of models,

underlying data and assumptions, formulas, inputs and narrative responses to Movants'

questions related to Requests 8, 16 and 17. These extensive disclosures have enabled

Movants to understand the "liabilities and financial condition of the debtor." *See*

Respondents' Objections at 22-23 (addressing Request 8); 28-31 (addressing Request 16)

and 31-32 (addressing Request 17).[6]

Movants not only ignore this presentation, but instead have broadened their

demands in response to it. Although Requests 8, 16, and 17 do not purport to seek

communications of any kind, Movants now demand all communications and documents

exchanged between and among AAFAF, the Commonwealth and the Oversight Board

related to the development of the existing Fiscal Plans and the development of the

upcoming Fiscal Plans. *See* Mov. Br. at 4-5. Thus, while Respondents have continued to

make further disclosures and concessions, Movants have not compromised on the

remaining requests – but have gone in the other direction. This is unacceptable. Movants

---

[5]    Although the materials prepared and presented for the mediation remain strictly confidential for settlement purposes only, the overwhelming majority of data and source material that underlie the mediation presentations regarding the development of the Fiscal Plans are available to creditors in the data room.

[6]    For the Court's convenience, copies of these particular responses are annexed to the memorandum as Appendix A.

should not be allowed to pile on new demands every time Respondents demonstrate that

Movants have already received the documents concerning the Debtors' financial condition

and the development of the Fiscal Plans.

### III. MOVANTS' DEMAND FOR PRODUCTION OF EVERY DOCUMENT CONCERNING THE FISCAL PLANS IS LEGALLY BASELESS AND CHILLS GOVERNMENTAL DELIBERATIONS

Movants' demand for all communications and documents between and among

AAFAF, the Commonwealth and the Oversight Board relating to the existing and

forthcoming Fiscal Plans oppresses the process, is unduly burdensome, and is based on a

series of incorrect premises. Mov. Br. at 2-3.

First, Movants misconstrue the nature and purpose of the Fiscal Plans and

intentionally conflate and confuse the relationship between a certified Fiscal Plan and a

plan of adjustment. Even if permitted, their effort to deconstruct the Fiscal Plans would not

give them the insight into the Commonwealth's financial condition they purport to seek. A

Fiscal Plan is a framework for the future showing categories of future expenses and

revenues. It includes a debt sustainability analysis showing projected monies available for

debt service. It is not self-operative. Rather, it is a blueprint for further fiscal and

economic action by the Commonwealth. It is not a plan of adjustment designed to identify

the treatment of each class of claims. *See* Bankruptcy Code section 1123(a)(3). A Fiscal

Plan also does not determine the mechanisms by which projected cash flows available for

debt service should be allocated to different debt instruments. Turning it inside out for

litigation purposes, as Movants seek to do, would not advance any legitimate goal, and

would impose an unjustified burden on Respondents' limited resources.

5

Second, Movants not only erroneously seek to apply the law regarding confirming a plan of adjustment to Fiscal Plans, they misstate that law.  Movants erroneously assert that the "plan must provide creditors with the maximum that the [debtor] could reasonably pay under the circumstances."  Mov. Br. at 3.  While, as a practical matter, the Oversight Board and Commonwealth want to repay as much debt as is consistent with carrying out PROMESA's directive to create fiscal responsibility and access to the capital markets, PROMESA § 314(b)(6) does not require the debtor to pay prepetition claimholders as much as it can.  Rather, it provides the Court should "consider" what creditors could recover under applicable non-bankruptcy law, *i.e.*, what a race to the courthouse would produce for "the creditors" under non-bankruptcy law.  PROMESA § 314(b)(6) states:

> the plan [must be] feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan.

Finally, a Fiscal Plan does not address treatment of prepetition claims because Congress reserved that issue for the plan of adjustment.  Thus, the treatment of prepetition claims and indeed the future plan of adjustment will be the subject of a confirmation hearing and focused discovery.[7]  Movants' stated reasons for seeking burdensome, unbridled disclosure into the Fiscal Plan Development Materials, much of which will likely be completely irrelevant to the eventual plan of adjustment, is baseless.

---

[7]     *See* 11 U.S.C. §§ 1123(a)(3), 1128 (made applicable by PROMESA § 301(a)).

6

## IV. COMMUNICATIONS BETWEEN THE COMMONWEALTH AND OVERSIGHT BOARD IN DEVELOPING THE FISCAL PLANS ARE PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE

PROMESA §§ 201(c), (d), and (e) provide for the Governor to propose fiscal plans and the Oversight Board to certify them or to identify violations and suggest revisions. The Oversight Board has disclosed its notices of violation and suggested revisions to Movants and the public. Movants, however, demand unbridled production of internal communications and documents exchanged between and among the Commonwealth, AAFAF and the Oversight Board regarding both the March 2017 Commonwealth Fiscal Plan, the April 2017 PREPA Fiscal Plan, and the ongoing development of the new Fiscal Plans (currently due to be certified by February 23, 2018). This includes "versions of the Fiscal Plan submitted to the Oversight Board that the Board does *not* certify [and] drafts of the Fiscal Plan." Mov. Br. at 5 (emphasis in original). Not only do the communications and draft materials Movants now seek go to the very heart of the deliberative process privilege, their production would chill collaboration and communications between the Commonwealth, AAFAF and the Oversight Board. Additionally, the enormous burden of producing – or even logging – these materials would undermine the process of developing the 2018 Fiscal Plans with no concomitant benefit.

The deliberative process privilege "is designed to safeguard and promote agency decision making" by assuring, among other things, "'that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations.'" *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.

7

Cir. 1980)). The privilege applies to communications that are "(1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The deliberative process privilege is the federal counterpart of Puerto Rico's official information privilege. *See W Holding Co. v. Chartis Ins. Co. of P.R.*, 42 F. Supp. 3d 319, 324 (D.P.R. 2014).

While the Fiscal Plans, raw data, models, underlying data and assumptions, formulas, and inputs (all of which have been made available to Movants) are not themselves subject to the privilege, the communications between and among the Commonwealth, AAFAF and the Oversight Board, as well as the deliberative materials utilized to create the final work product, are textbook examples of the materials covered by the privilege and immune from disclosure. *See Dep't of Interior*, 532 U.S. at 8 (deliberative process covers "deliberations comprising part of a process by which governmental decisions and policies are formulated"); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011) (post-decisional "documents properly fall under the deliberative process privilege when they recount or reflect pre-decisional deliberations"). Permitting discovery of all drafts, internal memoranda, and communications between and among the Commonwealth, AAFAF, and the Oversight Board leading up to the submission, review and certification of the 2017 Fiscal Plans and the new Fiscal Plans still under development would undermine the essential interests that

8

the privilege is intended to protect. The requested discovery would cast a pall over the

process of developing the *new* Fiscal Plans as officials recognize that their candid

inquiries, ideas and proposals will be subject to public scrutiny and second-guessing –

precisely what the deliberative process privilege is designed to prevent.

Citing no authority for their unprecedented demands, Movants make the

conclusory assertions that knowledge of "the alternatives that were presented but

rejected—and critically, the reasons for the rejection—is necessary to know whether the

Fiscal Plan that is ultimately certified does, in fact, provide creditors with the maximum

that the Debtors could reasonably pay." Mov. Br. at 5-6. First, Movants ignore that they

have been provided the Oversight Board's notices of violations concerning items that were

rejected. Movants seek discovery of the Debtors' draft work product to propound an

asserted confirmation standard that, as demonstrated above (at 5-6) is nowhere to be found

in the statute. In any event, case law is clear that even draft bankruptcy plans are not

relevant to confirmation standards and thus not discoverable. *See In re Eagle-Picher

Indus*., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (denying Rule 2004 motion: "A

creditor has no right to see the draft of a plan before its completion..."); *In re Pittsburgh

Corning Corp*., Case No. 00-22876 (JKF) (Bankr. W.D. Pa.) (Feb. 19, 2004 Tr. at 64)

("Prior drafts of the plan are not discoverable, they're not admissible, they're wholly

irrelevant…."); *In re Combustion Engineering*, Case No. 03-10495 (JKF) (Bankr. D. Del.)

(May 2, 2003 Tr. at 301) (same)); *In re ACandS, Inc*., Case No. 02-12687 (RJN) (Bankr. D.

Del.) (Sept. 30, 2003 Tr. at 42-45 (denying discovery into plan negotiations because such

information is irrelevant to the issue of good faith in proposing the plan). By analogy, and

9

even though Fiscal Plans are not plans of reorganization, these rulings apply with equal force to the draft Fiscal Plans. The Debtors' draft determinations have no bearing on PROMESA's confirmation requirements for the future plan of adjustment. The Fiscal Plans themselves are not subject to challenge at all. Movants thus have no right under Rule 2004 to obtain discovery of drafts or uncertified versions of Fiscal Plans and are not entitled to disclosure of communications and documents related to ongoing development of the new Fiscal Plans.

Finally, Respondents should not be compelled to conduct extensive privilege reviews and prepare vast privilege logs, including daily updates, on the development of the new Fiscal Plans. Movants do not cite a single case to support their demand for logging of the immaterial and privileged documents they seek, no less continuous logging of ongoing communications, and research has not disclosed any case in the federal courts requiring continuous contemporaneous logging. Creating logs would itself have a chilling effect on the deliberative process and constitute an unnecessary burden and diversion from the essential task of developing the new Fiscal Plans. The Court should deny Movants' request for all communications related to development of the Fiscal Plans, and deny Respondents' request for a log of those communications. *See* F.R.C.P. 26(b)(1) and 26(b)(2)(C)(iii) (permitting the Court to limit the extent of discovery if "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues . . . the burden or expense of the proposed discovery outweighs its likely benefit").

10

WHEREFORE Respondents respectfully request the Court to deny Movants'

request for production and use of Fiscal Plan Development Materials and grant

Respondents such other relief as is just and proper.

Dated: January 22, 2018
      San Juan, Puerto Rico

Respectfully submitted,

| | |
|---|---|
| */s/Martin J. Bienenstock* | */s/ John J. Rapisardi* |
| Martin J. Bienenstock | John J. Rapisardi |
| Stephen L. Ratner | Suzzanne Uhland |
| Timothy W. Mungovan | (Admitted *Pro Hac Vice*) |
| Paul V. Possinger | **O'MELVENY & MYERS LLP** |
| (Admitted *Pro Hac Vice*) | 7 Times Square |
| **PROSKAUER ROSE LLP** | New York, NY 10036 |
| Eleven Times Square | Tel: (212) 326-2000 |
| New York, NY 10036 | Fax: (212) 326-2061 |
| Tel:  (212) 969-3000 | |
| Fax:  (212) 969-2900 | Peter Friedman |
| *Attorneys for the Financial Oversight and* | (Admitted *Pro Hac Vice*) |
| *Management Board and as representative* | 1625 Eye Street, NW |
| *of the Commonwealth* | Washington, DC 20006 |
| | Tel: (202) 383-5300 |
| | Fax: (202) 383-5414 |
| */s/ Hermann D. Bauer* | |
| Hermann D. Bauer (USDC No. 215205) | Elizabeth L. McKeen |
| **O'NEILL & BORGES LLC** | (Admitted *Pro Hac Vice*) |
| 250 Muñoz Rivera Ave., Suite 800 | 610 Newport Center Drive |
| San Juan, PR 00918-1813 | 17th Floor |
| Tel:  (787) 764-8181 | Newport Beach, California 92660 |
| Fax:  (787) 753-8944 | Tel: (949) 823-6900 |
| *Co-Attorneys for the Financial Oversight* | Fax: (949) 823-6994 |
| *and Management Board and as* | |
| *representative of the Commonwealth* | *Attorneys for the Puerto Rico Fiscal* |
| | *Agency and Financial Advisory Authority* |
| | |
| | */s/ Andrés W. López* |
| | Andrés W. López (USDC No. 215311) |
| | **THE LAW OFFICES OF ANDRÉS W.** |
| | **LÓPEZ, P.S.C.** |
| | 902 Fernández Juncos Ave. |

11

San Juan, PR 00907
Tel: (787) 294-9508
Fax: (787) 294-9519

*Co-Attorney for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*

12