# Exhibit D

**Mondell Declaration**

**Hearing Date: February 7, 2018 at 9:30 a.m. (Atlantic Standard Time)**
**Objection Deadline: February 1, 2018 at 5:00 p.m. (Eastern Standard Time)**

### UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Court Filing Relates Only to PREPA and Shall Only be Filed in Case No. 17-BK-4780 (LTS) and Main Case 17-BK-3283 (LTS)**

---------------------------------------------------------------x

### DECLARATION OF DUSTIN MONDELL IN SUPPORT OF URGENT JOINT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING, (B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

Pursuant to 28 U.S.C. § 1746, I, Dustin Mondell, hereby declare as follows under penalty of perjury under the laws of the United States of America:

1. I am a Director at Rothschild Inc. ("Rothschild"), the financial advisor to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") as fiscal agent for the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"). Rothschild is a leading international investment banking and financial advisory firm engaged in, among other things, reorganizations, restructurings, financings, spinoffs, workouts, exchange offers, mergers, divestitures and management-led buyouts. I have approximately 18 years of experience advising large government entities, companies, creditors, and other stakeholders regarding complex financial challenges in a variety of industries. I also earned an A.B. with High Honors in Economics from the University of Chicago.

2. I submit this declaration (the "Declaration") in support of the *Urgent Joint Motion of the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final Orders (A) Authorizing Postpetition Secured Financing, (B) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* (the "Urgent Motion")[2] filed jointly by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] and AAFAF, as the entity authorized to act on behalf of PREPA under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority,* Act 2-

---

[2] Defined terms used but not defined in this Declaration shall have the meanings given to them in the Urgent Motion.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

2017. I have reviewed and am familiar with the facts and circumstances as set forth in the Urgent Motion and the relief sought therein.

3. Except as otherwise indicated, all facts and opinions set forth in this Declaration are based upon: (i) my personal knowledge; (ii) my review of relevant documents provided to me, including documents provided by AAFAF and the Debtor and their respective professionals and employees; and (iii) my views, based upon my experience and knowledge of the Debtor and its financial condition.

## PREPA'S NEED FOR FINANCING

4. As described in greater detail in the Declaration of Todd W. Filsinger in support of the Urgent Motion (the "Filsinger Declaration"), PREPA is facing an imminent liquidity crisis.

5. To address this liquidity crisis and avoid disrupting electric services to the people of Puerto Rico, PREPA is seeking approval for financing in the form of a revolving credit facility (the "Facility") to be provided by the Commonwealth of Puerto Rico ("Puerto Rico" or the "Government of Puerto Rico" and, in its capacity as lender, the "Lender") to PREPA. As set forth in the Urgent Motion, if approved, the Facility would provide PREPA with immediate access to revolving loans in the aggregate of up to $550 million at any one time outstanding after entry of an interim order approving the Facility (which commitment can be increased by increments of $250 million at the discretion of the Lender and the Oversight Board, and may be increased to up to $1.3 billion after entry of a final order approving the Facility, subject to the Lender's discretion, with necessary governmental action, and with the consent of the Oversight Board for each incremental increase).[4]

---

[4] The specific terms of the Facility are provided in the Urgent Motion.

6. PREPA needs the Facility to continue to operate without interruption so as to generate the maximum amount of revenue. Without an additional source of liquidity, it is my understanding that PREPA will likely shut down its operations in whole or in part in the near-term. It is my belief that the impact of any shutdown would be devastating to Puerto Rico, which would once again see its residents living without power, businesses shuttering, and restoration and recovery efforts slowing. PREPA's creditors would also be damaged by a shutdown as the negative economic impact of such an event would jeopardize PREPA's continued operations, hamper the progress of restoration, and boost out-migration which would further reduce demand.

### OTHER FINANCING OPTIONS AND THE MARKETING PROCESS

7. Despite PREPA's publicly-disclosed liquidity crisis, no financing of the magnitude required is readily available and committed other than the attractive financing offered by Puerto Rico. Shortly after Hurricanes Irma and Maria, PREPA received an unsolicited, publicly announced offer for financing from a group of holders of its Power Revenue Bonds. That offer was for $1 billion of financing, but was tied to a roll-up of $1 billion in existing bonds into an additional $850 million of post-petition financing (which would have resulted in a senior credit facility of $1.85 billion, out of which $1 billion of cash would have been available for advancement to the Debtor). The offer carried a stated per annum interest rate of LIBOR plus 4.5% and a two-year maturity date. In addition, the interest rate would have increased to LIBOR plus 6.5% upon the one year anniversary of initial borrowing. The roll-up feature also provided investors in the loan facility with enhanced security provisions on a portion of their pre-petition claims. The proposal also required the appointment of a receiver and had the potential to limit the future transformation of the electric grid. For reasons that were publicly-disclosed at the time, the proposal therefore was turned down.

8. Following Hurricane Maria, PREPA and AAFAF have engaged the United States Department of the Treasury (the "Treasury Department") and the Federal Emergency Management Agency ("FEMA") in discussions to secure for PREPA loans from the federal government. On October 26, 2017, the *Additional Supplemental Appropriations for Disaster Relief Requirements Act of 2017* (the "Act") was signed into law, authorizing $36.5 billion of disaster relief funds for recovery efforts in the aftermath of Hurricanes Harvey, Irma, and Maria, including approximately $4.9 billion in loans under the community disaster loan ("CDL") program for Puerto Rico, the US Virgin Islands, and local governments of Florida and Texas. Included in the Act are provisions that permit borrowings under the CDL to be forgiven in the future.

9. For several months, AAFAF and PREPA have actively engaged in discussions with the Treasury Department and FEMA about PREPA's need for a CDL and the potential terms and structure of such a loan. Those discussions are ongoing, and no definitive terms have been reached. Moreover, the Treasury Department and FEMA have informed Puerto Rico that the federal government does not currently intend to issue a CDL directly to PREPA. Rather, any CDL would be advanced to Puerto Rico, and Puerto Rico in turn could lend certain of those funds to PREPA. Relatedly, the federal government announced its intention to establish a cash balance policy in connection with disbursement of any CDL funding that would require the balance of Puerto Rico's Treasury Single Account to drop below a certain threshold before Puerto Rico may access a CDL. Under the current circumstances, no CDL is guaranteed. Even if a CDL becomes available to Puerto Rico for it to make a subsequent loan to PREPA, the proceeds would not arrive quickly enough to provide PREPA the funding it urgently needs to address its current funding crisis.

5

10. In light of the delay and uncertainty surrounding the CDL process and the lack of other current viable proposals, PREPA negotiated the terms of the Facility with Puerto Rico as the Lender, with the consent of the Oversight Board. The Facility is the only source of funds currently available on the favorable terms and flexibility described below to provide PREPA with critical liquidity in the short term. The Facility carries zero percent interest for the first six months, may be prepaid by PREPA at any time and allows for, and in fact requires, PREPA to solicit alternative financing proposals and evaluate any such alternatives in good faith in consultation with the Oversight Board.

11. Beginning on January 21, 2018, professionals from Rothschild initiated a marketing effort to obtain alternative financing. As part of that process, Rothschild, with the assistance of advisors for PREPA and AAFAF, prepared marketing materials and assembled a data room populated with relevant diligence information. In consultation with the advisors to the Oversight Board, professionals from Rothschild have been in contact with ten potential funding providers, which consisted of four existing PREPA, Commonwealth, and COFINA bondholders and bondholder groups, and six third parties capable of providing financing of this magnitude.

12. To my knowledge, the contacted parties include all parties that had previously expressed to either Rothschild or the Oversight Board's financial advisor an interest in providing such financing to PREPA. To date, seven of these prospective lenders have signed non-disclosure agreements ("NDAs") (or are operating under existing NDAs) and have been provided access to the data room maintained by Rothschild containing relevant information on the current financial conditions of PREPA. Rothschild has requested interested parties to submit initial indications of interest by February 2, 2018.

13. Given the complexity and urgency of the situation, Rothschild does not expect to obtain a commitment for financing competitive to the Facility prior to the interim hearing on the Urgent Motion. However, the Debtor, through Rothschild, will continue the solicitation process until the final hearing in order to determine whether a superior financing proposal can be identified. Importantly, because the terms of the financing contemplated in the Urgent Motion include a zero percent interest rate for the first six months, no closing fees, and no prepayment penalty, the Debtor can refinance the Facility if desired (to the extent of available financing in the future), without PREPA having incurred costs on the Facility even following approval of the Urgent Motion.

### THE TERMS OF THE FACILITY ARE REASONABLE AND SHOULD BE APPROVED

14. In my view, the terms of the Facility are reasonable. As noted above, the Facility includes a zero percent interest rate for six months, has no commitment or other closing fees, and is prepayable at any time without penalty. The Facility avoids any cost to refinance in the future whether with proceeds of CDL borrowings or from another source. The Facility is currently the only financing available to PREPA to provide desperately needed funds and avert a catastrophic interruption or discontinuation of electric services to Puerto Rico. In light of PREPA's urgent liquidity needs as described in the Filsinger Declaration and the lack of immediately available alternatives (including CDLs, which are not currently available and, if available at some point, likely will require a loan to PREPA from Puerto Rico), PREPA has determined, after consulting with its advisors, that in its judgment and discretion the Facility represents the best interim financing presently available. Moreover, Puerto Rico has agreed that there will be no provisions in the loan documents that restrict the transformation of Puerto Rico's energy sector or the transfer of PREPA's assets.

15. Without access to the Facility, I believe PREPA would suffer immediate and irreparable harm. Based on the market response to date, PREPA has not been able to obtain committed financing on an unsecured basis pursuant to section 503(b)(1) of the Bankruptcy Code, applicable in the Title III Case pursuant to section 301(a) of PROMESA, or even on a superpriority basis under section 364(c)(1) of the Bankruptcy Code, on terms more favorable than those of the Facility.

16. In my view, the terms of the Facility are fair, reasonable, and appropriate under the circumstances of this case. Moreover, the interim financing will allow PREPA to continue its operations without interruption and prevent immediate damage to potential recoveries that may be available to its bondholders and other stakeholders.

*[Space is intentionally left blank.]*

8

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 26 day of January, 2018 at New York, NY.

*Dustin Mondell*

Dustin Mondell