# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY BRIEF OF AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION IN SUPPORT OF PRODUCTION AND USE OF FISCAL PLAN DEVELOPMENT MATERIALS**

---

[1] The Debtors in these Title III cases (collectively, the "Title III Cases"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

Pursuant to this Court's December 22, 2017 and January 19, 2018 Orders (Dkts. 2166 & 2269[2]), Movants[3] submit this reply brief in support of their request for an order compelling production, and allowing the use, of Fiscal Plan Development Materials.  *See* Dkts. 2154 at 3 (Joint Report of Movants and Respondents With Respect to Order Authorizing Rule 2004 Examination, or the "Joint Report").

## INTRODUCTION

There are two questions before the Court.  *First*, is whether Movants may use in litigation Fiscal Plan Development Materials relating to the Fiscal Plan certified on March 13, 2017 (the "Certified Fiscal Plan").  As Respondents say, they have already provided most of these materials to Movants by posting them to the data room.  The problem, however, is that these materials are subject to either a strict NDA or a mediation agreement that prohibit their use in litigation.  *Second*, is whether, with respect to the Fiscal Plan currently under development (the "2018 Fiscal Plan"), Respondents must produce (and permit the use of) the same kinds of Fiscal Plan Development Materials that they have *already* provided with respect to the Certified Fiscal Plan.  Respondents say no to both questions.  Our opening brief (Dkt. 2223) demonstrates that Respondents' position is not only at odds with their repeated proclamations of transparency, it is contrary to law as well.

Instead of addressing these issues, Respondents' opposition (the "Opposition" or "Opp.") (Dkt. 2274) takes as its premise that the twice-litigated question of whether a Rule 2004

---

[2]  Unless otherwise specified, docket numbers shall refer to filings on the docket of *In re Financial Oversight and Management Board of Puerto Rico as Representative of the Commonwealth of Puerto Rico*, No. 17-3283. Capitalized terms shall have the meaning assigned to them in the Urgent Renewed Joint Motion By The Ad Hoc Group Of General Obligation Bondholders, Ambac Assurance Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., The Municipal Fund Group, And National Public Finance Guarantee Corporation For Order Authorizing Rule 2004 Examination (Dkt. 1870).

[3]  Members of Movant Ad Hoc Group of General Obligation Bondholders file this Brief exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

examination is appropriate in the first place *has never been decided*. The Opposition accordingly resurrects arguments, virtually all of which the Court has previously heard (sometimes multiple times), as though they have some special force with respect to Movants' Requests 8, 16, and 17. But the Court has already rejected Respondents' points because they are wrong. The Court should order Respondents to produce all responsive materials pursuant to the Rule 2004 Order, so that they can actually be used in the litigation.

I. **The Court Should Order Production Of Fiscal Plan Development Materials And Allow Their Use In The Litigation**

The primary issue before the Court is whether Movants are entitled to *use* the Fiscal Plan Development Materials in connection with these Title III proceedings. See Dec. 14, 2017 Tr. at 50, 51 (describing "usage" issue as the outstanding dispute). Respondents ignore this issue, insisting that it is enough that their disclosures "have enabled *Movants* to understand the 'liabilities and financial condition of the debtor.'" Opp. 4 (emphasis added). But, as explained in our opening brief, it is not enough for Movants to have access to this material if they cannot use it in connection with these Title III proceedings. That is because neither the Court nor non-moving creditors—none of whom currently has access to the materials produced—will otherwise be able to assess the validity of the assumptions and inputs that were used in developing the fiscal plan.

Returning to an example provided in our opening brief (which Respondents do not address, let alone refute), health care expenses are a major component of both the Certified and 2018 Fiscal Plans. Projected health care expenditures are driven by three main inputs: (i) how many people are being provided health care; (ii) the cost-per-person of that health care; and (iii) the rate of growth of health care costs. If Respondents continue to refuse to release this key information from the constraints of the NDA, creditors entitled to vote on the plan of adjustment

2

will not have sufficient information to make an informed decision to accept or reject any plan that is based upon these numbers. And the Court will not have the information necessary to determine whether the plan is confirmable.

Also at issue is whether Respondents must *produce* all the models, inputs, formulae, and assumptions with respect to the 2018 Fiscal Plan.[4] Dkt. 2223 at 3-5 (describing unproduced materials). These materials have already been provided with respect to the Certified Fiscal Plan (though they have been posted to the data room subject to the aforementioned restrictions). The weekend before this reply brief was due, Respondents posted to the data room (subject to the mediation agreement restrictions) a model supporting the 2018 Fiscal Plan. Movants are still evaluating the information provided and are not in a position to say that this model provides all of the inputs, formulae and assumptions underlying the 2018 Fiscal Plan. Notably, however, Respondents have not committed to provide complete information with respect to the 2018 Fiscal Plan. Because these materials have already been provided with respect to the Certified Fiscal Plan, Respondents cannot credibly argue that it would be unduly burdensome to produce the same documents with respect to the 2018 Fiscal Plan.[5] All of these materials should be produced forthwith.

---

[4] With respect to the *Certified* Fiscal Plan, Respondents have, with limited exceptions, posted to the data room materials sufficient to respond to the three outstanding document requests (8, 16 & 17).

[5] Movants also seek AAFAF and Board communications related to the Certified and 2018 Fiscal Plans. Respondents oppose this on the ground that such communications are not expressly identified in the document requests. *See* Opp. 1-2, 4-5. That is not so, for two reasons. First, the instructions for the Requests unreservedly stated that "You are required to answer these Document Requests *drawing upon all materials*…. You must provide *all information*…." Dkt. 1870 at 20. The Requests therefore necessarily included responsive communications, without the need to tediously list every type of material potentially responsive to each request. Second, the parties' Joint Report (which Respondents, of course, signed) identifies as an "area of disagreement" the production of "communications between and among Respondents and Respondents' respective officials, employees, consultants and representatives." Joint Report ¶ I.b at 3. To the extent Respondents assert it is burdensome to collect and review these communications, Movants are willing to discuss a reasonable protocol for search terms and custodians to minimize any asserted burden on Respondents.

## II. Respondents' Objections Are A Rehash Of Arguments They Have Previously Made, Unsuccessfully, In Attempting To Avoid All Discovery

In their Opposition, Respondents advance a number of objections, all of which they have previously asserted as grounds to avoid discovery altogether. The Court has rejected each and every one of them, and they fare no better here than the last time (or times) around.

*First*, Respondents assert, as they do in response to each discovery request (*see, e.g.*, Dkt. 1345 at 2; Dkt. 1928 at 9), that granting Movant's request would impose a staggering burden. They say that Movants are seeking "every conceivable document" (Opp. 1); "virtually limitless discovery" (Opp. 3); and an "unbridled production" (Opp. 7), all of which will "cast a pall" over the Title III process if the Court allows it (Opp. 2, 9). But sheer repetition and adjectives do not make this true. As explained above, the present dispute is about (a) Movants' right to *use* certain documents that Respondents have already produced; and (b) Movants' entitlement to obtain and use the same documents underlying the 2018 Fiscal Plan that Respondents have produced with respect to the Certified Fiscal Plan. There is nothing "unbridled" about these requests.

*Second*, Respondents ask the Court to reconsider their argument that Section 106(e) of PROMESA, which insulates from judicial review the Board's decision to *certify* a fiscal plan, operates as a bar to *discovery* into a fiscal plan. Opp. 4. This makes sense, they argue, because the fiscal plan is a mere "blueprint for further fiscal and economic actions by the Commonwealth. . . . Turning it inside out for litigation purposes, as Movants seek to do, would not advance any legitimate goal." Opp. 5. This Court has already rejected that very argument. *See* Nov. 15, 2017 Tr. at 110-11 (rejecting Respondents' argument that all information regarding the Fiscal Plan is immune from discovery).[6]

---

[6] Respondents also claim that most of the Fiscal Plan Development Materials will be "completely irrelevant to the eventual plan of adjustment" (Opp. 6), but this argument is also contrary to the Court's conclusions. *See* Nov.

4

Relatedly, Respondents make a second run at the argument that there is no basis for Rule 2004 discovery into the fiscal plan, because the fiscal plan "does not address treatment of prepetition claims." Opp. 6. Instead, they say, the treatment of prepetition claims "will be the subject of a confirmation hearing and focused discovery." *Id.*; *see also* Dec. 14, 2017 Tr. at 27-28 (AAFAF's counsel making the same argument). Again, the Court has already rejected that same argument. *See* Dec. 14, 2017 Tr. at 49 (allowing 2004 examination over objection that it is premature); *see also* Nov. 15, 2017 Tr. at 110 ("It will be nothing less than a major sin if this gets to the end and then we start doing discovery. . . . [T]hat is just not going to happen.").

*Third*, Respondents object that there is no need for the Court to *order* that Movants may use the Fiscal Plan Development Materials in litigation, because the parties "are in discussions" on this topic. Opp. 4. Respondents made the very same "no need to trouble the court" argument in resisting an order authorizing a Rule 2004 examination (*see* Dkt. 1928 at 8-10), and the Court rejected it: "While the Court recognizes Respondents' efforts to produce information voluntarily, there is a need in this Title III proceeding . . . for formal and controlled discovery related to the Commonwealth of Puerto Rico's financial condition." Dec. 15, 2017 Order (Dkt. 2033) at 2. The same logic holds here.

*Fourth*, Respondents say that our theory of relevance fails, because we cite the wrong confirmation standard. As Movants have explained, a component of the "fair and equitable" test holds that for any plan of adjustment to be confirmed over the objection of a dissenting class of creditors, it must provide creditors with "the maximum that the [debtor] could reasonably pay" under the circumstances. *Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942); *see also* 6 *Collier on Bankruptcy* ¶ 943.03[1][f][i]. At the same time, PROMESA requires that a

---

15, 2017 Tr. at 110 (stating that in preparing revised fiscal plans, Respondents are in fact gathering information that will need to be provided later in relation to the plan of adjustment, so disclosure should happen now).

5

plan of adjustment must be "consistent with the applicable Fiscal Plan." PROMESA § 314(b)(7). Accordingly, discovery regarding the basis for the fiscal plan is appropriate.

Respondents contend that dissenting creditors are *not* entitled to the maximum a debtor could pay. Instead, citing the "best interests" test of Section 314(b)(6) of PROMESA, they say that the Court need only "'consider' what creditors would receive under non-bankruptcy law." Opp. 6. That is a patent misreading of PROMESA. Section 314(b) of PROMESA identifies *multiple* conditions that a plan of adjustment must satisfy to be confirmed. True, one such condition is the "best interests" test articulated in Section 314(b)(6). But *another* condition is that "the plan complies with the provisions of the [Bankruptcy] Code, made applicable to a [Title III proceeding] by section 301 of this Act." PROMESA § 314(b)(1). Section 301, in turn, incorporates Section 1129(b)(1) of the Bankruptcy Code into Title III proceedings. And Section 1129(b)(1) requires that a plan may be confirmed over the dissent of a class of creditors only if it is "fair and equitable"—which means it must provide creditors with "the maximum that the [debtor] could reasonably pay" under the circumstances. Thus, to be confirmed over a class of dissenting creditors, a plan of adjustment must be in the "best interests" of creditors *and* "fair and equitable." Respondents cite no basis to read the latter requirement out of the statute.

*Finally*, Respondents again try to resist *all* discovery on the ground that the requested materials are protected by the deliberative process privilege. To make this argument, they mischaracterize Movants' Requests as primarily related to communications. Opp. 8. But, as explained above, that is only a small part of the issue before the Court: the main focus is the *use* of materials already provided, and the provision of live models, formulae and inputs with respect to the 2018 Fiscal Plan. And Respondents concede that "Fiscal Plans, raw data, models,

6

underlying data and assumptions, formulas, and inputs . . . are not themselves subject to the privilege." *Id*.

There is no reason why *any* Fiscal Plan Development Materials—whether communications or otherwise—should be shielded from scrutiny by a claim of privilege.[7] Respondents complain that production of these materials would "cast a pall over the" process if officials know that their work "will be subject to public scrutiny." Opp. 9. That is nonsensical—why *shouldn't* the public scrutinize these materials? How else can creditors and the Court, evaluate their options?

In any event, the deliberative process privilege is neither absolute nor as broad as Respondents have asserted. Respondents should be required to provide a categorical log of any other materials withheld based upon a claim of privilege. *See* Joint Rpt. at 3, 4. Respondents also should be ordered to identify in their log the number of documents being withheld in each category. Respondents complain that they should not be required to "continuous[ly] log[]" such materials (Opp. 10), but just as with the search for and production of these materials in the first instance, Movants are willing to meet-and-confer with Respondents to devise a reasonable protocol. Respondents' protests are not a basis for a wholesale denial of discovery into (and logging of) communications.

## CONCLUSION

For the foregoing reasons, Movants respectfully request the Court to order that Respondents complete production of all Fiscal Plan Development Materials within two weeks.

---

[7] Movants note that Respondents appear finally to have dropped their groundless objection that Fiscal Plan Development Materials include "confidential and proprietary information." *See, e.g.*, Dkt. 1928 at 23.

7

| | |
|---|---|
| Dated: January 29, 2018<br>San Juan, Puerto Rico | Respectfully submitted.<br><br>**JIMÉNEZ, GRAFFAM & LAUSELL**<br><br>By: /s/ J. Ramón Rivera Morales<br><br>J. Ramón Rivera Morales<br>    (USDC-PR No. 200701)<br>Andrés F. Picó Ramírez<br>    (USDC-PR No. 302114)<br>PO Box 366104<br>San Juan, PR 00936-6104<br>Telephone:  (787) 767-1030<br>Email:  rrivera@jgl.com<br>            apico@jgl.com |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**<br><br>By: /s/ Andrew N. Rosenberg<br>Andrew N. Rosenberg**<br>Kyle J. Kimpler**<br>Karen R. Zeituni**<br>1285 Avenue of the Americas<br>New York, NY  10019<br>Telephone:  (212) 373-3000<br>Email:  arosenberg@paulweiss.com<br>            kkimpler@paulweiss.com<br>            kzeituni@paulweiss.com | **ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**<br><br>By: /s/ Mark T. Stancil<br>Lawrence S. Robbins**<br>Mark T. Stancil**<br>Gary A. Orseck**<br>Kathryn S. Zecca**<br>Ariel N. Lavinbuk**<br>Donald Burke**<br>1801 K Street, NW<br>Washington, D.C.  20006<br>Telephone: (202) 775-4500<br>Email:  lrobbins@robbinsrussell.com<br>            mstancil@robbinsrussell.com<br>            gorseck@robbinsrussell.com<br>            kzecca@robbinsrussell.com<br>            alavinbuk@robbinsrussell.com<br>            dburke@robbinsrussell.com |

*\*\* admitted pro hac vice*

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

8

      **FERRAIUOLI LLC**
         By: /s/ *Roberto Cámara-Fuertes*
         Roberto Cámara-Fuertes (USDC-PR No. 219002)
         Sonia Colón (USDC-PR No. 213809)
         221 Ponce de León Avenue, 5th Floor
         San Juan, PR 00917
         Telephone: (787) 766-7000
         Facsimile:  (787) 766-7001
         Email:  rcamara@ferraiuoli.com
             scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**
         By: /s/ *Dennis F. Dunne*
         Dennis F. Dunne
         Andrew M. Leblanc
         Atara Miller
         Grant R. Mainland
         (admitted *pro hac vice*)
         28 Liberty Street
         New York, NY 10005
         Telephone: (212) 530-5770
         Facsimile:  (212) 822-5770
         Email: ddunne@milbank.com
             aleblanc@milbank.com
             amiller@milbank.com
             gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

| | |
|---|---|
| **CASELLAS ALCOVER & BURGOS P.S.C.** | **CADWALADER, WICKERSHAM & TAFT LLP** |
| By: /s/ *Heriberto Burgos Pérez* <br> Heriberto Burgos Pérez <br> USDC-PR 204809 <br> Ricardo F. Casellas-Sánchez <br> USDC-PR 203114 <br> Diana Pérez-Seda <br> USDC-PR 232014 <br> P.O. Box 364924 <br> San Juan, PR 00936-4924 <br> Telephone: (787) 756-1400 <br> Facsimile: (787) 756-1401 <br> Email: hburgos@cabprlaw.com <br> rcasellas@cabprlaw.com <br> dperez@cabprlaw.com <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | By: /s/ *Howard R. Hawkins* <br> Howard R. Hawkins, Jr. * <br> Mark C. Ellenberg* <br> Ellen Halstead* <br> Thomas J. Curtin* <br> Casey J. Servais* <br> 200 Liberty Street <br> New York, NY 10281 <br> Telephone: (212) 504-6000 <br> Facsimile: (212) 406-6666 <br> Email: howard.hawkins@cwt.com <br> mark.ellenberg@cwt.com <br> ellen.halstead@cwt.com <br> thomas.curtin@cwt.com <br> casey.servais@cwt.com <br><br> * Admitted pro hac vice <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

| | |
|---|---|
| **TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.** | **KRAMER LEVIN NAFTALIS & FRANKEL LLP** |
| *s/ Manuel Fernandez-Bared*<br>MANUEL FERNÁNDEZ-BARED<br>USDC-PR No. 204,204<br>E-mail: mfb@tcmrslaw.com | *s/ Gregory A. Horowitz*<br>THOMAS MOERS MAYER*<br>AMY CATON*<br>GREGORY A. HOROWITZ*<br>DOUGLAS BUCKLEY* |
| *s/ Linette Figueroa-Torres*<br>LINETTE FIGUEROA-TORRES<br>USDC-PR No. 227,104<br>E-mail: lft@tcmrslaw.com | 1177 Avenue of the Americas<br>New York, New York 10036<br>Tel.: (212) 715-9100<br>Fax: (212) 715-8000<br>Email: tmayer@kramerlevin.com |
| *s/ Jane Patricia Van Kirk*<br>JANE PATRICIA VAN KIRK<br>USDC-PR No. 220,510<br>E-mail: jvankirk@tcmrslaw.com | acaton@kramerlevin.com<br>ghorowitz@kramerlevin.com<br>dbuckley@kramerlevin.com<br>*(admitted *pro hac vice*) |
| P.O. Box 195383<br>San Juan, PR 00919-5383<br>Tel.: (787) 751-8999<br>Fax: (787) 763-7760 | *Counsel to the Mutual Fund Group* |
| *Counsel to the Mutual Fund Group* | |

11

  /s/ Eric Pérez-Ochoa (USDC-PR No. 206314)
Eric Pérez-Ochoa (USDC-PR No. 206314)
Luis Oliver-Fraticelli (USDC-PR No. 209204)
Alexandra Casellas-Cabrera (USDC-PR. No. 301010)
Lourdes Arroyo-Portela (USDC-PR No. 226501)

**ADSUAR MUÑOZ GOYCO SEDA & PÉREZ-OCHOA, PSC, P.S.C.**
208 Ponce de León Avenue, Suite 1600
San Juan, Puerto Rico 00936
Telephone: (787) 756-9000
Facsimile: (787) 756-9010
Email: epo@amgprlaw.com
       loliver@amgprlaw.com
       acasellas@amgprlaw.com
       larroyo@amgprlaw.com

– and –

Marcia Goldstein
Jonathan Polkes
Gregory Silbert
Kelly DiBlasi
Gabriel A. Morgan
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153

*Counsel to National Public Finance Guarantee Corporation*