# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>      Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-04780-LTS<br><br>Court Filing Relates Only to PREPA and Shall Only be Filed In Case No. 17-BK-04780-LTS and Main Case 17-BK-3283-LTS |

**LIMITED OBJECTION BY AND RESERVATION OF RIGHTS OF ARC AMERICAN, INC. TO THE URGENT JOINT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING, (B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. I7-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. I7-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. I7-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation "COFINA") (Bankruptcy Case No. I7-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

TO THE HONORABLE LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE:

Arc American, Inc., by and through its undersigned attorneys, files this limited objection to and reservation of rights (the "**Objection**") regarding the *Urgent Joint Motion Of The Financial Oversight And Management Board For Puerto Rico And The Puerto Rico Fiscal Agency And Financial Advisory Authority For Entry Of Interim And Final Orders (A) Authorizing Postpetition Secured Financing, (B) Granting Priming Liens And Providing Superpriority Administrative Expense Claims, (C) Modifying The Automatic Stay, (D) Scheduling A Final Hearing, And (E) Granting Related Relief* [ECF No. 549] (the "**Motion**").[2] In support of the Objection, Arc also relies on the accompanying Declaration of Ben Wilson ("**Wilson Dec**."), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Arc American, Inc. ("**Arc**") is a family owned and operated company founded in 2012 and headquartered in Wakarusa, Indiana. (Wilson Dec. ¶3). As a union contractor, Arc specializes in the installation, maintenance, and restoration of all facets of overhead and underground electrical facilities. (Id.). Arc dispatched its emergency storm restoration resources to Puerto Rico, including crews and tools to the island, immediately following the destruction caused by Hurricane Maria. (Id. ¶4). Specifically, Arc's primary task in the restoration effort was the repair of transmission lines to the power grid. (Id.) Notwithstanding Arc's rapid and professional response, Arc remains unpaid in an amount close to $19 million for labor, materials and services furnished by Arc and costs incurred by Arc for the benefit of PREPA and the people of Puerto Rico in October and November 2017, after PREPA's bankruptcy filing. (Id. ¶5).

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion and the Wilson Dec.

2

2. If the Motion is approved in its current form, Arc may never be paid millions of dollars despite having conferred post-petition tangible benefits directly to PREPA, its bankruptcy estate and the people of Puerto Rico. Instead, Puerto Rico, as Lender, and the professionals for the Debtor, Oversight Committee and Creditors' Committee, likely will be the only administrative creditors that are paid, while bondholders may receive a minimal recovery and Arc is unlikely to recover anything on an administrative expense claim, in an amount close to $19 million, once allowed by the court. By then, there likely will be no money to pay the subcontractors who restored to operation significant channels of the power grid. The patent unfairness of preferring Puerto Rico and PREPA's professionals over those subcontractors like Arc, which already have extended credit and already have conveyed huge benefits to the Puerto Rican people, is compounded by the inescapable fact that Arc is being deprived of its rights under the Bankruptcy Code to share pro rata with all administrative expense claims after having already extended credit and done its work. Contractors going forward have the opportunity to get paid under the $1.3 Billion Facility or walk away. Arc, retroactively, is being stripped of that business decision. Approving the Motion in its current form will be devastating financially to Arc and similarly situated post-petition contractors and subcontractors with administrative expense claims for work and services that have already benefitted PREPA and the citizens of Puerto Rico (collectively, the "Post-Petition Subcontractors").[3]

3. Arc supports Court-authorization for PREPA to obtain post-petition financing to pay PREPA's operating expenses, but only on fair and transparent terms that do not severely prejudice the rights of Arc and all Post-Petition Subcontractors. Instead, Arc respectfully requests that the Court deny the Motion in its current form unless Debtor and the Oversight

---

[3] At this juncture, Arc is not pursuing any legal remedies against PREPA, but merely requests that this Court ensure that resources are available to cover administrative claims of Post-Petition Subcontractors once allowed by this Court, so that they are compensated for the critical life-saving work which they have performed on the power grid.

7294320.3

Board (defined below) modify the terms of the proposed Interim Financing Order (which accompanies the Motion) to carve-out of the $1.3 Billion Facility an amount sufficient to pay allowed administrative expense claims relating to post-petition repair and restoration services. In the alternative, Arc respectfully requests PREPA and the Oversight Board increase the $1.3 Billion Facility, as a prerequisite to Court approval, to cover allowed administrative expense claims relating to post-petition repair and restoration services.

## RELEVANT BACKGROUND

*General Background*

4. On July 2, 2017 (the "**Petition Date**"), the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") on behalf of the Commonwealth of Puerto Rico **("Puerto Rico")** filed a voluntary petition for relief for The Puerto Rico Electric Power Authority ("**PREPA**" or the "**Debtor**"), pursuant to section 304(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("**PROMESA**"), commencing a case under title III thereof (the "**Title III Case**"). The Motion is filed jointly by the Oversight Board on behalf of Puerto Rico, as Lender, and the Puerto Rico Fiscal Agency and Financial Authority **("AAFAF")** on behalf of PREPA, as Borrower.

*Arc's Post-Petition Work and Services for PREPA Remains Unpaid.*

5. After the Petition Date, and immediately following the devastation of Hurricanes Irma and Maria, Arc was one of the first contractors to arrive in Puerto Rico to perform critical work in stabilizing the power grid, repairing damaged utilities, and improving infrastructure. (Wilson Dec. ¶6).

6. Specifically, the post-petition work and services that Arc performed for the benefit of PREPA and the people of Puerto Rico during the months of October and November 2017, in very challenging terrain, included, among other things: the rebuilding of the

transmission and distribution lines that were destroyed by the hurricanes and which provide power to the citizens of Puerto Rico. Arc was among the largest contributors to the restoration of the transmission lines, which is essential to the power grid. (Id. ¶7).

7. Arc performed its post-petition work from October 3, 2017 through November 30, 2017 pursuant to a written subcontract executed by and between Arc and Whitefish Energy Holdings, LLC ("**Whitefish**") on or about September 30, 2017 (the "**Subcontract**"). (Id. ¶8).

8. The Subcontract was executed in connection with an Emergency Master Service Agreement for PREPA's Electrical Grid Reconstruction following Hurricane Maria, executed between Whitefish, as Contractor, and PREPA, as Owner, on or about September 26, 2017 and amended on October 17, 2017 and October 27, 2017 (the "**Prime Contract**"). (Id. ¶9).

9. Subsequent to the notification of the cancellation of the Prime Contract, Arc, along with other subcontractors, was requested by PREPA to continue restoration efforts with assurance that the subcontractors would be compensated for all work performed. (Id. ¶10).

10. On December 2, 2017, Arc entered into a subcontract with Fluor Enterprises, Inc. to continue to perform restoration hurricane work for the benefit of PREPA, which work is ongoing. (Id. ¶11).

***PREPA's $1.3 Billion Facility from Puerto Rico.***

11. The Motion seeks Court authorization for PREPA's borrowing of a $1.3 Billion Facility from Puerto Rico, as Lender. The material terms of the Credit Agreement provide, in relevant part, that: "All obligations under the Facility shall constitute a superpriority administrative claim in the Title III Case pursuant to 11 U.S.C. § 364(c)(1)… subject only to a carve-out for professional fees…" (Motion page 3).

12. The proposed Interim Financing Order accompanying the Motion [ECF Doc. 549-1] defines "Carve Out" as, among other things, "allowed unpaid fees, costs, and expenses

5

incurred by persons or firms retained by the Debtor, Oversight Board, and Creditors' Committee." (See proposed Order, ¶12). There is no cap for the Carve Out of professional fees, and, consequently, it would appear to cover both professional fees <u>already</u> <u>incurred</u> and those to be incurred prospectively.

13. Absent from the definition of "Carve Out" is allowed unpaid fees, costs, and expenses incurred by Post-Petition Subcontractors (such as Arc) for post-petition labor, materials and services <u>already</u> <u>furnished</u> <u>for</u> <u>the</u> <u>benefit</u> <u>of</u> <u>PREPA</u> and for the people of Puerto Rico.

14. Paragraph 7 of the proposed Interim Financing Order provides that the Lender's Superpriority Claim has "priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses,…" The proposed Order further provides that the Lender's "Superpriority Claim shall be subject to and subordinate in priority of payment only to the Carve Out." (<u>See</u>, proposed Order, ¶7).

15. The Credit Agreement distinguishes between "Eligible Uses" and "Ineligible Uses" of the proceeds of the Loans available to fund disbursements consistent with PREPA's proposed initial 13-week cash-flow budget commencing on and after the week of December 22, 2017 (the "**13-Week Budget**"). (<u>See</u>, Motion, pages 3-4, Ex. E).

16. The Eligible Uses of the proceeds of the Loans expressly <u>excludes</u> "capital expenditure or infrastructure improvements", precisely the improvements rendered post-petition by the Post-Petition Subcontractors, including Arc. (<u>See</u>, Motion, pages 3).

17. Similarly, "[u]nless otherwise specifically consented to in writing by the Lender and the Oversight Board", the Ineligible Uses of the proceeds of the Loans encompass "capital improvements, repair or restoration of damaged public facilities." (Id.). No criteria are

identified to govern which Ineligible Uses may be paid and whether disclosure of the payment of Ineligible Uses will be required.

18.     The 13-Week Budget does not identify or propose funding of disbursements for unpaid fees, costs, and expenses incurred by the Post-Petition Subcontractors (including Arc) for post-petition labor, materials and services furnished for the benefit of PREPA and Puerto Rico before the week of December 22, 2017. (See, Motion, Ex. E).

19.     The proposed Interim Financing Order and 13-Week Budget process foreclose any reasonable possibility of Arc ever receiving payment on any future allowed administrative expense claim against PREPA.

## LIMITED OBJECTION

### I.  Arc is an Unpaid Post-Petition Subcontractor and Thus Administrative Expense Creditor of PREPA.

20.     Section 503(b)(1)(A) of Title 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**") allows, as administrative expenses, "the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A). The purpose of this provision is to provide an incentive to creditors and others to do business with an insolvent entity. 4 Lawrence P. King, et al., Collier on Bankruptcy ¶ 503.06 [2], at 503–24 (rev. 15th ed.1997). To qualify as an administrative expense under section 503(b)(1)(A), the expense (1) must arise out of a postpetition transaction between the debtor-in-possession and the creditor and (2) relate to consideration both supplied to and beneficial to the postpetition estate's operation of its business. In re New York Trap Rock Corp., 137 B.R. 568, 572 (Bankr.S.D.N.Y.1992). An allowed administrative expense claim is afforded priority of payment under Section 507(a)(2) of the Bankruptcy Code.

21.     In determining whether a right to payment qualifies as an administrative expense under sections 503(b) and 507(a)(2) of the Bankruptcy Code, when the claim is incurred is a threshold issue that a court must resolve before reaching whether "the consideration supporting

7

the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir.1986)); see also In re Keene Corp., 208 B.R. 112, 115 (Bankr.S.D.N.Y.1997). If the claim accrued pre-petition, the expense is not administrative and a court need not answer the latter question. See, e.g., Kling Realty Co. v. Texaco, Inc. (In re Texaco Inc.), 2011 WL 4526538, at *6 (S.D.N.Y. Sept. 28, 2011); In re Episode USA, Inc., 202 B.R. 691, 696 (Bankr.S.D.N.Y.1996).

22. Here, there is no legitimate dispute that Arc's claim, once allowed, will be deemed to have been incurred post-petition. The Prime Contract was entered into on or about September 26, 2017, post-petition and post Hurricane Maria. Arc's subcontract was negotiated and executed post-petition and post Hurricane Maria. Arc arrived in Puerto Rico after the Petition Date and after Hurricanes Maria and Irma destroyed the infrastructure that Arc then spent over $19 million repairing and restoring the power grid for the months of October and November 2017. Arc's Subcontract work was completed before the Prime Contract was terminated, effective November 30, 2017. For the same reasons, it cannot legitimately be disputed that Arc's work and expertise were supplied to and beneficial to PREPA, its bankruptcy estate and Puerto Rico.

23. Furthermore, notwithstanding the absence of a direct contract by and between Arc and PREPA, (i) Arc's services were rendered pursuant to a post-petition transaction (the Prime Contract with PREPA) and, fundamentally, (ii) Arc has a direct claim against PREPA and a direct right to payment from PREPA under Puerto Rican law for monies owed for the labor and materials Arc furnished in connection with the Prime Contract. See, Article 1489 of the Puerto Rico Civil Code, 31 L.P.R.A. § 4130, which provides:

> Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought.

Id.

24. In this case, there are moneys due and payable to Arc by Whitefish in a sum close to $19 million for work performed by Arc for PREPA's benefit. Article 1489 of the Puerto Rico Civil Code gives Arc a direct action against PREPA, as owner, for the moneys owed, thus constituting a post-petition transaction by and between Arc and PREPA. Accordingly, Arc has available to it a direct claim against, and right to payment from, PREPA by statute. See, e.g., Federal Ins. Co. v. Constructora Maza, Inc., 500 F. Supp. 246, 1979 U.S. Dist. LEXIS 10139 (D.P.R. 1979) (materialmen and laborers have a privileged direct action against the owner of a project for services and materials owed to them by contractor); Antonio Carro, Inc. v. Jura Construction, Inc., 107 D.P.R. 808, 1978 PR Sup. LEXIS 589 (P.R. 1978) (provider of supplies for public work contractor may sue owner of work for whatever amounts are owed to him by main contractor, pursuant to this section up to amount owed to contractor by owner).

## II. PREPA's Proposed Interim Financing Order Severely Prejudices Arc and Similarly Situated Unpaid Post-Petition Subcontractors.

25. PREPA cannot meet the standards for approval of the $1.3 Billion Facility in its current form. A chapter 11 debtor may obtain post-petition financing on a superpriority basis only if, inter alia, it cannot obtain "unsecured credit allowable under section 503(b)(1)" of the Bankruptcy Code. See, 11 U.S.C. § 364(c). While approval of the proposed $1.3 Billion Facility is within the Court's discretion, the Court must balance the interests of PREPA, the Lender, all administrative expense creditors, and general unsecured creditors.

26. While Arc greatly appreciates the need to keep PREPA operating while efforts are undertaken to resolve the "Big Picture" dilemma of how to repair, restore to complete operation, and pay for the PREPA power grid, the Motion penalizes, whether intentional or not, the Post-

9

Petition Subcontractors which already have contributed to restoring power to Puerto Rico. Specifically, the Motion would retroactively and without due process strip Arc of administrative expense priority <u>after</u> Arc already performed post-petition work to benefit PREPA, effectively having denied Arc the option -- had it known earlier it would have no viable administrative claim -- to decline the work and the corresponding extension of $19 Million in credit. Striking the appropriate balance requires that a debtor seeking post-petition financing on a superpriority basis, and granting liens superior to encumbered assets, demonstrate that the proposed financing will permit it to formulate a successful plan for the benefit of the debtor's estate and the interests **of all its creditors**. See <u>In re Aqua Associates</u>, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991); <u>In re Ames Department Stores, Inc.</u>, 115 B.R. 34, 37- 40 (Bankr. S.D.N.Y. 1990). Here, PREPA cannot, solely for the sake of obtaining post-petition financing quickly and easily, abandon its fiduciary duty to its estate and all of its creditors. <u>Ames Department Stores</u>, 115 B.R. at 38. By defining "Carve Out" as encompassing only professional fees and excluding all other allowed administrative expenses, such as for post-petition work performed by Arc and other subcontractors, PREPA's proposed post-petition financing is unreasonable, likely will preclude confirmation of a successful plan, and is flatly not in the best interests of PREPA's estate, the administrative claims of Pre-Petition Subcontractors and unsecured creditors. Moreover, the proposed "Carve Out" denies Arc its reasonable expectation to share at least <u>pro rata</u> with professionals, and clearly denied Arc the opportunity to make an informed business decision to undertake this work, <u>after the fact</u>.

27. A court should approve a proposed debtor-in-possession facility only if such financing "is in the best interest of creditors generally." <u>In re Roblin Indus., Inc.</u>, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (citing <u>In re Texlon Corp</u>., 596 F.2d 1092, 1098-99 (2d Cir. 1979)). In addition, a court must review the terms of a debtor-in-possession facility to determine whether

7294320.3

those terms are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender. See, e.g., Aqua Assocs., 123 B.R. at 195-96 (holding that proposed financing should be beneficial and reasonable); Ames Dep't Stores, 115 B.R. at 40 (courts should focus on whether the terms of proposed DIP financing are reasonable); In re Tenney Village Co., Inc., 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (debtor-in-possession financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of a single party); see also In re Mid-State Raceway, Inc., 323 B.R. 40, 60 (Bankr. N.D.N.Y 2005) (post-petition financing must be necessary to preserve the assets of the estate).

28. Likewise, section 364 of the Bankruptcy Code is not a "secured lenders' act" allowing a single creditor to upset the level playing field contemplated by the Bankruptcy Code, See, Ames Department Stores, 115 B.R. at 37. Accordingly, courts reviewing proposed post-petition financing "focus[] their attention on proposed terms that would tilt the conduct of the bankruptcy case [or] prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the right of all creditors[.]" Id. at 37. The Motion, if granted, would effectively strip Arc of its rights under the Code after having already extended $19 Million in post-petition, unsecured credit.

29. Arc submits that the $1.3 Billion Facility fails to meet the standard applicable under the Bankruptcy Code to approve the Motion, absent modifications of certain provisions of Motion and the Interim Order that are prejudicial to the rights of the Post-Petition Subcontractors. Arc respectfully requests that the Court deny the Motion unless and until Debtor and Lender modify the terms of the proposed $1.3 Billion Facility and Interim Financing Order (which accompanies the Motion) to address the prejudice inflicted upon the Post-Petition Subcontractors. That remedy is uncomplicated, essential and fundamentally fair: (i) carve-out of

the $1.3 Billion Facility an amount sufficient to pay allowed administrative expense claims relating to post-petition repair and restoration services for PREPA's power grid; or (ii) in the alternative, increase the $1.3 Billion Facility to cover allowed administrative expense claims relating to post-petition repair and restoration services for PREPA's power grid.

30. It is fundamentally unfair to subordinate the claims of the Post-Petition Subcontractors, including Arc, to the claims of professionals and the repayment of the $1.3 Billion Facility, because those Post-Petition Subcontractors have already performed critical life-saving work for the benefit of the residents of Puerto Rico and, therefore, deserve equal status with all administrative expenses, particularly the professionals, a right under the Bankruptcy Code being stripped away <u>after</u> <u>Arc</u> <u>already</u> <u>performed</u>.

## **RESERVATION OF RIGHTS**

31. Arc reserves its rights, in its absolute and sole discretion, to amend, modify or supplement this Objection, including in response to the filing of any additional documents or exhibits by PREPA and/or any party-in-interest; and to raise additional arguments at or prior to the hearing on the Motion.

## **NOTICE**

32. This Objection has been provided to PREPA's counsel, the "Standard Parties", and to all persons and entities on the "Master Service List", as each term is defined in the *Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to These Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief and the annexed Notice, Case Management and Administrative Procedures* (ECF Doc. 249 in case no. 17 BK 3283). Arc submits that, under the circumstances, no further service or notice is required.

7294320.3

**NO PRIOR REQUEST**

33. No prior request for the relief sought by this Objection has been made to this or any other court.

**CONCLUSION**

WHEREFORE, for each of the reasons set forth above, Arc respectfully requests that the Court deny the Motion as set forth herein and grant such other or further relief as may be appropriate.

Dated: February 1, 2018

                                                  Respectfully submitted,

                                                  CHIESA SHAHINIAN & GIANTOMASI PC

                                                  By:    */s/ Robert E. Nies*
                                                           Robert E. Nies (*pro hac vice* applicant)
                                                           George A. Spadoro (*pro hac vice* applicant)
                                                           Marc R. Lepelstat (*pro hac vice* applicant)
                                                           Michael R. Caruso (*pro hac vice* applicant)
                                                           One Boland Drive
                                                          West Orange, New Jersey 07052
                                                          Telephone: (973) 530-2012
                                                          Facsimile: (973) 530-2022
                                                          Email: rnies@csglaw.com

                                          -and-

                                                ANTONETTI MONTALVO & RAMIREZ COLL

                                                By:    */s/Jose L. Ramirez-Coll*
                                                           Jose L. Ramirez-Coll
                                                          P.O. Box 13128
                                                          Telephone: (787) 977-0303
                                                          Facsimile: (787) 977-0323
                                                          Email: jramirez@amrclaw.com

*Attorneys for Arc American, Inc.*

7294320.3