# EXHIBIT A

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS    (1927-1950)
JOHN F. WHARTON    (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3158

WRITER'S DIRECT FACSIMILE

(212) 492-0158

WRITER'S DIRECT E-MAIL ADDRESS

arosenberg@paulweiss.com

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011 JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
EDWARD T ACKERMAN
JACOB A ADLERSTEIN
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
SCOTT A BARSHAY
PAUL M BASTA
JOHN F BAUGHMAN
J STEVEN BAUGHMAN
LYNN B BAYARD
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
DAVID M BERNICK
JOSEPH J BIAL
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
GEOFFREY R CHEPIGA
ELLEN N CHING
WILLIAM A CLAREMAN
LEWIS R CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
ROSS A FIELDSTON
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
ANDREW J FORMAN*
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
ROBERTO J GONZALEZ*
CATHERINE L GOODALL
ERIC GOODISON
CHARLES H GOOGE JR
ANDREW G GORDON
BRIAN S GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
BRIAN S HERMANN
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
AMRAN HUSSEIN
LORETTA A IPPOLITO
JAREN JANGHORBANI
BRIAN M JANSON
JEH C JOHNSON

MEREDITH J KANE
JONATHAN S KANTER
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
BRIAN KIM
KYLE J KIMPLER
DAVID K KLEIN
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
GREGORY F LAUFER
BRIAN C LAVIN
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
ALVARO MEMBRILLERA
MARK F MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
LINDSAY B PARKS
VALERIE E RADWANER
CARL L REISNER
LORIN L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
CHARLES F "RICK" RULE*
RAPHAEL M RUSSO
ELIZABETH M SACKSTEDER
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JOHN M SCOTT
DAVID R SICULAR
MOSES SILVERMAN
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C TARLOWE
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
RAMY J WAHBEH
LAWRENCE G WEE
THEODORE V WELLS JR
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JENNIFER H WU
BETTY YAP*
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
TAURIE M ZEITZER
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

January 16, 2018

**VIA E-MAIL**

Martin J. Bienenstock, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036

John J. Rapisardi, Esq.
O'Melveny & Myers LLP
Seven Times Square
New York, New York 10036

Matthew J. Troy, Esq.
Civil Division
United States Department of Justice
P. O. Box 875
Ben Franklin Station
Washington, D.C. 20044

Dear Counsel:

      I write on behalf of the Ad Hoc Group of General Obligation Bondholders (the "GO Group")[1] regarding contemplated borrowing by the Commonwealth of Puerto Rico (the "Commonwealth") under the federal government's Community Disaster Loan ("CDL") program.

---

[1] Members of the GO Group submit this letter exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Martin J. Bienenstock, Esq.
John J. Rapisardi, Esq.
Matthew J. Troy, Esq.
January 16, 2018                                                                                              2

        Based on public statements by the Governor and other Commonwealth officials, it appears the Commonwealth intends to borrow substantial amounts under the CDL program. It is our understanding, however, that the Commonwealth intends to distribute the proceeds of its CDL borrowing on to various instrumentalities, including the Puerto Rico Electric Power Authority ("PREPA") and the Puerto Rico Aqueduct and Sewer Authority ("PRASA"). To that end, the Governor recently proposed a "Law to Provide Emergency Assistance to the Puerto Rico Electric Power Authority and the Puerto Rico Aqueduct and Sewer Authority," a draft of which was released by Reorg Research on January 12, 2018 (the "Proposed Bill"). The Proposed Bill would authorize the Commonwealth to lend funds to PREPA and PRASA even before the Commonwealth receives CDL proceeds funds from the federal government, with the terms and conditions of these loans left to the discretion of the Commonwealth's Secretary of the Treasury. Indeed, the Proposed Bill specifically provides that the Commonwealth may lend to PREPA and PRASA "on a subordinated basis." Proposed Bill § 3.

        While we have no objection to PREPA and PRASA accessing liquidity from the federal government as necessary, the contemplated structure of this borrowing raises serious practical and legal concerns. As an initial matter, making the Commonwealth as the recipient of all CDL borrowing introduces unnecessary complexity that will result in the creation of new inter-debtor claims as the CDL proceeds are then lent, in turn, to Commonwealth instrumentalities.[2] As the Commonwealth's recent liquidity disclosures demonstrate, the Commonwealth is manifestly unable (or unwilling) to keep track of its own bank accounts. That challenge would only be magnified by the need for new inter-debtor accounting.

        Moreover, the federal government's claim against the Commonwealth on account of such CDL borrowing is unlikely to be allowable as an "actual, necessary cost[] [or] expense[] . . . of preserving the estate." 11 U.S.C. § 503(b)(1)(A). That standard does not allow the Commonwealth to borrow for the benefit of other, distinct debtor entities, such as PREPA or PRASA. See also id. § 503(c)(3) (providing that "transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case" are not allowable as administrative expenses). We reserve all rights to challenge the allowance of such a claim in due course.

---

[2]   In light of the introduction of the Proposed Bill, we understand that the Commonwealth intends to lend the CDL proceeds on to the recipient instrumentalities. To state the obvious, distributing CDL proceeds to recipient instrumentalities without obtaining a claim in return that reflects a true arms-length transaction would amount to a blatant fraudulent conveyance and would magnify each of the concerns set forth below.

Doc#: US1:11839055v1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Martin J. Bienenstock, Esq.
John J. Rapisardi, Esq.
Matthew J. Troy, Esq.
January 16, 2018                                                                                           3

Under the circumstances, the appropriate course would be for PREPA, PRASA, or other instrumentalities with liquidity needs, to borrow directly from the federal government pursuant to the CDL program. To date, Commonwealth officials have not advanced any substantial justification for adopting an anomalous structure in which the Commonwealth would borrow large sums of money but would not itself retain the proceeds of the borrowing. At most, the Governor has adverted to considerations of administrative convenience, suggesting that it is simply easier for the federal government to loan to a single obligor. But even that attempted justification is belied by the recent announcement that that the federal government will extend CDL funds directly to the Commonwealth's 78 distinct municipalities. To our knowledge, there is no obstacle to the federal government lending directly to the ultimate recipients of these funds—indeed, the federal government has done exactly that in the U.S. Virgin Islands, extending CDL monies directly to the Virgin Islands Water and Power Authority. Doing so with respect to Puerto Rico's instrumentalities would be effective, legally sound, and expeditious.[3]

If the Commonwealth nonetheless intends to continue down this path and on-loan the proceeds of its CDL borrowing to PREPA, PRASA, or other instrumentalities, it must ensure that the Commonwealth receives the strongest possible protections in these subsequent transactions. In particular, the Commonwealth must receive a secured claim that is senior to all other obligations of the recipient instrumentalities.[4] Moreover, any proceeds lent to instrumentalities must be repayable to the Commonwealth no later than the date on which they are due to the federal government and should carry a market rate of interest appropriate to the transaction. Were it otherwise, the Commonwealth would, in effect, be risking Commonwealth revenues to prop up instrumentalities that have their own creditors, solely for the sake of convenience or expediency.

These protections are essential to prevent the obvious potential for abuse of the Commonwealth's role as a conduit for federal CDL funding. They will also ensure that the Commonwealth's loans do not amount to fraudulent conveyances, in which the Commonwealth takes on substantial new obligations to the federal government but then immediately depletes itself of the assets it will need to satisfy those obligations by funneling them to instrumentalities without receiving reasonably equivalent value in

---

[3] Equally important, the Commonwealth and its instrumentalities should not create urgency through inaction. More particularly, instrumentalities with expected cash needs should, like any responsible debtor, actively seek financing in the market before claiming that government lending—particularly in the convoluted structure being considered—is the only available option.

[4] We recognize that obtaining a senior secured claim from PRASA and any other recipient instrumentalities that are not currently in Title III proceedings may require the Oversight Board to initiate Title III proceedings for such instrumentalities. That step is warranted, however, by the need to protect the Commonwealth's resources from unjustified—and unlawful—depletion.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Martin J. Bienenstock, Esq.
John J. Rapisardi, Esq.
Matthew J. Troy, Esq.
January 16, 2018        4

return. And these protections will prevent creditors of the Commonwealth's instrumentalities from receiving unjustified windfalls at the expense of the Commonwealth's own creditors, including the Commonwealth's constitutionally protected public debt and other Commonwealth stakeholders.

The Proposed Bill falls far short of these basic requirements. By authorizing the Commonwealth to lend on whatever terms the Commonwealth's Secretary of the Treasury deems appropriate, it fails to protect against unlawful depletion of the Commonwealth's resources. For the same reason, the Proposed Bill's specific authorization of subordinated lending is entirely inappropriate.

We therefore urge the Governor to withdraw the Proposed Bill from consideration by the Legislative Assembly. If the Proposed Bill is passed into law, we urge the Oversight Board to exercise its authority under Section 204(a) of PROMESA to block application of the law.

If the Commonwealth nonetheless extends financing to PREPA or PRASA on terms that do not appropriately and fully protect the Commonwealth and without seeking court approval, we urge the Oversight Board to immediately institute an action under Section 549(a)(2)(B) of the Bankruptcy Code to avoid such loans as unauthorized transactions. If the Oversight Board refuses to pursue such an avoidance action, the GO Group intends to request that the Court appoint a trustee to do so under Section 926(a) of the Bankruptcy Code. See PROMESA § 301(a) (incorporating Sections 549(a) and 926 of the Code); see also, *e.g.*, Clayton P. Gillette & David A. Skeel, Jr., *Governance Reform and the Judicial Role in Municipal Bankruptcy*, 125 Yale L.J. 1150, 1203 (2016) ("notwithstanding § 904, the court is still entitled to appoint a trustee to exercise avoidance powers if the municipality refuses to do so"); Richard M. Hynes & Steven D. Walt, *Pensions and Property Rights in Municipal Bankruptcy*, 33 Rev. Banking & Fin. L. 609, 624-27 (2014) (concluding that, in a Chapter 9 case, transfers are avoidable under Section 549 when they violate "the Code's fundamental policies").

We are hopeful that the Commonwealth and the federal government will adopt a CDL structure that will allow the Commonwealth's instrumentalities to receive any needed financing, without impairing the rights of the Commonwealth's existing creditors. However, the GO Group reserves all rights and remedies should the Commonwealth persist in its contemplated course. In addition to seeking the appointment of a trustee under Section 926, as discussed above, this may include, but is not limited to:

- Objecting to any attempt by the Commonwealth to obtain court approval for CDL borrowing or for subsequent transfers of CDL proceeds to Commonwealth instrumentalities. See PROMESA § 301(a) (incorporating Sections 364(c), 364(d), and 503 of the Code); *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Martin J. Bienenstock, Esq.
John J. Rapisardi, Esq.
Matthew J. Troy, Esq.
January 16, 2018     5

      (the incurrence of secured debt "should not be approved when it is sought for the primary benefit of a party other than the debtor"); Gillette & Skeel, 125 Yale L.J. at 1203 ("notwithstanding Section 904, the court is still . . . to determine whether the debtor is permitted to secure post-petition financing"); *In re FBI Dist. Corp.*, 330 F.3d 36, 41-42 (1st Cir. 2003) (under Section 503, a claim should not be allowed as an administrative expense unless it "benefitted the estate in some demonstrable way").

- Seeking relief from the automatic stay to enforce public debtholders' statutory lien and constitutional priority rights in the Commonwealth's available resources.

- Objecting to any proposed plan of adjustment based on the Commonwealth's unjustified depletion of its own assets. See *In re City of Stockton, Cal.*, 486 B.R. 194, 200 (Bankr. E.D. Cal. 2013).

      We would welcome the opportunity to discuss these issues with you and arrive at a solution that reasonably addresses the concerns and legal rights of all parties in interest.

                Very truly yours,

                Andrew N. Rosenberg

ANR

cc: Honorable Barbara J. Houser - Mediation Team Leader

Doc#: US1:11839055v1