**Hearing Date:** February 7, 2018 at 9:30 a.m. (AST)
**Objection Deadline:** February 1, 2018 at 6:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---

*In re*

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,[1]

    Debtors.

PROMESA
Title III

Case No. 17-BK-3283 (LTS)

(Jointly Administered)

---

*In re*

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA),

    Debtor.

PROMESA
Title III

Case No. 17-BK-04780 (LTS)

**Court Filing Relates Only to PREPA**

---

**RESPONSE AND LIMITED OBJECTION OF SCOTIABANK DE PUERTO RICO,
AS ADMINISTRATIVE AGENT, TO URGENT MOTION FOR ENTRY OF AN
<u>INTERIM ORDER AUTHORIZING POSTPETITION SECURED FINANCING</u>**

---

[1] The Debtors in these title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................................1

RELEVANT BACKGROUND..................................................................................................................2

RESPONSE AND LIMITED OBJECTION.................................................................................................4

    A.    PREPA should not be permitted to borrow $550 million prior to the final hearing................................................................................................................. 5

    B.    The Interim Financing Order should preserve PREPA's setoff rights. ........................ 7

    C.    The Interim Financing Order should require notice and a hearing prior to any material amendment to the Credit Documents.............................................................. 7

    D.    PREPA's creditors should receive information regardless of their participation in mediation. ........................................................................................................... 8

CONCLUSION.....................................................................................................................................8

Scotiabank de Puerto Rico ("Scotiabank" or the "Agent"), as administrative agent for lenders (the "Fuel Line Lenders") owed approximately $550 million by the Puerto Rico Electric Power Authority ("PREPA") under a fuel line facility (the "Fuel Line Facility"), respectfully submits this response and limited objection to the *Urgent Joint Motion of the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final Orders (A) Authorizing Postpetition Secured Financing, (B) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* (the "Financing Motion") [Dkt. No. 549].[2]

## INTRODUCTION

1. Scotiabank, as Agent for the Fuel Line Lenders, supports the Government of Puerto Rico and the Oversight Board in their effort to address PREPA's need for cash on an emergency basis. To state the obvious, the Fuel Line Lenders — whose claims, as summarized below, are *pre*-petition "Current Expenses" entitled to priority in payment — do not welcome the creation of *post*-petition "Current Expenses" that will be paid ahead of their preexisting priority claims. In the circumstances presented, however, at least a portion of the financing offered by the Government of Puerto Rico appears to be necessary. As of this filing, moreover, no superior alternative has been presented.

2. The Fuel Line Lenders, however, have several objections to the Interim Financing Order in its present form. First, the Oversight Board has requested authority to borrow up to $550 million *prior* to a final hearing. But, under the "Initial 13-Week Budget" submitted with

---

[2] Capitalized terms not defined have the same meanings as in the Financing Motion.

the Financing Motion, PREPA does not need that amount on an interim basis. Moreover, based on public information, PREPA is owed significant amounts by *Government* entities. Before PREPA is permitted to borrow funds that it does not immediately need, PREPA must either collect what it is owed by other Government entities or provide a compelling justification for failing to collect those amounts.

3. At this preliminary stage, therefore, PREPA should *not* be permitted to borrow $550 million. Rather, given the emergency nature of this application and the short notice, PREPA should be permitted to borrow only what it actually needs prior to the final hearing date.

4. In addition, as discussed below, the Interim Financing Order should be revised to make clear that: (a) any and all of PREPA's setoff rights under Commonwealth law are preserved; (b) any material modifications to the financing facility will require notice and a hearing; and (c) PREPA's obligation to provide information to creditors is not contingent on creditors' participation in mediation.

5. The Fuel Line Lenders are hopeful that the issues raised above can be resolved consensually before the February 7 hearing. But if they are not resolved consensually, the Fuel Line Lenders respectfully request that the Court condition the relief being sought on revisions to the Interim Financing Order that are responsive to the objections raised herein.

## RELEVANT BACKGROUND

6. On May 4, 2012, PREPA entered into a Credit Agreement with Scotiabank and other Fuel Line Lenders, pursuant to which the lenders agreed to advance up to $500 million to PREPA to purchase fuel and related supplies. The amount of the Scotiabank fuel line was subsequently increased to $550 million (the "Fuel Line Advances"). Under a separate fuel line facility, PREPA also owes approximately $150 million to funds advised by Solus Alternative Asset Management LP.

-2-

7. The Fuel Line Advances, like the proposed post-petition financing, were made against the backdrop of PREPA's bond financing under the Trust Agreement. Under the Trust Agreement, "Current Expenses" are to be paid on a priority basis ahead of the bonds.[3] PREPA's revenues are deposited into a "General Fund," which has to be "used *first* for the payment of the Current Expenses of the System."[4] Only after payment of "Current Expenses" are remaining amounts transferred into accounts controlled by the bond Trustee and "subject to a lien . . . in favor of the holders of the bonds."[5]

8. The Fuel Line Facility had a specific and narrow purpose: "to finance [PREPA's] working capital requirements, classified as Current Expenses (as defined in the Trust Agreement), including but not limited to fuel oil purchases."[6] As a result, and as PREPA expressly acknowledged, the Fuel Line Advances themselves "constitute Current Expenses under the Trust Agreement" and must be repaid on a priority basis.[7]

9. On January 27, 2018, the Oversight Board filed the Financing Motion and requested a hearing on an expedited basis. The motion seeks authority to borrow up to $1.3 billion from the Commonwealth of Puerto Rico following entry of the Final Financing Order.

---

[3] "Current Expenses" are defined in the Trust Agreement to include PREPA's "reasonable and necessary current expenses of maintaining, repairing and operating the System." Trust Agreement § 101, at 15. The Scotiabank Credit Agreement, the Trust Agreement and other relevant documents were publicly filed in connection with the *Motion of Scotiabank de Puerto Rico, as Administrative Agent, and Funds Advised by Solus Alternative Asset Management LP for Leave to Intervene* [Adv. Pro. No. 17-00232, Dkt. No. 24] and are appended to the Declaration of Angela K. Herring [Adv. Pro. No. 17-00232, Dkt. No. 26].

[4] Trust Agreement §§ 503, 505 (emphasis added).

[5] *Id.* §§ 506, 507(h).

[6] Scotiabank Credit Agreement § 5.08.

[7] *Id.* § 2.14; *accord id.* § 3.02 ("Advances will be treated as Current Expenses under the Trust Agreement.").

Financing Mot. at 1. Of this $1.3 billion, the Financing Motion requests that $550 million be available for borrowing prior to the final hearing. *Id.*

10. Like the Fuel Line Facility, the proposed Government financing to PREPA will be used to satisfy PREPA's necessary and ongoing operating expenses, including the purchase of fuel. *See id.* at 3. Accordingly, the borrowings under the new facility — like the Fuel Line Advances — "will be payable from the General Fund at the level of Current Expenses under the Trust Agreement." *Id.* The Government loans, however, will have priority over *all* pre-petition claims, "*including* those for Current Expenses." *Id*. (emphasis added). Since the post-petition Current Expense loans will have priority over pre-petition Current Expenses, including the Fuel Line Advances, the Fuel Line Lenders have a direct and substantial interest in the Financing Motion.

## RESPONSE AND LIMITED OBJECTION[8]

11. Based on the facts presented in the Financing Motion, including the Initial 13-Week Budget (Exhibit E), the Fuel Line Lenders do not object to the Government of Puerto Rico's effort to provide emergency financing to PREPA. The Fuel Line Lenders also do not object to the structure of the proposed facility: Although the "Current Expense" claims under the Fuel Line Facility will come behind the "Current Expense" claims under the new financing arrangement, the new financing preserves flexibility for PREPA insofar as it carries low interest rates and can be refinanced without any prepayment penalty. At this stage, moreover, no superior alternative has been presented.

---

[8] The Fuel Line Lenders reserve all rights to supplement this response in advance of the hearing and to object to the Final Financing Order. In addition, the Fuel Line Lenders do not adopt, and reserve all rights to contest, the factual assertions in the Wolfe Declaration, the Filsinger Declaration and the Mondell Declaration, including assertions relating to electricity prices and rates.

12. Nonetheless, the Interim Financing Order should not be entered in its current form. As discussed below, the Financing Motion does not provide a justification for borrowing up to $550 million on short notice in advance of a final hearing. The order should also be revised to address the other specific issues discussed below.

### A. PREPA should not be permitted to borrow $550 million prior to the final hearing.

13. Under Bankruptcy Rule 4001 and Local Rule 4001-2, the Court "may authorize the obtaining of credit" prior to a final hearing "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankr. R. 4001(c)(2); P.R. LBR 4001-2(d); *see also* 9 Collier on Bankruptcy ¶ 4001.07[3] (Rule 4001 "places a burden on the movant to show that no lesser means will prevent the harm that will ensue if the credit is not obtained").

14. In the Financing Motion, the Oversight Board has asked the Court to authorize borrowings, prior to a final hearing, of up to $550 million. But the Financing Motion does not demonstrate, or even claim, that PREPA needs that much financing on an interim basis. PREPA's Initial 13-Week Budget projects that the utility will need approximately $76.7 million to meet its obligations through March 2. *See* Financing Mot. Ex. E. That amount grows to $135.8 million by March 9 and $255 million by March 30. *Id.*

15. Rather than permitting PREPA to borrow more than it needs on extremely short notice, the Court should schedule a final hearing on the Financing Motion for a date in late February or early March and should limit the amounts to be borrowed before that hearing. If the final hearing is held on March 7, the next omnibus hearing date, PREPA should be permitted to borrow no more than $235 million before that hearing (such that PREPA would maintain at least a $100 million reserve at all relevant times).

-5-

16. Allowing PREPA to borrow more than it needs, prior to the final hearing, would be prejudicial to the Fuel Line Lenders and other creditors. As an initial matter, the Financing Motion was filed on extremely short notice. The shortened notice has limited the opportunity to conduct discovery and diligence and has also limited the opportunity to explore alternatives.

17. In addition, PREPA's public disclosures show that Government entities in Puerto Rico — including municipalities and public corporations — account for a significant portion of PREPA's accounts receivable. PREPA's most recent Operations Report, released on October 20, 2017, shows that Government entities owed approximately $1.6 billion to PREPA out of approximately $1.9 billion in accounts receivable. *See* Monthly Report to the Governing Board 21 (Aug. 2017), https://www.aeepr.com/INVESTORS/. Although the current breakdown of PREPA's accounts receivable is not public, Government entities, including public corporations, continue to owe substantial amounts to PREPA. To the extent those entities are debtors before this Court, PREPA's claims against those entities for post-petition services are entitled to payment as administrative expenses.

18. Accordingly, other than the financing that is actually needed for PREPA to operate prior to the final hearing, any other financing should not be approved unless and until PREPA provides a compelling explanation as to why it cannot collect debts that are owed by other Government entities, including public corporations. To the extent those entities themselves may lack liquidity, an alternative to the proposed PREPA financing would be for the Government of Puerto Rico to make loans to *those* entities so that they can meet *their* current, post-petition obligations to PREPA. As it stands, PREPA's creditors are at risk of subsidizing *other* debtors and non-debtors by permitting them to receive services from PREPA while avoiding payment to PREPA.

**B. The Interim Financing Order should preserve PREPA's setoff rights.**

19. The Interim Financing Order should be revised to make explicit that PREPA preserves any and all setoff rights under applicable law. As noted, PREPA is a significant creditor of various Government entities in Puerto Rico. Without deciding in advance which of PREPA's debts may be subject to setoff, there is no reason for PREPA not to preserve its setoff rights in obtaining post-petition financing. Notably, the bill authorizing the Commonwealth's loan to PREPA, enacted last week, allows PREPA to set-off the debts owed to it against amounts due under the loan.[9]

**C. The Interim Financing Order should require notice and a hearing prior to any material amendment to the Credit Documents.**

20. The proposed Interim Financing Order would authorize PREPA to "enter into any amendments, consents, waivers or modifications to the Credit Documents" subject only to the approval of the Oversight Board and "without the need for further notice and hearing or any order of this Court." Financing Mot. Ex. 1 ¶ 6.

21. This is not acceptable for *material* amendments to the Credit Documents. The language of the proposed order should thus be revised as follows:

> Amendments, Consents, Waivers, and Modifications. Subject to the approval of the Oversight Board, PREPA may enter into ***non-material*** amendments, consents, waivers or modifications to the Credit Documents, in accordance with the terms thereof, without the need for further notice and hearing or any order of this Court. ***Any material amendments, consents, waivers or modifications to the Credit Documents require notice and a hearing.***

(Proposed amendments to current provision are italicized and in bold.)

---

[9] *See* R.C. del S. 196, 18va Asamblea Legislativa, 3ra Sesión Ordinaria § 1, at p. 3, lines 8–10 (P.R. Jan. 25, 2018) (Spanish version attached hereto as **Exhibit A**).

### D. PREPA's creditors should receive information regardless of their participation in mediation.

22. According to the Financing Motion, PREPA will provide "substantial information" to its financial creditors, "including the Debtor's: (i) cash balance; (ii) statement of cash flows; (iii) total accounts payable and, if available, accounts payable aging schedule; (iv) total accounts receivable and, if available, accounts receivable aging schedule; (v) grid restoration report while the restoration activities are ongoing; and (vi) generation status report while the restoration activities are ongoing." Financing Mot. at ¶ 57. However, the Motion suggests that such information will only be provided to those creditors that are party to the mediation agreement. *Id.*; *see also id.* at 7 (information will be "provided to the creditors of the Lender and Debtor who are party to the mediation agreement").

23. Scotiabank, as Agent, is currently a party to the mediation agreement. But the interest of PREPA's creditors in obtaining the basic information referenced in the Financing Motion is in no way limited to the mediation process. As a condition of PREPA's incurrence of post-petition obligations that will have priority over the Fuel Line Facility and other pre-petition obligations, the Court should require that the information that PREPA has committed to provide will be available to any creditors that sign an appropriate confidentiality agreement, regardless of whether they are party to the mediation agreement.

### CONCLUSION

24. For the reasons stated above, the Financing Motion should be denied absent modification to address the limited objections set forth above.

-8-

| | |
|---|---|
| Dated: February 1, 2018 | Respectfully submitted, |
| /s/ Antonio A. Arias | /s/ Emil A. Kleinhaus |
| Antonio A. Arias | Richard G. Mason (admitted *pro hac vice*) |
| USDC-PR No. 204906 | Emil A. Kleinhaus (admitted *pro hac vice*) |
| aaa@mcvpr.com | Brian Bolin (admitted *pro hac vice*) |
| MCCONNELL VALDÉS LLC | WACHTELL, LIPTON, ROSEN & KATZ |
| 270 Muñoz Rivera Avenue, Suite 7 | 51 West 52nd Street |
| Hato Rey, Puerto Rico 00918 | New York, New York 10019 |
| P.O. Box 364225 | Telephone: (212) 403-1000 |
| San Juan, PR 00936-4225 | Facsimile: (212) 403-2000 |
| Telephone: (787) 250-5604 | Email: rgmason@wlrk.com |
| Facsimile: (787) 759-9225 | eakleinhaus@wlrk.com |
| | bbolin@wlrk.com |

*Attorneys for Scotiabank de Puerto Rico, as Administrative Agent*