# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747).

**OBJECTION AND RESERVATION OF RIGHTS OF PREPA BOND TRUSTEE TO
URGENT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY AND
FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING, (B)
GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY,
(D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

To The Honorable United States District Court Judge Laura Taylor Swain:

U.S. Bank National Association, solely in its capacity as trustee (the "**PREPA Bond
Trustee**") under the Trust Agreement dated as of January 1, 1974 (as amended and
supplemented from time to time, the "**Trust Agreement**"), between it and the Puerto Rico
Electric Power Authority ("**PREPA**" or the "**Authority**") for over $8.3 billion in principal
amount of power revenue and power revenue refunding bonds ("**Bonds**," and the holders thereof,
"**Bondholders**") currently outstanding, respectfully submits this Objection and Reservation of
Rights of PREPA Bond Trustee (the "**Objection**") to the To Urgent Motion Of The Financial
Oversight And Management Board For Puerto Rico And The Puerto Rico Fiscal Agency And
Financial Advisory Authority For Entry Of Interim And Final Orders (A) Authorizing
Postpetition Secured Financing, (B) Granting Priming Liens And Providing Superpriority
Administrative Expense Claims, (C) Modifying The Automatic Stay, (D) Scheduling A Final
Hearing, And (E) Granting Related Relief (the "**DIP Motion**"). Capitalized terms used herein
but not defined shall have the meanings assigned to them in the DIP Motion.

The PREPA Bond Trustee intends to file a motion to join in one or more separate
objections to the DIP Motion being filed today by the Ad Hoc Group of PREPA Bondholders;
Assured Guaranty Corp. and Assured Guaranty Municipal Corp.; National Public Finance
Guarantee Corporation; and Syncora Guarantee Inc. This separate Objection is being filed to

underscore certain points believed by the PREPA Bond Trustee to be of particular importance to the Court's consideration of the DIP Motion.

     **I.**     ***Introduction*.**

     1.     The PREPA Bond Trustee shares the concern of all parties that PREPA's short term liquidity issues should be promptly addressed in a manner that prevents a shutdown of PREPA's operations or further delays the restoration of power.  The DIP Motion proposes a solution that is premature, improper, and the proposed priming lien violates 11 U.S.C. § 364(d). In addition, the PREPA Bond Trustee submits that the proposed interim financing order includes findings that are and will be unsupported by the record and grant rights and protections that are objectionable as set forth herein.

     2.     The DIP Motion lumps together two distinct proposed lending relationships between PREPA and the Commonwealth bankruptcy estates that should be reviewed by the Court separately.  The first consists of low interest rate direct advances by the Commonwealth to PREPA of up to $550 million (the "**Direct Advances**") pursuant to Joint Resolution 196 of the Puerto Rico legislature, dated January 25, 2018 (the "**Joint Resolution**").[2]  The second proposed relationship consists of the Commonwealth serving as a pass-through lender of proceeds that the Commonwealth hopes to receive from the federal government for community disaster loans ("**CDLs**") that PREPA could qualify for under applicable disaster relief statutes (the "**Pass-Through Advances**").  Together the Direct Advances and the Pass-Through Advances could total $1.3 billion.  In both cases, however, the proposed lender/borrower relationship is premature and imposes an inequitable burden on the PREPA bankruptcy estate and its creditors. And, any priming lien would violate § 11 U.S.C. 364(d)(1)(A) and (B).

---

[2] An unsworn declaration and copy of the Joint Resolution is attached as **Exhibit A**.

II.    *The DIP Motion Is Premature.*

3.    The DIP Motion is premature in differing respects for both the Direct Advances and the Pass-Through Advances.  With respect to the Direct Advances, the Commonwealth and its instrumentalities owe PREPA substantial sums of money, and the liquidity crisis may be either entirely resolved or at least materially delayed if the Commonwealth were to simply pay the sums owed to PREPA.  One senator, during the debate on the Joint Resolution identified liabilities owed by Commonwealth Agencies to PREPA in excess of $212 million.[3]  There is no justification for an entity to make a post-petition loan, and gain priority over other creditors, when that same entity owes substantial sums of money that could be paid to the debtor.  If the Commonwealth can afford to make zero interest loans for up to $550 million it can afford to pay its electricity bills to avert a utility shutdown.

4.    With respect to the Pass-Through Advances, the DIP Motion is profoundly premature.  The Movants acknowledge that they have not yet negotiated the terms of any <u>potential</u> agreement with the federal government.  Accordingly, the role of the Commonwealth as an intermediate lender for the proceeds of CDLs is unknown.  <u>DIP Motion</u> ¶¶24-26.  Any potential agreement would be novel.  Unless there is full disclosure of the obligations that the Commonwealth would be undertaking to the federal government, creditors and the Court are not in a position to evaluate whether the imposition of a priming lien in favor of the Commonwealth, as well as other benefits sought in consideration of playing the role of intermediate lender, are fair, appropriate, or even legal.  Moreover, there is no clear urgency to approve this portion of the DIP Motion before any underlying deal is reached.  All portions of the DIP Motion

---

[3] A declaration and transcript of the Senator's floor statements are attached as **Exhibit B**, and a certified translation of it is attached as **Exhibit C.**

pertaining to the approval of potential future Pass-Through Advances should be denied without prejudice for the Movants to refile it when they have an arrangement for the Court to consider.

       III.    ***The DIP Motion Is an Inappropriate One-Sided Solution to an Inter-Estate Claim***.

     5.    The Commonwealth and PREPA are separate Title III debtors and their property and claims have not been substantively consolidated.  See Order Directing Joint Administration, Dkt. No. 340; Case 17-4780.  Courts do not generally permit the assets of one estate to be used to pay the liabilities of another.  *In re Las Torres Development, L.L.C.*, 413 B.R. 687, 693-95 (Bankr. S.D.Tex 2009).  This is so because each estate is required to be treated equitably vis-à-vis other estates in jointly administered cases.  In complex cases involving multiple bankruptcy estates that intermingle their cash, courts routinely protect the dignity of each estate with cash management orders that provide for the offsetting of claims of equal priority for each estate based upon each estate's legal rights.  See *Debtors' Motion for Interim and Final Orders Authorizing: (A) Continued Use of Cash Management System and Procedures . . . ; and (E) Continuation of Intercompany Transactions and Accordance of Administrative Expense Status of Intercompany Claims at 25 In re SquareTwo Financial Services Corporation, et al., Case No. 17-10659 (Bankr. S.D.N.Y. Mar. 19, 2017), Dkt. No. 9.*

     6.    PREPA "is a corporation having legal existence and personality separate and apart from that of the [Commonwealth]."  22 L.P.R.A. § 193.  Accordingly, the debts of both PREPA and the Commonwealth are separate and apart from one another.  Federal Courts in Puerto Rico have held that PREPA is an entity politically and legally separate from the Commonwealth and that PREPA has its own fiscal autonomy distinct from that of Puerto Rico. *See Riefkohl v. Alvarado*, 749 F. Supp. 374, 375-76 (D. P.R. 1990).  Accordingly, the independence of PREPA's Title III bankruptcy estate should likewise be respected.

7.      Given PREPA's role as the electric utility of the Commonwealth, value naturally flows between its Title III estate and the Commonwealth's Title III estate regularly.  PREPA provides the Commonwealth and its instrumentalities electricity.  The Commonwealth and its instrumentalities are required to pay for that electricity.  Here, in the DIP Motion, the Movants are asking the Court to elevate unfairly the Direct Advance and Pass-Through Advance claims of the Commonwealth to those of a secured lender without treating PREPA's rights and claims in the same manner.  This violates the principle of independence and fairness among non-consolidated bankruptcy estates and should not be permitted by the Court.  The Commonwealth estate would obtain a priming lien for each dollar advanced, whereas the PREPA estate, currently the net creditor, would receive no commensurate rights for the value of the electricity provided to the Commonwealth and its other instrumentalities.  Any order requested by the Movants that provides protection to the Commonwealth with respect to the Direct Advances should also provide equal and coextensive protection to PREPA related to its electricity advances every day to the Commonwealth and its instrumentalities.

8.      With respect to the Pass-Through Advances, to the extent an agreement is ever reached between the Commonwealth and the federal government, the governing principle of comity and fairness among bankruptcy estates should apply so that the PREPA estate would only be responsible to protect the Commonwealth estate against losses caused by PREPA's nonpayment.  The Movants in the DIP Motion prematurely, and unfairly, seek special rights for the Pass-Through Advances that prefer the Commonwealth estate over the PREPA estate, before even a tentative deal is reached to establish the authority to make such advances.

9.      The similar problem of protecting the Commonwealth for its role of passing through FEMA emergency relief grant money was adequately addressed in a consensual order by

giving the Commonwealth a claim against the PREPA bankruptcy estate in the event that the Commonwealth were held liable for *disobligated* federal grants passed along to PREPA. *Order Granting Urgent Joint Motion of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority, and The Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order Concerning Receipt and Use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties, Case No. 17-4780, Dkt. No. 359.*

### IV.   The Proposed Priming Lien is Improper Under the Bankruptcy Code.

10.    A debtor may not grant a priming lien under 11. U.S.C. §364(d)(1) unless it proves that it is "unable to obtain such credit otherwise." Discovery is ongoing regarding the process PREPA used to seek any unsecured loan from the Commonwealth or other lenders. In the DIP Motion, the Movants allege that PREPA began actively looking for an alternative facility on January 21, 2018, which is not adequate. Movants make the bare allegation that they have not been able to find another lender who would be willing to make a loan to PREPA for the Direct Advances on an unsecured basis. DIP Motion ¶¶20-22. However, the DIP Motion does not seem to allege that PREPA attempted to negotiate the Direct Advances from the Commonwealth without the priming lien. Nor does the DIP Motion claim that the Commonwealth would refuse to make the Direct Advances unless it received a priming lien. In light of the common control of PREPA and the Commonwealth, the Court should closely scrutinize the alleged good faith process to seek alternative unsecured financing. *Weinberger v. UOP*, 457 A.2d 701, 710 (Del. 1983). It strains all credulity to believe that even though the Commonwealth would sustain irreparable harm unless the DIP Motion is approved, that the

Commonwealth would nonetheless refuse to provide Direct Advances, unless it is granted a priming lien.

11.     Indeed, there is no legitimate economic reason why the Commonwealth needs to be secured by a priming lien on PREPA's Revenues (as defined in the Trust Agreement).  The Commonwealth is more than protected, to the extent the Court approves the Direct Advances, and gives them administrative expense status.  Holders of such claims are entitled to be paid in full upon confirmation of a plan of adjustment, there is no need for other protections.  *See* 11 U.S.C. § 1129(a)(9).  Moreover, they control PREPA and who it pays.  Since the evidence will likely show that the Commonwealth itself would be willing, if requested, to make the Direct Advances without a priming lien, the requirements of 11 U.S.C. §364(d)(1)(A) cannot be satisfied and the priming lien cannot be approved.

**V.     The DIP Motion Deprives PREPA Bondholders of Adequate Protection in Violation of 11 U.S.C. § 364(d)(1)(B).**

12.     Adequate protection requires that the Bondholders be compensated for the loss in in the value of their liens in Revenues caused by the priming lien. 11 U.S.C. §§ 361; 364(b)(1)(B).  It is the Movants' burden to demonstrate that the Bonds are adequately protected in spite of the priming lien.  Movants categorically claim that adequate protection is being afforded to the PREPA Bond Trustee and Bondholders because (1) the loans are needed to keep PREPA operating, and (2) the loan proceeds will be used for purposes permitted by the Trust Agreement.  As is amply addressed in other objections, taking on additional debt, in order to meet operating expenses—which should be payable from Revenues—does not work to adequately protect Bondholders.

13.     The DIP Motion is replete with mischaracterizations of the pledge of Revenues made by PREPA under the Trust Agreement.  As they have throughout this case, the Movants

8

mistakenly claim that the pledge under the Trust Agreement is merely a pledge of the net

revenues of the System. It is not.  Under the Trust Agreement, PREPA granted numerous

property rights, including pledges of, and liens in its Revenues and various trust accounts to the

PREPA Bond Trustee on behalf of the Bondholders.[4] *See* Trust Agreement, Granting Clause,

p.11-12.  "the Authority has executed and delivered this Agreement and has pledged and does

hereby pledge to the Trustee the revenues of the System . . and other moneys to the extent

provided in this Agreement as security for the payment of the bonds and the interest and the

redemption premium, if any, thereon and as security for the satisfaction of any other obligation

assumed by it in connection with such bonds" (emphasis added). Section 701 of the Trust

Agreement further establishes that the lien extends to all Revenues by stating that ". . . such

principal, interest and premium will be payable solely from the Revenues and said Revenues are

hereby pledged to the payment thereof in the manner and to the extent hereinafter particularly

identified."

      14.     Revenues, in turn, are defined as including all moneys received by PREPA in

connection with or as a result of its ownership or operation of the System, including the income

derived by the Authority from the sale of electricity generated or distributed by the System.

Indeed, this definition and the pledge under the Trust Agreement could hardly be larger.

      15.     The collateral pledged under the Trust Agreement secures more than just the

obligation of PREPA to pay debt service after paying its reasonable Current Expenses.  The

collateral secures each and every obligation of PREPA under the Trust Agreement including the

following:

---

[4] A copy of the Trust Agreement has previously been submitted to the Court as an exhibit
to the Declaration of Stephen Spencer [Dkt. No. 74-8], dated July 18, 2017.

- PREPA must provide an annual budget, including projected amounts of Current Expenses, which is an amount not to exceed that which is reasonable and necessary for maintaining, repairing and operating the System in an economical manner.  Trust Agreement § 504.

- PREPA must render regular bills to customers and enforce reasonable collection of such bills.  Trust Agreement § 501

- The establishment of special funds including the General Fund, Construction Fund, the Reserve Maintenance Fund, the Revenue Fund and the Sinking Fund and the holding of such funds with the Trustee or with designated Depositories in trust.  See Trust Agreement Article 5.

- The resetting of electricity rates at levels necessary to generate sufficient Revenues for the payment of Bonds.  Trust Agreement § 502.

- PREPA must keep the System in good repair.  Trust Agreement § 702.

- Maintaining insurance against property loss and business interruption at levels customary in the industry and applying such proceeds as specified in the Trust Agreement.  Trust Agreement § 707.

- The delivery of specified information and reports to the Trustee as a repository for Bondholders.  Trust Agreement § 710.

- Protecting the System and Revenues from any encumbrance ranking equally with or prior to the charge or lien on the Revenues of the Bonds issued under the Trust Agreement.  Trust Agreement § 712.

16.     The foregoing covenants made by PREPA under the Trust Agreement all are part of the collateral value package that secures the Bonds.  The Movants cannot meet their burden of demonstrating adequate protection and, accordingly, no priming lien can be granted.

## Conclusion

For the reasons stated herein, the PREPA Bond Trustee respectfully requests that the DIP Motion be denied at the interim hearing in favor of requiring the Commonwealth to pay all outstanding amounts owed to PREPA; and that the DIP Motion be taken up, if ever, when Direct Advances are truly necessary to sustain PREPA's liquidity position.  With respect to Pass-Through Advances, the PREPA Bond Trustee respectfully requests that the Court defer consideration until there is an underlying agreement with the federal government to consider.

The PREPA Bond Trustee reserves all rights, claims, defenses, and remedies, including, without limitation, the right to supplement this Objection, to raise further and other objections to the DIP Motion and the form of any interim or final orders with respect thereto, and to introduce evidence prior to or at any hearing regarding the DIP Motion in the event this Objection is not resolved prior to such hearing.

**RIVERA, TULLA AND FERRER, LLC**


*/s Eric A. Tulla*
Eric A. Tulla
USDC-DPR No. 118313
Email: etulla@ riveratulla.com


*/s Iris J. Cabrera-Gómez*
Iris J. Cabrera-Gómez
USDC-DPR No. 221101
Email: icabrera@riveratulla.com

Rivera Tulla & Ferrer Building
San Juan, PR 00917-1212


11

Tel: (787)753-0438
Fax: (787)767-5784

AND

Dated:  February 1, 2018                    **MASLON LLP**

By: /s Clark T. Whitmore
    Clark T. Whitmore (admitted *pro hac vice*)
    Jason M. Reed (admitted *pro hac vice*)

90 South Seventh Street, Suite 3300
Minneapolis, MN 55402
Telephone: 612-672-8200
Facsimile: 612-672-8397
E-Mail:      clark.whitmore@maslon.com
           jason.reed@maslon.com

**ATTORNEYS FOR U.S. BANK NATIONAL
ASSOCIATION, IN ITS CAPACITY AS PREPA
BOND TRUSTEE**

**<u>Exhibit A</u>**

**<u>Exhibit B</u>**