# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------- x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.,*

      Debtors.[1]

---------------------------------------------------------------- x

    : PROMESA
    : Title III
    :
    : Case No. 17-BK-3283 (LTS)
    :
    : (Jointly Administered)

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

      Debtor.

---------------------------------------------------------------- x

    : PROMESA
    : Title III
    :
    : Case No. 17-BK-4780 (LTS)
    :
    : **This filing relates only to**
    : **Debtor PREPA and shall be**
    : **filed in the lead Case No. 17-**
    : **BK-3283 (LTS) and Case No.**
    : **17-BK-4780 (LTS)**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
RESPONSE TO URGENT JOINT MOTION OF THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO AND THE PUERTO RICO FISCAL
AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF INTERIM
AND FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING,
(B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY,
(D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors of all title III Debtors (other than
COFINA) (the "Committee") hereby submits this statement (the "Statement") in response to the
*Urgent Joint Motion of the Financial Oversight and Management Board for Puerto Rico and the
Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final
Orders (A) Authorizing Postpetition Secured Financing,(B) Granting Priming Liens and
Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, (D)
Scheduling a Final Hearing, and (E) Granting Related Relief* [Docket No. 549 in Case No. 17-
4780 (LTS)] (the "Financing Motion"), pursuant to which PREPA and AAFAF[2] seek
authorization to obtain postpetition financing from the Commonwealth, up to an aggregate
amount of $1.3 billion in the form of a senior secured priming superpriority revolving credit
facility (the "Financing").  In support of this Statement, the Committee respectfully states as
follows:

**STATEMENT**

1.      As the court is aware, the Committee represents unsecured creditors of both the
Commonwealth and PREPA, *i.e.*, the lender and the borrower, respectively, under the proposed
Financing.  Although the Committee is not formally objecting to the Financing Motion, given the
Committee's overarching responsibility as a "watchdog" for the Debtors in these title III cases,

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Financing
Motion.

the Committee is duty-bound to advise the court of the Committee's position and concerns[3] with respect to the Financing.

2.      First, the Committee is, of course, supportive of PREPA having sufficient liquidity to operate and continue to operate as close as possible to ordinary course of business under the circumstances.[4]  Moreover, the Committee recognizes that the Commonwealth and its unsecured creditors generally benefit from the continued operation of PREPA given the critical importance of a functioning electricity infrastructure.  That said, PREPA and the Commonwealth are separate Debtors with separate asset pools and different sets of creditors, and, therefore, the impact and benefits of the Financing must be evaluated separately for creditors of each Debtor and the Financing should be as close as possible to market terms.

3.      Second, while the Committee generally supports PREPA's efforts to obtain postpetition financing, the Committee believes that the proposed Financing does not reflect market terms from the point of view of the Commonwealth.  This is especially true for the interest rate, which would be 0% for the first six months, increase by 50 basis points every six months thereafter, and then top out at 3% after three years.  Zero percent DIP loans do not exist in the marketplace, and this feature means that millions of dollars of value are being transferred from the Commonwealth and its creditors to PREPA (and possibly and unintentionally, to the benefit of the entity which will acquire PREPA pursuant to the recently announced privatization program).  As a point of comparison, the PREPA secured bondholders previously offered postpetition financing to PREPA at an effective interest rate of approximately 8%.

---

[3]      The Committee has raised its concerns with respect to the Financing with the Oversight Board.
[4]      The Committee also supports the contemplated priming of the liens securing PREPA's Power Revenue Bonds as part of the Financing.  As to the appropriate amount of such financing, the Committee leaves it to the Oversight Board to satisfy its burden of proof.

4.     The Committee recognizes that the court is being asked to authorize **PREPA** (not the Commonwealth) to enter into the proposed Financing.  Indeed, the Oversight Board takes the position that the Commonwealth need not seek court authorization to use its funds to extend the Financing to PREPA on the grounds that (a) section 305 of PROMESA prohibits the court from interfering with any of the Commonwealth's property or revenues, unless the Oversight Board consents,[5] and (b) section 363 of the Bankruptcy Code is not incorporated into title III of PROMESA.  However, the matter is not as clear-cut.  In fact, in the proposed order attached to the Financing Motion, the Oversight Board is seeking a factual finding that the Financing is ***fair to the Commonwealth***.[6]  The Oversight Board cannot, on the one hand, claim that the court may not interfere with the Commonwealth's decision to enter into the Financing, but then, on the other hand, ask this court to bless the transaction from the perspective of the Commonwealth.  By asking the court to make factual findings as it relates to the Commonwealth, the Oversight Board is, in essence, consenting to the court's interference with the Commonwealth's use of property and revenue, thereby taking the matter outside of section 305 of PROMESA.  Accordingly, the court should evaluate the proposed Financing from the perspective of ***both*** PREPA and the Commonwealth.

5.     Moreover, and regardless of the question of consent, the reach of section 305 is not unlimited and cannot (and should not) be viewed as a "carte blanche" for a title III debtor to do with its property however it pleases.  For one, if taken to the extreme, section 305 would

---

[5]     In this regard, the Committee is mindful of the court's recent rulings in *ACP Master Ltd. v. Commonwealth of Puerto Rico*, Adv. Proc. No. 17-189 (LTS) and *Assured Guaranty Corp. v. Commonwealth*, Adv. Proc. Nos. 17-155–156 (LTS), in which the court held, among other things, that section 305 of PROMESA bars the court "from interfering with the [Commonwealths'] enumerated governmental powers, revenues and property 'by any stay, order, or decree, in the case or otherwise' . . . " *Opinion and Order Granting Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)* at 17 [Docket No. 124 in Adv. Proc. No. 17-189 (LTS)].

[6]     Interim Financing Order ¶ D ("the terms of the Credit Documents are **fair** to the Lender [*i.e.*, the Commonwealth] and the Debtor [*i.e.*, PREPA]") (emphasis added).

arguably deprive the court of the ability to stop the Commonwealth from literally burning up all

its cash.  Indeed, as the court in *In re City of Stockton*, 486 B.R. 194, 199 (Bankr. E.D. Cal.

2013) observed, there is a "limiting principle" embedded in section 904 of the Bankruptcy Code

(*i.e.*, the chapter 9 equivalent to section 305 of PROMESA) in that "overreaching may make it

difficult to confirm a plan."  As the *Stockton* court explained that "the day of reckoning comes at

the plan confirmation hearing," *id.*, at which time evidence of pre-plan transactions may be

probative on confirmation issues, including that the plan be fair and equitable, not discriminate

unfairly, and have been proposed in good faith and not by any means forbidden by law.  Of

course, these title III cases have not yet advanced to the plan confirmation stage; however, the

point here is simply that issues of fairness and good faith when dealing with insider transactions

cannot be altogether brushed aside on account of section 305 of PROMESA.

6.      Finally, the Committee is also concerned about the general lack of transparency

with respect to the negotiation of the proposed Financing and the breakneck speed at which the

Oversight Board, PREPA, and AAFAF are seeking court authorization of the Financing.  This

concern is especially acute given the insider nature of the proposed Financing—a transaction that

AAFAF appears to have negotiated with itself.  In this regard, the Committee would find it

disconcerting if the Oversight Board and AAFAF refused to produce documents regarding the

Financing on the basis of the deliberative process privilege.  The Oversight Board and AAFAF

should disclose the back-and-forth of negotiations (assuming such negotiations in fact occurred)

if they are going to request that this court make findings regarding the fairness of the Financing.

The Committee believes that transparency on intra-government transactions is of critical

importance, not just for the proposed Financing, but for the operation of the Puerto Rico

government in general, the success of these title III cases, and the future of the Island of Puerto Rico.

7.     The Committee's concerns about transparency are further exacerbated by the speed at which the Oversight Board and AAFAF are trying to obtain court authorization.  While the Committee is, as noted above, sensitive to PREPA's liquidity needs, PREPA did not file the Credit Agreement until **after** the general objection deadline, making it impossible for parties in interest to evaluate the terms of the transaction before the deadline.  While the Oversight Board extended the Committee's objection deadline until Friday at noon (ET), this short extension did not provide adequate time to properly vet the Credit Agreement.  Accordingly, the Committee reserves the right to address at the February 7 hearing (a) any issues concerning the terms of the Credit Agreement and other controlling documents and (b) any changes that may be made to the proposed Interim Financing Order.

[*Remaining page intentionally left blank.*]

Dated:  February 2, 2018

/s/ G. Alexander Bongartz

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
Andrew V. Tenzer *(Pro Hac Vice)*
Michael E. Comerford *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
andrewtenzer@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

- and -

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*