**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Court Filing Relates Only to PREPA and Shall Only be Filed in Case No. 17-BK-4780 (LTS)**

-----------------------------------------------------------------x

**REPLY BRIEF IN SUPPORT OF URGENT MOTION OF
THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO FOR ENTRY OF ORDER CLARIFYING SCOPE OF INTERIM
HEARING ON URGENT JOINT MOTION OF THE FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD FOR PUERTO RICO AND THE PUERTO RICO
FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF
INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED
FINANCING, (B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY,
(D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

**To The Honorable United States District Court Judge Laura Taylor Swain:**

PREPA,[2] by and through the Oversight Board, as the Debtor's representative pursuant to section 315(b) of PROMESA, respectfully submits this reply brief in support of its Urgent Motion for an order clarifying the scope of the Interim Hearing:

1. PREPA's request for interim financing is governed by section 364 of the Bankruptcy Code. For the reasons stated in PREPA's Urgent Motion, the only issues relevant to the approval of the interim financing under Bankruptcy Code section 364(c)-(d) are (1) whether PREPA could obtain similar or better financing without providing a priming lien and superpriority administrative claim, and (2) whether PREPA's bondholders, asserting a security interest in PREPA's revenues, are adequately protected. Bankruptcy Rule 4001(c)(2) allows loan approval on an interim basis for the credit needed to avoid immediate and irreparable harm.

2. <u>Findings about Lender Receiving Fair Value</u>. Objectors object that PREPA's proposed interim financing order includes fact findings that the loan is fair to the *Lender*. Objectors assert they should be able to propound contrary evidence. *E.g.*, *Ambac Assurance Corp.'s Objection* [Dkt. No. 584 at 3-4]. PREPA hereby submits a revised proposed order (attached hereto as <u>Exhibit A</u>, along with a redline of the revised proposed order to the original Proposed Order, attached hereto as <u>Exhibit B</u>) deleting proposed findings about fairness to the Lender—not because PREPA believes the transaction is unfair but because those findings are unnecessary to granting interim financing under Bankruptcy Code section 364. The Commonwealth made a judgment to use some of its resources to prevent its electric utility from shutting down. As shown by Congress' decision to include section 305 in Title III of PROMESA and not include Bankruptcy Code section 363, which is why an application for approval in the

---

[2] Defined terms have the meaning ascribed to them in PREPA's Urgent Motion, [Dkt. No. 557].

2

Commonwealth's Title III case is not being made. PREPA is not deleting its request for a finding that the Commonwealth is a good-faith lender under Bankruptcy Code section 364(e) because the Commonwealth required that as a condition of its extending credit. Section 364(e) protects borrowers from being overcharged for credit. Here the interest rate is zero for six months and there are no fees or prepayment penalties. Accordingly, overcharging PREPA cannot be an issue.

3. Challenges to PREPA's Business Practices. Certain objectors note that Bankruptcy Rule 4001(c)(2) limits the approval at an interim hearing to credit necessary to avoid immediate and irreparable harm, and argue they may litigate how PREPA's business practices must be altered, now, to minimize the need to borrow. *See e.g.*, *Joinder of National Public Finance Guarantee Corporation (Supplemental)* [Dkt. No. 582 at 4]. PREPA's business practices are not relevant to the approval of interim financing. The Facility can be used only to pay Eligible Uses, which are a subset of Current Expenses under the Trust Agreement (e.g., payroll and fuel for power generation). As such, the amount of credit is automatically limited to the expenses necessary to continue PREPA's operations and thus avoid immediate and irreparable harm by not terminating power. Moreover, the secured claimholders agreed in their security agreement that Current Expenses can be paid out of otherwise encumbered revenues.

4. The objectors' argument that Rule 4001(c)(2) requires a review of PREPA's business practices, including collection practices from governmental instrumentalities, at an interim financing hearing fails for several reasons. *First*, limiting credit to the minimum required to avoid immediate and irreparable harm is not a requirement of final approval under Bankruptcy Code section 364. Therefore, Rule 4001(c)(2) cannot be interpreted to mean a debtor is required, on a dime, to change major business practices for a few weeks. Indeed, if the instant hearing

3

were held on February 11 instead of February 7, it would be more than 14 days after PREPA's motion and there would be no requirement of immediate and irreparable harm or limiting credit. Therefore, in context, it cannot be that Rule 4001(c)(2) contemplates wholesale business model changes, and no objector has cited authority to the contrary. *Second*, major business practices cannot be changed in a few weeks. If, for instance, other governmental instrumentalities are to pay PREPA faster, cash planning and budgets have to be implemented. This takes time. *Third*, preliminary hearings on financings are authorized by the Bankruptcy Rules to accommodate requests for loan approvals on short notice. They usually occur on the first or second day of a reorganization case. Rule 4001(c)(2) imposes an immediate and irreparable harm requirement, and no others. This is designed for hearings focused on whether a debtor needs immediate cash, not how competing proposals for business plan amendments should be made.

5. Furthermore, PREPA's financing motion uniquely limits the credit it can procure before the final hearing. Bankruptcy Rule 4001(c)(2) is satisfied because PREPA can borrow only what it needs to pay Current Expenses, which the Trust Agreement defines, prior to the final hearing. The PREPA creditors already consented to payment of Current Expenses by limiting their lien to revenues minus Current Expenses. Finally, the PREPA secured bondholders offered to lend PREPA $1 billion with superpriority and priming lien protections at annual interest rates of 5.5% and higher plus the payment of $850 million of their prepetition debt. They attempted to pressure PREPA into accepting the loan by publicizing their offer in a press release. Obviously, they were not concerned about whether PREPA needed $550 million when they offered $1 billion (almost twice the maximum interim commitment here) in priming loans to help PREPA avoid irreparable harm.

4

6. <u>Factors Outside Bankruptcy Code section 364</u>. Certain objectors contend the Court cannot approve interim financing under section 364 without considering various factors beyond adequate protection and the availability of similar financing without a priming lien, including: (1) whether the proposed financing is an exercise of the debtor's reasonable business judgment; (2) whether the financing is in the best interest of the estate and its creditors; (3) whether financing is necessary to preserve the assets of the estate; (4) whether the terms are fair and reasonable given the circumstances of the debtor and proposed lender; and (5) whether the financing agreement was negotiated in good faith and at arm's length. *E.g.*, *Joinder of Assured Guaranty Corp.* [Dkt. No. 564 at 2]. The cases cited in support of those additional factors involved final financing orders, not interim orders. Moreover, none of objectors' citations are to municipal cases where the federal courts are barred from exercising any governmental powers or judgments.[3] *Cf.* 5-89 Collier Bankruptcy Practice Guide P 89.03.

7. <u>Objections to Restricting the Issues</u>. Several parties contend the Board should not be allowed to limit the issues before the objectors have had a chance to make objections. *See e.g.*, *Urgent Objection of Ad Hoc Group of PREPA Bondholders* [Dkt. No. 558 at 2] (the "<u>Urgent Objection</u>"). That issue is moot because the objectors have now filed their objections. The Court is not only permitted, but required as a matter of the rules of evidence, to limit the evidence at the hearing to evidence material and relevant, and the only relevant issues are those set forth in Bankruptcy Code section 364 and Bankruptcy Rule 4001(c)(2). Objectors who argued the Board's rationale for limiting the scope of the hearing was to avoid a long hearing missed the point. The rationale was solely not to prolong the hearing with evidence and issues

---

[3] *See, e.g.*, PROMESA sections 303 and 305, which ensure that a title III debtor is free (subject to the Board approval) to manage its own affairs.

5

that are neither material nor relevant to the motion. The hearing should not be prolonged to consider issues such as how business plans should be amended for the long term.

8. The Board propounded its instant motion in the hope the Court might provide guidance to all parties that would enable them to plan for the scope of the hearing and potentially avoid bringing witnesses on issues that should not be heard, as such guidance is often provided at a status conference.

9. <u>Objection to Priming</u>. The Ad Hoc Group of PREPA bondholders argues that "[a]ny PREPA financing cannot prime bondholder liens." Urgent Objection at 2. Of course, that is an appropriate issue, albeit susceptible to treatment as a matter of law. The objectors' position is at odds with section 364(d), which states that the Court "may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien." Moreover, as explained in PREPA's financing motion, secured lenders are already junior to Current Expenses. The Trust Agreement provides Current Expenses may be paid from revenues that are otherwise collateral. To eliminate doubt (and understanding that the U.S. Treasury will require such protections to any CDLs that may replace this financing), PREPA requested that the Lender be granted a priming lien. But, in reality, the new loan can only be used for Current Expenses, and PREPA's secured lenders' lien is already junior to Current Expenses.

10. <u>Fairness.</u> Finally, the objectors who challenge the fairness of the interim financing miss the mark. *See e.g.*, *Objection of Arc American, Inc.* [Dkt. No. 565 at 4]. Neither Bankruptcy Code section 364 nor Bankruptcy Rule 4001(c) allow for open-ended inquiries into notions of fairness. The statute and rule impose the parameters of what is fair. Moreover, the objections show the PREPA creditors want terms better than zero interest and no fees.

6

Conversely, the Commonwealth creditors want higher interest rates.[4] PREPA's creditors previously offered a higher-cost $1 billion loan and publicized it to pressure PREPA into taking it. They cannot argue convincingly that far more favorable terms are unfair to PREPA. In any event, section 364(d) only requires determining whether any other lender would make the loan without superpriority and a priming lien. The statute does not open the scope of the interim hearing to include a roving inquiry about fairness. Indeed, it provides no guidance to the Court as to how to assess "fairness" other than the express parameters it imposes.

WHEREFORE PREPA respectfully requests the Court to enter an order granting this Urgent Motion. At the Interim Hearing, the Court should not hear evidence concerning:

1) PREPA's business practices, including its collection practices.

2) PREPA's electricity rates.

3) PREPA's handling of hurricane recovery efforts.

4) Any other issue outside the scope of 11 U.S.C. § 364 and Bankruptcy Rule 4001(c)(2).

Dated: February 2, 2018
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and*

---

[4] The Commonwealth does not need Court approval to lend its funds to PREPA. Section 363 does not apply under PROMESA. That is why approval is not being sought in the Commonwealth's case, and the hearing here should not include fairness to the Commonwealth.

7

*Management Board as representative for the Debtor*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*