UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Re: Docket No. \_\_\_\_**

------------------------------------------------------------x

**INTERIM ORDER (A) AUTHORIZING
DEBTOR PUERTO RICO ELECTRIC POWER AUTHORITY
TO OBTAIN POSTPETITION SECURED FINANCING, (B) GRANTING
PRIMING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY,
(D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

Upon the *Urgent Joint Motion of the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final Orders (a) Authorizing Postpetition Secured Financing, (b) Granting Priming*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

*Liens and Providing Superpriority Administrative Expense Claims, (c) Modifying the Automatic Stay, (d) Scheduling a Final Hearing, and (e) Granting Related Relief* (the "Urgent Motion");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found the relief requested in the Urgent Motion is in the best interests of the Debtor, its creditors, and other parties in interest; and the Court having found the Debtor provided adequate and appropriate notice of the Urgent Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Urgent Motion and having heard the statements of counsel in support of the Urgent Motion at an interim hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Urgent Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

      A.      Purpose and Necessity of Financing. The Debtor has an immediate need to obtain the financing under the Facility described in the Urgent Motion, subject to and consistent with the terms set forth in the Postpetition Credit Agreement substantially in the form attached hereto as **Exhibit 1** (the "Credit Agreement") and the other Credit Documents, to finance operating expenses that (i) constitute Eligible Uses and (ii) are included in the initial 13-week cash flow

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Urgent Motion or the Credit Documents, as applicable.

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

Case:17-03283-LTS Doc#:2367-2 Filed:02/02/18 Entered:02/02/18 13:22:07 Desc:
Exhibit B Page 3 of 17

budget attached hereto as **Exhibit 2** and any subsequent 13-week cash flow budget submitted by the Debtor to the Lender as provided in the Credit Agreement and approved by the Lender and the Oversight Board (collectively, the "Budget"). The financing under the Facility is necessary to the continued operation of the Debtor and, if it does not obtain authorization to enter into the Facility with the Lender and obtain Loans under the Credit Documents, ~~both~~ the Debtor ~~and the Lender~~ could suffer immediate and irreparable harm. The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient secured financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the Credit Documents, based on the totality of the circumstances. A loan facility in the amount provided by the Credit Documents, at a low rate of interest, is not available to the Debtor without granting the Lender superpriority claims and priming liens pursuant to sections 364(c)(1) and 364(d) of the Bankruptcy Code as provided in this Interim Financing Order and the Credit Documents. After considering all alternatives, the Debtor has exercised its sound business judgment in determining the Facility represents the best financing available to it at this time and is in the best interests of its stakeholders.

   B.  Preservation of the Value of Collateral. Absent access to the Facility in accordance with this Interim Financing Order, the value of the Collateral could be severely and irreparably harmed. Access to the Facility, subject to this Interim Financing Order, will preserve, and ultimately enhance, the value of the Collateral. Accordingly, any secured claimholders of the Debtor are deemed to be adequately protected.

   C.  Good Cause Shown. Good and sufficient cause has been shown for entry of this Interim Financing Order. The ability of the Debtor to obtain sufficient working capital and

liquidity under the Credit Documents is vital to the Debtor, its creditors, <ins>and</ins> its customers<del>, and the Lender</del>. The liquidity to be provided under the Credit Documents will enable the Debtor to continue to operate in the ordinary course and preserve the value of the Debtor's assets. Among other things, entry of this Interim Financing Order is necessary to maximize the value of the Debtor's assets and to avoid immediate and irreparable harm to the Debtor and, accordingly, is in the best interests of the Debtor and its creditors.

D. <u>Good Faith</u>. The terms of the Credit Documents are more favorable to the Debtor than those available from alternative sources. <del>Based on the totality of the circumstances, the terms of the Credit Documents are fair to the Lender and the Debtor.</del> Any obligations under the Facility and other financial accommodations made to the Debtor by the Lender pursuant to the Credit Documents and this Interim Financing Order shall be deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the Lender shall be entitled to the full protections of section 364(e) of the Bankruptcy Code if this Interim Financing Order or any other provision hereof is vacated, reversed, or modified, on appeal or otherwise.

<del>E. Fair Consideration and Reasonably Equivalent Value. The Debtor has received and will receive fair and reasonable consideration in exchange for access to the Facility and all other financial accommodations provided under the Credit Documents and this Interim Financing Order. The terms of the Credit Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.</del>

4

E. ~~F.~~ Good Cause for Immediate Entry of Interim Financing Order. Good and sufficient cause has been shown for immediate entry of this Interim Financing Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Bankruptcy Rules. The authorization granted herein to enter into the Credit Documents and to obtain funds under the Facility is necessary to avoid immediate and irreparable harm to the Debtor. Entry of this Interim Financing Order is in the best interests of the Debtor and its creditors because it will, among other things, allow for access to the financing necessary for the Debtor to continue to operate and further enhance the Debtor's prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Disposition. The Urgent Motion is GRANTED on the terms set forth in this Interim Financing Order. Any objection to the relief sought in the Urgent Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.

**AUTHORIZATION FOR FINANCING**

2. Authorization for Financing. The Debtor is hereby authorized to execute, perform and incur the obligations arising under the Facility, subject to the terms of this Interim Financing Order and the Credit Documents, in the aggregate principal amount of up to $550 million. From and after entry of this Interim Financing Order, available financing and advances shall be made in accordance with the Credit Documents and at the discretion of the Lender and the approval of the Oversight Board for the purpose of funding "Eligible Uses," as defined in the Motion.

3. Authority to Execute and Deliver Necessary Documents.

5

(a) The Debtor is authorized to negotiate, prepare, enter into and deliver the Credit Documents, in each case including any amendments, supplements and modifications thereto. The Debtor is further authorized to negotiate, prepare, enter into and deliver any UCC financing statements, account control agreements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering any and all of the Collateral and securing any and all of the Debtor's obligations under the Credit Documents, each as may be reasonably requested by the Lender in accordance with the Credit Documents.

(b) The Debtor is further authorized and directed to (i) perform all its obligations under the Credit Documents, and such other agreements as may be required by the Credit Documents to give effect to the terms of the financing provided for therein and in this Interim Financing Order, and (ii) perform all acts required under the Credit Documents and this Interim Financing Order.

4. <u>Valid and Binding Obligations</u>. All obligations under the Credit Documents shall constitute valid and binding obligations of the Debtor in accordance with the terms of the Credit Documents and the terms of this Interim Financing Order, and no obligation, payment, transfer, or grant of a lien or security interest under the Credit Documents or this Interim Financing Order shall be stayed, restrained, voidable, or recoverable under PROMESA, the Bankruptcy Code, or under any applicable law or subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under PROMESA, the Bankruptcy Code, or any applicable law or regulation by any person or entity.

5. Termination Date.  Notwithstanding anything in this Interim Financing Order to the contrary, the Facility shall expire, and the loans made pursuant to this Interim Financing Order and the Credit Documents will mature, and together with any other obligations accruing under the Credit Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the Credit Documents and this Interim Financing Order by way of acceleration or otherwise), on the earliest of (in each case, the "Termination Date"): (i) the date on which all the Loans and other obligations thereunder have been indefeasibly repaid in full in cash (and the Commitment has been terminated); (ii) the effective date of a confirmed plan of adjustment in the Title III Case (unless an alternative treatment is agreed to by the Lender); and (iii) the date of termination of the Commitment and/or acceleration of any outstanding extensions of credit under the Facility following the occurrence and during the continuance of an "Event of Default" (as defined in the Credit Agreement).

6. Amendments, Consents, Waivers, and Modifications.  Subject to the approval of the Oversight Board, PREPA may enter into any amendments, consents, waivers or modifications to the Credit Documents, in accordance with the terms thereof, without the need for further notice and hearing or any order of this Court.

**SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM, FIRST PRIORITY PRIMING LIEN, AND CURRENT EXPENSE CLASSIFICATION**

7. The Lender's Superpriority Claim.  The Lender is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtor's Title III Case for all obligations arising under the Facility, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the

7

kinds specified in or arising or ordered, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed Superpriority Claim shall be considered administrative expenses allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and which Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtor and all proceeds thereof. The Superpriority Claim shall be subject and subordinate in priority of payment only to the Carve Out. Except as otherwise provided in this Interim Financing Order, the Superpriority Claim shall be senior in all respects to any superpriority claims granted in this Title III Case.

8. Priming Liens and Priority.

(a) Subject and subordinate to the Carve Out, to secure the obligations arising under the Facility, and as more fully set forth in the Credit Documents, the Lender is hereby granted: pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable first priority senior priming lien on, and security interest in, all Revenues of the Debtor. The liens and security interests identified in the preceding clauses are referred to herein as the "Liens" and the collateral to which such Liens attach is referred to herein as the "Collateral."

(b) The Liens shall be effective immediately upon the entry of this Interim Financing Order and, other than with respect to the Carve Out, shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim.

9. Survival of Liens and Superpriority Claim. Except as otherwise provided herein, the Liens, the Superpriority Claim, and other rights and remedies granted under this Interim Financing Order to the Lender shall continue in this Title III Case, and such liens and security

8

interests shall maintain their priority as provided in this Interim Financing Order until all the obligations arising under the Facility have been indefeasibly paid in full in cash or otherwise satisfied, and any commitment of the Lender has been terminated in accordance with the Credit Documents.

10. <u>Current Expense Classification</u>. "Eligible Uses" of the proceeds of the Loans pursuant to this Interim Financing Order and the Credit Documents are limited to certain categories of expenses, all of which constitute "Current Expenses" under the Trust Agreement. As such, the Debtor's repayment obligations to the Lender for amounts borrowed under the Facility shall be deemed to be "Current Expenses" under the Trust Agreement.

**ADEQUATE PROTECTION**

11. <u>Adequate Protection</u>. All secured claimholders of the Debtor, including holders of the Debtor's Power Revenue Bonds,[4] are adequately protected for the use of the Collateral, the granting of the Liens, the imposition of the automatic stay under sections 362 and 922 of the Bankruptcy Code, and the subordination (if any) of any liens, security interests, or rights such secured claimholders may have to receive payment from the proceeds of any Collateral.

**CARVE OUT; RESTRICTIONS ON USE OF FUNDS**

12. <u>Carve Out</u>. The Liens, the Superpriority Claim, and the obligations arising under any secured prepetition financing shall be subject and subordinate to the Carve Out. "<u>Carve Out</u>" means the sum of: (i) ~~all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930 plus interest at the statutory rate; (ii~~) to the extent allowed at any time, whether by interim order, procedural order, or otherwise all unpaid fees, costs, and expenses (the

---

[4] This Interim Financing Order shall not constitute a finding with respect to the validity, priority, extent, or enforceability of any asserted lien on or security interest in any property of the Debtor.

9

"Professional Fees") incurred by persons or firms retained by the Debtor (the "Debtor Professionals"), the Oversight Board (the "Oversight Board's Professionals") and the Official Committee of Unsecured Creditors (the "Creditors' Committee," together with the Oversight Board's Professionals and the Debtor Professionals, the "Professional Persons"); and (~~iii~~ii) any state matching requirements of Federal grants and loans.

13. Prohibition on Granting of Additional Liens and Interests. No liens, claims, interests or priority status, other than the Carve Out, having a lien or administrative priority superior to, *pari passu* with, that of the Liens or the Superpriority Claim, shall be granted while any portion of the obligations arising under the Facility remains outstanding, or any commitments of the Lender under the Credit Documents remains in effect, without the prior written consent of the Lender.

## MODIFICATION OF AUTOMATIC STAY

14. Stay Modification.

(a) The automatic stay provisions of sections 362 and 922 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of PROMESA, the Bankruptcy Code, or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges, or remedies regardless of any change in circumstances (whether or not foreseeable):  Whether or not a default or an Event of Default under the Credit Documents or a default by the Debtor of any of its obligations under this Interim Financing Order has occurred (A) to require all cash, checks or other collections or proceeds from Collateral received by the Debtor

to be deposited in accordance with the requirements of the Credit Documents, and to apply any amounts so deposited and other amounts paid to or received by the Lender under the Credit Documents in accordance with any requirements of the Credit Documents, (B) to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the Collateral in accordance with the Credit Documents, (C) to charge and collect any interest, fees, costs and other expenses accruing at any time under the Credit Documents as provided therein, and (D) to give the Debtor any notice provided for in or contemplated by any of the Credit Documents or this Interim Financing Order.

(b) This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Financing Order and relating to the application, re-imposition or continuance of the automatic stay of sections 362 and 922 of the Bankruptcy Code or other injunctive relief requested.

**MISCELLANEOUS**

15. <u>Successors and Assigns</u>. The Credit Documents and the provisions of this Interim Financing Order shall be binding upon the Debtor and the Lender (and each of their respective successors and assigns), and shall inure to the benefit of the Debtor and the Lender (and each of their respective successors and assigns). The terms and provisions of this Interim Financing Order shall also be binding on all of the Debtor's creditors and all other parties in interest.

16. <u>Binding Nature of Agreement</u>. Each of the Credit Documents shall constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms. The Credit Documents have been or will be properly executed and delivered to the Lender by the Debtor, no later than one business day after entry of this Interim Financing Order. Unless

otherwise consented to in writing by the Oversight Board, the rights, remedies, powers, privileges, liens, and priorities of the Lender provided for in this Interim Financing Order, the Credit Documents, or otherwise shall not be modified, altered, or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of adjustment in this Title III Case, by the dismissal of this Title III Case or in any subsequent case under PROMESA unless and until the obligations arising under the Facility have first been indefeasibly paid in full in cash and/or completely satisfied and any commitments of the Lender terminated in accordance with the Credit Documents.

17. <u>Subsequent Reversal or Modification</u>. This Interim Financing Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the Lender all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Financing Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the Lender, prior to the date of receipt by the Lender of written notice of the effective date of such action, or (b) the validity and enforceability of any lien or priority authorized or created for the benefit of the Lender under this Interim Financing Order or pursuant to the Credit Documents. Notwithstanding any such reversal, stay, modification or *vacatur*, any postpetition indebtedness, obligation or liability incurred by the Debtor to the Lender prior to the receipt of written notice by the Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Financing Order, and the Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the Credit Documents with respect to all such indebtedness, obligations or liability.

18. <u>Dismissal</u>. Except as otherwise provided herein, (a) the protections afforded under this Interim Financing Order, and any actions taken pursuant thereto, shall survive the entry of an order dismissing this Title III Case, and (b) the Liens and the Superpriority Claim shall continue in this Title III Case or after any such dismissal. Except as otherwise provided herein, the Liens, and the Superpriority Claim shall maintain their priorities as provided in this Interim Financing Order and the Credit Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or dismissal of this Tile III Case, or by any other act or omission until all obligations for amounts borrowed under the Facility are indefeasibly paid in full in cash and completely satisfied, and any commitments of the Lender under the Credit Documents are terminated in accordance therewith. This Court shall retain jurisdiction, notwithstanding any such dismissal, for purposes of enforcing the Liens and the Superpriority Claim.

19. <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of any of the Credit Documents, the Urgent Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Financing Order, on the other hand, except to the extent such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the Credit Documents (or words of similar import), the terms and provisions of this Interim Financing Order shall govern.

20. <u>Adequate Notice</u>. The notice given by the Debtor of the Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 and Local Bankruptcy Rule 4001-2. Such notice was good and sufficient under the particular circumstances and no other or further notice of the request for the relief granted at the Hearing is required.

13

21. <u>Immediate Binding Effect; Entry of Interim Financing Order</u>. This Interim Financing Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Financing Order on the Court's docket in this Title III Case.

22. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Financing Order.

23. <u>Final Hearing</u>. The Final Hearing shall be held before the Court on _____, 2018 at ____ in Courtroom __ at the United States Bankruptcy Court, _____.

24. <u>Service</u>. Service of this Interim Financing Order and notice of the Final Hearing shall be made on (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtor's bonds; (c) any party that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (d) counsel to the statutory committee appointed in the Title III Case; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to AAFAF; (g) the Puerto Rico Department of Justice; the Puerto Rico Treasury Department; (h) the Other Interested Parties;[5] and (i) all parties filing a notice of appearance in this Title III Case.

25. <u>Objection</u>. Any objections to entry of the Final Financing Order shall be filed on or before 5:00 p.m., prevailing Eastern Time, on February 1, 2018, and shall be served on: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or

14

agents, as applicable, for the Debtor's bonds; (c) any party that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (d) counsel to the statutory committee appointed in the Title III Case; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to AAFAF; (g) the Puerto Rico Department of Justice; the Puerto Rico Treasury Department; (h) the Other Interested Parties;[6] and (i) all parties filing a notice of appearance in this Title III Case.  In the event no objections to entry of the Final Financing Order are timely received, the Court may enter such Final Financing Order without the need for the Final Hearing.

Dated: _____, 2018

           HONORABLE LAURA TAYLOR SWAIN
           UNITED STATES ~~BANKRUPTCY~~ DISTRICT COURT JUDGE

---

[5] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtor and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtor.

[6] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtor and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtor.

Document comparison by Workshare Compare on Friday, February 02, 2018 11:51:46 AM

| Input: | |
|---|---|
| Document 1 ID | file://\\na.proskauer.com\firm\Home\NY3\2590\My Documents\33260.022 - PREPA\PREPA - DIP Objections\Revised DIP Order.docx |
| Description | Revised DIP Order |
| Document 2 ID | \\na.proskauer.com\firm\Home\NY3\2590\My Documents\33260.022 - PREPA\PREPA - DIP Objections\Scope\Reply 2.2.18 11AM\Ex A. Revised DIP Order.docx |
| Description | \\na.proskauer.com\firm\Home\NY3\2590\My Documents\33260.022 - PREPA\PREPA - DIP Objections\Scope\Reply 2.2.18 11AM\Ex A. Revised DIP Order.docx |
| Rendering set | Standard |

| Legend: |  |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 9 |
| Moved from | 0 |

| Moved to | 0 |
|---|---:|
| Style change | 0 |
| Format changed | 0 |
| Total changes | 12 |

Case:17-03283-LTS Doc#:2367-2 Filed:02/02/18 Entered:02/02/18 13:22:07 Desc: Exhibit B Page 17 of 17