**Bankruptcy Rule 4001 Concise Statement**

In accordance with Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2, below is a summary of selected terms of the Facility, together with references to the applicable sections and provisions of the Financing Order and the Credit Documents.[1]

| Material Term | Summary |
|---|---|
| **Borrower** | The Puerto Rico Electric Power Authority, Title III debtor |
| **Lender** | The Commonwealth of Puerto Rico, Title III debtor |
| **Oversight Board** | Financial Oversight and Management Board for Puerto Rico |
| **Revolving Facility** | A senior secured priming super-priority revolving credit loan facility in an aggregate amount at any one time outstanding of not in excess of $1.3 billion (subject to further approval by necessary governmental action of the Lender for any amounts in excess of $550 million), subject at any time to the then applicable Commitment of the Lender (the "Facility"). <br><br> Agreement: § 1 (Definitions of "Revolving Credit Commitment"; "Acceptable Security Interest") and 7-1; Order ¶ 2.[2] |
| **Commitment of the Lender** | The aggregate revolving credit commitment of the Lender shall, on the effective date, be in an amount not to exceed $550 million, which may be increased subject to the following (the "Step Increase Requirements"): each such increase shall be (a) approved by the Lender and the Oversight Board in advance in writing and made in increments of $250 million each (each, a "Step Increase") not to exceed the maximum amount of $1.3 billion, and (b) approved by necessary governmental action of the Lender in an amount not to exceed $1.3 billion (the "Commitment"). For the avoidance of doubt, each Step Increase will require the approval of the Lender and the Oversight Board, but will not require the approval of the Title III Court. <br><br> Agreement: § 1 (Definition of "Revolving Credit Commitment"); 2-1; Order ¶ 2. |
| **Availability** | At any given time, the then applicable Commitment minus the Loans |

---

[1] The summaries contained in this summary are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this Urgent Motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in the summary chart but not otherwise defined have the meanings given to them in the Financing Order or the Credit Documents, as applicable.

[2] References to the Order refer to the revised proposed Financing Order filed as Exhibit A to the Oversight Board's reply brief in support of its motion to clarify the interim hearing on The Post-Petition Financing Motion [ECF No. 600-1].

| Material Term | Summary |
|---|---|
| | outstanding as of that time (the "Availability"). |
| | Until the earlier of (a) the Maturity Date; provided that unless extended by necessary governmental action new borrowings shall not be available after June 30, 2018 and (b) the Termination Date (as defined below) and so long as no default or event of default exists under the Facility that has not been cured or waived, upon satisfaction or waiver of the conditions precedent to loans as set forth in the final documentation for the Facility (collectively the "Credit Documents"), revolving loans under the Facility ("Loans") shall be available to the Debtor; provided that the Loans in the aggregate at any one time outstanding shall not exceed the then applicable Commitment as approved by the Lender and the Oversight Board as set forth above (including any then-approved Step Increase); provided, however, upon 60 days' notice to the Debtor, if cash in the Puerto Rico Department of Treasury's Treasury Single Account is projected to fall below $800 million during such 60-day period and no third-party source of capital (e.g. a community disaster loan under the Stafford Act (42 U.S.C. § 5121 *et seq.*,) ("CDL")) is available to the Lender (a "Commonwealth Financing"), no further Loans shall be available under the Facility unless otherwise agreed to by the Lender with the consent of the Oversight Board. |
| | Subject to the terms and conditions of the final documentation for the Facility, the Loans may be borrowed, repaid and borrowed and shall be available upon entry of the Financing Order confirming the provisions set forth in "Security and Priority" below, including granting to the Lender a perfected first priority priming lien on all Revenues for the full amount of all obligations under the Facility and otherwise in form and substance satisfactory to the Lender, the Oversight Board, and the Debtor; provided that, the amounts available under the Facility shall not exceed the Availability of the Lender as described above. |
| | Agreement: § 1 (Definitions of "Revolving Credit Commitment"; "Suspension Event"), Article 2; Article 3; § 7-1; Order ¶ 2. |
| **Security and Priority** | All obligations under the Facility shall constitute a superpriority administrative claim in the Title III Case pursuant to 11 U.S.C. § 364(c)(1) and shall be secured by a perfected first priority priming security interest in all Revenues (as defined in the Trust Agreement) pursuant to 11 U.S.C. § 364(d). |
| | All payments under the Facility shall be payable from the General Fund (as defined in the Trust Agreement) at the level of Current Expenses under the Trust Agreement and, upon confirmation of a plan of adjustment, as a superpriority administrative claim and, subject to the |

2

| Material Term | Summary |
|---|---|
|  | Carve Out (as defined below) before payment or distribution on other administrative claims and pre-petition claims (including those for Current Expenses) and senior to the repayment of the Power Revenue Bonds.<br><br>The security interests, liens and superpriority administrative claim will be subject only to a carve-out for professional fees and costs of administration incurred during the Title III Case (as defined below) of the Debtor (as approved by the Court), any state matching requirements of Federal grants and loans and certain fees due and owing to the Office of the United States Trustee as set forth in the Title III Order (collectively the "Carve Out").<br><br>Agreement: § 2-6; § 7-1; Order ¶ 7,8. |
| **Use of Proceeds** | The proceeds of the Loans shall be used to pay expenses relating to the Debtor's operations including, without limitation, employee payroll and benefits, facilities maintenance costs that are not capital expenditures or infrastructure improvements, and normal operational materials, supplies, fuel and power supplies, vendor, and services payments (collectively, "Eligible Uses") provided, in the event Commonwealth Financing becomes available, proceeds of such Commonwealth Financing may be used to reimburse amounts expended for Eligible Uses from September 6, 2017 until the funding of the Loans, if such Commonwealth Financing permits such reimbursement.<br><br>Agreement: §4-13 Order ¶ 10. |
| **Adequate Protection** | Order ¶ 11. |
| **Ineligible Uses** | Unless otherwise specifically consented to in writing by the Lender and the Oversight Board, the proceeds of the Loans shall not be used for debt service (including payment of any debt existing prior to the effective date of the Facility); capital improvements; repair or restoration of damaged public facilities; paying the non-federal share of any Federal program; tax refunds; lobbying; Title III costs including but not limited to judgments arising from Title III cases and related cases, and legal or advisory fees; deposits, transfers, or payments to accrual accounts, reserve funds, or contingency accounts that do not represent an actual, immediate cash disbursement to continue current government operations for essential services; administrative costs of Federal disaster assistance grants and loans; or disaster related expenditures eligible for reimbursement from FEMA or any other federal entity; any expense that is not a "Current Expense" under the Trust Agreement; or any expenses not authorized by Joint Resolution 16-2018 of the legislature of Puerto Rico (collectively, the "Ineligible Uses"). For the avoidance of doubt, none of the proceeds of the Loans shall be used for the |

3

| Material Term | Summary |
|---|---|
| | payment of Professional Fees but may be paid from other sources of funds.<br><br>Agreement: § 4-13. |
| **Budget** | Subject to the limitations on use of proceeds set forth in the Agreement, the Loans shall be available to fund disbursements consistent with the Debtor's 13-week cash-flow budget setting forth all projected cash receipts and cash disbursements on a weekly basis for the Debtor as approved by the Lender and the Oversight Board (the "Initial 13-Week Budget," and together with any updated 13-Week Budget approved by the Lender, the "13-Week Budget") and thereafter the 13-Week Budget.<br><br>Disbursements for Eligible Uses (other than disbursements that are to be paid from funds provided by FEMA or any other federal entity that have been obligated, which shall not be subject to the test or limited by the 13-Week Budget) may only exceed those set forth in the applicable 13-Week Budget for any cumulative four-week period (beginning with the period ending after the first full four-week period after the Facility is entered into) for Eligible Uses by 15% in the aggregate (the "Eligible Uses Variance").<br><br>All disbursements for Ineligible Uses (other than Ineligible Uses that are subject to the Carve Out or any FEMA reimbursable expense for contracts that have been obligated by FEMA and approved by the Oversight Board, which uses shall not be subject to the test or limited by the 13-Week Budget) may only exceed those set forth in the applicable 13-Week Budget for any cumulative four week period (beginning with the period ending after the first full four week period after the Facility is entered into) for Ineligible Uses by 15% in the aggregate (the "Ineligible Uses Variance").<br><br>The Debtor shall update the Initial 13-Week Budget no later than the Friday of the second week after the Initial Draw and every four weeks thereafter (the "Regular Updates") and submit such updated 13-Week Budget to the Lender and the Oversight Board.  Unless objected to by the Lender and the Oversight Board pursuant to the following provision, such updated 13-Week Budget pursuant to a Regular Update shall be the 13-Week Budget for all purposes under the Facility commencing on the first day of the period set forth in such updated 13-Week Budget.  The Lender and the Oversight Board shall have until noon on the 14th calendar day after receipt of the Regular Update to approve or object to a Regular Update.  If either the Lender or the Oversight Board objects, the prior 13-Week Budget shall remain in effect until the end of the 13-week period, or the Debtor submits a revised budget that is not objected to by the Lender or the Oversight |

4

| Material Term | Summary |
|---|---|
| | Board.<br><br>Agreement: § 1 (Definitions of "Budget"; "Eligible Use Variances"; "Ineligible Use Variances"); 5-6; Order ¶ A. |
| **Voluntary Prepayments** | The Loans shall be prepayable by the Debtor in whole or in part at any time without premium or penalty.<br><br>Agreement: § 2-2. |
| **Mandatory Prepayments** | Promptly upon the receipt of any Revenues, the Debtor shall apply such Revenues to the repayment of the outstanding Loans; provided, that the Debtor may retain Revenues sufficient to (i) pay budgeted expenses for Ineligible Uses provided for in the 13-Week Budget, expenses for Ineligible Uses that are subject to the Carve Out, or any FEMA reimbursable expense for contracts that have been obligated by FEMA and approved by the Oversight Board and (ii) maintain an operating reserve of up to $300 million (which funds can be used at the discretion of the Debtor for expenses for Eligible Uses provided for in the 13-Week Budget or for expenses for Ineligible Uses provided for in the 13-Week Budget, expenses for Ineligible Uses that are subject to the Carve Out, or any FEMA reimbursable expense for contracts that have been obligated by FEMA or any other federal entity and approved by the Oversight Board).<br><br>Agreement: § 2-6. |
| **Maturity Date** | The Maturity Date of the Facility shall be the 30th anniversary of the effective date of the Facility.<br><br>Agreement: Article 1 (Definition of "Maturity Date"). |
| **Termination Date** | The Termination Date shall occur on the earliest of (i) the date on which all the Loans and other obligations thereunder have been indefeasibly repaid in full in cash (and the Commitment has been terminated), (ii) the effective date of a confirmed plan of adjustment in the Title III Case (unless an alternative treatment is agreed to by the Lender and consented to by the Oversight Board), and (iii) the date of termination of the Commitment and/or acceleration of any outstanding extensions of credit under the Facility following the occurrence and during the continuance of an Event of Default (as defined below).<br><br>Agreement: Article 1 (Definition of "Termination Date"); Order ¶ 5. |
| **Modification of Automatic Stay** | Order ¶ 14. |
| **Interest Rate** | All Loans shall bear interest in the following amounts on the following schedule commencing on the effective date of the Facility according to the following schedule: |

5

| Material Term | Summary |
|---|---|
|  | <table><tr><td>Interest Period</td><td>Interest Rate</td></tr><tr><td>First Semi-Annual Period</td><td>0.00%</td></tr><tr><td>Second Semi-Annual Period</td><td>0.50%</td></tr><tr><td>Third Semi-Annual Period</td><td>1.00%</td></tr><tr><td>Fourth Semi-Annual Period</td><td>1.50%</td></tr><tr><td>Fifth Semi-Annual Period</td><td>2.00%</td></tr><tr><td>Sixth Semi-Annual Period</td><td>2.50%</td></tr><tr><td>Thereafter</td><td>3.00%</td></tr></table><br>In addition, in the event the Lender funds any Loans with proceeds of a Commonwealth Financing, the interest rate on such Loans shall automatically step-up to be equal to the interest rate on such Commonwealth Financing (the "Step-Up"). In the event of a Step-Up, interest shall be payable on the same interest payment dates provided for in the Commonwealth Financing.<br><br>Agreement: §2-7. |
| **Events of Default** | "Events of Default" under the Credit Documents shall include (i) the failure by the Debtor to pay, when due and payable, all or any portion of the obligations consisting of principal, interest, fees, or charges due to the Lender under the Facility, and (ii) after 30-days' written notice, any breach of material covenants that have not been cured or waived.<br><br>Upon an Event of Default, the Lender shall have the right to declare the Commitment terminated and/or to accelerate the repayment obligations under the Facility.<br><br>Agreement: Articles 8 and 9; Order ¶ 5. |
| **Other Provisions per Rule 4001(c)(1)(B), Not Applicable to the Facility** | -Determination of validity of prepetition claims or liens<br>-Waiver of plan, exclusivity, 363/364 rights<br>-Establishment of plan milestones<br>-Releases of claims<br>-Indemnification<br>-Liens on causes of action under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) |