**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>This document relates to PREPA Title III case only |

**REPLY OF THE AD HOC GROUP OF GENERAL
OBLIGATION BONDHOLDERS IN SUPPORT OF URGENT
<u>CROSS-MOTION, IN THE ALTERNATIVE, TO INTERVENE</u>**

The Ad Hoc Group of General Obligation Bondholders (the "<u>GO Group</u>")[2] hereby submits this reply in response to the *PREPA Opposition to Cross-Motions to Intervene filed by*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Ad Hoc Group of General Obligation Bondholders and Ambac Assurance Corporation* (Dkt. 618)[3] (the "Opposition" or "Opp."), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and in support of the GO Group's *Urgent Cross-Motion, in the Alternative, to Intervene* (Dkt. 566) (the "Intervention Motion") with respect to proceedings relating to the *Urgent Joint Motion of the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final Orders (A) Authorizing Postpetition Secured Financing, (B) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* (Dkt. 549) (the "Loan Motion"), and, in support of this reply, respectfully states as follows.

---

[2] Members of the GO Group file this reply exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

[3] "Dkt." refers to documents filed on the docket of Case No. 17 BK 4780-LTS.

# **TABLE OF CONTENTS**

                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

I.     THE DEFENSE OF THE PROPOSED LOAN IS MERITLESS ..................................... 3

II.    THE COURT SHOULD CONSIDER THE GO GROUP'S OBJECTION ........................ 5

        A.    The Proposed Order Threatens Direct Prejudice To The GO Group ...................... 5

                1.    The Oversight Board Has Implicitly Conceded That The Proposed Order Threatens Direct Prejudice ............................................... 5

                2.    The Express Terms Of The Proposed Order Threaten Direct Prejudice ......................................................................................... 6

                3.    Section 363 Of The Bankruptcy Code And Section 305 Of PROMESA Are Beside The Point ............................................... 8

        B.    The GO Group Is A "Party In Interest" Under Bankruptcy Code Section 1109(b) ................................................................................................ 10

        C.    In The Alternative, The Court Should Allow The GO Group To Intervene Pursuant To Bankruptcy Rule 2018(a) ................................................ 11

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F.3d 23 (1st Cir. 2004) ................................................................................................. 8

*In re Amatex Corp.*,
755 F.2d 1034 (3d Cir. 1985) ............................................................................................ 11

*In re ANC Rental Corp.*,
277 B.R. 226 (Bankr. D. Del. 2002) .................................................................................. 10

*In re City of Stockton, Cal.*,
486 B.R. 194 (Bankr. E.D. Cal. 2013) ................................................................................ 8

*In re Hyde Park P'ship*,
73 B.R. 194 (Bankr. N.D. Ohio 1986) ............................................................................... 12

*In re Ionosphere Clubs, Inc.*,
101 B.R. 844 (Bankr. S.D.N.Y. 1989) ............................................................................... 12

*In re Pub. Serv. Co. of New Hampshire*,
88 B.R. 546 (Bankr. D.N.H. 1988) .................................................................................... 11

*In re Refco Inc.*,
505 F.3d 109 (2d Cir. 2007) .............................................................................................. 10

*In re Terrestar Networks, Inc.*,
No. 10-15446, 2013 WL 781613 (Bankr. S.D.N.Y. Feb. 28, 2013) ................................... 10

*Manufacturers Trust Co. v. Kelby*,
125 F.2d 650 (2d Cir. 1942) .............................................................................................. 12

**Statutes and Rules**

11 U.S.C. § 1109 .................................................................................................................... 2

11 U.S.C. § 1109(b) ................................................................................................. 5, 10, 11, 13

11 U.S.C. § 1129 ................................................................................................................. 9, 11

11 U.S.C. § 1129(a)(6) .......................................................................................................... 11

11 U.S.C. § 362(d)(1) ............................................................................................................. 9

11 U.S.C. § 363 ............................................................................................................... 2, 8, 9

## TABLE OF AUTHORITIES—CONTINUED

**Page(s)**

11 U.S.C. § 364 .................................................................................................... 2, 4, 5, 6

11 U.S.C. § 549 ............................................................................................................. 7

11 U.S.C. § 549(a)(2)(B) .............................................................................................. 9

11 U.S.C. § 926 ............................................................................................................. 7

11 U.S.C. § 926(a) .................................................................................................. 9, 11

PROMESA § 304(f) ..................................................................................................... 1

PROMESA § 305 ................................................................................................. 2, 8, 9

Fed. R. Bankr. P. 2018(a) ........................................................................... 5, 11, 12, 13

## INTRODUCTION

The Oversight Board cut a deal with itself for the Commonwealth to finance PREPA (the "Proposed Loan"), reasoning that sitting on both sides of the table is fine because the entities are "integral components of one economy." Opp. 3. But see PROMESA[4] § 304(f) ("[N]othing in this title shall be construed as authorizing substantive consolidation of the cases of affiliated debtors."). Rather than acknowledge that this self-dealing should be subjected to searching review by this Court—a step that would make abundant sense, given the Board's palpable conflict of interest in representing both sides of the transaction—the Board has sought to constrain this Court's inquiry at every turn. First, in the Loan Motion itself, the Board sought authorization for PREPA to accept the Commonwealth's offer of financing but pointedly did *not* seek authorization for the Commonwealth to extend it. Then the Board "improperly" sought to limit what objectors to the deal could say. Order (Dkt. 616) (denying motion). Now, the Board seeks to limit who may object. This latest maneuver to evade accountability lacks any legal basis. The Court should reject it.

Preliminarily, the Proposed Loan is exactly what one would expect of a deal imposed on the Commonwealth and its creditors by force. It is enormous (up to $1.3 billion); its proceeds may be used to pay PREPA's creditors at the discretion of the Oversight Board and AAFAF; it is secured by a lien against only a portion of PREPA's assets; and its repayment is subordinate to numerous uncapped expenses. To all of this, the Oversight Board responds with either silence (as with the loan proceeds) or red herrings (as with the security). This halfhearted defense of the Proposed Loan's fairness to the Commonwealth only confirms that the loan's terms are indefensible.

---

[4] The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016) (codified at 48 U.S.C. §§ 2101-2241).

Equally problematic is the Oversight Board's gambit to shield the sweetheart terms of the Proposed Loan from legal challenge. Commonwealth creditors like the GO Group have certain rights to challenge the Proposed Loan, should it take place, despite PROMESA § 305 and the inapplicability of 11 U.S.C. § 363. Thus, in its Intervention Motion, the GO Group sought a simple assurance—that any order entered in *PREPA's* Title III case would not prejudice the rights of the *Commonwealth*'s creditors down the line. But the Board refused. To the contrary, it is asking the Court to impose what appears to be a broad prohibition against anyone using any means to challenge the Proposed Loan. This purported bar to legal action does not serve the Oversight Board's professed goal of satisfying the requirements of 11 U.S.C. § 364, to say nothing of the Oversight Board's duties to the Commonwealth and its creditors. Its sole apparent purpose is to undermine the rights of Commonwealth creditors like the GO Group.

Because the Oversight Board seeks to directly undermine the GO Group's rights, the Court should consider the GO Group's objection to the Loan Motion. The Board argues that the GO Group is a "creditor of a creditor" of PREPA and thus not entitled to be heard under 11 U.S.C. § 1109. The "creditor of a creditor" limitation does not apply here, however, because the GO Group seeks to defend rights personal to it, not the rights of the Commonwealth. Should the Court disagree, it nonetheless should permit the GO Group to intervene. The Oversight Board's lone argument to the contrary is an unsupported assertion that intervention would cause undue delay and prejudice. But it would cause neither—the GO Group will litigate within the existing timetable for the Loan Motion, and the GO Group would not needlessly multiply objections. The Court should grant the Intervention Motion.

**ARGUMENT**

I.     **THE DEFENSE OF THE PROPOSED LOAN IS MERITLESS**

Despite insisting that the issue is irrelevant (Opp. 2, 4-5), the Oversight Board argues that the Proposed Loan is fair to the Commonwealth (Opp. 3-4, 7-8). But the Oversight Board comes nowhere close to supporting its point. To the contrary, as the Oversight Board acknowledges in a momentary blip of candor, "the Commonwealth *could have* sought to leverage its bargaining position for its own benefit[,] [b]ut it *did not do so*." Omnibus Reply (Dkt. 617) ¶ 44 (emphasis added). This admission highlights the crux of the problem: Facing a fundamental conflict of interest as the representative of both sides of the proposed transaction, the Oversight Board has elected *not* to defend the interests of the Commonwealth and its creditors. It has instead chosen to prefer the interests of PREPA, a legally distinct entity with its own assets and creditors, for the sake of expediency and political advantage.

For starters, the Oversight Board nowhere mentions, much less defends, some of the Proposed Loan's most egregious terms. A key example is the uses to which PREPA may put proceeds of the Proposed Loan. The point of debtor-in-possession financing is to keep the debtor operating. The Proposed Loan goes far beyond that, allowing PREPA to use proceeds for a wide variety of "Ineligible Uses"—including *paying PREPA's bondholders*—if the Commonwealth and Oversight Board so desire. Intervention Motion at 7. The Oversight Board not only ignores this vice but tells the Court the opposite. Omnibus Reply (Dkt. 617) ¶ 5 (stating that the Proposed Loan "restricts PREPA to using the financing for Eligible Uses"); ¶ 23 & n.8 (similar) That assertion is false on the very face of the documents.

The Oversight Board does attempt to defend two of the Proposed Loan's terms—interest and security. Both attempted defenses miss the point.

3

Regarding interest, the Oversight Board concedes that the Proposed Loan carries a rate of *zero percent*, which increases over three years to three percent. Omnibus Reply (Dkt. 617) ¶ 5. But this is fine, the Board says, because "the Commonwealth, like any depositor, cannot earn more than approximately 1% or 2% on the money in today's interest rate environment." *Id.* ¶ 49. That might make sense if lending to PREPA were like putting money in an FDIC-insured savings account or other safe investment. But it is not. As the Board itself acknowledges, PREPA is a financial and operational basket case. *E.g.*, Loan Motion ¶¶ 14-24. Of course, interest exists largely to compensate the lender for risk. The below-market rates on the Proposed Loan do not compensate the Commonwealth for PREPA's risk.

Regarding security, the Oversight Board touts that the Commonwealth's "superpriority rights and priming liens" under the Proposed Loan are the "maximum protections" available under 11 U.S.C. § 364. Opp. 7. But that assertion is completely meaningless because those protections cover only a fraction of PREPA's property. The protections in the Proposed Loan apply only to "Revenues," which fall well short of all of PREPA's property. Intervention Motion at 8. Furthermore, the Commonwealth will not begin to be repaid until PREPA has amassed more than $800 million to fund reserves and budgeted expenses. *Id.* at 9. The Oversight Board does not even acknowledge these deficiencies.

Finally, it is shameful for the Oversight Board to suggest that the GO Group's objection ignores "the welfare of the people of Puerto Rico." See Opp. 3. The GO Group is deeply and literally invested in Puerto Rico's future. And we have stated clearly that we "*do[] not* object to PREPA obtaining financing to meet a demonstrated need, from an appropriate source, and on commercially reasonable terms." Intervention Motion at 1. The problem is that the terms of the Proposed Loan are patently harmful to the Commonwealth, the entity ultimately responsible for

4

the island's well-being. It is the Oversight Board, which appears dead-set on handing out free Commonwealth money to a financially distressed instrumentality (which it later intends to sell to private parties), that lacks proper regard for the welfare of Puerto Rico's citizens.

## II.  THE COURT SHOULD CONSIDER THE GO GROUP'S OBJECTION

The GO Group, as a creditor of the Commonwealth, may challenge the Proposed Loan (should it take place) in numerous ways in the Commonwealth's Title III case. The Loan Motion, however, asks the Court to enter an order that, even as revised, seeks to impair the GO Group's future arguments. Because the Loan Motion could directly prejudice the GO Group's rights in this way, the Court should consider the GO Group's objection, whether under Section 1109(b) of Title 11 of the U.S. Code (the "Bankruptcy Code") or under Rule 2018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[5]

### A.  The Proposed Order Threatens Direct Prejudice To The GO Group

#### 1.  The Oversight Board Has Implicitly Conceded That The Proposed Order Threatens Direct Prejudice

To see that the Proposed Order, even as revised,[6] threatens direct prejudice to the GO Group, one need look no further than what the Opposition does *not* say.

The Intervention Motion urged the Oversight Board to add something to the Proposed Order: "a provision stating that the Court's approval of the Proposed Loan *from PREPA's*

---

[5] The Oversight Board is wrong to claim (Opp. 4-5) that the GO Group lacks standing because the Loan Motion concerns application of only 11 U.S.C. § 364. The Court has already rejected the Board's effort to limit objections to the application of Section 364. Order (Dkt. 616). In any event, the GO Group's objection is that the Proposed Order concerns much more than the application of Section 364.

[6] The Intervention Motion defined the Proposed Order as the order attached to the Loan Motion (Dkt. 549-1). Since the Intervention Motion was filed, the Oversight Board has (i) submitted a revised Proposed Order (Dkt. 600-1) and then (ii) stated that it has agreed to make certain further revisions (Dkt. 617 ¶ 2), which it will embody in a further-revised Proposed Order to be filed by February 15 (*id.* ¶ 55). We refer to this to-be-filed Proposed Order as the "revised Proposed Order."

5

*perspective* will not in any way prejudice or affect any rights or remedies that creditors of the Commonwealth may assert in connection with the Commonwealth's decision to enter into the Proposed Loan or the implementation thereof." Intervention Motion at 6-7; see *id.* at 14-15. The Oversight Board would add this provision were it serious about assuring that the Proposed Order has "no impact on the legal interests of" the GO Group. See Opp. 10. But the Oversight Board has not added this provision. Nor, tellingly, has it justified its decision to exclude it.

The Oversight Board's rejection of the anti-prejudice provision speaks volumes about the Proposed Order. The proposed provision would have no effect whatsoever on approval of the Proposed Loan under 11 U.S.C. § 364, which the Board claims is its only goal. Opp. 4-5. Indeed, the provision would only make clear what the Board says is already true—that the Proposed Order would not prejudice the rights of the GO Group or other Commonwealth creditors. The Oversight Board's rejection of the provision thus leads ineluctably to one conclusion: The Proposed Order *could* prejudice the GO Group and, indeed, is designed to do just that.

By rejecting the anti-prejudice provision that the GO Group proposed, the Oversight Board has implicitly conceded that the revised Proposed Order stands to prejudice the GO Group. That alone suffices for the Court to entertain the GO Group's objections to the revised Proposed Order.

> **2. The Express Terms Of The Proposed Order Threaten Direct Prejudice**

What the Proposed Order, even as revised, *does* say confirms that it threatens direct prejudice to the GO Group. Two of the provisions to which the GO Group has objected remain in the revised Proposed Order. And they are prejudicial; the Oversight Board's arguments to the contrary are wrong.

6

*First*, the revised Proposed Order purports to insulate the Proposed Loan from subsequent legal challenge:

> All obligations under the Credit Documents shall constitute valid and binding obligations of the Debtor in accordance with the terms of the Credit Documents and the terms of this Interim Financing Order, and *no obligation, payment, transfer*, or grant of a lien or security interest *under the Credit Documents* or this Interim Financing Order *shall be* stayed, restrained, voidable, or recoverable under PROMESA, the Bankruptcy Code, or under any applicable law or *subject to any* avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other *challenges under PROMESA, the Bankruptcy Code, or any applicable law* or regulation *by any person or entity*.

Dkt. 600-1 ¶ 4 (emphasis added). The emphasized language reveals an anti-suit clause of sweeping breadth: "[N]o obligation, payment, [or] transfer . . . under the Credit Documents . . . shall be . . . subject to any . . . challenges under PROMESA, the Bankruptcy Code, or any applicable law . . . by any person or entity." One might argue that this language, if so-ordered, would forestall actions such as avoidance of the Proposed Loan. See, *e.g.*, Intervention Motion at 13 (explaining how Sections 549 and 926 of the Bankruptcy Code, incorporated into PROMESA, may lead to avoidance).

The Oversight Board claims that this provision in paragraph 4 threatens no prejudice to Commonwealth creditors. Specifically, it claims that paragraph 4 merely "protects payments made to the Commonwealth by PREPA from being attacked." Opp. 6; accord Opp. 10. That claim assumes that "of the Debtor," in the second line of the block quote above, limits "obligation, payment, [or] transfer" in lines 3-4. See Opp. 6. But that reading is far from clear, given that the provision we have highlighted is not limited to obligations "of the Debtor." Rather, that language appears in an independent clause that precedes the "obligation[s],

7

payment[s], [or] transfer[s]" that are shielded from legal challenge. For that reason, paragraph 4 could well be construed in a way that would prejudice the GO Group.[7]

*Second*, the Revised Proposed Order states that PREPA "has an immediate need to obtain the financing under" the Proposed Loan. Dkt. 600-1 ¶ A. The Oversight Board argues that this provision cannot prejudice Commonwealth creditors because it "has nothing to do with the Commonwealth." Opp. 6; accord Opp. 10. Not so. As the GO Group has explained, this language could undermine certain arguments that the GO Group could make, including upon confirmation of a plan of adjustment for the Commonwealth. Intervention Motion at 13-14. Indeed, unless the Proposed Order is modified to make clear that it has no effect on creditors in the Commonwealth's case, one would expect a judicial finding that PREPA urgently needs the Commonwealth's financing to be the Oversight Board's first line of defense if Commonwealth creditors later challenge the transaction as an "overreaching" giveaway of the Commonwealth's assets. See *In re City of Stockton, Cal.*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013).

### 3. Section 363 Of The Bankruptcy Code And Section 305 Of PROMESA Are Beside The Point

The Oversight Board argues more broadly that nothing about the Proposed Loan *could* prejudice the GO Group in a legally cognizable way. PROMESA, the Board notes, does not incorporate Section 363 of the Bankruptcy Code, which requires a debtor-in-possession to obtain court approval for certain uses of property. Opp. 2-3, 4, 7. To the contrary, the Board says, PROMESA Section 305 generally bars the Court from interfering with a debtor's use of its property. *Id.* The Oversight Board thus implies that the effect of the Proposed Loan on the

---

[7] Should the Court deny the Intervention Motion, the Oversight Board should be judicially estopped from later asserting that the Court should construe paragraph 4 differently. See, *e.g.*, *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (explaining operation of judicial estoppel).

Commonwealth and its creditors is legally irrelevant. The Commonwealth could simply give money to PREPA, or burn it, and the Court could do nothing about that.

This argument fails on two independent levels. First, the Intervention Motion concerns not the Proposed Loan itself but certain terms of the Proposed Order that could undermine actions the GO Group could take in the future. The provisions on which the Oversight Board relies do not authorize one debtor to prejudice another debtor's creditors in this way.

Second, PROMESA simply does not give the Commonwealth and the Oversight Board carte blanche to dissipate Commonwealth assets however they wish. As the Intervention Motion explains (at 13-14), PROMESA incorporates numerous provisions of the Bankruptcy Code that protect creditors from a bankrupt debtor's efforts to dissipate its own assets. *E.g.*, 11 U.S.C. § 549(a)(2)(B) (permitting avoidance of postpetition transfers not authorized by the Court); *id.* § 926(a) (permitting the Court to appoint a trustee to pursue such an avoidance action upon request of a creditor); *id.* § 362(d)(1) (permitting the Court to grant relief from the automatic stay, enabling creditors to seek relief in forums not subject to PROMESA Section 305); *id.* § 1129 (requiring that a plan of adjustment satisfy numerous requirements that might be affected by a debtor's postpetition uses of property). The absence of Code Section 363, and the presence of PROMESA Section 305, do not bar the GO Group's use of these specific statutory rights.

To the contrary, this Court's expansive understanding of Section 305 demonstrates why safeguarding creditors' specific statutory protections is so critical. If the Oversight Board can sideline the Court during the pendency of the Title III cases by simply refusing to subject its self-dealing to judicial oversight, then creditors will be forced to pursue avoidance actions, stay relief, and confirmation objections just to secure the basic protection against unjustifiable dissipation of resources that is expected in any bankruptcy proceeding. Indeed, if these remedies

9

are rendered unavailable, then Section 305 would effectively be transformed from a limitation on the Court's remedial authority into a license for the Board and the Commonwealth to violate the law with complete impunity. Given the extraordinarily high stakes, the Court should ensure that the rights of Commonwealth creditors are not restrained or affected in any way by an order approving DIP financing in PREPA's Title III case.

### B. The GO Group Is A "Party In Interest" Under Bankruptcy Code Section 1109(b)

The Oversight Board contends that the GO Group may not object as a "party in interest" under 11 U.S.C. § 1109(b) because (i) the revised Proposed Order would not prejudice the GO Group (Opp. 4-8), and (ii) the GO Group is merely a "creditor of a creditor" of PREPA (Opp. 8-9). The first argument is, as explained above, invalid. The second fares no better.

A "creditor of a creditor" generally is not a party in interest insofar as it "seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *In re Refco Inc.*, 505 F.3d 109, 117 n.10 (2d Cir. 2007). To illustrate, say that *B* owes *A* money, and *B* has some right to collect from the debtor, *C*. *A* might wish to appear in *C*'s bankruptcy case to compel *C* to pay *B* (so that *B* has more money with which to pay *A*). In this scenario, what happens in *C*'s bankruptcy case affects *A* only insofar as it affects *B*. Courts have held that a party (like *A*) whose rights derive from those of another party (like *B*) does not qualify as a "party in interest." *E.g.*, *In re Terrestar Networks, Inc.*, No. 10-15446, 2013 WL 781613, at *1 (Bankr. S.D.N.Y. Feb. 28, 2013) (cited at Opp. 8) (denying party-in-interest status to a creditor of a creditor due to the "derivative nature of [its] Claims"); *In re ANC Rental Corp.*, 277 B.R. 226, 232 (Bankr. D. Del. 2002) (cited at Opp. 8) (denying party-in-interest status to creditors because "[t]he rights they assert here are not their own[;] they are the rights of" another).

10

The "creditor of a creditor" principle has no application here because the GO Group seeks to protect *its own* rights, not the Commonwealth's. For example, the GO Group, *not* the Commonwealth, may seek appointment of a trustee to avoid the Proposed Loan. See 11 U.S.C. § 926(a); Intervention Motion at 13. Likewise, the GO Group, *not* the Commonwealth, may object to confirmation of a Commonwealth plan of adjustment that does not satisfy the requirements of 11 U.S.C. § 1129. See Intervention Motion at 14. The rights to take such actions—*not* merely the right of the GO Group to receive payment from the Commonwealth—are the rights that the revised Proposed Order imperils. *Id.* at 12-15. When an action in a bankruptcy case directly threatens a person's legal rights in this way, that person is a party in interest. *E.g.*, *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546, 555 (Bankr. D.N.H. 1988) (holding that a state was a party in interest because it could object to a plan of adjustment under 11 U.S.C. § 1129(a)(6)).

The Oversight Board's argument is therefore inapplicable. The GO Group is a party in interest because it "has a sufficient stake in the outcome of the proceeding so as to require representation." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985).

### C. In The Alternative, The Court Should Allow The GO Group To Intervene Pursuant To Bankruptcy Rule 2018(a)

Should the Court determine that the GO Group is a "party in interest" under 11 U.S.C. § 1109(b) with respect to the Loan Motion, there is no need to proceed further. However, should the Court determine that the GO Group is not a "party in interest," the GO Group respectfully requests that the Court grant it leave to intervene with respect to the Loan Motion. See Fed. R. Bankr. P. 2018(a) ("In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene . . . with respect to any specified matter.").

11

The Oversight Board's argument against intervention, like its Section 1109(b) argument, rests on the premise that the revised Proposed Order would not prejudice the GO Group. Opp. 10. That premise is refuted above. See pp. 5-10, *supra*. The Board's sole remaining argument against intervention is that it would result in undue delay and prejudice. Opp. 10-11. That is incorrect.

The GO Group's intervention would not delay resolution of the Loan Motion at all. The GO Group objected to the Loan Motion at the same time as the other objectors did. It would present argument at the same time as the other objectors will. And this Court has ordered expedited briefing of the GO Group's Intervention Motion precisely to ensure that it is ripe for decision on a timeframe that will allow the GO Group to participate in the litigation on the Loan Motion.

Nor would the GO Group's intervention prejudice the current parties. The Oversight Board complains that intervention would yield "confusion from the presence of too many parties." Opp. 10. The cases it cites, however, say that such "confusion" arises only if the intervenors merely add briefing without bringing "a new approach to the problems in th[e] case." *In re Hyde Park P'ship*, 73 B.R. 194, 197 (Bankr. N.D. Ohio 1986); see *Manufacturers Trust Co. v. Kelby*, 125 F.2d 650, 655 (2d Cir. 1942) ("We cannot see why there should be any undue confusion, if the objectors combine in a single brief as they have upon this appeal."). The opposite is true here—no current party makes anything like the GO Group's arguments. Cf. *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989) ("[I]ntervention [under Rule 2018(a)] . . . should not be given if . . . the intervenor's interests are already adequately represented."). Thus. the Oversight Board has failed to advance any sound basis to reject the GO Group's request to intervene.

12

## **CONCLUSION**

It is not necessary to reach the Intervention Motion because the GO Group is a party in interest with standing pursuant to 11 U.S.C. § 1109(b). Should the Court decide otherwise, the Court should grant the GO Group leave to intervene, pursuant to Bankruptcy Rule 2018(a), for the purpose of objecting to the Loan Motion.

Dated: February 5, 2018                     Respectfully submitted,

/s/ Ramón Rivera Morales                    /s/ Mark T. Stancil
J. Ramón Rivera Morales                     Lawrence S. Robbins (admitted *pro hac vice*)
USDC-PR Bar No. 200701                      Gary A. Orseck (admitted *pro hac vice*)
Andrés F. Picó Ramírez                      Kathryn S. Zecca (admitted *pro hac vice*)
USDC-PR Bar No. 302114                      Mark T. Stancil (admitted *pro hac vice*)
JIMÉNEZ, GRAFFAM & LAUSELL                  Ariel N. Lavinbuk (admitted *pro hac vice*)
P.O. Box 366104                             Donald Burke (admitted *pro hac vice*)
San Juan, PR 00936                          ROBBINS, RUSSELL, ENGLERT, ORSECK,
Telephone: (787) 767-1030                   UNTEREINER & SAUBER LLP
Facsimile: (787) 751-4068                   1801 K Street, N.W., Suite 411-L
Email: rrivera@jgl.com                      Washington, DC 20006
                                            Telephone: (202) 775-4500
                                            Facsimile: (202) 775-4510
                                            Email: mstancil@robbinsrussell.com

                                            /s/ Andrew N. Rosenberg
                                            Andrew N. Rosenberg (admitted *pro hac vice*)
                                            Richard A. Rosen (admitted *pro hac vice*)
                                            Walter Rieman (admitted *pro hac vice*)
                                            Kyle J. Kimpler (admitted *pro hac vice*)
                                            Karen R. Zeituni (admitted *pro hac vice*)
                                            PAUL, WEISS, RIFKIND, WHARTON
                                            & GARRISON LLP
                                            1285 Avenue of the Americas
                                            New York, NY 10019
                                            Telephone: (212) 373-3000
                                            Facsimile: (212) 757-3990
                                            Email: arosenberg@paulweiss.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ Mark T. Stancil  
Mark T. Stancil

14