# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br><br>As representative of<br><br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. | NO. 17-BK-3283 (LTS)<br><br><br><br>PROMESA TITLE III |

## MEMORANDUM BY PLAINTIFFS' CLASS IN SUPPORT OF REQUEST FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO PROMESA'S SECTIONS 4, 7,301(C)(3) AND BANKRUPTCY CODES SECTIONS 362 (D)(1)

A.J. AMADEO MURGA LAW OFFICES
1225 Ponce de León, Ave.
VIG Tower, Suite 904
San Juan, PR 00907-3915
Tel. (787)764-0893

Antonio J. Amadeo Murga
USDC-PR No. 110103
Email: ajamadeo@gmail.com

ORONOZ & ORONOZ
Urb. Torrimar, K-4 Bambú St.
Guaynabo, PR 00966-3109
Tel. (787)294-5255

Mario M. Oronoz Rodríguez
USDC-PR No. 120606
Email: mmo@oronozlaw.com


*Attorneys of the Plantiffs' Class*

**TABLE OF CONTENTS**

I. Factual and Procedural Background…………................................................... 2-5

II. Arguments in Support of Relief from the Automatic Stay…………….…………… 5-10

III. Conclusion and Prayer……………………………………………………………… 10

Certification and Certificate of Service…………………………………………….. 10-11

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 362(a)……………………………………………………………………… 5

11 U.S.C. § 362(d)(1) …………………………………………………………………… 6

11 U.S.C. § 922(a)………………………………………………………………………… 5

42 U.S.C § 1983……………………………………………………………………........ 3

**Cases**

Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,
217 F. Supp. 3d 508 (2016) ………………………………………………………. 5,6

García Rubiera, et al. v. Asociación de Suscripción Conjunta, et al,
K DP2001-1441 (801) ...………………………………………………………….... 2,4,6

García-Rubiera v. Calderón, 570 F3d 443,461 (1st Circuit 2009) ............................... 2,3,8

Gladys García-Rubiera, etc., v. Honorable Luis G. Fortuño, et al, 02-1179 (GAG).........1,7

García-Rubiera v. Fortuño, 665 F.3d 265 (2011) ........................................................ 4,8

García-Rubiera v. Fortuño, 873 F.Supp 2d 421 (2012) .................................................. 4

García-Rubiera v. Fortuño, 727 F.3d 102 (2013) ........................................................ 4,8

García-Rubiera v. Flores Galarza, 516 F.Supp 180 (2007) ........................................... 3

In Re CMC Telecom, Inc., 383 BR 52, 60 ……………………………………………… 7

In Re McDonald, 755 F.2d 715, 717 (9th Cir. 1995) ………………………………….. 6

In re Newpower, 233 F.3d 922 (6th Cir. 2000) ………………………………………… 8

In re Scanlon, 239 F.3d 1195 (11th Cir. 2001) ………………………………………… 7

In re Sonnax Industries, Inc, 907 F.2d 1280, 1285-1286 (2d Cir. 1990) ………….. 6,8,9,10

In re Yarbrough, 540 B.R. 647 …………………………………………………………... 7

T and B Scottdale Contractors, Inc., v. U.S.A., 866 F2d. 1372 (11 Cirth. 1989) ……….. 7

1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | NO. 17-BK-3283 (LTS) |
| As representative of | PROMESA TITLE III |
| THE COMMONWEALTH OF PUERTO RICO, et al., | |
| Debtors. | |

## MEMORANDUM IN SUPPORT OF REQUEST FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO PROMESA'S SECTIONS 4, 7,301(C)(3) AND BANKRUPTCY CODES SECTIONS 362 (D)(1)

To the Honorable United States District Court Judge Laura Taylor Swain:

NOW COME plaintiffs' (the certified class of automobile owners which in Puerto Rico paid the duplicate compulsory insurance premiums required by Law 253 of 1995, for the years 1998-2010 and have not been reimbursed)[1] and pursuant §362 (d)(1) of the Bankruptcy Code respectfully request relief from the automatic stay granted pursuant to PROMESA's § 4,7,301(c)(3), 304(h) and allow plaintiffs' class to enforce the stipulation and judgment for permanent injunction in case 02-1179 (GAG), Gladys García-Rubiera, etc., v. Honorable Luis G. Fortuño, et al[2], declaratory judgment, injunction, civil rights, class action and in case Gladys García Rubiera, et al. v. Asociación de Suscripción[3]

---

[1] The class was certified by the United States District Court pursuant to the Order of the First Circuit Court of Appeals in case García-Rubiera v. Calderón, 570 F3d 443,461 (2009), as well as by the San Juan Superior Court in case García-Rubiera v. AEP, et al., K DP2001-1441 (801) on March 10, 2015.
[2] Attachment No. 1
[3] Attachment No. 2

2

Conjunta, et al, Civil Num. K DP2001-1441 (801).

## I. FACTUAL AND PROCEDURAL BACKGROUND

As explained in more detail in Judge Torruella's opinion in García-Rubiera v. Calderón, 570 F3d 443,461 (1st Circuit 2009), the Commonwealth of Puerto Rico on December 27, 1995, approved Law 253 known as "Compulsory Motor Vehicle Liability Act", whereby all motor vehicle owners were required to pay an annual premium of $99.00 for automobiles and $148.00 for heavy vehicles to answer for property damages caused to other vehicles due to automobile operator's negligence. The insurance coverage started in January 1st,1998.

Although all vehicle owners were obligated to pay the annual premium when they obtained or renewed the vehicle's license, they could also obtain private insurance for better coverage. In such cases, they were exempted from the payment of the annual compulsory premium. If it had been paid, they would be entitled to reimbursement.

Reimbursement procedures did not operate well and as a result, by 2001 they were more than $78,000,000.00 in accumulated duplicate premiums in the Compulsory Liability Underwriting Association of Puerto Rico (JUA). This was an entity created by Law 253 to receive the compulsory premiums collected by the government and distribute them to the different insurance companies that issued the compulsory insurance. It also acted as a residual insurer. In 2001 a group of automobile owners filed an action against JUA in the San Juan Superior Court to compel JUA to proceed with the reimbursement of the accumulated duplicate premiums alleging that JUA had failed to do so and was profiting from the interest generated by the funds (Case García Rubiera v. AEP, et al, K DP2001-1441(801)).

3

Shortly thereafter, the Legislature of Puerto Rico began the process of enacting legislation to have the funds transferred from JUA to the Secretary of the Treasury on the alleged grounds that JUA had failed to act diligently in returning the duplicate premiums to the owners. See Statement of Purposes of Law 210 of September 27, 2002. Under the proposed statute, the Commonwealth of Puerto Rico would take possession of the funds and would proceed to create a procedure to reimburse to the owners. On September 27, 2002 Law 230 was enacted. Under its terms, the accumulated duplicate premiums as well as all future duplicate premiums would be transferred to the Secretary of Treasury. Section 2 of Law 230 provided that:

> "the Secretary of the Treasury shall retain these funds as a trustee for a period of five (5) years from the date in which the retained funds are transferred by the Association to the Secretary of the Treasury… the income generated by these funds shall revert to the general fund of the Commonwealth treasury as they are accrued. The Secretary of the Treasury shall establish a procedure for processing the reimbursement request from any person alleging a right to the retained funds. Once five (5) years elapsed without the consumer claiming the retained funds, they shall become property of the Commonwealth of Puerto Rico".

On February 6, 2002, even before Law 230 had been approved, the same group of automobile owners, represented by the same counsel filed case 02-01179(GAG) in the United States District Court for the District of Puerto Rico for Declaratory Judgement and Injunction under Section 1983, Title 42 U.S.C., to halt the contemplated action of the legislature on the grounds that said proposed statute was unconstitutional. After the legislation was approved, they amended their complaint to seek a determination that the Act was unconstitutional and that the accumulated duplicate premiums should be returned to the owners. After a long protracted litigation involving various appeals, see García-Rubiera v. Flores Galarza, 516 F.Supp 180 (2007); García-Rubiera v. Calderón,

4

570 F3d 443,461 (2009); <u>García-Rubiera v. Fortuño</u>, 752 F.Supp 180, (2010); <u>García-Rubiera v. Fortuño</u>, 665 F.3d 265 (2011); <u>García-Rubiera v. Fortuño</u>, 873 F.Supp 2d 421 (2012); <u>García-Rubiera v. Fortuño</u>, 727 F.3d 102 (2013), the parties reached a settlement.

On February 29, 2016 the certified class of plaintiffs' entered in to a settlement stipulation which was promptly approved, and judgment was entered in United States District Court case 02-1179(GAG). On March 30, 2016 a similar settlement stipulation was entered by the parties in the Commonwealth Court case, Civil K DP2001-1441(801). Judgment was also entered accordingly.

The stipulation in both cases provided a procedure for returning the duplicate compulsory premiums paid by the owners of the certified class during the years 1998-2010, that had not been reimbursed by the Commonwealth of Puerto Rico. The procedure approved in the stipulation and judgment in both cases contemplated giving notice to the owners in a single manner that would apply to both the federal and the Commonwealth civil cases.

The procedure contemplated giving individual notice by first class mail to the affected owners (the class). It also provided for giving general notice via the internet, newspapers, as well as radio stations advising of the right to obtain reimbursement of the duplicate premiums paid and the procedure to obtain said reimbursement.

In the Commonwealth case K DP2001-1441, it also provided for compensation for work performed by the class attorneys, which would come out of the duplicate premiums. It provided that 20% of the duplicate premiums would be awarded to the class attorneys as compensation. The stipulation and judgment also provided an advance of $1,375,000.00 from the 20%. Said amount would be paid in installments to class

5

attorneys.

Although the Commonwealth started to comply with the stipulation and began publishing general notice in the newspapers, as well as paying the initial installment of $375,000.00 of attorney's fees as an advance from the retained funds, it failed to continue the implementation of the procedure for the return of the duplicate payments, as well as the payment of a second installment of attorney's fees due on October 8, 2017. It relied on the provisions of the PROMESA's legislation and the automatic stay provided by §362 (a) of the Bankruptcy Code.

As a reaction, the attorneys for the class wrote on November 7, 2017 to the attorney of the Commonwealth of Puerto Rico seeking compliance with the terms of the stipulation. The attorney form the Commonwealth answered on November 16 that if the class wanted to obtain relief from the stay provided by PROMESA, they should proceed by following the protocol established in said litigation. Attorneys for the class followed the protocol but did not received positive reply from the Commonwealth which finally on January 24th, 2018, wrote to attorneys for the class that the Commonwealth in coordination with AAFAF legal representatives rejected the request to modify the stay, as the execution of the judgement requires payment of the Commonwealth funds. The same day the attorney for the class replied that as clearly explained in the draft of the Memorandum to be filed with the Honorable Court, funds did not belong to the Commonwealth.

## II. ARGUMENTS IN SUPPORT OF RELIEF FROM THE AUTOMATIC STAY

The automatic stay in effect in the present case was granted under PROMESA's provisions and 11 U.S.C. §362(a) and 922(a) of the Bankruptcy Code. See Brigade

6

Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508 (2016). It

can be lifted for cause under 11 U.S.C. §362 (d)(1). Cause is not defined in the statute. It

Is for the courts to decide whether cause to lift the stay exists on a case by case basis. In

Re McDonald, 755 F.2d 715, 717 (9th Cir. 1995).

In Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, *supra,* the

District Court entered into a discussion of what is cause under the context of PROMESA

legislation. The Disctrict Court adopted for PROMESA the same definition that exists for

cause in general bankruptcy cases: "Cause to lift the stay exists when the stay harms the

creditor and lifting the stay will not unjustly harm the debtor or other creditors."

In Sonnax Industries, Inc., v.Tri Component Products Corp (In re Sonnax

Industries, Inc, 907 F.2d 1280, 1285-1286 (2d Cir. 1990)), the Second Circuit considered

pertinent the following factors to lift the stay:

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary,
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
> (5) whether the debtor's insurer has assumed full responsibility for defending the action,
> (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other creditors,
> (8) whether the judgment claim arising from the other action is subject to equitable subordination,
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding, and
> (12) the impact of the stay on the parties and the balance of harms."
> See In re Residential Capital, LLC, 2012 WL 3423285

Especially relevant to the present request for a lift of the stay against continuing

7

the implementation of the judgment against the Commonwealth in local case 2001-1441

and federal case 2002-1179 (GAG) are the following factors:

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary,
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
> (12) the impact of the stay on the parties and the balance of harms.

Of utmost importance is the conceded fact that the duplicate insurance premiums which

in both federal and local litigation were agreed to be returned to the owners, are funds

which are not the property of the Commonwealth of Puerto Rico, but funds held in trust

by the Commonwealth in order to be returned to the vehicle owners (Factor 3). Section

541(d) Title 11 USC excludes from the estate "property in which the debtor holds, at the

commencement of the case only legal title and not an equitable interest…", In Re CMC

Telecom, Inc., 383 BR 52, 60. See also T and B Scottdale Contractors, Inc., v. United

States of America, 866 F2d. 1372 (11 Cirth. 1989) (funds in possession of debtor held for

the benefit of a third party not part of the estate).

The automatic stay primary purpose is to give time to the debtor to try to solve its

dire economic problems relative to its existent assets and liabilities. But the automatic

stay has no reason to protect and shield assets from creditors that do not belong to debtor.

In re Scanlon, 239 F.3d 1195 (11th Cir. 2001); In re Yarbrough, 540 B.R. 647 (Bankr. E.D.

Ark. 2015).

The fact that the Commonwealth holds the funds of the vehicles owners in trust is

determinative of the fact that said duplicate premiums do not belong to debtor and a

compelling factor to lift the stay. The Commonwealth simply cannot be "unjustly harmed"

8

by having to return something that does not belong to it. In re Scanlon, *supra.* The trust

on the monies property of the automobile owners was imposed by Section 2 of Act 210

of 2002, something which is not in controversy. See In re Newpower, 233 F.3d 922 (6th

Cir. 2000).

On the contrary, it would be just that after 16 years of unjustly retaining the funds

by resisting the litigation, the Commonwealth would be ordered to finally return something

which unjustly and under superficial excuses it obtained possession.

In García-Rubiera v. Calderón, 570 F3d 443,461 (2009), the United States Court

of Appeal for the First Circuit held that the duplicate premiums were the property of the

automobile owners, and that the Secretary of the Treasury only had temporary custodial

retention of the funds, that is, they were held in a fiduciary capacity that provided for their

reimbursement. In García-Rubiera, etc., v. Luis G. Fortuño, 665 F3d 261 (2011) the First

Circuit of Appeals held that the trust continued even after the Secretary has transferred

the funds to the general funds. The court also held that the Commonwealth status as

trustee of the funds was conceded by all the parties in the case. 665 F3d, at 278. See

also García-Rubiera, etc., v. Luis G. Fortuño, 727 F3d 102 (2013).

The lifting of the stay would also result in the complete resolution of the issues in

the long-protracted cases, the first factor singled out in In re Sonnax Industries, Inc, *supra.*

As to the second factor, there is no connection of these prior cases with the bankruptcy

case. As to the third factor, it has been already discussed that the debtor was holding the

funds as a fiduciary. The tenth (10) factor, judicial economy, is also in favor of lifting the

stay as it would permit the conclusion of these long-standing cases.

That the Commonwealth would have to pay the applicants the reimbursements is

9

not a just consideration for maintaining the stay because: (1) as stated before, the funds do not belong to the Commonwealth; (2) The Commonwealth would be profiting from funds that do not belong to it; (3) It would hinder and, as a matter of fact, make practically impossible due to the anticipated protracted litigation for the owners to recover what is theirs. The judicial system and Justice aims to give each its own. The stay would defeat this aim.

Neither the agreed balance of pending attorney's fees would come out of the property of the Commonwealth. Simply, they are an advance of attorney's fees against the funds deposited which would be deducted from the applicant's recovery.

The fiscal crisis of the Commonwealth should not be a consideration to influence the maintaining of the stay where as in this case, the property in question does not belong to the debtor. It must be taken into account that even under the monitoring of the Supervisory Board created by PROMESA, the Commonwealth continues to manage and dispose of funds under its control according to political expediency and other considerations that are not vital to the essential functioning of the government.

Permitting the Commonwealth to use the duplicate premiums that do not belong to it, for its purposes simply continues to deprive perhaps indefinitely plaintiffs' class of their property rights and due process of law even after the local and federal courts after a decade and a half of litigation redressed plaintiffs' property rights and provided remedy. The other factors considered pertinent in In re Sonnax Industries, Inc, *supra,* are either not applicable to the present case (factors 4, 5-11), or should not militate towards maintaining the stay. The present action primarily involves third parties (factor 6). As to factor 7, the present litigation, which is at the execution of judgment stage, does not

10

prejudice the interest of other creditors as the funds do not belong to the debtor. Neither

factors 8 and 9 are pertinent. We again emphasize as stated in In re Sonnax Industries,

Inc, *supra,* that:

> "Generally, proceedings in which the debtor is a fiduciary, … need not be stayed
> because they bear no relationship to the purpose of the automatic stay, which is
> protection of the debtor and his estate from his creditors". In re Sonnax Industries,
> Inc, *supra*, pages 1285-1286

## III. CONCLUSION AND PRAYER

**WHEREFORE**, it is respectfully requested that this motion for lift of stay be granted

and that the class of plaintiffs be allowed to continue to seek the implementation of the

agreed stipulation and judgment in both federal and local courts.

### CERTIFICATION

In compliance with Paragraph III.Q of the Third Amended Case Management Procedures

order (ECF No. 1512, Ex. 1), we certify that on December 21st, 2017 we sent to Counsel

for the Oversight Board and AAFAF a notice advising them of the class intention to seek

relief from the Title III automatic stay. No agreement was reached to lift or modify the stay

with respect to the class request for lifting the stay.

### RESPECTFULLY SUBMITTED

### CERTIFICATE OF SERVICE

I hereby certify that, on February 7th, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

all counsel of record and parties in the Master Service List.

The foregoing is also being e-mailed separately to Claudia A. Juan García at

cjuan@justicia.pr.gov; Hermman Bauer at hermann.bauer@oneillborges.com; Ubaldo

11

Fernández    at    ubaldo.fernandez@oneillborges.com    and    Andres    W.    López    at

andres@awllaw.com.

In San Juan, Puerto Rico, 7th day of February 2018.


*s/ Antonio J. Amadeo Murga*                                         *s/ Mario M. Oronoz Rodríguez*
USDC-PR No. 110103                                                       USDC-PR No. 120606
A.J. AMADEO MURGA LAW OFFICES                              ORONOZ & ORONOZ
1225 Ponce de León, Ave.                                              Urb. Torrimar, K-4 Bambú St.
Ste. 904                                                                         Guaynabo, PR 00966-3109
San Juan, PR 00907                                                       Tel. (787)294-5255
Tel. (787)764-0893                                                        mmo@oronozlaw.com
ajaamadeo@gmail.com