UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | PROMESA TITLE III |
| THE FINANCIAL OVERSIGHT MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| DEBTORS | |
| IN RE: | PROMESA TITLE III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK3567-LTS |
| PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA") | |
| DEBTOR | |

MOTION FOR RELIEF FROM STAY

TO THE HONORABLE COURT:

COMES NOW creditor, Finca Matilde, Inc., through its undersigned counsel and very respectfully states and prays:

1. Pursuant to Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as amended by Order Further Amending Case Management Procedures (docket no. 1512), and subject to Paragraphs III. F and III.T, at least fifteen (15) business days prior to filing a Stay Relief Motion to continue a prepetition ordinary course civil action against a Debtor other than PREPA, the movant shall contact the counsel for the Oversight Board and

AFAA by electronic-mail to advise them of the movant's intent to seek relief from the automatic stay (the "Lift Stay Notice" and the notice period, the "Lift Stay Notice Period").

2. The Lift Stay Notice shall include (i) the identity of the movant and its contact information, (ii) the claim(s), lawsuit(s), or other proceeding(s) for which movant seeks relief from the automatic stay, including the relevant case number and court information, (iii) the amount of the claim(s) and the asserted causes of action, (iv) a brief description of the status of the underlying claim(s), lawsuit(s), or proceeding(s), and (v) cause as to why the stay should be lifted.

3. If (i) the Debtors disagree with the movant's request for relief from the automatic stay and/or (ii) the Lift of Stay Notice Period expires without the parties reaching an agreement governing the scope of the relief from the automatic stay, then the movant may file a Stay Relief Motion pursuant to Case Management Procedures. Such Stay Relief Motion must include a certification that the movant has met and conferred with the Debtors regarding the requested relief.

4. Movant, Finca Matilde, Inc., in compliance with the above mentioned Order Further Amending Case Management Procedures, submits an unsworn statement under penalty of perjury certifying the undersigned counsel has conferred with Debtor's counsel and no agreement was reached. See Exhibit 1.

**I. INTRODUCTION**

4. On May 21, 2017, Debtor, Puerto Rico Highways and Transportation Authority (hereinafter "HTA") by its representative and pursuant to section 315 of the Puerto Rico Oversight, Management, and Economic Stability Act (hereinafter "PROMESA"), the Financial Oversight and Management Board for Puerto Rico filed a voluntary petition in the United States

2

District Court for the District of Puerto Rico under Title III of PROMESA seeking relief from creditors.

5. HTA has an eminent domain case pending final disposition at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain, against creditor, Finca Matilde, Inc. (hereinafter "Finca Matilde"), *Puerto Rico Highways and Transportation Authority v. Finca Matilde, Inc,, et als.*, civil case no. KEF2004-0237. On June 8, 2017, HTA filed a motion at the state court requesting the automatic stay of the proceedings pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA.

## II. BACKGROUND

6. Dated March 16, 2004, HTA filed an action of eminent domain against Finca Matilde at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain, civil case no. KEF2004-0237, along with a motion for the acquisition and surrender of the property. The property consists of certain parcel of land segregated from a larger parcel owned by Finca Matilde at the time of the taking. As a matter of law, the taking occurred on March 16, 2004.

On March 23, 2014, the state court issued a Resolution rendering the property expropriated and title invested in HTA. The amount of just compensation and its distribution to the parties would be determined by the state court as stated in such Resolution.

When the petition was filed, HTA deposited with the court the amount of $146,800.00 as an estimated amount of just compensation. On May 9, 2008, an additional sum of $101,400.00 was consigned with the court for a total amount of $248,200.00. Timely, Finca Matilde

3

withdrew the consigned funds under protest for not agreeing with the amount consigned by HTA to be the just compensation to which it was constitutionally entitled to receive.

At the time the petition for eminent domain was filed the area of land to be expropriated consisted of 1,223.6848 square meters, which after various procedural issues was increased to an area of 2,068.304 square meters. The Petitioner, HTA, estimated the value of the land expropriated at $120.00 per square meter. Afterwards, HTA returned to Finca Matilde part of the land with an estimated area of 443.403 square meters with the purpose of providing access to the remnant estate which resulted enclosed by the expropriation This had the effect of reducing the area of the expropriated land to 1,624.9013 square meters.

Dated February 17, 2015, and after various procedural issues, the trial was held. Finca Matilde argued that the amount of money consigned by HTA does not constitute the just compensation to which it is entitled. Among the relevant stipulations contained in the Pre-Trial Report are the following:

a) The taking of land occurred on March 16, 2004.
b) On March 9, 2012, HTA filed a motion with an amended Exhibit A giving up part of the expropriated land with an estimated area of 443.403 square meters with the purpose of providing access to the remnant estate which resulted enclosed by the expropriation. This had the effect of reducing the area of the expropriated land to 1,624.9013 square meters.
c) The process to value expropriated land is the market value using comparable.
d) The experts contracted by the parties, Mr. Esteban Nuñez Camacho, HTA's expert, and engineer Ismael Isern Suárez, expert of Finca Matilde are professional appraisers, licensed and qualified to conduct an appraisal of the properties at stake and to serve

4

as witnesses. Also, Ángel Noel Colón is a licensed land surveyor, authorized to practice in the Commonwealth of Puerto Rico and qualified to be a witness.

A very brief summary of the obligation HTA had with Finca Matilde as of the day of the trial is as follows:

| | |
|---|---:|
| Value of land expropriated…………………………………………………….. | $211,300.00 |
| Damages claimed by Finca Matilde……………………………………………… | 49,392.00 |
| Balance due by HTA……………………………………………………………. | $260,692.61 |
| Funds consigned with the court by HTA………………………………………. | 248,200.00 |
| Additional sum to be paid by HTA………………………………………….. | $12,492.61 |

Among the damages claimed by Finca Matilde is the rent that HTA must pay for the use of the area of land that was taken and then returned to Finca Matilde.

After the trial was held, Finca Matilde found out that right in front in the area of land that was taken and later on returned to Finca Matilde with the purpose of providing access to the remnant estate which resulted enclosed by the expropriation, HTA had installed poles for electric and telephone services which have the effect of blocking the access to the remnant estate; the effect of this being that, again, the remnant estate remains enclosed. This situation was brought to the attention of the state court through a written statement and has not been resolved.

### III. APPLICABLE LAW

7. Section 362(d)(1) of the Bankruptcy Code (11 U.S.C. §362(d)(1)) reads as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…

8. The courts examine numerous different factors, including those set forth in *In re Sonnax Indus.*, *907 F.2d 1280* to determine whether "cause" exists to grant relief from stay. The twelve factors adopted by the court in *Sonnax* are:

> (1) whether relief would result in partial or complete issue resolution; (2) lack of connection with or interference with bankruptcy case; (3) whether other proceeding involves debtor as fiduciary; (4) whether specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice interests of other creditors; (8) whether judgment claim arising from other action is subject to equitable subordination; (9) whether movant's success in other proceeding would result in a judicial lien avoidable by debtor; (10) interests of judicial economy and expeditious and economical resolution of litigation; (11) whether parties are ready for trial in other proceeding; (12) impact of stay on parties and balance of harms. *In re Sonnax Inds.*, *supra, at 1287* citing *In re Curtis*, *40 Bankr. 795, 799-800 (Bankr. D. Utah 1984)*.

Other courts have established that the *Curtis* moving party "need not prove a plurality of *Curtis* factors before it has shown cause existed for lifting the stay." *Goya Foods v. Unanue-Casal (In re Unanue-Casal), 159 B.R. 90, 96 (1993).* Some courts have relied on only a few factors to determine that sufficient cause existed to lift the stay. See, e.g., *In re Unioil, 54 Bankr. 192, 194-195 (Bankr. D. Colo. 1985)* (court considered five factors such as resolution of the issues, lack of connection with the bankruptcy case, judicial economy and balance of hurt). See also *Highcrest Management Co., 30 Bankr. at 778-779* (court considered only the debtor's misconduct, without any *Curtis* factors).

The court in *Goya Foods v. Unanue-Casal (In re Unanue-Casal), supra, at 96* correctly stated that "the question of what is cause . . . is developed primarily by case law." In other words, the determination of cause is made on a case by case basis.

6

9. Article II, section 9, of the Constitution of the Commonwealth of Puerto Rico, P.R. Const. Art. II, § 9, states that **"*private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law.*"** (Emphasis added).

10. The Takings Clause of the Fifth Amendment mandates that **"*private property [shall not] be taken for public use, without just compensation.*"** U.S. Const. amend. V. This amendment is made applicable to the states, and thus to municipalities, through the Fourteenth Amendment. U.S. Const. amend. XIV. *In re City of Detroit*, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014) citing *Dolan v. City of Tigard*, 512 U.S. 374, 383, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994); *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 122, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).

11. In *First English Evangelical Lutheran v. Los Angeles*, 482 U.S. 304, 315-16 (1987), the Supreme Court of the United States stated regarding the Fifth Amendment:

> This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).
>
> We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of "'the self-executing character of the constitutional provision with respect to compensation. . . .'" *United States v. Clarke*, 445 U.S. 253, 257 (1980), quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed.1972).

12. The Fourteenth Amendment of the United States Constitution does not provide that **"*nor shall any State deprive any person of life, liberty, or property, without due process of***

7

*law."* (Emphasis added). U.S. Const. amend. XIV. The limitations of the Fifth Amendment also apply, through the Due Process Clause of the Fourteenth Amendment, to takings by state governments and their subdivisions. See, e.g., <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003 *(1992).* Consequently, the Fifth Amendment is applicable to municipal debtors, and a municipal debtor may not take property without just compensation.

13. The Supreme Court of the United States has addressed the takings issue in the context of bankruptcy on several occasions, holding each time that the bankruptcy power is limited by the Fifth Amendment. See <u>United States v.Security Indus. Bank</u>, 459 U.S. 70, 75, 78 (1982); <u>Wright v. Vinton Branch of Mtn. Trust Bank</u>, 300 U.S. 440, 456-58 (1937); <u>Louisville Joint Stock Land Bank v. Radford</u>, 295 U.S. 555, 589 (1935). The protections afforded by the Fifth Amendment are not abrogated by the Bankruptcy Code. The legislative history of the Bankruptcy Code indicates that the drafters of the Bankruptcy Code considered the Fifth Amendment to be a limitation upon the impairment of property rights in bankruptcy, and current bankruptcy law gives great deference to property rights. Julia Patterson Forrester, Bankruptcy Takings, 51 Fla. L. Rev. 851, 863 (Dec. 1999).

14. In <u>ELA v. Rodríguez, 103 D.P.R. 636 (1975</u>), citing <u>Texaco Inc. v. Srio. De Obras Públicas</u>, *85 D.P.R. 712 (1962),* the Supreme Court states that a destruction of a right to access [a property] must be compensated. This constitutes a taking since an enclosed property loses its economic value and, therefore, the owner should be compensated.

**IV. DISCUSSION AND ARGUMENT**

17. In the case at hand, Finca Matilde submits that the automatic stay should be modified to allow the state court proceedings to continue to determine the amount of just compensation and to resolve the issue of an access to the remnant estate.

8

Of the twelve factors adopted by the court in <u>Sonnax</u> to determine if cause exists to grant relief from stay at least six weigh in favor of Finca Matilde.

First, whether relief would result in partial or complete issue resolution and second, whether specialized tribunal with necessary expertise has been established to hear cause of action. Finca Matilde has a state eminent domain case pending final disposition at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain, against HTA in which the trial has already taken place to determine the amount of just compensation to be paid for the expropriated land and for the rent of the area of land that was returned to Finca Matilde in order to provide an access to the remnant estate. However, the issue of providing access to the remnant estate continues to be unresolved after Finca Matilde found out that HTA installed poles for electricity and phone services in the expropriated property right in front of the area that was returned to Finca Matilde with the effect of blocking the entrance to the remnant property and, therefore, leaving the remnant property enclosed again.

Third, lack of connection with or interference with bankruptcy case. The resolution of Finca Matilde case at the state court will not interfere with the Title III case since there is no relationship between the issues and/or controversies. On June 10th, 2017 Sucesión Pastor Mandry Mercado, represented by the undersigned counsel, requested a relief from automatic stay for an inverse condemnation case stayed by the Commonwealth of Puerto Rico (hereinafter "Debtor") pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA, were the only issue pending was the determination of just compensation (docket no. 305). Debtor opposed the request from relief from stay and the Court lifted the stay to allow the litigation to proceed to a determination of damages *prior* to the entry of judgment (Memorandum Order, docket no. 600). Moreover, the Court stated that "allowing

9

the Litigation to proceed would not interfere with the Title III case." (Memorandum Order, page 3, ¶2).

Fourth, whether litigation in another forum would prejudice interests of other creditors. The litigation between HTA and Finca Matilde at the state courtroom with expertise in eminent domain has no direct or indirect effect on any of HTA's creditors.

Fifth, the interests of judicial economy and expeditious and economical resolution of litigation. HTA's has a legal division that is very familiarized with the litigation of the present case, specifically Anita Cortés, Esq. Thus, the only litigation expense will be for the appraiser, Mr. Esteban Nuñez Camacho, the Government is using as expert witness. In the alternative, removing the case from the state court to this forum will be in detriment to Finca Matilde and HTA since the costs of litigation will be very burdensome for both parties, e.g., translation costs. The court in <u>In re Saunders,</u> *103 Bankr. 298, 299 (B.C.N.D. Fl. 1989)* allowed the stay to be lifted on the state proceedings that had begun almost two years before the filing of the bankruptcy petition and also found that that judicial economy was served because the court "could perceive no rationale for curtailing" the efforts of two years in court only for the court to retrace the same path. In the present case, the parties have been litigating in state court for the last seventeen years. Concluding the litigation at the state court will cause no prejudice to HTA.

Sixth, the impact of stay on parties and balance of harms. The Fifth Amendment and the Fourteenth Amendment of the United States Constitution and Article II, Section 9, of the Constitution of the Commonwealth of Puerto Rico provide that private property shall not be taken for public use without just compensation. The continuance of the stay will be detrimental to Finca Matilde who will be deprived of its constitutional right to obtain a determination of just compensation and to resolve the issue of the access to the remnant estate depriving it of any

productive use. Whereas, HTA will suffer no harm if the stay is lifted.

### V. CONCLUSION

19. Finca Maltide has established with substantial arguments there is cause for the lifting of the automatic stay. Modifying the stay to allow the state court determination of just compensation promotes the judicial economy and expeditious and economical resolution of the litigation. Finca Matilde would then have a certain and allowable claim to file, facilitating HTA the formulation of a confirmable plan and its eventual reorganization.

WHEREFORE, it is respectfully prayed that Finca Matilde be granted relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) as to the HTA, and to the estate, to continue the proceedings at the state court civil case no. KEF2004-0237 in order to determine the amount of just compensation and resolve the issue of access to the remnant estate which as of today remains enclosed, with such other and further relief as this Court deems just and proper.

**CERTIFICATE**: I hereby certify that pursuant to Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as amended by Order Further Amending Case Management Procedures (docket no. 1512), and subject to Paragraphs III. F and III.T, at least fifteen (15) business days prior to filing the present motion for relief from stay to continue a prepetition ordinary course civil action against HTA, the movant, Finca Matilde, contacted the counsel for the Oversight Board and AFAA by electronic-mail to advise them of the movant's intent to seek relief from the automatic stay and no agreement was reached.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 7th of February, 2018.

/s/María E. Vicéns Rivera
MARÍA E. VICÉNS RIVERA
USDC- PR 226711
9140 MARINA ST., SUITE 801
PONCE, PUERTO RICO 00717
TEL. / FAX: (787) 259-1999
E-mail: mevicens@yahoo.com

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

Comes now, MARÍA E. VICÉNS as legal representative of Finca Matilde, Inc., under penalty of perjury and very respectfully declares that the foregoing is true and correct:

1. On January 16, 2018, I sent an email to Herman Bauer, Esq., Ubaldo Fernández, Esq., Andrés López, Esq. and Diana Pérez, Esq. notifying the fact that an amended Lift Stay Notice had been sent to them on December 20, 2017, regarding the eminent domain case pending at the Puerto Rico First instance Court in San Juan, *Puerto Rico Highways and Transportation Authority v. Finca Matilde, Inc., et als.*, civil case no. KEF2004-0237.

2. In response to the email sent to counsels on January 16, 2018, a conferenced was held on January 18, 2018, with Diana Pérez, Esq. The result of the same being that Mrs. Pérez would get back to her client for an answer and would contact me again.

2. On January 22, 2018, I sent an email to Andrés López, Esq. regarding the status of the conversations with Puerto Rico Highways Authority. A reply was never received.

3. On January 25, 2018, I sent another email following up to attorney Pérez and separately to Herman Bauer, Esq., Ubaldo Fernández, Esq. and Andrés López, Esq. Attorney Pérez replied informing they were still discussing with their client and will get back to me as soon as possible.

4. On February 1st, 2018, another email was sent counsels following up on the issue pending. No answer was received.

5. On February 6, 2018, in a last attempt to get a reaction from counsels, another email was sent and it was not answered. At that email I informed them this would be my last attempt without intervention of the court. See Exhibit 1 (a).

In Ponce, Puerto Rico, this 7th of February, 2018.

*[signature]*

**MARÍA E. VICÉNS**

Subject: 17-03283 Lift of stay notice filed by Finca Matilde, Inc.

From: mevicens@yahoo.com

To: herman.bauer@oneillborges.com; ubaldo.fernandez@oneillborges.com; andres@awllaw.com; dperez@omm.com

Date: Tuesday, February 6, 2018, 4:55:29 PM GMT-4

Dear counsels:

As of today I have not received a definite answer from your team regarding the lift of stay notice sent to you on December 20, 2017. On January 16, 2018, and after the fifteen (15) labor days granted by the Case Management Order to confer and meet in an attempt to resolve, in whole or in part, the request for lift of stay elapsed, I sent a communication to the group and I was able to confer with Diana Pérez, Esq. on January 18, 2018.

I kept following up on the pending issue on January 22, 25 and February 1st, 2018. This will be my last attempt to resolve the issue without intervention of the court.

Sincerely,

María

María E. Vicéns Rivera
Attorney
María E. Vicéns Law Office
Tel./Fax:(787) 259-1999
Mobile (787) 312-0966


CONFIDENTIALITY NOTE: This communication contains information belonging to María E. Vicéns Law Office which is confidential and/or legally privileged.The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of said information is strictly prohibited. If you have received this communication by error, please delete it from your computer and notify us immediately.