**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS |

**SUPPLEMENTAL OBJECTION OF THE PREPA BOND TRUSTEE TO URGENT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING, (B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747).

To The Honorable United States District Court Judge Laura Taylor Swain:

U.S. Bank National Association, solely in its capacity as trustee for the PREPA Bondholders (the "**Trustee**"), respectfully submits this Supplemental Objection (the "**Supplemental Objection**") to the DIP Motion [Dkt. No. 549 at 17-4780 and No. 2298 at 17-3283]]. The Trustee hereby incorporates by reference the arguments made in its initial objection [Dkt. No. 568 at 17-4780 and No. 2341 at 17-3283] (the "**Trustee Objection**")[2] in full. The Trustee continues to oppose the DIP Motion on the grounds asserted in the Trustee Objection and in other objections that the Trustee has joined in.[3] If, however, the Court is inclined to grant the DIP Motion, the Trustee wants to make sure that the Court is advised of serious defects in the Financing Order and revised Credit Agreement filed by the Movants on February 6, 2018 [Dkt. No. 640 at 17-4780 and No. 2422 at 17-3283], that must be corrected. The Trustee respectfully submits the following non-exhaustive list of such corrections.

## I. The Financing Order and Credit Agreement Improperly Delegate Future Priming Loan Approval Authority to Cooperating Insiders.

1. Paragraphs 2, 3, and 4 of the Financing Order authorize PREPA to enter into the Credit Agreement, make binding all *obligations* of PREPA under the Credit Agreement, and confer corresponding rights upon the Commonwealth as Lender. The Credit Agreement, in turn, permits the Commonwealth, with PREPA and the Oversight Board, but without further approval of this Court, to: (1) step up the amount of the initial Revolving Credit Commitment from $550 million in increments of up to $250 million (*see* Credit Agreement, definition of "Step Increase"

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Trustee Objection and, if not defined therein, as defined in the DIP Motion and, if not defined therein, in the Credit Agreement and, if not defined therein, as defined in the Trust Agreement. Unless otherwise noted, docket entries referred to herein are from PREPA's Title III case, Bankruptcy Case No. 17 BK 04780-LTS.

[3] This includes supplemental objections filed by parties whose objections the Trustee had already joined (together with the Trustee Objection and Supplemental Objection, the "**PREPA Objections**")

at p. 8); (2) fund additional Revolving Credit Loans, and/or refinance existing Revolving Credit Loans with proceeds of <u>any</u> loan from either the federal government or any third party lender (Credit Agreement, § 2-7); (3) pass the newly negotiated interest rate on to PREPA on a basis that primes the Revenue pledge of the Trustee and Bondholders; and (4) assign the Commonwealth's rights under the Credit Agreement. (Credit Agreement, §§ 2-7, 13-1(c)).

2. Section 301 of PROMESA and 11 U.S.C. § 364(c) and (d) expressly require approval of post-petition loans to PREPA by this Court. Instead, Movants seek to designate PREPA, the Commonwealth and the Oversight Board as a triumvirate that can broadly determine and implement PREPA's future post-petition financing arrangements without Court oversight. This is highly unfair to Bondholders and violates PROMESA. PREPA and the Commonwealth enjoy common control and are openly adverse to the Bondholders' lien rights. When they seek to prime the security interests of Bondholders, even in the case of a genuine liquidity crisis, they should be required to submit concrete loan proposals, and modifications to the terms of existing loans, to this Court. As currently drafted, the Financing Order and Credit Agreement sidestep this requirement and must be corrected. A loan that results in the loss of Court oversight is not a cheap loan from the point of view of Bondholders.

**II.     The Financing Order Fails to Solve the Problem of Material Modifications.**

3. In response to objections, the Movants added language to paragraph 6 of the Financing Order requiring Court approval before "material" amendments to the Credit Agreement become effective. This protection is illusory. The economic terms of the Revolving Credit Loans can be altered—significantly—within the parameters of the Credit Agreement.[4]

---

[4] For example, the Movants are able to substitute a new Lender (§ 13-1(c)), increase the amount of Revolving Credit Loans through a Step Increase, expand the permitted use of proceeds to "Ineligible Uses" (§ 4-13), and make numerous other changes to the proposed facility as the Credit Agreement is currently drafted. *See also* § 12-4(b).

2

Moreover, paragraph 6 only covers formal Credit Agreement amendments, not consents and waivers in the performance of the Credit Agreement, which are effectively the same thing. The Financing Order should be revised to require disclosure of all modifications, consents and waivers.[5] It should also require Court approval of actions that will result in deviations from the current terms of the existing Credit Agreement including, without limitation, economic terms, refinancings, or Step Increases.

### III. The Credit Agreement Could Improperly Pass Through to PREPA Unlimited Interest Rate Increases from Commonwealth Financings.

4. Section 2-7 of the Credit Agreement provides that if the Commonwealth refinances any Revolving Credit Loan, whatever interest rate applies to such refinancing is passed through to PREPA automatically. It is beneficial to the estate to pass along price savings, such as through a community disaster loan ("**CDL**"). However, as drafted, the Credit Agreement exposes PREPA to unilateral interest rate increases from deals made by the Commonwealth with private lenders. This provision should be corrected. Moreover, the Financing Order should impose an affirmative obligation upon PREPA and the Commonwealth to seek CDL financing and refunding of the outstanding Revolving Credit Loans on as favorable of terms as possible, including loan forgiveness to the fullest extent possible. If any terms of CDLs or other financings are less favorable to PREPA than the terms in the current Credit Agreement, PREPA

---

[5] The Order refers to Credit Documents and asks the Court to make findings about them, but only the Credit Agreement has been provided. This finding is inappropriate to the extent the other Credit Documents (or any amendments thereto) contain terms not consistent with the Credit Agreement. In addition, all Credit Documents and amendments thereto should be publicly filed with the Court on the docket. The Financing Order should also impose the same standard on amendments to the Credit Documents.

3

should be required to seek Court approval of such revised terms before entering into such loans, with adequate notice to provide third parties an opportunity to object or provide better terms.[6]

### IV. The Financing Order Includes Improper Provisions Regarding the Application of Proceeds after Acceleration and Current Expenses.

5. The Credit Agreement improperly establishes a post acceleration waterfall that subordinates the rights of Bondholders in the application of Revenues with respect to other classes of creditors. Even after payment of the Revolving Credit Loans, Section 9-2 provides that all "Current Expenses" are to be paid before Bondholders. Such a provision demonstrates a misunderstanding of the Trust Agreement and is completely inappropriate, since the Revolving Credit Loans will have already been paid off.[7] Moreover, Section 9-2 provides that administrative expenses covered by the Commonwealth's Carve Out are to be paid before Bondholders. The relative priority of Bondholders and administrative expense claims is established by the Bankruptcy Code and governing agreements. The Commonwealth and PREPA have no right to impose subordination upon Bondholders to which they did not agree. The Credit Agreement should be restricted to providing for the repayment of the Revolving Credit Loans, and all priority issues other than those involving the Revolving Credit Loans should properly be left to the application of the Bankruptcy Code and the Trust Agreement.

6. Paragraph 10 of the Financing Order provides that "the Debtor's repayment obligations to Lender for amounts borrowed under the Facility shall be deemed to be "Current

---

[6] To the extent PREPA enters into a loan on worse terms, PREPA and the Commonwealth should be required to prioritize payments of loans that will not be forgiven or that have worse economic terms. *Cf.* Credit Agreement §§ 2-6(c) & 12-5.

[7] Payment of budgeted and <u>reasonable</u> Current Expenses is a permitted use of pledged Revenues. *See, e.g.*, Trust Agreement § 505. Additionally, PREPA's representation that loan proceeds will only be used for Current Expenses is not correct for the reasons stated in the PREPA Objections. The Financing Order should provide that both loan proceeds and Revenues may only be used for payment of Current Expenses permitted under the Trust Agreement that were incurred on or after the date of the funding of the Revolving Credit Loans.

Expenses" under the Trust Agreement." This gratuitous provision implicates potential disputes between Bondholders and other prepetition lenders and should be stricken.[8] It is both improper and unnecessary. If it is meant to clarify that payments on the Revolving Credit Loans are permitted under the Credit Agreement, which is an obvious point, the Financing Order should simply state as much.

## V. The Court Should Limit the Validations and Protections in Paragraph 4 of the Financing Order.

7. Paragraph 4 of the Financing Order validates all of PREPA's "obligations" and all of the Commonwealth's rights in the Credit Agreement and potential future agreements that no party has yet seen. The proposed Facility is controlled by insiders. The Court should not preclude itself from revisiting the Financing Order, as it would in post-petition financing arrangements between arms' length parties. If the rights and privileges conferred by the Credit Agreement and Financing Order are misused to deprive the Trustee or Bondholders of their rights under PROMESA, the Trustee and Bondholders must be allowed to seek relief.

## VI. The Court Should Require Transparency.

8. PREPA and the Commonwealth seek to prime existing Bondholders and impose a new debt burden on the rate payers of Puerto Rico. In light of the material impact the Revolving Credit Loans will have on various parties-in-interest, the Financing Order should require timely publication of all reporting provided to the Lenders under Article V of the Credit Agreement, Budgets and Proposed Budgets, and a list of accounts receivable with aging with specific line items for Commonwealth and each agency and instrumentality. PREPA should be required to comply with the specific requests for information and access to information included in the

---

[8] The Financing Order should also contain a provision stating that, except as explicitly provided in the Financing Order, nothing in the Financing Order or the Credit Documents shall alter the rights of parties-in-interest, including under the Trust Agreement and under applicable law.

5

PREPA Objections. The Financing Order should also require the appointment of a monitor to ensure that PREPA is acting properly, including billing and collecting, and to report its findings and recommendations (including recommendations regarding rates) to stakeholders.

### VII. The Court Should Limit Provisions to Prevent the Commonwealth from Receiving a Windfall if PREPA Underperforms its Repayment Obligations.

9. There are a number of provisions in the Credit Agreement that are inappropriate given the common control between the Commonwealth and PREPA. The Commonwealth, through AAFAF, can have a material impact on the magnitude of Revenues that PREPA collects. If PREPA fails to generate sufficient Revenues to repay Revolving Credit Loans, the Commonwealth should not see an upside under the Credit Agreement. Accordingly, the step-up interest rate mechanism should be removed and the interest rate on all Revolving Credit Advances should be zero percent. Default interest should also be removed from the Credit Agreement. Section 8-1 should be modified such that the Commonwealth cannot declare a payment default unless the Oversight Board certifies that the Commonwealth took all available measures to boost PREPA's Revenues. Similarly, there should be a requirement for the Commonwealth and PREPA to demonstrate that they took all available measures to collect on currently outstanding governmental receivables before any Step Increase is permitted.[9]

### VIII. The Scope of the Proposed Priming Lien Is Unclear and Problematic.

10. Section 8 of the Financing Order grants a priming lien only on Revenues, but then references the Credit Agreement in a manner that creates ambiguity as to the exact scope of the purported lien. The Credit Agreement's description of "Collateral" is broader than the definition in the Financing Order because it grants a security interest in the funds in an undefined set of

---

[9] The Financing Order should also provide that any loans or grants that the Commonwealth receives from agencies or departments of the United States Government in respect of business operations at PREPA must be used to pay off the Revolving Credit Loan.

6

"Other Accounts." Other Accounts are vaguely defined and not specifically identified in the Credit Agreement. This must be changed or clarified. First, the scope of the priming lien should be defined with particularity in the Financing Order itself without reference to the Credit Agreement. The Credit Agreement is modifiable, and nothing prevents the Commonwealth or PREPA from changing the scope of the security interest. Second, the scope of the priming lien should be limited to PREPA's interests in Revenues. For example, there are certain funded accounts established or held in trust by PREPA or by the Trustee under the Trust Agreement with current balances (e.g., the Construction Fund, which has a balance consisting of bond proceeds and is held in trust by PREPA). These "Other Accounts" are not subject to any "netting" of Current Expenses and, therefore, absent the provision of adequate protection, the grant of a lien on "Other Accounts" should be removed. If the "Other Accounts" are not so removed from the scope of the lien, then the "Other Accounts" and funds therein must be identified with specificity and the Trustee reserves the right to challenge any purported grant of priming liens in existing funds held in "Other Accounts" to the extent of any trust rights held by the Bondholders or by the Trustee under the Trust Agreement.

## Conclusion

For the reasons stated herein, the Trustee respectfully requests that the DIP Motion be denied. If, however, the Court is inclined to grant the DIP Motion, the Trustee respectfully requests that the Financing Order and Credit Agreement be modified as described herein and to otherwise address the concerns set forth in the PREPA Objections.

Respectfully submitted in San Juan, Puerto Rico, on February 9, 2017.

We certify that on this same date we filed this objection in the ECF System of the Bankruptcy Court for the District of Puerto Rico, Case Nos. 17-4780 and 17-3283.

| RIVERA, TULLA AND FERRER, LLC | MASLON LLP |
|---|---|
| /s *Eric A. Tulla* <br> Eric A. Tulla <br> USDC-DPR No. 118313 <br> Email: etulla@ riveratulla.com <br><br> /s *Iris J. Cabrera-Gómez* <br> Iris J. Cabrera-Gómez <br> USDC-DPR No. 221101 <br> Email: icabrera@riveratulla.com <br><br> Rivera Tulla & Ferrer Building <br> San Juan, PR 00917-1212 <br> Tel: (787)753-0438 <br> Fax: (787)767-5784 | By: /s Clark T. Whitmore <br>     Clark T. Whitmore (admitted *pro hac vice*) <br>     Jason M. Reed (admitted *pro hac vice*) <br><br> 90 South Seventh Street, Suite 3300 <br> Minneapolis, MN 55402 <br> Telephone: 612-672-8200 <br> Facsimile: 612-672-8397 <br> E-Mail:    clark.whitmore@maslon.com <br>                jason.reed@maslon.com <br><br> ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS TRUSTEE |