Hearing Date: February 15, 2018

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

**SUPPLEMENTAL OBJECTION OF NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO URGENT JOINT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY & FINANCIAL ADVISORY BOARD FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING, (B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF**

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

TO THE HONORABLE COURT:

National Public Finance Guarantee Corporation ("**National**") respectfully submits this supplemental objection[2] to the final relief sought in the Financing Motion,[3] dated January 27, 2018.

## I. INTRODUCTION

1. National objects to the new issues and factual allegations raised by the Financial Oversight and Management Board for Puerto Rico (the "**FOMB**") in its omnibus reply (the "**Reply**"),[4] dated February 3, 2018, in response to objections to the Financing Motion.

- First, the Facility is subject to—and fails—the entire fairness standard, not a new "permissible judgment" standard.

- Second, despite an interval of nearly two weeks since it filed the Financing Motion, the FOMB has still not produced evidence demonstrating a need for $1.3 billion in postpetition financing for PREPA, and has not accounted for the full amount of receivables owed by governmental entities to PREPA, and their collectibility.

- Third, PREPA has not satisfied section 364 of the Bankruptcy Code's requirements because the Facility is not fair and reasonable under the circumstances and does not demonstrate that existing secured creditors are adequately protected.

- Finally, the Proposed Order and Credit Agreement contain multiple problematic provisions that require elimination or further modification.

## II. ARGUMENT

### A. Approval of the Facility is Not Subject to a So-Called "Permissible Judgment" Review

2. The FOMB retreats from its previous position and now concedes that it has not met the business judgment standard. Reply ¶ 36. Instead, it asks this Court to establish a new

---

[2] National filed an objection to the Financing Motion on February 1, 2018 (the "**Objection**"). *See* Docket No. 580.

[3] *See* Docket No. 549.

[4] *See* Docket No. 617. Capitalized terms not defined herein shall have the meaning ascribed to them in the Reply.

1

"permissible judgment" standard of review for governmental entities. Proposed Order ¶ A. The FOMB has not explained what this standard entails, nor has it directed the Court or other parties to legal authorities or case law applying any such standard. The FOMB certainly has not presented arguments compelling enough for this Court to establish a *new* standard of review when the parties have had less than one week to respond to it.

3. Bankruptcy courts regularly utilize the business judgment and entire fairness standards to review debtor-in-possession financing under section 364. *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313-14 (Bankr. D. Del. 2011) (rejecting 364(c) protection for DIP loan to insider debtor for failure to meet entire fairness standard); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised"); *In re Republic Airways Holdings Inc.*, No. 16-10429, 2016 WL 2616717 at *11 (Bankr. S.D.N.Y. May 4, 2016). The FOMB contends that the case law is inapposite because no case applies the entire fairness standard to governmental debtors. Reply ¶ 41. Even if true, the FOMB, which bears the burden of meeting the relevant standard, has not pointed to any precedent establishing such new and different standard. Likewise, contrary to the FOMB's assertion, the genesis of the business judgment standard is irrelevant. Courts have adopted the business judgment—or in the case of insider transactions, entire fairness—standard to review requests for postpetition financing under section 364 of the Bankruptcy Code, and there is no reason why the entire fairness standard does not apply here.

**B. PREPA Has Not Demonstrated an Urgent Need for $1.3 Billion of Postpetition Financing**

4. PREPA seeks approval of a $1.3 billion Facility, and findings from the Court that the Facility (i) is required to finance operating expenses and (ii) is necessary to the Debtor's

continued operation. It has failed, yet again, to demonstrate that the requested financing amount corresponds to PREPA's actual needs.

5. It is undisputed that the Commonwealth, its agencies, instrumentalities and municipalities have years of past due electric bills, according to PREPA's books and records, and that PREPA has not waived any claims it may have for such overdue amounts. *See* Reply ¶¶ 17-20, 45. The FOMB and AAFAF agree that the Commonwealth and its instrumentalities should pay PREPA for the electricity they have consumed. Reply ¶ 17. However, conspicuously absent from the Reply and related filings is a full accounting of amounts owed by the Commonwealth, its agencies, instrumentalities, and municipalities for years prior to the current fiscal year where PREPA has provided electricity without compensation. *Compare* Filsinger Supplemental Decl. ¶ 4 (stating the debtor does not believe Central Government Agencies owe any material amounts to PREPA for electric services for the *current fiscal year*) *with id.* ¶ 8 (stating "public corporations" owe PREPA approximately $233 million, $169 million of which are comprised of receivables over 120 days). The Commonwealth's payment of certain amounts owed for services rendered for the six-month period between July and December 2017 and its $50 million prepayment for future energy consumption is a good start but does not go far enough to remedy the hundreds of millions of dollars of receivables that remain outstanding. Reply ¶¶ 18-19.

6. Beyond that, there is no authorization under Puerto Rico law for the Commonwealth to provide more than $550 million in postpetition financing to PREPA through June 30, 2017. *See* Joint Resolution No. 16 of January 26, 2018. The FOMB and AAFAF are asking the Court to authorize amounts not yet committed under the Facility, which may never materialize, and without sufficient visibility into whether there are alternative sources of revenue that would reduce any need for further financing, *see* Portela Decl. ¶¶ 8-11, including if CDL's

become available.[5] Moreover, PREPA's current inability to bill 100% of its active customer base is a temporary situation that will improve as power is restored. Mot. ¶ 19 (stating Debtor expects to resume collections before March 31, 2018, and to achieve a pre-hurricanes level of collections in mid-2018 (citing Filsinger Decl. ¶ 10)). Indeed, PREPA's cash flow projections show significantly improved collections by the beginning of May 2018 and may even be too conservative given PREPA's projections on restoration of power. *See* Docket No. 640 Exh. A-2. For these reasons, and others set forth in National's Objection, there is inadequate information upon which the Court can make a determination that PREPA requires $1.3 billion of postpetition financing to meet expenses and continue operating. If PREPA requires funding in excess of what is authorized under Puerto Rico law, it should return to the Court to demonstrate the need for any such financing.

### C. The Facility is Not Fair and Reasonable Under the Circumstances and Bondholders are Not Adequately Protected

7. PREPA has not shown that it meets the requirements for obtaining financing on a superpriority and priming lien basis. As set forth more fully in National's Objection, section 364(c) of the Bankruptcy Code provides that a debtor may only obtain financing on a superpriority basis if, among other things, the terms of the transaction are fair, reasonable, and adequate under the circumstances of the debtor-borrower and proposed lender. *See In re L.A. Dodgers LLC*, 457 B.R. at 312; *see also In re Ames Dep't Stores, Inc.*, 115 B.R. at 37; *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa.1991) (citing *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987)). PREPA has not demonstrated that the terms of the transaction are fair, reasonable, and adequate under the totality of the circumstances, which include the role that

---

[5] Up to $2 billion of federal funds may be available to help repair damage caused by Hurricane Maria. *See* Michelle Kaske, *Puerto Rico May Get $2 Billion for Power Grid, Governor Says*, BLOOMBERG (Feb. 7, 2018, 3:30 PM), *available at* https://www.bloomberg.com/news/articles/2018-02-07/puerto-rico-may-get-2-billion-for-power-grid-governor-says.

the Commonwealth and its instrumentalities have played in causing PREPA's current liquidity shortfall and the immense benefit the Commonwealth and its instrumentalities obtain from PREPA's continued operation. *See*, *e.g.*, *In re St. Mary Hosp.*, 86 B.R. 393 (Bankr. E.D. Pa. 1988) (finding that a DIP proposal was not fair or reasonable because the debtor-borrower was dominated by the lender, which was the parent company of the debtor, and "that the particular crisis requiring the infusion of [funding] was manufactured by [the lender]").

8. The Facility lacks terms that one would expect to see from an arm's length negotiation; namely, a requirement for the Commonwealth to pay and cause its instrumentalities to pay for past-due electricity bills owed to PREPA. Any party in PREPA's position—a critical vendor for the entire Commonwealth that is owed hundreds of millions of dollars—would have required repayment of amounts owed first, and loans as a last resort, and would not have saddled itself with a superpriority claim it may not be able to satisfy in full and liens priming the creditors that have borne, along with PREPA, the burden of providing the Commonwealth with free power.

9. Any postpetition financing should be conditioned on the Commonwealth using its full authority and best efforts prior to confirmation of a plan of adjustment to pay and cause its instrumentalities to pay any and all undisputed electricity bills due to PREPA. Furthermore, the amount of outstanding borrowings and, ultimately, the potential amount of any superpriority administrative expense claim and priming lien for the Commonwealth, should be reduced by amounts that continue to be owed by the Commonwealth and its instrumentalities for unpaid electric bills at the time of confirmation of a plan of adjustment for PREPA. Had the negotiation of the Facility been on a good-faith and arm's length basis, rather than a one-sided negotiation by the same parties on both sides, such condition would likely have been included.

5

10. The Commonwealth and PREPA should be aligned in imposing an obligation for the Commonwealth to make reasonable and concrete efforts to pay overdue electricity bills due to PREPA, and to use such amounts to reduce any repayment obligations or potential superpriority claim. *See* Reply ¶ 17 (The FOMB "agrees the government entities should pay their bills timely to PREPA."); *see also* Letter from the FOMB to Governor Ricardo A. Rosselló Nevares, Governor of Puerto Rico (Feb. 5, 2018)[6] (specifying that the proposed fiscal plan, dated January 24, 2018, must "further detail the means to improve fiscal governance, accountability, and controls for cash management," including by addressing increasing collections). The FOMB also alleges efforts have been made to collect amounts due to PREPA by various instrumentalities. *See* Reply ¶ 20 ("AAFAF has assisted PREPA in its collection efforts by encouraging government entities to pay their bills owed to PREPA." (citing Portela Decl. ¶14)). The FOMB argues, however, that it cannot "manufacture extra liquidity for these entities so they can pay their bills faster, without resolving more fundamental structural problems." *Id.* ¶ 17. This alleged impediment is illusory, as the FOMB could loan some of the $1.3 billion earmarked for PREPA under the Facility to *those* entities that may lack funds to pay for essential services so that they can pay their obligations to PREPA, rather than pursuing a superpriority, priming loan on the backs of PREPA creditors.

11. Indeed, as evidenced by the Commonwealth's recent payment of $23.7 million in amounts owed to PREPA for services provided between July and December 2017 and its $50.9 million advance payment for future electricity services, the Commonwealth *can* provide funds to PREPA for amounts owed without the strings of postpetition financing. Title III imposes no

---

[6] *Available at* https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/5a78d5cd6b7de.pdf.

6

limitation on the Commonwealth's ability to pay PREPA amounts due for receivables owing for years prior to fiscal year 2017—something that the FOMB fails to address.

12. In seeking a priming lien, PREPA also must show that existing bondholders are adequately protected, which burden it has not satisfied. The Commonwealth argues that its loan proceeds will be limited to payment of Current Expenses (which is not true, as set forth below) and that maintaining the System (as defined in the Trust Agreement) will protect the value of the PREPA bondholders' claims because PREPA will be able to generate future Revenues. *See, e.g.*, Reply ¶ 25. Yet, none of the forms of adequate protection specified in the Bankruptcy Code— replacement liens, cash payments, or other compensation that is the "indubitable equivalent" of the bondholders' interest in the Revenues—have been provided. *See* 11 U.S.C. § 361. Nor does the promise of preserving and enhancing the Debtor's assets in and of itself provide adequate protection to PREPA bondholders, as set forth in National's Objection, especially where such promise is highly speculative. Simply stated, the FOMB proposes to saddle PREPA with an addition $1.3 billion of debt with a priming lien, thereby putting bondholders' collateral at further risk, without a corresponding offset for such decline in value. *See, e.g.*, *In re Barbara K. Enters., Inc.*, 2008 WL 2439649 at *13 (Bankr. S.D.N.Y. June 16, 2008).

**D. The Proposed Order and Credit Agreement Require Further Modifications**

13. In addition to the modification set forth above, the Proposed Order and Credit Agreement must revise or eliminate questionable provisions, including, without limitation, the following:

- the Proposed Order limits use of the loan proceeds to payment of Current Expenses, as defined in the Trust Agreement (*see* ¶¶ B, 2, 10); however, the Credit Agreement allows PREPA to use proceeds to (i) pay for Ineligible Expenses set forth in the 13-Week Budget (which the FOMB has not agreed to provide to creditors), (ii) maintain an Operating Reserve Fund of $300 million that can be used to pay for Ineligible Expenses, and, (iii) once CDLs are available, to reimburse amounts expended for Eligible Uses since September 6, 2017 (§§ 2-

7

- 6(b)(ii), 4-13); the Credit Agreement should eliminate the foregoing uses of proceeds, which are inconsistent with the Proposed Order;

- the Credit Agreement purports to impose a lien on a number of accounts other than the Segregated Account, which security interest is overbroad and should be limited (§ 7-1);

- default interest should be eliminated (§ 2-7(c));

- findings that the Facility is a "permissible judgement as a governmental instrumentality" and that PREPA is unable to obtain adequate unsecured credit should be stricken in light of the FOMB's failure to show that unpaid bills for years prior to fiscal year 2017 cannot be paid to PREPA in lieu of financing (¶ A);

- the proposed order should define what modifications are "material" and require a motion with appropriate notice (¶ 6); and

- the finding that repayment obligations under the Facility are deemed Current Expenses under the Trust Agreement should be stricken as inconsistent with the Trust Agreement and unnecessary because of the request for a priming lien (¶ 10).

### III. RESERVATION OF RIGHTS

14. In light of document requests served on PREPA that remain outstanding, and ongoing depositions, National continues to reserve all rights, claims, defenses, and remedies, including, without limitation, to raise further and other objections to the Financing Motion and to introduce evidence prior to or at the hearing regarding the Financing Motion and argue points raised by other PREPA creditors in their supplemental briefs, in the event that National's objections are not resolved prior to such hearing.

### IV. CONCLUSION

15. For the reasons set forth herein, as well as those set forth in National's Objection and the objections of other PREPA creditors, the Financing Motion should be denied.

8

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 9th day of February, 2018.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this supplemental objection was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record. Also, a copy of this document will be notified via electronic mail to all case participants.

Dated: **February 9, 2018**
San Juan, Puerto Rico

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, PSC**
208 Ponce de León Avenue, Suite 1600
San Juan, PR 00936
Telephone: 787.756.9000
Facsimile: 787.756.9010
Email: epo@amgprlaw.com
acasellas@amgprlaw.com
larroyo@amgprlaw.com

By: */s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR No. 206314

*/s/ Alexandra Casellas-Cabrera*
Alexandra Casellas-Cabrera
USDC-PR No. 301010

*/s/ Lourdes Arroyo Portela*
Lourdes Arroyo Portela
USDC-PR No. 226501

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Marcia Goldstein*
Marcia Goldstein*
Jonathan Polkes*
Gregory Silbert*
Robert Berezin*
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007

Stephen A. Youngman*
200 Crescent Court, Suite 300
Dallas, Texas 75201-6950
Tel.: (214) 746-7700
Fax: (214) 746-7777
Email: marcia.goldstein@weil.com
jonathan.polkes@weil.com
gregory.silbert@weil.com
robert.berezin@weil.com
stephen.youngman@weil.com

*admitted *pro hac vice*

*Counsel for National Public Finance Guarantee Corp.*

9