**Reply Date:** February 12, 2018 at 1:00 p.m. (A.S.T.)
**Hearing Date:** February 15, 2018 at 9:30 a.m. (A.S.T.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS<br><br>**Court Filing Relates Only to PREPA and Shall Only be Filed in Case No. 17 BK 4780-LTS** |

## SUPPLEMENTAL OBJECTION OF
## SYNCORA GUARANTEE INC. TO THE URGENT
## JOINT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT
## BOARD FOR PUERTO RICO, AND THE PUERTO RICO FISCAL AGENCY
## AND FINANCIAL ADVISORY AUTHORITY FOR ENTRY OF INTERIM AND

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

-2-

**FINAL ORDERS (A) AUTHORIZING POSTPETITION SECURED FINANCING, (B) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, <u>(D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1
    I.    The DIP Facility is an Insider Transaction Subject to Heightened Scrutiny ....................... 2
    II.    Creditors are Entitled to Information Regarding the DIP Negotiations ........................... 4
    III.    The Court Should Not Grant Section 364(e) Protection ................................................... 6
CONCLUSION ............................................................................................................................. 7

# TABLE OF AUTHORITIES

**CASES**

*Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63 (1st Cir. 1984)............................................5

*Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288 (D.P.R. 1989)................................5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ..............................4

*In re Lafayette Hotel P'ship*, 227 B.R. 445 (S.D.N.Y. 1998)..........................................................2

*In re Los Angeles Dodgers LLC,* 457 B.R. 308 (Bankr. D. Del. 2011) ...........................................2

*In re MSR Hotels & Resorts, Inc.,* 2013 WL 5716897 (Bankr. S.D.N.Y. Oct. 1, 2013) ..................2

*In re St. Mary Hosp.*, 86 B.R. 393 (Bankr. E.D. Pa. 1988)..............................................................7

*In re TMT Procurement Corp.,* 764 F.3d 512 (5th Cir. 2014).........................................................6

*Riefkohl v. Alvarado*, 749 F. Supp. 374 (D. P.R. 1990)..................................................................3

*Schreiber v. Soc'y for Sav. Bancorp, Inc*., 11 F.3d 217 (D.C. Cir. 1993).........................................5

**STATUTES**

22 L.P.R.A. § 193 .............................................................................................................................3

11 U.S.C. § 364.............................................................................................................................1, 6

To the Honorable United States District Court Judge Laura Taylor Swain:

Syncora Guarantee Inc. ("Syncora") respectfully submits this supplemental objection pursuant the Court's Order setting a briefing schedule [Dkt. No. 636] in further opposition to the DIP Motion[2] [Dkt. No. 549] filed by PREPA, the Oversight Board and the Commonwealth (collectively, "Movants") and Movants' reply in further support of the DIP Motion (the "Reply") [Dkt. No. 617].

### PRELIMINARY STATEMENT

Movants have not carried their burden under section 364 of the Bankruptcy Code to demonstrate that the DIP Facility is appropriate and should be approved under the entire fairness standard, and have not provided any evidence to support a finding that the Commonwealth is a good faith lender.

The DIP Facility is an insider transaction devised by the Oversight Board and AAFAF, apparently without any consideration for the separate legal existence of PREPA or the interests of its stakeholders. The Oversight Board argues, without any support, that there is an identity of interests between the Commonwealth and PREPA that renders the entire fairness standard inapplicable to the DIP Facility. Because the Oversight Board and AAFAF are on both sides of the transaction, Movants' business judgment is not entitled to deference.

The Oversight Board cannot hide behind generalities such as PREPA's and the Commonwealth's shared goals for Puerto Rico, or the government's deliberative process

---

[2] Capitalized terms used herein but not other defined shall have the meaning ascribed to such terms in Syncora's objection to the DIP Motion [Dkt. No. 585] (the "Objection"). Syncora specifically incorporates the arguments raised in the Objection. Unless otherwise noted, docket entries referred to herein are from PREPA's Title III case, Bankruptcy Case No. 17 BK 04780-LTS.

privilege, to withhold the evidence required to satisfy Movants' burden of proof and support the Commonwealth's good faith finding. Accordingly, the DIP Motion should be denied.

## I. The DIP Facility is an Insider Transaction Subject to Heightened Scrutiny

Deference to Movants' business judgment is unwarranted where, as here, a proposed financing is an insider transaction. Courts have routinely recognized that "insiders' loans in a bankruptcy must be subject to rigorous scrutiny." *See In re Lafayette Hotel P'ship*, 227 B.R. 445, 454 (S.D.N.Y. 1998); *see also In re MSR Hotels & Resorts, Inc.,* 2013 WL 5716897 (Bankr. S.D.N.Y. Oct. 1, 2013) (applying heightened scrutiny to approval of DIP loan from affiliate of debtor's directors); *In re Los Angeles Dodgers LLC,* 457 B.R. 308, 313 (Bankr. D. Del. 2011) (applying entire fairness standard to approval of DIP loan where debtors' principal was not independent).

Movants do not dispute that the DIP Facility is an insider transaction. The Commonwealth controls PREPA and is clearly an insider of PREPA. The Oversight Board and AAFAF, by virtue of their respective authority over the Commonwealth and PREPA under PROMESA and the Puerto Rico Fiscal Agency and Financial Advisory Authority Act, are effectively on both sides of the DIP Facility. Further underscoring PREPA's lack of independence, PREPA's advisors, Rothschild & Co. and Greenberg Traurig LLP, were retained by AAFAF. None of the parties involved in "negotiating" the DIP Facility were representing the interests of PREPA and its stakeholders.

Instead of explaining how PREPA's interests were taken into account in the negotiations, the Oversight Board argues that there is an identity of interests between the Commonwealth and PREPA that renders the entire fairness standard inapplicable. The Oversight Board provides no support in law for this newly-created exception to the entire fairness standard or for the alleged identity of interests between PREPA and the Commonwealth.

-2-

While PREPA is a political instrumentality of the Commonwealth, the Enabling Act explicitly provides that that PREPA "is a corporation having legal existence and personality separate and apart from that of the [Commonwealth]." 22 L.P.R.A. § 193. *See also Riefkohl v. Alvarado*, 749 F. Supp. 374, 375-76 (D. P.R. 1990). In fact, in connection with its motion to appoint a chief transformation officer, the Oversight Board argued that PREPA "happens to be owned by the government, but it's a business, and it has to be run for the benefit of the people and its stakeholders as a business. . . . It has to be run as a business." *See* Omnibus Hr'g Tr. 13-19 (Nov. 13, 2017). The fact that PREPA and the Commonwealth may share an "overall common goal of obtaining fiscal integrity and servicing the citizens and creditors" does not allow the Oversight Board to disregard the legal existence and separate stakeholders of PREPA for the benefit of the Commonwealth. *See* Reply at ¶40.[3]

In addition, the Oversight Board's reliance on section 105 of PROMESA is irrelevant to the question of whether the Court should apply heightened scrutiny to a transaction involving an insider that is negotiated by the same parties on both sides. Finally, the Oversight Board provides no support for its position that Congress likely envisioned self-dealings when it drafted PROMESA. *See* Reply at ¶39. In fact, this Court has already indicated, in connection with litigation between the Commonwealth and COFINA, that having the Oversight Board on both sides of a litigation is problematic. *See* Omnibus Hr'g Tr. 106:6-15 (June 28, 2017).

The Reply itself provides a good example of why the DIP Facility should be scrutinized under the entire fairness standard: That PREPA did not require payment of the Commonwealth's unpaid electricity bills as a condition to a $1.3 billion loan makes clear that

---

[3] In addition, section 304(f) of PROMESA explicitly provides that "nothing in [PROMESA] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors."

-3-

this is not an arms' length transaction. The Oversight Board's disclosure that, on January 29, 2018, <u>after</u> the filing of the DIP Motion, the Commonwealth made a $75 million payment to PREPA for amounts due (some of which were for services rendered in July 2017) and to become due to PREPA, shows why exposing the DIP Facility and negotiations that led to it to the entire fairness standard is particularly warranted here.

## II. <u>Creditors are Entitled to Information Regarding the DIP Negotiations</u>

To determine whether the DIP Facility satisfies the entire fairness standard, it is necessary to examine the negotiation process. Accordingly, on January 29, 2018, Syncora and other PREPA bondholders and insurers sent a letter to counsel for Movants asking for information regarding the negotiations, terms, conditions, uses, timing and amount of any DIP proposals received. Rather than provide information that could help satisfy the entire fairness standard and support a good faith finding, the Oversight Board and AAFAF have taken the position that any negotiations regarding the DIP Facility, including who negotiated on behalf of each party, is protected by the deliberative process privilege and therefore not subject to review. For the reasons set forth below, this privilege does not apply to DIP negotiations between PREPA and the Commonwealth.

The deliberative process privilege exists to "enhance the quality of agency decisions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (internal quotations omitted). To determine whether to apply the privilege, courts conduct a balancing test that weighs the interests of the requesting party against the interests of the government. The factors considered are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of

-4-

the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220–21 (D.C. Cir. 1993). If the party seeking discovery can meet this balancing test, the privilege will not apply.

The first two factors are critical. *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984) ("The interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources."). Both factors are met in this case. Movants must demonstrate that the DIP Facility satisfies the entire fairness standard, and the Commonwealth has asked for a finding that it is extending the DIP Facility in good faith. Information about that negotiation is highly relevant to both of these points. Further, because the Commonwealth, through AAFAF and the Oversight Board, effectively negotiated with itself, the evidence is clearly not available from any other source. Additionally, the Commonwealth's role as a movant demands that the privilege not apply. Moreover, the privilege does not protect factual materials, including DIP proposals and term sheets. *See Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288, 296 (D.P.R. 1989).

Furthermore, the First Circuit cautions that "[t]he scope of a privilege is limited by its underlying purpose, and should not be applied where that purpose would not be served." *Ass'n for Reduction of Violence*, 734 F.2d at 66. While the purpose of the privilege is to promote good governance and effect decision making, shielding potential self-dealing among government officials does not serve that purpose. Protecting the "deliberative process" in this instance would in fact undermine the purpose of the privilege by allowing the government to enter into an insider transaction with a finding of "good faith" without having to demonstrate that the DIP Facility was in fact extended in good faith. Movants assert that the DIP Facility was agreed to at

-5-

arm's-length and in good faith, but then refuse to provide any support, insisting that everyone take their word for it. Having filed the DIP Motion on shortened notice and unsuccessfully attempted to limit the scope of objections at the interim hearing [Dkt. No. 557], Movants now hide behind the deliberative process privilege to shield the DIP Motion from any review, all while seeking a good faith finding from the Court. Because the purpose of the privilege would not be served by protecting PREPA and the Commonwealth's negotiations from discovery, the privilege should not apply and creditors should be entitled to discovery on the negotiations that surrounded the insider transaction. Absent additional information, Movants are unable to demonstrate that the DIP Facility is entirely fair.

### III.     The Court Should Not Grant Section 364(e) Protection

Even if the Court finds that Movants have satisfied the entire fairness standard, there is no evidence to support a good faith finding. Movants seek a finding that any obligations and other financial accommodations under the DIP Facility are "deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code." *See* Proposed Order at D. Section 364(e) provides that a lender who has "extended such credit in good faith" can avoid the damaging effects of reversal on appeal of authority to obtain a postpetition loan. 11 U.S.C. § 364(e). Whether a lender has acted in "good faith" for purposes of section 364(e) of the Bankruptcy Code is a factual issue on which the proponent bears the burden of proof. *See In re TMT Procurement Corp.,* 764 F.3d 512, 520 (5th Cir. 2014).

As noted above, the DIP Facility is an insider transaction that should be subject to heightened scrutiny. Movants have failed to provide any evidence that the DIP Facility was negotiated in good faith for purposes of section 364(e).

In addition, as noted in the Objection, because of the Commonwealth's contribution to PREPA's projected cash shortfall, absent sufficient evidence concerning the

-6-

negotiations of the DIP Facility, the Court should not make a finding that the Commonwealth offered the DIP Facility in good faith. Contrary to the Oversight Board's assertion, the Commonwealth's role in PREPA's current liquidity situation is relevant to the good faith inquiry. *In re St. Mary Hosp.*, 86 B.R. 393 (Bankr. E.D. Pa. 1988), a case cited by Movants, is directly on point. In *St. Mary Hosp.*, the court found that a DIP proposal was not fair or reasonable because the debtor-borrower was dominated by the lender, which was the parent company of the debtor. *Id*. at 401. Pursuant to the terms of the financing, the parent was to receive a superpriority lien. *Id*. The court found that "the most significant factor in our analysis is our perception that [the parent] completely dominates the Debtor and that the particular crisis requiring the infusion of $700,000.00 was manufactured by [the parent]." *Id*. Specifically, the court found that the debtor's financial crisis could have been averted. *Id*. The court held that the proposal was not fair or reasonable because the debtor's financial crisis was caused by the parent company, which was "not an outside lender but the puppeteer of a marionette-debtor." *Id*. at 402.

Here, the lack of evidence of good faith and arm's length negotiations weighs heavily against a good faith finding. Similar to *St. Mary Hosp.*, not only is the Commonwealth an insider of PREPA, but it is also partly responsible for PREPA's liquidity situation. Without evidence of actual negotiations involving independent advisors representing each party, there is nothing but the Oversight Board's conclusory statements to support a good faith finding.

## CONCLUSION

For the reasons set forth herein and in the Objection, the Court should deny the DIP Motion.

Dated: San Juan, Puerto Rico
February 9, 2018

| | |
|---|---|
| **GOLDMAN ANTONETTI & CORDOVA, LLC** | **DEBEVOISE & PLIMPTON LLP** |
| *s/ Carlos A. Rodríguez-Vidal* | *s/ My Chi To* |
| CARLOS A. RODRÍGUEZ-VIDAL | MY CHI TO* |
| USDC-PR No. 201213 | CRAIG A. BRUENS* |
| E-mail: crodriguez-vidal@gaclaw.com | ELIE J. WORENKLEIN* |
| | 919 Third Avenue |
| *s/ Solymar Castillo-Morales* | New York, New York 10022 |
| SOLYMAR CASTILLO-MORALES | Tel.: (212) 909-6000 |
| USDC-PR NO. 218310 | Fax: (212) 909-6836 |
| E-mail: scastillo@gaclaw.com | Email: mcto@debevoise.com |
| |       cabruens@debevoise.com |
| P.O. Box 70364 |       eworenklein@debevoise.com |
| San Juan, PR 00936-8364 | |
| Tel.: (787) 759-4117 | *admitted *pro hac vice* |
| Fax: (787) 767-9177 | |
| | *Counsel for Syncora Guarantee Inc.* |
| *Counsel for Syncora Guarantee Inc.* | |

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case. Further, I directed that the following counsel of record to be served by U.S. Mail:

Office of the United States Trustee for Region 21
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, PR 00901-1922

Gerardo J. Portela Franco
Puerto Rico Fiscal Agency and Financial
Advisory Authority (AAFAF)
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907

John J. Rapisardi, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036

Andrés W. López, Esq.
Law Offices of Andrés W. López
902 Fernández Juncos Ave.
San Jan, PR 00907

Martin J. Bienenstock, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299

Hermann D. Bauer, Esq.
O'Neill & Borges LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813

Nancy A. Mitchell
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

At San Juan, Puerto Rico, this 9th day of February, 2018.

By: /s/