**Hearing Date:** February 15, 2018 at 10:30 a.m. (AST)
**Reply Deadline:** February 12, 2018 at 1:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---

*In re*

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,[1]

    Debtors.

PROMESA
Title III

Case No. 17-BK-3283 (LTS)

(Jointly Administered)

---

*In re*

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA),

    Debtor.

PROMESA
Title III

Case No. 17-BK-04780 (LTS)

**Court Filing Relates Only to PREPA**

---

## LIMITED REPLY OF SCOTIABANK DE PUERTO RICO, AS ADMINISTRATIVE AGENT, AND SOLUS ALTERNATIVE ASSET MANAGEMENT LP IN SUPPORT OF URGENT MOTION FOR ENTRY OF AN ORDER AUTHORIZING POSTPETITION SECURED FINANCING

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Scotiabank de Puerto Rico ("Scotiabank"), as administrative agent for lenders owed approximately $550 million by the Puerto Rico Electric Power Authority ("PREPA"), and Solus Alternative Asset Management LP, on behalf of certain managed funds (collectively, "Solus"), as lenders of an additional $146 million to PREPA under a separate credit facility, respectfully submit this limited reply in support of the Oversight Board's Financing Motion.[2] As set forth in the Scotiabank Response and the Solus Response, the lenders under the Scotiabank and the Solus credit facilities (the "Fuel Line Lenders") — although concerned about the size of the proposed financing — generally support the relief sought in the Financing Motion. This reply is being filed for the primary purpose of addressing a new argument put forward by Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") in their supplemental objection to the Financing Motion. *See* Dkt. No. 652.

## STATEMENT OF SUPPORT

1. As explained in the Scotiabank Response and the Solus Response, the Fuel Line Lenders made pre-petition advances to PREPA (the "Fuel Line Advances") to allow PREPA to buy fuel supplies. PREPA agreed that the Fuel Line Advances would "be treated as Current Expenses under the Trust Agreement" and would be recorded as "Current Expenses on its books, records and financial statements."[3]

---

[2] This reply is submitted in accordance with the Court's order of February 6, 2018 permitting additional briefing relating to the Financing Motion [Dkt. No. 636]. Capitalized terms not defined have the same meanings as in the *Response and Limited Objection of Scotiabank de Puerto Rico, as Administrative Agent, to Urgent Motion for Entry of an Interim Order Authorizing Postpetition Secured Financing* (the "Scotiabank Response") [Dkt. No. 572]. To avoid repetition, the Scotiabank Response and the *Statement of Solus Alternative Asset Management LP in Response to the Urgent Joint Motion for Postpetition Secured Financing* (the "Solus Response") [Dkt. No. 576] are incorporated by reference.

[3] Scotiabank Credit Agreement §§ 3.02, 2.14; Solus Credit Agreement §§ 3.02, 2.12. The Scotiabank Credit Agreement, Solus Credit Agreement, and other relevant documents were publicly filed in connection with the *Motion of Scotiabank de Puerto Rico, as Administrative Agent, and Funds Advised*

2. Although the Commonwealth financing will have priority over the Fuel Line Advances, the Fuel Line Lenders nonetheless support the proposed financing for the simple reason that PREPA needs liquidity and no superior alternative has been presented.[4] The Commonwealth financing also includes certain favorable features, including low interest rates and no prepayment penalties. And while the Fuel Line Lenders would prefer that PREPA be permitted to borrow only what it is projected to need — which, based on PREPA's cash flow forecast, is well below the $1.3 billion it has sought — PREPA and its creditors will clearly be better off *with* the Commonwealth financing than they would be *without* that financing.

## LIMITED REPLY

3. The purpose of this reply, aside from expressing support for the proposed financing, is to address a new argument put forward by Assured that has particular relevance to the Fuel Line Lenders and other holders of claims that are Current Expenses as defined in the Trust Agreement. In particular, in contesting the adequate protection provided to PREPA bondholders, Assured has asserted that the bondholders have a valid lien on *all* of PREPA's cash, which attaches even before Current Expenses are paid. Assured Supp. Obj. at 2–3. To decide the Financing Motion, the Court does not have to address that assertion, because the Oversight Board has provided multiple grounds on which to conclude that the bonds are adequately protected. *See, e.g.*, Oversight Bd. Reply ¶ 26 ("maintenance of infrastructure and

---

*by Solus Alternative Asset Management LP for Leave to Intervene* [Adv. Pro. No. 17-00232, Dkt. No. 24] and are appended to the Declaration of Angela K. Herring [Adv. Pro. No. 17-00232, Dkt. No. 26].

[4] In addition, at the request of the Fuel Line Lenders, the Oversight Board has made several changes to the Proposed Final Financing Order. As revised, the order: (a) expressly preserves all of PREPA's set-off rights under applicable law, *see* Dkt. No. 640-1 at p. 10 ["Reservation of Rights"]; (b) requires notice and a hearing prior to any material amendment to the Credit Agreement, *see id.* ¶ 6 ["Amendments, Consents, Waivers, and Modifications"]; and (c) provides that creditors may receive financial information regardless of their participation in mediation, *see* Dkt. No. 640-2 §§ 5-2, 5-3.

assets generating revenue is sufficient adequate protection"). But, to the extent the Court does consider the scope of the bondholders' lien, the Court should reject Assured's position on the basis that it is thoroughly at odds with the terms of the Trust Agreement.

4. Assured fundamentally misstates the terms of the Trust Agreement in arguing that the bondholders have a lien on all of PREPA's cash, including cash received by PREPA that is used to pay Current Expenses. As summarized below, the Trust Agreement provides the Trustee with a lien on PREPA's *net* revenues — *i.e.*, revenues that are deposited into a "Sinking Fund" *after* payment of Current Expenses. PREPA's bondholders have no valid and perfected lien on PREPA's *gross* cash revenues.

5. The Trust Agreement contains specific instructions to PREPA regarding the disposition of its "Revenues," defined as "all moneys received by [PREPA] in connection with or as a result of its ownership or operation of the System."[5] First, Section 503 of the Trust Agreement creates a "General Fund" into which all Revenues are deposited.[6]

6. Section 505 then requires that "moneys in the General Fund will be used *first* for the payment of the Current Expenses of the System."[7] Section 505 also provides that Current Expenses will not exceed amounts that are "reasonable and necessary" and included in the "Annual Budget"; those separate covenants, however, in no way detract from PREPA's obligation to pay *all* Current Expenses "first" out of the General Fund. Indeed, Section 505

---

[5] Trust Agreement at 24.

[6] Trust Agreement § 503.

[7] Trust Agreement § 505 (emphasis added). "Current Expenses" are defined in part as PREPA's "reasonable and necessary current expenses of maintaining, repairing and operating the System." *Id*. at 15 (definition of "Current Expenses").

-3-

provides that if Current Expenses "exceed the total amount provided in the Annual Budget," PREPA simply has to report "such excess" in writing.[8]

7. Under the Trust Agreement, the bondholders' lien does not attach to PREPA's cash deposits until PREPA has paid its Current Expenses and excess amounts (if any) have been transferred out of the General Fund. Section 506 of the Trust Agreement directs PREPA to transfer its revenues — *after* payment of Current Expenses — from the General Fund to a "Revenue Fund."[9] Section 507 then requires that amounts in the Revenue Fund be transferred to a "Sinking Fund" and other subaccounts controlled by the bond Trustee. The cash deposits in those specified accounts, *as opposed to deposits in the General Fund*, are "subject to a lien . . . in favor of the holders of the bonds."[10]

8. The Trust Agreement, accordingly, only grants the bond Trustee a lien on "Net Revenues," defined to mean "the amount of the *excess* of the Revenues for such period over the Current Expenses for such period."[11] The lien attaches when Current Expenses have been paid in full and excess amounts have been transferred to the Sinking Fund or other subaccounts controlled by the Trustee. The Trustee has no lien on cash held in the General Fund or on other accounts that are not controlled by the bond Trustee.[12]

---

[8] Trust Agreement § 505.

[9] Trust Agreement § 506.

[10] Trust Agreement § 507(h); *see also* Trust Agreement at 5 (form of Power Revenue Bond) (Sinking Fund is "pledged to and charged with" payment of principal and interest on bonds).

[11] Trust Agreement at 18 (emphasis added).

[12] The Trust Agreement defines the term "Opinion of Counsel" to mean a written opinion stating that the Trust Agreement "creates a legally valid and effective pledge of the *Net Revenues*." Trust Agreement at 18–19 (emphasis added). Consistent with that definition, the legal opinion from Sidley Austin, PREPA's counsel, appended to the August 15, 2013 Official Statement for the 2013A bond issuance, says that the Bonds are "payable solely from the Sinking Fund" and that the *Sinking Fund* "is

9. Ignoring all of the above, Assured cites Section 701 of the Trust Agreement in support of its assertion that the bondholders have a lien on PREPA's *gross* revenues. *See* Assured Supp. Obj. at 1. But Assured quotes only part of the provision. Under Section 701, PREPA's "Revenues" are "pledged to the payment" of the bonds, *but only* "in the manner and to the extent hereinafter particularly specified."[13] As explained above, multiple provisions of the Trust Agreement limit the "extent" of the revenue pledge and show that it is a pledge of *Net* Revenues only.

10. The conclusion that the Trust Agreement grants only a *Net* Revenue pledge is further mandated by the fact that the lien at issue is on cash in deposit accounts, which can only be perfected by control. As noted above, "Revenues" are defined by the Trust Agreement not as receivables but as "*moneys received*" — namely, cash in PREPA's deposit accounts. Under Section 9-314(a) of the Uniform Commercial Code, a secured party must have control to perfect an interest in a deposit account. *See* 19 L.P.R.A. § 2264(a). The Trust Agreement does not grant any lien on the General Fund, nor does it provide the bond Trustee with any control over the General Fund, as opposed to the Sinking Fund. Accordingly, even if the Trustee somehow had a lien on gross revenues, the lien would not be perfected.

11. In sum, contrary to Assured's argument, PREPA's bondholders do *not* have a lien (perfected or otherwise) on PREPA's gross revenues; any lien is *net* of payment of Current Expenses. The Fuel Line Lenders thus agree with the Oversight Board that — as long as the proceeds of the new financing are used to pay Current Expenses — the bondholders have no

---

pledged to and charged with the payment of the principal of and interest on such bonds. . . ." PREPA, Power Revenue Bond Official Statement for Series 2013A (Aug. 15, 2013) App'x IV ¶ 6.

[13] Trust Agreement § 701.

basis to claim that they lack adequate protection. The Fuel Line Lenders further agree that the obligations to repay the Commonwealth financing are themselves Current Expenses under the Trust Agreement, and that the Financing Motion should be granted based on the structure set forth in the Proposed Final Financing Order and the Credit Documents submitted to the Court.

Dated: February 12, 2018

Respectfully submitted,

/s/ Antonio A. Arias
Antonio A. Arias
USDC-PR No. 204906
aaa@mcvpr.com
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 250-5604
Facsimile: (787) 759-9225

/s/ Richard G. Mason
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
arwolf@wlrk.com
eakleinhaus@wlrk.com
akherring@wlrk.com

*Attorneys for Scotiabank de Puerto Rico, as Administrative Agent*

/s/ Jose L. Ramirez-Coll
Jose L. Ramirez-Coll
USDC-PR No. 221702
jramirez@amrclaw.com
ANTONETTI MONTALVO & RAMIREZ-COLL
P.O. Box 13128
San Juan, Puerto Rico 00908
Telephone: (787) 977-0303
Facsimile: (787) 977-0323

/s/ Sandy Qusba
Sandy Qusba (admitted *pro hac vice*)
Bryce L. Friedman (admitted *pro hac vice*)
Nicholas Baker (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: squsba@stblaw.com
bfriedman@stblaw.com
nbaker@stblaw.com

*Attorneys for Solus Alternative Asset Management LP*