**Hearing Date: March 7, 2018 at 9:30 a.m. (AST)**
**Objection Deadline: February 20, 2018 at 4:00 p.m. (AST)**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*,<br><br>                    Debtors. [1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### NOTICE OF HEARING ON MOTION OF THE
### PBA FUNDS FOR THE PAYMENT OF RENT

**PLEASE TAKE NOTICE** that a hearing on the *Motion of the PBA Funds for the Payment of Rent* (filed February 13, 2018) (the "Motion") will be held before the Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, San Juan, Puerto Rico 00918-1767, as part of the next Omnibus Hearing, which is currently scheduled to occur on **March 7, 2018 at 9:30 am (Atlantic Standard Time)**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion shall be in writing; shall conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Puerto Rico, and the *Order Further Amending Case Management Procedures* [ECF No. 1512] (the "Case Management Order"); shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*,

---

[1] The Debtors in these title III cases, along with the last four digits of each Debtor's federal tax identification number, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (No. 17-BK-3283-LTS) (3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (No. 17-BK-3566-LTS) (9686); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (No. 17-BK-3567-LTS) (3808); (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (No. 17-BK-3284-LTS) (8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (No. 17-BK-4780-LTS) (3747).

electronically in accordance with rule 5 of the Local Civil Rules for the District of Puerto Rico, and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF), to the extent applicable; and shall be served on (i) counsel for the PBA Funds, Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019 (Attn: Gary S. Lee and James M. Peck) and G. Carlo-Altieri Law Offices, LLC, 254 San Jose St., Third Floor, San Juan, Puerto Rico 00901 (Attn: Gerardo A. Carlo) and (ii) the Master Service List (as such term is defined in the Case Management Order), so as to be so filed and received no later than **February 20, 2018 at 4:00 p.m. (Atlantic Standard Time)** (the "Objection Deadline").

        **PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the District Court may enter an order granting the relief sought without a hearing pursuant to the Case Management Order.

*[Signature page follows]*

Date: February 13, 2018

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/ Kendra Loomis*
Kendra Loomis
USDC PR No. 227408
Telephone: (787) 370-0255
loomislegal@gmail.com

**G. CARLO-ALTIERI LAW OFFICES, LLC**
254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

-and-

By: */s/ Gary S. Lee*
Gary S. Lee

**MORRISON & FOERSTER LLP**
James M. Peck (admitted *pro hac vice*)
Gary S. Lee (admitted *pro hac vice*)
James A. Newton
Andrew R. Kissner
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JPeck@mofo.com
GLee@mofo.com

*Counsel for the PBA Funds*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors. [1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br> (Jointly Administered)<br><br>**Hearing Date: March 7, 2018 at 9:30 a.m. (AST)**<br>**Objection Deadline: February 20, 2018 at 4:00 p.m. (AST)** |

## MOTION OF THE PBA FUNDS FOR THE PAYMENT OF RENT

---

[1] The Debtors in these title III cases, along with the last four digits of each Debtor's federal tax identification number, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (No. 17-BK-3283-LTS) (3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (No. 17-BK-3566-LTS) (9686); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (No. 17-BK-3567-LTS) (3808); (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (No. 17-BK-3284-LTS) (8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (No. 17-BK-4780-LTS) (3747).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

JURISDICTION, VENUE, AND STANDING.......................................................................3

BACKGROUND ......................................................................................................................4

    A.    The Public Buildings Authority and PBA Bonds ....................................................4

    B.    The Title III Cases ......................................................................................................7

RELIEF REQUESTED...........................................................................................................10

BASIS FOR RELIEF .............................................................................................................11

    A.    The Bankruptcy Code Imposes an Unconditional Obligation on the Debtors
to Pay Rent in a Timely Manner Until the PBA Leases are Assumed or
Rejected..........................................................................................................................11

    B.    In the Alternative, the PBA is Entitled to an Allowed Administrative
Expense Claim that Continues to Accrue and Will Be Paid Under a Plan of
Adjustment ....................................................................................................................13

    C.    PROMESA Section 305 Does Not Excuse the Debtors from Compliance
with Bankruptcy Code Section 365(d)(3) ..............................................................14

RESERVATION OF RIGHTS ...............................................................................................15

CONCLUSION.......................................................................................................................15

ny-1310826

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACP Master, Ltd. v. Commonwealth of Puerto Rico (In re Commonwealth of Puerto Rico)*,
Case No. 17-00189 (LTS) [ECF No. 124] (D.P.R. Jan. 30, 2018) ........................................14

*Assured Guar. Corp. v. Commonwealth of Puerto Rico (In re Commonwealth of Puerto Rico)*,
Case No. 17-00155 (LTS) [ECF No. 125] (D.P.R. Jan. 30, 2018) ........................................14

*CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*,
406 F.3d 229 (4th Cir. 2005) ...............................................................................................12

*In re Brennick*,
178 B.R. 305 (Bankr. D. Mass. 1995) ...................................................................................13

*In re Café La Plage Mgmt., Inc.*,
No. 14-01977 (MCF), 2014 WL 7011825 (Bankr. D.P.R. Dec. 11, 2014) ............................11

*In re Circuit City Stores, Inc.*,
447 B.R. 475 (Bankr. E.D. Va. 2009) ...................................................................................13

*In re CSVA Inc.*,
140 B.R. 116 (Bankr. W.D.N.C. 1992) ..................................................................................11

*In re J.T. Rapps, Inc.*,
225 B.R. 257 (Bankr. D. Mass. 1998) ...................................................................................12

*In re Narragansett Clothing Co.*,
119 B.R. 388 (Bankr. D.R.I. 1990) .......................................................................................12

*In re Pudgie's Dev. of N.Y.*,
223 B.R. 421 (Bankr. S.D.N.Y. 1998) .............................................................................12, 14

*In re PYXSYS Corp.*,
288 B.R. 309 (Bankr. D. Mass. 2003) ...................................................................................11

*In re Rare Coin Galleries of Am., Inc.*,
72 B.R. 415 (Bankr. D. Mass. 1987) ................................................................................12, 13

*In re Vigo*,
No. 08-06509, 2009 WL 4040145 (Bankr. D.P.R. Nov. 20, 2009) ........................................12

*Thinking Machs. Corp. v. Mellon Fin. Servcs. Corp. (In re Thinking Machs. Corp.)*,
67 F.3d 1021 (1st Cir. 1995) .................................................................................................12

ii

*Towers v. Chickering & Gregory (In re Pac.-Atl. Trading Co.)*,
   27 F.3d 401 (9th Cir. 1994) ..................................................................................12

**Statutes**

22 L.P.R.A.
   § 902............................................................................................................................4
   § 903............................................................................................................................4
   § 906............................................................................................................................4
   § 907a..........................................................................................................................5
   § 916.......................................................................................................................5, 6

31 L.P.R.A. § 3374 ..............................................................................................................3

11 U.S.C.
   § 365(d)(3) ........................................................................................................ *passim*
   § 365(d)(4) ..............................................................................................................8, 9
   § 503(b) .......................................................................................................3, 11, 13
   § 507(a)(2) ...................................................................................................3, 11, 13
   § 922(d)......................................................................................................................14
   § 928(a)......................................................................................................................14
   § 1109(b)......................................................................................................................3

Puerto Rico Oversight, Management, and Economic Stability Act
   § 301(a)........................................................................................................................3
   § 304(a)........................................................................................................................7
   § 305..........................................................................................................................14
   § 306(a)........................................................................................................................3
   § 307(a)........................................................................................................................3
   § 314(b)(4) ..........................................................................................................11, 14

**Other Authorities**

"AAFAF Announces Updated Information Concerning Cash Balances at Puerto
   Rico Fiscal Plan Entities," Dec. 18, 2017, *available at*
   http://www.aafaf.pr.gov/assets/aafaf-presrelease-summarybankaccounts.pdf ........................9

1995 Resolution § 701 ..........................................................................................................5

1995 Resolution § 702 ..........................................................................................................5

Commonwealth of Puerto Rico Financial Information and Operating Data Report,
   Dec. 18, 2016, *available at*
   https://emma.msrb.org/ER1001309-ER783509-ER1184694.pdf ..............................................6

P.R. Const. art. VI, § 2 ..........................................................................................................5

Federal Rules of Bankruptcy Procedure Rule 2019................................................................1, 6

ny-1310826

Fiscal Plan for Puerto Rico, Mar. 13, 2017, *available at*
http://www.aafaf.pr.gov/assets/planfiscal13demarzo2017.pdf.................................................7

Government of Puerto Rico, Government Development Bank of Puerto Rico,
Investor Resources, *available at*
http://www.gdb-pur.com/investors_resources/pr_public_building.html.................................4

New Fiscal Plan for Puerto Rico, Feb. 12, 2018, *available at*
http://www.aafaf.pr.gov/assets/newfiscalplanforpr-02-12-2018.pdf.......................................7

PRS ADC AEP Reg. 6502, Art. VI(A) (2002) ..........................................................................6

Puerto Rico Public Buildings Authority, Resolution No. 1280, Authorizing the
Issuance of Government Facilities Revenue Refunding Bonds, Series M,
Government Facilities Revenue Bonds, Series N, and Government Facilities
Revenue Bonds, Series O, Guaranteed by the Commonwealth of Puerto Rico,
adopted December 6, 2007, *available at*
http://www.gdb-pur.com/investors_resources/documents/PBAResolution1280
Dec62007-SeriesMNO.pdf .....................................................................................................6

Puerto Rico Public Buildings Authority, Resolution No. 468, Authorizing and
Securing Government Facilities Revenue Bonds Guaranteed by the
Commonwealth of Puerto Rico, adopted June 22, 1995, *available at*
http://www.gdb-pur.com/investors_resources/PBA-Res468.pdf...............................................4

Treasury Single Account FY 2018 Cash Flow as of January 26, 2018, *available at*
http://www.aafaf.pr.gov/assets/fy18-weeklytsacashflow-1-26-2018.pdf ...................................7

iv

The PBA Funds[2] hereby seek the entry of an order directing the Debtors (defined herein) to satisfy their postpetition rental obligations under a number of unexpired leases.  In support of their motion (the "Motion"), the PBA Funds respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1.     For more than nine months, the Puerto Rico Public Buildings Authority (the "PBA")—the owner and manager of numerous properties leased by the Commonwealth of Puerto Rico and its various departments, agencies, and instrumentalities—has failed to honor its legal, contractual, and fiduciary obligations to do what every landlord must: collect rent.  All are mindful of the challenges in the Commonwealth right now, but simple actions that can be taken, must be taken.  In an effort to resolve this issue without judicial intervention, the PBA Funds reached out to the PBA by letter to seek assurances that the PBA is taking all appropriate steps to preserve and protect its rights and remedies as lessor.  To date, the PBA Funds have received no response.  In light of the PBA's inaction, this motion followed.

2.     The PBA is bound by its own duly-enacted regulations to ensure that rent is paid.  Yet despite the substantial arrearages that continue to accrue month after month, it appears that the PBA has done little to enforce its rights.  The commencement by the Oversight Board of these Title III Cases poses no legal impediment to the PBA's ability to collect the rent it is owed: Bankruptcy Code section 365(d)(3) states that a debtor "shall timely perform" all obligations under an unexpired lease of nonresidential real property until such lease is either assumed or rejected.

---

[2] The PBA Funds currently consist of (a) Fir Tree Partners, (b) Candlewood Investment Group, and (c) Inglesea Capital, LLC, each of which holds PBA Bonds (defined herein) or acts as investment manager or advisor (or is an affiliate of entities which act as investment managers or advisors) to funds and/or accounts that hold PBA Bonds. The PBA Funds intend to file an amended verified statement in accordance with Rule 2019 of the Federal Rules of Bankruptcy Procedure and the *Order Further Amending Case Management Procedures* [ECF No. 1512].

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms in the body of the Motion.

Nothing contained within PROMESA—or any other statutory provision—exempts the Debtors from compliance with this unequivocal mandate.

3.       Although the PBA's entitlement to an administrative expense claim for unpaid rent is beyond dispute, the possibility exists that the PBA, in its delay to assert or otherwise confirm this claim, may impair or waive its rights.  Indeed, some courts in the past have held that a landlord that does not timely enforce its rights under Bankruptcy Code section 365(d)(3) may forego its ability to collect postpetition rents in a timely manner—or, under certain circumstances, waive the right to payment altogether.  It is imperative that this does not occur here.

4.       The PBA is entrusted by statute with planning, designing, administering, and maintaining physical facilities related to critical government services, including schools, hospitals, and courthouses.  However, the proposed funding levels contained in the previous fiscal plan (certified by the Oversight Board long before Hurricanes Irma and Maria made landfall) were already insufficient for the PBA to properly invest in and maintain these facilities; there is no reason to believe that the PBA will fare any better under the revised fiscal plan recently published by AAFAF, which lacks the most basic information regarding the proposed funding levels for the PBA over the next five years.  This makes the collection of rental payments by the PBA more critical than ever before.  Without these payments, the PBA will be unable to make the capital expenditures necessary to repair, maintain, and improve the properties under its dominion and control, significantly impairing their value.  That foreseeable deterioration will, in turn, impact the motivation of current and potential future tenants to lease PBA facilities and introduce additional hurdles to any restructuring and turnaround efforts proposed by the PBA.

5.       The PBA Funds have alerted the PBA to these concerns, and have requested assurances that the PBA understands the gravity of a continuing failure to carry out its duties under

ny-1310826

applicable law.   Because the PBA has failed to respond and confirm that it will fulfill its

responsibilities as landlord, the PBA Funds seek the assistance of this Court.   As third-party

beneficiaries under PBA Leases and parties otherwise entitled to be heard in the Debtors' Title III

Cases, the PBA Funds are empowered to enforce the terms of the PBA Leases, and to preserve the

PBA's rights to be paid what it is owed as landlord.

## JURISDICTION, VENUE, AND STANDING

6.     The United States District Court for the District of Puerto Rico (the "Court") has

jurisdiction over this matter pursuant to section 306(a) of the Puerto Rico Oversight, Management,

and Economic Stability Act ("PROMESA").[4]

7.     Venue is proper pursuant to PROMESA section 307(a).

8.     The statutory bases for the relief requested herein are sections 365(d)(3), 503(b),

and 507(a)(2) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), made

applicable to these cases by PROMESA section 301(a).

9.     The PBA Funds are creditors of the Commonwealth entitled to appear and be heard

on any matter in the Title III Cases (defined herein).  *See* 11 U.S.C. § 1109(b).  Furthermore, upon

information and belief, the PBA Funds are collectively intended third-party beneficiaries of the

PBA's leases with the Debtors and other Commonwealth departments, agencies, and

instrumentalities (collectively, the "PBA Leases").  Under relevant provisions of Commonwealth

law, the PBA Funds therefore have standing to enforce the provisions of such leases, including the

obligation of tenants to pay rent when due.[5]

---

[4] *See* 48 U.S.C. § 2101, *et seq.*

[5] *See* 31 L.P.R.A. § 3374.

3

ny-1310826

## BACKGROUND

### A.    The Public Buildings Authority and PBA Bonds

10.    Since its creation in 1958 through the Public Buildings Authority Enabling Act (the "PBA Enabling Act"), the PBA has been charged with planning, designing, administering, and providing maintenance for physical facilities related to government services, such as schools, health facilities, offices, headquarters, courts, warehouses, and workshops.  *See* 22 L.P.R.A. § 903. The PBA was constituted as an instrumentality of the Commonwealth, and the execution of its powers was "deemed and understood to be an essential function" of the Commonwealth government.  *See* 22 L.P.R.A. § 902.  In furtherance of its mission, the PBA has the authority to issue bonds "to finance office buildings and other facilities, which are leased to various departments, public agencies and instrumentalities of the Commonwealth of Puerto Rico."[6]

11.    In 1995, pursuant to the powers set forth in sections 906, 907, and 907a of the PBA Enabling Act, the Board of Directors of the PBA adopted Resolution No. 468, authorizing the issuance of Government Facilities Revenue Bonds and Government Facilities Revenue Refunding Bonds (collectively, all outstanding bonds thereunder, the "PBA Bonds" and the holders of PBA Bonds, the "PBA Bondholders").[7]  The PBA's Board of Directors subsequently adopted other "supplemental" bond resolutions authorizing the issuance under the 1995 Resolution of each series or group of series of PBA Bonds and approving certain series-specific aspects of those bonds.[8]

---

[6] *See* Government of Puerto Rico, Government Development Bank of Puerto Rico, Investor Resources, *available at* http://www.gdb-pur.com/investors_resources/pr_public_building.html.

[7] *See* Puerto Rico Public Buildings Authority, Resolution No. 468, Authorizing and Securing Government Facilities Revenue Bonds Guaranteed by the Commonwealth of Puerto Rico, adopted June 22, 1995, *available at* http://www.gdb-pur.com/investors_resources/PBA-Res468.pdf (the "1995 Resolution").  The PBA also has outstanding bonds issued pursuant to resolutions approved in 1970 and 1978, but the amount of bonds that remain outstanding under those earlier resolutions is *de minimis* relative to the aggregate amount of bonds outstanding under the 1995 Resolution.

[8] *See, e.g.*, Puerto Rico Public Buildings Authority, Resolution No. 1280, Authorizing the Issuance of Government Facilities Revenue Refunding Bonds, Series M, Government Facilities Revenue Bonds, Series N, and Government Facilities Revenue Bonds, Series O, Guaranteed by the Commonwealth of Puerto Rico, adopted December 6, 2007,

4

12.     The repayment of PBA Bonds is substantially supported by rental payments made pursuant to the PBA Leases, under which the PBA leases facilities to various departments, agencies, instrumentalities, public corporations, and municipalities of the Commonwealth, as well to a number of private entities.  Under the 1995 Resolution, the PBA covenanted that "all Lease Agreements which it enters into for the leasing of Authority Facilities will . . . require the lessee or lessees of such Facilities to pay rentals which in the aggregate will be sufficient to provide the sums needed from time to time to" timely pay principal, interest, and certain amortization requirements relating to bonds issued by the PBA in connection with such facilities.  *See* 1995 Resolution § 701; *see also* 22 L.P.R.A. § 916.  In addition, the PBA covenanted that it would not agree to any amendment, modification, or termination of the PBA Leases that would reduce the amount of rental payments to levels insufficient to make the payments described above.  *See* 1995 Resolution § 702.

13.     The PBA Enabling Act also pledges the good faith and credit of the Commonwealth in support of the payment of rent under any lease agreements that Commonwealth departments, agencies, instrumentalities, and public corporations have entered into with the PBA.[9] *See* 22 L.P.R.A. § 916.  In the event that a governmental lessee fails to pay the full amount of rent due in a timely manner, the PBA's own duly-enacted regulations require it to take affirmative steps to collect any such deficiencies, first from the lessee itself, and then from the Secretary of the

---

*available at* http://www.gdb-pur.com/investors_resources/documents/PBAResolution1280Dec62007-SeriesMNO.pdf.

[9] In addition to guaranteeing certain rent payments due under the PBA Leases, the Commonwealth also guaranteed the repayment of principal and interest on the PBA Bonds as public debt, pursuant to both the Constitution of the Commonwealth of Puerto Rico and various legislative enactments.  *See, e.g.,* P.R. Const. art. VI, § 2; 22 L.P.R.A. § 907a ("The Commonwealth of Puerto Rico hereby guarantees the payment of the principal of and interest on outstanding bonds at any given time . . . issued from time to time by the Public Buildings Authority. . . ."); *see also id.* (providing that, to make the payment on the bonds, "the full faith, credit, and the taxing power of the Commonwealth of Puerto Rico are hereby pledged."); PBA Resolution No. 1280 §§ 2(d), 3(d), 4(d) (designating each of Series M, N, and O PBA Bonds to benefit from the Commonwealth's guarantee of principal and interest).

ny-1310826

Treasury of the Commonwealth of Puerto Rico. *See* PRS ADC AEP Reg. 6502, Art. VI(A) (2002).

14.     As previously noted, the repayment of PBA Bonds is substantially supported by the rent received by the PBA from tenants under the PBA Leases. The PBA Funds hold PBA Bonds from numerous series in the aggregate principal amount of approximately $670 million.[10] Accordingly, the PBA Funds—along with the PBA's employees and other creditors—are the ultimate economic beneficiaries of a substantial portion of the rent payable to the PBA. The PBA Funds are aggrieved by the failure of the PBA to collect from the Commonwealth and other lessees the contractual rent due and owing under the PBA Leases in amounts materially above the bare minimum necessary to fund the PBA's operational needs (which do not include the critical capital expenditures necessary to maintain PBA's facilities), in contravention of the covenants contained in the 1995 Resolution. The PBA appears to be allowing the Commonwealth to remain in its premises indefinitely while paying only minimal rent, to the detriment of the PBA and all of its constituents.

15.     The harm here is real and growing. The Commonwealth's most recent financial report shows that the PBA received rental revenues totaling $425 million for fiscal year 2016.[11] These revenues were used to fund, among other things, employee salaries, maintenance, infrastructure improvements, debt service, and general operating expenses. The pre-hurricane fiscal plan (the "Certified Fiscal Plan") certified by the Oversight Board in March 2017 slashed PBA's resources dramatically.[12] The Certified Fiscal Plan provided the PBA with an "Operating

---

[10] The PBA Funds intend to file an amended verified statement in accordance with Rule 2019 of the Federal Rules of Bankruptcy Procedure and the *Order Further Amending Case Management Procedures* [ECF No. 1512].

[11] *See* Commonwealth of Puerto Rico Financial Information and Operating Data Report, Dec. 18, 2016, *available at* https://emma.msrb.org/ER1001309-ER783509-ER1184694.pdf (the "Commonwealth Financial Report").

[12] *See* Fiscal Plan for Puerto Rico, Mar. 13, 2017, *available at* http://www.aafaf.pr.gov/assets/planfiscal13demarzo2017.pdf.

ny-1310826

Subsidy (Rent)" consisting of only a portion of the Certified Fiscal Plan's already meager projected "utility" expenses.  Indeed, during fiscal year 2018 the PBA has received only approximately $6.3 million per month, or $76 million on an annualized basis, from the Commonwealth's Treasury Single Account.[13]  Moreover, the revised fiscal plan (the "Revised Fiscal Plan") recently published by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") does not even provide for separate disbursements to the PBA; instead, all expenses related to the PBA are treated as consolidated with those of the "Central Government."[14] It therefore appears that if the PBA fails to collect the substantial rental payments that remain outstanding, the PBA's ability to operate will be severely constrained over the life of the Revised Fiscal Plan until at least 2022.

## B.    The Title III Cases

16.    Between May 3 and July 2, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed voluntary petitions for relief pursuant to section 304(a) of PROMESA,  thereby commencing cases under title III thereof (collectively, the "Title III Cases") for each of: (a) the Commonwealth, (b) COFINA, (c) HTA, (d) ERS, and (e) PREPA (collectively the "Debtors").

17.    On June 1, 2017, the Court entered an order directing the joint administration of the Commonwealth's Title III Case and COFINA's Title III Case, for procedural purposes only [ECF No. 242].  On June 29, 2017, the Court entered an order [ECF No. 537] directing the joint administration of the Title III Cases of HTA and ERS with that of the Commonwealth, for procedural purposes only.

---

[13]  *See* Treasury Single Account FY 2018 Cash Flow as of January 26, 2018, *available at* http://www.aafaf.pr.gov/assets/fy18-weeklytsacashflow-1-26-2018.pdf (the "TSA Report").

[14]  *See* New Fiscal Plan for Puerto Rico, Feb. 12, 2018, *available at* http://www.aafaf.pr.gov/assets/newfiscalplanforpr-02-12-2018.pdf.

ny-1310826

18.     On July 21, 2017, the Oversight Board filed a motion seeking to extend the time to assume or reject unexpired leases of nonresidential real property pursuant to Bankruptcy Code section 365(d)(4) for the Commonwealth, COFINA, HTA, and ERS [ECF No. 705].

19.     On August 10, 2017, the Court entered an order [ECF No. 994] extending the time for the Debtors to assume or reject unexpired leases of nonresidential real property through (a) November 29, 2017 for the Commonwealth, (b) December 1, 2017 for COFINA, and (c) December 18, 2017 for HTA and ERS.

20.     On October 6, 2017, the Court entered an order [ECF No. 1417] directing the joint administration of PREPA's Title III Case with that of the Commonwealth, and specifying that PREPA's deadline to assume or reject unexpired leases of nonresidential real property would expire on January 28, 2018 unless further extended.

21.     On October 24, 2017, the Oversight Board filed an additional motion [ECF No. 1518] (the "Extension Motion") seeking a further extension of the time to assume or reject certain unexpired leases of nonresidential real property through the "effective date of [the] plan of adjustment for each Debtor," as consented to by certain landlords.  As of the date the Extension Motion was filed, the only such consenting landlord was the PBA.  *See* Extension Motion, Exhibit B at 1.

22.     The PBA Funds, the QTCB Noteholder Group, and Ambac Assurance Corporation (collectively, the "Objecting Parties") all objected to the Extension Motion [ECF Nos. 1583, 1584, and 1666], on the grounds that the relief requested by the Extension Motion was overly broad, detrimental to the interests of the PBA and its stakeholders, and contrary to the protections afforded to landlords under PROMESA and the Bankruptcy Code.  In particular, the PBA Funds argued that the Extension Motion sought to override the provisions of Bankruptcy Code section

365(d)(4) by effectively nullifying the obligation of the Debtors as lessees to timely decide whether to assume or reject the PBA Leases.

23.     On the eve of the Extension Motion hearing, the Oversight Board agreed to a shorter extension of the Debtors' deadline to assume or reject their unexpired leases.  As a result, on November 15, 2017, the Court entered an agreed order (the "Extension Order") [ECF No. 1800] pursuant to Bankruptcy Code section 365(d)(4), granting each of the Debtors an additional 120 days to determine whether to assume or reject the PBA Leases.  The Extension Order expressly preserved all rights and claims of PBA Bondholders with respect to the PBA Leases, whether asserted directly or as third-party beneficiaries of the PBA Leases.

24.     On December 18, 2017, AAFAF issued a press release disclosing the preliminary results of an audit of the Commonwealth's finances, revealing nearly $7 billion in cash on deposit in various bank accounts.[15]

25.     On January 29, 2018, the PBA Funds sent a letter (the "Letter") to the Executive Director of the PBA and the PBA's Board of Directors, a copy of which is attached to this Motion as **Exhibit B**.  By the Letter, the PBA Funds requested confirmation of the steps taken by the PBA to both recover delinquent rent that has gone unpaid during the pendency of the Title III Cases—as the PBA is required to do under Commonwealth law and its own regulations—and to preserve the PBA's rights in the Title III cases going forward.  To date, the PBA Funds have not received a response to the Letter.

26.     Upon information and belief based upon publically available information, as of the date of filing this Motion, the PBA is owed at least $289 million in rent that has accrued since the commencement of the Title III Cases but remains unpaid by the Debtors.[16]

---

[15] *See* "AAFAF Announces Updated Information Concerning Cash Balances at Puerto Rico Fiscal Plan Entities," Dec. 18, 2017, *available at* http://www.aafaf.pr.gov/assets/aafaf-presrelease-summarybankaccounts.pdf.

ny-1310826

### RELIEF REQUESTED

27.     By the Motion, the PBA Funds seek entry of an order, substantially in the form attached hereto as **Exhibit A**, directing the Debtors to (a) satisfy all outstanding postpetition rental obligations of the Debtors (including, for the avoidance of doubt, any amounts due from the Commonwealth's agencies and departments) arising under the PBA Leases, in an aggregate amount believed to be not less than $289 million (the "Administrative Rent Claim") and (b) timely perform all such obligations going forward until the Debtors assume or reject the PBA Leases, in each case as required by Bankruptcy Code section 365(d)(3).

28.     Notwithstanding the Debtors' unconditional obligation to pay rent—as well as the recent disclosure that government-wide deposit accounts contain nearly $7 billion—the PBA Funds are sensitive to the financial burdens faced by the island, and recognize that the Court may be reticent to mandate the immediate payment of the Administrative Rent Claim in full at this time. For that reason, the PBA Funds alternatively request that the Court allow the Administrative Rent Claim in an amount to be determined subject to an accounting as a claim entitled to administrative priority pursuant to Bankruptcy Code sections 365(d)(3), 503(b), and 507(a)(2). The Administrative Rent Claim should continue to accrue until the PBA Leases are assumed or rejected, and should be treated in the manner described in PROMESA section 314(b)(4).

---

[16] The PBA Funds have requested that AAFAF provide an accounting of postpetition rental obligations owed to the PBA that remain unpaid by the Debtors. The PBA Funds have yet to receive such information. Accordingly, this amount represents a conservative estimate of outstanding postpetition rent owed to the PBA that remains unpaid by the Debtors, calculated as the difference (prorated for the period from May 2017 through February 2018) between: (x) the annual rental payments received by the PBA from governmental entities in fiscal year 2016 as reflected in the Commonwealth Financial Report and (y) the annualized amounts paid to the PBA from the Commonwealth's Treasury Single Account as reflected in the TSA Report. The PBA Funds expressly reserve all rights to revise or update the amount of the Administrative Rent Claim (defined herein) to the extent that additional information is obtained through discovery, an accounting, or otherwise.

ny-1310826

### BASIS FOR RELIEF

**A.    The Bankruptcy Code Imposes an Unconditional Obligation on the Debtors to Pay Rent in a Timely Manner Until the PBA Leases are Assumed or Rejected**

29.    Bankruptcy Code section 365(d)(3) requires a debtor to "timely perform all the obligations . . . under any unexpired lease of nonresidential real property, until such lease is assumed or rejected. . . ." 11 U.S.C. § 365(d)(3).  This duty to remain current on rental obligations postpetition is both unqualified and absolute.  *See In re CSVA Inc.*, 140 B.R. 116, 119 (Bankr. W.D.N.C. 1992) ("The trustee's responsibility [to timely] perform such obligations . . . is mandatory, rather than merely permissive.").  Thus, in the event that a debtor-tenant fails to pay rent on a postpetition basis, and until the underlying lease is assumed or rejected, courts in the First Circuit have held that landlords such as the PBA are entitled to immediate payment of past-due rent as an administrative expense.  *See, e.g., In re Café La Plage Mgmt., Inc.*, No. 14-01977 (MCF), 2014 WL 7011825, at *5 (Bankr. D.P.R. Dec. 11, 2014) (ordering the debtor to pay accrued postpetition rent and to pay all future rent as it becomes due); *In re PYXSYS Corp.*, 288 B.R. 309, 319 (Bankr. D. Mass. 2003) (ordering immediate payment of past-due "postpetition, pre-rejection rent"); *In re Narragansett Clothing Co.*, 119 B.R. 388, 391 (Bankr. D.R.I. 1990) (same); *In re Rare Coin Galleries of Am., Inc.*, 72 B.R. 415, 416 (Bankr. D. Mass. 1987) (same).

30.    Unlike other administrative expenses, claims arising under section 365(d)(3) are exempted from the requirement that they represent "actual, necessary costs" of preserving the estate.  *Thinking Machs. Corp. v. Mellon Fin. Servcs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1024 (1st Cir. 1995) (citation omitted); *see also CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 235 (4th Cir. 2005) (landlords are generally entitled to administrative expense claim for postpetition rent without need to show benefit to the estate); *In re Vigo*, No. 08-06509, 2009 WL 4040145, at *7 (Bankr. D.P.R. Nov. 20,

ny-1310826

2009) (same).  A debtor is therefore required to pay postpetition rent at the rate specified in the lease, without any consideration of the "fair and reasonable value conferred . . . upon the estate. . . ."  *Towers v. Chickering & Gregory (In re Pac.-Atl. Trading Co.)*, 27 F.3d 401, 405 (9th Cir. 1994).  Some courts, however, have held that this right to what is effectively a superpriority claim may be waived in the event that a creditor does not timely assert a claim under section 365(d)(3).  *See, e.g., In re J.T. Rapps, Inc.*, 225 B.R. 257, 264 (Bankr. D. Mass. 1998) (declining to allow "an automatic superpriority" claim to landlord that did not timely assert right to payment of postpetition rent); *In re Pudgie's Dev. of N.Y.*, 223 B.R. 421, 427 (Bankr. S.D.N.Y. 1998) (under certain circumstances, section 365(d)(3) claims not asserted until the end of a case may be waived entirely).

31.     To date, the Debtors have yet to assume or reject any of the PBA Leases, and are therefore required to "timely" pay rent under such leases.  Notwithstanding this unequivocal obligation, the Debtors have not made their full rental payments on the PBA Leases since prior to the commencement of the Title III Cases.  The PBA is clearly entitled under section 365(d)(3) to receive immediate payment of all postpetition amounts that remain due and owing by the Debtors under the PBA Leases, as well as to require the timely payment of rent going forward until such leases are assumed or rejected.

32.     However, because the PBA has not yet asserted its statutory right to payment, the PBA Funds, as third-party beneficiaries under the PBA Leases and creditors otherwise having standing to raise this matter and be heard, are concerned that the failure of the PBA to act under the authority of section 365(d)(3) could result in a possible limitation or waiver of the PBA's rights.  Accordingly, the PBA Funds respectfully request that the Court both (a) order the payment of the

Administrative Rent Claim and (b) direct the Debtors to pay rent under the PBA Leases in a timely

manner until the PBA Leases are either assumed or rejected.

**B.     In the Alternative, the PBA is Entitled to an Allowed Administrative Expense Claim
that Continues to Accrue and Will Be Paid Under a Plan of Adjustment**

33.     Alternatively, if the Court is not inclined to order the immediate payment of the

Administrative Rent Claim at this time, the Administrative Rent Claim should be allowed as a

claim entitled to administrative priority under Bankruptcy Code sections 365(d)(3), 503(b), and

507(a)(2), that will continue to accrue until the PBA Leases are either assumed or rejected by the

Debtors.  *See In re Rare Coin Galleries of Am., Inc.*, 72 B.R. at 417; *see also In re Circuit City

Stores, Inc.*, 447 B.R. 475, 507 (Bankr. E.D. Va. 2009) (claim for accrued postpetition rent is

entitled "to administrative expense priority under 11 U.S.C. § 507," and, if not paid earlier, shall be

paid on plan effective date).

34.     The PBA Funds believe that, even in the absence of the relief requested by the

Motion, the PBA would be entitled to the Administrative Rent Claim.  *See, e.g., In re Brennick*,

178 B.R. 305, 307 (Bankr. D. Mass. 1995) (noting that section 365(d)(3) "does away with the need

for a hearing authorizing payment of the administrative expense claim").  Further, the PBA Funds

expect that such claim will be treated under any plan of adjustment in accordance with PROMESA

section 314(b)(4), which requires that an allowed administrative expense claim be paid in full on

the effective date of a plan of adjustment unless otherwise agreed by the holder of such claim.  As

previously discussed, however, certain courts have held that an otherwise valid claim for

postpetition rent may under certain circumstances nonetheless be waived if not timely asserted.

*See, e.g., In re Pudgie's Dev. of N.Y.*, 223 B.R. at 427.  Because the PBA has failed to assert its

statutory rights and has shown no inclination to assert those rights, the PBA Funds seek allowance

of the Administrative Rent Claim now.

13

ny-1310826

### C.    PROMESA Section 305 Does Not Excuse the Debtors from Compliance with Bankruptcy Code Section 365(d)(3)

35.    The PBA Funds note that the Court recently dismissed two adversary complaints filed by various general obligation bondholders and monoline insurers seeking to enforce sections 922(d) and 928(a) of the Bankruptcy Code against the Debtors, holding that "[t]he Court is . . . precluded by PROMESA section 305 from granting the requested declaratory and injunctive relief. . . ."[17]   Specifically, the Court found that neither section 922(d) nor 928(a) "purport[s] to mandate action" or "imposes a payment obligation."[18]   Here, the Debtors' unconditional obligations under Bankruptcy Code section 365(d)(3) are unaffected by that holding.   That is because Bankruptcy Code section 365(d)(3), in contrast to sections 922 and 928, is mandatory, and does impose a payment obligation: "[t]he trustee shall timely perform all the obligations of the debtor" arising under a lease pending its assumption or rejection.   *See* 11 U.S.C. § 365(d)(3) (emphasis added).   Because the affirmative duty of a debtor to timely perform its obligations under unexpired leases is both express and absolute, this mandatory obligation should be enforced.

### <u>RESERVATION OF RIGHTS</u>

36.    The PBA Funds hereby reserve any and all rights with respect to the relief sought by the Motion, including, but not limited to, the right to pursue all available remedies with respect to currently outstanding or future rents or other amounts due to PBA, and the right to seek the appointment of a committee or independent fiduciary to represent the interests of PBA, its creditors, or its other stakeholders.

---

[17] *ACP Master, Ltd. v. Commonwealth of Puerto Rico (In re Commonwealth of Puerto Rico)*, Case No. 17-00189 (LTS) [ECF No. 124] at 18 (D.P.R. Jan. 30, 2018); *see also Assured Guar. Corp. v. Commonwealth of Puerto Rico (In re Commonwealth of Puerto Rico)*, Case No. 17-00155 (LTS) [ECF No. 125] (D.P.R. Jan. 30, 2018).

[18] *Assured* at 18, 20.

ny-1310826

## **CONCLUSION**

37.     For the foregoing reasons, the PBA Funds respectfully request that the Court enter
an order, substantially in form attached hereto as **Exhibit A**: (a) directing the Debtors to (i) pay the
Administrative Rent Claim and (ii) continue to timely perform such obligations going forward
until the Debtors assume or reject the PBA Leases; or (b) in the alternative, granting the PBA an
allowed administrative expense claim in the amount of the Administrative Rent Claim as
determined following an accounting, which will continue to accrue until the Debtors assume or
reject the PBA Leases.

ny-1310826

Date: February 13, 2018

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/  Kendra Loomis*
Kendra Loomis
USDC PR No. 227408
Telephone: (787) 370-0255
loomislegal@gmail.com

**G. CARLO-ALTIERI LAW OFFICES, LLC**
254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

-and-

By: */s/ Gary S. Lee*
Gary S. Lee

**MORRISON & FOERSTER LLP**
Gary S. Lee (admitted *pro hac vice*)
James M. Peck (admitted *pro hac vice*)
James A. Newton
Andrew R. Kissner
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JPeck@mofo.com
GLee@mofo.com

*Counsel for the PBA Funds*

16

**<u>Exhibit A</u>**

**Proposed Order**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*,<br><br>                      Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br> (Jointly Administered) |

## ORDER GRANTING THE MOTION OF THE PBA FUNDS
## FOR THE PAYMENT OF RENT

Upon the motion (the "<u>Motion</u>")[2] of the PBA Funds for the entry of an order (the "<u>Order</u>"):

(a) directing the Debtors to (i) satisfy all outstanding postpetition rental obligations arising under

the PBA Leases and (ii) timely perform all such obligations until the PBA Leases are assumed or

rejected; or (b) in the alternative, granting the PBA an allowed claim entitled to administrative

expense priority pursuant to Bankruptcy Code sections 365(d)(3), 503(b), and 507(a)(2) and

PROMESA section 301(a); and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with PROMESA section 306(a); and venue being proper in this

district pursuant to PROMESA section 307(a);  and the Court determining that notice was proper

in this matter; and upon consideration of the arguments and evidence submitted in connection with

---

[1] The Debtors in these title III cases, along with the last four digits of each Debtor's federal tax identification number, are the (i) Commonwealth of Puerto Rico (No. 17-BK-3283-LTS) (3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (No. 17-BK-3566-LTS) (9686); (iii) Puerto Rico Highways and Transportation Authority (No. 17-BK-3567-LTS) (3808); (iv) Puerto Rico Sales Tax Financing Corporation (No. 17-BK-3284-LTS) (8474); and (v) Puerto Rico Electric Power Authority (No. 17-BK-4780-LTS) (3747).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Motion; and any objections to the relief requested herein having been withdrawn or overruled on the merits, it is **HEREBY ORDERED THAT:**

1.     The Motion is GRANTED.

2.     The PBA shall have an allowed claim, entitled to administrative expense priority pursuant to Bankruptcy Code sections 365(d)(3), 503(b), and 507(a)(2), in an amount not less than $289,000,000, on account of all postpetition rental obligations of the Debtors (including, for the avoidance of doubt, any amounts due from the Commonwealth's agencies and departments) arising under the PBA Leases currently due and owing to the PBA, which shall continue to accrue until each such PBA Lease is either assumed or rejected by the applicable Debtor (the "Administrative Rent Claim").

3.     The Debtors are directed to pay the PBA an amount not less than $289,000,000 on account of the Administrative Rent Claim for the period from the commencement of their respective petition dates through February 28, 2018, within five (5) days following entry of this Order.

4.     The Debtors are further directed to comply with the provisions of Bankruptcy Code section 365(d)(3) with respect to each of the PBA Leases until each such lease is either assumed or rejected by the Debtor party thereto.

5.     Nothing in this Order shall prejudice the rights of the PBA or the PBA Funds to assert additional claims in connection with the PBA Leases, including, but not limited to, general unsecured claims or administrative expense claims, or to pursue any other rights or remedies afforded to them under the PBA Leases, the 1995 Resolution, or any other applicable contract, law, or regulation.

ny-1311281

6.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or enforcement of this order.

Dated:  _____, 2018

_____
THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

3

**<u>Exhibit B</u>**

**Letter to the PBA**

# MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK, NY  10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

January 29, 2018

Writer's Direct Contact
+1 (212) 468.8042
GLee@mofo.com

**<u>Via Overnight Courier</u>**

The Board of Directors
Public Buildings Authority
Section 41029
San Juan, PR 00940-1029

Mr. José M. Izquierdo-Encarnación
Chairman of the Board of Directors
Public Buildings Authority
Section 41029
San Juan, PR 00940-1029

Dr. Amilcar González Ortiz
Executive Director
Public Buildings Authority
Section 41029
San Juan, PR 00940-1029

Re:    Puerto Rico Public Buildings Authority Rent Collection Efforts

Dear Ladies and Gentlemen:

We write on behalf of Fir Tree Partners, Candlewood Investment Group, and Inglesea Capital, LLC (collectively, the "PBA Funds"), as holders of and investment managers or advisors for holders of Government Facilities Revenue Bonds and Government Facilities Revenue Refunding Bonds (collectively, "PBA Bonds") issued by the Public Buildings Authority ("PBA") under its 1995 bond resolution (the "1995 Resolution") and supplemental resolutions authorized in connection with the issuance of each series or group of series of PBA Bonds (collectively with the 1995 Resolution, the "Resolutions").[1]  The PBA Funds

---

[1] *See* Puerto Rico Public Buildings Authority, Resolution No. 468, Authorizing and Securing Government Facilities Revenue Bonds Guaranteed by the Commonwealth of Puerto Rico, adopted June 22, 1995, *available at* http://www.gdb-pur.com/investors_resources/PBA-Res468.pdf.

ny-1310722

MORRISON | FOERSTER

The Board of Directors
January 29, 2018
Page Two

collectively hold over $650 million of PBA Bonds in the aggregate.  We seek confirmation
that PBA is taking the necessary steps to ensure that it is collecting rental payments due
under PBA's leases and subleases (collectively, the "PBA Leases").

 The tenants fall into two categories.  The first consists of those that are not debtors in
the pending proceedings under title III of the Puerto Rico Oversight, Management, and
Economic Stability Act ("PROMESA").  There is no legal impediment to collecting rental
payments from these tenants; their obligations to pay rent remain absolute.  The second,
current debtors under title III proceedings, are equally obligated to pay rent.  Bankruptcy
Code section 365(d)(3) (made applicable in the debtors' title III proceedings by PROMESA
section 301) requires each of the title III debtors to "timely perform all obligations . . . .
under any unexpired lease of nonresidential real property, until such lease is assumed or
rejected."  Putting aside for the moment our disagreement as to what the deadline should be
to assume or reject leases, there can be no credible dispute that the debtor tenants'
obligations to pay rent continues.  Furthermore, while we remain sympathetic to the
constraints placed upon the Commonwealth's finances by Hurricanes Irma and Maria, recent
disclosures showing that the Commonwealth possesses nearly $7 billion in cash balances
suggest that the title III debtors have at least some capacity to pay rent, and thereby help
preserve the value of PBA's facilities for the benefit of all of PBA's stakeholders.

 Given the proposed funding levels for PBA contained in the existing Fiscal Plan, it is
more important now than ever that PBA timely enforce the obligations of its tenants to pay
rent.  This much-needed income will allow PBA to properly invest in and maintain its
facilities, and ensure PBA facilities are desirable locations for current and future tenants.
The maintenance, improvement, and repairs made possible by the collection of rent will, in
turn, significantly increase the value of PBA's facilities, and will thereby facilitate the
consummation of any future restructuring and turnaround efforts proposed by PBA.

 While we know that PBA currently has an administrative expense claim pursuant to
Bankruptcy Code section 365(d)(3) (incorporated into Title III of PROMESA) for rents due
prior to any decision to accept or reject leases, we are concerned about the risk that this right
could be waived if PBA is not diligently pursuing rents.  As your counsel has likely advised
you, some courts have held that a landlord that does not timely enforce its rights under
Bankruptcy Code section 365(d)(3) may waive the ability to collect rents in a timely manner.
(*See, e.g., In re J.T. Rapps, Inc.*, 225 B.R. 257, 264 (Bankr. D. Mass. 1998)).  Further, at
least one court has held that a landlord that waits until the end of the case to assert a claim for
unpaid rent that has accrued postpetition may under certain circumstances waive the right to
payment altogether.  (*See In re Pudgie's Dev. of N.Y.*, 223 B.R. 421, 427 (Bankr. S.D.N.Y.
1998)).  For each of the foregoing reasons, we believe that PBA's failure to avail itself of its
rights and to act in a prudent manner is suggestive of an inherent conflict of interest on the
part of the Board.

ny-1310722

**MORRISON** | **FOERSTER**

The Board of Directors
January 29, 2018
Page Three


Not only are PBA's efforts to collect rent through the Title III proceedings and otherwise critical to its ongoing operations and restructuring efforts, but PBA's officers and directors are obligated to pursue these rent collection efforts by interrelated provisions of Commonwealth law, contractual obligations set forth in the Resolutions, and PBA's own duly-enacted regulations (collectively, the "PBA Regulations"), failing which PBA's officers and directors face the potential for personal liability. (*See, e.g.*, 3 L.P.R.A. 1857a(r); 33 L.P.R.A. § 5354). The PBA Enabling Act (22 L.P.R.A. §§ 901 *et. seq.*), for example, requires the Executive Director of PBA to carry out all actions that are necessary to implement the PBA Enabling Act and directs him to administer and operate PBA's facilities in accordance with PBA Regulations. (*See* PBA Enabling Act § 905). The Executive Director must also ensure that PBA fixes rent at levels sufficient to pay for maintenance, repair, operating costs, and debt service on outstanding PBA Bonds. (*See* PBA Enabling Act § 907(g)). The Board is, in turn, charged with ensuring that PBA is run by an Executive Director that will carry out these obligations. (*See* PBA Enabling Act § 905). In addition, PBA Regulation 6502 requires PBA to pursue—and sets forth the means for procuring—any rent that may become past due. Please be advised that the PBA Funds will hold accountable those responsible for any losses caused by the failure to enforce binding contracts, to follow applicable law, or to honor fiduciary duties and other obligations.

We know there are many challenges faced by the brave people of Puerto Rico. Our aim is not to impose unnecessary burdens upon PBA, and we remain committed to maintaining an open and productive dialogue with Puerto Rico Fiscal Agency and Financial Advisory Authority (whose counsel is copied on this correspondence). However, in order to address the concerns described above, we must respectfully request that you promptly respond to this letter and confirm that PBA has taken the appropriate steps (as it is required to do under Commonwealth law) to collect outstanding rental payments to the extent feasible, and to preserve all of PBA's rights in connection with the debtors' title III proceedings. Otherwise, we may be forced to seek appropriate relief.

The PBA Funds reserve all rights with respect to any and all relief that may be available to PBA or PBA Bondholders under the PBA Leases, the Resolutions, any other applicable agreements, and any applicable Commonwealth or federal law or regulation.

*[Signature page follows]*

**MORRISON** | **FOERSTER**

The Board of Directors
January 29, 2018
Page Four

Sincerely,

Gary S. Lee

cc:     Sung Pak, Esq.