Hearing Date: February 15, 2018 at 10:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS<br><br>Re: ECF Nos. 703 and 707.<br><br>**Informative Motion Relates Only to PREPA and Shall Only Be Filed in Case No.<br>17 BK 4780-LTS** |
| The Financial Oversight and Management Board for Puerto Rico,<br><br>as representative of | |

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Puerto Rico Electric Power Authority,

        Movant,

v.

WHITEFISH ENERGY HOLDINGS, LLC, *et al.*[2]

        Respondents,

*[Caption continued on next page]*

---

[2] The Respondents include: Arc American, Inc., the Ad Hoc Group of General Obligation Bondholders, U.S. Bank National Association in its Capacity as PREPA Bond Trustee, the Ad Hoc Group of PREPA Bondholders, Whitefish Energy Holdings, LLC, Scotiabank de Puerto Rico, Solus Alternative Asset Management LP, National Public Finance Guarantee Corporation, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Syncora Guarantee Inc., the Official Committee of Unsecured Creditors, and Siemens Transportation Partnership Puerto Rico, S.E.

**OVERSIGHT BOARD'S AND AAFAF'S INFORMATIVE MOTION
AND NOTICE OF DEFECTS IN "COMPETING NON-PRIMING
POSTPETITION FINANCING PROPOSAL" OF
AD HOC GROUP OF PREPA BONDHOLDERS
<u>AND SYNCORA GUARANTY INC.</u>**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as representative of the Puerto Rico Electric Power Authority ("<u>PREPA</u>") in this Title III case pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"),[3] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") respectfully submit this joint informative motion to explain why the competing financing proposal (the "<u>Competing Financing</u>") [ECF No. 703, as amended per ECF No. 707: "The Ad Hoc Group of PREPA Bondholders' Corrected Informative Motion and Notice of Competing Non-Priming Financing Proposal"] filed today by the Ad Hoc Group of PREPA Bondholders (the "<u>Ad Hoc Group</u>") and Syncora Guaranty Inc. ("<u>Syncora</u>") is neither a valid financing proposal nor a meritorious reason to deny PREPA's Postpetition Financing Motion.[4]

The Oversight Board and AAFAF respectfully aver as follows:

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4] Capitalized terms used but not otherwise defined herein shall have the same meaning given to them in the Postpetition Financing Motion, ECF No. 549.

I. **PROCEDURAL BACKGROUND**

1. <u>Scheduling and Regulation of Final Hearing</u>. By order dated February 9, 2018 (the "<u>Procedure Order</u>") [ECF No. 658], this Court regulated tomorrow's hearing on PREPA's Postpetition Financing Motion. Among other things, the Procedure Order provided each witness' declaration would constitute his/her direct testimony and required a joint statement detailing the order of presentation and witness testimony to be filed by yesterday, February 13, 2018.

2. <u>Non-Disclosure of Competing Financing Until After Declaration and Deposition</u>. In addition to the general solicitation of financing proposals, PREPA, through Rothschild & Co, specifically requested a financing proposal from the Ad Hoc Group on or about February 2, 2018.[5] No proposal was forthcoming. Through this morning, February 14, 2018, no declaration had been filed that mentioned the "Competing Non-Priming Postpetition Financing Proposal" of the Ad Hoc Group of PREPA Bondholders and Syncora Guaranty Inc. Mr. Steven Spencer, the witness for the Ad Hoc Group, had not mentioned the competing proposal in his declaration executed on February 1, 2018, his "Trial Declaration" filed on February 13, 2018, or at the deposition.

3. <u>PREPA Withdrew Its Request for Interim Financing in Reliance on Final Hearing Date</u>. As explained in the Oversight Board's reply brief dated February 3, 2018 [ECF No. 617] (joined by AAFAF), the Oversight Board and AAFAF withdrew their request for interim financing because the Court scheduled the final hearing for February 15, 2018 and it appeared PREPA had enough cash to operate through such date.

---

[5] The Ad Hoc Group of PREPA Bondholders has been aware of PREPA's need for financing since the hurricanes as evidenced by the financing proposal they made in late September of 2017. As with the Competing Financing, that proposal contained unattractive economic terms and included features that were designed to advantage pre-petition claims of the Ad Hoc Bondholder Group and place control of the utility in the hands of the creditors. Since that proposal was rejected, the Ad Hoc Group of PREPA Bondholders provided no further financing proposals until the filing of the Competing Financing this morning.

4. <u>Last Second Outline of Financing Terms without Credit Agreement and Proposed Order</u>. Today, after Mr. Spencer's deposition was concluded yesterday, the Ad Hoc Group and Syncora filed their informative motion [ECF No. 707] unveiling an outline of their "Competing Non-Priming Postpetition Financing Proposal," without providing any credit agreement or proposed order. The informative motion makes clear that the Ad Hoc Group and Syncora contend their new proposal bars the Court from granting PREPA's Postpetition Financing Motion because the new proposal purportedly does not include a priming lien. Disregarding the procedural structure put in place by the Court for the final hearing, they request the Court to consider their proposal in connection with PREPA's Postpetition Financing Motion. Competing Financing at ¶ 11 (page 7).

5. <u>Implicit Admission of Unfairness</u>. Apparently self-conscious of their procedural ploys, the Ad Hoc Group and Syncora attempt to justify their conduct by citing the Oversight Board's prior statements that it would consider financing proposals after February 2, 2018 and would continue to secure other financing proposals until the date of the final hearing. Competing Financing at ¶ 3. This proposal for Competing Financing did not materialize out of thin air on February 14. It was clearly being crafted by the Ad Hoc Group and Syncora while they were filing briefs against the Postpetition Financing Motion and deposing the Movants' witnesses. Their conduct and purported justification speak for themselves.

**II. THE COMPETING FINANCING IS NEITHER A LEGAL NOR FACTUAL BASIS TO DENY PREPA'S POSTPETITION FINANCING MOTION**

6. Despite the procedural breaches and unfairness surrounding the Competing Financing, if the Competing Financing were valid and could serve PREPA's needs better than Commonwealth facility, the Oversight Board and AAFAF would undertake to embrace it. But, the Competing Financing is neither valid, nor legal, nor better. Moreover, the Competing

Financing provides no indication of when it will be available. Therefore, due to the procedural breaches described above, and independently due to its material, substantive defects, the Oversight Board and AAFAF submit the Competing Financing should not be considered, and if it is considered, should be found invalid and not a legal alternative to the Commonwealth facility for the following reasons, each of which is independently sufficient to deny approval of the Competing Financing and reject it as a basis to deny the Postpetition Financing Motion.

7. <u>In Substance, the Competing Financing Contains a Priming Lien in Three Different Ways</u>. As its amount is less than half the Commonwealth financing and its cost is gigantic compared to the Commonwealth facility (see below), the only alleged selling point of the Competing Financing is its purported lack of a priming lien. In substance, however, it contains a priming lien in three different ways:

    a. <u>Allocation of Proceeds on Default is the Same as in PREPA's Postpetition Financing</u>. The entire significance of a priming lien is the entitlement to monies it provides its holders on default. The "Events of Default" provision on page 8 of the Competing Financing's summary of terms, governs the allocation of revenues after a default. After the Carve-Out, the Competing Financing provides revenues shall be applied to Eligible Uses and then to the new loan. As explained in the Oversight Board's prior briefs, Eligible Uses is a subset of "Current Expenses" that the prepetition lenders' Trust Agreement causes to be paid before any net revenues go to repay loans. The Competing Financing takes the revenues to repay itself before payment of the Current Expenses that are not Eligible Uses. That is the same allocation as in the Commonwealth facility (see Credit Agreement Section 9-2). Neither loan permits the use of Revenues to pay debt service on prepetition bonds ahead of debt service on the postpetition loans.

    b. <u>The Competing Financing Takes Security in and Repayment from the General Fund</u>. As explained in the Oversight Board's prior briefs, the prepetition lenders only have a security interest in the net revenues (that is, revenues minus Current Expenses). Initially, all revenues go to the General Fund, and then any positive net revenues go to another fund for bondholders. The "Security" provision of the Competing Financing's description, at page 5, provides "[a]ll payments of obligations under the Facility shall be payable from the General Fund…" That is a use of revenues that reduces the net revenues pledged to the prepetition lenders, and thus is a priming, plain and simple.

    c. <u>The Competing Facility Is Given "Current Expense" Priority</u>. The Competing Financing provides "[a]ll payments of obligations under the Facility shall be payable from the General Fund (as defined in the Trust Agreement) at the level of Current Expenses under the Trust Agreement…." Under the Trust Agreement, "Current Expenses" are paid before funds are available for debt service on the bonds. The Competing Facility is thus further granted payment priority over debt service on the prepetition bonds. Its superpriority claim status provides the same result. Whether or not this payment priority is a "lien" is immaterial, as neither the Commonwealth facility nor the Competing Facility provides foreclosure remedies.

    8.    <u>The Competing Financing Is a Thinly Veiled Attempt to Appoint a Trustee or Receiver</u>. The "Required Lenders" providing the Competing Financing use covenants to render themselves PREPA's receiver, which this Court previously rejected, and the PREPA bondholders are currently appealing. The Competing Financing's Exhibit A (at pages 10-12) entitled "Certain Financing Order Covenants" grants the Required Lenders various powers of a receiver or trustee, all of which are designed to control PREPA's ordinary course operations and prevent PREPA from undergoing a transformation to a new, efficient power producer, while also jeopardizing the Commonwealth's rehabilitation by raising the cost of energy. In sum, the covenants seek to turn PROMESA, which is premised on the Court's non-interference (absent Oversight Board consent) with the public debtor's finances and operations, completely on its head. Without limitation, the covenants grant the Required Lenders the powers to:

    a. Take insurance proceeds or reduce loan commitments by amounts equal to insurance proceeds;

    b. Bar PREPA from selling, leasing, assigning, or transferring any material asset;

    c. Bar PREPA from granting licenses;

    d. Bar PREPA from borrowing;

    e. Compel PREPA to fix, charge, collect, and adjust as necessary, rates, fees, rentals, and other charges;

    f. Bar the Commonwealth from "interfering" with one of its own political instrumentalities;

    g.   Authorize a "Monitor," who has no obligation to protect or serve the public interest, to monitor PREPA's compliance with the Bondholders' demands;

    h.   Grant the Required Lenders control over the 13-Week Budget; and

    i.   Usurp the Oversight Board's role in overseeing PREPA's compliance with any certified Fiscal Plan and arrogate that role to the Required Lenders.

9.    <u>The Competing Financing Is Insufficient</u>.  On its face, the Competing Financing is $534 million, compared to the $1 billion facility PREPA needs.  The Competing Financing is actually a lot less than $534 million, among other things due to:

    a.   <u>2% Issue Discount</u>.  Page 4 of the Competing Financing discloses the "Issue Price" is 98%.  Thus, the facility is 98% of $534 million, or $523.3 million.

    b.   <u>Closing Fees</u>.  The lenders are paid between 0 and 2.25% of their commitments.  This would further reduce the available funds by up to 2.25% of $534 million, or $12.01 million, leaving $511.3 million available.

    c.   <u>Huge Interest Expense</u>.  The Competing Financing lists the interest rate in a peculiar and misleading way, for obvious reasons.  Rather than simply say x% per year, the Competing Financing, at page 4, lists the interest rate for the first year as "Quarterly Interest" of 2.375%.  The annual interest rate is four times 2.375%, or 9.5%.  But, even that is an understatement because PREPA would have to pay 9.5% on the whole loan when only 98% of the loan is being advanced.  Therefore, the actual annual rate is 9.5%/0.98, or 9.69%.  In the second year, the quarterly rate is 3%, for a 12% nominal rate, or an actual rate of 12%/0.98, or 12.24%.  (The interest rates are even higher once the lenders' closing fees of up to 2.25% are taken out of the loan representing money PREPA never gets, but must pay interest on).

    d.   <u>Alternative Interest</u>.  Rather than pay interest in cash, the Competing Financing allows PREPA to "roll up" prepetition debt into the postpetition loan at the rate of 5% per quarter or 20% per year, nominally, in the first year and 24% in the second year.  This translates to actual rates of 20%/0.98, or 20.41%, and 24%/0.98, or 24.49% per year.  But, this roll-up rate is actually higher because creditors are allowed to include unpaid prepetition interest in the prepetition bonds they roll up – the effect of which it to treat the bonds as if they were oversecured and entitled to postpetition interest, which they are not.

    e.   <u>After Cash Interest in Years 1 and 2, The Available Loan Funds are Even More Insufficient</u>.  In the first year, the Competing Financing costs 9.5% interest on $534 million, or $50.73 million.  The Commonwealth facility costs 0.5% for half year in the first year, or $5 million on a $1 billion loan.  In the second year, the Competing Financing costs 12% on $534 million, or $64.1 million.  The

        Commonwealth facility costs 1.25% of $1 billion in the second year, or $12.5 million for a $1 billion loan. So, the Competing Financing costs $114.8 million for two years, while the Commonwealth facility costs $17.5 million.

    f. <u>The Committed Financing Does Not Allow PREPA to Pay Necessary Operating Expenses</u>. The Competing Financing also would not permit PREPA to pay necessary expenses as it does not permit Revenues or other funds to be used to pay "Ineligible Uses," inclusive of Title III costs and restoration and recovery expenses. In addition, the Competing Financing does not allow payment of administrative claims for periods prior to February 11, 2018 even where such payments are necessary to keep goods and services flowing from critical vendors.

    g. <u>The Commitment is Illusory</u>. The Competing Financing contains several provisions that appear to reduce the commitment (and require prepayment) in circumstances where PREPA does not receive funds to repay the loan. Specifically, commitments reduce (and mandatory prepayments are required) if PREPA receives any money from the federal government related to its business operations even if such proceeds are not available for repayment of the Loans. Similarly, insurance proceeds (even those that are required to go to repair property damage) would go to repay the Loans, or at least result in an obligation to prepay the Loans without a source of funding.

10. <u>The Competing Financing Maturity is Only 2 Years, at Most</u>. Given the uncertainty about PREPA's future, a loan that comes due in two years is untenable and irresponsible. Moreover, to obtain the extension to a 2-year maturity, PREPA will have to pay a "2% fee," or $10,680,000, in cash.

11. <u>The Competing Financing Is Not a Basis to Deny the Postpetition Financing Motion</u>. The Ad Hoc Group and Syncora argue the Court may not consider priming loans when non-priming loans are available pursuant to section 364. Competing Financing ¶ 8. Their sole authority is the language of section 364(d)(1)(A), which provides a debtor may only obtain credit secured by a priming lien if it is "unable to obtain *such credit* otherwise." 11 U.S.C. § 364(d)(1)(A) (emphasis added). The statute, however, does not support their argument. First, as demonstrated above, the Competing Financing is no less a priming facility than the Commonwealth facility. Second, section 364(d)(1)(A) does not require a debtor to accept "non-priming" financing under far worse economic terms than a "priming" facility. *In re Snowshoe*

*Co., Inc.*, 789 F.2d 1085 (4th Cir. 1986) (rejecting the argument the trustee or the court was required to consider a conditional offer with more onerous terms, including a release of pending claims against the would-be lender, as indication that credit was available without a senior lien); *see also In re ION Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *3-4 (Bankr. S.D.N.Y. July 6, 2009) (approving priming DIP financing on economically inferior terms to competing loan, on the basis of lack of control and other non-economic provisions). The meaning of the phrase "such credit" is that the otherwise available non-priming loan must have comparable terms and be sufficient to fulfill the purpose of the priming loan. Here, the Competing Financing provides far less operating capital than the Commonwealth facility, is far more expensive, and yields excessive control to prepetition creditors. The Competing Financing is substantially more prejudicial to PREPA, and thus PREPA is indeed unable to obtain "such credit" (i.e. credit similar to the Commonwealth loan) otherwise.

12. <u>Conclusion</u>. We have not seen the credit agreement or proposed order that would ultimately accompany the Competing Financing. No doubt, they will each contain additional provisions rendering the Competing Financing more problematic. But, the terms already disclosed show it is (a) a priming facility, (b) insufficient, (c) tantamount to a trustee or receiver, and (d) a bar to PREPA's transformation. For all those reasons, among the others we would include if this were not the eve of the final hearing, we request the Court not to consider the Competing Financing or to consider it and reject it.

WHEREFORE the Oversight Board and AAFAF respectfully request the Court to grant PREPA's Postpetition Financing Motion, to reject the Competing Financing, and to grant PREPA such other and further relief as is just.

Dated: February 14, 2018
       San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as Representative for PREPA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as Representative for PREPA*

THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, as fiscal agent for PREPA

By its attorneys,
*/s/ Nancy A. Mitchell*

Nancy A. Mitchell (*pro hac vice*)

**Greenberg Traurig LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

David D. Cleary
Kevin D. Finger
**Greenberg Traurig LLP**
77 West Wacker Drive
Suite 1300
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435