UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Re: Docket No. \_\_\_\_**

------------------------------x

### ORDER (A) AUTHORIZING DEBTOR PUERTO RICO ELECTRIC POWER AUTHORITY TO OBTAIN POSTPETITION FINANCING, (B) PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) GRANTING RELATED RELIEF

Upon the *Urgent Joint Motion of the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final Orders (a) Authorizing Postpetition Secured Financing, (b) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (c) Modifying the Automatic Stay, (d) Scheduling a Final Hearing, and (e) Granting Related Relief* (the "Urgent Motion"); and the Court having indicated at the hearing held before the Court on February 15, 2018 (the "Hearing") it would consider granting the Urgent Motion upon modification of the relief requested therein upon the terms as specified by the Court; and upon the *Oversight Board's and AAFAF's Urgent Application and Notice of Revised Proposed $300 Million Loan from*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

*Commonwealth to PREPA* submitting a revised financing proposal for a $300 million credit
facility as an unsecured superpriority administrative expense claim (the "Urgent Joint Application");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and upon objections having been filed to the Urgent Motion; and the Court having found the relief requested in the Urgent Joint Application to the extent granted herein is necessary for the best interests of impacted stakeholders; and the Court having found the Debtor provided adequate and appropriate notice of the Urgent Motion and the Urgent Joint Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Urgent Motion and the Urgent Joint Application and having heard the statements of counsel in support of the Urgent Motion at the Hearing; and the Court having considered the Urgent Joint Application and having determined that it is in accordance with the Court's decision setting forth the conditions for the Court's approval of a $300 million credit facility as an unsecured superpriority administrative expense claim; and the Court having determined that there is just cause for the relief granted herein; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.  Purpose and Necessity of Financing. The Debtor requires the financing under the facility described in the Urgent Joint Application, subject to and consistent with the terms set forth in the Postpetition Credit Agreement substantially in the form attached to the Urgent Joint Application as **Exhibit A** (as amended or modified, the "Credit Agreement"), to finance operating expenses that (i) constitute Eligible Uses and (ii) are included in the initial 13-week cash flow budget filed as Exhibit 1 to Docket No. 722 and any subsequent 13-week cash flow budget submitted by the Debtor to the Lender as provided in the Credit Agreement and approved by the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Credit Documents
[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

Lender and the Oversight Board (collectively, the "Budget"). The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code. A loan facility in the amount of $300 million on the terms proposed by the Lender (the "Facility") is not available to the Debtor without granting the Lender a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code as provided in this Order and the Credit Documents (defined below). After considering all alternatives, the Debtor has exercised its permissible judgment as a governmental instrumentality in determining the Facility represents the best financing it has been offered at this time.

  B. Good Cause Shown. Good and sufficient cause has been shown for entry of this Order. The ability of the Debtor to obtain sufficient working capital and liquidity under the Credit Documents is vital to the Debtor, its creditors, and its customers. The liquidity to be provided under the Credit Documents will enable the Debtor to continue to operate and preserve the value of the Debtor's assets. Accordingly, this Order is in the best interests of the Debtor and its creditors.

  C. Relief Essential; Good Cause. The authorization granted herein to enter into the Credit Agreement and such other necessary documents consistent with the terms of this Order and on substantially the same terms as the terms of the Credit Agreement (such documents, as amended or modified as permitted by this Order, together with the Credit Agreement, the "Credit Documents") and to obtain funds under the Facility is necessary, essential, and appropriate for continued operations, and for the management, maintenance and preservation of the Debtor's assets and property as it will, among other things, provide the Debtor with the necessary liquidity to continue to operate and preserve the value of its assets. Good cause has been shown for the relief requested in the Urgent Joint Application to the extent granted in this Order. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

  1. Disposition. The Urgent Joint Application is GRANTED to the extent set forth in

this Order.

## AUTHORIZATION FOR FINANCING

2. <u>Authorization for Financing</u>. The Debtor is hereby authorized to execute, perform and incur the obligations arising under the Facility, subject to the terms of this Order and the Credit Documents, in the aggregate principal amount of up to $300 million. From and after entry of this Order, available advances shall be made in accordance with the Credit Documents and the Budget, to the extent provided in the Credit Agreement, for the purpose of funding Eligible Uses.

3. <u>Authority to Perform Under Necessary Documents</u>. The Debtor is authorized and directed to (i) perform all its obligations under the Credit Documents, and such other agreements as may be required by the Credit Documents to give effect to the terms of the financing provided

for therein and in this Order; and (ii) perform all acts required under the Credit Documents and this Order.

4. <u>Valid and Binding Obligations</u>. All obligations under the Credit Documents shall constitute valid and binding obligations of the Debtor in accordance with the terms of the Credit Documents and the terms of this Order, and no obligation, payment, or transfer, under the Credit Documents or this Order shall be stayed, restrained, voidable, or recoverable under PROMESA, the Bankruptcy Code, or under any applicable law or subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under PROMESA, the Bankruptcy Code, or any applicable law or regulation by any person or entity except as expressly provided herein. For the avoidance of doubt, (i) the Court's approval of the Facility from the Debtor's perspective and (ii) the factual findings made in this Order shall not in any way prejudice or affect any rights or remedies that creditors of the Lender may assert in connection with the Lender's decision to enter into the Facility or the implementation thereof; provided, that the Lender reserves all rights and defenses in connection therewith.

5. <u>Termination Date</u>. Notwithstanding anything in this Order to the contrary, the Facility shall expire, and the loans made pursuant to this Order and the Credit Documents will mature, and together with any other obligations accruing under the Credit Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the Credit Documents and this Order by way of acceleration or otherwise), on the earliest of (in each case, the "<u>Termination Date</u>"): (i) the date on which all the Loans and other obligations thereunder have been indefeasibly repaid in full in cash (and the Commitment has been terminated); (ii) the effective date of a confirmed plan of adjustment in the Title III Case

(unless an alternative treatment is agreed to by the Lender); and (iv) the date of termination of the Commitment and/or acceleration of any outstanding extensions of credit under the Facility following the occurrence and during the continuance of an "Event of Default" (as defined in the Credit Agreement).

   6. <u>Amendments, Consents, Waivers, and Modifications</u>.

   (a) Subject to the approval of the Oversight Board, the Debtor may enter into any amendments, consents, waivers, or modifications to the Credit Documents, in accordance with the terms thereof, without the need for further notice and hearing or any order of this Court; provided, however, that to the extent any material amendment, material consent, material waiver or material modification to the Credit Agreement or any other Credit Document, including without limitation Sections 9-2, 4-13, 5-5, and 5-6 of the Credit Agreement, is approved by the Oversight Board (for the avoidance of doubt, including any refinancing of the Facility), such material amendment, material consent, material waiver or material modification or any other material change (however accomplished) shall not become effective without further Court order, which shall be submitted on presentment with notice to parties in interest in accordance with the case management procedures then in effect in the Debtor's Title III case. For the avoidance of doubt, such material amendments, consents, material waivers, or material modifications subject to this paragraph shall include any consent to the use of proceeds of the Facility to fund or otherwise pay for any Ineligible Uses.

   (b) In the event the Facility is funded through a Commonwealth Financing that results in a material change to the economic terms of the Facility or any other transfer or assignment of any rights under the Credit Documents, such shall not become effective without further Court order, which shall be submitted on presentment with notice to parties in interest in accordance with the case management procedures.

<b>SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM</b>

<b><u>AND CURRENT EXPENSE CLASSIFICATION</u></b>

7. *The Lender's Superpriority Claim.* The Lender is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtor's Title III Case for all monetary obligations arising under the Facility, having priority over any and all other claims against the Debtor, now existing or hereafter arising, to the extent provided in Title III, including, without limitation, all allowed administrative expenses of the kinds specified in or arising or ordered, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed Superpriority Claim shall be considered administrative expenses allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and which Superpriority Claim shall, subject to the provisions of Title III, be payable from and have recourse to all pre- and postpetition property of the Debtor and all proceeds thereof. The Superpriority Claim shall be subject and subordinate in priority of payment to the administrative claims described in the Carve Out (defined below). Except as otherwise provided in this Order, the Superpriority Claim shall be senior in all respects to any and all other superpriority administrative expense claims allowed in this Title III Case.

8. *Survival of Superpriority Claim.* Except as otherwise provided herein, the Superpriority Claim and other rights and remedies granted under this Order to the Lender shall continue in this Title III Case and shall maintain their priority as provided in this Order until all obligations arising under the Facility have been indefeasibly paid in full in cash or otherwise satisfied, and any commitment of the Lender has been terminated in accordance with the Credit Documents.

9. *Current Expense Classification.* "Eligible Uses" of the proceeds of the Loans pursuant to this Order and the Credit Documents are limited to "Current Expenses" under the Trust Agreement. **CARVE OUT; RESTRICTIONS ON USE OF FUNDS**

10. *Carve Out.* The Superpriority Claim shall be subject and subordinate to the Carve Out. "Carve Out" means the sum of: (i) to the extent allowed at any time, whether by interim order, procedural order, or otherwise all unpaid fees, costs, and expenses (the "Professional

Fees") incurred by persons or firms retained by or on behalf of the Debtor (including professionals retained by AAFAF for which the Debtor is obligated to reimburse AAFAF) (the "Debtor Professionals"), the Oversight Board (the "Oversight Board's Professionals") and the Official Committee of Unsecured Creditors (the "Creditors' Committee," together with the Oversight Board's Professionals and the Debtor Professionals, the "Professional Persons"); and (ii) any state matching requirements of Federal grants and loans.

11. Repayment of Loans Under Facility. Prior to the Termination Date, the Debtor shall be authorized and the directed to pay interest and to repay principal on the Loans made to it under the Facility from its General Fund subject to (a) the limitations set forth in the Budget then in effect; and (b) the payment of the other Eligible Expenses provided therein. On and after the Termination Date the super-priority administrative expense claim shall be paid to the extent, and in the priority, provided by Title III of PROMESA, including under any plan of debt adjustment confirmed thereunder.

12. Prohibition on Granting of Liens or Additional Superpriority Claims. Without limiting the grant under the Trust Agreement, no liens, claims, interests or priority status, other than the Carve Out, having a lien or administrative priority superior to, *pari passu* with, that of the Superpriority Claim, shall be granted while any portion of the obligations arising under the Facility remains outstanding, or any commitments of the Lender under the Credit Documents remains in effect, without the prior written consent of the Lender.

## MISCELLANEOUS

13. Successors and Assigns. The Credit Documents and the provisions of this Order shall be binding upon the Debtor and the Lender (and each of their respective successors and assigns), and shall inure to the benefit of the Debtor and the Lender (and each of their respective successors and assigns). The terms and provisions of this Order shall also be binding on all of the Debtor's creditors and all other parties in interest; provided, *however*, the findings and determinations set forth in this Order shall not be binding on the Court with respect to the provisions contained in any future order approving additional financing except that the Lender

will be afforded the benefits and protections of this Order for all amounts owed under the Facility.

14. <u>Reservation of Rights</u>. Nothing herein shall alter any setoff rights under applicable nonbankruptcy law of the Debtor, the Lender, or any other party, all of which setoff rights, if any, are hereby reserved; *provided*, *however*, nothing in this Order authorizes any setoff between prepetition and postpetition amounts owed. Other than as explicitly provided in this Order, nothing in this Order or in the Credit Documents shall alter the rights, if any, of any parties-in-interest under the Trust Agreement or applicable law.

15. <u>Binding Nature of Agreement</u>. Each of the Credit Documents shall constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms. Unless otherwise consented to in writing by the Oversight Board and the Lender, the rights, remedies, powers, privileges, and priorities of the Lender provided for in this Order, the Credit Documents, or otherwise shall not be modified, altered, or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of adjustment in this Title III Case, by the dismissal of this Title III Case or in any subsequent case under PROMESA unless and until the obligations arising under the Facility have first been indefeasibly paid in full in cash and/or completely satisfied and any commitments of the Lender terminated in accordance with the Credit Documents.

16. <u>Access to Additional Information</u>. Article V of the Credit Agreement provides specific information and reporting rights to certain creditors. The Debtor will consider reasonable requests for additional information in good faith. The Debtor shall also make available the proposed Budgets to Respondents, or their representatives, that have signed customary non-disclosure agreement acceptable to the Debtor promptly after delivery to the Lender and the Oversight Board.

17. <u>No Effect on Payment of Administrative Priority Claims</u>. Payment of administrative priority claims will be satisfied in accordance with PROMESA. Payment of

expenses that are obligated by FEMA are permitted under the Credit Agreement and such payments are not subject to the Facility's variance test.

18. <u>Priority of Terms</u>. To the extent of any conflict between the express terms or provisions of any Credit Documents and the terms of this Order, this Order shall govern. To the extent any of the terms or provisions of the Credit Documents are deemed ambiguous, any ambiguity will be resolved in a manner that renders the Credit Documents consistent with this Order.

19. <u>Adequate Notice</u>. The notice given by the Debtor of the Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 and Local Bankruptcy Rule 4001-2. Such notice was good and sufficient under the particular circumstances and no other or further notice of the request for the relief granted at the Hearing is required.

20. <u>Immediate Binding Effect; Entry of Order</u>. This Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Order on the Court's docket in this Title III Case.

21. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2018          _____
                                      HONORABLE LAURA TAYLOR SWAIN
                                      United States District Judge