Hearing Date (if set by Court): February 20, 2018

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

## RESPONSE OF NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO THE OVERSIGHT BOARD'S AND AAFAF'S URGENT APPLICATION AND NOTICE OF REVISED PROPOSED $300 MILLION LOAN FROM COMMONWEALTH TO PREPA

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

TO THE HONORABLE COURT:

National Public Finance Guarantee Corporation ("National") respectfully submits this response to the *Oversight Board and AAFAF's Urgent Application and Notice of Revised Proposed $300 Million Loan from Commonwealth to PREPA*, Dkt. No. 2523, dated February 16, 2018. On February 17, 2018, the Oversight Board and AAFAF also filed a *Notice of Filing of Revised (I) Order (A) Authorizing Debtor Puerto Rico Electric Power Authority to Obtain Postpetition Financing, (B) Providing Superpriority Administrative Expense Claims, and (C) Granting Related Relief; and (II) Superpriority Post-Petition Revolving Credit Loan Agreement*, Dkt. No. 2533 (the "Revised Proposed Financing Order"), which National also references herein.[2]

## I. INTRODUCTION

1. Subject to important modifications to the form of proposed order, National will not object to the current proposal for $300 million of postpetition financing due to PREPA's liquidity crisis—albeit one created, sustained, and exacerbated by Movants. Importantly, the Revised Proposed Financing Order goes well beyond what should be a simple order approving this financing, with the rights of all parties preserved. Rather, as written, it is directly contrary to the Court's oral ruling at the February 15, 2018 Hearing on PREPA's Financing Motion (the "Hearing") in a number of respects, including: (i) as to the applicable legal standard (*i.e.*, entire fairness, not Movants' invented "permissible judgment as a governmental instrumentality"); (ii) as to the Court's ruling that the requirement of Section 364(e)'s good-faith showing has not been met; and (iii) as to the Court's admonition to include in the proposed order only essential provisions.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in National's prior objections, *i.e.* Dkt. Nos. 582, 580, and 655.

1

2. These transgressions are of particular moment because Movants have indicated that this is only the first request for financing and that other still more substantial requests will be forthcoming. Considering the record established at the Hearing, including that PREPA has not negotiated for financing at arm's length, and that the crisis is one that could have been—and that most importantly can in the future be—avoided, the Court's rulings and findings with respect to the $300 million loan should not establish a precedent for future applications for funding, and should be strictly limited.

3. Indeed, other than dropping the untenable request for a priming lien, Movants have not demonstrated that an arm's-length negotiation has occurred, that the credit agreement or Revised Proposed Financing Order contain the fair, reasonable, and adequate terms one would expect from such a negotiation, or that any attempt has been made to access other financing. In but one glaring example, Movants seek a ruling that amounts PREPA borrows and repays are conclusively deemed to be "Current Expenses" under the bondholders' Trust Agreement. Aside from violating the Court's ruling to exclude extraneous provisions in the financing order, this provision would establish precedent that could dictate the plan of adjustment and incentivize the Commonwealth and PREPA to keep borrowing rather than taking appropriate steps to match PREPA's revenues with its true operating and postpetition borrowing expenses. Why pay PREPA for electricity when it can incur unsustainable administrative expenses in the form of borrowings to pay for operating expenses, use this Revised Proposed Financing Order to designate repayment amounts as "Current Expenses," and then use the specter of administrative insolvency to control the plan of adjustment? The "Current Expense" provisions should never have been included by Movants and have no place in the Court's order.

4. In light of these and other defects, National has prepared a form of order approving the proposed $300 million postpetition financing, which is attached hereto as Exhibit A ("National's Proposed Order"). A redline of National's Proposed Order against the Revised Proposed Financing Order is attached hereto as Exhibit B. National respectfully submits that National's Proposed Order more accurately reflects the record and the Court's views as expressed at the Hearing. The primary changes to the Revised Proposed Financing Order are set forth in Section II.D below.

5. Subject to necessary changes in the form of the proposed order, National believes that the Court has been given little choice but to approve the $300 million financing. In doing so, however, the Court, the people of Puerto Rico, and PREPA's other constituents and stakeholders deserve far better.

## II. ARGUMENT

### A. Approval of the Postpetition Financing Is Not Subject to a So-Called "Permissible Judgment" Review

6. Without citing any authority, in case law or otherwise, Movants continue to ask that the Court establish a "permissible judgment" standard that applies to governmental instrumentalities. *See* Revised Proposed Financing Order at p.3 ("After considering all alternatives, the Debtor has exercised its permissible judgment as a governmental instrumentality in determining the Facility represents the best financing it has been offered at this time."); *see also* Reply at ¶ 36.

7. The Revised Proposed Financing Order therefore fails to account for this Court's ruling, announced orally at the Hearing, that the business-judgment standard is inappropriate here, and, given that the parties to the proposed transaction are closely related, the entire fairness standard applies. *See In re Residential Capital, LLC*, No. 12-12020, 2013 Bankr. LEXIS 2601, at

3

\*64 (Bankr. S.D.N.Y. June 27, 2013) ("[I]n interested party transactions, an entire fairness/heightened scrutiny analysis applies."). Courts routinely recognize that "insiders' loans in a bankruptcy must be subject to rigorous scrutiny." *In re Lafayette Hotel P'ship*, 227 B.R. 445, 454 (S.D.N.Y. 1998); s*ee also In re MSR Hotels & Resorts, Inc.*, 2013 WL 5716897, at \*1 (Bankr. S.D.N.Y. Oct. 1, 2013) (applying heightened scrutiny to approval of DIP loan from affiliate of debtor's directors). Thus, as this Court ruled, fairness to the bondholders must be considered, including that provisions of the proposed postpetition financing must be tailored to PREPA's needs and there must not be an undue risk of a large outstanding balance remaining on the eve of confirmation. Movants must also put forth evidence sufficient for the parties and the Court to examine the negotiation process, consider the best interests of all creditors, and show fair dealing, a fair price, and fair terms. *See In re L.A. Dodgers LLC*, 457 B.R. at 313.

8. The proposed form of order should not include a different set of standards than the law requires as described above, much less Movants' novel and unsupported formulation. This is particularly important as to future requests for financing, and in light of the deficient showing made at the Hearing and in subsequent filings, as discussed below.

**B.     PREPA Has Not Taken Steps to Avoid Unnecessary Borrowings**

9. As was the case at the Hearing, PREPA's latest filings have done nothing to demonstrate that it has or is taking steps to avoid unnecessary loans to finance its day-to-day operations.

10. PREPA has not, for example, collected significant amounts that the Commonwealth and its agencies, instrumentalities, and municipalities owe to PREPA for years of past-due electricity bills. Surprisingly, at the Hearing, counsel for Movants contended there is nothing in the record to support this fact. That is incorrect. In reality, the record shows that PREPA has booked hundreds of millions of dollars of accounts receivable for numerous government

4

customers. Objectors' Exhibit D is an accounts receivable aging chart depicting amounts owed to PREPA by various government customers. *See* Obj. Ex. D at p.2 (breaking out "Government" accounts). The "Government Total" depicted in this exhibit is $1,448,396,933.32. *Id.* That total is subdivided into various government accounts, such as "Wholesale Government Metered Service" (owing $356,078,518.79), "Government Unmetered Service" (owing $128,563,808.90), and "Deferred Municipal Balances" (owing $864,863,098.36). *Id.* Moreover, by looking from left to right in these rows, one can see that large portions of these governmental accounts receivable are actually *years* overdue. *Id.* Objectors' Exhibit E also lists *8 pages'* worth of outstanding balances owed to PREPA by various government entities, many of them in the millions of dollars. *See generally* Obj. Ex. E. The total amount owed by the public corporations, agencies, and other government entities listed in this particular chart is $257,892,369. *See id.* at p.8.

11. Movants have identified no evidence to controvert these substantial amounts owed to PREPA by government customers. To the contrary, they have repeatedly *admitted* that substantial amounts are owed. *See, e.g.*, Second Supplemental Declaration of Todd Filsinger, Dkt. No. 688 at ¶ 8 ("According to the Debtor's records, public corporations owed the Debtor approximately $233 million as of December 31, 2017."); First Supplemental Declaration of Todd Filsinger, Dkt. No. 620-4 at ¶ 11 ("The Debtor's books reflect an asset of $1.4 billion attributed to a purported receivable from municipalities…"); Transcript of Deposition of Gerardo Portela Franco at 65:5-17 (Mr. Portela reviewing Objectors' Exhibit E and stating "Yeah, between corporations, us, central government agencies and federal offices, the amount, approximately, according to this paper, I don't know as of what date it is, $258 million, approximately."); *id.* at 45:8-12 ("Q. You are aware, aren't you, that PREPA has on its books substantial receivables owed from central government agencies prior to July of 2017? A. I am aware."). Moreover, nothing in

Title III prevents: (i) government entities from paying PREPA for amounts incurred prior to the petition date; (ii) the Commonwealth purchasing PREPA's aged governmental receivables; or (iii) the Commonwealth loaning other entities funds to pay their past-due electricity bills. For all these reasons, one would expect negotiated financing terms to an entity as important as PREPA to fairly address the treatment of past-due amounts from the Commonwealth and its instrumentalities and agencies. This has not yet occurred, but must if borrowings are to increase.

12. PREPA has also failed to take other important steps that would reduce or eliminate its need for postpetition financing. For example, communications equipment damage resulting from Hurricane Maria has limited PREPA's ability to automatically read meters and bill for usage. *See* Ex. 27 (Puerto Rico Electric Power Authority Amended & Restated Fiscal Plan) at p.24. Normally when automatic meter readings do not occur, PREPA has issued estimated bills to its customers. *Id.* At the Governor's request, however, PREPA has ceased issuing any estimated bills since Hurricane Maria. *Id.* Though PREPA has complied with the Governor's request—thereby forsaking a potentially valuable tool for revenue collection—PREPA's own Chief Financial Advisor, Todd Filsinger, conceded at his deposition that he does not know why the Governor made that request. Transcript of Supplemental Deposition of Todd Filsinger at 454:4-10 ("Filsinger Supp. Tr."). Nor was Mr. Filsinger aware of any efforts by PREPA to dispute the Governor's request. *Id.* at 454:11-17.

13. Further, despite the significant receivables owed to PREPA by government entities, PREPA has historically been unwilling to shut down power to non-essential entities (or even commercial entities obtaining free power from municipalities) for non-payment.

14. Finally, Mr. Filsinger has testified that PREPA's books reflect that municipalities currently owe PREPA $1.4 billion in outstanding receivables. First Supp. Decl. of Filsinger at

¶ 11. PREPA apparently believes that, per an arrangement known as known as contribution in lieu of taxes ("CILT"), this outstanding balance is offset by PREPA's tax liability to municipalities. *Id.* However, beyond Mr. Filsinger's conclusory and unsupported contentions, PREPA has offered no evidence to support its position that CILT precludes PREPA from collecting significant receivables owed by municipalities. Further, although it has been nearly five months since Hurricane Maria hit Puerto Rico, PREPA still has not decided whether it constituted a force majeure event that would potentially result in increased municipal liability to PREPA. Filsinger Supp. Tr. at 451:24-452:4. Any loan terms can and should provide that PREPA—with the support of the Commonwealth—will employ industry-standard means to collect revenues sufficient to cover its expenses and postpetition financing over the course of this Title III proceeding, including any and all emergency rate relief mechanisms encompassed in Act 57-2014.

### C. The Terms of the Proposed Financing Continue to Be Unfair and Unreasonable

15. Section 364(c) provides that a debtor may only obtain financing on a superpriority basis if, among other things, the terms of the transaction are fair, reasonable, and adequate under the circumstances, and the Debtor cannot obtain an equivalent level of credit without providing superpriority status. *See In re L.A. Dodgers LLC*, 457 B.R. at 312; *see also In re Ames Dep't Stores, Inc.*, 115 B.R. at 37; *In re Aqua Assocs.*, 123 B.R. at 196 (citing *In re Crouse Group, Inc.*, 71 B.R. at 549).

16. At the Hearing, the Court rejected Movants' first postpetition financing proposal and recognized that the Debtor's judgment as a government entity is immaterial under Section 364(c). In doing so, the Court also recognized that Movants must demonstrate fairness to the bondholders in order to obtain postpetition financing.

17. Fairness is generally the result of arm's-length negotiations, which Dustin Mondell, an advisor to the Debtor, has described as the process by which multiple parties "negotiate back and forth to reach an eventual settlement of agreed terms." Transcript of Deposition of Dustin Mondell at 24:7-15. Mr. Mondell testified that the parties to the proposed transaction had not engaged in arm's-length negotiations, *id.* at 166:17-22, but instead engaged in a "collaborative effort," *id.* at 23:14-15. He reiterated this testimony at the Hearing.

18. That so-called collaborative process has not changed since the Hearing. The proposed postpetition financing does not protect bondholders and is not the result of arm's-length negotiations. In fact, the proposed postpetition financing is admittedly the result of a single phone call initiated by Mr. Filsinger to the Secretary of Treasury for the Commonwealth of Puerto Rico, with sparse details (at best). Third Supplemental Declaration of Todd Filsinger, Dkt. No. 722 at ¶¶ 6-9. The bondholders were neither informed of nor allowed to participate in this call. This lack of transparency does not inspire confidence, nor do the results of the "negotiation."

19. As explained above, PREPA has other resources to draw on in order to pay its operating expenses. The Commonwealth could, for example, pay some of the hundreds of millions of dollars that are currently owed to PREPA by governmental customers, and include a setoff provision in the proposed postpetition financing. The Commonwealth could also, for example, lend money to those government entities, and instruct them to pay their due and owing bills to PREPA.

20. Yet the Commonwealth has done neither of those things. Instead, the Governor has precluded PREPA from sending estimated bills to its customers, further exacerbating the very liquidity crisis that PREPA now asks this Court to solve.

8

### D. The Revised Proposed Financing Order Requires Modifications

21. National submits that National's Proposed Order (Exhibit A hereto) more accurately reflects the record and the Court's views as expressed at the Hearing. The primary changes in National's Proposed Order are as follows:

- **Entire Fairness Standard**. National struck Movants' reference to the "permissible judgment" standard from the Revised Proposed Financing Order. *See* Ex. B, at ¶ A. At the Hearing, the Court found that the proper standard of review is the entire fairness standard, not the amorphous "permissible judgment" standard proposed by Movants.

- **Section 364(e) Protections**. National removed the provisions in the Revised Proposed Financing Order that functionally granted the Debtor Section 364(e) relief. *See* Ex. B, at original ¶¶ 4, 12, 14. At the Hearing, the Court found that Movants had not demonstrated good faith and, accordingly, did not afford the Debtor Section 364(e) protections. Notwithstanding this, Paragraphs 4, 12, and 14 of the Revised Proposed Financing Order propose relief that would effectively grant such relief to the Debtor.

- **Current Expense Classification**. National struck the provisions regarding the classification of Current Expenses. *See* Ex. B, at original ¶ 9. Current Expense status is neither fair nor reasonable in the context of this loan and the Court's ruling, as it is tantamount to a priming lien if approved.

- **Reservation of Setoff Rights**. National has removed determinations of creditors' setoff rights from the Revised Proposed Financing Order. *See* Ex. B, at original ¶¶ 4, 13. Paragraphs 4 and 13 of the Revised Proposed Financing Order prejudge the setoff rights of parties in interest. A motion for such a determination is not currently before the Court and should not be addressed until the parties have received notice and an opportunity for a hearing on such issue.

### III. RESERVATION OF RIGHTS

22. National reserves all rights, claims, defenses, and remedies, including, without limitation, to raise further and other objections to future requests for postpetition financing and to introduce evidence prior to or at future hearings regarding such postpetition financing.

### IV. CONCLUSION

23. For the reasons set forth herein, National requests that the Court condition the proposed postpetition financing on the modifications and reservations of rights as set forth in National's Proposed Order and for such other relief as is just.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 17th day of February, 2018.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this objection was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record. Also, a copy of this document will be notified via electronic mail to all case participants.

Dated: **February 17, 2018**
San Juan, Puerto Rico

**ADSUAR MUÑIZ GOYCO
SEDA & PÉREZ-OCHOA, P.S.C.**
208 Ponce de León Avenue, Suite 1600
San Juan, PR 00936
Telephone: 787.756.9000
Facsimile: 787.756.9010
Email: epo@amgprlaw.com
    acasellas@amgprlaw.com
    larroyo@amgprlaw.com

By: */s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR No. 206314

*/s/ Alexandra Casellas-Cabrera*
Alexandra Casellas-Cabrera
USDC-PR No. 301010

*/s/ Lourdes Arroyo Portela*
Lourdes Arroyo Portela
USDC-PR No. 226501

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Marcia Goldstein*
Marcia Goldstein*
Jonathan Polkes*
Gregory Silbert*
Robert Berezin*
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007

Stephen A. Youngman*
200 Crescent Court, Suite 300
Dallas, Texas 75201-6950
Tel.: (214) 746-7700
Fax: (214) 746-7777
Email: marcia.goldstein@weil.com
    jonathan.polkes@weil.com
    gregory.silbert@weil.com
    robert.berezin@weil.com
    stephen.youngman@weil.com

*admitted pro hac vice*

*Counsel for National Public Finance Guarantee Corp.*

10