## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO

     Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 2434**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH TO
## MOTION REQUESTING RELIEF OF STAY UNDER 362(D)(1)
## OF THE BANKRUPTCY CODE FILED BY GLADYS GARCIA RUBIERA, *ET AL.*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Preliminary Statement……………………………………………………………………6

Objection…………….…………………………………………………………………7

Conclusion……………………………………………………………………………17

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Assoc. of St. Croix Condo Owners v. St. Croix Hotel Corp.*,
   682 F.2d 446 (3d Cir. 1982)..............................................................9

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
   217 F. Supp. 3d 508 (D.P.R. 2016)...................................................10

*Delpit v. Commissioner*,
   18 F.3d 768 (9th Cir. 1994) .............................................................9

*Disciplinary Board of the Supreme Court of Pa. v. Feingold (In re Feingold)*,
   730 F.3d 1268 (11th Cir. 2013) ......................................................16

*García-Rubiera v. Fortuño*,
   727 F.3d 102 (1st Cir. 2013)...........................................................14

*In re 234-6 West 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997).............................................9

*In re Breitburn Energy Partners LP*,
   No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017)..............10

*In re City of Stockton*,
   484 B.R. 372 (Bankr. E.D. Cal. 2012)....................................11, 12

*In re Cuba Electric & Furniture Corp.*,
   430 F. Supp. 689 (D.P.R. 1977)......................................................11

*In re Cummings*,
   221 B.R. 814 (Bankr. N.D. Ala. 1998) ...........................................13

*In re Haas*,
   Case No. 04–11534, 2004 WL 3132027 (Bankr. E.D. Va. Dec. 22, 2004).....16

*In re Jefferson Cty.*,
   491 B.R. 277 (Bankr. N.D. Ala. 2013) .............................................8

*In re Motors Liquidation Co.*,
   No. 09-50026, 2010 WL 4630327 (S.D.N.Y. 2010)........................12

*In re Mu'min*,
   374 B.R. 149 (Bankr. E.D. Pa. 2007) .....................................11, 16

3

*In re Murrin*,
   477 B.R. 99 (D. Minn. 2012) ...................................................................13

*In re Neilsen*,
   443 B.R. 718 (Bankr. W.D. Va. 2011) .............................................16

*In re Plumberex Specialty Prod., Inc.*,
   311 B.R. 551 (Bankr. C.D. Cal. 2004) .............................................11

*In re Residential Capital LLC*,
   2012 Bankr. LEXIS 3777 (Bankr. S.D.N.Y. 2012) .........................16

*In re Residential Capital, LLC*,
   No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) .........11, 12

*In re Shayeb*,
   211 B.R. 390 (Bankr. D. Ariz. 1997) ................................................16

*In re Taub*,
   413 B.R. 55 (Bankr. E.D.N.Y. 2009) ................................................12

*In re Unanue-Casal*,
   159 B.R. 90 (D.P.R. 1993) ..........................................................9, 10

*Jackson v. GMAC Mortg., LLC*,
   2013 U.S. Dist. LEXIS 181066 (S.D. Ala. Dec. 30, 2013) ................16

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
   362 B.R. 49 (B.A.P. 1st Cir. 2007) .....................................................8

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
   537 B.R. 128 (Bankr. D.P.R. 2015) ....................................................8

*Peaje Invs. LLC v. Garcia-Padilla*,
   2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ....................10

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
   980 F.2d 110 (2d Cir. 1992) .............................................................15

*Soares v. Brockton Credit Union (In re Soares)*
   107 F. 3d 969 (1st Cir. 1997) .............................................................8

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
   907 F.2d 1280 (2d Cir. 1990) ........................................................9, 10

*Unisys Corp. v. Dataware Prods.*,
   Inc., 848 F.2d 311 (1st Cir. 1988) ......................................................8

**STATUTES**

26 L.P.R.A. § 8055 ................................................................14

11 U.S.C. § 362(a) ...............................................................7

11 U.S.C. § 362(d) ...............................................................7

11 U.S.C. § 362(d)(1) ...........................................................9

*Compulsory Liability Insurance for Motor Vehicle Act* ........................................15

PROMESA § 301(a) .................................................................9, 13

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion Requesting Relief of Stay Under 362(d)(1) of the Bankruptcy Code* [ECF No. 2434] (the "Motion") filed by the certified class (collectively, "Movants")  in the cases captioned *Gladys García Rubiera, et al. v. Hon. Luis G. Fortuño, et al,* Case No. 02-1179 (GAG) before the United States District Court for the District of Puerto Rico, and *Gladys García Rubiera, et al, v. Asociación de Suscripción Conjunta, et al,* Civil Number K DP2001-1441 before the Puerto Rico First Instance Court (the "Prepetition Actions"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.     On February 7th, 2018, Movants filed the Motion seeking relief from the stay and the enforcement of two stipulations between the Movants and the Commonwealth entered into prior to the commencement of this Title III case.  At its core, the Motion is a claim by prepetition, unsecured creditors seeking preferential treatment to collect on their prepetition claims against the Commonwealth, without any determination as to whether such claims should be allowed, impaired or discharged in the Title III proceeding.  This is not a case where Movants are seeking to lift the automatic stay to continue litigating prepetition causes of action.  Rather, Movants are seeking relief from the automatic stay to collect on money judgments, in an attempted end run around the Title III process and the confirmation of a plan of adjustment.

---

[2]     The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

2.     As further explained below, the Motion should be denied as Movants have failed to show "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code").  Lifting the automatic stay would result in the Commonwealth having to expend valuable resources and pay out significant amounts of money from its General Fund both to comply with the reimbursement procedures required by the stipulations and to satisfy Movants' prepetition claims, *before* it has been determined whether they will be impaired and discharged under a plan of adjustment.  This will result in valuable resources being diverted from its recovery and reorganization efforts, and potentially result in Movants receiving an unjustifiable windfall compared to other creditors.  Moreover, Movants have failed to show any harm they would suffer from maintaining the automatic stay, while the Commonwealth would be forced to divert critical resources to the fulfillment of prepetition, unsecured claims.  Therefore, it is respectfully submitted that the Motion be denied.

## **OBJECTION**

### I.     **MOVANTS HAVE FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY**

3.     Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by PROMESA section 301(a), provides for a stay of certain actions by non-debtor third parties including, among other things, the enforcement against the debtor "of a judgment obtained before the commencement of the case" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a).  The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the*

*Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

4.      "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods.*, Inc., 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'"); *Assoc. of St. Croix Condo Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) ("[The

automatic stay] permits the debtor to attempt a repayment or reorganization plan or simply to be relieved from the financial pressures that drove him into bankruptcy."); *Delpit v. Commissioner*, 18 F.3d 768 (9th Cir. 1994) ("Congress intended to give debtors a breathing spell from their creditors and *to stop all collection efforts*, all harassment, and all foreclosure actions.") (internal quotes and citations omitted) (emphasis added).

5.      An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

6.      Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

7.      No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movants bear the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

8.      Movants have not established that cause exists to lift the Title III Stay.  Indeed, Movants are merely seeking to collect on a money judgment, would directly contradict the very purpose of the stay, which is "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*,

374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets.")  The *Sonnax* factors point squarely toward maintaining the automatic stay and against awarding the remedy Movants seek here.  *First*, forcing the Commonwealth to pay out the reimbursements and abide by the procedures sought by Movants would interfere with its Title III case and the overall restructuring and recovery effort by diverting the Commonwealth's attention and resources away from its restructuring and the provision of essential services and toward the payment of prepetition creditors.  Accordingly, the second *Sonnax* factor supports denial of the Motion. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (denying lift-stay motion where it would consume the time and attention of the debtor's officers).

9.      Second, *Sonnax* factor seven weighs in favor of denying the Motion because lifting the automatic stay would prejudice other creditors. Any time and money consumed by the enforcement of the judgments is time and money diverted from the overall recovery and reorganization of the Commonwealth and from the ultimate distribution to other creditors, a factor that numerous courts have recognized counsels against the lifting of a bankruptcy stay. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Residential*

*Capital*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because it "will deplete the coffers of the City treasury").

10.     *Third,* the first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—far from supporting the Movants' contentions, instead militates against the lifting of the stay.  The Movants assert that "the lifting of the stay would [] result in the complete resolution of the issues in the long-protracted cases."  *Memorandum by Plaintiffs' Class in Support of Request for Relief From the Automatic Stay Pursuant to PROMESA's Sections 4, 7, 301(c)(3) and Bankruptcy Codes Sections 362(d)(1)*, ECF No. 2434-1 at 8.  However, the first *Sonnax* factor does not focus on the issues in the stayed litigation, contrary to the Movants' arguments.  Indeed, if it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution

of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). Here, the lifting of the stay would not resolve any issues relevant to the Commonwealth's Title III plan of adjustment – indeed, if anything, it would short-circuit the resolution of bankruptcy issues by foreclosing on the impairment and discharge of Movants' claims. Therefore, the first *Sonnax* factor actually supports the denial of the Motion.

11.     *Fourth*, the Movants have not stated any harm they would suffer from the denial of the Motion or the continued applicability of the stay. The stay simply maintains the status quo of the Prepetition Actions and does not adversely impact Movants in the slightest. In addition, nothing in the Motion suggests the existence of any exigent circumstances such that time is of the essence (indeed, the pace at which the Prepetition Actions have dragged on for years, if anything, suggests the opposite). On the other hand, the Commonwealth will suffer harm from the distraction and encumbrance on the Commonwealth's resources if the stay is lifted. Thus, the balance of equities (embodied by the twelfth *Sonnax* factor) tips in favor of denying the Motion.

12.     *Finally,* Movants argue that the automatic stay should be lifted due to the third *Sonnax* factor—whether the other proceeding involves the debtor as a fiduciary. This is because the Movants assert that the property that will used to satisfy their claims is merely held by the Commonwealth on trust and as a fiduciary, and thus is excluded from the property of the estate due to Bankruptcy Code section 541(d)—a section of the Bankruptcy Code that is not even incorporated into PROMESA. *See* PROMESA § 301(a).

13.     Movants' arguments on the *Sonnax's* third factor fail for various reasons. First, it is clear, and not denied by Movants, that Movants' claims encompass the years 1998-2010, and thus, pursuant to the governing statute, any payments to the Movants (or, at the very least, a large

13

part of them) will come from the General Funds of the Commonwealth.[3]  Therefore, the lifting of

the stay sought by the Movants will directly result in the expenditure of money the Commonwealth

owns.  Second, the stipulations the Movants seek to enforce require the Commonwealth to incur

significant administrative expenses.  Among other things, the Commonwealth is required to (a)

send, at its own cost and by first class mail, a notice to all members of the class; (b) publish, at its

own cost and in a website to which vehicle owners can have ready access, the lists for the years

1998 to 2010 that the Department of the Treasury received of the vehicle owners; (c) publish, at

its own cost, in the newspapers *El Nuevo Día* and *The San Juan Star*, once a week for six

consecutive weeks, a full-page notice; and (d) for a four-week period, twice a day and ten times

per week, broadcast a radio notice on WKAQ, *Radio Isla* and *Radio Oro* containing a summary of

the terms of this stipulation and the manner in which potential claimants may apply for

reimbursement. *See* ECF No. 2517-1 at ¶ 6.C.  On top of that, the Commonwealth will also be

required to expend its own moneys to reimburse attorneys' fees, in an amount not less than $1

million. *Id.*  It is thus blatantly incorrect to argue that the Commonwealth's property will not be

affected by the lifting of the stay.

---

[3]      Section 2 of Law 230 provides:

> The Secretary of the Treasury shall retain the funds transferred by the Joint Underwriting Association in its fiduciary capacity for a five (5)-year term counting from the date in which the retained funds are transferred by the Joint Underwriting Association to the Secretary of the Treasury.  The income generated by these funds shall revert to the General Fund of the Commonwealth Treasury as they are accrued. The Secretary of the Treasury shall establish a procedure for processing the reimbursement request of any person alleging a right to the retained funds. Once five (5) years have elapsed without the consumer claiming the retained funds, these shall become property of the Commonwealth of Puerto Rico and they shall be transferred to the General Fund of the Commonwealth Treasury.

26 L.P.R.A. § 8055. It is only from 2013 that, by virtue of an injunction issued by the First Circuit, the Commonwealth was prevented from transferring the unclaimed funds to the General Fund "until it has established and complied with a reimbursement procedure which meets the basic requirements of constitutional due process." *García-Rubiera v. Fortuño*, 727 F.3d 102, 117 (1st Cir. 2013).

14.     Third, whether the Commonwealth is acting as a fiduciary in relation the moneys claimed by the Movants, and whether the Movants' entitlements are unimpairable property rights, or are impairable, dischargeable claims, as the Commonwealth maintains, is an issue that is disputed and has not yet been resolved, contrary to the Movants' assertions.[4]  These issues will doubtless be resolved during the confirmation of a plan of adjustment, and adjudication of them now will require significant and costly briefing and analysis, which will further distract the Commonwealth and waylay its attempts to propose a plan of adjustment.  This issue is central to Commonwealth's Title III case and any determination on it directly impacts both the Commonwealth and its other creditors. Lifting the automatic stay to permit Movants to collect their judgment against the Commonwealth would undermine the Title III process, prejudicing the interests of other creditors and upending the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted).  This would contravene the tenth *Sonnax* factor, as it would require the piecemeal determination and payment of claims, rather than a consolidated, efficient resolution of them through the Title III process.

15.     Furthermore, even if the Movants did eventually establish that they beneficially own the moneys, that those moneys are held solely by the debtor as a fiduciary and that their claims

---

[4]     Section 2 of Law 230 clearly provides that once 5 years have elapsed moneys that are not claimed "shall become the property" of the Commonwealth.  It has not been conceded (contrary to Movant's assertions), that the moneys that were transferred to the General Fund after being retained for 5 years are held on trust or otherwise in a fiduciary capacity.  Rather, they are the unencumbered property of the Commonwealth.  Furthermore, Act Number 253 of December 27, 1995, known as the *Compulsory Liability Insurance for Motor Vehicle Act,* as amended by Law 230 and others, does not provide in any provision an intention to create a trust for the benefit of the insured or Joint Underwriting Association. The mere reference of "holding the funds in a fiduciary capacity" set forth in Article 6 of Act 253 does not constitute a trust pursuant to Puerto Rico law.  Act 219-2012 known as the "Trust Law" requires the execution of a public deed before a notary public in order to constitute a trust.  Prior to the enactment of Act 219 trusts were regulated by Articles 834-874 of the Civil Code of Puerto Rico.  The Civil Code also provided that a trust had to be created through a public deed in order to be effective.

15

are not dischargeable, it is clear from the jurisprudence that this alone is not enough to lift the stay. *See In re Residential Capital LLC,* 2012 Bankr. LEXIS 3777 *8 (Bankr. S.D.N.Y. 2012) (holding that "[e]ven if [the debtors were liable as fiduciaries], however, that alone would not be a basis for lifting the stay in this matter"); *Jackson v. GMAC Mortg., LLC*, 2013 U.S. Dist. LEXIS 181066 (S.D. Ala. Dec. 30, 2013) (same); *In re Shayeb*, 211 B.R. 390, 391 (Bankr. D. Ariz. 1997) (concluding that finding a debt is nondischargeable does not constitute cause to lift the automatic stay); *Disciplinary Board of the Supreme Court of Pa. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1277-78 (11th Cir. 2013) ("We agree . . . that nondischargeability alone cannot supply the cause contemplated by § 362(d)(1), otherwise the statutory automatic exceptions for the enumerated nondischargeable debts—like domestic support obligations— found in § 362(b) would be meaningless."); *In re Mu'min*, 374 B.R. 149, 161 (Bankr. E.D. Pa. 2007) ("[T]he conscious decision of Congress to make an express exception for one nondischargeable debt implies that Congress intended that collection of other nondischargeable debts be subject to the automatic stay."); *In re Neilsen*, 443 B.R. 718, 720 (Bankr. W.D. Va. 2011) (denying motion for relief from the stay where movant's request to have the automatic stay lifted was in reality an attempt to have the debt in question declared non-dischargeable); *In re Haas*, Case No. 04–11534, 2004 WL 3132027, at *2 (Bankr. E.D. Va. Dec. 22, 2004) (holding that the holder of a non-dischargeable claim must wait until "the debtor is granted or denied a discharge, the case is dismissed, or the case is closed" to pursue collection of his debt, lest he run afoul of the automatic stay). Therefore, given the significant attendant costs of lifting the stay, the prejudice that would befall other creditors and the lack of harm to the Movants, the lifting of the stay here is inappropriate.[5]

---

[5]    The remaining *Sonnax* factors ((4) whether a specialized tribunal has been established to hear the cause of action at issue; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation, (6) whether the action essentially involves third parties rather than the debtor, (8) whether a

## <u>CONCLUSION</u>

16.     For the foregoing reasons, the Court should deny the Motion requesting relief

from the automatic stay.


[*Remainder of Page Left Intentionally Blank*]

---

judgment in the foreign action is subject to equitable subordination, (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor, and (11) whether the parties are ready for trial in the other proceedings) are not addressed as they are inapplicable here.

Dated:  February 21, 2018.
       San Juan, Puerto Rico

                              Respectfully submitted,

                              **WANDA VÁZQUEZ GARCED**
                              Secretary of Justice

                              */s/ Wandymar Burgos Vargas*
                              **WANDYMAR BURGOS VARGAS**
                              USDC 223502
                              Deputy Secretary in Litigation
                              Department of Justice
                              P.O. Box 9020192
                              San Juan, Puerto Rico 00902-0192
                              Phone: 787-721-2940 Ext. 2500, 2501
                              wburgos@justicia.pr.gov

                              *Attorneys for the Commonwealth of Puerto Rico*