UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 2245, 2249, 2315, 2564**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Response relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

# RESPONSE OF THE COMMONWEALTH OF PUERTO RICO TO THE CBA COUNTERPARTIES' MOTION FOR AN ORDER TO PERMIT THE PROCESSING THROUGH RESOLUTION OF EMPLOYMENT ARBITRATION AND GRIEVANCE PROCEEDINGS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

Preliminary Statement ............................................................................................................... 6
Procedural bakground ............................................................................................................... 9
Response ................................................................................................................................. 10
    I.    The Commonwealth Does Not Object to Movants' Request to Modify the Title III Stay for Prepetition and Postpetition Actions ................................................................................ 10
    II.    The Title III Stay Applies to the Prepetition Actions ..................................................... 11
        A.    The Prepetition Actions Are Actions against the Commonwealth and Are Thus Subject to the Title III Stay ................................................................................................... 12
        B.    The "Police Power" Exception Does Not Apply to the Prepetition Actions .............. 14
    III.    The *Sonnax* Factors Weigh Strongly in Favor of Maintaining the Automatic Stay ...... 16
Conclusion .............................................................................................................................. 19

**TABLE OF AUTHORITIES**

**CASES**

*Atiles-Gabriel v. Commonwealth of P.R.*, No. 15-2108 (GAG), 2017 WL 2709757 at * 2 (D. P.R. June 23, 2017) .................................................................................................. 12

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508 (D.P.R. 2016) ........................................................................................................... 17

*Golden v. Zwickler*, 394 U.S. 103 (1969) .......................................................................... 11

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug. 4, 2006) ................................................................................... 19

*In re City of Stockton,* 484 B.R. 372 (Bankr. E.D. Cal. 2012) .......................................... 18

*In re Cummings*, 221 B.R. 814 (Bankr. N.D. Ala. 1998) .................................................. 16

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 992 (2d Cir. 1990) ....................................... 13

*In re McMullen*, 386 F.3d 320 (1st Cir. 2004) .................................................................. 15

*In re Murrin*, 477 B.R. 99 (D. Minn. 2012) ...................................................................... 16

*In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012) ................................................................................................................................... 19

*In re Sonnax Indus. Inc.*, 907 F.2d 1280 (2nd Cir. 1990) .................................................. 16

*In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) ....................................................... 16

*Memorandum Order Denying Motion of Cooperativa De Seguros Multiples' Motion for Clarification of the Automatic Stay and in the Alternative Relief from the Automatic Stay (Docket Entry No. 1276)*, ECF No. 1765 ............................................................ 15

*Memorandum Order Denying Motion of PV Properties, Inc. Regarding Automatic Stay (Docket Entry No. 332)*, ECF No. 387 ........................................................................ 15

*Memorandum Order Granting Urgent Motion for Relief from the Automatic Stay filed by Bernice Beauchamp-Velázquez* [ECF No. 1125] .......................................................... 7

*Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) ...................................................................................... 11, 12

*National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513 (1984) ................ 13

*Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997)) .............. 12

*United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960) .................................... 13

Case:17-03283-LTS Doc#:2585 Filed:02/23/18 Entered:02/23/18 22:45:39 Desc: Main
Document Page 4 of 20

**STATUTES**

11 U.S.C. § 101(27) .................................................................................................................. 14

11 U.S.C. § 362(a)(1) .......................................................................................................... 11, 12

11 U.S.C. § 362(a)(6) .................................................................................................................. 11

11 U.S.C. § 362(b)(4) .................................................................................................................. 14

Act 2-2017 .................................................................................................................................... 6

Act 26-2017 .................................................................................................................................. 6

Act 3-2017 .................................................................................................................................... 6

Act 66-2014 .................................................................................................................................. 6

Act 8-2017 .................................................................................................................................... 6

Law 184-2004 .............................................................................................................................. 7

Law 32-1972 ................................................................................................................................ 7

Law 8-2017 .................................................................................................................................. 7

**TREATISES**

3-362 Collier on Bankruptcy ¶ 362.05[5][a] (16th ed.) ...................................................... 14


**STATUTES**

11 U.S.C. § 101(27) .................................................................................................................. 14

11 U.S.C. § 362(a)(1) .......................................................................................................... 11, 12

11 U.S.C. § 362(a)(6) .................................................................................................................. 11

11 U.S.C. § 362(b)(4) .................................................................................................................. 14

Act 2-2017 .................................................................................................................................... 6

Act 26-2017 .................................................................................................................................. 6

Act 3-2017 .................................................................................................................................... 6

Act 66-2014 .................................................................................................................................. 6

Act 8-2017 .................................................................................................................................... 6

Law 184-2004 .............................................................................................................................. 7

Law 32-1972 ................................................................................................................................ 7

Law 8-2017 .................................................................................................................................. 7

**TREATISES**

3-362 Collier on Bankruptcy ¶ 362.05[5][a] (16th ed.) ...................................................... 14

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") as the entity authorized to act on behalf of the Commonwealth of Puerto Rico (the "Commonwealth"), pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this response (the "Response") to (i) the *Joint Motion of American Federation of State, County and Municipal Employees, AFL-CIO and American Federation of Teachers, AFL-CIO, for an Order to Permit the Processing Through Resolution of Employment Arbitration and Grievance Proceedings* [ECF No. 2245] (the "Joint Motion") filed by the American Federation of State, County and Municipal Employees International Union, AFL-CIO ("AFSCME") and the American Federation of Teachers, AFL-CIO ("AFT"), and (ii) the *Joinder of Service Employees International Union and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) to Joint Motion of American Federation of State, County and Municipal Employees, AFL-CIO and American Federation of Teachers, AFL-CIO, for an Order to Permit the Processing Through Resolution of Employment Arbitration and Grievance Proceedings* [ECF No. 2249] (the "Joinder," and together with the Joint Motion, the "Motion") filed by the Service Employees International Union ("SEIU") and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) ("UAW," and together with AFSCME, AFT, and SEIU, the "Unions," the "CBA Counterparties," or the "Movants").[2]

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this Response on behalf of the Commonwealth.

5

**PRELIMINARY STATEMENT**

1. The Movants seek to lift the automatic stay under Bankruptcy Code sections 362(a) and 922(a), made applicable to the Title III case by PROMESA section 301(a) (the "Title III Stay") with respect to grievances and arbitrations arising from prepetition and postpetition conduct brought under the grievance and arbitration procedures, or similar administrative procedures, in collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes, including but not limited to Law 8-2017, Law 184-2004, Law 32-1972 (the "Prepetition Actions" and the "Postpetition Actions," and collectively, the "Actions").

2. While the Commonwealth maintains its position that the Title III Stay **applies** to the Prepetition Actions or similar processes, the Commonwealth does not object to modifying the Title III Stay to allow matters arising from prepetition conduct brought under the Prepetition Actions—including disciplinary and discharge matters arising from prepetition conduct—(but not the collection or enforcement of any monetary award against the Commonwealth), **insofar as such actions do not affect the fiscal plan for the Commonwealth** (the "Fiscal Plan") **or the Title III cases.**[3]

---

[3] Prepetition Actions that may affect the Fiscal Plan include actions that challenge the constitutionality, or where the remedy would impede or be inconsistent with the implementation, of any Commonwealth statutes that are essential for the Fiscal Plan to succeed including, but not limited to: (i) Act 2-2017 (Act to delegate to AAFAF the power to revise matters including, but not limited to, agreements, transactions, and regulations of the agencies and instrumentalities of the Government of Puerto Rico); (ii) Act 3-2017 (Act to respond to the Economic, Fiscal and Budgetary Crisis and to Guarantee the Functioning of the Government of Puerto Rico); (iii) Act 8-2017 (Act for the Administration and Transformation of the Human Resources of the Government of Puerto Rico); (iv) Act 26-2017 (Act to Comply with the Fiscal Plan); and (v) Act 66-2014 (Special Act for the Fiscal and Operational Sustainability of the Government of Puerto Rico), which was ratified and amended by Act 3-2017; all of which left without effect or superseded some or all of the provisions of the collective bargaining agreements of the CBA Counterparties, as well as any Commonwealth statute, regulation, policy, or practice that contravene or are inconsistent with the provisions of such collective bargaining agreements. Other actions that may also affect the Fiscal Plan include prepetition actions that seek injunctive relief other than reinstatement.

3. Similarly, the Commonwealth does not object to Movants' request that any grievances and arbitrations arising from postpetition conduct proceed in the ordinary course under the grievance and arbitration provisions in collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes, including, but not limited to, Law 184-2004, Law 32-1972, and Law 8-2017.

4. The Commonwealth does not consent to any waiver or modification of the Title III Stay so as to permit the prosecution against the Commonwealth or any of the other Title III debtors of any claim or claims by anyone other than the Unions as provided for herein and the Commonwealth reserves all rights, defenses, and protections with respect to any matters pending or that may arise in the Title III cases, including the treatment of any claims arising from the Prepetition Actions under a plan of adjustment or otherwise in the Title III cases.

5. Because the Commonwealth consents to the Movants' request to lift the Title III Stay to allow the Actions to proceed (but not the collection or enforcement of any monetary award against the Commonwealth), including disciplinary and discharge matters arising from prepetition conduct, the Motion is moot and need not be decided by the Court. In fact, in an almost identical situation where a party sought clarification regarding the applicability of the Title III Stay and the Commonwealth had consented to modifying the stay to allow litigation to proceed to completion, this Court held "[i]n light of the Commonwealth's consent, the Court need not address the arguments raised by the Movants . . . [t]he hearing scheduled . . . in connection with the Motion, is hereby cancelled because the Movants have been granted complete relief." *See Memorandum Order Granting Urgent Motion for Relief from the Automatic Stay filed by Bernice Beauchamp-Velázquez* [ECF No. 1125] (the "August 22 Order"). Consistent with the August 22 Order and in

7

light of the Commonwealth's consent to modifying the Title III Stay, the Court need not address the issue of the applicability of the Title III Stay.

6. However, should the Court address whether the Title III Stay applies to the Prepetition Actions, the Court should deny the Movants' requested relief for the following reasons:

    a. The Title III Stay protects the Commonwealth from being sued for prepetition conduct and applies to administrative proceedings by the plain language of section 362(a)(1), which include the Prepetition Actions, *see* 11 U.S.C. § 362(a)(1); *see also* PROMESA § 301(a) (incorporating section 362 into Title III cases);

    b. The "police power" exception under section 362(b)(4) of the Bankruptcy Code does not exempt Movants' claims from the Title III Stay. As discussed herein, by its plain language, that section protects ***the government's*** exercise of its police powers to protect **public health, safety, and welfare**; the limited exception is not so broad as to encompass any action where a governmental entity is involved, and therefore does not permit creditors to escape application of the Title III Stay to enforce private rights. In this regard, Movants are not a governmental entity. Accordingly, the police power exception to the Title III Stay does not apply to Movants;

    c. The case law cited by the Movants (*i.e.,* the "Steelworkers Trilogy" and the N.L.R.B. cases) are completely inapposite in this controversy as the *Steelworkers Trilogy* does not involve grievance and arbitration proceedings in the context of a bankruptcy proceeding, and addresses the intervention of courts in weighing the *merits* of such cases, and the N.L.R.B. cases are distinguishable because they do not involve governmental entities as debtors; and

8

d. Movants have failed to show cause exists to lift the Title III Stay under the *Sonnax* factors. Indeed, such factors weigh heavily against lifting the Title III Stay as further explained below.

## PROCEDURAL BAKGROUND

7. After the hearing held on June 28, 2017, the Unions and the Commonwealth engaged in discussions regarding modifying the application of the Title III Stay to Prepetition Actions. On September 12, 2017, the Commonwealth shared with Movants a first proposal of stipulation and on September 19, 2017, the Unions counterproposed.

8. Due to the passing of Hurricanes Irma and María over Puerto Rico, the discussions were interrupted for almost two months. On November 20, 2017, the Commonwealth reached out to the Unions with a first revised proposal in order to resume discussions. The CBA Counterparties allege that they were "left with no alternative other than to move this Court for the relief requested herein." Joint Motion ¶ 13. However, before the Unions filed the Motion, the Commonwealth never received a counterproposal to its November 20, 2017 proposal, although it always demonstrated its readiness and willingness to work with the Unions on an amenable solution to this matter.

9. Moreover, after Movants filed the Motion—and although the Unions never submitted a counterproposal to the first revised proposal—the Commonwealth presented to Movants a second revised proposal and a separate proposed stipulation limited to disciplinary and discharge grievance and arbitration actions on January 28, 2018. The second revised proposal was presented in an effort to reach a consensual resolution with the Unions. In response to the Commonwealth's second revised proposal, on February 1, 2018, the parties engaged again in conversations to reach an out-of-court solution to this matter. The CBA Counterparties rejected

9

both of the Commonwealth's proposed stipulations, and the Commonwealth committed to work on a third revised proposal addressing the Unions' concerns. On February 23, 2018, the Commonwealth presented the Unions with a third revised proposal, which is currently under review by the Unions. To date, the Commonwealth has presented the CBA Counterparties with five proposals to consensually resolve these matters. In turn, the Unions have only counterproposed once.

10. This procedural background reflects that the Commonwealth has constantly acted in a reasonable, sensible, and rational manner with respect to the Movants' demands, in an effort to reach a consensual resolution. Asserting that the Movants were left with no other alternative but to file the Motion, not only is disingenuous with respect to all efforts made by the Commonwealth in this regard, but also reflects, at worst, that the Unions have not been negotiating in good faith since the early stages of the discussions beginning in summer of 2017, and at best, a gambit to upend the substantial progress made in discussions to extract additional concessions from the Commonwealth.

## RESPONSE

### I. THE COMMONWEALTH DOES NOT OBJECT TO MOVANTS' REQUEST TO MODIFY THE TITLE III STAY FOR PREPETITION AND POSTPETITION ACTIONS

11. The Commonwealth does not object to Movants' requested relief to modify the Title III Stay with respect to Prepetition and Postpetition Actions—including disciplinary and discharge matters—(but not to the collection of any monetary award against the Commonwealth), to the extent that such actions do not affect the Fiscal Plan or the Title III cases.

12. The Commonwealth conveyed its position to Movants in an effort to avoid unnecessary briefing. However, Movants were unwilling to enter into a stipulation that would

provide it with complete relief, wasting critical time and resources of the Commonwealth and this Court. Given the circumstances and the Commonwealth's willingness to permit Movants to proceed with the Actions, the Commonwealth respectfully submits that the Court (i) enter an order modifying the Title III Stay in accordance with this Response, and consistent with the August 22 Order (*see* ECF No. 1125), and (ii) need not further consider the legal issues raised by Movants so as to avoid rendering an advisory opinion. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (holding federal courts "do not render advisory opinions").[4]

## II. THE TITLE III STAY APPLIES TO THE PREPETITION ACTIONS

13. Should the Court deem it necessary to address the Motion on the merits, the Commonwealth respectfully submits that the Title III Stay applies to the Prepetition Actions. Section 362(a) of the Bankruptcy Code, made applicable by Section 301(a) of PROMESA, 48 U.S.C. § 2161, imposes an automatic stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the cause under this title." 11 U.S.C. § 362(a)(1); *see also* PROMESA § 301(a) (incorporating Section 362 into Title III cases). Similarly, subsection 362(a)(6) automatically stays "any act to collect, assess, or recover a claim against the debtor" arising before the filing of the bankruptcy petition. 11 U.S.C. § 362(a)(6).

14. The automatic stay is "one of the cornerstone protections under bankruptcy law, giving debtors a 'breathing room' from the pressures of their creditors," *see Montalvo v. Autoridad*

---

[4] Nothing contained in this Response should be construed as a waiver or modification of the Title III Stay to permit the prosecution against the Commonwealth of any claim by anyone other than Movants as provided for herein, and the Commonwealth reserves all rights, defenses, and protections with respect to any other motions for relief of stay or any other matters pending or that may arise in the Title III cases. The Commonwealth further reserves its rights with respect to any claim currently pending in the Actions or hereinafter asserted by Movants.

*de Acueducto y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997)), and PROMESA applies it with full force to the Title III cases. *See Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543]. Moreover, the automatic stay "is extraordinarily broad: it protects the debtor from nearly any act to collect a pre-petition claim and any action affecting the property of the debtor's estate, subject only to section 362(b)'s narrow exceptions." *Atiles-Gabriel v. Commonwealth of P.R.*, No. 15-2108 (GAG), 2017 WL 2709757 at * 2 (D. P.R. June 23, 2017) (citation omitted).

### A. The Prepetition Actions Are Actions against the Commonwealth and Are Thus Subject to the Title III Stay

15. Bankruptcy Code section 362(a)(1) clearly provides that the Title III Stay applies to the "commencement or continuation . . . of a judicial, **administrative** or other action or proceeding against the debtor that was or could have been commenced before the commencement of [a Title III case]." 11 U.S.C. § 362(a)(1) (emphasis added); 48 U.S.C. § 2161.

16. The stayed actions are grievances and arbitrations arising from prepetition conduct brought under the grievance and arbitration procedures in collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes. Those actions were brought before Commonwealth agencies with jurisdiction to entertain those controversies; as such, they squarely fall within the Title III Stay as "administrative . . . proceeding[s] against the debtor that was or could have been commenced before the commencement of [a Title III case]." 11 U.S.C. § 362(a)(1).

17. Movants' reference to common practice in chapter 11 cases is inapposite here. Movants argue that the Title III Stay does not apply to routine administrative proceedings, since under Chapter 11, debtors should continue to comply with grievance and arbitration procedures notwithstanding the filing for bankruptcy. *See* Joint Motion ¶ 18. Movants do not cite any case to support that argument. In this regard, courts have concluded that under Bankruptcy Code section 1113(f) the collective bargaining process continues after the filing of a bankruptcy petition, notwithstanding Bankruptcy Code section 362. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 992 (2d Cir. 1990), *cert. denied sub num. Air Line Pilots Ass'n v. Shugrue*, 502 U.S. 808 (1991) (holding that "§ 1113(f) precludes application of the automatic stay to disputes involving a collective bargaining agreement only when its application allows a debtor unilaterally to terminate or alter any provision of a collective bargaining agreement."). However, PROMESA section 301(a) specifically does not incorporate Bankruptcy Code section 1113(f). 48 U.S.C. § 2161.[5]

18. Movants also cite a series of cases, dubbed by the Unions as the "Steelworkers Trilogy," in support of their argument that the "United States Supreme Court not only endorsed the use of a grievance and arbitration procedure in resolving contractual disputes but also restrained court involvement in such disputes by imposing a judicial deference to the process." Joint Motion ¶ 18. Those cases are completely inapposite in this matter, as discussed herein. None of the *Steelworkers Trilogy* cases deal with bankruptcy proceedings. Moreover, while those cases limit the intervention of courts in "**weighing the merits** of [grievances and arbitrations]," *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568 (1960) (emphasis added), the Commonwealth has never requested this Court to intervene or interfere with the **merits** of the

---

[5] In doing so, Congress specifically provided that the U.S. Supreme Court's holding in *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513 (1984), and Bankruptcy Code section 365 would apply in Title III cases under PROMESA.

13

Prepetition Actions. Nor does this Court have before it a request from the Commonwealth to review or modify any collective bargaining agreement.

19. Accordingly, Movants' reference to practice in chapter 11 cases and the *Steelworkers Trilogy* is not relevant to whether the Title III Stay applies to the Prepetition Actions. In fact, Movants' reference to practice in chapter 11 cases (and in turn, Bankruptcy Code section 1113(f)) supports the conclusion that Congress indeed intended the Title III Stay to apply to the Prepetition Actions by specifically excluding section 1113(f) from the myriad provisions of the Bankruptcy Code applicable to Title III cases under PROMESA section 301(a).

### B. The "Police Power" Exception Does Not Apply to the Prepetition Actions

20. Section 362(b)(4) of the Bankruptcy Code provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of an action or proceeding ***by a governmental unit*** . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's policy of regulatory power." 11 U.S.C. § 362(b)(4) (emphasis added).[6]

21. Section 362(b)(4) applies to actions and proceedings commenced or continued ***by a governmental unit***. The purpose of this exception to the automatic stay is to "permit regulatory, police and criminal actions to proceed in spite of section 362(a)(1) . . ." such that the bankruptcy court does not become a haven for wrongdoers. 3-362 Collier on Bankruptcy ¶ 362.05[5][a] (16th ed.). As such, section 362(b)(4) does not apply in situations where the governmental unit is a

---

[6] The term governmental unit is defined as "the United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States, . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27).

14

debtor, but rather is limited to specific examples of government action against a creditor. Accordingly, it provides private creditors no affirmative rights under any circumstance against a governmental unit who is a debtor. Because Movants are not a governmental unit, they cannot assert that this exemption applies to actions brought by them.

22. Indeed, this Court has held that "[t]he section 362(b)(4) exception 'is **to be narrowly construed**.' By its plain language, the exception **applies only to 'an action or proceeding by a governmental unit**.'" *Memorandum Order Denying Motion of PV Properties, Inc. Regarding Automatic Stay (Docket Entry No. 332)*, ECF No. 387 (the "November 3, 2017 Order") (*citing In re McMullen*, 386 F.3d 320 (1st Cir. 2004)); *Memorandum Order Denying Motion of Cooperativa De Seguros Multiples' Motion for Clarification of the Automatic Stay and in the Alternative Relief from the Automatic Stay (Docket Entry No. 1276)*, ECF No. 1765 (noting that section 362(b)(4) is "inapplicable on its face" because litigation was not brought by any governmental unit).

23. Ignoring the statute's unambiguous text, Movants cite three cases where courts concluded that the National Labor Relations Board (the "N.L.R.B.") is a governmental unit. *See* Joint Motion at 12. Those cases, however, differ from the instant case because the N.L.R.B. was not a debtor in such actions, as the Commonwealth is here. As previously discussed, the police power exception is limited to specific examples of government action against a creditor; it provides private creditors with no affirmative rights under any circumstance to enforce their private rights against a debtor.

24. Accordingly, it is clear that only a governmental entity, which Movants are not, may utilize the police power exception to the automatic stay, and thus, Movants' claims are not excepted from the Title III Stay under section 362(b)(4).

### III. THE *SONNAX* FACTORS WEIGH STRONGLY IN FAVOR OF MAINTAINING THE AUTOMATIC STAY

25. Movants also argue that the Court should grant relief from the automatic stay "for cause," based on the factors enumerated in *In re Sonnax Indus. Inc.*, 907 F.2d 1280 (2d Cir. 1990). *See* Joint Motion at 13. Of the twelve factors mentioned in *Sonnax*, the Unions allege that factors 1, 2, 4, 7, 10 and 12 apply in their request. As discussed below, Movants' interpretation of those factors as applied in this context is entirely misplaced.

26. **Factor 1**: **Partial or complete resolution of the issues**—whether relief would result in complete or partial resolution of the issues—does not support lifting the Title III Stay. This factor does not focus on the issues purportedly being resolved in the separate litigation, i.e., the Prepetition Actions. It is not sufficient that the separate litigation would eventually resolve the issues in that litigation. If that were the test, the first Sonnax factor would always favor lifting the stay because every lawsuit eventually resolves issues in that particular proceeding.

27. Instead, the first Sonnax factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). The Prepetition Actions would not resolve any issues relevant to the Commonwealth's Title III plan of adjustment. Therefore, the first *Sonnax* factor does not support lifting the Title III Stay.

28. **Factor 2**: **Lack of interference**—lifting the Title III Stay as requested by Movants would interfere with the Title III case because it would affect the application of the Fiscal Plan and the laws that are essential for the Fiscal Plan to succeed including, without limitation: (i) Act 2-2017 (Act to delegate to AAFAF the power to revise matters including, but not limited to, agreements, transactions, and regulations of the agencies and instrumentalities of the Government of Puerto Rico); (ii) Act 3-2017 (Act to respond to the Economic, Fiscal and Budgetary Crisis and to Guarantee the Functioning of the Government of Puerto Rico); (iii) Act 8-2017 (Act for the Administration and Transformation of the Human Resources of the Government of Puerto Rico); (iv) Act 26-2017 (Act to Comply with the Fiscal Plan); and (v) Act 66-2014 (Special Act for the Fiscal and Operational Sustainability of the Government of Puerto Rico), which was ratified and amended by Act 3-2017.

29. **Factor 4**: **Specialized tribunal**—Movants argue that the Public Sector Labor Relations Commission is a specialized tribunal that can address equitable and monetary claims. As mentioned before, granting the Unions' request would have a severe and negative impact on the success of the Fiscal Plan and the Title III cases before this Court. No one *Sonnax* factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 529 n.12 (D.P.R. 2016).

30. **Factor 7**: **Prejudice to other creditors**—Allowing all Prepetition and Postpetition Actions to proceed as requested by the Unions would interfere severely with the Fiscal Plan and the capacity of the Commonwealth to conduct its operations. Additionally, it would impede or make impracticable the modification, transfer, subcontracting or cessation of certain of the

17

Commonwealth's operations. Affecting the capacity of the Commonwealth to execute the Fiscal Plan would consequently have a negative impact on the interest of other creditors. In this regard, *In re City of Stockton* is directly on point. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. Plaintiff moved to lift the automatic stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

31. **Factor 10**: **Judicial economy**—Lifting the Title III Stay would not result in an expeditious resolution of Movants' claims. The Unions conceded the latter, by stating in their lift stay motion that "[a]t present, there are thousands of arbitration and grievance proceedings and other statutory discharge and discipline matters involving members of the Unions that have been stayed by the misapplication of the Title III Stay. That number increases every day. We note that if allowed to proceed as the Unions propose, **such proceedings would not be heard immediately** or at the same time but, rather, would be scheduled and heard in the ordinary course under a schedule to be set by the [Commissions]." Joint Motion at 8 (emphasis added). This Court has previously determined that when a movant's claim is in an early stage, relief from the Title III Stay is not warranted. *See* November 3, 2017 Order, ECF No. 387 at 6 ("Movant has not demonstrated that the *Sonnax* criteria weigh in its favor with respect to the continuation of the PREC Proceeding. Continuation of the PREC Proceeding, which is in its initial stages, would not necessarily result in an expeditious resolution of Movant's claims").

32. **Factor 12**: **Impact on the parties and balance of harm**—Granting Movants' requested relief would impact the capacity of the Commonwealth to comply with the Fiscal Plan, which ultimately is for the benefit of the Government of Puerto Rico and the people of Puerto Rico. Considering the alleged personal harm or impact that Movants claim *vis à vis* to the impact that the People of Puerto Rico would have if the Fiscal Plan cannot be complied with, this Court should bear no doubt that the Unions have not demonstrated "that the harm from delaying the [Prepetition] Proceeding[s] outweighs the burden on [the Commonwealth] that would arise from recommencing the [Prepetition Actions]." *See* November 3, 2017 Order, ECF No. 387 at 7.

33. Additionally, *Sonnax* factor 6—whether the action essentially involves third parties rather than the debtor—weighs in favor of maintaining the Title III Stay. The analysis under this factor is based on whether the Prepetition Actions primarily involve the Commonwealth. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug. 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)). Here, there is no dispute that the primary parties to the Prepetition Actions include the Commonwealth. Accordingly, this factor weighs heavily in favor of denying the Motion.

## CONCLUSION

34. The Commonwealth consents to modifying the Title III Stay to allow the Actions, as provided herein and to the extent that such actions do not affect the Commonwealth Fiscal Plan, to proceed to judgment in the ordinary course in accordance with the grievance and arbitration

19

procedures in collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes including, but not limited to, Law 8-2017, Law 184-2004, Law 32-1972; *provided*, *however*, that the Commonwealth reserves all rights, defenses, and protections with respect to any matters pending or that may arise in the Title III Cases, including the treatment of any claims arising from the Prepetition Actions under a plan of adjustment or otherwise in the Title III Cases.

Dated: February 23, 2018
      San Juan, Puerto Rico

Respectfully submitted,

| | |
|---|---|
| */s/ Peter Friedman* | */s/ Mohammad S. Yassin* |
| John J. Rapisardi | Mohammad S. Yassin |
| Suzzanne Uhland | USDC-PR Bar No. 302909 |
| Diana Perez | **PUERTO RICO FISCAL AGENCY AND** |
| (Admitted *Pro Hac Vice*) | **FINANCIAL ADVISORY AUTHORITY** |
| **O'MELVENY & MYERS LLP** | Robert Sánchez Vilella (Minillas) |
| 7 Times Square | Government Center |
| New York, NY 10036 | De Diego Avenue, Stop 22 |
| Tel: (212) 326-2000 | San Juan, Puerto Rico 00907 |
| Fax: (212) 326-2061 | Tel: (787) 722-2525 |
| | Fax: (787) 721-1443 |
| Peter Friedman | |
| (Admitted *Pro Hac Vice*) | *Co-Attorney for the Puerto Rico Fiscal* |
| **O'MELVENY & MYERS LLP** | *Agency and Financial Advisory Authority* |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | |
| Tel: (202) 383-5300 | |
| Fax: (202) 383-5414 | |

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*