Hearing Date:   March 7, 2018 at 9:30 a.m. (AST)
Reply Deadline:   March 2, 2018 at 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 2501, 2555** |
| THE PBA FUNDS[2]<br><br>Movants,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.* | |

## OBJECTION OF FINANCIAL OVERSIGHT AND MANAGEMENT
## BOARD TO MOTION OF PBA FUNDS FOR THE PAYMENT OF RENT

---

[1]   The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   The PBA Funds currently consist of (a) Fir Tree Partners, (b) Candlewood Investment Group, and (c) Inglesea Capital, LLC, each of which holds PBA Bonds (as defined in the Motion) or acts as investment manager or advisor (or is an affiliate of entities which act as investment managers or advisors) to funds and/or accounts that hold PBA Bonds.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................. 3

    I.      The PBA Bonds ................................................................................ 3

    II.     The Motion......................................................................................... 6

OBJECTION .................................................................................................................. 6

    I.      The PBA Funds Lack Standing to Enforce PBA's Rights, if any. ........................ 6

    II.     The PBA Funds Cannot Enforce the Terms of the PBA Leases Directly ............ 11

    III.    The Court Should Not Consider Relief under Section 365(d)(3) Unless it
           Determines the PBA Leases are True Leases ....................................................... 15

RESERVATION OF RIGHTS ........................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bco. Cent. Corp. v. Yauco Homes, Inc.*,
   135 D.P.R. 858 (1994) ................................................................................................11, 12

*Bldg. Maint. Servs. v. Hato Rey Exec. Bldg.*,
   109 D.P.R. 656 (1980) .......................................................................................................14

*Cabrera-Morales v. UBS Tr. Co. of Puerto Rico*,
   769 F. Supp. 2d 67 (D.P.R. 2011) ....................................................................................12

*Cty. of Santa Clara v. Astra USA, Inc.*,
   588 F.3d 1237 (9th Cir.2009) ...........................................................................................12

*Cruz Berrios v. A.C.G.M.E.*,
   218 F. Supp.2d 140 (D.P.R. 2002).....................................................................................12

*F.C. Imports, Inc. v. First Nat'l Bank of Boston*,
   816 F. Supp. 78 (D.P.R.1993)....................................................................................1, 9, 11

*In re Adelphia Communic'ns Corp.*,
   285 B.R. 848 (Bankr. S.D.N.Y. 2002) .............................................................................10

*In re ANC Rental Corp., Inc.*,
   277 B.R. 226 (Bankr. Del. 2002) ......................................................................................15

*In re C.P. Hall Co.*,
   750 F.3d 659 (7th Cir. 2014) ..............................................................................................8

*In re Delta Underground Storage Co.*,
   165 B.R. 596 (Bankr. S.D. Miss. 1994).............................................................................7

*In re Irwin Yacht Sales*,
   164 BR 678 (M.D. Fla. 1994) ..........................................................................................15

*In re James Wilson Assocs.*,
   965 F.2d 160 (7th Cir.1992) .............................................................................7, 10, 14, 15

*In re Lefrak*,
   223 B.R. 431 (Bankr. S.D.N.Y. 1998)..............................................................................15

*In re Martin Paint Stores*,
   207 B.R. 57 (S.D.N.Y.1997)..........................................................................................8, 15

*In re Overview Equities, Inc.*,
   240 B.R. 683 (Bankr. E.D.N.Y. 1999)........................................................................7

*In re Refco Inc.*,
   505 F.3d 109 (2d Cir. 2007)........................................................................8, 9, 10

*In re Thorpe Insulation Co.*,
   677 F.3d 869 (9th Cir. 2012) ......................................................................7

*In re Tower Park Properties, LLC*,
   803 F.3d 450 (9th Cir. 2015) ......................................................................7, 8, 9, 10

*Nintendo Co. v. Patten (In re Alpex Computer Corp.)*,
   71 F.3d 353 (10th Cir. 1995) ......................................................................7

*Smart World Techs. LLC v. Juno Online Servs., Inc.*,
   423 F.3d 166 (2d Cir. 2005)........................................................................10

*S. Bld., Inc. v. Martin Paint Stores*,
   207 B.R. 226 (S.D.N.Y. 1997)....................................................................15

*Torres v. Bella Vista Hosp., Inc.*,
   523 F. Supp. 2d 123 (D.P.R. 2007)............................................................11

*Yadkin Valley Bank & Tr. Co. v. McGee (In re Hutchinson)*,
   5 F.3d 750 (4th Cir. 1993) ..........................................................................7

STATUTES

31 L.P.R.A. § 3374 ............................................................................................11

Enabling Act §§ 901-917 ..................................................................................4

Enabling Act § 903 ............................................................................................3

Enabling Act § 907 ............................................................................................3

Enabling Act § 916 ............................................................................................5

11 U.S.C. § 365..................................................................................................2, 14, 15

11 U.S.C. 365(d)(3) ....................................................................................... passim

11 U.S.C. 1109(b) ......................................................................................... passim

OTHER AUTHORITIES

Restatement (Second) of Contracts § 304 (1981) .................................................12, 13

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Electric Power Authority ("PREPA," and together with the Commonwealth, COFINA, HTA, and ERS the "Debtors," and each individually a "Debtor"), as Title III debtors, by and through the Financial Oversight and Management Board for Puerto Rico(the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[1] respectfully submit this objection ("Objection") to the *Motion of the PBA Funds for the Payment of Rent* [ECF No. 2501] (the "Motion")[2] and *Ambac Assurance Corporation's Joinder to the Motion of the PBA Funds for the Payment of Rent* [ECF No. 2555] (the "Joinder"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Motion should be denied without a hearing on the merits because the PBA Funds lack standing to assert PBA's purported rights against the Debtors in these Title III Cases.

2.      *First,* the PBA Funds do not have standing to step into the shoes of PBA and assert PBA's rights derivatively under purported leases with the Debtors.  Party-in-interest standing under section 1109(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") is confined to parties whose interests are directly (not indirectly or derivatively) affected by a Title III case.  The PBA Funds, in their capacity as creditors of a

---

[1]      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[2]      Capitalized terms used but not defined herein shall have the meaning given to them in the Motion.

landlord of the Debtors, do not have party-in-interest status under section 1109.  Even if they had

that status, it allows them only to appear, raise the issue and be heard.  It does not allow them to

control the issue, such as by making business decisions in respect of the rents, negotiating a deal,

or litigating to judgment.

3.     *Second,* the PBA Funds do not have direct standing to assert nonresidential real

property lease claims against the Debtors.  Puerto Rico law sets forth a clear standard as to when

a party is a third-party beneficiary under a contract with the power to enforce the contract

directly.  The PBA Funds' bare assertion that they meet this standard "upon information and

belief" is not within the realm of meeting this standard.  Motion at ¶ 9.  The Motion is devoid of

a single citation to any provision of a PBA Lease indicating the parties intended to grant the PBA

Funds the right to enforce the Debtors' alleged rent obligations under the PBA Leases.  Because

the PBA Funds have failed to state any facts indicating any intent of PBA or any of the Debtor-

tenants to grant the PBA Funds the right to enforce the PBA Leases, the PBA Funds are not

direct parties-in-interest in the Debtors' cases and thus cannot assert direct rights against the

Debtors under the PBA Leases or section 365(d)(3) of the Bankruptcy Code.

4.     *Third,* even if the PBA Funds could establish that they are third party

beneficiaries of the PBA Leases, the case law and legislative history is clear that Bankruptcy

Code section 365 regulates the interaction between lessor and debtor-lessee and thus cannot be

invoked by third parties.   As such the PBA Funds lack prudential standing because mere

economic beneficiaries are not within the intended class of parties entitled to assert rights under

section 365.

5.     The Motion should similarly be denied because it is not clear that the PBA Leases

are true leases that give rise to an obligation to pay rent under section 365(d)(3).  Based on the

2

Oversight Board's preliminary review of certain of the purported leases, the PBA Leases are, as a matter of law, not true leases but disguised financing arrangements, pursuant to which the Commonwealth or its other instrumentalities obtained real estate or other financing ultimately from the PBA bondholders, with PBA as a conduit.  Each of the purported leases the Oversight Board has reviewed (a) provides for rent payments at amounts required to service interest and principal payments due on the bonds, (b) terminates when the PBA bonds are paid off, and (c) makes rent payment  unconditional, even if the leased property is destroyed.  If these leases are determined to be disguised loans to the Commonwealth, section 365(d)(3) has no application.  Regardless, in the event the PBA Funds are held to have standing to pursue the Motion, no relief should be granted until this determination is made.

6.      Finally, a principal concern that appears to animate the Motion is that PBA's alleged failure to pursue payment of rent would constitute a waiver of such claim.  Motion ¶ 30, 32.  The Debtors agree that PBA (and, derivatively, its creditors), by not seeking to collect postpetition rent from or pursuing available rights against the Debtors, does not waive any of its rights and will not be prejudiced under a plan of adjustment or otherwise.  The Debtors likewise reserve all rights, defenses and counterclaims with respect to its purported leases with PBA.

## **BACKGROUND**

### I.      The PBA Bonds

7.      The Public Buildings Authority ("PBA") is an instrumentality of the Commonwealth, created on June 19, 1958 by Act No. 56, as amended, of the Legislature of Puerto Rico (the "Enabling Act").   PBA designs, constructs, administers, and provides maintenance to office buildings, courts, warehouses, schools, health care facilities, welfare facilities, shops, and related facilities leased to the Commonwealth and its departments, agencies,

3

and instrumentalities and municipalities.  *See* Enabling Act § 903.  PBA has not commenced a case under Title III of PROMESA and is not a Title III debtor.

8.      Under section 907 of the Enabling Act, PBA is authorized to issue bonds by resolutions of the members of its board of directors.  The Enabling Act also provides that the good faith and credit of the Commonwealth are covenanted to PBA for the payment of rent under any lease agreement executed pursuant to the Enabling Act with any department of the Commonwealth.  Enabling Act § 916.  Additionally, under the Enabling Act, the Commonwealth has guaranteed to the PBA bondholders the payment of the principal and interest on outstanding bonds at any given time, issued from time to time by PBA, for any of its purposes authorized by sections 901-917 of the Enabling Act. *Id.* § 907(a).[3]

9.      Lease payments made to PBA in consideration for the use of government facilities constitute the main source of repayment of the PBA Bonds.  The PBA Bonds are payable *solely* from, and supported by rentals of leased facilities. Specifically, section 703 of the PBA Resolution provides that the:

> [e]xcept as in this Resolution otherwise provided, the principal, interest and premium are payable solely from the Debt Service Rentals[4] and from funds provided by the Commonwealth of Puerto Rico in compliance with its guaranty of payment of said bonds under Act No. 17 of the Legislature of Puerto Rico, approved April 11, 1968, as amended, which Debt Service Rentals and funds are hereby pledged to the payment thereof in the manner and to the extent specified in this Resolution.[5]

---

[3]   Pursuant to the Enabling Act, PBA issued bonds pursuant to the following resolutions: (i) PBA Resolution No. 77 adopted November 16, 1970, (ii) PBA Resolution No. 158 adopted February 14, 1978, and (iii) PBA Resolution No. 468 adopted June 22, 1995 (the "PBA Resolution").  Because the PBA Funds hold bonds issued under the PBA Resolution (the "PBA Bonds"), unless otherwise stated, this Joint Objection only addressees the PBA Bonds and does not address any of the bonds issued under the PBA Resolution No. 77 or PBA Resolution No. 158. *See* Motion ¶ 11.

[4]   The term "Debt Service Rentals" is defined as the "rentals required to be paid by the lessees of the government facilities under Lease Agreements on account of the principal of (including Amortization Requirements for term bonds and the premiums, if any, for the redemption of bonds) and interest on all bonds." *Id.* § 101.

[5]   In the Motion, the PBA Funds do not assert a perfected lien on the Debt Service Rentals under section 703 of the PBA Resolution.  Indeed, the Motion is completely silent regarding this point.  The Puerto Rico Real Property Registry Act, which governs the creation of mortgages on real property, and Article 9 of the Uniform

PBA Resolution § 703.

10.     Neither the PBA Resolution nor the Enabling Act provide the PBA Funds with

rights or remedies that they may enforce directly against the Commonwealth.  Sections 701 and

804 of the PBA Resolution only provide the PBA Funds with a remedy against *PBA* if PBA fails

to comply with its obligations:

> [I]f any lessee of any Authority Facilities fails to pay any rentals at the times and
> in the amounts required by any Lease Agreement covering such Authority
> Facilities, the Executive Director shall promptly file a notice of such failure with
> the Secretary of the Treasury of the Commonwealth and request the Secretary of
> the Treasury to pay such rentals or the unpaid portion thereof as required by the
> Enabling Act.

PBA Resolution § 701.

11.     Further, while section 916 of the Enabling Act provides that the good faith and

credit of the Commonwealth are pledged to PBA for the payment of the rentals under any

qualifying lease agreement, section 916 only provides a remedy to PBA, not to its bondholders,

to enforce this pledge:

> If any portion of the rent payable to [PBA] in any fiscal year, by any department,
> agency, instrumentality, authority or public corporation of the Commonwealth,
> under the terms of any lease contract executed pursuant to the provisions of §§
> 901—917 of this title, are not paid when they fall due, the Commonwealth shall
> advance to *the Authority* the unpaid balance of such rent." (emphasis added).

Enabling Act § 916.

12.     Moreover, there is nothing in the PBA Resolution or the Enabling Act that permit

the PBA Funds or any other PBA bondholder to step into PBA's shoes and enforce the

provisions of the Enabling Act or any lease against the Commonwealth.

---

Commercial Code as adopted by Puerto Rico, which governs the creation of security interests on accounts,
receivables, contracts, general intangibles, inventory, equipment, and all other personal property, provide the
legal framework for creating a monetary lien on real and personal property in Puerto Rico.  Upon an initial
review of the closing documents related to the PBA Bonds, the Debtor believes that certain of the series of bonds
may not have a perfected lien on the Debt Service Rentals under Puerto Rico law.  All rights are reserved with
respect to such arguments.

## II.     The Motion

13.     On February 14, 2018, the PBA Funds filed the Motion seeking the payment of all outstanding postpetition rent obligations of the Debtors (including, the Commonwealth's agencies and departments) arising under lease agreements between the PBA and the Debtors and other Commonwealth departments, agencies, and instrumentalities (the "PBA Leases"), in an amount that the PBA Funds estimate is no less than $289 million.[6]  *See* Motion ¶ 27.  The PBA Funds simply assert that they have standing to file the Motion because they are "creditors of the Commonwealth" and, "upon information and belief," the PBA Funds are "collectively intended third-party beneficiaries" under the PBA Leases.  *Id.*¶ 9.

## OBJECTION

## I.     The PBA Funds Lack Standing to Enforce PBA's Rights, if any.

14.     As a preliminary matter, the Motion should be denied without a hearing on the merits because the PBA Funds lack standing to assert PBA's purported rights against the Debtors in these Title III cases.  The PBA Funds are putatively asserting PBA's right to be paid rent by the Debtors; they seek to be heard in their capacity as creditors of a landlord of the Debtors, *i.e.* as creditors of a creditor.  The PBA Funds have no right to step into the shoes of PBA and derivatively assert PBA's rights.  The PBA Funds have not demonstrated any direct ownership of the Rents nor established any legal right to enforce the terms of the PBA Leases on behalf of PBA.[7]  Accordingly, any rights PBA has to seek payment of Rent under Bankruptcy Code section 365(d)(3) must be exercised by PBA and not the PBA Funds.

---

[6]     In the Motion, the PBA Funds cite to a December 18, 2017 press release issued by AAFAF for the proposition that the Commonwealth has "nearly $7 billion in cash on deposit in various bank account." Motion ¶ 24. Not only is this assertion immaterial to the Motion, but the PBA Funds ignore the subsequent statement of AAFAF on January 21, 2018 regarding the nature and restrictions on the use of those funds. *See Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities*, January 19, 2018, *available at* http://www.aafaf.pr.gov/assets/aafaf-bankaccountbalancesgovernmentofpr.pdf.

[7]     *See* infra Part II.

15.     Because the PBA Funds' interest in payment of Rent is derivative of PBA's interest, the PBA Funds do not have "party-in-interest" standing for purposes of Bankruptcy Code section 1109(b).[8] This section states that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).   It does not include a creditor of a creditor.[9]

16.     While the list of parties under Bankruptcy Code section 1109(b) that may be heard is not exhaustive, circuit courts have held that "party in interest" does not mean "anyone who might be affected by the bankruptcy proceedings." *In re James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992).  Rather, circuit courts have held party-in-interest status is confined to parties whose interests are directly (not indirectly or derivatively) affected by a bankruptcy proceeding[10] or who have a significant legal (as contrasted with financial) stake in the outcome of a case.[11]  Thus, an entity "that may suffer collateral damage" does not have standing under § 1109(b).  *In re C.P. Hall Co.,* 750 F.3d 659, 661 (7th Cir. 2014).

---

[8]   Party-in-interest status under Bankruptcy Code section 1109(b) is a necessary prerequisite to bankruptcy standing.  *In re Tower Park Properties, LLC*, 803 F.3d 450, 452 (9th Cir. 2015)(citing *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir.2012)).

[9]   That the PBA Funds hold bonds issued by PBA that are guaranteed by the Commonwealth does not give them standing to assert claims held by PBA.  Any standing they have is limited to their guarantee claims.  They cannot bootstrap their general status as a party in interest to bring a claim that belongs to PBA.

[10]   *Nintendo Co. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 356 (10th Cir. 1995) ("Although 11 U.S.C. § 1109(b) broadly defines a 'party in interest,' the phrase invites interpretation and 'is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'") (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir. 1993)); *In re Tower Park Properties, LLC*, 803 F.3d 450, 457 (9th Cir. 2015)("[t]he general theory behind [§ 1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest").

[11]   *See In re Overview Equities, Inc.,* 240 B.R. 683, 686–87 (Bankr. E.D.N.Y. 1999) (party with legal interest in property, rather than claim, found to be party in interest). Some courts, however, have suggested that a legal or practical interest is not sufficient to establish "party in interest status" and that an interest in distributions from the estate may be required. *See* In re Delta Underground Storage Co., Inc., 165 B.R. 596, 598 (Bankr. S.D. Miss. 1994) (citations omitted).

7

17.     Applying this reasoning, circuit courts have consistently held that party-in-interest standing under Bankruptcy Code section 1109(b) does not arise if a party seeks to assert a right that is purely derivative of another party's rights in the bankruptcy proceeding.  *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007); *In re Martin Paint Stores*, 207 B.R. 57, 61–62 (S.D.N.Y.1997) ("The concept [of party-in-interest standing] does not, according to the Second Circuit, encompass a creditor of one of the debtor's creditors. . . [Appellant] cannot establish standing by raising another person's legal rights.") (internal quotation marks and citations omitted).   In *Refco*, the Second Circuit considered whether investors in a company called Sphinx were parties-in-interest with standing to object to an allegedly fraudulent settlement between Sphinx and the debtor company.   It concluded that party-in-interest standing does not extend to investors whose rights are derivative of the rights of another entity that is itself a party-in-interest, particularly where the rights asserted were not distinct from those of Sphinx.  *Id*. at 117.  With respect to the investor' allegations of breach, the court acknowledged that "[i]t may be that the Sphinx directors violated their fiduciary duties by entering into a settlement that was not in the best interests of Investors."  *Id.* at 118.  The court, however, concluded that the bankruptcy court was not the appropriate forum in which to resolve such a dispute: "Bankruptcy court is a forum where creditors and debtors can settle their disputes *with each other.*  Any internal dispute between a creditor and that creditor's investors belongs elsewhere."  *Id.* at 118 (emphasis in original).

18.     Nor does the PBA Funds' alleged status as third party beneficiaries confer standing under section 1109(b).  In *In re Tower Park Properties, LLC*, 803 F.3d 450, 452 (9th Cir. 2015), the Ninth Circuit considered whether a beneficiary of a trust who disagrees with the way the trust was administered by former trustees is a "party in interest" under section 1109(b) with standing to object to the bankruptcy court's approval of a settlement agreement between a

8

debtor, creditor entities held by the trust, and the former trustees.  The beneficiary asserted that he is a party-in-interest because (i) he has a financial stake in the trust, and (ii) under California law, he has a cause of action against the debtor for its complicity in the trustee's breach of their fiduciary duty.  Finding *Refco* analogous, the Ninth Circuit concluded that neither rationale supports the conclusion that the trust beneficiary is a party-in-interest for purposes of section 1109(b).  *First*, the beneficiary did not claim any direct ownership interest in the trust's assets, nor any legal entitlement to control or manage those assets.  *Id.* at 460.  *Second*, the beneficiary was not the entity positioned to take legal recourse to protect the trust assets.  *Id.  Finally*, even if the beneficiary had a direct claim against the debtor for complicity in the trustee's breach, adjudicating the claim would involve a significant amount of time, substantially delay the proceedings, and would contravene the purpose of chapter 11—particularly where more appropriate forums are available.  *Id.* at 461.

19.    For the reasons articulated in *Refco* and *Tower Parks*, the PBA Funds fail to meet the section 1109(b) "party-in-interest" definition and therefore lack standing to enforce the rights of its bond issuer, PBA, to payment of rent from any of the Debtors.  *First*, the PBA Funds do not assert any rights distinct from PBA's purported rights against the Commonwealth or other Debtor-tenants of PBA.[12]  Instead, the Motion makes clear that the PBA Funds seek to "enforce the terms of the PBA Leases, and to preserve the *PBA's rights* to be paid what it is owed as a landlord."  Motion ¶ 3 (emphasis added).

20.    *Second*, the PBA Funds do not allege any direct ownership rights in the rental payments.  Instead, the PBA Funds concede they are at best third party beneficiaries and confirm

---

[12]   The Debtors do not concede any contract they have with PBA constitutes a true lease of nonresidential real property, and reserve all rights related to any such determination.

their interest is purely derivative by stating "[t]he repayment of PBA Bonds is substantially supported by rental payments made pursuant to PBA Leases."  Motion ¶ 12.

21.     *Third*, none of the cases cited by the PBA Funds in the Motion support their assertion that as a creditor they have standing to enforce the rights of PBA under Bankruptcy Code section 365(d)(3).   Indeed, all the cases cited by the PBA Funds in the Motion involve landlords enforcing rights, not creditors enforcing rights.  *See* Motion ¶¶ 29-30.  The PBA Funds have failed to meet their burden of establishing standing to assert PBA's rights against the Debtors, and thus the Motion should be denied in full.

22.     *Finally*, as with *Refco* and *Tower Park*, there are more appropriate fora for adjudication of the PBA Fund's alleged grievances than this Court.  At its core, this is a dispute between two non-debtors.  Accordingly, the PBA Funds' recourse on this issue, if any, must be pursued outside this Title III Court.  *See Tower Park,* at 461 (holding that bankruptcy court adjudication of the issues would interfere with actions in the appropriate state court and would contravene the purposes of chapter 11); *Refco*, 505 F.3d at 118.

23.     Even if the PBA Funds had section 1109(b) party-in-interest status, it would only enable them to appear in the Title III case, raise the issue, and be heard—and not control any rights or actions against the Debtors.  *See, e.g., Smart World Technologies LLC v. Juno Online Services, Inc.*, 423 F.3d 166, 181-83 (2d Cir. 2005) ("§ 1109(b) entitled the creditors to 'standing to raise issues and to appear and be heard,' but that the right did 'not equate to ownership of the causes of action in question.'") (citing *In re Adelphia Communications Corp.*, 285 B.R. 848, 851 (Bankr.S.D.N.Y.2002)).  To control a cause of action, a party in interest must have standing independent of section 1109(b).  *See In re James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992).  As illustrated in Part II below, the PBA Funds do not have independent standing.  Therefore they

10

cannot control the issue of Rent payments, including by making business decisions in respect of the Rents, negotiating a deal, or litigating such issue to judgment.

## II.        The PBA Funds Cannot Enforce the Terms of the PBA Leases Directly

24.        The Motion should also be denied because the PBA Funds lack the ability to assert direct rights to postpetition rent under either 11 U.S.C. § 365(d)(3) or the PBA Leases.

25.        Under Puerto Rico law, a contract is only binding between the contracting parties. Article 1209 of the Puerto Rico Civil Code provides, in part, that "[c]ontracts shall only be valid between the parties who execute them."  Thus, "[a]ctions arising out of a contract can be prosecuted only by one contracting party against the other."  *Torres v. Bella Vista Hosp., Inc*., 523 F. Supp. 2d 123, 152 (D.P.R. 2007) (citing *F.C. Imports, Inc. v. First Nat'l Bank of Boston*, 816 F. Supp. 78, 93 (D.P.R.1993)).  This rule is analogous to the common law doctrine of privity of contract.

26.        A limited exception to this general rule arises when a contract expressly provides benefits to a third-party.  The second paragraph of Article 1209 states "[s]hould the contract contain any stipulation in favor of a third party, he may demand its fulfillment, provided he has given notice of acceptance to the person bound before it may have been revoked."  31 L.P.R.A. § 3374.  The PBA Funds try to argue that they fall within this limited exception of Article 1209. The PBA Funds, however, provide no facts in support.  They simply state, without factual allegation or evidence, that "upon information and belief" they are intended third-party beneficiaries who, under Commonwealth law, are entitled to enforce such provisions. Motion ¶ 9.

27.        The leading opinion of the Puerto Rico Supreme Court on the enforceability of contracts by a third-party beneficiary is *Bco. Central Corp. v. Yauco Homes, Inc.*, 135 D.P.R. 858 (1994).  The Puerto Rico Supreme Court explained that a third-party beneficiary provision is

11

enforceable only if the parties that executed the agreement intended to grant a third party the direct right to seek the performance of the promises made in the agreement. *Id.* at 863-64. It is not enough that the contracting parties considered the interest of a third party and granted the third party some direct or indirect economic benefit. It is an essential condition that the intent of the contracting parties is to grant the third-party beneficiary the right to enforce the obligations directly against a contracting party under the agreement. *Id* at 864. Whether the parties intended to grant the third-party beneficiary the right to enforce the obligations depends on the facts of each case. *Id.* at 866.

28.     The U.S. District Court for the District of Puerto Rico has similarly opined that "[i]t is not sufficient that the performance of a contract may benefit a third person; the contract must have been entered into by the parties for the direct benefit of the third person." *Cruz Berrios v. A.C.G.M.E.*, 218 F. Supp.2d 140, 143 (D.P.R. 2002). The agreement must also grant the third-party beneficiary the right to enforce the contract. *Cabrera-Morales v. UBS Tr. Co. of Puerto Rico*, 769 F. Supp. 2d 67, 72 (D.P.R. 2011) (holding a trust beneficiary was not a third-party beneficiary because, in part, it was not established that the beneficiary is entitled to sue under the agreement). According to the District Court "[a] third-party beneficiary is one who has rights to enforce the promises made in the contract, such that he or she can sue for performance under the contract." *Id.* at 72. (*citing County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244–45 (9th Cir.2009)).[13]

---

[13]   The District Court cites *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237, 1244–45 (9th Cir.2009), which in turn cites the Restatement (Second) of Contracts § 304 (1981). The Restatement provides, in part:

> Where the promisee clearly manifests an intention to confer on the beneficiary a legal right to enforce the contract, recognition of the beneficiary's right rests on the same grounds as recognition of the promisee's right. In cases of doubt, the question whether such an intention is to be attributed to the promisee may be influenced by the likelihood that recognition of the right will further the legitimate expectations of the promisee, make available a simple and convenient procedure for enforcement, or protect the beneficiary in his reasonable reliance on the promise.

12

29.     The PBA Funds have failed to carry their burden of demonstrating under each
PBA Lease that the contracting parties (*i.e.* PBA and the respective lessee) intended PBA Funds
to have a right of direct enforcement of the respective lease.  The enforcement remedies under
the PBA Leases make clear that it was *not* the intention to permit the PBA Funds or any other
third party to enforce the PBA Leases.  Indeed, as the PBA Funds acknowledge, the sole remedy
under the PBA Leases in the event the governmental lessee fails to pay the full amount of rent in
a timely manner is for PBA (and not PBA Funds) to seek collection from the lessee itself, and
then from the Secretary of the Treasury of the Commonwealth.  Motion ¶ 13 (citing PRS ADC
AEP Reg. 6502, Art. VI(A) (2002)).  Moreover, even if the PBA Funds are intended economic
beneficiaries under the PBA Leases, they have not alleged any provisions under the PBA Leases
that entitle them to directly enforce PBA's rights against the lessee.  Tellingly, neither the Bond
Resolution nor the Enabling Act granted the PBA Funds the right to seek a rent payment directly
from a PBA tenant.[14]  Under PBA's Enabling Act, the Commonwealth provided two types of
guarantees to its bondholders: (i) a guaranty to bondholders[15] of the payment of the principal and
interest of the bonds and (ii) a guaranty to PBA of the rent payments under the lease agreements
between PBA and the various Commonwealth agencies or instrumentalities.  These guarantees,
and not a right to enforce the contract, are the only recourse available to the PBA Funds.[16]

_____

Restatement (Second) of Contracts § 304 (1981)

[14]  Moreover, the Master Sublease Contract between PBA and Department of Education provides that such contract
"shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and shall also
inure to the benefit of the holders of the bonds issued under the Bond Resolution, as their respective interest may
appear."  *See* Section 6.04 of the Master Sublease Contract.  Nowhere does the Master Sublease Agreement grant
the PBA Funds the right to enforce the obligations of sublessee.  No such rights are conferred as the Master
Sublease Contract does not have any language granting the bondholders the right to enforce against the sublease
the right to compel payments due under the Master Sublease Contract.

[15]  The PBA Funds are not seeking relief with respect to the Commonwealth's guarantee of their bonds, and thus
their status as guarantee creditors of the Commonwealth is not relevant to their attempt to enforce the PBA
Leases or PBA's section 365(d)(3) rights and does not give them standing to do so.

[16]  *See also* Puerto Rico Public Buildings Authority, Government Facilities Revenue Refunding Bonds, Series U,

30.     Moreover, the PBA Funds have not established and cannot establish any ownership or other property interest in Rents under the PBA Leases with any of the Debtors that could, in turn, provide a basis for the PBA Funds direct collection or enforcement rights.  Under Puerto Rico law, in order to perfect a rent assignment such assignment must be made through an authentic document with a fixed date, meaning it must be notarized.  *See Building Maintenance Services v. Hato Rey Executive Building*, 109 D.P.R. 656 (1980).  The PBA Funds have not alleged that they have a perfected security interest on Rents, perfected through an authentic document with a fixed date, nor have they alleged any other perfected assignment of rents.  Nor could they plead such facts as the Master Sublease Contract expressly prohibits the parties from assigning such contract.  *See* Master Sublease Contract § 6.01.  Therefore, the PBA Funds not only lack contractual rights to collect Rents, they also lack any property rights in the Rents, and thus have no claim to directly enforce PBA's contract rights under the PBA Leases against any of the Debtors.

31.     Finally, even if the PBA Funds could establish status as a third-party-beneficiary, the PBA Funds lack prudential standing to enforce section 365(d)(3) of the Bankruptcy Code. Section 1109 was not "intended to waive other limitations on standing, such as that the claimant be within the class of intended beneficiaries of the statute that he is relying on for his claim."  *In re James Wilson Associates, Inc.*, 965 F.2d 160, 169 (7th Cir. 1992).  As the jurisprudence makes clear, standing to pursue relief under section 365 is narrower than under section 1109 because "[s]ection 365 aims to ensure that the landlord receives the benefit of his bargain, and looks, therefore, to the prejudice to the landlord.  It does not deal with a third party's benefit of its own bargain with the landlord."  *Southern Boulevard, Inc. v. Martin Paint Stores (In re Martin Paint*

June   8,   2012,   *available   at*   http://www.gdb-pur.com/investors_resources/documents/2012-06-19-PRPublicBuildingAuth01a-FIN.pdf

*Stores*), 207 B.R. 57, 61-62 (S.D.N.Y. 1997); *James Wilson,* at 169 ("we find it very difficult to

see who might be the beneficiary of [section 365(d)] other than the lessor…"). Accordingly,

only direct parties to the lease, (*i.e.* the lessor and the lessee), have standing under section 365.[17]

### III.   The Court Should Not Consider Relief under Section 365(d)(3) Unless it Determines the PBA Leases are True Leases

32.      As described above, the Oversight Board's preliminary review of certain of the

purported PBA Leases has raised serious doubts as to whether PBA is a landlord under true

leases, as opposed to a conduit for financing from the PBA bondholders to the Commonwealth or

certain of its instrumentalities. The purported leases bear few of the hallmarks of a

landlord/tenant relationship. The "rent" payments mirror debt service on the PBA Bonds

(whatever that amount is at any given time), not compensation for use and occupancy of real

property. The "leases" terminate when the bonds are paid off. There are no default provisions or

eviction or other remedies. The economic reality of the relationship among the PBA

bondholders, PBA, and the "lessees" thus appears to be that of lender and loan

parties. Bankruptcy courts recognize this distinction and refuse to compel rent payments under

section 365(d)(3) in the absence of a true lease. *See, e.g.*, *In re Thomas*, No. 13-11653 HRT,

2015 WL 6526899, at *3 (Bankr. D. Colo. Oct. 28, 2015) (holding that claim of landlord for

administrative rent may only be allowed against debtor that is obligor under lease and that

section 365(d)(3) "cannot be stretched to include a debtor's personal guaranty"); *In re Lefrak*,

---

[17]   *James Wilson,* at 160 (holding that only the landlord in that case had standing to rely on section 365(d)(4) as "[a] rule that allows other creditors to complain that the lease was not assumed will simply provoke arid controversies over what formalities should be considered adequate for the assumption of a lease--*a matter between lessor and lessee*") (emphasis added); *In re Irwin Yacht Sales*, 164 BR 678 (M.D. Fla. 1994) (third party entitled to rent payments does not have standing under section 365 as it is "clear that the parties in interest in this controversy are . . . the parties to the lease. It is equally clear that inasmuch as [the third party] was not a party to the lease, she has no standing to oppose the Debtor's attempts to assume the lease in question" under section 365); *See* Senate Report No. 95–989 ("This provision [section 365(d)] will prevent *parties* in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.") (emphasis added).

223 B.R. 431, 435 (Bankr. S.D.N.Y. 1998) (setting forth the framework for determining whether a lease is a true lease for purposes of seeking relief under section 365).

33.    Based on the foregoing, even if the PBA Funds are determined to have standing to control the alleged nondebtor-landlord's rights under section 365(d)(3), this Court should not grant any relief requested in the Motion until it has determined each of the leases on which the PBA Funds seek to compel payment from a Debtor are true leases under the totality of the circumstances.

## RESERVATION OF RIGHTS

34.    Finally, a principal concern that appears to animate the Motion is that PBA's alleged failure to pursue payment of rent would constitute a waiver of such claim.  Motion ¶ 30, 32.   The Debtors agree that PBA (and, derivatively, its creditors), by not seeking to collect postpetition rent from or pursuing available rights against the Debtors, does not waive any of its rights and will not be prejudiced under a plan of adjustment or otherwise.  The Debtors likewise reserve all rights, defenses and counterclaims with respect to its purported leases with PBA.

*[Remainder of page intentionally left blank]*

16

WHEREFORE the Debtors respectfully request the Court deny the Motion and grant the

Debtors such other and further relief as is just.

Dated: February 23, 2018
        San Juan, Puerto Rico

                                   Respectfully submitted,

                                   */s/ Martin J. Bienenstock*
                                   Martin J. Bienenstock (*pro hac vice*)
                                   Paul V. Possinger (*pro hac vice*)
                                   Ehud Barak (*pro hac vice*)
                                   Maja Zerjal (*pro hac vice*)
                                   **PROSKAUER ROSE LLP**
                                   Eleven Times Square
                                   New York, NY 10036
                                   Tel: (212) 969-3000
                                   Fax: (212) 969-2900

                                   *Attorneys for the Financial Oversight and
                                   Management Board as Representative for the
                                   Commonwealth of Puerto Rico*

                                   */s/ Hermann D. Bauer*
                                   Hermann D. Bauer
                                   USDC No. 215205
                                   **O'NEILL & BORGES LLC**
                                   250 Muñoz Rivera Ave., Suite 800
                                   San Juan, PR 00918-1813
                                   Tel: (787) 764-8181
                                   Fax: (787) 753-8944

                                   *Co-Attorneys for the Financial Oversight and
                                   Management Board as Representative for the
                                   Commonwealth of Puerto Rico*