**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]
---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.
---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 2488, 2489, 2490**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH TO
MOTION REQUESTING RELIEF FROM AUTOMATIC STAY
FILED BY MITSUBISHI MOTORS SALES OF CARIBBEAN, INC.**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion Requesting Relief From Automatic Stay* [ECF No. 2488] (the "Motion") and the *Memorandum in Support of Mitsubishi Motor Sales of Caribbean, Inc's*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Motion Requesting Relief From The automatic Stay* [ECF No. 2488-1] (the "Memorandum in Support") filed by Mitsubishi Motors Sales of Caribbean, Inc. (the "Movant") regarding the case captioned *Mitsubishi Motors Sales of Caribbean, Inc. v. Hon. Raúl Maldonado Gautier, et al,* Civil Number K CO2016-0026 (903) before the Puerto Rico First Instance Court (the "Prepetition Action"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1. By the Motion, Movant is seeking to lift the automatic stay to proceed with a prepetition civil rights action for declaratory judgment and refund of excise tax against the Commonwealth, in a case that is still in the preliminary stage of litigation.

2. Movant's Prepetition Action alleges the illegality of a computation formula implemented by the Secretary of Treasury and requests the refund of taxes allegedly paid in excess as a consequence. The Prepetition Action was commenced on December 29, 2016, when Movant filed the original action, then amended on January 17, 2017. However, Movant did not serve the Commonwealth with the summons until April 6, 2017, which therefore set the Commonwealth's deadline to answer the complaint to June 6, 2017, 60 days after the date of the service of summons and more than 30 days after the commencement of the Commonwealth's Title III case. Prior to the commencement of the Title III Case, no dispositive motion or answer to the complaint was filed in the Prepetition Action on behalf of the Commonwealth.

3. As further explained below, given that the stay unquestionably applies here, the Motion should be denied as Movant has failed to show "cause" exists to lift or modify the

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). As a potential, prepetition, unsecured creditor, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his claims should not be resolved through the claims resolution process to be undertaken in the Title III cases. In support of the Motion, Movant relies on conclusory statements to assert that cause exists to lift the automatic stay, while vaguely purporting to apply four of the twelve *Sonnax* factors to the facts of the underlying action.

4. Considering the very early procedural stage of the Prepetition Action, the majority of the *Sonnax* factors are in favor of maintaining the automatic stay and denying the Motion. Therefore, it is respectfully submitted that the Motion be denied.

## **OBJECTION**

### I. MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY

5. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by PROMESA section 301(a), provides for a stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

6. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir.

1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods.*, Inc., 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

7.  An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).

To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

> (1) whether relief would result in complete or partial resolution of the issues;
>
> (2) the lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the foreign proceeding involves the debtor as fiduciary;
>
> (4) whether a specialized tribunal has been established to hear the cause of action at issue;
>
> (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
>
> (6) whether the action essentially involves third parties rather than the debtor;
>
> (7) whether the litigation could prejudice the interest of other creditors;
>
> (8) whether a judgment in the foreign action is subject to equitable subordination;
>
> (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
>
> (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
>
> (12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

8. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R.

at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

9. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Here, the *Sonnax* factors point squarely toward maintaining the automatic stay and against awarding the remedy Movant seeks.

10. **<u>Sonnax</u> Factor 1:** Movant asserts that the first *Sonnax* factor, "whether relief would result in complete or partial resolution of the issues," supports lifting the stay, as it will "surely result in a complete resolution" of the issues in the Prepetition Action. Memorandum in Support at ¶ 67. Movant's argument is mistaken. The first *Sonnax* factor does not focus on the issues in the stayed litigation: indeed, if it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues"). Here, the lifting of the stay

would not resolve issues relevant to the Commonwealth's Title III plan of adjustment – indeed, if anything, it would short-circuit the resolution of them. This is because Movant is seeking relief in the form of a tax credit, to offset any past tax overcharges against any future tax liabilities. *See* Memorandum in Support at ¶ 66. This credit would apparently result in Movant receiving 100% recovery on its unsecured claim, with interest (*see* Movant's proposed order, ECF No. 2488-5 at 2), before any other unsecured creditors receive a penny and before a plan potentially impairing Movant's claim is even proposed, thereby preventing the adjustment of Movant's claims.[3] Therefore, the first *Sonnax* factor actually supports the denial of the Motion.

11. ***Sonnax* Factor 2:** Lifting the automatic stay to proceed with the Prepetition Action will divert the Commonwealth's attention and resources to defending Movant's claims and will encourage other creditors to seek similar relief. Indeed, Movant itself notes the Commonwealth is potentially subject to "countless lawsuits" regarding these issues. Memorandum in Support at ¶ 39. Any time and money consumed defending these actions is time and money diverted from the recovery and reorganization of the Commonwealth and from other creditors, a factor that numerous courts have recognized counsels against lifting a bankruptcy stay. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant

---

[3] For the avoidance of doubt, the Commonwealth and the Oversight Board reserve all rights and defenses relating to Movants' claims, including, without limitation, any rights to challenge any set-offs or to assert any set-offs and to impair and discharge Movants' claims.

to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").

12. ***Sonnax* Factor 10**: Contrary to Movant's assertions, judicial economy would not be furthered by lifting the stay. Movant itself concedes that the Commonwealth is potentially subject to "countless lawsuits" both from Movant and from other importers. Memorandum in Support at ¶ 39. Allowing Movant's claim to go forward and potentially result in Movant receiving a tax credit giving it 100% recovery will inexorably lead to a multitude of suits from other creditors seeking the same treatment. On the other hand, keeping the stay in place will lead to the centralized processing of claims in this Court and the equal treatment of all creditors. Therefore *Sonnax* factor 10 supports the denial of the Motion. Anything else would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also., In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims."); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would

prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfer[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

13. **_Sonnax_ Factor 11:** As discussed above, the Prepetition Action was filed approximately four months prior the Title III Case and is still at a very early stage. The Commonwealth has not filed any dispositive motion or answer to the complaint in the Prepetition Action and, as such, the parties are not ready for trial in the Prepetition Action. Accordingly, granting the Motion will not result in the timely resolution of the overall action. Thus, *Sonnax* factor 11 weighs in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

14. **_Sonnax_ Factor 7**: Title III of PROMESA applies with respect to all debts, claims, and liens asserted against a Title III debtor (as such terms are defined in Bankruptcy Code section 101), created before, on, or after the commencement of the Title III case. *See* 48 U.S.C. § 2101. Bankruptcy Code section 101(5) broadly defines "claim" to include the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the

debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

15. Movant argues that "other creditors in the debtors' bankruptcy shall not be harmed by granting [Movant's] request for relief of the automatic stay," since the declaratory judgment sought, as well as the refund of money, does not seek the enforcement of any action in detriment of the debtor, the creditor nor the estate. *See* Memorandum in Support ¶ 71. Movant's claims are belied by the very relief Movant seeks: a "credit for the payment of future excise taxes." *Id* at ¶ 61. This credit would apparently be for the full amount of Movant's claim, plus interest. *See id*; Movant's proposed order, ECF No. 2488-5 at 2. As noted above, this would result in Movant receiving 100% of its claim, without the possibility of adjustment, *before* any other creditor are entitled to payment and *before* a plan of adjustment is even proposed, let alone confirmed. Yet Movant is simply a potential, prepetition, unsecured creditor of the Commonwealth. Movant's claims are subject to the claim resolution process that will be undertaken in the Commonwealth's Title III case and to potential impairment in a plan of adjustment. Lifting the stay would result in unwarranted preferential treatment to Movant and (by the application of the tax credit to fully pay movant's claim) reduce the tax collected by the Commonwealth, and, concomitantly the resources available for distribution to other creditors. Therefore, it would prejudice other creditors, against the seventh *Sonnax* factor.

16. **Sonnax Factor 4**: The Puerto Rico Court of First Instance is not a "specialized tribunal," and no assertion has been made by Movant to the contrary. Indeed, Movant even states that the case is not a "complex" one, involving just the interpretation of statutes and case law.

Memorandum in Support ¶ 70. This Court is very capable of dealing with such issues.

17. **Sonnax Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Prepetition Action, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. On the other hand, postponing liquidation of Movant's claims will neither adversely affect Movant nor promote judicial economy. There is nothing urgent about Movant's claims. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.

18. Lastly, Movant alleges that the automatic stay should be lifted because the Prepetition Action is likely to succeed on the merits. *See* Memorandum in Support ¶ 67. Such an assertion is baseless and premature. No dispositive motions have been filed in the Prepetition Action and the parties have not yet fully briefed their positions. Thus, it is too early for a court to evaluate the merits of the Movant's case.

## CONCLUSION

19. Movant has failed to establish extraordinary circumstances that justify the lifting of the automatic stay in the Title III case of the Commonwealth. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: February 27, 2018.
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*