# Exhibit A

Case:17-03283-LTS Doc#:2645-1 Filed:03/01/18 Entered:03/01/18 18:15:45 Desc:
Exhibit A thru L Page 2 of 22
In Re: The Financial Oversight and Management Board for Puerto Rico, as representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

Report - EXHIBIT A

## First Interim Fee Period Uncontested Fees

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Voluntary Discounts | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | *Financial Advisors to Debtors* | | | | | | | | |
| 1 | **Ernst & Young LLP [Dkt. No. 2036]** | 5/3/2017 - 9/30/2017 | $ 1,169,699.80 | $ 33,230.32 | $ 4,910.69 | $ 839.80 | yes | $ 1,136,469.48 | $ 4,070.89 |
| | *Financial Advisors to Debtors* | | | | | | | | |
| 2 | **Deloitte Financial Advisory Services LLP [Dkt. No. 2061 & 2149]** | 5/3/2017 - 9/30/2017 | $ 6,647,370.29 | $ 46,329.31 | $ 441,830.04 | $ 9,309.35 | yes | $ 6,601,040.98 | $ 432,520.69 |
| | *Puerto Rico Bankruptcy Counsel to PREPA* | | | | | | | | |
| 3 | **Cancio, Nadal, Rivera & Diaz, PSC [Dkt. No. 2135]** | 7/1/2017 - 9/30/2017 | $ 220,295.00 | $ - | $ 701.27 | $ - | - | $ 220,295.00 | $ 701.27 |
| | *Special Counsel to Debtors* | | | | | | | | |
| 4 | **Luskin Stern & Eisler LLP [Dkt. No. 2077]** | 5/3/2017 - 9/30/2017 | $ 324,975.50 | $ 16,628.43 | $ 2,172.59 | $ 71.95 | - | $ 308,347.07 | $ 2,100.64 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | | |
| 5-a | **O'Melveny & Myers LLP [Dkt. No. 2062]** | 5/3/2017 - 9/30/2017 | $ 9,990,147.15 | $ 262,924.65 FN1 | $ 184,126.63 | $ 11,037.76 FN2 | yes | $ 9,727,222.50 | $ 173,088.87 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - COFINA* | | | | | | | | |
| 5-b | **O'Melveny & Myers LLP [Dkt. No. 2063]** | 5/5/2017 - 9/30/2017 | $ 2,782,774.28 | | $ 48,206.98 | | yes | $ 2,782,774.28 | $ 48,206.98 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - ERS* | | | | | | | | |
| 5-c | **O'Melveny & Myers LLP [Dkt. No. 2064]** | 5/21/2017 - 9/30/2017 | $ 1,272,965.00 | | $ 19,854.00 | | yes | $ 1,272,965.00 | $ 19,854.00 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - HTA* | | | | | | | | |
| 5-d | **O'Melveny & Myers LLP [Dkt. No. 2065]** | 5/21/2017 - 9/30/2017 | $ 2,028,863.49 | | $ 67,533.13 | | yes | $ 2,028,863.49 | $ 67,533.13 |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | | |
| 6-a | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 2096]** | 5/3/2017 - 9/30/2017 | $ 59,360.00 | $ - | $ 200.00 | $ - | - | $ 59,360.00 | $ 200.00 |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - COFINA docket* | | | | | | | | |
| 6-b | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 246 17-3284]** | 5/5/2017 - 9/30/2017 | $ 15,890.00 | $ - | $ - | $ - | | $ 15,890.00 | $ - |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - ERS docket* | | | | | | | | |
| 6-c | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 241 17-3566]** | 5/21/2017 - 9/30/2017 | $ 5,425.00 | $ - | $ - | $ - | | $ 5,425.00 | $ - |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - HTA docket* | | | | | | | | |
| 6-d | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 356 17-3567]** | 5/21/2017 - 9/30/2017 | $ 24,080.00 | $ - | $ - | $ - | | $ 24,080.00 | $ - |
| | *Bankruptcy Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority, as fiscal agent for PREPA* | | | | | | | | |
| 7-a | **Greenberg Traurig, LLP [Dkt. No. 2112]** | 7/2/2017 - 9/30/2017 | $ 2,037,466.72 | $ 59,410.11 | $ 23,832.82 | $ 12,571.62 | yes | $ 1,978,056.61 | $ 11,261.20 |
| | *Bankruptcy Counsel to PREPA* | | | | | | | | |
| 7-b | **Greenberg Traurig, LLP [Dkt. No. 2111]** | 7/2/2017 - 9/30/2017 | $ 1,356,635.10 | | $ 57,025.81 | | yes | $ 1,356,635.10 | $ 57,025.81 |
| | *COFINA Agent* | | | | | | | | |
| 8 | **Bettina M. Whyte [Dkt. No. 2097]** | 8/3/2017 - 9/30/2017 | $ 264,460.00 | $ 15,273.50 FN3 | $ 21,392.86 | $ 4,615.70 FN4 | - | $ 249,186.50 | $ 16,777.16 |
| | *Special Municipal Bankruptcy Counsel to COFINA Agent* | | | | | | | | |
| 9 | **Klee, Tuchin, Bogdanoff & Stern LLP [Dkt. No. 2099]** | 7/31/2017 - 9/30/2017 | $ 592,705.00 | $ 40,509.85 FN5 | $ 11,133.88 | $ 935.22 | - | $ 552,195.15 | $ 10,198.66 |
| | *Puerto Rico Counsel to COFINA Agent* | | | | | | | | |
| 10 | **Nilda M. Navarro-Cabrer [Dkt. No. 2038]** | 8/16/2017 - 9/30/2017 | $ 35,962.50 | $ - | $ 431.50 | $ - | - | $ 35,962.50 | $ 431.50 |
| | *Bankruptcy Counsel to COFINA Agent* | | | | | | | | |
| 11 | **Willkie Farr & Gallagher LLP [Dkt. No. 2031]** | 8/3/2017 - 9/30/2017 | $ 4,661,711.75 | $ 239,719.34 FN6 | $ 158,974.01 | $ 75,026.77 FN7,8 | yes | $ 4,421,992.41 | $ 83,947.24 |
| | *Bankruptcy Counsel to the Official Committee of Unsecured Creditors* | | | | | | | | |
| 12 | **Paul Hastings LLP [Dkt. No. 2040]** | 6/26/2017 - 9/30/2017 | $ 9,345,478.50 | $ 80,766.01 FN9 | $ 133,270.22 | $ 21,926.16 | yes | $ 9,264,712.49 | $ 111,344.06 |
| | *Puerto Rico Counsel to the Official Committee of Unsecured Creditors* | | | | | | | | |

In Re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
the Commonwealth of Puerto Rico
PROMESA Title III No. 17 BK 3283-LTS

## First Interim Fee Period Uncontested Fees

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Voluntary Discounts | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| 13 | O'Neill & Gilmore Law Office LLC [Dkt. No. 2070] | 5/3/2017 - 9/30/2017 | $ 43,510.50 | $ 2,445.00 | $ 4,969.54 | $ - | yes | $ 41,065.50 | $ 4,969.54 |
| | *Puerto Rico Counsel to the Official Committee of Unsecured Creditors* | | | | | | | | |
| 14 | Casillas, Santiago & Torres, LLC [Dkt. No. 2079] | 7/21/2017 - 8/31/2017 | $ 169,523.00 | $ (3,917.00) | $ 6,320.62 | $ - | - | $ 173,440.00 | $ 6,320.62 |
| | *Financial Advisor to Official Committee of Unsecured Creditors* | | | | | | | | |
| 15 | Zolfo Cooper, LLC [Dkt. No. 2041] | 6/27/2017 - 9/30/2017 | $ 2,641,266.75 | $ 55,092.08 [FN10] | $ 38,372.69 | $ 2,424.39 | yes | $ 2,586,174.67 | $ 35,948.30 |
| | *Bankruptcy Counsel to the Official Committee of Retired Employees* | | | | | | | | |
| 16 | Jenner & Block LLP [Dkt. No. 2050] | 6/16/2017 - 9/30/2017 | $ 2,051,975.37 | $ 20,979.25 | $ 60,916.21 | $ 430.50 | yes | $ 2,030,996.12 | $ 60,485.71 |
| | *Information Agent for the Official Committee of Retired Employees* | | | | | | | | |
| 17 | Marchand ICS Group [Dkt. No. 2048] | 7/21/2017 - 9/30/2017 | $ 11,946.50 | $ - | $ 497.88 | $ - | | $ 11,946.50 | $ 497.88 |
| | *Actuaries and Consultants to the Official Committee of Retired Employees* | | | | | | | | |
| 18 | Segal Consulting [Dkt. No. 2049] | 6/27/2017 - 9/30/2017 | $ 223,475.00 | $ - | $ 5,305.47 | $ - | | $ 223,475.00 | $ 5,305.47 |
| | *Financial Advisor to the Official Committee of Retired Employees* | | | | | | | | |
| 19 | FTI Consulting, Inc. [Dkt. No. 2051] | 6/27/2017 - 9/30/2017 | $ 660,431.00 | $ 2,185.00 | $ 5,298.34 | $ 225.99 | - | $ 658,246.00 | $ 5,072.35 |
| | *Financial Advisor to the Mediation Team* | | | | | | | | |
| 20 | Phoenix Management Services, LLC [Dkt. No. 2071] | 8/4/2017 - 10/1/2017 | $ 774,101.00 | $ 3,618.75 | $ 28,561.25 | $ 1,258.80 | - | $ 770,482.25 | $ 27,302.45 |
| | *Members of the Official Committee of Retired Employees* | | | | | | | | |
| 21 | Retiree Committee Members [Dkt. No. 2052] | 6/15/2017 - 9/30/2017 | $ - | | $ 1,052.94 | | [FN11] - | $ - | $ 1,052.94 |
| | *Member of the Official Committee of Unsecured Creditors* | | | | | | | | |
| 22 | Drivetrain, LLC [Dkt. No. 2042] | 6/15/2017 - 9/30/2017 | $ - | | $ 3,135.54 | $ - | - | $ - | $ 3,135.54 |
| | *Pension Consultant to FOMB* | | | | | | | | |
| 23 | Pension Trustee Advisors, Inc. [Dkt. No. 2574] | 7/29/2017 - 9/30/2017 | $ 28,901.25 | $ 3,824.63 | $ 4,214.88 | $ 3,496.54 | - | $ 25,076.62 | $ 718.34 |
| | **Sub-Totals** | | **$ 49,441,395.45** | **$ 879,019.23** | **$ 1,334,241.79** | **$ 144,170.55** | | **$ 48,562,376.22** | **$ 1,190,071.24** |

**FN1** - These recommended adjustments do not include $218,152.35 in pre-petition fees on which, as discussed at pages 14 and 15 of the Fee Examiner's report, the Fee Examiner has reserved his rights and seeks guidance from the Court.

**FN2** -These recommended adjustments do not include $18,410.00 in expense subject to further verification.

**FN3** - These recommended adjustments do not include $41,130 in fees incurred prior to the appointment of the COFINA Agent on which, as discussed at pages 14 and 15 of the Fee Examiner's report, the Fee Examiner has reserved his rights and seeks guidance from the Court.

**FN4** - These recommended adjustments do not include $5,102.57 in expenses incurred prior to the appointment of the COFINA Agent on which, as discssed at pages 14 and 15 of the Fee Examiner's report, the Fee Examiner has reserved his rights and seeks guidance from the Court.

**FN5** - These recommended adjustments do not include $66,578.50 in fees incurred prior to the appointment of the COFINA Agent on which, as discussed at pages 14 and 15 of the Fee Examiner's report, the Fee Examiner has reserved his rights and seeks guidance from the Court.

**FN6** - These recommended adjustments do not include $299,854. 20 in fees incurred prior to the appointment of the COFINA Agent on which, as discussed at pages 14 and 15 of the Fee Examiner's report, the Fee Examiner has reserved his rights and seeks guidance from the Court.

**FN7** - These recommended adjustments do not include $11,526.89 in expenses incurred prior to the appointment of the COFINA Agent on which, as discussed at pages 14 and 15 of the Fee Examiner's report, the Fee Examiner has reserved his rights and seeks guidance from the Court.

**FN8** - These recommended adjustments are without prejudice to the professional's rigt to re-submit certain expenses with complete documentation for re-evaluation in a subsequent fee period.

**FN9** - The Fee Examiner recommends that the stipulated fee reductions identified on this Exhibit, other than $13,507.00 for identified billing errors, be included within the agreed overall 20 per cent reduction in total fees sought by Paul Hastings LLP as part of its final fee application.

**FN10** - The Fee Examiner recommends that the stipulated fee reductions identified on this Exhibit, other than $1,496.00 for identified and acknowledged billing errors, be included with the agreed overall 20 per cent reduction in total fees sought by Zolfo Cooper, LLC as part of its final fee application.

**FN11** - Of this amount, $128.59 has been deferred for consideration in connection with the second interim fee period.

Case:17-03283-LTS Doc#:2645-1 Filed:03/01/18 Entered:03/01/18 18:15:45 Desc:
Exhibit A thru G Page 4 of 22

Report - EXHIBIT A

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
the Commonwealth of Puerto Rico, et al., Debtee
PROMESA Title III No. 17 BK 3283-LTS

## First Interim Fee Period Unresolved

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Voluntary Discounts | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval | Hearing Date |
|---|---|---|---|---|---|---|---|---|---|---|
| | *Bankruptcy Counsel to Debtors* | | | | | | | | | |
| 1-a | **Proskauer Rose LLP [Dkt. No. 2068]** | 5/3/2017 - 9/30/2017 | $ 7,075,033.00 | | $ 233,148.09 | | yes | deferred | deferred | 4/25/2018 |
| | *Bankruptcy Counsel to Debtors COFINA* | | | | | | | | | |
| 1-b | **Proskauer Rose LLP [Dkt. No. 2043]** | 5/5/2017 - 9/30/2017 | $ 1,672,746.00 | | $ 16,605.84 | | yes | deferred | deferred | 4/25/2018 |
| | *Bankruptcy Counsel to Debtors ERS* | | | | | | | | | |
| 1-c | **Proskauer Rose LLP [Dkt. No. 2045]** | 5/21/2017 - 9/30/2017 | $ 1,586,156.00 | | $ 24,131.76 | | yes | deferred | deferred | 4/25/2018 |
| | *Bankruptcy Counsel to Debtors PREPA* | | | | | | | | | |
| 1-d | **Proskauer Rose LLP [Dkt. No. 2053]** | 7/2/2017 - 9/30/2017 | $ 1,099,888.00 | | $ 67,275.25 | | yes | deferred | deferred | 4/25/2018 |
| | *Bankruptcy Counsel to Debtors HTA* | | | | | | | | | |
| 1-e | **Proskauer Rose LLP [Dkt. No. 2066]** | 5/21/2017 - 9/30/2017 | $ 4,483,783.00 | | $ 154,512.19 | | yes | deferred | deferred | 4/25/2018 |
| | *Bankruptcy Counsel to Debtors* | | | | | | | | | |
| 2 | **O'Neill & Borges LLC [Dkt. No. 2075]** | 5/3/2017 - 9/30/2017 | $ 289,691.55 | | $ 20,863.50 | | yes | deferred | deferred | 4/25/2018 |
| | *Strategic Consultants to Debtors* | | | | | | | | | |
| 3 | **McKinsey & Company, Inc. [Dkt. No.2073]** | 5/3/2017 - 9/30/2017 | $ 5,120,000.00 | | $ - | | - | deferred | deferred | 4/25/2018 |
| | *Independent Contractor to Debtors* | | | | | | | | | |
| 4 | **Andrew Wolfe [Dkt. No. 2259]** | 8/1/2017 - 9/30/2017 | $ 50,000.00 | | $ 7,526.14 | | - | deferred | deferred | 4/25/2018 |
| | *Financial Advisors to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | | | |
| 5-a | **Ankura Consulting Group, LLC [Dkt. No. 2148]** | 6/1/2017 - 9/30/2017 | $ 1,961,754.00 | | $ 63,804.29 | | - | deferred | deferred | 4/25/2018 |
| | *Financial Advisors to PREPA* | | | | | | | | | |
| 5-b | **Ankura Consulting Group, LLC [Dkt. No. 2142]** | 7/2/2017 - 9/30/2017 | $ 2,260,252.50 | | $ 129,303.57 | | - | deferred | deferred | 4/25/2018 |
| | **Sub-Totals Unresolved** | | $ 25,599,304.05 | $ - | $ 717,170.63 | $ - | | $ - | $ - | |
| | **Sub-Totals Uncontested** | | $ 49,441,395.45 | $ 879,019.23 | $ 1,334,241.79 | $ 144,170.55 | | $ 48,562,376.22 | $ 1,190,071.24 | |
| | **Grand Totals** | | $ 75,040,699.50 | $ 879,019.23 | $ 2,051,412.42 | $ 144,170.55 | | $ 48,562,376.22 | $ 1,190,071.24 | |

# Exhibit B



ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911   FAX • 608.257.0609

WWW.GKLAW.COM

---

### MEMORANDUM

---

| | |
|---|---|
| **TO:** | PROMESA Title III Professionals |
| **FROM:** | Brady Williamson, Fee Examiner |
| **DATE:** | November 10, 2017 |
| **SUBJECT:** | Fee Review—Timeline and Process |

---

On November 8, 2017, the Court entered the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "Interim Compensation Order"), moving the deadline for submitting first interim fee applications to December 15, 2017, except as noted below for professionals based in Puerto Rico.[1]

As you prepare your first interim fee submissions, this introductory memorandum will provide some additional guidance on the fee review process. It's based, in part, on the experience gained in the *Energy Future* proceeding pending in Delaware and the *Lehman Brothers* proceeding in the Southern District of New York, where most of the PROMESA-Title III firms not based in Puerto Rico have practiced. The memorandum is also based on the U.S. Trustee Guidelines and an initial and cursory review of the limited number of monthly fee statements the Fee Examiner has received.

As you know, the Court appointed the Fee Examiner on October 6, 2017, when it entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Dkt. No. 1416] (the "**Fee Examiner Order**"). That Order also anticipated the retention of Godfrey & Kahn, S.C. as counsel and EDGE Legal Strategies, P.S.C., subject to Court approval. *See Application of Fee Examiner to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner Nunc Pro Tunc to October 6, 2017* [Dkt. No 1548].

You'll receive memoranda like this one, periodically, providing updates on the review process and addressing common matters, questions, and concerns that arise. This process is collaborative and, to that end, we are always available for individual discussion. Please do not hesitate to contact us at any time to discuss fee applications or provide feedback as part of a productive and open dialogue with professionals.

---

[1] As noted in the Fee Examiner's filings and the Interim Compensation Order, any professional based in Puerto Rico may file a first interim fee application on or before November 15, 2017, noticed for Court consideration at the December 20, 2017 omnibus hearing.

OFFICES IN MILWAUKEE, MADISON, WAUKESHA, GREEN BAY AND APPLETON, WISCONSIN AND WASHINGTON, D.C.

GODFREY & KAHN, S.C. IS A MEMBER OF TERRALEX,® A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

This memorandum provides basic information about the initial timing of the fee examination process, the budget requirement, and instructions and suggestions on the process for submitting fee applications for review, including the substantive standards that apply.  The goal is a constructive and collaborative process that, recognizing and reserving everyone's rights, makes it less onerous for the Court to review and approve professional fee applications efficiently and promptly.  As of today, no professional has submitted an interim fee application, though we have received Monthly Fee Statements and data from some firms.

*Schedule*

Pursuant to the Interim Compensation Order, the schedule for the Fee Examiner's process is outlined below:

| Fee Period | First Interim May 3, 2017 – September 30, 2017 | Second Interim October 1, 2017 – January 31, 2018 | Third Interim February 1, 2018 – May 31, 2018 | Fourth Interim June 1, 2018 – September 30, 2018 |
|---|---|---|---|---|
| End of Interim Compensation Period | September 30, 2017 | January 31, 2018 | May 31, 2018 | September 30, 2018 |
| Interim Fee Applications Due | December 15, 2017 | March 19, 2018 | July 16, 2018 | November 16, 2018 |
| Initial Letter Report to Retained Professionals | February 15, 2018 | May 18, 2018 | September 14, 2018 | January 14, 2019 |
| Final (Summary) Report Filed | February 28, 2018 (or 7 days prior to scheduled hearing date) | May 30, 2018 (or 7 days prior to scheduled hearing date) | 7 days prior to scheduled hearing date | 7 days prior to scheduled hearing date |
| Estimated Hearing Date | March 7, 2018 (Omnibus Hearing) or an earlier date as ordered by the Court | June 6, 2018 (Omnibus Hearing) or an earlier date as ordered by the Court | Mid-October | Mid-February |

*Budgets*

Retained Professionals should provide a non-binding, confidential budget for each month beginning with January 2018.  Please submit budgets no later than the 15th of the month prior to the budgeted month.  Budgets should be e-mailed directly to the Fee Examiner, counsel, and the U.S. Trustee.  These budgets—which are prospective—are advisory only.  Budgets should be substantially in the format of Attachment A, setting forth an estimate of the projected fees and expenses for each month, a general description of the categories of anticipated services, and an

explanation for any significant increase over the previous month's fees. These are budgets—not caps, not minimums, not maximums—submitted and reviewed in good faith.

### Fee Review Criteria

The Fee Examiner Order provides, among other things, that the Fee Examiner shall determine whether requested fees and expenses comply with:

1. PROMESA sections 316 and 317;
2. Rule 2016-2 of the Federal Rules of Bankruptcy Procedure;
3. The Local Bankruptcy Rules;
4. The Interim Compensation Order [and First Amended Interim Compensation Order]; and
5. The *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines").

### Initial Points

The Guidelines that follow are just that, guidelines and not rigid rules. On the face of the guidelines or as applied in the reports that you will receive, the process invites dialogue. Particularly in light of the hurricane, the approach to fee submission and review that has proven practical and effective elsewhere may well require adaptation. Just appointed on October 6, 2017, the Fee Examiner is well aware that a significant amount of professionals' work will have occurred prior to this memorandum. While these parameters are generally consistent with the requirements of PROMESA and the U.S. Trustee Guidelines, and accordingly considered standard bankruptcy billing practice, in some instances strict compliance may not be possible. Please try to conform your fee and expense requests to the guidelines below, keeping in mind that significant deviations from the requested formats may result in a delay in processing the application.

A number of firms have submitted monthly applications pursuant to the Interim Compensation Order. With some exceptions, it will not be our practice to object to monthly statements, in whole or in part. Yet an initial assessment of the monthly statements suggests prospective problems—for example, with vague and incomplete descriptions of the services provided (e.g., "analyze bankruptcy issues" and "miscellaneous emails" or "attention to…") or non-compensable administrative work. On expenses, it is already clear that transportation and meal charges will raise questions. One of the reasons we've asked to defer the due date for the initial interim compensation applications is to provide everyone with the opportunity to conform their billing practices to the standards.

Many firms increase rates at the beginning of the calendar year and, in addition, during the calendar year—whether characterized as "step increases" for associates or as "general" or "across the board rate increases." Rate increases, no less than the basic hourly rate itself, whether or not discounted for the circumstances here, are subject to the reasonableness standard. While the market rate for professional services in a difficult and complex case like this is always

a factor in setting and reviewing rates, it is not the only factor.  That is especially true in the extraordinary environment—legal and practical—of these proceedings.  The length of these proceedings cannot be predicted or projected, at least at this point, but rate increases proposed by firms here should be given careful consideration by the professionals before they are submitted as part of the monthly or interim fee process.

**GUIDELINES**

*Contents of Interim and Final Fee Applications*

Based upon the criteria outlined in the Fee Examiner Order and on the Fee Examiner's experience, each interim fee application should disclose:

1. Whether the applicant is seeking compensation under PROMESA sections 316 and 317 or another authority;

2. A summary of the terms and conditions of the Retained Professional's employment and compensation, including a statement consistent with Bankruptcy Rule 2016 and, for the first application, a copy of the engagement letter;

3. Identification of all professionals who billed time during the relevant period, including each professional's billing rates and year of bar admission;

4. A list of all rate increases of any kind—including rate increases due to increasing seniority—by timekeeper and amount, proposed by the Retained Professional since it began working on these cases;

5. A statement that the Retained Professional's client has (or has not) explicitly consented to all rate increases;

6. The precise time period covered by the application;

7. Time and service entries in the appropriate electronic format, discussed below, identifying participants, activities, and subject matters, arranged by specific project categories, including brief narrative summaries of each project and its benefit to the estate (non-working travel time should be a specific project category);[2]

8. Time entries, in tenths of an hour, without "lumping" services together unless the aggregate amount of time spent for those lumped services does not exceed 0.5 hours;

9. Explanations of tasks involving multiple individuals and the contributions of each individual; and

---

[2] Electronic data should mirror precisely the amounts sought in the interim or final fee application. If write-offs or other adjustments are made to the timekeeping, in the exercise of billing judgment, the electronic data will need to reflect those adjustments. Data submitted on time, complete and consistent with the amounts requested in the application, are all essential to the schedule outlined above.

10.     A detailed itemization of actual, necessary expenses.

***Means of Service Upon the Fee Examiner***

Interim Fee Applications, supporting data, and budgets should be provided in the appropriate electronic format (described below) by e-mail to adalton@gklaw.com, kstadler@gklaw.com, and bwilliam@gklaw.com.  In addition, please provide supporting data to the Office of the U.S. Trustee by e-mail to Guy.Gebhardt@usdoj.gov.  To minimize expense, please **do not** serve hard copies of fee applications and supporting materials.  Expenses for duplicating or mailing fee application materials will be recommended for disallowance.

***Electronic Data Format for Billing and Expense Detail***

All fee and expense detail should be submitted only in electronic format.  *YOU NEED NOT PROVIDE PAPER COPIES OF BILLS OR INVOICES.*

1.     For law firms:  simultaneously with the submission of any interim or final fee application, please provide electronic versions of any billing information in unedited LEDES™ (Legal Electronic Data Exchange Standard) file format.

2.     For non-law firms:  simultaneously with the submission of any interim or final fee application, Retained Professionals other than law firms should provide electronic versions of any billing information in Excel format using the fields and formats outlined on the attached *Required Format for the Submission of Fee Requests by Professionals Other Than Law Firms*.

3.     In the event that any documentation accompanying an Interim Fee Application contains internal codes, which could assist in evaluating the Interim Fee Application (such as codes for fee, project or expense categories), the professional should submit an explanation of how the codes relate to any fee, project or expense categories.

4.     When submitting a summary or cover sheet of all individuals who billed time in the Interim Fee Application, the summary should list the individuals alphabetically by last name within their particular category (e.g., all partners should be listed alphabetically).

***Expenses***

The parameters set forth here are not hard and fast rules, and the Fee Examiner will consider atypical reimbursement requests that are actual and necessary, especially in light of the hurricane and its aftermath.  With that in mind, the review and analysis generally will follow these principles:

*Overhead and Administrative Charges*

- In general, overhead and administrative expenses are not reimbursable, nor are infrastructure improvements, rent, utilities, office equipment, furnishings, insurance, custodial fees, internal storage fees, and property taxes.

- Internal photocopying and printing are reimbursable at 10 cents per page for black and white and, where color copies are necessary, 50 cents per page.  Please provide vendor invoices for outside photocopying projects.  The initial monthly statements already reflect excessive copying charges.

- Charges for internal printing, converting documents to electronic formats, scanning charges, and charges to convert and upload documents are not reimbursable.

- Word processing, proofreading, secretarial and other support expenses are not reimbursable, nor overtime charges.

- Telephone charges—including cellular phone fees and subscriptions, text fees, data fees, and roaming charges, other than actual charges for multi-party calls incurred by counsel in connection with the cases—are not reimbursable.

- Subscription, publication, or library charges are not reimbursable, nor office supplies.

*Travel Expenses*

- Neither the time nor travel expenses associated with traveling to other offices within a professional's own firm are reimbursable—except for travel to attend hearings, client or third party meetings, or to prepare for them.  Meetings should be conducted telephonically or by video conference wherever possible.

- Clothing, dry-cleaning, accessories, and travel sundries are not reimbursable.

- Local travel expenses (train, bus, subway, mileage, car service, taxi) to or from a professional's home are not reimbursable unless a professional *has worked at least four hours on these cases on the day for which the expense is sought* and works after 9:00 p.m. local time *on these cases*.

- For travel to or from airports, the maximum allowable amounts are outlined below. In each instance, they represent charges from a city center to an appropriate airport:

| San Juan | $75.00 |
| New York | $100.00 |
| Chicago | $ 75.00 |
| San Francisco | $100.00 |
| Los Angeles | $100.00 |
| Other Cities | $ 75.00 |

- While professionals are free to travel in any manner they wish, the Fee Examiner will not recommend reimbursement for first class travel.  Please provide receipts for any travel expense exceeding $300.00.

- Tips or other service charges are reimbursable only if part of another itemized expense (for example, taxi or car service gratuity included on the receipt).  Documented wait staff tips are reimbursable up to the applicable expense caps outlined below.  Housekeeping, valet, concierge, and bell services tips are not reimbursable.

- Hotel expenses should be limited to reasonable market rates for the locale, but will not be reimbursed above $500.00 for New York City and Washington, D.C., $350.00 for all other continental locations, and $300.00 for Puerto Rico.  Taxes, service fees, and other charges are *included* in the reimbursement caps.  Health or athletic facilities, in-room movies, or other entertainment charges are not reimbursable.  In addition, in-room dining or other hotel food and beverage charges are subject to the meal guidelines in this memorandum.

*Meals*

- In-office meals are capped at $20.00 per person per meal and are reimbursable if:

  o The professional attends a necessary lunch-hour business meeting; or

  o The professional works *on these cases* after 8:00 p.m. and has worked more than four hours *on these cases* during the billing day for which meal reimbursement is sought.

- Coffee and snack charges are not reimbursable unless charged *in lieu of* in office meals allowable under the above-stated guideline.

- All catering orders must be supported by receipts or invoices.  Catering invoices (internal and external) must indicate both the number of persons actually attending a business meeting and the amount charged per person.

- Out-of-office meals are capped at $40.00 per person per meal, reimbursable only if the professional has travelled to prepare for or attend a hearing, client or third party meeting, or other event.  If a professional's attendance at a hearing, meeting, or other event is unnecessary, the Fee Examiner will recommend both the professional's fees and associated travel and meal expenses for disallowance.

- Regardless of the number of attendees, please provide receipts for any single meal costing more than $200.00 in the aggregate.

- Alcohol is never reimbursable.

Note that the meal reimbursement cap is *not* a per diem.  Applicants may be reimbursed for either the actual cost of the meal, or the reimbursement cap, whichever is less.

### *Other Expenses*

- Contract attorneys are reimbursable at their actual cost (that is, the rate charged by the agency or other provider placing the attorneys) without markup.  Professionals should submit detailed billing statements for all contract attorneys, who are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness as any other professional.

- In general, Retained Professionals should not submit reimbursement requests for any other firm's professional (legal, financial advisory, investment banking, or accounting) services.  If retention terms allow for sub-retentions, contract professionals must nonetheless submit detailed billing statements.  All professional fees are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness.

- Charges for electronic research services (Westlaw, Lexis-Nexis) should be accompanied by a general description of the research performed.  Please include invoices for research expenses with your submission.

- Expenses related to seeking committee or other representation (pitching) are not reimbursable, nor is client entertainment.

- Expenses incurred prior to the Retained Professional's *nunc pro tunc* retention date are not reimbursable unless otherwise permitted by the Court's order authorizing the Retained Professional's employment.

- Please provide receipts for all unusual or extraordinary expenses.

Please note that this list is not meant to be exhaustive, nor does it preclude individual explanations for unusual items—any of which may meet the section 316 and 317 standards or those suggested by the U.S. Trustee Guidelines and local rules.  These general statements reflect the Fee Examiner's starting point for expense review, not its conclusion.

### *Fee Examiner Analysis of Billing Detail*

The Fee Examiner's review is both quantitative and qualitative, including, at a minimum and without limitation, examining:

The hourly rates charged:

- Ensure that billing rates for each professional are the rates approved in the applicable engagement agreement, retention order, or supplement;

- Evaluate reasonableness of rates and the time spent in relation to the nature and character of the work and each professional's role and experience;

- Calculate blended rates;

- Evaluate multiple rates billed to particular projects; and,

- Eliminate charges for work performed by law students, clerks, or summer associates.

Hours billed:

- Evaluate hours billed against any limitations in the engagement agreement or retention order;

- Analyze average billable hours each day and identify extended periods of above average billing days;

- Calculate fees or billable hours for preparation of firm retention documents and fee applications as a percentage of total fees and hours—time spent preparing and editing time records is never compensable, nor is time spent preparing monthly fee statements (which should be minimal);

- Evaluate legal research to determine whether it is being conducted appropriately and at the lowest appropriate rate;

- Review clerical and administrative tasks to determine either the propriety of the billing rate for the task or whether the task is non-compensable;

- Ensure that time is billed in one-tenth of an hour increments unless a retention order permits another time increment;

- Identify vague task descriptions that do not permit a reviewer to determine the task's necessity;

- Identify improperly "lumped" or "block billed time";

- Ensure the use of properly segregated matter numbers for project categories, generally consistent with the following:

  o Debtor financing and cash collateral

  o Communications with creditors/debtors

- o  Asset sales

- o  Asset analysis and valuation

- o  Due diligence-analysis of loan and other security documents

- o  Lift stay or adequate protection matters

- o  Assumption and rejection of leases or executory contracts

- o  Avoidance actions (significant avoidance actions should have their own matter identifier)

- o  Budgeting

- o  Business operations

- o  Case administration

- o  Claims and claims objections

- o  Governance matters

- o  Retention applications and disclosures-self

- o  Retention applications and disclosures-others

- o  Fee applications-self

- o  Fee applications-others

- o  Litigation (each litigation matter should have its own matter identifier)

- o  Non-working travel

- o  Plan and disclosure statement

- o  Tax issues (individual governmental entity audits should have their own matter identifiers)

- Identify meetings, hearings, or other events attended by an excessive number of timekeepers given the nature of the hearing or meeting and the necessity of multiple attendees;

- Ensure that non-working travel is billed only at 50 percent of the timekeeper's standard hourly rate;

- Identify all calculation or billing errors;

- Identify instances of duplication or overlap in work performed by multiple Retained Professionals;

- Ensure that tasks are appropriately delegated to the professional with the lowest suitable billing rate for the task performed;

- Evaluate time spent monitoring or overseeing others' work without substantial contribution to work product; and

- Waiting time or "standby time" is not reimbursable.

### *Fee Examiner Contacts*

We look forward to working you and trust that this memorandum will begin an open and productive dialogue with professionals subject to the Fee Examiner Order.  The Fee Examiner and counsel can be reached using the contact information below.  Please do not hesitate to contact the Fee Examiner's counsel if you have comments, questions or concerns about the fee review process.

Attorney:  Katherine Stadler
kstadler@gklaw.com

Data Specialist/Attorney:  W. Andrew Dalton
adalton@gklaw.com

Paralegal:  Kathleen Boucher
kboucher@gklaw.com

**Fee Examiner**

Brady C. Williamson
bwilliamson@gklaw.com
Office: (608) 284-2636 (direct)
Office: (608) 257-3199 (main)
Cell: (414) 510-9049

Godfrey & Kahn, S.C.
1 East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: (608) 257-3911

17979371.2

# Exhibit C

**GODFREY✦KAHN**S.C.

ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911   FAX • 608.257.0609

WWW • GKLAW.COM

## MEMORANDUM

**TO:**  PROMESA Title III Professionals

**FROM:** Brady Williamson, Fee Examiner

**DATE:** January 3, 2018

**SUBJECT:** Status Report / Fee Review Process

---

Coupled with the November 10, 2017 initial memorandum we sent, this summary provides preliminary observations on the first interim fee applications and a reminder of basic practices for subsequent interim fee applications.

On or around December 15, 2017, 25 professional firms filed fee and expense applications pursuant to the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "Interim Compensation Order"). They reflect the work of more than 735 individual timekeepers, including two firms reporting more than 125 timekeepers each. Four firms account for more than three-fourths of the total fees requested.

We're now reviewing the applications, and we anticipate submitting initial letter reports to each professional by February 15, 2018. The report should start a dialogue with each firm, leading to a hearing at the March 7, 2018 omnibus on those applications for which there are no objections or pending Fee Examiner concerns. In this regard, we note that the Court approved the one consensual fee and expense application already submitted without the need for a hearing.

Notwithstanding the unique features of PROMESA and the unique circumstances in the Commonwealth, the guiding principle for fee and expense applications is still whether the fees and expenses are reasonable and necessary to the administration of the estates. Some firms now involved in these proceedings have little or no experience with the Chapter 11 process. Some firms were directly affected by the hurricane. Those factors cannot be ignored. However, our initial review of the applications leads to a series of observations that may lead to requests for further information and, ultimately, to suggested adjustments to fees and expenses. These observations include:

- The number of professionals from a single firm attending hearings and related proceedings is sometimes starkly excessive. *See, e.g.*, *In re Fleming Companies*, 304 B.R. 85 (Bkr. D. Del. 2003) (asking whether "each attorney present contributed to the hearing in a meaningful way"). While there may be justification on occasion for more than a few professionals from a single firm attending the same hearing, those

occasions should be uncommon. Of course a firm is free to send as many partners, associates and staff to a hearing as they like, but they should not expect the Fee Examiner to recommend estate compensation for multiple attendees absent a compelling showing of each timekeeper's contributory role.

- The Fee Examiner generally will not recommend that the estates pay for more than a few professionals to review the docket each day, and the substantive review of other parties' filings should be related directly to a professional's work on the cases. Fees and expenses merely to "follow along" with the case, in short, will not be recommended for estate payment without a showing of the need for monitoring.

- Many fee applications lack specific descriptions of the services provided. Generally, "attention to" or "read" followed by a general term do not provide enough detail to recommend estate compensation. Actual examples:

> ATTEND TO ISSUES RE: DOCUMENT REVIEW.
> ADDRESS ISSUES REGARDING DOCUMENT REVIEW.
> ADDRESS ISSUES RE: DOCUMENT REVIEW.
> ADDRESS ISSUES REGARDING DOCUMENT REVIEW.

These descriptions do not provide any meaningful detail about the work performed. In addition, reading these time entries, a reviewer would likely conclude that this timekeeper did not actually review documents. Neither the application nor the task descriptions provide sufficient information to conclude this work was reasonable and necessary.

- The review process does not anticipate permitting professionals to correct or restate time entries once submitted because after-the-fact revisions are not contemporaneous records of work performed. As a general approach, the Fee Examiner will recommend a percentage reduction for the pervasive use of vague task descriptions. Further, time spent recording tasks in the first instance or revising time entry prior to the submission of a fee statement or application will not be recommended for estate payment.

- Given the number of professionals involved and the ease with which most can be served electronically, the Fee Examiner strongly encourages professionals to waive service of process of paper documents whenever possible.

- The number of intra-office conferences seems excessive in more than a few applications. Professionals should take care that their task descriptions provide context for office conferences so that their necessity can be easily determined. Time spent briefing other timekeepers on events or discussing case matters generally will not often be recommended for compensation. Professionals should expect estate payment for "conferencing with" their colleagues when collaborative work on a specific project or task is required and when all conferencing timekeepers are contributing meaningfully to the work product.

- When recording time for non-working travel, the task description should include the destination as well as the reason for travel. The first interim applications include many entries with no description other than "Non-working travel."

- Fees or expenses billed by summer associates will be recommended for disallowance.

- Cell phone charges, per diem meal charges, and alcohol are never reimbursable.

- Pre-retention fees or expenses will be recommended for disallowance.

- Timekeepers must bill in tenths-of-an-hour increments. Timekeepers from one firm appear to have billed in quarter-hour increments and later rounded the hours to the nearest tenth. This is not an acceptable timekeeping practice in Chapter 11 cases and will be presumed improper under Title III as well.

Just before the holidays, the lead mediator here, Judge Barbara Houser, though in a completely unrelated matter, pointedly addressed a number of these issues. In *In Re Frazin*, she discussed overstaffing, vagueness, and multiple professionals attending hearings. In each instance, the court reduced the professional fees sought by significant amounts as neither reasonable nor necessary. *Frazin v. Haynes and Boone, LLP* (*In re Frazin*), No. 08-3021, slip op. at 60-64, 74-75 (Bankr. N.D. Tex. Dec. 22, 2017).

Eleven professional firms filed first interim fee applications but have yet to provide supporting electronic data. Any delay in providing the data may result in the fee application not being recommended for approval at the anticipated March hearing. Law firms should provide supporting data in LEDES format. (We have worked with some law firms to develop alternate formats for the first interim period, but LEDES is necessary for the second and subsequent periods). Further, the LEDES data should include either the name or number of each matter/project category. Non-law firm professionals should provide Excel fee and expense data in substantial compliance with the fields and formats in the attached *Required Format for the Submission of Fee Requests by Professionals Other Than Law Firms*.

Regardless of the data format, electronic data should include (or account for) any voluntary fee or expense reductions so the total fees and total expenses in the data match the figures requested in the fee application. In addition, individual travel charges should be segregated into separate line items. For example, airfare, lodging, meals, and taxi from a single trip should not be billed as a single charge but, instead, by category.

The purpose of this catalogue of concerns is not to pre-judge the applications but, rather, to suggest that each firm review its application before receiving its letter report in mid-February and anticipate discussion on some of the issues identified above. As always, we remain available to discuss fee-related matters and to hear any questions, comments, suggestions, or concerns about the process.

18252811.2

**Required Format for the Submission of Fee Requests by Professionals Other Than Law Firms**

Note: The fields below are the minimum required; additional data fields may be provided.

## FEES

| FIELD: | INVOICE NUMBER | MATTER NAME | DATE | TIMEKEEPER NAME | POSITION/TITLE | HOURLY RATE | HOURS | FEES | TASK DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|
| FORMAT: | any | any | YYYYMMDD | Last, First | text | currency | number | currency | text |
| | | | | | | | | | |
| EXAMPLES: | GK012537-001 | DIP Financing | 20170521 | Jordan, Michael J. | Analyst | $325 | 0.6 | $195.00 | Revise Exchange Analysis calculations in EFIH DIP budget. |
| | GK012539-107 | Court Attendance | 20170709 | Embry, Elizabeth | Managing Director | $850 | 2.3 | $1,955.00 | Attend make whole litigation hearing. |

## EXPENSES

| FIELD: | INVOICE NUMBER | MATTER NAME | DATE | NAME OF TIMEKEEPER WHO INCURRED EXPENSE | EXPENSE CATEGORY | UNIT COST | # OF UNITS | TOTAL | EXPENSE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|
| FORMAT: | any | any | YYYYMMDD | Last, First | text | currency | number | currency | text |
| | | | | | | | | | |
| EXAMPLES: | GK012537-001 | Corporate Governance | 20170527 | Smith, John | Photocopies | $0.10 | 128 | $12.80 | Photocopies: 128 pages. |
| | GK012539-107 | Hearings | 20170719 | Jones, Samantha | Airfare | | | $489.23 | Airfare (Coach): Roundtrip Dallas/Wilmington to attend 7/19/14 hearing |