# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 2586, 2587, 2589** |

## OMNIBUS REPLY OF THE PBA FUNDS IN SUPPORT OF THE MOTION FOR PAYMENT OF RENT

---

[1] The Debtors in these title III cases, along with the last four digits of each Debtor's federal tax identification number, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (No. 17-BK-3283-LTS) (3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (No. 17-BK-3566-LTS) (9686); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (No. 17-BK-3567-LTS) (3808); (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (No. 17-BK-3284-LTS) (8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (No. 17-BK-4780-LTS) (3747).

ny-1316517

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................... 1

REPLY ........................................................................................................................ 3

I.     PBA BONDHOLDERS HAVE STANDING TO ENFORCE PBA LEASES ................. 3

     A.     The PBA Funds are Third-Party Beneficiaries Under Commonwealth Law ......... 4
     B.     The PBA Funds are Parties in Interest in these Title III Cases............................ 5
     C.     The PBA Funds have Standing to Pursue the Relief Requested........................... 7

II.     THE OBJECTORS' REMAINING ARGUMENTS ARE EXTRANEOUS AND
IRRELEVANT ........................................................................................................ 9

     A.     The Objectors' Recharacterization Arguments are Without Merit...................... 10
     B.     The Committee's "Debt Limit" Theory is Unfounded ......................................... 13

RESERVATION OF RIGHTS ...................................................................................... 14

CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amatex Corp.*,
755 F.2d 1034 (3d Cir. 1985)........................................................................6

*Ambac Assurance Corp. v. Commonwealth of Puerto Rico (In re Commonwealth of
Puerto Rico)*,
Adv. Proc. No. 17-159-LTS, ECF No. 156 (D.P.R. Feb. 27, 2018) ........................7

*Banco Central Corp. v. Yauco Homes, Inc.*,
135 D.P.R. 858 (1994)...............................................................................5

*Brankle Brokerage and Leasing v. Volvo Financial Services (In re Brankle
Brokerage and Leasing, Inc.)*,
394 B.R. 906 (Bankr. N.D. Ind. 2008).........................................................11

*In re C.P. Hall Co.*,
750 F.3d 659 (7th Cir. 2014) .......................................................................6

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) ...............................................13, 14

*City of San Francisco Market Corp. v. Walsh (In re Moreggia & Sons, Inc.)*,
852 F.2d 1179 (9th Cir. 1988) ...................................................................12

*CPA Group International Inc. v. American International Insurance Co. of Puerto
Rico*,
No. 01-1483 (JP), 2002 WL 31944044 (D.P.R. May 23, 2002)..............................8

*Cruz Berrios v. A.C.G.M.E.*,
218 F. Supp. 2d 140 (D.P.R. 2002)................................................................5

*Culhane v. Aurora Loan Services of Nebraska*,
708 F.3d 282 (1st Cir. 2013)........................................................................8

*In re Elder-Beerman Stores Corp.*,
201 B.R. 759 (Bankr. S.D. Ohio 1996).........................................................11

*In re Esmizadeh*,
272 B.R. 377 (Bankr. E.D.N.Y. 2002)...........................................................9

*Matter of Holly's, Inc.*,
140 B.R. 643 (Bankr. W.D. Mich. 1992)........................................................9

*International Trade Administration v. R.P.I.*,
    936 F.2d 744 (2d Cir. 1991)................................................................12

*In re Integrated Health Services, Inc.*,
    260 B.R. 71 (Bankr. D. Del. 2001) .......................................................9

*In re Irwin Yacht Sales, Inc.*,
    164 B.R. 678 (Bankr. M.D. Fla. 1994) .................................................8

*Matter of James Wilson Associates*,
    965 F.2d 160 (7th Cir. 1992) ...............................................................8

*Jepsen v. Bank of New York Mellon (In re Jepsen)*,
    816 F.3d 942 (7th Cir. 2016) ...............................................................8

*Matter of Lansing Clarion Limited Partnership*,
    132 B.R. 845 (Bankr. W.D. Mich. 1991)..............................................9

*LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*,
    196 F.3d 1 (1st Cir. 1999) ....................................................................6

*Lex Claims, LLC v. Padilla*,
    Case No. 16-02374 (FAB), ECF No. 219 (D.P.R. Mar. 18, 2017)........13

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    134 S.Ct. 1377 (2014) ..........................................................................7

*Liona Corp., N.V. v. PCH Assocs. (In re PCH Assocs.)*,
    804 F.2d 193 (2d Cir. 1986)................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................7

*M.R. (Vega Alta), Inc. v. Caribe General Electric Products, Inc.*,
    31 F. Supp. 2d 226 (D.P.R. 1998) ........................................................8

*In re Mirant Corp.*,
    No. 03-46590, 2004 WL 5643668 (Bankr. N.D. Tex. Sept. 15, 2004)......10, 11, 13

*Nintendo Co. v. Patten (In re Alpex Comput. Corp.)*,
    71 F.3d 353 (10th Cir. 1995) ...............................................................6

*In re Pittsburgh Sports Associates Holding Co.*,
    239 B.R. 75 (Bankr. W.D. Pa. 1999) ..................................................12

*Rajamin v. Deutsche Bank National Trust Co.*,
    757 F.3d 79 (2d Cir. 2014)...................................................................8

ny-1316517

*Raleigh v. Illinois Department of Revenue,*
    530 U.S. 15 (2000)................................................................................................9

*In re Refco Inc.,*
    505 F.3d 109 (2d Cir. 2007).................................................................................7

*In re Riverside Nursing Home,*
    43 B.R. 682 (Bankr. S.D.N.Y. 1984)...................................................................9

*Savage & Associates v. K&L Gates LLP (In re Teligent, Inc.),*
    640 F.3d 53 (2d Cir. 2011)..................................................................................6

*Schachter v. Lefrak (In re Lefrak),*
    223 B.R. 431 (Bankr. S.D.N.Y. 1998)...............................................................12

*Security Service FCU v. First American Mortgage Funding, LLC,*
    771 F.3d 1242 (10th Cir. 2014) ..........................................................................8

*Southern Boulevard, Inc. v. Martin Paint Stores (In re Martin Paint Stores),*
    207 B.R. 57 (S.D.N.Y. 1997)..............................................................................8

*In re Three A's Holdings, LLC,*
    364 B.R. 550 (Bankr. D. Del. 2007) ...................................................................9

*United Airlines, Inc. v. HSBC Bank USA, N.A. (In re United Airlines, Inc.),*
    416 F.3d 609 (7th Cir. 2005) .............................................................................10

**Statutes**

11 U.S.C. § 365............................................................................................... *passim*

11 U.S.C. § 1109(b) ...............................................................................................6

22 L.P.R.A. § 901, *et seq.* ....................................................................................14

31 L.P.R.A. § 3374 .................................................................................................5

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 365.02 (16th ed. 2017) .................................10

130 Cong. Rec. S8891 (Jun. 29, 1984), *reprinted in* 1984 U.S.C.C.A.N. 576
    (statement of Sen. Hatch)....................................................................................8

Autoridad de Edificios Públicos, *Featured Videos, available at*
    https://goo.gl/UGehk5.......................................................................................14

Bankruptcy Rule 7001 ..........................................................................................10

-iv-

Explanatory Memorandum Regarding 2017-2018 Budgetary Recommendations
(Jun. 15, 2017), *available (in Spanish only) at*
http://www2.pr.gov/ogp/Bvirtual/memExpPres/PDF/Agencias/AEP-18.pdf ........................14

Gloria Ruiz Kuilan, *Edificios Públicos comienza la operación para remozar las
escuelas*, EL NUEVO DÍA (Jun. 17, 2017), *available (in Spanish only) at*
https://www.elnuevodia.com/noticias/locales/nota/edificiospublicoscomienzal
aoperacionpararemozarlasescuelas-2332034/ ..........................................................................14

Puerto Rico Public Buildings Authority, *Investor Resources*, *available at*
http://www.gdbpr.com/investors_resources/pr_public_building.html ....................................14

Puerto Rico Public Buildings Authority, *Resolution No. 1280* (Dec. 6, 2007), § 11,
*available at*
http://www.gdb-pur.com/investors_resources/documents/PBAResolution1280
Dec62007-SeriesMNO.pdf ..................................................................................................11

Public Buildings Authority, *Basic Financial Statements for Fiscal Years Ended
June 30, 2014 and 2013 and Independent Auditors' Report*, *available at*
http://www.gdb-pur.com/investors_resources/documents/PBABasicFS-6-30-2
014.pdf ................................................................................................................................11

ny-1316517

The PBA Funds[2] hereby submit this omnibus reply (the "Reply") to the responses filed by the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") [ECF No. 2586], the Federal Oversight and Management Board for Puerto Rico (the "Oversight Board") [ECF No. 2587], and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") [ECF No. 2589] (collectively, the "Objections," and the objecting parties, collectively, the "Objectors") to the *Motion of the PBA Funds for the Payment of Rent* [ECF No. 2492] (the "Motion").[3]  In support of this Reply, the PBA Funds respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The PBA Funds hold bonds across multiple series issued by the PBA, a non-debtor entity originally formed in the 1950s by the Commonwealth to own, manage, and lease real properties (government buildings such as court houses, schools, and police stations) that enable the Commonwealth to serve the residents of Puerto Rico and carry out essential governmental functions.  The PBA is the Commonwealth's counterpart to the General Services Administration (the "GSA"), a property-owning instrumentality of the United States federal government that depends on collecting a stream of rental payments from government tenants.  Remarkably, the PBA has not been performing that most basic function.

2.      Tenants of federal buildings like the courthouse where the Motion will be argued necessarily are obligated to pay rent to the GSA.  So too must the PBA's tenants.  However, that routine obligation of use and occupancy is currently being disregarded.  The Debtors are using the PBA's buildings in exchange for inadequate payments bearing no relationship to the amounts

---

[2] The PBA Funds currently consist of (a) Fir Tree Partners, (b) Candlewood Investment Group, and (c) Inglesea Capital LLC, each of which holds PBA Bonds (defined herein) or acts as investment manager or advisor (or is an affiliate of entities which act as investment managers or advisors) to funds and/or accounts that hold PBA Bonds. *See Supplemental Verified Statement of the PBA Funds Pursuant to Federal Rule of Bankruptcy Procedure 2019* [ECF No. 2522].

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Objections, as applicable.

ny-1316517

specified in the governing leases, contrary to the mandate of Bankruptcy Code section 365(d)(3). Further compounding the issue is a lack of transparency with respect to those minimal amounts that are being paid to the PBA.  It has been over a month since the PBA Funds contacted the PBA by letter to request a basic accounting of rental payments received since the commencement of these Title III Cases.  The PBA has yet to respond.[4]

3.      This ongoing default of the Debtors in failing to pay rent and the corresponding (and seemingly complicit) acquiescence of the PBA in choosing not to enforce that payment obligation is what motivates the Motion brought by stakeholders with claims against the Debtors and the PBA.   The PBA Funds are protesting what amounts to a deliberate blockage and redirection of cash flow, and the Objectors are seeking to squelch that protest while side-stepping the merits of the requested relief.  Although the Oversight Board now suggests that the ongoing failure to pay or account for rent will not be deemed a waiver of the right to later complain about that failure, that is a weak and unsatisfactory response to the Bankruptcy Code requirement that rent be paid and a grudging acknowledgement of a conspicuous issue.

4.      The Objectors divert attention from the need for relief in the face of manifest inaction by the PBA and dwell on two false and misleading narratives.  The Oversight Board argues that the PBA Funds lack standing without denying that third-party beneficiary rights are set forth in all applicable leases.  The Oversight Board also raises questions as to whether the underlying leases are "true" leases or may be disguised financing transactions, implying without proving that merely raising a question about the characterization of the leases somehow may excuse a failure and refusal to observe the Bankruptcy Code's affirmative requirement to pay rent.

---

[4] AAFAF speaks for the PBA but is silent here; it has joined in the Oversight Board's Objection without offering any substantive points or insights regarding the views of the PBA as landlord.

5.      The Committee takes this point to irresponsible extremes, making a series of unsupported accusations evidently meant to raise suspicions as to the validity of certain PBA Bonds and the validity of the underlying leases between the PBA itself and the Debtor tenants. The Committee even styles its objection as "preliminary," presumably intending by that designation to expand targeted motion practice into a broader fishing expedition in pursuit of an unrelated assault on the constitutional debt limit.

6.      As noted below in this Reply, none of these challenges regarding standing, lease validity, or the hypothetical consequences of exceeding the debt limit has any merit in the context of the Motion. The PBA Funds are creditors of the Commonwealth and the PBA with third-party beneficiary rights that were granted to protect bondholders in circumstances precisely like these—*i.e.*, a time when the PBA is not acting in the best interests of stakeholders. The "true" lease issue is a red herring that should not distract from the unquestioned duty of the Debtor-tenants to fulfill their lease obligations, and questions about possible infirmities in the constitutional priority of bonds issued in 2011 and later years are entirely irrelevant.

7.      There are no meritorious defenses to the relief sought in the Motion. It should be granted and all Objections should be overruled.

## REPLY

### I.      PBA Bondholders Have Standing to Enforce PBA Leases

8.      The Objectors do not—and cannot—dispute the unconditional obligation of a debtor-tenant to pay rent arising under an unexpired lease of non-residential real property pending the assumption or rejection of such lease. Instead of addressing the persistent failure of both the PBA and the Debtors to honor this obligation, the Objectors attempt to sow uncertainty and doubt surrounding the standing of the PBA Funds to raise this issue. Specifically, the Oversight Board asserts that the PBA Leases do not bestow third-party beneficiary rights upon bondholders (they

ny-1316517

do), the PBA Funds are not parties in interest in these Title III Cases (they most certainly are), and

the PBA Funds may not pursue the relief requested for want of prudential standing (they may).

These arguments are distractions, and wholly without merit.

### A.   The PBA Funds are Third-Party Beneficiaries Under Commonwealth Law

9.   The PBA Funds are intended third-party beneficiaries of the PBA Leases for the

very reasons enumerated by the Oversight Board in its Objection.  The Oversight Board correctly

cites Commonwealth law stating that, where a contract contains "*any* stipulation in favor of a third

party, he may demand its fulfilment. . . ."[5]  The Oversight Board further notes that it is insufficient

that "the performance of a contract may benefit a third person; the contract must have been entered

into by the parties for the *direct benefit* of the third person."[6]  Remarkably, however, the Oversight

Board fails to actually *apply* this law to the PBA Leases, which provide:

> [This Lease] shall inure to the benefit of and be binding upon the
> parties hereto, their successors and assigns, and ***shall also inure to
> the benefit of the holders of the bonds issued under the Bond
> Resolution***, as their respective interest may appear.[7]

10.   The above-quoted language fulfills all of the requirements to confer third-party

beneficiary status under Commonwealth law: it is a "stipulation in favor of a third party" (namely

PBA Bondholders) that provides them with a "direct benefit," and thereby evinces a clear intention

---

[5] *See* Oversight Board Obj. ¶ 26 (citing 31 L.P.R.A. § 3374) (emphasis added).

[6] *See* Oversight Board Obj. ¶ 28 (citing *Cruz Berrios v. A.C.G.M.E.*, 218 F. Supp. 2d 140, 143 (D.P.R. 2002) (emphasis added)).

[7] *See* Oversight Board Obj. ¶ 29, n. 14 (emphasis added).  *See also* Committee Obj., <u>Exh. 1</u>, § 7.05 (the "<u>MRCC Master Lease</u>"); Committee Obj., <u>Exh. 2</u>, § 6.05 (the "<u>ASIFAL Master Lease</u>"); Committee Obj., <u>Exh. 3</u>, § 6.04 (the "<u>Series R Sublease</u>"); Committee Obj., <u>Exh. 4</u>, § 6.04 (the "<u>Series T Sublease</u>" and, together with the Series R Sublease, the "<u>Series R & T Subleases</u>").  Several of these leases were provided to the PBA Funds pursuant to a Confidentiality Agreement.  A fifth lease between the PBA and HTA on substantially similar terms has been available on the public claims register for nine months.  *See* Claim No. 1, Case No. 17-03567 (LTS) (Jun. 1, 2017) (the "<u>HTA Lease</u>").

to grant PBA Bondholders the right to enforce the PBA Leases.[8]  The PBA Funds are third-party beneficiaries of the PBA Leases, and the Objectors' assertions to the contrary are unfounded.

11.     For example, the Oversight Board appears to argue that the PBA Funds are not entitled to enforce the PBA Leases as *incidental* third-party beneficiaries, citing cases involving trust beneficiaries and other parties with an indirect interest in the general subject matter of a contract.[9]  Whether incidental beneficiaries can enforce contracts is not, however, the issue.  The question is whether *intended* beneficiaries such as the PBA Funds can.  And the answer is yes.[10]

12.     The Oversight Board then refers to the PBA Enabling Act, internal regulations, and bond resolutions to show that PBA Bondholders are not intended third-party beneficiaries of the PBA Leases.[11]  But those references cannot override what the Oversight Board only acknowledges in a footnote: the contents of the PBA Leases themselves, which clearly state that they shall "inure to the benefit of the holders of the bonds issued under the Bond Resolution . . . ."[12]

13.     Nonetheless, the Oversight Board reaches the flawed conclusion that the PBA Leases "[d]o not have any language granting the bondholders the right to enforce" such leases.  Yet the opposite is true.   The PBA Funds are third-party beneficiaries under the PBA Leases, empowered by Commonwealth law to enforce the terms thereof in the event of a breach.

**B.     The PBA Funds are Parties in Interest in these Title III Cases**

14.     In its Objection, the Oversight Board devotes considerable time and attention to the argument that "the PBA Funds do not have 'party-in-interest' standing" under Bankruptcy Code

---

[8] *See Banco Central Corp. v. Yauco Homes, Inc.*, 135 D.P.R. 858, 864-67 (1994).

[9] *See* Oversight Board Obj. ¶ 28 (citing *Cabrera-Morales v. UBS Tr. Co. of P.R.*, 769 F. Supp. 2d 67 (D.P.R. 2011) (trust beneficiary was not a third-party beneficiary of brokerage agreement between trustee and investment adviser where beneficiary claimed no right of enforcement thereunder); *Cruz Berrios*, 218 F. Supp. 2d 140 (students were not entitled to enforce agreement between medical school and accreditation board under *quasi-contract* theory)).

[10] *See* 31 L.P.R.A. § 3374.

[11] *See* Oversight Board Obj. ¶ 29.

[12] *See id.* at n. 14.

ny-1316517

section 1109(b) to pursue the Motion.[13]  This amounts to a rebuttal of an argument that the PBA

Funds did not make.  The PBA Funds do not contend that section 1109 provides an independent

grant of standing to litigate a particular issue.

15.     On the other hand, Bankruptcy Code section 1109(b) *does* afford a broad variety of

entities the ability to appear and be heard in a bankruptcy case as parties in interest, including "the

debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an

equity security holder, or any indenture trustee. . . ."[14]  This term is to be interpreted broadly,[15] and

includes *any* party holding a legal or financial stake in the outcome of a bankruptcy case.[16]  All that

section 1109(b) requires is that a party has "a sufficient stake in the outcome of the proceeding so

as to require representation."[17]

16.     That the PBA Funds—which the Objectors concede are creditors of the

Commonwealth—are parties in interest with a stake in the outcome of the Title III Cases is beyond

dispute.  The Oversight Board implies (incorrectly) that the PBA Funds are merely "creditor[s] of

a creditor" or frustrated "investors" that lack any direct interest in the PBA Leases, and in turn

must rely on "the rights of [their] bond issuer, PBA."[18]  But the PBA Funds as third-party

beneficiaries have their *own* "legal right which is sought to be enforced," and are therefore parties

in interest in the Title III Cases.[19]  As set forth below, the PBA Funds also have standing to seek

---

[13] *See* Oversight Board Obj. ¶¶ 15-23.

[14] *See* 11 U.S.C. § 1109(b).

[15] *See, e.g., Nintendo Co. v. Patten (In re Alpex Comput. Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995) (section 1109 defines party in interest "broadly").

[16] *See, e.g., Savage & Assocs. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011); *see also LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 5 (1st Cir. 1999).

[17] *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985); *see also In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014).

[18] Oversight Board Obj. ¶¶ 15, 17.

[19] *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) (citation omitted).

-6-

the relief requested by the Motion, and are proceeding in light of the PBA's failure to assert its rights as lessor.

### C.      The PBA Funds have Standing to Pursue the Relief Requested

17.      In order to seek relief from a federal court, a party must satisfy the minimum standing requirements of Article III of the United States Constitution.[20]  Specifically, such party must show: (1) that it has suffered an injury in fact, (2) causation between the challenged action and the injury, and (3) that the injury would be redressed by a favorable outcome in the litigation.[21]

18.      It is indisputable that the PBA Funds have Article III standing.  The PBA Funds have been *injured* by a lack of debt service payments, *caused* by the Debtors' failure to pay rent to the PBA, which would be *redressed* by the allowance and payment of an administrative expense claim to the PBA, an entity that is contractually obligated[22] to use those funds to pay principal and interest on the PBA Bonds.  The Objectors do not deny this, and so ends the standing inquiry.

19.      The Objectors' attempts to dispute the PBA Funds' standing on prudential grounds fail.  First, where Article III standing opens the court house doors, prudential concerns do not close them.  The Supreme Court has made clear that a court may not "limit a cause of action that Congress has created merely because 'prudence' dictates."[23]

20.      Moreover, the Oversight Board's argument that the PBA Funds are seeking to "derivatively assert PBA's rights,"[24] is simply not true.  A third-party beneficiary (such as the PBA

---

[20] See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[21] See *id*; *see also* Opinion and Order Granting Motion to Dismiss Amended Complaint, *Ambac Assurance Corp. v. Commonwealth of P.R. (In re Commonwealth of P.R.)*, Adv. Proc. No. 17-159-LTS, ECF No. 156 (D.P.R. Feb. 27, 2018), at 12.

[22] The PBA Funds reserve all rights with respect to any security or property interest that PBA Bondholders may assert in revenues received by the PBA.  Such issues are not properly before the Court and are not relevant to the Motion.

[23] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1388 (2014).

[24] See Oversight Board Obj. ¶ 14.

-7-

Funds) possesses its *own* rights, and need not litigate the rights of others.[25]  Accordingly, federal courts within this jurisdiction have regularly allowed plaintiffs to enforce their third-party beneficiary rights without raising any question of prudential standing.[26]

21.    The Oversight Board's assertion that the PBA Funds fall outside of the "zone of interests" protected by Bankruptcy Code section 365(d)(3) is as irrelevant as it is unpersuasive.  It hinges upon cases interpreting unrelated portions of section 365, as well as excerpts of legislative history for a statute that *predates the adoption of subsection 365(d)(3) by six years*.[27]  The history of section 365(d)(3), on the other hand, suggests that it was directed at reining in debtor-tenants that had been allowed to reap a windfall by remaining in their leased premises rent-free.[28]  The focus was on the *tenant*, and not the identity of the party entitled to enforce the lease.

22.    Furthermore, while other subsections of Bankruptcy Code section 365 prescribe the parties entitled to avail themselves of certain rights, section 365(d)(3) is silent as to who may enforce its provisions, a factor that courts have considered to be suggestive of a broad intended "zone of interests."[29]  Consistent with this broad interpretation of enforcement rights, courts have

---

[25] *See Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 290 (1st Cir. 2013); *see also Jepsen v. Bank of N.Y. Mellon (In re Jepsen)*, 816 F.3d 942, 946 (7th Cir. 2016); *Sec. Serv. FCU v. First Am. Mortg. Funding, LLC*, 771 F.3d 1242, 1246 (10th Cir. 2014); *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014).

[26] *See, e.g., CPA Grp. Int'l Inc. v. Am. Int'l Ins. Co. of P.R.*, No. 01-1483 (JP), 2002 WL 31944044, at *11 (D.P.R. May 23, 2002); *M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc.*, 31 F. Supp. 2d 226, 238 (D.P.R. 1998).

[27] *See* Oversight Board Obj. ¶ 31, n. 17; *see also Matter of James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992) (denying secured creditor's motion for relief from the automatic stay to foreclose on debtors' interest in unexpired lease, based upon a "deemed rejection" of such lease; secured creditor lacked standing to complain of technical noncompliance with section 365(d)(4)); *Southern Blvd, Inc. v. Martin Paint Stores (In re Martin Paint Stores)*, 207 B.R. 57 (S.D.N.Y. 1997) (competitor of proposed assignee of retail lease was neither (i) a creditor of the debtor nor (ii) a party in interest, and did not have standing to object to assumption and assignment of said lease); *In re Irwin Yacht Sales, Inc.*, 164 B.R. 678 (Bankr. M.D. Fla. 1994) (ex-wife of landlord did not have standing to object to assumption of lease).  None of these cases involved a third-party beneficiary to an unexpired lease, and none pertained to the obligation to pay rent under section 365(d)(3).

[28] *See* 130 Cong. Rec. S8891 (Jun. 29, 1984), *reprinted in* 1984 U.S.C.C.A.N. 576, 599 (statement of Sen. Hatch) ("This timely performance requirement will insure [sic] that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.").

[29] *Compare In re Three A's Holdings, LLC*, 364 B.R. 550, 561 (Bankr. D. Del. 2007) (city had standing to object to assignment under section 365(b)(3), due to (i) that subsection's silence on who is entitled to enforce its provisions and

held that even *non-parties* to an unexpired lease (to say nothing of third-party beneficiaries) possess standing under section 365(d)(3).[30] Thus, to the extent any "zone of interests" is relevant here, it makes logical sense that such zone be broadly defined and enable the PBA Funds to pursue remedies against the Debtors as third-party beneficiaries.

23. Bankruptcy Code section 365(d)(3) merely provides the procedural vehicle through which the PBA Funds may vindicate their rights by means of motion practice in the title III court. While stayed, these causes of action were not eliminated upon the commencement of these Title III Cases.[31] Under the Oversight Board's theory of standing, the PBA Funds' right to enforce the PBA Leases—coequal to that of the PBA itself—would be extinguished upon the commencement of a title III proceeding. That cannot be so. To deny the PBA Funds their contractual right of enforcement would be to rewrite the essential terms of the PBA Leases that grant them standing to pursue the Motion.

## II. The Objectors' Remaining Arguments are Extraneous and Irrelevant

24. The Objectors' other arguments are distractions raised by improper procedural means. Rather than address the substantive concerns raised by the Motion, the Objectors attempt to justify the Debtors' continued failure to perform statutorily-mandated obligations by expressing "doubts" about the nature of the PBA Leases based on a "preliminary review of *certain* leases" and

---

(ii) the city's ability to enforce restrictive covenants under applicable non-bankruptcy law) *with In re Riverside Nursing Home*, 43 B.R. 682, 684 (Bankr. S.D.N.Y. 1984) (in contrast to Bankruptcy Act provision that was silent on the matter, section 365(d)(2) showed clear intent to limit who may compel the debtor to assume or reject a contract).

[30] *See, e.g., In re Integrated Health Servs., Inc.*, 260 B.R. 71 (Bankr. D. Del. 2001) (assignee of rents entitled to pursue rent under section 365(d)(3) against debtor-tenant where related-party landlord failed to act); *In re Esmizadeh*, 272 B.R. 377, 385 (Bankr. E.D.N.Y. 2002) (non-party "falls within the 'zone of interest' [sections 365(d)(3) and (4) were] meant to protect"); *see also Matter of Lansing Clarion Ltd P'ship*, 132 B.R. 845, 848-49 (Bankr. W.D. Mich. 1991).

[31] *See Raleigh v. Ill. Dep't. of Revenue*, 530 U.S. 15, 20 (2000) ("Creditors' entitlements in bankruptcy arise . . . from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."); *see also, e.g., Matter of Holly's, Inc.*, 140 B.R. 643, 673-74 (Bankr. W.D. Mich. 1992).

-9-

by asserting that an investigation could possibly conclude that certain PBA Bonds are invalid. Each of these arguments is a red herring that does not merit the Court's prolonged attention.[32]

### A. The Objectors' Recharacterization Arguments are Without Merit

25.    The Objectors each express concerns regarding whether the PBA Leases are "true" leases, and preview possible arguments that recharacterization of the leases as disguised financing transactions may be appropriate.  Even if these allegations had merit (and, as described below, they do not), they provide no basis to deny the Motion.

26.    Lease recharacterization is an extraordinary remedy,[33] and bald assertions in the Objections that recharacterization issues may exist are insufficient to side-step the requirements of Bankruptcy Code section 365(d)(3).  Landlords are *not* required to forego their statutory right to receive rent until they appear in court and affirmatively prove the validity of their leases.  The onus is on the debtor to seek and prove in a procedurally-proper fashion that a lease is instead a disguised financing transaction.[34]  No party has done so in these cases.[35]  Unless and until the Debtors or the Objectors have obtained a final order of the Court concluding that some or all of the PBA Leases are disguised financing transactions, the Debtors should be required to comply with the mandates of Bankruptcy Code section 365(d)(3), including the payment of rent.[36]

---

[32] The PBA Funds reserve all rights with respect to the Committee's arguments that the Debtors may not be liable under certain of the PBA Leases or that the amount of the Administrative Rent Claim is otherwise inflated.  Indeed, this only serves to highlight the need for an accounting of all amounts due and owing to the PBA, an issue first raised by the PBA Funds in the Motion.

[33] *See Liona Corp., N.V. v. PCH Assocs. (In re PCH Assocs.)*, 804 F.2d 193, 200 (2d Cir. 1986) (there is a "strong presumption" that a lease is what it purports to be) (citations omitted).

[34] *See* 3 COLLIER ON BANKRUPTCY ¶ 365.02 (16th ed. 2017).

[35] Recharacterization claims should typically be brought by adversary proceeding.  *See* Bankruptcy Rule 7001 (requiring commencement of an adversary proceeding to obtain equitable relief or a declaratory judgment); *accord United Airlines, Inc. v. HSBC Bank USA, N.A. (In re United Airlines, Inc.)*, 416 F.3d 609, 611 (7th Cir. 2005) (describing several recharacterization challenges brought by adversary proceeding); *In re Mirant Corp.*, No. 03-46590, 2004 WL 5643668, at *3 (Bankr. N.D. Tex. Sept. 15, 2004) (same).

[36] *See In re Mirant Corp.*, 2004 WL 5643668, at *3 (rejecting debtor's request to defer rent payment obligations under Bankruptcy Code section 365(d)(3) until resolution of adversary proceeding asserting lease was not a true lease and

-10-

27.     Even if the Objectors' allegations regarding the nature of the PBA Leases were properly raised here, there can be little doubt as to the true nature of the PBA Leases.  The PBA's own audited financial statements reflect ownership of $3.5 billion of capital assets, the vast majority of which are rented to the Commonwealth, its agencies, instrumentalities, and other entities pursuant to the PBA Leases.[37]  Although a portion of the rentals under PBA Leases are indeed calculated with respect to the amount of principal and interest payable on the PBA Bonds, the PBA Leases also provide for "Operating Rental" payments that are *independent* of debt service requirements.[38]  Most importantly, the PBA's tenants do not retain any right to receive title to or an option to purchase the leased facilities for no (or nominal) consideration at the expiration of the PBA Leases.[39]  This is critical to a disguised financing analysis.[40]  Otherwise, the tenant lacks the right to acquire or possess the leased property at any time following the lease's termination, and instead must vacate the premises.  In fact, the Objectors have not cited any case in which a court

---

holding that section 365(d)(3) "is mandatory in requiring performance by the trustee [] until performance is excused by reason of a determination by the court that section 365 is not applicable."); *see also In re Elder-Beerman Stores Corp.*, 201 B.R. 759, 761, 764-65 (Bankr. S.D. Ohio 1996).

[37] *See* Public Buildings Authority, *Basic Financial Statements for Fiscal Years Ended June 30, 2014 and 2013 and Independent Auditors' Report* at 8, 15, *available at* http://www.gdb-pur.com/investors_resources/documents/PBABasicFS-6-30-2014.pdf.

[38] *See, e.g.,* MRCC Master Lease, § 2.01(b); ASIFAL Master Lease, § 2.01(c); HTA Lease, § 2.01(b); Series R Sublease, § 2.01(b) ("Annual Administrative Rental"); Series T Sublease, § 2.01(b) (same).

[39] The Committee's focus on the Series R & T Subleases is misleading and self-serving.  Those leases are *not* representative of the majority of the PBA Leases.  Indeed, the MRCC Master Lease and ASIFAL Master Lease were provided to the PBA Funds' counsel by AAFAF pursuant to the terms of a Confidentiality Agreement and were represented to be "exemplars" in the same form as other PBA Leases, consistent with the terms of the PBA bond resolutions. *See, e.g.,* Puerto Rico Public Buildings Authority, *Resolution No. 1280* (Dec. 6, 2007), § 11, *available at* http://www.gdb-pur.com/investors_resources/documents/PBAResolution1280Dec62007-SeriesMNO.pdf.       Those exemplar leases were subsequently shared with the Committee, with the consent of AAFAF in accordance with the terms of the Confidentiality Agreement.  Regardless, the Series R & T Subleases also lack the distinguishing feature of a financing transaction, in that there is never an opportunity for title to pass to the subtenant at the end of the term.

[40] *See, e.g., Brankle Brokerage and Leasing v. Volvo Fin. Servs. (In re Brankle Brokerage and Leasing, Inc.)*, 394 B.R. 906, 913 (Bankr. N.D. Ind. 2008) ("A key, some would say pivotal, consideration in this regard is whether the lessee acquires some type of ownership or equity interest in the property.") (citations omitted).

-11-

concluded that a lease was in reality a secured financing transaction absent the ability of the tenant to acquire title to the property in question—a feature that courts have found to be pivotal.[41]

28.     The PBA Funds are compelled to distinguish several cases cited by the Objectors where courts held agreements to be outside the scope of Bankruptcy Code section 365.  These decisions rested on a variety of grounds that are all inapposite.  For example, the agreement considered by the *Lefrak* court was not a commercial lease but a residential "cooperative apartment deed."[42]  *Moreggia* and *International Trade* involved long-term, fully prepaid leases that lacked material remaining obligations on the part of the lessee and were therefore not executory for the purposes of section 365.[43]  And as the Committee itself notes, the "lease" at issue in *Pittsburgh Sports* did not even pertain to a particular piece of property, but was instead a component of a byzantine scheme to evade the National Hockey League's prohibition on ownership of multiple franchises.[44]

29.     The economic realities of the PBA Leases are consistent with those of "true" leases—the PBA acts as landlord for tenants who derive their right to possession of the leased facilities solely by virtue of the PBA Leases and will have no right to possess or acquire the leased facilities following expiration of their respective PBA Leases.     Accordingly, any recharacterization challenge will fail.  But that is an issue for another day.  For now, Bankruptcy Code section 365(d)(3) requires the Debtors to pay rent to the PBA.  That conclusion is neither controversial, nor disputed by the Objectors.

---

[41] *See* Oversight Board Obj. ¶ 32; Committee Obj. ¶¶ 19-24.

[42] *See Schachter v. Lefrak (In re Lefrak)*, 223 B.R. 431, 438 (Bankr. S.D.N.Y. 1998).

[43] *See Int'l Trade Admin. v. R.P.I.*, 936 F.2d 744, 751 (2d Cir. 1991); *City of S.F. Mkt. Corp. v. Walsh (In re Moreggia & Sons, Inc.)*, 852 F.2d 1179, 1186 (9th Cir. 1988).

[44] *See generally In re Pittsburgh Sports Assocs. Holding Co.*, 239 B.R. 75 (Bankr. W.D. Pa. 1999).

B.    The Committee's "Debt Limit" Theory is Unfounded

30.    The Committee's unsubstantiated and irrelevant constitutional debt limit challenge is even further off the mark.  The Committee speculates, based upon an investigation it has not completed, that certain of the PBA Bonds might be treated as direct obligations of the Commonwealth.  If the Committee were successful in making this claim, then the Committee believes that it could further demonstrate that some subset of those bonds may have been issued in violation of the Commonwealth's constitutional debt limit.[45]  If this *too* could be proven, so the theory goes, then the PBA Funds would no longer have standing to enforce the PBA Leases and the rental obligations arising thereunder would "likely" be eliminated.  Far from placing the validity of the PBA Bonds "legitimately in question," this is pure speculation and unfounded conjecture.  Simply put, the Committee provides no basis to deny the Motion.[46]

31.    Importantly, the Committee advances no authority in support of this novel theory, nor does it explain how a potential constitutional infirmity in a subset of PBA Bonds would nullify the contractual third-party beneficiary rights contained in the PBA Leases.  It is equally telling that the Committee offers minimal support for the core premise underlying its "challenge": that there is a basis to recharacterize PBA Bonds as direct Commonwealth obligations in the first place. Indeed, other than a passing reference to the prepetition *Lex Claims* litigation,[47] the Committee only cites one case in support of its theory—the order confirming the chapter 9 plan of adjustment of the City of Detroit.[48]  In approving a settlement of debt limit claims as fair and reasonable, the *Detroit* court observed that the entities which issued the suspect debt "have no staff, no budgets, do

---

[45] *See* Committee Obj. ¶¶ 28-29

[46] In any event, as described above, the Debtors should comply with the terms of the PBA Leases pending a final court decision resolving any dispute.  *See In re Mirant Corp.*, 2004 WL 5643668, at *3.

[47] *See* Motion for Judgment, *Lex Claims, LLC v. Padilla*, Case No. 16-02374 (FAB), ECF No. 219 (D.P.R. Mar. 18, 2017).

[48] *See* Committee Obj. ¶ 28, n. 31 (citing *In re City of Detroit*, 524 B.R. 147, 193 (Bankr. E.D. Mich. 2014)).

ny-1316517

not hold annual board meetings and have no real ongoing functions."[49]  That *Detroit* is inapposite to the current proceeding could not be more apparent from this very passage: the PBA employs over 1,000 people,[50] operates pursuant to an annual budget,[51] holds regular board meetings,[52] and has acted as landlord of numerous government properties for nearly sixty years.[53]

32.    Moreover, even leaving aside the Committee's current inability to represent to this Court that such a challenge exists (or is at all relevant to the Motion), its hypothetical challenge does not implicate the majority of the PBA's $4 billion in outstanding bonds.[54]  In short, the Committee's suggestion that potential invalidation of a subset of later-issued PBA Bonds would mean that PBA Bondholders would have "no standing to enforce the [PBA] Leases against the Commonwealth" is misleading, without merit, and borders on frivolous.  This "challenge" poses no impediment to the Court granting the Motion and should be disregarded.

## RESERVATION OF RIGHTS

33.    The PBA Funds hereby reserve any and all rights with respect to the relief sought by the Motion, including, but not limited to, the right to pursue any and all remedies with respect to currently outstanding or future rents or other amounts due to the PBA or the holders of bonds issued by the PBA.  The PBA Funds further reserve all rights, defenses, and counterclaims in

---

[49] *See id.*

[50] *See* Gloria Ruiz Kuilan, *Edificios Públicos comienza la operación para remozar las escuelas*, EL NUEVO DÍA (Jun. 17, 2017), *available (in Spanish only) at* https://www.elnuevodia.com/noticias/locales/nota/edificiospublicos comienzalaoperacionparararemozarlasescuelas-2332034/.

[51] *See, e.g.,* Explanatory Memorandum Regarding 2017-2018 Budgetary Recommendations (Jun. 15, 2017), *available (in Spanish only) at* http://www2.pr.gov/ogp/Bvirtual/memExpPres/PDF/Agencias/AEP-18.pdf.

[52] The PBA in fact makes video recordings of all recent board meetings publicly available.  *See* Autoridad de Edificios Públicos, *Featured Videos*, YouTube (last accessed Feb. 28, 2018), *available at* https://goo.gl/UGehk5.

[53] *See* PBA Enabling Act, 22 L.P.R.A. § 901, *et seq.*

[54] In its communications with the PBA Funds, the Committee indicated that is currently reviewing PBA Bonds issued in 2011 or later.  However, the PBA issued less than half of its $4 billion in outstanding bonds since 2011.  *See* Puerto Rico Public Buildings Authority, *Investor Resources*, *available at* http://www.gdbpr.com/investors_resources/ pr_public_building.html (detailing PBA's issuance of only $1.76 billion of bonds since the beginning of 2011).

connection with any challenge to the validity or nature of the PBA Leases, the PBA Bonds, or any aspect thereof, whether asserted in connection with the Objections and determined by the Court to have been properly raised, or raised in other proceedings by the Objectors or any other party.

## CONCLUSION

34.     Nothing about the situation before the Court is the least bit typical.  Ordinarily, landlords can be relied upon to take prudent steps on their own to protect their interests and those of any stakeholders.  A commercial landlord standing in the shoes of the PBA would be expected to collect the rent that is due (or overdue) and, in the event of a persistent failure of the debtor to perform its lease obligations, would pursue rights and remedies within the bankruptcy to collect rent (or preserve administrative claims for unpaid rent), with diligence and without delay.

35.     Curiously, that has not occurred and is not occurring here, for reasons that are not explained in the Objections.  Those Objections deflect, evade, cast doubts, change the subject, and are transparently technical in trying to dispose of the Motion without reaching the merits.  The Objections are notably silent, however, in speaking to the ongoing, uncured payment default that inexcusably violates a plainly-worded statutory obligation applicable to all debtors.  Inaction by the PBA in the face of defaults by the Commonwealth is the context for this motion practice.

36.     The Objections to the relief sought should be overruled.  They are not well grounded, and strive to justify maintaining a status quo of defaults that is unfavorable to the landlord and contrary to the purposes of section 365(d)(3).  When viewed through the lens of this controlling section of the Bankruptcy Code, the Motion should be granted.

*[Signature page follows]*

Date: March 2, 2018

By: *Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: *Kendra Loomis*
Kendra Loomis
USDC PR No. 227408
Telephone: (787) 370-0255
loomislegal@gmail.com

**G. CARLO-ALTIERI LAW OFFICES, LLC**
254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

-and-

By: *Gary S. Lee*
Gary S. Lee

**MORRISON & FOERSTER LLP**
Gary S. Lee (admitted *pro hac vice*)
James M. Peck (admitted *pro hac vice*)
James A. Newton
Andrew R. Kissner
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JPeck@mofo.com
GLee@mofo.com

*Counsel for the PBA Funds*