**Hearing Date:** March 7, 2018, 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
    as representative of
THE COMMONWEALTH OF PUERTO RICO,
*et al.*,
    Debtors.[1]

PROMESA
Title III
No. 17 BK 3283-LTS
(Jointly Administered)

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
    as representative of
THE COMMONWEALTH OF PUERTO RICO,
    Debtor.

PROMESA
Title III
No. 17 BK 3283-LTS

**This filing relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

---------------------------------------------------------------x

## REPLY MEMORANDUM OF SERVICE EMPLOYEES INTERNATIONAL UNION AND INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) IN SUPPORT OF MOTION FOR AN ORDER TO PERMIT THE PROCESSING THROUGH RESOLUTION OF EMPLOYMENT ARBITRATION AND GRIEVANCE PROCEEDINGS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

00935460.2

## **TABLE OF CONTENTS**

                                                                                                                                            Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.     THE MOTION IS NOT MOOT, SINCE THE COMMONWEALTH HAS NOT
AGREED TO PROVIDE ALL THE RELIEF THE MOTION SEEKS............................. 2

II.    SECTION 362(b)(4) OF THE BANKRUPTCY CODE EXEMPTS THE
PREPETITION ACTIONS FROM THE AUTOMATIC STAY ....................................... 4

III.   EVEN IF THE AUTOMATIC STAY APPLIES TO THE PREPETITION
ACTIONS, AMPLE CAUSE EXISTS TO LIFT THE STAY .......................................... 7

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aerovias Nacionales de Colombia S.A.*,
   303 B.R. 1 (Bankr. S.D.N.Y. 2003)...................................................................................1

*City of Stockton, California*,
   484 B.R. 372 (Bankr. E.D. Cal. 2012)................................................................................9

*Fin. Oversight & Mgmt. Bd.*,
   Docket .........................................................................................................................8, 11

*McMullen v. Sevigny*,
   386 F.3d 320 (1st Cir. 2004)...........................................................................................5, 6

*Pagan v. Fund. Hosp. Dr. Pila*,
   1983 WL 204205 (P.R. Apr. 28, 1983)..............................................................................6

*In re Pressley*,
   518 B.R. 867 (Bankr. D.S.C. 2014) ...................................................................................1

*In re Richter*,
   2010 WL 4272915 (Bankr. N.D. Iowa Oct. 22, 2010) ......................................................1

*Textile Workers v. Lincoln Mills*,
   353 U.S. 448 (1957).........................................................................................................6

*In re Trevino*,
   564 B.R. 890 (Bankr. S.D. Tex. 2017) ..............................................................................1

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960).........................................................................................................6

**Statutes and Rules**

3 L.P.R.A. § 1451 ......................................................................................................................6

3 L.P.R.A. § 1452 ......................................................................................................................4

48 U.S.C. §2161(1)(c)(2) ...........................................................................................................4

Bankruptcy Code Section 362(b)(4) ................................................................................4, 5, 6

Bankruptcy Code Section 1113(f) ..........................................................................................11

**To the Honorable United States District Court Judge Laura Taylor Swain:**

Service Employees International Union ("SEIU") and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) ("UAW"), on behalf of themselves and their local affiliates in Puerto Rico, submit this reply memorandum in support of the January 16, 2018 *Joint Motion of American Federation of State, County and Municipal Employees, AFL-CIO and American Federation of Teachers, AFL-CIO, for an Order to Permit the Processing Through Resolution of Employment Arbitration and Grievance Proceedings* ("Motion") [Docket Entry #2245]. SEIU and UAW filed a joinder to the Motion [Docket Entry No. 2249].[1] SEIU and UAW explain below why the Motion should be granted.[2]

## PRELIMINARY STATEMENT

1. In response to the Motion, the Commonwealth reserves the right to block from resolution a potentially large set of prepetition grievances and arbitrations: those that it determines, in its sole discretion, may somehow affect, even indirectly or minimally, a fiscal plan or any of the Title III cases. SEIU and UAW submit, as argued in the Motion, that *all* prepetition grievances and arbitrations should proceed to resolution (with the collection or enforcement of

---

[1] The SEIU represents approximately 2 million public service workers throughout North America. SEIU members employed by the Commonwealth belong to one of two SEIU local chapters: SEIU Local 1996/Sindicato Puertoriqueno de Trabajadores y Trabajadoras ("SPT"), and SEIU Local 1199/Union General de Trabajadores ("UGT"). Approximately 16,000 SPT and UGT members are employed by the Commonwealth or its instrumentalities. The UAW, with more than 400,000 active members in virtually every sector of the American economy, has eight affiliated local chapters in Puerto Rico, the largest of which are UAW Local 2396, which represents school cafeteria employees, and UAW Local 2373, which represents employees of the Commonwealth's Treasury Department. Approximately 6,800 UAW members are employed by the Commonwealth or its instrumentalities.

[2] Because of their joinder to the Motion, SEIU and UAW have standing to pursue it. *See In re Pressley*, 518 B.R. 867, 870 n. 5 (Bankr. D.S.C. 2014); *In re Richter*, 2010 WL 4272915, at *1 (Bankr. N.D. Iowa Oct. 22, 2010); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 7 (Bankr. S.D.N.Y. 2003); *see also In re Trevino*, 564 B.R. 890, 910–11 (Bankr. S.D. Tex. 2017).

-1-

any monetary awards against the Commonwealth, absent assumption of the collective bargaining agreements, generally only paid pursuant to the Title III claims process).

2. The prepetition grievances and arbitrations do not pose a threat to any fiscal plan or Title III case. In fact, among the many thousands of pending prepetition grievances and arbitrations, the Commonwealth in its February 23, 2018 response to the Motion ("Response") [Docket Entry No. 2585] fails to identify a *single one* that it claims poses such a danger. Even assuming there were one, the Commonwealth would have all available defenses to oppose the grievance at every stage of the grievance-arbitration process. Moreover, arbitration awards are not self-enforcing. The Commonwealth would have a full opportunity, in any litigation reviewing an award, to assert its contention that the award threatened a fiscal plan or a Title III case.

3. The reality is that giving employees who have a workplace grievance an opportunity to be heard, and to have their grievance resolved, would cause the Commonwealth no harm. To the contrary, a functioning grievance-arbitration mechanism that resolves pending workplace disputes would help preserve labor peace, would boost employee morale, and would lead to a more productive and motivated workforce -- exactly what the Commonwealth needs to accomplish the goals set out in any fiscal plan. By instilling a sense of order and due process in the Commonwealth's public-sector workplaces, a fully functioning grievance-arbitration mechanism would also help restore workers' shaken confidence in the governance of Puerto Rico, encouraging them to stay and to rebuild the Island's economy. That's what Puerto Rico needs.

I. **THE MOTION IS NOT MOOT, SINCE THE COMMONWEALTH HAS NOT AGREED TO PROVIDE ALL THE RELIEF THE MOTION SEEKS**

4. The Commonwealth argues first that "the Motion is moot and need not be decided by the Court" because, it asserts, "the Commonwealth consents to the Movants' request

-2-

to lift the Title III Stay to allow the Actions to proceed." Response ¶5. This argument fails because the Commonwealth has not agreed to all the relief the Motion seeks.

5.  The Motion seeks a declaration that the Title III stay does not apply to prepetition grievances and arbitrations. *See* Motion ¶4 (first bullet point), ¶¶25-29. The Commonwealth does not agree to such a declaration, but asserts the contrary position, that the stay applies. *See* Response ¶¶13-19.

6.  The Motion also seeks, in the alternative, that the stay be lifted to allow all prepetition grievances and arbitrations to proceed. *See* Motion ¶4 (first bullet point), ¶¶30-35. The Commonwealth does not agree to that either. In particular, it does not agree that prepetition grievances and arbitration should proceed if the grievances, in the Commonwealth's unfettered judgment, would in some undefined way "affect the fiscal plan" or "the Title III cases." Response ¶2. This potentially broad category of cases would, according to the Commonwealth, include "prepetition actions that seek injunctive relief other than reinstatement," *id*. at 6 n.3, or that seek a remedy that would, in some undefined manner, "impede or be inconsistent with" "any Commonwealth statutes that are essential for the Fiscal Plan to succeed." *Id*. Thus, while purporting to agree to everything the Motion seeks, the Commonwealth carves out a potentially sizeable, vaguely defined exception that would allow it to block a broad swath of prepetition grievances and arbitrations.

7.  The August 22, 2017 order [Docket Entry No. 1125] that the Commonwealth cites in support of its mootness argument, *see* Response ¶5, is easily distinguished. There, a plaintiff in a prepetition disability discrimination lawsuit moved, on behalf of herself and her daughter, to lift the stay, and the Commonwealth consented to allow the litigation to proceed to completion. The Court wrote in its order cancelling the hearing on the motion that it "need not address the arguments raised by the Movants" because "the Movants

-3-

have been granted complete relief." Docket Entry #1125, at 2. Here, by contrast, as explained above, the Commonwealth has not acted to provide the complete relief sought in the Motion.[3]

## II. SECTION 362(b)(4) OF THE BANKRUPTCY CODE EXEMPTS THE PREPETITION ACTIONS FROM THE AUTOMATIC STAY

8. The Motion explains, *see* Motion ¶26, that Section 362(b)(4) of the Bankruptcy Code, made applicable to PROMESA, exempts the prepetition grievances and arbitrations from the Title III automatic stay because Commonwealth statutory law mandates the establishment of grievance procedures and requires the use of a government agency -- the Appellate Public Service Commission ("Commission") (Comisión Apelativa del Servicio Público, in Spanish) -- for the conduct of arbitrations. *See* 3 L.P.R.A. § 1452. The arbitrators who hear the grievances are salaried employees of the Commission, and it is the Commission that decides which arbitrator will be assigned to which case.[4]

9. The Commonwealth, citing no authority for the proposition, argues that Section 362(b)(4) cannot apply in cases where the debtor is a government and not a private entity. That PROMESA incorporates Section 362(b)(4) refutes the proposition. PROMESA is a statute that contemplates only governmental entities as debtors. *See* 48 U.S.C. §2161(1)(c)(2). If Section 362(b)(4) were inapplicable in cases against government debtors, Congress would

---

[3] SEIU and UAW appreciate the Commonwealth's recognition and agreement that *postpetition* grievances and arbitrations should proceed in the ordinary course. *See* Response ¶3. However, we note that paragraph 5 of the Response asserts that there will be no collection or enforcement of monetary awards for "Actions," a term which the Response earlier in the document defines to include postpetition grievances and arbitrations, *see id*. ¶2. This may have been a drafting error by the Commonwealth. In any event, unlike prepetition grievances and arbitrations, grievances and arbitrations concerning postpetition events give rise to administrative claims that should be payable in full in the ordinary course during the Title III proceedings.

[4] On the mainland, by contrast, the parties to a labor arbitration typically choose the arbitrator and split the fees charged by the arbitrator. Moreover, on the mainland, labor arbitrators are typically not government employees, but private individuals who maintain an alternative dispute resolution practice.

-4-

have excluded that provision from PROMESA, as it excluded so many other provisions of the Bankruptcy Code.  *See id*. §2161(a).  That Congress did not exclude Section 362(b)(4) from PROMESA shows that it contemplated the application of Section 362(b)(4) to exempt from the automatic stay actions against governmental debtors in PROMESA Title III cases.

10. The Commonwealth next argues that Section 362(b)(4) cannot apply when a private party initiates the proceeding.  *See* Response ¶21.  That is certainly wrong.  In *McMullen v. Sevigny*, 386 F.3d 320 (1st Cir. 2004), the First Circuit held that Section 362(b)(4) applied, and exempted from the automatic stay, a proceeding before a state agency -- the Massachusetts Division of Registration of Real Estate Agents -- that was initiated by the complaint of a private party.  In that case, a private party involved in an aborted real estate deal claimed the real estate broker improperly retained the party's deposit.  Here, the fact that an employee or union initiates the grievance cannot bar application of Section 362(b)(4), since it is a government agency -- Commission -- that provides the statutorily mandated mechanism for resolving the grievance.

11. The National Labor Relation Board ("NLRB") cases cited in the Motion, *see* Motion ¶27, further refute the Commonwealth's position.  NLRB cases almost invariably begin with the filing of an unfair labor practice charge by a union, employee or other private party.  *See* National Labor Relations Board, "The NLRB Process."[5]  That NLRB unfair labor practice proceedings involve aggrieved private parties seeking to vindicate their rights in no way precludes application of Section 362(b)(4).  For the same reason, Section 362(b)(4) applies, and exempts from the automatic stay, administrative proceedings under Puerto Rico's mandatory labor-dispute resolution statute, even though initiated by aggrieved private parties.

---

[5] *The NLRB Process,* National Labor Relations Board, available at https://www.nlrb.gov/resources/nlrb-process.

12. In *McMullen*, the First Circuit concluded that Section 362(b)(4) applied because "the state power to regulate the licensure of real estate brokers is designed to advance a sufficiently important public policy so as to trump the competing interests fostered by the automatic stay."  386 F.3d at 325.  Under that First Circuit analysis, the question whether Section 362(b)(4) applies here turns on whether the public policy behind Puerto Rico's statutorily mandated grievance-arbitration mechanism is "sufficiently important" so as to trump the interests behind the automatic stay.

13. The public policy behind the Commonwealth's grievance-arbitration mechanism, like the policy behind all union-employer grievance procedures, is of paramount importance:  nothing less than the maintenance of labor peace.  *See* 3 L.P.R.A. § 1451 (statement of policy noting that the "organization of public sector employees in unions, and collective bargaining, shall encourage and promote the solution of disputes through mediation of complaints and arbitration mechanisms"); *see also Pagan v. Fund. Hosp. Dr. Pila*, 1983 WL 204205 (P.R. Apr. 28, 1983) (internal citation omitted) (Westaw English Translation) ("The Puerto Rican experience in these past decades has shown that arbitration is a mechanism that tends to maintain industrial stability and peace, the principal aims of our labor legislation.").  As the U.S. Supreme Court has explained, an "agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike," and reflects the considered conclusion that "industrial peace can be best obtained only in that way." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 455 (1957); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) (objective of arbitration process is to further "common goal of uninterrupted production").

14. The Commonwealth of Puerto Rico, now more than ever, needs a productive, motivated workforce to help rebuild the Island's battered infrastructure and economy and to provide essential services to its people.  A functioning grievance machinery that assures

-6-

labor peace by giving aggrieved employees a chance to be heard will help maintain the workforce's morale and commitment. The importance of the public policy behind the Commonwealth's grievance-arbitration mechanism easily trumps any competing concerns here regarding the automatic stay. Section 362(b)(4) thus applies and exempts the prepetition grievances and arbitrations from the automatic stay.

### III. EVEN IF THE AUTOMATIC STAY APPLIES TO THE PREPETITION ACTIONS, AMPLE CAUSE EXISTS TO LIFT THE STAY

15. Even if the Court were to conclude that the stay applies, ample cause exists to lift it to allow the prepetition grievances and arbitration to move forward to resolution. As the Motion explains, the applicable *Sonnax* factors all weigh heavily in favor of lifting the stay. *See* Motion ¶32.

16. First, *Sonnax* factor 1 favors granting the Motion because the Motion seeks relief that "would permit the complete resolution of thousands of routine employment arbitrations and grievances." *Id*. The Commonwealth, citing cases from other circuits, argues that *Sonnax* factor 1 refers to resolving bankruptcy issues, and asserts that factor 1 does not support the Motion because the grievances and arbitrations "would not resolve any issues relevant to the Commonwealth's Title III plan of adjustment." Response ¶27. The Commonwealth's constricted reading of factor 1 is inconsistent with this Court's approach. In *Fin. Oversight & Mgmt Bd. for Puerto Rico*, No. 17 BK 3282-LTS (July 12, 2017) (Docket Entry No. 620), this Court found that factor 1 weighed in favor of lifting the stay to allow a labor arbitration to proceed to decision, not because it would resolve bankruptcy issues or issues under the Commonwealth's Title III plan of adjustment, but because it would resolve the merits and remedial issues in the employee's dispute with the Commonwealth, namely, "the question of quantification of the DLHR's financial liability on Perez-Rivera's employment discrimination claims." *Id*. at 3. Similarly here, factor 1 weighs in favor of granting the Motion because doing

-7-

so would allow resolution of the workplace disputes underlying the prepetition grievances and arbitrations at issue.

17. The Motion further explains that *Sonnax* factor 2 weighs in favor of granting the Motion because allowing prepetition grievances and arbitrations "to proceed through resolution without any monetary recovery against the Commonwealth, while preserving all defenses, including any in relation to any certified fiscal plan cannot possibly interfere with progress of the Title III Case." Motion ¶32. The Commonwealth asserts in a conclusory manner that letting the prepetition grievances and arbitrations proceed would "interfere with the Title III case because it would affect the application of the Fiscal Plan and the laws that are essential for the Fiscal Plan to succeed." Response ¶28. The Commonwealth fails to provide any explanation for this assertion or point to any grievances that would constitute such interference. The assertion runs directly counter to this Court's ruling in *Fin. Oversight & Mgmt. Bd.*, Docket Entry No. 620, where the Court found that resolution of a labor arbitration against the Commonwealth "would not interfere materially, if at all, with the Title III case." *Id*. at 3.

18. The Motion next explains that *Sonnax* factor 4 weighs in favor of granting the Motion because the Commission that processes the grievances and arbitrations is a "specialized tribunal with the necessary expertise [that] has been established to hear the cause of action." Motion ¶¶30, 32. Indeed, in *Fin. Oversight & Mgmt. Bd.*, Docket Entry No. 620, this Court recognized that the arbitration hearing in that case was "conducted by a specialized tribunal." *Id*. at 3. The Commonwealth makes no attempt to dispute that the Commission is a specialized tribunal for purposes of *Sonnax* factor 4, but simply asserts that no individual *Sonnax* factor is dispositive and repeats its conclusory refrain that granting the Motion would have a negative impact on the fiscal plan and the Title III cases. Response ¶29.

19. The Motion further explains that *Sonnax* factor 7 favors granting the Motion because allowing the prepetition grievances and arbitrations "to proceed through

-8-

resolution, without any monetary recovery, cannot possibly prejudice other creditors." Motion ¶32. The Commonwealth makes no attempt to explain how resolution of the prepetition grievances and arbitrations, without any recovery of a monetary remedy except through the claims process, would prejudice other creditors, other than to assert, in a conclusory fashion, that allowing the grievances and arbitration to proceed would impede the Commonwealth's capacity to execute the fiscal plan and thus would have a negative impact on other creditors. *See* Response ¶30.

20. *City of Stockton, California*, 484 B.R. 372 (Bankr. E.D. Cal. 2012) (cited at Response ¶30), provides no support for the Commonwealth's position. *Stockton* concerned not a labor grievance or arbitration, but a lawsuit by the former chief of the debtor city's fire department against the city and two top city executives. The *Stockton* court, which did not apply or discuss the *Sonnax* factors, declined to lift the stay because the lawsuit would have consumed the time and attention of the two city executives during a period when they were focusing on the Chapter 9 case and because the city had to bear the expense of engaging outside counsel to defend itself and the two executives in the lawsuit. *See id.* at 378-79.

21. Here, the Commonwealth points to no grievance or arbitration that names any Commonwealth officials as respondents, let alone top Commonwealth officials who would be involved in the formulation and effectuation of the fiscal plan. Grievances and arbitrations lie against the employer, which is the Commonwealth itself or its agencies. Moreover, the Commonwealth nowhere claims that it would have to hire outside or additional counsel to defend against the grievances and arbitration. The same corps of management officials and counsel who routinely defended the Commonwealth in grievances and arbitrations before the Title III cases could continue to do so now.

22. The Motion next explains that *Sonnax* factor 10 favors granting the Motion because judicial economy would be served by having the prepetition grievances and

-9-

arbitrations proceed to resolution through established non-judicial channels. *See* Motion ¶32. The Commonwealth's only response is to cite this Court's November 3, 2017 decision [Docket Entry #1624] and to argue based on it that relief from the stay is not warranted when a movant's claim is at an early stage. *See* Response ¶31. While some of the prepetition grievances and arbitrations may be at an early stage, others may be well along towards resolution. In any event, this Court's November 3, 2017 decision, which concerned an administrative proceeding against PREPA, is inapt. The Court there noted that "the requested relief from the automatic stay would not result in a complete or materially significant partial resolution of Movant's claims against PREPA," *id*. at 7, and also that PREPA would be prejudiced by having to focus on the proceeding when, in the wake of Hurricane Maria, it "must focus on the restoration of power to the vast majority of Puerto Rico's residents." *Id.* Here, by contrast, lifting the stay *would* result in resolution, in non-judicial proceedings, of the pending prepetition grievances and arbitrations. Moreover, the Commonwealth does not claim that it is facing an immediate crisis -- like PREPA was in the wake of the hurricane -- that would prevent its labor relations professionals from processing the prepetition grievances and arbitrations.

23. The Motion explains that *Sonnax* factor 12, regarding impact on the parties and balance of harm, favors granting the Motion because "[f]ailure to move ahead with the Prepetition Proceedings will leave the thousands of employees without any recourse to address workplace injustices." Motion ¶32. The Commonwealth has nothing to say in response, other than to repeat the conclusory refrain -- without explanation -- that allowing these routine labor disputes to proceed through established mechanisms would somehow "limit the capacity of the Commonwealth to comply with the Fiscal Plan." Response ¶32.

24. Finally, the Commonwealth argues that *Sonnax* factor 6 weighs against the Motion because the Commonwealth itself, rather than third parties, is the respondent in the prepetition grievances and arbitrations. To support this argument, the Commonwealth cites cases

-10-

from outside this Circuit. But this Court's decision in *Fin. Oversight & Mgmt. Bd.*, Docket Entry No. 620, shows that naming the Commonwealth or one of its agencies in the proceeding is no obstacle to lifting the automatic stay. *See id*. at 4 (lifting stay to allow labor arbitration to proceed against Commonwealth's Department of Labor and Human Resources).

25. The Motion explains that in Chapter 11 cases, Section 1113(f) of the Bankruptcy Code allows grievances and arbitrations to proceed under unrejected collective bargaining agreements. *See* Motion ¶18. The Commonwealth's response, that Section 1113(f) does not apply under PROMESA, *see* Response ¶17, misses the point. The point is that in numerous large, complex Chapter 11 cases where the debtors have unionized workforces, grievances and arbitrations proceed in the ordinary course, with no adverse impact on the debtors or their efforts to reorganize. To the contrary, giving aggrieved employees a chance to be heard and to have their grievances resolved benefits the debtor, by helping maintain labor peace and boosting employee morale and productivity. The same would be true here.

26. In sum, even were the Court to determine that the stay applies to the prepetition grievances and arbitrations, ample cause exists to lift the stay to allow them to proceed.

Dated: March 2, 2018

/s/ *Peter D. DeChiara*
Richard M. Seltzer
Peter D. DeChiara
Hiram M. Arnaud
Cohen, Weiss and Simon LLP
900 Third Avenue, 21st Floor
New York, New York 10022
(212) 356-0216
rseltzer@cwsny.com
pdechiara@cwsny.com
harnaud@cwsny.com

/s/ *Miguel Simonet Sierra*
Miguel Simonet Sierra
USDC # 210101
MONSERRATE SIMONET &
GIERBOLINI
101 San Patricio Ave., Suite 1120
Guaynabo, PR 00968
Tel.: (787) 620-5300
Fax: (787) 620-5305
msimonet@msglawpr.com

Attorneys for Service Employees
International Union and International
Union, United Automobile, Aerospace and
Agricultural Implement Workers of
America (UAW)

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 2nd day of March 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will notify all counsel of record and caused to be mailed or emailed a copy, as provided in the Court-approved Case Management Procedures in this case.

Dated: March 2, 2018                                                             /s/ Hiram M. Arnaud  
                                                                                       HIRAM M. ARNAUD