**Hearing Date:** March 7, 2018, 9:30 a.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 2245, 2249, 2315, 2564, 2585**

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Motion relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

---------------------------------------------------------------x

## REPLY IN FURTHER SUPPORT OF JOINT MOTION OF AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO AND AMERICAN FEDERATION OF TEACHERS, AFL-CIO FOR AN ORDER TO PERMIT THE PROCESSING THROUGH RESOLUTION OF EMPLOYMENT ARBITRATION AND GRIEVANCE PROCEEDINGS

---

[1]      The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

THE COMMONWEALTH'S ILLUSORY "CONSENT" ........................................................3

ARGUMENT ...............................................................................................................................5

    I.      The Motion Is Not Moot ...................................................................................5

    II.     The Title III Stay Does Not Apply To Prepetition Proceedings ............................6

          A.     Section 362(b)(4) Applies to the Prepetition Proceedings and
                Removes Them from the Ambit of the Title III Stay...................................6

          B.     The Steelworkers Trilogy Establishes the Relevant Judicial
                Policy of Avoiding Decisions on the Merits of the Prepetition
                Proceedings and Favors Interpreting Section 362(b)(4) as
                Covering Such Proceedings ........................................................................9

          C.     The Unions' Argument Is Independently Supported by
                PROMESA Section 2165 and Does Not Depend on Section
                1113(f) of the Bankruptcy Code ...............................................................10

    III.    The Sonnax Factors Weigh Heavily In Favor Of Lifting The Stay ......................13

CONCLUSION ...........................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Fin. Oversight & Mgmt. Bd. For Puerto Rico*, No.
    17 BK 3282-LTS (July 12, 2017) ..........................................................................13

*In re Arnott*,
    512 B.R. 744 (Bankr., S.D.N.Y. 2014) ................................................................14

*In re Cole*,
    202 B.R. 356, 362 (Bankr. S.D.N.Y. 1996) .........................................................14

*In re City of Stockton CA*,
    484 B.R. 372 (Bankr. E.D. CA, 2012) .................................................................11

*In re City of Stockton, Cal.*,
    478 B.R. 8 (Bankr. E.D. Cal. 2012) .....................................................................11

*In re Cty. of Orange*,
    179 B.R. 177 (Bankr. C.D. Cal. 1995) .................................................................12

*In re McMullen*,
    386 F.3d 320 (1st Cir. 2004) ............................................................................7, 8

*National Labor Relations Board v. Bildisco & Bildisco*,
    465 U.S. 513 (1984) .............................................................................................12

*Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*,
    922 F.2d 984 (2d Cir. 1990) ................................................................................10

*In re Sonnax Indus., Inc.*,
    907 F.2d 1280 (2d Cir. 1990) ........................................................................13, 14

*In re Taub*,
    413 B.R. 55 (Bankr. E.D.N.Y. 2009) ..................................................................14

*Weaver's Cove Energy, LLC v. Rhode Island Coastal Resources Mgt. Council*,
    589 F.3d 458 (1st Cir. 2009) .................................................................................5

**Statutes**

11 U.S.C. § 101(27) ......................................................................................................6

11 U.S.C. §§ 105 and 362 .............................................................................................1

11 U.S.C. § 904 ...........................................................................................................11

29 U.S.C. § 160(b) ........................................................................................................7

48 U.S.C. § 2165(3) .....................................................................................................11

AFSCME[1] and AFT, through their undersigned counsel, respectfully submit this reply in further support of their motion [ECF No. 2245] (the "Motion") for an Order pursuant to 11 U.S.C. §§ 105 and 362 with respect to the processing through resolution of employment arbitration and grievance proceedings and state as follows:

## PRELIMINARY STATEMENT

1.        In its Response to the Motion [ECF No. 2585] ("Response"), the Commonwealth, represented by AAFAF, announces that it "consents to the Movants' request to lift the Title III Stay to allow the [Prepetition and Postpetition Proceedings] to proceed (but not the collection or enforcement of any monetary award against the Commonwealth)" and therefore "the Motion is moot and need not be decided by the Court."  Response ¶5.  The Unions wish that statement were true, but it is not.

2.        The Motion cannot be moot because the Commonwealth has not been proceeding with the Prepetition Proceedings in the regular course.  For the Motion to be moot, the Commonwealth would already have to have granted the relief sought, which it has not.  Instead, public employees continue to be denied due process in cases alleging they were illegally fired, sexually harassed by their supervisors and disciplined in retaliation for complaining about the harassment, and more.

3.        More fundamentally, and as the Response itself reveals, the Commonwealth is really only prepared to consent to an ambiguous and partial lifting of the purported stay that would leave an unidentified mass of Prepetition Proceedings subject to the Title III Stay whenever the Commonwealth feels like declaring that they are subject to the stay.  In some ways the "consent order" contemplated by the Response would make the currently untenable situation even worse.  Public employees in many Prepetition Proceedings would have no way of knowing

---

[1]        Capitalized terms have the same meanings as ascribed to them in the Motion.

whether their proceedings are going forward until the Commonwealth confirms that it does not deem their particular cases to be stayed.  This is cold comfort to Commonwealth employees who are currently out-of-work and have been awaiting hearings on the illegality of their terminations since before the filing of the Title III prepetition, or who are waiting for an arbitrator to enter an order barring a supervisor from continuing to engage in sexual harassment and to rescind discipline retaliating against them for complaining of the harassment.   And once the Commonwealth does get around to deciding which particular Prepetition Proceedings it would like to be stayed, the Court will then be inundated with an untold number of individual lift stay motions.

4.     The Commonwealth's suggested "consent order" is totally unworkable and fails to meet the needs of the Commonwealth's public servants, all of whom deserve clarity as to their rights.  Moreover, there is no legal basis for an ill-defined partial lifting of the Title III Stay for Prepetition Proceedings because, as shown in the Motion and below, the automatic stay does not even apply here.  And even if the Title III Stay might apply to any Prepetition Proceedings, the undisputed facts demonstrate that overwhelming cause exists to lift the stay.   The Motion therefore should be granted in its entirety.

5.     Alternatively, if the Court concludes that there may not be cause to lift the stay as to certain Prepetition Proceedings, the Court should enter an Order lifting the stay as to Prepetition Proceedings generally, but with well-defined exceptions and procedures to address the Commonwealth's stated concerns about Prepetition Proceedings that might adversely affect any Fiscal Plan or the Title III Cases.  A proposed form of such an Order is annexed as Exhibit A.  An Order in the form of Exhibit A would not conflict with the Commonwealth's stated position in any way, yet has the advantage of giving Commonwealth public servants what their employer has thus far refused them: sufficient clarity and detail to understand which of their

cases will actually proceed in the regular course, rather than a vague promise—accompanied by no workable procedural mechanism—that, in essence, all of them will get their due process rights, except for whoever the Commonwealth decides should not.

### THE COMMONWEALTH'S ILLUSORY "CONSENT"

6.      As the Commonwealth and AAFAF acknowledge, the parties have been negotiating the issues raised on the Motion off and on since last June and have been commenting on successive drafts of a proposed stipulation since last September.  *See* Response ¶¶ 6-9.  The Unions believe that all parties have acted in good faith throughout.[2]  Indeed, those talks have been productive to the point of generating a proposal from the Commonwealth for a partial lifting of the stay that the Commonwealth and AAFAF now characterize in their Response as a "consent" to all relief requested by the Motion.  Unfortunately, however, that "consent" is so hedged and ambiguous as to be illusory.

7.      The Response states that the Commonwealth is only prepared to consent to lift the alleged stay of Prepetition Proceedings "**insofar as such actions do not affect the fiscal plan for the Commonwealth . . . or the Title III cases**."   Response ¶2 (bold in original).  In a lengthy footnote, the Commonwealth then tries to explicate that Delphic caveat by saying:

> Prepetition Actions that may affect the Fiscal Plan include actions that challenge the constitutionality, or where the remedy would impede or be inconsistent with the implementation, of any Commonwealth statutes that are essential for the Fiscal Plan to succeed including, but not limited to [citing five statutes]; all of which left without effect or superseded some or all of the provisions of the collective bargaining agreements of the CBA Counterparties, as well as any Commonwealth statute, regulation, policy, or practice that contravene or are inconsistent with the provisions of such collective bargaining agreements.  Other actions that may also affect the Fiscal Plan include prepetition actions that seek injunctive relief other than reinstatement.

---

[2]      The Unions will not dignify with a detailed reply the Commonwealth's unseemly suggestion (Response ¶10) that the Unions have not negotiated in good faith.  The record cited in the Response itself shows to the contrary.

-3-

*Id.*, n. 3.

8.     This obfuscatory hedging raises a host of questions.   Which Prepetition Proceedings does the Commonwealth or AAFAF think challenge the constitutionality of any of the mentioned statutes?   Presumably the Commonwealth and AAFAF have something in mind, but the Unions know of none.   Which Prepetition Proceedings does the Commonwealth or AAFAF think involve a "remedy [that] would impede or be inconsistent with the implementation" of any of the unidentified statutes, regulations, policies or practices?   What standards or metrics will the Commonwealth and AAFAF use to decide whether a given Prepetition Proceeding somehow "affects" the Fiscal Plan?   When will the Commonwealth even tell employees and the Unions that the Commonwealth deems that any given Prepetition Proceeding remains stayed?   Will it be on the eve of a hearing a CBA Counterparty has been preparing for at great cost for months—as has been happening on the ground at times thus far?

9.     And what are the "other actions" that the Commonwealth and AAFAF deem to "seek injunctive relief other than reinstatement"?   Many types of arbitration or grievance proceedings result in determinations that involve specific performance that could be deemed injunctive relief.   For example, grievance proceedings include sexual harassment claims: do orders that a supervisor cease harassing public employees interfere with the Fiscal Plan?   Do garden variety work rule challenges that may result in "cease and desist" rulings "seek injunctive relief"?   What about challenges to employee transfers?   Proceedings to recalculate seniority? Proceedings to obtain enhanced training opportunities?

10.     The Response answers none of these questions.   As a result, the Commonwealth's supposed "consent" lacks substance.   Even if the Court were to conclude that the Title III Stay applies to Prepetition Proceedings – the Unions contend it does not– and that the Commonwealth

-4-

and AAFAF have legitimate concerns about the lifting of the stay as to certain proceedings, then the Court should enter an Order substantially in the form of Exhibit A.

## ARGUMENT

### I. The Motion Is Not Moot

11.    Contrary to the Commonwealth's wishful pronouncement (Response ¶5), the Motion is far from moot.  The Motion is not moot for the obvious reason that the Commonwealth's illusory "consent" does not in fact consent to all relief requested by the Motion.  It does not consent to the Motion's request (Motion ¶¶ 25-29) for a declaration that the Title III Stay does not apply to Prepetition Proceedings, but instead argues vigorously that the stay does apply.  And it does not consent to the Motion's alternative request for a complete lifting of any stay (Motion ¶¶30-35), but instead proposes a limited and ambiguous order that would allow the Commonwealth to stay any Prepetition Proceeding at its whim whenever it feels that a proceeding may "affect" the Fiscal Plan or involve "injunctive relief other than reinstatement."[3]

12.    A matter is moot only "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Weaver's Cove Energy, LLC v. Rhode Island Coastal Resources Mgt. Council*, 589 F.3d 458, 468 (1st Cir. 2009) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)).  Here, where the Commonwealth's proffered "consent" would leave the applicability and scope of the Title III Stay very much at issue and where the Unions and their members have a vital interest in the resolution of thousands of pending Prepetition Proceedings, this Motion is decidedly un-moot.  Moreover, for the dispute to be

---

[3]    The limited and largely illusory nature of the Commonwealth's "consent" here readily distinguishes this Motion from a prior decision of the Court relied upon by the Commonwealth, *Memorandum Order Granting Urgent Motion for Relief from the Automatic Stay filed by Bernice Beauchamp-Velázquez* [ECF No. 1125].  The Commonwealth consent in the *Beauchamp-Velázquez* matter was a real consent that permitted the litigation to proceed to completion.  The Commonwealth's "consent" here is not real.

moot, the Commonwealth would actually need to be proceeding with the Prepetition Proceedings currently.  It is not.

## II.    The Title III Stay Does Not Apply To Prepetition Proceedings

### A.  *Section 362(b)(4) Applies to the Prepetition Proceedings and Removes Them from the Ambit of the Title III Stay*

13.    The Commonwealth does not dispute—because it cannot—the key logic of the Unions' section 362(b)(4) argument:

- The Prepetition Proceedings are conducted "by" and before the Public Sector Labor Relations Commission (the "Commission");

- The Commission, as an "agency or instrumentality" of the Commonwealth, is a "governmental unit";[4]

- The Prepetition Proceedings are an action to enforce the Commission's police and regulatory power; and

- Therefore, because the Prepetition Proceedings are conducted by a governmental unit in furtherance of its police and regulatory powers, they are exempt from the automatic stay under section 362(b)(4).

14.    Instead, the Commonwealth tries to evade that logic by arguing that section 362(b)(4) is not available because it only applies to actions that a governmental unit has commenced or continued.[5]  However, an opinion by this Court cited in the Commonwealth's own Response shows that this is not true.  *Compare* Response ¶ 24 ("[O]nly a governmental entity, which Movants are not, may utilize the police power exception to the automatic stay, and thus, Movants' claims are not excepted from the Title III Stay under section 362(b)(4).") *with*

---

[4]    The term governmental unit is defined as "the United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States, . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27).

[5]    The Commonwealth also argues, without any authority, that section 362(b)(4) cannot apply where the debtor is a governmental unit.  However, if that were the case, there would be no purpose for including section 362(b)(4) in PROMESA, which always involves debtors that are governmental units.

-6-

*Memorandum Order Denying Motion of PV Properties, Inc. Regarding Automatic Stay (Docket Entry No. 332)*, ECF No. 1765 (the "PV Order") ("The First Circuit has recognized that a governmental proceeding commenced by a private party can come within the section 362(b)(4) exception under certain circumstances[.]") (citing *In re McMullen*, 386 F.3d 320 (1st Cir. 2004)). As the First Circuit recognized in *McMullen*, section 362(d)(4) of the Bankruptcy Code "expressly excepts certain postpetition proceedings from the operation of the stay, including any action brought before a governmental regulatory agency to enforce its police or regulatory powers." 386 F.3d at 324. This includes actions brought by a private party, as long as "the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare," and does not represent "a governmental attempt to recover from property of the debtor estate." *Id.* at 325 (describing the "public policy" and "pecuniary purpose" tests).

15.     Indeed, the Commonwealth's misreading of section 362 is not just incorrect, but also misleading because the Prepetition Proceedings are *not* all "commenced" or "continued" exclusively by private individuals. Prepetition Proceedings involving unfair labor practices, like NLRB unfair labor practice proceedings,[6] are commenced directly *by the Commission*. *See* 1998 Puerto Rico Laws Act 45 (S.B. 813) ("Act 45") § 9.3 ("Procedure to handle allegations of unfair practices . . . If the Commission determines that the person charged is probably incurring unfair practices and is causing serious damages to an affected party, it may issue a provisional cease and desist order and prescribe therein the terms and corrective conditions it deems necessary. Within five (5) days following the issue of such an order, the Commission shall hold a hearing . .

---

[6]     NLRB unfair labor practice inquiries are initiated by individuals who file a charge alleging an unfair labor practice; however, a proceeding is only commenced if, following investigation, the NLRB determines that a formal action should be taken. *See* 29 U.S.C. § 160(b) ("Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint[.]").

.").  Thus, the NLRB cases that the Commonwealth contends are inapplicable are, in fact, directly on point; here, as in the NLRB cases, certain Prepetition proceedings were commenced by a governmental unit and are not subject to the automatic stay.

16.    The Commonwealth's argument likewise does not apply to Prepetition Proceedings involving arbitration and grievances.  Unlike the complaint lodged with the Division of Registration for Real Estate Agents by a creditor at issue in the *McMullen* case, the PREC Proceeding commenced by PV Properties, Inc. at issue in the PV Order, or the Uniform Forfeiture Act lawsuit filed by Cooperativa de Seguros Múltiples de Puerto Rico at issue in the *Memorandum Order Denying Motion of Cooperativa De Seguros Multiples' Motion for Clarification of the Automatic Stay and in the Alternative Relief from the Automatic Stay (Docket Entry No. 1276)*, ECF No. 1765, the Prepetition Proceedings are not "commenced" by either party, but instead are mandated by law as a continuation of a multi-stage dispute resolution process established by Act 45.  *See* Act 45 § 8 ("Every controversy that arises from a collective bargaining agreement negotiated between the parties, *shall be* settled through the mechanism established in the collective bargaining for the adjustment of complaints and grievances.") (emphasis added); *id.* ("The parties *shall have the obligation* to avail themselves of the arbitration service provided by the Labor Relations Commission in the Public Sector.") (emphasis added).  Act 45 does not create a cause of action or a procedure for individuals to commence proceedings; instead, it *requires* them to avail themselves of an arbitration "service" provided by the Commission.  *Id.*  As discussed below, the Commission's role in resolving disputes through this service was created in furtherance of Commonwealth policy to improve the public welfare, and, accordingly, the continuation of such mandatory proceedings fall squarely within the section 362(b)(4) exception.

17.     Even if the Court were to construe the Prepetition Proceedings as being commenced by private parties because they involve a dispute with an individual public employee, the proceedings are nonetheless subject to the section 362(b)(4) exception because they are conducted in furtherance of the public welfare, and not for a pecuniary purpose.  Here, the "public policy of the Government of Puerto Rico regarding the right to organize into unions and bargain collectively in the public service," as embodied and furthered by Act 45, is to "maintain the essential services to the people of Puerto Rico without interruption and the attainment of the general welfare of the citizenry" and to "encourage and promote the solution of disputes through mediation of complaints and arbitration mechanisms," among others.  *Id.* § 2.4, 2.5.  The Prepetition Proceedings manifestly fall within these dual public policy purposes and, for that reason, are subject to the section 362(b)(4) exception to the automatic stay.

### B.     *The Steelworkers Trilogy Establishes the Relevant Judicial Policy of Avoiding Decisions on the Merits of the Prepetition Proceedings and Favors Interpreting Section 362(b)(4) as Covering Such Proceedings*

18.     The Commonwealth's contention that the *Steelworkers Trilogy* is inapposite to the Unions' Motion misses the forest for a tree.  The Commonwealth *is* correct that the Court is being asked to decide whether the Prepetition Proceedings are subject to the automatic stay and not to rule on the merits of claims subject to such proceedings.  However, if the Prepetition Proceedings are subject to the stay and are not resolved before the Commission, then this Court will be required to determine their merits to some extent.  The policy embodied in the *Steelworkers Trilogy* cuts against a ruling that would necessitate this outcome.

19.     Although individuals are excepted from the requirement to file a proof of claim for "obligations due under their respective collective bargaining agreements, including, but not limited to, grievances, or claims arising from their current or former employment relationship with the Commonwealth," *Order (A) Establishing Deadlines and Procedures for Filing Proofs*

*of Claim and (B) Approving Form and Manner of Notice Thereof*, ECF No. 2521, many individuals likely will assert them nonetheless.  Moreover, unions representing individuals with grievance and arbitration claims very well may include those claims in their own master proofs of claim—as a prophylactic benefit to their members although doing so is not required—as was the practice in other cases such as the chapter 9 bankruptcy proceeding for the City of Detroit. Whether filed or not, the claims still exist and will need to be reconciled or litigated at some time.  And unless they are allowed proceed in a different forum, those disputes will inevitably burden this Court.  Furthermore, even in a scenario where the individual claimants seek relief from the stay on a case-by-case basis, the Court could be forced to assess individual claims to determine whether there is interference with the Title III Case (which the Commonwealth has claimed and the Unions dispute).  The *Steelworkers Trilogy* is a useful guidepost for the judicial policy of avoiding involvement with the foregoing issues, and supports an interpretation of section 362(b)(4) that removes the Prepetition Proceedings from the ambit of the Title III Stay.

     **C.**     ***The Unions' Argument Is Independently Supported by PROMESA Section 2165 and Does Not Depend on Section 1113(f) of the Bankruptcy Code***

     20.     Contrary to what the Commonwealth has proposed, Congress' exclusion of section 1113(f) from PROMESA does not provide support for the conclusion that Congress intended the Title III Stay to apply to the Prepetition Proceedings.  Section 1113 was enacted to preserve, with some modifications, the collective bargaining process for private employees that is governed by the National Labor Relations Act.  *See, e.g.*, *Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 990 (2d Cir. 1990) (concluding "from the language of the statute, statements made by the sponsors of the legislation, and the context in which it was enacted, that Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of § 1113.").  Section 1113(f) functions within this

particular context to ensure that debtors continue to adhere to the provisions of their collective bargaining agreements. *See* 11 U.S.C. § 1113(f) (providing that no bankruptcy code provisions "shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of [section 1113].") Given its focus on private employer-employee relations, it is not surprising—and of no significance—that Congress did not incorporate section 1113 into PROMESA, just as it did not incorporate section 1113 into chapter 9 of the Bankruptcy Code, which also pertains to municipal debtors.[7]

21.     Instead, and unlike chapter 11 of the Bankruptcy Code, PROMESA includes section 2165, which provides that, unless the Oversight Board consents, the Court "may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . any of the political or governmental powers of the debtor." 48 U.S.C. § 2165(3). Section 2165, likes its close analog and model, section 904 of the Bankruptcy Code,[8] limits the reach of the automatic stay. *See In re City of Stockton, Cal.*, 478 B.R. 8, 18 (Bankr. E.D. Cal. 2012). Furthermore, section 2165, like section 904, was intended to make "clear that the court may not interfere with the choices a municipality makes as to what services and benefits it will provide to its inhabitants." *Id.* at 19–20 (quoting H.R.Rep. No. 95–595, at 398).[9]

22.     Here, the services and benefits that the Commonwealth has decided to provide its inhabitants include, by means of Act 45, mandatory grievance and arbitration procedures applicable to its public employees, as well as a commission enabled to commence proceedings

---

[7]        This is why the Unions made no mention of section 1113 in their Motion. It is irrelevant.

[8]        Section 904 provides that "[n]otwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . any of the political or governmental powers of the debtor . . . ." 11 U.S.C. § 904.

[9]        Because PROMESA section 2165 was modeled on and closely mirrors section 904 of the Bankruptcy Code, court decisions and legislative history regarding the contours of section 904 are instructive of the congressional intentions behind section 2165.

concerning unfair labor practices.  *See, e.g.*, Act 45 § 8 (referring to the arbitration and grievance proceedings overseen by the Commission as a "service"); § 9 (provisions regarding unfair labor practices).  Section 2165 carves out the services provided under Act 45 from the automatic stay – a point that AAFAF and the Commonwealth miss when they fail to respond to the Unions' reference to section 2165 anywhere in their Response, and instead point to other, irrelevant statutes (*i.e.*, section 1113).

23.    Moreover, even if *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513 (1984), is applicable precedent given that section 1113 was not incorporated in PROMESA (another point touted by the Commonwealth), that would not excuse the Commonwealth from complying with its own laws, including Act 45.  In an analogous decision from a chapter 9 bankruptcy case, the bankruptcy court found that, notwithstanding *Bildisco*, because section 904 preserved state control over municipalities, a municipal debtor could not modify its public union grievance procedures unless it did so in accordance with existing applicable law.  *See In re Cty. of Orange*, 179 B.R. 177, 184 (Bankr. C.D. Cal. 1995) ("In Chapter 9, *Bildisco* does not excuse attempts by the County to comply with the requirements of California law.  . . . In this case, the abrogation of . . . grievance procedures [by the County] was not appropriate under the circumstances [given the prevailing requirements under California law to do so].").  Here, the Commonwealth goes one step further than the debtor in *Cty. of Orange* and attempts to use the automatic stay as an excuse from complying with its own existing laws, and to instead alter existing laws regarding what services and benefits it must provide to its constituents, without ever obtaining a change in such laws from the Puerto Rico legislature.  This is the precise outcome that PROMESA section 2165 is intended to avoid, and shows exactly why the stay does not apply to Act 45.  Instead, the only valid way to alter the requirements of Act 45 is through its repeal or amendment in accordance with Commonwealth law.

-12-

### III.    The *Sonnax* Factors Weigh Heavily In Favor Of Lifting The Stay

24.    The Commonwealth's analysis of the various factors set forth in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) ("*Sonnax* factors") is fundamentally flawed. Review of the relevant *Sonnax* factors confirms that they weigh heavily in favor of lifting any stay of the Prepetition Proceedings.[10]

25.    **Factor 1: Partial or Complete Resolution of Claims.**  Citing non-controlling cases from other jurisdictions, the Commonwealth insists that the first Sonnax factor "focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case." Response ¶ 27.  This Court, however, has rejected such a restricted reading of the first factor and has concluded that this factor in fact weighs in favor of lifting the stay of a labor arbitration where allowing the arbitration to proceed would resolve the merits of a single employee's claims against the Commonwealth.  *Fin. Oversight & Mgmt. Bd. For Puerto Rico*, No. 17 BK 3282-LTS (July 12, 2017) [ECF No. 620].  Here, the Commonwealth cannot dispute that lifting the Title III Stay will permit the resolution of thousands of pending Prepetition Proceedings, liquidate the monetary claims in those proceedings, and free this Court of a corresponding number of potential individual lift stay motions.

26.    **Factor 2: Lack of Interference With the Title III Case.**  As this Court has already held, lifting the automatic stay to allow rendering of a discharged employee's arbitration award "would not interfere materially, if at all, with the Title III [C]ase."  *Id.*  The Response offers nothing of substance to alter that conclusion.  Instead, the Commonwealth merely makes

---

[10]     The Unions have identified *Sonnax* factors 1, 2, 4, 7, 10 and 12 as relevant here.  Motion ¶32.  The Commonwealth has added *Sonnax* factor 6 (whether the action involves third parties) as a relevant factor weighing in favor of maintaining the automatic stay.  Response ¶33.  While the Commonwealth is correct that the debtor is a primary party to the Prepetition Proceedings, it is also correct in its assertion that "no one *Sonnax* factor is dispositive; instead, courts 'engage in an equitable, case-by-case balancing of the various harms at stake'." *Id.* ¶29, quoting *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F.Supp. 3d 508, 529 n.12 (D.P.R. 2016)).  Here, the balancing of the various harms leans heavily in favor of lifting the stay, despite the absence of a third party.

conclusory statements that proceeding with the Prepetition Proceedings could somehow interfere with the Fiscal Plan and refers to a list of laws that purportedly might be affected, with  no further detail, explanation or argument.  Response ¶28.  This is wholly inadequate to counter the plain fact that the ordinary course resolution of pending labor arbitrations and grievances—proceedings that must be resolved somewhere at some point—will not adversely affect any Fiscal Plan or administration of the Title III Case.

27.     **Factor 4. Specialized Tribunal.**  The Commonwealth does not dispute that this factor weighs in favor of lifting the stay.  *See* Response ¶29.  The Commission is undoubtedly a specialized tribunal uniquely well suited to determine the Prepetition Proceedings.

28.     **Factor 7. Prejudice to Other Creditors.**  Allowing the Prepetition Proceedings to proceed without monetary award cannot possibly prejudice other creditors.  In *In re Taub*, 55 (Bankr, E.D.N.Y. 2009), a case upon which the Commonwealth relies, the court expressly noted that the risk of prejudice can be mitigated by limiting the scope of stay relief, as the Unions have requested here.  Citing *In re Cole*, 202 B.R. 356, 362 (Bankr. S.D.N.Y. 1996), the court held "[t]he bankruptcy court can limit stay relief to the liquidation amount of the Movant's unsecured claim, and require her to return to the bankruptcy court to enforce her judgment through the claims allowance process."  *Taub*, 413 B.R., at 65.  This is precisely what the Unions are requesting here.  Indeed, the lack of prejudice to other creditors is confirmed by the absence of any opposition to the motion by *any* of the creditors.  *See, In re Arnott*, 512 B.R. 744, 755 (Bankr., S.D.N.Y. 2014) (finding the second and seventh *Sonnax* factors leaned in favor of lifting the stay where neither the chapter 7 trustee nor the creditors objected to the motion).

29.     The Commonwealth's reliance on *In re City of Stockton CA*, 484 B.R. 372 (Bankr. E.D. CA, 2012), is misplaced.  *Stockton* involved a request to lift a stay for a proceeding in which the City Manager and Deputy City Manager were named as individual defendants.  As

-14-

a result of their status as named parties, the court found that the separate action would consume the time and attention of key city officials and impose expense on the municipality to the detriment of the chapter 9 bankruptcy case. *Id.*, at 378-79.  There are no such concerns here.

30.     **Factor 10: Judicial Economy.**  Again, the Commonwealth has misinterpreted the applicable standard.  What matters is not, as the Commonwealth suggests, whether lifting the stay will result in the "expeditious resolution" of all Prepetition Proceedings (Response ¶ 31), but whether lifting the stay will permit the resolution of these matters in non-judicial proceedings and without further burdening the Title III Case.  Lifting the stay clearly serves to preserve the resources of *this* Court.

31.     **Factor 12: Impact on the Parties and Balance of Harms.**  As stated in the Motion, failure to move ahead with the Prepetition Proceedings will leave the thousands of employees without any recourse to address workplace injustices.  For many, the harm would be irreparable, particularly in light of the current circumstances in Puerto Rico.   The Commonwealth baldly asserts that lifting the stay would "impact the capacity of the Commonwealth to comply with the Fiscal Plan" (Response ¶ 32), but it fails to explain how or why lifting the stay would cause such an impact.  Such conclusory assertions are insufficient to demonstrate an absence of cause for lifting the stay.

## CONCLUSION

For all the forgoing reasons, the Unions respectfully request that the Court grant this Motion in all respects and enter the Proposed Order or, in the alternative, enter an Order substantially in the form of Exhibit A to permit a partial lifting of any stay of Prepetition Proceedings.

-15-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2d day of March, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System, which will notify all counsel of record

and caused to be mailed or emailed a copy, as provided in the Court-approved Case Management

Procedures in this case.


Dated: March 2, 2018


*/s/José Luis Barrios-Ramos*
José Luis Barrios-Ramos

Dated:  March 2, 2018

_/s/ Curtis C. Mechling_____
Curtis C. Mechling (USDC CM5957)
Sherry J. Millman (USDC CM6105)
Stroock & Stroock & Lavan LLP
180 Maiden Lane, New York, NY 10038
(212) 806-5434
cmechling@stroock.com
smillman@stroock.com

and

_/s/ José Luis Barrios-Ramos_____
José Luis Barrios-Ramos (USDC 223611)
McLeary Ave., Suite #303
San Juan, Puerto Rico  00936-8006
(787) 593-6641
Barrios.jl@outlook.com

_For American Federation of Teachers,
AFL-CIO, as authorized agent for the
Asociación de Maestros de Puerto
Rico-Local Sindical_

_/s/ Sharon L. Levine_____
Sharon L. Levine
Dipesh Patel
Saul Ewing LLP
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102
(973) 286-6713
slevine@saul.com

and

Judith Rivlin
Teague P. Paterson
Matthew S. Blumin
American Federation of State, County and
Municipal Employees
1101 17th Street NW, Suite 900
Washington, DC 20011
(202) 775-5900

_For the American Federation of State,
County and Municipal Employees_

## Exhibit A

**Revised Proposed Order**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

-------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Debtor. | |

-------------------------------------------------------------x

**[PROPOSED] ORDER TO PERMIT THE PROCESSING THROUGH RESOLUTION OF EMPLOYMENT ARBITRATION AND GRIEVANCE PROCEEDINGS**

Upon the *Joint Motion of American Federation of State, County and Municipal Employees, AFL-CIO and American Federation of Teachers, AFL-CIO, for an Order to Permit the Processing Through Resolution of Employment Arbitration and Grievance Proceedings*, dated March [__], 2018 (the "Motion"), and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue in this district is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and other

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

parties in interest; and the Court having found that the American Federation of State, County and Municipal Employees, AFL-CIO and the American Federation of Teachers, AFL-CIO (collectively, the "Unions" or the "CBA Counterparties") provided adequate and appropriate notice of the Motion and the relief requested therein under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard statements in support of and in opposition to the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief granted herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      *Prepetition Proceedings.*  Subject to the provisions of this Order, matters arising from prepetition conduct that have been or may be brought under the grievance and arbitration procedures in collective bargaining agreements between the Commonwealth of Puerto Rico (the "Commonwealth") and the CBA Counterparties, or under applicable statutes, including but not limited to Act 45-1998, Law 184-2004, Law 32-1972 and Law 8-2017 (collectively, "Prepetition Proceedings"), may proceed in the ordinary course through the grievance handling process and to arbitration, or similar administrative process in the case of actions under applicable statutes, through final resolution, including any appeal rights parties may have (a "Disposition") whether it is an award (an "Award"), an administrative decision (a "Decision"), a judicial decision (a "Judgment"), or a settlement.

3.      *Limited Interim Stay.*  If the Commonwealth believes that a Prepetition Proceeding affects the fiscal plan for the Commonwealth (the "Fiscal Plan") and wishes for it to

be stayed, no later than twelve days after a notice scheduling a hearing in the Prepetition Proceeding is sent, the Commonwealth, through AAFAF by its counsel, shall, after meeting and conferring with the appropriate CBA Counterparty, send a notice (the "Stay Notice") to the CBA Counterparty, by its counsel, identifying the Prepetition Proceeding and describing the manner in which it believes the Fiscal Plan is affected.  Upon receipt of the Stay Notice, the applicable Prepetition Proceeding will be temporarily stayed for a period of ten calendar days (the "Interim Stay Period").  If, during the Interim Stay Period, the AAFAF files a motion (a "Stay Extension Motion") with the Court seeking to extend the stay of the applicable Prepetition Proceeding beyond the Interim Stay Period, the applicable Prepetition Proceeding will be stayed until the Court decides the Stay Extension Motion.  If the AAFAF does not file a Stay Extension Motion within the Interim Stay Period, then the temporary stay will be lifted upon the conclusion of the Interim Stay Period and the applicable Prepetition Proceeding may continue in the ordinary course under paragraph 2 of this Order.  Notwithstanding the foregoing, any Prepetition Proceeding solely involving disciplinary discharge (including, but not limited, any for allegedly unsatisfactory performance) or other types of discipline of a Commonwealth employee shall not be stayed by this Order.

4.      *Liquidated Amounts.*   To the extent that any Disposition of a Prepetition Proceeding includes a liquidated damage claim amount (a "Liquidated Amount"), such Liquidated Amount shall not be collected from the Commonwealth but shall be treated as a liquidated claim under any plan of adjustment for the Commonwealth (a "Plan") and/or any cure process established under such Plan or under section 365(b) of the Bankruptcy Code, except to the extent that the Commonwealth chooses to pay or agree to a payment arrangement for such Liquidated Amount, subject to the Commonwealth's and the CBA Counterparties' rights regarding the classification and treatment of any such liquidated claim.  Absent agreement of the

Commonwealth to make such payment or payment arrangement (which shall be reflected in a communication from counsel for the Oversight Board and AAFAF), no steps shall be taken by the CBA Counterparties, any individual union, any affiliate local union, any grievant, or any member of any union to enforce any liquidated amount except through the claims resolution process to be undertaken in the Commonwealth's case under Title III of PROMESA.

5.      *Equitable Relief.*  To the extent that a Disposition of a Prepetition Proceeding provides for equitable relief, including reinstatement or reclassification, neither the Disposition nor the equitable relief contemplated thereby shall be subject to any challenge based on the application of the Title III Stay.  Any prospective cost adjustments associated with honoring a Disposition that provides for equitable relief (such as, for example and without limitation, reinstatement of an employee, providing better supplies, or reclassification to a higher pay code) shall not be subject to any challenge based on the Title III Stay and shall not be subject to any Liquidated Claim/Cure Process.

6.      *Postpetition Proceedings.*  Matters arising from postpetition conduct that may be brought under the grievance and arbitration procedures in collective bargaining agreements between the Commonwealth and the CBA Counterparties, or under applicable statutes, including but not limited to Law 184-2004, Law 32-1972 and Law 8-2017 (collectively, "Postpetition Proceedings") may proceed in the ordinary course through the grievance handling process and to arbitration, or similar administrative process in the case of actions under applicable statutes, through final resolution, including any appeal rights parties may have, whether it is an award, a decision, a judgment, or a settlement

7.      *Preservation of Rights.*  This Order shall be without prejudice to any rights and defenses, including any procedural or substantive arbitrability defense and the right to challenge

-4-

the jurisdiction of any matter, that the Commonwealth and CBA Counterparties may have in any Prepetition Proceeding.

8.      Immediately upon entry by the Court of this Order, (i) the Unions and the Commonwealth are authorized to take all actions necessary or appropriate to effectuate the relief granted herein, and (ii) this Order shall be binding on all entities having received prior notice of the Motion.

9.      The Court shall retain exclusive jurisdiction to hear and determine any and all disputes related to or arising from the implementation, interpretation, and enforcement of this Order.

SO ORDERED

Dated: [_____], 2018

_____

LAURA TAYLOR SWAIN
United States District Judge
