# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>                              Debtors. | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## RESERVATION OF RIGHTS AND JOINDER OF THE QTCB NOTEHOLDER GROUP TO MOTION OF THE PBA FUNDS FOR THE PAYMENT OF RENT

1. The QTCB Noteholder Group[2] hereby joins in the *Motion of the PBA Funds for the Payment of Rent* [Dkt. No. 2492 in Case No. 17-3283-LTS] (the "Motion").[3]

### Background

2. On May 3, 2017, the Oversight Board, on behalf of the Commonwealth, commenced the Commonwealth's Title III case pursuant to sections 104(j) and 206 of the PROMESA. On May 5, 2017, the Oversight Board, on behalf of COFINA, commenced COFINA's Title III case pursuant to sections 104(j) and 206 of the PROMESA. On May 21,

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

[2] The QTCB Noteholder Group shall have the same meaning as set forth in Notice of Appearance and Request for Notice [Dkt. No. 134] and Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019 [Dkt. No. 1053].

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2017, the Oversight Board, on behalf of ERS and HTA, commenced the ERS and HTA Title III cases pursuant to sections 104(j) and 206 of the PROMESA. On July 2, 2017, the Oversight Board, on behalf of PREPA, commenced PREPA's Title III case pursuant to sections 104(j) and 206 of the PROMESA.

3. The Commonwealth has guaranteed approximately $5.7 billion of bonds issued by other agencies, instrumentalities and public corporations, including approximately $4 billion of bonds issued by PBA, including approximately $877 million in principal amount of those certain Qualified School Construction Bonds (the "QSCBs") and Qualified Zone Academy Bonds (the "QZABs" and, together with the QSCBs, the "QTCBs"). PBA is not currently a debtor under Title III of PROMESA, but the Oversight Board has designated it a "Covered Entity" under PROMESA and the Commonwealth Fiscal Plan. PBA and the Commonwealth have defaulted on their payment obligations to PBA bondholders, including the QTCBs.

4. PBA is a body corporate and politic with corporate franchise and perpetual existence as a corporation, created and established by the Legislature of Puerto Rico on June 19, 1958, as an instrumentality of the Commonwealth, exercising public and essential functions of the Puerto Rico government. P.R. Act No. 56 of June 19, 1958, as amended; 22 L.P.R.A. §§ 902, 906. PBA has all corporate powers conferred on corporations under Puerto Rico law, with authority to exercise such powers within Puerto Rico and abroad to the same extent that a natural person would or may do so. 22 L.P.R.A. § 906(a)(1), (22).

5. PBA was created 60 years ago to direct the ongoing preparation of plans and designs of buildings for schools, health facilities, offices, headquarters, courts, warehouses, workshops and any other physical facilities related to government services, as well as buildings or developments in those localities and in such manner as PBA may deem necessary and

desirable and which seek to contribute to the public purpose of assisting the different departments, agencies, instrumentalities, authorities, public corporations and municipalities of the Commonwealth to the performance of their governmental functions. *See* 22 L.P.R.A. § 903.

6. Among its many powers enumerated by statute, PBA has authority to:

- Direct the preparation of plans and designs of buildings for schools, health facilities, offices, headquarters, courts, warehouses, workshops, and any other physical facilities related to government services. *See id.*

- Own, finance, acquire, dispose of, lease, sublease, sell, transfer, design, develop, build, operate, maintain, repair, replace, administer, market, improve, and promote, by itself or by means of contracts with third parties, the use of the space in its facilities. *See id.*

- Completely control and supervise all of its properties and activities, and the investment of its funds, including determining expenses, suing and defending lawsuits, executing contracts, and acquiring property—including the power to acquire property by eminent domain. *See id.* § 906(a)(3)-(6).

- Assign or lease properties, or exchange any property thus acquired or any interest thereon. *See id.* § 906(a)(8).

- Create subsidiary corporations or other entities as necessary, and to transfer any of its properties or powers to such subsidiary, other than its power of eminent domain and subject to certain employee rights. *See id.* § 906(a)(21).

- Borrow money, make and issue bonds, and guarantee the payment of its bonds and any and all of its other obligations by pledge, mortgage, assignment or trust indenture of properties of PBA and on all or any of its revenues, income, fees, receipts and interest in contracts, leases or subleases. The principal and interest payable on such bonds may be payable in whole or in part from its revenues. *See id.* § 906(a)(10), (11).

7. PBA is directed by a seven-member Board of Governors consisting of: (i) the Secretary of the Department of Transportation and Public Works; (ii) the President of the Government Development Bank for Puerto Rico; (iii) the Secretary of the Department of Education; (iv) an attorney licensed to practice the profession in Puerto Rico; (v) a person experienced in financing; (vi) a person experienced in design, construction and/or land development; and (vii) a representative of the labor sector. *See id.* § 904. Although the board

members are appointed by the Governor of Puerto Rico, "the Governor has no other direct voice in the decision-making process of the board. Further, the board members of PBA are insulated from partisan or personal pressures as there is nothing in the statute providing for their early removal." *Soto Padro v. Pub. Bldg. Auth.*, 747 F. Supp. 2d 319, 327 (D.P.R. 2010), *aff'd sub nom Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1 (1st Cir. 2012).

8. In addition to the Board of Directors, PBA's organizational structure includes the following components: Comptroller's Office, Conservation and Maintenance, Executive Director's Office, General Administration, the Communications Department, Human Resources and Labor Relations, Internal Audit Office, Internal Security Office, Legal Services, Office of Acquisition and Procurement of Goods and Services, Project Development, the Bids Division, and Technology and Information.[4]

9. PBA has approximately one thousand employees with annual payroll obligations that have ranged from $79,162,000 to $96,828,000. PBA manages 418 schools, 106 police/fire and other emergency service stations, 55 governmental centers and 36 judicial and court buildings as well as numerous hospitals, jails and parking lots.[5]

10. To support its operations, PBA has issued bonds for decades, including approximately $4.0 billion in principal amount of which remain outstanding. As explained in more detail below, these bonds are repaid primarily from rental payments from lessees of the buildings that PBA builds and manages, passing the cost of such building and management on to

---

[4] Divisions and offices are generally overseen by a director of such division, including the Executive Director (Dr. Amilcar González Ortiz), the Deputy Director, the Director of Human Resources and Labor Relations, the Director or Project and Development, the Director of Conservation and Maintenance, the Director of Legal Services, the Director of the Comptroller's Office, Director of Internal Audits, Director of Internal Security, Director of Technology and Information, the Director of Management, and the Director of Efficiency and Quality. These divisions serve the entire island of Puerto Rico, which PBA divides for administrative purposes into nine regions: Aguadilla, Arecibo, Bayamón, Caguas, Carolina, Guayama, Humacao, Mayaguez and Ponce.

[5] *See, e.g.,* https://www2.pr.gov/presupuestos/Budget_2012_2013/Aprobado2013Ingles/162.htm (last visited Sept. 11, 2017).

the various departments, instrumentalities and municipalities who make up the majority of lessees.

11. PBA leases and subleases its portfolio of real estate assets primarily to various departments, agencies, instrumentalities and municipalities of the Commonwealth. The rental payments from these leases are used to pay principal and interest on bonds issued by PBA, including the QTCBs. The Commonwealth has guaranteed the payment obligations under the vast majority of the PBA Leases. 22 L.P.R.A. § 916. In 2016, the Commonwealth ceased making direct and/or guaranteed rental payments under the PBA Leases. As a result, PBA and the Commonwealth have failed to fully satisfy their interest payment obligations with respect to the PBA bonds (including the QTCBs) since late 2016. [6]

12. If the Commonwealth fails to cure the breach of the PBA Lease payment obligations, PBA and its stakeholders will have substantial claims against the Commonwealth.

## Discussion

13. The QTCB Noteholder Group, by and through its attorneys, Bracewell LLP and Correa Acevedo & Abesada Law Offices, PSC, joins in the Motion of the PBA Funds for the Payment of Rent [Dkt. No. 2501].

14. The QTCB Noteholder Group, and other similarly situated bondholders, are third party beneficiaries under the PBA Leases. For example, all four of the leases attached to the *Preliminary Objection of the Official Committee of Unsecured Creditors to Motion of PBA Funds for Payment of Rent Dated February 13, 2018* [Dkt. No. 2586] (the "Committee Objection" and such leases attached thereto, the "Committee Exhibit Leases") include the following (or substantially similar) language:

---

[6] PBA and the Commonwealth have defaulted on a portion of their QTCB interest payment obligations five times, including the interest payments due on October 1, 2016, January 1, 2017, April 1, 2017, July 1, 2017, October 1, 2017, and January 1, 2018.

> Benefits. This Lease Contract shall inure to the benefit of and be binding on the parties hereto, their successors and assigns, ***and shall also inure to the benefit of the holders of bonds issued by [PBA] under the Bond Resolution*** [for the financing of Office Building No. 2030 and other public office buildings], as their respective interest may appear. (emphasis added).[7]

The exclusion of third party beneficiaries such as the QTCB Noteholder Group from consultation regarding the PBA Leases and enforcement thereof, impermissibly jeopardizes the rights and benefits of the QTCB Noteholder Group under the PBA Leases.

15. Lack of consultation with creditors and transparency regarding the Debtors' compliance with the obligations of the PBA Leases is indicative of the risks facing PBA and its creditors: that PBA's statutory rights as lessor under section 365(d) of the Bankruptcy Code might be compromised in an "agreement" reached solely between related parties on terms that no third party lessor (or third party beneficiary) would ever accept—no matter how the leases are characterized.

16. The Motion has been resolved in part by stipulation. The Motion sought to confirm PBA had not waived its rights under the PBA Leases or section 365 of the Bankruptcy Code by failing to enforce such rights in the Cases or under the PBA leases. The *Objection of Financial Oversight and Management Board to Motion of PBA Funds for the Payment of Rent* [Dkt. No. 2587] (the "<u>FOMB Objection</u>" and, together with the Committee Objection, the "<u>Objections</u>") stipulates that "PBA does not waive any of its rights and will not be prejudiced under a plan of adjustment or otherwise" by failing to collect postpetition rent or pursue other remedies against the Debtors. FOMB Objection § 32.

---

[7] *See* Decl. of Nicholas A. Bassett in Supp. of Prelim. Objection of Official Committee of Unsecured Creditors to Mot. of PBA Funds for Payment of Rent dated Feb. 13, 2018 [ECF No. 2586-1], Lease Contract dated Oct. 1, 1992 (Ex. 1), § 7.05; Lease Contract dated Aug. 1, 2009 (Ex. 2), § 6.05; Master Sublease Contract dated Aug. 24, 2011 (Ex. 3), § 6.04; and Master Sublease Contract dated Dec. 22, 2011 (Ex. 4), § 6.04.

17. The Oversight Board argues that: (i) the PBA Funds lack "standing to step into the shoes of PBA and assert PBA's rights derivatively under purported leases with the Debtors" (FOMB Objection ¶ 2); (ii) the PBA Funds fail to cite "any provision of a PBA Lease indicating the parties intended to grant the PBA Funds the right to enforce the Debtors' alleged rent obligations under the PBA Leases" (*Id.* ¶ 3); and (iii) "the PBA Funds lack prudential standing because mere economic beneficiaries are not within the intended class of parties entitled to assert rights under section 365" (*Id.* ¶ 4). The Oversight Board further suggests that the PBA Leases may not be "true leases" for purposes of section 365. And the Committee Objection insinuates that certain PBA bonds could have been issued in violation of the Puerto Rico Constitution's debt limitation provision based upon a baseless conjecture that would disregard the separateness of PBA and the Commonwealth (¶¶ 5, 28).

18. While it is true that the PBA Funds did not attach a PBA Lease to the Motion, the four Committee Exhibit Leases are part of the record, and they each clearly provide that such lease "shall inure to the benefit of and be binding on the parties hereto, their successors and assigns ***and shall also inure to the benefit of the holders of bonds issued under the Bond Resolution***." *See supra* note 9 (emphasis added).

19. The Oversight Board admits that third party beneficiaries may demand the fulfillment of any stipulation in a contract in their favor and that express contractual provisions like these create third party beneficiary rights under Puerto Rico law. (*See* FOMB Objection ¶¶ 26, 27 and 29 n.14). The contracting parties to the PBA Leases did not merely *consider* the interests of a third party and grant some direct or indirect *economic* benefit. *See* FOMB Objection ¶ 27 (without providing any evidence that the third party beneficiary language in the Committee Exhibit Leases is intended merely to confer an economic benefit). To the contrary, as

demonstrated by the Committee Exhibit Leases, the contracting parties expressly provided third party beneficiary rights with respect to such PBA Leases. *See supra* note 9. Thus, the PBA Funds, the QTCB Noteholder Group and other similarly situated PBA bondholders, are clearly third party beneficiaries to the Committee Exhibit Leases and the various standing objections are meritless.

20. Questions of whether the PBA Leases are "true leases" and/or whether there has been a constitutional debt limit violation are procedurally improper presented in the context of the Motion. Leases are leases until proven otherwise by way of claims objection or other appropriate challenge.

21. Furthermore, the Committee's suggestion that PBA should be disregarded in order to support a constitutional debt limitation claim is meritless. PBA has been in existence for 60 years with real assets, a board or directors, 1,000 employees and extensive business operations. There is absolutely no support for the Committee's suggestion that PBA was created 60 years ago as a sham shell entity to evade the debt limitation of the Puerto Rico Constitution.[8]

### Conclusion

22. The QTCB Noteholder Group expressly reserves any and all (direct or derivative) claims and rights of the QTCB Noteholder Group to object, intervene, act, or bring or make any motion, request, or argument regarding the Motion, the relief requested therein (including its right to request the same or similar relief), and any and all of the issues raised in any objection, reply or other response or joinder thereto.

---

[8] In addition, the Puerto Rico Constitution clearly distinguishes between—and separately calculates and limits—such debt that is issued *directly* by the Commonwealth and such debt that is *guaranteed* by the Commonwealth, establishing independent calculations for each—dispositive constitutional language ignored in the Committee Objection. *See* P.R. CONST. art. VI, § 2.

Dated: March 5, 2018

Hartford, Connecticut

**BRACEWELL LLP**

*/s/ Kurt A. Mayr*
Kurt A. Mayr (*pro hac vice*)
David L. Lawton (*pro hac vice*)
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 256-8534
Email: kurt.mayr@bracewell.com
Email: david.lawton@bracewell.com

*Counsel for the QTCB Noteholder Group*

**CORREA ACEVEDO & ABESADA LAW OFFICES, P.S.C.**
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R. 00968
Tel. (787) 273-8300; Fax (787) 273-8379

*/s/ Roberto Abesada-Agüet*
USDC-PR No. 216706
E-Mail: ra@calopsc.com

*/s/ Sergio E. Criado*
Sergio E. Criado
USDC-PR No. 226307
E-Mail: scriado@calopsc.com

*Co-Counsel for the QTCB Noteholder Group*

**I HEREBY CERTIFY** that on March 5, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

                 */s/ Kurt A. Mayr*
                 Kurt A. Mayr
                 Bracewell LLP
                 City Place I, 34th Floor
                 185 Asylum Street
                 Hartford, CT 06103
                 Tel: (860) 254-8534
                 Email: kurt.mayr@bracewell.com

                 */s/ Roberto Abesada- Agüet*
                 Roberto Abesada-Agüet

                 */s/ Sergio E. Criado*
                 Sergio E. Criado

                 Centro Internacional de Mercadeo II
                 #90 Carr. 165 Suite 407
                 Guaynabo, Puerto Rico 00968-8064
                 ra@calopsc.com
                 (787) 273- 8300