```
 1                    UNITED STATES BANKRUPTCY COURT

 2                       DISTRICT OF PUERTO RICO

 3
      In Re:                    )          Docket No. 3:17-BK-3283(LTS)
 4                              )
                                )          Title III
 5    The Financial Oversight and )
      Management Board for        )
 6    Puerto Rico,              )          (Jointly Administered)
                                )
 7    as representative of      )
                                )
 8    The Commonwealth of       )
      Puerto Rico, et al.,      )          March 7, 2018
 9                              )
                    Debtors.    )
10
      _____
11

12                          OMNIBUS HEARING

13     BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

14                  UNITED STATES DISTRICT COURT JUDGE

15    _____

16

17    PRESENT IN THE OMNIBUS HEARING:

18    The Honorable U.S. Magistrate Judge Judith Dein

19
      APPEARANCES:
20

21    For The Commonwealth
      of Puerto Rico, et al.:  Mr. Martin Bienenstock, PHV
22                             Mr. Paul V. Possinger, PHV
                               Mr. Ehud Barak, PHV
23

24    For Official Committee
      of Unsecured Creditors:  Mr. Luc Despins, PHV
25
```

```
 1    APPEARANCES, Continued:

 2    For Puerto Rico Fiscal
      Agency and Financial
 3    Advisory Authority:        Mr. Peter Friedman, PHV
                                 Ms. Diana M. Perez, PHV
 4

 5    For Mitsubishi Motor
      Sales of the Caribbean,
 6    Inc.:                      Mr. Carlos Grovas Porrata, Esq.

 7    Fee Examiner:              Mr. Brady Williamson, PHV
                                 Ms. Katherine Stadler, PHV
 8
      For the U.S. Trustee:      Ms. Monsita Lecaroz Arribas, Esq.
 9
      For PBA Funds:             Mr. James M. Peck, PHV
10
      For American Federation
11    of Teachers:               Mr. Jose Luis Barrios Ramos, Esq.

12    For American Federation
      of State, County and
13    Municipal Employees:       Ms. Sharon L. Levine, PHV

14    For QTCB Noteholder
      Group:                     Mr. Kurt A. Mayr, PHV
15
      For International
16    Union:                     Mr. Peter D. DeChiara, PHV

17    For Ambac Assurance
      Corp.:                     Ms. Atara Miller, PHV
18

19

20

21

22

23

24
      Proceedings recorded by stenography.  Transcript produced by
25    CAT.
```

```
 1                              I N D E X
 2    WITNESSES:                                          PAGE
 3          None offered.
 4
 5    EXHIBITS:
 6          None offered.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1 ║                                    San Juan, Puerto Rico
 2 ║                                    March 7, 2018
 3 ║                                    At or about 9:30 AM
 4 ║                          *      *      *
 5 ║        THE COURT:  And so again, buenos dias.  Good morning.
 6 ║ Welcome to counsel, parties at interest, members of the
 7 ║ public, the press, and those observing here, and also
 8 ║ telephonic participants.  It is, as always, good to be back in
 9 ║ San Juan, especially when it's snowing in New York.
10 ║        As many of you know, the United States District Court
11 ║ for the Southern District of New York is closed today due to
12 ║ the weather in New York.  Because of this unusual situation,
13 ║ the Court has granted the attorneys who had planned to speak
14 ║ from the New York courtroom live telephonic participation
15 ║ lines.
16 ║        And so I'd ask those attorneys who have live lines to
17 ║ mute their telephones.  If an attorney wishes to speak, the
18 ║ attorney should notify the Court by raising their virtual hand
19 ║ on Court Solutions.
20 ║        And I remind you that consistent with court and
21 ║ judicial conference policies and the Orders that have been
22 ║ issued, there is to be no use of any electronic devices in the
23 ║ courtroom to communicate with any person, source, or outside
24 ║ repository of information.  And no use of any devices to
25 ║ record any part of the proceedings by any observer or
```

1  participant.

2          And so the electronic devices, if you have them, must

3  be turned off unless you're using it to take notes or refer to

4  notes or documents already loaded on the device.  And all of

5  the audible signals have to be turned off.

6          And so with that, I would ask Mr. Bienenstock to

7  begin with his status report.

8          MR. BIENENSTOCK:  Thank you, Your Honor.  Good

9  morning.

10          THE COURT:  Good morning.

11          MR. BIENENSTOCK:  Martin Bienenstock with Proskauer

12  Rose for the Financial Oversight and Management Board, for

13  itself and as representative of the Title III debtors.

14          Your Honor, the status report this morning is in

15  respect to the financing situation at PREPA, and the factual

16  information that I'll be reporting is based on information

17  I've received from PREPA as of last night.  And I guess it's

18  more good than bad.

19          Had this hearing been earlier, I would have told the

20  Court that there is a probability that PREPA would file a

21  motion by the end of this month, probably by about March 28,

22  seeking approval of an additional 250 million dollars of

23  financing, probably framed as a refinancing of the entire

24  debt.  So it would be 550 million, with 300 million

25  refinancing the last installment.  And we would have asked the

1    Court if it were possible to have a hearing the weeks of April

2    16 or April 23rd, because the likelihood of needing the money

3    would be toward the end of April.

4         What I can report this morning is that what was a

5    probability a short time ago is now a possibility, but it's

6    less than 50 percent possibility, because collections at PREPA

7    have been above the projected projections, including

8    collections of pre-hurricane electric bills.

9         So the probability at present is that PREPA will have

10   money to get itself into at least early May.  And if that is

11   the case, we will advise the Court, or we can advise the Court

12   and the parties in interest, either at the March 27 hearing

13   that Your Honor scheduled in respect to the Electric

14   Commission motion or earlier by an informative motion.  And we

15   would be able to put off the filing of the motion and the

16   requested hearing date to sometime probably in May.

17        Now, by putting this off, because of additional funds

18   that had not earlier been projected, we think there is also an

19   increasing possibility that by that time, we may have a CDL, a

20   community disaster loan.  That does not come without its own

21   complications, because the loan might be to the Commonwealth.

22   It might have to be loaned over to PREPA, but it would be

23   outside money.

24        Because of all these variables, Your Honor, it's not

25   possible for us to say now what the terms of any of these

1   financings might be.  So it could still cause us to ask the

2   Court to approve priming liens, or super priority liens, or

3   both, or not, depending on the financial situation and where

4   the money is coming from.  But that is the situation that we

5   know as of now, Your Honor.

6          So to recap, by the end of March, we can certainly

7   tell the Court whether we'll be requesting a hearing in April.

8   We think that's not likely, but it still is a possibility, so

9   I don't want to take it off the table.  And otherwise, we

10  believe we'll be filing a motion sometime in April requesting

11  a hearing in May for further financing.

12         THE COURT:  Well, I'm glad to hear of the increased

13  collections and the longer period of time the existing

14  financing is expected to last.  I would ask that you cue up

15  the motion practice as soon as you are able to make a

16  definitive motion, so that we don't have the issues with

17  compressed briefing schedules and documentation arriving late

18  and changing that complicated the situation last time.

19         So as far as you are able, please seek to do it on

20  what would be a more normal time frame of a couple of weeks

21  notice out to opposition.  If that's at all possible, I think

22  that would be appreciated by everyone and would make for

23  some fewer transaction costs in some ways, possibly more in

24  other ways.

25         And I should let you know that to the extent you are

1  thinking about a May application, I think it is between

2  something like the 17th and the 22nd of May, I will not be

3  available to preside over a hearing.

4        MR. BIENENSTOCK:  We appreciate that information,

5  Your Honor.  And we'll definitely try to file a motion at the

6  earliest possible time so that -- as soon as we know what the

7  terms of the deal are.

8        THE COURT:  Thank you very much.

9        MR. BIENENSTOCK:  Thank you, Your Honor.

10        THE COURT:  The next item on our agenda is the report

11  of the fee examiner.

12        Is Mr. Williamson here?  Good morning.

13        MS. STADLER:  Good morning, Your Honor.  My name is

14  Katherine Stadler of the law firm Godfrey & Kahn.

15  Mr. Williamson is here today, and he has a few brief remarks

16  he'd like to make, but first I wanted to personally present to

17  the Court the report that we filed last week.

18        Before I do anything else, I want to correct a couple

19  of errors in the report, for which I apologize to the people

20  affected.  The first error was that the law firm of Cancio

21  Nadal Rivera & Diaz, which is referenced on page 18 and 19 of

22  the report, is improperly indicated as counsel for the

23  Oversight Board.  They are not counsel for the Oversight

24  Board.  They are counsel for AAFAF.  O'Neill & Borges is

25  counsel for the Oversight Board here in Puerto Rico.  And

1  their application has been set over for consideration at a

2  later date.

3      Again, I apologize to the parties affected by that

4  mistake.

5      We're here to present a group of first interim fee

6  applications covering the beginning of these cases in May

7  through September, 2017.  We are recommending that the Court

8  approve the applications with the adjustments outlined on

9  Exhibit A to the summary report.

10      I have with me today a proposed Order and an Exhibit

11  A that contains a few revisions from the version originally

12  filed with the report.  I would say they are nonsubstantive

13  revisions.  And I have all of those to hand up to the Court if

14  you would like.

15      We also submitted those electronically yesterday.

16  Our -- sorry.

17      THE COURT:  So you filed a Proposed Order yesterday?

18      MS. STADLER:  May I ask my Puerto Rico counsel?

19      THE COURT:  I would appreciate that.

20      MS. STADLER:  A courtesy copy was served yesterday.

21      THE COURT:  All right.  So I should -- so it's not on

22  the public docket for everyone, but it will be in my

23  electronic inbox?

24      MS. STADLER:  It should be, Your Honor.  And the

25  master service list received it as well.

1          THE COURT:  All right.  Very good.  And I have a nod

2     from those near me who know.

3          MS. STADLER:  Okay.  We were trying to coordinate

4     with your chambers to do that the right way, so I hope we

5     succeeded.

6          Our fee review process has been outlined in some

7     detail in the report, which we filed last week.  And I don't

8     want to waste anyone's time repeating what is in the report.

9     As the report states, the fee examiner has negotiated

10    reductions to some of the fee applications before Your Honor

11    today, and believes that the fees outlined on Exhibit A to the

12    report and to the Proposed Order are reasonable and necessary,

13    as those terms are used in sections 316 and 317 of PROMESA.

14         We are happy to answer any questions Your Honor might

15    have about the report, about our process or anything else.  If

16    the Court does not have questions, Mr. Williamson just has a

17    few words he'd like to say.

18         THE COURT:  I do have a couple of questions, and they

19    tend toward the major conceptual, but I think they're

20    important in light of the major conceptual types of issues

21    that were raised in the report.

22         And so first, the report indicates at a high level

23    that there were negotiations, and obviously there are some

24    reductions that are reflected in the proposal.

25         Can you give me a bit more color as to the nature of

1    issues that were identified and the principles upon which

2    issues regarding those sorts of matters were resolved, and a

3    sense of whether the fee examiner has some confidence that

4    there have been changes in methods that we can anticipate

5    going forward?

6            MS. STADLER:  Okay.  Yes, I can do that.

7            We issued letter reports to all of the retained

8    professionals consistent with the Amended Interim Compensation

9    Order that Your Honor entered late last year.  The

10   professionals then had approximately two weeks to review those

11   reports and respond to us with additional information,

12   additional documentation, answers to questions, receipts.  And

13   that began a rather significant dialogue between our office

14   and the various professionals.

15           A lot of it was education, the professionals

16   educating us, the fee examiner's counsel, about some of the

17   unique facets of this proceeding, helping us to understand the

18   legal and procedural context, and providing information that

19   alleviated some of the fee examiner's initial concerns just by

20   virtue of a better understanding of the process.

21           There were also issues identified though that are

22   discussed in the report that were more conceptual and global

23   in nature.  And the primary one, as highlighted in the report,

24   is the issue of attendance.  The number of attorneys appearing

25   at hearings like this one today and at the mediation sessions,

1    which are significant and take a lot of time.

2              That attendance is of great concern, not just to the

3    fee examiner, but I believe to the Government of Puerto Rico

4    as well, because ultimately they're paying the bills.  And so

5    what the fee examiner has sought to do is advise the

6    professionals that on a going forward basis, his

7    recommendation will be, absent some additional information

8    shown, that the parties speaking at a hearing, their time will

9    be compensable, and one supporting person for that person

10   speaking will be compensable.  And that, all other

11   professionals in attendance from a given firm will need to

12   have a showing made in the application itself of why that

13   person's attendance was necessary, either in court or at the

14   mediation.

15             There will be departures from that rule.  There have

16   been departures from that rule.  As you know, many of the

17   firms here today have multiple speakers and multiple support

18   people.  We have reviewed transcripts and pleadings and talked

19   to the professionals to understand.

20             Obviously many of those hearings were very

21   substantive in nature and required a lot of people.  And so

22   those exceptions were made to our rule and those adjustments

23   that are in the report reflect accommodations made to

24   professionals.

25             The other note I would make in that regard is that

1    the fee examiner was appointed on October 6th.  This time

2    frame of billing ended on September 30th.  So the

3    professionals had not been on notice yet of the fee examiner's

4    appointment and what his general approach would be.  We took

5    that into consideration when discussing this first interim fee

6    application with professionals.

7            The fee examiner is well aware that people can't

8    comply with rules and expectations if they don't know what

9    they are.  And so we have used -- the fee examiner has used

10   this first interim fee application process primarily to

11   educate and begin a dialogue with professionals about those

12   expectations and what the necessary showings will be to

13   deviate from those expectations in the future.

14           We are relatively confident, based on our

15   conversations with the professionals, some of which are

16   ongoing, that they understand the fee examiner's concerns,

17   that they share the concerns, they share the concern about the

18   appearance, as well as the substance of the way this case is

19   managed and run, and how much it costs.

20           To continue that dialogue, we are this afternoon

21   after court adjourns here holding a brief informational

22   session at a local firm here in San Juan, and it's really

23   basically just a Q and A with the fee examiner, his data

24   specialist, and me.  And we will be available to answer

25   questions.

1          We'll have a really brief presentation about our

2     process, but primarily the purpose of the meeting, and it's an

3     open session, everyone is invited, is to answer your questions

4     and talk to professionals about the fee process in general, or

5     specific questions they have about individual fee guidelines

6     and issues.

7          There are many other guidelines that the fee examiner

8     has issued.  They're outlined in the memorandum that he issued

9     to professionals on November 10th.  I could talk about all of

10    them in great detail, if any of them particularly interests

11    you, but for purposes of this first interim fee period, I

12    would say getting a handle on the staffing issues, which is

13    evidenced by the hearing attendance, has been the primary

14    focus of the fee examiner process.

15          THE COURT:  Are there any other of the many other

16    issues that you would anticipate focusing on in particular

17    going forward besides attendance and --

18          MS. STADLER:  Yes.

19          THE COURT:  -- staffing in general?

20          MS. STADLER:  Yes.  One of the things that is always

21    difficult in taking on an assignment like this is the ability

22    to understand on the part of professionals that the purpose of

23    the fee review and the purpose of the guidelines is not just

24    so that we, as fellow lawyers, can read the application and

25    understand what work was it that was being done, but that

1   anyone opening up the record and pulling a fee application out

2   can understand what the professionals were doing and verify

3   that the time has been recorded accurately.

4       So many of the guidelines that are in the U.S.

5   Trustee guidelines, they're in some of the local rules in

6   bankruptcy courts around the country, and they are in place

7   here, are viewed as overly technical and burdensome by some

8   professionals.  For example, the requirement of recording time

9   in tenth of an hour increments.

10       You can imagine when people are working as fast and

11   furious as they have been on these cases, it's sometimes hard

12   for people to stop what they're doing and contemporaneously

13   record their time in tenths of an hour.  We understand that.

14   We face the same pressures in keeping our own time.

15       However, in this case more so than any other Chapter

16   11 that the fee examiner has worked in, he feels it's very

17   important that those rules are followed more closely and are

18   honored more carefully than they might be in a Chapter 11

19   proceeding involving a private enterprise.

20       The transparency issue is of paramount importance.

21   So the ability of anyone who wants to pull out a fee

22   application and look at a bill and make sure attorney A and

23   attorney B are both attending a meeting for the same amount of

24   time is important, and it's more important here than it is

25   elsewhere.  So that type of issue.

1          The other issue that I would say pops up a lot is the

2     task descriptions.  Many of the professionals in this case

3     have used very general terms in their billing:  Review

4     pleadings, prepare for mediation, draft mediation statement.

5     And then, you know, large chunks of time assigned to some of

6     those tasks.

7          We flag those entries as vague or requiring more

8     detail and ask professionals to not only provide more detail

9     to support the existing application, but to use more detail in

10    the future.  And the professionals generally are willing to

11    accommodate that request.  That requirement, too, they view as

12    burdensome.  But I think everyone is pretty much on board with

13    the notion that they need to describe their activities with

14    detail to allow the same transparency that we've been

15    discussing this morning.

16         The response that we've gotten from many

17    professionals is the confidentiality and secrecy -- not just

18    of the financing terms and that sort of thing, but of the

19    mediation process and what is being prepared on what topic and

20    by whom, to be presented at the mediation sessions.

21         We've been in touch with Judge Houser.  We have

22    spoken to her not only about that particular issue, but just

23    in general about the management of counsel and attendance at

24    mediation.  And I think it's on her radar.  It's on our radar.

25         And our advice to professionals going forward is that

 1   for the fee examination purposes, disclosure of detail about

 2   work performed in preparing for conducting mediation will be

 3   kept confidential by our office.  It will not be disclosed

 4   outside of our office.

 5         The fee examiner Order has a confidentiality

 6   provision in it, and we have taken the additional step at the

 7   request of Judge Houser to put in place the Protective Order

 8   that provides an additional level of detail and assurance

 9   about our confidentiality obligations.

10         Professionals can, from the fee examiner's

11   perspective, subject to the Court and the United States

12   Trustee's preference, submit redacted invoices with their

13   publicly filed applications.  And we ask that they include the

14   missing detail from the redacted invoices when they send us

15   electronic data.  Many professionals have agreed with that in

16   concept.  I think there's still some resistance to the idea of

17   that strategy, and detail about the discussions that are

18   ongoing could inadvertently be disclosed through that process.

19         So I would say those two issues are probably our

20   major guideline issues that are identified in the report that

21   we're working through with that education process, and getting

22   the professionals comfortable with our ability to honor our

23   confidentiality obligation, and getting them to understand

24   that this is more than whether I can read a bill and see

25   what's going on or another attorney could, but whether a

1  member of the public could read the application and understand

2  why these cases require such an enormous amount of effort on

3  the part of so many professionals.

4       THE COURT:  And with respect to those confidentiality

5  issues, the balance runs more toward your being able to fully

6  read, understand and advise the Court appropriately with the

7  protection as -- against the world and the general public of

8  the use of redactions in public filings?

9       MS. STADLER:  Correct.

10      THE COURT:  Thank you.

11      MS. STADLER:  You're welcome.  Thank you.

12      Mr. Williamson has a few words.

13      THE COURT:  And thank you for your work.

14      MS. STADLER:  Thank you, Your Honor.

15      MR. WILLIAMSON:  Good morning, Your Honor.  Brady

16  Williamson.

17      THE COURT:  Good morning, Mr. Williamson.

18      MR. WILLIAMSON:  With respect to professional fees

19  and expenses, PROMESA, like Chapter 11, imposes burdens all

20  the way around.  It imposes burdens on the Court.  It imposes

21  burdens on the professionals.  But these are burdens with a

22  purpose.  The purpose is accountability, transparency,

23  efficiency.

24      Now, we're doing this, all of us here for this part

25  of the hearing, because Congress mandated in 316 and 317 this

1    kind of diligence, this kind of scrutiny.  But even if 316 and

2    317 did not exist, the extraordinary circumstances presented

3    by these proceedings would require some form of sophisticated,

4    detailed and difficult review.

5         This is our first report.  And Ms. Stadler explained

6    some of the factors that went into our approach to this first

7    report.  It won't be the last.  We view the process as

8    iterative and incremental.  We'll get better at it.  The

9    professionals will get better at it.  And their clients will

10   get better at understanding the need for discipline,

11   efficiency and effectiveness in the assignment of

12   professionals.

13        The cycle, as the Court knows, will occur every four

14   months, give or take.  I can promise the Court and the

15   professionals that our reports will get shorter, to be sure,

16   not 26 pages, but less.  But the standards won't change.  They

17   can't change.

18        The number of skilled and gifted professionals in

19   this case is really quite remarkable.  And when, of course, I

20   use the term professionals, I don't just mean counsel, I mean

21   the financial advisors, the accounting firms, the consulting

22   firms.  Their services, as we say in the preface to the

23   report, are absolutely essential to the island's recovery, and

24   prospectively to its economic health.

25        The skilled and gifted professionals who work with

1   the Court and everyone on the island are entitled to be

2   compensated fairly, at market rates, as long as their services

3   are reasonable and necessary to the estate.

4        Let me end, Your Honor, just by highlighting two

5   points in the report that we might benefit from a little bit

6   of guidance from the Court informally or formally.

7        The first is the particular challenge presented by

8   McKinsey's work.  It appears to be very high quality work, but

9   because of their internal system, put bluntly, they don't keep

10  time like Mr. Bienenstock's firm keeps time.  So that makes

11  our job difficult, because there are no objective metrics.

12       And we suggest to the Court that there are two

13  possibilities.  One is simply for the Oversight Board, which

14  receives McKinsey's work product, to, in a word, vouch for

15  McKinsey.  The other possibility is for us, under the Court's

16  ultimate supervision, to work with McKinsey to provide some

17  form of metric.

18       And again, it's something that we think needs to be

19  addressed because of the importance, and quite frankly, the

20  expense of McKinsey's work and its importance to this whole

21  process.

22       The second --

23       THE COURT:  Are you -- I'm sorry.

24       MR. WILLIAMSON:  -- and last issue has to do with our

25  authority to review pre Title III work.  In other words, work

1    that anticipated Title III, or work that preceded the

2    engagement or contract between the entity and the

3    professionals.

4         The way the Order is worded, we don't think we have

5    the authority to look at that.  We're certainly willing to

6    look at that, but it may well require an amendment.  I suspect

7    there won't be an objection, but it may well require a formal

8    amendment to the Order appointing the fee examiner.

9         THE COURT:  Well, these are both very important

10   issues.  It sounds to me as though you are in the process of

11   discussion of refinement of the issues and exploration of

12   potential solutions.

13        And so do you anticipate that you will make an

14   application to me that may or may not be contested,

15   recommending an approach to these issues, or if it's to be

16   contested, in which those advocating for the different

17   approaches can make their positions clear to the Court?

18   Because, you know, I could freestyle and give some advice, but

19   I don't think that would be appropriate or efficient at this

20   juncture.

21        MR. WILLIAMSON:  Yes, Your Honor.  In the same

22   fashion that Mr. Bienenstock was kind enough to give you a

23   heads-up on issues that might be coming down the road, these

24   two certainly would be included in them.  They don't in any

25   way affect our process going forward.  But those two issues

1    made this very first report a little short of complete --

2              THE COURT:  Yes.

3              MR. WILLIAMSON:  -- for those reasons.

4          I want to add, in closing comment, one point.  I said

5    the process was incremental and iterative.  We found without

6    exception that counsel for all parties were open, available,

7    willing to engage in a constructive dialogue.  And I think

8    that's one reason that we were able to present -- we are able

9    to present an Order that is consensual without objection.

10             THE COURT:  Thank you.

11         Now, I understand that a representative of the United

12   States Trustee had wished to be heard.  Ms. Lecaroz.

13             U.S. TRUSTEE LECAROZ ARRIBAS:   Good morning, Your

14   Honor --

15             THE COURT:  Good morning.

16             U.S. TRUSTEE LECAROZ ARRIBAS:  -- Judge Swain, court

17   staff, everyone present.  Section 316 of PROMESA authorizes

18   the United States Trustee to review and to comment on all

19   professional fee applications for reasonableness and

20   necessity, similar to the United States Trustee's role in

21   Chapter 11 cases.

22         Given the historic scope and scale of these Title III

23   proceedings, the United States Trustee sought and the Court

24   appointed, with the parties' consent, a fee examiner to review

25   professional fees in a robust process, similar to that

1   followed in some of the largest and most recent Chapter 11

2   cases.

3           The United States Trustee concurs with the findings

4   and recommendations of the examiner's report.  Our independent

5   review identified essentially the same major deficiencies that

6   the fee examiner has highlighted in his report, particularly,

7   overstaffing, duplication and vagueness.  We share the fee

8   examiner's expectation that these deficiencies will be

9   significantly reduced in future applications.

10          If these deficiencies recur, additional reductions

11   will be sought in future applications.  We will continue to

12   monitor future applications closely and reserve all of our

13   rights to object as necessary or appropriate.

14          The fee process has already enhanced compliance and

15   should continue to do so in the future.  The fee examiner's

16   report does not cover one-third of the fees sought by the

17   applicants, consideration of which has been deferred.  The

18   United States Trustee reserves his rights with respect to

19   those fee requests.

20          Thank you, Your Honor.

21          THE COURT:  Thank you.

22          This is a very good start to a process that will be

23   long and complicated and is essential.  The Court reviewed the

24   report carefully and has listened very carefully to everything

25   that has been said here today, and the Court is prepared to

1    approve the Proposed Order that is consistent with the

2    examiner's initial report.  But I do wish to add my voice to

3    the sentiments that have been expressed about areas of

4    concern.

5         The eyes of history are on all of us.  The lives of

6    the people of this island and the future of every stakeholder

7    is bound up in everything that we do.  And so the careful use

8    of resources in working through these unprecedented and highly

9    complex problems is essential.

10        And from my perspective, over the past ten months, I

11   have, as you know, reviewed a lot of pleadings and

12   submissions.  And frankly, a good proportion of what I've

13   received has been duplicative in many ways.  And I've also

14   worked in -- particularly in the past, not so much today, so

15   this is a good sign, in courtrooms packed with attorneys who

16   have traveled to and attended proceedings in which only a

17   handful actually argued or participated.

18        I am keenly aware of the unprecedented practical and

19   legal circumstances facing the highly-talented professionals

20   who are doing essential work in these PROMESA cases.  There is

21   an extraordinary amount of work that has to be done.  But the

22   cases are really only in their infant stages, and the people

23   of Puerto Rico simply can't afford to spend billions and

24   billions of dollars in professional fees.

25        And so in further aid of and support of the remarks

1    and principles that have already been shared, I remind counsel

2    that listen-in arrangements are available through the

3    telephone service provider, and that counsel will be permitted

4    to speak from a remote courtroom, unless there's a snowstorm

5    with no remote courtroom, whether it's in San Juan or New

6    York.

7              I would also encourage counsel to strive to

8    collaborate early enough in briefing motions so as to be able

9    to avoid duplicative briefing of issues.  And frankly, that

10   helps to conserve my limited resources as well, and helps me

11   to move through issues faster.

12             And if the expectations of the fee examiner and the

13   United States Trustee as to changes in patterns of behavior

14   are not realized and there continue to be significant issues

15   of overstaffing or overattendance, the Court's attention will

16   be on those as well.  And the Court will make any further

17   adjustments that may be required.

18             So with that, I will track down the Proposed Order,

19   and I will enter it after this hearing.  The fee examiner's

20   application, as detailed in the report, the attachments and

21   the revised Proposed Order for resolution of the fee

22   applications that have been filed is granted, with certain of

23   those applications being carried over to the April Omni, as

24   detailed in the report.

25             And so give me just one moment, because I have to get

1    to my -- here we are.  I put my agenda paper aside when I

2    should not have done that.

3           And so I think we move on to the contested matters

4    now.  And the first one is the Motion for Relief from

5    Automatic Stay of Mitsubishi Motor Sales of the Caribbean.

6    And is there an agreement as to allocation of the 20 minutes?

7           MR. GROVAS PORRATA:  Yes.  And we have reached a

8    stipulation, so --

9           THE COURT:  Very good.

10          MR. GROVAS PORRATA:  Good morning, Your Honor.

11   Carlos Grovas Porrata from the law firm of Belk & Grovas on

12   behalf of Mitsubishi Motor Sales of the Caribbean.

13          THE COURT:  Good morning.

14          MR. GROVAS PORRATA:  We have reached an agreement

15   with counsel for the Commonwealth to lift the automatic stay

16   with regard to the cause of action and the entry of

17   declaratory judgment before the local court.  So we will be

18   submitting the stipulation forthwith before this Honorable

19   Court accordingly.

20          THE COURT:  I'm glad to hear that.

21          MS. PEREZ:  Good morning, Your Honor.  Diana Perez

22   from O'Melveny & Myers on behalf of AAFAF.

23          I just wanted to confirm the comments made, that we

24   have reached a stipulation.  We will enter into that pursuant

25   to the stay protocol procedures, and we'll include it in our

1   next Omnibus motion that will be filed in April.

2        THE COURT:  Very good.  So will you -- I'm just

3   thinking in terms of logistics and housekeeping.  Should I

4   enter an Order that terminates this motion in anticipation of

5   inclusion of the stipulation in the next Omnibus?  Would that

6   be consistent with your plans?

7        MR. GROVAS PORRATA:  That would be consistent.

8        MS. PEREZ:  Yes.  Yes, Your Honor.

9        THE COURT:  I will do so.  Thank you both very much.

10       MR. GROVAS PORRATA:  Thank you.

11       THE COURT:  The next contested agenda item is the

12  motion of the PBA Funds for payment of rent.  Is there a time

13  allocation agreement?

14       MR. POSSINGER:  Good morning, Your Honor.  Paul

15  Possinger from Proskauer Rose on behalf of the Oversight

16  Board.

17       Your Honor, we've engaged in some discussion with the

18  committee and with the movants to see if there's a resolution

19  possible with respect to item number two and item number

20  three.  What I suggest is we defer items two and three to the

21  end of this call, and then possibly take a short recess to see

22  if a resolution is possible.

23       THE COURT:  Very well.  Mr. Peck, are you agreeable

24  to that proposal?

25       MR. PECK:  We are, Your Honor.

1          Just to put this in context, when we arrived this

2    morning, we were presented with a form of Order that includes

3    some language that may be a basis for resolving this on a

4    consensual basis.  But we're going to need some time to

5    explore this with our clients and other parties in this case,

6    and we appreciate you accommodating that time that's needed

7    for these purposes.

8          THE COURT:  Very well.  Thank you.  I look forward to

9    hearing further developments.

10         MR. PECK:  Thank you, Your Honor.

11         MR. POSSINGER:  Thank you, Your Honor.

12         THE COURT:  And so I believe that takes us to item

13   four, which is the Unions' application regarding the

14   employment grievance procedures.  And if you'll just give me a

15   moment to catch up with my paperwork, I'd be grateful.

16         All right.  I am ready.

17         MR. BARRIOS:  Good morning, Your Honor.  Jose Luis

18   Barrios, in representation of the American Teachers Federation

19   as agent of Asociación de Maestros de Puerto Rico.

20         MS. LEVINE:  Good morning, Your Honor.  Sharon

21   Levine, from Saul Ewing Arnstein & Lehr on behalf of AFSCME.

22         THE COURT:  Good morning.

23         MR. DECHIARA:  Good morning, Your Honor.  Peter

24   DeChiara from the law firm of Cohen Weiss & Simon, LLP for the

25   Service Employees International Union and United Auto Workers

1   Union.

2          THE COURT:  Good morning.  So do you have an agreed

3   time allocation or will you start with a status report?

4   Because I did receive a partial stipulation, so I need to know

5   what is still at issue.

6          MR. DECHIARA:  Your Honor, I may need as little as

7   two minutes because we have a proposal to the Court as to how

8   my two clients would like to proceed, or I may need more time

9   if I end up arguing the merits of the motion.  So that's the

10  situation that my two clients are in.

11         THE COURT:  So when you say you have a proposal to

12  the Court, is this something that your opponents have not

13  agreed to at this point?

14         MR. DECHIARA:  They have not agreed or disagreed.  We

15  are presenting it to the Court for the first time now.  And if

16  I may, Your Honor, I could explain.  I think it's -- I don't

17  think there'll be an objection.  Let me put it that way.

18         THE COURT:  It was -- I think you know my normal

19  requirements, and my procedure is that before anyone asks me

20  to do anything, you talk to your colleagues to see whether

21  there's agreement to it first.

22         I'm rapidly running out of agenda items to bypass, so

23  why don't you announce the proposal and then have your -- then

24  confer on it.

25         MR. DECHIARA:  Thank you very much, Your Honor.  My

1   two clients, the SEIU and the UAW filed a joinder for the

2   motion that was filed by the other two unions, the American

3   Federation of Teachers and the American Federation of State,

4   County and Municipality Employees.

5         But unlike those two other unions, my two clients

6   have decided not to enter into the stipulation with the

7   Commonwealth settling the motion.  We're -- as I said, we're

8   prepared to argue the motion today, but we would propose an

9   alternative course of action.

10        In response to the motion, the Commonwealth

11  represented to the Court that it is willing to allow

12  prepetition grievances to proceed to resolution, with one

13  potentially large exception, that being prepetition grievances

14  that the Commonwealth determines may affect the fiscal plan or

15  the Title III cases.

16        What my clients propose to do is have the hearing on

17  the motion adjourned to some date in the future to be

18  determined.  And the reason we propose that is it would allow

19  my two clients to see, in fact, how things play out, how the

20  Commonwealth performs under its stated position, whether it,

21  in fact, allows the prepetition grievances to proceed, how

22  many it stays, which ones it stays, et cetera.

23        And by allowing my two clients the opportunity to see

24  how this actually plays out on the ground, that would inform

25  my clients' decision about whether, and if so, when we would

1   even need to come back to the Court at some future date on

2   this matter.   That's my proposal.

3           THE COURT:  Before you huddle, I just observed that

4   it seems to me that the stipulation that was proposed by the

5   other parties makes a very serious attempt to put flesh on

6   that, what started out being a fairly vague and general

7   reference to things that might be a problem in relation to the

8   fiscal plan.

9           And so it offers particular procedures and puts

10  issues in particular buckets.  So it seems to me, to make it

11  clear, that normal, every day individual issues are generally

12  not going to be impeded.  An action that seeks to have a

13  statute declared unconstitutional is something that will have

14  higher transactional costs.  And then there are some things in

15  the middle.

16          Why wouldn't it make sense to proceed under that more

17  defined structure, and then to the extent you have particular

18  issues about how things that are being impeded are playing

19  out, discuss them with AAFAF and with your co-movants and

20  perhaps make a subsequent application to the Court, rather

21  than putting this over in a completely undefined landscape?

22          So I guess I'm engaging in these discussions, too,

23  but I don't understand what's better about leaving the

24  landscape wide open.

25          Mr. Friedman.

1          MR. FRIEDMAN:  Your Honor, Peter Friedman, AAFAF.

2          THE COURT:  You need to go to the microphone because

3     there are listeners --

4          MR. FRIEDMAN:  Sorry, Your Honor.  Peter Friedman, of

5     O'Melveny & Myers on behalf of AAFAF.  That encapsulates my

6     thinking.  It would be unfair to the Commonwealth to have

7     effectively a bifurcated process, where on the one hand it's

8     going through a mechanism that's been very painstakingly

9     negotiated over the course of months, and then a free-for-all

10    on the other side.  That's just not an acceptable proposal to

11    the Commonwealth.

12         We are willing to permit parties to join into the

13    stipulation.  We welcome parties joining into the stipulation

14    so that there's an orderly process.  There are defined

15    limitations to when items have been stayed.  I'm actually

16    happy to argue the merits if we have to as to why a

17    free-flowing motion should be denied, if that's the path

18    counsel chooses to go down.  But certainly from a voluntary

19    perspective, a two-path divergent process just doesn't make

20    sense for the Commonwealth.

21         THE COURT:  Thank you, Mr. Friedman.

22         Ms. Levine.

23         MS. LEVINE:  Your Honor, very briefly.  Annette

24    Gonzalez, president of AFSCME's local SPU is in court, along

25    with some other representatives.  It's extremely important to

1   us that regardless of what Your Honor does, alternatively, and

2   we're not taking any position on that, that the stipulation

3   that was basically a hard-fought negotiation be entered today

4   if possible, because one of the things that the Order entering

5   that stipulation provides is that this starts immediately.

6        And one of the things that this stipulation does for

7   us is it moves forward with some of our most difficult,

8   currently not moving grievance and arbitration procedures,

9   particularly for people who are out of work.  And if we can

10  start that process and get those people who are wrongfully

11  terminated back to work, that becomes extremely important for

12  us.  And another delay in that process would be something

13  that's very difficult for us.

14       THE COURT:  And so you're asking that at a minimum, I

15  consider the motion resolved as to the signatories, and then

16  the only question would be argumentation of the motion if the

17  SEIU and UAW are not willing to sign on at this point, that

18  would be dealt with separately?

19       MS. LEVINE:  Yes, Your Honor.

20       THE COURT:  Thank you.

21       MS. LEVINE:  Thank you.

22       MR. BARRIOS:  Your Honor, counsel Jose Luis Barrios.

23  Just for the record, AFT joins in the AFSCME proposal.

24       THE COURT:  Thank you.

25       MR. DECHIARA:  Your Honor, Peter DeChiara.  Just to

1    be clear, the UAW and the SEIU do not object to the

2    stipulation that was entered into between the Commonwealth and

3    AFT and AFSCME.  Those two unions made a decision, which we

4    respect, that the stipulation made sense for their unions.

5         But the leadership of the two unions that I represent

6    made a determination that the stipulation was not appropriate

7    for the membership of their unions.  And the reason was -- was

8    because the stipulation at its heart -- it's true, it's a

9    long, complicated document and has lots of parts.  But at its

10   heart, what it preserves is a very, very broad, undefined

11   category of cases or prepetition grievances that the

12   Commonwealth, through its own determination, can block simply

13   by determining or stating that it believes that they -- that

14   those grievances effect, in some undefined way, the fiscal

15   plan or the Title III cases.

16        No matter how minimally, no matter how indirectly,

17   the Commonwealth can just freeze some sizable, potentially

18   sizable group of grievances.  For that reason, the leadership

19   of my two clients decided it would not be appropriate to enter

20   the stipulation, but we are in no way objecting to the

21   stipulation that was entered between the two parties that

22   chose to enter it with the Commonwealth.

23        THE COURT:  Well -- I'm sorry, Ms. Levine.

24        MS. LEVINE:  Your Honor, recognizing that concern,

25   the goal of the stipulation was actually to provide that the

1   stay does not apply with regard to the discipline and

2   discharge cases, except with regard to the prepetition claims,

3   which will be part of the petition claims process.  But going

4   forward, people can be reinstated and/or get whatever wage

5   relief they can get.

6          With regard to the exception, which is a very limited

7   exception, with the negotiations with AAFAF and through the

8   procedures that we think we've been able to codify, the goal

9   is that most of the arbitrations will proceed.  And to the

10  extent that there is a rare circumstance where it appears that

11  a grievance arguably interferes with the fiscal plan, that not

12  the local lawyer responsible for litigating the particular

13  grievance, but AAFAF itself will give a formal notice to the

14  CBA parties in the stipulation.  And that we will have the

15  ability to come before Your Honor with AAFAF consenting to an

16  expedited stay motion subject, of course, to Your Honor's

17  calendar, to resolve that issue.

18         So the goal and the hope is that the concern is

19  alleviated both through the representations and the

20  negotiations we have had with AAFAF, that things will now

21  proceed smoothly and quickly, and with a very quick expedited

22  resolution process in the event that somehow or another the

23  agreement is misinterpreted.

24         So for our purposes, again, we would still ask that

25  the Court enter the stipulation and Order approving the

1    stipulation today.  Thank you.

2              THE COURT:  Thank you.

3              Mr. Friedman.

4              MR. FRIEDMAN:  Peter Friedman.  Just to be clear,

5    Your Honor, we're sticking by the stipulation.  We're not

6    saying -- we're not backing off in any way.  Ms. Levine has

7    correctly characterized the way we intend to work.  As Your

8    Honor knows from our monthly reporting, it's very rare that

9    you will actually have a matter that gets into stay

10   litigation.  Almost everything goes forward.

11             Obviously if there are consequences in the fiscal

12   plan, just like -- and AAFAF legitimately believes there's an

13   issue, it would be completely inappropriate for an arbitrator

14   to assert jurisdiction over a fiscal plan issue.  We'll use

15   that judicially and intelligently where it's a real issue,

16   Your Honor.

17             We're not going to come before the Court on an issue

18   that I think you would find objectionable, or you may overrule

19   us obviously.  But again, we're not going to come to this

20   Court on a frivolous basis and try to block an individual

21   worker's right to a grievance process.

22             If there's an issue that's legitimate, we'll raise

23   it.  And that's how this process is intended to work.  We want

24   the stipulation to go forward.  As mentioned, if there's a

25   need for us to argue the merits as to why the two unions that

1   have not joined have completely failed to meet the Sonnax

2   factors on an individualized basis for their grievances, we

3   are happy to do that.

4         Again, we remain willing to include anyone that

5   wishes to -- for the Commonwealth, I'm speaking for the

6   Commonwealth.  There may be other parties or other entities,

7   but from the Commonwealth's perspective, we remain willing to

8   extend the stipulation to other unions.

9         THE COURT:  So let me ask you this:  Is it

10  operationally feasible for you to follow the stipulation for

11  AFT and AFSCME grievances and arbitration procedures, and

12  not -- and do something else or whatever it is you're doing

13  for SEIU and UAW people and --

14        MR. FRIEDMAN:  I think it will be logistically very

15  difficult to try to deal with these two free-floating systems

16  that may involve different kinds of litigation schedules,

17  instructing people at the Puerto Rico Department of Justice

18  and constituent component units that have to deal with two

19  sets of standards.  Like I said, we spent a lot of time trying

20  to make this work.

21        THE COURT:  Yes.  So --

22        MR. FRIEDMAN:  And I'm sure they will see it in the

23  bills Mr. Williamson reviews.  It was a lengthy process.  But

24  it was done well.

25        THE COURT:  Yes.  Well, what I'm going to ask you to

1    do is during the break, have a serious, good faith, offline

2    discussion among all of you and see if you can come to a

3    global agreement to follow these lines, and get Mr. DeChiara

4    and his client to a point of comfort that the exception is

5    both narrow and one that is designed to bring attention to the

6    issue at the highest level in an efficient way, in a way

7    that's clear.

8              If you cannot get to that resolution with

9    Mr. DeChiara, I will hear argument from Mr. DeChiara and AAFAF

10   on what remains contested as between those two entities in

11   respect to the motion, and I'll decide the motion.  But if

12   that can be avoided, that would be good.

13             MR. FRIEDMAN:  Okay.

14             THE COURT:  All right.

15             MR. FRIEDMAN:  Thank you, Your Honor.

16             THE COURT:  Thank you.

17             MR. BARRIOS:  Your Honor, very briefly.

18             THE COURT:  Yes, sir.

19             MR. BARRIOS:  Jose Barrios on behalf of the AFT.  We

20   just want it clear that as Mr. Friedman says, this

21   stipulation, if entered today, would open all the grievance

22   procedures for all members of the unions, and that would be

23   our intent and the intent that we discussed with AAFAF.

24             MR. FRIEDMAN:  Peter Friedman.  Your Honor, the

25   stipulation will do what it says, which is begin the grievance

```
 1    process moving forward.  Obviously, as AFT and AFSCME knows,
 2    there's going to be a process where AAFAF and us need to
 3    confer with all of the relevant counsel who deal with these
 4    circumstances so they understand exactly what we need to do.
 5    And we're committed to moving that protocol along quickly as
 6    well.
 7          So we made an agreement.  We will live by it and
 8    expedite the process of getting the people who handle
 9    grievances in a position to handle them pursuant to this
10    protocol when it's entered by this Court.
11          THE COURT:  Well, for clarity from me, I find the
12    proposal of AFT, AFSCME and AAFAF acceptable in the
13    stipulation, and I would enter the stipulation, if necessary,
14    only as to persons represented by the people who have -- the
15    entities that have agreed to it.
16          If the UAW and SEIU, after the consultations, still
17    don't want to sign onto it, I will hear argument as to whether
18    the stay applies at all, hear whatever argument there is on
19    the legal issues, and I will resolve it.  It could be that I
20    resolve it by finding that the stay applies but that it should
21    be lifted to a limited extent.  And that limited extent might
22    end up looking a lot like the stipulation.  I don't know
23    because I haven't heard argument yet.  And so -- but that is a
24    possible outcome.
25          MR. FRIEDMAN:  And, Your Honor, that would be an
```

1    acceptable outcome to AAFAF.  Absolutely.

2            THE COURT:  I am so surprised.  I am just shocked.

3        So anyway, you'll let me know after the break whether

4    I need to hear that argument or not.

5            MR. FRIEDMAN:  Thank you, Your Honor.

6            THE COURT:  Thank you.

7        All right.  So there is one matter left on first

8    call, which is the Commonwealth's lease assumption motion

9    concerning the facility used by the police department.  And

10   Mr. Mercado-Mandry made an application just before the hearing

11   today to appear by telephone, which is unusual, but given his

12   pro se status and the fact that I had allowed some lawyers to

13   have live lines this morning, I granted it as a courtesy.

14       And I will make his line live shortly as a speaking

15   line. But I do want to emphasize for him that in the future,

16   the expectation for everyone who wishes to speak in a hearing

17   is that they come to a courthouse, either here or in New York,

18   and that they file a notice of their intentions in accordance

19   with the procedures.

20       And so I will first have argument for the movant, and

21   then a response from Mr. Mercado, and then any rebuttal that

22   may be necessary.  And so we can make Mr. Mercado's line live.

23           MR. BARAK:  Your Honor, just before that, Ehud Barak

24   from Proskauer Rose, for the Oversight Board and Title III

25   debtors.  Hermann Bauer, our Puerto Rican counsel, has gotten

1    an e-mail from Mr. Mandry that he is not sure he will be able

2    to dial in.  So I don't know if he's on the line.

3              THE COURT:  Okay.  I'm sorry.  I didn't hear you

4    clearly.  So who is also --

5              MR. BARAK:  So Mr. Mandry, the movant, sent an e-mail

6    to Mr. Bauer saying that he wasn't able to dial in.

7              THE COURT:  Okay.

8              COURTROOM DEPUTY:  He has dialed in.

9              THE COURT:  He has dialed in now.

10             MR. BARAK:  Oh, sorry.

11             MR. MANDRY-MERCADO:  Yes, I am here.  I am here.

12             THE COURT:  All right.

13             MR. MANDRY-MERCADO:  I am ready to speak and respond

14   to anything that the movant says and the allegations.

15             THE COURT:  Thank you.

16             So first I will hear from the movant, and then I will

17   call on Mr. -- do you wish to be addressed as Mr. Mandry,

18   Mr. Mercado, or how should I pronounce your name?

19             MR. MANDRY-MERCADO:  Mandry.  Mr. Mandry.

20             THE COURT:  All right.  Thank you.

21             MR. BARAK:  Good morning, Your Honor.  Ehud Barak

22   from Proskauer Rose for the Oversight Board itself and as a

23   representative of the Title III debtors.

24             Next on the agenda is the Commonwealth's Motion to

25   assume the police department shooting range lease for use of

1   the property which I understand includes the use of a lien and

2   enjoyment rights under the civil code of Puerto Rico.

3          The motion was timely filed on November 29, 2017 in

4   accordance with this Court Order at ECF number 994.  The

5   motion meets the standard for assumption of lease on

6   restriction 365 of the Bankruptcy Code incorporated into

7   PROMESA by Section 301.

8          Your Honor, the case law makes it clear that the only

9   issue in a motion to assume the lease or accept the contract

10  is whether the assumption is an exercise, a valid exercise of

11  the debtors' business judgment.  We cited the In Re:  BankVest

12  Capital case.  It was affirmed by the First Circuit.  And it

13  states that under a motion to assume, the only issue properly

14  before the Court is whether the assumption or objection of the

15  subject contract is based on the debtors' business judgment.

16         Here, Your Honor, the lease provides significant

17  benefit to the Commonwealth.  It provides grounds for the

18  Commonwealth to train its police force.  The lease runs until

19  2021.  And the price for the lease is one dollar a year.  So

20  obviously the Commonwealth is getting a very good bargain

21  here.  Therefore, the assumption of the lease is clearly a

22  sound exercise of the debtors' business judgment.

23         The only responsive documents to this motion were

24  filed by Mr. Mandry, who is not a party to the lease.

25  Mr. Mandry argues that he could potentially have a property

1    interest over the premises if he is successful in annulling

2    several unspecified agreements for fraud and conspiracy.

3            Mr. Mandry made those accusations in various courts,

4    including before this Court.  I think the District Court has

5    even dismissed one action, albeit without prejudice.

6            In his pleading, Mr. Mandry also requested certain

7    documents in his pleading.  The Commonwealth, to the extent

8    those documents were handy and were not -- and were not

9    public, provided those documents to Mr. Mandry.

10           Importantly, none of the pleadings filed by

11   Mr. Mandry challenged the assumption of the lease or the

12   debtors' business judgment in assuming the lease.

13           To the extent Mr. Mandry nonetheless seeks to block

14   the assumption of the shooting range lease, we think his

15   pleadings are flawed for a few reasons.  The first one,

16   Mr. Mandry lacks standing.  Mr. Mandry -- only direct parties

17   to a contract can challenge the assumption or rejection of a

18   contract under Section 365.

19           Your Honor, we've cited the In Re:  ANC Rental

20   Incorp. case and the In Re:  James Wilson Associates case.

21   Both of them were relying on the First Circuit case In Re:

22   Dein Host, which held that only the contracting parties have

23   standing.

24           Mr. Mandry does not claim to be a party to the

25   contract and, therefore, lacks standing.  As I mentioned

```
 1   before, the only issue before the Court is the debtor's

 2   business judgment.  Mr. Mandry does not attack this business

 3   judgment, and thus the allegations are simply irrelevant, the

 4   allegations he makes in this pleading.

 5        I would just mention, Your Honor, that this is not

 6   the appropriate forum to adjudicate these kind of allegations,

 7   and nothing in this Proposed Order prevents Mr. Mandry from

 8   bringing such complaint in the appropriate forum.  So even if

 9   Your Honor enters the Order, nothing prevents Mr. Mandry from

10   going on with his claims against third parties basically.

11        THE COURT:  And that is something that I do want to

12   be clear about.  Your Order doesn't ask me to rule on the

13   validity of the claim of title by the people who are

14   signatories to those agreements.  You are simply asking to be

15   able to continue whatever rights you have under the lease.

16        And to the extent Mr. Mandry wants to attack the

17   validity of that lease against the Casals and other parties to

18   that lease, or attack the chain of title that led to them

19   having the property, I'm not being asked to rule on those

20   issues at all.

21        MR. BARAK:  Absolutely, Your Honor.  And we made that

22   clear to Mr. Mandry, that this motion was brought because of

23   the Code.  And if we don't make a positive motion to assume,

24   it will be rejected.  We're only trying to preserve the status

25   quo.  We're not trying to make Your Honor rule on who has
```

1   title to this plot of land.

2           THE COURT:  Thank you.  You may complete your remarks

3   now.

4           MR. BARAK:  I'm actually done.  If Your Honor has any

5   more questions, I'll be happy to answer.

6           THE COURT:  No thank you.  I have no more questions

7   for you at this point.

8           Mr. Mandry.

9           MR. MANDRY:  Hello, Your Honor.  Javier

10  Mandry-Mercado on behalf of myself.

11          There are several issues to what the movant is

12  talking about, but I think I will address the most important

13  one, which is the one that I did not present directly.  This

14  was -- this would actually be the core issue.  And I contend

15  that the government is acting against its own best interest

16  and that that assumption -- assuming that contract will go

17  against the state's ability to repay its debt.

18          And the reason I say that, Your Honor, is because I

19  have -- the information that I have is that that one dollar --

20  I forget what it was -- it was a one dollar annual fee.  Even

21  though it appears to be a good contract, I have information

22  that -- to prove that this contract was actually an illegal

23  transfer of debt which arose from a case between the

24  Commonwealth of Puerto Rico and Eduardo Mandry for things

25  that -- I'm not completely certain of every detail of this

1    case, just about some things that happened that he did.

2         And so the person, the lawyer representing the state,

3    I contend that she didn't act at arm's length reaching a

4    certain agreement that went against the state's best interest.

5    I'm sorry.

6         So this is the course that I can now -- let's just

7    say I have a -- if I were to buy a lottery ticket to say that

8    this is what happened, I would purchase it.  And the reason is

9    because I know how the people that are behind it work.  And I

10   would not have done it otherwise.  It's just something I

11   understand, the issue.

12        And regarding the standing issue, there's -- I filed

13   a claim that I have standing in one, third-party standing,

14   just -- I think that alone, even though just the fact that I

15   can claim that I am a prior owner and there's some issues, are

16   even probable -- it would give me standing to that.

17        And the other one would be that I, as a citizen of

18   Puerto Rico, and a seeker of transparency, which is not only

19   what the Court wants, but I believe what Congress -- the

20   intention that it has to pass the PROMESA case in the first

21   place, because of an overall lack of transparency.  So I

22   contend that there's a lack of transparency with this

23   transaction.

24        And so -- and there is something, the fact that all

25   the automatic stays from the people -- I have concerns that I

1    would like this Court to revisit.  And there's a parallel

2    issue.  It's that the definition of who the debtor is, the

3    debtor -- well, the debtor being the Puerto Rico creditor.

4    And the people are being considered creditors in all the

5    automatic stays, even though they're not creditors at the time

6    that this might be the case.

7            But I think that the -- there's an overall problem

8    with the definition of creditor, between that and the fact

9    that the liability of the bond fund companies that are -- let

10   me repeat that, the bond fund companies, the ones that are

11   really the liability owners.

12           And I suggest that the fact that -- considering

13   seriously the creditors that violate our substantive due

14   process rights, to be able to reclaim certain rights,

15   inalienable rights from the state, which are services they're

16   supposed to provide.  So that's regarding the standing.

17           There is a supplemental issue that would be --

18   actually, that's how you call it.  It's a subsidiary or

19   supplemental jurisdiction regarding what is that first course,

20   the part that I haven't -- I haven't commissioned and cannot

21   know the interest that this case would have had in the first

22   place to go into that contract.

23           So the -- just the fact that I have that, that means

24   it would make this conversation, this assumption issue, it

25   would moot it.  It would be moot.  So I would -- I think it's

```
 1    something that it has to be resolved before.  But I am one
 2    hundred percent certain I have the information that leads to a
 3    lift of any property interest that the state -- I have
 4    information that there's a process to have the Court obtain
 5    authorization for the legal sale, because I was a minor.  And
 6    because that did not happen, even they were saying that
 7    everyone would have to be a party, a party to my request.
 8         I'm not destroying anyone's rights.  I'm actually
 9    creating them.  So there -- I would point out that to
10    determine the jurisdiction at this point would not be timely.
11         THE COURT:  So --
12         MR. MANDRY-MERCADO:  And the third allegation, which
13    is following that, would be that I also have information that
14    the deeds that entitled Eduardo Mandry the right to be able to
15    enter into that contract, that it's annullable as well,
16    because the comments are annulled.
17         And as far as I know, he never paid me anything.  So
18    value leads the contract to be null, and these to -- excuse
19    me.  I need some water.  I stutter a bit.  Yes -- to third
20    parties as good faith.  See, the owner of this property is the
21    Municipality of Ponce, and because it was -- I can prove that
22    they're not a third party of good faith, and the fact that
23    they're not in good faith and entering into a contract where
24    the other party is in good faith, there's something that that
25    goes back to.  The issue of me having standing over the
```

1 | matter.

2 |          THE COURT:  And I have read, Mr. Mandry --

3 |          MR. MANDRY-MERCADO:  Yes.

4 |          THE COURT:  I have read very carefully the written

5 | submissions that you have made in which you have raised your

6 | issues about the transactions when you were a minor, and about

7 | issues of potential fraud with respect to this lease.  So you

8 | don't need to repeat them, because I have studied your papers

9 | quite carefully.

10 |          MR. MANDRY-MERCADO:  Okay.  I understand.

11 |          THE COURT:  So is there anything further that you

12 | wanted to say before I let Mr. Barak respond?

13 |          MR. MANDRY-MERCADO:  Well, just to clarify that the

14 | core topic is one that I never brought it up before.  It's one

15 | that I actually thought about just yesterday.  And so that's

16 | something that I just -- I think this Court should consider,

17 | the fact that it's actually going against the interest of

18 | Puerto Rico.  And it's against their capacity to pay just in

19 | the manner that it took -- there was a transaction from that

20 | case, and they transformed it in a certain way that it -- that

21 | it ended up as a rental.  And a rental which is one dollar per

22 | year, which is -- it's obvious, it's more than obvious that

23 | that's not the real value.  So there --

24 |          THE COURT:  Yes.  Thank you.

25 |          MR. MANDRY-MERCADO:  -- I would propose that there

1    would have to be some discovery to -- so that this would be

2    proven.  But the fact that there is that other issue of

3    annulment, even though it's not within the narrow guidelines

4    of this Court, I suggest that it should be supplementary in an

5    adversary proceeding, because the one thing would annul, would

6    move the other --

7              THE COURT:  Thank you.

8              MR. MANDRY-MERCADO:  It renders it moot.

9              THE COURT:  Thank you.

10             MR. MANDRY-MERCADO:  So --

11             THE COURT:  Thank you.  I think I do understand your

12   argument in that regard.  And so thank you, Mr. Mandry.

13             Mr. Barak.

14             MR. BARAK:  Yes, Your Honor.  Ehud Barak for the

15   Oversight Board and for the debtors.  I think most of

16   Mr. Mandry's argument is outside the scope of the motion.  As

17   we made clear, nothing in this motion would prejudice him in

18   bringing any complaint that he wants to bring with respect to

19   the ownership of the title to the lot.

20             If Your Honor has any questions for me about the

21   Motion to Assume itself, I'll be happy to answer.  If not, I

22   will rest.

23             THE COURT:  Thank you, Mr. Barak.  I did read very

24   carefully all of the submissions in advance of today, and I

25   have listened carefully to everything that has been said in

1    connection with this Motion for an Order Authorizing the

2    Assumption of the Agreement with Eduardo Jose Mandry-Mercado

3    and Lucia Casas Casal pursuant to Section 365.  And the motion

4    is at docket entry number 1881.

5          The only opposition has been filed by Mr. Mandry from

6    whom we have heard on the record today.  And the core issue

7    raised in his paper submission is that he alleges that there

8    was fraud and there were due process violations in prior

9    transactions and Commonwealth court proceedings over the past

10   three decades, leading up to the agreement that the

11   Commonwealth now seeks to assume.

12         In his oral argument today, he also asserted that

13   the -- there is some corruption underlying the particular

14   lease, and that it is not a good business decision for the

15   Commonwealth to assume the lease.

16         For the following reasons, Mr. Mandry's objection is

17   overruled.  His request for discovery and request that he be

18   permitted to commence an adversary proceeding in this Court

19   for adjudication of his issues regarding the underlying

20   ownership of the leased property is also denied.  And the

21   Court grants the Commonwealth's Motion for Approval of the

22   Assumption of the Lease.

23         Section 365 of the Bankruptcy Code, which is made

24   applicable to these Title III proceedings by Section 301 of

25   PROMESA, provides that subject to the approval of the Court, a

debtor may assume or reject any executory contract or
unexpired lease of the debtor subject to curing defaults and
providing assurance of future performance.

Courts generally defer to the debtor's business
judgment when determining whether the assumption of an
executory contract or unexpired lease is appropriate under
Section 365(a) of the Code, and the Court will not substitute
its own judgment for that of the debtor.  See the Orion
Pictures decision at 4 F.3d 1095, page 1099, a 1993 decision
of the Second Circuit.

The debtor has demonstrated and affirmed to the Court
that in the debtor's judgment, assumption of the agreement is
in the best interest of the Commonwealth because it will
provide the police department with continued access to the
property for at least three more years at the stated cost of a
dollar per year, and that access to the property will assist
in the training of the police force.

Mr. Mandry has suggested that that is a decision that
he wouldn't make, but it is the decision that the Commonwealth
has made and the Court accepts it.  The lessors did not
object.  No other party to the agreement objected to the
proposal to assume it.

Mr. Mandry's objections on the grounds of ownership
rights in the property and transparency as to transactions are
not ones that establish that he has standing.  And indeed,

1    they are not ones that indicate that his ability to pursue

2    those positions in a proper forum, a court of jurisdiction

3    over those issues, would be affected.

4        The Court's approval of this lease assumption motion

5    does not affect the current title to the property, and it will

6    not prejudice any rights of Mr. Mandry in pursuing his

7    arguments.

8        The transparency argument that he has made is not one

9    that is relevant to the narrow issues under Section 365, and

10   the parties who have rights to raise issues under 365, and the

11   generalized notion that citizens have the right to object to

12   and raise barriers to decisions by the debtor by virtue of

13   their general citizenship is not an appropriate ground for

14   recognition of standing either.

15       Mr. Mandry has not demonstrated that he currently has

16   a legally recognized title interest in the property.  And so

17   his argument that he believes he can prove ultimately that he

18   is an owner of the property does not give him standing to

19   oppose the lease assumption motion at this juncture.

20       And this Title III bankruptcy proceeding is not a

21   proper forum for litigation of his dispute regarding the

22   validity of the lessor's title to the property.

23       Therefore, to the extent he seeks relief from the

24   Court concerning those matters, the requests are denied

25   without prejudice to any proceedings he may wish to pursue in

1   a Commonwealth court of competent jurisdiction concerning

2   title to the property.

3        And so I will finish my ruling, and then I understand

4   Mr. Mandry raised his hand.  But first I will finish my

5   ruling.  I will enter an Order overruling the objections and

6   granting the motion to assume the agreement.

7        Mr. Mandry, you had raised your hand on the virtual

8   screen.

9        MR. MANDRY-MERCADO:  Yes.  And I understand your

10  ruling, but I do have one thing to add on that issue, that the

11  Order -- Puerto Rico, to its situation, it specifically -- I

12  confess that it's the lack of transparency in these type of

13  actions that are better for -- that there are state actors

14  acting behind the state to accumulate debt.  And that debt

15  will be passed on to the citizens in the form of taxes and

16  increased cost of living.

17       So I just -- I really -- I think I speak from the

18  heart and try to represent obviously a million people that

19  are -- that the state is not representing in its part in my

20  opinion.  But I really think that there is a problem, because

21  it -- the state is not acting properly.  And I'm doing what is

22  correct for the people who will be the ones who will suffer

23  from the debt.

24       Then not considering us as part interest in this

25  agreement would be -- I don't know.  It's troubling.  But the

1   state would be acting against the best interests of its

2   creditors and of its people.  So I really -- I just wanted to

3   say it from the heart, because I really feel it's an issue

4   that has not been addressed.  So that's what I wanted to say.

5           THE COURT:  Thank you, Mr. Mandry.

6           And I have made my ruling on this motion.  The issue

7   of transparency and effects of lack of transparency in the

8   past, and the people's confidence in the government going

9   forward are clearly very important issues that surround and

10  infuse in many ways these proceedings.  And they are ones of

11  which the Court is mindful.

12          I took your arguments into account in making my

13  ruling on the legal standards that apply to this ruling.  And

14  so that will stand.  And I thank you for your participation

15  today.

16          MR. MANDRY-MERCADO:  Thank you.

17          THE COURT:  Thank you.  And so at this point, since

18  we have matters that have been deferred to second call after a

19  conference, would a break of 20 minutes be appropriate or

20  should we take an early lunch break and come back in an hour?

21          MR. POSSINGER:  Your Honor, Paul Possinger again for

22  Proskauer Rose.  I think an hour break would be appropriate.

23  So if that means lunch, then so be it.

24          THE COURT:  Well, it's whatever people want to do in

25  their hour.  So let's reconvene at 12:30.  That will make it

1  an hour and five minutes.  Use those extra five minutes

2  well.

3          MR. POSSINGER:  Perfect.  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          (At 11:22 AM, recess taken.)

6          (At 12:52 PM, proceedings reconvened.)

7          THE COURT:  Buenas tardes.  Please be seated.

8          MR. DECHIARA:  Good afternoon, Your Honor.  Peter

9  DeChiara for the Service Employees International Union and the

10  United Auto Workers Union.

11          Your Honor, I'm pleased to inform the Court that the

12  parties have reached an understanding as to how to proceed.

13  And if the Court will allow me, I'll read our understanding

14  into the record.

15          The UAW and SEIU will not ask the Court to hear or

16  decide today the merits of the motion of AFT and AFSCME that

17  they have joined.  AAFAF, AFT and AFSCME do not object to

18  this.

19          The Court will approve the stipulation today, but

20  only as to AFT and AFSCME.  Even though UAW and SEIU do not

21  join the stipulation and have not signed it, the Commonwealth

22  states its intent to apply its terms to the UAW and SEIU for a

23  period of 60 days.

24          If the UAW and SEIU determine during this 60-day

25  period that they will not sign the stipulation, either or both

1   may propose to the Commonwealth, AFT and AFSCME that the

2   stipulation be revised to address their concerns, or request

3   that the Court rule on the merits of the AFT and AFSCME motion

4   as originally filed and as supported by any additional filings

5   that any of the parties may make with respect to that motion.

6          THE COURT:  And so I'm glad to hear that there's this

7   interim resolution.  Are you asking that I carry the --

8          MR. DECHIARA:  The joinder.

9          THE COURT:  -- your part of the motion to the April

10  calendar or what do I do logistically?

11         MR. DECHIARA:  Your Honor, it would be our preference

12  to allow our joinder to remain on the docket, but we would

13  proceed as indicated by what I read.

14         THE COURT:  And so then you can -- it's for 60 days,

15  so maybe you'll give me a status report at the June Omni?

16         MR. DECHIARA:  That would be fine.

17         THE COURT:  Thank you.

18         Mr. Friedman and Ms. Levine.

19         MR. FRIEDMAN:  Peter Friedman from O'Melveny & Myers

20  on behalf of AAFAF, Your Honor.  First of all, this is

21  consistent with our agreement.  Second, I want to thank in

22  particular AFT and AFSCME and its lawyers for working with us

23  very hard to get to this point.

24         And I want to say that this resolution certainly of

25  the agreed-to stipulation is extremely important to the

```
 1   Governor -- the Governor himself, as well as the government.

 2   It represents the debtor being willing to modify the stay and

 3   the process in a really important way out of respect for the

 4   working men and women of Puerto Rico who are public employees

 5   in order to move on in the grievance process.

 6            And we're quite pleased with this outcome and

 7   resolution.  And I hope that we are able to even move further

 8   on down the road with the rest of our public employees.

 9            THE COURT:  I'm glad to hear this.  Thank you,

10   Mr. Friedman.

11            Ms. Levine, would you like to speak?

12            MS. LEVINE:  We'll take yes for an answer.

13            THE COURT:  Very well.  And so I will enter the

14   stipulation as proposed today.

15            And so that leaves us with the PBA Funds and lease

16   extension issues.  Where do we stand?

17            MR. POSSINGER:  Good afternoon, Your Honor.  Paul

18   Possinger from Proskauer Rose.

19            Your Honor, we have reached an agreement with respect

20   to an Order on the PBA Funds' motion which seeks either

21   payment of an administrative rent claim to PBA or allowance of

22   an administrative rent claim in favor of PBA.  And the Order

23   will address the latter, if not the former.

24            The language is a little convoluted at the moment, so

25   I've been designated scrivener, hand writing in these changes.
```

```
 1    I think it might be prudent to let me finish that, have
 2    everybody sign off.  And I think, you know, with ten minutes
 3    or so I can get that done, and then I can describe the changes
 4    on the record.
 5         THE COURT:  That's fine.  And then as to the lease
 6    extension motion, is that something that's being resolved
 7    consensually in relation to that as well?
 8         MR. POSSINGER:  The parties who have either filed the
 9    PBA Funds motion or joined the PBA Funds motion are the only
10    parties that have filed anything with respect to item number
11    three on the agenda, the 365(d)(4) motion.  And this will also
12    resolve any response in opposition to that motion, and it can
13    just be granted.
14         THE COURT:  And I'm sorry, I mischaracterized.  It's
15    the extension of time to assume or reject the lease.
16         MR. POSSINGER:  Yes.  And it would be for all
17    debtors, only leases in which PBA is the purported landlord,
18    and that extension goes to July 25th.  So we'll be back at the
19    July Omnibus presumably with a similar motion.
20         THE COURT:  Very well.  So do you want to take a
21    ten-minute recess, and then we'll come back, or should I --
22         MR. POSSINGER:  I think we should do that.  The
23    language has been subject to some scrutiny.  I just want to
24    make sure we get it right.  Maybe 15 minutes.
25         THE COURT:  All right.  So let's plan to -- we'll
```

1    plan to reconvene at 1:15, and I will send a scout out at

2    about 1:14 to find out if everybody's ready.

3              MR. POSSINGER:  Thank you, Your Honor.

4              THE COURT:  All right.  Thank you.

5              (At 1:00 PM, recess taken.)

6              (At 1:29 PM, proceedings reconvened.)

7              THE COURT:  Please be seated.

8              MR. POSSINGER:  Your Honor, once again we appreciate

9    your patience.  I think we have been able to finalize the

10   Order.

11             THE COURT:  I'm not sure if that's this computer

12   singing.  There you go.  It always happens when we try to

13   facilitate a resolution.

14             Will you read the Order into the record or --

15             MR. POSSINGER:  That's going to be difficult, because

16   I think what you have is a markup of a clean version that

17   itself was a markup.

18             So the Proposed Order that was actually filed with

19   the motion was black lined, then hand marked up.  So what you

20   have is the ultimate hand markup without the lining.  So to

21   navigate both from the podium might be difficult.

22             But the parties have all agreed upon the language as

23   I wrote it up on that clean version, and so what we suggest is

24   we will submit that on presentment.

25             THE COURT:  Very good.  And so Mr. Peck, will you

1   confirm that you are -- you have no objections to the form or

2   substance of this Proposed Order?

3          MR. PECK:  Your Honor, I confirm that we've been

4   involved throughout today's hearing in active, arm's length

5   negotiations over language designed to resolve the motion

6   brought by the PBA funds.  We are satisfied that the language

7   which reflects a major compromise, I might add, of positions

8   on the part of all parties fairly reflects the understandings

9   reached.

10          And we appreciate the patience of the Court and the

11   involvement of all parties at interest at getting us to what

12   we think is an effective resolution of this dispute that

13   avoids conflict on the record and that preserves rights.

14          THE COURT:  Thank you.

15          MR. PECK:  Thank you.

16          THE COURT:  Yes, Mr. Friedman.

17          MR. FRIEDMAN:  Your Honor, Peter Friedman from

18   O'Melveny & Myers on behalf of AAFAF.  Mr. Mayr, who

19   represents the QTCB noteholders, asked me to make the

20   following statement, which is accurate, which is that AAFAF

21   and QTCB, as well as other parties, have agreed in form to a

22   forbearance agreement on behalf of PBA itself.

23          We are hopeful that we will be able to bring all PBA

24   creditors who have filed a motion or joined into litigation

25   over this into the forbearance agreement, which would resolve

 1   as well that debtors are engaged in a resolution of this

 2   motion from the debtors' side, but also enable PBA to enter

 3   into a resolution of the issue of its creditors, or at least a

 4   forbearance agreement with the creditors from the PBA side,

 5   which we also think would be a positive agreement.

 6           THE COURT:  Thank you.  And so Ambac had joined the

 7   motion, I believe, trying to keep track of everyone who's

 8   filed papers.  So basically, if there is anyone else --

 9   please, Ms. Miller, come to the podium.

10           And so do you have any objections in form or

11   substance to this?

12           MS. MILLER:  We have no objection in form or

13   substance.  We were also actively involved in the drafting and

14   negotiations of the proposed decree, Order and have no

15   objection.

16           THE COURT:  Thank you.

17           And so is there anyone else who filed papers in

18   connection with either agenda item two or agenda item three?

19           MR. PEREZ-OCHOA:   Good afternoon, Your Honor.  Eric

20   Perez-Ochoa on behalf of National Public Finance.  We also

21   join Ambac's joinder, and in form or substance do not have

22   major objections to the Order that will be presented.

23           THE COURT:  Thank you.

24           MR. MAYR:  Good afternoon, Your Honor.  Kurt Mayr

25   from Bracewell on behalf of the QTCB Noteholder Group.  I

1   just -- our issues are resolved by the sort of joint

2   resolution here of the Order and the forbearance arrangements

3   that we hope will provide more transparency in consultation

4   with the creditors with regard to the four billion dollars of

5   PBA bonds that are guaranteed by the Commonwealth and,

6   therefore, an issue in these proceedings as well.

7            THE COURT:  Thank you.

8            MR. DESPINS:  Good afternoon, Your Honor.  Luc

9   Despins on behalf of the Committee.  The Committee signed off

10  on that Order.

11           THE COURT:  Thank you.

12           MR. POSSINGER:  And with respect to the forbearance,

13  that was an endeavor largely spearheaded by Mr. Mayr and

14  O'Melveny, and so a special thanks to them for pulling this

15  whole thing together.

16           The markup that you have will be the language that we

17  submit.  We cannot -- I can also provide a cumulative black

18  line from the Proposed Order that they filed with the motion.

19  It may be messy --

20           THE COURT:  That won't be necessary.

21           MR. POSSINGER:  Pardon?

22           THE COURT:  I don't think that will be necessary --

23           MR. POSSINGER:  Fine.  I figured I'd offer.

24           THE COURT:  -- because I need to read it in a

25  coherent form.  But right now it's captioned, Order Resolving

1  the Motion for Repayment of Rent.  And so will you also in the

2  final version, will there be some reference to the extension

3  of time to assume or reject, or do you plan to submit a

4  different Order on that?

5          MR. POSSINGER:  The Proposed Order that we filed with

6  the motion should be sufficient, but we can send that to

7  chambers clean as well.  And we'll circulate that among the

8  parties to make sure there's no issue, but I don't believe

9  there's going to be an issue.  That is simply for PBA leases,

10  there will be 120 days, roughly 120 days extension to July the

11  25th.

12          THE COURT:  I think you said the 27th, actually.

13          MR. POSSINGER:  I was thinking because July is the

14  seventh month -- but July 25th.

15          THE COURT:  All right.  Whichever date it is, I would

16  be grateful for resubmission under cover of a notice that says

17  that everyone has agreed to both proposed orders.

18          MR. POSSINGER:  Actually, I think we submitted an

19  amended Order on that because the original request was for 180

20  days.

21          THE COURT:  Yes.

22          MR. POSSINGER:  And we shortened it to 120 days.

23          THE COURT:  Yes.  I think that's 2571 or something

24  like that.  You did submit an amended Order on shortening it

25  to a date in July.

```
 1            MR. POSSINGER:  Okay.

 2            THE COURT:  And so if everyone is willing -- yes,

 3    2571.  And that, just a moment, extends the deadline through

 4    and including July 27, 2018.

 5            And so is there any objection to my entering 2571-1

 6    as presented or do you want a chance to circle around with

 7    everybody again?

 8            MR. PECK:  Your Honor, James Peck of Morrison &

 9    Foerster.  We filed a limited objection to the relief

10    requested under 365(d)(4.)  It was essentially a

11    cross-reference to issues raised in the motion of the PBA

12    Funds for payment of rent.

13            As a consequence of the resolution of that, we

14    withdraw all objections to the entry of the Order extending

15    for 120 days to the July date.  And so at least from our

16    perspective, there's no issue in entering the Order as

17    presented.

18            THE COURT:  Thank you.

19            MR. PECK:  Thank you.

20            THE COURT:  Does anyone else who spoke to that motion

21    have any objection to my entering that Order?

22            Seeing no hands raised, I will then enter the 2571-1

23    Order today, and I will await submission of the clean

24    iteration of the negotiated Order resolving the rent payment

25    motion.  And I will also anticipate the -- Mr. Friedman, is
```

1   the forbearance agreement one that will be submitted for so

2   ordering --

3           MR. POSSINGER:  No, Your Honor.  That is an

4   arrangement between a non-debtor.  It's an instrumentality.

5           THE COURT:  Yes.

6           MR. POSSINGER:  But it's not a debtor.  And it's with

7   its bond creditors.

8           THE COURT:  Very well then.  So I'll just await the

9   clean Order resolving the motion for payment of rent.  And I

10  thank you all for your hard and effective work with each

11  other.

12          MR. POSSINGER:  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          And so I think that that has taken us through our

15  calendar.  There are certain matters that are adjourned as

16  detailed in the agenda to the April Omni, and we've agreed to

17  a status report at the June Omni on the UAW and SEIU and

18  everybody else, the labor issues.

19          And I will anticipate a further update on the PREPA

20  financing issue at or before the March 27 argument date on the

21  preliminary injunction motion practice.

22          Is there anything else that we should take up

23  together this afternoon?

24          MR. POSSINGER:  Nothing that I'm aware of, Your

25  Honor.

1            THE COURT:  Well, I thank you all.  I particularly

2    want to thank the court staff here in Puerto Rico and in New

3    York for all of their work in support of these cases, and

4    particularly for the arrangements for today.

5            I hope that everyone will be able to travel both

6    safely and promptly, to the extent we all need to travel, and

7    I will look forward to seeing some combination of everyone the

8    next time I have occasion to see some combination of everyone.

9    Keep well.

10           MR. POSSINGER:  Thank you.

11           (At 1:39 PM, proceedings concluded.)

12                            *      *      *

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   U.S. DISTRICT COURT    )

 2   DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 68 pages is

 5   a true and accurate transcription to the best of my ability of

 6   the proceedings in this case before the Honorable United

 7   States District Court Judge Laura Taylor Swain on March 7,

 8   2018.

 9

10

11

12

13   S/ Amy Walker

14   Amy Walker, CSR 3799

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 16 6:1
April 23rd 6:2
July 25th 59:18,
   64:14
July 27, 2018 65:4
March 27 6:12, 66:20
March 28 5:21
March 7, 2018 1:16,
   4:2, 68:7
November 29, 2017
   42:3
October 6th 13:1
September, 2017 9:7

< 1 >
1095 52:9
1099 52:9
10th 14:9
11 15:16, 15:18,
   18:19, 22:21, 23:1
11:22 56:5
120 64:10, 64:22,
   65:15
12:30. 55:25
12:52 56:6
15 59:24
17-BK-3283(LTS 1:6
17th 8:2
18 8:21
180 64:19
1881. 51:4
19 8:21
1993 52:9
1:00 60:5
1:14 60:2
1:15 60:1
1:29 60:6
1:39 67:11

< 2 >
20 26:6, 55:19
2021. 42:19
22nd 8:2
250 5:22
2571 64:23
2571-1 65:5, 65:22
2571. 65:3

25th 64:11
26 19:16
27th 64:12

< 3 >
300 5:24
301 51:24
301. 42:7
30th 13:2
316 10:13, 18:25,
   19:1, 22:17
317 10:13, 18:25,
   19:2
365 42:6, 51:23,
   53:9, 53:10
365(a 52:7
365(d)(4 59:11
365(d)(4. 65:10
365. 43:18, 51:3
3799 68:14
3: 1:6

< 4 >
4 52:9

< 5 >
50 6:6
550 5:24

< 6 >
60 56:23, 57:14
60-day 56:24
68 68:4

< 9 >
994. 42:4
9:30 4:3

< A >
A. 2:28
AAFAF 8:24, 26:22,
   31:19, 32:1, 32:5,
   35:7, 35:13,
   35:15, 35:20,

36:12, 38:9,
   38:23, 39:2,
   39:12, 40:1,
   56:17, 57:20,
   61:18, 61:20
ability 14:21,
   15:21, 17:22,
   35:15, 45:17,
   53:1, 68:5
able 6:15, 7:15,
   7:19, 18:5, 22:8,
   25:8, 35:8, 41:1,
   41:6, 44:15,
   47:14, 48:14,
   58:7, 60:9, 61:23,
   67:5
above 6:7
absent 12:7
Absolutely 19:23,
   40:1, 44:21
accept 42:9
acceptable 32:10,
   39:12, 40:1
accepts 52:20
access 52:14, 52:16
accommodate 16:11
accommodating 28:6
accommodations 12:23
accordance 40:18,
   42:4
accordingly 26:19
account 55:12
accountability 18:22
accounting 19:21
accumulate 54:14
accurate 61:20, 68:5
accurately 15:3
accusations 43:3
act 46:3
acting 45:15, 54:14,
   54:21, 55:1
action 26:16, 30:9,
   31:12, 43:5
actions 54:13
active 61:4
actively 62:13
activities 16:13
actors 54:13
Actually 24:17,
   30:24, 32:15,

34:25, 36:9, 45:4,
45:14, 45:22,
47:18, 48:8,
49:15, 49:17,
60:18, 64:12,
64:18
add 22:4, 24:2,
54:10, 61:7
additional 5:22,
6:17, 11:11,
11:12, 12:7, 17:6,
17:8, 23:10, 57:4
address 45:12, 57:2,
58:23
addressed 20:19,
41:17, 55:4
adjourned 30:17,
66:15
adjourns 13:21
adjudicate 44:6
adjudication 51:19
adjustments 9:8,
12:22, 25:17
Administered 1:11
administrative
58:21, 58:22
advance 50:24
adversary 50:5,
51:18
advice 16:25, 21:18
advise 6:11, 12:5,
18:6
advisors 19:21
Advisory 2:5
advocating 21:16
affect 21:25, 30:14,
53:5
affected 8:20, 9:3,
53:3
affirmed 42:12,
52:11
afford 24:23
AFSCME 28:21, 32:24,
33:23, 34:3,
37:11, 39:1,
39:12, 56:16,
56:17, 56:20,
57:1, 57:3, 57:22
AFT 33:23, 34:3,
37:11, 38:19,

39:1, 39:12,
56:16, 56:17,
56:20, 57:1, 57:3,
57:22
afternoon 13:20,
56:8, 58:17,
62:19, 62:24,
63:8, 66:23
Agency 2:4
agenda 8:10, 26:1,
27:11, 29:22,
41:24, 59:11,
62:18, 66:16
agent 28:19
ago 6:5
agreeable 27:23
agreed 17:15, 29:2,
29:13, 29:14,
39:15, 60:22,
61:21, 64:17,
66:16
agreed-to 57:25
Agreement 26:6,
26:14, 27:13,
29:21, 35:23,
38:3, 39:7, 46:4,
51:2, 51:10,
52:12, 52:21,
54:6, 54:25,
57:21, 58:19,
61:22, 61:25,
62:4, 62:5, 66:1
agreements 43:2,
44:14
aid 24:25
al 1:16, 1:35
albeit 43:5
allegation 48:12
allegations 41:14,
44:3, 44:4, 44:6
alleges 51:7
alleviated 11:19,
35:19
allocation 26:6,
27:13, 29:3
allow 16:14, 30:11,
30:18, 56:13,
57:12
allowance 58:21
allowed 40:12

allowing 30:23
allows 30:21
Almost 36:10
alone 46:14
already 5:4, 23:14,
25:1
alternative 30:9
alternatively 33:1
Ambac 2:33, 62:6,
62:21
Amended 11:8, 64:19,
64:24
amendment 21:6, 21:8
American 2:20, 2:23,
28:18, 30:2, 30:3
among 38:2, 64:7
amount 15:23, 18:2,
24:21
Amy 68:13, 68:14
ANC 43:19
and/or 35:4
Annette 32:23
announce 29:23
annual 45:20
annul 50:5
annullable 48:15
annulled 48:16
annulling 43:1
annulment 50:3
answer 10:14, 13:24,
14:3, 45:5, 50:21,
58:12
answers 11:12
anticipate 11:4,
14:16, 21:13,
65:25, 66:19
anticipated 21:1
anticipation 27:4
anyway 40:3
apologize 8:19, 9:3
appear 40:11
appearance 13:18
APPEARANCES 1:31,
2:1
appearing 11:24
appears 20:8, 35:10,
45:21
applicable 51:24
applicants 23:17
application 8:1,

9:1, 12:12, 13:6,
13:10, 14:24,
15:1, 15:22, 16:9,
18:1, 21:14,
25:20, 28:13,
31:20, 40:10
applications 9:6,
9:8, 10:10, 17:13,
22:19, 23:9,
23:11, 23:12,
25:22, 25:23
applies 39:18, 39:20
apply 35:1, 55:13,
56:22
appointed 13:1,
22:24
appointing 21:8
appointment 13:4
appreciate 8:4,
9:19, 28:6, 60:8,
61:10
appreciated 7:22
approach 13:4, 19:6,
21:15
approaches 21:17
appropriate 21:19,
23:13, 34:6,
34:19, 44:6, 44:8,
52:6, 53:13,
55:19, 55:22
appropriately 18:6
Approval 5:22,
51:21, 51:25, 53:4
approve 7:2, 9:8,
24:1, 56:19
approving 35:25
approximately 11:10
April 6:3, 7:7,
7:10, 25:23, 27:1,
57:9, 66:16
arbitration 33:8,
37:11
arbitrations 35:9
arbitrator 36:13
areas 24:3
arguably 35:11
argue 30:8, 32:16,
36:25
argued 24:17
argues 42:25

arguing 29:9
argument 38:9,
39:17, 39:18,
39:23, 40:4,
40:20, 50:12,
50:16, 51:12,
53:8, 53:17, 66:20
argumentation 33:16
arguments 53:7,
55:12
arm 46:3, 61:4
Arnstein 28:21
arose 45:23
around 15:6, 18:20,
65:6
arrangement 66:4
arrangements 25:2,
63:2, 67:4
ARRIBAS 2:16, 22:13,
22:16
arrived 28:1
arriving 7:17
aside 26:1
asks 29:19
Asociaci 28:19
assert 36:14
asserted 51:12
assigned 16:5
assignment 14:21,
19:11
assist 52:16
Associates 43:20
Assume 41:25, 42:9,
42:13, 44:23,
50:21, 51:11,
51:15, 52:1,
52:22, 54:6,
59:15, 64:3
assuming 43:12,
45:16
Assumption 40:8,
42:5, 42:10,
42:14, 42:21,
43:11, 43:14,
43:17, 45:16,
47:24, 51:2,
51:22, 52:5,
52:12, 53:4, 53:19
Assurance 2:33,
17:8, 52:3

Atara 2:34
attachments 25:20
attack 44:2, 44:16,
44:18
attempt 31:5
attendance 11:24,
12:2, 12:11,
12:13, 14:13,
14:17, 16:23
attended 24:16
attending 15:23
attention 25:15,
38:5
attorney 4:17, 4:18,
15:22, 15:23,
17:25
attorneys 4:13,
4:16, 11:24, 24:15
audible 5:5
Authority 2:5,
20:25, 21:5
authorization 48:5
authorizes 22:17
Authorizing 51:1
Auto 28:25, 56:10
Automatic 26:5,
26:15, 46:25, 47:5
available 8:3,
13:24, 22:6, 25:2
avoid 25:9
avoided 38:12
avoids 61:13
await 65:23, 66:8
aware 13:7, 24:18,
66:24

< B >
back 4:8, 31:1,
33:11, 48:25,
55:20, 59:18,
59:21
backing 36:6
bad 5:18
balance 18:5
Bankruptcy 1:1,
15:6, 42:6, 51:23,
53:20
Bankvest 42:11
Barak 1:37, 40:23,

41:5, 41:10,
41:21, 44:21,
45:4, 49:12,
50:13, 50:14,
50:23
bargain 42:20
barriers 53:12
Barrios 2:21, 28:17,
28:18, 33:22,
38:17, 38:19
based 5:16, 13:14,
42:15
basically 13:23,
33:3, 44:10, 62:8
basis 12:6, 28:3,
28:4, 36:20, 37:2
Bauer 40:25, 41:6
becomes 33:11
began 11:13
begin 5:7, 13:11,
38:25
beginning 9:6
behalf 26:12, 26:22,
27:15, 28:21,
32:5, 38:19,
45:10, 57:20,
61:18, 61:22,
62:20, 62:25, 63:9
behavior 25:13
behind 46:9, 54:14
believe 7:10, 12:3,
28:12, 46:19,
62:7, 64:8
believes 10:11,
34:13, 36:12,
53:17
Belk 26:11
benefit 20:5, 42:17
besides 14:17
best 45:15, 46:4,
52:13, 55:1, 68:5
better 11:20, 19:8,
19:9, 19:10,
31:23, 54:13
Bienenstock 1:35,
5:6, 5:8, 5:11,
8:4, 8:9, 20:10,
21:22
bifurcated 32:7
bill 15:22, 17:24

billing 13:2, 16:3
billion 63:4
billions 24:23,
24:24
bills 6:8, 12:4,
37:23
bit 10:25, 20:5,
48:19
black 60:19, 63:17
block 34:12, 36:20,
43:13
bluntly 20:9
Board 1:10, 5:12,
8:23, 8:24, 8:25,
16:12, 20:13,
27:16, 40:24,
41:22, 50:15
bond 47:9, 47:10,
66:7
bonds 63:5
Borges 8:24
bound 24:7
Bracewell 62:25
Brady 2:13, 18:15
break 38:1, 40:3,
55:19, 55:20,
55:22
brief 8:15, 13:21,
14:1
briefing 7:17, 25:8,
25:9
briefly 32:23, 38:17
bring 38:5, 50:18,
61:23
bringing 44:8, 50:18
broad 34:10
brought 44:22,
49:14, 61:6
buckets 31:10
Buenas 56:7
buenos 4:5
burdens 18:19,
18:20, 18:21
burdensome 15:7,
16:12
business 42:11,
42:15, 42:22,
43:12, 44:2,
51:14, 52:4
buy 46:7

bypass 29:22


< C >
calendar 35:17,
57:10, 66:15
call 27:21, 40:8,
41:17, 47:18,
55:18
Cancio 8:20
capacity 49:18
Capital 42:12
captioned 63:25
careful 24:7
carefully 15:18,
23:24, 49:4, 49:9,
50:24, 50:25
Caribbean 2:10,
26:5, 26:12
Carlos 2:11, 26:11
carried 25:23
carry 57:7
Casal 51:3
Casals 44:17
Casas 51:3
case 6:11, 13:18,
15:15, 16:2,
19:19, 28:5, 42:8,
42:12, 43:20,
43:21, 45:23,
46:1, 46:20, 47:6,
47:21, 49:20, 68:6
cases 9:6, 15:11,
18:2, 22:21, 23:2,
24:20, 24:22,
30:15, 34:11,
34:15, 35:2, 67:3
CAT 2:49
catch 28:15
category 34:11
cause 7:1, 26:16
CBA 35:14
CDL 6:19
certain 25:22, 43:6,
45:25, 46:4,
47:14, 48:2,
49:20, 66:15
certainly 7:6, 21:5,
21:24, 32:18,
57:24

certify 68:4
cetera 30:22
chain 44:18
challenge 20:7,
   43:17
challenged 43:11
chambers 10:4, 64:7
chance 65:6
change 19:16, 19:17
changes 11:4, 25:13,
   58:25, 59:3
changing 7:18
Chapter 15:15,
   15:18, 18:19,
   22:21, 23:1
characterized 36:7
chooses 32:18
chose 34:22
chunks 16:5
circle 65:6
Circuit 42:12,
   43:21, 52:10
circulate 64:7
circumstance 35:10
circumstances 19:2,
   24:19, 39:4
cited 42:11, 43:19
citizen 46:17
citizens 53:11,
   54:15
citizenship 53:13
civil 42:2
claim 43:24, 44:13,
   46:13, 46:15,
   58:21, 58:22
claims 35:2, 35:3,
   44:10
clarify 49:13
clarity 39:11
clean 60:16, 60:23,
   64:7, 65:23, 66:9
clear 21:17, 31:11,
   34:1, 36:4, 38:7,
   38:20, 42:8,
   44:12, 44:22,
   50:17
clearly 41:4, 42:21,
   55:9
client 38:4
clients 19:9, 28:5,

29:8, 29:10, 30:1,
   30:5, 30:16,
   30:19, 30:23,
   30:25, 34:19
closed 4:11
closely 15:17, 23:12
closing 22:4
co-movants 31:19
Code 42:2, 42:6,
   44:23, 51:23, 52:7
codify 35:8
Cohen 28:24
coherent 63:25
collaborate 25:8
colleagues 29:20
collections 6:6,
   6:8, 7:13
color 10:25
combination 67:7,
   67:8
comfort 38:4
comfortable 17:22
coming 7:4, 21:23
commence 51:18
comment 22:4, 22:18
comments 26:23,
   48:16
Commission 6:14
commissioned 47:20
committed 39:5
Committee 1:40,
   27:18, 63:9
communicate 4:23
community 6:20
companies 47:9,
   47:10
compensable 12:9,
   12:10
compensated 20:2
Compensation 11:8
competent 54:1
complaint 44:8,
   50:18
complete 22:1, 45:2
completely 31:21,
   36:13, 37:1, 45:25
complex 24:9
compliance 23:14
complicated 7:18,
   23:23, 34:9

complications 6:21
comply 13:8
component 37:18
compressed 7:17
compromise 61:7
computer 60:11
concept 17:16
conceptual 10:19,
   10:20, 11:22
concern 12:2, 13:17,
   24:4, 34:24, 35:18
concerning 40:9,
   53:24, 54:1
concerns 11:19,
   13:16, 13:17,
   46:25, 57:2
concluded. 67:11
concurs 23:3
conducting 17:2
confer 29:24, 39:3
conference 4:21,
   55:19
confess 54:12
confidence 11:3,
   55:8
confident 13:14
confidential 17:3
confidentiality
   16:17, 17:5, 17:9,
   17:23, 18:4
confirm 26:23, 61:1,
   61:3
conflict 61:13
Congress 18:25,
   46:19
connection 51:1,
   62:18
consensual 22:9,
   28:4
consensually 59:7
consent 22:24
consenting 35:15
consequence 65:13
consequences 36:11
conserve 25:10
consider 33:15,
   49:16
consideration 9:1,
   13:5, 23:17
considered 47:4

considering 47:12,
    54:24
consistent 4:20,
    11:8, 24:1, 27:6,
    27:7, 57:21
consisting 68:4
conspiracy 43:2
constituent 37:18
constructive 22:7
consultation 63:3
consultations 39:16
consulting 19:21
contains 9:11
contemporaneously
    15:12
contend 45:14, 46:3,
    46:22
contested 21:14,
    21:16, 26:3,
    27:11, 38:10
context 11:18, 28:1
continue 13:20,
    23:11, 23:15,
    25:14, 44:15
Continued 2:1, 52:14
contract 21:2, 42:9,
    42:15, 43:17,
    43:18, 43:25,
    45:16, 45:21,
    45:22, 47:22,
    48:15, 48:18,
    48:23, 52:1, 52:6
contracting 43:22
conversation 47:24
conversations 13:15
convoluted 58:24
coordinate 10:3
copy 9:20
core 45:14, 49:14,
    51:6
Corp. 2:34
Correct 8:18, 18:9,
    54:22
correctly 36:7
corruption 51:13
cost 52:15, 54:16
costs 7:23, 13:19,
    31:14
counsel 4:6, 8:22,
    8:23, 8:24, 8:25,

9:18, 11:16,
    16:23, 19:20,
    22:6, 25:1, 25:3,
    25:7, 26:15,
    32:18, 33:22,
    39:3, 40:25
country 15:6
County 2:24, 30:4
couple 7:20, 8:18,
    10:18
course 19:19, 30:9,
    32:9, 35:16, 46:6,
    47:19
courtesy 9:20, 40:13
courthouse 40:17
COURTROOM 4:14,
    4:23, 25:4, 25:5,
    41:8
courtrooms 24:15
Courts 15:6, 43:3,
    52:4
cover 23:16, 64:16
covering 9:6
creating 48:9
creditor 47:3, 47:8
Creditors 1:41,
    47:4, 47:5, 47:13,
    55:2, 61:24, 62:3,
    62:4, 63:4, 66:7
cross-reference
    65:11
CSR 68:14
cue 7:14
cumulative 63:17
curing 52:2
current 53:5
currently 33:8,
    53:15
cycle 19:13


< D >
D. 2:31
data 13:23, 17:15
date 6:16, 9:2,
    30:17, 31:1,
    64:15, 64:25,
    65:15, 66:20
day 31:11
days 56:23, 57:14,

64:10, 64:20,
    64:22, 65:15
de 28:19
deadline 65:3
deal 8:7, 37:15,
    37:18, 39:3
dealt 33:18
debt 5:24, 45:17,
    45:23, 54:14,
    54:23
debtor 44:1, 47:2,
    47:3, 52:1, 52:2,
    52:4, 52:8, 52:11,
    52:12, 53:12,
    58:2, 66:6
Debtors 1:18, 5:13,
    40:25, 41:23,
    42:11, 42:15,
    42:22, 43:12,
    50:15, 59:17,
    62:1, 62:2
decades 51:10
DECHIARA 2:31,
    28:23, 28:24,
    29:6, 29:14,
    29:25, 33:25,
    38:3, 38:9, 56:8,
    56:9, 57:8, 57:11,
    57:16
decide 38:11, 56:16
decided 30:6, 34:19
decision 30:25,
    34:3, 51:14, 52:9,
    52:18, 52:19
decisions 53:12
declaratory 26:17
declared 31:13
decree 62:14
deeds 48:14
defaults 52:2
defer 27:20, 52:4
deferred 23:17,
    55:18
deficiencies 23:5,
    23:8, 23:10
defined 31:17, 32:14
definitely 8:5
definition 47:2,
    47:8
definitive 7:16

Dein 1:29, 43:22
delay 33:12
demonstrated 52:11,
   53:15
denied 32:17, 51:20,
   53:24
Department 37:17,
   40:9, 41:25, 52:14
departures 12:15,
   12:16
depending 7:3
DEPUTY 41:8
describe 16:13, 59:3
descriptions 16:2
designated 58:25
designed 38:5, 61:5
Despins 1:41, 63:8,
   63:9
destroying 48:8
detail 10:7, 14:10,
   16:8, 16:9, 16:14,
   17:1, 17:8, 17:14,
   17:17, 45:25
detailed 19:4,
   25:20, 25:24,
   66:16
determination 34:6,
   34:12
determine 48:10,
   56:24
determined 30:18
determines 30:14
determining 34:13,
   52:5
developments 28:9
deviate 13:13
device 5:4
devices 4:22, 4:24,
   5:2
dial 41:2, 41:6
dialed 41:8, 41:9
dialogue 11:13,
   13:11, 13:20, 22:7
Diana 2:6, 26:21
dias 4:5
Diaz 8:21
different 21:16,
   37:16, 64:4
difficult 14:21,
   19:4, 20:11, 33:7,

33:13, 37:15,
   60:15, 60:21
diligence 19:1
direct 43:16
directly 45:13
disagreed 29:14
disaster 6:20
discharge 35:2
discipline 19:10,
   35:1
disclosed 17:3,
   17:18
disclosure 17:1
discovery 50:1,
   51:17
discuss 31:19
discussed 11:22,
   38:23
discussing 13:5,
   16:15
discussion 21:11,
   27:17, 38:2
discussions 17:17,
   31:22
dismissed 43:5
dispute 53:21, 61:12
District 1:3, 1:24,
   1:25, 4:10, 4:11,
   43:4, 68:1, 68:2,
   68:7
divergent 32:19
Docket 1:6, 9:22,
   51:4, 57:12
document 34:9
documentation 7:17,
   11:12
documents 5:4,
   42:23, 43:7, 43:8,
   43:9
doing 15:2, 15:12,
   18:24, 24:20,
   37:12, 54:21
dollar 42:19, 45:19,
   45:20, 49:21,
   52:16
dollars 5:22, 24:24,
   63:4
done 14:25, 24:21,
   26:2, 37:24, 45:4,
   46:10, 59:3

down 21:23, 25:18,
   32:18, 58:8
draft 16:4
drafting 62:13
due 4:11, 47:13,
   51:8
duplication 23:7
duplicative 24:13,
   25:9
during 38:1, 56:24

< E >
e-mail 41:1, 41:5
earlier 5:19, 6:14,
   6:18
earliest 8:6
early 6:10, 25:8,
   55:20
ECF 42:4
economic 19:24
Eduardo 45:24,
   48:14, 51:2
educate 13:11
educating 11:16
education 11:15,
   17:21
effect 34:14
effective 61:12,
   66:10
effectively 32:7
effectiveness 19:11
effects 55:7
efficiency 18:23,
   19:11
efficient 21:19,
   38:6
effort 18:2
Ehud 1:37, 40:23,
   41:21, 50:14
either 6:12, 12:13,
   40:17, 53:14,
   56:25, 58:20,
   59:8, 62:18
Electric 6:8, 6:13
electronic 4:22,
   5:2, 9:23, 17:15
electronically 9:15
elsewhere 15:25
emphasize 40:15

Employees 2:25,
    28:25, 30:4, 56:9,
    58:4, 58:8
employment 28:14
enable 62:2
encapsulates 32:5
encourage 25:7
end 5:21, 6:3, 7:6,
    20:4, 27:21, 29:9,
    39:22
endeavor 63:13
ended 13:2, 49:21
engage 22:7
engaged 27:17, 62:1
engagement 21:2
engaging 31:22
enhanced 23:14
enjoyment 42:2
enormous 18:2
enough 21:22, 25:8
enter 25:19, 26:24,
    27:4, 30:6, 34:19,
    34:22, 35:25,
    39:13, 48:15,
    54:5, 58:13, 62:2,
    65:22
entered 11:9, 33:3,
    34:2, 34:21,
    38:21, 39:10
entering 33:4,
    48:23, 65:5,
    65:16, 65:21
enterprise 15:19
enters 44:9
entire 5:23
entities 37:6,
    38:10, 39:15
entitled 20:1, 48:14
entity 21:2
entries 16:7
entry 26:16, 51:4,
    65:14
Eric 62:19
error 8:20
errors 8:19
especially 4:9
Esq 2:11, 2:16, 2:21
essential 19:23,
    23:23, 24:9, 24:20
essentially 23:5,

65:10
establish 52:25
estate 20:3
et 1:16, 1:35, 30:22
event 35:22
everybody 59:2,
    60:2, 65:7, 66:18
everyone 7:22, 9:22,
    14:3, 16:12, 20:1,
    22:17, 40:16,
    48:7, 62:7, 64:17,
    65:2, 67:5, 67:7,
    67:8
everything 23:24,
    24:7, 36:10, 50:25
evidenced 14:13
Ewing 28:21
exactly 39:4
examination 17:1
Examiner 2:13, 8:11,
    10:9, 11:3, 11:16,
    11:19, 12:3, 12:5,
    13:1, 13:3, 13:7,
    13:9, 13:16,
    13:23, 14:7,
    14:14, 15:16,
    17:5, 17:10, 21:8,
    22:24, 23:4, 23:6,
    23:8, 23:15, 24:2,
    25:12, 25:19
example 15:8
except 35:2
exception 22:6,
    30:13, 35:6, 35:7,
    38:4
exceptions 12:22
excuse 48:18
executory 52:1, 52:6
exercise 42:10,
    42:22
Exhibit 9:9, 9:10,
    10:11
EXHIBITS 3:9
exist 19:2
existing 7:13, 16:9
expectation 23:8,
    40:16
expectations 13:8,
    13:12, 13:13,
    25:12

expected 7:14
expedite 39:8
expedited 35:16,
    35:21
expense 20:20
expenses 18:19
explain 29:16
explained 19:5
exploration 21:11
explore 28:5
expressed 24:3
extend 37:8
extending 65:14
extends 65:3
extension 58:16,
    59:6, 59:15,
    59:18, 64:2, 64:10
extent 7:25, 31:17,
    35:10, 39:21,
    43:7, 43:13,
    44:16, 53:23, 67:6
extra 56:1
extraordinary 19:2,
    24:21
extremely 32:25,
    33:11, 57:25
eyes 24:5


< F >
F.3d 52:9
face 15:14
facets 11:17
facilitate 60:13
facility 40:9
facing 24:19
fact 30:19, 30:21,
    40:12, 46:14,
    46:24, 47:8,
    47:12, 47:23,
    48:22, 49:17, 50:2
factors 19:6, 37:2
factual 5:15
failed 37:1
fairly 20:2, 31:6,
    61:8
faith 38:1, 48:20,
    48:22, 48:23,
    48:24
far 7:19, 48:17

fashion 21:22
fast 15:10
faster 25:11
favor 58:22
feasible 37:10
Federation 2:20,
  2:23, 28:18, 30:3
feel 55:3
feels 15:16
fees 10:11, 18:18,
  22:25, 23:16,
  24:24
fellow 14:24
few 8:15, 9:11,
  10:17, 18:12,
  43:15
fewer 7:23
figured 63:23
file 5:20, 8:5,
  40:18
filed 8:17, 9:12,
  9:17, 10:7, 17:13,
  25:22, 27:1, 30:1,
  30:2, 42:3, 42:24,
  43:10, 46:12,
  51:5, 57:4, 59:8,
  59:10, 60:18,
  61:24, 62:8,
  62:17, 63:18,
  64:5, 65:9
filing 6:15, 7:10
filings 18:8, 57:4
final 64:2
finalize 60:9
Finance 62:20
Financial 1:9, 2:4,
  5:12, 7:3, 19:21
financing 5:15,
  5:23, 7:11, 7:14,
  16:18, 66:20
financings 7:1
find 36:18, 39:11,
  60:2
finding 39:20
findings 23:3
Fine 57:16, 59:5,
  63:23
finish 54:3, 54:4,
  59:1
firm 8:14, 8:20,

12:11, 13:22,
  20:10, 26:11,
  28:24
firms 12:17, 19:21,
  19:22
First 8:16, 8:20,
  9:5, 10:22, 13:5,
  13:10, 14:11,
  19:5, 19:6, 20:7,
  22:1, 26:4, 29:15,
  29:21, 40:7,
  40:20, 41:16,
  42:12, 43:15,
  43:21, 46:20,
  47:19, 47:21,
  54:4, 57:20
Fiscal 2:3, 30:14,
  31:8, 34:14,
  35:11, 36:11,
  36:14
five 56:1
flag 16:7
flawed 43:15
flesh 31:5
focus 14:14
focusing 14:16
Foerster 65:9
follow 37:10, 38:3
followed 15:17, 23:1
following 48:13,
  51:16, 61:20
forbearance 61:22,
  61:25, 62:4, 63:2,
  63:12, 66:1
force 42:18, 52:17
forget 45:20
form 19:3, 20:17,
  28:2, 54:15, 61:1,
  61:21, 62:10,
  62:12, 62:21,
  63:25
formal 21:7, 35:13
formally 20:6
former 58:23
forthwith 26:18
forum 44:6, 44:8,
  53:2, 53:21
forward 11:5, 12:6,
  14:17, 16:25,
  21:25, 28:8, 33:7,

35:4, 36:10,
  36:24, 39:1, 55:9,
  67:7
found 22:5
four 19:13, 28:13,
  63:4
frame 7:20, 13:2
framed 5:23
frankly 20:19,
  24:12, 25:9
fraud 43:2, 49:7,
  51:8
free-floating 37:15
free-flowing 32:17
free-for-all 32:9
freestyle 21:18
freeze 34:17
Friedman 2:5, 31:25,
  32:1, 32:4, 32:21,
  36:3, 36:4, 37:14,
  37:22, 38:13,
  38:15, 38:20,
  38:24, 39:25,
  40:5, 57:18,
  57:19, 58:10,
  61:16, 61:17,
  65:25
frivolous 36:20
fully 18:5
fund 47:9, 47:10
Funds 2:18, 6:17,
  27:12, 58:15,
  58:20, 59:9, 61:6,
  65:12
furious 15:11
future 13:13, 16:10,
  23:9, 23:11,
  23:12, 23:15,
  24:6, 30:17, 31:1,
  40:15, 52:3

< G >
general 13:4, 14:4,
  14:19, 16:3,
  16:23, 18:7, 31:6,
  53:13
generalized 53:11
generally 16:10,
  31:11, 52:4

gets 36:9
getting 14:12,
    17:21, 17:23,
    39:8, 42:20, 61:11
gifted 19:18, 19:25
give 10:25, 19:14,
    21:18, 21:22,
    25:25, 28:14,
    35:13, 46:16,
    53:18, 57:15
Given 12:11, 22:22,
    40:11
glad 7:12, 26:20,
    57:6, 58:9
global 11:22, 38:3
goal 34:25, 35:8,
    35:18
Godfrey 8:14
Gonzalez 32:24
gotten 16:16, 40:25
Government 12:3,
    45:15, 55:8, 58:1
Governor 58:1
granted 4:13, 25:22,
    40:13, 59:13
granting 54:6
grants 51:21
grateful 28:15,
    64:16
great 12:2, 14:10
grievance 28:14,
    33:8, 35:11,
    35:13, 36:21,
    38:21, 38:25, 58:5
grievances 30:12,
    30:13, 30:21,
    34:11, 34:14,
    34:18, 37:2,
    37:11, 39:9
ground 30:24, 53:13
grounds 42:17, 52:23
Group 2:28, 9:5,
    34:18, 62:25
GROVAS 2:11, 26:7,
    26:10, 26:11,
    26:14, 27:7, 27:10
guaranteed 63:5
guess 5:17, 31:22
guidance 20:6
guideline 17:20

guidelines 14:5,
    14:7, 14:23, 15:4,
    15:5, 50:3


< H >
hand 4:18, 9:13,
    32:7, 54:4, 54:7,
    58:25, 60:19,
    60:20
handful 24:17
handle 14:12, 39:8,
    39:9
hands 65:22
handy 43:8
happen 48:6
happened 46:1, 46:8
happens 60:12
happy 10:14, 32:16,
    37:3, 45:5, 50:21
hard 15:11, 57:23,
    66:10
hard-fought 33:3
heads-up 21:23
health 19:24
hear 7:12, 26:20,
    38:9, 39:17,
    39:18, 40:4, 41:3,
    41:16, 56:15,
    57:6, 58:9
heard 22:12, 39:23,
    51:6
HEARING 1:23, 1:28,
    5:19, 6:1, 6:12,
    6:16, 7:7, 7:11,
    8:3, 12:8, 14:13,
    18:25, 25:19,
    28:9, 30:16,
    40:10, 40:16, 61:4
hearings 11:25,
    12:20
heart 34:8, 34:10,
    54:18, 55:3
held 43:22
Hello 45:9
helping 11:17
helps 25:10
Hermann 40:25
high 10:22, 20:8
higher 31:14

highest 38:6
highlighted 11:23,
    23:6
highlighting 20:4
highly 24:8
highly-talented
    24:19
historic 22:22
history 24:5
holding 13:21
Honorable 1:24,
    1:29, 26:18, 68:6
honored 15:18
hope 10:4, 35:18,
    58:7, 63:3, 67:5
hopeful 61:23
Host 43:22
hour 15:9, 15:13,
    55:20, 55:22,
    55:25, 56:1
housekeeping 27:3
Houser 16:21, 17:7
huddle 31:3
hundred 48:2


< I >
idea 17:16
identified 11:1,
    11:21, 17:20, 23:5
III 1:8, 5:13,
    20:25, 21:1,
    22:22, 30:15,
    34:15, 40:24,
    41:23, 51:24,
    53:20
illegal 45:22
imagine 15:10
immediately 33:5
impeded 31:12, 31:18
importance 15:20,
    20:19, 20:20
important 10:20,
    15:17, 15:24,
    21:9, 32:25,
    33:11, 45:12,
    55:9, 57:25, 58:3
Importantly 43:10
imposes 18:19, 18:20
improperly 8:22

in. 41:2
inadvertently 17:18
inalienable 47:15
inappropriate 36:13
inbox 9:23
Inc. 2:11
include 17:13,
  26:25, 37:4
included 21:24
includes 28:2, 42:1
including 6:7, 43:4,
  65:4
inclusion 27:5
Incorp 43:20
incorporated 42:6
increased 7:12,
  54:16
increasing 6:19
incremental 19:8,
  22:5
increments 15:9
independent 23:4
indicate 53:1
indicated 8:22,
  57:13
indicates 10:22
indirectly 34:16
individual 14:5,
  31:11, 36:20
individualized 37:2
infant 24:22
inform 30:24, 56:11
informally 20:6
information 4:24,
  5:16, 8:4, 11:11,
  11:18, 12:7,
  45:19, 45:21,
  48:2, 48:4, 48:13
informational 13:21
informative 6:14
infuse 55:10
initial 11:19, 24:2
injunction 66:21
installment 5:25
instructing 37:17
instrumentality 66:4
intelligently 36:15
intend 36:7
intended 36:23
intent 38:23, 56:22

intention 46:20
intentions 40:18
interest 4:6, 6:12,
  43:1, 45:15, 46:4,
  47:21, 48:3,
  49:17, 52:13,
  53:16, 54:24,
  61:11
interests 14:10,
  55:1
interferes 35:11
Interim 9:5, 11:8,
  13:5, 13:10,
  14:11, 57:7
internal 20:9
International 2:30,
  28:25, 56:9
invited 14:3
invoices 17:12,
  17:14
involve 37:16
involved 61:4, 62:13
involvement 61:11
involving 15:19
irrelevant 44:3
island 19:23, 20:1,
  24:6
issued 4:22, 11:7,
  14:8
item 8:10, 27:11,
  27:19, 28:12,
  59:10, 62:18
items 27:20, 29:22,
  32:15
iteration 65:24
iterative 19:8, 22:5
itself 5:13, 6:10,
  12:12, 35:13,
  41:22, 50:21,
  60:17, 61:22

< J >
James 2:18, 43:20,
  65:8
Javier 45:9
job 20:11
join 32:12, 56:21,
  62:21
joinder 30:1, 57:8,

57:12, 62:21
joined 37:1, 56:17,
  59:9, 61:24, 62:6
joining 32:13
joins 33:23
joint 63:1
Jointly 1:11
Jose 2:21, 28:17,
  33:22, 38:19, 51:2
Juan 4:1, 4:9,
  13:22, 25:5
Judge 1:24, 1:25,
  1:29, 16:21, 17:7,
  22:16, 68:7
judgment 26:17,
  42:11, 42:15,
  42:22, 43:12,
  44:2, 44:3, 52:5,
  52:8, 52:12
judicial 4:21
judicially 36:15
Judith 1:29
July 59:19, 64:10,
  64:13, 64:25,
  65:15
juncture 21:20,
  53:19
June 57:15, 66:17
jurisdiction 36:14,
  47:19, 48:10,
  53:2, 54:1
Justice 37:17

< K >
Kahn 8:14
Katherine 2:14, 8:14
keenly 24:18
Keep 20:9, 62:7,
  67:9
keeping 15:14
keeps 20:10
kept 17:3
kind 19:1, 21:22,
  44:6
kinds 37:16
knows 19:13, 36:8,
  39:1
Kurt 2:28, 62:24

< L >
L. 2:25
labor 66:18
lack 46:21, 46:22,
   54:12, 55:7
lacks 43:16, 43:25
land 45:1
landlord 59:17
landscape 31:21,
   31:24
language 28:3,
   58:24, 59:23,
   60:22, 61:5, 61:6,
   63:16
large 16:5, 30:13
largely 63:13
largest 23:1
last 5:17, 5:25,
   7:14, 7:18, 8:17,
   10:7, 11:9, 19:7,
   20:24
late 7:17, 11:9
later 9:2
latter 58:23
Laura 1:24, 68:7
law 8:14, 8:20,
   26:11, 28:24, 42:8
lawyer 35:12, 46:2
lawyers 14:24,
   40:12, 57:22
leadership 34:5,
   34:18
leading 51:10
leads 48:2, 48:18
Lease 40:8, 41:25,
   42:5, 42:9, 42:16,
   42:18, 42:19,
   42:21, 42:24,
   43:11, 43:12,
   43:14, 44:15,
   44:17, 44:18,
   49:7, 51:14,
   51:15, 51:22,
   52:2, 52:6, 53:4,
   53:19, 58:15,
   59:5, 59:15
leased 51:20
leases 59:17, 64:9
least 6:10, 52:15,

62:3, 65:15
leaves 58:15
leaving 31:23
LECAROZ 2:16, 22:12,
   22:13, 22:16
led 44:18
left 40:7
legal 11:18, 24:19,
   39:19, 48:5, 55:13
legally 53:16
legitimate 36:22
legitimately 36:12
Lehr 28:21
length 46:3, 61:4
lengthy 37:23
less 6:6, 19:16
lessor 53:22
lessors 52:20
letter 11:7
level 10:22, 17:8,
   38:6
LEVINE 2:25, 28:20,
   28:21, 32:22,
   32:23, 33:19,
   33:21, 34:23,
   34:24, 36:6,
   57:18, 58:11,
   58:12
liability 47:9,
   47:11
lien 42:1
liens 7:2
lift 26:15, 48:3
lifted 39:21
light 10:20
likelihood 6:2
likely 7:8
limitations 32:15
limited 25:10, 35:6,
   39:21, 65:9
line 40:14, 40:15,
   40:22, 41:2, 63:18
lined 60:19
lines 4:15, 4:16,
   38:3, 40:13
lining 60:20
list 9:25
listen-in 25:2
listened 23:24,
   50:25

listeners 32:3
litigating 35:12
litigation 36:10,
   37:16, 53:21,
   61:24
little 20:5, 22:1,
   29:6, 58:24
live 4:14, 4:16,
   39:7, 40:13,
   40:14, 40:22
lives 24:5
living 54:16
LLP 28:24
loaded 5:4
loan 6:20, 6:21
loaned 6:22
local 13:22, 15:5,
   26:17, 32:24,
   35:12
logistically 37:14,
   57:10
logistics 27:3
long 20:2, 23:23,
   34:9
longer 7:13
look 15:22, 21:5,
   21:6, 28:8, 67:7
looking 39:22
lot 11:15, 12:1,
   12:21, 16:1,
   24:11, 37:19,
   39:22, 50:19
lots 34:9
lottery 46:7
Luc 1:41, 63:8
Lucia 51:3
Luis 2:21, 28:17,
   33:22
lunch 55:20, 55:23


< M >
M. 2:6, 2:18
Maestros 28:19
Magistrate 1:29
major 10:19, 10:20,
   17:20, 23:5, 61:7,
   62:22
managed 13:19
Management 1:10,

5:12, 16:23
mandated 18:25
MANDRY-MERCADO
   41:11, 41:13,
   41:19, 45:10,
   48:12, 49:3,
   49:10, 49:13,
   49:25, 50:8,
   50:10, 51:2, 54:9,
   55:16
manner 49:19
March 7:6
marked 60:19
market 20:2
markup 60:16, 60:17,
   60:20, 63:16
Martin 1:35, 5:11
master 9:25
matter 31:2, 34:16,
   36:9, 40:7, 49:1
matters 11:2, 26:3,
   53:24, 55:18,
   66:15
Mayr 2:28, 61:18,
   62:24, 63:13
Mckinsey 20:8,
   20:14, 20:15,
   20:16, 20:20
mean 19:20
means 47:23, 55:23
mechanism 32:8
mediation 11:25,
   12:14, 16:4,
   16:19, 16:20,
   16:24, 17:2
meet 37:1
meeting 14:2, 15:23
meets 42:5
member 18:1
members 4:6, 38:22
membership 34:7
memorandum 14:8
men 58:4
mention 44:5
mentioned 36:24,
   43:25
Mercado 40:21,
   40:22, 41:18
Mercado-mandry 40:10
merits 29:9, 32:16,

36:25, 56:16, 57:3
messy 63:19
methods 11:4
metric 20:17
metrics 20:11
microphone 32:2
middle 31:15
MILLER 2:34, 62:9,
   62:12
million 5:22, 5:24,
   54:18
mindful 55:11
minimally 34:16
minimum 33:14
minor 48:5, 49:6
minutes 26:6, 29:7,
   55:19, 56:1, 59:2,
   59:24
mischaracterized
   59:14
misinterpreted 35:23
missing 17:14
mistake 9:4
Mitsubishi 2:9,
   26:5, 26:12
modify 58:2
moment 25:25, 28:15,
   58:24, 65:3
money 6:2, 6:10,
   6:23, 7:4
monitor 23:12
Monsita 2:16
month 5:21, 64:14
monthly 36:8
months 19:14, 24:10,
   32:9
moot 47:25, 50:8
morning 4:5, 5:9,
   5:10, 5:14, 6:4,
   8:12, 8:13, 16:15,
   18:15, 18:17,
   22:13, 22:15,
   26:10, 26:13,
   26:21, 27:14,
   28:2, 28:17,
   28:20, 28:22,
   28:23, 29:2,
   40:13, 41:21
Morrison 65:8
motions 25:8

Motor 2:9, 26:5,
   26:12
movant 40:20, 41:5,
   41:14, 41:16,
   45:11
movants 27:18
move 25:11, 26:3,
   50:6, 58:5, 58:7
moves 33:7
moving 33:8, 39:1,
   39:5
multiple 12:17
Municipal 2:25
Municipality 30:4,
   48:21
mute 4:17
Myers 26:22, 32:5,
   57:19, 61:18
myself 45:10

< N >
Nadal 8:21
name 8:13, 41:18
narrow 38:5, 50:3,
   53:9
National 62:20
nature 10:25, 11:23,
   12:21
navigate 60:21
near 10:2
necessary 10:12,
   12:13, 13:12,
   20:3, 23:13,
   39:13, 40:22,
   63:20, 63:22
necessity 22:20
need 12:11, 16:13,
   19:10, 28:4, 29:4,
   29:6, 29:8, 31:1,
   32:2, 36:25, 39:2,
   39:4, 40:4, 48:19,
   49:8, 63:24, 67:6
needed 28:6
needing 6:2
needs 20:18
negotiated 10:9,
   32:9, 65:24
negotiation 33:3
negotiations 10:23,

35:7, 35:20, 61:5,
   62:14
New 4:9, 4:11, 4:12,
   4:14, 25:5, 40:17,
   67:2
Next 8:10, 27:1,
   27:5, 27:11,
   41:24, 67:8
night 5:17
No. 1:6
nod 10:1
non-debtor 66:4
None 3:5, 3:11,
   43:10
nonetheless 43:13
nonsubstantive 9:12
normal 7:20, 29:18,
   31:11
note 12:25
Noteholder 2:27,
   62:25
noteholders 61:19
notes 5:3, 5:4
Nothing 44:7, 44:9,
   50:17, 66:24
notice 7:21, 13:3,
   35:13, 40:18,
   64:16
notify 4:18
notion 16:13, 53:11
November 14:9
null 48:18
number 11:24, 19:18,
   27:19, 42:4, 51:4,
   59:10


< O >
O'melveny 26:22,
   32:5, 57:19,
   61:18, 63:14
O'neill 8:24
object 23:13, 34:1,
   52:21, 53:11,
   56:17
objected 52:21
objecting 34:20
objection 21:7,
   22:9, 29:17,
   42:14, 51:16,

62:12, 62:15,
   65:5, 65:9, 65:21
objectionable 36:18
objections 52:23,
   54:5, 61:1, 62:10,
   62:22, 65:14
objective 20:11
obligation 17:23
obligations 17:9
observed 31:3
observer 4:25
observing 4:7
obtain 48:4
obvious 49:22
Obviously 10:23,
   12:20, 36:11,
   36:19, 39:1,
   42:20, 54:18
occasion 67:8
occur 19:13
offer 63:23
offered 3:5, 3:11
offers 31:9
office 11:13, 17:3,
   17:4
Official 1:40, 68:15
offline 38:1
Okay 10:3, 11:6,
   38:13, 41:3, 41:7,
   49:10, 65:1
Omni 25:23, 57:15,
   66:16, 66:17
Omnibus 1:23, 1:28,
   27:1, 27:5, 59:19
once 60:8
One 11:23, 11:25,
   12:9, 14:20,
   20:13, 22:4, 22:8,
   25:25, 26:4,
   30:12, 32:7, 33:4,
   33:6, 38:5, 40:7,
   42:19, 43:5,
   43:15, 45:13,
   45:19, 45:20,
   46:13, 46:17,
   48:1, 49:14,
   49:21, 50:5, 53:8,
   54:10, 66:1
one-third 23:16
ones 30:22, 47:10,

52:25, 53:1,
   54:22, 55:10
ongoing 13:16, 17:18
open 14:3, 22:6,
   31:24, 38:21
opening 15:1
operationally 37:10
opinion 54:20
opponents 29:12
opportunity 30:23
oppose 53:19
opposition 7:21,
   51:5, 59:12
oral 51:12
ordering 66:2
orderly 32:14
Orders 4:21, 64:17
original 64:19
originally 9:11,
   57:4
Orion 52:8
otherwise 7:9, 46:10
outcome 39:24, 40:1,
   58:6
outlined 9:8, 10:6,
   10:11, 14:8
outside 4:23, 6:23,
   17:4, 50:16
overall 46:21, 47:7
overattendance 25:15
overly 15:7
overrule 36:18
overruled 51:17
overruling 54:5
Oversight 1:9, 5:12,
   8:23, 8:25, 20:13,
   27:15, 40:24,
   41:22, 50:15
overstaffing 23:7,
   25:15
own 6:20, 15:14,
   34:12, 45:15, 52:8
owner 46:15, 48:20,
   53:18
owners 47:11
ownership 50:19,
   51:20, 52:23


< P >

packed 24:15
PAGE 3:3, 8:21, 52:9
pages 19:16, 68:4
paid 48:17
painstakingly 32:8
paper 26:1, 51:7
papers 49:8, 62:8,
   62:17
paperwork 28:15
parallel 47:1
paramount 15:20
Pardon 63:21
part 4:25, 14:22,
   18:3, 18:24, 35:3,
   47:20, 54:19,
   54:24, 57:9, 61:8
partial 29:4
participant 5:1
participants 4:8
participated 24:17
participation 4:14,
   55:14
particular 14:16,
   16:22, 20:7, 31:9,
   31:10, 31:17,
   35:12, 51:13,
   57:22
particularly 14:10,
   23:6, 24:14, 33:9,
   67:1, 67:4
parties 4:6, 6:12,
   9:3, 12:8, 22:6,
   22:24, 28:5, 31:5,
   32:12, 32:13,
   34:21, 35:14,
   37:6, 43:16,
   43:22, 44:10,
   44:17, 48:20,
   53:10, 56:12,
   57:5, 59:8, 59:10,
   60:22, 61:8,
   61:11, 61:21, 64:8
parts 34:9
party 42:24, 43:24,
   48:7, 48:22,
   48:24, 52:21
pass 46:20
passed 54:15
past 24:10, 24:14,
   51:9, 55:8

path 32:17
patience 60:9, 61:10
patterns 25:13
Paul 1:36, 27:14,
   55:21, 58:17
pay 49:18
paying 12:4
payment 27:12,
   58:21, 65:12,
   65:24, 66:9
PBA 2:18, 27:12,
   58:15, 58:20,
   58:21, 58:22,
   59:9, 59:17, 61:6,
   61:22, 61:23,
   62:2, 62:4, 63:5,
   64:9, 65:11
PECK 2:18, 27:23,
   27:25, 28:10,
   60:25, 61:3,
   61:15, 65:8, 65:19
people 8:19, 12:18,
   12:21, 13:7,
   15:10, 15:12,
   24:6, 24:22, 33:9,
   33:10, 35:4,
   37:13, 37:17,
   39:8, 39:14,
   44:13, 46:9,
   46:25, 47:4,
   54:18, 54:22,
   55:2, 55:8, 55:24
per 49:21, 52:16
percent 6:6, 48:2
PEREZ 2:6, 26:21,
   27:8
Perez-ochoa 62:19,
   62:20
Perfect 56:3
performance 52:3
performed 17:2
performs 30:20
perhaps 31:20
period 7:13, 14:11,
   56:23, 56:25
permit 32:12
permitted 25:3,
   51:18
person 4:23, 12:9,
   12:13, 46:2

personally 8:16
persons 39:14
perspective 17:11,
   24:10, 32:19,
   37:7, 65:16
Peter 2:5, 2:31,
   28:23, 32:1, 32:4,
   33:25, 36:4,
   38:24, 56:8,
   57:19, 61:17
petition 35:3
PHV 1:35, 1:36,
   1:37, 1:41, 2:5,
   2:6, 2:13, 2:14,
   2:18, 2:25, 2:28,
   2:31, 2:34
Pictures 52:9
place 15:6, 17:7,
   46:21, 47:22
plan 30:14, 31:8,
   34:15, 35:11,
   36:12, 36:14,
   59:25, 60:1, 64:3
planned 4:13
plans 27:6
play 30:19
playing 31:18
plays 30:24
pleading 43:6, 43:7,
   44:4
pleadings 12:18,
   16:4, 24:11,
   43:10, 43:15
Please 7:19, 56:7,
   60:7, 62:9
pleased 56:11, 58:6
plot 45:1
PM 56:6, 60:5, 60:6,
   67:11
podium 60:21, 62:9
point 22:4, 29:13,
   33:17, 38:4, 48:9,
   48:10, 55:17
point. 45:7, 57:23
points 20:5
police 40:9, 41:25,
   42:18, 52:14,
   52:17
policies 4:21
Ponce 48:21

pops 16:1
PORRATA 2:11, 26:7,
   26:10, 26:11,
   26:14, 27:7, 27:10
position 30:20,
   33:2, 39:9
positions 21:17,
   53:2, 61:7
positive 44:23, 62:5
possibilities 20:13
possibility 6:5,
   6:6, 6:19, 7:8,
   20:15
possible 6:1, 6:25,
   7:21, 8:6, 27:19,
   27:22, 33:4, 39:24
possibly 7:23, 27:21
POSSINGER 1:36,
   27:14, 27:15,
   28:11, 55:21,
   56:3, 58:17,
   58:18, 59:8,
   59:16, 59:22,
   60:3, 60:8, 60:15,
   63:12, 63:21,
   63:23, 64:5,
   64:13, 64:18,
   64:22, 65:1, 66:3,
   66:6, 66:12,
   66:24, 67:10
potential 21:12,
   49:7
potentially 30:13,
   34:17, 42:25
practical 24:18
practice 7:15, 66:21
pre 20:25
pre-hurricane 6:8
preceded 21:1
preface 19:22
preference 17:12,
   57:11
prejudice 43:5,
   50:17, 53:6, 53:25
preliminary 66:21
premises 43:1
PREPA 5:15, 5:17,
   5:20, 6:6, 6:9,
   6:22, 66:19
prepare 16:4

prepared 16:19,
   23:25, 30:8
preparing 17:2
prepetition 30:12,
   30:13, 30:21,
   34:11, 35:2
PRESENT 1:28, 6:9,
   8:16, 9:5, 22:8,
   22:9, 22:17, 45:13
presentation 14:1
presented 16:20,
   19:2, 20:7, 28:2,
   62:22, 65:6, 65:17
presenting 29:15
presentment 60:24
preserve 44:24
preserves 34:10,
   61:13
preside 8:3
president 32:24
press 4:7
pressures 15:14
presumably 59:19
pretty 16:12
prevents 44:7, 44:9
price 42:19
primarily 13:10,
   14:2
primary 11:23, 14:13
priming 7:2
principles 11:1,
   25:1
prior 46:15, 51:8
priority 7:2
private 15:19
pro 40:12
probability 5:20,
   6:5, 6:9
probable 46:16
probably 5:21, 5:23,
   6:16, 17:19
problem 31:7, 47:7,
   54:20
problems 24:9
procedural 11:18
procedure 29:19
procedures 26:25,
   28:14, 31:9, 33:8,
   35:8, 37:11,
   38:22, 40:19

proceed 29:8, 30:12,
   30:21, 31:16,
   35:9, 35:21,
   56:12, 57:13
proceeding 11:17,
   15:19, 50:5,
   51:18, 53:20
Proceedings 2:48,
   4:25, 19:3, 22:23,
   24:16, 51:9,
   51:24, 53:25,
   55:10, 56:6, 60:6,
   63:6, 67:11, 68:6
produced 2:48
product 20:14
professional 18:18,
   22:19, 22:25,
   24:24
projected 6:7, 6:18
projections 6:7
PROMESA 10:13,
   18:19, 22:17,
   24:20, 42:7,
   46:20, 51:25
promise 19:14
promptly 67:6
pronounce 41:18
proper 53:2, 53:21
properly 42:13,
   54:21
property 42:1,
   42:25, 44:19,
   48:3, 48:20,
   51:20, 52:15,
   52:16, 52:24,
   53:5, 53:16,
   53:18, 53:22, 54:2
proportion 24:12
proposal 10:24,
   27:24, 29:7,
   29:11, 29:23,
   31:2, 32:10,
   33:23, 39:12,
   52:22
propose 30:8, 30:16,
   30:18, 49:25, 57:1
Proposed 9:10, 9:17,
   10:12, 24:1,
   25:18, 25:21,
   31:4, 44:7, 58:14,

60:18, 61:2,
62:14, 63:18,
64:5, 64:17
Proskauer 5:11,
27:15, 40:24,
41:22, 55:22,
58:18
prospectively 19:24
protection 18:7
Protective 17:7
protocol 26:25,
39:5, 39:10
prove 45:22, 48:21,
53:17
proven 50:2
provide 16:8, 20:16,
34:25, 47:16,
52:14, 63:3, 63:17
provided 43:9
provider 25:3
provides 17:8, 33:5,
42:16, 42:17,
51:25
providing 11:18,
52:3
provision 17:6
prudent 59:1
Public 4:7, 9:22,
18:1, 18:7, 18:8,
43:9, 58:4, 58:8,
62:20
publicly 17:13
PUERTO 1:3, 1:11,
1:16, 1:35, 2:3,
4:1, 8:25, 9:18,
12:3, 24:23,
28:19, 37:17,
40:25, 42:2,
45:24, 46:18,
47:3, 49:18,
54:11, 58:4, 67:2,
68:2
pull 15:21
pulling 15:1, 63:14
purchase 46:8
purported 59:17
purpose 14:2, 14:22,
14:23, 18:22
purposes 14:11,
17:1, 28:7, 35:24

pursuant 26:24,
39:9, 51:3
pursue 53:1, 53:25
pursuing 53:6
put 6:15, 17:7,
20:9, 26:1, 28:1,
29:17, 31:5
puts 31:9
putting 6:17, 31:21

< Q >
QTCB 2:27, 61:19,
61:21, 62:25
quality 20:8
question 33:16
questions 10:14,
10:16, 10:18,
11:12, 13:25,
14:3, 14:5, 45:5,
45:6, 50:20
quick 35:21
quickly 35:21, 39:5
quite 19:19, 20:19,
49:9, 58:6
quo 44:25

< R >
radar 16:24
raise 36:22, 53:10,
53:12
raised 10:21, 49:5,
51:7, 54:4, 54:7,
65:11, 65:22
raising 4:18
Ramos 2:21
range 41:25, 43:14
rapidly 29:22
rare 35:10, 36:8
rates 20:2
rather 11:13, 31:20
Re 1:6, 42:11,
43:19, 43:20,
43:21
reached 26:7, 26:14,
26:24, 56:12,
58:19, 61:9
reaching 46:3
read 14:24, 17:24,

18:1, 18:6, 49:2,
49:4, 50:23,
56:13, 57:13,
60:14, 63:24
ready 28:16, 41:13,
60:2
real 36:15, 49:23
realized 25:14
really 13:22, 14:1,
19:19, 24:22,
47:11, 54:17,
54:20, 55:2, 55:3,
58:3
reason 22:8, 30:18,
34:7, 34:18,
45:18, 46:8
reasonable 10:12,
20:3
reasonableness 22:19
reasons 22:3, 43:15,
51:16
rebuttal 40:21
recap 7:6
receipts 11:12
receive 29:4
received 5:17, 9:25,
24:13
receives 20:14
recent 23:1
recess 27:21, 56:5,
59:21, 60:5
reclaim 47:14
recognition 53:14
recognized 53:16
recognizing 34:24
recommendation 12:7
recommendations 23:4
recommending 9:7,
21:15
reconvene 55:25,
60:1
reconvened. 56:6,
60:6
record 4:25, 15:1,
15:13, 33:23,
51:6, 56:14, 59:4,
60:14, 61:13
recorded 2:48, 15:3
recording 15:8
recovery 19:23

recur 23:10
redacted 17:12,
  17:14
redactions 18:8
reduced 23:9
reductions 10:10,
  10:24, 23:10
refer 5:3
reference 31:7, 64:2
referenced 8:21
refinancing 5:23,
  5:25
refinement 21:11
reflect 12:23
reflected 10:24
reflects 61:7, 61:8
regard 12:25, 26:16,
  35:1, 35:2, 35:6,
  50:12, 63:4
regarding 11:2,
  28:13, 46:12,
  47:16, 47:19,
  51:19, 53:21
regardless 33:1
reinstated 35:4
reject 52:1, 59:15,
  64:3
rejected 44:24
rejection 43:17
relation 31:7, 59:7
relatively 13:14
relevant 39:3, 53:9
Relief 26:4, 35:5,
  53:23, 65:9
relying 43:21
remain 37:4, 37:7,
  57:12
remains 38:10
remarkable 19:19
remarks 8:15, 24:25,
  45:2
remind 4:20, 25:1
remote 25:4, 25:5
renders 50:8
Rent 27:12, 58:21,
  58:22, 64:1,
  65:12, 65:24, 66:9
Rental 43:19, 49:21
repay 45:17
Repayment 64:1

repeat 47:10, 49:8
repeating 10:8
Reporter 68:15
reporting 5:16, 36:8
reports 11:7, 11:11,
  19:15
repository 4:24
represent 34:5,
  54:18
representation 28:18
representations
  35:19
representative 1:13,
  5:13, 22:11, 41:23
representatives
  32:25
represented 30:11,
  39:14
representing 46:2,
  54:19
represents 58:2,
  61:19
request 16:11, 17:7,
  48:7, 51:17, 57:2,
  64:19
requested 6:16,
  43:6, 65:10
requesting 7:7, 7:10
requests 23:19,
  53:24
require 18:2, 19:3,
  21:6, 21:7
required 12:21,
  25:17
requirement 15:8,
  16:11
requirements 29:19
requiring 16:7
reserve 23:12
reserves 23:18
resistance 17:16
resolution 25:21,
  27:18, 27:22,
  30:12, 35:22,
  38:8, 57:7, 57:24,
  58:7, 60:13,
  61:12, 62:1, 62:3,
  63:2, 65:13
resolve 35:17,
  39:19, 39:20,

59:12, 61:5, 61:25
resolved 11:2,
  33:15, 48:1, 59:6,
  63:1
Resolving 28:3,
  63:25, 65:24, 66:9
resources 24:8,
  25:10
respect 5:15, 6:13,
  18:4, 18:18,
  23:18, 27:19,
  34:4, 38:11, 49:7,
  50:18, 57:5, 58:3,
  58:19, 59:10,
  63:12
respond 11:11,
  41:13, 49:12
response 16:16,
  30:10, 40:21,
  59:12
responsible 35:12
responsive 42:23
rest 50:22, 58:8
restriction 42:6
resubmission 64:16
retained 11:7
Review 10:6, 11:10,
  14:23, 16:3, 19:4,
  20:25, 22:18,
  22:24, 23:5
reviewed 12:18,
  23:23, 24:11
reviews 37:23
revised 25:21, 57:2
revisions 9:11, 9:13
revisit 47:1
Rican 40:25
RICO 1:3, 1:11,
  1:16, 1:35, 2:3,
  4:1, 8:25, 9:18,
  12:3, 24:23,
  28:19, 37:17,
  42:2, 45:24,
  46:18, 47:3,
  49:18, 54:11,
  58:4, 67:2, 68:2
rights 23:13, 23:18,
  42:2, 44:15,
  47:14, 47:15,
  48:8, 52:24, 53:6,

53:10, 61:13
Rivera 8:21
road 21:23, 58:8
robust 22:25
role 22:20
Rose 5:12, 27:15,
   40:24, 41:22,
   55:22, 58:18
roughly 64:10
rule 12:15, 12:16,
   12:22, 44:12,
   44:19, 44:25, 57:3
rules 13:8, 15:5,
   15:17
ruling 54:3, 54:5,
   54:10, 55:6, 55:13
run 13:19
running 29:22
runs 18:5, 42:18

< S >
S/ 68:13
safely 67:6
sale 48:5
Sales 2:10, 26:5,
   26:12
San 4:1, 4:9, 13:22,
   25:5
satisfied 61:6
Saul 28:21
saying 36:6, 41:6,
   48:6
says 38:20, 38:25,
   41:14, 64:16
scale 22:22
scheduled 6:13
schedules 7:17,
   37:16
scope 22:22, 50:16
scout 60:1
screen 54:8
scrivener 58:25
scrutiny 19:1, 59:23
se 40:12
seated 56:7, 60:7
Second 20:22, 52:10,
   55:18, 57:21
secrecy 16:17
Section 22:17, 42:7,

43:18, 51:3,
   51:23, 51:24,
   52:7, 53:9
sections 10:13
Seeing 65:22, 67:7
seek 7:19
seeker 46:18
seeking 5:22
seeks 31:12, 43:13,
   51:11, 53:23,
   58:20
seems 31:4, 31:10
SEIU 30:1, 33:17,
   34:1, 37:13,
   39:16, 56:15,
   56:20, 56:22,
   56:24, 66:17
send 17:14, 60:1,
   64:6
sense 11:3, 31:16,
   32:20, 34:4
sent 41:5
sentiments 24:3
separately 33:18
September 13:2
serious 31:5, 38:1
seriously 47:13
served 9:20
Service 9:25, 25:3,
   28:25, 56:9
services 19:22,
   20:2, 47:15
session 13:22, 14:3
sessions 11:25,
   16:20
set 9:1
sets 37:19
settling 30:7
seventh 64:14
several 43:2, 45:11
share 13:17, 23:7
shared 25:1
Sharon 2:25, 28:20
shocked 40:2
shooting 41:25,
   43:14
short 6:5, 22:1,
   27:21
shortened 64:22
shortening 64:24

shorter 19:15
shortly 40:14
showing 12:12
showings 13:12
shown 12:8
side 32:10, 62:2,
   62:4
sign 24:15, 33:17,
   39:17, 56:25, 59:2
signals 5:5
signatories 33:15,
   44:14
signed 56:21, 63:9
significant 11:13,
   12:1, 25:14, 42:16
significantly 23:9
similar 22:20,
   22:25, 59:19
Simon 28:24
simply 20:13, 24:23,
   34:12, 44:3,
   44:14, 64:9
singing 60:12
sir 38:18
situation 4:12,
   5:15, 7:3, 7:4,
   7:18, 29:10, 54:11
sizable 34:17, 34:18
skilled 19:18, 19:25
smoothly 35:21
snowing 4:9
snowstorm 25:4
Solutions 4:19,
   21:12
somehow 35:22
sometime 6:16, 7:10
sometimes 15:11
Sonnax 37:1
soon 7:15, 8:6
sophisticated 19:3
Sorry 9:16, 20:23,
   32:4, 34:23, 41:3,
   41:10, 46:5, 59:14
sort 16:18, 63:1
sorts 11:2
sought 12:5, 22:23,
   23:11, 23:16
sound 42:22
sounds 21:10
source 4:23

Southern 4:11
speakers 12:17
speaking 12:8,
   12:10, 37:5, 40:14
spearheaded 63:13
special 63:14
specialist 13:24
specific 14:5
specifically 54:11
spend 24:23
spent 37:19
spoke 65:20
spoken 16:22
SPU 32:24
Stadler 2:14, 8:13,
   8:14, 9:18, 9:20,
   9:24, 10:3, 11:6,
   14:18, 14:20,
   18:9, 18:11,
   18:14, 19:5
staff 22:17, 67:2
staffing 14:12,
   14:19
stages 24:22
stakeholder 24:6
stand 55:14, 58:16
standard 42:5
standards 19:16,
   37:19, 55:13
standing 43:16,
   43:23, 43:25,
   46:12, 46:13,
   46:16, 47:16,
   48:25, 52:25,
   53:14, 53:18
start 23:22, 29:3,
   33:10
started 31:6
starts 33:5
State 2:24, 30:3,
   45:17, 46:2, 46:4,
   47:15, 48:3,
   54:13, 54:14,
   54:19, 54:21, 55:1
stated 30:20, 52:15
statement 16:4,
   61:20
States 1:1, 1:25,
   4:10, 10:9, 17:11,
   22:12, 22:18,

22:20, 22:23,
   23:3, 23:18,
   25:13, 42:13,
   56:22, 68:7
stating 34:13
status 5:7, 5:14,
   29:3, 40:12,
   44:24, 57:15,
   66:17
statute 31:13
Stay 26:5, 26:15,
   26:25, 35:1,
   35:16, 36:9,
   39:18, 39:20, 58:2
stayed 32:15
stays 30:22, 46:25,
   47:5
stenography 2:48
step 17:6
sticking 36:5
stop 15:12
strategy 17:17
strive 25:7
structure 31:17
studied 49:8
stutter 48:19
subject 17:11,
   35:16, 42:15,
   51:25, 52:2, 59:23
submission 51:7,
   65:23
submissions 24:12,
   49:5, 50:24
submit 17:12, 60:24,
   63:17, 64:3, 64:24
submitted 9:15,
   64:18, 66:1
submitting 26:18
subsequent 31:20
subsidiary 47:18
substance 13:18,
   61:2, 62:11,
   62:13, 62:21
substantive 12:21,
   47:13
substitute 52:7
succeeded 10:5
successful 43:1
suffer 54:22
sufficient 64:6

suggest 20:12,
   27:20, 47:12,
   50:4, 60:23
suggested 52:18
summary 9:9
super 7:2
supervision 20:16
supplemental 47:17,
   47:19
supplementary 50:4
support 12:17, 16:9,
   24:25, 67:3
supported 57:4
supporting 12:9
supposed 47:16
surprised 40:2
surround 55:9
suspect 21:6
Swain 1:24, 22:16,
   68:7
system 20:9
systems 37:15


< T >
table 7:9
taken. 56:5, 60:5
talked 12:18
tardes 56:7
task 16:2
tasks 16:6
taxes 54:15
Taylor 1:24, 68:7
Teachers 2:21,
   28:18, 30:3
technical 15:7
telephone 25:3,
   40:11
telephones 4:17
telephonic 4:8, 4:14
ten 24:10, 59:2
ten-minute 59:21
tend 10:19
tenth 15:9
tenths 15:13
term 19:20
terminated 33:11
terminates 27:4
terms 6:25, 8:7,
   10:13, 16:3,

16:18, 27:3, 56:22
thanks 63:14
there'll 29:17
thinking 8:1, 27:3, 32:6, 64:13
third 44:10, 48:12, 48:19, 48:22
third-party 46:13
though 11:21, 21:10, 45:21, 46:14, 47:5, 50:3, 56:20
three 27:20, 51:10, 52:15, 59:11, 62:18
three. 27:20
throughout 61:4
ticket 46:7
timely 42:3, 48:10
Title 1:8, 5:13, 20:25, 21:1, 22:22, 30:15, 34:15, 40:24, 41:23, 44:13, 44:18, 45:1, 50:19, 51:24, 53:5, 53:16, 53:20, 53:22, 54:2
today 4:11, 8:15, 9:10, 10:11, 11:25, 12:17, 23:25, 24:14, 30:8, 33:3, 36:1, 38:21, 40:11, 50:24, 51:6, 51:12, 55:15, 56:16, 56:19, 58:14, 61:4, 65:23, 67:4
together 63:15, 66:23
took 13:4, 49:19, 55:12
topic 16:19, 49:14
touch 16:21
toward 6:3, 10:19, 18:5
track 25:18, 62:7
train 42:18
training 52:17
transaction 7:23,

46:23, 49:19
transactional 31:14
transactions 49:6, 51:9, 52:24
Transcript 2:48, 68:4
transcription 68:5
transcripts 12:18
transfer 45:23
transformed 49:20
transparency 15:20, 16:14, 18:22, 46:18, 46:21, 46:22, 52:24, 53:8, 54:12, 55:7, 63:3
travel 67:5, 67:6
traveled 24:16
troubling 54:25
true 34:8, 68:5
Trustee 2:16, 15:5, 17:12, 22:12, 22:13, 22:16, 22:18, 22:20, 22:23, 23:3, 23:18, 25:13
try 8:5, 36:20, 37:15, 54:18, 60:12
trying 10:3, 37:19, 44:24, 44:25, 62:7
turned 5:3, 5:5
two 11:10, 17:19, 20:4, 20:12, 21:24, 21:25, 27:19, 27:20, 29:7, 29:8, 29:10, 30:1, 30:2, 30:5, 30:19, 30:23, 34:3, 34:5, 34:19, 34:21, 36:25, 37:15, 37:18, 38:10, 62:18
two-path 32:19
type 15:25, 54:12
types 10:20

< U >
UAW 30:1, 33:17,

34:1, 37:13, 39:16, 56:15, 56:20, 56:22, 56:24, 66:17
ultimate 20:16, 60:20
ultimately 12:4, 53:17
unconstitutional 31:13
undefined 31:21, 34:10, 34:14
underlying 51:13, 51:19
understand 11:17, 12:19, 13:16, 14:22, 14:25, 15:2, 15:13, 17:23, 18:1, 18:6, 22:11, 31:23, 39:4, 42:1, 46:11, 49:10, 50:11, 54:3, 54:9
understanding 11:20, 19:10, 56:12, 56:13
understandings 61:8
unexpired 52:2, 52:6
unfair 32:6
Union 2:31, 28:25, 29:1, 56:9, 56:10
Unions 28:13, 30:2, 30:5, 34:3, 34:4, 34:5, 34:7, 36:25, 37:8, 38:22
unique 11:17
United 1:1, 1:25, 4:10, 17:11, 22:11, 22:18, 22:20, 22:23, 23:3, 23:18, 25:13, 28:25, 56:10, 68:6
units 37:18
unless 5:3, 25:4
unlike 30:5
unprecedented 24:8, 24:18
Unsecured 1:41
unspecified 43:2

until 42:18
unusual 4:12, 40:11
update 66:19
using 5:3

< V >
V. 1:36
vague 16:7, 31:6
vagueness 23:7
valid 42:10
validity 44:13,
   44:17, 53:22
value 48:18, 49:23
variables 6:24
various 11:14, 43:3
verify 15:2
version 9:11, 60:16,
   60:23, 64:2
view 16:11, 19:7
viewed 15:7
violate 47:13
violations 51:8
virtual 4:18, 54:7
virtue 11:20, 53:12
voice 24:2
voluntary 32:18
vouch 20:14

< W >
wage 35:4
Walker 68:13, 68:14
wanted 8:16, 26:23,
   49:12, 55:2, 55:4
wants 15:21, 44:16,
   46:19, 50:18
waste 10:8
water 48:19
ways 7:23, 7:24,
   24:13, 55:10
weather 4:12
week 8:17, 10:7
weeks 6:1, 7:20,
   11:10
Weiss 28:24
Welcome 4:6, 18:11,
   32:13
whatever 35:4,
   37:12, 39:18,

44:15, 55:24
whether 7:7, 11:3,
   17:24, 17:25,
   25:5, 29:20,
   30:20, 30:25,
   39:17, 40:3,
   42:10, 42:14, 52:5
Whichever 64:15
whole 20:20, 63:15
whom 16:20, 51:6
wide 31:24
Williamson 2:13,
   8:12, 8:15, 10:16,
   18:12, 18:15,
   18:16, 18:17,
   18:18, 20:24,
   21:21, 22:3, 37:23
willing 16:10, 21:5,
   22:7, 30:11,
   32:12, 33:17,
   37:4, 37:7, 58:2,
   65:2
Wilson 43:20
wish 24:2, 41:17,
   53:25
wished 22:12
wishes 4:17, 37:5,
   40:16
withdraw 65:14
within 50:3
without 6:20, 22:5,
   22:9, 43:5, 53:25,
   60:20
WITNESSES 3:3
women 58:4
word 20:14
worded 21:4
words 10:17, 18:12,
   20:25
work 14:25, 17:2,
   18:13, 19:25,
   20:8, 20:14,
   20:16, 20:20,
   20:25, 21:1,
   24:20, 24:21,
   33:9, 33:11, 36:7,
   36:23, 37:20,
   46:9, 66:10, 67:3
worked 15:16, 24:14
worker 36:21

Workers 28:25, 56:10
working 15:10,
   17:21, 24:8,
   57:22, 58:4
world 18:7
writing 58:25
written 49:4
wrongfully 33:10
wrote 60:23

< Y >
year 11:9, 42:19,
   49:22, 52:16
years 52:15
yesterday 9:15,
   9:17, 9:20, 49:15
York 4:9, 4:11,
   4:12, 4:14, 25:6,
   40:17, 67:3