**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

IN RE:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

       Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**OBJECTIONS OF ASSURED GUARANTY CORP., ASSURED GUARANTY**
**MUNICIPAL CORP. AND NATIONAL PUBLIC FINANCE GUARANTEE**
**CORPORATION TO THE MAGISTRATE JUDGE'S FEBRUARY 26, 2018 ORDER**

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747).

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 2

OBJECTION ........................................................................................................................ 3

    A.    Factual Information In The Pre-Decisional Fiscal Plan Documents Is Not Protected By The Deliberative Process Privilege ............................ 3

    B.    Pre-Decisional Fiscal Plan Documents Communicated Between The Commonwealth, AAFAF, The Oversight Board And Their Professionals Are Not Protected By The Deliberative Process Privilege ............................................................................................. 6

    C.    The Interests Of The Creditors And The Public Outweigh The Interests Of The Commonwealth, AAFAF, And The Oversight Board In Shielding The Pre-Decisional Fiscal Plan Documents ............... 10

RESERVATION OF RIGHTS ........................................................................................... 12

CONCLUSION .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES:**

Bhatia Gautier v. Roselló Nevares,
    2017 TSPR 173, 2017 WL 4975587 (P.R. 2017) ............................................................4, 11

Corporacion Insular de Seguros v. Garcia,
    709 F. Supp. 288 (D.P.R.), appeal denied,
    876 F.2d 254 (1st Cir. 1989)........................................................................................11

Dep't of Interior v. Klamath Water Users Prot. Ass'n,
    532 U.S. 1 (2001).................................................................................. 6-7, 9, 12

In re Franklin Nat'l Bank Sec. Litig.,
    478 F. Supp. 577 (E.D.N.Y. 1979) ...........................................................................4, 12

In re McKesson Govtl. Entities Average Wholesale Price Litig.,
    264 F.R.D. 595 (N.D. Cal. 2009)...................................................................................9

In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.,
    898 F. Supp. 2d 603 (S.D.N.Y. 2012)...........................................................................13

In re Rivastigmine Patent Litig.,
    No. 05 MD 1661, 2005 WL 2319005 (S.D.N.Y. Sept. 22) (Francis, M.J.), aff'd,
    2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005) (Baer, J.) ..........................................8

Melendez-Colon v. U.S.,
    56 F. Supp. 2d 142 (D.P.R. 1999)...............................................................................9, 11

P.R. Tel. Co. v. Reyes-Davila,
    No. CV 07-2167, 2008 WL 11357912 (D.P.R. Sept. 26, 2008)................................3

PowerShare, Inc. v. Syntel, Inc.,
    597 F.3d 10, 15 (1st Cir. 2010)...................................................................................3

Providence J. Co. v. U.S. Dep't of Army,
    981 F.2d 552 (1st Cir. 1992)................................................................................... 3-4

Rivera Cortes v. Airport Catering Servs. Corp.,
    386 F. Supp. 2d 14 (D.P.R. 2005).............................................................................3

Shell Oil Co. v. IRS,
    772 F. Supp. 202 (D. Del. 1991)...............................................................................9

**PAGE(S)**

Texaco P.R., Inc. v. Dep't of Consumer Affairs,
    60 F.3d 867 (1st Cir. 1995)..................................................................6, 7, 11

U.S. v. Paredes-Reyes,
    992 F. Supp. 2d 56 (D.P.R. 2014)................................................................3

W Holding Co. v. Chartis Ins. Co. of P.R.,
    42 F. Supp. 3d 319 (D.P.R. 2014)......................................................4, 10, 11

Wal-Mart P.R., Inc. v. Zaragoza-Gomez,
    152 F. Supp. 3d 67 (D.P.R. 2016)...............................................................12

Williams v. City of Bos.,
    213 F.R.D. 99 (D. Mass. 2003) (Dein, M.J.) ...........................................13


**STATUTES & OTHER AUTHORITIES:**

PROMESA:
    § 101(c)(1) ..................................................................................................7
    § 201(a) .......................................................................................................7
    § 201(c)(2) ..................................................................................................7
    § 201(c)(3) ..................................................................................................7
    § 405(m)(1) ...............................................................................................12

Fed. R. Civ. P. 72(a) .........................................................................................3

L.Cv.R. 72(c) ....................................................................................................3

Act No. 2-2017 § 4............................................................................................7

H.R. Rep. No. 114-602, pt. 1 (2016)...............................................................12

6 James Wm. Moore, Moore's Fed. Prac.: Civil § 26.52[5] (3d ed. 2016) ....................................4

To the Honorable United States District Judge Laura Taylor Swain:

Assured Guaranty Corp., Assured Guaranty Municipal Corp. and National Public Finance Guarantee Corporation (collectively, "Objectors") respectfully submit these objections to the Order of Magistrate Judge Judith Gail Dein (the "Magistrate Judge"), entered on February 26, 2018 (ECF No. 2590),[1] attached hereto as Exhibit A, resolving outstanding issues from the *Urgent Renewed Joint Motion by the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation for Order Authorizing Rule 2004 Examination* (ECF No. 1870) pursuant to Rule 72(a) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 72(c) of the Local Rules for the United States District Court for the District of Puerto Rico (the "Local District Court Rules").

Objectors object to the portion of the 2004 Order finding that "communications among the Commonwealth, AAFAF, the Oversight Board and their professionals, as well as other materials relating to the creation of the 2017 and 2018 Plans" are subject to the deliberative process privilege. 2004 Order at 4; see also 2004 Order at 2 (collectively, "Pre-Decisional Fiscal Plan Communications"). Objectors also object to the portion of the 2004 Order finding that:

> The internal communications leading up to those [post-decisional] documents, however, as well as the drafts preceding the final plans, fall squarely within the deliberative process privilege. . . . Those communications or documents which led to the creation of the final 2017 and 2018 Plans are subject to the deliberative process privilege and may be withheld from production.

2004 Order at 5 (citations omitted) (collectively and with the Pre-Decisional Fiscal Plan Communications, "Pre-Decisional Fiscal Plan Documents"). As to the remaining findings in the 2004 Order, Objectors either do not object or, as set forth herein, reserves their rights to object.

---

[1]  "ECF No." refers to docket entries in Case No. 17 BK 3283-LTS, unless otherwise noted.

## INTRODUCTION

Throughout the Title III cases, Respondents[2] have repeatedly relied on the deliberative process privilege to withhold highly relevant materials from Objectors and other parties.[3]   In response to Movants' request for the production of certain categories of documents pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), Respondents asserted a blanket objection that entire swaths of highly relevant documents are somehow shielded from disclosure by the deliberative process privilege.   See ECF No. 2154 at 3; ECF No. 2274 at 7-10.   These documents are responsive to Movants' Document Requests Numbers 8, 16 and 17 because they relate to the development and negotiation of prior and ongoing fiscal plans.   Such documents also contain communications by and between the Commonwealth, AAFAF, the Oversight Board and their professionals relating to the development and negotiation of such fiscal plans.

As argued before the Magistrate Judge, the deliberative process privilege is far more limited than asserted by Respondents.   See ECF No. 2223 at 7; ECF No. 2302 at 6-7.   In finding that Pre-Decisional Fiscal Plan Documents are subject to the deliberative process privilege, the Magistrate Judge incorrectly sanctioned an overly broad application of the deliberative process privilege.   For the reasons set forth herein, Objectors respectfully request that the Court modify the 2004 Order and enter the Proposed Order, which is attached hereto as Exhibit B.

---

[2]   "Respondents" refers to the Federal Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Commonwealth of Puerto Rico (the "Commonwealth"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF").   "Movants" refers to Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, and the Mutual Fund Group.

[3]   *E.g.*, *The Puerto Rico Fiscal Agency and Financial Advisory Authority Objection to AMBAC Assurance Corporation Bankruptcy Rule 2004 Motion*, ECF No. 1908 at 6-9; *Debtors' Omnibus Objection to Motions for Orders Authorizing Rule 2004 Discovery*, ECF No. 1345 at 29-33.

## **OBJECTION**

Federal Rule 72(a) and Local District Court Rule 72(c) permit a party to serve and file objections to an order of a magistrate judge within 14 days after service of the order.  Fed. R. Civ. P. 72(a); L.Cv.R. 72(c).  In determining objections to an order of a magistrate judge, the district judge "'shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"  U.S. v. Paredes-Reyes, 992 F. Supp. 2d 56, 59 (D.P.R. 2014) (citation omitted); P.R. Tel. Co. v. Reyes-Davila, No. CV 07-2167, 2008 WL 11357912, at *4 (D.P.R. Sept. 26, 2008); Rivera Cortes v. Airport Catering Servs. Corp., 386 F. Supp. 2d 14, 17 (D.P.R. 2005).  Because questions regarding privilege are questions of law, the correct standard of review is *de novo*.  See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010).  Following this review, "'[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.'"  Paredes-Reyes, 992 F. Supp. 2d at 59 (citation omitted).

### A.     **Factual Information In The Pre-Decisional Fiscal Plan Documents Is Not Protected By The Deliberative Process Privilege**

Objectors object to the 2004 Order to the extent the 2004 Order finds that factual information in the Pre-Decisional Fiscal Plan Documents is protected by the deliberative process privilege.  The Pre-Decisional Fiscal Plan Documents are a subset of the documents requested in Document Requests Nos. 8, 16 and 17.  The Pre-Decisional Fiscal Plan Documents clearly contain factual information regarding the fiscal plans, which is not protected by the deliberative process privilege.

The First Circuit has stated that a "pre-decisional" document will be protected under the deliberative process privilege if "it (i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the

agency.'"  Providence J. Co. v. U.S. Dep't of Army, 981 F.2d 552, 559 (1st Cir. 1992).  In 2014,

the Court described the requirements for information to be protected by the deliberative process

privilege:

> The [deliberative process] privilege must be asserted by the head
> of the department that has control over the requested information
> after personally considering the material, with an explanation of
> the need for preserving the material's confidentiality, and a
> detailed explanation of each withheld document.  A document
> must be both "predecisional" and "deliberative" to qualify for the
> deliberative process privilege.

W Holding Co. v. Chartis Ins. Co. of P.R., 42 F. Supp. 3d 319, 324 (D.P.R. 2014) (McGiverin,

M.J.) (citations omitted).

The Supreme Court of Puerto Rico has found that the deliberative process privilege does

not cover factual matters and objective materials.  See Bhatia Gautier v. Rosselló Nevares, 2017

TSPR 173 (P.R. 2017) (citing 6 James Wm. Moore, Moore's Fed. Prac.: Civil § 26.52[5] at 26-

412.8 (3d ed. 2016)) (a certified translation of Bhatia Gautier is attached hereto as Exhibit C); In

re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 585 (E.D.N.Y. 1979).  Factual information

is entirely different from pre-decisional, deliberative, intra-agency communications that the

deliberative process privilege is intended to protect.  See Providence J., 981 F.2d at 559.  Factual

portions of privileged documents therefore are discoverable if their production does not comprise

deliberative information entitled to protection.  W Holding, 42 F. Supp. 3d at 324.  Accordingly,

any documents or communications containing in whole or in part data, figures, financial reports,

forecasts or other factual information underlying the fiscal plans are not protected by the

deliberative process privilege.

The Pre-Decisional Fiscal Plan Documents are requested in Document Request Numbers

8, 16 and 17, which clearly seek factual information:

-4-

- Request Number 8 seeks "[i]tems not produced (both methodological and inputs) with respect to the DevTech models or codes that generate anticipated inflation and GNP, including but not limited to information regarding the meaning and method of calculation of any undefined variables." ECF No. 1870, Schedule A.

- Request Number 16 seeks: "[t]o the extent not already produced or requested above, any inputs, calculations, or formulae underlying (i) the Fiscal Plan for Puerto Rico certified on March 13, 2017, and the Puerto Rico Electric Power Authority Fiscal Plan certified on April 28, 2017, (ii) revisions to either of such fiscal plans, and (iii) forthcoming fiscal plans for the Commonwealth, PREPA, PRASA, and any instrumentality when and as submitted (and/or resubmitted) to the Oversight Board, together with copies of such forthcoming fiscal plans when and as submitted (and/or resubmitted) to the Oversight Board." Id.

- Request Number 17 seeks: "[a] fully functional model or workbook (in native format) showing how the Reconciliation Adjustment discussed on Page 15 of the Fiscal Plan for Puerto Rico certified on March 13, 2017 was calculated including but not limited to any backup or linked spreadsheets and all data run through such model(s) or workbook(s), and analysis or documents sufficient to show how the Reconciliation Adjustment is reflected in the budgets for the Commonwealth, any agency or instrumentally therefor and the FOMB including, but not limited to, any analysis prepared to compare or "bridge" each line item in the 2014, 2015, or 2016 preliminary or final audits to that Fiscal Plan." Id.

There can be no dispute that the fiscal plans are largely, if not entirely, made up of factual information, including data, projections and assumptions.   For instance, attached hereto as Exhibit D, is the "New Fiscal Plan for Puerto Rico," dated January 24, 2018 ("January 2018 Fiscal Plan").[4]   The January 2018 Fiscal Plan is over 90 pages and is made up of graphs, charts, historical data, projections and assumptions.   Factual information within the January 2018 Fiscal Plan and, thus, drafts of January 2018 Fiscal Plan and communications related thereto, are simply not the type of information that the deliberative process privilege is intended to protect. The same is true for drafts of other fiscal plans and communications related to those fiscal plans.

---

[4]   The January 2018 Fiscal Plan has not been certified by the Oversight Board.

To find that the Pre-Decisional Fiscal Plan Documents are protected by the deliberative process privilege would be an improper expansion of the deliberative process privilege.

For these reasons, the Court should modify the 2004 Order and find that the deliberative process privilege does not protect factual information in the Pre-Decisional Fiscal Plan Documents.[5]

**B.     Pre-Decisional Fiscal Plan Documents Communicated Between The Commonwealth, AAFAF, The Oversight Board And Their Professionals Are Not Protected By The Deliberative Process Privilege**

Objectors object to the 2004 Order because it finds that "communications among the Commonwealth, AAFAF, the Oversight Board and their professionals, as well as other materials relating to the creation of the 2017 and 2018 Plans" are subject to the deliberative process privilege.  2004 Order at 4.  Pre-Decisional Fiscal Plan Documents communicated between (i) the Commonwealth, AAFAF and/or their respective professionals, on one side, and (ii) the Oversight Board and/or its professionals, on the other side, are not protected by the deliberative process privilege.  Moreover, Pre-Decisional Fiscal Plan Documents communicated by and between (i) the Commonwealth and its professionals, (ii) AAFAF and its professionals, or (iii) the Oversight Board and its professionals are not protected, unless Respondents can show that the deliberative process privilege applies to each professional.

As the First Circuit has held, and the Magistrate Judge recognized in the 2004 Order, the deliberative process privilege protects "the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process[.]"  Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884-85 (1st Cir. 1995); 2004 Order at 4; Dep't of Interior v. Klamath Water

---

[5]   In the alternative, the Court should order that drafts of fiscal plans be produced redacting information purportedly protected by the deliberative process privilege.  Communications regarding the fiscal plan also should be ordered to be produced redacting information purportedly protected by the deliberative process privilege.

Users Prot. Ass'n, 532 U.S. 1, 9 (2001) (acknowledging the deliberative process privilege exists to "enhance the quality of agency decisions" by promoting candid conversations between agency officials.).   Accordingly, "[e]ven if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic. The privilege 'is a qualified one', and 'is not absolute.'"   Texaco, 60 F.3d at 885 (citations omitted).

The 2004 Order, however, finds communications among the Commonwealth, AAFAF, the Oversight Board and their professionals are subject to the deliberative process privilege. There can be no credible dispute that the Commonwealth, AAFAF, and the Oversight Board are distinct entities with different roles and divergent interests.   PROMESA expressly establishes the Oversight Board as an "*entity*," meaning that the Board is a distinct legal person. See PROMESA § 101(c)(1) (emphasis added).   Similarly, AAFAF was created by Act No. 2-2017 as a "public corporation," meaning that it, too, is a distinct legal person.   See Act No. 2-2017 § 4.   Indeed, the Oversight Board sent a letter to Congress on March 12, 2018, attached hereto as Exhibit E, in which they stated "the Commonwealth and its instrumentalities, including PREPA, have retained their own counsel and other advisors for the Title III proceedings, on the grounds that the Commonwealth and its instrumentalities *often have divergent interests* from those of the [Oversight Board]." Id. (emphasis added).

Moreover, the Commonwealth, AAFAF, and the Oversight Board are not intended to act as a unit with respect to the development, negotiation and certification of fiscal plans.   The Commonwealth is required to propose a fiscal plan on a schedule established by the Oversight Board.   PROMESA §§ 201(a), 201(c)(2).   The Oversight Board is then required to review and approve or *reject* that fiscal plan.   PROMESA § 201(c)(3).   As a result, with respect to the fiscal plans, the Oversight Board is a third party who is engaged in arm's-length discussions and

negotiations with the Commonwealth and AAFAF.[6]  Their interests are not identical or aligned

in the sense envisioned by courts applying the deliberative process privilege.  Instead, their

relationship better resembles that between regulated entities and their regulator, where the

regulator's duty is to monitor and enforce compliance.

Indeed, the Commonwealth, AAFAF, the Oversight Board and their professionals have

plainly engaged in communications in which they are not aligned.  For instance, the fiscal plan

released by the Commonwealth in February 2017 provided that approximately $1.164 billion of

debt service per year would be paid to creditors (or $2.775 billion per year if federal health care

funding was restored).  See Proposed Commonwealth Fiscal Plan, dated Feb. 28, 2017, at 89,

excerpt attached as Exhibit F.  By contrast, the fiscal plan that was later certified by the

Oversight Board in March 2017 provided that only approximately $787 million per year in debt

service would be paid to creditors.  See Certified Commonwealth Fiscal Plan, dated March 13,

2017, at 28, excerpt attached as Exhibit G.  Clearly, the Commonwealth, AAFAF, the Oversight

Board and their professionals were not aligned as to the earlier fiscal plan.[7]  Creditors have the

right to the complete production of these types of communications, which are highly relevant

---

[6]    On several occasions in these proceedings, the Commonwealth, AAFAF, and the Oversight
Board have taken adversarial positions.  For example, the Oversight Board brought a motion to
appoint a Chief Transformation Officer to oversee PREPA, which the Commonwealth and
AAFAF opposed.  See Urgent Motion of Financial Oversight and Management Board for Puerto
Rico for Entry of Order Confirming Appointment and Authority of Chief Transformation Officer,
PREPA, Case No. 17-04780-LTS, ECF No. 361.  Indeed, consistent with the Oversight Board's
role with regard to the Commonwealth, the Oversight Board has sued the Commonwealth
government to enforce compliance with a fiscal plan.  See Financial Oversight & Mgmt. Bd. for
P.R. v. Rosselló Nevares, Adv. Proc. No. 17-250-LTS.

[7]    By comparison, the common interest privilege would not be applied to communications
between the Commonwealth, AAFAF, and the Oversight Board regarding the fiscal plan because
their respective interests are not aligned.  See, e.g., In re Rivastigmine Patent Litig., No. 05 MD
1661, 2005 WL 2319005, at *4 (S.D.N.Y. Sept. 22) (Francis, M.J.), aff'd, 2005 WL 3159665
(S.D.N.Y. Nov. 22, 2005) (Baer, J.).

-8-

evidence regarding the development and negotiation of the fiscal plans.   The 2004 Order incorrectly allows the Respondents to shield the Pre-Decisional Fiscal Plan Documents from disclosure.

Additionally, the 2004 Order appears to find that ***all*** Pre-Decisional Fiscal Plan Documents by and with professionals retained by the Commonwealth, AAFAF, and the Oversight Board are protected by the deliberative process privilege.   Such a finding impermissibly broadens the deliberative process privilege.   Contrary to this finding, the deliberative process privilege does not protect communications and documents shared with third parties, including professionals.   Shell Oil Co. v. IRS, 772 F. Supp. 202, 207 (D. Del. 1991) (acknowledging "strong case law supporting the broad waiver rule" to hold that the disclosure of Air Force interagency documents to a third party destroyed deliberative process privilege); see also In re McKesson Govtl. Entities Average Wholesale Price Litig., 264 F.R.D. 595, 599 (N.D. Cal. 2009) (finding state agency waived deliberative process privilege); Melendez-Colon v. U.S., 56 F. Supp. 2d 142, 145 (D.P.R. 1999) (holding that disclosure of a report waived deliberative process privilege).   Even when a consultant falls within the deliberative process privilege, it is limited to situations in which "[the] consultants played essentially the same part in [the] agency's process of deliberation" as the agency's own personnel.   Klamath, 532 U.S. at 10.

Respondents did not even attempt to show that their respective professionals "played essentially the same part in the agency's deliberative process" as the Commonwealth, AAFAF, or the Oversight Board.   Indeed, Respondents have failed to disclose which professionals they claim are protected by the deliberative process privilege.[8]   There is no question that the

---

[8]   As of the date hereof, Objectors have not received a categorical privilege log that Respondents were ordered to produce in the 2004 Order.   As a result, Objectors do not know which professionals received Pre-Decisional Fiscal Plan Documents.   For the avoidance of doubt, Objectors reserve their rights to object to designations on Respondents' privilege log,

Commonwealth, AAFAF, and the Oversight Board have engaged a number of advisors, consultants, law firms and other professionals who are involved in the development and negotiation of the fiscal plans. For instance, DevTech Systems, Inc., a private consulting firm, is involved in preparing the fiscal plan or, at least, models underlying certain assumptions in the fiscal plans. An entity like DevTech should not be permitted to shield its communications using the deliberative process privilege.

For these reasons, the Court should modify the 2004 Order and find that the deliberative process privilege does not protect (a) Pre-Decisional Fiscal Plan Documents communicated between (i) the Commonwealth, AAFAF and/or their respective professionals, on one side, and (ii) the Oversight Board and/or its professionals, on the other side, or (b) Pre-Decisional Fiscal Plan Documents communicated by and between (i) the Commonwealth and its professionals, (ii) AAFAF and its professionals, or (iii) the Oversight Board and its professionals, unless Respondents can show that the deliberative process privilege applies to each professional.

**C.    The Interests Of The Creditors And The Public Outweigh The Interests Of The Commonwealth, AAFAF, And The Oversight Board In Shielding The Pre-Decisional Fiscal Plan Documents**

Objectors object to the 2004 Order because in finding that the Pre-Decisional Fiscal Plan Documents were protected by the deliberative process privilege, the 2004 Order appears to have found that the interests of the Commonwealth, AAFAF, and the Oversight Board weighed in favor of shielding the disclosure of the Pre-Decisional Fiscal Plan Documents from creditors and the public. The reverse is true. The interests of the creditors and the public in being provided

---

including that documents and communications do not fall within the scope of the deliberative process privilege or that it was waived. Objectors further reserves their rights to request additional information from Respondents if the privilege log does not provide sufficient information on which to make such objections (see W Holding, 42 F. Supp. 3d at 324) and, if necessary, to request an *in camera* inspection of documents being withheld.

the Pre-Decisional Fiscal Plan Documents far outweigh the interests of the Commonwealth, AAFAF, and the Oversight Board from blocking disclosure of such documents.

The deliberative process privilege is not an absolute privilege and it must be weighed against the right of the person seeking the information. See Bhatia Gautier, 2017 TSPR 173 (Ex. C). The government must "prove in a precise and unequivocal manner the applicability of the privilege." Id.; W Holding, 42 F. Supp. 3d at 324. The First Circuit has held that "[e]ven if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic." Texaco, 60 F.3d at 885; see also Corporacion Insular de Seguros v. Garcia, 709 F. Supp. 288, 299 (D.P.R.) (holding that the deliberative process privilege does not apply when a plaintiff's "'need for materials and the need for accurate fact finding overrides the government's interest in non-disclosure'") (citation omitted), appeal denied, 876 F.2d 254 (1st Cir. 1989). Factors to consider include "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." Texaco, 60 F.3d at 885.

Applying this balancing test, the scales tip decidedly in favor of disclosure of the Pre-Decisional Fiscal Plan Documents. At the first day hearing in these Title III proceedings, the Court stated that "transparency is important in these proceedings. . . . [A] method that . . . will make the steps and the issues as transparent as possible is appropriate from my perspective." May 17, 2017 Hr'g Tr., ECF No. 207 at 63:6. Drafts of fiscal plans and communications regarding their development and negotiation are central to the disputes in the Title III proceedings and unavailable from other sources. Indeed, the Pre-Decisional Fiscal Plan Documents can be obtained only from Respondents. See Melendez-Colon, 56 F. Supp. 2d at 146 (despite claim of deliberative process privilege, court ordered production because "Defendant is the only party with [the relevant] information and evidence").

The interests of the creditors as well as the public in having access to the Pre-Decisional Fiscal Plan Documents far outweigh the Respondents' undefined interest in blocking disclosure of the Pre-Decisional Fiscal Plan Documents.  Congress specifically identified "lack of financial transparency" as one of the primary factors leading to Puerto Rico's financial difficulties.  PROMESA § 405(m)(1).  It is wrong for the Oversight Board, in particular, to claim a strong interest in preventing disclosure when a key part of the Oversight Board's Congressional mandate is precisely to "bring order and *transparency*" to Puerto Rico.  H.R. Rep. No. 114-602, pt. 1 at 40 (2016) (emphasis added); see also Wal-Mart P.R., Inc. v. Zaragoza-Gomez, 152 F. Supp. 3d 67, 73 (D.P.R. 2016) (in the context of the bank-examiner privilege, stating that "'when the public's interest in effective government would be furthered by disclosure . . . the justification for [a qualified] privilege is attenuated.'") (quoting In re Franklin, 478 F. Supp. at 582).

For these reasons, the Court should modify the 2004 Order and find that any remaining information being withheld in the Pre-Decisional Fiscal Plan Documents is not protected by the deliberative process privilege because the interests of the creditors and the public in being provided the Pre-Decisional Fiscal Plan Documents outweigh the interests of the Commonwealth, AAFAF, and the Oversight Board.

## **RESERVATION OF RIGHTS**

Objectors further reserve their rights to later argue that the deliberative process privilege has been waived with regard to the Pre-Decisional Fiscal Plan Documents.  Like any other privilege, the deliberative process privilege can be waived.  As discussed above, the deliberative process privilege can be waived by disclosure to third parties, including professionals.  See Klamath, 532 U.S. at 10.  The deliberative process privilege also can be waived when a party

attempts to use privilege as both a sword and a shield or the information being withheld is the subject of litigation.   In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 898 F. Supp. 2d 603, 610 (S.D.N.Y. 2012) (holding that because New Jersey's "claims put directly at issue its own deliberations" the state therefore "waived the deliberative process privilege with regard to those documents"); Williams v. City of Bos., 213 F.R.D. 99, 102 (D. Mass. 2003) (Dein, M.J.) (deliberative process privilege is inapplicable where "the 'decision-making process itself is the subject of the litigation[.]'") (citation omitted).

At this time, Objectors do not have sufficient information regarding the Pre-Decisional Fiscal Plan Documents to assert that a waiver of the deliberative process privilege, or any other privilege, has occurred.  However, there can be no question that the fiscal plans are already the subject of litigation and will likely be the subject of future contested matters and other litigations. The development and negotiation of the fiscal plans will almost certainly be the focus of such contested matters and litigations.  If it is, Respondents should not be permitted to withhold the Pre-Decisional Fiscal Plan Documents.  See Williams, 213 F.R.D. at 102.  Therefore, Objectors reserves their rights to later argue that the deliberative process privilege has been waived with regard to the Pre-Decisional Fiscal Plan Documents.

## CONCLUSION

For the foregoing reasons, Objectors respectfully request that the Court enter the Proposed Order modifying the 2004 Order as follows:

(1)    The deliberative process privilege does not protect factual information set forth in the Pre-Decisional Fiscal Plan Documents;

(2)    The deliberative process privilege does not protect Pre-Decisional Fiscal Plan Documents communicated between (i) the Commonwealth, AAFAF and/or their

respective professionals, on one side, and (ii) the Oversight Board and/or its professionals, on the other side;

(3)    The deliberative process privilege does not protect Pre-Decisional Fiscal Plan Documents communicated by and between (i) the Commonwealth and its professionals, (ii) AAFAF and its professionals, or (iii) the Oversight Board and its professionals, unless Respondents can show that the deliberative process privilege applies to each respective professional; and

(4)    The deliberative process privilege does not protect any remaining information being withheld in the Pre-Decisional Fiscal Plan Documents because the interests of the creditors and the public in being provided the Pre-Decisional Fiscal Plan Documents outweigh the interests of the Commonwealth, AAFAF, and the Oversight Board.

Dated:   San Juan, Puerto Rico
         March 12, 2018

CASELLAS ALCOVER & BURGOS P.S.C.          CADWALADER, WICKERSHAM & TAFT
                                          LLP

By: _/s/ Heriberto Burgos Pérez_          By: _/s/ Howard R. Hawkins, Jr._
    Heriberto Burgos Pérez                    Howard R. Hawkins, Jr.*
    USDC-PR 204809                            Mark C. Ellenberg*
    Ricardo F. Casellas-Sánchez               Ellen V. Holloman*
    USDC-PR 203114                            Ellen M. Halstead*
    Diana Pérez-Seda                          Gillian Groarke Burns*
    USDC-PR 232014                            Thomas J. Curtin*
    P.O. Box 364924                           Casey J. Servais*
    San Juan, PR 00936-4924                   200 Liberty Street
    Telephone: (787) 756-1400                 New York, NY 10281
    Facsimile:  (787) 756-1401                Telephone:  (212) 504-6000
    Email:      hburgos@cabprlaw.com          Facsimile:  (212) 406-6666
                rcasellas@cabprlaw.com        Email:      howard.hawkins@cwt.com
                dperez@cabprlaw.com                       mark.ellenberg@cwt.com
                                                          ellen.holloman@cwt.com
*Attorneys for Assured Guaranty Corp. and*                ellen.halstead@cwt.com
*Assured Guaranty Municipal Corp.*                        gillian.burns@cwt.com
                                                          thomas.curtin@cwt.com
                                                          casey.servais@cwt.com

                                          * Admitted *pro hac vice*

                                          *Attorneys for Assured Guaranty Corp. and*
                                          *Assured Guaranty Municipal Corp.*

ADSUDAR MUñOZ GOYCO SEDA &
PÉREZ-OCHOA, PSC, P.S.C.

By: */s/ Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    USDC-PR No. 206,314
    Luis A. Oliver-Fraticelli
    USDC-PR NO. 209,204
    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone:  (787) 756-9000
    Facsimile:   (787) 756-9010
    Email:      epo@amgprlaw.com
             loliver@amgprlaw.com

*Attorneys for National Public Finance
Guarantee Corporation*

WEIL, GOTSHAL & MANGES LLP

By: */s/ Jared R. Friedmann*
    Marcia Goldstein*
    Jonathan Polkes*
    Gregory Silbert*
    Jared R. Friedmann*
    767 Fifth Avenue
    New York, New York 10153
    Telephone:  (212) 310-8000
    Facsimile:  (212) 310-8007
    Email:      marcia.goldstein@weil.com
             jonathan.polkes@weil.com
             gregory.silbert@weil.com
             jared.friedmann@weil.com

* Admitted *pro hac vice*

*Attorneys for National Public Finance
Guarantee Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the Clerk of the Court using

the CM/ECF System, which will send notification of such filing to all parties of record in the

captioned case.  Further, I directed that the following counsel of record be served by U.S. Mail:

| | |
|---|---|
| Office of the United States Trustee for Region 21<br>Edificio Ochoa<br>500 Tanca Street, Suite 301<br>San Juan, PR 00901-1922 | Gerardo J. Portela Franco<br>Puerto Rico Fiscal Agency and Financial<br>Advisory Authority (AAFAF)<br>De Diego Ave. Stop 22<br>San Juan, Puerto Rico 00907 |
| John J. Rapisardi, Esq.<br>O'Melveny & Myers LLP<br>7 Times Square<br>New York, New York 10036 | Andrés W. López, Esq.<br>Law Offices of Andrés W. López<br>902 Fernández Juncos Ave.<br>San Juan, PR 00907 |
| Martin J. Bienenstock, Esq.<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, New York 10036-8299 | Hermann D. Bauer, Esq.<br>O'Neill & Borges LLC<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813 |
| Nancy A. Mitchell, Esq.<br>Greenberg Traurig LLP<br>200 Park Avenue<br>New York, New York 10166 | Arturo Diaz-Angueira, Esq.<br>Cancio, Nadal, Rivera & Diaz, P.S.C.<br>403 Muñoz Rivera Ave.<br>San Juan (Hato Rey), PR 00918-3345 |
| Luc A. Despins, Esq.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166 | Juan. J. Casillas Ayala<br>Casillas, Santiago & Torres LLC<br>El Caribe Office Building<br>53 Palmeras Street, Suite 1601<br>San Juan, PR 00901-2419 |
| Robert Gordon, Esq.<br>Jenner & Block LLP<br>919 Third Avenue<br>New York, New York 10022 | A.J. Bennazar-Zequeira<br>Bennazar, Garcia & Milian, C.S.P.<br>Edificio Union Plaza PH-A piso 18 Avenida<br>Ponce de Leon #416<br>Hato Rey, PR 00918 |

At San Juan, Puerto Rico, this 12th day of March, 2018.

By: _/s/ Howard R. Hawkins, Jr._
    Howard R. Hawkins, Jr.*
    * Admitted *pro hac vice*