# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANUAL MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, <u>et al.</u>, | (Jointly Administered) |
| Debtors.¹ | |

-----------------------------------------------------------------------x

# **ORDER**

## I. INTRODUCTION

This matter is before the Court on Movants'² request for the production of certain categories of documents pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"). This order resolves outstanding issues from the *Urgent Renewed Joint Motion by the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty*

---

¹ The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

² "Movants" are the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation. "Respondents" are the Federal Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Commonwealth of Puerto Rico (the "Commonwealth"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF").

*Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation for Order Authorizing Rule 2004 Examination* (Dkt. No. 1870) (the "Renewed Motion"). Since the filing of the Renewed Motion, the parties thereto have collaborated substantially and have narrowed the issues before the Court.

The remaining disputes relate to materials that the parties call "Fiscal Plan Development Materials," which they define as "information related to the prior and ongoing development of fiscal plans, including formula[e] and assumptions underlying those plans and communications between and among Respondents and Respondents' respective officials, employees, consultants and representatives." See Joint Report, Dkt No. 2154 at I(b). Specifically, they disagree as to the applicability of the deliberative process privilege to these Fiscal Plan Development Materials. In addition, they disagree as to whether Fiscal Plan Development Materials should be deemed to be produced under Rule 2004 so that they can be used freely in litigation and otherwise.[3]

For the reasons detailed herein, this Court makes the following rulings. First, pre-decisional communications and documents that relate to the development of the fiscal plans are privileged and may be withheld from production so long as a privilege log is maintained in accordance with the requirements set forth herein. Second, as a general statement, the non-privileged Fiscal Plan Development Materials qualify as the types of materials that are discoverable under Rule 2004. However, the Movants have not established good cause for their general release from confidentiality restrictions or their general use in this proceeding at

---

[3] As detailed herein, most of the Fiscal Plan Development Materials have been produced in the data room. While the materials, therefore, are available to the Movants, their use is restricted by various protective orders and non-disclosure agreements.

2

this time. Therefore, in accordance with the parties' agreement with respect to the other materials in the data room, and as detailed more fully herein, Movants may attempt to use the Fiscal Plan Development Materials in the Title III or adversary proceedings, but the Respondents are not prejudiced from objecting to that use on a document by document basis. See Joint Report at I(a).

II. BACKGROUND

On December 15, 2017, this Court granted the Renewed Motion by which Movants sought seventeen categories of discovery in this Title III proceeding. See Order, Dkt. No. 2033. This Court granted the Renewed Motion "without waiver of any objections the Respondents may have to specific categories or documents." Id. at 2. The parties subsequently filed the Joint Report with the Court identifying which discovery requests remained contested. See Dkt. No. 2154. They identified three such requests – 8, 16, and 17 – which collectively demand the production of what the parties refer to as "Fiscal Plan Development Materials," as defined above. See Joint Report, Dkt. No. 2154 at I(b). The parties then submitted additional briefing further explaining the scope of their remaining disagreements. Dkt. Nos. 2223, 2274, 2301. Despite the broad language of the specific requests, it is clear from the briefing that the focus of the requests for Fiscal Plan Development Materials are for information related to the March 13, 2017 certified fiscal plan (the "2017 Plan") and the 2018 fiscal plan currently in development (the "2018 Plan"). It is also clear that as a result of the substantial collaboration of the parties, the only two issues remaining relate to the applicability of the deliberative process privilege and the Movants' ability to use the Fiscal Plan Development Materials in these proceedings.

3

III.     DISCUSSION

A.     Deliberative Materials

Movants seek communications among the Commonwealth, AAFAF, the Oversight Board, and their professionals, as well as other materials relating to the creation of the 2017 and 2018 Plans as part of the production of Fiscal Plan Development Materials.[4] Respondents argue that these materials are protected by the deliberative process privilege. The Court agrees, but orders Respondents to record any such objections in a categorical privilege log.

The deliberative process privilege protects "the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process. . . ." Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884-85 (1st Cir. 1995). It covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." In re Pharm. Indus. Average Wholesale Price Litig., 254 F.R.D. 35, 39 (D. Mass. 2008) (quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8, 121 S. Ct. 1060, 1062 149 L. Ed. 2d 87 (2001)).

---

[4] Respondents argue that Movants have broadened their initial requests by asking for communications. Opposition, Dkt. No. 2274 at 4 ("[a]lthough Requests 8, 16, and 17 do not purport to seek communications of any kind, Movants now demand all communications and documents exchanged between and among AAFAF, the Commonwealth and the Oversight Board related to the development of the existing Fiscal Plans and the development of the upcoming Fiscal Plans."). As the document requests in the Renewed Motion ask Respondents to "draw[] upon all materials in [y]our possession, custody, or control . . ." and further requires them to "provide all information in response to a Document Request[,]" Movants' request for communications is reasonable. See Renewed Motion, Schedule A, Dkt. No. 1870 at 4-5. Furthermore, the parties jointly acknowledged that the Movants' requests included communications when they defined Fiscal Plan Development Materials in the Joint Report as including communications. Dkt. No. 2154 at I(b).

4

The final 2017 and 2018 Plans, as well as the "formula[e] and assumptions underlying those plans"[5] are the final product of a governmental decision-making process. As such, those final materials are not privileged. Texaco P.R., Inc., 60 F.3d at 884 ("to qualify for the privilege, a document must be (1) predecisional, that is, antecedent to the adoption of agency policy . . .") (internal quotations and citations omitted). It is this Court's understanding that those post-decisional documents are currently being shared. The internal communications leading up to those documents, however, as well as the drafts preceding the final plans, fall squarely within the deliberative process privilege. Id. (protecting as privileged those documents that are "deliberative, that is, actually related to the process by which policies are formulated") (internal quotation and citation omitted). Those communications or documents which led to the creation of the final 2017 and 2018 Plans are subject to the deliberative process privilege and may be withheld from production.

While the privileged documents may be appropriately withheld, they are responsive to the request for Fiscal Plan Development Materials and, as discussed *infra*, could otherwise qualify for production in this proceeding. As such, Respondents must catalog their withholding in a privilege log. The log shall be categorical, identifying the types of documents being withheld. Respondents are not required to identify the number of individual documents withheld in each category.[6] As otherwise agreed upon in the Joint Report, the privilege log shall

---

[5] As included in the definition of Fiscal Plan Development Materials in the Joint Report. Dkt. No. 2154 at I(b).

[6] Despite Movants' request that Respondents "be ordered to identify in their log the number of documents being withheld in each category[,]" Reply, Dkt. No. 2301 at 7, such information would be unduly burdensome and is not required under Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed –

5

include the following information: i) the basis for withholding each category of documents; (ii) a sufficient description of the subject matter of the category of documents to permit Movants to evaluate the claim of privilege; (iii) the date range for the set of documents in each category; and (iv) an aggregate list of all persons sending and receiving documents in each category. See Joint Report, Dkt. No. 2154 at I(c). The parties shall meet and confer to discuss when the log needs to be produced and the frequency with which the log must be updated. The Court will otherwise adopt the parties' proposed schedule regarding the procedure for challenging items listed in the log. See Joint Report, Dkt. No. 2154 at II.

### B. Production and Use of Fiscal Plan Development Materials

When the Renewed Motion was filed originally, it appeared that there was a dispute as to which documents needed to be produced to respond to the outstanding requests no. 8, 16 and 17. That issue appears to have been resolved. Thus, Movants have reported that they have received information sufficient to respond to the requests for Fiscal Plan Development Materials relating to the 2017 Plan, and have requested similar information related to the 2018 Plan. Reply, Dkt. No. 2301 at 3 n.4 ("With respect to the [2017 Plan], Respondents have, with limited exceptions, posted to the data room materials sufficient to respond to the three outstanding document requests (8, 16 & 17)."); id. at 3 ("Because these materials have already been provided with respect to the [2017 Plan], Respondents cannot credibly argue that it would be unduly burdensome to produce the same documents with respect to the [2018 Plan.]"). Movants also reported that Respondents had begun production of similar types of materials

---

and do so in a manner that, without revealing information itself privilege or protected, will enable other parties to assess the claim.").

6

related to the 2018 Plan. Id. ("The weekend before this reply brief was due, Respondents posted to the data room (subject to the mediation agreement restrictions) a model supporting the [2018 Plan]. Movants are still evaluating the information provided and are not in a position to say that this model provides all of the inputs, formulae and assumptions underlying the [2018 Plan].").

This Court assumes that the production of 2018 Plan materials to the data room will mirror the types of documents produced regarding the 2017 Plan, and that the production will be sufficient to respond to the outstanding requests of the Renewed Motion. Movants are free to inform the Court if their review of the produced material yields a different conclusion. The question that remains to be answered is whether that material should be deemed produced pursuant to Rule 2004 and, therefore, freely used without restriction in this litigation or otherwise.

Movants claim that production is warranted under Rule 2004 and that use of the documents is presently warranted. Respondents contend that the materials exceed the scope of permissible discovery under Rule 2004, and that the materials produced in the data room should remain there subject to existing restrictions. For the reasons detailed herein, this Court concludes that the Fiscal Plan Development Materials are discoverable under Rule 2004. However, Movants have not shown good cause for their immediate use in these proceedings. Therefore, consistent with the parties' agreement related to the documents in the data room produced in response to other requests, Movants are entitled to the information and may attempt to use documents in the Title III or adversary proceedings, but Respondents are not

7

prejudiced from objecting to individual documents at the appropriate time. See Joint Report, Dkt. No. 2154, at 1(a).

Rule 2004 allows for the discovery of information regarding "the liabilities and financial condition of the debtor." Fed. R. Bank. P. 2004(b). The scope of Rule 2004 discovery is broad and at the discretion of the Court. In re Hammond, 140 B.R. 197, 200-01 (Bankr. S.D. Ohio 1992). However, "[i]f the debtor challenges the right of the examiner to conduct a Rule 2004 examination, then the examiner has the burden of establishing that good cause exists for the taking of the examination." Id. (internal quotations and citations omitted). "Good cause is established if one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." Id. at 201. "The movant must show some reasonable basis to examine the material sought to be discovered and that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." In re Youk-See, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (internal quotations, citations, and punctuation omitted).

Movants argue that they will need to use these documents later in this Title III proceeding, especially during confirmation of a plan of adjustment. They contend that the confirmation process entitles them to use "all information that bears on how the Fiscal Plan was developed, what assumptions, projections and data were used, and what assumptions, projections and data were rejected." Movants' Brief, Dkt. No. 2223 at 3. For their part, Respondents take the position that the issues raised by a plan of adjustment are much more limited, and that much of the Fiscal Plan Development Materials may not be relevant to the issues to be decided in connection with a plan of adjustment. Opposition, Dkt. No. 2274 at 6.

8

For the reasons detailed below, this Court does not have to define the standard that will be employed in assessing any plan of adjustment at this time. Nevertheless, the Respondents' objections to the relevancy of the Fiscal Plan Development Materials are not persuasive. Movants have successfully shown that the materials are properly discoverable under Rule 2004.

First, Respondents argue that the Fiscal Plan Development Materials need not be produced under Rule 2004 because PROMESA § 106(e) prohibits district courts from reviewing fiscal plan certifications. See Opposition, Dkt. No. 2274 at 4. This argument is unpersuasive. The Movants are not seeking to challenge the fiscal plans. Rather, they are seeking information to understand the past, present and future financial condition of the Commonwealth. This information will form the basis for any plan of adjustment. This is an appropriate purpose for discovery under Rule 2004. In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate.").

For the same reasons, Respondents' contention that Movants' "effort to deconstruct the Fiscal Plans would not give them the insight into the Commonwealth's financial condition they purport to seek" is equally unavailing. See Opposition, Dkt. No. 2274 at 5. Respondents claim that a fiscal plan is "a blueprint for further fiscal and economic action by the Commonwealth. It is not a plan of adjustment designed to identify the treatment of each class of claims." Id. However, even if just a blueprint, the 2017 and 2018 Plans undeniably describe the existing and projected financial condition of the Commonwealth. Such information not only falls squarely within the purpose of Rule 2004, but is instructive in developing an understanding of any future plan of adjustment. Rule 2004 allows parties to broadly examine the financial

9

condition of the debtor – there is no requirement that the information sought directly address the treatment of the examiner's claim.

Respondents also disagree with Movants' description of the standard for confirming a plan of adjustment. Movants claim that "for any plan of adjustment to be confirmed over the objections of a dissenting class of creditors, it must be, among other things, fair and equitable . . . provide creditors with the maximum that the debtor could reasonably pay under the circumstances . . . [and] be consistent with the applicable Fiscal Plan." Movants' Brief, Dkt No. 2223 at 2-3 (internal quotations, citations, and punctuation omitted). In contrast, Respondents argue that ". . . PROMESA [] does not require the debtor to pay prepetition claimholders as much as it can. Rather, it provides the Court should consider what creditors could recover under applicable non-bankruptcy law, *i.e.*, what a race to the courthouse would produce for the creditors under non-bankruptcy law." Opposition, Dkt. No. 2274 at 6 (internal punctuation omitted). Respondents' argument, however, does not destroy the relevance of the Fiscal Plan Development Materials. Under either the Movants' or Respondents' proposed standard, the correct interpretation of which the Court need not decide today, the Fiscal Plan Development Materials are important for the Movants to have so that they can assess the financial condition of the debtor and participate in a plan confirmation process. Fiscal projections of the debtor are relevant no matter how one interprets the plan confirmation standard.

Finally, Respondents argue that even if the documents at issue are relevant under the confirmation standard, "the treatment of prepetition claims and indeed the future plan of adjustment will be the subject of a confirmation hearing and focused discovery." Id. As such, Respondents argue that Movants have not established a need for burdensome discovery when

10

the materials to be turned over "will likely be completely irrelevant to the eventual plan of adjustment[.]" Id. Respondents, however, have not shown that a substantial burden exists in producing the Fiscal Plan Development Materials, especially since many of the documents have already been shared under protective orders or other non-disclosure agreements. In addition, simply because the documents will not be used imminently does not rebut their relevance under Rule 2004. This Court does recognize, however, that deciding what material in the data room should be released from their confidentiality restrictions may involve a lot of unnecessary work since the Movants may not be seeking to use much of the material. This Court's ruling *infra* regarding when documents can be used alleviates that harm. As none of the Respondents' arguments diminish Movants' contention that the materials are relevant, this Court orders that the Fiscal Plan Development Materials are discoverable under Rule 2004.

Having ruled that the documents fall within the scope of Rule 2004, this Court nonetheless holds that Movants have not shown good cause for the immediate use of the information, which would require the disclosure of many documents currently shared amongst the parties pursuant to protective orders and/or non-disclosure agreements. The Movants have only asserted that they may need to use the materials in connection with the cross-examination of experts or other challenges to an eventual plan of adjustment. No timetable for such potential use has been provided. As a result, this Court orders that while Movants may attempt to use the Fiscal Plan Development Materials in the Title III or adversary proceedings, Respondents are not prejudiced from objecting to that use on a document by document basis. Such objections may include the necessity of keeping a particular protective order in place. This procedure mirrors that identified by the parties in Section I(a) of the Joint Report for the use of

11

documents responsive to other requests in the Renewed Motion.  See Dkt. No. 2154.  Nothing in this order shall be construed to dictate when in the course of this proceeding Movants can or cannot attempt to use the Fiscal Plan Development Materials.

IV.     CONCLUSION

This Court hereby orders that the Fiscal Plan Development Materials are discoverable consistent with the rulings herein.  Any discovery made available pursuant to this Order shall also be made available to the Joinder Parties[7] to the Renewed Motion.  The parties shall meet and confer about the schedule for the Respondents' production of the privilege log called for herein.  The Court adopts the parties' schedule for challenges to items on the privilege log.  See Joint Report, Dkt. No. 2154 at II.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: February 23, 2018

---

[7] The Joiner Parties are the Official Committee of Unsecured Creditors, the Official Committee of Retired Employees, Financial Guarantee Insurance Company, the ERS Secured Creditors, and the QTCB Noteholder Group.

12