# EXHIBIT C

CERTIFIED TRANSLATION

# IN THE SUPREME COURT OF PUERTO RICO

| | |
|---|---|
| **Hon. Eduardo Bhatia Gautier, as spokesperson of the Popular Democratic Party of the Senate of Puerto Rico** | Certiorari<br>2017 TSPR 173<br>198____ |
| **Appellee** | |
| **Vs.** | |
| **Hon. Ricardo Rossello Nevares, as Governor of Puerto Rico; Commonwealth of Puerto Rico** | |
| Petitioners | |

Case Number: CC-1017-668

Date: September 15, 2017

Judicial Region of San Juan, Special Panel OA TA-2017-128

Office of the Attorney General

Luis R. Roman Negrón, Esq.
Attorney General

Amir Cristina Nieves Villegas, Esq.
Assistant Attorney General

Attorney of Appellee
Margarita Mercado Echegaray, Esq.

Matter:

This document is an official document of the Supreme Court and is subject to the changes and corrections of the official compilation and publication process of the decisions of the Court. Its electronic distribution is made as a public service to the community.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                CERTIFIED TRANSLATION

## IN THE SUPREME COURT OF PUERTO RICO



|  |  |  |
|---|---|---|
| **Hon. Eduardo Bhatia Gautier, as spokesperson of the Popular Democratic Party of the Senate of Puerto Rico** | CC-2017-668 | Certiorari |
| **Appellee** | | |
| **Vs.** | | |
| **Hon. Ricardo Rossello Nevares, as Governor of Puerto Rico; Commonwealth of Puerto Rico** | | |
| Petitioners | | |

Opinion of the Court issued by the Associate Judge Mr. FELIBERTI CINTRON

(Rule 50)

In San Juan, Puerto Rico, on September 15, 2017.

Due to the great public interest that the matters before us have, we proceed to decide if the dismissal of the case was appropriate, as requested by the Government of Puerto Rico and its Governor, the Hon. Ricardo A. Rossello Nevares (Government or petitioners). [1] Should the decision be that it was not, we need to determine if the lower court's order instructing to produce the proposed budget submitted by the Government to the Financial Oversight Management

---

[1] As it is a dispositive motion, its denial was reviewable by the Court of Appeals via a writ of certiorari, pursuant to Rule 52.1 of Civil Procedure of Puerto Rico, 32 LPRA AP. V (Supl. 2015).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                CERTIFIED TRANSLATION

Board for Puerto Rico (Board) on April 30, 2017, for in camera examination, was timely. Let's

see.

2

I.

On May 4, 2017, the Honorable Eduardo Bhatia Gautier (Senator or appellee), as

Spokesperson of the Popular Democratic Party in the Puerto Rico Senate, filed before the Court

of First Instance a petition of *mandamus* whereby he requested that the Government be ordered

to publish a copy of the Proposed Budget submitted on April 30, 2017, to the Board[2] and to send

him a copy.

After various procedural incidents, on June 26, 2017, the Government requested the

dismissal[3] of the *mandamus* petition on the following grounds: (1) that the Senator has no

standing; (2) that the cause of action is moot as the proposed final budget was provided to the

legislative bodies for their consideration and approval; (3) that the Senator did not comply with

the statutory requirements for the filing of a *mandamus* petition, particularly with the

requirement of exhausting the parliamentary procedures available prior to going to court, and (4)

that granting the request would imply intervening with the duties of the First Executive and of

---

[2] Per express provision of the Puerto Rico Oversight Management and Economic Stability Act, (PROMESA Act for its English acronym), 48 USCA sec 2101 et seq, the Governor of Puerto Rico, Hon. Ricardo A. Rossello Nevares was obligated to submit the proposal of the budget before the Financial Oversight Management Board for Puerto Rico (Board), prior to submitting it to the Legislature of Puerto Rico. 48 USCA sec 2142.
It should be noted that Section 101 (c) of the PROMESA Act, 48 USCA sec. 2121(c) states as follows:
"SEC 101 FINANCIAL OVERSIGHT MANAGEMENT BOARD.
(c) TREATMENT- An Oversight Board pursuant to what is established in this Section-
(1) Shall be created as an entity within the government of the territory.
For which it is established pursuant to this title and
(2) Shall not be considered a department, agency, establishment or office of the Federal Government" (our underline). Puerto Rico Oversight Management and Economic Stability Act, One hundred fourteenth Congress of the United States of America, in the Second Period of Sessions in: https://juntasupervision.pr.gov/wp-content/uploads/2017/02/PROMESA SpanishVersion 02-22-17.pdf (last visit, September 14, 2017).

[3] Pursuant to the provisions of Rule 10.2 of Civil Procedure of Puerto Rico, 32 LPRA Ap. V (2010).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

the Legislative Assembly, which would break the separation of powers. It stated, also, that the document requested is

3

confidential, as it is a working document prepared during the deliberation stage prior to making the final decisions and is therefore, protected by the executive privilege.

On June 29, 2017, the Senator filed an Opposition to the Motion to Dismiss. He alleged that he has standing as he has been exposed to a clear and palpable violation to his prerogatives as a legislator. He equally invoked his constitutional right to access public information and documents. Also, he stated that his petition is not moot, as the Government did not certify that the document that it submitted to the Board is the same that was submitted to the Legislative Assembly. In the alternative, he stated that it is a claim that can be repeated and thus escape judicial revision. On the other hand, he stated that he satisfied all the requirements for the issuance of his *mandamus* petition. Lastly, he stated that the document requested is not a draft or a pre-decision document that contains the substance of the deliberation procedures prior to adopting the budget, therefore it is not covered by the executive privilege. Therefore, he concluded that it had to be divulged pursuant to the constitutional right to access public information.

On July 17, 2017, the Court of First Instance issued an order wherein it scheduled an argumentative hearing for July 26, 2017, and asked the Senator to: (1) place the court in a position to determine if its *mandamus* petition turned moot after the approval of the Budget 2017-2018; (2) convince the lower court that the case was not a "transfer of a legislative debate to the judicial forum but a real injury to his legislative prerogatives" and (3) to show that he

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                         CERTIFIED TRANSLATION

exhausted all remedies available to him so that his right to supervise the process of the approval

of the Budget 2017-2018 be allowed and acknowledged". As to the Government, it asked for it to

clarify if the information requested by the Senator was made public at any time.[4] Lastly, it

required the parties

4

to appear in court prepared to argue their respective positions regarding the nature of the

documents requested, that is, if they were public or had any information protected by the

executive privilege.

Upon being in possession of the documents of both parties and the joint motion, in which

certain facts and documents were stipulated and the controversies in law were outlined, on July

26, 2017, the argumentative hearing was held. That same afternoon, the lower court entered and

notified an Order denying the Government's Motion to dismiss. It concluded that the controversy

was justiciable, as the Senator had standing and the cause had not turned moot. Consequently, it

gave the Government a term of ten (10) days to submit the Proposed Budget in controversy in a

sealed envelope for in camera examination. That, with the purpose to examine if pursuant to the

executive privilege, it is not appropriate to divulge it. Also, the petitioners had to file a motion in

which they would detail the reasons why they claimed that the information requested was

privileged. See order of July 26, 2017 issued by the Court of First Instance, page 3.

In disagreement with the decision of the lower court, on August 4, 2017, the Government

of Puerto Rico filed a *certiorari* and motion in aid of jurisdiction with the Court of Appeals.

That same day, such forum notified an order by which it denied the issuance of the writ of

---

[4] The Court of First Instance gave the parties until July 21, 2017 to file what was requested in writing.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

*certiorari* requested. [5] In disagreement with such decision, on August 7, 2017, the Government

came to us alleging the following errors:

First Error

The Court of Appeals erred by not issuing the writ of *certiorari* requested and not reversing the decision of the Court of First Instance that denied the <u>dispositive</u> motion of dismissal filed, allowing the case to be seen in the merits, despite it being a matter that is not justiciable as the plaintiff Senator lacks standing and his claim turned moot.

5

Second Error

The Court of Appeals erred by not issuing the writ of *certiorari* requested and not reversing the decision of the Court of First Instance that denied the <u>dispositive</u> motion of dismissal filed, allowing the case to be seen in the merits, despite that the plaintiff Senator did not exhaust the remedies available in the legal system before channeling his claim through the judicial forum.

Third Error

The Court of Appeals erred by not reversing the Order of the Court of First Instance that denied dismissing the captioned complaint of *mandamus*, despite that in this case it is not appropriate to issue such extraordinary and privileged writ.

The petitioners also alleged and discussed in the <u>*Urgent Motion Reiterating Dismissal*</u>

filed in the lower court, in the *Certiorari* Petition filed with the Court of Appeals and in the

*Certiorari* Petition filed with us, that the document requested by the Senator is protected by the

executive privilege, therefore it is not appropriate to produce it.[6] On August 7, 2017, the Senator

also appeared before us through an Urgent Opposition to the Motion in Aid of Jurisdiction and

Opposition to *Certiorari*.

---

[5] Such Order was signed by the Appellate Judges Ramirez Nazario and Romero Garcia. On the other hand, the Appellate Judge Colom Garcia stated therein that she would have issued the writ.
[6] Jointly with the *Certiorari* Petition, the Attorney General, in representation of the Governor and the Government of Puerto Rico (Government or petitioners), filed an Urgent Motion in Aid of Jurisdiction wherein he requested the stay of the proceedings before the lower court, in particular, the effects of the Order issued by such forum on July 26, 2017. In such decision, the Court of First Instance ordered the Government, among other things, to produce the proposed budget in a sealed envelope.

As the last day to submit the document in question was August 7, 2017, and so the controversy would not turn moot that same day we issued an order granting the motion in aid of jurisdiction and staying the proceedings before the Court of First Instance until this Court otherwise stated.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

With the benefit of the appearance of the parties, we issue the writ of certiorari requested

and decide the captioned without anything further, pursuant to Rule 50 of the Regulation of this

Court, 4 LPRA Ap. XXI-B (2012).

II.

**A. Standing**

The courts can only evaluate those cases that are justiciable. <u>Asoc. Fotoperiodistas v.</u>

<u>Rivera Schatz</u>, 180 DPR 920 (2011). A controversy is not justiciable when: (1) it seeks to solve a

6

political question; (2) one of the parties lacks standing; (3) facts after the beginning of the case

turned the controversy moot; (4) the parties are trying to obtain a consulting opinion or (5) a case

that is not ripe. Id.

Particularly, we have defined standing as the capacity that is required to the movant of an

action to appear as a litigator before the court, efficiently take procedural actions, and this way

obtain a binding judgment. R. Hernandez Colon, Practica Juridica de Puerto Rico, Derecho

procesal civil, San Juan, Pubs. LexisNexis de Puerto Rico, Inc., 2017, page 121; J.A. Echevarria

Vargas, Procedimiento Civil Puertorriqueño, 1st ed., rev., Colombia, [s. Ed.] 2012, page 132.

The standing doctrine has the purpose to show the adjudicating forum that the plaintiff's interest

in the case is such that, with all likelihood, it will vigorously prosecute its cause of action.

<u>Sánchez et al v. Srio. De Justicia et al</u>, 157 DPR 360 (2002); <u>Hernandez Agosto v. Romero</u>

<u>Barceló</u>, 112 DPR 407 (1982).

To demonstrate that he has standing, the movant has to establish that: "(1) he has suffered

a clear and palpable damage; (2) that such damage is real, immediate and precise, not abstract or

hypothetical; (3) there is a connection between the damages suffered and the cause of action

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

exercised, and (4) that the cause of action stems from the Constitution or a law". <u>Sánchez et al v.</u>

<u>Srio. De Justicia et al.</u>, supra, page 371. Also, see, <u>Torres Montalvo v. Gobernador ELA</u>, 194

DPR 760 (2016); <u>Hernandez Torres v. Hernandez Colon</u> et al, 131 DPR 593 (1992). We have

stated before that these criteria must be interpreted flexibly and liberally when it is an action

against agencies and government offices. <u>Asoc. De Maestros v. Srio. de Educacion</u>, 156 DPR

754 (2002)[7]. Also, an analysis of the allegations must be made in the most favorable and liberal

way for the

7

movant of the case.  <u>García Oyola v. JCA</u>, 142 DPR 532 (1997); <u>Col. Ópticos de P.R. v. Vani</u>

<u>Visual Center</u>, 124 DPR 559 (1989); <u>Salas Soler v. Srio. De Agricultura</u>, 102 DPR 716 (1974). [8]

As to the standing of legislators, we have acknowledged, among other instances, that they

have standing to "vindicate a personal interest in the full exercise of their legislative duties

affected by actions or omissions of the executive power"[9] <u>Noriega v. Hernandez Colon</u>, 135 DPR

406, 428 (1994). Also, see, <u>Hernandez Torres v. Gobernador</u>, 129 DPR 824 (1992). In those

scenarios, he must show that he has constitutional or legal rights or that have been lacerated.

Also, for a legislator to show that he has standing he must comply with the requirements

demanded to lay persons.  <u>Hernandez Torres v. Hernandez Colon et al</u>, supra. For that he will

have to establish he has suffered a clear and immediate damage to his legislative prerogatives. Id.

When complying with such demand he must ensure that he is not invoking an abstract and

unrelated prerogative to the exercise of his legislative duties. Id. In particular, when a member of

---

[7] Also, see J.A. Echevarria Vargas, Procedimiento Civil Puertorriqueño, 1ra ed. Rev. Colombia, [s. Ed.], 2012, page 132.

[8] Id.

[9] It must be noted that we have also acknowledged standing to a legislator, for example to "Defend an individual traditional interest related to the legislative process and invoked in front of officers of such body in his individual capacity as legislator as in representation of a group of such Body: <u>Noriega v. Hernandez Colon</u>, 135 DPR 406, 428 (1994). Also, to "refute an illegal action of the executive" as authorized representative of the Senate or House of Representatives. Id.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                     CERTIFIED TRANSLATION

the legislature alleges that he has been affected because he has not been able to carry out his supervision duty adequately, he must have in mind that this only implies counting with the reasonable and necessary mechanisms that allow full participation in all stages of the legislative process. Id. As to the claim of the right to supervise, the legislator must exhaust all the remedies he has available so that right is allowed and acknowledged. Id. Also, the legislator must prove there is a connection between the damage allegedly suffered and the action exercised. Id.

                                                                                        8

        The Government alleged, among other things, that the appellee lacked standing based on the following premises: (1) that the allegations of the Senator were generic; (2) that the Senator did not show how his legislative prerogatives were diminished upon not obtaining the proposed budget requested; (3) that the legislative prerogatives, as to the approval of the budget, are activated when the Governor submits it to the Legislature; (4) that there is not a governmental duty to divulge the "first draft" of the proposed budget, therefore no clear and palpable damage was suffered that justified the Senator's claim, and (5) that the appellee did not exhaust the Senate's procedures specifically designed to channel the requests for information of its members.

    After an analysis of the applicable law and of the information on the file, we believe that the appellee has standing to make his claim in his capacity as Senator. Let's see.

    The appellee stated, among other things, that "[t]he lack of access to the budget document adopted by the Governor and sent to the Board, has limited and injured the faculty of Senator Bhatia to exercise his prerogative and role as legislator and to evaluate and approve the budget **counting with the benefit of a public document that influences the decision regarding the suitability of the budget submitted for the Senate's consideration.** (Emphasis provided).

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

Opposition to Motion to Dismiss, page 9. Afterwards, he added that "[t]he refusal of the Governor to divulge and provide Senator Bhatia the budget adopted by the Governor and sent to the Board has interfered and keeps interfering with Senator Bhatia's prerogatives to **evaluate the budget with the benefit of scrutinizing all the documents that have served as a base for the presentation of the proposed budget approved by the Board to the Legislature.**  Opposition to Motion to Dismiss, page 10. He also stated that his prerogative to ensure the adequacy of the

9

procedures of approval of budget and to supervise the transparency between the First Executive and the Board was limited.

        To that effect, we believe that the appellee specified his claim regarding to how the absence of the document in question affected his analytical procedure, prior to the approval of the budget submitted to the legislative bodies. Also, it should be noted that the claim of the Senator, in his official capacity, was based in the constitutional right to access the public information. [10] We then believe that the appellee, in his role as legislator, validly claimed that he suffered a clear and palpable damage that impacted his legislative prerogatives, which was produced by limiting the access to what he alleges is public information, infringing the aforementioned constitutional right. Also, there is a connection between the damage claimed and the cause of action exercised.

        Lastly, and as we will see below, inasmuch as appellee appeared in his capacity as Senator, on the grounds of his constitutional right to access public information and specified how

---

[10] It is important to mention, that different to the prior cases regarding the standing of legislators, in this situation the controversy did not originate in the legislative arena, but as an **individual claim of the Senator in his official capacity** to comply with his legislative duties. This way, there is no risk that the decision of this Forum interferes with the separation of powers between the Legislative Branch and Judicial Branch.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

the transgression to that right affected his legislative prerogatives, we understand that it was not

necessary for him to exhaust no parliamentary procedure before going to the judicial forum.

### B. Mootness

As mentioned before, mootness is one of the doctrines that narrows the limits of the

judicial function. C.E.E. v., Depto. de Estado, 134 DPR 927 (1993). It requires that, in every case

filed with a court, there is a real controversy between the parties. Amador Roberts et als v. ELA,

191 DPR 268 (2014). A case turns moot when the controversy in question succumbs to the

passing of time, because changes occurred in the facts or the law, and it turns inexistent. IG

Builders et al v.

10

BBVAPR, 185 DPR 307 (2012); UPR v. Laborde Torres y otros, 180 DPR 253 (2010); Emp.

Pur. Des., Inc. v. H.I.E.Tel., 150 DPR 924 (2000). That will have as a consequence that the

decision that in its day the court makes will have no practical effect between the parties. IG

Builders et al. v. BBVAPR, supra. That is,

> [t]he courts lose their jurisdiction on a case for mootness when there are changes
> during the judicial process of a particular controversy that make it not current, so that the
> remedy that the court may enter may not have any real effect as to that controversy.
> C.E.E. v. Depto. De Estado, supra, page 935.

Due to constitutional obligation (lack of case or controversy) or for reason of judicial auto

limitation, the courts must abstain from considering the merits of a case when we determine that

the case has turned moot. Presidente de la Cámara v. Gobernador, 167 DPR 149 (2006); Asoc.

De Periodistas v. Gonzalez, 127 DPR 704 (1991). However, there can be scenarios in which the

courts will see a case, even it is clearly moot. Emp. Pur. Des., Inc. v. H.I.E. Tel., supra; C.E.E. v.

Depto de Estado, supra. Pursuant to the foregoing, the exceptions to mootness will operate when:

(1) a matter is brought to the judicial forum that is recurrent or susceptible of occurring again and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

that it tends to avoid judicial review; (2) when the fact situation has been modified by defendant but the change appears to not be permanent, and (3) when aspects of the controversy turn moot, but collateral consequences subsist. Asoc. Fotoperiodistas v. Rivera Schatz, supra; Rullan v. Faz Alzamora, 166 DPR 742 (2006).

In this case, the Government alleged that the controversy turned moot upon concluding the approval process of the Budget for the fiscal year 2017-2018 and in consideration that the Senator had the opportunity to evaluate it when it was submitted to the legislative bodies.

However, we coincide with the primary forum that the petitioners never showed that, in effect, the document that was submitted for the consideration and evaluation of the legislative

11

bodies was the same that was submitted to the Board on April 30, 2017. In view of the foregoing, we believe that this litigation could have become moot **if the same document that was requested had been divulged**, but that was not the case.[11]

On the other hand, regardless that the budget was approved, as it regards **another** document that has not been produced, **if it is public**, the Government would have to produce it, **unless some privilege applies which prevents it**.

---

[11] On July 17, 2017, the Court of First Instance ordered the Government to clarify if the information requested by the Hon. Eduardo Bhatia Gautier (Senator or appellee) had been made public. That because, as the lower court stated, "from the arguments of Rossello Nevares it appears that the information requested by Bhatia Gautier-the Proposed Budget submitted by Rossello Nevares to the Board on April 30, 2017 is not the same information which was made public by defendants" See page 4 of the Order issued by the Court of First Instance on July 17, 2017.  In response to the foregoing, on July 21, 2017, the Government filed a Motion in Compliance with Order in which it held that "the Budget submitted to the Legislative Assembly was the one approved by the Financial Oversight and Management Board **after incorporating** the amendments it requested from the Governor, pursuant to the process provided in PROMESA. The draft of the budget provided to the Board has not been made public, it being a working document that had to be-as it in fact was-reviewed by the Financial Oversight and Management Board and returned to the Governor to then submit the final version to the Legislative Assembly".  (Emphasis in original). See page 6 of the *Motion in Compliance with Order* filed by the Government with the lower court on July 21, 2017. Also, in the *Certiorari* Petition filed with us the Government alleged that the appellee did not specify its claim of diminishment of his legislative prerogatives by "not counting with the draft of initial proposal of the budget that the Governor submitted to the Board, **a document that is not the proposed budget that was submitted for the consideration of the legislature, for its discussion, analysis and approval**". (Italics in original; bold and underline provided). See page 15 of *Certiorari* Petition.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                CERTIFIED TRANSLATION

As a result of the foregoing, we conclude that the matter object of this writ has not turned moot.

**C. Mandamus**

The Code of Civil Procedure establishes the mandamus as a "highly privileged" extraordinary writ addressed to a person or entity with the purpose of judicially demanding the compliance of a ministerial duty of the position he/it occupies. Art. 650 of the Code of Civil Procedure, 32 LPRA sec. 3422 (2004). In other words, there is a certain obligation that does not admit the exercise of discretion in its compliance. AMPR v. Srio. Educacion, E.L.A., 178 DPR

12

253 (2010); Baez Galib y otros v. C.E.E. II, 152 DPR 382 (2000) due to its privileged nature, the very law provides that the *mandamus* is not appropriate when there are adequate and efficient remedies available to the movant. Art. 651 of the Code of Civil Procedure, 32 LPRA sec. 3423 (2004). Also, as a general rule, prior to going to the court, the interested party must have appealed to the officer responsible of complying with the ministerial obligation demanded. AMPR v. Srio. Educacion, ELA, supra. The requirement to appeal is excused when doing so would have been useless or the duty that is claimed is public. That is, that it affects the general public and not just the movant of the action filed. Id.

On the other hand, we have acknowledged that, ordinarily, the *mandamus* is the right mechanism to accomplish the examination and to obtain copy of public documents. Ortiz v. Panel F.E.I, 155 DPR 219 (2001).

When handling a *mandamus* petition, the courts evaluate the possible impact of their decision in the implied public interests and try to avoid an inappropriate interference with the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

matters of the executive power.  <u>AMPR v. Srio. Educación, E.L.A.,</u> supra; <u>Báez Galib y otros v.</u>
<u>C.E.E. II</u>, supra; <u>Noriega v. Hernandez Colon</u>, supra.

The petitioners argue that the *mandamus* petition submitted in this case is defective for
two (2) reasons. First, they argue that the Senator, on a personal level, did not send a previous
request to the Governor. To that effect, they argue that the letter sent by the appellee requesting
copy of the document in question was sent only in his capacity as Senator. Also, they support the
dismissal of the *mandamus* petition arguing that the appellee did not exhaust the remedies
provided in the Regulation of the Senate of Puerto Rico, adopted through R. of S. 13 of January
9, 2017

13

(Regulation of the Senate) that establishes a procedure to request documents in the official
capacity through the Senate.

### i.    Request

The petitioners argue that the Senator did not send a request for production of the
document in his personal capacity. They hold that in the letter[12] sent to the Governor for that
purpose, dated May 2, 2017, the appellee appeared exclusively in his capacity as legislator. We
coincide with this opinion.

To begin, the document was drafted in official paper of the Senate of Puerto Rico, in
which the name of appellee appeared as Spokesperson of the Popular Democratic Party. At no

---

[12] Said letter reads as follows, in pertinent part:
"I have learned, that the past Sunday, April 30, 2017, your work team submitted to the Financial Oversight and
Management Board a Proposed Budget corresponding to the fiscal year 2017-2018, as required in the Federal Law
PROMESA, 48 U.S.C. §2101. Our Supreme Court has discussed extensively the matter of access to information and
has established clearly and unequivocally that the information in possession of the State is public and must be made
accessible to the citizenship in general. That is why that I request that you make public a copy of the Proposed
Budget and share a copy with this officer immediately.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                       CERTIFIED TRANSLATION

time in the letter did he suggest that his claim to the constitutional right to the access of the information was in another role that was not that of a public officer. Also, when examining the *mandamus* petition filed barely two (2) days after having sent that letter, we can corroborate that the arguments of the Senator as stated therein, were strictly geared in his official capacity. It is not until after that the motion to dismiss the case was filed, that the appellee amended its certiorari petition to insert references to his personal character for the first time.

On the other hand, it is not in controversy that the Senator, in his official capacity, sent a previous request to the Governor for the production of the document in question. Now, it is necessary to examine if in that capacity he was also obligated to comply with a previous procedure.

**ii.    Regulation of the Senate**

14

The petitioners center their argument against the viability of the writ of mandamus filed by the Senator in his capacity as legislator, for allegedly not using the remedies available in law to channel the claim through the Regulation of the Senate.

The investigative power of the Legislative Assembly is an integral component of its legislative duty. On the one part, this power serves as a valuable mechanism to carry out those necessary investigations for future legislation. Pueblo v. Perez Casillas, 117 DPR 380 (1986). Also, aside from promulgating laws, this Body has other duties that are vital and lead to enforce our democratic system of government. Among those, the supervision of the government, promote the debate of matters of general interest and keep the country informed of the public events, are highlighted. Rullan v. Fas Alzamora, *supra*; Silva v. Hernandez Agosto, 118 DPR 45 (1986); Pueblo v. Perez Casillas, *supra*; statement of motives of the Law no. 100 of June 23,

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                          CERTIFIED TRANSLATION

1955, as amended, 2 LPRA 151 (2009) (Law No. 100). This investigative process is commonly

made through different commissions or sub commissions of both bodies. Pueblo v. Perez

Casillas, *supra*; Silva v. Hernandez Agosto, *supra*.

The faculty of the Legislative Assembly to force the appearance of witnesses and the

production of documents appears in the Political Code. As part of the statutory process, it is

required that any summons to that effect be signed, be it by the President of the Senate, of the

House of Representatives or of the commission before which the witness must appear. Art. 31 of

the Law No. 100, 32 LPRA sec. 151(a).

In case of breach, the Legislative Assembly has the discretion to use, either the penal way

or the civil judicial process to demand compliance with what is provided in the subpoena.

Therefore, it is authorized to present the matter to the Secretary of Justice who will "have the

duty

15

to form the corresponding accusations before the Court of First Instance". Art. 34 of the Political

Code, 2 LPRA sec. 154 (2009). The filing of charges is not discretional. That is, if the statutory

requirements are met, the attorney general has the duty to begin a criminal procedure. Pueblo v.

Perez Casillas, supra. Also, it can go to court to demand compliance through a civil contempt

procedure. Art. 34-A of the Political Code, 2 LPRA sec. 154a (2009).

In accordance with the foregoing, and with the purpose of making viable these extensive

investigative faculties, the Regulation of the Senate was promoted whereby the mechanism

applicable for the formal issuance of subpoenas is implanted. Therefore, Rule 13 of the

Regulation of the Senate governs what is related to subpoenas that form part of procedures

before legislative commissions. In these cases, it is required that the subpoena has the signature

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                              CERTIFIED TRANSLATION

of the President of the Senate or the President of the corresponding commission. Rule 13, sec. 13.14 of the Regulation of the Senate.

On the other hand, Rule 18 of the Regulation of the Senate regulates the procedure regarding the Orders of the Senate. Among others, it defines the term "Order" as that measure used by the Body to form petitions of the Senate, and order studies or investigations. Rule 18, sec. 18.1(a) and sec. 18.1(d) of the Regulation of the Senate. In the event that a senator is interested in requesting information to any of the other Branches of the Government, its officers or employees, "in the name of the Senate", must submit a verbal or written petition before the Body to that effect, and if there is an objection, the petition will be taken to a vote. If, after complying with the corresponding procedures, the officer or employee concerned does not comply with the aforementioned requirement, the Senate can go to court to demand its compliance.  Rule 18, sec. 18.2 of the Regulation of the Senate.

16

As we can tell, the Regulation of the Senate has two (2) alternate methods for the senators to obtain documents through the regulation process. First, pursuant to Rule 13 of the Regulation the subpoena is authorized to produce documents as part of the duties to investigate, study or evaluate some legislative measure or matter under the consideration of a **commission** of the Legislative Body, prior authorization of the President of the Senate or of the senator presiding it. As the request in controversy in this case is not associated to any commission, this provision is not applicable.

Rule 18, sec. 18.2 of the Regulation of the Senate is also not applicable to the controversy before us. This provision provides the process to follow when some legislator wants to obtain information from officers of any of the Branches of Government through an Order in the name of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

the Senate. This method is highly effective inasmuch as it establishes a mechanism to compel the divulgation of the information required through the process of judicial contempt.

However, nothing prevents a senator, pursuant to his constitutional right to access to the information, to request public information directly from some officer or government entity. However, upon doing so, he cannot count with the benefit of the procedure to compel production of the information requested, as provided in the Regulation of the Senate. If he wants to enforce his request, the movant must do process the corresponding judicial mandate on his own.

Therefore, we reject the argument based in the alleged breach of the Senator with the provisions of the Regulation of the Senate.

In conclusion, the Senator could use the writ of mandamus to make his claim.

### D. Constitutional Right to Access Public Information

17

More than three decades ago already, in <u>Soto v. Srio. De Justicia</u>, 112 DPR 477 (1982) we acknowledged the right to press and of the citizens in general to have access to public information as a fundamental right of constitutional rank. This right is firmly related to the exercise of the rights of liberty of speech, press, association formally stated in Art. II, sec. 4 of the Constitution of Puerto Rico, LPRA, Tome I (2016). <u>Trans Ad. De P.R. v. Junta de Subastas</u>, 174 DPR 56 (2008); <u>Ortiz v. Dir. Adm. De los Tribunales</u>, 152 DPR 161 (2000).

The access to public information is a fundamental pillar in every democratic society. This knowledge allows the citizens to evaluate and supervise the public duty adequately and contribute to an effective participation of citizens in the governmental procedures that impact its social environment.  <u>Trans Ad de P.R. v. Junta de Subastas</u>, supra; <u>Colon Cabrera v. Caribbean</u>

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

Petroleum, 170 DPR 582 (2007). This adds to the transparency in the governmental duty and

promotes a healthy public administration. C.F. Ramos Hernandez, Acceso a la información,

transparencia y participación política, 85 Rev. Jur. UPR No. 4, page 1015 (2016).

We cannot forget that, in our political reality, the government as an entity, exists because

of the People it serves.

> Whatever is the definition that we assign to the term
> "democracy" its main principle is that the political power must
> reside in the people and that the governors exercise their duties for
> the people and by their mandate. The people governing itself
> would be bad if the people were not aware of what happened in the
> management of their matters.  E. Rivera Ramos, La libertad de
> información: necesidad de su reglamentación en Puerto Rico, 44
> Rev. Jur. UPR, Nos. 1-2, page 69 (1975).

Also, it is not possible to effectively exercise the rights protected under Art. II, Sec. 4 of

the Constitution of Puerto Rico, supra, if there is no record of the duties of those elected to

govern.

18

The premise is simple, if the People are not duly informed of the way in which the public

duty is performed, their liberty to express, through vote or otherwise their satisfaction or lack of

satisfaction with the persons, rules or procedures that govern them, will be impaired. Ortiz v. Dir.

Adm. De los Tribunales, supra, page 175.

Art 409 of the Code of Civil Procedure acknowledges the right of every citizen to inspect

and copy any public document of Puerto Rico. 32 LPRA sec. 1781 (2004). Now, the right to the

information does not operate by itself. It is necessary that the document that wants to be divulged

has in fact that public condition. Ortiz v. Dir. Adm. De los Tribunales, supra.

Our system defines the term "public document" as follows:

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                   CERTIFIED TRANSLATION

> [E]very document that is originated, conserved or received in any
> office of the Commonwealth of Puerto Rico pursuant to the law
> and related to the management of the public matters and that
> pursuant to what is provided in sec. 1002 of this title is kept […]
> permanently or temporarily as proof of the transactions or for its
> legal value. It includes those produced electronically that meet
> with the requirements established by laws and regulations. Art.
> 3(b) of Law No. 5 of December 8, 1955, Law of Administration of
> Public Documents of Puerto Rico, as amended, 3 LPRA sec.
> 1001(b) (2011).

Therefore, the right to information is not absolute and will be subject to those limitations that by imperious need, the State imposes. Ortiz v. Dir. Adm. De los Tribunales, supra. However, these restrictions must be duly justified because the access to the public information cannot be denied in a capricious and arbitrary way. Colon Cabrera v. Caribbean Petroleum, supra. And it is that due to its condition of fundamental right, to prevail, the restrictions imposed by the governmental apparatus must respond to an urgent interest of the State. Nieves v. Junta, 160 DPR 97 (2003); Noriega v. Gobernador, 130 DPR 919 (1992).

19

In our jurisdiction, there is no specific legislation to delimit the access of governmental documents to the public scrutiny.[13] Colon Cabrera v. Caribbean Petroleum, supra.  Now, through the controversies brought to our consideration to address this problem, we have been able to delineate the following instances in which the State is allowed to validly claim the confidentiality of information in its power. These are, when: (a) a law so declares; (2) the communication is protected by one of the evidentiary privileges that the citizens may invoke; (3) reveal the

---

[13] Different from our legal system, in the federal level, this matter has been regulated by statute and the evaluation of the requests of governmental information addressed to the different components of the Executive Branches is regulated by the provisions of the Freedom of Information Act (FOIA), 5 USCA sec. 552 (2007). This statute applies exclusively to the agencies of the Executive Branch of the Federal Government and does not apply to the Government of Puerto Rico. See 5 USCA sec. 551 (1)(C) (2007 y Supl. 2015) and 5 USCA sec. 552 (f)(1) (2007 y Supl 2015).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

information may injure the fundamental rights of third parties; (4) it deals with the identity of a

confidante and (5) it is 'official information" pursuant to Rule 514 of Evidence, 2009, 32 LPRA

Ap. VI (2010) (formerly Rule 31 of Evidence). <u>Colon Cabrera v. Caribbean Petroleum</u>, supra. It

is important to have in mind that the State has the burden to prove the application, if any, of the

exceptions numbered above to validate its claim to confidentiality. <u>Colon Cabrera v. Caribbean

Petroleum</u>, supra.

### E. Privilege of the Official Information-In General

A claim of confidentiality on the part of the government can prosper when it deals with

official privileged information, among others. <u>Colon Cabrera v. Caribbean Petroleum</u>, supra;

<u>Santiago v. Bobb y El Mundo, Inc.</u>, 117 DPR 153 (1986). Therefore, Rule 514 of Evidence,

supra, establishes in our system the privilege of official information.[14] Said provision defines

"official

20

information" as that acquired in confidence by a person that is an officer or public employee in

the carrying out of his duty that has not been officially revealed nor is accessible to the public

until the moment the privilege is invoked." Rule 514(a) of Evidence, supra. [15]

---

[14] In the absence of special legislation to regulate the privilege of official information in our jurisdiction, it is appropriate to use, as supplemental law in this matter, Rule 514 of Evidence, 32 LPRA Ap. VI (2010). E.L. Chiesa Aponte, Tratado de Derecho Probatorio, Republica Dominicana, Ed. Corripio (s. Year) T.I. pages 304-305, based in <u>Santiago v. Bobb y El Mundo</u>, Inc. 117 DPR 153 (1986). It should be noted that the mentioned Tratado de Derecho Probatorio of professor Chiesa Aponte analyses the reversed Rule 31 of Evidence of 1979, 32 LPRA Ap. IV, which is equal to and substantively identical to the current Rule 514 of Evidence, supra. See, also, E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, San Juan, Ed. Situm, 2016, page 164.

[15] To determine if some information was acquired in confidence the totality of the circumstances surrounding the communication, as its own nature" must be considered. Chiesa Aponte, Tratado de derecho probatorio, op. cit. page 307, quoting <u>Santiago v. Bobb y El Mundo, Inc.</u>, supra, page 162. For example in the context of an administrative entity, in <u>Lopez Vives v. Policia de P.R.</u>, 188 DPR 219, 233-234 (1987) we stated that, upon a claim of confidentiality on the part of the government, it must be examined, among other things, "the own nature and content of the document, and the effect of divulging it over interests of the State."

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                              CERTIFIED TRANSLATION

This privilege is activated "if the court concludes that the matter is official information and divulging it is forbidden by law, or divulging the information in the action would be prejudicial to the interests of the government."

'Rule 514(b) of Evidence, supra.[16]

Professor Chiesa Aponte, explains that:

> The privilege is based, on one hand, on the need that the government has to maintain confidentiality of certain information for the good progress of the government, particularly regarding the frank discussion of the governmental alternatives or possible courses of action to handle the multiple social problems, economic and otherwise-of the State […]". E.L. Chiesa Aponte, Tratado de derecho probatorio, Republica Dominicana, Ed. Corripio, [s. year], T.I., page 292.

Now, this privilege is not absolute, but qualified, subject to an analysis of balance of interests. Chiesa Aponte, Tratado de derecho probatorio, op. cit, page 292. Therefore, <u>upon evaluation, one has to weigh on the one hand, the need that the government keep certain sensitive information confidential and the prejudice that can invoke the government and on the other hand, the need of the party that requests the information and his right to obtain it.</u> E.L. Chiesa Aponte,

21

Reglas de Evidencia Comentadas, San Juan, Ed. Situm, 2016, page 164. Therefore, one can only speak of the privilege when "it deals with official information" and if the balance of interests is inclined in favor of confidentiality". Chiesa Aponte, Tratado de Derecho Probatorio, op. cit. page 307. <u>When claiming the confidentiality of official information, it is the government that has to prove in a precise and unequivocal manner the applicability of the privilege. Santiago v. Bobb y El Mundo, Inc</u>., supra.

---

[16] Now, to establish the privilege, it is not enough to demonstrate that divulging it would be prejudicial to the interests of the government we have to  "deal with the degree of prejudice in comparison with the prejudice suffered by the person or entity that requests the information if the divulgation is ordered." Chiesa Aponte, Tratado de derecho probatorio, op cit, page 308.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

As we previously explained, "[t]he high hierarchy of the constitutional right to information makes difficult the governmental claim of confidentiality, particularly in the absence of a regulatory statute." Chiesa Aponte, Tratado de Derecho Probatorio, op cit. page 304. See, also, Colon Cabrera v. Caribbean Petroleum, supra. In that line, given the lack of legislation that delimits the privilege, it "must be scrutinized with particular zealousness". Chiesa Aponte, Tratado de Derecho Probatorio, op cit. page 304, quoting Pena Clos v. Cartagena Ortiz, 114 DPR 576, 599 (1983). [17]

Therefore, upon a balance inclined against the privilege, the government-at its time- must have the obligation to "present evidence and show the existence of the compelling interest of greater hierarchy than the values protected by this right of freedom of information of the citizens." Chiesa Aponte, Tratado de Derecho Probatorio, op cit., page 308, quoting Noriega v. Gobernador, supra, page 938. In consideration of that, the government cannot invoke the privilege generally. Santiago v. Bobb y el Mundo, Inc. supra, see also, Chiesa Aponte, Tratado de Derecho probatorio, op it. Page 310.

22

In sum, the courts must be careful in lightly granting any request for confidentiality of the State". Santiago v. Bobb y El Mundo, Inc., supra, page 159.  When evaluating if the privilege should be granted, "[t]he alternatives of in camera examination or providing limited access to the confidential file are always available." Chiesa Aponte, Tratado de derecho probatorio, op. cit.,

---

[17] In the same way, "the statutes that restrict the right to access to governmental information are object of the strict judicial scrutiny and are interpreted restrictively". Chiesa Aponte, Tratado de Derecho Probatorio op. cit., page 305. See, also, Soto v. Srio. De Justicia, 112 DPR 477 (1982).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                                CERTIFIED TRANSLATION

page 310[18]. Now, as we will discuss later on, the option of in camera examination can be limited in consideration to the circumstances present in each case.

**F.  Privilege of Official Information-The decisional information in the Deliberative Procedures of Public Policy**

Among the fundamental categories of privileged official information is the one used by public officers during the deliberative procedures related to the development of public policy. Chiesa Aponte, Tratado de derecho probatorio, op. cit., pages 292-293. [19] This category of the privilege of official information seeks to "promote the most frank communication between governmental officers in charge of deciding and enforcing the public policy of the State". Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., page 293 [20]. Pursuant to the foregoing, we believe

23

that professor Chiesa refers to the deliberative process privilege. See 6 Moore's Federal Practice Sec. 26.52[5] (3rd ed. 2016) and 26 A Wright & Graham, Federal Practice and Procedure: Evidence Sec. 5680 (1992).

---

[18] When we are before a claim of privilege regarding official information, "the skepticism regarding the intervention and judicial revision that is advised regarding the (privilege over) the secrets of state {…}" does not apply. Chiesa Aponte, Tratado de derecho probatorio, op. cit., page 295.  Note that the secrets of state are a high rank privilege in consideration of the aspects of natural security, which includes military secrets. Chiesa Aponte, Tratado de derecho probatorio, op. cit., page 288. Therefore, in case of state secrets, the privilege could be acknowledged without need for an in camera examination. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit, pages 289-290, discussing the case of United States v. Reynolds, 345 US 1 (1953).

[19] Note that, prior to this case, we had not had the opportunity to express ourselves in this category, acknowledged in the federal arena. However, we will discuss it inasmuch as it illustrates us regarding its applicability in relation to the privilege of official information discussed before.

[20] In United States, this privilege is regulated by the fifth exception of the FOIA, which expressly protects communications (letters and memorandums) within an agency, as well as between agencies of government. 5 USCA sec. 552(b)(5) (2007). See Chiesa Aponte, Tratado de derecho probatorio, op. cit. Page 293, and 26A Wright and Graham, Federal Practice and Procedure: Evidence Sec. 5680 (1992).

Also, it should be noted that the privilege **has extended through case law to protect budget requests of an agency**. Wright & Graham, supra, page 133.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

This privilege prevents the quality of the governmental decisions and the consulting duties of the agencies from being affected. P.F. Rothstein and S.W. Crump, Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases, 2nd ed., West, 2012, Sec. 5:3, pages 431-432. In that line, it has been acknowledged that "[…] a substantial public interest exists in maintaining and ensuring full, frank, open exchanges of ideas between members of the agency and other advisors and the decision maker". Rothstein and Crump, op. cit, page 433. Also, upon restricting the access to this type of communications protects "against **premature disclosure** of proposed policies and decisions before they have been finally formulated or adopted." (Emphasis provided). Rothstein and Crump, op. cit., page 436.

To benefit from the deliberative process privilege, the government must comply with the following process: (1) the head of the agency that controls the information must claim it formally, after pondering it; (2) an officer from the agency must provide the precise reasons why the confidentiality of the documents is claimed, and (3) the government must identify and describe the information or the documents that it wants to protect.  Moore's Federal Practice, supra, page 26-412.10(1). See also, United States v. Reynolds, 345 US 1 (1953).

Also, for the privilege to be activated, the government must show that the document in question is "deliberative" and "pre-decisional". Moore's Federal Practice, supra, page 26-412.8. An information is deliberative inasmuch as it relates to a process in which the public policy is

24

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

developed or formulated. Moore's Federal Practice, supra, page 26-412.9. A pre-decisional document is when it is prepared to assist in the taking of decisions of the government, that is, prior to taking them. Moore's Federal Practice, supra, pages 26-412.8 and 26-412.9[21]

Pursuant to the foregoing, this privilege does not cover what is related to factual matters. [22] Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., page 293. Also it does not protect objective material or documents in which the agency adopts its position on a matter or controversy. Moore's Federal Practice, supra, pages 26-412.6 and 26-412.7. For example, this privilege does not include "advisory opinions, recommendations, and communications relating to policy formulations". Moore's Federal Practice, supra, page 26-412.8.

**To determine if this privilege prevails, as the privilege of official information, the court must make an analysis of balance of interests**. Chiesa Aponte, Tratado d Derecho Probatorio, op. cit., page 293. Among the factors that the court must consider when pondering the balance of interests, are: "[…] the interests of the private litigant, the need for accurate judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigation and issues involved, and the impact on the effectiveness of government employees". Moore's Federal Practice, supra, 2012, page 26-412.11. Also, the impact that the divulgation in the process of frankly discussing the policies and decisions in question must be evaluated. <u>F.T.C.</u>

---

[21] To determine if a document is pre-decisional, you can take into account the purpose of the consulting and the effect that the divulgation could cause on the discussions and the taking of decisions within or between the concerned agency (ies), that is, "[…] the purpose of the advice and whether disclosure of the communication would be the type that is likely to chill intra-and inter-agency discussion and decision-making". 6 Moore's Federal Practice Sec. 26. 52[5], page 26-412.9 (3rd ed. 2016)

[22] In various federal forums it has been determined that the factual matters may be covered by the referenced privilege inasmuch as they are interwoven with decisional procedures or protected deliberative materials. Moore's Federal Practice, supra page 26-412.7 esc. 24.2.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

v. Warner Commun. Inc., 742 F. 2d 1156 (9th Cir. 1984). In sum, this privilege can budge when it is fully demonstrated that there is a particularized need to obtain the information which is of greater weight than the reasons for confidentiality.  Moore's Federal Practice, supra, page 26-412.11.

The courts must be flexible at the moment of evaluating this privilege to then ensure the protection of the deliberation process. Moore's Federal Practice, supra, 2016, page 26-412.10. However, our evidentiary system demands a restrictive interpretation when determining the existence of a privilege. Rule 518 of Evidence, 32 LPRA Ap. VI (2010). [23]

### G.  Executive Privilege

The executive privilege was acknowledged in our system in Pena Clos v. Cartagena Ortiz, supra, derived from the Constitution of Puerto Rico. Art. I, Sec. 2 and Art. IV, Secs. 1 and 4, Const. PR, LPRA, Tome 1 (2016). [24]

This privilege seeks to protect the communications between the First Executive and his respective subordinates, counselors or assistants. Chiesa Aponte, Reglas de Evidencia Comentadas, op. cit. page 165, J.J. Alvarez Gonzalez, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogota, Ed. Temis, 2009, page 363; Chiesa Aponte, Tratado de derecho probatorio, op. Cit. Page 311.

In comparison with the privilege of state secrets, the executive privilege is of lesser hierarchy. Chiesa Aponte, Reglas de Evidencia Comentadas, op. cit., page 165. This last one is

---

[23] This restrictive interpretation does not apply to the privileges of constitutional rank established in Rule 501, 502 and 512 of Evidence, 32 LPRA Ap. VI (2010).
[24] Therefore, the privilege was not adopted as corollary of the principle of separation of powers. Chiesa Aponte, Reglas de Evidencia Comentadas, op. cit. page 165, when discussing the case of Pena Clos v. Cartagena Ortiz, 114 DPR 576 (1983) See, also, J.J,. Alvarez Gonzalez, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogota, Ed. Temis, 2009, page 363.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                               CERTIFIED TRANSLATION

qualified, therefore it does not give the Executive Branch an absolute faculty of "retaining information over

26

the basis of its alleged confidentiality" <u>Pena Clos v. Cartagena Ortiz</u>, supra, page 598. See Wright & Graham, supra, page 52. Therefore we must reiterate that "a naked allegation of public privilege, without support in adequate legislation must be scrutinized zealously." <u>Pena Clos v. Cartagena Ortiz</u>, supra, page 599.

Therefore, "at the end, the Judicial Branch also has to precise the frontiers of that [privilege]". <u>Pena Clos v. Cartagena Ortiz</u>, supra, page 598. Also, see, <u>United States v. Nixon</u>, 418 US 683 (1974) and Chiesa Aponte, Tratado de Derecho Probatorio, op. Cit. Page 312. For that, as we stated, the "method to weigh the conflicting interests" has been used. <u>Pena Clos v. Cartagena Ortiz</u>, supra, page 598. See, also, <u>United States v. Nixon</u>, supra.

**H. In Camera Examination**

For its illustration value, we must discuss the federal case law based on the Freedom of Information Act (FOIA), 5 USCA sec. 552 (2007) as to the need for an in camera examination. Let's see.

Despite that the FOIA, 5 USCA 552 (a)(4)(B) (2007), allows the review of documents in chambers, the federal forums have stated in reiterated occasions that this alternative is unfavorable in cases where certain governmental privileges are claimed. See, for example, <u>Smith v. US</u> Marshals Serv., 517 Fed. Appx. 542 (9th Cir. 2013); <u>Lion Raisins v. US Dept. of Agriculture</u>, 354 F. 3d 1072 (9th Cir. 2004) revoked in part in others by <u>Animal Legal Def. Fund v. US Food & Drug Admin.</u>, 836 F. 3d 987 (9th Cir. 2016); <u>Turner v. US Dept. of the Treasury</u>

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                    CERTIFIED TRANSLATION

No. 15-cv000007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); <u>Truthout v. Dept. of Justice</u>,

20 F. Supp 3d 760 (E.D.

27

Cal. 2014), aff'd, 667 F Appx 637 (9th Cir. 2016).[25] Also, it should not be the first

alternative, as the State, initially must be given an opportunity to justify and demonstrate its

claim of confidentiality. <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, supra; <u>Conservation Force v.

Jewell</u>, 66 F. Supp. 3d 46 (DDC 2014), aff'd, No. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015);

<u>Truthout v. Dept. of Justice</u>, supra. This can be accomplished allowing the State to present a

detailed explanation of the privilege claimed, which may substitute the in camera examination of

the document in dispute. <u>Solers, Inc. v. Internal Revenue Serv</u>., 827 F. 3d 323 (4th Cir. 2016);

<u>Hamdan v. U.S. Dept. of Justice</u>, 797 F 3d 759 (9th Cir. 2015); <u>Ethyl Corp. v. U.S. E.P.A</u>., 25 F

3d 1241 (4th Cir. 1994). In other words, the court may rest in the supplemental evidence to

determine if the privileged claimed by the State is appropriate. <u>Lane v. Dept. of Interior</u>, 523 F.

3d 1128 (9th Cir. 2008); <u>Lion Raising v. U.S. Dept. of Agriculture</u>, supra. If determining, in this

stage, that the privilege is appropriate, the in camera examination will not be required.  <u>Lewis v.

I.R.S</u>. 823 F. 2d 375 (9th Cir. 1987).

For purposes of this case, we find it very revealing and pertinent what is stated in the

legislative history of one of the amendments of the FOIA regarding the examination of

documents in camera. As stated:

---

[25] See also, <u>Lane v. Dept. of Interior</u>, 523 F 3d 1128 (9th Cir. 2008); <u>Schell v. US Dept. of Health & Human
Services</u>, 843 F 2d 933 (6th Cir. 1988); <u>Mead Data Cent. Inc. v. US Dept. of Air Force</u>, 566 F d 242 (D.C. Cir. 1977)
and 33 Wright & Koch, Federal Practice and Procedure; Judicial Review Sec. 8440, page 524

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. **Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure**. The burden remains on the Government under this law. (Emphasis provided. S.

28

Rep. No. 93-1200 page 9 (1974) reprinted in 1974 USCCAN 6285, 6287-88. See also, Lewis v. I.R.S., supra, page 378 esc. 4.

In sum, in some particular cases, the in camera examination can be unnecessary. See: Hamdan v. U.S. Dept. of Justice, supra; Aids Healthcare Foundation v. Leavitt, 256 Fed. Appx. 954 (9th Cir. 2007); Lion Raisins v. U.S. Dept. of Agriculture, supra; Vaughn v. Rosen, 484 F. 2d 820 (D.C. Cir. 1973); Turner v. U.S. Dept. of the Treasury, supra. In particular in the case of Lion Raisins v. U.S. Dept. of Agriculture, supra, it was determined that as there was no controversy as to the type of information in the document in question, the in camera inspection would be a futile exercise. [26]

Now, when the file and the supplemental evidence of the State does not satisfactorily justify the governmental privilege, then the court can examine the documents in dispute in camera. Islamic Shura Council of Southern California v. F.B.I., 635 3rd 1160 (9th Cir. 2011); Lane v. Dept. of Interior, supra. See, also, 33 Wright & Koch, Federal Practice and Procedure: Judicial Review Sec. 8440, page 524 (2006). [27]

III.

---

[26] See, Harvey's Wagon Wheel, Inc. v. N.L.R.B., 550 F. 2d 1139 (9th Cir. 1976).
[27] We should not lose sight that even if cautionary measures are taken the in camera examination involves certain risks to the confidentiality of the information. 33 Wright & Kosh, Federal Practice and Procedure: Judicial Review Sec. 8440, page 524 (2006).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

In this case, the lower court determined that to evaluate if the document in dispute is of public nature and if it is protected by a privilege an in camera examination of it had to be made.[28] In the writ of certiorari before us, the Government alleged that the in camera examination of a

29

work document constitutes an inappropriate interference with the procedures and duties of the Executive Branch. [29] In particular, it was argued that governmental privileges exist that protect the confidentiality of documents related to the exercise of the prerogatives and duties of the Governor, to wit: the executive privilege and the deliberative procedures privilege.

In that line, the petitioners argued that the proposed budget in dispute "constitutes an interagency communication produced during the course of a deliberative process and of budget public policy formulation of such officer."(Referring to the Governor)[30] On the other hand, the Senator claimed that he has the constitutional right to access of public information.

Based on the foregoing, we conclude that, in the present case there is a genuine and justiciable controversy of law between the parties. As it is a matter of great public interest that interposes constitutional rights of members of the other two Branches of Government, it is necessary to intervene in this moment to consider the need to examine the document in question a priori in camera, as ordered by the lower court. [31]

---

[28] See pages 2-3 of the Order of July 26, 2017 issued by the Court of First Instance.
[29] Certiorari Petition, page 23.
[30] Certiorari Petition, page 24. The petitioners objected also to the presentation of the document in controversy before the Court of First Instance for in camera examination. See page 19 of the Certiorari Petition (In this case the lower court clearly abused its discretion when agreeing to resolve Senator Bhatia Gautier's claim on the merits, ordering the First Executive to provide the document in dispute, in a sealed envelope, to inspect it in camera and determine if it is confidential").
[31] As stated above, the usefulness of the inspection in camera has been acknowledged on multiple occasions as a supplemental vehicle to resolve conflicts regarding claims of privilege.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                          CERTIFIED TRANSLATION

The in camera examination could be the vehicle to use in the adequate context. See, Santiago v. Bobb y El Mundo, Inc., supra. Now, as we are dealing with a controversy of law and due to the type of document in question, we believe that, in the present case, an in camera examination of it **at this time** would not assist to the analysis of the balance of interests. It is sufficient to examine **final** proposed budget to know what the document in dispute consists of.

                                                                                          30

Therefore, we ask ourselves, what exactly is it that could be found upon inspecting the document in question with the purpose of making a decision in the case? We cannot think how this can be relevant to the real controversy in the case, to wit: if the State can meet its evidentiary burden to support the privileges claimed. Of course, prior to that it should be determined if the document in question is effectively of a public nature.

In order to make a decision, in the balance of interests, as to whether or not there is a privilege in this case, the parties must **first**, put the court in a position as to what the interests in conflict are. Afterwards, if important reasons emerge, and the court understands that the examination of the document in question is essential to its analysis, then the lower court can request the document for an in camera examination. Not before.

We must remember that in this case, the State claimed some governmental privileges based in the alleged confidentiality of the document in dispute. Among these it alleged the executive privilege, which has a constitutional foundation. In light of a claim of a privilege of this nature, the courts must be very careful in the management of the information in controversy. So much so, that the production of the document for in camera examination must not be ordered unless it is **strictly necessary**.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                       CERTIFIED TRANSLATION

Consequently, we are of the opinion that, in this case, the lower court correctly denied the motion to dismiss filed by the Government but should have initially ordered the parties to submit their respective memorandums of law so they could put it in a position to determine if the document is of a public nature and if so, if the alleged privileges are appropriate. [32] Only then, and in

31

consideration of the balance of the interests implied could the lower court determine if the alleged privileges are appropriate.

On the contrary, the lower court ordered the production of the document in question for in camera examination, before determining if it was of a public nature and resolving if the confidentiality of the document itself is protected by any of the alleged privileges. It abused its discretion in doing so.

Therefore, we conclude that the Court of Appeals erred when refusing to issue the writ that was filed, as well as the lower court when ordering the production of the document in question, for in camera examination **at the stage it did it**, without having the specific justifications of the State to refuse to divulge it.

IV.

Pursuant to what was stated above, without further proceeding, and pursuant to Rule 50 of the Regulation of this Court, supra, the writ of certiorari requested is issued and we partly reverse the Order of July 26, 2017, issued by the Court of First Instance regarding the production of the document in controversy for in camera examination. Aside from this, such Order is

---

[32] It should be mentioned, that through its Order of July 26, 2017, the Court of First Instance not only ordered the Government to produce "the Proposed Budget presented to the Board on April 30, 2017 for an in camera examination" but also to "**file a motion explaining <u>in detail</u> the reasons why the information requested, or part of it, qualifies for the application of the privilege invoked**."(Emphasis in the original). See Order of July 26, 2017, page 3.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                              CERTIFIED TRANSLATION

confirmed in the other matters that are not incompatible with what is stated herein. The stay

ordered is lifted and the case is returned to the lower court so the proceedings can resume

pursuant to what is stated in this Opinion.

      Judgment will be entered accordingly.


                  ROBERTO FELIBERTI CINTRON
                     Associate Judge


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                                CERTIFIED TRANSLATION


### IN THE SUPREME COURT OF PUERTO RICO



|  |  |  |
|---|---|---|
| Hon. Eduardo Bhatia Gautier, as spokesperson of the Popular Democratic Party of the Senate of Puerto Rico | **CC-2017-668** | *Certiorari* |
| Appellee | | |
| Vs. | | |
| Hon. Ricardo Rossello Nevares, as Governor of Puerto Rico; Commonwealth of Puerto Rico | | |
| Petitioners | | |


### JUDGMENT

In San Juan, Puerto Rico, on September 15, 2017.

For the grounds stated in the above Opinion, which is fully incorporated into this Judgment, without further proceeding pursuant to Rule 50 of the Regulation of this Court, 4 LPRA Ap. XXI-B (2012), the writ of certiorari requested is issued and the Order of July 26, 2017 issued by the Court of First Instance as to the production of the document in controversy for the in camera examination is reversed in part. Aside from this, such Order is confirmed in all other matters not incompatible with what is stated in the Opinion. The stay order is lifted and the case is returned to the lower court for the proceedings to resume in accordance to what is stated in the Opinion.

Immediately notify by telephone, fax or e-mail and subsequently by regular mail.

In agreement by the Court and certified by the Acting Secretary of the Supreme Court. The Associate Judge Mr. Kolthoff Caraballo issued an Opinion in Conformity. The President Judge Oronoz Rodriguez, the Associate Judge Mrs. Rodriguez Rodriguez, the Associate Judge Mr. Estrella Martinez and the Associate Judge Colon Perez issued Dissident Opinions.

Sonnya Isabel Ramos Zeno

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CC-2017-668                                            CERTIFIED TRANSLATION

Acting Secretary of the Supreme Court

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

## IN THE SUPREME COURT OF PUERTO RICO



Hon. Eduardo Bhatia Gautier, as
spokesperson of the Popular
Democratic Party of the Senate
of Puerto Rico

      Appellee

      Vs.

Hon. Ricardo Rossello Nevares,
as Governor of Puerto Rico;
Commonwealth of Puerto Rico

Petitioners

CC-2017-668

Certiorari

Opinion in conformity issued by the Associate Judge Mr. Kolthoff Caraballo.

In San Juan, Puerto Rico, on September 15, 2017.

### I.

From the case file the fact is clear that the document in controversy constitutes a **draft**. That is, a document that is not final, because there still exists the possibility that it is modified **prior to being notified to its recipient.** Appellee insists on arguing that the mentioned document is not a draft, but a proposed budget or a proposal addressed to the Financial Oversight and Management Board of Puerto Rico (Financial Oversight Board). Whatever the document is called, there exists no

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.