**Hearing Date:** June 6, 2018 at 9:30 a.m. (ET) / (AST)
**Objection Deadline:** April 9, 2018 at 4:00 p.m. (ET) / (AST)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------x
:
*In re:*                                                      :     PROMESA
                                                              :     Title III
**THE FINANCIAL OVERSIGHT AND**                               :
**MANAGEMENT BOARD FOR**                                      :
**PUERTO RICO,**                                              :     Case No. 17 BK 3283 (LTS)
                                                              :
    as representative of                  :     Jointly Administered
                                                              :
**THE COMMONWEALTH OF**                                       :
**PUERTO RICO, et al.,**                                      :
                                                              :
    Debtors[1].                           :
                                                              :
---------------------------------------------------------x

### SECOND INTERIM APPLICATION OF ZOLFO COOPER, LLC, FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE <u>PERIOD FROM OCTOBER 1, 2017 THROUGH JANUARY 31, 2018</u>

| | |
|---|---|
| Name of Applicant: | Zolfo Cooper, LLC |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico |
| Date of Retention: | *Nunc Pro Tunc* to June 27, 2017 |
| Period for Which Compensation and Reimbursement is Sought: | October 1, 2017 through January 31, 2018 |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283 LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284 LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567 LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566 LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| Amount of Interim Compensation Sought as Actual, Reasonable, and Necessary: | $1,965,880.50[2] |
| Amount of Interim Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $9,725.67 |
| Are your fee or expense totals different from the sum of previously-served monthly statements? | Yes[3] |
| Blended hourly rate in this application for all professionals: | $600.58[4] |

This is an *interim* application.

Number of professionals with time included in this application: 17

Are any timekeeper's hourly rates higher than those charged and approved upon retention: Yes[5]

---

[2] While ZC is seeking allowance of all its fees incurred during the Application Period, it is only seeking payment of 80% of the fees, namely $1,572,704.40. ZC reserves its rights to seek relief from the court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.
[3] In accordance with the fee examiner's expense guidelines, ZC has subsequently reduced its photocopying expense by $0.30. ZC is seeking allowance of $9,725.67 in expenses for the Application Period.
[4] ZC's blended hourly rate for the amounts sought to be paid hereunder is $480.46.
[5] As stated in Zolfo Cooper's engagement letter, Zolfo Cooper reviews its standard hourly rates semi-annually. Effective January 1, 2018, Zolfo Cooper revised its standard hourly rates. ZC provided notice of the rate change to members of the Unsecured Creditors' Committee.

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| **First Interim Fee Period (June 27, 2017 through September 30, 2017)** | | | | | | |
| 9/27/17 | 6/27/17 - 7/31/17 | $854,002.20 | $9,009.70 | $854,002.20 | $9,009.70 | $213,500.55 |
| 10/20/17 | 8/1/17- 8/31/17 | $787,880.80 | $26,379.03 | $787,880.80 | $26,379.03 | $196,970.20 |
| 12/5/17 | 9/1/17 - 9/30/17 | $471,130.40 | $2,983.96 | $471,130.40 | $2,983.96 | $117,782.60 |
| **Total** | | **$2,113,013.40** | **$38,372.69** | **$2,113,013.40** | **$38,372.69** | **$528,253.35** |
| | | | | | | |
| **Second Interim Fee Period (October 1, 2017 through January 31, 2018)** | | | | | | |
| 12/5/17 | 10/1/17 - 10/31/17 | $356,697.60 | $940.40[6] | $356,697.60 | $940.70 | $89,174.40 |
| 1/10/18 | 11/1/17 - 11/30/17 | $423,968.80 | $1,251.36 | $0.00 | $0.00 | $105,992.20 |
| 2/15/18 | 12/1/17 - 12/31/17 | $296,904.80 | $1,900.18 | $0.00 | $0.00 | $74,226.20 |
| 3/16/18 | 1/1/18 - 1/31/18 | $495,133.20 | $5,633.73 | $0.00 | $0.00 | $123,783.30 |
| **Total** | | **$1,572,704.40** | **$9,725.67** | **$356,697.60** | **$940.70** | **$393,176.10** |

## PRIOR INTERIM FEE APPLICATIONS

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 12/15/17 Docket No. 2041 | 6/27/17 - 9/30/17 | $2,641,266.75 | $38,372.69 | Docket No. 2685 | Allowed: $2,640,069.95  Paid: $2,113,013.40  Authorized to be paid: $2,111,816.60[7] | Allowed: $35,948.30  Paid: $38,372.69  Authorized to be paid: $35,948.30[8] |

---

[6] Zolfo Cooper will credit the $0.30 in excess of the fee examiner's expense guidelines for photocopying expenses against expense amounts payable under ZC's February 2018 monthly fee statement.

[7] Zolfo Cooper will credit the difference of $1,196.80 against the amounts payable under the February 2018 fee statement.

[8] Zolfo Cooper will credit the difference of $2,424.39 against the amounts payable under the February 2018 fee statement.

**Hearing Date:** April 25, 2018 at 9:30 a.m. (ET) / (AST)
**Objection Deadline:** April 9, 2018 at 4:00 p.m. (ET) / (AST)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------x
:
*In re:* : PROMESA
: TITLE III
THE FINANCIAL OVERSIGHT AND :
MANAGEMENT BOARD FOR :
PUERTO RICO, : Case No. 17-BK-3283 (LTS)
:
    as representative of : Jointly Administered
:
THE COMMONWEALTH OF :
PUERTO RICO, et al., :
:
    Debtors.[1] :
:
---------------------------------------------------------x

### SECOND INTERIM APPLICATION OF ZOLFO COOPER, LLC, FINANCIAL ADVISOR TO THE OFFICAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2017 THROUGH JANUARY 31, 2018

Zolfo Cooper, LLC ("ZC" or the "Firm"), as financial advisor to the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Creditors' Committee" or the "Committee"), hereby submits its second interim application for compensation and reimbursement of expenses (the "Application"), pursuant to sections 316 and 317 of the *Puerto Rico Oversight, Management, and Economic Stability Act* of 2016 ("PROMESA"),[2] section 503(b) of title 11, United States Code (the "Bankruptcy Code") as

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

[2] References to PROMESA are references to 48 U.S.C. §§ 2101 *et. seq.*

made applicable to these cases by section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules") for the interim allowance of compensation for professional services performed by ZC for the period from October 1, 2017 through and including January 31, 2018 (the "Application Period") and for reimbursement of its actual and necessary expenses incurred during the Application Period. In support thereof, ZC respectfully represents as follows:

## I.   PRELIMINARY STATEMENT

1.  ZC, as financial advisor to the Committee, has worked diligently with the Committee to advise them on a host of critical issues attendant to these Title III cases. Among other things, ZC has been integrally involved in:

   (a)  Analyzing the certified fiscal plan for Puerto Rico ("Commonwealth Certified Fiscal Plan") and the revised draft fiscal plan dated January 24, 2018 ("Revised Draft January 2018 Fiscal Plan") and the underlying supporting schedules, as well as the certified and revised draft fiscal plans of certain of the Commonwealth's instrumentalities, with particular emphasis on key components and any ad hoc Committee requests;

   (b)  Performing various analyses around the Commonwealth's debt position and capacity, as well as reviewing and presenting commentary on historical and current debt restructuring proposals;

   (c)  Utilizing the comparables analysis that ZC prepared in order to put into context the values in the Commonwealth Certified Fiscal Plan and now the Revised Draft January 2018 Fiscal Plan to help inform whether certain elements of the Commonwealth's fiscal plan are reasonable;

   (d)  Assisting Paul Hastings in analysis integral to prosecuting the Commonwealth-COFINA Dispute (on behalf of the Committee, as the Commonwealth Agent) regarding the ownership of billions of dollars in sales and use tax revenues;

   (e)  Participating in the mediation process; and

   (f)  Supporting the Financial Oversight and Management Board for Puerto Rico's ("Oversight Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority's ("AAFAF") efforts to ensure the

2

expeditious receipt of Federal disaster relief funds, while also consensually resolving the Committee's concerns to protect the Commonwealth in the event of the deobligation of such funds.

2. ZC has performed these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by ZC was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task.[3]

3. In sum, ZC respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these title III cases, ZC's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, ZC respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

4. This Application is consistent with the Interim Compensation Order (as defined below) and Local Rule 2016-1, except that, in accordance with the instructions of the Fee Examiner appointed in these cases, no budgets were prepared with respect to the Application

---

[3] As noted, ZC has agreed to reduce its total fees by an amount equal to 20% of the overall case fees (with the precise fees to be waived to attain the 20% reduction to be designated by ZC (in its sole discretion) in connection with the final fee application process). For the avoidance of doubt, ZC seeks allowance of $1,965,880.50 (i.e., 100% of fees for services rendered during the Application Period), but payment of only $1,572,704.40, reflecting 80% of the fees for services rendered, plus 100% of the expenses allowed pursuant to the Interim Compensation Order in the amount of $9,725.67 during the Application Period (to the extent such amounts have not been paid before the hearing scheduled on this Application).

3

Period.[4]  To the extent necessary, ZC requests a waiver for cause shown of any such requirement not met by this Application.[5]

5. In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits:

- Exhibit A contains a summary of ZC's timekeepers included in this Application.

- Exhibit B contains a summary of the compensation requested by project category and matter number.

- Exhibit C contains detailed time descriptions by matter category.[6]

- Exhibit D contains a summary of expenses incurred during the Application Period.

- Exhibit E contains a detailed listing of expenses incurred during the Application Period.

## II. BACKGROUND

6. On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "Commonwealth Title III Case"). Thereafter, the Oversight Board commenced a Title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS Title III Case"), the Puerto Rico Highways and Transportation Authority ("HTA Title III Case"), and the Puerto Rico Electric Power Authority ("PREPA Title III Case") (and together with the Commonwealth Title III Case,

---

[4] ZC commenced preparing monthly budgets effective with the month of March 2018.

[5] The Committee and ZC reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

[6] Due to confidentiality restrictions, ZC cannot publicly disclose the substance of the issues addressed in mediation. Moreover, at the request of the mediation team, ZC has redacted all references to specific mediation issues in its time descriptions attached to this Application.

4

the "Title III Cases").[7] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

7. On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On June 27, 2017, the Committee selected Zolfo Cooper as financial advisor to the Committee.

8. On July 11, 2017, the Committee filed the Application of The Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico for Entry of Order Authorizing Employment and Retention of Zolfo Cooper, LLC as Financial Advisor, Effective as of June 27, 2017 [Docket No. 615] (the "Retention Application").

9. On August 10, 2017, the Court entered the Order Authorizing Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico to Employ and Retain Zolfo Cooper, LLC as Financial Advisor, Effective as of June 27, 2017 [Docket No. 1001] (the "Retention Order").

10. On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the "Interim Compensation Order").[8]

11. On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. ZC's retention extends to the representation of the Committee as the

---

[7] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

[8] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

5

official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

12. The Retention Order authorized ZC to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "[p]ursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Zolfo Cooper under this Order shall be an administrative expense." In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of ZC's fees and expenses sought to be paid hereunder.

13. ZC has agreed to reduce its fees by an amount equal to 20% of the total fees sought to be paid in connection with ZC's final fee application, with the precise fees to be waived to attain the 20% reduction to be designated by ZC (in its sole discretion) in connection with the final fee application process. For that reason, ZC is only seeking payment of 80% of its unpaid fees (to the extent such amount has not been paid before the hearing scheduled on this Application), but allowance of 100% of its fees.

14. On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* (the "Fee Examiner Order") [Docket No. 1416]. The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

15. This is ZC's second interim fee application, covering the period from October 1, 2017 through January 31, 2018. All services for which compensation is requested were performed for or on behalf of the Committee.

6

### III.    JURISDICTION AND VENUE

16.    This Court has jurisdiction over this matter pursuant to section 306(a) of PROMESA.  Venue is proper in this Court pursuant to section 307(a) of PROMESA.

### IV.    BILLING PRACTICES

17.    ZC hereby seeks compensation in accordance with its customary practices and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, Local Rules, Interim Compensation Order, and U.S. Trustee Guidelines.

18.    ZC charges for its professional services based on actual hours expended to perform its services at standard hourly rates established for each employee, which hourly rates are subject to adjustment semi-annually. It is the customary practice of the Firm to bill clients for travel time consistent with the guidelines of the jurisdiction. Therefore, ZC has applied a 50% discount rate to non-working travel time billed. ZC records time entries in six-minute increments. ZC's fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of this case. ZC does not include support services in the Firm's overhead for the purpose of establishing billing rates. Billing rates are generally representative of prevailing market rates, as awarded by other courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements.

19.    ZC charges for reasonably incurred, out-of-pocket expenses, including, but not limited to, costs of reproduction at the lesser of $0.10 per page or cost and other direct expenses. Except in certain instances which may be listed in the expense detail attached hereto, all expenses are billed at actual cost, exclusive of amortization of the cost of any investment, equipment or capital outlay.

7

20. ZC maintains contemporaneous records of the time expended and out-of-pocket expenses incurred in support of its billings for services.

### V. COMPENSATION AND REIMBURSEMENT REQUEST

21. By this application ZC seeks interim allowance of compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $1,965,880.50[9] and expense reimbursements in the aggregate amount of $9,725.67. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $1,673,956.00 | $9,725.67 | $1,683,681.67 |
| PREPA Title III Case | 168,374.50 | - | 168,374.50 |
| HTA Title III Case | 100,761.00 | - | 100,761.00 |
| ERS Title III Case | 22,789.00 | - | 22,789.00 |
| **Total** | **$1,965,880.50** | **$9,725.67** | **$1,975,606.17** |

22. The Committee has approved the amounts requested by ZC for services performed and expenses incurred in each of the monthly fee statements for the periods of (i) October 1, 2017 through October 31, 2017, (ii) November 1, 2017 through November 30, 2017, (iii) December 1, 2017 through December 31, 2017, and (iv) January 1, 2018 through January 31, 2018 ("Monthly Fee Statements") submitted to, among others, the Oversight Board, AAFAF, the Fee Examiner and the U.S. Trustee during the Application Period.

23. As of the date of filing this Application and in accordance with the Interim Compensation Order, ZC has received payments totaling $357,638.30 for services rendered

---

[9] For the avoidance of doubt, while ZC has agreed to reduce its fees by an amount equal to 20% of the total fees sought to be paid in connection with ZC's final fee application, the precise fees to be waived to attain the 20% reduction to be designated by ZC (in its sole discretion) in connection with the final fee application process.

8

during the Application Period, which consists of $356,697.60 (representing 80% of the $445,872.00 in total fees incurred for the month of October 2017) and $940.70[10] (representing 100% of expenses invoiced during the month of October 2017). ZC has not yet received payment for (a) its fee statement for the month of November 2017 requesting payment of $423,968.80 in professional fees (representing 80% of the $529,961.00 in total fees incurred during that period) and $1,251.46[11] in expenses (representing 100% of total expenses incurred during that period),[12] (b) its fee statement for the month of December 2017 requested payment of $296,904.80 in professional fees (representing 80% of the $371,131.00 in total fees incurred during that period) and $1,900.18 in expenses (representing 100% of total expenses incurred during that period),[13] and (c) its fee statement for the month of January 2018 requesting payment of $495,133.20 in professional fees (representing 80% of the $618,916.50 in total fees incurred during that period) and $5,633.73 in expenses (representing 100% of total expenses incurred during that period).[14] In total, ZC has submitted Monthly Fee Statements, during the Application Period, for professional fees in the amount of $1,572,704.40 (representing 80% of the $1,965,880.50 in professional fees incurred by ZC during the Application Period) and expenses incurred in the

---

[10] In accordance with the fee examiner's expense guidelines, ZC has subsequently reduced its October 2017 photocopying expense by $0.30. ZC is seeking allowance of $940.40 in expenses for the month of October 2017.

[11] In accordance with the fee examiner's expense guidelines, ZC has subsequently reduced its November 2017 photocopying expense by $0.10. ZC is seeking allowance of $1,251.36 in expenses for the month of November 2017.

[12] The deadline to object to ZC's November 2017 fee statement was January 22, 2018. No objections were received, and, in accordance with the Interim Compensation Order, the Debtors were required to pay 80% of the fees and 100% of expenses requested in the November 2017 fee statement by February 7, 2018. As of the filing of this Application, ZC has not received payment on account of the November 2017 fee statement.

[13] The deadline to object to ZC's December 2017 fee statement was February 26, 2018. No objections were received, and, in accordance with the Interim Compensation Order, the Debtors were required to pay 80% of the fees and 100% of expenses requested in the December 2017 fee statement by March 12, 2018. As of the filing of this Application, ZC has not received payment on account of the December 2017 fee statement.

[14] The deadline to object to ZC's January 2018 fee statement is March 26, 2018 at 4:00 p.m. (AST). No objections were received as of the filing of this Application.

9

total amount of $9,725.67[15] (representing 100% of the expenses incurred by ZC during the Application Period). Accordingly, as of the date of this Application, the aggregate amount of $1,224,791.77, representing 80% of fees and 100% of expenses, remains unpaid.

## VI. SUMMARY OF PROFESSIONAL SERVICES RENDERED

24. Pursuant to the Local Rules and U.S. Trustee Guidelines, ZC classified all services performed for which compensation is sought into separate categories. ZC placed the services performed in the matter category that best relates to the services provided. Although certain services may relate to one or more matter category, services are only included in one matter category. The following paragraphs highlight key services rendered by ZC during the Application Period in certain matter categories where ZC has expended a considerable number of hours on behalf of the Committee, and are not meant to be a detailed description of all of the work performed by ZC.

| 1 | **Planning & Coordination / Case Management** | **Hours** | 36.4 |

In order to ensure that ZC professionals avoided duplication of efforts, ZC maintained work plans and allocated resources to address the numerous tasks in order to effectively and efficiently execute on the engagement strategy.

| 2 | **Meetings and Communications with Committee Members and/or Professionals** | **Hours** | 436.3 |

ZC spent considerable time preparing for and participating in conference calls and in-person meetings with the Creditors' Committee to provide updates with regard to the status of the cases. These calls and meetings included discussions pertaining to, among other things, the Commonwealth-COFINA dispute, the Commonwealth Certified Fiscal Plan, the Revised Draft January 2018 Fiscal Plan, Rule 2004 Discovery Requests, Adversary Proceedings, mediation and general case strategy. In preparation for these calls and meetings, ZC created analyses and presentations that were provided to the members of the Committee.

---

[15] Reflects photocopying expense reductions of $0.40 during the Application Period pursuant to the fee examiner's expense guidelines.

10

| 3 | Communication with Interested Parties | **Hours** | 450.4 |

During the Application Period, ZC professionals attended and participated in meetings and conference calls with the Oversight Board, AAFAF, the mediation team, other official and ad hoc committees and their financial and legal advisors. These meetings and calls served as a basis to understand the positions of the various constituents involved in the case and to address questions raised by the Committee and its advisors.

| 4 | Liquidity and Cash Management | **Hours** | 69.4 |

Beginning in the month of October 2017, the Commonwealth began posting weekly updates on the Commonwealth's TSA liquidity position. ZC professionals spent a significant portion of the Application Period reviewing these weekly liquidity reports and analyzing the Commonwealth's cash position relative to its projections.

| 5 | Fiscal Plan and Related Budgets Analysis and Assessment | **Hours** | 578.6 |

A significant portion of the Application Period was spent reviewing the Commonwealth Certified Fiscal Plan, the certified fiscal plans and fiscal year 2018 budgets for selected instrumentalities and the revised draft fiscal plans for the Commonwealth, PRASA and PREPA. ZC professionals spent time analyzing the macroeconomic assumptions and conducted research on key components of the fiscal plans, including healthcare, pensions, taxes, debt and general baseline projections. As an example, in the aftermath of hurricanes Irma and Maria, ZC professionals also analyzed the hurricanes' potential effects on the Commonwealth Fiscal Plan and fiscal 2018 budgets based on effects of certain prior natural disasters in the U.S. ZC professionals also analyzed the Revised Draft January 2018 Fiscal Plan as well as the draft PREPA and PRASA draft fiscal plans relative to those certified in March of 2017.

| 6 | Financial and Other Diligence | **Hours** | 629.8 |

Time spent researching and documenting relevant information regarding the Debtors' state of affairs from public and non-public sources, including, but not limited to, audited financial statements, operating reports, filings on the electronic court docket, press releases, AAFAF's website, the Oversight Board's website and documents and schedules provided in the virtual data room. During the Application Period, ZC professionals spent significant time analyzing and reviewing reports related to the impact of hurricanes Irma and Maria, including disaster recovery efforts and potential disaster loans from the Federal government. ZC also spent significant time educating themselves on FEMA and other government aid available in the aftermath of significant prior natural disasters. ZC professionals also conducted significant research related to understanding the Revised Draft January 2018 Fiscal Plan and those of its instrumentalities.

11

| 9 | **Debt Capacity** | **Hours** | 265.6 |

Analysis of the Commonwealth's debt capacity and proposed capital structure. Throughout the Application Period, ZC professionals reviewed and analyzed materials provided by constituent advisors related to debt, performed analyses to assess comparable debt issuances, discussed findings of all analyses with the Committee, and both followed and reported on debt trading prices.

| 19 | **PREPA Title III** | **Hours** | 233.4 |

During the Application Period, ZC reviewed and analyzed materials relating to the PREPA Title III Case, including publically available financial information, court filings and information posted to PREPA's virtual data room. ZC also spent significant time analyzing the impact of hurricanes Irma and Maria. This included reviewing PREPA contracts, assessing plans to revitalize PREPA and the review of the January 2018 draft fiscal plan. Additionally, ZC participated in regularly scheduled update calls with PREPA's legal and financial advisors.

| 20 | **HTA Title III** | **Hours** | 146.3 |

During the Application Period, ZC reviewed and analyzed materials relating to the HTA Title III Case, including publically available financial information, flings on the electronic court docket and information posted to the virtual data room. ZC also prepared diligence request lists and participated in meetings with the Commonwealth and its advisors.

| 21 | **ERS Title III** | **Hours** | 27.3 |

During the Application Period, ZC reviewed and analyzed materials relating to the ERS Title III Case, including publically available information and flings on the electronic court docket.

25. ZC believes that the fees and expenses requested are reasonable, and all amounts requested are for actual and necessary services rendered on behalf of the Committee.

26. ZC has agreed to reduce its fees by an amount equal to 20% of the total fees sought to be paid in connection with ZC's final fee application, with the precise fees to be waived to attain the 20% reduction to be designated by ZC (in its sole discretion) in connection with the final fee application process. For that reason, ZC is only seeking payment of 80% of its unpaid fees (to the extent such amount has not been paid before the hearing scheduled on this Application), but allowance of 100% of its fees.

12

27. ZC has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases. No promises have been received by ZC or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

### VII. ALLOWANCE OF COMPENSATION

28. Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a court may award a professional employed by a committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." PROMESA § 316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

(a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

(i) the time spent on such services;

(ii) the rates charged for such services;

(iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

13

For all of the foregoing reasons, ZC believes the amounts herein are reasonable in light of the nature, extent and value of the services to the Committee, the Debtors, and all parties in interest.

## VIII. NOTICE

29. In accordance with the Interim Compensation Order, ZC will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP and Casillas, Santiago & Torres LLC; (v) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, Garcia & Milian, C.S.P; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

*[Remainder of page intentionally left blank.]*

## IX. CONCLUSION

WHEREFORE, ZC respectfully requests entry of an order (i) allowing ZC's claims for fees and expenses for professional services rendered during the Application Period in the amount of $1,965,880.50 and expense reimbursements in the amount of $9,725.67; (ii) directing the Debtors' payment of the difference between the sum of 80% of the fees allowed plus 100% of the expenses allowed and the amounts previously paid by the Debtors pursuant to the Interim Compensation Order; and (iii) granting ZC such other and further relief as is just.

Dated: March 19, 2018
      New York, New York

 

*[signature]*

Carol Flaton
Managing Director
ZOLFO COOPER, LLC
1114 Avenue of the Americas, 41st Floor
New York, NY 10036
(212) 561-4000

*Financial Advisor to the Committee*

15