**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of<br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br>*Debtors¹* | PROMESA<br>Title III<br>No. 17 BK 3283 – LTS |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of<br>The Puerto Rico Sales Tax Financing Corporation ("COFINA")<br>*Debtor* | PROMESA<br>Title III<br>No. 17 BK 3284 – LTS |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of<br>The Puerto Rico Highways and Transportation Authority ("HTA")<br>*Debtor* | PROMESA<br>Title III<br>No. 17 BK 3567 – LTS |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br>The Employee Retirement System of the Government of Puerto Rico ("ERS")<br>*Debtor* | PROMESA<br>Title III<br>No. 17 BK 03566 – LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br>The Puerto Rico Electric Power Authority ("PREPA")<br>*Debtor* | PROMESA<br>Title III<br>No. 17 BK 4780 – LTS |
| COOPERATIVA DE AHORRO Y CRÉDITO ABRAHAM ROSA, COOPERATIVA DE AHORRO Y CRÉDITO DE CIALES, COOPERATIVA DE AHORRO Y CRÉDITO DE JUANA DÍAZ, COOPERATIVA DE AHORRO Y CRÉDITO DE LARES Y REGIÓN CENTRAL, COOPERATIVA DE AHORRO Y CRÉDITO DE RINCÓN, COOPERATIVA DE AHORRO Y CRÉDITO VEGA ALTA, COOPERATIVA DE AHORRO Y CRÉDITO DR. MANUEL ZENO GANDÍA<br>*Plaintiffs*<br><br>v.<br>COMMONWEALTH OF PUERTO RICO; PUERTO RICO SALES TAX FINANCING CORPORATION; FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, PUBLIC CORPORATION FOR THE SUPERVISION AND INSURANCE OF COOPERATIVES OF PUERTO RICO; GOVERNMENT DEVELOPMENT BANK; GDB DEBT RECOVERY AUTHORITY AND ITS TRUSTEES, AS WELL AS THE GDB PUBLIC ENTITY TRUST AND ITS TRUSTEES; JOSÉ B. CARRIÓN III, ANDREW G. BIGGS; CARLOS M. GARCÍA; ARTHUR J. GONZÁLEZ; JOSÉ R. GONZÁLEZ; ANA J. MATOSANTOS; DAVID A. SKEEL, JR.; CHRISTIAN SOBRINO; PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; EMPLOYEE RETIREMENT SYSTEM OF | **ADVERSARY COMPLAINT**<br><br>Adv. Proc. No. 18-_____<br><br>Related to Bankruptcy Cases:<br>17 BK 3283 – LTS<br>17 BK 3284 – LTS<br>17 BK 3567 – LTS<br>17 BK 03566 – LTS<br>17 BK 4780 – LTS |

THE GOVERNMENT OF
COMMONWEALTH OF PURETO RICO;
PUERTO RICO ELECTRIC POWER
AUTHORITY; SECURITIES FIRMS A-Z;
SECURITIES FIRMS COUNSELS A-Z;
BOND COUNSELS A-Z; EXTERNAL
AUDITORS A-Z; INSURANCE
COMPANIES A-Z; JOHN DOES 1-12
*Defendants*

## ADVERSARY COMPLAINT

TO THE HONORABLE COURT:

COME NOW Plaintiffs, Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito Vega Alta, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana Díaz, through the undersigned attorneys, and very respectfully STATE, ALLEGE, PRAY, AND REQUEST RELIEF as follows.

## NATURE OF THE PROCEEDING

1.      Plaintiffs, who are several state-chartered credit unions[2] with material holdings of debt instruments issued by the Commonwealth of Puerto Rico and its instrumentalities,[3] and who are part of a financial cooperative system in the island encompassing around 1.2 million members and depositors (low-income savers and the elderly), seek declaratory judgment, injunctive relief, and compensatory damages from Defendants.

---

[2] State Chartered credit unions in Puerto Rico are known as "Cooperativas de Ahorro y Crédito," or "Cooperatives."
[3] For purposes of this adversary complaint, these instruments are referred to as "Puerto Rico Debt Securities", which term is defined as those securities issued by the Commonwealth, the GDB and various other agencies, instrumentalities, entities and public corporations which were offered and sold to the Cooperatives.

2.      In particular, this adversary complaint seeks declaratory judgment relief determining that Plaintiffs' claims owed by the Commonwealth, including the compensation of damages claimed herein, are non-dischargeable and unimpaired by the filing of a Title III proceeding due to the fact that the Commonwealth by itself and through its instrumentalities incurred in false representations, defalcation while in their fiduciary capacity and in actual fraud to appropriate funds from the plaintiffs.

3.      The Commonwealth of Puerto Rico and codefendants COSSEC, GDB and FAFAA were aware of Plaintiffs' sound operations and safe financial conditions even in times of financial crisis. Maliciously, in a calculated way and under false pretenses, Defendants offered and sold to Plaintiffs unsound Puerto Rico Debt Securities availing themselves (Defendants) of the Cooperatives' assets.  This resulted in an undue concentration of bonds in the cooperatives' portfolios and created a systemic risk for the Cooperatives.

4.      The governmental entities with legal and fiduciary obligations to ensure the financial health of the cooperative system ignored their obligations and induced the offer and sale of the unsound debt securities. These entities incurred in the reckless disregard of the systemic risks to cooperatives and failed to comply with statutory mandates, and ministerial and fiduciary duties. As a consequence, Plaintiffs suffered material damages, which are claimed herein. Such actions preclude the discharge of Plaintiff's claims under the regulations of the Bankruptcy Code.

5.      Furthermore, this action seeks that Defendants be instructed to comply with their ministerial and legal duties as per applicable law in order to maintain the safety and soundness of the cooperative system, and to promote its financial growth for

the well-being of a large portion of the population in Puerto Rico. Consequently, this action seeks that in order to protect the Cooperative Financial System, its members and depositors, and the economy in general, Defendants be instructed to address the risks, damages and losses at hand through policy provisions that impart adequate protection in the debt restructuring and/or adjustment plans to be approved under the PROMESA Title III cases.

**PARTIES**

<u>**Plaintiffs**</u>

6.    Plaintiff **Cooperativa de Ahorro y Crédito Abraham Rosa** ("Coop. Abraham Rosa") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at 2 Rd., Km. 17.7, Macún Sector, Toa Baja, PR 00949. Coop. Abraham Rosa is a creditor in this Bankruptcy case.

7.    Plaintiff **Cooperativa de Ahorro y Crédito de Ciales** ("Coop. Ciales") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at 48 Palmer Street, Suite 2, Ciales, PR 00638-3233. Coop. Ciales is a creditor in this Bankruptcy case.

8.    Plaintiff **Cooperativa de Ahorro y Crédito de Juana Díaz** ("Coop. Juana Díaz") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at #113 Comercio Street, Corner of Hostos Street, Juana Diaz, PR 00795. Coop. Juana Díaz is a creditor in this Bankruptcy case.

9.    Plaintiff **Cooperativa de Ahorro y Crédito de Lares y Región Central** ("Coop. Lares") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at 111 Rd. Km 3.8, Los Patriotas Avenue, Lares, P.R. 00669. Coop. Lares is a creditor in this Bankruptcy case.

10. Plaintiff **Cooperativa de Ahorro y Crédito de Rincón** ("Coop. Rincón") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at 5 Cambija Street, Rincón, PR 00677. Coop. Rincón is a creditor in this Bankruptcy case.

11. Plaintiff **Cooperativa de Ahorro y Crédito Vega Alta** ("Coop. Vega Alta") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at 61 Georgetti Street, Vega Alta, PR 00692. Coop. Vega Alta is a creditor in this Bankruptcy case.

12. Plaintiff **Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía** ("Coop. Zeno Gandía") is a credit union organized under the laws of the Commonwealth of Puerto Rico, having its principal place of business at Villa Los Santos Development, 4 Street, Suite 1, Arecibo, PR 00612-3134. Coop. Zeno Gandía is a creditor in this Bankruptcy case.

13. All Plaintiffs are credit unions chartered under Puerto Rico Act 255 of October 28, 2002, as amended ("Act 255"). In Spanish, Plaintiffs are designated as "Cooperativas de Ahorro y Crédito"[4] or "Cooperativas." Plaintiffs are hereinafter referred to as "Cooperatives," and state-chartered credit unions other than Plaintiffs as "Fellow Cooperatives."

**Defendants**

14. Defendant the **Commonwealth of Puerto Rico** ("Commonwealth") is a territory of the United States. Together with the GDB, the Commonwealth controlled and directed the issuance of securities by entities other than the Commonwealth and the GDB (which are referred to as the "Related Issuers").

---

[4] Cooperative Savings and Credit Association Act., 7 L.P.R.A.§1361 *et seq.*

15.     Defendant **Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico** ("COSSEC") is a public entity created by Commonwealth Act 114 of August 1, 2001, as amended ("Act 114").[5]  COSSEC is the regulator and supervisor of the Cooperatives and insures their shares and deposits up to $250,000. In this respect, COSSEC is similar to both the National Credit Union Administration ("NCUA"), the federal entity that insures credit union shares and deposits pursuant to the Federal Credit Union Act (12 U.S.C. §1751 *et seq.*), and the Federal Deposit Insurance Corporation ("FDIC"), which insures bank deposits.  Under Act 114, all of COSSEC's capital and income is provided by the Cooperatives through mandatory capital contributions, assessments, insurance premiums, and examination fees, among others.

16.     Defendant **Government Development Bank** ("GDB") is a public corporate entity created as a banking institution by Puerto Rico Act No. 17 of September 23, 1948, as amended, 7 L.P.R.A. 551 et seq., and by law acted as the Fiscal Agent to the Commonwealth and to all other governmental entities. Together with the Commonwealth of Puerto Rico, the GDB controlled and directed the issuance of securities by entities other than the Commonwealth and the GDB (which are referred to as the "Related Issuers").

17.     Defendant **GDB Debt Recovery Authority**, is a statutory public trust and a governmental public instrumentality of the Commonwealth of Puerto Rico created and organized pursuant to Act 109 of August 24, 2017, as amended, also known as "Government Development Bank for Puerto Rico Debt Restructuring Act" ("Act 109") for

---

[5] Pursuant to Act 114, 7 L.P.R.A. 1334 *et seq.* COSSEC is the continued successor of PROSAD, established under Act 5 of January 15, 1990.

the purposes of (1) issuing the bonds in order to: (a) implement a restructuring transaction of the GDB and its debts, (b) facilitate compliance with the GDB Fiscal Plan, and (c) facilitate the funding of essential government or public services by the Government of Puerto Rico, and (2) owning and managing the assets transferred therein from the GDB. According to Act 109, the policies and powers of the GDB Debt Recovery Authority shall be implemented, managed and exercised by a Board of Trustees composed of three (3) members, which were recently designated by the Governor of the Commonwealth and are herein identified, in their official capacities as Trustees and as Defendants:

a. Defendant **Jorge L. Padilla**, as designated member of the Board of Trustees of the GDB Debt Recovery Authority. Pursuant to Act 109, the powers of the GDB Debt Recovery Authority shall be exercised and its general policy and strategic management shall be determined by its Board of Trustees. Plaintiffs sue Jorge L. Padilla in his official capacity.

b. Defendant **Mathew Karp**, as designated member of the Board of Trustees of the GDB Debt Recovery Authority. Pursuant to Act 109, the powers of the GDB Debt Recovery Authority shall be exercised and its general policy and strategic management shall be determined by its Board of Trustees. Plaintiffs sue Mathew Karp in his official capacity.

c. Defendant **David Pauker**, as designated member of the Board of Trustees of the GDB Debt Recovery Authority. Pursuant to Act 109, the powers of the GDB Debt Recovery Authority shall be exercised and its general policy and strategic management shall be determined by its Board of Trustees. Plaintiffs sue Mathew Karp in his official capacity.

These defendants are being pleaded as nominal defendants to ensure the effectiveness of any judgement against the GDB.

18.     The **GDB Public Entity Trust** is or will be a public entity trust and governmental instrumentality, to be created pursuant to Act 109 and its designated Trustee(s). This Adversary Complaint will be amended upon discovery of the confirmation of the creation and existence of the Trust and the identity of its Trustee(s) to provide all their pertinent information.  The GDB Debt Recovery Authority and its Trustees, as well as the GDB Public Entity Trust and its Trustees, are or may become successors to the GDB and its assets and, as such, are liable for the actions and omissions of the GDB.

19.     Defendant **Puerto Rico Fiscal Agency and Financial Advisory Authority** ("FAFFA") is a public corporation organized under the laws of the Commonwealth of Puerto Rico pursuant to Puerto Rico Act 21 of April 6, 2016, as amended ("Act 21").  Pursuant to Act 21, FAFAA assumed the GDB's role as Fiscal Agent to the Commonwealth and to all other governmental entities, including its ex-officio seat in COSSEC's Board of Directors.  Since its creation, FAFAA also controlled and has been in charge of efforts to restructure Puerto Rico's debt. Through its ex-officio seat in COSSEC's Board of Directors, FAFAA continues to exert significant influence in COSSEC's decision making processes.   This influence has been heightened from September 2016 to the present.  Actual control of FAFAA and its operations has been exerted by its Executive Directors.  FAFAA's influence over COSSEC has been exerted through FAFAA's representative in COSSEC's Board and through private consultants selected by FAFAA.

20.     Codefendant Debtors in these Title III Cases, along with the Commonwealth, are public corporations that aided, abetted and benefited from the actions and omissions of the Commonwealth, the GDB and COSSEC that resulted in the offer and sale of said Debtors' Securities to the Cooperatives. These codefendant Debtors are:

(i) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474);

(ii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808);

(iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and

(iv) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

21.     Defendant the **Financial Oversight and Management Board for Puerto Rico** ("FOMB," and "Oversight Board") was created under Section 101(b)(1) of PROMESA (48 U.S.C. § 2121(b)(1)) and purports to be an "entity within the [Commonwealth] government." 48 U.S.C. § 2121(c)(1).  Inherent to that nature, the FOMB's exercise of all powers and authority vested upon it constitute "State Action."  Accordingly, the FOMB, its members and officers are subject to the same constitutional standards applicable to the Commonwealth and its officers.[6]

---

[6] Plaintiffs make express reservation of rights with respect to the constitutionality of the FOMB, the designation of their members and the powers vested in them.

22.     Defendant **José B. Carrión III** is the Chairman of the Oversight Board. Carrión participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. Carrión is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment.  Plaintiffs sue José B. Carrión III in his official capacity.

23.     Defendant **Andrew G. Biggs** is a member of the Oversight Board. Biggs participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. Biggs is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment. Plaintiffs sue Andrew G. Biggs in his official capacity.

24.     Defendant **Carlos M. García** is a member of the Oversight Board. García participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. García is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment. Plaintiffs sue Carlos M. García in his official capacity. Carlos M. García served as president of the GDB from January 2, 2009 to March 1, 2011, which is within the period of offer and sales of Puerto Debt Securities to Cooperatives.

25.     Defendant **Arthur J. González** is a member of the Oversight Board. Arthur González participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. Arthur González is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to

11

the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment. Plaintiffs sue Arthur J. González in his official capacity.

26.    Defendant **José R. González** is a member of the Oversight Board. José González participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. José R. González is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment. Plaintiffs sue José R. González in his official capacity.

27.    Defendant **Ana J. Matosantos** is a member of the Oversight Board. Matosantos participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. Matosantos is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment. Plaintiffs sue Ana J. Matosantos in her official capacity.

28.    Defendant **David A. Skeel, Jr.** is a member of the Oversight Board. Skeel participated in the Oversight Board's certification of the Fiscal Plan and participates in the filing of all Title III petitions. Skeel is empowered, together with the other members of the Oversight Board, to approve any budgets submitted to the Oversight Board pursuant to PROMESA, and to create, file, modify, continue, and confirm any plan of adjustment. Plaintiffs sue David A. Skeel Jr. in his official capacity.

29.    Defendant **Christian Sobrino** is an *ex officio* member of the Oversight Board as representative of the Governor.   He is also president of the GDB and Chairman of FAFAA. Plaintiffs sue Christian Sobrino in his official capacity.

30. **Securities firms A–Z**, which acted as underwriters, underwriting syndicate member, selling group manager, selling group member, broker and/or dealer, financial advisor, or in any other capacity in relation to the Puerto Rico Debt Securities, as defined hereinafter, the name and principal office addresses of which are unknown. These Securities firms aided and abetted the GDB in the design, underwriting, offer, sale, distribution of the Puerto Rico Debt Securities offered and sold to Cooperatives and in the drafting of documents, analysis and sales materials regarding said instruments.  This Adversary Complaint will be amended upon discovery of the identity of these parties to provide all their pertinent information.

31. **Law firms and counsel** who acted as advisors and/or legal representatives to defendants identified in the preceding paragraphs and/or to issuers of Puerto Rico Debt Securities, with respect to said Puerto Rico Debt Securities and/or with regards to policy actions and omissions related thereto, the name and principal office addresses of which are unknown. These Law firms and counsels aided and abetted the GDB in the design, underwriting, offer, sale, distribution of the Puerto Rico Debt Securities offered and sold to Cooperatives and in the drafting of documents and analysis regarding said instruments.  This Adversary Complaint will be amended upon discovery of the identity of these parties to provide all their pertinent and relevant information.

32. **Accounting and/or auditing firms** which made audits or financial analysis or reports, or that acted in any other capacity in relation to the Puerto Rico Debt Securities, as defined hereinafter, the name and principal office addresses of which are unknown.  These accounting and/or auditing firms aided and abetted the GDB in the design, underwriting, offer, sale, distribution of the Puerto Rico Debt

13

Securities offered and sold to Cooperatives and in the drafting of documents, analysis and financial statements and reports regarding said instruments.   This Adversary Complaint will be amended upon discovery of the identity of these parties to provide all their pertinent and relevant information.

33.    **Insurance Companies A–Z** have issued insurance policies for any, some or all Defendants covering the claims raised in this Adversary Complaint.   The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Insurance Companies A through Z, who issued insurance policies to one or more Defendants, are unknown at this time.   This Adversary Complaint will be amended upon discovery of the identity of these insurance companies to provide all their pertinent information.

## JURISDICTION AND VENUE

34.    This Honorable Court has jurisdiction over this action pursuant to 48 U.S.C. § 2166.   Further, this Court has jurisdiction under Section 306(a), which grants this Court original and exclusive jurisdiction over all cases under Title III of PROMESA and original jurisdiction over all civil proceedings arising under Title III of PROMESA or arising in or related to cases under Title III of PROMESA. *Id.* § 2166(a)(2).

35.    This Court has personal jurisdiction over all of the Defendants pursuant to Section 306(c) of PROMESA. 48 U.S.C. § 2166(c). It also has supplemental jurisdiction to entertain all state law claims pursuant to 28 U.S.C. § 1367.

36.    Venue is proper in this District under 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to these claims occurred in this District. Venue

is also proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in

a Title III proceeding.

## FACTUAL BACKGROUND

**I.    Plaintiffs are depository institutions which are part of a Cooperative
Financial System**

37.    Plaintiffs are depository institutions subject to governmental supervision

and regulation as established and implemented by the Commonwealth through

COSSEC.  COSSEC also insures the shares and deposits held by members and

depositors up to $250,000.  In this respect, COSSEC has duties and obligations similar

to those of the National Credit Union Administration ("NCUA"), the federal entity that

supervises and insures credit union shares and deposits pursuant to the Federal Credit

Union Act (12 U.S.C. §1751 *et seq.*), and similar to the Federal Deposit Insurance

Corporation ("FDIC"), which insures bank deposits.  Under Act 114, all of COSSEC's

capital and income—including the Shares and Deposit Insurance Fund—is provided by

the Cooperatives through mandatory capital contributions, assessments, insurance

premiums, examination fees, among others.

38.    Pursuant to the statutory framework, the Commonwealth's duties as

regulator and supervisor of the Cooperative Financial System are heightened by the

fiduciary duties inherent to the governance structure of COSSEC, as adopted and

implemented by the Commonwealth.

39.     Based on data published by COSSEC, as of December 31, 2017, Plaintiffs had $1,451,973,831.63 total assets, 139,621 members, approximately 35,000 nonmember depositors, 384 full-time employees, and branches located in 15 municipalities of Puerto Rico.[7]

40.     Plaintiffs are part of a Cooperative Financial System comprised of 116 Cooperatives with total assets of $8,713,887,210.79, with 988,086 members and 300,000 non-member depositors, 2,921 full-time employees and 120 branches in all municipalities of the Commonwealth.[8]

41.     The Cooperatives are interconnected through significant inter-cooperative deposits, which as of December 31, 2017 amount to $ 764,673,755.77, as reported by COSSEC. This system serves over 1.2 million members and depositors, the majority of whom are middle and low-income savers and elderly persons (vulnerable populations that need to be protected).

42.     Cooperatives are primary lenders and providers of cost-effective financial services.  In addition to their role of financing economic activity, for many decades the Cooperative Financial System has also served as a market driven price regulator for retail financial services. This role has become ever more important considering the increased concentration of Puerto Rico's banking market after the failure of 3 commercial banks in 2010 and another in 2014.  Market concentration is measured by the Federal Department of Justice and by federal banking regulators through the Herfindahl-Hirschman Index ("HHI").[9]   HHI for Puerto Rico's depository institutions

---

[7] *See* Exhibit A for a breakdown by individual Plaintiff, as reported by COSSEC.
[8] *See* Exhibit B for a list of all cooperatives, as reported by COSSEC.
[9] Horizontal Merger Guidelines § 5.2 (2010), The United States Department of Justice U.S. Department of Justice & FTC, Horizontal Merger Guidelines § 5.2 (2010), available at (https://www.justice.gov/atr/horizontal-merger-

currently exceeds 2,800 points, which indicates a highly-concentrated market.   This information was submitted to the FOMB on November 15, 2016.

## II.   Cooperatives have shown a safe and sound financial condition even through the years of the Financial Crisis

43.   Cooperatives have safe and sound operations, as acknowledged and stated by COSSEC, FAFAA and the FOMB in pages 7 to 10 of COSSEC's Fiscal Plan.[10]

44.   Furthermore, during the recent financial crisis, Cooperatives have shown growth in members and assets, as opposed to reduction and losses suffered by commercial banks, as shown by the following data:[11]

| 2008–2016 | Cooperatives | Commercial Banks |
| --- | --- | --- |
| Members Growth: | 17.84% | N/A |
| Asset Growth | 31.0% | (40.83%) |

| June 2016 | Cooperatives | Commercial Banks |
| --- | --- | --- |
| ROA | 1.06% | 0.40% |

45.   This financial soundness has allowed Cooperatives to address, through their own capitalization and funding of COSSEC, the Puerto Rico financial crisis without requiring the expenditure of government funds.

## III.   Improper and Targeted sale of unsound Puerto Rico Debt Securities to Cooperatives

---

guidelines-08192010#5c). *See also* Herfindahl-Hirschman Index (2015), The United States Department of Justice, available at https://www.justice.gov/atr/herfindahl-hirschman-index.

[10] *See* pages 7–10 of COSSEC's Fiscal Plan presented by COSSEC and certified by the FOMB on August 4, 2017. Exhibit C.

[11] This information was submitted to COSSEC, FAFAA and the FOMB in letters of November 15, 2016 and December 29, 2016.

46. As reported in official statistics published by COSSEC in its web page, total investments by Cooperatives in Negotiable Securities began a marked increase in 2009, as shown in the following tables and graphic:

### Total Investment in Negotiable Securities ($000)

| 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 413.19 | 399.16 | 379.97 | 401.82 | 562.85 | 820.24 | 1,223.78 | 1,475.02 | 1,565.24 | 1,621.95 | 1,493.32 | 1,389.30 |

### Total Assets ($000)



| 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6,238.91 | 6,289.58 | 6,488.78 | 6,699.08 | 7,166.11 | 7,524.19 | 7,886.73 | 8,218.12 | 8,349.18 | 8,557.57 | 8,505.48 | 8,566.96 |

### Ratio of Investments to Total Assets

| 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6.62% | 6.35% | 5.86% | 6.00% | 7.85% | 10.90% | 15.52% | 17.95% | 18.75% | 18.95% | 17.56% | 16.22% |



47.     The Cooperatives acquired essentially all of their holdings in Puerto Rico Debt Securities at par value or near par value.

48.     As acknowledged by COSSEC, FAFAA and the FOMB in page 11 of COSSEC's Fiscal Plan,[12] the Cooperatives are heavily invested in securities issued by the Puerto Rico government and its instrumentalities.  Upon submittal and approval of said Fiscal Plan, COSSEC, FAFFA and the FOMB stated as follows:

- PR Government securities ($976 MM) account for approximately 65% of the Cooperatives' total investment portfolio ($1.5bn).

- The majority of Cooperatives purchase PR Government bonds at issuance and, due to regulatory accounting treatment, carry all of these "special investments" on their books at par value, even those bonds that trade well below par value.

- GDB's bonds, which comprise approximately 44% of the Cooperatives' exposure to government securities, trade at a roughly 84 discount to par value; GO bonds, the Cooperatives' second largest governmental exposure, are trading at a roughly 41% discount.

- Taken as a whole, the aggregate Cooperative investment in government bonds has a market value roughly 49% below the par.

- Regulatory accounting treatment allows the Cooperatives to amortize losses on special investments over a 15-year period; However, this will only benefit the Cooperatives from an accounting standpoint, as they will still suffer reductions in cash flow due to the likely restructuring of Government debt.

---

[12] *See* Exhibit C.

49.     Pursuant to the statutory framework adopted by the Commonwealth, the GDB, acting on behalf of and as fiscal agent to the Commonwealth and its instrumentalities and Related Issuers, designed, oversaw, controlled and was in charge of all bond and debt issued by the Commonwealth and its instrumentalities, including the issuance of the Puerto Rico Debt Securities that were offered and sold to Plaintiffs. More specifically, prior to the issuance, sale or exchange of said debt instruments, the GDB was required to prepare and submit to the Secretary of the Treasury of Puerto Rico a report as to the feasibility of such financing procedures.[13]

50.     Pursuant to Act 114, COSSEC's Board of Directors is comprised of four (4) governmental officials (the Commissioner of Cooperative Development, the Commissioner of Financial Institutions, the Secretary of the Treasury [or his/her representative] and the President of the Government Development Bank [or his/her representative], four (4) representatives elected by cooperatives and one representative of the Public Interest.  By law, the Board is chaired by the Commissioner of Cooperative Development.  All government representatives are political appointees of the Governor or designated by such political appointees.  COSSEC's management is headed by an Executive President, appointed by COSSEC's Board of Directors. COSSEC has been without a duly confirmed Executive President since February 2017.  The appointment of COSSEC's Executive Presidents has been under direct influence of the Governor's Office.  Actual control of COSSEC and its operations has been exerted by its Chairmen and Executive Presidents, and more recently by FAFAA.

---

[13] *See* Exhibit D: 7 LPRA §§ 583-588 - GDB's Organic Law defining GDB's powers and responsibilities as the exclusive financial advisor, reporting agency and payment agent of the Commonwealth and its instrumentalities.

51.    Inherent to its role as insurer of the shares and deposits of the Cooperatives, COSSEC evaluates the levels of risk of the insured financial institutions to define the adequate reserves and the corresponding premiums and/or assessments to be required from the Cooperatives.

52.    Since 2013, the GDB also controlled and was in charge of efforts to restructure Puerto Rico's debt.

53.    Since 1990 the GDB has always had an *ex officio* seat at COSSEC's Board of Directors (and in the Board of Directors of COSSEC's predecessor, PROSAD), through which the GDB exerted significant influence in COSSEC's decision-making processes.   That influence was based on the GDB's expertise and direct knowledge regarding the Commonwealth's finances, its participation in the municipal and capital markets and its statutory duties as Fiscal Agent. During the period between 2009 and 2014, the following were GDB Presidents:

a.  Carlos M. García, January 2, 2009 – March 1, 2011;[14]

b.  Juan Carlos Batlle, March 2, 2011– December 31, 2012;[15]

c.  Javier Ferrer, January 1, 2013 – December 31, 2013;

d.  José Pagán, January 1, 2014 – December 31, 2014;

e.  Melba Acosta, January 1, 2015 – December 31, 2016.

54.    Pursuant to actions and omissions of defendants Commonwealth, GDB and COSSEC, Puerto Rico Debt Securities were offered and sold to Plaintiffs in

---

[14] Currently, a member of the FOMB.

[15] Currently, Mr. Batlle is one of the principals of Ankura Consulting, which was awarded a contract to "manage the GDB restructuring" for the amount of $2.965 million for a period of 11 months (August 1, 2017 through June 30, 2018).

violation of statutory, fiduciary and regulatory duties. These actions and omissions caused and continue to cause material losses to Plaintiffs.

55.     The accelerated increase in Puerto Rico Debt Securities sold to Cooperatives beginning in 2009 and the foreseeable increase in risk concentration was the result of a targeted and concerted effort on the part of the Commonwealth, the GDB and COSSEC to take and use the liquid reserves of the Cooperatives.

56.     The concerted efforts of the Commonwealth and the GDB to improperly avail themselves of the assets of the Cooperatives through the sale of ever increasing concentrations of Puerto Rico Debt Securities were carried out through an undue use of COSSEC's regulatory power and in disregard of the government's ministerial, statutory and fiduciary duties.  These actions and omissions included:

a. Issuance of circular letter 09-03, issued June 22, 2009 to expressly authorize the purchase of Puerto Rico Debt Securities being offered at that time, highlighting those issued by the GDB. Moreover, the circular letter extolled the alleged virtues of such debt instruments, with statements such as: "… backed by the Government, which guarantees 100% of interest and principal payments, as provided in the bonds." and "These bonds are excellent guarantees, which allows investors to apply for loans against their investment."[16]  This circular letter was issued by CPA José A. González Torres in his capacity as Executive President of COSSEC.  Presently, CPA González Torres plays an active role in the current proposed restructuring of the GDB Bonds that Cooperatives acquired relying in said circular letter issued by him in 2009.[17]

---

[16] See Exhibit E, including its translation.
[17] See Exhibit F: GDB-RSA, Section 20, page 22.

23

b.  Issuance of circular letter 2012-02, increasing the ratio of permitted investments, thus allowing for a higher concentration of risk in Puerto Rico Debt Securities.[18]

c.  Threats and "warnings" of possible revocation of the tax-exempt status of Cooperatives, which has been in effect since the 1940s.

d.  The selective use of regulatory power based on the "alignment" of Cooperatives to the policies of the Administration, as reported by the Puerto Rico House of Representatives' Commission on Cooperatives after its investigation regarding COSSEC.

57.  Through the reckless actions and omissions of defendants Commonwealth, GDB and COSSEC, the Commonwealth sought to take the liquid funds of Cooperatives through: (a) the targeted offer and sale of Puerto Rico Debt Securities issued by the Commonwealth, COFINA and the other Related Issuers such as: codefendants and Title III Debtors Puerto Rico Highway and Transportation Authority, Employee Retirement System of the Government of the Commonwealth of Puerto Rico and Puerto Rico Electric Power Authority, and (b) by funding the GDB through the targeted offer and sale of GDB Bonds and Notes to Cooperatives, intending to allow the GDB to finance the operations of the agencies and instrumentalities of the Commonwealth through loans that did not have adequate sources of repayment.

58.  In doing so, defendants Commonwealth, GDB and COSSEC actively sought funds from the Cooperatives while the GDB was insolvent or while driving it into insolvency.

---

[18] *See* Exhibit G, including its translation.

24

59.     The unsound nature of the GDB's lending activity is evidenced in the GDB's Fiscal Plan, which acknowledges the scale of the GDB's non-performing assets. This conduct was contrary to the mission of the GDB, as quoted in page 45 of the GDB's amended Fiscal Plan:

> GDB's Mission: To safeguard the fiscal stability of Puerto Rico and promote its competitiveness in order to transform our economy into one of the most developed economies in the world, hence, fostering the social and economic enhancement of our people. We serve as a bank, fiscal agent and financial advisor for the Government of Puerto Rico, and its instrumentalities.

60.     The unsound nature of the loans obtained by the Commonwealth from the GDB is confirmed by the adoption of Puerto Rico Act 74 of July 20, 2016, the Statement of Motives of which reads as follows:

> Since its founding in 1942, the GDB consistently served the country, not only in the management of debt issuance in financial markets to sustain the government work of different government administrations, but also in its function as a state bank. In this function, the GDB has supported the Government's public investment for decades by granting financing provided with the institution's own capital and through the use of ordinary banking mechanisms to increase its lending capacity so that it could finance projects, works, and necessary programs for the country.

> While it is true that the GDB contributed positively to the economic development of Puerto Rico, through the Bank itself and its various subsidiaries, it is also true that the lax practices of the past for the granting of loans have placed the GDB in a difficult fiscal situation, where its liquidity has greatly decreased. These lax practices caused the GDB to grant a large amount of loans and financing to government entities that did not have the capacity to repay them, such as those of the Highway and Transportation Authority, and also loans payable from legislative appropriations, and because of the Government's situation, the GDB has not received the required payments according to various laws passed when the loans were granted. As a consequence of this lack of payment, and due to the difficulty that the Government and its public corporations have had in accessing the market to issue debt and repay the GDB, as well as due to the government's well-known fiscal conditions, the GDB has been unable to continue with its banking roles, among others, that of being able to honor the deposits of depositors.

61.     Pursuant to the symbiotic relationship between the GDB and the Commonwealth, the Commonwealth's actions and omissions with respect to the Cooperatives were carried out through the GDB and through COSSEC by Commonwealth's representatives in the Board of Directors of said entities. Said directors acted on behalf of and in the name of Commonwealth agencies and instrumentalities that knew or should have known the risks entailed by the increased exposure to Puerto Rico Debt Securities and in violation of their statutory, ministerial and fiduciary duties to ensure safe and sound financial and fiscal policies.[19]

62.     This is the case of the directors representing:

a.     the Puerto Rico Treasury Department, which: (i) oversaw and controlled government revenues, government liquidity and the payment of public debt; (ii) whose Secretary of the Treasury was a member of the GDB's Board of Directors and, in many instances, its chairman; (iii) was required by law to receive from the GDB a report as to the feasibility of any governmental financing procedures prior to the issuance, sale or exchange of Puerto Rico Debt Securities,[20] (iv) whose Secretary of the Treasury was entrusted by law to determine the state of solvency or insolvency of the GDB,[21] and (v) always had an *ex officio* seat in COSSEC's Board of Directors.[22]

b.     The GDB, which: (i) in its capacity as Fiscal Agent, advised COSSEC regarding fiscal and financial matters pertaining COSSEC and the Cooperatives, and

---

[19] The symbiotic relationship between the GDB and the Commonwealth is acknowledged by the GDB, FAFAA and the FOMB as they state that **"[a]s the Government, its instrumentalities, and public corporations required increased liquidity and financing support from GDB, their financial health became interrelated."** (See page 45 of GDB's Amended Fiscal Plan as certified by the FOMB.)

[20] 7 L.P.R.A. §585.

[21] 7 L.P.R.A. §588

[22] 7 L.P.R.A. §1334(c)

simultaneously, (ii) oversaw and managed Puerto Rico's debt and liquidity, whose debt securities were being marketed to Cooperatives.

c.    The Office of the Commissioner of Financial Institutions, which supervised and examined the GDB, as well as all the commercial banks.   Pursuant to the examination of commercial banks, the Commissioner had knowledge of how said banks had reduced their exposure to Puerto Rico Debt Securities during the same period of heightened sale of said securities to Cooperatives.

63.    Based on general information and belief, none of these Commonwealth agencies raised concerns or objections as part of their fiduciary duties as members of COSSEC's Board of Directors, in spite of the knowledge and information handled by said agencies regarding the condition of the public finances.   Furthermore, in discharging their duties in COSSEC's Board of Directors, none of these government agencies called for prudence regarding the offer and sale of Puerto Rico Debt Securities to Cooperatives or regarding the undue concentration and lack of diversification resulting from said process.   Instead, they fostered the wrong and imprudent policy of increased concentration and lack of diversification.

64.    A similar reckless disregard was shown by COSSEC in its internal actuarial and accounting analysis by ignoring the material and highly concentrated and undiversified portfolio of Puerto Rico Debt Securities placed by the government in the Cooperatives—the existence of which was clearly indicated in the statistics and reports publicly disclosed by COSSEC in its own website.   This lack of attention to a material risk was a major omission on the part of COSSEC's management and directors.

## VI.    Systemic scope of risk, losses and damages

65.    The undue concentration of financial risk and losses resulting from the actions and omissions of defendants Commonwealth, GDB and COSSEC are material and significant at the level of each individual Cooperative, but also go beyond these individual institutions to become systemic in nature.

66.    The systemic scope of these risks and damages is evidenced in the holdings of Puerto Rico Debt Securities by approximately 90 of the total 116 Cooperatives.    Moreover, the Cooperatives are intertwined through cross deposits within the system which amount to over $760MM.[23] Although mutual support between cooperative institutions is internationally acknowledged as a governing principle of cooperatives[24] and as a source of strength through mutual support amongst them, this interconnectedness also allows for fast transmission or contagion of financial risks and losses.

67.    As in any system of depository institutions, these systemic risks, losses and damages generate reputational damages, erode public confidence and have generated cycles of withdrawals and loss of liquidity.  These circumstances increase the risks of systemic failure.

68.    This scenario hovers over all Cooperatives, including those that do not hold Puerto Rico Debt Securities.  Furthermore, the insufficiencies of COSSEC's Fiscal Plan to address systemwide needs exposes the system to a "bank holiday" that would limit access to funds.

---

[23] As reported by COSSEC as of December 31, 2017.

[24] *Sixth Cooperative Principle: Co-operation among Co-operatives - Co-operatives serve their members most effectively and strengthen the co-operative movement by working together through local, national, regional and international structures.  See* International Co-operative Alliance, available at https://ica.coop/en/what-co-operative.

69.    The adjustments and sacrifices required for Puerto Rico's fiscal recovery must be carried out while protecting the most vulnerable populations, which include the elderly, pensioners, middle and low-income persons, and students. These populations (to which we can add public employees) comprise the bulk of the members and depositors of the Cooperative Financial System. As per public expressions of the FOMB, implementation of the Fiscal Plans will have direct adverse impacts upon pensioners, public employees and students.

70.    Disregard for these systemic risks exposes these same vulnerable populations to restrictions in the access to funds precisely when they will need them most: (a) to balance reductions of income, (b) to address increases in health and education expenses pursuant to Fiscal Plans required and/or certified by the FOMB, and (c) to overcome the hardships caused by Hurricanes Irma and María.

## IV.    Policy failures and neglect of regulatory duty

71.    By failing to comply with statutory mandates and with ministerial and fiduciary duties, neither the Commonwealth, nor the GDB, nor COSSEC took any measures to address the increasing risk posed by the concentrated portfolio of Puerto Rico Debt Securities in the Cooperatives in the context of Puerto Rico's deepening fiscal crisis—a risk originated and caused by defendants Commonwealth's, GDB's and COSSEC's efforts to place ever increasing amounts of Puerto Rico Debt Securities in the portfolios of Cooperatives.

72.    In contrast to the statutory mandates to safeguard the Cooperative Financial System, the Commonwealth, the GDB and COSSEC remained passive and oblivious to the mounting challenges, limiting themselves to merely measuring and

quantifying the portfolios of Puerto Rico Debt Securities held by Cooperatives.  Actions beyond the mere measuring of these investments were only taken during the second half of 2015 at the instance of leading cooperatives, including a majority of Plaintiffs, which undertook to draft and propose concrete alternatives to provide stability to the system.  Plaintiffs' legislative proposal was adopted as Act 220 of December 15, 2015.

73.    Ironically, while defendants Commonwealth, GDB and COSSEC had no qualms in taking affirmative actions to foster the acquisition of Puerto Rico Debt Securities by Cooperatives, they then opted to abstain from devising and implementing policy measures to mitigate the mounting risks posed by the deepening Fiscal Crisis.

74.    The scope of said crisis was under the direct purview and knowledge of the Puerto Rico Treasury (a constitutional Department of the Commonwealth) and the GDB (the Commonwealth's and COSSEC's Fiscal Agent), both of which were represented in and were members of COSSEC's Board of Directors.

75.    The financial condition of the GDB was under the direct purview of the Office of the Commissioner of Financial Institutions (a Cabinet level agency of the Commonwealth), also a member of COSSEC's Board of Directors.

76.    The imprudent lack of institutional good faith was furthered by COSSEC's failed and incompetent actuarial analysis, which did not account for these risks.  All this amounts to not less than willful blindness by the government's members of COSSEC's Board of Directors.

## VI.    Lack of good faith discussions, and lack of due attention to systemic risks

77.    Prior to the enactment of PROMESA and the designation of the FOMB, Plaintiffs accepted invitations from the Government to hold discussions regarding

Puerto Rico's debt.  To do so, Plaintiffs signed confidentiality agreements on July 17th, 2015 with the GDB as per its requirements and undertook several good faith efforts to reach an agreement to restructure their holdings of Puerto Rico Debt Securities.

78.     The GDB publicly acknowledged "the continuing contribution of the cooperatives in the ongoing discussions regarding Puerto Rico's Fiscal and Economic Growth Plan. Those discussions have focused on the terms of the restructuring and the key role the cooperatives play in promoting social and economic development on the Island."[25]  These contributions included submittal of proposals as early as September 2015.

79.     Plaintiffs also shared their concerns and proposals with Congress, the US Treasury, and the National Credit Union Administration.

80.     Plaintiffs' good faith proposals were ignored by the Commonwealth, the GDB, and COSSEC, and subsequently by the FAFAA and the Oversight Board.

81.     Defendants' reckless failure to comply with their duties to safeguard the Cooperatives and the Cooperative Financial System is also shown in their actions and omissions regarding the proposed Title VI restructuring of the GDB, as provided for in the GDB-RSA of May 15, 2017.

82.     After the lapse of nearly one year following its announcement, presentation of that restructuring to bondholders in a "Solicitation" process as required by Title VI of PROMESA is still pending.

83.     Implementation of the GDB-RSA implies the materialization of significant losses, which in the case of the Cooperatives erodes their regulatory capital and heightens systemic risks.  In spite of having been informed of these circumstances,

---

[25] *See* the GDB Press release of February 1, 2016

Defendants advanced the GDB-RSA without taking any measures to counter these damages and thus comply with Defendants' public, statutory, fiduciary and ministerial duties to safeguard the safety and soundness of the Cooperatives.

84.    The Commonwealth, the GDB, COSSEC, the FAFAA, and the FOMB have disregarded their legal, ministerial and fiduciary public duties and obligations to safeguard the Cooperative Financial System and to protect its members and depositors. In contrast, Plaintiffs sought to mitigate the resulting risks, losses and damages by actively studying, designing and proposing policy actions and financial mechanisms similar to those undertaken by the federal financial regulators to forestall the 2008 financial crisis. Plaintiffs' efforts were met with continued inaction by Defendants.

## VII.    Defendant's failure to comply with statutory, ministerial, fiduciary and equitable obligations

85.    The statutory, ministerial, fiduciary and equitable duties of defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB regarding the Cooperatives and the Cooperative Financial System stem from the special nature and roles of Cooperatives as depository financial institutions, a situation which the Cooperatives share with other credit unions and commercial banks.

86.    This special nature is well explained by the Federal Reserve Bank of Chicago in its Working Paper 2006-01, as follows:[26]

**Why Treat Banks Differently?**
Banks are exempted from the general corporate bankruptcy code and subject to special

---

[26] Bliss, Robert R., Kaufman, George G., U.S. Corporate and Bank Insolvency Regimes: An Economic Comparison and Evaluation, Federal Reserve Bank of Chicago, Working Paper, No. 2006-01, 2006, 10 January 2006.  Available at https://www.chicagofed.org/publications/working-papers/2006/wp-01.

provisions because they are frequently viewed as "special" and different from other firms both in their importance to the aggregate economy and in their financial fragility and vulnerability. Rightly or wrongly, banks are perceived by many to be more important to the efficient functioning of the macro economy than most other firms for a number of reasons including:

- Banks are among broadest of financial institutions and some are individually large relative to GDP.
- Bank deposits (debt) are held by a large proportion of the population, including those of limited financial means and expertise, and in a wide range of denominations, including very small amounts.
- Bank deposits collectively comprise the largest share of the country's money supply and are the primary medium of exchange.
- Banks have a large proportion of their liabilities in very short-term debt that can easily be withdrawn (run).
- Bank deposits represent a significant portion of the public's most liquid assets.
- Banks are major providers of credit to households, business firms, and governments.
- Banks are central to the operation of the payments system.
- Bank assets are widely perceived to be more opaque than assets of most non-bank firms.
- Bank assets can be transferred quickly.
- Banks are closely interconnected through inter-bank deposits and loans.

Evidence clearly demonstrates that the financial health of the banking industry as a whole is vital to the efficient performance of the macro economy. Furthermore, individual bank failures, and particularly large bank failures, are widely perceived to be more damaging to the economy than the failure of other firms of comparable size and to generate particularly significant negative externalities. **It is therefore argued that banks require special handling to reduce the societal cost of insolvency.**[27] The potential disruptions from bank failures may be reduced by tailoring the resolution process to the unique features that make their failures particularly costly. In particular, **bank insolvency procedures attempt to reduce both credit and liquidity losses to depositors and other creditors by permitting–though not necessarily guaranteeing–early, quick, broad, and decisive actions by the delegated government regulator both when insolvency threatens and after the bank is declared insolvent**.[28]

87.     In its adoption of COSSEC's Organic Law, Act 114, the Commonwealth acknowledges this special nature of the Cooperatives, adopts the corresponding regulatory framework and stipulates the inherently public duties and obligations of

---

[27] Footnote 3 of cited document: See *inter alia* Corrigan (1983) and Hüpke (2000). The "banks are special" argument focuses primarily on the banking system as whole and individual large systemically important banks. Less of a case has been articulated for the special importance of individual small banks.

[28] Footnote 4 of cited document: As discussed below, a bank need not be insolvent to be closed by regulators though insolvency is one possible reason for closure. We will use the term "insolvency resolution" for the process that follows the involuntary closing of a bank for any reason.

safeguarding and protecting the solvency of the Cooperatives and the rights and financial interests of their members.[29]

88.    Sections 7(e) and (f) of the Organic Law of COSSEC also state that COSSEC's Board of Directors shall have the following faculties and powers, in addition to any others established in this chapter:

> (e) Adopt the preventive or remedial measures needed to reduce the potential of loss of the insured cooperatives and minimize the losses of the Corporation [COSSEC], including the granting of financial aid in cash or through exchange of financial obligations. When the exchange of obligations is used, those issued by the Corporation shall be considered as capital for the insured cooperative and interest shall be paid over the same, as agreed on by the parties.

> (f)  Ensure that the Corporation [COSSEC] effectively complies with its duty to watch over the financial solvency of the cooperatives.

89.    Furthermore, Section 31 of Act 114 expressly authorizes COSSEC to borrow from the Department of the Treasury of Puerto Rico, and the Secretary of the Treasury is authorized and instructed to loan to COSSEC the funds that from time to time are requested by COSSEC to honor its obligations pursuant to the shares and deposit insurance that COSSEC must provide pursuant to law.  No action by any of the Defendants have been taken in compliance with this section.

90.    After the global financial crisis of 2007–2008, Congress adopted the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, which created a new mechanism for responding to extraordinary circumstances were the failure of financial institutions would otherwise cause severe adverse effects on financial stability—for example, triggering runs, contagion and panic. Under the Dodd-Frank Act, triggering such mechanism requires the US Treasury and the federal banking regulators

---

[29] *See* Articles 4 and 7 of Act 114 (7 L.P.R.A. 1334b and 1334e).

to issue written recommendations regarding certain factors to determine if a systemic

risk determination is warranted. These factors include: (a) the effect that the default of

the financial company would have on financial stability in the United States, and (b) the

effect that the default of the financial company would have on economic conditions or

financial stability for low-income, minority or underserved communities.

91.     The scope of this framework is well explained by the Director of the

Banking Supervision and Regulation Division of the Federal Reserve, in his testimony

before Congress, regarding systemically important financial institutions and the Dodd-

Frank Act:[30]

> The recent financial crisis showed that some financial companies, including
> nonbank financial companies not historically subject to consolidated prudential
> supervision, **had grown so large, leveraged, and interconnected that their**
> **failure could pose a threat to overall financial stability.  The sudden collapses**
> **or near-collapses of major financial companies, and in particular major**
> **nonbank financial companies, were among the most destabilizing events of the**
> **crisis**. … .
>
> As a result of the imprudent risk-taking of major financial companies and the
> perceived severe consequences to the financial system and the economy
> associated with their disorderly failure, the U.S. government (and many foreign
> governments) **intervened to reduce the impact of, or prevent, the failure of**
> **these companies**.

92.     These principles were incorporated into Commonwealth law by Act 40, of

May 6th, 2016, which legislative intent expressly states that:

> This Legislative Assembly considers that it is extremely important to
> incorporate into Law 21-2016 **principles similar to those adopted in the**
> **Dodd-Frank Act to adopt safeguards against systemic risk, to preserve**

---

[30] Testimony of Michael S. Gibson, Director, Division of Banking Supervision and Regulation, before the
Subcommittee on Financial Institutions and Consumer Credit, Committee on Financial Services, U.S. House of
Representatives, Washington, D.C., regarding Systemically important financial institutions and the Dodd-Frank Act.
May 16, 2012.  Available at https://www.federalreserve.gov/newsevents/testimony/gibson20120516a.htm.

**the capacity of depository entities to maintain lending activity and to protect depositors of low and moderate resources**. (Emphasis added).

93.     Consideration of these principles has become necessary due to the interconnection between the GDB and the Cooperatives resulting from the concentrated amounts of GDB Securities sold to the Cooperatives. In that context, the GDB's failure poses a threat to the overall financial stability of the Cooperative Financial System.

94.     In addition to their statutory recognition and inclusion in the organic law of the GDB, these principles constitute a benchmark of diligence in the exercise of the regulatory and public duties of the defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB to safeguard the stability of the Cooperatives and of the Cooperative Financial System.   Furthermore, application of federal standards is consistent with decades of administrative practice by the Commonwealth's financial regulatory agencies.

95.     The statutory framework adopted by the Commonwealth to regulate and supervise Cooperatives imposes public, legal, fiduciary, equitable and statutory obligations over Defendants to safeguard the Cooperatives and the Cooperative Financial System.

96.     Cooperatives can only exist and operate pursuant to that statutory framework.  That is, Plaintiffs cannot exist and operate outside of said framework.

97.     In this compulsory context, through their actions and omissions, defendants Commonwealth, GDB and COSSEC misused that same statutory framework to take material and ever-increasing amounts of the Cooperatives' moneys to use in governmental spending with no source or ability of repayment.

98.     These actions and omissions of Defendants:

36

a. Were and continue to be in violation of their obligations to act in good faith to safeguard the financial stability of the cooperatives;

b. Were and continue to be in violation of Puerto Rico laws, including but not limited to Act 114 and the GDB Organic Act;

c. Were and continue to be in violation of federal and Commonwealth securities laws; and

d. Constitute a taking of Plaintiffs' capital and of their liquidity reserves.

99.   The governmental taking of Plaintiffs' moneys—and, thus, the taking of the savings of Plaintiffs' members and depositors—is further advanced by defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB's proposals to charge the losses resulting from the government's default against the capital and liquid reserves of Cooperatives and against the assets and capital compulsorily provided by the Cooperatives to capitalize and fund COSSEC and the Share and Deposit Insurance Fund.

100.   This pretension is the equivalent of using the resources of COSSEC as a source of repayment of the obligations of the Commonwealth and of other governmental units, which is contrary to PROMESA.

101.   Defendants' proposals in connection with COSSEC's fiscal plan include removing statutory safeguards adopted by Act 220 of December 15, 2015 which prevent penalizing the Cooperatives for the government's default under the guise of regulatory non-compliance. These proposals epitomize defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB's lack of good faith as they seek rigorous regulatory and financial compliance from the Cooperatives, while they totally disregarded complying

with the public duties imposed upon them by that same legal framework.  Accordingly, these proposals are estopped by Defendants' own unclean hands in this matter.

102.   Statutory, ministerial, fiduciary and equitable duties of defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB have required and continue to require from them due and timely actions to safeguard the safety and soundness of Cooperatives.  Actions taken by the Federal Government during the financial crisis of 2008 provide guidance as to the extent and nature of the required actions.

103.   The statutory, ministerial, fiduciary and equitable duties of defendants Commonwealth, GDB, COSSEC, and FAFAA, are heightened by their own nature as expert instrumentalities of the Commonwealth specifically created to carry out specialized financial functions, transactions, regulations and supervisory actions.

104.   Not only have defendants Commonwealth, GDB, COSSEC, and FAFAA, recklessly failed to comply with these statutory, ministerial, fiduciary and equitable duties; their reckless actions and omissions are the cause for the losses, risks and damages that now require reparations to Plaintiffs.

105.   The original cause for these losses, risks and damages—that is, the excessive concentration of Puerto Rico Debt Securities held by the Cooperatives, especially those of the GDB—have been and continue to be compounded by Defendants' failure to discharge their statutory, ministerial, fiduciary and equitable duties to safeguard these financial depository institutions, thus generating systemic and contagion risks, which transmit the fiscal and financial difficulties of the government to the Cooperatives and to the Cooperative Financial System.

## IX.   Defendants' actions and omissions caused damages to the Plaintiffs and the Cooperative Financial System

106.  Since July 2015, Plaintiffs have acted diligently and in good faith to present to the Commonwealth and its pertinent agencies and officials their claims, proposals, comments and recommendations. The same has been done with the FOMB since November 2016.

107.  The specialized nature, functions and expertise of Defendants and of their officers, directors and internal and external advisors allow them an adequate and sufficient knowledge of the extent and nature of Plaintiffs' holdings and of the financial consequences, risks, losses and damages resulting therefrom.

108.  With this understanding, defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB opted for inaction with respect to the risks, losses and damages caused by them to the Cooperatives.

109.  The losses, damages and risks caused by the actions and omissions of Defendants contrast with the safe and sound condition of the Cooperatives that stem from their core operations, as acknowledged by COSSEC, FAFAA and the FOMB in COSSEC's Fiscal Plan.[31]

110.  The actions and omissions of defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB include:

    a.  All the actions, omissions and reckless conduct alleged in paragraphs 1 to 109;

    b.  Failure to comply with the legal, ministerial, public and fiduciary duties to safeguard Cooperatives and the Cooperative Financial System;

    c.  Failure to heed the good faith contractual and extra-contractual obligations imposed by applicable law; and

---

[31] *See* Exhibit C.

    d.  The actual default of various debt instruments, failing to pay both principal and interests thereunder.

111.  As a result of Plaintiffs' regulatory reporting to COSSEC, Defendants have had and continue to have full knowledge of Plaintiffs specific holdings of Puerto Rico Debt Securities, including their amounts and financial terms. That information was the basis for the fiscal plan presented by COSSEC and FAFAA (as fiscal agent of the Commonwealth) which was certified by the FOMB in August 2017. Accordingly, Defendants have had and continue to have full knowledge of:

    a.  The amounts of Puerto Rico Debt Securities held by each Plaintiff;

    b.  The amount of unpaid principal, interests, charges and any other due amounts under the Puerto Rico Debt Securities held by each Plaintiff;

    c.  The amount of market value loss pertaining the Puerto Rico Debt Securities held by each Plaintiff;

    d.  The amount of income lost pertaining the Puerto Rico Debt Securities held by each Plaintiff;

    e.  The amount of reserves, charge-offs and losses under amortization pertaining the Puerto Rico Debt Securities held by each Plaintiff;

    f.  The amount of losses resulting from the sale or disposition of Puerto Rico Debt Securities held by each Plaintiff;

    g.  The changes in assets, deposits, shares, number of members and non-member depositors and income;

all of which amounts constitute the Monetary Damages suffered by Plaintiffs due to the reckless actions and omissions of defendants as alleged in this complaint. Plaintiffs will provide Defendants and the Court those documents and information

pertaining the specific Puerto Rico Debt Securities purchased by them since 2009 pursuant to those safeguards established by the Court consistent with the safety and protection of the financial information of Plaintiffs as regulated depository institutions.

112.   The actions, omissions and reckless conduct of defendants Commonwealth, GDB, COSSEC, FAFAA, and FOMB have caused and continue to cause damages, losses and risks, including:

    a.   Loss of income and principal,

    b.   Loss of capital and liquidity;

    c.   Loss of market value of their Puerto Rico Debt Securities;

    d.   Reputational damage

    e.   Loss of business, loss of members and depositors

    f.   Loss of income due to a reduction of lending in light of the need to increase liquidity reserves; and

    g.   Loss of COSSEC's reserves, which were built and contributed by the Cooperatives and which constitute part of their capital.

113.   Furthermore, the harm and damages caused by Defendants to Plaintiffs and to the Cooperative Financial System has serious adverse effects on the economy and, especially, on low income and underserved communities.

114.   Plaintiffs submitted to the Commonwealth, the GDB, the FAFAA, COSSEC and the Related Issuers written claims regarding these damages and affirming not having waived or renounced any rights and remedies at law or equity, including:

a. Rights and remedies under the applicable provisions of federal and state securities laws and regulations; and

b. Claims with regards to the contractual, extra-contractual, equitable, punitive and any other applicable claims.

115.   All these losses and damages are of an ongoing nature and are subject to subsequent increases.

### CLAIMS FOR RELIEF

### *Count One*

### EXCEPTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 105

116.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 115 of the instant complaint. Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.   All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

117.   PROMESA incorporates several sections of the Bankruptcy Code, including 11 U.S.C. § 105 and 11 U.S.C. § 944. *See* 48 U.S.C. §2161.

118.   Section 105 of the Bankruptcy Code empowers this Honorable Court to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

119.   Defendants GDB, COSSEC, and Commonwealth, acting in concert, willfully and maliciously plotted a scheme of false representations in order to appropriate funds from the Cooperatives. Codefendants COFINA, Puerto Rico Highway and Transportation Authority, Employee Retirement System of the Government of the

Commonwealth of Puerto Rico and Puerto Rico Electric Power Authority aided, abetted and benefited from such actions. This Honorable Court has powers both under 11 U.S.C. § 105 and as an Article III Judge to deny discharge relating to a debt for money, to the extent obtained by false pretenses, a false representation, or actual fraud, and from obtaining benefit from such behavior.

120.   Furthermore, this Honorable Court is also empowered to deny discharge relating to a debt for fraud and/or defalcation while acting in a fiduciary capacity, embezzlement or larceny. Therefore, Plaintiffs' claims against the Commonwealth and the other Title III Debtors named herein are non-dischargeable.

121.   Discharge of debts is available only to honest debtors. Codefendants Commonwealth and the other Title III Debtors named herein were not honest to Plaintiffs. Codefendants Commonwealth and the other Title III Debtors by themselves and through their agents GDB and COSSEC sold unsound Puerto Rico debt securities to Plaintiffs under false pretenses, false representations, misleading information, material omissions and, as stated above, committing actual fraud.

122.   Defendants utilized their political and regulatory power to improperly avail of the Cooperatives assets by authorizing Plaintiffs to purchase unsound Puerto Rico debt securities. By doing so, Defendants also defalcated Plaintiffs while acting in their fiduciary capacity.

123.   Defendants offered and sold Plaintiffs unsafe Puerto Rico Debt Securities stating that payment of principal and interest of these debt instruments were 100% guaranteed by the government of Puerto Rico.

124.   COSSEC, acting in concert with the GDB and the Commonwealth, and exerting its authority as regulator of the Cooperatives, issued several circular letters to

expressly advance the offer and sale of unsound Puerto Rico Debt Securities with the intent to deceive Plaintiffs and other members of the Cooperative Financial System.

125.   When investing and purchasing such bonds, Plaintiffs relied in these expressions of COSSEC and the GDB, and in Defendants' deceitful strategy to avail themselves of the Cooperatives' assets.

126.   In light of such deceitful behavior, defendants Commonwealth of Puerto Rico and its instrumentalities are not entitled to obtain a discharge under the reorganization process within PROMESA.

127.   Codefendants COFINA, Puerto Rico Highway and Transportation Authority, Employee Retirement System of the Government of the Commonwealth of Puerto Rico and Puerto Rico Electric Power Authority as beneficiaries of the scheme to sell unsound debt securities to Cooperatives are not entitled to obtain discharge under debt reduction and/or adjustment plans under PROMESA.

128.   Plaintiffs hereby seek from this Honorable Court to enter an order and/or judgment excepting from discharge any and all claims Plaintiff have against Defendants and Related Issuers.

129.   Plaintiffs hereby request from this Honorable Court to enter an order and/or judgment declaring Plaintiffs' claims against Defendants under Title III to be exempted from the discharge that the confirmation of a Plan of Adjustment of Debts under PROMESA might entail pursuant to 11 U.S.C. § 944.

130.   Plaintiffs also request from this Honorable Court to enter an order and/or a judgment that their claims against Defendants under Title III be exempted from discharge in the order confirming their plans. *See* 11 U.S.C. § 944 (b) and (c).

*Count Two*

**DECLARATORY JUDGMENT AND EXCEPTION TO DISCHARGE PURSUANT TO**

**PROMESA PROVISIONS**

131.    Plaintiffs herein allege and incorporate by reference paragraphs 1 to 130 of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.  All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

132.    Congress enacted the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA") in 2016. 42 U.S.C. § 2121, *et. seq.* PROMESA is designed to assist Puerto Rico in achieving financial stability. *See* 48 U.S.C. § 2141(b)(1)(B). Congress was motivated to act based, in part, on its finding that "[a]s a result of its fiscal emergency, the Government of Puerto Rico has been unable to provide its citizens with effective services." 48 U.S.C. § 2194(m)(2).

133.    PROMESA provides a process for adjusting the debts of the Commonwealth under the supervision of a Court, 48 U.S.C. § 2161, *et. seq.*, and prohibits "the discharge of obligations under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties." 48 U.S.C. § 2164(h).

134.    In light of the special nature of Plaintiffs as depository institutions and of the unique circumstances under which the Commonwealth availed itself of Plaintiffs'

assets, Plaintiffs hereby request from this Honorable Court declaratory, injunctive and equitable relief pursuant to the applicable provisions of PROMESA and the applicable provisions of the Bankruptcy Code, to the effect that:

    a. For purposes of the eventual Plan of Adjustment of Debts of the Commonwealth and of any covered entity under PROMESA, Plaintiffs' claims justify their designation as a separate class pursuant to the applicable provisions.

    b. A discharge and/or impairment of the claims of Plaintiffs against the Commonwealth and against any covered entity under PROMESA is contrary to the purposes and policy of PROMESA and of the Bankruptcy Code.

    c. For purposes of the proceedings under PROMESA, all amounts owed to Plaintiffs by the Commonwealth and any covered entity under PROMESA be declared to be non-dischargeable for purposes of the eventual Plan of Adjustment of Debts.

### *Count Three*

### BREACH OF CONTRACT AND WARRANTIES, PROMISSORY ESTOPPEL

135.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 134 of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.  All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

136.   As herein described, defendants GDB, COSSEC, and Commonwealth,

acting in concert, willfully and maliciously breached the terms and conditions of their agreements with Plaintiffs, written and oral, express and implied. Plaintiffs suffered damages as a result of such breaches. Defendants are liable to Plaintiffs for the damages caused by all such breaches, according to the laws of Puerto Rico as well as any laws of the United States which may apply.

137.   As herein described, Defendants breached warranties owed to Plaintiffs, both express and implied.  Plaintiffs suffered damages as a result of said breaches. As such, Defendants are liable to Plaintiffs for the damages caused by all such breaches. As herein described, Defendants made representations to Plaintiffs, upon which Plaintiffs relied to their detriment, and are therefore estopped to deny such representations.

*Count Four*

**VIOLATION OF SECURITIES STATUTES**

138.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 137 of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.  All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

139.   As herein described, defendants GDB, COSSEC, and Commonwealth knew or should have known, or were reckless in not knowing that their actions and omissions constituted violations of the provisions of the Puerto Rico securities statutes, including 10 L.P.R.A. § 851, *et seq.*, which entitles Plaintiffs to the damages described herein, including *damages*, *interests, attorney's fees, and costs* of the transactions

described herein.   Plaintiffs therefore seek all relief available under such legislation.

140.   Additionally, as herein described, Defendants and/or their current and former agents violated federal securities statutes and rules of the exchanges and SEC, including, *inter alia*, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5 thereunder, 17 C.F.R. § 240.10-b-5., Section 15c2-12, 17 C.F.R. 240.15c2-12, and the rules of SRO organizations, such as FINRA. Plaintiffs therefore seek all relief available under such rules and legislations.

141.   By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the offer, purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or the mails:

a.      Employed devices, schemes, or artifices to defraud;

b.      Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.      Engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security, in this case the Puerto Rico Debt Securities.

*Count Five*

**VIOLATIONS OF FAULT/NEGLIGENCE STATUTES**

142.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 141 of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.  All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the

48

Plaintiffs.

143.   As herein described, defendants GDB, COSSEC, and Commonwealth,
acting in concert, violated the fault and negligence statutes of Puerto Rico, including 31
L.P.R.A. § 5141, 31 L.P.R.A. § 3020, and 31 L.P.R.A. § 3021 *et seq.*, which provide for
civil recovery for the damages caused by any and all acts or omissions through the fault
or negligence of another. Defendants GDB, COSSEC, and Commonwealth and their
agents owed Plaintiffs ministerial and statutory duties, duties of good faith and duties of
fair dealing and care. The damages suffered by Plaintiffs and described herein occurred
as a result of the fault and/or negligence of Defendants.  Plaintiffs therefore seek from
Defendants all relief available under such legislation, including, but not limited to,
rescission of all transactions under 31 L.P.R.A. § 3052.

### *Count Six*

### VIOLATION OF FIDUCIARY/OFFICIOUS MANAGER STATUTES

144.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 143
of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative
Financial System.  All allegations, pleadings and claims regarding actions and
omissions of Defendants with respect to Cooperatives and the Cooperative Financial
System are hereby specifically pled, alleged and claimed by each and every one of the
Plaintiffs.

145.   Defendants GDB, COSSEC, and Commonwealth owed a fiduciary duty to
Plaintiffs, also called a duty of officious manager. Such a duty required Defendants to
place Plaintiffs' interests above their own, and to operate in good faith and deal fairly
with Plaintiffs in all their relationships. By civil statute, Defendants were obligated to
"fulfill [their] charge with all the diligence of a good father of a family and indemnify for

injuries which, through [their] fault or negligence, may be caused to the owner of the property or business he may be managing." 31 L.P.R.A. § 3052.

146.   Plaintiffs suffered injuries, which were caused by Defendants' acts and omissions in violation of their fiduciary and officious manager duties to Plaintiffs.

### *Count Seven*

### VIOLATIONS OF FRAUD, MISREPRESENATION AND OMISSION STATUTES

147.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 146 of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.  All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

148.   As herein described, defendants GDB, COSSEC, and Commonwealth, acting in concert, willfully and maliciously perpetrated a fraud on Plaintiffs, both by action and omission, and are liable to Plaintiffs for all losses resulting from that fraud in accordance with 31 L.P.R.A. § 3018, 31 L.P.R.A. § 3019 *et seq.*, and other statutes of Puerto Rico outlawing fraudulent behavior and providing for the recovery of damages for losses incurred as a result of fraud or rescission of fraudulent transactions. Plaintiffs therefore seek from Defendants all relief available under such legislation, including damages for all losses and rescission of all transactions.

### *Count Eight*

### CLAIMS UNDER COMMON LAW

149.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 148 of this Complaint. Each Plaintiff is a Cooperative and is part of the Cooperative

Financial System.  All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

150.   As described above, defendants GDB, COSSEC, and Commonwealth, through the actions and omissions of their agents, are liable to Plaintiffs for their intentional and negligent misrepresentations and omissions of material fact, upon which they intended for Plaintiffs to rely, and Plaintiffs did rely, causing damages.

151.   Through their wrongful acts and self-dealing, Defendants and their current and former agents were unjustly enriched by their receipt of profits, commissions, mark-ups, mark-downs, fees, and/or spreads and should be required to disgorge any profits from their wrongful conduct.

152.   As described above, Defendants and their current and former agents were fiduciaries to Plaintiffs, and breached their fiduciary duties, as well as their duty to Plaintiffs of good faith and fair dealing.

153.   As described above, Defendants and their current and former agents owed duties to Plaintiffs, breached those duties, and proximately and otherwise caused damages to Plaintiffs, including lost assets, lost opportunities, consequential losses, and injury to Plaintiffs' reputation and property. Defendants are therefore liable to Plaintiffs under the laws of Puerto Rico and any other state of federal law for all such damages to Plaintiffs.

### *Count Nine*

### VICARIOUS AND JOINT AND SEVERABLE LIABILITY

154.   Plaintiffs herein allege and incorporate by reference paragraphs 1 to 153

of this Complaint.   Each Plaintiff is a Cooperative and is part of the Cooperative Financial System.   All allegations, pleadings and claims regarding actions and omissions of Defendants with respect to Cooperatives and the Cooperative Financial System are hereby specifically pled, alleged and claimed by each and every one of the Plaintiffs.

155.   During the time of the acts of Defendants that harmed Plaintiffs, Defendants' officers, representatives, advisors and agents, together with their supervisors and co-workers, were agents of, employed by, and had actual and apparent authority to represent Defendants. Therefore, Plaintiffs invoke the doctrines of agency liability, "*respondeat superior*" and vicarious responsibility for acts of the agents/employees of Defendants.

156.   Defendants and their current and former agents committed all or part of the above-described acts which caused harm to Plaintiffs. Defendants and their current and former agents benefited from all such acts. Defendants aided and abetted their agents in the commission of those acts, and Defendants conspired with their agents and each other to commit such acts.  Therefore, as a matter of law, Defendants are liable for the wrongful actions of their current and former agents under federal legislation and under federal law and the laws of Puerto Rico and should be held liable for every act and for any and all damages produced in any manner to Plaintiffs.

## PRAYER AND REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs seek that an award be entered ordering Defendants to pay to Plaintiffs the Monetary Damages, as alleged in paragraph 111 of this complaint, exclusive of all consequential damages and statutory and/or punitive damages, plus interest and costs, including attorney's fees, an amount

which Plaintiffs reserve the right to amend at any time. Plaintiffs also respectfully request as follows:

1.      The entry of an Order and/or Judgment declaring that Plaintiffs' claims (including the claims for Monetary Damages) against all defendants under Title III of PROMESA are exempted from the discharge that the confirmation of a plan of adjustment of debts might entail pursuant to 11 U.S.C. § 944.

2.      The entry of a specific provision in each of the orders confirming plans for each of the defendants under Title III of PROMESA declaring that Plaintiffs' claims (including the claims for Monetary Damages) against Defendants as described herein are exempted from discharge.

3.      The declaratory, injunctive and equitable reliefs requested in this complaint.

4.      All sums lost in the value of the Puerto Rico Debt Securities acquired by the Cooperatives; plus, additionally or alternatively,

5.      All lost opportunities incurred as a result of Defendants' acts and/or omissions; plus, additionally or alternatively,

6.      Rescission of any or all transactions as sought; plus, additionally or alternatively,

7.      Statutory damages as provided by applicable law; plus, additionally or alternatively,

8.      Punitive damages in an amount that the Court shall deem appropriate; plus, additionally or alternatively,

9.      Pre-award and pre-judgment interest on all sums invested from the date deposited until the date of the judgment and until such sums are paid, all at the highest

53

rate allowed by law; plus, additionally or alternatively,

10.     Any and all other relief available to Plaintiffs, in law or equity or otherwise,

which may be granted by this Honorable Court,

11.     All costs of these proceedings and for recovery of damages incurred,

including legal fees, including while on appeal, if any, and for collection.

Respectfully submitted.

In San Juan, Puerto Rico this 22nd day of March, 2018.

s/HARRY ANDUZE MONTAÑO-114910
s/JOSE A. MORALES BOSCIO-220614
1454 Fernández Juncos Avenue
San Juan PR  00909
Tel. (787) 723-7171
Fax (787) 723-7278
Email: handuze@microjuris.com
            jmoralesb@microjuris.com