# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### RESPONSE TO OBJECTIONS OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP. AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO THE MAGISTRATE JUDGE'S FEBRUARY 26, 2018 ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW ................................................................................................ 4

    I.    JUDGE DEIN CORRECTLY CONCLUDED THAT CERTAIN MATERIALS COULD BE WITHHELD FROM PRODUCTION ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS, SUBJECT TO CATEGORICAL LOGGING. ............................................................................. 5

        A.    Respondents Have Provided and Will Continue to Provide Factual Materials Underlying the Certified Commonwealth Fiscal Plans. ............ 7

        B.    The Privilege Applies Between The Oversight Board and Commonwealth Agencies. ........................................................................ 9

        C.    The Privilege Extends to Deliberations Involving the Government and the Oversight Boards' Consultants...................................................... 11

        D.    Judge Dein's Decision to Honor the Deliberative Process Privilege over Fiscal Plan Deliberations was not Clearly Erroneous....................... 12

CONCLUSION.................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambac Assurance Corp. v. Commonwealth of Puerto Rico, et al.*,
   No. 17-00159-LTS, Dkt. No. 156 (D.P.R. Feb. 27, 2018) ...................................................... 13

*Carter v. U.S. Dep't of Commerce*,
   307 F.3d 1084 (9th Cir. 2002) .................................................................................................. 5

*Dept. of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ........................................................................................................... 5, 6, 11

*Dipace v. Goord*,
   218 F.R.D. 399 (S.D.N.Y. 2003) .............................................................................................. 9

*Fox News Network, LLC v. U.S. Dep't of The Treasury*,
   739 F. Supp. 2d 515 (S.D.N.Y. 2010) .................................................................................... 10

*Goldenson v. Steffens*,
   2013 WL 145587 (D. Me. Jan. 14, 2013) ................................................................................. 5

*Hunton & Williams LLP v. U.S. Envtl. Protection Agency*,
   248 F. Supp. 3d 220 (D.D.C. 2017) .......................................................................................... 9

*In re Eagle-Picher Indus.*,
   169 B.R. 130 (Bankr. S.D. Ohio 1994) ..................................................................................... 7

*In re Franklin Nat'l Bank Sec. Litig*,
   478 F. Supp.577 (E.D.N.Y. 1979) .......................................................................................... 12

*In re Pittsburgh Corning Corp.*,
   Case No. 00-22876 (JKF) (Bankr. W.D. Pa.) (Feb. 19 Tr. ) ..................................................... 7

*Jud. Watch, Inc. v. U.S. Dep't of the Treasury*,
   796 F. Supp. 2d 13 (D.D.C. 2011) ............................................................................................ 6

*Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*,
   610 F.2d 70 (2d Cir. 1979) ....................................................................................................... 8

*McKesson Governmental Entities Average Wholesale Price Litig.*,
   264 F.R.D. 595 (N.D. Cal. 2009) ............................................................................................ 12

*Melendez-Colon v. United States*
   56 F. Supp. 2d 142 (D.P.R. 1999) ........................................................................................... 12

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
   861 F.2d 1114 (9th Cir. 1988) ................................................................................................6

*New Hampshire Right to Life v. U.S. Dept. of Health and Hum. Services*,
   778 F.3d 43 (1st Cir. 2015) ......................................................................................................6

*PowerShare, Inc. v. Syntel, Inc.*,
   597, F.3d 10 (1st Cir. 2010) ................................................................................................4, 5

*Providence Journal Co. v. U.S. Dep't of Army*,
   918 F.2d 552 (1st Cir. 1992) ....................................................................................................8

*Shell Oil Co. v. I.R.S.*,
   772 F. Supp. 202 (D. Del. 1991) ............................................................................................12

*Soghoian v. Office of Management and Budget*,
   932 F. Supp. 2d 167 (D.D.C. 2013) ....................................................................................8, 9

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
   60 F.3d 867 (1st Cir. 1995) ...............................................................................................6, 12

*Tigue v. U.S. Dep't of Justice*,
   312 F.3d 70 (2d Cir. 2002) .....................................................................................................11

*United States v. Rhode Island*,
   2016 U.S. Dist. LEXIS 123088 (D.R.I. Sept. 12, 2016) .........................................................4

*W Holding Co. v. Chartis Ins. Co. of P.R.*,
   42 F. Supp. 3d 319 (D.P.R. 2014) ...........................................................................................6

**Statutes**

28 U.S.C. § 636 ..............................................................................................................................4

PROMESA § 101(c)(1) ..............................................................................................................3, 9

PROMESA § 106(e) .................................................................................................................1, 13

PROMESA § 201(f) .....................................................................................................................10

PROMESA § 315(b) ......................................................................................................................1

**Rules**

Fed. R. Civ. P. 72(a) ......................................................................................................................4

Fed. R. Bankr. P. 2004 ...............................................................................................................2, 5

iii

The Commonwealth of Puerto Rico (the "Commonwealth"), as a Title III Debtor, by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with the Commonwealth and Oversight Board, "Respondents"), respond to the *Objections of Assured Guaranty Corp., Assured Guaranty Municipal Corp. and National Public Finance Guarantee Corporation to the Magistrate Judge's February 26, 2018 Order*. ECF No. 2707 (the "Objection").

## INTRODUCTION

Respondents have produced extensive materials regarding the Commonwealth's financial condition to the public and to creditors, and Respondents have committed to producing a robust set of documents and information regarding the new Commonwealth Fiscal Plan, once it is certified. Nonetheless, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation ("Objectors") have consistently demanded every interim draft and working paper, and every communication between the Government, the Oversight Board, and their respective advisors concerning the development of the 2017 Commonwealth Fiscal Plan (which is now obsolete) and the 2018 Commonwealth plan still in development. Objectors' demands show no regard for the cost and burden to the Commonwealth and no respect for the critical policy interest in preserving full and frank deliberations between and among the Commonwealth, the FOMB and their respective advisors on matters of indisputable public import.[2]

---

[2] Objectors also disregard the fact that this entire discovery dispute is occurring within the unique context of Fiscal Plans whose certifications cannot be contested as provided by PROMESA § 106(e). *See Opinion and Order Granting the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)*, Adv. Proc. No. 17-159 (ECF No. 156), at 20. Any action to contest the 2017 Commonwealth Fiscal Plan and the

1

Judge Dein properly rejected Objectors' demands, her order should be sustained, and the Objection overruled. Specifically, on February 26, 2018, Judge Dein issued an order holding that certain materials created by Respondents were properly protected by the deliberative process privilege. The order balanced creditors' demands for information with other competing policy objectives, including efficiency and the conservation of scarce resources. While Judge Dein allowed a Rule 2004 examination as to particular Rule 2004 requests, the Court found some of Objectors' requests invaded Respondents' legitimate interest in protecting the fiscal plan deliberations. The Court held that "[t]hose communications or documents which led to the creation of the final 2017 and 2018 Plans are subject to the deliberative process privilege and may be withheld from production." ECF No. 2590 at 5 ("February 26 Order"). Judge Dein ordered Respondents to produce a categorical privilege log including these materials, and adopted a procedure proposed by the parties earlier in the proceeding for resolution of any disputes arising out of the privilege log. *Id.* at 5-6, 12. Respondents are currently undergoing the time-consuming process of categorizing over a years' worth of documents regarding such deliberations to satisfy the order, and have agreed with the moving parties on the Rule 2004 Requests—the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, the Mutual Fund Group, and the Objectors (collectively, "Movants")[3]— to produce a log by March 30, 2018.

Rather than engage in good faith in the process ordered by Judge Dein, Objectors want this Court to compel disclosure of all of the Oversight Board and the Commonwealth's

---

still-developing 2018 Commonwealth Fiscal Plan would be met with an early dispositive motion to dismiss for lack of subject matter jurisdiction before any discovery is taken. Accordingly, while Respondents believe no discovery is appropriate in respect of the 2017 and 2018 Commonwealth Fiscal Plans because Congress clearly intended to put them outside the permissible universe of litigable issues, the Board is not appealing Judge Dein's ordering of some discovery in respect of the plans, but also is not waiving the fact that the discovery ordered need not have been ordered.

[3] Some of the Movants on the Renewed Joint Requests are not parties to the Objection. The term "Objectors" refers to the parties to the Objection. The term "Movants" refers to the moving parties on the Renewed Joint Requests.

2

deliberations leading up to the obsolete 2017 Commonwealth Fiscal Plan, and the entirety of ongoing deliberations with respect to the 2018 Commonwealth Fiscal Plan still in development. *See* Objection, ECF No. 2707. Objectors raise four principal objections to Judge Dein's decision, each of which fails.

*First*, Objectors erroneously contend that Judge Dein's order applies the deliberative process privilege to purely factual materials and demand that Respondents conduct a burdensome document-by-document review to segregate any factual materials from their deliberations. Not so. Judge Dein found that pre-decisional materials leading up to the published fiscal plans could be withheld from production, subject to categorical logging. This finding was not erroneous (much less "clearly erroneous" as would be required to disturb her decision under First Circuit law).

*Second*, Objectors claim, without supporting authority, that Judge Dein erred by holding that the deliberative process privilege covers communications between the Government and Oversight Board. Objectors posit that the privilege could never apply between the Oversight Board and the Government because they are distinct legal entities with differences of opinion during Fiscal Plan development. This is incorrect for two reasons. First, under PROMESA the Oversight Board is part of the government of Puerto Rico. PROMESA § 101(c)(1). Applicable law is clear — communications between separate government agencies are covered by the deliberative process privilege. Second, Objectors' argument would gut the privilege. The privilege exists to foster frank deliberations on policy issues, including deliberations where the participants disagree.

*Third*, Objectors contend that Judge Dein erred by applying the deliberative process privilege to communications between Respondents and their consultants, reasoning that

3

Respondents had not demonstrated that their consultants were actively involved in the deliberative process. This is both wrong on the merits and wrong on timing. The Objection concedes the consultants' integral participation in the Fiscal Plan development process. And it is premature: Respondents will shortly produce a categorical privilege log demonstrating their consultants' involvement in deliberations.

*Fourth*, Objectors contend that Judge Dein erred in applying the deliberative process privilege to Fiscal Plan deliberations because creditors' interest in disclosure purportedly overrides the privilege. Objectors' make only vague references to "transparency" to support this claim. While Respondents are committed to transparency with respect to post-decisional materials, they have a strong interest in preserving full and frank deliberations supporting public policy decisions of enormous consequence. Disclosing all communications between the Government, the Oversight Board, and their respective advisors would chill deliberations, and hinder cooperation between the Government and the Oversight Board, injecting inefficiencies and even more cost into these proceedings. Accordingly, Judge Dein's application of the privilege to Fiscal Plan deliberations was not clearly erroneous.

For these reasons, as set forth more fully below, Respondents respectfully request that the Objection be overruled.

## STANDARD OF REVIEW

Judge Dein's order, which is a non-dispositive pretrial matter, must be sustained unless it "is clearly erroneous or is contrary to law." 28 U.S.C. § 636; Fed. R. Civ. P. 72(a); *PowerShare, Inc. v. Syntel, Inc.*, 597, F.3d 10, 15 (1st Cir. 2010). Courts in the First Circuit apply the "clearly erroneous" standard to a magistrate judge's discovery orders, including those involving privilege issues. *See, e.g.*, *United States v. Rhode Island*, 2016 U.S. Dist. LEXIS 123088, *3–4 (D.R.I. Sept. 12, 2016) ("District courts review discovery rulings by a magistrate judge under the clearly

4

erroneous standard."); *Goldenson v. Steffens*, 2013 WL 145587, *9 (D. Me. Jan. 14, 2013) (concluding that the clearly erroneous standard applies to evaluation of attorney-client privilege claim).[4]

While this Court should review Judge Dein's decision under the "clearly erroneous" standard, the ruling satisfies any applicable standard of review.

**I.  JUDGE DEIN CORRECTLY CONCLUDED THAT CERTAIN MATERIALS COULD BE WITHHELD FROM PRODUCTION ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS, SUBJECT TO CATEGORICAL LOGGING.**

In their Rule 2004 discovery requests, Movants demand production of all internal communications and documents exchanged between and among the Commonwealth, AAFAF and the Oversight Board, and their respective advisors, regarding both the March 2017 Commonwealth Fiscal Plan and the ongoing development of the new Fiscal Plans. Judge Dein's determination that "[t]he internal communications leading up to [the final 2017 and 2018 Commonwealth Fiscal Plans], as well as the drafts preceding the final plans, fall squarely within the deliberative process privilege" (February 26 Order, ECF No. 2590 at 5) was neither clearly erroneous nor contrary to law.

The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting frank discussions among those who make them within the Government." *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal citations and quotation marks omitted). "The purpose of [the] privilege is to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Carter v.*

---

[4] While Objectors argue that "questions regarding privilege are questions of law" subject to *de novo* review, the case they cite for this proposition involved construction of an arbitration clause, not any issues regarding privilege. *PowerShare*, 597 F.3d 10; Objection, ECF No. 2707 at 3.

5

*U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). The deliberative process privilege facilitates government decision making by: "(1) assuring subordinates will feel free to provide uninhibited opinions, (2) protecting against premature disclosure of proposed government policies, and (3) preventing confusion among the public that may result from releasing various rationales for agency action." *New Hampshire Right to Life v. U.S. Dept. of Health and Hum. Services*, 778 F.3d 43, 52 (1st Cir. 2015). The privilege applies to communications that are "(1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)).[5]

While certified Fiscal Plans, raw data, models, underlying data, formulae, and inputs (all of which have been or will be made available to Movants) are not necessarily subject to the privilege, communications between and among the Commonwealth, AAFAF and the Oversight Board, as well as the deliberative materials used to create fiscal plans and drafts thereof, are textbook examples of materials covered by the privilege which are immune from disclosure. *See Klamath*, 532 U.S. at 8 (deliberative process covers "deliberations comprising part of a process by which governmental decisions and policies are formulated"); *Jud. Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011) (post-decisional "documents properly fall under the deliberative process privilege when they recount or reflect pre-decisional deliberations" and documents "generated as part of a continuous process of agency decision-making" were protected by the deliberative process privilege). Permitting discovery of all drafts, internal memoranda, and communications between and among the Commonwealth, AAFAF, and

---

[5] The deliberative process privilege is the federal counterpart of Puerto Rico's official information privilege. *See W Holding Co. v. Chartis Ins. Co. of P.R.*, 42 F. Supp. 3d 319, 324 (D.P.R. 2014) (characterizing Puerto Rico's official information privilege and federal deliberative process privilege as "essentially co-extensive").

6

the Oversight Board leading up to the submission, review and certification of the 2017 Fiscal Plan and the revised Fiscal Plan being developed would undermine the essential interests the privilege is intended to protect.

Moreover, application of the deliberative process here is fully consistent with case law under the Bankruptcy Code, which has long held that draft bankruptcy plans are not discoverable. *See In re Eagle-Picher Indus.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) ("A creditor has no right to see the draft of a plan before its completion...") (denying Rule 2004 motion); *In re Pittsburgh Corning Corp.*, Case No. 00-22876 (JKF) (Bankr. W.D. Pa.) (Feb. 19, 2004 Tr. at 64) ("Prior drafts of the plan are not discoverable, they're not admissible, they're wholly irrelevant….").

### A. Respondents Have Provided and Will Continue to Provide Factual Materials Underlying the Certified Commonwealth Fiscal Plans.

Objectors claim Judge Dein's order improperly extends the deliberative process privilege to cover purely factual materials. Objection, ECF No. 2707 at 3–6. This is incorrect: Judge Dein never held that purely factual materials are privileged. In fact, Respondents have made the factual materials underlying the 2017 Commonwealth Fiscal Plan available and have agreed to do the same with respect to the 2018 Commonwealth Fiscal Plan once it is certified. *See* ECF No. 1928 at 22–23, 28–33. Movants have raised no issue with this production of factual materials. *See* February 26, 2018 Order, ECF No. 2590 at 6 ("Movants have reported that they have received information sufficient to respond to the requests for Fiscal Plan Development Materials relating to the 2017 Plan, and have requested similar information related to the 2018 Plan.").

Even though they have (or will have) sufficient factual information to evaluate the new fiscal plan, Objectors want to force Respondents to compile every scrap of paper used in the

7

development of the Fiscal Plans and engage in a costly review of those documents to segregate deliberative comments from underlying facts. Objection, ECF No. 2707 at 6, n.5. Judge Dein correctly determined that this burden was unjustified. *See* February 26, 2018 Order, ECF No. 2590 at 5 & n.6 (finding demand that Respondents be ordered to include the number of documents that fall within each category in a privilege log would be unduly burdensome).

Moreover, the stated motivation for this demand is to discover "which data was relied on and which data was left on the cutting room floor." ECF No. 2223 at 5. But Objectors cannot eviscerate the deliberative process under the guise of seeking "factual" materials. As the Second Circuit has held:

> Once again, instead of merely combing the documents for "purely factual" tidbits, the court should have considered the segments in the context of the whole document and that document's relation to the administrative process which generated it. If the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so. It might indeed facilitate LIA's attack on the standards if it could know in just what respects the Assistant Secretary departed from the staff reports she had before her. **But such disclosure of the internal workings of the agency is exactly what the law forbids.**

*Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 86 (2d Cir. 1979) (internal citations omitted; emphasis added); *see also Providence Journal Co. v. U.S. Dep't of Army*, 918 F.2d 552, 562 (1st Cir. 1992) ("Even when requested material is found to be factual, the courts have held it exempt where they were convinced that disclosure would expose an agency's decisionmaking process . . . .") (internal quotation marks omitted); *Soghoian v. Office of Management and Budget*, 932 F. Supp. 2d 167, 183 (D.D.C. 2013) ("Forcing the agency to identify differences between drafts and final versions would undermine the protection afforded

8

by the deliberative process privilege, as it would grant requesters the right to review agency employees' suggestions that are then rejected in favor of alternatives.") (citing *Lead Industries*).

Accordingly, Respondents should not be required to divert resources already stretched thin to the exercise of reviewing the entirety of their Fiscal Plan deliberations to attempt segregate purely factual materials. *See Soghoian*, 932 F. Supp. 2d at 183 (declining to order defendant to review its privilege withholdings to segregate post-decisional information).

### B. The Privilege Applies Between The Oversight Board and Commonwealth Agencies.

Objectors argue that the deliberative process privilege cannot attach to fiscal plan deliberations between the Commonwealth and AAFAF, on the one hand, and the Oversight Board on the other. First, Objectors attempt to cast the Oversight Board as an unrelated "third party" such that the Commonwealth's disclosure of pre-decisional information to it would destroy the privilege. *See* Objection, ECF No. 2707 at 7-8. Objectors point to the fact that the Commonwealth, AAFAF, and the Oversight Board are distinct legal entities to suggest the privilege could not apply deliberations between them. *Id.* at 7. To put it mildly, this point is poorly taken. While the Oversight Board, the Commonwealth and AAFAF are separate legal entities for some purposes, the Oversight Board (like the other two Respondents) is "an entity within the territorial government" of Puerto Rico. PROMESA § 101(c)(1). The deliberative process privilege attaches to deliberations between governmental entities. *See, e.g.*, *Hunton & Williams LLP v. U.S. Envtl. Protection Agency*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) ("The deliberative process can—as it did here—span between two different agencies."); *Dipace v. Goord*, 218 F.R.D. 399, 403 (S.D.N.Y. 2003) ("The privilege applies to both intra-agency and inter-agency communications.").

9

Second, Objectors contend that the privilege cannot apply to Fiscal Plan deliberations between the Commonwealth and the Oversight Board because PROMESA supposedly dictates that they "are not intended to act as a unit with respect to the development, negotiation and certification of fiscal plans." Objection, ECF No. 2707 at 7. Objectors misread PROMESA. PROMESA contemplates various paths for the development of a fiscal plan, including that the Governor (through his designees, including AAFAF) and the Oversight Board may jointly develop a fiscal plan. *See* Section 201(f) (providing for joint development of the fiscal plan). Stripping applicable privileges from any communications between the Oversight Board and other Commonwealth Government agencies would thwart the very cooperation that PROMESA encourages.

Third, Objectors contend that because the Commonwealth and its instrumentalities have, at times, had "divergent interests" from the Oversight Board the privilege could not apply. Objection, ECF No. 2707 at 7–8. Objectors point to the evolution of the terms of the Commonwealth Fiscal Plan over the course of the Commonwealth and Oversight Board's deliberations as somehow negating the deliberative process privilege. *Id.* at 8. Unsurprisingly, Objectors cite no legal authority whatsoever to support their suggestion that participants in a deliberative process must be in full agreement at all times for their deliberations to be protected from disclosure. *Cf. Fox News Network, LLC v. U.S. Dep't of The Treasury*, 739 F. Supp. 2d 515, 540, n.5 (S.D.N.Y. 2010) (noting that deliberative process would apply between government agencies "even if [one agency's] employees were representing separate interests or taking policy positions different than those of [another agency's] employees" and that "the interests of various agencies often diverge based on their different areas of responsibility and expertise."). Indeed, such a rule would undermine the purpose of the privilege—to protect full

10

and frank deliberations by participants expressing different points of view and engaging in debate in order to achieve the best policy result.

        C.       **The Privilege Extends to Deliberations Involving the Government and the Oversight Boards' Consultants.**

Objectors concede that outside consultants fall within the scope of the deliberative process when they are active participants in the deliberation. Objection, ECF No. 2707 at 9 (citing *Klamath*); *see also e.g.*, *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 77 (2d Cir. 2002) ("[The Second] Circuit has recognized that agencies may require assistance from outside consultants formulating policy, and has held that 'nothing turns on the point that . . . reports were prepared by outside consultants . . . rather than agency staff.'"); *Klamath* 532 U.S. at 10 (deliberative process privilege extends to outside consultants who "played essentially the same part in an agency's process of deliberation as the documents prepared by agency personnel might have done").

Objectors complain nonetheless that the deliberative process privilege should not attach to communications involving consultants on the theory that Movants have not demonstrated that the consultants participated in the Fiscal Plan deliberations. This contention is baseless. Objectors are fully aware that Respondents' consultants are integral to development of the fiscal plans. Indeed, Objectors use DevTech as an example of a consultant who they claim falls outside the privilege, but admit that DevTech is actively involved in the deliberative process of creating the Fiscal Plan. *Id.* at 10 ("Devtech, Systems, Inc., a private consulting firm, is involved in preparing the fiscal plan or, at least, models underlying certain assumptions in the fiscal plans."). Moreover, Objectors gloss over the fact that Judge Dein ordered the Respondents to produce a categorical privilege log, which will cover consultant deliberations, and that she

11

adopted a dispute resolution protocol regarding the forthcoming log. *Cf.* Objection, ECF No. 2707 at 9 & n.8.[6]

### D. Judge Dein's Decision to Honor the Deliberative Process Privilege over Fiscal Plan Deliberations was not Clearly Erroneous.

The decision to honor an assertion of the deliberative process privilege is "a discretionary one" based on the court's weighing of competing interests. *Texaco*, 60 F.3d at 885. These can include "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." Objection, ECF No. 2707 at 11 (quoting *Texaco*, 60 F.3d at 885). Additional factors include "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re Franklin Nat'l Bank Sec. Litig*, 478 F. Supp.577, 583 (E.D.N.Y. 1979) (internal citations and quotation marks omitted) (*cited in Texaco*, 60 F.3d at 885). Against this framework, Objectors have not demonstrated that Judge Dein's decision to honor the privilege was clearly erroneous.

Respondents indisputably have a compelling interest in protecting against "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable" in regard to the development of fiscal plans. *Franklin*, 478 F. Supp. at 583. The fiscal plan development process inevitably involves nothing less than creating a blueprint for Puerto Rico's economic future. The end result of that blueprint and all of the underlying data will be

---

[6] The cases cited in the Objection are distinguishable. *Cf. Shell Oil Co. v. I.R.S.*, 772 F. Supp. 202, 203 (D. Del. 1991) (finding waiver because of prior public disclosure of information); *McKesson Governmental Entities Average Wholesale Price Litig*., 264 F.R.D. 595, 599-600 (N.D. Cal. 2009) (finding waiver due to failure to assert privilege claim and voluntary production in litigation); *Melendez-Colon v. United States* 56 F. Supp. 2d 142, 145 (D.P.R. 1999) (document at issue already produced to a third party in response to a Freedom of Information Act Request).

made public. However, public officials and their professional advisors must make countless difficult decisions to revitalize the Commonwealth. Making every utterance and email underlying those deliberations into litigation fodder would have a chilling effect on the candid discussion that is critical and central to the Fiscal Plan development process.

Objectors have not articulated any defensible need for the deliberative materials they demand. Respondents have made extensive information regarding the Commonwealth's financial information available to the public, and have made the formulae, inputs, and other factual information underlying the certified 2017 Commonwealth Fiscal Plan available to the Movants. They did not dispute this. With respect to the 2018 Commonwealth Fiscal Plan in development, AAFAF published the drafts submitted to the Oversight Board on its website, and has provided underlying models for those drafts. The only conceivable use of the remaining deliberative materials that Objectors demand would be to allow creditors to leverage differences between interim drafts, or statements made in the confidence of deliberation, in order to mount a challenge to the Fiscal Plan. *See* ECF No. 2223 at 5–6. Invasion of the Respondents' deliberative process, not to mention the inordinate cost of collection and production, for this purpose is not justified. *See Ambac Assurance Corp. v. Commonwealth of Puerto Rico, et al.*, No. 17-00159-LTS, Dkt. No. 156 at 20 (D.P.R. Feb. 27, 2018) (dismissing one of Objectors' claims challenging the fiscal plans for lack of jurisdiction under PROMESA Section 106(e)).

## CONCLUSION

Objectors have no legitimate interest production of the fiscal plan deliberative materials, much less one that would justify the chilling effect it would have on ongoing fiscal plan deliberations, or the significant cost of production. For the reasons stated above, Respondents respectfully request that the Court overrule the Objection.

Dated: March 23, 2018
      San Juan, Puerto Rico

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Stephen L. Ratner
Timothy W. Mungovan
Paul V. Possinger
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
*Attorneys for the Financial Oversight and Management Board and as representative of the Commonwealth*

*/s/ Hermann D. Bauer*
Hermann D. Bauer (USDC No. 215205)
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Co-Attorneys for the Financial Oversight and Management Board and as representative of the Commonwealth*

Respectfully submitted,

*/s/ John J. Rapisardi*
John J. Rapisardi
Peter Friedman
Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
E:mail: cvelaz@mpmlawpr.com

MARINI PIETRANTONI MUÑIZ LLC
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

14