# EXHIBIT A

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE SAN JUAN**
**SALA SUPERIOR**

| | |
|---|---|
| HON. EDUARDO BHATIA GAUTIER, en su capacidad como Portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br>**Parte Demandante**<br>v.<br>HON. RICARDO ROSSELLÓ NEVARES, en su carácter como Gobernador del Estado Libre Asociado de Puerto Rico y ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>**Parte Demandada** | **CIVIL NÚM.:**<br>SJ2017CV00271<br><br>**SALÓN DE SESIONES:**<br>907<br><br>**SOBRE:**<br><br>*MANDAMUS* |

> "[P]ermitir la secretividad gubernamental invita y
> propicia a la arbitrariedad y a la indiferencia gubernamental.
> Por tanto, es importante que haya una ciudadanía informada
> de modo que se promueva la participación informada e
> inteligente, lo cual es indispensable en la democracia."[1]

# SENTENCIA

## I.

En esta ocasión tenemos ante nuestra consideración una controversia revestida de alto interés público delimitada por nuestro Tribunal Supremo, a los fines de determinar si el proyecto del Plan Fiscal desarrollado por el Gobierno de Puerto Rico (Estado) entregado a la Junta de Supervisión Fiscal (Junta) para su revisión el 30 de abril de 2017, es un documento de naturaleza pública.[2] En segundo lugar, nos corresponde determinar si el Estado aportó prueba suficiente o "justificaciones específicas"[3] que sustentasen la naturaleza privilegiada y no pública del referido documento. Solamente así, la consecuencia sería la improcedencia de la solicitud de la parte demandante, Honorable Eduardo Bhatia Gautier, Senador y Portavoz del Partido Popular Democrático en el Senado de Puerto Rico (parte demandante), para que se haga público el referido documento.

En síntesis, nos corresponde adjudicar si el Estado cumplió con su carga probatoria para sustentar los privilegios reclamados y, en consecuencia, colocó a este Tribunal en posición de

---

[1] (Énfasis nuestro). Luis F. Estrella Martínez, *Acceso a la Justicia: Derecho Humano Fundamental*, 1ra Edición, Puerto Rico, Ediciones SITUM, 2017, pág. 238.

[2] Nótese que la parte demandante solamente solicita el proyecto de Plan Fiscal sometido a la Junta. La parte demandante nunca ha solicitado documentación de apoyo, recomendaciones, determinaciones o expresiones del personal y/o asesores del Gobierno relacionadas con el proceso deliberativo para la preparación del proyecto de Plan Fiscal.

[3] Véase: *Bhatia Gautier v. Rosselló Nevares*, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón, de 15 de septiembre de 2017, ___ DPR ____, 2017 TSPR 173 (2017), a la pág. 41. Mandato recibido de 13 de diciembre de 2017.

determinar que no procede la divulgación de la propuesta del Plan Fiscal desarrollado por el Estado y entregado a la Junta para su revisión.[4]

Recibidos los memorandos de derechos presentados por las partes, en los cuales éstas debieron colocar al Tribunal en posición de resolver si el documento en cuestión es de naturaleza pública y, de ser así, si proceden los privilegios alegados, y ante el balance de intereses envueltos, este Tribunal determina que, en primer término, el proyecto de Plan Fiscal es un documento público y, en segundo término, el Estado no describió el documento en cuestión de forma detallada y específica. Por ello, este Tribunal concluye que el Estado **no aportó prueba suficiente ni justificaciones específicas** para concluir que la información contenida en el proyecto del Plan Fiscal desarrollado por el Gobernador entregado a la Junta es privilegiada.  Por lo tanto, ante la insuficiencia de justificaciones válidas, así como la presentación de alegaciones vagas y generales para reclamar la confidencialidad del documento, este Tribunal ordena la divulgación del proyecto de Plan Fiscal entregado a la Junta por inclinarse la balanza a favor del derecho constitucional de acceso a la información.

## II. TRASFONDO PROCESAL

El 26 de julio de 2017, este Tribunal emitió una *Resolución y Orden* en la cual dispuso que:

> [C]elebrada la vista argumentativa, la parte demandante expresó para récord que la información cuya divulgación solicita es <u>únicamente</u> el Proyecto de Presupuesto presentado el 30 de abril de 2017, a la Junta. Esto es, las cuantías, cifras o partidas de fondos asignadas a determinadas entidades gubernamentales o para cubrir determinados gastos. La parte demandante reiteró y aclaró para récord que como parte de su pedido **no solicita la documentación en apoyo al Proyecto de Presupuesto. Entiéndase, la parte demandante <u>no</u> solicita mediante su petición de** *Mandamus* **información alguna que podría incluir recomendaciones, determinaciones o expresiones de personal y/o asesores del Ejecutivo sobre las cuantías y las razones o el proceso deliberativo relacionado con su asignación.**
>
> Por su parte, la parte demandada sostuvo que la información está cobijada por el privilegio ejecutivo por la misma ser un documento de trabajo o borrador sujeto a cambios que contiene información sobre el proceso deliberativo o de formulación de política pública del Ejecutivo.
>
> No obstante, a preguntas del Tribunal y conforme a la casuística aplicable, la parte demandada no detalló de forma alguna por qué la información solicitada cualifica para la aplicación del privilegio ejecutivo. Conforme a ello, la parte demandada no logró establecer en este momento de forma detallada el porqué no procede la divulgación del Proyecto de Presupuesto presentado a la Junta. No obstante, habiéndose invocado el privilegio ejecutivo, se

---

[4] El Tribunal Supremo delimitó la controversia y a tales fines específicamente dispuso que "la verdadera controversia en el caso [es] si el Estado puede cumplir con su carga probatoria para sustentar los privilegios reclamados". Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, a la pág. 39.

**ORDENA** a la parte demandada a, en un término de 10 días, presentar el Proyecto de Presupuesto presentado a la Junta el 30 de abril de 2017, para inspección en cámara. El mismo, **deberá ser sometido a la atención del Tribunal en un sobre sellado, catalogado como "confidencial", así como, contener la firma del custodio de la información o de la representación legal de la parte demandada de tal manera que garantice el sello del sobre.** Además, la parte demandada deberá presentar una moción en la que explique **en detalle las razones por las cuales la información solicitada, o parte de ella, cualifica para la aplicación del privilegio invocado**. Según lo argumentó en la vista de hoy, porqué la misma es parte de un "proceso deliberativo" o "de formulación de política pública". El Proyecto de Presupuesto no tendrá que ser presentado en el sistema de SUMAC a los fines de que el Tribunal entienda cumplida esta *Orden*. La parte demandada es responsable de presentar correctamente la información a los fines de preservar su confidencialidad. La Secretaría del Tribunal tomará todas las medidas que estime pertinentes para garantizar la secretividad de la información presentada conforme a esta **ORDEN**.[5]

La parte demandada recurrió de dicha determinación ante el Tribunal de Apelaciones, mediante la presentación de una *Moción Urgente en Auxilio de Jurisdicción* y una *Petición de Certiorari*.[6] El foro apelativo intermedio denegó la expedición del auto solicitado y declaró No Ha Lugar la solicitud en auxilio de jurisdicción.[7] Posteriormente, la parte demandada presentó una *Petición de Certiorari* y una *Urgente Moción en Auxilio de Jurisdicción* ante el Tribunal Supremo.[8]

El 7 de agosto de 2017, el Tribunal Supremo emitió una *Resolución* y paralizó "los procedimientos en el caso hasta tanto este Tribunal provea otra cosa. Esto para evitar que el recurso presentado se torne académico".[9]

El 15 de septiembre de 2017, el Tribunal Supremo emitió su *Opinión* y dispuso que:

[S]in ulterior procedimiento y al amparo de la Regla 50 del Reglamento de este Tribunal, *supra*, se expide el auto de *certiorari* solicitado y **se revoca en parte la Resolución y Orden de 26 de julio de 2017 emitida por el Tribunal de Primera Instancia <u>respecto a la producción del documento en controversia para inspección en cámara</u>. <u>Fuera de esto, se confirma dicha Resolución y Orden en los demás extremos no incompatibles con lo aquí dispuesto.</u>** Se deja sin efecto la paralización ordenada y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo indicado en la presente Opinión.[10]

El 12 de diciembre de 2017, se registró el *Mandato* del Tribunal Supremo.[11] Conforme al mismo, el 13 de diciembre de 2017, este Tribunal emitió la siguiente *Orden*:

---

[5] Énfasis y subrayado en el original.
[6] Anotaciones 33 y 34 del expediente digital en SUMAC.
[7] Anotación 35 del expediente digital en SUMAC.
[8] Anotación 37 del expediente digital en SUMAC.
[9] Anotación 39 del expediente digital en SUMAC.
[10] Itálicas en el original. Énfasis nuestro.
[11] Anotación 48 del expediente digital en SUMAC.

Recibido el Mandato y a tenor con el lenguaje literal de la Opinión a las página[s] 40 y 41, se ordena a las partes someter sus respectivos Memorandos de Derecho para que estos coloquen al Tribunal en posición de determinar si el documento es de naturaleza pública y de ser así, si proceden los privilegios alegados. "Sólo así, y en consideración al balance de los intereses implicados, podría entonces el foro primario determinar si proceden o no los privilegios alegados." Los Memorandos de Derecho deberán presentarse de forma simultánea en un término de 30 días, a vencer el 16 de enero de 2018. Del tribunal entenderlo necesario, se concederá un término final para presentar réplicas.[12]

Luego de una solicitud al respecto, el Tribunal concedió una prorroga a vencer el 23 de enero de 2018. En dicha fecha, las partes presentaron sus respectivos *Memorandos de Derecho* y el asunto quedó sometido.

## III. DETERMINACIONES DE HECHOS

1. La parte demandante es el Honorable Eduardo Bhatia Gautier, Senador y Portavoz del Partido Popular Democrático en el Senado de Puerto Rico.[13]

2. El Honorable Ricardo Rosselló Nevares es el Gobernador de Puerto Rico y fue demandado exclusivamente en su carácter oficial.[14]

3. El 30 de junio de 2016, se aprobó por el Congreso de los Estados Unidos de América la Ley Pública 114-187, conocida como la Ley de PROMESA.[15]

4. El 25 de junio de 2017, la Asamblea Legislativa aprobó las resoluciones de presupuesto, Resoluciones Conjuntas de la Cámara 186, 187, 188 y 189.[16]

5. Mediante carta de 30 de junio de 2017, la Junta le notificó al Gobernador y a los presidentes del Senado y de la Cámara de Representantes que, mediante reunión, y conforme a lo dispuesto en las Secciones 202(d)(2) y 202(e)(3) de PROMESA, la Junta aprobó unánimemente, en igual fecha, una resolución mediante la cual adoptaron el Presupuesto General del Estado Libre Asociado de Puerto Rico y sometió el mismo al Gobernador y a la Asamblea Legislativa.[17]

*Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*

---

[12] Anotación 49 del expediente digital en SUMAC.
[13] Hecho estipulado por las partes. Véase: Anotación 23 del expediente digital en SUMAC.
[14] Íd.
[15] Íd.
[16] Íd.
[17] Íd.

SJ2017CV00271                                                                                        5
*Sentencia*

> *Pursuant to Resolution # 3, a copy of which is attached hereto as Exhibit A (the "Resolution"), adopted unanimously at the June 30, 2017 public meeting of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget for the Commonwealth of Puerto Rico, consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget");** and (2) issues to the Governor and the Legislature this certification that the Territory Budget is a compliant budget as set forth in the Resolution. Attached as Exhibits F and G are versions of the Territory Budget indicating the revisions pursuant to section 202(d)(2) of PROMESA.*

> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.[18]*

6.  Mediante carta de 13 de julio de 2017, la Junta le notificó al Gobernador y a la Asamblea Legislativa, de la adopción de un Presupuesto enmendado, adoptado y certificado por la Junta. La Junta dispuso que, al amparo de las Secciones 202(d)(2) y 202 (e)(3) de la Ley PROMESA, se consideraba como aprobado por el Gobernador y la Asamblea Legislativa de Puerto Rico el referido Presupuesto y que el mismo entró en vigor el 1 de julio de 2017.

> *Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*

> *Pursuant to a Unanimous Written Consent, a copy of which is attached hereto as Exhibit A (the "UWC"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget, as corrected, for the Commonwealth of Puerto Rico,** consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget"); and (2) issues to the Governor and the Legislature this certification that the Territory Budget, as corrected, is a compliant budget as set forth in the UWC. Attached as Exhibits F and G are redline versions of the Territory Budget indicating the corrections.*

> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget, as corrected, shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.*
> *This certification supersedes and replaces the Compliance Certification for the Territory Budget issued by the Oversight Board dated June 30, 2017. The Oversight Board looks forward to working with the Governor and the Legislature to accomplish the requirements and goals of PROMESA for the benefit of the people of Puerto Rico and its creditors and other stakeholders.*

7.  El Presupuesto General del Año Fiscal 2017-2018, ha sido aprobado y está vigente desde el 1 de julio de 2017.

---

[18] (Énfasis nuestro). Véase: https://juntasupervision.pr.gov/index.php/en/documents/ (Última visita: 16 de marzo de 2018).

8.  El 30 de abril de 2017, Rosselló Nevares presentó ante la Junta el Plan Fiscal elaborado de conformidad con la Sección 202 de PROMESA.[19]

9.  El 8 de mayo de 2017, la Junta acusó recibo del plan fiscal y le proveyó a éste 14 días adicionales para enmendar y mejorar el documento sometido antes de que la Junta lo apruebe o identifique violaciones. La misiva reza:

> By letter dated March 22, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), pursuant to PROMESA § 202(a), established May 8, 2017 as the date to approve the Governor's proposed budget or to notify the Governor of violations and provide descriptions of all necessary corrective actions. We have received a **working draft** of the proposed budget and are reviewing the submission and its completeness. In this light, the Board will provide the Governor an additional 14 days to amend and improve the submission before it approves it or identifies violations.[20]

10.  El 2 de junio de 2017, la Junta aprobó parcialmente el Plan Fiscal desarrollado por el Gobernador.[21]

11.  La parte demandada no aportó prueba sobre el documento en cuestión desarrollado por el Gobernador. Esto es, cuantos folios posee, si el mismo contiene memorandos, comunicaciones entre el Gobernador, sus ayudantes, asesores, etc.

## IV. CONCLUSIONES DE DERECHO

### a. LA POLÍTICA FISCAL DE PUERTO RICO Y PROMESA

Por mandato constitucional, la elaboración del presupuesto requiere que, al comienzo de cada sesión ordinaria, el Poder Ejecutivo presente al Poder Legislativo un mensaje sobre la situación del erario público, así como, un informe en el que detalle "las condiciones del Tesoro de Puerto Rico y los desembolsos propuestos para el año económico siguiente".[22] En el referido informe, se detallarán las propuestas de asignaciones de fondo y se establecerán los mecanismos de recaudos para subsidiar los gastos estimados.[23]

Una vez recibido y evaluado el informe del Primer Ejecutivo por el Poder Legislativo, dicho cuerpo procede a aprobar la ley o resolución conjunta sobre el presupuesto.[24] Así,

---

[19] *Supra.* Hecho también admitido por la parte demandada. Véase: *Moción Urgente Reiterando Desestimación* presentada el 26 de junio de 2017.

[20] (Énfasis nuestro). Véase: https://juntasupervision.pr.gov/index.php/en/documents/ (Última visita: 12 de febrero de 2018).

[21] Documento estipulado por las partes. Véase: *Moción Conjunta en Cumplimiento de Orden* presentada el 25 de junio de 2017.

[22] Art. IV, Sec. 4, Const. ELA, 1 LPRA.

[23] Véase por su valor ilustrativo el caso de *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico*, KLCE201601001, *Sentencia* del Tribunal de Apelaciones de 31 de agosto de 2016.

[24] Art. III, Sec.17, Const. ELA, *supra*.

SJ2017CV00271                                                                              7
*Sentencia*

corresponde al Poder Legislativo determinar cuáles de las recomendaciones del Primer Ejecutivo serán aprobadas, eliminadas o enmendadas.[25] Incluso, como parte de sus prerrogativas, el Poder Legislativo puede incluir nuevos asuntos no contemplados previamente en el informe del Ejecutivo.[26]

Tras la participación del Poder Legislativo, se da por sometida la ley del presupuesto general ante la consideración del Primer Ejecutivo. [27] En dicho momento, este último tiene la facultad de reducir o eliminar cualquier partida de lo presupuestado.[28] "Al aprobar cualquier proyecto de ley que asigne fondos en más de una partida, el Gobernador podría eliminar una o más partidas o disminuir las mismas, reduciendo al mismo tiempo los totales correspondientes".[29] Igualmente, el Primer Ejecutivo tiene la facultad de sancionar o desaprobar, las resoluciones conjuntas y los proyectos de ley aprobados por el Poder Legislativo.[30]

En lo pertinente al caso ante nos, la Sección 201 de PROMESA **altera** el proceso antes reseñado y mediante el cual, tradicionalmente, se aprueba el presupuesto gubernamental.[31] Es a raíz de ello, que surge la controversia ante nuestra consideración. Esto pues, PROMESA requiere que el informe a prepararse en virtud del Art. IV, Sec. 4, Const. ELA, *supra*, sea enviado a la Junta **antes de que el mismo sea enviado al Poder Legislativo como lo requiere nuestro esquema constitucional**.[32]

Conforme a su poder constitucional para disponer y establecer todas las reglas y reglamentos que sean necesarios para los territorios de los Estados Unidos de América, el Congreso aprobó la ley conocida como *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA).[33] En virtud de ésta, se estableció la Junta para disponer un método mediante el cual el ELA y sus instrumentalidades logren la responsabilidad fiscal y el acceso a los mercados

---

[25] *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico*, supra.
[26] Íd.
[27] Íd.
[28] Íd.
[29] Art. III, Sec. 20, Const. ELA, *supra*.
[30] Art. IV, Sec. 4, Const. ELA, *supra*.
[31] Sección 201 de PROMESA, 48 USCA sec. 2142.
[32] Véase: *Bhatia Gautier v. Rossello Nevares, Opinión de conformidad emitida por el Juez Asociado señor Kolthoff Caraballo* y la *Opinión disidente emitida por el Juez Asociado señor Estrella Martínez* de 15 de septiembre de 2017, ___ DPR ____, 2017 TSPR 173 (2017).
[33] Const. de los EEUU, art. IV, sec. 3; 48 USC sec. 2101 *et seq.*

SJ2017CV00271                                                                                              8
*Sentencia*

de capital.[34] Sobre la naturaleza de la Junta, la Sección 101 (c) de la PROMESA establece que ésta

se creará "como una entidad dentro del gobierno del territorio" y que "no se considerará un

departamento, agencia, establecimiento o instrumentalidad del Gobierno Federal".[35] **Ésta es,**

**además, una entidad autónoma sobre la cual ni el Poder Ejecutivo como el Legislativo podrán**

**ejercer ningún control, como tampoco podrán supervisar, monitorear, o revisar a la Junta o sus**

**actividades.**[36]

En cuanto al presupuesto gubernamental, la Sección 201 de PROMESA dispone que "[e]l

Gobernador **no puede someter un Presupuesto del Territorio para un año fiscal <u>a la Legislatura</u>**

**<u>bajo la Sección 202</u>, <u>a menos que la Junta de Supervisión haya certificado el Plan Fiscal del</u>**

**<u>Territorio para dicho año fiscal</u>, según se establece en este inciso".**[37] El proceso para la

certificación del plan fiscal desarrollado por el Gobernador conllevará una **revisión** por la Junta

del documento que a estos fines presente el Gobernador.[38] Este es:

> La Junta Supervisión **revisará** cualquier Plan Fiscal **propuesto para**
> **determinar si cumple con los requisitos establecidos en el inciso (b)[[39]] y, si**

---

[34] Sección 101 (c) de PROMESA, 48 USCA sec. 2121 (c). Véase además la *Exposición de Motivos* de la Ley Núm. 5-2017, *Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico* (Ley Núm. 5), y *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 201 F. Supp. 3d 223 (1st Cir. 2016).

[35] Sección 101 (c) de PROMESA, *supra*.

[36] Sección 108 (c) de PROMESA, 48 USCA sec. 2128.

[37] Sección 201 (c) (1) de PROMESA, *supra*.

[38] *Supra*.

[39] La Sección 201 (b) establece:
    (b) REQUISITOS. —
    (1) EN GENERAL. — Un plan fiscal desarrollado bajo esta Sección proveerá, con respecto al gobierno del territorio o a la instrumentalidad territorial cubierta, un método para lograr la responsabilidad fiscal y el acceso a los mercados de capital, y —
    (A) proveerá estimados de los ingresos y gastos según los estándares de contabilidad acordados y que se basen en —
    (i) el derecho aplicable; o
    (ii) proyectos de ley específicos que requieren ser adoptados para poder alcanzar razonablemente las proyecciones del Plan Fiscal;
    (B) garantizará el financiamiento necesario para los servicios públicos esenciales;
    (C) proveerá fondos adecuados para los sistemas de pensiones públicas;
    (D) proveerá para la eliminación de los déficits estructurales;
    (E) para los años fiscales cubiertos por un Plan Fiscal en el que una suspensión de pago bajo los Títulos III y IV no proceda, proveerá para una deuda sostenible;
    (F) mejorará la administración fiscal, la rendición de cuentas y los controles internos;
    (G) permitirá que el logro de las metas fiscales sea posible;
    (H) creará pronósticos de ingresos independientes para el período cubierto por el Plan Fiscal;
    (I) incluirá un análisis de sostenibilidad de la deuda;
    (J) proveerá para los gastos de capital y las inversiones necesarias para promover el crecimiento económico;
    (K) adoptará recomendaciones adecuadas sugeridas por la Junta de Supervisión bajo la Sección 205(a);
    (L) incluirá aquella información adicional que la Junta de Supervisión considere necesaria;
    (M) asegurará que los bienes, fondos o recursos de una instrumentalidad territorial no sean prestados, transferidos, o de otra forma utilizados para beneficiar a un territorio o a otra instrumentalidad territorial de un territorio cubierto, salvo que esté permitido por la constitución del territorio, por un plan de ajuste aprobado bajo el Título III, o por una Modificación Elegible aprobada bajo el Título VI; y

> la Junta de Supervisión determina, a su entera discreción, que el Plan Fiscal propuesto—
> (A) <u>cumple con dichos requisitos</u>, la Junta de Supervisión <u>aprobará</u> el Plan Fiscal propuesto; <u>o</u>
> (B) <u>si no cumple con dichos requisitos</u>, la Junta de Supervisión le <u>proveerá al Gobernador</u>—
> **(i) un aviso de infracción que incluya recomendaciones para revisar del Plan Fiscal correspondiente; y**
> **(ii) una oportunidad para corregir la infracción conforme al inciso (d)(1).**[40]

Nótese que, conforme al lenguaje de la citada disposición, la revisión por parte de la Junta se **limitará a** determinar si el plan fiscal propuesto por el Primer Ejecutivo **cumple o no con los requisitos establecidos en el inciso (b) de la Sección 201 de PROMESA**. Según la Sección 201(b) de PROMESA, ello significa que la Junta <u>revisará **si el documento o Plan Fiscal propuesto por el Ejecutivo** <u>cumple</u> **con proveer**: "**estimados** de los **ingresos** y **gastos** según los estándares de contabilidad acordados y que se basen en el derecho aplicable o en los proyectos de ley específicos que requieren ser adoptados para poder alcanzar razonablemente las proyecciones del Plan Fiscal"; "para una **deuda sostenible**, para los años fiscales cubiertos por un Plan Fiscal en el que una suspensión de pago bajo los Títulos III y IV no proceda"; "**fondos** adecuados para los sistemas de pensiones públicas", "para la eliminación de los **déficits** estructurales" y "para los **gastos de capital** y las **inversiones** necesarias para promover el crecimiento **económico**".[41] Además, la Junta revisará si el documento en controversia: incluye "un método para lograr la responsabilidad fiscal y el acceso a los mercados de capital"; "garantiza[ ] el **financiamiento** necesario para los servicios públicos esenciales"; "mejora[ ] la **administración fiscal, la rendición de cuentas y los controles internos**"; "permit[e] que el logro de las metas **fiscales** sea posible"; "crea[ ] **pronósticos de ingresos** independientes para el período cubierto por el Plan Fiscal"; "inclu[ye] un **análisis de sostenibilidad** de la deuda", "asegura[ ] que los **bienes**, **fondos** o **recursos** de una instrumentalidad territorial no sean prestados, transferidos, o de otra forma utilizados para beneficiar a un territorio o a otra instrumentalidad territorial de un territorio cubierto, salvo que esté permitido por la constitución del territorio, por un plan de ajuste aprobado bajo el Título III, o por una Modificación Elegible aprobada bajo el Título VI" y

---

(N) respetará las prioridades legítimas relativas o gravámenes legítimos, según apliquen, en la Constitución, en otras leyes o acuerdos de un territorio cubierto o instrumentalidad territorial cubierta y en vigor antes de la fecha de adopción de esta Ley.

[40] Sección 201 (c) 3 de PROMESA, *supra*.

[41] Sección 201 de PROMESA, 48 USCA sec. 2142.

"respeta[ ] las **prioridades** legítimas relativas o **gravámenes** legítimos, según apliquen, en la Constitución, en otras leyes o acuerdos de un territorio cubierto o instrumentalidad territorial cubierta y en vigor antes de la fecha de adopción de esta Ley".[42]  Por último, la Junta revisará si el documento "adopta[ las] recomendaciones adecuadas sugeridas por la Junta de Supervisión bajo la Sección 205(a)" e "inclu[ye] aquella información adicional que la Junta de Supervisión considere necesaria".[43] Estas recomendaciones son las establecidas en la Sección 205 de PROMESA, y se refieren a aquellos actos que, **según la Junta**, el Gobierno puede tomar para garantizar la estabilidad financiera, la responsabilidad administrativa, el crecimiento económico, entre otros:

> a) EN GENERAL.—La Junta de Supervisión, en cualquier momento, podrá presentar recomendaciones al Gobernador o la Legislatura sobre las acciones que el gobierno del territorio puede tomar para garantizar el cumplimiento con el Plan Fiscal, o para que de otro modo promueva la estabilidad financiera, el crecimiento económico, la responsabilidad administrativa y la eficiencia en la forma en que el gobierno del territorio presta sus servicios, incluyendo recomendaciones concernientes a—
> (1) el manejo de los asuntos financieros del gobierno del territorio, incluyendo la capacidad para hacer proyecciones económicas y fiscales plurianuales, la tecnología de la información, controlar los gastos del personal, reducir los costos de los beneficios, reformar las prácticas de adquisición y colocar otros controles sobre los gastos;
> (2) la relación estructural de los departamentos, agencias y agencias independientes dentro del gobierno del territorio;
> (3) la modificación de las estructuras de ingresos existentes o la creación de estructuras de ingresos adicionales;
> (4) el establecimiento de alternativas para satisfacer las obligaciones de pago para las pensiones de los empleados del gobierno del territorio;
> (5) modificaciones o transferencias de los tipos de servicios que son responsabilidad de y son provistos por el gobierno del territorio;
> (6) modificaciones de los tipos de servicios que son prestados por entidades que no sean del gobierno del territorio bajo diferentes mecanismos de prestación de servicios;
> (7) los efectos de las leyes territoriales y las órdenes judiciales sobre las operaciones del gobierno del territorio;
> (8) el establecimiento de un sistema de personal para empleados del gobierno del territorio basado en estándares de desempeño del empleado;
> (9) mejoras a los adiestramientos y competencias del personal, ajustes a los niveles de la plantilla laboral y mejoras al adiestramiento y el desempeño del personal administrativo y de supervisión; y
> (10) la privatización y comercialización de entidades dentro del gobierno del territorio.

Si el documento o plan fiscal desarrollado por el Gobernador **cumple con proveer cada uno de los elementos requeridos en virtud de PROMESA, la Junta, a su entera discreción,**

---

[42] Sección 201 de PROMESA, 48 USCA sec. 2142.
[43] Sección 201 de PROMESA, 48 USCA sec. 2142.

aprobará el plan fiscal propuesto, enviará una certificación de cumplimiento al Gobernador y a la Legislatura para el referido plan fiscal y lo presentará ante la Legislatura.[44] Ahora, si el documento o plan fiscal desarrollado por el Gobernador **no cumple con proveer cada uno de los elementos requeridos en virtud de PROMESA, la Junta, a su entera discreción**, le proveerá al Gobernador: un aviso de infracción con recomendaciones para revisar el Plan Fiscal y una oportunidad para corregir los señalamientos de infracción.[45] En este caso, el Gobernador tendrá que presentar una propuesta revisada del Plan Fiscal que cumpla con la Sección 201(b) de PROMESA.

## b. DERECHO CONSTITUCIONAL DE ACCESO A LA INFORMACIÓN PÚBLICA.[46]

Hace ya más de tres décadas que, en <u>Soto v. Srio. de Justicia</u>, 112 DPR 477 (1982), [nuestro Tribunal Supremo reconoció] el derecho de la prensa y de los ciudadanos en general a tener acceso a la información pública como un derecho fundamental de estirpe constitucional. Este derecho está **firmemente ligado al ejercicio de los derechos de libertad de palabra, prensa y asociación** formalmente consagrados en el Art. II, Sec. 4 de la Constitución de Puerto Rico, LPRA, Tomo 1 (2016). <u>Trans Ad de P.R. v. Junta de Subastas</u>, 174 DPR 56 (2008); <u>Ortiz v. Dir. Adm. de los Tribunales</u>, 152 DPR 161 (2000). Único

El acceso a la información pública **constituye un pilar fundamental en toda sociedad democrática**. **Este conocimiento permite a los ciudadanos evaluar y fiscalizar la función pública adecuadamente a la vez que contribuye a una participación ciudadana efectiva en los procesos gubernamentales que impactan su entorno social**. <u>Trans Ad de P.R. v. Junta de Subastas</u>, *supra*; <u>Colón Cabrera v. Caribbean Petroleum</u>, 170 DPR 582 (2007). **Se abona de este modo a la transparencia en la función gubernamental y se promueve una sana administración pública**. C.F. Ramos Hernández, Acceso a la información, transparencia y participación política, 85 Rev. Jur. UPR Núm. 4, pág. 1015 (2016).

No podemos olvidar que, en nuestra realidad política, el gobierno como entidad, existe en función del Pueblo al que sirve.

---

[44] Sección 201 (c) (3) y (e) (1) y Sección 202 (c) (1).

[45] Sección 201 (c) 3 de PROMESA, *supra*.

[46] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge íntegramente los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares*, *Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra, a las págs. 22-26.

Cualquiera que sea la definición que ascribamos al concepto "democracia", su principio cardinal es que el poder político ha de residir en el pueblo y que los gobernantes ejercen sus funciones para el pueblo y por mandato de éste. Mal podría gobernarse a sí mismo un pueblo que estuviere ajeno a cuanto sucede en la conducción de sus asuntos. E. Rivera Ramos, La libertad de información: necesidad de su reglamentación en Puerto Rico, 44 Rev. Jur. UPR, Núms. 1–2, pág. 69 (1975).

Asimismo, **no es posible ejercer efectivamente los derechos cobijados bajo el Art. II, Sec. 4 de la Constitución de Puerto Rico,** *supra*, <u>si no existe constancia de los quehaceres de aquellos elegidos a gobernar.</u>

<u>**La premisa es sencilla, si el Pueblo no está debidamente informado del modo en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan**</u>. Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 175.

El Art. 409 del Código de Enjuiciamiento Civil reconoce el derecho de todo ciudadano a inspeccionar y copiar cualquier documento público de Puerto Rico. 32 LPRA sec. 1781 (2004). Ahora bien, el derecho a la información no opera en el vacío. Es necesario que el documento que se pretende divulgar goce, en efecto, de esa condición pública. <u>Ortiz v. Dir. Adm. de los Tribunales</u>, *supra*.

Nuestro ordenamiento define el término "documento público" de la siguiente manera:

[T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar [ ... ] permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos. Art. 3(b) de la Ley Núm. 5 de 8 de diciembre de 1955, Ley de Administración de Documentos Públicos de Puerto Rico, según enmendada, 3 LPRA sec. 1001(b) (2011).

Así pues, el derecho a la información no es absoluto y estará sujeto a aquellas limitaciones que, **por necesidad <u>imperiosa</u>,** el Estado imponga. <u>Ortiz v. Dir. Adm. de los Tribunales</u>, *supra*. Sin embargo, estas restricciones deben estar debidamente justificadas puesto que no puede negarse el acceso a información pública de manera caprichosa y arbitraria. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. **Y es que, dada su condición de derecho fundamental, para prevalecer, las restricciones impuestas por el aparato gubernamental deben responder a un interés <u>apremiante</u> del Estado.** <u>Nieves v. Junta</u>, 160 DPR 97 (2003); <u>Noriega v. Gobernador</u>, 130 DPR 919 (1992).

En nuestra jurisdicción no se ha legislado específicamente para delimitar el acceso a documentos gubernamentales del escrutinio público.13 <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. Ahora bien, a través de las controversias traídas ante [la] consideración [del Tribunal Supremo] para atender esta problemática, [se ha] podido delinear los siguientes supuestos en que le está permitido al Estado reclamar válidamente la confidencialidad de información que obra en su poder. Éstos son, cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente, y (5) sea "información oficial" conforme a la Regla 514 de Evidencia, 2009, 32 LPRA Ap. VI (2010) (anteriormente la Regla 31 de Evidencia). <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. Es importante tener presente que **le corresponde al Estado el peso de probar la aplicación de alguna de las excepciones antes enumeradas para poder <u>validar</u> su reclamo de confidencialidad**. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*.

### c. EL PRIVILEGIO SOBRE LA INFORMACIÓN OFICIAL – EN GENERAL[47]

Un reclamo de confidencialidad por parte del gobierno puede prosperar cuando se trate de información oficial privilegiada, entre otros. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*; <u>Santiago v. Bobb y El Mundo, Inc.</u>, 117 DPR 153 (1986).  Así pues, la Regla 514 de Evidencia, *supra*, establece en nuestro ordenamiento el denominado privilegio sobre información oficial. Dicha disposición define "información oficial" como "aquélla adquirida en confidencia por una persona que es funcionaria o empleada pública en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio". Regla 514(a) de Evidencia, *supra*. Este privilegio se activa "si el tribunal concluye que la materia es información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno". Regla 514(b) de Evidencia, *supra*.

El profesor Chiesa Aponte explica que:

> El privilegio se funda, por un lado, en la necesidad que tiene el gobierno de mantener confidencial cierta información para la buena marcha del gobierno, particularmente en relación con la franca discusión de las

---

[47] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra, a las págs. 26-29.

alternativas gubernamentales o posibles cursos de acción para atender los múltiples problemas sociales, económicos - y de otra índole - del Estado [...]". E.L. Chiesa Aponte, *Tratado de derecho probatorio*, República Dominicana, Ed. Corripio, [s. año], T. I, pág. 292.

Ahora bien, **este privilegio no es absoluto, sino cualificado, sujeto a un análisis de balance de intereses**. Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 292. Así pues, al evaluarlo, se tiene que sopesar, por un lado, la necesidad de que el gobierno mantenga confidencial cierta información sensitiva y el perjuicio que pueda invocar el gobierno y, por otro lado, la necesidad de la parte que solicita la información y su derecho a obtenerla. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 164. Así pues, sólo cabe hablar del privilegio cuando "se trata de 'información oficial' y si el balance de intereses se inclina a favor de la confidencialidad". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 307. Al reclamar la confidencialidad de información oficial, le corresponde al gobierno probar, de manera precisa e inequívoca, la aplicación del privilegio. Santiago v. Bobb y El Mundo, Inc., *supra*. Como explicamos previamente, "[l]a alta jerarquía del derecho constitucional de acceso a información hace difícil el reclamo gubernamental de confidencialidad, particularmente ante la ausencia de un estatuto regulador". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 304. Véase, además, Colón Cabrera v. Caribbean Pretroleum, *supra*. En esa línea, dada la falta de legislación que delimite el privilegio, éste "debe escudriñarse con particular recelo". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 304, citando a Peña Clos v.Cartagena Ortiz, 114 DPR 576, 599 (1983). [17] Así pues, ante un balance inclinado en contra del privilegio, el gobierno -en su momento- tendrá la obligación de "presentar prueba y demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por este derecho de libertad de información de los ciudadanos". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 308, citando a Noriega v. Gobernador, supra, pág. 938. En consideración a ello, **el gobierno no puede invocar el privilegio de manera generalizada**. Santiago v. Bobb y el Mundo, Inc., *supra*; véase, además, Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 310. El profesor Chiesa Aponte también opina que "[e]l derecho del ciudadano a acceso a información de los asuntos del gobierno justifica poner una seria carga de persuasión en el gobierno cuando reclama el privilegio de información oficial". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 295. En fin, los tribunales debemos ser "cautelosos en conceder livianamente cualquier pedido de

confidencialidad del Estado". <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*, pág. 159. Al evaluar si procede reconocer el privilegio, "[l]as alternativas de inspección en cámara o proveer acceso limitado al expediente confidencial siempre están disponibles". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 310. Ahora bien, como discutiremos más adelante, la opción de examen en cámara puede limitarse en consideración a las circunstancias presentes en cada caso.[48]

### d. EL PRIVILEGIO SOBRE LA INFORMACIÓN OFICIAL – LA INFORMACIÓN DECISIONAL EN LOS PROCESOS DELIBERATIVOS SOBRE POLÍTICA PÚBLICA[49]

Entre las categorías fundamentales de información oficial privilegiada está la utilizada por funcionarios públicos durante los procesos deliberativos relacionados al desarrollo de política pública. Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., págs. 292-293. Esta categoría del privilegio de información oficial busca "promover la más franca comunicación entre los funcionarios gubernamentales encargados de decidir y hacer valer la política pública del Estado". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 293. Conforme a lo anterior, entendemos que el profesor Chiesa se refiere al privilegio cualificado sobre procesos deliberativos del gobierno o *deliberative process privilege*. Véase 6 *Moore's Federal Practice* Sec. 26.52 (3ra ed. 2016) y 26A *Wright & Graham, Federal Practice and Procedure: Evidence* Sec. 5680 (1992).

Este privilegio evita que se afecte la calidad de las decisiones gubernamentales y de las funciones consultivas de las agencias. P.F. Rothstein y S.W. Crump, *Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases*, 2da ed., West, 2012, Sec. 5:3, págs. 431-432. En esa línea, se ha reconocido que "[...] *a substantial public interest exists in maintaining and ensuring full, frank, open exchanges of ideas between members of the agency and other advisors and the decision maker*". Rothstein y Crump, op. cit., pág. 433. Además, el restringir el acceso a este tipo de comunicaciones protege "*against **premature disclosure** of proposed policies and decisions before they have been finally formulated or adopted*". [ ] Rothstein y Crump, op. cit., pág. 436. Para beneficiarse del privilegio sobre procesos deliberativos, el gobierno debe cumplir con el siguiente proceso: (1) el jefe de la agencia que controla la información debe reclamarlo

---

[48] (Subrayado, énfasis, itálicas y citas en el original). (Escolios omitidos).

[49] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra, a las págs. 29-33.

formalmente, esto luego de ponderarlo; (2) un oficial de la agencia debe proveer las razones

precisas por las cuales se reclama la confidencialidad de la información o los documentos, y (3)

el gobierno debe identificar y describir la información o los documentos que interesa proteger.

*Moore's Federal Practice*, supra, pág. 26-412.10(1). Véase, además, <u>United States v. Reynolds</u>, 345

US 1 (1953).

**Además, para que se active el privilegio, el gobierno debe demostrar que el documento**

**en cuestión es "deliberativo" y "pre-decisional"**. *Moore's Federal Practice*, supra, pág. 26-412.8.

Una información es deliberativa en la medida en que se relaciona a un proceso en el que se

desarrolla o formula política pública. *Moore's Federal Practice*, supra, pág. 26-412.9. Un documento

es "pre-decisional" cuando es preparado para asistir en la toma de decisiones del gobierno, es

decir, previo a tomar las mismas. *Moore's Federal Practice*, supra, págs. 26-412.8 y 26-412.9. Por lo

tanto, "tampoco queda protegida la información o documentación posterior a la decisión

gubernamental[...]". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 293; <u>N.L.R.B. v.</u>

<u>Sears, Roebuck & Co.</u>, 421 US 132 (1975). Conforme a lo anterior, este privilegio no cubre lo

relacionado a hechos (*factual matters*). Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág.

293. Tampoco protege material objetivo ni documentos en los que la agencia adopta su posición

sobre un asunto o controversia. *Moore's Federal Practice*, supra, págs. 26-412.6 y 26-412.7. Por

ejemplo, este privilegio no incluye "*advisory opinions, recommendations, and communications relating*

*to policy formulations*". *Moore's Federal Practice*, supra, pág. 26-412.8.

**Para determinar si prevalece este privilegio, al igual que el privilegio sobre información**

**oficial, el tribunal debe realizar un análisis de balance de intereses.** Chiesa Aponte, *Tratado de*

*derecho probatorio*, op. cit., pág. 293. Entre los factores que el tribunal debe considerar al ponderar

el balance de intereses, se encuentran: "[...] *the interests of the private litigant, the need for accurate*

*judicial fact finding, the public's interest in learning how effectively the government is operating, the*

*relevance of the evidence sought, the availability of other evidence, the role of the government in the*

*litigation and issues involved, and the impact on the effectiveness of government employees*". *Moore's*

*Federal Practice*, supra, 2012, pág. 26-412.11. Además, se debe evaluar el impacto que provocaría

la divulgación en el proceso de discutir francamente las políticas y decisiones en cuestión. <u>F.T.C.</u>

<u>v. Warner Commun. Inc.</u>, 742 F.2d 1156 (9no Cir. 1984). En fin, este privilegio puede ceder cuando

SJ2017CV00271                                                                                                    17
*Sentencia*

se demuestra cabalmente que existe una necesidad particularizada de obtener la información que es de mayor peso que las razones para la confidencialidad. *Moore's Federal Practice*, supra, pág. 26-412.11. Los tribunales debemos tener flexibilidad al momento de evaluar este privilegio para así poder asegurar la protección del proceso deliberativo. *Moore's Federal Practice*, supra, 2016, pág. 26-412.10. No obstante, nuestro ordenamiento probatorio exige una interpretación restrictiva al determinar la existencia de un privilegio. Regla 518 de Evidencia, 32 LPRA Ap. VI (2010).[50]

### d. EL PRIVILEGIO EJECUTIVO[51]

**El privilegio ejecutivo** fue reconocido en nuestro ordenamiento en Peña Clos v. Cartagena Ortiz, *supra*, derivado de la Constitución de Puerto Rico. Art. I, Sec. 2 y Art. IV, Secs. 1 y 4, Const. PR, LPRA, Tomo 1 (2016). Este privilegio **busca proteger las comunicaciones entre el Primer Ejecutivo y sus respectivos subalternos, asesores o ayudantes**. Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., pág. 165; J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2009, pág. 363; Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 311. En comparación con el privilegio sobre secretos de estado, el privilegio ejecutivo es de menor jerarquía. Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., pág. 165. Este último es cualificado, por lo que no le concede a la Rama Ejecutiva una facultad absoluta "de retener información sobre la base de su alegada confidencialidad". Peña Clos v. Cartagena Ortiz, *supra*, pág. 598. Véase *Wright & Graham*, supra, pág. 52. Así pues, debemos reiterar que "una alegación desnuda de privilegio público, sin apoyo en legislación adecuada, debe escudriñarse con particular recelo". Peña Clos v. Cartagena Ortiz, supra, pág. 599.

Por lo tanto, "[l]e corresponde también a la Rama Judicial en última instancia precisar las fronteras de ese [privilegio]". Peña Clos v. Cartagena Ortiz, *supra*, pág. 598. Véase, además, United States v. Nixon, 418 US 683 (1974) y Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 312. Para ello, como ya indicamos, generalmente se ha utilizado "el método de sopesar los

---

[50] (Subrayado, énfasis, itálicas y citas en el original). (Escolios omitidos).

[51] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra.

SJ2017CV00271                                                                                    18
*Sentencia*

intereses en conflicto". Peña Clos v. Cartagena Ortiz, *supra*, pág. 598. Véase, además, United States

v. Nixon, *supra*.[52]

### e. INSPECCIÓN EN CÁMARA[53]

A pesar de que el FOIA, 5 USCA 552(a)(4)(B) (2007), permite el examen de documentos en

cámara, los foros federales han manifestado, en reiteradas ocasiones, que esta alternativa es

desfavorable en casos donde se reclaman ciertos privilegios gubernamentales. Véanse, por

ejemplo, Smith v. U.S. Marshals Serv., 517 Fed. Appx. 542 (9no Cir. 2013); Lion Raisins v. U.S.

Dept. of Agriculture, 354 F.3d 1072 (9no Cir. 2004) derogado en parte en otros extremos por

Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987 (9no Cir. 2016); Turner v. U.S.

Dept. of the Treasury, Núm. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); Truthout

v. Dept. of Justice, 20 F. Supp. 3d 760 (E.D. Cal. 2014), aff'd, 667 F. Appx. 637 (9no Cir. 2016).

Incluso, no debe ser la primera alternativa, ya que se le debe dar, inicialmente, una oportunidad

al Estado de justificar y demostrar su reclamo de confidencialidad. Lion Raisins v. U.S. Dept. of

Agriculture, *supra*; Conservation Force v. Jewell, 66 F. Supp. 3d 46 (D.D.C. 2014), aff'd, Núm. 15-

5131, 2015 WL 9309920 (D.C. Cir. 2015); Truthout v. Dept. of Justice, *supra*. Esto se puede lograr

permitiéndole al Estado que presente una explicación detallada del privilegio reclamado, lo cual

podría sustituir la inspección en cámara del documento en disputa. Solers, Inc. v. Internal

Revenue Serv., 827 F.3d 323 (4to Cir. 2016); Hamdan v. U.S. Dept. of Justice, 797 F.3d 759 (9no

Cir. 2015); Ethyl Corp. v. U.S. E.P.A., 25 F.3d 1241 (4to Cir. 1994). En otras palabras, el tribunal

puede descansar en prueba suplementaria para determinar si procede el privilegio reclamado

por el Estado. Lane v. Dept. of Interior, 523 F.3d 1128 (9no Cir. 2008); Lion Raisins v. U.S. Dept.

of Agriculture, *supra*. De determinarse, en esa etapa, que procede el privilegio, la inspección en

cámara no será requerida. Lewis v. I.R.S., 823 F.2d 375 (9no Cir. 1987).

Para propósitos del presente caso, encontramos muy revelador y pertinente lo indicado

en el historial legislativo de una de las enmiendas al FOIA en relación a la inspección de

documentos en cámara. Según indicado:

---

[52] (Subrayado, énfasis, itálicas y citas en el original). (Escolios omitidos).

[53] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra.

> *H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. **<u>Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.</u>** The burden remains on the Government under this law. [ ]* S. Rep. Núm. 93-1200, pág. 9 (1974), <u>reimpreso en</u> 1974 USCCAN 6285, 6287-88. Véase, también, <u>Lewis v. I.R.S.</u>, supra, pág. 378 esc. 4.

En fin, en algunos casos particulares, el examen en cámara puede ser innecesario. Véanse: <u>Hamdan v. U.S. Dept. of Justice</u>, *supra*; <u>Aids Healthcare Foundation v. Leavitt</u>, 256 Fed. Appx. 954 (9no Cir. 2007); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973); <u>Turner v. U.S. Dept. of the Treasury</u>, *supra*. En particular, en el caso de <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*, se determinó que, al no haber una controversia en cuanto al tipo de información contenida en el documento en disputa, la inspección en cámara sería un ejercicio fútil. Ahora bien, cuando el expediente y la prueba suplementaria del Estado no justifique satisfactoriamente el privilegio gubernamental, entonces el tribunal podrá inspeccionar en cámara los documentos en disputa. <u>Islamic Shura Council of Southern California v. F.B.I.</u>, 635 F.3d 1160 (9no Cir. 2011); <u>Lane v. Dept. of Interior</u>, *supra*. Véase, además, 33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, pág. 524 (2006).

## IV.

Conforme al *Mandato* recibido, este Tribunal está llamado a determinar "si el Estado puede cumplir con su carga probatoria para sustentar los privilegios reclamados. Claro está, previo a ello, [el Tribunal] debe determinar **<u>si el documento en cuestión es efectivamente de naturaleza pública</u>**. Para poder emitir una determinación, en el balance de intereses, en cuanto a si procede o no privilegio alguno en el presente caso, las partes deben **primero**, poner al tribunal en posición en cuanto a cuáles son los intereses en conflicto".[54]

Recibidos los memorandos de derechos presentados por las partes, en los cuales éstas debieron poner al Tribunal "en posición de resolver si el documento es de naturaleza pública y, de ser así, si proceden los privilegios alegados"[55], este Tribunal determina en primer término que **el documento en cuestión es público** ante el estado de derecho de la Ley Promesa y, en segundo

---

[54] (Énfasis nuestro). *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, a la pág. 39.
[55] *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, a la pág. 40.

SJ2017CV00271                                                                          20
*Sentencia*

término, que la parte demandada **no cumplió con la carga probatoria para sustentar los privilegios alegados**. Más aún, el Tribunal concluye que al sopesar los intereses en conflicto el Estado no fue capaz de establecer que existiese un proceso deliberativo que proteger *vis-a-vis* el derecho constitucional a tener acceso a la información como ciudadano o como legislador para fiscalizar la gestión gubernamental ante la presencia de un nuevo actor gubernamental, la Junta. El Estado tampoco pudo probar que el interés público sería más favorecido con la confidencialidad del documento que con su divulgación. Este tribunal no puede pasar por alto que "la secretividad en los asuntos públicos es excepción y no norma."[56]

No existe controversia entre las partes en cuanto a que la información aquí solicitada consta del documento elaborado por el Gobernador conforme a la Sección 201 de PROMESA y entregado a la Junta para su revisión.[57] La controversia principal estriba en si el documento es público o no. Esto es, si la parte demandada logró establecer mediante prueba a esos efectos, que el documento es pre-decisional por contener información deliberativa.

Es la posición de la parte demandada que el **documento** cuya divulgación se solicita es pre-decisional por contener información deliberativa. Esto, porque sencillamente el documento estaba sujeto a cambios lo que demuestra que no era final y, en consecuencia, era deliberativo. La parte demandada también **menciona** a grandes rasgos, de manera generalizada y sin detalle o especificidad alguna que el **documento** está cobijado por el privilegio ejecutivo. La parte demandada no llevó a cabo un ejercicio detallado mediante el cual ilustrara al Tribunal sobre el contenido del documento, si partes del mismo hacen referencia a conversaciones entre el Gobernador y sus ayudantes o asesores, recomendaciones, consultas, determinaciones del Gobernador, o de su personal de apoyo o asesores relacionadas al proceso deliberativo del Ejecutivo para la preparación del proyecto ante la Junta. O si éste incluye documentos internos de las agencias. El Estado ni siquiera menciona si éste incluye más información que la solicitada por la Sección 201 de PROMESA, en virtud de la cual se elaboró el mismo. Esto, aun cuando la propia parte demandante especificó que no interesaba la divulgación de cualquier información de este tipo que pudiese formar parte del documento. <u>**La parte demandante especificó que sólo**</u>

---

[56] Véase: *Santiago v. Bobb y el Mundo, Inc*. 117 DPR 153, 159 (1986).
[57] Sección 201 de PROMESA, 48 USCA sec. 2142.

SJ2017CV00271                                                                                    21
*Sentencia*

**interesaba acceso a las cifras y datos, elementos que por la naturaleza del documento – el presupuesto fiscal – son los que generalmente se incluyen**.[58]

Por otra parte, sabido es, que cierta información contenida en un documento puede ser de carácter confidencial o privilegiada, pero ello no necesariamente conlleva que la totalidad del documento sea confidencial o privilegiado. Este Tribunal no fue colocado en posición de saber qué información forma parte del documento. Por otra parte, de una lectura de la sección 201 de PROMESA, este Tribunal no puede concluir que las impresiones mentales o determinaciones de política pública entre el Gobernador y sus asesores formen parte del documento. Ello no lo exige la sección 201 de PROMESA.

Por otro lado, este Tribunal no puede concluir que el documento es pre decisional porque el mismo estaba sujeto a cambios y porque, según el Estado, demuestra un proceso de deliberación entre la Junta y el Gobernador. Lo cierto es que la participación de la Junta se limita a revisar el cumplimiento del Plan Fiscal desarrollado por el Gobernador con PROMESA y a solicitar información o hacer recomendaciones para el cumplimiento del Plan Fiscal. El Gobernador emitió su propuesta de Plan Fiscal a la Junta para que ésta revisara y certificara el cumplimiento del mismo con PROMESA. Lo que la parte demandada interesa conocer es cuál fue el proyecto de Plan Fiscal – las cifras y datos – desarrollado por el Gobernador y presentado anta la Junta conforme al estado de derecho que surge de la sección 202 de PROMESA.

Lo cierto es que la parte demandada, tenía el deber de probar y demostrar que la información contenida en el documento era información oficial, que su divulgación sería perjudicial a los intereses del Gobierno. "**[E]l gobierno no puede invocar el privilegio de manera generalizada**". "[E]l derecho del ciudadano a acceso a información de los asuntos del gobierno justifica poner una s**eria carga de persuasión en el gobierno cuando reclama el privilegio de información oficial**". "[L]os tribunales debemos ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". La parte demandada invocó el privilegio sobre la información oficial de manera generalizada sin demostrar de forma alguna que la divulgación del proyecto del Plan Fiscal sería perjudicial a los intereses del Estado.

---

[58] "Tampoco es necesario proteger una comunicación que solo contenga datos y no opiniones pues es precisamente la integridad de la opinión que se busca proteger". *In Re Sealed Case*, 121 F. 3d 729, 737 (1997).

Por otra parte, el Estado tampoco demostró que el **documento en cuestión es "deliberativo" y "pre-decisional"**. No aportó prueba específica que demostrara que la información contenida en el proyecto de Plan Fiscal desarrollado por el Gobernador es deliberativa en la medida en que se relaciona a un proceso en el que se desarrolla o formula política pública. Tampoco que el documento fue preparado para asistir en la toma de decisiones del gobierno, es decir, **previo** a tomar las mismas. Ya el Gobernador tomó su decisión al presentar el Plan Fiscal a la Junta.[59] Nótese, que la Junta sólo podía determinar que cumplía con PROMESA, certificarlo y presentarlo ante la Asamblea Legislativa o hacer señalamientos y proveer un término para que el Gobernador hiciera las correcciones señaladas. Por otra parte, el Estado no demostró que el documento contuviera información sobre las **comunicaciones entre el Primer Ejecutivo y sus respectivos subalternos, asesores o ayudantes. Al contrario, una vez el Gobernador presenta el proyecto de Plan Fiscal a la Junta el 30 de abril de 2017, lo hace a un ente autónomo según la sección 108 de PROMESA.**[60]

A base de los hechos que hemos determinado, en ese mismo sentido se expresó concluyente y categóricamente el Juez Asociado del Tribunal Supremo, el Honorable Estrella Martínez:

> La presentación ante la Junta es un mandato conforme al proceso formal de la sección 202 de la Ley PROMESA, 48 U.S.C. sec. 2142. Aquí lo que ocurre es que el Gobierno realiza una propuesta final de presupuesto, la cual será enviada a la Junta para aprobación, en lugar de seguir el trámite ordinario de enviarlo directamente a la Asamblea Legislativo. Si el Proyecto de Presupuesto cumple con los parámetros que establezca la Junta, se aprobará y el Gobernador entonces lo podrá remitir a la Asamblea Legislativa. Por ello es que no puede ser considerado un borrador. El documento, según el proceso estatutario, debe ser final, con la única excepción de las enmiendas que recomiende la Junta. No creo que un documento de trabajo, como alega el Gobierno, pueda ser aprobado por la Junta como un presupuesto certificado. Más bien, nos encontramos ante un mandato congresional en el que ahora el Gobierno de Puerto Rico tiene un deber dual de presentar el Proyecto de Presupuesto primariamente ante la Junta como eventualmente a la Asamblea Legislativa. En ese sentido, nos encontramos ante un documento formal presentado ante la Junta con un proceso particular para su aprobación o enmienda el cual es análogo al eventual proceso legislativo de aprobación.

---

[59] "[D]e acuerdo a las disposiciones de la Ley PROMESA, el señor Gobernador sabía que el documento presentado el 30 de abril pudo haber sido el presupuesto del Estado Libre Asociado si la Junta lo validaba y, posteriormente, lo aprobaba la Asamblea Legislativa. Por lo tanto, el proyecto de presupuesto remitido a la Junta de Control y Administración Fiscal el 30 de abril de 2017 no constituye simplemente un ejercicio deliberativo, sino que representó una decisión concreta de política pública en cuanto a cómo distribuir los fondos disponibles de la hacienda del Estado para el año fiscal entrante. Así, al examinar el proceso de elaboración propio del documento en cuestión, podemos concluir que el privilegio de procesos deliberativos no le puede aplicar a la médula del mismo, a saber, los pormenores de la erogación de los fondos públicos". Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión Disidente emitida por la Jueza Asociada señora Rodríguez Rodríguez*, supra, a las págs. 24-25.

[60] Sección 108 (c) de PROMESA, 48 USCA sec. 2128.

SJ2017CV00271                                                                    23
*Sentencia*

Por lo tanto, en la etapa de radicación formal del Proyecto de Presupuesto, éste no puede minimizarse como un documento en etapa deliberativa o un simple "borrador".

Contrario a lo que argumenta el Gobierno de Puerto Rico, queda comprobado como cuestión de derecho, que bajo las disposiciones de PROMESA, la Junta no puede ser considerada un subalterno, asesor o ayudante del Ejecutivo.  En ese sentido la Sección 108 de PROMESA que establece expresamente la autonomía de la Junta, no puede ser obviada de este análisis. 48 U.S.C. sec. 2128.  Aunque indignante, la realidad colonial de Puerto Rico no puede ocultarse, persiguiendo crear una ficción que pretenda ignorar el rol imperial de la Junta para reducirla a un subalterno, asesor o ayudante del Ejecutivo. Esa ficción no es la realidad que vive Puerto Rico. Con secretividad, sólo se recrudece esa realidad.

Por tratarse de un asunto de alto interés público que envuelve derechos constitucionales de la Rama Ejecutiva y de la Rama Legislativa, y por tratarse de una controversia de derecho en la cual este Tribunal concluyó que el referido documento es público, así como, habiendo este Tribunal realizado el balance de intereses ante el tipo de documento, resulta innecesaria la inspección en cámara. La inspección en cámara solamente hubiese sido el vehículo a utilizarse del Estado haber expuesto razones de peso que colocaran a este Tribunal en la posición de entender que el examen del documento era esencial para su análisis. El Estado no esgrimió justificación valida alguna que sustente la confidencialidad del documento. Es decir, el Estado falló en demostrar que la divulgación de la información podría afectar o ser perjudicial al interés público y al funcionamiento del Estado.

Recapitulando, el Estado tenía que haber realizado un gran esfuerzo por lograr presentar prueba específica que demuestre la existencia de intereses de mayor jerarquía que los valores protegidos por el derecho de libertad de información.[61]  Por ello, examinadas con sumo esmero todas las alegaciones de las partes, este Tribunal concluye que revelar la información solicitada por la parte demandante no resulta perjudicial a algún interés público o gubernamental, por el contrario, el Estado no esbozó razón alguna que justifique la secretividad del documento en cuestión.[62]

---

[61] Véase *ELA v. Casta*, 162 DPR 1 (2004).

[62] "El acceso a la información constituye una herramienta esencial para combatir la corrupción, hacer realidad el principio de transparencia en la gestión pública y mejorar la calidad de nuestras democracias, signadas por una cultura de secretismo y por organismos públicos cuyas políticas de manejo físico de la información no están orientadas a facilitar el acceso de las personas a la misma." Véase: *Bhatia Gautier v. Rossello Nevares, Opinión Disidente emitida por el Juez Asociado señor Colón Pérez*, supra, a la pág. 1, citando a la Comisión Interamericana de Derechos Humanos de la Organización de los Estados Americanos, Estudio especial sobre el derecho de acceso a la información, Org. Estados Americanos, Washington, D.C. 2007, pág. 6.

SJ2017CV00271                                                                                        24
*Sentencia*

## SENTENCIA

Por los fundamentos antes expuestos, habiéndose sometido todos los asuntos ante la consideración del Tribunal con los memorandos de derecho, y en vista a que el Estado no demostró la existencia de intereses de mayor jerarquía que el derecho constitucional al acceso a la información, se declara **CON LUGAR** la solicitud de la parte demandante y se **ORDENA** al Estado a, en un término de **10 días**, divulgar el Proyecto de Plan Fiscal sometido ante la Junta el 30 de abril de 2017 a tenor con la sección 202 de PROMESA. Esto, por tratarse de un documento público, así como, por el Estado haber fallado en justificar y demostrar el reclamo de confidencialidad del referido documento.

No existe justificación valida alguna por parte del Estado que mueva a este Tribunal a mantener la secretividad del documento en cuestión. Más aún, cuando históricamente nuestro Tribunal Supremo ha dispuesto que el acceso a la información pública constituye un pilar fundamental en toda sociedad democrática. El derecho constitucional de acceso a la información pública abona a la trasparencia en la función gubernamental y se promueve una sana administración pública.[63]

**REGÍSTRESE Y NOTIFÍQUESE.**

En San Juan, Puerto Rico, 16 de marzo de 2018.

### F/LAURACELIS ROQUES ARROYO
### JUEZA SUPERIOR

---

[63] C.F. Ramos Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR Núm. 4, pág. 1015 (2016).