# EXHIBIT B

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SAN JUAN JUDICIAL CENTER**
**SUPERIOR COURT**

| | |
|---|---|
| HON. EDUARDO BHATIA-GAUTIER<br>In his capacity as Minority Leader for the Popular<br>Democratic Party in the Senate of Puerto Rico<br><br>**Plaintiff**<br><br>v.<br><br>HON. RICARDO ROSSELLÓ-NEVARES, in his<br>capacity as Governor of the Commonwealth of Puerto<br>Rico and the COMMONWEALTH OF PUERTO RICO<br><br>**Respondent** | **CIVIL NO.:**<br>SJ2017CV00271<br><br>**SESSION HALL:**<br>907<br><br>**RE:**<br><br>*MANDAMUS* |

> "[E]nabling governmental secrecy invites
> and leads to governmental arbitrariness and
> indifference. Therefore, it is important for citizens
> to be informed in order to promote informed and
> intelligent citizen participation, which is essential
> for democracy."[1]

# JUDGMENT

## I.

An issue of high public interest, as identified by our Supreme Court, has been brought

before us on this occasion for the purposes of determining whether the draft Fiscal Plan

developed by the Government of Puerto Rico (the Commonwealth) and submitted to the

Financial Oversight and Management Board (the Board) for review on April 30, 2017, is a public

document.[2] Secondly, it is for us to determine whether the Commonwealth produced sufficient

evidence or "specific justifications"[3] to support the privileged and non-public nature of the

aforementioned document. Should that be the case, the request of the plaintiff, Honorable

Eduardo Bhatia-Gautier, Senator and Minority Leader for the Popular Democratic Party at the

Senate of Puerto Rico (the plaintiff) for disclosure of the aforementioned document would be

inadmissible.

In short, it is for us to decide whether the Commonwealth met its burden of proof to

support the claimed privileges and, consequently, if it placed this Court in a position to

determine whether the

---

[1] (Emphasis supplied). Luis F. Estrella-Martínez, *Acceso a la Justicia: Derecho Humano Fundamental,* 1ra Edición, Puerto Rico, Ediciones SITUM, 2017, p. 238.

[2] Note that the plaintiff is only requesting the draft Fiscal Plan submitted to the Board. The plaintiff has never requested any supporting documents, recommendations, decisions, or statements from Government staff members and/or advisors in connection with the deliberative process for the development of the draft Fiscal Plan.

[3] See: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti-Cintrón,* dated September 15, 2017, ___ DPR ____, 2017 TSPR 173 (2017), p. 41. Court order received on December 13, 2017.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    2
*Judgment*

disclosure of the proposed Fiscal Plan developed by the Commonwealth and submitted to the Board for its review is inadmissible.[4]

Upon receiving the memoranda of law filed by the parties, with which the parties placed the Court in a position to decide whether the document at issue is a public document, and, if so, to determine whether the invoked privileges are admissible, and given the balance of interests involved, this Court finds that the draft Fiscal Plan is, first of all, a public document and, secondly, that the Commonwealth did not describe the document in a detailed and specific manner. For this reason, this Court concludes that the Commonwealth **did not provide sufficient evidence or specific justifications** to conclude that the information contained in the draft Fiscal Plan developed by the Governor and submitted to the Board is privileged information. Therefore, due to the lack of valid justifications, as well as the submission of vague and general allegations to claim the confidentiality of the document, this Court hereby orders the disclosure of the draft Fiscal Plan submitted to the Board, for the balance has tipped in favor of the constitutional right of access to information.

## II. PROCEDURAL BACKGROUND

On July 26, 2017, this Court issued a *Decision and Order*, providing that:

> [A]fter the oral arguments, the plaintiff stated for the record that the information whose disclosure is requested is only the Draft Budget submitted to the Board on April 30, 2017. That is, the amounts, figures, or budget items allocated to specific governmental entities or to cover certain expenditures. The plaintiff reiterated and clarified for the record that his request **does not include the Draft Budget's supporting documentation**. **In other words, the plaintiff is not requesting in his** *writ of Mandamus* **any information that may contain recommendations, decisions, or expressions made by personnel and/or advisors of the Executive Branch with regard to the amounts and the reasons or the deliberative process related to its allocation.**
>
> For his part, the plaintiff held that the information is covered by the executive privilege due to it being a working document or draft subject to changes that contains information on the deliberative process or information regarding the Executive Branch's policymaking.
>
> However, upon questioned by the Court and according to the applicable case studies, the respondent provided no details as to why the requested information warrants the application of the executive privilege. Accordingly, at this time, the respondent failed to establish in detail the reason why the disclosure of the Draft Budget submitted to the Board is inadmissible. Nevertheless, upon invoking of the executive privilege, the respondent is **ORDERED** to file, within 10

---

[4] The Supreme Court delimited the dispute and, to this end, specifically provided that "the real controversy in the case [is] whether the Commonwealth can meet its burden of proof in order to support the privileges claimed." See: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, p. 39.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                    3
*Judgment*

days, the Draft Budget submitted to the Board on April 30, 2017, for its examination in chambers. Said Draft Budget **shall be submitted to the attention of the Court in a sealed envelope identified as "Confidential," and it shall contain the signature of the custodian of the information or the respondent's legal representative, so as to ensure the envelope's seal.** In addition, the respondent shall file a motion **explaining <u>in detail</u> the reasons why the requested information, or part of said information, qualifies for the application of the invoked privileged.** As argued in today's hearing, the respondent shall further explain why said information is part of a "deliberative" or of a "public policymaking" process. The Draft Budget shall not have to be filed in the SUMAC system in order for the Court to consider this *Order* as complied with. The respondent is responsible for correctly filing the information in order to preserve its confidentiality. The Clerk of the Court shall take all measures she may deem necessary to guarantee the secrecy of the information submitted in accordance with this **ORDER**.[5]

The respondent appealed the decision before the Court of Appeals by filing an *Urgent Motion for Order in Aid of Jurisdiction* and a *Writ of Certiorari*.[6] The intermediate appellate court denied the issuance of the requested order and Dismissed the motion in aid of jurisdiction.[7] Subsequently, the respondent filed a *Writ of Certiorari* and an *Urgent Motion for Order in Aid of Jurisdiction* before the Supreme Court.[8]

On August 7, 2017, the Supreme Court issued a *Decision* ordering a stay of "the proceedings in the case until this Court provides otherwise. This, to prevent the filed appeal from becoming academic."[9]

On September 15, 2017, the Supreme Court issued its *Opinion* and provided that:

> [W]ithout further proceedings and pursuant to Rule 50 of the Rules of this Court, *supra*, the requested *writ of certiorari* is issued and **the Decision and Order issued by the Court of First Instance on July 26, 2017 <u>with regard to the presentation of the document in dispute for its examination in chambers</u> is partially repealed. <u>Besides that, the Decision and Order is confirmed in all other non-relevant respects.</u>** The ordered stay is annulled and the case is returned to the primary court for the continuation of proceedings as specified in this Opinion.[10]

On December 12, 2017, the Supreme Court's[11] *Mandate* was issued. In accordance with said Mandate, on December 13, 2017, this Court issued the following *Order*:

---

[5] Emphasis and underlining in the original.
[6] Annotations 33 and 34 of the digital SUMAC file.
[7] Annotation 35 of the digital SUMAC file.
[8] Annotation 37 of the digital SUMAC file.
[9] Annotation 39 of the digital SUMAC file.
[10] Italics in the original. Emphasis supplied.
[11] Annotation 48 of the digital SUMAC file.

     I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                   4
*Judgment*

  Upon receiving the Order, and in accordance with the literal meaning of the Opinion on page[s] 40 and 41, the parties are ordered to submit their respective Memoranda of Law in order to put the Court in a position to determine whether the document is public in nature and, if so, whether the claimed privileges are admissible. "Only then, and considering the balance of interests involved, would the Court be able to determine whether or not the claimed privileges are admissible." The Memoranda of Law shall be filed simultaneously within a 30-day period, which ends on January 16, 2018. A final deadline to reply shall be granted, should the Court consider it necessary.[12]

  After a request to this end, the Court granted an extension that expired on January 23, 2018. On that date, the parties submitted their respective *Memoranda of Law* and the issue was considered as filed.

### III. FINDINGS OF FACT

1. The plaintiff is Honorable Eduardo Bhatia-Gautier, Senator and Minority Leader for the Popular Democratic Party in the Senate of Puerto Rico.[13]

2. Honorable Ricardo Rosselló-Nevares is the Governor of Puerto Rico and was exclusively sued in his official capacity.[14]

3. On June 30, 2016, the United States Congress passed Public Law 114-187, known as the PROMESA Act.[15]

4. On June 25, 2017, the Legislative Assembly passed the budget resolutions, Joint House Budget Resolutions 186, 187, 188, and 189.[16]

5. In a letter dated June 30, 2017, the Board notified the Governor, the President of the Senate, and the House Speaker that, in a meeting held on that same date, and pursuant to the provisions of Sections 202(d)(2) and 202€(3) of PROMESA, the Board had unanimously passed a resolution whereby they adopted the General Budget of the Commonwealth of Puerto Rico, which was then submitted to the Governor and the Legislative Assembly.[17]

---

[12] Annotation 19 of the digital SUMAC file.
[13] This fact was stipulated by the parties. See: Annotation 23 of the digital SUMAC file.
[14] Id.
[15] Id.
[16] Id.
[17] Id.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

> *Dear Governor Rosselló Nevares, Senator Rivera Shatz, and Representative Méndez Núñez:*

SJ2017CV00271                                                                                                   5
*Judgment*

> *Pursuant to Resolution #3, a copy of which is attached hereto as Exhibit A (the "Resolution"), adopted unanimously at the June 30, 2017 public meeting of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget for the Commonwealth of Puerto Rico, consisting of the documents attached hereto as Exhibits B, C, D, and E (collectively, the "Territory Budget");** and (2) issues to the Governor and the Legislature this certification that the Territory Budget is a compliant budget as set forth in the Resolution. Attached as Exhibits F and G are versions of the Territory Budget indicating the revisions pursuant to section 202(d)(2) of PROMESA.*
>
> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.[18]*

6. In a letter dated July 13, 2017, the Board notified the Governor and the Legislative Assembly about the adoption of an amended Budget, which was adopted and certified by the Board. The Board provided that, under Sections 202(d)(2) and 202 (e)(3) of the PROMESA Act, the aforementioned Budget was considered as approved by the Governor and the Legislative Assembly, and that it came into force on July 1, 2017.

> *Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*
> *Pursuant to a Unanimous Written Consent, a copy of which is attached hereto as Exhibit A (the "UWC"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget, as corrected, for the Commonwealth of Puerto Rico,** consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget"); and (2) issues to the Governor and the Legislature this certification that the Territory Budget, as corrected, is a compliant budget as set forth in the UWC. Attached as Exhibits F and G are redline versions of the Territory Budget indicating the corrections.*
>
> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget, as corrected, shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.*
>
> *This certification supersedes and replaces the Compliance Certification for the Territory Budget issued by the Oversight Board dated June 30, 2017. The Oversight Board looks forward to working with the Governor and the Legislature to accomplish the requirements and goals of PROMESA for the benefit of the people of Puerto Rico and its creditors and other stakeholders.*

7. The General Budget for Fiscal Year 2017-2018 has been approved and has been in force since July 1, 2017.

---

[18] (Emphasis supplied.) See: https://juntasupervision.pr.gov/index.php/en/documents/ (Last visit: March 16, 2018).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    6
*Judgment*

8. On April 30, 2017, Governor Rosselló-Nevares submitted to the Board the Fiscal Plan, developed in accordance with Section 202 of the PROMESA Act.[19]

9. On May 8, 2017, the Board acknowledged receipt of the fiscal plan and granted the Governor 14 additional days to amend and improve the document prior to approving it or identifying violations. The letter states:

> *By letter dated March 22, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), pursuant to PROMESA § 202(a), established May 8, 2017 as the date to approve the Governor's proposed budget or to notify the Governor of violations and provide descriptions of all necessary corrective actions. We have received a **working draft** of the proposed budget and are reviewing the submission and its completeness. In this light, the Board will provide the Governor an additional 14 days to amend and improve the submission before it approves it or identifies violations.[20]*

10. On June 2, 2017, the Board partially approved the Fiscal Plan developed by the Governor.[21]

11. The respondent failed to provide evidence on the document developed by the Governor. In other words, how many pages does it have, whether it contains memoranda and communications between the Governor and his aides, advisors, etc.

### CONCLUSIONS OF FACT

#### a. PUERTO RICO'S FISCAL POLICY AND PROMESA

The drafting of the budget constitutionally requires that, at the beginning of each ordinary session, the Executive Branch present a message regarding the status of the public coffers, as well as a report detailing "the conditions of the Treasury of Puerto Rico and the proposed expenditures for the following financial year."[22]  The above-referenced report shall detail the proposed fund allocations and shall establish the revenue collection mechanisms to subsidize the estimated expenses.[23]

Once the Legislative Branch has received and examined the Governor's report, said legislative body shall proceed to pass the law or joint budget resolution.[24] Therefore, it is the Legislative Branch's

---

[19] *Supra.* The respondent also acknowledged this fact. See: *Urgent Motion to Reiterate Dismissal*, filed on June 26, 2017.
[20] (Emphasis supplied.) See: https://juntasupervision.pr.gov/index.php/en/documents/ (Last visit: February 12, 2018).
[21] Document stipulated by the parties. See: *Joint Motion in Compliance with Order* filed on June 25, 2017.
[22] Art. IV, Sec. 4, Const. ELA, 1 LPRA.
[23] For illustrative purposes, see *Finca Matilde, Inc. v. Estado Libre Asociado de Puerto Rico*, KLCE201601001, *Judgment* entered by the Court of Appeals on August 31, 2016.
[24] Art. III, Sec. 17, Const. ELA, *supra.*



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                    7
*Judgment*

duty to determine which of the Governor's recommendations shall be approved, dismissed, or amended.[25] Also, as part of its prerogatives, the Legislative Branch may include new issues not previously considered in the report of Executive Branch.[26]

After the Legislative Branch's participation, the general budget law is considered as submitted to the consideration of the Governor.[27] At that time, the Governor has the power to reduce or remove any budget item.[28] "In approving any appropriation bill that contains more than one item, the Governor may eliminate one or more of such items or reduce their amounts, at the same time reducing the total amounts involved."[29] Likewise, the Governor has the power to approve or disapprove the joint resolutions and bills passed by the Legislative Assembly.[30]

With relevance to the present case, Section 201 of PROMESA **alters** the process described above, by which the governmental budget is traditionally approved.[31] This is the reason for the dispute that has been brought before us, since PROMESA requires that the report that must be prepared pursuant to Art. IV, Sec. 4, Const. ELA, *supra*, be sent to the Board **before it is sent to the Legislative Branch, as required under our constitutional system.[32]**

Based on its constitutional power to lay down and establish all the rules and regulations that may be necessary for the territories of the United States of America, Congress passed the law known as the *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA).[33] The Board was created under this law to establish a method whereby the Commonwealth of Puerto Rico and its instrumentalities achieve fiscal responsibility and access to capital markets.[34]

---

[25] *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico,* supra.
[26] Id.
[27] Id.
[28] Id.
[29] Art. III, Sec. 20, Const. ELA, *supra*.
[30] Art. IV, Sec. 4, Const. ELA, *supra*.
[31] Section 201 PROMESA, 48 USCA sec. 2142
[32] See: *Bhatia Gautier v. Rossello Nevares, Opinion in Agreement issued by Associate Judge Mr. Kolthoff Caraballo* and the *Dissenting Opinion issued by Associate Judge Mr. Estrella-Martínez* on September 15, 2017, ___ DPR _____, 2017 TSPR 173 (2017).
[33] U.S. Const., art. IV, sec. 3; 48 USC sec. 2102 *et seq*.
[34] PROMESA, Section 101 (c), 48 USCA sec. 2121 (c).  see, also, the *Statement of Motives* of Law No. 5-2017, *Puerto Rico Financial Emergency and Fiscal Responsibility Act* (Law No. 5), and *Brigade Leveraged Capital Struturs Fund Ltd. V. García-Padilla*, 201 f. Supp. 3d 223 (1st Cir. 2016).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                 8
*Judgment*

Regarding the nature of the Board, Section 101 (c) of PROMESA provides that it shall be created "hall be created as an entity within the territorial government for which it is established" and that "it shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government."[35] **Furthermore, it is an autonomous entity upon which neither the Executive Branch nor the Legislative Branch may exercise any control, supervision, oversight, or review over the Oversight Board or its activities.**[36]

As for the governmental budget, Section 201 of PROMESA provides that "the Governor **may not** submit **to the Legislature a Territory Budget under Section 202 this title for a fiscal year unless the Oversight Board has certified the Territory Fiscal Plan for that fiscal year** in accordance with this subsection."[37] The process to certify the fiscal plan developed by the Governor shall entail a **review** by the Board of the document submitted by the Governor.[38] The process is as follows:

The Oversight Board shall **review** any **proposed** Fiscal Plan **to determine whether it satisfies the requirements set forth in subsection (b)[[39]] and, if the Oversight**

---

[35] PROMESA, Section 101 (c), 48 USCA sec. 2128.
[36] PROMESA, Section 108 (c), 48 USCA sec. 2128.
[37] PROMESA, Section 201 (c), *supra.*
[38] *Supra.*
[39] Section 201 (b) provides:
    (b) REQUIREMENTS. —
    (1) IN GENERAL. — A Fiscal Plan developed under this section shall, with respect to the territorial government or covered territorial instrumentality, provide a method to achieve fiscal responsibility and access to the capital markets, and—
    (A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on —
    (i) applicable laws; or
    (ii) specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;
    (B) ensure the funding of essential public services;
    (C) provide adequate funding for public pension systems;
    (D) provide for the elimination of structural deficits;
    (E) for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective, provide for a debt burden that is sustainable;
    (F) improve fiscal governance, accountability, and internal controls;
    (G) enable the achievement of fiscal targets;
    (H) create independent forecasts of revenue for the period covered by the Fiscal Plan;
    (I) include a debt sustainability analysis;
    (J) provide for capital expenditures and investments necessary to promote economic growth;
    (K) adopt appropriate recommendations submitted by the Oversight Board under section 2145(a) of this title;
    (L) include such additional information as the Oversight Board deems necessary;
    (M) ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI; and
    (N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to June 30, 2016.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                  9
*Judgment*

> Board determines in its sole discretion that the proposed Fiscal Plan —
> (A) <u>satisfies such requirements</u>, the Oversight Board shall <u>approve</u> the proposed Fiscal Plan; <u>or</u>
> (B) <u>does not satisfy such requirements</u>, the Oversight Board shall <u>provide to the</u> <u>Governor</u>—
> (i) a notice of violation that includes recommendations for revisions to the applicable Fiscal Plan; and
> (ii) an opportunity to correct the violation in accordance with subsection (d)(1).[40]

Note that, according to the language of the above-cite provision, the Board's review shall be **limited** to determining whether the fiscal plan proposed by the Governor **meets the requirements established under subsection (b) of Section 201 of the PROMESA Act**. As defined by Section 201 (b) of the PROMESA Act, this means that the Board **shall examine whether the document or Fiscal Plan proposed by the Governor <u>meets</u> the requirement of providing: "estimates of revenues and expenditures** in conformance with agreed accounting standards and be based on applicable laws; or specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;" "for a **sustainable debt burden,** for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective;" " adequate funding for public pension systems," "for the elimination of structural deficits," and "for capital expenditures and investments necessary to promote economic growth."[41] Furthermore, the Board shall examine whether the document in dispute: includes "a method to achieve fiscal responsibility and access to the capital markets;" "ensure[ ] the funding of essential public services;" "improve[ ] **fiscal governance, accountability, and internal controls**;" "enable[ ] the achievement of **fiscal** targets;" "create[ ] independent **forecasts of revenue** for the period covered by the Fiscal Plan;" "include[ ] a **debt sustainability analysis**;" "ensure that **assets, funds,** or **resources** of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI;" and "respect[ ] the relative lawful

---

[40] Section 201 (c) 3 of PROMESA, *supra.*
[41] Section 201 of PROMESA, 48 USCA sec. 2142.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    10
*Judgment*

**priorities** or lawful **liens**, as may be applicable, in the constitution, other laws, or agreements of

a covered territory or covered territorial instrumentality in effect prior to June 30, 2016."[42]

Lastly, the Board shall verify whether the document "adopt[    the] appropriate

recommendations submitted by the Oversight Board under section 205(a)" and "include such

additional information as the Oversight Board deems necessary."[43] These recommendations are

the ones set forth in Section 205 of the PROMESA Act and refer to the actions that, **according to**

**the Board**, the Government can take to ensure financial stability, administrative responsibility,

and economic growth, among others:

> a) IN GENERAL. — The Oversight Board may, at any time, issue
> recommendations to the Government or to the Legislature regarding the actions
> that the territorial government can take to ensure compliance with the Fiscal
> Plan, or to otherwise promote the financial stability, economic growth,
> administrative responsibility, and efficiency in the way that the territorial
> government renders its services, including recommendations related to —
> (1) the management of the territorial government's financial affairs, including the
> ability to make multiannual economic and fiscal projections, information
> technology, control staff costs, reduce benefit costs, reform procurement
> practices, and place other controls on expenditures;
> (2) the structural relationship between departments, agencies, and independent
> agencies within the territorial government;
> (3) the modification of the existing revenue structures or the creation of
> additional revenue structures;
> (4) the establishment of alternatives to meet the obligations for the payment of
> territorial government employee pensions;
> (5) modifying or transferring the types of services that are the responsibility of
> and which are provided by the territorial government;
> (6) modifying the types of services that are offered by non-governmental entities
> of the territory under different mechanisms for the provision of services;
> (7) the effects of the territorial laws and the judicial orders regarding the
> operations of the territorial government;
> (8) the establishment of a personnel system for territorial government employees,
> based on employee performance standards;
> (9) improving staff training and competencies, adjusting staffing levels, and
> improving administrative and supervisory staff's training and performance; and
> (10) the privatization and commercialization of entities within the territorial
> government.

If the document or fiscal plan developed by the Governor **satisfies all the requirements**

**set forth under PROMESA, the Board shall, <u>at its sole discretion,</u>** approve the proposed fiscal

---

[42] Section 201 of PROMESA, 48 USCA sec. 2142.
[43] Section 201 of PROMESA, 48 USCA sec. 2142.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

plan, send a compliance certification to the Government and the Legislature for the above-referenced fiscal plan, and submit the plan to the Legislature.[44] Now, if the document or fiscal plan developed by the Governor **does not satisfy all the requirements set forth under PROMESA, the Board shall, at its sole discretion**, provide the Governor: a notice of violation with recommendations to revise the Fiscal Plan and an opportunity to correct the identified violations.[45] In this case, the Governor shall have to submit a revised Fiscal Plan proposal that is in compliance with Section 201(b) of the PROMESA Act.

### b. CONSTITUTIONAL RIGHT OF ACCESS TO PUBLIC INFORMATION.[46]

More than three decades ago, in <u>Soto v. Srio. de Justicia</u>, 112 DPR 477 (1982), [our Supreme Court acknowledged] the right of the press and of the citizens in general to have access to public information as a fundamental constitutional right. This right is **closely connected to the exercise of the right to freedom of speech, freedom of the press, and freedom of association** officially enshrined in Art. II, Sec. 4 of the Constitution of Puerto Rico, LPRA, Volume 1 (2016). <u>Trans Ad de P.R. v. Junta de Subastas</u>, 174 DP 56 (2008); <u>Ortiz v. Dir. Adm. de los Tribunales</u>, 152 DPR 161 (2000). One of one.

Access to public information **constitutes a fundamental pillar of every democratic society. This knowledge enables citizens to properly assess and monitor public service, while contributing to an effective citizen engagement in the governmental processes that affect their social environment.** <u>Trans Ad de P.R. v. Junta de Subastas</u>, *supra*; <u>Colón Cabrera v. Caribbean Petroleum</u>, 170 DPR 582 (2007). **This contributes to transparency in government functions and promotes a sound public administration.** C.F. Ramos-Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR No. 4, p. 1015 (2016).

We must not forget that, in our political reality, the government's existence, as entity, is based on the People it serves.

---

[44] Section 201 (c) (3) and (e) (1), and Section 202 (c) (1).

[45] Section 201 (c) (3) of PROMESA, *supra*.

[46] Given their importance and their relevance to the dispute under our consideration, this Court fully embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 22-26.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          12
*Judgment*

Regardless of the definition we may give to the concept of "democracy," its cardinal principle is that the political power shall lie in the people and that rulers carry out their functions for the people and under the people's mandate. A people could hardly govern themselves if they are unaware of whatever that goes on with the management of their own affairs. E. Rivera-Ramos, *La libertad de información: necesidad de su reglamentación en Puerto Rico*, 44 Rev. Jur. UPR, Nos. 1-2, p. 69 (1975).

Similarly, **it is not possible to effectively exercise the rights under Art. II. Sec. 4 of the Constitution of Puerto Rico,** *supra,* **<u>if there is no evidence of the business of those elected to govern.</u>**

**<u>The premise is straightforward, if the People are not duly informed about the way in which public management is carried out, their freedom to express their satisfaction or dissatisfaction with the people, the rules, or the processes that govern them through voting or any other means, could be curtailed</u>**. Ortiz v. Dir. Adm. de los Tribunales, *supra*, p. 175.

Art. 409 of the Civil Procedure acknowledges the right of all citizens to inspect and copy any public document of Puerto Rico. 32 LPRA sec. 1781 (2004). Now, the right to information does not operate in a vacuum. The document intended to be disclosed must, indeed, have this public status.  <u>Ortiz v. Dir. Adm. de los Tribunales</u>, *supra*.

Our legal system defines the term "public document" as follows:

[A]ny document which originates or is kept or received in any dependency of the Commonwealth of Puerto Rico according to the law or in relation to the management of public affairs and that pursuant to the provisions of § 1002 of this title is required to be permanently or temporarily preserved as evidence of transactions or for its legal value. It includes those documents produced electronically which meet the requirements established by law and regulations. Art. 3(b) of Law No. 5 of December 8, 1955, Puerto Rico Public Documents Administration Act, as amended, 3 LPRA sec. 1001 (b) (2011).

Therefore, the right to information is not an absolute right and shall be subject to limitations that may be imposed by the State **as a matter of <u>urgent</u> necessity**. <u>Ortiz v. Dir. Adm. de los Tribunales</u>, *supra.* However, these restrictions must be duly justified, since access to public information cannot be capriciously or arbitrarily denied. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra.* **For, given its status as a fundamental right, in order for them to prevail, the restrictions imposed by the government must respond to a <u>compelling</u> government interest.** <u>Nieves v. Junta</u>, 160 DPR 97; <u>Noriega v. Gobernador</u>, 130 DPR 919 (1992).

  I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                    13
*Judgment*

No legislation has been enacted in our jurisdiction to specifically limit the access of public scrutiny to governmental documents. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. Now, by means of the disputes brought before [the Supreme Court] to address this problem, [we have] been able to outline the following situations where the State is allowed to validly claim the confidentiality of the information they possess. These include, when: (1) it is so stated by law; (2) the communication is protected by any of the evidentiary privileges that may be invoked by citizens; (3) disclosing the information may undermine third parties' rights; (4) it involves the identity of an informant, and (5) it is "official information" pursuant to Rule 514 of the Rules of Evidence, 2009, 32 LPRA Ap. VI (2010) (previously, Rule 31 of the Rules of Evidence). <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. We must bear in mind that **it is up to the State to prove the application of any of the aforementioned exceptions in order to be able to <u>validate</u> their claim of confidentiality.** <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*.

### c. THE PRIVILEGE OVER OFFICIAL INFORMATION – IN GENERAL[47]

A claim of confidentiality on the part of the government may thrive when it is privileged official information, among others. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*; <u>Santiago v. Bobb y El Mundo, Inc.</u>, 117 DPR 153 (1986). Thus, Rule 154 of the Rules of Evidence, *supra*, lays down in our legal system the so-called privilege over official information. Said provision defines "official information" as "information acquired in confidence by a public officer or employee in the course of his duty and not open or officially disclosed to the public prior to the time the claim of privilege is made." Rule 514(a) of the Puerto Rico Rules of Evidence, *supra*. This privilege is activated "if the court determines that said matter is official information and disclosure of it is forbidden by law, or that disclosure of such information in the proceeding would be prejudicial to the interest of the government." Rule 514(b) of the Puerto Rico Rules of Evidence, *supra*.

Professor Chiesa-Aponte explains that:

> On the one hand, the privilege is based on the need of the government to keep certain information confidential for the government's good functioning, particularly with regard to the frank discussion of the alternatives or potential

---

[47] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 26-29.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                            14
*Judgment*

courses of action to address the State's multiple social, economic, and other problems […]." E.L. Chiesa-Aponte, *Tratado de derecho probatorio*, Dominican Republic, Ed. Corripio, [no year], T.I., p. 292.

Now, **this privilege is not absolute, but qualified, and is subject to a balance of interest analysis.** Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 292. Therefore, <u>when assessing this privilege, the need for the government to maintain the confidentiality of certain sensitive information must be weighed against the prejudice that may be invoked by the government and, on the other hand, the need of the requesting party and their right to obtain said information.</u> E.L. Chiesa-Aponte, *Reglas de Evidencia Comentadas,* San Juan, Ed. Situm, 2016, p. 164. Therefore, we can only talk about the privilege when "it is 'official information' and if the balance of interests tips in favor of confidentiality." Chiesa-Aponte, *Tratado de derecho probatorio*, op.cit., p. 307. <u>In claiming the confidentiality of official information, the government must accurately and unequivocally prove the applicability of the privilege.</u>  <u>Santiago v. Bobb y El Mundo, Inc.,</u> *supra.* As previously explained, "[t]he high standing of the constitutional right of access to information hinders the governmental claim of confidentiality, particularly in the absence of a regulatory statute." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 304. See, also, <u>Colón Cabrera v. Caribbean Petroleum,</u> *supra.* In this regard, given the lack of legislation to delimit the scope of the privilege, it "must be particularly warily examined." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 304, citing <u>Peña Clos v. Cartagena Ortiz,</u> 114 DPR 576, 599 (1983). [17] Thus, with the scales tipped against the privilege, the government shall -eventually- have the obligation to "provide evidence and prove the existence of compelling interests that are more important than the values protected by this citizens' right to freedom of information." Chiesa-Aponte, *Tratado de derecho probatorio,* op. cit., p. 308, citing Noriega v. Gobernador, supra, p. 938. In light of the above, **the government may not invoke the privilege in a generalized manner.** <u>Santiago v. Bobb y El Mundo, Inc.,</u> *supra;* see, also, Chiesa-Aponte, *Tratado de derecho probatorio, op. Cit.,* p. 310. Profesor Chiesa-Aponte also believes that "[t]he citizen's right of access to information regarding government affairs justifies the imposition of a burden of persuasion upon the government when it claims the privilege of official information." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 295. In brief, the courts must be "careful not to lightly grant any request for confidentiality by


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          15
*Judgment*

The State." <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*, p. 159. In assessing whether the privilege

should be granted, "[t]he alternatives of in-chamber inspection or providing limited access to

the confidential file are always available." Chiesa-Aponte, *Tratado de derecho probatorio*, op. cit.,

p. 310. Now, as we will discuss later, the option of in-chamber examination may be limited

based on the circumstances of each case.[48]

### d. THE PRIVILEGE OVER OFFICIAL INFORMATION – DECISION-MAKING INFORMATION IN DELIBERATIVE PROCESSES INVOLVING PUBLIC POLICY[49]

Among the key types of privileged official information is the one used by public officials

during deliberative processes relating to public policymaking. Chiesa-Aponte, *Tratado de derecho*

*probatorio*, op. cit., pp. 292-293. This category of the official information privilege seeks to

"promote the frankest level of communication between governmental government officials in

charge of deciding and enforcing the State's public policy." Chiesa-Aponte, *Tratado de derecho*

*probatorio*, op. cit., p. 293. Based on the foregoing, we believe that Professor Chiesa refers to the

government's qualified deliberative process privilege. See 6 *Moore's Federal Practice* Sec. 26.52

(3rd Ed. 2016) and 26A *Wright & Graham, Federal Practice and Procedure: Evidence* Sec. 5680 (1992).

This privilege prevents the quality of governmental decisions and the agencies' advisory

role from being affected. P.F. Rothstein and S.W. Crump., *Federal Testimonial Privileges:*

*Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases*, 2nd Ed., West, 2012,

Sec. 5:3, pp. 431-432. In this regard, it has been acknowledged that "[…] *a substantial public*

*interest exists in maintaining and ensuring full, frank, open exchanges of ideas between members of the*

*agency and other advisors and the decision maker.*" Rothstein and Crump, op. cit., p. 433. Also,

restricting access to this type of communication protects "*against* **premature disclosure** *of*

*proposed policies and decisions before they have been finally formulated or adopted*". [ ] Rothstein and

Crump, op. cit., p. 436. To benefit from the privilege over deliberative processes, the

government must comply with the following process: (1) the head of the agency that controls

the information must officially claim

---

[48] (Underlining, emphasis, italics, and citations in the original). (Scholia omitted.)

[49] Given their importance and their relevance to the dispute under our consideration, this Court fully embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 29-33.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          16
*Judgment*

the privilege, after weighing it; (2) an agency official must provide the exact reasons why the confidentiality of the information or documents is claimed, and (3) the government must identify and describe the information or the documents it intends to protect. *Moor's Federal Practice,* supra, p. 26-412.10(1). See, also, United States v. Reynolds, 345 US 1 (1953).

**Furthermore, in order to activate the privilege, the government must prove that the document in question is a "deliberative" and "pre-decisional" document.** *Moore's Federal Practice*, supra, p. 26-412.8. A piece of information can be considered as deliberative insofar as it relates to a policymaking process. *Moore's Federal Practice*, supra, p. 26-412.9. a document is "pre-decisional" when it is prepared to assist in the government's decision-making process, in other words, prior to making said decisions. *Moore's Federal Practice*, supra, pp. 26-412.8 and 26-412.9. Therefore, "any information or documentation following the governmental decision is also not protected […]" Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 293; N.L.R.B. v. Sears, Roebuck & Co., 421 US 132 (1975). Based on the above, this privilege does not cover factual matters. Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 293. Nor does it protect objective material or documents in which the agency adopts its position on an issue or dispute. *Moore's Federal Practice*, supra, págs. 26-412.6 y 26-412.7. For example, this privilege does not include "*advisory opinions, recommendations, and communications relating to policy formulations*". *Moore's Federal Practice*, supra, p. 26-412.8.

**In order to determine whether this privilege prevails, the court must conduct a balance of interest analysis.** Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 293. In weighing the balance of interests, some of the factors that must be considered by the court include: "[…] *the interests of the private litigant, the need for accurate judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigation and issues involved, and the impact on the effectiveness of government employees*". *Moore's Federal Practice, supra, 2012, p. 26-412.11.* Also, the potential impact of the disclosure on the process of frankly discussing the policies and decisions in question must also be assessed. F.T.C. v. Warner Commun. Inc., 742 F.2d 1156 (9th Cir. 1984). In brief, this



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    17
*Judgment*

privilege may be weakened if it is fully demonstrated that a particular need to obtain the information exists which outweighs the reasons for its confidentiality. *Moore's Federal Practice*, supra, p. 26-412.11. The courts must have flexibility at the time of assessing this privilege, so as to ensure the protection of the deliberative process. *Moore's Federal Practice*, supra, 2016, p. 26-412.10. However, our evidence code demands a strict interpretation when determining the existence of a privilege. Rule 518 of the Rules of Evidence, 32 LPRA Ap. VI (2010).[50]

### d. THE EXECUTIVE PRIVILEGE[51]

**The executive privilege** was acknowledged in our legal system in <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, resulting from the Constitution of Puerto Rico. Art. I, Sec. 2 and Art. IV, Secs. 1 and 4, Const. PR, LPRA, Volume 1 (2016). This privilege **seeks to protect communications between the Governor and his subordinates, advisors, or assistants.** Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., p. 165; J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2009, p. 363; Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 311. This is a qualified privilege; therefore, it does not grant the Executive Branch the absolute power to "retain information based on its alleged confidentiality." <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, p. 598. See *Wright & Graham*, supra, p. 52. Thus, we must emphasize that "an allegation that lacks public privilege, that is not supported by adequate legislation, must be particularly warily examined." <u>Peña Clos v. Cartagena Ortiz</u>, supra, p. 599.

Consequently, "[i]t is, ultimately, up the Executive Branch to define the boundaries of that [privilege]." Peña Clos v. Cartagena Ortiz, *supra*, p. 598. See, also, <u>United States v. Nixon</u>, 418 US 683 (1974) y Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 312. As we have already stated, "the method of weighing the interests in conflict" has been used for this purpose. <u>Peña Clos v.</u>

---

[50] (Underlining, emphasis, italics, and citations in the original.) (Scholia omitted.)
[51] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    18
*Judgment*

Cartagena Ortiz, *supra*, p. 598. See, also, <u>United States v. Nixon</u>, *supra*.[52]

### e. IN-CHAMBER INSPECTION[53]

Although FOIA, 5 USCA 552(a)(4)(B) (2007) allows the examination of documents in chambers, federal courts have stated on numerous occasions that this alternative is unfavorable in cases where certain governmental privileges are claimed. See, for example, <u>Smith v. U.S. Marshals Serv.</u>, 517 Fed. Appx. 542 (9th Cir. 2013); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, 354 F.3d 1072 (9th Cir. 2004), partly repealed in other aspects by <u>Animal Legal Def. Fund v. U.S. Food & Drug Admin.</u>, 836 F.3d 987 (9th Cir. 2016); <u>Turner v. U.S. Dept. of the Treasury</u>, No. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); <u>Truthout v. Dept. of Justice</u>, 20 F. Supp. 3d 760 (E.D. Cal. 2014), aff'd, 667 F. Appx. 637 (9th Cir. 2016). It also should not be the first choice, since the Government should be initially afforded the opportunity to justify and prove its claim of confidentiality. <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Conservation Force v. Jewell</u>, 66 F. Supp. 3d 46 (D.D.C. 2014), aff'd, No. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015); <u>Truthout v. Dept. of Justice</u>, *supra*. This can be achieved by allowing the Government to replace the in-chamber inspection of the document in dispute. <u>Solers, Inc. v. Internal Revenue Serv.</u>, 827 F.3d 323 (4th Cir. 2016); <u>Hamdan v. U.S. Dept. of Justice</u>, 797 F.3d 759 (9th Cir. 2015); <u>Ethyl Corp. v. U.S. E.P.A.</u>, 25 F.3d 1241 (4th Cir. 1994). In other words, the court may rely on supplemental evidence to determine whether the privilege claimed by the Government is admissible. <u>Lane v. Dept. of Interior</u>, 523 F.3d 1128 (9th Cir. 2008); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*. If it is decided, at this stage, that the privilege is admissible, the in-chamber inspection shall not be required. <u>Lewis v. I.R.S.</u>, 823 F.2d 375 (9th Cir. 1987).

For the purposes of the present case, we find that what is stated in the legislative record of one of the FOIA amendments with regard to the in-chamber inspection of documents is quite revealing and relevant. As stated:

---

[52] (Underlining, emphasis, italics, and citations in the original.) (Scholia omitted.)
[53] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    19
*Judgment*

> *H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate.* <u>**Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.**</u> *The burden remains on the Government under this law.* [ ] S. Rep. No. 93-1200, p. 9 (1974), <u>reprinted</u> in 1974 USCCAN 6285, 6287-88. See, also, <u>Lewis v. I.R.S.</u>, supra, p. 378 Sch. 4.

Finally, in some particular cases, the in-chamber examination may be unnecessary. See: <u>Hamdan v. U.S. Dept. of Justice</u>, *supra*; <u>Aids Healthcare Foundation v. Leavitt</u>, 256 Fed. Appx. 954 (9th Cir. 2007); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973); <u>Turner v. U.S. Dept. of the Treasury</u>, *supra*. Particularly, in the case of <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*, it was concluded that, since there was no controversy regarding the type of information contained in the document in dispute, the in-chamber inspection would be an exercise in futility. Now, when the file and the Government's supplementary evidence does not satisfactorily justify the governmental privilege, then the court shall be able to conduct the in-chamber inspection of the disputed documents. <u>Islamic Shura Council of Southern California v. F.B.I.</u>, 635 F.3d 1160 (9th Cir. 2011); <u>Lane v. Dept. of Interior</u>, *supra*. See, also, 33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, p. 524 (2006).

## IV.

Pursuant to the *Mandate* received, this Court is called upon to determine "whether the State can fulfill its burden of proof to support the claimed privileges. Of course, before that, [the Court] must determine **whether the document in question is, indeed, public in nature**. To be able to determine, in balancing interests, whether a privilege exists in this case, the parties must, **first**, put the court in a position to identify which are the interests in conflict."[54]

Having received the memoranda of law filed by the parties, in which they must have placed the Court "in a position to decide whether the document is public in nature and, if so, whether the claimed privileges are admissible,"[55] this Court finds, firstly, **that the document at**

---

[54] (Emphasis supplied). *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, p. 39.
[55] *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, p. 40.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                        20
*Judgment*

**issue is public** under the rule of law of the Promesa Act and, secondly, that the respondent **failed to meet its burden of proof to support the claimed privileges.** Moreover, the Court concludes that by weighing the interests in conflict, the State was not able to establish that a deliberative process existed that must be protected *vis-à-vis* the constitutional right to have access to information as citizens or as legislators to monitor government operations in light of the presence of a new governmental actor, the Board.  The State also could not prove that the public interest would be better served by the confidentiality of the document than by its disclosure. This court cannot ignore that "secrecy in public affairs is an exception, not the rule."[56]

There is no dispute between the parties regarding the fact that the information requested herein consists of the document prepared by the Governor pursuant to Section 201 of PROMESA and submitted to the Board for its review.[57] The point at issue is whether the document is a public document. In other words, if the respondent was able to establish, by producing evidence to that end, that the document is pre-decisional because it contains deliberative information.

It is the position of the respondent that the **document** whose disclosure is requested is a pre-decisional document because it contains deliberative information. This, because the document was simply subject to changes, which proves that it was not final and, consequently, was deliberative.  The respondent also broadly **mentions**, in a generalized manner and without any details or specificities, that the **document** is protected by the executive privilege. The respondent failed to conduct a detailed exercise to enlighten the Court as to the contents of the document, whether parts of it refer to conversations between the Government and his aides or advisors, recommendations,  consultations, determinations of the Governor or of his support staff or advisors with regard to the Executive Branch's deliberative process the for the development of the bill before the Board, or whether it includes internal documents of the agencies. The State does not even mention if the document includes more information than the one requested by Section 201 of PROMESA, pursuant to which the document was prepared.

---

[56] See: *Santiago v. Bobb y el Mundo, Inc.* 117 DPR 153, 159 (1986).
[57] Section 201 of PROMESA, 48 USCA sec. 2142.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

This, when the plaintiff himself specified that he was not interested in the disclosure of any such

information that could

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          21
*Judgment*

be part of the document. **The plaintiff specified that he only wanted access to the numbers and data, the elements that, given the nature of the document – the fiscal budget – are the ones which are generally included.**[58]

On the other hand, it is well known that certain information contained in a document can be confidential or privileged in nature, but that does not necessarily mean that the entire document is confidential or privileged. This Court was not placed in a position to know what information is contained in the document. Moreover, by reading section 201 of PROMESA, this Court cannot conclude that the mental impressions or public policy decisions between the Governor and his advisors are part of the document. It is not required by section 201 of PROMESA.

Furthermore, this Court cannot conclude that the document is pre-decisional because it was subject to changes and because, according to the State, it shows a process of deliberation between the Board and the Governor. The fact is that the Board's involvement is limited to verifying the compliance of the Fiscal Plan developed by the Governor under PROMESA and to requesting information or issuing recommendations related to the compliance of the Fiscal Plan. The Governor submitted his proposed Fiscal Plan to the Board for them to review and certify the plan's compliance with PROMESA. What the respondent [sic] is interested in knowing is the content of the draft Fiscal Plan– the numbers and data – developed by the Governor and submitted to the Board in accordance with the rule of law arising from section 202 of PROMESA.

The fact is that the respondent had a duty to prove and show that the information contained in the document was official information, that its disclosure would be detrimental to the interests of the Government. "**[T]he government cannot invoke the privilege in a generalized manner.**" "[T]he right of citizens to access information regarding government affairs justifies the imposition of a great **burden of persuasion upon the government when it claims the privilege of official information**." "[T]he courts must be "careful not to lightly grant any request for confidentiality by the State." The respondent invoked the privilege over official information in a generalized manner, without proving in any way that the disclosure of the draft Fiscal Plan would be detrimental to the interests of the State.

---

[58] "It is also not necessary to protect a communication that only contains data, not opinions, since it is precisely the integrity of the opinion what we seek to protect." *In Re Sealed Case*, 121 F. 3d 729, 737 (1997).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    22
*Judgment*

On the other hand, the State also failed to prove that the **document at issue is "deliberative" and "pre-decisional."** It failed to produce specific evidence to show that the information contained in the draft Fiscal Plan developed by the governor is deliberative insofar as it relates to a policymaking process. Nor did they prove that the document was developed to help in the government's decision-making process, that is, **prior** to making said decisions. The Governor already made his decision by submitting the Fiscal Plan to the Board.[59] Note that the Board could only determine whether the Plan was in compliance with PROMESA, certify it and submit it to the Legislative Assembly or point out errors and grant a period of time for the Governor to make the identified corrections. Furthermore, the State failed to prove that the document contained information regarding the **communications between the Governor and his subordinates, advisors, or assistants. On the contrary, one the Governor submitted the draft Fiscal Plan to the Board on April 30, 2017, it becomes an autonomous entity under section 108 of PROMESA.[60]**

In this same respect, based on the facts we have established, Honorable Associate Supreme Court Judge Estrella-Martínez conclusively and categorically stated the following:

> The submittal before the Board is a mandate pursuant to the formal procedure of section 202 of the PROMESA Act, 48 U.S.C. sec. 2142. What happens here is that the Government makes a final budget proposal, which shall be sent to the Board for approval, instead of following the ordinary procedure of sending it directly to the Legislative Assembly. If the Draft Budget meets parameters set by the Board, it will be approved, and the Government will then be able to send it to the Legislative Assembly. This is why it cannot be considered as a draft. According to the statutory process, the document must be final, except only for the amendments recommended by the Board. I do not think that a working document, as the Government alleges, can be approved by the Board as a certified budget. Rather, we are faced with a congressional mandate whereby the Government of Puerto Rico now has a dual responsibility to primarily submit the Draft Budget before the Board, as well as eventually submitting it to the Legislative Assembly. In this sense, this is an official document submitted to the Board under a particular process for approval or amendment that is similar to the eventual legislative approval process.

---

[59] "According to the provisions of the PROMESA Act, the Governor knew that the document filed on April 30 could have been the budget for the Commonwealth of Puerto Rico if it was validated by the Board and subsequently approved by the Legislative Assembly. Therefore, the draft budget sent to the Financial Oversight and Management Board on April 30, 2017 does not constitute a simple deliberative exercise, but it represented a concrete public policy decision about how to distribute the funds available in the State's treasury for the upcoming fiscal year. Thus, upon examining the process to produce the document at issue, we can conclude that the privilege of deliberative process cannot be applied to the heart of the matter, that is, the details of the expenditure of public funds." See: *Bhatia Gautier v. Rossello Nevares*, *Dissenting Opinion issued by Associate Judge Mrs. Rodríguez-Rodríguez*, supra, pp. 24-25.
[60] Section 108 (c) of PROMESA, 48 USCA sec. 2128

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.



CERTIFIED TRANSLATION

SJ2017CV00271                                                                                         23
*Judgment*

> Therefore, at its official submission stage, the Draft Budget cannot be minimized as a document in a deliberative stage or a simple "draft."

> Contrary to the arguments of the Government of Puerto Rio, it has been established as a matter of law that, under the provisions of PROMESA, the Board cannot be considered as a subordinate, advisor, or assistant to the Executive Branch. In this sense, Section 108 of PROMESA, which expressly provides the Board's autonomy, cannot be omitted from this analysis. 48 U.S.C. sec. 2128. Albeit outrageous, Puerto Rico's colonial reality cannot be concealed with the purpose of creating fiction that intends to ignore the imperial role of the Board to reduce it to that of an Executive Branch's subordinate, advisor, or assistant. That fiction is not the reality faced by Puerto Rico. Secrecy only strengthens said reality.

Due to this being an issue of high public interest involving the constitutional rights of the Executive Branch and the Legislative Branch, and for it being a legal dispute in which this Court concluded that the aforementioned document is public, as well as after this Court having performed the balance of interests based on the type of documents, the in-chamber inspection is unnecessary. The in-chamber inspection would only have been the vehicle to be used if the State had stated compelling reasons that would have placed this Court in a position to understand that the examination of the document was essential to its analysis. The State did not provide any valid justification to support the confidentiality of the document. In other words, the State failed to prove that the disclosure of the information could affect or could be detrimental to public interest and to government operations.

To summarize, the State should have made a great effort to submit specific evidence proving the existence of interests that are above the values protected by the right to freedom of information.[61] For this reason, upon carefully considering all the allegations made by the parties, this Court rules that disclosing the information requested by the plaintiff is not harmful to any public or governmental interest, on the contrary, the State did not provide any reason to justify the secrecy of the document at issue.[62]

---

[61] See *ELA v. Casta*, 162 DPR 1 (2004).

[62] Access to information constitutes an essential tool to combat corruption, making the principle of transparency in public management a reality, and improving the quality of our democracies, which have been marked by a culture of secrecy and by public agencies whose information management policies are not aimed at facilitating people's access to said information." See: *Bhatia Gautier v. Rossello Nevares, Dissenting Opinion issued by Associate Judge Mr. Colón-Pérez*, supra, p. 1, citing the Inter-American Commission on Human Rights of the Organization of American States. Special study on the right of access to information, Org. American States, Washington, D.C. 2007, p. 6.

      I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                    24
*Judgment*

## JUDGMENT

For the reasons explained above, with all issues having been submitted to the consideration of the Court in the memoranda of law, and given that the State failed to prove the existence of interests that are above the constitutional right of access to information, the plaintiff's request is hereby **UPHELD**, and the State is **ORDERED** to, within **10 days**, disclose the Draft Fiscal Plan submitted to the Board on April 30, 2017 pursuant to section 202 of PROMESA. This, for it being a public document, as well as due to the State's failure to justify and prove the claim of confidentiality of the above-referenced document.

There is no valid justification on the part of the State that would move this Court to maintain the secrecy of the document at issue. Particularly, when our Supreme Court has historically provided that access to public information constitutes a fundamental pillar of every democratic society. The constitutional right of access to public information contributes to transparency in governmental operations and promotes a sound public administration.[63]

**BE IT RECORDED AND NOTICE HEREOF BE DULY GIVEN.**

In San Juan, Puerto Rico, on March 16, 2018.


## F/LAURACELIS ROQUES-ARROYO
## SUPERIOR COURT JUDGE

---

[63] C.F. Ramos Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR No. 4, p. 1015 (2016).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.