# EXHIBIT B



# GOVERNOR OF PUERTO RICO
## Ricardo Rosselló Nevares

April 2, 2018

**VIA EMAIL AND OVERNIGHT COURIER**

Mr. José B. Carrión III
Chairman
The Financial Oversight and Management Board for Puerto Rico
P.O. Box 192018
San Juan, PR  00919-2018

Re:   **Fiscal Plan for Puerto Rico**

Dear Mr. Carrión:

I have received the Board's March 28, 2018 letter identifying areas where the Board believes the Government's Fiscal Plan for Puerto Rico, as submitted on March 23, 2018 (the "Commonwealth Fiscal Plan"), should be revised to meet PROMESA section 201's certification requirements[1] and the Board's Guiding Principles (defined below).  As the letter acknowledges, the Commonwealth Fiscal Plan is the product of intense negotiation and collaboration over the past two months between the Government and the Board, together with their respective advisors, to revise the Commonwealth's existing fiscal plan, certified on March 13, 2017 (the "Current Fiscal Plan").[2]

---

[1]   "PROMESA" means the *Puerto Rico Oversight, Management, and Economic Stability Act of 2016*, codified at 48 U.S.C. §§ 2101-2241.

[2]   Following the unprecedented destruction brought by Hurricanes Irma and María in September 2017, the Board passed a resolution on October 31, 2017 requiring the Government to submit revisions to the Current Fiscal Plan by January 24, 2018 to adjust for Puerto Rico's post-hurricane economic reality.  At the same time, the Board passed a resolution establishing nine guiding principles it would use to evaluate the fiscal plan revisions (the "Guiding Principles") in addition to PROMESA section 201(b)(1)'s 14 criteria.  On January 24, 2018, the Government submitted its proposed revisions to the Current Fiscal Plan (the "January 24 Proposed Plan").  On February 5, 2018, the Board sent the Government a notice of violation (the "February 5 Notice"), stating that the January 24 Proposed Plan required certain revisions before the Board could certify it as compliant with PROMESA and the Guiding Principles.  The February 5 Notice provided that the Board would "continue to discuss the [January 24 Proposed Plan], and the revisions detailed [in the February 5 Notice], with [the Government] in the coming weeks," so that the Government could submit further revisions by February 12, 2018.  After further discussions with the Government, the Board extended the submission deadline, and the Government timely submitted the Commonwealth Fiscal Plan on March 23, 2018.

**RICARDO ROSSELLÓ NEVARES**
GOVERNOR

**OFFICE OF THE GOVERNOR**
LA FORTALEZA

In light of the substantial time, effort, and resources we both dedicated to achieving fiscal plan consensus, the Board's substantial proposed fiscal plan revisions are of great concern. The Board's proposed revisions cover three broad areas: (i) baseline projections; (ii) structural reforms; and (iii) fiscal measures.[3] These suggested revisions represent a significant step backward in achieving alignment on critical issues necessary to improve the lives of the people of Puerto Rico.

With respect to the Commonwealth Fiscal Plan's baseline projections, the Board has identified eleven points requiring additional adjustments. I have mandated our team to review each of these points to make appropriate recommendations as to which should be included in the Commonwealth Fiscal Plan.

Regarding structural reforms and fiscal measures, the Government recognizes that PROMESA grants the Board discretion to determine whether a Commonwealth fiscal plan satisfies the requirements for certification. But as the U.S. District Court has emphasized, the Board's powers under PROMESA are limited.[4] The Board may not use the fiscal planning process to usurp or impair the Government's own exercise—through legislation, expenditures, or otherwise—of its political, governmental, and operational powers.[5] Some of the Board's recommended changes would impermissibly interfere with these powers. The Government will not allow the takeover of these powers, and therefore cannot be compelled to implement many of the suggested revisions.

The Government also believes certain of the Board's suggested revisions are tantamount to "recommendations" as addressed in PROMESA section 205(a), which the Board cannot mandate the Government adopt. These recommendations fall into three Government policy-making categories:

- Reforms requiring legislative action;

---

[3] While the Board has characterized many of its proposed changes as "fiscal measures," certain of those changes are not fiscal matters at all. For example, eliminating the county structure from the regionalization portion of the proposed fiscal plan would be a structural measure, not a fiscal one. Similarly, the Board's comments concerning PREC have no meaningful fiscal component. For the purpose of convenience and ease of reference only, this letter adopts the Board's labels, but does not concede that any of these measures is "fiscal" just because the Board labeled them as such.

[4] *See* Opinion and Order Denying Urgent Motion of FOMB to Confirm Appointment of a Chief Transformation Officer, *In re The Financial Oversight and Management Board for Puerto Rico,* Case No. 17 BK 3283-LTS (D. P.R. Nov. 16, 2017) [ECF No. 1820] ("Order").

[5] *See* PROMESA § 303 (Except as specifically authorized by title I or title II of the statute, PROMESA "does not limit or impair the power of [the Commonwealth] to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality.").

- Measures abrogating existing laws, regulations, executive orders, or contracts; and

- Measures that implicate the Government's day-to-day operations.

### I. Revisions Requiring Additional Legislative and/or Executive Action.

Most significantly, the Board may not *require* the Government to pass legislation. That power remains the Legislature's and Executive's sole province in areas such as pension and labor reform and regulatory measures. Likewise, the Puerto Rico Constitution reserves solely to Puerto Rico's Legislature the power to control taxation.[6] Many of the Board's recommendations are inappropriate acts of interference that fall into this category, and the elected Government will not undertake them:

- **Labor Reform:** We are committed in establishing a path to increase labor force participation. Last year, we changed our labor laws to reflect this objective. Yet the Board insists that the Commonwealth Fiscal Plan include mandates to provide for an immediate implementation of at-will employment, the elimination of Christmas bonuses, mandatory vacation and sick leave, and similar changes to the labor market; with little to no consideration on labor compensation, minimum salary increase and proper training for our labor force. These directives are fundamentally at odds with the proposals we have discussed over the last two months. The Board cannot, through fiscal-plan fiat, impose these measures upon the elected Government. Only the Legislative Assembly can enact such labor reforms through new legislation. Because these proposals represent a radical departure from the reforms we have discussed, and the Board lacks power to foist them on the elected Government, the Government will not include a labor reform proposal (other than EITC and a work requirement for the Nutritional Assistance Program) in the further revised Commonwealth Fiscal Plan.

- **Pension Reform:** The Board continues to insist on an average 10% reduction to pension benefits across all of the Government's retirement systems. Any changes to pension benefits require Legislative action, however. The Government opposes these additional pension reduction measures because they impose a disproportionate burden on Puerto Rico's workers and retirees. Implementing any pension reform in the Commonwealth Fiscal Plan would require both Legislative and Executive support, and I can assure the Board it would receive neither. Furthermore, as I have expressed to you several times, including pension cuts in the Commonwealth Fiscal Plan is inappropriate because there

---

[6] P.R. CONST. ART. VI, § 2 (the Commonwealth's power "to impose and collect taxes and to authorize their imposition and collection by municipalities shall be exercised as determined by the Legislative Assembly and *shall never be surrendered or suspended*.").

are significant legal impediments to implementing such cuts through a Title III plan of adjustment.

- **PREC:** To establish an independent regulatory authority for the power sector, the Legislative Assembly will have to pass new legislation. Only the new legislation—not the Commonwealth Fiscal Plan—can establish the respective roles of the regulator and Board (if any) as determined in the sole discretion of the Legislature.

- **Office of the CFO:** Establishing the Office of the CFO would likewise require the Legislative Assembly to pass new legislation. Although we aim to create the Office of the CFO, the Commonwealth Fiscal Plan cannot dictate the timing and policy parameters for establishing it.

- **Agency Efficiencies Measures:** Executive action is required to implement the Board's prescribed right-sizing measures, including expenditure reductions such as back-office consolidations and non-personnel spending. The Board cannot, under the guise of the Commonwealth Fiscal Plan, seize Executive power to manage spending once funds are allocated through the budget.

## II. Revisions that Would Alter Existing Laws or Contracts.

Similarly, any measure that would invalidate the Government's existing laws and contracts is beyond the Board's power. While PROMESA authorizes the Board to review proposed legislation and certain *new* contracts and regulations,[7] the statute denies the Board any power to impair or abrogate existing legislation or contracts. A number of the Board's suggested revisions fall within this category:

- **"Crudita":** The Board's suggested revisions include removing the $470 million annual cap on the Crudita petroleum tax. In order to remove the cap, the current tax legislation must be revised through Legislative action. The Board cannot compel the Legislative Assembly to make such a change to tax policy. Under Puerto Rico's Constitution, that policy is solely within the Legislature's power.

- **Special Revenue:** The Board seeks to change fiscal policy by requiring all revenues to flow through the General Fund rather than to Special Revenue Funds. This would require Legislative action to change existing laws governing the flow of funds within the Government's current structure, along with a major restructuring of Government

---

[7] *See* PROMESA §§ 204(a), (b).

RICARDO ROSSELLÓ NEVARES
GOVERNOR

OFFICE OF THE GOVERNOR
LA FORTALEZA

operations and technological infrastructure. Accordingly, the Board cannot mandate such actions through the Commonwealth Fiscal Plan.

- **PRIS:** The Board seeks a provision in the Commonwealth Fiscal Plan to ensure that the Institute of Statistics remains an independent standalone entity, and to amend the budget of the Ethics and Comptroller's Office. The Government is in general agreement with the Board on the importance of independently developed and reliable statistics but disagrees with the Board's proposed approach and its intrusion in the Government's day-to-day functioning. Only the Legislative Assembly has control to amend the existing laws governing PRIS.

**III. Revisions Affecting Day-to-Day Governmental Operations.**

Nor can the Board assume control over the Government's and its instrumentalities' day-to-day operations, as the District Court has held.[8] Thus, the Board cannot require the Commonwealth to adopt specific operational measures or direct the fiscal plan's implementation. While the Board must evaluate whether the Government's funding allocation is fiscally responsible and attractive to the capital markets, and the Board may require a reduction in expenditures, it may not dictate to the Government precisely how to expend funds. As the Court observed, "Congress did not grant the FOMB the power to supplant, bypass, or replace the Commonwealth's elected leaders and their appointees in the exercise of their managerial duties."[9] Rather, the Court recognized Congress's intent that the Board only "provide guardrails for the Puerto Rico government"—but not commandeer its powers.[10] In many instances, the Board's suggested revisions not only attempt to allocate money to specific spending areas, but also seek impermissibly to dictate day-to-day operational decisions on how that money should be spent:

- **Traffic Relief:** The Board suggested revisions seek to impose specific initiatives to reduce transportation delays and use various operational and technology solutions for traffic relief in Puerto Rico's major metropolitan areas. The Government is in broad agreement with the Board on working towards traffic relief. In fact, this has been a programmatic commitment of our administration. However, these duties are relegated to Puerto Rico's elected leaders and managers, who are each responsible for implementing Government policies necessary for the day-to-day operations of Puerto Rico's roadways.

---

[8] See Order at 12 ("[N]othing in the fiscal plan, budgeting, and enforcement provisions of PROMESA sections 201, 202, 203, and 204 suggests that the FOMB is the principal body empowered to manage . . . day-to-day functions" of the Government or its instrumentalities.).

[9] See id. at 14.

[10] See H.R. Rep. No. 114-602, at 112 (2016).

**RICARDO ROSSELLÓ NEVARES**
GOVERNOR

**OFFICE OF THE GOVERNOR**
LA FORTALEZA

Notwithstanding evidence that traffic congestion negatively effects growth, we are not confident in the available evidence supporting the proposed solutions and investments as having the ability to raise long-term real GNP growth.

- **Regionalization and County Model:**  The Board has rejected the Government's proposal to transition to a county government model.  But the Government should be free to pursue this model to achieve significant cost savings as a matter of structuring its day-to-day operations.

- **Corrections:**  The Government's proposal for cost savings at the Department of Corrections and Rehabilitation involves day-to-day operational decisions that affect the Government's treatment of incarcerated prisoners.  The Board should not be able to control such decisions through the Commonwealth Fiscal Plan.

*     *     *

I note that some of the Board's suggested revisions would harm Puerto Rico's economy, outweighing any savings they may generate.  For example, reducing spending on government personnel through layoffs and eliminating benefits would do more harm than good, as affected Government employees would reduce their spending in view of their diminished circumstances.  By contrast, the Government's proposal to encourage workforce attrition and give the Government more flexibility in efficiently deploying its workforce would achieve sufficient cost savings by establishing a new early retirement window and targeted transition window to be applied only on a voluntary basis to a pool of approximately 100,000 employees, reducing Government spending by eliminating jobs of those who would like to retire anyway.

Indeed, the Board's additional cost-saving recommendations are unnecessary in light of the Government's proposed plan that achieves a $5.6 billion surplus over six years. The Government's proposed plan would implement structural reforms forecasted to produce additional economic growth of 0.8% by fiscal year 2023, while also achieving $1.45 billion in savings from government right-sizing measures over that time.

The fact is that the people of Puerto Rico, in the aftermath of Hurricane María, have suffered a great deal in terms of reduced Government services and economic loss.  Now the Board is attempting to enforce additional cuts on Government employee and retirement benefits at the worst possible moment, as Puerto Rico attempts to recover.  The Government strongly believes that the suggested revisions would significantly depress macro-economic growth, which is an important cornerstone of the Commonwealth Fiscal Plan.  Rather than pursue a narrowly tailored approach aimed at reducing the negative economic consequences of draconian reforms, the Board continues to insist on arbitrarily imposing these regressive measures that would place a

La Fortaleza, San Juan, PR 00901 • PO Box 9020082, San Juan, PR00902-0082 • gobernador@fortaleza.pr.gov • 787.721.7000

**RICARDO ROSSELLÓ NEVARES**
GOVERNOR

**OFFICE OF THE GOVERNOR**
LA FORTALEZA

significant burden on Puerto Rican working families, in both the private and public sectors, on top of the other right-sizing measures being implemented by the Government.

As the Board has acknowledged, there are "many areas of alignment" between the Government and the Board. But alignment on those matters does not give the Board authority to divest the duly elected Government of its sovereign powers with respect to the remaining contested items. While we remain open to dialogue with the Board, any further discussions can be productive only if the Board accords proper respect for the elected Government's political and governmental powers.

Simply put, as Governor, I will not allow the Board to again seek the exercise of powers it does not have. Should the Board decide to certify a fiscal plan that exhibits an overreach of its powers, know that the elected Government will exercise its discretion when implementing those measures it considers proper and in the public well-being. We suggest the Board refrain from taking actions that will cause more detriment to the task the Board was mandated to execute.

We will submit a further revised Commonwealth Fiscal Plan to the Board by April 5, 2018, under the criteria I have just outlined. I am hopeful that the Board will revisit its position so that we may continue working with you on these matters. Please do not hesitate to reach out with any questions you may have.

Very truly yours,

Governor Ricardo Rosselló Nevares

cc: Andrew G. Biggs
Carlos M. García
Arthur J. González
José R. González
Ana J. Matosantos
David A. Skeel, Jr.
Natalie A. Jaresko
Jaime El Koury
Christian Sobrino Vega
Gerardo Portela Franco
Mohammad Yassin



# GOVERNOR OF PUERTO RICO
## OFFICE OF THE GOVERNOR

**Governor of Puerto Rico insists he will not give way to layoffs, pension reduction, or a labor reform without raising the minimum salary**

**(April 1, 2018 - La Fortaleza, San Juan)** The governor of Puerto Rico, Ricardo Rosselló, announced today that he will hand over a new revised Fiscal Plan to the Financial Oversight and Management Board next Thursday that will exclude the layoffs of public employees, a labor reform and a reduction in pensions.

In a letter addressed to the Financial Oversight and Management Board, Rosselló emphasized that, although the federal PROMESA Act empowers this Board to certify or not the Fiscal Plan, the same statute establishes that the Board can not usurp the legislative and operational powers of the Government of Puerto Rico.

"The Government will not allow the takeover of these powers, and therefore cannot be compelled to implement many of the suggested revisions," the governor said in the letter.

Rosselló maintained that there is a commitment to increase labor participation, but rejected the elimination of the Christmas bonuses, mandatory vacations and sick leave by law because the Financial Oversight and Management Board insists on eliminating them without giving little to no considereation on labor compensation, like the increase in minimum salary increase and proper training for labor force.

For this reason, the governor announced that the revised Fiscal Plan that will be submitted by the Government will not contain a labor reform proposal and will only include the Earned Income Tax Credit (EITC) and the work participation requirement to be elegible to the Nutritional Assistance Program.

"The Board continues to insist on an average reduction of 10% of pension benefits in all government retirement systems. However, any change in pension benefits requires legislative action. The Government opposes these additional measures to reduce pensions because they impose a disproportionate burden on the workers and retirees of Puerto Rico," stated Rosselló in the letter sent today.

In addition, in the letter, the governor lists several of the proposals of the Board that do not have his backing and that would also require legislative action such as the revision of the so-called "Crudita petrolium tax", and the change of fiscal policy to demand that all State income flows through the General Fund instead of Special Revenue Funds.

"The Board can not compel the Legislative Assembly to make such a change in tax policy. Under the Constitution of Puerto Rico, that policy is only within the power of the Legislature," expressed the governor.



# GOVERNOR OF PUERTO RICO

### OFFICE OF THE GOVERNOR

In addition, the governor rejected proposals that interfere with the operational powers of the Government such as: the limitation of the use of vehicles based on license numbers because this endangers the mobility of citizens to their workplaces.

Furthermore, he insisted that he will develop regionalization, counties and the voluntary mobilization of incarcerated prisioners to institutions in other jurisdictions of the United States, because these proposals will produce significant savings in the daily operation of the Government.

"The Government of Puerto Rico firmly believes that the suggested revisions (by the Board) would significantly depress macroeconomic growth, which is an important cornerstone of the Fiscal Plan," Rosselló added in the seven-page letter.

Although there are many areas of alignment in the discussions with the Financial Oversight and Management Board, Rossello ruled that "as Governor, I will not allow the Board to again seek the exercise powers it does not have."

"Should the Board decide to certify a fiscal plan that exhibits an overreach of its powers, know that the elected Government will exercise its discretion when implementing those measures it considers proper and in the public well-being. We suggest the Board refrain from taking actions that will cause more detriment to the task the Board was mandated to execute," the governor concluded in the letter.

###