UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO,<br>et al., | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------x

MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART MOTION REQUESTING RELIEF
FROM STAY UNDER SECTION 362(D)(1) OF THE BANKRUPTCY CODE (DOCKET ENTRY NO. 2434)

Before the Court is a motion filed by Gladys García Rubiera, as lead plaintiff on behalf of a certified class (collectively, the "Movants") for relief from the automatic stay imposed by the filing of the above-captioned Title III case in order to permit implementation and enforcement of certain stipulations (the "Stipulations") entered in the class action lawsuits captioned <u>Gladys García Rubiera, et al. v. Hon. Luis G. Fortuño, et al.</u>, Case No. 02-1179 (GAG), pending before the United States District Court for the District of Puerto Rico, and

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Gladys García Rubiera, et al., v. Asociación de Suscripción Conjunta, et al., Civil Number K DP2001-1441 pending before the Puerto Rico Court of First Instance (the "Lawsuits"). (See Case No. 17-3283, Docket Entry No. 2434, Motion Requesting Relief of Stay Under 362(d)(1) of the Bankruptcy Code (the "Motion").) The Court has reviewed the parties' submissions carefully. For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

General Background

The Stipulations that Movants seek to enforce are complementary and arise from years of litigation concerning the retention by the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor") of duplicative automobile insurance premium payments made in connection with automobile licensing procedures. The United States Court of Appeals for the First Circuit has rendered three decisions in the course of the litigation: Gladys García-Rubiera, et al., v. Fortuño, 570 F.3d 443 (1st Cir. 2009) ("Garcia 2009"); Gladys García-Rubiera, et al., v. Fortuño, 665 F.3d 261 (1st Cir. 2011) ("Garcia 2011"); and Gladys García-Rubiera, et al., v. Fortuño, 727 F.3d 102 (1st Cir. 2013) ("Garcia 2013").

Commonwealth vehicle owners are generally required to pay an annual insurance premium to the Commonwealth upon obtaining or renewing a vehicle's license pursuant to Puerto Rico's Compulsory Motor Vehicle Liability Act (the "Law" as amended by "Law 230"), even when such vehicle owners have purchased private insurance. Such premiums were deposited in the Compulsory Liability Underwriting Association of Puerto Rico ("JUA"), an entity created pursuant to the Law. The Law provided that vehicle owners who had purchased private insurance were entitled to the reimbursement of duplicative insurance premiums paid to

the Commonwealth. In 2001, Movants filed the class action Lawsuit in Puerto Rico Court of First Instance to compel the JUA to reimburse accumulated duplicate premiums.

Law 230

In 2002, following the commencement of that Lawsuit, the Commonwealth enacted Law 230, which required the JUA to transfer certain accumulated and future duplicate premiums to the Commonwealth's Secretary of the Treasury (the "Secretary"), mandated the establishment of a procedure for processing reimbursement requests, and provided that unclaimed premium monies transferred to the Secretary by the JUA would be held by the Secretary "in its fiduciary capacity" for five years, and that any unclaimed amounts would then escheat to the Commonwealth.[2]

---

[2] Law 230 provides in pertinent part that:

(j) The Joint Underwriting Association shall transfer to the Secretary of the Treasury the funds designated in its annual statement as 'Funds Retained by the Insurer Belonging to Others'. . . that on the close on December 31 have remained in its books for more than two (2) years counting from the date on which the premiums were collected through the issuance or renewal of a motor vehicle license. . . .

The Secretary of the Treasury shall retain the funds transferred by the Joint Underwriting Association in its fiduciary capacity for a five (5)-year term counting from the date in which the retained funds are transferred by the Joint Underwriting Association to the Secretary of the Treasury.

. . . The Secretary of the Treasury shall establish a procedure for processing the reimbursement request of any person alleging a right to the retained funds. Once five (5) years have elapsed without the consumer claiming the retained funds, these shall become property of the Commonwealth of Puerto Rico and they shall be transferred to the General Fund of the Commonwealth Treasury.

26 L.P.R.A. § 8055(j).

Movants commenced the federal Lawsuit, challenging Law 230 on various constitutional grounds, in February 2002.

First Circuit Decisions

In Garcia 2011, the First Circuit held that the Law 230 reimbursement scheme violated notice requirements of the Due Process Clause, and remanded the case to the district court with instructions to fashion injunctive relief providing both public and individualized notice of the reimbursement procedures. 665 F.3d at 279. As to ownership of the duplicative premiums, the Garcia 2011 decision noted:

> In 2007, the first of the duplicate premiums transferred by JUA to the Treasury escheated to the Commonwealth; additional funds escheated in 2009, and more are scheduled to escheat this year. All told, the Commonwealth has obtained title by escheat to almost 95 percent of the duplicate premiums transferred under Law 230.

Id. at 268.

In Garcia 2013, the First Circuit again recognized that some of the funds had already escheated to the Commonwealth (see 727 F.3d at 107 & n.5), found that further district court proceedings were necessary to develop a constitutionally compliant notice and reimbursement procedure, and ordered that "no duplicate premiums shall escheat to the Commonwealth until it has established and complied with a reimbursement procedure which meets the basic requirements of constitutional due process." 727 F.3d at 105.

The Stipulations

Ultimately, the parties entered into the two complementary Stipulations, settling the Lawsuits. (See "Stipulation for Permanent Injunction," Docket Entry No. 2432-2; "Partial Judgment" in connection with "Joint Motion Requesting Partial Judgment," Docket Entry No. 2517-1.) Each Stipulation provides for, among other things, public and individualized notice of

the reimbursement procedure for vehicle owners who paid duplicative insurance premiums in connection with their vehicle registrations between 1998 and 2010, a two-year window for the submission of claims, a 120-day deadline for verification of claims, and prompt payment of approved claims thereafter. The Stipulation settling the Commonwealth Lawsuit also provides for an award of 20% of the claimed duplicate insurance premiums to class counsel as attorneys' fees, with an advance of $1,375,000 to be paid in installments over a period of four years. The Commonwealth made an initial installment payment of $375,000 to the class action attorneys but has made no further payments and has not yet implemented the class notice procedures.

Stay Relief Motion Practice

Movants, asserting that all of the duplicative payments made by class members from 1998-2010 remain property of the class members, seek relief from the stay permitting full implementation of the notice and reimbursement provisions of the Stipulation. In the Commonwealth's initial opposition papers, it argued that the Motion must be denied in its entirety, principally because the Movants are "prepetition, unsecured creditors seeking preferential treatment to collect on their prepetition claims," and implementation of the notice and claim procedures under the Stipulations would be costly in terms of Debtor administrative and financial resources since it would have to be staffed and funded by the Commonwealth. (Debtor's Objection, docket entry no. 2570, ¶¶ 1, 8, 13.) In their reply submission, Movants principally reiterated their position that all of the funds involved, including any funds necessary to cover administrative costs, are property of the class members and thus the class members are neither seeking preferential treatment nor calling upon Debtor assets that are also subject to the claims of other creditors. (See Movants' Reply, docket entry no. 2592, at 2.) In supplemental submissions filed at the direction of the Court, the Commonwealth represented that all JUA

funds transferred to the Secretary prior to 2008 have escheated and that, since 2006, the approximately $76 million in premiums received by the Commonwealth have been "deposited into a 'reserve account' for accounting purposes", but reserved its rights with respect to its legal position as to the treatment of claims for reimbursement of duplicative premiums in any plan of distribution or otherwise. (See Debtor's First Supplemental Reply, docket entry no. 2795, ¶ 9; Debtor's Second Supplemental Reply, docket entry no. 2820, ¶¶ 4, 6.) The Debtor offered, however, to consent to modification of the stay to permit noticing and claims submissions pursuant to the Stipulation. (See Debtor's First Supplemental Reply, docket entry no. 2795, ¶ 5, 7; Debtor's Second Supplemental Reply, docket entry no. 2820, ¶¶ 4, 6.) Movants continue to maintain that all of the duplicative premiums are property of the class members and oppose partial modification of the stay, arguing that the funds are not property of the Debtor and that class members are prejudiced by further delay.

The Court has reviewed all of the parties' submissions carefully (see docket entry nos. 2434, 2517, 2570, 2592, 2706, 2777, 2795, 2818 and 2820).

## DISCUSSION

Section 362(a) of the Bankruptcy Code, made applicable by Section 301(a) of PROMESA, 48 U.S.C. § 2161, imposes an automatic stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1); see also PROMESA § 301(a). Section 362(d)(1) of Title 11 of the United States Code, also made applicable in these proceedings by Section 301 of PROMESA, permits a court to grant relief from the automatic stay "for cause." To determine whether cause exists to

lift the bankruptcy stay, courts in this district rely on the factors first enumerated by the United States Court of Appeals for the Second Circuit in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax"). See, e,g., Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) (citing Sonnax). Of particular relevance to the instant case are the following factors identified by the Sonnax Court: "whether relief would result in a partial or complete resolution of the issues," "lack of any connection with or interference with the bankruptcy case," "the interests of judicial economy and the expeditious and economical resolution of litigation," and the "impact of the stay on the parties and the balance of harms." Sonnax, 907 F.2d at 1286.

Taking up first the factor, whether relief would result in partial or complete resolution of the issues, modification of the stay to permit notice dissemination and claim submission and review (but not payment) in accordance with the Stipulations would address directly the procedural due process mandate imposed by the First Circuit in Garcia 2013 and thus resolve an administrative obligation of the Commonwealth and, by advancing the claims resolution process, benefit both the Debtor and the Movants. Further implementation of the payment aspect of the Stipulations would, however, first require resolution of issues specific to the Title III debt adjustment process, many of which are not yet ripe, as no plan of adjustment has even been proposed and the parties' submissions indicate that there may well be significant disputes regarding the classification and treatment of class members' claims. These issues include, but are not limited to, the legal and economic significance of the Garcia 2013 freeze on escheatment and the separate accounting procedures implemented beginning in 2006. Thus, this factor favors stay relief only to the extent of implementation of the notice and claims submission and review features of the Stipulations.

The factors of interference with the bankruptcy case and the impact of the stay on the parties and the balance of harms also weigh against any further stay relief at this juncture. The unresolved issues of proper treatment of the class members' claims in the context of the Title III proceeding raise the prospect of preferential treatment over other similarly situated creditors should class members' claims be paid in full prior to the formulation and approval of a debt restructuring plan. The Court recognizes fully the frustration and hardships suffered by class members and their counsel, whose access to funds has been delayed for many years, but such hardships and frustrations are also shared by many other Commonwealth creditors and the need to ensure fair and appropriate treatment of all creditors weighs heavily against payments under the Stipulation prior to examination of the Title III-related issues. Finally, for substantially the same reasons, judicial economy and the expeditious and economic resolution of the outstanding issues relating to the Lawsuits and the Stipulations also favor resolution of claims payment questions in the context of the claims processing and debt adjustment phases of the Title III proceeding.

## CONCLUSION

For the foregoing reasons, the stay of the Lawsuits and the implementation of the Stipulations is lifted solely to the extent of permitting implementation of the notice and insurance premium claim submission and review process. The Motion is denied in all other respects, and the stay remains in place with respect to the payment of any insurance reimbursements and attorneys' fee awards pursuant to the Stipulations.

The parties are, however, directed to meet and confer to discuss the following issues and must file a joint status report regarding their efforts by May 1, 2018: (i) how the

claims process established by the Stipulations will be coordinated with the general proof of claim submission and bar date mechanisms that have been established in these Title III cases; and (ii) whether claims arising from premiums paid from 2006 to 2010, and related attorneys' fees claims, should be treated in the same fashion as pre-2006 claims.

This Memorandum Order resolves docket entry no. 2434 in case no. 17-3283.

SO ORDERED.

Dated: April 6, 2018

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge