UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 2803**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH TO MOTION REQUESTING ORDER, AND RELIEF OF PARTIAL STAY FILED BY JAVIER PÉREZ-RIVERA

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

OBJECTION......................................................................................................................4

    I.    MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY FOR THE EXECUTION OF JUDGMENT AND AS TO THE LAWSUIT IN ITS ENTIRETY ........................................................4

CONCLUSION.................................................................................................................14

i

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
   217 F. Supp. 3d 508, 518 (D.P.R. 2016) ............................................................. 7

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
   28 B.R. 324 (Bankr. S.D.N.Y. 1983) .................................................................. 11

*Departamento del Trabajo y Recursos Humanos v. Javier Pérez- Rivera*,
   Civil Number SJ2017CV0512 ......................................................................... 1, 2

*FCC v. NextWave Pers. Commc'ns Inc.*,
   537 U.S. 293 (2003) ............................................................................................ 8

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
   2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ................................... 11

*In re 234-6 West 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997). Bankruptcy ........................................... 6

*In re BFW Liquidation, LLC*,
   No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14,
   2009) ..................................................................................................................... 9

*In re Breitburn Energy Partners LP*,
   No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017) ................. 7

*In re City of Stockton*,
   484 B.R. 372 (Bankr. E.D. Cal. 2012) ........................................................... 9, 10

*In re Cummings*,
   221 B.R. 814 (Bankr. N.D. Ala. 1998) ................................................................ 7

*In re Jefferson Cty.*,
   491 B.R. 277 (Bankr. N.D. Ala. 2013) ................................................................ 5

*In re Motors Liquidation Co.*,
   No. 09- 50026, 2010 WL 4630327 (S.D.N.Y. 2010) ........................................ 12

*In re Murrin*,
   477 B.R. 99 (D. Minn. 2012) ............................................................................... 7

*In re Plumberex Specialty Prod., Inc.*,
   311 B.R. 551 (Bankr. C.D. Cal. 2004) .............................................................. 11

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Residential Capital, LLC*,
  2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012) .............................11

*In re Residential Capital, LLC*,
  No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)...........9, 13

*In re Taub*,
  413 B.R. 55 (Bankr. E.D.N.Y. 2009)................................................................7

*In re Unanue-Casal*,
  159 B.R. .........................................................................................................7

*In re Unanue-Casal*,
  159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994)..........................6

*Javier Pérez Rivera v. ELA,*
  CDP2016-0070 ...............................................................................................1

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
  362 B.R. 49 (B.A.P. 1st Cir. 2007) .................................................................5

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
  537 B.R. 128 (Bankr. D.P.R. 2015) ................................................................5

*Peaje Invs. LLC v. Garcia-Padilla*,
  2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ...................................7

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
  980 F.2d 110 (2d Cir. 1992).............................................................................9

*Soares v. Brockton Credit Union (In re Soares)*
  107 F. 3d 969 (1st Cir. 1997)...........................................................................5

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
  907 F.2d 1280 (2d Cir. 1990)................................................................ passim

*Unisys Corp. v. Dataware Prods., Inc.*,
  848 F.2d 311 (1st Cir. 1988)........................................................................5, 9

**FEDERAL STATUTES**

11 U.S.C. § 362(a) .................................................................................................4

11 U.S.C. § 362(d)(1) .............................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 922 ........................................................................................................... 10

11 U.S.C. § 944 ............................................................................................................. 4

48 U.S.C. § 2101 ........................................................................................................... 8

Bankruptcy Code
  § 101 ........................................................................................................................ 8
  § 105(a) .......................................................................................................... 1, 4, 6
  § 362(a) .................................................................................................................. 1
  § 362(a) .................................................................................................................. 4
  § 362(a) .................................................................................................................. 4
  § 365 ...................................................................................................................... 4
  § 922 ...................................................................................................................... 4

**STATE STATUTES**

*Puerto Rico Oversight, Management, and Economic Stability Act*
  § 315(b) ................................................................................................................. 1

**REGULATIONS**

*PROMESA*
  § 301(a) ................................................................................................................. 4
  § 303 ...................................................................................................................... 2
  § 305 ...................................................................................................................... 2
  § 312 ...................................................................................................................... 4
  § 314 ...................................................................................................................... 4

**OTHER AUTHORITIES**

H.R. Rep. No. 95–595 (1977) ...................................................................................... 8

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion Requesting Order, and Relief of Partial Stay* [ECF No. 2803] (the "Motion") filed by Javier Pérez-Rivera ("Movant"), a party in the cases captioned *Javier Pérez Rivera v. ELA, CDP2016-0070*, pending before the Puerto Rico Court of First Instance, Superior Court of Arecibo (the "Lawsuit"), and *Departamento del Trabajo y Recursos Humanos v. Javier Pérez- Rivera,* case number *AQ-16-0740 / L-17-118*, before the Appellate Commission for Public Service (the "Arbitration," and together with the Lawsuit, the "Prepetition Actions").[2]

**PRELIMINARY STATEMENT**

1. On June 19, 2017, Movant filed the *Motion Requesting Relief of Stay* [ECF No. 383] (the "First Lift Stay Motion") seeking an order lifting the automatic stay to allow Movant to pursue the Prepetition Actions. The Prepetition Actions consist of (a) the Lawsuit, where Movant asserts a prepetition employment discrimination claim against the Commonwealth, the Puerto Rico Department of Labor and Human Resources (the "DLHR"),[3] the Secretary of Labor and other employees in their official capacity; and (b) the Arbitration, an arbitration proceeding arising from the same underlying employment discrimination claim that challenges an administrative determination of termination of employment for insubordination where Movant seeks reinstatement and back pay.

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] The DLHR is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

2. On July 12, 2017, this Court entered an order lifting the automatic stay to permit the rendering, but not the enforcement, of an award in the Arbitration. *Memorandum Order Granting Motion of Javier Perez-Rivera For Relief From The Automatic Stay* [ECF No. 620] (the "Lift Stay Order"). The Lift Stay Order further provided, however, that "[t]he stay continues to apply in all other respects, including as to entry and execution of judgment and as to the Lawsuit in its entirety, but this decision is without prejudice to Movant's right to seek further relief from the automatic stay in the future." Lift Stay Order at 5.

3. On August 31, 2017, an award was rendered in the Arbitration in Movant's favor (the "Award"), which became final on March 17, 2018.[4] The Award modified the Movant's termination from his job to a suspension without pay for thirty (30) days and provides for equitable relief, including reinstatement and back pay, within (30) days after the Award becomes final.

4. On March 26, 2018, Movant filed the Motion seeking an order modifying the automatic stay to allow Movant to (a) seek reinstatement to his job under the Award,[5] and (b) pursue and enforce his claim for back pay and damages, including pursuing such claims in the Lawsuit. Motion at 2–3.

5. In an effort to avoid further litigation costs and expenses, the Commonwealth, with the consent of the Oversight Board, engaged with Movant to clarify the manner in which the issues

---

[4] The DLHR filed a complaint before the Puerto Rico Court of First Instance in the case captioned *Departamento del Trabajo y Recursos Humanos v. Javier Pérez- Rivera*, Civil Number SJ2017CV0512, challenging the Award. On February 15, 2018, the Puerto Rico Court of First Instance issued a judgment dismissing the DLHR's complaint. The DLHR chose not to appeal the dismissal of the complaint. As consequence, the Award became final on March 17, 2018.

[5] Movant requests in the Motion that the Court "[o]rder the Department of Labor and Human Resources to, without delay, reinstall [Movant] to his Job." Motion at 2. The Commonwealth interprets this request as a request for an order to lift the automatic stay to allow Movant to enforce the Award providing for reinstatement of Movant to his job. To the extent Movant seeks an order compelling the Commonwealth to reinstate Movant to his job, the Commonwealth objects as such relief would be barred by PROMESA sections 303 and 305.

2

would be addressed and, if possible, resolve the Motion consensually. However, the parties were unable to reach an agreement.

6. The Commonwealth does not object to modifying the automatic stay solely to allow for the reinstatement of Movant consistent with the Award; however, the Commonwealth does not consent to any waiver or modification of the automatic stay so as to permit the prosecution against the Commonwealth or any other Title III debtor of any claim or claims, including, but not limited to, (i) the Lawsuit and (ii) the execution and enforcement of any judgment for monetary claims, damages, and provisional remedies.

7. Movant has failed to demonstrate that cause exists to lift the automatic stay to allow Movant to pursue the Lawsuit or seek enforcement of any back pay or damages under the Award. Indeed, this Court denied Movant's request in the First Lift Stay Motion to modify the automatic stay to allow him to pursue the Lawsuit, holding that Movant has not "tendered evidence that any significant proceedings have yet taken place in the Puerto Rico Superior Court [the Lawsuit], and thus no cause has been shown for relief from the stay of the Lawsuit." Lift Stay Order at 3. Movant has provided no such evidence in the Motion to establish why there is now cause to modify the stay with respect to the Lawsuit. The *Sonnax* factors, as they did with respect to the First Lift Stay Motion, weigh in favor of maintaining the automatic stay. Notably, the Lawsuit is not trial ready as the parties were conducting discovery, and a motion to dismiss Movant's complaint filed by the Commonwealth on August 16, 2016 was still pending before the Commonwealth commenced this Title III case.

8. Furthermore, Movant has failed to meet his burden to establish cause to modify the stay to allow him to enforce or execute any award for back pay or damages under the Award. Allowing Movant to enforce any back pay or damages would be inconsistent with the orderly debt

3

adjustment contemplated under Title III and would allow Movant to circumvent the Title III process and the confirmation of a plan of adjustment. At its core, the Motion is a claim by a prepetition, unsecured creditor seeking preferential treatment to collect on a claim against the Commonwealth, without any determination as to whether such claim should be allowed, impaired or discharged in the Title III proceeding. The treatment and payment of the Award will be determined in the Title III Case pursuant to a confirmed plan of adjustment, which will bind all creditors of the Commonwealth, including Movant. PROMESA §§ 312, 314; 11 U.S.C. § 944 (made applicable to the Title III Case pursuant to PROMESA § 301(a)).

9. Accordingly, as further explained below, the Motion should be denied as Movant has failed to show "cause" exists to lift or modify the automatic stay. However, the Commonwealth does not object to modifying the automatic stay solely to allow Movant to be reinstated to his job pursuant to the Award.

**OBJECTION**

I. **MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO FURTHER MODIFY THE AUTOMATIC STAY**

10. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title", the enforcement against the debtor "of a judgment obtained before the commencement of the case" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed

4

by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

11. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of

5

the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

12. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

13. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

14. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Here, the *Sonnax* factors point squarely toward maintaining the automatic stay and against awarding the remedy Movant seeks.

15. **<u>Sonnax Factor 1:</u>** The first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as

7

whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

16. Movant has failed to show how allowing the Lawsuit to proceed would resolve any issues relevant to the Commonwealth's Title III case. Indeed, that is because lifting the automatic stay would not resolve any issues relevant to the Commonwealth's Title III case.[6] Movant's claims, if any, can be resolved through the claims resolution process to be undertaken in the Title III cases. Therefore, the first *Sonnax* factor supports denying the Motion.

17. ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay. First, lifting or modifying the stay to allow the resolution of the Lawsuit in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. The claims adjustment process under Title III applies with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

18. As a prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the

---

[6] For the avoidance of doubt, the Commonwealth and the Oversight Board reserve all rights and defenses relating to Movant's claims, including, without limitation, any rights to challenge any set-offs or to assert any set-offs and to impair and discharge Movant's claims.

8

Commonwealth to defend Movant's claims separately in the Lawsuit would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims."). Furthermore, allowing Movant to enforce the back pay and damages portion of the Award would undercut the fundamental purpose of the automatic stay to provide a debtor a "breathing spell" and to forestall a "race of diligence by creditors for the debtor's assets." *Unisys Corp.*, 848 F.2d at 313.

19. Second, lifting or modifying the stay to proceed with the Lawsuit will interfere with the Title III case by diverting the Commonwealth's attention and resources to defending Movant's claims in another forum and will encourage other creditors to seek similar relief. Should every plaintiff with an asserted prepetition employment claim be given carte blanche to litigate their claims, the combined result would potentially have a substantial and negative impact on the Commonwealth's fiscal plan and budget. This would impede the restructuring process, and should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

9

20. In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374. Plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

21. Here, the Lawsuit is in the preliminary stages with significant steps remaining before resolution of the action, such as conducting and finalizing discovery, pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense. Thus, *Sonnax* factor 2 weighs in favor of denying the Motion.

22. ***Sonnax* Factor 4***: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Lawsuit. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

23. ***Sonnax* Factor 5***: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed full financial responsibility for defending the Prepetition Actions. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

24. ***Sonnax* Factor 6***: The sixth *Sonnax* factor—whether the action essentially

10

involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the Prepetition Actions primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

25. Here, the Commonwealth, the Secretary of Labor, the employees in their official capacity and DLHR, an agency of the Commonwealth, are the defendants in the Lawsuit. Accordingly, the Lawsuit does not primarily involve third parties rather than the Commonwealth. Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

26. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Commonwealth would have to expend considerable time and expense to litigate the Lawsuit in conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-

11

bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").

27. Here, the depletion of the Commonwealth's resources from defending against the Lawsuit and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's other creditors. In addition, the enforcement of any back pay under the Award would prejudice other creditors of the Commonwealth by allowing Movant to jump ahead in line of over other unsecured creditors, and threaten the orderly claims resolution and treatment of claims under Title III and the confirmation of a plan of adjustment. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

28. ***Sonnax* Factors 10 and 11:** Contrary to Movant's assertion, although an award has been rendered in the Arbitration, the Lawsuit—an entirely separate proceeding—remains stayed in the preliminary stages. As this Court noted in the Lift Stay Order, "[Movant] has not . . . tendered evidence that any significant proceedings have yet taken place in the Puerto Rico Superior Court, and thus no cause has been shown for relief from the stay of the Lawsuit." Lift Stay Order at 3. Movant has tendered no such evidence in the Motion.

29. Indeed, a myriad of proceedings necessary for the Lawsuit to even be trial ready remain pending, such as conducting and finalizing discovery, pretrial hearing, and the preparation and filing of the pretrial report, all of which will require the Commonwealth to expend considerable time and expense. Movant commenced the Lawsuit on May 12, 2016 asserting a claim for disability discrimination based on certain disciplinary actions and alleged retaliation against

12

Movant for pursuing claims against the Commonwealth and related parties pending before the Appellate Commission for Public Service. Movant amended his complaint on September 16, 2016 to add a claim based on his termination from his job. Prior to the commencement of the Commonwealth's Title III Case, the parties were conducting discovery, and a motion to dismiss Movant's complaint filed by the Commonwealth on August 16, 2016 was still pending.

30. As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

31. **_Sonnax_ Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Lawsuit, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this juncture of the Title III case. On the other hand, postponing liquidation of Movant's claims will neither adversely affect Movant nor promote judicial economy. Expedition of the claims will not save the Commonwealth any time

13

or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.[7]

## CONCLUSION

32. As previously noted, good faith efforts were made to reach an agreement with Movant to submit a joint motion seeking the modification of the stay to the limited extent as noted above. However, the parties have been unable to reach an agreement.

33. For the foregoing reasons, the Commonwealth requests that the Court modify the Title III Stay solely to permit Movant to seek reinstatement pursuant to the Award; provided, however, that the Title III Stay shall continue to apply in all other respects to the Prepetition Actions, including, but not limited to, the execution and enforcement of any judgment for monetary claims, damages, and provisional remedies against the Commonwealth or any other Title III Debtor.

34. It is expressly asserted that nothing contained herein shall require the Commonwealth or any of the other Debtors in the above-captioned cases or their assets or properties to satisfy any liability to Movant in any way whatsoever with respect to the Prepetition Actions. Nothing contained herein operates as a waiver or modification of the stay for any purpose other than as expressly provided for in the previous paragraph.

Dated: April 9, 2018.
San Juan, Puerto Rico

---

[7] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

14

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

15