# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**MOTION TO COMPEL COMPLIANCE WITH FEBRUARY 26, 2018 ORDER AND FOR ENTRY OF A PROTECTIVE ORDER OF AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION**

---

[1] The Debtors in these Title III cases (collectively, the "Title III Cases"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III Case numbers are listed as bankruptcy case numbers due to software limitations).

Movants the Ad Hoc Group of General Obligation Bondholders,[2] Ambac Assurance Corporation, Assured Guaranty Corp. and Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation request that the Court compel Respondents the Puerto Rico Fiscal Agency and Financial Advisory Authority and the Financial Oversight and Management Board for Puerto Rico to comply with the Court's February 26, 2018 Order (Dkt No. 2590) addressing the production of Fiscal Plan Development Materials. Movants further request that the Court enter the proposed protective order attached as Exhibit A to this motion.

We are back before the Court, once again, because Respondents continue their longstanding refusal to allow Movants, the Court, other creditors, and the public, to have an informed look at the underlying basis for their Fiscal Plan. The parties have been litigating this issue for more than six months. And even now, in the face of this Court's February 26 Order that "Fiscal Plan Development Materials qualify as the type of materials that are discoverable under Rule 2004," Dkt. No. 2590 at 2, Respondents tell us that the Court's holding means the opposite of what it says. Respondents *refuse* to produce any Fiscal Plan Development Materials under Rule 2004; they *refuse* to remove *any* Fiscal Plan Development Materials from the Intralinks data room; and they maintain that addressing *any* of our requests to lift the draconian data room restrictions will impose an unreasonable burden.

It is in fact *Respondents* who impose the unreasonable burden by forcing us, time and again, to seek redress from this Court regarding already-settled matters. By their continued intransigence, Respondents apparently hope that they will continue to shroud the finances of the Commonwealth and its instrumentalities in a veil of mystery. Respondents' evident goal is to

---

[2] Members of the Ad Hoc Group of General Obligation Bondholders file this Motion exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

permit them to continue to game the system—to manipulate creditors and the Court—by substituting their own say-so for an honest look at the Debtors' financial condition. The Court should not allow them to get away with it. As Congressman Bishop, the Chairman of the House Natural Resources Committee, recently recognized in a letter to the members of the Oversight Board, "[t]ransparency is the only path to ensure that Fiscal Plans and any plans of adjustment under Title III are informed by accurate and realistic data and deemed to be fair and equitable by all stakeholders."[3] The Court should accordingly order the Fiscal Plan Development Materials produced, pursuant to Rule 2004 and the February 26 Order, forthwith. And it should enter the attached proposed protective order, which Respondents unreasonably reject.

## BACKGROUND

On December 15, 2017, the Court allowed Movants' Motion for a 2004 Examination. Dkt. No. 2033 (the "December 15 Order"). However, in light of the parties' "disagreement regarding the restrictions on the *usage* of documents produced or to be produced in accordance with this order," the Court ordered the parties to submit a joint report detailing the area of disagreement. *Id.* at 3 (emphasis added).

The parties submitted that joint report a week later. They reported that they had reached agreement that, subject to the entry of a protective order, two categories of documents would be produced or deemed produced pursuant to Rule 2004 and the Court's December 15 Order: data or factual information, and documents that had or would in the future be produced by Respondents in adversary proceedings. Dkt. No. 2154 § I.a (the, "Joint Report"). Movants and Respondents could not agree, however, as to so-called "Fiscal Plan Development Materials," which are models, formulae, and assumptions underlying fiscal plans that the Commonwealth

---

[3] Letter from Hon. Rob Bishop to José B. Carrión III (Mar. 29, 2018), https://media.noticel.com/o2com-noti-media-us-east-1/document_dev/2018/04/02/Letter%20Bishop%20final_OP_1_CP__1522709064523_10908430_ver1.0.pdf.

2

has published in 2017 and 2018. Movants argued that such materials should be produced pursuant to Rule 2004 and the December 15 Order (or logged if a privilege was asserted). For their part, Respondents insisted that they should not be compelled to produce those materials, though they might decide to turn some of them over voluntarily. Joint Report § I.b. The parties completed briefing on the issue on January 26, 2018.

On February 26, 2018, the Court issued an order, agreeing with Movants that "the Fiscal Plan Development Materials are discoverable under Rule 2004." Dkt. No. 2590 (the "February 26 Order") at 11; *see id.* at 2 ("[T]he non-privileged Fiscal Plan Development Materials qualify as the type of materials that are discoverable under Rule 2004."); *id.* at 9 ("Such information . . . falls squarely within the purpose of Rule 2004."). The Court concluded that production of the Fiscal Plan Development Materials should follow a procedure that "mirrors that identified by the parties in Section I(a) of the Joint Report" (*id.* at 11)—that is, that the materials be produced or deemed produced pursuant to Rule 2004, subject to a protective order. *See* Joint Report § I.a. Finally, the Court held that Movants could attempt to use the Fiscal Plan Development Materials in the Title III or adversary proceedings but that (as is always the case with respect to documents produced in discovery), Respondents could object to the admissibility to any document Movants attempt to use. Dkt. No. 2590 at 11.

Per the Court's Order, Movants promptly wrote to Respondents identifying the Fiscal Plan Development Materials that they believed were deemed produced pursuant to Section 2004. See Ex. C (Letter from G. Orseck to M. Bienenstock & J. Rapisardi (Feb. 27, 2018)) & Ex. D (Letter from G. Orseck to M. Dale & J. Rapisardi (Mar. 7, 2018)). Respondents refused, arguing that, because the Court had found that Movants had not shown that they needed to immediately *use* the Fiscal Plan Development Materials, Respondents did not need to *produce* them at all

3

pursuant to Rule 2004 or the February 26 Order. See Ex. E (Letter from M. Dale & J. Rapisardi to G. Orseck (Mar. 1, 2018)) & Ex. F (Letter from M. Dale & E. McKeen to G. Orseck (Mar. 12, 2018)). Respondents insist instead that they have the unilateral right to determine, on a document-by-document basis, whether to produce any Fiscal Plan Development Materials. *See Ex. F.* To date, *Respondents have refused to produce a single one*. *See id.* As Respondents would have it, Movants are in precisely the same position with respect to the Fiscal Plan Development Materials that they were in before they began litigating the 2004 motion over six months ago.

Furthermore, because they contend that Fiscal Plan Development Materials need not be produced pursuant to Rule 2004 and a protective order, Respondents say that all Fiscal Plan Development Materials therefore remain subject to the NDA or Mediation Agreement. But the NDA and the Mediation Agreement are fundamentally different from a protective order. When documents are produced under a protective order, they may be used in discovery, as deposition exhibits, and parties may attempt to use them in court (subject, of course, to a challenge to admissibility). Furthermore, protective orders include a definition of confidentiality that a designating party must apply in good faith, and a procedure for challenging designations if a receiving party believes a produced document is not fairly designated as confidential. Under the NDA and Mediation Agreement, by contrast, all documents produced thereunder are prohibited from being used in connection with any legal proceeding, including in discovery or in connection with depositions. Moreover, all documents subject to the NDA and Mediation Agreement are *per se* confidential, and there is no procedure for a receiving party to contest a confidentiality designation. Respondents' continued insistence that the Fiscal Plan Development Materials remain subject to the NDA and Mediation Agreement therefore has serious ramifications for

4

Movants' ability to meaningfully participate in these Title III proceedings,[4] and cannot be squared with the Court's ruling that these materials are discoverable under Section 2004.

## ARGUMENT

I. **The Court Should Compel Production Of The Fiscal Plan Development Materials Pursuant to Rule 2004 And A Protective Order.**

All Fiscal Plan Development Materials should be produced or deemed produced pursuant to a protective order, such that Movants can use them in discovery and more generally in the Title III and adversary proceedings (subject, of course, to any objection to the admissibility of any particular document). There should be no dispute that these materials should be produced—the Court has squarely held that they are discoverable under Section 2004—yet Respondents have failed to allow the production of any of those materials. According to Respondents, the Court's statement that "Movants have not shown good cause for immediate *use*" of the Fiscal Plan Development Materials (Dkt. No. 2590 at 11 (emphasis added)) means that Respondents do not have to *produce* them at all. Instead, Respondents say, Respondents may unilaterally decide whether to produce these, and then only in response to a request by Movants that individual documents be produced or deemed produced. But Respondents' position reflects a manifestly incorrect reading of the February 26 Order. The passage Respondents cite means only that the Court reserves for later whether particular Fiscal Plan Development Materials should remain confidential, and are admissible at trial. In other words, although Movants are permitted to attempt to use those materials in the court proceedings, Respondents reserve the ability to object on a document-by-document basis. *Id*.

---

[4] Respondents suggest that Movants' experts and clients may view the materials in the data room *if they sign the NDA and Mediation Agreement*. *See* Ex. F. However, there is little utility in permitting an expert hired for purposes of the Title III and adversary proceedings to review documents only on the condition that he or she not use or reference the documents in those very proceedings, or in discovery related thereto. And, as explained in the Argument section below, many of Movants' clients are not in a position to review documents produced under the NDA or Mediation Agreement.

5

Respondents' insistence that they have unchecked authority to determine whether to produce Fiscal Plan Development Materials pursuant to Rule 2004 means that, since the February 26 Order was issued, not a single Fiscal Plan Development Material has been produced or deemed produced. Despite Movants' repeated requests for production of these materials, Respondents have steadfastly refused. As a result, multiple documents and categories of documents that were the subject of the parties' briefing and the Court's Orders still have not been produced pursuant to Rule 2004, notwithstanding the Court's repeated statements that these materials are discoverable.

Take, for example, models underlying uncertified fiscal plans (the plans themselves are public). These Fiscal Plan Development Materials were expressly encompassed by the February 26 Order (at 6-7), yet Respondents refuse to deem them produced pursuant to Section 2004. Ex. F at 3-4. So too with the DevTech model used to project GNP and inflation. Again, the discoverability of that model was teed up in the parties' briefing on this issue (see Dkt. No. 2223 at 3-4), yet Respondents still refuse to produce it. See Ex. F at 3 (refusing to produce Items 44 & 45). Similarly, Movants' briefing on this issue discussed materials underlying the Fiscal Plan's projection for health care costs (Dkt. No. 2223 at 5, Dkt. No. 2301 at 2-3). Respondents won't produce those either. See Ex. F at 3-4 (refusing to produce Item 34). Such unilateral action flies in the face of the Court's December 15 Order that the 2004 examination shall proceed because "there is a need in this Title III proceeding . . . for formal and controlled discovery related to the Commonwealth of Puerto Rico's financial condition." Dkt. No. 2033 at 2.

Indeed, if Respondents' reading of the Orders were correct, it would render a nullity the Court's holding that Movants "may attempt to use the Fiscal Plan Development Materials in the Title III or adversary proceedings." Dkt. No. 2590 at 11. That is because, as explained above,

6

both the NDA and Mediation Agreement flatly prohibit any use of any document produced thereunder in any litigation. Therefore, if the Fiscal Plan Development Materials remain subject to those agreements, Movants cannot—as the Court held they could—even *attempt* to use those materials in the Title III or adversary proceedings. Only if the documents are produced pursuant to Rule 2004 and subject to a protective order—*not* the NDA or Mediation Agreement—can Movants use the documents as the Court authorized.

Accordingly, the Court should compel Respondents to produce all of the Fiscal Plan Development Materials identified in Exhibit B, and any future Fiscal Plan Development Materials, pursuant to Rule 2004 and the February 26 Order, and subject to a protective order.

**II.     The Court Should Enter Movants' Proposed Protective Order.**

Movants request that the Court enter their proposed protective order, attached hereto as Exhibit A. The proposed protective order almost entirely tracks other protective orders to which Respondents have stipulated in the Title III or related adversary proceedings. The primary difference is that it requires Respondents, within five days of the entry of the order, to designate as Confidential any documents they wish to keep confidential.

Movants are mindful of the Court's concern, expressed in the February 26 Order, that "deciding what material in the data room should be released from their confidentiality restrictions may involve a lot of necessary work since Movants may not be seeking to use much of the material." Dkt. No. 2590 at 11. However, making such a decision is not, in fact, a lot of work. Exhibit B to this motion, which is the *entire* list of Fiscal Plan Development Materials already in the data room that Movants are seeking to have deemed produced, contains fewer than 50 documents. It is not meaningfully burdensome to make confidentiality designations with respect to this number of documents. In point of fact, Respondents have made such

7

confidentiality designations with respect to far more documents in some pending adversary proceedings. For example, in the adversary proceeding concerning the COFINA dispute, Respondents made confidentiality designations with respect to ***more than 40,000 documents***. Similarly, in the Bank of New York interpleader action, Respondents have made confidentiality designations with respect to more than a thousand documents. Moreover, making confidentiality designations would involve very little burden at all if Respondents would adopt and apply an appropriately circumscribed understanding of confidentiality in this context—one that recognizes the public's right of access to information regarding governmental entities' finances and that governmental entities do not face the sort of competitive concerns that would ordinarily justify confidential treatment in a corporate restructuring. Indeed, various Puerto Rico issuers previously agreed to provide information to certain bond insurers under the terms of the relevant bond documents, which do not provide for confidential treatment at all. For all of these reasons, Movants submit it is entirely appropriate to require Respondents to make such designations now.

Making confidentiality designations is not unnecessary simply because Movants might not have an immediate need to introduce the Fiscal Plan Development Materials in court. The NDA and Mediation Agreement provide that all documents produced thereunder are *per se* confidential. However, many of Movants' principals are restricted such that they cannot be in possession of Material Non-Public Information. Because everything under the NDA and Mediation Agreement is confidential—*i.e.*, non-public—Movants' principals are limited in their ability to review information that might be deemed material. Only under a protective order pursuant to which Respondents must designate documents as confidential only if Respondents believe, in good faith, that such documents merit such treatment (and, pursuant to which Movants can challenge inappropriate confidentiality designations) can Movants' counsel share

8

produced documents with all of their clients. To state the obvious, access to this information is necessary for Movants' principals to participate intelligently in the litigation of the Title III and adversary proceedings.

Movants have attempted to reach an agreed-upon protective order with Respondents, but Respondents' last mark-up is just an attempt to codify their misguided view of the February 26 Order. It provided that every document uploaded to the Data Room would be governed by the NDA or Mediation Agreement restrictions. In Respondents' draft, Movants could request that individual documents be subject to the Protective Order rather than the NDA or Mediation Agreement, but Respondents were under no duty to agree. Moreover, Respondents' draft provided that all documents produced pursuant to the protective order would be deemed Confidential Material, regardless of whether such documents met the definition of Confidential Material provided for in the protective order. For all of the reasons discussed above, these provisions are inappropriate. Respondents' proposal should be rejected.

## **PRIOR COMMUNICATIONS**

Before filing this motion, the parties made reasonable, good faith efforts to resolve the issues raised herein, but no agreement could be reached. Movants notified counsel for Respondents of their intention to seek relief from the Court and requested agreement regarding a briefing schedule. The parties jointly propose that any opposition brief must be filed on April 23, 2018, and that any reply must be filed by April 30, 2018. Movants further request oral argument on this motion during the week of May 7, 2018, or any time thereafter at the Court's earliest convenience.

## **CONCLUSION**

The Court should compel Respondents to comply with the February 26, 2018 Order by deeming produced all Fiscal Plan Development Materials in the data room, as identified in Exhibit B. The Court should further enter the proposed protective order attached as Exhibit A.

| | |
|---|---|
| Dated: April 9, 2018<br>San Juan, Puerto Rico | Respectfully submitted.<br><br>**JIMÉNEZ, GRAFFAM & LAUSELL**<br><br>By: /s/ J. Ramón Rivera Morales<br><br>J. Ramón Rivera Morales<br>    (USDC-PR No. 200701)<br>Andrés F. Picó Ramírez<br>    (USDC-PR No. 302114)<br>PO Box 366104<br>San Juan, PR 00936-6104<br>Telephone:  (787) 767-1030<br>Email:  rrivera@jgl.com<br>          apico@jgl.com |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**<br><br>By: /s/ Andrew N. Rosenberg<br>Andrew N. Rosenberg**<br>Kyle J. Kimpler**<br>Karen R. Zeituni**<br>1285 Avenue of the Americas<br>New York, NY  10019<br>Telephone:  (212) 373-3000<br>Email:  arosenberg@paulweiss.com<br>          kkimpler@paulweiss.com<br>          kzeituni@paulweiss.com | **ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**<br><br>By: /s/ Mark T. Stancil<br>Lawrence S. Robbins**<br>Mark T. Stancil**<br>Gary A. Orseck**<br>Kathryn S. Zecca**<br>Ariel N. Lavinbuk**<br>Donald Burke**<br>1801 K Street, NW<br>Washington, D.C.  20006<br>Telephone: (202) 775-4500<br>Email:  lrobbins@robbinsrussell.com<br>          mstancil@robbinsrussell.com<br>          gorseck@robbinsrussell.com<br>          kzecca@robbinsrussell.com<br>          alavinbuk@robbinsrussell.com<br>          dburke@robbinsrussell.com |

*** admitted pro hac vice*

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

11

**FERRAIUOLI LLC**
By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
    scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**
By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
    aleblanc@milbank.com
    amiller@milbank.com
    gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
Heriberto Burgos Pérez
USDC-PR 204809
Ricardo F. Casellas-Sánchez
USDC-PR 203114
Diana Pérez-Seda
USDC-PR 232014
P.O. Box 364924
San Juan, PR 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: hburgos@cabprlaw.com
   rcasellas@cabprlaw.com
   dperez@cabprlaw.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins*
Howard R. Hawkins, Jr. *
Mark C. Ellenberg*
Ellen Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 406-6666
Email: howard.hawkins@cwt.com
   mark.ellenberg@cwt.com
   ellen.halstead@cwt.com
   thomas.curtin@cwt.com
   casey.servais@cwt.com

* Admitted pro hac vice

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

| | |
|---|---|
| **TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.** | **KRAMER LEVIN NAFTALIS & FRANKEL LLP** |

 *s/ Manuel Fernandez-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcmrslaw.com

 *s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcmrslaw.com

*s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC-PR No. 220,510
E-mail: jvankirk@tcmrslaw.com

P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*Counsel to the Mutual Fund Group*

 *s/ Gregory A. Horowitz*
THOMAS MOERS MAYER*
AMY CATON*
GREGORY A. HOROWITZ*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
   acaton@kramerlevin.com
   ghorowitz@kramerlevin.com
   dbuckley@kramerlevin.com
*(admitted *pro hac vice*)

*Counsel to the Mutual Fund Group*

14

   /s/ Eric Pérez-Ochoa (USDC-PR No. 206314)
Eric Pérez-Ochoa (USDC-PR No. 206314)
Luis Oliver-Fraticelli (USDC-PR No. 209204)
Alexandra Casellas-Cabrera (USDC-PR. No. 301010)
Lourdes Arroyo-Portela (USDC-PR No. 226501)

**ADSUAR MUÑOZ GOYCO SEDA & PÉREZ-OCHOA, PSC, P.S.C.**
208 Ponce de León Avenue, Suite 1600
San Juan, Puerto Rico 00936
Telephone: (787) 756-9000
Facsimile: (787) 756-9010
Email: epo@amgprlaw.com
      loliver@amgprlaw.com
      acasellas@amgprlaw.com
      larroyo@amgprlaw.com

– and –

Marcia Goldstein
Jonathan Polkes
Gregory Silbert
Kelly DiBlasi
Gabriel A. Morgan
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153

*Counsel to National Public Finance Guarantee Corporation*

15