# EXHIBIT D

# ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

1801 K STREET, N.W., SUITE 411 L
WASHINGTON, D.C. 20006
PHONE (202) 775-4500
FAX (202) 775-4510
www.robbinsrussell.com

Gary A. Orseck                                                                                                    (202) 775-4504
                                                                                                    gorseck@robbinsrussell.com

March 7, 2018

**VIA EMAIL**

Margaret A. Dale                                 John J. Rapisardi
Proskauer Rose LLP                            O'Melveny & Myers LLP
Eleven Times Square                           Seven Times Square
New York, NY  10036                         New York, NY  10036

  Re:  *In re Commonwealth of Puerto Rico*, No. 17-03283-LTS

Dear Ms. Dale and Mr. Rapisardi:

  This is in response to your March 1, 2018 letter, written in response to my February 21 and 27 letters, and regarding Magistrate Judge Dein's February 26 Order. (Doc. 2590) (the "Order").  I write on behalf of the Ad Hoc Group of General Obligation Bondholders[1] and with consent of the other Joint Movants.

  We requested in my February 27 letter that you confirm, pursuant to the Order, that all documents contained within certain specified folders and subfolders in the data room are now deemed produced under Rule 2004, and are no longer subject to the constraints of the NDA or the Mediation Agreement.  We further asked that you execute the Protective Order we sent you on February 13, and that you promptly designate as confidential whatever documents you contend warrant such protection, so that we could respond as appropriate.  Finally, we asked you to confirm that materials responsive to my February 21 letter (relating to the 2018 Fiscal Plan) would be provided pursuant to Rule 2004, rather than posted to folders in the data room that are subject to an NDA or Mediation Agreement.

  Your March 1 response wholly misconstrues how the Order directs Respondents to treat Fiscal Plan Development Materials.

  ***First***, Section I(a) of the December 22, 2017 Joint Report ("Areas of Agreement") sets out the parties' agreement that, subject to the entry of a protective order, (i) any "data or factual

---

[1] Members of the GO Group submit this letter exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

Margaret A. Dale & John J. Rapisardi
March 7, 2018
Page 2

information produced in the data room," and (ii) any documents produced by Respondents "in response to discovery requests in the Title III proceedings or any adversary proceeding," shall be "produced or deemed produced pursuant to the 2004 Requests and the December 15 Order." The Joint Report did *not* similarly address what should become of the Fiscal Plan Development Materials, because the parties were unable to reach agreement as to whether they, too, should be removed from the use restrictions of the data room. See Joint Report Secton I(b) ("Areas of Disagreement").

Judge Dein resolved that dispute. As you quote at page 2 of your letter, Judge Dein held that the Fiscal Plan Development Materials shall be treated in the same fashion as the categories of documents addressed in Section I(a) of the Joint Report. In other words, they are deemed produced, "subject to the entry of a protective order," "pursuant to the 2004 Requests and the December 15 Order."

Your letter pretends that Judge Dein never addressed the Fiscal Plan Development Materials, which were the subject of extensive briefing, and were the very subject of the Order. Instead, on page 2 of your letter, you itemize a number of materials in the data room that you say "may be used subject to a protective order," but *all* of them are materials as to which the parties had already reached agreement in Section I(a) of the Joint Report (Factual Materials; Documents Produced in Adversary Proceedings; and Mediation Documents). *None* of them are Fiscal Plan Development Materials. For example, models underlying the 2017 and 2018 Fiscal Plans were specifically addressed in the Order (at 6-7), yet your March 1 letter designates the 2018 Fiscal Plan models as subject to mediation restrictions and does not even address the model for the 2017 Fiscal Plan. Similarly, the parties' briefing specifically addressed the DevTech model that projects GNP and inflation. See, *e.g.*, Doc. 2223 at 3-4. Again, your March 1 letter designates that model and its inputs as subject to mediation restrictions.

We think Judge Dein's Order is clear enough that Fiscal Plan Development Materials "are deemed produced pursuant to the 2004 Requests" (Joint Report Section I(a)). Out of an abundance of caution, however, we have yet to share with any potential testifying experts any Fiscal Plan Development Materials that you claim are subject to an NDA or Mediation Agreement. That puts us in an untenable position. So long as any confidentiality obligations are observed (see next point, below) we should be able to share these materials with our experts. Nor are we obligated to obtain your pre-clearance before doing so, let alone on a document-by-document basis, as you appear to insist. If you disagree we will take up the matter with Judge Dein.

**Second**, you have now had the latest draft of the Protective Order for three full weeks. We will not allow you to pocket veto the process for resolving disputes over confidentiality designations by simply refusing to engage us on this. Unless we have your agreement to the Protective Order by the end of this week, we will move Judge Dein for entry of the Order.

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

Margaret A. Dale & John J. Rapisardi
March 7, 2018
Page 3

In addition, despite declining to *sign* a Protective Order, you appear to take the position that every single non-public document you have posted to the data room, or deemed produced, qualifies for confidential treatment.  That position is baseless.  We hereby request that you lift any claim to confidential treatment as to the documents listed in Appendix A.[2]  Evaluating these documents for confidentiality is not burdensome.  Indeed, Respondents have made productions in at least four separate adversary proceedings, each of which was governed by a stipulated protective order in which Respondents agreed to make confidentiality designations on a document-by-document basis.  In the COFINA adversary proceeding *alone* Respondents have produced **more than 40,000 documents** with confidentiality designations made on a document-by-document basis.  Although the Court stated that making confidentiality determinations "**may** involve a lot of unnecessary work" (emphasis added), evaluating the 65 documents identified in Appendix A is by no means burdensome.

**Third**, we reject on several grounds your stated position as to materials responsive to the Requests in my February 21 Letter.

To begin with, you resuscitate your argument (p. 3) that production of the materials we request is precluded by PROMESA § 106(e), because it is all part of an effort to challenge a forthcoming fiscal plan certification.  But Judge Dein flatly rejected that argument because its premise is wrong:  As Judge Dein explained, "[t]he Movants are not seeking to challenge the fiscal plans" through these Rule 2004 discovery requests.  Order at 9. Nothing in Judge Swain's February 27 Order in the *Ambac* adversary proceeding is remotely to the contrary.  That decision addressed the limits imposed by Section 106(e) on creditors' efforts to challenge the certification of fiscal plans, but Judge Dein has already held that this Rule 2004 motion is *not* such an effort.  If you contend that any responsive materials are protected from production by PROMESA, you should take that up with the Court.  Otherwise, they must be produced.

You also take the categorical position that *no* materials responsive to my February 21 letter will be produced "outside the data room and the confidentiality restrictions that apply to it."  Again, that is flatly contrary to Judge Dein's Order.  We have a present need to use these materials in the litigation, including by sharing them with our potential testifying experts and our clients.  If you disagree, we will take that up with Judge Dein as well.

Your proposal as to when an initial privilege log must be produced, and when it must be updated, is fine with us.

---

[2] Based on Respondents' representation that they "do not assert confidentiality protections over materials in the data room that are publicly available" (Mar. 1 Letter at 2 n.1), we will treat the voluminous public materials posted to the data room as public and non-confidential.

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

Margaret A. Dale & John J. Rapisardi
March 7, 2018
Page 4


Very truly yours,


/s/  Gary A. Orseck
Gary A. Orseck


cc:  Counsel for all Joint Movants

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

Margaret A. Dale & John J. Rapisardi
March 7, 2018
Page 5

## Appendix A

| | | |
|---|---|---|
| 1.  1.1.2.1 | 23. 1.1.5.1.2.7 | 45. 2.1.3.1.2 |
| 2.  1.1.2.2 | 24. 1.1.5.1.2.8 | 46. 2.6.1 |
| 3.  1.1.2.3 | 25. 1.1.5.1.2.9 | 47. 2.6.2 |
| 4.  1.1,3.1 | 26. 1.1.5.1.2.10 | 48. 2.6.3 |
| 5.  1.1.3.2 | 27. 1.1.5.1.2.11 | 49. 2.6.4 |
| 6.  1.1.4.1.1 | 28. 1.1.5.1.2.13 | 50. 2.6.5 |
| 7.  1.1.4.2.1 | 29. 1.1.5.1.2.19 | 51. 2.6.7 |
| 8.  1.1.4.3.1 | 30. 1.1.5.1.2.23 | 52. 2.7.6 |
| 9.  1.1.4.3.2 | 31. 1.1.5.1.2.24 | 53. 2.7.14 |
| 10. 1.1.4.3.4 | 32. 1.1.5.2.1.1 | 54. 2.7.15 |
| 11. 1.1.4.3.5 | 33. 1.1.5.2.1.3 | 55. 2.7.16 |
| 12. 1.1.4.3.6 | 34. 1.1.5.2.1.4 | 56. 2.7.18 |
| 13. 1.1.4.1.1 | 35. 1.1.5.2.1.5 | 57. 2.7.19 |
| 14. 1.1.4.4.2 | 36. 1.1.5.2.1.6 | 58. 2.8.8.1 |
| 15. 1.1.4.4.3 | 37. 1.1.5.2.1.7 | 59. 2.8.2.1 |
| 16. 1.1.4.4.4 | 38. 1.1.5.2.1.8 | 60. 2.8.3.1 |
| 17. 1.1.4.4.7 | 39. 1.1.5.2.1.9 | 61. 2.9.6 |
| 18. 1.1.4.4.10 | 40. 1.1.5.3.1 | 62. 2.9.8 |
| 19. 1.1.4.5.1 | 41. 1.1.5.3.2 | 63. 2.9.9 |
| 20. 1.1.5.1.2.2 | 42. 1.1.5.4.1 | 64. 2.9.12 |
| 21. 1.1.5.1.2.4 | 43. 1.1.5.5.1 | 65. 2.9.13 |
| 22. 1.1.5.1.2.6 | 44. 2.1.3.1.1 | |