# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: Dkt. No. 2852 |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| WIDE RANGE CORPORATION,<br><br>    Movant,<br><br>    -against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Respondent. | **Objection Relates Only to PREPA and Shall be Filed in Both the Lead Case No. 17 BK-3283-LTS and in PREPA's Title III Case No. 17 BK 4780-LTS** |

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# OBJECTION OF THE PUERTO RICO ELECTRIC
# POWER AUTHORITY TO WIDE RANGE CORPORATION'S
# MOTION FOR RELIEF OF STAY

To the Honorable United States District Court Judge Laura Taylor Swain:

On behalf of the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion for Relief of Stay* [Case No. 17-03283, Dkt. No. 2852] (the "Motion") filed by Wide Range Corporation ("WR" or "Movant").[2] In support of the Objection, AAFAF respectfully states as follows:

## I. PRELIMINARY STATEMENT

The passage of Hurricanes Irma and Maria has compounded the severe fiscal crisis facing PREPA.[3] Following the devastation caused by Hurricane Maria, PREPA was unable to provide electric power to the vast majority of the residents of Puerto Rico, and for some time after Hurricane Maria struck, the entire PREPA electric system was inoperable. Since Hurricane Maria made landfall on Puerto Rico on September 20, 2017, PREPA has been in a critical recovery period, with its efforts primarily focused on restoring and repairing Puerto Rico's electric grid and providing critical, reliable electric service to the Island. PREPA continues to be pushed to the absolute limits of its capacity dealing with the ongoing impact of the worst

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§ 2101-2241, has authorized AAFAF to file this Objection on behalf of PREPA.

[3] As detailed in a recent opposition to another motion to lift the automatic stay, PREPA faces a severe fiscal crisis with liabilities exceeding $14 billion. *See* Dkt. No. 149 ¶¶ 7–8. PREPA must be restructured to remain a viable business entity. *See id.* ¶ 8. The Oversight Board, as representative of PREPA pursuant to PROMESA, filed a petition on behalf of PREPA to adjust its debts through this Title III case, which triggered the automatic stay. *See* PROMESA § 301 (incorporating 11 U.S.C. §§ 362 and 922—the automatic stay provisions—into the Title III case).

1

electrical blackout in the history of the United States and the second-worst in world history.[4] In fact, as recently two days ago, the Commonwealth once again suffered an Island-wide power outage which has required PREPA to expend a considerable amount of time and effort to repair the affected electrical grid. Ray Sanchez & Leyla Santiago, "Puerto Rico suffers island-wide power outage" CNN (2018), https://www.cnn.com/2018/04/18/us/puerto-rico-mass-power-outage/index.html (last visited Apr 18, 2018). In addition, PREPA has committed significant resources towards the development of its Fiscal Plan as required by PROMESA Section 201.

Notwithstanding these crises and commitments, on April 6, 2018, WR filed the Motion, seeking relief from the automatic stay "for cause" under 11 U.S.C. § 362(d). Specifically, WR seeks a modification of the automatic stay in order to continue pursuing its claims for monetary relief against PREPA in *Wide Range Corporation v. Autoridad de Energía Eléctrica*, Civil Case # K AC2016-1247 (806) (the "WR Action"). The WR Action involves a prepetition contractual dispute between PREPA and WR relating to delay penalties imposed by PREPA in connection with two purchase orders. Before discovery could be completed in the WR Action, PREPA commenced a case under Title III of PROMESA, triggering the automatic stay.

As further explained below, the Motion should be denied because WR has failed to show that "cause" exists to lift or modify the automatic stay. All of the applicable *Sonnax* factors weigh in favor of maintaining the stay. In addition, the balance of the equities strongly militates in favor of maintaining the stay as WR has failed to show that it will suffer any harm otherwise.

## II. PROCEDURAL HISTORY

On December 14, 2016, WR filed the WR Action in the Court of First Instance of Puerto Rico, San Juan relating to delay penalties imposed by PREPA in connection with purchase

---

[4] Doug Criss, "Puerto Rico's power outage is now the second-largest blackout in history" CNN (2018), https://www.cnn.com/2018/04/16/us/puerto-rico-blackout-second-largest-globally-trnd/index.html (last visited April 20, 2018).

2

orders made by PREPA in 2011 and 2012. WR is seeking approximately $500,000 plus interest in reimbursement as well as costs and attorneys' fees. At the time PREPA filed its Title III petition and the stay was imposed in July 2017, the WR Action was in the middle of discovery, and PREPA was in the process of gathering records to answer interrogatories and respond to document requests. Prior to the stay taking effect, both PREPA and WR planned to take several depositions, including several depositions of several PREPA employees. Further, WR had filed a motion for summary judgment. Contrary to WR's assertions, its motion for summary judgment is not unopposed; it is merely pending, and PREPA's response to the motion would not have been due until the conclusion of discovery.

### III. ARGUMENT

Lifting the stay with respect to the WR Action would complicate PREPA's recovery efforts following the destruction caused by Hurricanes Irma and Maria, and would be contrary to the purpose of section 362 of title 11 of the United States Code ("Bankruptcy Code") to provide the debtor temporary relief while it conducts an orderly adjustment of its debts. Given the circumstances, WR has failed to show cause to lift the automatic stay.

#### A. Legal Standard to Lift the Automatic Stay.

An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). The purpose of the automatic stay is to provide the debtor "a breathing spell" from creditors and financial pressures that drove the debtor to bankruptcy. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988).

As such, a court may lift the automatic stay only upon a showing of cause. *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *See In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). In deciding whether "cause" to lift a stay exists, courts in this Circuit typically balance a number of factors, including:

3

(1) whether relief would result in complete or partial resolution of the issues;
(2) the lack of any connection with or interference with the bankruptcy case;
(3) whether the foreign proceeding involves the debtor as fiduciary;
(4) whether a specialized tribunal has been established to hear the cause of action at issue;
(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) whether the action essentially involves third parties rather than the debtor;
(7) whether the litigation could prejudice the interest of other creditors;
(8) whether a judgment in the foreign action is subject to equitable subordination;
(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
(12) the impact of the stay on the parties and the "balance of hurt."

See *In re Unanue-Casal*, 159 B.R. at 95–96. These are commonly referred to as the "*Sonnax* factors" because they derive from *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place exceeds the harm caused by lifting it. *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016). WR bears the burden of establishing cause, *see id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992).

**B. The *Sonnax* Factors Weigh Strongly in Favor of Maintaining the Automatic Stay in the WR Action.**

As more fully explained below, the *Sonnax* factors that apply here (by number above) are

4

one, two, four, six, seven, ten, eleven, and twelve. All weigh against lifting the stay.[5] The first *Sonnax* factor—whether relief would result in a complete or partial resolution of the issues—focuses on whether allowing the litigation to proceed would expeditiously resolve issues relevant to the bankruptcy case. *See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009). Many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). Resolving a discrete contractual dispute between PREPA and WR would not resolve any issues in PREPA's Title III case, and so the first factor weighs against lifting the stay.

The second *Sonnax* factor also weighs against lifting the stay. Allowing the WR Action to proceed would interfere with PREPA's Title III case and the overall recovery effort by diverting PREPA's attention and resources away from critical work necessary to repair the electric grid and provide reliable electric service to the residents of Puerto Rico, which is an essential part of PREPA's reorganization and recovery efforts. Given that the dispute is in the middle of discovery, substantial work, time, and effort by PREPA employees and representatives, PREPA attorneys, and third-party support staff will be required to search for and gather relevant documents and electronically stored information, complete written discovery, prepare and attend depositions, address any discovery disputes, oppose WR's Motion for Summary Judgment, and prepare for and attend trial. All of the aforementioned work will also result in a substantial monetary expense for PREPA.

Although WR asserts that discovery was "almost completed" and that its motion for

---

[5] The remaining *Sonnax* factors three, five, eight, and nine—*i.e.*, whether the foreign proceeding involves the debtor as a fiduciary, whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation, whether a judgment in the foreign action is subject to equitable subordination, and whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor, respectively—are not addressed as they are inapplicable here.

5

summary judgment was "unopposed" (Mot. ¶ 10), these assertions are not only meritless, but also misleading. Rather, PREPA was still in the process of gathering documents to respond to WR's written discovery requests, and neither party had taken any depositions. PREPA understands that WR intends to depose several PREPA employees, some of whom are retired, and PREPA likewise intends to depose at least four witnesses. As for WR's "unopposed" motion for summary judgment, WR admits that the deadline for PREPA to file an opposition was stayed (Mot. ¶ 10) so the motion is "unopposed" only in the sense that PREPA has not yet filed its opposition.

Further, WR's conclusory assertion (Mot. ¶ 17) that lifting the stay would not interfere with PREPA's Title III case is belied by the fact that critical PREPA resources would be diverted from PREPA's recovery and reorganization in its Title III case and toward the defense of the WR Action. *See In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (declining to lift the stay in a chapter 9 proceeding where the stayed action "necessarily would consume the time and attention" of the debtor when the debtor's "undivided time and attention" was required by the bankruptcy case); *In re Jefferson City.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) ("[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"). As a result, the second *Sonnax* factor supports denial of the Motion.

*Sonnax* factor four also weighs in favor of denying the Motion. WR appears to contend that because the Puerto Rico state courts "have expertise in this area," this factor weighs in favor of lifting the stay. (Mot. ¶ 17.) A state court's expertise is not the test of the fourth *Sonnax* factor. Instead, the factor focuses on whether "a specialized tribunal has been established for particular causes of action and that tribunal has the expertise to hear such cases." *In re Lahman*

6

*Mfg. Co., Inc.*, 31 B.R. 195, 199 (Bankr. D.S.D. 1983).[6] The WR Action and the Court of First Instance of Puerto Rico do not qualify: it is a contractual dispute being litigated in a state court of general jurisdiction. Because no specialized tribunal has been established to address the WR cause of action, Sonnax factor four weighs in favor of denying the Motion.

With respect to the sixth *Sonnax* factor, no third parties are involved in the WR Action, as WR admits that the action is a complaint against PREPA alone. (Mot. ¶ 3.) Accordingly, this factor also weighs in favor of denying the Motion.

*Sonnax* factor seven also weighs in favor of denying the Motion because lifting the stay would prejudice the interest of other creditors. Any time consumed by the WR Action is time creditors would want PREPA to spend on the overall recovery and reorganization of PREPA in the Title III case. Any money expended by PREPA to defend against the WR Action would be diverted from PREPA's already financially-strained resources, a factor that courts have recognized that counsels against lifting a bankruptcy stay. *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 563–64 (Bankr. C.D. Cal. 2004) (rejecting an effort to lift the stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re City of Stockton*, 484 B.R. at 379 (declining to lift the stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

In addition, lifting the stay to further embroil PREPA in the WR Action at a time when PREPA should be devoting critical resources and personnel to the restoration of electric service to the Island would reward WR with a tactical advantage. PREPA would be forced to take measures to minimize litigation costs in order to conserve its resources for its rebuilding efforts

---

[6] Courts offer several examples for such specialized tribunals. *See, e.g., In re Good Hope Indus., Inc.*, 16 B.R. 719 (Bankr. D. Mass.) (arbitration panels); *In Re Terry*, 12 B.R. 578 (Bankr. E.D.Wis. 1981) (patient compensation panels); *In re Seeburg Corp.*, 5 B.R. 364 (Bankr. N.D.Ill.1980) (National Labor Relations Board).

of the Island's electrical grid. Such gamesmanship not only interferes with PREPA's Title III case but also prejudices the interest of its creditors, and WR should not be allowed to take advantage of PREPA's critical rebuilding efforts following Hurricanes Irma and Maria in order to force PREPA to compromise its positions in litigation.

*Sonnax* factor ten also supports maintaining the automatic stay because, as discussed above, discovery in the WR Action is far from "almost completed." Resolution of the WR Action, should the stay be lifted, will be neither expeditious nor economical. Instead, WR and PREPA must complete substantial discovery, continue to litigate pre-trial matters including WR's motion for summary judgment, and actually prepare for trial. Nor would lifting the stay serve the interest of judicial economy. There is no evidence that maintaining the automatic stay would prevent the parties from reaching a complete resolution of the WR Action at the appropriate time or that any of the remaining discovery and litigation can timely be concluded once PREPA can finally devote the necessary resources, time, and effort to properly litigate the WR Action to conclusion.

Likewise, *Sonnax* factor eleven counsels against granting the Motion. As WR admits, discovery has not been completed, and trial preparation has not begun. (Mot. ¶ 10.) Even if PREPA's resources were not stretched and taxed due to its restoration efforts and reorganization efforts, neither PREPA nor WR would be prepared for trial given the substantial amount of outstanding discovery and pretrial issues.

Finally, the twelfth *Sonnax* factor—the impact of the stay on the parties and the "balance of hurt"—strongly weighs in favor of maintaining the automatic stay. While WR contends that maintaining the automatic stay would likely result in irreparable harm, it fails to demonstrate any such harm other than adumbrations to unsubstantiated reputational harm and unsupported

8

assertions that such attenuated potential harm "undoubtedly" outweighs the harm to PREPA (Mot. ¶ 18). To the contrary, for the reasons set forth herein, PREPA, and the residents of Puerto Rico, would be harmed should the stay be lifted at this time as PREPA will be required to divert attention and critical resources from restoring the Island's electrical grid and incur significant expenses in order to defend the WR Action. Under the twelfth *Sonnax* factor, the balance of equities weighs in favor of denying the Motion.

### C. Even "Notwithstanding" the *Sonnax* Factors, Modification of the Stay is Not Warranted.

In its Motion, WR attempts an end run around the *Sonnax* analysis by asserting that "[n]otwithstanding" the *Sonnax* factors, bankruptcy courts "consistently" modify the stay to allow the continuation of litigation. (Mot. at 16.) None of the cases cited by WR supports this assertion; the cases are either materially distinguishable or inapposite. *See In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992), as amended (May 27, 1992) (lifting the stay to allow the state court to enter an equitable distribution judgment in a divorce proceeding); *In re C & A, S.E.*, 360 B.R. 12, 18 (Bankr. D.P.R. 2006), aff'd sub nom. *C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.*, 369 B.R. 87 (D.P.R. 2007) (finding equitable grounds existed to remand a post-arbitral proceeding); *In re Annie's, Inc.*, 201 B.R. 29, 30 (Bankr. D.R.I. 1996), vacated sub nom. *Peerless Ins. Co. v. Rivera*, 208 B.R. 313 (D.R.I. 1997) (lifting the stay to allow an insurer to prosecute a declaratory judgment against the debtor to avoid multiple lawsuits and inconsistent judgments); *In re Tricare Rehab. Sys., Inc.*, 181 B.R. 569, 578 (Bankr. N.D. Ala. 1994) (lifting the stay to avoid duplicative lawsuits in state court and bankruptcy court). The facts upon which these cases were decided do not exist here. Therefore, WR has failed to show that cause exists to lift the automatic stay.

### III.  CONCLUSION

For the reasons set forth above, on behalf of PREPA, AAFAF respectfully requests that the Motion be denied. In the alternative, in the event the Court decides to grant the Motion, the lifting of the automatic stay should be limited to only allow the parties to complete pre-trial preparation in the WR Action.

Dated: April 20, 2018
      San Juan, Puerto Rico

Respectfully submitted,

THE PUERTO RICO FISCAL AGENCY
AND FINANCIAL ADVISORY
AUTHORITY, as Fiscal Agent for PREPA

By its attorneys,

/s/ *Kevin D. Finger*

Kevin D. Finger (*admitted pro hac vice*)
David D. Cleary (*admitted pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive Suite 3100
Chicago, IL 60601
Phone: 312.456.8400
Fax: 312.456.8435
Email: fingerk@gtlaw.com
      clearyd@gtlaw.com

Nancy A. Mitchell (*admitted pro hac vice*)
Nathan A. Haynes (*admitted pro hac vice*)
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Phone: 212.801.9200
Fax: 212.801.6400
Email: mitchelln@gtlaw.com
      haynesn@gtlaw.com

Joseph P. Davis (*admitted pro hac vice*)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Phone: 617.310.6000
Fax: 617.310.6001
Email: davisjo@gtlaw.com

THE PUERTO RICO ELECTRIC
POWER AUTHORITY

By its attorneys,

/s/ *Arturo Díaz Angueria*
USDC No. 117907

/s/ *Katiuska Bolaños Lugo*
USDC No. 231812
CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.
PO Box 364966
San Juan, PR 00936-4966
Phone: (787) 767-9625
Fax: (787) 764-4430
Email: adiaz@cnrd.com
kbolanos@cnrd.com

TCO 363015508v7