# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: Dkt. No. 2850 |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| MASTER LINK CORPORATION,<br><br>    Movant,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Respondent. | **Objection Relates Only to PREPA and Shall be Filed in Both the Lead Case No. 17 BK-3283-LTS and in PREPA's Title III Case No. 17 BK 4780-LTS** |

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION OF PUERTO RICO ELECTRIC POWER AUTHORITY TO
MASTER LINK CORPORATION'S MOTION FOR RELIEF OF STAY**

To the Honorable United States District Court Judge Laura Taylor Swain:

On behalf of the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion for Relief of Stay* [Case No. 17-03283, Dkt. No. 2850] (the "Motion") filed by Master Link Corporation ("ML" or "Movant").[2] In support of the Objection, AAFAF respectfully states as follows:

**I.    PRELIMINARY STATEMENT**

The passage of Hurricanes Irma and Maria has compounded the severe fiscal crisis facing PREPA.[3] Following the devastation wrought by Hurricane Maria, the entire PREPA electric system was inoperable. Since Hurricane Maria made landfall on Puerto Rico on September 20, 2017, PREPA has been in a critical recovery period, with its efforts primarily focused on restoring and repairing Puerto Rico's electric grid and providing critical, reliable electric service to the Island. PREPA continues to be pushed to the absolute limits of its capacity dealing with the ongoing impact of the worst electrical blackout in the history of the United States and the second worst in world history.[4] In fact, as recently two days ago, the Commonwealth once again

---

[2]  The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§ 2101-2241, has authorized AAFAF to file this Objection on behalf of PREPA.

[3]  As detailed in a recent opposition to another motion to lift the automatic stay, PREPA faces a severe fiscal crisis with liabilities exceeding $14 billion. *See* Dkt. No. 149 ¶¶ 7–8. PREPA must be restructured to remain a viable business entity. *See id.* ¶ 8. The Oversight Board, as representative of PREPA pursuant to PROMESA, filed a petition on behalf of PREPA to adjust its debts through this Title III case, triggering the automatic stay. *See* PROMESA § 301 (incorporating 11 U.S.C. §§ 362 and 922—the automatic stay provisions—into the Title III case).

[4]  Doug Criss, "Puerto Rico's power outage is now the second-largest blackout in history," CNN (2018), https://www.cnn.com/2018/04/16/us/puerto-rico-blackout-second-largest-globally-trnd/index.html (last visited April 17, 2018).

1

suffered an Island-wide power outage which has required PREPA to expend a considerable amount of time and effort to repair the affected electrical grid. Ray Sanchez & Leyla Santiago, "Puerto Rico suffers island-wide power outage" CNN (2018), https://www.cnn.com/2018/04/18/us/puerto-rico-mass-power-outage/index.html (last visited Apr 18, 2018). In addition, PREPA has committed significant resources towards the development of its Fiscal Plan as required by PROMESA Section 201.

Notwithstanding these crises and commitments, on April 6, 2018, ML filed the Motion, seeking relief from the automatic stay "for cause" under 11 U.S.C. § 362(d). Specifically, ML seeks a modification of the automatic stay in order to continue litigating against PREPA in *Master Link Corporation v. Autoridad de Energía Eléctrica*, Civil Case No. K AC2016-0818 (604) (the "ML Action") involving a prepetition contractual dispute between PREPA and ML for contract 2011-P00067 (0912653) for the rehabilitation of the Municipality of Culebra's power station facilities (the "Contract"). ML filed the ML Action in 2016 seeking damages as well as injunctive and declaratory relief related to the Contract. Before discovery could be completed, PREPA commenced a case under Title III of PROMESA, triggering the automatic stay.

As further explained below, the Motion should be denied because ML has failed to show that "cause" exists to lift or modify the automatic stay. All of the *Sonnax* factors relevant to this action weigh in favor of maintaining the stay. In addition, the balance of the equities strongly militates in favor of maintaining the stay as ML has failed to show that it will suffer harm should the stay remain and lifting the stay is not in the public interest.

II. **PROCEDURAL HISTORY**

On August 25, 2016, Movant filed the ML action in the Court of First Instance of Puerto Rico, San Juan. ML seeks approximately $4.6 million plus interest in damages and declaratory

2

and injunctive relief that would annul PREPA's: (i) termination of the Contract; (ii) suspension of ML from its Suppliers Registry; and (iii) request to execute ML's performance bond. ML also seeks an order directing PREPA to allow ML to complete any outstanding work under the scope of the Contract. The ML Action remains in the middle of discovery. At the time PREPA filed its Title III petition and the stay was imposed in July 2017, PREPA was in the process of evaluating potential expert witnesses. None of the planned depositions has yet been taken. Further, ML had filed a motion for summary judgment prior to the completion of discovery. Contrary to ML's assertions, its motion for summary judgment is not unopposed; it is merely pending, and PREPA's response to the motion will not be due until the conclusion of discovery.

### III. ARGUMENT

Lifting the stay with respect to the ML Action would further complicate PREPA's recovery efforts following the destruction caused by Hurricanes Irma and Maria, and would be contrary to the purpose of section 362 of title 11 of the United States Code (the "Bankruptcy Code") to provide the debtor temporary relief while it conducts an orderly adjustment of its debts. The balance of harms weighs in favor of maintaining the automatic stay and, further, lifting the stay is not in the public interest.

#### A. Legal Standard to Lift the Automatic Stay.

An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). The purpose of the automatic stay is to provide the debtor "a breathing spell" from creditors and the financial pressures that drove the debtor to bankruptcy. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988). As such, a court may lift the automatic stay only upon a showing of cause. *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *See In re Unanue-Casal*, 159 B.R.

90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). In deciding whether "cause" to lift a stay exists, courts in this Circuit typically balance a number of factors, including:

(1) whether relief would result in complete or partial resolution of the issues;
(2) the lack of any connection with or interference with the bankruptcy case;
(3) whether the foreign proceeding involves the debtor as fiduciary;
(4) whether a specialized tribunal has been established to hear the cause of action at issue;
(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) whether the action essentially involves third parties rather than the debtor;
(7) whether the litigation could prejudice the interest of other creditors;
(8) whether a judgment in the foreign action is subject to equitable subordination;
(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
(12) the impact of the stay on the parties and the "balance of hurt."

*See id.* at 95–96. These are commonly referred to as the "*Sonnax* factors" because they derive from *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place exceeds the harm caused by lifting it. *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016). ML bears the burden of establishing cause, *see id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017); *In re Leibowitz*, 147 B.R. 341,345 (Bankr. S.D.N.Y. 1992).

     **B.**    **The *Sonnax* Factors Weigh Strongly in Favor of Maintaining the Automatic Stay in the ML Action.**

As more fully explained below, the *Sonnax* factors that apply here (by number above) are

4

one, two, four, seven, ten, eleven, and twelve. All weigh against lifting the stay. The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—focuses on whether allowing the litigation to proceed would expeditiously resolve issues relevant to the bankruptcy case. *See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009). Many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). Resolving a discrete contractual dispute between PREPA and ML would not resolve any issues in PREPA's Title III case. As a result, the first factor weighs against lifting the stay.

The second *Sonnax* factor also weighs against lifting the stay. Allowing the ML Action to proceed would interfere with PREPA's Title III case and the overall recovery effort by diverting PREPA's attention and resources away from critical work necessary to repair the electric grid and provide reliable electric service to the residents of Puerto Rico, which is an essential part of PREPA's reorganization and recovery efforts. Given that the dispute is in the middle of discovery, substantial work, time, and effort by PREPA employees and representatives, PREPA attorneys, and third-party support staff will be required to search for and gather relevant documents and electronically stored information, complete written discovery, prepare and attend depositions, address any discovery disputes, oppose WR's Motion for Summary Judgment, and prepare for and attend trial. PREPA must also engage in extensive and costly expert discovery. All of the aforementioned work will also result in substantial financial cost to PREPA.

Although ML asserts that "written discovery" was "almost completed" and that its motion for summary judgment was "unopposed" (Mot. ¶ 7), these assertions are not only meritless, but also misleading. In fact, PREPA understands that at least seven depositions will

5

need to be scheduled, and expert discovery was still pending for both parties prior to the imposition of the stay. ML's "unopposed" motion for summary judgment is unopposed only in the sense that PREPA had not yet filed its opposition prior to the stay taking effect.

Further, ML's conclusory assertion that modification of the automatic stay would not interfere with PREPA's Title III case (Mot. ¶ 14) is belied by the fact that critical PREPA resources would need to be diverted from PREPA's recovery and reorganization in its Title III case toward the defense of the ML Action. *See In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (declining to lift the stay in a chapter 9 proceeding where the stayed action "necessarily would consume the time and attention" of the debtor when the debtor's "undivided time and attention" was required by the bankruptcy case); *In re Jefferson City.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) ("[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"). As a result, the second *Sonnax* factor supports denial of the Motion.

*Sonnax* factor four also weighs in favor of denying the Motion. ML appears to contend that because the Puerto Rico state courts "have expertise in this area," factor four weighs in favor of lifting the stay. (Mot. ¶ 17.) A state court's expertise, however, is not the test of the fourth *Sonnax* factor. Instead, this factor focuses on whether "a specialized tribunal has been established for particular causes of action and that tribunal has the expertise to hear such cases." *In re Lahman Mfg. Co., Inc.*, 31 B.R. 195, 199 (Bankr. D.S.D. 1983).[5] The ML Action and the Court of First Instance do not qualify—it is a contractual dispute being litigated in a state court of general jurisdiction.

*Sonnax* factor seven also weighs in favor of denying the Motion because lifting the stay

---

5   Courts offer several examples for such specialized tribunals. *See, e.g., In re Good Hope Indus., Inc.*, 16 B.R. 719 (Bankr. D. Mass) (arbitration panels); *In Re Terry*, 12 B.R. 578 (Bankr. E.D. Wis. 1981) (patient compensation panels); *In re Seeburg Corp.*, 5 B.R. 364 (Bankr. N.D. Ill.1980) (National Labor Relations Board).

would prejudice the interests of other creditors. Any time consumed by the ML Action is time not spent on the overall recovery and reorganization of PREPA in the Title III case. Any money expended by PREPA to defend against the ML Action would be diverted from PREPA's already financially-strained resources, a factor that courts have recognized counsels against lifting a bankruptcy stay. *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 563–64 (Bankr. C.D. Cal. 2004) (rejecting an effort to lift the stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re City of Stockton*, 484 B.R. at 379 (declining to lift the stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

In addition, lifting the stay to further embroil PREPA in the ML Action at a time when PREPA should be devoting critical resources and personnel to the restoration of electric service to the Island would reward ML with a tactical advantage, as PREPA would be forced to take measures to minimize litigation costs in order to conserve its resources for its rebuilding efforts of the Island's electrical grid. Such gamesmanship not only interferes with PREPA's Title III case but also prejudices the interest of its creditors, and ML should not be allowed to take advantage of PREPA's critical rebuilding efforts following Hurricanes Irma and Maria in order to force PREPA to compromise its positions in litigation.

*Sonnax* factor ten also supports maintaining the automatic stay because, as discussed above, discovery in the ML Action is far from "almost completed." Resolution of the ML Action, should the stay be lifted, will neither be expeditious nor economical. Instead, ML and PREPA must complete substantial discovery including expert discovery, continue to litigate pre-trial matters including ML's motion for summary judgment, and actually prepare for and participate in trial. Nor would lifting the stay serve the interest of judicial economy. There is no

7

evidence that maintaining the stay would prevent the parties from reaching a complete resolution of the ML Action at the appropriate time, and any of the remaining discovery and litigation can be timely concluded once PREPA has emerged from its ongoing crisis.

Likewise, *Sonnax* factor eleven counsels against granting the Motion. As ML admits, discovery has not been completed, and trial preparation has not begun. (Mot. ¶ 7.) Even if PREPA's resources were not stretched and taxed due to its restoration efforts and reorganization efforts, neither PREPA nor ML would be prepared for trial given the substantial amount of outstanding discovery and pretrial issues.

Finally, the twelfth *Sonnax* factor—the impact of the stay on the parties and the "balance of hurt"—strongly weighs in favor of maintaining the automatic stay. While ML contends that maintaining the stay would likely result in irreparable harm, it fails to demonstrate any such harm from execution of its performance bond (which has not yet occurred and could occur regardless of the resumption of litigation) or caused by PREPA's "illegal decision" to suspend ML from its Suppliers Registry. In fact, PREPA's decision to suspend ML has already been litigated and upheld by the Tribunal de Apelaciones of Puerto Rico. *See Master Link Corp. v. Autoridad de Energia Electrica*, No. KLRA201500857, 2015 WL 10097319, at *1 (P.R. Cir. Dec. 22, 2015). To the contrary, for the reasons set forth herein, PREPA and the residents of Puerto Rico would be harmed should the stay be lifted at this time, as PREPA will be required to divert resources from critical projects and incur significant expenses in order to defend the ML Action. Accordingly, under the twelfth *Sonnax* factor, the balance of equities weighs in favor of

8

denying the Motion.[6]

### C. Even "Notwithstanding" the *Sonnax* Factors, Modification of the Stay is Not Warranted.

In the Motion, Movant attempts an end-run around the *Sonnax* analysis by asserting that "[n]otwithstanding" the *Sonnax* factors, bankruptcy courts "consistently" modify the stay to allow the continuation of litigation. (Mot. ¶ 13.) None of the cases cited by ML support this assertion; these cases are either materially distinguishable or inapposite. *See In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992), as amended (May 27, 1992) (lifting the stay to allow a state court to enter an equitable distribution judgment in a divorce proceeding); *In re C & A, S.E.*, 360 B.R. 12, 18 (Bankr. D.P.R. 2006), *aff'd sub nom. C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.*, 369 B.R. 87 (D.P.R. 2007) (finding that equitable grounds existed to remand a post-arbitral proceeding); *In re Annie's, Inc.*, 201 B.R. 29, 30 (Bankr. D.R.I. 1996), *vacated sub nom. Peerless Ins. Co. v. Rivera*, 208 B.R. 313 (D.R.I. 1997) (lifting the stay to allow insurer to prosecute declaratory judgment against debtor and avoid multiple lawsuits and inconsistent judgments); *In re Tricare Rehab. Sys., Inc.*, 181 B.R. 569, 578 (Bankr. N.D. Ala. 1994) (lifting the stay to avoid duplicative lawsuits in state court and bankruptcy court). The facts upon which these cases were decided do not exist here.

Movant also claims that public interest supports lifting the stay because Movant asserts that resolution of the ML action could potentially result in ML completing its construction project and supplying electricity to Culebra and Vieques. (Mot. ¶ 14.) While AAFAF and PREPA of course agree that electrical restoration to all of Puerto Rico is a matter of paramount

---

[6] The remaining Sonnax factors three, five, six, eight, and nine—*i.e.,* whether the foreign proceeding involves the debtor as a fiduciary, whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation, whether the action essentially involves third parties rather than the debtor, whether a judgment in the foreign action is subject to equitable subordination, and whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor, respectively—are not addressed because they are inapplicable here.

9

public interest, electricity is not restored via litigation. Based on their assessment of the damage to the Island's electrical grid, the Commonwealth, PREPA, FEMA, the Army Corps of Engineers, and many other parties continue to work diligently to restore and repair the Island's shattered electrical system, which includes the islands of Culebra and Vieques.[7] That restoration should be determined and effectuated by the Commonwealth, PREPA, FEMA, and the Army Corps of Engineers and should not be dictated by financially-motivated third parties. Diverting PREPA personnel and resources to address commercial litigation during this crucial time will not facilitate those processes and contribute to full restoration, and lifting the stay is thereby not in the public interest.

ML, therefore, has failed to show that cause exists to lift the automatic stay and this Court should decline to do so.

### III. CONCLUSION

For the reasons set forth above, on behalf of PREPA, AAFAF respectfully requests that the Motion be denied.

*[remainder of this page intentionally left blank]*

---

[7] Due to restoration difficulties in these areas, PREPA has issued a Request for Proposals according to its approved and legal processes for solutions for providing energy to Culebra and Vieques. *See* https://new.reorg-research.com/data/documents/20180416/5ad515301d2e6.pdf.

Dated: April 20, 2018
San Juan, Puerto Rico

| THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, as Fiscal Agent for PREPA | THE PUERTO RICO ELECTRIC POWER AUTHORITY |
|---|---|
| By its attorneys, | By its attorneys, |
| /s/ *Kevin D. Finger* | /s/ *Arturo Díaz Angueria* |
| | USDC No. 117907 |
| Kevin D. Finger (*admitted pro hac vice*) | |
| David D. Cleary (*admitted pro hac vice*) | /s/ *Katiuska Bolaños Lugo* |
| Greenberg Traurig, LLP | USDC No. 231812 |
| 77 West Wacker Drive Suite 3100 | CANCIO, NADAL, RIVERA & DÍAZ, P.S.C. |
| Chicago, IL 60601 | PO Box 364966 |
| Phone: 312.456.8400 | San Juan, PR 00936-4966 |
| Fax: 312.456.8435 | Phone: (787) 767-9625 |
| Email: fingerk@gtlaw.com | Fax: (787) 764-4430 |
| clearyd@gtlaw.com | Email: adiaz@cnrd.com |
| | kbolanos@cnrd.com |
| Nancy A. Mitchell (*admitted pro hac vice*) | |
| Nathan A. Haynes (*admitted pro hac vice*) | |
| Greenberg Traurig, LLP | |
| 200 Park Avenue | |
| New York, NY 10166 | |
| Phone: 212.801.9200 | |
| Fax: 212.801.6400 | |
| Email: mitchelln@gtlaw.com | |
| haynesn@gtlaw.com | |
| | |
| Joseph P. Davis (*admitted pro hac vice*) | |
| Greenberg Traurig, LLP | |
| One International Place, Suite 2000 | |
| Boston, MA 02110 | |
| Phone: 617.310.6000 | |
| Fax: 617.310.6001 | |
| Email: davisjo@gtlaw.com | |