# EXHIBIT B

## Schedule A

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below and should be given their most expansive and inclusive interpretation unless otherwise expressly limited. This includes, without limitation, the following.

1. "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its officers, directors, employees, partners, subsidiaries, and affiliates, as applicable.

2. "All," "any," "each," and "every" shall be construed as inclusive or exclusive, and shall be construed as both "each" and "every" to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communications, includes any document evidencing the Date, participants, subject matter, and content of any such oral communication, including, but not limited to, transcripts, minutes, notes, audio, video, electronic recordings, telephone records and calendar entries.

4. "Document" means any and all writings and recorded materials, of any kind, that are or have been in Your possession, custody or control, whether originals or copies. Such writings include, but are not limited to, Communications, electronically stored information in any medium, such as emails, text messages, and instant messages; contracts; notes; drafts; interoffice memoranda; memoranda for files; letters; research materials; correspondence; logs; diaries; forms; bank statements; tax returns; card files; books of accounts; journals; ledgers; invoices; drawings; computer files; records; data; print-outs or tapes; reports; statistical components; studies; graphs; charts; minutes; manuals; pamphlets; or books of all nature and

kind whether handwritten, typed, printed, mimeographed, photocopied or otherwise reproduced; all tape recordings (whether for computer, audio or visual display) or other tangible things on which words, phrases, symbols or information are stored.

5. "Fiscal Plan" shall mean the PREPA Fiscal Plan certified by the FOMB on April 28, 2017.

6. "FOMB" or "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico.

7. "Liquidity Report" means any and all reports, analyses, statistics, graphics, presentations, or other Documents related to PREPA's liquidity or solvency—covering any period of time—whether prepared by PREPA or a third party.

8. "Party" or "Parties" means, as applicable, each or every plaintiff and defendant in this Action (including, without limitation, any party that seeks to intervene).

9. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10. "PREC" means the Puerto Rico Energy Commission.

11. "PREPA" means the Puerto Rico Electric Power Authority.

12. "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat 549.

13. "Relate" and "concern" shall be construed to bring within the scope of the Request all information that comprises, references, constitutes, describes, evidences, explicitly or implicitly relates to, was reviewed in conjunction with, or was made as a result of the subject matter of the Request, including without limitation all Documents that reflect, record, memorialize, discuss, evaluate, consider, review or report the subject matter of the Request.

14. "Request" means a request for the production of Documents contained herein.

15. "Territorial Government" shall be given the meaning that is ascribed in PROMESA § 5(18), 48 U.S.C. § 2104(18).

16. "Trust Agreement" means the Trust Agreement between PREPA and U.S. Bank National Association, as successor trustee, dated January 1, 1974 (as amended and supplemented).

17. "You" or "Your" refers to PREPA and its divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on PREPA's behalf.

## GENERAL INSTRUCTIONS

1. You are required to answer these Document Requests drawing upon all materials in Your possession, custody, or control, as well as materials that are not in Your custody but are owned in whole or in part by You and those that You have an understanding, express or implied, that You may use, inspect, examine, or copy. You must provide all information in response to a Document Request which is known to You, Your agents, consultants employees, accountants, attorneys, or experts, or which appears in Your records.

2. The following rules of construction shall apply to these Document Requests.

    a. The terms "all" and "any," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material.

    b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory or Document Request all responses that might otherwise be construed to be outside of its scope.

3

  c. The term "including" shall always be construed to mean "including, but not limited to," or "including, without limitation" to encompass more than the specifically identified materials.

  d. The present tense shall also include the past tense and vice versa.

  e. The use of the singular form of any word includes the plural and vice versa.

3. Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these Interrogatories and Document Requests.

4. You are required to produce all non-identical copies and drafts of each document. The originals of all Documents produced in copy form shall be made available for inspection upon request.

5. Documents attached to each other in their original form should not be separated.

6. If no information or Documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

7. The fact that a Document has or will be produced by another plaintiff, third party, or other party to these or related proceedings does not relieve You of the obligation to produce Your copy of the same Document.

8. If any Document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Fed. R. Civ. P. 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, and PROMESA § 310, 48 U.S.C. § 2170, You are to provide a list of such Documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

  a. the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

4

      b.    all facts relied upon in support of the claim of privilege or immunity;

      c.    all Persons on whose behalf the privilege or immunity is claimed;

      d.    the type of Document (*e.g.*, letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

      e.    the subject matter (without revealing the information as to which privilege is claimed);

      f.    its Date, author(s), sender(s), addressee(s), and recipient(s); and

      g.    the paragraph(s) of these Interrogatories and Document Requests to which production of the document is responsive.

You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all Documents or portions thereof not subject to Your objection.

9.    If any Document requested was, but is no longer, in Your possession, custody, or control, identify the document and state what disposition was made of it and the Date or Dates upon which such disposition was made, and additionally, produce all Documents relating to the disposition of such document.

10.    If You object to any Document Request (or portion thereof), state the reason for the objection in detail and respond to that Document Request as narrowed by Your objection.

11.    Electronically stored information ("ESI") as that term is used in Fed. R. Civ. P. 34 should be produced as follows:

      a.    TIFFs. Black and white images shall be delivered as single page Group IV TIFF image files. Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

5

  b. Unique IDs. Each image should have a unique file name and should be named with the Bates number assigned to it.

  c. Text Files. Extracted full text in the format of document level txt files shall be provided in a separate folder, one text file per document. Each text file should match the respective TIFF filename (Beginning Bates Number). Text from redacted pages will be produced in OCR format rather than extracted text.

  d. Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

  e. Database Load Files/Cross-Reference Files. Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters:
  Comma ¶ ASCII character (020)
  Quote þ ASCII character (254)

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

6

- Beginning Bates Number and Ending Bates Number should be two separate fields.

- A complete list of metadata fields is included in paragraph 11(f).

f. Metadata. For all ESI records, provide all of the following metadata fields: Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and Time, Last Modified Date and Time, Parent Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

g. Spreadsheets. For spreadsheets that were originally created using common, off-the-shelf software (*e.g.*, Microsoft Excel), produce the spreadsheets in native format and, in addition, in TIFF format. Native file Documents must be named per the Beginning Bates Number. The full path of the native file must be provided in the .dat file.

12. Hard copy Documents shall be produced as follows:

a. TIFFs. Black and white images shall be delivered as single page Group IV TIFF image files. Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

b. Unique IDs. Each image should have a unique file name and should be named with the Bates number assigned to it.

c. OCR. High-quality document level OCR text files should be provided in a separate folder, one text file per document. Each text file should match the respective TIFF filename (Beginning Bates Number). For redacted Documents, provide the re-OCR'd version.

d. Database Load Files/Cross-Reference Files. Records should be provided in a format compatible with the following industry standards:

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

7

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters:
  Comma ¶ ASCII character (020)
  Quote þ ASCII character (254)

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

e. Unitizing of Records. In scanning hard copy records, distinct records should not be merged into a single record, and single records, should not be split into multiple records (*i.e.*, hard copy records should be logically unitized).

f. Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

g. Objective Coding Fields. The following objective coding fields should be provided: Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

8

13. These Documents Requests are continuing in nature. If any information or Document responsive to a Document Request herein is not presently in Your possession, custody, or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation pursuant to Fed. R. Civ. P. 26(e), and are hereby requested, to supplement Your responses to these Interrogatories and Document Requests within a reasonable period of time after it comes into Your possession, custody, or control.

## DOCUMENT REQUESTS

**REQUEST NO. 1.**

Monthly reports comparing budgeted to actual revenues and expenses; summary monthly records, including aging reports, related to accounts payable and accounts receivable, including without limitation those relating to fuel and critical vendor payments; and all weekly and monthly reports provided to senior management from January 1, 2016 through the present.

**REQUEST NO. 2.**

A 13-week cash flow statement and weekly updates to the initial cash flow statement, and a budget covering the next 13-week period or, to the extent neither is prepared, all weekly cash flow and monthly cash flow reports prepared by PREPA and all associated budgets, and a cash reconciliation report dating back to April 1, 2017.

**REQUEST NO. 3.**

All unproduced and future Liquidity Reports, in the form provided to the Oversight Board to the extent they are provided to the Oversight Board.

**REQUEST NO. 4.**

Monthly reports on federal funds received and disbursed by area and agency that relate to

9

repairs to PREPA's assets and monthly reports on any hurricane-related expenditures related to PREPA's assets that have not yet been or will not be reimbursed from federal funds.

**REQUEST NO. 5.**

All drafts and final copies of PREPA's emergency plans from April 1, 2017 through the present and ongoing, including but not limited to any reports or plans prepared in compliance with Act 138-2007, and all documentation regarding PREPA's compliance with any such emergency plans.

**REQUEST NO. 6.**

All drafts and final catalogues of disaster recovery and repair materials made in preparation for Hurricanes Irma and Maria, including a detailed "command and control" structure for the hurricane recovery; the most recent ledgers of all current PREPA assets and inventories of all current materials; and a breakdown of employee headcount by job function, job classification, and work headquarters.

**REQUEST NO. 7.**

Records of how many hours workers (broken down by workers employed directly by PREPA, workers subcontracted by PREPA, or workers subcontracted by another party) have worked on repairing damage to PREPA's assets sustained during Hurricanes Irma and Maria; all reports relating to grid status, including availability of all 230kv, 115kv and substations, and town-by-town assessment of local distribution availability; all materials relating to a planned restoration assessment; and all materials relating to the status of plant dispatch capability and output, including EcoEléctrica, AES and the PREPA regional combustion turbines.

**REQUEST NO. 8.**

All contracts in excess of $1 million that PREPA has entered into from September 1,

10

2017 onwards, including any and all mutual aid agreements.

**REQUEST NO. 9.**

All records relating to PREPA's billing and collection practices from September 1, 2017 onwards, including but not limited to any notices that have been sent to customers, any comparisons between meter readings and actual bills, any comparisons to PREPA's historical billing and/or collection practices on a customer group by customer group basis, and any records on current metering practices, including but not limited to records relating to all meter checks conducted since September 1, 2017.

**REQUEST NO. 10.**

All insurance policies ("Insurance Policies") providing or potentially providing coverage from January 1, 2016 to the present to (i) PREPA for damage or loss of commercial property, losses resulting from business interruption and expenses incurred to normalize PREPA's operations, (ii) the System (as defined in the Trust Agreement) and (iii) Revenues (as defined in the Trust Agreement).

**REQUEST NO. 11.**

All documents and communications from September 1, 2017 to the present regarding (i) any claims or demands for coverage under the Insurance Policies, (ii) the estimated losses covered by the Insurance Policies, (iii) any advances under such Insurance Policies, (iv) any recoveries under such Insurance Policies, and (v) communications, agreements, and negotiations with insurers regarding the foregoing.

**REQUEST NO. 12.**

All studies performed by PREPA or performed by a third party and provided to PREPA regarding fraud or waste during the past three years, and all internal audit work plans and all

11

draft and completed internal audit analyses for each of the past three years.

**REQUEST NO. 13.**

All studies performed by PREPA or performed by a third party and provided to PREPA relating to load loss, including but not limited to technical loss, non-technical loss, current diversion, and theft.

**REQUEST NO. 14.**

All communications between PREPA and Excelerate Energy or Earthshine Corp. regarding the status of the Aguirre Offshore Gasport.

**REQUEST NO. 15.**

All documents and communications regarding the preparation of any potential or actual rate adjustment (whether for presentation to PREC or otherwise) and any rate case and the consideration and decisions by PREC concerning rate adjustments from January 1, 2016 to the present, including but not limited to (i) all documents relating to preparing any rate case or rate adjustment, actual or planned, (ii) all communications with PREC in connection thereto, (iii) all documents and communications regarding the final resolution and order issued by PREC on January 10, 2017, and (iv) all communications with PREC regarding all other proceedings required under Act 57-2014 (as amended).

**REQUEST NO. 16.**

All cost reduction studies and cost benchmarking analyses performed by PREPA or performed by a third party and provided to PREPA.

**REQUEST NO. 17.**

Copies of all power purchase agreement and any amendments thereto between PREPA and any third party providing renewable energy to PREPA and any analyses performed by

12

PREPA or performed by a third party and provided to PREPA regarding the market price for renewables.

**REQUEST NO. 18.**

All communications between PREPA and any auditor, including Ernst & Young, regarding to PREPA's financial auditing from 2015 onwards, and all communications between PREPA and any party hired by PREPA to conduct a Consulting Engineer's Report (as defined in the Trust Agreement), including URS Corporation, regarding a Consulting Engineer's Report from 2015 onwards.

**REQUEST NO. 19.**

(1) All models, analyses, and other documents supporting Andrew Wolfe's conclusion that "(i) adopting a rate above $0.214 per kWh or (ii) increasing the rate (even if not above $0.214 per kWh) at a pace that is disproportionate to rate increases adopted by other Caribbean countries and the U.S. mainland region would eventually contribute to a downward economic spiral that would result in Puerto Rico returning to a path of declining economic activity, which would in turn adversely impact the demand for electricity and in the end lead to another debt service payments crisis for PREPA"; and (2) all studies performed by PREPA or performed by a third party and provided to PREPA related to price demand and/or demand elasticity. Declaration of Andrew Wolfe ¶ 12, filed in *In re Fin. Mgmt. & Oversight Bd as Representative of PREPA*, Case No. 17-4780, Dkt. No. 149-2 (July 31, 2017).

**REQUEST NO. 20.**

To the extent not already produced or requested above, any inputs, calculations, or formulae underlying (i) the PREPA Fiscal Plan certified on April 28, 2017, (ii) revisions to such Fiscal Plan, and (iii) any forthcoming fiscal plan for PREPA when and as submitted to the

13

Oversight Board, together with copies of such forthcoming fiscal plan when and as submitted (and/or resubmitted) to the Oversight Board.

14