# EXHIBIT C

# SCHEDULE A

## DEFINITIONS

1. "Title III Proceedings" means all litigation relating to any effort to restructure the debt of the Commonwealth or any of its public instrumentalities that is filed pursuant to Title III of PROMESA, including but not limited to *In re FOMB for P.R. as representative of The Commonwealth of Puerto Rico*, No. 17 BK 3283; *In re FOMB as representative of Puerto Rico Sales Tax Financing Corporation ("COFINA")*, No. 17 BK 3284; *In re FOMB as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS")*, No. 17 BK 3566; *In re FOMB for P.R. as representative of Puerto Rico Highways and Transportation Authority ("HTA")*, No. 17 BK 3567; and *In re FOMB as representative of Puerto Rico Electric Power Authority ("PREPA")*, No. 17 BK 4780.

2. "TSA" means Treasury Single Account.

3. "You" or "Your" refers to (1) the Financial Oversight Management Board; and (2) the Commonwealth, and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## INSTRUCTIONS

1. You are required to answer these Document Requests drawing upon all materials in Your possession, custody, or control, as well as materials that are not in Your custody but are owned in whole or in part by You and those that You have an understanding, express or implied, that You may use, inspect, examine, or copy. You must provide all information in response to a

4

Document Request which is known to You, Your agents, consultants, employees, accountants, attorneys, or experts, or which appears in Your records.

    2.    The following rules of construction shall apply to these Document Requests.

        a.    The terms "<u>all</u>" and "<u>any</u>," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material.

        b.    The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Request all responses that might otherwise be construed to be outside of its scope.

        c.    The term "<u>including</u>" shall be construed to mean "<u>including, but not limited to</u>," or "<u>including, without limitation</u>" to encompass more than the specifically identified materials.

        d.    The present tense shall also include the past tense and vice versa.

        e.    The use of the singular form of any word includes the plural and vice versa.

    3.    Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these Document Requests.

    4.    You are required to produce all non-identical copies and drafts of each document. The originals of all Documents produced in copy form shall be made available for inspection upon request.

    5.    Documents attached to each other in their original form should not be separated.

    6.    If no information or Documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

    7.    The fact that a Document has or will be produced by another plaintiff, third party, or other party to these or related proceedings does not relieve You of the obligation to produce Your copy of the same Document.

8.  If any Document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Fed. R. Civ. P. 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, and PROMESA § 310, 48 U.S.C. § 2170, You are to provide a list of such Documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

   a.   the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

   b.   all facts relied upon in support of the claim of privilege or immunity;

   c.   all Persons on whose behalf the privilege or immunity is claimed;

   d.   the type of Document (*e.g.*, letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

   e.   the subject matter (without revealing the information as to which privilege is claimed);

   f.   its Date, author(s), sender(s), addressee(s), and recipient(s); and

   g.   the paragraph(s) of these Document Requests to which production of the document is responsive.

You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all Documents or portions thereof not subject to Your objection.

9.  If any Document requested was, but is no longer, in Your possession, custody, or control, identify the document and state what disposition was made of it and the Date or Dates upon which such disposition was made, and additionally, produce all Documents relating to the disposition of such document.

6

10. If You object to any Document Request (or portion thereof), state the reason for the objection in detail and respond to that Document Request as narrowed by Your objection.

11. Unless otherwise specified in a specific request, electronically stored information ("ESI") as that term is used in Fed. R. Civ. P. 34 should be produced as follows:

   a. TIFFs. Black and white images shall be delivered as single page Group IV TIFF image files. Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

   b. Unique IDs. Each image should have a unique file name and should be named with the Bates number assigned to it.

   c. Text Files. Extracted full text in the format of document level text files shall be provided in a separate folder, one text file per document. Each text file should match the respective TIFF filename (Beginning Bates Number). Text from redacted pages will be produced in OCR format rather than extracted text.

   d. Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

   e. Database Load Files/Cross-Reference Files. Records should be provided in a format compatible with the following industry standards.

   - The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

   - The data file (.dat) should contain all the fielded information that will be loaded into the database.

   - The first line of the .dat file must be a header row identifying the field names.

   - The .date file must use the following *Concordance* default delimiters:
     Comma ¶ ASCII character (020)
     Quote þ ASCII character (254)

7

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

- A complete list of metadata fields is included in paragraph 11(f).

f. Metadata. For all ESI records, provide all of the following metadata fields: Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and Time, Last Modified Date and Time, Parent Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

g. Spreadsheets. For spreadsheets that were originally created using common, off-the-shelf software (*e.g.*, Microsoft Excel), produce the spreadsheets in native format and, in addition, in TIFF format. Native file Documents must be named per the Beginning Bates Number. The full path of the native file must be provided in the .dat file.

12. Hard copy Documents shall be produced as follows:

a. TIFFs. Black and white images shall be delivered as single page Group IV TIFF image files. Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

8

b.  Unique IDs. Each image should have a unique file name and should be named with the Bates number assigned to it.

c.  OCR. High-quality document level OCR text files should be provided in a separate folder, one text file per document. Each text file should match the respective TIFF filename (Beginning Bates Number). For redacted Documents, provide the re-OCR'd version.

d.  Database Load Files/Cross-Reference Files. Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters:
    Comma ¶ ASCII character (020)
    Quote þ ASCII character (254)

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

9

  e. Unitizing of Records. In scanning hard copy records, distinct records should not be merged into a single record, and single records, should not be split into multiple records (*i.e.*, hard copy records should be logically unitized).

  f. Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

  g. Objective Coding Fields. The following objective coding fields should be provided: Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

13. These Documents Requests are continuing in nature. If any information or Document responsive to a Document Request herein is not presently in Your possession, custody, or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation pursuant to Fed. R. Civ. P. 26(e), and are hereby requested, to supplement Your responses to these Document Requests within a reasonable period of time after it comes into Your possession, custody, or control.

## RELEVANT TIME PERIOD

Unless otherwise specified, the relevant time period for these requests is January 1, 2014 to the present.

## DOCUMENT REQUESTS

**REQUEST NO. 1**

Documents sufficient to show actual revenues and expenses, department by department, for Fiscal Years 2016, 2017 and year-to-date 2018. See, *e.g.*, Oversight Board Initial Request for Information, announced at The Financial Oversight And Management Board First Public Meeting (Sept. 30, 2016) (hereinafter, "FOMB Initial Request").

10

**REQUEST NO. 2**

Monthly reports comparing budgeted to actual revenues and expenses, department by department, for Fiscal Years 2017 and 2018. See *Puerto Rico Bond Payments Will Improve After Nine Years: Jaresko*, THE BOND BUYER (Sept. 19, 2017) (Ex. A to GO Group Reply Brief In Support of Motion for Rule 2004 Examination, filed Nov. 7, 2017).

**REQUEST NO. 3**

All unproduced and future weekly liquidity reports, in the form provided to the Oversight Board to the extent they are provided to the Oversight Board. See, *e.g.*, TSA FY 2018 Cash Flow Report dated Oct. 27, 2017 previously published by AAFAF; and TSA Cash Flow Actual-to-Forecast Comparison dated May 26, 2017, available at https://drive.google.com/file/d/0BwUldNJ-sOg_TkJGdFVtelZCTms/view.

**REQUEST NO. 4**

Monthly reports on Federal Funds received and disbursed by area and agency and monthly reports on any hurricane-related expenditures that have not yet been or will not bereimbursed from Federal Funds. See, *e.g.*, FOMB Initial Request.

**REQUEST NO. 5**

Monthly reports of all debt obligations due in the current fiscal year, including which such obligations have been paid. See FOMB Initial Request.

**REQUEST NO. 6**

Quarterly reports on key Puerto Rico economic, financial, social and labor statistics. See FOMB Initial Request.

**REQUEST NO. 7**

Monthly payroll reports by agency. See FOMB Initial Request.

11

**REQUEST NO. 8**

Items not produced (both methodological and inputs) with respect to the DevTech models or codes that generate anticipated inflation and GNP, including but not limited to information regarding the meaning and method of calculation of any undefined variables.

**REQUEST NO. 9**

All models, analyses, and other documents supporting Andrew Wolfe's conclusion that "Puerto Rico's real economic growth needs to reach at least 0.8% to achieve fiscal and debt sustainability" and that "if Puerto Rico's real economic growth were to fall below the 0.8% threshold, a downward economic spiral would occur." Declaration of Andrew Wolfe ¶ 10, filed in *Peaje Investments LLC v. Puerto Rico Highways and Transportation Authority*, Adv. Proc. No. 17-152, Dkt. 92 (July 14, 2017).

**REQUEST NO. 10**

All models, analyses, and other documents supporting Andrew Wolfe's conclusion that "(i) adopting a rate above $0.214 per kWh or (ii) increasing the rate (even if not above $0.214 per kWh) at a pace that is disproportionate to rate increases adopted by other Caribbean countries and the U.S. mainland region would eventually contribute to a downward economic spiral that would result in Puerto Rico returning to a path of declining economic activity, which would in turn adversely impact the demand for electricity and in the end lead to another debt service payments crisis for PREPA." Declaration of Andrew Wolfe ¶ 12, filed in *In re Fin. Mgmt. & Oversight Bd as Representative of PREPA*, No. 17-4780, Dkt. 149-2 (July 31, 2017).

**REQUEST NO. 11**

Documents relating to historical participation levels on an aggregate basis for each service line in the healthcare system, and the total cost by service line in the healthcare system on

12

an historical basis, as well as assumed participation levels and assumed total costs by service line in any Fiscal Plan projections.

**REQUEST NO. 12**

Materials reflecting the definition of "essential services," and any supporting workbook or schedule analyzing the cost of the same.

**REQUEST NO. 13**

All documents that You have produced or received, and all transcripts of depositions taken, in connection with discovery or disclosure in (1) these Title III Proceedings, including any adversary proceedings filed in any of the Title III Proceedings; (2) *Leon v. Rosselló-Nevares*, Civil No. SJ2017cv00107; (3) *Bhatia Gautier v. Rosselló-Nevares*, Civil No. SJ2017cv00271; and (4) *Centro Periodismo Investigativo v. Rosselló-Nevares*, Civil No. SJ2017cv00396.[3]

**REQUEST NO. 14**

Documents sufficient to show the (i) amounts and (ii) location and/or (iii) use of all revenues that have been or are subject to being "clawed back" from each of the Puerto Rico Highways and Transportation Authority, the Metropolitan Bus Authority, the Puerto Rico Convention Center District Authority, the Puerto Rico Infrastructure Financing Authority, the Puerto Rico Integrated Transportation Authority, or any other instrumentality of the Commonwealth for the purpose of paying the Commonwealth's general obligation debt.

**REQUEST NO. 15**

Documents sufficient to show the (i) amount and (ii) location and/or use of the proceeds of the "[s]pecial tax" imposed by 21 L.P.R.A. § 5002 "for the amortization and redemption of the

---

[3] To the extent some such documents and transcripts have been produced to certain Movants with the restrictions that their use be limited to specified adversary proceedings, Movants request use of such documents in all Title III proceedings.

13

general obligations of the Commonwealth," including records reflecting amounts held in the "Commonwealth Debt Redemption Fund" required to be established pursuant to 21 L.P.R.A. § 5004(a).

**REQUEST NO. 16**

To the extent not already produced or requested above, any inputs, calculations, or formulae underlying (i) the Fiscal Plan for Puerto Rico certified on March 13, 2017, and the Puerto Rico Electric Power Authority Fiscal Plan certified on April 28, 2017, (ii) revisions to either of such fiscal plans, and (iii) forthcoming fiscal plans for the Commonwealth, PREPA, PRASA, and any instrumentality when and as submitted (and/or resubmitted) to the Oversight Board, together with copies of such forthcoming fiscal plans when and as submitted (and/or re-submitted) to the Oversight Board.

**REQUEST NO. 17**

A fully functional model or workbook (in native format) showing how the Reconciliation Adjustment discussed on Page 15 of the Fiscal Plan for Puerto Rico certified on March 13, 2017 was calculated including but not limited to any backup or linked spreadsheets and all data run through such model(s) or workbook(s), and analysis or documents sufficient to show how the Reconciliation Adjustment is reflected in the budgets for the Commonwealth, any agency or instrumentally therefor and the FOMB including, but not limited to, any analysis prepared to compare or "bridge" each line item in the 2014, 2015, or 2016 preliminary or final audits to that Fiscal Plan.

14