UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY'S RESPONSE TO MOTION TO COMPEL OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AND REQUEST FOR ENTRY OF PROTECTIVE ORDER**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) the Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) the Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), hereby responds to the *Motion to Compel Compliance with February 26, 2018 Order and For Entry of a Protective Order of Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., The Mutual Fund Group, and National Public Finance Guarantee Corporation* ECF No. 2865 (the "Motion").

## INTRODUCTION

The Motion is a thinly-veiled motion for reconsideration of the Court's February 26, 2018 discovery order regarding the use of Fiscal Plan Development Materials and should be denied. In its prior order, this Court ruled "Movants have not shown good cause for the immediate use of the information, which would require the disclosure of many documents currently shared amongst the parties pursuant to protective orders and/or non-disclosure agreements." ECF No. 2590 ("Order") at 11.[2] The Court left the issue of appropriate confidentiality restrictions regarding such material for a future date, holding that "while Movants may attempt to use the Fiscal Plan Development Materials in the Title III or adversary proceedings, Respondents are not prejudiced from objecting to that use on a document by document basis. Such objections may include the necessity of keeping a particular protective order in place." *Id.* In other words, the Court *denied* Movants' request for immediate use in litigation, subject to Movants' right to seek to use the subject material in the future and Respondents' right to oppose such use.

---

[2] "Movants" are the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation. "Respondents" are AAFAF, the Commonwealth of Puerto Rico (the "Commonwealth"), as a Title III Debtor, by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), and the Oversight Board.

Movants completely overlook this fundamental aspect of the Court's order, insisting the Order stripped confidentiality protections from virtually all the materials Respondents have provided, including information Respondents have provided to Movants in the Data Room and through mediation. *See* Motion, Ex. C, ECF No. 2865-3.[3] The Court did no such thing, and its carefully considered balancing of the rights of the parties as embodied in the Order cannot be so cavalierly ignored. Movants have not shown good cause to disregard confidentiality and obtain authority to use information however they wish, or provided a compelling reason to grant the relief they seek, let alone prior to a document-by-document review and their Motion should be denied.

Some of Movants' arguments are simply recycled from prior pleadings this Court rejected. Confidentiality restrictions should be eliminated, they contend, because Movants want to show Data Room materials to litigation experts. *See* Motion, ECF No. 2865, at 5, n.4. But this Court already found that Movant's bare references to expert discovery, untethered to any pending litigation deadline, did not constitute good cause to lift the Data Room confidentiality restrictions. *See* Order, ECF No. 2590 at 11. Movants also want to show currently nonpublic information to trading principals of their clients without the need for those individuals to sign an NDA or the mediation agreements. Motion, ECF No. 2865 at 8. But Movants' clients can easily sign these agreements; parties do in virtually every major restructuring case if they want to participate in settlement discussions or otherwise receive sensitive financial information. And if Movants' clients wish to maintain trading optionality, they can easily abide by procedures for

---

[3] Though Movants' brief asks the Court to "compel production" of certain Fiscal Plan Development Materials, this is a misnomer: Respondents have given Movants access to ***all*** these materials already. The disputed issue is the level of confidentiality those materials should be afforded.

screening non-public information that creditors routinely implement in bankruptcy cases. *See In re Washington Mut., Inc.*, 461 B.R. 200, 266 (Bankr. D. Del. 2011), vacated in part on other grounds, No. 08-12229 MFW, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012) (explaining "creditors who want to participate in settlement discussions in which they receive material nonpublic information about the debtor must either restrict their trading or establish an ethical wall between traders and participants in the bankruptcy case" since "[t]hese types of restrictions are common in bankruptcy cases" and "a requirement to restrict trading or create an ethical wall in exchange for a seat at the negotiating table" does not "place[] an undue burden on creditors who wish to receive confidential information and give their input.").

Finally, this Court should not grant Movants' requested protective order, which unreasonably risks waiver of confidentiality protections over certain material. Respondents have proposed a protective order, attached hereto as Exhibit A, which preserves the confidentiality of Data Room documents unless the parties agree or the Court orders otherwise. If the Court enters any protective order, it should use this version instead of that urged by Movants.

## BACKGROUND

On December 22, 2017, the Parties submitted a Joint Report identifying only two disputes remaining for resolution: (1) the applicability of the deliberative process privilege; and (2) the confidentiality restrictions that should apply to materials made available to Movants through the Data Room. ECF No. 2154. Over the course of litigating these disputes, Movants conceded that Respondents posted to the Data Room "information sufficient to respond to the requests for Fiscal Plan Development Materials relating to the 2017 Plan," and that Respondents have agreed to provide the Fiscal Plan Development Materials in connection with the 2018 plan once it is certified. *See* Order, ECF No. 2590, at 6-7. On February 26, 2018, this Court held that

3

pre-decisional Fiscal Plan materials were privileged, subject to a categorical logging requirement,[4] and that Movants had not shown good cause to strip the Fiscal Plan Development Materials from the confidentiality protections in the NDAs and mediation agreements. *See* Order, ECF No. 2590.

> The Order stated:
>
> Having ruled that the documents fall within the scope of Rule 2004, this Court nonetheless holds that *Movants have not shown good cause for the immediate use of the information, which would require the disclosure of many documents currently shared amongst the parties pursuant to protective orders and/or non-disclosure agreements.*

Order, ECF No. 2590 at 11 (emphasis added). The Court considered Movants' request for immediate use of Fiscal Plan Development Materials to prepare a challenge to the eventual plan of adjustment, and rejected it:

> The Movants have only asserted that they may need to use the materials in connection with the cross-examination of experts or other challenges to an eventual plan of adjustment. No timetable for such potential use has been provided. As a result, this Court orders that while Movants may attempt to use the Fiscal Plan Development Materials in the Title III or adversary proceedings, Respondents are not prejudiced from objecting to that use on a document-by document basis. *Such Objections may include the necessity of keeping a particular protective order in place.*

*Id.* (emphasis added)

The Order also recognized that "deciding what material in the Data Room should be released from their confidentiality restrictions may involve a lot of unnecessary work since the Movants may not be seeking to use much of the material." *Id.* To avoid this problem, the Court ordered the parties to follow a procedure mirroring Section I(a) of the Parties' Joint Report. *Id.* at 11-12. Section I(a) states that Respondents will identify Data Room materials that consist of

---

[4] Several of the Movants filed Objections to this ruling. ECF No. 2707. Consistent with the Court's order, Respondents served extensive categorical privilege logs on April 6, 2018.

4

data or factual information that they agree may be used in litigation, subject to a protective order. Joint Report, ECF No. 2154 at 2.[5]

*Meet and Confer*

Instead of following the Court-ordered procedure, Movants sent a letter on February 27, 2018, claiming the Order required Respondents to lift the NDA and mediation confidentiality restrictions from every single document in the Data Room folder housing diligence materials relating to the central Government, and over eighty percent (153 of 184) of the documents the Commonwealth had given its creditors through mediation to date. *See* Motion, ECF No.2865, Ex. C 2865-3. The letter also reserved the Commonwealth's creditors' right to send additional demands for the release of confidentiality restrictions from instrumentality-specific documents, and additional documents exchanged through mediation. *Id.*

On March 1, 2018, consistent with the Order and Section I(a) of the Joint Report, Respondents provided Movants with a list of Data Room documents and folders that, as of the date of this filing, includes 122 Data Room documents that Respondents determined constitute "data or factual information" responsive to the Joint Requests, and agreed that these documents, along with the thousands of documents produced in adversary proceedings, may be used for

---

[5] The entirety of the paragraph reads as follows:

> The Parties agree that, subject to the entry of a protective order, data or factual information produced in the Data Room will be produced or deemed produced pursuant to the 2004 Requests Nos. 1 through 7, 11, 14 and 15. Movants may attempt to use such produced information in the Title III or adversary proceedings and Respondents reserve and do not waive any objection to such future use. Respondents will provide Movants with a schedule of materials in the Data Room that they in good faith determine to be data or factual information within the meaning of this paragraph.

5

litigation purposes, subject to the entry of a protective order. Motion, Ex. E, ECF 2865-5.[6] Respondents also agreed to meet and confer with Movants regarding potentially lifting NDA or mediation confidentiality restrictions over additional materials, to the extent Movants could articulate a current need to lift the restrictions. *Id.*

The GO Group responded on March 7, 2018, reasserting that the Order stripped all Data Room materials that Movants contend are responsive to the Joint Request from the NDA and mediation confidentiality restrictions. Motion, Ex. D, ECF 2865-4. Notwithstanding this claim, the letter also included an appendix listing 65 specific documents for which Movants sought a release of Data Room confidentiality restrictions. *Id.* Respondents reviewed these 65 documents, and in a letter dated March 12, 2018, agreed that 15 of them consisted of "data or factual information" that could be used in litigation, subject to a protective order, and notified the Movants that one of the documents on the list was already publicly available. *See* Motion, Ex. F, ECF 2865-6. This brings the total number of Data Room documents for which Respondents agreed to modify the Data Room confidentiality restrictions to date to 137. *See id.* Exs. E-F, ECF Nos. 2865-5, 2864-6. Another 11 documents from the appendix consisted of materials concerning the Puerto Rico Highways & Transportation Authority ("HTA") that were provided to HTA's creditors in mediation. Respondents requested to meet and confer to discuss the basis for the Commonwealth creditors' request for these documents. Motion, Ex. F at 3, ECF No. 2865-6. The remaining 37 documents consisted of projections and models underlying the Commonwealth Fiscal Plan certified on March 13, 2017 (31 documents), and certain materials underlying the in-development 2018 Fiscal Plan that were shared with creditors as part of the

---

[6] Respondents clarified that they do not assert confidentiality over publicly available materials that they had compiled in the Data Room for creditors' convenience.

6

mediation process (6 documents). With respect to these 37 documents, Respondents noted, as this Court held, that Movants had not shown good cause for release of these materials, but invited Movants to have their experts and clients sign NDAs and mediation agreements to facilitate their access to those materials. *Id.*

Movants never responded to the March 12 letter, and instead filed the instant Motion nearly a month later on April 9, 2018.

*Protective Order*

The Parties have been exchanging protective order drafts since January. The only point in contention is whether the materials Respondents have made available solely through the Data Room, subject to NDAs and mediation agreements, should be presumed to be "Confidential" under a litigation protective order in the event they are released from the data room restrictions. *See* Ex. B (redline of competing drafts). Respondents' draft states that such materials would remain "Confidential" unless the Parties agree, or the Court orders otherwise. *See* Ex. A, ¶ 8. Movants' draft assumes all Data Room confidentiality restrictions were lifted by the Order, and would require Respondents to re-designate responsive Data Room materials as "Confidential" under the protective order within five business days of its entry, or else risk waiver of all confidentiality protections. *See* Motion, Ex. A, ¶ 8, ECF No. 2865-1. Respondents' draft makes no accommodation for materials subsequently posted in the Data Room, or for materials provided through mediation. *Id.*

*The Motion*

The Motion badly misrepresents the meet and confer process to try to convince the Court that Respondents have not complied with the Order. For instance, the Motion repeatedly claims Respondents have not produced any Fiscal Plan Development Materials. This is false.

7

Respondents have received Fiscal Plan Development Materials through the Data Room. Respondents have further identified 137 Data Room documents, and the thousands of documents produced in adversary proceedings, that will be made available subject to a protective order. Respondents have also offered to make the Data Room materials available to Movants' experts and clients if they sign the Data Room confidentiality agreements. *See* Motion, Exs. E-F, ECF Nos. 2865-5, 2865-6.

The Motion seeks to compel Respondents to release 46[7] documents from the Data Room confidentiality restrictions. Motion, Ex. B, ECF No. 2865-2. Movants claim they need the Data Room confidentiality restrictions lifted from these materials so that they can show them to expert witnesses and principals of their clients who are subject to trading restrictions. Motion at 5, n.4 & 8. Movants did not discuss 9 of these 46 documents with Respondents before filing the Motion[8]—and 6 of those 9 are already available to Movants outside the Data Room.[9]

The 40 documents that remain at issue consist of projections and models underlying the obsolete 2017 Fiscal Plan (31 documents) and models and analyses underlying drafts of the in-development 2018 Fiscal Plan that were disclosed through mediation (9 documents). All the 2017 Fiscal Plan materials have been superseded. The 2018 Fiscal Plan materials were shared with creditors on a confidential basis in mediation to facilitate voluntary resolution of disputes;

---

[7] Items 4 and 8 in Movants' list of 47 are duplicates.

[8] These are items 20, and 40-47 of Exhibit B to the Motion. Item 20 was uploaded to the Data Room on June 26, 2017. Items 40-47 were uploaded on March 9, 2018, in connection with mediation.

[9] Item 41 is publicly available at https://data.femadata.com/FIMA/NHRAP/Maria/HurricaneMaria_ARA_InitialRun.pdf. Items 42-44 are duplicates of documents that Respondents already agreed to make available subject to a litigation protective order in their March 12 letter. The information in items 45 and 46 was published as part of the draft Commonwealth Fiscal Plan that the Governor submitted to the Board on April 5, 2018. *See* http://www.aafaf.pr.gov/assets/newfiscalplanforpuerto-rico-2018-04-05.pdf, slide 185.

8

much of which has been partially or entirely superseded. Now that the Oversight Board has certified the 2018 Commonwealth Fiscal Plan, AAFAF agrees to provide backup materials in its possession, custody, and control for the certified Fiscal Plan subject to a litigation protective order. In addition, many of these materials underlying both the 2017 and 2018 Fiscal Plans were prepared by financial advisors, and contain "trade secret or confidential research, development, or commercial information" that is not appropriate for public disclosure. *See* 11 U.S.C. § 107(b)(1).

### ARGUMENT

**I.  MOVANTS HAVE NOT DEMONSTRATED GOOD CAUSE TO STRIP DATA ROOM RESTRICTIONS FROM FISCAL PLAN DEVELOPMENT MATERIALS.**

This Court has already held, "Movants have not shown good cause for the immediate use of the information, which would require the disclosure of many documents currently shared amongst the parties pursuant to protective orders and/or non-disclosure agreements." Order at 11, ECF No. 2590. Nothing has changed: Movants do not even try to establish the good cause this Court found lacking on February 26. Rather, they insist the Order means something other than what it says, and insist the Order stripped away the applicable confidentiality provisions governing particular documents. Motion at 5-7, ECF No. 2865. In the alternative, Movants claim they need confidentiality restrictions immediately lifted because they would like to show Data Room materials to retained litigation experts without use restrictions and to principals of their clients without compromising their ability to trade. *Id.* at 5, n.4 & 8. Neither constitutes good cause to immediately lift Data Room confidentiality restrictions.

This Court has already considered and rejected Movants' claim that they need to immediately use the Data Room materials for use with experts. *See* Order at 11, ECF No. 2590. If Movants seek to use Data Room materials for litigation to challenge an eventual plan of

9

adjustment, this Court already ruled that such use is premature at this time. *See id.* (rejecting argument for immediate use of Data Room materials because "no timetable for such potential use has been provided"). Nothing has changed in this regard since February 26. No plan of adjustment has been proposed, and no timetable has been set for doing so. And Movants offer no support whatsoever for their suggestion that their desire to share nonpublic information with trading principals justifies stripping confidentiality protections. Consistent with the accepted approach in bankruptcy cases, Respondents have offered to make the Data Room materials available to Movants' principals, if they sign the confidentiality agreements governing those materials. *See* Motion, Ex. F at 3, ECF No. 2865-6. That these principals want to both review these materials and preserve their ability to trade does not change the confidential nature of these documents, nor does it provide any reason for the Court to deviate from the accepted approach courts take in such situations. *See In re Washington Mut., Inc.*, 461 B.R. at 266 (Bankr. D. Del. 2011), (explaining that it is generally accepted that creditors "restrict trading or create an ethical wall in exchange for a seat at the negotiating table").

Nor is it surprising that Movants have not articulated good cause, as there is none. The 2017 Fiscal Plan Development Materials, 31 of the 40 documents at issue, are stale in light of the complete overhaul of the Commonwealth Fiscal Plan following Hurricane Maria and will not become the basis of any plan of adjustment.

Nor could Movants articulate good cause to strip the 9 documents pertaining to drafts of the 2018 Fiscal Plan from the confidentiality restrictions in the mediation agreements. The 2018 materials were provided in mediation only as a good faith attempt to continue ongoing confidential negotiations. These documents have since been superseded, and, AAFAF will make the backup materials in its possession, custody or control for the certified 2018 Fiscal Plan

available, subject to a litigation protective order. Movants simply cannot justify undermining the mediation process by stripping mediation materials from the confidentiality protections afforded to those negotiations for an unspecified immediate use.

## II. THE COURT SHOULD ENTER RESPONDENTS' PROTECTIVE ORDER.

The single point in dispute with respect to the protective order is whether Data Room materials responsive to the Rule 2004 requests, which are currently subject to nondisclosure or mediation agreements, should enjoy a presumption of confidentiality under the protective order. Ex. B (redline of protective order drafts).

Specifically, Respondents have proposed a protective order that states that documents uploaded into the Data Room would remain presumptively Confidential, under either the Data Room confidentiality agreements or the protective order, unless Respondents agreed otherwise in writing, or the Court so ordered. *See* Ex. A (Respondents' proposed protective order). The Respondents' proposed protective order also provides that Movants may designate materials from the Data Room they believe should be released from the Data Room restrictions (in addition to those materials that Respondents already released), and that the parties would meet and confer on any dispute before seeking court intervention. *Id.* Movants instead ask this Court to enter a protective order that would require Respondents to identify all potentially responsive documents in the Data Room, including materials shared through mediation, and reproduce them with a confidentiality stamp within five business days of entry of the Order, otherwise the documents would no longer be deemed confidential. Motion, Ex. A, ¶ 8, ECF 2865-1. The Movants' proposed protective order provides no mechanism for designating materials subsequently uploaded to the Data Room, including mediation materials that may be deemed responsive to the Rule 2004 requests. *Id.*

11

Contrary to Movants' assertion, Respondents' proposed protective order does not reflect a refusal to make confidentiality determinations on a document-by-document basis. *Cf.* Motion at 8, ECF No. 2865. The decision to share non-public materials solely through the Data Room reflects a determination that those materials warrant confidential treatment.[10] When AAFAF determines that information pertaining to the Commonwealth's financial condition or to the development of the Fiscal Plans is not confidential, it publishes that information. *See* ECF 1928 (cataloging extensive publicly available materials responsive to the Joint Requests). For instance, AAFAF publishes weekly reports showing inflows and outflows of the Government's principal bank account, and monthly cash account balance updates for its other accounts.[11] AAFAF also publishes the Fiscal Plan drafts the Governor has submitted to the Oversight Board, and the Oversight Board also publishes the results of its reviews of those drafts.[12]

It is entirely proper to request that the materials shared through the Data Room be treated as confidential under a litigation protective order, unless the parties agree or the Court orders otherwise. The Data Room materials at issue here consist of projections and models underlying the obsolete 2017 Fiscal Plan and drafts of the 2018 Fiscal Plan. The vast majority of these documents have been superseded, either as a result of the impact of the Hurricanes, or as the result of refinements and revisions of the 2018 Fiscal Plan. Courts have recognized that the Government has an interest in limiting the dissemination of materials that do not reflect a final policy determination, or for which disclosure would confuse the public as to what the

---

[10] In some cases Respondents have compiled materials that are publicly available in Data Room folders to assemble them for the convenience of the creditors. Respondents have already made clear they do not claim that materials available outside the Data Room are subject to the Data Room restrictions. Motion Ex. E at 2. ECF 2865-5.

[11] *See* http://www.aafaf.pr.gov/documents.html#otherdocumentspin

[12] *See* http://www.aafaf.pr.gov/documents.html#fiscalplanspin; https://juntasupervision.pr.gov/index.php/en/documents/

Governments' position is. *See New Hampshire Right to Life v. U.S. Dept. of Health and Hum. Services*, 778 F.3d 43, 52 (1st Cir. 2015) (recognizing deliberative process privilege as a mechanism to protect government's interest "preventing confusion among the public" that could result from public disclosure). In addition, some of these materials contain proprietary information belonging to third-party consultants for which confidential treatment is entirely appropriate. *See* 11 U.S.C. § 107(b)(1) ("On request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information"); Fed. R. Bankr. P. 9018 (to same effect). Moreover, materials concerning the 2018 Fiscal Plan were shared within the confines of mediation. Entering Movants' proposed protective order, which puts mediation materials at risk of a waiver of confidentiality, would undermine the mediation efforts.

## CONCLUSION

For the reasons stated above, AAFAF respectfully requests that the Court deny the Motion, and enter the proposed protective order, attached hereto as Exhibit A.

Case:17-03283-LTS Doc#:2949 Filed:04/23/18 Entered:04/23/18 22:01:21 Desc: Main
Document Page 15 of 15

Dated: April 23, 2018                      Respectfully submitted,
     San Juan, Puerto Rico

| | |
|---|---|
| */s/ Peter Friedman* | |
| John J. Rapisardi | */s/ Luis C. Marini-Biaggi* |
| (Admitted *Pro Hac Vice*) | Luis C. Marini-Biaggi |
| **O'MELVENY & MYERS LLP** | USDC No. 222301 |
| 7 Times Square | Email: lmarini@mpmlawpr.com |
| New York, NY 10036 | |
| Tel: (212) 326-2000 | */s/ Carolina Velaz-Rivero* |
| Fax: (212) 326-2061 | Carolina Velaz-Rivero |
| | USDC No. 300913 |
| Peter Friedman | E:mail: cvelaz@mpmlawpr.com |
| (Admitted *Pro Hac Vice*) | |
| **O'MELVENY & MYERS LLP** | MARINI PIETRANTONI MUÑIZ LLC |
| 1625 Eye Street, NW | MCS Plaza, Suite 500 |
| Washington DC 20006 | 255 Ponce de León Ave. |
| Tel: (202) 383-5300 | San Juan, Puerto Rico 00917 |
| Fax: (202) 383-5414 | Tel: (787) 705-2171 |
| | Fax: (787) 936-7494 |
| Elizabeth L. McKeen | |
| (Admitted *Pro Hac Vice*) | *Co-Attorneys for the Puerto Rico Fiscal* |
| **O'MELVENY & MYERS LLP** | *Agency and Financial Advisory Authority* |
| 610 Newport Center Drive | |
| 17th Floor | |
| Newport Beach, California 92660 | |
| Tel: (949) 823-6900 | |
| Fax: (949) 823-6994 | |

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

14