UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: <br><br> THE FINANCIAL OVERSIGHT MANAGEMENT BOARD FOR PUERTO RICO, <br><br>   as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, et al., <br><br> DEBTORS | PROMESA <br> TITLE III <br><br><br><br> No. 17 BK 3283-LTS <br><br> (Jointly Administered) |
| IN RE: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>   as representative of <br><br> PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA") <br><br> DEBTOR | PROMESA <br> TITLE III <br><br><br><br> No. 17 BK 4780-LTS |

MOTION FOR RELIEF FROM STAY

TO THE HONORABLE COURT:

COMES NOW creditor, Sucesión Sastre Wirshing, through its undersigned counsel and very respectfully states and prays:

1. Pursuant to Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as amended by Order Further Amending Case Management Procedures (docket no. 1512), and subject to Paragraphs III. F and III.T, at least fifteen (15) business days prior to filing a Stay Relief Motion to continue a prepetition ordinary course civil action against a Debtor, the movant shall contact counsel for the Oversight Board and AAFAF by electronic-mail

Case:17-03283-LTS Doc#:2962 Filed:04/26/18 Entered:04/26/18 16:07:43 Desc: Main
Document Page 2 of 13

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

to advise them of the movant's intent to seek relief from the automatic stay (the "Lift Stay Notice" and the notice period, the "Lift Stay Notice Period").

2. The Lift Stay Notice shall include (i) the identity of the movant and its contact information, (ii) the claim(s), lawsuit(s), or other proceeding(s) for which movant seeks relief from the automatic stay, including the relevant case number and court information, (iii) the amount of the claim(s) and the asserted causes of action, (iv) a brief description of the status of the underlying claim(s), lawsuit(s), or proceeding(s), and (v) cause as to why the stay should be lifted.

3. If (i) the Debtors disagree with the movant's request for relief from the automatic stay and/or (ii) the Lift of Stay Notice Period expires without the parties reaching an agreement governing the scope of the relief from the automatic stay, then the movant may file a Stay Relief Motion pursuant to Case Management Procedures. Such Stay Relief Motion must include a certification that the movant has met and conferred with the Debtors regarding the requested relief.

4. Movant, Susecíon Sastre Wirshing, in compliance with the above mentioned Order Further Amending Case Management Procedures, submits an unsworn statement under penalty of perjury certifying the undersigned counsel has taken the necessary steps to confer and/or meet with Debtor's counsel and no agreement was reached. See Exhibit I.

**I. INTRODUCTION**

4. On July 2, 2017, Debtor, Puerto Rico Electric Power Authority (hereinafter "PREPA") by its representative and pursuant to section 315 of the Puerto Rico Oversight, Management, and Economic Stability Act (hereinafter "PROMESA"), the Financial Oversight and Management

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

Board for Puerto Rico filed a voluntary petition in the United States District Court for the District of Puerto Rico under Title III of PROMESA seeking relief from creditors.

5. PREPA has an eminent domain case pending final disposition at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain, against creditor, Sucesión Sastre Wirshing (hereinafter "the Estate"), *Puerto Rico Electric Power Authority v. Sucesión Sastre Wirshing, et al*, civil case no. KEF2004-1226; and Sucesión Sastre Wirshing has an inverse condemnation suit against PREPA, *Miguel Pedro Sastre Wirshing, et al v. Puerto Rico Electric Power Authority, et al*, civil case number KAC2011-0384, pending final disposition at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain. The cases were consolidated and on both cases on July 14, 2017, PREPA filed a motion at the state court requesting the automatic stay of the proceedings pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA. Dated August 8, 2017, on *Puerto Rico Electric Power Authority v. Sucesión Sastre Wirshing, et al*, and September 11, 2017, on *Miguel Pedro Sastre Wirshing, et al v. Puerto Rico Electric Power Authority, et al*, the state court issued an administrative judgment staying the proceedings.

## II. BACKGROUND

6. Dated November 17, 2004, PREPA filed a petition of eminent domain against the Estate at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain, civil case no. KEF2004-1226. The property consists of certain piece of land with an area of 224.5022 square meters located at Jayuya Arriba ward in the municipality of Jayuya, Puerto Rico, segregated from a larger rural property owned by the Estate at the time of

Case:17-03283-LTS Doc#:2962 Filed:04/26/18 Entered:04/26/18 16:07:43 Desc: Main
Document Page 4 of 13

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

the taking. PREPA estimated the just compensation to be $10,000.00, deposited the amount with court and that amount was never withdrawn by the parties with interest.

On August 25, 2005, the parties with interest, the Estate, answered the petition of eminent domain. The amount of just compensation estimated by PREPA was not accepted and the Estate claimed compensation for the usufruct of the piece of land before the taking. PREPA had the usufruct of the piece of land before the taking and the right expired on October 6, 1986. However, PREPA continued to occupy the property until the taking occurred. This fact was admitted by PREPA on a hearing held on November 28, 2006.

After multiple procedural issues and after PREPA refused to amend the Exhibit A of the petition to include claims made by the Estate in their answer to the petition, dated November 17, 2008, Mr. Miguel Pedro Sastre Wirshing, as receiver of the estates of Miguel Sastre Oliver and Margarita Wirshing Serrallés, filed an inverse condemnation suit at the Puerto Rico Court of First Instance in Utuado against PREPA, *Miguel Pedro Sastre Wirshing, et al v. Puerto Rico Electric Power Authority, et al*, civil case number LCD 2009-0003, claiming compensation for the use of their property, structures and infrastructure, among other things, from the date the usufruct right expired, October 6, 1986, until November 17, 2004, when the eminent domain petition was filed.

Dated May 20, 2009, PREPA filed an answer to the inverse condemnation suit filed by Mr. Miguel Pedro Sastre Wirshing as receiver of the estates of Miguel Sastre Oliver and Margarita Wirshing Serrallés. After various procedurals issues, discovery completed and pre-trial conference having been scheduled, PREPA requested the transfer and consolidation of the inverse condemnation suit, civil case number LCD 2009-0003, with the eminent domain case pending at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

eminent domain, civil case no. KEF2004-1226. On March 1st, 2011, the state court granted the transfer request and on June 17, 2011, the cases were consolidated. The now consolidated civil case number LCD 2009-0003 was assigned a new number: KAC2011-0384.

The court scheduled various pre-trial hearings that for different reasons never took place. Among the reasons being that PREPA never submitted their part of the Pre-Trial Conference Report and the resignation of PREPA's legal representatives.

Among the agreements reached by the expert witnesses of both parties, on a meeting held on April 1st, 2014, in compliance with a court order to try to reduce the controversies between the parties were the following:

a) The parties agreed that the value for the use of the property that is the subject of the eminent domain petition from October 6, 1986, to November 17, 2004, is ***$234,792.00***;

b) The value of the property that is the subject of the eminent domain petition is ***$33,675.33***;

c) The value of the structures, except for the communication towers, in the property that is the subject of the eminent domain petition is ***$80,138.87***;

d) PREPA recognized it does not have a blueprint "as built" of the construction of the communication towers and that the value given by the expert of the parties with interest is based on the blueprint of a similar one. PREPA, subject to review by the Design Department, made a transactional offer of ***$32,400.00*** for the value of the communication towers based on the blueprint provided by the parties with interest. The parties with interest would evaluate the offer and/or make a counteroffer.

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

On July 17, 2017, PREPA filed the automatic stay motion due to the filing of the voluntary petition under Title III of PROMESA.

### III. APPLICABLE LAW

7. Section 362(d)(1) of the Bankruptcy Code (11 U.S.C. §362(d)(1)) reads as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…

8. The courts examine numerous different factors, including those set forth in *In re Sonnax Indus.*, *907 F.2d 1280* to determine whether "cause" exists to grant relief from stay. The twelve factors adopted by the court in *Sonnax* are:

> (1) whether relief would result in partial or complete issue resolution; (2) lack of connection with or interference with bankruptcy case; (3) whether other proceeding involves debtor as fiduciary; (4) whether specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice interests of other creditors; (8) whether judgment claim arising from other action is subject to equitable subordination; (9) whether movant's success in other proceeding would result in a judicial lien avoidable by debtor; (10) interests of judicial economy and expeditious and economical resolution of litigation; (11) whether parties are ready for trial in other proceeding; (12) impact of stay on parties and balance of harms. *In re Sonnax Inds.*, *supra, at 1287* citing *In re Curtis*, 40 Bankr. 795, 799-800 (Bankr. D. Utah 1984).

Other courts have established that the *Curtis* moving party "need not prove a plurality of *Curtis* factors before it has shown cause existed for lifting the stay." *Goya Foods v. Unanue-*

*Casal (In re Unanue-Casal), 159 B.R. 90, 96 (1993).* Some courts have relied on only a few factors to determine that sufficient cause existed to lift the stay. See, e.g., *In re Unioil, 54 Bankr. 192, 194-195 (Bankr. D. Colo. 1985)* (court considered five factors such as resolution of the issues, lack of connection with the bankruptcy case, judicial economy and balance of hurt). See also *In re Highcrest Management Co., Inc., 30 Bankr. 776, 778-779 (Bankr. S.D. N.Y. 1983).* (court considered only the debtor's misconduct, without any *Curtis* factors).

The court in *Goya Foods v. Unanue-Casal (In re Unanue-Casal), supra, at 96* correctly stated that "the question of what is cause . . . is developed primarily by case law." In other words, the determination of cause is made on a case by case basis.

9. Article II, section 9, of the Constitution of the Commonwealth of Puerto Rico, P.R. Const. Art. II, § 9, states that **"private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."** (Emphasis added).

10. The Takings Clause of the Fifth Amendment mandates that **"private property [shall not] be taken for public use, without just compensation."** U.S. Const. amend. V. This amendment is made applicable to the states, and thus to municipalities, through the Fourteenth Amendment. U.S. Const. amend. XIV. *In re City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014)* citing *Dolan v. City of Tigard, 512 U.S. 374, 383, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994)*; *Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 122, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).*

11. In *First English Evangelical Lutheran v. Los Angeles*, 482 U.S. 304, 315-16 (1987), the Supreme Court of the United States stated regarding the Fifth Amendment:

Case:17-03283-LTS Doc#:2962 Filed:04/26/18 Entered:04/26/18 16:07:43 Desc: Main
Document Page 8 of 13

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

> This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." <u>Armstrong v. United States,</u> <u>364 U.S. 40</u>, 49 (1960).

> We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of "'the self-executing character of the constitutional provision with respect to compensation. . . .'" <u>United States v. Clarke</u>, 445 U.S. 253, 257 (1980), quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed.1972).

12. The Fourteenth Amendment of the United States Constitution provides that ***"nor shall any State deprive any person of life, liberty, or property, without due process of law."*** (Emphasis added). U.S. Const. amend. XIV. The limitations of the Fifth Amendment also apply, through the Due Process Clause of the Fourteenth Amendment, to takings by state governments and their subdivisions. See, e.g., <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003 (1992). Consequently, the Fifth Amendment is applicable to municipal debtors, and a municipal debtor may not take property without just compensation.

13. The Supreme Court of the United States has addressed the takings issue in the context of bankruptcy on several occasions, holding each time that the bankruptcy power is limited by the Fifth Amendment. See <u>United States v.Security Indus. Bank</u>, 459 U.S. 70, 75, 78 (1982<u>)</u>; <u>Wright v. Vinton Branch of Mtn. Trust Bank</u>, 300 U.S. 440, 456-58 (1937); <u>Louisville Joint Stock Land Bank v. Radford</u>, 295 U.S. 555, 589 (1935). The protections afforded by the Fifth Amendment are not abrogated by the Bankruptcy Code. The legislative history of the Bankruptcy Code indicates that the drafters of the Bankruptcy Code considered the Fifth Amendment to be a limitation upon the impairment of property rights in bankruptcy, and current

bankruptcy law gives great deference to property rights. Julia Patterson Forrester, Bankruptcy Takings, 51 Fla. L. Rev. 851, 863 (Dec. 1999).

### IV. DISCUSSION AND ARGUMENT

14. In the case at hand, the Estate submits that the automatic stay should be modified to allow the state court proceedings to continue to determine the amount of damages caused by the taking.

Of the twelve factors adopted by the court in *Sonnax* to determine if cause exists to grant relief from stay at least six weigh in favor of the Estate.

First, whether relief would result in partial or complete issue resolution and second, whether specialized tribunal with necessary expertise has been established to hear cause of action. The Estate has a state eminent domain case pending final disposition at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain, against PREPA in which certain agreements had been reached by the expert witnesses regarding the compensation to be paid for the taking and for the use of the property, the structures and infrastructure for a certain period of time before the taking occurred (between October 6, 1986, when a right to usufruct expired, and November 17, 2004, when the eminent domain petition was filed). The agreements reached by the expert witnesses were never ratified by PREPA. The discovery has been completed, the case is ready for a pre-trial conference and eventually for the trial.

Third, lack of connection with or interference with the bankruptcy case. The resolution of the consolidated cases pending at the state court will not interfere with the Title III case since there is no relationship between the issues and/or controversies. On June 10th, 2017 Sucesión Pastor Mandry Mercado, represented by the undersigned counsel, requested a relief from

9

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

automatic stay for an inverse condemnation case stayed by the Commonwealth of Puerto Rico (hereinafter "Debtor") pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA, were the only issue pending was the determination of just compensation (docket no. 305). Debtor opposed the request from relief from stay and the Court lifted the stay to allow the litigation to proceed to a determination of damages *prior* to the entry of judgment (Memorandum Order, docket no. 600). Moreover, the Court stated that "allowing the Litigation to proceed would not interfere with the Title III case." (Memorandum Order, page 3, ¶2).

Fourth, whether litigation in another forum would prejudice interests of other creditors. The litigation between PREPA and the Estate at the state courtroom with expertise in eminent domain has no direct or indirect effect on any of PREPA's creditors.

Fifth, the interests of judicial economy and expeditious and economical resolution of litigation. PREPA's Legal Division would be responsible for handling the litigation at the state court. Thus, the only litigation expense will be for PREPA to hire an appraiser as expert witness to determine the amount of just compensation for the piece of land taken, and for the use of the taken piece of land, its structures and infrastructure during certain period of time before the taking occurred. In the alternative, removing the case from the state court to this forum will be in detriment to the Estate and PREPA since the costs of litigation will be very burdensome for both parties, e.g., translation costs. The court in <u>In re Saunders, 103 Bankr. 298, 299 (B.C.N.D. Fl. 1989)</u> allowed the stay to be lifted on the state proceedings that had begun almost two years before the filing of the bankruptcy petition and also found that that judicial economy was served because the court "could perceive no rationale for curtailing" the efforts of two years in court only for the court to retrace the same path. In the present case, the parties have been litigating in

10

Case:17-03283-LTS Doc#:2962 Filed:04/26/18 Entered:04/26/18 16:07:43 Desc: Main
Document Page 11 of 13

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

state court for almost fourteen years. Concluding the litigation at the state court will cause no prejudice to PREPA.

Sixth, the impact of stay on parties and balance of harms. The Fifth Amendment and the Fourteenth Amendment of the United States Constitution and Article II, Section 9, of the Constitution of the Commonwealth of Puerto Rico provide that private property shall not be taken for public use without just compensation. The continuance of the stay will be detrimental to the Estate who will be deprived of its constitutional right to obtain a determination of damages for the taking of their property. Whereas, PREPA will suffer no harm if the stay is lifted.

### V. CONCLUSION

15. The Estate has established with substantial arguments there is cause for the lifting of the automatic stay. Modifying the stay to allow the state court to determine the amount of just compensation for the piece of land taken, for the use of the taken piece of land, its structures and infrastructure during certain period of time before the taking occurred promotes the judicial economy and expeditious and economical resolution of the litigation. The Estate would then have a certain and allowable claim to file, facilitating PREPA the formulation of a confirmable plan and its eventual reorganization.

WHEREFORE, it is respectfully prayed that the Estate be granted relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) as to the PREPA, and to the estate, to continue the proceedings at the state court civil cases no. KEF2004-1226 and KAC2011-0384 in order to determine the amount of just compensation for the taking, the use of the taken piece of land, its structures and infrastructure during certain period of time before the taking occurred, with such other and further relief as this Court deems just and proper.

Motion for Relief From Stay
*Puerto Rico Electric Power Authority v. Sucesión Miguel Sastre Wirshing, et al*
KEF2004-1226 and KAC2011-0384

**CERTIFICATE**: I hereby certify that pursuant to Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as amended by Order Further Amending Case Management Procedures (docket no. 1512), and subject to Paragraphs III. F and III.T, at least fifteen (15) business days prior to filing the present motion for relief from stay to continue a prepetition ordinary course civil action against HTA, the movant, Sucesión Sastre Wirshing, contacted the counsel for the Oversight Board and AFAA by electronic-mail to advise them of the movant's intent to seek relief from the automatic stay and no agreement was reached.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 26th of April, 2018.

/s/María E. Vicéns Rivera
MARÍA E. VICÉNS RIVERA
USDC- PR 226711
9140 MARINA ST., SUITE 801
PONCE, PUERTO RICO 00717
TEL. / FAX: (787) 259-1999
E-mail: mevicens@yahoo.com

**UNSWORN STATEMENT UNDER PENALTY OF PERJURY**

Comes now, MARÍA E. VICÉNS RIVERA as legal representative of Sucesión Sastre Wirshing, under penalty of perjury and very respectfully declares that the foregoing is true and correct:

1. On March 14, 2018, I sent an email to Herman Bauer, Esq., Ubaldo Fernández, Esq., and Kevin Finger, Esq. notifying the Lift Stay Notice regarding *Puerto Rico Electric Power Authority v. Sucesión Sastre Wirshing, et al*, civil case no. KEF2004-1226; and Sucesión Sastre Wirshing's inverse condemnation suit against PREPA, *Miguel Pedro Sastre Wirshing, et al v. Puerto Rico Electric Power Authority, et al*, civil case number KAC2011-0384, pending final disposition at the Puerto Rico Court of First Instance in San Juan, courtroom with expertise in eminent domain.

2. On April 5, 2018, I received a call from attorney Finger regarding another Lift Stay Notice pending and mentioned the fact that the Lift Stay Notice of Sucesión Sastre Wirshing was also pending, with the fifteen business days expiring on April 6, 2018.

2. On April 19, 2018, a second email was sent to counsels and no answer was received.

3. On April 23, 2018, a call was placed to Katiushka Bolaños, Esq., to ask about the status of the Lift Stay Notice and she was not available at the moment.

5. On April 24, 2018, an email was sent to attorney Bolaños in order to find out if a stipulation would be signed. Her answer was she had not received an approval from AAFAF yet.

In Ponce, Puerto Rico, this 26th of April, 2018.

*[signature]*

**MARÍA E. VICÉNS RIVERA**