**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br>TITLE III<br>Case No. 17 BK 3283-LTS |
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTOHORITY<br><br>Debtor | TITLE III<br>No. 17 BK 4780-LTS<br><br>Court Filing Relates Only to PREPA and Shall only be Filed Case No. 17- BK-4780 (LTS) and Main Case 17- BK-3283 (LTS) |

**REPLY TO PREPA'S OBJECTIONS TO MOTION FOR RELIEF OF STAY**

TO THE HONORABLE COURT:

**COMES** NOW Master Link Corporation ("Movant" or "ML"), through the undersigned counsel and very respectfully states and prays:

1. On April 6, 2018, Movant filed a Motion for Relief of Stay requesting this Court to modify the stay imposed by Section 362 of the Bankruptcy Code so that it may continue the Commonwealth Court litigation, provided that it will not execute against any assets of the estate, without further order of this Court. Dkt. 2850.

2. In attention to the Motion for Relief of Stay, on that same date, this Honorable Court entered an "Order Scheduling Briefing of Motion for Relief from Stay", setting, among other things, the deadlines for the filing of opposition and reply papers. Dkt. 2853.

3. On April 20, 2018, PREPA filed Objection to Master Link Corporation's Motion for Relief of Stay. Dkt. 2935. On its Opposition, PREPA asserted that ML has failed to show that "cause" exists to lift or modify the automatic stay and that "…ML has failed to show that it will suffer harm should the stay remain and lifting the stay is not in the public interest." Page 3.

4. ML respectfully sustains that PREPA's arguments lack merit and candor.This Honorable Court should lift or modify the stay of ML's state action inasmuch it is the **only** vehicle and remedy that will allow for ML to avoid and redress the irreparable harm being caused by PREPA. ML has demonstrated cause to permit the liquidation of a claim in a different court in a pending action (*In re Murray Industries, Inc.*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990) *In re Anton*, 145 B.R. 767, 769 (Bankr. E.D.N.Y. 1992).

***ML's Irreparable Harm from Execution of its Performance Bond***

5. First of all, it should be outlined that PREPA is not the only organization or entity in the jurisdiction of the Commonwealth of Puerto Rico which is dealing and addressing the aftermath of the passing of the hurricanes. ML as many subcontractors of PREPA are a vital piece of the puzzle in the recovery process, which in many instances are the first in line and key players even in the operation of PREPA itself. As such, efforts of subcontractors of PREPA to protect their business continuity and avoid hardship to their going concern as an enterprise, should not be undermined by PREPA, even less on unsupported arguments of mere convenience.

6. Movant states that caution should be exercised in validating generalized arguments aimed to convince this Court that (1) PREPA is entitled to a higher protection for being participating in the recuperation of the island; (2) that any State Court litigation aside from this bankruptcy proceeding is a waste of resources and; (3) that other parties, creditors or

subcontractor are doomed and unable to seek to avoid and judicially overturn wrongful actions/determination by PREPA which would otherwise seriously thwart their going concern as operational entities.

7. PREPA is not the only entity which has to endure a fragile economy and with limited resources and that would be benefited from an avoidance of litigation.

8. It is reproachable that PREPA attempts to dismiss and undermine ML's rights and interest to seek a judicial ruling by the State Court in order to avoid future hardship for the wrongful actions of PREPA.

9. As has been stated, one of the main issues and legal controversies pending at the State Court is that ML seeks for the State Court to adjudicate that (1) PREPA's termination of the contract and notice of default is null and void; (2) For the request to execute the performance bond to be declared null and void.

10. If ML is not allowed to seek the nullification of PREPA's notice of default, ML is subject to substantial claims from the surety; would be liable for any incremented cost required to complete any pending work.

11. PREPA is misleading the court since, on October 31, 2014, it requested MAPFRE PRAICO Insurance Company to execute ML's performance bond. See, **Exhibit A**. According to PREPA, on October 7, 2014, it notified ML its **alleged** default of the contract and terminated it. Hence, by its own admissions, PREPA did not comply with Article 24.3.1 of the Contract, which states:

> 24.3.1 Termination for Contractor Default
>
> **PREPA may terminate this Contract if Contractor defaults in its performance of any material obligation under this Contract, and**

> **Contractor does not cure such default in performance within a period of thirty (30) Calendar Days after Contractor's receipt of such written notice of default from PREPA, unless such default is not reasonably capable of being cured within thirty (30) days, in which case such cure period shall be extended as reasonably necessary.** Events of default under this Contract include but are not limited to: (i) Contractor's failure to complete the Work within the Approved Schedule; (ii) Contractor is negligent in the performance of its obligations; (iii) Contractor persistently disregard laws, ordinances or the commercially, reasonable instructions of the Engineer; (iv) Contractor fails to pay liquidated damages as required hereunder and (v) Contractor's certification under Article 6, Certificate of Eligibility, is not correct, in whole or in part.
>
> …
>
> **In the event of an uncured Contractor default under this Article 24.3.1, PREPA may, after written notice to Contractor, terminate this Contract**…"

12. After PREPA's request to execute Movant's performance bond, MAPFRE has been evaluating whether it would request a third party to conclude the outstanding work under the Contract and then file a suit against Movant for all the amounts spent to that effect. MAPFRE is even considering performing jobs that were not part of the contract between PREPA and ML, but that should have been included in an amendment to the contract, in spite of ML's objections. That means that MAPFRE has not disregarded said option. **However, if PREPA agrees to voluntarily desist from its request to MAPFRE to execute ML's performance bond and waving any rights under said bond, then ML's request would turn moot and it would have no other recourse, but to wait for this court to make a decision as to the amount of money it could be entitled within the same class of creditors**. ML respectfully requests that this Court order PREPA to express its position regarding this option.

13. It should be kept in mind that if ML is successful in nullifying PREPA's unwarranted notice of default, (1) PREPA would not be able to execute the performance bond

and the surety won't be able to collect on ML substantial amounts; (2) upon determination that ML didn't defaulted, PREPA's current suspension of ML from the suppliers registry would be reversed; (3) the ruling of ML's compliance would implicate that PREPA would have no ownership in the funds retained by PREPA.

14. Accordingly, ML interest in pursuing its cause of action in the State Court is distinguishable and not limited only to fixing the amount of a potential claim. It is paramount of ML to redress the harms being done by PREPA's unwarranted actions; protect itself from claims of a third party (surety) and be able to continue to serve as a contractor for PREPA.

15. It seems improper that PREPA should be able to shield itself behind generalized arguments of convenience, being legally allowed to continue to complete the project at the expense and bond of ML, and not allow ML to question and seek the nullification upon which PREPA is deemed empowered.

16. In the contingency that PREPA and ML are not able to reach an agreement to conclude the contracted work and the change orders that should had been included in an amendment to contract and provide electric power to Culebra, this Court should still lift or modify the stay because ML is risking irreparable harm from execution of its performance bond. PREPA claims that ML execution of the bond "has not yet occurred and could occur regardless of the resumption of litigation." Dkt. 2935, page 9 ¶2.

***Other Factors***

17. ML's respectful opinion is that PREPA failed to effectively oppose its showing of cause to lift the automatic stay with respect to its cause of action and remedies sought in its State Action.

18. **First**, PREPA was unable to establish a significant prejudice to the bankruptcy estate as a result of the continuation of the State Action, inasmuch as ML would not take any steps to execute any judgment against assets of the estate.

19. **Second**, the potential prejudice or hardship to ML if the automatic stay is not lifted by this Honorable Court considerably outweighs any potential hardship to PREPA. As previously stated, the bond company is considering concluding the outstanding work under the Contract, and even performing jobs that were not part of scope of work under the contract, but that it should have been included in an amendment to the contract, and then file a suit against Movant for all the amounts spent to that effect. This severally jeopardizes the going concern of ML and its ability to continue as a subcontractor of PREPA.

20. **Third**, ML has a great probability of prevailing on the merits on its state court action, since the delays in Culebra's project were not attributable to ML and PREPA breached its duty to provide ML the 30 days notice to cure whatever default PREPA was claiming against ML, so its termination was null and void.

21. PREPA claims, by citing *In re Tuab*, 413 B.R. 55, 62, that ML's argument that the relief would result in complete or partial resolution of the issues is mistaken since"[t]he first Sonnax factor…focuses on whether allowing the litigation to proceed would expeditiously resolve issues relevant to the bankruptcy case." Dkt. 2935, page 6. However, not only will the issues between ML and PREPA, which are object of the State Action, be resolved through the

lifting of the automatic stay, but the conclusion of the case could also resolve the question of quantification of PREPA's financial liability to Movant, while the Title III stay would continue to apply in all other respects to the prepetition action including, but not limited to, the execution and enforcement of any judgment for damages and provisional remedies.

22. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343–44 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6300. See also S.Rep. No. 95–989, 95th Cong., 2d Sess. 52 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5838. In re Danzik, 549 B.R. 804, 807 (Bankr. D. Wyo. 2016)

23. As to the factor of whether "that tribunal has expertise to hear such cases", PREPA argues that "the ML Action and the Court of First Instance do not qualify—it is a contractual dispute being litigated in a state court of general jurisdiction." Dkt. 2935, page 7. ML's respectful opinion is that, even though its state action mostly entails the interpretation of the law and the applicable case law, the most expeditious and economical process for the parties leads to the resolution of the State Action before the local court. Specially, since the alternative option would entail the litigation of such matters before this Honorable Court, which would be tantamount to involving this Honorable Court in matters that require the application of local laws, concepts and its interpretative local case law. In addition, and as it has been repeatedly noted by the Honorable Bankruptcy Court throughout its case law, "[t]he legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another forum: "It will

often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *In re Consol. Distribs.*, 2013 Bankr. LEXIS 3101, citing H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code & Admin. News 1978, pp. 5787, 5297. [Emphasis ours]. Therefore, this factor favors lifting the automatic stay and for ML to continue with its State Action before the local court.

***Public Interest***

24. After a review of PREPA's opposition to the modification of the automatic stay, and comparing the averments there stated with the actual behavior of this entity, it is paramount to shed some light and details of the project in question inasmuch they directly contradict all arguments which have been posed to this Court by PREPA.

25. Within their opposition, PREPA reiterates in numerous occasions as the main argument for their opposition, that the deem necessary to avoid waste of valuable resources. However, their real actions are totally contradictory to such averments.

26. PREPA's arguments regarding how the public interest would be affected if ML's request for lift is granted constitutes a sheer example of some of PREPA's catastrophic financial decisions that has put it where it is right now. According to PREPA, the Commonwealth, PREPA, FEMA, the Army Corps of Engineers, and many other parties continue to work diligently to restore and repair the Island's shattered electrical system, which includes the islands of Culebra and Vieques, which "due to restoration difficulties in these areas", PREPA has issued

a Request for Proposal **(RFP 79057)** according to its approved and legal processes for solutions for providing energy to Culebra and Vieques." Dkt. 2935, at page 11.

27. ML's project at the Municipality of Culebra's Power Station facilities with capacity to generate six (6) megawatts is at approximately 95% of completion and, if ML is allowed to finalize it, would supply electric power to Culebra and, the power in excess, could partially supply Vieques. **Concluding the approximately 5% left from ML's executed contract would cost PREPA approximately $175,000.00. Said amount does not include the change orders discussed and verbally approved by PREPA and ML, which should had been included in an amendment to the contract. Notwithstanding, based on the change orders discussed and verbally approved by the parties, ML ordered and bought all the materials to perform the additional work that was going to be included in an amendment to the contract. Therefore, if PREPA and ML are able to reach an agreement, ML could conclude the whole project on or before August 31, 2018.**

28. **On the contrary, RFP 79057's whole process and construction could take more than one (1) year (considering, among other factors, the period of time until PREPA's decision is final and the manufacturing time for the generators, motors, transformers and necessary equipment), plus an undetermined amount of money**. For the length of time this process could take, see PREPA's acknowledgement of the time that could take just the completion of installation of the units in Culebra in Section 1.2 of RFP-79057:

> "**On Culebra**, PREPA had begun installation of 3 permanent 2 MW units, however, construction was never completed. **Efforts are currently underway to complete installation of these units. Commissioning is expected to take place in approximately 6 months to 9 months.**" See https://new.reorgresearch.com/data/documents/20180416/5ad515301d2e6 page 2. (Emphasis added).

29. Despite the aforementioned, PREPA represents to the Court that they are taking care of the situation and there is nothing ML can do to help restoring the electric power in Culebra and Vieques, by claiming that restoration "…should not be dictated by financially-motivated third parties." Dkt. 2935, page 11. In the meantime, FEMA and PREPA are spending approximately $81,000.00 per month for three (3) leased generators that are currently supplying power to Culebra. Regarding Culebra's situation and how PREPA squanders its resources while it limits energy options to the Island, see Istra Pacheco, Centro de Periodismo Investigativo, "*Despilfarran dinero y limitan opciones de energía en Culebra*", Sin Comillas (2018), http://sincomillas.com/despilfarran-dinero-y-limitan-opciones-de-energia-en-culebra/#noredirect

30. PREPA seems to be so preoccupied by the creditors when it states that "lifting of stay would prejudice the interests of other creditors" (pp. 11-12); and, that "PREPA would be forced to take measures to minimize litigation costs in order to conserve its resources for its rebuilding efforts of the Island's electrical grid. Such gamesmanship not only interferes with PREPA's Title III case but also prejudices the interest of its creditors…" (p. 12). We should wonder, what would PREPA's creditors think about this situation in which PREPA rather spend more money to try to solve an issue, instead of letting ML concluding what started, when there is a less expensive and more expedited solution?

31. Accordingly, it seems offensive and unwarranted for PREPA to use a budget constriction slogan to oppose the request for modification of the automatic stay filed by ML, when actually PREPA squanders its resources even in the particular project which relates to ML.

32. Movant requests the Court an order instructing PREPA to try to solve the parties' differences and help restore the power to the island of Culebra at a reasonable price and avoid

depleting even more PREPA and the public's coffers. If the parties are not able to reach an agreement within a short period of time (15 days), then the Court would make a decision regarding ML's request to lift or modify the stay.

**WHEREFORE**: Movant ML respectfully requests from this Honorable Court a modification of the stay imposed by Section 362 of the Bankruptcy Code to allow PREPA and ML to exhaust the possibility of reaching an agreement for ML's conclusion of the whole Culebra project within a short period of time; and, if said option is unsuccessful, allow ML to continue the Commonwealth Court litigation of all issues which are governed by Puerto Rico law and avoid irreparable harm by the execution of its performance bond provided, however, that Movant will not execute against any assets of the estate, without further order of this Court.

**RESPECTFULLY SUBMITTED**.

**I HEREBY CERTIFY** that on this date, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

In San Juan, Puerto Rico, this April 27th, 2018.

*Lugo Mender Group, LLC*
Attorney for Debtor
100 Carr. 165 Suite 501
Guaynabo, P.R. 00968-8052
Tel.: (787) 707-0404
Fax: (787) 707-0412

*/S/ Alexis A. Betancourt Vincenty*
Alexis A. Betancourt Vincenty
USDC-PR 301304
a_betancourt@lugomender.com

**S/Henry Vázquez Irizarry**
USDC No. 205011
Bufete Vázquez Irizarry, CSP
Urb. Villa Fontana Park
Calle Parque Luis M. Rivera 5 HH6
Carolina, PR 00983
Tel. (787) 724-7514 / 787-645-2241
Fax (888) 518-1318
hvilaw@gmail.com