Hearing Date: May 21, 2018 (1:30 p.m. AST)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>                     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>                     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH FEBRUARY 26, 2018 ORDER AND FOR ENTRY OF A PROTECTIVE ORDER OF AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., THE MUTUAL FUND GROUP, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Movants the Ad Hoc Group of General Obligation Bondholders,[2] Ambac Assurance Corporation, Assured Guaranty Corp. and Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation submit this reply in support of their motion to compel Respondents the Commonwealth of Puerto Rico, the Puerto Rico Fiscal Agency and Financial Advisory Authority, and the Financial Oversight and Management Board for Puerto Rico to comply with the Court's February 26, 2018 Order (Dkt. No. 2590) addressing the production of Fiscal Plan Development Materials.

## **INTRODUCTION**

Respondents' opposition fails to address—let alone refute—the central contention in Movants' motion to compel: that the Court has ordered the Fiscal Plan Development Materials to be produced pursuant to Rule 2004, as discovery. The Court's February 26 Order held that the Fiscal Plan Development Materials are discoverable, yet Respondents steadfastly refuse to produce those materials or deem them produced pursuant to Rule 2004 and a Protective Order. They insist on keeping these documents in the Intralinks Data Room, which Respondents would have the Court believe is the same as producing materials in discovery. That is manifestly incorrect. As explained in Movants' motion, the discovery process is meaningfully different than Respondents' practice of posting documents to the "Data Room"—which is a set of electronic folders that Respondents unilaterally created long ago to hold documents exchanged in a mediation process. All documents posted to the Data Room are subject to limitations set by a

---

[2] Members of the Ad Hoc Group of General Obligation Bondholders file this Motion exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

1

pre-Title III NDA and a Mediation Agreement ("Data Room Restrictions").³ Those restrictions differ from the terms of a protective order in two important ways.

*First*, materials subject to the Data Room Restrictions are *automatically* treated as confidential, with no requirement that Respondents make a good faith judgment that the documents merit designation as "confidential material" as defined by the parties' proposed protective orders.⁴ Nor do the NDA and Mediation Agreement provide any mechanism for Movants to challenge the Respondents' assertion of confidentiality with respect to any document.

*Second*, the Data Room Restrictions impose limitations that go way beyond the confidentiality requirements of a protective order. Unlike a protective order, the Data Room Restrictions prohibit a party from using documents *in the litigation*, whether in discovery or in court. There is no conceivable basis for arguing (and Respondents do not even try) that such use restrictions are necessary here. By contrast, the discovery process is subject to the supervision and management of the Court, meaning that the Court has the power to direct what documents are produced, how they are used, and whether they are properly designated as confidential. As the Court has already held, that process is warranted here. And rightly so: Puerto Rico needs to

---

³ Unless otherwise specified, capitalized terms are given the same meaning defined in the Motion to Compel, and references to "Dkt. No." are to filings in the Commonwealth Title III case, No. 17 BK 3283-LTS.

⁴ Both Movants' and Respondents' proposed protective orders provide that a document merits confidential treatment only if the producing party "considers [it] in good faith to contain commercial, financial, trade secret, research and development, or personal information of a proprietary nature that is not known to, or has not been made available to, the public or other information the disclosure of which, in the good faith judgment of the Producing Party, would be detrimental to the conduct of the Producing Party's business or official functions." Movants' Ex. A at 2-3 (Definition 2); Respondents' Ex. A at 2 (same).

2

restructure promptly,[5] and transparency is essential to ensure that any plan of adjustment is fair and equitable to all stakeholders. Respondents should be compelled to comply, forthwith, with the Court's February 26 Order that "Fiscal Plan Development Materials are discoverable under Rule 2004." Dkt. No. 2590 at 7.

Respondents' opposition also misdirects the eye with respect to Movants' proposed protective order. Movants are not trying to strip confidentiality from every document Respondents have provided. Dkt. No. 2949 ("Opp.") at 2. Rather, Movants' proposed order provides a process whereby, once a document is produced or deemed produced pursuant to Rule 2004 (as all Fiscal Plan Development Materials should be), Respondents must make an affirmative, good faith assessment of whether that document meets the protective order's definition of confidentiality. Respondents have made this assessment in adversary proceedings involving much larger document productions, and do not even argue that doing so here would be burdensome.

## ARGUMENT

**I.     The Fiscal Plan Development Materials Should Be Produced Pursuant to Rule 2004**

The February 26 Order holds that the Fiscal Plan Development Materials are discoverable. Dkt. No. 2590 at 2, 7, 9, 11. Respondents do not even contend that they have produced these materials in discovery, pursuant to Rule 2004. Instead, they argue that they have complied with the February 26 Order because they have agreed to produce an entirely different set of materials. They also feign compliance with the February 26 Order by maintaining that posting documents to the Data Room is the same as producing the documents pursuant to Rule

---

[5] *Cf.* April 2018 Fiscal Plan at 1-2, available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/5adde0792e4e3.pdf.

3

2004. And they maintain that good cause exists for continuing to subject the Fiscal Plan Development Materials to the onerous Data Room Restrictions. They are wrong on every front.

*First*, Respondents claim to have complied with the February 26 Order by identifying documents in the data room that contain factual information or data. Opp. 5-7. But Respondents were obligated to do that by the Court's *earlier* December 15 Order (Dkt. No. 2033) and the parties' Joint Report dated December 22, 2017 (Dkt. No. 2154). That Report provided that "subject to the entry of a protective order, data or factual information produced in the data room will be produced or deemed produced pursuant to the Rule 2004 Requests and the December 15 Order." Dkt. No. 2154 § I.a. And it stated that "Respondents will provide Movants with a schedule of materials in the data room that they in good faith determine to be data or factual information." *Id.* Respondents finally provided that schedule in their March 1, 2018 correspondence to Movants. See Dkt. No. 2865 Ex. E.

The February 26 Order requires Respondents to follow this *same* process with respect to Fiscal Plan Development Materials. See Dkt. No. 2590 at 11. Respondents have not followed this process. Instead, they pat themselves on the back for agreeing to meet and confer about whether Respondents will agree to produce the Fiscal Plan Development Materials in discovery, pursuant to a protective order. Opp. 6. But that is not Respondents' decision to make. By directing the parties to follow the process outlined in Section I.a of the Joint Report, the Court has held that the Fiscal Plan Development Materials "will be produced or deemed produced pursuant to the Rule 2004 Requests."

*Second*, Respondents act as if posting documents to the Data Room is the equivalent of producing them pursuant to Rule 2004. For the reasons we explain in our opening brief and above, it is not. Indeed, Respondents want to leverage their unilateral control over when and

4

where to place documents in the data room to shield from discovery the very documents the Court has ordered produced. Take, for example, the models and backup underlying the uncertified 2018 fiscal plans. Rather than produce them pursuant to Rule 2004, Respondents remarkably have designated them *as mediation materials*. And they have defended that designation to this Court, claiming that these "materials were provided in mediation only as a good faith attempt to continue ongoing confidential negotiations." Opp. 10. Respondents plainly do not want these documents ever used in discovery or shown to the Court, but that is not their choice to make. The Court has already held that these materials are discoverable. And only if Respondents, as the Court has ordered, produce these documents pursuant to Rule 2004 can the Court exercise supervision over what documents are produced, how they are designated, and how they are used. See Dkt. No. 2033 at 2 ("[T]here is a need in this Title III proceeding . . . for formal and controlled discovery related to the Commonwealth of Puerto Rico's financial condition.").

*Third*, wrenching out of context the Court's statement that Movants have not shown good cause for "immediate *use*" of the Fiscal Plan Development Materials, Respondents insist that the materials should remain subject to the Data Room Restrictions. Opp. 4 (quoting February 26 Order for proposition that "immediate use of the information . . . would require disclosure of many documents currently shared amongst the parties pursuant to protective orders and/or non-disclosure agreements, and that permitting Respondents to object to use of individual documents "may include the necessity of keeping a particular protective order in place") (quotation marks omitted); see also Opp. 9. But the statements on which Respondents rely do not extinguish Respondents' obligation to produce Fiscal Plan Development Materials pursuant to Rule 2004; indeed, that interpretation conflicts with the Order's findings that the materials are discoverable.

5

To the extent that the February 26 Order loosely uses the terms "protective order" and "non-disclosure agreements" interchangeably (see, *e.g.*, Dkt. No. 2590 at 11, referring to "protective orders and/or non-disclosure agreements"), we respectfully submit that the two are meaningfully different, in ways that are material to this motion and these proceedings. See *supra* 2-3; Dkt. No. 2865 at 4-5.

Nor are Respondents correct that Movants lack good cause to remove the Fiscal Plan Development Materials from the Data Room Restrictions. Respondents stretch the Court's observation that it is not yet time for *cross-examination* of experts (Dkt. No. 2590 at 11) to argue that Movants have no present need to show Fiscal Plan Development Materials to their *own* experts. Opp. 9-10. But it makes no sense to wait until the confirmation process for the parties to begin to meaningfully evaluate the financial condition of the debtor, including by reviewing Fiscal Plan Development Materials with potential testifying experts. Indeed, Respondents' proposal—which would require Movants to seek permission, on a document-by-document basis, to use materials in preparing their experts—would be utterly unworkable in practice. For starters, that proposal blinks reality by assuming that disputes between the parties will arise in a predictable and orderly fashion, leaving plenty of time for Movants to identify the need to use particular materials for particular purposes, confer with Respondents, and either obtain Respondents' consent or the Court's approval to use the documents for litigation purposes. In fact, disputes in these Title III cases have arisen—and are likely to continue to arise—with hardly any notice at all.

Consider, for instance, the Oversight Board's recent motion seeking approval of post-petition financing for the Puerto Rico Electric Power Authority ("PREPA"). *In re PREPA*, No. 17 BK 4780, Dkt. No. 549. In that motion, which initially sought approval of *$1.3 billion* in

6

priming secured financing, the Oversight Board requested an interim hearing just eleven days after filing, with a period of just five days for preparing and filing objections. *Id.*[6] There is no reason to assume that the Oversight Board will not continue to seek such consequential relief on similarly expedited timeframes. And, to state the obvious, this sort of expedited litigation leaves no time for the leisurely process Respondents envision. Instead, Movants need to have their experts fully prepared at all times, based on the latest available information, so that they are equipped to respond to new issues as they arise.

Respondents' proposal suffers from other practical flaws as well. Requiring Movants to inform Respondents about how they intend to prepare their experts will provide Movants with a window into protected work product and the mental impressions of Movants' attorneys. And, as we have explained (Dkt. No. 2865 at 8-9), it would prevent the principals for many of the Movants from participating fully in the direction of litigation efforts unless they become restricted and refrain from trading for the remainder of these Title III cases. Respondents' answer—that Movants should simply accept an inability to trade if they want to review *any* Fiscal Plan Development Materials—misses the point. Respondents' citation (Opp. 3, 10) relates to settlement negotiations, but that is not what is at issue here. What is being requested is information necessary to inform the Title III process itself. Moreover, as explained below, Respondents have already shown that they will indiscriminately require documents to be treated

---

[6]   Less than 3 weeks after the initial motion was filed, the Oversight Board reduced its funding request to $1 billion. *In re PREPA*, No. 14 BK 4780, Dkt. 713 Ex. A at 5. Judge Swain ultimately concluded that even that reduced amount was vastly overstated, and instead approved post-petition financing up to $300 million. *In re PREPA*, No. 14 BK 4780, Dkt. 754 at 233 (Feb. 15, 2018) (rejecting revised request for "failure to provide sufficient demonstration that the size of the proposed loan is appropriately tailored to PREPA's actual needs"). The example of the PREPA financing motion thus demonstrates our point that Respondents' financial projections cannot be taken at face value, and reinforces the need to provide creditors with timely and complete transparency into the financial condition of the Commonwealth and its instrumentalities.

as if they contain state secrets unless they are ordered to make good faith determination as to whether such documents merit confidential treatment under a protective order. Good cause manifestly exists to lift the Data Room Restrictions and require the Fiscal Plan Development Materials to be produced pursuant to Rule 2004 and a protective order, subject to Court supervision of Respondents' confidentiality designations.

II. **The Court Should Enter Respondents' Proposed Protective Order**

Movants' proposed protective order requires that Respondents take the exact same steps with respect to materials produced pursuant to Rule 2004 as they have with respect to the tens of thousands of documents already produced in adversary proceedings. Specifically, Movants' proposed draft requires that, with respect to materials already in the data room, Respondents ascertain which documents are fairly designated as confidential—*under the definition to which the parties have already agreed*—and identify any such documents within five days of entry of the order. See Dkt. No. 2865, Ex. A at 2-3 (Definition 2), 4-5 ¶ 8. With respect to materials produced at a later date, Respondents must make the same assessment and designate appropriate documents as confidential when they are produced. *Id.*[7] Given the small volume of documents at issue, this requirement is not burdensome. Indeed, Respondents do not claim that it is.

Attempting to avoid imposition of an order that requires no more of Respondents than what has been required of them in adversary proceedings, Respondents both overstate the efforts they have undertaken to date as well as the need for maintaining confidentiality with respect to Fiscal Plan Development Materials.

---

[7] Respondents are wrong when they say that Movants' proposed protective order "provides no mechanism for designating materials subsequently uploaded to the data room." Opp. 11. That mechanism is provided in the first sentence of paragraph 8, requiring a document to be designated confidential at the time of production.

8

As an initial matter, Respondents insist that "[t]he decision to share non-public documents solely through the Data Room reflects a determination that those materials warrant confidential treatment." Opp. 12. But the *only* way Respondents have provided documents to creditors (outside of formal discovery) is through the Data Room, which means that Respondents' claim that they have determined that *every* document in the Data Room that is not already public merits confidential treatment. That is hard to believe. Respondents' blanket assertion of confidentiality proves up Movants' argument that their proposed protective order is necessary to compel Respondents to make a good faith determination with respect to each produced document.

Equally troublesome are Respondents' explanations for why Fiscal Plan Development Materials should be confidential. Opp. 13. *First*, they cite to the deliberative process privilege standard. But that privilege has no applicability to the dispute at hand—the question is not whether Respondents can shield documents from disclosure altogether, but whether documents produced in discovery are properly designated as confidential. *Second*, they argue that some of these materials are third-party trade secrets or proprietary information. But even if that were the case, both parties' proposed protective orders allow such documents to be designated confidential. *Finally*, Respondents argue that the materials relating to the 2018 uncertified fiscal plans were provided only in connection with mediation. But that is only because Respondents unilaterally designated them as such, notwithstanding this Court's ruling that they are discoverable. The only way to ensure that Puerto Rico's restructuring is fair and equitable to *all* stakeholders is for Respondents to provide full transparency into the Commonwealth's financial condition, and yet the disclosure in this Title III process pales when compared to what should be

9

provided. Respondents must cease their indiscriminate use of confidentiality designations (and the mediation process) if this process is to move forward.

## **CONCLUSION**

The Court should compel Respondents to comply with the February 26, 2018 Order by deeming produced all Fiscal Plan Development Materials in the data room and producing any further Fiscal Plan Development Materials pursuant to Rule 2004. The Court also should enter the proposed protective order attached as Exhibit A to the Movants' Motion.

|  |  |
|---|---|
| Dated: April 30, 2018<br>San Juan, Puerto Rico | Respectfully submitted.<br><br>**JIMÉNEZ, GRAFFAM & LAUSELL**<br><br>By: /s/ J. Ramón Rivera Morales<br><br>J. Ramón Rivera Morales<br>   (USDC-PR No. 200701)<br>Andrés F. Picó Ramírez<br>   (USDC-PR No. 302114)<br>PO Box 366104<br>San Juan, PR 00936-6104<br>Telephone: (787) 767-1030<br>Email: rrivera@jgl.com<br>       apico@jgl.com |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**<br><br>By: /s/ Andrew N. Rosenberg<br>Andrew N. Rosenberg**<br>Kyle J. Kimpler**<br>Karen R. Zeituni**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Email: arosenberg@paulweiss.com<br>       kkimpler@paulweiss.com<br>       kzeituni@paulweiss.com | **ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**<br><br>By: /s/ Mark T. Stancil<br>Lawrence S. Robbins**<br>Mark T. Stancil**<br>Gary A. Orseck**<br>Kathryn S. Zecca**<br>Ariel N. Lavinbuk**<br>Donald Burke**<br>1801 K Street, NW<br>Washington, D.C. 20006<br>Telephone: (202) 775-4500<br>Email: lrobbins@robbinsrussell.com<br>       mstancil@robbinsrussell.com<br>       gorseck@robbinsrussell.com<br>       kzecca@robbinsrussell.com<br>       alavinbuk@robbinsrussell.com<br>       dburke@robbinsrussell.com |

*\*\* admitted pro hac vice*

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

        **FERRAIUOLI LLC**
          By: /s/ *Roberto Cámara-Fuertes*
          Roberto Cámara-Fuertes (USDC-PR No. 219002)
          Sonia Colón (USDC-PR No. 213809)
          221 Ponce de León Avenue, 5th Floor
          San Juan, PR 00917
          Telephone: (787) 766-7000
          Facsimile: (787) 766-7001
          Email: rcamara@ferraiuoli.com
                scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
          By: /s/ *Dennis F. Dunne*
          Dennis F. Dunne
          Andrew M. Leblanc
          Atara Miller
          Grant R. Mainland
          (admitted *pro hac vice*)
          28 Liberty Street
          New York, NY 10005
          Telephone: (212) 530-5770
          Facsimile: (212) 822-5770
          Email: ddunne@milbank.com
                aleblanc@milbank.com
                amiller@milbank.com
                gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

| | |
|---|---|
| **CASELLAS ALCOVER & BURGOS P.S.C.** | **CADWALADER, WICKERSHAM & TAFT LLP** |
| By: /s/ *Heriberto Burgos Pérez* <br> Heriberto Burgos Pérez <br> USDC-PR 204809 <br> Ricardo F. Casellas-Sánchez <br> USDC-PR 203114 <br> Diana Pérez-Seda <br> USDC-PR 232014 <br> P.O. Box 364924 <br> San Juan, PR 00936-4924 <br> Telephone: (787) 756-1400 <br> Facsimile: (787) 756-1401 <br> Email: hburgos@cabprlaw.com <br>  rcasellas@cabprlaw.com <br>  dperez@cabprlaw.com <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | By: /s/ *Howard R. Hawkins* <br> Howard R. Hawkins, Jr. * <br> Mark C. Ellenberg* <br> Ellen Halstead* <br> Thomas J. Curtin* <br> Casey J. Servais* <br> 200 Liberty Street <br> New York, NY 10281 <br> Telephone: (212) 504-6000 <br> Facsimile: (212) 406-6666 <br> Email: howard.hawkins@cwt.com <br>  mark.ellenberg@cwt.com <br>  ellen.halstead@cwt.com <br>  thomas.curtin@cwt.com <br>  casey.servais@cwt.com <br><br> * Admitted pro hac vice <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

13

| | |
|---|---|
| **TORO, COLÓN, MULLET, RIVERA& SIFRE, P.S.C.** | **KRAMER LEVIN NAFTALIS & FRANKEL LLP** |
| *s/ Manuel Fernandez-Bared* <br> MANUEL FERNÁNDEZ-BARED <br> USDC-PR No. 204,204 <br> E-mail: mfb@tcmrslaw.com | *s/ Gregory A. Horowitz* <br> THOMAS MOERS MAYER* <br> AMY CATON* <br> GREGORY A. HOROWITZ* <br> DOUGLAS BUCKLEY* <br> 1177 Avenue of the Americas <br> New York, New York 10036 <br> Tel.: (212) 715-9100 <br> Fax: (212) 715-8000 <br> Email: tmayer@kramerlevin.com <br> acaton@kramerlevin.com <br> ghorowitz@kramerlevin.com <br> dbuckley@kramerlevin.com <br> *(admitted *pro hac vice*) |
| *s/ Linette Figueroa-Torres* <br> LINETTE FIGUEROA-TORRES <br> USDC-PR No. 227,104 <br> E-mail: lft@tcmrslaw.com | |
| *s/ Jane Patricia Van Kirk* <br> JANE PATRICIA VAN KIRK <br> USDC-PR No. 220,510 <br> E-mail: jvankirk@tcmrslaw.com | |
| P.O. Box 195383 <br> San Juan, PR 00919-5383 <br> Tel.: (787) 751-8999 <br> Fax: (787) 763-7760 | *Counsel to the Mutual Fund Group* |
| *Counsel to the Mutual Fund Group* | |

14

  /s/ Eric Pérez-Ochoa (USDC-PR No. 206314)

Eric Pérez-Ochoa (USDC-PR No. 206314)
Luis Oliver-Fraticelli (USDC-PR No. 209204)
Alexandra Casellas-Cabrera (USDC-PR. No. 301010)
Lourdes Arroyo-Portela (USDC-PR No. 226501)

**ADSUAR MUÑOZ GOYCO SEDA & PÉREZ-OCHOA, PSC, P.S.C.**
208 Ponce de León Avenue, Suite 1600
San Juan, Puerto Rico 00936
Telephone: (787) 756-9000
Facsimile: (787) 756-9010
Email:  epo@amgprlaw.com
       loliver@amgprlaw.com
       acasellas@amgprlaw.com
       larroyo@amgprlaw.com

– and –

Marcia Goldstein
Jonathan Polkes
Gregory Silbert
Kelly DiBlasi
Jared Friedmann
Adam Bookman

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153

*Counsel to National Public Finance Guarantee Corporation*

15