UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

-----------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 2966**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM STAY FILED BY MITCHELL DE JESÚS SOTO

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

OBJECTION.................................................................................................................................. 3

    I.    MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY ..................................................................................................... 3

CONCLUSION............................................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
   217 F. Supp. 3d 508 (D.P.R. 2016) ................................................................................ 5, 6, 9

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
   369 B.R. 87 (D.P.R. 2007) ........................................................................................................ 5

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
   28 B.R. 324 (Bankr. S.D.N.Y. 1983) ..................................................................................... 11

*FCC v. NextWave Pers. Commc'ns Inc.*,
   537 U.S. 293 (2003) ................................................................................................................. 8

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
   05 Civ. 5704 (RPP), 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ....................... 10

*In re 234-6 W. 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997) ..................................................................................... 4

*In re BFW Liquidation, LLC*,
   No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) ...................... 8

*In re Breitburn Energy Partners LP*,
   No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017) ...................................... 6

*In re City of Stockton*,
   484 B.R. 372 (Bankr. E.D. Cal. 2012) ..................................................................................... 9

*In re Cummings*,
   221 B.R. 814 (Bankr. N.D. Ala. 1998) .................................................................................... 6

*In re Curt*is,
   40 Bankr. 795 (Bankr. D. Utah 1984) ...................................................................................... 3

*In re Gatke Corp.*,
   117 B.R. 406 (Bankr. N.D. Ind. 1989) ..................................................................................... 9

*In re Jefferson Cty.*,
   491 B.R. 277 (Bankr. N.D. Ala. 2013) .................................................................................... 4

*In re Motors Liquidation Co.*,
   No. 09-50026, 2010 WL 4630327 (S.D.N.Y. 2010) .............................................................. 11

*In re Murrin*,
   477 B.R. 99 (D. Minn. 2012) .................................................................................................... 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Nw. Airlines Corp.*,
 No. 05-17930 (ALG), 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13, 2006) .......................... 10

*In re Plumberex Specialty Prod., Inc.*,
 311 B.R. 551 (Bankr. C.D. Cal. 2004) ................................................................................. 11

*In re Residential Capital, LLC*,
 No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) ....................... 8, 10, 12, 13

*In re Taub*,
 413 B.R. 55 (Bankr. E.D.N.Y. 2009) ..................................................................................... 6

*In re Ulpiano Unanue-Casal*,
 159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ........................................ 3, 4, 6

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
 362 B.R. 49 (B.A.P. 1st Cir. 2007) ........................................................................................ 4

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
 474 U.S. 494 (1986) ................................................................................................................ 3

*Mitchell de Jesús Soto v. The Police of Puerto Rico*,
 USDCPR Case No. 3:17-cv-01979-ADC ............................................................................... 1

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
 537 B.R. 128 (Bankr. D.P.R. 2015) ........................................................................................ 4

*Peaje Invs. LLC v. Garcia-Padilla*,
 Nos. 16-2365 (FAB), 16-2384 (FAB), 16-2696 (FAB), 2016 U.S. Dist. LEXIS
 153711 (D.P.R. Nov. 2, 2016) ................................................................................................. 6

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
 980 F.2d 110 (2d Cir. 1992) ..................................................................................................... 8

*Soares v. Brockton Credit Union (In re Soares)*,
 107 F.3d 969 (1st Cir. 1997) ..................................................................................................... 3

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
 907 F.2d 1280 (2d Cir. 1990) ........................................................................................ 5, 12, 13

*Unisys Corp. v. Dataware Prods., Inc.*,
 848 F.2d 311 (1st Cir. 1988) ..................................................................................................... 4

**STATUTES**

11 U.S.C. § 362(a) .......................................................................................................................... 2, 3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 362(d) ................................................................................................................ 2

11 U.S.C. § 362(d)(1) ........................................................................................................... 4

11 U.S.C. § 922 .................................................................................................................... 9

48 U.S.C. § 2101 .................................................................................................................. 7

PROMESA § 301(a) .................................................................................................... 2, 3, 4

## OTHER AUTHORITIES

H.R. Rep. No. 95-595 (1977) ............................................................................................ 4, 7

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 2966] (the "Motion") filed by Mitchell de Jesús Soto (the "Movant"), a party in the case captioned *Mitchell de Jesús Soto v. The Police of Puerto Rico,* USDCPR Case No. 3:17-cv-01979-ADC (the "Lawsuit"), pending before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1. On July 19, 2017, Movant commenced the Lawsuit against the Commonwealth and the Police of Puerto Rico for events that allegedly occurred on or before the commencement of this Title III case on May 3, 2017. By the Lawsuit, Movant seeks damages allegedly suffered as consequence of the Commonwealth and the Police of Puerto Rico's alleged discrimination in the terms and conditions of his employment due to his condition of multiple sclerosis. The summons was served on September 15, 2017.

2. On November 8, 2017, the Commonwealth filled in the Lawsuit a *Notice of Automatic Stay and of Procedures for Filing Motions for Relief from the Automatic Stay in the Commonwealth of Puerto Rico's Title III Case* requesting that the District Court take notice of the automatic stay applicable to the case and the Amended Case Management Procedures.

3. Realizing that it had filed the Lawsuit to enforce alleged prepetition claims in violation of the automatic stay, on April 27, 2018, Movant filed the Motion seeking to lift the

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

automatic stay to proceed with the Lawsuit against the Commonwealth and the Police of Puerto Rico.[3]

4. After various extensions of time requested by Movant's counsel in order to inform the District Court about efforts to contact its client, on May 7, 2018, the District Court issued an order granting the Commonwealth's petition for a stay due to the commencement of the Title III case.

5. As further explained below, the Motion should be denied as Movant has failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). As a potential, prepetition, unsecured creditor, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his claims should not be resolved through the claims resolution process to be undertaken in the Title III cases.

6. The case is in a very preliminary stage, having been commenced after the Commonwealth filed its Title III petition. Notably, Movant states in the Motion that he intends to amend the complaint filed in the Lawsuit to "conform it to the appointed counsel's view of the legal issues involved and the appropriate legal strategy. . . . including but not limited to the assertion of additional claims . . . ." Motion at 2-3, ¶ 6. The Lawsuit is not ready for trial, as no answer or other responsive pleading has been filed, nor has the evidentiary process, pretrial hearing, the preparation and filing of the pretrial report, and all other ensuing hearings and filings, necessary for the underlying action to proceed to adjudication been completed. Further, Movant relies on conclusory statements to assert that cause exists to lift the automatic stay, while vaguely

---

[3] The Police of Puerto Rico is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

2

purporting to apply the *Sonnax* factors to the facts of the underlying action.[4]

7. Considering the procedural stage of the Lawsuit, the majority of the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying the Motion. Therefore, it is respectfully submitted that the Motion be denied.

**OBJECTION**

**I. MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY**

8. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

9. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection

---

[4] The Movant referred to the factors considered by the court in *In re Ulpiano Unanue-Casal*, 159 B.R. 90 (D.P.R. 1993), citing *In Re Curtis*, 40 Bankr. 795, 799-800 (Bankr. D. Utah 1984). The factors are the same twelve recognized in *Sonnax*.

3

(b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

10. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous

4

different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

11. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R.

5

at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

12. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Here, the *Sonnax* factors point squarely toward maintaining the automatic stay and against awarding the remedy Movant seeks.

13. **<u>*Sonnax* Factor 1</u>:** The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

14. Here, Movant has failed to show how allowing the Lawsuit to proceed would resolve any issues relevant to the Commonwealth's Title III case. Indeed, that is because lifting

6

the automatic stay would not resolve any issues relevant to the Commonwealth's Title III case.[5] Movant's claims, if any, can be resolved through the claims resolution process to be undertaken in the Title III cases. Notably, Movant states in the Motion that "Plaintiff's action lacks any connection with the bankruptcy proceedings" and "[t]he litigation in the District Court does not involve bankruptcy law nor require expertise in the Bankruptcy Court." Motion at 5, ¶ 10.

15. Movant's assertion that "[t]he relief sought before the District Court would result in a complete resolution of the issues and relieve the Bankruptcy Court from tasks that could be handled elsewhere" is mistaken because the first *Sonnax* factor focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case, not issues in the stayed litigation. Therefore, the first *Sonnax* factor supports denying the Motion.

16. **_Sonnax_ Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay. First, lifting or modifying the stay to allow the resolution of Movant's claim in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. The claims adjustment process under Title III applies with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S.

---

[5] For the avoidance of doubt, the Commonwealth and the Oversight Board reserve all rights and defenses relating to Movant's claims, including, without limitation, any rights to challenge any set-offs or to assert any set-offs and to impair and discharge Movant's claims.

7

293, 302 (2003).

17. As a potential, prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the Commonwealth to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

18. Second, lifting or modifying the stay to proceed with the Lawsuit will interfere with the Title III case by diverting the Commonwealth's attention and resources to defending Movant's claims in another forum and will encourage other creditors to seek similar relief. Should every plaintiff with an asserted prepetition claim be given carte blanche to litigate their claims, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget. This would impede the restructuring process, and should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

19. In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal.

2012). There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374. The plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

20. Here, there are processes pending that are necessary for the Lawsuit to move forward, such as responding to the complaint, conducting discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.

21. Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant's conclusory statement that "[p]laintiff's action will not interfere with the bankruptcy case and with the Commonwealth's reorganization" (Motion at 5, ¶ 10) fails to satisfy Movant's heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money

9

on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

22. **_Sonnax_ Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Lawsuit. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

23. **_Sonnax_ Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed full financial responsibility for defending the Lawsuit. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

24. **_Sonnax_ Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the Lawsuit primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

25. Here, the Commonwealth and the Police of Puerto Rico, an agency of the Commonwealth, are the only defendants in the Lawsuit. Accordingly, the Lawsuit does not primarily involve third parties rather than the Commonwealth.

26. Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

27. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Commonwealth would have to expend considerable time and expense to litigate the Lawsuit by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). Here, the depletion of the Commonwealth's resources to defend against the Lawsuit and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's other creditors. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

28. ***Sonnax* Factors 10 and 11:** As discussed above, the Lawsuit is still at a preliminary stage, having been filed after the commencement of the Commonwealth's Title III case. There are

11

processes pending that are necessary for the Lawsuit to move forward, such as responding to the complaint, conducting and finalizing discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense. As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.*, 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

29.     Indeed, a myriad of proceedings necessary for the Lawsuit to even be trial ready remain pending, all of which will require the Commonwealth to expend considerable time and expense. Movant commenced the Lawsuit on July 19, 2017 asserting a claim for disability discrimination in the terms and conditions of his employment and alleging that the Commonwealth failed to provide the reasonable accommodations requested. Furthermore, Movant has noted he intends to amend his complaint to "conform it to the appointed counsel's view of the legal issues involved and the appropriate legal strategy. . . . including but not limited to the assertion of additional claims . . . ." (Motion at 2-3, ¶ 6) and to join additional unspecified defendants. Motion at 6, ¶ 12.

30. As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

31. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Lawsuit, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. On the other hand, postponing liquidation of the Movant's claims will not adversely affect the Movant and would promote judicial economy. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.[6]

---

[6] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

13

## CONCLUSION

32. Movant has failed to establish cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the Lawsuit to proceed. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: May 11, 2018.
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*