UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>The Financial Oversight Management Board for Puerto Rico<br>as representative of<br>The Commonwealth of Puerto Rico,<br>Debtor<br>- - - - - - - - - - - - -<br>PFZ Properties, Inc.<br>Plaintiff<br>v.<br>COMMONWEALTH OF PUERTO RICO,<br>Defendant | PROMESA Title III<br>No. 17 BK 3283 (LTS)<br>(Jointly Administered)<br><br>Adv. Proc. No. 18- \_\_\_\_\_<br>In 17-bk-3283 LTS 9 |

**Complaint**

To the Honorable Court:

Comes now PFZ Properties, Inc. (hereinafter, the Plaintiff), a creditor of the Commonwealth of Puerto Rico, the Debtor herein (hereinafter, the Debtor or the Commonwealth), through its undersigned counsel and respectfully states and prays as follows:

**Jurisdiction and Venue**

This court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. 1331, because they arise under the Takings Clause and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, applied to the Commonwealth either directly or through the Fourteenth Amendment[1]. Plaintiff's claims based on Commonwealth law may be considered and decided by this Court because there is pendent or supplemental jurisdiction under 28 U.S.C. 1337. Jurisdiction is also predicated on Section 306(a) of the Puerto Rico Oversight, Management and Economic Stabilization Act, 48 U.S.C. § 2166. Venue is proper under Section 307(a)(1) of PROMESA, 48 U.S.C. 2167.

**Statement of Facts**

1. Plaintiff is a Puerto Rico Corporation whose only asset, at

---

[1] There has been substantial argument as to whether the Bill of Rights of the Constitution of the United States applies to the Commonwealth directly or through the Fourteenth Amendment. The Supreme Court has stated that "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment" ***Posadas de Puerto Rico Assoc. vs. Tourism Co. of Puerto Rico,*** 478 US 328, 331 n.1 (1986). And in ***Torres vs. Puerto Rico***, 442 US 465 (1979), Justice Brennan's concurrent opinion states that "whatever the validity of [the Insular Cases when] ...they were decided, these cases are clearly not authority for questioning the application of the Fourteenth Amendment, or any other provision of the Bill of Rights to the Commonwealth of Puerto Rico", ***Torres***, 442 US, at 475-476. In its most recent decision applying a provision of the Bill of Rights to the Debtor, ***Commonwealth of Puerto Rico vs. Sánchez Valle***, 136 S. Ct. 1863 (2016), the Court did not discuss this issue because both parties had accepted that the Double Jeopardy Clause applied to the Commonwealth. The federal Government, however, in its brief as ***amicus curiae***, at page 10, n. 1, asserted that "...the Double Jeopardy Clause could not apply to Puerto Rico through the Due Process Clause of the Fourteenth Amendment, because the Fourteenth Amendment applies only to 'state[s]'. The Double Jeopardy Clause thus must apply to Puerto Rico based on its status as a territory belonging to the United States". There seems to be no question, in any case, that the fundamental guaranties of the Bill of Rights apply to all American citizens in Puerto Rico.

all times relevant to this Complaint, was beachfront land (hereinafter, the Property) comprising approximately 1,345.83 cuerdas (each cuerda being equivalent to 0.97 acres) located in the Municipality of Loíza, only minutes away from San Juan, Puerto Rico, which it held for tourism-related development purposes.

2. At all times relevant to this complaint Plaintiff had a project for tourism-related development of a parcel of the Property pending before the Planning Board of Puerto Rico, which conformed to the then-existing zoning regulations. The Puerto Rico Environmental Quality Board had approved a Final Environmental Impact Statement for that project.

3. On November 13, 2005 Aníbal Acevedo-Vilá, then the Governor of the Commonwealth, issued Executive Order 2005-71, whereby he directed all departments, agencies and instrumentalities of the Commonwealth to acquire, either by purchase or expropriation, any private lands adequate for conservation purposes, in order to create an island-wide natural reserve which would add up to 100,000 cuerdas (each cuerda being equivalent to 0.97 acres). The Property was among the parcels of land already scheduled to be acquired under the Governor's plan.

4. Late in 2006 then Governor Acevedo-Vilá, who was aware that a project to develop a parcel of the Property was pending before the Puerto Rico Planning Board, approached an officer of the Plaintiff at a reception held in his official residence, and

3

informed him that the Secretary of the Department of Natural Resources would contact the Plaintiff to discuss the acquisition of the Property. It became clear to the Plaintiff from its conversations with the Governor and the Secretary that if a purchase and sale contract could not be negotiated the Property would de expropriated.

5. On March 6, 2007 Plaintiff and the Debtor executed a contract whereby the Property would be acquired by the Department of Natural Resources, the purchase price to be determined on the basis of an appraisal by a professional appraiser selected and paid by the Department with the approval of the Plaintiff.

6. The Debtor, however, manipulated the appraisal process in its favor and the Plaintiff refused to sell at the resulting appraisal price and instead sued the Debtor and other responsible parties before this Court on April 1 of 2008, case number 2008-01379 (JP).

7. On August 13 of 2008, to prevent the litigation then pending before this Court between the Plaintiff and the Debtor, concerning Debtor's non-performance of the contract for the acquisition of the Property, case number 2008-01379 (JP), previously described, from coming to trial on July 23 of 2009, the Debtor exercised its sovereign right to condemn the Property, by filing eminent domain proceedings (case number KEF-2008-0480) before the Court of First Instance of the Commonwealth, San Juan

Part (hereinafter, the Trial Court).

8. At the time it filed the expropriation proceedings the Debtor invoked its powers under the Declaration of Taking Act of Puerto Rico, Section 5(a) of the **Ley de Expropiación Forzosa** (the Commonwealth legislation governing eminent domain procedures, hereinafter the Act), 32 L.P.R.A. 2907 (identical in essence to the homonymous federal statute, 40 U.S.C. 3114, 3115, formerly 40 U.S.C. 258 (a)-(e), and immediately took title to and possession of the Property.

9. Plaintiff immediately contested the estimate of just compensation supporting the taking, $4,911,000.00, and also challenged the underlying appraisal relied upon by the Debtor on several grounds, including that the appraisal was based on a parcel of only 62 cuerdas out of the 1,345.83 cuerdas comprising the Property.

10. Shortly before the condemnation pretrial conference was held in April 10 of 2012, the Debtor had the entire property reappraised by a different appraiser of Debtor's own choosing, who concluded that the Property was worth $32,561,003.00 at the time of the taking.

11. This new appraisal was offered and admitted at the pretrial conference, together with other exhibits, as Debtor's evidence on the value of the Property, and the parties were then summoned to proceed to trial shortly thereafter.

12. Nevertheless, and notwithstanding the fact that Plaintiff's own appraiser had estimated a much higher value for the Property, to wit, $75,550,000.00 at the time of the taking (August 13th, 2008), the Plaintiff, to avoid years of litigation and considering the then-present value of a putative judgement in its favor rendered years in the future, requested the Trial Court to enter judgement in its favor for the amount stated (and admitted) by the Debtor in the pretrial documents and proceedings to be the value of the Property.

13. The Debtor, incongruously, then informed the Trial Court that it could not pay the Plaintiff owner the amount that Debtor's own appraiser had estimated the Property was worth at the time of the taking, and therefore would move to voluntarily dismiss the case.

14. Shortly thereafter, on April 17, 2012 the Debtor formally filed for voluntary dismissal of the action and the Plaintiff opposed its motion on the grounds that not only the Declaration of Taking Act, as interpreted by the Commonwealth courts and the Federal judiciary, but the Constitutions of both the United States (the Takings Clause of the Fifth Amendment) and Puerto Rico (Article II, Section 9) prevent a condemning government authority from voluntarily dismissing a case in eminent domain unilaterally after it has taken title to or possession of the condemned property.

15. Both parties exhaustively briefed the voluntary dismissal issue, but at oral argument, not held until June 26th, 2013, more than one year after Debtor's voluntary dismissal motion, the Debtor announced that it no longer wanted to dismiss the proceedings.

16. The Trial Court allowed the Debtor to withdraw its motion to voluntarily dismiss the proceedings and more than another year went by while the Commonwealth judiciary decided whether a motion by the Debtor to reappraise the Property once more should be granted. All three, the Trial Court, the Court of Appeals and the Supreme Court of Puerto Rico had agreed, by October of 2014, that it should not.

17. Nevertheless, when the decision not to allow reappraisal was final, the Trial Court, for the better part of an additional year, refused to grant Plaintiff judgement upon the basis of Debtor's admitted appraisal value, and the Debtor again filed for voluntary dismissal on July 14, 2015.

18. This time, on December 16 of 2016, after another eighteen months had elapsed (the time needed by the debtor to approve a new Land Use Plan), the Trial Court, without even addressing Plaintiff's extensively-briefed legal and constitutional objections, granted Debtor's second motion for voluntary dismissal. The Court of Appeals, also without addressing Plaintiff's constitutional and statutory objections, agreed with the Trial Court and the Commonwealth's Supreme Court denied certiorari to

review the decision.

19. Shortly before the Trial Court's order granting the motion to voluntarily dismiss the proceedings, the Debtor, on November 30th, 2015, to be certain that the Property, which it intended to return to the Plaintiff, could never be developed, approved a new Land Use Plan by means of which the Property was classified as a natural reserve (*"Suelo Rústico Especialmente Protegido-Ecológico"*, or "rustic land especially protected for ecological reasons"), a classification that prevents the Plaintiff from developing the Property or dedicating it to any economically productive or beneficial use whatsoever.

20. The preceding Land Use Plan (promulgated in 1995 specifically for this geographic area) had divided the Property in several parcels, each of which was susceptible of some sort of economic development, and under its provisions the Plaintiff had, at the time of the taking, a tourism-related development project for a 62-acre parcel pending before the Puerto Rico Planning Board.

21. By so rezoning the Property, the Commonwealth effectively foreclosed its economic viability and became its de facto owner (even if pretending to return it to the Plaintiff by voluntarily dismissing the expropriation proceedings) without having payed the Plaintiff just compensation therefor.

22. The expropriation proceedings and the purchase-and-sale process that preceded it, as may be seen in detail in paragraph 30

8

hereof, were clearly a sham, intended by the Commonwealth to hide its true intention of availing itself, as it did, with the actual control and de facto ownership of the Property for its own benefit, without having to pay just compensation for it.

**First Cause of Action**

23. Paragraphs 1-22 are incorporated herein by reference.

24. On November 30th, 2015, the eve of the Trial Court's expected approval of its motion to voluntarily dismiss the expropriation proceedings, the Debtor approved a new Land Use Plan that would be in effect at the time the Property was to be returned to the Plaintiff.

25. In the new Land Use Plan the Property was classified as a natural reserve, so that by those means the Debtor achieved, through regulatory activity, what Governor Acevedo Vilá had envisioned ten years earlier in Executive Order 2005-71: preventing the Plaintiff from developing the Property or dedicating it to any economically productive or beneficial use whatsoever, but without compensation.

26. By depriving the Property of all possible economically productive or beneficial uses the Debtor effected a regulatory taking of the Property for which the Takings Clause of the Fifth Amendment to the Constitution of the United States[2] and Article II,

---

[2] See note 1 above.

Section 9 of the Commonwealth Constitution require just compensation.

27. Plaintiff, therefore, requests that this Court declare that the Debtor has effected a regulatory taking of the Property and enter judgement against the Debtor providing for just compensation for the Property to the Plaintiff, in the amount of $75,550,000.00 (the value of the Property at the time of the original taking), plus interest at market rates, plus costs and attorney's fees.

### Second Cause of Action

28. Paragraphs 1-22 are incorporated herein by reference.

29. At least since Governor Acevedo-Vilá promulgated Executive Order 2005-71 the Debtor pursued a single aim regarding the Property: preventing the Plaintiff, and any successor in interest, from developing the Property or dedicating it to any economically productive or beneficial use, in order for the Debtor to conserve it as a natural reserve.

30. The means by which the Debtor pursued that objective [to wit: forcing the Plaintiff to enter into an agreement to sell the Property to the Debtor and withdraw its development project from official consideration; then, manipulating the appraisal process by which the purchase price would be determined; then, filing eminent domain proceedings and acquiring title to and possession of the Property (in the eve of trial of Plaintiff's federal claims to

obtain redress for such activity); then, voluntarily dismissing the expropriation proceedings (again, in the eve of the trial set to determine just compensation); then, withdrawing its first motion for voluntarily dismissal, only to file it for a second time when the Commonwealth courts denied its request to reappraise the Property; and, finally, rezoning the Property as a natural reserve before returning it, worthless, to the Plaintiff], are clearly arbitrary, capricious, unfair and unreasonable, and amount to an unconstitutional violation of Plaintiff's rights to substantive due process under the Due Process Clause of the Fifth Amendment to the Constitution of the United States and the Fourteenth Amendment[3].

31. Plaintiff, therefore, requests that this Court declare that the Debtor, by engaging in the above-described conduct, has violated Plaintiff's constitutional rights to substantive due process of law, and enter judgement providing for compensation to the Plaintiff in an amount of not less than $75,550,000.00 (the value of the Property at the time of the original taking), plus interest at market rates, plus costs and attorney's fees.

### Third Cause of Action

32. Paragraphs 1-22 are incorporated herein by reference.

33. On August 13th, 2008 the Debtor exercised its sovereign right to condemn the Property, by filing eminent domain proceedings

---

[3] See note 1 above.

(case number KEF-2008-0480) before the Trial Court. Under the Declaration of Taking Act of Puerto Rico, Section 5(a) of the Act, 32 L.P.R.A. § 2907, it immediately took title to and possession of the Property.

34. On July 14 of 2015, however, the Debtor for a second time (two years after voluntarily withdrawing its first identical request) filed a motion to voluntarily dismiss those proceedings under Section 5(d) of the Act and Rule 58.8(c) of the Puerto Rico Rules of Civil Procedure, and the Trial Court granted it on December 16, 2016.

35. Section 5(d) of the Act, 32 L.P.R.A. § 2910, provides that the owner of a property as to which the Commonwealth has voluntarily dismissed eminent domain proceedings has a claim against the Commonwealth for all damages it may have sustained on account of the taking of its property and the subsequent voluntary dismissal of the proceedings.

36. Likewise, Puerto Rico Rules of Civil Procedure Rule 58.8(c) provides that the owner of a property as to which the Commonwealth has voluntarily dismissed eminent domain proceedings is entitled to an adjudication of just compensation for the possession of the property and the taking of its title by the Commonwealth.

37. The Plaintiff, therefore, requests that this Court determine the compensation it is entitled to receive under the

12

above-cited provisions of Commonwealth law, in an amount not less than $75,550,000.00 (the value of the Property at the time of the original taking less its value at the time of the voluntary dismissal), plus interest at market rates, plus costs and attorney's fees, and enter judgement against the Debtor providing for such compensation to the Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment: 1) declaring that the Debtor has effected a regulatory taking of the Property, and ordering Debtor to pay just compensation to the Plaintiff for the taking of the Property, in the amount of $75,550,000.00 (the value of the Property at the time of the original taking), plus interest at market rates, plus costs and attorney's fees; 2) declaring that Debtor has violated Plaintiff's constitutional rights to substantive due process of law, and ordering Debtor to pay compensation to the Plaintiff, in an amount of not less than $75,550,000.00 (the value of the Property at the time of the original taking), plus interest at market rates, plus costs and attorney's fees; 3) and declaring that Plaintiff is entitled to receive just compensation under the above-cited provisions of Commonwealth law and ordering Debtor to pay Plaintiff an amount not less than $75,550,000.00 (the value of the Property at the time of the original taking less its value at the time of the voluntary dismissal), plus interest at market rates, plus costs

13

and attorney's fees.

Respectfully submitted.

In San Juan, Puerto Rico, this 14th day of May 2018.

/s/ DAVID CARRION BARALT
USDC PR 207214
Attorney for Plaintiff
P.O. Box 364463
San Juan, P.R. 00936-4463
Tel. (787) 758-5050
Fax. (787) 296-3434
E-mail: davidcarrionb@aol.com

/s/ RUSSELL A. DEL TORO
USDC PR 121302
DEL TORO & SANTANA
Attorneys for Plaintiff
Plaza 273, Suite 900
273 Ponce de León Ave.
San Juan, Puerto Rico 00917-1934
Telephone (787) 754-8700
Fax (787) 756-6677
E-mail: rdeltoro@dtslaw.com

/s/ JOSE ÁNGEL REY
USDC PR 118103
Attorneys for Plaintiff
P.O. Box 10127
San Juan, P.R. 00908-1127
Tel. (787) 396-2600
E-mail: joseangelrey46@gmail.com