# Exhibit D

Case:17-03283-LTS Doc#:3066-4 Filed:05/15/18 Entered:05/15/18 19:25:07 Desc: Exhibit D Page 1 of 11

KOBRE & KIM LLP

201 SOUTH BISCAYNE BOULEVARD
SUITE 1900
MIAMI, FLORIDA 33131
WWW.KOBREKIM.COM

TEL +1 305 967 6100

NEW YORK
LONDON
HONG KONG
SHANGHAI
SEOUL
WASHINGTON DC
SAN FRANCISCO
MIAMI
CAYMAN ISLANDS
BVI

**INDEPENDENT INVESTIGATOR'S SECOND INTERIM REPORT**

Kobre & Kim LLP, the independent investigator ("Independent Investigator") retained by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting by and through the Special Investigation Committee[1] of the Oversight Board (the "Special Investigation Committee"), provides this second interim report.

The Independent Investigator's work is ongoing. Due to the ongoing nature of the Investigation and related confidentiality considerations, this second interim report is intended to provide a general update to the public and any interested parties on the progress of the Investigation without compromising the confidentiality of the investigative measures taken to date. The areas of inquiry and preliminary findings discussed herein have evolved over the last six months, and may continue to evolve and change materially in light of the facts uncovered. The inclusion of these areas of inquiry does not mean the Independent Investigator has prejudged facts it has yet to find, and the order of presentation is not indicative of any investigative priority.

---

[1] The Special Investigation Committee of the Oversight Board comprises of Members Ana J. Matosantos, David A. Skeel, and Judge Arthur J. Gonzalez (Ret.), and is charged with pursuing investigations pursuant to the authority granted to the Oversight Board by PROMESA Section 104(o) and such other authority invested in the Oversight Board pursuant to PROMESA.

1

**INTRODUCTION**

1. The Special Investigation Committee's principal goals for this Investigation are to identify any policies or absent safeguards that contributed to the Puerto Rico debt crisis, including factors that permitted the government and its instrumentalities to issue significant amounts of debt without adequate sources of repayment, so that Puerto Rico can regain access to the capital markets, and so that stakeholders can identify potential claims or matters for regulatory and legislative attention.

2. This Investigation relies upon, and has been made possible by, the voluntary cooperation of over 100 witnesses and stakeholders—including former and current senior government officers, underwriters, rating agencies, outside professionals, and advisors—who have actively cooperated with us in order to conserve resources and avoid litigation over subpoenas, all with the goal of concluding this independent review of the facts to renew Puerto Rico's access to the capital markets.

3. Since the Independent Investigator's engagement on September 1, 2017, the Independent Investigator has collected a substantial volume of documents and interviewed dozens of current and former executives and employees, both career and political appointees spanning multiple administrations, from the Government Development Bank for Puerto Rico ("GDB") and various Puerto Rico governmental departments and agencies, including Treasury and the Department of Justice; executives at various issuers; analysts from the ratings agencies; attorneys and other outside professionals who advised the issuers; members of the underwriting syndicates; and other stakeholders. Over the course of the next two months, the Independent Investigator intends to conclude its investigative work by interviewing additional current and former executives and employees of GDB and the Puerto Rico government, including former governors, GDB Board members, and ethics officers; ratings agency personnel; outside consultants, advisors, and auditors for the Puerto Rico government, GDB, and the issuers; as well as additional members of the underwriting syndicates.

4. The Independent Investigator will continue to make public reports, like this one, to keep the public apprised of its progress. In addition, the Independent Investigator is accepting public input and comment through a dedicated email: PROMESAInvestigator@kobrekim.com.[2] On Monday, April 9, 2018 at 3:30 pm AST/EST, the Independent Investigator will host a public conference call, during which the Independent Investigator will make a presentation on its progress and interim findings, as well as respond to and comment on selected inquiries from the public. If you would like to submit an inquiry for consideration, please email the Independent Investigator at PROMESAInvestigator@kobrekim.com by Monday, April 9, 2018 at 10:00 am AST/EST.

5. At the conclusion of the Investigation, the Oversight Board will publish the Independent Investigator's final report, which will include an analysis of the historical and more recent macroeconomic and political factors contributing directly and indirectly to Puerto Rico's fiscal crisis, the Puerto Rico municipal bond issuance process, and the legislative efforts to restructure the debt, in addition to its investigative findings, policy recommendations, and identification of potential claims and matters for regulatory attention.

6. At this time, based upon the response rate of witnesses' document productions and availability for interviews, and in consultation with the Special Investigation Committee and the General Counsel, the Independent Investigator believes that a realistic time frame for the preparation and delivery of a final investigation report is during the summer of 2018. That estimate is subject to adjustment in light of evidence-recovery and review issues that have arisen in the aftermath of Hurricanes Irma and Maria, as well as issues related to litigation, invocation of attorney-client privilege and other confidentiality protections, and various

---

[2] Please note that information you provide may become public or may be shared with various stakeholders interested in the Independent Investigator's work. If you have information that you believe requires confidentiality, you may contact the Independent Investigator using this same email address and ask to discuss the terms under which certain information may be treated confidentially.

witnesses' objections to production. We will promptly notify the Special Investigation Committee if a different time period appears to be more reasonable. The scope of the Investigation authorized by the General Counsel is broad, and could expand as the Independent Investigator uncovers facts, identifies additional witnesses, and crystalizes the relevant legal issues to claims identified or policy proposals made. The Independent Investigator remains committed to completing the Investigation as efficiently and effectively as possible, and has efficiently secured evidence to date without recourse to any actual litigation.

## **SCOPE OF INVESTIGATION**

7.      The Independent Investigator's sole interest in this matter is to assist the Oversight Board in achieving its mandate under PROMESA in the most effective and efficient way, while maintaining the independence of the Investigation. To that end, the Independent Investigator regularly consults with the Special Investigation Committee and the General Counsel on the scope and priorities of the Investigation, and provides regular updates to the Special Investigation Committee and the General Counsel on the status and preliminary findings of the Investigation.

8.      In addition, the Independent Investigator has entered into non-disclosure and cooperation agreements with the Retiree Committee and Official Committee of Unsecured Creditors of the Title III Proceeding,[3] and, as appropriate, has consulted with them and solicited their input on the areas of inquiry relevant to their work in the Title III Proceeding.

9.      The Independent Investigator continues to discuss the status of the Investigation to further develop investigative areas of inquiry and case studies and implement the scope, means, and proposed timing of the Independent Investigator's Investigation at regular, standing meetings with the General Counsel and Special Investigation Committee.

---

[3] The "Title III Proceeding" refers to (i) Case No. 17 BK 3283-LTS; (ii) Case No. 17 BK 3284-LTS; (iii) Case No. 17 BK 3566-LTS; and (iv) Case No. 17 BK 3567-LTS.

4

10. In consultation with the Special Investigation Committee and General Counsel, the Independent Investigator has prioritized the following areas of inquiry for its investigation:

    i. The legislative, political, and regulatory framework of the Government of Puerto Rico as a potential contributing cause of Puerto Rico's fiscal crisis, including the intersection of politics and the bond issuances, the relationship between the central government, GDB, and the entities they support, and alleged conflicts of interest at GDB;

    ii. The policies and practices of disclosure of audited financial statements;

    iii. Management and bond issuance practices at the public corporations, such as the Puerto Rico Electric Power Authority ("PREPA") and the Puerto Rico Aqueducts and Sewers Authority ("PRASA");

    iv. Practices regarding the calculation of the constitutional debt limit;

    v. The creation and use of the Puerto Rico Sales Tax Financing Corporation ("COFINA");

    vi. The policies surrounding, and adequacy of, risk disclosures;

    vii. The use of interest rate swaps;

    viii. The circumstances surrounding the issuance of debt by the pensions;

    ix. The use of bond proceeds;

    x. The role of the ratings agencies; and

    xi. Selling practices.

11. The Special Investigation Committee has been briefed on the projected content and preliminary conclusions of the Independent Investigator's final report, based upon the evidence analyzed to date.

12. The final report will include findings about how the following issues may have contributed to the fiscal crisis:

    i. GDB's independence or lack thereof from the administration;

    ii. Political unwillingness to address and resolve operational deficits at the issuers;

    iii. Possible conflicts of interest between the issuers and the members of the bond teams;

    iv. Factors that contributed to the delay in financial disclosures;

    v. Historical practices regarding the calculation of the constitutional debt limit;

    vi. The formation and use of COFINA;

    vii. The timing of GDB's implementation of formal risk disclosure policies and protocols;

    viii. The entry into interest rate swaps to increase liquidity and eventual repayment of substantial termination fees;

    ix. The circumstances surrounding the issuance of debt by the pensions;

    x. The decisions behind and effects of the ratings decisions on the marketing of the bonds and interest rate swap termination provisions;

    xi. The marketing of the bond offerings and packing into closed-end funds; and

    xii. The impact of Puerto Rico's historical exemption from certain regulatory requirements.

**THE INDEPENDENT INVESTIGATOR'S WORK TO DATE**

13. The response to the Independent Investigator's outreach to witnesses has been largely positive, which has minimized expenditures generally associated with compulsory process.

    **A.    Factual Investigation**

        **i.    Identification of Potential Witnesses, Efforts to Preserve Evidence and Claims, and Collection of Evidence**

14. The Independent Investigator has communicated with individuals and entities involved in the issuance of debt securities in Puerto Rico over the last twenty years, including issuers, underwriters, advisors, rating agencies, and other stakeholders.

15. Numerous financial institutions, advisors, and other entities have voluntarily produced materials, and made witnesses available for interviews. In sum, a large majority of the witnesses have expressed a willingness to cooperate in the Investigation, and produce documents and information on a voluntary basis.

16. As the Independent Investigator continues to identify potential witnesses, the Independent Investigator will issue additional document preservation notices and voluntary requests for information and documents.

17. In addition, the Independent Investigator has invoked Sections 104(c)(1) & (2) of PROMESA to request relevant documents and records from various Puerto Rico government entities, affiliates, and public entities through the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"). To date, AAFAF has committed to cooperating with the Investigation, and, with a few exceptions, has been able to obtain cooperation and consent on behalf of numerous Puerto Rico government entities, affiliates, and public entities to share information with the Independent Investigator. The Independent Investigator continues to work with AAFAF to obtain commitments to cooperate from the remaining Puerto Rico government entities, affiliates, and public corporations that have yet to provide consents or taken positions contrary to the directives of PROMESA.

7

### ii. Investigative Subpoenas

18. Since issuing subpoenas on October 27, 2017 to Popular, Inc., Popular Securities, LLC, and Banco Popular de Puerto Rico (together, "Popular"), the Independent Investigator has received rolling production from Popular, and commenced witness interviews.

19. Additionally, since the last public report, pursuant to the October 18, 2017 Investigative Subpoenas Resolution, the Independent Investigator issued subpoenas on December 19, 2017 to Santander Bancorp, Santander Securities LLC, and Santander Asset Management LLC (together, "Santander") and on January 17, 2018 to Mesirow Financial, Inc. ("Mesirow"). Those entities also have produced materials on a rolling basis.

20. The Independent Investigator will update the public in its next interim report regarding these and any other subpoenas.

### iii. Witness Interviews and Depositions

21. Since December 2017, the Independent Investigator has taken voluntary interviews of dozens of witnesses, including current and former executives and management-level employees of GDB, government officials, issuer executives, ratings agency analysts, and other members of the bond teams, with many more planned to take place over the next two months.

22. The Independent Investigator generally seeks to conduct voluntary interviews of witnesses with respect to the issues subject to the Investigation. To the extent, however, the Independent Investigator requires compulsory process, as with the document requests, the Independent Investigator will issue Investigative Subpoenas pursuant to the Investigative Subpoenas Resolution.

## CONSULTATION WITH TITLE III COMMITTEES, THE PUBLIC, AND OTHER STAKEHOLDERS

23. The Independent Investigator has entered into non-disclosure and cooperation agreements with the Retiree Committee and Official Committee of Unsecured Creditors, and, as appropriate, has consulted with them and solicited their input on the areas of inquiry relevant to their work in the Title III Proceeding.

24. In addition, the Independent Investigator has invoked Section 104(c)(1) of PROMESA to obtain relevant information from various United States federal agencies and regulators.

25. Further, the Independent Investigator has established a dedicated email address (PROMESAInvestigator@kobrekim.com) to receive comments, suggestions, and feedback from the general public.

## RESERVATION OF RIGHTS

26. The Independent Investigator's work is ongoing. This second interim report is based upon currently available information, and reflects that, to date, the Independent Investigator has received clear direction from the Special Investigation Committee and substantial cooperation from numerous parties in interest. Given the scope of the Investigation, the ongoing effects of Hurricanes Irma and Maria, the volume of data collected, and the number of potential witnesses, it is taking significant time to assemble, review, and analyze the documents and related information. As the Investigation unfolds, the Independent Investigator will supplement and amend its investigative work plan to fulfill the Special Investigation Committee's directives regarding the scope and goals of the Investigation, and, as appropriate, will continue to report to the public on its progress.

Dated: April 5, 2018

Respectfully submitted,

**Kobre & Kim LLP**