**WIDE RANGE CORPORATION v. PREPA**
**Court of First Instance of the Commonwealth of Puerto Rico,**
**San Juan Part, K AC2016-1247**
**Statement Itemizing Interest, Fees, Expenses, Etc.**

| | |
|---|---|
| Amount illegally retained by PREPA to WR for alleged delay penalties | $499,106.60 |

Penalty Interest at 6% rate since July 8, 2013 (date of PREPA's payment of the balance and retention)

| | |
|---|---|
| $29,946.40 yearly x 3 yrs. (July 8, 2013 – July 7, 2016) | 89,839.20 |
| $2,495.53 monthly X 11 months (July 6, 2016 – June 5, 2017) | 27,450.83 |
| $82.0449 *Per Diem* x 25 days until June 30, 2017 | + 2,051.12 |
| | $618,447.75 |
| (July 1, 2017 – May 1, 2018) $2,495.53 x 10 = | + 24,955.30 |
| | $643,403.05 |

Anejo 1

P.O.
1-1647

Recorded
11/18/11

## PUERTO RICO ELECTRIC POWER AUTHORITY

17 Nov 2011  14:20:32

**Purchase Order**

Page 1 of 4

Approved

| | | | | | |
|---|---|---|---|---|---|
| Purchase Order | : O060116 | | Order Date | : | 10/18/2011 |
| Supplier | : 014373 | | Due Date | : | 06/22/2012 |
| Revision | : 0 | | Revision Date | : | 10/18/2011 |

| | | | | |
|---|---|---|---|---|
| To | : GLOBAL ENGINEERING GROUP INC | From | : | CARLOS VAZQUEZ |
| | PO BOX 9653 | | | PR Electric Power Authority |
| | SAN JUAN PR 00907 | | | PO Box 364267 |
| | US | | | San Juan PR 00936-4267 |
| | | | | US |

| | | | | |
|---|---|---|---|---|
| Telephone Number | : 7879778005 | Telephone Number | : | (787) 289-3300 |
| Fax | : 7877237501 | | | |

| | |
|---|---|
| Freight Code | : DELIVERED DUTY PAID |
| Ship Via | : |
| Payment Terms | : NET 30 DAYS |
| Retained Percentage | : |

Notes            : PURCHASING MANAGERS----------PHONES-------------FAX

MAGALI J. BERRIOS-RIVERA----------(787) 289-3075 / 3466----(787) 289-3330
CLAUDIA SCHERRER------------------(787) 289-3311 / 3312----(787) 289-3169
NIULMA SANTIAGO-------------------(787) 289-3319 / 3320----(787) 289-3170
RANDALL K. CASTILLO---------------(787) 289-3315 / 3316----(787) 289-3329
FELIX MARTINEZ-MENDEZ-------------(787) 289-3322 / 3321----(787) 289-3328
CARLOS E. VAZQUEZ-RIVERA----------(787) 289-3034 / 3035----(787) 289-3172
LEANDRO FAURA---------------------(787) 289-3318 / 3317----(787) 289-3345

Order Notes      : TRANSFORMADOR DE POTENCIA, 115/40 KV 150 MVA

NÚMEROS DE REFERENCIAS:
ORDEN O0601160
SOLICITUD DE PRECIOS: Q 037742
REQUISICIÓN: 10-0000018221

ESTA ORDEN SE ADJUDICA DE ACUERDO A LAS ESPECIFICACIONES, TÉRMINOS Y
CONDICIONES INCLUIDOS PARA LA SOLICITUD DE PRECIOS Q037742 Y SU PROPUESTA CON
FECHA DEL 4-05-2011

FIANZA:
SE REQUIERE FIANZA DE EJECUCION CON CUBIERTA PARA EL 40 % DEL TOTAL DE LA
ORDEN.

COMPRADOR:
CARLOS E. VAZQUEZ, SUPERVISOR DE COMPRAS
TEL.: (787) 521-3304
FAX. (787) 521-3172, e-mail: c-vazquez-dsai@prepa.com

| APPROVING OFFICERS SIGNATURE: | DATE: |
|---|---|
| | 11/17/11 |

000001

## PUERTO RICO ELECTRIC POWER AUTHORITY
### Purchase Order

17 Nov 2011  14:20:32                                                          Page 2 of 4

Approved

| | | | | |
|---|---|---|---|---|
| Purchase Order | : O060116 | Order Date | : 10/18/2011 | |
| Supplier | : 014373 | Due Date | : 06/22/2012 | |
| Revision | : 0 | Revision Date | : 10/18/2011 | |

### Purchase Order Item Detail

| Line | Manufacturer<br>Item Number<br>Supplier Reference Number<br><br>Manufacturer Reference Number<br>Agreement Number | Purchase UOM<br><br>Payment UOM<br>Payment Quantity | Quantity<br>Unit Price<br><br>Discount<br>Line Value |
|---|---|---|---|
| 1. | D090638 | EA | 2.00<br>1,830,000.00<br>0.00<br>3,660,000.00 |
| | | 0.00 | |

TRANSFORMADOR DE POTENCIA, 115/40 KV, 150 MVA, DE ACUERDO A ESPECIFICACIONES ADJUNTAS.

| APPROVING OFFICERS SIGNATURE: | DATE: |
|---|---|
| | 11/17/11 |

000002

### PUERTO RICO ELECTRIC POWER AUTHORITY
#### Purchase Order

17 Nov 2011  14:20:32

Approved

Page 3 of 4

| | | | | | |
|---|---|---|---|---|---|
| Purchase Order | : Q060116 | | Order Date | : | 10/18/2011 |
| Supplier | : 014373 | | Due Date | : | 06/22/2012 |
| Revision | : 0 | | Revision Date | : | 10/18/2011 |

#### Delivery Schedule

Delivery Location
ING. LUIS ALTUZ CORTÉS
PUERTO RICO POWER AUTHORITY
DIV. CONS. ELECT. Y PROT. DEL SIST.
PLANIFICACION CONS. ELECT.
RIO PIEDRAS
PR
00926

| Item Number | Revision | Quantity | Date Due |
|---|---|---|---|
| 1. | 0 | 2.00 | 06/22/2012 |

| | | | | | |
|---|---|---|---|---|---|
| Agreement Number | : NONE | | Sub Total | : | 3660000.00 |
| Currency | : USD | | Discount | : | 0.00    % |
| | | | Total | : | 3660000.00 |

INSTRUCCIONES ESPECIALES PARA MATERIAL DE ALMACENES

TODO BULTO O EMPAQUE SERÁ IDENTIFICADO CON EL NÚMERO DE ORDEN  Y NÚMERO DE CÓDIGO DE LA AEE EN LOS CASOS QUE
APLIQUE.

EL SUPLIDOR INDICARÁ EN SU FACTURA EL NÚMERO DE -VENDOR- Y EL NÚMERO DE CÓDIGO  LA DESCRIPCIÓN Y NÚMERO DE LÍNEA
EN LA FACTURA/CONDUCE TIENE QUE SER IGUAL AL NÚMERO Y DESCRIPCIÓN INCLUIDA EN LA ORDEN DE COMPRAS.

ENVIAR SUS FACTURAS A LA SIGUIENTE DIRECCIÓN:

AUTORIDAD DE ENERGÍA ELÉCTRICA
DIVISIÓN DE TESORERÍA
PO BOX 70253
SAN JUAN, PUERTO RICO, 00936-8253
--------------------------------------------------
SPECIAL INSTRUCTIONS FOR STOCK MATERIALS

1) PACKAGES MUST BE IDENTIFIED USING PO NUMBER AND PREPA'S CATALOG STOCK NUMBER.

2) INVOICES MUST INCLUDE THE FOLLOWING INFORMATION:
   * PO NUMBER
   * PREPA'S CATALOG VENDOR NUMBER
   * PREPA'S STOCK NUMBER
   * ALSO, THE LINE NUMBER AND DESCRIPTION INCLUDED IN THE INVOICE MUST BE     IDENTICAL TO THE LINE NUMBER AND
   DESCRIPTION INCLUDED IN THE PO.

| APPROVING OFFICERS SIGNATURE: | DATE: |
|---|---|
| | |

PUERTO RICO ELECTRIC POWER AUTHORITY
Purchase Order

17 Nov 2011 14:20:32

Page 4 of 4

Approved

| | | | |
|---|---|---|---|
| Purchase Order | : O060116 | Order Date | : 10/18/2011 |
| Supplier | : 014373 | Due Date | : 06/22/2012 |
| Revision | : 0 | Revision Date | : 10/18/2011 |

3) INVOICES MUST BE SENT TO THE FOLLOWING ADDRESS:

AUTORIDAD DE ENERGÍA ELÉCTRICA
DIVISIÓN DE TESORERÍA
PO BOX 70253
SAN JUAN, PUERTO RICO, 00936-8253

INFORMACION SOBRE RETENCIÓN EN EL ORIGEN

LA AUTORIDAD RETENDRÁ EL EQUIVALENTE AL 7% DE TODO PAGO POR SERVICIOS PRESTADOS QUE SE EFECTÚE BAJO ESTE CONTRATO, DE CONFORMIDAD CON EL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE 1994, SECCIÓN 1143, SEGÚN ENMENDADA. NO OBSTANTE, SE DISPONE QUE LA RETENCIÓN A EFECTUARSE POR LA AUTORIDAD BAJO LAS DISPOSICIONES DE LA PRESENTE CLÁUSULA PODRÍA AUMENTAR A:

20% EN CASO DE QUE EL PROFESIONAL FUERA UN INDIVIDUO NO RESIDENTE CIUDADANO DE LOS ESTADOS UNIDOS DE CONFORMIDAD CON EL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE 1994, SECCION 1147; O UN 29% EN CASO DE QUE EL TOFESIONAL FUERA UN INDIVIDUO NO RESIDENTE Y NO CIUDADANO DE LOS ESTADOS UNIDOS, O UNA CORPORACIÓN O SOCIEDAD EXTRANJERA NO DEDICADA A INDUSTRIA O NEGOCIO EN PUERTO RICO, DE CONFORMIDAD CON EL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE 1994, SECCIONES 1147 Y 1150.

SI EL DEPARTAMENTO DE HACIENDA HA EMITIDO UN CERTIFICADO DE RELEVO A FAVOR DEL PROFESIONAL, ES RESPONSABILIDAD DE ÉSTE, SOMETER COPIA DEL RELEVO A LA AUTORIDAD PARA CADA AÑO NATURAL, DE LO CONTRARIO, LOS PAGOS SEGUIRÁN SUJETOS A LA RETENCIÓN EN EL ORIGEN. TODA FACTURA DEBE DETALLARSE POR CONCEPTOS (SERVICIOS, MATERIALES, EQUIPO, ETC.) PARA IDENTIFICAR LAS PARTIDAS SUJETAS A RETENCIÓN Y EVITAR DESCUENTOS INDEBIDOS.

LA AEE PUEDE TERMINAR ESTE CONTRATO UNILATERALMENTE, EN CASO DE QUE EL CONTRATISTA NO OBSERVE CUALQUIERA DE LAS CLÁUSULAS ANTERIORES, POR CUALQUIER FALLA EN EL CUMPLIMIENTO CON CUALQUIERA DE LAS DISPOSICIONES DEL CONTRATO, INCLUYENDO ESTE ADDENDUM, MEDIANTE LA PREVIA NOTIFICACIÓN POR ESCRITO AL CONTRATISTA DENTRO DEL TÉRMINO DE TREINTA DÍAS ANTES DE COBRAR EFECTIVIDAD LA TERMINACIÓN.

| APPROVING OFFICERS SIGNATURE: | DATE: |
|---|---|
| | 11/17/11 |

000004

SEPT 12

22 13:13:27

PUERTO RICO ELECTRIC POWER AUTHORITY
Purchase Order

Page 1 of 4

Approved

PO 1-1650

| | | | |
|---|---|---|---|
| ...ase Order | : O061068 | Order Date | : 01/12/2012 |
| ...er | : 014373 | Due Date | : 09/10/2012 |
| ...on | : 0 | Revision Date | : 01/12/2012 |

| : GLOBAL ENGINEERING GROUP INC | From | : MAGALI BERRIOS |
|---|---|---|
| PO BOX 9653 | | PR Electric Power Authority |
| SAN JUAN PR 00907 | | PO Box 364267 |
| US | | San Juan PR 00936-4267 |
| | | US |

| ...one Number | : 7879778005 | Telephone Number | : (787) 289-3300 |
|---|---|---|---|
| | : 7877237501 | | |

GLOBAL ENGINEERING
GROUP, INC.

FEB 13 2012

RECEIVED

| ...t Code | : DELIVERED DUTY PAID |
|---|---|
| ...ria | : |
| ...nt Terms | : NET 30 DAYS |
| ... and Percentage | : |

: PURCHASING MANAGERS————PHONES————FAX

MAGALI J. BERRIOS-RIVERA————(787) 289-3075 / 3466—(787) 289-3330
CLAUDIA SCHERRER————————(787) 289-3311 / 3312—(787) 289-3169
NIULMA SANTIAGO————————(787) 289-3319 / 3320—(787) 289-3170
RANDALL K. CASTILLO————————(787) 289-3315 / 3316——(787) 289-3329
FELIX MARTINEZ-MENDEZ————————(787) 289-3322 / 3321——(787) 289-3328
CARLOS E. VAZQUEZ-RIVERA——————(787) 289-3034 / 3035——(787) 289-3172
LEANDRO FAURA———————————(787) 289-3318 / 3317—(787) 289-3345

·Notes          : NÚMEROS DE REFERENCIAS
REQUISICIÓN: 9,01644
PUBLICACIÓN: Q037766
ORDEN:          O061068.
ESTA ORDEN SE ADJUDICA DE ACUERDO CON LAS ESPECIFICACIONES, TÉRMINOS Y
CONDICIONES SOLICITADOS Y ACEPTADOS POR SU COMPAÑÍA EN LA SUBASTA NÚMERO
Q37766 DEL DIA 3.29.11.

PERSONA CONTACTO AEE:
ING GEADA-JORGE, JOSÉ A., 787-521-5122

FIANZA:
SE REQUIERE FIANZA DE EJECUCIÓN CON CUBIERTA PARA EL 40% DEL TOTAL DE LA
ORDEN.

ENTREGA:  EL TIEMPO DE ENTREGA DEL EQUIPO EN EL ALMACÉN 005, PALO SECO ES DE
240 DIAS CALENDARIOS.

GARANTÍA: 36 MESES LUEGO DE INSTALACIÓN Ó 60 MESES LUEGO DE ENTREGADO EN
SITIO, LO QUE OCURRA PRIMERO.

PENALIDAD: SE APLICARÁ UNA PENALIDAD DE $5,000 POR CADA DÍA DE RETRASO EN

...PROVING OFFICERS SIGNATURE          | DATE:
1/15/2072          | 2 5 JAN 2012

ROGULTO A. RAMERO ...

000005

PUERTO RICO ELECTRIC POWER AUTHORITY
Purchase Order

Jan 2012 13:13:27

Page 2 of 4

Approved

| Purchase Order | : O061068 | Order Date | : 01/12/2012 |
| Supplier | : 014373 | Due Date | : 09/10/2012 |
| Revision | : 0 | Revision Date | : 01/12/2012 |

EXCESO A LOS 240 DIAS CALENDARIOS DE ENTREGA ESTABLECIDOS EN LAS
ESPECIFICACIONES, TÉRMINOS Y CONDICIONES, HASTA UN MÁXIMO DEL 10% DEL TOTAL DE
LA ORDEN.

MAGALI J. BERRÍOS-RIVERA, SUPERVISORA DE COMPRAS PRINCIPAL
TELÉFONO: 787.521.2185, 2050
CORREO ELECTRÓNICO: M-BERRIOS-DSAD@AEEPR.COM

Purchase Order Item Detail

| Line | Manufacturer<br>Item Number<br>Supplier Reference Number<br><br>Manufacturer Reference Number<br>Agreement Number | Purchase UOM<br><br><br>Payment UOM<br>Payment Quantity | Quantity<br>Unit Price<br><br>Discount<br>Line Value |
|---|---|---|---|
| 1. | D078864 | EA | 2.00<br>665,533.00<br>0.00 |
| | | 0.00 | 1,331,066.00 |

TRANSFORMADOR 3B 13.2 KV.,18 24 30 33.6 MVA, DE ACUERDO A ESPECIFICACIONES ADJUNTAS.

APPROVING OFFICERS SIGNATURE

EMILIO A. KLANKE-ALMANZAR

DATE:

2 0 JAN 2012

000006

PUERTO RICO ELECTRIC POWER AUTHORITY
Purchase Order

` Jan 2012 13:13:27

Page 3 of 4

Approved

| Purchase Order | : O061068 | Order Date | : 01/12/2012 |
| Supplier | : 014373 | Due Date | : 09/10/2012 |
| Revision | : 0 | Revision Date | : 01/12/2012 |

### Delivery Schedule

Delivery Location
ING. LUIS ALTUZ CORTÉS
PUERTO RICO POWER AUTHORITY
DIV. CONS. ELECT. Y PROT. DEL SIST.
PLANIFICACION CONS. ELECT.
RIO PIEDRAS
PR
00926

| Item Number | Revision | Quantity | Date Due |
| --- | --- | --- | --- |
| 1. | 0 | 2.00 | 09/10/2012 |

| Agreement Number | : NONE | Sub Total | : | 1331066.00 | |
| Currency | : USD | Discount | : | 0.00 | % |
| | | Total | : | 1331066.00 | |

LIENS.

Seller will pay any and all amounts owed to its subcontractors and suppliers as and when due. Seller will ensure
that its subcontractors and suppliers do not file any liens, claims, security interests, or other encumbrances
against any property owned or otherwise occupied by Buyer. Within ten (10) days of receipt of notice from Buyer
that one of Seller's subcontractors or suppliers has filed a lien, claim, security interest, or other encumbrance
against any property owned or otherwise occupied by Buyer, Seller will clear such lien, claim, security interest,
or other encumbrance by payment or by bond. Provided that Buyer is paying Seller in compliance with this Purchase
Order, Seller will not file any liens, claims, or other encumbrances against any property owned or otherwise
occupied by Buyer. If Seller files a lien, claim, security interest, or other encumbrance against any property
owned or otherwise occupied by Buyer, Seller will clear such lien, claim, security interest, or other encumbrance
of record within ten (10) days of receipt of payment of the amount due from Buyer.

INFORMACION SOBRE RETENCIÓN EN EL ORIGEN

LA AUTORIDAD RETENDRÁ EL EQUIVALENTE AL 7% DE TODO PAGO POR SERVICIOS PRESTADOS QUE SE EFECTÚE BAJO ESTE CONTRATO,
DE CONFORMIDAD CON EL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE 1994, SECCIÓN 1143, SEGÚN ENMENDADA. NO
OBSTANTE, SE DISPONE QUE LA RETENCIÓN A EFECTUARSE POR LA AUTORIDAD BAJO LAS DISPOSICIONES DE LA PRESENTE CLÁUSULA
PODRÍA AUMENTAR A:

20% EN CASO DE QUE EL PROFESIONAL FUERA UN INDIVIDUO NO RESIDENTE CIUDADANO DE LOS ESTADOS UNIDOS DE CONFORMIDAD
CON EL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE 1994 , SECCIÓN 1147; O 29% EN CASO DE QUE EL PROFESIONAL
FUERA UN INDIVIDUO NO RESIDENTE Y NO CIUDADANO DE LOS ESTADOS UNIDOS, O UNA CORPORACIÓN O SOCIEDAD EXTRANJERA NO
DEDICADA A INDUSTRIA O NEGOCIO EN PUERTO RICO, DE CONFORMIDAD CON EL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE
1994, SECCIONES 1147 Y 1150.

| APPROVING OFFICERS SIGNATURE: | DATE: |
| --- | --- |
| | 2 5 JAN 2012 |

000007

PUERTO RICO ELECTRIC POWER AUTHORITY
Purchase Order

24 Jan 2012 13:13:27

Page 4 of 4

Approved

| | | | | | |
|---|---|---|---|---|---|
| Purchase Order | : | O061068 | Order Date | : | 01/12/2012 |
| Supplier | : | 014373 | Due Date | : | 09/10/2012 |
| Revision | : | 0 | Revision Date | : | 01/12/2012 |

SI EL DEPARTAMENTO DE HACIENDA HA EMITIDO UN CERTIFICADO DE RELEVO A FAVOR DEL PROFESIONAL, ES RESPONSABILIDAD DE ÉSTE, SOMETER COPIA DEL RELEVO A LA AUTORIDAD PARA CADA AÑO NATURAL, DE LO CONTRARIO, LOS PAGOS SEGUIRÁN SUJETOS A LA RETENCIÓN EN EL ORIGEN. TODA FACTURA DEBE DETALLARSE POR CONCEPTOS (SERVICIOS, MATERIALES, EQUIPO, ETC.) PARA IDENTIFICAR LAS PARTIDAS SUJETAS A RETENCIÓN Y EVITAR DESCUENTOS INDEBIDOS.

LA AEE PUEDE TERMINAR ESTE CONTRATO UNILATERALMENTE, EN CASO DE QUE EL CONTRATISTA NO OBSERVE CUALQUIERA DE LAS CLÁUSULAS ANTERIORES, POR CUALQUIER FALLA EN EL CUMPLIMIENTO CON CUALQUIERA DE LAS DISPOSICIONES DEL CONTRATO, INCLUYENDO ESTE ADDENDUM, MEDIANTE LA PREVIA NOTIFICACIÓN POR ESCRITO AL CONTRATISTA DENTRO DEL TÉRMINO DE TREINTA DÍAS ANTES DE COBRAR EFECTIVIDAD LA TERMINACIÓN.

| APPROVING OFFICERS SIGNATURE | DATE: |
|---|---|
| | 2 5 JAN 2012 |

000008

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

| | |
|---|---|
| WIDE RANGE CORPORATION<br><br>**Parte Demandante**<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO<br><br>**Parte Demandada** | CIVIL NÚM.:  **K AC2016-1247**<br><br>**SOBRE:** INCUMPLIMIENTO DE CONTRATO; DAÑOS Y PERJUICIOS |

**DEMANDA**

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, por conducto de la representación legal que suscribe y, muy respetuosamente, expone, alega y solicita:

*I. PARTES*

1.    La demandante Wide Range Corporation, en lo sucesivo WR, es una corporación debidamente organizada bajo a las leyes del Estado Libre Asociado de Puerto Rico.  A continuación se provee la información requerida por las Reglas de Administración del Tribunal de Primera Instancia:

Dirección física: Carr. 2, Km 56.5, Bo. Palenque, Barceloneta, PR 00617

Dirección postal: PO Box 2186, Barceloneta PR 00617

Número de teléfono: (787) 846-7654 • (787) 846-7655

Número de fax: (787) 846-7650

2.    La demandada Autoridad de Energía Eléctrica de Puerto Rico, en lo sucesivo AEE, es un cuerpo corporativo y político que constituye una corporación pública e instrumentalidad gubernamental autónoma del Estado Libre Asociado de Puerto Rico, sujeta al control de su Junta de Gobierno. Véase, Sección 3, Ley Núm. 83, 2 de mayo de 1941, según enmendada, 22 L.P.R.A. §193.

Dirección física: Edificio NEOS, 1110 Ave. Ponce De León, San Juan, PR

Dirección postal: PO Box 364267, San Juan PR  00936-4267

Número de teléfono: (787) 521-3434

Número de fax: (787) 521-4120

3.      La AEE tiene facultad para demandar y ser demandada ante los tribunales. Además, tiene facultad para hacer contratos y formalizar todos los instrumentos que fueren necesarios o convenientes en el ejercicio de cualquiera de sus poderes. Véase, Sección 6 (e) y (f) Ley Núm. 83, 2 de mayo de 1941, según enmendada, 22 L.P.R.A. §196.

## II. HECHOS

### A. Órdenes De Compra Con GEG

4.      En 17 de noviembre de 2011, la AEE otorgó con Global Engineering Group, Inc. (en lo sucesivo GEG) la Orden de Compra Número 0060116 (en lo sucesivo Orden de Compra Número 0060116 con GEG) para el suministro de 2 transformadores de 150-40 KV, 150 MVA, a ser manufacturados por Chint Electric Co., LTD, una empresa localizada en la República Popular de China (en lo sucesivo Chint). El precio de dicha orden de compra es $3,660,000.00. (**Anejo 1, ¶ pp. 1-4**)

5.      En 25 de enero de 2012, la AEE otorgó con GEG la Orden de Compra Número 0061068 (en lo sucesivo Orden de Compra Número 0061068 con GEG) para el suministro de 2 transformadores de 38-13.2 KV, 18, 24, 30, 33.6 MVA, a ser manufacturados por Chint. El precio de dicha orden de compra es $1,331,066.00. (**Anejo 1, ¶ pp. 5-8**)

6.      La suma del precio de la Orden de Compra Número 0060116 con GEG (por $3,660,000.00) y de la Orden de Compra Número 0061066 con GEG (por $1,331,066.00) asciende a $4,991,066.00. En lo sucesivo dichas órdenes de compra son denominadas colectivamente como las Órdenes de Compra con GEG.

7.      Los transformadores objeto de las Órdenes de Compra con GEG, serían utilizados por la AEE como resguardo o repuesto ("back up" o "spare"). (**Anejos 15 y 16, ¶ pp. 157 y 161**)

8.      Las Órdenes de Compra Número con GEG, y sus términos y condiciones, fueron redactadas por la AEE.

### B. Liquidación De GEG Y Adquisición De Sus Activos Por WR

9.      GEG era una corporación organizada bajo las leyes del estado de Florida, Estados Unidos de América. Su Presidente, dueño y administrador era el Ing. Omar Chávez, quien falleció en 26 de noviembre de 2011. Éste era la única persona en dicha corporación con experiencia administrativa y conocimiento técnico sobre las Órdenes de

Demanda
Página 3 de 26

Compra con GEG; y, quien tenía contacto directo con Chint, compañía a cargo de manufacturar los transformadores de las referidas órdenes de compra. (**Anejo 15 y 16, ¶ pp. 155 y 159**)

10.    En 16 de octubre de 2012, GEG presentó ante el "First Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida", el Caso Número 12-40682CA23, *In Re: Assigment for the Benefit of Creditors: Global Engineering Group, Inc., a Florida profit corporation.* (**Anejo 5, ¶ pp. 76-87**)

11.    En 9 de noviembre de 2012, El Tribunal de Miami le otorgó a WR un contrato para la administración de proyectos y activos de GEG y Global Engineering Caribbean, Inc. (en lo sucesivo GEC) mientras se completaba el proceso para que WR comprara dichas corporaciones. (**Anejos 15 y 6, ¶ pp. 156 y 160**)

12.    En 29 de noviembre de 2012, el Jefe de Suministros de la AEE para esa fecha le dio audiencia a WR, en su carácter de administradora de GEG. Del Acta de esa reunión surge que la AEE concluyó que: "Finalmente, **se consideró formalizar la orden de compra con Global, ya que es la alternativa que menos riesgos legales, procesales y administrativos representa en estos momentos. Global expresó su interés de sustituir y producir nueva fianza de una compañía aceptable para la AEE y un tiempo de entrega acelerado de alrededor de ciento ochenta (180) días calendario si se le adjudicara un segundo transformador.** Ese segundo transformador, según el Ing. Pedro Morales, es necesario para sustituir el transformador de salida de la Central Aguirre, que también presenta problemas técnicos al presente." (Ennegrecido nuestro) (**Anejos 8 y 15, ¶ pp. 103 y 156-157**)

13.    En 4 de diciembre de 2012, WR compró las corporaciones GEG y GEC, junto a sus activos y las Órdenes de Compra con GEG. (**Anejos 7 y 15, ¶ pp. 95-99 y 156**)

### C. Entrega De Los Transformadores, Aceite, Monitor De Gases Y Otros Componentes

14.    El artículo 4 de los términos y condiciones de las Órdenes de Compra con GEG dispone que los trabajos comenzarán dentro del término de 30 días calendario, computados a partir de que el contratista reciba la orden de proceder, y deberán ser terminados dentro del término de 240 días calendario, computados a partir de que el

Demanda
Página 4 de 26

suplidor reciba la orden de proceder. (**Anejo 1, ¶ pp. 15**) Dicho artículo dispone, en lo aquí

pertinente:

Article 4: Commencement and Completion of Work

4.1)    Mobilization of personnel and equipment shall begin in such a way that **work is started within 30 calendar days after notice to proceed and Contractor receives the order**.

4.2)    **Delivery time shall be within 240 calendar days after the supplier receives the order**. This time includes the pick up and delivery of all equipment at PREPA'S facilities." Ennegrecido nuestro. (**Anejo 1, ¶ pp. 15**)

15.    La orden de proceder correspondiente a la Orden de Compra Número

0060116 con GEG fue otorgada en 20 de junio de 2012. (**Anejo 2, ¶ pp. 49-59**). Por lo

tanto, **el término de 240 días para la terminación de dicha orden expiraba en 15 de**

**febrero de 2013**.

16.    La orden de proceder correspondiente a la Orden de Compra Número

0061068 con GEG fue otorgada en 23 de julio de 2012. (**Anejo 3, ¶ pp. 60-69**). Por lo

tanto, **el término de 240 días para la terminación de dicha orden expiraba en 20 de**

**marzo de 2013**.

17.    En 28 de septiembre de 2012, WR en representación de GES entregó el

aceite correspondiente a las Órdenes de Compra con GEG, en el Almacén 005 de Palo

Seco. (**Anejo 10, ¶ pp. 107-113**)

18.    En 8 de febrero de 2013, GEG le entregó a la AEE los transformadores

objeto de la Orden de Compra Número 0061068 con GEG, en el Almacén 005 de Palo

Seco. Además, en esa fecha, WR le facturó a la AEE la suma de $1,331,066.00. (**Anejo 4,**

**¶ pp. 73**)

19.    En 11 de febrero de 2013, GEG entregó los un monitor de gases marca

Morgan Schaffer, modelo Calisto y otros componentes objeto de la Orden de Compra

Número 0060116 con GEG, en el Almacén 005 de Palo Seco. (**Anejo 4, ¶ pp. 74**)

20.    En 15 de febrero de 2013, GEG entregó los transformadores objeto de la

Orden de Compra Número 0060116 con GEG, en el Almacén 005 de Palo Seco. Además,

en esa fecha, WR le facturó a la AEE la suma de $3,660,000.00. (**Anejo 4, ¶ pp. 75**)

21.    A la fecha de su correspondiente entrega en el Almacén 005 de Palo Seco,

**la fabricación de los transformadores se encontraba 100% terminada**.

Demanda
Página 5 de 26

22.     Luego de la entrega de los transformadores, restaba que GEG proveyera el
alambrado por tubería galvanizada, conectara el panel de control a los transformadores y
realizara las pruebas del panel de control para verificar que el equipo hubiera sido
alambrado correctamente; y, la operación de los abanicos y accesorios del transformador.

23.     La AEE había autorizado que a partir de la entrega de los transformadores
GEG hiciera las pruebas del panel de control y ajustes menores de la tubería de dicho
panel, según surge de la Minuta de 13 de diciembre de 2012, sobre la reunión  de
personal de la AEE, GES y Chint en la fábrica de esta última en la República Popular de
China. (**Anejo 9, ¶ pp. 105-106**) Dicha Minuta dispone, en lo aquí pertinente:

"Items

1…

9.     Furnish wiring galvanized conduits piping.

10.     Connect and test transformer accessories.

11.     Control cabinet overall operational and complete test – to
perform and witness.
                                ...

Items  9 to 11 to be performed by Global Engineering/Chint Electric at
job site after delivery."  (**Anejo 9, ¶ pp. 105**)

24.     Las pruebas a los abanicos, accesorios de los transformadores y panel de
control, así como las restantes pruebas de rendimiento requeridas en las especificaciones,
fueron realizadas en la fábrica de Chint, a satisfacción del personal autorizado de la AEE
que estuvo presente durante las pruebas. (**Anejo 9, ¶ pp. 105-106**)

25.     En ocasiones, la AEE le ha requerido a sus contratistas que le entreguen el
panel de control sin alambrar para la AEE hacerlo en el lugar que lo instalará. Ejemplo de
esto es el actual transformador 570 MVA que Chint fabricó bajo la Orden de Compra
Número 000065161, en la cual el panel de control se encuentra separado del
transformador.

26.     En ocasiones, la AEE desalambra y realambra en sitio el panel de control de
los transformadores.

27.     En 20 de febrero de 2013, la AEE y GEG otorgaron el contrato titulado
"Acuerdo Para Armar, Completar, Certificar Y Recibir En Almacén 005 Los
Transformadores De Potencia Objeto De Las Órdenes De Compra 0060116 Y 0061068".

Demanda
Página 6 de 26

Entre otras cosas, en dicho acuerdo se ratificó la obligación de GEG de realizar los trabajos pendientes antes mencionados. (**Anejo 10, ¶ pp. 107-113**)

*D) Traspaso A WR De Las Órdenes De Compra Con GEG*

28.	En 28 de mayo de 2013, la AEE y WR otorgaron dos (2) órdenes de compra (en lo sucesivo **Órdenes de Compra con WR de 28 de mayo de 2013**) traspasando a nombre de WR las Órdenes de Compra con GEG. (**Anejo 11, ¶ pp. 114-144**)

29.	Las **Órdenes de Compra con WR de 28 de mayo de 2013** fueron redactadas por la AEE.

*D. Terminación De La Obra*

30.	Luego de la entrega de los transformadores, los ajustes de tubería los realizó la subcontratista Master Link Corporation; y, las pruebas de control del panel las realizó la subcontratista Beta Electric, ambas compañías certificadas por la AEE para realizar los respectivos servicios. (**Anejo 18, ¶ pp. 171-174**)

31.	Los trabajos pendientes de realizar luego de la entrega de los transformadores fueron terminados en 25 de junio de 2013 y aceptados por la AEE en 28 de junio de 2013. (**Anejos 13 y 17, ¶ pp. 151 y 163**)

32.	El precio de los referidos trabajos pendientes ascendió a menos de $50,000.00 (exactamente $48,824,00). (**Anejo 18, ¶ pp. 171-174**)

33.	El precio de los referidos trabajos pendientes representa aproximadamente un 1% de la suma del precio de las Órdenes de Compra con GEG ($50,000.00/$4,991,066.00). Por lo tanto, al 15 de febrero de 2013, fecha de entrega de los últimos transformadores, la obra contratada se encontraba completada aproximadamente en un 99%.

*E. Aplicación de Cláusula Penal Estipulada
en las Órdenes de Compra con GEG*

34.	Las Órdenes de Compra con GEG contienen en su última página la siguiente cláusula penal, en lo sucesivo "Cláusula Penal Extensa" (**Anejo 1, ¶ pp. 48**):

> "PENALTY CLAUSE
>
> If the Contractor fails to comply with the delivery (s) established in the Contracts, **the contractor shall pay to the Authority a penalty of $5000.00 dollars for each calendar day of delay in making delivery up to a maximum of 10% of the contract price, and the**

Case:17-03283-LTS  Doc#:3070-2  Filed:05/16/18  Entered:05/16/18 00:39:48  Desc:
Exhibit 2 - Supporting documents  Page 16 of 35

Demanda
Página 7 de 26

**contractor and his sureties shall be liable for the amount thereof; PROVIDED, that the contractor shall not be liable to such amount when the delay in delivery is due to unforeseeable causes beyond the control, and without the fault or negligence of the contractor. In case of delay, the Head of the Materials Management Division shall ascertain the fats (sic) and extent of the delay and extend the time for delivery when in his judgment, the findings of facts justify such an extension.**

The Authority shall have the right to the payment or to the withholding of the amount of the penalty for delay in delivery. Contractor agrees that said penalty shall not be subject to reduction, moderation, or modification, since this penalty is a pecuniary punishment for the delay, and not a liquidation of damages.

Bidders should clearly state in his proposal the acceptance of this clause; however, bidder's silence on this regard shall be understood to mean full acceptance of the clause and all its terms. Rejection or non-acceptance of this clause will be cause for rejection of bidder's proposal.

The contractor must send to the Authority a written acknowledgement of the order or requested.

In case the contractor fails to send the acknowledgment, this clause will be applied, starting two weeks from the date of the Authority's written request or order.

United States Post Office postmark dates on mail, or any other means of acknowledgment approved by the Authority, will be used in the determination of the periods of time stated in this clause." Ennegrecido nuestro. **(Anejo 1, ¶ pp. 48)**

35.    Entre otras cosas, la "Cláusula Penal Extensa" establece que: "En casos de retraso, el Jefe de la División de Gerencia de Materiales [Jefe de la División Suministros] deberá determinar los hechos y el alcance de los retrasos, y prorrogará el tiempo de entrega cuando, a su juicio, los hallazgos de hechos justifiquen tal extensión." (Traducción nuestra) ("**In case of delay, the Head of the Materials Management Division shall ascertain the fats (sic) and extent of the delay and extend the time for delivery when in his judgment, the findings of facts justify such an extension.**") (Anejo 1, ¶ pp. 48)

36.    En 28 de mayo de 2013, misma fecha en que la AEE y WR otorgaron las **Órdenes de Compra con WR de 28 de mayo de 2013**, esta última le notificó al Sr. Lloel López, Jefe de la División de Suministros de la AEE, carta solicitándole que la eximiera de la aplicación de las penalidades estipuladas en las Órdenes de Compra con GEG. **(Anejos 12 y 15, ¶ pp. 145-150 y 156)**

37.    En 11 de julio de 2013, WR recibió el cheque número 773, girado por la AEE con fecha de 8 de julio de 2013, por la suma de $4,491,959.40, en pago de las **Órdenes**

Demanda
Página 8 de 26

**de Compra con WR de 28 de mayo de 2013**. En dicho cheque la AEE dedujo la suma

de la suma de $499,106.00, por concepto de penalidades equivalentes al 10% del precio

de $4,991,066.00 de dichas órdenes de compra. **(Anejo 14, ¶ p. 154)**

38.    Mediante correo electrónico de 12 de julio de 2013 el Sr. LLoel Muñoz López,

Jefe de la División de Suministros de la AEE, le notificó al Sr. Pedro Rodríguez Cintrón,

Administrador de Auditoría Interna de la AEE, su determinación de no aplicarle a WR

penalidades. **(Anejo 15, ¶ pp. 155-158)** Sobre el particular señala el Sr. LLoel Muñoz

López:

> "Reconocemos que la firma Wide Range invirtió dinero y recursos
> para que la Autoridad recibiera los transformadores en el menor
> tiempo posible, aunque no tenía un acuerdo firmado con la Autoridad.
> Como muy bien indica Wide Range, ellos pudieron declinar las
> órdenes si a las mismas se le aplicaría la penalidad, porque al
> asumirlas ya estaban en incumplimiento...
>
> Luego de ponderar la solicitud de Wide Range que se le eximiera de
> la penalidad, haciendo un balance de intereses de la agencia,
> entendimos que la participación de Wide Range le economizó tiempo
> y dinero a la Autoridad al asumir la responsabilidad de las órdenes de
> compras de los transformadores. Para llegar a esta conclusión
> tomamos en consideración que por el incumplimiento en la entrega la
> Autoridad no sufrió daños y que los transformadores no afectaron
> ningún proyecto ya que son para resguardo. Además, consideramos
> la muerte del Ing. Omar Chávez una causa de fuerza mayor que
> afectó el curso de las órdenes.
>
> Para empoderar (sic) nuestra decisión procedimos a consultar el
> (sic) Jefe de la División de Conservación del Sistema Eléctrico y
> usuario (sic) Ing. Víctor Morales, quien estuvo de acuerdo con
> nuestra decisión de no aplicarle la penalidad a Wide Range en
> ambas órdenes...Discreción que le concede al Jefe de la División de
> Suministros, el **Manual Administrativo en el Capítulo 500, Artículo
> 501, Responsabilidades** y cito:
>
> > "**El Jefe de la División de Suministros en su
> > capacidad de Oficial Comprador, es el oficial
> > contratante de la Autoridad. Este funcionario es
> > responsable de la ejecución de los contratos de la
> > Autoridad incluyendo la imposición y cobro de los
> > recargos por demora acordados para garantizar el
> > cumplimiento de los mismos. Es responsable,
> > además, de determinar si procede rembolsar cargos
> > por mora en que se demuestre a satisfacción de la
> > Autoridad que el incumplimiento es por causas
> > fortuitas o de fuerza mayor.**"
>
> En el caso de Global determinamos que la muerte del Ing. Omar
> Chávez, unido a la quiebra eran una causa mayor, por lo que
> posteriormente, no debemos responsabilizar a Wide Range quien
> asumió oficialmente el manejo de las órdenes el 20 de febrero de
> 2013.

Demanda
Página 9 de 26

En el documento Informe Final Estudio Sobre Términos Y Condiciones De Subastas, Contratos Y Compras, sometido el 2 de junio de 1989 y aprobado por el Subdirector Ejecutivo José A. del Valle y el Director Ejecutivo Carlos M. Alvarado (qed), dispone a la página 26 y cito:

> "**La utilización de la cláusula penal será en el futuro la excepción a la regla. En la generalidad de los casos no se utilizará. Será una opción que tendremos disponible, pero _debemos evaluar las condiciones de cada subasta en particular, la magnitud del trabajo que vamos a realizar y la necesidad que tengamos en cuanto al tiempo para recibir los bienes y servicios_. Es una herramienta que _debe preservarse y utilizarse juiciosamente_ en aquellos casos que amerite su aplicación, _teniendo en cuenta que tiene un costo para la Autoridad_.**"

> …

Nos enteramos de la aplicación de la penalidad cuando Wide Range no (*sic*) los notificó ya que a seguimiento de ellos verbalmente le adelantamos que la misma no sería aplicada, razón por la cual no le contestamos su carta [de 28 de mayo de 2013].

Como la práctica de aplicar penalidades es que Desembolsos nos refiere las facturas para recomendarlas para pago con la nota de no aplicar la penalidad, pero en este caso Desembolsa (*sic*) la aplicó y recomendó el pago sin consultarnos.

El suplidor Wide Range nos devolvió el cheque el cual devolveremos a Tesorero para que se procese el pago de las facturas sin la aplicación de la penalidad como habíamos acordado con el usuario y el suplidor, todo de acuerdo a la facultad que me confiere el Manual Administrativo, siguiendo las normas de sana administración de la Autoridad …" Subrayado nuestro. (**Anejo 15, ¶ pp. 157-158**)

39.    El Sr. LLoel Muñoz López, Jefe de la División de Suministros, consultó al Ing. Víctor Morales, Jefe de la División de Conservación del Sistema Eléctrico y Usuario de la AEE, quien también estuvo de acuerdo en que no debía aplicársele penalidades a WR. (**Anejo 15, ¶ p. 157**)

40.    Mediante memorando fechado 29 de julio de 2013, el Sr. Luis F. Jiménez Pagán, Administrador de Operaciones e Infraestructura, le solicitó al Lcdo. Jorge A. Concepción Rivera, Director de Asuntos Jurídicos de la AEE, su opinión legal sobre la imposición de penalidades a WR. (**Anejo 16, ¶ pp. 159-161**)

41.    En dicho memorando, el Sr. Luis F. Jiménez Pagán también estuvo de acuerdo en que no debía aplicársele penalidades a WR. (**Anejo 16, ¶ p. 161**) Sobre el particular, señaló:

> "**En este caso entendemos que hubo eventos de fuerza mayor vinculadas el (*sic*) fallecimiento del ingeniero Omar Chávez,**

Demanda
Página 10 de 26

Presidente de Global Enginnering, Inc. y la sucesión de las órdenes de Compra 60116 y 61068, ya en atrasos al adquirirlas *Wide Range Corp.* Además, la Autoridad no tuvo pérdidas por entrega tardía, ya que dichos transformadores, al ser repuestos (spare), permanecerán disponibles en nuestros almacenes para entrar en operación, de ser necesario. Si determináramos que el resultado final de nuestro análisis fuera rembolsar las penalidades, entendemos que no estamos en contra de los mejores intereses de la Autoridad, sino todo lo contrario." Ennegrecido nuestro. **(Anejo 16, ¶ p. 161)**

42.    En memorando fechado 30 de agosto de 2013, el Lcdo. Jorge A. Concepción Rivera contesta la referida consulta del Sr. Luis F. Jiménez Pagán.  Entre otras cosas, en dicho memorando el Lcdo. Concepción concluyó que el fallecimiento del Ing. Omar Chávez y los hechos ocurridos después de su muerte relacionados con las Órdenes de Compra con GEG, no constituyen caso fortuito o fuerza mayor; y, que "…no procede como cuestión de derecho reembolsar la penalidad de $499,106.60 a Wide Range." **(Anejo 17, ¶ p. 170)**

43.    En su memorando fechado 30 de agosto de 2013, el Lcdo. Jorge A. Concepción Rivera discute el Artículo 13.1 de las Órdenes de Compra Número con GEG, pero no discute ni hace referencia alguna a la "Cláusula Penal Extensa". El Artículo 13.1 (en lo sucesivo "Cláusula Penal del Artículo 13.1") dispone:

"**Article 13:** Penalty for Delays

13.1) If Contractor fails to complete the work, or any separable part thereof, within the time established, Contractor shall pay to PREPA a penalty of $5,000.00 for each day of delay in completing the work or separable part thereof, up to a maximum of ten percent (10%) of the Service Order price, and the Contractor and his sureties shall be joint and several liable for said amount. The penalties are sole and exclusive for all delay claims." **(Anejo 1 y 17, ¶ pp. 18 y 164)**

44.    En su memorando fechado 30 de agosto de 2013, el Lcdo. Jorge A. Concepción Rivera no discute ni hace referencia alguna a las **Órdenes de Compra con WR de 28 de mayo de 2013**, ni a sus términos y condiciones. **(Anejo 17, ¶ pp. 162-70)**

45.    En reunión de 17 de septiembre de 2013 entre WR y la AEE, WR aceptó el cheque número 773, girado por la AEE con fecha de 8 de julio de 2013, por la suma de $4,491,959.40, como pago de las facturas del 8 y 15 de febrero de 2013. Las partes acordaron que la aceptación, depósito y cobro de dicho cheque no constituía una renuncia del derecho de WR a reclamar el pago de las sumas retenidas por la AEE por concepto de penalidades. **(Anejo 19, ¶ p. 175)**

46.    WR le ha solicitado en varias ocasiones a la AEE el reembolso de las cantidades retenidas por concepto de penalidades, pero la AEE no lo ha realizado.

### III. CAUSAS DE ACCIÓN

> Primera Causa de Acción: Las Órdenes de Compra con GEG habían sido sustancialmente completadas en aproximadamente 99%, antes de expirar el término de 240 días pactado con GEG para su entrega, por lo que como cuestión de derecho no procedía la imposición de cargos por mora.

47.    Una obra terminada en un 90% se considera concluida o completada sustancialmente. Esto tiene entre sus efectos jurídicos que termina el periodo del contrato y, por ende, el periodo para la imposición de cargos por mora. Además, el contratista tiene derecho a que se le pague el balance de lo adeudado, según el contrato, menos las sumas retenidas para corregir las deficiencias que la obra pueda tener; comienza la vigencia de las garantías a favor del dueño; el dueño corre entonces con los riesgos por la pérdida de la obra y tiene la responsabilidad de darle mantenimiento; el peso para probar defectos en la obra lo tiene el dueño, y la resolución del contrato ya no está disponible como remedio. Para que entren en vigor dichos efectos jurídicos no es necesario que la obra haya sido aceptada, ya que constituye una etapa previa a la de la conclusión final. *Master Concrete Corp. v. Fraya, S.E.*, 152 D.P.R. 616, pág., 629-630 (2000); *Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579 (1991).

48.    El criterio mayormente utilizado para determinar si hubo cumplimiento sustancial es el de la proporción del costo de completar la obra versus el costo total de ésta. Por lo general, se determina que hubo cumplimiento sustancial a menos que el trabajo realizado sea completamente inservible para el fin perseguido. *Master Concrete Corp. v. Fraya, S.E., ibid.*

49.    Los siguientes hechos demuestran que las Órdenes de Compra con GEG se encontraban sustancialmente completadas en aproximadamente 99%, antes de expirar el término de 240 días pactado con GEG para su entrega, por lo que como cuestión de derecho no procedía la imposición de cargos por mora:

a.    En 28 de septiembre de 2012, WR le entregó a la AEE el aceite correspondiente a las Órdenes de Compra con GEG, a pesar de que aún no había comprado a GEG ni tenía un contrato para su representación. (**Anejo 4, ¶ pp. 71-72**)

b.      Los transformadores objeto de la Orden de Compra Número 0061068 con GEG le fueron entregados a la AEE en 8 de febrero de 2013, **40 días antes** del 20 de marzo de 2013, fecha en que expiraba el término de 240 días pactado originalmente con GEG para la entrega de dicha orden. (**Anejo 4, ¶ p. 73**) La entrega de dichos transformadores constituye un cumplimiento sustancial de la obra, debido a que su fabricación estaba 100% terminada; y, la Orden se encontraba substancialmente completada aproximadamente en un 99%.

c.      En 11 de febrero de 2013, GEG entregó a la AEE los un monitor de gases marca Morgan Schaffer, modelo Calisto y otros componentes objeto de la Orden de Compra Número 0060116 con GEG (**Anejo 4, ¶ pp. 74**); y, en 15 de febrero de 2013, **el mismo día** en que expiraba el término de 240 días pactado originalmente con GEG para la entrega de dicha orden, le entregó los transformadores objeto de dicha Orden (**Anejo 4, ¶ p. 75**). La entrega de dichos transformadores también constituye un cumplimiento sustancial de la obra, debido a que su fabricación estaba 100% terminada; y, la Orden se encontraba substancialmente completada aproximadamente en un 99%.

d.      Luego de la entrega de los transformadores de ambas Órdenes de Compra con GEG, el precio de los trabajos pendientes de terminar representa aproximadamente un 1% de la suma del precio de dichas Órdenes ($50,000.00/$4,991,066.00). (**Anejos 1 y 18, ¶ pp. 1-8 y 171-174**)

e.      Los trabajos pendientes consistían en proveer el alambrado por tubería galvanizada, conectar el panel de control a los transformadores y realizar las pruebas del panel de control para verificar que el equipo hubiera sido alambrado correctamente; y, la operación de los abanicos y accesorios del transformador. Según surge de la Minuta de 13 de diciembre de 2012, sobre la reunión de personal de la AEE, GES y Chint en la fábrica de esta última en la República Popular de China, la AEE había autorizado que a partir de la entrega de los transformadores GEG hiciera los referidos trabajos restantes. Las pruebas a los abanicos, accesorios de los transformadores y panel de control, así como las restantes pruebas de rendimiento requeridas en las especificaciones, fueron realizadas en la fábrica de Chint, a satisfacción del personal autorizado de la AEE que estuvo presente durante las pruebas. (**Anejo 9, ¶ pp. 105-106**)

Demanda
Página 13 de 26

     f.     Los trabajos que restaban luego de la entrega de los transformadores de ambas Órdenes de Compra con GEG, no convertían el trabajo realizado en "completamente inservible para el fin perseguido". Éstos eran trabajos de rutina para la AEE, según lo demuestra el hecho de que en ocasiones la AEE le ha requerido a sus contratistas que le entreguen el panel de control sin alambrar, para la AEE hacerlo en el lugar que lo instalará. Ejemplo de esto es el actual transformador 570 MVA que Chint fabricó bajo la orden de compra número 000065161, en la cual el panel de control se encuentra separado del transformador. En otras ocasiones, la AEE desalambra y realambra en sitio el panel de control de los transformadores.

     50.     En vista de lo antes expuesto, respetuosamente se solicita de este Honorable Tribunal que resuelva que las Órdenes de Compra con GEG se encontraban sustancialmente completadas en aproximadamente 99%, antes de expirar el término de 240 días pactado con GEG para su entrega, por lo que no procedía la imposición de cargos por mora; y, en consecuencia, le ordene a la AEE rembolsarle a WR la suma de $499,106.60, retenida por concepto de penalidades, más $104,279.08 de intereses por mora computados a razón de 6% anual, desde el 8 de julio de 2013 (fecha en la que la AEE pagó el balance del precio de las ordenes de compra) hasta el 31 de diciembre de 2016. Dicha suma principal continúa acumulando intereses por mora a razón de $82.0449, hasta su saldo.

> *Segunda Causa de Acción: No procede la imposición de penalidades, debido a que las Órdenes de Compra con WR de 28 de mayo de 2013 no contienen una cláusula penal, y dejaron sin efecto las contenidas en las Órdenes de Compra con GEG.*

     51.     Las **Órdenes de Compra con WR de 28 de mayo de 2013** establecen en sus primeras dos páginas que el nombre del suplidor de las Órdenes de Compra con GEG se cambia a WR, y que todos los términos, condiciones y precios quedan inalterados. **(Anejo 11, ¶ pp. 114-115 y 129-130)** Al respecto, dispone, en lo aquí pertinente:

> "...**SE REVISA ESTA ORDEN PARA CAMBIAR EL NOMBRE DEL SUPLIDOR A WIDE RANGE** LUEGO QUE EN TRANSACCIÓN EFECTUADA EL 4 DE DICIEMBRE DE 2012 EN EL TRIBUNAL DE MIAMI SE COMPLETARA LA COMPRA-VENTA DE LAS EMPRESAS GLOBAL ENGINEERING GROUP Y GLOBAL ENGINEERING CARIBBEAN INC. EL CAMBIO SE SOLICITÓ EN MEMORANDO DEL DÍA 1 DE ABRIL DE 2013. **TODOS LOS TÉRMINOS, CONDICIONES Y PRECIOS QUEDAN INALTERADOS.**" **(Anejo 11, ¶ pp. 114-115 y 129-130)** Ennegrecido

nuestro. (**En lo sucesivo esta cláusula es denominada como Cláusula de No Alteración de Términos, Condiciones y Precios.**)

52.    Sin embargo, contrario a lo antes transcrito, en los términos y condiciones de las **Órdenes de Compra con WR de 28 de mayo de 2013** se dispone en lo aquí pertinente, lo siguiente:

"PH000030 010 COMPLETE AGREEMENT; TERMS AND CONDITIONS...

**This Order, as Buyer's [WR] offer to Seller [AEE], including all applicable terms, conditions and specifications shall constitute the sole and exclusive agreement between the parties. This Order supersedes all other writings and is expressly conditioned on Seller's agreement to the condition hereof, and nothing shall be construed to be an acceptance of any terms of Seller.** None of these terms and conditions may be added to, modified, superseded or otherwise altered except by a written instrument signed by an authorized representative of Buyer and delivered by Buyer to Seller. **Delivery of Materials, Services or Work Product shall be deemed to be only upon the terms and conditions contained in this Order,** notwithstanding any terms and conditions that may be contained in any acknowledgment, invoice or other form of Seller and notwithstanding Buyer's act of accepting or paying for any shipment or similar act of Buyer. This Order shall be accepted by Seller by delivery of Materials, Work Product or Services, commencement of work upon Materials, Work Product of Services, written acknowledgment of Seller, or any other conduct of Seller which recognizes the existence of an agreement pertaining to the subject matter hereof. [**En lo sucesivo, esta cláusula es denominada Cláusula de Acuerdo Completo y Sustitución de Términos y Condiciones**].

...

PH000032 009 DELIVERY

**Seller agrees to provide for delivery of the Materials, Work Product or Services on the date(s) and to the address set forth in the Order.** Seller shall bear all costs of shipping, transportation and packing unless otherwise provided in this Order. On all Materials delivered in error, or in excess of quantity shown in Order, Buyer reserved the right to return the Materials at Seller's expense. Buyer's count shall be final and conclusive on any shipment not accompanied by the packing slip." Ennegrecido nuestro. **En lo sucesivo, esta cláusula es denominada Cláusula de Fecha y Lugar de Entrega.** (**Anejo 11, ¶ pp. 119-120 y 135**)

53.    Las **Órdenes de Compra con WR de 28 de mayo de 2013** no contienen una cláusula penal. (**Anejo 11, ¶ pp. 114-144**)

54.    Si se interpreta aisladamente la "Cláusula de No Alteración de Términos, Condiciones y Precios", se podría concluir erróneamente que a las **Órdenes de Compra con WR de 28 de mayo de 2013** le aplican las cláusulas penales establecidas en las Órdenes de Compra con GEG. Sin embargo, al interpretar dicha cláusula conjuntamente

Demanda
Página 15 de 26

con la "Cláusula de Acuerdo Completo y Sustitución de Términos y Condiciones", y la

"Cláusula de Fecha y Lugar de Entrega" procede concluir que, como cuestión de derecho,

**las Órdenes de Compra con WR de 28 de mayo de 2013** dejaron sin efecto las

cláusulas penales de las Órdenes de Compra con GEG. En la "Cláusula de Acuerdo

Completo y Sustitución de Términos y Condiciones" se establece que **las órdenes con**

**WR, incluyendo todos sus términos, condiciones y especificaciones aplicables,**

**constituirán el único y exclusivo acuerdo entre las partes; y, que estas órdenes**

**dejan sin efecto todos los otros acuerdos escritos. Además, la "Cláusula de Fecha y**

**Lugar de Entrega" establece que la entrega de los materiales, servicios y "work**

**product" deberá ser realizada en la fecha y lugar establecidos en las órdenes con**

**WR.**

55.     Asimismo, a tenor con el Artículo 1240 del Código Civil, 31 LPRA sec. 34788,

cualquier obscuridad, ambigüedad o contradicción en las referidas cláusulas debe ser

interpretada en contra de la AEE, quien fue la parte que las redactó. Por lo tanto, resulta

incuestionable que las cláusulas penales de las Órdenes de Compra con GEG fueron

dejadas sin efecto por las **Órdenes de Compra con WR de 28 de mayo de 2013**.

56.     En vista de lo antes expuesto, respetuosamente se solicita de este

Honorable Tribunal que resuelva que las Órdenes de Compra con WR de 28 de mayo de

2013 no contienen una cláusula penal, y dejaron sin efecto las contenidas en las Órdenes

de Compra con GEG; y, en consecuencia, le ordene a la AEE rembolsarle a WR la suma

de $499,106.60, retenida por concepto de penalidades, más $104,279.08 de intereses por

mora computados a razón de 6% anual, desde el 8 de julio de 2013 (fecha en la que la

AEE pagó el balance del precio de las ordenes de compra) hasta el 31 de diciembre de

2016. Dicha suma principal continúa acumulando intereses por mora a razón de $82.0449,

hasta su saldo.

> *Tercera Causa de Acción: En la alternativa, no procede la imposición
> de penalidades a WR, debido a que en el ejercicio de la discreción
> exclusiva que le confiere la Cláusula Penal pactada en las Órdenes
> de Compra con GEG, el Jefe de la División de Suministros determinó
> que la AEE no debía imponérselas.*

57.     Las Órdenes de Compra con GEG contienen dos cláusulas penales: la

establecida en el Artículo 13.1 ("Cláusula Penal del Artículo 13.1"); y, la que consta en la

última página de dichas órdenes ("Cláusula Penal Extensa"). (**Anejo 1, ¶ pp. 18 y 48**)

Estas cláusulas penales disponen, en lo aquí pertinente:

> "**Article 13:** Penalty for Delays
>
> 13.1) *If Contractor fails to complete the work, or any separable part thereof, within the time established, Contractor shall pay to PREPA a penalty of $5,000.00 for each day of delay in completing the work or separable part thereof, up to a maximum of ten percent (10%) of the Service Order price, and the Contractor and his sureties shall be joint and several liable for* said *amount.* The penalties are sole and exclusive for all delay claims."
>
> "PENALTY CLAUSE
>
> *If the Contractor fails to comply with the delivery (s) established in the Contracts, the contractor shall pay to the Authority a penalty of $5000.00 dollars for each calendar day of delay in making delivery up to a maximum of 10% of the contract price, and the contractor and his sureties shall be liable for* the *amount* thereof; **PROVIDED, that the contractor shall not be liable to such amount when the delay in delivery is due to unforeseeable causes beyond the control, and without the fault or negligence of the contractor. In case of delay, the Head of the Materials Management Division shall ascertain the fats** (*sic*) **and extent of the delay and extend the time for delivery when in his judgment, the findings of facts justify such an extension.** (Itálicas y ennegrecido nuestro)

58.     En las cláusulas antes transcritas se marcaron en itálicas las disposiciones que son iguales en ambas cláusulas y se ennegrecieron las que no están incluidas en la "Cláusula Penal del Artículo 13.1". Al comparar dichas cláusulas, resulta evidente que las disposiciones de la "Cláusula Penal del Artículo 13.1" están incluidas en la "Cláusula Penal Extensa".

59.     Sin embargo, la "Cláusula Penal Extensa" establece que: "...**En casos de retraso, el Jefe de la División de Gerencia de Materiales [Jefe de la División Suministros] deberá determinar los hechos y el alcance de los retrasos, y prorrogará el tiempo de entrega cuando, a su juicio, los hallazgos de hechos justifiquen tal extensión.**" (Traducción nuestra). (**Anejo 1, ¶ pp. 48**)

60.     La "Cláusula Penal Extensa" le confiere al Jefe de la División de Suministros discreción exclusiva para prorrogar el tiempo de entrega cuando, a su juicio, los hechos lo justifiquen. En el ejercicio de dicha discreción, mediante correo electrónico de 12 de julio de 2013 el Sr. LLoel Muñoz López, Jefe de la División de Suministros de la AEE, le notificó al Sr. Pedro Rodríguez Cintrón, Administrador de Auditoría Interna de la AEE, su determinación de no aplicarle a WR penalidades. (**Anejo 15, ¶ pp. 155-158**) En

Demanda
Página 17 de 26

cumplimiento con lo pactado en dicha cláusula, el Jefe de la División de Suministros

determinó los hechos, el alcance o efecto de los retrasos en la entrega y fundamentó su

decisión. En síntesis, el Jefe de la División de Suministros expone las siguientes razones

para no imponerle penalidades a WR:

(1)   WR invirtió dinero y recursos para que la AEE recibiera los

transformadores en el menor tiempo posible, aunque no tenía un acuerdo firmado con la

Autoridad; **(Anejo 15, ¶ p. 157)**

(2)   WR pudo declinar las órdenes si a las mismas se le aplicaría la

penalidad, porque al asumirlas ya estaban en incumplimiento; **(Anejo 15, ¶ p. 157)**

(3)   La participación de WR le economizó tiempo y dinero a la AEE al

asumir la responsabilidad de las órdenes de compras de los transformadores; **(Anejo 15, ¶
p. 157)**

(4)   El retraso en la entrega no le ocasionó daños a la AEE; **(Anejo 15, ¶
p. 157)**

(5)   La demora en la entrega de los transformadores no afectaron ningún

proyecto, ya que son para resguardo o repuesto (back up o spare); **(Anejo 15, ¶ p. 157)**

(6)   La muerte del Ing. Omar Chávez, quien era el Presidente, dueño,

Administrador y única persona con contacto directo con la manufacturera Chint, unido a la

quiebra de GEG, afectaron el curso de las órdenes, por lo que no se debe responsabilizar

a WR; **(Anejo 15, ¶ pp. 155 y 157)**

(7)   Previo a la imposición de las penalidades, el Jefe de la División de

Suministros y el Sr. Víctor Morales, Jefe de la División de Conservación Eléctrica,

acordaron que no se retiraría a WR del registro de suplidores de la AEE y que no se

responsabilizaría a WR por los atrasos en la entrega de las Órdenes de Compra con GEG;

**(Anejo 15, ¶ p. 155)**

(8)   El Informe Final Estudio sobre Términos y Condiciones de Subastas,

Contratos y Compras de la AEE dispone que:

> **"La utilización de la cláusula penal será en el futuro la
> excepción a la regla.** En la generalidad de los casos no se
> utilizará. Será una opción que tendremos disponible, pero
> **debemos evaluar las condiciones de cada subasta en
> particular, la magnitud del trabajo que vamos a realizar y
> la necesidad que tengamos en cuanto al tiempo para
> recibir los bienes y servicios.** Es una herramienta que **debe**

Demanda
Página 18 de 26

> **preservarse y utilizarse juiciosamente** en aquellos casos
> que amerite su aplicación, **teniendo en cuenta que tiene un
> costo para la Autoridad**." (**Anejo 15, ¶ pp. 158**)

61.    La decisión del Jefe de la División de Suministros no fue tomada
unilateralmente. Aún cuando la "Cláusula Penal Extensa" le confiere discreción exclusiva
para tomar la determinación de prorrogar la fecha de entrega, éste consultó con el Ing.
Víctor Morales, Jefe de la División de Conservación del Sistema Eléctrico y Usuario de la
AEE, quien estuvo de acuerdo en que no debía aplicársele penalidades a WR. (**Anejo 15,
¶ pp. 155-156**) También el Sr. Luis F. Jiménez Pagán, Administrador de Operaciones e
Infraestructura, estuvo de acuerdo son dicha determinación. (**Anejo 16, ¶ p. 161**)

62.    La "Cláusula Penal Extensa" no le confiere autoridad alguna al Administrador
de Auditoría Interna de la AEE ni al Director de Asuntos Jurídicos de la AEE, para
determinar si procede o no prorrogar el término de entrega, o revocar la determinación que
realice al respecto el Jefe de la División de Suministros. Dicha cláusula constituye la ley
entre las partes contratantes, por lo que dichos funcionarios no podían dejarla sin efecto y
usurpar la autoridad que se le delegó contractualmente al Jefe de la División de
Suministros. Por lo tanto, conforme al contrato entre las partes la determinación del Jefe
de Suministros debe prevalecer sobre la determinación del Administrador de Auditoría
Interna de la AEE y del Director de Asuntos Jurídicos de la AEE.

63.    El Jefe de la División de Suministros también apoya su determinación de no
penalizar a WR, en el Artículo 501 del Manual Administrativo de la AEE, el cual dispone
que:

> "El Jefe de la División de Suministros en su capacidad de Oficial
> Comprador, es el oficial contratante de la Autoridad. Este funcionario
> **es responsable de la ejecución de los contratos de la Autoridad
> incluyendo la imposición y cobro de los recargos por demora
> acordados para garantizar el cumplimiento de los mismos. Es
> responsable, además, de determinar si procede rembolsar
> cargos por mora en que se demuestre a satisfacción de la
> Autoridad que el incumplimiento es por causas fortuitas o de
> fuerza mayor**." Ennegrecido nuestro. (**Anejo 15, ¶ pp. 157**)

64.    En síntesis, el referido Artículo 501 establece que el Jefe de la División de
Suministros es responsable de la ejecución de los contratos de la AEE, incluyendo la
imposición y cobro de cargos por demora pactados. Además, lo autoriza a determinar si
procede rembolsar dichos cargos cuando se demuestre que el incumplimiento fue
ocasionado por caso fortuito o fuerza mayor.

65.     Interpretando el Artículo 501 del Manual Administrativo el Lcdo. Jorge A. Concepción Rivera, Director de Asuntos Jurídicos de la AEE, concluyó que el fallecimiento del Ing. Omar Chávez y los hechos ocurridos después de su muerte relacionados con las Órdenes de Compra con GEG, no constituyen caso fortuito o fuerza mayor; y, que "...no procede como cuestión de derecho reembolsar la penalidad de $499,106.60 a Wide Range." (**Anejo 17, ¶ pp. 170**) Sin embargo, éste obvió por completo en su opinión que la "Cláusula Penal Extensa" no contiene el requisito de caso fortuito o fuerza mayor que dispone dicho Artículo 501.

66.     Resulta evidente, que la "Cláusula Penal Extensa" es la que gobierna las Órdenes de Compra con GEG, debido a que es la ley entre las partes. El referido Artículo 501 aplica a situaciones en donde no se han pactado otros requisitos, pero no puede alterar los términos en contrario de un contrato, como los de la "Cláusula Penal Extensa".

67.     En vista de lo antes expuesto, respetuosamente se solicita de este Honorable Tribunal que ponga en vigor la determinación del Sr. LLoel Muñoz López, en su carácter de Jefe de la División de Suministros de la AEE, de no aplicarle a WR penalidades; y, en consecuencia, le ordene a la AEE rembolsarle a WR la suma de $499,106.60, retenida por concepto de penalidades, más $104,279.08 de intereses por mora computados a razón de 6% anual, desde el 8 de julio de 2013 (fecha en la que la AEE pagó el balance del precio de las ordenes de compra) hasta el 31 de diciembre de 2016. Dicha suma principal continúa acumulando intereses por mora a razón de $82.0449, hasta su saldo.

> *Cuarta Causa de Acción: En la alternativa, no procede imponerle penalidades a WR, debido a que el retraso en la entrega de las Órdenes de Compra con GEG se debió a causas imprevisibles fuera del control de GEG y WR y sin mediar culpa o negligencia de su parte.*

68.     La "Cláusula Penal Extensa" establece que: "...**el contratista no será responsable por tal cantidad [el pago de la penalidad] cuando el retraso en la entrega se deba a causas impredecibles y fuera de su control, y sin mediar culpa o negligencia del contratista.**" (Traducción nuestra) (**Anejo 1, ¶ pp. 48**)

69.     En el caso de epígrafe, las propias determinaciones del Sr. LLoel Muñoz López, Jefe de Suministros establecen que el retraso en la entrega de las Órdenes de Compra con GEG se debió a causas impredecibles fuera del control de GEG, sin mediar

Demanda
Página 20 de 26

culpa o negligencia de su parte. Por tal razón, el Ing. Víctor Morales, Jefe de la División de

Conservación del Sistema Eléctrico y Usuario, y el Sr. Luis F. Jiménez Pagán,

Administrador de Operaciones e Infraestructura, estuvieron de acuerdo en que no debía

aplicársele penalidades a WR. (**Anejos 15 y 16, ¶ pp. 155-158 y 159-161**) Las

determinaciones de dichos funcionarios constituyen admisiones de parte que obligan a la

AEE.

70.     En vista de lo antes expuesto, respetuosamente se solicita de este

Honorable Tribunal que resuelva que el retraso en la entrega de las Órdenes de Compra

con GEG se debió a causas imprevisibles fuera del control de GEG y WR y sin mediar

culpa o negligencia de su parte; y, en consecuencia, le ordene a la AEE rembolsarle a

WR la suma de $499,106.60, retenida por concepto de penalidades, más $104,279.08 de

intereses por mora computados a razón de 6% anual, desde el 8 de julio de 2013 (fecha

en la que la AEE pagó el balance del precio de las ordenes de compra) hasta el 31 de

diciembre de 2016. Dicha suma principal continúa acumulando intereses por mora a razón

de $82.0449, hasta su saldo.

> *Quinta Causa de Acción: En la alternativa, conforme a las disposiciones del Artículo 1108 del Código Civil, 31 LPRA Sec. 3133, procede que este Honorable Tribunal modifique y reduzca equitativamente la pena a una cantidad máxima de $5,000.00, equivalente a aproximadamente el 10% del precio de los trabajos pendientes de realizar luego de la entrega de los transformadores, debido a que WR cumplió con la obligación principal pactada, al completar la obra.*

71.     Las cláusulas penales tienen dos funciones principales: asegurar el

cumplimiento de una obligación; y, evaluar por anticipado los perjuicios que habría de

ocasionar al acreedor el incumplimiento de la obligación. En el derecho angloamericano

existe una decidida tendencia a invalidar las cláusulas penales y permitir básicamente que

el acreedor recobre tan sólo los daños realmente sufridos. Nuestro Código Civil permite

pactar **obligaciones con cláusula penal, pero éstas tienen que estar sujetas al**

**principio de moderación de la pena** establecido en el Artículo 1108 del Código Civil, 31

LPRA Sec. 3133. **La modificación de la pena es norma de derecho imperativo**

**impuesta a los tribunales por dicho Artículo; es deber y no facultad.** Es un remedio

en equidad contra el rigor o la excesiva onerosidad de la cláusula penal. El único requisito

para la aplicación del Artículo 1108 es que la obligación principal hubiera sido en parte o

Demanda
Página 21 de 26

irregularmente cumplida por el deudor. *Jack's Beach Resort, Inc. v. Cia. Turismo*, 112
D.P.R. 344, pág., 350-351 (1982); *R.C. Leasing Corp. v. Williams Int. Ltd.*, 103 D.P.R. 163,
págs., 168-170 (1974); *Coop. Sabanena v. Casiano Rivera*, 184 D.P.R. 169, págs., 175-
176 (2011). Dicho artículo dispone:

> "El tribunal o juez modificará equitativamente la pena cuando la
> obligación principal hubiera sido en parte o irregularmente cumplida
> por el deudor."

72.   La "Cláusula Penal Extensa" establece, entre otras cosas, que el contratista
acuerda que **la penalidad no estará sujeta a reducción, moderación o modificación,
debido a que la penalidad es un castigo pecuniario por el retraso, y no una
liquidación de daños.** (Anejo 1, ¶ pp. 48) En lo aquí pertinente, dicha cláusula dispone:

> "The Authority shall have the right to the payment or to the withholding
> of the amount of the penalty for delay in delivery. **Contractor agrees
> that said penalty shall not be subject to reduction, moderation, or
> modification, since this penalty is a pecuniary punishment for
> the delay, and not a liquidation of damages.**" (Anejo 1, ¶ pp. 48)

73.   **La última oración del párrafo antes transcrito tiene el propósito de
privar a los tribunales del deber de moderar la pena que le impone el Artículo 1108
del Código Civil**, 31 LPRA sec. 3133. Sin embargo, dicho deber moderador es
irrenunciable y no admite pacto en contrario, por lo que la disposición antes transcrita de la
"Cláusula de Penalidad Extendida" es nula y debe tenerse por no puesta. El hecho de que
en esa cláusula la pena sea identificada como "castigo pecuniario" y no como "liquidación
de daños", no altera su naturaleza penal para asegurar el cumplimiento de una obligación,
por lo que no afecta este resultado.

74.   La "Cláusula Penal Extendida" establece una penalidad de $5,000.00 por
cada día de retraso, hasta un máximo de 10% del precio contratado de $4,991.066.00.
**(Anejo 1, ¶ pp. 48)**

75.   Los siguientes hechos demuestran que como cuestión de derecho procede
que este Honorable Tribunal, en el ejercicio de su deber de moderar equitativamente la
pena, reduzca la penalidad impuesta a una suma no mayor de $5,000.00, equivalente a
aproximadamente el 10% del precio de los trabajos pendientes de realizar luego de la
entrega de los transformadores:

   a.   WR cumplió en su totalidad con la obligación pactada, por lo que se
cumplió el único requisito para la aplicación del Artículo 1108.

Demanda
Página 22 de 26

      b.    Las siguientes admisiones de parte obligan a la AEE y justifican la reducción de la penalidad a la suma antes mencionada:

      (1)    WR invirtió dinero y recursos para que la AEE recibiera los transformadores en el menor tiempo posible, aunque no tenía un acuerdo firmado con la Autoridad; (**Anejo 15, ¶ p. 157**)

      (2)    WR pudo declinar las órdenes si a las mismas se le aplicaría la penalidad, porque al asumirlas ya estaban en incumplimiento; (**Anejo 15, ¶ p. 157**)

      (3)    En la reunión de 29 de noviembre de 2012, entre el Jefe de Suministros de la AEE, otro personal de la AEE y WR, en su carácter de administradora de GEG, la AEE concluyó: "…formalizar la orden de compra con Global, ya que es la alternativa que menos riesgos legales, procesales y administrativos representa en estos momentos. **Global expresó su interés de sustituir y producir nueva fianza de una compañía aceptable para la AEE y un tiempo de entrega acelerado de alrededor de ciento ochenta (180) días calendario si se le adjudicara un segundo transformador.**" (**Anejo 8, ¶ p. 103**)

      (4)    La participación de WR le economizó tiempo y dinero a la AEE al asumir la responsabilidad de las órdenes de compras de los transformadores; (**Anejo 15, ¶ p. 157**)

      (5)    El retraso en la entrega no le ocasionó daños a la AEE; (**Anejo 15, ¶ p. 157**)

      (6)    La demora en la entrega de los transformadores no afectaron ningún proyecto, ya que son para resguardo o repuesto (back up o spare); (**Anejo 15, ¶ p. 157**)

      (7)    Al presente, tres (3) de los transformadores todavía se encuentran almacenados, sin haber sido utilizados, y el restante fue utilizado durante este año;

      (8)    La muerte del Ing. Omar Chávez, quien era el Presidente, dueño, Administrador y única persona con contacto directo con la manufacturera Chint, unido a la quiebra de GEG, afectaron el curso de las órdenes, por lo que no se debe responsabilizar a WR; (**Anejo 15, ¶ pp. 155 y 157**)

Demanda
Página 23 de 26

(9)     Previo a la imposición de las penalidades, el Sr. LLoel Morales López, Jefe de la División de Suministros, y el Sr. Víctor Morales, Jefe de la División de Conservación Eléctrica, acordaron que no se retiraría a WR del registro de suplidores de la AEE y que no se responsabilizaría a WR por los atrasos en la entrega de las Órdenes de Compra con GEG; **(Anejo 15, ¶ p. 155)**

(10)    El Sr. LLoel Morales López, Jefe de la División de Suministros, el Ing. Víctor Morales, Jefe de la División de Conservación Eléctrica, y el Sr. Luis F. Jiménez Pagán, Administrador de Operaciones e Infraestructura, manifestaron que no debía imponérsele penalidades a WR; **(Anejo 15 y 16, ¶ pp. 155-158 y 159-161)**

(11)    El Informe Final Estudio sobre Términos y Condiciones de Subastas, Contratos y Compras de la AEE dispone que:

> "**La utilización de la cláusula penal será en el futuro la excepción a la regla.** En la generalidad de los casos no se utilizará. Será una opción que tendremos disponible, pero **debemos evaluar las condiciones de cada subasta en particular, la magnitud del trabajo que vamos a realizar y la necesidad que tengamos en cuanto al tiempo para recibir los bienes y servicios.** Es una herramienta que **debe preservarse y utilizarse juiciosamente** en aquellos casos que amerite su aplicación, **teniendo en cuenta que tiene un costo para la Autoridad.**" **(Anejo 15, ¶ p. 158)**

c.      Las admisiones del Sr. LLoel Muñoz López, Jefe de la División de Suministros, establecen que el retraso en la entrega de las Órdenes de Compra con GEG se debió a causas impredecibles fuera del control de GEG, sin mediar culpa o negligencia de su parte. **(Anejo 15, ¶ pp. 155-158)**

d.      Desde el 9 de noviembre de 2012, fecha en que WR obtuvo el contrato para la administración de proyectos y activos de GEG y GEC, WR trabajó aceleradamente para entregar a tiempo las Órdenes de Compra con GEG. Esto lo comprueba el hecho que desde esa fecha hasta el 15 de febrero de 2013 la obra se encontraba substancialmente terminada en un 99%; y, al 28 de junio de 2013 (fecha en que los trabajos fueron aceptados como terminados por la AEE) habían transcurrido sólo 231 días, 9 días menos de los 240 días pactados para la terminación de la obra.

e.      En 28 de septiembre de 2012, WR le entregó a la AEE el aceite correspondiente a las Órdenes de Compra con GEG, a pesar de que aún no había

Demanda
Página 24 de 26

comprado a GEG ni tenía un contrato para su representación. La entrega de dicho aceite constituye un cumplimiento parcial de la obra. (**Anejo 4, ¶ pp. 71-72**)

      f.    Los transformadores objeto de la Orden de Compra Número 0061068 con GEG le fueron entregados a la AEE en 8 de febrero de 2013, **40 días antes** del 20 de marzo de 2013, fecha en que expiraba el término de 240 días pactado originalmente con GEG para la entrega de dicha orden. (**Anejo 4, ¶ p.73**)

      g.    En 11 de febrero de 2013, GEG entregó a la AEE los un monitor de gases marca Morgan Schaffer, modelo Calisto y otros componentes objeto de la Orden de Compra Número 0060116 con GEG (**Anejo 4, ¶ pp. 74**); y, en 15 de febrero de 2013, **el mismo día** en que expiraba el término de 240 días pactado originalmente con GEG para la entrega de dicha orden, le entregó los transformadores objeto de dicha Orden (**Anejo 4, ¶ p. 75**).

      h.    Al 15 de febrero de 2013, la obra se encontraba substancialmente terminada en un 99%, y el precio de los trabajos pendientes de terminar representaba aproximadamente un 1% de la suma del precio de las Órdenes de Compra Número 0061068 y 0060116 con GEG ($50,000.00/$4,991,066.00). (**Anejo 18, ¶ pp. 171-174**)

      i.    Los trabajos pendientes consistían en proveer el alambrado por tubería galvanizada, conectar el panel de control a los transformadores y realizar las pruebas del panel de control para verificar que el equipo hubiera sido alambrado correctamente; y, la operación de los abanicos y accesorios del transformador. Según surge de la Minuta de 13 de diciembre de 2012, sobre la reunión de personal de la AEE, GES y Chint en la fábrica de esta última en la República Popular de China, la AEE había autorizado que a partir de la entrega de los transformadores GEG hiciera los referidos trabajos restantes. Las pruebas a los abanicos, accesorios de los transformadores y panel de control, así como las restantes pruebas de rendimiento requeridas en las especificaciones, fueron realizadas en la fábrica de Chint, a satisfacción del personal autorizado de la AEE que estuvo presente durante las pruebas. (**Anejo 9, ¶ pp. 105-106**)

      j.    Los trabajos que restaban luego de la entrega de los transformadores de ambas Órdenes de Compra con GEG, no convertían el trabajo realizado en "completamente inservible para el fin perseguido". Éstos eran trabajos de rutina para la AEE, según lo demuestra el hecho de que en ocasiones la AEE le ha requerido a sus

contratistas que le entreguen el panel de control sin alambrar, para la AEE hacerlo en el lugar que lo instalará. Ejemplo de esto es el actual transformador 570 MVA que Chint fabricó bajo la orden de compra número 000065161, en la cual el panel de control se encuentra separado del transformador. En otras ocasiones, la AEE desalambra y realambra en sitio el panel de control de los transformadores.

76.     La relación de hechos antes expuesta, demuestra que la penalidad de $499,106.00, equivalente al 10 % del precio total de $4,991,060.00 de ambas Órdenes de Compra con GEG, es abusiva y viola los principios más elementales de equidad que incorpora como derecho positivo el Artículo 1108 del Código Civil.

77.     En vista de lo antes expuesto, respetuosamente se solicita que este Honorable Tribunal reduzca equitativamente la pena a la suma máxima de $5,000.00, equivalente al 10% de $50,000.00 (precio de los trabajos pendientes luego de la entrega de los transformadores objeto de las Órdenes de Compra con GEG); y, en consecuencia, le ordene a la AEE reembolsarle a WR la suma de $494,106.00, por concepto de la diferencia entre la penalidad de $5,000.00 y la penalidad retenida de $499,106.00.

*IV. SÚPLICA*

**POR TODO LO CUAL**, respetuosamente se solicita de este Honorable Tribunal que declare con lugar la presente demanda y dicte sentencia concediendo los siguientes remedios:

a.     Le ordene a la AEE rembolsarle a WR la suma de $499,106.60, retenida por concepto de penalidades, más $104,279.08 de intereses por mora computados a razón de 6% anual, desde el 8 de julio de 2013 (fecha en la que la AEE pagó el balance del precio de las ordenes de compra) hasta el 31 de diciembre de 2016. Dicha suma principal continúa acumulando intereses por mora a razón de $82.0449, hasta su saldo;

b.     En la alternativa, se reduzca equitativamente la pena a la suma máxima de $5,000.00, equivalente al 10% de $50,000.00 (precio de los trabajos pendientes luego de la entrega de los transformadores objeto de las Órdenes de Compra con GEG); y, en consecuencia, le ordene a la AEE reembolsarle a WR la suma de $494,106.00 (por concepto de la diferencia entre la penalidad de $5,000.00 y la penalidad retenida de $499,106.00)

Demanda
Página 26 de 26

    c.     Condene a la AEE al pago de costas, intereses y honorarios de abogado por

temeridad.

**RESPETUOSAMENTE SOMETIDA.**

En Carolina, Puerto Rico, a 14 de diciembre de 2016.



HENRY VÁZQUEZ IRIZARRY
Tribunal Supremo Núm. 8723
**BUFETE VÁZQUEZ IRIZARRY, C.S.P.**
Urb. Villa Fontana Park
Calle Parque Luis M. Rivera 5 HH6
Carolina, PR 00983
Tel. (787) 724-7514 - (787) 645-2241
**hvilaw@gmail.com**