# EXHIBIT 12A

18<sup>va</sup> ASAMBLEA          1<sup>era</sup> SESION
LEGISLATIVA          ORDINARIA
Ley Núm. _____
(Aprobada en 29 de enero de 20 17 )

**(P. de la C. 675)**

# LEY

Para crear la "Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico" a
los fines de establecer los mecanismos para que el Gobierno de Puerto Rico
satisfaga sus obligaciones reconociendo a su vez la responsabilidad de proveer
servicios esenciales a los residentes de Puerto Rico; para proveer facultades al
Gobernador con el objetivo de viabilizar los mecanismos necesarios para que el
Gobierno de Puerto Rico pueda salir de la situación de emergencia; así como para
reconocer al Gobernador la facultad de delegar estas funciones en algún
componente de la Rama Ejecutiva; para derogar los Capítulos 1 y 2; y para
reenumerar los existentes Capítulos 3, 4 y 5 como 1, 2 y 3 de la Ley de Moratoria
de Emergencia Fiscal y Rehabilitación Financiera de Puerto Rico, Ley 21-2016,
según enmendada; para añadir el Artículo 23 a la Ley Núm. 22 de 24 de julio de
1985, según enmendada, a los fines de establecer que en cuanto a las enmiendas
que se realizaron mediante la Ley 21-2016 a su Ley Orgánica en caso de conflicto
entre el idioma inglés y español, el idioma inglés prevalecerá; y para reenumerar
el Artículo 23 como 24 de la Ley Núm. 22 de 24 de julio de 1985, según
enmendada; disponer que el texto en inglés prevalecerá sobre el español y para
otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

I.      Declaración de intención

La 18<sup>va.</sup> Asamblea Legislativa ha iniciado sus labores en momentos en que Puerto
Rico se encuentra en medio de una crisis financiera y económica crónica y sistémica. El
30 de junio de 2016 el Presidente Barack Obama firmó la ley denominada *Puerto Rico
Oversight, Management, and Economic Stability Act*, conocida como PROMESA (por sus
siglas en inglés), Pub. L. 114-187. PROMESA fue promulgada de conformidad con la
Sección 3 del Artículo IV de la Constitución de los Estados Unidos de América, la cual
confiere al Congreso la potestad de disponer y establecer todas las reglas y reglamentos
que sean necesarios para los territorios. PROMESA estableció una Junta de Supervisión
Fiscal para Puerto Rico (Junta de Supervisión Fiscal) para disponer un método mediante
el cual el Gobierno de Puerto Rico y sus instrumentalidades alcancen la responsabilidad
fiscal y logren acceder a los mercados de capital. El 30 de octubre de 2016, la Junta de
Supervisión Fiscal designó a Puerto Rico, al Sistema de Retiro de los Empleados del
Gobierno, al Sistema de Retiro de la Judicatura, al Sistema de Retiro para Maestros, a la
Universidad de Puerto Rico y veintiuna corporaciones públicas de Puerto Rico como
"entidades cubiertas" sujetas a supervisión fiscal a tenor con PROMESA. La Sección
405(b) de PROMESA impone además una paralización temporera de los litigios y las

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 3 of 52

2

reclamaciones contra Puerto Rico y sus instrumentalidades sobre distintos asuntos (según puedan ser ampliados conforme a PROMESA, la "Paralización en virtud de PROMESA"), con la esperanza de que el Gobierno de Puerto Rico, a nombre propio y a nombre de sus instrumentalidades, entable negociaciones voluntarias con sus acreedores para reorganizar y transigir el repago de sus obligaciones de deuda y simultáneamente emprenda una reestructuración responsable del Gobierno de Puerto Rico y sus instrumentalidades que reajuste los servicios esenciales requeridos para la salud, seguridad y bienestar de los residentes de Puerto Rico con el repago puntual de sus obligaciones de deuda. Conforme a PROMESA, las continuas acciones de planificación fiscal, las acciones presupuestarias, legislativas y ejecutivas de Puerto Rico, así como las reestructuraciones de deuda, consensuales o no, y la emisión, garantía, intercambio, modificación, recompra o redención de deuda están sujetas a supervisión.

Esta Ley que se conocerá como la "Ley para la Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico" (la Ley) pretende facilitar y fomentar un proceso de negociación voluntaria conforme a PROMESA entre el Gobernador y/o la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, a nombre del Gobierno de Puerto Rico, y los acreedores del Gobierno de Puerto Rico y sus instrumentalidades. Esta Ley autoriza al Gobierno de Puerto Rico, dentro de los parámetros establecidos por PROMESA, a designar ciertos servicios necesarios para la salud, la seguridad y el bienestar de los residentes de Puerto Rico que son prestados por el Gobierno de Puerto Rico y sus instrumentalidades como "servicios esenciales" con arreglo a la Constitución de Puerto Rico.

Con la aprobación de esta Ley, la Asamblea Legislativa remueve obstáculos significativos y contenciosos a las negociaciones voluntarias con los acreedores del Gobierno. En específico, esta Ley enmienda y deroga partes de la "Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico", Ley 21-2016, según enmendada por la Ley 40-2016 y la Ley 68-2016 (la Ley de Moratoria). La "Ley de Moratoria" y las Órdenes Ejecutivas emitidas por el Gobernador de conformidad con la "Ley de Moratoria" (las Órdenes Ejecutivas) le permitían al Gobierno detener el pago puntual de sus obligaciones antes de la promulgación de PROMESA. La aprobación de PROMESA, sin embargo, ha establecido procesos y términos de tiempo puntuales para la resolución de la emergencia financiera del Gobierno que tienen prelación sobre las disposiciones de la "Ley de Moratoria" y las dejan sin efecto. Con PROMESA y el establecimiento de la Junta de Supervisión Fiscal se le han dado a Puerto Rico las herramientas para establecer disciplina fiscal, reestructurar su deuda y ofrecerle una nueva oportunidad al Territorio.

La promulgación de la "Ley de Moratoria" y la emisión de algunas de las Órdenes Ejecutivas han producido además litigios significativos incoados por acreedores del Gobierno de Puerto Rico y sus instrumentalidades. Estos litigios son

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 4 of 52

3

costosos y consumen los recursos necesarios para salvaguardar la salud, seguridad y el bienestar de los residentes de Puerto Rico y para hacer crecer la economía del Territorio. Además, impiden las negociaciones voluntarias con los acreedores. Con el establecimiento de la Junta de Supervisión Fiscal y el requisito de PROMESA de que la Junta de Supervisión Fiscal prepare un plan fiscal conforme a PROMESA, es imprescindible que esta Asamblea Legislativa y el Gobierno de Puerto Rico dirijan rápidamente su atención a colaborar con la Junta de Supervisión Fiscal para garantizar un proceso de negociación y transacción voluntaria (en lugar de uno impuesto sobre el Territorio) para el Gobierno de Puerto Rico y sus acreedores. Sin concederle primero una oportunidad al Gobierno de Puerto Rico de emprender unos intentos significativos para alcanzar una resolución consensual con sus acreedores, la cual es necesaria para la salud, seguridad y bienestar de los residentes de Puerto Rico, PROMESA ordena que la Junta de Supervisión Fiscal imponga una resolución al Territorio.

La Sección 204(c)(3) de PROMESA confiere a la Junta de Supervisión Fiscal la facultad de derogar cualesquiera leyes promulgadas entre el 4 de mayo de 2016 y el 30 de septiembre de 2016 (esta última fecha es la fecha en que la Junta de Supervisión Fiscal y su Presidente asumieron sus cargos) y que permitan la transferencia de cualesquier fondos o bienes fuera del curso ordinario de los negocios o que sean incongruentes con la Constitución de Puerto Rico o las leyes de Puerto Rico (el Periodo de Derogación). Esta Asamblea Legislativa y el nuevo Gobernador de Puerto Rico, actuando de buena fe y con la intención de facilitar negociaciones lideradas por el Gobierno con los acreedores del Gobierno de Puerto Rico y sus instrumentalidades, sostienen que resulta en el mejor interés de Puerto Rico derogar leyes que sean incongruentes con PROMESA y que impidan un proceso de negociación voluntaria con los acreedores del Gobierno de Puerto Rico y sus instrumentalidades. En consecuencia, esta Ley: (i) deroga partes significativas de la Ley de Moratoria; y (ii) suspende o cancela, o ambas, todas las asignaciones especiales no presupuestadas en el año fiscal en curso que puedan haber sido aprobadas para múltiples años en años fiscales anteriores.

Según datos provistos por el Departamento del Tesoro, Puerto Rico sufre una contracción económica de 14.6% en el Producto Estatal Bruto (PEB real) con una proyección de una contracción adicional de 3% para los próximos 2 años. Por años, el Gobierno ha operado con un déficit estructural el cual ha sido financiado con emisiones de bonos y préstamos al Banco Gubernamental de Fomento. Hace más de 1 año que el Gobierno carece de liquidez y se han estado utilizando los reintegros, pagos de los contratistas, el dinero de los pensionados y préstamos intra-gubernamentales para sustituir las fuentes de liquidez.

El acceso a la información financiera del Gobierno, así como la preparación de proyecciones adecuadas, se ha visto afectado por una estructura gubernamental fraccionada y sistemas gubernamentales obsoletos. Los recaudos son consistentemente sobreestimados y continúan disminuyendo a pesar de que se impusieron múltiples

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 5 of 52

4

nuevos impuestos. El Banco Gubernamental de Fomento incumplió sus obligaciones con los bonistas desde el 1 de mayo de 2016 y ya no cumple su rol de proveer liquidez. La cartera de obligaciones de Puerto Rico asciende a $66,000 millones e incluye 18 emisores distintos los cuales están en precario estado financiero. El servicio de la deuda asciende a un promedio de $3,500 millones y consume más de una cuarta parte de las fuentes de ingresos. Los sistemas de retiro están prácticamente insolventes con una deuda actuarial de $50,000 millones de dólares. Lo anterior se agrava por la reducción poblacional ocasionada por la ola migratoria que comenzó en el 2006 y que se convierte en uno de los retos para encaminarnos hacia la recuperación.

Ante este tétrico cuadro es hora de enrollarnos las mangas y trabajar arduamente por el bienestar de Puerto Rico. Nos corresponde construir un nuevo Puerto Rico e implementar una administración y política pública que deje de improvisar y administrar las finanzas de año en año, y empezar a abordar el desequilibrio a largo plazo entre el gasto y los ingresos. Nuestro compromiso en el Plan para Puerto Rico es atender de manera responsable estas situaciones y devolverle la credibilidad a nuestra Isla. Tenemos que mirar hacia el futuro y anticipar estos desafíos en lugar de simplemente sobrevivir de una crisis a la siguiente. Los líderes y funcionarios de los componentes gubernamentales de Puerto Rico deben concentrarse en equilibrar los gastos y los ingresos, reducir el nivel de intervención gubernamental en la economía de Puerto Rico y proporcionar un ambiente de negocios competitivo, donde impere la buena fe, para que los inversionistas y empresarios locales y externos lideren el camino hacia la recuperación económica. Las políticas del pasado llevaron al Congreso de los Estados Unidos a promulgar PROMESA, que delega en una Junta de Supervisión Fiscal la facultad de trabajar con el Gobierno de Puerto Rico para sacarnos de la crisis por la que atravesamos. A esos efectos, el 20 de diciembre de 2016, la Junta Supervisión Fiscal ha solicitado como prioridades de Puerto Rico el incluir un plan y compromiso para implementar cambios significativos dirigidos a:

- o Restaurar el crecimiento económico y crear una economía más competitiva. A corto plazo, se debe liberalizar el mercado laboral y los programas de ayuda social, reducir el costo energético, racionalizar y optimizar los impuestos y mejorar el proceso de permisos para promover la inversión.
- o Restructurar el Gobierno para obtener presupuestos balanceados mientras se mantienen los servicios esenciales para los puertorriqueños.
- o Restructurar el sistema de pensiones conforme a PROMESA y restablecer el acceso a los mercados capitales.

Para ello, es preciso hacer cambios sin precedentes que hagan un gobierno más eficiente y fiscalmente responsable. Precisamente, el Plan para Puerto Rico que el Pueblo avaló el 8 de noviembre de 2016 recoge medidas para lograr responsabilidad fiscal y desarrollar la economía de la Isla.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 6 of 52

5

II.     Trasfondo.

    A.     Aprobación de la "Ley de Moratoria"

El 6 de abril de 2016, el entonces Gobernador Alejandro García Padilla (Gobernador García Padilla) firmó la "Ley de Moratoria". Cuando aprobó la "Ley de Moratoria", la 17ma. Asamblea Legislativa hizo ciertas determinaciones, según se refleja en el Artículo 108 de la "Ley de Moratoria", en el sentido de que el Gobierno debía priorizar el pago de servicios esenciales sobre el servicio a la deuda.

La "Ley de Moratoria" se promulgó en un momento en que no se había completado aún una acción por parte del Congreso federal que atendiera la crisis financiera de Puerto Rico.

La "Ley de Moratoria" tenía cuatro objetivos principales. El primero, establecido en el Capítulo 2 de la "Ley de Moratoria", autorizaba al Gobernador a: (i) declarar una moratoria en los pagos del servicio a la deuda por un período temporero para el Gobierno de Puerto Rico, el Banco Gubernamental de Fomento para Puerto Rico (BGF), el Banco de Desarrollo Económico para Puerto Rico, o cualquier otra instrumentalidad del Gobierno de Puerto Rico, y (ii) suspender los remedios de los acreedores que pudiesen surgir como resultado de la moratoria. El segundo objetivo, establecido en los Capítulos 3 y 4 de la "Ley de Moratoria", era enmendar la "Ley Orgánica del BGF" para proporcionarle al BGF opciones y herramientas para atender sus propias dificultades financieras. Estas enmiendas (a) modernizaban la "Ley Orgánica del BGF" en lo que respecta al nombramiento de un síndico para el BGF y (b) autorizaban la creación de un banco "puente" temporero para llevar a cabo ciertas funciones del BGF y para honrar depósitos. El tercer objetivo, establecido en el Capítulo 5 de la "Ley de Moratoria", era enmendar la "Ley Orgánica del BDE" para modernizar las disposiciones sobre el nombramiento de un síndico para el BDE. El cuarto objetivo, establecido en el Capítulo 6 de la "Ley de Moratoria", era crear la Autoridad de Asesoría Fiscal y Financiera de Puerto Rico. La nueva Administración promulgó una ley que deroga el Capítulo 6 de la Ley 21-2016 y creó una nueva Autoridad, con amplios poderes, conocida como la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, Ley 2-2017.

    B.     Declaración de Estado de Emergencia del Estado Libre Asociado y Ciertas Entidades Gubernamentales

Luego de que se promulgara la "Ley de Moratoria", el Gobernador García Padilla emitió varias Órdenes Ejecutivas conforme a la autoridad que le confería la "Ley de Moratoria". Como parte de las Órdenes Ejecutivas, el Gobernador García Padilla declaró un estado de emergencia para el Estado Libre Asociado (EO 2016-30); el BGF (EO 2016-10); la Autoridad para el Financiamiento de la Infraestructura (AFI) (EO 2016-14), la Autoridad de Carreteras y Transportación (ACT) (EO 2016-17); la Autoridad de

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 7 of 52

6

Edificios Públicos (AEP) (EO 2016-30); la Autoridad Metropolitana de Autobuses (AMA) (EO 2016-30); la Autoridad del Distrito del Centro de Convenciones (ADCC) (EO 2016-31); el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y sus Instrumentalidades (Sistema de Retiro) (EO 2016-31); la Compañía de Fomento Industrial (PRIDCO) (EO 2016-31); la Universidad de Puerto Rico (UPR) (EO 2016-31); y la Corporación para el Financiamiento Público (PFC) (EO 2016-31). Las Órdenes Ejecutivas EO-2016-17 y EO-2016-29 excluyen a la Autoridad de Energía Eléctrica (AEE) del alcance de la "Ley de Moratoria".

La derogación de partes de la "Ley de Moratoria", inclusive de aquellas partes que establecen periodos de emergencia y la paralización de litigios, no deben exponer al Gobierno a más litigios incoados por los acreedores. La Sección 405 de PROMESA concede una paralización temporera de los litigios para facilitar las negociaciones voluntarias entre el Gobierno y sus acreedores. Con la derogación de los periodos de emergencia y la paralización de los litigios bajo la "Ley de Moratoria", esta Asamblea Legislativa y el Gobernador están comunicando su deseo de emprender negociaciones voluntarias con los acreedores del Gobierno de Puerto Rico y sus instrumentalidades en lugar de gastar más recursos y tiempo litigando mociones procesales que no ayudan a facilitar una transacción y reestructuración justa ni a atender la necesidad extrema de crecimiento económico y de servicios efectivos y eficientes que tiene el pueblo del Territorio.

*DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:*

CAPÍTULO 1.-DISPOSICIONES GENERALES

Artículo 101.-Título Corto

Esta Ley se conocerá y podrá citarse como la "Ley para la Emergencia Financiera y Responsabilidad Fiscal de 2017".

Artículo 102.-Declaración de Emergencia Financiera

Por la presente se determina y declara que la grave emergencia que la Asamblea Legislativa ha identificado y declarado en numerosas ocasiones continúa empeorando, que esta continua emergencia financiera y el impacto que ha producido en la solvencia del Gobierno de Puerto Rico y sus instrumentalidades continúan afectando significativa y adversamente la capacidad de cumplir con las obligaciones financieras y salvaguardar la salud, seguridad y el bienestar de los residentes de Puerto Rico; y que resolver la emergencia financiera y establecer responsabilidad fiscal dentro del Gobierno de Puerto Rico y sus instrumentalidades es indispensable para garantizar que se provean aquellos servicios gubernamentales que son esenciales para salvaguardar la salud, seguridad y el bienestar de los residentes de Puerto Rico.

Esta continua emergencia financiera ha sido reconocida por el Gobierno de los Estados Unidos mediante la promulgación de la ley conocida como *Puerto Rico Oversight, Management, and Economic Stability Act,* Pub. L. 114-187 (PROMESA), la cual establece, entre otras cosas, medidas para asistir al Gobierno de Puerto Rico y sus instrumentalidades a alcanzar la responsabilidad fiscal y acceder a los mercados de capital.

En el proceso de aprobar PROMESA, el Congreso de los Estados Unidos determinó que la combinación de un descenso severo de la economía y, ocasionalmente, déficits operacionales acumulados, falta de transparencia financiera, ineficiencias administrativas y préstamos excesivos crearon una emergencia fiscal en Puerto Rico y como resultado de su emergencia fiscal, el Gobierno de Puerto Rico no ha podido garantizar su continua operación y proveer servicios esenciales de manera efectiva a los residentes de Puerto Rico.

Existen ciertos derechos, poderes y obligaciones generales de Puerto Rico, fundamentados o impuestos en la Constitución de los Estados Unidos y la Constitución de Puerto Rico, el derecho estatutario y la equidad, que surgen como resultado de tal emergencia; y ciertos derechos, poderes y obligaciones adicionales conferidos o impuestos por PROMESA y el ejercicio por parte del Congreso de los Estados Unidos de sus poderes bajo la cláusula territorial. En vista de la continua emergencia financiera y de la promulgación de PROMESA, la Asamblea Legislativa tiene la responsabilidad de ejercer su poder de razón de estado, de forma tal que se reconozca la responsabilidad de satisfacer las obligaciones financieras del Gobierno de Puerto Rico y sus instrumentalidades, mientras se continúan proveyendo servicios gubernamentales esenciales para salvaguardar la salud, seguridad y el bienestar de los residentes de Puerto Rico dados los limitados recursos disponibles del Gobierno de Puerto Rico y sus instrumentalidades, todo esto de manera congruente con PROMESA. En el ejercicio de su poder de razón, la Asamblea Legislativa reconoce además la necesidad de remediar la emergencia financiera asegurando un manejo fiscal prudente, una administración eficiente y la prestación de servicios esenciales y permitiendo al mismo tiempo la negociación con los acreedores y la reestructuración de las obligaciones contractuales.

La Asamblea Legislativa declara además que el Gobernador de Puerto Rico también debe estar completamente autorizado para ejercer la responsabilidad del Gobernador de salvaguardar la salud, seguridad y el bienestar de los residentes de Puerto Rico y confiere al Gobernador con carácter de emergencia el ejercicio del poder de razón de Estado conforme a esta Ley, incluyendo, pero sin limitarse, a los poderes relacionados con la identificación de aquellos servicios esenciales para la salud, seguridad y bienestar de Puerto Rico; garantizar la administración eficiente y efectiva del Gobierno de Puerto Rico y sus instrumentalidades; y la supervisión y dirección de los asuntos fiscales del Gobierno de Puerto Rico y sus instrumentalidades.

Artículo 103.-Definiciones

Las siguientes palabras y términos, cuando se usen en esta Ley, tendrán los significados que se establecen a continuación:

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 9 of 52

8

(a)   "Ley" significa esta "Ley para la Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico de 2017".

(b)   "Autoridad" significa la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico.

(c)   "AFICA" significa la Autoridad de Puerto Rico para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental.

(d)   "Acuerdo con Acreedores" – significa un acuerdo otorgado entre una entidad gubernamental y ciertos acreedores de dicha entidad gubernamental, incluyendo, pero sin limitarse a un acuerdo consensual en apoyo a la reestructuración de su deuda, según sea enmendado, suplementado o reinstalado de tiempo en tiempo, independientemente de que el mismo esté titulizado o no.

(e)   "AMA" significa la Autoridad Metropolitana de Autobuses.

(f)   "Recursos disponibles" tiene el significado que se le da a dicho término para propósitos de la Sección 8 del Artículo VI de la Constitución de Puerto Rico.

(g)   "Banco" significa uno de los siguientes o ambos —

    i.   el Banco Gubernamental de Fomento para Puerto Rico, y

    ii.   el Banco de Desarrollo Económico para Puerto Rico.

(h)   "Junta" significa la Junta de Directores de cada Banco.

(i)   "Reclamación de bono" (bond claim), para propósitos del Artículo 206, tiene el significado del término según se define bajo la Sección 5 de PROMESA.

(j)   "ADCC" significa la Autoridad del Distrito del Centro de Convenciones de Puerto Rico.

(k)   "Fideicomiso de los Niños" significa la entidad sin fines de lucro creada por el Territorio de conformidad con la "Ley del Fideicomiso de los Niños", Ley 173-1999, según enmendada.

(l)   "COFINA" significa la Corporación del Fondo de Interés Apremiante de Puerto Rico.

(m)   "Instrumento de deuda" incluye cualquier documento o instrumento para, utilizado en relación con, o relacionado a:

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 10 of 52

9

i.  cualquier obligación de pagar el principal o la prima, si alguna, de cualquier interés, penalidad, reembolso, indemnización, cargo, gasto o cualquier otra cantidad relacionada con cualquier endeudamiento, y cualquier otra obligación, sea contingente o no,

    a.  por dinero tomado a préstamo,

    b.  evidenciada por bonos, pagarés, instrumentos de fideicomiso (indentures), notas, resoluciones, cualquier contrato de préstamo o financiamiento, valores o cualquier instrumento similar, o

    c.  por una carta de crédito o fianza de cumplimiento;

ii.  cualquier obligación contingente respecto de, o relacionada con, cualquier pasivo de la clase descrita en la cláusula anterior (i), incluyendo, pero sin limitarse, a cualquier garantía de tal responsabilidad y de cualquier acuerdo de reembolso con respecto a una póliza de seguro que cubra dicha obligación;

iii.  cualquier obligación relacionada con alguna aceptación bancaria (banker's acceptance);

iv.  cualquier obligación con relación a un acuerdo de intercambio de tasas de interés, contrato derivado o acuerdo relacionado, contrato de cobertura (hedge agreement), contrato de valores, contrato de entrega futura (forward), acuerdo de recompra, opción, promesa (warrant), contrato de materia prima (commodity) u otro instrumento similar;

v.  cualquier y todo aplazamiento, renovación, extensión y refinanciamiento de cualquier obligación de los tipos descritos en las cláusulas (i) a (v) o enmiendas, modificaciones o suplementos a dicha obligación;

vi.  cualquier obligación que surja de cualquier sentencia relacionada a cualquier obligación del tipo que se describe anteriormente en las cláusulas (i) a (iv); o

vii.  cualquier obligación que surja de una obligación de asegurar relacionada a cualquier obligación del tipo descrito en este Artículo.

Disponiéndose que "instrumento de deuda" no incluye ningún contrato para la prestación de bienes o servicios, ni incluye ningún acuerdo de servicio de compensación (clearing) u otro acuerdo conforme al cual una institución

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 11 of 52

10

financiera provea servicios al Banco o a cualquier otra entidad gubernamental.

(n)     "Depósito" significa los fondos en custodia del Banco que sean clasificados por dicho Banco como depósitos.

(o)     "Depositante" significa cualquier persona, o su representante autorizado, que sea el dueño primario o beneficiario de cualquier cuenta que contenga depósitos en poder del Banco.

(p)     "Institución Depositaria" significa, para propósitos de esta Ley, los bancos y cooperativas de ahorro y crédito en Puerto Rico, y la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC), como aseguradora de las acciones y los depósitos de las cooperativas de ahorro y crédito.

(q)     "Periodo de Emergencia" significa el periodo que comienza en la fecha de efectividad de esta Ley y que termina el 1 de mayo de 2017, término que el Gobernador podrá extender por un periodo adicional de tres (3) meses mediante una Órden Ejecutiva.

(r)     "Sistema de Retiro" significa el Sistema de Retiro de los Empleados del Gobierno del Territorio y sus Instrumentalidades.

(s)     "Servicios esenciales" significa un servicio prestado por el Territorio o una instrumentalidad del Territorio identificado por el Gobernador en el Capítulo 2 de esta Ley como un servicio esencial para salvaguardar la salud, seguridad y el bienestar público de los residentes de Puerto Rico.

(t)     "Buena fe", para propósitos del Artículo 206, significa la participación de una parte interesada en un proceso de evaluación neutral con la intención de negociar una resolución de los asuntos sujetos al proceso de evaluación neutral, incluyendo el suministro oportuno de información completa y precisa para proveerles a los participantes relevantes, mediante el proceso de evaluación neutral, suficiente información, de manera confidencial, para negociar el reajuste de una obligación de deuda.

(u)     "Entidad gubernamental" significa Territorio, AFICA, AMA, cada Banco y cualquier subsidiaria del mismo, ADCC, COFINA, Sistema de Retiro, AFV, ACT, AEP, PFC, AAA, AEE, PRIDCO, AFI, AP, la UPR y cualquier otra entidad pública o instrumentalidad del Territorio designada por la Junta de Supervisión Fiscal como una entidad cubierta y sujeta a la supervisión de la Junta de Supervisión Fiscal.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 12 of 52

11

(v)     "Gobernador" significa el Gobernador del Territorio de conformidad con el Artículo IV de la Constitución de Puerto Rico.

(w)     "AFV" significa la Autoridad para el Financiamiento de la Vivienda de Puerto Rico.

(x)     "ACT" significa la Autoridad de Carreteras y Transportación Pública de Puerto Rico.

(y)     "Obligación de intereses" significa cualquier obligación que surja bajo, o que esté relacionada con el pago de intereses sobre cualquier instrumento de deuda.

(z)     "Parte interesada", para propósitos del Artículo 206, significa un síndico, un comité de acreedores, un acreedor afectado, un fiduciario de un contrato de bonos, un tenedor de bonos, o una aseguradora de obligaciones de deuda o un comité de aseguradoras de obligaciones de deuda.

(aa)    "AFM" significa Agencia de Financiamiento Municipal de Puerto Rico.

(bb)    "Proceso de evaluación neutral", para propósitos del Artículo 206, significa un medio alternativo para resolución de disputas o mediación entre el Territorio o una instrumentalidad del Territorio que se lleva a cabo de manera que promueva la toma de decisiones voluntaria y libre de coacción en el que cada participante hace selecciones libres e informadas de buena fe respecto al proceso y su resultado, y en el que el evaluador neutral hace sus mejores esfuerzos para ayudar a los participantes a llegar a una resolución satisfactoria de su disputa respecto a las obligaciones de deuda.

(cc)    "Evaluador neutral", para propósitos del Artículo 206, significa una persona imparcial y sin prejuicios, comúnmente conocida como un mediador, que asiste al Territorio o a una instrumentalidad del Territorio y a las partes interesadas a llegar a su propio acuerdo sobre asuntos relacionados con las obligaciones de deuda del Territorio o de una instrumentalidad del Territorio.

(dd)    "Junta de Supervisión Fiscal" o "JSF" significa la Junta de Supervisión Fiscal y Administración (Financial Oversight and Management Board) establecida para Puerto Rico al amparo de PROMESA.

(ee)    "AEP" significa la Autoridad de Edificios Públicos de Puerto Rico.

(ff)    "Persona" significa cualquier persona natural o entidad legal, incluyendo, pero sin limitarse, a cualquier agencia gubernamental, departamento, instrumentalidad, corporación pública, municipio, junta, oficina, comité o

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 13 of 52

12

dependencia, o cualquier individuo público o privado, firma, sociedad, sociedad por acciones, compañía de responsabilidad limitada, asociación o corporación organizada y existente bajo las leyes del Territorio, los Estados Unidos de América o cualquiera de sus estados, o de cualquier país extranjero, o cualquier combinación de los anteriores.

(gg) "PFC" significa Corporación para el Financiamiento Público de Puerto Rico.

(hh) "AAA" significa la Autoridad de Acueductos y Alcantarillados de Puerto Rico.

(ii) "AEE" significa la Autoridad de Energía Eléctrica de Puerto Rico.

(jj) "PRIDCO" significa la Compañía de Fomento Industrial de Puerto Rico.

(kk) "AFI" significa la Autoridad para el Financiamiento de Infraestructura de Puerto Rico.

(ll) "Obligación de principal" significa cualquier obligación que surja bajo, o que esté relacionada con el pago de intereses sobre cualquier instrumento de deuda, según puedan ser debidamente ajustados para tomar en cuenta el valor acumulado en el caso de los bonos de apreciación de capital o los bonos convertibles de apreciación de capital antes de la conversión, o el descuento o la prima sin amortizar de la emisión original.

(mm) "AP" significa la Autoridad de los Puertos de Puerto Rico.

(nn) "PROMESA" significa la Ley Federal Pub. L. 114-187 denominada *Puerto Rico Oversight, Management, and Economic Stability Act.*

(oo) "Deuda pública" significa cualquier obligación o evidencia de deuda del Territorio, o una entidad gubernamental, con el significado provisto en la Sección 2 del Artículo VI de la Constitución de Puerto Rico.

(pp) "Territorio" significa el Estado Libre Asociado de Puerto Rico según quedó constituido con arreglo a la Sección 1 del Artículo de la Constitución de Puerto Rico.

(qq) "UPR" significa la Universidad de Puerto Rico.

Artículo 104.-Política Pública

Es la política pública del Gobierno de Puerto Rico tomar todas las medidas requeridas para Puerto Rico establecer la responsabilidad fiscal necesaria dentro del Gobierno y sus instrumentalidades para satisfacer sus obligaciones y garantizar que se

provean aquellos servicios gubernamentales esenciales para la salud, seguridad y bienestar de los residentes de Puerto Rico. Además, es la política pública del Gobierno de Puerto Rico ejercer su poder de razón de Estado de una manera que reconozca la responsabilidad de satisfacer las obligaciones financieras del Gobierno de Puerto Rico y sus instrumentalidades, mientras continúa proveyendo servicios gubernamentales esenciales para la salud, seguridad y bienestar de los residentes de Puerto Rico a la luz de los limitados recursos disponibles del Gobierno de Puerto Rico y sus instrumentalidades.

Artículo 105.-Relación con las Disposiciones Constitucionales; Supremacía Sobre Otras Leyes

Esta Ley ha sido promulgada de acuerdo y de conformidad con la Constitución de Puerto Rico y conforme al poder de razón de Estado del Territorio y según se especifique otra cosa en esta Ley. En caso de que las disposiciones de esta Ley estén en conflicto con las disposiciones de cualquier otra ley, las disposiciones de esta Ley prevalecerán. La implementación de esta Ley está sujeta a los requisitos de la Constitución de Puerto Rico y PROMESA.

No obstante cualquier otra cosa en contrario, si un poder o responsabilidad fuera delegado en la Autoridad conforme a la Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, Ley 2-2017, esta Ley no debe interpretarse como que afecta, altera, revoca o de otro modo modifica dicha delegación. Además, una delegación de un poder o responsabilidad conforme a la Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal, Ley 2-2017, no limita o de otro modo restringe el ejercicio por parte del Gobernador de los poderes o responsabilidades que se le confieren al Gobernador por esta Ley o por otro modo.

Artículo 106.-Inmunidades

(a)     Excepto en la medida en que se pruebe mediante sentencia final y firme que ha incurrido en conducta dolosa para beneficio propio o en negligencia crasa que conlleve una indiferencia temeraria hacia sus deberes, ninguna persona incurrirá en responsabilidad civil, criminal o de otro tipo y, sin necesidad de notificación u orden adicional, será exonerada por acciones u omisiones en su capacidad y dentro de su autoridad en relación con, relacionadas con, que surjan bajo, o según permitido conforme a esta Ley, y asimismo por cualquier transferencia, venta o cesión de activos o retiro de fondos aprobado o llevado a cabo por una entidad gubernamental antes o después de la aprobación de esta Ley si dicha transferencia, venta, cesión o retiro de depósitos u otros fondos, según sea el caso, se declara por un tribunal en violación de esta Ley, la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, la Ley Núm. 22 de 24 de julio de 1985, según enmendada, los Artículos 1243, 1244 y 1249 del Código Civil de Puerto Rico, o alguna otra ley o disposición análoga o similar.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 15 of 52

14

(b)     Ninguna institución financiera o agente de la misma que provea servicios de compensación (clearing) u otro servicio financiero al Banco u otra entidad gubernamental conforme a cualquier acuerdo con el Banco o dicha entidad gubernamental incurrirá en responsabilidad civil, criminal o de otro tipo y, sin necesidad de notificación u orden adicional, será exonerada por acciones u omisiones relacionadas con dicho acuerdo, y asimismo por cualquier transferencia o retiro de depósitos u otros fondos hecho conforme a dicho acuerdo si dicha transferencia o retiro se declara por un tribunal en violación de esta Ley, la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, la Ley Núm. 22 de 24 de junio de 1985, según enmendada, o los Artículos 1243, 1244 y 1249 del Código Civil de Puerto Rico, cualquier regulación u orden ejecutiva emitida conforme a ésta o dichas leyes, o alguna otra ley o disposición análoga o similar.

(c)     Cualquier institución financiera en la que se deposite un cheque emitido por cualquier entidad del gobierno o que reciba cualquier otra instrucción de una entidad gubernamental para transferir fondos tendrá derecho a honrar dicho cheque o instrucción en el curso ordinario de sus operaciones bancarias sin tener que indagar si se ha cumplido con los requisitos de esta Ley o de cualquier orden ejecutiva emitida conforme a esta Ley. El Banco y las entidades gubernamentales serán los únicos responsables por el cumplimiento con cualquier disposición de esta Ley o cualquier otra regulación u orden ejecutiva emitida conforme a esta Ley que restrinja el uso de los fondos gubernamentales o la emisión de cheques u otras instrucciones relacionadas con los fondos gubernamentales depositados en instituciones financieras.

(d)     Cualquier acción presentada por negligencia crasa será desestimada con perjuicio si: (i) un demandado, como oficial, director, miembro de comité o profesional produce documentos que demuestren, con relación a cualquier acto u omisión objeto de la demanda, que dicho demandado recibió o descansó en la asesoría de expertos o recibió información sobre los hechos relevantes, participó en persona o por teléfono y deliberó de buena fe (ii) o si las acciones u omisiones que son la base de la demanda, acusación formal por un gran jurado o acusación no violan claramente un deber establecido del cual una persona razonable tendría conocimiento claro bajo las circunstancias particulares.

Artículo 107.-Idioma que Prevalece

Esta Ley se adoptará en los dos idiomas oficiales de Puerto Rico, el español e inglés. Si en la interpretación o aplicación de esta Ley surgiere algún conflicto entre el texto en inglés y el texto en español, prevalecerá el texto en inglés. De igual manera, toda orden ejecutiva emitida al amparo de esta Ley se adoptará y publicará en los dos idiomas oficiales de Puerto Rico, el español e inglés. Si en la interpretación o aplicación de dichas órdenes

ejecutivas surgiere algún conflicto entre el texto en inglés y el texto en español, prevalecerá el texto en inglés.

## CAPÍTULO 2.-PODERES DE EMERGENCIA FINANCIERA

Artículo 201.-Determinación sobre los Poderes de Emergencia Financiera

La Asamblea Legislativa ha determinado que dada la continua emergencia financiera del Territorio, durante el Periodo de Emergencia, el Gobernador debe estar autorizado a ejercer los poderes conferidos al Gobernador bajo este Artículo para designar los servicios que proveen el Territorio y sus instrumentalidades como servicios esenciales o como servicios que no son servicios esenciales y a utilizar los recursos disponibles para asegurar que se satisfagan las obligaciones del Territorio y sus instrumentalidades, al mismo tiempo que se reconoce la necesidad de salvaguardar los servicios esenciales de salud, seguridad y bienestar de los residentes de Puerto Rico.

Artículo 202.-Mantener los Servicios Esenciales

Durante el periodo de emergencia, el Gobernador puede emitir órdenes ejecutivas para designar la prioridad con que se usarán los recursos disponibles para pagar por los servicios esenciales que el Gobernador estime necesario para salvaguardar la salud, seguridad y bienestar de los residentes de Puerto Rico, a la vez que se reconocen las obligaciones de deuda del Territorio y sus instrumentalidades.

Artículo 203.-Pago por Servicios Esenciales y Prioridades de Pago

(a)     Durante el Periodo de Emergencia, el Gobernador deberá pagar el servicio de la deuda en la medida: (a) de lo posible luego de que todos los servicios esenciales del Territorio hayan sido provistos; o (b) en que la Junta de Supervisión Fiscal, u otra junta creada bajo las leyes federales, así lo haya ordenado.  En la eventualidad de que las disposiciones de esta Ley estén en conflicto con las disposiciones de otras leyes, las disposiciones de esta Ley prevalecerán.

(b)     Durante el Periodo de Emergencia, el Gobernador puede emitir órdenes ejecutivas para requerir el uso de los recursos disponibles para que se deposite en una cuenta bajo el control exclusivo de la Autoridad (lockbox account) y pagar por servicios esenciales según el Gobernador estime necesario para proteger la salud, seguridad y bienestar de los residentes de Puerto Rico. El Gobernador puede tomar cualquiera y todas las acciones que estime razonables y necesarias para preservar la capacidad del Territorio y de una de sus instrumentalidades para continuar brindando servicios esenciales a los residentes de Puerto Rico.

(c)   Durante el Periodo de Emergencia, el Gobernador puede emitir  órdenes ejecutivas  que establezcan normas de prioridad para el desembolso de fondos públicos cuando los recursos disponibles para el año fiscal sean insuficientes para cubrir las asignaciones hechas para ese año fiscal.

(d)   Durante el Periodo de Emergencia, no obstante lo establecido en el Artículo 4(c) de la Ley Núm. 147 de 18 de junio de 1980, según enmendada, el Gobernador puede priorizar los servicios y gastos descritos en el Artículo 4(c)(3) a un nivel de prioridad más alto que el listado en el Artículo 4(c).

(e)   Durante el Periodo de Emergencia, el Gobernador puede emitir las órdenes ejecutivas que estime necesarias o recomendables para asegurar el pago de las obligaciones de deuda del Territorio o de una instrumentalidad del Territorio.

Artículo 204.-Medidas de Emergencia para el Banco

(a)   Durante el Periodo de Emergencia, el Gobernador puede tomar cualesquiera y todas la acciones que estime razonables y necesarias para permitir al Banco continuar llevando a cabo sus operaciones.

(b)   Para los propósitos de este Artículo, las acciones que son "razonables y necesarias" incluyen, sin limitación, todas las siguientes—

    i.   prescribir condiciones o restricciones para la manera de conducir los negocios del Banco, incluyendo otorgar dispensas para el cumplimiento, total o parcial, de cualquier requisito prescrito por otras leyes aplicables, incluyendo aquellas que requieran al Banco mantener reservas de depósitos sobre ciertos límites;

    ii.   ordenar la limitación, posposición o suspensión de cualquier pago, total o parcial, de una obligación a tenor con los términos que el Gobernador prescriba para atender las necesidades de liquidez del Banco o facilitar la capacidad del Banco para llevar a cabo sus operaciones;

    iii.   suspender—

        A.   los pagos de obligaciones garantizadas por el Banco;

        B.   pagos de cualquier carta de crédito; y

        C.   cualquier obligación o compromiso de aprobar préstamos o de extender fondos o crédito;

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 18 of 52

17

iv.  tomar cualquier acción respecto al Banco según dispuesta en la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, o la Ley Núm. 22 de 24 de julio de 1985, según enmendada, según aplique; y

v.  delegar en el Banco, su Junta, o sus empleados la autoridad para tomar acciones para cumplir con este Artículo.

(c)  Si se establece cualquier restricción sobre los desembolsos del Banco a tenor con el párrafo (a) de este Artículo,

i.  el Banco no debe desembolsar ningún préstamo o facilidad de crédito a menos que sea autorizado por el Gobernador;

ii.  el Banco deberá honrar las solicitudes de retiro o transferencia de cualquier depósito, incluso mediante cheque u otros medios, de una agencia, corporación pública o instrumentalidad del Territorio (que no sean las listadas en el inciso (c)(iii) de este párrafo) según puedan ser autorizadas por el Gobernador de tiempo en tiempo;

iii.  sujeto a la disponibilidad de fondos y a los desembolsos agregados establecidos por el Gobernador, el Banco debe honrar cualquier solicitud para retirar o transferir cualquier depósito en su custodia hecha por, o solicitar que se honre cualquier cheque emitido por, la Rama Legislativa, la Rama Judicial, la UPR, la Oficina del Contralor, la Oficina del Contralor Electoral, la Comisión Estatal de Elecciones, la Oficina de Ética Gubernamental, el Panel sobre el Fiscal Especial Independiente, o un municipio del Territorio; siempre y cuando un oficial autorizado de una entidad listada en este inciso certifique, junto con documentación de apoyo, que los fondos serán usados para el pago de servicios esenciales.

(d)  Salvo según dispuesto en el párrafo (e) de este Artículo, si se establece alguna restricción a los desembolsos del Banco al amparo de este Artículo, entonces cualquier valor desembolsado a un acreedor luego de que dicha restricción sea impuesta deberá ser restado del valor de cualquier distribución que dicho acreedor tiene derecho a recibir, a partir de la primera fecha de la restricción, si el Banco es subsecuentemente liquidado o se le nombra un síndico.

(e)  Los desembolsos que el Banco haga antes o durante el Periodo de Emergencia en el curso ordinario de sus operaciones, incluyendo desembolsos para cubrir gastos de la naturaleza descrita en el Artículo 12, Sección (A)(2) o (3) de la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, o para pagar por bienes y servicios prestados al Banco, deberán, para evitar dudas, en cada caso, estar exentos del Artículo 17 de la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 19 of 52

18

(f)     Un cheque escrito en violación de esta Ley o una orden ejecutiva emitida a tenor con esta Ley será nulo, y cualquier persona que intencionalmente escriba un cheque para retirar todo o una porción sustancial del balance de sus fondos depositados en violación a este Artículo será culpable de un delito grave sancionable con una pena de cárcel de hasta un (1) año o una multa de no menos de veinticinco mil dólares ($25,000), o ambas penas a discreción del Tribunal.

Artículo 205.-Emisión de Evidencia de Deuda por las Entidades Gubernamentales

Nada en esta Ley prohíbe o evita que cualquier entidad gubernamental, sea o no durante el Periodo de Emergencia, pueda emitir a tenedores que consienten evidencia de deuda relacionada con cualquier deuda, cualquier instrumento de deuda u otra evidencia de deuda como pago, renovación o refinanciamiento de o en intercambio de la obligación de deuda de dicho tenedor que consiente, conforme a términos que por lo demás cumplan con esta Ley y con cualquier otra ley aplicable, incluyendo, pero sin limitarse a PROMESA. Se dispone, además, que dicha evidencia no puede constituir y no constituirá emisión de deuda nueva conforme a esta Ley.

Artículo 206.-Poderes de Emergencia Adicionales del Gobernador

(a)     Durante el Periodo de Emergencia, esta Ley confiere al Gobernador el poder para nombrar síndicos a fin de rectificar la emergencia financiera declarada por esta Ley, tomar las acciones necesarias para satisfacer las obligaciones de deudas del Territorio y sus instrumentalidades y actuar para salvaguardar la prestación de servicios esenciales; sin menoscabar los deberes y facultades de la Asamblea Legislativa, el Gobernador, junto a la Autoridad, pueden tomar las siguientes acciones según estimen necesario o recomendable para rectificar la emergencia financiera, incluyendo pero sin limitarse a:

i.      analizar los factores y circunstancias que contribuyen a la emergencia financiera y tomar medidas para corregir dichos factores y circunstancias;

ii.     limitar los gastos de fondos asignados;

iii.    emitir órdenes ejecutivas u otras directrices relacionadas con el desembolso o disposición de fondos en poder del Banco u otra entidad gubernamental;

iv.     requerir y aprobar o desaprobar, o enmendar o revisar, un plan para el pago de las obligaciones de deuda del Territorio y sus instrumentalidades;

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 20 of 52

19

v.   requerir y prescribir la forma de los informes especiales que deberán hacer el Territorio o una instrumentalidad del Territorio a los acreedores, Junta de Supervisión Fiscal y a la Asamblea Legislativa;

vi.   examinar todos los récords y libros contables de una entidad gubernamental y requerir la comparecencia de testigos y la producción de libros, papeles, contratos y otros documentos pertinentes para el análisis de la condición financiera de una agencia del gobierno;

vii.   aprobar o desaprobar cualquier contrato de ejecución futura, gasto o préstamo, la creación de cualquier puesto nuevo o que se llene cualquier puesto vacante en una entidad del gobierno dentro de la Rama Ejecutiva;

viii.   revisar y aprobar nóminas u otros cobros reclamados a una entidad del gobierno dentro de la Rama Ejecutiva previo al pago;

ix.   no obstante cualquier requisito de nivel mínimo de personal que pueda ser aplicable, establecer e implantar niveles de personal para una entidad gubernamental de la Rama Ejecutiva;

x.   rechazar, modificar o dar por terminado uno o más términos o condiciones de un contrato de ejecución futura existente de una entidad gubernamental dentro de la Rama Ejecutiva;

xi.   actuar como, o designar a un agente único de una entidad gubernamental dentro de la Rama Ejecutiva para las negociaciones de convenios colectivos con empleados o sus representantes y aprobar cualquier contrato o acuerdo en nombre de la entidad gubernamental;

xii.   nombrar, dirigir, supervisar y remover administradores, incluyendo los jefes de entidades gubernamentales dentro de la Rama Ejecutiva; se podrá remover los administradores cuyos puesto son de confianza exceptuando aquellos que tengan un nombramiento a término. Disponiéndose que cuando el jefe de una entidad gubernamental sujeto al consejo y consentimiento del Senado sea removido dicha acción será notificada no más tarde de tres (3) días laborables al Senado de Puerto Rico;

xiii.   emplear o contratar, en nombre y a expensas de una entidad del gobierno de la Rama Ejecutiva, auditores y otro personal técnico;

xiv.   contratar una o más personas como inspectores generales locales para una o más entidades gubernamentales dentro de la Rama Ejecutiva para asegurar la integridad, economía, eficiencia y efectividad de las

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 21 of 52

20

operaciones de las entidades gubernamentales haciendo investigaciones significativas y precisas, y auditorías forenses, para detectar y prevenir derroches, fraudes y abusos;

xv.  vender, alquilar, traspasar, asignar o de otro modo usar o transferir los activos, y obligaciones, de una entidad gubernamental dentro de la Rama Ejecutiva, si la venta, alquiler, traspaso, asignación, uso o transferencia no pone en peligro la salud, seguridad y bienestar de los residentes de Puerto Rico o afecta inconstitucionalmente un bono, pagaré, valor u obligación legal no impugnada de una entidad del gobierno. Estas acciones solo se podrán realizar sujeto al ordenamiento jurídico vigente;

xvi.  autorizar que una entidad gubernamental dentro de la Rama Ejecutiva tome dinero en préstamo. Estas acciones solo se podrán realizar sujeto al ordenamiento jurídico vigente;

xvii.  aprobar o desaprobar la emisión de obligaciones de deuda de una entidad gubernamental dentro de la Rama Ejecutiva. Estas acciones solo se podrán realizar sujeto al ordenamiento jurídico vigente;

xviii.  entrar en un proceso de evaluación neutral con una o más de las partes interesadas respecto a una obligación de deuda del Territorio o una instrumentalidad del Territorio, bajo el cual los participantes, mediante un proceso acordado mutuamente, seleccionen un evaluador neutral para supervisar el proceso de resolución neutral y facilitar discusiones y negociaciones de buena fe entre los participantes, en un esfuerzo por resolver sus disputas relacionadas con la obligación de deuda y bajo el cual el evaluador neutral pueda hacer recomendaciones para una transacción o plan de reajuste. Se dispone, sin embargo, que el uso de un proceso de evaluación neutral conforme a este subpárrafo (a) (xviii) no restringe o de otro modo prohíbe otras negociaciones o acuerdos con una parte interesada en relación con una obligación de deuda del Territorio o una instrumentalidad del Territorio;

xix.  tomar las acciones necesarias para garantizar el cumplimiento con la Ley Orgánica de la Oficina de Gerencia y Presupuesto, Ley Núm. 147 de 18 de junio de 1980, según enmendada, que no sean inconsistentes con las disposiciones de esta Ley;

xx.  requerirle a un oficial, empleado, agente o contratista del Territorio o de una instrumentalidad del Territorio que provea a la Junta de Supervisión Fiscal copias, sean escritas o en medio electrónico, de los

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 22 of 52

21

récords, documentos, información o datos que la Junta de Supervisión Fiscal pueda requerir;

xxi. asegurar el pago y administración de impuestos oportunos y eficientes mediante la adopción de tecnologías electrónicas de radicación de informes, pagos y auditorías;

xxii. prevenir una transferencia de propiedad por parte de una instrumentalidad del Territorio prohibida bajo la Sección 201(b)(1)(M) y 407(a) de PROMESA;

xxiii. rescindir una autorización aprobada por la Rama Ejecutiva o la Rama Legislativa luego del 4 de mayo de 2016 y antes de la fecha de efectividad de esta Ley para la venta pendiente de ejecutarse o transferencia de activos y pasivos de una entidad gubernamental dentro de la Rama Ejecutiva, si la venta o transferencia pone en peligro la salud, seguridad y bienestar de los residentes de Puerto Rico o afecta un bono, pagaré, valor u obligación legal no impugnada de una entidad del gobierno; y

xxiv. los poderes adicionales conferidos al Gobernador no menoscabarán los deberes y facultades de la Asamblea Legislativa.

Artículo 207.-Controles Administrativos y Financieros

(a) Durante el Periodo de Emergencia, y sin que se interprete este Artículo como una limitación a los poderes del Gobernador, el Gobernador ejercerá control de supervisión general sobre las funciones y actividades de todas las entidades gubernamentales dentro de la Rama Ejecutiva.

(b) Sin que se interprete este Artículo como una limitación a los poderes del Gobernador, en el ejercicio del control de supervisión general dispuesto en el párrafo (a), el Gobernador y/o la Autoridad pueden hacer todo, sin limitarse a lo siguiente, sujeto a las limitaciones contenidas en las Secciones 201(b)(1)(M) y 407 de PROMESA;

i. instruir a una entidad gubernamental dentro de la Rama Ejecutiva a reducir gastos mediante la implantación de eficiencias administrativas;

ii. imponer límites sobre gastos contractuales de entidades gubernamentales dentro de la Rama Ejecutiva;

iii. ordenar la prescripción o el reembolso de asignaciones para múltiples años no gastadas del fondo general dentro de la Rama Ejecutiva;

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 23 of 52

22

iv.   prohibir el establecimiento de nuevos programas o la expansión de programas existentes por parte de una entidad gubernamental dentro de la Rama Ejecutiva;

v.   emitir directrices para la distribución de asignaciones;

vi.   transferir los fondos asignados de un programa a otro en una misma entidad gubernamental dentro de la Rama Ejecutiva sin que se trastoque la partida asignada al pago de nómina, costos relacionados y utilidades; e

vii.   intervenir en cualquier asunto referente a las funciones y actividades bajo el párrafo (a).

Artículo 208.-Implementación y Órdenes Ejecutivas

(a)   Para propósitos de este Capítulo, cada entidad gubernamental dentro de la Rama Ejecutiva estará bajo la supervisión del Gobernador salvo que se disponga lo contrario en la Constitución de Puerto Rico.   El Gobernador deberá acordar todos los asuntos de negocio necesarios con los oficiales de las entidades gubernamentales dentro de la Rama Ejecutiva y puede requerir información por escrito de todos los oficiales ejecutivos y administrativos de las entidades gubernamentales dentro de la Rama Ejecutiva en relación con el cumplimiento de este Capítulo y con cualquier asunto relacionado con los deberes de dichos oficiales dentro de sus respectivas oficinas.

(b)   El Gobernador puede iniciar procedimientos judiciales en nombre del Territorio para implementar el cumplimiento de cualquier mandato constitucional o requerimiento de esta Ley, o para restringir violaciones de cualquier mandato, deber o derecho constitucional, o requerimiento de esta Ley por parte de cualquier oficial de una entidad gubernamental dentro de la Rama Ejecutiva.

(c)   El Gobernador estará facultado a inquirir sobre la condición y administración de cualquier oficina pública de una entidad gubernamental dentro de la Rama Ejecutiva y sobre los actos de cualquier oficial público de una entidad gubernamental dentro de la Rama Ejecutiva.

(d)   El Gobernador puede emitir órdenes ejecutivas para implantar y requerir el cumplimiento con este Capítulo. Una orden ejecutiva emitida al amparo de esta Sección es vinculante para los oficiales, empleados, agentes y contratistas de una entidad gubernamental dentro de la Rama Ejecutiva.   Los oficiales de una entidad gubernamental dentro de la Rama Ejecutiva deberán tomar y dar las directrices para que se tomen las acciones necesarias y recomendables

para cumplir con una orden ejecutiva emitida bajo esta Sección aplicable a la entidad gubernamental.

(e)  El Gobernador puede enmendar, rescindir o reemplazar una orden ejecutiva emitida bajo esta Ley o la anterior Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico, las que continuarán en efecto con toda fuerza y vigor hasta que sean enmendadas, rescindidas o sustituidas.

(f)  Para implantar el cumplimiento con este Capítulo o con una orden ejecutiva emitida al amparo de este Capítulo, el Gobernador puede iniciar procedimientos judiciales en nombre del Territorio.

(g)  Los poderes adicionales conferidos al Gobernador no menoscabarán los deberes y facultades de la Asamblea Legislativa.

Artículo 209.-Delegación

El Gobernador puede delegar en la Autoridad mediante Orden Ejecutiva cualquier poder o responsabilidad incluida en esta Ley, en la medida en que tal poder o facultad no haya sido ya delegada en la Autoridad mediante esta Ley o conforme a la Ley 2-2017, todo lo cual continuará en pleno vigor . Una delegación adicional de poder o responsabilidad en la Autoridad no limita o de otro modo restringe el ejercicio por parte del Gobernador de los poderes y responsabilidades que se le confieren al Gobernador por esta Ley o de otro modo. Los poderes adicionales conferidos al Gobernador no menoscabarán los deberes y facultades de la Asamblea Legislativa.

Artículo 210.-Contratación de empleados gubernamentales y otros profesionales; Exención de otras leyes

(a)  En cualquier momento durante el Periodo de Emergencia, las siguientes leyes o disposiciones de las mismas no aplicarán a las contrataciones temporeras o permanentes hechas por parte del Gobernador, el Departamento de Hacienda, AFI, cualquier subsidiaria del Banco o la Autoridad, de cualquier individuo que sea empleado del Banco o de cualquier otra entidad gubernamental para trabajar en la Oficina del Gobernador, el Departamento de Hacienda, AFI, o cualquier subsidiaria del Banco o la Autoridad respecto a asuntos relacionados con la reestructuración de cualquier obligación de deuda o ajuste de cualquier obligación de deuda, la implantación de transacciones de manejo de pasivos para las obligaciones de deuda, manejo de asuntos fiscales del Territorio o cualquier entidad gubernamental, o cualquier asunto que de otra manera se relacione con las funciones u operaciones hechas o llevadas a cabo por el Banco al amparo de la Ley 17 de 23 de septiembre de 1948, según enmendada, o de la Ley 272 del 15 de mayo de 1945, según enmendada:

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 25 of 52

24

i.    Ley 184-2004, según enmendada, conocida como "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico";

ii.   Ley 197-2002, según enmendada, conocida como "Ley del Proceso de la Transición del Gobierno";

iii.  Ley 3-2017;

iv.   Los incisos (b) y (c) del Artículo 4.6 de la Ley 1-2012, según enmendada, conocida como "Ley de Ética Gubernamental de Puerto Rico de 2011";

v.    Ley 103-2006, según enmendada, conocida como "Ley para implantar la Reforma Fiscal del Gobierno del Estado Libre Asociado de Puerto Rico";

vi.   Plan 3-2011, según enmendado, conocido como "Plan de Reorganización de la Administración de Servicios Generales; y

vii.  La Ley 78-2011, según enmendada.

(b)   El Gobernador, el Departamento de Hacienda, AFI, o cualquier subsidiaria del Banco o la Autoridad podrán emplear, contratar, u honrar obligaciones existentes bajo, o asumir, contratos existentes del Banco o de cualquier entidad gubernamental con consultores y empleados esenciales, incluyendo asesores legales y financieros, fueran o no los salarios u honorarios incurridos antes de la fecha en que se hayan asumido, y podrán emplear dichos consultores y empleados esenciales para asesorar al Gobernador, al Banco o a cualquier entidad gubernamental en asuntos relacionados con la reestructuración o el ajuste de cualquier obligación de deuda, implantar transacciones de manejo de pasivos para las obligaciones de deuda o para la administración de los asuntos fiscales del Territorio y de cualquier entidad gubernamental, o cualquier asunto relacionado con las funciones y operaciones hechas o llevadas a cabo por el Banco al amparo de la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, o de la Ley Núm. 272 de 15 de mayo de 1945, según enmendada. El Gobernador, el Departamento de Hacienda, AFI, o cualquier subsidiaria del Banco o la Autoridad, según sea aplicable, deberá someter a la Oficina de Gerencia y Presupuesto un estimado del total de costos y gastos relacionados con los contratos y obligaciones que incurrirá o asumirá de acuerdo con este Artículo para lo que resta del Año Fiscal 2016-2017. Por la presente se ordena al Secretario de Hacienda y el Director de la Oficina de Gerencia y Presupuesto a identificar, del presupuesto del Año Fiscal 2016-2017, los fondos necesarios para cubrir dichos gastos, o a transferir a AFI, cualquier subsidiaria del Banco o la

Autoridad suficientes fondos para cubrir dichos gastos. Comenzando en el Año Fiscal 2017-2018, dichos gastos serán pagados mediante asignaciones hechas por la Asamblea Legislativa. Las leyes y disposiciones listadas en los incisos (a)i hasta vii de este Artículo no aplicarán a los casos en que se contraten o se asuman obligaciones al amparo de este párrafo.

Artículo 211.-Paralización Automática

Mientras la paralización en virtud de PROMESA esté en vigor, cualquier acción que pudiera ser requerida por PROMESA en un tribunal federal, estatal o de Puerto Rico también es requerida bajo esta Ley, y cualquier acción similar que surja de, o se relacione con esta Ley es igualmente requerida mientras la paralización en virtud de PROMESA esté en vigor.

CAPÍTULO 3.-DEROGACIÓN DE LAS DISPOSICIONES DE LA LEY DE MORATORIA

Artículo 301.-Los capítulos 1 y 2 de la Ley 21-2016, según enmendada, quedan por la presente derogados; y se reenumeran los existentes Capítulos 3, 4 y 5 como 1, 2 y 3.

CAPÍTULO 4.-ENMIENDA A LA LEY ORGÁNICA DEL BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO

Artículo 401.-Para añadir un nuevo Artículo 23 a la Ley Núm. 22 de 24 de julio de 1985, según enmendada, conocida como "Ley Orgánica del Banco de Desarrollo Económico", para que lea como sigue:

"ARTÍCULO 23.-IDIOMA QUE PREVALECE

Si en la interpretación o aplicación de las enmiendas a esta Ley promulgadas por la Ley 21-2016 surgiere algún conflicto entre el texto en inglés y el texto en español, prevalecerá el texto en inglés."

Artículo 402.-Se renumera el Artículo 23 de Ley Núm. 22 de 24 de julio de 1985, según emendadada, como Artículo 24.

CAPÍTULO 5.-SEPARABILIDAD Y VIGENCIA

Artículo 501.-Separabilidad

Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 27 of 52

26

misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta ley en la mayor medida posible, aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. Esta Asamblea Legislativa hubiera aprobado esta Ley sin importar la determinación de separabilidad que el Tribunal pueda hacer.

Artículo 502.-Vigencia

Esta Ley entrará en vigor inmediatamente después de su aprobación.

# EXHIBIT 12B

**English version of the Puerto Rico Financial Emergency and Fiscal Responsibility Act**.

## I.      STATEMENT OF INTENT

The 18th Legislative Assembly has convened as Puerto Rico is in the midst of a continuing and systemic financial and economic crisis. On June 30, 2016, President Barack Obama signed into law the Puerto Rico Oversight, Management, and Economic Stability Act, Public Law 114-187 (PROMESA).   PROMESA was enacted pursuant to Section 3 of Article IV of the United States Constitution, which provides Congress the power to dispose of and make all needful rules and regulations for territories.   PROMESA established a Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") to provide a method for the Government of Puerto Rico and its instrumentalities to achieve fiscal responsibility and access to capital markets. On October 30, 2016, the Oversight Board designated Puerto Rico, the Employees Retirement System, the Judiciary Retirement System, the Teachers Retirement System, the University of Puerto Rico and twenty-one public corporations of Puerto Rico as "covered entities" subject to oversight under PROMESA.   Section 405(b) of PROMESA also imposes a temporary stay of litigation and claims against Puerto Rico and its instrumentalities for various matters (as the same may be extended under PROMESA, the "Enactment Stay"), with the hope that the Government of Puerto Rico, on its own behalf and on behalf of its instrumentalities, will enter into voluntary negotiations with its creditors to reorganize and settle the repayment of its debt obligations, while simultaneously embarking on a responsible restructuring of the Government of Puerto Rico and its instrumentalities that realigns the essential services required for the health, safety, and welfare of the residents of Puerto Rico with the timely repayment of its debt obligations.   Pursuant to PROMESA, ongoing fiscal planning, budgeting, legislative, and executive action of Puerto Rico, as well as consensual and non-

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 30 of 52

27

consensual debt restructurings and the issuance, guarantee, exchange, modification, repurchase, or redemption of debt, is subject to oversight.

This Act, to be known as the Puerto Rico Financial Emergency and Fiscal Responsibility Act (the "Act"), is intended to facilitate and encourage a voluntary negotiation process under PROMESA between the Governor and/or the Puerto Rico Fiscal Agent and Financial Advisory Authority, on behalf of the Government of Puerto Rico, and the creditors of the Government of Puerto Rico and its instrumentalities. This Act authorizes the Government of Puerto Rico, within the parameters established by PROMESA, to designate certain services necessary for the health, safety and welfare of the residents of Puerto Rico and provided by the Government of Puerto Rico and its instrumentalities as "essential services", in accordance with the Constitution of Puerto Rico.

In passing this Act, this Legislative Assembly is removing several significant and contentious obstacles to voluntary negotiations with the Government's creditors. Specifically, this Act amends and repeals portions of the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Act 21-2016, as amended by Act 40-2016 and Act 68-2016 (the "Moratorium Act"). The Moratorium Act, and executive orders issued by the Governor under the Moratorium Act (the "Executive Orders"), permitted the Government to withhold the timely payment of its obligations at a point in time before the enactment of PROMESA. The enactment of PROMESA has, however, established processes and timelines for the resolution of the Government's financial emergency that preempt and supersede provisions of the Moratorium Act. Through PROMESA and the establishment of the Oversight Board, Puerto Rico has been given tools to establish fiscal discipline, restructure its debt, and restore opportunity to the Territory.

The enactment of the Moratorium Act and the issuance of certain of the Executive Orders also has resulted in significant litigation initiated by creditors of the Government of Puerto Rico and its instrumentalities. This litigation is costly and both consumes resources needed to provide for the health, safety and welfare of the residents of Puerto Rico, and the economic development of the Territory. Also impedes voluntary negotiations with creditors. With the establishment of the Oversight Board, and requirements in PROMESA for the Oversight Board to prepare a fiscal plan in accordance with PROMESA, it is critical that this Legislative Assembly and the Government of Puerto Rico quickly turn their attention to working with the Oversight Board to ensure a voluntary negotiation and settlement process (rather than one imposed on the Territory) for the Government of Puerto Rico and its creditors. Without first affording an opportunity for the Government of Puerto Rico to engage in meaningful attempts to reach its own consensual resolution with its creditors, necessary for the health, safety and welfare of the residents of Puerto Rico PROMESA mandates that the Oversight Board impose a resolution on the Territory.

Section 204(c) (3) of PROMESA also grants the Oversight Board authority to rescind any laws enacted between May 4, 2016 and September 30, 2016 (the latter date being the date when the Oversight Board and Oversight Board Chair assumed office), that either

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 31 of 52

28

permit the transfer of any funds or assets outside the ordinary course of business or that are inconsistent with Constitution of Puerto Rico or the laws of Puerto Rico (the "Rescission Period"). This Legislative Assembly and Puerto Rico's new Governor, acting in good faith and with the intent to facilitate Government-led negotiations with the creditors of the Government of Puerto Rico and its instrumentalities, contend that it is in Puerto Rico's best interests to rescind laws inconsistent with PROMESA that impede a voluntary negotiation process with creditors of the Government of Puerto Rico and its instrumentalities. As a result, this Act does the following: (i) repeals significant portions of the Moratorium Act; and (ii) suspends or cancels, or both, all special appropriations not budgeted in the current fiscal year that may have been multi-year authorizations from prior fiscal years.

According to data provided by the Treasury Department, Puerto Rico suffers an economic contraction with a 14.6% decline in its Gross State Product (real GSP), and an additional 3% contraction is forecasted for the next two years. For years, the Government has been operating with a structural deficit that has been financed with bond issues and loans from the Government Development Bank. For more than one year, the Government has lacked liquidity and has been using tax refunds, payments to suppliers, government pension moneys, and intra-government loans as substitute for liquidity sources.

Access to the financial information of the Government, as well as the preparation of adequate forecasts, have been affected by a fragmented government structure and obsolete government systems. Revenues are consistently overestimated and are continuously decreasing despite the fact that multiple new taxes were levied. As of May 1, 2016, the Government Development Bank defaulted on its bonds and is no longer fulfilling its role of liquidity provider. Puerto Rico's obligations portfolio totals $66 billion and includes 18 different issuers, which are in a precarious financial situation. Debt service averages $3.5 billion and consumes more than one fourth of the revenue sources. The retirement systems are practically insolvent with a $50 billion dollar actuarial deficit. The foregoing is exacerbated by the population decrease caused by a migration wave that began in 2006 and has become one of the challenges to steering Puerto Rico towards recovery.

In view of this dismal picture, it is time to roll up our sleeves and work very hard for the wellbeing of Puerto Rico. It is our job to build a new Puerto Rico by implementing a public policy and administration that no longer improvises or manages finances from one year to the next, but rather starts addressing the long-term revenue/expenditure imbalance. Our commitment, as stated in our Plan for Puerto Rico, is to address these situations in a responsible manner and restore the credibility of our Island. We have to look into the future and anticipate these challenges instead of simply surviving from one crisis to the next. The leaders and officers of the government components of Puerto Rico must focus on balancing revenue and expenditure, reducing the level of government intervention in the economy of Puerto Rico and creating a competitive environment for business, where good faith prevails and local and foreign investors as well as business owners can lead the way toward economic recovery. The politics of the past led the United States Congress to enact PROMESA, delegating in a Financial Oversight Board the power

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 32 of 52

29

to work with the Government of Puerto Rico to get us out of the crisis we are facing. In this respect, on December 20, 2016, the Oversight Board requested as a priority to bring forth a plan and commitment to implement major changes addressed at:

- o Restoring economic growth and create a more competitive economy. In the short-term, these changes should include liberalizing the labor market and social assistance programs, lowering the cost of energy, rationalizing and optimizing taxation and streamlining the permitting processes to enable investment.
- o Restructuring the Government to achieve balanced budgets while preserving essential services for the people of Puerto Rico.
- o Restructuring pension systems pursuant to PROMESA and re-establishing access to the capital markets.

For these reasons, it is essential to bring about unprecedented changes that will make the Government more efficient and fiscally responsible. As a matter of fact, the Plan for Puerto Rico, which the People of Puerto Rico endorsed on November 8, 2016, includes measures to achieve fiscal responsibility and grow the economy of the Island.

II.    Background.

A.    Passage of Moratorium Act

On April 6, 2016, then-Governor Alejandro García Padilla (Governor García Padilla) signed into law the Moratorium Act. When adopting the Moratorium Act, the 17th Legislative Assembly made certain findings, as reflected in Section 108 of the Moratorium Act, that the Government should prioritize the payment of essential services over debt service. The Moratorium Act was enacted at a point in time when federal congressional action to address Puerto Rico's financial crisis had not yet been completed.

The Moratorium Act had four primary objectives.  The first, contained in Chapter 2 of the Moratorium Act, authorized the Governor to (i) declare a moratorium on debt service payments for a temporary period for the Government of Puerto Rico, the Government Development Bank of Puerto Rico (GDB), the Economic Development Bank of Puerto Rico (EDB), or any of the other instrumentalities of the Government of Puerto Rico, and (ii) stay creditor remedies that might result from the moratorium. The second objective, contained in Chapters 3 and 4 of the Moratorium Act, amended GDB's Enabling Act to give GDB options and tools to address its own financial difficulties.  These amendments (a) modernized GDB's Organic Act related to receivership of GDB and (b) authorized the creation of a temporary "bridge" bank to carry on certain of GDB's functions and to honor deposits. The third objective, contained in Chapter 5 of the Moratorium Act, amended the EDB's Enabling Act to modernize its receivership provisions. The fourth objective, contained in Chapter 6 of the Moratorium Act, created the Puerto Rico Fiscal and Financial Advisory Authority. The new Administration enacted a the law to repealed Chapter 6 of Act 21-2016, and created a new Authority, with broad

powers, known as the Puerto Rico Fiscal Agency and Financial Advisory Authority, Act 2-2017.

B.   State of Emergency Declared for Commonwealth and Certain Governmental Entities

Following enactment of the Moratorium Act, Governor García Padilla issued various executive orders pursuant to authority granted under the Moratorium Act. As part of the Executive Orders, Governor García Padilla declared a state of emergency for the Commonwealth (EO 2016-30); GDB (EO 2016-10); the Puerto Rico Infrastructure Finance Authority (PRIFA) (EO 2016-14); the Highway and Transportation Authority (HTA) (EO 2016-17); the Puerto Rico Public Building Authority (PBA) (EO 2016-30); the Puerto Rico Metropolitan Bus Authority (AMA) (EO 2016-30); the Puerto Rico Convention Center District Authority (CCDA) (EO 2016-31); the Employees Retirement System of the Government of the Commonwealth of PR and its Instrumentalities (ERS) (EO 2016-31); the Puerto Rico Industrial Development Company (PRIDCO) (EO 2016-31); the University of Puerto Rico (UPR) (EO 2016-31); and the Puerto Rico Public Finance Corporation (PFC) (EO 2016-31). Executive Orders (EO-2016-17 and EO 2016-29) exclude the Puerto Rico Electric Power Authority (PREPA) from the Moratorium Act's coverage.

The repeal of portions of the Moratorium Act, including those providing for emergency periods and a stay of litigation, should not expose the Government to more litigation from creditors. Section 405 of PROMESA affords a temporary stay of litigation to facilitate voluntary negotiations between the Government and its creditors. By repealing the emergency periods and litigation stay under the Moratorium Act, this Legislative Assembly and Governor are signaling their desire to engage in voluntary negotiations with the creditors of the Government of Puerto Rico and its instrumentalities instead of spending more resources and time litigating procedural motions that are unproductive to facilitating a fair settlement and restructuring and to addressing the dire need for economic growth and for the effective and efficient services for the people of the Territory.

CHAPTER 1.-GENERAL PROVISIONS

Section 101.-Short Title

This Law shall be known and may be cited as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017".

Section 102.-Declaration of Financial Emergency

It is hereby found and declared that the grave public financial emergency identified and declared to exist by the Legislative Assembly on numerous prior occasions continues and has worsened; that this ongoing financial emergency and the resulting impact upon the solvency of the Government of Puerto Rico and its instrumentalities continues to materially and adversely affect the ability to meet financial obligations and to provide for

the health, safety, and welfare of the residents of Puerto Rico; and that resolution of the financial emergency and establishing fiscal responsibility within the Government of Puerto Rico and its instrumentalities is vitally necessary to assure the provision of those governmental services essential to the public health, safety, and welfare of the residents of Puerto Rico.

The continuing financial emergency has been recognized by the Government of the United States through the enactment of the Puerto Rico Oversight, Management, and Economic Stability Act, Public Law 114-187 (PROMESA), which, among other things, provides measures to assist the Government of Puerto Rico and its instrumentalities in achieving fiscal responsibility and access to capital markets.

When enacting PROMESA, the United States Congress found that a combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing has created a fiscal emergency in Puerto Rico and that, as a result of its fiscal emergency, the Government of Puerto Rico has been unable to guarantee its ongoing operations and provide the residents of Puerto Rico with effective essential services.

There exist certain broad rights, powers, and obligations of Puerto Rico, founded in or imposed by the United States Constitution and the Constitution of Puerto Rico, statutory law, and equity that arise as a result of such an emergency; and certain additional rights, powers, and obligations granted to or imposed by PROMESA and the exercise by the United States Congress of its territorial clause powers. In light of the continuing financial emergency and the enactment of PROMESA, the Legislative Assembly has a responsibility to exercise its police powers in a manner that recognizes the responsibility to satisfy financial obligations of the Government of Puerto Rico and its instrumentalities, while continuing to provide governmental services essential to the health, safety, and welfare of the residents of Puerto Rico given the limited available resources of the Government of Puerto Rico and its instrumentalities, all in a manner consistent with PROMESA. In exercising its police powers, the Legislative Assembly also recognizes the need to remedy the financial emergency by providing for prudent fiscal management, efficient administration, and provision of essential services, while permitting negotiation with creditors and the restructuring of contractual obligations.

The Legislative Assembly also declares that the Governor of Puerto Rico must also be fully empowered to exercise the Governor's duty to provide for the health, safety, and welfare of the residents of Puerto Rico by granting the Governor emergency police powers under this Act, including, but not limited to, powers relating to the identification of those governmental services essential to the health, safety, and welfare of Puerto Rico; assuring efficient and effective administration of the Government of Puerto Rico and its instrumentalities; and supervising and directing the fiscal affairs of the Government of Puerto Rico and its instrumentalities.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 35 of 52

32

Section 103.-Definitions

The following words and terms, when used in this Act, shall have the meaning stated below:

(a)     "Act" shall mean this "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017".

(b)     "Authority" shall mean the Fiscal Agency and Financial Advisory Authority.

(c)     "AFICA" shall mean the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority.

(d)     "Agreement with Creditors" shall mean an agreement executed among a government entity and certain creditors of such government entity, including, but not limited to, a consensual restructuring support agreement relating to the restructuring of its debt, as it may be amended, supplemented or reinstated from time to time, regardless of whether or not it is securitized.

(e)     "AMA" shall mean the Metropolitan Bus Authority.

(f)     "Available resources" shall have the meaning given to such term for purposes of Section 8 of Article VI of the Constitution of Puerto Rico.

(g)     "Bank" shall mean either or both of—

    i.     the Government Development Bank for Puerto Rico; and

    ii.     the Economic Development Bank for Puerto Rico.

(h)     "Board" shall mean the Board of Directors of each Bank.

(i)     "Bond claim" for purposes of Section 206, shall mean that term as defined under Section 5 of PROMESA.

(j)     "CCDA" shall mean the Puerto Rico Convention Center District Authority.

(k)     "Children's Trust" shall mean the not-for-profit entity created by the Territory pursuant to the Children's Trust Law, Act 173-1999, as amended.

(l)     "COFINA" shall mean the Puerto Rico Sales Tax Financing Corporation.

(m)     "Debt instrument" shall include any document or instrument for, used in connection with, or related to:

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 36 of 52

33

i. any obligation to pay the principal of, premium of, if any, interest on, penalties, reimbursement or indemnification amounts, fees, expenses, or other amounts relating to any indebtedness, and any other liability, contingent or otherwise,

 a. for borrowed money,

 b. evidenced by bonds, debentures, indentures, notes, resolutions, credit agreements, trade finance agreements, trade finance facility agreements, securities, or similar instruments, or

 c. for any letter of credit or performance bond;

ii. any contingent obligation in respect of or related to any liability of the kind described in the preceding clause (i), including, but not limited to, any guaranty of such liability and any reimbursement agreement in respect of an insurance policy covering such liability;

iii. any obligation in respect of bankers' acceptances;

iv. any obligation in respect of a swap agreement, derivative contract or related agreement, hedge agreement, securities contract, forward contract, repurchase agreement, option, warrant, commodities contract, or similar document;

v. any and all deferrals, renewals, extensions, and refunding of, or amendments, modifications, or supplements to, any liability of the kind described in any of the preceding clauses (i) through (iv);

vi. any liability arising out of any judgment relating to any liability of the kind described in any of the preceding clauses (i) through (v); or

vii. any liability arising from an obligation of insurance relating to any liability of a kind described in this Section.

Provided that "debt instrument" shall not include any contract for the provision of goods or services, nor shall it include any clearing services agreement or other agreement pursuant to which a financial institution provides services to the Bank or any other government entity.

(n) "Deposit" shall mean funds held by the Bank that are classified by such Bank as deposits.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 37 of 52

34

(o)    "Depositor" shall mean any person, or authorized representative thereof, who is the primary or beneficial owner of any account containing deposits held by the Bank.

(p)    "Depository Institution" shall mean, for purposes of this Act, banks and cooperative savings and credit associations (state chartered credit unions) operating in Puerto Rico, and the Public Corporation for the Supervision and Insurance of Cooperatives of Puerto Rico, as insurer of the share and deposits of cooperative savings and credit associations (state chartered credit unions).

(q)    "Emergency Period" shall mean the period beginning on the effective date of this Act and ending upon May 1, 2017, which term may be extended by the Governor pursuant to an executive order for one additional period of three (3) months.

(r)    "ERS" shall mean the Employees Retirement System of the Government of the Territory and its Instrumentalities.

(s)    "Essential service" shall mean a service provided by the Territory or an instrumentality of the Territory identified by the Governor in Chapter 2 of this Act as a service essential to the public health, safety, and welfare of the residents of Puerto Rico.

(t)    "Good faith" for purposes of Section 206, shall mean participation by an interested party in a neutral evaluation process with the intent to negotiate a resolution of the issues that are the subject of the neutral evaluation process, including the timely provision of complete and accurate information to provide the relevant participants through the neutral evaluation process with sufficient information, in a confidential manner, to negotiate the readjustment of a debt obligation.

(u)    "Government entity" shall mean the Territory, AFICA, AMA, each Bank and any subsidiary thereof, CCDA, COFINA, ERS, HFA, HTA, PBA, PFC, PRASA, PREPA, PRIDCO, PRIFA, PRPA, UPR, and any other public entity or instrumentality of the Territory designated by the Oversight Board as a covered entity and subject to oversight by the Oversight Board.

(v)    "Governor" shall mean the Governor of the Territory under Article IV of the Constitution of Puerto Rico.

(w)    "HFA" shall mean the Puerto Rico Housing Finance Authority.

(x)    "HTA" shall mean the Puerto Rico Highways and Transportation Authority.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 38 of 52

35

(y)   "Interest obligation" shall mean any obligation arising under or related to the payment of interest on any debt instrument.

(z)   "Interested party" for purposes of Section 206, shall mean a trustee, a committee of creditors, an affected creditor, an indenture trustee, a bondholder or an insurer of a debt obligation or a committee of insurers of debt obligations.

(aa)   "MFA" shall mean the Puerto Rico Municipal Finance Agency.

(bb)   "Neutral evaluation process" for purposes of Section 206, shall mean a form of alternative dispute resolution or mediation between the Territory or an instrumentality of the Territory conducted in a manner that promotes voluntary, un-coerced decision-making in which each participant makes free and informed choices in good faith regarding process and outcome and in which a neutral evaluator uses his or her best efforts to assist the participants in reaching a satisfactory resolution of their disputes relating to debt obligations.

(cc)   "Neutral evaluator" for purposes of Section 206, shall mean an impartial, unbiased person commonly known as a mediator, who assists the Territory or an instrumentality of the Territory and interested parties in reaching their own settlement of issues relating to debt obligations of the Territory or an instrumentality of the Territory.

(dd)   "Oversight Board" shall mean the Financial Oversight and Management Board established for Puerto Rico under PROMESA.

(ee)   "PBA" shall mean the Puerto Rico Public Buildings Authority.

(ff)   "Person" shall mean any natural person or legal entity, including, but not limited to, any government agency, department, instrumentality, public corporation, municipality, board, office, committee or dependency or any public or private individual, firm, partnership, stock company, limited liability company, association or corporation organized and existing under the laws of the Territory, the United States of America or any of its states, or of any foreign country, or any combination of the above.

(gg)   "PFC" shall mean the Puerto Rico Public Finance Corporation.

(hh)   "PRASA" shall mean the Puerto Rico Aqueduct and Sewer Authority.

(ii)   "PREPA" shall mean the Puerto Rico Electric Power Authority.

(jj)   "PRIDCO" shall mean Puerto Rico Industrial Development Company.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 39 of 52

36

(kk)   "PRIFA" shall mean the Puerto Rico Infrastructure Financing Authority.

(ll)   "Principal obligation" shall mean any obligation arising under or related to the payment of principal of any debt instrument, as may be adjusted to account for accretion in the case of capital appreciation bonds or convertible capital appreciation bonds prior to conversion, or for unamortized original issue discount or premium.

(mm)   "PRPA" shall mean the Puerto Rico Ports Authority.

(nn)   "PROMESA" shall mean the Puerto Rico Oversight, Management, and Economic Stability Act, Public Law 114-187.

(oo)   "Public debt" shall mean any obligation or evidence of indebtedness of the Territory, or a government entity, with the meaning of in Section 2 of Article VI of the Constitution of Puerto Rico.

(pp)   "Territory" shall mean the Commonwealth of Puerto Rico as constituted under Section 1 of Article I of the Constitution of Puerto Rico.

(qq)   "UPR" shall mean the University of Puerto Rico.

Section 104.-Public Policy

It is the public policy of the Government of Puerto Rico to take all the required measures for Puerto Rico to establish fiscal responsibility within the Government and its instrumentalities necessary to satisfy its obligations and to assure the provision of those governmental services essential to the public health, safety, and welfare of the residents of Puerto Rico. Also, to exercise its police powers in a manner that recognizes the responsibility to satisfy financial obligations of the Government of Puerto Rico and its instrumentalities, while continuing to provide governmental services essential to the health, safety, and welfare of the residents of Puerto Rico given the limited available resources of the Government of Puerto Rico and its instrumentalities.

Section 105.-Relation to Constitutional Provisions; Supremacy Over Other Laws

This Act has been enacted pursuant to and in accordance with the Constitution of Puerto Rico and in furtherance of the police powers of the Territory and as otherwise detailed in this Act. In the event that the provisions of this Act are in conflict with the provisions of any other law, the provisions of this Act shall prevail. Implementation of this Act is subject to the requirements of the Constitution of Puerto Rico and PROMESA.

Notwithstanding anything herein to the contrary, if a power or duty is delegated to the Authority under the Puerto Rico Fiscal and Financial Advisory Authority Act, Act 2-2017, this Act should not be interpreted to affect, alter, rescind or in any way modify that

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 40 of 52

37

delegation. Further, a delegation of a power or duty under Puerto Rico Fiscal and Financial Advisory Authority Act, Act 2-2017, does not limit or otherwise restrict the exercise by the Governor of powers or duties vested in the Governor by this Act or otherwise.

Section 106.-Immunities

(a)    Except to the extent proven by final and unappealable judgment to have engaged in willful misconduct for personal gain or gross negligence comprising reckless disregard of applicable duties, no person shall have any liability, civil, criminal, or otherwise, for, and without further notice or order shall be exonerated from, actions taken or not taken in their capacity, and within their authority in connection with, related to, or arising under, or as permitted under this Act, nor for any transfer, sale or assignment of assets or withdrawal of funds approved or executed by any government entity prior to or after the enactment of this Act if any such transfer, sale, assignment or withdrawal of deposits or other funds, as applicable, is found by a court to be in violation of this Act, Act No. 17 of September 23, 1948, as amended, Act No. 22 of July 24, 1985, as amended, Sections 1243, 1244, and 1249 of the Civil Code of Puerto Rico, or any other similar or analogous law or provision.

(b)    No financial institution or agent thereof providing clearing services or other financial services to the Bank or any other government entity pursuant to any agreement with the Bank or such government entity shall have any liability, civil, criminal, or otherwise, for, and without further notice or order shall be exonerated from, actions taken or not taken in connection with such agreement, nor for any transfer or withdrawal of deposits or other funds made pursuant thereto if any such transfer or withdrawal is found by a court to be in violation of this Act, Act No. 17 of September 23, 1948, as amended, Act No. 22 of June 24, 1985, as amended, or Sections 1243, 1244 and 1249 of the Civil Code of Puerto Rico, any regulation or executive order issued hereunder or thereunder, or any other similar or analogous law or provision.

(c)    Any financial institution in which a check issued by any government entity is deposited or which receives any other instruction from a government entity to transfer funds shall be entitled to honor such check or instruction in the ordinary course of its banking operations without inquiring whether the requirements of this Act or any executive order issued hereunder have been complied with. The Bank and the government entities shall be solely responsible and liable for compliance with any provision of this Act or any regulation or executive order issued hereunder that restricts the use of government funds or the issuance of checks or other instructions relating to government funds held by financial institutions.

(d)    Any action brought for gross negligence shall be dismissed with prejudice if: (i) a defendant, as an official, officer, director, committee member, or

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 41 of 52

38

professional produces documents showing in respect of whatever acts or omissions form the basis of the complaint, such defendant received or relied on the advice of experts or was advised of relevant facts, participated in person or by phone, and deliberated in good faith; or (ii) the acts or omissions that form the basis of the complaint, indictment, or information do not clearly violate an established duty of which a reasonable person would have clear notice under the particular circumstances.

Section 107.-Language Conflict

This Act shall be adopted in both of Puerto Rico's official languages, Spanish and English. If in the interpretation or application of this Act any conflict arises between the English and Spanish texts, the English text shall govern. Likewise, every executive order issued under the authority of this Act shall be adopted and published in both of Puerto Rico's official languages, Spanish and English. If in the interpretation or application of these executive orders any conflict arises between the English and Spanish texts, the English text shall govern.

CHAPTER 2.-FINANCIAL EMERGENCY POWERS

Section 201.-Finding on Financial Emergency Powers

It is the Legislative Assembly's finding that given the Territory's continuing financial emergency, that during the Emergency Period, the Governor should be authorized to exercise the powers vested in the Governor under this Section to designate services provided by the Territory and its instrumentalities as essential services or services that are not essential services and utilize available resources to provide for the satisfaction of obligations of the Territory and its instrumentalities, while also recognizing the need to provide for the services essential to the health, safety, and welfare of the residents of Puerto Rico.

Section 202.-Maintaining Essential Services

During the Emergency Period, the Governor may issue executive orders designating the priority for use of available resources to pay for the essential services the Governor deems necessary to provide for health, safety, and welfare of the residents of Puerto Rico, while also recognizing the debt obligations of the Territory and its instrumentalities.

Section 203.-Payment for Essential Services and Payment Priorities

(a)     During the Emergency Period, the Governor shall pay debt service to the extent (a) possible after all essential services of the Commonwealth of Puerto Rico have been provided for; or (b) ordered to do so by the Oversight Board or any other board created under federal law. In the event that the provisions

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 42 of 52

39

of this Act are in conflict with the provisions of any other law, the provisions of this Act shall prevail.

(b)     During the Emergency Period, the Governor may issue executive orders requiring the use of available resources to be deposited in a lockbox account under the sole control of the Authority pay for essential services as the Governor deems necessary to protect the health, safety, and welfare of the residents of Puerto Rico. The Governor may take any and all actions that the Governor deems reasonable and necessary to preserve the ability of the Territory or an instrumentality of the Territory to continue providing essential services to residents of Puerto Rico.

(c)     During the Emergency Period, the Governor may issue executive orders establishing priority rules for the disbursement of public funds when resources available for a fiscal year are insufficient to cover the appropriations made for that fiscal year.

(d)     During the Emergency Period, notwithstanding Section 4(c) of Act No. 147 of June 18, 1980, as amended, the Governor may reprioritize services and expenses described in Section 4(c)(3) to a higher payment priority than as listed in Section 4(c).

(e)     During the Emergency Period, the Governor may issue executive orders as the Governor deems necessary or advisable to assure the payment of a debt obligation of the Territory or an instrumentality of the territory.

Section 204.-Emergency Bank Measures

(a)     During the Emergency Period, the Governor may take any and all actions that the Governor deems reasonable and necessary to permit the Bank to continue carrying out its operations.

(b)     For the purposes of this Section, actions that are "reasonable and necessary" include, without limitation, all of the following—

      i.     prescribing such conditions or restrictions for the conduct of the business of the Bank, including dispensing with the compliance, in whole or in part, of any requirement prescribed by otherwise applicable law, including those that require the Bank to maintain deposit reserves above a certain threshold;

      ii.    ordering the limitation, postponement or suspension of any payment, in whole or in part, of any obligation pursuant to terms the Governor prescribes to address the Bank's liquidity needs or facilitate the Bank's ability to carry out its operations;

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 43 of 52

40

    iii.    suspending—

        A.    payments on any obligation guaranteed by the Bank;

        B.    payments on any letter of credit; and

        C.    any obligation or commitment to lend or extend money or credit;

    iv.    taking any action with respect to the Bank as provided for in Act No. 17 of September 23, 1948, as amended or Act No. 22 of July 24, 1985, as amended, as applicable; and

    v.    delegating to the Bank, its Board, or its employees authority to take actions in furtherance of this Section.

(c)    If any restriction is placed on disbursements by the Bank pursuant to subsection (a) of this Section,—

    i.    the Bank shall not disburse any loans or credit facility unless authorized by the Governor;

    ii.    the Bank shall honor requests to withdraw or transfer any deposit, including by check or other means, of an agency, public corporation, or instrumentality of the Territory (other than those listed in subsection (c)(iii) of this subsection) as may be authorized by the Governor, from time to time;

    iii.    subject to the availability of funds and the aggregate disbursements established by the Governor, the Bank shall honor any request to withdraw or transfer any deposit held by, or request to honor any check written by, the Legislative Branch, the Judicial Branch, UPR, the Office of the Comptroller, the Office of the Electoral Comptroller, the State Elections Commission, the Government Ethics Office, the Independent Prosecutors Panel, or a municipality of the Territory; provided, however, that an authorized officer of an entity listed in this paragraph certifies along with supporting documentation that such funds will be used for the payment of essential services.

(d)    Except as provided in subsection (e) of this Section, if any restriction is placed on disbursements from the Bank pursuant to this Section, then any value disbursed to a creditor after such restriction is imposed shall be subtracted from the value of any distribution that such creditor is entitled to receive, as of the first date of the restriction, if the Bank is subsequently liquidated or placed into a receivership.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 44 of 52

41

(e)     Disbursements made by the Bank before or during the Emergency Period that are made in the ordinary course, including disbursements to cover expenses of the nature described in Article 12 Section (A)(2) or (3) of Act No. 17 of September 23, 1948, as amended, or to pay for goods and services provided to the Bank, shall, for the avoidance of doubt, in each case, be exempt from Article 17 of Act No. 17 of September 23, 1948, as amended.

(f)     A check written in violation of this Act or an executive order issued pursuant to this Act is null and void, and any person that intentionally writes a check to withdraw all or a substantial portion of their deposited fund balance in violation of this Section is guilty of a felony punishable by imprisonment for up to one (1) year or by a fine of not less than twenty-five thousand dollars ($25,000), or both, at the court's discretion.

Section 205.-Issuance by Government Entity of Evidence of Debt

Nothing in this Act prohibits or prevents any government entity, whether during the Emergency Period or not, from issuing evidence of debt to consenting holders of any debt obligation, any debt instrument or other evidence of debt, in payment, renewal, or refunding of or in exchange for such consenting holder's debt obligation, on terms that otherwise comply with this Act and any other applicable law, including, but not limited to, PROMESA.  Providing such evidence may not, and shall not, constitute the issuance of new debt under the Act.

Section 206.-Additional Emergency Powers of Governor

(a)     During the Emergency Period the Governor is hereby granted broad receivership powers to rectify the financial emergency declared by this Act, take action necessary to satisfy the debt obligations of the Territory and its instrumentalities and to act to ensure the provision of essential services, consistent with the Constitution of Puerto Rico, the Governor's inherent police powers, and PROMESA, without undermining the powers and faculties of the Legislative Assembly. The Governor, together with the Authority, may take the following actions as they deem necessary or advisable to rectify the financial emergency, including but not limited to:

   i.     analyze factors and circumstances contributing to the financial emergency and initiate steps to correct the factors and circumstances;

   ii.    limit the expenditure of appropriated funds;

   iii.   issue executive orders or other directives regarding the disbursement or disposition of funds held by the Bank or other government entity;

Case:17-03283-LTS  Doc#:3126-12  Filed:05/23/18  Entered:05/23/18 11:45:37  Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)  Page 45 of 52

42

iv.    require and approve or disapprove, or amend or revise, a plan for paying debt obligations of the Territory or its instrumentalities;

v.    require and prescribe the form of special reports to be made by Territory or an instrumentality of the Territory to creditors, or Oversight Board, and the Legislative Assembly;

vi.    examine all records and books of account of a government entity and require  attendance of witnesses and the production of books, papers, contracts, and other documents relevant to an analysis of the financial condition a government agency;

vii.    approve or disapprove any executory contract, expenditure, or loan, the creation of any new position, or the filling of any vacancy in a position by any government entity within the Executive Branch;

viii.    review and approve payrolls or other claims against a government entity within the Executive Branch before payment;

ix.    notwithstanding any otherwise applicable minimum staffing level requirement, establish and implement staffing levels for a government entity within the Executive Branch;

x.    reject, modify, or terminate one or more terms and conditions of an existing executory contract of a government entity within the Executive Branch;

xi.    act as or designate a sole agent of a government entity within the Executive Branch in collective bargaining with employees or representatives and approve any contract or agreement on behalf of the government entity;

xii.    appoint, direct, supervise, and remove administrators, including heads of government entities within the Executive Branch; Administrators that are employees of trust and confidence may be removed, except those administrators that have a term appointment. Provided, however, that when a head of a government entity subject to the consent and approval of the Senate is removed from such position, said removal must be notified to the Senate of Puerto Rico within three (3) business days.

xiii.    employ or contract for, at the expense of a government entity within the Executive Branch, auditors and other technical personnel;

Case:17-03283-LTS  Doc#:3126-12  Filed:05/23/18  Entered:05/23/18 11:45:37  Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)  Page 46 of 52

43

xiv. retain one or more persons as a local inspector general for one or more government entities within the Executive Branch to assure integrity, economy, efficiency, and effectiveness in the operations of the government entities by conducting meaningful and accurate investigations and forensic audits, and to detect and deter waste, fraud, and abuse;

xv. sell, lease, convey, assign, or otherwise use or transfer the assets, and liabilities, of a government entity within the Executive Branch, if the sale, lease, conveyance, assignment, use, or transfer does not endanger the health, safety, or welfare of the residents of Puerto Rico or unconstitutionally impair a bond, note, security, or uncontested legal obligation of the government entity. These actions can only be carried out according to the existing legal framework;

xvi. authorize the borrowing of money by a government entity within the Executive Branch. These actions can only be carried out according to the existing legal framework;

xvii. approve or disapprove of the issuance of debt obligations of a government entity within the Executive Branch. These actions can only be carried out according to the existing legal framework;

xviii. enter into a neutral evaluation process with one or more interested parties relating to a debt obligation of the Territory or an instrumentality of the Territory under which the participants, through an agreed upon process select a neutral evaluator to oversee the neutral resolution process and facilitate discussions and negotiations in good faith among the participants in an effort to resolve their disputes relating to the debt obligation and under which the neutral evaluator may make recommendations for a settlement or plan of readjustment. Provided, however, that use of a neutral evaluation process under this subparagraph (a)(xviii) does not restrict or otherwise prohibit other negotiations or agreements with an interested party relating to a debt obligation of the Territory or an instrumentality of the Territory;

xix. take action necessary to assure compliance with the Enabling Act of the Office of Management and Budget, Act No. 147 of June 18, 1980, as amended, not inconsistent with the provisions of this Act;

xx. require an officer, employee, agent, or contractor of the Territory or an instrumentality of the Territory to provide to the Oversight Board copies, whether written or electronic, of such records, documents, information, data, as requested by the Oversight Board;

Case:17-03283-LTS Doc#:3126-12 Filed:05/23/18 Entered:05/23/18 11:45:37 Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English) Page 47 of 52

44

xxi.    ensure the prompt and efficient payment and administration of taxes through the adoption of electronic reporting, payment and auditing technologies;

xxii.    prevent a transfer of property by an instrumentality of the Territory prohibited under Sections 201(b)(1)(M) and 407(a) of PROMESA;

xxiii.    rescind an authorization approved by the Legislative Branch or the Executive Branch after May 4, 2016 and before the effective date of this Act for the unexecuted sale or transfer of the assets and liabilities of a government entity within the Executive Branch, if the sale or transfer endangers the health, safety, or welfare of the residents of Puerto Rico or impairs a bond, note, security, or uncontested legal obligation of the government entity; and

xxiv.    the additional powers conferred to the Governor hereunder shall not undermine the powers and faculties of the Legislative Assembly.

Section 207.-Administrative and Financial Controls

(a)    During the Emergency Period, and without this Section being construed as a limitation to the powers of the Governor, the Governor shall exercise general supervisory control over the functions and activities of all government entities within the Executive Branch.

(b)    Without this Section being construed as a limitation to the powers of the Governor, in exercising general supervisory control under subsection (a) the Governor and/or the Authority may, and are not limited to, do all of the following, subject to the limitations contained in Sections 201(b)(1)(M) and 407 of PROMESA:

i.    direct a government entity within the Executive Branch to reduce expenditures through the implementation of administrative efficiencies;

ii.    impose limits on contractual expenditures by government entities within the Executive Branch;

iii.    order the lapse or return of unexpended multi-year appropriations to the general fund within the Executive Branch;

iv.    prohibit the establishment of new program or expansion of a current program by a government entity within the Executive Branch;

v.    issue directives for the allotment of appropriations;

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 48 of 52

45

    vi.    transfer appropriated funds from one program to another within a government entity within the Executive Branch, without modifying the amounts assigned for the payment of salaries, related costs and utilities;

    vii.    intervene in any matter touching functions and activities under subsection (a).

Section 208.-Enforcement and Executive Orders

(a)    For purposes of this Chapter, each government entity within the Executive Branch shall be under the supervision of the Governor unless otherwise provided by the Constitution of Puerto Rico. The Governor shall transact all necessary business with the officers of governmental entities within the Executive Branch and may require information in writing from all executive and administrative officers of government entities within the Executive Branch relating to the compliance with this Chapter and upon any subject relating to the duties of their respective offices.

(b)    The Governor may initiate court proceedings in the name of the Territory to enforce compliance with any constitutional mandate or requirement of this Act, or to restrain violations of any constitutional mandate, duty, or right, or requirement of this Act by any officer of a governmental entity within the Executive Branch or a governmental entity within the Executive Branch.

(c)    The Governor shall have power to inquire into the condition and administration of any public office of a government entity within the Executive Branch and the acts of any public officer of a government entity within the Executive Branch.

(d)    The Governor may issue executive orders to implement or enforce compliance with this Chapter. An executive order issued under this Section is binding on the officials, employees, agents, and contractors of a government entity within the Executive Branch. Officers of a government entity within the Executive Branch shall take and direct the action necessary and advisable to comply with an executive order issued under this Section applicable to the government entity.

(e)    The Governor may amend, rescind, or supersede an executive order issued under this Act or under the former Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, which shall continue in full force and effect until amended, rescinded or superseded.

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 49 of 52

46

(f)     To enforce compliance with this Chapter or an executive order issued under this Chapter, the Governor may initiate court proceedings in the name of the Territory.

(g)     The additional powers conferred to the Governor shall not undermine the powers and faculties of the Legislative Assembly.

Section 209.-Delegation

The Governor may delegate to the Authority by Executive Order any power or duty contained in this Act, to the extent any such power or faculty has not already been delegated to the Authority herein or pursuant to Act 2-2017, all of which shall continue to be in full force and effect. A further delegation of a power or duty to Authority, does not limit or otherwise restrict the exercise by the Governor of powers or duties vested in the Governor by this Act or otherwise. The additional powers conferred to the Governor shall not undermine the powers and faculties of the Legislative Assembly.

Section 210.-Hiring of Government Workers and Professional Persons; Exemption from other Laws.

(a)     At any time during an Emergency Period, the following acts or provisions thereof shall not apply to the hiring by the Governor, the Department of the Treasury, PRIFA, any subsidiary of the Bank, and/or the Authority, on a temporary or permanent basis, of any individual that is employed by the Bank or any other government entity to work in the Governor's office, the Department of the Treasury, PRIFA, any subsidiary of the Bank, and/or the Authority on matters related to the restructuring of any debt obligation or adjusting of any debt obligation, implementing liability management transactions for debt obligations, managing the fiscal affairs of the Territory or any government entity, or any matters otherwise related to functions or operations performed or carried out by the Bank under Act No. 17 of September 23, 1948, as amended, or Act No. 272 of May 15, 1945, as amended—

    i.      the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico," Act 184-2004, as amended;

    ii.     the "Act to Regulate the Transition Process of the Government of Puerto Rico," Act 197-2002, as amended;

    iii.    Act 3-2017;

    iv.     items (b) and (c) of Article 4.6 of Act 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of 2011";

Case:17-03283-LTS   Doc#:3126-12   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 5 of 2017 (12A Spanish 12B English)   Page 50 of 52

47

    v.      the "Commonwealth of Puerto Rico Government Fiscal Reform Act of 2006", Act 103-2006, as amended;

    vi.     Plan 3-2011, as amended, known as the "Reorganization Plan of the General Services Administration"; and

    vii.    Act 78-2011, as amended.

(b)    The Governor, the Department of the Treasury, PRIFA, any subsidiary of the Bank, and/or the Authority may employ, retain, or honor existing obligations under and/or assume existing contracts of the Bank of any government entity with consultants and essential employees, including legal and financial advisors, whether or not the salaries or fees were incurred prior to the date of such assumption, and may employ such consultants and essential employees to advise the Governor, the Bank or any government entity on matters related to restructuring or adjusting any debt obligation, implementing liability management transactions for debt obligations, managing the fiscal affairs of the Commonwealth and any government entity, or any matters otherwise related to functions or operations performed or carried out by the Bank under Act No. 17 of September 23, 1948, as amended, or Act No. 272 of May 15, 1945, as amended. The Governor, the Department of the Treasury, PRIFA, any subsidiary of the Bank, and/or the Authority, as applicable, shall submit to the Office of Management and Budget an estimate of the total costs and expenses related to the contracts and obligations to be incurred or assumed pursuant to this Section for the remainder of this fiscal year 2016-2017. The Secretary of the Treasury and the Director of the Office of Management and Budget are hereby directed to identify from the fiscal year 2016-2017 budget the funds necessary to cover such expenses and/or to transfer to PRIFA, any subsidiary of the Bank, or the Authority sufficient funds to cover such expenses. Beginning in fiscal year 2017-2018, such expenses shall be paid from appropriations made by the Legislative Assembly. The laws and provisions listed in items (a) i. through vii. of this Section shall not apply to the contracting or the assumption of obligations under this subsection.

Section 211.-Automatic Stay

While the Enactment Stay under PROMESA is in effect, any action that would be enjoined by PROMESA in a federal, state, or Puerto Rico court also is enjoined under this Act, and any similar action arising out of, or related to, this Act is similarly enjoined while the Enactment Stay under PROMESA is in effect.

48

## CHAPTER 3.-REPEAL OF PROVISIONS OF MORATORIUM ACT.

SECTION 301.-Chapters 1 and 2 of Act 21-2016, as amended, are hereby repealed; and to reenumerate the existing Chapters 3, 4 and 5 as 1, 2 and 3.

## CHAPTER 4.-AMENDMENT TO EDB ORGANIC ACT OF THE ECONOMIC DEVELOPMENT BANK FOR PUERTO RICO.

SECTION 401.-To add a new Article 23 to the Organic Act of the Economic and Development Bank, Act No. 22 of July 25, 1985, as amended, to read as follows:

"ARTICLE 23.-Language Conflict.

If in the interpretation or application of the amendments to this Act as enacted by Act 21-2016 any conflict arises between the English and Spanish texts, the English text shall govern."

Section 402.-Article 23 of the Organic Act of the Economic and Development Bank, Act No. 22 of July 24, 1985, is hereby renumbered as Article 24.

## CHAPTER 5.-SEVERABILITY AND EFFECTIVENESS.

Section 501.-Severability

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the remainder of this Act. The effect of such an order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act so annulled or declared unconstitutional. If the application to a person or circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the application of the remainder of this Act to such persons or circumstances to which it may be validly applied. It is the express and unequivocal intent of this Legislative Assembly that the courts of law enforce the provisions and application of this act to the greatest possible extent, even if any of its parts is annulled, invalidated, affected or declared unconstitutional, or even if the application thereof to any person or circumstance is annulled, invalidated or declared unconstitutional. This Legislative Assembly would have passed this Act regardless of the ruling on severability that a Court may issue.

Section 502.-Effectiveness

This Act shall take effect immediately upon enactment.