# EXHIBIT 14A

2ᵈᵃ ASAMBLEA   1ᵉʳᵃ SESIÓN
LEGISLATIVA   ORDINARIA
Ley Núm. _____ 46
(Aprobada en 9 de 8/u de 20 17)

(P. de la C. 1133)

# LEY

Para enmendar las Secciones 4042.03 y 4042.04 de la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico"; enmendar los Artículos 2, 26 y 27 de la Ley 272-2003, según enmendada, conocida como "Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico"; enmendar el Artículo 103 de la Ley 5-2017, conocida como "Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico"; enmendar los Artículos 12 y 26 de la Ley 3-2017, mejor conocida como "Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico", a los fines de establecer medidas adicionales de recaudo y liquidez para el Gobierno de Puerto Rico; establecer la obligación a ciertos comerciantes de remitir el Impuesto sobre Ventas y Uso en plazos quincenales; aclarar la responsabilidad que tienen los comerciantes intermediarios, con relación al cobro del Impuesto sobre el Canon por Ocupación de Habitación; extender el periodo de emergencia establecido en la "Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico"; modificar que los informes requeridos en la Ley 3-2017, se deban presentar de forma semestral en lugar de trimestral, a partir de noventa (90) días de la aprobación de la Ley y durante el periodo de su vigencia; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

Al presente, Puerto Rico atraviesa una crisis fiscal y social monumental. Dicha crisis fue causada, en parte, porque faltaron controles sobre el gasto, medidas de desarrollo sustentable y sistemas de información gerencial que promovieran claridad y transparencia en la gestión gubernamental.

Según datos provistos por el Departamento del Tesoro Federal, Puerto Rico sufre una contracción económica cumulativa de 14.6% en el Producto Estatal Bruto (PEB real) con una predicción de una contracción adicional de 3% para los próximos dos años. Por años, el Gobierno ha operado con un déficit estructural que ha sido financiado con emisiones de bonos y préstamos al Banco Gubernamental de Fomento. Hace más de un año que el Gobierno carece de liquidez y se utilizaron los reintegros, pagos de los contratistas, el dinero de los pensionados y préstamos intragubernamentales para sustituir las fuentes de liquidez. El Banco Gubernamental de Fomento incumplió sus obligaciones con los bonistas desde el 1 de mayo de 2016 y ya no cumple su rol de proveer liquidez. Los sistemas de retiro están prácticamente insolventes.

Las malas decisiones del pasado, junto a nuestra indefensión colonial, llevaron al Congreso de los Estados Unidos a promulgar la ley denominada *Puerto Rico Oversight,*

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 3 of 40

2

*Management, and Economic Stability Act*, conocida como PROMESA (por sus siglas en inglés), Pub. L. 114-187, la cual le delegó amplísimos poderes en una Junta de Supervisión Fiscal (en adelante "Junta de Supervisión"). Conforme a PROMESA, las continuas acciones de planificación fiscal, las acciones presupuestarias, legislativas y ejecutivas de Puerto Rico, así como las reestructuraciones de deuda, consensuales o no, y la emisión, garantía, intercambio, modificación, recompra o redención de deuda están sujetas a supervisión.

Por medio de la Sección 4 de PROMESA, el Congreso de forma expresa hizo manifiesta su intención de que dicha Ley tiene supremacía sobre legislación estatal que sea antagónica con ella. Esto queda igualmente reconocido en la Sección 8 (2) que dice que el Gobierno de Puerto Rico no puede adoptar, implementar o hacer cumplir cualquier estatuto, resolución, política o regla que pueda menoscabar o anular los propósitos de PROMESA, según lo determine la Junta de Supervisión. Así pues, estamos imposibilitados de promulgar legislación que deje sin efecto a PROMESA o que menoscabe sus disposiciones y su alcance. Esto pone de manifiesto que tenemos que trabajar dentro de los parámetros de PROMESA para iniciar la recuperación económica y fiscal de Puerto Rico, de la mano con la solución del problema de nuestro estatus político.

Esta Administración se encontró un gobierno con un déficit en caja de más de $7,000 millones según certificado por el Tesoro Federal y la Junta de Supervisión. En otras palabras, se heredó un gobierno sin acceso a los mercados de capital, con un crédito de categoría chatarra, sin liquidez, sin transparencia en las finanzas públicas, con un gasto gubernamental inflado y con deudas de miles de millones de dólares. Además, el Gobernador ha enfrentado el reto increíble de recuperar la credibilidad ante el mercado y ante la Junta de Supervisión. Es preciso pues, garantizar un gobierno donde los gastos respondan a la realidad de los ingresos.

Desde el 2 de enero hemos estado implementando una agenda para controlar el gasto gubernamental, reactivar nuestra economía y facilitar las condiciones para la creación de más y mejores empleos en el sector privado. Estamos demostrándole al mundo que Puerto Rico está abierto para hacer negocios en un ambiente de seguridad y estabilidad gubernamental. No hemos parado de trabajar y la aprobación de más de una veintena de medidas reformistas durante los primeros meses de nuestra Administración así lo demuestra. Sin duda, con nuestro esfuerzo hemos cambiado el rumbo de Puerto Rico a uno de responsabilidad fiscal.

El pasado 28 de febrero de 2017, el Gobernador presentó un Plan Fiscal completo, abarcador, real y, a la misma vez, sensible a las necesidades de nuestro Pueblo. El 13 de marzo de 2017 la Junta de Supervisión aceptó y certificó nuestro Plan Fiscal acompañado de una serie de contingencias que garantizan que no habrá despidos de empleados

públicos, sin afectar la jornada laboral, manteniendo el acceso a servicios de salud a nuestro Pueblo y protegiendo las pensiones de los más vulnerables.

Las medidas del Plan Fiscal están enmarcadas en cumplir con los objetivos fiscales; pero también en promover el desarrollo económico, en nuestra capacidad de restablecer la credibilidad; en que el cambio se traduzca no tan solo un mero recorte, si no en un beneficio a largo plazo, y, sobre todo, en velar que los sectores más vulnerables y los que trabajan duro, día a día, tengan una mejor calidad de vida. La validación del Plan Fiscal representa un reconocimiento a la credibilidad del nuevo Gobierno. Demostramos que pasamos de los tiempos de la incoherencia e improvisación, a los tiempos de trabajar en equipo, y tener resultados por el bien de Puerto Rico.

Los cambios que estamos encaminando no serán fáciles y tomarán tiempo, pero también tendrán sus resultados en los primeros dos años. Bajo el Plan Fiscal certificado, lograremos balancear los ingresos con los egresos para el Año Fiscal 2019. Ahora nos compete ejecutar. Las contingencias que acompañan al Plan Fiscal le requieren al Gobierno cumplir. Debemos asegurar que tengamos el dinero líquido para no afectar el salario de los empleados públicos, la salud del Pueblo y los ingresos de los pensionados.

Aunque son muchos los obstáculos que debemos superar en el camino hacia la recuperación definitiva, hay esperanza y optimismo en nuestra gente. Tenemos que aprovechar este momento para enfrentar los retos, y procurar los grandes cambios que Puerto Rico necesita.

Ante la precaria situación de liquidez, se hace necesario adoptar medidas que mejoren la salud del fisco. Esta Ley, provee dos de estas instancias.

Actualmente, las Secciones 1061.20 y 1061.23 del Código de Rentas Internas de 2011, según enmendado, mejor conocido como "Código de Rentas Internas para un Nuevo Puerto Rico" (Código), establece la obligación de individuos y corporaciones de pagar una contribución estimada de la contribución sobre ingresos dispuesta en el Subtítulo A del Código en cuatro plazos durante un año contributivo. Este mecanismo de estimada, ayuda al Gobierno a sostener su liquidez durante el año fiscal en lugar de depender del pago de contribuciones luego del decimoquinto día del cuarto mes luego del cierre del año contributivo del contribuyente. Esta enmienda provee para que ciertos contribuyentes remitan al Departamento de Hacienda en plazos quincenales los pagos del IVU. De esta manera, se logra mayor liquidez en caja y permite el ingreso constante de recaudos.

A tono con lo anteriormente expuesto, esta Asamblea Legislativa entiende meritorio incorporar nuestro sistema de estimadas al Impuesto Sobre Ventas y Uso con el propósito de mejorar la liquidez de nuestro fisco y poder cumplir con las obligaciones del Gobierno de Puerto Rico de manera puntual y responsable.

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 5 of 40

4

Por otro lado, durante la pasada década, la industria del turismo ha visto grandes cambios, particularmente, ante el advenimiento de la economía del compartir (sharing economy) y de los mercados en línea o mercados de comercio electrónico en línea (online marketplace). La popularidad de estas plataformas, que sirven como intermediarios entre potenciales huéspedes y hosteleros, tiene un impacto significativo para la industria del turismo en Puerto Rico. El aumento de reservas por conducto de estos intermediarios, unido a la falta de claridad de la Ley 272-2003, según enmendada, mejor conocida como la "Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico", en cuanto al proceder frente a muchos de estos nuevos escenarios, tiene el potencial de privar al Gobierno de Puerto Rico de cuantiosos recaudos por concepto del canon por ocupación de habitación.

Durante el Año Fiscal 2016-2017, los ingresos producto del impuesto por canon de ocupación de habitaciones se redujeron en más de $10,000,000.00 en comparación con el Año Fiscal 2015-2016. Esta merma es consecuencia de los efectos del virus del ZIKA, entre otras cosas, sumado al hecho de que muchos visitantes están recurriendo a la utilización de estas nuevas plataformas y modelos de negocios al momento de reservar sus estadías.

Debido a la falta de claridad existente en la definición de Hostelero contenida en la Ley 272-2003, la Compañía de Turismo de Puerto Rico estima que hay una cantidad significativa de proveedores de alojamiento a través de nuevos modelos y plataformas que no están registrados conforme lo requiere la Ley. A base de los últimos números obtenidos sobre la cantidad de hospederías registradas en ciertas plataformas (tarifa promedio y porciento de ocupación), se estima que el impuesto a ser recaudado por concepto de canon de arrendamiento en esas plataformas totaliza alrededor de $560,000.00 mensuales. De ese total mensual, se estima que un 50% no está siendo reportado por los Hosteleros. Esto representa pérdidas de aproximadamente $280,000.00 mensuales y $3,360,000.00 anuales. Estas cantidades aumentarán exponencialmente a medida que esos nuevos modelos de negocios continúen adquiriendo auge y los visitantes opten por utilizarlos al momento de reservar sus estadías en vez de recurrir al sistema tradicional de reservación de hospederías.

La definición de Hostelero que contiene la Ley 272-2003, aunque muy abarcadora, carece de especificidad para propósitos de atender las innovaciones tecnológicas y, por tanto, poder obligar a estos nuevos modelos de negocios que han entrado al mercado y sirven como intermediarios entre los hosteleros y huéspedes, a recaudar el canon por ocupación de habitación. Esa ambigüedad ha ocasionado que muchos de estos intermediarios se desvinculen de su responsabilidad de cobrar el canon por ocupación de habitación, amparándose en la alegada inaplicabilidad de esta legislación a sus modelos de negocios particulares. Para aclarar esta laguna jurídica, con estas enmiendas se modificarán ciertas definiciones y descripciones contenidas en la Ley 272-2003 de manera que se ajusten a la realidad contemporánea que impera tras la inmersión de nuevas plataformas y modelos de negocios tecnológicos creados en los últimos años y

que no están explícitamente contemplados en la Ley. Asimismo, se aclara cómo debe calcularse el canon por ocupación de habitación de acuerdo al modelo de negocio particular del intermediario, en aras de cumplir con las obligaciones que la legislación impone actualmente al Hostelero.

Como se aprecia, la Compañía de Turismo confronta grandes retos ante la práctica de algunos de estos intermediarios, que a todas luces pretenden evitar el cumplimiento con el recaudo y pago de este impuesto. Dicha práctica no tan solo afecta las actividades de la Compañía de Turismo de Puerto Rico y la economía de Puerto Rico en general, sino que representa un acto ilícito. Ante ello, esta Asamblea Legislativa entiende que amerita la aprobación de enmiendas a la antes citada Ley, con el propósito de que no se continúe privando al Gobierno de Puerto Rico de este importante ingreso, y que los consumidores puedan utilizar estas plataformas, intermediarios y/o nuevos modelos de negocios según su preferencia. De esta manera, se pone en igual de condiciones a los hosteleros locales, con las plataformas antes mencionadas. Estas enmiendas permitirán una fiscalización de todos los hosteleros, así como una competencia justa de mercado para todos aquellos que a la fecha están obligados por la Ley 272-2003. Así, se asegura el cobro, retención y posterior pago del canon por ocupación de habitación en cuanto a las transacciones hechas a través de esas plataformas, intermediarios y/o nuevos modelos de negocios que sirven como intermediarios entre el Hostelero y el Ocupante o Huésped.

El Gobierno de Puerto Rico se encuentra ahora en proceso de implantar las medidas contempladas en el Plan Fiscal. Paralelamente, el Gobierno se encuentra en proceso de reestructurar sus deudas a través de un procedimiento bajo el Título III de la "Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico", ("PROMESA," por sus siglas en inglés). Dichos procesos trazarán la ruta para la recuperación económica y fiscal de Puerto Rico. Por lo tanto, esta Asamblea Legislativa entiende necesario otorgarle al Gobierno de Puerto Rico las herramientas y el espacio necesario para permitirle implantar las medidas contempladas en el Plan Fiscal y finalizar el proceso de la reestructuración de sus deudas.

El pasado 29 de enero de 2017, esta Asamblea Legislativa aprobó la Ley 5-2017, conocida como la "Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico" (la "Ley de Responsabilidad Fiscal"). Dicha ley declaró un periodo de emergencia (el "Periodo de Emergencia") que se extendía hasta el 1 de mayo de 2017 y podía ser extendido por tres meses adicionales mediante orden ejecutiva del Gobernador. El pasado 30 de abril de 2017, el Gobernador promulgó la Orden Ejecutiva 2017-31 mediante la cual, entre otras cosas, extendió el Periodo de Emergencia por tres meses adicionales hasta el 1 de agosto de 2017. Sin embargo, esta Asamblea Legislativa entiende que el Gobierno necesita tiempo adicional para implantar exitosamente las medidas contempladas en el Plan Fiscal y completar la reestructuración de sus deudas. Por lo tanto, este proyecto de ley extiende el Periodo de Emergencia hasta el 31 de diciembre de 2017 y le permite al Gobernador extender dicho periodo, de ser necesario, por periodos

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 7 of 40

6

de no más de seis meses cada uno, mientras esté constituida una Junta de Supervisión Fiscal para Puerto Rico bajo PROMESA.

Esta Administración considera que esta propuesta legislativa es necesaria, en especial atención a la situación fiscal por la que estamos atravesando.

Esta Ley dispone diferentes medidas que esta Administración está tomando para cumplir y adelantar la implementación del Plan Fiscal certificado conforme a las disposiciones de PROMESA.  Los asuntos atendidos en esta Ley son germanos entre sí, toda vez que todos van dirigidos a dar cumplimiento al Plan Fiscal.

La Sección 17 del Artículo III de la Constitución de Puerto Rico, dispone en lo pertinente que "[n]o se aprobará ningún proyecto de ley ...que contenga más de un asunto, el cual deberá ser claramente expresado en su título, y toda aquella parte de una ley cuyo asunto no haya sido expresado en el título será nula. Dicha citada Sección establece la regla de un solo asunto que exige que toda ley aprobada por la Legislatura regule un solo asunto o materia. Sobre este particular el Tribunal Supremo de Puerto Rico ha señalado que dicha disposición "no requiere que el título constituya un índice detallado del contenido de la ley, sino meramente que sea un hito indicador del asunto cubierto por la misma." Herrero v. Emmanuelli, 179 D.P.R. 277, 295 (2010); Rodríguez v. Corte, 60 D.P.R. 919, 922 (1942).

Además, la jurisprudencia ha sido consistente al establecer que sólo ante un caso claro y terminante se justifica anular una ley por violar dicha disposición constitucional. Dorante v. Wrangler of P.R., 145 D.P.R. 408, 429-431 (1998) y casos allí citados. Nuestro máximo foro judicial ha "adoptado una postura comprensiblemente laxa para no maniatar al legislador". Herrero v. Emmanuelli, *supra*. Véase también J.J. Álvarez González, Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos, Bogotá, Editorial Temis S.A., 2009, pág. 244. En ese sentido, el Tribunal Supremo ha acotado que **<u>una interpretación estricta de la disposición constitucional podría impedir y obstaculizar el proceso legislativo, pues obligaría al legislador a aprobar múltiples leyes para regular un sólo asunto o materia general.</u>**" Herrero v. Emmanuelli, *supra*. (Énfasis nuestro.) Véase además M.H. Ruud, No Law Shall Embrace More Than One Subject, 42 Minn. L. Rev. 389, 393-394 (1958). Es decir, "el requerimiento no está diseñado como subterfugio para destruir legislación válida, sino como garantía de que el proceso legislativo se realice de forma transparente, de manera que cada proyecto de ley se discuta y se analice a cabalidad antes de ser aprobado." Herrero v. Emmanuelli, *supra*, págs. 295-296.

Por lo tanto, al examinarse la validez de una ley a la luz de la regla de un sólo asunto, es necesario auscultar todas sus disposiciones para determinar si éstas se relacionan entre sí y son afines con el asunto que se expresa en su título. Id. Lo que comprende "un solo asunto" se interpreta liberalmente, sin dejar de lado el propósito y

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 8 of 40

7

.objetivo de la exigencia constitucional. En ese tenor, "un estatuto puede comprender todas las materias afines al asunto principal y todos los medios que puedan ser justamente considerados como accesorios y necesarios o apropiados para llevar a cabo los fines que están propiamente comprendidos dentro del asunto general". Id. Véase además R.E. Bernier & J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, Segunda Edición, San Juan, Publicaciones JTS, 1987, pág. 81.

Esta Ley persigue un solo asunto: dar fiel cumplimiento al Plan Fiscal certificado por la Junta, y en ese contexto atender tiempo adicional para implantar exitosamente las medidas contempladas en el Plan Fiscal y completar la reestructuración de sus deudas. Por tal razón, promulgamos esta Ley, que atiende varios temas dirigidos a cumplir con el Plan Fiscal y la situación financiera que estamos atravesando.

Una vez más reiteramos nuestro compromiso de reencaminar a Puerto Rico por la ruta de la responsabilidad fiscal y el desarrollo económico para poder salir de la crisis vigente. No nos detendremos ante nada para devolverle a nuestra isla la estabilidad económica y fiscal necesaria para el mayor bienestar de nuestra ciudadanía en general.

*DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:*

Sección 1.-Se enmienda el apartado (a) de la Sección 4042.03 de la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico", para que lea como sigue:

"Sección 4042.03.-Tiempo de Remisión del Impuesto sobre Ventas y Uso

(a)     Los impuestos que se fijan por este Subtítulo, serán pagaderos al Secretario por la persona responsable de emitir el pago, en las fechas que se indican en esta Sección.

   (1)     ...

   (2)     Impuesto sobre Ventas.- Como regla general, el impuesto sobre ventas que se fija por este Subtítulo, será pagadero al Secretario por la persona responsable de emitir el pago, no más tarde del vigésimo (20mo.) día del mes siguiente al que ocurrió el cobro de dicho impuesto, o en aquella otra fecha o forma, según se establezca por el Secretario en relación con la forma, el tiempo y las condiciones que regirán el pago o depósito de dichas contribuciones retenidas.

      (A)     Pago del impuesto sobre ventas en plazos quincenales.– Efectivo el mes de julio de 2017, toda persona que cumpla con lo establecido en la cláusula (i) de este inciso (A) deberá

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 9 of 40

8

remitir el impuesto sobre ventas en plazos quincenales, conforme a lo dispuesto en este inciso.

(i)     Persona sujeta al pago del Impuesto sobre Ventas en Plazos Quincenales.- En los siguientes casos, el impuesto sobre ventas deberá ser pagadero al Secretario en dos plazos quincenales durante el mes en que surja el evento que da lugar a la imposición y pago del impuesto sobre ventas:

(I)     cuando la persona sea un Gran Contribuyente, según este término se define en la Sección 1010.01(a)(35) de este Código; o

(II)    cuando la persona sea un comerciante cuyo promedio mensual de impuesto sobre ventas depositado durante el año natural anterior exceda dos mil (2,000) dólares.

(ii)    Plazo Quincenal.- Para propósitos de este inciso (A), el primer plazo quincenal será el decimoquinto (15to) día de cada mes natural.  El segundo plazo quincenal será el último día del mes natural.

(iii)   Cómputo del pago del Impuesto sobre Ventas en Plazos Quincenales.-  Se entenderá que el comerciante sujeto al pago del impuesto sobre ventas bajo este inciso (A) cumplió con su obligación de depositar el impuesto sobre ventas en los plazos quincenales establecidos la cláusula (ii) anterior, si durante el mes natural en que surja el evento que da lugar a la imposición y pago del impuesto sobre ventas depositó lo menor de una de las siguientes cantidades:

(I)     ochenta (80) por ciento del impuesto sobre ventas determinado para dicho mes; o

(II)    setenta (70) por ciento del total de impuesto sobre ventas remitido durante el mismo mes del año natural anterior.

(iv)    Penalidad por no depositar el Impuesto sobre Ventas en Plazos Quincenales.- Toda persona obligada a

depositar el impuesto sobre ventas en plazos quincenales, estará sujeta a la imposición de la penalidad de diez (10) por ciento sobre el monto del impuesto que debió ser depositado y no fue depositado en los plazos quincenales según lo dispuesto en este inciso (A). Esta penalidad será adicional a cualquier otra penalidad impuesta por este Código. El Secretario podrá eximir, total o parcialmente, la penalidad aquí impuesta a cualquier persona que demuestre que el haber dejado de cumplir con lo dispuesto en este inciso (A) se debió a causa razonable o circunstancias fuera de su control.

(3)     Reservada.

(b)     ...

        ..."

Sección 2.-Se enmienda el apartado (e) de la Sección 4042.04 de la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico", para que lea como sigue:

"Sección 4042.04.-Forma de Pago.

(a)     ...

...

(e)     Con respecto a cualquier pago de impuesto sobre ventas o sobre uso, el Secretario aceptará los pagos como remitidos a tiempo si tienen el matasellos postal o recibo de pago electrónico fechado no más tarde del décimo (10mo.) o vigésimo (20mo) día del mes siguiente a que se recauden dichos impuestos, del mes siguiente al que ocurrió la transacción objeto del impuesto, según sea el caso, a tenor con la Sección 4042.03 de este Código, o no más tarde del último día del período quincenal correspondiente conforme a la Sección 4042.03(a)(2)(A)(ii) de este Código. Si el día de pago correspondiente fuese sábado, domingo, o día festivo federal o estatal, los pagos serán aceptados si tienen matasellos o recibo de pago electrónico del día hábil siguiente. Disponiéndose, que aquellos pagos que el Secretario requiera que se envíen por medios electrónicos deberán ser recibidos no más tarde del día de pago indicado en la Sección 4042.03 de este Código, sujeto a lo dispuesto en esta Sección, o la fecha establecida por el Secretario

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 11 of 40

10

mediante reglamento a tenor con la Sección 4042.03 de este Subtítulo, cual fuere aplicable."

Sección 3.-Se enmienda el Artículo 2 de la Ley 272-2003, según enmendada, mejor conocida como la "Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico", para que lea como sigue:

"Artículo 2.-Definiciones

A los propósitos de esta Ley, los siguientes términos tendrán el significado que a continuación se expresa:

(1)     Anotación...

(2)     Alojamiento Suplementario a Corto Plazo (short term rentals) - Significa cualquier instalación, edificio o parte de un edificio, dado en alquiler por un período de tiempo menor a noventa (90) días, dedicado al alojamiento de personas mediante paga, cuya instalación, edificio o parte del mismo no sea un hotel, condohotel, hotel todo incluido, motel, Parador, pequeña hospedería, casa de hospedaje y/o hotel de apartamentos. Dicho término incluirá, sin limitarse a, cualquier tipo de propuesta de alojamiento alternativo como casas, apartamentos, cabañas, villas, casas rodantes (móviles), flotantes, botes, entre otros conceptos de arrendamientos por un término menor de noventa (90) días.

(3)     Procedimiento de Apremio...

(4)     Auditar...

(5)     Autoridad...

(6)     Banco...

(7)     Casa de Hospedaje...

(8)     Canon por Ocupación de Habitación - Significa la Tarifa que le sea facturada a un Ocupante o Huésped por un Hostelero por la ocupación de cualquier habitación de una Hospedería, valorado en términos de dinero, ya sea recibido en moneda de curso legal o en cualquier otra forma e incluyendo, pero sin limitarse a entradas en efectivo, cheque de gerente o crédito. La definición de Canon por Ocupación de Habitación incluirá, sin limitarse a, el dinero recibido por la Hospedería por concepto de Habitaciones Cobradas pero no Utilizadas y por concepto de Penalidades

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 12 of 40

11

por Habitación y por concepto de cualesquiera cargos, tarifas o impuestos adicionales (fees, resort fees y/o taxes) que le sea facturada a un Ocupante o Huésped por concepto de la estadía en una Hospedería. En caso de ofertas, especiales, paquetes de estadías o programas de descuentos, que sean vendidas u ofrecidas por cualquier medio incluyendo, pero sin limitarse a, internet o cualquier aplicación tecnológica, se deberá excluir del canon por ocupación de habitación aquellas partidas reembolsables por concepto de depósitos de garantía (security deposits) facturadas al ocupante o huésped, así como aquellas comisiones por concepto del servicio brindado por el intermediario, siempre y cuando dichas Comisiones sean divulgadas a la Compañía al momento de someter su planilla mensual y evidenciadas debidamente por parte del Hostelero a la Compañía. Si las comisiones son pagadas al intermediario dentro de la Tarifa cargada por el Hostelero al Ocupante o Huésped, entonces dicha Comisión estará sujeta al canon por ocupación de habitación. En aquellos casos en los cuales la cantidad facturada al Ocupante o Huésped sea diferente a la recibida por el Hostelero, se entenderá que el Canon por Ocupación de Habitación será el que resulte más alto de los dos.

(9)     Canon por Habitación cobrada y no utilizada...

(10)    Centro...

(11)    Costo por Habitación...

(12)    Comisión - Cualquier pago o compensación otorgada al Intermediario por concepto del servicio acordado u ofrecido.

(13)    Compañía...

(14)    Compañía de Parques Nacionales...

(15)    Contribuyente...

(16)    Corporación...

(17)    Declaración...

(18)    Deficiencia...

(19)    Deuda...

(20)    Director...

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 13 of 40

12

(21)   Error matemático o administrativo...

(22)   Habitación...

(23)   Hostelero - Significa cualquier persona natural o jurídica que opere una Hospedería en Puerto Rico incluyendo, pero sin limitarse a, el dueño, agente, propietario, operador, arrendatario, subarrendatario hipotecario, tenedor de los mismos, proveedores, Intermediarios, dueños, u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals). Para efectos de esta Ley, el término agente comprenderá a aquellos individuos incluyendo, sin limitarse a, corredores de bienes raíces que gestionen el cobro de un canon de arrendamiento por concepto de alquiler de Alojamientos Suplementarios a Corto Plazo para el alojamiento de huéspedes.

(24)   Hospedería - Significa cualquier instalación o edificio amueblado, regularmente usado y mantenido abierto para el alojamiento de huéspedes mediante el pago de un canon de alquiler, que derive sus ingresos del alquiler o arrendamiento de habitaciones, y que dentro de sus ofrecimientos provea tarifas de alquiler o arrendamiento computadas en forma diaria, semanal, fraccional, o mediante un canon global por concepto de todo incluido. El término Hospedería también incluirá hoteles, condohoteles, hoteles todo incluido, moteles, Paradores, casas de huéspedes, Alojamiento Suplementario a Corto Plazo (short term rentals), pequeñas hospederías, casas de hospedaje, hoteles de apartamentos y facilidades recreativas operadas por agencias o instrumentalidades del Gobierno de Puerto Rico.

(25)   Hotel todo incluido...

(26)   Impuesto...

(27)   Intermediario - Se refiere a cualquier persona natural o jurídica que por cualquier medio, incluyendo el internet o cualquier aplicación tecnológica, ofrezca o facilite la ocupación entre huéspedes y proveedores, dueños, u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals), aunque dicho intermediario no opere, directa o indirectamente, tal propiedad utilizada como Alojamiento Suplementario a Corto Plazo (short term rental). Incluye, además, a personas naturales o jurídicas que promuevan o vendan ofertas, especiales, paquetes de estadías o programas de descuentos para estadías en Hospederías por cualquier medio incluyendo, pero sin limitarse a, internet o cualquier aplicación tecnológica.

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 14 of 40

13

(28)   Negociado...

(29)   Notificación...

(30)   Número de Identificación Contributiva - Significa el número que sea asignado por la Compañía al Contribuyente, y el cual deberá ser utilizado por  dicho Contribuyente en la Declaración, según se establezca por esta Ley o los reglamentos aprobados a su amparo. En el caso de Intermediarios entre huéspedes y proveedores, dueños, u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals), dichos Intermediarios tendrán la obligación de requerirle a los proveedores, dueños, u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals) que se registren con la Compañía y obtengan un Número de Identificación Contributiva previo a realizar negocios con estos.

(31)   Ocupación...

(32)   Ocupante o huésped...

(33)   Penalidad por Habitación...

(34)   Revisar...

(35)   Tarifa...

(36)   Tarifa Promedio Diaria...

(37)   Tasación..."

Sección 4.-Se enmienda el Artículo 26 de la Ley 272-2003, mejor conocida como la "Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico", para que lea como sigue:

"Artículo 26.-Número de Identificación Contributiva

Toda Hospedería y/o Hostelero sujeto a las disposiciones de esta Ley solicitarán y obtendrán de la Compañía un Número de Identificación Contributiva, y para ello se regirá por los procedimientos que la Compañía adopte mediante reglamentación aprobada al efecto. Toda persona natural o jurídica que sea intermediario entre huéspedes y proveedores, dueños, u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals), tendrá la obligación de requerirle a sus proveedores, dueños,

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 15 of 40

14

u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals) que se registren como Contribuyente con la Compañía y obtengan Número de Identificación Contributiva, previo a realizar negocios con estos."

Sección 5.- Se enmienda el Artículo 27 de la Ley 272-2003, mejor conocida como la "Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico", para que lea como sigue:

"Artículo 27.-Responsabilidad del Hostelero de retener y remitir a la Compañía el Impuesto

A. Todo Hostelero tendrá la obligación de recaudar, retener y remitir a la Compañía el Impuesto fijado en el Artículo 24 de esta Ley. Los Intermediarios vendrán obligados a recaudar, retener y remitir a la Compañía el mencionado Impuesto. En el caso de personas naturales o jurídicas que promuevan o vendan ofertas, especiales, paquetes de estadías o programas de descuentos para estadías en Hospederías por cualquier medio incluyendo, pero sin limitarse a, internet o cualquier aplicación tecnológica, serán dichas personas naturales o jurídicas las responsables de recaudar, retener y remitir a la Compañía el Impuesto mencionado.

B. ...

C. ...

D. ...

E. ..."

Sección 6.-Reglamentación.

El Secretario de Hacienda establecerá mediante reglamento, carta circular, u otra determinación administrativa de carácter general, las normas necesarias para la aplicación de esta Ley.

Sección 7.-Se enmienda el inciso (q) del Artículo 103 de la Ley 5-2017, para que lea en su totalidad como sigue:

"Artículo 103.-Definiciones

Las siguientes palabras y términos, cuando se usen en esta Ley, tendrán los significados que se establecen a continuación:

...

(q) "Periodo de Emergencia" significa el periodo que comienza en la fecha de efectividad de esta Ley y que termina el 31 de diciembre de 2017, disponiéndose que, mientras esté constituida la Junta de Supervisión Fiscal para Puerto Rico de conformidad con PROMESA, el Gobernador podrá, de ser necesario, extender dicho periodo por términos de no más de seis (6) meses cada uno mediante orden ejecutiva.

...

**EN EL TEXTO EN INGLÉS:**

Article 103.– Definitions

The following words and terms, when used in this Act, shall have the meaning stated below:

...

(q) "Emergency Period" shall mean the period beginning on the effective date of this Act and ending on December 31, 2017, provided that, so long as the Oversight Board is constituted for Puerto Rico pursuant to PROMESA, the Governor may, if necessary, extend such period for additional terms of no more than six (6) months each through executive order.

..."

Sección 8.- Se enmienda el Artículo 12 de la Ley 3-2017, mejor conocida como la "Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico", para que lea como sigue:

"Artículo 12.- Control fiscal y reconstrucción económica.

...

INFORME SEMESTRAL.- Toda Entidad de la Rama Ejecutiva tendrá el deber ministerial de preparar y enviar al Gobernador y a las Secretarías del Senado de Puerto Rico y la Cámara de Representantes, un informe semestral, a partir de noventa (90) días luego de aprobada esta Ley y durante el periodo de su vigencia,

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 17 of 40

16

que indique en forma segmentada y detallada las medidas tomadas, los resultados y toda aquella información pertinente que demuestre y pueda medir el cumplimiento con las disposiciones de esta Ley.

...″

Sección 9.-Se enmienda el Artículo 26 de la Ley 3-2017, mejor conocida como la "Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico", para que lea como sigue:

"Artículo 26.-Responsabilidad Fiduciaria.

...

La Oficina de Gerencia y Presupuesto estará a cargo de reglamentar e implementar las disposiciones en este Artículo relacionadas a la imposición de multas administrativas. Además, la Oficina de Gerencia y Presupuesto tendrá el deber ministerial de preparar y enviar al Gobernador y a las Secretarías del Senado de Puerto Rico y la Cámara de Representantes, un informe semestral, a partir de noventa (90) días luego de aprobada esta Ley y durante el periodo de su vigencia, que indique en forma segmentada y detallada las medidas tomadas, los resultados y toda aquella información pertinente que demuestre y pueda medir el cumplimiento con las disposiciones de esta Ley.

...″

Sección. 10.-Separabilidad.

Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley en la mayor medida posible, aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 18 of 40

17

alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. La Asamblea Legislativa hubiera aprobado esta Ley sin importar la determinación de separabilidad que el Tribunal pueda hacer.

Sección. 11.-Vigencia.

Esta Ley entrará en vigor inmediatamente después de su aprobación.

**DEPARTAMENTO DE ESTADO**
Certificaciones, Reglamentos, Registro
de Notarios y Venta de Leyes
Certifico que es copia fiel y exacta del original
Fecha: 20 de julio de 2017

Firma

Eduardo Arosemena Muñoz
Secretario Auxiliar
Departamento de Estado
Gobierno de Puerto Rico

# EXHIBIT 14B

(H. B. 1133)

## (No. 46-2017)

## (Approved July 19, 2017)

# AN ACT

To    amend Sections 4042.03 and 4042.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; amend Sections 2, 26, and 27 of Act No. 272-2003, as amended, known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act"; amend Section 103 of Act No. 5-2017, known as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017"; amend Sections 12 and 26 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," in order to establish additional revenue and liquidity measures for the Government of Puerto Rico; establish that certain merchants are required to remit the Sales and Use Tax in semimonthly installments; clarify the responsibility of certain merchant intermediaries with respect to the collection of the Room Occupancy Rate Tax; extend the period of emergency established in the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017"; modify the report requirement provided for in Act No. 3-2017 from quarterly reports to semiannual reports, within ninety (90) days as of the approval of this Act and during its effectiveness; and for other related purposes.

## STATEMENT OF MOTIVES

Puerto Rico is currently undergoing a serious fiscal and social crisis. Said crisis was caused, in part, by a lack of expenditure controls, sustainable development measures, as well as management information systems that promote clarity and transparency in government affairs.

According to data provided by the U.S. Department of the Treasury, Puerto Rico is suffering a 14.6% cumulative economic contraction in the Gross State Product (actual GSP) with a forecast of an additional 3% contraction in the next two years. For years, the Government of Puerto Rico has operated with a structural deficit

that has been financed with bond issues and loans from the Government Development Bank. The Government of Puerto Rico has been lacking liquidity for over a year, and the tax refunds, the payments to contractors, pensioners' funds, and intra-governmental loans have been used to substitute sources of liquidity. The Government Development Bank has failed to meet its obligations to bondholders since May 1, 2016, and is no longer fulfilling its duty to provide liquidity. Moreover, retirement systems are practically insolvent.

Bad past decisions combined with our defenselessness as a colony led the United States Congress to promulgate the Puerto Rico Oversight, Management, and Economic Stability Act, known as PROMESA, Public Law 114-187, which delegated vast powers to the Financial Oversight Board (hereinafter the "Oversight Board"). Pursuant to PROMESA, any ongoing fiscal, budget, legislative, or executive actions taken in Puerto Rico, as well as any debt restructuring, whether consensual or not, as well as any debt issue, guarantee, exchange, modification, repurchase, or redemption is subject to oversight.

Through Section 4 of PROMESA, the Congress expressly stated its intent that said Act shall prevail over any state legislation that is in conflict with PROMESA. Section 8(2) likewise reasserts this provision by providing that the Government of Puerto Rico may not enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of PROMESA, as determined by the Oversight Board. Hence, we cannot promulgate legislation to defeat or impair PROMESA, its provisions, and its scope. It is evident therefore that we must work within the parameters of PROMESA to initiate the financial and fiscal recovery of Puerto Rico and, in turn, solve our political status issue.

At the beginning of our Administration, we found a cash deficit of over $7 billion as certified by the Federal Treasury and the Oversight Board. In other words, what was passed on to us was a Government with no access to capital markets, with

a "junk" credit rating, with no liquidity and no transparency in public finances, where public spending was excessive, and the public debt amounted to billions of dollars. Furthermore, the Governor had the enormous task of restoring the credibility of the Island in the market and before the Oversight Board. We must guarantee therefore a Government that spends in accordance with the actual revenues generated.

Since January 2nd, we have been implementing a systematic plan to control government spending, reactivate our economy, and allow for the conditions to create more and better jobs in the private sector. We are showing the world that Puerto Rico is open to do business in an environment of government stability and security. We have worked nonstop, and the approval of over twenty reform measures during the first three (3) months of this Administration proves it. Undoubtedly, our efforts have changed the course of Puerto Rico and have set it on a path of fiscal responsibility.

On February 28, 2017, the Governor submitted a Fiscal Plan that is complete, thorough, real, and also sensible to the needs of our People. On March 13, 2017, the Oversight Board accepted and certified our Fiscal Plan together with a series of contingencies to guarantee that government employees shall not be dismissed, the workweek shall not be affected, the People's access to healthcare services shall be maintained, and the pensions of those who are most vulnerable shall be protected.

The Fiscal Plan's approved measures are geared toward achieving the fiscal goals, promoting the economic development and our capacity to restore our credibility, allowing the change to translate into a long-term benefit rather than a mere cutback and, most of all, ensuring that those who are most vulnerable and those who work hard every day have a better quality of life. The validation of the Fiscal Plan represents the recognition of the credibility of the new Government. We have shown that the times of incoherence and improvisation are over to give way to working as a team and obtaining results that inure to the benefit of Puerto Rico.

The changes we are implementing are not easy and will take time, but they will also yield results within the first two years. Under the certified Fiscal Plan, we shall be able to strike a balance between revenues and expenditures by Fiscal Year 2019. Now is the time to execute these changes. The contingencies of the Fiscal Plan require the Government's compliance. Liquidity must be ensured in order to avoid any impact on the salary of government employees, the health of the People, and the income of pensioners.

Even though there are many obstacles that we must overcome in our journey toward a definite recovery, there is hope and optimism among our people. We must seize this moment and rise to the challenges in order to successfully achieve the significant changes that Puerto Rico needs.

In view of our dire liquidity situation, we need to adopt measures to improve the treasury's condition. This Act provides therefor in two instances:

Currently, Sections 1061.20 and 1061.23 of the Internal Revenue Code of 2011, as amended, better known as the "Internal Revenue Code for a New Puerto Rico," (the Code) establishes the requirement for individuals and corporations alike to pay an estimated income tax, provided for in Subtitle A of the Code, in four installments during a taxable year. This estimated tax mechanism assists the Government in maintaining its liquidity throughout the fiscal year in lieu of relying on the payment of taxes after the fifteenth day of the fourth month following the close of the taxpayer's fiscal year. This amendment provides for certain taxpayers to remit the payment of the SUT to the Department of the Treasury in semimonthly installments. In doing so, a greater cash flow is achieved and the constant receipt of revenues is thus allowed.

In keeping with the foregoing, this Legislative Assembly deems it meritorious to include the Sales and Use tax in the estimated tax system for the purpose of improving the liquidity of the Island's treasury and meeting the obligations of the Government of Puerto Rico responsibly and timely.

Moreover, the tourism industry has experienced great changes over the last decade, specifically upon the birth of the sharing economy and the online marketplace. The popularity of these platforms that serve as intermediaries between hoteliers and potential guests has a significant impact on Puerto Rico's tourism industry. The increase in reservations using these intermediaries coupled with the lack of clarity of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," in terms of the process to be followed in the case of these new scenarios may potentially prevent the Government of Puerto Rico from collecting large amounts of revenues on account of the room occupancy rate.

During Fiscal Year 2016-2017, the proceeds from the room occupancy rate tax were reduced by over $10,000,000.00 compared to Fiscal Year 2015-2016. This decrease is the result of the effects of the ZIKA virus, among other issues, in addition to the fact that many visitors are resorting to these new platforms and business models to reserve their stays.

The Puerto Rico Tourism Company argues that a significant number of lodging providers of these new models and platforms are not registered as required by law due to the existing lack of clarity of the current definition of Hotelier of Act No. 272-2003. Based on the latest figures on the number of lodgings registered in certain platforms (average rate and occupancy percentage), it is estimated that the room occupancy rate tax to be collected from these platforms amounts to around $560,000 a month. From this monthly total, it is estimated that 50% is not being reported by Hoteliers. This represents losses of approximately $280,000 monthly

and $3,360,000 annually. These numbers shall increase exponentially as the popularity of these new business models continues to increase and visitors choose them to reserve their stays rather than resorting to the traditional lodging reservation system.

The definition of Hotelier of Act No. 272-2003 is comprehensive but lacks specificity for purposes of addressing technological innovations and, in turn, requiring these new business models that have made their way into the market and serve as intermediaries between hoteliers and guests to collect the room occupancy rate. This ambiguity has led many of these intermediaries to disengage from their responsibility to collect the room occupancy rate arguing that such legislation cannot be applied to their specific business models. To clarify this juridical loophole, these amendments modify certain definitions and descriptions of Act No. 272-2003 so as to adjust them to the modern reality, which now includes these new online business platforms and models created in recent years, and for which the Act does not explicitly provides. Likewise, the manner in which the room occupancy rate shall be computed in the specific case of the intermediaries' business model is clarified in order to meet the obligations currently imposed on Hoteliers by legislation.

As shown, the Tourism Company faces great challenges posed by the practices of some intermediaries who evidently seek to avoid complying with the collection and payment of such tax. Such practice not only affects the activities of the Tourism Company and the economy of Puerto Rico in general, but also is illegal. Hence, this Legislative Assembly believes that approving the amendments to the aforementioned Act is warranted in order to ensure that the Government of Puerto Rico collects such important revenues and that consumers are able to use these platforms, intermediaries, and/or new business models at their leisure. In this manner, local hoteliers and the aforementioned platforms shall be on an equal footing. These amendments shall allow for the oversight of all hoteliers as well as

the fair competition in this market for all those who are subject to the requirements of Act No. 272-2003 as of this date. Thus, the collection, withholding, and subsequent payment of the room occupancy rate is guaranteed in connection with transactions conducted through these platforms, intermediaries, and/or new business models that serve as intermediaries between the Hotelier and the Occupant or Guest.

The Government of Puerto Rico is in the process of implementing the measures included in the Fiscal Plan. In turn, the Government is undergoing a debt restructuring process under Title III of the "Puerto Rico Oversight, Management, and Economic Stability Act," (PROMESA). Such processes shall lead the way toward the economic and fiscal recovery of Puerto Rico. For such reason, this Legislative Assembly deems it necessary to provide the Government of Puerto Rico with the tools and room necessary to allow for the implementation of the measures included in the Fiscal Plan and the completion of the debt restructuring process.

On January 29, 2017, this Legislative Assembly approved Act No. 5-2017, known as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017" (the Fiscal Responsibility Act). Such Act declared an emergency period (the "Emergency Period") until May 1, 2017, which may be extended for three additional months through an executive order of the Governor. On April 30, 2017, the Governor issued Executive Order 2017-31 whereby the Emergency Period was extended for three additional months, until August 1st, 2017, among other things. This Legislative Assembly, however, believes that the Government needs additional time to implement successfully the measures included in the Fiscal Plan and to complete the debt restructuring. Therefore, this bill extends the Emergency Period until December 31, 2017, and allows the Government to extend it, if necessary, for additional periods of not more than six months each, while a Financial Oversight Board for Puerto Rico is still constituted under PROMESA.

This Administration believes that this legislative proposal is necessary especially in view of the fiscal situation that we are currently undergoing.

This Act provides different measures that this Administration is taking to comply with and further the implementation of the Fiscal Plan certified in accordance with the provisions of PROMESA. The matters addressed herein are all germane since they are geared toward compliance with the Fiscal Plan.

Section 17 of Article III of the Constitution of Puerto Rico provides that: "Every bill, […] shall be confined to one subject, which shall be clearly expressed in its title, and any part of an act whose subject has not been expressed in the title shall be void." Said Section establishes the rule of only one subject, which requires that every law approved by the Legislative Assembly embraces no more than one subject. On this matter, the Supreme Court of Puerto Rico has held that said provision "does not require the title to be a detailed account of the contents of the law, but rather a mere indicator of the subject matter covered thereunder." [Translation supplied]. *Herrero v. Emmanuelli*, 179 D.P.R. 277, 295 (2010); *Rodríguez v. Corte*, 60 D.P.R. 919, 922 (1942).

Moreover, the case law has been consistent in establishing that only when a case is clear and conclusive it is thus warranted to void a law that violates said constitutional provision. *Dorante v. Wrangler of P.R.,* 145 D.P.R. 408, 429-431 (1998) and cases cited therein. Our highest court has "adopted a stance understandably lax not to curtail lawmakers." [Translation supplied]. *Herrero v. Emmanuelli, supra. See also*, J.J. Álvarez-González, *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos* [Constitutional Law of Puerto Rico and Constitutional Relationships with the United States], Bogotá, Editorial Temis, S.A., 2009, p. 244. In this sense, the Supreme Court has held that "**a strict interpretation of the constitutional provision may impair and hinder the legislative process, since it will compel the lawmaker to enact**

**multiple laws to regulate one general subject or matter**." *Herrero v. Emmanuelli*, *supra*, [Emphasis added]. *See also*, M. H. Ruud, No Law Shall Embrace More Than One Subject, 42 Minn. L. Rev. 389,393-394 (1958). That is,

> The requirement is not intended as a subterfuge to destroy valid legislation, but rather as a guarantee that the legislative process is to be carried out with transparency and that each bill is to be discussed and analyzed in depth before it is approved.

*Herrero v. Emmanuelli, supra*, pp. 295-296.

Therefore, upon examining the validity of an act in light of the one subject rule, it is necessary to consider all of the provisions of a law in order to determine whether these have a correlation or not and if they pertain to the subject expressed in the title. *Id*. What constitutes "only one subject" is construed liberally without neglecting the purpose and objective of the constitutional requirement. In this regard, "a statute may address all the topics related to the subject matter and all of the means that may be fairly considered to be supplementary and necessary or appropriate to fulfill the purposes inherent to the general subject."[Translation supplied] *Id*. *See also*, R. E. Bernier & J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico* [Approval and Interpretation of the Laws of Puerto Rico], Segunda Edición, San Juan, Publicaciones JTS, 1987, p. 81.

This Act addresses one subject: to achieve full compliance with the Fiscal Plan certified by the Board and, within such context, allow additional time to successfully implement the measures of the Fiscal Plan and complete the debt restructuring. For such reason, we promulgate this Act, which addresses several topics geared to complying with the Fiscal Plan and our current financial situation.

Once again, we reassert our commitment to set Puerto Rico on a path of fiscal responsibility and economic development in order to be able to overcome the current crisis. We will stop at nothing to restore our Island's economic and fiscal stability which is necessary for the welfare of our People.

***BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:***

Section 1.- Subsection (a) of Section 4042.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4042.03.- Time to Remit the Sales and Use Tax

(a)     The taxes imposed in this Subtitle shall be payable to the Secretary by the person liable for issuing the payment, on the dates set in this Section.

(1)     …

(2)     Sales and Use Tax.- In general, the sales tax imposed in this Subtitle shall be payable to the Secretary by the person liable for issuing the payment not later than the twentieth (20th) day of the month following the month in which said tax was collected, or on that other date or manner, as established by the Secretary regarding the manner, time, and conditions that shall govern the payment or deposit of said withheld taxes.

(A)     Payment of Sales Tax in Semimonthly Installments.- Effective on July 2017, any person who complies with the provisions of clause (i) of this subparagraph (A) shall remit the sales tax in semimonthly installments in accordance with this subparagraph.

(i)     Person subject to the payment of the Sales Tax in Semimonthly Installments.- In the following cases, the sales tax shall be payable to the Secretary in two semimonthly installments during the month in which the event that caused the imposition and payment of the sales tax occurs:

Case:17-03283-LTS Doc#:3126-14 Filed:05/23/18 Entered:05/23/18 11:45:37 Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English) Page 30 of 40

11

(I) when the person is a Large Taxpayer, as this term is defined in Section 1010.01(a)(35) of this Code; or

(II) when the person is a merchant whose average sales tax deposited monthly during the previous calendar year exceeds two thousand dollars ($2,000).

(ii) Semimonthly Installment.- For purposes of this subparagraph (A) the first semimonthly installment shall be due on the fifteenth (15th) day of every calendar month. The second semimonthly installment shall be due on the last day of the calendar month.

(iii) Computation of the Payment of Sales Tax in Semimonthly Installments.- It shall be understood that the merchant subject to the payment of the sales tax under this subparagraph (A) fulfilled his obligation to deposit the sales tax in semimonthly installments as established in clause (ii) above, if during the calendar month in which the event that caused the imposition and payment of the sales tax occurs the merchant deposited the lesser of the following amounts:

(I) eighty percent (80%) of the sales tax determined for such month; or

(II) seventy percent (70%) of the total sales tax remitted during the same month of the previous calendar year.

(iv) Penalty for failure to deposit the Sales Tax in Semimonthly Installments.- Any person required to deposit the sales tax in semimonthly installments shall be subject to the imposition of a penalty of ten percent (10%) of the tax amount that he should have, but failed to deposit in semimonthly installments as provided in this subparagraph (A).This penalty shall be in addition to any other penalty imposed under this Code. The Secretary may exempt any person, whether in whole or in part, from the penalty provided herein when it is

shown that a noncompliance with the provisions of this subparagraph (A) was for a reasonable cause or circumstances out of his control.

        (3)    Reserved.

    (b)    …

          …"

Section 2.- Subsection (e) of Section 4042.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4042.04.- Payment Method

    (a)    …

…

    (e)    Regarding any payment of sales and use tax, the Secretary shall accept all payments as remitted on time if they are postmarked, or if the date on the electronic payment receipt is not later than the tenth (10th) or twentieth (20th) day of the month following the month in which said taxes are collected or the month following the month in which the transaction subject to taxation was carried out, as the case may be, in accordance with Section 4042.03 of this Code, or not later than the last day of the appropriate semimonthly period, in accordance with Section 4042.03(a)(2)(A)(ii) of this Code. Should the day of payment fall on a Saturday, Sunday, or Federal or Commonwealth holiday, the payments shall be accepted if they are postmarked on, or if the date of electronic payment receipt is the following business day. Provided, that those payments that the Secretary requires to be electronically transferred must be received not later than the day of payment established in Section 4042.03 of this Code, subject to the provisions of this Section, or on the date, or on the date established by the Secretary through regulations, pursuant to Section 4042.03 of this Subtitle, as applicable."

Section 3.- Section 2 of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 2.- Definitions

For purposes of this Act, the following terms shall be defined as follows:

(1)    Entry…

(2)    Short-term Rentals. — Means every facility, building or part of a building leased for a period of less than ninety (90) days, devoted to the lodging of people for pay, which facility, building or part thereof is not a hotel, condohotel, all-inclusive hotel, motel, Parador, inn, guesthouse, and/or apartment hotel. Said term shall include, without limitation, any type of proposed alternative lodging such as houses, apartments, cottages, villas, mobile homes, floating homes, boats, among other types of rentals, for a period of less than ninety (90) days.

(3)    Compulsory Procedure…

(4)    Audit…

(5)    Authority…

(6)    Bank…

(7)    Guesthouse…

(8)    Room Occupancy Rate. — Means the Rate charged by an Hotelier to an Occupant or Guest for the occupancy of any room of a Lodging, valued in terms of money, whether received in cash or otherwise, including, without limitation, all the income in cash, manager's check, or credit. The definition of Room Occupancy Rate shall include, without limitation, the money received by the Lodging on account of Paid but Unused Rooms, Room Penalties and any other charge, rate, or additional tax ('fees,' 'resort fees,' and/or 'taxes') that a hotelier charges to an Occupant or Guest for a stay in a lodging. In the event of offers, specials, stay packages, or discount programs, sold or offered by any means including, but not limited to,

internet or any application software, any refundable items such as security deposits, charged to an occupant or guest as well as any commission on account of the services rendered by the intermediary shall be exempt from the room occupancy rate, provided that said Commissions are disclosed to the Company at the time of filing the monthly return and are duly evidenced by the Hotelier to the Company. If the commissions are paid to the intermediary as part of the Rate charged by the Hotelier to the Occupant or Guest, then, such Commission shall be subject to the room occupancy rate. In the event that the amount charged to the Occupant or Guest is different from that received by the Hotelier, it shall be understood that the Room Occupancy Rate shall be the higher of the two amounts.

(9)     Rate for paid but unused room…

(10)    Center…

(11)    Room cost…

(12)    Commission – Any payment or compensation that the Intermediary receives on account of agreed or rendered services.

(13)    Company…

(14)    National Parks Company…

(15)    Taxpayer…

(16)    Corporation…

(17)    Declaration…

(18)    Deficiency…

(19)    Debt…

(20)    Director…

(21)    Mathematical or clerical error…

(22)    Room…

(23)   Hotelier. — Means any natural or juridical person that operates a Lodging in Puerto Rico including, without limitation, the owner, agent, proprietor, operator, lessee, mortgagor sublessee or the holder thereof, providers, Intermediaries, owners, or operators of properties used as Short-term Rentals. For purposes of this Act, the term agent shall include those individuals including, without limitation, real estate brokers that collect the room occupancy rate for Short-term Rentals for the lodging of guests.

(24)   Lodging. — Means any furnished building or facility, commonly used and maintained open for the lodging of guests for a rental rate, which derives revenues from the rental of rooms, and that within its offerings provides rental rates computed daily, weekly, fractionally, or by a global rent on account of an all-inclusive concept. The term Lodging shall also include hotels, condohotels, all-inclusive hotels, motels, Paradores, bed and breakfast, Short-term Rentals, inns, guesthouses, apartment hotels, and recreational facilities operated by the agencies or instrumentalities of the Government of Puerto Rico.

(25)   All-inclusive hotel…

(26)   Tax…

(27)   Intermediary. — Means any natural or juridical person that by any means, including the internet and application software, offers or facilitates occupancy between guests and providers, owners, or operators of property used as Short-term Rentals, even when such intermediary does not operate, directly or indirectly, such property used as a Short-term Rental. The term also includes natural or juridical persons who promote or sell offers, specials, stay packages, or discount programs to stay at a Lodging by any means, including, but not limited to, the internet and any application software.

(28)   Bureau…

(29)   Notification…

(30)   Taxpayer Identification Number. — Means the number the Company shall assign to the Taxpayer, and that must be used by said Taxpayer in the Declaration, as shall be established by this Act or the regulations approved hereunder. In the case of Intermediaries between guests and providers, owners, or operators of property used as Short-term Rentals, such Intermediaries shall require said providers, owners, or operators of property used as Short-term Rentals to register with the Company and obtain a Taxpayer Identification Number prior to doing business with them.

(31)   Occupancy…

(32)   Occupant or Guest…

(33)   Room Penalty…

(34)   Review…

(35)   Rate…

(36)   Daily Average Rate…

(37)   Assessment…"

Section 4.- Section 26 of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 26.- Tax Identification Number

Every Lodging and/or Hotelier subject to the provisions of this Act shall apply for and obtain a Tax Identification Number from the Company, and for this purpose shall follow the procedures adopted by the Company through regulations approved to such effect. Any natural or juridical person who is an intermediary between guests and providers, owners, or operators of property used as Short-term Rentals shall require said providers, owners, or operators of property used as Short-term Rentals to register with the Company as a Taxpayer to obtain a Taxpayer Identification Number prior to doing business with them."

Section 5.- Section 27 of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 27.- Responsibility of the Hotelier to Withhold and Remit the Tax to the Company

A.    Every Hotelier shall be required to collect, withhold, and remit to the Company the Tax established in Section 24 of this Act. Every Intermediary shall be required to collect, withhold, and remit said Tax to the Company. In the case of natural or juridical persons who promote or sell offers, specials, stay packages, or discount programs to stay at a Lodging by any means, including, but not limited to, the internet and any application software, such natural or juridical persons shall be required to collect, withhold, and remit said Tax to the Company.

B.    …

C.    …

D.    …

E.    …"

Section 6.- Rulemaking Authority

The Secretary of the Treasury shall establish through regulations, circular letter, or other administrative determination of a general nature, the rules necessary for the application of this Act.

Section 7.- Subsection (q) of Section 103 of Act No. 5-2017 is hereby amended to read entirely as follows:

"Article 103.– Definitions

The following words and terms, when used in this Act, shall have the meaning stated below:

...

(q)　'Emergency Period' shall mean the period beginning on the effective date of this Act and ending on December 31, 2017, provided, that so long as the Oversight Board is constituted for Puerto Rico pursuant to PROMESA, the Governor may, if necessary, extend such period for additional terms of no more than six (6) months each through executive order.

...”

Section 8.- Section 12 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," is hereby amended to read as follows:

"Section 12.- Fiscal Control and Economic Reconstruction.-

…

SEMIANNUAL REPORT.- Every Entity of the Executive Branch shall have the ministerial duty to draft and file with the Governor and the Offices of the Clerk of the House of Representatives and of the Secretary of the Senate of Puerto Rico a semiannual report within ninety (90) days after the approval of this Act and during the effective term thereof, stating separately and in detail the measures taken, as well as the results and any other pertinent information to show and assess compliance with the provisions of this Act.

…”

Section 9.- Section 26 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," is hereby amended to read a follows:

"Section 26.- Fiduciary Duty.-

…

The Office of Management and Budget shall be responsible for regulating and implementing the provisions of this Section pertaining to the imposition of administrative fines. Moreover, the Office of Management and Budget shall have

the ministerial duty to draft and file with the Governor and with the Offices of the Secretary of the Senate and of the Clerk of the House of Representatives a semiannual report within ninety (90) days after the approval of this Act and during the effective term thereof, stating separately and in detail the measures taken, as well as the results and any other pertinent information to show and assess compliance with the provisions of this Act.

…"

Section 10.- Severability

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the holding, ruling, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of such holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act to any person or circumstance were held to be null or unconstitutional, the holding, ruling, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance. This Legislative Assembly would have approved this Act regardless of any determination of severability that the Court may make.

Section 11.- Effectiveness

This Act shall take effect immediately after its approval.

Case:17-03283-LTS   Doc#:3126-14   Filed:05/23/18   Entered:05/23/18 11:45:37   Desc:
Exhibit Law 46 of 2017 (14A Spanish 14B English)   Page 40 of 40

21

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 46-2017 (H. B. 1133)** of the **1st Regular Session** of the **18th Legislative Assembly of Puerto Rico:**

**AN ACT**    to amend Sections 4042.03 and 4042.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; amend Sections 2, 26, and 27 of Act No. 272-2003, as amended, known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act"; amend Section 103 of Act No. 5-2017, known as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017"; amend Sections 12 and 26 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," in order to establish additional revenue and liquidity measures for the Government of Puerto Rico; establish that certain merchants are required to remit the Sales and Use Tax in semimonthly installments; […]

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 12th day of February, 2018.


Orlando Pagán-Ramírez
Acting Director