# EXHIBIT 19

TOM COTTON
ARKANSAS

124 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510
PHONE: (202) 224-2353

COMMITTEES
ARMED SERVICES
BANKING, HOUSING, AND
URBAN AFFAIRS
JOINT ECONOMIC COMMITTEE
SELECT COMMITTEE ON INTELLIGENCE

# United States Senate

Mr. Jose B. Carrion III
Chairman
Financial Oversight and Management Board for Puerto Rico
PO Box 192018
San Juan PR 00919-2018

Dear Chairman Carrion:

I thank you for your April 25 letter on the Fiscal Plan adopted by the Financial Oversight and Management Board of Puerto Rico. But I must be frank: I found your answers vague and unresponsive. I am compelled to write again to ensure that I—and the Arkansans I represent—receive specific answers. As taxpayers whose interests are directly impacted by the Oversight Board's actions, Arkansans deserve those answers.

Section 201(b)(1)(N) of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) requires that the Fiscal Plan "**respect** the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality." The Oversight Board claims that Congress, in using the word "respect," actually gave the board "flexibility" to decide which legal obligations to meet—which, in my book, is the exact opposite of what the word "respect" means.

According to the *Wall Street Journal*, retail investors in mutual funds nationwide stand to lose $5.4 billion as a result of the Board's bizarre interpretation. These retirees—many of whom are Puerto Rican—put their savings into these funds because of a constitutional guarantee that Congress twice approved. The Board's decision to subordinate the lawful priorities of bondholders has jeopardized the retirement savings of many Arkansans. In addition, this decision creates a dangerous precedent that property and investor rights are open to interpretation in a fiscal crisis, which could badly destabilize the municipal-bond market. If this is what "respecting" legal obligations means, what would "disrespecting" them look like?

Given the stakes, I have some additional questions I'd like to ask—and for you to answer:

1. **Did the Board anticipate that its interpretation would hurt the appeal of municipal and sovereign investment products and thus potentially raise the cost of public borrowing for all states and municipalities?**

I'd also point out that your letter didn't address why the Fiscal Plan fails to distinguish between essential expenses and non-essential ones.

2. **Is it the opinion of the Board that the servicing of Puerto Rico's lawful debt is a non-essential expense? Please explain.**

Once again, I request that the Board promptly address these questions with a much more detailed response than your letter of April 25.

JONESBORO
300 SOUTH CHURCH, SUITE 338
JONESBORO, AR 72401
(870) 933-6223

SPRINGDALE
1108 SOUTH OLD MISSOURI ROAD, SUITE B
SPRINGDALE, AR 72764
(479) 751-0879

LITTLE ROCK
1401 WEST CAPITOL AVENUE, SUITE 235
LITTLE ROCK, AR 72201
(501) 223-9081

EL DORADO
106 WEST MAIN STREET, SUITE 410
EL DORADO, AR 71730
(870) 864-8582

Finally, I'm asking Mick Mulvaney, director of the Office of Management and Budget, to provide my office with a list of all federal transfer payments to Puerto Rico and analyses of the per capita cost as compared to other states and territories.

I look forward to your prompt response.

Sincerely,

Tom Cotton
United States Senator

cc: Don McGahn, White House Counsel
Justin Clark, White House Director of Inter-Governmental Affairs
Mick Mulvaney, Director, Office of Management and Budget