# EXHIBIT 24

# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
## FOR PUERTO RICO



*Members*
*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*
*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*

*José B. Carrión III*
Chair

*Natalie A. Jaresko*
Executive Director

BY ELECTRONIC MAIL

August 30, 2017

The Honorable Ricardo A. Rosselló Nevares
Governor of Puerto Rico
La Fortaleza
P.O. Box 9020082
San Juan, PR 00902-0082

The Honorable Thomas Rivera Schatz
President of the Senate of Puerto Rico

The Honorable Carlos J. Méndez Núñez
Speaker of the House of Representatives of Puerto Rico

Dear Governor Rosselló Nevares, President Rivera Schatz, and Speaker Méndez Núñez:

We write in response to the certification, dated August 1, 2017, that Act 47 is compliant with the Commonwealth's Fiscal Plan pursuant to Section 204(a) of PROMESA (the "Compliance Certification"). Having carefully reviewed Act 47, the Compliance Certification, and the supporting materials provided with the Compliance Certification, the Oversight Board concludes that the Compliance Certification failed to provide the formal estimate of the fiscal impact that the law will have as required under paragraph (2)(A) of Section 204(a). Moreover, as further explained below, the Oversight Board's preliminary analysis leads us to conclude that Act 47 is significantly inconsistent with the Fiscal Plan for the Commonwealth, contrary to the conclusion reached in the Compliance Certification.

\* \* \*

Honorable Ricardo A. Rosselló Nevares
Honorable Thomas Rivera Schatz
Honorable Carlos J. Méndez Núñez
Page **2**

Section 204(a)(2)(A) provides that a compliance certification shall include a "formal estimate . . . of the impact, if any, that the law will have on expenditures and revenues." The Compliance Certification is deficient in two ways.

First, whatever fiscal impact that Act 47 will have will be determined to a large degree by the fiscal effect of the Patient Advocate's expanded powers to commence Summary Proceedings on behalf of private citizens to stay a health insurance company's coverage determination. Act 47 requires the Patient Advocate to issue regulations (the "Required Regulation") to control the application of Summary Proceedings. The Required Regulation has not been promulgated and therefore their fiscal impact cannot be determined. The Section 204(a)(2)(A) formal estimate cannot be complete without an analysis of the fiscal impact of the Required Regulation.

Second, the Compliance Certification by its own terms does not provide an analysis of the impact that Act 47 will have on the Commonwealth's Fiscal Plan. *See* Compliance Certification at 4 (stating that "the fiscal impact of Act 47 on the Fiscal Plan cannot be conclusively determined"). This is not surprising given the first deficiency. Indeed, the Compliance Certification admits as much: "The impact of Act 47 on the Fiscal Plan is indeterminable before the approval and implementation of the Required Regulation." Yet the Compliance Certification, inexplicably, goes on to certify that "Act 47 is not significantly inconsistent with the Fiscal Plan." The Section 204(a) certification must include an analysis of the impact that Act 47 will have on the Commonwealth's Fiscal Plan before it can certify that the law is not significantly inconsistent with the Fiscal Plan.

Moreover, based on the information currently available, it appears unrealistic to expect that Act 47 will not increase medical costs. MMAPA, in a letter addressed to the Governor and copied to the Oversight Board, conservatively estimated that the yearly economic impact of Act 47 would be $70 million to the GHP and $15 million to other governmental entities, including public corporations. This estimate alone suggests that healthcare costs would increase from the current cost base, inconsistent with the Fiscal Plan.

More importantly, Act 47 will likely interfere with the Commonwealth's ability to meet the healthcare savings goals over the next several years that are required by the Fiscal Plan. The Fiscal Plan commits to $500 million in savings by 2020 and $1 billion by 2026. All of the savings for the years after 2020 are projected to come from a new MCO model. While we recognize that ASES is still in the process of designing the new MCO model, because MCOs are to be the primary vehicle to deliver future healthcare savings, we are concerned that Act 47 will impede whatever progress MCOs are able to make toward achieving the Fiscal Plan's significant healthcare savings targets. In particular, we are focused on the impact that the expanded powers of the Patient Advocate and the ability of healthcare providers to challenge MCO decisions regarding utilization management will have on the Fiscal Plan. We strongly encourage you to consider carefully the impact that Act 47 will have on MCOs' ability to produce the targeted healthcare savings through care and utilization management when you submit a revised Compliance Certification.

\* \* \*

Accordingly, the Oversight Board is notifying you, pursuant to Section 204(a)(3)(A), that the formal estimate required by Section 204(a)(2)(A) is missing, and directing you, pursuant to Section 204(a)(4)(A), to provide the missing estimate within seven (7) days of the date on which the Required Regulation is promulgated.  Should the Oversight Board determine that you have failed to comply with our directive under Section 204(a)(4)(A), we reserve the right to take such actions as we consider necessary, consistent with Section 204(a)(5), including preventing the enforcement or application of Act 47.

Sincerely,

José B. Carrión
Chair

Andrew G. Biggs
Carlos M. García
Arthur J. González
José R. González
Ana J. Matosantos
David A. Skeel, Jr.

CC:     Natalie A. Jaresko
        Christian Sobrino Vega