# EXHIBIT 3

*Mediation Privilege – Non Binding Outline*
*Subject to FRE 408 and Local Law Equivalents*

**Commonwealth-COFINA Joint Settlement Outline**

- The following outline (the "Joint Settlement Outline") supported by certain holders or insurers of GO Bonds[1] and certain holders or insurers of COFINA Bonds[2] (the "Supporting Parties") (listed on Exhibit 1 hereto) would settle the Commonwealth-COFINA Dispute based on the creation of a trust into which all COFINA Bonds would be contributed and which would make an exchange offer for all GO Bonds and allowed general unsecured claims ("GUCs").[3] The trust shall be an independent entity employing a lock box mechanism and, to the fullest extent permitted under applicable law, structured as a bankruptcy remote entity, on terms acceptable to the Supporting Parties.
- Pledged 5.5% sales and use tax ("SUT") through the effective date of COFINA plan of adjustment plus 40 years (or such later date as of which the new trust certificates are paid in full) would be owned by the trust.
    - For purposes of the settlement, the COFINA structure would be deemed accelerated and the trust is stipulated to be the owner of the full 5.5% SUT.
    - The COFINA structure and newly created trust would not be subject to future challenge by any party.
    - The 5.5% SUT and ownership thereof would be validated by federal court order approving the COFINA plan of adjustment and would not be subject to repeal, limit, restraint, or other interference unless otherwise mutually agreed upon in accordance with the terms of the documentation pursuant to which the settlement securities are issued. For the avoidance of doubt, the validation provided for under this paragraph would provide that the 5.5% SUT would not be "Available Resources" or otherwise be subject to recharacterization or clawback of any kind.
    - The 5.5% SUT would not be subject to priming or dilution by any other lien or loan.
- Value to be distributed ("Distributable Value") includes – newly issued trust certificates, residual certificates, and all cash in The Bank of New York Mellon

---

[1] "GO Bonds" (and holders or insurers thereof, the "GO Bondholders") consist of debt set forth in the Commonwealth Fiscal Plan, namely GO, PBA, GDB Guaranteed and PRIFA BANs Guaranteed, but will not include QZAB (Zone Academy Series T) and QSCB (School Construction Series R). For the avoidance of doubt, Commonwealth affiliates will not participate in the exchange offer.

[2] "COFINA Bonds" (and holders or insurers thereof, the "COFINA Bondholders") consist of senior and subordinate bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"). In addition, notwithstanding anything to the contrary herein, the Bonistas del Patio, Inc. (the "Bonistas") will be a Supporting Party (despite the fact that as an organization it does not itself own any bonds), and in such capacity the Bonistas would publicly support this transaction and encourage the support and votes for this transaction from its constituents that are holders of GO Bonds and/or COFINA Bonds.

[3] Does not include pension claims, bond claims, instrumentality claims or securities law claims.

- account as of the effective date of the COFINA plan of adjustment (after payment of professional fees as provided herein). *See* Exhibit 2 for model output and additional terms. The percentages of the cash flows listed under the column heading "% of the 5.5% SUT" and "% of BNYM Cash" allocable to each class would be as set forth in Exhibit 2.[4]
- Implementation of the settlement would be that (i) COFINA Bondholders receive 52.5000% of Distributable Value, and (ii) the participating GO Bondholders receive 46.2330%, and GUCs receive 1.2670%[5], for an aggregate Commonwealth-side share of 47.5000% (the "Allocation Percentages").
- *Remainder Claim*: the trust would distribute one series of remainder claim certificates (which for the avoidance of doubt are different from the residual interests in the trust referenced to below) to participating GO Bondholders in an amount equivalent to the matching remainder amount of the GO Bond claims in the Commonwealth Title III (as calculated by taking the par + accrued prepetition and postpetition interest claim amount of participating GO Bonds less the corresponding amount of Distributable Value distributed to those claimants) to be held by the trust. The remainder claim certificates would be proportionately allocated to those participating GO Bondholders.
    - Remainder claim certificates would receive any recoveries received on account of the remainder amount of the GO Bonds tendered into the trust, including any recoveries from the Commonwealth and relevant instrumentalities (as applicable) on account of the remainder amount of such bonds. Recoveries from either the Commonwealth or relevant instrumentalities would be pooled and support all remainder claim certificates.
- The trust would issue certificates in the form of cash pay debt with a 6% tax-exempt coupon, capital appreciation bonds accreting at a 6.5% tax-exempt interest rate, and the residual tranche would be valued at a 15% discount rate. Unless otherwise agreed by a holder, the cash pay bonds, capital appreciation bonds, residual tranche, and cash at The Bank of New York Mellon attributable and allocable to such class as set forth on Exhibit 2 would be issued within each creditor class in pro-rata strips to holders of the new settlement securities.
- The definitive documentation (including, without limitation, a Restructuring Support Agreement ("RSA") with lock-up provisions) must be mutually agreed upon, and this Joint Settlement Outline does not impose any obligations on any party to take or refrain from taking any action.
- Any incremental Distributable Value due to the tender participation percentage of GO Bonds being below 100% accruing to the sole benefit of the participating GO Bondholders, provided that non-tendered bonds would not have any recourse against COFINA or the trust.

---

[4] For the avoidance of doubt, nothing herein contemplates releasing any claims that have been or may be asserted against The Bank of New York Mellon, as Trustee for the COFINA Bonds; *provided, however*, that no action against The Bank of New York Mellon shall affect or otherwise modify the Distributable Value (including the cash portion thereof) allocated to the Supporting Parties under this settlement.

[5] Subject to a cap of $500mm of allowed GUC claims being tendered.

- Respective claims pools to be calculated as par + pre-petition and post-petition accrued interest with no discount for OID for cash pay bonds and the accreted value of capital appreciation bonds, as of the effective date of the COFINA plan of adjustment (assumed July 1, 2018).
- It will be a condition to any settlement based on this Joint Settlement Outline that the settlement securities must be issued, and all other terms of any such settlement must be satisfied, by an outside date of December 1, 2018 (the "Outside Date") unless the Supporting Parties agree to waive this condition.
- Professional fees, including reasonable expenses, incurred by each of the Supporting Parties currently listed on Exhibit 1 or those parties that become Supporting Parties by no later than May 13, 2018 pursuant to existing engagements in respect of issues relating to Commonwealth and COFINA bonds would be paid (subject to an agreed upon schedule) by the trust in cash from the cash in The Bank of New York Mellon account, upon the effective date of the COFINA plan of adjustment.
- Minimum tender participation by GO Bondholders would be [75-90]%;[6] *provided however*, this condition may be waived by the Supporting Parties.
- The settlement would be implemented through a plan of adjustment for COFINA and a 9019 motion in the Commonwealth Title III proceeding and would not be conditioned or tied to the confirmation or effectiveness of a plan of adjustment for the Commonwealth.
- Commutation options, if any, would be addressed in the COFINA plan of adjustment in a manner satisfactory to the Supporting Parties that are monoline insurers, each with respect solely to its insured bonds. To the extent the COFINA plan of adjustment includes a payment commutation option, each insured holder may elect to accept or decline such commutation option.
- Title III court would retain jurisdiction over implementation of settlement and related issues.[7]
- Nothing contained in this Joint Settlement Outline addresses the Commonwealth Title III proceedings, and the rights, remedies and objections of all parties hereto in respect of claims asserted against the Commonwealth, whether in connection with such Title III proceedings, any settlement or otherwise are expressly preserved; *provided*, *however*, that, except as otherwise set forth herein, and subject to the effectiveness of a mutually agreed upon RSA, no Supporting Party may, in any

---

[6] Subject to receipt of feedback from the mediation team and agreement of the Supporting Parties.

[7] Contingent upon a final non-appealable order approving the settlement, those claims or portions of claims pending in the action entitled *Lex Claims, LLC v. Commonwealth of Puerto Rico*, No. 16-cv-02374 FAB (D.P.R.) that the Supporting Parties mutually agree are premised on challenges to COFINA's constitutionality or COFINA's entitlement to proceeds of the SUT will be dismissed with prejudice. In addition, certain Supporting Parties have stated that dismissal of the Appointments Clause litigation should be included as a term of this Joint Settlement Outline. The Ad Hoc Group of Puerto Rico General Obligation Bondholders, however, does not support dismissal of the Appointments Clause litigation in connection with this Joint Settlement Outline.

capacity, object to any settlement of the Commonwealth-COFINA Dispute based upon this Joint Settlement Outline, including any of the terms expressed herein. For the avoidance of doubt, this Joint Settlement Outline does not create a binding or enforceable obligation on any Supporting Party and no Supporting Party shall be liable to any other party for damages or specific performance with respect to failure to implement a settlement on the terms described herein or the failure to execute an RSA or any other definitive documentation. All other rights of any Supporting Party in the Commonwealth Title III proceedings or any other Title III proceedings are otherwise preserved, including with respect to any matter not subject to this Joint Settlement Outline.

**Exhibit 1**
**Supporting Parties**[8]

### *Supporting GO Parties*

- Aurelius Capital Management, LP, on behalf of its managed funds and entities
- Autonomy Capital (Jersey) LP, on behalf of its managed funds and entities
- FCO Advisors LP, on behalf of its managed funds and entities
- Monarch Alternative Capital LP, on behalf of its managed funds and entities
- Assured Guaranty Corp.,
- Assured Guaranty Municipal Corp.
- National Public Finance Guarantee Corp., as an insurer and/or holder of GO Bonds
- Ambac Assurance Corporation, as an insurer and/or holder of GO Bonds
- Syncora Guarantee Inc.
- Candlewood Investment Group, LP
- Fir Tree Partners
- Inglesea Capital LLC

### *Supporting COFINA Parties*

- Bonistas del Patio, Inc.
- Aristeia Capital, L.L.C., on behalf of its participating clients
- Canyon Capital Advisors LLC, on behalf of its participating clients[9]
- GoldenTree Asset Management LP, on behalf of its participating clients[10]
- Old Bellows Partners LP, on behalf of its participating clients
- Scoggin Capital LLC, on behalf of its participating clients
- Tilden Park Capital Management LP, on behalf of its participating clients
- Whitebox Advisors LLC, on behalf of its participating clients

---

[8] Certain Supporting Parties do not currently support the last sentence of footnote 1 of this Joint Settlement Outline relating to the participation of Commonwealth affiliates in the exchange offer.

[9] Canyon Capital Advisors LLC (on behalf of its participating clients) ("Canyon") is a Supporting Party of the settlement of the Commonwealth-COFINA Dispute on the terms and conditions described herein solely in its capacity as a beneficial holder of COFINA Bonds. Canyon does not waive any of its rights, claims, and defenses in its capacity as a beneficial holder of QZAB and QSCB, all of which rights, claims, and defenses, including with respect to the treatment of the QZAB and QSCB proposed herein, are expressly preserved.

[10] GoldenTree Asset Management LP (on behalf of its participating clients) is a Supporting Party of the Joint Settlement Outline except with respect to the allocation of the Distributable Value between and among COFINA Bondholders set forth on Exhibit 2, and does not waive any of its rights, claims and defenses with respect to such allocation of Distributable Value. Other Supporting Parties are supportive of the Joint Settlement Outline based on the allocation of Distributable Value between and among senior and subordinate COFINA Bondholders set forth on Exhibit 2, and do not waive any of their respective rights, claims and defenses with respect to such allocation of Distributable Value to the extent altered, or challenged or objected to by any other party in connection with any proceeding.

- Ambac Assurance Corporation, as an insurer and/or holder of COFINA Bonds
- Assured Guaranty Municipal Corp.
- National Public Finance Guarantee Corp., as an insurer and/or holder of COFINA Bonds

**Exhibit 2**

- The quantum of newly issued trust certificates is set on a 1.2x minimum debt service coverage ratio, and a debt service cap of $1.85 Bn per year (excluding the residual)

- The 5.5% SUT supports $18.0 Bn of 6.0% cash pay certificates

- The trust supports $2.2 Bn of initial value CABs (accreting at 6.5%)

- Assumes a fully amortizing structure over 40 years

- The below tables set forth the Distributable Value, recoveries and the Capital Structure allocations[11]

$ in MMs

| Distributable Value | | | | | |
|---|---|---|---|---|---|
| Blended PV of Fixed Debt Service from DST | | | | | 20,241 |
| PV of Residual 5.5% DST | | | | | 1,672 |
| Expected Cash in COFINA as of Effective Date[11] | | | | | 1,195 |
| **Total Distributable Value** | | | | | **23,108** |
| | Claim (7/1/18) | % of BNYM Cash | % 5.5% SUT | Recovery (7/1/18)[12] | |
| GO Debt Recovery (from Distributable Value) | 18,244 | 46.2% | 46.2% | 58.6% | 10,684 |
| GUC Tendered Claim | 500 | 1.3% | 1.3% | 58.6% | 293 |
| COFINA Recovery | 18,806 | 52.5% | 52.5% | 64.5% | 12,132 |
| COFINA Sr. Recovery[13] | 8,255 | 52.5% | 32.2% | 93.0% - 95.0% | |
| COFINA Sub Recovery[13] | 10,551 | – | 20.3% | 42.2% - 43.2% | |
| **Total** | **37,550** | | | | **23,108** |

---

[11] Recoveries subject to confirmation of amount of GO Bonds and COFINA Bonds held by Commonwealth affiliates.

[12] Assumed effective date of July 1, 2018. If the COFINA plan of adjustment effective date is later than July 1, 2018, the COFINA cash balance will be higher in an amount equal to the SUT tranferred to COFINA under the COFINA enabling act and the COFINA bond resolution. Amounts not adjusted for professional fees and expenses TBD.

[13] Based on claims including post-petition interest as of 7/1/2018.

[14] Represents illustrative average recovery value, as of the effective date of COFINA plan of adjustment, in terms of the instruments in the Distributable Value table. Recovery ranges for COFINA Senior Bonds and COFINA Subordinate Bonds are estimated depending on final securities design. Within each COFINA class, each creditor that is a monoline will be given an option to elect different securities in terms of rate and face amount depending on investment objectives; *provided, however*, that such options will not in any way affect or otherwise modify the timing, priority or amount of any payment of Distributable Value to the GO Bondholders, other COFINA Bondholders and GUCs.