UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR
PUERTO RICO

    as representative of

THE COMMONWEALTH OF PUERTO
RICO, et al.

    Debtor

PROMESA
Title III

   No. 17-BK-3283 (LTS)

   (Jointly Administered)

# MOTION BY VIRGILIO F. ACEVEDO FOR RELIEF FROM AUTOMATIC STAY

Respectfully Submitted by
Virgilio F. Acevedo
Through Counsel of Record
/s/Carmenelisa Perez-Kudzma
Perez-Kudzma Law Office,
P.C. 413 Boston Post Road
Weston, MA 02493
978-505-3333
carmenelisa@pklaw.law

*Attorney for Virgilio F. Acevedo*

1

# TABLE OF CONTENTS

I. Procedural Background ............................................................................................................ 3

II. The Title III Automatic Stay is Inapplicable to Virgilio F. Acevedo's (ACEVEDO) claims for relief ...................................................................................................................................... 5

    1. *The plain language of Bankruptcy Code Sections 362(a) and 922 excludes ACEVEDO's claims for relief from the scope of the automatic stay.*............................................................6

    2. *PROMESA itself precludes the application of the automatic stay to actions such as ACEVEDO's, where the territorial government's compliance with the United States Constitution and the territorial government's regulatory powers are involved.*..................9

    3. *Extending the automatic stay to actions such as Virgilio F. Acevedo's, which seek equitable and declaratory relief from the deprivation of rights under the Takings and Due Process Clauses, would be unconstitutional.* ..................................................... 11

    4. *ACEVEDO's action is outside the scope of the stay.*................................................................12

III. The Applicable Factors Justify Lifting the Stay for Virgilio F. Acevedo's Action................. 13

IV. Conclusion ............................................................................................................................ 16

Certification................................................................................................................................. 17

Certificate of Service……………………………………………………………………. 18

2

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>    Debtors | PROMESA<br>Title III<br><br>No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

# MOTION BY VIRGILIO F. ACEVEDO'S FOR RELIEF FROM AUTOMATIC STAY

TO THE HONORABLE COURT:

Now Comes Virgilio F. Acevedo ("ACEVEDO") moves for relief from the stay of the action pursuant to 48 U.S.C. § 2161(a), 11 U.S.C. § 362(a) and 11 U.S.C. § 922 ("Promesa Automatic Staty").

I. **Procedural and Factual Background**

ACEVEDO is a resident of the Commonwealth of Massachusetts. ACEVEDO's filing of the present motion is an attempt to request that the Court either rules that Title III stay does not apply to Acevedo's requests for actions or that it lifts the stay so that the litigation can commence in order to ascertain vested hereditary rights over a structure/gas station located in Rincon, Puerto Rico ("Gas Station").

These proceedings are part of a liquidation process of ACEVEDO's hereditary assets in

3

the Bankruptcy Court in the District of Massachusetts, Docket # 14-15154.

ACEVEDO has not been able to ascertain his vested hereditary rights due to the actions of the Registrar of the Registry of Deeds of Aguadilla, Puerto Rico, who is currently Gildren S Caro Perez in her official capacity ("Registrar").

On June 25, 2012, the Registrar inscribed leases, mortgages, and purchase and sales agreement without the authority of ACEVEDO or his brother, the other heir, even though the legal registered title holders of the gas station are ACECEVO's parents.

On March 8, 2016, Acevedo field all the documents (Resolution of Declaration of Heirs[1]) required by law in order to inscribed his and his brother hereditary rights over the gas station. The Registrar still refuses to inscribe ACEVEDO and bother's Declaration of Heirship pursuant to applicable law by requesting that they submit documents and amendments related to the Resolution which are not applicable. That is, the Registrar made laws and regulations retroactive in contravention with the Civil Code of Puerto Rico and the U.S. Constitution. As a consequence of the actions of the Registrar, ACEVEDO had to take recourse in the tribunals in order to amend the Resolution. However, after the First Instance Court's refusal to amend the Resolution ACEVEDO had to take appellate recourse.

The Appeals Court sided with ACEVEDO and ordered the First Instance Court to amend the Resolution. After the amendment to the Resolution was made it was taken to the Registry and all the due requirements were met and complied with. However, after more than a year of having the Resolution, the Registrar has failed to comply with her ministerial duties (to wit: to inscribe the hereditary rights of ACEVEDO and his brother in contravention with the new Puerto Rico mortgage laws.

---

[1] Declaratoria de Herederos

4

## II. The Title III Automatic Stay is Inapplicable to Acevedo's claims for relief

Sections 362(a) and 922 are inapplicable to ACEVEDO's action. The nature of ACEVEDO's claims places the action outside the scope of the automatic stay decreed by Sections 362(a) and 922. ACEVEDO do not state an action or proceeding against the Commonwealth nor aims to control the Commonwealth's property. It does not seek to collect, assess, recover, or enforce a "claim" against the Commonwealth, as the term is defined in the Bankruptcy Code and for purposes of PROMESA's Title III.

ACEVEDO's action arises from the Registrar's unconstitutional refusal to act according to duty regarding the inscriptions of ACEVEDO's hereditary rights over real estate property. Specifically, the Registrar's of Property, Gildren S. Caro Perez, refusal and/or inaction to act according to the duties of her post.

ACEVEDO's action also falls outside the scope of the stay because PROMESA does not relieve the Puerto Rico government from complying with the United States Constitution and is not meant to affect actions involving the Puerto Rico government's regulatory powers. The stay of the action runs counter to both of these aspects of PROMESA. The action seeks relief from the Registrar's deprivation of ACEVEDO rights. PROMESA cannot, by means of the Title III stay, immunize public officials from failure to act according to their ministerial duties and/or unconstitutional acts. Extending the automatic stay to such actions would make the stay itself unconstitutional. Since as a rule Congress is not presumed to have intended its statutes to raise constitutional problems, PROMESA cannot lead to that result. Therefore, the scope of the stay excludes actions like ACEVEDO's that seek to enjoin Puerto Rico government officers' acts to deprive a person's constitutional rights pursuant to the Fifth and Fourteenth Amendment of the U.S. Constitution.

5

> 1. **The plain language of Bankruptcy Code Sections 362(a) and 922 excludes ACEVEDO's claims for relief from the scope of the automatic stay.**

The District Court's order stayed the Action under Section 301(a) of PROMESA, 48 U.S.C. § 2161(a), which incorporates by reference the automatic stays of sections 362(a) and 922 of the Bankruptcy Code. However, neither section includes within its scope an action such as ACEVEDO's that is not pled against a debtor and that fails to set forth a "claim" against a debtor, as defined by the Bankruptcy Code.

The first of the Bankruptcy Code provisions, Section 362(a), states in the parts relevant to this action that a bankruptcy petition or, by extension, a petition to commence a case as a debtor under PROMESA's Title III:

> (a) …operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> ...
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

None of these provisions of Section 362(a) apply to the Action. First, the Action is not against the Commonwealth, but only against the Registrar for failure to act according to the duties of the position. In other words, it is not "the commencement or continuation…or other action or proceeding against the debtor" in the Title III proceeding. As defined by PROMESA, "[t]he term 'debtor' means the territory or covered territorial instrumentality concerning which a case under this title has been commenced." Section 301(c)(2) of PROMESA, 48 U.S.C. § 2161(c)(2). Under this definition, the Registrar does not qualify as a debtor.

6

Second, the Action in no way concerns a "claim" against the Commonwealth. For PROMESA's Title III, the term "claim" has the same meaning as in the Bankruptcy Code. *See* Section 301(b) of PROMESA, 48 U.S.C. § 2161(b) ("[a] term used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), has the meaning given to the term for the purpose of the applicable section, unless the term is otherwise defined in this title") and Section 2(b)(2) of PROMESA, 48 U.S.C. § 2101(b)(2), ("Titles III and VI shall apply with respect to debts, claims, and liens (as such terms are defined in section 101 of title 11, United States Code) created before, on, or after such date").

The Bankruptcy Code defines a "claim" as follows:

> (5) The term "claim" means—
>   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5).

Under this definition, ACEVEDO's complaint does not contain any sort of "claim." In the first place, the complaint nowhere alleges a right to payment, whether against the Commonwealth or its government officials. It does not ask for damages or monetary compensation. It does not involve a debt, lien, or property of the Commonwealth. It does not seek to direct the way in which the Commonwealth uses or disposes of its funds and resources[2].

---

[2] These features distinguish the Action from the litigation that was stayed in *Lex Claims, LLC v. Financial Oversight and Mgmt. Bd.*, 853 F.3d 548 (1st Cir. 2017). Even though the plaintiffs in *Lex* sought declaratory and injunctive relief, they aimed to control the Commonwealth's property: "the express purpose of the lawsuit [wa]s to preclude the Commonwealth from using its own funds as it sees fit." *Id.* At 552. ACEVEDO's complaint does not concern the Commonwealth's property or use of funds in any way. Instead it seeks to enjoin the imposition of unconstitutional conditions on the development, use, and enjoyment of ACEVEDO's property.

Thus, ACEVEDO fails to state a "claim" in the sense of Section 101(5)(A), *supra*. Likewise, the equitable relief that ACEVEDO is requesting against the Registrar neither arises as a "remedy for breach of performance" nor "gives rise to a right to payment" against the Registrar or the Commonwealth. Thus, the complaint also fails to plead a "claim" in the sense of Section 101(5)(B), *supra*.

The absence of any sort of "claim" in ACEVEDO's complaint means that the Action cannot be viewed as seeking "to recover a claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(1), nor as seeking "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title," 11 § 362(a)(6). None of the scenarios included in Section 362(a)(1) and (6) is posed by ACEVEDO's complaint. As a result, Section 362(a) is inapplicable and does not to stay the Action.

The other provision implied in the automatic stay, Section 922(a) of the Bankruptcy Code, is more to the point but it, too, is inapplicable. Section 922(a) provides that:

> (a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and
> (2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

Since ACEVEDO's complaint is only against a government officials of the debtor in its official capacity with duties to perform, not the debtor itself, Section 922(a)(1) is actually the provision that would determine whether the Action is stayed. While Section 362(a) applies only to actions against the debtor or the debtor's property, Section 922(a)(1) extends the stay to actions or proceedings against the debtor's officers. It, however, only stays an action against an

8

officer of the debtor that "seeks to enforce a claim against the debtor." But as already noted, the Action does not seek in any way to enforce a "claim" against the Commonwealth. Therefore, Section 922(a), too, is inapplicable and does not stay the Action.

### 2. PROMESA itself precludes the application of the automatic stay to actions such as ACEVEDO's, where the territorial government's compliance with the United States Constitution and the territorial government's regulatory powers are involved.

Not only the plain language of Sections 362(a) and 922, but also PROMESA itself supports the exclusion of the Action from the automatic stay. Section 7 of PROMESA, 48 U.S.C. § 2106, establishes that "[e]xcept as otherwise provided in this chapter, nothing in this chapter shall be construed...in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws." ACEVEDO's claims for relief arise under the United States Constitution and are brought under a federal statute, 42 U.S.C. § 1983. Any interpretation that PROMESA's Section 7 excludes from "Federal Laws" the "rights, privileges, or immunities secured by the Constitution" (42 U.S.C. § 1983) would be untenable. It would place in doubt PROMESA's constitutionality.

Such an interpretation must therefore be rejected. "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martínez*, 543 U.S. 371, 380-81 (2005). This canon of Constitutional Avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark*, 543 U.S., at 381.

In this case, interpreting Section 7's reference to "Federal Laws" as failing to include the "rights, privileges, or immunities secured by the Constitution" would "raise a multitude of

9

constitutional problems," not the least of which would be the Congress's authority to establish such an exclusion. The interpretation would mean that Congress intended the territorial government to comply with Federal Laws, but not the Constitution, an unreasonable reading and presumption. Hence the canon of Constitutional Avoidance requires that the alternative interpretation be chosen: that the Commonwealth's "compliance with Federal Laws" under PROMESA includes compliance with the "rights, privileges, or immunities secured by the Constitution."

For instance, Section 305 of PROMESA, 48 U.S.C. § 2165, provides that "[s]ubject to the limitations set forth in subchapters I and II of this chapter, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with...(1) any of the political or governmental powers of the debtor." Along similar lines, Section 304(h) of PROMESA, 48 U.S.C. § 2164(h), establishes that PROMESA "may not be construed to permit the discharge of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions." Lastly, Section 362(b)(4) of the Bankruptcy Code includes among the exceptions to the automatic stay "under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit...to enforce such governmental unit's or organization's police and regulatory power."

These three provisions evidence a general intention to exclude from the automatic stay those actions where the Puerto Rico government's regulatory powers are involved.

10

### 3. Extending the automatic stay to actions such as ACEVEDO, which seek equitable and declaratory relief from the deprivation of rights under the Due Process Clauses, would be unconstitutional.

PROMESA's Title III cannot be viewed as allowing government officials to fail to act according to duty. Such a view would deprive ACEVEDO of its constitutional due process rights. The deprivation of these rights would make the Title III stay of PROMESA unconstitutional. "[A] law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

PROMESA cannot be interpreted in this fashion to deprive injured persons of their constitutional rights. *Clark,* 543 U.S., at 380-81. The Action, in which no claim or lien against the debtor, no property or debt of the debtor, and no right to payment from the debtor is involved, but where the issues solely concern the Registrar's refusal to act. Section 101(a) of PROMESA, 48 U.S.C. § 2121(a). The Constitution's Supremacy Clause[3] and the statutory text of PROMESA provide enough grounds to exclude the Action from the stay and so avoid the problem of the overbroad and unconstitutional scope that the District Court order and the Commonwealth's[4] indiscriminate, boilerplate filings of the notice of stay have provoked.

Other constitutional grounds also require that the Action be placed outside the scope of the stay. Beside the inapplicability the stay that follows from the plain language of Sections 362(a) and 922(a), *supra*, the Action is not covered by these Bankruptcy Code provisions because it is premised on the Constitution's Fifth Amendment, which trumps them. "The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *United States v. Security Indus. Bank*, 459 U.S. 70, 75 (1982).

---

[3] "This Constitution, and the laws of the United States which shall be made *in pursuance thereof*…shall be the supreme law of the land." U.S. Const. Art. VI (emphasis added).

[4] This reference to the Commonwealth is meant to include the Commonwealth's many agencies, instrumentalities, and officers.

11

Therefore, PROMESA cannot incorporate or implement the Bankruptcy Code's automatic stay in a way that, directly or indirectly, deprives ACEVEDO of its rights under Takings Clause. *See also Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935). Subsuming the Action under the automatic stay would further such a deprivation, since the Action is aimed at enjoining the Registrar from continuing to refuse to inscribe ACEVEDO's hereditary rights.

### 4. *ACEVEDO's action is outside the scope of the stay*

ACEVEDO's Action falls outside the scope of PROMESA's Title III automatic stay. The Action does not interfere in any way with the Commonwealth's adjustment of debts under Title III, and does not involve the property or the disposition of resources of the Commonwealth. The stay of the Action under PROMESA and the Bankruptcy Code sections incorporated into it is a misuse of the automatic stay in order to deprive ACEVEDO of its constitutional rights. On their face, the Bankruptcy Code provisions establish that the stay does not apply to an action such as ACEVEDO's that is not directed at the debtor and does not seek to recover, assess, or collect a claim against the debtor. The application of the stay to the Action also conflicts with PROMESA's requirement that the territorial government comply with Federal laws, including the Constitution, and with PROMESA's intention to exclude from the stay actions concerning the territorial government's regulatory powers. Interpreting the stay to include the Action also implies the stay's unconstitutionality, so that the alternative interpretation that the scope of the stay does not extend to actions for declaratory and equitable relief to enjoin the deprivation of constitutional rights.

12

### III. The Applicable Factors Justify Lifting the Stay for ACEVEDO's Action

Under Section 362(d) of the Bankruptcy Code, applicable to PROMESA, the Court may grant a party in interest relief from the automatic stay. In ACEVEDO's case, where no property of the debtor is involved, the Court may grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). Also, the issues presented by ACEVEDO's request for relief from the stay do not present an issue of "the debtor's equity in property," so that once ACEVEDO makes an initial showing of cause, the burden of proof on all issues falls on the Commonwealth. 11 U.S.C. § 362(g). *See, e.g. In re Unanue-Casal*, 159 B.R. 90, 95 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ("the weight of authority explains that once the moving party establishes cause for such relief, a stricter burden then shifts to the debtor to demonstrate that he is entitled to the stay").

The Court has already established as the law of the case in this Title III proceeding that the factors used to determine whether cause exists for lifting the stay are those enumerated in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). (*See, e.g.*, ECF No. 600, at p. 2.)

> These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11)
> whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d, at 1286.

Of these twelve factors, five are relevant to the Action and support lifting the stay: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any

13

connection with or interference with the bankruptcy case…(7) whether litigation in another forum would prejudice the interests of other creditors…(10) the interests of judicial economy and the expeditious and economical resolution of litigation…and (12) impact of the stay on the parties and the balance of harms."

First, relief from the stay would result in a complete resolution of the issues. The District Court can give ACEVEDO all the relief it requires. No further recourse to or intervention of the Title III Court would be needed. Since the Action only requests prospective equitable and declaratory relief, no issues would be left over that would need to be addressed in the Title III proceeding.

An order requiring the Registrar to act according to duty would not give rise to a right to payment or a claim against the Commonwealth or its property, as defined in 48 U.S.C. § 2101(b)(2). Any declaratory or equitable relief that the District Court could grant would concern exclusively the conditions imposed on the issuance of a permit for the use and development of ACEVEDO's property. In no sense would the Title III debtor's estate be affected by such relief, so no issues would arise concerning the application of PROMESA's Title III as a result of any relief that could be granted.

Second, the Action has no connection with the Commonwealth's Title III case. No debt, lien, or property of the Commonwealth or its agencies and no claim—in the bankruptcy sense— against them is involved. Neither the litigation nor resolution of the Action interferes with the Commonwealth's reorganization under Title III. The main relief being requested is an equitable one that does not concern, affect, or interfere with the operations, property, or disposition of resources of the Commonwealth. The Action does not seek to possess or control any of the Commonwealth's property or resources. It concerns nothing more than ACEVEDO's own

14

property. It asks only for the removal of the unconstitutional conditions that Defendants have imposed on ACEVEDO, and for the way to be cleared for the issuance of the permit that ACEVEDO needs for the use and development of its property, which Defendants have barred for as long as ACEVEDO does not yield to their demands that it renounce its constitutional rights.

Third, the litigation of the Action will not prejudice the interests of the Commonwealth's creditors. Even if an adverse judgment is obtained against Defendants, the Action will not give rise to any claim against or right to payment from the Commonwealth that would compete with or have to be included among the creditors' claims. The Action will not impair the value of any property of the Commonwealth. It will not result in any lien or claim that could conflict with claims from the Commonwealth's creditors. It will not affect the operations of the Commonwealth or its agencies in any financial or economic sense, and cannot therefore affect their solvency or their capacity to satisfy their creditors' claims or the value, creditworthiness, or security of the latter.

Fifth, the impact of the stay on the parties and the balance of the harms favor lifting the stay. Defendants' unconstitutional conditions are costing ACEVEDO monthly in lost rent, a loss that cannot be recouped. **They are depriving ACEVEDO of the use of valuable property and more importantly, they are hindering his ability to fund his bankruptcy estate**.

On the Registrar's side, there is no harm as a government official must act according to duty. The only harm that the Registrar would suffer from lifting the stay is that they would have to litigate the Action, spending a limited amount of resources to do so. This harm cannot outweigh the continued deprivation of ACEVEDO's constitutional rights throughout the stay's indefinite duration that ACEVEDO is likely to suffer if the stay remains in effect.

## IV. Conclusion

The automatic stay should be lifted with respect to ACEVEDO's Action, given that the Action does not interfere in any way with the Commonwealth's reorganization under Title III, nor does it involve the property or disposition of resources of the Commonwealth. Allowing the Action to go forward in the District Court would allow a complete resolution of the issues, and would promote the expeditious and economical resolution of the Action. More importantly, the balance of harms favors lifting the stay. Every day the Action continues unresolved, ACEVEDO is unconstitutionally deprived of its property rights. Defendants, on the other hand, would suffer at best the slight harm of some litigation expenses.

In the alternative, the Court may interpret its Order to determine that ACEVEDO's Action is outside the scope of the Order and the PROMESA Title III automatic stay. On their face, the Bankruptcy Code provisions that establish the stay do not apply to ACEVEDO's Action, since the Action is not directed at the debtor, and does not seek to recover, assess, or collect any claim against the debtor. Lastly, the application of the stay to ACEVEDO's Action raises serious constitutional issues, which could make PROMESA unconstitutional.

WHEREFORE, ACEVEDO moves for the stay to be lifted with regard to the Action, so that the latter may be litigated in the District Court, or for the Action to be declared outside the scope of the Title III automatic stay.

Respectfully Submitted by
Virgilio F. Acevedo
Through Counsel of Record
/s/Carmenelisa Perez-Kudzma
Perez-Kudzma Law Office, P.C.
413 Boston Post Road
Weston, MA 02493
978-505-3333
carmenelisa@pklaw.law

Dated: May 27, 2018

Certification

In compliance with Paragraph III.Q of the Third Amended Case Management Procedures order (ECF No. 1512, Ex. 1), we certify that on we sent to counsel for the Oversight Board and AAFAF a notice advising them of ACEVEDO's intention to seek relief from the Title III automatic stay. After emailing the notice[5] on March 9, 2018, counsel for ACEVEDO received a reply from Attorney Claudia A. Juan Garcia[6] acknowledging receipt of the Notice on March 12, 2018. On March 13, 2018 Counsel for ACEVEDO provided Attorney Garcia with all pertinent information per the Notice request. On March 20, 2018 Attorney Garcia communicated with Counsel for Acevedo regarding the claims of Acevedo. No other replies were received. So no agreement was reached to lift or modify the stay with respect to ACEVEDO's request for lifting the stay since Counsel for Acevedo received no more communications.

Executed on May 27, 2018

/s/ Carmenelisa Perez-Kudzma, Counsel for Acevedo

---

[5] To: Hermann.Bauer@oneillborges.com, ubaldo.fernandez@oneillborges.com, dperez@omm.com, andres@awllaw.com
[6] CC: "Iván J. Ramírez Camacho, ivramirez@justicia.pr.gov, Perez, Diana M. (dperez@omm.com), dperez@omm.com, Wandymar Burgos Vargas, wburgos@justicia.pr.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and parties in the Master Service List. The foregoing is also being mailed separately to (1) Wanda Vázquez Garced, Secretary of Justice, Department of Justice, Apartado 9020192, San Juan, PR 00902-0192; and (2) Regsitrar Gildren S. Caro Pérez, Registry of Deeds of Aguadilla, PO Box 447, Aguadilla, PR 00605.

/s/Carmenelisa Perez-Kudzma