UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

-----------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

# REPLY IN SUPPORT OF MOTION BY THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO (AFSCME) TO COMPEL COMPLIANCE WITH THE AUGUST 10, 2017 STIPULATION AND ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

24578309.3 05/29/2018

Movant the American Federation of State, County and Municipal Employees International Union, AFL-CIO ("AFSCME")—a labor union representing Commonwealth public employees and retirees through its affiliates Servidores Publicos Unidos ("SPU") and the Capitulo de Retirados de SPU—respectfully submits this reply in support of its Motion to Compel Compliance with the August 10, 2017 Stipulation and Order (the "Motion") (Docket No. 3092),[2] and states as follows:

1. The Motion, filed by AFSCME on May 17, 2018, was accompanied by a Proposed Order seeking the modest relief of an order that:

> The Mediation Team, Oversight Board, AAFAF, the COFINA Agent, and their professionals shall comply immediately with the Stipulation, and specifically the procedures for negotiating a settlement to the Commonwealth-COFINA Dispute as set forth at Section 4 of the Stipulation, including but not only by not participating in any discussions to settle the Commonwealth-COFINA dispute with the Commonwealth Creditor Representative selected by the Ad Hoc Group of General Obligation Bondholders and Assured Guaranty Corp. ("the GO Creditor Representative") unless and until such a settlement is reached between the Commonwealth Agent and the COFINA Agent first.

2. To be clear, the requested relief would merely reaffirm the Stipulation, with the sole specific instruction—that there be no "discussions to settle the Commonwealth-COFINA dispute with the [GO Creditor Representative] unless and until such a settlement is reached between the Commonwealth Agent and the COFINA Agent first"—applying only to a single narrow category of negotiations: those between parties explicitly authorized under the Stipulation to negotiate the Commonwealth-COFINA dispute on the one hand,[3] and a single party on the other that is explicitly *not* allowed under the Stipulation to engage in such negotiations.

---

[2] Capitalized terms have the meaning given to them in the Motion.
[3] The Proposed Order did not seek to constrain communication between the Commonwealth Agent and the GO Creditor Representative because the Stipulation itself provides that "the Commonwealth Agent shall consult with the Commonwealth Creditor Representatives." Stipulation § 4(f)

3.      Responses to the motion have been filed by those authorized negotiating parties, as well as by the two creditors who, under Section 4(c) of the Stipulation, selected the GO Creditor Representative. *See* Response of the Ad Hoc Group of General Obligation Bondholders to the Motion by the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) to Compel Compliance with the August 10, 2017 Stipulation and Order ¶ 1 (stating that "[t]he GO Group and another creditor, Assured Guaranty Corp. ("Assured") . . . have selected" the GO Creditor Representative) (Docket No. 3140) ("GO Group Response").[4]

4.      AFSCME is perplexed by the venom contained in the responses to the Motion. The Motion was filed to be constructive and to help the Commonwealth-COFINA Dispute, as well as these Title III cases in their entirety, move more quickly towards a consensual resolution, something all parties should want. As the Assured Response alludes to, AFSCME has a history, from its role in the "grand bargain" struck in the Detroit Bankruptcy, of playing a constructive role in government bankruptcies. *See* Assured Response ¶ 3. From that experience, AFSCME understands that because of the political sensitivities and real-life consequences of these cases, consensual resolution can and will happen only if the process that produces any settlement is perceived by those affected, the public-at-large, as fair. But there is a major difference between resolution of the Detroit bankruptcy and the Commonwealth-COFINA Dispute: only in the latter is there a court-ordered Stipulation setting forth in detail a particular process for its resolution

---

[4] The other responses filed to the Motion include the following: Response of Financial Oversight and Management Board for Puerto Rico to Motion by the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) to Compel Compliance with the August 10, 2017 Stipulation and Order (Docket No. 3098) ("FOMB Response"); Response of AAFAF to Motion by the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) to Compel Compliance with the August 10, 2017 Stipulation and Order (Docket No. 3127) ("AAFAF Response"); Statement of Official Committee of Unsecured Creditors in Response to Motion by the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) to Compel Compliance with the August 10, 2017 Stipulation and Order (Docket No. 3138) ("Commonwealth Agent Response"); Objection of the COFINA Agent to Motion by the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) to Compel Compliance with the August 10, 2017 Stipulation and Order (Docket No. 3142) ("COFINA Agent Objection"); and Response of Assured Guaranty Corp. to Motion to Compel Compliance with the August 10, 2017 Stipulation and Order (Docket No. 3139) ("Assured Response").

that contains specific roles, with constraints, for certain parties who themselves negotiated the terms of that Stipulation. The goal of the Motion is to ensure, by reinforcing and clarifying explicitly the checks and balances contained in the Stipulation, that there be no impression on the Island that the Stipulation has been violated, and that instead the integrity of the Stipulation and these Title III cases be emphasized by the Court so that any settlement of these critical issues truly can hold.

5. For this same reason, the responses themselves confirm why the Motion should be granted: Court intervention is needed to ensure that the parties to the Stipulation who have a duty to the Title III Debtors—the Commonwealth Agent, COFINA Agent, Oversight Board, and AAFAF—are the parties driving settlement of the Commonwealth-COFINA Dispute as contemplated by the Stipulation. As the Oversight Board has stated elsewhere, the entire point of the Stipulation is "so the [Commonwealth and COFINA] Agents can answer the single question posed to them, through litigation or authorized settlement, and the Oversight Board can then use that answer to carry out its duty to restructure the debts of the Commonwealth and COFINA." Motion of Financial Oversight Board for Entry of Order (A) Confirming Scope of COFINA and Commonwealth Agents' Authority under Stipulation and Order and (B) Determining Certain Claims to Exceed Scope of the Commonwealth-COFINA Dispute (COFINA Docket No. 238) ¶ 2. Responses to the Motion, however, suggest that this spirit of the Stipulation may be in danger, as explained below. The sincere purpose of the Motion is simply to preserve that spirit of the Stipulation by asking the Court to reaffirm its letter—and nothing more than that.[5]

---

[5] The GO Group mischaracterizes the Motion as "ask[ing] the Court to infer that . . . the GO Group and Assured . . . must be excluded from" negotiations. GO Group Response at p. 3. This is not true. The Proposed Order refers only to the GO Creditor Representative as defined under the Stipulation, not to any individual creditor. For this same

3

6. Each of the Responses denies that any violation of the Stipulation has occurred, but many of those denials are premised on facts which the parties have not divulged due to the confidentiality of the mediation. *See, e.g.,* GO Group Response at p. 2 ("Because that mediation is strictly confidential, no party to it may reveal to the Court what has transpired there. This response is limited accordingly."); Assured Response ¶ 2 ("Assured cannot and will not provide any detailed responses to the assertions in the Motion due to the strict confidentiality requirements imposed by the mediation agreement."); AAFAF Response ¶ 1 ("[T]he mediation process's confidentiality requirements prohibit AAFAF from providing a detailed response to AFSCME's assertions"). AFSCME respects the confidentiality of the Mediation, and does not challenge any of the factual representations made in the responses to its Motion.

7. Even so, some of the responses contain statements of fact about what transpired in Mediation that are worthy of the Court's attention as it weighs whether to grant the relief requested by the Motion. First, the FOMB Response provides evidentiary support for the factual contention that "the GO Creditor Representative negotiate[ed] a proposal that, among other things, resolved the Commonwealth-COFINA dispute" and "the GO Creditor Representative asked for the Oversight Board's agreement to implement it through a Title III Plan of Adjustment." FOMB Response ¶ 3. Second, the GO Group's response affirms that the GO Group (though, to be clear, not necessarily the GO Creditor Representative) engaged in "negotiations" with the COFINA Agent. GO Group Response at p.2 n.4.

8. Lest there be any confusion, it is *not* the purpose or intent of the Motion to levy any accusations of misconduct against any party whatsoever—and the Motion does no such

---

reason, Assured is entirely off-base in alleging that the Motion contains "baseless assertions . . . that Assured somehow acted improperly." Assured Response ¶ 1. The Motion contains no allegations of wrongdoing concerning Assured (or the GO Group, or any other party), at all.

thing.[6] Rather, the Motion seeks only to reinforce the strength of the Stipulation prophylactically by requesting the Court's clarification of what it has already recognized, in a different context, as "certain ambiguities in the stipulated Procedures." *See* Order Denying Application of COFINA Agent for Entry of Order Authorizing Retention of Centerview Partners LLC as Financial Advisor and Expert (Docket No. 1461), at p. 6. All parties stand to benefit from clarity over the meaning of the Stipulation, because, again, a consensual resolution of these issues that can win acceptance by the affected public is much more likely if the public understands and believes that the process leading to such settlement was clearly defined and followed.

9. The responses to the Motion have brought to light at least one issue which would benefit from the Court's clarification as to the effect and purpose of the stipulation: some parties believe, despite the Stipulation's clear admonition that the GO Creditor Representative is "not authorized to negotiate any proposed settlement, but only to consent thereto," Stipulation § 4(i), that nevertheless "nothing bars the GO Creditor Representative . . . from negotiating, with or without mediation, the treatment of its constituency under a plan of adjustment *with any party*" including by way of "a proposal that, among other things, *resolved the Commonwealth-COFINA dispute*." FOMB Response ¶ 3 (emphasis added). *See also* COFINA Agent Response ¶ 3 (quoting FOMB Response in support of the proposition that "the Stipulation does not actually prohibit the conduct complained about by AFSCME"); Assured Response ¶ 3 (quoting FOMB

---

[6] For example, contrary to the GO Group's Response, AFSCME did not "suggest [] 'that the public release' of the settlement framework 'was a strategic maneuver designed to manipulate the market.'" GO Group Response at p. 5. What AFSCME actually said in the Motion was that a press report had, rightly or wrongly, reported on that perception—and that "public perception" is "yet another reason for this Court to enter an Order ensuring that the Stipulation's procedures are followed to the letter." Motion ¶ 22. AFSCME made this point precisely because, again contrary to the GO Group's Response, AFSCME wants to see "a constructive and expeditious resolution of these proceedings," GO Group Response at p. 5, and AFSCME believes that any settlement will require buy-in from the public, which would be advanced by an order from the Court reaffirming the letter of the Stipulation. AFSCME's Motion most certainly does *not* take a position on whether or not the public release of the settlement framework was appropriate, or ask the Court to rule on that issue in its disposition of the Motion.

5

Response); GO Group Response at 4 ("The import of [Stipulation § 4(i)] is that, to the extent [the Commonwealth Creditor Representatives] participate in negotiation of the Commonwealth-COFINA Dispute, they not do so in their capacity as Commonwealth Creditor Representatives.").

10. AFSCME respectfully suggests that is contrary to the Stipulation's terms and intent. Rather, Section 4(i) of the Stipulation means what it says: "the Commonwealth Creditor Representatives are not authorized to negotiate any proposed settlement, but only to consent thereto[.]" Section 4 of the Stipulation, entitled "Procedures," sets forth the protocol for resolution of the "Commonwealth-COFINA Dispute," which is a narrow dispute between the Commonwealth and COFINA defined as follows: whether "the sales and use taxes purportedly pledged by COFINA to secure debt (the "Pledged Sales Taxes") are property of the Commonwealth or COFINA[.]" The Stipulation explicitly bars the Commonwealth Creditor Representatives—and nobody else—from negotiating only this narrow legal issue of who owns this portion of the Commonwealth's sales and use taxes—and not any other issue in these Title III cases.

11. Against the weight of Section 4(i) of the Stipulation, the Oversight Board points to Section 4(n) of the Stipulation, which states in its entirety the following:

> Notwithstanding anything in this Stipulation, the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment, and to carry out that power and duty, the Oversight Board may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute; provided, however, that if the Agents reach a proposed settlement of the Commonwealth-COFINA Dispute before the Court fixes a date for a hearing on the disclosure statement of the Oversight Board's proposed plan of adjustment for COFINA, the Oversight

6

> Board shall amend its proposed disclosure statement so at the confirmation hearing on the proposed plan of adjustment for COFINA, the Agents' proposed settlement shall first be considered by the Court together with the proposed plan distributions, if any, agreed to by all parties in the Mediation, or otherwise, together with plan distributions proposed by the Oversight Board.

12. As a threshold matter, Section 4(n) clearly does not authorize any negotiations between either the COFINA Agent or AAFAF on the one hand, and the Commonwealth Creditor Representatives on the other, to settle the Commonwealth-COFINA Dispute. At most, the impact of Section 4(n) is that "*the Oversight Board* may negotiate and mediate *with creditors*" about the Commonwealth-COFINA dispute under certain circumstances, notwithstanding Section 4(i) (emphasis added). The COFINA Agent, however, is not a creditor, and therefore any authorization of negotiations between the Oversight Board and creditors by Section 4(n) is irrelevant to the COFINA Agent, leaving in place the restrictions on Commonwealth Creditor Representatives negotiating with the COFINA Agent that are found in Section 4(i). Moreover, under the Stipulation, the COFINA Agent "shall not participate in the negotiations of a title III plan of adjustment in the COFINA title III case" except to ensure that any settlement of the Commonwealth-COFINA Dispute "is properly embodied within the title III plan of adjustment," s*ee* Stipulation § 4(i), and so there is no need for the GO Creditor Representative to be negotiating with the COFINA Agent under the Stipulation in the first place.[7]

13. The Oversight Board characterizes Section 4(n) as providing that "the Oversight Board can negotiate and propose plans of adjustment that settle the Commonwealth-COFINA dispute." FOMB Response ¶ 1. This is true as a general matter, but does not answer the question of whether the Oversight Board can negotiate the Commonwealth-COFINA Dispute (as

---

[7] Again, to be clear, AFSCME is not alleging as a matter of fact that such negotiations have already taken place.

7

opposed to other issues) with third parties whose roles are otherwise explicitly constrained by the Stipulation, namely, the Commonwealth Creditor Representatives. Furthermore, Section 4(n) of the Stipulation only contemplates Commonwealth-COFINA dispute settlements that have been "*developed* by the Agents, or *developed* by the Oversight Board," allowing that the Oversight Board then "may negotiate and mediate with creditors to achieve *such* settlement of the Commonwealth-COFINA Dispute." (emphasis added.) However, the Oversight Board itself has stated publicly that the terms of the "General Obligation-COFINA creditor proposal made public . . . were not crafted with any prior input from either the Oversight Board or the Government." Thus negotiations of that nature would find no safe harbor in Section 4(n) if they were in violation of a different provision of the Stipulation (such as Section 4(i)).

14. Finally, to the extent relevant, AFSCME filed its Rule 2019 Statement. *See* Rule 2019 Statement of American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME) (Dkt No. 3175).

15. The Commonwealth-COFINA Dispute addresses significant multi-billion-dollar issues that substantially impact the Commonwealth going forward. The parties negotiated the terms of the Stipulation, and it is important for both the actual integrity and appearance of integrity of the Mediation process that the parties honor the terms of the Stipulation in working through these difficult issues.

## CONCLUSION

For all the forgoing reasons, AFSCME respectfully requests that the Court grant the Motion and issue any other relief that is just or proper.

Dated: May 29, 2018	SAUL EWING ARNSTEIN & LEHR LLP

By:	*/s/ Sharon L. Levine*
Sharon L. Levine *(pro hac vice)*
Dipesh Patel *(pro hac vice)*
1037 Raymond Blvd.
Suite 1520
Newark, NJ 07102
(973) 286-6713 (Telephone)
(973) 286-6821 (Facsimile)

-and-

*/s/ Matthew S. Blumin*
**AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES**
Judith E. Rivlin (*pro hac vice*)
Teague P. Paterson *(pro hac vice)*
Matthew S. Blumin *(pro hac vice)*
1101 17th Street NW, Suite 900
Washington, DC 20011
(202) 775-5900 (Telephone)
(202) 452-0556 (Facsimile)

-and-

*/s/ Manuel A. Rodriguez Banchs*
Manuel A. Rodriguez Banchs
P.O. Box 368006
San Juan, Puerto Rico 00936-8006
(787) 764-8896 (Telephone)
(787) 721-0975 (Facsimile)

*Attorneys for the American Federation of State,
County and Municipal Employees*

9