# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | PROMESA<br>Title III |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** | No. 17 BK 3283-LTS<br><br>**(Jointly Administered)** |
| As a representative of | Re: ECF No. 1416 |
| **THE COMMONWEALTH OF PUERTO RICO** *et al.*, | Hearing date: June 6, 2018 at 9:30 a.m. (Atlantic Standard Time) |
| **Debtors.**[1] | |

## FEE EXAMINER'S SECOND REPORT ON PROFESSIONAL FEES AND EXPENSES
### (October 1, 2017-January 31, 2018)

**I.  SUMMARY OF UNCONTESTED FEE APPLICATIONS FOR THE SECOND INTERIM COMPENSATION PERIOD**

**II. NOTICE OF DEFERRAL OF 17 SECOND INTERIM APPLICATIONS AND FIVE FIRST INTERIM PERIOD APPLICATIONS FOR CONSIDERATION AT THE JULY 25 OMNIBUS HEARING OR AT A LATER DATE**

TO: HON. LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## PRELIMINARY STATEMENT

With this report, the Fee Examiner:

--Recommends Court approval of the 26 interim fee applications detailed on **Exhibit A**; and

--Notifies the Court, consistent with paragraphs 2.h and 2.k of the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "Interim Compensation Order"), that the Fee Examiner and the applicants listed on **Exhibit B** are in productive discussions and have agreed—to continue their dialogue— to adjourn their consideration to the July 25, 2018 omnibus hearing or another date convenient for the Court.

## INTRODUCTION

The PROMESA-mandated structure of these proceedings virtually compels the sustained participation of at least five principal parties—each with its own legal counsel and financial advisors—for virtually every contested issue. That alone, along with now questioned practices by some of the professionals over the first two interim fee periods, has contributed to the remarkable professional fees and expenses through January 31, 2018. The same structural inefficiency, however, provides an opportunity for increased coordination and cooperation that can lessen both the burden on the Court and the financial cost to the Commonwealth. So, too, will changes in the approaches and practices by individual professional firms, whether compelled changes or not. The most recent challenge to PROMESA, filed just last week in the wake of the fiscal plan agreement,[2] provides the latest—but not the only—opportunity for efficient advocacy without sacrificing the skill and zeal necessary for recovery and reorganization.

---

[2] *E.g.*, *Assured Guar. Corp. et al. v. Commonwealth of Puerto Rico et al.*, Adv. No. 18-059, filed May 23, 2018.

**SUMMARY**

This Court-ordered report addresses the professional fees and expenses timely submitted for approval and subject to review and recommendation for the second interim period (October 1, 2017 – January 31, 2018). Compared with the first interim period, which commenced with the initial Title III petitions a year ago, the fees and expenses subject to review here have declined from approximately $77.4 million to approximately $67.7 million.[3] However, the number of timekeepers (advisors, lawyers, paraprofessionals) has increased, totaling just over 700 individuals for the second period.

The interim decrease in hours and requested compensation may be attributable, at least in part, to the September 20 hurricane and its catastrophic consequences for the Commonwealth and the initially disruptive effects on these proceedings. In addition, at least one firm with significant responsibilities has yet to submit any interim fee applications and, under the Interim Compensation Order, it has not yet been compensated. While some firms have not submitted monthly statements since February 1, 2018, those submitted through the end of May 2018 suggest that the deceleration in fees and expenses apparent through January was only temporary and, in some ways, misleading. Noting the many monthly applications yet to be filed, the total fees and expenses submitted from the petition date through the end of May 2018, including monthly applications served on the Fee Examiner, now exceed $161 million.

At the outset, it is important to emphasize that this total does *not* represent the total "cost" of the PROMESA Title III reorganization proceedings. This report only addresses the professionals—law firms and financial firms—retained by the Financial Oversight and

---

[3] The fees related to mediation during the first two periods total about $9.8 million, though not every professional provides a clearly-defined reporting category for this essential process.

Management Board (the "Oversight Board"), by AAFAF for the Commonwealth itself, by PREPA (when it appears separately) and by the two Court-appointed committees subject to review and Court approval.[4] The many other parties in interest represented by professionals, including the monoline insurers, do not—and need not—provide similar transparency. Nor are they subject to the same public scrutiny. Yet a significant amount of the professionals' time here is devoted to responding to them and to the mediation in which those other parties are indispensable to any practical resolution.

At a hearing on March 7, 2018, the Court accepted the Fee Examiner's report on the reasonableness and necessity of the professional fees and expenses for the first interim period [Dkt. No. 2685], adjusted through the review and negotiation process outlined in the Interim Compensation Order. The Court had its own comments, particularly noting the "significant issues of overstaffing or over-attendance" at hearings and meetings and the need to "avoid duplicative briefing of issues." [Tr. 25:14 and 25:9, March 7, 2018] The "careful use of resources," the Court said, in "working through these unprecedented and highly complex problems is essential." *Id.* at 24:7.

The Court's pointed comments, the Fee Examiner's Initial Report filed on March 1 [Dkt. No. 2645] and the latest sustained dialogue with professionals on fees and expenses all came *after* the second interim period had ended on January 31. As a result, while some of the fee and expense detail and applications (most filed on or about March 19) reflected the care encouraged by the Court and the Fee Examiner's initial report, other applications did not. Accordingly, any comparison of first and second interim period billing practices has only some analytical benefit,

---

[4] The review also encompasses a limited category of non-Title III services provided to some Debtors. In addition, for some professional services, the distinction between Title III and non-Title III work is not a bright line.

4

a comparison limited as well by the delayed filing of some interim applications. Nevertheless, separately or combined, the two-fee period analysis leaves little doubt both that individual firm practices and, perhaps more importantly in monetary terms, structural difficulties remain everyone's challenge.

The quality and forcefulness of the advocacy have not changed since the first interim period. Almost without exception, the generally cooperative approach of most professionals in responding to the concerns raised in the fee review process has not changed. But neither have the excessive attendance, duplication, mathematical errors, and misplaced billing judgments (time billed for reading news articles, for example) changed significantly. Persistent shortcomings remain in complying with the U.S. Trustee Guidelines, the local bankruptcy rules, and the standards promulgated for these proceedings.

PROMESA's reasonableness and necessity requirements for professional fees and expenses will not change. A professional firm involved here may well conclude, for example, that it makes sense for a partner to travel 8,400 miles (round trip) to attend a hearing, but it does not follow that the estates should bear that expense. Congressional oversight is important but not to the extent 11 lawyers and other advisors spend more than 400 hours responding to Congressional inquiries and preparing for and attending oversight hearings.[5] The issues of over-attendance and duplication of effort, identified in the Fee Examiner's initial report and noted by the Court, persist. It is now clear—if it were not before—that those problems are inherent both in the PROMESA structure and in the rote practices of some professionals and clients.

---

[5] Having testified at Congressional hearings and helped prepare witnesses to testify, the Fee Examiner has a frame of reference.

5

**REVIEW PROCEDURE**

This report incorporates by reference the Fee Examiner's Initial Report on March 1, which the Court heard on March 7, 2018. In an order entered that day [Dkt. No. 2685] and in a subsequent order [Dkt. No. 2911], entered without the need for a hearing, the Court approved the professional fee and expense applications of all but two professionals (six applications altogether) for the first interim period. The first interim applications of Proskauer Rose LLP for the Oversight Board, like its second applications, remain under discussion. The first and second applications of McKinsey & Company, totaling $8.08 million, also remain unapproved and unpresented to the Court for the unique reasons noted in the Initial Report and in the statements at the March 7 hearing.

Those two McKinsey & Co. applications now are subject, first, to the pending motion to amend the fee review process for McKinsey and several other professionals [Dkt. No. 3032] and, second, to a recommendation from the Oversight Board to the Court with respect to the reasonableness and necessity of McKinsey's significant work. In all other respects, the process for the first interim period remained the same for the second interim period: the filing of an application began the process, followed by manual and digital analysis by attorneys, an initial confidential letter report with exhibits and recommendations, detailed negotiations—and, when and if consensus has been reached, submission to the Court for review and approval.

Immediately after the March hearing, the Fee Examiner and counsel made a presentation in San Juan and answered questions on the review process from more than two dozen professionals who attended in person, principally Puerto Rico-based firm representatives and, by phone, several New York-based firm representatives. In the three months since the Court's initial fee hearing, the Fee Examiner has again met individually and in person with counsel for the Oversight Board (both its general counsel and counsel at Proskauer), counsel for the

Unsecured Creditors' Committee and, through AAFAF, counsel for the Commonwealth. The Fee Examiner also has had a second telephone conference with the Oversight Board's executive director and regular communications with counsel for these and other interested parties. The U.S. Trustee has its own independent standing for these matters, *see* PROMESA section 316(b), and the Fee Examiner and counsel have been in regular contact with that office. In addition, the Fee Examiner met for a second time with McKinsey's representatives to address the appropriate review process. Throughout the second period review, counsel and staff at Godfrey & Kahn have had repeated communications with professional firms on their individual applications.

No objections have been filed to any professional application for the second interim period.[6] Following the procedure in the First Interim Report, **Exhibit A** attached here lists all of the Second Interim Period applications now recommended for approval and the recommended adjustments to each of them. **Exhibit B** lists applications that have been consensually deferred, as discussed above, as well as applications filed after the March 19, 2018 deadline in the Interim Compensation Order or applications initially supported by insufficient data and documentation.[7] Like every fee and expense application, whenever submitted, they all remain subject to Court approval of final applications at the conclusion of these proceedings.

---

[6] One objection was filed during the first interim period [Dkt. No. 2645]. That objection, like the Fee Examiner's comment on it, *see* First Interim Report at 4, involved the "scope" questions surrounding the work of the COFINA Agent and counsel, which remain open.

[7] Every professional needs to comply strictly with the fee and expense data and documentation guidelines outlined in the attachment to the Fee Examiner's November 10, 2017 introductory memorandum. In many instances, applications recommended for deferral here are the result of missing, incomplete, or improperly formatted data. The reporting schedule outlined in the Interim Compensation Order depends on the timely submission of both applications and supporting materials.

**INITIAL OBSERVATIONS/SECOND INTERIM PERIOD PROFESSIONAL FEES**

With some notable exceptions, the massive amount of time spent by professionals collectively in the second interim period reflects, appropriately, the unique nature of the legal and financial issues here and the challenges they present. Between last October and this January, these proceedings were contested, whether or not productively litigated, in the U.S. Court of Appeals, in this Court and in several other federal district courts,[8] in a Commonwealth court, and in an intensive multi-part, multi-party mediation. As in the first interim period, the review process identified many minor problems with little financial impact—a movie charge on a hotel bill, for example. Yet the frequency of, and cost inherent in, overstaffing and over-attendance, generally "duplicate advocacy," persist to the point that, at one of the dozen hearings during the period, one party in interest was represented in the courtroom by 13 attorneys, only one of them with a speaking role.

The problem is not limited to multiple parties with similar and, at times, duplicative arguments and goals. It also encompasses multiple representation for single clients. The Oversight Board, for example, has been represented by two mainland law firms in its response to the pending Aurelius motion to dismiss the Title III proceedings (the "Appointments Clause litigation").[9] One of those counsel has not yet submitted any fee applications. Unfortunately that precludes a full review for other firms and delays any concrete adjustments and conclusions, which may well depend on relative as well as total contributions to the litigation. Regardless and standing alone, the reported professional services attributable to the briefing and January hearing

---

[8] *See*, *e.g.*, *Betancourt-Rivera v. Vazquez-Garced*, No. 17-2040, 2018 WL 2246671 (D.P.R. May 16, 2018); *Colon-Colon v. Negron-Fernandez*, No. 14-1300, 2018 WL 2208053 (D.P.R. May 14, 2018); *Ruiz-Colon v. Elias*, No. 17-2223, 2018 U.S. Dist. LEXIS 74455 (D.P.R. Apr. 30, 2018).

[9] That multiple representation recurs, not incidentally, in the COFINA litigation. *See infra* at 14.

in the Appointments Clause litigation exceed 3000 hours and approach $2.5 million. It is reasonable to assume that the final total will surpass $3 million.

To be sure, the Appointments Clause litigation strikes at the heart of these proceedings, challenging the Oversight Board's very existence. The Oversight Board, the Commonwealth through AAFAF, the Official Committee of Retired Employees, and the Official Committee of Unsecured Creditors presented a united position in defending the Oversight Board structure, each submitting at least one brief and participating in oral argument. The Court characterized the day of argument on the Appointments Clause issues as "extraordinary" and "extraordinarily important." [Tr. 117:11, January 10, 2018 10:00 a.m.]

Several of the professionals deeply involved in the Appointments Clause litigation provided reasoned, dispassionate and detailed responses to the confidential Letter Reports they received expressing concern about both the individual and aggregated time and fees. Those responses reflected varying degrees of advance coordination and cooperation. Taken in isolation, every professional for each client has a distinct point of view and a distinct voice, emphasizing the existential character of the issue. In these proceedings, however, there is no end of novel legal issues. The resolution of more than just one question of law will determine many others, affecting not just the parties but an entire population.

Yet it is difficult to conclude that any issue can justify the massive resources brought to bear so far on the Appointments Clause litigation. The threshold at which the value added no longer supports the additional cost has been passed. The Fee Examiner has asked that all of the professionals involved in the Appointments Clause litigation re-evaluate their fee submissions and relative contributions. To date, there has been no specific adjustment recommended—in part because of that request and in part because of delayed applications. In the interim, the appeals

9

that may well follow a decision here cannot justify repetition—multiple law firms, multiple briefs making similar arguments, at least 27 attorneys taking direct responsibility by signing those briefs, not including their Puerto Rico counsel, with hundreds more lawyers and staff spending time on the work.

Another dispute, resolved at the outset of the second interim period, carries similar long-term duplicate advocacy implications. In *In re Financial Oversight & Management Board for the Commonwealth of Puerto Rico*, 872 F.3d 57 (1st Cir. 2017), the U.S. Court of Appeals concluded that PROMESA, importing section 1109(b) of the Bankruptcy Code, provides the Creditors' Committee with an "unconditional right to intervene" in a subsidiary adversary proceeding. *Id*. at 63. The "precise scope" of the intervention right, however, is committed to the "district court's broad discretion." In noting that important limitation, the Court of Appeals cited the district court's discretion to manage the case, *id*. at 64, but discretion surely needs to apply as well to the cost of intervention.[10] The Creditors' Committee intervening there appropriately imposed its own limitations on its participation. While there is an unconditional right to intervene, it need not be exercised everywhere and, when it is exercised, it should be justified on the record and limited.

The confidential letter reports and exhibits sent to the professionals and the discussions that have followed focused in part on the time spent on the Appointments Clause litigation and the intervention issue, which might have been—and may still be—questioned as either unreasonable or unnecessary. But that almost certainly will not be the case in subsequent interim

---

[10] For example, the intervention order entered last week by the magistrate judge permitted the Creditors' Committee's involvement in an adversary proceeding but strictly limited that participation. Adv. No. 18-028, Dkt. No. 14.

10

periods—for just-filed adversary proceedings, for example, or for any appeals that are or soon will be pending.

Partly for its domino effect, duplicate advocacy will lead to objections. Multiple briefs and repeated intervention lead, almost inexorably, to the same duplicate advocacy in the appeals and ancillary proceedings that follow. Earlier this month, for example, the Creditors' Committee without objection from any other party again asked the U.S. Court of Appeals for permission to participate "in the briefing and oral argument" of the appeal of this Court's dismissal of an adversary proceeding. That proceeding had been brought by a guarantor in which, pursuant to the First Circuit's decision last year, this Court had permitted the Creditors' Committee to be involved. *See Assured Guar. Corp. v. Commonwealth of Puerto Rico*, No. 18-1165 (1st Cir. May 18, 2018) (Motion to intervene at 1).

To its credit, the Creditors' Committee again emphasized its "unique perspective" and that it "has no intention of duplicating other parties' arguments…." *Id*. at 7. The observations here are not commentary on the Creditors' Committee's right to intervene, let alone on the merits of any party's position, but rather an example of the exponential nature of duplicate advocacy. Six months from now, the Fee Examiner will present the fees and expenses attributable to the multi-party involvement in the appeals—at least two—now pending in the U.S. Court of Appeals. The question again will be whether duplicate advocacy—in the same cause, toward the same end—has been reasonable and necessary, especially in the face of PROMESA's explicit statement that the "court shall not allow compensation for … unnecessary duplication of services." 48 U.S.C. § 2176(d).

*The Oversight Board Professionals*

The Oversight Board's lead counsel, Proskauer, has elected to have both its first and second interim fee period applications (totaling $28.3 million) held over for consideration at the

July 25, 2018 omnibus hearing or at a later date. The Fee Examiner hopes Proskauer soon re-engages on the issues now identified in the first two interim fee applications. The transparency and uniformity of the review process are best served by principal counsel having their fee applications considered in conjunction with all other case professionals.

### *The AAFAF Professionals*

O'Melveny & Myers LLP continues as the lead counsel for AAFAF, and its four second interim applications [Dkt. Nos. 2758, 2759, 2760, and 2761] are recommended for approval with adjustments. In addition, AAFAF's former Puerto Rico counsel, Andres W. Lopez, has four interim fee applications recommended for approval as filed. The Fee Examiner has continued the extensive dialogue with both AAFAF counsel at O'Melveny and AAFAF personnel directly, working with them and others to develop and refine the Interim Compensation procedures.

### *The PREPA Professionals*

During the second interim period, PREPA was again represented by Greenberg Traurig, LLP as lead counsel with Cancio Nadal, Rivera & Diaz, PSC as Puerto Rico counsel. In December 2017, after the Court entered the *Opinion and Order Denying Urgent Motion of FOMB to Confirm Appointment of a Chief Transformation Officer (Dkt. No. 361 in 17-4780)* [Dkt. No. 1820], PREPA engaged Filsinger Energy Partners to provide not only Title III services related to PREPA's restructuring but also to work with FEMA on recovery efforts, on ongoing operations, and on the financial analysis for the development of a privatization plan. Though the majority of Filsinger's work has related to non-Title III matters, PREPA has asked Filsinger— and Filsinger has agreed—to submit Title III and non-Title III fees alike to this review process. The Fee Examiner has reviewed all of the fees submitted for Court approval, whether or not they arise out of Title III.

The unique challenges facing PREPA and the Commonwealth's power supply need no elaboration here. The amount of professional time those challenges have required, including the time devoted to Congressional oversight, remains troubling for a variety of reasons, *see supra* at 5, not the least of which is their reflection of systemic problems. Moreover, the expanding role of Filsinger suggests the need for some adjustment to its required timekeeping practices, which have been discussed with Filsinger and likely involve PREPA approval, public comment, and perhaps further amendments to the Fee Examiner Order.

*The Committee Professionals*

Both official committees have their own lead counsel, Puerto Rico counsel, and a financial advisor. In addition, both committees have retained communications consultants, and the retiree committee has an actuarial consultant. By virtue of its appointment as the Commonwealth's agent for the COFINA litigation, the Creditors' Committee counsel has been more active (and, therefore, more costly) than the retiree committee's professionals. Nonetheless, for some analytical purposes, the two professional groups are similarly situated. Both committees prepared and submitted freestanding briefs in the Appointments Clause litigation and both participated in oral argument. While the committees have statutory standing, they should consider carefully the ramifications of duplicate efforts. It may not ultimately be reasonable or necessary for each committee to parallel, if not mirror, the arguments of Debtor parties when their interests are, as in the Appointments Clause litigation, significantly (though imperfectly) aligned.

*The COFINA Agent Professionals*

The second interim review and reporting cycle has not shed more light on a core question—why does the COFINA Agent require two law firms? To be sure, the dual representation was part of a stipulated agreement approved by the Court [Dkt. No. 857-1], and

13

the professionals have reported a genuine effort to avoid duplication. But that duplication between and among the COFINA Agent's professionals is unavoidable and difficult to justify, especially given the limited scope of the COFINA Agent's role in these cases.[11]

The well-established bankruptcy billing guidelines apply to all professionals, notwithstanding the Agent structure. More concerning, the COFINA Agent has sought to expand the team of professionals. The request to retain a "financial advisor and expert" having been denied, *see Order Denying Application of COFINA Agent for Entry of Order Authorizing Retention of Centerview Partners LLC as Financial Advisor and Expert* [Dkt. No. 1461], the COFINA Agent now has engaged the services of one or more expert witnesses, one from a financial advisory firm, to testify on bond issues and related financial matters. While these expert advisory fees were not incurred during the second interim fee period and have not yet been submitted for review, they will be examined critically, as will any sub-retained financial professional by any party, whether or not described as an expert witness.

## EXPENSES

The same problems that characterized expense applications in the first interim period dominate the second: wholesale failure to provide receipts, disregard for well-established caps on hotel and meal charges, airfare expenses for other than coach travel, local travel expenses that exceeded the guideline standards.[12] The billed expenses for the second interim period ($1.9 million) decreased slightly over the first period expenses ($2 million). The amount

---

[11] The Court last week declined the COFINA Agent's certification motion, noting the delay inherent in that process that would "at least entail another round of briefing and argument." [Adv. No. 17-257, Dkt. No. 483, at 6]. Ironically, the Commonwealth Agent and the Oversight Board each filed a separate brief to "oppose the certification motions in their entirety." *Id.* at 3 [Adv. No. 17-257-LTS, Dkt. Nos. 439 and 438].

[12] In several instances, the Fee Examiner did not object to expenses directly related to the hurricane where those expenditures exceeded established standards.

charged for third-party electronic research services declined but, in some instances, remained excessive—$220,698.00 at one firm. While many expense charges, taken one by one, may seem insignificant, their aggregate effect is not. Every professional has to work within the same governing standards here. It bears repeating: professionals are free to incur any travel expenses they like, without limitation, but PROMESA does not permit the Commonwealth to reimburse expenses that exceed established limits.

## SPECIFIC RECOMMENDATIONS

The Fee Examiner's Initial Report—and his counsel and his supplemental comments at the March 7, 2018 hearing—included specific suggestions for the billing and review process. Several of those were embodied in the pending *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency* [Dkt. No. 3032]. With another three months of extensive discussions with professionals, reviewing again time records and case developments, several more recommendations present themselves. Some are minor; some not. A non-exhaustive list, they may take the form of a subsequent motion to again modify the interim compensation procedures or Fee Examiner Order. In any event, they highlight issues and challenges for the professionals and the Court:

- A requirement that any motion to intervene or to file an *amicus* brief be accompanied by a cost estimate and a summary of the contribution that an additional brief or appearance would make to the issues' resolution. That summary should include an explanation of any efforts to coordinate briefing and argument.

- An increase in the standard "holdback" amount from 10 or 20 percent to encourage the timely submission of applications and data and timely resolution of issues.

- A Court-imposed limit on the number of individuals, whether counsel or staff, permitted to bill the estates for monitoring the docket.

- Modification or elimination of the service by mail requirement, already partially suggested by the *Joint Motion for Entry of An Order Further Amending the Interim Compensation Order* [Dkt. No. 3133]. For the first two fee periods, professionals spent about $25,000 on mail and express delivery, much of it suitable for electronic delivery.

## CONCLUSION

In its comments at the first hearing on professional fees and expenses, the Court noted that the review process "will be long and complicated and is essential." [Tr. 23:22, March 7, 2018]. Hasty or superficial observations about a legal or financial strategy or tactic or a purely quantitative conclusion about the number of people in a mediation or at a hearing on a particular day do not advance the overall interests of the Commonwealth's citizens or the judicial process that remains essential to recovery and stability. There are larger issues here and a longer frame.

The professionals soon will file applications for the third interim period (February 1 – May 31, 2018), and that review and the Court's conclusions from it about the "patterns of behavior" reflected in applications may well lead to formal objections and to the additional "adjustments" foreseen by the Court three months ago. *See id.* at 25:13 and 25:17. In the meantime, the primary compliance responsibility for meeting the reasonable and necessary test rests with *both* the professionals *and* their clients. The decision to cooperate with another party in interest on a single brief or a consolidated strategy or to forego a motion to intervene should originate with the professional, and it is the professional that executes the decision. However, the decision to do so rests with the client, whether the Oversight Board, the Commonwealth through AAFAF or other public officials, the COFINA Agent, or the committees. The responsibility for excessive fees and expenses is shared, but the client has the final decision.

## RELIEF REQUESTED

For the reasons stated in this report, and in the absence of any objection, the Fee Examiner recommends that the Court approve under PROMESA sections 316 and 317 the

16

Applications listed on **Exhibit A** and permit the deferral of the other applications to the omnibus hearing scheduled for July 25, 2018 or a later date.

Dated: May 30, 2018.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

        EDGE LEGAL STRATEGIES, PSC

        *s/Eyck O. Lugo*
        Eyck O. Lugo
        252 Ponce de León Avenue
        Citibank Tower, 12th Floor
        San Juan, PR 00918
        Telephone: (787) 522-2000
        Facsimile: (787) 522-2010

        *Puerto Rico Counsel for Fee Examiner*

        GODFREY & KAHN, S.C.
        One East Main Street, Suite 500
        Madison, WI 53703
        Telephone: (608) 257-3911
        Facsimile: (608) 257-0609

        Brady Williamson (*Pro Hac Vice*)
        *Fee Examiner*

        Katherine Stadler (*Pro Hac Vice*)
        *Counsel for the Fee Examiner*

18983834.4

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

Report - EXHIBIT A

**Second Interim Fee Period Uncontested Fees**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Voluntary Discounts | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | *Financial Advisors to Debtors* | | | | | | | | |
| 1 | **Ernst & Young LLP [Dkt. No. 2780]** | 10/01 - 1/31/2018 | $ 1,261,586.10 | $ 32,859.19 | $ 12,546.21 | $ 7.86 | | $ 1,228,726.91 | $ 12,538.35 |
| | *Puerto Rico Bankruptcy Counsel to PREPA* | | | | | | | | |
| 2 | **Cancio, Nadal, Rivera & Diaz, PSC [Dkt. No. 2754 & 2791]** | 10/01 - 12/31/2017 | $ 273,165.00 | $ - | $ 1,458.10 | $ 705.00 | | $ 273,165.00 | $ 753.10 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | | |
| 3-a | **O'Melveny & Myers LLP [Dkt. No. 2758]** | 10/01 - 1/31/2018 | $ 7,565,097.59 | $ 49,818.37 | $ 122,415.55 | $ 1,295.07 | | $ 7,515,279.22 | $ 121,120.48 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - COFINA* | | | | | | | | |
| 3-b | **O'Melveny & Myers LLP [Dkt. No. 2759]** | 10/01 - 1/31/2018 | $ 2,254,943.69 | $ 49,818.37 | $ 5,473.77 | $ 1,295.07 | | $ 2,205,125.32 | $ 4,178.70 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - ERS* | | | | | | | | |
| 3-c | **O'Melveny & Myers LLP [Dkt. No. 2760]** | 10/01 - 1/31/2018 | $ 1,461,304.71 | $ 49,818.37 | $ 51,343.15 | $ 1,295.06 | | $ 1,411,486.34 | $ 50,048.09 |
| | *Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - HTA* | | | | | | | | |
| 3-d | **O'Melveny & Myers LLP [Dkt. No. 2761]** | 10/01 - 1/31/2018 | $ 373,329.40 | $ 49,818.37 | $ 2,847.89 | $ 1,295.06 | | $ 323,511.03 | $ 1,552.83 |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | | |
| 4-a | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 2781]** | 10/01 - 12/31/2017 | $ 76,055.00 | $ - | $ - | $ - | | $ 76,055.00 | $ - |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - COFINA* | | | | | | | | |
| 4-b | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 2781]** | 10/01 - 12/31/2017 | $ 945.00 | $ - | $ - | $ - | | $ 945.00 | $ - |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - ERS* | | | | | | | | |
| 4-c | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 2781]** | 10/01 - 12/31/2017 | $ 4,025.00 | $ - | $ - | $ - | | $ 4,025.00 | $ - |
| | *Puerto Rico Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority - HTA* | | | | | | | | |
| 4-d | **Law Offices of Andres W. Lopez, PSC [Dkt. No. 2781]** | 10/01 - 12/31/2017 | $ 11,480.00 | $ - | $ - | $ - | | $ 11,480.00 | $ - |
| | *Bankruptcy Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority, as fiscal agent for PREPA* | | | | | | | | |
| 5-a | **Greenberg Traurig, LLP [Dkt. No. 2801]** | 10/01 - 1/31/2018 | $ 1,150,090.31 | $ 68,699.38 | $ 25,944.10 | $ 22,997.17 **FN 1** | | $ 1,081,390.93 | $ 2,946.93 |
| | *Bankruptcy Counsel to PREPA* | | | | | | | | |
| 5-b | **Greenberg Traurig, LLP [Dkt. No. 2800]** | 10/01 - 01/31/2018 | $ 4,423,132.83 | $ 68,699.38 | $ 112,804.65 | $ 22,997.17 **FN 1** | | $ 4,354,433.45 | $ 89,807.48 |
| | *Chief Finanacial Advisor to PREPA* | | | | | | | | |
| 6 | **Filsinger Energy Partners [Dkt. No. 2721]** | 12/07 - 1/31/2018 | $ 2,326,893.30 | $ 38,694.00 | $ 201,691.48 | $ 83,465.63 | | $ 2,288,199.30 | $ 118,225.85 |
| | *COFINA Agent* | | | | | | | | |
| 7 | **Bettina M. Whyte [Dkt. No. 2725]** | 10/01 - 1/31/2018 | $ 160,945.00 | $ 19,098.00 | $ 3,779.56 | $ 664.08 | | $ 139,015.50 | $ 1,783.69 |
| | Pre-Appointment, fees and expenses deferred from First Interim Fee Period. *See* [D.I. 2029] | 8/03 - 8/09/2017 | | $ 2,831.50 **FN 2** | | $ 1,331.79 **FN 3** | | | |
| | *Special Municipal Bankruptcy Counsel to COFINA Agent* | | | | | | | | |
| 8 | **Klee, Tuchin, Bogdanoff & Stern LLP [Dkt. No. 2728]** | 10/01 - 1/31/2018 | $ 587,025.50 | $ 22,079.50 | $ 12,994.18 | $ - | | $ 559,439.25 | $ 12,994.18 |
| | Pre-Appointment, fees and expenses deferred from First Interim Fee Period. *See* [D.I. 2099] | 8/03 - 8/09/2017 | | $ 5,506.75 **FN 4** | | $ - | | | |

18598843.1

Case:17-03283-LTS Doc#:3193 Filed:05/30/18 Entered:05/30/18 18:01:26 Desc: Main
Document Page 19 of 20

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

Report - EXHIBIT A

**Second Interim Fee Period Uncontested Fees**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Voluntary Discounts | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | *Puerto Rico Counsel to COFINA Agent* | | | | | | | | |
| 9 | Nilda M. Navarro-Cabrer [Dkt. No. 2726] | 10/01 - 1/31/2018 | $ 102,662.50 | $ 750.00 | $ 784.42 | $ - | yes | $ 101,912.50 | $ 784.42 |
| | *Bankruptcy Counsel to COFINA Agent* | | | | | | | | |
| 10 | Willkie Farr & Gallagher LLP [Dkt. No. 2727] | 10/01 - 1/31/2018 | $ 4,348,432.15 | $ 175,074.17 | $ 138,798.99 | $ 952.85 | yes | $ 4,157,841.40 | $ 137,846.14 |
| | Pre-Appointment, fees and expenses deferred from First Interim Fee Period. *See* [D.I. 2031] | 8/03 -8/09/2017 | | $ 15,516.58 **FN 5** | | $ - | | | |
| | *Bankruptcy Counsel to the Official Committee of Unsecured Creditors* | | | | | | | | |
| 11 | Paul Hastings LLP [Dkt. No. 2735] | 10/01 - 1/31/2018 | $ 7,066,017.75 | $ 105,328.50 | $ 95,462.43 | $ 12,722.50 | | $ 6,960,689.25 | $ 82,739.93 |
| | *Puerto Rico Counsel to the Official Committee of Unsecured Creditors* | | | | | | | | |
| 12 | Casillas, Santiago & Torres, LLC [Dkt. No. 2757] | 9/01 - 1/31/2018 | $ 444,580.00 | $ - | $ 21,160.13 | $ - | | $ 444,580.00 | $ 21,160.13 |
| | *Bankruptcy Counsel to the Official Committee of Retired Employees* | | | | | | | | |
| 13 | Jenner & Block LLP [Dkt. No. 2741] | 10/01 - 1/31/2018 | $ 2,054,446.59 | $ 50,057.48 | $ 100,461.26 | $ 3,047.37 | | $ 2,004,389.11 | $ 97,413.89 |
| | *Puerto Rico Counsel to the Official Committee of Retired Employees* | | | | | | | | |
| 14 | Bennazar, Garcia & Milian, C.S.P. [Dkt. No. 2743] | 10/01 - 1/31/2018 | $ 270,162.50 | $ 3,225.00 | $ 11,538.25 | $ 205.77 | | $ 266,937.50 | $ 11,332.48 |
| | *Financial Advisor to the Official Committee of Retired Employees* | | | | | | | | |
| 15 | FTI Consulting, Inc. [Dkt. No. 2740] | 10/ 01 - 1/31/2018 | $ 1,127,271.50 | $ 23,554.39 | $ 21,853.96 | $ 16,445.61 | | $ 1,103,717.11 | $ 5,408.35 |
| | *Financial Advisor to the Mediation Team* | | | | | | | | |
| 16 | Phoenix Management Services, LLC [Dkt. No. 2724] | 10/02 - 2/4/2018 | $ 484,698.50 | $ 5,538.15 | $ 21,225.61 | $ 572.15 | | $ 479,160.35 | $ 20,653.46 |
| | *Members of the Official Committee of Retired Employees* | | | | | | | | |
| 17 | Retiree Committee Members [Dkt. No. 2734] | 10/01 - 1/31/2018 | $ - | $ - | $ 468.34 | $ - | | $ - | $ 468.34 |
| | *Members of the Official Committee of Unsecured Creditors* | | | | | | | | |
| 18 | Drivetrain, LLC and American Federation of Teachers [Dkt. No. 2737] | 5/17 - 1/31/2018 | $ - | $ - | $ 9,627.62 | $ 1,676.71 | | $ - | $ 7,950.91 |
| | *Pension Consultant to FOMB* | | | | | | | | |
| 19 | Pension Trustee Advisors, Inc. [Dkt. No. 2719] | 10/01 - 1/31/2018 | $ 11,020.50 | $564.98 ($3,022.50) **FN 6** | | ($3,316.54) **FN 7** | | $ 13,478.02 | ($3,316.54) |

**FN 1** - Of this amount, $4,941.63 represents expenses the Fee Examiner's counsel is still verifying. After verifying the documentation, the Fee Examiner expects to recommend the allowance of a significant portion of these expenses in a subsequent report.

**FN 2** - This figure represents recommended adjustments to pre-appointment fees requested and provisionally recommended for allowance in connection with the Fee Examiner's First Interim Fee Period reporting. See Dkt. No. 2685, Exhibit A, FN 3.

**FN 3** - This figure represents recommended adjustments to pre-appointment expenses requested and provisionally recommended for allowance in connection with the Fee Examiner's First Interim Fee Period reporting. See Dkt. No. 2685, Exhibit A, FN 4.

**FN 4** - This figure represents recommended adjustments to pre-appointment fees requested and provisionally recommended for allowance in connection with the Fee Examiner's First Interim Fee Period reporting. See Dkt. No. 2685, Exhibit A, FN 5.

**FN 5** - This figure represents recommended adjustments to pre-appointment fees requested and provisionally recommended for allowance in connection with the Fee Examiner's First Interim Fee Period reporting. See Dkt. No. 2685, Exhibit A, FN 6.

**FN 6** - This adjustment represents a credit of $3,022.50 in previously disallowed fees from the First Interim Fee Period.

**FN 7** - This adjustment represents a credit of $3,316.54 in previously disallowed expenses from the First Interim Fee Period.

18598843.1

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of The Commonwealth of Puerto Rico, et al.

PROMESA Title III No. 17 BK 3283-LTS

Report - EXHIBIT B

**Second Interim Fee Period: Unresolved and Deferred**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Voluntary Discounts | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | *Bankruptcy Counsel to Debtors* | | | | | | | | |
| 1-a | **Proskauer Rose LLP [Dkt. No. 2068]** | 5/3/2017 - 9/30/2017 | $ 7,075,033.00 | | $ 233,148.09 | | yes | | |
| | *Bankruptcy Counsel to Debtors COFINA* | | | | | | | | |
| 1-b | **Proskauer Rose LLP [Dkt. No. 2043]** | 5/5/2017 - 9/30/2017 | $ 1,672,746.00 | | $ 16,605.84 | | yes | | |
| | *Bankruptcy Counsel to Debtors ERS* | | | | | | | | |
| 1-c | **Proskauer Rose LLP [Dkt. No. 2045]** | 5/21/2017 - 9/30/2017 | $ 1,586,156.00 | | $ 24,131.76 | | yes | | |
| | *Bankruptcy Counsel to Debtors PREPA* | | | | | | | | |
| 1-d | **Proskauer Rose LLP [Dkt. No. 2053]** | 7/2/2017 - 9/30/2017 | $ 1,099,888.00 | | $ 67,275.25 | | yes | | |
| | *Bankruptcy Counsel to Debtors HTA* | | | | | | | | |
| 1-e | **Proskauer Rose LLP [Dkt. No. 2066]** | 5/21/2017 - 9/30/2017 | $ 4,483,783.00 | | $ 154,512.19 | | yes | | |
| | *Bankruptcy Counsel to Debtors* | | | | | | | | |
| 2-a | **Proskauer Rose LLP [Dkt. No. 2868]** | 10/01 - 01/31/2018 | $ 5,453,686.60 | | $ 294,582.75 | | yes | | |
| | *Bankruptcy Counsel to Debtors COFINA* | | | | | | | | |
| 2-b | **Proskauer Rose LLP [Dkt. No.2870]** | 10/01 - 01/31/2018 | $ 562,239.80 | | $ 5,584.22 | | yes | | |
| | *Bankruptcy Counsel to Debtors ERS* | | | | | | | | |
| 2-c | **Proskauer Rose LLP [Dkt. No. 2872]** | 10/01 - 01/31/2018 | $ 2,121,996.20 | | $ 52,896.53 | | yes | | |
| | *Bankruptcy Counsel to Debtors PREPA* | | | | | | | | |
| 2-d | **Proskauer Rose LLP [Dkt. No. 2876]** | 10/01 - 01/31/2018 | $ 2,062,304.20 | | $ 37,003.99 | | yes | | |
| | *Bankruptcy Counsel to Debtors HTA* | | | | | | | | |
| 2-e | **Proskauer Rose LLP [Dkt. No. 2874]** | 10/01 - 01/31/2018 | $ 1,256,420.60 | | $ 39,216.07 | | yes | | |
| | *Bankruptcy Counsel to Debtors* | | | | | | | | |
| 3 | **O'Neill & Borges LLC [Dkt. No.2859]** | 10/01 - 01/31/2018 | $ 296,952.30 | | $ 10,003.46 | | yes | | |
| | *Strategic Consultants to Debtors* | | | | | | | | |
| 4 | **McKinsey & Company, Inc. [Dkt. No.2756]** | 10/01 - 1/31/2018 | $ 6,550,000.00 | | $ - | | | | |
| | *Financial Advisors to Government of Puerto Rico* | | | | | | | | |
| 5 | **Deloitte Financial Advisory Services LLP [Dkt. No. 3017]** | 10/01 - 01/31/2018 | $ 882,513.00 | | $ 85,109.86 | | yes | | |
| | *Special Counsel to Debtors* | | | | | | | | |
| 6 | **Luskin Stern & Eisler LLP [Dkt. No. 2729]** | 10/01 - 1/31/2018 | $ 91,237.50 | | $ 1,329.64 | | | | |
| | *Investment Banker and Financial Advisor to FOMB* | | | | | | | | |
| 7 | **Citigroup Global Markets Inc.** | 01/27/2017 - 01/31/2018 | $ 625,000.00 | | $ 60,971.21 | | | | |
| | *Macroeconomic Consultant to Debtors* | | | | | | | | |
| 8 | **Andrew Wolfe [Dkt. No. 2718]** | 10/01 - 1/31/2018 | $ 100,000.00 | | $ 12,391.30 | | | | |
| | *Bankruptcy Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority and the Puerto Rico Treasury Department* | | | | | | | | |
| 9 | **DLA Piper LLP [Dkt. No. 2753 & amended 2778]** | 6/01 - 1/31/2018 | $ 1,507,737.15 | | $ 14,969.63 | | | | |
| | *Financial Advisors to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | | |
| 10-a | **Ankura Consulting Group, LLC [Dkt. No. 2751]** | 10/01 - 1/31/2018 | $ 3,937,979.00 | | $ 175,457.10 | | | | |
| | *Financial Advisors to PREPA* | | | | | | | | |
| 10-b | **Ankura Consulting Group, LLC [Dkt. No. 2755]** | 10/01 - 1/31/2018 | $ 3,475,283.50 | | $ 153,684.90 | | | | |
| | *Financial Advisor to Official Committee of Unsecured Creditors* | | | | | | | | |
| 11 | **Zolfo Cooper, LLC [Dkt. No. 2739]** | 10/01 - 1/31/2018 | $ 1,965,880.50 | | $ 9,725.67 | | | | |
| | *Actuaries and Consultants to the Official Committee of Retired Employees* | | | | | | | | |
| 12 | **Segal Consulting [Dkt. No. 2742]** | 10/01 - 1/31/2018 | $ 482,920.00 | | $ 4,405.59 | $ - | | | |
| | *Information Agent for the Official Committee of Retired Employees* | | | | | | | | |
| 13 | **Marchand ICS Group [Dkt. No. 2736]** | 10/01 - 1/31/2018 | $ 68,402.25 | | $ 6,534.29 | | | | |

18598843.1