1       IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF PUERTO RICO
2

3

4   In Re:                              )
                                        )
5   THE FINANCIAL OVERSIGHT AND         )
    MANAGEMENT BOARD FOR PUERTO RICO,   )
                                        )   No. 17 BK 3283-LTS
6        as representatives of          )
                                        )
7   THE COMMONWEALTH OF PUERTO RICO,    )
    et al,                              )
8                                       )
             Debtors                    )
9

10

11              **STATUS CONFERENCE**

12

13      BEFORE THE HONORABLE JUDITH GAIL DEIN
           UNITED STATES MAGISTRATE JUDGE
14

15

16          United States District Court
            1 Courthouse Way, Courtroom 8
17          Boston, Massachusetts  02210
            May 29, 2018
18          1:35 p.m.

19

20

21          Debra D. Lajoie, RMR, FCRR, CRI
22          United States District Court
            1 Courthouse Way, Room 3-209
23          Boston, Massachusetts  02210
            lajoiedebra@gmail.com
24

25

```
 1  A P P E A R A N C E S:
 2        ANDREW J. SOVEN, ESQ., and CLAUDIA Z. SPRINGER,
 3  ESQ., Reed Smith LLP, for Siemens Transportation
 4  Partnership Puerto Rico, SE
 5        MARGARET DALE, ESQ., and TIMOTHY MUNGOVAN, ESQ.,
 6  Proskauer Rose LLP, for The Financial Oversight and
 7  Management Board for Puerto Rico on its own behalf and
 8  as Representative of Puerto Rico Highways and
 9  Transportation Authority
10        HERMANN D. BAUER ALVAREZ, ESQ., O'Neill & Borges,
11  for The Financial Oversight and Management Board for
12  Puerto Rico and Puerto Rico Highways and Transportation
13  Authority
14        MARIA DELORES TRELLES HERNANDEZ, ESQ., Pietroanoni
15  Mendez & Alvarez LLC, for Government Development Bank
16  of Puerto Rico
17        GISELLE LOPEZ SOLER, ESQ., Law Offices of
18  Giselle Lopez Soler, for Government Development Bank
19  of Puerto Rico
20        LUIS C. MARINI, ESQ., Marini Pietrantoni Muniz
21  LLC, for Puerto Rico Fiscal Agency and Financial
22  Advisory Authority
23
24
25
```

P R O C E E D I N G S

1        THE CLERK:  The United States District Court for

2   the District of Puerto Rico is now in session on

3   May 29, the year 2018, in the matter of The Financial

4   Oversight and Management Board for Puerto Rico, as

5   representative of the Commonwealth of Puerto Rico,

6   et al; and also in the matter of Siemens Transportation

7   Partnership Puerto Rico, SE v. Puerto Rico Highways and

8   Transportation Authority, et al; Case Nos. 17BK3283,

9   Adversary Proceeding No. 18-030, and Bankruptcy

10  No. 17BK03567.

11          Magistrate Judge Dein presiding.

12          THE COURT:  Okay.  Counsel need to introduce

13  themselves for the record, who's here.

14          MR. SOVEN:  Good afternoon, Your Honor.

15          Andrew Soven and Claudia Springer for Siemens.

16          MS. DALE:  Good afternoon, Your Honor.

17  Margaret Dale for the Defendant, the Oversight

18  Management Board of Puerto Rico on its own behalf and

19  as a representative of the Puerto Rico Highways and

20  Transportation Authority.

21          MR. MUNGOVAN:  Good afternoon, Your Honor.

22          Timothy Mungovan from Proskauer Rose on behalf

23  of the Oversight Board and HTA.

24          MR. BAUER:  Good afternoon, Your Honor.

1          Hermann Bauer from O'Neill & Borges on behalf of

2     the Oversight Board and HTA.

3          MS. TRELLES:  Good afternoon, Your Honor.

4          Maria Trelles from Pietranoni Mendez & Alvarez

5     for GDB.

6          MS. SOLER:  Good afternoon, Your Honor.

7     Giselle Lopez Soler on behalf of GDB.

8          MR. MARINI:  Good afternoon, Your Honor.

9          Luis Marini of Marini Pietrantoni Muniz on

10    behalf of AAFAF.

11         THE COURT:  All right.  Welcome, everyone here

12    in Boston and those who are attending by I am not sure

13    what method but hopefully a working method in New York

14    and Puerto Rico.

15         All right.  We have a status conference.  Why

16    don't we hear what's going on.  Why don't I hear from

17    Siemens first.

18         MR. SOVEN:  Good afternoon again, Your Honor.

19    From what I --

20         THE COURT:  You know what?  I think it's easiest

21    if you talk from the podium.  Just I think it goes

22    through --

23         MR. SOVEN:  Oh, okay.

24         THE COURT:  -- more clearly.

25         MR. SOVEN:  Your Honor, as you know, we're only

1      here on a status conference today, and I believe that

2      there's really two documents that are pending in front

3      of the Court.  There's, obviously, the complaint that

4      was filed in late March, and the deadline for the

5      response -- responses to the complaint is in fact

6      today.

7              It's my understanding that the Defendants will

8      each be filing a motion to dismiss in response to the

9      complaint, and I guess we -- from what I understand,

10     you may hear the motion to dismiss, or it may go to

11     Judge Swain.

12             THE COURT:  Makes life interesting.

13             MR. SOVEN:  Makes life interesting.  But if

14     you're, you know, willing to entertain a schedule for

15     the motion to dismiss now, I'm certainly happy to talk

16     about that, or we can --

17             THE COURT:  It may make sense to talk about it

18     in the context of the other motion and see --

19             MR. SOVEN:  Okay.

20             THE COURT:  -- where that fits in.

21             MR. SOVEN:  Yeah.  I mean, the other motion, you

22     know, as you know, was filed several weeks ago.  A

23     response has been filed.  Again, so you know, I guess

24     we could potentially file a reply, but at some level,

25     it's fully briefed.  I mean, there are factual issues

1   and legal issues implicated by the motion.  We think

2   that the legal issues, obviously, will ultimately be

3   resolved in our favor and that the factual issues can

4   be relatively quickly resolved as well.

5          When we received the response, you know, my

6   initial reaction was potentially to ask for a hearing

7   in front of Your Honor so that those issues could be

8   promptly resolved.  It would not require much testimony

9   to do so, and we'd be happy to schedule a date to have

10  that motion heard, you know, as if it was in fact a

11  motion for preliminary relief before Your Honor.

12         You know, again, it would require some testimony

13  but not much.  It requires one -- it appears really

14  only one central legal issue of whether or not the

15  funds at issue are subject to the restructuring and

16  support agreement or not.  We think that, that also can

17  be resolved in fairly short order.  And I admit, it

18  will also have to be resolved in connection with the

19  motion to dismiss.

20         But at the same time, you know, what we're

21  really worried about is the uncertainty that seems to

22  be attendant to these funds.  I mean, on one hand, the

23  Defendants, or at least GDB, in their papers and all of

24  the Defendants are essentially saying, Siemens, you

25  know, you've got nothing to worry about, those funds

1   will be there when this all gets worked out.  If you're

2   right, maybe you'll have access to them.

3        What we suggested to counsel was, Well, why not

4   just put that in an order, because that would really

5   resolve the motion.  I mean, my first choice would be

6   that the funds be paid into the Court, and I think that

7   that's what would normally happen certainly in a

8   Bankruptcy Court, or could happen in a bankruptcy

9   situation, which is really what this is closest to.

10        But if not, you know, why, if they say in the

11  papers there's no worry, the funds aren't going

12  anywhere, can't that just be embodied in an order that

13  says as much?  I mean, and my concern, frankly, is the

14  witness may have said that, but it's a little

15  concerning that, you know, the parties aren't saying

16  that.  I mean, the witness also at some level said,

17  This is an escrow account, and we're still getting, you

18  know, the sense, and I think later today we'll know for

19  sure, that they're going to argue it's not an escrow

20  account.

21        So, I mean, why not resolve that motion with an

22  order -- if there's not going to be an order directing

23  the funds to be paid into the Court, then it can be

24  resolved with an order saying that the funds will be

25  maintained and kept in place pending the resolution of

1    the case.  And if neither of those things are

2    agreeable, and as of last week, they weren't, then we

3    would like a hearing to get those -- to get our claim

4    to essentially those rights resolved.

5          THE COURT:  Okay.  Well, I guess I do want to

6    hear from all of the respondents, and my critical issue

7    here, obviously, is whether or not it's agreed, I think

8    it's agreed, but I want to confirm it, that this issue

9    would be resolved in connection with the Title VI, with

10    the Court's approval of the Title VI.  Do you see it as

11    an issue that would come up there?  I know from the

12    respondents -- I know that you feel it's separate.

13          MR. SOVEN:  Right.

14          THE COURT:  And I'll let you address that in a

15    minute.

16          MR. SOVEN:  Okay.

17          THE COURT:  But I want to know from the

18    respondents if they think it would come up in a

19    Title VI before Judge Swain would resolve -- would be

20    asked to approve it, and sort of in what forum does it

21    come up?  Does it come up with whether or not this

22    account is a qualifying bond?  I'm not quite sure where

23    it comes up, but --

24          MR. SOVEN:  Yeah.  Well --

25          THE COURT:  -- let me hear from them first.

1          MR. SOVEN:  Do you want to hear from them first?

2          THE COURT:  Yes.  You want to address that?

3          MR. SOVEN:  I mean -- look, I mean, their

4     response that was filed a couple of weeks ago, the key

5     paragraph is Paragraph 20.  And in Paragraph 20, they

6     say that this escrow account should be considered a

7     loan -- right? -- a loan, which is one of the things

8     that's considered a bond in PROMESA, which would

9     subject the account to the RSA -- to the Title VI

10    proceeding.

11          You know, we disagree, I mean, because on one

12    hand they also say, you know, that HTA is the owner of

13    this account; right?  Now, we claim, obviously, that

14    we're now entitled to the funds in the account.  But,

15    you know, they say in the papers as well that HTA owns

16    the account, and that's why, you know, this morning we

17    were asked if would dismiss HTA.  Well, no.  I mean, we

18    want declaratory relief as to an account that's owned

19    by HTA -- right? -- and so HTA, you know, is a

20    necessary party to the case.

21          But, you know, so the fundamental issue of

22    whether or not this is a loan, which, again, to not

23    belabor the merits, you know, if we have the

24    overwhelmingly stronger position on that one question,

25    you know, that issue can and should be decided in

1   connection with either this motion or the motion to

2   dismiss that will be filed later today -- or later --

3        THE COURT:  Why not as part of the Title --

4   we're dealing with a short timeframe; right?  We have

5   the RS -- the money is identified in the RSA, as I

6   understand it; right?  So I think the respondents

7   expect that this would be resolved before the RSA date

8   of June 28th?

9        MR. SOVEN:  Well, I -- I mean, from what -- I'll

10  let them speak to it.  But, you know, from -- my

11  understanding is the RSA has received preliminary

12  approval sufficient to prepare to submit it to the

13  Court, but no notices have been sent out.  I mean,

14  Siemens was never contacted in any respect during the

15  process of which a plan was negotiated.  But putting

16  that aside, you know, there's no timeframe, from what I

17  can tell, for notices being distributed, for voting,

18  for submission to the Court to approval.

19        And if you really look at the statute itself --

20  you know, they say, We've got claims and rights in

21  front of Judge Swain in connection with the Title VI

22  proceeding -- it's not actually that clear -- right? --

23  that there is this statutory vehicle, in my view, for

24  us to raise these issues.

25        And so, again, we think the preliminary relief

1   we're asking for is not much, but if that can't be

2   granted and a schedule for the motion to dismiss is set

3   down by Your Honor, you know, you or Judge Swain can

4   decide, No, they're wrong, it's not subject to the RSA,

5   you know, in connection with this complaint and, you

6   know, where there's a clear procedure, you know, in

7   place.  Obviously, the time-warrant procedure,

8   complaint, motion to dismiss, answer, they raise a

9   legal issue, if they're wrong, the case goes forward;

10  if they're right, then we're stuck in Title VI.

11          THE COURT:  But you also have a different

12  problem in this case as well as to who the parties are;

13  right?  I mean, one of their contentions is that GDB is

14  not here.

15          MR. SOVEN:  GDB is here.  I mean, who is -- I

16  mean, the primary claim in connection with the

17  complaint is one for declaratory relief; right?  So,

18  obviously, we don't want to leave out somebody --

19  right? -- in connection with asking for a declaration

20  that these funds belong to us; right?  So GDB is the

21  bank where the funds were placed.  HTA is the owner of

22  the account, at least in name, if not the proceeds in

23  it.  The Oversight Board is the representative of HTA;

24  right?  So I don't think that, you know, the claim is

25  just as, if not more, you know, adverse to HTA as it is

1    to GDB.

2          I mean, GDB is named -- if this was an ordinary

3    bankruptcy and HTA was the debtor in bankruptcy,

4    which it is, and HTA put money at a bank, Citizens,

5    Wells Fargo, whatever, and the creditor wanted those

6    assets, you know, there would be no question that they

7    would name the bank as at least a nominal party in

8    order to have an order, you know, ultimately if proved

9    successful, that controlled, that controlled anybody's

10   potential interests.

11         Here it's a little bit different because you've

12   got one entity, HTA, in a Title III proceeding and

13   another entity, GDB, in this Title VI proceeding, but

14   you know, they're saying, You belong over there, we're

15   saying we belong over here.  And that issue, you know,

16   is essentially teed up through this motion to dismiss

17   and the motion to try to secure the funds.

18         THE COURT:  But even if HTA agreed with you and

19   said the money's supposed to be in escrow, that doesn't

20   end your issue, does it?

21         MR. SOVEN:  Well, only if they're right that it

22   belongs in Title VI, only if they're right that it's a

23   loan; right?  If HTA agrees, Yes, it's an escrow

24   account, Yes, the requirements for payment have been

25   fulfilled, then the only issue left, frankly, is:  Does

1    it belong in the RSA process or not?

2            And, you know, and, again, I don't want to keep

3    repeating myself, but that issue seems to be teed up

4    for a decision here.  And I don't see anything that

5    says, Well, that has to be decided in some other type

6    of proceeding, which is very vaguely defined.  You

7    know, the idea of, Well, you've got a right to stand up

8    and say, No, no, no, Siemens objects to the whole

9    thing; right?

10           I mean, frankly, this is a cleaner, more

11   efficient and, frankly, likely to be faster way of

12   getting it decided because all of the deadlines in the

13   past for the RSA have had to be extended.  There's no

14   telling when the notice and voting is going to take

15   place.  There's no telling when anything is going to be

16   submitted to the Court.  You know, I haven't seen the

17   motion that's been filed yet, but I expect it's going

18   to look a lot like the response to the prior motion we

19   filed, and that to me doesn't say that this Court,

20   meaning, I'll call it the Title III Court -- right? --

21   can't hear that motion to dismiss.

22           THE COURT:  Okay.  Thank you.

23           Who wants to respond?

24           MS. TRELLES:  Your Honor, we'll take it for GDB.

25   Good afternoon again.  Maria Trelles.

1          So I'll go briefly and just agree with counsel

2     that we will be filing the motion to dismiss today.

3     That will go to the merits of Siemens' complaint

4     against GDB, and I understand co-Defendants are filing

5     motions to dismiss as well also geared at the merits.

6          THE COURT:  Meaning whether or not this is an

7     escrow account or --

8          MS. TRELLES:  Well, both whether or not this an

9     escrow account, as Siemens understands it, and whether

10    this is the proper venue, forum, and I don't mean venue

11    in the sense of the Federal statute but, rather, the

12    proper procedure to address this claim, which is what

13    Your Honor was going to before with regards the

14    Title VI.

15         THE COURT:  So you're going to address whether

16    this is appropriate in the Title III or the Title VI --

17         MS. TRELLES:  Yes.

18         THE COURT:  -- as well as whether or not -- is

19    it the same issue, though, as to whether or not it

20    becomes a bond under the RSA?  I mean, is that the

21    merits issue?

22         MS. TRELLES:  Well, to the extent -- this is a

23    deposit account.  As a deposit account, it is a bond

24    for the purposes of the RSA; and, therefore, it belongs

25    within the RSA and the Title VI process.

1       THE COURT:  And that's being raised in your

2   motion to dismiss?

3       MS. TRELLES:  Yes, Your Honor.

4       THE COURT:  All right.  So I will hear from you,

5   but also address for me whether or not you think, if

6   it's not appropriate here, is it appropriate in the

7   Title VI?  And how does that -- does that issue get

8   addressed head on in the Title VI?

9       MS. TRELLES:  Well, Your Honor, again, there is

10  a deposit account here.  There's no question that

11  there's a deposit account here.  Accounting-wise, there

12  was a deposit account for $13 million.  The deposit

13  account, pursuant to Puerto Rico law, and that's

14  well-established, they're treated as loans and

15  therefore are -- for purposes of PROMESA, they're bond

16  claims.

17      THE COURT:  Well, that's not so clear, though.

18  I mean, that's the issue -- isn't it? -- that Siemens

19  says you said it's an escrow account, not that it's a

20  deposit account and that, as an escrow account, even

21  under Puerto Rico law, if there's a sufficient writing

22  to establish this escrow account, it would not be a

23  bond.

24      MS. TRELLES:  So let's take it -- there are two

25  issues there.  One -- the first issue which I meant to

1    say was clear was that deposit accounts are in the

2    nature of loans and, therefore, bond claims.

3         The second issue is whether this account is a

4    deposit account or what Siemens deems an escrow

5    account.

6         And the fact -- here there are key legal issues.

7    There is no definition in Puerto Rico law for an escrow

8    account, so there's no binding that definition that

9    says, An escrow looks this way in particular, and

10   certainly no definition in Puerto Rico law that says

11   that an escrow account must be separated from the

12   liquidity of the bank.  That's step one.

13        Step two, GDB is a Government entity, and I

14   think there's no question about that.  As a Government

15   entity, GDB is subject to particular legal requirements

16   in terms of contracts, and that is very

17   well-established Puerto Rico law.  Whereas, you could

18   have, theoretically, let's -- I'm assuming for

19   argument's sake that you can have, under Puerto Rico

20   law, escrow agreements that are not set down in

21   writing.  You cannot have those with a Government

22   entity.

23        THE COURT:  Well, but there are lots of

24   arguments on the merits.  I mean, they're going to

25   argue, Take a look at this email, take a look at this

1    picture, take a look at all this, this is all writings

2    that you sent that are sufficient.

3        You're going to turn around and say, It's

4    supposed to look like a contract, and it's supposed to

5    have my name on the bottom, and it's not sufficient.

6        My question to you, though, is:  Is that

7    issue -- it's an issue; it is not because you say it's

8    so that it's so.  So the question is:  Does that issue

9    get decided in the context of the motion to dismiss in

10   this case, or, in your opinion, does it get decided in

11   the Title VI?

12       MS. TRELLES:  Your Honor, we are arguing the

13   motion to dismiss, and I'm opening a parentheses here.

14   It's not because I say so; there is Puerto Rico law as

15   to the form a contract with the Government must take.

16   So it's not a matter of GDB says here or there; there's

17   case law on this.  But --

18       THE COURT:  Well, there's also case law in the

19   First Circuit that says an escrow is not part of the

20   bank's assets.  So, I mean, it's -- you will both find

21   cases to file a brief on that, of that I have no doubt,

22   and I'm not ruling on that now.  I'm trying to figure

23   out the best forum to decide it.

24       MS. TRELLES:  The best forum is the Title VI,

25   and I'll tell you why, Your Honor.  Ultimately, this

1    claim is for 13 million against GDB.  What Siemens

2    wants is for GDB to pay out $13 million from the money

3    it has right now, which is all co-mingled, and they

4    want GDB to pay out those $13 million.

5         Now, that implicates the RSA.  GDB has a finite

6    amount of funds.  They're all -- they have all been

7    taken into account in the RSA, including those

8    $13 million.  It needs to pay off all of its creditors,

9    not only -- assuming Siemens prevails on the merits,

10   that they have a -- that they actually should be paid

11   $13 million and that they should be paid from GDB,

12   let's assume that for a moment, that means that they

13   have a $13 million claim against GDB, as do, you know,

14   dozens of other creditors against GDB, that they have

15   claims of 13, 20, 50, 100 or more million dollars.  And

16   so we -- there's a finite amount of funds, and those --

17   all of those claims need to be seen together in order

18   for the distribution of the moneys that there are to be

19   paid out to all of the creditors.

20        THE COURT:  I mean, I think the argument's a

21   little different in that what Siemens is saying, I have

22   no idea if they're right or not, but they're saying

23   this isn't your money to be handing out, so when you

24   counted your assets as to what gets distributed, this

25   13 million should not have been on your spreadsheet.

1    That's their claim, that I think counsel's right that

2    the procedure for the Title VI approval is not that

3    detailed.

4         So my question to you is whether you agree that,

5    before Judge Swain would approve the Title VI

6    qualifying modification, would she -- is this the type

7    of issue -- is this an issue that she would have teed

8    up to decide in connection with whether or not to

9    approve the qualifying modification?

10        MS. TRELLES:  Your Honor, it's certainly an

11   issue that Siemens can raise in the Title VI

12   proceeding.  I agree that the Title VI proceeding is

13   not particularly detailed in the statute.  There's no

14   question the funds, whether rightly or wrongly, have

15   been accounted for in the RSA.  Again, let's assume

16   that they were wrongly accounted for in the RSA.  They

17   were accounted for in the RSA.

18        And so all of the other GDB creditors and GDB

19   have a -- are counting with those 13 million with

20   everything else for the RSA and the ultimate

21   distribution.  So if those moneys -- if Siemens' claim

22   is that those moneys shouldn't be there and so we

23   should subtract 13 million, that is something that

24   should be decided within the Title VI process so that

25   all of the other GDB creditors are aware and we can

```
 1      make arrangements or have the RSA pull through or not

 2      on the basis of the same information for all creditors.

 3              THE COURT:  Okay.  And what is the schedule now?

 4              MS. TRELLES:  Right now, there's a June 28th

 5      deadline for the Court, for the qualifying modification

 6      to be approved, and there's a June deadline for

 7      solicitation.  So the solicitation hasn't concluded

 8      yet.

 9              THE COURT:  And when would you expect to submit

10      it to the Court?

11              MS. TRELLES:  The Title VI proceed -- our

12      qualifying modification?  It has to be before

13      June 28th, Your Honor, but I will get you the date, the

14      expected date at this point.  But it has to be no later

15      than June 28th.

16              THE COURT:  Well, by -- okay.  The question -- I

17      thought it was by June 28th the Court had to approve

18      it, which I'm assuming that -- Judge Swain is

19      superwoman, I do agree, but I do think she needs some

20      time.  Do you have a schedule in mind?

21              MS. TRELLES:  I can verify with the RSA.  Just a

22      second, Your Honor.  I don't have that precise deadline

23      written here.

24              THE COURT:  Okay, thank you.

25              MS. TRELLES:  So do you mind if I --
```

1          THE COURT:  No, I won't hold you to it yet.

2          MS. TRELLES:  Okay.

3          THE COURT:  But it is something that we will

4     need to know in one form or another.

5          All right.  So, as I understand it, what you're

6     saying is that you believe that the Title VI would be a

7     forum to discuss basically the same issues as are

8     raised in your motion to dismiss here, except that

9     in -- the Title VI you think is the appropriate

10    jurisdiction for it, as opposed to the Title III pro --

11         MS. TRELLES:  Yes, Your Honor.

12         THE COURT:  Okay, thank you.

13         MS. TRELLES:  Thank you.

14         MS. DALE:  Good afternoon, Judge.

15         On behalf of the Oversight Board and HTA, we

16    will be filing motions to dismiss later today.

17         The complaint -- let me take one at a time.

18    With respect to the Oversight Board, the complaint

19    makes no allegations against the Oversight Board, any

20    purported misconduct by the Oversight Board or any

21    right that Siemens has against the Oversight Board.  We

22    think that's a straight motion to dismiss on behalf of

23    the Oversight Board, as itself.

24         The Oversight Board is also appearing in the

25    Title III as the representative of HTA.  We also

1    believe that there is a good motion to dismiss

2    against -- as to HTA, that it fails to state a claim.

3         The $13 million is called the completion payment

4    under the settlement agreement.  There's no doubt that,

5    that money is at GDB, and the complaint doesn't make

6    any allegations that HTA has breached the settlement

7    agreement or the second amendment to the settlement

8    agreement.

9         I think, getting to your question that you've

10   been asking the parties about, Where is the right forum

11   for this, so the Oversight Board is not going to take a

12   position in its motion to dismiss as to whether a real

13   escrow account, a true, valid escrow account was formed

14   or not.  If the Court --

15        THE COURT:  When you say Oversight Board --

16        MS. DALE:  On behalf of HTA.  Sorry.  As the

17   representative of HTA.

18        THE COURT:  Okay.

19        MS. DALE:  We lay this out in the motion, but

20   our argument is:  If there is not a valid escrow

21   agreement, then the proper forum is the Title VI for

22   GDB.  If the Court were to find that there was or

23   should have been -- or the money is -- should have been

24   in an escrow or is in an escrow account, we think in

25   that scenario, then, that there's a claim that Siemens

1    has against HTA in the Title III for which it has filed

2    a proof of claim already, and we think that's the

3    proper forum were the Court to conclude that there had

4    been or was a true escrow formed.

5         So that's our position.  It really does come

6    down to the legal issue of whether an escrow was formed

7    or not.  If there isn't a valid escrow, we believe this

8    is a Title VI issue for resolution.  And if there

9    are -- were to be found to be a real escrow, we think

10   the proper method here is for Siemens to file a proof

11   of claim in HTA's Title III, which it has done, and to

12   be resolved along with the other claims.

13        THE COURT:  All right.  But that assumes that

14   HTA is the owner of the funds, and --

15        MS. DALE:  I'm not sure it does.

16        THE COURT:  I'm chasing my tail here, as we all

17   are, I think, but I guess -- let me ask you this:

18   Would you object if it came up in the Title VI, having

19   the issue resolved there without predisposing whether

20   or not it was a valid escrow account or not a valid

21   escrow account?

22        MS. DALE:  I don't think we would object to

23   that.

24        THE COURT:  I'm just trying to find it --

25        MS. DALE:  Yeah.

1          THE COURT:  -- in the right forum and not spend

2     a whole lot of time on procedural problems that take up

3     a lot of research time for something that I think needs

4     to be decided promptly, on the same schedule sort of

5     regardless of the forum.  So I may be -- this may be

6     one of those "hope springs eternal," but I'm not giving

7     up my options yet.

8          MS. DALE:  Thank you.

9          THE COURT:  All right.  So you wouldn't object

10    either way?

11         MR. MARINI:  Good afternoon, Your Honor.

12    Luis Marini for AAFAF.

13         Your Honor, I'll be brief.  AAFAF joined GDB's

14    opposition to the motion to segregate funds, and we

15    intend as well to join GDB's motion to dismiss today.

16    We adopt their legal arguments.  We also understand

17    that the complaint, at least as to AAFAF, doesn't set

18    forth any specific allegations that give rise to a

19    basis for relief.  We set that out in our motion to

20    dismiss today.  But I don't want to belabor the point.

21    We adopt GDB's position, and AAFAF's joined their

22    opposition to the motion and is going to join their

23    motion to dismiss.

24         THE COURT:  Okay.  And let me ask you the same

25    question, though:  Would you have an objection to

1    having this issue on the merits, you know, whether it's

2    an escrow account, as Siemens understands it -- I guess

3    that's the magic phrase that everybody's using -- or

4    whether it's a bond, do you have any objection to

5    having that decided in the Title -- before Judge Swain

6    is asked to approve the qualifying modification?

7           MR. MARINI:  No, Your Honor, no objection.

8           THE COURT:  All right.  Anybody else want to be

9    heard?

10          Do you want to respond?

11          MR. SOVEN:  One more moment?

12          THE COURT:  Yeah.

13          MR. SOVEN:  I'm going to defer the merits

14   arguments.  I mean, we disagree that it's a bond or a

15   loan, but that's -- I don't think that's what

16   Your Honor wants to hear about right now.

17          THE COURT:  I think your opposition to that is

18   clear.

19          MR. SOVEN:  Okay.  I didn't hear from counsel --

20   there's a June 28 date, which seems to be written down

21   but may only be aspirational, given the number of

22   extensions that have been given already.  I didn't hear

23   a date for which notice of whether or not we wish to

24   participate or object to the RSA would be sent to

25   Siemens.  I didn't hear a date for when what pool we're

1       even in will be identified.

2              There has been no communications to date between

3       anybody on behalf of GDB or any of the other parties

4       with respect to its rights, to the extent it even

5       belongs in the RSA, with extent to its rights under the

6       RSA.  No creditor -- other creditor is here; right?  No

7       creditor -- no other party claims that it has an escrow

8       account like this one.  I mean, we've been completely

9       left in the dark.

10             Now, we may say, Well, it's only $13, we're on

11      the smaller end of the scale in terms of this claim,

12      but the fact is, is we have received nothing about this

13      so-called process.  And if you look at -- I mean, I

14      tried to do it last week --

15             THE COURT:  Is that because HTA is the

16      account-holder?

17             MR. SOVEN:  That's a better question for them.

18      We have received no -- the Siemens, the client, Reed

19      Smith, the law firm, has been in no way involved, asked

20      to be involved, asked for its views, asked to vote on

21      any aspect of the RSA.

22             If you look at the process, which is in 48 USC,

23      2231(m), which is the section they cite in the brief, I

24      would say it's vague at best as to what Siemens's

25      rights would be in that process.  I mean, there's a

1    process -- you know, they say, Once the process

2    concludes, and, again, in the process, it's tough to

3    find Siemens's -- a role for Siemens, and assuming the

4    necessary positive votes have been received from the

5    holders of the outstanding bonds in each pool and that

6    the FOMB certifies the matters set forth in the

7    statute, the matter will be submitted to Judge Swain

8    for approval, I mean, so -- it's not even clear -- what

9    do I tell the client as to when we have to file

10   something?

11           THE COURT:  I'll tell you that.

12           MR. SOVEN:  You'll tell me that, but when is --

13   but when -- and there is no guarantee at all that this

14   June 28th deadline is going to even be met.  So, I

15   mean, if you are, and I think correctly, interested in

16   getting the "is Siemens in the RSA or is not in the

17   RSA" decided, I mean, what I laid out I think was a

18   guarantee, you know, that, that issue can be decided in

19   the next 30 to 60 days.  And under the process that I

20   propose, I know that Siemens's argument will be heard

21   with the amount of, you know, with all due respect to

22   the statute, with the amount of due process that

23   Siemens is entitled to.

24           I don't know what to tell the client and what

25   guarantees I can provide to the client about when

1    Siemens's arguments will be heard under this process.

2    And look, I mean, counsel was -- you know, counsel may

3    not know, but if this is all going to happen on

4    June 28th and it's May 29th today, when does the

5    notice -- I mean, when do I get notice; right?  I mean,

6    she may not know, but she didn't say certainly when I

7    was going to get -- when Siemens was going to get

8    notice, how this voting was going to be -- how it was

9    going to work.

10        I mean, and frankly, it's a bit of a rubber

11   stamp because the parties -- other creditors or, you

12   know, the other people with much larger obligations as

13   to GDB have already been brought onboard, so to

14   speak -- right? -- into the qualifying modification

15   that is now going to be submitted for a vote; whereas,

16   Siemens has not certainly been involved in that process

17   at all, and there's nothing very clear in the statute,

18   and counsel didn't point out anything very clear in the

19   statute that would say when we really do have a right

20   to be heard.

21        And, you know, if they're going to make this

22   argument, Well, is it an escrow account, or is it not

23   an escrow account, I mean, even the witness said it was

24   an escrow account, well, that potentially raises a

25   factual issue.  There's certainly no vehicle in

1      Title VI to have that heard; right?

2             And so, I mean, I think, frankly, based on the

3      record that's already been created, there's no doubt

4      that this was not a loan.  I mean, the statute doesn't

5      include deposit accounts as a bond.  I mean, it said

6      that it did, but it doesn't.  Deposit accounts aren't

7      mentioned.  You know, it says loans, letters of credit,

8      bonds.  There's nothing about deposit accounts.

9             But anyway, I don't want to repeat myself too

10     many times, but I do think that if, in the ordinary

11     course, they file a motion to dismiss today, I file a

12     response in 20 days, they file a reply brief in ten

13     days, whether it's you or Judge Swain decides that

14     motion during the ordinary course, then by mid-summer,

15     there's at least a preliminary determination as to

16     whether or not these funds are in the RSA or not.

17            THE COURT:  But that schedule doesn't comport

18     with the RSA schedule, as I understand.  So that's a

19     nice schedule.  I would love to give you all

20     extensions, and we can do this all summer, and we can

21     be nice and relaxed, but you have a fundamental

22     issue -- right? -- on whether or not these -- maybe

23     I'm wrong, but I'm assuming that the RSA is sort

24     of dependent on -- well, it includes this $13 million,

25     so that if the $13 million comes out of the RSA, there

1       has to be recalculations and I assume revoting to some

2       extent, but I'm not giving any opinion on that.  I

3       don't know.

4               MR. SOVEN:  Yeah.

5               THE COURT:  But I think it's agreed that the

6       13 million is included in the RSA; correct?

7               MS. TRELLES:  Yes, Your Honor.

8               MR. SOVEN:  Well, no, no.  I mean --

9               THE COURT:  Is it listed?  It's represented as

10      being included among GDB's assets?

11              MS. TRELLES:  Yes.

12              MR. SOVEN:  It is represented amongst being --

13              THE COURT:  Everybody agrees --

14              MR. SOVEN:  Right.

15              THE COURT:  -- it's been represented as that.

16      So it seems to me -- maybe I'm rushing something that

17      doesn't need to be rushed, but it seems to me that the

18      issue of whether or not this 13 million is

19      appropriately listed as GDB assets in the RSA has to be

20      decided before Judge Swain is asked to approve the

21      qualifying modification.

22              Does everybody agree with that, or am I --

23      people are nodding at me.

24              MR. SOVEN:  Well, I mean, my take --

25              THE COURT:  Unless I issued an order that says

1   you can't disburse it -- somebody issues an order that

2   says you can't disburse it.  Now, we all agree that,

3   until the qualifying modification's approved, money's

4   not going anywhere, so everybody agrees with that.  And

5   everybody's nod -- for the record, everyone is nodding

6   at me.

7           So, in other words, if Judge Swain was asked to

8   approve the qualifying modification, it's premised on

9   that $13 million being included as an asset of the GDB.

10  So at some point -- you don't think so?

11          MS. SPRINGER:  No, not necessarily, Your Honor.

12          MR. SOVEN:  The audit.  Can I pass the baton?

13          THE COURT:  Yes.  And just identify yourself so

14  everybody knows who's talking.

15          MS. SPRINGER:  Claudia Springer, partner of

16  Mr. Soven, counsel for Siemens, from Reed Smith.

17          No.  I look at the RSA, Your Honor, very much

18  like a bankruptcy plan, liquidating plan.  And in a

19  liquidating plan in a bankruptcy proceeding, oftentimes

20  it is unclear, upon confirmation, how much money will

21  be available for the distribution to creditors of the

22  estate.

23          It is, obviously, a requirement under the

24  Bankruptcy Code for there to be sufficient funds or a

25  sufficient means to obtain funds to pay certain types

1     of claims, administrative claims, priority claims.  But

2     as to general unsecured claims, it is often guesswork

3     on the confirmation of a plan as to how much is going

4     to be available for the distribution to creditors.

5          Now, in this particular situation, there is

6     built into the RSA, as there is in most plans,

7     estimates as to what is probably going to be paid out

8     to holders of claims over the course of I believe it's

9     something like 20 years.  It's a long period of time.

10    I don't expect to be here at the end date, at least not

11    practicing.  But the bottom line is that it is

12    extremely, at this point, unclear under the RSA as to

13    what is going to ultimately be available because many

14    of the funds that are supposedly going to be funding

15    this distribution, the ultimate distribution that's

16    going to be made to the holder of bonds is coming from

17    sales of real estate and other types of things,

18    that it's unknown at this juncture, at this time, what

19    that's going to result in.

20         Yes, there has been opinions about it, there are

21    projections that are attached to the RSA, but there are

22    in every bankruptcy case as well.  And as we've all

23    seen, people who've practiced in that bankruptcy field

24    for many, many years, these are just projections,

25    that's all they are, and oftentimes they are woefully

1    wrong or accurate.  But there's -- it's impossible at

2    this point to say what that's going to be.

3         And I don't believe that because, you know, they

4    put that on a schedule without our consent, without

5    asking us, without even entertaining our position,

6    which they've known for many months that, that is an

7    escrow account, the funds belong to us, and we are

8    prepared to show that under the law, that they had any

9    right to take the position that those funds were

10   available to distribute to other creditors in this

11   case.

12        And I note the interesting part about this whole

13   dispute is that, even though our papers were filed and

14   everyone's had a chance to view them, and as Your Honor

15   is aware, nobody's been shy in this case about filing

16   pleadings and stating their position, no other creditor

17   in this case that is going to participate in obtaining

18   funds from GDB, as far as I can see, has filed anything

19   to say, Hey, wait a minute, Siemens.  You can't get

20   this money back because that -- some fraction of that

21   money belongs to me.  Nobody has done that.

22   Interesting.  They filed numerous other pleadings, all

23   of these bondholders have filed pleading upon pleading

24   upon pleading, but nobody has taken that position in

25   this case.

1          THE COURT:  So, from your point of view, if the

2     distribution takes so long, why do you need an order

3     that says that these funds can't be distributed?  Like,

4     what --

5          MS. SPRINGER:  Why do I need an order to protect

6     the funds?

7          THE COURT:  Yes.

8          MS. SPRINGER:  Because I don't want them to say

9     at some point that my position, vis-a-vis these funds

10    being in escrow, is now moot because they've taken

11    money that belongs to me and they've distributed it to

12    other people, to other holders.

13         My view is that's not your money to distribute;

14    that's my client's money that they were told again and

15    again was being set aside for them and for them only.

16    And even at Mr. Santiago's deposition, on numerous

17    occasions did he say that money was earmarked for

18    Siemens.

19         THE COURT:  So what -- I just want to make sure

20    I understand.  So you're saying that the issue needs to

21    be decided in some forum --

22         MS. SPRINGER:  Yes.

23         THE COURT:  -- as to whether or not GDB has the

24    right to allocate this money at all, so whether it's

25    part of the RSA, that issue has to be decided but that

1   the Court has authority to issue an injunction on the

2   distribution of the $13 million, which, in your view,

3   would not disrupt the approval of the qualifying

4   modification?

5        MS. SPRINGER:  That's correct.  Thank you.

6        THE COURT:  Can I hear from GDB on that?

7        MS. SOLER:  Good morning, Your Honor.

8   Giselle Lopez on behalf of GDB.

9        Just to address the comments by Ms. Springer

10  regarding the Title VI process, I think what she

11  ultimately was saying to the Court is precisely that

12  this needs to be addressed in the Title VI process

13  because she's talking about the lack of notice to a

14  creditor, and she's talking about certainty of a plan,

15  and those were the precise issues that would be decided

16  before Judge Swain when the Title VI qualifying

17  modification gets submitted for approval.

18       In terms of the disruption of the approval of

19  the RSA, I think it's clear from what Your Honor has

20  understood, and that's the way we understand it as

21  well, that the funds are in fact considered in the RSA.

22  So any disruption, any order that would require GDB to

23  set out funds that are already co-mingled with the

24  funds of the RSA would certainly disrupt the RSA and

25  disrupt the Title VI process ultimately.

1          THE COURT:  I don't want to be quoted on that;

2     okay?  I don't know the answer.

3          MS. SOLER:  Okay.

4          THE COURT:  I think counsel raised a very good

5     point on whether or not it actually would disrupt it,

6     so I don't know.

7          MS. SOLER:  Okay, sure.  But our position is

8     that --

9          THE COURT:  Your position is that --

10         MS. SOLER:  Right, for sure.

11         THE COURT:  -- it would disrupt it.

12         MS. SOLER:  Right.  That's our position.

13         THE COURT:  Is there an easy answer to Siemens's

14    concerns that it never got notice in the RSA?

15         MS. SOLER:  Well, there's going to be

16    solicitation of votes to creditors, and that date is I

17    believe June 2nd, so there is a date certain for that.

18    And I don't have information at this point that that's

19    not going to be met, so what I know is that it will be

20    met.  I'm not saying that, that could not change, but

21    I'm saying that's the information I have at this point.

22    So --

23         THE COURT:  And so what's been circulated is to

24    the major creditors; is that a -- you have enough

25    preliminary votes to go forward, to have a general

```
 1    vote?  I haven't been following this.  It's not been on

 2    my agenda.  I'm just trying to figure out --

 3              MS. SOLER:  That's correct.   That's correct.

 4    But still there's going to be a solicitation process.

 5              THE COURT:  And you expect --

 6              MS. SOLER:  I'm sorry.  June 8th is the date

 7    for --

 8              THE COURT:  All right.  I have June 8th as

 9    the --

10              MS. SOLER:  Right.

11              THE COURT:  -- closing date in your papers.

12    Okay.  That's the same date?  We're talking about the

13    same date?

14              MS. SOLER:  That's the same date.  This hasn't

15    changed.

16              THE COURT:  All right.  And that you expect to

17    submit it to the Court for final approval, so that the

18    Court's approval date would be June 28th?

19              MS. SOLER:  June 28th, correct.

20              THE COURT:  So sometime in advance of that so

21    that the Court would have time to address --

22              MS. SOLER:  Correct.

23              THE COURT:  -- issues.

24              Okay.  Thank you.

25              Anybody else?  I'll tell you what I'm thinking,
```

1    and then you can all tell me why I'm thinking wrong.

2    All right.  I'm thinking that everybody has agreed that

3    this issue should be decided before there's any

4    distribution, let me put it that way.

5         I think that, for Judge Swain to have time, it

6    needs to -- it's not clear to me whether it gets

7    decided in this setting or the Title VI, but as I'm

8    hearing it, there is no objection by any of the

9    respondents to have the issue of whether or not these

10   funds constitute a bond or escrow account, as defined

11   by Siemens, decided in the Title VI; is that correct?

12        MS. DALE:  That's correct.

13        MS. TRELLES:  Yes, Your Honor.

14        THE COURT:  Yes, everybody's agreeing with me on

15   that.

16        MR. MARINI:  Correct.

17        THE COURT:  What I would like to do is set up a

18   schedule.  Either way, I think it needs to be moved

19   forward fast.  I don't think it's going to be referred

20   here on the motion to dismiss, just because of the

21   timing.  I think I would have to do it as a report and

22   recommendation, and I think that takes up time, unless

23   you all consent to having me do it, but I don't know

24   where that fits in, in the PROMESA statute.

25        So what I would like is for everybody to submit

1    a joint status report sometime before the Omni, though,

2    so that Judge Swain can address it at the Omni, which

3    would have a schedule -- first you need to identify

4    what other discovery, if anything, you need, what the

5    format of the hearing is that you see. Is it

6    witnesses? Is it, you know, by deposition? You know,

7    are there really factual issues that we're disputing,

8    or do we have a sort of a record?

9        The briefing schedule, I think it makes sense to

10    consolidate it. I don't know if it's best to do it in

11    the form of the response to the motion to dismiss or

12    not, but the schedule would be -- she needs to have at

13    least ten days but at least by the 15th to have

14    everything fully briefed. By June 15th, everything

15    needs to be fully briefed, it seems to me, if you're

16    going to have this decided by the 28th.

17        It may be easiest to do it on the merits of the

18    motion -- like, I haven't seen the motion to dismiss,

19    so if we all agree that it can be done in the context

20    of the Title VI, then maybe we don't have to spend time

21    on the jurisdictional issue and we just deal with the

22    issue of what kind of account -- you know, what's the

23    accounting for this money. But that's more Siemens's

24    issue at this point on whether or not you want to have

25    that fight.

1          MR. SOVEN:  Your Honor, just so I -- is what --

2     I just need to better understand, I think, what you're

3     proposing or suggesting.  I mean, would the idea be

4     that, like, a -- the outstanding discovery issues would

5     be -- I heard two things.  I heard that all the

6     briefing would be done on June 15th, which, you know,

7     the issues are fairly narrow, and I think that's

8     doable.

9          But I guess I wasn't sure how -- if

10    Judge Swain -- if it was possible that Judge Swain

11    needed to hold a hearing on this issue, I mean, I

12    obviously can't speak for her calendar, you know,

13    whether you're thinking, well, that could potentially

14    be done before the, quote/unquote, deadline for

15    approval of the qualifying modification.  Is that

16    what --

17          THE COURT:  So, since I'm making her life

18    miserable, sure.

19          MS. SOVEN:  Right.

20          THE COURT:  I think what I'd like to do is set

21    it up so that you have a proposed schedule assuming

22    that it's all resolved by the 15th, identifying what

23    discovery, if any, that you need and what form the

24    hearing would be before Judge Swain -- all right? --

25    but have a status report that sort of outlines that in

1       time for her to address it at the Omni.

2               Is everybody going to the Omni?  Are you going

3       to Puerto Rico?  Are you on now?

4               MR. SOVEN:  I may be -- right.  I'll call my

5       travel agent.

6               THE COURT:  I'm assuming that the respondents

7       will all be there in some form or another.

8               MR. SOVEN:  Do you want to speak to these

9       issues?  All right.

10              MS. DALE:  Your Honor --

11              THE COURT:  Go ahead.  I think I'm not being as

12      clear as I would like to be.

13              MS. DALE:  I'm sorry.  I just wondered if --

14      we're still planning to file our motion to dismiss

15      because that needs to happen in this forum.

16              THE COURT:  I'm assuming that's done.

17              MS. DALE:  It is done.

18              THE COURT:  So those should be filed today, and

19      we should -- then we're clearly discussing what the

20      issues are that are in dispute.

21              MS. DALE:  And then are you thinking that the

22      rest of that briefing that needs to be done by

23      June 15th is happening in the Title III, or are we

24      setting up a different briefing schedule for --

25              THE COURT:  So I think, if you're all agreeing

1      that it can go forward in the Title VI, that it's

2      easier to do it in that context.  But I realize that

3      Siemens hasn't seen your motion to dismiss yet, and I

4      recognize that -- I'm only saying that based on your

5      representations today, which I'm holding you to,

6      frankly, I'm holding everybody to the representation

7      that this issue is appropriately decided in the context

8      of the Title VI.  All right.

9           The reason I want Siemens to take a look at

10     this, or unless you tell me we can go forward just on a

11     Title VI for a briefing, is it would be nice if you

12     took a look at the motions to dismiss and you said to

13     the respondents, Look, I don't want to address the

14     jurisdictional issues, whether it's Title III or

15     Title VI; let's just agree that these are the issues

16     that are raised in your motion to dismiss that are

17     going to be decided in the context of the Title VI.

18          Does that make sense?

19          MR. SOVEN:  Sure.

20          THE COURT:  It always makes sense to me until I

21     read the transcript, and then I have absolutely no idea

22     what I said.

23          MR. SOVEN:  Look, I -- you know, in one of my

24     statements I, you know, was talking about due process,

25     and so the process that I think you're contemplating

1    sounds like due process, but I guess what I'd like

2    to -- I would like to be able to speak to Ms. Springer

3    and perhaps to the client before I say we're onboard

4    for having this decided in the context of the Title VI

5    proceeding.  But I understand what you're proposing, or

6    proposing for Judge Swain, and I respect it, but I

7    guess I need to maybe think about that and speak to

8    Ms. Springer and the client.

9              THE COURT:  Why don't I say let's make that an

10   item in the status report to be filed by June 4th;

11   okay?  There'll be a status report, a joint status

12   report, filed by June 4th that will address:  One,

13   whether Siemens agrees to have it in the Title VI.  I'm

14   assuming everybody else -- I'm binding everybody else

15   to agreeing.

16             MR. MUNGROVAN:  Can we just address that point,

17   Your Honor?

18             MS. DALE:  Your Honor, I apologize.  With

19   respect to HTA's position, HTA is not in the Title VI;

20   GDB is in the Title VI, so we would need to confer, I

21   think, and we could certainly do this quickly, with our

22   client before we can say HTA, Oversight Board,

23   everyone's good with this happening in the Title VI,

24   but I --

25             THE COURT:  Okay, fair enough.

1          MS. DALE:  Thank you.

2          THE COURT:  Let me just make it clear.  It's

3     going to be heard somewhere, and it's going to be heard

4     sooner rather than later, and it's going to be heard on

5     the merits somewhere; okay?  I'm not sure any of the

6     above of where it is and who that leaves standing as to

7     the party advocating which position, but I think it

8     needs to be decided on the merits somewhere.

9          MR. SOVEN:  We agree.

10         THE COURT:  All right.  So in the -- and I'd

11    like a status report that Judge Swain can address at

12    the Omni, and the Omni is June 6th in Puerto Rico, so

13    if you can file it by June 4th?  The status report

14    should have the appropriate form, you know, the

15    context; an agreement as to the issues to be decided; a

16    statement as to what form the hearing you envision to

17    be -- do you envision it as an evidentiary hearing, and

18    if so, who are the witnesses? -- do you need additional

19    discovery and, if so, what it is; and a briefing

20    schedule.  I think the easiest briefing schedule would

21    be to sort of take the motion to dismiss, as I'm

22    hearing it, and use that as the moving paper in

23    whatever form it is, but I leave it to you, but a

24    briefing schedule that would be completed by June 15th.

25         Now, I think that, if it's in the Title VI maybe

1    officially, it can't really be filed until the voting's

2    done, your moving paper, until you've actually got all

3    your votes to submit it, so maybe the briefing schedule

4    is more on the motion to dismiss side and that you

5    agree to then have those papers be used in the Title VI

6    or -- I'm not real clear on who all the parties are so

7    whether that actually lines up, but I think you need to

8    think about it; all right?  And I think it needs to be

9    completed so that Judge Swain has at least ten days to

10   figure out, if she needs a hearing, how to rule on it,

11   something like that.

12        Does that make sense?

13        MS. DALE:  Yes.

14        THE COURT:  Anybody got any questions or

15   comments?

16        MR. SOVEN:  I mean, I think Your Honor said the

17   money's not going anywhere, but is there anything --

18        THE COURT:  I'm not going to issue -- if I -- I

19   don't -- if I issue an order, I have to do it as a

20   report and recommendation.  Everything is done here.

21        As of now, it cannot be disbursed while the

22   RSA -- before the RSA is approved; okay?  So if there

23   is a -- and everybody's agreed to that.  I mean, I

24   don't think that's disputed at all; right?  GDB is

25   definitely standing up, and everybody else is nodding.

1              So we have until at least this issue being

2    presented to Judge Swain when it's not going anywhere;

3    okay?

4              MR. SOVEN:  All right.  Thank you.

5              THE COURT:  All right.  Is this going to be one

6    where we all roll our eyes when I go, and then we get

7    briefing on, What did I mean?  I hate those briefs.

8              MR. SOVEN:  I don't think so.

9              THE COURT:  Everybody okay?

10             MS. DALE:  Yeah.

11             MR. MUNGOVAN:  Yes, Your Honor.

12             THE COURT:  All right.  If you have any

13   questions about any of it, just let's do it on the

14   telephone conference or something, but the goal is by

15   June 4th to have this agenda on how this is going to

16   get teed up; okay?

17             Is there anything else on the status conference

18   that we need to address?  No?

19             Okay.  Thank you all.

20             MR. SOVEN:  All right.  Thank you very much,

21   Your Honor.

22             MS. DALE:  Thank you, Your Honor.

23             MR. MUNGOVAN:  Thank you, Your Honor.

24             MS. TRELLES:  Thank you, Your Honor.

25             THE CLERK:  Court is in recess.

1              (Adjourned, 2:32 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                C E R T I F I C A T I O N

3

4

5

6

7

8

9          I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do

10   hereby certify that the foregoing pages are a true and

11   accurate transcription of my stenographic notes in the

12   above-entitled case.

13

14

15

16

17

18                /s/ Debra D. Lajoie

19

20

21

22

23                5/29/18

24

25