UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY'S OBJECTION TO THE MONTHLY STATEMENT OF PAUL HASTINGS, LLP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD OF MARCH 1, 2018 THROUGH MARCH 31, 2018**

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as the entity authorized to act on behalf of the Debtor entities pursuant to the authority granted to it under the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017, respectfully submits this objection to the Monthly Statement of Paul Hastings, LLP ("Paul Hastings") for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors (the "Unsecured Creditors Committee"), for the Period from March 1, 2018 through March 31, 2018 (the "March Fee Statement"), served on AAFAF via email

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

on May 18, 2018 (*See* **Exhibit A**). In support of this Objection, AAFAF respectfully represents as follows:

### I. PRELIMINARY STATEMENT

1. In the March Fee Statement, Paul Hastings, as counsel to the Unsecured Creditors Committee, requests approval for payment of $2,469,611.82 in fees and expenses incurred from March 1, 2018 through March 31, 2018. AAFAF objects to the extent that the fees requested may not be reasonable or necessary, include requests for unnecessary or clerical work, and include unspecified charges.

### II. BACKGROUND

2. On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to sections 104(j) and 206 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Commonwealth's Title III Case").

3. On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to sections 104(j) and 206 of PROMESA and filed a voluntary petition for relief for COFINA pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "COFINA Title III Case," and collectively with the Commonwealth's Title III Case, and any other case under title III of PROMESA commenced by a covered territorial instrumentality of the Commonwealth, the "Title III Cases").

4. United States District Judge Laura Taylor Swain was designated to serve as the presiding judge in the Title III Cases. The Title III Cases are administered jointly [ECF Nos. 242 and 537].

2

5. On August 10, 2017, the Court entered the Stipulation and Order establishing procedures to resolve this Commonwealth-COFINA Dispute. For the purpose of resolving the Commonwealth-COFINA Dispute, the Court appointed the Unsecured Creditors Committee to serve as Commonwealth Agent. (Stipulation and Order ¶ 4.a) The Stipulation and Order provides that "the Creditors' Committee's … retained advisors…shall be compensated by the Debtor on whose behalf they are acting, in conformity with PROMESA section 316 and any interim compensation procedures ordered by the Court[.]" (Stipulation and Order ¶ 4.d.).

6. As AAFAF and the Oversight Board have previously argued, the Commonwealth-COFINA Dispute is limited to answering the narrow question of "[w]hether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt . . . are property of the Commonwealth or COFINA under applicable law[.]" (Stipulation and Order ¶ 4.a).

7. On July 10, 2017, the Unsecured Creditors Committee filed a *Notice of Hearing on Application for Order, Pursuant to Bankruptcy Code Section 1103(a) and Local Bankruptcy Rule 2014(1)(e) Authorizing Employment and Retention of Paul Hastings, LLP as Counsel to Official Committee of Unsecured Creditors Effective as of June 26, 2017*. (ECF No. 610).

8. On August 10, 2017, the Court entered an *Order Authorizing Employment and Retention of Paul Hastings, LLP as Counsel to Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 1103(a) and Local Rule 2014-1(e), Effective as of June 26, 2017* (the "Order Authorizing Employment of Paul Hastings"). (ECF No. 999).

9. On August 23, 2017, the Court entered an *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim Compensation Order"), establishing that "[a]ll Monthly Fee Statements shall comply with PROMESA and

3

applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules")." (ECF No. 1150, ¶ 2(b)).

10. In addition, the Interim Compensation Order establishes the deadlines and procedures for objection to any Monthly Fee Statement. (Interim Compensation Order ¶¶ 2(c)(d)).[2]

11. On November 8, 2017, the Interim Compensation Order was amended. (ECF No. 1715).

12. On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code 105(A) Appointing a Fee Examiner and Related Relief* (the "Fee Examiner Order"), appointing Brady Williamson to serve as Fee Examiner. (ECF No. 1416).

13. The Fee Examiner Order authorizes the Fee Examiner to "[d]evelop case-specific guidelines supplementing, but not in conflict with the authorities listed above." (Fee Examiner Order ¶ 7(b)). Pursuant to the authority granted to it, the Fee Examiner has also promulgated a series rules and standards to all retained professionals which together with PROMESA, the Bankruptcy Code and Bankruptcy and Local Rules, provide the basis for the standards governing professional compensation and reimbursement. (Fee Examiner's Initial Report, ECF No. 2645).

### III. OBJECTION AND LEGAL BASIS THEREOF

14. Section 316 (a)[3] of PROMESA, the requirements of which are made applicable to the March Fee Statement by paragraph 2.b of the Interim Compensation Order, provides that after notice and a hearing, the Court may award to a professional person employed by the Debtor or the

---

[2] Paul Hastings agreed to an extension of AAFAF's time to object to the March Fee Statement, and, therefore, this objection is timely.
[3] Section 316 of PROMESA mirrors the language of 11 U.S.C. §330.

4

Oversight Board "reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person" and for "reimbursement for actual, necessary expenses." (PROMESA Section 316(a)(a)(1) and (2)).

15. Further, in determining whether the compensation sought is reasonable, the Court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including- (1) the time spent on such services; (2) the rates charged for such services; whether the services were necessary to the administration of, or beneficial at the time which the services was rendered toward the completion of a case under this chapter; [and] (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed[.]" (PROMESA Section 316(c).).

16. In addition, Section 316(d) provides that the Court shall not allow compensation for "(1) unnecessary duplication of services; or (2) services that were not- (A) reasonably likely to benefit the debtor; or (B) necessary to the administration of the case." (PROMESA Section 316(d)).

17. Professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate and that the fees are reasonable and necessary. See In re Engel, 124 F.3d 567, 573 (3d Cir. 1997). The applicant bears the burden of proving an entitlement to fees. See Engel, 124 F.3d at 573; Johnson v. GA Highway Express Inc., 488 F.2d 714 (5th Cir. 1974). If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation in its entirety. See In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir. 1988).

18. AAFAF hereby submits the following objections to the March Fee Statement.

### A. March Fees for the Commonwealth-COFINA Dispute

19. The bulk of the services performed in the month of March and for which compensation is requested were incurred in the Commonwealth-COFINA Dispute. The March Fee Statement requests approximately **$1,802,227.06** for legal services performed in this matter. Most of the fees requested involve the analysis of documents, research, drafting and filing of replies and oppositions to the pending motions for summary judgment in the Commonwealth-COFINA Dispute, and related mediation.

20. Although AAFAF is aware that dispositive motions and mediation sessions took place during the month of March, the fees requested appear excessive.

21. The March Fee Statement reflects that Paul Hastings had twenty-five attorneys assisting on this matter. The high number of attorneys working on this matter raises a concern that there has been overstaffing resulting in the unnecessary duplication of services. See In re Frazin, No. 02-32351-BJH-13, 2017 WL 7050632, at *32 (Bankr. N.D. Tex. Dec. 22, 2017) (finding that lawfirm had "over-staffed" the case).

22. For example, the March Fee Statement shows that approximately 13 attorneys worked on the Unsecured Creditor's Committee's oppositions and replies to the various summary judgment motions filed in the Adversary Proceeding No. 17-00257.[4]

23. As the Fee Examiner noted in its Second Report on Professional Fees and Expenses From October, 1, 2017 through January 31, 2018 ("Second Report", ECF No. 3193):

> [I]t is difficult to conclude that any issue can justify the massive resources brought to bear so far on the Appointments Clause litigation. The threshold at which the value added no longer supports the additional cost has been passed. The Fee Examiner has asked that all of the professionals involved in the Appointments Clause litigation re-evaluate their fee submissions and relative contributions. To

---

[4] The Unsecured Creditor Committee's motion for summary judgment was filed on February. (Adv. Proceeding 17-00257 ECF No. 322). Thus, the fees requested in the March Fee Statement relate to opposition and replies to motions for summary judgment.

6

date, there has been no specific adjustment recommended—in part because of that request and in part because of delayed applications. In the interim, the appeals that may well follow a decision here cannot justify repetition—multiple law firms, multiple briefs making similar arguments, at least 27 attorneys taking direct responsibility by signing those briefs, not including their Puerto Rico counsel, with hundreds more lawyers and staff spending time on the work.

Second Report, pgs. 9-10.

24. Although the Commonwealth-COFINA Dispute raises complex legal issues, AAFAF shares the concern detail above and whether the fees requested are duplicative, reasonable, or necessary and, thus, objects to the same.

### B. Incorrect Application of Voluntary Discount

25. Paul Hastings has agreed to fee reductions of 20% of their total fees incurred in connection with the Title III Cases (ECF No. 999). However, it appears that Paul Hastings has only applied a 20% discount after submitting 100% of its fees in the March Fee Statement, which allows Paul Hastings to allocate the Fee Examiner's requested deductions or those resulting from an objection into this 20% fee waiver, thereby circumventing the Fee Examiner's deductions and limiting objections. Other professionals, provide the voluntary discount upfront, and submit invoices whereby 100% of their fees already include such discounts, and are also subject to further reductions the Fee Examiner imposes or those resulting from objections *after* giving effect to the reduction provided upfront. The Fee Examiner and objections to fee applications would have no purpose if Title III professionals had the option of treating their agreed voluntary discounts as a cushion for Fee Examiner reductions and objections.

26. Accordingly, AAFAF objects to the March Fee Statement to the extent that the fees requested therein are not "net" of the 20% discount agreed to by Paul Hastings.

### C. March Fees for Reading News Articles

7

27. The March Fee Statement also includes compensation requests in the total amount of **$7,006.50** for time spent in the "[r]eview of news articles in Spanish regarding the Title III cases" during the month of March. AAFAF objects as the review of news articles is "not necessary to the administration of the estate." The review of news articles should be considered a cost of doing business and should not be billed. See In re St. Pierre, 4 B.R. 184, 186 (Bankr. D.R.I. 1980) (disallowing time spent by attorney in familiarizing himself with the Bankruptcy Code).

### D. March Fees for Clerical Work

28. The March Fee Statement further requests approximately **$7,411.05** in compensation for services that are clerical in nature. For instance, the March Fee Statement includes compensation requests for time spent by a paralegal serving hard copies of the motions filed.

29. Section 316 of PROMESA, like Section 330 of the Bankruptcy Code, allows for the reimbursement of services rendered by paraprofessionals. Nevertheless, courts have held that work that is "clerical" in nature is not compensable. See In re Parrilla, 530 B.R. 1, 20 (Bankr. D.P.R. 2015) ("Clerical (secretarial) work is not compensable because it is considered as part of the overhead expenses incurred by a professional, and as such it is factored in the hourly rate of the professional."); In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 492 (Bankr. D. Utah 1991) ("If the service performed by a paraprofessional consists of typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying, or mailing documents, the task is clerical in nature and not compensable.").

### E. March Fees for Local Transportation

30. The March Fee Statement also requests approximately **$2,316.00** in expenses for local transportation charges. The Fee Examiner has stressed that "[l]ocal travel expenses (train,

8

bus, subway, mileage, car service, taxi) to for from a professional's home are not reimbursable "*unless a professional has worked at least four hours on these cases on the day for which the expense is sought and works after 9:00 pm local time on these cases*." (*See* **Exhibit B** of *Fee Examiner's Initial Report* ECF No. 2645). There is insufficient detail in the expense requests to assess whether it complies with the guidelines detailed above. Further, AAFAF notes that the March Fee Statement reflects a wide range of transportation services and charges. While some attorneys' requests reimbursement of $100 for travel expenses from the office to their homes using a transportation service company, other attorneys request reimbursement for local taxi rides which amount to much less.

  **F.** **March Fees for Computer Searches**

31. The March Fee Statement also requests approximately **$1,140** in expenses related to "Computer Search (other)". This is in addition to the expenses related to Westlaw searches. This vague expense request should be denied as AAFAF is not even able to determine what the expense relates to.

### IV. CONCLUSION

32. Wherefore, for the foregoing reasons, AAFAF respectfully requests that the Court deny the March Fee Statement.

Dated: June 6, 2018
      San Juan, Puerto Rico

Respectfully submitted,

| */s/ Peter Friedman* | */s/ Luis C. Marini* |
|---|---|
| John J. Rapisardi | Luis C. Marini-Biaggi |
| Suzzanne Uhland | USDC No. 222301 |
| Peter Friedman | Carolina Velaz-Rivero |
| Diana Perez | USDC No. 300913 |
| (Admitted *Pro Hac Vice*) | **MARINI PIETRANTONI MUÑIZ LLC** |
| **O'MELVENY & MYERS LLP** | MCS Plaza, Suite 500 |
| 7 Times Square | 255 Ponce de León Ave. |
| New York, NY 10036 | San Juan, Puerto Rico 00917 |
| Tel: (212) 326-2000 | Tel: (787) 705-2171 |
| Fax: (212) 326-2061 | Fax: (787) 936-7494 |
| *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |