# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>       Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>     as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>       Plaintiff, | Adv. Proc. No. 17-00257-LTS<br><br><br>**OBJECTION OF THE BANK OF NEW YORK MELLON, AS TRUSTEE, TO COMMONWEALTH AGENT'S URGENT MOTION, PURSUANT TO BANKRUPTCY CODE SECTION 105(A) AND BANKRUPTCY RULE 9019, FOR ORDER ESTABLISHING PROCEDURES GOVERNING 5.5% SUT REVENUES COLLECTED ON OR AFTER JULY 1, 2018** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the  Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

v.

BETTINA WHYTE,

          as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO,

          as representative of

THE PUERTO RICO SALES TAX
FINANCING CORPORATION,

          Defendant.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT ........................................................................................................................... 8

I.      AT A MINIMUM, DUE PROCESS REQUIRES THAT ALL BENEFICIAL
        HOLDERS ARE PROVIDED ADEQUATE NOTICE AND AN
        OPPORTUNITY TO BE HEARD WITH RESPECT TO THE PROCEDURES
        MOTION.................................................................................................................. 8

II.     BNYM'S RIGHTS, CLAIMS, LIENS, AND SECURITY INTERESTS UNDER
        THE RESOLUTION AND THE INTERPLEADER ORDER SHOULD NOT BE
        ALTERED. ............................................................................................................. 11

III.    THE COURT SHOULD NOT IMPOSE ANY NEW DUTIES ON BNYM
        WITHOUT ITS CONSENT. .................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Gonzalez-Gonzalez v. U.S.*,
    257 F. 3d 31 (1st Cir. 2001)......................................................................................8

*Noonan v. Sec'y of Health & Human Servs. (In re Ludlow Hosp. Society, Inc.)*,
    124 F.3d 22 (1st Cir. 1997)......................................................................................12

*Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*,
    984 F.2d 1305 (1st Cir. 1993)..................................................................................12

*W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*,
    43 F. 3d 714 (1st Cir. 1994).................................................................................8, 10

**Statutes**

11 U.S.C. § 105(a) .....................................................................................................12

13 P.R. Laws Ann. § 11a(b)........................................................................................4

13 P.R. Laws Ann. § 12 ..............................................................................................4

The Bank of New York Mellon ("BNYM"), as trustee under the Amended and
Restated Sales Tax Revenue Bond Resolution (as amended and supplemented, the "Resolution"),
adopted on July 13, 2007, by the Puerto Rico Sales Tax Financing Corporation ("COFINA"),
through its undersigned counsel, hereby objects (this "Objection") to the urgent motion [Doc.
No. 495] (the "Procedures Motion"), filed by The Official Committee of Unsecured Creditors of
the Commonwealth of Puerto Rico (the "Commonwealth Agent"), as agent for The Financial
Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of
the Commonwealth of Puerto Rico (the "Commonwealth"), to establish procedures governing
proceeds of the Pledged Sales Tax (as defined herein) collected on or after July 1, 2018, and in
support hereof, respectfully states as follows:[1]

## PRELIMINARY STATEMENT

1.      Through this Objection, BNYM seeks:  (i) to ensure that all holders of
beneficial interests in the Bonds (the "Beneficial Holders") whose rights may be affected by the
proposed procedures receive adequate notice of the relief requested by the Commonwealth Agent
and an opportunity to be heard; (ii) to protect the validity, priority, and extent of any of BNYM's
rights, claims, liens, and security interests under the Resolution and the Court's interpleader
order; and (iii) to avoid the imposition of new duties on BNYM outside of the Resolution and the
Court's interpleader order absent clearly defined parameters.

2.      To be clear, BNYM takes no position on the full agreement-in-principle at
this time and in no way seeks to upset the settlement process.  Further, of the three procedures

---

[1] Capitalized terms used but not defined in this opposition have the meanings given in the Resolution or
the Procedures Motion, as the context requires.  References to Bondowners generally as a matter of
convenience do not change the defined terms set forth in the Resolution, as addressed more fully in the
*Motion of The Bank of New York Mellon, as Trustee, for Partial Summary Judgment Pursuant to Fed.
R. Civ. 56*, No. 17-0133-LTS (D.P.R. Nov. 6, 2017), Doc. No. 435, and BNYM reserves all rights and
claims addressed therein.

proposed by the Commonwealth Agent in the Procedures Motion, BNYM does **not** object to:
(i) accounting separately for the Pledged Sales Tax deposited after July 1, 2018, provided that
(a) parties-in-interest develop, and the Court's orders clearly define, specific procedures as to
how any investment gains should be calculated and apportioned between Pre- and Post-July 1,
2018 Funds, and (b) BNYM is protected from liability for acting in compliance with such Court
order; and (ii) allocating the Pledged Sales Tax deposited after July 1, 2018, to the
Commonwealth and COFINA pursuant to a settlement agreement that is approved by the Court
as part of a confirmed plan of adjustment.

   3. The focus of this Objection is the Commonwealth Agent's proposed
procedure governing the disposition of the Pledged Sales Tax deposited after July 1, 2018, in the
event that the settlement is not finalized and approved by the Court and the Court later
determines  that the Commonwealth owns all of the Pledged Sales Tax not yet collected and
deposited with BNYM.  *See* Procedures Motion ¶¶ 4(c), 5.  The Commonwealth Agent would
like the Court to approve an agreement between the Agents now that, in such circumstances, the
Court's hypothetical future ruling would be retroactive to July 1, 2018.  In effect, the deposit of
Pledged Sales Tax with BNYM after July 1, 2018, could cease to be governed by the Resolution
and applicable law.  *See id.*  This last procedure is referred to herein as the "Disposition
Procedure."

   4. The Procedures Motion suffers from two fundamental flaws as it relates to
the Disposition Procedure.  *First*, the Disposition Procedure may deprive BNYM and the
Beneficial Holders of substantive property and contractual rights without giving adequate notice
and an opportunity to be heard to all Beneficial Holders, in contravention of Beneficial Holders'
due process rights.  *Second*, the Commonwealth Agent's protestations notwithstanding, the

- 2 -

Disposition Procedure is not necessary to preserve the status quo.  Funds have been interpleaded

and are subject to disbursement only by Court order.  Nothing more should be required by the

Commonwealth Agent.

        5.     These flaws easily may be remedied.  As to the application of due process,

the Court may enter an order *conditionally* approving the Procedures Motion subject to the

following notice procedures:

    a.    Within five (5) days of the entry of the order conditionally approving the
Procedures Motion, BNYM shall provide written notice of the Procedures Motion
to all Bondowners, advising them of the Court's conditional approval of the
Procedures Motion, the objection deadline established solely for Beneficial
Holders that are not party to this Adversary Proceeding, and any other
information that BNYM deems appropriate.

    b.    Holders of beneficial interests in the Bonds that are not party to this Adversary
Proceeding shall have thirty-five (35) days after entry of an order conditionally
approving the Procedures Motion to file an objection or other responsive pleading
in the Adversary Proceeding.  Such holders are permitted to intervene in the
Adversary Proceeding for that limited purpose without the need to file a motion
seeking leave to intervene.

    c.    If no objections are timely filed, the order conditionally approving  the Procedures
Motion will become effective as of the first day following the objection deadline
without any further action required by the Court or the parties.  If one or more
objections are filed within the time allotted, the Court will consider them prior to
entering a final order granting or denying the Procedures Motion.

Further, if the Court determines that the Disposition Procedure is necessary to preserve the status

quo and to protect the Commonwealth Agent's existing rights, the Court should confirm that the

status quo is, indeed, being preserved by incorporating the following language in the order:

"Notwithstanding anything to the contrary contained in the order, nothing in the order shall alter

or impair the validity, priority, or extent of any of BNYM's rights, claims, liens, or security

interests under the Resolution or the Interpleader Order."

        6.     Separately, as a condition to ordering BNYM to perform accounting

functions beyond the scope of BNYM's duties under the Resolution and the Interpleader Order,

the Court should (i) mandate clearly defined and specific procedures, to be developed by the

parties-in-interest, governing the calculation and apportionment of investment gains as between

Pre- and Post-July 1, 2018 Funds, and (ii) protect BNYM from liability for acting in compliance

with such Court order.

7.      In the absence of these changes to the proposed order, the Procedures

Motion should be denied.

**BACKGROUND**

8.      The Commonwealth created COFINA as an independent governmental

instrumentality for the purpose of financing the payment, retirement, or defeasance of

Commonwealth debt obligations through the issuance of bonds secured by an assignment of a

portion of the revenues generated by a tax on the sale or use of a broad range of goods and

services.  *See* 13 L.P.R.A. §§ 11a(b), 12.  A portion of the tax (the "Pledged Sales Tax") in each

fiscal year is required to be deposited in a special fund owned by COFINA and maintained

separate and apart from the Commonwealth's general fund.  *See* 13 L.P.R.A. § 12.  COFINA's

enabling statute states that the Pledged Sales Tax was "transferred to, and shall be the property of

COFINA."  *Id.*

9.      COFINA issued multiple series of senior and subordinate sales tax

revenue bonds (the "Bonds") under the Resolution.  *See generally* Resolution.  Payments of

principal and interest and other amounts due under the Resolution are secured by, among other

things, an assignment of the Pledged Sales Tax.  *See id.* § 501.  Upon receipt, COFINA is

required to deposit the Pledged Sales Tax with BNYM.  *Id.* § 505.1.  Amounts held by the

Trustee under the Resolution, including the Pledged Sales Tax, are "held in trust" and "applied

only in accordance with the provisions of the Resolution . . . ."  *Id.* § 502.3.

- 4 -

10.     On May 16, 2017, BNYM commenced an adversary proceeding (the "Interpleader Proceeding") seeking interpleader and declaratory relief because certain holders of beneficial interests in the Bonds, insurers of the Bonds, and COFINA asserted competing claims to the Pledged Sales Tax held by BNYM in trust under the Resolution.  *See Complaint*, Adv. Pro. No. 17-0133-LTS (D.P.R. May 16, 2017), Doc. No. 1.  BNYM filed the Interpleader Proceeding to preserve the fund while the Court resolved the parties' disputes.  In Stage One of the Interpleader Proceeding, the Court recognized the parties' competing claims, granted BNYM's request to interplead the funds, and ordered BNYM to hold the funds (net of the BNYM's fees and expenses) "on behalf of the party or parties ultimately determined by the Court to be entitled" to them.  *See Order Granting Interpleader, Staying Pending and Future Litigation Against The Bank of New York Mellon, as Trustee, Pursuant to 28 U.S.C. § 2361, and Granting Related Relief* (the "Interpleader Order"), Adv. Pro. No. 17-0133-LTS (D.P.R. May 30, 2017), Doc. No. 110.

11.     On August 10, 2017, the Court entered the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (the "Commonwealth-COFINA Stipulation"), establishing procedures whereby the Agents could litigate and/or settle the narrow legal question of "[w]hether after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law" (the "Commonwealth-COFINA Dispute").  *See* No. 17 BK 3283-LTS (D.P.R. Aug. 10, 2017), Doc. No. 996.

12.     On September 8, 2017, the Commonwealth Agent commenced this Adversary Proceeding to litigate the Commonwealth-COFINA Dispute.  *See Complaint*, Adv. Pro. No. 17-0257-LTS (D.P.R. Sept. 8, 2017), Doc. No. 1.

13.     On June 7, 2018, the Agents announced an agreement-in-principle that may resolve the Commonwealth-COFINA Dispute *if* all conditions precedent are satisfied, the Agents reach a final settlement agreement, and that agreement is approved by the Court as part of a confirmed plan of adjustment submitted by COFINA.  *See Joint Informative Motion of Commonwealth Agent and COFINA Agent Disclosing Agreement in Principle*, Adv. Pro. No. 17-0257-LTS (D.P.R. June 7, 2018), Doc. No. 486.

14.     At the Agents' request, the Court entered an order holding any rulings on the pending summary judgment motions in this Adversary Proceeding in abeyance for a period of sixty days to allow the Agents to finalize a settlement agreement.  *See Order Holding Decisions on Motions for Summary Judgment in Abeyance for 60-Day Period*, Adv. Pro. No. 17-0257-LTS (D.P.R. June 11, 2018), Doc. No. 492.

15.     The Commonwealth Agent filed the Procedures Motion to "establish[] procedures" governing the Pledged Sales Tax collected on or after July 1, 2018, "pending implementation of the Commonwealth-COFINA settlement."  *See* Procedures Motion ¶ 1.  If granted, the Procedures Motion would subject the deposit of any Pledged Sales Tax collected on or after July 1, 2018, with BNYM to the following conditions:

(a)     BONY would separately account for (i) all 5.5% SUT revenues currently in BONY accounts or received on or before June 30, 2018 (the "Pre-July 1 2018 Funds") and (ii) all 5.5% SUT revenues received by BONY on or after July 1, 2018 (the "Post-July 1, 2018 Funds"), so as to ensure that the two pools of funds (and proceeds from investment of such funds) are clearly identifiable;

- 6 -

(b)      Upon the effective date of the settlement, the Post-July 1, 2018 Funds shall be allocated to the Commonwealth and COFINA in accordance with the PSTBA shares set forth in the settlement agreement (*i.e.*, 53.65% for COFINA, which would be the first dollars of the 5.5% SUT, and 46.35% for the Commonwealth); and

(c)      In the event that either (x) the Agents do not execute a settlement agreement by August 4, 2018 **or** (y) the effective date of COFINA's Title III plan of adjustment approving and incorporating the settlement does not occur within 200 days after execution of the settlement agreement (as such deadlines may be extended pursuant to the terms of the Agreement in Principle), then the court's eventual ruling on the ownership of the 5.5% SUT not yet collected by the Commonwealth (as of June 30, 2018) shall govern the disposition of the Post-July 1, 2018 Funds (it being understood that neither Agent is waiving any appellate rights with respect to such determination).

Procedures Motion ¶ 4.

16.     As noted above, BNYM does not object to the first procedure, providing a separate accounting for the Post-July 1, 2018 Funds, as long as the parties are not asking the Court to impose any new duties, such as an undertaking to perform a complicated calculation and accounting for investment gains attributable to Pre- and Post-July 1, 2018 Funds, without clearly defined instructions.  The current proposal should be revised to address allocation of investment gains between the two pools of funds.  BNYM also does not object to the second procedure, allocating the Post-July 1, 2018 Funds pursuant to a settlement agreement if approved by the Court as part of a confirmed plan of adjustment.  BNYM's objection focuses solely on the third proposed procedure—the Disposition Procedure.

## ARGUMENT

**I.**     **AT A MINIMUM, DUE PROCESS REQUIRES THAT ALL BENEFICIAL HOLDERS ARE PROVIDED ADEQUATE NOTICE AND AN OPPORTUNITY TO BE HEARD WITH RESPECT TO THE PROCEDURES MOTION.**

17.     The Commonwealth Agent wants the Court to enter an order now that, *if* the agreement-in-principle is not finalized and approved, and the Court later determines that the Commonwealth owns all of the Pledged Sales Tax not yet collected and deposited with BNYM, such hypothetical future ruling would be retroactive to July 1, 2018, notwithstanding that BNYM already would be holding Post-July 1, 2018 Funds in trust pursuant to the terms of the Resolution.  *See* Procedures Motion ¶ 4(c).  The Commonwealth Agent's proposed order, if entered, would function as an implicit pre-determination of one discrete issue within the larger Commonwealth-COFINA Dispute, alter the status quo, and may directly affect BNYM's and the Beneficial Holders' interests in those funds.[2]  At a minimum, such relief should not be granted without due process—adequate notice and an opportunity to be heard—being given to all Beneficial Holders whose rights and interests may be affected.

18.     Due process requires that adequate notice and an opportunity to be heard be given to any entity whose pecuniary interests might be directly and adversary impacted by a proposed action.  *See Gonzalez-Gonzalez v. U.S.*, 257 F. 3d 31 (1st Cir. 2001); *see also W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F. 3d 714, 720 (1st Cir. 1994) (recognizing that parties-in-interest "encompasses not only entities holding 'claims' against the debtor, but any entity whose pecuniary interests might be directly and adversely affected by the proposed action.").

---

[2]  In that sense, the requested relief is akin to an advisory opinion—relief requested that amounts to an abstract declaration of the parties' respective relationships to the Post-July 1, 2018 Funds without application of the relief to resolve any current concrete dispute.  *See Opinion and Order Granting Motion to Dismiss*, Adv. Pro. No. 17-0189-LTS (D.P.R. Jan. 30, 2018), Doc. No. 124.

19.      Possession of the Pledged Sales Tax has legal significance under the Resolution.  As examples:  (i) funds on deposit with BNYM shall be applied only in accordance with the Resolution and applicable law, *see* Resolution § 502.3; (ii) the amounts held by BNYM for payment due on any date with respect to particular Bonds "shall, on and after such date and pending such payment, be set aside on its books and held in trust by it for the Owners of such Bonds," *id.* § 1203; (iii) BNYM has payment priority rights with respect to its fees, expenses, and indemnification claims, *see id.* § 1103.1; and (iv) BNYM has a lien prior to that of the Bondowners on any and all funds at any time held by it under the Resolution, *see id.* § 804.  If the Disposition Procedure is imposed, but the settlement ultimately is not consummated, BNYM and the Beneficial Holders may be deprived of these and all other legal rights that attend possession of the Post-July 1, 2018 Funds.  In these circumstances, due process rights must be afforded to all Beneficial Holders whose interests might be affected by the relief requested.

20.      The need for due process is highlighted by the procedures governing the effectiveness of settlements in the Commonwealth-COFINA Stipulation.  If the Agents reach an agreement, the Commonwealth-COFINA Stipulation provides that "[s]uch settlement shall only be effective upon . . . , with respect to COFINA, confirmation of a title III plan of adjustment in the COFINA title III case incorporating such settlement pursuant to a Final Order, and which plan has become effective . . . ."  Commonwealth-COFINA Stipulation ¶ 4.i.  The Commonwealth-COFINA Stipulation conditions the effectiveness of agreements between the Agents on confirmation of a plan of adjustment, *inter alia*, to prevent the Agents from modifying creditors' legal and contractual rights and interests in property unilaterally without proper notice and an opportunity to be heard.

21.     Despite this recognition of Beneficial Holders' due process rights, the Commonwealth Agent seeks to implement "one critical and time-sensitive component of the agreement in principle" outside the Court-approved protocol through a motion filed in this Adversary Proceeding.  *See* Procedures Motion ¶ 1.  Although the Commonwealth Agent characterizes this component of the agreement as merely procedural in nature, the requested relief may fundamentally alter the characterization of Post-July 1, 2018 Funds to the detriment of BNYM and the Beneficial Holders.  The Commonwealth Agent wants the Court to treat the Post-July 1, 2018 Funds as if they were not deposited with BNYM, which arguably has the same effect as cutting off the flow of Pledged Sales Tax entirely.

22.     A large percentage of Beneficial Holders is not a party to this Adversary Proceeding and/or not represented at all in connection with this title III proceeding.  Non-party Beneficial Holders have not received adequate notice of the proposed settlement among the Agents.  Before the Agents negotiate away others' interests in property, the Commonwealth-COFINA Stipulation and due process demand that such Beneficial Holders have adequate notice and an opportunity to be heard.  *See W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d at 720 (explaining that "the debtor in possession or trustee must ensure 'parties in interest' adequate notice and opportunity to be heard *before* their interests may be adversely affected" because "[n]otice is the cornerstone underpinning Bankruptcy Code procedure.").  The Court should not create an exception to its settlement protocol or permit the Commonwealth Agent to ignore the Beneficial Holders' due process rights as a matter of convenience.

23.     To remedy the due process defects of the Procedures Motion, BNYM requests that the Court deny the Procedures Motion unless the following (or substantially

similar) notice procedures are incorporated as part of an order *conditionally* approving the

Procedures Motion.

  a.  Within five (5) days of the entry of the order conditionally approving the Procedures Motion, BNYM shall provide written notice of the Procedures Motion to all Bondowners, advising them of the Court's conditional approval of the Procedures Motion, the objection deadline established solely for Beneficial Holders that are not party to this Adversary Proceeding, and any other information that BNYM deems appropriate.

  b.  Holders of beneficial interests in the Bonds that are not party to this Adversary Proceeding shall have thirty-five (35) days after entry of an order conditionally approving the Procedures Motion to file an objection or other responsive pleading in the Adversary Proceeding.  Such holders are permitted to intervene in the Adversary Proceeding for that limited purpose without the need to file a motion seeking leave to intervene.

  c.  If no objections are timely filed, the order conditionally approving  the Procedures Motion will become effective as of the first day following the objection deadline without any further action required by the Court or the parties.  If one or more objections are filed within the time allotted, the Court will consider them prior to entering a final order granting or denying the Procedures Motion.

## II.  BNYM'S RIGHTS, CLAIMS, LIENS, AND SECURITY INTERESTS UNDER THE RESOLUTION AND THE INTERPLEADER ORDER SHOULD NOT BE ALTERED.

   24.  The Commonwealth Agent ostensibly filed the Procedures Motion in

order to "preserv[e] the status quo of the Commonwealth's and COFINA's respective rights to"

the Pledged Sales Tax.  *See* Procedures Motion ¶ 1.  The Ad Hoc Group of General Obligation

Bondholders observed that "the relief requested in the Motion is unnecessary because the goal of

preserving the status quo already has been achieved through the Court's prior holdings with

respect to the interpleaded funds held by [BNYM]."  *See* Doc. No. 500.  BNYM agrees.

   25.  BNYM commenced the Interpleader Proceeding to resolve conflicting

claims to the Pledged Sales Tax in its possession by certain holders of beneficial interests in the

Bonds, insurers of the Bonds, and COFINA.  Recognizing the existence of such competing

claims, the Court ordered BNYM to interplead deposits of the Pledged Sales Tax "until entry of

a final order of this Court directing the timing and manner of the disbursement of such funds."
Interpleader Order ¶ 3.  Pursuant to the Interpleader Order, BNYM must "hold the entirety of the
[interpleaded funds] in the existing accounts into which they have been deposited, on behalf of
the party or parties ultimately determined by the Court to be entitled" to such funds.  *Id.*

      26.     The Disposition Procedure is not necessary to protect whatever interest the
Commonwealth Agent may have in the Post-July 1, 2018 Funds because those funds have been
interpleaded and are subject to disbursement only by Court order.  No additional procedures are
necessary.  If the Court determines that the Procedures Motion should be granted, it should
confirm that the status quo is, indeed, being preserved by providing expressly that nothing in the
order alters the validity, priority, or extent of any of BNYM's rights, claims, liens, or security
interests under the Resolution or the Interpleader Order.

      27.     In support of the Procedures Motion, the Commonwealth Agent cites
section 105(a) of the Bankruptcy Code, providing that "[t]he court may issue any order . . . that is
necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  On the
facts of this case, however, the Disposition Procedure is not "necessary" (or appropriate) to carry
out the provisions of title III or to avoid any potential unfair advantage for COFINA if the
settlement fails.  *See Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984
F.2d 1305, 1311 (1st Cir. 1993) ("Nor does section 105(a) authorize courts to create substantive
rights that are otherwise unavailable under the Code, or to expand the contractual obligations of
parties"); *see also Noonan v. Sec'y of Health & Human Servs. (In re Ludlow Hosp. Society, Inc.)*,
124 F.3d 22, 28 (1st Cir. 1997) ("But since section 105 itself is not a source of new substantive
rights, the bankruptcy court may invoke section 105(a) only if the equitable remedy utilized is
demonstrably necessary to preserve a right elsewhere provided in the Code.").

28.     Far from being necessary to preserve the status quo, the Disposition
Procedure appears to fundamentally alter the status quo.  If the Agents' proposal were accepted,
it would be the Commonwealth Agent's legal position that could be enhanced and to whom the
unfair advantage would run.  If the agreement-in-principle is not finalized and approved by the
Court, funds that otherwise would be deposited with BNYM after July 1, 2018, and held by
BNYM in trust for the benefit of Bondowners (and Beneficial Holders) under the terms of the
Resolution would be recharacterized automatically as "future" Pledged Sales Tax as if those
funds were not held by BNYM and possession of the funds in trust had no legal significance.  By
contrast, maintaining the status quo under the Interpleader Order would not "improve"
COFINA's position or result in an "unfair advantage" for COFINA; it would preserve (not
enhance or diminish) BNYM's and the Bondowners' existing legal and contractual rights.

29.     The Disposition Procedure is not necessary to preserve whatever interest
the Commonwealth currently may have in the Post-July 1, 2018 Funds.  The Commonwealth
Agent has taken the position that the Commonwealth owns the Pledged Sales Tax, regardless of
whether the proceeds of such tax have been deposited with BNYM under the Resolution.  *See
Commonwealth Agent's Motion for Summary Judgment and Incorporated Memorandum of Law*,
Adv. Pro. No. 17-0257-LTS (D.P.R. Feb. 21, 2018) Doc. No. 322 (arguing that the Pledged Sales
Tax, "including all SUT revenues currently on deposit at BONY and any future SUT revenues,"
are the Commonwealth's property).

30.     If the Commonwealth Agent is correct, the Interpleader Order is sufficient
to protect the Commonwealth in the event that the agreement-in-principle is not finalized and
approved because it prevents BNYM from distributing the Pledged Sales Tax in the absence of a
Court order.  *See* Interpleader Order ¶ 2.  If the Commonwealth Agent is incorrect, the

- 13 -

Commonwealth Agent would not be harmed or prejudiced by maintaining the equilibrium established by the Interpleader Order.  In these circumstances, the Commonwealth currently has no interest in funds once they are deposited with BNYM and would continue to have no interest in funds deposited with BNYM.  The Commonwealth Agent should not be able to expand its rights and diminish non-parties' rights in property solely because it has reached a preliminary agreement-in-principle with the COFINA Agent—an agreement that is subject to numerous conditions precedent and may never be finalized or approved.

31.    Because the procedures are not "necessary or appropriate" within the context of section 105(a) of the Bankruptcy Code, BNYM requests that the Court deny the Procedures Motion unless the following (or substantially similar) language is incorporated into the order, thereby confirming that the status quo actually is being preserved and that nothing in the order affects BNYM's rights:  "Notwithstanding anything to the contrary contained in the order, nothing in the order shall alter or impair the validity, priority, or extent of any of BNYM's rights, claims, liens, or security interests under the Resolution or the Interpleader Order."[3]

## III.    THE COURT SHOULD NOT IMPOSE ANY NEW DUTIES ON BNYM WITHOUT ITS CONSENT.

32.    Under the Interpleader Order, BNYM has a duty to hold the Pledged Sales Tax deposited with BNYM "in the existing accounts into which they have been deposited" and to invest such funds and "apply the investment gains in accordance with the terms of the Resolution."  Interpleader Order ¶ 3.  As part of this process, BNYM has issued monthly notices to Bondowners since the commencement of the Interpleader Proceeding regarding the updated market value of each debt service account into which the Pledged Sales Tax is deposited as of the first day of each month.  BNYM also internally tracks the amount of Pledged Sales Tax

---

[3]  AAFAF is seeking a similar reservation of rights in the proposed order.  *See* Doc. No. 501.

deposited with BNYM on a daily basis in the ordinary course of business.  Accordingly, it is not burdensome or objectionable for BNYM to provide a separate accounting of the Pledged Sales Tax deposited with BNYM after July 1, 2018.

33.    Separately accounting for investment gains on Post-July 1, 2018 Funds, however, is burdensome and complicated and could subject BNYM to second-guessing and unnecessary liability in the event that any party disagrees with BNYM's calculations.  As a condition to ordering BNYM to perform accounting functions beyond the scope of BNYM's duties under the Resolution and the Interpleader Order, the Court should (i) mandate clearly defined and specific procedures, to be developed by the parties-in-interest, governing the calculation and apportionment of investment gains as between Pre- and Post-July 1, 2018 Funds, and (ii) protect BNYM from liability for acting in compliance with such Court order.

WHEREFORE, BNYM respectfully requests that the Court enter an order sustaining this Objection, denying the Procedures Motion, and granting such other and further relief in favor of BNYM as may be just and proper.

*[The remainder of this page was intentionally left blank.]*

Dated:  June 20, 2018                                      Respectfully submitted,
         San Juan, Puerto Rico

                                                          SEPULVADO, MALDONADO & COURET

                                        By:      /s/ Albéniz Couret-Fuentes
                                                 Elaine Maldonado-Matías
                                                 USDC-PR Bar No. 217309
                                                 Albéniz Couret-Fuentes
                                                 USDC-PR Bar No. 222207
                                                 José Javier Santos Mimoso
                                                 USDC-PR Bar No. 208207
                                                 304 Ponce de León Ave. – Suite 990
                                                 San Juan, PR 00918
                                                 Telephone: (787) 765-5656
                                                 Facsimile:  (787) 294-0073
                                                 Email: emaldonado@smclawpr.com
                                                 Email:  acouret@smclawpr.com
                                                 Email:  jsantos@smclawpr.com

                                                 REED SMITH LLP

                                                 /s/ Eric A. Schaffer
                                                 Eric A. Schaffer
                                                 Luke A. Sizemore
                                                 225 Fifth Avenue, Suite 1200
                                                 Pittsburgh, PA 15222
                                                 Telephone: (412) 288-3131
                                                 Facsimile:  (412) 288-3063
                                                 Email:  eschaffer@reedsmith.com
                                                 Email:  lsizemore@reedsmith.com

                                                 Kurt F. Gwynne
                                                 1201 N. Market Street, Suite 1500
                                                 Wilmington, DE 19801
                                                 Telephone: (302) 778-7550
                                                 Facsimile:  (302) 778-7575
                                                 Email: kgwynne@reedsmith.com

                                                 *Counsel to The Bank of New York Mellon,
                                                 as indenture trustee*