# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 3268, 3276**

(Jointly Administered)

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH TO MOTION FOR
## RELIEF FROM STAY FILED BY GRISELL CUEVAS-RODRIGUEZ

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................... 2

OBJECTION .............................................................................................................................. 4

    I.      THE TITLE III STAY APPLIES TO THIS LAWSUIT ....................................... 3

    II.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO
          LIFT THE STAY. ................................................................................................ 8

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvin Marrero-Méndez, et al., v. Hector Pesquera, et al.*,
  Case No. 13-cv-1203 (JAG) (D.P.R. July 20, 2017) ..................................... 8

*Besosa-Noceda, et al v. Capo-Rivera, et al.*,
  Case No. 16-2117 (1st Cir. Jan. 23, 2018) (Doc. No. 117246419)................ 5

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
  217 F. Supp. 3d 508, 518 (D.P.R. 2016)................................................ 9,10,13

*C &A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
  369 B.R. 87, *94-95* (D.P.R. 2007) ............................................................ 3,9

*Cano-Rodriguez v. De Jesus-Cardona, et al.*,
  Case No. 16-1532 (1st Cir. Nov. 27, 2017) (Doc. No. 117225999).............5,7

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
  28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).................................................14

*FCC v. NextWave Pers. Commc'ns Inc.*,
  537 U.S. 293, 302 (2003 ............................................................................11

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
  2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006 ...................14

*Guadalupe-Baez v. Pesquera*,
  269 F. Supp. 3d 1 (D.P.R. 2017)................................................................ 8

*Hafer v. Melo*,
  502 U.S. 21, 25 (1991)................................................................................5

*In re 234-6 West 22nd St. Corp.*,
  214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)...................................................8

*In re Breitburn Energy Partners LP*,
  No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)…10

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11,
  2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ........................ 12

*In re City of Stockton*,
  484 B.R. 372, 375 (Bankr. E.D. Cal. 2012)..............................2,5,7,8,12,13,14

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*In re Cummings*,
　221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) .................................................. 10

*In re Gatke Corp.,*
　117 B.R. 406, 410 (Bankr. N.D. Ind. 1989).....................................................13

*In re Motors Liquidation Co.*,
　No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010)............................15

*In re Murrin*,
　477 B.R. 99, 109 (D. Minn. 2012) ..................................................................10

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG),
　2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006)………………..... 13

*In re Plumberex Specialty Prod., Inc.*,
　311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) ..............................................15

*In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586,
　at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ...................................................12,14,16

*In re Taub*,
　413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)........................................................10

*In re Unanue-Casal*,
　159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ..........8,9

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
　474 U.S. 494, 503 (1986).................................................................................4

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
　537 B.R. 128, 140 (Bankr. D.P.R. 2015) ........................................................4

*Newberry v. City of San Bernardino (In re City of San Bernardino)*,
　558 B.R. 321 (C.D. Cal. 2016) ........................................................................5

*Peaje Invs. LLC v. Garcia-Padilla*,
　2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) .......................10

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
　980 F.2d 110, 117 (2d Cir. 1992)................................................................ ...11,12

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Soares v. Brockton Credit Union (In re Soares)*
107 F. 3d 969, 975 (1st Cir, 1997) .................................................................... 4

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
907 F.2d 1280, 1286 (2d Cir. 1990) .......................................... 3,9,10,11,13-17

## STATUTES

11 U.S.C. 101 ........................................................................................................ 11

11 U.S.C. §105(a) ................................................................................................... 4

11 U.S.C. § 362(a) .............................................................................................. 2,4

11 U.S.C. § 362(a)(1) and (3) ............................................................................... 5

11 U.S.C. § 362 (d)(1) ......................................................................... 2,3,4,6,7,8,12

11 U.S.C. § 365 ...................................................................................................... 4

11 U.S.C. § 922, 922 (a) .......................................................................... 2,4,7,12,14

PROMESA § 301(a) ......................................................................................... 2,3,4,8

PROMESA § 315(b) ............................................................................................... 1

42 U.S.C. §1983 ..................................................................................................... 2

48 U.S.C. § 2101 .................................................................................................. 11

48 U.S.C. § 2161(a) ............................................................................................... 4

Law No. 104 of June 29, 1955, as amended,
P.R. Laws Ann. tit. 32, § 3085 1, et seq. ..................................................... 2,7

## OTHER AUTHORITIES

H.R. Rep. No. 95–595, at 309 (1977) .................................................................. 11

*Regulation Regarding Legal Representation and Payment of Judgment*,
Regulation No. 8405 of 2013 ........................................................................ 2,7

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay* [ECF No. 3268] (the "Motion") filed by Grisell Cuevas-Rodríguez ("Movant"), a party in the case captioned *Cuevas Rodríguez v. Soto López,* USDC-PR Case No. 3:17-cv-02249-GAG (the "Lawsuit"), pending before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.      On October 17, 2017, Movant commenced the Lawsuit against the Commonwealth, the Superintendent and several officers of the Puerto Rico Police Department, both in their official and in their personal capacities, for events that allegedly occurred on or before the commencement of this Title III case on May 3, 2017.  By the Lawsuit, Movant seeks damages allegedly suffered as a consequence of the Commonwealth's and the Police of Puerto Rico's alleged discrimination and retaliation.  The summons were served on the Commonwealth and other defendants between February 23, 2018 and March 6, 2018.

2.      On March 12, 2018, the Commonwealth filed in the Lawsuit a *Notice of Automatic Stay and of Procedures for Filing Motions for Relief from the Automatic Stay in the Commonwealth of Puerto Rico's Title III Case* requesting that the District Court take notice of the automatic stay applicable to the Lawsuit and the Amended Case Management Procedures.

3.      Realizing that it had filed the Lawsuit to enforce alleged prepetition claims in

---

[2]   The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

violation of the automatic stay, on June 6, 2018, Movant filed the Motion seeking to lift the automatic stay to proceed with the Lawsuit against the Commonwealth, the Police of Puerto Rico,[3] and several officers. Movant argues that the stay under Bankruptcy Code sections 362(a) and 922(a), made applicable to the Commonwealth's Title III case by PROMESA section 301(a) (the "Title III Stay") must be lifted because the Commonwealth will suffer no harm as a result of the lifting and because the claims made against the officials of the Commonwealth in their personal and official capacities are not stayed.

4.      This Court should deny the Motion because (1) the Title III Stay applies to the Lawsuit, and (2) Movant has failed on establish cause to lift the Title III Stay.  Here, the Lawsuit seeks money damages and injunctive relief against the Commonwealth and various officials of the Commonwealth sued in their personal and official capacities.  *See* Motion ¶ 1–2.  First, as other courts have held, Section 1983 suits brought against government officials in their personal and official capacities are stayed under sections 362(a) and 922(a).  *See, e.g., In re City of Stockton*, 484 B.R. 372, 375 (Bankr. E.D. Cal. 2012). Moreover, this Court entered an order expressly confirming the application of the automatic stay under sections 362(a) and 922(a) to the Commonwealth's officials in their personal and official capacities.  Second, under Law No. 104 of June 29, 1955, as amended, P.R. Laws Ann. tit. 32, § 30851 et seq. ("Law 104") and the *Regulation Regarding Legal Representation and Payment of Judgment*, Regulation No. 8405 of 2013 ("Regulation 8405"), the Commonwealth represents the non-debtor defendants in the Lawsuit.  Movant's arguments that the Title III Stay is inapplicable to the claims against the officials in their official and personal capacities are, therefore, unpersuasive.

---

[3]   The Police of Puerto Rico is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

5.       Given that the stay unquestionably applies here, Movant has failed to demonstrate "cause" as to why the Title III Stay should be lifted. Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous different factors, including those set forth in *Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280 (2d Cir. 1990). As a potential, prepetition, unsecured creditor, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his claims should not be resolved through the claims resolution process to be undertaken in the Title III cases.

6.       The case is in a very preliminary stage, having been commenced after the Commonwealth filed its Title III petition.  The Lawsuit is not ready for trial, as no answer or other responsive pleading has been filed, nor has the evidentiary process, pretrial hearing, the preparation and filing of the pretrial report, and all other ensuing hearings and filings, necessary for the underlying action to proceed to adjudication been completed.  Further, Movant relies on conclusory statements to assert that cause exists to lift the automatic stay, while vaguely purporting to apply the *Sonnax* factors to the facts of the underlying action.[4]

7.       Considering the procedural stage of the Lawsuit, the majority of the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying the Motion.

## OBJECTION

## I.       THE TITLE III STAY APPLIES TO THE LAWSUIT

8.       Contrary to Movant's assertions, the Title III Stay applies to the Lawsuit, including any claims against the Commonwealth's officers in both their official and personal capacities

---

[4]    Movant referred to the factors considered by the court in *C&A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, *94-95* (D.P.R. 2007).  The factors are the same twelve recognized in *Sonnax*.

because the Lawsuit is functionally a suit against the Commonwealth.  "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir, 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015).

9.      Under Bankruptcy Code section 362(a), made applicable to the Title III cases by PROMESA section 301(a), the commencement or continuation "of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement" of the Title III case or "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under" Title III is automatically stayed without further action. 11 U.S.C. § 362(a); 48 U.S.C. § 2161(a). "[I]n addition to the stay provided by [Bankruptcy Code section 362(a)]," Bankruptcy Code section 922(a) supplements the stay under section 362 and extends the stay to all actions against "an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a); 48 U.S.C. § 2161(a).

10.      The application of Bankruptcy Code sections 362(a) and 922(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order"), which also clarified that, as to officers and inhabitants of the Debtors, the section 922 stay applies "in all respects to the Debtors' officers *in both their*

4

*official and personal capacities* with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors." Title III Stay Order ¶ 5 (emphasis added).  Indeed, this Court has recognized the applicability of the Title III Stay to official-capacity suits in an order denying a similar request to lift the Title III Stay:

> An official-capacity suit against a Commonwealth official is functionally a suit against the Commonwealth. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Moreover, as this Court has previously explained, **the Commonwealth has assumed the legal defense and the responsibility for any monetary judgments against the Defendants in the Lawsuit. As a result, the Lawsuit is subject to the automatic stay** pursuant to Section 362(a)(1) and (a)(3) of the Bankruptcy Code, as the Movants seek the continuation of a judicial action against the Debtor that was commenced pre-petition and are attempting to obtain or control property of the Debtor through a judgment against the defendants providing equitable relief and damages, responsibility for payment of which lies with the Commonwealth.

*See Order on Motion for Reconsideration Filed by Beatriz Nieves-López, et al.*, at 3 [ECF No. 2723]; *cf. Memorandum Order Denying Alvin Marrero-Méndez's Motion for Relief from Stay (Docket Entry No. 952)*, at 2–3 [ECF No. 1234] (noting that the court in the prepetition action had determined that the Title III Stay applies to the prepetition action against three police officers).[5]

11.     The extent of the automatic stay under Bankruptcy Code sections 362(a) and 922(a) is illustrated by *In re City of Stockton*, 484 B.R. 372 (Bankr. E.D. Cal. 2012) and *Newberry v. City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 321 (C.D. Cal. 2016), two important Chapter 9 decisions that support the Commonwealth's argument that the Title III Stay applies to the Lawsuit.

---

[5]   The U.S. Court of Appeals for the First Circuit has also stayed pending appeals in connection with official-capacity suits, suggesting the First Circuit's stance that the Title III Stay applies to cases where Commonwealth officials are sued in both their official and personal capacities. *See Order of Court, Cano-Rodriguez v. De Jesus-Cardona, et al.*, Case No. 16-1532 (1st Cir. Nov. 27, 2017) (Doc. No. 117225999) (staying appeal in case against the Commonwealth and a Commonwealth official); *Order of Court, Besosa-Noceda, et al v. Capo-Rivera, et al.*, Case No. 16-2117 (1st Cir. Jan. 23, 2018) (Doc. No. 117246419) (staying appeal of case against a Commonwealth official).

12.     In *Stockton*, a plaintiff sought relief from the automatic stay to continue its suit for wrongful termination and violation of federal civil rights against two Stockton officials in their personal and official capacities. 484 B.R. at 375. The city in *Stockton* had assumed the legal representation of the officials pursuant to a California indemnification statute, but the plaintiff theorized "that the City's insurer will pay defense expenses." *Id.*; *see also* Cal. Gov't Code §§ 825, 825.2. Recognizing that an action against the city's officials "is an exercise of the well-known strategy of suing a sovereign by falsely pretending to sue an officer," the court in *Stockton* rejected the plaintiff's argument and held that the section 1983 action against the officials "'seeks to enforce a claim against the debtor' within the meaning of § 922(a)." *Stockton*, 484 B.R. at 376 (citations omitted). The *Stockton* court found it problematic that the city was exposed to the financial risk of the judgment, and, furthermore, that "[t]he City having undertaken the defense of the individual defendants, it follows that the expense of further litigation against them will deplete the coffers of the City treasury." *Id.* at 379.

13.     Similarly, in *San Bernardino*, the court denied the plaintiff's request for relief from the automatic stay to proceed with its civil rights action against the city and several city officials in federal district court, finding that sections 362(a) and 922(a) barred plaintiff's claims for injunctive relief against the city and its officials. 558 B.R. at 328 ("A lawsuit [seeking injunctive relief] unquestionably seeks to 'exercise control' over the estate's 'property' when it seeks to enjoin the debtor from certain uses of its income-producing property, or seeks to force the defendant to destroy its income-producing property"). The *San Bernardino* court premised its decision on the fact that the city's defense of the officials and the constraint upon the city's decision-making power affects the city's resources, including personnel costs and the making and enforcement of policy, in a way that the automatic stay is intended to protect. *Id.* at 329.

6

14.     Movant asserts claims against officials of the Commonwealth for monetary relief. Similar to the indemnification statute at issue in *Stockton*, under Law 104 and Regulation 8405, the Commonwealth both assumes the legal representation and payment of a subsequent adverse judgment against every official, ex-official, employee or ex-employee of the Commonwealth covered by provisions 3085-3092a. P.R. Laws Ann. tit.32, §§ 3085, 3092.[6] The Commonwealth bears the cost of litigation of suits, and pays for the vast majority of adverse judgments, against its employees and officials regardless of what capacity they are sued in. Movant will litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if they prevail, secure payment from the Commonwealth.

15.     In the instant case, even if Movant tried to bifurcate the claims against the Commonwealth and the officials, under Law 104 and Regulation 8405, the Commonwealth has the exclusive responsibility regarding the legal representation and payment of any judgment against the officer sued in his or her official and personal capacity. Like in *Stockton*, the claims against the Commonwealth officials, whether in their personal or official capacities, seek payment from the Commonwealth and are thus stayed under the Title III Stay. *See In re City of Stockton*, 484 B.R. at 376 ("To the extent that there is a judgment against the individuals, the City, having undertaken their defense, will be required to pay the judgment. Hence, the civil action against the individuals 'seeks to enforce a claim against the debtor' within the meaning of § 922(a)." (citations omitted)); *see also Cano-Rodríguez v. De Jesús-Cardona*, Case No. 16-1532 (1st. Cir. 2017), Appellate Doc. No. 00117225999 (issuing order confirming applicability of Title III Stay to

---

[6]   While the initial decision to either assume the representation of the officer-defendant or pay the adverse judgment lies with the Commonwealth's Secretary of Justice, Law 104 provides all officer-defendants with an avenue for judicial review. *See* 32 L.P.R.A. § 3087. Although the Commonwealth may initially decline to represent or pay the adverse judgment of an officer-defendant, the officer-defendant may seek judicial review of such denial and a court may well impose on the Commonwealth both the duty to defend, and the duty to indemnify from the adverse judgment. *Id.*

officials of the Commonwealth [in both their official and personal capacities]); *see also Alvin Marrero-Méndez, et al., v. Hector Pesquera, et al.*, Case No. 13-cv-1203 (JAG) (D.P.R. July 20, 2017), ECF No. 131 (finding that the Title III Stay applied to the movant's lawsuit in the District Court and stayed all of movant's claims, including movant's claim for equitable relief).

16.    As demonstrated by the *Stockton* decision, Movant's argument that they are somehow excepted from the Title III Stay with respect to the claims against the officials in their individual capacity is contrary to the prevailing case law.[7]  By pursuing their claims against the Commonwealth's officials regardless of their capacity, Movant is seeking to enforce a claim against the Commonwealth in an attempt to assert control over the Commonwealth's property, which triggers the application of the Title III Stay to the Lawsuit.

## II.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO LIFT THE STAY

17.    Movant has not established that cause exists to lift the Title III Stay. An order lifting the Title III Stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the Title III Stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).  To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth

---

[7]    Movant's reliance on *Guadalupe-Baez v. Pesquera*, 269 F. Supp. 3d 1 (D.P.R. 2017), is misplaced. The District Court's decision in *Guadalupe* is distinguishable in that the court's decision relied on the ability of the Commonwealth to decline representation of an official under Law 104. *Id.* at 3. In *Guadalupe*, the court did not make any finding as to whether the Commonwealth did assume representation in that case, however, the court noted that "a personal capacity claim for damages may or may not seek to 'enforce a claim' when the Commonwealth elects to provide representation." *Id.* Here, the Commonwealth has assumed the representation of the defendants. Accordingly, because the Commonwealth is responsible for the cost of defending and satisfying any judgments against the defendants, Movant is seeking to enforce a claim against the Commonwealth in violation of the Title III Stay.

in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

    (1)  whether relief would result in complete or partial resolution of the issues;

    (2)  the lack of any connection with or interference with the bankruptcy case;

    (3)  whether the foreign proceeding involves the debtor as fiduciary;

    (4)  whether a specialized tribunal has been established to hear the cause of action at issue;

    (5)  whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

    (6)  whether the action essentially involves third parties rather than the debtor;

    (7)  whether the litigation could prejudice the interest of other creditors;

    (8)  whether a judgment in the foreign action is subject to equitable subordination;

    (9)  whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

    (10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

    (11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

    (12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

    18.    Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R.

at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

19.      No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

20.      Here, the *Sonnax* factors point squarely toward maintaining the Title III Stay and against granting the relief requested in the Motion.

21.      ***Sonnax* Factor 1:**  The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the Title III Stay.  The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case.  *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

22.     Here, Movant has not attempted to show whether the first *Sonnax* factor weighs in favor of granting the Motion.  Indeed, that is because lifting the automatic stay would not resolve any issues relevant to the Commonwealth's Title III case.[8]  Movant's claims, if any, can be resolved through the claims resolution process to be undertaken in the Title III cases.  Therefore, the first *Sonnax* factor supports denying the Motion.

23.     ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay.  First, lifting or modifying the stay to allow the resolution of Movant's claim in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. The claims adjustment process under Title III applies with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

24.     As a potential, prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the Commonwealth to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration

---

[8]   For the avoidance of doubt, the Commonwealth and the Oversight Board reserve all rights and defenses relating to Movant's claims, including, without limitation, any rights to challenge any set-offs or to assert any set-offs and to impair and discharge Movant's claims.

of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

25.     Second, lifting or modifying the stay to proceed with the Lawsuit will interfere with the Title III case by diverting the Commonwealth's attention and resources to defending Movant's claims in another forum and will encourage other creditors to seek similar relief.  Should every plaintiff with an asserted prepetition claim be given carte blanche to litigate their claims, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget.  This would impede the restructuring process, and should be avoided.  *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

26.     In this regard, *In re City of Stockton* is instructive. There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374.  The plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case.  *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during

12

the period in which there is intense focus on the basic substantive issues in this chapter 9 case."
*Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

27.     Here, there are processes pending that are necessary for the Lawsuit to move forward, such as responding to the complaint, conducting discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.

28.     Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant's conclusory statement that plaintiff's "case has no connection with or bearing with the bankruptcy case" (Motion at 5, ¶ 11) fails to satisfy Movant's heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

29.     **_Sonnax_ Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion.  No specialized tribunal has been established to hear the Lawsuit.  Thus, *Sonnax* factor 4 weighs in

favor of denying the Motion.

30.     ***Sonnax*** **Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier

has assumed full financial responsibility for defending the litigation—does not support granting

the Motion.  No insurer of the Commonwealth has assumed full financial responsibility for

defending the Lawsuit, and Movant does not allege any facts to the contrary.  Thus, *Sonnax* factor

5 weighs in favor of denying the Motion.

31.     ***Sonnax*** **Factor 6**:  The sixth *Sonnax* factor—whether the action essentially

involves third parties rather than the debtor—does not support granting the Motion.  This factor is

not based on whether third parties are involved, but rather whether the Lawsuit primarily involves

third parties *rather than* the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641,

at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the

sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc.

(In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson

offers no argument or claim to show how the Bankruptcy Court abused its discretion in

determining that Grayson's claim in this action did not primarily involve third parties." (emphasis

in original)).

32.     In addition to the Commonwealth, the defendants in the Lawsuit include certain

inhabitants of the Commonwealth.  Despite Movant's incorrect assumption that the automatic stay

does not apply to "the claims made against them in the individual capacities," the inhabitants of

the Commonwealth who are named in the Lawsuit are protected under Bankruptcy Code section

922(a) as the Lawsuit seeks to enforce a claim against the Commonwealth. *See In re City of

Stockton*, 484 B.R. at 376.  Thus, the Lawsuit cannot be characterized as primarily involving third

parties and *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l,*

14

*Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate.").

33.     ***Sonnax* Factor 7**:   The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.   The Commonwealth would have to expend considerable time and expense to litigate the Lawsuit by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial.   Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.   *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").   Here, the depletion of the Commonwealth's resources to defend against the Lawsuit and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's other creditors.   Accordingly, *Sonnax* factor 7 does not support granting the Motion.

34.     ***Sonnax* Factors 10 and 11:** As discussed above, the Lawsuit is still at a preliminary stage, having been filed after the commencement of the Commonwealth's Title III case. There are processes pending that are necessary for the Lawsuit to move forward, such as responding to the

complaint, conducting and finalizing discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense. As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

35.     ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Lawsuit, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case.  Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

36.     On the other hand, postponing liquidation of Movant's claims is a hardship that is shared with other creditors in order for the Commonwealth to focus on its restructuring and

recovery efforts for the benefit of all creditors and would promote judicial economy. Any claim

Movant may have will be dealt with during the plan of adjustment process, as with any other

creditor's claims. Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[9]

## **CONCLUSION**

37.     Movant has failed to establish cause to justify lifting the automatic stay in the

Commonwealth's Title III case to allow the Lawsuit to proceed. Accordingly, and for the foregoing

reasons, the Court should deny the Motion.

Dated: June 20, 2018.
        San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

---

[9]   The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

17