# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>  Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>  Debtor. | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS<br><br>**RE: D.I. 869**<br><br>**This Objection Relates Only to PREPA and Shall be Filed in Case No. 17 BK-3283-LTS and in Case No. 17 BK 4780-LTS** |

THE PUERTO RICO ELECTRIC POWER AUTHORITY'S
OBJECTION TO M SOLAR'S MOTION FOR RELIEF FROM
AUTOMATIC STAY AND TO COMPEL THE PUERTO RICO ELECTRIC
POWER AUTHORIITY TO ASSUME OR REJECT THE EXECUTORY CONTRACT

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

| | | | |
|---|---|---|---:|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | BACKGROUND | | 3 |
| III. | ARGUMENT | | 4 |
| | A. | The Automatic Stays of both Bankruptcy Code Section 362 and PROMESA Section 405 are Inapplicable to the Agreement and the Substance of the Motion | 5 |
| | B. | Legal Standard to Lift the Automatic Stay | 6 |
| | C. | The *Sonnax* Factors Weigh Strongly in Favor of Maintaining the Automatic Stay | 7 |
| | D. | The Movant Has Failed to Show Cause that PREPA Should be Prematurely Compelled to Assume or Reject the Agreement | 10 |
| | E. | Motion Practice is an Inappropriate Means to Obtain Movant's Other Requested Relief | 11 |
| III. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**Cases**

*In re 234-6 West 22nd St. Corp.*,
 214 B.R. 751 (Bankr. S.D.N.Y. 1997) ................................................................................6

*In re Breitburn Energy Partners LP*,
 No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017) .....................................7

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
 217 F. Supp. 3d 508 (D.P.R. 2016) .....................................................................................7

*In re City of Stockton*,
 484 B.R. 372 (Bankr. E.D. Cal. 2012) .............................................................................8, 9

*In re Cummings*,
 221 B.R. 814 (Bankr. N.D. Ala. 1998) .................................................................................7

*In re Dana Corp.*,
 350 B.R. 144 (Bankr. S.D.N.Y. 2006) ................................................................................10

*In re FBI Distribution Corp.*,
 330 F.3d 36 (1st Cir. 2003) ................................................................................................10

*In re Jefferson City.*,
 491 B.R. 277 (Bankr. N.D. Ala. 2013) .................................................................................8

*In re Leibowitz*,
 147 B.R. 341 (Bankr. S.D.N.Y. 1992) ..............................................................................6, 7

*In re Murrin*,
 477 B.R. 99 (D. Minn. 2012) ................................................................................................7

*In re Plumberex Specialty Prods., Inc.*,
 311 B.R. 551 (Bankr. C.D. Cal. 2004) ................................................................................9

*In re Sonnax Indus., Inc.*,
 907 F.2d 1280 (2d Cir. 1990) ..........................................................................................6, 9

*In re Taub*,
 413 B.R. 55 (Bankr. E.D.N.Y. 2009) ...................................................................................7

*In re Unanue-Casal*,
 159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ............................................6

*Unisys Corp. v. Dataware Prods., Inc.*,
 848 F.2d 311 (1st Cir. 1988) ..............................................................................................6

**Statutes**

48 U.S.C. §§ 2101-2241 ............................................................................................................1

11 U.S.C. § 362(a) ......................................................................................................................5

11 U.S.C. § 362(d)(1) .................................................................................................................6

11 U.S.C. § 365(a) ............................................................................................................................10

To the Honorable United States District Judge Laura Taylor Swain:

On behalf of the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF")[2] pursuant to the authority granted to it under the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay and to Compel the Puerto Rico Electric Power to Assume or Reject the Executory Contract* [D.I. 869] ("Motion to Lift Stay") filed by M Solar Generating, LLC ("M Solar" or "Movant"). In support of the Objection, AAFAF respectfully states as follows:

I.  **PRELIMINARY STATEMENT**

Movant's Motion to Lift Stay should be denied for a number of reasons. While styled a motion for leave to lift the automatic stay, it appears from the requested relief that Movant's actual purpose is to force PREPA into prematurely assuming the Renewable Power Purchase and Operating Agreement, as amended (the "Agreement") between M Solar and PREPA. As discussed more fully below, Movant has failed to establish a basis for granting any of the requested relief and the Motion to Lift Stay should be denied.

As a provider of electricity to millions of people, PREPA has approximately 60 Power Purchase and Operating Agreements ("PPOAs") regarding electric generation projects that are in various stages of development. A few of the PPOAs relate to projects that are or have been operational and providing power to PREPA.[3] Other PPOAs relate to projects that are "shovel ready"—i.e., a PPOA has been executed and the permitting or development process has

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, has authorized AAFAF to file this Objection on behalf of PREPA.

[3] Some of these projects were in operation, but due to Hurricanes Irma and Maria in 2017, these projects currently are in various stages of repair or testing prior to providing power to PREPA pursuant to their PPOAs.

1

commenced, but the project is not yet operational. A significant number of the PPOAs relate to projects that are neither operating nor are deemed by PREPA to be shovel-ready. The M Solar project and Agreement is in the third category.

M Solar alleges that the Agreement relates to a Critical Project as defined in Title V of PROMESA and claims it is entitled to accelerated assumption of the Agreement, but it is not. A decision by the Oversight Board on which, if any, of the PPOAs (including M Solar's) will be designated as Critical Projects under Title V has not been made and is not required to be made at this juncture of the PREPA restructuring and transformation process. Accordingly, the M Solar project has no special status simply by having submitted itself to the Title V process. Moreover, designation as a Critical Project under Title V (which M Solar has not obtained) only entitles a project to expedited permitting – it is not a conclusion that the project will go forward or any related prepetition contracts will be assumed.

As reflected in PREPA's certified Fiscal Plan and other documents, PREPA, the Oversight Board, and the Commonwealth of Puerto Rico are devoting substantial resources and time to developing PREPA's transformation plan and are moving forward to do so at a rapid pace. PREPA, the Oversight Board, and the Commonwealth are also evaluating projects under Title V of PROMESA. The PPOAs are one of many pieces to PREPA's overall transformation plan. Significant decisions will have to be made by PREPA, the Oversight Board, and the Commonwealth regarding Title V projects, PREPA's transformation plan, and PREPA's Plan of Adjustment in the coming months. One part of that process will be the decision as to which PPOAs PREPA will assume or reject.

The Motion seeks relief from the automatic stay "for cause" under section 362(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") to: (a) "continue the process under Title V

2

of PROMESA for its [sic] certification as a "Critical Project" and, as a consequence, continue the execution of [its] contract with PREPA;" and (b) compel specific performance of an alleged prepetition Settlement Agreement. The Motion also seeks an order compelling PREPA to assume or reject the Agreement pursuant to section 365 of the Bankruptcy Code. The Movant does not require relief from the automatic stay to continue pursuing its application in the Title V process and cannot obtain specific performance of alleged prepetition contracts through stay relief, particularly since none of the subject agreements described in the Motion is subject to pending litigation. At bottom, the Movant is really seeking to compel PREPA to assume its Agreement.

Under section 365(d)(2) of the Bankruptcy Code (as incorporated into PROMESA), PREPA has until the date of the confirmation of a plan of adjustment to assume any and all executory contracts. Not until significant fundamental business and operating decisions are made as part of the PREPA's transformation plan and debt restructuring can PREPA make a final decision on assumption or rejection of any PPOA. Simply put, PREPA's transformation and restructuring will determine which PPOAs are assumed, not the other way around.

For the reasons set forth herein, therefore, the Motion should be denied.

## II.    BACKGROUND

At issue in the Motion is the Agreement executed between M Solar and PREPA in 2012 for M Solar to develop, construct, and operate a 50 MW photovoltaic solar energy facility (the "Project") in Manati, Puerto Rico and to connect the Project to PREPA's electric system. The Agreement contemplates that M Solar will sell exclusively to PREPA and PREPA will purchase the energy produced by the system. In 2015, M Solar filed a Demand for Arbitration against PREPA over its invocation of an automatic extension of time for the commencement of construction, and the arbitration was settled in the same year. According to the Motion, M Solar

3

submitted its proposed project to the Revitalization Coordinator in March 2017. (Mot. ¶ 12.) On July 2, 2017, PREPA filed a petition under PROMESA Title III, triggering the automatic stay.

The Movant alleges that in August 2017, it completed its project submittal to the Critical Projects Process established by the Oversight Board under Title V of PROMESA and further alleges that it is currently awaiting both permitting to commence construction and certification of the Project as a Critical Project according to Title V of PROMESA. (Mot. ¶¶ 3-27.) Contrary to M Solar's allegation that the Oversight Board is "in agreement to continue the process under title V of PROMESA for final certification of M Solar as a 'Critical Project'" (Mot. at 12), the Oversight Board has not made any determination regarding M Solar's approval as a Critical Project under PROMESA section 503(c). In fact, to date, the Revitalization Coordinator has not even made a recommendation about whether M Solar's proposed project should be considered a "Critical Project," nor has he submitted a Critical Project Report, pursuant to PROMESA section 503(b), to the Oversight Board with respect to M Solar's proposed project.

**III. ARGUMENT**

Granting M Solar's request to lift the automatic stay with respect to the Agreement and compelling PREPA to assume or reject it would unfairly prioritize M Solar over the interests of other PREPA creditors and unjustly compel PREPA into a significantly premature decision regarding the Agreement. This result would contradict both the purpose of Bankruptcy Code section 362 to provide the debtor temporary relief while it conducts an orderly adjustment of its debts, and the purpose of section 365 to allow a debtor until the confirmation of a plan to decide which of its executory contracts to assume and reject. As an initial matter, there is no litigation pending between M Solar and PREPA regarding either the Agreement or the alleged prepetition Settlement Agreement that is subject to the automatic stay. Even if there were, the Movant has failed to demonstrate cause for lifting the stay. Movant also failed to show cause for shortening

4

of the time period for PREPA to assume or reject the Agreement. PREPA's decision to assume or reject its PPOAs is one of many components to the overall transformation and plan of arrangement process. It is inappropriate and prejudicial for PREPA to be subject to piecemeal litigation from PPOA contracting parties seeking to jumpstart decisions on the assumption or rejection of individual PPOAs by the filing of premature motions to assume. The appropriate time to litigate the assumption or rejection of PPOAs is after PREPA, in conjunction with the Oversight Board and AAFAF, has determined which such contracts it will assume.

> A. **The Automatic Stays of both Bankruptcy Code Section 362 and PROMESA Section 405 are Inapplicable to the Agreement and the Substance of the Motion**

Although styled as a motion to lift the automatic stay, the Motion does not describe any scenario to which either the automatic stay of the Bankruptcy Code or PROMESA section 405[4] is presently applicable. PREPA, as a Title III debtor, is protected by the automatic stay, not pursuant to Title IV of PROMESA, but pursuant to section 362 of the Bankruptcy Code. The Motion, while requesting that the automatic stay be lifted, does not describe any proceeding, enforcement of judgment, or other act contemplated by section 362 subject to the automatic stay presently. *See* 11 U.S.C. § 362(a) (describing to what acts the automatic stay applies). The Motion itself described the automatic stay as "an automatic stay of all liability related litigation against PREPA" and then declines to mention any such litigation. (Mot. at 11.) At best, the Motion contemplates that M Solar is entitled to relief "for cause," but the relief it requests has no connection with the stay afforded PREPA under Title III. In absence of any pending proceeding subject to the automatic stay, the Motion's request for stay relief should be denied.

---

[4] PROMESA section 405(g), cited by the Movant as the basis for stay relief, applies only to the automatic stay imposed by PROMESA section 405(b). The PROMESA stay expired on May 1, 2017, and section 405, therefore, has no further application to PREPA or its Title III proceedings.

5

### B. Legal Standard to Lift the Automatic Stay

Even assuming *arguendo* that the automatic stay applies and Movant could identify some action the stay is preventing it from pursuing, the Movant has failed to meet its burden to show cause for lifting the stay. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). The purpose of the automatic stay is to provide the debtor "a breathing spell from his creditors and forestall[] a race of diligence by creditors for the debtor's assets." *Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) (internal quotations omitted).

As such, a court may lift the automatic stay only upon a showing of cause. *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *See In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). In deciding whether "cause" to lift a stay exists, courts in this Circuit typically balance a number of factors, including:

(1) whether relief would result in complete or partial resolution of the issues;
(2) the lack of any connection with or interference with the bankruptcy case;
(3) whether the foreign proceeding involves the debtor as fiduciary;
(4) whether a specialized tribunal has been established to hear the cause of action at issue;
(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) whether the action essentially involves third parties rather than the debtor;
(7) whether the litigation could prejudice the interest of other creditors;
(8) whether a judgment in the foreign action is subject to equitable subordination;
(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
(12) the impact of the stay on the parties and the "balance of hurt."

*See id.* at 95-96. These are commonly referred to as the "*Sonnax* factors" because they derive from *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

6

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place exceeds the harm caused by lifting it. *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016). The Movant bears the burden of establishing cause, *see id.*, and, given that they are not secured claimholders asserting a lack of adequate protection, their burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992).

C. **The *Sonnax* Factors Weigh Strongly in Favor of Maintaining the Automatic Stay**

As more fully explained below, *Sonnax* factors one, two, seven, ten, eleven, and twelve apply here and all weigh against lifting the stay.[5]

The first *Sonnax* factor—whether relief would result in a complete or partial resolution of the issues—focuses on whether allowing the litigation to proceed would expeditiously resolve issues relevant to the bankruptcy case. *See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009). This first factor not only relates to whether lifting the stay would result in complete resolution of the underlying stayed case, but also to whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). The disposition of the Agreement, however, will not in any way resolve issues relevant to PREPA's Title III

---

[5] The remaining *Sonnax* factors three, four, five, six, eight, and nine—*i.e.*, whether the foreign proceeding involves the debtor as a fiduciary, whether a specialized tribunal has been established to hear the cause of action at issue, whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation, whether the action essentially involves third parties rather than the debtor, whether a judgment in the foreign action is subject to equitable subordination, and whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor respectively—are not addressed as they are inapplicable here.

7

proceeding, and in many ways a premature determination regarding the status of the Agreement could complicate, rather than resolve, PREPA's Title III case.

The second *Sonnax* factor also weighs against lifting the stay. Just as this Court has stated when denying other requests for stay relief or modifications in this Title III case, to require PREPA to act on the Agreement "would prejudice PREPA at a time when its resources are constrained by requiring the expenditure of PREPA's already depleted resources (both financial and personnel) and diverting attention from the reconstruction of PREPA's electrical grid and future planning." *See* Dkt. Nos. 814 and 815.[6] Requiring PREPA to act on the Agreement as the Motion contemplates would divert PREPA's resources—financial as well as personnel—that are essential to PREPA's reorganization and recovery efforts. *See In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (declining to lift the stay because the stayed action "necessarily would consume the time and attention" of the debtor when the debtor's "undivided time and attention" was required by the bankruptcy case); *In re Jefferson City.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) ("[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"). As a result, the second *Sonnax* factor supports denial of the Motion.

*Sonnax* factor seven likewise in favor of the maintenance of any automatic stay. Granting the Motion's requested relief would prejudice the interests of all other creditors by prematurely requiring PREPA to assume or reject the Agreement and would be unfairly preferential to M Solar to the detriment of other creditors. Any time consumed by addressing the Agreement is time creditors would prefer PREPA to spend on its recovery and reorganization. Any money or resources expended by PREPA due to granting the Motion's requested relief

---

[6] PREPA Dkt. 814 and 815 are the Court's memorandum orders denying relief from stay requested by Wide Range Corporation and Master Link Corporation, respectively.

8

would be diverted from PREPA's already strained resources, a factor that courts have recognized counsels against lifting a bankruptcy stay. *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 563–64 (Bankr. C.D. Cal. 2004) (rejecting an effort to lift the stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re City of Stockton*, 484 B.R. at 379 (declining to lift the stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

*Sonnax* factors ten and eleven also support maintaining the automatic stay because there is no ongoing litigation whatsoever. The interest of judicial economy in litigation cannot be served where there is no litigation to be resolved, much less be resolved either expeditiously or economically. *See Sonnax*, 907 F.2d at 1286. Likewise, factor eleven strongly favors the maintenance of the automatic stay because the parties are in no manner prepared for trial regarding the Agreement – indeed, no litigation regarding the Agreement or relating to the relief requested by M Solar has even been commenced!

Finally, the twelfth *Sonnax* factor—the impact of the stay on the parties and the "balance of hurt"—strongly weighs in favor of maintaining the stay. While the Movant contends that "the balance of harms tips decidedly in favor of M Solar," it has failed to meaningfully support this assertion. PREPA can and will resolve any issues relating to the Agreement, by choosing to assume or reject it, in due course. To the contrary, for the reasons set forth herein, PREPA, its creditors, and the residents of Puerto Rico would suffer harm should the stay be lifted and the Movant's true request – an order compelling early assumption or rejection – be granted. Therefore, under the twelfth *Sonnax* factor, the balance of equities weighs in favor of denying the Motion.

9

### D. The Movant Has Failed to Show Cause that PREPA Should be Prematurely Compelled to Assume or Reject the Agreement

The Movant has likewise failed to show cause that the timeframe for PREPA to assume or reject the Agreement should be shortened at all, let alone such that PREPA must decide by June 30, 2018 (eight days from now). Pursuant to section 365 of the Bankruptcy Code, a debtor is authorized, subject to the court's approval, to assume or reject any pre-petition executory contract. 11 U.S.C. § 365(a). Absent a showing of cause, the debtor may make the decision to affirm or reject "at any time prior to the confirmation of the plan . . . to determine which of the prepetition executory contracts are beneficial to the estate and which should be assumed or rejected." *In re FBI Distribution Corp.*, 330 F.3d 36, 42 (1st Cir. 2003). But "[w]here a party seeks to shorten the Debtor's statutory period to assume or reject, the burden is on the movant to demonstrate cause." *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006). In determining whether the movant has met this burden, courts consider a variety of factors, including:

1) the importance of the contracts to the debtor's business and reorganization;
2) the debtor's failure or ability to satisfy postpetition obligations;
3) the nature of the interests at stake;
4) the balance of hurt to the litigants and the good to be achieved;
5) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan;
6) the safeguards afforded the litigants;
7) the damage the nondebtor will suffer beyond the compensation available under the Bankruptcy Code;
8) whether there is a need for judicial determination as to whether an executory contract exists;
9) whether exclusivity has been terminated;
10) whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; and
11) the purpose of chapter 11, which is to permit successful rehabilitation of debtors.

*See id.* at 148. M Solar failed to meet the burden of showing that these factors support the profound interference in PREPA's rehabilitation and restructuring, arguing only that "[i]t is not

10

unreasonable to expect" that PREPA should know if it will assume or reject the Agreement. To the contrary, it is manifestly unreasonable that M Solar should demand that PREPA take premature action on an executory contract well before (a) its privatization structure, transactions, and counterparties have been identified, and (b) a plan of adjustment is in sight. As discussed above, PREPA's operations and generation concerns are massive, complex, and require a holistic and integrated approach to effectively address and manage. These interests, as well as the interest in PREPA's successful transformation and rehabilitation, massively outweigh any interest in M Solar receiving certainty regarding its Agreement, which will be fully considered and addressed in due course. At this time, PREPA must develop its case and focus all of its efforts on its restoration, its marketing process for privatization, and debt restructuring, rather than piecemeal determinations of whether to assume or reject contracts that may or may not be beneficial to its Title III efforts.

    **E.**  **Motion Practice is an Inappropriate Means to Obtain Movant's Other Requested Relief**

Finally, to the extent the Motion requests specific performance by PREPA under its alleged prepetition Settlement Agreement, or other legal remedies or relief other than the lifting of an automatic stay or the assumption or rejection of the Agreement, the Motion is an inappropriate means to obtain such relief. If M Solar believes that PREPA has failed to fulfil its contractual obligations and it is entitled to specific performance despite the automatic stay, it can file a proper request for stay relief to pursue its alleged prepetition rights. Accordingly, PREPA requests that the Court deny M Solar's request for any direct contractual relief or remedies on the grounds that the Motion is an inappropriate method for obtaining such relief or remedies.

### III. CONCLUSION

For the reasons set forth above, the Movant has failed to show that cause exists to lift or modify the automatic stay, or to compel PREPA to assume or reject the Agreement before confirmation of a plan of adjustment, and this Court should decline to do either. PREPA therefore respectfully requests that the Motion be denied.

Dated: June 22, 2018

Respectfully Submitted,

/s/ Kevin D. Finger
Nancy A. Mitchell (Admitted *Pro Hac Vice*)
Nathan A. Haynes (Admitted *Pro Hac Vice*)
**GREENBERG TRAURIG LLP**
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Fax: (212) 801-6400
Email: mitchelln@gtlaw.com
haynesn@gtlaw.com

David D. Cleary (admitted *pro hac vice*)
Kevin D. Finger (admitted *pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
Email: clearyd@gtlaw.com
fingerk@gtlaw.com

/s/ Katiuska Bolaños-Lugo
Arturo Diaz-Angueira (USDC No. 117907)
Katiuska Bolaños-Lugo (USDC No. 231812)
**CANCIO, NADAL, RIVERA & DIAZ, PSC**
403 Muñoz Rivera Ave.
San Juan, PR 00918-3345
Tel: (787) 767-9625
Fax: (787) 622-2230
Email: adiaz@cnrd.com
kbolanos@cnrd.com

*Attorneys for Puerto Rico Electric Power Authority*

Joseph P. Davis III (admitted *pro hac vice*)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001
Email: davisjo@gtlaw.com

*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority*

12

**CERTIFICATION**

I hereby certify that an electronic copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record in the captioned case.

/s/ *Kevin D. Finger*