**Hearing Date**: July 25, 2018 at 9:30 a.m. (AST)
**Objection Date**: July 10, 2018 at 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------------- x
: 
In re: :
 :
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
 :
    as representative of : Case No. 17-BK-3283 (LTS)
 :
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
 :
    Debtors.[1] :
----------------------------------------------------------------------- x

## CREDITORS' COMMITTEE'S INFORMATIVE MOTION REGARDING RENEWED RULE 2004 MOTION AND DISCOVERY ITEMS TO BE ADDRESSED AT JULY 25, 2018 OMNIBUS HEARING

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

To the Honorable United States Magistrate Judge Judith G. Dein:

The Official Committee of Unsecured Creditors of all title III debtors (other than COFINA) (the "Committee") hereby submits this *Informative Motion Regarding Renewed Rule 2004 Motion and Discovery Items to Be Addressed at July 25, 2018 Omnibus Hearing* (the "Informative Motion"), outlining the items that, in the Committee's view, should be addressed at the July 25, 2018 Omnibus Hearing as part of the continuation of the court's consideration of the Committee's *Renewed Motion Seeking Entry of Order, Under Bankruptcy Rule 2004, Authorizing Discovery With Respect to Certain Causes of Puerto Rico Financial Crisis Beginning On August 15, 2018* [Dkt. 3066] (the "Renewed Motion").[1] The items outlined in greater detail below represent discrete categories of materials that (a) may not otherwise be addressed as part of the Investigator's proposed "exit plan" because they may not have been requested or received by the Investigator; and (b) should be provided to the Committee before the August 15, 2018 publication date of the Investigator's report in order to allow the Committee to evaluate the scope of any remaining discovery efforts that may be necessary.

## Introduction

1. At the June 6, 2018 hearing on the Committee's Renewed Motion, the court made its views amply clear—the Committee should not be kept in the dark with regard to what materials have been produced to the Investigator. As the court explained:

> The overarching thing that I wanted to say is that the Committee is going to get these documents. All right? **Because I'm not going to end up in a fight about**

---

[1] Because the Renewed Motion has been adjourned to the July 25, 2018 Omnibus Hearing, *see* June 19, 2018 Order Regarding Rule 2004 Motion [Dkt. 3317] and remains before the court, this motion has been styled as an "informative" motion to ensure that these items are addressed at the Omnibus Hearing. Accordingly, the Committee adopts and incorporates all of the arguments made in the briefing on the Renewed Motion. Further, capitalized terms used but not otherwise defined in this Renewed Motion have the meanings set forth in the Renewed Motion or the *Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery Program With Respect to Certain Causes of Puerto Rico Financial Crisis* [Docket No. 706] (the "Rule 2004 Motion").

1

> **whether investigations are duplicative because the Committee doesn't know what documents have already been produced.**
>
> The whole point of this was so that the financial institutions didn't have to do the same searches multiple times. All right? **But the Committee can't be in a position of saying I want these documents, and then not knowing whether or not they've been produced.**
>
> So that's not a fight I'm willing to have. And if I have to just open the doors to make sure it doesn't happen, I will do that.

Ex. 1, Hr'g Tr. 127:21–128:8, June 6, 2018 Transcript of Rule 2004 Hearing.

    2.     Unfortunately, the negotiating posture taken by the Oversight Board's Investigator[2] has made that concern a reality, and the Investigator has failed to answer whether specific materials have been reviewed or produced. To date, the Investigator has never stated whether it has received specific, discrete categories of items that are relevant to the Committee's claims-identification efforts:

- GDB Board of Directors materials (including meeting minutes, agendas, board books, and presentations, including for all subcommittees of the GDB Board such as audit, risk, or governance committees);

- GDB insurance policies covering director and officer liability; and

- Productions made by the Puerto Rico Financial Institutions to regulators (SEC, FINRA, etc.) in connection with investigations by those regulators.[3]

    3.     As such, the Committee files this Informative Motion to request that the treatment of these categories of materials be addressed at the July 25, 2018 Omnibus Hearing. As the Committee will argue at the Omnibus Hearing, these documents should all be produced

---

[2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ When counsel for GDB was asked whether it had produced board materials or D&O policies, it demurred, stating that "[a]s for documents outside the Relativity database, PROMESA section 104(c)(2), subject to its terms, affords the Oversight Board access to any and all documents at GDB." See Ex. 2, Email from B. Sushon to B. Gray (July 2, 2018).

[3] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2

immediately, not after August 15, 2018, because (a) to the extent such materials were not collected by the Investigator to begin with, they will not be addressed in the proposed "exit plan"; and (b) these documents are of special importance not just to the Committee's ability to evaluate claims, but to the Committee's review of the completeness of the Investigator's final report and its determination of whether additional discovery may be warranted. Production of these necessary documents was sought almost a year ago in the document requests attached to the original Rule 2004 Motion that the Committee filed on July 21, 2017.

4. Aside from these categories of documents, though, the Committee seeks to ensure that another, related issue is addressed at the July 25, 2018 Omnibus Hearing. GDB and the Investigator have failed to provide information regarding the general scope of the Investigator's review of GDB documents and the Investigator's requests for "production" of certain documents—effectively blinding the Committee when it comes to the GDB source material considered by the Investigator in preparing its report. While the Committee anticipates that its concerns with the review of GDB documents will be addressed in its briefing on the Investigator's proposed exit plan, it presents this concern to the court simply to ensure that all issues are considered together at the July 25, 2018 Omnibus Hearing, and so that all parties have an opportunity to be prepared to address such issues at the July 25, 2018 Omnibus Hearing.

I. **COMMITTEE HAS NO WAY OF KNOWING WHETHER IMPORTANT CATEGORIES OF DOCUMENTS HAVE BEEN OR WILL BE PRODUCED**

5. Despite multiple requests, the Investigator has not answered whether it has obtained specific categories of materials including, for example:

- GDB D&O Policies: The Committee has made multiple requests for GDB to voluntarily produce copies of any insurance policies for GDB's current or former directors and officers, and each time the GDB has failed to provide these policies. Indeed, the Committee has asked the Investigator and GDB whether

3

these have even been **produced** to the Investigator, and has yet to receive an answer.[4]

- GDB Board Materials: ████████████████████████████████████
████████████████████████████████████████████████████ The Committee has asked the Investigator and GBD to confirm whether GDB Board materials (including meeting minutes, agendas, board books, and presentations) have been requested, collected, or produced as part of the Investigator's work, and has yet to receive a response.[6]

- Regulator Productions from the Puerto Rico Financial Institutions: One of the Committee's original requests to the Puerto Rico Financial Institutions was for all of the productions made by those institutions to regulators (SEC, FINRA, etc.) in connection with any investigations into the issuance, underwriting, or sale of Puerto Rico bonds.[7] ████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

6. These documents, by their very nature, remain highly relevant to the Committee's claims-identification efforts and, had the Committee been entitled to commence its discovery program, would have been some of the first materials demanded at the outset of the Committee's

---

[4] These items were directly requested by the Committee almost a year ago, on July 21, 2017, when the Committee filed its Rule 2004 Motion. *See* Committee's Rule 2004 Mot., Ex. H, Request No. 24 to GDB [Dkt. No. 706-8] ("Copies of any insurance policies covering GDB director & officer liability.").

[5] ███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

[6] As with the D&O policies, these were requested of GDB as part of its original Rule 2004 Motion. *See id.*, Request No. 35 to GDB ("All board of directors materials, including but not limited to all board books, meeting minutes and presentations, concerning the Commonwealth Municipal Bonds or the Puerto Rico Bond Funds, including, but not limited to, the risks thereof."). To be clear, such materials should be produced to the extent they relate to the GDB Board itself, or any subcommittees of the Board—including but not limited to risk committees, audit committees, or governance committees.

[7] *See, e.g.*, Committee's Rule 2004 Mot., Ex. B [Dkt. 706-2], Request No. 51 ("All Documents or Communications produced to any Regulator which relate in any way to Popular's relationship with the Commonwealth, the Commonwealth Municipal Bonds, or any of the Puerto Rico Bond Funds."). Similar requests were made of the other Popular and Santander entities, as well as the GDB.

[8] ███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

4

work. Accordingly, as the court has directed, the Committee cannot be left uninformed as to whether documents like these have been received by the Investigator or will be incorporated into the Investigator's final report.

## II. "DAY ONE" DOCUMENTS SHOULD BE PRODUCED TO COMMITTEE IMMEDIATELY

7. Although the Committee is entitled to know as an initial matter whether these materials were collected, there is no reason why they cannot also be produced immediately. First, to the extent that these documents were **not** collected by the Investigator, they will not be addressed in connection with the proposed "exit plan." ███████████████████████████████████████████████████████████████████████████. Because these materials are plainly relevant to the Committee's efforts, the failure to address them now only leads to unnecessary delay, needlessly forcing such discussions to be addressed in September or October.

8. However, even if some of these materials were indeed produced to the Investigator and would otherwise be covered in the proposed exit plan, production at this time is still warranted. These categories of documents are relevant not only to the Committee's claims identification efforts and its overall investigation, but are of special importance for the question of evaluating whether additional discovery is necessary **at all**. For example, the GDB Board materials, including minutes of Board meetings or any subcommittee meetings (e.g., audit, risk, or governance committees), will likely outline the specific contours of what was discussed and examined (or left unexamined) as part of the Board members' oversight of GDB's involvement in the issuance of Puerto Rico debt. In that respect, the Board materials will provide a high-level "inventory" of the issues considered by GDB and will demonstrate whether there are areas of concern that were not reflected in the Investigator's report that warrant a deeper dive. In fact, the

5

few documents produced by GDB to date highlight the centrality of these Board materials to the GDB's involvement in Puerto Rico's financial crisis. For example, ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Likewise, as is always the case, the D&O policies may help show the **value** of any potential claims against individuals who presently or formerly served at GDB—a question that must always be weighed against the costs of pursuing any such claims. As a result, the D&O policies are particularly important to inform the Committee's decision to pursue targeted discovery, including depositions, of certain individuals.

9. Moreover, with regard to the regulator productions, the Committee is aware of at least a number of investigations conducted by the SEC and FINRA that pertain to the Puerto Rico Financial Institutions' involvement in the issuance, underwriting, or sale of Puerto Rico bonds—including, for example, an extensive SEC investigation into the 2014 issuance of GO bonds, and FINRA regulatory actions against certain of the Santander entities for their part in the sale of various Puerto Rico bond funds.[9] These productions themselves can inform whether certain issues warrant further inquiry, or whether the Investigator's review was incomplete in certain respects. In fact, ████████████████████████████████

████████████████████████████████████████████████

---

9   *See, e.g.*, Nick Brown, *SEC Ends Probe into Puerto Rico's $3.5 Billion 2014 Bond Issuance: Sources,* REUTERS (Apr. 9, 2018), https://www.reuters.com/article/us-puertorico-debt-sec/sec-ends-probe-into-puerto-ricos-3-5-billion-2014-bond-issuance-sources-idUSKBN1HH05C; *see also* FINRA, ACCEPTANCE, WAIVER, AND CONSENT OF SANTANDER SECURITIES LLC, No. 2014-041355501 (Sept. 18, 2015), http://www.finra.org/sites/default/files/fda_documents/201404135501_FDA_SU7X9391.pdf.

6

████████████████████ As a result, as the Committee will argue at the July 25, 2018 Omnibus Hearing, the Committee should at least be entitled to understand now (a) which of the Puerto Rico Financial Institutions were requested by regulators to produce materials in connection with any relevant investigations; (b) which regulators made those requests and the scope of any such requests; and (c) what documents were ultimately produced. There is also no reason that the meet-and-confer process regarding such productions cannot begin immediately. The Committee's engagement with the Puerto Rico Financial Institutions regarding these productions cannot in any way impede the Investigator's work. ████████████████████

████████████████████████████████████████

████████████████████████

10. None of these requests should impose an undue burden (or hardly any burden at all) on GDB or the other Puerto Rico Financial Institutions. The GDB Board materials and D&O policies should be readily accessible in GDB's records without any custodial collections of any kind. Likewise, as to the regulator productions (which the Committee seeks to obtain from all of the Puerto Rico Financial Institutions), there is no reason that such productions cannot **also** be made to the Committee with no additional effort—as they were already prepared and produced in connection with the regulators' investigations.[10]

---

[10] *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 399 (Bankr. W.D. Pa. 2008) ("Since Countrywide has already voluntarily agreed to provide this information to the Chapter 13 Trustee there is no reason why the UST should not also receive similar information here."); *Munoz v. PHH Corp.*, 1:08-cv-0759-AWI-BAM, 2013 WL 684388, at *6 (E.D. Cal. Feb. 22, 2013) ("In sum, the Court finds that the CFPB documents are relevant to Plaintiffs' claims and have already been produced as discovery in the CFPB investigation into Defendants' potential RESPA violations. Defendants will suffer little if any burden by producing the documents as they are kept in their normal course of business because these documents have already been produced.").

7

### III. GDB AND INVESTIGATOR SHOULD SHARE INFORMATION REGARDING INVESTIGATOR'S REVIEW OF GDB DOCUMENTS IN ORDER FOR COMMITTEE TO EVALUATE REPORT

11. The Committee raises this final issue in an abundance of caution and for the sole purpose of ensuring that it will be addressed at the July 25, 2018 Omnibus Hearing, but notes that GDB and the Investigator have yet to outline precisely how the Investigator's review process narrowed a universe of approximately ▮▮▮▮▮ GDB documents down to approximately ▮▮▮▮▮. To date, the Investigator and GDB have provided only cursory answers on this topic, indicating only that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[11]

12. The Committee anticipates briefing these issues in any objection it files regarding the Investigator's proposed "exit plan," but seeks to ensure through this Informative Motion that, as the court has directed, the Committee is not left guessing on August 15 whether documents were in fact made available for the Investigator's review and incorporated into its final report.

---

[11] The GDB provided a categorical privilege log to the Committee on June 20, 2018, and the Committees (the Committee and the Retiree Committee) raised a number of concerns regarding the inappropriateness of that log—including the assertion of "common interest privilege" without identifying the parties with whom a common interest was shared, the extensive references to outside "consultants," and other issues. As a result, GDB has offered to provide a document-by-document log but has not committed to when that log would be finalized. While the Committee remains of the view that any documents provided to the Investigator may have been waived, it is entitled to review this document-by-document log first in order to fully evaluate the scope of any privilege claims asserted by GDB.

8

## **CONCLUSION**

For the reasons stated above, the Committee requests that all of the issues outlined above be addressed in detail at the July 25, 2018 Omnibus Hearing.

*--- Remainder of page intentionally left blank ---*

9

Dated: July 3, 2018 <u>/s/ Luc A. Despins, Esq.</u>

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and –

<u>/s/ Juan J. Casillas Ayala, Esq.</u>

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

10