**Hearing Date:** July 25, 2018, 9:30 a.m. (AST)
**Objection Deadline:** July 12, 2018

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

---------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## MOTION OF THE INDEPENDENT INVESTIGATOR
## FOR AN ORDER: (I) ESTABLISHING PROCEDURES FOR RESOLVING
## ANY CONFIDENTIALITY DISPUTE IN CONNECTION WITH PUBLICATION
## OF THE INDEPENDENT INVESTIGATOR'S FINAL REPORT; (II) APPROVING
## THE DISPOSITION OF DOCUMENTS AND INFORMATION; (III) RELIEVING
## THE INDEPENDENT INVESTIGATOR FROM CERTAIN DISCOVERY
## OBLIGATIONS; (IV) EXCULPATING THE INDEPENDENT INVESTIGATOR IN
## CONNECTION WITH THE INVESTIGATION AND PUBLICATION
## OF THE FINAL REPORT; AND (V) GRANTING RELATED RELIEF

     Kobre & Kim LLP, the independent investigator (the "Independent Investigator")

retained by the Financial Oversight and Management Board for Puerto Rico (the "Oversight

Board"), acting by and through the Special Investigation Committee of the Oversight Board

(the "Special Investigation Committee"),[2] submits this motion (the "Motion") for an order,

substantially in the form attached hereto as Exhibit A (the "Proposed Order"), under sections

---

[1] The debtors in the above referenced cases (the "Title III Cases"), along with each debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284(LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (collectively, the "Debtors").
[2] The Special Investigation Committee of the Oversight Board comprises of Members Ana J. Matosantos, David A. Skeel, and Judge Arthur J. Gonzalez (Ret.), and is charged with pursuing investigations pursuant to the authority granted to the Oversight Board by PROMESA Section 104(o) and such other authority vested in the Oversight Board under PROMESA.

104(k), (o), (p), 105, 106(a), 306(a), and 307(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[3] sections 105(a), 107(a) and (b) of the Bankruptcy Code,[4] as incorporated by section 301(a) of PROMESA, Rules 7026(c)(1) and 9018 of the Federal Rules of Bankruptcy Procedure, as incorporated by section 310 of PROMESA, and Rules 502(a), (b), (d), (e), (f) and (g) and 1101 of the Federal Rules of Evidence: (i) establishing procedures for resolving any confidentiality dispute in connection with publication of the Independent Investigator's final report (the "Final Report"); (ii) approving the disposition of certain documents and information; (iii) relieving the Independent Investigator from certain discovery obligations; (iv) exculpating the Independent Investigator in connection with the Investigation and publication of the Final Report; and (vi) granting related relief.    In support of the Motion, the Independent Investigator respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Independent Investigator is concluding its Investigation and intends to publish the Final Report, as required by section 104(p) of PROMESA.  The Independent Investigator intends to publish the Final Report no later than August 15, 2018.  The Investigation has relied upon, and has been made possible by, the voluntary cooperation of more than 150 witnesses and parties in interest—including former and current senior government officials and various financial institutions, rating agencies, financial advisors, professionals, and regulators.  Each of the parties that produced documents or shared information with the Independent Investigator (the "Disclosing Parties") did so with the knowledge that such documents or information might be relied upon by the Independent Investigator in the Final Report.

---

[3] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.
[4] The Bankruptcy Code is codified in 11 U.S.C. § 101 *et seq.*, and is referred to herein as the Bankruptcy Code.

2.      As is typical in an investigation, the Independent Investigator's Final Report will discuss information that has been designated as confidential by certain Disclosing Parties.  By filing this Motion, the Independent Investigator seeks judicial assistance in establishing uniform procedures for resolving objections, if any, to the Independent Investigator's publication of confidential information, to the extent discussed in or attached as exhibits to the Independent Investigator's Final Report.  Specifically, the procedures will (i) provide Disclosing Parties with advance notice of the planned publication of their confidential information, if required by a non-disclosure agreement, (ii) require those Disclosing Parties to meet and confer with the Independent Investigator to resolve any dispute over the publication of their confidential information, and (iii) if the dispute cannot be resolved consensually, provide Disclosing Parties the opportunity to seek a protective order or similar relief before such information is disclosed.  These procedures will assist the Independent Investigator in fulfilling its mandate under PROMESA, while at the same time protecting the rights of Disclosing Parties.  By establishing a meet and confer process and funneling any disputes to a single forum, the procedures will also conserve resources.

3.      Following the publication of the Final Report, the Independent Investigator intends to transfer various documents in its possession to a centralized document depository for which parties in interest or members of the public may seek access in the future.  By this Motion, the Independent Investigator seeks approval of procedures for the transfer, storage, and disposition of materials collected during the Investigation and procedures for access to the centralized document depository.

4.      Under section 105 of PROMESA, the Independent Investigator seeks to be exculpated from liability in connection with the Investigation and the Final Report.  Consistent with the relief granted to bankruptcy examiners at the conclusion of their engagements, the Independent Investigator also seeks to be relieved from certain discovery

3

obligations in the future.  As set forth more fully below, such relief will help ensure the integrity and independence of the Investigation, which in turn benefits all parties in interest and the public.

5.      The relief sought in the Motion is consistent with the Independent Investigator's overall objective to assist the Oversight Board in achieving its mandate under PROMESA in the most effective and efficient way, while maintaining the independence and disinterestedness of the Independent Investigator.  Moreover, the relief sought is in the public interest, necessary to enable the Independent Investigator to fulfill its duties and responsibilities under PROMESA, and provides a transparent, cost-effective, and efficient process for concluding the Investigation and publishing the Final Report.  For all these reasons and those set forth below, the Independent Investigator respectfully requests approval of the Motion.

## **JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this matter under sections 106(a) and 306(a)(2) of PROMESA.  This matter arises out of PROMESA, including: (i) section 104(o), which provides the authority for the Independent Investigator to conduct the Investigation on behalf of the Oversight Board, acting by and through the Special Investigation Committee; (ii) section 104(p), which requires the publication of the findings of any investigation referenced in section 104(o); and (iii) section 104(k), which authorizes the Oversight Board, and thereby the Independent Investigator retained by the Special Investigation Committee, to seek judicial enforcement of its authority to carry out its responsibilities under PROMESA.

7.      This matter is "related to" the Debtors' Title III Cases because the Investigation and Final Report may affect the Debtors to the extent the Independent Investigator, among other things, identifies claims or defenses that impact the value of the

Debtors' estates.[5]   In addition, the Investigation has involved an extensive review of

documents and information concerning the Debtors, and many of the Disclosing Parties are

parties in interest in the Title III Cases.  Further, the Investigation is related to numerous

matters that have already been addressed by the Honorable United States District Judge Laura

Taylor Swain and the Honorable United States Magistrate Judge Judith Gail Dein in the

Debtors' Title III Cases.  Such matters include the Debtors' ongoing restructuring efforts, the

scope of certain claims of privilege and confidentiality asserted by parties in the Title III

Cases,[6] and the motions of the Official Committee of Unsecured Creditors (the "Creditors'

Committee") for discovery with respect to the causes of Puerto Rico's financial crisis.[7]

Indeed, Judge Dein is already familiar with the relief requested herein and its overlap with the

Title III Cases and specifically ordered the Independent Investigator to file this Motion by

July 3, 2018.[8]   Thus, this Motion is filed in the Title III Cases, as a related matter, and to

allow this Court to consider the relief requested herein in connection with any decision on the

pending discovery motion of the Creditors' Committee.

8.     Venue is proper in this district under sections 104(k), 106(a), and 307(a) of

PROMESA.

9.     The statutory predicates for the relief requested in this matter are sections

104(k), (o), (p), 105, and 106(a) of PROMESA, sections 105(a), 107(a) and (b) of the

Bankruptcy Code, as incorporated by section 301(a) of PROMESA, Rules 7026(c)(1) and

---

[5] *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*, 872 F.3d 57 (1st Cir. 2017)
("PROMESA grants original and exclusive jurisdiction to the federal courts to deal with cases that arise under
this legislation, particularly those matters that affect Title III of PROMESA.").

[6] *See, e.g.*, Order dated February 23, 2018, entered by Judge Swain in the Debtors' Title III Cases (ECF No.
2590); *see also* Stipulated Disclosure Agreement and Protective Order dated April 2, 2018, entered by Judge
Swain in the Debtors' Title III Cases (ECF No. 2832).

[7] *See* Motion of Official Committee of Unsecured Creditors for Order, under Bankruptcy Rule 2004,
Authorizing Discovery Program with Respect to Certain Causes of Puerto Rico Financial Crisis dated July 21,
2017 (ECF No. 706).  *See also* Renewed Motion of Creditors' Committee Seeking Entry of Order, under
Bankruptcy Rule 2004, Authorizing Discovery Program with respect to Certain Causes of Puerto Rico Financial
Crisis Beginning on August 15, 2018, dated May 15, 2018 (ECF No. 3066).

[8] *See* Order dated June 19, 2018, entered by Judge Dein in the Debtors' Title III Cases (ECF No. 3317).

9018 of the Federal Rules of Bankruptcy Procedure, as incorporated by section 310 of PROMESA, and Rules 502(a), (b), (d), (e), (f) and (g) and 1101 of the Federal Rules of Evidence.

## BACKGROUND

### A.    The Debtors' Title III Cases

10.    In June 2016, PROMESA was enacted by the U.S. Congress and signed into law to provide, among other things, federal statutory authority under which the Commonwealth of Puerto Rico ("Puerto Rico") and its instrumentalities may restructure their debts.[9]

11.    On May 3, 2017, the Oversight Board commenced a debt adjustment proceeding on behalf of Puerto Rico under Title III of PROMESA by filing a voluntary petition for relief under section 304(a) of PROMESA.   Thereafter, the Oversight Board commenced the other Title III Cases.  By order dated June 29, 2017, Judge Swain approved the joint administration of the Debtors' Title III Cases.

### B.    The PROMESA Investigation Procedures

12.    On May 26, 2017, the Oversight Board passed a resolution establishing the Procedures Adopted by the Financial Oversight and Management Board for Puerto Rico for Conducting Investigations Pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act (the "PROMESA Investigation Procedures").[10]

13.    Under the PROMESA Investigative Procedures, the Oversight Board is authorized to commence any: (i) "Informal Investigation," which is defined as "any inquiry or review of Relevant Activities undertaken by the Board pursuant to PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA for which the

---

[9] *See* PROMESA § 405(m).
[10]     *See*     PROMESA     Investigation     Procedures,     *available     at* https://juntasupervision.pr.gov/index.php/en/documents/

6

Board has not adopted an Investigative Resolution"[11]; and (ii) "Formal Investigation," which is defined as "any formal inquiry or review of Relevant Activities undertaken by the Board pursuant to PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA, for which inquiry or review the Board or its designated agent has adopted an Investigative Resolution."[12]

14.     The PROMESA Investigation Procedures acknowledge the sensitive nature of the Investigation and generally require materials obtained or generated in connection with the Investigation to be non-public.  Specifically, section 3.3(a) of the PROMESA Investigation Procedures provides:

> Given the sensitive nature of the Investigations, and the fact that such Investigations will include privileged information and information provided to Board Counsel under promises of confidentiality, unless otherwise ordered by the Board, Investigative Resolutions and the conduct of, and materials obtained and/or generated regarding, any Investigation shall be non-public.[13]

15.     Notwithstanding the sensitive nature of the Investigation, section 3.3(b) of the PROMESA Investigation Procedures expressly authorizes the Oversight Board to publish all or any portion of the Investigation:

> The Board may, in its sole discretion, determine that it is appropriate for an Investigation, or portions of an Investigation, to be public and, if so, to what extent.[14]

16.     Section 10.3(a) of the PROMESA Investigative Procedures further authorizes the Oversight Board to "disclose or publish some or all of the materials that are part of the Investigative Record" if the Board determines, "in its sole discretion, that disclosure of such materials is (a) in the public interest, (b) required by PROMESA, and/or (c) necessary to enable the Board to fulfill its obligation under PROMESA, including if disclosure of such materials is necessary to implement any of the actions adopted by the Board in the Board

---

[11] *See* PROMESA Investigative Procedures § 1.3(a)(10).
[12] *See id.* § 1.3(a)(6).
[13] *Id.* § 3.3(a).
[14] *Id.* § 3.3(b).

Investigative Findings."[15]

**C.    Independent Investigator's Engagement and the Commencement of Informal and Formal Investigations**

17.    On September 6, 2017, the Oversight Board, acting by and through the Special Investigation Committee, retained Kobre & Kim LLP as the Independent Investigator to conduct the Investigation.[16]

18.    Shortly after the Independent Investigator's retention, under sections 2.1 and 3.1 of the PROMESA Investigative Procedures, the Oversight Board's General Counsel authorized the Independent Investigator to conduct an Informal Investigation regarding: (i) a review of the factors contributing to Puerto Rico's fiscal crisis, including changes in the economy, expansion of spending commitments and entitlement programs, changes in the federal funding it receives, and its reliance on debt to finance a structural budget deficit; (ii) a review of Puerto Rico's debt, the general use of proceeds, the relationship between the debt and Puerto Rico's structural budget deficit, the range of its debt instruments, and how Puerto Rico's debt practices compare to the debt practices of states and large municipal jurisdictions; and (iii) a review of Puerto Rico's debt issuance, disclosure, and selling practices, including its interpretation of Puerto Rico's constitutional debt limit.[17]

19.    In connection with such Informal Investigation, the Independent Investigator delivered letters to more than 85 entities (collectively, the "Document Preservation and Request Letters").    The Document Preservation and Request Letters identified various categories of documents that the Independent Investigator deemed relevant to the Informal Investigation and requested that the recipients of the letters preserve and produce any responsive documents in their possession, custody, or control.

---

[15] *Id.* § 10.3(a).
[16] *See* Kobre & Kim LLP Engagement Letter, dated September 6, 2017, *available at* https://juntasupervision.pr.gov/index.php/en/documents/.
[17] *See* Independent Investigator's First Interim Report, dated October 30, 2017, *available at* https://juntasupervision.pr.gov/index.php/en/documents/.

20.    On October 18, 2017, the Special Investigation Committee approved a Resolution Initiating Formal Investigation for Purpose of Issuing Investigative Subpoenas (the "Investigative Subpoenas Resolution").[18]    Under the Investigative Subpoenas Resolution, the Independent Investigator commenced Formal Investigations for the purposes of issuing investigative subpoenas to twelve entities (collectively, the "Investigatory Subpoenas").

21.    On October 30, 2017, the Independent Investigator published its First Interim Report.[19]    On April 5, 2018, the Independent Investigator published its Second Interim Report (together with the First Interim Report, the "Interim Reports").[20]

**D.    The Independent Investigator's Document Collection and Witness Interviews**

22.    During the course of its Investigation, the Independent Investigator received a total of approximately 200,000 documents and approximately 2,000,000 pages from more than thirty separate Disclosing Parties.  The Disclosing Parties include, among others, certain Debtors, financial institutions, rating agencies, financial advisors, professionals, and regulators.  The Independent Investigator executed a total of twenty-two non-disclosure agreements with thirty-two Disclosing Parties (the "Non-Disclosure Agreements").[21]

23.    Documents received from the Disclosing Parties were uploaded by the Independent Investigator to a document review platform hosted by Logikcull (the "Logikcull Database").    Documents provided by Puerto Rico or federal agencies or regulators (collectively, the "Government Agency Productions") were stored separate and apart from

---

[18] *See* Resolution Adopted by the Special Investigation Committee Initiating Formal Investigation for the Purpose of Issuing Investigative Subpoenas, dated October 18, 2017, *available at* https://juntasupervision.pr.gov/index.php/en/documents/.
[19] *See* Independent Investigator's First Interim Report, dated October 30, 2017, *available at* https://juntasupervision.pr.gov/index.php/en/documents/.
[20] *See* FOMB - Independent Investigator's Second Interim Report, dated April 5, 2018, *available at* https://juntasupervision.pr.gov/index.php/en/documents/.
[21] The reason for the difference is that some entities executed Non-Disclosure Agreements jointly with their affiliates.

9

documents produced by other parties (the "Third-Party Documents").[22]   In many cases, documents were produced based on negotiated search terms and custodian lists (the "Search Terms and Custodian Lists").

24.     Under section 104(c)(2) of PROMESA, the Independent Investigator additionally secured direct, read-only access to the email custodial files of dozens of employees and former employees of the Government Development Bank for Puerto Rico ("GDB") through its representative, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF").[23]   Such documents were made available to the Independent Investigator through a document review platform hosted by Relativity and managed by AAFAF's counsel (the "Relativity Database").[24]   The Independent Investigator has run targeted searches through certain of the GDB custodial files and has undertaken a review of documents responsive to those searches.   Periodically throughout the Investigation, the Independent Investigator has requested that AAFAF, acting as representative for GDB, produce specifically identified documents contained within the custodial files.   After reviewing the documents for privilege and confidentiality, and marking the documents accordingly, AAFAF would produce the documents to the Independent Investigator on behalf of GDB.   To date, thousands of documents have been produced to the Independent Investigator from AAFAF, acting as representative for GDB (the "Produced GDB Documents").[25]

---

[22] The Independent Investigator obtained Government Agency Productions under sections 104(c)(1) and (c)(2) of PROMESA.

[23] 48 U.S.C. § 2124(c)(2) provides as follows: "Notwithstanding any other provision of law, the Oversight Board shall have the right to secure copies, whether written or electronic, of such records, documents, information, data, or metadata from the territorial government necessary to enable the Oversight Board to carry out its  responsibilities under this chapter. At the request of the Oversight Board, the Oversight Board shall be granted direct access to such information systems, records, documents, information, or data as will enable the Oversight Board to carry out its responsibilities under this chapter."

[24] The number of documents included in the Relativity Database has been previously disclosed to the Committees and the Court.

[25] Produced GDB Documents were uploaded to the Logikcull Database and fall within the group of documents defined as "Third-Party Documents."

25.     In addition to collecting and reviewing documents, the Independent Investigator conducted a total of 107 witness interviews as of July 3, 2018.

26.     Beginning on April 5, 2018, the Special Investigation Committee also made available to the public an email address to which comments, suggestions, or requests could be sent directly to the Independent Investigator (the "Public Comment Box").  Parties submitting materials to the Public Comment Box were made aware that their communications were not confidential.

**E.     The Independent Investigator's Ongoing Cooperation with the Committees**

27.     On July 21, 2017, the Creditors' Committee filed the Motion of Official Committee of Unsecured Creditors for Entry of Order under Bankruptcy Rule 2004 Authorizing Discovery Program with Respect to Certain Causes of Puerto Rico Financial Crisis (the "Rule 2004 Motion").  The Oversight Board opposed the Rule 2004 Motion, in part, because it had created the Special Investigation Committee and hired the Independent Investigator to investigate matters subject to the Rule 2004 Motion.[26]  On November 17, 2017, the Court denied the Rule 2004 Motion without prejudice.[27]

28.     The Independent Investigator executed a Confidentiality, Cooperation, and Non-Disclosure Agreement with the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") on November 3, 2017.  The Independent Investigator executed a Confidentiality, Cooperation, and Non-Disclosure Agreement with the Creditors' Committee on March 5, 2018.  Under these agreements, the Independent Investigator has conducted weekly investigation update calls with each of the Retiree Committee and the Creditors' Committee (together, the "Committees").  On its

---

[26] *See* Objection of Debtors to Motion of Official Committee of Unsecured Creditors for Entry of Order, under Bankruptcy Rule 2004, Authorizing Discovery Program with respect to Certain Causes of Puerto Rico Financial Crisis, dated August 3, 2017 (ECF No. 859) ¶ 1; *see also* Status Report of Financial Oversight and Management Board for Puerto Rico Regarding Motion of Official Committee of Unsecured Creditors for Entry of Order, under Bankruptcy Rule 2004, Authorizing Discovery Program, dated September 12, 2017 (ECF No. 1289) ¶ 15.
[27] *See* Order, dated November 17, 2017, entered by Judge Dein in the Debtors' Title III Cases (ECF No. 1827).

weekly calls, the Independent Investigator has kept the Committees informed of the witnesses

with whom the Independent Investigator would be speaking, and the proposed areas of

inquiry for those witnesses.   The Independent Investigator solicited and received the

Committees' input on multiple aspects of the Investigation, including input concerning

proposed document requests, custodians, and search terms for various witnesses.

29.     On May 15, 2018, the Creditors' Committee renewed its Rule 2004 Motion

(the "Renewed Rule 2004 Motion"),[28] which the Oversight Board opposed.[29]  After a hearing

held before Judge Dein on June 6, 2018, the Court adjourned the Renewed Rule 2004 Motion

to June 18, 2018, and ordered that the Oversight Board provide a description of the

Independent Investigator's "exit plan."[30]

30.     On June 13, 2018, the Oversight Board filed the Statement of the Independent

Investigator, which, among other things, described its "exit plan," including the contents of

this Motion.[31]  After the hearing on June 18, 2018, Judge Dein again adjourned the hearing

on the Renewed Rule 2004 Motion, and ordered that, among other things, the Independent

Investigator file this Motion by July 3, 2018 and meet and confer with the Committees

regarding a proposed order.[32]

31.     Consistent with the Court's order, the Independent Investigator has conferred

with each of the Committees concerning the relief requested herein and the terms of the

Proposed Order.  In response to input from both Committees, the Independent Investigator

agreed to file this Motion in the Title III Cases, one of the concerns raised by the Committees

---

[28] *See* Renewed Motion of Creditors' Committee Seeking Entry of Order, under Bankruptcy Rule 2004, Authorizing Discovery Program with respect to Certain Causes of Puerto Rico Financial Crisis Beginning on August 15, 2018, dated May 15, 2018 (ECF No. 3066).
[29] *See* Objection of Debtors to Renewed Motion of Official Committee of Unsecured Creditors for Entry of Order, under Bankruptcy Rule 2004, Authorizing Discovery Program with respect to Certain Causes of Puerto Rico Financial Crisis Beginning on August 15, 2018, dated May 22, 2018 (ECF No. 3117).
[30] *See* Order dated June 6, 2018, entered by Judge Dein in the Debtors' Title III Cases (ECF No. 3274).
[31] *See* Status Report of the Oversight Board Addressing the Court's Directive in Its June 7, 2018 Order, dated June 13, 2018 (ECF No. 3303).
[32] *See* Order dated June 19, 2018, entered by Judge Dein in the Debtors' Title III Cases (ECF No. 3317).

at the hearing on June 18, 2018.  In addition to conferring, the Independent Investigator

provided drafts of this Motion and the Proposed Order to the Committees for their review and

comment.

## RELIEF REQUESTED

32.     By filing this Motion, the Independent Investigator seeks entry of the

Proposed Order: (i) establishing procedures for resolving any confidentiality dispute in

connection with publication of the Independent Investigator's Final Report; (ii) approving the

disposition of certain documents and information; (iii) relieving the Independent Investigator

from certain discovery obligations; (iv) exculpating the Independent Investigator in

connection with the Investigation and publication of the Final Report; and (v) granting related

relief.

### I.   Procedures for Resolution of Any Objection to the Disclosure of Confidential Information in the Final Report

33.     Under both the Non-Disclosure Agreements and section 10.3 of the

PROMESA Investigation Procedures, the Independent Investigator is authorized to disclose

or publish some or all of the materials provided by a witness if, among other things, the

Oversight Board determines, in its sole discretion, that disclosure of such materials is (a) in

the public interest; (b) required by PROMESA; and/or (c) necessary to enable the

Independent Investigator to fulfill its obligations under PROMESA.  Certain of the Non-

Disclosure Agreements require the Independent Investigator to provide Disclosing Parties

advance written notice of the disclosure of their information protected from disclosure under

the terms of the Non-Disclosure Agreements ("Confidential Information"), and the

Independent Investigator intends to abide by these commitments.  To facilitate this notice

process and the resolution of any dispute over the publication of Confidential Information,

the Independent Investigator requests approval of the procedures proposed below (the "Publication Procedures").[33]

34.     Under the Publication Procedures, if any of the Non-Disclosure Agreements requires the Independent Investigator to provide advance notice of the publication of the Disclosing Party's Confidential Information, the Disclosing Party will be afforded an opportunity to: (i) confer and resolve any dispute over Confidential Information with the Independent Investigator consensually; and (ii) if the dispute is unresolved, seek a protective order or similar relief before disclosure of such information.[34]

35.     The Publication Procedures are as follows:

a.  The Independent Investigator will provide a written notice, by *email or overnight delivery*, to each Disclosing Party identifying the Disclosing Party's Confidential Information that the Independent Investigator may use in the Final Report at the latest five (5) business days before publication of the Final Report, unless the Non-Disclosure Agreement between the Independent Investigator and the Disclosing Party provides for a different period, in which case the Non-Disclosure Agreement's different period will govern (the "Notice Period").  Any objection to the disclosure by the Independent Investigator of such Confidential Information must be transmitted by email or overnight mail to be *received* by the Independent Investigator within the Notice Period.[35]

b.  During the Notice Period, the Disclosing Parties must: (i) hold the identity and content of any Confidential Information about which the Independent Investigator has given notice in strict confidence (including any statement, finding, or conclusion of the Independent Investigator, or any portion of the Final Report, that is shared with the Disclosing Party in connection with the Publication Procedures) and (ii) make no disclosure to any person, except its counsel, of the identity or content of the

---

[33] Some Disclosing Parties have made a blanket designation of all of materials produced as "Confidential" under the Non-Disclosure Agreements, which may be overbroad.  The Independent Investigator has the right to disclose such information under the Non-Disclosure Agreements and PROMESA, and will, nevertheless, endeavor to limit any disputes regarding such matters. In any event, and as set forth in the Publication Procedures, the ultimate burden of seeking protection of any alleged Confidential Information is on the Disclosing Parties.

[34] If the Independent Investigator intends to attribute in the Final Report a specific statement made by a Disclosing Party in an interview, then the Independent Investigator will notify such Disclosing Party in accordance with the Publication Procedures.

[35] *See, e.g.*, Order Governing the Production and Use of Confidential Material Among the Examiner, the Official Committee of Unsecured Creditors, the Debtors, and Non-Parties ¶ (g), *In re Enron Corp.*, No. 01-16034, 2002 WL 32156065, at *2-3 (Bankr. S.D.N.Y. Oct. 10, 2002) (approving five (5) business days' notice by facsimile or overnight delivery to allow producing parties to serve an objection), attached hereto as Exhibit B.

Confidential Information that the Independent Investigator may use in the Final Report.[36]

c.  If no objection is made within the Notice Period, any Disclosing Party shall be deemed to have waived any claim that such Confidential Information is entitled to non-disclosure, and the Independent Investigator may promptly publish the Final Report and any related exhibits disclosing such Confidential Information.

d.  If a Disclosing Party makes an objection within the Notice Period, the Disclosing Party must confer in good faith directly with the Independent Investigator to attempt to resolve its challenge concerning any of the Confidential Information identified by the Independent Investigator for inclusion in the Final Report.  In conferring, the Disclosing Party must: (i) explain the basis for its belief that the inclusion of the Confidential Information in the Final Report is not proper and (ii) give the Independent Investigator an opportunity to (a) review the objection and the designated Confidential Information, (b) reconsider the designation, and (c) if no change in the designation is offered, to explain the basis for the designation.  The Independent Investigator may respond by email or overnight mail to the Disclosing Party concerning the challenge within five (5) business days (the "Meet and Confer Procedure").[37]

e.  If any of the Disclosing Parties makes an objection within the Notice Period and such objection is not resolved under the Meet and Confer Procedure, the Disclosing Party must file with this Court and serve a motion for a protective order, on an expedited basis scheduled in compliance with the Case Management Order[38], seeking to prohibit the public disclosure of the Confidential Information proposed to be included in the Final Report within five (5) business days of the conclusion of the Meet and Confer Procedure if it wishes to adhere to its objection (the "Motion for Protective Order").  Each such Motion for Protective Order must be accompanied by a declaration that affirms that the Disclosing Party has complied with the Meet and Confer Procedure.  The burden of persuasion in any such Motion for Protective Order shall rest with the Disclosing Party asserting confidentiality and seeking to seal, redact, or prevent disclosure of the Final Report.[39]

f.  No Confidential Information may be filed by any party with the Court unless (i) upon advanced written consent; or (ii) filed under seal under Local Bankruptcy Rule 9018-1 and the District Court's Standing Order No. 9.[40]

---

[36] *Id.*

[37] *See, e.g.*, Stipulated Disclosure Agreement and Protective Order ¶ 11 entered in the Debtors' Title III Cases (ECF No. 2832) (granting similar relief).

[38] *See* Order Further Amending Case Management Procedures dated April 4, 2018 entered by Judge Swain in the Debtors' Title III Cases (ECF No. 2839).

[39] *See, e.g.*, Stipulated Disclosure Agreement and Protective Order ¶ 12 entered in the Debtors' Title III Cases (ECF No. 2832) (granting similar relief).  *See also In re FiberMark, Inc.*, 330 B.R. 480, 504 (Bankr. D. Vt. 2005) ("Since this is the first time the Court is being asked to make a determination as to whether the Report should be sealed under § 107, based upon the contents of the Report, the burden is on the parties seeking to seal the report to demonstrate grounds for deviating from the general rule of public access under § 107(a). Thus, the Seal Proponents have the burden of proof.").

[40] *See, e.g.*, Stipulated Disclosure Agreement and Protective Order ¶ 10 entered in the Debtors' Title III Cases (ECF No. 2832) (granting similar relief).

g.  The Independent Investigator shall maintain the confidentiality of such Confidential Information during the pendency of an objection and, if a Motion for Protective Order is filed, until the Court resolves the Motion for Protective Order.  If the Independent Investigator publishes the Final Report during the pendency of an objection or Motion for Protective Order, the Independent Investigator must redact the applicable portions of the Final Report so as to preserve such Confidential Information.[41]

h.  Nothing in the Publication Procedures shall limit the Independent Investigator's ability to file or publish all, or any portion of, the Final Report under seal or with redactions during, or in advance of, the Notice Period.  Nothing in the Publication Procedures shall limit the ability of the Committees to seek access to information filed under seal or to object to the fact that certain information is filed under seal.

36.     Disclosing Parties have been on notice of the potential publication of their Confidential Information for months, as publication of the Final Report is required by section 104(p) of PROMESA, was discussed in the Independent Investigator's Interim Reports, and was acknowledged in many of the Non-Disclosure Agreements executed by Disclosing Parties.  Nevertheless, to the extent there are disputes about the publication of Confidential Information, the Publication Procedures will funnel any such dispute to this Court so that all similar disputes are addressed uniformly.  The Independent Investigator is ready, on approval of this Motion, to commence sending notices to Disclosing Parties thereby starting the Publication Procedures.

37.     Further, the Publication Procedures are consistent with the protections afforded to the Disclosing Parties under the Non-Disclosure Agreements.[42]  Nothing under the Proposed Order shall prevent or prejudice any Disclosing Party from seeking additional, lesser, or greater protections, with respect to the use or disclosure of their Confidential Information, than those set forth in the Non-Disclosure Agreements.  All Disclosing Parties,

---

[41] *See, e.g.*, Exhibit B (Enron Corp.) ¶ (g).
[42] The Publication Procedures are also consistent with the procedures established for protection of Confidential Information in the Title III Cases, among other cases.

including all parties to the Non-Disclosure Agreements, have been provided notice of this Motion and an opportunity to respond.[43]

38.     For the foregoing reasons, the Publication Procedures should be approved.

**II.    Disposition of Certain Documents and Information and Access to the Centralized Document Depository**

   *A. Disposition of Documents and Information*

39.     Whereas the Independent Investigator's investigation duties will largely conclude with the publication of the Final Report, other parties in interest or members of the public may review the Final Report and determine that they would like access to documents that have been collected by the Independent Investigator.  Accordingly, the Independent Investigator intends to coordinate with the Oversight Board to organize the materials collected during the course of the Investigation and to establish and transfer various documents and information to a secure centralized document depository (the "Document Depository"), which will be maintained by a neutral vendor on behalf of the Oversight Board (the "Neutral Vendor").

40.     Specifically, the Independent Investigator intends to transfer the following documents and information (collectively, the "Investigative Record") to the Document Depository: (a) the Preservation and Document Request Letters; (b) the Investigatory Subpoenas; (c) the Search Terms and Custodian Lists; (d) the Third-Party Documents[44]; (e) documents within the Government Agency Productions for which the applicable Puerto Rico or federal agency or regulator has agreed or not objected to placement in the Document Depository; (f) the Public Comment Box; and (g) the Final Report and all exhibits and

---

[43] *See* Order to Establish a Procedure to Unseal the Examiner's Report, to Establish a Briefing Schedule to Resolve Remaining Confidentiality Issues, and to Establish a Procedure to Provide Access to Documents Cited in the Examiner's Report, ¶ 3(F), *In re Lehman Bros. Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Mar. 11, 2010) ("In the absence of a timely objection, any person who has received notice of this Order and the Motion shall be deemed to have waived any claim that the Underlying Document is entitled to non-disclosure"), attached hereto as Exhibit C.

[44] The "Third-Party Documents" include the Produced GDB Documents, other than documents marked "Highly Confidential" (i.e., asserted to be privileged) by AAFAF.

appendices thereto and all documents referenced in the footnotes to the Final Report (the "Final Report Documents").

41.     The Independent Investigator received Government Agency Productions from the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), and the Oficina del Comisionado de Instituciones Financieras ("OCIF").  There is currently no agreement with FINRA or the SEC regarding the transfer to the Document Depository of the documents they provided to the Independent Investigator, although discussions regarding the treatment of such documents are ongoing.  OCIF has agreed that the documents it provided to the Independent Investigator, including those provided by Disclosing Parties to OCIF, may be transferred to the Document Depository, except for one examination report that is confidential under Puerto Rico law.   The arrangements with the SEC, OCIF, and FINRA are reflected in the Proposed Order, subject to revision depending on discussions with parties in interest and, ultimately, the Order of the Court.

42.     The Proposed Order authorizes the Independent Investigator to facilitate this transfer of the Investigative Record and requires the Neutral Vendor to take custody and maintenance of the Document Depository for such period as required by law or as otherwise ordered by the Court, but at a minimum, until the effective date of a plan of adjustment for each of the Debtors confirmed by the Court.  If there is any conflict or inconsistency between the terms of a Non-Disclosure Agreement and the Proposed Order (e.g., concerning a Disclosing Party's right to demand return or destruction of its documents or other Confidential Information), the terms of the Proposed Order shall control.

43.     As to the documents provided to the Independent Investigator by AAFAF, on its behalf or acting as representative for GDB, the Proposed Order provides that the Independent Investigator will return all documents identified as "Highly Confidential" (i.e.,

asserted to be privileged) by AAFAF or GDB, unless such documents are included as Final Report Documents with the consent of AAFAF or GDB. The Proposed Order also provides that AAFAF will continue to maintain the Relativity Database until the conclusion of all Title III proceedings concerning the Commonwealth of Puerto Rico or any of its instrumentalities, unless ordered otherwise by further order of the Court.[45]

44.     The Proposed Order additionally authorizes the Independent Investigator, in its sole discretion, to discard or delete (in case of electronic materials) all other documents and information not included within the Investigative Record, including without limitation, documents that are protected by the Independent Investigator's attorney-client privilege, the work product doctrine, and any other applicable privilege (the "Independent Investigator's Privileged Materials").

B.     *Procedures to Access the Document Depository*

45.     The Independent Investigator proposes that the procedures set forth below govern any request by a party in interest to access the Document Depository maintained by the Neutral Vendor (the "Access Procedures").

46.     For the avoidance of doubt, nothing contained in the Access Procedures is intended to expand, contract, waive, or modify the rights of any party in interest or member of the public to seek access to one or more documents contained in the Document Depository. Instead, the Access Procedures are aimed at ensuring that: (i) the Neutral Vendor and the Oversight Board are provided with appropriate direction regarding granting access to the Investigative Record, and (ii) the Disclosing Parties are provided with appropriate notice that a party in interest or member of the public is requesting access to the documents they produced in connection with the Investigation.

---

[45] The Independent Investigator has been informed that certain disputes may arise regarding at least some of the documents designated "Highly Confidential" by AAFAF. The Proposed Order specifically reserves all parties' rights to challenge or defend AAFAF's "Highly Confidential" designation for any document so designated and also reserves all parties' rights to seek access to or dispute access to the Relativity Database.

47.     The Access Procedures for the Document Depository are as follows:

a.  In the case of a request by a person or entity that is not a party to a pending civil litigation in a court of competent jurisdiction, a document request ("Document Request") must be served on the attorneys for the Oversight Board and forwarded to the Neutral Vendor.  A Document Request shall not be filed with the Court.  In the case of a request by a person or entity that is a party to a pending civil litigation, including the Oversight Board, a subpoena under Rule 45 of the Federal Rules of Civil Procedure or any other applicable rules ("Subpoena") shall be served in compliance with all rules governing notice and discovery in that litigation and shall also be served on attorneys for the Oversight Board to the extent the Oversight Board is not a named party to the litigation, and forwarded to the Neutral Vendor.

b.  Any Document Request or Subpoena must be accompanied by search terms and relevant time periods (the "Search Terms"), unless the Document Request or Subpoena seeks access to all documents contained in the Document Depository. Upon receipt of the Search Terms, the Neutral Vendor shall promptly apply them to the Document Depository to identify responsive documents and relevant producing parties (each, a "Producing Party").

c.  After receipt of a Document Request or Subpoena and application of the Search Terms (as applicable), the Neutral Vendor shall promptly provide a notice to each Producing Party, setting out (i) the identity of the party making the request (the "Requesting Party") and (ii) the Document Request or Subpoena, together with the Search Terms or a statement that all of the Producing Party's documents have been requested by the Requesting Party (as applicable).  The Neutral Vendor shall provide the Requesting Party and any other person or entity that has been served with notice of a Subpoena by the Requesting Party in accordance with paragraph 47(a) above, a copy of the Notice.

d.  The Oversight Board and the Producing Party (collectively, the "Interested Parties") shall have ten (10) business days from the date of Notice to informally object to the Document Request and shall serve such objection on the Requesting Party and the other Interested Parties with a copy to the Neutral Vendor.  An objection to a Document Request shall not be filed with the Court.  If a timely objection to the Document Request is asserted, the objecting party or parties and the Requesting Party shall confer within ten (10) business days of the assertion of an objection in an effort to resolve the objection.  If the objection cannot be resolved, the objecting party or parties may, within ten (10) additional business days, make a motion with the Court to be heard at the next omnibus hearing and in compliance with the Case Management Order[46] governing the Debtors' Title III Cases seeking an order restricting or prohibiting access to the requested documents, or for such other relief as may be appropriate.  If such a motion is filed, the Neutral Vendor shall not comply with the Document Request pending the disposition of the motion.  If no timely objection is asserted to a Document Request, or if no motion is filed within twenty (20) business days after assertion of an objection, the Neutral Vendor shall promptly make the requested documents available to the Requesting Party via a document production.

---

[46] *See* Order Further Amending Case Management Procedures dated April 4, 2018 entered by Judge Swain in the Debtors' Title III Cases (ECF No. 2839).

Nothing herein shall confer standing on any party to object to a Document Request and all rights to contest, object to, or support standing of an objecting party are preserved.

e.  If any documents produced by the Neutral Vendor to the Requesting Party as set forth in paragraph 47(d) above have been previously marked as "Professional Eyes Only" or with similar designations, then absent a further court order, the Requesting Party shall abide by such designation.

f.  Objections to a Subpoena issued in a pending civil litigation shall be heard in that litigation and governed by the applicable rules of civil procedure and discovery in such litigation. Nothing herein shall confer standing on any party to object to a Subpoena and all rights to contest, object to, or support standing of an objecting party are preserved. Further, nothing herein shall provide a person or entity greater rights to obtain documents or information from the Neutral Vendor or the Document Depository than such person or entity has under applicable law.

48.     In proposing the Access Procedures, the Independent Investigator is interested in preserving materials broadly for all parties in interest. The Independent Investigator has no interest in any particular party's access to or use of any particular document.

49.     For the foregoing reasons, the Access Procedures should be approved.

## III.   Assistance from the Independent Investigator after Publication of the Final Report

50.     The Independent Investigator was retained to conduct the Investigation and to publish the Final Report. Thereafter, the Independent Investigator will take necessary steps to transition the custody of the Investigative Record to the Neutral Vendor, which will maintain the Document Depository in the future.

51.     If, after publication of the Final Report, the Independent Investigator receives requests for cooperation and assistance from any party in interest, the Independent Investigator proposes that it will respond as follows:

a.  In response to requests from the Oversight Board, the Debtors, the Committees, Puerto Rico or federal agencies or regulators, or the United States Trustee, the Independent Investigator will meet and confer with such parties concerning their requests and provide cooperation and assistance until at least June  1, 2019, or confirmation of a plan of adjustment for the Title III Debtors, whichever is earlier, unless the engagement of the Independent Investigator by the Special Investigation Committee is terminated sooner.

21

b. The Independent Investigator may provide such cooperation and assistance as the Special Investigation Committee deems appropriate in response to requests from other parties in interest; *provided* that, the requesting party shall provide notice of its request for cooperation and assistance to the Oversight Board, the Debtors, the Committees, and, in the event that the requesting party is a party to an existing civil litigation, the other parties to such litigation.   Unless otherwise directed by the Oversight Board, acting by and through the Special Investigation Committee, the Independent Investigator will not respond to requests for cooperation or assistance from parties in interest other than those provided for in paragraph 51(a) above after June 1, 2019 unless the engagement of the Independent Investigator by the Special Investigation Committee is terminated sooner.

## IV.   Relief from Certain Discovery Obligations

52.   It is possible that third parties will seek formal written discovery or testimony from the Independent Investigator after publication of the Final Report, notwithstanding the transfer of the Investigative Record to the Document Depository and the prospect of obtaining the Independent Investigator's voluntary cooperation.   As set forth below, the Independent Investigator respectfully requests that the Court issue an order relieving the Independent Investigator from certain discovery obligations, consistent with the relief granted to bankruptcy examiners.

53.   Specifically, the Independent Investigator requests that, with certain limited exceptions, the Independent Investigator be relieved from any requests for production of documents, requests for admissions, requests for testimony or deposition, interrogatories, subpoenas for production of documents, subpoenas to give oral testimony, trial subpoenas, or any other discovery of any kind relating to the Investigation or Final Report.   The certain limited exceptions include: (i) documents for which a requesting party has demonstrated to the Court that it has been unable to obtain from any other source, after providing an affirmation to that effect; (ii) an order of a federal district court presiding over a criminal proceeding in which a party in interest is a defendant finding that the Independent Investigator is obliged to produce documents or other materials to said defendant under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), as embodied in subsequent caselaw and

22

the Federal Rules of Criminal Procedure; or (iii) productions required in response to any

subpoena or formal request made by or on behalf of any state, federal or Puerto Rico

governmental or regulatory agency acting under its police or regulatory powers.

54.     Courts often limit third-party discovery against examiners and their

professionals to the same extent requested herein.[47]   The basis for limiting discovery as

against an examiner has been succinctly stated as follows:

> [The duties of an Examiner are] comparable to that of a civil grand jury . . . to
> ascertain legitimate areas of recovery and appropriate targets for recovery.  If
> Examiners in other cases are to perform these civil grand jury functions
> effectively, and if their nonadversarial role is to be maintained, they and the
> subjects of their investigation must be unhampered by the threat that any
> information which comes into the Examiner's hands will be fair game for a
> plethora of anxious litigants, regardless of the limitations on disclosure which
> the Bankruptcy Court has imposed. Even absent such limitations on
> disclosure, we believe that the Examiner, as a nonparty to any proceeding and
> a nonadversarial officer of the Court, is entitled to some immunity from the
> whirlwind of litigation commonly attendant to large Chapter 11 cases.[48]

55.     The rationale for limiting discovery against examiners applies with equal force

to the Independent Investigator.  The Independent Investigator fulfills a statutory, non-

adversarial role under section 104(o) of PROMESA, much like an examiner under section

1104(a) of the Bankruptcy Code.  Further, like an examiner who is required to file a

---

[47] *See, e.g.*, Order Approving Examiner's Motion for Entry of Order Granting Discharge from Duties, Relief from Discovery, Approval of Disposition of Investigative Materials, and Exculpation in Connection with Duties, at 2-3, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 24, 2013), attached hereto as Exhibit D; Order Discharging Examiner and Granting Related Relief, ¶ 3, *In re Lehman Bros. Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 13, 2010), attached hereto as Exhibit E; Order Discharging Examiner and Establishing Related Procedures, ¶ 9, *In re Refco Inc.*, Case No. 05-6006 (RDD) (Bankr. S.D.N.Y. Aug. 16, 2007), attached hereto as Exhibit F; Order Granting Motion of Neal Batson, the Enron Examiner, with respect to Certain Procedural Issues in connection with the Termination of the Enron Corp. Examination, ¶ 2, *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 19, 2004), attached hereto at Exhibit G; *see also* Order Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief, ¶ 7, *In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del. Aug. 26, 2010), attached hereto as Exhibit H.

[48] *In re Baldwin United Corp.*, 46 B.R. 314, 316-17 (Bankr. S.D. Ohio 1985) (internal citations and quotation marks omitted).  *See also In re Gitto/Glob. Corp.*, 321 B.R. 367, 371–72 (Bankr. D. Mass.), *aff'd sub nom. In re Gitto Glob. Corp.*, No. CIV.A. 05-10334-DPW, 2005 WL 1027348 (D. Mass. May 2, 2005), *aff'd*, 422 F.3d 1 (1st Cir. 2005) ("These movants correctly note the Baldwin court agreed with the examiner's characterization of his investigative responsibilities 'to ascertain legitimate areas of recovery and appropriate targets for recovery' as akin to the function of a civil grand jury . . .") (quoting *Baldwin*, 46 B.R. at 317).

"statement" of his or her investigation under section 1106(a)(4) of the Bankruptcy Code, the Independent Investigator is required to make public the findings of its investigation under section 104(p) of PROMESA. As recognized by the District Court for the Southern District of New York, "the public interest is in the Report and the Examiner's conclusions, not in the Record upon [which] the conclusions are based."[49] Likewise, in this case, the public interest is in the Independent Investigator's Final Report, which will be published, and not in the materials and other information relied upon by the Independent Investigator that has not been disclosed or discussed in connection with the Final Report.

56.     The Independent Investigator intends to transfer the Investigatory Record to the Document Depository, and has proposed the Access Procedures as the appropriate mechanism for parties in interest to seek disclosure of the Investigatory Record. No party in interest should be permitted to seek discovery from the Independent Investigator absent a showing that discovery cannot be obtained from any other source (such as from the Document Depository or a Disclosing Party). The Access Procedures represent an efficient and cost-effective means by which parties in interest may seek access to the Investigatory Record, and the relief requested herein will ensure that parties pursue those procedures, rather than target the Independent Investigator after publishing the Final Report.

57.     For these reasons, the Independent Investigator respectfully requests relief from discovery obligations, as set forth in the Proposed Order.

## V.     Exculpation

### A.     _Exemption from Liability under Section 105 of PROMESA_

58.     This Court has a statutory basis to exempt the Independent Investigator from liability for claims under section 105 of PROMESA, which provides that:

---

[49] _Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)_, 156 B.R. 414, 435 (S.D.N.Y. 1993).

The Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out this chapter.[50]

The Oversight Board, acting by and through the Special Investigation Committee, delegated to the Independent Investigator its statutory functions, duties, and obligations to conduct the Investigation (under section 104(o) of PROMESA) and to publish its findings (under section 104(p) of PROMESA). Under these circumstances, the Independent Investigator is entitled to the same statutory immunity and the same degree of protections for carrying out its duties and obligations under PROMESA, including the Investigation and publication of the Final Report, as the Oversight Board under section 105 of PROMESA.[51]

59.     The Proposed Order provides that the Independent Investigator is exculpated from potential claims under section 105 of PROMESA. Approving such relief in advance of publication of the Final Report will ensure, among other things, that no party can use the threat of litigation and liability against the Independent Investigator as a means of attempting to influence the contents of the Final Report.

B.     _Immunity from Damage Claims Ordinarily Granted to Bankruptcy Examiners_

60.     In the alternative, if the Court determines that section 105(a) of PROMESA does not protect the Independent Investigator, the Independent Investigator respectfully requests that the Court issue an order providing that neither the Independent Investigator nor its employees or agents have any liability with respect to any act, omission, statement, or representation arising out of, relating to, or involving in any way, the Investigation, the Non-

---

[50] _See_ 48 U.S.C. § 2125.

[51] This Court has ordered exculpation under section 105 of PROMESA under similar circumstances. _See_ Order Approving COFINA Agent's Motion Pursuant to 48 U.S.C. § 2161 and 11 U.S.C. § 105(a) for Order; (I) Confirming that 48 U.S.C. § 2125 Applies to COFINA Agent; (II) Confirming Retention of Local Counsel; and (III) Clarifying Payment of Fees and Expenses of COFINA Agent and Her Professionals, ¶ 2 ("The protections of 48 U.S.C. § 2125 ("Immunity Protections") shall apply to the COFINA Agent, the Commonwealth Agent (together with the COFINA Agent, the "Agents") and their respective professionals and employees with respect to all actions of the COFINA Agent or Commonwealth Agent, as applicable, taken in good faith to carry out their duties under the Stipulation and Order . . . ."), entered by Judge Swain on November 3, 2017 in the Debtors' Title III Cases (ECF No. 1612).

Disclosure Agreements, or Final Report, except in the case of gross negligence or willful misconduct.

61.     The Court should grant the requested exculpation based on the legal standard applied in multiple chapter 11 cases except for claims arising from willful misconduct or gross negligence.  The duties and responsibilities undertaken, and the relief requested herein, by the Independent Investigator are similar to the duties and responsibilities undertaken by, and the relief granted to, bankruptcy examiners retained under similar circumstances.[52] Indeed, courts have granted exculpation to examiners and their professionals in multiple chapter 11 cases.[53]  The Independent Investigator should be entitled to similar exculpation and the same immunity from damage claims that is ordinarily granted to bankruptcy examiners.[54]

62.     Bankruptcy examiners have been recognized as "court fiduciaries" or "quasi-judicial officers" and thus protected by "absolute immunity" because they serve a function similar to the functions served by a grand jury, receiver, referee, conservator, special master, magistrate, or prosecutor.[55]  Like a non-adversarial bankruptcy examiner who "is amenable to no other purpose or interested party,"[56] the Independent Investigator is disinterested and performs its duties at the request of the Special Investigation Committee for the benefit of the Oversight Board, the Debtors, their creditors, and the public in general.  If its non-adversarial

---

[52] *See supra* note 46.
[53] *See* Exhibit D at 3-4 (Residential Capital); Exhibit E ¶ 2 (Lehman Brothers); Exhibit F ¶ 10 (Refco); Order Granting Motion of Neal Batson, the Enron Examiner, with respect to Certain Procedural Issues in connection with the Termination of the Enron Corp. Examination ¶ 3, *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Dec. 17, 2003), attached hereto at Exhibit I; Exhibit H ¶ 6 (Tribune Company).
[54] *See Baldwin*, 46 B.R. at 317; *Kovalesky v. Carpenter*, No. 95-CIV-3700 (SAS), 1997 WL 630144, *4-5 (S.D.N.Y. October 9, 1997).
[55] *See, e.g.*, *Kovalesky*, 1997 WL 630144, at *4 (stating that a bankruptcy examiner is "considered a quasi-judicial officer similar to a trustee, receiver, referee, conservator, special master, magistrate or prosecutor—and thus is protected by *absolute immunity*.") (emphasis added); *see also Baldwin*, 46 B.R. at 317 (stating that a bankruptcy examiner is like a "grand jury" and "is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases").
[56] *Baldwin*, 46 B.R. at 316.

and independent role is to be maintained, the Independent Investigator and the Investigation must be unhampered by the threat of litigation.[57]

63.     The Independent Investigator has provided value to the Oversight Board, the Debtors, their creditors and other parties in interest through its efforts in conducting the Investigation and should not be subjected to future litigation.  The Debtors' bankruptcy cases are some of the largest, most complex, and litigious matters, and therefore the relief requested is reasonable in light of potential litigation risks and other relevant factors (such as avoiding any delay in publishing the Final Report).  Exculpation of the Independent Investigator is fair, equitable, and necessary to avoid any wasteful and collateral litigation regarding the Investigation and publication of the Final Report.

64.     For all these reasons, and consistent with section 105 of PROMESA, or the relief granted to bankruptcy examiners under similar circumstances, the Independent Investigator should be exculpated from liability as set forth in the Proposed Order.

## NOTICE

65.     Notice of this Motion has been provided to the following individuals or entities, or their counsel, if known: (i) the Oversight Board; (ii) the Debtors; (iii) AAFAF; (iv) the Creditors' Committee; (v) the Retiree Committee; (vi) all Disclosing Parties,

---

[57] *Kovalesky*, 1997 WL 630144, at *4 ("When the examiner's duties are limited to conducting an investigation, then the interest in obtaining a full and fair report from the examiner militates strongly against permitting any party from using threats of litigation and liability against the examiner to influence the report . . . .") (citing Leonard L. Gumport, *The Bankruptcy Examiner,* 20 Cal. Bankr. J. 71, 127–128, 129 (1992)); *see also Feliciano v. Puerto Rico State Ins. Fund*, 818 F. Supp. 2d 482, 491, 493 (D.P.R. 2011) ("By granting absolute immunity to the official examiners of the administrative agencies will ensure that their quasi-judicial functions will be performed without harassment or intimidation.") (citing, among other cases, *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (noting justifications for the doctrine of absolute immunity, including, among other things, preventing threat of suit from influencing decision and necessity of finality)).  *See generally Gonzalez-Droz v. Gonzalez-Colon*, 717 F. Supp. 2d 196, 208 (D.P.R. 2010), *aff'd on other grounds*, 660 F.3d 1 (1st Cir. 2011) (granting absolute immunity to members of Puerto Rico medical board and stating that "it is well settled 'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action[.]'") (quoting *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 701 (1st Cir. 1995) (concluding that Board members and its counsel were absolutely immune from suit, in their individual capacities, with respect to doctor's section 1983 claim for monetary relief) and citing, among other cases, *Bettencourt v. Bd. of Registration In Med. of Mass.*, 904 F.2d 772, 781-82 (1st Cir. 1990) (recognizing that members of the Massachusetts Board of Registration in Medicine were entitled to absolute immunity for their quasi-judicial functions)).

including witnesses that have been interviewed and parties that entered into the Non-Disclosure Agreements; (vii) all parties that received a Preservation and Document Request Letter or Subpoena; (viii) the Office of the United States Trustee for Region 21: District of Puerto Rico; (ix) the Securities and Exchange Commission; (x) the Financial Industry Regulatory Authority; (xi) Oficina del Comisionado de Instituciones Financieras; (xii) the Internal Revenue Service; (xiii) the United States Attorney for the District of Puerto Rico; and (xiv) the Master Service List and any other party required to be served in accordance with the Case Management Order entered in the Title III Cases.

66.    The Independent Investigator respectfully submits that such notice to these parties that may be affected by the Motion constitutes adequate and sufficient notice of the relief requested in the Motion and the entry of the Proposed Order and no other or further notice need be provided.

## RESERVATION OF RIGHTS

67.    The Independent Investigator seeks relief in the Title III Cases solely for purposes of this Motion.  The Independent Investigator reserves all rights to seek any and all relief under Title I of PROMESA, and to have any matter related to its engagement, the Investigation, or the Final Report, and any other issue arising out of PROMESA, resolved under Title I of PROMESA, including in a separate proceeding that may be commenced in the United States District Court for the District of Puerto Rico under section 106(a) of PROMESA.

## NO PRIOR REQUEST

68.    No prior request for the relief requested in the Motion has been made by the Independent Investigator to this or any other court.

## CONCLUSION

69.     For all of the foregoing reasons, the relief sought under this Motion is in the public interest, necessary to enable the Independent Investigator to fulfill its duties and responsibilities under PROMESA, and provides a transparent, cost-effective, and efficient process for concluding the Investigation and publishing the Final Report.

**WHEREFORE**, based upon the foregoing, the Independent Investigator respectfully requests that the Court grant the Motion and enter an order, substantially in the form attached hereto as Exhibit A: (i) establishing procedures for resolving any confidentiality dispute in connection with publication of the Independent Investigator's Final Report; (ii) approving the disposition of certain documents and information; (iii) relieving the Independent Investigator from certain discovery obligations; (iv) exculpating the Independent Investigator in connection with the Investigation and publication of the Final Report; and (v) granting related relief as appropriate under the circumstances.

Dated: July 3, 2018
San Juan, Puerto Rico

*/s/ D. Farrington Yates*

KOBRE & KIM LLP
D. Farrington Yates
800 Third Avenue
New York, New York 10022
Tel:  (212) 488-1211
Fax: (212) 488-1220
Farrington.Yates@kobrekim.com

John D. Couriel (*pro hac vice* pending)
201 S. Biscayne Blvd., Suite 1900
Miami, Florida 33131
Tel:  (305) 967-6100
John.Couriel@kobrekim.com

*The Independent Investigator*

-and-

A&S LEGAL STUDIO, PSC
S/Luis F. del Valle

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

*Local Counsel for the Independent Investigator*