# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>              Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| HON. RICARDO ANTONIO ROSSELLÓ NEVARES (in his official capacity), and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>              Plaintiffs,<br><br>    v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, JOSÉ B. CARRIÓN III, ANDREW G. BIGGS, CARLOS M. GARCÍA, ARTHUR J. GONZÁLEZ, JOSÉ R. GONZÁLEZ, ANA J. MATOSANTOS, DAVID A. SKEEL, JR., and NATALIE A. JARESKO (in their official capacities),<br><br>              Defendants. | Adv. Pro. No. 18-_____-LTS |

# ADVERSARY COMPLAINT FOR
# DECLARATORY AND INJUNCTIVE RELIEF

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Plaintiff Hon. Ricardo Antonio Rosselló Nevares, in his official capacity as the Governor of the Commonwealth of Puerto Rico (the "Governor"), and Plaintiff the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," together with the Governor, the "Plaintiffs"), hereby bring this *Adversary Complaint for Declaratory and Injunctive Relief* (the "Complaint")[2] against Defendants (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "Board"), (ii) each of its members, and (iii) its Executive Director (collectively, the "Defendants"), solely in their official capacities, and allege as follows:

## NATURE OF THE ACTION

1.      By this Complaint, Plaintiffs seek declaratory and injunctive relief to foil the Oversight Board's unlawful attempts to usurp the Commonwealth of Puerto Rico's political and governmental powers and right to home rule.  Over the past several months, the Oversight Board has used the fiscal plan and budget certification processes contemplated by the *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. §§ 2101-2241 ("PROMESA"), in an attempt to impose its policy preferences on Puerto Rico's people, micromanage every aspect of budget expenditures, and exercise legislative power the Board does not have, all over the objections of Puerto Rico's elected Government.  The Board's efforts exceed its lawful powers and should be enjoined by this Court.

2.      PROMESA established the Oversight Board to help Puerto Rico "achieve fiscal responsibility and access to the capital markets."  PROMESA § 101(a); 48 U.S.C. § 2121(a).  The Oversight Board derives its power solely from the statutory authority Congress granted it under PROMESA.  While Congress gave the Board certain powers, Congress respected the people of

---

[2]    As used in this Complaint, (i) "Government" means the government of the Commonwealth of Puerto Rico, but not the Oversight Board; (ii) "Commonwealth" means the Commonwealth of Puerto Rico; and (iii) "Legislature" means the Legislative Assembly of the Commonwealth of Puerto Rico.  Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

2

Puerto Rico's right to self-government and home rule.  In recognition of these rights, Congress created an Oversight Board of limited power and preserved the democratically-elected Government's autonomy.  While PROMESA grants the Oversight Board the power to certify fiscal plans and budgets (either proposed by the Government, developed cooperatively, or developed by the Board on its own) and to monitor compliance with them, PROMESA preserves to the Government the political and governmental power to make policy decisions.  PROMESA gives the Oversight Board the power to make policy "recommendations" to the Government regarding a wide range of issues.  But no one can dispute that the Governor is free to reject those recommendations.  *See* PROMESA § 205; 48 U.S.C. § 2145.

3.      To be sure, PROMESA granted the Oversight Board authority to establish parameters to bring fiscal responsibility to Puerto Rico and monitor Puerto Rico's progress, such as the power to approve and certify proposed fiscal plans and budgets for both the Commonwealth and territorial instrumentalities.  *See* PROMESA §§ 101(d)(1),  201(c)(3), (e), 202(c)–(f); 48 U.S.C. §§ 2121(d)(1), 2141(c)(3), (e), 2142(c)–(f).  The Oversight Board also has authority to monitor and review government actions for compliance with certified fiscal plans and budgets, although these compliance powers are much more closely circumscribed for the Commonwealth itself than for Commonwealth instrumentalities, such as public corporations.  *See* PROMESA §§ 203(a)-(c), 204(a); 48 U.S.C. §§ 2143(a)–(c), 2144(a).  But one consistent principle is that the Oversight Board cannot impose its policy preferences on the Government both for the Commonwealth or individual instrumentalities.  *See* PROMESA §§ 205(a) (permitting only specific policy recommendations), 303; 48 U.S.C. §§ 2145(a), 2163.

4.      Congress specifically considered—but resoundingly rejected—granting the Oversight Board the broad power to impose its policy preferences over Government objections.

3

PROMESA discussion drafts in the House and Senate included provisions similar to those under the *District of Columbia Financial Responsibility and Management Assistance Act of 1995*, Pub. L. No. 104-8, 109 Stat. 97 (1995), which granted unilateral power to the District of Columbia Financial Control Board to nullify legislative acts and compel the mayor and city council to adopt its policy recommendations.  But Congress discarded these "anti-democratic" provisions, which appear nowhere in PROMESA as enacted.  Instead, Congress established a supervisory Oversight Board to assist and guide the elected Government, rather than a control board that would functionally supplant it.

5.      PROMESA section 205 allows the Oversight Board to make policy "recommendations" to the Government "at any time," such that recommendations can be proposed as standalone policy considerations or as part of a fiscal plan.  But even if submitted through a fiscal plan, Oversight Board policy recommendations are still "recommendations" under PROMESA section 205, which the Government is free to reject. If the Governor declines to adopt a Board recommendation, PROMESA's only requirement is that the Governor explain his decision to the President of the United States, Speaker of the United States House of Representatives, and Majority Leader of the United States Senate.  *See* PROMESA § 205; 48 U.S.C. § 2145.  The Oversight Board cannot compel the Governor to comply with its policy recommendations, whether those recommendations are free-standing or advanced in a fiscal plan.  And the Board certainly cannot force those recommendations on the Commonwealth via a budget.

6.      Specifically, the Oversight Board cannot do what it is attempting to do: impose mandatory workforce reductions, change the roles and responsibilities of certain government officials, criminalize certain acts under Puerto Rico law and otherwise seek to micromanage Puerto Rico's government.

7.      This Court has already recognized the limitations on the Oversight Board's power vis-à-vis the duly elected Government of Puerto Rico.  *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, Case No. 17 BK 3283-LTS, 2017 WL 7160982 at *14 (D. P.R. Nov. 16, 2017) ("CTO Op.") ("Congress did not grant the [Oversight Board] the power to supplant, bypass, or replace the Commonwealth's elected leaders and their appointees in the exercise of their managerial duties whenever the Oversight Board might deem such a change expedient."); CTO Op. at 12 ("Although the [Board's] fiscal plan and budgeting powers give it a strong and substantially determinative voice in overall strategy regarding the Commonwealth's revenues, expenses, and general direction for responsible management, they do not imply that the [Board's] role includes . . . direct executive authority over implementation of those plans or budgets."); CTO Op. at 18 ("PROMESA requires a debtor to work alongside the [Board] and divides the debtor's authority by putting key restructuring tools in the hands of the [Board], while preserving the elected government's operational control and voice in management and strategic decisions. . . . PROMESA leaves the elected government in place and does not suspend it in favor of direct management by the [Board].").

8.      The Oversight Board has the responsibility to review and certify a fiscal plan for the Commonwealth.  PROMESA § 201; 48 U.S.C. § 2141.  To be clear, the Government is not challenging certification.  But the Board cannot expand its legal powers by using its fiscal plan to impose policy initiatives on the Government that the Board cannot otherwise implement on its own.  Nor can the Oversight Board use its budget approval powers to bootstrap its fiscal plan recommendations to specific expenditure line items as it has done.

9.      If the Oversight Board's improper actions are not checked, the people of Puerto Rico will be disenfranchised because their locally elected Government will be stripped of its

policymaking powers.  This would deprive United States citizens living in Puerto Rico of their democratic rights.  The Oversight Board's improper usurpation of the Government's role will also bring with it a host of ill-conceived measures that may irreversibly increase outmigration, thereby reducing the tax base and worsening Puerto Rico's economic and humanitarian problems.  This Court must—again—prevent the Oversight Board from overstepping its carefully delineated, statutory bounds.

## PARTIES

10.     Plaintiff Governor Ricardo Rosselló Nevares is the duly elected Governor of Puerto Rico.

11.     Plaintiff AAFAF is a public corporation created under section 5(a) of the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Law No. 2 of January 18, 2017 ("Law 2-2017"), "for the purpose of acting as fiscal agent, financial advisor, and report agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing."

12.     Defendant Oversight Board is an entity within the Government that Congress created under PROMESA.  *See* PROMESA § 101(b)(1), (c)(1); 48 U.S.C. § 2121(b)(1), (c)(1). Under PROMESA, the Oversight Board must maintain (and it does in fact maintain) an office in Puerto Rico.  The Plaintiffs do not seek damages with respect to the Oversight Board.

13.     Defendant José B. Carrión III (the "Oversight Board Chairman") is the Chairman of the Oversight Board.  The Oversight Board Chairman participated in the Oversight Board's certification of the Board Fiscal Plan and Board Budget (each as defined below).  The Oversight Board Chairman is empowered, together with the Oversight Board Members (defined below) and the Oversight Board Executive Director (defined below), to oversee and monitor the

implementation of the Board Fiscal Plan and Board Budget.  The Plaintiffs sue the Oversight Board Chairman, and any successors thereto, solely in their official capacities.  The Plaintiffs do not seek damages with respect to the Oversight Board Chairman.

14.     Defendants Andrew G. Biggs, Carlos M. García, Arthur J. González, José R. González, Ana J. Matosantos, David A. Skeel, Jr. (collectively, the "Oversight Board Members") are each members of the Oversight Board.  The Oversight Board Members participated in the Oversight Board's certification of the Board Fiscal Plan and Board Budget.  The Oversight Board Members are each empowered, together with the Oversight Board Chairman and Oversight Board Executive Director, to oversee and monitor the implementation of the Board Fiscal Plan and Board Budget.  The Plaintiffs sue the Oversight Board Members, and any successors thereto, solely in their official capacities.  The Plaintiffs do not seek damages with respect to the Oversight Board Members.

15.     Defendant Natalie A. Jaresko (the "Oversight Board Executive Director") is the Executive Director of the Oversight Board.  The Oversight Board Executive Director participated in the Oversight Board's certification of the Board Fiscal Plan and Board Budget.  The Oversight Board Executive Director is empowered, together with the Oversight Board Chairman and Oversight Board Members, to oversee and monitor the implementation of the Board Fiscal Plan and Board Budget.  The Plaintiffs sue the Oversight Board Executive Director, and any successors thereto, solely in their official capacities.  The Plaintiffs do not seek damages with respect to the Oversight Board Executive Director.

## JURISDICTION AND VENUE

16.    This Court has federal question jurisdiction under 28 U.S.C. § 1332 because the action arises under PROMESA, a federal statute.  In addition, PROMESA section 106(a) vests federal courts with exclusive jurisdiction to hear disputes against the Oversight Board, or any action otherwise arising out of PROMESA.  *See* 48 U.S.C. § 2126(a). This Court also has jurisdiction over this matter pursuant to PROMESA section 306(a)(2) because this action relates to the Commonwealth's PROMESA Title III case, which has the principal purpose of adjusting the financial liabilities of the Commonwealth, *see* 48 U.S.C. § 2166(a)(2), and because any plan of adjustment in the Commonwealth's Title III case must be consistent with a certified fiscal plan, *see* PROMESA § 314(b)(7); 48 U.S.C. § 2174(b)(7).

17.    This Court has personal jurisdiction over the Oversight Board and its members because the Board is an entity within the Government, which must maintain, and does in fact maintain, an office in Puerto Rico.  This Court also has personal jurisdiction over the Oversight Board and its members under PROMESA section 306(c).

18.    Venue is proper in this District under PROMESA sections 106(a) and 307, and 28 U.S.C. § 1391.  *See* 48 U.S.C. §§ 2126(a), 2167.

19.    This is an appropriate action for declaratory and injunctive relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.  Declaratory relief is proper here because there exists an actual, justiciable controversy between the parties concerning the Oversight Board's efforts to impose certain operational decisions on the Government that have been expressly reserved to the Commonwealth under PROMESA section 205(a).

8

20.     The Court may grant temporary and preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure (applicable in this Title III case under Rule 7065 of the Federal Rules of Bankruptcy Procedure as incorporated pursuant to PROMESA section 310).

## FACTS

### I.     PROMESA's Carefully Balanced Division of Powers

21.     Effective June 30, 2016, the U.S. Congress enacted PROMESA to stabilize Puerto Rico's economy by establishing oversight of the Government's budget and fiscal policies and by providing a mechanism for the Commonwealth to restructure its debts.   *See* PROMESA § 201(b)(2); 48 U.S.C. §2141(b)(2).

22.     To that end, PROMESA created the Oversight Board, whose express purpose is "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  PROMESA § 101(a), (b)(1); 48 U.S.C. § 2121(a), (b)(1).   The Board is structured to provide oversight to help Puerto Rico achieve these goals, but the details of the steps necessary to achieve these goals and the execution of these steps is reserved to the governmental and political discretion of Puerto Rico's Government.

23.     Consistent with its purpose, the Oversight Board's powers include:

- collecting information from the federal government, the Puerto Rican Government, and creditors, *see* PROMESA § 104(c)–(d), 48 U.S.C. § 2124(c)–(d);

- subpoenaing information from others, *see* PROMESA § 104(f), 48 U.S.C. § 2124(f);

- investigating disclosure and sales practices for Puerto Rico government bonds, *see* PROMESA § 104(o), 48 U.S.C. § 2124(o);

- certifying voluntary agreements under Title VI, filing Title III petitions on behalf of the Commonwealth or any of its instrumentalities, or submitting plans of adjustment in a Title III case, *see* PROMESA § 104(i)–(j), 48 U.S.C. § 2124(i)–(j);

- enforcing Puerto Rico's laws barring public sector employees from striking, *see* PROMESA § 104(h), 48 U.S.C. § 2124(h); and

- various other administrative powers, *see* PROMESA §104(a), 48 U.S.C. § 2124(a) (hold hearings, receive evidence and administer oaths), (e) (receive gifts and bequests), (g) (enter into contracts), (k) (institute litigation to enforce its powers), and (n) (use administrative support services from the federal government), among others.

In addition, the Oversight Board has certain limited powers to participate in the Commonwealth's fiscal planning and budgeting process, described in more detail below.

24.    Despite granting the Oversight Board significant powers, PROMESA strikes a careful balance designed to preserve the Government's political and governmental powers. In a section entitled "Reservation of Territorial Power to Control Territory and Territorial Instrumentalities," Congress explicitly provided that "subject to Title I and Title II of this Act," PROMESA "does not limit or impair the power of [Puerto Rico] to control, **by legislation or otherwise**, [Puerto Rico] or any territorial instrumentality thereof in the exercise of political or governmental powers of [Puerto Rico] or [its] territorial instrumentality, **including expenditures for such exercise** . . . ."  PROMESA § 303; 48 U.S.C. § 2163.

25.    PROMESA's legislative history makes clear that Congress intended for the Government to retain its political and governmental powers, including primary control over critical aspects of fiscal planning and budgeting.  A side-by-side analysis of the original bill Congress considered and the law it ultimately enacted confirms Congress's intent to circumscribe the Oversight Board's power.  While the original bill would have granted the Oversight Board expansive powers to command and control the Government, the final version of PROMESA removed the Board's authority to impose dictates on the Government and greatly curtailed the Oversight Board's power over political and governmental decisions.  H.R. Rep. 114-602(I), 2016 WL 3124840, at *111 ("After intensive negotiations, the bill establishes a board that is robust but

reasonable.  Its powers are far less potent than the powers that Congress conferred upon the board that it established for the District of Columbia . . . .").

26.     This balance was intended to protect all stakeholders, but primarily the people of Puerto Rico, who are entitled to a functioning government that can provide essential services and preserve their "life, health and general welfare."  P.R. CONST., art. II § 19.  As PROMESA's legislative history makes clear, "In general, the oversight board . . . will provide guardrails for the Puerto Rico government, but will not supplant or replace the territory's elected leaders, who will retain primary control over budgeting and fiscal policymaking."  H.R. Rep. 114-602(l), 2016 WL 3124840, at *112 (2016).

27.     Congress could have empowered the Oversight Board to impose its policy preferences on the Government by including provisions similar to those under the *District of Columbia Financial Responsibility and Management Assistance Act of 1995*, Pub. L. No. 104-8, 109 Stat. 97 (1995), which granted unilateral power to the District of Columbia Financial Control Board to declare significantly inconsistent legislative acts null and void, to pre-review every contract the D.C. government proposed to execute, and to compel the mayor and city council to adopt its recommendations.  Even though the House and Senate entertained discussion drafts of precursor bills to PROMESA that contained such provisions, Congress expressly declined to include such provisions in the final law.

28.     In addition, the Board's attempt to usurp power is inconsistent with Congress's affirmative intent.  In PROMESA section 405, Congress states that the Board's purpose is to "provide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis," PROMESA § 405(n)(1), "provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support

the implementation of potential debt restructuring," *id.* § 405(n)(3), and "benefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its longstanding fiscal governance issues and return to economic growth." *Id.* § 405(n)(5). The plain language of Congress' intent under PROMESA makes clear that the Oversight Board's role is to assist, support, and encourage the Government, not to supplant or control it.

29.     Reflecting this intent, PROMESA contemplates a three-part scheme for Oversight Board involvement in the Government's fiscal and budgeting affairs. *First*, PROMESA requires the development of a fiscal plan covering at least a five-year period that includes (i) projections of anticipated future government revenues and (ii) a broad plan for future government expenditures in various areas. *See* PROMESA § 201(b)(1); 48 U.S.C. § 2141 (b)(1). *Second*, PROMESA contemplates that each fiscal year the Government will develop a budget, based on the Oversight Board's revenue forecasts, that sets forth in greater—but not complete—detail Government expenditures that comply with the approved fiscal plan. *See* PROMESA § 202; 48 U.S.C. § 2142. *Third*, PROMESA empowers the Oversight Board to make recommendations at any time "on actions the territorial government may take to ensure compliance with the Fiscal Plan." PROMESA § 205; 48 U.S.C. § 2145.

30.     Consistent with PROMESA's reservation of "political or governmental powers" to Puerto Rico, "including expenditures" for the exercise of those powers, PROMESA § 303, 48 U.S.C. § 2163, the Oversight Board has differing levels of power and discretion with respect to each of these three mechanisms. The Oversight Board Chairman has acknowledged that the Board's powers are far from absolute and that the Government retains important and meaningful discretion to manage its affairs and operations. For example, the Oversight Board Chairman has stated that "[the Oversight Board] provides the room; [the Government] provide[s] the furniture."

12

José A. Delgado Robles, "Rosselló Needs More Than 2 Years for His Fiscal Plan," *El Nuevo Dia* (Feb. 27, 2017), *available at* https://www.elnuevodia.com/english/english/nota/rosselloneedsmore than2yearsforhisfiscalplan-2295579/ (last visited July 5, 2018) (a true and correct copy as retrieved on July 5, 2018 is attached as **Exhibit 1**).  The Oversight Board Chairman explained that the "room" is the amount of overall Government revenues; the Board is empowered to determine the amount of overall expenditures permitted to achieve savings, but the Government retains authority to determine the means by which those savings will be achieved. *See id.*  Through the Board Fiscal Plan and Board Budget, the Oversight Board is vastly exceeding the limitations on its powers—it is not only creating the size of the room (*i.e.,* establishing revenues and expenditures), but it is attempting to select and place every piece of furniture in it (*i.e.,* imposing policy through granular line-item expenditures and related measures to achieve those expenditures).

### A.    PROMESA's Fiscal Plan Certification Process

31.    PROMESA section 201 establishes a detailed procedure for adopting a fiscal plan. Under this procedure, the Governor is entitled in the first instance to develop and submit a proposed fiscal plan to the Oversight Board.  *See* PROMESA § 201(c)(2); 48 U.S.C. § 2141(c)(2). After reviewing the Governor's proposed fiscal plan, the Oversight Board must determine whether it "provide[s] a method to achieve fiscal responsibility and access to the capital markets" and satisfies 14 mandatory requirements of PROMESA section 201(b)(1).  48 U.S.C. § 2141(b)(1). Only if the Governor's fiscal plan submissions—including any revisions within the time specified by the Board—fail to satisfy PROMESA's enumerated fiscal plan requirements may the Oversight Board propose and certify its own fiscal plan.  *See* PROMESA § 201(d)(2); 48 U.S.C. § 2141(d)(2).

32.    PROMESA sets forth 14 criteria the Oversight Board must use in determining whether a proposed fiscal plan should be approved and certified.  *See* PROMESA § 201(b)(1); 48

13

U.S.C. § 2141(b)(1).  Importantly, *none* of these criteria involves specific policy pronouncements or limitations on particular categories of expenditures.  Rather, the criteria are limited to certain: (i) financial requirements;[3] (ii) informational requirements;[4] and (iii) other broad directives.[5] Although PROMESA section 201(b)(1)(a)(ii) requires a fiscal plan to identify any specific bills the Board believes are necessary to achieve compliance with the fiscal plan, PROMESA does not grant the Oversight Board authority to compel the Legislature to enact legislation.

### B.    PROMESA's Budget Certification Process

33.    The budget certification process is similar to the process for fiscal plans under which the Oversight Board must review the Government's proposed budget to determine whether it complies with the certified fiscal plan.  *See* PROMESA § 202; 48 U.S.C. § 2142.  As with fiscal plans, the Oversight Board may develop and certify its own budget only if the Governor fails timely to submit a compliant budget.  PROMESA § 202(e)(3); 48 U.S.C. § 2142(e)(3).  If a Board-imposed budget is certified, such budget is "deemed to be approved" by the Governor and Legislature under PROMESA section 202(e)(3).

34.    The Oversight Board's budget powers to certify a budget that is "deemed approved" by the Government do not include the power to pass a joint resolution implementing substantive policy measures of the sort the Legislature would pass.  PROMESA does not authorize the Board

---

[3]    The financial requirements include:  (i) ensuring adequate funding for essential public services, pension systems, and investments necessary to promote economic growth; (ii) providing for the elimination of structural deficits, and (iii) establishing sustainable debt burdens.  *See* PROMESA § 201(b)(1)(B)-(E), (J); 48 U.S.C. § 2141(b)(1)(B)-(E), (J).

[4]    The informational requirements include: (i) estimates of revenues and expenditures in conformance with agreed accounting standards; (ii) independent forecasts of revenue; (iii) a debt sustainability analysis; and (iv) additional information that the Oversight Board determines is necessary. *See* PROMESA § 201(b)(1)(A), (H), (I), (L); 48 U.S.C. § 2141(b)(1)(A), (H), (I), (L).

[5]    These broad directives include that the proposed fiscal plan "improve fiscal governance, accountability, and internal controls" and "enable the achievement of fiscal targets" or creditor-protection mechanisms that prohibit transferring funds from an instrumentality to the Government (or another instrumentality) or eliminating relative lawful priorities or liens. *See* PROMESA § 201(b)(1)(F)-(G), (M)-(N),; 48 U.S.C. § 2141(b)(1)(F)-(G), (M)-(N).

to usurp the legislative function; to the contrary, PROMESA section 204 gives the Board the authority to review and only under certain limited circumstances—*i.e.*, with respect to aggregate expenditures and revenues, and only after the applicable Government entity fails to issue a certificate that the estimated costs are "not significantly inconsistent" with the applicable fiscal plan pursuant to PROMESA section 204(a)(2)—to invalidate **new** laws, rules, regulations, executive orders, and contracts, leaving the power to legislate with the Legislature.  If Congress had wanted the Oversight Board to have the power to enact substantive legislation through the budget process, Congress would have said so.  It did not.  Moreover, Congress would not have created the elaborate and carefully balanced structures set forth in PROMESA sections 204(a)(2) and 202(d)(1) if the Oversight Board could simply legislate as it wished.  The Board's budgetary powers are therefore limited to the ordinary interpretation of the term "budget," *i.e.,* an itemization of revenues and expenses.

35.    A Board-imposed budget that includes substantive mandates far exceeds the Board's power under section 204 and overstates the Board's role in PROMESA's "dual regulatory scheme."  *See Centro De Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico*, Case No. 17-1743 (D.P.R. May 4, 2018) [ECF No. 36].  In fact, the Oversight Board Executive Director has acknowledged that if the Legislature fails to implement labor reform as required under the Board Budget, the Board will "have to revise the revenue numbers [and] . . . [t]hose revenues that are generated would have to be eliminated from the plan."  *PROMESA Oversight Board Certifies Its Own Versions of Fiscal Plans for Commonwealth, PREPA, PRASA; Matosantos Does not Support Either Version of Commonwealth Plan*, Reorg Research (Apr. 19, 2018, 7:59 PM), https://platform.reorg-research.com/app#company/1869/intel/view/52996 (last

visited July 5, 2018) (a true and correct copy as retrieved on July 5, 2018 is attached as **Exhibit 2**).

36.     In addition, any interpretation of PROMESA section 202(e)(3) that would permit the Board to impose joint resolutions on the Legislature would also implicitly amend the Puerto Rico Constitution, which requires that joint resolutions be passed under the ordinary legislative process for bills.  *See* P.R. Const., art. III § 18 ("every joint resolution shall follow the same legislative process as that of a bill").  If Congress intended for the Oversight Board—in contravention of the Puerto Rico Constitution—to impose legislation through the budget approval process, Congress would have stated so expressly.

37.     Significantly, with respect to territorial budgets (such as that of the Commonwealth), PROMESA includes no provision empowering the Oversight Board to implement specific policy decisions or direct Government operations.  *See* PROMESA § 203(d)(1); 48 U.S.C. § 2143(d)(1).  This omission is no accident; PROMESA expressly authorizes certain limited Oversight Board intervention in personnel decisions for instrumentalities, ***but not for the Commonwealth itself***.  For example, PROMESA allows the Oversight Board to institute automatic hiring freezes to bring the actual fiscal performance of a government instrumentality that has its own separate Title III petition into line with its certified budget.  *See* PROMESA § 203(d)(2)(B)(i); 48 U.S.C. § 2143(d)(2)(B)(i).  But PROMESA does not empower the Oversight Board to reduce personnel spending by the territorial Government.

### C.     Oversight Board Recommendations

38.     PROMESA section 205(a) authorizes, but does not require, the Oversight Board to make non-binding "recommendations" to the Government "on actions the territorial government *may* take to ensure compliance with the Fiscal Plan, or to otherwise promote the financial stability, economic growth, management responsibility, and service delivery efficiency of" the

Government."  48 U.S.C. § 2145(a).  The use of the term "may"—as opposed to "shall" or "must," as used in PROMESA sections 201(a), 201(b)(1), and 201(b)(2)—establishes a discretionary, rather than mandatory, duty.

39.     PROMESA also includes a non-exhaustive list of subject matters appropriate for recommendations.  *See* PROMESA § 205(a); 48 U.S.C. § 2145(a).  Unlike the broad criteria that PROMESA requires for a fiscal plan, the list of subject matters Congress deemed appropriate for recommendations is far more granular.[6]

40.     Consistent with this language, PROMESA section 205(b) establishes procedural mechanisms for the Government to adopt or reject such recommendations within 90 days, which underscore the Government's full discretion as to which recommendations should be implemented. *See* PROMESA § 205(b)(1), 48 U.S.C. § 2145(b)(1).  On the one hand, the Governor is authorized not to adopt an Oversight Board recommendation, as long as such rejection is accompanied by a written statement to the U.S. President and U.S. Congress explaining the Government's decision. *See* PROMESA § 205(b)(3); 48 U.S.C. § 2145(b)(3).  On the other hand, even if the Governor decides to adopt a recommendation, he retains discretion as to the extent to which the Government is adopting the recommendation and the means by which it will implement the recommendation. *See* PROMESA § 205(b)(2); 48 U.S.C. § 2145(b)(2) (requiring the Government only to provide a written implementation plan that includes "specific performance measures to determine ***the extent to which*** the [Government] has adopted the recommendation.").  Beyond this, PROMESA contains no mechanism to compel the Governor to accept an Oversight Board recommendation.

---

[6]     For example, appropriate subjects for recommendations include, among others: (i) "placing controls on expenditures for personnel,"  PROMESA § 205(a)(1), 48 U.S.C. § 2145(a)(1); (ii) modifying "the structural relationship of departments, agencies, and independent agencies" of the Government, PROMESA § 205(a)(2), 48 U.S.C. § 2145(a)(2); (iii) "the effects of the [Commonwealth's] laws and court orders on the operations" of the Government, PROMESA § 205(a)(7), 48 U.S.C. § 2145(a)(7); (iv) establishing a "personnel system . . . based upon employee performance standards," PROMESA § 205(a)(8), 48 U.S.C. § 2145(a)(8); and (v) "the adjustment of staffing levels," PROMESA § 205(a)(9), 48 U.S.C. § 2145(a)(9).

41.     Congress made a conscious decision to grant the Government broad discretion regarding recommendations.  The March 29, 2016 discussion draft of House Bill 5278, which ultimately evolved into PROMESA, would have empowered the Oversight Board to impose its recommendations over a Government rejection, stating that "the [Oversight Board], by a majority vote of the members of the [Oversight Board], *may take such action concerning the recommendation as the [Oversight Board] determines to be appropriate* . . . ."  H.R. 5278, § 207(c) (Mar. 29, 2016).   That "anti-democratic" provision was revised to ensure that the Oversight Board's recommendations under section 205(a) are non-binding.  H.R. Rep. 114-602(I), 2016 WL 3124840, at *114.  At the same time, PROMESA section 201(b)(1)(K) was included, providing that fiscal plans should "adopt *appropriate* recommendations submitted by the Oversight Board under section 205(a)." 48 U.S.C. § 2141(b)(1)(K).

42.     Taken together, the revision to section 205(a) and inclusion of section 201(b)(1)(K) indicate that Congress did not intend to empower the Oversight Board to impose its recommendations on the Government.  Instead, PROMESA granted the Oversight Board the power to make recommendations to the Government and, in the fiscal plan context, provided that the Government should adopt recommendations where appropriate.  The requirement that the fiscal plan include "appropriate recommendations," however, does not give the Board the power to impose its policy recommendations through the fiscal plan.  Rather, it permits the fiscal plan to include Board recommendations that are "appropriate"—*i.e.,* only those recommendations that the Government has agreed to adopt under PROMESA section 205(a).  If the Oversight Board could compel the Government to adopt its policy initiatives by imposing a Board-developed fiscal plan or budget that included such measures, it would nullify PROMESA section 205. *See U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009) (rejecting a statutory

18

construction that "would contradict well-established principles of statutory interpretation that require statutes to be construed in a manner that gives effect to all of their provisions"). Thus, any section 205(a) recommendation in a certified fiscal plan that the Government rejects as inappropriate is void and is not part of the certified fiscal plan.

43.    If Congress had wanted to grant the Board the power to impose binding policy initiatives—and to change substantive laws—through the Board's fiscal-plan certification powers, Congress could have said so, clearly and directly.  It did not.

## II.    Certification Process for the Commonwealth's Fiscal Plan and Budget

### A.    The Oversight Board Rejects the Governor's Fiscal Plan Proposals and Certifies its Own Fiscal Plan

44.    On March 13, 2017, the Oversight Board certified a Governor-proposed fiscal plan for the Commonwealth under PROMESA section 201(e)(1), which was subsequently corrected on April 26, 2017 and updated with a revised fiscal plan model on August 29, 2017 (as corrected and updated, the "2017 Certified Commonwealth Fiscal Plan").

45.    During September 2017, Hurricanes Irma and María caused widespread damage throughout Puerto Rico.  On October 31, 2017, in light of the new reality facing Puerto Rico as a result of the devastating effects of these historic storms on the Commonwealth's infrastructure and economy, the Oversight Board requested the Governor to submit a new Commonwealth fiscal plan to replace the 2017 Certified Commonwealth Fiscal Plan.

46.    On January 24, 2018, the Governor submitted to the Oversight Board a revised Commonwealth fiscal plan (the "January 24, 2018 Commonwealth Fiscal Plan Submission").  On February 5, 2018, the Oversight Board sent the Governor a notice of violation under PROMESA section 201(c)(3)(B)(i), asserting that the January 24, 2018 Commonwealth Fiscal Plan Submission required further revisions in order to meet the certification criteria under PROMESA

section 201(b)(1).  This notice of violation required the Governor to submit a revised fiscal plan that included certain changes to baseline projections,[7] structural reforms,[8] and fiscal measures.[9]

47.    On February 12, 2018, the Governor submitted to the Oversight Board a second revised Commonwealth fiscal plan (the "February 12, 2018 Commonwealth Fiscal Plan Submission"), which responded to the Oversight Board's February 5 notice of violation.  The February 12, 2018 Commonwealth Fiscal Plan Submission was also rejected by the Oversight Board.

48.    After several weeks of intense negotiation between the Governor and Oversight Board, on March 23, 2018, the Governor submitted to the Oversight Board a third revised Commonwealth fiscal plan (the "March 23, 2018 Commonwealth Fiscal Plan Submission").  On March 28, 2018, the Oversight Board again sent the Governor a notice of violation under PROMESA section 201(c)(3)(B)(i), which asserted that the March 23, 2018 Commonwealth Fiscal Plan Submission required additional changes to baseline projections, structural reforms, and fiscal measures before the Board could certify it.

49.    On April 2, 2018, the Governor sent a response letter to the Oversight Board, stating that certain of the Board's suggested revisions in its March 28 notice of violation were in fact

---

[7]    The Oversight Board's required changes to "baseline projections" in a revised fiscal plan included, among other things:  (i) any federal disaster relief appropriations for Puerto Rico; (ii) specific backup data for general fund revenue projections on a line-by-line basis; (iii) sufficient capital expenditures of $400 million per year; and (iv) emergency reserves of $650 million over the next five years and building to a total of $1.3 billion over the next ten years.

[8]    The Oversight Board's required changes to "structural reforms" included, among other things:  (i) improvements in specific World Bank Ease of Doing Business measures; (ii) labor market and welfare reforms; (iii) tax reforms; (iv) infrastructure reforms and capital investment; (v) human capital targets (such as improvements to test scores related to Spanish, Math, and English proficiency and a target for retention of new employees); and (vi) power sector reforms.

[9]    The Oversight Board's required changes to "fiscal measures" included, among other things:  (i) details regarding municipal subsidies and transition to a county structure; (ii) long-term reductions in pension liabilities; (iii) detailed explanations for achieving healthcare savings by initiative; (iv) detailed reduction of agency costs; (v) tax compliance measures; and (vi) the establishment of an Office of the CFO to establish centralized management and operational control over all Government fiscal agencies.

policy "recommendations" as addressed in PROMESA section 205(a), which the Board cannot mandate the Government to adopt.  In particular, the Governor noted that the suggested revisions were inappropriate because they would:  (i) require legislative or executive action (such as labor reform and pension reform); (ii) alter existing law or contracts (such as removing the annual cap on the Crudita petroleum tax, changing the flow of Government funds, and eliminating Christmas bonuses); or (iii) attempt to control day-to-day Government operations (such as imposing specific traffic initiatives and rejecting the Government's proposal to transition to a county government model).  Through his April 2 letter, the Governor communicated to the Oversight Board that the Government's further revised fiscal plan would not include these recommendations, which exceed the scope of the Oversight Board's powers under PROMESA.

50.     On April 5, 2018, the Governor submitted to the Oversight Board a fourth revised Commonwealth fiscal plan (the "April 5, 2018 Commonwealth Fiscal Plan Submission"), which did not incorporate the Board's recommended policy initiatives as discussed in the Governor's April 2 letter.

51.     On April 19, 2018, the Oversight Board held its 12th public meeting at which it rejected the Governor's April 5, 2018 Commonwealth Fiscal Plan Submission and instead certified its own fiscal plan for the Commonwealth under PROMESA sections 202(d)(2) and 202(e)(2) (the "April 19, 2018 Board Fiscal Plan").  The April 19, 2018 Board Fiscal Plan was substantially similar to the Governor's April 5, 2018 Commonwealth Fiscal Plan Submission.  Although the two fiscal plans incorporated different revenue and expense assumptions, both projected a surplus of approximately $1.4 billion by fiscal year 2023.  In fact, the two fiscal plans differed only as to $152 million in annual anticipated savings (out of $25 billion total), such that the April 19, 2018 Board Fiscal Plan included only 1.7 percent more of incremental savings as compared to the

Governor's April 5, 2018 Commonwealth Plan Submission. Importantly, the Oversight Board's rejected policy recommendations largely accounted for that difference.

52.     At the Board's April 19, 2018 public meeting, the Oversight Board praised the Governor and AAFAF for their cooperation in seeking consensus throughout the fiscal plan process. For example, Oversight Board Member Carlos García stated that:

> I want to start, first of all, by applauding both the Governor, Mr. [Christian] Sobrino, Mr. [Gerardo] Portela, and their teams.[10] It is always easy just to focus on all the things [on which] we have disagreed, but *we have walked together a long walk in many months* and now over a year that this board has been established and *we have agreed on a very substantial amount of items that are critical and very difficult*. And *working to seek consensus*, working to understand the measures, to see how we can achieve all the conflicting sometimes objectives that PROMESA has of achieving fiscal balance and sustainability, revitalizing the economy, a reasonable solution to the debt crisis and regaining access to the capital market.

Carlos M. Garcia, Remarks at 12th Public Meeting of the Financial Oversight and Management Board for Puerto Rico at 3:38:20 (Apr. 19, 2018), *available at* https://www.youtube.com/watch?v=JhfzYNOATLY.

53.     Also at the Board's April 19 public meeting, Mr. Sobrino asked the Oversight Board Executive Director how the April 19, 2018 Board Fiscal Plan could be implemented if the recommended labor reform measures were not ultimately adopted by the Legislature and signed into law by the Governor. *See* Christian Sobrino Vega, Remarks at 12th Public Meeting of the Financial Oversight and Management Board for Puerto Rico at 1:50:20 (Apr. 19, 2018), *available at* https://www.youtube.com/ watch?v=JhfzYNOATLY. The Oversight Board Executive Director responded that "[t]o enforce the fiscal plan [the Board] would have to revise the revenue numbers

---

[10]  Mr. Sobrino is the Governor's designated *ex officio* member of the Oversight Board. Mr. Portela is the Executive Director of AAFAF.

because the fiscal plan includes the revenues projected with that growth [attributable to labor reforms] and we would have to revise the reinvestment that came out of that revenue growth." Natalie Jaresko, Remarks at 12th Public Meeting of the Financial Oversight and Management Board for Puerto Rico at 1:50:27 (Apr. 19, 2018), *available at* https://www.youtube.com/ watch?v=JhfzYNOATLY.  Thus, the Oversight Board Executive Director has acknowledged that the Board has no power to force the Government to adopt the recommended measures contained in its certified fiscal plans.

54.    The April 19, 2018 Board Fiscal Plan was not certified unanimously.  Oversight Board Member Ana Matosantos objected to the Board's certification because the Board's proposal "cuts too deeply" and "insufficiently capitalizes on federal funding," while imposing austerity measures "that generate near term surpluses but may return to fiscal cliffs."  *PROMESA Oversight Board Certifies Its Own Versions of Fiscal Plans for Commonwealth, PREPA, PRASA; Matosantos Does not Support Either Version of Commonwealth Plan*, REORG RESEARCH (Apr. 19, 2018, 7:59 PM), https://platform.reorg-research.com/app#company/1869/intel/view/52996 (last visited July 5, 2018).  Ms. Matosantos also noted that the April 19, 2018 Board Fiscal Plan would threaten the safety net for too many people.  *See id.*  She further noted that fiscal plans generally should provide a "clear feasible path to plans of adjustment" and avoid the prospect of a future default.  *See id.*[11]

---

[11]    *See also* Ana J. Matosantos, Remarks at 12th Public Meeting of the Financial Oversight and Management Board for Puerto Rico at 3:43:34 (Apr. 19, 2018) ("I am simply not willing to support massive cuts to the safety net of low income seniors, children, and people with disabilities. Slashing funding to the Universidad de Puerto Rico, making the largest cutbacks to public pensions in the United States, and imposing innumerable additional austerity measures only is a beginning of more pain to come. I understand deep cuts are necessary, and have been and will continue to support what is needed to right the fiscal ship. But I cannot do that when that is all there is. I cannot support too much pain with too little promise. Austerity measures that generate near term surpluses but may very well lead to another fiscal cliff are not in the best interest of Puerto Rico, its retirees, creditors, or its future. I also heed the caution of experts who believe that growth assumptions under both plans are overly optimistic. In my view, there is simply too much risk, too much downside for the people of Puerto Rico and its future under these plans."), *available at* https://www.youtube.com/watch?v=JhfzYNOATLY.

55.     On April 24, 2018, the Oversight Board delivered a compliance certification letter and a copy of the certified April 19, 2018 Board Fiscal Plan to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico as required under PROMESA section 201(e)(2).

**B.      Post-Certification Budget Developments and Rejection of Recommendations**

56.     On April 26, 2018, the Oversight Board sent the Governor a letter dated April 24, 2018 under PROMESA section 202 setting forth (i) a proposed schedule for developing and certifying the Commonwealth's fiscal year 2019 budget and (ii) a revenues forecast for fiscal year 2019.

57.     On May 2, 2018, the Oversight Board sent AAFAF a letter describing detailed expense reductions and right-sizing measures that the Board sought to impose on the Government to achieve $345 million of savings in fiscal year 2019.  The Board also submitted a draft budget resolution for adoption by the Legislature, which included provisions that would restrict the Government's use of budgeted funds.  The Board's May 2 letter also proposed detailed expense measures that set forth line-by-line amounts for expense items such as right-sizing measures, healthcare measures, and subsidy reductions.  The expense measures included specific personnel and non-personnel expenditure amounts for each relevant Government agency or instrumentality covered by the Commonwealth budget.

58.     On May 4, 2018, the Governor submitted a proposed Commonwealth budget for fiscal year 2019 (the "May 4 Budget Proposal").

59.     On May 6, 2018, the Governor submitted a written statement pursuant to PROMESA section 205(b)(3) to the Oversight Board, the U.S. President, and Congressional leaders, explaining that certain policy initiatives outlined by the Board in connection with the April 19, 2018 Board Fiscal Plan constitute recommendations under PROMESA section 205, and that

the Board cannot impose these recommendations on the elected Government. A true and correct copy of the Governor's May 6, 2018 statement is attached hereto as **Exhibit 3**. The Governor advised that the Government was rejecting certain recommendations, including, among other measures:

- ***Private-Sector Human-Capital and Labor Reforms.*** Under the *Labor Transformation and Flexibility Act*, Law No. 4 of January 26, 2017 ("Law 4-2017"), the Government enacted measures to relax certain legal requirements for the hiring and retention of employees to improve Puerto Rico's competiveness and foster economic development. The April 19, 2018 Board Fiscal Plan recommended supplanting Law 4-2017 by: (i) converting private-sector employees to "at-will" employees; (ii) reducing mandated sick leave and vacation pay; (iii) eliminating mandatory Christmas bonuses; and (iv) increasing the minimum wage for workers over 25 years of age. The Government rejected these labor-reform measures as inappropriate recommendations because each would require the Government to pass legislation to adopt.

- ***Pension Reforms.*** The April 19, 2018 Board Fiscal Plan recommended an average 10 percent cut in all public sector pension benefits and an immediate freeze of certain defined benefit plan obligations. The Government rejected these recommendations as unsound because the proposed cuts would impose a disproportionate burden on Puerto Rico's workers, retirees, and families. In addition, because the Government recently transitioned to a single "pay-as-you-go" system through the *Law to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Employees*, Law No. 106 of August 23, 2017 ("Law 106-2017") (as the 2017 Certified Commonwealth Fiscal Plan contemplated), reducing benefits to retirees today would not preserve any corpus to finance benefits in the future unless the law is modified.

- ***Government Agency Consolidations.*** Although the Government's fiscal plan submissions proposed right-sizing government operations, the April 19, 2018 Board Fiscal Plan attempted to dictate how the Government would organize itself to conduct day-to-day operations. Because these consolidations would require legislation to implement and would impose mandatory personnel cuts if the elected Government failed to meet efficiency targets, the Government rejected these policy recommendations as unsound.

- ***Compensation Related Initiatives.*** The April 19, 2018 Board Fiscal Plan also recommended additional measures affecting government-employee compensation, including (i) instituting a hiring freeze, (ii) limiting paid holidays to 15 days annually across all public employees, (iii) prohibiting carryover of sick and vacation days between fiscal years, (iv) prohibiting any future liquidation of sick and vacation days, (v) eliminating the Christmas bonuses for all public employees, and (vi) standardizing employee healthcare benefits so that all

employees receive a Government healthcare contribution of $100 per month. The Government rejected these policy recommendations because such measures would effectively reduce government employee compensation and increase outmigration when Puerto Rico could least afford it as working families continue to recover from Hurricanes Irma and María.

- ***Reductions in Appropriations to UPR.***  The April 19, 2018 Board Fiscal Plan recommended targets for reducing Commonwealth appropriations to the University of Puerto Rico ("UPR") by $275 million by fiscal year 2023.  Because the Board seeks to dictate precisely how UPR must endeavor to achieve those savings, the Government rejected these measures as inappropriate policy recommendations beyond the scope of the Oversight Board's fiscal powers under PROMESA.

60.     On May 10, 2018, the Oversight Board issued a notice of violation to the Governor under PROMESA section 202(c)(1)(B)(i), stating that the May 4 Budget Proposal was not compliant with the April 19, 2018 Board Fiscal Plan.  The notice of violation claimed to identify several inconsistencies, including: (i) the failure to include UPR and workforce development reinvestments generated from comprehensive labor reform; (ii) the inclusion of Christmas bonuses for Government employees; and (iii) a number of informational deficiencies.  In addition, the notice of violation requested the Governor to submit a revised fiscal year 2019 Commonwealth budget addressing the identified inconsistencies by May 18, 2018.

## C.     Oversight Board Certifies a Budget Attempting to Impose Rejected Policy Initiatives

61.     Over the ensuing week, the Governor and Oversight Board engaged in negotiations to bridge the gap between the May 4 Budget Proposal and the Oversight Board's required revisions.

62.     On May 15, 2018, the Oversight Board sent the Governor a letter granting the Governor's request to extend the budget submission deadline from May 18, 2018 to May 25, 2018 as the result of progress made during the prior week's discussions.

26

63.     On May 20, 2018, the parties reached an agreement in which the Oversight Board would amend and recertify the April 19, 2018 Board Fiscal Plan to, among other things, (i) include a $101 million reduction to the projected annual surplus for fiscal year 2019, and (ii) exclude the Oversight Board's prior requirements to reduce the minimum number of vacation and sick days for private sector employees and to eliminate Christmas bonuses.   In exchange, the Governor agreed to present a bill to repeal of *Puerto Rico's Wrongful Termination Act*, Law No. 80 of May 30, 1976 (as amended, "Law 80") for the Legislature to approve by June 27, 2018.   *See* "Oversight Board to Amend Commonwealth Fiscal Plan to Ensure Timely Implementation of Critical Structure Reforms," Press Release (May 20, 2018) (a true and correct copy of the May 20, 2018 press release is attached at **Exhibit 4**).

64.     On May 28, 2018, the Governor submitted to the Legislature a standalone bill to repeal Law 80.

65.     On May 30, 2018, the Oversight Board certified an amended version of the April 19, 2018 Board Fiscal Plan, which contained the revisions agreed to with the Government on May 20, 2018 (the "May 30, 2018 Board Fiscal Plan").

66.     On May 31, 2018, the Oversight Board delivered a compliance certification letter and a copy of the certified May 30, 2018 Board Fiscal Plan to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico as required under PROMESA section 201(e)(2).

67.     On June 4, 2018, the Oversight Board submitted a letter to the Honorable Jorge Navarro Suárez, who is the President of the Government Commission of the Puerto Rico House of Representatives, stating that, if the Legislature failed to repeal Law 80, "the Oversight Board would revert to the [April 19, 2018 Board] Fiscal Plan . . . and would submit a budget to the

Governor and Legislature that is consistent with that Fiscal Plan." June 4 Letter at 1. In addition, the Oversight Board threatened that "if the Government of Puerto Rico fails to comply exactly with the understanding reached with the Oversight Board concerning the repeal of Law 80," the Oversight Board would impose a budget that:

- Eliminates the annual appropriation for the Christmas bonus for public sector employees;

- Eliminates the annual appropriation of $25 million for student scholarships at the University of Puerto Rico;

- Eliminates the annual appropriation of $50 million for economic development initiatives for municipalities;

- Eliminates the multiyear fund of $345 million for various economic development and reform implementation initiatives as requested by the Government;

- Maintains the elimination of the Christmas bonus for both public sector and private sector employees, as well as the reduction in sick days and paid leave for private sector employees; and

- Maintains the cuts to the budget of the Legislature and Judiciary.

68.     On June 29, 2018, the Oversight Board certified a revised Commonwealth fiscal plan (the "Board Fiscal Plan") that is substantially similar to the April 19, 2018 Board Fiscal Plan in light of the Legislature's failure to repeal Law 80 by June 27, 2018. That same day, the Oversight Board delivered a compliance certification letter and a copy of the certified Board Fiscal Plan to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico. A true and correct copy of the Board's June 29, 2018 certification letter containing the Board Fiscal Plan is attached as **Exhibit 5**.

69.     The Board Fiscal Plan includes the following objectionable provisions:

- ***Suspension of Reprogramming Authorization for Prior Fiscal Years.*** The Board Fiscal Plan seeks to suspend the Government's authorization to seek reprogramming for prior fiscal years, stating that "[a]ny power of OMB, the Fiscal Agency and Financial Advisory Authority ("AAFAF", by its Spanish acronym) or the Department of the Treasury, including the authorities granted under Act 230-

1974, as amended, known as the "Puerto Rico Government Accounting Act" ("Act 230"), to authorize the reprogramming or extension of appropriations of prior fiscal years is hereby suspended. Notwithstanding this section, the appropriations approved in the budget certified by the Oversight Board may be modified or reprogrammed with the approval of the Oversight Board."   Board Fiscal Plan § 11.2.1.

- *Imposed Government Agency Consolidations.* The Board Fiscal Plan attempts to dictate how the Government will organize itself to conduct day-to-day operations, including through the creation of an Office of the Chief Financial Officer and to "right-size" the Government through agency consolidation and reduction and/or elimination of government services. *See* Board Fiscal Plan § 12. Some, but not all, of these consolidations were agreed to by AAFAF as part of the fiscal plan development process.

- *Automatic Budget Reductions for Future Fiscal Years.* The Board Fiscal Plan seeks to impose automatic budget reductions on the Government, stating that, "[i]f, after the third fiscal quarter of any fiscal year there remains unrealized agency efficiency savings for any grouping relative to the projected agency efficiency savings in the New Fiscal Plan for the applicable fiscal year, the Oversight Board will automatically reduce the budget for the corresponding grouping for the following fiscal year in the amount equal to the unrealized agency efficiency savings. In particular, if the Oversight Board determines that there is material underperformance in agency efficiency savings relative to the projections set forth in the New Fiscal Plan, intentional workforce reductions will be necessary to meet the agency efficiency savings targets set forth herein." Board Fiscal Plan § 12.3.

- *Elimination of Statutorily Mandated Christmas Bonuses.* The Board Fiscal Plan sets forth several recommendations affecting government-employee compensation, including: (i) instituting a hiring freeze; (ii) limiting paid holidays to 15 days annually across all public employees; (iii) prohibiting carryover of sick and vacation days between fiscal years; (iv) prohibiting any future liquidation of sick and vacation days; (v) eliminating the Christmas bonuses for all public employees; and (vi) standardizing employee healthcare benefits so that all employees receive $100 worth of benefits per month. See Board Fiscal Plan § 12.4. The Christmas bonuses that the Board Fiscal Plan seeks to eliminate are statutorily mandated under Puerto Rico's Christmas Bonus Act, Law No. 148 of June 30, 1969 ("Law 148-1969"), as amended by Law 4-2017 and the Fiscal Plan Compliance Act, Law No. 26 of April 29, 2017 ("Law 26-2017").

70.    On June 29, 2018, the House of Representatives and Senate of Puerto Rico both voted to approve a fiscal year 2019 Commonwealth budget (the "Legislature Budget"), which the Governor later signed.  The Legislature has not repealed Law 80, and its budget does not provide for Law 80's repeal.

71.     On June 30, 2018, the Oversight Board certified is own Commonwealth budget for fiscal year 2019 (the "Board Budget") after determining that the Governor and Legislature failed to submit a budget that complied with the Board Fiscal Plan.  Notably, the appropriations under the Board Budget are substantially the same as those approved under the Legislature Budget, except for the objectionable provisions set forth below that attempt to impose the Board's policy preferences.  That same day, the Oversight Board delivered a compliance certification letter and a copy of the certified Board Budget to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico.

72.     The Board Budget includes four joint resolutions (collectively, the "Budget Resolutions"):  (i) a joint resolution authorizing expenditures from the General Fund (the "General Fund Resolution"); (ii) a joint resolution authorizing expenditures for special, permanent, or temporary programs (the "Special Resolution"); (iii) a joint resolution increasing available resources from the Crudita tax (the "Crudita Resolution"); and (iv) a joint resolution regarding the lottery (the "Lottery Resolution").  A true and correct copy of the General Fund Resolution with a certified translation is attached as **Exhibit 6**.  A true and correct copy of the Special Resolution with a certified translation is attached as **Exhibit 7**.

73.     The Budget Resolutions are not simply itemized budgets.  Rather, the Oversight Board has used them to dictate substantive policy and effectively make new laws for Puerto Rico, including the following key provisions:

- *Limitations on Government Reprogramming Rights.*  The Budget Resolutions include the following provisions limiting the Government's reprogramming rights under PROMESA section 204(c):

    o  Section 7 of the General Fund Resolution and Special Resolution provide that:  "Any power of OMB, AAFAF or the Department of the Treasury, including the authorities granted under Act 230-1974, as amended, known as the "Puerto Rico Government Accounting Act" ("Act 230"), to authorize the reprogramming or extension of appropriations of prior fiscal years is

30

hereby suspended. Notwithstanding this section, the appropriations approved in the budget certified by the Oversight Board may be modified or reprogrammed with the approval of the Oversight Board." Notably, this language is identical to the language in section 11.2.1 of the Board Fiscal Plan.

    o  Section 10 of the General Fund Resolution provides that: "OMB may withhold from any of the allocations to the agencies of the Executive Branch the amounts necessary to pay for the pay-go contribution, unemployment insurance, or taxes withheld from their employees, when OMB determines that such a withholding is necessary to ensure compliance with these obligations by the agencies concerned. Any such amounts withheld by OMB shall solely be reprogrammed to pay the corresponding outstanding obligations related to pay-go contributions, unemployment insurance, or taxes withheld from employees as allowed in this Section."

- *Mandates for Corrective Action.* Section 15 of General Fund Resolution and section 14 of the Special Resolution provide that: "If during the fiscal year the government fails to comply with the liquidity and budgetary savings measures required by the New Fiscal Plan for Puerto Rico certified by the Oversight Board, the Government shall take all necessary corrective action, including the measures provided in PROMESA sections 203 and 204."

- *Expansion of Board's Punishment Powers for Budget Non-Compliance.* Section 16 of the General Fund Resolution and section 15 of the Special Fund Resolution provide that: "The Secretary of Treasury, the treasurer and Executive Directors of each agency or Public Corporation covered by the New Fiscal Plan for Puerto Rico certified by the Oversight Board, and the Director of the OMB (or their respective successors) shall be responsible for not spending or encumbering during fiscal year 2019 any amount that exceeds the appropriations authorized for such year. This prohibition applies to every appropriation set forth in this Joint Resolution, including appropriations for payroll and related costs. Any violation of this prohibition shall constitute a violation of this Joint Resolution and Act 230."

- *Funding of Oversight Board Members' Favored Projects.* The Special Resolution includes a line-item expenditure for the Institute of Puerto Rican Culture in the amount of $437,000 to fund the "operating expenses of the Luis Muñoz Marin Foundation." Special Resolution § 1(23)(F). On information and belief, this expenditure was inserted on the express instructions of one of the Oversight Board Members. The inclusion of a pet project of an Oversight Board Member is inappropriate micro-managing, serves no discernable purpose, and aims to establish a public policy.

31

74.     None of the foregoing provisions in the Board Fiscal Plan and Budget Resolutions are proper exercises of the Board's power under PROMESA or permitted by PROMESA itself. Instead, they represent overreach by the Board.[12]

## COUNT I[13]

### DECLARATORY JUDGMENT THAT THE OVERSIGHT BOARD CANNOT MANDATE IMPLEMENTATION OF REJECTED POLICY RECOMMENDATIONS THROUGH ENFORCEMENT OF THE BOARD FISCAL PLAN
### (PROMESA § 205)

75.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–74 as if fully set forth herein.

76.     As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers.   While PROMESA grants the Oversight Board broad powers to approve fiscal plans, it limits the Oversight Board's power with respect to policy-making matters. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

77.     In attempting to control Government policy, the Oversight Board certified the Board Fiscal Plan, which contains policy initiatives that the Board seeks to impose on the Government.   This use of the Board's fiscal plan certification powers circumvents Congress' express preservation of the Commonwealth's political and governmental powers to the Government under PROMESA section 303.  The Oversight Board exceeded its powers in seeking

---

[12]   The Board's actions infringe the powers reserved to the Commonwealth under PROMESA and the Puerto Rico Constitution, which is also federal law approved by Congress.  *See* P.R. Const., Pub.L. 82–447, 66 Stat. 327 (enacted July 3, 1952).  Such rights cannot be preempted by the Board under PROMESA which merely states that PROMESA "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."   Here, the Board is trying to usurp power that belongs to the Government and thereby exercise governmental and political powers that the Board itself lacks under PROMESA.

[13]   Plaintiffs reserve the right to amend this complaint, or to file additional complaints, to assert causes of action relative to instrumentality budgets certified by the Oversight Board on June 30, 2018, and which are included in the Board Fiscal Plan or for whom the Oversight Board certified their individual fiscal plans.

to impose policy initiatives through the Board Fiscal Plan. Such policy initiatives therefore constitute no more than non-binding recommendations.

78. Plaintiffs are therefore entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the rejected policy recommendations in the Board Fiscal Plan are non-binding recommendations and that the Government is not obligated to implement any of those policies, and the Oversight Board may not take any actions to force compliance with such recommendations. To be clear, the Government does not seek a declaration that the Board Fiscal Plan was improperly certified, or that the Board Fiscal Plan suffers from any legal infirmities except to the extent set forth with respect to specific policy recommendations that cannot be imposed by the Board.

79. Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the suspension of Act 230 and reprogramming authorization for prior fiscal years under Board Fiscal Plan section 11.2.1—which "places controls on expenditures" under PROMESA section 205(a)(1)—is a non-binding recommendation because (i) it is inconsistent with the reprogramming standard under PROMESA section 204(c), which does not prohibit reprogramming requests for prior fiscal years, (ii) inappropriately attempts to modify AAFAF's powers under Law 2-2017 and Act 230, among others, without following PROMESA's provisions for reviewing legislation, and (iii) is an inappropriate use of the Board's budget power to shift responsibilities of Government officials.

80. Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the provisions seeking to impose Government agency consolidations under Board Fiscal Plan section 12—which affects "the structural relationship of departments, agencies, and independent agencies within the territorial government" under

33

PROMESA section 205(a)(2), and "modifi[es] or transfers the types of services that are the responsibility of, and are delivered by the territorial government" under PROMESA section 205(a)(5)—are non-binding recommendations because the structure of Government agencies and roles are dictated by the Puerto Rico Constitution and Puerto Rico laws that were not preempted by PROMESA and are not within the purview of the Oversight Board to change through its enumerated powers under PROMESA section 104.

81.    Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the provision requiring automatic budget reductions for future fiscal years (including intentional workforce reductions) under Board Fiscal Plan section 12.3—which "places controls on expenditures" under PROMESA section 205(a)(1)—is a non-binding recommendation because (i) the Board cannot mandate workforce reduction through the budget process, and (ii) nothing in PROMESA allows the Oversight Board to dictate personnel decisions for the Commonwealth.

82.    Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the provision requiring the elimination of certain mandatory benefits under Board Fiscal Plan section 12.4—which "places controls on expenditures for personnel" and "reduc[es] benefit costs" under PROMESA section 205(a)(1)—is a non-binding recommendation that the Oversight Board cannot unilaterally alter through the Board Fiscal Plan and force on the Government.

83.    Plaintiffs are further entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that any matters that constitute recommendations (whether or not styled as recommendations) under the Fiscal Plan that the Government has rejected

or may rejected in the future (whether set forth herein or otherwise) are non-binding on the Government and do not need to be implemented by the Government.

## COUNT II

### DECLARATORY JUDGMENT THAT THE OVERSIGHT BOARD CANNOT MANDATE THE IMPLEMENTATION OF REJECTED POLICY RECOMMENDATIONS THROUGH THE BOARD-CERTIFIED BUDGET (PROMESA § 204)

84.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–74 and 76-83 as if fully set forth herein.

85.    As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers.  While PROMESA grants the Oversight Board broad powers to approve budgets, it limits the Oversight Board's power with respect to policy-making matters. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

86.     The Oversight Board's policy recommendations under the Board Fiscal Plan that the Government rejected under PROMESA section 205 cannot be implemented via the Board Budget as a matter of law. Nor can the Oversight Board use its powers under PROMESA § 202 to enact substantive legislation.

87.    Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the elimination of Christmas bonuses under the Board Budget and Budget Resolutions—which "places controls on expenditures for personnel" and "reduc[es] benefit costs" under PROMESA section 205(a)(1), and would "modify the effects of the territory's laws" under PROMESA section 205(a)(7)—is a non-binding recommendation that cannot be forced on the Government.

35

88.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the provision in the Board Budget limiting the Government's reprogramming rights under General Fund Resolution sections 7 and 10 and Special Resolution section 7—which "places controls on expenditures" under PROMESA section 205(a)(1)—is not enforceable because it is (i) inconsistent with the reprogramming procedure under PROMESA section 204(c), and (ii) attempt to modify AAFAF's powers under Law 2-2017 and Act 230, among others, without following PROMESA's provisions for reviewing legislation.

89.     The Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the provision in the Board Budget requiring the Government to take all necessary and corrective action to comply with the Board Fiscal Plan measures under General Fund Resolution section 15 and Special Resolution section 14—which "places controls on expenditures" under PROMESA section 205(a)(I) is not enforceable because such provisions are (i) an impermissible attempt to expand the Board's limited budget enforcement powers under PROMESA section 203(d)(1), (ii) inconsistent with the reprogramming procedure under PROEMSA section 204(c), and (iii) an abuse of the Board's budget powers as a backdoor attempt to legislate.

90.     The Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the provision expanding the Board's punishment powers for budget non-compliance under General Fund Resolution section 16 and Special Fund Resolution section 15 which would "effect the territory's laws . . . on the operation of the territorial government" is not enforceable because (i) such provisions seek to impose Act 230 punishments on appropriation violations, which include criminal punishments that can only be established by the Legislature, and (ii) the Board's punishment powers for budget non-compliance are limited to

36

PROMESA section 104(*l*), which does not include the power to apply criminal punishment to the actions of Government officials.

91.    Plaintiffs are further entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that any matters that constitute recommendations (whether or not styled as recommendations) under the Fiscal Plan that the Government has rejected or may reject in the future (whether set forth herein or otherwise) are non-binding on the Government, do not need to be implemented by the Government, and cannot be imposed on the Government via the Board Budget.

92.    Plaintiffs are further entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that any provisions of the Board Budget that exceed the Board's powers under PROMESA §202 are unlawful.

## COUNT III

**INJUNCTION PROHIBITING THE DEFENDANTS FROM IMPLEMENTING AND ENFORCING THE OVERSIGHT BOARD'S REJECTED POLICY RECOMMENDATIONS IN THE BOARD FISCAL PLAN AND BOARD BUDGET (PROMESA § 303)**

93.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–74, 76-83, and 85-92 as if fully set forth herein.

94.    Plaintiffs seek equitable relief in the form of an injunction prohibiting the Defendants from implementing and enforcing the Oversight Board's rejected policy recommendations contained in the Board Fiscal Plan and Board Budget while this action is pending. Additionally, the Plaintiffs request that, to the extent they seek a preliminary injunction, such preliminary injunction against the Defendants be converted to a permanent injunction upon the Court's determination of this matter on the merits.

95. The Plaintiffs will likely succeed on the merits of their claims or, alternatively, have raised sufficiently serious questions going to the merits. Without the requested injunctions, Plaintiffs would be irreparably harmed because the implementation of the Board Fiscal Plan and Board Budget would prevent them from freely exercising their political and governmental powers to allocate the Commonwealth's limited resources at this critical juncture in Puerto Rico's restructuring process.

96. Therefore, the Plaintiffs are entitled to equitable relief in the form of an injunction prohibiting the Defendants from implementing and enforcing the Board's rejected policy recommendations, whether through the Fiscal Plan or Board Budget, and to prevent the Board from exceeding its powers under PROMESA Section 202.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray that judgment be entered for them and against the Defendants as follows:

A. Declaring that the Oversight Board lacks the authority to impose policy initiatives on the Government through a fiscal plan and/or budget, including the Board Fiscal Plan and Board Budget;

B. Declaring that the substantive policy mandates contained in the Board Fiscal Plan and rejected by the Governor pursuant to PROMESA section 205 are null and void;

C. Declaring that the substantive policy mandates contained in the Board Budget exceeds the Board's powers and are null and void;

D. Enjoining the Defendants from implementing and enforcing the Oversight Board's rejected policy recommendations (whether or not styled as recommendations) contained in the Board Fiscal Plan and Board Budget; and

E.     Granting such other and further relief as the Court deems just and proper.

Dated:  July 5, 2018
         San Juan, Puerto Rico

Respectfully submitted,

/s/ *John J. Rapisardi*                               /s/ *Luis C. Marini-Biaggi*

John J. Rapisardi                                    Luis C. Marini-Biaggi
William J. Sushon                                    USDC No. 222301
(Admitted *Pro Hac Vice*)                            Email: lmarini@mpmlawpr.com
**O'MELVENY & MYERS LLP**
7 Times Square                                       Carolina Velaz-Rivero
New York, New York 10036                             USDC No. 300913
Tel:   (212) 326-2000                                E:mail: cvelaz@mpmlawpr.com
Fax:  (212) 326-2061

-and-                                                **MARINI PIETRANTONI MUÑIZ LLC**
                                                     MCS Plaza, Suite 500
Peter Friedman                                       255 Ponce de León Ave.
(Admitted *Pro Hac Vice*)                            San Juan, Puerto Rico 00917
1625 Eye Street, NW                                  Tel: (787) 705-2171
Washington, D.C. 20006                               Fax: (787) 936-7494
Tel:  (202) 383-5300
Fax: (202) 383-5414                                  *Attorneys for Governor Rosselló Nevares*
                                                     *and the Puerto Rico Fiscal Agency and*
-and-                                                *Financial Advisory Authority*

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel:  (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Governor Rosselló Nevares*
*and the Puerto Rico Fiscal Agency and*
*Financial Advisory Authority*