UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 3019, 3023**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**This Objection relates to the Commonwealth, HTA, and PREPA, and shall be in Case Nos. 17 BK 3283-LTS, 17 BK 3567-LTS, and 17 BK 4780-LTS.** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"), | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| Debtor. | |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

**OBJECTION OF THE COMMONWEALTH TO MOTION FOR
PARTIAL LIFT OF STAY FILED BY AUTONOMOUS MUNICIPALITY OF PONCE**

2

**TABLE OF CONTENTS**

Preliminary Statement………………………………………………………………………1

Objection……….……………………………………………………………………………2

Conclusion……………………………………………………………………………….13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Assoc. of St. Croix Condo Owners v. St. Croix Hotel Corp.*,
    682 F.2D 446, 448 (3d Cir. 1982) ................................................................................4

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508, 518 (D.P.R. 2016)..................................................................5,8,12

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
369 B.R. 87, 94-5 (D.P.R. 2007)) ......................................................................................5

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
    28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983)................................................................10

*Delpit v. Commissioner*,
    18 F.3D 768 (9th Cir. 1994)..............................................................................................4

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ...............................9

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)..............................................................4

*In re Breitburn Energy Partners LP*, No. 16-10992,
    2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)......................................6

*In re City of Stockton*, 4
    84 B.R. 372, 378 (Bankr. E.D. Cal. 2012)...............................................................8,11

*In re Cuba Electric & Furniture Corp.*,
    430 F. Supp. 689 (D.P.R. 1977)...................................................................................6

*In re Cummings*,
    221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ............................................................7

*In re Gatke Corp.*,
    117 B.R. 406, 410 (Bankr. N.D. Ind. 1989)..............................................................8

*In re Jefferson Cty.*,
    491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) .............................................................3

*In re Motors Liquidation Co.*, No. 09- 50026,
    2010 WL 4630327, at *4 (S.D.N.Y. 2010).................................................................11

*In re Mu'min*, 374 B.R. 149,
    162 (Bankr. E.D. Pa. 2007) ...................................................................................... 6

*In re Murrin*,
    477 B.R. 99, 109 (D. Minn. 2012) ........................................................................... 7

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG),
    2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ...................................... 8

*In re Residential Capital, LLC*, No. 12-12020,
    2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ............................... 8,9,11

*In re Taub*,
    413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) .................................................................. 6

*In re Unanue-Casal*,
    159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ..................... 4,5

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
    362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) ..................................................................... 4

*Matter of Garofalo's Finer Foods, Inc.*,
    186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) .............................................................. 11

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
    474 U.S. 494, 503 (1986) .......................................................................................... 3

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
    537 B.R. 128, 140 (Bankr. D.P.R. 2015) .................................................................. 3

*Peaje Invs. LLC v. Garcia-Padilla*,
    2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ................................ 5

*Soares v. Brockton Credit Union (In re Soares)*
    107 F. 3d 969, 975 (1st Cir. 1997) ............................................................................ 3

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280, 1286 (2d Cir. 1990) ................................................................... 4,5-13

*Unisys Corp. v. Dataware Prods.*, Inc.,
    848 F.2D 311, 313 (1st Cir. 1988) ............................................................................ 3

## STATUTES

11 U.S.C. § 105(a) .................................................................................................................3

11 U.S.C. § 362(a) ...............................................................................................................2,3

11 U.S.C. § 362(d)and 362(d)(1) .........................................................................................2,4

11 U.S.C. § 365 .......................................................................................................................3

11 U.S.C. § 922 .......................................................................................................................3

PROMESA § 301(a) ...........................................................................................................2,3,4

PROMESA § 315(b) ................................................................................................................1

## OTHER AUTHORITIES

H.R. Rep. No. 95-595 at 340 (1977) ......................................................................................4

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Partial Lift of Stay* [ECF No. 3019] (the "Motion") filed by the Autonomous Municipality of Ponce ("Movant"), the plaintiff in the case captioned *Municipio de Ponce vs. ACT, et al,* Case No. JAC1993-0485 (the "Prepetition Action"), before the Puerto Rico First Instance Court (the "Commonwealth Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1. On May 4, 2018, Movant filed the Motion seeking relief from the automatic stay to allow the Prepetition Action to proceed, except for any evidentiary hearing on damages, and for the judgment entered on June 24, 1996 in the Prepetition Action before the Commonwealth Court (the "Prepetition Judgment") to be enforced, except for any judgment or settlement for damages. Motion ¶¶ 9, 15. The Prepetition Judgment requires the Commonwealth, as well as other parties, including the Puerto Rico Electric Power Authority ("PREPA") and the Puerto Rico Highways and Transportation Authority ("HTA" and together with PREPA and the Commonwealth, the "Debtors"), to complete all construction projects detailed in a prepetition *Agreement for the Development of Programed Projects between the Central Government and the Municipality of Ponce*, dated October 28, 1992 (the "Development Agreement"). To fulfill their obligations under the Development Agreement pursuant to the Prepetition Judgment, the Commonwealth would have to expend over $100 million; HTA would have to spend tens of thousands of dollars annually to fund the costs of the Commonwealth Court-appointed monitor to audit the completion of the

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

1

projects under the Development Agreement;[3] and PREPA would have to incur costs of approximately $16 million.[4]

2. At its core, the claims arising from the Prepetition Judgment are claims of a prepetition, unsecured creditor seeking preferential treatment to enforce a prepetition judgment against the Commonwealth, HTA, and PREPA, without any determination as to whether such claims should be allowed in the Title III case.

3. As further explained below, the Motion should be denied as Movant has failed to show "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). Lifting the automatic stay would result in the Commonwealth having to expend valuable resources and pay out significant amounts of money from its General Fund to comply with the Prepetition Judgment, *before* it has been determined whether Movant's claim should be allowed. This would result in valuable resources being diverted from its recovery and reorganization efforts, and potentially result in Movant receiving an unjustifiable windfall compared to other creditors. Moreover, Movant has failed to show any harm it would suffer from maintaining the automatic stay, while the Commonwealth would be forced to divert critical resources to the satisfaction of prepetition, unsecured claims, which is at best premature. Therefore, it is respectfully submitted that the Motion be denied.

---

[3] *See* Urgent Motion for Extension of Deadlines, filed by HTA concurrently with this Objection, requesting seven (7) days to respond to the Motion filed by Movant and, in the alternative if such extension of time is not granted, joining the Objection to the extent that a modification of the stay would require HTA to spend tens of thousands of dollars annually to fund the costs of the Commonwealth Court-appointed monitor to audit the completion of the projects.

[4] *See* Joinder of the Puerto Rico Fiscal Agency and Financial Advisory Authority on Behalf of the Puerto Rico Electric Power Authority to Objection of the Commonwealth to Motion for Partial Lift of Stay Filed by Autonomous Municipality of Ponce, filed concurrently with this Objection.

**OBJECTION**

I. **MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY**

4. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by PROMESA section 301(a), provides for a stay of certain actions by non-debtor third parties including, among other things, the enforcement against the debtor "of a judgment obtained before the commencement of the case" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

5. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods.*, Inc., 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race

3

of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'"); *Assoc. of St. Croix Condo Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) ("[The automatic stay] permits the debtor to attempt a repayment or reorganization plan or simply to be relieved from the financial pressures that drove him into bankruptcy."); *Delpit v. Commissioner*, 18 F.3d 768 (9th Cir. 1994) ("Congress intended to give debtors a breathing spell from their creditors and *to stop all collection efforts*, all harassment, and all foreclosure actions.") (internal quotes and citations omitted) (emphasis added).

6. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

4

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

7. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

8. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by

5

allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

9. Movant has not established that cause exists to lift the Title III Stay. Instead, Movant is merely seeking to enforce the Prepetition Judgment that requires different agencies of the Commonwealth and public corporations, including HTA and PREPA, <u>to proceed with various costly and time-consuming construction projects</u>, which would directly contradict the very purpose of the stay, that is "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets.") The *Sonnax* factors point squarely toward maintaining the automatic stay and against awarding the remedy Movant seeks.

10. ***Sonnax* Factor 1:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—militates against the lifting of the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist

6

the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

11. Here, Movant does not identify any bankruptcy issue related to the Title III cases that would be resolved by allowing Movant to enforce the Prepetition Judgment. *See* Motion ¶ 15. Indeed, that is because lifting of the stay would not resolve any issues relevant to the Debtors' Title III cases—rather, it would create additional issues by affording certain creditors the unjustified opportunity to be paid before others. Movant merely makes the conclusory assertion that the automatic stay should be modified to allow for the enforcement of the Prepetition Judgment. *See id*. Therefore, the first *Sonnax* factor does not support granting the Motion.

12. **_Sonnax_ Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay. The Commonwealth would be required to disburse over $100 million to fulfill its obligations under the Development Agreement in compliance with the Prepetition Judgment, which would interfere with its Title III case and overall restructuring by diverting critical funds from its recovery efforts.[5] Additionally, lifting the automatic stay to allow enforcement of the Prepetition Judgment would divert the attention of the Commonwealth's personnel to oversee compliance of the construction projects with the Prepetition Judgment, review and to follow up with any compliance issues

---

[5] To fulfill their obligations under the Development Agreement pursuant to the Prepetition Judgment, HTA would have to spend tens of thousands of dollars annually to fund the costs of the Commonwealth Court-appointed monitor to audit the completion of the projects under the Development Agreement, *See* Urgent Motion for Extension of Deadlines; and PREPA would have to incur costs of approximately $16 million, *see* Joinder of the Puerto Rico Fiscal Agency and Financial Advisory Authority on Behalf of the Puerto Rico Electric Power Authority to Objection of the Commonwealth to Motion for Partial Lift of Stay Filed by Autonomous Municipality of Ponce, filed concurrently with this Objection.

identified by the Commonwealth Court-appointed monitor or the Commonwealth Court, and to appear before the Commonwealth Court with respect any matters relating to enforcement of the Prepetition Judgment.

13. Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant's conclusory statement that "lifting or modifying the stay to proceed with the fulfilment of the judgment in the 'Ponce en Marcha' case will not interfere with the Title III case and will not diverting the Commonwealth's attention and resources" (Motion ¶ 16) fails to satisfy Movant's heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)). Accordingly, the second *Sonnax* factor supports denial of the Motion. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (denying lift-stay motion where it would consume the time

8

and attention of the debtor's officers).

14. **_Sonnax_ Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. Contrary to Movant's assertions, no specialized tribunal has been established to hear the Prepetition Action as it was before the Puerto Rico Court of First Instance. The remaining proceedings regarding compliance with the Prepetition Judgment will be heard before the Commonwealth Court. Although the Commonwealth Court has appointed monitors to audit compliance with the Prepetition Judgment, such monitors are not "established to hear the cause of action at issue" according to *Sonnax* factor 4. *In re Sonnax Indus.*, 907 F.2d at 1286. Indeed, Movant notes that such monitors were appointed to "supervise and inform the court of the developments and issues of all the construction[] projects . . . ." Motion ¶ 17. Thus, *Sonnax* factor 4 does not support granting the Motion.

15. **_Sonnax_ Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. As Movant notes, no insurer of the Commonwealth has assumed full financial responsibility for defending the Prepetition Action nor compliance with the Prepetition Judgment. Motion ¶ 18. Thus, *Sonnax* factor 5 does not support granting the Motion.

16. **_Sonnax_ Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v.*

9

*WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

17. Here, Movant fails to show how any non-debtor parties in the Prepetition Action are the *primary parties* to the action. Whether the budgets of the various entities involved in the Prepetition Action are separate is not relevant to the central question of *Sonnax* factor 6—whether the Prepetition Action primarily involves third parties. In fact, the Commonwealth will be required to expend over $100 million of its own funds to comply with the Prepetition Judgment. Furthermore, the Commonwealth must devote personnel and additional resources to supervise and ensure compliance with the Prepetition Judgment.[6] Accordingly, the Commonwealth would be significantly impacted by the enforcement of the Prepetition Judgment. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

18. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—weighs in favor of denying the Motion. First, lifting the automatic stay would give Movant an unfair and undue advantage over other creditors. There is nothing about this case that warrants immediate satisfaction of the Prepetition Judgment rather than addressing the Prepetition Judgment through the inevitable claims administration phase during which all other claims will be addressed. Allowing Movant to proceed now would be in sharp contrast to Bankruptcy Code section 362's purpose to provide the debtor temporary relief

---

[6] *See also supra* note 5 for the costs to HTA and PREPA of compliance with the Prepetition Judgment.

10

while it conducts an orderly adjustment of its debts. *See Matter of Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ("[The automatic stay] protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims."). Movant proffers no adequate reason that it should be prioritized over other creditors and granted such an unfair advantage, nor why the purpose of the automatic stay should be ignored in their case.

19. Second, any time and money expended by the Commonwealth to comply with the Prepetition Judgment is time and money diverted from the overall recovery and reorganization of the Commonwealth and from the ultimate distribution to other creditors, a factor that numerous courts have recognized counsels against the lifting of a bankruptcy stay. This is especially true since additional proceedings before the Commonwealth Court may be necessary to determine compliance with the Prepetition Judgment. *See, e.g., In re Residential Capital*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because it "will deplete the coffers of the City treasury"). Accordingly, *Sonnax* factor 7 does not support granting the Motion.

20. **_Sonnax_ Factor 10:** The tenth *Sonnax* factor— the interest of judicial economy and the expeditious and economical determination of litigation for the parties—weighs against granting

11

the Motion. Because judgment has already been entered in the Prepetition Action, the "determination of litigation for the parties" has already occurred, and the only thing that lifting the stay would expedite is Movant's own recovery. Movant has not met its burden of showing how lifting the automatic stay would advance the interest of judicial economy, but rather, merely makes the conclusory statement that lifting the stay will "promote[] the judicial economy and expeditious and economical resolution of the litigation." Motion ¶ 24. Thus, *Sonnax* factor 10 weighs in favor of denying the Motion.

21. ***Sonnax* Factor 11:** The eleventh *Sonnax* factor requires an inquiry into whether the foreign proceedings have progressed to the point where parties are prepared for trial. While judgment has been entered in the Prepetition Action, there remains pending proceedings before the Commonwealth Court to determine compliance with the Prepetition Judgment, which would require the Commonwealth to divert time and resources away from their recovery efforts.[7] Even if this factor weighed in favor of lifting the stay, on balance, the other *Sonnax* factors counsel against lifting the automatic stay. As previously noted, no one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12.

22. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. As previously noted, the Commonwealth would be required to disburse a substantial amount of funds to comply with the Prepetition Judgment. In addition, the attention of the Commonwealth's personnel would be

---

[7] *See also supra* note 5 for the costs to HTA and PREPA of compliance with the Prepetition Judgment.

12

diverted to ensure compliance with the Prepetition Judgment, and tend to any proceedings in the Commonwealth Court with respect to the same.[8] The diversion of the Commonwealth's resources would in turn prejudice the interests of other similarly situated creditors. On the other hand, Movant has not stated how denial of the Motion would cause it any harm. Maintaining the automatic stay would simply preserve the status quo pending the Commonwealth's restructuring and recovery efforts under Title III. Indeed, the fact that Movant has waited decades for the various projects to be completed under the Development Agreement suggests that any harm Movant may suffer if the automatic stay remains in place would be minimal. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.[9]

## **CONCLUSION**

23. Movant has failed to establish cause to justify the lifting of the automatic stay in the Commonwealth's Title III case. Accordingly, for the foregoing reasons, the Court should deny the Motion.

[*Remainder of Page Left Intentionally Blank*]

---

[8] *See also supra* note 5 for the costs to HTA and PREPA of compliance with the Prepetition Judgment.

[9] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

Dated: July 5, 2018.
      San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*