# EXHIBIT A

No. 18-1214

# United States Court of Appeals
# for the First Circuit

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF
PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO
RICO HIGHWAYS & TRANSPORTATION AUTHORITY,

*Debtors.*

*(For Continuation of Caption See Inside Cover)*

*On Appeal from the United States District Court for the
District of Puerto Rico, San Juan in No. 3:17-AP-00159-LTS
(Hon. Laura Taylor Swain, U.S. District Judge)*

**BRIEF OF ASSURED GUARANTY CORP., ASSURED GUARANTY
MUNICIPAL CORP. AND FINANCIAL GUARANTY INSURANCE
COMPANY AS *AMICI CURIAE* IN SUPPORT OF APPELLANT
AND URGING REVERSAL**

CADWALADER, WICKERSHAM
  & TAFT LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000

– and –

CASELLAS ALCOVER
  & BURGOS P.S.C.
P.O. Box 364924
San Juan, Puerto Rico 00936
(787) 756-1400

*Counsel for Amici Curiae Assured
  Guaranty Corp. and Assured
  Guaranty Municipal Corp.*

BUTLER SNOW LLP
5430 LBJ Freeway, Suite 1200
Dallas, Texas 75240
(469) 680-5500

– and –

150 3rd Avenue South, Suite 1600
Nashville, Tennessee 37201
(615) 651-6700

– and –

REXACH & PICO, CSP
802 Avenue Fernandez Juncos
San Juan, Puerto Rico 00907
(787) 723-8520

*Counsel for Amicus Curiae Financial
  Guaranty Insurance Company*

AMBAC ASSURANCE CORPORATION,

*Plaintiff-Appellant,*

– against –

COMMONWEALTH OF PUERTO RICO; FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO FISCAL
AGENCY AND FINANCIAL ADVISORY AUTHORITY; PUERTO RICO
HIGHWAYS & TRANSPORTATION AUTHORITY; RICARDO ROSSELLO
NEVARES; RAUL MALDONADO GAUTIER; JOSE IVAN MARRERO
ROSADO; GERARDO JOSE PORTELA FRANCO; JOSE B. CARRION III;
ANDREW G. BIGGS; CARLOS M. GARCIA; ARTHUR J. GONZALEZ; JOSE
R. GONZALEZ; ANA J. MATOSANTOS; DAVID A. SKEEL, JR.;
CHRISTIAN SOBRINO,

*Defendants-Appellees,*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Intervenor,*

JOHN DOES 1-12,

*Defendants.*

### CORPORATE DISCLOSURE STATEMENT FOR
### ASSURED GUARANTY CORP. AND
### <u>ASSURED GUARANTY MUNICIPAL CORP.</u>

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. respectfully state that they are both wholly owned indirect subsidiaries of Assured Guaranty Ltd., which is a public corporation whose stock is traded publicly.

## CORPORATE DISCLOSURE STATEMENT FOR
## <u>FINANCIAL GUARANTY INSURANCE COMPANY</u>

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), Financial Guaranty Insurance Company ("FGIC") respectfully states that: (1) FGIC is a wholly-owned subsidiary of FGIC Corporation, a Delaware corporation, (2) more than 10% of the stock of FGIC Corporation is held by LaCrosse Financial Products Member, LLC, a subsidiary of MBIA Inc., a publicly-held corporation, and (3) no other publicly-held corporation owns more than 10% of the stock of FGIC Corporation.

Case:17-03283-LTS   Doc#:3456-1   Filed:07/09/18   Entered:07/09/18 15:53:25   Desc:
Exhibit A   Page 6 of 42

# **TABLE OF CONTENTS**

**PAGE**

CORPORATE DISCLOSURE STATEMENT FOR ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. .........i

CORPORATE DISCLOSURE STATEMENT FOR FINANCIAL GUARANTY INSURANCE COMPANY ............................................................ ii

TABLE OF AUTHORITIES .................................................................v

STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE .................1

BACKGROUND .....................................................................................5

    A.    PROMESA Statutory Framework.........................................5

    B.    Procedural Background ........................................................9

ARGUMENT .......................................................................................12

I.    SECTION 106(e) DOES NOT INSULATE FISCAL PLANS FROM ALL FORMS OF JUDICIAL REVIEW. .....................................................12

    A.    The District Court's Discussion of Section 106(e) Was Dicta or an Impermissible Advisory Opinion. ...................................12

    B.    The Plain Language of Section 106(e) is Limited to Direct Attacks on FOMB's Certification Determinations. ............................13

    C.    The Presumption In Favor of Reviewability Requires Review of the Fiscal Plans' Compliance with PROMESA and of FOMB's Ultra Vires Acts.................................................................16

    D.    FOMB Does Not Have Unlimited Discretion to Develop Fiscal Plans. ................................................................................20

**PAGE**

II.   PROMESA   WOULD   BE   UNCONSTITUTIONAL   IF
      INTERPRETED TO PRECLUDE ALL JUDICIAL REVIEW...................22

      A.   The Due Process Clause Entitles Parties to a "Meaningful
           Opportunity" to Challenge the Fiscal Plans' Compliance with
           PROMESA. ......................................................................22

      B.   The Nondelegation Doctrine Entitles Parties to Judicial Review
           of the Fiscal Plans..............................................................25

CONCLUSION ..........................................................................28

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES:

Bernardo ex rel. M & K Eng'g, Inc. v. Johnson,
    814 F.3d 481 (1st Cir. 2016)........................................................................ 16-17

Dart v. United States,
    848 F.2d 217 (D.C. Cir. 1988)...................................................................18, 19

García-Rubiera v. Calderón,
    570 F.3d 443 (1st Cir. 2009)..............................................................................24

Goldberg v. Kelly,
    397 U.S. 254 (1970).........................................................................................23

Gonzalez v. Torres,
    915 F. Supp. 511 (D.P.R. 1996) .......................................................................24

Hanauer v. Reich,
    82 F.3d 1304 (4th Cir. 1996) ...........................................................................18

Leedom v. Kyne,
    358 U.S. 184 (1958)..............................................................................18, 19, 21

Lepre v. Dep't of Labor,
    275 F.3d 59 (D.C. Cir. 2001).................................................................... 18-19

Lindahl v. Off. of Pers. Mgmt.,
    470 U.S. 768 (1985).........................................................................................17

Mach Mining, LLC v. EEOC,
    135 S. Ct. 1645 (2015).....................................................................................17

Mathews v. Eldridge,
    424 U.S. 319 (1976)............................................................................. 22-23, 25

**PAGE(S)**

Oestereich v. Selective Serv. Sys. Local Bd. No. 11,
    393 U.S. 233 (1968)................................................................. 18-19

Osediacz v. City of Cranston,
    414 F.3d 136 (1st Cir. 2005)....................................................... 12-13

Pan. Ref. Co. v. Ryan,
    293 U.S. 388 (1935)....................................................................25

Puerto Rico v. Palo Seco Fruit Co.,
    136 F.2d 886 (1st Cir. 1943)........................................................23

Skinner v. Mid-Am. Pipeline Co.,
    490 U.S. 212 (1989)....................................................................26

Touby v. United States,
    500 U.S. 160 (1991).............................................................. 26-27

United States ex rel. Att'y Gen. v. Del. & Hudson Co.,
    213 U.S. 366 (1909)....................................................................22

United States v. Bozarov,
    974 F.2d 1037 (9th Cir. 1992) .................................................26, 27

United States v. Phillipos,
    849 F.3d 464 (1st Cir. 2017)........................................................21

Wolff v. McDonnell,
    418 U.S. 539 (1974)....................................................................23

Zivotofsky ex rel. Zivotofsky v. Clinton,
    566 U.S. 189 (2012)....................................................................28

PAGE(S)

**STATUTES & OTHER AUTHORITIES:**

48 U.S.C. §§ 2101-2241 (Supp. V 2016) ("PROMESA"):
§ 104(i)(1) ..............................................................................................7
§ 104(j)(2)(A) .........................................................................................7
§ 104(j)(2)(B) .........................................................................................7
§ 104(k) ..................................................................................................8
§ 106(a) ..................................................................................................8
§ 106(e) ..............................................................................8-9, 13, 15
§ 201(b) .............................................................................................6, 17
§ 201(b)(1) .............................................................................................6
§ 201(b)(2) .............................................................................................5
§ 201(c)(3) .........................................................................................6-7
§ 201(c)(3)(A) ......................................................................................21
§ 201(c)(3)(B) ......................................................................................21
§ 201(d)(1) .............................................................................................7
§ 201(d)(2) .............................................................................7, 17, 21
§ 201(e) ................................................................................................14
§ 202(c)(1) .......................................................................................24-25
§ 202(e) ..................................................................................................7
§ 204(a) ................................................................................................25
§ 204(a)(5) .............................................................................................8
§ 206 ......................................................................................................7
§ 209 ......................................................................................................7
§ 301(a) ..................................................................................................9
§ 314(b)(7) .............................................................................................8
§ 601(g) ..................................................................................................7

## STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") and Financial Guaranty Insurance Company ("FGIC") (collectively, "*Amici*") insure general obligation bonds (the "GO Bonds") issued by the Commonwealth of Puerto Rico (the "Commonwealth"), as well as revenue bonds issued by certain of the Commonwealth's instrumentalities, including the Puerto Rico Highways and Transportation Authority ("PRHTA"). *Amici* have a total exposure to Puerto Rico credits of more than $6 billion.

On May 23, 2018, *Amici* filed an adversary proceeding challenging the legality and constitutionality of a revised fiscal plan (the "Revised Fiscal Plan") developed on April 19, 2018 by Appellee Financial Oversight and Management Board for Puerto Rico ("FOMB" or "Oversight Board") under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[2] See Assured Guaranty Corp. v. Puerto Rico, Adv. Proc. No. 18-00059-LTS (D.P.R. filed May 23, 2018) ("Fiscal Plan Adversary"). The Revised Fiscal Plan supersedes the original fiscal plan at issue in this appeal, but continues the

---

[1]   Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no party's counsel authored this *amicus curiae* brief in whole or in part and no party contributed money that was intended to fund the preparation or submission of this brief. Only *Amici* contributed money that was intended to fund the preparation or submission of this brief.

[2]   48 U.S.C. §§ 2101-2241 (Supp. V 2016).

impairments of creditors' property and contract rights prescribed by the original plan.[3]

    *Amici* seek leave to file this *amicus curiae* brief because FOMB has injected into Ambac's case the issue of whether Section 106(e) of PROMESA prevents courts from reviewing a fiscal plan's compliance with the mandatory requirements of Section 201(b) of PROMESA.  Ambac's complaint did not actually raise this issue, because it did not assert any claims based on Section 201(b).  Therefore, to the extent the district court addressed this issue, the district court's statements were unnecessary to the order dismissing Ambac's complaint.  In contrast, this same issue is squarely presented in the Fiscal Plan Adversary (see Compl. at ¶¶ 231-54, <u>Assured Guaranty Corp. v. Puerto Rico</u>, Adv. Proc. No. 18-00059-LTS (D.P.R.

---

[3]   On June 3, 2017, *Amici* and a third bond insurer, National Public Finance Guarantee Corporation ("<u>National</u>"), filed an adversary proceeding in their capacity as insurers of PRHTA bonds secured by pledged "special revenues." <u>See</u> <u>Assured Guaranty Corp. v. Puerto Rico</u>, Adv. Proc. Nos. 17-00155-LTS, 17-00156-LTS (D.P.R Jan 30, 2018), <u>appeal docketed</u> Nos. 18-1165, 18-1166 (1st Cir. Mar 1, 2018) ("<u>PRHTA Adversary</u>").  As Appellant Ambac Assurance Corporation ("<u>Ambac</u>") did in this action, *Amici* and National asserted that PRHTA and the Commonwealth, under the direction of FOMB, were violating the "special revenue provisions" of the Bankruptcy Code, as incorporated into PROMESA. <u>E.g.</u>, Amend. Compl. at ¶¶ 110-15, <u>id.</u> at ECF No. 39.  The district court issued an order dismissing this adversary proceeding on January 30, 2018. *Amici* and National have duly appealed, and the matter is pending before this Court.  <u>See</u> <u>id.</u>  The PRHTA Adversary does not raise the reviewability issues discussed in this *amicus curiae* brief.

May 23, 2018), ECF No. 1 [hereinafter "Fiscal Plan Adv. Compl."]), where it will necessarily be fully addressed.

The scope of Section 106(e) of PROMESA—which relates to the ability of the courts to review decisions made by FOMB with respect to fiscal plans—is critical to each of the pending PROMESA Title III cases. As FOMB would have it, FOMB has the first, last, and only word on whether the fiscal plans it certifies comply with the statutory requirements imposed by PROMESA. If FOMB's position prevails, the courts, including this Court, will be disabled from examining many of the most critical issues relating to the restructuring of the financial affairs of the Commonwealth. The critical question of the courts' role under PROMESA should not be addressed in the context of this case—which focused predominantly on the legal rights and obligations relating to the special revenues securing PRHTA's bonds, and not on reviewability. Such a decision in the context of this appeal would be a great disservice to every party involved in these Title III cases and, perhaps even more so, to the courts themselves.

We, thus, file this *amicus curiae* brief to protect against prejudice to the proper determination of the critical reviewability issues raised in the Fiscal Plan Adversary. First, the issues related to reviewability and Section 106(e) do not need to be addressed in this appeal, but would be better addressed in the context of the Fiscal Plan Adversary. To the extent that the Court nonetheless determines to

address these issues here, *Amici* would urge the Court to reject the extreme statutory reading advanced by FOMB.

## <u>SUMMARY OF THE ARGUMENT</u>

The district court's decision regarding Section 106(e) and the reviewability of claims based on Section 201(b) of PROMESA was purely advisory and should be vacated. The district court's statements about Section 106(e) were based on the assumption that Ambac had somehow "implicitly" asserted claims seeking decertification of the fiscal plan based on violations of Section 201(b). Ambac, in fact, asserted no such Section 201(b) claims, explicitly, implicitly or otherwise. The district court's discussion of Section 106(e) therefore constitutes, at best, *dicta,* at worst, an impermissible advisory opinion.

If the Court does decide to address the relationship between Sections 106(e) and 201(b), however, then the Court should hold that Section 106(e) cannot possibly be read to foreclose all claims based on Section 201(b) or all attacks on a fiscal plan, as FOMB claims. That is so for two reasons.

First, both the text of Section 106(e) and the well-established presumption in favor of judicial review require that Section 106(e) not be read to foreclose claims that a fiscal plan, on its face, violated mandatory PROMESA requirements. Section 106(e) limits review only of FOMB's "certification determinations." Certification is a procedural act, with immediate consequences for the governance

of the Commonwealth. Protection of this procedural act in no way requires, much less suggests, that substantive legal questions, such as whether FOMB complied with the mandates of PROMESA for the contents of fiscal plans, are immune from judicial examination. This more restrained statutory reading is strongly reinforced by the strong presumption in favor of judicial review deeply established in Federal jurisprudence. This presumption is particularly strong where, as here, statutory compliance is at issue. FOMB's extreme reading of Section 106(e) runs into the teeth of this presumption.

Second, interpreting Section 106(e) as precluding ***all*** judicial review of the fiscal plans' compliance with Section 201(b), or with PROMESA more generally, would render PROMESA unconstitutional under both the Due Process Clause and nondelegation doctrine.

## **BACKGROUND**

### A.   **PROMESA Statutory Framework**

PROMESA is Congress's comprehensive legislative response to Puerto Rico's fiscal challenges. At PROMESA's core is a mandate that an independent board, FOMB, must create a fiscal plan dictating how the Commonwealth will manage its finances for a set period of not less than five years. See PROMESA § 201(b)(2). Section 201 of PROMESA sets forth the mandatory requirements a

fiscal plan must satisfy, as well as procedures for the development, review, approval, and certification of fiscal plans.

Specifically, Section 201(b) of PROMESA enumerates 16 mandatory requirements for a fiscal plan and expressly provides that "[a] Fiscal Plan developed under this Section *shall*" satisfy the enumerated requirements. PROMESA § 201(b)(1) (emphasis added). These include, providing a method to achieve fiscal responsibility, restoring access to the capital markets, ensuring the funding of "essential" public services, providing "adequate" funding for public pension systems, elimination of structural deficits, developing a debt sustainability analysis, providing capital expenditures necessary to promote economic growth, ensuring that assets of one government instrumentality are not diverted for the benefit of others, and respecting the relative lawful priorities or lawful liens established under the law of Puerto Rico, including the Puerto Rico Constitution. See PROMESA § 201(b).

The remaining provisions of Section 201 establish procedures for the development, review, revision, approval, and certification of fiscal plans. Specifically, Section 201(a) requires FOMB to provide the Governor of the Commonwealth with a schedule for the development, submission, approval, and certification of a fiscal plan. Section 201(c)(3) then requires FOMB *either* (i) to "approve the [Governor's] proposed Fiscal Plan" *or* (ii) to provide the Governor

-6-

with (a) a "notice of violation" that includes recommendations for revisions and (b) an opportunity to correct the applicable violations.  PROMESA § 201(c)(3) (emphasis added).  In the event FOMB issues a "notice of violation," Section 201(d)(1) requires the Governor to submit a revised proposed fiscal plan in accordance with the schedule established by FOMB.  PROMESA § 201(d)(1). However, should the Governor fail to submit a proposed fiscal plan that satisfies FOMB before the deadline established by FOMB, Section 201(d)(2) provides that "[FOMB] **shall** develop . . . a Fiscal Plan that **satisfies** the requirements set forth in [Section] 201(b)."  PROMESA § 201(d)(2) (emphasis added).  Both the original fiscal plan at issue in this appeal and the Revised Fiscal Plan were developed by FOMB under Section 201(d)(2).  Once FOMB has either approved a fiscal plan proposed by the Governor under Section 201(c)(3) or developed its own fiscal under Section 201(d)(2), FOMB certifies the fiscal plan under Section 201(e).[4]

Fiscal plan certification has many immediate impacts on the Commonwealth government and its related agencies and instrumentalities.  For example, Section

---

[4]  Certification of a fiscal plan is just one of many "certification determinations" FOMB is permitted to make under PROMESA, including (i) certification of voluntary agreements and other qualifying modifications of bond debt under Title VI of PROMESA (PROMESA §§ 104(i)(1), 601(g)); (ii) certification of the filing of a petition commencing a Title III debt adjustment proceeding (PROMESA §§ 104(j)(2)(A), 206); (iii) certification of the submission or modification of a plan of adjustment (PROMESA § 104(j)(2)(B)); (iv) certification of budgets (PROMESA § 202(e)); and (v) certification of the termination of FOMB (PROMESA § 209).

202 of PROMESA requires every Commonwealth budget to be in compliance with the fiscal plan and provides a mechanism for FOMB to revise or redraft a budget in the event of non-compliance. Section 204, in turn, mandates that the Commonwealth's legislation, executive policies, and government contracts all must comply with the fiscal plan. PROMESA also gives FOMB various enforcement powers to ensure compliance with a fiscal plan—including the power to bring suit against non-compliant officers of the Commonwealth (PROMESA § 104(k)) and to "preven[t] the enforcement or application" of a law that is inconsistent with the fiscal plan (PROMESA § 204(a)(5)). The fiscal plan also plays a role in debt restructurings under Title III of PROMESA, because Section 314(b)(7) requires a plan of adjustment to be "consistent with the applicable Fiscal Plan certified by [FOMB]" as one of the requirements for confirmation of the plan of adjustment by the district court. PROMESA § 314(b)(7).

Section 106 of PROMESA establishes the district court's exclusive jurisdiction with respect to actions against FOMB or otherwise arising under PROMESA. Specifically, Section 106(a) provides that "any action against [FOMB], and any action otherwise arising out of [PROMESA], in whole or in part, shall be brought in a United States district court for the covered territory [i.e., Puerto Rico]." PROMESA § 106(a). Section 106(e) carves out a narrow exception to this broad grant of jurisdiction, providing "[t]here shall be no

-8-

jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under [PROMESA]."  PROMESA § 106(e). Because Section 106 provides that the United States district court in Puerto Rico has exclusive jurisdiction over all claims against FOMB, any such claims that are barred by Section 106(e) cannot be brought in any other court.

### B.      Procedural Background[5]

FOMB has used this action to advance an exceedingly broad interpretation of Section 106(e) that would effectively nullify the mandatory requirements of Section 201(b) of PROMESA, notwithstanding the fact that no claims under Section 201(b) were raised in this action.  Instead, in this action, Ambac sought to vindicate the rights of PRHTA bondholders, whose claims are secured by pledges of specific revenue streams constituting "special revenues" within the meaning of Sections 922(d) and 928 of the Bankruptcy Code (which are incorporated into PROMESA (see PROMESA § 301(a))).  In order to amplify its statutory and constitutional claims, Ambac alleged that the fiscal plans certified by FOMB for PRHTA and the Commonwealth normalized the violations of Sections 922 and 928 by providing for the continued sweep of pledged special revenues away from PRHTA for use by the Commonwealth and other governmental entities.  JA-178-

---

[5]  "Appellant's Br." refers to the Brief of Plaintiff-Appellant; "JA-__" refers to the Joint Appendix; "ADD-__" refers to the Addendum.

79. FOMB used the allegations concerning the fiscal plan as a basis for asserting that Section 106(e) required dismissal. While Ambac responded to these points, the focus of the action lay elsewhere. The district court's order dismissing Ambac's complaint addressed the Section 106(e) arguments made by FOMB, but these parts of the order are not fully developed and not necessary to the district court's determination that the complaint should be dismissed. ADD-19-22.

Specifically, the district court addressed Section 106(e) in the context of Counts 1, 2, and 4 of Ambac's complaint, none of which assert claims under Section 201(b). ADD-21. While those Counts do include prayers for fiscal plan decertification, the Counts are based on alleged violations of the U.S. Constitution (Counts 1 and 2) and preemption under Section 303 of PROMESA (Count 4). The district court recognized that the attacks based on the U.S. Constitution and on PROMESA preemption are not barred by Section 106(e),[6] and the district court separately adjudicated each of these three claims on the merits. ADD-15-19 (Count 2); ADD-23-31 (Count 1); ADD-31-38 (Count 4). Thus, the district court's discussion of Section 106(e) was applicable only to the extent that the three counts

---

[6] The district court did state in a footnote that "Section 106(e) . . . deprives the Court of subject matter jurisdiction of Plaintiff's claims insofar as they attack certification of the Fiscal Plan or Oversight Board determinations that are inherent in the certification of a Fiscal Plan," but the district court did not actually identify any part of Section 303 that targets "certification". ADD-32. The district court may have been confusing Section 303 with Section 201(b)(1)(M). See Appellant's Br. at 65-66.

somehow additionally raised violations of Section 201(b)—which they do not on their face and which Ambac never claimed they did.  In short, the discussion was pure *dicta*.

By contrast, *Amici* in the Fiscal Plan Adversary directly assert claims premised on violations of Section 201(b).[7]  See Fiscal Plan Adv. Compl. ¶¶ 255-68.  *Amici* do *not*, however, challenge *certification* of the Revised Fiscal Plan and do not seek decertification.  Rather, *Amici* seek a declaration that because the Revised Fiscal Plan violates PROMESA on its face, it cannot form the basis for a Title III plan of adjustment.  Id. at ¶¶ 283-88.  *Amici* also assert that FOMB exceeded its statutory authority in purporting to develop a fiscal plan that, on its face, violates the mandatory requirements of PROMESA.  Id. at ¶¶ 255-59.

Against this backdrop, *Amici* respectfully submit that this Court should not determine the scope of Section 106(e) and related issues in this appeal, because such issues were not properly presented to the district court.  Instead, the Court

---

[7]  Among other things, *Amici* assert that the Revised Fiscal Plan, on its face, violates the requirements that a fiscal plan (i) "respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to the date of enactment [PROMESA]" as required by Section 201(b)(1)(N) of PROMESA; (ii) "ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory" as required by Section 201(b)(1)(M) of PROMESA; and (iii) ensure the funding of "essential public services" as required by Section 201(b)(1)(B) of PROMESA.  See Fiscal Plan Adv. Compl. ¶¶ 131-53, 260-68.

should vacate the district court's 106(e) ruling in this case and give the district

court an opportunity to decide these issues in the Fiscal Plan Adversary, where

these issues have been directly raised and will be fully developed.

## **ARGUMENT**

I. **SECTION 106(e) DOES NOT INSULATE FISCAL PLANS FROM ALL FORMS OF JUDICIAL REVIEW.**

### A. **The District Court's Discussion of Section 106(e) Was *Dicta* or an Impermissible Advisory Opinion.**

In its order, the district court's discussion of Section 106(e) was premised

entirely on the incorrect notion that Ambac was somehow "implicitly" seeking to

have a fiscal plan decertified for non-compliance with Section 201(b).  ADD-22.

Ambac, however, did not seek to have the fiscal plan decertified based on any such

Section 201(b) violations.  Counts 1, 2, and 4 of Ambac's complaint do include

prayers for decertification, but, as discussed above, such relief is only based on

alleged violations of the U.S. Constitution (Counts 1 and 2) and preemption under

Section 303 of PROMESA (Count 4).  JA-237-42.  The district court recognized

that the attacks based on the U.S. Constitution and preemption are not barred by

Section 106(e).  There was no reason for the district court to address Section

106(e)'s relationship to 201(b) in this action, and any statements the district court

made about Section 106(e) as it relates to 201(b) therefore constituted either *dicta*

or an impermissible advisory opinion.  See <u>Osediacz v. City of Cranston</u>, 414 F.3d

136, 139 (1st Cir. 2005) ("Federal courts . . . are not empowered to offer advisory opinions.") (citation omitted).

Because this case did not squarely present the issue of Section 106(e)'s relationship to Section 201(b), the Court need not address that issue in this appeal, and instead should vacate the district court's ruling on that issue.

### B.    The Plain Language of Section 106(e) is Limited to Direct Attacks on FOMB's Certification Determinations.

The extreme interpretation of Section 106(e) advanced by FOMB stretches the provision well beyond what its plain language shows that Congress intended. Therefore, to the extent the Court does address the effect of Section 106(e) on Section 201(b) challenges, it should hold that 106(e) cannot and should not be read to foreclose all claims predicated on Section 201(b).

Section 106(e) consists of a single, quite specific sentence:  "There shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this Act."   PROMESA § 106(e).   Congress's choice to use the term "determinations" indicates that Congress was not trying to preclude judicial review of a fiscal plan's facial compliance with Section 201(b), which does not depend on any "determination" made by FOMB.   According to FOMB, however, "certification determinations" includes not only the procedural act of fiscal plan certification, but every single

-13-

substantive aspect of the certified fiscal plan, including the plan's compliance with the requirements of PROMESA itself.

To extrapolate from the express protection of certification determinations a global insulation from judicial review of every single aspect of a fiscal plan— including whether it meets the mandatory requirements of Section 201(b) of PROMESA—is unreasonable, unwise, unsupportable and unprecedented. That is particularly true in the specific context of the Title III cases and related adversary proceedings, where creditors' rights are directly at stake.

Significantly, PROMESA distinguishes between the "approval" or "development" of a fiscal plan and its "*certification*." See PROMESA § 201(e). Specifically, the "compliance *certification*" that FOMB issues for a fiscal plan is delivered to "the Governor and the Legislature" to formally advise them that *their* work in the fiscal plan development process is done and that the Commonwealth should proceed to implement the fiscal plan, as certified by FOMB. Thus, Section 106(e) is designed to prevent judicial interference with FOMB's power to direct the Commonwealth to comply with FOMB's fiscal plan certification. Separately, FOMB must approve or develop the fiscal plan itself, and nothing in Section 106(e) prohibits a challenge by creditors as to whether that approval or development was lawful.

FOMB's argument that any challenge to certification is a challenge to approval ignores the fact that Section 106(e) refers only to the former, and FOMB's argument would therefore place FOMB's conduct in approving or developing a fiscal plan beyond all judicial review. If FOMB's view were correct, Section 106(e) would not have included the word "certification" at all. It would have simply prohibited any "challenges to the Oversight Board's . . . determinations." PROMESA § 106(e).

Moreover, the pending Fiscal Plan Adversary clearly falls outside of the plain language of Section 106(e), because *Amici* do not seek decertification, but merely ask for a judgment declaring that the Revised Fiscal Plan does not comply fully with Section 201(b) and that the court will not proceed to confirmation in the Commonwealth Title III case on a plan of adjustment based on the Revised Fiscal Plan. How FOMB reacts to such relief, if granted, is up to FOMB. It may choose to certify a further revised fiscal plan, or it may not. And, if it chooses the former course, the contents of that plan are not dictated to FOMB. FOMB can attempt to meet the court's legal conclusions in any manner it sees fit.

To drive home the magnitude of what is at stake, one allegation in the Fiscal Plan Adversary is that the Revised Fiscal Plan does not respect the relative lawful priorities or lawful liens established under the law of Puerto Rico, including the Puerto Rico Constitution. See Fiscal Plan Adv. Compl. ¶¶ 131-38, 255-59. This

allegation is based on the fact that, for each of the years covered, the fiscal plan first pays all of the costs of running the government, without any effort to identify which of those services are essential, and then allows for payment of bondholders only to the extent that revenues exceed the government's expenses. This effectively reverses the pre-PROMESA priority of the GO Bonds, which, under the Puerto Rico Constitution, are granted a priority over all other claims against the government. Similarly, it eviscerates the liens held by, for example, PRHTA bondholders, who, under Puerto Rico law, have perfected security interests in the revenue streams pledged to them. FOMB may very well have theories as to how placing debt with the first priority under the Puerto Rico Constitution last in the fiscal plan payment waterfall nonetheless respects the constitutional priority, but FOMB's first line of defense is to prevent those theories from ever being tested in any court. The notion that such a critical legal issue is totally immune from judicial scrutiny is simply shocking. All *Amici* want is a day in court. If FOMB can convince a court that it has complied with PROMESA, then so be it. But *Amici* are at least entitled to have the debate and put FOMB's theories to the test.

### C. The Presumption In Favor of Reviewability Requires Review of the Fiscal Plans' Compliance with PROMESA and of FOMB's *Ultra Vires* Acts.

Crucially, in interpreting Section 106(e), the Court "must apply 'a strong presumption in favor of judicial review.'" Bernardo ex rel. M & K Eng'g, Inc. v.

Johnson, 814 F.3d 481, 495 (1st Cir. 2016) (citation omitted).  As the Supreme
Court has explained, "Congress rarely intends to prevent courts from enforcing its
directives" to government entities.  Mach Mining, LLC v. EEOC, 135 S. Ct. 1645,
1651 (2015).  Accordingly, the government "bears a 'heavy burden' in attempting
to show that Congress 'prohibited all judicial review' of [an] agency's compliance
with a legislative mandate." Id. (citation omitted).  "Only upon a showing of 'clear
and convincing evidence' of a contrary legislative intent should the courts restrict
access to judicial review." Lindahl v. Off. of Pers. Mgmt., 470 U.S. 768, 778
(1985) (citations omitted).

Section 106(e) provides no clear and convincing evidence that Congress
intended to limit review of anything other than a narrow slice of claims directly
challenging FOMB's "certification determinations."  By contrast, the text of
Section 201(b) strongly supports a finding of reviewability.  The provision states in
categorical terms that "[a] Fiscal Plan developed under this section *shall*" meet the
16 enumerated requirements.  PROMESA § 201(b) (emphasis added).  Section
201(d)(2), similarly, provides that "[FOMB] *shall* develop . . . a Fiscal Plan that
satisfies the requirements set forth in [Section] 201(b)."  PROMESA § 201(d)(2)
(emphasis added).  In both cases, this language is "mandatory, not precatory."
Mach Mining, 135 S. Ct. at 1651.  It uses the word "shall"—a term that "admits of
no discretion." Id. (citation omitted).

-17-

Furthermore, where, as in the case of Section 106(e), the wording of a provision restricting judicial review is "less than absolute" in the sense that it precludes only certain types of claims, "the presumption of judicial review also favors a particular *category* of . . . claims." Dart v. United States, 848 F.2d 217, 221 (D.C. Cir. 1988) (emphasis in original). Specifically, "[j]udicial review is favored when an agency is charged with acting beyond its authority" by violating a clear statutory mandate, which is one of the specific charges leveled against FOMB in the Fiscal Plan Adversary. Id.; see also Leedom v. Kyne, 358 U.S. 184, 188 (1958) (setting aside a determination made by the National Labor Relations Board "in excess of [the Board's] delegated powers and contrary to a specific prohibition in the [National Labor Relations Act]"); Hanauer v. Reich, 82 F.3d 1304, 1307 (4th Cir. 1996) ("[E]ven when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate.").

The presumption of reviewability is particularly strong in the case of such claims based on agency actions "taken in excess of delegated powers" because judicial oversight is "needed to protect against 'freewheeling agencies meting out their brand of justice in a vindictive manner.'" Lepre v. Dep't of Labor, 275 F.3d 59, 72 (D.C. Cir. 2001) (quoting Oestereich v. Selective Serv. Sys. Local Bd. No.

11, 393 U.S. 233, 237 (1968)).  Therefore, courts "cannot lightly infer that Congress did not intend judicial protection of rights it confers against agency action taken in excess of delegated powers."  Id. (quoting Leedom, 358 U.S. at 190).

For example, in Dart, the D.C. Circuit addressed the lower court's dismissal of an action challenging a decision by the Secretary of Commerce under the Export Administration Act ("EAA").  The government asserted that the EAA precluded judicial review because it provided that the "'order of the Secretary shall be final and is not subject to judicial review.'"  848 F.2d at 221 (citation omitted).  The D.C. Circuit found that although this preclusion clause was "general in its terms," it was "not explicitly inclusive" of "claims that an agency 'facially' violated its statute," thus "review of such claims should not be precluded."  Id. at 222.  Here, Section 106(e) is much more limited than the relatively "general" preclusion provision at issue in Dart, and by its terms simply does not reach claims that a fiscal plan "facially" violated PROMESA or that FOMB acted outside of its authority in developing such a facially defective fiscal plan.  The presumption in favor of judicial review therefore strongly supports the reviewability of such claims.

In this action, the district court did not have an opportunity to consider the presumption in favor of judicial review or the particular force given to this

presumption where government agencies are alleged to have exceeded their statutory authority because these issues were not raised or briefed below. In contrast, these issues have already been raised, and will be thoroughly briefed, in the Fiscal Plan Adversary. *Amici* therefore respectfully request that, to the extent the Court finds it necessary to address the district court's statements with respect to Section 106(e) in this appeal, the Court do so in a manner tailored to the specific allegations and arguments at issue and not prematurely foreclose a more thorough consideration of the scope of Section 106(e) in the Fiscal Plan Adversary.

### D. FOMB Does Not Have Unlimited Discretion to Develop Fiscal Plans.

The district court also erroneously relied on Section 201(c)(3) of PROMESA for the proposition that "Congress has entrusted the ultimate decision to certify a fiscal plan to the sole discretion of [FOMB]. ***See PROMESA § 201(c)(3)***." ADD-21 (emphasis added). In addition to being irrelevant to any of the issues in the case, this statement is simply wrong. As set forth above, Section 201(c)(3) is only *one* of the provisions in PROMESA under which FOMB may develop or approve a fiscal plan. Section 201(c)(3) is *not* the provision under which FOMB developed either the original fiscal plan at issue in this appeal or the Revised Fiscal Plan at issue in the Fiscal Plan Adversary.

In the case of the original fiscal plan, FOMB did not approve the fiscal plan proposed by the Governor, but instead *amended* the Governor's proposed fiscal plan to create the fiscal plan it actually certified.    Section 201(c)(3) does not authorize FOMB to amend a plan proposed by the Governor; it authorizes FOMB only to (i) "approve" the Governor's plan (PROMESA § 201(c)(3)(A)) or (ii) *reject* the Governor's plan by issuing a notice of violation (PROMESA § 201(c)(3)(B)).    Therefore, by amending the Governor's plan, FOMB was in fact developing its own plan under Section 201(d)(2).    Section 201(d)(2) does *not* grant FOMB any discretion in developing fiscal plans, and instead categorically requires that FOMB "*shall* develop . . . a Fiscal Plan that *satisfies* the requirements set forth in [Section] 201(b)."    PROMESA § 201(d)(2) (emphasis added).

Furthermore, in the case of the Revised Fiscal Plan at issue in the Fiscal Plan Adversary, FOMB indisputably developed that fiscal plan under Section 201(d)(2).    See Fiscal Plan Adv. Compl. ¶¶ 116, 119.    Thus, the district court's statements with respect to Section 201(c)(3) have no application or relevance now that the Revised Fiscal Plan is in effect.

Moreover, a government entity's "discretion" never includes the authority to violate the law.    See Leedom, 358 U.S. at 191; cf. United States v. Phillipos, 849 F.3d 464, 468 (1st Cir. 2017) (explaining that "'an error of law is always tantamount to an abuse of discretion'") (citation omitted).    Accordingly, whatever

-21-

the extent of FOMB's discretion, it does not permit FOMB to disregard the unequivocal statutory requirements of Section 201(b).

## II. PROMESA WOULD BE UNCONSTITUTIONAL IF INTERPRETED TO PRECLUDE ALL JUDICIAL REVIEW.

If the Court were to adopt FOMB's extreme reading of Section 106(e), it would render PROMESA unconstitutional. The Supreme Court has long held that courts should avoid adopting an interpretation of a statute that raises grave constitutional concerns. See, e.g., United States ex rel. Att'y Gen. v. Del. & Hudson Co., 213 U.S. 366, 408 (1909). Here, reading PROMESA to bar judicial review threatens to impede the due process rights of Ambac, *Amici* and other parties to meaningful review of a government action that deprives them of protected property interests. It also threatens to transform the carefully circumscribed authority Congress gave FOMB into a grant of unbridled power, raising serious concerns about whether PROMESA violates the Constitution's prohibition on unlimited delegations of legislative power.

### A. The Due Process Clause Entitles Parties to a "Meaningful Opportunity" to Challenge the Fiscal Plans' Compliance with PROMESA.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v.

Eldridge, 424 U.S. 319, 332 (1976). The Supreme Court has held that—at a minimum—the Due Process Clause guarantees that an individual may not be deprived of a protected interest without some "meaningful opportunity" to challenge whether the deprivation satisfies the requirements of the statutory scheme under which it is carried out. Id. at 349; see also Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Goldberg v. Kelly, 397 U.S. 254, 267 (1970).

The Court should follow this precedent to permit judicial review of the fiscal plans' compliance with PROMESA where, as here, the fiscal plans have been alleged to interfere with protected property interests. For example, as *Amici* alleged in the Fiscal Plan Adversary, the pledged special revenues securing the PRHTA bonds constitute property of Ambac, *Amici* and PRHTA bondholders. See Fiscal Plan Adv. Compl. ¶¶ 214, 248. Ambac, *Amici* and PRHTA bondholders also have liens on the pledged special revenues (id. at ¶¶ 4, 31, 33-34, 44-45, 52-53, 63, 215, 248), and a lien is a property interest protected by the Due Process Clause. See, e.g., Puerto Rico v. Palo Seco Fruit Co., 136 F.2d 886, 887 (1st Cir. 1943) (acknowledging "the constitutional question which would arise under the due process clause if a court of equity should undertake to destroy a lien without compensation to the lienor"). Notwithstanding these property interests, the fiscal plans mandate that the Commonwealth confiscate the pledged special revenues and not apply them to pay the PRHTA bonds.

Similarly, Ambac, *Amici*, and holders of GO Bonds are entitled by the Puerto Rico Constitution to receive payment of the GO Bonds on a first-priority basis from all "available resources."  See Fiscal Plan Adv. Compl. ¶¶ 3, 59, 69, 216, 249.  Ambac, *Amici* and PRHTA bondholders also are entitled by statute to receive the pledged special revenues securing the PRHTA bonds.  Id. at ¶¶ 216, 249.  A constitutional or statutory entitlement to receive a benefit constitutes a property interest protected by the Due Process Clause.  See, e.g., García-Rubiera v. Calderón, 570 F.3d 443, 457 (1st Cir. 2009) (holding that plaintiffs entitled by statute to receive insurance premiums from the Commonwealth had a property interest in such premiums that was protected by the Due Process Clause); Gonzalez v. Torres, 915 F. Supp. 511, 516 (D.P.R. 1996) (holding that the Due Process Clause protected plaintiff's "property interest in his right [under the Puerto Rico Constitution] to a public education").

If the fiscal plans are permitted to stand, they will deprive Ambac, *Amici* and bondholders of these and other protected interests by requiring the Commonwealth to divert the available resources and pledged special revenues from which the GO Bonds and the PRHTA bonds, respectively, must be paid to other, illegal uses. Indeed, once a fiscal plan is certified, it has the force of law, and the Commonwealth government *must* obey it.  For example, as discussed above, PROMESA requires the Commonwealth to enact budgets that "compl[y] with the

applicable Fiscal Plan" (PROMESA § 202(c)(1)) and mandates that any future Commonwealth legislation must likewise comply with the certified fiscal plan (PROMESA § 204(a)). Thus, the fiscal plans will compel the Commonwealth's legislative assembly to pass budgets and other legislation that abrogate Ambac's and *Amici's* constitutionally protected priorities and redirect the revenues pledged to them as security for their debts. By any conceivable measure, the fiscal plans will dramatically impair the property interests of Ambac, *Amici* and bondholders.

Accordingly, the Due Process Clause entitles Ambac and *Amici* to a "meaningful opportunity" to challenge the fiscal plans for compliance with the statutory limits set forth in PROMESA. Mathews, 424 U.S. at 349.

### B. The Nondelegation Doctrine Entitles Parties to Judicial Review of the Fiscal Plans.

The Due Process Clause is not the only violation of the U.S. Constitution triggered by the district court's finding that PROMESA forecloses judicial review of the fiscal plans. This finding is also unconstitutional under the nondelegation doctrine, which protects the U.S. Constitution's delegation of certain powers to the legislative branch. Pan. Ref. Co. v. Ryan, 293 U.S. 388, 421 (1935). Under the doctrine, Congress is prohibited from making a wholesale delegation of its Article I powers to another entity. Id. The doctrine would be violated if PROMESA granted FOMB the *unreviewable* authority to create a fiscal plan that dictates the

-25-

economic future of Puerto Rico and irrevocably affects the rights of Puerto Rico's citizens and creditors.

It is black letter law that, when Congress entrusts some measure of its legislative power to an administrative body, it must provide "standards guiding [that body's] actions such that a court could 'ascertain whether the will of Congress has been obeyed.'" Skinner v. Mid-Am. Pipeline Co., 490 U.S. 212, 218 (1989) (citations omitted).  Thus, a statutory scheme not only must provide an "intelligible principle" to guide the implementing agency, but also must include some mechanism by which a court could "ascertain whether" the agency has correctly adhered to that principle.  See Touby v. United States, 500 U.S. 160, 168-69 (1991) (citations omitted); accord United States v. Bozarov, 974 F.2d 1037, 1042 (9th Cir. 1992) ("[T]he availability of judicial review is a factor weighing in favor of upholding a statute against a nondelegation challenge[.]").

For example, in Touby, the Supreme Court considered a nondelegation challenge to a statute authorizing the Attorney General to designate controlled substances.  500 U.S. at 163.  The petitioner asserted that the statute violated nondelegation principles because it failed to provide for judicial review.  Id. at 168.  The Supreme Court did not dispute that the nondelegation doctrine requires some access to a reviewing court, but after surveying the statutory scheme, the Court determined that review ultimately *was* available.  Id.  Because that review was

"sufficient to permit a court to 'ascertain whether the will of Congress ha[d] been obeyed,'" the nondelegation doctrine was satisfied.  Id. at 168-69 (citations omitted).

Similarly, in Bozarov, the defendant was charged with violations of the EAA for transporting certain equipment on which the Secretary of Commerce had imposed export controls.  As discussed above, the EAA contained a provision that precluded judicial review in fairly general terms.  See supra at Part I.C.  The defendant argued that this preclusion of judicial review deprived the Secretary of an "intelligible principle" to guide his decision making and therefore constituted an unconstitutional delegation of legislative authority to the Secretary.  The Ninth Circuit found that the EAA did not result in an unconstitutional delegation of legislative authority, but based this ruling in part on the fact that "claims that the Secretary acted in excess of his delegated authority under the EAA are . . . reviewable" under Dart and Leedom (discussed above).  See 974 F.3d at 1045.  Therefore, any reading of PROMESA that precludes all judicial review, including even review of claims that FOMB violated PROMESA or otherwise acted outside of its statutory authority, would render PROMESA an unconstitutional delegation of legislative authority.

To avoid the grave constitutional questions that unfettered and unaccountable delegation would raise, the Court should reject FOMB's argument

that PROMESA forecloses judicial review of the fiscal plans. Instead, the Court should find that the district court can engage in the "familiar . . . exercise" of judicial review. Zivotofsky ex rel. Zivotofsky v. Clinton, 566 U.S. 189, 196 (2012).

## **CONCLUSION**

For the foregoing reasons, *Amici* respectfully submit that this Court does not need to determine the scope of Section 106(e) and other related issues in this appeal. To the extent that the Court determines to address these issues, the Court should find that Section 106(e) does not preclude all judicial review of fiscal plans.

Dated: June 29, 2018

**CASELLAS ALCOVER & BURGOS P.S.C**

By: /s/ *Heriberto Burgos Pérez*
HERIBERTO BURGOS PÉREZ
RICARDO F. CASELLAS-SÁNCHEZ
DIANA PÉREZ-SEDA
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Tel.: (787) 756-1400
Fax: (787) 756-1401
Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

*Counsel to Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Mark C. Ellenberg*
MARK C. ELLENBERG
HOWARD R. HAWKINS, JR.
LARY STROMFELD
ELLEN V. HOLLOMAN
GILLIAN GROARKE BURNS
THOMAS J. CURTIN
CASEY SERVAIS
200 Liberty Street
New York, New York 10281
Tel.: (212) 504-6000
Fax: (212) 504-6666
Email:  mark.ellenberg@cwt.com
        howard.hawkins@cwt.com
        lary.stromfeld@cwt.com
        ellen.holloman@cwt.com
        gillian.burns@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Counsel to Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**REXACH & PICÓ, CSP**

**By:  /s/ *María E. Picó***
MARIA E. PICÓ
802 Ave. Fernández Juncos
San Juan Puerto Rico 00907-431
Tel.: (787) 723-8520
Fax: (787) 724-7844
Email:  mpico@rexachpico.com

*Counsel to Financial Guaranty*
*Insurance Company*

**BUTLER SNOW LLP**

**By:  /s/ *Martin A. Sosland***
MARTIN A. SOSLAND
5430 LBJ Freeway, Suite 1200
Dallas, Texas 75240
Tel.: (469) 680-5500
Fax: (469) 680-5501
Email:  martin.sosland@butlersnow.com

JASON W. CALLEN
150 3rd Avenue, South, Suite 1600
Nashville, Tennessee 37201
Tel.: (615) 651-6774
Fax: (615) 651-6701
Email:  jason.callen@butlersnow.com

*Counsel to Financial Guaranty*
*Insurance Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(4)(G) and 32(g)(1), I hereby certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) and typeface and type style requirements set forth in Fed. R. App. P. 29(a)(4) and 32(a)(5)(A) and (6). This brief contains 6,483 words, excluding those exempted by Fed. R. App. P. 32(a)(f), and was prepared in a proportionally spaced 14-point Times New Roman font.


/s/ **_Mark C. Ellenberg_**
MARK C. ELLENBERG

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing

document with the Clerk of the Court for the United States Court of Appeals for

the First Circuit by using the Court's appellate CM/ECF system, and that service

will be accomplished by the appellate CM/ECF system.


/s/ **Mark C. Ellenberg**
MARK C. ELLENBERG