**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

-----------------------------------------------------------X

IN RE:

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtor.

PROMESA
Title III

No. 17 CV 1685-LTS
No. 17 BK 3566-LTS

-----------------------------------------------------------X

CERTAIN ALLEGED SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Movant,

-against-

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Respondent.

-----------------------------------------------------------X

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....1

FACTUAL AND PROCEDURAL BACKGROUND....2

- I. ERS ....2
- II. The ERS Bonds....3
- III. The *Altair* Pre-Title III Case ....3
- IV. The ERS Title III Case....5
  - A. Movants File Their Original Motion for Relief from the Automatic Stay ....5
  - B. The Declaratory Relief Action....6
  - C. Movants File the Motion....8

ARGUMENT....8

- I. Stay Relief is Inappropriate When Movant has Not Established a Perfected Security Interest ....8
- II. The Stay Should Remain In Effect as Movants Have Not Met Their Burden....11
- III. If the Court Does Not Deny the Motion, the Automatic Stay Should Be Extended Pursuant to Bankruptcy Code Section 362(e)....13
- IV. Conclusion ....13

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. The United States of America*,
No. 17-cv-970, D.I. 1 (July 19, 2017) (J. Braden) .......... 12

*Altair Global Credit Opportunities Fund (A), L.L.C. v. Garcia-Padilla*,
No. 16-cv-2696, D.I. 1 (Sept. 21, 2016) (J. Besosa) .......... 3

*First Nat'l Bank of Denver v. Turley*,
705 F.2d 1024 (8th Cir. 1983) .......... 8

*Grella v. Salem Five Cent Sav. Bank*,
42 F.3d 26 (1st Cir. 1994) .......... 9, 10

*In re Bailey*,
574 B.R. 15 (Bankr. D. Me. 2017) .......... 9, 10

*In re Blue Leopard, LLC*,
2016 Bankr. LEXIS 4700 (Bankr. Nev. Sept. 22, 2016) .......... 11

*In re Buehne Farms, Inc.*,
2005 Bankr. LEXIS 806 (Bankr. S.D. Ill. Apr. 26, 2005) .......... 9, 10

*In re CGE Shattuck, LLC*,
1999 Bankr. LEXIS 1880 (Bankr. D.N.H. Dec. 20, 1999) .......... 11, 12

*In re Davenport*,
34 B.R. 463 (Bankr. M.D. Fla. 1983) .......... 8

*In re Hunt's Pier Assocs.*,
143 B.R. 36 (Bankr. E.D. Pa. 1992) .......... 8

*In re Lombardo's Ravioli Kitchen, Inc.*,
2009 Bankr. LEXIS 550 (Bankr. Conn. Feb. 20, 2009) .......... 12

*In re Rice*,
82 B.R. 623 (Bankr. S.D. Ga. 1987) .......... 8

*In re Utah Aircraft Alliance*,
342 B.R. 327 (10th B.A.P. 2006) .......... 8

*In re Vitreous Steel Products Co.*,
911 F.2d 1223 (7th Cir. 1990) ....................9

*Omega Envt'l. Inc. v. Valley Bank NA*,
219 F.3d 984 (9th Cir. 2000) (per curiam)....................8

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 WL 652426 (D.P.R. Nov. 2, 2016) ....................4

*Peaje Invs. LLC v. Garcia-Padilla*,
845 F.3d 505 (1st Cir. 2017)....................4

**STATUTES**

3 L.P.R.A § 761 ....................2

3 L.P.R.A. §§ 761–788 ....................2

3 L.P.R.A § 775 ....................2

3 L.P.R.A § 779 ....................2

11 U.S.C. § 9-317(a)(2) ....................5

11 U.S.C. § 361....................12, 13

11 U.S.C. § 362....................8

11 U.S.C. §§ 362 and 922....................5

11 U.S.C. § 362(d) ....................8

11 U.S.C. § 362(d)(1) ....................12, 13

11 U.S.C. § 362(e) ....................13

11 U.S.C. § 362(e)(1)....................13

11 U.S.C. § 362(g) ....................11

11 U.S.C. § 363....................12

11 U.S.C. § 364....................12

11 U.S.C. § 544(a) ....................5

11 U.S.C. § 552(a) ....................7

48 U.S.C. §§ 2101-2241 ....................1

48 U.S.C. § 2161(a) ....................5

48 U.S.C. § 2194....................3

PROMESA § 301(a) ....................5

PROMESA § 301(c)(7)....................5

PROMESA § 315(b)....................1

**OTHER AUTHORITIES**

3 Collier on Bankruptcy ¶ 362.10....................11

**DEBTOR'S OPPOSITION TO MOTION OF CERTAIN SECURED CLAIMHOLDERS OF EMPLOYEES RETIREMENT SYSTEM OF GOVERNMENT OF COMMONWEALTH OF PUERTO RICO FOR RELIEF FROM AUTOMATIC STAY**

To the Honorable United States District Judge Laura Taylor Swain:

The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," "System," or the "Debtor"), by and through the Financial Oversight and Management Board (the "FOMB"), as the Debtor's representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this opposition to the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [D.I. 289] (the "Motion").

## PRELIMINARY STATEMENT[2]

1. Since ERS's petition date, Movants have received $194 million in postpetition payments and may have the benefit of an additional $92 million of funds segregated pursuant to a court-approved adequate protection stipulation (if Movants are determined to have a perfected security interest). That stipulation was designed to allow this Court time to rule on meritorious challenges regarding perfection of Movants' alleged security interest. Now, Movants seek stay relief to pursue an undisclosed objective without any specific allegation that their purported collateral has diminished in value since the Debtor's Title III petition date.

2. Of course, as the Debtor has established in the Declaratory Relief Action (defined below), Movants hold, at most, unsecured claims.[3] Because unperfected security interests are

[1] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

[2] All capitalized terms used but not defined herein shall have the meaning given to them in the Motion.

not entitled to adequate protection, Movants are not entitled to stay relief. While this Court continues its analysis of these issues, the Motion is premature, a waste of judicial resources, and should be denied in its entirety or, at a minimum, denied without prejudice pending a determination in the sub judice Declaratory Relief Action.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### I. ERS

3. ERS was established by the Commonwealth of Puerto Rico (the "Commonwealth") in 1951 for the economic well-being of public employees. *See* Act No. 447-1951 (codified, as amended, at 3 L.P.R.A. §§ 761–788 (the "Enabling Act")). ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775. ERS administered the payment of pension and other benefits to officers and employees of the Commonwealth government, members and employees of the Legislature, and officers and employees of public corporations and municipalities. *See* 3 L.P.R.A § 761. ERS also was authorized to make personal and mortgage loans to its participants and retirees. *See* 3 L.P.R.A § 779. As of July 1, 2017, ERS stopped receiving Employers' Contributions[5] due to the Commonwealth's adoption of a pay-as-you-go pension system ("Pay-

---

[3] Certain defendants in the *Altair* litigation filed a memorandum of law asserting that the issuance of ERS Bonds (defined below) was *ultra vires* and, therefore, the ERS Bonds are null and void as a matter of law. *See Government Defendants' Joinder and Supplemental Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint* [Case No. 17-00219, D.I. 44], at 10-21.

[4] The Debtor incorporates by reference its previous filings opposing the Original Stay Relief Motion and in the Declaratory Relief Action. *See Debtor's Objection to Original Stay Relief Motion* [Case No. 17-03566, D.I. 98]; *Adversary Complaint* [Case No. 17-00213, D.I. 1]; *Debtor's Answer to Defendants' Counterclaims* [Case No. 17-00213, D.I. 49]; *Debtor's Memorandum in Support of Motion for Summary Judgment* [Case No. 17-00213, D.I. 91]; *Debtor's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* [Case No. 17-00213, D.I. 93]; *Debtor's Opposition to ERS Bondholders' Motion for Summary Judgment* [Case No. 17-00213, D.I. 115]; *Debtor's Response to ERS Bondholders' Statement of Undisputed Facts* [Case No. 17-00213, D.I. 116]; *Debtor's Reply in Support of its Motion for Summary Judgment* [Case No. 17-00213, D.I. 149]; *Debtor's Post-Hearing Supplemental Brief in Support of its Motion for Summary Judgment* [Case No. 17-00213, D.I. 198]; *Debtor's Reply Brief to ERS Bondholders' Supplemental Memorandum* [Case No. 17-00213, D.I. 205].

[5] The term "Employers' Contributions" is defined by the Resolution (defined below) as "contributions paid from and after the date hereof that are made by Employers and any assets in lieu thereof or derived thereunder which are

Go”), whereby all covered public employers remit Pay-Go fees directly to the Department of Treasury to cover the pensions and benefits of each employer’s current pensions and beneficiaries, which are being paid directly by the Commonwealth. *See* Act No. 106-2017; Concurrent Resolution 188 of the House of Representatives of the Government of Puerto Rico. Accordingly, ERS stopped paying retiree benefits as of July 1, 2017.

## II. The ERS Bonds

4. On January 24, 2008, ERS issued senior and subordinate pension funding bonds (the “ERS Bonds”) pursuant to a bond resolution (the “Resolution”), in the aggregate original principal amount of approximately $2.9 billion. The Movants claim the ERS Bonds were supposed to be secured by, among other things, (a) Employers’ Contributions (but even if correct, the documents make clear the security interest would only attach if and when the contributions were received by ERS or its Fiscal Agent (as defined in the Resolution)) and (b) any “rights to receive the same.” But, necessary actions were never taken to perfect any such collateralization.

## III. The *Altair* Pre-Title III Case

5. On September 21, 2016, certain holders of ERS Bonds filed a motion with the United States District Court for the District of Puerto Rico seeking to lift the initial PROMESA stay (*see* 48 U.S.C. § 2194) because, they maintained, their alleged security interests in and liens on certain property of ERS lacked adequate protection. *Altair Global Credit Opportunities Fund (A), L.L.C. v. Garcia-Padilla*, No. 16-cv-2696 (“*Altair*”), D.I. 1 (Sept. 21, 2016) (J. Besosa). The District Court denied the motion. *See Peaje Invs. LLC v. Garcia-Padilla*, 2016 WL 652426 (D.P.R. Nov. 2, 2016).

---

payable to the System pursuant to Sections 2-116, 3-105 and 4-113 of the [Enabling] Act” (Resolution, at B-6), which definition is incorporated herein.

6. Movants appealed from the District Court's denial. On January 11, 2017, the First Circuit vacated the District Court's denial and remanded the case for a hearing. *Peaje Invs. LLC v. Garcia-Padilla*, 845 F.3d 505 (1st Cir. 2017).

7. On January 17, 2017, the parties resolved the motion through a joint stipulation, so ordered by the District Court (the "January Stipulation"), pursuant to which, *inter alia*, all Employers' Contributions received by ERS during the pendency of the PROMESA litigation stay would be transferred by ERS to a segregated account for the benefit of the ERS bondholders. The January Stipulation further provided that "[a]ll other rights, claims and remedies of the ERS Bondholders, the Commonwealth and the ERS are expressly reserved." The Court then dismissed the case without prejudice.

8. On April 11, 2017, the parties entered into a second joint stipulation, also so ordered by the District Court (the "April Stipulation"), which provided, *inter alia*, that ERS would transfer on a monthly basis such amounts as necessary from the segregated account to the Fiscal Agent (The Bank of New York Mellon) for payment of interest on the ERS Bonds in accordance with the Resolution. The April Stipulation further provided that (i) "[a]ll other rights, claims and remedies of the ERS Bondholders, the Commonwealth and the ERS are expressly reserved," and, importantly, (ii) "[n]othing in this Joint Stipulation and Order is intended to or shall prejudice whatever rights the Parties have pursuant to Title III of PROMESA if a Title III proceeding is commenced." April Stipulation [Case No. 17-03566, D.I. 101, Exh. N] ¶¶ 4, 5.

9. As this Court has become aware through the Declaratory Relief Action, this provision has great significance. The commencement of ERS's Title III case delegated to the Oversight Board, on behalf of ERS as its trustee pursuant to PROMESA section 301(c)(7), the

powers of a hypothetical lien creditor pursuant to Bankruptcy Code section 544(a)[6] and rights under § 9-317(a)(2) of the Uniform Commercial Code ("UCC"), each giving ERS superior rights to holders of unperfected security interests. While Movants contend the Debtor previously argued the bondholders' liens were "valid and enforceable" (Motion ¶ 12), this ignores that, prior to the ERS Title III case, ERS did not have the status of a hypothetical lien creditor nor the status of a trustee in bankruptcy, and is belied by the existence and prosecution of the Declaratory Relief Action.

## IV. The ERS Title III Case

10. On May 3, 2017, a petition under Title III of PROMESA was filed on behalf of the Commonwealth with the United States District Court for the District of Puerto Rico.

11. On May 21, 2017, a petition under Title III of PROMESA was filed on behalf of ERS with the United States District Court for the District of Puerto Rico (the "ERS Title III Case").

12. The institution of the ERS Title III Case triggered the automatic stay (the "Title III Automatic Stay") of creditor remedies against ERS. 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. §§ 362 and 922 into PROMESA).

### A. Movants File Their Original Motion for Relief from the Automatic Stay

13. On May 31, 2017, Movants filed their original motion seeking adequate protection and relief from the Title III Automatic Stay (the "Original Stay Relief Motion").

14. The parties resolved the Original Stay Relief Motion through a joint stipulation (the "Joint Stipulation") approved by the Court on July 17, 2017. Case No. 17-03566, D.I. 171. The Joint Stipulation provided that "[i]nterest on the ERS Bonds shall be paid when due through

[6] Made applicable by PROMESA section 301(a).

the interest payment due on October 1, 2017 from the prepetition segregated account established pursuant to the Order and Stipulation dated January 17, 2017 (the "Prepetition Segregated Account") . . . ." Case No. 17-03566, D.I. 170, at 4. The Joint Stipulation also authorized the creation of a new, postpetition segregated account (the "Postpetition Segregated Account") into which monthly deposits of $18.5 million were to be made from July 2017 through October 2017 and held by ERS as further adequate protection of Movants' alleged security interest pending the determination of the validity and perfection of such security interest.

15. On December 28, 2017, the Court issued an order interpreting the Joint Stipulation to resolve uncertainty as to whether payments should continue to be made on the ERS Bonds after October 1, 2017. Case No. 17-03566, D.I. 248 (Dec. 28, 2017). Through that order, among other things, the Court required ERS to continue transferring $13,876,582.48 from the Prepetition Segregated Account to the Fiscal Agent on a monthly basis "until the earlier of (i) the date the Court renders a ruling with respect to the [p]arties' motions for summary judgment in the Declaratory Relief Action (the "Briefing Period") or (ii) *the exhaustion of funds in the Prepetition Segregated Account*." *Id.* at ¶ 3 (emphasis added).

16. From May 21, 2017 (when the ERS Title III Case commenced) until today, the holders of ERS Bonds have received $194 million in payments and may have the benefit of an additional $92 million of segregated funds (if Movants are determined to have a perfected security interest).

**B. The Declaratory Relief Action**

17. On July 21, 2017, ERS filed a complaint with this Court in accordance with the Joint Stipulation, seeking solely declaratory relief regarding (a) the validity, priority, extent and enforceability of the prepetition and postpetition liens and security interests asserted by Movants with respect to the ERS Bonds and (b) ERS's rights with respect to Employers' Contributions

received during the month of May 2017 (the "Declaratory Relief Action"). *See* Case No. 17-00213, D.I. 1. On August 8, 2017, Movants filed their answer and counterclaims to the Declaratory Relief Action. *See* Case No. 17-00213, D.I. 36. On August 22, 2017, ERS filed its answer to Movants' counterclaims. *See* Case No. 17-00213, D.I. 49. Following the close of discovery, the parties filed cross-motions for summary judgment on November 3, 2017. *See Plaintiff's Notice of Motion for Summary Judgment* [Case No. 17-00213, D.I. 90]; *ERS Bondholders' Motion for Summary Judgment* [Case No. 17-00213, D.I. 94]. On December 13, 2017, this Court heard oral argument in connection with the cross-motions for summary judgment. Pursuant to this Court's March 12, 2018 order, the parties filed supplemental briefs addressing discreet issues posited by this Court. *See Post-Hearing Supplemental Brief of ERS* [Case No. 17-00213, D.I. 198]; *ERS Bondholders' Supplemental Memorandum* [Case No. 17-00213, D.I. 199].

18. In the Declaratory Relief Action, the Debtor established the following:

- The financing statements submitted to the Department of State for Puerto Rico in 2008 were defective, could not be cured by an amendment, and lapsed before the collateral description was purportedly corrected;
- Purported amendments to the financing statements submitted in 2015 and 2016 were therefore ineffective as amendments, and could not act as new financing statements because they used the incorrect name of the Debtor and did not properly indicate the Debtor's name in the correct field on the amendments;
- A security interest in employee loans or their proceeds was not described in any financing statement and therefore was not perfected as such loans were made from cash proceeds of alleged other collateral; and
- Bankruptcy Code section 552(a) prevents Movants' alleged security interest from attaching to revenues received by ERS postpetition.

19. The parties' cross-motions for summary judgment in the Declaratory Relief Action have been taken under advisement by this Court. In the meantime, the Prepetition Segregated Account has been almost entirely exhausted.

### C. Movants File the Motion

20. On July 3, 2018, Movants filed the Motion alleging that, in light of the Debtor's compliance with the Joint Stipulation, the Prepetition Segregated Account will be dissipated and, thus, Movants' purported security interest in ERS's assets is not adequately protected. *See* Motion ¶¶ 25, 27.

## ARGUMENT

### I. Stay Relief is Inappropriate When Movant has Not Established a Perfected Security Interest

21. Stay relief cannot be granted for unperfected security interests. *See Omega Envt'l. Inc. v. Valley Bank NA*, 219 F.3d 984, 986 n.1 (9th Cir. 2000) (per curiam) ("A creditor holding an unperfected security interest is not entitled to relief from an automatic stay imposed under Bankruptcy Code § 362."); *First Nat'l Bank of Denver v. Turley*, 705 F.2d 1024, 1027 (8th Cir. 1983) (same); *In re Utah Aircraft Alliance,* 342 B.R. 327, 338 (10th B.A.P. 2006) (creditor's "failure to perfect its security interest relieves the Trustee from having to show adequate protection of a secured interest.").

22. Stay relief also is commonly denied when, as here, the very existence of the asserted lien is disputed. *See In re Hunt's Pier Assocs.*, 143 B.R. 36, 50 (Bankr. E.D. Pa. 1992) ("serious doubt" a movant can establish security interest suffices to defeat § 362(d)); *In re Rice*, 82 B.R. 623, 626 (Bankr. S.D. Ga. 1987) ("[W]hen presented with evidence in defense of a motion for relief [from stay] that strongly supports an inference that the lien might be held invalid in such a proceeding, this court would be compelled to deny the motion and leave the stay in effect for a sufficient time to allow the debtor to pursue other litigation.") (internal citations omitted); *In re Davenport*, 34 B.R. 463, 466 (Bankr. M.D. Fla. 1983) ("Counterclaims

and affirmative defenses concerning collateral and unrelated matters normally may not be considered within the context of a complaint or motion for relief from the automatic stay, inasmuch as relief from the automatic stay is not a claim to which a counterclaim can be asserted. However, when the affirmative defense contests the validity of the lien at issue, such affirmative defense should be considered in determining whether or not the automatic stay should be lifted or extended.") (internal citations omitted).

23. Movants cite two cases for the proposition that "[q]uestions of the validity of liens are not generally at issue in a 362 hearing, but only whether there is a colorable claim of a lien on property of the estate" (*In re Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990) and *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir. 1994)), and another two cases for the proposition that "courts generally grant relief from the automatic stay due to the lack of adequate protection notwithstanding challenges by the debtor to the creditor's underlying claim." (*In re Bailey*, 574 B.R. 15 (Bankr. D. Me. 2017) and *In re Buehne Farms, Inc.*, 2005 Bankr. LEXIS 806 (Bankr. S.D. Ill. Apr. 26, 2005)). *See* Motion ¶ 26.

24. None of the cases cited by Movants, however, involved a fully briefed motion for summary judgment challenging the validity and perfection of the very liens being asserted. In the first case cited by Movants (*Vitreous Steel*), the Seventh Circuit noted how the record demonstrated the creditor held a perfected security interest in the collateral at issue. *See Vitreous Steel*, 911 F.2d at 1233-1234. It was the preference and fraudulent transfer actions to eliminate the lien that the appellate court ruled was not part of the stay relief matter. *See Id.*, at 1234. Moreover, the bankruptcy trustee was not challenging the lien in *Vitreous Steel*.

25. In the second case cited by Movants (*Grella*), the secured claimant filed a complaint subsequent to the stay relief hearing requesting a determination of its secured status

and a turnover and accounting of funds. The First Circuit held that the decision to grant stay relief did not preclude litigation concerning the claimholder's lien. The First Circuit made it clear, however, that a debtor's defenses can and should be considered during a stay relief hearing:

> This is not to say that bankruptcy courts can never consider counterclaims and defenses, including preference counterclaims, during a relief from stay hearing. As several bankruptcy courts have discussed, there is a significant difference between mere consideration of claims and final adjudication on the merits. Certainly, a court may take into account any matter that bears directly on the debtor's equity, or that clearly refutes a creditor's claim to the property. For example, if a trustee raises a defense to a creditor's claim at the relief from stay hearing, the court need not ignore this defense, but may consider it when deciding whether to lift the stay.

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 34 (1st Cir. 1994)

26. The third case cited by Movants (*Bailey*) involved a dispute concerning the amount of the creditor's secured claim, not whether the claim was secured and perfected. *See In re Bailey*, 574 B.R. 15, 18-19 (Bankr. D. Me. 2017). Here, however, the Debtor disputes the secured nature of Movants' claim.

27. The fourth case cited by Movants (*Buehne Farms*) supports the Debtor's position. Even though adequate protection payments were awarded, the court did not grant stay relief and noted that "[i]t is now apparent that an adversarial proceeding must be filed in order to determine the validity and priority of the various liens asserted by Debtors' secured creditors as to their [collateral]." *In re Buehne Farms, Inc.*, 2005 Bankr. LEXIS 806, at *4 (Bankr. S.D. Ill. Apr. 26, 2005). Again, here, the Declaratory Relief Action has already been fully briefed after the Joint Stipulation was executed to resolve Movants' Original Stay Relief Motion. At this time, deciding the Motion would be premature before a decision is reached on the Declaratory Relief Action.

28. As demonstrated in the Debtor's oppositions to Movants' Original Stay Relief Motion as well as the Debtor's filings in the Declaratory Relief Action, Movants' alleged security interest was never perfected and, as a result, Movants do not have a lien against any ERS monies or other property. Thus, the Motion should be denied.

**II. The Stay Should Remain In Effect as Movants Have Not Met Their Burden**

29. Movants assert that, "[i]n a hearing for relief from the automatic stay, ERS as the debtor bears the burden of proof on the question of adequate protection" Motion ¶ 21 (citing 11 U.S.C. § 362(g)). This misstates the appropriate allocation of the burden of establishing entitlement to stay relief. Bankruptcy Code section 362(g) "does not address the burden of going forward with evidence, which is generally placed on the party seeking relief." 3 COLLIER ON BANKRUPTCY ¶ 362.10 (Alan N. Resnick & Henry J. Sommer eds., 16th rev. 2017). Rather, section 362(g) addresses "the ultimate burden of persuasion or risk of nonpersuasion once evidence on both sides of an issue has been presented." *Id. See, e.g., In re CGE Shattuck, LLC*, 1999 Bankr. LEXIS 1880, at *9 (Bankr. D.N.H. Dec. 20, 1999) ("If the movant fails to make an initial showing of cause, the Court may deny relief without requiring any showing from the debtor that it is entitled to continued protection."). Movants' conclusory statement in their Motion does not meet their burden of going forward with evidence.

30. Movants summarily assert in the Motion that they are entitled to adequate protection, stating, "[s]ince ERS's Title III filing, ERS and the Commonwealth have taken actions that have resulted in a decrease in value of Movants' collateral." Motion ¶ 25. But, Movants have not provided a scintilla of evidence in the Motion as to the value of their purported collateral as of ERS's petition date and by how much such value has purportedly diminished. Courts routinely deny stay relief when movants fail to provide sufficient evidence that the value of their collateral has diminished since the petition date. *See, e.g., In re Blue Leopard, LLC*,

2016 Bankr. LEXIS 4700, at *9 (Bankr. Nev. Sept. 22, 2016) ("While [movant] has demonstrated that the Debtor lacks equity in the [collateral] by reference to admissions in the Debtor's real property Schedule D, [movant] has not provided evidence by way of any appraisal or another admission that the property has declined in value. Thus, [movant] has not met its burden of proof for obtaining relief for cause under section 362(d)(1)."); *In re Lombardo's Ravioli Kitchen, Inc.*, 2009 Bankr. LEXIS 550, at *10 (Bankr. Conn. Feb. 20, 2009) ("[Movant], having failed to provide any evidence that the collateral is decreasing in value, has not made the requisite 'initial showing of cause' and is therefore entitled neither to relief from stay under § 362(d)(1) nor to adequate protection payments under § 361."); *In re CGE Shattuck, LLC*, 1999 Bankr. LEXIS 1880, at *9 (Bankr. D.N.H. Dec. 20, 1999) ("Here, the movant failed to present sufficient evidence to make an initial showing that the value of its collateral had deteriorated since the petition date. Accordingly, relief from the automatic stay for cause under § 362(d)(1) is denied.").

31. Significantly, Movants must carry their burden of going forward on the issue of the cause of any collateral value diminution, not just the diminution. Bankruptcy Code section 361 provides adequate protection is to protect against diminution arising from the automatic stay, use of the collateral under section 363 (which does not apply in Title III), and liens granted under section 364. That is impossible here. Movants are complaining about legislation by the Commonwealth creating a new pension system that does not generate Employers' Contributions. Indeed, certain holders of ERS Bonds have sued the United States in the Court of Claims. *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. The United States of America*, No. 17-cv-970, D.I. 1 (July 19, 2017) (J. Braden). The automatic stay, use of collateral under Bankruptcy Code section 363, and granting liens under Bankruptcy Code section 364 are not at issue.

32. Moreover, Movants would have this Court ignore that, despite the meritorious challenges to their alleged security interests that have now been fully briefed, they have received $194 million in postpetition payments as adequate protection, and may have the benefit of an additional $92 million that has been set aside postpetition and will be deemed collateral should Movants prevail in the Declaratory Relief Action, as provided in the Joint Stipulation. Given the substantial value Movants have received to date despite presenting zero evidence of diminution in value of their purported security interest from the causes listed in Bankruptcy Code section 361, which security interest may well be invalid and unenforceable, no further adequate protection is warranted and stay relief should not be granted. Of course, the Debtor reserves all its rights regarding how such payments should be treated under any plan of adjustment involving the Debtor or as a result of any adversary proceeding involving the Debtor.

33. Because Movants have failed to establish any diminution in value of their alleged collateral, Movants are not entitled to stay relief due to lack of adequate protections pursuant to Bankruptcy Code section 362(d)(1).

## III. If the Court Does Not Deny the Motion, the Automatic Stay Should Be Extended Pursuant to Bankruptcy Code Section 362(e)

34. If the Court does not deny the Motion, the Debtor requests (i) the initial hearing on the Motion be treated as a preliminary hearing, (ii) the final hearing on the Motion be scheduled 14 days after entry of this Court's decision in the Declaratory Relief Action, and (iii) the automatic stay continue in effect pending the conclusion of the final hearing on the Motion pursuant to Bankruptcy Code section 362(e)(1). Lifting the automatic stay before the Court renders its decision in the Declaratory Relief Action would be premature and could result in unnecessary and burdensome litigation in other courts.

## IV. Conclusion

35. For the foregoing reasons, the Court should deny the Motion in its entirety.

Dated: July 10, 2018
New York, NY

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan *(pro hac vice)*
Timothy W. Mungovan (*pro hac vice*)
Steven O. Weise *(pro hac vice)*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: jlevitan@proskauer.com
Email: tmungovan@proskauer.com
Email: sweise@proskauer.com

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

*/s /Luis F. del Valle*

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260

*Attorneys for the Financial Oversight and*

*Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s /Luis F. del Valle*
Luis F. del Valle-Emmanuelli