**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION BY AAFAF,[2] ACTING AS REPRESENTATIVE OF GDB,
TO THE UCC'S INFORMATIVE MOTION REGARDING RENEWED
RULE 2004 MOTION AND DISCOVERY ITEMS TO BE
ADDRESSED AT JULY 25, 2018 OMNIBUS HEARING**

To the Honorable Judith Gail Dein
United States Magistrate Judge:

      AAFAF, acting as representative of GDB, through its undersigned counsel hereby states

and prays as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] References to: (i) "AAFAF" are to the Puerto Rico Fiscal Agency and Financial Advisory Authority; (ii) "GDB" are to the Government Development Bank for Puerto Rico; (iii) the "UCC" are to the Official Committee of Unsecured Creditors; (iv) the "Retirees' Committee" are to the Official Committee of Retired Employees of the Commonwealth of Puerto Rico; (v) "Committees" are to the UCC and the Retirees' Committee together; (vi) "Motion" are to the UCC's July 3, 2018 Informative Motion Regarding Renewed Rule 2004 Motion and Discovery Items to be Addressed at July 25, 2018 Omnibus Hearing [ECF No. 3424]; and (vii) "Investigator" are to Kobre & Kim LLP, which was appointed as Independent Investigator by the Special Investigation Committee of the Financial Oversight and Management Board for Puerto Rico established under the Puerto Rico Oversight, Management, and Economic Stability Act. Unless otherwise specified, all emphasis is added and all internal citations and quotations are omitted.

1

1. On July 3, 2018, the UCC filed what it called an "informative motion" ostensibly to raise issues it wants the Court to consider at the July 25, 2018 Omnibus hearing. In reality, however, the informative motion is an effort to skirt this Court's previous ruling and to seek discovery of documents under Rule 2004 before the UCC has had the opportunity to review the Investigator's report and the underlying documents on which it relies. In burdening GDB and seeking to invade its confidential information, the UCC now seeks documents to which it has no legal entitlement. Moreover, the UCC's complaints that it has inadequate information regarding the materials produced to the Investigator have no basis in fact.

2. The Investigator has invited the Committees to participate in the process of seeking documents from GDB by allowing the Committees to identify documents and information they think should be part of the Investigation. In that regard, the Investigator has explained in painstaking detail the process for selecting production of GDB documents. Rather than take "yes" for an answer and accept the detailed explanation it has already received, the UCC is attempting to create a dispute for the July 25 Omnibus Hearing that is not ripe.

**BY THE JULY 25 OMNIBUS HEARING, THE COMMITTEES WILL KNOW EXACTLY WHAT GDB HAS PRODUCED TO THE INVESTIGATOR**

3. The UCC contends that it does not know whether the Investigator "has received specific, discrete categories of items that are" supposedly "relevant to the Committee's claims-identification efforts"[3]; namely (i) GDB Board materials; (ii) GDB directors'- and officers'-liability insurance policies; and (iii) productions GDB may have made to its regulators (such as the SEC). The UCC is wrong.

---

[3] The Committees have not been authorized to undertake a claims-identification process and have not identified what kind of claims the Commonwealth could have against GDB or why the Committee would be the appropriate party to pursue such claims.

2

4.     GDB agreed nearly a month ago to produce to the UCC and the Retirees' Committee all non-privileged documents that GDB, through its representative AAFAF, has produced (or will produce) to the Investigator.[4]  AAFAF, acting as GDB's representative, has produced to the Committees more than 5,000 non-privileged documents, which comprise all non-privileged documents provided to the Investigator to date.  There are additional outstanding Investigator requests.  With respect to these additional documents, AAFAF's counsel has made abundantly clear to the UCC that it will receive non-privileged documents produced in response to those requests simultaneously with or shortly after their production to the Investigator.[5]  AAFAF and GDB currently expect those productions to be complete before the July 25 Omnibus Hearing.

5.     In addition, AAFAF, acting as GDB's representative, provided a categorical privilege log to the Committees on June 20, 2018.  Even though it had no obligation to do so, GDB agreed to provide a document-by-document privilege log listing every document withheld from production or redacted on the basis of attorney-client privilege, the attorney work-product immunity, the deliberative process privilege, or any other applicable privilege or immunity from discovery.[6]  AAFAF and GDB currently expect that this document-by-document privilege log will be completed and produced to the Committees before the July 25 Omnibus Hearing.[7]

---

[4]  *See* June 6, 2018 Hr'g Tr. at 111:25–112:5 ("I, today, while we were sitting here in court, received permission from GDB to provide non-privileged documents to share with the investigator, to the UCC and the Retirees' Committee on an attorneys' eyes only basis, again, pending execution of an NDA that's acceptable to GDB and to the committees.").

[5]  *See* Ex. 1 (July 2, 2018 email from W. Sushon) ("We will produce to the Committees any non-privileged GDB documents produced to the Investigator at the same time those documents are produced to the Investigator or shortly thereafter.").

[6]  *See* Ex. 2 (June 26, 2018 email from P. Friedman) ("Rather than have a call, we think the most productive route is for us to [] put together a document by document log in light of the questions you've raised.").

[7]  GDB agreed to provide a document-by-document log of any material withheld not for privilege, but (i) as to which the elected Government of Puerto Rico has a confidentiality obligation to others that prohibits the elected Government of Puerto Rico from disclosing the information or (ii) for which restricted access is necessary to prevent a risk of harm to the elected Government of Puerto Rico in the exercise of its political or governmental powers.  At this point, no documents exist in either of these categories.  But if any arise, GDB will provide a document-by-document log to the Committees.

6. Thus, unless the Investigator makes additional requests of GDB, the Committees should have in their possession, before the July 25 Omnibus Hearing (and weeks before the Investigator's report is released in mid-August), every non-privileged GDB document produced to the Investigator and document-by-document log entries for any document produced to the Investigator but withheld from the Committees. This disclosure is more than adequate for the Committees to determine what GDB documents have been produced to the Investigator, thereby addressing the Court's stated concern at the June 6, 2018 Omnibus Hearing.[8] The UCC will therefore be able to determine for itself whether the production includes GDB Board materials, productions to any regulators, or any other information the UCC wants to know.

7. The UCC also insists it must know now the Investigator's informational requests of GDB to understand what documents the Investigator has received. (*See* Motion ¶ 6 ("[T]he Committee cannot be left uninformed as to whether documents like these have been *received* by the Investigator.").) Of course, as explained above, the UCC *will* know exactly what GDB documents "have been received by the Investigator." But even if the UCC were entitled to know what the Investigator sought (as opposed to received), the UCC's requests should be directed to the Investigator, not AAFAF or GDB. Indeed, the Investigator required AAFAF and GDB to sign a non-disclosure agreement that prohibits them from revealing such substantive information about the investigation to anyone. And as the Investigator has made clear to the Court, the Investigator has provided the UCC extensive information about the investigation (including the Investigator's document requests) in weekly calls, and even given the UCC the opportunity to recommend

---

[8] *See* June 6, 2018 Hr'g Tr. at 127:21–128:5 ("The overarching thing that I wanted to say is that the Committee is going to get these documents. All right? Because I'm not going to end up in a fight about whether investigations are duplicative because the Committee doesn't know what documents have already been *produced*. . . . But the Committee can't be in a position of saying I want these documents, and then not knowing whether or not they've been *produced*."); *See* Ex. 3, *see also* Motion ¶ 1.

4

specific requests that the UCC would like the Investigator to make.[9] But at least as of June 6, 2018, the UCC had not availed itself of that opportunity.

### THE UCC'S REQUESTS FOR SO-CALLED "DAY ONE" DOCUMENTS ARE PREMATURE AND IMPROPER

8. The UCC also demands that GDB immediately produce to the Committees (i) GDB Board materials, (ii) GDB D&O policies, and (iii) any GDB document productions to regulators in their investigations. These requests are both premature and inappropriate.

9. The Court has never contemplated GDB's producing additional documents in response to UCC document demands before publication of the Investigator's report.[10] Indeed, allowing such document requests would undermine the very reason that the Court denied the UCC's original Rule 2004 requests (albeit without prejudice)—namely that authorizing the UCC to proceed with discovery while the Investigator's work is ongoing would threaten to create unnecessary duplication and expense.[11] The UCC should wait a few more weeks to see what the Investigator has uncovered and then evaluate whether any additional discovery is truly necessary.

---

[9] *See* July 3, 2018 Motion of the Independent Investigator [ECF No. 3427] ¶ 28 ("The Independent Investigator executed a Confidentiality, Cooperation, and Non-Disclosure Agreement with the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the 'Retiree Committee') on November 3, 2017. The Independent Investigator executed a Confidentiality, Cooperation, and Non-Disclosure Agreement with the Creditors' Committee on March 5, 2018. Under these agreements, the Independent Investigator has conducted weekly investigation update calls with each of the Retiree Committee and the Creditors' Committee (together, the 'Committees'). On its weekly calls, the Independent Investigator has kept the Committees informed of the witnesses with whom the Independent Investigator would be speaking, and the proposed areas of inquiry for those witnesses. The Independent Investigator solicited and received the Committees' input on multiple aspects of the Investigation, including input concerning proposed document requests, custodians, and search terms for various witnesses.").

[10] *See* June 18, 2018 Hr'g Tr. at 40:25–41:8 ("So, the way I generally envision this is that the Committees will be aware of the scope of the information that has been produced, that they would await the report, assuming we're dealing with mid-August and not September 25th -- 21st, okay -- and that, at that point, if the Committees required additional document requests, they would need to justify it and, as I talked about last time, some sort of budget on it."). *See* Ex. 4.

[11] *See* Nov. 15, 2017 Hr'g Tr. at 82:8–17 ("As to the creditors committee, the 2004 motion, it is denied without prejudice. I think, at this point, the UCC has not established the need for the independent examination in light of the independent investigation that is going on. It would not be efficient or cost effective to have parallel investigations going on at this time, and while the parties may ultimately view and analyze the information differently, I think at this point there is a common goal of obtaining the information and understanding the underlying facts."). *See* Ex. 5.

5

If the UCC still believes that it requires additional discovery, then as the Court made clear, the UCC must (i) request the Court's permission, (ii) lay out a budget, and (iii) persuade the Court that the potential value of the discovery outweighs the costs it will inflict on Puerto Rico.[12]

10. That the discovery is not yet ripe should end the matter. But even if the discovery were ripe, the UCC would not be able to meet its burden to show that its current additional requests (for GDB Board documents, directors'- and officers'- liability insurance policies, and productions to regulators) are appropriate. *First*, a request for all of GDB's Board materials is plainly overbroad and unduly burdensome. The UCC fails to tailor this request to relevant subsets of Board documents, such as requests that concern particular bond issuances or targeted time periods. The UCC—which is not a Committee constituted for GDB and has not established that, as UCC of Commonwealth, it has any basis to take intrusive discovery into GDB's affairs—has no right to all "GDB Board of Directors materials (including meeting minutes, agendas, board books, and presentations, including for all subcommittees of the GDB Board such as audit, risk, or governance committees)" without limitation. Moreover, many GDB Board materials implicate complex privilege issues that will likely require a painstaking document-by-document review that imposes substantial expense on AAFAF and GDB.

11. *Second*, the UCC has no entitlement to GDB's D&O policies. The UCC contends that these policies will assist the UCC in valuing claims against GDB's former directors and officers. But the UCC is not a GDB creditor. At most, it is a stakeholder in the Commonwealth

---

[12] *See* June 6, 2018 Hr'g Tr. at 130:6–10 ("On the other side, though, when we get to the I want more stage, which I know will come, that's actually going to have to be fairly identified as to what's needed, why, and probably some budget on what the additional search will involve."); June 18, 2018 Hr'g Tr. at 40:25–41:8 ("So, the way I generally envision this is that the Committees will be aware of the scope of the information that has been produced, that they would await the report, assuming we're dealing with mid-August and not September 25th -- 21st, okay -- and that, at that point, if the Committees required additional document requests, they would need to justify it and, as I talked about last time, some sort of budget on it.").

6

Title III case. While the Commonwealth is theoretically a potential GDB creditor, it owes GDB more than $900 million on a net basis.[13] To the extent that GDB could possibly have claims against its former directors or officers for breach of their fiduciary duties, neither the Commonwealth nor its statutory committees has the power to pursue those claims. Nor has the UCC identified how Commonwealth could have direct claims, much less how the UCC could pursue them. Thus, the UCC has no interest in valuing those claims and no need for GDB's insurance policies.

12. *Third*, a request for documents that GDB produced to the SEC or other regulators is likewise overbroad, unduly burdensome, and speculative. As with the UCC's request for GDB Board materials, the UCC makes no attempt to limit this request, which is for "all of the productions made by those institutions to regulators (SEC, FINRA, etc.) in connection with any investigations into the issuance, underwriting, or sale of Puerto Rico bonds." (Motion ¶ 5.) Nor does the UCC attempt to explain why it believes these materials are relevant at all, much less indicate which specific investigations it believes are relevant. Thus, if it were required to respond to this request, GDB would be required to (i) identify the full universe of investigations that the UCC might want, without any guidance from the UCC, and then (ii) attempt to locate all documents related to each investigation. And while the UCC complains that some of the materials the Investigator has received directly from regulators are subject to confidentiality restrictions prohibiting the Investigator from sharing the documents with the UCC, that does not mean that the GDB is free to produce those documents to the Committees.

---

[13] *See* Fourth Amendment to Restructuring Support Agreement, dated March 26, 2018, Appendix 7 (showing $905,491,922 owing from the Commonwealth to GDB, post set-off). *See* Ex. 6.

7

## THE INVESTIGATOR HAS ALREADY GIVEN THE UCC ALL THE
## DETAILS OF THE INVESTIGATOR'S REVIEW OF GDB'S DOCUMENTS

13. "In an abundance of caution," the UCC states that it wants more information about how the GDB email review database worked and how the Investigator searched that database. But this information was already detailed extensively in the Investigator's June 13 status report [ECF No. 3303],[14] including an exhibit that exhaustively listed the search terms that the Investigator used in searching each document custodian's files. The UCC does not explain why this is inadequate or what additional information it actually needs and why. Indeed, it seems that the UCC is more interested in jousting with the Investigator and GDB than in actually reviewing the information it has, evaluating the Investigator's report when it is published, and determining whether there are additional, justifiable avenues for discovery that the UCC might pursue. While the UCC's current efforts are well-designed to earn additional fees for its counsel, they are ill-suited to advancing the creditors' or Puerto Rico's interests.

*[Signature Block on Next Page]*

---

[14] Portions of this report were filed under seal, but the UCC received an unsealed version of the relevant portions of the report.

8

Dated: July 10, 2018
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ John J. Rapisardi*  
**O'MELVENY & MYERS LLP**  
John J. Rapisardi  
William J. Sushon  
7 Times Square  
New York, NY 10036  
Tel: (212) 326-2000  
Fax: (212) 326-2061  

Peter Friedman  
1625 Eye Street, NW  
Washington, DC 20026  
Tel: (202) 383-5300  
Fax: (202) 383-5414  

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, in their own capacity and acting as representative of the Government Development Bank for Puerto Rico*

*/s/ Luis C. Marini-Biaggi*  
Luis C. Marini-Biaggi  
USDC No. 222301  
Carolina Velaz-Rivero  
USDC No. 300913  
**MARINI PIETRANTONI MUÑIZ LLC**  
MCS Plaza, Suite 500  
255 Ponce de León Ave.  
San Juan, Puerto Rico 00917  
Tel: (787) 705-2171  
Fax: (787) 936-7494  

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*