IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

ne-310.fbc.m01

| | |
|---|---|
| IN RE<br><br>**THE FINANCIAL OVERSIGHT & MANAGEMENT BOARD FOR PUERTO RICO**<br><br>As the representative of the **COMMONWEALTH OF PUERTO RICO**<br><br>**DEBTOR** | PROMESA<br><br>TITLE III<br><br>CASE NO: 17 BK 3283 (LTS) |

**URGENT MOTION REQUESTING THE LIFT OF STAY**[1]

**TO THE COURT:**

**COMES NOW** Creditor **MICHAEL MELÉNDEZ** through the subscribing **ATTORNEY**, who very respectfully alleges and prays:

On or about **December 1st, 2016**, **Claimant**, **Michael Meléndez** (herein after referred to as **Claimant** or **Lt. Meléndez**) filed before the Court of First Instance of the Commonwealth of Puerto Rico, Superior Court, San Juan Part, against the former José L. Caldero López, Superintendent of the Puerto Rico Police Department of the Commonwealth of Puerto Rico, a claim for **age discrimination** under both the Laws of the Commonwealth of Puerto Rico and under the Laws of the United States.

The aforementioned cause of action was filed under the caption of **Michael**

---

[1] Before the filing of the present motion, the appearing **Creditor** notified the same to the **Department of Justice of Commonwealth of Puerto Rico**, to see if they would agree to the **lift of the stay** herein requested. However, they declined to accept the lift of stay, for which reason the present motion is being filed for the consideration of the Court.

**Meléndez v. José L. Caldero López**, **Superintendente de La Policía de Puerto Rico & El Departamento de La Policía del Estado Libre Asociado de Puerto Rico**, Civil No: KPE 2016 - 3539 (508), case which was stayed pursuant to the above captioned cause of action.

As further will be demonstrated, if the Court does not grant the relief herein below requested, the Claimant will suffer irreparable and non-pecuniary harm, inasmuch as it would de deprived of its due process right to the have the Court of First Instance of the Commonwealth of Puerto Rico, Superior Court, San Juan Part, subject to appellate review and determine whether it has suffered an age discrimination in his employment. The resolution of this legal controversy is indispensable to prevent irreparable harm by allowing the determination of the claimant's property rights against the **PRPD**, who has discriminated against him.

Moreover, the Commonwealth of Puerto Rico will suffer no harm as a result of the lifting of the automatic stay, since the same (I) will not disrupt the Commonwealth of Puerto Rico's processes for managing the Commonwealth; (ii) will not interfere with the Commonwealth's ability to provide essential services. In other words, vacating the automatic stay in this case will not harm the Commonwealth or **PROMESA** process and will not undermine the comprehensive, consolidated and destructing approach that the statue as ultimately designed to facilitate.

In **March 1987** until the day of his discharge, **January 23, 2014**, Lt. Meléndez had been assigned to the **Air Unit** of the **PRPD**, based at the Isla Grande Airport, in San Juan,

2

PR. Interesting enough and before the plaintiff became part of the **PRPD**, he had earned his experience as a **Helicopter Pilot** at the **Puerto Rico Army National Guard**, where he commenced as such on **May 1979** until **October 27, 2011**, having retired as a Captain. Lt. Meléndez's has **8,000** hours of experience, as a **Helicopter Pilot**.

On or about **September 2013**, Lt. Meléndez learns that the **PRPD** is purchasing three new **Bell /429/Multi Engine Helicopters** and assigns 6 pilots for training, excluding the plaintiff. Interesting enough the person who assigns the pilots for the new training was **Captain Joaquín Rodríguez Ortiz #5-4994**, who not only assigned **5 pilots** for said training, but also included **himself**. Even more interesting was the fact that none of the pilots scheduled for said training had more training than **Lt. Meléndez**, in matter of fact, it was **Lt. Meléndez** who had trained **Capt. Rodríguez Ortiz**, who was his **Co-Pilot**. Having **Lt. Meléndez** learned of such, he spoke to **Capt. Rodríguez Ortiz** and asked him why was he not being included for the new **Bell /429/Multi Engine Helicopters**, who said he had nothing to do with that assignment. Not being satisfied by the aforementioned answer, Lt. Meléndez spoke to then Captain Luis R. Kuilan Meléndez to inquire why was he not being assigned for training on the new **Bell /429/Multi Engine Helicopters**, who first asked Lt. Meléndez, how old was he, having said he was **57 years old**,[2] having Captain Kuilan told him that he had to retire. The truth of the matter was that Lt. Meléndez did not qualify for

---

[2] Interesting enough, the **PRPD** had sent the plaintiff for further helicopter training to the **Bell Helicopter Training Academy**, in the **year 2012**, for their was no reason whatsoever for the defendant to have precluded him from undergoing said training, notwithstanding such, the **PRPD** refused to send out to training on the **Bell /429/Multi Engine Helicopters**, solely due to his age.

3

retirement.

As part of **Lt. Meléndez**'s daily duties as a **Helicopter Pilot**, he was responsible for flying in a preventive measure the coasts of Puerto Rico, including but limited to the Northern, Western, Southern and Eastern Coasts of the Island, this would further include the Islands of Vieques and Culebra. As a security measure for the Pilots and aircraft involved, it was up to the Pilot to designate the route to be flown, so that nobody would be able to predict the pattern the helicopter would be flying that day. This would be done in a minimal of one surveillance flight per shift, being three shifts daily.

Much to **Lt. Meléndez**'s surprise, the **PRPD** transferred him to the **Barrio Obrero Police Precinct**, in **September 2015**, and soon thereafter was transferred to the **Loiza Street Precinct**, in **December 2015**. As a result of the defendant's action, in not having to date reinstated **Lt. Meléndez** to the **Air Unit** of the **PRPD**, he has been precluded from earning the **Flight Pay Differential**, in the amount **$1,100 per month**, in addition to his basic pay of **$3,200** per month.

Interesting enough, the defendants have violated the plaintiff's right under **Law #184** of **2004**, whereas plaintiff was assigned to the **Police Precinct**, other than the **Air Unit**, he immediately requested a transfer back to the **Air Unit**. Much to the plaintiff's surprise, other pilots have been transferred and/or assigned to the **Air Unit**, when he had been making first one up for the position since **September 29th, 2015**. The pilots assigned to the Air Unit have been all much younger than the plaintiff, further not even qualifying for the position. This further highlights the defendant's acts of **age discrimination** against the plaintiff.

4

## CLAIMANT'S CONTENTION AS TO WHY THE AUTOMATIC STAY SHOULD BE LIFTED

The claimant is not a bond's investor, neither a creditor of the Commonwealth of Puerto Rico.

The claimant does not have any relation with the debts that prompted **PROMESA**.

The claimant will suffer irreparable damages, since his retirement accumulated monies will be affected, for having been degraded in his position within the **PRPD**, solely due to his age. Further, if the stay is not lifted, the Claimant's cause of action will result moot, for he is presently **61 years** of **age**, close to the age of his retirement.

Furthermore, **Lt. Meléndez**'s claim is not necessary in the case at bar or the above captioned cause of action, neither **PROMESA** was drafted in order to manage employment claims.

On **June 30, 2016**, the President of the United States signed PROMESA into law. Said legislation seeks to tackle the calamitous fiscal emergency in Puerto Rico and is designed to institute a "comprehensive approach to the [Puerto Rico's] fiscal, management and structural problems and adjustments… involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." **PROMESA** § 405(m)(4). The statute established a seven-member Oversight Board ("Board") for Puerto Rico with the purpose of providing a method for the island to achieve fiscal responsibility and access to the capital markets. *Id*. at §§ 101(b)(1),

In the relevant part, among **PROMESA**'s provisions is an automatic stay of all

6

<small>

liability related litigation against the Commonwealth, which is applicable once the Board files a Title III petition to commence debt-adjustment proceedings under the legal framework set forth in the statute. **Id** at § 405(d). Under **PROMESA**, the Honorable Court may, however, grant relief from the stay to "party in interest either "for cause shown", or "to prevent irreparable damage" to the party's interest in property.

In the recent case of **Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla, *et al.***, 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of **PROMESA**. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "**certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so**" (**emphasis added**).

> Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), states as follows:
>
> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

7

In defining what constitutes "**cause**" for relief from the automatic stay in the context PROMESA, the First Circuit took into account the (I) judicial interpretations of the term within the context of section 362 of the United States Bankruptcy Code ("Code"), 11 USC § 362,[3] and also, (ii) additional considerations related to the particular circumstances of the **PROMESA** legal framework. The Court began by noting that section of the Code provides that courts may grant relief from the automatic stay to a party in interest for "cause", but the statute also fails to expressly define how the term must be construed and applied. 11 USC § 362(d)(1); **Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.**, 217 F. Supp. 3d 508, 517 (1st Cir. 2016).

In Brigade Leveraged, the First Circuit reiterated the discretionary nature of the decision to grant relief on a case-by-case basis. See Claughton v. Mixton, 33 F. 4, 5 (4th Cir.

---

[3]

**Sonnax Indus., Inc. v. TriComponent Prods. Corp.** (**In re Sonnax Indus., Inc.**), 907 F. 2d 1280 (2d Cir. 1990). In the instant case, the Second Circuit Court of Appeals enumerated the twelve factors that should be analyzed for purposes of evaluating relief from the automatic stay:

> (1) Whether relief would result in a partial or complete resolution of the issues;
> (2) Lack of any connection with or interference with the bankruptcy case;
> (3) Whether the other proceeding involvers the debtor as a fiduciary;
> (4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) Whether the debtor's insurer has assumed full responsibility for defending it;
> (6) Whether the action primarily involves third parties;
> (7) Whether litigation in another forum would prejudice the interests of other creditors;
> (8) Whether the judgment claim arising from the other action is subject to equitable consideration;
> (9) Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) The interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) Whether the parties are ready for trial in the other proceedings; and
> (12) Impact of the stay on the parties and the balance of harms.

Not all of the factors are relevant in every case and the Court need not assign equal weight to each factor. **Mazzeo v. Lenhart** (**In re Mazzeo**), 167 F. 3d 139, 143 (2d. Cir. 1999); **In re Keene Corp.**, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). See also **C & A, S.E. P.R. Solid Waste Magmt.**, 369 B.R. 87, 94-95 (D.P.R. 2007).

8

1994) (noting that Congress "has granted broad discretion to bankruptcy courts to lift the automatic stay and the courts must determine when discretionary relief is appropriate on a case-by-case basis".) The Court established that "the process of evaluating whether there is sufficient "cause" to vacate the automatic stay requires the court to engage in an equitable, case-by-case balancing of the various harms at stake. **Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla, et al.**, 217 F. Supp. 3d 508, 518 (1st Cir. 2016); See, e.g., **Peerless Ins. Co v. Rivera**, 208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from the continuation of the stay would outweigh any harm that might be suffered be the debtor…if the stay is lifted."); In re Turner, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor."); **In re Harris**, 85 BR 858, 860 (Bankr. D. Colo. 1998) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and the "hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay."). (**Emphasis Added**).

In view of the foregoing, the First Circuit held that the Court's "ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted". **Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla, et al.**, 217 F. Supp. 3d 508, 518-519 (1st Cir. 2016).

Even though the First Circuit held that the **PROMESA** stay is interpreted according the case law arising under section 362 of the Code, it stated that "the concept of "cause" embraced by the Court for purposes of the **PROMES**A stay need not precisely mirror that adopted in the bankruptcy context". Id at 520.

**Article II**, § 7, of the Puerto Rico Constitution, **P.R. Const. Art. II, § 7**, affirms, "[T] he right to life, liberty and **enjoyment of property** is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty without due process of law". (**Emphasis Added**).

## ARGUMENT

In the case of the **Claimant/Lt. Meléndez**, it is respectfully submitted that the Court should lift the automatic stay to allow him to continue litigating his age discrimination case in order to obtain a final ruling as to (I) whether or not the age discrimination occurred; (ii) if so, would he be entitled to a reinstatement to his former position, as pilot of the **Air Unit** of the **PRPD**, and (iii) what would be the amount of constitutionally and legally mandated just compensation that **Lt. Meléndez** would be entitled to. Failure to allow the **Claimant/Lt. Meléndez** to continue the litigation of these controversies in the State Court would continue to cause irreparable, no monetary injury to its property rights, being this his position as a **Pilot** of the **Air Unit** of the **PRPD**.

In other words, if the Court denies the present request for relief, **Claimant/Lt. Meléndez** would be deprived of its rights to have a clear and definite scenario regarding its bankruptcy rights, since a determination validating the existence of a taking would allow

10

**Claimant/Lt. Meléndez** to become a constitutionally secured creditor of the Government with a right to defend its creditor claims in this process. This continuation of the State Court is the **only** viable means by virtue of which the **Claimant/Lt. Meléndez** would be in a position to determine whether, as matter of fact, he has a right to file a proof of claim in the Title III case, or whether it is a non-dischargeable creditor in such case.

Contrary to what the Government will contend, the evaluation of a "protocol" to address all prepetition claims against the Commonwealth is not contemplated as one of the reasons for denying relief from the automatic stay. The mere fact that the Commonwealth has 5,200 prepetition civil actions pending does not constitute valid grounds for denying relief to put an end to the **Claimant/Lt. Meléndez's** constitional injuries.

**Claimant/Lt. Meléndez** respectfully submits that, contrary to what the Commonwealth has proposed in similar cases, denial of the instant motion and the approval of an additional term of **one hundred eighty (180) days** for the Commonwealth to address prepetition claims are unreasonable remedies. This is indisputable, since the Government will suffer no actual harm from the resolution of the legal controversies that are indispensable to clarify the status of the **Claimant/Lt. Meléndez's** property and discrimination rights and further avoid that the Claimant's State Age discrimination cause of action result moot, for he is presently **61 years old**.

As we have mentioned in the instant motion, we reiterated that the Commonwealth will suffer no harm as a result of the lifting of the automatic stay, since the same (I) will not disrupt the Commonwealth's processes for managing the Commonwealth; and (ii) will not

11

interfere with the Commonwealth's ability to provide essential services. In other words, vacating the automatic stay in this case will not harm the Commonwealth or the **PROMESA** process and will not undermine the comprehensive, consolidated and restructuring approach that the statute was ultimately designed to facilitate, including under Title III proceedings. **Claimant/Lt. Meléndez** 's sole interest is that this Court guarantee its due process rights to have a final determination from the State Court that could allow said party to clarify its status as a potential secured creditor or a non-dischargeable creditor of the Commonwealth for purposes of the Title III case before this Court.

In view of the foregoing, in order to prevent the continuation of **Claimant/Lt. Meléndez's** constitutional injuries, it is respectfully requested this Court enter an **Order** lifting the automatic stay in order to allow him to continue litigating his age discrimination case in order to obtain a final ruling as to (I) whether or not the age discrimination occurred; (ii) if so, would he be entitled to a reinstatement to his former position, as pilot of the **Air Unit** of the **PRPD**, and (iii) what would the amount of constitutionally and legally mandated just compensation that **Lt. Meléndez** would be entitled to. This is essential in order to clarify **Claimant/Lt. Meléndez** creditor rights for purposes of the instant Title III case.

**WHEREFORE**, it is most respectfully requested the relief sought herein be in all in respects granted, with such other and further relief as this Court may deem just and proper.

**I HEREBY CERTIFY** that on the herein below mentioned date the appearing claimant electronically filed the foregoing motion in the Clerk's Office of this Court, by means of the **CM/ECF**, which will further notifty of such to all of the Attorneys having

made an appearance in the above captioned cause of action.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 3rd day of July of the year 2018.

By: **/s/ PETER JOHN PORRATA**
**#128901**

Law Offices of
**PETER JOHN PORRATA**
Capital Center Building
South Tower/Suite 602
239 Arterial Hostos Avenue
San Juan, PR 00918-1476
**email@peterjohnporrata.com**
T: 787.763.6500
F: 787.763.4566
M: 787.953.9888