IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO<br>RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO<br>RICO, *et al.*,<br>               Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**UNITED STATES' INFORMATIVE MOTION REGARDING RECENT SUPREME
COURT DECISIONS IN *ORTIZ v. UNITED STATES* AND *LUCIA v. SEC***

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number
and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are
the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four
Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA")
(Bankruptcy Case No. 17 BK 3284) (Last Four Digits Tax ID: 8474); (iii) Puerto Rico Highways
and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four
Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the
Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four
Digits of Federal Tax ID: 9686).  (Title III case numbers are listed as Bankruptcy Case numbers
due to software limitations); and (v) Puerto Rico Electric Power Authority ("PREPA")
(Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III
case numbers are listed as Bankruptcy Case numbers due to software limitations).

The United States respectfully submits this informative motion regarding the Supreme Court's recent decisions in *Ortiz v. United States*, No. 16-1423, 2018 WL 3073840 (U.S. June 22, 2018), and *Lucia v. SEC*, No. 17-130, 2018 WL 3057893 (U.S. June 21, 2018). This motion also responds to Aurelius's informative motion filed on July 6, 2018, ECF No. 3451, asserting that those cases support Aurelius' Appointments Clause challenge to the appointment of members of the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"). As explained below, *Lucia* and *Ortiz* provide no such support.

1.       In *Ortiz v. United States*, the Supreme Court held that a single judge can, consistent with the Appointments Clause, serve as an inferior officer on one court and a principal officer on another. *See* 2018 WL 3073840 at *7–*15. Before reaching the merits of the case, the Court determined that it had appellate jurisdiction to proceed, notwithstanding that the case was on appeal from the Court of Appeals for the Armed Forces ("CAAF"), a non-Article III court within the Executive Branch. *See id.* at *7–*13. The Court held that its appellate jurisdiction extends beyond the decisions of Article III courts and that its exercise of jurisdiction there is consistent with the standard articulated in *Marbury v. Madison*, 5 U.S.C. 137, 175 (1803), and with the Court's longstanding history of exercising appellate jurisdiction over decisions from certain non-Article III courts, including territorial and District of Columbia courts. *Ortiz*, 2018 WL 3073840 at *10–*11.

2.       Specifically as to historical practice, the Court noted that "[t]he exception to Article III for territorial courts was [] an established and prominent part of the legal landscape" by 1894, when the Court found then that the question of its appellate jurisdiction over territorial court decisions was "simple" because "'[t]here ha[d] never been any question that the judicial action of [territorial courts] may, in accordance with the Constitution, be subject to [our] appellate jurisdiction.'" *Id.* at *10 (quoting *United States v. Coe,* 155 U.S. 76, 85 (1894)). Similarly, the Court noted that it "ha[s] routinely, and uncontroversially, exercised appellate jurisdiction over cases adjudicated in the non-Article III District of Columbia courts." *Id.*

1

3.      In finding appellate jurisdiction over the CAAF decision at issue, the Court reasoned that "[t]he non-Article III court-martial system stands on much the same footing as territorial and D.C. courts" because they all rest on "an expansive constitutional delegation"—the former through Art. I, § 8, cl. 14 and the latter through the Territory Clause (Art. IV, § 3, cl. 2) and the District Clause (Art. I. § 8, cl. 17)—and because they all perform "an inherently judicial role, as to substantially similar cases." *Id.* at *11.  Thus, the Court noted that it has long viewed "the military, territories, and District as a triad of 'specialized areas having particularized needs' in which Article III 'give[s] way to accommodate plenary grants of power to Congress." *Id.* (quoting *Palmore v. United States*, 441 U.S. 389, 408 (1973).  Indeed, a plurality of the Court has also said of all three that 'a constitutional grant of power [as] historically understood' has bestowed 'exceptional powers' on Congress to create courts outside of Article III," *id.* (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 66 (1982)).  "Given those well-understood connections," the Court continued, it "would need a powerful reason to divorce military courts from territorial and D.C. courts when it comes to defining [the Court's] appellate jurisdiction," *id.*, but such "powerful reason" was lacking.

4.      Once the Court established that it had appellate jurisdiction to proceed, it found no Appointments Clause violation as to the military's judge's holding of dual offices because the Clause does not "impose rules about dual service, separate and distinct from methods of appointment," and indeed, there is "no authority holding that the [] Clause prohibits this sort of simultaneous service." *Ortiz*, 2018 WL 3073840 at *15.

5.      *Ortiz*'s reliance on historical practice supports the Government's position that the Appointments Clause does not apply to a territorial entity such as the Oversight Board.  As in *Ortiz*, where the Supreme Court looked to its long history of exercising appellate jurisdiction over non-Article III courts, more than two centuries of evolving territorial governance shows that Congress has adopted various governance structures without regard to the Appointments Clause.  For example, Congress has provided for democratic elections and self-governance for certain territories, including Puerto Rico.  As the United States has urged, a finding that the

Appointments Clause applies to territorial officers would not only fly in the face of this historical practice, but also call into question the current governmental structures of the territories and the District of Columbia that have been in place for decades.

6.      Aurelius argues that *Ortiz* supports their position that Congress's exercise of power under the Territory Clause to create the Oversight Board is subject to the structural constraints of the Constitution, including the Appointments Clause.  According to Aurelius, because *Ortiz* recognizes that Congress's authority to structure the military is similar to its authority over the territories, and because the Appointments Clause applies to the appointment of military judges, it follows that the Clause also applies to the appointment of territorial officials. *See* Aurelius' Informative Mot. at 3–4.

7.      Aurelius overreads *Ortiz.*  The reference to Congress's three distinct sources of broad powers to create military, territorial, and District of Columbia courts outside of Article III was in the context of assessing whether military courts stand on the same footing as territorial and D.C. courts for purposes of the Court's appellate jurisdiction.  *See* 2018 WL 3073840 at *11. ("Given th[e] well-understood connections [between these non-Article III courts], we would need a powerful reason to divorce military courts from territorial and D.C. courts w*hen it comes to defining our appellate jurisdiction*.") (emphasis added).  Specifically, the Court reasoned that each of those three types of courts rests on a broad grant of power to Congress—or, as the Court characterized it, "an expansive constitutional delegation" to create courts outside of Article III. *Id.*  In so reasoning, however, the Court did not purport to hold that Congress's constitutional authority under the Territory Clause is identical in all respects to its authority over the military.

8.      Indeed, it would have been quite extraordinary if the Court, without even noting it, intended to overrule its longstanding recognition that Congress may legislate for the territories "in a manner . . . that would exceed its powers, or at least would be very unusual in the context of national legislation enacted under other powers delegated to it under Art. I, s 8." *Palmore*, 411 U.S. at 398; *see also Cincinnati Soap Co. v. United States*, 301 U.S. 308 (1937).  As the United States has shown in its brief, Supreme Court precedent clearly holds that Congress's

plenary authority over the territories is not "subject to [the Constitution's] complex distribution of the powers of government." *Benner v. Porter*, 50 U.S. 235, 242 (1850). *Ortiz*'s appellate jurisdiction analysis does not upset this established precedent.[2] And not even Aurelius purports to argue that *Ortiz*'s Appointments Clause analysis—which solely concerns the dual office question—has any bearing on Aurelius's Appointments Clause challenge. In sum, *Ortiz* simply does not advance Aurelius's position.

9. Neither does *Lucia*. *Lucia* held that the Administrative Law Judges ("ALJs") of the Securities and Exchange Commission ("SEC") are inferior officers of the United States subject to the Appointments Clause because they have equivalent duties and powers as the Tax Court judges at issue in *Freytag v. Commissioners*, 501 U.S. 868 (1992), who were found to be inferior officers. *See* 2018 WL 3057893 at *3. Aurelius argues that if the SEC ALJs are officers of the United States, then so are the members of the Oversight Board who have duties and powers similar to those of the SEC ALJs. Aurelius's argument is beside the point because the Government's position in this case is that the Appointments Clause does not govern the appointment of territorial officers, such as the Oversight Board members, at all. On that question *Lucia* is of no help to Aurelius.

For these reasons and all the reasons in the United States' Memorandum in Support of the Constitutionality of PROMESA, the United States respectfully requests that the Court uphold the constitutionality of PROMESA and deny Aurelius's motion to dismiss the Title III petition.

---

[2] Aurelius also argues that an amicus in *Ortiz* had cautioned the Supreme Court that if the Court were to exercise appellate jurisdiction over military court decisions, that would have implications on Congress's authority to legislate in the territories. According to Aurelius, the fact that the Supreme Court "felt no concern about equating Congress's power over the military and the territories . . . suggest[s] that Congress is equally constrained by the separation of powers when it regulates either." Aurelius's Information Mot. at 5. Aurelius's argument has no merit. In *Ortiz*, the Supreme Court did not equate Congress's power over the territories with its power over the military, except to note that both are expansive constitutional delegations. Moreover, nowhere did the Court endorse the amicus's assertion that exercising appellate jurisdiction over military court cases would have any implication on Congress's plenary authority over the territories.

Dated:  July 12, 2018

Respectfully submitted,

THOMAS G. WARD
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Director
Federal Programs Branch

/s/ *Jean Lin*
JEAN LIN (USDC-PR No. G02514)
Special Counsel
CESAR A. LOPEZ-MORALES (USDC-PR
No. G02704)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
(202) 514-3716 (office)
(202) 616-8202 (fax)
Jean.lin@usdoj.gov

*Attorneys for the United States of America*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July 2018, I caused a true and correct copy of the

foregoing Notice of Appearance to be filed with the Clerk of the Court using the CM/ECF

system which will generate electronic notification to all CM/ECF participants in these cases.

/s/ *Jean Lin* _____
JEAN LIN