Hearing Date: July 25, 2018 at 9:30 a.m. (AST)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-bk-03283 (LTS)<br><br>(Jointly Administered) |

**LIMITED OBJECTION TO MOTION OF THE INDEPENDENT INVESTIGATOR FOR AN ORDER: (I) ESTABLISHING PROCEDURES FOR RESOLVING ANY CONFIDENTIALITY DISPUTE IN CONNECTION WITH PUBLICATION OF THE INDEPENDENT INVESTIGATOR'S FINAL REPORT; (II) APPROVING THE DISPOSITION OF DOCUMENTS AND INFORMATION; (III) RELIEVING THE INDEPENDENT INVESTIGATOR FROM CERTAIN DISCOVERY OBLIGATIONS; (IV) EXCULPATING THE INDEPENDENT INVESTOR IN CONNECTION WITH THE INVESTIGATION AND PUBLICATION OF THE FINAL REPORT; <u>AND (V) GRANTING RELATED RELIEF</u>**

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "**Title III Cases**"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

OBJECTION ........................................................................................................................ 4

    A.    The Procedures For Resolution Of Any Objection To The Disclosure Of Confidential Information In The Final Report Should Be Modified To Provide Notice To The Committees Of Any Changes To The Final Report. ......................................................... 4

    B.    The Court Should Modify The Investigator's Proposal Regarding Access To The Centralized Document Depository. ..................................................................................... 5

    C.    The Court Should Grant The UCC's Requested Relief Concerning The Immediate Production Of Certain GDB Information To The Committees And Grant The Committees Immediate Access To Similar GDB Information. .......................................... 8

    D.    The Court Should Modify The Investigator's Proposal Regarding The Investigator's Destruction Of Documents And Proposed Time Frame For Consulting With The Committees. ........................................................................................................................ 12

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") respectfully submits its limited objection to the Motion of the Independent Investigator (the "**Investigator**") for an Order: (I) Establishing Procedures for Resolving Any Confidentiality Dispute in Connection with Publication of the Independent Investigator's Final Report; (II) Approving the Disposition of Documents and Information; (III) Relieving the Independent Investigator from Certain Discovery Obligations; (IV) Exculpating the Independent Investigator in Connection with the Investigation and Publication of the Final Report; and (V) Granting Related Relief. (Dkt. No. 3427) (the "**Motion**").

## INTRODUCTION

1. As its title suggests, the Motion seeks four primary forms of relief. *First*, to provide a procedure by which any disputes regarding the Investigator's disclosure of information in its final report can be resolved. *Second*, to place the majority of the documents the Investigator has collected as well as other related items such as the Investigator's underlying document requests into a document depository and provide a procedure whereby parties may seek access to those documents. *Third*, to curtail the amount of post-investigation discovery parties may conduct on the Investigator and his counsel. *Fourth*, to provide liability protection for the Investigator in connection with its investigation and its final report. The Investigator states that the Motion's requested relief allows the Investigator to "assist the Oversight Board … in the most effective and efficient way, while maintaining the independence and disinterestedness of the Independent Investigator." (Motion at ¶5.) In addition, the Investigator states that the Motion "is in the public interest" in that it "allows the Independent Investigator to fulfill its duties and responsibilities under PROMESA" while "provid[ing] a transparent, cost-effective, and efficient process for concluding the Investigation and publishing the Final Report." (*Id.*)

2. The Retiree Committee agrees with the Motion's stated purpose and believes that the Motion goes a long ways towards achieving those goals. With that said, the Retiree Committee believes there are some gaps in the Investigator's proposal that need to be filled in order to maximize the value of the Investigator's work for the benefit of all interested parties. To that end, the Retiree Committee requests that the following modifications be made to the exit plan:

   a. Require the Investigator to notify the Retiree Committee and the Official Committee of Unsecured Creditors (the "**UCC**", and with the Retiree Committee, the "**Committees**") if the Investigator's proposed meet and confers regarding the Investigator's proposed disclosure of Confidential Information in the final report leads the Investigator to exclude such material from the final report or to make changes to the final report and to describe to the Committees what was omitted or how the final report was changed. In addition, the exit procedures should allow the Committees access to any such information.

   b. The Committees should be automatically granted access to the entire document depository. If a party wishes to challenge that access, an objection must be filed within 10 business days of the entry of an order approving the exit plan.

   c. The Retiree Committee joins the Creditors' Committee's Informative Motion Regarding Renewed Rule 2004 Motion and Discovery Items to be Addressed at July 25, 2018 Omnibus Hearing (Dkt. No. 3424), which seeks immediate access to a narrow band of GDB-related information and documents that are critical to the Committees' efforts to evaluate what, if

2

any, additional discovery may be needed after the Investigator produces its final report on August 15, 2018.

d. The document depository shall include any responses/objections to the Investigator's document requests.[2] Similarly, if a party refused to turn over any documents to the Investigator, the Investigator should disclose to the Committees the identity of those parties, and a general description of the documents at issue. Likewise, if the Investigator voluntarily withdrew any document request, the Investigator should tell the Committees, which requests it withdrew.

e. The Investigator should include in the document depository any privilege logs provided to the Investigator.

f. The Investigator should disclose any date filter used for any document custodian to the extent that information is not contained in the document request itself or if the Investigator deviated from what was in the document request.

g. The Investigator should not be allowed to destroy "all other documents and information not included within the Investigative Record," which would include the Investigator's witness interview memos until the earlier of January 1, 2020 or confirmation of a plan of adjustment for the Title III Debtors.

h. The Investigator's "meet and confer" obligations with the Committees should continue until the earlier of January 1, 2020 or confirmation of a plan

---

[2] The Motion already proposes to include in the document depository the Investigator's document requests issued during the course of its investigation. (Motion at ¶40.)

3

of adjustment for the Title III Debtors as opposed to the June 1, 2019 date proposed by the Investigator.

**OBJECTION**

A. **The Procedures For Resolution Of Any Objection To The Disclosure Of Confidential Information In The Final Report Should Be Modified To Provide Notice To The Committees Of Any Changes To The Final Report.**

3. The Motion's first request is that the Court establish a procedure to handle the final report's disclosure of any information a producing party has labeled "Confidential"; a label the Investigator acknowledges likely was overused by the producing parties. (Motion at ¶¶ 33-38). In essence, the Investigator proposes that to the extent the Investigator plans to use material labeled "Confidential," the Investigator will notify the pertinent producing party, and to the extent that party has an objection to its use, the Investigator and the producing party will seek to informally resolve the dispute. If that attempt is unsuccessful, the objecting party must ask this Court to resolve the matter.

4. The Retiree Committee has no objection to this proposed framework with one caveat: that the Committees are informed (a) whether, as a result of any meet and confer, the Investigator decides to not include the material in the final report or to change his final report, and (b) what material was omitted or how the final report was changed. In addition, the Committees should be given access to this removed or modified information.

5. The Retiree Committee's proposed change furthers the Investigator's goal of transparency. The "Confidential" information at issue is important enough that the Investigator sought to include it in the final report. If the Investigator decides to pursue a different path because of confidentiality concerns raised by a producing party, it is important for the Committees to know whose information is being withheld and, generally, the nature of the information that is being withheld. Moreover, the Retiree Committee's proposal would provide symmetry to the exit plan.

4

Under the Investigator's proposal, if the meet and confer fails, the objecting party must file with this Court a motion seeking to prohibit or limit the disclosure. (Motion at ¶35(e)). If that happens, the Committees would know who is objecting and would obtain a general sense of the type of information at issue. That is exactly what the Retiree Committee wishes to know in the event the Investigator on its own decides to accede to a party's disclosure objection.

**B.    The Court Should Modify The Investigator's Proposal Regarding Access To The Centralized Document Depository.**

6.    The Motion's second prong is the suggested turnover—into a centralized document depository—of the majority of the documents the Investigator received during its investigation[3], as well as the Investigator's document requests, a list of the Investigator's search terms and identities of all document custodians, the Public Comment Box, and the final report and its supporting documents. (Motion at ¶ 40.) Under the proposed exit plan, however, no party is given automatic access to any document in the depository database. Instead, if a party wishes to see any document in the depository, that party must make an official request. That request then sets off a series of events that potentially culminate approximately two months later in a hearing before this Court. (Motion at ¶47.)

7.    The Retiree Committee believes that the Investigator's proposal regarding the document depository should be modified in a few areas in order to maximize the effectiveness of the Investigator's work and achieve one of the primary goals of the investigation of ensuring that there is no duplication of effort between the Investigator and the Committees.

8.    *First*, the exit plan should provide that the Committees get automatic access to the

---

[3] Documents that the Investigator collected during its investigation but that the Investigator <u>does not</u> intend to place in the document depository consist of those documents GDB actually produced to the Investigator but asserts a privilege over (GDB is in the process of providing to the Committees a document-by-document privilege log of those documents), and documents produced by the SEC and FINRA, and one OCIF examination report (the UCC Committee has asked this Court to order that these documents be produced directly to the Committees; a request the Retiree Committee now joins). (Dkt. 3424 at ¶9.)

5

document depository in its entirety, and if a party wishes to restrict that access, that party should be required to file a motion for a protective order within 10 business days of the entry of an order approving the exit plan. The Retiree Committee's proposed modification is the most fair and efficient way to handle the Committees' access to the document depository given that this Court has made clear that the Court is going to give the Committees access to the documents. (Ex. 1; Hr'g Tr. 127:21-128:8, June 6, 2018 Transcript of Rule 2004 Hearing). Given that directive, the Committees should not be required to make a formal request for access and participate in a procedure that will just serve to delay the Committees' ability to review the documents the Court already has indicated they are entitled to see. Consequently, to the extent a party believes some extraordinary circumstance exists which should shield their documents in the document depository from the Committees' review, they should be required, in the first instance, to explain that position to the Court.

9. *Second*, the Investigator's proposal to place in the document depository all of the Investigator's document requests will be very helpful to the Retiree Committee's efforts to determine whether and to what extent it believes additional discovery is necessary as it allows the Retiree Committee to know what documents the Investigator sought. It is equally important, however, to know the other side of that equation; namely, whether the Investigator's request was fully complied with. For example, if a responding party refused to turn over a subset of documents or only gave the Investigator access to a subset of relevant documents (*i.e.*, they only gave the Investigator access to that party's email files), that information would be highly relevant to the Retiree Committee. Consequently, the depository database should include any responses/objections to the Investigator's document requests. Similarly, if a party refused to turn over documents to the Investigator, but that refusal was not memorialized in writing, the

6

Investigator should disclose the identity of the party and a general description of the types of documents that were not produced. Likewise, the Retiree Committee should be informed if the Investigator voluntarily withdrew any document request. These modifications to the proposed exit plan are narrowly tailored to give the Retiree Committee a more holistic picture of what information the Investigator sought and actually received. Only by knowing that can the Retiree Committee determine whether any additional discovery is necessary.

10. *Third*, any privilege logs provided to the Investigator should be included in the document depository. It is important for the Retiree Committee to know if producing parties withheld information on the basis of privilege and the nature of those documents in order for the Retiree Committee to determine whether such assertions are valid. The Committees already are involved in this very process with GDB and that protocol should be expanded to include all producing parties.

11. *Fourth*, the Investigator should disclose any date filter used for any document custodian to the extent this information is not disclosed in the pertinent document request or the Investigator agreed to a different date range than what was in the document request. Knowing how far back in time the Investigator conducted its document investigation is critical to allowing the Retiree Committee to understand the scope of the investigation and whether additional discovery may be necessary. That is particularly true given that some of the Commonwealth's now-questioned monetary practices go back decades.

12. All of the foregoing proposals with respect to the document depository are designed to provide clarity concerning what precisely the Investigator had access to during the course of its investigation. As this Court has noted, "[t]he whole point of [the investigation] was so that the financial institutions didn't have to do the same searches multiple times. All Right? But the

7

Committee can't be in a position of saying I want these document, and then not knowing whether or not they've been produced." (Ex. 1; Hr'g Tr. 128:1-5, June 6, 2018 Transcript of Rule 2004 Hearing). The Retiree Committee's modifications are designed to ensure that untenable position does not materialize and simply asks for disclosure of information that is already in the Investigator's possession.

C. **The Court Should Grant The UCC's Requested Relief Concerning The Immediate Production Of Certain GDB Information To The Committees And Grant The Committees Immediate Access To Similar GDB Information.**

13. While the Investigator correctly has cast a broad net—interviewing over 150 witnesses and obtaining documents form dozens of custodians—the single most important source of information may come from GDB. Consequently, it is imperative that the Retiree Committee has full insight into the Investigator's investigation of GDB. While ideally the Retiree Committee would have perfect knowledge of these matters now, the Retiree Committee understands that practically speaking the Investigator cannot share everything with the Retiree Committee given that the Investigator's work is ongoing and will be for approximately the next 30 days.

14. The UCC's Informative Motion, however, strikes a fair balance between the UCC and the Retiree Committee's need for information with the Investigator's need to complete its work. To that end, the Informative Motion seeks both clarification regarding whether the following types of documents were produced to the Investigator and the immediate turnover of those documents:

    a. Copies of insurance policies for GDB's current or former directors and officers;

    b. GDB Board materials such as meeting minutes, agendas, board books, and presentations, including any such documents from any subcommittee, such as an Audit, Risk or Governance Committee; and

8

c. Productions made by the Puerto Rico Financial Institutions to regulators in connection with any investigations into the issuance, underwriting, or sale of Puerto Rico bonds.[4]

15. As the UCC correctly notes, these types of documents are "highly relevant" (Dkt. 3424 at ¶6) and the Committees are entitled to know whether these documents are in fact in the Investigator's possession.

16. For the same reasons, the Retiree Committee seeks the following additional GDB-related information:

    a. <u>Information regarding GDB's email retention policy.</u>  The Retiree Committee has asked GDB, but to date, GDB has not provided any detail regarding GDB's email retention policy. The specifics of such policy are critical to understanding what custodial email files the Investigator had access to during its investigation and whether key timeframes are missing or unavailable.

    b. <u>Information regarding non-email files from GDB.</u>  In order to assess whether the Investigator should have sought additional electronic or hard copy documents from GDB, it is essential for the Committees to have a specific understanding of GDB's document retention policy. For example, it is

---

[4] Under the proposed exit plan filed by the Investigator, the Committees' <u>will not</u> receive access to any documents produced to the Investigator by the SEC or FINRA. (Motion at ¶41). With one exception, OCIF will allow the documents it provided to the Investigator to be placed in the Investigator's proposed document depository. (*Id.*)

9

currently unknown whether GDB has other electronic files available including (i) user-created electronic files which were not contained in email (*e.g.*, Word, Excel, etc.), (ii) communication applications, or (iii) mobile phone data (*i.e.*, text messages). [REDACTED]

[REDACTED] Again, the Committees do not know if the hard copy files of key GDB custodians were preserved and are currently available, but this is information the Committees should have prior to their review of the Investigator's final report. It also is important for the Committees to know if the Investigator sought non-email GDB documents from any other source, such as the Oversight Board.



17. As with the materials requested in the Motion, these additional items are narrowly-tailored to seek only basic but critical information that can be provided quickly and with minimum effort.[5] [REDACTED]

---

[5] In its objection to the Informative Motion, AAFAF, acting as representative of GDB, argues that the UCC's request for clarification will be rendered moot by the July 25 Omnibus Hearing because "unless the Investigator makes additional requests of GDB, the Committees should have in their possession ... every non-privileged GDB document produced to the Investigator and document-by-document log entries for any document produced to the Investigator

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ Consequently, the Committees presently seek only those categories of GDB-related documents the Committees believe are the most critical to their efforts.

18. The Retiree Committee also believes that the foundational documents sought in the Informative Motion and the additional items referenced above should be produced now. As the UCC notes, to the extent the Investigator did not collect these documents, they will not be subject to the exit plan at all and their production cannot interfere with the investigation. (Dkt. 3424 at ¶3.) Moreover, if the Investigator does not have the information sought, there can be no danger of duplication of effort because the Committees will be the first parties to gain access to this information.

19. But even if some of these documents have been turned over to the Investigator, ample cause exists to allow the Committees to obtain them now.[6] The documents and information are so facially relevant and foundational to an examination of the Commonwealth's financial history that there is no need to wait until after the Investigator's final report is issued to allow the Committees to access these documents.

---

but withheld form the Committees." (Dkt. 3466 at ¶6.) If that turns out to be the case, then the Retiree Committee agrees that the Committees should understand whether the requested information is in the hands of the Investigator or not. But that would not change the fact that the Committees need to know what the Investigator requested from GDB and the process by which the Investigator took to obtain the documents GDB ultimately "produced" to the Investigator.

[6] And there is ample evidence which suggests that these documents <u>have not</u> been turned over to the Investigator. *First*, the Retiree Committee has not seen these documents in GDB's productions to date. *Second*, the tenor of AAFAF/GDB's objection to the UCC's Informative Motion strongly suggests that the documents were not turned over as GDB does not claim that they have been produced and bemoans the expense it would have to undertake to make these documents available—expenses that would not need to be incurred had the documents already been produced. (Dkt. 3466 at ¶¶ 10, 12.) *Third*, while GDB argues that the UCC has no right to the information sought, that argument only would be raised if GDB has not produced the information to the Investigator given this Court's clear directive that the Committees will be allowed access to the Investigator's document depository.

11

20. The Retiree Committee anticipates that some parties will argue (and GDB already has—*see* Dkt. 3466 at ¶9) that to the extent the requested documents were produced to the Investigator, the Committees can seek access to those documents through the procedure laid out in the Investigator's exit plan, which, as noted above, could result in a two month delay before the Committees obtain any of the information the Investigator collected. Even if this paradigm were appropriate for certain types of information (and it is not), such a potentially lengthy delay does not make sense for the limited set of GDB foundational documents the Committees seek. The documents sought get to the heart of the matter concerning the financial decisions that led to the Commonwealth's present predicament. A review of these documents will greatly inform whether additional discovery is needed, and will allow the Committees' post-report analysis to begin immediately. As such, the Committees should be granted access to these documents and information now.

### D. The Court Should Modify The Investigator's Proposal Regarding The Investigator's Destruction Of Documents And Proposed Time Frame For Consulting With The Committees.

21. The last prong of the Motion seeks the Court's blessing for certain actions taken by the Investigator after the final report is filed as well as limitations on discovery that can be taken against the Investigator and exculpation for the Investigator in connection with its investigation and report. (*See generally* Motion at ¶¶ 50-64.) For this final category of requested relief, the Retiree Committee seeks two modifications.

22. *First*, the Investigator should not be allowed "in its sole discretion, to discard or delete ... all other documents and information not included within the [depository database]." (Motion at ¶44.) The Retiree Committee is particularly concerned with the potential destruction of the Investigator's witness interview summaries, which is the only complete record of the Investigator's interviews "of more than 150 witnesses and parties in interest." (Motion at ¶1.) In

12

fact, given the singularity of the Investigator's work, no other party has had anywhere near this level of access to those who are intimately familiar with the Commonwealth's fiscal management. Given the wealth of information held by the Investigator—a library of knowledge held by no one else—the Retiree Committee believes it would be imprudent for the Investigator to destroy this written record. While the Retiree Committee is not yet seeking to compel the Investigator to share these summaries with the Retiree Committee (although the Retiree Committee expressly reserves any and all rights to challenge the Investigator's handling of the summaries), the Retiree Committee is hopeful that the Investigator eventually will do so after redacting any true attorney impressions from the witness memorandum. And in any event, if the Investigator is going to meet and confer with parties in interest after the issuance of the final report (*see* Motion at ¶¶ 50-51), the Investigator likely will need to rely on these types of documents to fulfill its obligations. For these reasons, the Retiree Committee would ask that the Investigator not be permitted to destroy documents not included in the document depository until its obligations to provide assistance to parties in interest, such as the Retiree Committee, ends.

23. *Second*, on the meet and confer point, the Investigator proposes to "meet and confer ... and provide cooperation and assistance" to the Retiree Committee "until at least June 1, 2019, or confirmation of a plan of adjustment for the Title III Debtors, whichever is earlier." (Motion at ¶51(a).) The Retiree Committee requests that the cutoff be changed to the earlier of confirmation of a plan of adjustment or January 1, 2020.

*[Signature Block on Next Page]*

13

| | |
|---|---|
| Dated: July 12, 2018 | Respectfully submitted, |
| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
| By: | By: |
| */s/ Robert Gordon* | */s/ A.J. Bennazar-Zequeira* |
| Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>919 Third Ave<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | A.J. Bennazar-Zequeira<br>Edificio Union Plaza<br>PH-A piso 18<br>Avenida Ponce de León #416<br>Hato Rey, San Juan<br>Puerto Rico 00918<br>ajb@bennazar.org<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile) |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>Keri Holleb Hotaling (admitted *pro hac vice*)<br>Landon Raiford (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>khotaling@jenner.com<br>lraiford@jenner.com<br>312-222-9350 (telephone)<br>312-239-5199 (facsimile) | *Counsel for The Official Committee of Retired Employees of Puerto Rico* |

14