**Hearing Date**: July 25, 2018 at 9:30 a.m. (AST)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
    Debtors.[1] :
---------------------------------------------------------------------- x

**CREDITORS' COMMITTEE'S JOINDER TO RETIREE COMMITTEE'S LIMITED
OBJECTION REGARDING INVESTIGATOR'S EXIT PLAN MOTION**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

1

To the Honorable United States Magistrate Judge Judith G. Dein:

The Official Committee of Unsecured Creditors of all title III debtors (other than COFINA) (the "Committee") hereby submits this *Joinder to Retiree Committee's Limited Objection to Investigator's Exit Plan* (the "Committee Joinder"), joining all of the arguments made by the Retiree Committee in its *Limited Objection* [Dkt. No. 3497] (the "Retiree Objection") and raising the Committee's additional concerns regarding the *Motion of the Independent Investigator for an Order: (I) Establishing Procedures for Resolving any Confidentiality Dispute in Connection with Publication of the Independent Investigator's Final Report; (II) Approving the Disposition of Documents and Information; (III) Relieving the Independent Investigator from Certain Discovery Obligations; (IV) Exculpating the Independent Investigator in Connection with the Investigation and Publication of the Final Report; and (V) Granting Related Relief* [Dkt. No. 3427] (the "Exit Plan Motion").[1]

## Introduction

1. The Committee's position on the Exit Plan Motion is simple: when the report is published on August 15, the Committees, as a baseline, should be able to review all of the documents that the Investigator has collected and understand what the Investigator has itself already reviewed. In fact, this position is entirely consistent with the court's statements at the June 6 Omnibus Hearing.

> I want to know that there's going to be a plan that says that the documents will be in a room, when access will be available to them. **The overarching thing that I wanted to say is that the Committee is going to get these documents.** All right?

Ex. A, Transcript of June 6, 2018 Omnibus Hearing ("June 6 Transcript"), 127:18–22.

---

[1] The proposed "Exit Plan" is outlined in Exhibit A to Exit Plan Motion as a proposed order (the "Exit Plan Order").

1

2. The Exit Plan was intended to serve as a framework for facilitating that transfer of information, yet the proposal submitted by the Investigator fails to make that possible in a few key respects. The Committee joins in and adopts all of the modifications proposed by the Retiree Objection, and raises only a few additional issues and arguments here regarding those concerns.

3. First, while the Committee joins in the Retiree Committee's proposed modifications to the document depository procedures, the Committee seeks to express the specific timing concerns that, in the Committee's view, make those modifications so imperative. Indeed, under the Investigator's original proposal as outlined in paragraph 47 of the Exit Plan Motion, the Committee's ability to review these documents could be deferred for (at a minimum) nearly three months until November 2018—an unacceptable result in light of the May 2019 deadline for avoidance actions.

4. Second, the Committee seeks to reiterate its previously-expressed concerns regarding the scope of the GDB documents that will be made available. Crucially, in addition to the discrete categories of materials sought in the Committee's July 3 Informative Motion [Dkt. 3424] (the "Informative Motion") (e.g., Board materials and insurance policies) and the additional items raised by the Retiree Committee's Limited Objection, both Committees should be entitled to know the procedures by which GDB documents were reviewed by the Investigator and selected for "production." Critical questions on that front remain unanswered, and GDB's July 10 Objection [Dkt. 3466] to the Informative Motion highlights the opaque posture taken regarding these issues. Only with a full understanding of the Investigator's "asks" of GDB will the Committee be capable of determining whether additional discovery is warranted, and if so, what areas of focus would be the most efficient direction for that discovery.

2

5. Third, with regard to the "notice procedures" addressed in paragraph 35 of the Exit Plan Motion, the Committee joins in the Retiree Committee's proposed modifications but additionally seeks to ensure that, in the event the Investigator attempts to file any portion of the report under seal, both Committees are not required to litigate their access to the sealed material and are entitled to full access to the complete, unredacted version of the final report.

6. Finally, with regard to the "assistance" offered by the Investigator in paragraph 51 of the Exit Plan Motion, the Committee joins in the Retiree Committee's proposed modifications but further requests that the Exit Plan be modified so that the Committees' rights to request interview materials (including, for example, interview notes) are reserved. The Committee simply seeks through this reservation of rights to confirm that the entry of the Exit Plan shall not operate as a bar to the Committees' future ability to seek these interview materials, including on the grounds that the interview materials are purely factual and not privileged in nature.

**I.    DOCUMENT DEPOSITORY PROCEDURES FAIL TO ADDRESS COMMITTEE'S TIMING CONCERNS**

7. The Committee wishes to reiterate for the court the timing concerns that were the driving factor behind the Renewed Motion, and why the Investigator's Exit Plan is inappropriate to address those concerns. For example, the Investigator's proposed Exit Plan requires the Committees to clear at least the following hurdles before obtaining any documents:

- Step 1 – Issuance of Document Request: The Exit Plan Motion contemplates that the Committee would be required to serve a document request "on the attorneys for the Oversight Board and forward[] [the request] to the Neutral Vendor." Exit Plan Motion, ¶ 47(a); Exit Plan Order, ¶ 13(a). The document request may "seek[] access to all documents contained in the Document Depository." Exit Plan Motion, ¶ 47(b); Exit Plan Order, ¶ 13(b).

- Step 2 – Two Week Notice Period: The Exit Plan Motion then contemplates that the "Oversight Board and the Producing Party [] shall have ten (10) business days [two weeks] from the date of Notice to informally object to the Document Request . . ." Exit Plan Motion, ¶ 47(d); Exit Plan Order, ¶ 13(d).

3

- Step 3 – Two Week Period for Filing Motion and Setting for Omnibus Hearing: After the notice period, a producing party may wait another two weeks before filing a motion for a protective order with the court. *See* Exit Plan Motion, ¶ 47(d); Exit Plan Order, ¶ 13(d) (both stating that parties may "within ten (10) **additional** business days, make a motion with the Court to be heard at the next omnibus hearing").

8.  As a practical matter, these provisions delay the Committee's access to documents by almost three months. Thus, for example, the Committee could file a document request on August 16, 2018—the day after the Final Report is published—seeking all of the materials in the Document Depository. At that point, the producing third parties could wait 20 business days (four full weeks) before filing a motion for protection from the court, delaying the filing of that motion until as late as September 13, 2018. By then, the soonest available Omnibus Hearing before the Committees could be heard would occur on **November 7, 2018**.

9.  While these procedures may be acceptable as applied to other parties in interest, they should not be applicable to the Committee. The Committee is not some ancillary party that should be required to submit discovery requests or seek affirmative relief to obtain these documents. Indeed, it is hard to imagine that a third party could level **any** sustainable objection to the Committee's right of access. Because there is no additional burden contemplated by the Committee's request (which seeks access to documents that were already produced), those third parties would need to argue that the documents the Investigator collected were somehow irrelevant for any purpose, much less the Committee's broad purposes under section § 1103(c) of the Bankruptcy and Bankruptcy Rule 2004 which permit even "fishing expeditions" into "any other matter" relevant to the case. 11 U.S.C. § 1103(c) (Committee may investigate "acts, conduct, assets, [and] liabilities . . . of the debtor . . . [or] **any other matter relevant to the case or to the formulation of a plan**"); *see also In re Youk-See*, 450 B.R. 312, 319-20 (Bankr. D. Mass. 2011) ("The examination [] is of necessity to a considerable extent a fishing expedition.").

4

10. Moreover, the problems with the Investigator's framework are not difficult to envision. As argued in the Renewed Motion, there is a hard deadline of May 2019 for avoidance actions—a deadline that the court acknowledged during the June 6 Omnibus Hearing was a genuine and serious concern. Indeed, the prospect that documents would not be produced until November or December 2018 was one of the central justifications behind the Renewed Motion itself. The Committee's review process—and the added value of the "second look" provided by such a review—cannot be put on hold for three more months, and the Committee cannot conduct a productive review of the report without the full benefit of the materials that went into the preparation of that report.

## II. INVESTIGATOR MUST DISCLOSE TO COMMITTEES EXTENT OF GDB DOCUMENTS REVIEWED

11. The Committee reiterates the arguments made in its Informative Motion—and those added by the Retiree Committee—regarding the foundational GDB documents such as Board materials and insurance policies that should be produced to the Committees **now**.[2] In addition, as the Committee indicated in the Informative Motion, the July 25, 2018 Hearing should also address, at a minimum, the extent of the GDB documents that will be made available for both Committees' review.[3] Treatment of this issue is imperative to ensuring that any follow-up efforts are efficient and appropriately tailored. While the Board materials and other documents are a crucial first step to the Committee's review efforts—providing an "inventory"

---

[2] While the Committee anticipates addressing these issues in greater detail at the July 25, 2018 hearing, it notes that the "standing" arguments in the Objection filed by GDB on July 10, 2018, *see* [Dkt. 3466], ignore the fundamental nature of Rule 2004 discovery—which allows access to "any" matter potentially impacting the estate, regardless of whether the Committee or the Commonwealth may have standing to bring such claims. *See* Committee's Reply in Support of 2004 Motion (August 18, 2017) [Dkt. 1080], ¶¶ 36–38 (outlining myriad areas unrelated to "claims" where discovery would be important).

[3] As the Committee noted, this item was addressed in the Informative Motion "in an abundance of caution and for the sole purpose of ensuring that it will be addressed at the July 25, 2018 Omnibus Hearing." Informative Motion [Dkt. 3424], ¶ 11.

5

of the decisions taken (or not taken) by GDB—the only way to ensure that the Committees are as informed as possible is to require the Investigator and/or GDB to disclose to both Committees the search, review, and production efforts that resulted in the GDB documents that are ultimately placed in the Document Depository.

12. Some basic information regarding this review has been made available through the Investigator's June 13, 2018 status report and its statements in the Exit Plan Motion. For example, the Investigator has outlined the following:

- Collection of ▓▓▓ documents from ▓▓▓:
  

- Narrowing for "hits" from ▓▓▓[4]: The Investigator stated in its final Exit Plan Motion that, within this subset of ▓▓▓ documents, it "has run targeted searches through certain of the GDB custodial files and has undertaken a review of documents responsive to those searches."[5] Exit Plan Motion, ¶ 24.

- Selection of documents for "production" ▓▓▓ As explained by the Investigator in its Exit Plan Motion, "[p]eriodically throughout the Investigation, the Independent Investigator has requested that AAFAF, acting as representative for GDB, produce specifically identified documents contained within the custodial files," which would then be reviewed and produced by AAFAF. *Id.*

13. As outlined above, the Committee understands that a universe of ▓▓▓ documents was made available for the Investigator's review, and that approximately ▓▓▓ documents have been otherwise "produced" to the Investigator. However, the Committee has

---

[4] ▓▓▓

[5] However, in the Investigator's June 13, 2018 status report, the Investigator explained that ▓▓▓, and the Investigator has never explained whether it reviewed all of the documents hitting on those terms. *See* Ex. C to Oversight Board's June 13, 2018 Status Report [Dkt. 3303].

6

little visibility into the second step of that review, and practically no visibility into the third step. For example, with regard to the second-tier review, while the Investigator stated in its June 13, 2018 report and in the Exit Plan Motion that it applied search terms to create a smaller subset of documents for its review, it has never addressed whether it reviewed **all** of the documents hitting on those search terms—or instead merely utilized this "second-tier" database as a backdrop for the crafting of additional searches to obtain potential interview exhibits or documents for "production."[6] Of course, understanding what the Investigator actually reviewed is essential to evaluating the completeness of the Investigator's Final Report.[7]

14. More important, though, is the Committee's ability to understand how documents were selected for "production" to the Investigator. Here, the Investigator has provided no visibility into its process—besides the fact that some of those "produced" documents have now been provided, or will be provided, to the Committee. The Committee should not be forced to review these documents in an effort to rebuild the puzzle and recreate or guess at the specific requests that were directed to GDB.[8] Indeed, visibility into the requests propounded by the Investigator could have already averted some of the disputes outlined in the Informative Motion, and prevented the situation in which both of the Committees were unaware whether GDB's board materials and D&O insurance policies had ever been reviewed, or even requested, by the Investigator. *See* Informative Motion, ¶¶ 5–6. Likewise, because the Committee understands

---

[6] For example, it could be the case that the Investigator utilized only the metadata for these "hits"—looking only to the subject lines or to/from for any emails that could be selected for production.

[7] Information regarding the extent of the "read-only" review could offer some comfort that any of the Committee's contemplated follow-up discovery requests or search terms would be most efficiently targeted and that the Committee would be avoiding the duplication of work. For example, this information could enable the Committee to pursue documents where the Committee could be certain that no review had been undertaken by the Investigator ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

[8] While the Investigator may state that it simply "tagged" documents in the Relativity database, it has never disclosed whether it pursued any "categorical" requests for production of documents—as appears may have been the case for at least 3,000 of the non-email documents produced by GDB.

7

that the Investigator's "read-only" access prevented it from utilizing GDB documents as interview exhibits unless they were "produced,"[9] the Investigator should also specify **when** certain documents (or categories of documents) were requested and produced—and whether that production occurred before an individual was interviewed.[10]

15. The difficulties, and inefficiencies, presented by this lack of transparency are perhaps best highlighted by GDB's July 10 Objection to the Informative Motion. In that Objection, GDB refuses to address the Committee's fundamental question concerning whether Board materials have been requested or produced and instead states that "**[t]he UCC will therefore be able to determine for itself whether the production includes GDB Board materials, productions to any regulators, or any other information the UCC wants to know**." GDB Objection to Informative Motion [Dkt. 3466], ¶ 6.

16. In sum, the Investigator and/or GDB should be directed to disclose to the Committees no later than August 15, 2018 (a) the Investigator's requests for production of certain documents (or categories of documents); (b) when those requests were made by the Investigator and when documents were ultimately produced by GDB (i.e., before or after interviews of relevant GDB officials); and (c) whether GDB, in fact, produced all of those documents or refused on any grounds, in which case any negotiation history should be disclosed to the Committees.

---

[9] *See* June 13 Status Report, p. 6 ("A comprehensive review of these files has informed the Independent Investigator's interviews, even where selected documents could not be shared with witnesses at the time of their interviews.").

[10] For example, to the extent the Committee later seeks to conduct a Rule 2004 examination of any individuals, the Committee's efforts would be informed by an understanding of what documents were available to the Investigator for any previous interviews—ensuring that the Committee is able to prioritize those individuals whose documents were not available at the time of any meetings with the Investigator.

8

### III. PUBLICATION PROCEDURES MUST PERMIT COMMITTEES TO ACCESS SEALED MATERIALS

17. In addition to the Retiree Committee's other modifications to the "publication procedures," the court should ensure that both Committees are not required to waste time and effort litigating their access to any materials that may be filed under seal. As proposed by the Investigator, the Exit Plan Order states that "[n]othing in the Publication Procedures shall limit the ability of the Committees to seek access to information filed under seal or to object to the fact that certain information is filed under seal." *see* Exit Plan Motion, ¶ 35(h); Exit Plan Order ¶ 2(h). This reservation of rights fails to recognize the fundamentally different nature of the Committees' statutorily protected roles—and the baseline understanding that the Committees would have the benefit of all of the work performed by the Investigator. Accordingly, the Exit Plan Order should clarify that both Committees shall have access to the unredacted version of the report or any sealed material without having to litigate their access to such information.

### IV. EXIT PLAN SHOULD INCLUDE RESERVATION OF RIGHTS WITH REGARD TO INTERVIEW INFORMATION

18. With regard to the "assistance" procedures, *see* Retiree Objection, ¶¶ 21–23, the Exit Plan should also incorporate a reservation of rights with respect to both Committees' ability to subsequently seek information that was provided to the Investigator during interviews or other discussions with third parties.[11] As the Retiree Committee noted, any interview summaries would perhaps serve as the best source of information for "testing" the necessity of additional discovery or fleshing out questions regarding certain parties' potential misconduct. The

---

[11] The Committee notes that the proposed Exit Plan Order contains a sentence suggesting that the "assistance" procedures may no longer be available if "the engagement of the Independent Investigator by the Special Investigation Committee is terminated sooner." *See* Exit Plan Order, ¶ 15(b). Consistent with the Retiree Committee's proposed modifications, the Investigator should be required to maintain its notes and interview materials for the entirety of the "assistance" period, so that those materials remain accessible even if the Investigator is no longer engaged by the Oversight Board's Special Investigation Committee.

9

Committee does not believe that any of these issues are ripe for resolution at this time, but simply notes that, while the Investigator may argue that any interview "notes" are protected attorney work product, a number of situations may arise to later justify the provision of such information to the Committees, for example:

- Where individuals or third parties (e.g., individuals who were named in the report or who were identified as not being viable "targets" for claims) utilize the report as a defense against any claims or arguments regarding alleged wrongdoing;

- Where the Investigator or the Oversight Board ultimately waives work product protection or the protection is pierced for any reason; or

- Where the Committee establishes that certain information (e.g., notes of interview statements from third parties) is purely factual in nature and not protected by the attorney work product doctrine.

19. Indeed, the examiner orders cited by the Investigator as exhibits to its Exit Plan Motion contain reservations of rights on this very issue:

> For purposes of clarity, the Complete Examiner Record includes the notes taken or created by the Examiner and his Professionals regarding non-transcribed witness interviews. It is the Examiner's position that such notes constitute attorney-work product and are privileged from disclosure to any of the Parties. It is the Debtor's position that any notes take by the Examiner and his Professionals that purport to record what the interviewee said do not constitute work product or otherwise privileged material. **All issues related to whether or not such materials are protected from disclosure by the attorney work-product doctrine, or otherwise, and all other issues relating to claims of privilege (specifically including claims unrelated to interviews that were not professionally transcribed), are expressly reserved, and the Court makes no ruling on this issue at this time**.

*In re Tribune Co., Order Approving Motion for Discharge of Examiner*, ¶ 5 [Dkt No. 3427-8] (attached as Ex. H to Exit Plan Motion). As such, the Exit Plan should be modified to confirm that any such issues are deferred at this time, and that the entry of the Exit Plan may not operate as a bar to either Committees' future efforts to obtain such information (or the Investigator's rights to object to such requests).

10

## **CONCLUSION**

For all the reasons stated herein, the Court should modify the Exit Plan Motion in the manner outlined by the Committee's Joinder and the Retiree Committee's Limited Objection.

*--- Remainder of page intentionally left blank ---*

| | |
|---|---|
| Dated: July 12, 2018 | */s/ Luc A. Despins, Esq.* |

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and –

*/s/ Juan J. Casillas Ayala, Esq.*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*