# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as a representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### THE COFINA SENIOR BONDHOLDERS' COALITION'S RESPONSE TO AURELIUS'S INFORMATIVE MOTION REGARDING RECENT SUPREME COURT DECISIONS IN *ORITZ v. UNITED STATES* AND *LUCIA v. SEC*

The Senior COFINA Bondholders' Coalition[2] respectfully submits this statement in response to the Aurelius's Informative Motion Regarding Recent Supreme Court Decisions in *Ortiz v. United States* and *Lucia v. SEC* (July 6, 2018), Dkt. 3451 ("Informative Motion"):

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The COFINA Senior Bondholders' Coalition comprises Fideicomiso Plaza and the following institutional holders of the COFINA senior bonds: Aristeia Capital, LLC; GoldenTree Asset Management LP (on behalf of its participating clients; Canyon Capital Advisors LLC (on behalf of its participating clients); Decagon Holdings 1, L.L.C.; Decagon Holdings 2, L.L.C.; Decagon Holdings 3, L.L.C.; Decagon Holdings 4, L.L.C.; Decagon Holdings 5, L.L.C.; Decagon Holdings 6, L.L.C.; Decagon Holdings 7, L.L.C.; Decagon Holdings 8, L.L.C.; Decagon Holdings 9, L.L.C.; Decagon Holdings 10, L.L.C.; Scoggin Management LP (on behalf of its participating clients); Tilden Park Capital Management LP (on behalf of its participating clients); Taconic Capital Advisors, L.P.; Whitebox Advisors LLC (on behalf of its participating clients).

1. In response to a grave financial crisis in Puerto Rico, Congress established the Financial Oversight and Management Board for Puerto Rico ("Board") pursuant to its broad power under Article IV of the U.S. Constitution to "make all needful rules and regulations respecting the Territory . . . belonging to the United States." U.S. CONST. art. IV, § 3, cl. 2. The Board's sole purpose is to guide Puerto Rico out of its present straits, and it exercises territorial power to do so.

2. Despite Congress's longstanding and judicially-sanctioned practice of establishing territorial governments in a manner that does not conform with Articles I, II, and III of the Constitution, Aurelius Investment, LLC, Aurelius Opportunities Fund, LLC, and Lex Claims, LLC ("Aurelius") have argued that the Board's composition is unconstitutional because its members were not appointed in accordance with the Article II Appointments Clause. The central question in this case is whether members of the Board are *territorial* officers, like the judges, governors, legislators, and other territorial officials who have long been chosen without regard to Article II, or whether they are officers of the *United States*. Aurelius contends that the members of the Board are principal "Officers of the United States," who must therefore be nominated by the President and confirmed by the Senate before taking office. Aurelius's Obj. and Mot. to Dismiss Title III Pet. at 11 (Aug. 7, 2017), Dkt. 913 ("Motion to Dismiss").

3. On July 6, 2018, Aurelius filed an informative motion arguing that two recent decisions of the United States Supreme Court "directly impact several constitutional issues raised in the briefing over" Aurelius's Motion to Dismiss. Informative Motion ¶ 1.

4. Neither the Supreme Court's decision in *Ortiz v. United States* nor its decision in *Lucia v. SEC* addresses the central question on which Aurelius's motion turns: are the members of the Board "Officers *of the United States*," whose appointment must conform to Article II, or officers of the territorial Government of Puerto Rico, whose appointment need not? As explained

2

more fully in the many responses in opposition to Aurelius's motion and at oral argument, they are officers of Puerto Rico's government. *See, e.g.*, The COFINA Senior Bondholders' Coalition's Opp'n to Motion to Dismiss at 14 (Nov. 3, 2017), Dkt. 1638 ("Coalition Br."); The Financial Oversight and Management Board for Puerto Rico's Opp'n to the Motion to Dismiss at 13–21 (Nov. 3 2017), Dkt. 1622 ("Board Br."); United States' Mem. of Law in Supp. of the Constitutionality of PROMESA at 21–27 (Dec. 6, 2017), Dkt. 1929 ("U.S. Br."). Neither *Ortiz* nor *Lucia* says otherwise.

5. In *Ortiz v. United States*, the Court held in part that cases decided by the Court of Appeals for the Armed Forces (CAAF) fall within the Supreme Court's appellate jurisdiction under Article III. 138 S. Ct. 2165 (2018). Its conclusion depended upon the premise that CAAF's "essential character" is judicial. *Ortiz*, 138 S. Ct. at 2174; *id.* at 2186–88 (Thomas, J., concurring). The Court rejected the argument that it could not exercise its appellate jurisdiction to review CAAF's decisions because CAAF is not an Article III Court. *Id.* at 2176 (majority). In doing so, the Court pointed out that it exercises appellate jurisdiction to review decisions of other courts that are not established under Article III, including territorial courts, the courts of the District of Columbia, and state courts. *Id.*

6. The Court's decision in *Ortiz* provides little guidance on the constitutional issues presented by Aurelius's Motion to Dismiss because it charts a different axis of power than the one at issue in this case. Here, the Court must decide whether the members of the Board exercise powers "of the United States" or those of the government of Puerto Rico. In *Ortiz*, by contrast, the Court considered whether CAAF exercises judicial or executive power. *Id.* at 2174, 2176, 2179; *id.* at 2184, 2186–89 (Thomas, J.); *id.* at 2196 (Alito, J., dissenting). The Court's focus on the nature rather than the seat of CAAF's power is underscored by the comparisons it draws to state

3

courts, *id.* at 2176 (majority), which obviously do not exercise power "of the United States." Its only statement concerning the seat of the judicial power exercised by territorial courts contradicts Aurelius's position by acknowledging that the territorial courts' "authority [i]s 'not a part of that judicial power which is defined in the 3d article,' " *id.* at 13 (quoting *American Ins. Co. v. 356 Bales of Cotton*, 1 Pet. 511, 546 (1828)), i.e., "[t]he judicial power of the United States," U.S. CONST., art. III, § 1.

7. Aurelius nonetheless attempts to wrest support from *Ortiz* based on the following flawed syllogism: (1) The Court drew parallels between Congress's plenary power over the military and its plenary power over the territories. Informative Motion ¶ 4. (2) Congress must provide for the appointment of military officers in accordance with Article II. *Id.* ¶ 5. (3) Therefore, Congress must likewise provide for the appointment of territorial officers in accordance with Article II. *Id.* ¶ 6.

8. The conclusion does not follow because Aurelius's syllogism is built on an invalid premise: that Congress's powers with respect to the military and its powers with respect to the territories are "equivalent." *See id.* ¶ 5. Far from treating them as such, the Court acknowledged a patent distinction between the two: whereas military courts exercise power over all members of the U.S. armed forces, territorial courts exercise power within a defined geographic area. *Ortiz*, 138 S. Ct. at 15; *see also id.* at 2178 (enumerating the relevant ways in which the two powers were similar). The geographical distinction may make no difference in determining whether those courts exercise judicial or executive power, *id.* at 2178–79, but it makes all the difference in determining whether those courts exercise power "of the United States" or of a geographically-defined territory, *see, e.g.*, U.S. Br. at 21–24.

9. Having begun with an overgeneralized premise, Aurelius's argument unsurprisingly proves too much. As Aurelius is forced to concede, Congress may create mechanisms for selecting territorial officers that do not comply with Article II. And it has done so, time and again, from the earliest days of the Republic—creating territorial courts, legislatures, executives, and inferior offices, all outside of Article II's limits. Coalition Br. at 6–12. If the above syllogism were correct, Congress's longstanding practice would be unconstitutional, and none of these officers or judges would have been validly appointed. This untenable conclusion does not follow, Aurelius acknowledges, because not all officers who exercise power in the territories are "Officers of the United States." *See, e.g.*, Motion to Dismiss at 20–21. That concession is fatal to its overreading of *Ortiz*.

10. Again, the central question in this case is whether members of the Board are *territorial* officers, like the judges, governors, legislators, and other territorial officials who have long been chosen without regard to Article II, or whether they are officers of the *United States*. On that question, *Ortiz* provides no guidance of any use to Aurelius. To the contrary, it confirms that Congress may, for one reason or another, depart from the structural provisions of the Constitution when acting pursuant to its plenary powers over the military and the territories—for example, by authorizing a non-Article III entity to exercise judicial power. *Ortiz*, 138 S. Ct. at 2175–78. And it further confirms that Congress's power to depart from those structural provisions in structuring *territorial* governments arises from the fact that those governments do not exercise powers "of the United States." *Id.* at 2177. Its analysis therefore undermines rather than supports Aurelius's argument.

11. Finding no support in the opinion itself, Aurelius is left with the warnings of amicus curiae Professor Aditya Bamzai that exercising appellate jurisdiction over cases decided by CAAF

5

would have "dramatic implications" for Congress's Article IV powers over the territories. Informative Motion ¶ 6. But Professor Bamzai's warning described the potential consequences of a holding that "Congress's authority to legislate for the court-martial system is coterminous with Congress's authority to legislate in the territories and the District of Columbia." Mot. of Prof. Aditya Bamzai for Leave to Participate in Oral Arg. as *Amicus Curiae* and for Divided Arg. at 4–5, *Dalmazzi v. United States, et al.*, Nos. 16-961, et al. (U.S. Dec. 14, 2017). As noted above, the Court did not rely on such a holding to find jurisdiction; it simply held that the courts established under all three powers exercise judicial power (though not the judicial power *of the United States*), *Ortiz*, 138 S. Ct. at 2177, and rejected distinctions between them as irrelevant to the jurisdictional inquiry before it, *id.* at 2178.

12. Like the Supreme Court's holding concerning the *nature* of the power at issue in *Ortiz*, its holding concerning the *quantum* of the power at issue in *Lucia v. SEC* has no bearing on the *seat* of the power at issue in this case.

13. In *Lucia*, the Court concluded that administrative law judges (ALJs) working for the Securities and Exchange Commission (SEC) are Officers, rather than employees, of the United States, who accordingly must be appointed in conformity with the Appointments Clause. *Lucia v. SEC*, 138 S. Ct. 2044 (2018).

14. As an initial matter, *Lucia* emphatically did not elaborate on the legal standard governing the inquiry into whether someone qualifies as an "Officer of the United States" for purposes of the Appointments Clause. *Id.* at 2052. Instead, the Court simply applied its analysis of the judges at issue in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), to the SEC ALJs, which it concluded were "carbon copies" of the *Freytag* judges. *Lucia*, 138 S. Ct. at 2052. Thus, if this Court was not convinced by Aurelius's earlier reliance on *Freytag*, it cannot be

6

convinced by its reliance, now, on *Lucia*, which merely applies *Freytag*. *See* U.S. Br. at 20 (explaining why *Freytag* did not help Aurelius).

15. In any event, *Lucia*, like *Freytag*, has no bearing on the parties' present dispute about the constitutional status of members of the Board. Those cases concern what *quantum* of authority defines the line between constitutional "Officers" and mere employees. *Lucia*, 138 S. Ct. at 2051 ("The sole question here is whether the [SEC's] ALJs are 'Officers of the United States' or simply employees of the Federal Government."); *Freytag*, 501 U.S. at 880. In both cases, it was undisputed that the authority the individuals exercised was part of some power "of the United States," so the Court said nothing about the *entirely separate* line between officers or employees *of the United States* and officers or employees of *another* government, like Puerto Rico.

16. Here, the exact opposite is true: No party disputes that the quantum of authority the members of the Board exercise is enough to render them officers, not employees. Instead, the question is: officers of what government? Aurelius and an ad hoc group of bondholders says "of the United States." Motion to Dismiss at 13–23; Statement of the Ad Hoc Group of General Obligation Bondholders in Supp. of Obj. and Motion to Dismiss ¶ 2 (Nov. 3, 2017), Dkt. 1627. Congress, the United States, and every other party weighing in on Aurelius's motion says "of Puerto Rico." 48 U.S.C. § 2121(c); U.S. Br. at 21–27; Coalition Br. at 14; Board Br. at 13–21; American Federation of State, County and Municipal Employees' Obj. to Motion to Dismiss at 10 (Nov. 3, 2017), Dkt. 1610; Obj. of Official Committee of Retired Employees of the Commonwealth of Puerto Rico to Motion to Dismiss at 5–6 (Nov. 3, 2017), Dkt. 1629; Obj. of Official Committee of Unsecured Creditors to Obj. and Motion to Dismiss at 21–26 (Nov. 3, 2017), Dkt. 1631; Opp'n of Puerto Rico Fiscal Agency and Financial Advisory Authority to Motion to Dismiss at 15–23 (Nov. 3, 2017), Dkt. 1640. *Lucia* says nothing that speaks to this question.

17. For these reasons and all of those offered in its brief and other briefs in opposition to the Motion to Dismiss, the Senior COFINA Bondholders' Coalition respectfully submits that Aurelius's Motion to Dismiss should be denied.

Dated: July 12, 2018                                     Respectfully submitted,

REICHARD & ESCALERA LLC                                  COOPER & KIRK, PLLC

By :   */s/ Rafael Escalera*                             **Charles J. Cooper** (*pro hac vice*)
       **Rafael Escalera**                               ccooper@cooperkirk.com
       USDC No. 122609                                   **Howard C. Nielson, Jr.** (*pro hac vice*)
       escalera@reichardescalera.com                     hnielson@cooperkirk.com
                                                         **Haley N. Proctor** (*pro hac vice*)
       */s/ Sylvia M. Arizmendi*                         hproctor@cooperkirk.com
       **Sylvia M. Arizmendi**
       USDC-PR 210714                                    1523 New Hampshire Ave., NW
       arizmendis@reichardescalera.com                   Washington, DC 20036

       */s/ Fernando Van Derdys*                         QUINN EMANUEL URQUHART &
       **Fernando Van Derdys**                           SULLIVAN, LLP
       USDC-PR 201913
       fvander@reichardescalera.com                      **Susheel Kirpalani** (*pro hac vice*)
                                                         susheelkirpalani@quinnemanuel.com
       */s/ Carlos R. Rivera-Ortiz*                      **Eric Winston** (*pro hac vice*)
       **Carlos R. Rivera-Ortiz**                        ericwinston@quinnemanuel.com
       USDC-PR 303409                                    **Daniel Salinas**
       riverac@reichardescalera.com                      USDC-PR 224006
                                                         danielsalinas@quinnemanuel.com
       */s/ Gustavo A. Pabón-Rico*                       **David Cooper** (*pro hac vice*)
       **Gustavo A. Pabón-Rico**                         davidcooper@quinnemanuel.com
       USDC-PR 231207                                    **Eric Kay** (*pro hac vice*)
       pabong@reichardescalera.com                       erickay@quinnemanuel.com
                                                         **Kate Scherling** (*pro hac vice*)
       255 Ponce de León Avenue                          katescherling@quinnemanuel.com
       MCS Plaza, 10th Floor
       San Juan, Puerto Rico 00917-1913                  51 Madison Avenue, 22nd Floor
                                                         New York, New York 10010-1603