# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | ) PROMESA<br>) Title III<br>) |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** | ) No. 17 BK 3283-LTS<br>)<br>) **(Jointly Administered)** |
| As a representative of | ) |
| **THE COMMONWEALTH OF PUERTO RICO** *et al.*, | ) |
| **Debtors.**[1] | ) |

## THIRD INTERIM FEE APPLICATION OF ERNST & YOUNG LLP, AS FINANCIAL ADVISOR TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, FOR TITLE III SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 1, 2018 THROUGH APRIL 30, 2018

Name of Applicant: **Ernst & Young LLP**

Authorized to Provide Professional Services to: **The Financial Oversight and Management Board for Puerto Rico**

Date of Retention: **Effective as of May 3, 2017 for Title III Cases**

Period for which compensation and reimbursement is sought:[2] **February 1, 2018 through April 30, 2018 (the "Fee Period")**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Amount of interim compensation sought as actual, reasonable, and necessary for Title III Services: **$1,114,251.25**

Amount of interim expense reimbursement sought as actual, reasonable, and necessary in connection with Title III Services:[3] **$0**

Are your fee or expense totals different from the sum of previously-served monthly statements?

_____Yes     ___x____ No.   If there is any discrepancy, please explain it in the text of the attached fee application or in a footnote to this cover sheet.

Blended rate in this application for all professionals for Title III Services:  **$579.77 / hour**

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is approximately **2.1** hours and the corresponding compensation requested is **$1,279.50**.

**PRIOR INTERIM FEE APPLICATIONS & ADJUSTMENTS:**

| Date Filed | Fees Requested | Expenses Requested | Fee Adjustments | Expense Adjustments | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 12/15/2017 | $1,169,699.80 | $4,910.69 | $33,230.32 | $839.80 | $1,136,469.48 | $4,070.89 |
| 3/21/2018 | $1,261,586.10 | $12,546.21 | $32,859.19 | $7.86 | $1,228,726.91 | $12,538.35 |

Number of professionals with time included in this application:  **27**

If applicable, number of professionals in this application not included in a staffing plan approved by the client:  **0**

If applicable, difference between fees budgeted and compensation sought for this period: **Pursuant to the attached Budget Plan, EY's actual fees for Title III Services (defined herein) during the interim period were approximately $171,487.65 less than budgeted fees.**

Are any timekeeper's hourly rates higher than those charged and approved upon retention:  **No.**

---

[2]  This Application does not include EY's fees or expenses for May 2018.  EY's fees and expenses for May 2018 will be included in its fourth interim fee application.

[3]  EY incurred expenses during the Fee Period, but is not requesting reimbursement of such expenses in this Application.  EY intends to request reimbursement of the expenses it incurred during the Fee Period in a subsequent fee application.

1. By this Application, Ernst & Young LLP ("EY") respectfully requests allowance and payment of $1,114,251.25 as compensation and reimbursement of $0 of expenses,[4] with respect to services rendered to The Financial Oversight and Management Board for Puerto Rico (the "Board") that are not customarily required outside Title III cases (the "Title III Services"),[5] for the interim period from February 1, 2018 through April 30, 2018 (the "Fee Period").[6]

2. The supporting detail for this Application is attached hereto as Exhibits A through E. Exhibit A contains a summary of compensation requested by professional for Title III Services. Exhibit B contains a summary of compensation requested by project category for Title III Services. Exhibit C contains EY's detailed time records for Title III Services during the Fee Period. Exhibit D contains EY's budget for Title III Services for the Fee Period. Exhibit E contains EY's staffing plan for Title III Services for the Fee Period.[7]

## Title III Services Provided During the Fee Period

3. During the Fee Period, EY performed the categories of Title III Services for the Board that are described in Exhibit B hereto.

---

[4] EY incurred expenses during the Fee Period, but is not requesting reimbursement of such expenses in this Application. EY intends to request reimbursement of the expenses it incurred during the Fee Period in a subsequent fee application.

[5] EY also rendered other services to the Board that are customarily required outside Title III cases (the "Non-Title III Services"). In accordance with the Court's *First Amended Order Setting Procedures For Interim Compensation and Reimbursement of Expenses of Professionals*, entered on November 8, 2017 [Docket No. 1715], this Application does not include the fees and expenses that EY incurred in performing Non-Title III Services.

[6] This Application does not include EY's fees or expenses for May 2018. EY's fees and expenses for May 2018 will be included in its fourth interim fee application.

[7] EY understands that it is not required to provide a comparable hourly rate disclosure, pursuant to the letter from the Government of Puerto Rico regarding the applicability of the US Trustee Guidelines to financial advisors.

3

4. The total time spent by EY providing Title III Services for the Board during the Fee Period was approximately 1,921.9 hours. The blended hourly rate for Title III Services performed for the Board during the Fee Period is approximately $579.77.

### Statement in Compliance With Appendix B Guidelines C.5

5. The following answers are provided in response to the questions set forth in Appendix B Guidelines paragraph C.5:

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

**Response:** No.

**Question:** If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Response:** Not applicable.

**Question:** Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

**Response:** No.

**Question:** Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in

preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

**Response:** No.

**Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

**Response:** This particular fee application does not include any such time or fees.

**Question:** If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Response:** The engagement letters that were signed by the Board provide that EY's rates are subject to increase, typically once a year on July 1. Since EY is not a law firm, it is not subject to ABA Formal Ethics Opinion 11-458.

### *Johnson* Factors

6. Below is a discussion of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), made applicable to compensation determinations in bankruptcy in *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1298-99 (5th Cir. 1977):

(1) <u>The time and labor required.</u> The number of hours expended during the Fee Period demonstrates that EY devoted a substantial amount of time on a variety of issues that

5

have arisen during the Fee Period. EY rendered the services within a reasonable amount of time commensurate with the complexity, importance and nature of the issues it addressed.

(2) The novelty and difficulty of the issues. Many of the issues that EY addressed were complex, and required the skill and experience of sophisticated accounting and restructuring professionals.

(3) The skill requisite to perform the services properly. To properly perform the Title III Services it rendered during the Fee Period, EY was required to draw upon the skill and substantive knowledge of its professionals.

(4) The preclusion of other employment by the professional due to acceptance of the case. EY committed a significant amount of time and labor to the Board during the Fee Period, which otherwise would have been dedicated to other matters for which, in most instances, EY's invoices would have been paid in full on a timely basis.

(5) The customary fee. EY's fees are based on the customary rates it charges its other clients for similar types of services.

(6) Whether the fee is fixed or contingent. EY is charging the Board on an hourly-fee basis for the services it rendered during the Fee Period.

(7) Time limitations imposed by the client or the circumstances. The circumstances of these cases have occasionally imposed time constraints on EY, because of the need for rapid resolution of significant issues.

(8) The amount involved and the results obtained. EY respectfully submits that its Title III Services have resulted in substantial benefits to the Board, which ultimately redounds to the benefit of the Title III debtors.

6

(9) <u>The experience, reputation and ability of the professionals.</u> EY is a very well-regarded and established professional services firm, and its partners and professional employees are experienced in performing the Title III Services.

(10) <u>The "undesirability" of these cases.</u> EY does not believe these cases are undesirable, based on its understanding that its requested compensation and expense reimbursement would be awarded.

(11) <u>The nature and length of the professional relationship with the client.</u> EY has provided professional services to the Board since early 2017.

(12) <u>Awards in similar cases.</u> The amount of compensation and expense reimbursement is reasonable in terms of the awards granted in cases of similar magnitude and complexity.

7. The request herein is without prejudice to EY's right to seek additional compensation for Title III Services performed and expenses incurred during the Fee Period, which were not processed at the time of this Application.

**WHEREFORE,** EY LLP hereby respectfully requests allowance and payment of $1,114,251.25 as compensation and reimbursement of $0 of expenses, with respect to Title III Services during the Fee Period. EY LLP also respectfully requests that it be granted such other and further relief as the Court may deem just and proper.

Dated: July 16, 2018 Respectfully submitted,

By: */s/ Adam Chepenik*
    Adam Chepenik
    Ernst & Young LLP

## **VERIFICATION**

I hereby certify that:

a) I am a principal with the applicant firm, Ernst & Young LLP ("EY").

b) I am familiar with the work performed on behalf of The Financial Oversight and Management Board for Puerto Rico by EY during the Fee Period.

c) I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

d) I hereby certify that no public servant of the Department of Treasury is a party to or has any interest in the gains or benefits derived from the contract that is the basis of this invoice. The only consideration for providing services under the contract is the payment agreed upon with the authorized representatives of EY's client. The amount of this invoice is reasonable. The services were rendered and the corresponding payment has not been made. To the best of my knowledge, EY does not have any debts owed to the Government of Puerto Rico or its instrumentalities.

Dated: July 16, 2018      Respectfully submitted,

By: */s/ Adam Chepenik*
    Adam Chepenik
    Ernst & Young LLP

# **EXHIBIT A**

## **SUMMARY OF COMPENSATION REQUESTED BY PROFESSIONAL**

## **EXHIBIT B**

## **SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY**

11

## **EXHIBIT C**

## **DETAILED TIME RECORDS**

12

# EXHIBIT D

# BUDGET

| Project Category | Est. Hours | Est. Fees | Actual Hours | Actual Fees Sought |
|---|---|---|---|---|
| T3 -Creditor Mediation Support | 57.0 | $41,730.67 | 45.3 | $33,164.90 |
| T3 - Long-Term Projections | 1,750.0 | $1,086,232.40 | 1,524.5 | $946,263.60 |
| T3 – Plan of Adjustment | 10.0 | $8,450.00 | 0.6 | $507.00 |
| T3 - Fee Applications / Retention | 10.0 | $6,092.86 | 2.1 | $1,279.50 |
| T3 - CBA/Labor Agreements | 107.0 | $62,700.54 | 95.2 | $55,785.90 |
| T3 - Non-working travel (billed at 50% of rates) | 265.0 | $80,532.43 | 254.2 | $77,250.35 |
| **Total** | **2,199.0** | **$1,285,738.90** | **1921.9** | **$1,114,251.25** |

**EXHIBIT E**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on the Matter During the Budget Period | Average Hourly Rate |
|---|---|---|
| Partner/Principal | 4 | $782.39 |
| Executive Director | 6 | $737.83 |
| Senior Manager | 4 | $679.35 |
| Manager | 7 | $547.16 |
| Senior | 4 | $388.66 |
| Staff | 2 | $227.69 |