**Hearing Date and Time: July 25, 2018 at 9:30 a.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>      Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>      as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO,<br><br>      Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

## REPLY OF CERTAIN SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY[1]

---

[1] Movants hereby reply to the objections filed by the (a) Financial Oversight and Management Board for Puerto Rico on behalf of ERS (Dkt. 292), which was joined by the American Federation of State, County and Municipal Employees (Dkt. 294) and the Official Committee of Unsecured Creditors (Dkt. 296); and (b) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (Dkt. 293), which was also joined by the American Federation of State, County and Municipal Employees (Dkt. 294) and the Official Committee of Unsecured Creditors (Dkt. 296).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    Relief From The Automatic Stay Is Appropriate Where, As Here, Movants' Claim
Against ERS's Property Is Far More Than Colorable ...................................... 2

II.    Movants' Property Interests Are Not Adequately Protected ............................. 8

III.   Movants Are Entitled To A Prompt Hearing On The Motion To Lift The
Automatic Stay.................................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Estate Constr. Co. v. Miller & Smith Holding Co.*,
   14 F.3d 213 (4th Cir. 1994) ................................................................2

*Grella v. Salem Five Cent Sav. Bank*,
   42 F.3d 26 (1st Cir. 1994) ...................................................1, 2, 5, 6

*In re Bailey*,
   574 B.R. 15 (Bankr. D. Me. 2017) ......................................................7

*In re Briggs Transp. Co.*,
   780 F.2d 1339 (8th Cir. 1985) .............................................................1

*In re Buehne Farms*,
   No. 04-32052, 2005 WL 2456867 (Bankr. S.D. Ill. Apr. 26, 2005) ........7

*In re Calore Express Co.*,
   288 F.3d 22 (1st Cir. 2002) .................................................................5

*In re Davenport*,
   34 B.R. 463 (Bankr. M.D. Fla. 1983) ...................................................5

*In re Gellert*,
   55 B.R. 970 (Bankr. D.N.H. 1985) .......................................................2

*In re Hunt's Pier Assocs.*,
   143 B.R. 36 (Bankr. E.D. Pa. 1992) .....................................................6

*In re Johnson*,
   756 F.2d 738 (9th Cir.), *cert. denied*, 474 U.S. 828 (1985) ..................2

*In re Pappas*,
   55 B.R. 658 (Bankr. D. Mass. 1985) ....................................................2

*In re Quality Elect. Ctrs., Inc.*,
   57 B.R. 288 (Bankr. D.N.M. 1986) ......................................................2

*In re Rice*,
   82 B.R. 623 (Bankr. S.D. Ga. 1987) .................................................5, 6

*In re Shehu*,
   128 B.R. 26 (Bankr. D. Conn. 1991) ....................................................2

*In re Tally Well Serv., Inc.*,
   45 B.R. 149 (Bankr. E.D. Mich. 1984) .................................................2

*Matter of Vitreous Steel Products Co.*,
   911 F.2d 1223 (7th Cir. 1990) ..........................................................2, 7

*Nat'l Westminster Bank, U.S.A. v. Ross*,
   130 B.R. 656 (Bankr. S.D.N.Y.), *aff'd*, 962 F.2d 1 (2d Cir. 1991) ........2

*Peaje Invs. LLC v. García-Padilla,*
    845 F.3d 505 (1st Cir. 2017) ........................................................................... *passim*

*Peaje Invs. LLC v. Garcia-Padilla,*
    No. 16-2365, 2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ................................. 3, 10

*Wright v. Union Cent. Life Ins. Co.,*
    311 U.S. 273 (1940) ..................................................................................... 1

STATUTES

11 U.S.C. § 362(d) ............................................................................................ 8, 11, 13

11 U.S.C. § 362(e) ............................................................................................ 13, 14

11 U.S.C. § 362(g) ............................................................................................ 8

OTHER AUTHORITIES

3 COLLIER ON BANKRUPTCY ¶ 362.10 (16th 2018) ....................................................... 8

## PRELIMINARY STATEMENT

1.      The Supreme Court has long recognized that adequate protection is a constitutional imperative. *E.g.*, *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278 (1940). "By providing a creditor with a means of protecting its interest through [the] adequate protection requirement, the competing interests of the debtor's need to reorganize and the secured creditor's entitlement to constitutional protection of its bargained-for property interests are reconciled." *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985). Thus, § 362 of the Bankruptcy Code, incorporated into PROMESA, provides that in the absence of adequate protection, a court "shall" grant relief from the automatic stay. 11 U.S.C. § 362.

2.      Ignoring these longstanding principles, ERS advances two indefensible reasons why the Court should absolve ERS and the Commonwealth of their statutory and constitutional obligations to provide adequate protection.

3.      *First*, ERS asserts that the Court may not grant relief from the automatic stay because there is a pending dispute regarding the validity of Movants' liens. But the First Circuit has held that the only thing at issue in a § 362 hearing is whether the creditor has a "colorable" claim of a lien on property of the debtor. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994). That standard is plainly satisfied here.

4.      *Second*, ERS asserts that the value of Movants' collateral has not diminished since the Title III petition date. This, too, is utterly incorrect. Since ERS's Title III filing, the Oversight Board and the Commonwealth have diverted *all* of Movants' collateral and dissipated substantial amounts to make payments to subordinate creditors. There can be no doubt that Movants' collateral has decreased in value. Indeed, the Commonwealth's admitted plan is to reduce the value of Movants' collateral to zero.

1

5.      The remaining objections are similarly meritless and the Motion should be granted.

## **ARGUMENT**

**I.      Relief From The Automatic Stay Is Appropriate Where, As Here, Movants' Claim Against ERS's Property Is Far More Than Colorable.**

> A.    Stay relief is appropriate where a creditor has a colorable claim to property of the debtor and Movants' claim against ERS's property is far more than colorable.

6.      ERS is wrong when it asserts that stay relief may not be granted if there is a dispute regarding the validity of a lien.  Oversight Board Br. ¶¶ 21-27.  The First Circuit has held that § 362 hearings to lift the automatic stay "do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate."  *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994); *see also Matter of Vitreous Steel Products Co*., 911 F.2d 1223, 1234 (7th Cir. 1990) ("Questions of the validity of liens are not generally at issue in a 362 hearing, but only whether there is a *colorable* claim of a lien on property of the estate.") (emphasis in original).  The First Circuit reasoned that "[t]he limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings" have led most courts to reach the same conclusion.  *Grella*, 42 F.3d at 32 (citing cases).[2]  "To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale adversary lawsuit, and would be inconsistent with [the § 362] procedural scheme."  *Id.* at 33.

---

[2] *E.g.*, *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994); *In re Johnson*, 756 F.2d 738, 740 (9th Cir.), *cert. denied*, 474 U.S. 828 (1985); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 670 (Bankr. S.D.N.Y.), *aff'd*, 962 F.2d 1 (2d Cir. 1991); *In re Quality Elect. Ctrs., Inc*., 57 B.R.  288, 290 (Bankr. D.N.M. 1986); *In re Pappas*, 55 B.R.  658, 660-61 (Bankr. D. Mass. 1985); *In re Gellert*, 55 B.R. 970, 974-75 (Bankr. D.N.H. 1985); *In re Tally Well Serv., Inc*., 45 B.R.  149, 151-52 (Bankr. E.D. Mich. 1984); *In re Shehu*, 128 B.R.  26, 28-29 (Bankr. D. Conn. 1991)).

7.     And, of course, Movants have a claim against ERS's property that is far more than merely "colorable." In fact, this Court and the First Circuit have both already recognized that Movants hold valid and enforceable liens on ERS's property. *Peaje Invs. LLC v. Garcia-Padilla*, No. 16-2365, 2016 U.S. Dist. LEXIS 153711, at *23-*24 (D.P.R. Nov. 2, 2016) (The ERS Bondholders, "pursuant to the terms of the applicable bond resolution, hold a security interest and lien in certain pledged property, including all future employer contributions," which "continues indefinitely until ERS's outstanding debt obligations have been satisfied in full."); *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 511-514 (1st Cir. 2017) (finding that the ERS Bondholders are secured creditors).[3]

8.     Critically, those findings were based, in part, on admissions by ERS and the Commonwealth that Movants hold valid and enforceable liens. ERS admitted in prior PROMESA proceedings that Movants hold "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which [would] continue to grow." Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief From the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro García Padilla, et al.*, No. 16-cv-2696, Dkt. 52, at 10 (Oct. 26, 2016); *see also id.* at 10-11 ("The Commonwealth granted the ERS Bondholders a first lien in and over

---

[3] The ERS Bond Resolution provides for the "pledge and assignment of, and the grant of a security interest in and over, the Pledged Property" to Movants. ERS Bond Resolution § 501.1 & Exh. B, VI-36. "Pledged Property" is defined broadly to include (a) all "Revenues," including, among other things, all employer contributions received by ERS or the Fiscal Agent "and any assets in lieu thereof or derived thereunder which are payable to [ERS] pursuant to [the Enabling Act]"; (b) all "right, title, and interest of [ERS] in and to" all of the property described in (a) and "all rights to receive the same"; (c) the funds, accounts, and subaccounts held by the Fiscal Agent; (d) any and all other rights and personal property of every kind pledged and assigned by ERS for additional security; and (e) "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property. *Id.* § 501 & Exh. B, VI-33, VI-36, VI-37.

3

'Pledged Property'–consisting of, among other assets, all revenues of the ERS–pending the discharge and satisfaction of all outstanding principal and interest.  As noted, the ERS received approximately $486 million in employer contributions in the year ending June 30, 2015, with these amounts scheduled to increase by 1.25% per year beginning on July 1, 2016.  In addition, ERS is currently receiving employer contributions from non-Commonwealth employers of approximately $17 million per month [during the PROMESA stay].  The ERS Bondholders have a security interest in those revenues also, subject only to the satisfaction of the ERS's outstanding debt obligations.").

9.      And the Commonwealth admitted in prior PROMESA proceedings that "[t]he security interest and lien in favor of ERS bondholders is indefinite, and ends only upon satisfaction of the ERS's outstanding debt obligations."  Respondents' Brief in Opposition to Motion for Relief From the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro García Padilla, et al*., No. 16-cv-2696, Dkt. 53, at 5 (Oct. 26, 2016); *see also id.* at 13 ("When Movants purchased their ERS bonds, they expected that their debt service payments would be secured by a lien on all ERS revenues. . . [O]nce the temporary emergency period expires, Movants' lien will attach to every penny ERS receives going forward until bondholders are repaid in full."); *id.* at 17-18 ("The ERS receives approximately $480 million in employer contributions annually, and the bondholders' security interest in those revenues continues indefinitely until satisfaction of the ERS's outstanding debt obligations.).

   B.   ERS's cases do not support its position that stay relief is inappropriate whenever the debtor challenges the validity of a creditor's lien.

10.      ERS cites three cases in support of its argument that the Court should deny stay relief in light of the pending challenges to the validity of Movants' liens—decisions of bankruptcy courts in Florida, Georgia, and Pennsylvania.  Those decisions hold no weight in light of the

unequivocal First Circuit precedent that relief from the automatic stay is appropriate where creditors have a colorable claim against property of the debtor, and they are not binding on this Court in any event.  *See Grella*, 42 F.3d at 32; *see also In re Calore Express Co.*, 288 F.3d 22, 36 (1st Cir. 2002) (following *Grella*).  Moreover, the cases relied upon by ERS do not stand for the proposition that stay relief is inappropriate whenever the debtor disputes the validity of a creditor's lien.  Rather, in instances where a court denied relief from the automatic stay, it did so because it otherwise ordered adequate protection payments or found that an equity cushion provided adequate protection.

11.     In *In re Davenport*, 34 B.R. 463, 466-67 (Bankr. M.D. Fla. 1983); Oversight Board Br. ¶ 22, for example, the court declined to lift the automatic stay when challenges to the validity of the lien were pending in another proceeding, but it did so only because there was an equity cushion that provided temporary adequate protection to the creditor.  Here, ERS asks the Court to leave the automatic stay in place in the complete absence of adequate protection.

12.     Similarly, in *In re Rice*, 82 B.R. 623, 627 (Bankr. S.D. Ga. 1987); Oversight Board Br. ¶ 22, the court denied the motion for relief from stay, but nonetheless required the debtor to make adequate protection payments.  In that case, in opposing the motion for relief from the automatic stay, the debtor asserted that "due to lack of consideration, fraud, duress, estoppel or some similar theory, part or all of the debt owed on the real estate could be discharged or set-off." 82 B.R. at 626.  In response, the court noted that "when presented with evidence in defense of a motion for relief that strongly supports an inference that the lien may be invalid in such a proceeding, [it] would be compelled to deny the motion and leave the stay in effect for a sufficient time to allow the debtor to pursue other litigation."  *Id.* The court, however, declined to follow that course there because "the evidence presented was utterly insufficient to raise such an inference."

*Id.*  While the court went on to deny the creditor's motion to lift the stay because the value of the real property exceeded the debt, it nonetheless ordered adequate protection payments because the equity cushion was small and the debtor was not making payments due on the property.  *Id.* at 627.

13.     Finally, in *In re Hunt's Pier Assocs.*, 143 B.R. 36, 50-51 (Bankr. E.D. Pa. 1992); Oversight Board Br. ¶ 22, the court concluded that a creditor there was not entitled to relief from the automatic stay when it had already made findings that "any security interests which [the creditor possessed] [were] not only subordinate to the security interests of [another creditor], but also avoidable by the trustee."  "Therefore, for all practical purposes, the status of [the party seeking relief], as to the[] [assets], [was] that of an unsecured creditor."  143 B.R. at 51.  In other words, unlike this case, the court in *Hunts Pier Associates* had already adjudicated the debtor's challenge and found that the creditor was unsecured.  Here, the Court has not made any determinations with respect to Movants' liens.

14.     ERS's attempts to distinguish Movants' cases are equally unavailing.  In *Grella*, the First Circuit held that a creditor must establish only a colorable claim of a lien in a hearing for relief from the automatic stay.  42 F.3d at 32.  ERS suggests that the Court should disregard this holding because the First Circuit went on to say that a bankruptcy court could nonetheless "consider counterclaims and defenses" in deciding whether to grant stay relief.  *Id.*; Oversight Board Br. ¶ 25.  But nothing about that statement changes the court's holding or supports ERS's position that stay relief should be denied whenever a debtor disputes the existence of a lien.  The First Circuit was clear: "hearings [under § 362] do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate."  42 F.3d at 32.

15.     In *Vitreous Steel*, the Seventh Circuit said the same.  It held that "[q]uestions of the validity of liens are not generally at issue in a § 362 hearing, but only whether there is a *colorable* claim of a lien on property of the estate." 911 F.2d at 1234 (emphasis in original).  ERS notes that the court in *Vitreous Steel* had made a finding that the creditor had a perfected security interest. Oversight Board Br. ¶ 24.  But that does not change the court's holding that only a colorable claim of a security interest is required to grant relief from the automatic stay.  It is also irrelevant that, as ERS points out, the bankruptcy trustee was not challenging the lien in *Vitreous Steel*. *Id.*

16.     Finally, *In re Bailey*, 574 B.R. 15, 19 (Bankr. D. Me. 2017) and *In re Buehne Farms*, Inc., No. 04-32052, 2005 WL 2456867, at *2 (Bankr. S.D. Ill. Apr. 26, 2005) support Movants' arguments.  ERS argues that *Bailey* is inapposite because it involved a dispute regarding the amount of a secured creditor's claim, not whether the claim was secured and perfected.  Oversight Board Br. ¶ 26.  But ERS misses the point.  The debtor in *Bailey* opposed the stay relief motion by challenging the creditor's underlying claim and the court held that "[r]elief from stay hearings are merely summary proceedings to ascertain whether the party seeking relief has a colorable claim to estate property" rather than determinations of "the merits of the underlying substantive claims, defenses, or counterclaims." *Bailey*, 574 B.R. at 19.

17.     ERS argues that *Buehne Farms* actually supports its position because the court there denied stay relief and noted that an adversarial proceeding was necessary to determine the validity and priority of the creditors' liens.  Oversight Board Br. ¶ 27.  But ERS ignores a key aspect of the court's decision: the court in *Buehne Farms* found that the creditors were entitled to monthly adequate protection payments while it resolved the debtors' challenges to the validity and priority of the liens.  2005 WL 2456867, at *2.

7

18.     At bottom, ERS asks this Court to leave the automatic stay in place even though both ERS and the Commonwealth have refused to provide Movants with adequate protection. Section 362 does not permit this result: it states that "the court *shall* grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, *including the lack of adequate protection of an interest in property of such party in interest*."  11 U.SC. § 362(d)(1) (emphasis added).  The fact that ERS disputes the validity and scope of Movants' liens does not absolve ERS and the Commonwealth of their obligations to provide Movants with adequate protection until those disputes are resolved.

## II.     Movants' Property Interests Are Not Adequately Protected.

### A.     The debtors ultimately bear the burden of proof on the question of adequate protection.

19.     Under § 362(g), the debtors ultimately bear the burden of proof on the question of adequate protection.  11 U.S.C. § 362(g); *see also Peaje*, 845 F.3d at 513 ("In the bankruptcy context . . . Congress . . . enact[ed] an express burden-shifting framework under which the movant 'has the burden of proof on the issue of the debtor's equity in property,' but the debtor 'has the burden of proof on all other issues.'"  11 U.S.C. § 362(g)).  ERS argues that Movants must first make an initial showing of the lack of adequate protection.  Oversight Board Br. ¶ 29.  Movants have plainly done so and "the burden of going forward and the ultimate burden of persuasion [is on ERS as] the party opposing the relief to show that the collateral is not declining in value, [Movants are] adequately protected by periodic cash payments, an equity cushion, replacement liens or otherwise, or that there is a significant likelihood of a successful reorganization in a reasonable time."  3 COLLIER ON BANKRUPTCY ¶ 362.10 (16th 2018).

B. <u>Movants have established a legally sufficient claim that they are entitled to adequate protection and ERS and the Commonwealth have put forth no contrary evidence.</u>

20.     Movants have alleged that the value of their collateral is declining and ERS and the Commonwealth cannot credibly argue otherwise. *See* Motion Part III. Since ERS's Title III filing, the Oversight Board and the Commonwealth have diverted *all* of Movants' collateral. Employer contributions currently being made by employers—which were pledged to Movants to repay the ERS Bonds—are being diverted to the Commonwealth and dissipated to pay subordinate creditors. *See, e.g.*, Fiscal Plan for Puerto Rico at 23 (June 29, 2018).

21.     On this record, Movants are entitled to adequate protection. In litigation commenced prior to ERS's Title III filing, the First Circuit held that even a temporary diversion of Movants' collateral and the resulting uncertainty about ERS's ability to repay the ERS Bonds established a legally sufficient claim that Movants lacked adequate protection. *Peaje*, 845 F.3d at 514 (Movants "included in their district court filings a 2014 statement by ERS that uncertainty about future employer contributions could affect the repayment of the ERS's bond payable."); *see also* Unofficial Transcript, *Altair Global Credit Opportunities Fun (A), LLC, et al., v. Garcia-Padilla, et. al.*, No. 16-2433, at 36:21-37:1 ("But I'm just having great difficulty with your argument that there's this seven-month window where the government can entirely, entirely destroy the value of collateral a hundred percent and yet that wouldn't in and of itself be good cause."). In fact, this is what distinguished Movants from other appellants in that case, bondholders of the Puerto Rico Highways and Transportation Authority, who did not allege that the diversion of their collateral would leave their interests inadequately protected. *Peaje*, 845 F.3d at 511 ("Because [the bondholders of the Puerto Rico Highways and Transportation Authority] failed even to make a legally sufficient claim that it lacked adequate protection, we conclude that

9

the district court did not commit reversible error in denying its lift-stay motion without an evidentiary hearing.  The Altair Movants, on the other hand, were entitled to such a hearing.").

22.     ERS argued at the time that Movants were adequately protected because the diverted employer contributions were held in an operating account (and not dissipated).  *Id.* at 514.  But because it was not clear that Movants' liens would extend to that particular account, the First Circuit found that it did not suffice to provide adequate protection.  The court noted that, if Movants' liens did not extend to the ERS operating account, Movants "face[d] the prospect of being left with a mere unsecured claim."  *Id.*  That is the same potential peril that the ERS Bondholders confront today.

23.     Movants' allegations here go even further than those in the First Circuit record in *Peaje*.  *First*, the diversion of employer contributions is no longer temporary; it is permanent.  *Second*, not only are employer contributions being diverted, but they are also being dissipated by the Commonwealth to pay other creditors.  *Third*, there is now even less certainty that Movants' liens extend to the employer contributions once dissipated or that ERS will be able to meet its obligations on the ERS Bonds.  Unsurprisingly, ERS does not repeat its prior statements (all of which are admissions) that the ERS Bondholders liens cover sufficient collateral to fully collateralize the ERS Bondholders' claims.  In these circumstances, Movants' entitlement to adequate protection stands unopposed.  *See Peaje*, 845 F.3d at 511.

24.     ERS also notes that Movants have already received $194 million in adequate protection payments.  Oversight Board Br. ¶ 32.  ERS argues that this means that no further adequate protection is warranted.  But ERS fails to explain why, in the face of continuing ERS payment obligations to Movants, past adequate protection payments absolve it of making adequate

protection payments going forward.[4]  ERS and the Commonwealth are obligated to provide

adequate protection for the duration of the automatic stay when there is a *decrease* in the value of

Movants' collateral.  As collateral continues to be diverted and spent, the value of Movants'

collateral continues to decrease.  In the absence of adequate protection, the automatic stay must be

lifted.  *See* 11 U.S.C. § 362(d).

> C.  The Retiree Committee's arguments are without merit.

25.    The Retiree Committee argues that there is no decrease in the value of Movants'

collateral because ERS's bank account decreased from January 1, 2018 to May 31, 2018 only on

account of adequate protection payments made to ERS Bondholders.  Retiree Committee Br. at 7-

8.  But the funds on deposit in that account represent only a small fraction of Movants' collateral

and are thus a useless measure of whether Movants' collateral is declining in value.  Movants have

liens on, among other things, all employer contributions received by the Fiscal Agent or ERS, as

well as ERS's right to receive those contributions in the future.  The Oversight Board and the

Commonwealth diverted *all* employer contributions to the Commonwealth effective July 1, 2017,

thereby unquestionably decreasing the value of Movants' collateral.  All or virtually all of the

amounts diverted have been spent.  Because of that diversion, employer contributions are no longer

being made to ERS and transferred to the Fiscal Agent.

26.    Even cases cited by the Retiree Committee do not support its argument that

Movants' collateral somehow is not decreasing in value.  For example, the Retiree Committee's

opposition, citing *In re Builders Group & Development Corp.*, 502 B.R. 95, 122 (Bankr. D.P.R.

2013), acknowledges that there is a "diminution if the cash collateral is transferred 'to a party other

than the secured party.'"  Retiree Committee Br. at 8.  Here, *all* of Movants' cash collateral has

---

[4] The joint stipulation expressly provided that Movants could seek adequate protection after October 31, 2017.  *See* No. 17-bk-03566, Dkt. 170, at 4 (July 14, 2017).

been transferred to the Commonwealth and is being used to pay other creditors—none of whom are the secured parties.  In these circumstances, there is obviously a decrease in the value of Movants' collateral.

27.     Like ERS, the Retiree Committee also notes that Movants have already received $194 million in adequate protection payments.  Retiree Committee Br. at 8-9.  The Retiree Committee argues that Movants are not entitled to any additional payments to preserve the status quo.  It argues that "[s]imply holding the funds pending the Court's determination of the perfection issue would have adequately protected the Bondholders' against loss and that is all the adequate protection that is required here."  Retiree Committee Br. at 9; *see id*. (citing cases holding that secured lenders are adequately protected when trustee held cash collateral in segregated account unavailable to other creditors).  But this is not what is happening here.  A trustee is not holding employer contributions received during the automatic stay in a segregated account unavailable to other creditors.[5]  Instead, employer contributions are being diverted to the Commonwealth and dissipated to pay other creditors.

28.     The Retiree Committee also asserts that the motion raises issues about the appropriate forum for disputes about ERS's property.  Retiree Committee Br. at 5.  The Retiree Committee argues that the Court should not lift the automatic stay because it would lead to "protracted litigation in another forum on the very same issues that are already before this Court," and  "would require the Court to simultaneously lift the stay to allow the Commonwealth's retirees and employees to assert their interests in the same assets."  Retiree Committee Br. at 4.  These arguments are at odds with the applicable statutes and case law.  In the absence of adequate

---

[5] Notably, the First Circuit found that a "quite modest" form of adequate protection would be to deposit all the employer contributions collected during the stay in an account established for the benefit of Movants.  *Peaje*, 845 F.3d at 514 n.5.

protection, the automatic stay must be lifted.  11 U.S.C. § 362(d)(1).  Putting aside that the Retiree
Committee has no basis to assert that stay relief would lead to "protracted litigation in another
forum," that fact is entirely irrelevant to the inquiry under § 362.  Furthermore, granting Movants
relief from the stay would not require the Court to also lift the stay for other parties.  If and when
those parties conclude that they should seek relief from the stay they will have to do so on the
merits of their own cases.

29.     Finally, the Retiree Committee argues that Movants improperly sought adequate
protection from the Commonwealth.  Retiree Committee Br. at 8-9.  Since the Commonwealth
now claims an interest in property of ERS, Movants properly sought adequate protection from the
Commonwealth *and* ERS.

## III.    Movants Are Entitled To A Prompt Hearing On The Motion To Lift The Automatic Stay.

30.     ERS requests that the Court hold a final hearing on the Motion 14 days after entry
of the Court's decision in the Adversary Proceeding and that the Court continue the automatic stay
until that hearing.  Oversight Board Br. ¶ 34.  ERS cites nothing to support this request and § 362
does not permit such a result.  Under § 362(e), while a court may continue the automatic stay after
a preliminary hearing pending a final hearing and determination, the court may do so only "if there
is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion
of such final hearing."  11 U.S.C. § 362(e)(1).  On the record before the Court, it is clear that ERS
and the Commonwealth cannot prevail at a final hearing on the Motion.

31.     *First*, relief from the automatic stay is appropriate where a creditor has a colorable
claim on property of the debtor.  As discussed above, Movants' claim against ERS's property is
far more than merely colorable.  ERS and the Commonwealth have admitted in prior PROMESA
proceedings that Movants hold valid and enforceable liens on ERS's property—liens that continue

13

indefinitely until the ERS Bonds are paid in full. *See supra* ¶ 8-9. And both this Court and the First Circuit have found that to be true. *See supra* ¶ 7. It is entirely irrelevant that ERS now disputes the validity of Movants' liens since the Court has not ruled on those challenges. Nothing in the current record contradicts ERS's admissions and the judicial findings of this Court and the First Circuit.

32. *Second*, Movants have alleged that the Oversight Board and the Commonwealth have permanently diverted *all* of Movants collateral to the Commonwealth and dissipated substantial amounts to make payments to subordinate creditors. ERS has not—and cannot— dispute these facts. In prior PROMESA proceedings, the First Circuit held that even the temporary diversion of Movants' collateral and the resulting uncertainty about ERS's ability to repay the ERS Bonds established a legally sufficient claim that Movants lacked adequate protection. *See supra* ¶ 21-23. Under that binding precedent, Movants have established a *prima facie* showing of entitlement to adequate protection.

33. Based on the foregoing, the Court should deny ERS's request to continue the automatic stay pending a final hearing and determination. The court may do so only if there is a "reasonable likelihood" that ERS and the Commonwealth will prevail at the conclusion of the final hearing, 11 U.S.C. § 362(e), and the record before the Court demonstrates otherwise. Under § 362, Movants are entitled to relief from the automatic stay in the absence of adequate protection.

34. Finally, Movants request that the Court conduct a prompt hearing on the Motion. Under § 362, if the court conducts a preliminary hearing, the final hearing must be concluded within 30 days of the preliminary hearing, unless the 30-day period is extended with the consent of the parties or the court finds that an extension is required by compelling circumstances. *Id.*

14

Movants do not consent to an extension with regards to the hearing on the Motion and ERS identifies no compelling circumstances to justify such an extension.

In San Juan, Puerto Rico, today July 17, 2018.

By:

_/s/ Alfredo Fernández-Martínez_
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*Counsel for ERS Bondholders Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., LLC, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi- Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

_/s/ Bruce Bennett_
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com
jgross@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Christopher J. DiPompeo (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
cdipompeo@jonesday.com
ssooknanan@jonesday.com

*Counsel for ERS Bondholders Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., LLC, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi- Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

*Counsel for Puerto Rico AAA Portfolio
Bond Fund, Inc., Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico
AAA Portfolio Target Maturity Fund, Inc.,
Puerto Rico Fixed Income Fund, Inc.,
Puerto Rico Fixed Income Fund II, Inc.,
Puerto Rico Fixed Income Fund III, Inc.,
Puerto Rico Fixed Income Fund IV, Inc.,
Puerto Rico Fixed Income Fund V, Inc.,
Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico
Investors Bond Fund I, Puerto Rico
Investors Tax-Free Fund, Inc., Puerto
Rico Investors Tax-Free Fund, Inc. II,
Puerto Rico Investors Tax-Free Fund III,
Inc., Puerto Rico Investors Tax-Free Fund
IV, Inc., Puerto Rico Investors Tax-Free
Fund V, Inc., Puerto Rico Investors Tax-
Free Fund VI, Inc., Puerto Rico
Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto
Rico Fund, Inc., Tax-Free Puerto Rico
Fund II, Inc., and Tax-Free Puerto Rico
Target Maturity Fund, Inc.*

/s/ John K. Cunningham

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio
Bond Fund, Inc., Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico
AAA Portfolio Target Maturity Fund, Inc.,
Puerto Rico Fixed Income Fund, Inc.,
Puerto Rico Fixed Income Fund II, Inc.,
Puerto Rico Fixed Income Fund III, Inc.,
Puerto Rico Fixed Income Fund IV, Inc.,
Puerto Rico Fixed Income Fund V, Inc.,
Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico
Investors Bond Fund I, Puerto Rico
Investors Tax-Free Fund, Inc., Puerto
Rico Investors Tax-Free Fund, Inc. II,
Puerto Rico Investors Tax-Free Fund III,
Inc., Puerto Rico Investors Tax-Free Fund
IV, Inc., Puerto Rico Investors Tax-
Free Fund V, Inc., Puerto Rico Investors Tax-
Free Fund VI, Inc., Puerto Rico
Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto
Rico Fund, Inc., Tax-Free Puerto Rico
Fund II, Inc., and Tax-Free Puerto Rico
Target Maturity Fund, Inc.*