**Hearing Date**: July 25, 2018 at 9:30 a.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
:
In re:                                                                 :
:
THE FINANCIAL OVERSIGHT AND                   :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,             :  Title III
:
    as representative of                          :  Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*,     :  (Jointly Administered)
:
    Debtors.[1]                                   :
:
---------------------------------------------------------------------- X

### REPLY OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF MOTION TO CLARIFY OR AMEND FOURTH AMENDED NOTICE, CASE MANAGEMENT AND ADMINISTRATIVE PROCEDURES REGARDING DISCLOSURE REQUIREMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019

To the Honorable United States District Court Judge Laura T. Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") respectfully submits this reply (the "Reply") (i) to address the *Response of the Ad Hoc Group of General Obligation Bondholders to the Motion of Official Committee of Unsecured Creditors to Clarify or Amend Fourth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (the "Response") and (ii) in support of the *Motion*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

*of Official Committee of Unsecured Creditors to Clarify or Amend Fourth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (the "<u>Motion</u>").[2] In support of its Reply, the Committee states as follows:

## **REPLY**

1.  In its Response, the GO Group effectively concedes that it has engaged in continuous and undisclosed trading of bonds issued by Debtors other than the Commonwealth, including COFINA bonds, but that it has it failed to disclose that fact in its filed Rule 2019 statements. Moreover, the GO Group does not oppose the relief sought by the Committee on a prospective basis. Still, the GO Group is attempting to avoid disclosure of trading activities over the last year by arguing that (i) participation in adversary proceedings and the filing of proofs of claim do not trigger Rule 2019 disclosure obligations and (ii) retroactive disclosure of its members' trading positions would be unduly burdensome.

2.  The court should reject these arguments. As further detailed below, the GO Group's argument that an adversary proceeding is separate from a bankruptcy case is without any legal authority; in fact, as the First Circuit recently confirmed in the *Assured* decision, an adversary proceeding is part and parcel of the bankruptcy case to which it is related. Moreover, the GO Group's argument that the filing of a proof of claim does not trigger Rule 2019 obligations is both erroneous and a sideshow—it appears that neither the GO Group nor its members have filed any proofs of claim, and the group's disclosure obligations exist regardless of whether they do so or not. Further, disclosing past holdings of bonds issued by all of the Debtors is hardly unduly burdensome for the members of the GO Group, given that they are

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

2

sophisticated financial institutions with ready access to historical trading data. Each of these institutions must have sophisticated compliance departments that can generate that information easily. It is also hardly unduly burdensome to require the GO Group to make the same determination now (*i.e.*, whether any particular trade would have triggered the filing of a revised verified statement) that it would have had to make in "real time" as and when such trades occurred.

### I. Participation in Adversary Proceedings Is Sufficient to Trigger Rule 2019 Disclosure Obligations

3. The GO Group does not deny that it has "taken a position" in adversary proceedings related to COFINA's Title III case, including the Commonwealth-COFINA litigation and the Bank of New York interpleader action. Nevertheless, the GO Group asserts that it need not comply with the disclosure rules under the Case Management Procedures and Rule 2019 as they relate to COFINA because its participation in these adversary proceedings somehow did not constitute taking a position in COFINA's Title III case. The court should reject this strained and unsupported argument.

4. An adversary proceeding is not an isolated proceeding separate from a bankruptcy case. To the contrary, as the First Circuit Court of Appeals recently confirmed in the *Assured* decision, an adversary proceeding is a "particular dispute or matter arising ***within a pending case***."[3] Thus, as explained by the First Circuit (in the context of the right to be heard under section 1109 of the Bankruptcy Code), "[b]ecause every issue in a case may be raised and adjudicated only in the context of a proceeding of some kind," a reference in the statute "to 'any issue in a case' subsumes issues in a[n] [adversary] proceeding."[4] Indeed, a bankruptcy "case"

---

[3] *Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. For Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 872 F.3d 57, 63 (1st Cir. 2017) (emphasis added) (citation omitted).

[4] *Id.* (quoting Collier ¶ 1109.04[1][a][ii]).

3

is, in colloquial terms, "the whole ball of wax,"[5] and, "embraces all the controversies determinable by the court of bankruptcy and all the matters of administration arising during the case."[6] In other words, the term "case" clearly includes all adversary proceedings related to that case. Accordingly, there is no merit to the GO Group's contention that taking a position in an adversary proceeding related to a Debtor's Title III case somehow does not constitute taking a position in that case.

5. Moreover, as a practical matter, the GO Group has clearly taken a position, through substantive pleadings filed in the Commonwealth-COFINA adversary proceeding, on the central issue in COFINA's Title III case, namely whether billions of dollars in sales and use taxes ("SUT") are owned by the Commonwealth or COFINA.[7] Indeed, if the GO Group is correct in its COFINA-related litigation position, COFINA would essentially own no property.[8] Under these circumstances, the notion that there is no need for openness and fairness because the GO Group's position was "only" asserted in an adversary proceeding is deeply troubling.[9] The

---

[5] *Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 168 (2d Cir. 2002) *modified*, Oct. 17, 2002. (quotation marks and citation omitted).

[6] Fed. R. Bank. P. 101 advisory committee's note.

[7] In the Commonwealth-COFINA Dispute, the Commonwealth Agent has argued, among other things, (a) that Puerto Rico Act 91 did not transfer future SUT revenues to COFINA or the right to receive such revenues, (b) that Act 91's transfer language was merely an unsecured promise to transfer SUT revenues, and (c) that COFINA has no enforceable security interest in SUT revenues. *See Second Amended Complaint* [Docket No. 221 in Adv. Pros. No. 17-057 (LTS), Jan. 16, 2018].

[8] *See Compl. in Intervention of the Ad Hoc Group of General Obligation Bondholders* at 25, Adv. Proc. No. 17-257 (LTS), Nov. 6, 2017 (Docket No. 96](requesting entry of an order declaring "that all revenues derived from the SUT constitute property of the Commonwealth").

[9] The GO Group's current position of non-disclosure is particularly misleading given that its initial Rule 2019 verified statement included disclosure of the GO Group's members' holdings of COFINA and HTA bonds, which disclosure was subsequently discontinued, leaving parties in interest with the erroneous impression that the GO Group's members no longer held such interests. What is now clear is that the GO Group merely changed its legal analysis and adopted the (incorrect) position that this disclosure was no longer necessary. *Compare Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019*, July 13, 2017 [Docket No. 630], *with First Suppl. Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019*, Nov. 3, 2017 [Docket No. 1625], *and Second Suppl. Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019*, June 21, 2018 [Docket No. 3336].

4

resolution of the Commonwealth-COFINA Dispute (whether through litigation or settlement) is critical to the future course of both the Commonwealth's and COFINA's Title III cases and has the potential to affect Puerto Rico for decades to come. Meanwhile, the GO Group has apparently been trading in COFINA bonds without any disclosure while taking positions with respect to the SUT ownership dispute between the Commonwealth and COFINA. Under these circumstances, there is a particularly urgent need for the GO Group to disclose all its economic interests related to COFINA.

6.  The sole support offered by the GO Group for its proposition that no Rule 2019 disclosure is required in adversary proceedings is an article by attorney Michael D. Fielding. However, not only does this article offer no legal authority (beyond a generic reference to the text of the pre-2011 version of Rule 2019) for that proposition, but the GO Group also fails to provide the full quote, which makes clear that the author reached this conclusion because he viewed adversary proceedings as "simply litigation seeking recovery of specified sums of money."[10] This narrow view does not hold up upon closer examination, and certainly should not control with respect to the Commonwealth-COFINA adversary proceeding, which, as noted, concerns the ownership, as between the Commonwealth and COFINA, of billions of dollars of sales and use taxes.[11]

---

[10] Michael D. Fielding, *Remember the Forgotten: Fed. R. Bankr. P. 2019*, S. Bankr. Law Inst. 3 (2009), http://www.sbli-inc.org/archive/2009/documents/FF.pdf.

[11] Mr. Fielding's view is also called into question by subsequent case law holding that compliance with Rule 2019 is required in order for parties that are subject to this rule to commence an adversary proceeding. *See, e.g.*, *In re Ellipso, Inc.,* No. 09-00148, 2011 WL 4047391, at *1 (Bankr. D.D.C. Sept. 12, 2011) (where ad hoc committee failed to make Rule 2019 disclosure, it "lack[ed] authority to pursue this adversary proceeding"); *In re Brand Affinity Techs., Inc.,* No. 15-AP-01395 SC, 2016 WL 8316889, at *2 (Bankr. C.D. Cal. Feb. 24, 2016) (class action adversary proceeding complaint dismissed based on, among other things, failure to file Rule 2019 statement).

5

**II.     GO Group Participated in COFINA's Title III Case, Irrespective of Its Involvement in Related Adversary Proceedings**

7.     The GO Group's Response also ignores that the GO Group, in fact, took a position in COFINA's Title III case when it filed a notice of request to be heard at the May 17, 2017 hearing on the COFINA Title III docket[12] and then addressed the court at that hearing with respect to COFINA issues.[13]  This participation in COFINA's Title III case was, on its own, sufficient to trigger the GO Group's obligation to disclose its members' holdings of COFINA bonds, irrespective of the GO Group's later involvement in adversary proceedings related to COFINA's Title III case.

8.     Further, the GO Group is a signatory to the Commonwealth-COFINA Dispute Stipulation, dated August 10, 2017, which, though related to the Commonwealth-COFINA adversary proceeding, was filed on the docket of the jointly administered Title III Cases for the Commonwealth *and COFINA* before the adversary proceeding was even commenced.  That stipulation clearly and directly relates to COFINA.  Thus, even if an adversary proceeding could exist separate and apart from a bankruptcy case (which it cannot), the GO Group still took positions in COFINA's Title III case, thereby triggering Rule 2019 disclosure obligations with respect to COFINA.

**III.    Filing of Proof of Claim Is Sufficient Participation to Trigger Rule 2019 Disclosure Obligations**

9.     The GO Group's argument that the filing of a proof of claim does not trigger Rule 2019 disclosure is beside the point, given that it appears that neither the GO Group nor any of its members have filed proofs of claim in the Title III cases (and the bar date has now passed).

---

[12]  *Notice of Req. to be Heard at May 17, 2017, Hr'g,* Case No.17-BK-3284 (LTS), May 15, 2017 [Docket No. 93].

[13]  *See* Tr. of Hr'g, May 17, 2017, at 124:18 – 125:17, May 22, 2017, [Docket No. 207] (Counsel to the GO Group addressed the court to note that the Bank of New York interpleader action should only go forward as an "intra-COFINA" dispute and not address the validity of COFINA.).

6

Thus, the GO Group's disclosure obligations under Rule 2019 and the Case Management Procedures are not affected by the Committee's requested clarification that the filing of a proof of claim should trigger such disclosure obligations.[14]

10. Moreover, the GO Group's argument is fundamentally flawed because it ignores the terms of the Case Management Procedures (which control here). In fact, under the Case Management Procedures the phrase "takes a position before the Court" is actually defined to include "***the filing of any Pleading***, including informative motion practice containing factual or legal representations or arguments."[15] The term "Pleadings" is in turn defined as "[a]ll documents filed in these Title III Cases, including, but not limited to, all notices, motions, applications, other requests for relief, all briefs, memoranda, affidavits, declarations, and other documents filed in support of such papers seeking relief."[16] Thus, under the Case Management Procedures, the filing of any document in a Debtor's Title III case represents the taking of a position as to that Debtor and triggers disclosure obligations.[17] There should be no question that a proof of claim qualifies as a "Pleading" under the Case Management Procedures given the important legal significance of such a document, which is considered akin to a complaint in a

---

[14] In any event, Rule 2019 applies to two types of groups—those that ***consist of*** multiple creditors or equity security holders acting in concert and those that ***represent*** such multiple creditors or equity security holders. Thus, the GO Group (which clearly consists of multiple creditors) is subject to Rule 2019 ***whether or not*** it represents multiple creditors by taking particular actions such as filing proofs of claim. *See* Fed. R. Bankr. P. 2019(b)(1) (requiring disclosure from "every group or committee that ***consists of or represents***, and every entity that represents, multiple creditors or equity security holders that are [] acting in concert . . . and [] not composed entirely of affiliates or insiders" (emphasis added)).

[15] *Order Further Amending Case Management Procedures*, Ex. A, Fourth Am. Case Management Procedures, ¶ IV.A n.3 (emphasis added), April 4, 2018 [Docket No. 2839].

[16] *See id.* § I.B [Docket No. 2839].

[17] By extension, this means that the filing of any document in an adversary proceeding represents the taking of a position as to the Debtor whose case is associated with the adversary proceeding, given that, as explained above, an adversary proceeding is merely part of a Title III case. *See e.g.*, *In re Fin. Oversight,* 872 F.3d at 63 (stating that an adversary proceeding is a "particular dispute or matter arising within a pending case").

7

civil action,[18] is subject to doctrines like judicial estoppel that apply to other types of pleadings,[19] and, if not objected to, will result in the allowance of a claim against the debtor.[20]

11.  Furthermore, the authorities cited by the GO Group in support of its contrary position are inapplicable and unpersuasive.  For one, neither Collier on Bankruptcy[21] nor *In re Craft* spoke (and could not have possibly spoken) to the relevant disclosure rules under the Case Management Procedures approved by this court in these Title III cases.  Collier also offers no authority for the proposition that the filing of a claim does not trigger Rule 2019 disclosure obligations.  Indeed, the weight of the case law addressing proofs of claim and Rule 2019 actually supports the Committee's position that the filing of a proof of claim triggers disclosure obligations.[22]

---

[18]  *See e.g. Brosio v. Deutsche Bank Nat'l Tr. Co. ( In re Brosio)*, 505 B.R. 903, 912 (B.A.P. 9th Cir. 2014) ("The filing of a proof of claim is analogous to filing a complaint in the bankruptcy case")*; Jordan v. Greentree Consumer Disc. Co. (In re Jordan)*, 403 B.R. 339, 351 (Bankr. W.D. Pa. 2009) ("It is well-recognized that the filing of a proof of claim is analogous to the filing of a complaint in a civil action."); *In re Hawthorne*, 326 B.R. 1, 4–5 (Bankr. D.D.C. 2005) (filing of proof of claim analogous to complaint); *In re Edwards Theatres Circuit, Inc.*, 281 B.R. 675, 681 (Bankr. C.D. Cal. 2002) (same); *In re Best Payphones, Inc.,* No. 01 15472 (SMB), 2007 WL 203980, at *6 (Bankr. S.D.N.Y. Jan. 24, 2007) (same).

[19]  *See e.g. In re Jordan*, 403 B.R. at 351–52 (statement made in proof of claim was judicial admission);  *Rogan v. Branch Banking & Tr. Co. (In re Asberry)*, No. 12-50602, 2013 WL 781626, at *3 (Bankr. E.D. Ky. Mar. 1, 2013) ("statements of fact made in a proof of claim can be judicial admissions"); *In re Perry*, 394 B.R. 852, 857 (Bankr. S.D. Tex. 2008) ("In bankruptcy cases, the schedules filed by debtors and the proofs of claims filed by creditors are judicial admissions.").  *See also In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 993, 999–1000 (S.D.N.Y. 1992) ("[P]roofs of claim are construed, *as any other pleading*, to allow recovery if the facts set forth provide a basis for recovery.") (emphasis added).  *See also In re Nortel Networks, Inc.*, 469 B.R. 478, 497 (Bankr. D. Del. 2012) (noting that "most courts have gone so far as to apply the federal pleading standards to proofs of claim").

[20]  11 U.S.C. § 502 (proof of claim deemed allowed unless party in interest objects).

[21]  9 Collier on Bankruptcy ¶ 2019.02 (16th ed. 2018).

[22]  *See Office & Prof'l Employees Int'l Union, Local 2 v. F.D.I.C.*, 962 F.2d 63, 68 (D.C. Cir. 1992) (Ginsburg, J.) (noting that when authorized agent files claim on another's behalf, it must disclose information under Rule 2019); *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 455 (Bankr. S.D. Tex. 2009) (chastising party for making Rule 2019 disclosures nearly one hundred days after filing of proof of claim); *In re Consumers Realty & Dev. Co.,*  No. 98-40721, 1999 WL 33864, at *14 (Bankr. D. Minn. Jan. 14, 1999)  (if claimant had filed proof of claim on behalf of another, disclosure would have been required under Rule 2019), *aff'd*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Trebol Motors Distrib. Corp.*, 211 B.R. 785, 787 (Bankr. D.P.R. 1997*)* (had class not been certified, class representative would have had to make Rule 2019 disclosure in connection with filing proof of claim), *aff'd sub nom. Trebol Motors Distrib. Corp. v. Bonilla (In re Trebol Motors Distrib. Corp.)* 220 B.R. 500 (B.A.P. 1st Cir. 1998).

12. Finally, *Craft* is distinguishable as it only dealt with the narrow issue (under the prior pre-2011 version of Rule 2019) of whether class action representatives were obligated to comply with Rule 2019 upon filing proofs of claim.[23] The language relied on by the GO Group is also *dicta*, given that (after the court raised questions about the applicability of Rule 2019 to class representatives filing proofs of claim), the court went on to hold that Rule 2019 applied to such class representatives.[24] The Committee also notes that ***the Fielding article (relied on by the GO Group, as noted above) disagreed with Craft and concluded that Rule 2019 disclosures are triggered by the filing of a proof of claim***.[25]

### IV. Relief Requested in Motion Should Be Applied Retroactively

13. The GO Group also objects to the retroactive application of the relief requested in the Motion, arguing that it would be unduly burdensome for the members of the GO Group to provide historical data on their holdings of bonds issued by the Debtors. This argument should be given no weight. First, nothing in Rule 2019 or the Case Management Procedures would excuse otherwise required disclosures on the basis that they are "unduly burdensome."

14. Second, the GO Group offers no factual support for its claim that retroactive disclosure would be unduly burdensome for its members. According to its Rule 2019 statements, the GO Group has never had more than seven members during the pendency of the Title III cases, and it now has only three members, and the Committee has advised counsel for the GO

---

[23] *See In re Craft,* 321 B.R. 189, 197–98 (Bankr. N.D. Tex. 2005).

[24] *See id.* ("Most courts, however, have required compliance by class representatives with Rule 2019. As this court considers disclosure by class representatives of authority to represent to be beneficial, the court will follow these decisions.").

[25] Fielding, *supra* note 10, at 3-4 ("[T]he author believes that [the] proposition [in *Craft* that filing of a proof of claim does not trigger Rule 2019 disclosure] is wholly incorrect. The plain language of Rule 2019 applies irrespective of the level of activity that one has in a chapter 11 proceeding. While it is undoubtedly true that the information required by Rule 2019 will often be more important in a case where the entities are actively involved, the creditor's "activity level" cannot be the barometer for measuring when compliance is mandated and when it is not.").

9

Group that retroactive compliance would only be required as to the three remaining members. Moreover, the members of the GO Group are sophisticated financial institutions that engage, as part of their business, in the buying and selling of securities such as the Debtors' bonds. It should not be a tall order for them to generate records of their positions over the course of the Title III cases.

15. Further, the Response complains that the GO Group would have to make retroactive determinations as to "whether, at each point in time in these Title III Cases, such purchase would have necessitated the filing of a revised verified statement." However, that is exactly the same determination that the GO Group would have had to make over the course of these Title III cases, if it had complied with the disclosure requirements under Rule 2019 and the Case Management Procedures. It is hardly unduly burdensome to require the GO Group to make the same determinations now that it would have to make in "real time" as and when it traded in securities of the Debtors.

## **CONCLUSION**

16. Based on the foregoing, the GO Group's Response should be overruled and the relief requested in the Motion should be granted.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Motion be granted.

Dated: July 18, 2018 　　　　　　　　　*/s/ G. Alexander Bongartz Esq.*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

11