UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA")<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

**REPLY TO PREPA'S & AAFAF'S OPPOSITION TO
MOTION FOR THE ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS**

TO THE HONORABLE LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE:

COMES NOW Lord Electric Company of Puerto Rico, Inc. ("Lord"), represented by the undersigned counsel, very respectfully tenders its reply to the opposition to Motion for Allowance of Administrative Expense Claims, filed by The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Puerto Rico Electric Power Authority ("PREPA") (the "Opposition") [Dkt. No. 911].

**I. Lord's administrative expense claim should be instantly denied, as unopposed**

1. Lord has requested that the Court allow payment of a post-petition administrative expense claim in the amount of $1,091,860.96 (the "Administrative Claim") [Dkt. No. 881].

2. The administrative expense claimed by Lord arose from restoration work and repair of transmission lines to the island's power grid from September through December 2017, immediately following the destruction caused by Hurricanes Irma and Maria. Lord performed its post-petition work pursuant to several agreements by and between Lord, as Contractor, and PREPA, post petition, following Hurricane Irma and Maria (the "Contracts"). Said agreements stipulated payment in full no longer than sixty (60) days upon presentation of supporting documents and invoices.

3. To date, Lord's Administrative Claim remains unpaid, notwithstanding materials and services furnished by Lord and costs incurred by Lord for the benefit of PREPA and the people of Puerto Rico from of September through December 2017, after PREPA's bankruptcy filing.

4. AAFAF has offered to treat Lord's claim as an administrative expense and has offered to pay Lord's Administrative Claim either with funds provided by the Federal Emergency Management Agency ("FEMA"), when they become obligated, or by PREPA at the time a plan of adjustment is confirmed.

5. By this Reply, Lord requests an instant determination that the amount of $1,091,860.96 owed by PREPA to Lord for the work performed and services rendered post Hurricanes Irma and Maria, and post petition, is an administrative expense claim. AAFAF and PREPA have already admitted as much. See Opposition at Dkt 911, ¶ 2.

6. AAFAF's limited objection to Lord's Motion for Allowance of Administrative Expense Claims is specific as to the timing of payment of such Administrative Claim.

7. AAFAF's qualified objection, however, does not preclude the Court from granting Lord's Motion for Allowance of Administrative Expense Claim [Dkt. No. 881].

2

## II. Payment of Lord's Administrative Expense Claim

8. AAFAF asserts that, to the extent Lord is seeking immediate payment of its Administrative Claim, such request must be denied. AAFAF's argument is grounded on the following allegations:

   a. That subject to limited exceptions, none of purportedly which applies to Lord, Section 4-13 of the Superpriority Post-Petition Revolving Credit Loan Agreement between Puerto Rico Electric Power Authority as the Borrower and the Commonwealth of Puerto Rico as the Lender [Dkt. No. 729-3] (the "Post-Petition Credit Agreement") "precludes PREPA from paying emergency related expenses such as Lord Electric's Claim".

   b. If the Claim is characterized as an administrative expense, PREPA may delay payment of the Claim until a plan of adjustment is confirmed under PROMESA. 11 U.S.C. § 2174; PROMESA § 314(b)(4).

   c. To the extent Lord contends it is entitled to payment immediately from PREPA because it has a direct claim against PREPA under the laws of Puerto Rico, the automatic stay under PROMESA applies to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).

9. Nevertheless, for the reasons discussed below, Lord respectfully requests that the Court deny the Opposition, while allowing immediate payment of Lord's Administrative Claim.

10. In the alternative, Lord requests that the Court allow Lord to perform discovery to PREPA on the matter of payment funds. Particularly, with regards to the purported funds requested to FEMA and provided by FEMA to PREPA, and obligated for recovery and restoration efforts such as the work performed by Lord for the benefit of PREPA and the people of Puerto Rico.

**A. Section 4-13 of the Superpriority Post-Petition Revolving Credit Loan Agreement between Puerto Rico Electric Power Authority as the Borrower and the Commonwealth of Puerto Rico as the Lender [Dkt. No. 729-3] (the "Post-Petition Credit Agreement")**

11. AAFAF's general allegation that the Post-Petition Credit Agreement precludes PREPA from paying expenses such as Lord Administrative Claim is unsupported. AAFAF includes no specific reference other than to point to Section 4-13 of said Post-Petition Credit Agreement.

12. Section 4-13 of the Post-Petition Credit Agreement provides, in pertinent part that:

Use of Proceeds. The Borrower shall not, nor shall it permit any of its Subsidiaries to use the proceeds of the Revolving Credit Loans for any purposes other than to pay or fund:

(i) the Borrower's operations, including, without limitation, employee payroll and benefits, facilities maintenance costs that are not Capital Expenditures or infrastructure improvements, and normal operational materials, supplies, fuel and power supplies, vendor and service payments (collectively "Eligible Uses") and

(ii) in the event Commonwealth Financing becomes available, proceeds of such Commonwealth Financing may be used to reimburse amounts expended for Eligible Uses from September 6, 2017 until the Effective Date, if such Commonwealth financing permits such reimbursement, and with respect to each of the foregoing clauses (i) and (ii), in each case in accordance with the Budget and the Financing Order; provided, however, that none of the proceeds of the Revolving Credit Loans and none of the Liabilities or the Carve-Out may be used for any purpose prohibited by the Title III Court or the Financing Order; provided further, that disbursements that have been obligated to be paid from funds provided by FEMA or any other federal entity shall not be subject to the limitation of the Eligible Uses Variance, Ineligible Uses Variance or otherwise limited by the Budget. Notwithstanding anything to the contrary contained herein and unless otherwise specifically consented to previously in writing by the Lender and the Oversight Board, the proceeds of the Revolving Credit Loans shall not be used for:

(1) debt service (including, for the avoidance of doubt, payment of any Indebtedness existing prior to the Effective Date),
(2) capital improvements,
(3) repair or restoration of damaged public facilities,
(4) paying the non-federal share of any federal program,
(5) tax refunds,
(6) lobbying,
(7) Title III costs (including but not limited to judgments arising from the Title III Case and related cases, and legal or advisory fees),
(8) deposits, transfers, or payments to accrual accounts, reserve funds, or contingency accounts that do not represent an actual, immediate cash disbursement to continue government operations for essential services,

(9) administrative costs of federal disaster assistance grants and loans,
(10) disaster related expenditures eligible for reimbursement from the United States Department of the Treasury,
(11) any expense that is not a "Current Expense" as defined under the Pre-Petition Trust Agreement or,
(12) any expense that is not authorized by the Joint Resolution (the foregoing clauses (1) – (11) collectively, "Ineligible Uses").

Post-Petition Credit Agreement, Section 4-13

13. Pursuant to the terms of Section 4-13 of the Post-Petition Credit Agreement, PREPA is entitled to use the proceeds of the loans to pay or fund its operating expenses, including, facilities maintenance costs, as well as operational materials, supplies, fuel and power supplies, *vendor and service payments*, such as the maintenance costs, materials and services rendered by Lord for which payment is claimed. Post-Petition Credit Agreement, Section 4-13(i).

14. Section 4-13 further provides that disbursements that have been obligated to be paid from funds provided by FEMA, like AAFAF claims to be the case here, shall not be subject to the limitation of the Eligible Uses Variance, Ineligible Uses Variance or otherwise limited by the Budget (as defied in the Post-Petition Credit Agreement). Post-Petition Credit Agreement, Section 4-13(ii).

15. Consequently, Lord's Administrative Claim is not precluded, but rather contemplated in the Post-Petition Credit Agreement as a vendor, for the maintenance, materials and services rendered by Lord, payment for which PREPA was also obligated to pay from funds provided by FEMA.

16. Moreover, payment to Lord is not proscribed by Section 4-13, as Lord's Administrative Claim is not related to (1) debt service, (2) capital improvements, (3) repair or restoration of damaged public facilities[1], (4) paying the non-federal share of any federal program, (5) tax refunds, (6) lobbying,

---

[1] The word "property" is applicable in general to anything of which riches or fortune may consist. 31 L.P.R.A. § 1021. "Property" is either common or public. 31 L.P.R.A. § 1022

"Common things are those the ownership of which belongs to no one in particular and which all men may freely use, in conformity with their innate nature; such as air, rain water, the sea and its shores." 31 L.P.R.A. § 1023.

(7) Title III costs, (8) deposits, transfers, or payments to accrual accounts, reserve funds, or contingency accounts that do not represent an actual, immediate cash disbursement to continue government operations for essential services, (9) administrative costs of federal disaster assistance grants and loans, (10) disaster related expenditures eligible for reimbursement from the United States Department of the Treasury, (11) any expense that is not a "Current Expense" as defined under the Pre-Petition Trust Agreement or (12) any expense that is not authorized by the Joint Resolution.

17. Contrariwise, PREPA, by way of the Post-Petition Credit Agreement and others, has obtained sufficient working capital and liquidity to comply with its main obligations to creditors and its customers. The liquidity provided to PREPA under the credit facility enabled the Debtor to continue to operate and preserve the value of the Debtor's assets, which includes the maintenance and safeguarding of its infrastructure, as well as the restoration and reconstruction of the islands power grid, which is essential to maintaining the people sound and the islands economy running. See Order (A) Authorizing Debtor Puerto Rico Electric Power Authority to Obtain Post petition Financing, (B) Providing Superpriority Administrative Expense Claims, and (C) granting Related Relief [Dkt. No. 744, p. 4].

18. The Contracts provided the payment for the works performed in a term no longer than sixty (60) days once said works were completed. Lord performed its duties and obligations under all of the Contracts. Consequently, Lord respectfully requests that the Court deny the Opposition, while allowing immediate payment of Lord's Administrative Claim.

**B. PREPA is estopped from delaying Lord's administrative expense claim until a plan of adjustment has been confirmed**

19. PREPA asserts that it may delay payment of the Claim until a plan of adjustment is confirmed under PROMESA. 11 U.S.C. § 2174; PROMESA § 314(b)(4).

---

Things of public domain are those intended for public use, as roads, canals, rivers, streams, and others of a like nature. 31 L.P.R.A. § 1024.

6

20. Section 507(a)(2) of the Bankruptcy Code provides an order of priority and lists administrative expenses allowed under Section 503(b) of the Bankruptcy Code as second in line. The administrative priority status aids the debtor to promote continued business transactions.

21. Upon information and belief, PREPA has been making payments to Lord's peers and/or competitors, for similar services to the services rendered by Lord to PREPA, in contravention of the priority status recognized by PREPA and AAFAF, as administrative claimant. PREPA has recognized and issued payments to other vendors and or service suppliers that also performed restoration work and repair of transmission lines to the island's power grid from following the destruction caused by Hurricanes Irma and Maria. See PREPA's Account Payment History for Hurricane Maria Works as **Exhibit A**. Thus, PREPA may not now, assume a contrary position with regards to Lord's priority administrative expense claim.

22. PREPA's inconsistent position, if allowed, would derive an unfair advantage to Lord's counterparts, and impose an unfair detriment on Lord if not estopped.

23. Therefore, Lord respectfully requests that the Court deny the Opposition, while allowing immediate payment of Lord's Administrative Claim.

24. In the alternative, Lord requests that the Court allow Lord to perform discovery on PREPA on the matter of disbursements. Particularly, with regards to the payment of funds to vendors, suppliers and service providers, and the source of said funds.

### C. PREPA submits its opposition with unclean hands

25. PREPA's Opposition and stance on avoiding and/or delaying payment to Lord is an act of bad faith. On one hand, PREPA seeks to avoid and/or delay payment to Lord for the restoration work and repair of transmission lines to the island's power grid following the destruction caused by Hurricanes Irma and Maria, while on the other hand taking advantage by including Lord in its January

7

2018 projections to the Fiscal Oversight and Management Board to form part of PREPA's Fiscal Plan. PREPA has recognized Lord, among other suppliers, as key instruments to the power restoration task force to coordinate the restoration efforts in its recent projections. See PREPA's Amended & Restated Fiscal Plan, **Exhibit B**, p. 19.

26. PREPA's Opposition should be denied as it presents an inequitable proposal to the relief sought by Lord, relief to which Lord is entitled. Currently, there is such inconsistency and political influence over PREPA and PREPA's management of Federal Funds that as early as this week Congress is seeking detailed information on the use and distribution of said funds. See dated July 19, 2018 from Congressman Rob Bishop to Ricardo Roselló Nevares Governor, **Exhibit C**. For PREPA's politicization, lack of independence and the "utility's continued dysfunction" there has been a historical scheme of pick and choose which vendors and suppliers are allowed to collect above others. Id., See also PREPA's Account Payment History for Hurricane Maria Works as **Exhibit A**.

**D. The automatic stay is inapplicable to the controversy now before the Court**

27. AAFAF contends that the automatic stay under PROMESA may be applicable to the facts at hand insofar as Lord claims to be entitled to immediate payment of its Administrative Claim.

28. Section 362(a)(3) of the Bankruptcy Code provides an automatic stay provision over "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).

29. Lord's Motion for Allowance of Administrative Expense Claims seeks the Court's approval of the Administrative Claim and its payment. Lord has not incurred in any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. The mere filing of a proof of claim and a request for allowance and payment of administrative expense claims before a bankruptcy court is not a violation of the automatic stay provisions of the

8

Bankruptcy Court or PROMESA. AAFAF, nor PREPA, have filed any legal support or basis to support otherwise. As such, the Opposition should be instantly denied, while allowing immediate payment of Lord's Administrative Claim. As of the filing of this motion, it will be close to a full calendar year that Lord rendered services to PREPA and it has yet to be compensated for said jobs.

30. For the reasons set forth above, Lord respectfully requests that the Court deny AAFAF's and/or PREPA's Opposition, while granting Lord's Motion for Allowance of Administrative Expense Claim [Dkt. No. 881], and ordering payment of Lord's Administrative Claim.

31. In the alternative, Lord prays the Court to allow an examination of PREPA's executive director, and any additional Debtor-designee with the best knowledge on the matters upon which the examination will be conducted, for the purpose of ascertaining the Debtor's post petition financial condition, the Debtor's acts and conduct during the bankruptcy case including, without limitation, the Debtor's disposition of assets, payments to creditors, insiders and other parties, the location of the Debtor's assets.

32. The undersigned hereby certify that, they have attempted to confer with the Debtors' counsel, Atty. Kevin Finger, to find a mutually acceptable resolution to this controversy, as well as attempted an informal information and document request, to no avail.

## **NOTICE**

Notice hereof has been served by CM/ECF and on the Master Service List posted on the website of the Debtors' claims and noticing agent, by e-mail or by first class mail.

A prior request for the relief sought herein was been made to this Court by way of Lord's Motion for Allowance of Administrative Expense Claim [Dkt. No. 881].

WHEREFORE, Lord respectfully requests that this Court deny AAFAF's and/or PREPA's Opposition, while granting Lord's Motion for Allowance of Administrative Expense Claim, and ordering payment of Lord's Administrative Claim, with any other appropriate relief.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 20st day of July 2018.

**RICKENBACH-OJEDA ATTORNEYS AT LAW PSC**
/s/ **Nanette Rickenbach**
Nanette Rickenbach - USDC-PR No. 230208
Myrna Ruiz-Olmo – USDC-PR No. 223209
400 Juan Calaf PMB 232
San Juan, PR 00918
Telephone: (787) 723-8083
Facsimile: (787) 723-8085
nrickenbach@rickenbachpr.com
mro@prbankruptcy.com
