Hearing Date: July 25, 2018, 9:30 a.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**REPLY IN SUPPORT OF MOTION OF THE INDEPENDENT INVESTIGATOR
FOR AN ORDER: (I) ESTABLISHING PROCEDURES FOR RESOLVING
ANY CONFIDENTIALITY DISPUTE IN CONNECTION WITH PUBLICATION
OF THE INDEPENDENT INVESTIGATOR'S FINAL REPORT; (II) APPROVING
THE DISPOSITION OF DOCUMENTS AND INFORMATION; (III) RELIEVING
THE INDEPENDENT INVESTIGATOR FROM CERTAIN DISCOVERY
OBLIGATIONS; (IV) EXCULPATING THE INDEPENDENT INVESTIGATOR IN
CONNECTION WITH THE INVESTIGATION AND PUBLICATION
OF THE FINAL REPORT; AND (V) GRANTING RELATED RELIEF**

Kobre & Kim LLP, the Independent Investigator, respectfully submits this reply in support of the *Motion of the Independent Investigator for an Order: (I) Establishing Procedures for Resolving any Confidentiality Dispute in Connection with Publication of the Independent Investigator's Final Report; (II) Approving the Disposition of Documents and Information; (III) Relieving the Independent Investigator from Certain Discovery Obligations; (IV) Exculpating the Independent Investigator in Connection with the Investigation and Publication of the Final Report; and (V) Granting Related Relief* [ECF No.

---

[1] The debtors in the above referenced cases (the "Title III Cases"), along with each debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284(LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (collectively, the "Debtors").

3427] (the "Motion")[2] and in response to (a) the limited objection [ECF No. 3497] (the "Limited Objection") filed by the Retiree Committee and (b) the Joinder to the Limited Objection [ECF No. 3498] (the "Joinder") filed by the Creditors' Committee, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. None of the approximately 150 witnesses and parties in interest that cooperated with the Investigation objected to the Motion. Only the Retiree Committee filed a limited objection, which was joined by the Creditors' Committee. The Committees do not oppose much of the relief sought in the Motion—such as the Independent Investigator's requests for relief from discovery obligations and exemption from liability under section 105 of PROMESA—and such relief therefore should be granted.

2. In the Limited Objection and Joinder, the Committees request some revisions to the Proposed Order and seek other affirmative relief related to the Creditors' Committee's Informative Motion [ECF No. 3424]. Through revisions to the Proposed Order, the Independent Investigator has addressed some of the Committees' requests concerning the Motion.[3] The Independent Investigator opposes the Committees' other demands, however, because such demands are not germane to the Motion and interfere with the Independent Investigator's ability to: (a) fulfill its mandate under PROMESA; (b) ensure the integrity, disinterestedness, and independence of the Investigation; and (c) complete the Investigation by publishing the Final Report without unnecessary litigation and accompanying delay and costs.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
[3] The revised Proposed Order is annexed hereto as Exhibit A (the "Revised Proposed Order"). The order additionally clarifies certain aspects of the exit procedures and incorporates other requests made informally by certain Disclosing Parties. A comparison showing changes between the Proposed Order and Revised Proposed Order is annexed hereto as Exhibit B.

2

3. The Independent Investigator, for example, cannot consent to the Committees' demands for an exemption from the Access Procedures, which is without legal basis and contrary to the expectations of the Disclosing Parties under the Non-Disclosure Agreements. The Independent Investigator likewise opposes the immediate production of materials and information from third parties, which is, frankly, outside the scope of the Motion and should be sought from third parties in a different procedural context.

4. In addition, the Independent Investigator opposes the Committees' demands for materials and information that would reveal the Independent Investigator's decision-making process concerning the Investigation. Such demands (*e.g.*, demands for detailed information concerning the scope, extent, and timing of the Independent Investigator's requests to—and responses from—the Disclosing Parties, as well as detailed information related to the Independent Investigator's negotiations with the Disclosing Parties) are unprecedented, without any factual or legal basis, unjustified under the circumstances, and unnecessarily intrusive into the Independent Investigator's investigative process.

5. The net result of the Independent Investigator's decision-making process will be reflected in the Final Report, as well as in the related materials that will be transferred to the Document Depository. The Committees are entitled to nothing more at this time. Indeed, the Committees must wait until after publication of the Final Report to determine what access to information or further discovery, if any, is necessary, consistent with the guidance provided by United States Magistrate Judge Judith G. Dein:

> [T]he way I generally envision this is that the Committees will be aware of the scope of the information that has been produced, that they would await the report . . . and that, at that point, if the Committees required additional document requests, they would need to justify it and, as I talked about last time, some sort of budget on it.[4]

---

[4] Hr'g Tr. 40:25–41:8, June 18, 2018.

3

6. For all of these reasons, and those set forth below, the Motion should be granted.

## REPLY

**A. The Committees Should Have the Same Rights of Access to the Document Depository as Other Parties in Interest**

7. No party in interest has objected to the Independent Investigator's proposed transfer of the Investigatory Record to the Document Depository. Similarly, no party or witness has objected to the proposed Access Procedures, other than the Committees. The Committees have not raised any issue with any particular provision of the Access Procedures. Rather, and without citing any authority, the Committees argue that they should be exempt from the Access Procedures altogether, and granted automatic access to the entire Document Depository, unless an objection is filed within 10 business days of entry of an order approving the Motion.[5]

8. The Access Procedures were carefully constructed to ensure that they conformed to the expectations of the Disclosing Parties concerning the Investigation. For example, many Disclosing Parties entered into Non-Disclosure Agreements that provide only the Independent Investigator and the Special Investigation Committee with access to voluntary productions of confidential information made by the Disclosing Parties. Such arrangements, among other things, fostered voluntary cooperation with the Independent Investigator and helped to avoid litigation over subpoenas, as well as associated delays and potential expenses.

9. After the Final Report is published, the Special Investigation Committee will continue to have access to the information transferred to the Document Depository, without

---

[5] The Retiree Committee's position on this point is inconsistent in the Limited Objection. In one section of the Limited Objection, the Retiree Committee states that "an ***objection*** must be filed within 10 business days." Limited Obj. ¶ 2(b) (emphasis added). In another section, the Retiree Committee states that a party "should be required to file a ***motion for a protective order*** within 10 business days." *Id.* ¶ 8 (emphasis added).

4

the need to go through the Access Procedures.[6] In contrast, the Committees never had access to confidential documents or information provided to the Independent Investigator, other than with respect to GDB, Santander, and Popular. Granting the Committees automatic access to the Document Depository would be contrary to the expectations of the Disclosing Parties under the Non-Disclosure Agreements and inconsistent with the approach taken by the Independent Investigator during the course of the Investigation.

10. Further, the Creditors' Committee exaggerates the time it may take it to obtain access to materials in the Document Depository when it states that the Access Procedures "delay the Committees' access to documents by almost three months."[7] This statement ignores the possibility that some or all of the Disclosing Parties may elect not to oppose a Document Request or Subpoena served by the Committees in accordance with the Access Procedures, at which point the Neutral Vendor would be required to "promptly make the requested documents available to the [Committees]."[8] Further, even if a Producing Party were to object to a Document Request or Subpoena, nothing would prevent the Committees from seeking necessary relief before the Court, on an expedited basis, in accordance with the Case Management Order.[9]

11. As noted in the Motion, the Independent Investigator's interest in proposing to establish the Document Depository and the Access Procedures was to preserve the materials broadly, for all parties in interest. The Independent Investigator has no interest in any party's access to, or use of, any particular document and continues to believe that the proposed

---

[6] Consistent with the delegation of the Investigation to the Independent Investigator, members of the Special Investigation Committee have relied on the Independent Investigator to update them regarding the status of productions from Disclosing Parties but have not been apprised of any specific documents.
[7] Joinder ¶ 14.
[8] Motion ¶ 47(d).
[9] The Independent Investigator is amenable to adding language to the Proposed Order that expressly reserves the rights of any Requesting Parties, such as the Committees, to seek relief on an expedited basis before the Court, subject to the Court's availability.

5

Access Procedures properly balance the competing interests of both the Requesting Parties and the Disclosing Parties under the circumstances.

**B.   The Independent Investigator Has Amended the Proposed Order in Response to Certain Requests by the Committees**

12.   In its Limited Objection, the Retiree Committee requests that the following documents and information be included in the Document Depository: (i) "any privilege logs provided to the Investigator;" and (ii) "any date filter used for any document custodian to the extent that information is not contained in the document request itself or if the Investigator deviated from what was in the document request."[10]

13.   The Independent Investigator has agreed to accommodate each of these requests, consistent with the framework previously announced by the Court.[11]  The disclosure of such privilege logs and date ranges does not reveal core aspects of the investigatory process adopted by the Independent Investigator, unlike the disclosures sought by the Committees set forth below.

**C.   The Committees' Request for Various Investigative Materials Is Inconsistent with the Framework Described by the Court, Has No Basis in Law, and Should Be Denied**

14.   The Creditors' Committee has demanded, with respect to GDB, detailed information concerning, among other things: (i) "when . . . requests were made by the Investigator and when documents were ultimately produced by GBD;"[12] (ii) "whether GDB, in fact, produced all of those documents or refused on any grounds, in which case any negotiation history should be disclosed;"[13] and (iii) additional information "regarding the

---

[10] Limited Objection ¶¶ 2(e)–(f).
[11] *See* Joinder at Ex. A (June 6, 2018 omnibus hearing transcript), 128:10–15 ("So I think the privilege logs need to go over to the committees, to the extent they exist, and there needs to be a privilege log from GDB.  You need to have these conversations about custodians and search terms and make sure that that's done.").
[12] *Id.* ¶ 16.
[13] *Id.*

6

extent of the Independent Investigator's 'read-only' review" of GDB's Relativity Database.[14] One of the stated purposes of the Creditors' Committee's demand for this information is to enable the Creditors' Committee to "understand how documents were selected for 'production' to the Investigator."[15] The Retiree Committee has also demanded access to similar information, such as the identity of all parties that refused to turn over particular documents, a general description of such documents, and any voluntary withdrawals of document requests.[16]

15. The foregoing requests seek information that is protected from disclosure. Matters such as the timing of the Independent Investigator's document requests, the negotiations of the Independent Investigator with individual witnesses, the timing and extent of the Independent Investigator's review of documents, and the process by which the Independent Investigator selected particular documents, whether for "production" or other purposes, all go to the heart of the Independent Investigator's investigatory process. The disclosure of such information would reveal critical investigatory choices made by the Independent Investigator in the exercise of its discretion. Moreover, some or all of this information is privileged and cannot be turned over to the Committees or the Document Depository.[17]

---

[14] *Id.* ¶ 14, n.7.
[15] *Id.* ¶ 14.
[16] *See* Limited Obj. ¶ 9. *See also id.* ¶ 16 (requesting to know if the Independent Investigator "sought non-email GDB documents from any other source, such as the Oversight Board").
[17] *See Westernbank Puerto Rico v. Kachkar*, No. CIV. 07-1606 ADC/BJM, 2009 WL 530131, at *4 (D.P.R. Feb. 9, 2009) ("The analysis conducted in preparation for drafting the KPMG report was created for the same reasons as the KPMG report itself: in anticipation of pending and future litigation, as well as in connection with WHI's financial reporting obligations. For the same reasons that the KPMG report itself is protected by the work product rule, the analyses on which it is based are also entitled to protection."); *see also* Motion at Exhibit G, ¶ 3 ("[T]he Enron Corp. Examiner . . . shall not be required to produce to the Debtors (or any successor to the Debtors or any other party) any material comprising the work product of the Enron Corp. Examiner . . . or any material protected by the attorney-client privilege or other applicable privileges.").

16. Even if such information were not privileged, it would be inappropriate for the Independent Investigator to reveal such information.[18] The Independent Investigator currently intends to publish the Final Report on or before August 15, 2018. The Final Report will include the Independent Investigator's findings and conclusions concerning matters it has investigated. The Final Report will represent the manifestation of the different processes implemented by the Independent Investigator, including the Independent Investigator's strategy and decisions about which documents, witnesses, or areas of inquiry were important to the Investigation. The Committees' requests are not only inappropriate, but premature until the Committees review the Final Report and determine which facts or conclusions are relevant to their constituents and may require follow-up in the context of their particular statutory functions and authority.

17. The Final Report, together with the supporting materials and documentation that will be placed into the Document Depository—including custodian lists, search terms, date ranges, privilege logs, and hundreds of thousands of documents—should be evaluated by the Committees before they embark on any future discovery (or requests for cooperation by the Independent Investigator), after the Committees describe to the Court what additional discovery may be necessary and at what cost.[19] Under the circumstances, and without the requisite statutory authority and approval by the Court, the Committees are entitled to nothing

---

[18] *See Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 435 (S.D.N.Y. 1993) ("The public interest is in the Report and the Examiner's conclusions, not in the Record upon [which] the conclusions are based."); *In re Baldwin United Corp.,* 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985) ("The prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality and reliance upon this Court's orders raises grave concerns touching both the integrity of the Bankruptcy Court's process, as well as the integrity of the statutory position of the Examiner."); *see also* PROMESA Investigation Procedures § 3.3(a) ("Given the sensitive nature of Investigations, and the fact that such Investigations will include privileged information and information provided to Board Counsel under promises of confidentiality, . . . the conduct of, and materials obtained and/or generated regarding, any Investigation shall be non-public."), *available at* https://juntasupervision.pr.gov/index.php/en/documents/.

[19] *See supra* note 4.

more.[20] Indeed, the Committees have failed to provide any legal basis or any authority to support the position that they should be granted access to such information that may reveal core aspects of the independent investigatory process implemented by the Independent Investigator.

**D. The Committees' Proposed Modifications to the Publication Procedures Should Be Rejected**

18. Under the Publication Procedures, if a Non-Disclosure Agreement requires the Independent Investigator to provide advance notice of the publication of the Disclosing Party's Confidential Information, the Disclosing Party will be afforded an opportunity to: (i) confer and resolve any dispute over Confidential Information with the Independent Investigator consensually; and (ii) if the dispute is unresolved, seek a protective order or similar relief before disclosure of such information.[21] In the Publication Procedures, the Independent Investigator also reserves its right to file or publish all, or any portion of, the Final Report under seal or with redactions during, or in advance of, the meet and confer process.[22]

19. In response to the Publication Procedures, the Committees demand that the Independent Investigator must: (i) notify them if any information is removed or altered by the Independent Investigator in the Final Report as a result of the meet and confer process; (ii) describe to the Committees what was omitted or how the Final Report was changed; and (iii) provide access to any such information.[23] The Creditors' Committee, but not the Retiree Committee, also demands that it be granted access to the unredacted version of the Final Report and any sealed materials.[24]

---

[20] *See Air Line Pilots*, 156 B.R. at 435; *Baldwin*, 46 B.R. at 316.
[21] *See* Motion ¶¶ 34–35.
[22] *See id.* ¶ 35(h).
[23] *See* Limited Obj. ¶ 4.
[24] *See* Joinder ¶ 17.

9

20. These Committees' demands should be denied. If the Independent Investigator were to make changes to the Final Report in advance of publication, which the Independent Investigator does not expect to do, the Committees would not be entitled to see such changes. Any versions of the Final Report prepared in advance of publication are, by definition, drafts. Such drafts, and any changes that the Independent Investigator makes to such drafts, are protected from disclosure by privilege, including the work product privilege.[25] The Committees have cited no legal authority that would permit the Court to grant the Committees' access to the Independent Investigator's privileged materials.[26]

21. Even assuming such information were not privileged, it would be inappropriate for the Independent Investigator to reveal such information.[27] The Independent Investigator's determinations as to what should or should not be included in the Final Report constitute critical investigatory choices. The primary interests of the Committees are in the facts and conclusions revealed in the Final Report, not in the investigatory choices made by the Independent Investigator that ultimately led to such facts and conclusions.[28] Again, the Committees cite no authority or legal basis in support of their positions.

22. The Creditors' Committee's demand that it be granted access to the Final Report if such report is filed under seal or in partially redacted form should also be rejected. Many Disclosing Parties agreed to voluntarily cooperate with the Investigation with the

---

[25] *See, e.g.*, *CH Properties, Inc. v. First Am. Title Ins. Co.*, 48 F. Supp. 3d 143, 150 (D.P.R. 2014) (finding that draft letter was protected from disclosure under work product doctrine); *see also Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 247 (D. Mass. 2013) ("[F]orensic review materials are protected by the work-product doctrine."); *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 605 (D. Mass. 1992) ("Opinion work product revealing an attorney's mental impressions receives heightened protection.").

[26] Disputes regarding the extent of any claim of privilege, whether by the Independent Investigator or a Disclosing Party, are not presently before the Court. It should be noted, however, that in the context of exit procedure motions filed by bankruptcy examiners, courts have preemptively granted requests for the protection of attorney work product. *See, e.g.*, Motion at Exhibit G, ¶ 3 ("[T]he Enron Corp. Examiner . . . shall not be required to produce to the Debtors (or any successor to the Debtors or any other party) any material comprising the work product of the Enron Corp. Examiner . . . or any material protected by the attorney-client privilege or other applicable privileges.").

[27] *See supra* ¶¶ 16–17.

[28] *See Air Line Pilots*, 156 B.R. at 435.

10

understanding that they would be notified before the disclosure of their confidential information. The purpose of such notification was to ensure that parties could seek appropriate relief if they had a valid basis to oppose the Independent Investigator's disclosure of their confidential information. The Publication Procedures provide a uniform process for resolving any such disputes, while preserving the Independent Investigator's ability to publish all or any part of the Final Report in redacted form as such disputes are resolved. The Independent Investigator intends to commence the process for notifying Disclosing Parties of the publication of their confidential information promptly, if the Motion is approved. This means that, under the Publication Procedures, disputes concerning publication of confidential information, if any, will be heard and, depending on the Court's availability, resolved on or before the September 12, 2018 omnibus hearing.

23. Granting the Committees immediate access to any Disclosing Parties' confidential information during the pendency of any dispute over confidentiality would unduly prejudice the Disclosing Parties and arguably vitiate the Non-Disclosure Agreements, which were carefully negotiated with the Disclosing Parties in consideration for the voluntary exchange of information. From a policy perspective, granting the relief requested by the Committees could also undermine and stymie future independent investigations (whether under PROMESA or under the Bankruptcy Code). Witnesses may be less likely to volunteer their cooperation if third parties could be granted immediate access to their confidential materials, before any disputes concerning confidentiality are heard and resolved by a court.[29]

24. In support of its demand for immediate access to the Disclosing Parties' confidential information, the Creditors' Committee states that the Publication Procedures fail

---

[29] *See Baldwin*, 46 B.R. at 316 ("[I]f [Examiners'] nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed."); *see also In re Apex Oil Co.,* 101 B.R. 92, 97 (Bankr. E.D. Mo. 1989) ("The right to object to the sealing of records, however, does not include a right to review those records in their unedited state.").

11

to recognize "the baseline understanding that the Committees would have the benefit of all of the work performed by the Investigator."[30] The Creditors' Committee's suggestion that it had a "baseline understanding" that it would have an immediate access to confidential information of third-parties, before any confidentiality disputes are resolved, is disingenuous and contrary to the Non-Disclosure Agreement negotiated and signed by the Creditors' Committee. The Creditors' Committee will have the benefit of the Independent Investigator's work once they have a chance to review the Final Report. Under the proposed timeline, this should include access to a fully unredacted report as early as August 15, 2018, subject to resolution of objections regarding treatment of confidential information, and no later than the September 12, 2018 omnibus hearing.

### E. The Cooperation Period Should Not Be Extended

25. In the Motion, the Independent Investigator proposed a period of cooperation, ending on June 1, 2019, during which the Independent Investigator would make itself available to certain interested parties, including the Committees (the "Cooperation Period").[31] In the Limited Objection and Joinder, the Committees: (i) seek to extend the Cooperation Period until January 1, 2020, or confirmation of a plan of adjustment for the Title III Debtors; and (ii) request that the Independent Investigator be prohibited from destroying any of its materials not included in the Investigative Record, including witness interview notes and attorney work product, until the end of such period.[32]

26. With respect to the period for cooperation, there is no need for the Court to extend the cooperation period beyond June 1, 2019 at this time. That end date was chosen purposefully so that the Independent Investigator would be available to discuss the Final Report with the Committees during the Cooperation Period before the end of two-years from

---

[30] Joinder ¶ 17.
[31] *See* Motion ¶¶ 50–51. The Cooperation Period may end earlier than June 1, 2019 if a plan of adjustment for the Title III Debtors is confirmed or if the Independent Investigator's engagement is terminated. *Id.* ¶ 51.
[32] *See* Limited Obj. ¶¶ 2(g) and (h), 22–23; Joinder ¶¶ 18–19.

the filing of these Title III Cases. If the Committees determine that cooperation is needed beyond June 1, 2019, they may move for an extension of the period in advance of such date.

27. With respect to materials not in the Investigative Record, to accommodate the Committees' requests, the Independent Investigator will agree not to exercise any right to discard or delete witness interview notes or summaries prepared by or under the direction of counsel on the Independent Investigator's team at the request of the Special Investigation Committee during the Cooperation Period.[33] The Independent Investigator expressly reserves the right to challenge any request for production of such materials as privileged and protected from disclosure to any party.

**F. The Committees' Requests for Specific GDB Documents and Information**

28. Through their objections, and a separate informative motion,[34] the Committees appear to demand the immediate production of certain GDB documents that have allegedly not been provided to them by GDB, including "copies of insurance policies" and "GDB Board materials."[35] Such requests, however, should be raised and resolved in the context of a motion directed to GDB under Bankruptcy Rule 2004—outside the context of the Motion.

29. It is inappropriate to request affirmative relief in the context of an objection to a pending motion.[36] Similarly, an informative motion, by definition, cannot seek affirmative

---

[33] Permitting the Independent Investigator to discard or delete other confidential documents and materials, in its discretion, is consistent with other relief granted by the Court in the Title III Cases. *See* Stipulated Disclosure Agreement and Protective Order ¶ 13 [ECF No. 2832] ("Upon the entry of a final and non-appealable order by this Court approving a final fee application filed by any Professional, Fee Examiner Counsel will promptly destroy, delete (in the case of electronic materials), or deliver to the particular Professionals the Confidential Information that they produced, without retaining any copy.").
[34] *See* Creditors' Committee's Informative Motion Regarding Renewed Rule 2004 Motion and Discovery Items to Be Addressed at July 25, 2018 Omnibus Hearing [ECF No. 3424].
[35] *See* Limited Obj. ¶¶ 14–18.
[36] *See, e.g.*, Bankruptcy Rule 9013 ("A request for an order, except when an application is authorized by the rules, shall be by written motion, unless made during a hearing."); *see also* Order Further Amending Case Management Procedures, dated April 4, 2018, entered by Judge Swain in the Debtors' Title III Cases [ECF No. 2839], § I.I ("All Pleading, whether Urgent Motions or not, that are requesting relief, shall be accompanied by a proposed order.").

relief.[37] Accordingly, the Committees' requests for the production of GDB documents is not germane to the Motion or properly before the Court.

30. The Committees attempt to blur the lines between the Independent Investigator's Motion and the Creditors' Committee's pending motion under Bankruptcy Rule 2004. Indeed, the Retiree Committee goes so far as to request the immediate production of GDB documents—*through a joinder to an informative motion*—despite never having filed its own motion under Bankruptcy Rule 2004.[38] The Committees should be required to abide by the process envisioned by United States Magistrate Judge Judith G. Dein at the hearing held on June 18, 2018, which requires the Committees to "await" the Final Report, "justify" any further requests, and place a "budget" on any further discovery.[39]

31. For all these reasons, the Committees' requests for additional discovery from GDB should not impact approval of this Motion.

**G.  The Committees' Requests for Productions to Government Agencies**

32. In the Limited Objection and Joinder, the Committees also appear to request certain "[p]roductions made by the Puerto Rico Financial Institutions to regulators."[40] This request for turnover of third parties' documents in the context of an objection to this Motion is inappropriate, and not properly made before the Court, for the same reasons set forth in Section F above regarding the Committees' requests for production of additional GDB documents.

---

[37] Order Further Amending Case Management Procedures, dated April 4, 2018, entered by Judge Swain in the Debtors' Title III Cases [ECF No. 2839], § I.J ("All communications filed in these Title III Cases that are informative and do not request any relief shall be labeled as an informative motion.").

[38] *See* Limited Obj. ¶ 2(c) ("The Retiree Committee joins the Creditors' Committee's Informative Motion Regarding Renewed Rule 2004 Motion and Discovery Items to Be Addressed at July 25 2018 Omnibus Hearing, which seeks immediate access to a narrow band of GDB-related information and documents that are critical to the Committees' efforts to evaluate what, if any, additional discovery may be needed after the Investigator produces its final report on August 15, 2018."); *see also* Joinder ¶ 4 (reiterating requests for "discrete categories of materials sought in the Committee's July 3 Informative Motion").

[39] Hr'g Tr. at 40:25–41:8, June 18, 2018.

[40] Limited Obj. ¶ 14(c); Joinder ¶ 14(c).

14

33. The SEC and FINRA have not consented to the Independent Investigator's transfer of confidential documents provided by these regulators to the Document Depository.[41] OCIF has advised that no confidential examination report and any documents related to that examination report requiring confidential treatment under Puerto Rico law provided by OCIF to the Independent Investigator can be transferred to the Document Depository. The Independent Investigator will return the confidential materials provided by the SEC, FINRA and OCIF to those regulators.

## CONCLUSION

34. For all of the foregoing reasons, the Committees' Limited Objection and Joinder should be overruled and the Independent Investigator's exit process should be approved, as set forth in the Revised Proposed Order, preserving the right balance between the various constituents and allowing the Independent Investigator to publish the Final Report without delay, consistent with the guidance provided by United States Magistrate Judge Judith G. Dein at the hearing held on June 18, 2018.

WHEREFORE, based upon the foregoing, and for the reasons set forth in the Motion, the Independent Investigator respectfully requests that the Court grant the Motion and enter the Revised Proposed Order.

Dated: July 20, 2018
San Juan, Puerto Rico

                                                                                          */s/ D. Farrington Yates*

                                                               KOBRE & KIM LLP
                                                               D. Farrington Yates (admitted *pro hac vice*)
                                                               800 Third Avenue
                                                               New York, New York 10022
                                                               Tel: (212) 488-1211
                                                               Fax: (212) 488-1220
                                                               Farrington.Yates@kobrekim.com

---

[41] The SEC has requested that the Independent Investigator include specific language in the proposed order approving the Motion, which language is reflected in the Revised Proposed Order.

15

John D. Couriel (admitted *pro hac vice*)
201 S. Biscayne Blvd., Suite 1900
Miami, Florida 33131
Tel: (305) 967-6100
John.Couriel@kobrekim.com

*The Independent Investigator*

-and-

A&S LEGAL STUDIO, PSC
/s/ *Luis F. del Valle-Emmanuelli*

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

*Local Counsel for the Independent Investigator*