## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGE-MENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGE-MENT BOARD FOR PUERTO RICO, | No. 17 BK 3567-LTS |
| as representative of | |
| PUERTO RICO HIGHWAYS & TRANSPORTA-TION AUTHORITY, | |
| Debtor. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

ASSURED GUARANTY CORP.; ASSURED
GUARANTY MUNICIPAL CORP.,

      Plaintiffs,

v.

THE FINANCIAL OVERSIGHT AND MAN-
AGEMENT BOARD FOR PUERTO RICO; JOSÉ
B. CARRIÓN III; ANDREW G. BIGGS; CARLOS
M. GARCÍA; ARTHUR J. GONZÁLEZ; JOSÉ R.
GONZALEZ; ANA J. MATOSANTOS; DAVID A.
SKEEL, JR.,

      Defendants.

Adv. Proc. No. 18-_____

## ADVERSARY COMPLAINT

Plaintiffs Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured" or "Plaintiffs") allege as follows:

### NATURE OF THIS ADVERSARY PROCEEDING

1.     In 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA" or the "Act"), Pub. L. No. 114-187, 130 Stat. 549 (2016), a federal law permitting the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities to restructure their debts in a federal court under Title III of the Act.

2.     Most significantly, PROMESA created the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or the "Board"), a body with the sole power to execute and administer PROMESA and to act as the sole representative of any debtor (be it the Commonwealth or any of its instrumentalities) in a Title III proceeding in federal court.

3.     By virtue of PROMESA, the Board's powers, the degree of control over the Board by the United States, and other factors herein described, the voting members of the Board

are "Officers of the United States" within the meaning of the Appointments Clause of the Constitution.  U.S. Const. art. II, § 2, cl. 2.

4.     But none of the Board's members was appointed in conformity with the Appointments Clause.  Rather, as per PROMESA's unprecedented appointment procedures, the Board members were effectively chosen by individual members of Congress and were never confirmed by the U.S. Senate.  This violates both the Appointments Clause and the Constitution's guarantee of the separation of powers.

5.     The Appointments Clause and other separation-of-powers deficiencies in PROMESA and the method by which the Board's members were chosen renders their appointments unconstitutional and the acts which they have undertaken, including initiation of the Title III cases, void *ab initio*.

6.     Plaintiffs insure general obligation bonds ("GO Bonds") issued by the Commonwealth.  The Board filed a Title III petition on behalf of the Commonwealth on May 3, 2017.

7.     Plaintiffs also insure bonds issued by the Puerto Rico Highways and Transportation Authority ("PRHTA").  PRHTA is an instrumentality of the Commonwealth on whose behalf the Board filed a Title III petition on May 21, 2017.

8.     To date, the Board has taken numerous actions as described herein, including but not limited to the filing of the Title III petitions on behalf of the Commonwealth and PRHTA and developing fiscal plans for the Commonwealth and for PRHTA (most recently on, respectively, June 29, 2018 and April 20, 2018), that violate Commonwealth law and PROMESA itself, exacerbating the separation-of-powers defects inherent in the manner of the Board members' appointments.

9.      These actions and others, carried out by unconstitutional officers, have visited and continue to visit irreparable harm on Plaintiffs.

10.     Plaintiffs therefore respectfully request that this Court grant Plaintiffs declaratory and injunctive relief, declaring that the Board members were unconstitutionally appointed, that their acts to date have been unlawful, and that they and the Board are enjoined from taking any further actions until they have been replaced by constitutionally appointed officers.

## THE PARTIES

11.     Plaintiff Assured Guaranty Corp. is a Maryland insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.

12.     Plaintiff Assured Guaranty Municipal Corp. is a New York insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.

13.     Defendant Financial Oversight and Management Board for Puerto Rico was created under Section 101(b)(1) of PROMESA.  The members of the Board qualify as "Officers of the United States" under the Appointments Clause.

14.     Defendant José B. Carrión III is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue José B. Carrión, and any successor thereto, in his official capacity.

15.     Defendant Andrew G. Biggs is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue Andrew G. Biggs, and any successor thereto, in his official capacity.

16.     Defendant Carlos M. García is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue Carlos M. García, and any successor thereto, in his official capacity.

17.     Defendant Arthur J. González is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue Arthur J. González, and any successor thereto, in his official capacity.

18.     Defendant José R. González is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue José R. González, and any successor thereto, in his official capacity.

19.     Defendant Ana J. Matosantos is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue Ana J. Matosantos, and any successor thereto, in her official capacity.

20.     Defendant David A. Skeel, Jr. is a voting member of the Board and in that capacity possesses all the powers granted by PROMESA to Board members.  Plaintiffs sue David A. Skeel, Jr., and any successor thereto, in his official capacity.

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the United States Constitution.  This Court further has jurisdiction under 48 U.S.C. § 2126(a), which grants jurisdiction to this Court over "any action against the Oversight Board."  This Court also has jurisdiction under 48 U.S.C. § 2166(a).

22.     Personal jurisdiction over each of the Defendants is proper under 48 U.S.C. § 2166(c).

23.     Venue is proper under 48 U.S.C. § 2167.

## BACKGROUND

### I.     PROMESA

24.     On or around June 30, 2016, Congress passed PROMESA and President Obama signed it into law.

25.     As relevant here, PROMESA accomplished three things.

26.     First, it created the Oversight Board, 48 U.S.C. § 2121, vesting it with the authority, among other things, to develop budgets for the Commonwealth and its instrumentalities, *id*. § 2142.

27.     Second, PROMESA required the Board to develop a Fiscal Plan to "provide a method to achieve fiscal responsibility and access to the capital markets."  48 U.S.C. § 2141(b)(1).  The plan could not be validly certified unless, among other things, it "respect[s] the relative lawful priorities or lawful liens . . . in the constitution, other laws, or agreements of [the Commonwealth] in effect prior to" PROMESA's enactment.  *Id.* § 2141(b)(1)(N).  The Fiscal Plan is the standard with which the Commonwealth's and PRHTA's budgets must comply. *Id.* §§ 2141(c)(1), 2142(c).  No Fiscal Plan for the Commonwealth or any Commonwealth instrumentality (including PRHTA), and no budget for the Commonwealth or PRHTA for any fiscal year, is effective without a certification from the Board.  *See*, *e.g.*, *id.* §§ 2141(c), 2142(e)(1)–(2), 2143(c)–(d).

28.     Finally, PROMESA created a mechanism, known as Title III, for the adjustment of certain of Puerto Rico's debts, including debts of its instrumentalities.  *See* 48 U.S.C. § 2164.

### II.    The Powers Of The Oversight Board

29.      PROMESA gives the Board significant authority under federal law over the Commonwealth and its instrumentalities.

30.     Only the Board can initiate Title III proceedings, as it has done here. *Id.* § 2164(a).

31.     Within the Title III proceeding, the Board is the sole representative of, and decision-maker for, the Title III debtor, *id.* § 2175(b), thereby completely supplanting the role that locally elected officials play in Chapter 9 cases, *cf.* 11 U.S.C. §§ 109(c)(2), 904.

32.     The Board has the exclusive power to propose a plan of adjustment for the debtor in Title III. *See* 48 U.S.C. § 2172.

33.     The Board also possesses broad federal investigative and enforcement powers.

34.     It can hold hearings, take testimony, receive evidence, and administer oaths "as the Oversight Board considers appropriate" "for the purpose of *carrying out*" federal law (*i.e.,* PROMESA). 48 U.S.C. § 2124(a) (emphasis added).

35.     It enjoys a broad subpoena power to compel the attendance of witnesses or the production of "materials of any nature relating to any matter under investigation by the Oversight Board." *Id.* § 2124(f)(1).

36.     PROMESA even permits the Board to deploy these investigative powers to police "the disclosure and selling practices" of Commonwealth and instrumentality bonds, including any potential "conflicts of interest maintained by" brokers, dealers, or investment advisers—issues that could extend far outside of Puerto Rico. *Id.* § 2124(*o*).

37.     The Board has exercised these investigative powers in numerous ways. *E.g.,* Press Release, *Oversight Board to Conduct Investigation of Puerto Rico's Debt* (Aug. 2, 2017), *available at* https://juntasupervision.pr.gov/wp-content/uploads/wpfd/49/598239c5a7286.pdf.

38.     In addition, the Board "may seek judicial enforcement of its authority to carry out its responsibilities under [PROMESA]." 48 U.S.C. § 2124(k).

39.     Although PROMESA characterizes the Board "as an entity within the territorial government" of the Commonwealth, 48 U.S.C. § 2121(c)(1)–(2), PROMESA also goes to great pains to establish the Board as an independent federal overseer of the Commonwealth and any related fiscal matters, immune from interference from the democratically elected Commonwealth government or the people of Puerto Rico, *id*. § 2128(a) ("Neither the Governor nor the Legislature" may "exercise any control, supervision, oversight, or review over the Oversight Board or its activities," or "enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board.").

40.     Further, Board members are subject only to *federal* ethics laws, not Commonwealth laws, *id*. § 2129, and they enjoy numerous other trappings of federal power, *see id*. § 2122 (use of federal facilities); *id*. § 2124(n) (support from GSA); *id*. § 2124(c) (use of federal information).

41.     The only person who can remove a member of the Board is the President.  *See id*. § 2121(e)(5)(B).

## III.   The Selection Of Oversight Board Members

42.     Officers of the United States must be appointed in accordance with the requirements of the Constitution's Appointments Clause, which provides that the President:

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . [*all*] *Officers of the United States*, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, *in the President alone*, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2 (emphases added).

43.     The Appointments Clause thus recognizes three categories of federal officials: (1) principal officers, whose appointment may be made only by the President with the Advice

and Consent of the Senate; (2) "inferior Officers," whose appointment may be vested "in the President alone, in the Courts of Law, or in the Heads of Departments"; and (3) employees, to whom the Clause does not apply. *See Edmond v. United States*, 520 U.S. 651, 660–61 (1997); *see also Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018); *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 880–81 (1991).

44.    "[A]ny appointee exercising significant authority pursuant to the laws of the United States" is an officer and subject to the Appointments Clause. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976); *see also Lucia*, 138 S. Ct. at 2051; *Freytag*, 501 U.S. at 880–81.

45.    The Oversight Board's members are not appointed in accordance with these constitutional requirements.  Instead, PROMESA established unprecedented procedures for the appointment of the seven voting members. *See* 48 U.S.C. § 2121.[2]

46.    The Act provides that six members be selected from lists of pre-approved individuals submitted to the President by House and Senate leaders.

47.    One "Category A" member and one "Category B" member would be selected from separate lists submitted by the Speaker of the House of Representatives; two "Category C" members would be selected from a single list submitted by the Majority Leader of the Senate; a "Category D" member would be selected from a list submitted by the Minority Leader of the House of Representatives; and a "Category E" member would be selected from a list submitted by the Minority Leader of the Senate. *Id*. § 2121(e)(2)(A)(i)–(v), (e)(2)(B).

48.    Only the seventh member, "Category F," could be selected in the President's sole discretion. *Id*. § 2121(e)(2)(A)(vi).

---

[2]  PROMESA provides that "[t]he Governor, or the Governor's designee, shall be an ex officio member of the Oversight Board without voting rights."  48 U.S.C. § 2121(e)(3).

49.     PROMESA further provides that if the President chose from those lists, the nominees would not require Senate confirmation.  *Id*. § 2121(e)(2)(E).

50.     "Off-list" nominations—nominations of individuals not included on a list for a given category—require Senate Confirmation.  *Id.* § 2121(e)(1)(E).

51.     But if off-list nominees were not confirmed by the Senate by September 1, 2016—a mere two months after PROMESA's enactment (during most of which time the Senate was on its summer recess)—the President was required to select members from the lists provided by members of Congress.  *Id.* § 2121(e)(2)(G).

52.     As one House Report stated, PROMESA's appointments procedure "ensures that a majority of [the Board's] members are effectively chosen by Republican congressional leaders on an expedited timeframe."[3]

53.     The President ultimately acceded to PROMESA's procedure and restricted his appointment power to the Board members put forward by Congressional leadership.  Thus, none of the Board members was confirmed by the Senate.  *See President Obama Announces the Appointment of Seven Individuals to the Financial Oversight and Management Board for Puerto Rico* (Aug. 31, 2016), https://goo.gl/4ZeKuK; 48 U.S.C. § 2121(e)(2)(E), (e)(2)(G), (e)(2)(A)(vi).

54.     Because the Board members exercise significant federal authority as described herein, and answer only to the President of the United States, they are principal officers of the United States, who must be nominated by the President and confirmed by the Senate.  None of the Board members was so appointed.

---

[3]  House Comm. on Natural Resources, H.R. 5278, *"Puerto Rico Oversight, Management, Economic Stability Act" (PROMESA), Section by Section*, at 5, *available at* https://naturalresources.house.gov/UploadedFiles/Section_by_Section_6.6.16.pdf.

55.     Even if the Board members were inferior officers, their appointments were invalid because the Constitution permits Congress to vest the appointment power for such officers in "the President alone"; but no portion of the executive appointment power may be vested in Congress or any of its members.

56.     In other litigation similarly challenging the constitutionality of the Board members' appointments, the Board has declared that it is not subject to the Appointments Clause.

57.     Similarly, on that same basis, the Board has contended that its actions to date, including the filing of the Title III petition, are not invalid because of an Appointments Clause or separation-of-powers violation.

## IV.    The Board's Unlawful Actions To Date

58.     Plaintiffs are providers of financial guaranty insurance, which is a type of insurance whereby an insurer guarantees scheduled payments of interest and principal as and when due on a bond or other obligation.  Plaintiffs insure scheduled principal and interest payments when due on municipal, public infrastructure, and structured financings both in the United States and around the world.

59.     Plaintiffs insure GO Bonds issued by the Commonwealth.  As "public debt," the GO Bonds are entitled to a first-priority payment status under the constitution of the Commonwealth (the "Commonwealth Constitution") and related statutes (including the OMB Act, as defined below) and are entitled to payment before all other obligations payable from the Commonwealth's general revenues.   Under Plaintiffs' insurance agreements with respect to the GO Bonds, Plaintiffs are deemed to be the sole holders of the GO Bonds they insure for the purpose of giving any consent or direction or taking any other action that the holders of the insured GO Bonds are entitled to take under the applicable bond resolutions.

60.     Plaintiffs insure approximately $1.34 billion of GO Bonds currently outstanding. Because of defaults resulting from, among other things, the Commonwealth Fiscal Plan (as defined below) and the Compliance Law (as defined below) with respect to principal and interest payments due on the GO Bonds on July 1, 2016; January 1, 2017; July 1, 2017; January 1, 2018; and July 1, 2018, Plaintiffs have paid approximately $524.7 million in aggregate claims by GO Bondholders and are now fully subrogated to the rights of the GO Bondholders for the claims they paid.  In addition, Plaintiffs hold GO Bonds independently of their insurance policies.

61.     Plaintiffs also insure bonds issued by PRHTA (the "PRHTA Bonds").  PRHTA is a public corporation created by Act No. 74-1965 (the "PRHTA Enabling Act") to assume responsibility for the construction of highways and other transportation systems in Puerto Rico. Pursuant to the PRHTA Enabling Act, PRHTA issued the PRHTA Bonds under general bond resolutions (the "PRHTA Resolutions") adopted in 1968 and 1998.

62.     Pursuant to the PRHTA Enabling Act and PRHTA Resolutions, the PRHTA Bonds are secured by a gross lien on pledged special revenues consisting of (i) revenues derived from PRHTA's toll facilities (the "Pledged Toll Revenues"); (ii) gasoline, diesel, crude oil, and other special excise taxes levied by the Commonwealth (the "Pledged Tax Revenues"); and (iii) special excise taxes consisting of motor vehicle license fees collected by the Commonwealth (together with the Pledged Tax Revenues, the "Pledged Special Excise Taxes," and together with the Pledged Tax Revenues and the Pledged Toll Revenues, the "Pledged Special Revenues"). The Resolutions constitute security agreements, and Plaintiffs' security interests in the Pledged Special Revenues under the Resolutions are perfected, including by the filing of financing statements.

63.    The Secretary of Treasury of the Commonwealth acts as a collection agent on be-half of the PRHTA Bondholders with respect to the Pledged Special Excise Taxes.  Upon collec-tion, the Secretary of Treasury is required by statute to hold the Pledged Special Excise Taxes in a segregated account for the benefit of PRHTA and its bondholders.  From the time of their col-lection, the Pledged Special Excise Taxes constitute trust funds that are property of the PRHTA Bondholders and not of the Commonwealth.  *See* 13 L.P.R.A. § 31751(a)(1); 9 L.P.R.A. §§ 2013(a)(2), 2021, 5681 (collectively, and including any related statutes, the "PRHTA Excise Tax Statutes").  Pursuant to the PRHTA Excise Tax Statutes, the Pledged Special Excise Taxes may not be used for any purpose other than payment of the PRHTA Bonds, and the PRHTA Ex-cise Tax Statutes give rise to statutory liens in favor of Plaintiffs and other PRHTA Bondholders on the Pledged Special Excise Taxes.  *See* 11 U.S.C. § 101(53).

64.    The Pledged Toll Revenues likewise constitute trust funds collected and held by PRHTA on behalf of PRHTA bondholders and are property of PRHTA bondholders and not the Commonwealth.  *See* 9 L.P.R.A. § 2013(a)(2).

65.    The PRHTA Resolutions and PRHTA Excise Tax Statutes in turn require PRHTA to transfer the Pledged Special Revenues to the fiscal agent for the PRHTA Bonds on a monthly basis.  The Commonwealth covenanted with the holders of the PRHTA Bonds in the PRHTA Enabling Act that it would "not limit or restrict the rights or powers . . . vested in [PRHTA by the PRHTA Enabling Act] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged."  9 L.P.R.A. § 2019.

66.    The PRHTA Bonds are non-recourse bonds, payable solely from the Pledged Special Revenues.  Moreover, because PRHTA Bonds are secured by a "gross lien" on all of the

13

Pledged Special Revenues, operating expenses of PRHTA may be paid only after PRHTA satisfies its debt service and reserve fund requirements with respect to PRHTA Bonds.

67.     Plaintiffs insure approximately $1.4 billion of PRHTA Bonds currently outstanding.  Under their insurance agreements, Plaintiffs are deemed the sole owners of the PRHTA Bonds that they insure for purposes of consents and other bondholder actions, and retain the power to exercise rights and remedies of PRHTA bondholders.  Plaintiffs also are recognized as third-party beneficiaries under the PRHTA Resolutions.  In addition, Plaintiffs hold PRHTA Bonds independently of their insurance policies.

68.     As a result of the Fiscal Plans (as defined below) and the Compliance Law (as defined below), among other things, PRHTA defaulted with respect to debt service payments due on PRHTA Bonds insured by Plaintiffs on or around July 1, 2016; January 1, 2017; July 1, 2017; January 1, 2018; and July 1, 2018.  As a result of these defaults, Plaintiffs have paid claims under their insurances policies insuring the PRHTA Bonds in an amount aggregating approximately $200 million.  Plaintiffs are now fully subrogated to the rights of PRHTA Bondholders for the claims they paid.

69.     Section 8 of Article VI of the Commonwealth Constitution (the "Constitutional Debt Priority Provision") creates a priority for GO Bonds and other "public debt" over the Commonwealth's other expenditures by requiring the "public debt" to be paid "first":

> In case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

P.R. Const. art. VI, § 8.

70.     In addition to giving priority to the GO Bonds and other "public debt," the Constitutional Debt Priority Provision incorporates other legal priorities, created by statute, by stating

14

that, following payment of the public debt, "other disbursements shall . . . be made in accordance with the order of priorities established by law."  P.R. Const. art. VI, § 8.  Among the statutory priorities granted constitutional protection are (i) the statutory priorities established by the PRHTA Excise Tax Statutes and (ii) the statutory priorities established by the Commonwealth's Management and Budget Office Organic Act, Act No. 147-1980 (the "OMB Act").

71.    The PRHTA Excise Tax Statutes grant bondholders the most senior possible lien on the Pledged Special Excise Taxes, consistent with the Constitutional Debt Priority Provision. These statutes grant bondholders first-priority liens on the Pledged Special Excise Taxes, subject only to the conditions that, in a fiscal year in which the Commonwealth's available resources are insufficient to meet the appropriations made for that year, the Pledged Special Excise Taxes may (i) be used solely to pay the public debt, but (ii) only if the public debt remains unpaid after a first application of all available resources to the payment of public debt.  *See* 9 L.P.R.A. § 2021, 5681; 13 L.P.R.A. § 31751(a)(1).  These conditions have never been satisfied because the Commonwealth has at all relevant times had sufficient available resources to pay the public debt in accordance with the Constitutional Debt Priority Provision.

72.    Section 4(c) of the OMB Act sets the "priority guidelines" for the disbursement of available resources in a fiscal year in which the Commonwealth's available resources are insufficient to meet the appropriations made for that year.  The first priority is assigned to "payment of interest and amortizations corresponding to the public debt."  23 L.P.R.A. § 104(c)(1).

73.    The second priority is assigned to "commitments entered into by virtue of legal contracts in force, judgments of the courts in cases of condemnation under eminent domain, and binding obligations to safeguard the credit, reputation and good name of the Government of the

Commonwealth of Puerto Rico," including, to the extent applicable, the PRHTA Bonds. *Id.* § 104(c)(2).

74.    The third priority is assigned to "regular expenses," related to "[c]onservation of public health," "[p]rotection of persons and property," "[p]ublic education programs," "[p]ublic welfare programs," and "[p]ayment of employer contributions to retirement systems and payment of pensions to individuals granted under special statutes," followed by "remaining public services in the order of priority determined by the Governor." *Id.* § 104(c)(3)(A)–(E). Necessary "adjustments due to reductions may be made" to the appropriations for any of these enumerated "service areas." *Id.* § 104(c)(3)(E).

75.    The lowest priorities are assigned to "construction of capital works or improvements" (fourth priority), *id.* § 104(c)(4), and "contracts and commitments contracted under special appropriations" (fifth priority), *id.* § 104(c)(5).

76.    On or about March 13, 2017, the Oversight Board certified the Commonwealth's original 2017–2026 fiscal plan as developed by the Oversight Board (including as amended or superseded, the "Commonwealth Fiscal Plan").

77.    On or about June 29, 2018, the Oversight Board certified the Commonwealth's most recent revised 2018–2023 fiscal plan as developed by the Oversight Board.

78.    On or about May 2, 2017, the Oversight Board certified PRHTA's original 2017–2026 fiscal plan as developed by the Oversight Board (including as amended or superseded, the "PRHTA Fiscal Plan," and together with the Commonwealth Fiscal Plan, the "Fiscal Plans").

79.    On or about April 20, 2018, the Oversight Board certified PRHTA's revised 2018–2023 fiscal plan as developed by the Oversight Board.

80.     The Commonwealth Fiscal Plan requires that the Commonwealth unlawfully pay other expenses of government ahead of the GO Bonds and other public debts, in violation of the Constitutional Debt Priority Provision.

81.     The Fiscal Plans also require the Commonwealth to unlawfully divert the Pledged Special Excise Taxes from PRHTA and its bondholders to the Commonwealth.  The Pledged Special Excise Taxes constitute trust funds held by PRHTA on behalf of PRHTA bondholders and are not the property of the Commonwealth.  Further, the Fiscal Plans require the Commonwealth to misappropriate for its own general use the Pledged Special Excise Taxes.

82.     The Fiscal Plans therefore disregard constitutional and statutory priorities and liens granted to GO Bondholders and PRHTA Bondholders, and subordinate debt service to all expenses.

83.     The PRHTA Fiscal Plan likewise diverts and misappropriates Pledged Special Revenues to pay all of PRHTA's expenses on a first priority basis, disregarding the PRHTA Bondholders' first priority gross lien on those pledged revenues.

84.     The PRHTA Fiscal Plan sets aside no amounts for payments on PRHTA Bonds during the six-year forecast period.

85.     Under PROMESA, once fiscal plans are certified for the Commonwealth and its instrumentalities (including PRHTA), all governmental actions must comply with the certified fiscal plans.  This includes actions taken during the pendency of these Title III proceedings.

86.     Section 202 of PROMESA requires the budgets of the Commonwealth and its instrumentalities, including PRHTA, to comply with the applicable certified fiscal plans.  48 U.S.C. § 2142.

87.     Section 204 of PROMESA requires future Commonwealth legislation to comply with the certified fiscal plans of the Commonwealth and its instrumentalities, including PRHTA. 48 U.S.C. § 2144.

88.     As a result of the requirement in the Commonwealth Fiscal Plan that the Commonwealth subordinate debt service on the GO Bonds to all expenses of the Commonwealth, Plaintiffs have suffered and will continue to suffer defaults on the GO Bonds that they insure, which defaults have caused and will continue to cause significant, material, and irreparable harm to Plaintiffs.

89.     As a result of the requirement in the Fiscal Plans that the Commonwealth misappropriate the Pledged Special Revenues from PRHTA and its bondholders, the subordination of debt service to all expenses as set forth in the Fiscal Plans, and the failure of the PRHTA Fiscal Plan to provide for any bond payments for the next six years, Plaintiffs have suffered and will continue to suffer defaults and claim payments on the PRHTA Bonds that they insure, which defaults have caused and will continue to cause significant, material, and irreparable harm to Plaintiffs.

90.     As set forth above, defaults have already occurred, causing Plaintiffs to incur significant expenses in paying insurance claims on the GO Bonds and PRHTA Bonds, therefore causing significant, material, and irreparable harm to Plaintiffs.

91.     On or about April 29, 2017, the Commonwealth enacted the Fiscal Plan Compliance Law, P. de la C. 938 (the "Compliance Law").

92.     Chapter 4 of the Compliance Law directs the agencies and instrumentalities of the Commonwealth, including PRHTA, to transfer all income in excess of operating expenses to the

Puerto Rico Department of the Treasury, in spite of other statutory provisions giving PRHTA bondholders liens over and priority rights to those proceeds.

93.     Chapter 4 of the Compliance Law makes no provision for payment by PRHTA of its secured debt.

94.     Chapter 6 of the Compliance Law amends Act No. 230-1974 (July 23, 1974), and provides that special state funds created by law for specific purposes, including the Pledged Special Excise Taxes, must be used only "in accordance with the Recommended Budget by the Office of Management and Budget and the Fiscal Plan."  Chapter 6 further provides: "Should there be any inconsistency between the law and the use of the funds with the Fiscal Plan, the purpose provided for in the Fiscal Plan . . . shall prevail."  The effect of Chapter 6 of the Compliance Law is to deprive Plaintiffs and others of benefits and property interests to which they are entitled by law.

95.     The Compliance Law, and its unlawful disregard for preexisting liens and priorities, is a direct and proximate result of the Fiscal Plans developed by the Oversight Board.

96.     As a result of the Compliance Law, Plaintiffs have been unlawfully deprived of their liens and priorities over the Pledged Special Revenues.  The Compliance Law has therefore caused significant, material, and irreparable harm to Plaintiffs.

97.     On May 21, 2017, the Oversight Board commenced a proceeding on behalf of PRHTA under Title III of PROMESA.

98.     Plaintiffs' constitutional, statutory, and contractual rights and property interests are being adjudicated in a proceeding initiated by an unconstitutional entity.  The commencement of the Title III proceeding therefore has caused significant, material, and irreparable harm to Plaintiffs.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief Against All Defendants for Violations of the Appointments Clause and Separation of Powers )

99.     Plaintiffs hereby incorporate all preceding paragraphs.

100.    This case comes within this Court's jurisdiction for the reasons already pleaded herein.

101.    The Board members are officers of the United States whose appointments were unlawful under the Appointments Clause and principles of separation of powers for the reasons already pleaded herein.

102.    The facts alleged show that there is a substantial controversy between Plaintiffs and Defendants as it concerns the constitutionality of the appointment of the members of the Board under PROMESA and the lawfulness of the filing of the Title III petitions for the Commonwealth and for PRHTA as well as other actions taken by the Board described herein.

103.    Plaintiffs and Defendants have adverse legal interests.

104.    This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

105.    Plaintiffs respectfully request declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 that because the Board members are officers of the United States whose appointments were unlawful under the Appointments Clause and principles of separation of powers, their actions to date are void *ab initio*, including the filing of the Title III petitions.

106.    Plaintiffs respectfully request any further necessary and proper relief under 28 U.S.C. § 2202.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief Against All Defendants for Violations of
### the Appointments Clause and Separation of Powers )

107.   Plaintiffs hereby incorporate all preceding paragraphs.

108.   An unconstitutionally appointed officer lacks authority to take actions belonging to his or her office, including, in the context of these cases, the filing of the Title III petitions, the development of Commonwealth and/or PRHTA budgets, and the development of Commonwealth and/or PRHTA fiscal plans.

109.   The Board members are officers of the United States whose appointments were unlawful under the Appointments Clause and principles of separation of powers for the reasons already pleaded herein.

110.   Accordingly, their actions to date are void *ab initio*.

111.   The Board's actions have caused and continue to cause irreparable constitutional injury to Plaintiffs.

112.   Plaintiffs therefore respectfully request that the Court enjoin Defendants from taking any further action whatsoever until the Board members have been lawfully appointed in conformity with the Appointments Clause.

## PRAYER FOR RELIEF

Plaintiffs respectfully request, therefore, that the Court:

1.   Declare that, under the Appointments Clause, the Oversight Board's members are officers of the United States whose appointments were unlawful.

2.   Declare void *ab initio* the unlawful actions taken by the Oversight Board to date, including but not limited to:

a.   The development of the Commonwealth Fiscal Plan;

      b.      The development of the PRHTA Fiscal Plan; and

      c.      The filing of the Title III cases on behalf of the Commonwealth and

PRHTA.

3.      Enjoin Defendants from taking any further action whatsoever until the Board members have been lawfully appointed in conformity with the Appointments Clause.

4.      Any other relief the Court may deem proper.

Dated:  July 23, 2018

Respectfully submitted,

  /s/ Heriberto Burgos Pérez

  /s/ Matthew D. McGill

Heriberto Burgos Pérez
Ricardo F. Casellas-Sánchez
Diana Pérez-Seda
USDC-PR Bar Nos. 204809,
203114, & 232014
CASELLAS ALCOVER & BURGOS P.S.C.
P.O. Box 364924
San Juan, P.R.  00936
Phone:  (787) 756-1400
Fax:  (787) 756-1401
Email:  hburgos@cabprlaw.com
rcasellas@cabprlaw.com
dperez@cabprlaw.com

Matthew D. McGill  (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone:  (202) 955-8500
Fax:  (202) 467-0539
Email:  mmcgill@gibsondunn.com