# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO[1]<br><br>Debtor<br><br>HERMANDAD DE EMPLEADOS DEL FONDO DEL SEGURO DEL ESTADO, INC.; UNIÓN DE MÉDICOS DE LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO CORP.<br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; STATE INSURANCE FUND CORPORATION; JESÚS M. RODRÍGUEZ ROSA; RICARDO ANTONIO ROSSELLÓ NEVARES; GERARDO PORTELA FRANCO; HON. RAÚL MALDONADO GAUTIER; JOSÉ IVÁN MARRERO ROSADO; NATALIE A. JARESKO,<br>Defendants | PROMESA<br>Title III<br><br>No. 17 BK-3283-LTS<br>(Jointly Administered)<br><br><br><br><br><br><br>Adv. Proc. No. 18- ____-LTS |

## ADVERSARY COMPLAINT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

**Contents**

I. NATURE OF THIS ADVERSARY PROCEEDING ................................................................ 3

II. THE PARTIES ...................................................................................................................... 15

III. JURISDICTION AND VENUE OF THIS HONORABLE COURT ..................................... 18

IV. LEGAL AND FACTUAL BACKGROUND ........................................................................ 20

   A. THE CFSE AS AN ESSENTIAL PUBLIC SERVICE PROVIDER ..................................... 20

   B. THE UNION OF EMPLOYEES, THE PHYSICIANS UNION AND THE COLLECTIVE
   BARGAINING AGREEMENTS ............................................................................................... 24

   C. ACT NUMBER 66-2014, ACT NUMBER 3-2017, ACT NUMBER 8-2017 AND ACT
   NUMBER 26-2017 .................................................................................................................... 29

   D. THE UNION OF EMPLOYEES, THE PHYSICIANS UNION CBA's, AND THEIR
   IMPAIRED CLAUSES ............................................................................................................... 39

   E. THE CBA's, THE CONTRACT CLAUSE, AND IMPAIRMENT OF CONTRACTUAL
   OBLIGATIONS .......................................................................................................................... 60

   F. IMPAIRMENT OF RIGHT TO COLLECTIVE BARGAINING ......................................... 65

   G. PROMESA AND THE COMMONWEALTH'S NEW FISCAL PLAN ............................... 66

   H. PROMESA AND THE PLAN OF ADJUSTMENT OF DEBT ............................................ 72

V. PRAYERS FOR RELIEF ...................................................................................................... 74

TO THE HONORABLE COURT:

Come now Plaintiffs, Hermandad de Empleados del Fondo del Seguro del Estado, Inc., also known as Unión de Empleados de la Corporación del Fondo del Seguro del Estado, ("UECFSE", for its acronym in Spanish, or Union of Employees), and Unión de Médicos de la Corporación del Fondo del Seguro del Estado Corp. ("UMCFSE", for its acronym in Spanish, or Physicians Union), through their attorneys, Bufete Emmanuelli, C.S.P., for this Adversary Complaint against defendants: the Commonwealth of Puerto Rico (the "Commonwealth"); the Financial Oversight and Management Board for Puerto Rico (the "FOMB"); The State Insurance Fund Corporation (the "CFSE" for its acronym in Spanish); Jesús M. Rodríguez Rosa; Hon. Ricardo Rosselló Nevares; Ricardo Ramos Rodríguez; Gerardo Portela Franco; Hon. Raúl Maldonado Gautier; José Ivan Marrero Rosado; and Natalie A. Jaresko (collectively, the "Defendants"), and alleges, states, prays, and requests relief as follows:

## I. NATURE OF THIS ADVERSARY PROCEEDING

1. On June 29, 2018, the Financial Oversight and Management Board (the "FOMB") developed and certified a New Fiscal Plan that violates the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the United States Constitution (the "U.S. Constitution"), and the Constitution of the Commonwealth of Puerto Rico (the Commonwealth's Constitution").

2. The violations include: (i) failure to identify expenses for essential public services, as required by PROMESA § 201(b)(1)(B); (ii) violation of the Contracts Clause of the U.S. Constitution; and (iii) violation of the right to collective bargaining of the Commonwealth's Constitution.

3. Because of these clear violations, the New Fiscal Plan is unlawful and unconstitutional and cannot provide the basis for a plan of adjustment under Title III of PROMESA.  Any plan of

adjustment that follows the New Fiscal Plan, as required by PROMESA § 314, would not be confirmable, on its face.

4. Accordingly, Plaintiffs seek a judgment declaring that the New Fiscal Plan is unlawful and unconstitutional, and declaring that the FOMB cannot use the New Fiscal Plan as the basis for proposing a plan of adjustment in the pending Title III case for the Commonwealth. To the extent necessary, the Court should grant complementary injunctive relief. Plaintiffs are entitled to immediate review of their claims at this juncture, and such review is necessary to prevent the ongoing violations of PROMESA, the U.S. Constitution, and the Commonwealth's Constitution.

5. The CFSE is the exclusive provider of insurance coverage for work related accidents, deaths, and illness suffered by workers in Puerto Rico as a consequence of their employment.

6. The main purpose of the CFSE is to guarantee the constitutional right of every worker to be protected against risks to their health in employment, guaranteed by Section 16, Article II of the Constitution of the Commonwealth of Puerto Rico.[2]

7. Similarly, the CFSE has the important mission of offering the employer a comprehensive worker insurance cover and immunity, at the lowest cost, and at the same time, provide effective services, so that injured workers can return to their jobs in the shortest period of time possible.

8. The CFSE is fiscally self-sufficient and it does not depend on appropriations from the Commonwealth's General Fund for its operations.

---

[2] Section 16. The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary-workday which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.

9. However, the Commonwealth approved a series of laws that have impaired the economic stability of the CFSE, requiring the corporation to transfer funds to other governmental agencies.[3] For example, the amounts transferred to other governmental instrumentalities were $107,903,822, during FY2014, and $106,755,532, during FY2015, leading the CFSE to a deficit at the end of the respective fiscal years, and forcing it to finance this deficiency with the yield of its investment portfolio and with capital withdrawals from its reserve funds.[4]

10. The CFSE is an essential service for which the FOMB should ensure the funding, according to PROMESA Section 201 (b)(1)(B).[5]

11. The CFSE is one of the Public Corporations covered by the New Fiscal Plan of the Commonwealth, certified by the FOMB on June 29, 2018, which is being currently executed by the Defendants.[6]

12. The Union of Employees was founded in 1963. Its members are responsible for the general operation of the services the CFSE provides. Its members include, but are not limited to, actuaries, buyers, system analysts, dietitians, physical and occupational therapists, pharmacy technicians, carpenters, electricians, nurses, pharmacists, etc. The Union of Employees has the exclusive and unlimited prerogative to represent all of its members in matters related to their rights and wellbeing. The Union of Employees currently represents approximately one thousand and nine hundred (1,900) members.

---

[3] Acts No. 45 of April 18, 1935, 243 of July 23, 1974, 66-2014, 73-2014, 78-2014, 105-2015.
[4] State Insurance Fund Basic Financial Statements and Required Supplementary Information, June 30, 2015. (Exhibit C)
[5] 48 U.S.C. § 2141.
[6] June 29, 2018, Commonwealth Fiscal Plan, pages 23, 68.

13. The Union of Employees' job is to protect and defend CFSE's workers, as well as negotiate collective bargaining agreements on their behalf. The latest collective bargaining agreement (CBA) is from the 2011-2015 period. (EXHIBIT A).

14. The current CBA between the Union of Employees and CFSE is from 2011. Even though it was enacted with a lifespan lasting from July 2011 through June 2015, it has a provision which establishes that it will continue dictating the labor relations between the CFSE and the Union of Employees until a new collective bargaining agreement is negotiated and in effect.[7] Since no new collective bargaining agreement has been negotiated and established, the CBA is still valid and in full force.

15. The Physicians Union was founded in 1996 and incorporated in 2001. Its members are responsible for providing medical services to the injured workers served at the CFSE. The Physicians Union has the exclusive and unlimited prerogative to represent all of its members in matters related to their rights and wellbeing. The Physicians Union represents approximately one hundred and nineteen (119) members.

16. The Physicians Union's job is to protect and defend CFSE's doctors, as well as negotiate collective bargaining agreements on their behalf. The latest collective bargaining agreement (CBA) is from the 2002-2006 period. (EXHIBIT B).[8]

17. The current CBA between the Physicians Union and CFSE is from 2002. Even though it was enacted with a lifespan lasting from July 2002 through June 2006, it has a provision that establish Physicians Union until a new collective bargaining agreement is negotiated

---

[7] UECFSE CBA, Art. 50, "Duration of the Collective Bargaining Agreement".
[8] A motion requesting an extension of time to submit a certified translation of Exhibit B has been submitted on this same date.

and in effect.[9] Since no new collective agreement has been negotiated and established, the CBA is still valid and in full force.

18. The Union of Employees and the Physicians Union's members render a vital day to day service for the CFSE and the people of the Commonwealth. Protecting their rights and hard earned benefits is the equivalent of assuring the CFSE´s stability.

19. Despite the fact that the employees play a vital role in the CFSE´s operational and financial health, the Government enacted the following legislation directed at undermining and impairing their labor rights and benefits that provide for the health and well-being of these workers:

   a. The "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act", Act Num. 66 of June 17, 2014 ("Act Num. 66-2014"): This law substantially alters the CBA's by establishing a limit to the amount of vacation and illness days a member could accumulate and receive a monetary compensation for and eliminating numerous important economic and non-economic provisions of the CBA's.

   b. The "Act to Attend to the Economic, Fiscal, and Budget Crisis and to Guarantee the Functioning of the Government of Puerto Rico", Act Num. 3 of January 23, 2017, ("Act Num. 3-2017"): It suspended all collective bargaining agreement provisions that were contrary to its clauses, suspended all non-economic clauses that had any economic impact, whether it is direct or indirect, on the corporation budget, eliminated monetary compensations, and imposed on public corporations the creation of a plan so employees would exhaust all excess vacation and sick

---

[9] UMCFSE CBA, Art. 65, "Duration of the Collective Bargaining Agreement".

leave balance. This Act extended the lifespan of applicable provisions of Act 66-2014, such as Sections 11 and 17.

c. The "Administration and Transformation of the Human Resources of the Government of Puerto Rico Act", Act Num. 8 of February 4, 2017, ("Act Num. 8-2017"): Its purpose is to make the Government the sole employer of all public employees, allowing it to consolidate services, eliminate those which it understands are no longer needed, create a unified system of job classifications, have a specific merit system applicable for all agencies and corporations, and facilitate the transfer or movement of employees between agencies, without regard to what agency or corporation an employee works for;

d. The, "Fiscal Plan Compliance Act", Act Num. 26 of April 29, 2017 ("Act Num. 26-2017"): This Act impaired multiple important fringe benefits of employees. For example, it eliminates monetary compensation for excess vacation and illness days; reduces the amount of days an employee can accrue of vacation or illness; eliminates any and all monetary compensations; sets a time limit for the use of excess vacation or illness days. If this excess balance is not used by the established date, they will be lost.

20. The above-mentioned legislation was incorporated by Defendants in the Commonwealth's New Fiscal Plan, certified on June 29, 2018.

21. The June 29th New Fiscal Plan is based on the assumption that the provisions of these Acts and budget cuts will continue to be enforced through the duration of the New Fiscal Plan.[10]

---

[10] June 29, 2018, Commonwealth Fiscal Plan, pages 69-70.

22. The agency efficiency measures included in the June 29th New Fiscal Plan imposes the CFSE a 315.7 million costs reduction through the five years of the Certified New Fiscal Plan.[11] These measures will imminently impair Plaintiffs members' labor rights and benefits.

23. The Government of Puerto Rico has, through the approval and adoption of the above-mentioned laws, and in an attempt to comply with the FOMB, retroactively destroyed and substantially impaired the Plaintiffs' CBA's. The adverse effect is such, that they render the CBA's almost useless. With their actions, they have blatantly violated the Constitution of the United States, the Commonwealth's Constitution, and PROMESA.

24. The impairment to the labor rights and benefits holds severe and negative consequences for the Union of Employees, the Physicians Union's members, the CFSE, and the Commonwealth. It throws employees into a trustless, illegal, unsafe, and economically unstable environment. These governmental actions serve a harsh blow to the workforce that can only result in the diminishment of labor productivity. Therefore, it will impair an essential service that should be ensured, as provided by §201 of PROMESA.

25. The enactment and current implementation and enforcement of these laws represent drastic and substantial impairments to the CBA's by the Government. Impairments which render them almost useless. These actions are in direct violation of the Contract Clause of the U.S. Constitution as well as the Commonwealth´s Constitution.

26. The Contract Clause of the U.S. Constitution establishes in its Art. I, section 10, cl. 1 that, "No State shall […] pass any […] Law impairing the Obligation of Contracts…" This Contract Clause has its equal in the Constitution of the Commonwealth of Puerto Rico in its Art. II, sec. 7.

---

[11] June 29, Commonwealth New Fiscal Plan, page 89.

27. The Contract Clause prohibits a State from passing laws that will impair contractual obligations entered upon between parties. Nonetheless, this prohibition is not absolute. A state may alter contractual obligations under certain circumstances, based on its police power.

28. When a State passes laws impairing a contract, the Courts are called upon, to determine if such a violation is allowed by the Constitution. For this, the legislation enforced must pass a two-prong test. First, if there is in fact a substantial impairment of a contract, and second, if such impairment is reasonable and necessary to serve an important government purpose.[12]

29. After the enactment of the above-mentioned laws, the Union of Employees' CBA has been substantially impaired; at least 23 of its 50 dispositions rendered useless.

30. After the enactment of the above-mentioned laws, the Physicians Union's CBA has been substantially impaired; at least 32 of its 65 dispositions rendered useless.

31. The impact of the above-mentioned laws has impaired the economic benefits of Plaintiffs' members. Between Fiscal years 2014-2015 to 2011-2023, the quantifiable economic benefits lost by Plaintiffs' members are: 139 million, for the Union of Employees, and 12.7 million for the Physicians Union.[13]

32. In the case at hand, the Government alleges it has passed these laws as a response to the economic crisis that the Commonwealth is currently going through. This in turn, allows it to impair a contract in its favor. Normally, when a government passes a law impairing a contract, complete deference is given to the legislative assessment and intent. Nonetheless, when the State's self-interest is at stake, less deference is given to such assessment because, "…If a State could reduce its financial obligations whenever it wanted to spend the money for what it

---

[12] United Automobile, Aerospace, Agricultural Implement Workers Of America International Union, et al v. Fortuño, 633 F.3d 37, 41 (2011); U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1 (1977).
[13] José I. Alameda & Alfredo González Martínez, *infra*, p. 50.

regarded as an important public purpose, the Contract Clause would provide no protection at all". [14]

33. Even though there was an actual fiscal crisis at hand, the impairments brought on by these laws must be cautiously examined. For example, Act Num. 26 establishes in its Preamble that one of its main purposes is to make all public employees´ benefits the same, thus, making central government employees and public corporations' employees equal. [15]   Making all employees equal is not an important governmental purpose that should entail drastically impairing and altering public corporation employees, previously negotiated and contracted rights. If equality were the real motive, every single employee serving the Government should have their benefits and salaries adjusted, not just public corporation employees. Such a measure raises the alarming question of whether or not the purpose of this law is nothing more than allowing the Government of the Commonwealth to default on their legally binding obligations; escaping their obligation, for example, to pay the excess days accumulated by employees, or granting them the opportunity to enjoy such days, without the risk of losing them. "Thus, a State cannot refuse to meet its legitimate financial obligations simply because it would prefer to spend the money to promote the public good rather than the private welfare of its creditors."[16]

34. Even if the impairment of the contract served an actual important public purpose, such a measure cannot prove to be a reasonable and necessary impairment. For it to satisfy this requirement, it would have to be the only way in which the government can actually save

---

[14] United Automobile, Aerospace, Agricultural Implement Workers Of America International Union, et al v. Fortuño, 633 F.3d 37, 41-43 (2011); U.S. Trust Co. of New York v. New Jersey, 431 U.S. 25-26 (1977).
[15] Act Num. 26, "Equity in Fringe Benefits for all Public Employees", Preamble, p.11.
[16] U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1, 29 (1977).

money and have a significant impact in restoring and helping the fiscal crisis the Commonwealth is going through.

35. Thus, the Defendants' actions cannot withstand the Contract Clause two-prong test, making its actions unconstitutional and illegal. Leading to the conclusion that any budget or fiscal plan that adopts these measures or laws is illegal and unconstitutional by association.

36. By means of Public Law 447, after the President of the United States had declared that the Constitution of the Commonwealth of Puerto Rico conformed fully with Public Law 600 and the Constitution of the United States, the United States Congress approved the Puerto Rico Constitution with two amendments, on of required that any further amendments to such constitution comply with Public Law 447, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600.

37. Collective Bargaining is a right recognized by Article II Section 17 of the Constitution of the Commonwealth of Puerto Rico which is a federal law (public law):

> Section 17. Persons employed by private businesses, enterprises and individual employers and by **agencies or instrumentalities of the government operating as private businesses or enterprises**, shall have the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare. [Emphasis added]

38. The right to collective bargaining for the employees of the CFSE, as a public corporation that operates as private business, as recognized in the Puerto Rico Constitution, became an act of the United States Congress when Congressional approval of the Puerto Rico Constitution was granted by means of Public Law 447.

39. The above-mentioned acts, by vacating or eliminating the labor rights and benefits already negotiated under the CBA's, and eliminating the right to negotiate the clauses impaired by

such legislation, have violated Plaintiffs members' right to collective bargaining, recognized

under the Constitution of the Commonwealth of Puerto Rico.

40. PROMESA specifically requires in its Section 201(b)(1)(A),(B),(G),(N)[17] that any

fiscal plan must:

(A) provide for estimates of revenues and expenditures in conformance with
agreed accounting standards and be based on—

applicable laws; or
specific bills that require enactment in order to reasonably achieve the projections
of the Fiscal Plan;

**(B) ensure the funding of all essential public services**;
[…]

(G) enable the achievement of fiscal targets;

[…]

(N) respect the relative lawful priorities or lawful liens, as may be applicable, in
the constitution, other laws, or agreements of a covered territory or covered
territorial instrumentality in effect prior to the date of enactment of this Act.
[Emphasis added]

41. The Commonwealth's New Fiscal Plan embraces and makes part of its reform measures,

the unconstitutional laws previously mentioned in this Complaint. It specifically adopts,

among other, the employee mobilization policy, uniform fringe benefits, and the

elimination of vacation and sick days liquidations. All of these, as previously explained,

violate the CBA's, the Contract Clause and the Constitution of the Commonwealth of

Puerto Rico. According to the introduction of this New Fiscal Plan, the CFSE is a major

entity covered by the Commonwealth's New Fiscal Plan.[18] Nonetheless, this New Fiscal

Plan incorporates laws that have a negative effect on the CFSE and that actually impair

---

[17] 48 U.S.C. §§ 2141(b)(1)(A),(B),(G),(N).
[18] Commonwealth Fiscal Plan, "Major Entities Not Covered by the Fiscal Plan", p.6.

its CBA's. As such, by including this legislation in its reform measures, the Commonwealth and the FOMB acted in violation of the U.S. Constitution, the Commonwealth's Constitution and PROMESA thus, making the Fiscal Plan unconstitutional.

42. The CBA's are impaired through the enactment and adoption of the above-mentioned legislation, and by adopting and incorporating these laws into their reform measures, the Fiscal Plan in turn, violates the Constitution of the United States, the Commonwealth's Constitution, and PROMESA. Through the approval and certification of the above-mentioned measures the FOMB became complicit in the impairment of the CBA's and in the violation of the Contract Clause of the Constitution of the United States and the right to Collective Bargaining, recognized under the Commonwealth's Constitution.

43. For all the above stated reasons, allowing the Fiscal Plan to continue without making the necessary and constitutional corrections would equal a gross violation not only of PROMESA but also of the contractual rights of Plaintiffs' members, and the Constitutions of the U.S. and of the Commonwealth of Puerto Rico. Furthermore, it seriously encumbers the possibility of reversing the country's continuing economic contraction, since taking from the members of the Union of Employees and the Physicians Union their legally acquired benefits would have a negative effect on the employees, and a devastating outcome on the labor productivity that the CFSE so desperately relies on. It will in turn, make economic recovery an even more tortuous and tough climb for these members, their families, the CFSE, and the Commonwealth.

44. The latter impair the goals of PROMESA of generating an economy capable of repaying the debt of the Commonwealth, creating financial stability, and sustaining

economic growth. In short, allowing the New Fiscal Plan to continue as it is, would create a serious risk of completely destabilizing the CFSE, event from which it cannot be assured it can recover from.

45. According to sections 104 (j) and 312 of PROMESA[19], as part of the Title III case, the FOMB, may file a plan of adjustment of the debts in a Title III. However, the FOMB may file the plan of adjustment of debts only after the issuing of a certification that is consistent with the applicable certified Fiscal Plan.

46. The Fiscal Plan is in violation of PROMESA, the Constitution of the United States and of the Commonwealth of Puerto Rico. Unless it is recast to no longer contain illegal and unconstitutional measures and as to comply with the requirements herein stated, it cannot be treated as a valid fiscal plan. The confirmation of a plan of adjustment of debt is not possible if it is based on an unconstitutional fiscal plan. Therefore, the lack of compliance with the previously stated requirements makes it impossible to confirm a plan of adjustments of debts according to Section 314 of PROMESA.[20]

## II. THE PARTIES

47. Plaintiff, Hermandad de Empleados del Fondo del Seguro del Estado, Inc., also known as Unión de Empleados de la Corporación del Fondo del Seguro del Estado, (the "Union of Employees"), is a labor union created as a corporation under the Laws of the Commonwealth of Puerto Rico, with its principal place of business at San Juan, Puerto Rico. The Union of Employees has the exclusive and unlimited prerogative to represent all of its members in

---

[19] 48 U.S.C. §§ 2124(j) and 2172.
[20] 48 U.S.C. §§ 2174.

matters related to their rights and wellbeing. The Union of Employees represents approximately two thousand (2,000) members.

48. Plaintiff, Unión de Médicos de la Corporación del Fondo del Seguro del Estado Corp. (the "Physicians Union"), is a labor union, created as a corporation under the Laws of the Commonwealth of Puerto Rico, with its principal place of business at San Juan, Puerto Rico. The Physicians Union has the exclusive and unlimited prerogative to represent all of its members in matters related to their rights and wellbeing. The Physicians Union represents approximately one hundred and seventy (170) members.

49. Plaintiffs' members are employees of the CFSE, one of the Public Corporations covered by the New Fiscal Plan of the Commonwealth, certified by the FOMB on June 29, 2018, that is being currently executed by the Defendants.[21] Plaintiffs' members are also participants of the Employees' Retirement System of the Commonwealth, thus creditors of the Commonwealth, subject to the pension reform included in the Commonwealth's New Fiscal Plan.[22]

50. The Union of Employees and the Physicians Union members' collective bargaining agreements and/or labor rights and benefits have been or are in imminent risk of being impaired by the actions of the Defendants.

51. Defendant, the Commonwealth of Puerto Rico, (the "Commonwealth"), is an unincorporated territory of the United States.[23]

52. Defendant, the Financial Oversight and Management Board for Puerto Rico, (the "FOMB"), was created under Section 101(b)(1) of PROMESA[24] as an "entity within

---

[21] June 29, 2018, Commonwealth New Fiscal Plan, pages 23, 68.
[22] *Id.*, pages 106-111.
[23] As a result of the infamous *Insular Cases*. See DeLima v. Bidwell, 182 U.S. 1, 200 (1901); Goetze v. United States, 182 U.S. 221, 221-22 (1901); Dooley v. United States, 182 U.S. 222, 236 (1901); Armstrong v. United States, 182 U.S. 243, 244 (1901); Downes v. Bidwell, 182 U.S. 244, 287 (1901); Huus v. New York & Porto Rico S.S. Co., 182 U.S. 392, 397 (1901); Dorr v. United States, 195 U.S. 138, 148 (1904).

the [Commonwealth] government", acting in this Title III case of PROMESA as representative of the Commonwealth.[25]

53. Defendant, State Insurance Fund Corporation (the "CFSE", for its acronym in Spanish), is a public instrumentality, the exclusive provider of insurance coverage for work related accidents, deaths, and illness suffered by workers in Puerto Rico, and one of the Public Corporations covered by the Fiscal Plan of the Commonwealth, certified by the FOMB on June 29, 2018.[26]

54. Defendant, Jesús M. Rodríguez Rosa (the "CFSE Administrator"), is the Administrator of the State Insurance Fund Corporation, and in that capacity is empowered to implement the CFSE's budget. Plaintiffs sue the CFSE Administrator in his official capacity.

55. Defendant, Hon. Ricardo Rosselló Nevares, ("Governor Rosselló"), is the Governor of the Commonwealth. Plaintiffs sue Governor Rosselló in his official capacity.

56. Defendant, Gerardo Portela Franco, (the "AAFAF Executive Director"), is the Executive Director of AAFAF and in that capacity is empowered to implement the Fiscal Plan and Budget, and the Fiscal Plan Act. Plaintiff sues the AAFAF Executive Director in his official capacity.

57. Defendant, Hon. Raúl Maldonado Gautier, (the "Secretary of Treasury"), is the Secretary of Treasury of the Commonwealth and in that capacity is empowered to implement the Fiscal Plan, and the Fiscal Plan Act. Plaintiffs sue the Secretary of Treasury in his official capacity.

---

[24] 48 U.S.C. § 2121(b)(1).
[25] 48 U.S.C. § 2121(c)(1).
[26] June 29, 2018, Commonwealth New Fiscal Plan, pages 23, 68.

58. Defendant, José Iván Marrero Rosado, (the "OMB Director"), is the Director of the Commonwealth's Office of Management and Budget (the "OMB") and in that capacity is empowered to implement the Fiscal Plans. Plaintiffs sue the OMB's Director in his official capacity.

59. Defendant, Natalie A. Jaresko, (the "OB Executive Director"), is the Executive Director of the Oversight Board. The Oversight Board Executive Director participated in the Oversight Board's certification of the Board Fiscal Plan and Board Budget. The Oversight Board Executive Director is empowered to oversee and monitor the implementation of the Fiscal Plan and Budget. Plaintiffs sue the Oversight Board Executive Director, and any successors thereto, solely in their official capacities. The Plaintiffs do not seek damages with respect to the Oversight Board Executive Director.

### III. JURISDICTION AND VENUE OF THIS HONORABLE COURT

60. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA and the U.S. Constitution.

61. In addition, this Court has jurisdiction under Section 106(a) of PROMESA, which grants jurisdiction to this Court over "any action against the Oversight Board, and any action otherwise arising out of [PROMESA], in whole or in part".[27]

62. This Court also has jurisdiction over this matter pursuant to PROMESA section 306(a)(2) because this action relates to the Commonwealth's PROMESA Title III case, which has the principal purpose of adjusting the financial liabilities of the Commonwealth, see 48 U.S.C. § 2166(a)(2), and because any plan of adjustment in

---

[27] 48 U.S.C. § 2126(a).

the Commonwealth's Title III case must be consistent with a certified fiscal plan, see PROMESA § 314(b)(7); 48 U.S.C. § 2174(b)(7).

63. Plaintiffs seek a declaration and related relief pursuant to 28 U.S.C. §§ 2201 and 2202. An actual and justiciable controversy has arisen and exists between the parties with respect to the issues and claims alleged herein.

64. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and Section 310 of PROMESA, which provides "The Federal Rules of Bankruptcy Procedure shall apply to a case under [Title III of PROMESA] and to all civil proceedings arising in or related to cases under [Title III of PROMESA]".[28]

65. Venue is proper in this District under Section 307 of PROMESA.[29]

66. Plaintiffs have standing to bring this adversary proceeding, as parties in interest in the above-captioned Title III case according to Section 301 of PROMESA[30], which incorporates Section 1109 of the Bankruptcy Code.[31] Plaintiffs' members are employees of the CFSE, one of the Public Corporations covered by the New Fiscal Plan of the Commonwealth, certified by the FOMB on June 29, 2018, that is being currently executed by the Defendants.[32] Plaintiffs' members are also participants of the Employees' Retirement System of the Commonwealth, thus creditors of the Commonwealth, subject to the pension reform included in the Commonwealth's New Fiscal Plan.[33] By impairing the CFSE employees' labor rights and benefits, Defendants have also directly affected

---

[28] 48 U.S.C. § 2170; Fed. R. Bankr. P. 7001.
[29] 48 U.S.C. § 2167.
[30] 48 U.S.C. §§ 2161.
[31] 11 U.S.C. 1109.
[32] June 29, 2018, Commonwealth New Fiscal Plan, pages 23, 68.
[33] *Id.*, pages 106-111.

Plaintiffs' member enrollment, reducing from approximately 2,181 in 2014 to 1,900 in 2018 the total affiliated members of the Union of Employees, and approximately 174 in 2014 to 119 in 2018, the total affiliated members of the Physicians Union. Plaintiffs' members suffered, are suffering or are in imminent danger of suffering an invasion of a legally protected interest, including a pecuniary interest, collective bargaining agreement and property (employment, salaries, bonuses, pensions and health plans), that is concrete and particularized, actual or imminent, not conjectural or hypothetical, and fairly traceable to the challenged conduct of defendants and likely to be redressed by a favorable judicial decision.

## IV. LEGAL AND FACTUAL BACKGROUND

## A. THE CFSE AS AN ESSENTIAL PUBLIC SERVICE PROVIDER

67. The State Insurance Fund Corporation, (the "CFSE" for its acronym in Spanish) was created by Law No. 45 of April 18, 1935, as amended, known as the Workmen Compensation Insurance Act (the "Act"). On October 29, 1992, the Act was amended by Law No. 83-1992 to convert the CFSE into a governmental corporation.[34]

68. The CFSE's organic law constitutes, without a doubt, one of the most relevant pieces of the Puerto Rican labor legislation. Throughout its eighty decades of existence, more than a hundred amendments have been incorporated into the statute aimed at tempering its provisions to the social and economic transformations experienced by the country.[35]

---

[34] State Insurance Fund Corporation, http://web.fondopr.com/es/la-corporacion/quienes-somos/trasfondo-historico (accessed July 21, 2018).
[35] State Insurance Fund Corporation http://web.fondopr.com/es/la-corporacion/quienes-somos/ley-num-45 (accessed July 21, 2018).

69. The CFSE adopted a corporate structure in order to provide the operations and services it offers with agility and efficiency.[36]

70. The CFSE is the exclusive provider of insurance coverage for work related accidents, deaths, and illness suffered by workers in Puerto Rico as a consequence of their employment.

71. The main purpose of the CFSE is to guarantee the constitutional right of every worker to be protected against risks to their health in employment, guaranteed by Section 16, Article II of the Constitution of the Commonwealth of Puerto Rico.[37]

72. Its main objective has been to promote the welfare of the working class by providing excellent medical services, prevention, rehabilitation and financial compensation in cases of work-related injuries, illness or death.[38]

73. The CFSE fulfills the social purpose of promoting the welfare of the working class of Puerto Rico through the fair provision of services to workers affected by accidents or occupational diseases.

74. The CFSE administers three basic areas:

   a. Compulsory employer insurance.

   b. Medical and rehabilitation services.

   c. The payment of economic compensation to the injured workers. [39]

---

[36] *Id.*
[37] Section 16. The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary-workday which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.
[38] State Insurance Fund Corporation, http://web.fondopr.com/es/la-corporacion/quienes-somos/trasfondo-historico (accessed July 21, 2018).
[39] *Id.*

75. The Work Injury Compensation System offered by the CFSE is complete and has a great variety of medical specialists and subspecialists who attend to their patients exclusively through the nine regional offices, intermediate dispensaries and in the Industrial Hospital.[40]

76. Similarly, the CFSE has the important mission of offering the employer a comprehensive worker insurance cover and immunity, at the most economic cost, and at the same time, provide effective services, so that injured workers can return to their jobs in the shortest period of time possible.[41]

77. In addition, it seeks to ensure that employers compensate, through the payment of premiums, their workers or their beneficiaries due to illness or death resulting from the occupation, as well as other types of injuries or death. The CFSE provides the methods to make this duty more effective, through the regulation and administration of the employer's insurance.

78. The CFSE also provides a defense to the employer against exposure to the risk of accidents and occupational diseases sources of claim for damages. The employer charges the premiums paid as normal operating expenses of the company. This function of the CFSE is a contribution to the stability and economic growth of the country.

79. The full protection of employees, employers and society against the risks of personal and economic damages caused by work accidents is undoubtedly an essential public service, indispensable in a modern society.

80. The CFSE is fiscally self-sufficient, not dependent to appropriations from the Commonwealth's General Fund for its operations.

---

[40] *Id.*
[41] *Id.*

81. By provision of law, the administrative expenses of the CFSE shall not exceed 22% of the total annual insurance premiums collected, guaranteeing a surplus at the end of each fiscal year.

82. In contrast, the Commonwealth approved a series of laws that have impaired the economic stability of the CFSE, requiring the corporation to transfer funds to other governmental agencies.[42] For example, the amounts transferred to other governmental instrumentalities were $107,903,822, during FY2014, and $106,755,532, during FY2015, leading the CFSE to a deficit at the end of the respective fiscal years, and forcing it to finance this deficiency with the return of its investment portfolio and with capital withdrawals from its reserve funds.[43]

83. The CFSE is an essential service for which the FOMB should ensure the funding, according to PROMESA Section 201 (b)(1)(B).[44]

84. The CFSE is one of the Public Corporations covered by the New Fiscal Plan of the Commonwealth, certified by the FOMB on June 29, 2018, which is being currently executed by the Commonwealth and the FOMB.[45]

85. The New Fiscal Plan does not include a definition of essential services.

86. The New Fiscal Plan fails to differentiate between essential and non-essential services.

87. The New Fiscal Plan fails to ensure the funding of the CFSE.


[Page space intentionally left blank.]

---

[42] Acts No. 45 of April 18, 1935, 243 of July 23, 1974, 66-2014, 73-2014, 78-2014, 105-2015.
[43] State Insurance Fund Basic Financial Statements and Required Supplementary Information, June 30, 2015.
[44] *Supra* § 2141.
[45] June 29, 2018, Commonwealth Fiscal Plan, pages 23, 68, .

## B. THE UNION OF EMPLOYEES, THE PHYSICIANS UNION AND THE COLLECTIVE BARGAINING AGREEMENTS

88. The Union of Employees was founded in 1963. Its members are responsible for the general operation of the services the CFSE provides. Its members include, but are not limited to actuaries, buyers, system analysts, dietitians, physical and occupational therapists, pharmacy technicians, carpenters, electricians, nurses, pharmacists, etc. The Union of Employees has the exclusive and unlimited prerogative to represent all of its members in matters related to their rights and wellbeing. The Union of Employees represents approximately one thousand and nine hundred (1,900) members.

89. The Union of Employees' job is to protect and defend CFSE's workers, as well as negotiate collective bargaining agreements on their behalf. The latest collective bargaining agreement ("CBA") is from the 2011-2015 period. (EXHIBIT A). The CBA was amended as part of a stipulation reached between the Union of Employees and the CFSE. These amendments were in effect until June 30, 2017.

90. The current CBA between the Union of Employees and CFSE is from 2011. Even though it was enacted with a lifespan lasting from July 2011 through June 2015, it has a provision which establishes that it will continue dictating the labor relations between the CFSE and the Union of Employees until a new collective bargaining agreement is negotiated and in effect.[46] Since no new collective agreement has been negotiated and established, the CBA is still valid and in full force.

91. The Physicians Union was founded in 1996 and incorporated in 2001. Its members are responsible for providing medical services to the injured workers served at the CFSE. The Physicians Union has the exclusive and unlimited prerogative to represent all of its

---

[46] UECFSE CBA, Art. 50, "Duration of the Collective Bargaining Agreement".

members in matters related to their rights and wellbeing. The Physicians Union currently represents approximately one hundred and nineteen (119) members.

92. The Physicians Union's job is to protect and defend CFSE's doctors, as well as negotiate collective bargaining agreements on their behalf. The latest collective bargaining agreement ("CBA") is from the 2002-2006 period. (EXHIBIT B).[47]

93. The current CBA between the Physicians Union and CFSE is from 2002. Even though it was enacted with a lifespan lasting from July 2002 through June 2006, it has a provision that establish Physicians Union until a new collective bargaining agreement is negotiated and in effect.[48] Since no new collective agreement has been negotiated and established, the CBA is still valid and in full force.

94. Collective bargaining agreements have always been a key instrument of the Government's public policy concerning industrial peace in the workplace and healthy labor relations between employers and employees.

> "Industrial peace, adequate and assured salaries for the employees, as well as the uninterrupted production of services and items, through collective bargaining, are essential factors for the economic development of Puerto Rico. The achievement of these purposes depends to the highest degree on the relationships between employers and employees being fair, friendly, mutually satisfactory, and that the supply of adequate means be provided for the peaceful resolution of employer-employee controversies. The terms and conditions of employment should be set through collective bargaining. To achieve such bargaining, employers and employees will have the right to associate with the organizations of their choosing. It is the Government's policy to eliminate the causes of certain labor disputes by promoting collective bargaining and establishing an adequate, efficient, and impartial court that implements this policy. All collective bargaining agreements in effect, and those that will be made in the future, are hereby declared instruments to promote the public policy of the Government of Puerto Rico in an effort to promote production to its maximum; and it is declared that as such, are coated in public interest. The exercising of rights and fulfillment of

---

[47] A motion requesting an extension of time to submit a certified translation of Exhibit B has been submitted on this same date.
[48] UMCFSE CBA, Art. 65, "Duration of the Collective Bargaining Agreement".

obligations of the parties in such collective bargaining agreements, are subject to the reasonable ruling necessary to achieve the public policy established in this subchapter."[49]

95. The latter policy of establishing collective bargaining as an important part of a government's public policy on labor relations has its equal in the federal sphere through the Taft-Hartley Act.[50]

96. The right to Collective Bargaining is also recognized under Article II Section 17 of the Constitution of the Commonwealth of Puerto Rico which is a federal law (Public Law 447 of 1952):

> Section 17. Persons employed by private businesses, enterprises and individual employers and by **agencies or instrumentalities of the government operating as private businesses or enterprises**, shall have the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare. [Emphasis added.]

97. Agreements such as the CBA's have the strategic purpose of creating a healthy work environment between the CFSE and the members of Union of Employees and the Physicians Union, who carry out a vital labor. Ensuring these employees that the risks taken are duly compensated.

98. Plaintiffs CBA's were willingly and freely entered into by Plaintiffs and the CFSE. As such, they are binding contracts that dictate the labor relations that shall exist amongst the CFSE and both labor unions. They cover everything from vacation and illness pay, training, employee classifications, job reclassifications, fringe benefits, licenses due to job accidents, employee suspensions, and dispute resolution, amongst other things. It is a very detailed and vast agreement that has been meticulously prepared by the parties.

---

[49] "Labor Relations Act of Puerto Rico", 29 L.P.R.A. sec. 62(2-5).
[50] Taft-Hartley Act, "Findings and declaration of policy", 29 U.S.C. § 151.

99. Such agreements are extremely important to the well-functioning of Plaintiffs' members and, as a result, the CFSE. These employees have bargained for very specific and important procedures, benefits, and licenses, as a result of them performing the jobs that represent the core of the services that the CFSE provides.

100. A vital aspect for the CFSE for providing health services to workers is the trend in productivity or labor efficiency of its employees, which long-term trend is towards growth.[51]

101. The Union of Employees and the Physicians Union's members render a vital day to day service for the CFSE and the people of the Commonwealth. Protecting their rights and hard earned benefits is the equivalent of assuring the CFSE´s stability.

102. At times like these, when the country is going through a difficult fiscal moment, it is important that the employees, who are the Government's and the country's economic backbone, be in good health, be motivated to keep doing their work, and keep the labor productivity stable.

103. Despite the fact that the employees play a vital role in the CFSE´s operational and financial health, the Government enacted legislation directed at undermining and impairing their labor rights and benefits that provide for the health and well-being of these workers. Such legislation was incorporated by Defendants in the Commonwealth's New Fiscal Plan, certified on June 29, 2018.[52]

---

[51] José I. Alameda & Alfredo González Martínez, "*Estimado del daño Económico a la Corporación del Fondo del Seguro del Estado y el Menoscabo de los Beneficios para Tres Organizaciones Laborales*", (2018), page 29.

[52] The "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act", Act Num. 66 of June 17, 2014. ("Act Num. 66-2014"). This law substantially alters the CBA by establishing a limit to the amount of vacation and illness days a member could accumulate and receive a monetary compensation for and eliminating numerous important economic and non-economic provisions of the CBA.

The "Act to Attend to the Economic, Fiscal, and Budget Crisis and to Guarantee the Functioning of the Government of Puerto Rico", Act Num. 3 of January 23, 2017, was enacted. ("Act Num. 3-2017"). It suspended all collective

104. The Certified New Fiscal Plan imposes a series of measures that impact all Plaintiffs'
members. These include: instituting a payroll freeze; standardizing healthcare provided to
government employees; asserting a hiring freeze with stringent requirements for backfilling
positions left open by attrition or workforce reduction; limiting paid holidays to 15 days
annually across all public employees; prohibiting carryover of sick and vacation days
between fiscal years; prohibiting any future liquidation of sick and vacation days; eliminating
the Christmas bonus for all public employees.[53]

105. The June 29th New Fiscal Plan is based on the assumption that the provisions of these Acts
and costs cuts will continue to be enforced through the duration of the New Fiscal Plan.[54]

106. The agency efficiency measures included in the June 29th New Fiscal Plan imposes the
CFSE a 315.7 million costs reduction through the five years of the Certified New Fiscal
Plan.[55]These measures will imminently impair Plaintiffs members' labor rights and benefits.

107. The impairment of the labor rights and benefits holds severe and negative
consequences for the Union of Employees, the Physicians Union members, the CFSE,

---

bargaining agreement provisions that were contrary to its clauses, suspended all non-economic clauses that had any
economic impact, whether it be direct or indirect, on the corporation budget, eliminated monetary compensations,
and imposed on public corporations the creation of a plan so employees would exhaust all excess vacation and sick
leave balance. This Act extended the lifespan of applicable provisions of Act 66-2014, such as Sections 11 and 17.

The "Administration and Transformation of the Human Resources of the Government of Puerto Rico Act", Act
Num. 8 of February 4, 2017. ("Act Num. 8-2017"). Its purpose is to make the Government the sole employer of all
public employees, allowing it to consolidate services, eliminate those which it understands are no longer needed,
create a unified system of job classifications, have a specific merit system applicable for all agencies and
corporations, and facilitate the transfer or movement of employees between agencies, without regard to what agency
or corporation an employee works for;

The, "Fiscal Plan Compliance Act", Act Num. 26 of April 29, 2017 ("Act Num. 26-2017"). This Act impaired
multiple important fringe benefits of employees. For example, it eliminates monetary compensation for excess
vacation and illness days; reduces the amount of days an employee can accrue of vacation or illness; eliminates any
and all monetary compensations; sets a time limit for the use of excess vacation or illness days. If this excess
balance is not used by the established date, they will be lost.
June 29, Commonwealth Fiscal Plan, pages 69-70.
[54] June 29, Commonwealth Fiscal Plan, pages 69-70.
[55] Id., page 89.

and the Commonwealth. It throws employees into a trustless, illegal, unsafe, and economically unstable environment. These Defedants' actions serve a harsh blow to the workforce that can only result in the diminishment of labor productivity. Therefore, it will impair an essential service that should be ensured, as provided by §201 of PROMESA.

108. Impairing or altering Plaintiffs' CBA's, which the Commonwealth's New Fiscal Plan do, submerges these employees in a trustless, illegal, economically unstable, and unsafe environment that only serves to create the ideal conditions for loss of labor productivity, thus impairing PROMESA's goal of achieving fiscal responsibility and growth.

109. By impairing the CFSE employees' labor rights and benefits, Defendants have also directly affected Plaintiffs' member enrollment, reducing from approximately 2,181 in 2014 to 1,900 in 2018 the total affiliated members of the Union of Employees, and approximately 174 in 2014 to 119 in 2018, the total affiliated members of the Physicians Union.

## C. ACT NUMBER 66-2014, ACT NUMBER 3-2017, ACT NUMBER 8-2017 AND ACT NUMBER 26-2017

110. In 2014, the Government of the Commonwealth passed the "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act", Act Num. 66 of June 17, 2014. ("Act. Num. 66"). [56]

111. This Act required all instrumentalities, entities, agencies and public corporations of the Commonwealth to reduce their operating expenses, specifically those related to payroll, among others.

112. This Act, which is applicable to the CFSE, had a negative impact and impaired CBA areas, such as employee transfer, vacation license and pay, illness license and pay, the monetary

---

[56] "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act", Act Num. 66 of June 17, 2014. ("Act Num. 66-2014").

compensation for the lack of use of vacation and illness licenses, and all other non-economic clauses that might have an economic impact on the corporation´s budget.

   a. Regarding employee transfer, "…the transfer and administrative detail of regular and transitory employees between positions, job classifications and levels, group of employees, appropriate units, **union units and nonunion units and vice versa**, among Entities of the Executive Branch[,] shall be allowed;…[a]**ny provision of law, regulation, covenant, agreement, or precept that is contrary to the provisions of this Chapter shall be suspended during the effective term thereof**; provided that there shall be full flexibility to make transfers and administrative details".[57] [Emphasis Supplied].

113. Among other things, this act established as an extraordinary monetary compensation, the following:[58]

   -"Cash liquidations of vacation leave accrued in excess in the case of final liquidations upon the employee's separation from public service. Provided, that during the effectiveness of this Act, the maximum of days subject to liquidation upon separation from service shall be sixty (60) days. Likewise, during the effectiveness of this Act, any public employee who accrues more than sixty (60) days at the end of each calendar year shall use such excess within the nearest date on or before the next six (6) months of the following calendar year. Provided further that every Entity of the Executive Branch shall pay, on or before August 31st of each year, any excess accrued as of the effective date of this Act and during the effectiveness thereof, when the employee has been

---

[57] Act Num. 66-2014, sec. 10.
[58] *Id*., sec. 11(c).

unable to use such leave within the term provided herein due to special service circumstances beyond his/her control. All that pertains to vacation leave, in the case of public corporations, shall be addressed as provided in Section 17 of this Act."[59]

- "Cash liquidations for sick leave accrued in excess in the case of liquidations upon the employee's separation from public service. Provided, that during the effectiveness of this Act, the maximum of days subject to liquidation upon separation from service shall be ninety (90) days. The employee shall keep the balance accrued as of the effective date of this Act, but accrual over such maximum balance shall be eliminated during the effective term of this Act. Provided further that, during the effectiveness of this Act, any excess annual accrual not used on or before December 31st of the corresponding year shall be forfeited. All that pertains to sick leave, in the case of public corporations, shall be addressed as provided in Section 17 of this Act."[60]

114. Lastly, Art. 17 provided the following specifically to public corporations:

-"…all public corporations shall suspend the financial terms negotiated under collective bargaining agreements in effect having a direct or indirect economic impact on the operations of the public corporation that aggravate the budget situation thereof or whose suspension is warranted to improve its budget situation."

-"…public corporations shall recognize to both union and nonunion employees their vacation leaves accrued as of the effective date of this Act; however, the

---

[59] *Id.*, sec. 11(c)(i).
[60] *Id.*, sec. 11(c)(ii), p.73.

excess thereof accrued before and during the effective term of this Act shall not be liquidated in cash. Public corporations shall establish a plan whereby both union and nonunion employees shall exhaust the leaves accrued in excess so that no excess is carried over after the effective term of this Act."

> -"... sick leaves accrued in excess by union or nonunion employees of the public corporations before the effective date of this Act shall be frozen at the pay rate in effect as of June 30th, 2014, and the liquidation thereof in cash shall only be made in the event of separation from public service. Any sick leaves accrued in excess after the effective date of this Act, as well as that accrued as of December 31st of each year, shall be used on or before June 30th of the year following the year in which it was accrued; after said date such balance shall be forfeited."

115. The lifespan of this Act was until the 1st of July, 2017.

116. The Act required the CFSE to transfer the savings resulting from its enactment to the "Special Education Student Services and Therapies Fund", from fiscal years 2015 through 2017.[61]

117. At the beginning of 2017, the Government enacted the "Act to Attend to the Economic, Fiscal, and Budget Crisis and to Guarantee the Functioning of the Government of Puerto Rico", Act Number 3 of January 23, 2017.[62] ("Act Num. 3"). The provisions of this Act are applicable to the CFSE. This act, like Act Num. 66, impaired, among other benefits and rights, the vacation and illness pay and liquidation and all non-economic clauses that are

---

[61] Id., sec. 18.
[62] "Act to Attend to the Economic, Fiscal, and Budget Crisis and to Guarantee the Functioning of the Government of Puerto Rico", Act Num. 3 of January 23, 2017, was enacted.[62] ("Act Num. 3-2017").

thought to have an adverse impact on the corporation's budget. The following are examples of changes implemented by this law that have an adverse effect on the CBA:

    a.  Any and all collective bargaining agreement articles, ruling, law, or administrative disposition or clause therein that is contrary to or interferes with what is here established, is understood to be suspended during the lifespan of this law.[63]

    b.  There will be no increase in economic benefits nor will any extraordinary monetary compensation be given.[64]

    c.  Every agency must develop and implement immediately a plan to reduce the accumulation of vacation days in excess of 60 days. The public service employee, who accumulates more than 60 days at the end of the natural year, must enjoy the excess days at the nearest date during or before the following six months of the next natural year. [65]

    d.  During the lifespan of this law, all public corporations must suspend all non-economic clauses that have any economic impact, whether it be direct or indirect, on the operations of the corporation, and which serve to worsen the budget of such corporation or that its suspension is necessary to alleviate the budget situation.

        The public corporations will recognize employees' vacation balances but will not be allowed to liquidate in cash the excess balance. The corporations must establish a plan for employees to exhaust their

---

[63] Act Num. 3-2017, art. 6.
[64] *Id.*, art. 7.
[65] *Id.*, art. 12.

vacations pay so that by the end of the lifespan of this law no excess balances are available.

In regard to illness days, the excess days will be frozen in accordance with the existing salary on June 30, 2014. Excess days will only be liquidated in cash if the employee is no longer in the public service. The excess sick days that are accumulated after this law comes into effect, as well as the excess that is accumulated by the 31st of each year, must be enjoyed by June 30 of the next year, each year. After this date, the excess days are lost.[66]

118. **According to its Article 4, the measures taken in this Act will be in force until July 1, 2021, unless a set of specific requisites are met on any previous Fiscal Year.[67]**

119. The Act requires the CFSE to transfer the savings resulting from its enactment to the "Special Education Student Services and Therapies Fund", from fiscal years 2017 through 2021.[68]

120. Afterwards came the "Administration and Transformation of the Human Resources of the Government of Puerto Rico Act", Act Number 8 of February 4, 2017.[69] ("Act Num. 8"). According to the Preamble of this law, the fact that the Government has allowed its agencies to be their own individual administrators has led through the years to an excessive amount of growth of the governmental apparatus. This growth has led to excess bureaucracy, different pay grades for employees that allegedly carry out the same duties

---

[66] *Id.*, art. 14.
[67] *Id.*, art. 4.
[68] *Id.*, art. 15.
[69] "Administration and Transformation of the Human Resources of the Government of Puerto Rico Act", Act Num. 8 of February 4, 2017.[69] ("Act Num. 8-2017").

and duplicity in the services the agencies provide, among other things. The Government has become decentralized, with each agency having its own structure. This in turn has led to excess money being spent. This law, according to its Preamble, is a response to such problems. Its purpose is to make the Government the sole employer of all public employees, this way it can consolidate services, eliminate those which it understands are no longer needed, create a unified system of job classifications, have a specific merit system applicable for all agencies, and facilitate the transfer or movement of employees between agencies. The following are ways in which it alters the actual CBA:

   a. According to Act Num. 8, any collective bargaining agreement that was created before this law and that is still in place, will be respected. [70] Yet for the Government to be able to freely move employees around between agencies and public corporations and to establish a unified merit system, certain changes have to be made that will alter the existing CBA.

   b. This law demands that a unified system of job classifications be established, without regard to what agency an employee works for, as a way to make it easier for the Government to move employees around between agencies and public corporations. [71] The CFSE offers a very specific and unique service that is not performed by other agencies. There is no other agency with whom to compare the jobs at hand. The Government´s unification of job classifications or the creation of new job classifications would interfere with those that have been agreed

---

[70] Act Num. 8, art. 5, sec. 5.2.
[71] *Id.*, art.2, sec. 2.1(4), p.6 & art. 6, sec. 6.2.

upon by the CFSE and the UECFSE, the UMCFSE and the AEG, who, it should be noted, are the most qualified to establish a classification of a job due to the nature of the tasks performed by these employees.

c. Act Num. 8 allows the Government to freely move or transfer employees between agencies and public corporations and vice versa.[72] This will affect the collective bargaining unit since each one has specific duties assigned to them that distinguish them from one other and restrain them from representing other units.

d. Every agency and public corporation will have to follow a specific merit system that will be the base for any promotion, demotion, employment, training, transfer, or retention of an employee.[73] A standard unified system without regard to the agreements and negotiations of the employee's collective bargaining agreement.

121. Lastly, the "Fiscal Plan Compliance Act", Act Number 26 of April 29, 2017 ("Act Num. 26"),[74] came into effect and significantly altered the CBA, further stripping the CFSE employees of their contractual rights. These are some of the most significant changes:

a. It eliminates the monetary compensation for excess vacation and illness days.[75]

b. "…all public employees shall be entitled to accumulate vacation leave, at a rate of one and one-fourth (1 1/4) days for every month of service."[76]

---

[72] *Id.*, art.2, sec. 2.1(13); art.5, sec. 5.2; art. 6, sec. 6.4(2),(4); art.6, sec. 6.6(10)(2).
[73] *Id.*, art.2, sec. 2.2(3); art.2, sec.2.2(5); art.5, sec. 5.2; art.6, sec. 6.1.
[74] "Fiscal Plan Compliance Act", Act Num. 26 of April 29, 2017 ("Act Num. 26-2017").
[75] Act Num. 26, Introduction.

    c.   "Vacation leave may accumulate up to a maximum of sixty (60) workdays."[77]

    d.   "…As a general standard, [vacations] must be enjoyed during the natural year in which it was accumulated…[t]he lack of use of the vacation license has to be due to a job necessity that comes as a request of the company and it must be in writing.[78]

    e.   "Employees that are unable to enjoy their vacation leave during the determined natural year due to service needs, evidenced in writing and at the request of the agency or public instrumentality, are exempted from the provisions of subsection (e) of this Article. In this case, the agency or public instrumentality is obligated to make the necessary adjustments for the employee to enjoy at least the excess of accumulated leave over the limit of sixty (60) days, on the nearest possible date, within the term of the first three (3) months of the following natural year."[79]

    f.   "The agency or public instrumentality is obligated to provide for the enjoyment of the accumulated vacation leave, prior to the processing of any severance that constitutes a total and absolute disassociation from service and the processing of a transfer to provide services in another agency or public instrumentality."[80]

---

[76] *Id.*, Art. 2.04(1)(a).
[77] *Id.*, Art. 2.04(1)(c).
[78] *Id.*, Art. 2.04(1)(d).
[79] *Id.*, Art. 2.04(1)(g).
[80] *Id.*, Art. 2.04(1)(h).

g. "All employees who have been hired by the Government of Puerto Rico prior to Law 8-2017… entered into effect shall be entitled to accumulating sick leave at the rate of one and a half (1.5) days for every month of service."[81]

h. "Sick leave may be accumulated up to a maximum of ninety (90) workdays at the end of any natural year…"[82]

i. Any excess accumulated beyond the 60 vacation days and the 90 sick days will be lost by the end of the natural year. Denying the employee, the use of these excess days or a monetary compensation.

122. The Government of Puerto Rico has, through the approval and adoption of the abovementioned laws, and in an attempt to comply with the FOMB, retroactively destroyed and impaired the CBA's. The adverse effect is such, that they render the CBA's almost useless. With their actions, they have blatantly violated the Constitution of the United States, the Constitution of the Commonwealth of Puerto Rico, and PROMESA.

123. By impairing the CFSE's employees labor rights and benefits, Defendants have also directly affected Plaintiffs' member enrollment, reducing from approximately 2,181 in 2014 to 1900 in 2018 the number of affiliated members of the Union of Employees, and approximately 174 in 2014 to 119 in 2018, the total affiliated members of the Physicians Union.

[Page space intentionally left blank.]

---

[81] *Id.*, Art. 2.04(2)(a).
[82] *Id.*, Art. 2.04(2)(f).

### D. THE UNION OF EMPLOYEES, THE PHYSICIANS UNION CBA's, AND THEIR IMPAIRED CLAUSES

124. As stated before, the CBA's are binding contracts between Plaintiffs and the CFSE that dictate the labor relations between the parties. Despite the existing legal obligation of upholding such contract and abstaining from impairing it, the CFSE and the Commonwealth have continually tried to undermine it. The Government of the Commonwealth has passed specific laws that impair and alter the CBA. Many of them as a response to the fiscal measures required from the Commonwealth by the FOMB.

125. The major aspects of the CBA being altered are, vacation license, illness license, employee mobility or transfer within or out of the corporation, the rights and protection of the appropriate unit, bonuses, and job classifications.

126. The following constitute the majority of articles of the CBA's impaired for each labor organization:

**THE UNION OF EMPLOYEES' CBA** (Exhibit A)**:**

a. **Statement of Principles**: collective bargaining is an effective vehicle for dialogue and reason, a means for social peace which makes the parties equal, and a form of interrelationship, recognize the need to promote and maintain the good relationship existing between the personnel and the administration of the CORPORATION as the most effective way in which to maintain a peaceful employer-employee relationship and achieve the improvement of the services provided by the same. The efficiency, productivity, punctuality and behavior of employees are factors inherent in promoting and maintaining the general welfare of the community.

This Clause is totally impaired by Act 66-2014, Act 3-2017, Act 8-2017 and Act 26-2017: These Acts impair the benefits negotiated by the Union of Employees on behalf

of its members and eliminate or substantially limit the powers and faculties of negotiation of the Union of Employees, statutorily recognized in our jurisdiction, that are also recognized under Section 17, Article II of the Constitution of the Commonwealth of Puerto Rico.

b. **Art. 2 – Recognition**: This Article states the acknowledgment by the CFSE of the Union of Employees as the exclusive representative of all workers included in the appropriate unit for purposes of negotiations and collective bargaining in relation to wages, hours and general working conditions.

This Article is totally impaired by Act 66-2014, Act 3-2017, Act 8-2017 and Act 26-2017: These Acts impair the benefits negotiated by the Union of Employees on behalf of its members and eliminates or substantially limits the powers and faculties of negotiation of the Union of Employees, statutorily recognized in our jurisdiction, that are also recognized under Section 17, Article II of the Constitution of the Commonwealth of Puerto Rico.

c. **Art. 9 – Appointments, Promotions and Reclassifications**: Among other provisions, this Article details how the employees included in the appropriate unit shall be classified (regular, special regular, and non-regular), the process for granting the appointments, promotions and reclassifications.

This Article is impaired by Sections 9, 10, 11 (b)(i) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts allow the CFSE to fill vacancies of positions included in the appropriate unit disregarding the process established in the CBA;[83] allow the CFSE

---

[83] Act 66-2014, sec. 9; Act 3-2017 Art. 10.

to transfer employees disregarding the provisions of the CBA;[84] eliminate salary raises and other fringe benefits;[85] eliminate the prohibition of assigning or reassigning tasks of the appropriate unit,[86] and the subdivision of tasks or assignment of work schedules of the appropriate unit;[87] eliminate the prohibition of subcontracting of operation and maintenance jobs or duties of the appropriate unit and all the related provisions.[88]

This Article is impaired by Sections 5.2 and 6.4 - 4. of Act 8-2017: This Act allows the CFSE to transfer employees from and to the appropriate unit disregarding the provisions of the CBA.

d. **Art. 12 – Educational Benefits**: This Article offers workers the benefit of payment of tuition in improvement courses directly related to their functions, also in Associate Degree, Bachelor, Master or Doctorate studies up to a maximum of 48 credits to the employees of the appropriate unit. The specialization or concentration of the studies must be related to the classes of positions existing in the Corporation.

This Article is impaired by Sections 11(d) (v) and 17(a), (b) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: These Acts eliminate all training programs established in Article 12.

e. **Art. 13 – Study Leaves and Grants:** This Article grants employees licenses for studies of improvement of any type with salary or without salary.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: This Acts eliminate paid leaves and time off without

---

[84] Act 66-2014, sec.10; Act 3-2017 Art. 10.
[85] Act 66-2014, sec.11; Act 3-2017 Art. 10.
[86] Act 66-2014, sec. 17(d); Act 3-2017 Art. 14.
[87] Act 66-2014, sec. 17(e); Act 3-2017 Art. 14.
[88] Act 66-2014, sec. 17(f); Act 3-2017 Art. 14.

charge to any leave and paid leaves that are not statutorily established. This Article is impaired by Sections 11(d) (v) and 17(a), (b) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: These Acts eliminate all grants established in Article 13.

This Article is impaired by Article 2.09 of Act 26-2017: This Act does not provide for compensatory time for study leaves.

f. **Art. 15 – Leave for Union Officials and Representatives**: This Article provides for a leave with pay with no charge to accumulated vacation leaves for Union officers or representatives, under several circumstances.

This Article is impaired by Section 11(c)(vi)-(vii) of Act 66-2014, and Article 7 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6.-7. of Act 26-2017: This Act does not provide for a paid leave for union officials and representatives.

g. **Art. 16 – Holidays**: This Article provides employees at least 21 holidays with full pay for all regular work hours and free time with pay, and a compensation of double the rate of their regular hourly rate, in addition to their regular salary, when the employees are required to work during said holidays.

This Article is impaired by Article 2.05 of Act 26-2017: This Act reduces the total holidays to 15 days.

This Article is impaired by Article 2.09 of Act 26-2017: This Act reduces to a rate of time and a half the compensation for services rendered on holidays.

h. **Art. 18 – Union Delegates**: This Article provides for a leave with pay with no charge to accumulated vacation leaves for union delegates, when it is necessary for them to carry

out official union tasks as a result of special jobs assigned by the President or to consider complaints.

This Article is impaired by Section 11(c)(vi)-(vii) of Act 66-2014, and Article 7 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6.-7. of Act 26-2017: This Act does not provide for a paid leave for union delegates, officials and representatives.

i. **Art. 19, Section One – Annual Leave (Vacation)**: Among other provisions, this section grants accumulation of vacation leave of 2 1/2 days per month, up to 30 working days per year and 3 days a month in the employee's last year of work; liquidation of days accrued in excess of 90 days to the month of January of each year; liquidation of accumulated days to the employee's heirs; settlement of accumulated days at the time of the separation of work.

This Article is impaired by Section 17 of Act 66-2014[89] and Article 14 of Act 3-2017[90]: Although stating that public corporations shall recognize to both union and nonunion employees their vacation leaves accrued as of its effective date, this Acts eliminate cash liquidations of vacations accrued.

This Article is impaired by Articles 2.04 and 2.10 of Act 26-2017: This Act reduces to a maximum of fifteen (15) days the annual vacation leave.[91] This Act eliminates cash

---

[89] Act. Núm. 66-2014 sec.17(c)(i).
[90] Act Núm. 3-2017 Art. 14.
[91] Act Num. 26, Article 2.04 - 1. - a.

liquidations of vacations accrued and limits to a maximum of fifty (50) days the vacation leave the instrumentality may grant to those employees who have accrued leave.[92]

j. **Art. 19, Section Two – Bereavement Leave**: This section grants an accumulation of funeral license in case of death of a family member of employees: 5 days: for spouse, children, father, mother; 3 days: for brother, uncle, grandfather, grandson, father-in-law, son-in-law, daughter-in-law, nephew; 2 days: for brother-in-law.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 14 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6., 7. of Act 26-2017: This Act eliminates the paid family funeral leave.

k. **Art. 19, Section Four--Maternity Leave**: This section grants a maternity leave of 6 weeks before delivery and 6 weeks after delivery. It is extended to adoptive mothers.

This Article is impaired by Articles 2.04-3: This act reduces to 4 weeks the maternity leave.

l. **Art. 19, Section Six – Sick Leave**:  This section grants sick leave accrual of 1 1/2 days, and 2 days per month in the employee's last year of work. The days accrued in excess of 120 would be liquidated on February 15 of each calendar year. At the time of the separation of service, the accrued days are settled. Also grants liquidation of accumulated days to the heirs.

This Article is impaired by Sections 11(c)(ii) and 17(i) of Act 66-2014 and Article 14 of Act 3-2017: Although stating that public corporations shall recognize to both union and

---

[92] *Id.* Article 2.04 - 1. - i., 2.10.

nonunion employees their sick leaves accrued as of its effective date, this Acts eliminate cash liquidations of vacations accrued. Act 66-2014 freezes sick leaves accrued in excess at the pay rate in effect at June 30, 2014 and forfeits any balance of sick leave accrued in excess after the effective date of the act, as well as that accrued as of December 31 of each year and not used on or before June 30 of the following year in which It was accrued.[93] This Act also limits to a maximum of ninety (90) days the sick leave accrued that may be subject to liquidation upon separation from service.[94]

This Article is impaired by Articles 2.04- 2.- a., f.-g. and 2.10 of Act 26-2017: This Act reduces to a maximum of eighteen (18) days annual sick leave and to a maximum of ninety (90) the sick leave days that can be accrued. This Act eliminates cash liquidations of sick leave accrued.[95]

m. **Art. 19, Section Eleven--School Leave**: This section grants its employees, without a reduction of pay or deducting leave, eight (8) working hours during each school semester when at the request of school authorities or on their own initiative they go to the educational institutions where their children study to ask about their behavior and scholastic performance.

This Article is impaired by Article 2.04 - 7. E. of Act 26-2017: This Act reduces to 4 hours the paid School Leave.

n. **Art. 19, Section Nineteen: Catastrophic Illness and/or Terminal Illness Leave:** This section grants employees, in the event of catastrophic illness, time without charging

---

[93] Act 66-2014 sec.17 (i).
[94] *Id*., sec. 11 (ii).
[95] Act 26-2017, Article 2.10.

another type of leave for specific treatment and/or appointments with doctors and/or laboratories.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 14 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6., 7. of Act 26-2017: This Act does not provide for a catastrophic illness and/or terminal illness leave.

o. **Art. 19, Section Twenty: Special Leave to Renew Professional License:** This section grants employees up to a maximum of two (2) working hours a year, without charge to any leave and with pay, to take necessary steps for purposes of renewing professional license to employees in the health sector and to qualified electricians so required to perform their duties.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 14 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6., 7. of Act 26-2017: This Act does not provide for a leave to renew professional license.

p. **Art. 19, Section Twenty-Three-- Leave to Attend University Graduation:** This section grants employees one (1) day without charge to leave or reduce any salary whatsoever for student employees to attend their university graduation.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 14 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6., 7. of Act 26-2017: This Act does not provide for a leave to attend university graduation.

q. **Art. 19** --**Vehicle Financing:** This article grants vehicle financing to certain employees.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

r. **Art. 25 – Transfers**: This article provides for a payment of a sum of one thousand dollars ($1,000.00) to employees who are permanently transferred from one region or municipality to another if the transfer is based on service need and is not at the request of the employee.

This Article is impaired by Section 10 of Act 66-2014: This Act allows the transfer of the employee without the reimbursement of transfer expenses, and the transportation and the corresponding per diem allowance to allow the employee to relate to his work.

This Article is impaired by Sections 5.2 and 6.4 - 4. of Act 8-2017: This Act allows the transfer of the employee without the reimbursement of transfer expenses, and the transportation and the corresponding per diem allowance to allow the employee to relate to his work.

This Article is impaired by Article 2.13 of Act 26-2017: This Act allows the transfer of the employee without the reimbursement of transfer expenses, and the transportation and the corresponding per diem allowance to allow the employee to relate to his work.

s. **Art. 28 – Uniform and Food and Travel Expenses**: This article provides, among other provisions, for a compensation to employees who the CFSE requires to use his or her

own car in official employment duties; a payment for uniforms, including shoes that are part of the uniform.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

t. **Art. 29 – General Dispositions**: This Article contain a series of general provisions, including the payment of funeral expenses in the event of death of an employee; a fund for sports, cultural and social Activity.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

u. **Art. 33 – Work Schedule**: Among other provisions, this Article defines the work day; establishes the working period in a work day and a work week and regular work hours; and; the hourly payment when required to work during the period set for having a meal.

This Article is impaired by Article 2.09 of Act 26-2017: This Act reduces to a rate of time and a half the compensation for services rendered in excess of regular daily or weekly hours, mealtime hours.

v. **Art. 35 –Work-Related Accident Leave**: This Article establishes a compensation for cases when a regular worker needs to be absent from work due to a work-related accident and on the advice of the doctor of the State Insurance Fund.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: These Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04- 6.-b.-2.-b., 7. of Act 26-2017: This Act does not provide for a compensation for work-related accident leaves.

w. **Art. 36 – Disability, Death or Retirement Benefits**: Among other provisions, this article provides for a payment of an occupational or non-occupational physical disability benefit to any employee who retires due to a disability and a compensation and pro-retirement salary differential no more than sixty (60) calendar days after the date of retirement of the employee.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

x. **Art. 38 – Christmas Bonus**: Among other provisions, this article grants a Christmas bonus equal to nine and a half percent (9 ½) of the annual salary earned by the employee, up to a maximum of thirty-five thousand dollars ($35,000).

This Article is impaired by Section 11(b)(iv),(c)(iii) of Act 66-2014 and Article 7 of Act 3-2017: This Acts limit the Christmas bonus to six hundred dollars ($600.00).

This Article is impaired by Article 2.08 of Act 26-2017: This law limits to six hundred dollars ($600.00) the amount of Christmas bonus that employees will be entitled to receive in each year during which they have rendered services to the Government of Puerto Rico during at least six (6) months.

y. **Art. 43 – Seniority Steps**: Among other provisions, this article provides for a seniority step to all members of the union who have provided uninterrupted service and remain in the appropriate unit.

This Article is impaired by Section 11(b)(i) of Act 66-2014 and Article 7 of Act 3-2017: These Acts eliminate salary raises.

z. **Art. 44 – Acknowledgment of Seniority**: Among other provisions, this article provides for incentive to all union members who provided uninterrupted services and stayed registered in the union.

This Article is impaired by Section 11(b)(i) of Act 66-2014 and Article 7 of Act 3-2017: These Acts eliminate salary raises.

aa. **Art. 45 – Family Health Plan**: This article provides for the participation of the union in the design and selection of the single Medical Plan to be negotiated for employees of the CFSE, through the Medical Plan Committee.

This Article is impaired by Section 11 (b)(ii) and 17 of Act 66-2014, and Article 7 of Act 3-2017: These Acts limit the employer contribution for health insurance.

This Article is impaired by Article 2.07 of Act 26-2017: This Act creates a uniform employer contribution to public corporation employees' health plan, giving AAFAF the power to negotiate and agree to cheaper insurance coverage with private insurers or under public coverage at the employee's choice in the Government as Single Employer or by agency or groups of agencies. The employer contribution would be determined by the Fiscal Plan Compliance Committee.

**THE PHYSICIANS UNION'S CBA (Exhibit B):**

a. **Statement of Principles**: The parties, aware of their respective obligations to the community, recognize the need to promote and maintain the good relations between the personnel and the Administration of the CORPORATION, as the most effective means to preserve the worker-employer peace and achieve the improvement of the services of

this CORPORATION, the efficiency of its employees and the welfare of the community in general.

This Clause is totally impaired by Act 66-2014, Act 3-2017, Act 8-2017 and Act 26-2017: These Acts impair the benefits negotiated by the Physicians Union on behalf of its members and eliminate or substantially limit the powers and faculties of negotiation of the Physicians Union, statutorily recognized in our jurisdiction, that are also recognized under Section 17, Article II of the Constitution of the Commonwealth of Puerto Rico.

b. **Art. 2 – Recognition**: This Article states the acknowledgment by the CFSE of the Physicians Union as the exclusive representative of all workers included in the appropriate unit for purposes of negotiations and collective bargaining in relation to wages, hours and general working conditions.

This Article is totally impaired by Act 66-2014, Act 3-2017, Act 8-2017 and Act 26-2017: These Acts impair the benefits negotiated by the Physicians Union on behalf of its members and eliminate or substantially limit the powers and faculties of negotiation of the Physicians Union, statutorily recognized in our jurisdiction, that are also recognized under Section 17, Article II of the Constitution of the Commonwealth of Puerto Rico.

c. **Arts. 13, 17, 64 – Appointments, Promotions and Reclassifications**: Among other provisions, these Articles detail how the employees included in the appropriate unit shall be classified (regular, special regular, and non-regular), the process for granting the appointments, promotions and reclassifications.

These Articles are impaired by Sections 9, 10, 11 (b)(i) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts allow the CFSE to fill vacancies of positions

included in the appropriate unit disregarding the process established in the CBA;[96] allow the CFSE to transfer employees disregarding the provisions of the CBA;[97] eliminate salary raises and other fringe benefits;[98] eliminate the prohibition of assigning or reassigning tasks of the appropriate unit,[99] and the subdivision of tasks or assignment of work schedules of the appropriate unit;[100] eliminate the prohibition of subcontracting of operation and maintenance jobs or duties of the appropriate unit and all the related provisions.[101]

These Articles are impaired by Sections 5.2 and 6.4 - 4. of Act 8-2017: This Act allows the CFSE to transfer employees from and to the appropriate unit disregarding the provisions of the CBA.

d. **Art. 35 – Educational Benefits**: This Article offers union members the benefit of payment of tuition in university institutions.

This Article is impaired by Sections 11(d) (v) and 17(a), (b) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: These Acts eliminate all training programs established in Article 35.

e. **Art. 32 – Study Leaves and Grants:** This Article grants union members licenses for studies of improvement of any type with salary or without salary.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established. This Article is

---

[96] Act 66-2014, sec. 9; Act 3-2017 Art. 10.
[97] Act 66-2014, sec. 10; Act 3-2017 Art. 10.
[98] Act 66-2014, sec. 11; Act 3-2017 Art. 10.
[99] Act 66- 2014, sec. §17(d); Act 3-2017 Art. 14.
[100] Act 66-2014, sec. 17(e); Act 3-2017 Art. 14.
[101] Act 66-2014, sec. 17(f); Act 3-2017 Art. 14.

impaired by Sections 11(d) (v) and 17(a), (b) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: These Acts eliminate all grants established in Article 32.

This Article is impaired by Article 2.09 of Act 26-2017: This Act does not provide for compensatory time for study leaves.

f. **Arts. 7, 8 – Leave for Union Officials and Representatives**: These Articles provide for a leave with pay with no charge to accumulated vacation leaves for Union officers or representatives, under several circumstances.

These Articles are impaired by Section 11(c)(vi)-(vii) of Act 66-2014, and Article 7 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

These Articles are impaired by Article 2.04 - 6.-7. of Act 26-2017: This Act does not provide for a paid leave for union officials and representatives.

g. **Art. 20 – Holidays**: This Article provides employees at least 20 holidays with full pay for all regular work hours and free time with pay, and a compensation of double the rate of their regular hourly rate, in addition to their regular salary, when the employees are required to work during said holidays.

This Article is impaired by Article 2.05 of Act 26-2017: This Act reduces the total holidays to 15 days.

This Article is impaired by Article 2.09 of Act 26-2017: This Act reduces to a rate of time and a half the compensation for services rendered on holidays.

h. **Art. 8 – Union Delegates**: This Article provides for a leave with pay with no charge to accumulated vacation leaves for union delegates, when it is necessary for them to carry

out official union tasks as a result of special jobs assigned by the President or to consider complaints.

This Article is impaired by Section 11(c)(vi)-(vii) of Act 66-2014, and Article 7 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6.-7. of Act 26-2017: This Act does not provide for a paid leave for union delegates, officials and representatives.

i. **Art. 21 – Vacation Leave**: Among other provisions, this section grants accumulation of vacation leave of 2 1/2 days per month, up to 25 working days per year and 3 days a month in the employee's last year of work; liquidation of days accrued in excess of 90 days to the month of January of each year; liquidation of accumulated days to the employee's heirs; settlement of accumulated days at the time of the separation of work.

This Article is impaired by Section 17 of Act 66-2014[102] and Article 14 of Act 3-2017[103]: Although stating that public corporations shall recognize to both union and nonunion employees their vacation leaves accrued as of its effective date, this Acts eliminate cash liquidations of vacations accrued.

This Article is impaired by Articles 2.04 and 2.10 of Act 26-2017: This Act reduces to a maximum of fifteen (15) days the annual vacation leave.[104] This Act eliminates cash liquidations of vacations accrued and limits to a maximum fifty (50) days the vacation leave the instrumentality may grant to those employees who have accrued leave.[105]

---

[102] Act. Núm. 66-2014 sec. 17(c)(i)
[103] Act Núm. 3-2017 Art. 14.
[104] Act Num. 26, Article 2.04 - 1. - a.
[105] *Id.* Article 2.04 - 1. - i., 2.10.

j. **Art. 30 – Bereavement Leave**: This section grants an accumulation of funeral license in case of death of a family member of employees: 5 days: for spouse, children, father, mother; 3 days: for brother, uncle, grandfather, grandson, father-in-law, son-in-law, daughter-in-law, nephew; 2 days: for brother-in-law.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 14 of Act 3-2017: This Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04 - 6., 7. of Act 26-2017: This Act eliminates the paid family funeral leave.

k. **Art. 27--Maternity Leave**: This section grants a maternity leave of 6 weeks before delivery and 6 weeks after delivery. It is extended to adoptive mothers.

This Article is impaired by Articles 2.04-3: This act reduces to 4 weeks the maternity leave.

l. **Art. 22 – Sick Leave**:  This section grants sick leave accrual of 1 1/2 days per month, without limitation The days accrued in excess of 90 would be liquidated during the month of January of each calendar year. At the time of the separation of service, the accrued days are settled. Also grants liquidation of accumulated days to the heirs.

This Article is impaired by Sections 11(c)(ii) and 17(i) of Act 66-2014 and Article 14 of Act 3-2017: Although stating that public corporations shall recognize to both union and nonunion employees their sick leaves accrued as of its effective date, this Acts eliminate cash liquidations of vacations accrued. Act 66-2014 freezes sick leaves accrued in excess at the pay rate in effect at June 30, 2014 and forfeits any balance of sick leave accrued in excess after the effective date of the act, as well as that accrued as of December 31 of

each year and not used on or before June 30 of the following year in which It was accrued.[106] This Act also limits to a maximum of ninety (90) days the sick leave accrued that may be subject to liquidation upon separation from service.[107]

This Article is impaired by Articles 2.04- 2.- a., f.-g. and 2.10 of Act 26-2017: This Act reduces to a maximum of eighteen (18) days annual sick leave and to a maximum of ninety (90) the sick leave days that can be accrued. This Act eliminates cash liquidations of sick leave accrued.[108]

m. **Art. 33 (6), -School Leave**: This section grants its employees, without a reduction of pay or deducting leave, up to 2 times during each school semester when at the request of school authorities or on their own initiative they go to the educational institutions where their children study to ask about their behavior and scholastic performance.

This Article is impaired by Article 2.04 - 7. E. of Act 26-2017: This Act reduces to 4 hours the paid School Leave.

n. **Art. 43 --Vehicle Financing:** This article grants vehicle financing to certain employees.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

o. **Art. 62 – Transfers**: This article provides for a payment of a sum of one thousand dollars ($1,000.00) to employees who are permanently transferred from one region or municipality to another if the transfer is based on service need and is not at the request of the employee.

---

[106] Act 66-2014 sec. 17 (i).
[107] *Id*. §11 (ii).
[108] Act 26-2017, Article 2.10.

This Article is impaired by Section 10 of Act 66-2014: This Act allows the transfer of the employee without the reimbursement of transfer expenses, and the transportation and the corresponding per diem allowance to allow the employee to relate to his work.

This Article is impaired by Sections 5.2 and 6.4 - 4. of Act 8-2017: This Act allows the transfer of the employee without the reimbursement of transfer expenses, and the transportation and the corresponding per diem allowance to allow the employee to relate to his work.

This Article is impaired by Article 2.13 of Act 26-2017: This Act allows the transfer of the employee without the reimbursement of transfer expenses, and the transportation and the corresponding per diem allowance to allow the employee to relate to his work.

p. **Art. 40, 41, 59 – Uniform and Food and Travel Expenses**: These articles provide, among other provisions, for a compensation to employees who the CFSE requires to use his or her own car in official employment duties; a payment for uniforms, including shoes that are part of the uniform.

These Articles are impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

q. **Art. 47 – General Dispositions**: This Article contain a series of general provisions, including the payment of funeral expenses in the event of death of an employee; a fund for sports, cultural and social Activity.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

r. **Art. 18 – Work Schedule**: Among other provisions, this Article defines the work day; establishes the working period in a work day and a work week and regular work hours; and; the hourly payment when required to work during the period set for having a meal.

This Article is impaired by Article 2.09 of Act 26-2017: This Act reduces to a rate of time and a half the compensation for services rendered in excess of regular daily or weekly hours, mealtime hours.

s. **Art. 24 –Work-Related Accident Leave**: This Article establishes a compensation for cases when a regular worker needs to be absent from work due to a work-related accident and on the advice of the doctor of the State Insurance Fund.

This Article is impaired by Sections 11(c)(vi)-(vii) and 17(c) of Act 66-2014, and Articles 7 and 14 of Act 3-2017: These Acts eliminate paid leaves and time off without charge to any leave and paid leaves that are not statutorily established.

This Article is impaired by Article 2.04- 6.-b.-2.-b., 7. of Act 26-2017: This Act does not provide for a compensation for work-related accident leaves.

t. **Art. 38 – Disability, Death or Retirement Benefits**: Among other provisions, this article provides for a payment of an occupational or non-occupational physical disability benefit to any employee who retires due to a disability and a compensation and pro-retirement salary differential no more than thirty (30) calendar days after the date of retirement of the employee.

This Article is impaired by Sections 11(b)(ii)-(iii) and 17 of Act 66-2014 and Articles 7 and 14 of Act 3-2017: These Acts limit or eliminate the employer contribution for fringe benefits.

u. **Art. 45 – Christmas Bonus**: Among other provisions, this article grants a Christmas bonus equal to eight and a half percent (8 ½) of the annual salary earned by the employee, up to a maximum of thirty-two thousand dollars ($32,000).

This Article is impaired by Section 11(b)(iv),(c)(iii) of Act 66-2014 and Article 7 of Act 3-2017: This Acts limit the Christmas bonus to six hundred dollars ($600.00).

This Article is impaired by Article 2.08 of Act 26-2017: This law limits to six hundred dollars ($600.00) the amount of Christmas bonus that employees will be entitled to receive in each year during which they have rendered services to the Government of Puerto Rico during at least six (6) months.

v. **Art. 64 – Seniority Steps**: Among other provisions, this article provides for a seniority step to all members of the union who have provided uninterrupted service and remain in the appropriate unit.

This Article is impaired by Section 11(b)(i) of Act 66-2014 and Article 7 of Act 3-2017: These Acts eliminate salary raises.

w. **Art. 48 – Acknowledgment of Seniority**: Among other provisions, this article provides for incentive to all union members who provided uninterrupted services and stayed registered in the union.

This Article is impaired by Section 11(b)(i) of Act 66-2014 and Article 7 of Act 3-2017: These Acts eliminate salary raises.

x. **Art. 36 – Family Health Plan**: This article provides for the participation of the union in the design and selection of the single Medical Plan to be negotiated for employees of the CFSE, through the Medical Plan Committee.

This Article is impaired by Section 11 (b)(ii) and 17 of Act 66-2014, and Article 7 of Act 3-2017: These Acts limit the employer contribution for health insurance.

This Article is impaired by Article 2.07 of Act 26-2017: This Act creates a uniform employer contribution to public corporation employees' health plan, giving AAFAF the power to negotiate and agree to cheaper insurance coverage with private insurers or under public coverage at the employee's choice in the Government as Single Employer or by agency or groups of agencies. The employer contribution would be determined by the Fiscal Plan Compliance Committee.

127. After the enactment of the above-mentioned laws, the Union of Employees' CBA has been substantially impaired. At least 23 of its 50 dispositions were rendered useless.

128. After the enactment of the above-mentioned laws, the Physicians Union's CBA has been substantially impaired. At least 32 of its 65 dispositions were rendered useless.

129. The impact of the above-mentioned laws has substantially impaired the economic benefits of Plaintiffs' members. Between Fiscal years 2014-2015 through 2022-2023, the quantifiable economic benefits lost by Plaintiffs' members are: 139 million, for the Union of Employees, and 12.7 million for the Physicians Union.[109]

### E. THE CBA's, THE CONTRACT CLAUSE, AND IMPAIRMENT OF CONTRACTUAL OBLIGATIONS

130. The abovementioned acts have been approved as countermeasures to the Commonwealth's economic crisis. The most recent ones being an attempt of the Government to comply with the FOMB's requirements. These measures do not respond to a financial crisis of the CFSE.

131. As consistently stated, the CBA's are legal, binding contracts between the members of the Union of Employees, the Physicians Union, and the CFSE.

---

[109] José I. Alameda & Alfredo González Martínez, *supra*, p. 50.

132. The Contract Clause of the United States of America Constitution establishes in its Art. I, section 10, cl. 1 that, "No State shall…pass any…Law impairing the Obligation of Contracts…". This Contract Clause has its equal in the Constitution of the Commonwealth of Puerto Rico in its Art. II, § 7.

133. The Contract Clause prohibits a State from passing laws that will impair contractual obligations entered upon between parties. Nonetheless, this prohibition is not absolute. A state may alter contractual obligations under certain circumstances, in light of its police power.

134. When a State passes laws hindering a contract, the Courts are called upon, to determine if such a violation is allowed by the Constitution. For this, the legislation enforced must pass a two-prong test. First, if there is in fact a substantial impairment of a contract, and second, if such impairment is reasonable and necessary to serve an important government purpose.[110]

135. In regard to the first part of the test, whether there is a substantial impairment of a contract, the case at hand satisfies such a requirement. The previous paragraphs enumerate not only the different laws that affect the CBA, but also specific clauses that have a particular negative effect on the agreement. They all have a drastic impact on areas such as vacation and illness accrual and payment, monetary compensation of vacation and illness days not used, the loss of excess days the employees had accumulated, mobility and transfer of employees, and job classifications. These can all be qualified as substantial impairments.

136. The second part of the test asks if the impairment is reasonable and necessary to serve an important governmental purpose. If this second part is not answered affirmatively, the

---

[110] United Automobile, Aerospace, Agricultural Implement Workers Of America International Union, et al v. Fortuño, 633 F.3d 37, 41 (2011); U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1 (1977).

impairment should be found in violation of the Contract Clause and cannot be allowed by the Courts.

137. In the case at hand, the Government alleges it has passed these laws as a response to the economic crisis that the Commonwealth is currently going through. This in turn, allows it to impair a contract in its favor. Normally, when a government passes a law impairing a contract, complete deference is given to the legislative assessment and intent. Nonetheless, when the State's self-interest is at stake, less deference is given to such assessment because, "…If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all". [111]

138. Even though there was an actual fiscal crisis at hand, the impairments brought on by these laws must be cautiously examined. For example, Act Num. 26 establishes in its Preamble that one of its main purposes is to make all public employees´ benefits the same, thus, making central government employees and public corporations' employees equal.[112] Making all employees equal is not an important governmental purpose that should entail drastically impairing and altering public corporation employees, previously negotiated and contracted rights. If equality were the real motive, every single employee serving the Government should have their benefits and salaries adjusted, not just public corporation employees. Such a measure raises the alarming question of whether or not the purpose of this law is nothing more than allowing the Government of the Commonwealth to default on their legally binding obligations; escaping their obligation, for example, to pay the excess days accumulated by

---

[111] United Automobile, Aerospace, Agricultural Implement Workers Of America International Union, et al v. Fortuño, 633 F.3d 37, 41-43 (2011); U.S. Trust Co. of New York v. New Jersey, 431 U.S. 25-26 (1977).
[112] Act Num. 26, "Equity in Fringe Benefits for all Public Employees", Preamble, p.11.

employees, or granting them the opportunity to enjoy such days, without the risk of losing them. "Thus, a State cannot refuse to meet its legitimate financial obligations simply because it would prefer to spend the money to promote the public good rather than the private welfare of its creditors."[113]

139. Even if the impairment of the contract served an actual important public purpose, such a measure cannot prove to be a reasonable and necessary impairment. For it to satisfy this requirement, it would have to be the only way in which the government can actually save money and have a significant impact in restoring and helping the fiscal crisis the Commonwealth is going through.

140. There are many other ways in which the Government can obtain funds in the midst of this fiscal crisis, which do not have to impair the contractual rights of the CFSE employees. The employees and the Union of Employees and the Physicians Union must be granted the opportunity to demonstrate the fact that there are other ways in which to help out the fiscal crisis at hand.

> "Consequently, a plaintiff with reason to believe that a state action was unreasonable or unnecessary can, in the complaint, list the state's articulated motive(s), and then plead facts that undermine the credibility of the those stated motives or plead facts that question the reasonableness or necessity of the action in advancing the stated goals. For example, if a state purports to impair a contract to address a budgetary crisis, a plaintiff could allege facts showing that the impairment did not save the state much money, the budget issues were not as severe as alleged by the state, or that other cost-cutting or revenue-increasing measures were reasonable alternatives to the contractual impairment at issue."[114]

141. Yet, for the members of the Union of Employees and the Physicians Union to be able to effectively argue and protect their rights against the Government of the Commonwealth, they

---

[113] U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1, 29 (1977).
[114] United Automobile, Aerospace, Agricultural Implement Workers Of America International Union, et al v. Fortuño, 633 F.3d 37, 44 (2011).

must have the opportunity to bring this issue before this Court. This is vital, since the Courts have established that, "a State is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives. Similarly, a State is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well".[115]

142. As stated above, CFSE is a self-sufficient, solvent public corporation, the Government of the Commonwealth could have enacted the above-mentioned acts without taking away legal contractual rights of the CFSE employees.

143. The following are some possible options the Commonwealth Government has that do not include taking away legal contractual rights of CFSE's employees:

   a. Increase in compliance and revenue collection across the major tax lines (personal income tax, corporate income tax, and SUT).

   b. Reduction or elimination of useless tax credits or incentives.

   c. Rightsizing measures within the instrumentalities of the Commonwealth that do not operate as private businesses or enterprises.

   d. Planning, development and investment in economic growth projects to increase revenues and collections.

144. As a result, it can be determined from the previous analysis that the abovementioned laws do not serve an important public purpose and they do not qualify as a necessary and reasonable impairment to the labor rights and benefits of Plaintiff's members. The Government of the Commonwealth has different options that do not require the impairing of the CBA's. Thus, its actions cannot withstand the Contract Clause two-prong test, making its

---

[115] U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1, 30-31 (1977)

actions unconstitutional and illegal. Leading to the conclusion that any budget or fiscal plan

that adopts these measures or laws is illegal and unconstitutional by association.

### F. IMPAIRMENT OF RIGHT TO COLLECTIVE BARGAINING

145.  On July 3, 1950, the Congress of the United States adopted Public Law 600, authorizing

the people of Puerto Rico to organize a government pursuant to a constitution of their own

adoption.

146. Public Law 600 required that Puerto Rico call a constitutional convention to draft a

constitution that "shall provide for a republican form of government".

147. By means of Public Law 447, after the President of the United States had declared that the

Constitution of the Commonwealth of Puerto Rico conformed fully with Public Law 600 and

the Constitution of the United States, the United States Congress approved the Puerto Rico

Constitution with two amendments, and required that any further amendments to such

constitution comply with Public Law 447, with the applicable provisions of the Constitution

of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600.

148. Collective Bargaining is a right recognized by Article II Section 17 of the Constitution of

the Commonwealth of Puerto Rico which is a federal law:

> Section 17. Persons employed by private businesses, enterprises and individual
> employers and by **agencies or instrumentalities of the government operating
> as private businesses or enterprises**, shall have the right to organize and to
> bargain collectively with their employers through representatives of their own free
> choosing in order to promote their welfare. [Emphasis added]

149. The right to collective bargaining for the employees of the CFSE, as a public corporation

that operates as private business, as recognized in the Puerto Rico Constitution, became an

act of the United States Congress when Congressional approval of the Puerto Rico

Constitution was granted by means of Public Law 447.

150. The above-mentioned acts, by vacating or eliminating the labor rights and benefits already negotiated under the CBA's, and eliminating the right to negotiate the clauses impaired by such legislation, have violated Plaintiffs members' right to collective bargaining, recognized under the Constitution of the Commonwealth of Puerto Rico.

151. Section 3 of PROMESA states that "[t]he provisions of this chapter shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this chapter."[116]

152. PROMESA does not prevail over another federal law, as the Commonwealth's Constitution, since it is a federal law, approved by the U.S. Congress.

## G. PROMESA AND THE COMMONWEALTH'S NEW FISCAL PLAN

153. On June 30, 2016, President Barack Obama signed PROMESA into law. The stated purpose of PROMESA is to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes".[117]

154. Among other things, PROMESA: (i) establishes a process for the Oversight Board to approve a fiscal plan governing the Commonwealth's future finances and budgets (Title II); (ii) establishes a process for the Oversight Board to file a bankruptcy petition on behalf of the Commonwealth or its instrumentalities (Title III); and (iii) provides for an alternative mechanism for adjusting the Commonwealth's bond debt outside of a bankruptcy proceeding by effectuating modifications with the substantial, but not necessarily unanimous, support of the affected bondholders.

---

[116] 48 U.S.C. §2103.

[117] H.R. 5278, 114th Cong. (2016) (Preamble).

155. Pursuant to PROMESA, "A Fiscal plan developed under this section shall, with respect to a territorial government or covered territorial instrumentality, provide a method to achieve fiscal responsibility and access to the capital markets…".[118]

156. Congress included 14 different "requirements" that any fiscal plan must satisfy.[119] It authorized the Oversight Board to certify a fiscal plan only if the fiscal plan "satisfies such requirements."[120]

157. If a fiscal plan "does not satisfy such requirements," then the "Board shall provide to the Governor a notice of violation."[121]

158. Once a fiscal plan is certified by the FOMB, the Commonwealth is required to pass annual budgets that follow the certified fiscal plan.[122]

159. The Commonwealth's New Fiscal Plan embraces and makes part of its reform measures, the unconstitutional laws previously mentioned in this Complaint. It specifically adopts the employee mobilization policy, uniform fringe benefits, and the elimination of vacation and sick days liquidations. All of these, as previously explained, violate the CBA's, the Contract Clause and the Constitution of the Commonwealth of Puerto Rico. According to the introduction of this New Fiscal Plan, the CFSE is a major entity covered by the Commonwealth New Fiscal Plan.[123] Nonetheless, this New Fiscal Plan includes laws that have an effect on the CFSE and that actually impair its CBA's. As such, by including this legislation in its reform measures, the Commonwealth and

---

[118] 48 U.S.C. § 2141 (b)(1),(2).
[119] 48 U.S.C. § 2141 (b).
[120] 48 U.S.C. § 2141 (c)(3)(A).
[121] 48 U.S.C. § 2141 (c)(3)(B).
[122] 48 U.S.C. § 2142.
[123] Commonwealth Fiscal Plan, "Major Entities Not Covered by the Fiscal Plan", p.6.

the FOMB acted in violation of the U.S. Constitution and the Constitution of the Commonwealth and PROMESA thus, making the Fiscal Plan unconstitutional.

160. PROMESA specifically requires in its Section 201(b)(1)(A),(B),(G),(N)[124] that any fiscal plan must:

(A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on—

applicable laws; or
specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;

**(B) ensure the funding of all essential public services**;
[…]

(G) enable the achievement of fiscal targets;
[…]

(N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to the date of enactment of this Act. [Emphasis added]

161. First in its Section 201(b)(1)(A)[125] PROMESA specifically requires that any fiscal plan must: "(A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on: (i) applicable laws; or (ii) specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;". The Commonwealth New Fiscal Plan is not based on any applicable law or specific bill needed to reasonably achieve the financial stabilization intended through the Fiscal Plan, but rather have based their foundation on several legislations that violate the CBA's, the U.S. Constitution and the Commonwealth's Constitution, and that cut and undermine employees' benefits and rights, causing economic loss and

---

[124] 48 U.S.C. §2141(b)(1)(A),(B),(G),(N).
[125] 48 U.S.C. §2141(b)(1)(A).

employment instability. Rather than achieving its goal of financial stabilization, this New Fiscal Plan embraces unconstitutional laws that only serve to create a bigger economic chaos.

162. Section 201(b)(1)(B)[126] of PROMESA, specifically requires that any fiscal plan must: "(B) ensure the funding of essential public services".

163. PROMESA Section 201(b)(1)(G)[127] specifically requires that any fiscal plan must: "(G) enable the achievement of fiscal targets". The New Fiscal Plans' goals include economic growth and stability. Yet, how will the New Fiscal Plan achieve economic growth and stability if the foundation for this plan is built on legislation that violates the Contract Clause of the Constitution; when the Fiscal Plan is built on illegal and unconstitutional laws that take money, job benefits, financial certainty, and stability from its employees, resorting to taking legally earned benefits and monetary compensation, from those who are the backbone of the exclusive provider of insurance coverage for work related accidents, deaths, and illness suffered by workers in the Commonwealth? This strategy will result in the weakening of the CFSE. The economic loss that these employees will suffer will have a ripple effect on the CFSE and on the Commonwealth's economy that will make economic growth and stability uncertain and unattainable.

164. PROMESA Section 201(b)(1)(N)[128] also specifically requires that any fiscal plan must: "(N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial

---

[126] 48 U.S.C. §2141(b)(1)(B).
[127] 48 U.S.C. §2141(b)(1)(G).
[128] 48 U.S.C. §2141(b)(1)(A),(B),(G), (N).

instrumentality in effect prior to the date of enactment of this Act". Regarding this point, the CBA's that were negotiated between the CFSE and the Union of Employees, and the Physicians Union, were subscribed prior to the date of enactment of PROMESA, which demands that the agreement be respected. Nonetheless, the New Fiscal Plan violates this mandate. The CBA's are substantially impaired through the enactment and adoption of the above-mentioned legislation, and by adopting and incorporating these laws into their reform measures, the Fiscal Plan, in turn, violates the Constitution of the United States, the Commonwealth's Constitution, and PROMESA. Through the approval and incorporation of these measures in the New Fiscal Plan, the FOMB became complicit in the impairment of the CBA's and in the violation of the Contract Clause of the Constitution of the United States and the right to Collective Bargaining, recognized under the Constitution of the Commonwealth of Puerto Rico.

165. Lastly, on June 29, 2018, Representative and Chairman of the United States House of Representatives Committee on Natural Resources, Rob Bishop, filed an *amicus curiae* brief in case No. 18-1214 *Ambac Assurance Corporation v. Commonwealth of Puerto Rico, et al.*, in the United States Court of Appeals for the First Circuit, on appeal from case No. 17-AP-00159-LTS in these Title III proceedings. Regarding the §201 requirements, Representative Rob Bishop expressed:

> Fiscal plans are the most important tool PROMESA created to promote fiscal responsibility and access to capital markets in Puerto Rico. Accordingly, Congress imposed requirements on the development of the plans in Section 201(b) of PROMESA to further these objectives. **The requirements of Section 201(b) are not optional. A fiscal plan "shall" include each of the delineated items. If the Title III court finds the approved fiscal plan fails to comply with the requirements of Section 201(b), then the court should direct the Oversight Board to revise such plan accordingly.**[129] [Emphasis added.]

---

[129] At page 19.

70

166. Based on the previous analysis, it can be stated that the New Fiscal Plan completely disregards the above-mentioned requirements of PROMESA, constituting a gross violation of its clear statutory mandates, the U.S. Constitution and the Constitution of the Commonwealth.

167. The inclusion of these austerity measures in the Commonwealth's New Fiscal Plan by the FOMB is arbitrary, lacking a rational basis, and in clear and open violation of the requirements of Section 201 of PROMESA as here stated, and in blatant violation of the Constitution of the United States and the Commonwealth's Constitution.

168. For all the above stated reasons, allowing the Fiscal Plan to continue without making the necessary and constitutional corrections would equal a gross violation not only of PROMESA, but also of the contractual rights of Plaintiffs' members, and the Constitutions of the U.S. and of the Commonwealth of Puerto Rico. Furthermore, it seriously encumbers the possibility of reversing the country's continuing economic contraction, since taking from the members of the Union of Employees and the Physicians Union their legally acquired benefits would have a negative effect on the employees, and a devastating outcome on the labor productivity that the CFSE so desperately relies on. It will in turn, make economic recovery an even more tortuous and tough climb for these members, their families, the CFSE, and the Commonwealth.

169. The latter impair the goals of PROMESA of generating an economy capable of repaying the debt of the Commonwealth, creating financial stability, and sustaining economic growth. In short, allowing the Fiscal Plan to continue as it is would create a serious risk of completely destabilizing the CFSE, event from which it cannot be assured it can recover from.

### H. PROMESA AND THE PLAN OF ADJUSTMENT OF DEBT

170. Section 302 of PROMESA[130] defines who may be eligible to file a case under Title III. In the particular case of the Commonwealth, among other requirements, to be eligible for filing a Title III case, it must adopt a Fiscal Plan certified by the FOMB.

171. Moreover, according to sections 104 (j) and 312 of PROMESA[131], as part of the Title III case, the FOMB, may file a plan of adjustment of the debts in a Title III. However, the FOMB may file the plan of adjustment of debts only after the issuing of a certification that it is consistent with the applicable certified Fiscal Plan.

172. Once filed, the court shall confirm the plan of adjustment of the debts, only if it satisfies a series of requirements. In section 314(b)(6)-(7), PROMESA specifically states that the plan of adjustment of debts must be feasible and in the best interests of creditors, and consistent with the applicable Fiscal Plan certified by the Oversight Board.[132]

173. Therefore, the certification of a **valid fiscal plan** by the FOMB is an essential requirement for the Commonwealth in order to be eligible for filing a confirmable plan of adjustment of debt under Title III of PROMESA. As long as the Plan is at odds with Constitutional mandates, it will not be valid and should not be allowed to be eligible to file a confirmable plan of adjustment of debt under Title III of PROMESA.

174. The Commonwealth's New Fiscal Plan, as it is currently, cannot be certified as valid fiscal plan. It adopts, as part of its reform measures, unconstitutional legislation that violates and impairs an existing agreement between the members of the Union of

---

[130] 48 U.S.C. §2162.
[131] 48 U.S.C. §§ 2124(j) and 2172.
[132] 48 U.S.C. §2174(b)(6)-(7).

Employees and the Physicians Union, and the CFSE. No valid legal plan can be based on laws that completely disregard Constitutional Clauses.

175. In addition, the New Fiscal Plan does not achieve the fiscal targets for which it was drafted. The legislation on which it is based will not help achieve the economic stability and growth that they pursue. They attack the very backbone and foundation on which the CFSE relies on for productivity, leaving it weak and in serious danger of losing its main source of productivity. The Plan, as it is, create economic chaos.

176. The Fiscal Plan is in violation of PROMESA, the Constitution of the United States and of the Commonwealth of Puerto Rico. Unless it is recast to no longer contain illegal and unconstitutional measures and as to comply with the requirements herein stated, it cannot be treated as a valid fiscal plan. Since a valid fiscal plan is an essential requirement for the confirmation of a plan of adjustment of debts, the lack of compliance with the previously stated requirements makes it impossible to confirm a plan of adjustments of debts according to Section 314 of PROMESA.[133]

177. Furthermore, section 105(a) of the Bankruptcy Code provides, "[t]e court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is "necessary" and "appropriate" for the Court to prohibit the FOMB from filing a plan of adjustment based on the unlawful and unconstitutional Fiscal Plan.

[Page space intentionally left blank.]

---

[133] 48 U.S.C. §§ 2174.

## V. PRAYERS FOR RELIEF

### FIRST PRAYER FOR RELIEF

178. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1 through 177 hereof as if fully set forth herein.

179. An actual and justiciable controversy has arisen and exists between the parties with respect to these issues and claims, and a declaratory judgment is necessary to resolve such controversy.

180. Plaintiff is entitled to an order declaring that CFSE is a protected essential public service.

### SECOND PRAYER FOR RELIEF

181. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1 through 180 hereof as if fully set forth herein.

182. Plaintiff is entitled to an order declaring that Act Num. 66-2014, Act Num. 3-2017, Act Num. 8-2017, and Act Num. 26-2017, violate the Contract Clause of the U.S. Constitution.

### THIRD PRAYER FOR RELIEF

183. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1 through 182 hereof as if fully set forth herein.

184. Plaintiff is entitled to an order declaring that Act Num. 66-2014, Act Num. 3-2017, Act Num. 8-2017, and Act Num. 26-2017, violate the Right to Collective Bargaining of the Commonwealth's Constitution.

[Page space intentionally left blank.]

## FOURTH PRAYER FOR RELIEF

185. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1 through 184 hereof as if fully set forth herein.

186. Plaintiff is entitled to an order declaring that the New Fiscal Plan is unconstitutional and that the FOMB shall not file a plan of adjustment of debt until the New Fiscal Plan is totally recast to comply with PROMESA, the Contract Clause of the United States Constitution and Article II, Section 17 of the Commonwealth's Constitution.

## XV. RELIEF DEMANDED

WHEREFORE, in view of the foregoing, Plaintiff respectfully requests from this Honorable Court to enter a judgment against defendants as follows:

a. An order declaring that the CFSE is a protected essential public service.

b. An order declaring that Act 66-2014, Act Num. 3-2017, Act Num. 8-2017, and Act Num. 26-2017, violate the Contract Clause of the U.S. Constitution.

c. An order declaring that Act 66-2014, Act Num. 3-2017, Act Num. 8-2017, and Act Num. 26-2017, violate the Right to Collective Bargaining of the Commonwealth's Constitution.

d. An order declaring that the New Fiscal Plan is unconstitutional and that the FOMB shall not file a plan of adjustment of debt until the New Fiscal Plan is totally recast to comply with the Contract Clause of the United States Constitution and Article II, Section 17 of the Commonwealth Constitution.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 25th day of July, 2018.



PO Box 10779
Ponce, Puerto Rico 00732

Tel: (787) 848-0666
Fax: (787) 841-1435

/s/Rolando Emmanuelli Jiménez
Rolando Emmanuelli Jiménez
USDC: 214105

/s/Yasmín Colón Colón
USDC: 230814

/s/Jessica E. Méndez Colberg
USDC: 302108

/s/Wilbert López Moreno
USDC: 202707

Emails: rolando@bufete-emmanuelli.com
yasmin@bufete-emmanuelli.com
jessica@bufete-emmanuelli.com
wilbert_lopez@yahoo.com
notificaciones@bufete-emmanuelli.com