# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------- x

Altair Global Credit Opportunities )
Fund (A), L L C ., et al., )
  )
     Movants, )  Civil No. 16-2696 (FAB)
  )
   v. )
  )
Governor Alejandro Garcia Padilla, et al., )
  )
  )
     Respondents. )

--------------------------------------------- x

### RESPONDENT EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO'S BRIEF IN OPPOSITION TO MOTION FOR RELIEF FROM THE PROMESA AUTOMATIC STAY

**DLA PIPER (PUERTO RICO) LLC**

José A. Sosa-Lloréns
Edificio Ochoa, Suite 401
500 Calle de la Tanca
San Juan, Puerto Rico
00901-1969
P: 787.945.9101
F: 787.945.9102

**DLA PIPER LLP (US)**

Richard Chesley
*admitted pro hac vice*
Kevin Finger
*admitted pro hac vice*
203 N. LaSalle St., Suite 1900
Chicago, IL 60601
P: 312.368.4000
F: 312.236.7516

John M. Hillebrecht
*admitted pro hac vice*
1251 Avenue of the Americas
New York, NY 10020-1104
P: 212.335.4500;
F: 212.335.4501

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

    A.    The ERS Bonds ................................................................................ 3

    B.    The Puerto Rico Financial Crisis and the Adoption of PROMESA ..................... 4

    C.    The Commonwealth Suspends Transfers To ERS's Fiscal Agent ........................ 5

ARGUMENT ........................................................................................................ 6

I.    THE HEARING ON THE STAY RELIEF MOTION VIOLATES ALL NOTIONS OF FUNDAMENTAL DUE PROCESS ........................................ 6

II.    MOVANTS ADMIT THEY ARE ADEQUATELY PROTECTED TO THE EXTENT SUCH PROTECTION IS REQUIRED ........................................... 9

III.    MOVANTS PROPERLY RECOGNIZE THAT THEIR ACTION IS COVERED BY PROMESA'S AUTOMATIC STAY ........................................ 12

IV.    LACK OF ADEQUATE PROTECTION IS NOT "CAUSE" FOR LIFTING THE PROMESA STAY ........................................................................ 13

V.    THE FIFTH AMENDMENT DOES NOT TRANSFORM LACK OF ADEQUATE PROTECTION INTO "CAUSE" FOR LIFTING THE PROMESA STAY ................................................................................ 16

CONCLUSION ........................................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Boddie v. Connecticut,*
  401 U.S. 371 (1971) ............................................................................................................8

*Burlington N. & Santa Fe. Ry. v. White,*
  548 U.S. 53 (2006) ...........................................................................................................15

*E.E.O.C. v. Steamship Clerks Union, Local 1066,*
  48 F.3d 594 (1st Cir. 1995) ...............................................................................................8

*Estate of Cowart v. Nicklos Drilling Co.,*
  505 U.S. 469 (1992) .........................................................................................................14

*Gonzalez-Quiles v. Cooperativa De Ahorro Y Credito De Isabela,*
  250 F.R.D. 91 (D.P.R. 2007) .............................................................................................8

*Grella v. Salem Five Cent Sav. Bank,*
  42 F.3d 26 (1st Cir. 1994) .................................................................................................15

*Helmer v. Goodyear Tire & Rubber Co.,*
  828 F.3d 1195 (10th Cir. 2016) .......................................................................................14

*In re SW Boston Hotel Venture LLC,*
  449 B.R. 156 (Bankr. D. Mass. 2011) .............................................................................11

*Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.,*
  209 F.3d 18 (1st Cir. 2000) ...........................................................................................6, 7

*McIntosh v. Antonino,*
  71 F.3d 29 (1st Cir. 1995) ..................................................................................................6

*Melo-Tone Vending, Inc. v. U.S.,*
  666 F.2d 687 (1st Cir. 1981) ............................................................................................17

*Northland Cranberries, Inc. v. Ocean Spray Cranberries, Inc.,*
  382 F. Supp. 2d 221 (D. Mass. 2004) .............................................................................14

*Omnia Commercial Co., Inc. v. U.S.,*
  261 U.S. 502 (1923) .........................................................................................................16

*Perry v. Blum,*
  629 F.3d 1 (1st Cir. 2010) ..................................................................................................9

*Pino-Betancourt v. Hosp. Pavia Santurce*,
    928 F. Supp. 2d 393 (D.P.R. 2013)..................................................................8

*Riva v. Com. of Mass.*,
    61 F.3d 1003 (1st Cir. 1995)........................................................................13

*Rodriguez-Cruz v. Stewart Title Puerto Rico, Inc.*,
    88 F. Supp. 3d 23 (D.P.R. 2015)...................................................................9

*United States v. Azeem*,
    946 F.2d 13 (2d Cir. 1991).........................................................................15

STATUTES

11 U.S.C. § 362(f).........................................................................................14, 15

48 U.S.C. § 2101, *et. seq.* ("PROMESA")...........................................................2

48 U.S.C. § 2104 ("PROMESA § 5")................................................................13

48 U.S.C. § 2194 ("PROMESA § 405")........................................................*passim*

Fed. R. Civ. P. 3..............................................................................................6

Fed. R. Civ. P. 8(a)..........................................................................................7

Fed. R. Civ. P. 42(a)........................................................................................8

OTHER AUTHORITIES

C. Wright & A. Miller, *4 Fed. Prac. & Proc. Civ.* § 1052 (4th ed. 2008)......................7

H.R. Rep. No. 114-602 (2016)...........................................................................15

Respondent the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), specially appearing and without submitting to the jurisdiction or the venue of this Court, respectfully submits this memorandum of law in opposition to the Motion of Certain Secured Creditors of ERS for Relief from the PROMESA Automatic Stay Against all Respondents (the "Stay Relief Motion") [ECF No. 1].

## INTRODUCTION

ERS is a trust established in 1951 by the Legislature of the Commonwealth of Puerto Rico (the "Commonwealth") in order to ensure and protect the economic future of public employees. ERS accomplishes this goal by providing pension and other benefits to officers and employees of the government of the Commonwealth and its instrumentalities. These benefits are funded by contributions made monthly or twice a month to ERS by the Commonwealth of Puerto Rico, its instrumentalities, its municipalities, and their employees, and by investment earnings. Non-Commonwealth employers, such as municipalities and public corporations, also make contributions to ERS to fund their pension plans.

Government employers are currently required by law to make employer contributions to ERS of at least 15.525% of their covered payroll. As of June 30, 2015, ERS had 119,790 active members, and provided retirement benefits to 97,056 beneficiaries, which consist of retirees and spouses of deceased retirees. (*See* ERS, June 30, 2015 Actuarial Valuation Report at 2-3).

On September 21, 2016, Movants Altair Global Credit Opportunities Fund (A), LLC, Claren Road Credit Master Fund, Ltd., Claren Road Credit Opportunities Master Fund, Ltd., Glendon Opportunities Fund, L.P., Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico

AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., and UBS IRA Select Growth & Income Puerto Rico Fund (collectively, the "Movants") filed their Stay Relief Motion.

While the issues relating to the Stay Relief Motion under the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101, *et. seq.* ("PROMESA"), are well-known to this Court and many of the petitioners and respondents before it, the same is not true for ERS; ERS first learned of these matters when served with the Stay Relief Motion on September 21, 2016. (*See* Summons [ECF No. 14]). Thus, without even the benefit of a rudimentary complaint to provide ERS with notice of the actual claims against it, ERS was thrust into the middle of contested and complex litigation that had been proceeding before this Court for many months. To exacerbate this fundamental unfairness, on October 13, 2016, the Movants filed a Motion to Consolidate this proceeding with two other PROMESA-related matters that had been pending for several months (the "Motion to Consolidate") [ECF No. 26]). Before ERS could even prepare a draft response to the Motion to Consolidate, the Court granted the Motion. (*See* ECF No. 27). Now, with not even the benefit of notice of the Movants' allegations, and

with scant time to prepare for an evidentiary hearing with expert witnesses, ERS is left to litigate all of these issues on **November 3, 2016**.

Ignoring for a bare moment these enormous procedural infirmities, completely absent from the Stay Relief Motion is any allegation (i) that the Movants will suffer any harm during the duration of the legislatively-crafted stay, (ii) that the Movants' interests are not adequately protected or (iii) that the harm to the Commonwealth of Puerto Rico and ERS from the lifting of the stay does not outweigh any imagined harm to the Movants.

Finally, Movants argue that a "lack of adequate protection" is a valid basis to lift the PROMESA stay even though this argument is not supported by, and is in fact contradicted by, the text of PROMESA itself. PROMESA states that lifting the statutory stay is limited to situations where "just cause" exists. *See* 48 U.S.C. § 2194 ("PROMESA § 405") (e)(2). As discussed below, this standard requires irreparable harm, something that Movants cannot possibly establish, relying as they do on the fact that they are subject to a brief stay while the Commonwealth addresses its dire financial condition that necessitated Congressional action in the form of PROMESA. In light of the Commonwealth's predicament and the impact on ERS, the Movants also fail to show how delayed access to a future stream of payments constitutes a constitutional "taking," to the extent there is any validity to Movants' constitutional argument in the first place.

## **BACKGROUND**

### A.     The ERS Bonds

The Stay Relief Motion is premised exclusively on three series of bonds issues by ERS (the "ERS Bonds") pursuant to the Pension Funding Bond Resolution (the "Bond Resolution") adopted by the Commonwealth on January 24, 2008. The Bonds were issued for the purposes of

increasing the funds available to pay pension benefits to certain of its beneficiaries and to reduce

its unfunded accrued actuarial pension liability.  (*See* Bond Resolution [ECF No. 1-4] at VII-3).

Under the terms of the Bond Resolution, the Commonwealth granted in favor of a fiscal

agent (the "Fiscal Agent," currently the Bank of New York Mellon) a security interest and

related lien in and over "Pledged Property" – consisting of, among other assets, *all* revenues of

the ERS – pending the discharge and satisfaction of all outstanding principal and interest.  (*See*

Bond Resolution § 501; *id.* Ex. B at VI-36).  The ERS Bonds are "special obligations of the

[ERS] payable solely from the Pledged Property without recourse against other assets" of the

ERS, and do not "constitute a debt of the Commonwealth."  (*Id.* at § 201).  Further, apart from

the liens securing ERS Bonds, the Pledged Property is "free and clear of any pledge, lien, charge,

or encumbrance" (*id.* § 705), and is "valid and binding as against all parties having claims of any

kind in tort, contract or otherwise against the [ERS], irrespective of whether such parties have

notice thereof."  (*Id.* § 501).  In other words, the security interest and lien in favor of ERS

Bondholders is only limited by the satisfaction of ERS's outstanding debt obligations.

Pursuant to the terms of the Bond Resolution, ERS has until recently funded on a

monthly basis several security accounts held in trust by the Fiscal Agent for the benefit of ERS

bondholders, including a Senior Bonds Debt Service Account, a Senior Bonds Debt Service

Reserve Account, and a Senior Bonds General Reserve Account (collectively, the "Reserve

Accounts").  (*See* Bond Resolution § 502; Stay Relief Motion at 9).

### B.    The Puerto Rico Financial Crisis and the Adoption of PROMESA

The historic fiscal crisis impacting the Commonwealth is well known to this Court and all

stakeholders in these proceedings, not to mention every one of ERS's participants.  In response

to this wide-ranging crisis, the Commonwealth enacted the Puerto Rico Emergency Moratorium

and Financial Rehabilitation Act (P.R. Act 21-2016, hereinafter "Act 21") on April 6, 2016.  Act

21 afforded the Governor of Puerto Rico broad-ranging powers, including directing the prioritization of essential service payments. (*See* Act 21 §§ 201, 202). With massive debt service obligations due on July 1, 2016, the Governor issued Executive Order 2016-31 [ECF No. 1-6], the day before declaring a state of emergency for, *inter alia*, ERS. (*See* E.O. 2016-31 at 2). The state of emergency continues until January 31, 2017, with a potential two month extension by order of the Governor. (*See* Act 21 § 103(m)).

Within days, President Obama signed into law PROMESA. As with all financial restructuring regimes, a foundation of PROMESA was a stay. Congress built an automatic stay provision into PROMESA to provide the Commonwealth with "a limited period of time [until February 15, 2017] during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits." PROMESA § 405(n)(ii). PROMESA contained a number of other key provisions, including the appointment of a Financial Oversight and Management Board for Puerto Rico ("Oversight Board") charged with overseeing "[a] comprehensive approach to [restructuring] fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico." PROMESA §§ 405(n)(3)-(4), (m)(4). Despite having only been recently appointed, and faced with epic challenges, the Oversight Board has made clear that it objects to the efforts of parties such as the Movants to simply ignore the policy underlying PROMESA's imposition of the automatic stay. (*See* Financial Oversight and Management Board's Motion for Leave to Intervene in These Consolidated Actions, *Brigade Leveraged Capital Structures Fund, Ltd. v. Padilla,* No. 16-1610 (D.P.R. Oct. 21, 2016) [ECF No. 137] (the "Oversight Board Motion")).

**C. The Commonwealth Suspends Transfers To ERS's Fiscal Agent**

On June 30, 2016, and pursuant to Act 21, the Governor suspended transfers of ERS revenues to the Fiscal Agent. These steps, however, have not hampered ERS from fulfilling its

payment obligations under the ERS Bonds – and its ability to do so until well after the expiration of the stays.

Specifically, ERS continues to collect employer contributions from non-Commonwealth employers, and the amount of these contributions since July 2016, when Act 21 was implemented, is $75,545,510.98. Although ERS is unable to transfer these funds to the Fiscal Agent without violating Act 21, these amounts are currently held in an ERS operating account at Banco Popular de Puerto Rico. ERS will continue to receive contributions from non-Commonwealth entities in an estimated amount of $17,000,000 per month.

Furthermore, as of October 1, 2016, the Fiscal Agent held amounts on deposit in the aggregate amount of $99,999,844.46, consisting of (a) $18,480.18 in the Senior Bonds Debt Service Account, (b) $83,259,495.30 in the Senior Bonds Debt Service Reserve Account, and (c) $16,722,868.92 in the General Reserve Account. On October 1, 2016, moreover, the Fiscal Agent provided notice that approximately $13,858,102.30 was withdrawn from the General Reserve Account and applied to pay a portion of the debt service due that same day. These funds are subject to the lien held by ERS Bondholders. In other words, basic math indicates that there is sufficient cash to cover all debt service payments through and including April 1, 2017 – well after the expiration of both PROMESA's automatic stay and the moratorium and stay imposed by Act 21.

## ARGUMENT

## I.   THE HEARING ON THE STAY RELIEF MOTION VIOLATES ALL NOTIONS OF FUNDAMENTAL DUE PROCESS

Under the Federal Rules, a "civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3; *see Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000) ("A civil action customarily is instituted by the filing of a

complaint"); *McIntosh v. Antonino*, 71 F.3d 29, 36 (1st Cir. 1995) (same).  The filing of a complaint "requires nothing more than delivery of the document to a court officer authorized to receive it."  C. Wright & A. Miller, *4 Fed. Prac. & Proc. Civ.* § 1052 (4th ed. 2008).

The Federal Rules provide simple minimum requirements for a complaint, requiring that a pleading of a claim for relief must have:

> (1)  a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2)  a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3)  a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).  These *de minimis* requirements serve a seminal purpose in our judicial system; they put the opposing party on notice of the plaintiff's claims against it.

ERS recognizes that there are exceptions to this general requirement of commencing an action by the filing of a complaint.  *See, e.g.*, *Instituto de Educacion Universal Corp.*, 209 F.3d at 23 ("The rule that every civil action is initiated by the filing of a complaint historically has been relaxed in actions that originate elsewhere and are then transferred to a federal district court").  However, no such exception applies here.  Indeed, ERS is aware of no allowance under PROMESA, or any other statute, to avoid the filing of a short and plain statement of the claims that Movants have against ERS that would allow them to proceed.  Especially so when, by Movants' own admission, ERS has adequate funds to satisfy the requirements under the ERS Bonds until well after the expiration of the stay.  (*See* Stay Relief Motion at 9-10).

The prejudice from this lapse in pleading is far more acute as to ERS, due to the fact that it has only recently been served, and until now, has been nothing but a bystander in the on-going PROMESA disputes.  To that end, it is well settled that "due process requires, at a minimum,

that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971). While ERS recognizes that consolidation of actions can be appropriate "where common questions of law or fact are present," *Gonzalez-Quiles v. Cooperativa De Ahorro Y Credito De Isabela*, 250 F.R.D. 91, 92 (D.P.R. 2007), to consolidate the instant action with those in the *Assured Guaranty Corp.* and *Peaje Investments LLC* violates fundamental notions of due process.

Federal Rule of Civil Procedure 42(a) states specifically, that if "actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Because the purpose of consolidation is to "promote the aims of all the parties, economize time and effort without circumscribing the opportunity for full litigation of all relevant claims," it is not appropriate to consolidate cases that will violate a party's due process rights or cause prejudice to their case. *Gonzalez-Quiles*, 250 F.R.D. at 92.

When determining whether to exercise its discretion, the court should "weigh considerations of convenience and economy against considerations of confusion and prejudice." *Pino-Betancourt v. Hosp. Pavia Santurce*, 928 F. Supp. 2d 393, 395 (D.P.R. 2013) (citation omitted). Among the considerations weighed by the court must be the promise of due process: "[t]he rights of due process are constitutional and inviolable; hence, once a district court chooses to exercise its discretion, its conduct must comport with the promise of the Constitution." *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 609 (1st Cir. 1995). For example, this Court declined to consolidate three cases where the defendants were similar across each case

but the claims differed despite some overlap. *See Rodriguez-Cruz v. Stewart Title Puerto Rico, Inc.*, 88 F. Supp. 3d 23, 24 (D.P.R. 2015).

Although the District Court is granted broad discretion on whether to consolidate cases, consolidation was, and remains, inappropriate in the current case. For one, it is impossible for ERS to know whether the claims or allegations overlap in the consolidated cases here because the Movants have not filed a complaint. Respondent ERS was only recently served with the Stay Relief Motion and that motion was subsequently consolidated with the other Respondents whose cases have been pending for months. The late addition of Respondent ERS to the proceeding has the high likelihood of leading to undue prejudice to ERS. *See Perry v. Blum*, 629 F.3d 1, 16-17 (1st Cir. 2010) (noting the higher risk of prejudice to a later-joined party). In Movants' application to consolidate the cases they dismiss as "entirely irrelevant" that ERS is not a party to other PROMESA actions, and, therefore, that ERS may suffer prejudice from consolidating the actions. (*See* Motion to Consolidate [ECF No. 26] at ¶ 7). Yet, Movants fail to identify any prejudice that they will suffer if the motions to lift the stay were litigated separately. Consolidation is improper in this proceeding, and the Stay Relief Motion should not be litigated until after ERS has had adequate time to review these issues and prepare for a hearing.

## II. MOVANTS ADMIT THEY ARE ADEQUATELY PROTECTED TO THE EXTENT SUCH PROTECTION IS REQUIRED

As addressed by the Commonwealth, *see* Respondents Hon. Alejandro Garcia Padilla, Juan Zaragoza-Gomez, Luis F. Crus Batista Brief In Opposition To Motion For Relief From Stay ("Commonwealth Brief"), and discussed in more detail below, significant questions are raised as to whether relief from the automatic stay under PROMESA is appropriate on a mere showing of the failure of "adequate protection." Before turning to these legal precepts, it is critical to address the fundamental legal fallacy of the Movant's position. *First*, the Reserve Accounts, by

the Movants' own admission, have more than adequate funds to make payments on the ERS Bonds until well after the expiration of the two stays that are in place. (*See* Stay Relief Motion at 9 ("Employer contributions from non-Commonwealth entities are sufficient to cover debt service on ERS Bonds.")). *Second*, under the clear terms of the Bond Resolution, the Movants have valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which will continue to grow. (*See* Bond Resolution § 501). Thus, the entire factual underpinning of the Movants' claims is faulty.

*First*, as to the Movants' request for emergency relief, they simply ignore that they are adequately protected by the Reserve Accounts held for their benefit by the Fiscal Agent. Nowhere do the Movants claim, nor could they, that there has been a default under the ERS Bonds. Movants have not alleged – because they cannot – that ERS has failed to fulfill its financial and other obligations to the ERS Bondholders, including debt service payments that the Fiscal Agent made on October 1, 2016, which will have left a balance of more than $99 million in the Reserve Accounts. As Movants themselves admit, the total monthly debt service payment due to ERS bondholders is $13.9 million. (*See* Stay Relief Motion at 9-10). Therefore, there is sufficient cash in the Reserve Accounts for the Fiscal Agent to cover ***all*** debt service payments through and including April 1, 2017 – and Movants do not contest this fact.

*Second*, and equally ignored by the Movants, is that in addition to there being more than adequate funding to satisfy payments to ERS Bondholders throughout the stay, the security interests held by the ERS Bondholders provide them with future protection more than sufficient to address any concern, real or imagined. The Commonwealth granted the ERS Bondholders a first lien in and over "Pledged Property" – consisting of, among other assets, ***all*** revenues of the ERS – pending the discharge and satisfaction of all outstanding principal and interest. (*See* Bond

Resolution § 501; *id.* Ex. B). As noted, the ERS received approximately $486 million in
employer contributions in the year ending June 30, 2015, with these amounts scheduled to
increase by 1.25% per year beginning on July 1, 2016. In addition, ERS is currently receiving
employer contributions from non-Commonwealth employers of approximately $17 million per
month during the PROMESA stay and the Act 21 moratorium. (*See also* Stay Relief Motion at
9-10; Executive Order 2016-31 [ECF No. 1-6] at 2-3). The ERS Bondholders have a security
interest in those revenues also, subject only to the satisfaction of the ERS's outstanding debt
obligations.

By contrast, the PROMESA stay is not indefinite and will expire under current law on
February 15, 2017, with the ERS emergency period under Act 21 expiring at the latest, six weeks
after, on March 31, 2017. At that time, the ERS Bondholders will have access to the full revenue
stream of the ERS. Indeed, the Oversight Board has stated as much in its brief to this Court,
noting that the Movants claims are "overstated" and explaining that "the perpetual revenue
streams that secure [Movants] claims would still be available for future payments under yet-to-be
negotiated fiscal plans or in future proceedings under PROMESA." (*See* Oversight Board Brief
at 13).

In other words, given its size and indefinite duration, the security interest provides
Movants with the adequate protection they purport is required to ensure payment on their ERS
Bonds. *See, e.g.*, *In re SW Boston Hotel Venture LLC*, 449 B.R. 156, 176 (Bankr. D. Mass.
2011) ("If collateral securing a claim has value greater than the interest of the secured claim
holder, the excess value, referred to as an equity cushion, constitutes adequate protection for the
secured party's interest."). Indeed, courts have made clear that "[a]n oversecured creditor is not
entitled to be compensated for an erosion in an equity cushion." *Id.*

Finally, and as set forth fully in the Commonwealth Brief, which is incorporated by reference as if set forth fully herein, the Movants' efforts to demonstrate that they lack adequate protection through case law is simply unavailing.

## III. MOVANTS PROPERLY RECOGNIZE THAT THEIR ACTION IS COVERED BY PROMESA'S AUTOMATIC STAY.

Congress enacted PROMESA in response to "a fiscal emergency in Puerto Rico." PROMESA § 405(m)(1). In that legislation, Congress sought to provide "independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." *Id.* § 405(m)(4). To that end, Congress found that "an immediate—but temporary—stay is ***essential*** to stabilize the region for the purposes of resolving this territorial crisis." *Id.* § 405(m)(5) (emphasis added). It therefore automatically stayed, "with respect to a Liability, … the commencement … of a judicial … proceeding against the Government of Puerto Rico that … could have been commenced before the enactment of this Act." *Id.* § 405(b)(1).

As Congress explained, "[t]he stay advances the best interests common to all stakeholders, including but not limited to a functioning independent Oversight Board created pursuant to this Act to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation that may have been commenced prior to the effectiveness or upon expiration of the stay." *Id.* § 405(m)(5)(A). Further, "[t]he stay is limited in nature and narrowly tailored to achieve the purposes of this Act, including to ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment based on accurate financial information that is reviewed by an independent authority or, at a minimum, receive a recovery from the Government of Puerto Rico equal to their best possible outcome absent the provisions of this Act." *Id.* § 405(m)(5)(B). The stay provides the Commonwealth with breathing room to

"focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits." *Id.* § 405(n)(2).

Movants properly recognize that their action is a "judicial … proceeding against the Government of Puerto Rico[1] that … could have been commenced before the enactment of this Act" and is related to a "Liability" and therefore stayed by PROMESA. PROMESA § 405(b)(1). Although Movants have not submitted a proposed complaint, the gravamen of their motion is that Act 21 – which was enacted nearly three months before PROMESA – is unconstitutional, and the motion names as respondents several Puerto Rico officials as well as ERS. Further, the motion is brought based on Movants' alleged status as holders of approximately $1.7 billion of ERS Bonds – bonds that fall squarely within PROMESA's definition of "Liability," *see* PROMESA § 405(a)(1) (defining "Liability" to include "a bond … of which (A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and (B) the date of issuance or incurrence precedes the date of enactment of this Act"). Because Movants satisfy all of the criteria for the PROMESA stay outlined in § 405(b)(1), the stay applies to this litigation.

## IV.    LACK OF ADEQUATE PROTECTION IS NOT "CAUSE" FOR LIFTING THE PROMESA STAY.

Unable to avoid the straightforward conclusion that the PROMESA stay applies to ERS Bondholders, the Movants claim instead that a lack of adequate protection "necessarily constitutes 'cause'" sufficient to lift the PROMESA stay. (Stay Relief Motion at 14). "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Riva v. Com. of Mass.*, 61 F.3d 1003, 1007 (1st

---

[1]    The term "Government of Puerto Rico," as defined in PROMESA, includes Commonwealth officers sued in their official capacity, *see* PROMESA § 405(i)(1), as well as the Commonwealth's instrumentalities, *see* 48 U.S.C. § 2104 ("PROMESA § 5") (11).

Cir. 1995) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 474-76 (1992)).

Here, the plain words of the statute do not support the Movants' interpretation because section

405(e)(2) of PROMESA makes no reference to "adequate protection."

| PROMESA, Section 405(e)(2) | Section 362(d)(1) of the Bankruptcy Code |
|---|---|
| "On motion of or action filed by a party in interest and after notice and a hearing, the United States District Court for the District of Puerto Rico, for cause shown, shall grant relief from the stay." 48 U.S.C. § 2194(e)(2). | "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay … for cause, including lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). |

Nonetheless, Movants argue that when Congress drafted PROMESA, it "legislated on the

premise that 'cause' to lift the automatic stay includes the lack of adequate protection." (Stay

Relief Motion at 15-16). There is no support for this assertion. While PROMESA's automatic

stay provision is based upon the Bankruptcy Code, Congress chose different words in drafting

PROMESA to express a different intent. Had Congress sought to make "lack of adequate

protection" a basis for lifting the PROMESA stay, it would have said so, just as it did in Section

362 of the Bankruptcy Code. *See, e.g.*, *Helmer v. Goodyear Tire & Rubber Co.*, 828 F.3d 1195,

1202 (10th Cir. 2016) (If "a legislature models an act on another statute but does not include a

specific provision in the original, a strong presumption exists that the legislature ***intended*** to

omit that provision.") (emphasis added); *Northland Cranberries, Inc. v. Ocean Spray*

*Cranberries, Inc.*, 382 F. Supp. 2d 221, 227 (D. Mass. 2004) ("When one statute contains

limiting language and a related statute does not, the court should presume that the difference was

intentional."). Indeed, it is well settled that "where words differ as they differ here, Congress

acts intentionally and purposely in the disparate inclusion or exclusion." *Burlington N. & Santa*

*Fe. Ry. v. White*, 548 U.S. 53, 62-63 (2006); *see also United States v. Azeem*, 946 F.2d 13, 17 (2d Cir. 1991) ("[C]ongressional consideration of an issue in one context, but not another, in the same or similar statutes implies that Congress intends to include that issue only where it has so indicated.").

The clear import of the language Congress chose to adopt is underscored by the legislative history.  In fact, the legislative history of PROMESA shows Congress intended to adopt an irreparable harm standard for lifting the automatic stay, and makes no reference to "adequate protection."  *See* H.R. Rep. No. 114-602, at *51 (2016) ("If a party is determined to be subject to irreparable damage because of the imposition of the stay, the District Court is authorized to grant relief from the stay to such a party.").  By contrast, the automatic stay in the Bankruptcy Code is available for any of the enumerated reasons expressed in the Bankruptcy Code, not just irreparable harm.  *See, e.g.*, *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994) (noting Congress limited "the issues decided by a bankruptcy court on a creditor's motion to lift the stay" to listed matters in Bankruptcy Code).  In other words, Congress intended the PROMESA stay to operate differently from the automatic stay in the Bankruptcy Code.

Congress no doubt did "model" portions of PROMESA on the Bankruptcy Code.  But where it did so Congress was not shy about copying statutory provisions from the Bankruptcy Code.  *Compare* PROMESA § 405(g) (relief from PROMESA § 405(b) stay is appropriate without hearing if necessary to "prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (e) or (f)") *with* 11 U.S.C. § 362(f) (same language under Bankruptcy Code's automatic stay).  The automatic stay provision in PROMESA, however, was not one of those occasions where Congress sought to copy language and import meaning from the

15

Bankruptcy Code. The cases cited above teach that in the circumstances there is a "strong presumption" that the differences are intentional.

## V. THE FIFTH AMENDMENT DOES NOT TRANSFORM LACK OF ADEQUATE PROTECTION INTO "CAUSE" FOR LIFTING THE PROMESA STAY.

Movants also argue that the definition of "cause" under Section 405(e) of PROMESA must include the "lack of adequate protection" language from Section 362 of the Bankruptcy Code because "adequate protection is derived from the Fifth Amendment's protection of property interests." Movants argue, therefore, that a lack of statutory "adequate protection" in PROMESA would render the statute unconstitutional. (Stay Relief Motion at 16).

As set forth fully and completely in the Commonwealth's Brief, the authorities relied upon by the Movants for this novel argument are entirely distinguishable. (*See* Commonwealth Br.). Movants simply have not offered any authority, much less binding authority, demonstrating there is a constitutional adequate protection requirement for security interests in revenue streams.

In any event, Movants claim of an unconstitutional taking is a red herring. PROMESA simply provides for a "breathing spell" to allow the Commonwealth to reorganize its assets, *see* PROMESA § 405(m) & (n), and does not "take" the Movants' future payment streams. As explained by the Oversight Board, the "damage to revenue bond holders would not be permanent or 'irreparable' – currently due payments would not be made now, but the perpetual revenue streams that secure their claims would still be available for future payments under yet-to-be negotiated fiscal plans or in future proceedings under PROMESA." (Oversight Board Br. at 13). Accordingly, any impact on the Movants is *de minimis* and a far cry from a constitutional "taking." *See, e.g.*, *Omnia Commercial Co., Inc. v. U.S.*, 261 U.S. 502 (1923) (where government took control over steel manufacturing company during national emergency it did not

"take" a third party contract to purchase steel in violation of Fifth Amendment but permissively frustrated the contract); *Melo-Tone Vending, Inc. v. U.S.*, 666 F.2d 687, 689 (1st Cir. 1981) ("Not every governmental act which interferes with, impairs, or ultimately destroys property rights constitutes a taking of property for which compensation is due under the Fifth Amendment.").

Finally, the Oversight Board proposes an accounting of creditors' funds, and production of relevant materials to ensure "transparency and facilitate negotiation with creditors." (Oversight Board Br. at 13). These protections are sufficient given the short period of the statutory stay and the national interest at stake.

<u>**CONCLUSION**</u>

WHEREFORE, Respondent ERS respectfully request that the Court deny the Motion for Relief from the PROMESA Stay, ECF No. 1, order the continuation of the stay of this action as provided by Section 405 of PROMESA, and order such further relief as it deems just and proper.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

In San Juan, Puerto Rico, this 26th day of October, 2016.

> **DLA PIPER (PUERTO RICO) LLC**
> Edificio Ochoa, Suite 401
> 500 Calle de la Tanca
> San Juan
> 00901-1969
>
> **s/ José A. Sosa-Lloréns**
> José A. Sosa-Lloréns