IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS |
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTOHORITY<br><br>Debtor | Title III<br><br>No. 17 BK 4780-LTS |

**OMNIBUS REPLY TO OPPOSITION TO MOTION REQUESTING LIFTING OF THE STAY**

**TO THE HONORABLE COURT:**

COMES NOW the Autonomous Municipality of Ponce, through its undersigned attorney hereby respectfully states as follows:

**I. INTRODUCTION**

1. The Autonomous Municipality of Ponce (Ponce) seeks the lifting of the stay in Municipio de Ponce v. ACT, Civil Case Number JAC1993-0485, before the Court of First Instance in Ponce. To that effect, it filed a motion requesting the lifting of the stay. The Commonwealth, PREPA and others oppose said request, advancing facts not supported by evidence and which

are controverted here.

## II. RELIEF REQUESTED

2. The appearing creditors seeks a modification of the stay imposed by Section 362 of the Bankruptcy Code so that several projects may be completed by the different Commonwealth agencies and PREPA. Many of these projects involve the safety and the protection of the environment in Puerto Rico, as per Justo E. Varela-Dieppa's statement under penalty of perjury, which is included as Exhibit 1 of this motion. Mr. Varela-Dieppa is the court appointed monitor in the aforementioned Commonwealth Court case.

## III. THE AUTOMATIC STAY DOES NOT APPLY TO MOST OF THE PROJECTS IN THIS CASE

3. Section 7 of PROMESA, 48 U.S.C. § 2106, states:

> Except as otherwise provided in this Act, nothing in this Act shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory.

4. Moreover, the House Committee on Natural Resources Report on H.R. 5278, the bill that later became PROMESA, commented at page 42 on Section 7 and said:

> This section requires territories to continue compliance with all other Federal law or requirements protecting health, safety and the environment, as well as territorial laws implementing Federally-authorized and delegated programs.

5. As stated by pages 7-8 and 10 of Exhibit 1, most of the stayed projects have to do with safety and environment implementing federal policy or Commonwealth federally authorized and delegated programs. Hence, they are exempt from the automatic stay and debtor's objections are without merit. As an simple example, see page 8-9 of the exhibit 1

paragraph 10, there are two projects almost finish of PREPA, since 2015 that was not conclude and it's as simple as wire the buried lines to energize the fellow citizens and business owns of Ponce to give more resilience of their electric service and the Court of Ponce are without jurisdiction to enforce that job do to the Automatic Stay. Just to name a harm that Ponce are suffering from maintaining the Stay. Today it is more important as we are on the hurricane season and preparations are of importance.

## IV. EVEN WHERE THE AUTOMATIC STAY APPLIES, THERE IS REASON TO LIFT SAID STAY

6. Defendants objections center on the *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) factors. They claim that the first *Sonnax* factor, to wit, whether relief would result in complete or partial resolution of the issues, is not present here. Although it is true that this case has gone to judgment, the terms of said judgment, must be put into effect. As Mr. Varela-Dieppa's declaration under penalty of perjury states at paragraph 10, page 11, 90% of the works required by the judgment has been fulfilled. "[T]he local remaining investment to finalize is approximately 3.4% . . . of said total." This is not mentioned by debtors nor do they mention that the Ponce v. ACT was filed in 1993 and the Puerto Rico Supreme Court affirmed the decision in 2000. See declaration under penalty of perjury of Mr. Varela-Dieppa, at paragraph 5, page 3.

7. Pursuant to 11 U.S.C. § 362(d), a bankruptcy court may modify the automatic stay "for cause" to permit the liquidation of a claim in a different court in a pending action. See*, In re Murray Industries, Inc.*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990). Although a creditor

must make a prima facie case to justify relief from the stay, the Debtor has the ultimate burden of persuasion that "cause" for relief does not exist under § 362 (d). See, *In re Anton*, 145 B.R. 767, 769 (Bankr. E.D.N.Y. 1992).

8. In *Peerles Insurance Company v. Peerless Insurance Comapany*, 208 B.R. 313, 315 (D.R.I. 1997), discussed the term cause:

> Section 362(d)(1) permits a "party in interest" to obtain relief from the Bankruptcy Code's automatic stay provision "for cause." 11 U.S.C. § 362(d)(1). The statute does not define "cause"; but, generally speaking, "cause" is said to exist when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted. Determining whether "cause" exists requires a fact intensive inquiry that must be made on a case by case basis.

9. A bankruptcy court may consider many factors when deciding whether to allow existing litigation related to a debtor to continue outside the bankruptcy court. However, bankruptcy courts consistently modify the stay to allow pending litigation to continue when, as in this case, the requested relief from the stay will promote judicial economy and create saving for the litigants without undue prejudice to the estate. See, e.g. *In re Tricare Rehabilitation Systems, Inc.*, 181 BR 569 (Bankr. N.D. Ala. 1994); *In re Robbins*, 964 F.2d 342 (4th Cir. 1992).

10. Also, in *In Re Annie's, Inc.*, 201 B.R. 29, 30 (Bankr. R.I. 1996), the Court stated "[w]here neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay." See also, In *C & A, S. E., v. Puerto Rico Solid Waste Management Authority*, 360 B.R. 12 (Bankr.P.R. 2006).

11. Here, debtors wish to shirk their responsibility with the safety and environment of the residents of Ponce and their duty to comply with federal entrusted programs. Debtor are in fact pushing said responsibility on Ponce, a municipality, which as all municipalities, have suffered great budgetary cuts by debtors' fiscal plans and budgets.

12. Finally, if the Court were to lift the stay for the projects to be completed, in part or in whole, this would end this 25 year case to the betterment of all in Ponce and the protection of its people's safety and the betterment of the environment. Hence, the first *Sonnex* factor favors the lifting of the stay.

13. Debtors claim that the second *Sonnax* factor, to wit, the lack of any connection with or interference with the bankruptcy case, does not support lifting the stay. This is simply non-sensical. PREPA, HTA, and the Commonwealth Agency, Natural Resources, cannot cease doing their ministerial duty of making sure any of the projects remaining in the Ponce case are done according to the law. In other words, if the stay is not lifted and somehow Ponce were to find the moneys to complete said projects, these three agencies would still have to expend time and money to make sure they are done in accordance to Puerto Rico and federal law. Hence, with or without stay, the Commonwealth, PREPA and HTA would still expend money and some of their officials would have to, pursuant to their legal duties as government agencies, spend time to make sure the works are completed safely and legally.

14. Moreover, at page 7, paragraph 12 of the Commonwealth's objection, debtors state that they would have to disburse over $100 million but do not provide any support to this

statement. Mr. Varela-Dieppa, the Commonwealth Court's monitor shows in Exhibit 1 that this amount is grossly overstated. At page 6 of his declaration he states that the total disbursement of the remaining works is $124,268,233.12, of which debtors would have to pay $44,154,610.38, see pages 7-9 of Exhibit 1 which discusses in detail the amounts.

15. At page 7, footnote 5 of the Commonwealth's objections, they state that PREPA would have to pay $16 million, again, without support or documentation. At page 6 of Exhibit 1, Mr. Varela-Dieppa, the Commonwealth Court's monitor, states that this amount is incorrect and it would have to be much less. Hence, the second *Sonnax* factor does indeed favor the lifting of the stay.

16. The fourth *Sonnax* factor, to wit, whether a specialized tribunal has been established to hear the cause of action, contrary to debtor's statements, favors the lifting of the stay. Mr. Varela-Dieppa, the Commonwealth Court's monitor, at pages 3-5, explains in detail his duties and responsibilities in the case. Moreover, as pointed out by debtors, this is not a litigation per se but rather the completion of decades long delayed work needed for the safety of the people of Ponce and the monitor is the especial person designated to make sure this work is completed accordingly. Moreover, his budget was only $150,000 a year of which he at the most had billed $90,000, charging $125 an hour, see paragraph 8, page 5 of Exhibit 1. Hence, this factor favors the lifting of the stay.

17. The Sixth *Sonnax* factor, to wit, whether the action essentially involves third-parties, favors the lifting of the stay. Mr. Varela-Dieppa, the Commonwealth Court's monitor, states at

paragraph 10, page 11 of Exhibit 1, that the amounts to be paid by debtors is $44,154,610.38 out of $124,268,233.12 since the remainder is from federal funding. Hence, this factor favors the lifting of the stay. The HTA recognizes this in its Joinder of the Commonwealth's motion by saying it consents to the lifting of the stay to allow certain specific construction projects to continue.

18. The Seventh *Sonnax* factor, to wit, whether the litigation could prejudice the interest of other creditors, debtors claim favor the stay. At page 11, paragraph 19, debtors state, "any time and money expended by the Commonwealth to comply with the Prepetition Judgment is time and money diverted from the overall recovery and reorganization of the Commonwealth." Debtors, however, do not seem to realize that Ponce is not seeking money for its general fund but rather the completion of long delayed projects for the safety of its residents, who also happen to be Puertorricans and have to be part of "the overall recovery and reorganization of the Commonwealth." What debtors do not seem to understand is that these remaining works **are** part of the recovery of Puerto Rico. Hence, the Seventh *Sonnax* factor favors lifting of the stay.

19. The final *Sonnax* factor, to wit, the balancing of harms, debtors claim favors them, claiming at page 13 that:

> Maintaining the automatic stay would simply preserve the status quo pending the Commonwealth's restructuring and recovery efforts under Title III. Indeed, the fact that Movant has waited decades for the various projects to be completed under the Development Agreement suggests that any harm Movant may suffer if the automatic stay remains in place would be minimal.

7

20. This cavalier statement belittles what actually happened. Even in their opposition, in allegation number 3 Debtors stay that "This would result in valuable resources being diverted from its recovery and reorganization efforts, and potentially result in Movant receiving an **unjustifiable windfall** compared to other creditors." (supplemented emphasis) Ponce had to sue the different agencies in 1993, win in the Court of First Instance, in the Appellate Court and finally in the PR Supreme Court in December 29, 2000 in order to force debtors and others to comply with the agreements. Moreover, from 2001 to the filing of the Title III cases in May and July of 2017, 90% of the work was done. Ponce did not wait but had to drag the Commonwealth and others, kicking and screaming, to comply with judgments. What the debtors want is for Ponce, a financially stressed municipality, further stripped of funding by the Commonwealth and Board's budgetary cuts, to complete these projects with its own money while pocketing its part for other endeavors, whatever they may be.

21. Moreover, the Court may remember the Board arguing that it was clawbacking money from the HTA bondholders for the payment of essential services but here it is denying said essential services to the residents of Ponce. This cannot be an equitable balancing of harms. Hence, this factor favors the lifting of the stay.

22. In synthesis, the Court should modify the automatic stay and allow the completion of the remaining projects, as there is "cause" pursuant to Section 362(d)(1) of the Bankruptcy Code. Hence, movants requests the modification of the automatic stay.

WHEREFORE: movants requests the modification of the automatic stay for cause

Respectfully submitted on this 3rd of August, 2018.

CERTIFY: That on this same day, the ECF system sent a copy of this motion to all parties in this litigation.

Respectfully submitted,

/s/**Carlos Fernández-Nadal**
Carlos Fernández-Nadal, Esq.
USDC No. 209208
818 Hostos Ave. Ste. B
Ponce, PR 00716
Tel. (787) 848-4612 / 787-533-6003
Fax (787) 395-7906
carlosfernandez@cfnlaw.com

9