IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br>Title III<br>No. 17 BK 3283-LTS |
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTOHORITY<br><br>Debtor | Title III<br>No. 17 BK 4780-LTS |

**STATEMENT UNDER PENALTY OF PERJURY**

I, Justo E. Varela-Dieppa, legal age, single, professional engineer, lawyer and public notary, and resident of Carolina, Puerto Rico, declare under penalty of perjury the following:

1. I am of the personal circumstances before expressed.

2. I am a Professional (Licensed) Engineer, License Number 4730-PE since 1973 (I got the license of Graduate Engineer in 1965) and I'm also a licensed Lawyer and Public Notary since 1976, registered at the Registro Unico de Abogados y Abogadas de Puerto Rico with number 5219.

3. My professional experience in general terms is the following:

   - I was a public servant for about 28 years (1960-1980, 1986-1994).

   - I worked 2 years with a private phone company, and during the period of 1980-1986 and since 1997 I have been in the private practice of my professions, mainly in the construction field and civil law.

   - I was one of the supervisors in the only and first nuclear plant for electric generation (1960-1967) in Latin America and one of three in the world of its type built in 1962 in the Barrio Puntas of Rincón, Puerto Rico. It was known as BONUS (Nuclear Boiling Superheater Plant). Furthermore, I was briefly a manager of a nuclear project that it was planned to be build in Aguirre, Puerto Rico (1978-1980).

   - I was president of the Institute of Electrical Engineers of the Colegio de Ingenieros y Agrimensores of Puerto Rico for 2 years and I was also a member of the Governing Board of said Colegio for 4 years.

   - I was president of the Caribbean Telecommunications Council (CTC) for 2 years.

2

4. I am the Special Monitor of the Tribunal de Primera Instancia (TPI) of Ponce with respect to the Sentence of the Civil Case #J AC1993-0485 since the month of October 2013. To the best of my knowledge, I'm the fourth monitor since 2001.

5. The Case #J AC1993-0485 was filed and heard in the Court of First Instance (TPI) in Ponce in the period of 1993-1996, considered in appeal in an intermediate court (Tribunal de de Apelaciones de Puerto Rico) in the 1996-1997 period and finally by the Supreme Court of Puerto Rico in year 2000 (2000 TSPR 194). The final decision was issued in December 29, 2000.

6. The Special Monitor was instituted by the TPI of Ponce in its Sentence and confirmed by the Appellate Court and the Supreme Court of Puerto Rico. It was originally known as Special Commissioner and later during the implementation of the Sentence it was revisited by the parties and the TPI then calling him Special Monitor up to this day.

7. Functions and responsibilities of the Special Monitor are essentially described in Rule 53 of the Federal Rules of Civil Procedure (Masters), which are similar to the ones in Rule 41 of the Puerto Rico Rules of Civil Procedure (2009). Although in Puerto Rico the rules don't recognize the Special Monitor, a Judge, as in this case, can name a Monitor instead of a Commissioner or the Special Commissioner. While the functions and responsibilities contained in the PR R 41 and the Federal R 53 are very similar, the Special Monitor in this case is not authorized to exercise quasi-judicial functions or to issued or served orders to the parties. But the Court can issue an order, usually negotiated with the parties, in relation to the development of a project and if anyone of the parties do not obey it, he must request the assistance of the Court. Commonly it is said that the Special Monitor is the "eyes and ears" of a Judge in complex cases. The

3

Ponce en Marcha case, as we will see, is highly complex case not only for its magnitude in the construction and development of infrastructures, but for the cost of the projects and the number of codefendants as well, originally eight (8) and today seven (7), the Puerto Rico Aqueducts and Sewer Authority (PRASA), Puerto Rico Ports Authority (PA), Puerto Rico Telephone Company (PRTC), Puerto Rico Highway and Transportation Authority (PRHTA), Puerto Rico Electric Power Authority (PREPA), Puerto Rico Housing Department (PRHA) and the Puerto Rico Department Natural of and Environmental Resources (PRNERD). The remainder government entity, the Public Building Authority (PBA), culminated their commitments about the 2012.

8. Among the functions of the Monitor, where many of them are contemplated in the Rule 53 of the Federal Rules of Civil Procedure and Rule 41 of the Puerto Rico Rules of Civil Procedure are the following:

- Monitoring the development of the different projects.
- Coordinating activities between codefendants that need the intervention of other ones. This happens a lot with the PREPA, PRASA, PRTC and PRHTA, and between the PRNERD and the PRHD, and to a lesser extent with the PRPA. Furthermore, at times he needs to coordinate with the Autonomous Municipality of Ponce (AMP), who is also monitor.
- Visit the projects to monitor their progress and to verify the construction schedule and development of each of them.
- Carrying out monthly meetings with the technical representatives of the codefendants and the plaintiff (AMP) to receive progress reports and to coordinate activities between them. Bringing along to the Special Monitor

4

problems that they have not been able to solve among themselves for his intervention.

- Making monthly meetings with the legal representatives of the codefendants and the plaintiff (AMP) to pay attention or to present legal aspects among themselves or regarding the Sentence. The Monitor, that is no necessarily a lawyer, although this Monitor is, tries to solve the controversy as it were a mediator. This Monitor is also Licensed Mediator. If the controversy is not solved, he puts it forward to the Court with his recommendations.

- At times, the Judge requests special reports to the Monitor, in addition to the one that orally presented before the follow-up hearings that the Judge of the TPI regularly schedule. They can be monthly or not. The Judge can also refer controversies that happen during the follow-up hearings to the Monitor or that the parties put forward by means of motions.

- The yearly budget for compensation for my services was $150,000, to be paid by the parties. I have not billed more than $90,000 a year for my services, which are compensated at $125.00 an hour.

9. This Sentence is not only highly complex from the point of view of execution, but it is also complex costly-wise. Great part (over 50 %) of the funds come from federal grants and federal assignments, mainly to agencies like to the PRHTA (FHWA), PRHD (HUD), PRNERD (congressional assignments, USACE), PRTC (private corporation) and the PRPA (FAA). The PREPA, PRASA and the PRPBA (that he already finalized) normally use the emissions of bonds to finance their program of capital improvements. My statements are based on my personal best knowledge and don't claim any special

5

exactitude of the information that I have been provided. Each agency should express the proportion between federal funds and local funds in each case.

10. I wish to make clear at the start that AAFAF statement the debtors would have to pay over $100 million and PREPA $16 million is incorrect and that it would have to be much less.

- Projects accomplished by all agencies: (Combined Funds)

| | | | | |
|---|---|---|---|---|
| I. | PRHTA: | $388,453,737.07 | PRASA: | $29,173,135.63 |
| II. | PREPA: | $43,761,872.06 | PRTC: | $4,042,047.00 |
| III. | PRHD: | $116,009,610.36 | PRPA: | $14,500,667.32 |
| IV. | PRNERD: | $436,638,188.83 | PBA: | $144,328,271.00 |
| | In short: | $986,863,408.32 | In short: | $192,044,120.95 |

Total of all the agencies: **$1,178,907,529.27**

- Projects pending: (codefendants under the Title III of PROMESA)

PRHTA: 000911: $3,000,000.00 + $6,000,000.00 (landslides)

000915: $22,000,000.00

In short: $31,000,000.00 (number for the fiscal year 2018-2019)

PREPA: $6,055,000.00 (number for the 20126-2017 fiscal year)

PRHD: $11,009,610.38 (number for the 2016-2017 fiscal year)

PRNERD: $76,203,622.74 (number for the 2016-2017 fiscal year)

6

In short: $124,268,233.12 (not all these funds are local)

The quantity of $6,000,000.00 for the project 000911 is an estimate to correct two landslides that happened due to subsoil problems. Both projects will be auctioned off as one. One happened some time ago because of the soil during a period and the other one happened largely caused by the María Hurricane, but where the characteristics of the subsoil played an important role. The FHWA will contribute for at least 80 % of the total cost. The road PR-9 will not be able to be used until these landslides are corrected. Hence, this expenditure has to do with the safety of those who use these highways.

- The only funds totally from PR budget are those of the PREPA and of the PRHD. The ones of the AEE were informed by the AEE to prepare the budget of the fiscal year 2016-2017. There have been no changes that we know. I do not know where the additional amount of $10 million mentioned in the objection to the lift of the stay. I accept that the amount could be slightly higher than $6 million, but never $10 million, unless PREPA gave the Court in Ponce wrong information at that moment.

- The other costs (PRHTA and PRNERD) must be reduced by the federal funds. Let's see. Of the $31M of the PRHTA we must deduct the 100 % in the costs for the project 000915 and al least 80% for the project 000911. This is, the real local cost for the ACT is 20% of $9M; It is **$1,800,000.00**. Moreover, these projects are for the safety and environment of Puerto Rico.

- In the case of the PRNERD the more expensive project pending is the channeling (canalization) of the Cana, Pastillo and Matilde Rivers. Its original cost, that was $72M is included in the table above, according to numbers

7

informed in the 2016 for the PRNERD. Today he should be much higher. In this case the proportion between federal and local funds is 65% federal, 35% Commonwealth. Among the remainders projects are the rehabilitation of the Lighthouse of the Islote of Caja of Muerto. That Lighthouse is under the control of the US Coast Guard and it gave a license to the PRNERD to administer it. But we don't know the proportion between federal and local funds, if there is one. The PRNERD should provide that information. This project is for the safety of the navigable waters of the United States. Applying the 35% for Channeling, which is for the safety and the environment, the local contribution would become of 35% of $72M; That is, **$25,200,000.00**.

- Even though we do not know the proportion of the PRHD with certainty, but we do know the proportions generally used in the projects already completed. For instance, in the PRHD for the modernization of public housing, the HUD contributes 100% of the investment and in other projects proportions are usually 75% federal and 25% Commonwealth. However, PRHD's $11M of projects to be completed we don't know if he can have or no federal funds in some percent. The PRHD should supply those proportions, if any one. In its opposition, however, AAFAF did not provide this information. However, one press released on July 31, 2018 stated that an assignment of $775 million in federal so-called funds CDBG-DR will be given to the PRHD for the repair, reconstruction and re-location of houses which are the large part of the remainder projects under the Ponce en Marcha's Sentence.

8

- Considering the federal funds of the PRHTA and the PRNERD, the total local amount for the pending works belongs to $1,800,000.00 (PRHTA) + $25,200.000.00 (PRNERD) + 6.055.000,00 (PREPA) + 11.009.6120,38 (PRHD) is **$44,154,610.38**. Not even close to the $116M that the AAFAF and the AEE alleged. It is 35.5 % of the total pending. If we could apply any more funds to the PRHD and PRNERD (Coast Guard), this quantity could be reduced still more. The PREPA remains the same.
- Some points to consider:
  * The AEE has two extremely important projects for the electric infrastructure in Ponce that would culminate her participation in the execution of the Sentence. We all know that a reason of the damage of the electrical system was the collapse of the power supply to the commercial and residential consumer due the fall of poles and lines. Within the federal budget for the recovery of the electrical system as part of the emergency assistances, the pending projects in Ponce en Marcha will fit well perfectly. One is to complete the wiring of buried lines belonging to the last part of Phase III in the urban area of Ponce and the other one is the buried of electrical lines for the Phase IV A, B and C in the Hostos Avenue from the Ferrocarril Street to the Salmón Street of Barrio Playa de Ponce.
  * The project of the Phase III is completed in 82%. The civil and road work already was completed. It was stopped due to fiscal problems since approximately June 2015. What it is missing is wiring all

9

buried from the transformers to the residential and commercial customers. The cost of what finished belongs to $12 around million and what he remains is around $600,000.00; A 5 %. Now this project is subject to the deterioration for the passage of time and the vandalism (the constructed was stopped since June 2015). Of another part, the Phase IV to and the B constitutes the buried one belonging to the Avenue Hostos even approximately the street Salmón at the outset of the Neighborhood Playa of Ponce. All this designed and coordinated. In that span the Huracán María did havoc to the electric distribution. In that phase, the C, (Phase IV C) n Sector Playa de Ponce the electrical lines cannot be buried because the water table is too high. The PREPA agreed with the AMP to change poles and realigning the system to minimize the aerial distribution. Hence, these projects plow for safety of the residents of Ponce and resilience against hurricanes.

\* At last, not least, considering the <u>projects to finalize and/or to begin</u> of all codefendants (four of them under the Title III of PROMESA and three not under the Title III of PROMESA), including federal and local funds, the final investment could be around **$134,268,233.12** ($124,268,233.12 + aprox. $10,000,000.00), for one possible great total eventually invested of **$1,313,175,762.3**9 considering the completed commitments. Therefore, the investment to conclude the execution of the Sentence would be around 10 % of

the invested total ($134,268,233.12/$1,313,175,762,39). Therefore, only is absent approximately a 10 % to satisfy a Sentence of a case filed in 1993. That is, after 25 years and an investment of around $1.32 billion, and the participation of eight original government entities (PRPBA, PRHTA, PREPA, PRASA, PRPA, PRHD, PRNERD and PRTC), and one is today a private corporation (CLARO- PRTC). Said in another way, they already have become invested around 90% of the total cost of the projects that are a part of the Sentence known as Ponce en Marcha, and the **local remaining investment to finalize is approximately 3.4% ($44,154,610.38/$1,313,175,762.39) of said total.**

11. I make this declaration to place in record information that I know or I have been familiar with performing my functions and responsibilities as a Special Monitor, and in that way, I declare it according to my best knowledge.

Executed under penalty of perjury in San Juan, Puerto Rico, this 1st day of August 2018.

Justo E. Varela-Dieppa