## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ---------------------------------------------------------------------- X | | |
| | : | |
| In re: | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | Case No. 17-BK-3283 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |
| ---------------------------------------------------------------------- X | | |

## URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 362, FOR ENTRY OF ORDER ENFORCING AUTOMATIC STAY AND COURT'S JUNE 29, 2017 ORDER CONFIRMING APPLICATION OF AUTOMATIC STAY WITH RESPECT TO GDB <u>RESTRUCTURING</u>

---

[1]    The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

JURISDICTION, VENUE, AND STATUTORY BASES .......................................................... 3

BACKGROUND ........................................................................................................................ 4

I.      General Background ..................................................................................................... 4

II.     GDB's Restructuring .................................................................................................. 4

RELIEF REQUESTED ............................................................................................................... 8

BASIS FOR RELIEF REQUESTED .......................................................................................... 8

I.      The GDB Restructuring Act Violates Automatic Stay ............................................. 10

II.     The GDB Restructuring Violates Automatic Stay .................................................... 11

       A.    GDB Restructuring Sets Off Debt Owing to Title III Debtors Against
Claims in Violation of Section 362(a)(7) ...................................................... 11

       B.    GDB Restructuring Is Act to Obtain Possession or Assert Control Over
Property of Title III Debtors That Violates Section 362(a)(3) ....................... 11

       C.    GDB Restructuring Is Judicial, Administrative, or Other Action or
Proceeding Against Title III Debtors That Violates Section 362(a)(1) ............... 13

       D.    GDB Restructuring Is Act to Create, Perfect, or Enforce Liens Against
Property of Title III Debtors That Violates Section 362(a)(4) ....................... 14

       E.    GDB Restructuring Is Act to Collect, Assess, or Recover Claims Against
Title III Debtors That Violates Section 362(a)(6) .......................................... 14

III.    Automatic Stay Cannot Be Waived ......................................................................... 14

IV.   GDB Restructuring Is Not Excepted from Automatic Stay as Exercise of
Commonwealth's Police Power ................................................................................ 16

CONCLUSION ......................................................................................................................... 17

URGENCY OF RELIEF ........................................................................................................... 17

NOTICE .................................................................................................................................... 17

NO PRIOR REQUEST ............................................................................................................. 17

LOCAL RULE 9013-1 CERTIFICATION ............................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Albion Disposal, Inc.*,
   217 B.R. 394 (W.D.N.Y. 1997) ..............................................................10

*In re Best Fin. Corp.*,
   74 B.R. 243 (D.P.R. 1987)................................................................3, 14

*Matter of Creel*,
   214 B.R. 838 (Bankr. E.D. La. 1997) .................................................11

*Doe by Fein v. D.C.*, 93 F.3d 861 (D.C. Cir. 1996),
   *certified question answered*, 697 A.2d 23 (D.C. 1997) ........................12

*In re Gen. Dev. Corp.*,
   179 B.R. 335 (S.D. Fla. 1995) ............................................................12

*In re Hokanson*,
   383 B.R. 548 (Bankr. D. Kan. 2008) ..................................................12

*Jaap Corp. v. Dep't of State*,
   187 D.P.R. 730 (2013) ........................................................................12

*In re Keene Corp.*,
   164 B.R. 844 (Bankr. S.D.N.Y. 1994) ...............................................12

*In re McMullen*,
   386 F.3d 320 (1st Cir. 2004).................................................................16

*Ostano Commerzanstalt v. Telewide Sys., Inc.*,
   790 F.2d 206 (2d Cir. 1986) *affirmed in part and reversed in part on other*
   *grounds by Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763 (2d
   Cir. 1986) ..........................................................................................3, 14

*In re Seven Seas Petroleum, Inc.*,
   522 F.3d 575 (5th Cir. 2008) ...............................................................12

*In re Washington Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ...................................................12

**Statutes**

7 L.P.R.A. § 1281 ...................................................................................11

11 U.S.C.

§ 105(a) ...............................................................................................................1, 3, 8
§ 362 ..............................................................................................................1, 2, 3, 8
§ 362(a) ..........................................................................................................1, 8, 9
§ 362(a)(1) ......................................................................................................9, 13, 16
§§ 362(a)(1)-(a)(7) .........................................................................................9
§ 362(a)(2) ......................................................................................................16
§ 362(a)(3) ......................................................................................... *passim*
§ 362(a)(4) ..................................................................................9, 10, 14, 16
§ 362(a)(6) ......................................................................................9, 11, 14
§ 362(a)(7) ..................................................................................9, 11, 12, 16
§ 362(b)(4) ......................................................................................................16
§ 362(d) ..........................................................................................................3, 15
§ 365 ...............................................................................................................1
§ 541(a)(1) ......................................................................................................12
§ 922 ...............................................................................................................1

PROMESA

§ 301(a) ..........................................................................................1, 2, 3, 8
§ 301(c)(5) ......................................................................................................8
§ 304(a) ..........................................................................................................4
§ 306(a) ..........................................................................................................3
§  307(a) .........................................................................................................3
§ 601(M)(1)(D) ..............................................................................................1
§ 601(m)(2) .....................................................................................................7, 13

**Other Authorities**

Puerto Rico Const. Art. VI, § 9 ..................................................................................11

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") hereby submits this motion (the "Motion"), pursuant to sections 105(a) and 362 of Title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these Title III cases by section 301(a) of PROMESA, requesting entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), enforcing the automatic stay and this Court's June 29, 2017 order confirming application of the automatic stay in these Title III cases (the "Stay Order")[2] with respect to certain actions taken by or on behalf of the Government Development Bank for Puerto Rico ("GDB") in connection with (a) the *Application of the Government Development Bank for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority, Pursuant to Section 601(M)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act, for Approval of the Qualifying Modification for GDB* [Docket No. 1 in Case No. 18-1561] (the "Title VI Application"), and (b) the proposed restructuring of GDB described in the Title VI Application and in Act. No. 109-2017 of the Puerto Rico Legislative Assembly, as amended by Act No. 147-2018 (the "GDB Restructuring Act" and, together with the Title VI Application, the "GDB Restructuring").  In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Long before the commencement of these Title III cases, GDB, as financial advisor and banker to the Title III Debtors, was the architect of many of the financial maneuvers that led to the Title III Debtors' current fiscal crisis.  As a result of the fiscal crisis, GDB was operationally wound down and ceased operations more than a year ago, but former GDB insiders

---

[2]    *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [Docket No. 543, June 29, 2017].

remain involved in all aspects of Puerto Rico's restructuring efforts.  Indeed, current and former
GDB insiders are now (i) board members of the Oversight Board, (ii) officers of AAFAF, (iii)
managing directors of AAFAF's financial advisor, or (iv) the executive director of a GDB
bondholder group supporting the transaction (the so-called "Bonistas Del Patio")

2.     These individuals would prefer that this Court "bury" GDB before the Committee
and other interested parties have the opportunity to perform the autopsy.  To that end, GDB
commenced a judicial proceeding that is premised on multiple violations of the Title III
automatic stay.  That judicial proceeding – the GDB Restructuring – proposes, among other
things, to (a) offset the public funds deposited with GDB by the Title III Debtors against GDB's
alleged outstanding loans to the Title III Debtors, (b) transfer all of the valuable assets at GDB
(much of which consists of deposits of public funds held in trust or in a fiduciary capacity) to the
Recovery Authority (as defined below) for the exclusive benefit of GDB's bondholders, (c)
release GDB and its current and former directors, officers and other representatives from any
claims that could be brought against them by the Title III Debtors, and (d) burden the
Commonwealth with the obligation to repay hundreds of millions of dollars on account of federal
funds deposited with GDB.

3.     The Committee generally opposes the GDB Restructuring, and will be seeking
other relief related to the GDB Restructuring in both the Title III cases and the Title VI case.
This motion is one of the various components of the Committee's opposition to the GDB
Restructuring.  Specifically, by this motion, the Committee seeks to enforce the automatic stay in
these Title III cases so that the Title III Debtors do not lose all of their rights and claims against
GDB and its current and former officers, directors and representatives.  When the Title III
Debtors commenced their cases, the Title III automatic stay went into effect under section 362 of
the Bankruptcy Code, made applicabe in Title III cases pursuant to section 301(a) of PROMESA.

This automatic stay cannot be waived—it can only be lifted by the Court, after notice and a

hearing, pursuant to section 362(d) of the Bankruptcy Code.[3]

4.      The automatic stay exists to protect creditors, as well as debtors, and facilitates

the orderly and efficient administration of the bankruptcy case.[4]  Therefore, the Oversight Board,

AAFAF and the Title III Debtors cannot waive the automatic stay by consenting to the stay

violations contemplated in the GDB Restructuring.  Given the above, the Committee requests

that the Court enter an order enforcing the automatic stay and prohibiting any further action to

strip the Title III Debtors of whatever rights they have against GDB.  Because the Title VI case

and related solicitation activities have already been commenced and GDB seeks to finalize the

GDB case by scheduling a hearing for approval of the Qualifying Modification on November 6,

2018, prior to the November 7 omnibus hearing, it is paramount that this Motion be considered

on an expedited basis at the omnibus hearing scheduled for September 13, 2018.

## JURISDICTION, VENUE, AND STATUTORY BASES

5.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction over this matter pursuant to section 306(a) of PROMESA.

6.      Venue is proper pursuant to section 307(a) of PROMESA.

7.      The statutory bases for the relief requested herein are sections 105(a) and 362 of

the Bankruptcy Code, made applicable to these Title III cases by section 301(a) of PROMESA.

---

[3]   11 U.S.C. § 362(d) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . .").

[4]   *See In re Best Fin. Corp*., 74 B.R. 243, 245 (D.P.R. 1987) (debtor "***cannot waive the automatic stay***, since the purpose of its enactment by Congress was not only to protect debtors and creditors, but also to provide an 'orderly and efficient administration of a bankruptcy estate.'" (citing *In re Nashville White Trucks, Inc.*, 22 B.R. 578 (Bankr. M.D. Tenn. 1982)). *See also Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986) *affirmed in part and reversed in part on other grounds by Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763 (2d Cir. 1986) ("Since the purpose of the stay is to protect creditors as well as the debtor, the debtor may not waive the automatic stay.")

## BACKGROUND

### I.    General Background

8.    On May 3, 2017, the Oversight Board commenced a Title III case for the

Commonwealth by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA.

Thereafter, the Oversight Board commenced a Title III case for each of COFINA, ERS, HTA,

and PREPA.[5]  On June 15, 2017, the Office of the United States Trustee for the District of Puerto

Rico filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338],[6]

thereby appointing the members of the Committee.

9.    On June 29, 2017, the Court entered the Stay Order.

10.    On June 29, 2017 and October 6, 2017, the Court approved the joint

administration of the Title III Cases.

### II.    GDB's Restructuring

11.    GDB is a public corporation and instrumentality of the Commonwealth that

formerly served as fiscal agent and depository bank to the Title III Debtors.[7]  Until early 2017,

when GDB wound down its operations, the Title III Debtors were, upon information and belief,

required to deposit all their funds with GDB.[8]

---

[5]    Unless otherwise indicated, references to docket numbers shall be to the docket of the Debtors Title III Case.

[6]    On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

[7]    Exhibit O to the Declaration of Suzzanne S. Uhland, Esq. in Support of GDB's Title VI Application, dated August 10, 2018 at 28 [Docket No. 1-15 in Case No. 18-1561 (the "Solicitation Statement")].

[8]    *See* Act 24-2014, Section 1-A ("Government Development Bank for Puerto Rico may require any agency, department, public corporation, instrumentality, board, commission, authority, and political subdivision of the Debtors of Puerto Rico (hereinafter denominated as 'government entities') to deposit and maintain the total or a portion of their funds in deposit accounts, certificates or other instruments issued by the Government Development Bank for Puerto Rico.").

12.    GDB filed a proof of claim against the Commonwealth,[9] and the Title III Debtors,

in turn, hold various claims against GDB.  Although the Committee is still investigating GDB's

activities related to the Title III Debtors, the Title III Debtors hold claims for amounts on deposit,

and may also hold claims against GDB for breaches of fiduciary duty, claims for return of public

funds deposited at GDB, and claims for the recovery of preferential transfers, among others.  The

Committee has attempted for over a year to obtain discovery in order to investigate the Title III

Debtors' claims against GDB, but numerous requested documents have not been provided.

13.    According to GDB's New Fiscal Plan, which was certified on April 20, 2018, as

of December 31, 2017, GDB received deposits of approximately $3.5 billion and owed

unsecured bond debt, including accrued interest, of over $4 billion.[10]  According to GDB's

Solicitation Statement, as of July 1, 2018, GDB held approximately $624.8 million in cash and

cash equivalents.

14.    Based on its fiscal challenges, GDB's management decided to wind down its

operations.[11]  GDB's operational wind-down was completed more than one year ago, with all

fundamental operations having ceased or been transferred to other entities such as AAFAF.[12]

15.    To effectuate the GDB wind-down, AAFAF (which now employs many of the

former officers and other employees of GDB) proposed a restructuring scheme pursuant to the

terms of the Restructuring Support Agreement between AAFAF, GDB, and certain GDB

creditors (the "RSA"), as well as a legislative framework for that RSA that became the GDB

---

[9]    *See* GDB's proof of claim against the Commonwealth asserts outstanding loans with a balance of approximately $2.2 billion.

[10]   Uhland Decl. Ex. O at F-9 [Docket No. 1-15 in Case No. 18-1561 (the "GDB New Fiscal Plan")].

[11]   GDB New Fiscal Plan at F-6.

[12]   GDB New Fiscal Plan at F-7.

Restructuring Act.  To implement the RSA and the GDB Restructuring, GDB filed its Title VI

Application on August 10, 2018.[13]

16.     The GDB Restructuring will be implemented in two parts:

a.    First, GDB bondholders, municipal depositors, and non-government entity

depositors will be allowed to participate in and vote on a Title VI "Qualifying

Modification."  Upon consummation of the Title VI case, these **favored,** but thus

far unsecured, creditor groups will exchange their old claims for new notes with a

face of value of 55%, secured by all the assets of a new governmental entity

called the GDB Debt Recovery Authority (the "Recovery Authority").  The

Recovery Authority will receive substantially all the liquid assets held by GDB,

including GDB's municipal loan portfolio, a portion of its public entity loan

portfolio, its real estate owned assets, and its unencumbered cash.

b.    Second, the Commonwealth and its other instrumentalities, including the other

Title III Debtors (referred to in the Title VI Application as "Non-Municipal

Government Entities"), will not be able to participate in the Title VI case and will

not be able to receive notes backed by the assets of the Recovery Authority.  The

**disfavored** Non-Municipal Government Entities will have any deposits held by

GDB set off against purported loan balances owed to GDB, and those holding net

claims against GDB will receive, pursuant to the GDB Restructuring Act, a pro

rata share of interest in the Public Entity Trust (the "PET") **that holds a single**

**asset – GDB's alleged claim against the Commonwealth.**  This unliquidated

interest in the PET (it may be worthless because neither the Commonwealth nor

the GDB's fiscal plan makes provision for payment of such yet-to-be-allowed

---

[13]    *The Government Development Bank of Puerto Rico*, Case No, 18-0156, (D.P.R. 2018), Docket No. 1.

claim) will be deemed to be in full satisfaction of any and all claims Non-

Municipal Government Entities may have against GDB.[14]  In other words, the

Title III Debtors' deposit claims against GDB are being subordinated to the

claims of GDB's bondholders and other favored unsecured creditors.

17.     In addition, under the GDB Restructuring, the Commonwealth will be assuming

approximately $312 million in liabilities to the federal government on account of federal funds

granted to the Commonwealth and municipalities pursuant to federal programs and deposited at

GDB.[15]  The Title III Debtors' and other Non-Municipal Government Entity deposit claims with

respect to federal funds will also be eliminated in exchange for the potentially worthless interest

in the Public Entity Trust, leaving all federal funds to be paid from future appropriations by the

Commonwealth.  Consequently, any cash remaining at GDB from federal funds deposits will be

part of the assets allocated to the Recovery Authority or retained by GDB.  It will not, however,

be distributed to the intended beneficiary.

18.     Once approved by the Court, the "Qualifying Modification will be full, final,

complete, binding, and conclusive as to the territorial government Issuer, other territorial

instrumentalities of the territorial government Issuer, ***and any creditors of such entities***, and

should not be subject to any collateral attack or other challenge by any entities in any Court or

other forum."[16]  In other words, it will bind the Title III Debtors and their creditors.  Moreover,

the GDB Restructuring Act purports to (a) release all the Title III Debtors' claims against GDB,

the Recovery Authority and the Public Entity Trust, and any current or former officers, directors,

employees, and agents thereof, (b) eliminate the standing of the Title III Debtors to challenge the

---

[14]    *See* Title VI Application, ¶ 36.

[15]    Solicitation Statement at 30.

[16]    PROMESA § 601(m)(2) (emphasis added).

GDB Restructuring or GDB Restructuring Act, and (c) exculpate any person for actions in accordance with the GDB Restructuring Act or Qualifying Modification.

19.    Thus, the GDB Restructuring eliminates the Title III Debtors' claims against GDB, eliminates the Title III Debtors' claims against current or former GDB insiders and representatives, and subordinates the Title III Debtors' claims by transferring all of the valuable assets at GDB to the Recovery Authority, an entity which was created to shield GDB's assets from distribution to the Title III Debtors.

## RELIEF REQUESTED

20.    By this Motion , the Committee seeks the entry of the Proposed Order, substantially in the form attached hereto, pursuant to sections 105(a) and 362(a), enforcing the automatic stay against GDB and AAFAF by declaring that (a) the GDB Restructuring violates the automatic stay under section 362 of the Bankruptcy Code and the Stay Order, (b) any limitations on claims that have been or may be asserted by the Title III Debtors against GDB or related third-parties are void, and (c) any transfer or "shielding" of assets pursuant to the GDB Restructuring that could have been used, prior to the implementation of the GDB Restructuring, to satisfy claims of the Title III Debtors by GDB, is void.

## BASIS FOR RELIEF REQUESTED

21.    Upon commencement of a Title III case, Bankruptcy Code section 362, made applicable by PROMESA section 301(a), immediately imposes an automatic stay of, among other things:

> a.    "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"[17];

---

[17]    11 U.S.C. § 362(a)(3).  Section 301(c)(5) of PROMESA clarifies that "[t]he term 'property of the estate', when used in a section of Title 11, made applicable in a case under this subchapter by subsection (a), means property of the debtor." PROMESA § 301(c)(5).

b.   "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"[18];

c.   "any act to create, perfect, or enforce any lien against property of the estate";[19]

d.   "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title,"[20] ; and

e.   "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."[21]

22.     In addition, this Court's Stay Order incorporates the automatic injunctions set forth in section 362(a) of the Bankruptcy Code, specifically stating that "all persons," "foreign and domestic governmental units," and "all other entities . . . are stayed, restrained, and enjoined" from taking actions prohibited under section 362(a)(1) through (a)(7) of the Bankruptcy Code.[22]  Moreover, the Court explicitly retained jurisdiction to "hear and determine all matters arising from or related to the implementation, enforcement, or interpretation" of the Stay Order.[23]

---

[18]   11 U.S.C. § 362(a)(1)

[19]   11 U.S.C. § 362(a)(4).

[20]   11 U.S.C. § 362(a)(6)

[21]   11 U.S.C. § 362(a)(7)

[22]   Stay Order, ¶ 2.

[23]   Stay Order, ¶ 15.

I.      **The GDB Restructuring Act Violates Automatic Stay**

23.      The GDB Restructuring Act is an essential element of the GDB Restructuring, which effectuates multiple violations of the automatic stay.  Among other things, the GDB Restructuring Act purports to provide (a) for the setoff of the Title III Debtors' deposits,[24] (b) the creation of a lien against public funds held in trust or in a fiduciary capacity until they are to be transferred to the Recovery Authority,[25] (c) the transfer of GDB's assets, including public funds, to the Recovery Authority (and authorization of such transfer),[26] (d) the wholesale release of the Title III Debtors' claims against GDB and its current and former insiders and other representatives,[27] (e) the elimination of the Title III Debtors' rights with respect to challenges of the GDB Restructuring,[28] and (f) a broad exculpation of any of the Title III Debtors' claims against parties based actions in connection with the GDB Restructuring. [29]  The GDB Restructuring Act thus effectively eliminates the Title III Debtors' claims against GDB and third parties.[30]

24.      Thus, in and of itself, the GDB Restructuring Act is an act "to obtain possession of property of the [Title III Debtors] or of property from the [Title III Debtors] or to exercise control over property of the [Title III Debtors]"[31]; "to create, perfect, or enforce any lien against property of the [Title III Debtors]"[32]; and "to collect, assess, or recover a claim against the [Title

---

[24]   GDB Restructuring Act, Article 302.

[25]   GDB Restructuring Act, Article 402.

[26]   GDB Restructuring Act, Article 403(i) (authorizing transfer) and 404(a) (ordering transfer on closing date).

[27]   GDB Restructuring Act, Article 702.

[28]   GDB Restructuring Act, Article 703.

[29]   GDB Restructuring Act, Article 704.

[30]   *See, e.g., In re Albion Disposal, Inc.*, 217 B.R. 394, 408 (W.D.N.Y. 1997) (stating that if town ordinance terminated rights that were property of the estate ordinance would violate automatic stay).

[31]   11 U.S.C. § 362(a)(3).

[32]   11 U.S.C. § 362(a)(4).

III Debtors] that arose before the commencement of the case under this title."[33]  The GDB

Restructuring Act also acts to set off debts owing to the Title III Debtors against claims owed by

them.[34]  Therefore, the GDB Restructuring Act violates the automatic stay with respect to any

claims that have been or may be asserted by the Title III Debtors.

**II.**     **The GDB Restructuring Violates Automatic Stay**

25.     The GDB Restructuring—in addition to being an egregiously one-sided

transaction in which a favored group of unsecured creditors obtains virtually all of GDB's value

at the expense of the Title III Debtors and their creditors—violates the automatic stay in multiple

ways.

*A.*     *GDB Restructuring Sets Off Debt Owing to Title III Debtors Against Claims in Violation of Section 362(a)(7)*

26.     The netting of deposits placed with GDB against claims asserted by GDB is an

obvious violation of section 362(a)(7), which explicitly stays the exercise of set-off rights.

*B.*     *GDB Restructuring Is Act to Obtain Possession or Assert Control Over Property of Title III Debtors That Violates Section 362(a)(3)*

27.     When a debtor deposits money with another in trust or in a fiduciary capacity, the

money remains property of the debtor's estate.[35]  Here, the Title III Debtors deposited billions of

dollars with GDB consisting of public funds that are held in trust or in a fiduciary capacity by

GDB under Puerto Rico law.[36]  The GDB Restructuring, therefore, would effectuate the transfer

---

[33]   11 U.S.C. § 362(a)(6).

[34]   11 U.S.C. § 362(a)(7).

[35]   *See Matter of Creel*, 214 B.R. 838, 841 (Bankr. E.D. La. 1997) (concluding that former contents of the debtor's bank accounts held in trust by the clerk of court, should be considered as property of the estate).

[36]   GDB may hold the Debtors' funds in trust or in a fiduciary capacity for multiple reasons.  For example, GDB was a trustee for public funds held in trust for the investment needs of the government, pursuant to Puerto Rico statute.  *See* 7 L.P.R.A. § 1281 (naming GDB trustee of trusts for the investment of public fund).  In addition, public funds remain the Debtors' property pursuant to the Puerto Rico Constitution, *see* Puerto Rico Const. Art. VI, Section 9, which restricts the disposition of public funds such that they can only be used for public purposes and for maintaining the operation of the Commonwealth as authorized by law.  This provision has been interpreted by the Puerto Rico Supreme Court as requiring that public funds be managed with the "highest

of funds that do not belong to GDB to pay GDB's unsecured bondholders, which would constitute an act to obtain possession or assert control over the Title III Debtors' property in violation of the stay. This would also be contrary to the purpose of the automatic stay, which is to maintain the *status quo* so that the Court may oversee an orderly distribution of the Title III Debtors' property to its creditors.

28.     In addition, the Title III Debtors' claims against GDB are the Title III Debtors' property.[37] That property interest will be eviscerated by the contemplated wholesale release of the Title III Debtors' claims against GDB, the broad release and exculpation of individual representatives at GDB who may be liable to the Title III Debtors for breach of fiduciary duties in the mismanagement of the Title III Debtors' financial affairs, and the irrevocable transfer of all liquid assets that are available today to satisfy the Title III Debtors' claims.

29.     The Title III Debtors have claims against GDB on account of deposits[38] (including with respect to PREPA's $114 million claim on account of its net deposits), and likely also have significant other claims against GDB, including for breach of fiduciary duty based on

---

ethical and fiduciary standards." Exhibit B (*Jaap Corp. v. Dep't of State,* 187 D.P.R. 730, 739 (2013) (citing cases)).

[37]  *See, e.g., Doe by Fein v. D.C.*, 93 F.3d 861, 870 (D.C. Cir. 1996), *certified question answered*, 697 A.2d 23 (D.C. 1997) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982), for proposition that legal claim is a type of property). *See also In re Seven Seas Petroleum, Inc.,* 522 F.3d 575, 584 (5th Cir. 2008) ("The filing of a bankruptcy petition creates an estate that is comprised of, among other things, 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 11 U.S.C. § 541(a)(1). The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law."); *In re Gen. Dev. Corp.*, 179 B.R. 335, 338 (S.D. Fla. 1995) ("The bankruptcy estate includes all legal claims owned by [a] corporate debtor, including derivative actions brought by shareholders." (citing *Matter of Consolidated Bancshares*, 785 F.2d 1249, 1253–54 (5th Cir.1986*); Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984)); *In re Hokanson,* 383 B.R. 548, 558 (Bankr. D. Kan. 2008) ("The bankruptcy estate includes contingent and unmatured claims, provided that they are rooted in the bankrupt's prepetition past."); *In re Keene Corp.,* 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994) ("Claims against officers and directors for breach of fiduciary duty, as well as claims against the knowing recipients of the fruits of their disloyalty, are property of the estate.").

[38]  Thus, the proposed set-off in the GDB Restructuring, in addition to violating section 362(a)(7) which stays set off, is also an act to obtain possess or exercise control over property that is stayed by section 362(a)(3). *See, e.g., In re Washington Mut., Inc*., 442 B.R. 314, 330 (Bankr. D. Del. 2011) (stating that law is "well-settled" that deposit accounts are "property of the estate.").

GDB's mismanagement of public funds it held in trust or in a fiduciary capacity. Moreover, the Title III Debtors may also have claims against third parties such as GDB's officers, directors, employees, and other agents and representatives. It is not the Committee's burden to establish the amount of those claims at the time, especially given the complete lack of discovery or transparency with which GDB has operated throughout this process. The question of the quantity or nature of the Title III Debtors' claims against GDB and third parties is irrelevant to this point. Whatever claims may exist are the Title III Debtors' property and protected by the automatic stay.

C.    *GDB Restructuring Is Judicial, Administrative, or Other Action or Proceeding Against Title III Debtors That Violates Section 362(a)(1)*

30.    The Title VI case is, itself, a legal proceeding against the Title III Debtors (and their creditors) because it will be "full, final, complete, binding, and conclusive as to the territorial government Issuer, other territorial instrumentalities of the territorial government Issuer, and any creditors of such entities."[39] This means that the Title III Debtors and their creditors will be fully bound by the outcome of the Title VI case. Moreover, the Title VI case is mutually dependent on the GDB Restructuring Act.[40] Taken as a whole, the Title VI case is

---

[39]    PROMESA § 601(m)(2) (emphasis added).

[40]    The GDB Restructuring Act is attached to the Declaration of Suzzanne S. Uhland, Docket No. 5, at Ex. K and Ex. M. Neither the Title VI Application nor the GDB Restructuring Act can become effective without the other. The Title VI Application makes clear that the Qualifying Modification involves issuing new bonds to existing GDB bondholders from a newly created entity called the Recovery Authority, (Title VI Application at ¶ 3), but the new bonds will be paid from assets at GDB (which assets are, prior to enforcement of the GDB Restructuring Act, available to satisfy the claims of all Title III Debtors against GDB) to be transferred under the GDB Restructuring Act. See Title VI Application at ¶ 27. Indeed, the Restructuring Support Agreement ("RSA") upon which the Title VI Application is based expressly required enactment of the GDB Restructuring Act. See Uhland Decl., Ex. G-A (Term Sheet) at p.1. Specifically, the RSA provides that "The Restructuring shall be carried out pursuant to Act No. 109-2017, also known as the [GDB Restructuring Act]." In turn, the asset transfers and new bonds contemplated by the GDB Restructuring Act will not occur until the "Effective Date". See GDB Restructuring Act Arts. 401, 403. The term "Effective Date" is defined as "the date on which the Qualifying Modification becomes conclusive and binding pursuant to Section 601(m) of PROMESA" (i.e., after the Court approves such modification). Thus the Title VI Application and the GDB Restructuring Act are two essential elements of the scheme to liquidate GDB by shielding the assets at GDB from the claims of the Title III Debtors and their creditors.

undoubtedly an action against the Title III Debtors, because it is pursuant to the Title VI process that GDB's favored creditors will strip virtually every asset from GDB, leaving nothing for the Title III Debtors and their creditors.

> **D.**  **GDB Restructuring Is Act to Create, Perfect, or Enforce Liens Against Property of Title III Debtors That Violates Section 362(a)(4)**

31.    As discussed above, the GDB Restructuring Act creates a lien against GDB's assets in favor of Wilmington Trust (the Indenture Trustee for the GDB bondholders) in order to secure repayment of the favored GDB bondholders, despite the fact that the GDB bondholders **hold unsecured bonds**.[41]  GDB has received deposits from the Debtors of public funds that are held in trust or for which GDB is a fiduciary.  The GDB Restructuring will result in yet another violation of the automatic stay based upon the creation of liens on the property of the Title III Debtors.

> **E.**  **GDB Restructuring Is Act to Collect, Assess, or Recover Claims Against Title III Debtors That Violates Section 362(a)(6)**

32.     The GDB Restructuring is an "act to collect, assess, or recover a claim against the debtor" because, among other things, GDB will be (a) setting off the Title III Debtors' deposits against GDB's loans, an act that is manifestly an act to assess or recover on claims, and (b) forcing the Commonwealth to repay federal funds deposited with GDB while the proceeds of those funds are used to pay GDB's bondholders.

## III.    **Automatic Stay Cannot Be Waived**

33.    The automatic stay exists to protect creditors, as well as debtors, and provides for the orderly and efficient administration of a bankruptcy case.[42]  Therefore, neither the Oversight

---

[41]    *See* GDB Restructuring Act, Article 402.

[42]    *See In re Best Fin. Corp*., 74 B.R. 243, 245 (D.P.R. 1987) (debtor "***cannot waive the automatic stay***, since the purpose of its enactment by Congress was not only to protect debtors and creditors, but also to provide an 'orderly and efficient administration of a bankruptcy estate.'" (citing *In re Nashville White Trucks, Inc*., 22 B.R. 578 (Bankr. M.D. Tenn. 1982)) *See also Ostano Commerzanstalt v. Telewide Sys., Inc*., 790 F.2d 206, 207 (2d

Board nor the Title III Debtors can waive the automatic stay by consenting to the violation of the

stay contemplated in the GDB Restructuring.

34.     As this Court has already held, the automatic stay applies even if the Oversight

Board consents to relief from stay.  As the Court will recall, in September 2017, the Title III

Debtors requested entry of an order amending the Case Management Procedures to allow them,

with the approval of the Oversight Board, to enter into agreements to lift or modify the stay

without Court approval with respect to certain prepetition ordinary-course litigation.[43]  The Title

III Debtors clearly knew at this time, that a Court order would be required for them to lift or

modify the stay, even with Oversight Board approval, and even in limited circumstances only

involving pre-petition ordinary course litigation (the Title III Debtors' proposed procedures

explicitly excluded stay relief requests by creditors seeking to enforce financial debt claims.)[44]

35.     In response to the Title III Debtors' motion, the Court entered an order in which it

held that section 362(d) of the Bankruptcy Code mandated that the Court grant relief from the

automatic stay at the request of a party in interest and after notice and a hearing.[45]  It then

ordered, "[i]n light of the express language in section 362(d) and in the interests of

transparency," that the Title III Debtors were required to file revised proposed procedures that

were far more restrictive of the Title III Debtors' ability to agree or stipulate to relief from stay

than even the fairly limited procedures the debtors had proposed.[46]

---

Cir. 1986) *affirmed in part and reversed in part on other grounds*, ("Since the purpose of the stay is to protect
creditors as well as the debtor, the debtor may not waive the automatic stay.")

[43]   *Debtors Entities' Motion to Amend Second Amended Notice, Case Management and Administrative Procedures
to Further Revise Protocol for Stay Relief Motions* [Docket No. 1299, Sept 12, 2017].

[44]   *Id.* ¶ 13. ("The Lift Stay Notice Period and the procedures set forth below shall not apply to Stay Relief Motions
that are filed by creditors seeking to enforce a financial debt claim.").

[45]   Stay Procedures Order, at 1-2.

[46]   *Id.* at 2.

36.     The revised procedures in the Court's order required, even in the narrow situation contemplated by the Title III Debtors' motion (*i.e.*, prepetition ordinary course litigation), that the Title III Debtors must file lift stay motions every sixty days identifying the agreed-to stay modifications and seeking Court approval of such modification on a *nunc pro tunc* basis.[47] These same provisions are in the current version of the Case Management Procedures.[48]  Given that a Court order is already required for relief from stay pursuant to Court-approved procedures involving ordinary course pre-petition litigation (and excluding debt claims), it is crystal clear that Court approval is required for relief from stay where **non-ordinary course, post-petition litigation is commenced in order to realize on debt claims**, even if the Oversight Board consents.

## IV.     GDB Restructuring Is Not Excepted from Automatic Stay as Exercise of Commonwealth's Police Power

37.     Finally, the GDB Restructuring is clearly not a "police power" action that is excepted from the stay under section 362(b)(4) of the Bankruptcy Code.[49]  As a debt restructuring, the "pecuniary purpose" of the GDB Restructuring is obvious—it has nothing to do with public health and safety, but fundamentally involves financial matters only.[50]  Moreover, section 362(b)(4) expressly does not apply to the creation of liens, prohibited by section 362(a)(4), or the set-off of the Title III Debtors' deposits, prohibited by section 362(a)(7).[51]

---

[47]     *Id.*

[48]     Case Management Procedures, at III.Q.

[49]     11 U.S.C. § 362(b)(4) (excepting from the automatic stay, with respect to sections to actions described in section 362 (a)(1), (2), (3), or (6) "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power").

[50]     *See In re McMullen,* 386 F.3d 320, 325 (1st Cir. 2004) (discussing "pecuniary purpose" test, under which actions with a purely financial purpose are not excepted from the stay).

[51]     11 U.S.C. § 362(b)(4) (excepting from stay police power actions "***under paragraph (1), (2), (3), or (6) of subsection (a) of this section***") (emphasis added)).

16

## CONCLUSION

38.     Given the above violations of the automatic stay, the Committee requests that the Court enter the Proposed Order.

## URGENCY OF RELIEF

39.     As the Title VI case and related solicitation activities have already been commenced and GDB seeks to finalize the GDB case by scheduling a hearing for approval of the Qualifying Modification on November 6, 2018, prior to the November 7 omnibus hearing, the Committee requests that this Motion be considered on an expedited basis at the September 13 omnibus hearing.

## NOTICE

40.     Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) the official committee of retirees; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors;[52] and (viii) all parties that have filed a notice of appearance in the Title III Cases.

## NO PRIOR REQUEST

41.     No previous request for the relief requested herein has been made to this or any other court.

---

[52]   Which include the Mutual Fund Group, the Ad Hoc Group of General Obligation Bondholders, the COFINA Senior Bondholders' Coalition, and the QTCB Noteholder Group, each as such group is defined at Docket Nos. 28, 68, 216, and 134, respectively.

## LOCAL RULE 9013-1 CERTIFICATION

42.     Pursuant to Local Rule 9013-1 and paragraph I.H of the Case Management

Procedures, the Committee hereby certifies that it has (a) carefully examined the matter and

concluded that there is a true need for an urgent hearing; (b) not created the urgency through a

lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; (d)

made reasonable, good faith communications in an effort to resolve or narrow the issues being

brought to the Court; and (e) conferred with the parties, including counsel to GDB, counsel to the

Puerto Rico Fiscal Agency and Financial Advisory Authority, and counsel to the Oversight

Board.


*[Remainder of page intentionally left blank.]*

WHEREFORE, the Committee respectfully requests that the Court enter the Proposed

Order, attached hereto as Exhibit A, granting the relief requested herein and granting any other

relief as is just and proper.


Dated:  August 22, 2018                    */s/ Luc A. Despins*

                                           PAUL HASTINGS LLP
                                           Luc. A. Despins, Esq. *(Pro Hac Vice)*
                                           James R. Bliss, Esq. *(Pro Hac Vice)*
                                           James T. Grogan, Esq. *(Pro Hac Vice)*
                                           Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
                                           200 Park Avenue
                                           New York, New York 10166
                                           Telephone:  (212) 318-6000
                                           lucdespins@paulhastings.com
                                           jamesbliss@paulhastings.com
                                           jamesgrogan@paulhastings.com
                                           nicholasbassett@paulhastings.com


                                           *Counsel to the Official Committee of Unsecured
                                           Creditors*

                                           - and -

                                           */s/ Juan J. Casillas*

                                           CASILLAS, SANTIAGO & TORRES LLC
                                           Juan J. Casillas Ayala, Esq., USDC - PR 218312
                                           Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
                                           Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
                                           Ericka C. Montull-Novoa, Esq., USDC - PR 230601
                                           El Caribe Office Building
                                           53 Palmeras Street, Ste. 1601
                                           San Juan, Puerto Rico 00901-2419
                                           Telephone: (787) 523-3434
                                           jcasillas@cstlawpr.com
                                           dbatlle@cstlawpr.com
                                           aaneses@cstlawpr.com
                                           emontull@cstlawpr.com

                                           *Local Counsel to the Official Committee of Unsecured
                                           Creditors*