**<u>Exhibit B</u>**

Positive
As of: August 22, 2018 12:52 AM Z

# *Jaap Corporation, Recurridos v. Departamento de Estado, et als., Peticionario*

Tribunal Supremo De Puerto Rico

1 de febrero de 2013

CC-2011-719

**Reportero**
187 D.P.R. 730 *; 2013 PR Sup. LEXIS 9 **; 2013 TSPR 11

Jaap Corporation, Recurridos v. Departamento de Estado, et als., Peticionario

**Historia Previa: [**1]** Materia: Contratos - Prohibición de contratación retroactiva entre gobierno y ente privado.

## Tesis de LexisNexis ®

Governments > State & Territorial Governments > Finance

*HN1*[] **State & Territorial Governments, Finance**

Véase *P.R. Const. Art. VI, § 9*.

Governments > State & Territorial Governments > Finance

*HN2*[] **State & Territorial Governments, Finance**

*P.R. Const. Art. VI, § 9* obliga al Estado a manejar los fondos públicos con los más altos principios éticos y fiduciarios.

Governments > State & Territorial Governments > Finance

*HN3*[] **State & Territorial Governments, Finance**

Véase *3 L.P.R.A. § 283a(b)*.

Governments > State & Territorial Governments > Finance

*HN4*[] **State & Territorial Governments, Finance**

La política pública de la Ley Núm. 230, *3 L.P.R.A. § 283a(b)*, requiere que los gastos y fondos públicos sean legítimos y legales y promuevan la máxima economía y óptima utilización de los recursos públicos y que los gastos del Gobierno se hagan dentro de un marco de utilidad, necesidad y austeridad.

Governments > State & Territorial Governments > Finance

*HN5*[] **State & Territorial Governments, Finance**

La Ley Núm. 230, *3 L.P.R.A. § 283a*, tiene el propósito de crear control previo de todas las operaciones del gobierno de manera que cada entidad gubernamental pueda planificar su presupuesto y programas de gobierno.

Governments > State & Territorial

Governments > Finance

*HN6*[⬇] **State & Territorial Governments, Finance**

Véase *3 L.P.R.A. § 283h(a)*.

Governments > State & Territorial Governments > Finance

*HN7*[⬇] **State & Territorial Governments, Finance**

Véase *3 L.P.R.A. sec. 283g(a)*.

Governments > State & Territorial Governments > Finance

*HN8*[⬇] **State & Territorial Governments, Finance**

El concepto "obligación" es definido en el Art. 3(k) de la Ley Núm. 230, *3 L.P.R.A. § 283b(k)*, como un compromiso contraído que esté representado por orden de compra, Contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible.

Governments > State & Territorial Governments > Finance

*HN9*[⬇] **State & Territorial Governments, Finance**

El precepto de la sana política pública administrativa requiere que los Contratos Gubernamentales cumplan con los siguientes requisitos: 1) se reduzcan a escrito; 2) se mantenga un registro fiel con mira a prima facie establecer su existencia; 3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y 4) que se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado 15 días antes. Esa norma de contratación aplica a los Contratos municipales con entes privados. No obstante, esa norma no solamente la ha aplicado utilizando leyes y normas aplicables a los municipios, sino que también la ha extendido a la contratación gubernamental del Estado.

Governments > State & Territorial Governments > Finance

*HN10*[⬇] **State & Territorial Governments, Finance**

Todo contrato entre un ente privado y el Estado debe constar por escrito para que tenga efecto vinculante entre las partes. Este requisito es indispensable pues tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley.

Governments > State & Territorial Governments > Finance

*HN11*[⬇] **State & Territorial Governments, Finance**

El contrato escrito constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales.

Governments > State & Territorial Governments > Finance

*HN12*[⬇] **State & Territorial Governments, Finance**

Realizar una obra antes de tener un vontrato escrito violenta los conceptos de contratación gubernamental que propenden una sana administración pública y control en los desembolsos de fondos públicos.

Governments > State & Territorial Governments > Finance

*HN13*[⬇] **State & Territorial Governments, Finance**

Es necesario que un ente privado se asegure de obtener un contrato escrito previo a la ejecución de una obra o el otorgamiento de prestaciones y contraprestaciones.

Governments > State & Territorial Governments > Finance

*HN14*[⬇] **State & Territorial Governments, Finance**

Un contrato retroactivo presupone una de dos (2) situaciones: 1) que había un contrato verbal entre el Estado y la entidad privada y este último estuvo ejecutándolo u otorgando prestaciones sin tener un acuerdo escrito; o 2) que simplemente no había ningún tipo de contrato mientras el ente privado provee prestaciones al Estado, con la esperanza de que algún día otorguen un contrato a su favor y retribuyan por sus bienes o servicios. Cualquiera de las dos situaciones anteriores promueve la no otorgación de contratos escritos mientras se intenta crear obligaciones para gravar las asignaciones de fondos públicos. Sin lugar a dudas esto es contrario a la norma de contratación gubernamental que exige que los contratos entre el gobierno y un ente privado se rijan únicamente por contratos escritos.

Governments > State & Territorial Governments > Finance

*HN15*[⬇] **State & Territorial Governments, Finance**

La contratación retroactiva sobre el arrendamiento de un bien, no solamente está al margen de la normativa de contratación municipal, sino que también está reñida con la contratación gubernamental en general. Ciertamente, la contratación gubernamental retroactiva hace inoperante todo control previo a la formación de una obligación del Gobierno, lo cual es contrario a la política pública establecida en el Art. 2(e) de la Ley Núm. 230, *3 L.P.R.A. § 283a(e)*. Esta práctica impide, además, que terceros como la Oficina del Contralor cumplan con la política pública de la Ley Núm. 230 y que los ciudadanos puedan obtener el contrato escrito para pasar juicio sobre la contratación, pues el contrato se escribe y publica luego de la ejecución y consumación de las obligaciones allí dispuestas.

**Abogados:** Tribunal de Apelaciones: Región Judicial de San Juan.

Oficina de la Procuradora General: Lcda. Irene Soroeta Kodesh Procuradora General; Lcda. Leticia Casalduc Rabell Procuradora General Auxiliar.

Abogado de la Parte Recurrida: Lcdo. Carlos A. Piovanetti Rivera.

**Jueces:** Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

**Opinion Por:** Pabón Charneco

## Opinion

 [*733]  Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 1 de febrero de 2013.

Hoy, en lugar de evaluar la validez de la retroactividad de un Contrato de Obra otorgado por un municipio y un ente privado -como lo hicimos en *ALCO Corp. v. Mun. de Toa Alta, 2011 TSPR*

*180, 183 D.P.R. 530, 2011 Juris P.R. 185 (2011)*-, nos corresponde examinar la validez de un Contrato de Arrendamiento de Cosas pactado retroactivamente por el Estado y un ente privado. [*734] Específicamente, debemos determinar si procede el pago de cánones de arrendamiento en virtud de un Contrato que fue otorgado posterior al uso y disfrute de la propiedad en cuestión. Resolvemos, *a priori*, que la contratación gubernamental *retroactiva* es contraria a nuestros preceptos de contratación gubernamental [**2] que propenden la sana administración pública.

I

El 28 de julio de 2009 Jaap Corporation (en adelante Jaap o recurrida) presentó una Demanda sobre sentencia declaratoria y cobro de dinero en contra del Gobierno de Puerto Rico. Surge de los hechos estipulados por las partes, que el Departamento de Estado arrendó a Jaap los pisos tres (3) y cuatro (4) del edificio número 151 de la Calle Fortaleza esquina Calle San José de Viejo San Juan. Cada piso fue arrendado mediante Contratos separados. El arrendamiento del tercer piso fue acordado mediante el Contrato Núm. 2001-000043, el cual fue suscrito el 27 de octubre de 2000. Sin embargo, se dispuso que el Contrato entraría en vigor desde el 16 de enero de 2000 y regiría hasta el 30 de junio de 2000. Las partes también acordaron que

> si a su vencimiento ninguna de las partes contratantes ha notificado a la otra su intención de enmendarlo o resolverlo, se entenderá renovado sin necesidad de notificación previa de ambas partes, por años económicos sucesivos a partir del primero de julio hasta completar un máximo de cinco (5) años o hasta completar un máximo de diez (10) años si el contrato corresponde a oficinas y dependencias localizadas en Estados [**3] Unidos o país del extranjero incluyendo las renovaciones.[1]

No hay controversia en cuanto a que este Contrato fue presentado en la Oficina del Contralor.

[*735] Pasados cinco (5) años, Jaap comenzó una serie de comunicaciones dirigidas a suscribir otro Contrato de Arrendamiento. En una de las cartas la corporación señaló que el Contrato de las oficinas de las Juntas Examinadoras que ubican en el tercer piso del edificio en cuestión había vencido desde enero de 2005.[2] Según arguye la recurrida, las partes comenzaron negociaciones y discusiones sobre la otorgación de un nuevo Contrato. De hecho, el 1 de julio de 2005 se redactó un documento intitulado "Contrato de Arrendamiento de Locales por Cinco Años o Menos o Hasta 10 años" para el alquiler del tercer piso.[3] Ese documento entraría en vigor el día "1 de julio de 2005 sujeto a la aprobación de la Administración de Servicios Generales".[4] Asimismo, dispuso que regiría las relaciones contractuales hasta el 30 de junio de 2006.[5] Empero, este documento, aunque contiene al margen izquierdo las iniciales "W.G.A." y "C.E.D.", nunca llegó a ser firmado por las partes; tampoco fue aprobado por [**4] la Administración de Servicios Generales.[6]

No fue hasta el 18 de julio de 2007, cuando las partes finalmente suscribieron el Contrato Núm. 2008-000009, referente al arrendamiento del piso tres (3). En ese Contrato las partes pactaron que el Departamento de Estado compensaría a Jaap por una suma ascendente a ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11); cantidad correspondiente al arrendamiento del tercer piso desde el 1 de julio de 2005 hasta el 30 de junio de 2006.

Sin embargo, surge del expediente que aunque el Departamento de Estado ocupó el tercer piso desde el 1 de [*736] junio de 2005 hasta el 1 de febrero

---

[1] Moción Conjunta de Hechos Estipulados, Estipulación Núm. 5.

[2] Íd., Estipulación Núm. 8.

[3] Íd., Estipulación Núm. 7.

[4] Íd.

[5] Íd.

[6] Íd. Conforme la Estipulación Núm. 7, "[l]os dos primeros folios del documento no contienen firma alguna, mientras que los cinco (5) folios subsiguientes titulados "Hojas de Continuación" contienen la firma del señor Carlos E. Cortés Díaz".

de 2008, esta entidad gubernamental nunca emitió pago por el arrendamiento del piso tres (3) correspondiente a la renta de este periodo. Según la recurrida, las rentas adeudadas ascienden a un total de trescientos veinte mil quinientos veintiún [**5] dólares con cuarenta y seis centavos ($320,521.46). El 12 de mayo de 2008 y el 30 de diciembre de 2008 las dos (2) Directoras de la Oficina de Asuntos Legales del Departamento de Estado, licenciadas Lourdes Adrienne Robles Torres y Patricia A. Castaing Lespier, suscribieron cartas a la representación legal de Jaap en las que reconocieron la totalidad de la deuda de dicha agencia.

Así las cosas, Jaap instó Demanda en cobro de dinero contra el Departamento de Estado. Luego de varias incidencias procesales, el Tribunal de Primera Instancia resolvió, en lo pertinente a la reclamación del tercer piso, que no existía controversia en cuanto a que las partes otorgaron un Contrato de Arrendamiento el 18 de julio de 2007 para compensar a Jaap por la suma de ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11) y así liquidar la deuda existente por el alquiler desde el 1 de julio de 2005 hasta el 30 de junio de 2006. Además, en virtud del mismo Contrato Núm. 2008-000009, determinó que el arrendamiento del tercer piso se extendió por el término de vigencia del Contrato hasta el 30 de julio de 2007. Resolvió, además, que el Departamento de Estado permaneció [**6] ocupando el piso tres (3) hasta febrero de 2008, con la aquiescencia de Jaap, por lo cual había operado la figura de la tácita reconducción. En fin, el Tribunal de Primera Instancia declaró Con Lugar la Demanda y ordenó el pago de la totalidad de su reclamación.

Inconforme, el Departamento de Estado recurrió al Tribunal de Apelaciones. Planteó que la deuda no estaba sustentada por un Contrato debidamente perfeccionado, conforme a la normativa aplicable a la contratación gubernamental. [*737] De igual forma, arguyó que no podía aplicarse la norma de la tácita reconducción a este caso pues obra en contra del interés público y del buen manejo de fondos del Estado.

Sometida la controversia, el Tribunal de Apelaciones dictaminó que se justificaba el pago de cánones de arrendamiento devengados retroactivamente para el período comprendido desde el 1 de julio de 2005 hasta el 30 de junio de 2006. Razonó que el Contrato Núm. 2008-000009 se redujo a escrito y cumplió con los demás requisitos que se exigen para la contratación gubernamental. En cuanto a la retroactividad del Contrato, el tribunal apelativo intermedio entendió que la única disposición de ley que impide la contratación gubernamental retroactiva [**7] es la Ley Núm. 237-2004, la cual no era de aplicación al caso de autos al reglamentar únicamente la contratación de servicios profesionales o consultivos, mas no rige los Contratos de Arrendamiento de Cosas.[7]

*A contrario sensu*, en cuanto al periodo comprendido desde 1 de julio de 2006 al 30 de julio de 2007, el tribunal *a quo* resolvió que el Contrato Núm. 2008-000009 carecía de un elemento esencial de los Contratos de arrendamiento de cosas: precio cierto. Es decir, el Tribunal de Apelaciones interpretó que del referido Contrato no surgía un canon de arrendamiento pactado para el periodo comprendido entre el 1 de julio de 2006 al 30 de julio de 2007. Asimismo, dispuso que cualquier esfuerzo para establecer un precio o canon de arrendamiento, en el mejor de los casos, conduciría a la especulación.

En cuanto a la ocupación del tercer piso durante el periodo del 1 de agosto de 2007 hasta el 29 de febrero de 2008, el Tribunal de Apelaciones revocó la determinación del tribunal de instancia. El foro apelativo [**8] intermedio concluyó [*738] que no aplicaba la figura de tácita reconducción porque ello equivaldría a realizar un nuevo Contrato sin cumplir con los rigurosos requisitos y formalidades

---

[7] El Departamento de Estado no argumentó ante este Tribunal la aplicabilidad de la Ley Núm. 237-2004; por tal razón, rechazamos hacer una interpretación del referido estatuto en esta ocasión.

como lo son el consentimiento escrito y expreso -no tácito- y el registro del Contrato en la Oficina del Contralor. Según el tribunal apelativo intermedio, permitir la operación de la figura de la tácita reconducción crearía una excepción a las normas de contratación gubernamental que permitiría el desembolso de fondos públicos sin exigir el cumplimiento de aquellas normas de contratación gubernamental que propenden a proteger los recursos fiscales del Estado contra la dispendia, prevaricación, el favoritismo y riesgos de incumplimiento.

En resumen, el tribunal *a quo* confirmó parcialmente al tribunal sentenciador en cuanto a la renta correspondiente al periodo comprendido ente julio 2005 y el 30 de junio de 2006. *A contrario sensu*, revocó al tribunal de instancia en cuanto a la otorgación y desembolso correspondiente de fondos públicos para el pago de cánones para el periodo comprendido entre el 1 de julio de 2006 al 30 de julio de 2007, por el Contrato carecer de un precio cierto. Asimismo, revocó al tribunal **[\*\*9]** de instancia en cuanto al uso de fondos públicos para pagar cánones de arrendamiento desde el 1 de julio de 2006 hasta el mes de febrero 2008, en virtud de la tácita reconducción.

Inconforme con la determinación del Tribunal de Apelaciones, el Departamento de Estado presentó el recurso de *certiorari* que nos ocupa. En este plantea el siguiente error:

> Erró el Tribunal de Primera Instancia al ordenar el pago de una alegada deuda que no está sustentada por un contrato debidamente perfeccionado conforme a la normativa aplicable a la contratación gubernamental.

Atendida la petición de *certiorari*, el 9 de diciembre de 2011, acordamos no expedir el recurso de epígrafe. No obstante, el 3 de febrero de 2012, expedimos el auto en **[\*739]** reconsideración. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el recurso de autos.

II

Toda erogación de fondos en nuestro país está supeditada al siguiente imperativo constitucional:

> *HN1*[⬆] Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley. Art. VI, Sec. 9, Const. P.R., L.P.R.A., Tomo 1.

Hemos sido consistentes en reiterar **[\*\*10]** que *HN2*[⬆] esta disposición constitucional obliga al Estado a manejar los fondos públicos con los más altos principios éticos y fiduciarios. Véanse, por ejemplo, *Lugo v. Municipio de Guayama, 2004 TSPR 166, 163 D.P.R. 208, 2004 Juris P.R. 171 (2004)*; *Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1994 Juris P.R. 2 (1994)*; *Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 1990 Juris P.R. 111 (1990)*.

Con el propósito de cumplir con este precepto constitucional, la Asamblea Legislativa ha aprobado legislación diseñada a imponer controles fiscales y de contratación gubernamental, de manera que las estructuras gubernamentales cumplan con este mandato constitucional de la sana administración de los fondos públicos. Así, por ejemplo, la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, *3 L.P.R.A. sec. 283*, establece la política pública del Estado en relación con el control y la contabilidad de los fondos y propiedad pública. En general, la política pública plasmada en esta ley consiste en que la contabilidad del Gobierno

> *HN3*[⬆] provea la información financiera necesaria para la administración de las operaciones gubernamentales y para la preparación y ejecución del presupuesto, y constituya un control **[\*740]** efectivo **[\*\*11]** sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno. Art. 2(b) de la Ley Núm. 230, *supra*, *3 L.P.R.A. sec. 283a(b)*.

Asimismo, en *RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 451 (1996)* señalamos que *HN4*[🔝] la política pública de la Ley Núm. 230, *supra*, requiere

> *que los gastos y fondos públicos sean legítimos y legales y promuevan la máxima economía y óptima utilización de los recursos públicos y que los gastos del Gobierno se hagan dentro de un marco de utilidad, necesidad y austeridad.* (Énfasis en original.)

*HN5*[🔝] Esta legislación, además, tiene el propósito de crear "**control previo** de todas las operaciones del gobierno" de manera que cada entidad gubernamental pueda planificar su presupuesto y programas de gobierno. Art. 2(e) de la Ley Núm. 230, *supra 3 L.P.R.A. sec. 283a(e)*. El Art. 9(a) del estatuto dispone:

> *HN6*[🔝] Las dependencias ordenarán obligaciones y desembolsos de sus fondos públicos únicamente para obligar o pagar servicios, suministros de materiales y equipos, reclamaciones u otros conceptos que estuvieren autorizados por ley. El Secretario contabilizará las obligaciones y efectuará u contabilizará los desembolsos a través de documentos que sometan las dependencias, **[**12]** los cuales serán **previamente** aprobados para obligación o pago por el jefe de la dependencia correspondiente o por el funcionario o empleado que éste designare como su representante autorizado. *3 L.P.R.A. sec. 283h(a)*. (Énfasis suplido.)

De igual forma, el Art. 8(a) de la Ley Núm. 230, *supra*, establece en lo pertinente que

> *HN7*[🔝] Todas las asignaciones y los fondos autorizados para las atenciones de un año económico serán aplicados exclusivamente al pago de los **gastos legítimamente incurridos** durante el respectivo año o al pago de obligaciones **legalmente contraídas** y debidamente asentadas en los libros. . . . *3 L.P.R.A. sec. 283g(a)*. (Énfasis suplido).

*HN8*[🔝] El concepto "obligación" es definido en el Art. 3(k) de la Ley Núm. 230, *supra*, como **[*741]** "un compromiso contraído que esté representado por orden de compra, Contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible". *3 L.P.R.A. sec. 283b(k)*. De las disposiciones de ley antes citadas se desprende que la facultad del Estado para desembolsar fondos públicos está limitada por los procedimientos y preceptos establecidos en las leyes. Además, como **[**13]** veremos más adelante, también están supeditados a los preceptos de sana administración pública delineados en nuestra jurisprudencia. Véanse, por ejemplo, *Mun. Quebradillas v. Corp. Salud Lares, 2011 TSPR 27, 180 D.P.R. 1003, 2011 Juris P.R. 32 (2011)*; *Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007)*; *De Jesús González v. A.C., 148 D.P.R. 255 (1999)*.

Desde *Ocasio v. Municipio de Maunabo, 121 D.P.R. 37 (1988)*, hemos interpretado que *HN9*[🔝] el precepto de la sana política pública administrativa requiere que los Contratos Gubernamentales cumplan con los siguientes requisitos: 1) se reduzcan a escrito; 2) se mantenga un registro fiel con mira *a prima facie* establecer su existencia; 3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y 4) que se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado quince (15) días antes. Íd., pág. 54. En aquella ocasión, aplicamos esa norma de contratación a los Contratos municipales con entes privados. No obstante, no queda duda que esa norma no solamente la hemos aplicado utilizando leyes y normas aplicables a los municipios, sino que también la hemos extendido a la contratación gubernamental del *Estado. Véase CMI Hospital v. Dpto. Salud, 2007 TSPR 99, 171 D.P.R. 313, 2007 Juris P.R. 105 (2007)*.

Así **[**14]** las cosas, y alejándonos de la norma general de los Contratos, hemos establecido que *HN10*[🔝] todo Contrato entre un ente privado y el

Estado debe constar por escrito para que tenga efecto vinculante entre las partes. *Colón [\*742] Colón v. Mun. de Arecibo, supra, págs. 725-726*. Este requisito es indispensable pues

> tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley. *Colón Colón v. Mun. de Arecibo, supra, p*ág. 730.

Asimismo, *HN11*[⬆] el Contrato escrito "constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales". Íd.

Sin embargo, en *Mun. Quebradillas v. Corp. Salud Lares, supra*, examinamos si procedía una acción en cobro de dinero incoada por un municipio en contra de una corporación, aun cuando no existía Contrato entre las partes. En esa ocasión concluimos que, aunque no existía un Contrato escrito, [**15] un municipio tiene derecho a recobrar el dinero público que desembolsó incorrectamente mediante un acuerdo nulo. Íd., págs. 1015-1016. Fundamentamos nuestro dictamen en el hecho de que "estaríamos dejando en manos privadas unos fondos públicos que no le corresponden". Íd. De esta forma aclaramos que nuestro razonamiento en casos de contratación gubernamental no se fundamenta meramente en favorecer a los municipios o al Estado, sino que evaluamos cada caso bajo el crisol de la sana administración y la protección de los fondos públicos.[8]

[*743] La última ocasión en que nos expresamos en cuanto a la contratación gubernamental fue en *ALCO Corp. v. Mun. De Toa Alta, supra.* [**16] La controversia en ese caso surgió cuando ALCO obtuvo la adjudicación de la buena pro de una subasta de Contrato de Obra para pavimentar un área en el Municipio de Toa Alta. Aún sin obtener un Contrato escrito, ALCO comenzó a ejecutar la obra, entiéndase, a pavimentar. No fue hasta luego de completar el trabajo de pavimentación que las partes otorgaron el Contrato escrito. No había duda de que el Municipio envió copia a la Oficina del Contralor y fue registrado en los libros municipales. Pasados varios intentos de cobro al Municipio, ALCO presentó Demanda en cobro de dinero ante el Tribunal de Primera Instancia. Ese tribunal desestimó la Demanda sumariamente al entender que la rigurosidad de los requisitos de contratación con los municipios impedía que ALCO cobrara por una obra realizada previo al otorgamiento del Contrato escrito. El Tribunal de Apelaciones confirmó al tribunal sentenciador y resolvió que "de otra manera trastocaría el sistema de controles de desembolso de fondos públicos. . . pues se prestaría para que se convalidaran acuerdos llegados entre contratistas y municipios sin cumplir con el proceso establecido por nuestro ordenamiento". *ALCO Corp. v. Mun. de Toa Alta, supra, p*ág. [**17] 553.

Aprovechamos aquella ocasión para rechazar tajantemente la validación de Contratos Municipales retroactivos. En ese sentido, concluimos que era necesario suscribir un Contrato escrito previo a la ejecución de la obra. "*En caso contrario, se ignoraría el interés público de regular las inspecciones de la obra y restringir los parámetros de subcontratación, entre otras medidas cautelares*". . . . (Énfasis en original). *ALCO Corp. v. Mun. de Toa Alta, supra, p*ág. 551.

---

[8] A tales efectos dispusimos que

> No hacer la distinción cuando es un ente público el que reclama permitiría que un funcionario inescrupuloso favorezca a ciertos contratistas, pagándoles de antemano por unos servicios, pero sin un contrato escrito, con la intención de que cuando se inicie el proceso legal de cobro de dinero, se pueda presentar como defensa que el contrato no cumple con los requisitos formales exigidos por ley y el contratista no tenga que devolver lo que se le pagó ilegalmente. *Mun. Quebradillas v. Corp. Salud, 2011 TSPR 27, 180 D.P.R. 1003, 1016, 2011 Juris P.R. 32 (2011)*.

Específicamente, establecimos que validar un Contrato retroactivo podría fomentar el que un contratista realice la obra antes de la otorgación del Contrato escrito como medida de presión para la otorgación futura del Contrato. Íd., **[\*744]** pág. 543. Igualmente razonamos que validar los Contratos retroactivos propende a que un contratista realice la obra y espere a que cambie la administración del municipio para convalidar su acto. Por tanto, validar esa teoría

> premiaría a quien se confabule con un funcionario corrupto del municipio para no seguir las normas de administración pública sana, consciente de que tan pronto culmine la obra tendrá derecho a reclamar compensación sin importar que no siguió la ley al contratar. Íd., pág. **[\*\*18]** 544.

Además, al interpretar el Art. 8.004 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, *21 L.P.R.A. sec. 4354*, resolvimos que esa actuación "comprometió los fondos de un año fiscal, para el pago **de una obligación contraída ilegalmente** en un año fiscal anterior". Íd., pág. 543. (Énfasis suplido.)

En fin, concluimos que *HN12*[⬆] realizar una obra antes de tener un Contrato escrito violenta los conceptos de contratación gubernamental que propenden una sana administración pública y control en los desembolsos de fondos públicos.

A tenor con lo anterior, pasamos a aplicar los fundamentos esbozados al caso de autos para determinar si procede el cobro de la renta del tercer piso de la propiedad arrendada, en virtud de un Contrato de Arrendamiento que fue otorgado posterior al uso y disfrute de la propiedad en cuestión.

III

Según intimado, hoy, en lugar de evaluar la validez de un Contrato de Obra otorgado retroactivamente por un municipio y un ente privado como lo hicimos en *ALCO [\*745] Corp. v. Mun. de Toa Alta, supra*, debemos examinar la validez de un Contrato de Arrendamiento de Cosas pactado retroactivamente **[\*\*19]** por el Estado y un ente privado.

El Departamento de Estado alega que los Contratos retroactivos son contrarios a la normativa de la contratación gubernamental porque favorecen los acuerdos verbales, lo cual está al margen de la ley y de nuestros pronunciamientos. Por tanto, entiende que la reclamación en este caso no es exigible al fundamentarse en un Contrato retroactivo otorgado el 18 de julio de 2007, para cubrir cánones de arrendamiento correspondientes al periodo del 1 de julio de 2005 hasta el 30 de junio de 2006.

*A contrario sensu*, Jaap arguye que el piso tres (3) del edificio en cuestión fue arrendado originalmente mediante el Contrato Núm. 2001-000043, el cual tuvo vigencia desde el 16 de enero de 2000 hasta el 30 de junio de 2000. La recurrida postula, además, que el arrendamiento en cuestión estuvo cubierto por el Contrato original pues en su Cláusula Tres (3) especifica que si ninguna de las partes notificaba a la otra su intención de enmendarlo o resolverlo, se renovaría automáticamente por cinco (5) años o por diez (10) si la propiedad estaba localizada en Estados Unidos. La posición de la corporación es que el Departamento de Estado ocupó el piso tres (3) durante un periodo **[\*\*20]** de tiempo que estaba cubierto por la cláusula de renovación automática dispuesta en el Contrato Núm. 2001-000043 y que este Contrato pudo extenderse por diez (10) años, hasta el 15 de enero de 2010. Finalmente, alegó que el Contrato Núm. 2008-000009 tuvo el efecto limitado de formalizar la renovación automática acordada en el primer Contrato. Diferimos.

Luego de examinar la totalidad del expediente, no podemos concluir que hubo una renovación automática del arrendamiento núm. 2001-000043. No encontramos prueba o fundamento jurídico en el expediente que fundamente la posición de Jaap. Nuestra **[\*746]** conclusión se hace patente al

examinar el Contrato Núm. 2008-000009, el cual dispone:

> **CUARTO:** El **DEPARTAMENTO y JAAP Corporation**, formalizaron un contrato de arrendamiento del tercer piso del Antiguo edificio Marshall en el Viejo San Juan (renovable automáticamente por cinco años consecutivos) el 16 de enero de 2000 y **el 15 de enero de 2005, terminó la vigencia del acuerdo contractual** (énfasis suplido). Contrato Núm. 2008-000009, pág. 3.
>
> **QUINTO:** Que vencido el contrato entre las partes, **JAAP Corporation** consintió y estuvo de acuerdo en que el **DEPARTAMENTO** continuara ocupando el tercer piso del mencionado [**21] Edificio para que los servicios de las juntas examinadoras a la ciudadanía no se interrumpieran y se vieran afectados, a pesar de **no** existir un acuerdo contractual escrito (énfasis suplido). Íd.

De lo anterior se desprende, en primer lugar, que **las partes convinieron e interpretaron que el Contrato original tuvo vigencia hasta el 15 de enero de 2005**, y no se extendió por diez (10) años como argumenta Jaap. Es decir, el Departamento de Estado ocupó el tercer piso desde el 1 de julio de 2005 hasta el 29 de febrero de 2008 sin Contrato escrito. En segundo lugar, estas cláusulas revelan que **Jaap consintió** expresamente a que **el Departamento de Estado continuara ocupando el tercer piso, sin Contrato escrito**. En conclusión, no tiene mérito la alegación de Jaap a los efectos de que el Contrato Núm. 2001-000049 se renovó automáticamente. Esa interpretación acomodaticia no encuentra fundamento y es contraria a las claras expresiones realizadas por ambas partes en el Contrato Núm. 2008-000009. No obstante, resta determinar si el Contrato posterior tuvo el efecto de crear una obligación válida para el pago retroactivo de cánones de arrendamiento.

El canon de arrendamiento que Jaap pretende obtener [**22] en virtud del Contrato Núm. 2008-000009, tiene el propósito de cobrar una suma ascendente a ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11), para así retribuir a Jaap por el uso y [*747] disfrute retroactivo del piso tres (3). En otras palabras, lo que se pretende reconocer en el Contrato Núm. 2008-000009 es **una obligación de pago que fue generada sin tener un Contrato escrito y perfeccionado conforme a las formalidades que le aplican a la contratación gubernamental**. Sin embargo, según mencionamos anteriormente, en *ALCO Corp. v. Mun. de Toa Alta, supra, p*ág. 551, hicimos claro que *HN13*[ ] es necesario que un ente privado se asegure de obtener un Contrato escrito previo a la ejecución de una obra o el otorgamiento de prestaciones y contraprestaciones, como lo es en este caso permitir el uso y disfrute del tercer piso del edificio propiedad de Jaap.

*HN14*[ ] Un Contrato retroactivo como el de autos presupone una de dos (2) situaciones: 1) que había un Contrato verbal entre el Estado y la entidad privada y este último estuvo ejecutándolo u otorgando prestaciones sin tener un acuerdo escrito; o 2) que simplemente no había ningún tipo de Contrato mientras el ente privado [**23] provee prestaciones al Estado, con la esperanza de que algún día otorguen un Contrato a su favor y retribuyan por sus bienes o servicios. Cualquiera de las dos (2) situaciones anteriores promueve la no otorgación de Contratos escritos mientras se intenta crear obligaciones para gravar las asignaciones de fondos públicos. Sin lugar a dudas esto es contrario a la norma de contratación gubernamental que exige que los Contratos entre el gobierno y un ente privado se rijan únicamente por Contratos escritos. *Alco Corp. v. Municipio de Toa Alta, supra*; *Colón v. Mun. de Arecibo, supra.* Basta recordar que de lo contrario, estaríamos premiando a quien se confabule con un funcionario corrupto "para no seguir las normas de una administración pública sana, consciente de que. . . tendrá derecho a reclamar compensación sin importar que no siguió la ley al contratar". *ALCO Corp. v. Mun. de Toa Alta, supra, p*ág. 544.

En este caso, Jaap permitió que el Departamento de Estado disfrutara y usara el tercer piso del edificio. Esto [*748] nos lleva a concluir que Jaap otorgó prestaciones propias de un Contrato de Arrendamiento -dar el "goce o uso de una cosa por tiempo determinado. . . ."[9] - con la esperanza de [**24] que, aun sin Contrato escrito, el Departamento de Estado suscribiera en el futuro un Contrato escrito en virtud del cual pudiera gravar fondos públicos para el pago de cánones de arrendamiento.

Hoy resolvemos que HN15[↑] la contratación retroactiva sobre el arrendamiento de un bien, no solamente está al margen de la normativa de contratación municipal, sino que también está reñida con la contratación gubernamental en general. Ciertamente, la contratación gubernamental retroactiva hace inoperante todo *control previo* a la formación de una obligación del Gobierno, lo cual es contrario a la política pública establecida en el Art. 2(e) de la Ley Núm. 230, *supra*, *3 L.P.R.A. sec. 283a(e)*. Esta práctica impide, además, que terceros como la Oficina del Contralor cumplan con la política pública de la Ley Núm. 230, supra, y que los ciudadanos puedan obtener el Contrato escrito para pasar juicio sobre la contratación, pues el Contrato se escribe y publica luego de la ejecución y consumación de las obligaciones allí dispuestas. ALCO Corp. v. Mun de Toa Alta, supra.

Al aplicar la normativa antes expuesta, colegimos que la reclamación del recurrido [**25] no es exigible. No podemos concluir de otra manera, pues la reclamación en controversia se apoya en un Contrato otorgado el 18 de julio de 2007 para cubrir los cánones de arrendamiento correspondientes al periodo del 1 de junio de 2005 hasta el 30 de junio de 2006. Esta actuación comprometió los fondos de un año fiscal para el pago de una obligación **contraída ilegalmente** en un año fiscal anterior; acto que fue realizado en contravención al Art. 8(a) de la Ley Núm. 230, *supra*, *3 L.P.R.A. sec. 283g(a)*. Véase ALCO Corp. v. Mun. de Toa Alta, supra, [*749] pág. 543. Este Contrato resulta ser ineficaz.[10] El Estado no puede realizar un desembolso de fondos públicos en contravención a la ley y la jurisprudencia interpretativa de los estrictos requisitos que aplican a la contratación gubernamental. En consecuencia, no procede ordenarle al Departamento de Estado el cumplimiento del Contrato Núm. 2008-000009.[11]

IV

Por los fundamentos antes expuestos, revocamos en parte el dictamen recurrido emitido por el Tribunal de Apelaciones en cuanto al pago de cánones de arrendamiento a Jaap por una suma ascendente a ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11).

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco

Jueza Asociada

---

[9] Art. 1433 del Código Civil de Puerto Rico, **31 L.P.R.A. 4012**.

[10] Por otro lado, la operación de la figura de la tácita reconducción presupone la existencia de un contrato válido. Art. 1456 del Código Civil, *31 L.P.R.A 4063*. Al resolver que el Contrato Núm. 2008-000009 es ineficaz, resulta innecesaria cualquier expresión en torno a la operación de la doctrina [**26] de la tácita reconducción en los contratos gubernamentales.

[11] La recurrida argumenta, en la alternativa, que de pautar una norma distinta a la esbozada en su alegato, no debemos aplicarla al caso de autos porque al otorgar el Contrato Núm. 2008-000009, Jaap confió en el estado de Derecho pautado por la Orden Ejecutiva Núm. 2006-23 de 22 de junio de 2006. Esa Orden Ejecutiva disponía, en esencia, que las agencias e instrumentalidades públicas podían otorgar contratos formales con vigencia retroactiva. Sin adentrarnos en la validez de esta Orden Ejecutiva, la realidad es que los contratos retroactivos han sido objeto de contundentes señalamientos por parte de la Oficina del Contralor y el Departamento de Justicia. Véanse Oficina del Contralor, Carta Circular OC-98-01 de 8 de julio de 1997; Op. Sec. Just. Núm. Núm. 2001-14 de 2 de julio de 2001. No fue hasta la emisión de la Orden Ejecutiva que se fomentó por primera vez el uso de contratos formales retroactivos.

La solicitud de Jaap no cambia nuestro razonamiento. Es suficiente examinar la cronología de los hechos para saber que Jaap permitió que el Departamento de Estado gozara y disfrutara el tercer piso del edificio en cuestión, aún [**27] cuando ni siquiera existía la Orden Ejecutiva Núm. 2006-23, *supra*.

SENTENCIA

En San Juan, Puerto Rico a 1 de febrero de 2013.

Por los fundamentos antes expuestos, revocamos en parte el dictamen recurrido emitido por el Tribunal de Apelaciones en cuanto al pago de cánones de arrendamiento a Jaap por una suma ascendente a ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11).

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez no intervinieron. El Juez Presidente señor Hernández Denton no interviene.

Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

**End of Document**