## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>   Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF FILING OF CERTIFIED ENGLISH TRANSLATION

**PLEASE TAKE NOTICE** that on August 22, 2018 the Official Committee of Unsecured

Creditors of all title III Debtors (other than COFINA) (the "Committee") filed the *Urgent Motion of*

*Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, for*

*Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of*

*Automatic Stay With Respect to GDB Restructuring* (the "Motion to Enforce") [Docket No. 3797], which

included a Spanish document, Exhibit B (*Jaap Corp. v. Dep't of State*, 187 D.P.R. 730, 739 (2013)).

**PLEASE TAKE FURTHER NOTICE** that on August 22, 2018, the Committee filed the

*Motion of Official Committee of Unsecured Creditors, for Leave to File Spanish Language Document and*

*Extension of Time to File Certified English Translation* (the "Motion for Leave")[Docket No. 3799],

requesting a five (5) day extension, until August 27, 2018 to submit a certified English translation.

---

[1]   The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a
bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's
federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico
(Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees
Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy
Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways
and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits
of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA")
(Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto
Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits
of Federal Tax ID: 3747)..

**PLEASE TAKE FURTHER NOTICE** that on August 23, 2018, the Court granted the Motion

for Leave.  The Committee hereby files a certified English translation of Exhibit B to the Motion to

Enforce, attached hereto as Exhibit A.

Dated:  August 27, 2018        */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James T. Grogan, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesgrogan@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

- and -

*/s/ Juan J. Casillas*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*

**EXHIBIT A**

# IN THE PUERTO RICO SUPREME COURT

| | |
|---|---|
| Jaap Corporation<br>　　　Respondent<br><br><br>　　　　　　　v.<br><br><br>Department of State, et al.<br>　　　Petitioners | Certiorari<br><br>2013 TSPR 11<br><br>187 DPR ____ |

Case Number: CC-2011-803


Date: February 1, 2013


Court of Appeals:

　　　　San Juan Judicial Region

Office of the Solicitor General:

　　　　Irene Soroeta Kodesh, Esq.
　　　　Solicitor General

　　　　Leticia Casalduc Rabell, Esq.
　　　　Assistant Solicitor General

Legal Counsel for Respondent:

　　　　Carlos A. Piovanetti Rivera, Esq.


Subject-matter: Contracts – Prohibition against retroactive contract between government and private entity


This is an official document of the Supreme Court subject to the changes and corrections of the compilation and official publication process of Court decisions. It is distributed electronically as a public service to the community.

I hereby certify that this is a true and accurate
translation to the best of my abilities.
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

IN THE PUERTO RICO SUPREME COURT

Jaap Corporation                                                                  *Certiorari*

    Respondent

       v.

                                     CC-2011-719

Department of State, et al.

    Petitioners

Opinion of the Court pronounced by Associate Justice Pabón Charneco

        In San Juan, Puerto Rico, on February 1, 2013

        Today, instead of evaluating the validity of the retroactivity of a public works contract executed by a municipality and a private entity—as we did in *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530 (2011)—we must examine the validity of a lease agreement executed retroactively by the state and a private entity. Specifically, we must determine whether or not the payment of rent is in order by virtue of a contract that was executed after the use and enjoyment of the property in question. We rule, *a priori*, that *retroactive* government contracts are contrary to

I hereby certify that this is a true and accurate
translation to the best of my abilities.
*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                2

our rules of government contracts, which promote sound public administration.

I

On July 28, 2009, Jaap Corporation (hereinafter, Jaap or Respondent) filed a Complaint for declaratory judgment and collection of monies against the Government of Puerto Rico. The facts stipulated by the parties show that the Department of State leased from Jaap the third (3rd) and fourth (4th) floors of building number 151 on Fortaleza Street, on the corner of San José Street, in Old San Juan. Each floor was leased by means of a separate contract. The parties agreed to the lease of the third floor by means of Contract No. 2001-000043, executed on October 27, 2000. However, it was established that the contract would come into effect on January 16, 2000, and end on June 30, 2000. The parties also agreed to the following:

> if, upon its expiration, neither of the contracting parties has given notice to the other of its intent to amend or rescind the contract, it shall be deemed to have been renewed without the two parties needing to give prior notice for successive economic years starting on July first, for up to a maximum of five (5) years or a maximum of ten (10) years if the contract is for offices and buildings located in the United States or a foreign country, including renewals.[1]

There is no controversy regarding the fact that this contract was filed with the Office of the Comptroller.

---

[1] Joint Motion of Stipulated Facts, Stipulation No. 5.

I hereby certify that this is a true and accurate translation to the best of my abilities.

*Miriam Garcia*

Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                    3

Five (5) years later, Jaap initiated a series of communications aimed at executing another lease agreement. In one of its letters, the corporation pointed out that the contract for the offices of the examining boards located on the third floor of the building in question had expired in January 2005.[2] According to Respondent's arguments, the parties entered into negotiations and discussions regarding the execution of a new contract. In fact, a document entitled "Lease Agreement for Premises for Five Years or Less or up to 10 Years" was drafted on July 1, 2005, for the lease of the third floor.[3] This document would come into effect on "July 1, 2005, subject to the approval of the General Services Administration."[4] Similarly, it provided that it would govern the contractual relationship until June 30, 2006.[5] However, this document, although it contains the initials "W.G.A." and "C.E.D." on the left margin, was never signed by the parties or approved by the General Services Administration.[6]

It was not until July 18, 2007, that the parties finally executed Contract No. 2008-000009, regarding the lease of the third (3rd) floor. In that contract, the parties

---

[2] *Id.*, Stipulation No. 8.
[3] *Id.*, Stipulation No. 7.
[4] *Id.*
[5] *Id.*
[6] *Id.* According to Stipulation No. 7, "[t]he first two folios of the document do not contain any signatures, while the next five (5) folios entitled "Continuation Sheets" contain the signature of Carlos E. Cortés Díaz."

I hereby certify that this is a true and accurate translation to the best of my abilities.
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                4

agreed that the Department of State would pay Jaap one hundred sixteen thousand four hundred fifty-nine dollars and eleven cents ($116,459.11) for the lease of the third floor from July 1, 2005, to June 30, 2006.

However, the record shows that, even though the Department of State occupied the third floor from June 1, 2005, to February 1, 2008, this government entity never made a payment for the lease of the third (3rd) floor corresponding to the rent for said period. According to Respondent, the rent owed amounts to a total of three hundred twenty thousand five hundred twenty-one dollars and forty-six cents ($320,521.46). On May 12, 2008, and December 30, 2008, the two (2) directors of the Legal Affairs Office of the Department of State, Lourdes Adrienne Robles Torres, Esq., and Patricia A. Castaing Lespier, Esq., sent letters to the legal counsel for Jaap recognizing the totality of the agency's debt.

Then, Jaap filed a Complaint for collection of monies against the Department of State. After several procedural incidents, the Court of First Instance, in relation to the claim regarding the third floor, ruled that there was no controversy as to the fact that the parties had executed a Lease Agreement on July 18, 2007, to

I hereby certify that this is a true and accurate translation to the best of my abilities.

Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                      5

pay Jaap the amount of one hundred sixteen thousand four hundred fifty-nine

dollars and eleven cents ($116,459.11) and thus settle the existing debt for the rent

from July 1, 2005, to June 30, 2006. Furthermore, by virtue of the same Contract

No. 2008-000009, it found that the lease of the third floor was extended for the

effective period of the contract, until July 30, 2007. It also ruled that the Department

of State had continued to occupy the third (3rd) floor until February 2008 with

Jaap's acquiescence, so the principle of tacit renewal applied. In conclusion, the

Court of First Instance granted the Complaint and ordered the payment of the

totality of the claim.

Dissatisfied, the Department of State appealed to the Court of Appeals. It

alleged that the debt was not supported by a duly perfected contract pursuant to the

rules applicable to government contracts. It also argued that the principle of tacit

renewal could not be applied to this case because it was against public interest and

the good management of state funds.

After the controversy was submitted, the Court of Appeals ruled that the

payment of rent accrued retroactively for the period between July 1, 2005, and June

30, 2006, was justified. It reasoned that Contract No. 2008-000009 was reduced to

writing and met with the other requirements established for government contracts.

I hereby certify that this is a true and accurate
translation to the best of my abilities.

Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                                    6

Regarding the retroactivity of the contract, the intermediate appellate court deemed

that the only legal provision preventing retroactive government contracts is Public

Law No. 237-2004, which did not apply to the case in question because it only

regulated contracts for professional or consulting services, not lease agreements.[7]

On the other hand, in relation to the period between July 1, 2006, and July

30, 2007, the court *a quo* ruled that Contract No. 2008-000009 lacked an essential

element of lease agreements: a fixed price. That is, the Court of Appeals construed

that the aforementioned contract did not establish a stipulated rent for the period

between July 1, 2006, and July 30, 2007. It also ruled that any efforts to establish a

price or rent would, at best, lead to speculation.

In relation to the occupation of the third floor during the period from August

1, 2007, to February 29, 2008, the Court of Appeals reversed the ruling of the Court

of First Instance. The intermediate appellate court concluded that the principle of

tacit renewal did not apply because it would amount to executing a new contract

---

[7] The Department of State did not present arguments before this Court about the applicability of
Public Law No. 237-2004. We therefore refuse to construe the aforementioned statute at this time.

I hereby certify that this is a true and accurate
translation to the best of my abilities.
*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                 7

without complying with the rigorous requirements and formalities [of contracts], such as written, express—not tacit—consent and registering the contract with the Office of the Comptroller. According to the intermediate appellate court, allowing the operation of the principle of tacit renewal would create an exception to the rules of government contracts that would allow the expenditure of public funds without requiring compliance with the rules of government contracts that protect the state's fiscal resources from squandering, malfeasance, favoritism, and risks of nonperformance.

In short, the court *a quo* partially upheld the trial court's decision in relation to the rent corresponding to the period between July 2005 and June 30, 2006. On the contrary, it reversed the trial court's decision in relation to the execution and corresponding expenditure of public funds to pay rent for the period between July 1, 2006, and July 30, 2007, because the contract lacked a fixed price. It also reversed the trial court's decision about the use of public funds to pay rent from July 1, 2006, to February 2008 by virtue of tacit renewal.

Dissatisfied with the ruling of the Court of Appeals, the Department of State filed the petition for writ of certiorari that we are addressing herein. In the petition, it poses the following error:

I hereby certify that this is a true and accurate translation to the best of my abilities.
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                                  8

The Court of First Instance erred in ordering the payment of an
alleged debt that is not supported by a duly perfected contract
pursuant to the rules applicable to government contracts.

Having examined the petition for writ of certiorari, on December 9, 2011,

we agreed not to issue the writ of certiorari in caption. Nonetheless, on February 3,

2012, we issued the writ on reconsideration. With the benefit of the appearance of

both parties, we hereby rule on the certiorari in caption.

II

All expenditures of funds in our country are subject to the following

constitutional mandate:

Public property and funds shall only be disposed of for public
purposes and for the support and operation of state institutions, and,
in any case, pursuant to the law. Art. VI, Sec. 9, Const. P.R., LPRA,
Vol. 1.

We have been consistent in reiterating that this constitutional provision forces the

state to manage public funds in keeping with the highest ethical and fiduciary

standards. See, for example, *Lugo v. Municipio de Guayama*, 163 DPR 208 (2004);

*Hatton v. Mun. de Ponce*, 134 DPR 1001 (1994); *Mar-Mol Co., Inc. v. Adm.*

*Servicios Gens.*, 126 DPR 864 (1990).

With the purpose of complying with this constitutional mandate, the

Legislature has passed legislation designed to impose fiscal controls and controls

on government contracts so that the structures of the government will comply with

I hereby certify that this is a true and accurate
translation to the best of my abilities.

Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                    9

this constitutional mandate of sound administration of public funds. Thus, for example, Public Law No. 230 of July 23, 1974, as amended, known as the Government of Puerto Rico Accounting Act, 3 LPRA §283, establishes the state's public policy in relation to the control and accounting of public funds and property. In general, the public policy set forth in this legislation consists in establishing that government accounting shall:

> provide the necessary financial information for the administration of government operations and the preparation and execution of the budget, and constitute an effective control over the revenues, expenditures, funds, properties, and other assets of the government. Art. 2(b) of Public Law No. 230, *supra*, 3 LPRA §283a(b).

> Likewise, in *RDT Const. Corp. v. Contralor I*, 141 DPR 424, 451 (1996), we pointed out that the public policy of Public Law No. 230, *supra*, requires:

> *that public expenses and funds be legitimate and lawful and promote the maximum savings and best use of public resources and that government expenses be incurred within a framework of usefulness, need, and austerity.* (Emphasis in the original)

Furthermore, this legislation has the purpose of creating a "**prior control** of all government operations" so that each government entity can plan its budget and government programs. Art. 2(e) of Public Law No. 230, *supra*, 3 LPRA §283a(e). Art. 9(a) of the statute provides the following:

> Entities shall order obligations and expenditures from their public

I hereby certify that this is a true and accurate
translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                          10

> funds only to obligate or pay for services, provisions of supplies and
> equipment, claims, or other items authorized by law. The Secretary
> shall record the obligations and make or record the expenditures
> according to the documents submitted by the entities, which shall be
> **previously** approved for obligation or payment by the head of the
> corresponding entity or by the official or employee that he or she
> may designate as an authorized representative. 3 LPRA §283h(a).
> (Emphasis added)

Likewise, Art. 8(a) of Public Law No. 230, *supra*, establishes the following

in pertinent part:

> All appropriations and funds authorized for the expenditures of a
> fiscal year shall be applied exclusively to the payment of **expenses
> lawfully incurred** during the corresponding year or to the payment
> of obligations **legally incurred** and duly recorded in the books... 3
> LPRA §283g(a). (Emphasis added)

The concept of "obligation" is defined in Art. 3(k) of Public Law No. 230,

*supra*, as "a commitment that has been made and is represented by a purchase order,

contract, or similar document; is pending payment; has been signed by the

competent authority to encumber the appropriations; and may be converted  into a

demandable debt in the future." 3 LPRA §283b(k). The legal provisions cited above

show that the power of the state to expend public funds is limited by the procedures

and rules established in the law. Furthermore, as we will see below, it is also subject

to the rules of sound public administration outlined in our case law. See, for

example, *Mun. Quebradillas v. Corp. Salud Lares*, 180 DPR 1003 (2011); *Colón*

I hereby certify that this is a true and accurate
translation to the best of my abilities.
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                    11

*Colón v. Mun. de Arecibo*, 170 DPR 718 (2007); *De Jesús González v. A.C.*, 148
DPR 255 (1999).

Since *Ocasio v. Municipio de Maunabo*, 121 DPR 37 (1988), we have
construed that the principle of sound administrative public policy requires that
government contracts meet the following requirements: 1) [they must] be reduced
to writing; 2) a faithful record [must be] maintained in order to establish their
existence *prima facie*; 3) a copy [must be] sent to the Office of the Comptroller as
dual evidence of the execution, terms, and existence thereof; and 4) the certainty of
the timeframe [must be] evidenced, that is, [it must] have been prepared and
executed fifteen (15) days prior. *Id.*, p. 54. At the time, we applied those rules of
contracts to municipal contracts with private entities. Nonetheless, there is no
question that we have not only applied said rules using legislation and regulations
applicable to municipalities, but have also extended them to government contracts
involving the state. See, *CMI Hospital v. Dpto. Salud*, 171 DPR 313 (2007).

Thus, straying from the general rule of contracts, we have established that
all contracts between a private entity and the state must be in writing in order to be
binding on the parties. *Colón Colón v. Mun. de Arecibo*, *supra*, pp. 725-726. This
is an essential requirement because:

> it has an unavoidable dimension of sound public administration
> insofar as it allows us to protect the interests of the contracting
> parties in the event of nonperformance, it allows for the orderly use

I hereby certify that this is a true and accurate
translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                                                    12

of municipal funds, it prevents uncertainty in the preparation of the
municipal budget, and it makes it possible to appropriately identify
the item against which the public expenditures will be made in
compliance with the law. *Colón Colón v. Mun. de Arecibo*, *supra*,
p. 730.

Likewise, written contracts "constitute a protective mechanism to prevent
fraudulent and unlawful payments and claims." *Id.*

However, in *Mun. Quebradillas v. Corp. Salud Lares*, *supra*, we examined
whether an action for collection of monies filed by a municipality against a
corporation, when no contract yet existed between the parties, was in order. In that
case, we concluded that, even though no written contract existed, a municipality
has the right to recoup public money that it expended incorrectly by means of a
void contract. *Id.*, pp. 1015-1016. We based our ruling on the fact that "we would
be leaving public funds in private hands that are not entitled to them." *Id.* We thus
clarified that our reasoning in cases of government contracts is not merely based on
favoring municipalities or the state; instead, we evaluate each case in the light of
sound administration and the protection of public funds.[8]

---

[8] To such effect, we ruled that:

> Failing to make a distinction when it is a public entity that is making the claim
> would allow an unscrupulous official to favor certain contractors, paying them for
> services in advance, but without a written contract, so that, when the legal
> proceedings for collection of monies are filed, a defense could be raised that the
> contract does not meet the formal requirements established by law and the
> contractor does not have to return what he or she was unlawfully paid. *Mun.
> Quebradillas v. Corp. Salud*, 180 DPR 1003, 1016 (2011).

I hereby certify that this is a true and accurate
translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                    13

The last time we pronounced an opinion regarding government contracts was in *ALCO Corp. v. Mun. de Toa Alta*, *supra*. The controversy in that case arose when ALCO bid for and was awarded a public works contract to pave an area in the Municipality of Toa Alta. Even without obtaining a written contract, ALCO began performing the work, that is, began paving. It was not until after it completed the paving work that the parties executed the written contract. There was no question that the Municipality had sent a copy to the Office of the Comptroller and that it was recorded in the municipal books. After several collection attempts with the Municipality, ALCO filed a Complaint for collection of monies with the Court of First Instance, which dismissed the Complaint summarily because it believed that the rigorousness of the requirements for municipal contracts prevented ALCO from being paid for work performed prior to the execution of the written contract. The Court of Appeals upheld the trial court's decision and stated that "[ruling] otherwise would upset the system of controls for the expenditure of public funds... as it would allow validating agreements reached between contractors and municipalities without complying with the process established by our legal

I hereby certify that this is a true and accurate
translation to the best of my abilities.
*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                              14

system." *ALCO Corp. v. Mun. de Toa Alta*, *supra*, p. 553.

We took advantage of that case to categorically reject the validation of retroactive municipal contracts. In that sense, we concluded that a written contract needed to be executed before the work was performed. *"Otherwise, we would be ignoring the public interest of regulating the inspections of the public works and restricting the subcontracting parameters, among other preventive measures..."* (Emphasis in the original) *ALCO Corp. v. Mun. de Toa Alta*, *supra*, p. 551. We specifically established that validating a retroactive contract could encourage a contractor to perform the work before the execution of the written contract as a means to pressure [the municipality] to execute the contract in the future. *Id.*, p. 543. We also reasoned that validating retroactive contracts could encourage a contractor to perform the work and wait until the municipal administration changed to validate the act. Therefore, endorsing that theory:

> would reward a person who conspires with a corrupt municipal official not to follow the rules of sound public administration, knowing that, as soon as the work is done, he or she would have the right to claim compensation regardless of the fact that he or she did not comply with the law when entering into the contract. *Id.*, p. 544.

Furthermore, when construing Art. 8.004 of Public Law No. 81 of August 30, 1991, as amended, known as the Commonwealth of Puerto Rico Autonomous Municipalities Act of 1991, 21 LPRA §4354, we ruled that said action "obligated

I hereby certify that this is a true and accurate
translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                          15

the funds of one fiscal year to pay **for an obligation that was unlawfully incurred** in a previous fiscal year." *Id.*, p. 543. (Emphasis added)

Finally, we concluded that performing work before having a written contract violates the principles of government contracts that promote sound public administration and the control of expenditures of public funds.

Pursuant to the foregoing, we will now apply the grounds that we have set forth to the case herein to determine whether it is in order to collect the rent for the third floor of the leased property by virtue of a Lease Agreement that was executed after the use and enjoyment of the property in question.

### III

As we had suggested, today, instead of evaluating the validity of a public works contract that was executed retroactively by a municipality and a private entity as we did in *ALCO Corp. v. Mun. de Toa Alta*, *supra*, we must examine the validity of a lease agreement agreed to retroactively by the state and a private entity.

The Department of State alleges that retroactive contracts are contrary to the rules of government contracts because they favor verbal agreements, which are against the law and our rulings. It therefore believes that the claim in this case is

I hereby certify that this is a true and accurate
translation to the best of my abilities.
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                                          16

not enforceable because it is based on a retroactive contract executed on July 18,
2007, to cover rent payments corresponding to the period from July 1, 2005, to June
30, 2006.

On the other hand, Jaap argues that the third (3rd) floor of the building in
question was originally leased by means of Contract No. 2001-000043, which was
in effect from January 16, 2000, to June 30, 2000. Respondent furthermore alleges
that the lease in question was covered by the original contract, as clause three (3)
specifies that, if neither of the parties gave notice to the other of its intent to amend
or rescind the contract, it would be automatically renewed for five (5) years or for
ten (10) if the property was located in the United States. The position of the
corporation is that the Department of State occupied the third (3rd) floor during a
period of time that was covered by the automatic renewal clause established in
Contract No. 2001-000043 and that this contract could have been extended for ten
(10) years, until January 15, 2010. Finally, it alleged that Contract No. 2008-000009
had the limited effect of formalizing the automatic renewal agreed to in the first
contract. We disagree.

After examining the entire record, we cannot conclude that there was an
automatic renewal of Lease No. 2001-000043. We found no evidence or legal

I hereby certify that this is a true and accurate
translation to the best of my abilities.

Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                            17

grounds in the record supporting Jaap's position. Our conclusion becomes evident

upon examining Contract No. 2008-000009, which establishes the following:

> **FOURTH:** The **DEPARTMENT and JAAP Corporation**
> executed a lease agreement for the third floor of the old Marshall
> building in Old San Juan (automatically renewable for five
> consecutive years) on January 16, 2000, and **the term of the
> contractual agreement ended on January 15, 2005** (emphasis
> added). Contract No. 2008-000009, p. 3.

> **FIFTH:** After the expiration of the contract between the parties,
> **JAAP Corporation** consented and agreed to allow the
> **DEPARTMENT** to continue occupying the third floor of the
> abovementioned building so that the services provided by the
> examining boards to the citizens would not be interrupted and
> affected, even though there was **no** written contractual agreement
> (emphasis added). *Id.*

The foregoing shows, first, that **the parties agreed and construed that the**

**original contract was in effect until January 15, 2005**, and was not extended for

ten (10) years as Jaap argues. That is, the Department of State occupied the third

floor from July 1, 2005, to February 29, 2008, without a written contract. Secondly,

these clauses reveal that **Jaap** expressly **consented** to allow **the Department of**

**State to continue occupying the third floor, without a written contract**. In

conclusion, Jaap's allegation to the effect that Contract No. 2001-000049 was

automatically renewed is not warranted. Said convenient construction has no

grounds and is contrary to the clear statements made by both parties in Contract

No. 2008-000009. Nonetheless, we must still determine whether the subsequent

I hereby certify that this is a true and accurate
translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                                    18

contract had the effect of creating a valid obligation for the retroactive payment of rent.

The rent payment that Jaap intends to obtain by virtue of Contract No. 2008-000009 has the purpose of collecting a sum amounting to one hundred sixteen thousand four hundred fifty-nine dollars and eleven cents ($116,459.11) to thus pay Jaap for the retroactive use and enjoyment of the third (3rd) floor. In other words, what Contract No. 2008-000009 intends to recognize is **a payment obligation that was created without having a written and perfected contract in accordance with the formalities that apply to government contracts**. However, as we mentioned before, in *ALCO Corp. v. Mun. de Toa Alta*, *supra*, p. 551, we made it clear that a private entity needs to make sure that it obtains a written contract before performing work or providing benefits and consideration, such as allowing the use and enjoyment of the third floor of the building owned by Jaap in this case.

A retroactive contract like the one in question presupposes one of two (2) situations: 1) that there was a verbal contract between the state and the private entity and the latter was performing the contract or providing benefits without having a written agreement; or 2) that there was simply no kind of contract while the private

I hereby certify that this is a true and accurate translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                19

entity provides benefits to the state in the hope that a contract will be executed in its favor someday and it will be paid for its goods or services. Either of the two (2) previous situations promotes not executing written contracts while trying to create obligations to encumber appropriations of public funds. There is no question that this is contrary to the rule of government contracts that requires that contracts between the government and a private entity be governed only by written contracts. *ALCO Corp. v. Municipio de Toa Alta*, *supra*; *Colón v. Mun. de Arecibo*, *supra*. We must remember that we would otherwise be rewarding a person who conspires with a corrupt official "not to follow the rules of sound public administration, knowing that... he or she would have the right to claim compensation regardless of the fact that he or she did not comply with the law when entering into the contract." *ALCO Corp. v. Mun. de Toa Alta*, *supra*, p. 544.

   In this case, Jaap allowed the Department of State to enjoy and use the third floor of the building. This leads us to conclude that Jaap provided benefits characteristic of a lease agreement—providing the "enjoyment or use of a thing for a specified period of time..."[9]—in the hope that, even without a written contract, the Department of State would execute a written contract in the future by virtue of which it could encumber public funds for the payment of rent.

---

[9] Art. 1433 of the Puerto Rico Civil Code, 31 LPRA 4012.

I hereby certify that this is a true and accurate
translation to the best of my abilities.
*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                                20

Today, we rule that retroactive contracts regarding the lease of property are against the rules of not only municipal contracts, but also government contracts in general. Retroactive government contracts certainly render any *control prior* to the creation of a government obligation inoperative, which is contrary to the public policy established in Art. 2(e) of Public Law No. 230, *supra*, 3 LPRA§283a(e). This practice also prevents third parties, such as the Office of the Comptroller, from complying with the public policy of Public Law No. 230, *supra*, and the citizens from being able to obtain the written contract to pass judgment on the same, as the contract is written and published after the performance and fulfillment of the obligations established therein. *ALCO Corp. v. Mun. de Toa Alta*, *supra*.

When we apply the aforementioned rules, we deduce that Respondent's claim is not enforceable. We cannot reach a different conclusion, as the claim in controversy is supported on a contract executed on July 18, 2007, to cover the rent corresponding to the period from June 1, 2005, to June 30, 2006. This action obligated the funds of one fiscal year for the payment of an obligation that was **unlawfully incurred** in a previous fiscal year, in violation of Art. 8(a) of Public Law No. 230, *supra*, 3 LPRA §283g(a). See *ALCO Corp. v. Mun. de Toa Alta*,

I hereby certify that this is a true and accurate
translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                            21

*supra*, p. 543. This contract is ineffective.[10] The state cannot expend public funds

in violation of the law and the case law construing the strict requirements that apply

to government contracts. Consequently, it is not appropriate to order the

Department of State to comply with Contract No. 2008-000009.[11]

IV

On the grounds set forth above, we partially reverse the appealed ruling

pronounced by the Court of Appeals in relation to the payment of rent to Jaap in

the amount of one hundred sixteen thousand four hundred fifty-nine dollars and

---

[10] Moreover, the application of the principle of tacit renewal presupposes the existence of a valid contract. Art. 1456 of the Civil Code, 31 LPRA 4063. By ruling that Contract No. 2008-000009 is ineffective, we do not need to express an opinion as to the application of the doctrine of tacit renewal to government contracts.

[11] Alternatively, Respondent argues that, if a rule other than that alleged in its pleading is enforced, we must not apply it to the case in caption because, when executing Contract No. 2008-000009, Jaap relied on the rule of law established by Executive Order No. 2006-23 dated June 22, 2006. That Executive Order essentially established that public agencies and instrumentalities could execute formal contracts with a retroactive effective date. Without going into the validity of the Executive Order, the truth is that retroactive contracts have been subject to forceful remarks from the Office of the Comptroller and the Department of Justice. See Office of the Comptroller, Circular Letter OC-98-01 dated July 8, 1997; Opinion of the Secretary of Justice No. No. [sic] 2001-14 dated July 2, 2001. It was not until the Executive Order was issued that the use of retroactive formal contracts was first encouraged.

Jaap's request does not change our reasoning. Examining the chronology of the facts is sufficient to know that Jaap allowed the Department of State to enjoy the third floor of the building in question while Executive Order No. 2006-23, *supra*, did even not exist.

I hereby certify that this is a true and accurate translation to the best of my abilities.

*Miriam R. García*
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

CC-2011-719                                                                22

eleven cents ($116,459.11).

A Judgment shall be pronounced accordingly.


Mildred G. Pabón Charneco
Associate Justice

I hereby certify that this is a true and accurate
translation to the best of my abilities.
Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051

IN THE PUERTO RICO SUPREME COURT


Jaap Corporation                                                    *Certiorari*

     Respondent

       v.

                                CC-2011-719

Department of State, et al.

     Petitioners


JUDGMENT


In San Juan, Puerto Rico, on February 1, 2013.

       On the grounds set forth above, we partially reverse the appealed ruling pronounced by the Court of Appeals in relation to the payment of rent to Jaap in the amount of one hundred sixteen thousand four hundred fifty-nine dollars and eleven cents ($116,459.11).

       Agreed and ordered by the Court and certified by the Clerk of the Supreme Court. Associate Justice Fiol Matta and Associate Justice Rodríguez Rodríguez did not intervene. Chief Justice Hernández Denton did not intervene.


Aida Ileana Oquendo Graulau
Clerk of the Supreme Court


I hereby certify that this is a true and accurate translation to the best of my abilities.

Miriam R. García
Federally Certified Court Interpreter
Certificate No. 03-051