## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| ———————————————— | X | |
| | ) | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| | ) | Case No. 17-bk-03283 (LTS) |
| as representative of | ) | (Jointly Administered) |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| ———————————————— | ) | |
| | ) | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| | ) | Case No. 17-cv-01685 (LTS) |
| as representative of | ) | Case No. 17-bk-03566 (LTS) |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| ———————————————— | X | |

## NOTICE OF APPEAL TO THE
## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

**TO THE HONORABLE COURT:**

Notice is hereby given that Altair Global Credit Opportunities Fund (A), LLC; Andalusian

Global Designated Activity Company; Glendon Opportunities Fund, L.P.; Mason Capital Master

Fund LP; Nokota Capital Master Fund, L.P.; Oaktree-Forrest Multi-Strategy, LLC (Series B);

Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree

Value Opportunities Fund, L.P.; Ocher Rose, L.L.C.; and SV Credit, L.P., movants and parties in interest in the above-captioned Title III proceedings, appeal to the United States Court of Appeals for the First Circuit from the *Order* dated and entered in the United States District Court for the District of Puerto Rico on August 21, 2018 (ECF No. 3793 in Case No. 17-03283 and ECF No. 318 in Case No. 17-bk-03566) (the "Order"), which denied movants' *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico from the Automatic Stay* (ECF No. 3418 in Case No. 17-bk-03283 and ECF No. 289 in Case No. 17-bk-03566), based on the *Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment* dated and entered on August 17, 2018 (ECF No. 215 in Adv. Proc. No. 17-00213) (the "Opinion"). Copies of the Order and Opinion are attached hereto.

The parties to the Order appealed from and the names and addresses of their respective attorneys are as follows:

2

<u>Financial Oversight and Management Board for Puerto Rico, as representative of the Employees
Retirement System of the Government of the Commonwealth of Puerto Rico</u>

**PROSKAUER ROSE LLP**
Martin J. Bienenstock (*pro hac vice*)
Kevin J. Perra (*pro hac vice*)
Brian Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Jared D. Zajac (*pro hac vice*)
Eleven Times Square
New York, NY 10036
*and*
Timothy W. Mungovan (*pro hac vice*)
William D. Dalsen (*pro hac vice*)
Michael R Hackett (*pro hac vice*)
One International Place
Boston, MA 02110
*and*
Paul V. Possinger (*pro hac vice*)
70 West Madison
Suite 3800
Chicago, IL 60602
*and*
Steven O. Weise (*pro hac vice*)
2049 Century Park East
Suite 3200
Los Angeles, CA 900067

**O'NEILL & BORGES LLC**
Hermann D. Bauer
250 Muñoz Rivera Avenue
Suite 800
San Juan, PR 00918

**LEGAL PARTNERS PSC**
Luis F Del Valle Emmanuelli
Box 316
Senorial Station
San Juan, PR 00926

**OF COUNSEL FOR
A&S LEGAL STUDIO, PSC**
434 Avenida Hostos
San Juan, PR 00918

<u>Movants and Parties in Interest Altair Global Credit Opportunities Fund (A), LLC, Andalusian
Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital
Master Fund LP, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, LLC
(Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2),
L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.</u>

**JONES DAY**
Bruce Bennett (*pro hac vice*)
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
*and*
Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*) 250
Vesey Street
New York, NY 10281
*and*

**DELGADO & FERNÁNDEZ, LLC**
Alfredo Fernández-Martínez
PO Box 11750
Fernández Juncos Station
San Juan, PR 00910

3

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Christopher J. DiPompeo (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
51 Louisiana Ave. N.W.
Washington, DC 20001

Movants and Parties in Interest Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto
Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed
Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income
Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico
Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-
Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-
Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-
Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.,
Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico
Target Maturity Fund, Inc.

**WHITE & CASE LLP**
John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10036
*and*
Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
200 S. Biscayne Blvd.
Suite 4900
Miami, FL 33131

**SÁNCHEZ PIRILLO LLC**
José C. Sánchez-Castro
Alicia I. Lavergne-Ramírez
Maraliz Vázquez-Marrero
270 Muñoz Rivera Avenue
Suite 1110
San Juan, PR 00918

Intervenor and Party in Interest The Official Committee of Retired Employees of Puerto Rico

**JENNER & BLOCK LLP**
Robert Gordon (*pro hac vice*)
Richard Levin (*pro hac vice*)
919 Third Ave
New York, NY 10022
*and*
Catherine Steege (*pro hac vice*)
Melissa Root (*pro hac vice*)
353 N. Clark Street
Chicago, IL 60654

**BENNAZAR, GARCÍA & MILIÁN, C.S.P.**
A.J. Bennazar-Zequeira
Héctor Mayol Kauffmann
Edificio Union Plaza
PH-A piso 18
Avenida Ponce de León #416
Hato Rey, San Juan, PR 00918

In San Juan, Puerto Rico, dated August 29, 2018.

By:

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*Counsel for ERS Bondholders Altair Global
Credit Opportunities Fund (A), LLC,
Andalusian Global Designated Activity
Company, Glendon Opportunities Fund,
L.P., Mason Capital Master Fund LP, Nokota
Capital Master Fund, L.P., Oaktree-Forrest
Multi-Strategy, LLC (Series B), Oaktree
Opportunities Fund IX, L.P., Oaktree
Opportunities Fund IX (Parallel 2), L.P.,
Oaktree Value Opportunities Fund, L.P.,
Ocher Rose, L.L.C., and SV Credit, L.P.*

  /s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com
jgross@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Christopher J. DiPompeo (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
cdipompeo@jonesday.com
ssooknanan@jonesday.com

*Counsel for ERS Bondholders Altair Global
Credit Opportunities Fund (A), LLC,
Andalusian Global Designated Activity
Company, Glendon Opportunities Fund, L.P.,
Mason Capital Master Fund LP, Nokota
Capital Master Fund, L.P., Oaktree-Forrest
Multi-Strategy, LLC (Series B), Oaktree
Opportunities Fund IX, L.P., Oaktree
Opportunities Fund IX (Parallel 2), L.P.,
Oaktree Value Opportunities Fund, L.P.,
Ocher Rose, L.L.C., and SV Credit, L.P.*

## CERTIFICATE OF SERVICE

We hereby certify that we filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned cases. We will also cause a copy of this document to be delivered to the relevant parties in accordance with the *Case Management and Administrative Procedures*.

Dated: August 29, 2018.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com
jgross@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Christopher J. DiPompeo (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
cdipompeo@jonesday.com
ssooknanan@jonesday.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

      Debtors.[1]

-------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO (ERS),

      Debtor.

-------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

This Order relates to
17 BK 3566-LTS and shall
also be filed in the Case No.
17 BK 3566-LTS.

PROMESA
Title III

No. 17 BK 3566-LTS

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4) digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-
LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing
Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of
Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA")
(Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv)
Employees Retirement System of the Government of the Commonwealth of Puerto Rico
("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:
9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17
BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are
listed as Bankruptcy Case numbers due to software limitations).

<u>ORDER</u>

On July 3, 2018, Movants[2] filed the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Docket Entry No. 3418 in Case No. 17 BK 3283-LTS and Docket Entry No. 289 in Case No. 17 BK 3566-LTS, the "Adequate Protection Motion").

On July 10, 2018, (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed the *Debtor's Opposition to Motion of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* (Docket No. 3465 in Case No. 17-bk-03283 and Docket No. 292 in Case No. 17-bk-03566); (ii) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") filed the *Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico to the ERS Bondholders' Motion for Relief from the Automatic Stay* (Docket No. 3468 in Case No. 17-bk-03283 and Docket No. 293 in Case No. 17-bk-03566); (iii) the American Federation of State, County and Municipal Employees ("AFSCME") filed the *Joinder of the American Federation of State,*

---

[2]     Movants include Altair Global Credit Opportunities Fund (A), LLC; Andalusian Global Designated Activity Company; Glendon Opportunities Fund, L.P.; Mason Capital Master Fund LP; Nokota Capital Master Fund, L.P.; Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Value Opportunities Fund, L.P.; Ocher Rose, L.L.C.; Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc.; Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Investors Bond Fund I; Puerto Rico Investors Tax-Free Fund, Inc.; Puerto Rico Investors Tax-Free Fund II, Inc.; Puerto Rico Investors Tax-Free Fund III, Inc.; Puerto Rico Investors Tax-Free Fund IV, Inc.; Puerto Rico Investors Tax-Free Fund V, Inc.; Puerto Rico Investors Tax-Free Fund VI, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; SV Credit, L.P.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund.

County and Municipal Employees to (1) the Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico to the ERS Bondholders' Motion for Relief from the Automatic Stay and (2) Debtor's Opposition to Motion of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay (Docket No. 3467 in Case No. 17-bk-03283 and Docket No. 294 in Case No. 17-bk-03566); and (iv) the Official Committee of Unsecured Creditors of all Title III Debtors filed the Joinder of the Official Committee of Unsecured Creditors to Debtor's and Retiree Committee's Objections to Motion of Certain Secured Creditors of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay (Docket No. 3470 in Case No. 17-bk-03283 and Docket No. 296 in Case No. 17-bk-03566).

On July 17, 2018, Movants filed the Reply of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico in Support of Motion for Relief from the Automatic Stay (Docket No. 3592 in Case No. 17-bk-03283 and Docket No. 303 in Case No. 17-bk-03566).

On August 6, 2018, the Court entered the Order Scheduling Certain Deadlines with Respect to the Motion of Certain Secured Creditors of the Employees Retirement System for Relief from the Automatic Stay (Docket No. 313 in Case No. 17 BK 3566-LTS and Docket No. 3747 in Case No. 17 BK 3283-LTS, the "August 6 Order").

On August 17, 2018, the Court issued the Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment (the "August 17 Order") finding that Movants' liens are unperfected (Docket No. 215 in Adv. Proc. No. 17-00213).

The August 17 Order resolves the Adequate Protection Motion.

It is hereby ORDERED that:

1.     The Adequate Protection Motion is DENIED on the ground that the August 17

Order resolves it;

2.      This Order is without prejudice to Movants' right to appeal this Order and the August 17 Order on any grounds and without prejudice to the Oversight Board, on behalf of ERS, and the Retiree Committee opposing any appeal on any grounds;

3.      This resolves the August 6 Order;

4.      All parties' rights are reserved in full; and

5.      Each party shall bear its own costs and attorneys' fees.

SO ORDERED.

Dated: August 21, 2018

       /s/ Laura Taylor Swain   
LAURA TAYLOR SWAIN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------x

In re:                                                          PROMESA
                                                                Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,                               No. 17 BK 3283-LTS
                                                                (Jointly Administered)
       as representative of

THE COMMONWEALTH OF PUERTO RICO,                                This Order relates to
et al.,                                                         17 BK 3566-LTS and shall
                                                                also be filed in the Case No.
                                                                17 BK 3566-LTS.
       Debtors.[1]

----------------------------------------------------------x

In re:                                                          PROMESA
                                                                Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of                        No. 17 BK 3566-LTS

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO (ERS),

       Debtor.

----------------------------------------------------------x

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4) digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-
LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing
Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of
Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA")
(Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv)
Employees Retirement System of the Government of the Commonwealth of Puerto Rico
("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:
9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17
BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are
listed as Bankruptcy Case numbers due to software limitations).

<u>ORDER</u>

On July 3, 2018, Movants[2] filed the *Motion of Certain Secured Creditors of the*

*Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief*

*from the Automatic Stay* (Docket Entry No. 3418 in Case No. 17 BK 3283-LTS and Docket

Entry No. 289 in Case No. 17 BK 3566-LTS, the "Adequate Protection Motion").

On July 10, 2018, (i) the Financial Oversight and Management Board for Puerto

Rico (the "Oversight Board") filed the *Debtor's Opposition to Motion of Certain Secured*

*Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico*

*for Relief from Automatic Stay* (Docket No. 3465 in Case No. 17-bk-03283 and Docket No. 292

in Case No. 17-bk-03566); (ii) the Official Committee of Retired Employees of the

Commonwealth of Puerto Rico (the "Retiree Committee") filed the *Objection of the Official*

*Committee of Retired Employees of the Commonwealth of Puerto Rico to the ERS Bondholders'*

*Motion for Relief from the Automatic Stay* (Docket No. 3468 in Case No. 17-bk-03283 and

Docket No. 293 in Case No. 17-bk-03566); (iii) the American Federation of State, County and

Municipal Employees ("AFSCME") filed the *Joinder of the American Federation of State,*

---

[2]        Movants include Altair Global Credit Opportunities Fund (A), LLC; Andalusian Global
Designated Activity Company; Glendon Opportunities Fund, L.P.; Mason Capital Master
Fund LP; Nokota Capital Master Fund, L.P.; Oaktree-Forrest Multi-Strategy, LLC (Series
B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel 2),
L.P.; Oaktree Value Opportunities Fund, L.P.; Ocher Rose, L.L.C.; Puerto Rico AAA
Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc.; Puerto Rico
AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto
Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico
Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico
GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Investors Bond
Fund I; Puerto Rico Investors Tax-Free Fund, Inc.; Puerto Rico Investors Tax-Free Fund
II, Inc.; Puerto Rico Investors Tax-Free Fund III, Inc.; Puerto Rico Investors Tax-Free
Fund IV, Inc.; Puerto Rico Investors Tax-Free Fund V, Inc.; Puerto Rico Investors Tax-
Free Fund VI, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund,
Inc.; SV Credit, L.P.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II,
Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth &
Income Puerto Rico Fund.

*County and Municipal Employees to (1) the Objection of the Official Committee of Retired*
*Employees of the Commonwealth of Puerto Rico to the ERS Bondholders' Motion for Relief from*
*the Automatic Stay and (2) Debtor's Opposition to Motion of Certain Secured Claimholders of*
*Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from*
*Automatic Stay* (Docket No. 3467 in Case No. 17-bk-03283 and Docket No. 294 in Case No. 17-
bk-03566); and (iv) the Official Committee of Unsecured Creditors of all Title III Debtors filed
the *Joinder of the Official Committee of Unsecured Creditors to Debtor's and Retiree*
*Committee's Objections to Motion of Certain Secured Creditors of Employees Retirement System*
*of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* (Docket No.
3470 in Case No. 17-bk-03283 and Docket No. 296 in Case No. 17-bk-03566).

On July 17, 2018, Movants filed the *Reply of Certain Secured Creditors of the*
*Employees Retirement System of the Government of the Commonwealth of Puerto Rico in*
*Support of Motion for Relief from the Automatic Stay* (Docket No. 3592 in Case No. 17-bk-
03283 and Docket No. 303 in Case No. 17-bk-03566).

On August 6, 2018, the Court entered the *Order Scheduling Certain Deadlines*
*with Respect to the Motion of Certain Secured Creditors of the Employees Retirement System for*
*Relief from the Automatic Stay* (Docket No. 313 in Case No. 17 BK 3566-LTS and Docket No.
3747 in Case No. 17 BK 3283-LTS, the "August 6 Order").

On August 17, 2018, the Court issued the *Opinion and Order Granting and*
*Denying in Part Cross Motions for Summary Judgment* (the "August 17 Order") finding that
Movants' liens are unperfected (Docket No. 215 in Adv. Proc. No. 17-00213).

The August 17 Order resolves the Adequate Protection Motion.

It is hereby ORDERED that:

1.     The Adequate Protection Motion is DENIED on the ground that the August 17

Order resolves it;

2.      This Order is without prejudice to Movants' right to appeal this Order and the August 17 Order on any grounds and without prejudice to the Oversight Board, on behalf of ERS, and the Retiree Committee opposing any appeal on any grounds;

3.      This resolves the August 6 Order;

4.      All parties' rights are reserved in full; and

5.      Each party shall bear its own costs and attorneys' fees.

SO ORDERED.

Dated: August 21, 2018

   /s/ Laura Taylor Swain   
LAURA TAYLOR SWAIN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

          Debtors.[1]

------------------------------------------------------------x

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

          Debtors.

------------------------------------------------------------x

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of,

THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

         Plaintiff,

           -against-

PROMESA
Title III

Case No. 17 BK 3283-LTS
(Jointly Administered)

Case No. 17 BK 3566-LTS

Adv. Proc. No. 17-213-LTS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

ALTAIR GLOBAL CREDIT OPPORTUNITIES
FUND (A), LLC, ET AL.,

              Defendants-Counterclaimants.

-----------------------------------------------------------x

OPINION AND ORDER GRANTING AND
DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT

APPEARANCES:

PROSKAUER ROSE LLP
By:    Steven O. Weise
        Martin J. Bienenstock
        Timothy W. Mungovan
        Kevin J. Perra
        Paul V. Possinger
Eleven Times Square
New York, NY 10036

LUIS F. DEL VALLE-EMMANUELLI
By:    Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897

*Counsel for Plaintiff the Financial Oversight
and Management Board for Puerto Rico, as
representative of the Employees Retirement
System of the Government of the
Commonwealth of Puerto Rico*

JENNER & BLOCK LLP
By:    Robert Gordon
        Richard Levin
919 Third Ave
New York, NY 10022-3908

    *and*

    Catherine Steege
    Melissa Root
353 N. Clark Street
Chicago, IL 60654

BENNAZAR, GARCÍA & MILIÁN, C.S.P.
By:    A.J. Bennazar-Zequeira
        Héctor Mayol Kauffmann
Edificio Union Plaza

DELGADO & FERNÁNDEZ, LLC
By:    Alfredo Fernández-Martínez
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750

JONES DAY
By:    Bruce Bennett
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071

    *and*

    Benjamin Rosenblum
    Victoria Dorfman
250 Vesey Street
New York, NY 10281

    *and*

    Geoffrey S. Stewart
    Beth Heifetz
    Christopher J. DiPompeo
51 Louisiana Ave. N.W.
Washington, DC 20001

*Counsel for Defendants ERS Bondholders
Altair Global Credit Opportunities Fund (A),
LLC, Andalusian Global Designated Activity
Company, Glendon Opportunities Fund, L.P.,
Mason Capital Management, LLC, Nokota
Capital Master Fund, L.P., Oaktree-Forrest
Multi- Strategy, LLC (Series B), Oaktree
Opportunities Fund IX, L.P., Oaktree
Opportunities Fund IX (Parallel 2), L.P.,
Oaktree Value Opportunities Fund, L.P.,
Ocher Rose, L.L.C., and SV Credit, L.P.*

PH-A piso 18
Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918

*Counsel for Intervenor The Official Committee
of Retired Employees of
Puerto Rico*

SÁNCHEZ PIRILLO LLC
By:   José C. Sánchez-Castro
       Alicia I. Lavergne-Ramírez
       Maraliz Vázquez-Marrero
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918

WHITE & CASE LLP
By:   John K. Cunningham
       Glenn M. Kurtz
1221 Avenue of the Americas
New York, NY 10036

     *and*

     Jason N. Zakia
     Cheryl T. Sloane
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131

*Counsel for Defendants Puerto Rico AAA
Portfolio Bond Fund, Inc., Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico
AAA Portfolio Target Maturity Fund, Inc.,
Puerto Rico Fixed Income Fund, Inc.,
Puerto Rico Fixed Income Fund II, Inc.,
Puerto Rico Fixed Income Fund III, Inc.,
Puerto Rico Fixed Income Fund IV, Inc.,
Puerto Rico Fixed Income Fund V, Inc.,
Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico
Investors Bond Fund I, Puerto Rico
Investors Tax-Free Fund, Inc., Puerto
Rico Investors Tax-Free Fund, Inc. II,
Puerto Rico Investors Tax-Free Fund III,
Inc., Puerto Rico Investors Tax-Free Fund
IV, Inc., Puerto Rico Investors Tax-Free
Fund V, Inc., Puerto Rico Investors Tax-
Free Fund VI, Inc., Puerto Rico
Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto
Rico Fund, Inc., Tax-Free Puerto Rico
Fund II, Inc., Tax-Free Puerto Rico
Target Maturity Fund, Inc., and UBS IRA
Select Growth & Income Puerto Rico
Fund*

LAURA TAYLOR SWAIN, United States District Judge

The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" or "Plaintiff"), by and through the Financial Oversight and Management Board (the "Oversight Board"), brings this adversary proceeding against the above-captioned defendants (collectively, "Defendants"). Defendants, who hold bonds issued by ERS, assert that they have a valid and perfected security interest in a wide range of system-related employer remittances, employee loans, and amounts held in a certain segregated account pursuant to a stipulation. Plaintiff asserts four causes of action seeking declarations concerning the scope, validity, and perfection of Defendants' asserted security interest and Plaintiff's compliance with its obligations under a certain stipulation. (Docket Entry No. 1,[2] the "Complaint"). Defendants have asserted nine counterclaims seeking declaratory relief in their favor with respect to the scope, validity, and perfection of their asserted security interest, and a contention that a particular application of a statutory provision upon which Plaintiff relies would be unconstitutional. (Docket Entry No. 36, Answer and Counterclaims ¶¶ 225-308.) The parties have filed cross-motions for summary judgment. Plaintiff seeks judgment in its favor with respect to each of its four causes of action. Defendants seek the dismissal of each of Plaintiff's causes of action and judgment in Defendants' favor on each of their nine counterclaims. (Docket Entry No. 91, the "Plaintiff's Motion" and Docket Entry No. 94, the "Defendants' Motion.") The Court has jurisdiction of this action pursuant to 48 U.S.C. § 2166. The Court has considered the submissions of the parties carefully. For the following reasons, Plaintiff's Motion is granted with respect to Counts One, Two, and Four of the Complaint, and denied with respect to Count Three of the Complaint. Defendants' motion for summary judgment is denied with respect to all four Counts of Plaintiff's Complaint and with respect to each of Defendants' nine Counterclaims.

---

[2]     All docket entry references are to entries in Case No. 17-AP-00213, unless otherwise specified.

Case:17-00213-LTS Doc#:325 Filed:09/29/18 Entered:09/29/18 14:26:49 Desc: Main
Document Page:19 of 32

## Background

Unless otherwise indicated, the following facts are undisputed.[3]

On May 15, 1951, the legislature of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico") enacted Act No. 447-1951 (codified, as amended, at 3 L.P.R.A. §§ 761–788, the "Enabling Act"). (Pl.'s 56(b) ¶ 1; Defs.' 56(b) ¶ 10.) The Enabling Act established ERS to administer the payment of pensions and certain other benefits for the retired employees of the Commonwealth, certain public corporations in Puerto Rico, and certain municipalities. See 3 L.P.R.A. § 761 (2016). As originally codified, the official English-language version of the Enabling Act denominated the retirement and benefits system as the "Employees Retirement System of the Insular Government of Puerto Rico and its Instrumentalities." (Docket Entry No. 92, the "Possinger Declaration," Ex. 1.)[4]

The Enabling Act provides that ERS may both issue debt and secure such debt with the assets of ERS. On January 24, 2008, ERS issued senior and subordinate pension funding bonds (collectively, the "ERS Bonds") pursuant to a Pension Funding Bond Resolution (Compl., Ex. D, the "Resolution"). (Pl.'s 56(b) ¶ 4; Defs.' 56(b) ¶ 22.) Pursuant to the Resolution, the holders of the ERS Bonds (the "ERS Bondholders" or "Bondholders") were granted a security interest in certain "Pledged Property." Specifically, Pledged Property is defined in the Resolution to include the following:

---

[3] Facts characterized as undisputed are identified as such in the parties' statements pursuant to D.P.R. Local Civil Rule 56(b) or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56(b) Statements (Docket Entry No. 95 ("Defs.' 56(b)") or Docket Entry No. 93 ("Pl.'s 56(b)")) incorporate by reference the parties' citations to underlying evidentiary submissions. The Court declines to address assertions proffered by the parties that are immaterial or conclusory statements of law which the parties proffer as facts.

[4] The official English-language version of the Enabling Act, as amended in 2013, designates the retirement and benefits system as the "Retirement System for Employees of the Government of the Commonwealth of Puerto Rico." See 3 L.P.R.A. § 761 (2016).

1. All Revenues.

2. All right, title and interest of the System in and to Revenues, and all rights to receive the same.

3. The Funds, Accounts, and Subaccounts held by the Fiscal Agent, and moneys and securities and, in the case of the Debt Service Reserve Account, Reserve Account Cash Equivalents, from time to time held by the Fiscal Agent under the terms of this Resolution, subject to the application thereof as provided in this Resolution and to the provisions of Sections 1301 and 1303.

4. Any and all other rights and personal property of every kind and nature from time to time hereafter pledged and assigned by the System to the Fiscal Agent as and for additional security for the Bonds and Parity Obligations.

5. Any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property mentioned described in paragraphs (1) through (4) above, including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

(Resolution at VI-36.)  The Resolution defines "Revenues" as follows:

1. All Employers' Contributions[5] received by the System or the Fiscal Agent.

2. With respect to any particular Bonds, the proceeds of any draw on or payment under any Credit Facility which is intended for the payment of such Bonds, but only for purposes of such payment and not for other purposes of this Resolution.

3. Net amounts received by the System pursuant to a Qualified Hedge.

4. Income and interest earned and gains realized in excess of losses suffered by any Fund, Account, or Subaccount held by the Fiscal Agent under the terms of this Resolution, subject to the provisions of Sections 1301 and 1303.

5. Any other revenues, fees, charges, surcharges, rents, proceeds or other income and receipts received by or on behalf of the System

---

[5]     The Resolution provides that "Employers' Contributions shall mean the contributions paid from and after the date hereof that are made by the Employers and any assets in lieu thereof or derived thereunder which are payable to the System pursuant to Sections 2-116, 3-105 and 4-113 of the [Enabling Act]."  (Resolution at VI-33.)

or by the Fiscal Agent lawfully available for the purposes of this
Resolution and deposited by or on behalf of the System or by the
Fiscal Agent in any Fund, Account, or Subaccount held by the
Fiscal Agent under the terms of this Resolution, subject to the
provisions of Sections 1301 and 1303.

(Id. at VI-37.)

The Resolution is publicly available both electronically on the websites of the

Government Development Bank, ERS, and the Electronic Municipal Market Access System, and

in the hard copy records of ERS.  (Defs.' 56(b) ¶ 42; see also Docket Entry No. 116, "Plaintiff's

56(b) Response," ¶ 42.)

On June 2, 2008, ERS executed a security agreement (Compl., Ex. E, the

"Security Agreement") in connection with the Resolution.  The Security Agreement grants, for

the benefit of the ERS Bondholders, "a security interest in (i) the Pledged Property, and (ii) all

proceeds thereof and all after-acquired property, subject to application as permitted by the

Resolution."  (Id.)  The Security Agreement does not include a definition of the term "Pledged

Property," instead providing that "[a]ll capitalized words not defined herein shall have the

meanings ascribed to them in the Resolution."  (Id.)

Following the execution of the Security Agreement, a series of financing

statements was filed with the Department of State of the Government of Puerto Rico (the

"Department of State").  Specifically, two UCC-1 financing statements were received by the

Department of State on or about June 24, 2008 and July 2, 2008, respectively (together, the

"2008 UCC-1s").  (Pl.'s 56(b) ¶¶ 18, 23.)  The 2008 UCC-1s identify the debtor as the

"Employees Retirement System of the Government of the Commonwealth of Puerto Rico."

(Possinger Decl., Exs. 6 and 9.)  The field for the collateral description contains the following

prompt: "this financing statement covers the following types or items [of] property."  (Id.)  In the

relevant response field, the 2008 UCC-1s describe the collateral as follows: "[t]he pledged

property described in the Security Agreement attached as Exhibit A hereto and by this reference

made a part hereof." (Id.) A copy of the Security Agreement is attached to each 2008 UCC-1.

(Id.; see also Pl.'s 56(b) ¶¶ 21, 22, 26, 27.) The Resolution, which sets forth the definition of

Pledged Property, is not included in the 2008 UCC-1 filings, however.

In 2013, the legislature of Puerto Rico enacted Act No. 3-2013, which amended

the Enabling Act, effective July 1 of that year. (See Possinger Decl., Ex. 5.) The official

English-language version of Act No. 3-2013 amended Section 1-101 of the Enabling Act to

provide that Puerto Rico's "retirement and benefit system [shall] be designated as the

'Retirement System for Employees of the Government of the Commonwealth of Puerto Rico'"

("RSE"). (Id. § 1-101.) Throughout Act No. 3-2013's operative provisions, the names ERS and

RSE are used interchangeably and seemingly inconsistently.[6]

On or about December 17, 2015, the Department of State received two UCC-3

amendment forms corresponding to each of the 2008 UCC-1s (collectively, the "2015

Amendments"). (Pl.'s 56(b) ¶ 29.) On or about January 19, 2016, the Department of State

received two further UCC-3 amendments, further amending the 2008 UCC-1s (collectively, the

"2016 Amendments" and, together with the 2015 Amendments, the "UCC-3 Amendments").

(Id. ¶ 33.) The information in the collateral description field of each UCC-3 Amendment reads:

"[t]he Pledged Property and all proceeds thereof and all after-acquired Property as described

more fully in Exhibit A hereto and incorporated by reference." (Possinger Decl., Exs. 7, 8, 10,

and 11.) Exhibit A to each of the UCC-3s provides a fulsome definition of Pledged Property,

---

[6]     The Spanish-language appellation of the system, which was not used in any of the UCC-1
filings, was not changed by Act 3-2013. Defendants note that the English-language
version of 3 L.P.R.A. Section 763(36) defines the term "System" as used throughout the
statute as ERS. Defendants corrected their citation to this provision in a notice of errata
(Docket Entry No. 173, the "Notice of Errata"), which Plaintiff moved to strike (Docket
Entry No. 175, the "Motion to Strike"). The Court denies the Motion to Strike because
the supplemental notice simply provides a corrected citation in support of Defendants'
argument that the Enabling Act, as amended, uses the names ERS and RSE
inconsistently.

including the definitions of "Revenues" and "Employers' Contributions." (Id.) There is no

identification of the debtor's name or identity on the Form UCC-3 associated with each of the

UCC-3 Amendments. (Id.) Rather, the UCC-3s identify the debtor entity only insofar as Exhibit

A to each of the UCC-3 Amendments refers to the debtor as the "Employees Retirement System

of the Government of the Commonwealth of Puerto Rico." (Id.)

On January 17, 2017, certain parties, including ERS, entered into a stipulation to

resolve Altair Global Credit Opportunities Fund (A), LLC v. Garcia-Padilla, No. 16-cv-2696, a

proceeding brought in the United States District Court for the District of Puerto Rico to lift the

automatic stay imposed by Section 405 of the Puerto Rico Oversight, Management, and

Economic Stability Act ("PROMESA"),[7] 48 U.S.C. § 2194. (Compl., Ex. L, the "January

Stipulation" or the "Stipulation.") This Stipulation required ERS to deposit all Employer

Contributions (as defined by the Resolution) received during the pendency of the Section 405

stay into a segregated account. (Stipulation ¶¶ 2(a), (c).) Additionally, the Stipulation provides

that "[t]o the extent that ERS receives any Commonwealth central government Employers'

Contributions, . . . such contributions shall be retained in the Segregated Account pending further

order of the Court." (Id. ¶ 2(d).)

## DISCUSSION

The pending motions are brought pursuant to Rule 56(a) of the Federal Rules of

Civil Procedure.[8] Under Rule 56(a), summary judgment is appropriate when "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[7]    PROMESA is codified at 48 U.S.C. Section 2101 et seq. All references to "PROMESA"
       provisions in the remainder of this opinion are to the uncodified version of the legislation
       unless otherwise specified.

[8]    Federal Rule of Civil Procedure 56 is made applicable in this adversary proceeding by
       Federal Rule of Bankruptcy Procedure 7056. See 48 U.S.C. § 2170.

matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "possess[] the capacity to

sway the outcome of the litigation under the applicable law," and there is a genuine dispute

where an issue "may reasonably be resolved in favor of either party." Vineberg v. Bissonnette,

548 F.3d 50, 56 (1st Cir. 2008) (internal quotation marks and citations omitted). The Court must

"review the material presented in the light most favorable to the non-movant, and [] must indulge

all inferences favorable to that party." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31

(1st Cir. 1990) (internal quotation marks and citations omitted). When a properly supported

motion for summary judgment is made, the non-moving party must set forth "specific facts

showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250 (1986) (internal quotation marks and citation omitted). The non-moving party can avoid

summary judgment only by providing properly supported evidence of disputed material facts.

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Where the parties have

submitted cross-motions for summary judgment, the court applies these principles in evaluating

each motion.

Defendants claim that the holders of the bonds issued by ERS have a valid and

enforceable security interest in all monies remitted and to be remitted by participating employers

in respect of pension obligations and employee loan repayments, the funds deposited pursuant to

the Stipulation, and interest earned thereon. While ERS has, in litigation before the

commencement of ERS's debt readjustment case under Title III of PROMESA, acknowledged

that the ERS Bondholders have valid and enforceable liens in current and future employee

contributions,[9] ERS now asserts that the security interest, whatever its scope, was not properly

perfected. ERS invokes section 544(a) of the Bankruptcy Code, which is incorporated by

Section 301 of PROMESA, as rendering invalid and unenforceable the allegedly unperfected

---

[9]        (See Defs.' 56(b) ¶¶ 58-63.)

security interest.  Even if the claimed security interest was and remains perfected, ERS further

asserts, it does not attach to post-Title III petition remittances because they do not constitute

proceeds of property in which the Bondholders have a security interest.  The parties also dispute

the scope of the security interest, with ERS arguing that it extends, as relevant here, only to

employer contribution remittances in respect of pension obligations that were actually received

by ERS and does not encompass loans to employees or repayments of those loans.  The

Bondholders assert that the security interest is valid and perfected (or that there are at least

disputed factual issues as to whether ERS is barred by waiver, laches, or estoppel from

contesting the validity and perfection of the security interest) and extends to rights in future

contributions as well as to employee loans and repayments of such loans.

   The Court turns first to the issue of whether the Bondholders' security interest is

perfected.

  I. <u>Perfection of Security Interest</u>

   Pursuant to Commonwealth law, security interests of the kind asserted by

Defendants must be perfected by filing financing statements pursuant to the Uniform

Commercial Code (as adopted by Puerto Rico) on the secured transactions registry maintained

by the Department of State.  It is undisputed here that there were six relevant filings – two in

2008 that utilized the basic UCC-1 financing statement form, and four in 2015 and 2016 that

utilized the UCC-3 financing statement amendment form.  ERS contends that none of these

filings were sufficient to perfect the Bondholders' claimed security interest.

   a. *The Original Financing Statements*

   Plaintiff argues that the 2008 UCC-1s were not effective to perfect the

Bondholders' claimed security interest because they did not contain an adequate collateral

description.  With respect to the UCC-3 Amendments, Plaintiff further asserts that later UCC-3

amendment filings were insufficient to cure the defects in the 2008 UCC-1 filings because the

later filings did not reference the official legal name of the debtor entity, which had been

changed in the interim.

Puerto Rico first adopted its version of Article 9 of the Uniform Commercial

Code (the "UCC"), known as the Commercial Transactions Act of 1996 ("Former PR UCC"), on

September 19, 1996. The Former PR UCC was in effect until January 13, 2013, when it was

repealed and replaced with Puerto Rico's current version of the statute (the "Revised UCC").

See Act No. 241-1996; see also Act No. 21-2012. The UCC generally provides a notice system

for security interests that creditors may have against the assets of a debtor. See Webb Co. v.

First City Bank (In re Softalk Pub. Co., Inc.), 856 F.2d 1328, 1330 (9th Cir. 1988) (stating that

"[t]he [UCC] financing statement serves to give notice to other creditors or potential creditors

that the filing creditor might have a security interest in certain assets of the named debtor.").

Although strict enforcement of the formal requirements of the UCC may be harsh, courts have

held that "literal application of the statutory filing requirement [is necessary to prevent] the

deleterious effect of undermining the reliance which can be placed upon them." Uniroyal, Inc. v.

Universal Tire & Auto Supply Co., 557 F.2d 22, 23 (1st Cir. 1977).

Section 9-402 of the Former PR UCC, which was in effect at the time the 2008

UCC-1s were filed, provided that a financing statement is deemed to be sufficient to perfect a

security interest if it provides "the names of the debtor and the secured party, is signed by the

debtor, gives an address of the secured party from which information concerning the security

interest may be obtained, . . . and contains a statement indicating the types, or describing the

items, of collateral." 19 L.P.R.A. § 2152(1) (2008). In turn, a collateral description is sufficient

"whether or not it is specific if it reasonably identifies what is described." Former PR UCC § 9-

110, 19 L.P.R.A. § 2010 (2008). Importantly, a UCC statement need not include the full

collateral description on the face of the financing statement. Rather, a UCC statement may

incorporate a collateral description by reference to a document attached to the UCC filing or, in

certain circumstances, by reference to a description publicly filed elsewhere in the UCC clerk's

records. See Int'l Home Prods., Inc. v. First Bank of P.R., Inc., 495 B.R. 152, 160 n. 8 (D.P.R.

2013) (finding sufficient a collateral description that incorporated by reference an expired UCC

statement attached to the operative filing that contained a valid collateral description); see also

Canfield v. SBA (In re Tebbs Constr. Co., Inc.), 39 B.R. 742, 746 (Bankr. E.D. Va. 1984)

(finding that a filing statement that referenced a security agreement that was not attached, but did

reference a previously-filed, lapsed statement to which the relevant security agreement was

attached, provided a sufficient collateral description); but see In re Quality Seafood, Inc., 104

B.R. 560, 561-62 (Bankr. D. Mass. 1989) (finding that a reference to the collateral description on

a lapsed financing statement was insufficient because the lapsed statement could be removed

from the public record).

   Defendants argue that the 2008 UCC-1s were sufficient to perfect their security

interest because a financing statement may incorporate a collateral description by reference

regardless of whether the referenced document is publicly available. In support of this

proposition, Defendants rely principally, however, on authority in which an extrinsic collateral

description was incorporated by reference into a security agreement, rather than a UCC financing

statement. See, e.g., Greenville Riverboat, LLC v. Less, Getz & Lipman, P.L.L.C., 131 F. Supp.

2d 842, 848-49 (S.D. Miss. 2000). Such cases are readily distinguishable because security

agreements, as creatures of contract law that govern the relationship of the parties inter se, may

incorporate extrinsic documents by reference if the incorporation reflects the parties' express

intent. UCC financing statements, by contrast, serve a public notice function and must disclose a

minimum amount of information to interested third parties. See In re Softalk Pub. Co., Inc., 856

F.2d at 1330 (describing the difference between the functions of a security agreement and a UCC

financing statement).

Defendants also cite <u>Chase Bank of Florida, N.A. v. Muscarella</u>, 582 So. 2d 1196, 1198 (Fl. Dist. Ct. App. 1991), for the proposition that an otherwise insufficient financing statement may refer to a description in a non-public document if the financing statement communicates to interested third parties that further inquiry is necessary to ascertain the scope and contours of the collateral. Although a financing statement is not intended to disclose a comprehensive and detailed account of the collateral, the UCC, by its plain language, requires a level of specificity sufficient to delineate the outer boundaries of the collateral. <u>See</u> <u>In re Bailey</u>, 228 B.R. 267, 273-74 (Bankr. D. Kan. 1998) (stating that, "[i]f the collateral is not described in any filed financing statement, the potential creditor should not need to make any further inquiry"); <u>see also</u> <u>In re H.L. Bennett Co.</u>, 588 F.2d 389, 393 (3d Cir. 1978) (stating that, although the UCC is a "notice filing" statute, a collateral description must meet a minimum level of specificity); <u>see</u> <u>In re Softalk Pub. Co., Inc.</u>, 856 F.2d at 1330-31 (stating that mere inquiry notice is not sufficient, and that a basic collateral description is required). Furthermore, to interpret Article 9 of the UCC to permit the use of a collateral description that fails to minimally describe the collateral pledged would vitiate the description requirements of Former PR UCC Sections 9-110, 19 L.P.R.A. § 2010 (2008), [10] and 9-402, 19 L.P.R.A. § 2152(1) (2008),[11] thus

---

[10]      Former PR UCC Section 9-110 provided as follows:

> For the purposes of §§ 2001-2207 of this title any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described, provided in the case of real estate the description shall include the Registry of Property inscription data for the property.

19 L.P.R.A. § 2010 (2008).

[11]      Former PR UCC Section 9-402(1) provided, in relevant part, as follows:

> A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

rendering those sections surplusage, a construction courts must strive to avoid.  Direct Mktg.
Ass'n v. Brohl, 135 S. Ct. 1124, 1132 (2015) (stating that courts should avoid statutory
interpretations that render terms and provisions as surplusage).

Defendants also contend that the reference to the definition of Pledged Property in
the Resolution provides an adequate collateral description because the Resolution is publicly
available.  Although some courts have permitted a financing statement to incorporate collateral
descriptions by reference to "publicly filed" documents, such cases dealt only with documents
that had been filed publicly in the records of the clerk's office maintaining the local UCC
records.  See, e.g., In re Tebbs Const. Co., Inc., 39 B.R. at 746.  Requiring a third party to
conduct a search for documents outside of the relevant UCC records in order to ascertain the
scope of the collateral description would defeat the basic notice function of Article 9 and relegate
an interested third party to an open-ended search for information.  See In re Quality Seafoods,
104 B.R. at 561 ("Th[e] purpose [of the UCC filing requirements] is frustrated if searchers are
required to pore through the records in order to piece documents together."); cf. In re Softalk
Pub. Co., Inc., 856 F.2d at 1330-31 (stating that mere inquiry notice is not sufficient, and that a
basic collateral description is required).

The Court concludes that the 2008 UCC-1s did not contain a sufficient collateral
description and therefore failed to perfect Defendants' security interest when they were filed.
The 2008 UCC-1s were insufficient to satisfy the requirements of the UCC because the nature of
the collateral was not described in any part of the filing, nor did the filed material point to any
other materials on file with the Department of State that identified the collateral.  Although a
searcher examining the publicly filed 2008 UCC-1s would have been able to ascertain that the
creditors held a security interest in "Pledged Property," the UCC-1s and their attached Security

---

19 L.P.R.A. § 2152(1) (2008).

Agreement did not include any definition or explanation of the term's scope or meaning. As

such, the collateral description was insufficient, as it did nothing to identify the collateral beyond

simply indicating that some collateral existed. Cf. In re H.L. Bennett Co., 588 F.2d at 392-95

(finding insufficient, under the prior version of the UCC, a collateral description that was less

specific than a listing of the types or categories of collateral).

b. *The Amendments*

The Court next considers Defendants' contention that the UCC-3 Amendments

that were filed in 2015 and 2016 were sufficient to either (i) cure the defective collateral

description in the 2008 UCC-1s or (ii) independently perfect Defendants' security interest,

thereby functioning as UCC-1 financing statements. See Miami Valley Prod. Credit Ass'n v.

Kimley, 42 Ohio App. 3d 128, 131, 536 N.E.2d 1182, 1186 (1987) (finding that two defective

financing statements, read together, sufficed to perfect a security interest as of the date of the

later filing); see also Maremont Mktg., Inc. v. Marshall (In re G.G. Moss Co., Inc.), No. 79-

01585, 1981 WL 137971 (Bankr. E.D. Va. July 20, 1981) (finding that an amendment to a

defective financing statement functioned as an independent financing statement because it

contained all of the necessary information). Plaintiff argues that the UCC-3 Amendments were

insufficient to cure the 2008 UCC-1s or to independently perfect Defendants' security interest

because they failed to include the debtor's official name, as changed from ERS to RSE in the

official English-language version of the Enabling Act in 2013.[12]

---

[12]     Defendants argue that Plaintiff is foreclosed from arguing that ERS's name was changed
in 2013 because it did not make that factual allegation in its Complaint. (Docket Entry
No. 120, the "Defendants' Opposition," at ¶ 28, n.4 (stating that if Plaintiff made the
allegation its Complaint, Defendants would have denied it, placing the issue of fact in
dispute).) Because the name change was effectuated by a statute of which the Court may
take judicial notice, such a factual allegation need not have been made in the Complaint.
See Getty Petroleum Mktg., Inc. v. Capital Terminal Co., 391 F.3d 312, 321 (1st Cir.
2004) (stating that federal courts may take judicial notice of state law).

Under the Revised UCC, which was in effect at the time the UCC-3 Amendments were filed and governs the effect of those filings, 19 L.P.R.A. § 2402, a valid financing statement must include the debtor's name. Revised UCC § 9-502(a)(1), 19 L.P.R.A. § 2322(a)(1). Although Article 9 does not speak specifically to the names of governmental debtors, it provides that, "if the debtor is a registered organization," a financing statement provides the debtor's name sufficiently "if the financing statement provides the name that is stated to be the registered organization's name on the public organic record most recently filed with or issued or enacted by the registered organization's jurisdiction of organization which purports to state, amend, or restate the registered organization's name." Revised UCC § 9-503(a)(1), 19 L.P.R.A. § 2323(a)(1). Revised UCC Article 9 specifically provides that a debtor's trade name is insufficient. Revised UCC § 9-503(c), 19 L.P.R.A. § 2323(c).

Under Article 9, minor errors and omissions will not render a financing statement ineffective unless they render the statement seriously misleading. Revised UCC § 9-506(a); 19 L.P.R.A. § 2326(a). Article 9 of the Revised UCC provides that an insufficient debtor's name is seriously misleading unless "a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement" that provides the incorrect debtor's name.[13] Revised UCC §§ 9-506(b), (c), 19 L.P.R.A. §§ 2326(b), (c).

---

[13] The "standard search logic" inquiry provides a clearer brightline than the "reasonably diligent searcher" test applied by courts in connection with the Former PR UCC. See In re Summit Staffing Polk Cty., Inc., 305 B.R. 347, 354 (Bankr. M.D. Fla. 2003) ("Many courts [applying pre-revision versions of Article 9] held that a reasonably diligent searcher would conduct multiple searches using trade names, common misspellings of the debtor's name, and other reasonable search queries . . . . Revised Article 9 requires more accuracy in filings, and places less burden on the searcher to seek out erroneous filings."); see also Wawel Sav. Bank v. Jersey Tractor Trailer Training, Inc. (In re Jersey Tractor Trailer Training Inc.), 580 F.3d 147, 158 (3d Cir. 2009) (noting that "revised U.C.C. § 9–506(c) narrows the responsibility of a reasonable searcher, providing that a misfiled financing statement will be considered seriously misleading unless 'a search of

The party contesting the enforceability of a financing statement bears the initial burden of establishing that the debtor's name is not shown correctly, but the burden of persuasion then shifts to the creditor to establish that the erroneous debtor's name is not seriously misleading.  See In re John's Bean Farm of Homestead, Inc., 378 B.R. 385, 390 n.13 (Bankr. S.D. Fla. 2007).  As noted above, ERS's Enabling Act was amended in 2013 to designate the Commonwealth's retirement system, in English, as RSE.[14]  Act No. 3-2013 § 1-101.  The filed UCC-3s used only an English entity name.  The Enabling Act change renders the ERS name insufficient as a designator for UCC filing purposes because it is not the official name of the retirement system according to the most recent Commonwealth legislation.[15]  Revised UCC § 9-503(a)(1), 19 L.P.R.A. § 2323(a)(1).

Defendants do not proffer any evidence that the continued use of the ERS name in the UCC system is not seriously misleading within the meaning of the UCC.  Revised UCC § 9-506(c), 19 L.P.R.A. § 2326(c).  Defendants have not offered evidence that a search of the UCC system using the RSE name would disclose the UCC-3 Amendments.[16]  Rather, Defendants

---

the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose [the misfiled] financing statement . . . .'").

[14]   At oral argument, Defendants observed that the revised Act No. 3-2013 uses both ERS and RSE, seemingly interchangeably, as the entity name throughout its operative sections.  Defendants have not articulated a clear legal theory as to why such inconsistent use should lead the Court to interpret the statute as continuing to designate Plaintiff's official English-language name as ERS.  To the extent Defendants seek to imply that the use of RSE is the product of a translation error, the Court is bound to rely on English translations of Spanish-language statutes.  See 48 U.S.C.A. § 864 (West 2017) ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language.").

[15]   The Court construes the ERS Enabling Act as the equivalent of the organizing document of a private corporation for purposes of Article 9 because, like a certificate of incorporation, the Enabling Act is the only definitive statement of the Commonwealth Government proclaiming the formal name of ERS as an entity.

[16]   In fact, the Official Committee of Retirees has proffered an uncontroverted certified report stating that a search of the UCC system for the RSE name produced no results.  (See Docket Entry No. 139, the "Retirees Committee Opposition," at 14 n.42 & Ex. 11.)

argue that Plaintiff is bound by several purported judicial admissions that its name is indeed ERS

and that it had not used any other variations of that name. (See Docket Entry No. 121, the

"DiPompeo Declaration," Ex. A; see Defs.' Opp'n ¶ 30; see also Docket Entry No. 150, the

"Defs.' Reply," ¶ 12.) However, even fully crediting this argument, it fails to establish (or to

create a genuine issue of material fact with respect to) the relevant questions under Article 9,

namely, whether the name that appears on the UCC-3 Amendments matches that reflected in the

"public organic record most recently filed with or issued or enacted by the registered

organization's jurisdiction or organization which purports to state, amend, or restate the

registered organization's name" or, in the alternative, that the name used in the UCC-3s is not

"seriously misleading" within the meaning of 19 L.P.R.A. §§ 2326(b) and (c).[17]

        To the extent Plaintiff continues to represent itself to the public and other parties

as ERS, "ERS" functions as a trade name, the use of which Article 9 expressly provides is

---

[17]    Furthermore, the Court finds that the statements cited by Defendants are not
determinative of the legal issue central to the perfection question. Although a party is
bound by prior admissions of fact, the question of ERS's official name is a legal matter of
statutory construction, and thus statements as to names actually used by ERS are not
probative in this regard. See Mariano v. Gharai, 999 F. Supp. 2d 167, 172 (D.D.C. 2013)
(quoting McNamara v. Picken, 950 F. Supp. 2d 125, 129 (D.D.C. 2013) ("[I]t is well
established that judicial admissions on questions of law have no legal effect.") (internal
quotation marks omitted). Additionally, Defendants have not identified a legal basis or
proffered facts to support the application of the doctrines of laches, waiver, or estoppel
(see Defs.' Mot. ¶ 75), and there is therefore no genuine dispute as to any material fact
precluding summary judgment on the issues addressed herein. Courts cannot fashion
equitable exceptions to UCC filing requirements, as doing so "would have the deleterious
effect of undermining the reliance which can be placed upon them." Uniroyal, 557 F.2d
at 23. Additionally, courts have recognized that equitable defenses based upon a debtor's
prepetition conduct are not cognizable as defenses against the Bankruptcy Code's
avoidance powers. See Hassett v. McColley (In re O.P.M. Leasing Servs., Inc.), 28 B.R.
740, 760-61 (Bankr. S.D.N.Y. 1983) ("A trustee acts as a representative of creditors, not
of the debtor, in exercising his avoiding powers under Code Sections 544 and 548."); see
also In re Sanborn, Inc., 181 B.R. 683, 692 n.15 (Bankr. D. Mass. 1995) ("[T]he
'unclean hands' of a pre-petition debtor are not imputed to a debtor-in-
possession or trustee."); Forman v. Salzano (In re Norvergence, Inc.), 405 B.R. 709, 742
(Bankr. D.N.J. 2009) ("Courts have found the In Pari Delicto defense to be inapplicable
when a trustee brings an action under §§ 544(a), 544(b) or 548, but applicable to § 541
based actions.").

insufficient to satisfy the requirement to file under the debtor's official name.  Revised UCC §§

9-503(b)(1), (c), 19 L.P.R.A. §§ 2323(b)(1), (c).

The Court concludes that the 2008 UCC-1s were inadequate to perfect

Defendants' security interest when filed and that the UCC-3 Amendments failed to perfect, either

independently or in conjunction with the original financing statements, Defendants' security

interest when they were filed in 2015 and 2016 because they failed to reference the debtor's

official name.  Accordingly, Defendants do not possess a perfected security interest in any of the

Pledged Property.[18]

## II.    Section 544 of the Bankruptcy Code

Plaintiff further argues that Defendants' unperfected security interest is invalid

and should be declared to be unenforceable because Section 544 of title 11 of the United States

Code (the "Bankruptcy Code") allows the Oversight Board, in its capacity as debtor

representative in ERS's PROMESA Title III debt adjustment case, to invalidate the

Bondholders' unperfected interest.  (Docket Entry No. 115, the "Plaintiff's Opposition," at 17-

18.)  As discussed infra, Defendants argue that (i) the Oversight Board is unable to invoke

Section 544 due to certain limitations imposed by applicable non-bankruptcy law and (ii) in any

event, the Court should apply the principle of constitutional avoidance and construe Section

544(a) as inapplicable to liens granted prior to the enactment of PROMESA.  The Court will first

address the availability of Section 544 in light of applicable non-bankruptcy law and will then

turn to the constitutional avoidance issue presented by Defendants.

---

[18]    Revised UCC Section 9-507(c)(1) does not alter this result.  It provides that a financing
statement that becomes insufficient due to a subsequent change in the debtor's name is
nonetheless "effective to perfect a security interest in collateral acquired by the debtor
before, or within four (4) months after, the filed financing statement becomes seriously
misleading . . ."  19 L.P.R.A. § 2327(c)(1).  Here, the 2008 UCC-1s were not sufficient to
perfect Defendants' security interest in the first place, and Section 9-507(c)(1) therefore
does not apply.

a. *Applicable Puerto Rico Non-Bankruptcy Law*

Section 544(a) of the Bankruptcy Code, which is incorporated by Section 301(a) of PROMESA, vests bankruptcy trustees and debtors in possession with the power to avoid an unperfected, but otherwise valid, security interest when another creditor could possess an interest that is superior to that of the unperfected creditor, whether or not such a superior creditor (commonly referred to as a "hypothetical lien creditor") actually exists. Section 544(a) of the Bankruptcy Code reads as follows:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by —
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544(a) (West 2016). Section 301(c)(7) of PROMESA provides that the term "trustee," as used in Section 544 of the Bankruptcy Code, means the Oversight Board, which represents the debtor in the Title III proceeding. 48 U.S.C.A. § 2161(c)(7) (West 2017). The rights of the trustee, or of the Oversight Board in this case, are dependent on applicable non-bankruptcy law. See, e.g., Rios v. Banco Popular De P.R. (In re Rios), 420 B.R. 57, 63 (Bankr. D.P.R. 2009) (stating that "[t]he rights of a trustee under 11 U.S.C. § 544 are determined by state

law."). Thus, "Section 544(a) does not give the Trustee any greater rights than he, or any person,

would have as a bona fide purchaser or judicial lien creditor under applicable state law." Perrino

v. BAC Home Loans Servicing, LP (In re Trask), 462 B.R. 268, 273 (B.A.P. 1st Cir. 2011).

Therefore, in order to determine whether the Oversight Board is able to invoke Section 544 to

invalidate Defendants' unperfected security interest, the Court must analyze whether, under

Puerto Rico law, a hypothetical creditor could have obtained a lien on the property of ERS as of

the commencement of the case.[19]

        In the First Circuit, the burden of establishing the rights of a hypothetical lien

creditor under applicable non-bankruptcy law is placed on the trustee. See, e.g., Ford v. Fed.

Home Loan Mortg. Corp. (In re Bishop), Adv. No. 09-1034-MWV, 2009 WL 2231197, at *2

(Bankr. D.N.H. July 24, 2009) (stating that, "[t]o assert a cause of action pursuant to § 544(a)(1)

or § 544(a)(3), the [Trustee] must provide adequate grounds for an inference that a transfer of

property of the debtor is avoidable by a hypothetical lien creditor or bona fide purchaser.").

Here, Plaintiff points to Puerto Rico's Rules of Civil Procedure, which generally empower courts

to order the attachment of a lien to secure a judgment creditor's claim. See 32 L.P.R.A. App. III,

§ 56.1. While Defendants do not dispute the existence of the general rule, they argue that Act

66-2012, 3 L.P.R.A. § 9101 et seq. ("Act 66"), which was enacted in 2012 as Puerto Rico's fiscal

crisis was looming, eliminated the ability of a creditor to obtain a judicial lien against the

Commonwealth or its agencies. Defendants contend that Act 66, which generally requires that

any judgment against the covered entities be paid under a payment plan rather than in a lump

sum, provides the sole remedy for a judgment creditor seeking to satisfy or secure its judgment.

See 3 L.P.R.A. § 9141.

---

[19]    On March 12, 2018, the Court directed the parties to file supplemental briefs addressing
this issue. (See Docket Entry No. 195, *Order Directing Supplemental Submissions*.)

For the reasons that follow, the Court concludes that the Oversight Board has met

its burden of establishing that, under Puerto Rico law, a judgment creditor could have obtained a

lien against ERS's assets as of the commencement of its Title III case. Puerto Rico Rule of Civil

Procedure 56.1 provides that "in every action, before or after entering judgment, and upon

motion of claimant, the court may issue any provisional order it deems necessary to secure

satisfaction of the judgment." 32 L.P.R.A. Ap. III. The provisional measures that may be

ordered by the court include "attachment, garnishment, the prohibition to alienate, claim and

delivery of personal property, receivership, [and] an order to do or to desist from doing any

specific act . . . ." Id.

The Enabling Act constitutes ERS as a trust that is an agency of the Government

of Puerto Rico, "independent and separate" from others. 3 L.P.R.A. § 775. Jurisprudence from

Puerto Rico establishes that the assets of a Puerto Rico governmental entity may be subject to

attachment and seizure where the legislature has conferred sufficient operational powers upon

the governmental entity to render it subject to "judicial process as any private enterprise would

be under like circumstances."[20] Arraiza v. Reyes; León, Interventor, 70 D.P.R. 583, 587 (1949);

see, e.g., Redondo Constr. Corp. v. P.R. Highway & Transp. Auth., No. 09-civ-2299, ECF No.

45 (D.P.R. Feb. 13, 2012) (ordering issuance of writs of execution against the assets of a

government instrumentality). The Puerto Rico Supreme Court has identified various powers and

---

[20] A court may bar direct attachment of funds of such a public entity only where the
attachment would interfere with the entity's "performance of its [governmental]
functions." Librotex, Inc. v. Autoridad de Acueductos y Alcantarillados de P.R., 138
P.R. Dec. 938, 942-43 (P.R. 1995) (stating that "the Legislature granted the [Puerto Rico
Aqueduct and Sewer] Authority sufficient operational powers to consider it 'as subject to
legal proceedings as any private entity would be in similar circumstances, so long as it
does not interfere with the performance of its [governmental] functions'"). In Librotex,
the majority found that the significant judgment sought could impact government
operations in light of then-current fiscal crises and invalidated the seizure of an operating
account but provided alternative security for the judgment creditor in the form of a
mandatory budget provision. Id. at 942. Librotex thus confirms that a judgment creditor
can obtain security under Puerto Rico law against a government entity.

attributes that should be considered in determining whether a governmental entity was intended to be amenable to judicial process in a manner similar to a private business. See generally Arraiza, 70 D.P.R. at 586-87. Upon consideration of the factors enumerated in Arraiza, the Court concludes that ERS is an entity that is sufficiently structured like a private business that its assets may be subject to provisional remedies, including liens.[21] Accordingly, a court would have been empowered to issue any provisional order it deemed necessary and appropriate to secure satisfaction of the judgment pursuant to Puerto Rico Rule of Civil Procedure 56.1. Specifically, and as relevant here, a court could have ordered the attachment of a lien against property of ERS as of the commencement of this Title III case.

Act 66 would not have limited the ability of a court to order the attachment of a lien against the assets of ERS. Section 9141 of Act 66 is titled "Applicability and payment plans." 3 L.P.R.A. § 9141. As relevant here, Section 9141 provides the following:

> *In view of the negative impact* on the fiscal and operational stability of the Commonwealth of Puerto Rico and the municipal governments *that the payment of a lump sum would entail, the provisions of this subchapter shall apply to all final and binding judgments*, except for those related to eminent domains that, on the date of approval of this Act, are pending payment and those issued during the effective term of this Act, *whereby the agencies, instrumentalities, public corporations, municipalities, or the Commonwealth of Puerto Rico are compelled to make a disbursement of funds* chargeable to the General Fund, the fund of

---

[21] The Enabling Act for ERS provides that the entity may (i) "seek a loan from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America or through the direct placement of debts, securing said debt with the assets of [ERS]" and (ii) may invest in a multitude of stocks, fixed yield securities, and real property, both of which powers contemplate the accrual of pecuniary benefits in a manner similar to a private enterprise. (P. 56(b) ¶¶ 2- 3); 3 L.P.R.A. § 779(b). Moreover, the Enabling Act established a Board of Trustees for ERS, consisting of members of differing mandated backgrounds, similar to the governing structure of a private entity. See 3 L.P.R.A. § 775. ERS's board can also enter into contracts and "sue and be sued under" the name of ERS. (Possinger Decl., Ex. 1, §§ 15-16.) According, ERS is inherently capable of functioning for financial and litigation purposes as a private business or enterprise, exhibiting indicia similar to the Puerto Rico Aqueduct and Sewer Authority, against which an order of attachment was upheld in Arraiza.

the public corporation in question, or chargeable to the municipal
budget, as the case may be.

<u>Id.</u> (emphasis added). Section 9142 of Act 66 provides that "the garnishment of funds to enforce
a judgment issued against the Commonwealth is [] prohibited." <u>Id.</u> § 9142. By its plain terms,
Act 66 addresses seizures and compulsory disbursements of funds rather than security interests
in property. A court order granting a lien against the assets of a governmental entity would not
be inconsistent with the restrictions imposed by Act 66, because such an order would not by
itself compel the sequestration or disbursement of any funds. Accordingly, Act 66 does not
restrict a judgment creditor's ability to obtain a judicial lien to secure a judgment against ERS,
although it would preclude the creditor from collecting cash payments other than through a
payment plan consistent with Act 66's restrictions.

Accordingly, the Oversight Board has met its burden of establishing that, under
Puerto Rico law, a judgment creditor could have obtained a lien against ERS's assets as of the
commencement of its Title III case. The Oversight Board would thus ordinarily be entitled to
invoke Section 544 to invalidate Defendants' unperfected security interest. However, the Court
must consider whether the principle of constitutional avoidance impedes the use of Section
544(a) in this case.

*b. Constitutional Avoidance*

Defendants argue that the Court should not construe Section 544(a) to invalidate
liens granted prior to the enactment of PROMESA, in order to avoid raising federal
constitutional concerns. (Defs.' Mot. ¶ 35.) Defendants take the position that applying Section
544(a) retroactively to invalidate their security interest, which they assert is a property interest
protected by the Takings Clause of the Fifth Amendment, without just compensation, would
violate the ERS Bondholders' constitutional rights. (<u>Id.</u>)

Under the canon of constitutional avoidance, a court, in deciding "which of two
plausible statutory constructions to adopt . . . must consider the necessary consequences of its
choice. If one [construction] would raise a multitude of constitutional problems, [then] the other
[construction] should prevail . . ." Clark v. Martinez, 543 U.S. 371, 380-81 (2005). However,
the canon of constitutional avoidance is not a method of adjudicating constitutional questions.
(Id. at 381.) Rather, it "is a tool for choosing between competing plausible interpretations of
statutory text, resting on the reasonable presumption that Congress did not intend the alternative
which raises serious constitutional doubts." (Id.) "The canon is thus a means of giving effect to
congressional intent, not of subverting it." (Id.)

In this case, Defendants ask the Court to avoid a construction of Section 544(a)
that would allow the Oversight Board to invalidate unperfected liens. However, the Court cannot
invoke the canon of constitutional avoidance to subvert the clear intent of Congress. Congress
enacted PROMESA in 2016 in response to the dire fiscal emergency that was then, and still is,
afflicting the Commonwealth and many of its instrumentalities. Through Section 301 of
PROMESA, Congress expressly incorporated Section 544 of the Bankruptcy Code into
PROMESA and, therefore, granted the Oversight Board a position that is superior to that of the
holders of then-existing unperfected security interests.

Defendants' reliance on United States v. Security Industrial Bank in support of
constitutional avoidance is misplaced here, as the context in which the interpretive issue arose in
that case is quite different from that now before this Court. (See Defs.' Reply ¶ 32 (citing to 459
U.S. 70 (1982).) In that case, individual debtors attempted to utilize a provision of the newly-
enacted Bankruptcy Reform Act of 1978, 11 U.S.C. § 522(f)(2), to claim exemption of certain
personal property that was subject to liens granted prior to the passage of the statute. 459 U.S. at
72-73. The Supreme Court held, without deciding whether retroactive application of the
provision would constitute an unconstitutional uncompensated taking, that the statutory

Case 17-03283-LTS   Doc#:3927   Filed:08/29/18   Entered:08/29/18 19:26:49   Desc: Main
Document   Page 41 of 46

provision could not be interpreted to apply retroactively due to the statute's ambiguity with respect to retroactive application and the Supreme Court's substantial doubt as to whether such application would comport with the Fifth Amendment.  Id. at 81 (citing Holt v. Henley, 232 U.S. 637 (1914) and Auffm'ordt v. Rasin, 102 U.S. 620 (1881)).  Recognizing that statutes are ordinarily construed as prospective only and finding Congressional intent ambiguous based on circumstances including the pre-enactment elimination of an express retroactivity provision, the Court decided, "in the absence of a clear expression of Congress's intent," not to apply the exemption provision to pre-enactment liens.  Id. at 82 (citation and internal quotation marks omitted).

Unlike the context of Security Industrial Bank, where Congress had recently updated the law governing a longstanding bankruptcy system of general applicability that would be invoked not only soon after its enactment but by untold numbers of debtors in future circumstances yet to unfold, PROMESA was enacted specifically to enable Puerto Rico to address its current debt crisis.  Construction of the exemption provision of the 1978 Bankruptcy Code as prospective was not inconsistent with the broad purpose of that legislation and did not, it appears, disable its operative provisions in a manner material to its viability as a tool for effective debt relief.  Such construction of Section 544 of the Bankruptcy Code in the PROMESA context would, by contrast, eviscerate (directly and by implication) the availability to Puerto Rico of lien avoidance mechanisms that are core debt relief tools.

PROMESA—as the name of the statute highlights—was specifically designed for and tailored to address, first and foremost, Puerto Rico and its current financial crisis.  At the time when PROMESA was enacted, Puerto Rico was burdened with billions of dollars of outstanding debt, a substantial proportion of which was purportedly secured, and had lost the ability to access the credit markets for additional financing.  With these facts in hand, Congress paved a path for Puerto Rico's financial recovery and created an Oversight Board to oversee that

process.  The Oversight Board was charged with the responsibility of developing "a method [for

Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  See 48 U.S.C.A.

§ 2121(a) (West 2017).  Among its powers, Congress gave the Oversight Board the ability to

investigate the "disclosure and selling practices in connection with the purchase of bonds

[previously] issued by" Puerto Rico, id. § 2124(o), and to utilize avoidance tools under the

Bankruptcy Code.

> In this case, a decision to interpret Section 544 of the Bankruptcy Code—and, by

implication, the additional avoidance powers that Congress specifically incorporated through

Section 301 of PROMESA—prospectively only would render such tools unavailable for use in

Puerto Rico's Title III debt readjustment process.  Indeed, the incorporation of the arsenal of

avoidance powers into PROMESA would have been meaningless, in addressing Puerto Rico's

financial situation, if they could only be invoked in connection with debt incurred, and security

interests granted, following the enactment of the statute.  This is particularly evident in light of

the fact that Puerto Rico did not have access to the credit markets at the time that PROMESA

was enacted.  The Court finds that Congress's enactment of PROMESA for Puerto Rico,

inclusive of a carefully curated list of incorporated Bankruptcy Code avoidance powers, was a

strong expression of intent that those powers be available for use by the Oversight Board in

pursuit of its mission to effect the restructuring of Puerto Rico's debt, and to establish a method

for Puerto Rico to achieve fiscal responsibility and access to the capital markets.

> Accordingly, the Court holds that Section 544(a) applies to invalidate the

Bondholders' unperfected liens.  Plaintiff is entitled as a matter of law to declarations that the

ERS Bondholders' liens on Pledged Property, including any such asserted interests in employee

loan payments, are unperfected, invalid, and unenforceable.  Given that all of the Bondholders'

claims of secured status are premised on the Resolution, Security Agreement, and UCC filings

discussed above, it is unnecessary for the Court to parse the precise scope of the now-invalidated

security interests. The Court, accordingly, grants summary judgment in favor of Plaintiff, and

denies Defendants' cross-motion for summary judgment, with respect to Counts One and Two of

the Complaint. The Court declares that any security interest held by Defendants in the Pledged

Property, including alleged security interests in the Employee Loans, the Employee Loan

Payments, and monies deposited pursuant to the Stipulation, is invalidated and unenforceable

against ERS pursuant to Section 544(a) of the Bankruptcy Code.[22]

### III. Section 552 of the Bankruptcy Code

Plaintiff seeks a declaration that Section 552(a) of the Bankruptcy Code prevents

any security interest from attaching to revenues received by ERS during the post-petition period.

(Compl. ¶ 143.) Defendants contend that Section 552(a) is inapplicable in this case for various

reasons. (See generally Defs.' Mot. at 18-25.) Having concluded that the security interest

claimed by Defendants is invalid and unenforceable against ERS by virtue of Section 544(a), it is

not necessary to consider separately the post-petition effect of any such security interest. Section

552 of the Bankruptcy Code is subject to the application of Section 544 because it requires the

existence of a pre-petition lien. Furthermore, Section 552(b) is not operative to preserve a lien

that has been avoided through the application of Section 544(a). In re Quaal, 40 B.R. 619, 620

(Bankr. D. Minn. 1984) (stating that "[a]n interest claimed upon the authority of section 552(b)

cannot prevail if such interest would be subject to [Section 544(a)'s] avoidance power."); see

also ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 552.02[b] (16th ed.

2018) (stating that "[i]f the trustee uses the avoiding powers under subsections 544(a) or (b) to

successfully avoid the secured party's lien, the lien will not extend to proceeds under section

552(b)."). Section 928(a) also operates as an exception to Section 552(a), and thus is similarly

---

[22] The Court does not address any consequent Takings Clause issues, as they are unripe in
the absence of a plan of adjustment specifying the proposed treatment of Defendants'
claims. See Ambac Assurance Corp. v. Commonwealth of Puerto Rico (In re Fin.
Oversight & Mgmt. Bd. for P.R.), 297 F. Supp. 3d 269, 281-82 (D.P.R. 2018).

inapplicable when a lien has been avoided pursuant to Section 544(a). See 11 U.S.C.A. § 928(a)

(West 2016) (stating that a pledge of special revenue will persist "[n]otwithstanding section

552(a) of this title").

   In this case, Defendants' claimed prepetition lien has been invalidated and is not

enforceable against ERS, there is no ripe controversy with respect to the operation of Section

552, and both parties' motions for summary judgment as to Count Three of the Complaint are

denied.[23]

  IV. <u>Violation of the January Stipulation</u>

   The January Stipulation provides, in relevant part, that all "Employers'

Contributions (as defined in the ERS Bond Resolutions) received by the ERS during the

pendency of the stay imposed pursuant to § 405 of [PROMESA] shall be transferred by the ERS

to [a segregated account] for the benefit of the holders of the ERS Bonds." (Compl. ¶ 145.) In

Count Four of its Complaint, Plaintiff seeks a declaration that it is not in breach of the January

Stipulation, notwithstanding the fact that it did not deposit employer contributions from May

2017 into a segregated account, because the obligation to transfer such funds to the segregated

account ended on May 1, 2017, pursuant to the terms of the January Stipulation. (See Compl.

¶¶ 144-155; see also Pls.' Mot. at 34-35 (seeking summary judgment as to judicial declaration

that ERS complied with its obligations under the January Stipulation).) Defendants have

conceded that there is no issue of non-compliance as to May 2017 contributions, but argue that

Plaintiff failed to comply with certain obligations under the Resolution (see Defs.' Opp'n ¶ 68),

citing the deposition of Cecile Tirado Soto, Comptroller of ERS, for the proposition that ERS

---

[23] To the extent Defendants request summary judgment and a declaration that any lien they
possess on post-petition revenue remains operative, the Court denies this request, because
the lien is invalidated by Section 544(a).

failed to place several months of employer contributions into the segregated account as required by the January Stipulation (see Defs.' Opp'n ¶ 69).

Defendants admitted in their Answer to the Complaint that "ERS duly complied with its obligations under the January Stipulation by placing Employers' Contributions received through April 30, 2017 into the Segregated Account." (See Answer and Counterclaims ¶ 150 (admitting the allegations in Paragraph 150 of the Complaint "upon information and belief").) Furthermore, Defendants expressly conceded that employer contributions received by ERS after April 30, 2017, "did not have to be transferred into the pre-petition segregated account." (Defs.' Opp'n ¶ 68; see also Answer and Counterclaims ¶¶ 147, 151 (admitting that "ERS was obligated to place Employers' Contributions into the Segregated Account only for the duration of the Section 405 Stay" and that such stay expired as of May 1, 2017). ) The facts underlying the relief sought by Plaintiff in Count Four are therefore undisputed, and Defendants have not raised legal arguments as to why the relief sought therein should not be granted.

Defendants' argument that Plaintiff violated the Resolution is not relevant to the relief sought by Plaintiff in Count Four of the Complaint—which only concerns performance of obligations under the January Stipulation—nor to Plaintiff's request for summary judgment with respect to Count Four. Additionally, any claim by Defendants regarding other obligations under the January Stipulation or the Resolution is outside of the stipulated scope of this adversary proceeding and is therefore dismissed without prejudice.[24]

---

[24]    (See Docket Entry No. 170 in Case No. 17-3566-LTS, at ¶ A (limiting the scope of the adversary proceeding to "the validity, priority, extent and enforceability of the prepetition and post-petition liens and security interests asserted by the Bondholders" and "ERS's rights with respect to employer contributions received during the month of May 2017," and limiting potential counterclaims to "(a) matters pertinent to the main claims, and (b) the Creditors' rights and remedies with respect to employer contributions received by the ERS during the month of May 2017").)

Plaintiff's motion for summary judgment is granted with respect to Count Four of the Complaint, and Defendants' Motion is denied as to Count Four.

C<small>ONCLUSION</small>

For the foregoing reasons, summary judgment is granted in favor of Plaintiff on Counts One, Two, and Four of the Complaint, and denied with respect to Count Three of the Complaint.  Defendants' motion for summary judgment is correspondingly denied with respect to all four Counts and as to each Counterclaim.  The Court will issue an order to show cause as to why, in light of the foregoing analysis and decision, Defendants' Counterclaims One through Four ought not to be dismissed for failure to state a claim upon which relief may be granted, and why Count Three of the Complaint, and Defendants' remaining counterclaims, ought not to be dismissed as moot or otherwise for lack of subject matter jurisdiction.  This Memorandum Opinion and Order resolves Docket Entry Nos. 91, 94, and 175.

          SO ORDERED.

Dated: New York, New York
          August 17, 2018

                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge