# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 3797** |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PUERTO RICO<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Respondents. | |

## OBJECTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 362, FOR ENTRY OF ORDER ENFORCING AUTOMATIC STAY AND COURT'S JUNE 29, 2017 ORDER CONFIRMING APPLICATION OF AUTOMATIC STAY WITH RESPECT TO GDB RESTRUCTURING

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ..........................................................................................................................3

I.    The Title III Cases. ..........................................................................................................3

II.   The GDB Restructuring. ...................................................................................................4

ARGUMENT ...............................................................................................................................5

I.    The UCC Does Not Have Any Rights To Challenge the Debtors' Governmental
      and Political Judgments About the Use of Their Property. ................................................5

II.   The Facts Show That The Debtors Have No Net Positive Claim Against GDB To
      Protect. ............................................................................................................................7

III.  PROMESA § 304(i) Allows The Debtors To Consent To the GDB Restructuring. ...........8

IV.   The UCC Lacks Authority to Object to the GDB Restructuring. .....................................10

V.    The UCC Lacks Standing to Prosecute Supposed Violations of the Automatic
      Stay. ...............................................................................................................................12

VI.   In Any Event, The Automatic Stay Does Not Apply To The Title VI Case
      Pursuant to Bankruptcy Code Section 362(b)(4). ...........................................................15

VII.  The Motion Is Procedurally Improper Under PROMESA § 601(n). ...............................16

CONCLUSION ..........................................................................................................................18

Exhibit A ..............................................................................................................................A-1

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Armstrong v. Goyco*,
    29 F.2d 900 (1st Cir. 1928)...................................................................16

*Ass'n of Retired Employees v. City of Stockton (In re City of Stockton)*,
    478 B.R. 8 (Bankr. E.D. Cal. 2012).........................................................6

*Faitoute Iron & Steel Co. v. City of Asbury Park, N.J.*,
    316 U.S. 502 (1942) ...............................................................................15

*FDIC v. Shearson-American Express*,
    996 F.2d 493 (1st Cir. 1993)...................................................................14

*Home Building & Loan Ass'n. v. Blaisdell*,
    290 U.S. 398 (1934) ...............................................................................15

*In re Commerce Oil Co.*,
    847 F.2d 291 (6th Cir. 1988)...................................................................15

*In re Jefferson Cnty.*,
    491 B.R. 277 (Bankr. N.D. Ala. 2013).....................................................10

*In re Mid-City Parking, Inc.*,
    332 B.R. 798 (Bankr. N.D. Ill. 2005) ..................................................9, 12

*In re Pecan Groves of Arizona*,
    951 F.2d 242 (9th Cir. 1991)...................................................................14

*In re Walt Robbins, Inc.*,
    129 B.R. 452 (Bankr. E.D. Va. 1991) .......................................................6

*Pinpoint IT Servs., LLC v. Atlas IT Exp., LLC (In re Atlas IT Exp., LLC)*,
    491 B.R. 192 (1st Cir. B.A.P. 2013)........................................................12

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*,
    349 F.3d 816 (5th Cir. 2003) ..................................................................12

*Ruiz v. Economics Lab., Inc.*,
    274 F. Supp. 14 (D.P.R. 1967) ...............................................................16

*Sancho v. Bacardi Corp. of Am.*,
    109 F.2d 57 (1st Cir. 1940)......................................................................16

ii

*Schwartz v. Aquatic Dev. Grp., Inc.*,
   352 F.3d 671 (2d Cir. 2003) (Straub, J., concurring) ........................................ 11

*Soares v. Brockton Credit Union (In re Soares)*,
   107 F.3d 969 (1st Cir. 1997) .............................................................................. 14

*Vision Metals, Inc. v. SMS Demag, Inc.*,
   311 B.R. 692 (Bankr. D. Del. 2004) .................................................................. 11

**STATUTES**

11 U.S.C. § 105(a) ...................................................................................................... 11

11 U.S.C. §§ 105(a), 326(a), 365, 922 ......................................................................... 4

11 U.S.C. § 323, § 363(c), § 365, § 704, § 1106, § 1108 ............................................ 9

11 U.S.C. § 362 ................................................................................................ 8, 9, 11, 12, 15

11 U.S.C. § 362(a) ................................................................................................... 9, 13

11 U.S.C. § 362(a)(1) ................................................................................................. 13

11 U.S.C. § 362(a)(3) ................................................................................................. 14

11 U.S.C. § 362(a)(7) ................................................................................................. 13

11 U.S.C. § 362(b)(4) ............................................................................................. 2, 15

11 U.S.C. § 362(d) ...................................................................................................... 14

11 U.S.C. § 363 .................................................................................................... passim

11 U.S.C. § 506(a)(1) ................................................................................................. 13

11 U.S.C. § 926 ........................................................................................................... 14

48 U.S.C. §§ 2101-2241 .............................................................................................. 1

PROMESA § 101(b) ..................................................................................................... 3

PROMESA § 104(i)(1) ............................................................................................ 4, 5

PROMESA §§ 104(j), 206 ........................................................................................... 3

PROMESA § 201(b)(1)(M) .......................................................................................... 9

PROMESA § 301(a) ......................................................................................... 4, 6, 13, 14

PROMESA § 303 ..................................................................................................6, 7

PROMESA § 304 .....................................................................................................3

PROMESA § 304(a) .................................................................................................3

PROMESA § 304(i) ...........................................................................................passim

PROMESA § 305 ...................................................................................................14

PROMESA § 315 .....................................................................................................3

PROMESA § 315(b) ............................................................................................1, 12

PROMESA § 405(m) .............................................................................................16

PROMESA § 601 .....................................................................................11, 17, 18

PROMESA § 601(g)(1)(c) ....................................................................................13

PROMESA § 601(g)(2)(A) .....................................................................................4

PROMESA § 601(m) ..............................................................................................11

PROMESA § 601(m)(1)(D) ...........................................................................5, 9, 17

PROMESA § 601(n)...........................................................................2, 16, 17, 18

**OTHER AUTHORITIES**

P.R. Const. art. II, § 19 ......................................................................................16

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Title III Debtors" or "Debtors"), in these Title III cases pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection to the *Urgent Motion of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, For Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of Automatic Stay With Respect to GDB Restructuring* [ECF No. 3797] (the "Motion"),[3] filed by the Official Committee of Unsecured Creditors (the "UCC").  In support of its objection, the Oversight Board states as follows:

## **PRELIMINARY STATEMENT**

1.      The UCC's Motion attempting to enforce the automatic stay protecting assets of Title III debtors fails for many reasons.  But, three independently sufficient reasons jump off the page.

2.      First, at its core, the Motion articulates the UCC's disagreement with the Title III Debtors as to how the Debtors want to resolve their claims against the Government Development Bank of Puerto Rico ("GDB").  Although this disagreement is moot because (as shown below)

---

[2]   PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]   On August 29, 2018, the Financial Guaranty Insurance Company filed its response in support of the Motion [ECF No. 3822].

1

the Debtors do not have net positive claims against GDB, Bankruptcy Code § 363 does not apply to Title III cases, thereby depriving the UCC of any rights to challenge the Debtors' governmental and political judgments about the use of their property.  The UCC ignores that the automatic stay does not apply to consensual transactions between Title III Debtors and GDB, including the ones at issue here.  Second, the apparent reason the UCC's Motion speaks in very abstract and theoretical terms is the facts show the Debtors have no net positive claims against GDB to protect.  Third, PROMESA § 304(i) allows the Title III Debtors to consent to the very acts in the GDB restructuring the UCC complains of, notwithstanding the automatic stay, because they are integrated into the GDB RSA constituting the Title VI Qualifying Modification.

3.      Furthermore, the Motion is a clear attempt by the UCC to utilize the automatic stay in these Title III Cases as a sword to inject itself into the Title VI Case, and should be denied for the following additional reasons.  The UCC has no authority to challenge the GDB restructuring as it does not represent GDB creditors, and it does not have standing to enforce the automatic stay arising out of the Title III cases.[4]  In any event, the automatic stay in the Title III cases does not apply to the Title VI case due to Bankruptcy Code § 362(b)(4).  The UCC's Motion is moreover predicated on a misreading of PROMESA and is an improper attempt to challenge Qualifying Modifications under PROMESA § 601(n).  Allowing the UCC to do so through its Motion in the Title III Cases would impose an improper standard of review on the Title VI process, in contravention of the exclusive vehicle Congress provided.  As such, the UCC's Motion should be denied in its entirety.

---

[4]    The UCC's standing (or more appropriately, its lack thereof) to object to the GDB restructuring as a 'creditor' of any of the Title III Debtors will be addressed in a separate pleading in the GDB Title VI case.

## BACKGROUND

I.      **The Title III Cases.**

4.      On June 30, 2016, the Oversight Board was established under PROMESA § 101(b).  Pursuant to PROMESA § 315, "[t]he Oversight Board in a case under this title is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court."

5.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA §§ 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA § 304(a), commencing a case under title III thereof (the "Commonwealth's Title III Case").

6.      On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA §§ 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA § 304(a), commencing a case under title III thereof ("COFINA's Title III Case").

7.      On May 21, 2017, the Oversight Board issued restructuring certifications pursuant to PROMESA §§ 104(j) and 206 and filed a voluntary petition for relief for each of ERS and HTA pursuant to PROMESA § 304(a), commencing a cases under title III thereof (the "Additional Title III Cases").

8.      On June 29, 2017, the Oversight Board issued a restructuring certification for PREPA pursuant to PROMESA §§ 104(j) and 206, and on July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA pursuant to § 304(a) of PROMESA, commencing a case under title III thereof (together with the Commonwealth's Title III case, COFINA's Title III Case, and the Additional Title III Cases, the "Title III Cases").

3

9.      On June 29, 2017, the Court entered an order pursuant to PROMESA § 301(a)

and Bankruptcy Code §§ 105(a), 326(a), 365, and 922 granting Debtors' motion and confirming

application of the automatic stay in the Title III context (the "Stay Order").  [ECF No. 543 in

Case No. 17-bk-3283].  Among other things, the Court ordered:  "The Debtors and the Oversight

Board, as the Debtors' representative, are authorized to take all actions, and to execute all

documents, necessary or appropriate, to effectuate the relief granted in this Order in accordance

with the Motion."  *Id.* ¶ 13.

## II.      The GDB Restructuring.

10.      On April 20, 2018, pursuant to PROMESA § 201(c)(3), the Oversight Board

certified the *Government Development Bank for Puerto Rico New Fiscal Plan* (the "GDB Fiscal

Plan"),[5] which contemplates the commencement of a Title VI case for GDB. GDB Fiscal Plan at

9-12.

11.      Concurrently with the commencement of the Title III Cases, on May 15, 2017,

GDB, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and certain

supporting creditors entered into a Restructuring Support Agreement (the "RSA") concerning

GDB's financial obligations to its creditors.

12.      On July 12, 2017, the Oversight Board certified the RSA as a "Voluntary

Agreement" under PROMESA § 104(i)(1) and as a Qualifying Modification pursuant to

PROMESA § 601(g)(2)(A).

13.      On August 24, 2017, the Governor of Puerto Rico signed Act No. 109-2017, the

*Government Development Bank for Puerto Rico Debt Restructuring Act* (the "GDB

Restructuring Act"), into law.

---

[5] *Available at* https://oversightboard.pr.gov/documents/.

14.     On May 8, 2018, the Oversight Board recertified the RSA, as amended on October 20, 2017, December 20, 2017, March 20, 2018, and April 6, 2018, pursuant to PROMESA § 104(i)(1).

15.     On August 10, 2018, GDB and AAFAF commenced a case under PROMESA Title VI by filing an application with the United States District Court for the District of Puerto Rico (the "Title VI Court") to approve the Qualifying Modification pursuant to PROMESA § 601(m)(1)(D) [ECF No. 1 in Case No. 18-cv-1561] (the "Title VI Case").

16.     On August 22, 2018, the UCC filed in the Title VI Case a *Notice of Intention to Object Regarding Purported Qualifying Modification for Government Development Bank* [ECF No. 59 in Case No. 18-cv-1561] ("UCC's Notice of Intent to Object to Qualifying Modification").  Pursuant to the Title VI Court's order, GDB and AAFAF must file any objections related to the standing of a party to object to the Qualifying Modification on or before 5:00 p.m. AST on September 1, 2018.  [ECF No. 29 in Case No. 18-cv-1561].

17.     Concurrently with the filing of the UCC's Notice of Intent to Object to Qualifying Modification in the Title VI Case, the UCC filed its instant Motion in the Title III Cases [ECF No. 3797 in Case No. 17-bk-3283].

## **ARGUMENT**

**I.     The UCC Does Not Have Any Rights To Challenge the Debtors' Governmental and Political Judgments About the Use of Their Property.**

18.     At its core, the Motion articulates the UCC's disagreement with the Debtors as to how the Title III Debtors want to resolve their claims against the GDB.  The GDB Restructuring Act articulates the Commonwealth's governmental and political determinations to trade the Debtors' demand deposit claims against GDB for reductions in the amounts they owe GDB.  The

UCC might have a different economic point of view.  That difference, however, is a difference over policy.  It is not an automatic stay dispute.

19.     The UCC lacks any rights to challenge such policy determinations because, first, Bankruptcy Code § 363's restrictions on use, sale, or lease of property do not apply to Title III cases.  *See* PROMESA § 301(a) (excluding Bankruptcy Code § 363); *see also Ass'n of Retired Employees v. City of Stockton (In re City of Stockton)*, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012) (". . . Congress has been sedulous to assure that the bankruptcy power not be used in municipal insolvencies in a manner that oversteps delicate state-federal boundaries. . . . For example, the Bankruptcy Code's restrictions on use, sale, or lease of property do not apply in chapter 9."). Indeed, *In re Walt Robbins, Inc.*, 129 B.R. 452, 456 (Bankr. E.D. Va. 1991), shows that even in chapter 11 cases, consensual transfers do not raise automatic stay issues.  They raise issues under Bankruptcy Code § 363: "Jones did not address the question whether the debtor's consent to transfer the property was a violation of the automatic stay. Indeed, I find that question is simply not an automatic stay issue; rather, the appropriate inquiry of the transfer should proceed under § 363, which deals with the disposition of property of the estate." *Id.*

20.     Second, Congress specifically reserved to the Commonwealth the power to exercise political and governmental powers subject to the Oversight Board's authority. PROMESA § 303 provides:

> Subject to the limitations set forth in titles I and II of [PROMESA], this title does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality . . . .

21.     Enactment of the GDB Restructuring Act supporting the Qualifying Modification is consistent with PROMESA and did not violate the automatic stay as it was an act of the Puerto Rico Legislature consistent with the GDB fiscal plan certified by the Oversight Board.

22.     The UCC seeks an order declaring that (a) any limitations on claims that have been or may be asserted by the Title III Debtors against GDB or related third-parties are void, and (b) any transfer (or "shielding" of assets at GDB by transfer of such assets to a separate entity, the Recovery Authority) pursuant to the GDB Restructuring that could have been used, prior to the implementation of the GDB Restructuring, to satisfy claims of the Debtors by GDB, is void.   Motion ¶ 20.   Such an order would overturn the reservation of political and governmental powers under PROMESA § 303.   The UCC also seeks an order that would interfere with Debtor property by dictating the terms of its disposition, even though the Commonwealth has consented to the relief sought by GDB's Title VI application and PROMESA permits the Commonwealth to do so (as further discussed below).   PROMESA § 304(i).

## II.     The Facts Show That The Debtors Have No Net Positive Claim Against GDB To Protect.

23.     The UCC complains generically that any Debtor with net claims against GDB will receive claims against a potentially worthless interest and will be effectively subordinated to bondholders.   Motion ¶ 16(b).   The facts, however, reveal that the Debtors have nothing to protect.

24.     Specifically, (i) HTA owes GDB over $1.933 billion, while having a demand deposit claim of, if anything, under $33 million, (ii) the Commonwealth Treasury Department (Hacienda) owes GDB over $884 million, while its demand deposit claim was $568 million, (iii) PREPA owes GDB over $324 million because notwithstanding section 562 of the GDB Enabling

Act,[6] a minimum of approximately $324 million was withdrawn by PREPA while GDB was insolvent and, in addition, PREPA owes over $43 million for money borrowed, while its demand deposit claim is only $152 million, and (iv) ERS has a $33 million demand deposit claim against GDB for funds on deposit at GDB, which funds Act 106 of August 2017 and Joint Resolution 188 mandate to be transferred to the Commonwealth to help pay pension claims.[7]

### III.   PROMESA § 304(i) Allows The Debtors To Consent To the GDB Restructuring.

25.   Congress made clear in PROMESA § 304(i) that neither the provisions within Title III nor the Bankruptcy Code provisions it incorporates—including § 362—prohibit consent to a consensual restructuring under Title VI:

> (i)   VOTING ON DEBT ADJUSTMENT PLANS NOT STAYED.—Notwithstanding any provision in this title to the contrary, including sections of title 11, United States Code, incorporated by reference, nothing in this section shall prevent the holder of a claim from voting on or consenting to a proposed modification of such claim under title VI of this Act.

PROMESA § 304(i) (emphasis added).   Fundamentally, Title III and Title VI are not mutually exclusive.   Neither case excludes or takes precedence over the other and each plays a separate role in PROMESA.   Section 304(i) makes no distinction between situations where the same debtor is prosecuting Title III and Title VI cases simultaneously, and situations where a Title III debtor is voting on or consenting to a Title VI restructuring of another debtor.   In both situations, the voting and consent process under Title VI is permitted despite the existence of the stay of

---

[6]   7 L.P.R.A. § 562 ("[a]ll transfers . . . made while the Bank is insolvent, or in anticipation of insolvency, with the intent of preventing the application of the assets of the Bank in the manner prescribed . . . or with the intent of giving preference to one creditor over another, shall be null and ineffective.").

[7]   Demand deposit amounts and liabilities for loans from GDB set forth in paragraph 24 are taken from the GDB Fiscal Plan, at 37-38.   We understand the Commonwealth actually owes GDB substantially more than reflected above.   *See* Proof of Claim No. 29485, filed in Case No. 17-03283 (D.P.R. filed May 25, 2018) (asserting claim of not less than $2,231,033,108 by GDB against the Commonwealth); Proof of Claim No. 29533, filed in Case No. 17-03567 (D.P.R. filed May 25, 2018) (asserting claim of $2,355,974,556.98 by GDB against HTA); Proof of Claim No. 29617, filed in Case No. 17-04780 (D.P.R. filed May 25, 2018) (asserting claim of $41,357,139.80 by GDB against PREPA); Proof of Claim No. 151149, filed in Case No. 17-03567 (D.P.R. filed Jun. 29, 2018) (asserting claim of $2,355,974,556.98 by GDB against HTA).

Bankruptcy Code § 362 in a Title III case.  Such voting only occurs after the Oversight Board

certifies a Qualifying Modification and the terms of the transaction have been made public.  By

allowing the transaction to proceed to a vote, PROMESA made clear the Qualifying

Modification should proceed expeditiously for consideration of court approval, notwithstanding

the automatic stay under a Title III case.  PROMESA § 601(m)(1)(D).[8]

26.    Congress permitted, under PROMESA § 304(i), voting and consent to a

Qualifying Modification, notwithstanding the automatic stay under a Title III case, and therefore

plainly did not intend simultaneously for the automatic stay to defeat every necessary predicate

for such vote or consent.  Additionally, Congress clearly contemplated Qualifying Modifications

under Title VI to authorize transfers of debtor assets as part of a certified fiscal plan pursuant to

PROMESA § 201(b)(1)(M), regardless of whether the entity is a Title III debtor or not (and

regardless of whether the Title III stay is in effect or not).  As such, the automatic stay does not

operate to impede the progress of Title VI cases, and the UCC's Motion contending otherwise

should be rejected.

27.    Similarly, the Bankruptcy Code permits a debtor to perform certain actions that

would otherwise be prohibited under a mechanical application of section 362.  *See In re Mid-City

Parking, Inc.*, 332 B.R. 798, 819 (Bankr. N.D. Ill. 2005) ("When Congress uses another section

of the Code to authorize a trustee to perform specific functions that would otherwise violate

§ 362(a), e.g., § 323, § 363(c), § 365, § 704, § 1106, § 1108, then § 362(a) implicitly does not

apply to those activities, though other types of court approval may be required."); *cf. In re*

---

[8]    Indeed, this concept was so important that Congress made clear that even in the provisional stay that was in
effect upon enactment of PROMESA, nothing will stop claimholders from continuing and trying to reach and
vote on a Qualifying Modification. *See* PROMESA § 405(o) ("Voting On Voluntary Agreements Not Stayed.—
Notwithstanding any provision in this section to the contrary, nothing in this section shall prevent the holder of a
Liability Claim from voting on or consenting to a proposed modification of such Liability Claim under title VI of
this Act.").

*Jefferson Cnty.*, 491 B.R. 277, 286 (Bankr. N.D. Ala. 2013) ("In effectuating the purpose behind the stay, courts have declined to elevate form over substance.").

28.     The very first provision of the GDB RSA,[9] attached hereto as **Exhibit A**, constituting the Title VI Qualifying Modification, requires that the restructuring be carried out pursuant to Act No. 109-2017, the GDB Restructuring Act.[10]   The UCC concedes the GDB Restructuring Act is an "essential element" of the restructuring of GDB.  Motion ¶ 23.  The fifth provision of the GDB RSA provides for the treatment of the Non-Municipal Government Entities (as defined in the GDB Restructuring Act) and makes it a condition of the restructuring.[11]  Thus, the GDB RSA includes and integrates all the acts the UCC considers stay violations, and pursuant to PROMESA § 304(i), the Debtors are allowed to consent to such acts notwithstanding the automatic stay.

**IV.     The UCC Lacks Authority to Object to the GDB Restructuring.**

29.     The UCC does not represent GDB creditors because GDB is not a Title III debtor. To attempt to get a seat in the GDB Title VI case, the UCC contends the GDB restructuring eliminates the Debtors' claims against GDB and its current and former insiders.  Motion ¶ 19. As shown above, the Debtors do not have net positive claims against GDB in the first place.  But even if they did, it is beyond credulity that the Commonwealth, HTA, and PREPA can have meritorious claims against the governmental entity that loaned them money and kept them afloat

---

[9]   The "GDB RSA" means the Restructuring Support Agreement, dated as of May 15, 2017, among GDB, the Puerto Rico Fiscal Agency and Financial Advisory Authority, and the Supporting Bondholders (as such term is defined in the GDB RSA), as amended by the First Amendment to Restructuring Support Agreement, dated October 20, 2017; the Second Amendment to Restructuring Support Agreement, dated December 20, 2017; the Third Amendment to Restructuring Support Agreement, dated March 20, 2018; and the Fourth Amendment to Restructuring Support Agreement, dated April 6, 2018.

[10]   GDB RSA, Ex. A, at 1 (as amended by the Fourth Amendment to Restructuring Support Agreement, dated April 6, 2018) ("The Restructuring shall be carried out pursuant to Act No. 109-2017, also known as the Government Development Bank for Puerto Rico Debt Restructuring Act . . . .").

[11]   *Id.* at 4 ("The following terms and conditions . . . relating to Non-Municipal Government Entities . . . shall be a condition of the Restructuring. . . .").

at the request of the Puerto Rico government.[12]  But, even if they do, in the absence of the

applicability of Bankruptcy Code § 363, and in light of PROMESA § 303's protection of

governmental and political powers over GDB's assets and revenues, the Commonwealth and

other Title III debtors are entitled to use their property to facilitate repayment of bondholders in

their discretion.

30.    The UCC's resort to Bankruptcy Code § 105(a) is a sure giveaway that its Motion

lacks authority.  By its terms, section 105(a) may only be deployed to carry out provisions of the

Bankruptcy Code, not to override PROMESA § 304(i) or to expand the coverage of Bankruptcy

Code § 362.[13]  In fact, there can be no stay violation because the GDB Restructuring Act only

operates on the claims of the Non-Municipal Government Entities when the GDB RSA is

approved as a Qualifying Modification and all the conditions of PROMESA § 601 are satisfied.[14]

---

[12]  *See* Commonwealth of Puerto Rico, Financial Information and Operating Data Report (Dec. 18, 2016), at 189
("GDB loans were also used to cover operational deficits of the Commonwealth and its instrumentalities."),
*available at* http://bgfpr.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf;  Act
No. 31-2013 (Statement of Motives) ("[HTA] operates with a deficiency of approximately $355 million
annually, which has been corrected in the past by means of loans granted by the Government Development Bank
for Puerto Rico (BGF) to continue operating and meeting its obligations to its creditors.  This practice began in
2008, when [HTA] resorted to financing to cover its operations.").

[13]  *See Vision Metals, Inc. v. SMS Demag, Inc.*, 311 B.R. 692, 699 (Bankr. D. Del. 2004); *Schwartz v. Aquatic Dev.
Grp., Inc.*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) (holding § 105(a) does not authorize a court
"to create substantive rights that are otherwise unavailable under applicable law, or constitute roving commission
to do equity.")

[14]  GDB Restructuring Act, arts. 302 ("[E]ffective as of the Closing Date, the balance of liability owed between any
Non-Municipal Government Entity and GDB shall be automatically determined by . . . ."), 103(j) (defining
"Closing Date" as "the effective date of the Restructuring Transaction."); 103(pp) (defining "Restructuring
Transaction" as "the transactions contemplated by, or in furtherance of, the Qualifying Modification including,
without limitation: . . . (ii) the issuance of the Restructuring Bonds by the Recovery Authority . . . ."); 401
("From and after the Effective Date, the Recovery Authority shall be authorized to issue the Restructuring
Bonds . . . ."); 103(o) (defining "Effective Date" as "the date on which the Qualifying Modification becomes
conclusive and binding pursuant to Section 601(m) of PROMESA.").

## V.      The UCC Lacks Standing to Prosecute Supposed Violations of the Automatic Stay.

31.     In addition to lacking authority, the UCC lacks standing to enforce the automatic stay.[15]  As the sole representative of each Title III debtor pursuant to PROMESA § 315(b), the Oversight Board is authorized to enforce the automatic stay in the Title III cases, not the UCC. The automatic stay protects the debtor and its assets, not creditors.  *See Pinpoint IT Servs., LLC v. Atlas IT Exp., LLC (In re Atlas IT Exp., LLC)*, 491 B.R. 192, 195 (1st Cir. B.A.P. 2013) ("[t]he automatic stay is to protect the debtor from creditors not vice versa") (citation omitted); *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'").  Creditors benefit from the automatic stay because it serves to protect the integrity of a debtor's assets, but that indirect protection does not confer standing on creditors to enforce the automatic stay.  *See In re Mid-City Parking, Inc.*, 332 B.R. 798, 816-17 (Bankr. N.D. Ill. 2005) (The 'shield' aspect of the automatic stay is intended to protect both the debtor and the estate not those with interests adverse to the estate and its representative.).

32.     From the outset, the UCC focuses on automatic stay violations with blurred and futuristic vision.  The GDB RSA makes crystal clear that the compromises of bondholders' claims and Non-Municipal Governmental Entities' claims are simultaneous and neither occurs prior to this Court's approval of the GDB RSA in GDB's Title VI case.[16]  Most importantly,

---

[15]   The UCC's standing (or more appropriately, its lack thereof) to object to the GDB restructuring as a 'creditor' of any of the Title III Debtors will be addressed in a separate pleading in the GDB Title VI case.

[16]   GDB RSA, Ex. A, at 1 (as amended by the Fourth Amendment to Restructuring Support Agreement, dated April 6, 2018) ("The Restructuring shall be carried out pursuant to Act No. 109-2017, also known as the Government Development Bank for Puerto Rico Debt Restructuring Act . . . ."); *id.* at 3 ("GDB and the Holders of the Participating Bond Claims will undertake a financial restructuring of the Participating Bond Claims through a Qualifying Modification implemented under Title VI of PROMESA . . . .   Pursuant to such Qualifying Modification, on the date on which the conditions described under 'Conditions' below have been satisfied or waived by the RSA Requisite Bondholders (the 'Closing Date') . . . ."); *id.* at 4 (with respect to the Non-

Bankruptcy Code section 362(a) stays acts *against* debtors.[17]  It nowhere stays consensual trades.

The Title III debtors are trading the demand deposit claims they have for reductions of what they

owe GDB.  Although the UCC labels this a setoff in violation of Bankruptcy Code section

362(a)(7), the Title III debtors want to reduce their liabilities to GDB.[18]  Because section 363

does not apply in PROMESA, the Debtors can sell property or pay prepetition debt without

Court approval.  The reduction of debt contemplated by the GDB restructuring is no more a stay

violation than a Title III debtor's sale of electricity to GDB is a stay violation.  The UCC's logic

dictates such a sale is a stay violation because GDB is taking possession of the Title III debtor's

property—electricity.  But, stay violations require an involuntary element.  Otherwise, every

commercial transaction with a Title III debtor is a stay violation because the Title III debtor's

counterparty ends up controlling some of the debtor's property.  Additionally, the UCC's Motion

ignores practicality.  GDB's setoff rights against the Title III debtors provide it secured claims.[19]

The UCC fails to articulate any reason why the setoffs should not be taken.  This is especially

true when GDB lacks sufficient cash in the first place to satisfy all demand deposit claims.

33.    The UCC cites authority for the proposition that the debtor may not waive the

stay, but cites no authority granting it standing to prosecute supposed stay violations on behalf of

---

Municipal Government Entities, the compromise of their claims will be made "[p]ursuant to, or otherwise consistent with, Article 302 of the GDB Restructuring Act, as in effect on August 24, 2017, effective as of the Closing Date . . ."); *id.* at 18-19 ("Conditions precedent to the Closing Date shall include, but not be limited to . . . Certification of the Restructuring as a Qualifying Modification pursuant to section 601(g)(1)(c) of PROMESA . . . .").

[17]  11 U.S.C. § 362(a)(1) (". . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* . . . ." (emphasis added)); (a)(2) (". . . the enforcement, *against the debtor* . . . ." (emphasis added)).

[18]  Where Title III debtors deposited federal funds at GDB, such deposit claims will be payable from Commonwealth appropriations.  Declaration of Suzzanne S. Uhland, Esq. in Support of GDB's Title VI Application, *The Government Development Bank for Puerto Rico*, Case No. 18-1561, Ex. O at 30 (D.P.R. Aug. 10, 2018) [ECF No. 1-15] ("The deposit claims . . . corresponding to federal funds[] will also be transferred to the Public Entity Trust and will be payable from any appropriations made by the Commonwealth to restore such federal funds.").

[19]  *See* 11 U.S.C. § 506(a)(1) (made applicable to Title III pursuant to PROMESA § 301(a)).

creditors.  In fact, the First Circuit has suggested creditors lack standing to do so.  *See FDIC v.*
*Shearson-American Express,* 996 F.2d 493, 497 (1st Cir. 1993) (questioning creditor's standing
to assert a stay violation).  Without deciding the issue, the First Circuit cited approvingly *In re*
*Pecan Groves of Arizona*, 951 F.2d 242 (9th Cir. 1991), which holds creditors lack standing to
assert a stay violation.  *Pecan Groves*, 951 F.2d at 245 ("[I]f the trustee does not seek to enforce
the protections of the automatic stay, no other party may challenge acts purportedly in violation
of the automatic stay.").  Nor has the UCC sought derivative standing to assert the
Commonwealth's automatic stay rights, perhaps because derivative standing is only applicable in
limited circumstances under PROMESA.[20]  In any event, the UCC could not satisfy the standards
of derivative standing and standing could not be transferred to the UCC without the consent of
the Oversight Board pursuant to PROMESA § 305.

34.     Furthermore, the Stay Order also does not confer standing upon the UCC or other
creditors to enforce its provisions.  Instead, the Court made clear "*[t]he Debtors and the*
*Oversight Board*, as the Debtors' representative, are authorized to take all actions, and to execute
all documents, necessary or appropriate, to effectuate the relief granted in this Order in
accordance with the Motion."  Stay Order ¶ 13 (emphasis added).[21]

35.     Whether the Oversight Board can waive the automatic stay or not, the UCC lacks
standing to prosecute supposed stay violations.  Additionally, Bankruptcy Code § 362(d) allows
the court to terminate or annul the stay, demonstrating stay relief can be granted retroactively.
*See Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997) (holding
§ 362(d) authorizes courts to grant retroactive relief from the stay).

---

[20]  Bankruptcy Code § 926, as made applicable to Title III pursuant to PROMESA § 301(a), is the only provision in
PROMESA that provides for derivative standing.

[21]  In fact, the UCC's actions in the GDB case seeking to assert rights of the Commonwealth is itself a creditor
action to obtain possession or control of property of the estate and violates the automatic stay.  *See* 11 U.S.C.
§ 362(a)(3).

36.     If the automatic stay enjoined prosecution of a Title VI case that compromises claims of Title III debtors that the debtors desired to compromise, and it does not (*see infra*), the Oversight Board authorized the GDB Restructuring and thus the Oversight Board would consent to relief from the automatic stay to permit its consideration by the Title VI Court.

## VI.     In Any Event, The Automatic Stay Does Not Apply To The Title VI Case Pursuant to Bankruptcy Code Section 362(b)(4)

37.     Even putting aside that the automatic stay does not stay consensual commercial transactions between Title III Debtors and GDB, and that PROMESA § 304(i) overrides the stay to the extent it would otherwise enjoin the Title III Debtors from consenting to the GDB Restructuring, under Bankruptcy Code § 362(b)(4), the automatic stay does not apply to the Title VI Case because the GDB Restructuring Act and the Qualifying Modification are an exercise of the Commonwealth's police power.  Bankruptcy Code § 362(b)(4) provides that the stay under § 362 does not apply to "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power."  Section 362(b)(4) exists to allow governments to continue their work on behalf of their constituents.  *See In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988) ("Those proceedings that effectuate a public policy are excepted from the stay.").

38.     Significantly, the police power is as applicable to address economic emergencies as to address physical emergencies.  *Home Building & Loan Ass'n. v. Blaisdell*, 290 U.S. 398, 439–40 (1934) ("And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake, that power cannot be said to be non-existent when the urgent public need demanding such relief is produced by other and economic causes."); *see also Faitoute Iron & Steel Co. v. City of Asbury*

15

*Park, N.J.*, 316 U.S. 502, 513-14 (1942) (upholding exercise of police power to restructure permanently unsecured city obligations in response to city insolvency).

39.     Like the fifty States, the Commonwealth is endowed, subject to the limitations detailed in PROMESA, with expansive police power that includes the power to regulate the Commonwealth's economy to protect the public interest.  *See, e.g.*, P.R. Const. art. II, § 19; *Sancho v. Bacardi Corp. of Am.*, 109 F.2d 57, 65 (1st Cir. 1940); *Armstrong v. Goyco*, 29 F.2d 900, 901 (1st Cir. 1928); *Ruiz v. Economics Lab., Inc.*, 274 F. Supp. 14, 16 (D.P.R. 1967).

40.     Here, Congress has already declared an emergency.  The Title VI application is a valid exercise of the power to redress Puerto Rico's fiscal emergency.  As the Court knows, Congress found "a fiscal emergency in Puerto Rico" that required "[a] comprehensive approach" for Puerto Rico "to restructure debts in a fair and orderly process."  PROMESA § 405(m). Congress determined the emergency rendered Puerto Rico unable to provide its citizens effective services.  *Id*.  The UCC's assertions that the GDB restructuring is purely financial, is merely for a "pecuniary purpose," and does not fall within the "police power" exception, Motion ¶ 37, ignores what Congress wrote in section 405(m).[22]

## VII.    The Motion Is Procedurally Improper Under PROMESA § 601(n).

41.     As explained above, while the UCC's Motion is labeled a stay enforcement motion, it is actually an attack on the political and governmental judgment of the Commonwealth in proposing a Title VI restructuring that incorporates and impacts Title III debtors having claims

---

[22] *See also* 162 Cong. Rec. H3600 (daily ed. June 9, 2016) (statement of Rep. Duffy) "Puerto Rico is $73 billion in debt.  That is over 100 percent of GNP. They have almost $2 billion of unpaid bills to their vendors. So what does that mean? That means schools are closing down because we don't have fuel for energy in the schools or for school buses. Hospital wings are closing. Emergency vehicles aren't being run because the island doesn't have money to pay its bills. This is a true economic crisis. *It is a true humanitarian crisis that is taking place in Puerto Rico.*" (emphasis added)); 162 Cong. Rec. H3601 (daily ed. June 9, 2016) (statement of Rep. Grijalva) ("If Congress fails to act, the island and its people face another decade of further economic and social collapse.  Our fellow citizens of Puerto Rico should not have to endure this coming humanitarian crisis."); 162 Cong. Rec. H3602-03 (daily ed. June 9, 2016) (statement of Rep. Curbelo) ("This legislation is an important step forward in helping the island mitigate the existing humanitarian and economic emergency in a responsible way.").

against GDB, but where GDB has larger claims against them.  The exclusive means PROMESA provides to challenge the substance of a Title VI Qualifying Modification is through a separate civil action under a deferential legal standard.

42.    Congress provided an exclusive path to challenge the approval of a Qualifying Modification in PROMESA § 601(n).  The section, titled "Judicial Review," provides for jurisdiction over "civil actions" that assert causes of action challenging the "unlawful application" of PROMESA § 601, and permitting the Court to nullify an approved Qualifying Modification and its effects only where it is "manifestly inconsistent" with PROMESA § 601.  In view of § 601(n), the UCC's Motion is improper for three reasons to the extent its real purpose is to challenge the political and governmental judgments exercised in the GDB RSA.

43.    *First*, the UCC lacks standing to assert, and the UCC's Motion is not a "civil action" asserting, unlawful application of PROMESA § 601.  *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").  Congress provided a means to challenge approved Title VI Qualifying Modifications through the filing of a complaint but did not contemplate or permit a collateral attack on a Title VI *application* through motion practice in a separate Title III case.

44.    *Second*, the UCC's Motion attempts to circumvent the process the Title VI Court established to consider the Title VI Case pursuant to PROMESA § 601(m)(1)(D).  The Title VI Court's ultimate determination is whether "the requirements of [§ 601] have been satisfied," PROMESA § 601(m)(1)(D), which is a threshold determination that must be made before a Qualifying Modification can take binding effect (let alone be "nullified").  Here, the Title VI

17

Court has not considered the Qualifying Modification.[23]   As such, no court is in a position to "nullify" the Qualifying Modification under PROMESA § 601(n).   The UCC's collateral attack on the Title VI application by motion in a separate case (i.e., these Title III cases), which seeks to nullify the Qualifying Modification before the Title VI Court has it, is improper.

45.   *Third*, even if the UCC could challenge an unapproved Qualifying Modification by motion in a separate case, the UCC's Motion is improper because it attempts to change the standard of review from whether an approved Qualifying Modification is "manifestly inconsistent" with § 601.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the UCC's Motion.

Dated: August 31, 2018
New York, NY

Respectfully submitted,

 */s/ Martin J. Bienenstock*
Martin J. Bienenstock
Stephen L. Ratner
Jeffrey W. Levitan
Margaret A. Dale
Paul V. Possinger
Ehud Barak
Timothy W. Mungovan
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Debtors*

---

[23]   The Title VI Court has approved procedures to receive objections to the Title VI application for its consideration [ECF No. 7 in Case No. 18-cv-1561], and a motion seeking approval of discovery, briefing, and hearing procedures is pending [ECF No. 4 in case No. 18-cv-1561].

 */s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
*/s/ Daniel J. Perez-Refojos*
Daniel J. Perez-Refojos
USDC No. 303909
O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight
and Management Board as representative
for the Debtors*

### CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all

CM/ECF participants in this case.

 */s/ Hermann D. Bauer*
Hermann D. Bauer

19