# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------------- X

|  |  |
|---|---|
| In re: | : |
|  | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
|  | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
|  | : |
| THE COMMONWEALTH OF PUERTO RICO *et al.,* | : (Jointly Administered) |
|  | : |
| Debtors.[1] | : |
|  | : |

----------------------------------------------------------------------- X

**OMNIBUS REPLY OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF URGENT MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 362, FOR ENTRY OF ORDER ENFORCING AUTOMATIC STAY AND COURT'S JUNE 29, 2017 ORDER CONFIRMING APPLICATION OF AUTOMATIC STAY WITH RESPECT TO GDB RESTRUCTURING**

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

REPLY ................................................................................................................... 5

I.    Oversight Board Previously Consented to Enforcement of Automatic Stay ...................... 5

II.   Sections 303 and 305 of PROMESA Do Not Apply to Automatic Stay Issues Raised by
      Stay Motion................................................................................................ 7

      A.  GDB Restructuring Is Not Exercise of Political or Governmental Powers ................... 7

      B.  Application of Automatic Stay to GDB Restructuring Is Not Interference Prohibited by
          Section 305 ........................................................................................ 10

III.  The GDB Restructuring Violates Automatic Stay Notwithstanding Commonwealth's
      Alleged Consent......................................................................................... 11

IV.   Section 304(i) Does Not Insulate GDB Restructuring from Stay Violation...................... 14

V.    GDB Restructuring Is Not Excepted from Automatic Stay as Exercise of
      Commonwealth's Police Power Under Section 362(b)(4) ........................................... 16

VI.   Whether Title III Debtors Have Net Claims Against GDB Is Irrelevant and Not Yet
      Determined............................................................................................... 17

VII.  The Committee Has Standing to File Stay Motion and Has Properly Done So ................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Christianson v. Colt Indus. Operating Operating Corp.*,
486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)..........................................13

*In re City of Stockton*,
526 B.R. 35 (Bankr. E.D. Cal.)...................................................................7, 8, 9

*In re Commerce Oil Co.*,
*847 F.2d 291* (6th Cir. 1988) ..................................................................17

*Commodity Futures Trading Comm'n v. Weintraub*,
471 U.S. 343 (1985)..................................................................................18

*F.D.I.C. v. Shearson-Am. Exp., Inc.*,
996 F.2d 493 (1st Cir. 1993)......................................................................20

*Faitoute Iron & Steel Co. v. City of Asbury Park*,
316 U.S. 502, 62 S. Ct. 1129, 86 L. Ed. 1629 (1942)..............................17

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
582 B.R. 579 (D.P.R. 2018)......................................................................13

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*,
872 F.3d 57 (1st Cir. 2017).......................................................................20

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
No. 17-2079, 2018 WL 3751014 (1st Cir. Aug. 8, 2018)...................10, 11

*In re Hart*,
282 B.R. 70 (B.A.P. 1st Cir. 2002) .............................................................7

*Home Bldg. & Loan Ass'n v. Blaisdell*,
290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413 (1934)..................................17

*In re Indian Motocycle Co., Inc.*,
266 B.R. 243 (Bankr. D. Mass. 2001) ......................................................20

*Jaap Corp.*
*v. Dep't of State,* 187 D.P.R. 730, 739 (2013) ..........................................3

*In re Jack Greenberg, Inc.*,
189 B.R. 906 (Bankr. E.D. Pa. 1995) .......................................................18

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*In re Jefferson Cty.*,
  474 B.R. 228 (Bankr. N.D. Ala. 2012) ................................................................10

*In re Lake Country Invs. Ltd.*,
  No. 99-20287, 1999 WL 33490220 (Bankr. D. Idaho Sept. 22, 1999)...................20

*In re Maloney*,
  204 B.R. 671 (Bankr. E.D.N.Y. 1996) (Swain, J.) .................................................19

*In re McMullen*,
  386 F.3d 320 (1st Cir. 2004).................................................................................16

*In re Nortel Networks, Inc.*,
  669 F.3d 128 (3d Cir. 2011)..................................................................................16

*Ostano Commerzanstalt v. Telewide Sys., Inc.*,
  790 F.2d 206 (2d Cir. 1986) *affirmed in part and reversed in part on other*
  *grounds* ................................................................................................................19

*In re Pecan Groves of Arizona*,
  951 F.2d 242 (9th Cir.1991) ..................................................................................20

*In re Soares*,
  107 F.3d 969 (1st Cir. 1997)............................................................................16, 19

*St. Paul Fire & Marine Ins. Co. v. Labuzan*,
  579 F.3d 533 (5th Cir. 2009) .................................................................................20

*Tesorero de Puerto Rico v. Banco Comercial de Puerto Rico*,
  46 D.P.R. 308 (1933) ...............................................................................................3

*United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*,
  9 F.3d 996 (1st Cir. 1993)......................................................................................14

*In re WHET, Inc.*,
  750 F.2d 149 (1st Cir. 1984)..................................................................................18

**Statutes**

7 L.P.R.A. § 1281 .......................................................................................................3

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

11 U.S.C.

    § 101(27) ..................................................................................................6

    § 105(a) ...............................................................................................1, 1

    § 323 ...................................................................................................18

    § 362 ............................................................................................ *passim*

    § 362(a) ..................................................................................................1

    § 362(a)(1) ...........................................................................................11

    § 362(a)(3) ...........................................................................................12

    § 362(a)(4) ...........................................................................................12

    § 362(a)(6) ...........................................................................................12

    § 362(a)(7) ...........................................................................................12

    § 362(b)(4) .....................................................................................16, 17

    § 362(d) ...............................................................................................12

    § 363 .......................................................................................11, 13, 14

    § 365 .....................................................................................................1

    § 553 ...................................................................................................14

    § 553(a) ...............................................................................................14

    § 903 .................................................................................................8, 9

    § 904 ...............................................................................................9, 10

    § 922 .....................................................................................................1

    § 922(d) ...............................................................................................13

    § 926 .....................................................................................................8

    § 1109 ...................................................................................................3

    § 1109(b) .............................................................................................20

48 U.S.C § 2161 .............................................................................................12

GDB Restructuring Act .......................................................................... *passim*

GDB Restructuring Act, art. 302 .....................................................................14

GDB Restructuring Act, art. 402 .....................................................................15

GDB Restructuring Act, art. 403(i) .................................................................15

GDB Restructuring Act, art. 702 .....................................................................15

GDB Restructuring Act, art. 703 .....................................................................15

GDB Restructuring Act, art. 704 .....................................................................15

U.K. Pensions Act 2004 ...................................................................................16

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

7 Collier on Bankruptcy ¶ 1109.04 (16th ed. 2018) ....................................................20

Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.05[5][b]
(16th ed. 2015) .................................................................................................17

Fed R. Civ. P.
12(B)(1)..............................................................................................................18
12(B)(6)..............................................................................................................18

PROMESA
§ 301(a) ................................................................................................................1
§ 303...........................................................................................................1, 2, 8, 9
§ 305............................................................................................................. *passim*

Puerto Rico Constitution........................................................................................3

S. Rep. No. 95–989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787...............................16

Statement for 2014 GO Bonds (Mar. 11, 2014) (available at
http://www.gdbpr.com/investors_resources/documents/CommonwealthPRGO
2014SeriesA-FinalOS.PDF)......................................................................................19

To the Honorable United States District Court Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") respectfully submits this omnibus reply (the "Reply") (i) in response to the objections (together, the "Objections")[2] filed by the Oversight Board and by GDB and AAFAF (together, the "Objectors") and (ii) in support of the Committee's motion for an order enforcing the automatic stay (or the Court's Stay Order) with respect to the GDB Restructuring (the "Stay Motion").[3]  In support of its Reply, the Committee states as follows:

## PRELIMINARY STATEMENT

1.      The transactions contemplated by the GDB Restructuring Act cannot move forward for the simple reason that they violate the automatic stay and this Court's June 29, 2017 order confirming the application of the automatic stay (the "Stay Order").[4]  Indeed, the Objections hardly dispute that the actions effectuated by the GDB Restructuring Act violate the stay;[5] rather, they assert that the Court's hands are tied by sections 303 and 305 of PROMESA or (in the case of the Oversight Board) that the Committee lacks authority or standing to request

---

[2]      The Objections are the *Objection of the Government Development Bank for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority to the Urgent Motion of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, for Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of Automatic Stay with Respect to GDB Restructuring* [Docket No. 3826] (the "GDB Objection") and the *Objection of Financial Oversight and Management Board for Puerto Rico to Urgent Motion of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, for Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of Automatic Stay with Respect to GDB Restructuring* [Docket No. 3845] (the "Oversight Board Objection").

[3]      *Urgent Motion of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, for Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of Automatic Stay with Respect to GDB Restructuring* [Docket No. 3797].  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stay Motion.

[4]      *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [Docket No. 543, June 29, 2017].

[5]      The Objections do contain certain other arguments, for example, that the police power exception to the automatic stay applies to the GDB Restructuring or (in the case of the Oversight Board) that consent renders section 362 inapplicable.  These arguments are tangential to the Objections' most important argument regarding the exercise of alleged political or governmental powers and, furthermore, are meritless for the reasons discussed below.

1

that the Court enforce the automatic stay.  These arguments are flawed for several reasons.

2.      <u>First</u>, to the extent that the Stay Motion is a request for the Court to "interfere" in the Title III Debtors' affairs within the meaning of section 305 of PROMESA (as explained below, it is not), **the Oversight Board previously consented to any such "interference" by seeking and obtaining entry of the Stay Order**.  Among other things, that order expressly stays, restrains, and enjoins "**all foreign and domestic governmental units**" from taking any action to obtain possession of property of or from the Title III Debtors or offsetting any prepetition debt owing to the Title III Debtors against any claim against the Title III Debtors. Moreover, under the Stay Order, the Court explicitly retained jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this order.  The Oversight Board cannot now change its mind and withdraw its consent based on the fact that the Committee is requesting the Court enforce its own Stay Order.

3.      <u>Second</u>, even if the Oversight Board had not consented to the Court's "interference" (it has), neither section 303 nor section 305 of PROMESA precludes enforcement of the automatic stay with respect to the GDB Restructuring.  As discussed below, the GDB Restructuring does not involve the exercise of the "governmental and political powers" reserved to the Commonwealth under section 303 or protected from Court interference under section 305. Moreover, it is impossible for an order enforcing the automatic stay to "interfere" within the meaning of section 305 of PROMESA because such an order merely recognizes the application of a stay that is already in force, having arisen either "automatically" by act of Congress or consensually by prior order of this Court (in the case of the Stay Order).

4.      The Oversight Board's remaining arguments also fail.  Contrary to the Oversight Board's assertion that the Title III Debtors consented to the GDB Restructuring, the Title III

Debtors cannot consent to annul the automatic stay.  Further, the Oversight Board's assertion that the Title III Debtors lack net claims against GDB is irrelevant, unsupported, and shows only that the Oversight Board is hopelessly conflicted and uninterested in acting as a true fiduciary for the Title III Debtors.  Lastly, contrary to the Oversight Board's assertions, the Committee clearly has standing under section 1109 of the Bankruptcy Code and has properly acted in the Title III cases to raise the issue of enforcement of the automatic stay.

5.     <u>Finally</u>, the Objections make clear that the Objectors support the GDB Restructuring **regardless of the mandates of PROMESA and the Bankruptcy Code or considerations of transparency, fairness or fiduciary duties**.  According to the Objectors, no one is allowed to challenge the decision by GDB and AAFAF (a deeply conflicted entity with respect to issues involved here) to violate the automatic stay by, among other things: (a) setting off the Title III Debtors' deposits placed with GDB against claims asserted by GDB; (b) eliminating claims held by the Title III Debtors and others against GDB and related third parties, such as the current and former leadership of GDB and AAFAF, as well as members of the Oversight Board (including by handing out free releases to GDB's current or former officers, directors, employees, agents, or representatives (the "<u>GDB Releasees</u>"));[6] and (c) creating liens on property of the Title III Debtors held in trust or other fiduciary capacity by GDB.[7]

---

[6]     It is unclear whether the government will take the position that "agents" and "representatives" include current and former counsel and other advisors (*e.g.*, underwriters) to GDB.

[7]     GDB and AAFAF deny that GDB holds any of the Title III Debtors' funds in trust or other fiduciary capacity, despite the specific statutory authorization given to GDB to act as trustee of public funds at 7 L.P.R.A. § 1281. GDB Objection ¶23 n. 8.  It is unclear why the Committee and other parties should be forced to rely on this denial, given that GDB has not provided the disclosure necessary to verify it.  For example, GDB account agreements may have created trustee relationships with "special deposit" or "specific deposit" depositors, but GDB has not provided these for the Committee's review.  *See, e.g., Tesorero de Puerto Rico v. Banco Comercial de Puerto Rico*, 46 D.P.R. 308, 316 (1933), 1934 PR Sup. LEXIS 281 (official translation) ("In a special deposit, the title remains in the depositor.").  And it is incongruous for GDB to be specifically authorized by law to act as trustee of public funds but to now disclaim that role.  Moreover, GDB and AAFAF's attempt to distinguish *Jaap Corp. v. Dep't of State*, 187 D.P.R. 730, 739 (2013) is unconvincing—*Jaap's* conclusion that public funds must be managed with the "highest ethical and fiduciary standards" was not based on the existence of government procurement requirements, but on the text of the Puerto Rico Constitution.

6.        To justify this, and to push forward a scheme designed to insulate the GDB Releasees from any legal liability in connection with a financial crisis that resulted in the largest public bankruptcy in history, GDB and AAFAF attempt to wrap themselves in the flag of territorial sovereignty and assert that the GDB Restructuring has a "governmental" or "political" purpose. And they do this cloaked in secrecy, having repeatedly refused to provide the discovery that would allow truly independent actors like the Committee to investigate the Title III Debtors' claims against GDB.[8] Meanwhile, GDB and AAFAF suffer from massive conflicts of interest that arise because AAFAF (GDB's successor entity, staffed and advised by ex-GDB personnel) and its counsel represent both the Commonwealth and GDB in a restructuring that shields the very same ex-GDB personnel from legal liability.[9]  Indeed, AAFAF and the GDB appear to be so secure in their (incorrect) belief that their actions are immune from review that they admit that they negotiated amongst themselves the disallowance of the Title III Debtors' claims (including by the free grant of releases to the GDB and the GDB Releasees) against the GDB and the de facto allowance of the GDB's claims against the Title III Debtors.[10]

7.        At the same time, the Oversight Board, for its part, has seemingly abandoned its oversight role by joining GDB and AAFAF in pushing forward with a transaction that prejudices

---

GDB and AAFAF fail to address the fundamental point here—public funds are treated as funds held in a fiduciary capacity, and GDB cannot therefore do whatever it wants with those funds to benefit a set of favored creditors.

[8]    GDB and AAFAF state that they have had "numerous meetings" with the Committee and that they have provided it with "information and documents regarding GDB."  GDB Obj., at 5 n.7 .  However, GDB meetings with the Committee all took place after the original GDB RSA was signed and, despite the Committee's repeated requests, the fundamental features of the deal remain unchanged.  Furthermore, while GDB and AAFAF have provided the Committee certain GDB loan agreements with the Commonwealth, they have not provided a variety of key documents, such as account agreements, evidence concerning the amounts actually lent and repaid in connection with GDB-Commonwealth loans, or the GDB D&O insurance policies.

[9]    The conflicts of interest, self-dealing, and secrecy that contaminate the GDB Restructuring will be explored in more detail in future pleadings to be filed by the Committee.

[10]    Because the GDB has filed proofs of claim against Title III Debtors, allowance of that claim must be subject to the Committee's right to object under section 502 of the Bankruptcy Code. *See* Proofs of Claim Nos. 29485, 29617, 29533, 151149. Furthermore, by filing their proofs of claim, GDB has waived sovereign immunity with respect to any claims against GDB arising out of the same transactions.  *See* 11 U.S.C. § 106(b).

4

the Title III Debtors—i.e., the same entities for which the Oversight Board is obligated to serve

as trustee and representative in these Title III cases.  The Oversight Board's "representation" of

the Title III Debtors apparently includes opposing the Stay Motion based on, among other things,

its insistence that the Title III Debtors do not have any net claims against GDB.  This raises

troubling questions of conflicts of interest, as (among other things) the Oversight Board's

members include former GDB officials (who could be released from claims under the GDB

Restructuring Act) and, as far back as 2014, its counsel served as counsel to GDB.

## REPLY

### I.      Oversight Board Previously Consented to Enforcement of Automatic Stay

8.      Section 305 of PROMESA prohibits the Court from interfering with the Title III

Debtors' political or governmental powers, property or revenues, or income producing property,

unless the Oversight Board consents to such interference.  Here, the Oversight Board did just that

when it requested and obtained entry of the Stay Order, which expressly makes the automatic

stay applicable to the very type of transactions contemplated under the GDB Restructuring.

9.      In particular, the Stay Order (which was entered as proposed by the Oversight

Board) provides that "all foreign and domestic governmental units . . . are hereby stayed,

restrained, and enjoined from," among other things:

> commencing or continuing any judicial, administrative, or other action or
> proceeding against the Debtors, including the issuance or employment of
> process, that was or could have been commenced before the Title III
> Cases were commenced;
>
> taking any action to obtain possession of property of or from the Debtors
> or exercise control over property of the Debtors;
>
> taking any action to collect, assess, or recover a claim against the Debtors
> that arose before the commencement of the Title III Cases;

> offsetting any debt owing to the Debtors that arose before the
> commencement of the Title III Cases against any claim against the
> Debtors.[11]

The Stay Order also expressly enjoins all foreign and domestic governmental units and all those

acting on their behalf from "**in any way** seizing, attaching, foreclosing upon, levying against, or

taking any action to obtain possession or control over any and all property of the Debtors."[12]  In

addition, the Stay Order provides that "[t]he Court retains jurisdiction to hear and determine all

matters arising from or related to the implementation, enforcement, or interpretation of this

order."[13]  The Stay Order contains no language that would suggest that the Oversight Board's

consent to entry of the Stay Order and enforcement thereof is limited any way.

10.     In short, the Oversight Board requested that the Court enter an order confirming

the application of, and the Court's authority to enforce, the automatic stay in these Title III cases

and, in doing so, consented to any "interference" by the Court (as it may be necessary) for

purposes of section 305 of PROMESA.  The Oversight Board cannot now change its mind and

withdraw this consent simply because it doesn't like the effect that its prior consent to entry of

the Stay Order now has on the proposed GDB Restructuring.  Nor do the Objectors address the

Stay Order other than to emphasize that the Stay Order provides that the "Debtors and the

Oversight Board" are authorized to implement the terms of the order.[14]  Presumably, the

Oversight Board means to imply that this somehow excludes the Committee from reminding the

Oversight Board (and GDB/AAFAF) that it is bound by the Stay Order it sought and obtained.

This argument is illogical and not supported by the language of the Stay Order.  Even worse, the

---

[11]   Stay Order ¶ 2.  There can be no question that the Commonwealth and the GDB are each a "governmental unit,"
as defined in section 101(27) of the Bankruptcy Code, which definition includes both a "Commonwealth" and a
Territory, and the GDB is indisputably an instrumentality of the Commonwealth.

[12]   Stay Order ¶ 3 (emphasis added).

[13]   *Id.* ¶ 15.

[14]   *See* Oversight Bd. Obj. ¶ 34.

logic of this argument would preclude not only the Committee from enforcing the Stay Order, but would even preclude the Court from enforcing its own order.[15]

## II.    Sections 303 and 305 of PROMESA Do Not Apply to Automatic Stay Issues Raised by Stay Motion

11.    The GDB Objection does not even attempt to dispute the Committee's central argument: that the GDB Restructuring would, absent sections 303 and 305 of PROMESA, violate the automatic stay.  Instead, the objection is premised on the argument that the GDB Restructuring (i) "reflects an exercise by the Commonwealth of its governmental or political powers to control itself and the Title III Debtors," thus precluding Court review by virtue of section 303, and (ii) reflects the decision of each Title III Debtor with regards to its political and governmental powers and the use of its property, thus precluding Court review by virtue of section 305 of PROMESA.[16]  However, neither section is applicable here.

### A.    GDB Restructuring Is Not Exercise of Political or Governmental Powers

12.    Section 303 of PROMESA preserves the power of the Commonwealth to control its territory and its instrumentalities through the exercise of its "political or governmental powers."  In other words, the Commonwealth's powers over its territory and its instrumentalities are not impaired by the filing of the Title III Cases—provided that the powers the Commonwealth seeks to wield are part of its "political or governmental powers."[17]

13.    "[Section] 903 'political or governmental' powers relate to basic requirements of government and political polity and exclude financial and employment relations."[18]  The political

---

[15]  Of course, the Court also can enforce the stay *sua sponte*. *See, e.g., In re Hart*, 282 B.R. 70, 73, 77-78 (B.A.P. 1st Cir. 2002) (raising stay violation *sua sponte*).

[16]  *Id.*

[17]  *See In re City of Stockton,* 526 B.R. 35, 52 (Bankr. E.D. Cal.) ("*Stockton IV*") (subsequent history omitted) ("key to the analysis of the §§ 903 and 904 restrictions is the meaning of exercise of 'political or governmental powers'").

[18]  *Id*. at 54.

or governmental functions referred to in section 903 of the Bankruptcy Code and in section 303

of PROMESA therefore "refer to basic matters of the organization and operation of government

that are incidents of sovereignty, **but do not extend to financial relations between the state

and its municipalities**."[19]  In contrast, the GDB Restructuring is purely a financial transaction,

and thus does not fall within the Commonwealth's political or governmental powers.  For

example, the GDB Restructuring is premised on the mandatory setoff of claims against the GDB

and, as AAFAF itself acknowledges, "the resolution of the interrelated claims among the

Commonwealth, its instrumentalities, and GDB."[20]  These are precisely the type of "financial

relations between the [Commonwealth] and its [instrumentalities]" that are excluded from the

definition of "political or governmental powers" protected by section 303 of PROMESA.[21]  The

Court should not allow AAFAF to "hid[e] behind" section 303 of PROMESA and blatantly

ignore the realities of the flawed GDB Restructuring.[22]

14.     Moreover, the GDB Restructuring Act also eliminates the Title III Debtors'

claims against the GDB and the GDB Releasees, including claims on account of avoidable

transfers that enable the Oversight Board, or a trustee appointed under section 926 of the

Bankruptcy Code, to avoid transfers that are preferential or fraudulent, even if the transferee is

another instrumentality of the Commonwealth.[23]  As explained by *Stockton IV*, the "political or

governmental" powers of section 303 of PROMESA "do not include the financial relations that

---

[19]   *Id. (emphasis added).*

[20]   *See* GDB Obj. ¶ 36

[21]   See *Stockton IV*, 526 B.R at 54.  AAFAF also tries to differentiate the GDB Restructuring Act from the holding
of *Stockton IV* by asserting, incredibly, that *Stockton IV* was concerned with the "protection of profit-making
rights."  *See* GDB Obj. ¶ 34.  As discussed above, the proper characterization of government actions, not some
vague "profit making," was at issue on *Stockton IV*.  Indeed, the word "profit" does not appear in *Stockton IV*.

[22]   *See Stockton IV*, 526 B.R at 54 ("hiding behind the § 903 protection of the exercise of 'political or
governmental' powers does not work").

[23]   *See id.* at 53 ("municipal debtor can avoid certain liens and transfers in favor of the state").

are implicit in these avoiding powers."[24]  Therefore, it cannot be said that the elimination of such

claims is the valid exercise of political or governmental power—it is simply the adjustment of

financial claims.  Thus, the GDB Restructuring is not protected from Court interference as an

exercise of governmental and political powers under section 303 or section 305 of PROMESA.[25]

15.     AAFAF attempts to cloud the obvious financial nature of the GDB Restructuring

by repeatedly arguing that the GDB Restructuring Act "has a public purpose" and "permits the

provision of essential public services";[26] that it lays "foundational bricks"[27] and "protects public

rights."[28]  But repetition does not alter the true nature of the transaction, nor does the Puerto Rico

Legislature's proclamation that the GDB Restructuring has a "public purpose" serve as a valid

interpretation of section 303's language referring to "political or governmental powers"—

interpreting the language of a federal statute is the province of the Court, not the Puerto Rico

legislature.  The GDB Restructuring is nothing more than the liquidation of a failed financial

institution that has no banking operations.  It has no impact on the provision of services or other

governmental functions to the people of Puerto Rico, nor does it have any impact on the

organization and operation of government—indeed, AAFAF concedes that GDB has already

"essentially froze[n] its bank functions."[29]

---

[24]   *Id.*

[25]   Further, the case law is clear that the analysis of "political or governmental" powers is the same for purposes of
sections 903 and 904 of the Bankruptcy Code (the counterparts to sections 303 and 305 of PROMESA).  *See
Stockton IV,* 526 B.R at 54 ("the concept of 'political or governmental' powers is central to both sections 903
and 904" and the analysis of one "inform[s] the analysis of" the other).

[26]   *See* GDB Obj. at ¶ 15.

[27]   *See* GDB Obj. at ¶ 34.

[28]   *See* GDB Obj. at ¶ 37.

[29]   See GDB Obj. at ¶ 11.  Though the Committee has not asserted in its Stay Motion that the GDB Restructuring
runs afoul of sections 303(1), (2), or (3) of PROMESA, GDB has reserved its rights to contest any future
assertions by the Committee regarding those provisions. The Committee likewise reserves its rights to assert
arguments based on these provisions in future pleadings.

B.   Application of Automatic Stay to GDB Restructuring Is Not Interference
Prohibited by Section 305

16.   Section 305 of PROMESA, like section 904 of the Bankruptcy Code, provides

that, absent the consent of the Oversight Board (or, in the case of section 904, the debtor), "the

court may not, by any stay, order, or decree, in the case or otherwise, interfere with" a title III

debtor's political and governmental powers, its property, and its revenues, or its decisions in

connection therewith.  By its plain language, section 305 only applies when the Court interferes.

Critically, therefore, section 305 by its own terms is inapplicable to the imposition of the stay

and its protection of the Title III Debtors and their creditors from the GDB Restructuring.

17.   To be clear, the Committee is not asking the Court to interfere with any of the

enumerated categories of section 305 of PROMESA.  In fact, the Committee is not asking the

Court to do anything other than confirm the application of the automatic stay and enforce its Stay

Order.  The automatic stay is "not the result of any actions taken by a bankruptcy court as part of

the case or in a proceeding arising in, arising under, or related to a bankruptcy case.  Rather and

as the descriptive terminology for [it] indicates, [it] is imposed automatically upon the filing of a

chapter 9 case,"[30] is self-effectuating, and is created by Congress.[31]

18.   This crucial understanding of what section 305 of PROMESA does and does not

prohibit is also consistent with the First Circuit's recent opinion limiting the reach of section

305.[32]  There, the First Circuit recognized that section 305 of PROMESA does not entirely "tie

the Title III court's hands" and that section 305 "states specifically what [the Court] may not do:

---

[30]   *In re Jefferson Cty.*, 474 B.R. 228, 275 (Bankr. N.D. Ala. 2012) (noting that no one has asked the court to take
any action that would interfere with alleged government property or political or governmental functions).

[31]   *Id.* (internal citations omitted).

[32]   *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17-2079, 2018 WL 3751014, at *2 (1st Cir. Aug. 8,
2018).

'interfere with' certain powers and assets of the debtor."[33]  Because the PREPA bondholders that

had sought Court involvement had not asked the Court to "issue any such stay, order, or decree,

that itself interfere[d] with the debtor's powers or assets," section 305 was not a bar to the

requested relief.[34]  In other words, the First Circuit, consistent with the *Jefferson County* court,

held that involvement is not interference.

19.     Like the PREPA bondholders, the Committee requests Court involvement, but not

interference, and does not ask the Court to "issue any . . . stay."[35]  The automatic stay does not

have to be issued—it arises automatically.  Therefore, section 305 does not prevent the Court

from entering an order enforcing the automatic stay, let alone simply interpreting and enforcing

its own Stay Order, as requested in the Stay Motion.

### III.    The GDB Restructuring Violates Automatic Stay Notwithstanding Commonwealth's Alleged Consent

20.     The Oversight Board argues that GDB's acts to enforce its claims against the Title

III Debtors are merely examples of the "use, sale, or lease of property."  According to the

Oversight Board, these acts should be allowed without Court oversight because the

Commonwealth has consented to them and because section 363 of the Bankruptcy Code is not

incorporated into PROMESA.  Contrary to the Oversight Board's arguments, these acts are

clearly prohibited by section 362 of the Bankruptcy Code and the Stay Order.

21.     First, section 362 of the Bankruptcy Code does not contain a "non-consensual"

element.  The text of the statute plainly applies to actions or proceedings to recover claims

against the Title III Debtors that arose pre-petition,[36] acts to obtain property of the Title III

---

[33]   *Id.*

[34]   *Id.*

[35]   *Id.*

[36]   11 U.S.C. § 362(a)(1).

Debtors,[37] acts to create, perfect, or enforce liens against property of the Title III Debtors,[38] acts

to collect, assess, or recover claims against the Title III Debtors,[39] and the setoff of debt owing to

the Title III Debtors.[40]  None of these provisions create exceptions in cases where a debtor

consents.  The same is the case for the text of the Stay Order, which stays, among other things,

"[a]ll entities, including all persons and foreign and domestic governmental units, and all those

acting on their behalf from . . . **in any way**, seizing, attaching, foreclosing upon, levying against,

or taking any action to obtain possession or control over any and all property of the Debtors,

wherever located."[41]

     22.     Second, the Oversight Board's actual contention here—that the Title III Debtors

and the Oversight Board can consent to a lifting of the stay without a Court order—has already

been rejected by this Court.  As discussed in the Stay Motion, separate from the Stay Order, on

October 12, 2017, this Court entered an order (the "Stay Procedures Order")[42] directing the Title

III Debtors to file lift stay motions every sixty days identifying **consensual, agreed-to** stay

modifications and seeking Court approval thereof.[43]  Since then, the Title III Debtors have

complied with the Stay Procedures Order and sought relief from the automatic stay in order to

effectuate even the consensual settlement of claims.[44]

---

[37]    11 U.S.C. § 362(a)(3).

[38]    11 U.S.C. § 362(a)(4).

[39]    11 U.S.C § 362(a)(6).

[40]    11 U.S.C. § 362(a)(7).

[41]    Stay Order ¶ 3 (emphasis added).

[42]    *Order Directing the Debtors to Submit a Revised Proposed Order in Connection with Debtors Entities' Motion to Amend Second Amended Notice, Case Management and Administrative Procedures to Further Revise Protocol for Stay Relief Motions* [Docket No. 1434]. ("Section 362(d) of the title 11 of the United States Code, made applicable to these proceedings by 48 U.S.C § 2161, provides that the 'Court shall grant relief from the [automatic] stay" on "request of a party in interest and after notice and a hearing.'").

[43]    *Id.*

[44]    *See e.g.*; *Debtors' Fifth Omnibus Motion for Approval of Modifications to the Automatic Stay* [Docket No. 3781] Ex. 1, at page 1, modification number 2 and page 6, modification number 14; *Debtors' Fourth Omnibus*

23.     If the Stay Procedures Order requires relief from the automatic stay in connection

with consensual settlement of claims (which the Objectors do not dispute), it surely requires such

relief with respect to the GDB Restructuring.  If consented-to actions to settle claims asserted

against the Title III Debtors did not implicate the stay, then the Court would not have required a

procedure in which the Title III Debtors must request Court approval of precisely these types of

actions.  Thus, the Court's order requiring that the stay only be lifted upon Court order is now

law of the case.[45]  Moreover, the GDB RSA itself states that it is "part of a proposed settlement

of matters that could otherwise be the subject of litigation."[46]  Just as the Title III Debtors must

obtain an order lifting the stay in order to settle the claims of litigants under the Case

Management Procedures, they must be required to obtain such an order to settle the GDB's

claims against them.[47]

24.     More fundamentally, the actions taken by GDB pursuant to the GDB

Restructuring consist of more than just the use, sale, or lease of property as described in section

363; they are actions specifically designed to enforce the GDB's claims against the Title III

Debtors and to disallow the claims of the Title III Debtors against the GDB, including by

---

*Motion for Approval of Modifications to the Automatic Stay* [Docket No. 3320], Ex. 1, at page 3, modification number 3, and page 5, modification number 9.

[45]    *See Christianson v. Colt Indus. Operating Operating Corp.,* 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) ("As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983))).

[46]    GDB RSA ¶ 25.

[47]    This conclusion is further supported by the Court's opinion in the *Assured v. HTA* adversary proceeding with respect to section 922(d) of the Bankruptcy Code.  In that instance, the Court rejected the plaintiffs' theory that the stay exemption contained in section 922(d) exempts the enforcement actions of special revenue bondholders from the automatic stay, explaining that "the plain language and the legislative history of Section 922(d) suggest that Congress, **in granting the exemption, only permitted municipalities and others in possession of pledged special revenues to apply those revenues** to the relevant debt without running afoul of the automatic stay." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 582 B.R. 579, 596 (D.P.R. 2018) (emphasis added). In other words, because there is a special exception (*i.e.*, section 922(d)), the Title III Debtors can voluntarily apply special revenues to the underlying debt.  By clear implication, in the absence of the special exception in section 922(d) it would violate the stay for the Debtor to voluntarily pay the bondholders' claims—in other words, voluntary transfers are not excepted from the automatic stay.  .

handing out releases to the GDB Releasees.  Setoff is the classic example of such prohibited enforcement activity, defined as a "counter-claim demand which defendant holds against plaintiff"[48] and considered a "device[] ordinarily available to creditors seeking to recover from debtors."[49]  Setoff is available "only under the circumstances described in 11 U.S.C. § 553, and against a debtor already in bankruptcy only by seeking relief from the automatic stay" because "the bankruptcy laws are generally designed to maximize the debtor's assets for the benefit of all creditors, and allowing a creditor to invoke setoff might allow the creditor an unfair advantage over other creditors."[50]  The setoff of claims (in violation of the automatic stay) is one of the fundamental components of the GDB Restructuring.[51]  These points are uncontested and are alone sufficient to conclude that the GDB Restructuring violates the automatic stay (regardless of any arguments related to section 363 of the Bankruptcy Code).

## IV.   Section 304(i) Does Not Insulate GDB Restructuring from Stay Violation

25.    Section 304(i) of PROMESA allows for the holder of a claim to vote on or consent to a proposed modification of such claim in a Title VI case notwithstanding the automatic stay.  Section 304(i) does not apply here, however, because it is the GDB Restructuring Act—not the Title VI Proceeding—that effectuates the major stay violations raised by the Committee.  The GDB Restructuring Act is the vehicle for (a) the setoff of the Title III Debtors' deposits,[52] (b) the creation of a lien against public funds held in trust or in a fiduciary

---

[48]   *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996, 998–99 (1st Cir. 1993).

[49]   *Id.*

[50]   *Id.*

[51]   Section 553 of the Bankruptcy Code is incorporated into Title III of PROMESA, and expressly makes the exercise of setoff subject to section 362.  11 U.S.C. § 553(a).  The Committee reserves the right to assert in other pleadings that the GDB Restructuring violates section 553's requirements for set off or Puerto Rico law with respect to set off, independent of automatic stay considerations.

[52]   GDB Restructuring Act, art. 302.

14

capacity until they are to be transferred to the Recovery Authority,[53] (c) the transfer of

substantially all of GDB's valuable assets, including public funds, to the Recovery Authority

(and authorization of such transfer),[54] (d) the releases handed out to the GDB Releasees,[55] (e) the

elimination of the Title III Debtors' rights with respect to challenges to the GDB Restructuring,[56]

and (f) a broad exculpation of any of the Title III Debtors' claims against parties based on

actions in connection with the GDB Restructuring. [57]  Indeed, GDB and AAFAF emphasize that

the Title VI case is on a separate "parallel path"[58] apart from the GDB Restructuring Act.[59]

      26.     Thus, that the Title III Debtors may be able to consent to a Title VI case without

violating the stay is irrelevant to the issue of whether the stay is violated as a result of separate

Puerto Rico legislation.  That the effectiveness of the Restructuring Act depends on the

effectiveness of the Title VI modification, and vice versa, does not change this conclusion.[60]  The

GDB cannot use a Puerto Rico claims-enforcement law (i.e., the GDB Restructuring Act) to

violate the automatic stay and then attempt to "cleanse" this stay violation through Title VI.[61]

---

[53]    GDB Restructuring Act, art. 402.

[54]    GDB Restructuring Act, art. 403(i) (authorizing transfer) and 404(a) (ordering transfer on closing date).

[55]    GDB Restructuring Act, art. 702.

[56]    GDB Restructuring Act, art. 703.

[57]    GDB Restructuring Act, art. 704.

[58]    GDB Obj. ¶ 17.

[59]    GDB Objection to Committee Standing ("Title VI's only impact on the rights of non-Bond holders is to
preclude them from launching a challenge to or collateral attack on the Qualifying Modification; Title VI
otherwise specifically preserves any rights they may have")

[60]    Nor does this interdependence raise any sort of ripeness issue, as the Title VI case is already under way and its
consummation is imminent.

[61]    Similarly, the fact that section 201(b)(1)(M) of PROMESA allows resources of one instrumentality to be used
for the benefit of another instrumentality pursuant to a Qualifying Modification does not mean that a Qualifying
Modification can be used as cover for violations of the automatic stay committed through illegal and void
legislation.  The GDB Restructuring is an attempt by GDB to collect on claims against the Title III Debtors, and
so is stayed, regardless of what section 201(b)(1)(M) of PROMESA allows.  Moreover, it is conceded that the
transfer of GDB's assets is effectuated through the GDB Restructuring Act and not through Title VI.  Nor is the
Oversight Board's suggestion that the court can order retroactive relief from stay relevant, as none of the
Objectors have requested such relief or said they will do so.  And if they do, they will have to confront the
difficult standard for obtaining retroactive stay relief in the First Circuit, where it is considered "the long-odds
exception, not the general rule."  *In re Soares,* 107 F.3d 969, 977 (1st Cir. 1997).

## V.   GDB Restructuring Is Not Excepted from Automatic Stay as Exercise of Commonwealth's Police Power Under Section 362(b)(4)

27.     The police and regulatory exception in section 362(b)(4) of the Bankruptcy Code is a narrowly construed exception to the automatic stay,[62] and it cannot be used to except the GDB Restructuring from the automatic stay because the GDB Restructuring has precisely nothing to do with the Commonwealth's police and regulatory power.  Section 362(b)(4) applies where, "the bankruptcy court, after assessing the totality of the circumstances" determines that "the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare" and is not "a governmental attempt to recover from property of the debtor estate."[63] In addition, proceedings do not fit within the section 362(b)(4) exception where they are "not predicated upon any allegation of wrongdoing."[64]  And the mere fact that a proceeding advances or reflects public policy does not mean that it will fall within section 362(b)(4) when the proceeding is focused on the pecuniary interests of particular parties.[65]

28.     As discussed above, the GDB Restructuring is, despite the Objectors' recitation of platitudes regarding its alleged public purpose, manifestly a purely financial measure to liquidate a non-operating financial institution and to recover property from the Title III Debtors for the benefit of GDB and certain of its favored creditors while handing out free releases to the GDB

---

[62]   *See In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004) ("[G]iven the expansiveness of subsection 362(a), the exception contained in subsection 362(b)(4) is to be narrowly construed.").

[63]   *In re McMullen*, 386 F.3d at 325.  *See also In re Nortel Networks, Inc.*, 669 F.3d 128, 139-40 (3d Cir. 2011). "[I]f the action is an attempt by the government to recover property from the estate, it has a pecuniary purpose and so remains subject to the stay."  *See also* S. Rep. No. 95–989 at 52 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5838 (section 362(b)(4) applies to where "**governmental unit is suing a debtor to prevent or stop violation of** fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay") (emphasis added).

[64]   *In re Nortel Networks, Inc.*, 669 F.3d 128, 141 (3d Cir. 2011).

[65]   *Id.* (though "the passage of the U.K. Pensions Act 2004 and the system established by the Act clearly reflect public policy decisions," "it [did] not follow . . . that the purpose of the particular U.K. [pension fund protection proceedings] at issue here was to protect the public" when such proceedings "focused on the pecuniary interests" of the U.K. Board of the Pension Protection Fund and pension beneficiaries).

and the GDB Releasees.[66]  The GDB Restructuring will do nothing to regulate the health and
safety of the people of Puerto Rico or punish wrongdoers for conduct that would put public
health and safety in jeopardy.  Moreover, the fact that public policy may have contributed to the
design of the GDB Restructuring does not mean that section 362(b)(4) applies when the GDB
Restructuring is so clearly undertaken to protect the pecuniary interests of particular favored
GDB creditors (its bondholders and certain municipal and private depositors), and not to protect
the public.  If anything the pecuniary interests of the public generally, as represented by the Title
III Debtors, are prejudiced by the deal.

29.     In any event, by its plain language, section 362(b)(4) has no applicability to the
setting off of accounts or the creation of liens, both of which are major components of the GDB
Restructuring.  Thus, even if section 362(b)(4) did apply, it would only be a partial defense.[67]

## VI.   Whether Title III Debtors Have Net Claims Against GDB Is Irrelevant and Not Yet Determined

30.     The Oversight Board's contentions that the "facts show the Debtors have no net
positive claims" against GDB and that "it is beyond credulity that the Commonwealth, HTA, and
PREPA can have meritorious claims" against GDB are completely irrelevant to the question of

---

[66]   The cases cited by the Oversight Board on this issue are completely unpersuasive, dealing with obvious
regulatory matters or situations that did not involve the automatic stay at all.  *See In re Commerce Oil Co., 847
F.2d 291, 292* (6th Cir. 1988) (proceeding to fix civil fines and penalties under state water quality regulatory
law); *See also Faitoute Iron & Steel Co. v. City of Asbury Park*, 316 U.S. 502, 503, 62 S. Ct. 1129, 1130, 86 L.
Ed. 1629 (1942) (dealing with constitutionality of state insolvency law, not automatic stay); *Home Bldg. &
Loan Ass'n v. Blaisdell*, 290 U.S. 398, 415–16, 54 S. Ct. 231, 231, 78 L. Ed. 413 (1934) (same).  And the
Oversight Board's citations to cases concerning the regulatory powers of the Puerto Rico government are
irrelevant—the Committee's contention is not that the Puerto Rico government cannot enact regulatory
legislation, but that the GDB Restructuring serves no regulatory purpose whatsoever and instead concerns itself
exclusively with the resolution of financial claims for the pecuniary benefit of certain favored GDB creditors.

[67]   Section 362(b)(4) only applies to an "action or proceeding" under paragraph "(1), (2), (3), or (6) of subsection
(a)" of section 362 to enforce a governmental unit's police or regulatory power.  11 U.S.C. 362(b)(4).  *See* Alan
N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.05[5][b] (16th ed. 2015)("The governmental
unit may prosecute an action and obtain a judgment or order, but may not take or perfect a lien on property of
the estate, setoff claims, or take other action that would violate the [automatic stay"]).  Setting off deposits and
creating liens are so obviously and purely financial in nature that there is no way such acts could be considered
excepted from the stay under section 362(b)(4) even absent the textual exclusion.

the automatic stay. There is no exception to the automatic stay based on a debtor's lack of net claims against a creditor.

31.     In addition to being irrelevant, the issue of the Title III Debtors' net claims against GDB is one that has not yet been decided—additional investigation and analysis is required to understand the true nature of such claims. Indeed, the Oversight Board's premature conclusion that the Title III Debtors have no net claims against the GDB is profoundly troubling given the Oversight Board's role in the Title III cases. The Oversight Board is the Title III Debtors' trustee and representative, a fiduciary charged with maximizing the Title III Debtors' assets.[68] Yet, without any analysis, it is eager to abandon potential claims against GDB in order to facilitate the GDB Restructuring.

32.     This is particularly troubling given that the Oversight Board's own investigator has produced a report that discusses, among other things, how GDB officials directed the Commonwealth to borrow additional debt even as they were plotting for a restructuring by hiring restructuring counsel and restructuring financial advisors **before the issuance of the $3.5 billion GO bond offering** in March 2014 (which they failed to disclose to the general market). These same GDB officials controlled the 2014 GO offering, as they did for all of the Puerto Rico bond

---

[68]   The Oversight Board has argued elsewhere that section 315(b) of PROMESA simply makes the Oversight Board the representative of the Debtor in a title III but does not make the Oversight Board a fiduciary. *See Motion of the Financial Oversight and Management Board for Puerto Rico to Dismiss Plaintiffs' First Amended Adversary Complaint Pursuant to Fed R. Civ. P. 12(B)(1) and 12(B)(6)*, at 30 n. 15, *Pinto Lugo v. United States* [Docket No. 36 in Adv Proc. No. 18-041-LTS]. The Supreme Court has recognized that a "trustee for a debtor out of possession" owes fiduciary obligations to creditors and shareholders. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("if a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"). Moreover, courts have explained that these fiduciary obligations arise out of the trustee's appointment, pursuant to 11 U.S.C. § 323, as the representative of the estate. *See, e.g.*, *In re WHET, Inc.*, 750 F.2d 149, 149 (1st Cir. 1984) ("A trustee has been appointed. He is a "representative of the estate," 11 U.S.C. § 323, and as such he owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests."); *In re Jack Greenberg, Inc.*, 189 B.R. 906, 910 (Bankr. E.D. Pa. 1995) ("Section 323 provides that the trustee is the representative of the estate. In that capacity the trustee is a fiduciary and intended to be independent."). Here, section 315(b) of PROMESA provides that the Oversight Board "is the representative of the debtor." Just as section 323 of the Bankruptcy Code makes the trustee a fiduciary, so too does section 315(b) of PROMESA.

offerings, utilizing proceeds of such offering to repay the GDB, so that GDB and its directors

and officers would be off the hook from any liability—all of this at a time when both the

Commonwealth and the GDB appeared to be at least undercapitalized, if not insolvent.[69] The

Committee has separately discussed its concerns regarding the Kobre & Kim report in its

informative motion, dated September 5, 2018 [Docket No. 3866].

## VII.    The Committee Has Standing to File Stay Motion and Has Properly Done So

33.    Finally, the Court should reject the Oversight Board's argument that the

Committee lacks standing to prosecute the Stay Motion and bring to the Court's attention the

automatic stay violations posed by the GDB Restructuring. Abundant authority establishes that

the automatic stay protects creditors as well as debtors,[70] and here the Committee clearly has

standing as a party in interest under section 1109(b) of the Bankruptcy Code.[71] Moreover,

---

[69]    *See* Official Statement for 2014 GO Bonds (Mar. 11, 2014) (available at
http://www.gdbpr.com/investors_resources/documents/CommonwealthPRGO2014SeriesA-FinalOS.PDF)
("The Commonwealth will use the proceeds of the Bonds to (i) **repay amounts due to Government
Development Bank for Puerto Rico ('GDB') under certain lines of credit extended to the Commonwealth
and Puerto Rico Public Buildings Authority ('PBA').**") (emphasis added).

[70]    *See, e.g., In re Soares,* 107 F.3d 969, 977 (1st Cir. 1997) ("Because the stay is a **fundamental protection for
all parties affected** by the filing of a petition in bankruptcy, it should not be dismantled without good reason.);
*In re Maloney,* 204 B.R. 671, 674 (Bankr. E.D.N.Y. 1996) (Swain, J.) ("The imposition of the automatic stay
**protects the estate for the benefit of creditors** and promotes the orderly disposition of the property of the
estate.") (emphasis added); *see also Ostano Commerzanstalt v. Telewide Sys., Inc*., 790 F.2d 206, 207 (2d Cir.
1986) *affirmed in part and reversed in part on other grounds*, ("Since the purpose of the stay is **to protect
creditors as well as the debtor,** the debtor may not waive the automatic stay.") (emphasis added).

[71]    *See, e.g., In re Indian Motocycle Co., Inc*., 266 B.R. 243, 263 (Bankr. D. Mass. 2001) (courts have "answered []
question clearly" in favor of allowing standing to creditors to raise "any violation of the automatic stay against
the bankruptcy estates which might affect its interests") (subsequent history omitted); *In re Lake Country Invs.
Ltd.*, No. 99-20287, 1999 WL 33490220, at *9 (Bankr. D. Idaho Sept. 22, 1999) (section 1109(b) gives a party
in interest right to "bring[] a potential or actual stay violation to the attention of the Court"); *see also* 7 *Collier
on Bankruptcy* ¶ 1109.04 (16th ed. 2018) ("[S]ection 1109(b) should be interpreted as written to permit any
party in interest to raise, appear and be heard with respect to any issue in the case, regardless of the nature of the
proceeding in which the issue arises."). In addition, if the Committee has standing to intervene in an adversary
proceeding under section 1109(b), as was recently clarified by the First Circuit Court of Appeals, it clearly has
standing to enforce the automatic stay. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico,*
872 F.3d 57, 60 (1st Cir. 2017) (holding that Committee had standing under section 1109(b) to intervene in
adversary proceeding). Further, though the First Circuit in *dicta* in *F.D.I.C. v. Shearson-Am. Exp., Inc*., 996
F.2d 493, 497 (1st Cir. 1993) questioned a creditor's standing to challenge an alleged violation of the stay
(without deciding the issue), that statement was based on a citation to *In re Pecan Groves of Arizona,* 951 F.2d
242, 245 (9th Cir.1991), in which the Ninth Circuit denied a creditor's standing **in a chapter 7 case** (where
section 1109(b) does not apply) and only with regard to the specific issue of whether a creditor could appeal

19

because Committee has standing to object to GDB's proofs of claim, it must have standing to seek enforcement of the automatic stay to protect its ability to contest such proofs of claim.[72]

34.     The Court should also reject the argument that the Committee has pursued an improper procedure by filing the Stay Motion because section 601(n) of PROMESA establishes a procedure for contesting a Title VI Qualifying Modification.  The existence of one procedure in a separate court proceeding does not deprive the Committee of its ability to raise violations of the Bankruptcy Code in these Title III cases.  The argument that the Committee must raise Title III issues in the Title VI Proceeding makes no sense at all and is, in fact, another attempt by the Oversight Board to muzzle the Committee.  The automatic stay is a foundational element of the Title III process, and the Oversight Board's assertion that there is no procedure to ensure that the automatic stay is enforced simply cannot be countenanced.[73]

*[Remainder of page intentionally left blank.]*

---

where the trustee failed to do so.  *See St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 542–43 (5th Cir. 2009) (explaining and criticizing *Pecan Groves*).

[72]   *See* footnote 10 supra.

[73]   The Objectors are also wrong when they state that the Committee, in filing the Stay Motion, is itself violating the stay.  Oversight Board Obj., at 14 n. 21, GDB Obj. at ¶ 3.  The automatic stay does not apply to actions in the Bankruptcy Court; the Court expressly recognized this in the Stay Order, which states that "nothing in this Order shall be deemed to interfere with any party's right to bring, prosecute, or to otherwise litigate or engage in an adversary proceeding or contested matter in these Title III Cases against any other party."  Stay Order ¶14.

WHEREFORE, the Committee respectfully requests that the Court enforce the automatic stay and the Stay Order by entering an order declaring that (a) the GDB Restructuring violates the automatic stay under section 362 of the Bankruptcy Code and the Stay Order, (b) any limitations on or releases of claims that have been or may be asserted by the Title III Debtors against GDB or related third-parties are void, (c) any transfer or "shielding" of assets pursuant to the GDB Restructuring that could have been used, prior to the implementation of the GDB Restructuring, to satisfy claims of the Title III Debtors by GDB, is void, and (d) granting such other relief as is just and proper

Dated:  September 6, 2018                    */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James T. Grogan, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesgrogan@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419

Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*