# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ----------------------------------------------------------------------- X | | |
| | : | |
| In re: | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | Case No. 17-BK-3283 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO, et al., | : | (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |
| ----------------------------------------------------------------------- X | : | |
| | : | |
| THE OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS OF THE DEBTORS (OTHER THAN | : | Adv. Proc. No. __ |
| COFINA), | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT OF OFFICIAL** |
| v. | : | **COMMITTEE OF** |
| | : | **UNSECURED CREDITORS** |
| THE COMMONWEALTH OF PUERTO RICO, THE | : | **OF ALL TITLE III** |
| PUERTO RICO FISCAL AGENCY AND FINANCIAL | : | **DEBTORS (OTHER THAN** |
| ADVISORY AUTHORITY, THE GOVERNMENT | : | **COFINA) FOR** |
| DEVELOPMENT BANK FOR PUERTO RICO, AND THE | : | **DECLARATORY** |
| FINANCIAL OVERSIGHT AND MANAGEMENT | : | **JUDGMENT WITH** |
| BOARD FOR PUERTO RICO, | : | **RESPECT TO GDB** |
| | : | **RESTRUCTURING** |
| | : | |
| Defendants. | : | |
| ----------------------------------------------------------------------- X | | |

---

[1]   The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA")  (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

Pursuant to Federal Rules of Bankruptcy Procedure 7001(2), (7), and (9), made applicable to these Title III cases by Section 310 of PROMESA (48 U.S.C. § 2170), the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee"), by and through its undersigned counsel, alleges as follows:

## NATURE OF PROCEEDING

1.      Long before the commencement of these Title III cases, the Government Development Bank for Puerto Rico ("GDB"), as financial advisor to the Title III Debtors, was the architect with various financial institutions of many of the financial maneuvers that led to the Title III Debtors' current fiscal crisis.  As a result of the fiscal crisis, GDB was operationally wound down and ceased operations more than a year ago, but former GDB insiders remain involved in all aspects of Puerto Rico's restructuring efforts.  Indeed, current and former GDB insiders are now (i) members of the Oversight and Management Board for Puerto Rico (the "Oversight Board"), (ii) officers of the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), (iii) managing directors of AAFAF's financial advisor, or (iv) the executive director of a GDB bondholder group supporting the transaction (the so-called "Bonistas Del Patio").

2.      These individuals would prefer that this Court "bury" GDB before the Committee and other interested parties have the opportunity to perform the autopsy.  To that end, they are attempting to do what PROMESA does not allow—restructure all of GDB's debts and liquidate all of its assets outside of Title III pursuant to a "home-baked" chapter 7 equivalent known as the *Government Development Bank of Puerto Rico Debt Restructuring Act* (the "GDB Restructuring Act"), which was enacted specifically to effectuate the restructuring of GDB and all related transactions (collectively, the "GDB Restructuring").

2

3.     The GDB Restructuring contemplates the restructuring of the unsecured GDB bondholders' and certain depositors' claims through a purported "Qualifying Modification" under PROMESA Title VI for which GDB has already sought approval in an application (the "Title VI Application" or the "Application") filed in its Title VI case.  *See* 3:18-cv-01561-LTS (D. P.R.) [Docket No. 1].  The claims of the Title III Debtors and certain other government depositors are not being restructured as part of the purported Qualifying Modification.  Rather, their claims are being restructured solely through transactions to be effectuated pursuant to the GDB Restructuring Act, which purports to release any rights or claims of the Title III Debtors against GDB or its current or former officers, directors, employees, agents, or representatives (collectively, the "GDB Releasees") and to deprive the Title III Debtors and any other government entities of standing to challenge the GDB Restructuring.

4.     Even if no potential liability claims against the GDB Releasees were being released, the GDB Restructuring effectively disallows any claims of the Title III Debtors against GDB.  Indeed, not even the meager claims the Title III Debtors are allowed to assert could be satisfied because GDB assets that could satisfy such claims today are being transferred for the exclusive benefit of the certain favored GDB creditors.  The GDB Restructuring proposes, among other things, to (i) offset the public funds deposited with GDB by the Title III Debtors against GDB's alleged outstanding loans to the Title III Debtors, (ii) transfer all of the valuable assets at GDB (much of which consists of deposits of public funds held in trust or in a fiduciary capacity) to the Recovery Authority (as defined below) for the primary benefit of GDB's unsecured bondholders, and (iii) release GDB and the GDB Releasees from any claims that could be brought against them by the Title III Debtors.

5.     This attempt to circumvent PROMESA is unavailing and cannot stand because, among other reasons, PROMESA expressly prevails over any general or specific Commonwealth

3

law that is inconsistent with its provisions.  Accordingly, the Committee seeks a judgment declaring that the GDB Restructuring Act is invalid and unenforceable as set forth below.

## **PARTIES**

6.      Plaintiff the Committee is the official committee of unsecured creditors in the Commonwealth, HTA, PREPA, and ERS Title III cases.

7.      Defendant the Commonwealth of Puerto Rico is a territory of the United States.

8.      Defendant AAFAF is a public corporation and instrumentality of the Commonwealth.

9.      Defendant GDB is a public corporation and instrumentality of the Commonwealth.

10.      Defendant the Oversight Board is a non-elected board established by the United States Congress through PROMESA.   Pursuant to Section 315(b) of PROMESA, the Oversight Board is the representative of each Title III Debtor.

## **JURISDICTION AND VENUE**

11.      This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to Section 306(a) of PROMESA (48 U.S.C. § 2166(a)).

12.      Venue is proper in this district pursuant to Section 307(a) of PROMESA (48 U.S.C. § 2167(a)).

13.      An actual and justiciable controversy exists within the meaning of 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

14.     The Committee is a party in interest pursuant to Section 1109(b) of the

Bankruptcy Code (11 U.S.C. § 1109(b)), which provides that "[a] party in interest, including . . .

a creditors' committee . . . may raise and may appear and be heard on any issue in a case under

this chapter."

## **BACKGROUND**

### I.     **GDB And Its Creditors**

15.     Historically, GDB served as a depository of funds for Puerto Rico government

entities and as the Puerto Rico government's fiscal agent, paying agent, and financial advisory

authority.  GDB also served as a "financial advisor" in all government debt offerings, controlling

(from the government's perspective) practically every aspect of those offerings, including the

selection of underwriters and counsel.  According to a report of the U.S. General Accounting

Office (the "GAO"), GDB was responsible for "facilitating rising debt levels [that] enabled

Puerto Rico to continue to use debt to finance operations."  U.S. GAO, "Factors Contributing to

the Debt Crisis and Potential Federal Actions to Address Them," at 33-34 (May 2018), *available

at* https://www.gao.gov/assets/700/691675.pdf ("GAO Report").

16.     Over time, GDB also became an issuer of debt and a provider of inter-government

financing for the Commonwealth and its public corporations, instrumentalities, and

municipalities.  According to the same GAO Report, the "GDB provided loans to government

entities valued at up to 60 percent of GDB's total assets."  *Id*. at 36-37.

17.     On April 6, 2016, GDB's fiscal agent and financial advisor responsibilities were

transferred to AAFAF, which was created pursuant to the *Puerto Rico Emergency Moratorium

and Financial Rehabilitation Act*, Act No. 21-2016.  Also in 2016, GDB stopped accepting

deposits and otherwise ceased performing banking functions (if any).  Until GDB wound down

its operations, the Title III Debtors were, upon information and belief, required to deposit all of their funds with GDB.

18.     The creditors of GDB include (i) the holders of GDB bonds, all of which are unsecured and more than $100 million of which were guaranteed by the Commonwealth (the "GDB Bondholders"), (ii) the municipalities that deposited funds with GDB (the "Municipal Depositors"), (iii) certain private entities that deposited funds with GDB (the "Private Entity Depositors"), and (iv) the Title III Debtors and other non-municipal government entities (the "Non-Municipal Government Entities") that deposited public funds with GDB.

19.     GDB filed a proof of claim against the Commonwealth, and the Title III Debtors, in turn, hold various claims against GDB.  Although the Committee is still investigating GDB's activities related to the Title III Debtors, the Title III Debtors hold claims for amounts on deposit, and may also hold claims against GDB for the recovery of avoidable transfers, among others. The Committee has attempted for over a year to obtain discovery in order to investigate the Title III Debtors' claims against GDB, but numerous requested documents have not been provided.

20.     According to GDB's New Fiscal Plan, which was certified on April 20, 2018, as of December 31, 2017, GDB received deposits of approximately $3.5 billion and owed unsecured bond debt, including accrued interest, of over $4 billion.  According to GDB's Solicitation Statement, as of July 1, 2018, GDB held approximately $624.8 million in cash and cash equivalents.

## II.     The GDB Restructuring

21.     To effectuate the GDB wind-down, AAFAF (which now employs many of the former officers and other employees of GDB) proposed a scheme pursuant to the terms of the Restructuring Support Agreement between AAFAF, GDB, and certain GDB creditors (the "RSA"), as well as a legislative framework for that RSA that became the GDB Restructuring

Act.  To implement the RSA and the GDB Restructuring, GDB filed its Title VI Application on

August 10, 2018.

22.     The GDB Restructuring will be implemented in two parts:

23.      First, the GDB Bondholders, the Municipal Depositors, and Private Entity

Depositors will be allowed to participate in and vote on a Title VI "Qualifying Modification."

Upon consummation of the Title VI case, these favored, but thus far unsecured, creditor groups

will exchange their old claims for new notes with a face of value of 55%, secured by all the

assets of a new governmental entity called the GDB Debt Recovery Authority (the "Recovery

Authority").  The Recovery Authority will receive substantially all the liquid assets held by

GDB, including GDB's municipal loan portfolio, a portion of its public entity loan portfolio, its

real estate owned assets, and its unencumbered cash.

24.     Second, the Commonwealth and its other instrumentalities, including the other

Title III Debtors (referred to in the Title VI Application as "Non-Municipal Government

Entities"), will not be able to participate in the Title VI case and will not be able to receive notes

backed by the assets of the Recovery Authority.  The disfavored Non-Municipal Government

Entities (which hold claims of the same priority as the claims of the GDB Bondholders) will

have any deposits held by GDB set off against purported loan balances owed to GDB, and those

holding net claims against GDB will receive, pursuant to the GDB Restructuring Act, a pro rata

share of interest in the "Public Entity Trust" that holds a single asset—GDB's alleged claim

against the Commonwealth.  This unliquidated interest in the Public Entity Trust (it may be

worthless because neither the Commonwealth nor GDB's fiscal plan makes provision for

payment of such yet-to-be-allowed claim) will be deemed to be in full satisfaction of any and all

claims the Title III Debtors may have against GDB.  In other words, the Title III Debtors'

deposit claims against GDB are being subordinated to the claims of the GDB Bondholders and other favored unsecured creditors.

25.     In addition, under the GDB Restructuring, the Commonwealth will be assuming approximately $312 million in liabilities on account of federal funds granted to the Commonwealth and municipalities pursuant to federal programs and deposited at GDB.  The Title III Debtors' and other Non-Municipal Government Entity deposit claims with respect to federal funds will also be eliminated in exchange for the potentially worthless interest in the Public Entity Trust, leaving all federal funds to be paid from future appropriations by the Commonwealth.  Consequently, any cash remaining at GDB from federal funds deposits will be part of the assets allocated to the Recovery Authority or retained by GDB.  It will not, however, be distributed to the intended beneficiary.  Thus the favored GDB creditors are allowed to transfer their claims to the Recovery Authority and will not suffer any dilution as a result of the "disappearance" of the federal funds.

26.     As a legal and practical matter, the purported Qualifying Modification and the GDB Restructuring Act cannot be separated because the transactions relating to the purported Qualifying Modification (*e.g.*, the creation of the Recovery Authority, the irrevocable transfer to that entity of GDB's cash, performing loans, and real estate, and the creation of statutory liens on those assets) are also being effectuated solely pursuant to the GDB Restructuring Act.

27.     In addition, the provisions of the GDB Restructuring Act relating to the Public Entity Trust become effective on the "Closing Date," which the Act defines as the effective date of the "Restructuring Transaction," which, in turn, is defined as "the transactions contemplated by, or in furtherance of, the Qualifying Modification," including the transactions relating to the Recovery Authority and its issuance of bonds.  The "Effective Date" of those transactions is defined as "the date on which the Qualifying Modification becomes conclusive and binding

8

pursuant to Section 601(m) of PROMESA," *i.e.*, the date on which the purported Qualifying

Modification is approved.

28.     Once approved by the Court, the "Qualifying Modification will be full, final,

complete, binding, and conclusive as to the territorial government Issuer, other territorial

instrumentalities of the territorial government Issuer, and any creditors of such entities, and

should not be subject to any collateral attack or other challenge by any entities in any Court or

other forum." In other words, it will bind the Title III Debtors and their creditors.[2] Moreover,

the GDB Restructuring Act purports to (i) release all the Title III Debtors' claims against GDB,

the Recovery Authority and the Public Entity Trust, and the GDB Releasees, (ii) eliminate the

standing of the Title III Debtors to challenge the GDB Restructuring or GDB Restructuring Act,

and (ii) exculpate any person for actions in accordance with the GDB Restructuring Act or

Qualifying Modification.

29.     Article 702 of the GDB Restructuring Act—entitled "Binding Effect of

Restructuring Transaction on Government Entities"—provides that:

> [a]ll transactions effected pursuant to this Act (including, without limitation,
> pursuant to determinations made by AAFAF or GDB under this Act) **shall be
> valid and binding with respect to all Government Entities as of the Closing
> Date**.  Other than as expressly provided in this Act, in the Ancillary Agreements
> and the Public Entity Deed of Trust, **no Government Entity shall have any
> further rights or claims against GDB**, the Recovery Authority and the Public
> Entity Trust, **and any officers, directors, employees, agents and other
> representatives thereof, of whatsoever nature and kind, whether now existing
> or hereinafter arising, based, in whole or in part, on facts, whether known or
> unknown, existing or occurring on or prior to the Closing Date**.  Each
> Government Entity is hereby deemed to **forever waive, release and discharge
> GDB**, the Recovery Authority and the Public Entity Trust, **and any officers,**

---

[2]     The term "territorial government" in section 601(m)(2) is defined in PROMESA as the "government of a
covered territory."  PROMESA § 5(18).  Title VI of PROMESA defines "issuer" as, among other things, a
"Territory Government Issuer" (PROMESA § 601(a)(8)), which, in turn, means the "Government of Puerto
Rico."  PROMESA § 601(a)(15).  Moreover, approximately $110 million of aggregate principal amount and
approximately $19 million in accrued and unpaid interest with respect to the GBCP benefits from a guarantee
from the Commonwealth of Puerto Rico.  Thus, section 601(m)(2) means that any Title VI approval order
entered by this Court will have preclusive and binding effect on the unsecured creditors of Puerto Rico.

**directors, employees, agents and other representatives thereof** from any and all such claims.  (emphasis added).

30.     Like the transactions relating to the Public Entity Trust, Article 702's release of rights and claims becomes effective on the "Closing Date," which, as set forth above, is the date on which the purported Qualifying Modification is approved by the Court.

31.     Accordingly, if this Court approves the purported Qualifying Modification, any rights or claims of the Title III Debtors against GDB or the GDB Releasees relating to GDB's role in the Puerto Rico's financial crisis, including its role as financial advisor to the Title III Debtors, will be automatically extinguished.

32.     Furthermore, Article 703 of the GDB Restructuring Act provides that, "[n]otwithstanding any other law of the Government of Puerto Rico, no Government Entity shall have authority or standing to challenge [the] Act, the Restructuring Transaction, or the other transactions contemplated in this Act in any local or federal court."

33.     Thus, the GDB Restructuring eliminates the Title III Debtors' claims against GDB, eliminates the Title III Debtors' claims against the GDB Releasees, and subordinates the Title III Debtors' claims by transferring all of the valuable assets at GDB to the Recovery Authority, an entity which was created to shield GDB's assets from distribution to the Title III Debtors.

**FIRST CAUSE OF ACTION**

**(Declaration of Invalidity and Unenforceability of
GDB Restructuring Act as *De Facto* Bankruptcy Law)**

34.     Paragraphs 1-33 are incorporated by reference as if fully set forth herein.

35.     The Bankruptcy Clause of the U.S. Constitution prevents states and territories from enacting bankruptcy laws that either result in a discharge of creditor claims or exist in the same area as a federal bankruptcy law.

10

36.     Congress enacted PROMESA, a federal bankruptcy law, to provide a mechanism for the Commonwealth of Puerto Rico and related government entities to restructure their debts, and/or liquidate their assets, if need be.

37.     Section 4 of PROMESA provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."  48 U.S.C. § 2103.  Title III of PROMESA provides the means for a Puerto Rico government entity to restructure its debts and/or liquidate its assets.

38.     Thus, the only process available to a Puerto Rico government entity to restructure all of its debts and liquidate all of its assets is through Title III of PROMESA.  Title VI of PROMESA does not provide such a process as it is limited in scope according to its terms.

39.     The Commonwealth cannot enact its own liquidation statute because any such statute would be preempted by PROMESA pursuant to the Bankruptcy Clause.

40.     The GDB Restructuring Act amounts to a *de facto* bankruptcy law that discharges or otherwise extinguishes most claims against GDB, transfers all of GDB's assets to other entities, and exists in the same area covered by Title III of PROMESA.

41.     The GDB Restructuring Act is also inconsistent with PROMESA Title III because, among other things, it transfers all of GDB's most valuable assets, which today could be used to satisfy claims of the Title III Debtors, to the Restructuring Authority for the exclusive benefit of certain preferred creditors (the GDB Bondholders), leaving the Title III Debtors and other Non-Municipal Government Entities with potentially valueless claims.  No similar restructuring could be accomplished under PROMESA.

42.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is invalid and unenforceable because it amounts to a *de facto* bankruptcy law that is inconsistent with Title III of PROMESA and it is preempted by the Bankruptcy Clause.

## SECOND CAUSE OF ACTION

**(Declaration of Invalidity and Unenforceability Due to Inconsistency
With Third-Party Release Prohibition of PROMESA Section 601(m)(2))**

43.    Paragraphs 1-42 are incorporated by reference as if fully set forth herein.

44.    Section 601(m)(2) of PROMESA provides that "[u]pon the entry of an order [approving a Qualifying Modification], the conclusive and binding Qualifying Modification shall be valid and binding on any person or entity asserting claims or other rights . . . [but] **no claim or right that may be asserted by any party in a capacity other than holder of a Bond affected by the Qualifying Modification shall be satisfied, released, discharged, or enjoined by this provision**." 48 U.S.C. § 2231(m)(2) (emphasis added).

45.    Section 4 of PROMESA provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act." 48 U.S.C. § 2103.

46.    Article 702 of the GDB Restructuring Act provides that "[a]ll transactions effected pursuant to this Act (including, without limitation, pursuant to determinations made by AAFAF or GDB under this Act) shall be valid and binding with respect to all Government Entities as of the Closing Date. Other than as expressly provided in this Act, in the Ancillary Agreements and the Public Entity Deed of Trust, no Government Entity shall have any further rights or claims against GDB, the Recovery Authority and the Public Entity Trust, and any officers, directors, employees, agents and other representatives thereof, of whatsoever nature and kind, whether now existing or hereinafter arising, based, in whole or in part, on facts, whether known or unknown, existing or occurring on or prior to the Closing Date. Each Government Entity is hereby deemed to forever waive, release and discharge GDB, the Recovery Authority and the Public Entity Trust, and any officers, directors, employees, agents and other representatives thereof from any and all such claims."

12

47.     Article 702 is inconsistent with Section 601(m)(2) of PROMESA to the extent it purports to release GDB and the GDB Releasees from any claims of the Title III Debtors that are unrelated to Bonds affected by the purported Qualifying Modification.

48.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is inconsistent with Section 601(m)(2) of PROMESA and therefore preempted pursuant to Section 4 of PROMESA insofar as it purports to release rights and claims of the Title III Debtors unrelated to any Bond affected by the purported Qualifying Modification, including any claims against GDB and the GDB Releasees.

## THIRD CAUSE OF ACTION

### (Declaration of Invalidity and Unenforceability Due to Inconsistency With PROMESA-Incorporated Bankruptcy Code Section 362)

49.     Paragraphs 1-48 are incorporated by reference as if fully set forth herein.

50.     Pursuant to Section 4 of PROMESA, "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."  48 U.S.C. § 2103.

51.     Upon commencement of a Title III case, Section 362 of the Bankruptcy Code, as incorporated and made applicable to these Title III cases by PROMESA Section 301(a), immediately imposes an automatic stay of, among other things:  (i) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"; (ii) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"; (iii) "any act to create, perfect, or enforce any lien against property of the estate"; (iv) "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the

13

case under this title"; and (v) "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."

52.     The automatic stay in Section 362 became applicable to the Title III Debtors upon their filing of applications for relief under title III of PROMESA.

53.     In addition, this Court's Stay Order [Docket No. 543] incorporates the automatic injunctions set forth in Section 362(a) of the Bankruptcy Code, specifically ordering that "all persons," "foreign and domestic governmental units," and "all other entities . . . are stayed, restrained, and enjoined" from taking actions prohibited by Sections 362(a)(1) through (a)(7) of the Bankruptcy Code.

54.      As provided in Bankruptcy Code Section 362(d), the automatic stay may not be modified without court approval.

55.     The GDB Restructuring Act's purported release of the Title III Debtors' rights and claims violates the automatic stay because, among other things, it constitutes an attempt to take possession of or exercise control over property of the Title III Debtors.

56.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is inconsistent with the automatic stay and therefore invalid and unenforceable in accordance with Section 4 of PROMESA insofar as it purports to release the Title III Debtors' rights and claims against the GDB Releasees.

## FOURTH CAUSE OF ACTION

### (Declaration of Invalidity and Unenforceability Due to Inconsistency With PROMESA-Incorporated Bankruptcy Code Section 926)

57.     Paragraphs 1-56 are incorporated by reference as if fully set forth herein.

58.     Section 4 of PROMESA provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."  48 U.S.C. § 2103.

14

59.     Section 926(a) of the Bankruptcy Code, as incorporated and made applicable to these Title III cases by PROMESA Section 301(a), provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title [an "Avoidance Claim"], then on request of a creditor, the court may appoint a trustee to pursue such cause of action."  11 U.S.C. § 926(a).

60.     The GDB Restructuring Act purports to disallow or otherwise extinguish any Avoidance Claims of the Title III Debtors against GDB and the GDB Releasees.

61.     Thus, if the GDB Restructuring Act is approved, the Title III Debtors' Avoidance Claims will be extinguished and the right to seek the appointment of a trustee to pursue such claims pursuant to Section 926(a) of the Bankruptcy Code will be rendered illusory.

62.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is inconsistent with PROMESA and therefore invalid and unenforceable in accordance with Section 4 of PROMESA insofar as it would deprive creditors of the Title III Debtors of their right under Section 926(a) of Bankruptcy Code to seek appointment of a trustee to pursue Avoidance Claims.

## **FIFTH CAUSE OF ACTION**

### **(Declaration of Invalidity and Unenforceability
Due To Inconsistency With PROMESA Section 601(n)(2))**

63.     Paragraphs 1-62 are incorporated by reference as if fully set forth herein.

64.     Section 4 of PROMESA provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."  48 U.S.C. § 2103.

65.     Section of 601(n)(2) of PROMESA provides that "notwithstanding section 106(e) of this title, there shall be a cause of action to challenge unlawful application of this section."  48 U.S.C. § 2231.

15

66.     Article 703 of the GDB Restructuring Act provides that "[n]otwithstanding any other law of the Government of Puerto Rico, no Government Entity shall have the authority or standing to challenge [the] Act, the Restructuring Transaction, or the other transactions contemplated by [the] Act in any local or federal court."

67.     Article 703 of the GDB Restructuring Act is inconsistent with PROMESA Section 601(n)(2) insofar as purports to deprive the Title III Debtors of standing to challenge the unlawful application of Title VI in connection with the GDB Restructuring.

68.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is inconsistent with PROMESA Section 601(n)(2) and therefore invalid and unenforceable in accordance with Section 4 of PROMESA insofar as it purports to deprive the Title III Debtors of standing they would otherwise have under PROMESA to challenge the unlawful application of Title VI.

### SIXTH CAUSE OF ACTION

**(Declaration of Invalidity and Unenforceability
Due to Supremacy Clause of U.S. Constitution)**

69.     Paragraphs 1-68 are incorporated by reference as if fully set forth herein.

70.     Article VI, Clause 2 of the U.S. Constitution provides that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

71.     Article 703 of the GDB Restructuring Act purports to deprive the Title III Debtors of authority or standing to challenge the GDB Restructuring Act, the GDB Restructuring, or any related transactions in any federal court.

72.     A Commonwealth law cannot dictate what entity may or may not be heard in federal court or what federal claims a federal court may hear.

73.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is invalid and unenforceable insofar it purports to deprive the Title III Debtors of standing they would otherwise have in federal court.

<u>**SEVENTH CAUSE OF ACTION**</u>

**(Declaration of Invalidity and Unenforceability
Due to Inconsistency With PROMESA Section 201(b)(1)(M))**

74.     Paragraphs 1-73 are incorporated by reference as if fully set forth herein.

75.     Section 4 of PROMESA provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."  48 U.S.C. § 2103.

76.     Section 201(b)(1)(M) of PROMESA provides that "[a] Fiscal Plan shall . . . ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under title III, or a Qualifying Modification approved under title VI."  48 U.S.C. § 2141(b)(1)(M).

77.     On July 12, 2017, the Oversight Board certified a Fiscal Plan for GDB (the "<u>GDB Fiscal Plan</u>") that contemplates the transfer of all of GDB's most valuable assets to the Recovery Authority, which is also a Commonwealth instrumentality, as provided for in the GDB Restructuring Act.

78.     GDB is expressly not seeking approval of these transfers in its Title VI case.

79.     The Commonwealth is not seeking approval of these transfers in its Title III case.

80.     These transfers are not permitted by the Puerto Rico Constitution.

17

81.     The GDB Fiscal Plan is therefore not in compliance with PROMESA Section 201(b)(1)(M).

82.     As recited in Article 102 of the GDB Restructuring Act, the purpose of the Act is to establish the legislative framework for the GDB Restructuring, which, among other things, "is necessary to ensure compliance with the GDB Fiscal Plan."

83.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is inconsistent with PROMESA and therefore invalid and unenforceable in accordance with PROMESA Section 4 because a core purpose of the GDB Restructuring is to ensure compliance with a Fiscal Plan that is not in compliance with PROMESA Section 201(b)(1)(M).

## EIGHTH CAUSE OF ACTION

### (Declaration of Invalidity and Unenforceability
### Due to Violation Of PROMESA Section 303)

84.     Paragraphs 1-83 are incorporated by reference as if fully set forth herein.

85.     Section 303 of PROMESA provides that "a territory law prescribing a method of composition of indebtedness or a moratorium law, but solely to the extent that it prohibits the payment of principal or interest by an entity not described in Section 109(b)(2) of Title 11 . . . , may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium."  48 U.S.C. § 2163(1).

86.     The GDB Restructuring Act prescribes a method of composition of indebtedness because it dispenses of or reduces GDB's obligations to its various creditors.

87.     The method of composition of indebtedness prescribed by the GDB Restructuring Act prohibits GDB from paying interest and principal because its obligation to pay interest and principal to the Title III Debtors will be extinguished, and GDB will be stripped of any assets from which interest and principal could be paid to such Title III Debtors.

88.     The GDB is not an entity described in Section 109(b)(2) of Title 11 because it has stopped receiving deposits and otherwise ceased functioning as a "bank," which is the only type of entity described in Section 109(b)(2) that could conceivably include GDB.

89.     The Title III Debtors as creditors of GDB have not consented to the GDB Restructuring, which, as discussed above, is a territory law prescribing a method of composition of indebtedness that prohibits the payment of principal or interest.

90.     Accordingly, the Committee is entitled to a declaration that the GDB Restructuring Act is invalid and unenforceable insofar as it violates Section 303 of PROMESA.

## PRAYER FOR RELIEF

WHEREFORE, the Committee respectfully requests judgment as follows:

A.     On the First Cause of Action, declaring that the GDB Restructuring Act is invalid and unenforceable because it amounts to a *de facto* bankruptcy law that is inconsistent with Title III of PROMESA;

B.     On the Second Cause of Action, declaring that the GDB Restructuring Act is inconsistent with Section 601(m)(2) of PROMESA and therefore preempted pursuant to Section 4 of PROMESA insofar as it purports to release rights and claims of the Title III Debtors unrelated to any Bond affected by the purported Qualifying Modification, including any claims against the GDB Releasees;

C.     On the Third Cause of Action, declaring that the GDB Restructuring Act is inconsistent with the automatic stay and therefore invalid and unenforceable in accordance with Section 4 of PROMESA insofar as it purports to release the Title III Debtors' rights and claims against the GDB Releasees;

D.     On the Fourth Cause of Action, declaring that the GDB Restructuring Act is inconsistent with PROMESA and therefore invalid and unenforceable in accordance with

Section 4 of PROMESA insofar as it would deprive creditors of the Title III Debtors of their

right under Section 926(a) of Bankruptcy Code to seek appointment of a trustee to pursue

Avoidance Claims;

E.      On the Fifth Cause of Action, declaring that the GDB Restructuring Act is

inconsistent with PROMESA Section 601(n)(2) and therefore invalid and unenforceable in

accordance with Section 4 of PROMESA insofar as it purports to deprive the Title III Debtors of

standing they would otherwise have under PROMESA to challenge the unlawful application of

Title VI;

On the Sixth Cause of Action, declaring that the GDB Restructuring Act is invalid and

unenforceable insofar it purports to deprive the Title III Debtors of standing they would

otherwise have in federal court;

F.      On the Seventh Cause of Action, declaring that the GDB Restructuring Act is

inconsistent with PROMESA and therefore invalid and unenforceable in accordance with

Section 4 of PROMESA because a core purpose of the GDB Restructuring is to ensure

compliance with a Fiscal Plan that is not in compliance with PROMESA Section 201(b)(1)(M).

G.      On the Eighth Cause of Action, that the GDB Restructuring Act is invalid and

unenforceable insofar as it violates Section 303 of PROMESA; and

H.      Granting such other and further relief as the Court deems just and proper.

[SIGNATURES ON FOLLOWING PAGE]

Dated:   September 6, 2018   */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*