# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 3735, 3736, 3755**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**This Response relates to the Commonwealth, HTA, and PREPA, and shall be filed in Case Nos. 17 BK 3283-LTS, 17 BK 3567-LTS, and 17 BK 4780-LTS.** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"), | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |
|---|---|
| Debtor. | |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

**COMMONWEALTH'S RESPONSE TO
(A) OMNIBUS REPLY TO OPPOSITION TO MOTION REQUESTING
LIFTING OF THE STAY AND (B) MOTION REQUESTING HEARING ON 362
LIFTING OF THE STAY FILED BY AUTONOMOUS MUNICIPALITY OF PONCE**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this response (the "Response") to (a) the *Omnibus Reply to Opposition to Motion Requesting Lifting of the Stay* [ECF No. 3735] (the "Reply"), and (b) the *Motion Requesting Hearing on 362 Lifting of the Stay* [ECF No. 373] (the "Hearing Request"), both filed by the Autonomous Municipality of Ponce ("Movant"), pursuant to the Court's *Scheduling Order Regarding Hearing Request and Reply Filed by the Autonomous Municipality of Ponce* [ECF No. 3755].[2]

## PROCEDURAL BACKGROUND

1. On May 4, 2018, Movant filed the *Motion for Partial Lift of Stay* [ECF No. 3019] (the "Motion"), seeking relief from the automatic stay to allow the case captioned *Municipio de Ponce v. ACT, et al.,* Case No. JAC1993-0485 (the "Prepetition Action") before the Puerto Rico

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Response on behalf of the Commonwealth.

2

Court of First Instance (the "Commonwealth Court") to proceed, except for any evidentiary hearing on damages, and for the judgment entered on June 24, 1996 (the "Prepetition Judgment")[3] in the Prepetition Action to be enforced, except for any judgment or settlement for damages. Motion ¶¶ 9, 15. The Prepetition Judgment required the Commonwealth, as well as other parties, including the Puerto Rico Electric Power Authority ("PREPA") and the Puerto Rico Highways and Transportation Authority ("HTA" and together with PREPA and the Commonwealth, the "Debtors"), to complete all construction projects detailed in a prepetition *Agreement for the Development of Programed Projects between the Central Government and the Municipality of Ponce,* dated October 28, 1992 (the "Development Agreement").

2.  On July 5, 2018, the Commonwealth filed an objection to the Motion [ECF No. 3439] (the "Objection"), which was joined by PREPA and HTA [ECF Nos. 3440, 3661]. On August 3, 2018, Movant filed the Reply and the Hearing Request. The Reply raised for the first time the argument that the Title III Stay does not apply to "most of the projects" in the Prepetition Action because they "have to do with safety and environment implementing federal policy or Commonwealth federally authorized and delegated programs." Reply ¶¶ 2-5. Movant also seeks to have an evidentiary hearing to dispute the costs to the Debtors of compliance with the Prepetition Judgment cited in the Objection.

3.  On August 9, 2018, the Court directed the Debtors to file responses by August 15, 2018 at 5:00 p.m. (Atlantic Standard Time) regarding (1) the issues addressed in Section II and Section III of the Reply (Movant's PROMESA section 7 argument), and (2) their positions with respect to the Hearing Request [ECF No. 3755]. The deadline to submit the responses was extended to September 10, 2018 at 5:00 p.m. (AST) [ECF No. 3806].

---

[3] A certified translation of the Prepetition Judgment is annexed hereto as **Exhibit A**.

# ARGUMENT

4. The Motion should be denied because Movant has not established cause to lift the Title III Stay, as further explained in the Objection. Movant's new argument that "most of the projects" addressed in the Prepetition Action are excepted from the Title III Stay under PROMESA section 7 fails. Movant's new argument is premised on statements from the monitor in the Prepetition Action purporting to reach legal conclusions as to the applicability of PROMESA section 7 (*see* Reply ¶ 5). Regardless, the plain language of PROMESA section 7 and the facts underlying the Prepetition Judgment reveal that PROMESA section 7 is not implicated here.

5. Furthermore, no evidentiary hearing is necessary because this Court can determine, as a matter of law, that PROMESA section 7 does not except the Prepetition Action from the Title III Stay. Movant also seeks to have an evidentiary hearing to dispute *one* out of nine factors of the *Sonnax* analysis in the Objection that supports denial of the Motion. However, even assuming Movant's factual allegations as to the cost to the Debtors to comply with the Prepetition Judgment are correct, Movant still fails to show cause to lift the Title III Stay, and the *Sonnax* factors, taken as a whole, weigh in favor of denying the Motion.

## I. THE TITLE III STAY APPLIES TO THE PREPETITION ACTION

6. PROMESA section 7 does not except the Prepetition Action from the scope of the Title III Stay. Section 7 provides:

> Except as otherwise provided in [PROMESA], nothing in this Act shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory.

48 U.S.C.A. § 2106 (West 2017), PROMESA § 7. Movant argues that the Title III Stay does not apply because, under PROMESA section 7, the Prepetition Action involves projects that "have to

do with safety and environment implementing federal policy or Commonwealth federally authorized and delegated programs." Reply ¶ 5. Movant's argument, however, is unavailing under the plain language of PROMESA section 7.

7. First, section 7 is not an exception to the applicability of the Title III Stay, it is simply an interpretive provision stating that PROMESA does not excuse territorial governments or instrumentalities from compliance with federal and territorial laws and requirements protecting health, safety and the environment. Second, no federal or territorial requirements are implicated— in fact, the "requirements" on which Movant is relying are contractual in nature and are not imposed under Puerto Rico or Federal law. Third, the Development Agreement does not involve any federally authorized or federally delegated program. Fourth, the availability of federal funding does not turn a project to a federal program, and in any event, the application of federal funds is limited to certain of projects and is administered through Puerto Rico agencies and not directly by federal agencies.

8. **PROMESA Section 7 is Not an Exception to the Applicability of the Automatic Stay.** PROMESA section 7 is an interpretive provision that confers no new rights.[4] Rather, it is intended to ensure that PROMESA did not alter the scheme and administration of federal laws and programs protecting health, safety, and the environment. Section 7 is limited by other express provisions of PROMESA, as its first clause provides "[e]xcept as otherwise provided in [PROMESA] . . . ." PROMESA section 301(a) incorporates Bankruptcy Code section 362 in its entirety into Title III, subject only to the exceptions to the automatic stay under Bankruptcy Code section 362(b) that were also incorporated into PROMESA. Congress did not create an additional,

---

[4] Memorandum Order Overruling Objections and Adopting Report and Recommendation, at 7-8, *Asociacion de Salud Primaria de Puerto Rico, Inc. v. Commonwealth (In re Fin. Oversight & Mgmt. Bd.)*, 2018 U.S. Dist. LEXIS 120488, Adv. Proc. No. 17-AP-00227-LTS (D.P.R. July 10, 2018) [ECF No. 64] ("Section 7 provides interpretive direction only. It does not purport to confer new rights or create any cause of action . . . .").

5

"catch-all" exception to the automatic stay in section 7. Where Congress wanted to create exceptions to the automatic stays arising under PROMESA, it did so expressly as evidenced by PROMESA section 405(c), which provides exceptions to the automatic stay under section 405. Indeed, the Supreme Court noted "Congress, we have held, does not alter fundamental details of a regulatory scheme in vague terms or ancillary provision – it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Here, too, Congress did not intend to alter the established structure and operation of the automatic stay under Bankruptcy Code sections 362 and 922 through the interpretive provision of PROMESA section 7.

9. **No Federal or Territorial Laws or Requirements Are Implicated**. Section 7 applies with respect to "Federal laws or requirements" and "territorial laws and requirements" that "implement[] a *federally authorized* or *federally delegated program* protecting the health, safety, and environment of persons in such territory." PROMESA § 7 (emphasis added). Movant has not identified any "Federal laws or requirements" or "territorial laws and requirements" with which the Debtors are failing to comply by virtue of the Title III Stay—as there are none implicated by the Prepetition Action or Prepetition Judgment. Rather, Movant is seeking to enforce its *contractual rights* under the Development Agreement through the execution of the Prepetition Judgment. *See* Motion ¶ 9 ("Movant seeks a modification of the stay . . . so that it may continue the Commonwealth Court after the judgement procedures in, the 'Ponce en Marcha' case in order to fulfill all the construction works accordingly to the judgment . . . ."); Prepetition Judgment at 1-2 ("On October 28, 1993, the Municipality of Ponce filed the civil action at issue in order to obtain specific performance of the aforementioned agreement [the Development Agreement] and, consequently, to order six public corporations and two departments of the Central Government to

6

build some of the infrastructure projects comprised in the agreement that had not been done as programmed.").

10. Furthermore, the Prepetition Judgment does not constitute a "territorial requirement" under section 7. Congress intended the term "requirement" to mean enactments of law by legislative or administrative bodies. In *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488–89 (1996), the Supreme Court interpreted "requirement" under 21 U.S.C. § 360k(a), the Medical Device Amendments of 1976, to refer "only to statutory and regulatory law that exists pursuant to the [Medical Device Amendments] itself." *Id.* at 489. The Supreme Court arrived at this conclusion after reviewing the usage of the term throughout the Medical Device Amendments. *Id.*

11. Here, too, the term "requirements" is used throughout PROMESA in reference to statutory or regulatory laws. A few examples include: PROMESA §§ 5(7) (". . . subject to the requirements of [PROMESA]."); 101(d)(1)(A) (same); 101(d)(2)(A) (". . . from the requirements of [PROMESA]."); 101(e)(2)(G) (". . . who meet the requirements set forth in subsection (f) and section 109 [of PROMESA] . . ."); 109(a) (". . . Federal conflict of interest requirements described in section 208 of title 18, United States Code."); 109(b) (". . . requirements set forth in section 102 of the Ethics in Government Act of 1978 . . . ."); 203(a)(2) ("any other information request by the Oversight Board, which may include a balance sheet or a requirement that the Governor provide . . ."). Notably, in PROMESA section 204(d), the term "Federal requirements" is used separately from "court-issued consent decree or injunction, or an administrative order or settlement . . . ." *Compare* PROMESA § 204(d)(1) *with* PROMESA § 204(d)(3). Accordingly, application of the Title III Stay to the Prepetition Action does not impair or relieve the Debtors from compliance with territorial laws or requirements.

12. **The Subject "Requirements" Are Contractual in Nature and Are Not Imposed Under Federal or State Law**. Even if the Prepetition Judgment were deemed a "requirement," section 7 would nonetheless be inapplicable. First, the Prepetition Judgment and the actions to be undertaken to complete certain projects thereunder are not "territorial" requirements, but rather remedies for contractual commitments *undertaken and negotiated by the Debtors and Movant*. *See Cipollone v. Liggett Grp.*, 505 U.S. 504, 526–27 (1992) ("[A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . imposed under State law' . . . ." (emphasis in original)).

13. **The Development Agreement Does Not Involve Any Federally Authorized or Federally Delegated Program**. Second, such "requirement" must "implement[] a federally authorized or federally delegated program." PROMESA § 7. However, as noted above, the Prepetition Judgment merely enforces the Development Agreement, and does not involve any federally authorized or federally delegated program.[5] Moreover, the Development Agreement itself does not implement a "federally authorized or federally delegated program." As noted in the Prepetition Judgment, the parties entered into the Development Agreement pursuant to Chapter 13 of the Autonomous Municipalities Act of the Commonwealth of Puerto Rico of 1991, which was intended to develop the use of the Commonwealth's resources. *See* Prepetition Judgment at 1. As the Prepetition Court noted, "[The Development Agreement] was executed in order to implement a management plan that said municipality prepared for the use and exploitation of its land." *Id.*[6]

---

[5] Indeed, the Prepetition Court held in the Prepetition Judgment that the failure of the Debtors to obtain federal funds, or approval or collaboration from certain federal agencies did not excuse the Debtors from performance under the Development Agreement. In fact, the Prepetition Court found that the Debtors could choose to use federal funds for projects other than those under the Development Agreement. *See* Prepetition Judgment at 56.

[6] *See also* Prepetition Judgment at 6 ("On August 30, 1991, Law No. 81, known as the Autonomous Municipalities Act, *supra*, entered into effect, which authorized the municipalities of the Commonwealth of Puerto Rico to prepare and adopt land management plans that contained the strategies and provisions for the organization of the urban land within an esthetic and compact functional plan.").

The Prepetition Court further cited provisions of the Development Agreement explaining its purpose as solely to implement Commonwealth public policy:

> This agreement enforces the public policy of the Commonwealth of Puerto Rico established in the Autonomous Municipalities Act consisting in granting the municipalities the maximum autonomy possible in addition to providing them (sic) the powers and authorities that are necessary to assume a central and fundamental role in their urban, social, and economic development.
>
> The Municipality of Ponce, in compliance with the provisions of the Autonomous Municipalities Act, has invested considerable economic and human resources and time in elaborating a Land Management Plan to provide for the best uses of the land within its territorial limits and to develop infrastructure projects for promotion through the adoption of a Land Management Plan.

Prepetition Judgment at 11. Indeed, any connection the projects under the Development Agreement may have to federal funding or federal regulatory approval is only incidental, and as the Prepetition Court noted, failure to obtain federal funding or federal approvals did not excuse the Debtors from performance under the Development Agreement. *Id.* at 56. Thus, the Development Agreement implements a Commonwealth program, and not any federally authorized or federally delegated program.

14. **The Availability of Federal Funding Does Not Turn a Project into a Federal Program**. The mere fact that a project is financed in part by federal sources does not convert it into a federal program. Such a principle in determining the application of section 7 would mire the Court in the arbitrary determination of what degree of federal funding a project must receive to be considered a "federally authorized or federally delegated program" under section 7, on which Congress has provided no guidance. It would also suggest that whether section 7 limits the scope of the Title III Stay would depend on when projects gain or lose federal funding, especially when the decision to seek federal funding rests at the Commonwealth agency administering the project. Such result is untenable and would introduce uncertainty that undercuts the policy of the Title III

9

Stay of providing the debtor a "breathing spell." *See Unisys Corp. v. Dataware Prods.*, Inc., 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)).

15. In addition, the language of section 7 is clear: it applies only to "federally authorized" or "federally delegated" programs, and it does not say anything about federally *funded* programs. Rather, the terms "federally authorized" and "federally delegated" in section 7 mean that the program or projects themselves are authorized or delegated pursuant to federal law. *See* 26 U.S.C. § 7525(a)(3) (defining "federally authorized tax practitioner" as any individual who is "authorized under Federal law to practice before the Internal Revenue Service . . . ."); *Dixson v. United States*, 465 U.S. 482, 510 (1984) (noting that Congress amended the Grain Standards Act to "apply § 201 to federally licensed grain inspectors employed by a state agency to exercise federally delegated authority to conduct official inspections of grain.").

16. Critically, even if federal funding were relevant to the application of section 7, the Debtors' compliance with any federal program or the terms in connection with the receipt of any federal funds is not at issue in the Prepetition Action, nor is Movant seeking to lift the Title III Stay to enforce compliance with any federal law or terms of any federal program. *See* Prepetition Judgment at 1; Motion ¶ 9.[7]

17. **The Application of Federal Funds is Limited to Certain Projects and is Administered Through Puerto Rico Agencies and Not Directly by Federal Agencies**. The only

---

[7] Movant seeks to enforce specific performance of the Development Agreement pursuant to the Prepetition Judgment. In order words, Movant is seeking to enforce a "right to an equitable remedy for breach of performance . . ." which squarely falls under the definition of "claim" pursuant to Bankruptcy Code section 101(5). As a holder of a claim, Movant should not be allowed to jump ahead of the Debtors' other creditors and divert scarce resources of the Debtors for their own benefit. Rather, Movant may file a proof of claim and receive any distribution if its claim is allowed.

10

projects that even receive federal funding are those administered by HTA.[8] With respect to the Commonwealth, certain projects are administered under either the Puerto Rico Department of Natural and Environmental Resources (the "DNER") or the Puerto Rico Housing Department (the "PRHD"). The DNER oversees two projects: the canalization or channeling of the Río Matilde in Ponce (the "Río Matilde Project"), and the rehabilitation of the lighthouse on the island of Caja de Muertos (the "Lighthouse Project"). No federal funds are allocated to either project. *See Sworn Statement of Mabel C. Rivera Sanabria* ¶ 4(e), attached hereto as **Exhibit B** (the "DNER Statement"); *see also* Monitor Statement at 8 ("But we don't know the proportion between federal and local funds, if there is one [with respect to the Lighthouse Project].").

18. The PRHD projects, as Movant concedes, are not financed by federal funds. Monitor Statement at 7 ("The only funds totally from [the Commonwealth] budget are those of the [sic] PREPA and of the PRHD."); *see Sworn Statement of Carlos Rubén Maldonado de León* ¶ 4(b), attached hereto as **Exhibit C** (the "PRHD Statement"). The Community Development Block Grant – Disaster Recovery Program ("CDBG – DR"), referenced in the Monitor Statement (page 8), is aimed at assuring decent affordable housing opportunities, providing services and assistance to the most vulnerable in our communities and the expansion and conservation of jobs. CDBG – DR funds are granted by the Disaster Recovery Program for Community Development under the United States Department of Housing and Urban Development ("HUD") to support disaster

---

[8] As noted in the *Statement Under Penalty of Perjury* (the "Monitor Statement"), attached to the Reply and executed by the monitor in the Prepetition Action, Movant concedes that the PREPA projects and PRHD projects do not receive federal funds. Statement at 7 ("The only funds totally from [the Commonwealth] budget are those of the [sic] PREPA and of the PRHD."). *See also* Joinder of the Puerto Rico Fiscal Agency and Financial Advisory Authority on Behalf of the Puerto Rico Highways and Transportation Authority to Commonwealth's Response to (A) Omnibus Reply to Opposition to Motion Requesting Lifting of the Stay and (B) Motion Requesting Hearing on 362 Lifting of the Stay Filed by Autonomous Municipality of Ponce ¶ 2 (the "HTA Joinder") (filed by HTA concurrently with this Response); Joinder of the Puerto Rico Fiscal Agency and Financial Advisory Authority on Behalf of the Puerto Rico Electric Power Authority to the Commonwealth's Response to (A) Omnibus Reply to Opposition to Motion Requesting Lifting of the Stay and (B) Motion Requesting Hearing on 362 Lifting of the Stay Filed by Autonomous Municipality of Ponce ¶ 2 (filed by PREPA concurrently with this Response).

11

recovery activities, including housing redevelopment and rebuilding. The PRHD has been designated as the entity responsible for administering the subsidy programs that will help in the recovery from the disasters caused by Hurricanes Irma and Maria in 2017. This includes long-term recovery, restoration of housing and economic infrastructure, and revitalization. The seven hundred seventy five million dollars ($775,000,000.00) of CDBG – DR funds referenced in the Monitor Statement are not federal funds assigned to comply with the Prepetition Judgment, but are designated for post-Hurricanes Irma and Maria recovery efforts. *See* PRHD Statement ¶ 3(c)-(f).[9]

19. A federal program pursuant to section 7 must be *intended* to "protect[] the health, safety, and environment of persons in such territory." PROMESA § 7. The mere fact that such program has an incidental effect on health, safety, and environment is insufficient to meet the requirements of section 7. Otherwise, such restrictive language would be no limitation at all. Movant provides no support to indicate that any projects, setting aside whether such projects are "federally authorized" or "federally delegated" programs, are intended to "protect[] the health, safety, and environment of persons in such territory." Movant only offers the statements of the monitor in the Prepetition Action purporting to reach legal conclusions as to the purpose of the projects under the Development Agreement.

20. As noted in the DNER Statement, the Lighthouse Project only incidentally involves federal property, but the purposes of the project do not involve the "health, safety, and environment" of persons in the Commonwealth—rather, the purpose is cosmetic. The license under which the Lighthouse Project is administered states that the use of the property is "for the

---

[9] As noted in the HTA Joinder, funding for the HTA projects is provided through the Federal Highway Administration's Puerto Rico Highway Program, 23 U.S.C. § 165, which funds HTA has discretion to allocate to projects within the requirements of 23 U.S.C. § 165(b)(2)(C). HTA Joinder ¶ 2. The HTA projects include two projects for the construction of Road PR-9 from PR-132 to PR-123 in the Municipality of Ponce. *Id.*

purpose of restoring, maintaining, preserving and protecting the lighthouse and adjacent buildings and to maintain the grounds in a neat and presentable manner." Lighthouse License § 5, attached to DNER Statement.[10]

## II. OPPOSITION TO EVIDENTIARY HEARING REQUEST

21. Movant filed the Hearing Request seeking an evidentiary hearing "to submit evidence even by testimonial of Monitor or documents of the reports made by debtor's attorneys before the stay in the 'Ponce en Marcha' case." Hearing Request ¶ 4. The purpose of the request is to dispute the Commonwealth's assertion that completion of various projects pursuant to the Prepetition Judgment would cost approximately $100 million, and HTA's and PREPA's assertions that it would cost tens of thousands of dollars and $16 million, respectively, to do the same. Hearing Request ¶ 3. In other words, Movant seeks to have an evidentiary hearing to dispute *one* out of nine factors of the *Sonnax* analysis in the Objection that supports denial of the Motion.

22. An evidentiary hearing, however, is unnecessary to decide the Motion and a waste of limited judicial resources. As courts in this district have noted, no one factor of the *Sonnax* analysis is dispositive; instead, courts "engage in an equitable, case-by-case balance of the various harms at stake" and will lift the stay only if harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade Leveraged Capital Structures Fund Ltd. V. Garcia-Padilla*, 217 F. Supp. 3d 508, 529 n.12 (D.P.R. 2016). Movant bears the burden of establishing cause, *id.*, and when movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

---

[10] While the license notes that the DNER "may only restore, maintain, preserve and provide protection to the [lighthouse] for historical, education, and environmental programs and projects," such language only restricts the usage of the property. Furthermore, Movant is not seeking to enforce the license, if it even can as a third party, but its own Development Agreement with the Debtors.

23. Here, even assuming as true the factual assertions in the Monitor Statement and Reply regarding the costs of compliance with the Prepetition Judgment, Movant concedes that the cost of compliance among the Debtors is $44,154,610.38—a nonetheless substantial amount that supports denying the Motion under *Sonnax* factor 2, among the other factors outlined in the Objection. Reply ¶ 14; Monitor Statement at 9. Furthermore, scheduling an evidentiary hearing in Ponce for an "ocular inspection of the allegations and evidence of the status of [the] projects" is unnecessary as the condition and progress of the projects covered by the Prepetition Judgment bears no relevance to any *Sonnax* factors.

## CONCLUSION

24. For the foregoing reasons, as well as those set forth in the Objection, the Court should deny the Motion requesting relief from the automatic stay and the Hearing Request.

Dated: September 10, 2018.
San Juan, Puerto Rico

> Respectfully submitted,
>
> **WANDA VÁZQUEZ GARCED**
> Secretary of Justice
>
> */s/ Wandymar Burgos Vargas*
> **WANDYMAR BURGOS VARGAS**
> USDC 223502
> Deputy Secretary in Litigation
> Department of Justice
> P.O. Box 9020192
> San Juan, Puerto Rico 00902-0192
> Phone: 787-721-2940 Ext. 2500, 2501
> wburgos@justicia.pr.gov
>
> *Attorneys for the Commonwealth of Puerto Rico*

# **Exhibit A**

**Prepetition Judgment (Certified Translation)**

**Exhibit B**

**Exhibit C**