## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
-------------------------------------------------------------------- X
                                                :
In re:                                          :
                                                :
THE FINANCIAL OVERSIGHT AND                     :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,               :  Title III
                                                :
            as representative of                :  Case No. 17-BK-3283 (LTS)
                                                :
THE COMMONWEALTH OF PUERTO RICO et al.,         :  (Jointly Administered)
                                                :
            Debtors.¹                           :
-------------------------------------------------------------------- X
```

## MOTION FOR RELIEF FROM AUTOMATIC STAY

To the Honorable United States District Court Judge Laura Taylor Swain:

**COMES NOW**, Asociación de Maestros de Puerto Rico ("AMPR"), and its Union,

Asociación de Maestros de Puerto Rico-Local Sindical ("AMPR-LS"), both of which are affiliates

of the American Federation of Teachers, AFL-CIO ("AFT"), for themselves and in representation

of four hundred and twelve (412) of their members, all of which are currently retired teachers from

the Department of Education of the Commonwealth (hereinafter collectively "Movants"), and

hereby file this request for relief from the Automatic Stay imposed by the filing of the above-

captioned Title III case, seeking that the automatic stay be lifted on a declaratory judgment case

captioned Asociación de Maestros de Puerto Rico et al v. Departamento de Educación et al, Civ.

---

[1]   The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy
case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification
number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last
Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth
of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii)
Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last
Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy
Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power
Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Núm. SJ2017CV00542 (the "Litigation"), which is currently pending before the Puerto Rico Court

of First Instance, San Juan Part (the "Commonwealth Court").[2] In support of their motion, Movants

respectfully state as follows:

## PRELIMINARY STATEMENT

Movants seek relief from the PROMESA automatic stay as to the Litigation, which

commenced with the filing of a complaint for declaratory judgment and a cause of action for

breach and/or impairment of contractual and vested property rights against the Department of

Education of the Commonwealth; the Secretary of the Department of Education of the

Commonwealth, Julia Keleher in her official capacity and the Commonwealth of Puerto Rico

("Defendants").  The Litigation, seeks a declaration, exclusively under Puerto Rico law, by the

Commonwealth Court, as to: (1) whether Movants' right to liquidation or payment in cash of their

earned salary, in the form of excess sick leave, pursuant to Act 8 and/or alternatively under Act 3,

constitute Movants' property under Commonwealth law; (2) at what moment, if any under

Commonwealth law, did Movants' right to liquidation of earned excess sick leave pay became

property of Movants; (3) whether Defendants had the statutory obligation under Act 8 and other

Commonwealth statutes and case law precedent to segregate, hold in trust and disburse to

Movants' on or before March 31, 2017 their earned excess sick leave pay; (4) whether Defendants,

upon approval by TRS of Movants' retirement on or before March 31, 2017,  had the statutory

obligation under Act 3 and other Commonwealth statutes and case law precedent to segregate and

hold in trust, until Movants' effective day of retirement their calculated earned excess sick leave

pay; (5) whether Defendants' refusal to liquidate Movants' earned excess sick leave pay upon

---

[2] In accordance with the Lift Stay Protocol found in Paragraph III. Section Q and subsequent sections therein of the
Fourth Amended Case Management Order of April 4, 2018, as amended, Movants on May 7, 2018, provided due
notice and thereafter on August 16, 2018, received a reply notice from Debtor declining to modify the stay. On that
same date, Debtor certified Movants' exhaustion of the Lift Stay Protocol. (See, Exhibit 1).

Movants' effective day of retirement, citing Act No. 26 of April 29, 2017, known as the "*Act for Compliance with the Fiscal Plan*" ("Act 26"), constituted a *State Action* that deprived Movants of their property without due process; (6) whether such deprivation of Movants' property, without due process, is prohibited by the Commonwealth Constitution and; (7) if Movants are afforded as a remedy under the law or equity, that Defendants segregate and maintain in a constructive trust or in trust, all of Movants' earned excess sick leave pay, up to 90 days, for payment, if so decree by the Commonwealth Court.

Movants seek that the stay be lifted so the Commonwealth Court entertains whether under the Commonwealth laws Movants were deprived, without due process, of their property when Defendants refused to liquidate Movants' accumulated sick leave days, citing enactment of Act 26, and whether said act violates Article II, Section 7 of the Commonwealth Constitution which states that: "No laws impairing the obligation of contracts shall be enacted." Art. II, Sec. 7, Commonwealth Const., L.P.R.A., Title 1 and  Article 3 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sec. 3 which states that laws shall not have retroactive effect, unless they expressly so decree and that in no case or circumstance, shall the retroactive effect of a law impair the acquired rights provided by a prior statute. *See*, 31 L.P.R.A. Sec. 3. *See also*, Teachers Association of Puerto Rico v. Puerto Rico Teachers Retirement System, 190 D.P.R. 814 (2014)(certified English translation, cited as CT-2014-2; CT-2014-3).

In support of their request, Movants will show, that they meet the threshold requirements under the *Sonnax* and respectfully request that "cause" be deemed shown to lift the automatic stay to allow the Commonwealth Court not only to enter the appropriate declarations as to Movants' right under Commonwealth law, but also to allow the Commonwealth Court to issue and enforce

a remedy, in equity or in law, redressing any deprivation by Defendants to Movants' right to due process and property rights.

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction over this matter pursuant 48 U.S.C.§ 2166.

2.      Venue is proper pursuant to section 307(a) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), 48 U.S.C. Sec. 2101 et. seq.

## BACKGROUND

1.      Each one of the four hundred and twelve (412) Movants herein are public servants, whom have dedicated their lives, as teachers, and were employed by the Department of Education of the Commonwealth of Puerto Rico on or until May 31, 2017. All Movants herein applied for retirement with the Department of Education on or before January 2017.   As of January 31, 2017, all Movants herein had accrued and had excess sick leave through their years of employment.

2.      On June 17, 2014, the Commonwealth enacted Act 66 of 2014, better known as "*Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act*" ("Act 66").  Section 11 (c)(ii) of Act 66 provided that during the effectiveness of Act 66, the Commonwealth would not increase certain economic benefits or extraordinary monetary compensations to public servants. However, it entitled public servants to cash liquidations for sick leave accrued in excess in the case of liquidations upon the employee's separation from public service up to a maximum of ninety (90) days.  On January 23, 2017, the Commonwealth enacted Act Number 3 of 2017, better known as "*Puerto Rico Financial Emergency and Fiscal Responsibilities Act*" ("Act 3").  Article 7 of Act 3 provided that in reference to what constitutes an extraordinary monetary compensation, Act 3 would incorporate and recognize the dispositions established on Act 66. In doing so, Act 3 continue to entitle public servants with the right to cash

4

liquidations for sick leave accrued in excess in the case of liquidations upon the employee's separation from public service, up to a maximum of ninety (90) days.

3.      On August3, 2004, the Commonwealth enacted Law Number 184, as amended, better known as "*Law for the Administration of Human Resources in Public Service*" ("Law 184"), which governed the manner in which sick leave accrued in excess was liquidated to public servants, upon their request. Article 10.1 (2)(b) of Law 184 established that any public employee was entitled to request and receive on or before March 31 of each year a cash payment corresponding to their excess accumulated sick leave days, up to 90 days.

4.      On February 4, 2017, the Commonwealth enacted Act Number 8 of 2017, known as "Government of Puerto Rico Human Resources Administration and Transformation Act," ("Act 8")). Section 9.1 (2)(b) of  Act 8, incorporated identical language to that found on Law 184 regarding public employees entitlement to request and receive "annual payment of such excess [sick leave] at least by March 31st of each year;" but "provided that the fiscal situation so allows."

5.      The Commonwealth Supreme Court established in <u>Junta de Relaciones del Trabajo de Puerto Rico v. Orange Crush of Puerto Rico, Inc.</u>, 86 D.P.R. 652 (1962), that the term "*Salary*" encompasses and includes all types of compensation to the employee, including, sick leave pay.

6.      Under Commonwealth Law, all career public employees, like Movants, have a proprietary interest over their employment positions. *See*, <u>Lupiáñez v. Srio de Instrucción</u>, 105 D.P.R. 696 (1977); *see also*, <u>Pierson Muller I v. Feijoó</u>, 106  D.P.R. 838 (1978). Said proprietary right over their employment position, encompasses and extends to any salaries earned. As such, the right of a public employee to their earned salary cannot be deprived by *State Action* without due process of law. <u>See</u>, <u>Torres Solano v. P.R.T.C.</u>, 127 D.P.R. 499 (1990); see also, Art. II, Sec. 7, Commonwealth Const., L.P.R.A., Title 1.

7.      Article 7.2 (c) of Law Number 160 of the year 2013, known as "*Commonwealth of Puerto Rico Teacher's Retirement Act*" ("Law 160") establishes that teachers can apply for retirement with the Teacher's Retirement System ("TRS'): (1) on or before June 30 of each year to effectively retire at the end of the first semester or on December 31 of that year. The TRS must approve the retirement request on or before October 31 of that year; and (2) on or before January 31 of that year to effectively retire at the end of the second semester or on June 30 of that year. The TRS, must approve the retirement request of that teacher on or before March 31 of that year.

8.      TRS notified each and every Movant herein that it had approved their request for retirement for having complied with all requirements of years of service and other factors on or before March 31, 2017.

9.      Unlike other public servants of the Commonwealth that may retire within days of receiving their approval for retirement, Movants herein received approval of their retirement by Mach 31, 2017, but due to the dispositions of Law160, Movants could not separate from service immediately upon receiving approval to retire.  Pursuant to Law 160, Movants needed to await the conclusion of the ongoing school semester and/or until June 30, 2017 to separate from service.

10.     On April 29, 2017, the Commonwealth enacted Act 26 which established a stay or freeze of the dispositions of Article 9 of Act 8, which recognized the statutory right of public employees, including those of Movants, to annual payment of excess sick leave at least by March 31st of each year, if the fiscal situation so allows, up to a maximum of 90 days.

11.     At the time of enactment of Act 26, all Movants had requested payment of their excess sick leave (January 31, 2017) under Act 8, and the Department of Education on or before

March 31, 2017, pursuant to Act 8, was required to calculate and segregate for cash liquidation

before March 31, 2017, Movants' excess sick leave, up to a maximum of 90 days.

12.     Pursuant to Act 8, at the time of enactment of Law 26-2017, Movants had already

acquired their statutory right to their payment or liquidation of their accumulated sick leave pay,

up to 90 days (as of March 31, 2017). Pursuant to Act 8, Department of Education was required

under the law to calculate, segregate and disburse to Movants on or before March 31, 2017 their

accumulated sick leave days.  The Department of Education failed to comply with its statutory

obligation under Act 8 to disburse or pay in cash Movants' excess sick leave on or before March

31, 2017.

13.     Alternatively, at the time of enactment of Act 26, all Movants had already applied

for retirement (January 2017) with TRS, and pursuant to Law 160 had received from TRS approval

of their retirement (on or before March 31, 2017).  Entitling Movants under Act 3 to the right to

cash liquidations for sick leave accrued in excess, up to a maximum of ninety (90) days, upon

Movants' effective day of separation from public service. Pursuant to the dispositions of Article

7.2 of Law 160 Movants' effective day of retirement and separation from service from the

Department of Education was May 31, 2017. On Movants' effective day of retirement, the

Department of Education failed to liquidate their accumulated sick leave days in violation to their

prior acquired rights under Law Act 3.

14.     The Litigation in the Commonwealth Court was filed on June 30, 2017. The

Complaint was thereafter amended on July 26, 2017. Defendants were served with summons and

copy of Amended Complaint on August 3, 2017.

On August 28, 2017, the Defendants filed an Informative Motion requesting the case be stayed in

accordance with sections 362 and 922 of the Bankruptcy Code 11 U.S.C. Sec. 362; 922,

incorporated by the PROMESA and informing Movants that they needed to comply with the Lift Stay Protocol of the Case Management Procedures of the above captioned Title III case. Pursuant to Docket No. 2828 the Department of Education of the Commonwealth, is part of the agencies and instrumentalities covered by the Debtor's above captioned Title III case.  In accordance with the Lift Stay Protocol found in Paragraph III. Section Q and subsequent sections therein of the Fourth Amended Case Management Order of April 4, 2018, as amended, Movants on May 7, 2018, provided due notice and thereafter on August 16, 2018, received a reply notice from the Commonwealth declining to modify the stay. On that same date, the Commonwealth certified Movants' exhaustion of the Lift Stay Protocol.

15.     The Litigation for which lift of stay is herein sought, is brought on behalf of dedicated public servants who have, in most cases, devoted their entire adult lives to educating Puerto Rico's youth.  If not for the fact that they were required to finish out the school year, they would have been able to retire, like the rest of the public employees, as of March 31, 2017, when their property rights accrued, and before the retroactive application of Act 26 which constituted a taking of their property and would have avoided the filing of the above captioned Title III case, which stayed their ability to enforce their rights before the Commonwealth Court.

16.     Teachers are currently among the most vulnerable public servants in Puerto Rico because, notwithstanding their professional status, they labored at a salary that is but a fraction of a stateside teachers' salary.  And now in retirement, are subject to even greater hardship because they do not have access to social security and have inadequate pensions which are subject to a threat of further cuts based upon the position the Oversight Board has espoused in their Certified Fiscal Plan.

17.     Movants are currently experiencing a real hardship and given their age and economic status should be able to proceed with the Litigation on a prompt basis.  As set forth more fully below, the amounts that correspond to Movants' earned salary at issue here are but a drop in the Commonwealth's fiscal bucket, but they are of overwhelming importance in the lives of these retirees who earned and actually own them.  Unlike other employees of the Commonwealth, Movants are teachers, whom pursuant to Commonwealth law did not contribute, nor will receive Social Security during their retirement.

18.     Movants' collective claim was made part of the *AFT's Master Proof of Claim* (*See*, Proof of Claim No. 108230 on above captioned Title III case Claims Register).  Movants' proof of claim for unpaid and unliquidated sick leave was estimated at no less than Three Million and Three Hundred Thousand Dollars ($3,300,000.00).[3]

19.     Movants' statutory property right to their salary, in the form of earned excess accumulated sick leave pay, up to 90 days, vested and became their acquired property before March 31, 2017. That is, within one hundred and eighty (180) days of the filing of the above captioned Title III case.

20.     However, since Section 507(a)(4)(A) of the Bankruptcy Code, 11 U.S.C. Sec. 507(a)(4)(A), was not incorporated into PROMESA by Congress, Movants are not entitled or granted priority of payment on any Proof of Claim they may have filed in the above captioned Title II case in regards to their individual or collective claim for unpaid and unliquidated salary, in the form of accumulated sick leave.

---

[3] AFT estimate that there are an approximate additional Four Hundred (400) Teachers similarly situated to Movants, whom were deprived of their statutory right under Act 8 to receive liquidation upon their effective day of retirement of their accumulated sick leave pay up to a maximum of 90 days.  Therefore, AFT listed within its Master Proof of Claim a claim for "*Unlawful Deprivation of Accumulated Sick Leave*" in an amount no less than Six million and Six Thousand Dollars ($6,600,000.00) for approximately 800 teachers, amount that includes Movants.

21.     Had Section 507(a)(4)(A) of the Bankruptcy Code been incorporated into PROMESA by Congress, Movants might not have needed to file a Complaint and/or move to lift the stay, inasmuch as their individual or in the alternative their collective claims, once allowed, would be entitled to priority under Section 507(a)(4)(A) up to the maximum amount of $12,850.00 per each Movant.

22.     Nevertheless, given Congress express exclusion of Section 507(a)(4)(A) into PROMESA, Movants only remedy is to seek before this Honorable Court lift of stay to pursue a declaration by the Commonwealth Court as to whether the *State Action* of retroactively applying Act 26, to refuse to comply with their statutory obligation of having to segregate and disburse to Movants their earned salary in the form of excess sick leave pay, either on March 31, 2018 (pursuant to Act 8), or upon their effective day of separation of service (pursuant to Act 3), violated Movants' property rights and deprive them of their property, without due process.

23.     It is highly unlikely that even if Movants' right to payment of their property is acknowledged by the Commonwealth that the Debtors will voluntarily grant Movants the priority of Section 507(a)(4)(A) through the Administrative Resolution Process for Proof of Claims. Therefore, Movants have no alternate remedy at law or equity than to seek lift of stay for a declaration of the Commonwealth Court.

24.     Movants are currently experiencing a real hardship and given their age and economic status should be able to proceed with the Litigation on a prompt basis.  As set forth more fully below, the amounts that correspond to Movants' earned salary at issue here are but a drop in the Commonwealth's fiscal bucket, but they are of overwhelming importance in the lives of these retirees who earned and actually own them.  Unlike other employees of the Commonwealth,

Movants are teachers, whom pursuant to Commonwealth law did not contribute, nor will receive Social Security during their retirement.

25. The relief sought by Movants in the Litigation is limited to interpretation of Puerto Rico constitutional and statutory law, making the Commonwealth Court the proper venue to continue the Litigation upon the lifting of the automatic stay, both as to Movants' entitlement to the payment since retroactive application of Act 26 is contrary to the law and as to the recognition of that entitlement as a property right, that could not be deprived by *State Action* without due process of law.

## APPLICABLE LAW

Section 362(d)(1) of Title 11 of the United States Code, made applicable in these proceedings by Section 301 of PROMESA, 48 U.S.C. § 2161, permits a court to grant relief from the automatic stay "for cause." The term "cause" is determined on a case-by-case basis. *In re Ulpiano Unanue-Casal,* 159 B.R. 90, 95-96 (D.P.R. 1993), affd by 23 F.3d 395. (1st Cir. 1994).

To determine whether cause exists to lift the bankruptcy stay, courts in this district rely on the factors first enumerated by the United States Court of Appeals for the Second Circuit in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax"). See, e,g., Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) (citing *Sonnax*). Of particular relevance to the instant case are the following factors identified by the *Sonnax* Court: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has

assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d at 1286.

Courts have relied on only a few factors, or even a single factor, in deciding to lift the stay. *"In weighting these factors, this Court does not need to specifically address each of the various factors, but instead only needs to consider those factors relevant to the particular case, and this Court does not need to assign them equal weight."* In re R.J. Groover Construction, LLC, 411 B.R. 460, 464 (S.D. Ga. 2008) (citations omitted). On In re Ulpiano Unanue-Casal, *supra*, the Court also rely on two additional factors; *i.e.,* the misconduct of the debtor and whether the creditor has a probability of prevailing on the merits. *Id.* at 96.

As echoed in the legislative history to § 362(d) (1), made applicable to PROMESA, Congress believed that *it* will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere *H.R. Rep. No.* 95-595, at 341 (1977); S. Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836.

## ANALYSIS AND DISCUSSION

Here most of the factors enumerated in *Sonnax*, weight in favor that "cause" exists to lift

the automatic stay.

### A.  The Questions Require Exclusively Puerto Rico Law Interpretation.

Since the matters contained in the Litigation are limited and exclusively of interpretation of Puerto Rico Constitution and statutory law and its application, the proper venue to continue the Litigation upon the lift of the automatic stay is the Commonwealth Court.

The Litigation before the Commonwealth Court focuses on: (1) whether Movants' right to liquidation or payment in cash of their earned salary, in the form of excess sick leave, pursuant to Act 8 and/or alternatively under Act 3, constitute Movants' property under Commonwealth law; (2) at what moment, if any under Commonwealth law, did Movants' right to liquidation of earned excess sick leave pay became property of Movants; (3) whether Defendants had the statutory obligation under Act 8 and other Commonwealth statutes and case law precedent to segregate, hold in trust and disburse to Movants' on or before March 31, 2017 their earned excess sick leave pay; (4) whether Defendants, upon approval by TRS of Movants' retirement on or before March 31, 2017,  had the statutory obligation under Act 3 and other Commonwealth statutes and case law precedent to segregate and hold in trust, until Movants' effective day of retirement their calculated earned excess sick leave pay; (5) whether Defendants' refusal to liquidate Movants' earned excess sick leave pay upon Movants' effective day of retirement, citing Act 26, constituted a *State Action* that deprived Movants of their property without due process; (6) whether such deprivationof Movants' property, without due process, is prohibited by the Commonwealth Constitution and; (7) if Movants are afforded as a remedy under the law or equity, that Defendants segregate and maintain in a constructive trust or in trust, all of Movants' earned excess sick leave pay, up to 90 days, for payment, if so decree by the Commonwealth Court.

All of the aforementioned declarations, deal exclusively with application and interpretation of the Commonwealth Constitution and its laws. Therefore, is Movants request that the Commonwealth Court is the appropriate tribunal to render the declarations, after the lift of the automatic stay.

**B. Movants are likely to prevail on the merits of their case.**

Is Movants' contention that Defendants' refusal to liquidate Movants' completely vested property right to their earned salary, in the form of excess accumulated sick leave pay, citing the freeze imposed by subsequent enactment of Act 26, violates the prohibition established by Article 3 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sec. 3 which states that laws shall not have retroactive effect, unless they expressly so decree and that in no case or circumstance, shall the retroactive effect of a law impair the acquired rights provided by a prior statute. See, 31 L.P.R.A. Sec. 3. See also, Puerto Rico Teachers Retirement System, *supra*.

Is well settled Commonwealth law that the term "*Salary*" encompasses and includes all types of compensation to the employee, including, sick leave pay. See, Orange Crush of Puerto Rico, Inc*., supra*. Under Commonwealth law, all career public employees, like Movants, have a proprietary interest over their employment positions. *See*, Srio de Instrucción, *supra*. Said proprietary right over their employment position, encompasses and extends to any salaries earned. As such, the right of a public employee to their earned salary cannot be deprived by *State Action* without due process of law. See, P.R.T.C., *supra*; see also, Art. II, Sec. 7, Commonwealth Const., L.P.R.A., Title 1.

Defendants' statutory obligations to segregate, hold in trust Movants' salary, in the form of excess sick leave pay, up to 90 days, arose, pursuant to Act 8, upon Defendants' request for retirement (January 31, 2017) and became due on March 31, 2017. Defendants' statutory

14

obligations to segregate, hold in trust Movants' salary, in the form excess sick leave pay, up to 90 days, arose, pursuant to Act 3, upon TRS' approval of Movants' request for retirement (March 31, 2017) and became due on May 31, 2017 upon Movants' effective separation from service.

Defendants' actions to retroactively apply Act 26 constitute a deprivation of Movants' proprietary rights to cash payment of their earned salary, in the form of earned and accrued excess sick leave pay.  Such action by Defendants, constitutes a *State Action* that deprive Movants of their property, without due process. The usual formulation of the rule with respect to retroactive civil legislation [or its application] is that such legislation is constitutionally objectionable when it deprives a person of a completely vested right. See,  Sagastivelza v. Puerto Rico Housing Authority, 195 F.2d 289 (1st Cir. 1952) citing Ettor v. City of Tacoma, 1913, 228 U.S. 148, 33 S. Ct. 428, 57 L. Ed. 773; Western Union Tel. Co. v. Louisville & N. R. R. Co., 1922, 258 U.S. 13, 42 S. Ct. 258, 66 L. Ed. 437; Crane v. Hahlo, 1922, 258 U.S. 142, 147, 42 S. Ct. 214, 66 L. Ed. 514; Coombes v. Getz, 1932, 285 U.S. 434, 442, 52 S. Ct. 435, 76 L. Ed. 866. See, Rottschaefer, Constitutional Law, p. 548 (1939).

Therefore, Movants respectfully aver that they have shown a high probability to succeed on the merits of their case before the Commonwealth Court if the stay is lifted. *"Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."* In re Tribune Co., *418 B.R. 116, 129 (Bankr. D. Del. 2009) (quotation omitted). See also,* In re Antonio L. Giordano, *1:11 -bk-13943.*

### C.  PROMESA's automatic stay was not intended to frustrate the granting of the kind of relief Movants seek in the Litigation.

Pursuant to § 405(m)(5) of PROMESA, Congress deemed that the stay component of the legislation is "essential to stabilize the region for the purposes of resolving" Puerto Rico's financial

crisis.

Movants are a small group of public servants of Puerto Rico who have been deprived of a fundamental earned property right which translates to a fixed and relatively nominal amount. Movants are not holders of Puerto Rico bonded debt, its securities or financial instruments. Then Litigation sought, as the ultimate relief, the surrender or their property, which the Defendants were statutory required to hold in trust for them, which does not exceed 3.3 million dollars of hard earned salary by Movants. That is but a fraction of the over 70 billion on bonded debt and over 30 billion of unfunded pension liability that PROMESA was intended to allow the Commonwealth to restructure.

The Litigation in the Commonwealth Court is not the type of litigation that the PROMESA stay was aimed at halting. ("the stay is designed not only to "allow the Government of Puerto Rico a limited period of time 'to negotiate' a voluntary resolution with its creditors instead of defending on numerous , costly creditor lawsuits", but also "to ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment" *see*, Id. §405(n)(2) and § 405(m)(5)(B), (A)).

Further, the declaratory and equitable relief sought by Movants, is not inapposite to PROMESA's automatic stay of all liability-related litigation against the Commonwealth of Puerto Rico, which was or could have been commenced before the law's enactment. *See*, § 405(b). Assuming the Litigation proceeds and the Commonwealth Court rules in favor of Movants, the Commonwealth in that scenario would be disbursing Movants' own property (in the form of earned salary (sick leave)). Which, at most, should be deemed the equivalent of the Commonwealth holding property of a third party under its possession.

The letter of Act 8 and Act 3 are clear. Public servants are entitled to the right to cash

liquidations for sick leave accrued in excess in the case of liquidations upon the employee's separation from public service, up to a maximum of ninety (90) days, either: (1) on or before March 31 of each year under Act 8, provided the fiscal situation, so allows or; (2) upon separation of service under Act 3 (without any proviso for "provided the fiscal situation, so allows.") Is Movants contention that pursuant to both, Act 8 and Act 3, Defendants needed to segregate in hold in trust Movants' earned salary, in the form of excess sick leave and by failing to do so they violated also a fiduciary duty to Movants.

Is clear that: (i) an employee- employer existed between Movants and Defendants; (ii) retention by Defendants of Movants' earned salary and property would be inequitable under the circumstances and; (iii) existence of an obligation to segregate Movants' excess accumulated sick leave and hold in trust said amounts is essential to Movants' relief and effectuation of justice.

Therefore, Movants, in the alternative, would request the Commonwealth Court to declare and order Defendants to create a constructive trust and segregate and hold in trust Movants' property in the form of excess sick leave in light of their violation of law and fiduciary duty.

### D.  The Automatic Stay Should Not Immunize the Commonwealth from violations to its own Laws.

PROMESA's purpose was not meant for the allowance of unfair, disparate application of the Title III Automatic Stay to shield the Commonwealth from unlawful acts by one of its instrumentalities.  That would defeat the public policy behind the PROMESA statute. PROMESA's intent was not to leave the inhabitants of Puerto Rico without recourse against the Commonwealth for any constitutional or statutory violations it commits against its residents.  It is clear that any retroactive application of Act 26 to deprive Movants of their prior statutory vested rights in their property is prohibited by Commonwealth Constitution and the laws of the

Commonwealth of Puerto Rico. Thus, the automatic stay must be lifted to allow the Commonwealth Court to rule upon the lawfulness or unlawfulness of the Department of Education's purported retroactive application of Act 26 to deprive Movants' prior statutory rights to their property in the form of earned salary (excess accumulated sick leave pay).

Therefore, in situations such as this one, the stay should be lifted inasmuch as the harm flowing from the continuation of those alleged constitutional violations outweighs the detriment that the Commonwealth would suffer if the stay were vacated to address them. *See generally*, Brigade Leveraged Capital Structures Fund Ltd. V. García-Padilla, 217 F. Supp.3d 508, (D.P.R. 2016).

**E.  Impact of the stay on the parties and the balance of harms.**

The stay should be lifted on equitable grounds since the interest of justice and the balance of harms so requires based on the following factors:

**Teachers are the only Public Servants Affected**. The resolution of this matter will have little to no impact on the Commonwealth's resources in terms of litigation or financial status, given the amounts involved and the fact that it is a limited population, Movants and other similarly situated retired teachers that requested retirement on or before January 31, 2017. Inasmuch, as other public servants do not face the constrains imposed by Law 160 to delay the separation of service date, from the approval of their retirement. Pursuant to AFT's Master Proof of Claim, Movants' claim amounts to an approximate $3.3 million and estimating other similarly situated teachers, the claimed amount was estimated 6.6 million. Currently, the Cash Position of the Commonwealth is $9.953 billion. Even if the Commonwealth Court were to order the release of Movants' property in the approximate amount of $3.3 million such order would not significantly impact the Commonwealth's ability to successfully complete the bankruptcy. (See, Summary of

18

Bank Account Balances for the Government of Puerto Rico and its Instrumentalities published by
AAFAF on July 31, 2018.)

By contrast, it is of critical importance to the teachers who have had de minimis salaries
and inadequate pensions, with the threat of additional cuts looming to their only source of income
in retirement.

**Movants Are Suffering a Real and Palpable Hardship**. Movants, who are Teachers, are
experiencing a real hardship. Unlike other employees of the Commonwealth, Teachers do not
contribute to, nor receive upon retirement Social Security benefits. Most, do not qualified or are
not entitled to Medicare.  Their pensions, which are threatened by future proposed reductions are,
in most cases, their sole source of income and source to acquire medical treatement. Depriving
Movants of their statutory previously acquired property right to their earned salary in the form of
excess accumulated sick leave pay, creates an additional hardship upon Movants that is not in
accordance with the balance of equities and does not serve justice.

**Equitable Relief is Justified Since Movants Have No Real Alternative Remedy Under
the Law.**  Movants property right to their salary in the form of excess accumulated sick leave pay
accrued before March 31, 2017. That is, within one hundred and eighty (180) days of the filing of
the Title III case of the Debtor.  However, since Section 507(a)(4)(A) of the Bankruptcy Code, 11
U.S.C. Sec. 507(a)(4)(A) is not incorporated by PROMESA, Movants are not automatically
granted priority of payment on their claim, if allowed.  Under the provisions of the Bankruptcy
Code, if this were a Chapter 11 proceeding, for example, Movants would have been granted a
priority on their sick leave pay claim, inasmuch as under Commonwealth law, sick leave pay,
constitutes salary. Under PROMESA, Movants are not afforded such priority automatically.

Lastly, it is highly unlikely that the Commonwealth will voluntarily grant Movants the priority of Section 507(a)(4)(A) through the Administrative Resolution Process for Proof of Claims. Therefore, Movants have no alternate remedy at law or equity than to seek lift of stay. Which in the balance of equity makes more compelling the lifting of the stay in the Litigation.

## CONCLUSION

Pursuant to the aforementioned arguments, the automatic stay in the  Litigation should be lifted pursuant to 11 U.S.C. Sec. 362 (d) (1) for *cause,* including, but not limited to reasons stated in this motion for relief from stay to allow the Commonwealth Court not only to enter the appropriate declarations as to Movants' right under Commonwealth law, but also to allow the Commonwealth Court to issue and enforce a remedy, in equity or in law, redressing any deprivationby Defendants to Movants' right to due process and property rights.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 10th of September, 2018.


**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


/s/ *Jose Luis Barrios-Ramos*

Jose Luis Barrios-Ramos
USDC 223611
1801 McLeary Ave. Suite 303
San Juan, P.R. 00911
Telephone: (787) 593-6641
Facsimile: (787)764-4430
Email: barrios.jl@outlook.com