UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | PROMESA<br>TITLE III |
| THE FINANCIAL OVERSIGHT   MANAGEMENT<br>BOARD FOR PUERTO RICO, | |
|     as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
|          DEBTORS | |
| IN RE: | PROMESA<br>TITLE III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT<br>BOARD FOR PUERTO RICO, | |
|     as representative of | No. 17 BK 4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY<br>("PREPA") | |
|         DEBTOR | |

MOTION FOR RELIEF FROM STAY AND FOR A RULING THAT A
JUDGMENT ON A CLAIM ARISING FROM THE TAKING OF PROPERTIES WITHOUT
JUST COMPENSATION IS NOT SUBJECT TO REDUCTION OR COMPENSATION IN
BANKRUPTCY

TO THE HONORABLE COURT:

COMES NOW creditor, Ismael L. Purcell Soler, Alys Collazo Bougeois and the
community of property they compose (hereinafter "Movant"), represented by the undersigned
attorney and respectfully moves the Honorable Court for an order pursuant to 11 U.S.C. § 362(d)
for  relief from the automatic stay of 11 U.S.C. § 362 (a), a ruling that a provisional remedy by a
state court ordering the Puerto Rico Electric Power Authority (hereinafter "PREPA"), to remove

equipment in violation of  National Electric Security Code and State Regulation causing harm to
Movant, should not remain subject to the automatic stay, a ruling that a judgment based on a claim
arising from a taking of properties without just compensation is not subject to reduction or
compensation in bankruptcy, and in support thereof state and request as follows:

## I.      COMPLIANCE WITH CASE MANAGEMENT ORDER

1.  On June 5, 2018, in compliance with the case management order and pursuant to
Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as
amended by Order Further Amending Case Management Procedures (docket no. 1512), Fourth
Amended Case Management Order (docket no. 2839) and Sixth Amended Notice, Case
Management and Administrative Procedures Order (docket no. 3804), and subject to Paragraphs
III. F and III.T, Movant contacted counsel for the Oversight Board and AAFAF by electronic-mail
to advise them of Movant's intent to seek relief from the automatic stay provisions of Section 362
(a) of the Bankruptcy Code.

2.  Ismael L. Purcell Soler, Esq., in compliance with the above mentioned Order Further
Amending Case Management Procedures, submits an unsworn statement under penalty of perjury
certifying he has conferred with debtor's counsel and no agreement was reached. (Exhibit A).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

3.  Ismael L. Purcell Soler and Alys Collazo Bougeois, married to each other under prenuptial
agreement, acquired on April 2004 the residential property located at Urb. Jacaranda, street C, C-
5, Ponce, PR, 00730.

In the back of Movant's residential property there was a retaining wall that collapsed in
1985 during the passage of a tropical storm.

The collapsed retaining wall and the erosion of the terrain in Movant's residence caused

property damage and exposure to PREPA's primary power lines that resulted in a "State of Need or Emergency"; either the wall was rebuilt and power lines removed or risk losing life and property.

The financial institution that financed the purchase of the property required the repair of the retaining wall. To that end, Movant requested the corresponding construction permits and informed PREPA of a dangerous situation caused by an electric pole, transformer equipment and primary lines located on the same edge of the eroded slope of the terrain in the back of Movant's residence. To deal with this situation, Mr. Purcell met with PREPA'S personnel and delivered letters, copies of drawing and permits for the construction work in PREPA's offices located in Ponce. Faced with the inaction of PREPA and the risk of loss of property during the approaching hurricane season, Mr. Purcell sought the assistance of former PREPA Southern Regional Director, Eng. Benjamín Morales. Mr. Morales instructed Movant to send a copy of all relevant documents; letters, copy of plans, permits, insurance etc… to Eng. Iván Torres Torres, Administrator of Technical Operations for PREPA's Ponce Region.

In addition, Mr. Morales warned Movant that conditions in their residence were of "extreme danger" and because of those circumstances; PREPA had to remove the primary lines, the electric pole and their equipment at its cost. Mr. Morales advised movant to request the intervention of the **Office of the Citizen's Procurator (Ombudsman)** in case PREPA refused to take action.

On July 1, 2004, Movant sent by certified mail to Engineer Iván Torres of PREPA a copy of the explanatory letters, blueprints and specifications, in short, everything related to the reconstruction work. As a result, PREPA sent an employee who refused to inspect the area and from a distance, the front of the property, indicated Movant that the electric pole and primary lines represented no risk. Instead, the employee suggested that if removal was desired, Movant would

3

have to pay him and his crew once he had "talked it over and square it" with his supervisor.

Movant rejected this request. A few weeks later a second employee contacted Movant alleging to have inspected the area and again insisted on the payment of a sum as a requirement for the removal of the electric pole and its equipment. It was this illegal solicitation and the risk of loss of life and property that led movant to request the intervention of the Office of the Citizen's Procurator or Ombudsman.

The Office of the Procurator intervened and caused PREPA to appoint an employee to inspect the situation alleged by movant. Ms. Antonia Rodriguez, an auditor appointed by the Office of the Citizen's Procurator, informed Movant that an employee from PREPA would contact them for a joint inspection of the property. The joint inspection never took place. However, the employee rendered a negative report to the Office of the Procurator rejecting the alleged risk conditions. The lack of credibility of the report caused the Citizen Procurator's Office to require a joint ocular inspection with PREPA engineers. The ocular inspection was carried out on September 24, 2004 by Mrs. Antonia Rodríguez, of the Office of the Citizen's Procurator, and PREPA engineers, Mr. Eddie Oliveras and Mr. Héctor Colón.

As a result of the ocular inspection, PREPA finally acknowledged the situation of danger and agreed with Ms. Antonia Rodríguez Gómez, of the Office of the Procurator, as representative of petitioner pursuant to Law 134 of June 30 1977, as amended  (2 L.P.R.A. § 701-727),  the following:

a) PREPA had to install a metal pole in a lower land lot located behind the new retaining wall.

b) PREPA would relocate the lines to the new electric pole prior commencement of work.

c) PREPA would contact Choice and PRTC to have them remove their lines and equipment

from the pole prior to taking away the post from residence C-5.

d) Movant would modify the design of the retention wall and complete all work prior to removal of old electric pole by PREPA.

Although these agreements were not expressed in a formal stipulation or contract, they arise from the formal documents sent by Mrs. Antonia Rodríguez to petitioner, more importantly, they were recognized in the September 28, 2004, letter sent by Engineer Iván Torres Torres, PREPA's Administrator of Technical Operations to Eng. Colón of the Ponce Permits Office.

PREPA failed to comply with the agreements reached with the Office of the Citizen's Procurator. PREPA did not remove the electric pole, their remaining equipment and has not followed up on their request to telecommunication companies to withdraw their lines and equipment.

In March of 2011 the contractor who built the retaining wall in 2004 had to perform mayor repairs to it. At that time Movant was warned by the contractor of the violation of the easements limits by PREPA's electric pole and equipment location.

The Office of the Procurator once again intervened, requiring PREPA unsuccessfully to conclude and comply with the 2004 agreement. PREPA ignored the Office of the Procurator. In view of this situation, on October 18, 2011, a letter was sent to the PREPA by certified mail requesting compliance or in the alternative, notifying Movant's intention to file a lawsuit.

4.  On September 26, 2012, movant filed a civil action against PREPA, PRTC-CLARO and CHOICE CABLE TV, civil case: JDP 2012-0406.

5.  On December 12, 2012, PREPA presented its response to the complaint. As part of the discovery process, Movant provided PREPA with a survey report confirming that their property contravened the "Access Easements" area that burdened Movant's residence and therefore

5

constitutes an unauthorized occupancy or taking of movant's property. In response, PREPA conducted an ocular inspection of the property and the easement in dispute. As a result of said inspection, Mr. Luis R. Soto Vega, prepared an expert report for PREPA dated January 30, 2014.

The report prepared by Eng. Luis R. Soto Vega acknowledged that PREPA'S electric pole and equipment infringes the limits of the easement. It concludes the said equipment was installed outside the ten foot zone established in the deed of constitution of easement. However, Eng. Luis R. Soto Vega invoked as a defense or justification for PREPA'S actions, the acquisition of the area used in violation of the limits of the easement by "acquisitive prescription" pursuant to Law 143 of July 20, 1979, as amended, 27 L.P.R.A. § 2151-2155.

6.  On April 12, 2014, PREPA filed a counterclaim against Movant. PREPA alleged that Movant had constructed a retaining wall in their residence without their knowledge and consent, depriving PREPA from the rights provided by the public service easement encumbering Movant's property.

On May 5, 2015, Movant received their expert's report prepared by Eng. Benjamin Morales. The report corroborated among other things, that PREPA's electric pole and its parts were a substitute located outside the access easement area, in contravention of Movant's property rights.  It points out that the access easement had been renounce by PREPA as result of the relocation of other electric poles and its parts from their original locations in land lots C-2, C-3, C-5 and C-6. It also concluded that the twenty year acquisitive prescription period required by Law 143 of July 20, 1979, never consummated in favor of PREPA and **more important, the electric pole current location, its parts and equipment represent an infraction of "clearance standards" set forth in the National Electric Security Code (NESC), adopted by PREPA's regulation titled "Urban Distribution Standard Manual" or "Manual de Normas de**

6

**Distribución Urbana", specifically standard M 23-1**. Clearance standards refer to the required separation or clear distance between distribution lines and other surfaces to ensure public or general safety.

The report also indicates that installation of electric lines in the electric pole's current location would create a trajectory that contravenes National Electric Security Code clearance standards as well PREPA's own regulation, endangering the life of residents due to lack of separation between the lines and existing structures in Movant's as well as neighbor's residence.

During June of 2015 Movant received from the Ponce Construction Permit Office a copy of a letter issued by PREPA, signed by Eng. Iván Torres Torres, directed to the permit's officer responsible for the approval of the construction of the retaining wall in Movant's residence. In this letter <u>PREPA admits having relocated the original electric pole and its parts in 1985, knowing of the danger in Movant's residence as a result of a joint inspection with the Ombudsman, requiring certain modifications to the drawings and consenting construction of the retaining wall.</u>

7. On August 26, 2015, Movant filed a Motion requesting summary judgment. Approximately one year and nine months elapsed without PREPA opposing the request for summary judgment in accordance with Rule 36 of Civil Procedure on summary judgment.

8. On May 24, 2017, the Honorable Court issued a partial summary judgment. The Court's partial judgment dismissed the counterclaimed filed by PREPA and denied judgment in favor of Movant until an evidentiary hearing for compensation takes place. The Court's conclusions of fact and law established, among other, the following:

- PREPA's electric pole, its parts and equipment was located outside the easement limits and its current location constitutes an illegal occupancy or use of Movant's property.

- PREPA had knowledge of the dangerous circumstances and consented construction of

the retaining wall.

- PREPA admitted having relocated its property in 1985 in contravention of easement variation guidelines established in the deed of constitution of public easement.

-PREPA did not acquire Movant's  property through "acquisitive prescription" established in Law 143 of July 20, 1979, as amended, 27 L.P.R.A. § 2151-2155. The twenty year period had not elapsed in favor of PREPA.

9.  On June 1, 2017, the defendant filed a motion for reconsideration. On June 8, 2017, the motion for reconsideration was "denied" by the Court of First Instance. On July 18, 2017, the defendants filed their appeal before the Puerto Rico Court of Appeals, case no. KLAN 2017-01020.

10. On June 30, 2016, Law114.187, known as the Puerto Rico Oversight Management and Economic Stability Act (PROMESA) was enacted, 48 USC § 2101 et seq.

11. On July 2, 2017, debtor, Puerto Rico Electric Power Authority by its representative and pursuant to section 315 of the Puerto Rico Oversight, Management, and Economic Stability Act (hereinafter "PROMESA"), the Financial Oversight and Management Board for Puerto Rico filed a voluntary petition in the United States District Court for the District of Puerto Rico under Title III of PROMESA seeking relief from creditors.

12. On July 19, 2017, PREPA filed a motion before the Puerto Rico Court of Appeals requesting the automatic stay of the proceedings in case number KLAN2017-01020 pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA.

13. On December 27, 2017 the Puerto Rico Court of Appeals, after consideration of several motions for dismissal and request for continuation of the proceedings under the principles set forth in _Carley Capital Group, et al., Appellants, v. Fireman's Fund Insurance Company_, 889 F.2d 1126

(D.C. Cir. 1989) and _Trans- Caribbean Lines V. Tacor Marines_, 49 B. R.  360 (Bankr. S. D.  Fla.

1985), issued a judgment staying the appeal process.

## III.   APPLICABLE LAW

14. Section 362(d) (1) of the Bankruptcy Code (11 U.S.C. §362(d) (1)) reads as follows:

> (d)   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…

15. The courts examine numerous different factors, including those set forth in _In re Sonnax Indus._, _907 F.2d 1280_ to determine whether "cause" exists to grant relief from stay. The twelve factors adopted by the court in _Sonnax_ are:

> (1) whether relief would result in partial or complete issue resolution; (2) lack of connection with or interference with bankruptcy case; (3) whether other proceeding involves debtor as fiduciary; (4) whether specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice interests of other creditors; (8) whether judgment claim arising from other action is subject to equitable subordination; (9) whether movant's success in other proceeding would result in a judicial lien avoidable by debtor; (10) interests of judicial economy and expeditious and economical resolution of litigation; (11) whether parties are ready for trial in other proceeding; (12) impact of stay on parties and balance of harms. _In re Sonnax Inds._, _supra, at 1287_ citing _In re Curtis_, _40 Bankr. 795, 799-800 (Bankr. D. Utah 1984)_.

Other courts have established that the _Curtis_ moving party "need not prove a plurality of

*Curtis* factors before it has shown cause existed for lifting the stay." *Goya Foods v. Unanue-Casal (In re Unanue-Casal), 159 B.R. 90, 96 (1993).* Some courts have relied on only a few factors to determine that sufficient cause existed to lift the stay. See, e.g., *In re Unioil, 54 Bankr. 192, 194-195 (Bankr. D. Colo. 1985)* (court considered five factors such as resolution of the issues, lack of connection with the bankruptcy case, judicial economy and balance of hurt). See also *In re Highcrest Management Co., Inc., 30 Bankr. 776, 778-779 (Bankr. S.D. N.Y. 1983).* (Court considered only the debtor's misconduct, without any *Curtis* factors).

The court in *Goya Foods v. Unanue-Casal (In re Unanue-Casal), supra, at 96* correctly stated that "the question of what is cause . . . is developed primarily by case law." In other words, the determination of cause is made on a case by case basis.

16. The Takings Clause of the Fifth Amendment mandates that ***"private property [shall not] be taken for public use, without just compensation."*** U.S. Const. amend. V. This amendment is made applicable to the states, and thus to municipalities, through the Fourteenth Amendment. U.S. Const. amend. XIV. *In re City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014)* citing *Dolan v. City of Tigard, 512 U.S. 374, 383, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994)*; *Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 122, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).*

17. In *First English Evangelical Lutheran v. Los Angeles*, 482 U.S. 304, 315-16 (1987), the Supreme Court of the United States stated regarding the Fifth Amendment:

> This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).

> We have recognized that a landowner is entitled to bring an action
> in inverse condemnation as a result of "'the self-executing character
> of the constitutional provision with respect to compensation. . . .'"
> _United States v. Clarke,_ 445 U.S. 253, 257 (1980), quoting 6 P.
> Nichols, Eminent Domain § 25.41 (3d rev. ed.1972).

18. The Fourteenth Amendment of the United States Constitution provides that **_"nor shall any State deprive any person of life, liberty, or property, without due process of law."_** (Emphasis added). U.S. Const. amend. XIV. The limitations of the Fifth Amendment also apply, through the Due Process Clause of the Fourteenth Amendment, to takings by state governments and their subdivisions. See, e.g., _Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992)._ Consequently, the Fifth Amendment is applicable to municipal debtors, and a municipal debtor may not take property without just compensation.

19. The Supreme Court of the United States has addressed the takings issue in the context of bankruptcy on several occasions, holding each time that the bankruptcy power is limited by the Fifth Amendment. See _United States v.Security Indus. Bank, 459 U.S. 70, 75, 78 (1982)_; _Wright v. Vinton Branch of Mtn. Trust Bank, 300 U.S. 440, 456-58 (1937)_; _Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935)._ The protections afforded by the Fifth Amendment are not abrogated by the Bankruptcy Code. The legislative history of the Bankruptcy Code indicates that the drafters of the Bankruptcy Code considered the Fifth Amendment to be a limitation upon the impairment of property rights in bankruptcy, and current bankruptcy law gives great deference to property rights. Julia Patterson Forrester, Bankruptcy Takings, 51 Fla. L. Rev. 851, 863 (Dec. 1999).

20.  Article II, section 9, of the Constitution of the Commonwealth of Puerto Rico, P.R.

Const. Art. II, § 9, states that ***"private property shall not be taken or damaged for public use
except upon payment of just compensation and in the manner provided by law."*** (Emphasis
added).

21.  Similarly, Art. 282 of the Civil Code of Puerto Rico, 31LPRA § 1113 states that "no
person shall be deprived of his ownership except it be by a competent authority and a justified
purpose of public utility or social benefit, and upon payment of just compensation which shall be
fixed in the manner provided by law".


## IV.      DISCUSION AND ARGUMENT

22.  Movant submits that the stay provisions of 11 U.S.C §362(a) (1) are inapposite to civil
case under appeal No. KLAN2017-01020 inasmuch as it consists of two actions one by Movant
involving a temporary occupancy or taking by PREPA for unauthorized use and possession of
Movant's property, which is pending determination of just compensation, and a counterclaim by
PREPA, dismissed by the inferior court, that sought remedies provided under Law 143, Public
Service Easements, 27 LPRA § 2151-2155.

(A). Debtors counterclaim pursuant to Law 143 of July 20, 1979, 27 L.P.R.A. § 2151-2155.

In *Carley Capital Group, et al., Appellants, v. Fireman's Fund Insurance Company, supra*,
interpreting 48 U.S.C. section 362 (a), the court expressed: "We readily agree that this
unambiguous provision **by its terms only stays proceedings against the debtor,**" and "**does not
address actions brought by the debtor** which would inure to the benefit of the bankruptcy
estate".

In *Trans-Caribbean Lines V. Tacor Marines, supra*, the Court indicates, in response to an

argument objecting to a judicial determination for allegedly violating the stay order, the following:

> The answer to this argument is that "Section 362 by its terms **only
> stays proceedings *against* the debtor. The statute does not
> address actions brought *by* the debtor. . . .**" *Assoc. of St. Croix
> Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448
> (3d Cir., 1982). **Section 362 does not stay the independent
> prosecution of a counterclaim by a party in reorganization**. *In re
> Regal Construction Company, Inc.,* 28 B.R. 413, 416 (D. Md.,
> Bkrcy., 1983). If *prosecution* of a counterclaim (or a crossclaim) is
> not barred by Section 362, **then *dismissal* of that counterclaim (or
> crossclaim) cannot be prohibited by that statute.** This Court
> believes that the argument of Defendants Metalock and EMS, in
> opposition to this Court's decision to dismiss their crossclaims in
> this action, is without merit. This Court will, therefore, deny their
> motion for a new trial. (Emphasis added).

The counterclaimed filed by PREPA, regardless of its merits, and the corresponding appeal

must be considered to benefit debtors estate, and therefore, subject to exclusion from section 362

(a) cited previously.

(B) Movant's action seeking compensation from PREPA. (Inverse Condemnation)

Section 362(d) (1) of the Bankruptcy Code (11 U.S.C. §362(d) (1)) reads as follows:

> (d)   On request of a party in interest and after
> notice and a hearing, the court shall grant relief from the
> stay provided under subsection (a) of this section, such
> as by terminating, annulling, modifying, or conditioning
> such stay -- (1) for cause, including the lack of adequate
> protection of an interest in property of such party in
> interest…

Movant's domain action, pursuant to 11 U.S.C §362(d), should be entitled to relief from

the stay provisions of 11 U.S.C §362 (a) in order for case number KLAN2017-01020 to continue

unimpeded by the Title III Petition.

The final compensation that could be awarded Movant by judgment is not subject to

reduction or compromise in the Title III case because it is premised on a constitutional claim for the unauthorized occupancy without just compensation or taking of Movant's property by PREPA, and therefore, the Court should lift the automatic stay in order to resume the appeal process in case no. KLAN2017-01020 and any subsequent determination of just compensation.

Furthermore, because debtor must pay the judgment that may be entered in favor of Movant in full regardless of whatever reduction or compromise of claims is made through a plan of adjustment, the automatic stay does nothing more than delay Movant's constitutional right to receive their just compensation.

The Supreme Court of the United States has addressed the takings issue in the context of bankruptcy on several occasions, holding each time that the bankruptcy power is limited by the Fifth Amendment. See *United States v.Security Indus. Bank, 459 U.S. 70, 75, 78 (1982)*; *Wright v. Vinton Branch of Mtn. Trust Bank, 300 U.S. 440, 456-58 (1937)*; *Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935)*.

The protections afforded by the Fifth Amendment are not abrogated by the Bankruptcy Code. The legislative history of the Bankruptcy Code indicates that the drafters of the Bankruptcy Code considered the Fifth Amendment to be a limitation upon the impairment of property rights in bankruptcy, and current bankruptcy law gives great deference to property rights. Julia Patterson Forrester, Bankruptcy Takings, 51 Fla. L. Rev. 851, 863 (Dec. 1999).

Although Congress may authorize PREPA to impair obligations in its Title III bankruptcy, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. Therefore, any final judgment after appeal that may be entered in case JDP 2012-04062, must be satisfied in full. Anything short of full payment thereof would deprive Movant of just compensation in violation of the Fifth Amendment.

14

As the Constitution of the United States, the Constitution of the Commonwealth of Puerto Rico in its Article II Section 9, provides that private property will not be taken for public use unless it is by the payment of just compensation.

The Civil Code of Puerto Rico, 31 LPRA § 1113 states: "No person shall be deprived of his ownership except it be by a competent authority and for justified purpose of public utility or social benefit, and upon payment of just compensation which shall be fixed in the manner provided by law".

The only limitations to the power of expropriation of the State are to pay just compensation and to act in the form provided by law. _ELA v. Soc. Coop. Agricola e Industrial Sucesión J. Serrallés y otros_, 104 DPR 392 (1975).

The Code of Civil Procedure of Puerto Rico, which encompasses Puerto Rico's Eminent Domain Law, 32 L.P.R.A. § 2901 et seq., states at section 2901: "No person shall be deprived of his property, either in whole or in part except in accordance with the provisions of § 1113 of Title 21 and of § 2901- 2913 of this title."

Section 2909 of the Puerto Rico's Eminent Domain Law, applicable to the facts asserted by Movant against PREPA, establishes the procedure and responsibilities that must be complied with when the State temporary occupies or takes possession of private property, known as "temporary condemnation". This section requires the State to pay just compensation for the temporary occupancy from the day it took possession of the property. Section 2909 states:

> (1) In any proceeding heretofore or hereafter instituted in any court of Puerto Rico for the condemnation of any property or any permanent or temporary interest or easement therein, the plaintiff, upon the filing of the petition, or at any time while the proceeding is pending, without regard to whether or not title has been taken under § 2907 of this title, may take possession of the property or any

15

part thereof to the extent of the interest to be acquired, and may proceed with such use thereof or such works thereon or therewith as have been authorized by law.

(2) Prior to the taking of such possession, provision shall have been made for the payment of just compensation for said possession for such period as same shall continue, as estimated by said plaintiff, either by previous appropriation by the Legislature, or, if funds are to be provided otherwise than from the Treasury of Puerto Rico, by the deposit in court of moneys in such amount as shall be estimated by the plaintiff to be just compensation for said possession. The defendant or defendants may move at any time in the court to increase or change the amount of said deposit and the court shall make such order as shall be just in the premises and as shall adequately protect the defendant. The court shall have power to issue such orders as may be necessary to enforce the right of the plaintiff to the possession.

(3) Compensation for use of the property in advance of or without taking title while the proceeding is pending, shall be paid on a monthly or quarterly or other periodic rental basis as long as such possession endures, or in a lump sum, and said compensation shall be subject to abatement for any benefits, use, income, rents, or profits derived from the property by the owners during the period of possession.

(4) The compensation for a period of possession without taking title may be fixed by agreement or determined tentatively by the plaintiff and paid according to such agreement or determination, and in the absence of agreement, just compensation for such period of possession shall be ascertained and awarded in the proceeding, and established by the judgment therein, and may be less or more than the amount tentatively determined, and an addition to or set-off against the amount finally awarded as compensation for the taking may be made in order to adjust any excess or deficiency in the amount paid for a period of temporary possession.

(5) No action shall be taken under the provisions of this section unless the head of the executive department or government agency, bureau, or instrumentality empowered to acquire the property, certifies that in his opinion the compensation definitely fixed under this section shall be within any limit prescribed by the Legislature of Puerto Rico in connection with the price or amount to be paid."

In the exercise of the power of eminent domain of the State, there are exceptional cases in

16

which the State can occupy or seize a real right without having initiated the compulsory expropriation judicial procedure and without having paid the fair compensation. It is precisely for these extraordinary cases of physical seizure or taking of a real right without previous deposit of a just compensation that the action for inverse condemnation has been established. *Heftler lnterrnarional, Inc. v. Planning Board*, 99 D.P.R. 454, 460 (1970).  It is called inverse because it is brought by the owner of the property against the State to obtain the compensation to which he is entitled. *ELA. v. Northwestern Const.*, 103 D.P.R. 377 (1975).

The inverse action guarantees the State's compliance with the constitutional provisions that state that no one shall be deprived of his property without due process of law and without having mediated compensation. *Demetrio Emilio Amador Roberts et als., v. ELA de Puerto Rico*, 191 DPR 268 (2014)

It has been established at least since *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), that claims for just compensation are grounded in the Constitution itself:

> The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. *That right was guaranteed by the Constitution.* **The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim**. The form of the remedy did not qualify the right. *It rested upon the Fifth Amendment. Statutory recognition was not necessary*. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the Amendment. *The suits were thus founded upon the Constitution of the United States.*" *Id.,* at 16, 54 S. Ct., at 27.

In the case at hand, PREPA occupied Movant's property without following condemnation procedures set forth in Puerto Rico's Eminent Domain Law 32 L.P.R.A. § 2909.

The right to seek just compensation from PREPA for temporary occupancy or taking of Movant's property represents an inverse condemnation afforded protection by the Fifth

Amendment, therefore should not be abrogated by the Bankruptcy Code.

On July 26, 2018, a stipulation was executed in the case *Puerto Rico Electric Power Authority v. The Estate of Gabriel Fuentes Vázquez*, (docket nos. 1065-1, 1512-1, 2839-1). It modified the Title III Stay to the extent necessary to permit the Prepetition Action seeking just compensation to proceed in the ordinary course until its conclusion, including the rights of the movant to withdraw any funds awarded there to. This confirms PREPA's acknowledgement of their obligations in regard to citizen's property rights under Puerto Rico's Eminent Domain Law, 32 L.P.R.A. § 2901 et seq., Section 1113 of the Civil Code of Puerto Rico, 31 LPRA § 1113, the Fifth Amendment of the Constitution of the United States and Article II, Section 9 of the Constitution of the Commonwealth of Puerto Rico. There is no justification for Movant's case to be treated any differently.

27.    Assuming, in arguendo, that the stay of 11 U.S.C. § 362 (a) would be applicable to the case no. KLAN2017-01020, there still would be cause for terminating and relieving Movant from the stay provision as Movant meets several of the *Sonnax* factors or they are otherwise inappropriate as it is explained as follows.

Of the twelve factors adopted by the court in *Sonnax* to determine if cause exists to grant relief from stay at least eight weigh in favor of Movant:

a)     Movant has a civil action (inverse expropriation) seeking compensation from PREPA for illegal occupancy or taking of Movant's property and the removal of PREPA's equipment from their property. PREPA's equipment remains in violation of movant's property rights, representing a "continuous claim or damage" since PREPA remains profiting from the illegal use said property. PREPA filed a counterclaim seeking compensation and other remedies pursuant to Law 143 of July 20, 1979, as amended, 27 L.P.R.A. § 2151-2155. The court of first instance in Ponce issued

partial summary judgment dismissing PREPA's counterclaim, but required an evidentiary hearing to determine just compensation prior final judgment in regard to movant's claim. PREPA appealed the courts judgment. Relief from stay would allow the appeal process sought by PREPA to provide a complete resolution of all controversies pending before the court.

b)      The civil action filed by Movant and PREPA have as common ground civil law principles relating to "easements for public service" set forth by special Law 143 of July 20, 1979, as amended, 27 L.P.R.A. § 2151-2155. The Puerto Rico Court of first instance in Ponce appointed a judge who informed the parties he had been an engineer for PREPA with expertise in the substantive law applicable to the case before the court. It is also important to point out that PREPA's appeal concerns not only the interpretation of Law 143, but the court of instance determination pursuant to Puerto Rico's Rule 36 of Civil Procedure regarding requests for summary judgment. In *Meléndez González vs. M. Cuebas, Inc. y Bohío International Corp.*, 2015 T.S.P.R. 70, the Supreme Court of Puerto Rico provided the Puerto Rico Court of Appeals with specific review standards for the new requirements that must be met by parties requesting and those opposing summary judgment under Rule 36 of Civil Procedure. Therefore it is the Puerto Rico Court of Appeals the court with necessary expertise to review the judgment on special Law 143, temporary expropriation and Rule 36 of Civil Procedure.

c)      Resolution of case no. KLAN2017-01020 pending before the court of appeals will not interfere with the Title III case since there is no relationship between the issues and/or controversies. On June 10th, 2017 Sucesión Pastor Mandry Mercado, represented by counsel María E. Vicéns Rivera, requested a relief from automatic stay for an inverse condemnation case stayed by the Commonwealth of Puerto Rico (hereinafter "Debtor") pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA,

were the only issue pending was the determination of just compensation (docket no. 305). Debtor

opposed the request from relief from stay and the Court lifted the stay to allow the litigation to

proceed to a determination of damages *prior* to the entry of judgment (Memorandum Order, docket

no. 600). Moreover, the Court stated that "allowing the Litigation to proceed would not interfere

with the Title III case." (Memorandum Order, page 3, ¶2).

In the case at hand, the appeal by PREPA of a partial summary judgment pursuant to the

requirements of Rule 36 of Civil Procedure poses no interference with Title III issues or

controversies; the only aspect remaining for complete resolution of the case after consideration of

the appeal would be a determination of compensation for the taking and illegal use of movant's

property.

d)      Litigation between PREPA and petitioner before Puerto Rico Court of Appeals will not

 prejudice directly or indirectly any interest of PREPA's creditors.

e)      Movant's right to be paid just compensation for temporary expropriation (inverse

 expropriation) is not subject to equitable subordination.

f)      The controversies under appeal in case no. KLAN2017-01020 before the court of appeals

do not involve debtor as a fiduciary.

g)      The interests of judicial economy and expeditious and economical resolution of litigation

warrant that case no. KLAN2017-01020 is heard by the Court of Appeals due to its expertise in

LAW 143, temporary expropriation and Rule 36 of Civil Procedure Appeals Review Standards, as

well as the advance stage of the case.  In the alternative, removing the case from the state court to

this forum will be in detriment to Movant and PREPA since the costs of litigation will be very

burdensome for both parties, e.g., translation costs.  The court in *In re Saunders, 103 Bankr. 298,*

*299 (B.C.N.D. Fl. 1989)* allowed the stay to be lifted on the state proceedings that had begun almost

two years before the filing of the bankruptcy petition and also found that that judicial economy

was served because the court "could perceive no rationale for curtailing" the efforts of two years

in court only for the court to retrace the same path. In the present case, the parties have been under

administrative review and litigation in state court for a combined period of fourteen years.

Concluding the litigation at the state court will cause no prejudice to PREPA. After all it was

PREPA who filed the appeal.

h)       The Fifth Amendment and the Fourteenth Amendment of the United States Constitution

and Article II, Section 9, of the Constitution of the Commonwealth of Puerto Rico provide that

private property shall not be taken for public use without just compensation. The continuance of

the stay will be detrimental to movant since it will allow PREPA to continue profiting from the

lease of their equipment to communication companies located illegally in movant's property; it

deprives movant of its constitutional right to obtain a determination of compensation for the taking

of their property and more important, it exposes movant and neighbor residents to grave danger in

light of PREPA's equipment contravention of "clearance standards" set forth by the National

Electric Security Code and PREPA's regulation titled "Urban Distribution Standard Manual" or

"Manual de Normas de Distribución Urbana", specifically standard M 23-1. Whereas, PREPA will

suffer no harm if the stay is lifted.


WHERFORE, it is respectfully requested that an order be entered annulling the automatic

stay of 11 U.S.C. §362(a) (1) as to civil case no. KLAN2017-01020, due to its inapplicability to

said case, any subsequent proceedings before state court, specifically, any provisional remedy

directed to free Movant's property from Debtors equipment in light of compliance with _Sonnax_

factors, and holding that any judgment to be entered there in Movant favor is not subject to

reduction or compromise as a result of Debtor's bankruptcy,

**CERTIFICATE**: I hereby certify that pursuant to Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as amended by Order Further Amending Case Management Procedures (docket no. 1512) and Fourth Amended Case Management Order (docket no. 2839) and subject to Paragraphs III. F and III.T, at least fifteen (15) business days prior to filing the present motion for relief from stay to continue a prepetition ordinary course civil action against PREPA, Movant contacted the counsel for the Oversight Board and AFAA by electronic-mail to advise them of the movant's intent to seek relief from the automatic stay and no agreement was reached.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 12th of September 2018.

/s/Ismael L. Purcell Soler
ISMAEL L. PURCELL SOLER
USDC-PR 217402
URB. JACARANDA
35271 CALLE CLAVELINA
PONCE, PUERTO RICO 00730
TEL.  (787) 481-4540
E-mail: pfpurcell2000@yahoo.com

/s/María E. Vicéns Rivera
MARÍA E. VICÉNS RIVERA
USDC- PR 226711
9140 MARINA ST., SUITE 801
PONCE, PUERTO RICO 00717
TEL. / FAX: (787) 259-1999
E-mail: mevicens@yahoo.com

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

Comes now, **Ismael L. Purcell Soler**, in his own right, under penalty of perjury and very respectfully declares that the foregoing is true and correct:

1.      On June 5, 2018, I sent an email to Herman Bauer, Esq., Ubaldo Fernández, Esq., Kevin Finger, Esq. notifying the fact that a Lift Stay Notice had been sent to them that same day, regarding the civil action pending at the Puerto Rico First instance Court in Ponce, *Ismael L. Purcell Soler, Alys Collazo Bougeois v. Puerto Rico Electric Power Authority, civil case no. J DP 2012-0406 (605).*   An Appeal was filed by PREPA July 18, 2017, case number: KLAN 2017-01020.

2.      On June 19, 2018, Katiuska Bolaños replied by e-mail requesting to confer with Movant.

3.      In response to the email sent to counsels on June 5, 2018 a conference call was held on June 20, 2018, with Katiuska Bolaños Lugo, Esq. The result of the same being that Mrs. Bolañós would get back to her client for an answer and would contact me again.

4.      On July 18, and July 26, 2018 Mrs. Bolaños sent an e-mail with a settlement agreement to resolve the Lift of Stay petition. I could not respond since I was not in Puerto Rico at the time.

5.      On August 6, 2018, I sent an e-mail to Mrs. Bolaños indicating why we could not agree with the terms of the settlement agreement. Specifically, I indicated that the wording restricts the state court powers to issue a provisional remedy that in no way relates with an adjustable debt, the execution of a judgment or constrains the operations of PREPA; in our case, an order instructing PREPA to remove equipment from our property that in no way affect their operations. As I explained Mrs. Bolaños in our first conversation, our main concern has been that PREPA's equipment represents a serious hazard to our family and a violation of NESC clearance standards, as well as their own Regulation. I proposed to amend the agreement to exclude the courts limitation on provisional remedies to that end and offered to settle the case where PREPA only had to remove their equipment, as agreed in 2004 with our representative the Ombudsman, and in return, we would desist from the pending hearing for just compensation.

6.      On August 20, 2018, Mrs. Bolaños called to inform Movant that she had conferred with Debtor. On this occasion Mrs. Bolaños expressed that PREPA did not accept our proposal, to which I pointed out that we would seek the bankruptcy court intervention.

In Ponce, Puerto Rico, this 12th of September, 2018.

/s/Ismael L. Purcell Soler
ISMAEL L. PURCELL SOLER, RUA- 12894
URB. JACARANDA, 35271 CALLE CLAVELINA
PONCE, PUERTO RICO 00730
TEL.  (787) 481-4540
E-mail: pfpurcell2000@yahoo.com