UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |

-------------------------------------------------------x

MEMORANDUM ORDER DENYING MOTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC STAY

Before the Court is the *Urgent Motion of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, for Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of Automatic Stay with Respect to GDB Restructuring* (Docket Entry No. 3797 in Case No. 17-3283, the "Motion").[2]

The Motion was filed by the Official Committee of Unsecured Creditors (the "Committee" or

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

[2]   All docket entry references are to entries in Case No. 17-3283, unless otherwise specified.

"Movant") and seeks entry of an order declaring that the Title VI application (Docket No. 1 in Case No. 18-01561) (the "Title VI Application") of the Government Development Bank ("GDB") and Act No. 109-2017 of the Puerto Rico Legislative Assembly, as amended by Act No. 147-2018 (the "GDB Restructuring Act" and, together with the Title VI Application, the "GDB Restructuring") violate section 362(a) of Title 11 of the United States Code (the "Bankruptcy Code")[3] and this Court's June 29, 2017, order confirming the application of the automatic stay (the "Stay Order").  The Court has subject matter jurisdiction of this contested matter pursuant to 48 U.S.C. § 2166(a).  The Court heard oral argument on the Motion on September 13, 2018, and has considered carefully all of the submissions and arguments made in connection with the Motion.[4]  For the following reasons, the Motion is denied.

### DISCUSSION

1. Standing to Enforce the Automatic Stay

As a threshold matter, the Court must first address the Committee's standing to seek to enforce the automatic stay.  See Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) ("[A] plaintiff must have standing to bring each and every claim that she asserts." (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006))).  The parties do not dispute that the relief sought

---

[3] Section 362 of the Bankruptcy code is made applicable in the above-captioned Title III case by Section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2161(a).  PROMESA is codified at 48 U.S.C. § 2101 et seq.  References to "PROMESA" section numbers in the remainder of this opinion are to the uncodified version of the legislation.

[4] The Financial Guaranty Insurance Corporation ("FGIC") filed a memorandum in support of the Motion, which included arguments that were substantially similar to those advanced by the Committee (Docket Entry No. 3822, the "FGIC Response").  The FGIC Response was withdrawn on the record at the September 13, 2018, hearing concerning the Motion.

by the Committee meets the basic requirements of constitutional standing: injury, causation, and redressability. Id. The Court finds that those basic requirements are met by the Committee's allegations. The Committee alleges that the proposed GDB Restructuring transaction that would be consummated if the Title VI case were approved would harm the Title III Debtors by eliminating the debtors' claims against GDB and GDB's officers, directors, agents, and representatives, exercising control over deposit accounts containing funds belonging to the Title III Debtors, and transferring certain of GDB's valuable assets such that they would not be available for distribution to the Title III Debtors. Such actions would, according to the Committee, diminish the pool of assets available to satisfy obligations to creditors of the Title III Debtors. The alleged injury is directly traceable to the proposed transaction. That alleged injury would be redressed if the Court were to order that the GDB Restructuring be halted because it violates the automatic stay or the Stay Order.

However, "standing also has prudential dimensions," id. at 72, in light of which a party must "show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." Id. (quoting Pagán, 448 F.3d at 27). The limitation regarding third party standing is "particularly relevant in the bankruptcy context" because such proceedings "regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.), 843 F.2d 636, 644 (2d Cir. 1988).

Whether creditors have standing to seek enforcement of the automatic stay is a subject of conflicting decisions in different circuits. The issue does not appear to be settled in

this Circuit.  See FDIC v. Shearson-Am. Exp., Inc., 996 F.2d 493, 497 (1st Cir. 1993) (noting that creditor's "standing to challenge an alleged violation of the automatic stay is . . . problematic" but declining to resolve the issue); see also In re 110 Beaver St. P'ship, 355 F. App'x 432, 438-39 & n.9 (1st Cir. 2009) (noting that Fifth Circuit has held that creditors can have standing to seek damages for automatic stay violations, but affirming dismissal of adversary proceeding seeking damages for automatic stay violation where debtor's principals had failed to allege injury to themselves as distinct from injury to the estate).  Here, where the First Circuit has not definitively held that creditors have standing to seek enforcement of the automatic stay, nor addressed whether alleged injuries to unsecured creditors that result from the diminution of a debtor's assets can be used to establish prudential standing to enforce the automatic stay, there are serious questions as to whether the Committee has standing to request enforcement of the provisions of Section 362(a) of the Bankruptcy Code.

However, because the complicated standing issues raised by the Motion are not issues of Article III standing, the Court has flexibility, in the exercise of its reasoned discretion, to choose to address the merits of the Motion before addressing the standing issues.  See Nisselson v. Lernout, 469 F.3d 143, 151 (1st Cir. 2006) ("There is no . . . rule that demands the resolution of objections based on prudential [standing] concerns before other issues can be adjudicated."); see also McBee v. Delica Co., 417 F.3d 107, 127 (1st Cir. 2005) ("[W]e do not wish to force . . . courts to reach more difficult issues when there is an exceptionally easy method—on the merits—for the defendant to prevail."); Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC, 467 F.3d 73, 79-81 (2d Cir. 2006) (declining to address "knotty question" of extent of authority of creditors committee to "initiat[e] proceedings outside the bankruptcy court").

The Court exercises its discretion here to turn to the merits of the question of applicability of the automatic stay.

2. <u>Applicability of the Automatic Stay</u>

The automatic stay imposed by Section 362 of the Bankruptcy Code, 11 U.S.C. § 362(a), is extremely broad in scope and, with limited exceptions, applies to virtually "any type of formal or informal action taken against the debtor or the property of the estate." 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. 2018). However, Section 362 of the Bankruptcy Code does not expressly prohibit a Title 11 debtor from itself taking actions to affect or dispose of property of the estate. In fact, the principal Bankruptcy Code provision that sets restrictions on such conduct is Section 363 of Title 11. Taken together, the two statutory provisions, where they apply, complement one another and act in concert to create a legal structure that protects a bankruptcy estate from both outside conduct and the actions of the trustee or debtor-in-possession. Under this legal structure, a debtor that wishes to dispose of its property or negotiate the settlement of a claim is not required to move for relief from the automatic stay. Instead, the debtor makes an application to the Court seeking approval of the contemplated action through another authorized vehicle (<u>e.g.</u>, a motion pursuant to Section 363 of the Bankruptcy Code, Rule 9019 of the Federal Rules of Bankruptcy Procedure, and/or for confirmation of a plan of reorganization).

In the context of these PROMESA Title III cases, the legal structure is somewhat different from the general structure described above, which is applicable in most private-entity bankruptcy cases. Although Congress incorporated the protections of the automatic stay into PROMESA, pursuant to PROMESA Section 301, 48 U.S.C. § 2161, Congress did not incorporate Section 363 of the Bankruptcy Code into PROMESA. Accordingly, the statutory

structure protects the Title III debtor from enforcement actions initiated by third parties absent relief from the stay, but it does not expressly prohibit the Title III Debtor from entering into negotiated resolutions of disputes over property rights or otherwise taking actions to dispose of its property. This legal structure is consistent with the nature of the cases and the sovereign character of the Title III Debtors. The Title III Debtors are governmental entities. The commencement of a Title III case does not strip a governmental entity of the power to exercise substantial independence in its decision-making. It is evident that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets given, for example, the inclusion of Section 303, 304(i) and 305 of PROMESA. Respectively, these provisions preserve the authority of territories to exercise "political or governmental powers," 48 U.S.C. § 2163, provide that the provisions of Title III do not prevent holders of claims from consenting to modifications under Title VI, 48 U.S.C. § 2164(i), and prohibit the Court from interfering with Title III debtors' property and political or governmental powers, 48 U.S.C. § 2165. Here, the Oversight Board, acting pursuant to its powers under PROMESA (which include review of Commonwealth legislation, certification of Title VI restructurings, and representation of the Title III debtors), has consented, by virtue of its certification of the Restructuring Support Agreement, to the GDB Restructuring. The Commonwealth's legislature considered and enacted the GDB Restructuring Act, which creates new entities, authorizes asset transfers, and curtails certain causes of action of the Commonwealth and the instrumentality debtors. The GDB Restructuring, although subject to Court approval, is a vehicle to effectuate a transaction by, not against, the Debtors and is not subject to the strictures of the automatic stay. Thus, the Committee's argument that Section 362(a) precludes the GDB Restructuring absent relief from the automatic stay fails on its merits.

The Committee's argument finds no firmer foundation in the Court's Stay Order. The Stay Order does not purport to expand the scope of the automatic stay. Furthermore, at the time that the Court entered the Stay Order, the Oversight Board was actively negotiating the GDB Restructuring. Thus, there is no legal or factual basis for the notion that the Oversight Board's application for the Stay Order constituted consent to the application of the automatic stay to Title VI cases or to interference, by virtue of the stay, with governmental authority or property otherwise protected by Sections 303 and 305 of PROMESA.

The Committee's argument that the debtor-representation responsibilities that Congress placed on the Oversight Board create conflicts of interest, and that historical ties of the Oversight Board members, and other personnel involved with the restructuring, with certain institutions exacerbate such conflicts, is immaterial to the issue of the statutory reach of the automatic stay and thus will not be further addressed here.

CONCLUSION

For the foregoing reasons, the Motion is denied. This Memorandum Order resolves docket entry no. 3797.

SO ORDERED.

Dated: September 18, 2018

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge