# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------- X

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.*,

Debtors.[1]

-------------------------------------------------------------------- X

PROMESA
Title III

Case No. 17-BK-3283 (LTS)

(Jointly Administered)

## OBJECTION OF THE GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DERIVATIVE STANDING MOTION [DOCKET NO. 3881]

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("**HTA**") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("**COFINA**") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("**PREPA**") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 3

    I.     GDB, THE GDB RESTRUCTURING, AND PUBLIC DISCLOSURES ............ 3

    II.    SCOPE OF RELEASES UNDER THE GDB RESTRUCTURING ................... 6

ARGUMENT ....................................................................................................... 7

    I.     PROMESA SECTION 303 PROHIBITS UCC DERIVATIVE
        STANDING. ............................................................................................ 7

        A.    The Government of Puerto Rico, in the Exercise of Its Political
             Powers, Has Precluded Its Instrumentalities from Objecting to the
             GDB Restructuring. ......................................................................... 9

        B.    PROMESA Divested Limited Authority from the Puerto Rico
             Government and Gave It to the Oversight Board, Not the UCC. ............ 11

    II.    THE UCC WOULD NOT BE ENTITLED TO STANDING EVEN IF
        DERIVATIVE STANDING COULD BE GRANTED IN TITLE III................. 12

    III.   THE COURT SHOULD DENY THE UCC'S REQUEST FOR
        PERMISSION TO DIRECTLY CHALLENGE GDB'S TITLE VI
        ACTION. ............................................................................................ 16

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Commc'ns Corp. v Bank of Am., N.A.*,
    330 B.R. 374 (Bankr. S.D.N.Y. 2005) ..................................................................... 13

*Amieiro Gozález v. Pinnacle Real Estata Home Team*,
    173 D.P.R. 363 (2008) ............................................................................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 12

*Campana v. Pilavis (In re Pilavis)*,
    233 B.R. 1 (Bankr. D. Mass. 1999) .................................................................... 9, 13

*Canadian Pac. Forest Prods., Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*,
    66 F.3d 1436 (6th Cir. 1995) ............................................................................. 9, 13

*Commoloco of Caguas, Inc. v. Benítez Díaz*,
    126 D.P.R. 478 (1990) ............................................................................................ 10

*Crusius v. Illinois Gaming Bd.*,
    837 N.E.2d 88 (Ill. 2005) ......................................................................................... 9

*EBC I, Inc. v. Goldman, Sachs & Co.*,
    832 N.E.2d 26 (N.Y. 2005) ...................................................................................... 9

*Fallon Paiute-Shoshone Tribe v. U.S. Bureau of Land Mgmt*,
    455 F. Supp. 2d 1207 (D. Nev. 2006) ..................................................................... 18

*Flora Mir Candy Corp. v. R. S. Dickerson & Co. (In re Flora Mir Candy Corp.)*,
    432 F.2d 1060 (2d Cir. 1970) ............................................................................ 9, 13

*Fogel v. Zell*,
    221 F.3d 955 (7th Cir. 2000) ......................................................................... 9, 12, 13

*Hansen v. Finn (In re Curry & Sorensen)*,
    57 B.R. 824 (B.A.P. 9th Cir. 1986) .......................................................................... 9

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*,
    555 F.3d 231 (6th Cir. 2009) ......................................................................... 9, 12, 13

*In re Adelphia Commc'ns Corp.*,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006) ......................... 9

*In re America's Hobby Ctr., Inc.*,
    223 B.R. 275 (Bankr. S.D.N.Y. 1998) ..................................................................... 12

*In re City of Stockton*,
    486 B.R. 194 (Bankr. E.D. Cal. 2013) ................................................................. 2, 15

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*In re Evergreen Valley Resort, Inc.*,
  27 B.R. 75 (Bankr. D. Me. 1983) ............................................................................. 9, 13

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  318 F. Supp. 3d 537 (D.P.R. 2018)............................................................................. 11

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  583 B.R. 626 (D.P.R. 2017)................................................................................... 8, 11

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  No. 17-03283-LTS, Dkt. No. 3941 (D.P.R. Sept. 18, 2018) .................................. 2, 8

*In re iPCS, Inc.*,
  297 B.R. 283 (Bankr. N.D. Ga. 2003) ................................................................... 8, 13

*In re LTV Steel Co., Inc.*,
  333 B.R. 397 (Bankr. N.D. Ohio 2005)................................................................. 9, 13

*In re New York City Off-Track Betting Corp.*,
  434 B.R. 131 (Bankr. S.D.N.Y. 2010)......................................................................... 8

*In re Sabine Oil & Gas Corp.*,
  547 B.R. 503 (Bankr. S.D.N.Y. 2016), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016) ........................ 12

*In re Smart World Techs.*,
  423 F.3d 166 (2d Cir. 2005) ..................................................................................... 15

*In re Standard Brands Paint Co.*,
  154 B.R. 563 (Bankr. C.D. Cal. 1993)....................................................................... 14

*In re WM Distribution, Inc.*,
  571 B.R. 866 (Bankr. D.N.M. 2017) ......................................................................... 14

*Keene Corp. v. United States*,
  508 U.S. 200 (1993)................................................................................................... 17

*La. World Exposition v. Fed. Ins. Co.*,
  858 F.2d 233 (5th Cir. 1988) ......................................................................... 9, 12, 13

*Law v. Siegel*,
  571 S. Ct. 415 (2014)................................................................................................... 9

*Morley v. Ontos, Inc. (In re Ontos, Inc.)*,
  478 F.3d 427 (1st Cir. 2007)....................................................................................... 9

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v.
  Chinery*,
  330 F.3d 548 (3rd Cir. 2003) ......................................................................... 9, 12, 13

*Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
  2004 WL 1949290 (Del. Ch. Aug. 24, 2004) ............................................................ 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Official Comm. of Unsecured Creditors of Nat'l Forge Co. (In re Nat'l Forge Co.)*,
   326 B.R. 532 (W.D. Pa. 2005).................................................................................9, 13

*Official Comm. of Unsecured Creditors of Wickes Inc. v. Wilson*,
   2006 WL 1457786 (N.D. Ill. May 23, 2006)....................................................................9

*Official Comm. of Unsecured Creditors v. Meltzer*,
   --- B.R. ---, 2018 WL 2123558 (D. Me. May 8, 2018).............................................9, 13, 15

*PW Enter., Inc. v. N. D. Racing Comm'n (In re Racing Services, Inc.)*,
   540 F.3d 892 (8th Cir. 2008) .................................................................................9, 12, 13

*Rodríguez Román v. Banco Gubernamental de Fomento para Puerto Rico*,
   151 D.P.R. 383 (2000)..................................................................................................9

*Rosselló v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   --- F. Supp. 3d ---, 2018 WL 4162625 (D.P.R. Aug. 27, 2018) ............................................11

*Russello v. United States*,
   464 U.S. 16 (1983)....................................................................................................17

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*,
   550 B.R. 241 (Bankr. S.D.N.Y. 2016).............................................................................18

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005).......................................................................................11

*Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*,
   860 F.2d 515 (2d Cir. 1988) .....................................................................................9, 13

*United States v. Hernandez-Ferrer*,
   599 F.3d 63 (1st Cir. 2010).........................................................................................11

*Unsecured Creditors Comm. of Debtor STN Enter., Inc. v. Noyes (In re STN Enter.)*,
   779 F.2d 901 (2d Cir.1995) ................................................................................9, 12, 13, 15

*Unsecured Creditors of RadioShack Corporation v. Kim*,
   No. 4:15-cv-00652-A, ECF No. 1 (N.D. Tex., filed Aug. 31, 2015).........................................9

**Federal Statutes**

11 U.S.C. § 1109(b) .......................................................................................................17

11 U.S.C. § 926 .........................................................................................................2, 12

48 U.S.C. § 2141 ...........................................................................................................11

48 U.S.C. § 2161(a) .....................................................................................................2, 12

48 U.S.C. § 2163..............................................................................................................7

48 U.S.C. § 2165 ............................................................................................................15

48 U.S.C. § 2175..............................................................................................................11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

48 U.S.C. § 2175(a) ............................................................................................................ 12

48 U.S.C. § 2195 ................................................................................................................ 14

48 U.S.C. § 2231(g) ........................................................................................................... 11

48 U.S.C. §§ 2121–2152 .................................................................................................... 8

**Puerto Rico Statutes**

7 L.P.R.A. § 552 ................................................................................................................. 3

Act 109-2017 ..................................................................................................................... 5

Act 109-2017, art. 102 ...................................................................................................... 8

Act 109-2017, art. 703 ...................................................................................................... 10

Act 147-2018 ..................................................................................................................... 5

Act 147-2018, Art. 501(a) ................................................................................................. 16

Act 147-2018, Art. 502 ...................................................................................................... 16

Act 2-2017, § 2 .................................................................................................................. 14

Act 2-2017, § 5(a) ........................................................................................................ 10, 14

Act 2-2017, § 5(c) .............................................................................................................. 10

Act No. 31-2013 ................................................................................................................. 4

**Other Authorities**

4 Am. Jur. 2d Amicus Curiae § 7 (2006) ........................................................................... 18

Commonwealth of Puerto Rico, Financial Information and Operating Data Report (Dec. 18, 2016) .................................................................................................................................. 4

Joint Resolution No. 1591-2003 ........................................................................................ 4

Joint Resolution No. 44-2014 ............................................................................................ 4

Joint Resolution No. 60-2011 ............................................................................................ 4

Joint Resolution No. 62-2011 ............................................................................................ 4

The Government Development Bank for Puerto Rico ("**GDB**") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") respectfully submit this objection ("**Objection**") to the *Official Committee of Unsecured Creditors' Motion For Order Granting Derivative Standing To Act On Behalf Of The Title III Debtors For Certain Limited Purposes And Other Related Relief With Respect To Restructuring Of Government Development Bank For Puerto Rico* [Docket 3881] (the "**Motion**")[2] filed by the Official Committee of Unsecured Creditors (the "**UCC**").  In support of this Objection, GDB and AAFAF state as follows:

## PRELIMINARY STATEMENT

1.      The UCC is requesting that this Court grant it derivative standing on behalf of all of the Title III Debtors (other than COFINA) to object to the GDB Restructuring and the GDB Title VI proceeding which is presently before this Court under PROMESA.  In essence, the UCC is seeking to wrest control from both the Government of Puerto Rico and the Oversight Board, which have duly acted within the proper bounds of power and authority as granted and recognized by Congress.

2.      The UCC's intrusion comes at a time when there exists overwhelming support for approval of the GDB Title VI Qualifying Modification.  The UCC's underlying premise for its objection to the GDB Restructuring is that the Title III Debtors are abandoning real and valuable damage claims that emanate from GDB's past lending transactions with these debtors.  As will be discussed below, there is simply no factual basis that gives any credence to the UCC's allegations—even if one were to accept the legal argument that the UCC could assert derivative standing under Title III.

3.      Outside the context of pursuing an avoidance action, the UCC has not identified a

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

single instance of judicial approbation for a creditor or committee in a municipal bankruptcy to assert derivative standing over the objection of the government debtor.[3]   In that regard, the UCC fails to recognize the bedrock principles of respect for governmental authority upon which both Chapter 9 and Title III are predicated. The Government of Puerto Rico's ability to control its instrumentalities and each Title III Debtors' authority to settle claims without court interference are essential elements in Chapter 9 and in all of the Title III cases now pending before this Court. *In re City of Stockton*, 486 B.R. 194, 198 (Bankr. E.D. Cal. 2013) (*Stockton II*) (Governmental debtors can settle claims without court approval, "even foolishly or in a manner that disadvantages other creditors").   As this Court noted in denying the UCC's Stay Motion, "[t]he commencement of a Title III case does not strip a governmental entity of the power to exercise substantial independence in its decision-making."   Memorandum Order Denying Motion of Official Committee of Unsecured Creditors for Entry of An Order Enforcing the Automatic Stay, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17-03283-LTS, Dkt. No. 3941 at 6 (D.P.R. Sept. 18, 2018) ("Order Denying Stay Motion").   *See supra* Part I.

4.   Moreover, assuming *arguendo* that the concept of derivative standing for a committee or creditor could even exist under Title III,[4] the UCC's Motion does not satisfy the standards for derivative standing.   In seeking standing to challenge the GDB Restructuring, the UCC is seeking to crater the carefully crafted, complex restructuring that has been negotiated and supported by all of the major constituents in the GDB Title VI proceeding in which Court approval of the Qualifying Modification is being sought.   The solicitation materials that have been filed

---

[3] *See* 11 U.S.C. § 926 ("If the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action."); 48 U.S.C. § 2161(a) (incorporating section 926 into Title III).

[4] Given that concerns with respect to self-government and self-determination do not apply to the Government of Puerto Rico or AAFAF acting on behalf of a Title III Debtor, nothing in this Objection should be construed as acknowledging limits on the Government of Puerto Rico's right to take any action or assert any rights in any legal capacity.

with this Court and circulated to all of GDB's creditors present in granular detail the benefits of the GDB Restructuring. While PROMESA section 305 does not require the Title III Debtors to justify their support for the GDB Restructuring, their refusal to pursue the UCC's objections to the GDB Restructuring is amply justified. *See supra* Part II.

5.     The UCC's alternative request for an order "confirming" that the UCC has direct standing in GDB's Title VI proceeding is a weak effort to bypass this Court's anticipated denial of derivative standing. *See* Mot. ¶ 63. The UCC's standing request clearly must fail because the collective constituency it represents: is not a creditor of GDB; does not have any right to vote on the Qualifying Modification; and is not otherwise directly affected by the Qualifying Modification. Finally, the UCC's last-ditch request to appear as an amicus in GDB's Title VI Action should also be rejected. The Title III Debtors should not be forced to bear more costs for distracting and unnecessary commentary. *See supra* Part III.

6.     Accordingly, the UCC's Motion should be denied in its entirety.

## BACKGROUND

### I.     GDB, THE GDB RESTRUCTURING, AND PUBLIC DISCLOSURES

7.     Over the past decade-plus, GDB provided the Government of Puerto Rico and its instrumentalities financial support during periods of economic distress. Indeed, one of the main purposes of GDB, as set forth in the GDB Enabling Act, was to lend money to the Government and its instrumentalities to further governmental purposes. *See* 7 L.P.R.A. § 552.

8.     As a result, the Government frequently leveraged GDB's strong access to the capital markets to raise the funds necessary for the Government to continue to provide essential services to its citizens. The loans made by GDB to the Government, its agencies, and departments were specifically authorized by statute and each provided that the Legislative Assembly would

honor the repayment of such loans with future legislative appropriations.[5]  These loans were "used to cover operational deficits of the Commonwealth and its instrumentalities."  Kremer Decl. Ex. E, Commonwealth of Puerto Rico, Financial Information and Operating Data Report (Dec. 18, 2016), at 189.  For instance, for years HTA had significant annual operating deficits (nearly $355 million as of 2013), that from 2008 to 2012 had been "corrected . . . by means of loans granted by the [GDB] to [allow HTA to] continue operating and meeting its obligations to its creditors."  Kremer Decl. Ex. F, Act No. 31-2013, Statement of Motives at 1-2.  As a result of this practice of intergovernmental lending, GDB's liquidity and financial condition was largely dependent on the ability of public entities to repay their loans to GDB.

9.     As a consequence of the billions of dollars in debts it incurred on behalf of other Government entities, GDB must restructure its debts.  That process, which is now being culminated through the GDB Title VI Action has been ongoing for years.  GDB's creditors will pay a heavy price by virtue of the GDB Restructuring—their claims have been substantially impaired and they are recovering approximately 55 cents on the dollar for past financing of government entities.

10.    The UCC's oft-repeated but untrue assertion that GDB has acted in a non-transparent manner in connection with its restructuring and the GDB Title VI Action are without merit.  *Cf.* Mot. ¶¶ 1–3.  In the Spring of 2017, GDB and AAFAF began negotiating with certain of GDB's major creditor constituencies regarding a Title VI modification.  These efforts have included numerous meetings with the UCC and providing it with information and documents

---

[5] *See, e.g.,* Declaration of Matthew P. Kremer, Esq. in Support of Objection ("Kremer Decl.") Ex. A., Joint Resolution No. 1591-2003 (authorizing an $80 million loan from GDB to the Department of Treasury to finance the operations of the Department of Health); *id.* Ex. B., Joint Resolution No. 60-2011 (authorizing a $150 million line of credit from GDB to the Office of Management and Budget to fund emergency or disaster-related expenses); *id.* Ex. C, Joint Resolution No. 62-2011 (authorizing a $160 million line of credit from GDB to the Secretary of Treasury to fund the payment of judgments against the Commonwealth); *id.* Ex. D, Joint Resolution No. 44-2014 (authorizing a $108 million line of credit from GDB to the Office of Management and Budget to fund expenses related to incentivized retirement programs).

4

regarding GDB over the past few months.

11.     Negotiations with creditors resulted in the execution of the RSA on May 15, 2017.[6]
The RSA was publicly disclosed that same day and a press release was issued.[7]  On July 12, 2017,
the Oversight Board certified the Modification contemplated by the RSA, making it a "Qualifying
Modification" under Title VI.[8]   GDB and the Oversight Board both issued press releases
announcing the certification.[9]   The Oversight Board also certified a Fiscal Plan for GDB that
implements the restructuring following a public hearing.[10]

12.     On August 24, 2017, Governor Ricardo Rosselló Nevares signed into law Act No.
109-2017, the GDB Debt Restructuring Act.  The GDB Restructuring Act publicly discloses and
"establish[es] the legal framework for [the GDB] restructuring" which "ensures compliance with
GDB's certified fiscal plan and protects the public interest, ensuring also that essential services
from the Government, municipalities and other instrumentalities continue."  See Kremer Decl. Ex.
P, Act 109-2017, Statement of Motives at 39.

13.     After Hurricanes Irma and María, the GDB Restructuring Act was amended to
reflect changes to the RSA.  See Kremer Decl. Ex. Q, Act 147-2018, Statement of Motives at 20.

---

[6] Kremer Decl. Ex. G, Restructuring Support Agreement, dated May 15, 2017.
[7] Kremer Decl. Ex. H, Press Release, The Government Development Bank for Puerto Rico Reaches Agreement for Title VI Restructuring with Its Major Creditors (May 15, 2017); Government Development Bank Restructuring Support Agreement, dated May 15, 2017; see also id. Ex. I, Press Release, AAFAF (June 19, 2017) (noting effectiveness of the GDB RSA).
[8] Kremer Decl. Ex. J, Unanimous Written Consent Approving Authorization of Government Development Bank of Puerto Rico and Certification of Restructuring Support Agreement Pursuant to Title VI of PROMESA (July 12, 2017).
[9] Kremer Decl. Ex. K, Press Release, Financial Oversight and Management Board for Puerto Rico, Oversight Board Authorizes Government Development Bank to Restructure Debts under Title VI of PROMESA (July 14, 2017).
[10] See Kremer Decl. Ex. L, Resolutions Adopted at the Seventh Public Meeting of the Financial Oversight and Management Board for Puerto Rico Held on April 28, 2017 in New York, New York; id. Ex. M, Letter from José B. Carrión III, Chair of Financial Oversight and Management Board for Puerto Rico, to Governor Rosselló Nevares, Senator Rivera Schatz, and Speaker Méndez Núñez (May 2, 2017); id. Ex. N, Letter from José B. Carrión III, Chair of Financial Oversight and Management Board for Puerto Rico, to Governor Rosselló Nevares, Senator Rivera Schatz, and Speaker Méndez Núñez (July 31, 2017); id. Ex. O, Financial Oversight and Management Board for Puerto Rico, Unanimous Written Consent Approving Certified Fiscal Plan, as Revised (July 12, 2017).

The RSA was amended on six different occasions, and every time the amendment was publicly disclosed.[11] The Government also issued multiple press releases informing the public that GDB and AAFAF received support from the requisite bondholders, indicating significant progress towards a consensual restructuring.[12] The Oversight Board recertified the Amended Restructuring Support Agreement in May 2018.[13] The Oversight Board also certified a revised Fiscal Plan for GDB implementing the Amended RSA after a public hearing.[14]

## II.   SCOPE OF RELEASES UNDER THE GDB RESTRUCTURING

14.   The UCC's objection to the GDB Restructuring rests in large part upon an overstatement of the scope of the release by the Government and other government entities of certain rights and claims related to GDB is set forth in section 702 of the Restructuring Act (the "**702 Release**"). The UCC claims that the GDB Restructuring will release current and former officers, employees, and representatives, which it speculates would include investment banks and law firms. Mot. ¶ 1. The UCC's attack on the 702 Release is false.

15.   As explained in GDB and AAFAF's September 17, 2018, informative motion:

- The 702 Release will be limited to GDB's *current* officers, directors, employees,

---

[11] Kremer Decl. Ex. R., First Amendment to the Restructuring Support Agreement, dated October 20, 2017; *id.* Ex. S, Second Amendment to the Restructuring Support Agreement, dated December 20, 2017; *id.* Ex. T, Third Amendment to the Restructuring Support Agreement, dated March 20, 2018; *id.* Ex. U, Fourth Amendment to the Restructuring Support Agreement, dated April 6, 2018; *id.* Ex. V, Fifth Amendment to the Restructuring Support Agreement, dated June 8, 2018; *id.* Ex. W, Sixth Amendment to the Restructuring Support Agreement, dated August 3, 2018.

[12] Kremer Decl. Ex. X, Press Release, AAFAF, GDB and a Significant Portion of the RSA Parties have Reached a Deal to Amend the GDB Restructuring Support Agreement (March 27, 2018); *id.* Ex. Y, Press Release, AAFAF, GDB and the Requisite Bondholders Authorize the GDB Restructuring Support Agreement Amendment (April 9, 2018).

[13] Kremer Decl. Ex. Z, Unanimous Written Consent; *Id.* Ex. AA, Press Release, Government of Puerto Rico, Oversight Board for Puerto Rico Certifies the Government Development Bank Restructuring Support Agreement Amendment (May 11, 2018).

[14] Kremer Decl. Ex. BB, Letter from José B. Carrión III, Chair of Financial Oversight and Management Board for Puerto Rico, to Governor Rosselló Nevares, Senator Rivera Schatz, and Speaker Méndez Núñez (Apr. 24, 2018) (GDB Fiscal Plan certified at Oversight Board's thirteenth public meeting); *Id.* Ex. CC, Press Release, Financial Oversight and Management Board for Puerto Rico, Oversight Board Certifies UPR, HTA & GDB Fiscal Plans (April 20, 2018); *Id.* Ex. DD, Government Development Bank for Puerto Rico, Government Development Bank for Puerto Rico New Fiscal Plan, as Certified by the Financial Oversight and Management Board for Puerto Rico (April 20, 2018).

agents and other representatives, *in their capacity as such*.

- The 702 Release is limited to *individual* agents and other *individual* representatives of GDB.  Accordingly, the 702 Release does not—nor was it intended to—extend to any private banking institution or private corporation.

- Third, the government entities are not releasing their interests in the Public Entity Trust, or their right to defend themselves against any claims asserted by the Public Entity Trust or GDB.

*See* Informative Motion Regarding Releases Under Article 702 of the GDB Restructuring Act, *The Government Development Bank for Puerto Rico*, No. 3:18-cv-01561-LTS-JSD, Dkt. No. 151 (D.P.R. Sept. 17, 2018) at ¶¶ 7–10.

16.     The narrow nature of these releases undermines the UCC's narrative that the entire GDB Restructuring is driven by releases for former officers and directors or outside advisors to GDB.

## ARGUMENT

## I.     PROMESA SECTION 303 PROHIBITS UCC DERIVATIVE STANDING.

17.     Section 303 provides that Title III "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or the territorial instrumentality, including expenditures for such exercise." 48 U.S.C. § 2163.  Section 305 further prohibits the Court from interfering with the Government's property and political or governmental powers, with exceptions not relevant here.[15]  As this Court noted,

> This legal structure is consistent with the nature of the cases and the sovereign character of the Title III Debtors.  The Title III Debtors are governmental entities.  The commencement of a Title III case does not strip a governmental entity of the power to exercise substantial independence in its decision-making.

---

[15] Section 305 permits interference with the Title III Debtors' political or governmental powers or property only if the Oversight Board consents—which it has not—or pursuant to the terms of a plan of adjustment.

Order Denying Stay Motion at 5–6; *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 635 (D.P.R. 2017) ("PROMESA section 303 reserves the territory's political and governmental powers to the territory or 'any territorial instrumentality thereof,' subject only to Titles I and II."); *In re New York City Off-Track Betting Corp*., 434 B.R. 131, 144 (Bankr. S.D.N.Y. 2010) ("Section 903 of the Bankruptcy Code is the 'constitutional mooring' for municipal debt readjustment and makes clear that nothing in chapter 9 should be interpreted to limit a State's power to control its municipalities.").[16]

18.     The elected Government, in an exercise of its reserved political powers, consented to the GDB Restructuring on behalf of itself and its instrumentalities (including the Title III Debtors) after determining the GDB Restructuring was in the best interest of the people of Puerto Rico.   *See* Act 109-2017, art. 102; *see also* Objection to Stay Motion[17] at 10–20.   Under PROMESA sections 303 and 305, and in the absence of Bankruptcy Code section 363, the Government and the Title III Debtors are entitled to make this determination without court interference.

19.     The basic premise of the UCC's motion for derivative standing is therefore simply false and misguided.  The UCC relies entirely on decisions arising from the bankruptcies of private entities under Chapter 7 and Chapter 11 to request derivative standing under Bankruptcy Code sections 105(a), 503(b), 1103(c) and 1109(b) (as incorporated into Title III).[18]  But while derivative

---

[16] None of the limited exceptions to section 303 can support the Committee's request to act in the Government's stead.  Section 303 is "[s]ubject to the limitations of [Title I and II] of PROMESA, neither of which contain any provision that would allow the Court to appoint private creditors to exercise Governmental authority over the Government's objection.  *See* 48 U.S.C. §§ 2121–2152 (establishing the Oversight Board and setting forth its responsibilities).  None of the specific exceptions in section 303(1)–(3) provide the Committee with any mechanism to act on behalf of a Title III Debtor without consent.

[17] Objection of the Government Development Bank for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority to the Urgent Motion of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 105(a) and 362, for Entry of Order Enforcing Automatic Stay and Court's June 29, 2017 Order Confirming Application of Automatic Stay with Respect to GDB Restructuring, Dkt. No. 3826.

[18] *See In re iPCS, Inc.*, 297 B.R. 283 (Bankr. N.D. Ga. 2003) (Chapter 11); *Official Comm. of Unsecured Creditors*

standing is an appropriate use of the court's equitable powers in a Chapter 7 or Chapter 11 case,[19]

as in Chapter 9 of the Bankruptcy Code, the Title III Debtors are government entities protected by

powerful non-interference provisions.  Because it is settled law that the Court's equitable powers

cannot supplant express statutory provisions, the law upon which the UCC relies on has no force

here.  *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) 'does not allow

the bankruptcy court to override explicit mandates of other sections of the Bankruptcy

Code.'")(internal citations omitted).

### A.   The Government of Puerto Rico, in the Exercise of Its Political Powers, Has Precluded Its Instrumentalities from Objecting to the GDB Restructuring.

20.     As a matter of Puerto Rico law, the Government has plenary control over its

instrumentalities, including the Title III Debtors.  *See, e.g.*, Kremer Decl. Ex. EE, *Rodríguez

Román v. Banco Gubernamental de Fomento para Puerto Rico*, 151 D.P.R. 383 (2000) (public

corporations are subject to creation or dissolution at the will of the legislature); *id.* Ex. FF,

---

*of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3rd Cir. 2003) (Chapter 11); *Unsecured Creditors Comm. of Debtor STN Enter., Inc. v. Noyes (In re STN Enter.)*, 779 F.2d 901 (2d Cir.1995) (Chapter 11); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) (Chapter 11); *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231 (6th Cir. 2009) (Chapter 7); *Canadian Pac. Forest Prods., Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436 (6th Cir. 1995) (Chapter 11); *Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000) (Chapters 11 and 7); *PW Enter., Inc. v. N. D. Racing Comm'n (In re Racing Services, Inc.)*, 540 F.3d 892 (8th Cir. 2008) (Chapters 7 and 11); *Hansen v. Finn (In re Curry & Sorensen)*, 57 B.R. 824 (B.A.P. 9th Cir. 1986) (Chapter 11); *Official Comm. of Unsecured Creditors of Nat'l Forge Co. (In re Nat'l Forge Co.)*, 326 B.R. 532 (W.D. Pa. 2005) (Chapter 11); *In re Evergreen Valley Resort, Inc.*, 27 B.R. 75 (Bankr. D. Me. 1983) (Chapter 11); *Campana v. Pilavis (In re Pilavis)*, 233 B.R. 1 (Bankr. D. Mass. 1999) (Chapter 7); *Morley v. Ontos, Inc. (In re Ontos, Inc.)*, 478 F.3d 427 (1st Cir. 2007) (Chapter 7); *Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515 (2d Cir. 1988) (Chapter 11); *Flora Mir Candy Corp. v. R. S. Dickerson & Co. (In re Flora Mir Candy Corp.)*, 432 F.2d 1060 (2d Cir. 1970) (Chapter 11); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006) (Chapter 11); *Official Comm. of Unsecured Creditors v. Meltzer*, --- B.R. ---, 2018 WL 2123558 (D. Me. May 8, 2018) (Chapter 11); *In re LTV Steel Co., Inc.*, 333 B.R. 397 (Bankr. N.D. Ohio 2005) (Chapter 11); *Official Comm. of Unsecured Creditors of Wickes Inc. v. Wilson*, 2006 WL 1457786 (N.D. Ill. May 23, 2006) (Chapter 11); *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004) (Chapter 11); *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26 (N.Y. 2005) (Chapter 11); *Crusius v. Illinois Gaming Bd.*, 837 N.E.2d 88 (Ill. 2005) (Chapter 11); *Unsecured Creditors of RadioShack Corporation v. Kim*, No. 4:15-cv-00652-A, ECF No. 1 (N.D. Tex., filed Aug. 31, 2015) (Chapter 11).

[19] *See, e.g.*, *Cybergenics*, 330 F.3d at 568 (describing conferral of derivative standing as an "application of bankruptcy courts' equitable powers.").

*Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478 (1990) (acknowledging government control over public corporations through enabling acts); *id.* Ex. GG, *Amieiro Gozález v. Pinnacle Real Estata Home Team*, 173 D.P.R. 363 (2008) (to same effect).

21.   The Government has exercised these political powers in two relevant ways.  First, the elected Government has designated AAFAF as the sole entity that may "act[] as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing."  Kremer Decl. Ex. HH, Act 2-2017, § 5(a).  Moreover, AAFAF "shall oversee all matters related to the restructuring, renegotiation or adjustment of any existing or future obligation . . . of the Government of Puerto Rico."  *Id.* § 5(c).  Second, under the GDB Restructuring Act, "no Government Entity shall have authority or standing to challenge this Act, the Restructuring Transaction, or the other transactions contemplated in this Act in any local or federal court."  Act 109-2017, art. 703.

22.   Section 303 protects these laws because they relate to government control over territorial instrumentalities.  Granting the UCC derivative standing to object to the GDB Restructuring on behalf of the Title III Debtors would apparently create and vest in the UCC authority that the Government has withdrawn from the Title III Debtors, and allow the UCC to second-guess decisions that the Government has vested in AAFAF and made in enacting the GDB Restructuring Act.  The UCC cannot use Title III to overrule these laws, or to assert any claim on behalf of a Government instrumentality.[20]

---

[20] It is not clear if the UCC wants to act on behalf of the Title III Debtors as sovereign entities, the Oversight Board, or both.  Certainly, the AAFAF Enabling Act prohibits any party from acting on behalf of the Title III Debtors in their governmental capacity.  Kremer Decl. Ex. HH, Act 2-2017, § 5(a).

### B.   PROMESA Divested Limited Authority from the Puerto Rico Government and Gave It to the Oversight Board, Not the UCC.

23.     The Oversight Board enjoys specific delineated powers under PROMESA, including acting as the "representative" of debtors in Title III cases, and the authority to approve and certify fiscal plans (including the GDB Fiscal Plan), to authorize a governmental entity "to avail itself of the procedures" under Title VI, and to certify a Qualifying Modification (including GDB's Qualifying Modification). *See, e.g.*, 48 U.S.C. §§ 2141, 2175, 2231 (e),(g).

24.     The limited powers Congress delegated to the Oversight Board reflect a recognition and confirmation of the elected Government's political power and the right of the Puerto Rican people of self-government. *See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 637 (D.P.R. 2017) (recognizing that under PROMESA's power-sharing structure, the Oversight Board had no authority to impose structural changes to PREPA)(denying the Oversight Board's Motion to appoint a Chief Transformation Officer); *Rosselló v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, --- F. Supp. 3d ---, 2018 WL 4162625, at *12 (D.P.R. Aug. 27, 2018)(noting PROMESA is an "awkward power-sharing arrangement" between the Oversight Board and the territorial government, with the ability to legislate reserved to the elected Government).

25.     In crafting such a power-sharing arrangement between the Oversight Board and the elected Government, Congress has made clear that the limited powers it has taken from the elected Government in PROMESA belong exclusively to the Oversight Board, and no other power sharing arrangement can be read into the statute.[21]  *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 318 F. Supp. 3d 537, 542-43 (D.P.R. 2018) (noting Oversight Board is the representative of the

---

[21] *See, e.g.*, *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)("The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'"); *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010) ("The maxim 'expressio unius est exclusio alterius'—which translates roughly as 'the expression of one thing is the exclusion of other things'—is a venerable canon of statutory construction . . . .").

Debtors in the Title III cases) (citing 48 U.S.C. § 2175(a)).  Congress did not include the UCC or

any other private party in the mix.  The sole exception—and the sole statutory basis to allow a

third party to exercise a debtor's rights—is Bankruptcy Code section 926(a), which permits the

court to appoint a trustee to pursue an avoidance claim at the request of the creditor.  *See* 48 U.S.C.

§ 2161(a) (incorporating 11 U.S.C. § 926).

## II.   THE UCC WOULD NOT BE ENTITLED TO STANDING EVEN IF DERIVATIVE STANDING COULD BE GRANTED IN TITLE III.

26.   Assuming, arguendo that derivative standing for a committee or creditor could exist

under Title III, to obtain derivative standing the UCC would have to demonstrate (1) the UCC has

colorable claims for relief "that on appropriate proof would support a recovery,"[22] and (2) the Title

III Debtors "unjustifiably refused to bring such claims."  *In re Sabine Oil & Gas Corp.,* 547 B.R.

503, 519 (Bankr. S.D.N.Y. 2016), *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016).  In addition, the "Court

must weigh the probability of success, the potential financial recovery, and the costs to the estates

of the proposed litigation in examining whether the proposed litigation is likely to benefit the

estates and will not impair the Debtors' reorganization." *Id.* at 519 (citing *In re America's Hobby

Ctr., Inc.*, 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998); *STN Enterprises*, 779 F.2d at 905–06.  The

UCC cannot satisfy any of these requirements.

27.   The standard for "colorable" is similar to the standard for a motion to dismiss.  *In

re Sabine Oil & Gas Corp.*, 547 B.R. at 515.  In other words, the UCC must put forth "enough

facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007), and to show "more than a sheer possibility" of liability, *Ashcroft v. Iqbal*, 556

---

[22] All of the circuits that have addressed the issue of derivative standing rely on the same general rule, that the claims must be "colorable" for creditors to bring a suit on them on behalf of the debtor.  *See, e.g.*, *Hyundai*, 555 F.3d at 244–45; *PW Enterprises*, 540 F.3d at 900; *Cybergenics*, 330 F.3d at 566–567; *Fogel*, 221 F.3d at 965–966; *STN Enterprises*, 779 F.2d at 905; *La. World Exposition*, 858 F.2d at 247.  Of course, this has never been applied in the Chapter 9 context.

U.S. 662, 678, (2009).  Derivative standing should be denied if the claims are "facially defective,"

"apparently meritless," or "so flawed and 'not subject to cure.'"  *In re America's Hobby Ctr, Inc.*,

223 B.R. 275 (Bankr. S.D.N.Y. 1998).

28.     The UCC cannot meet this test.  Rather than identify a legal claim, the UCC points

to (1) the general proposition that each debtor in a multi-debtor case should be treated separately;

and (2) accusations of conflicts of interest in AAFAF, GDB and the Oversight Board in the

negotiation of the GDB Restructuring.  Mot. ¶¶ 45–60.  The UCC cites no authority whatsoever to

suggest that either theory could support appointing a committee to act in place of a debtor in any

context, much less in Title III.  Thus, even the cases that the UCC cites, which grant derivative

standing to act on behalf of a corporate debtor in the Chapter 7 and 11 contexts, do not support its

request for standing.  In those cases, courts confer derivative standing to pursue a specific legal

claim, such as fraudulent transfer or breach of fiduciary duty,[23] or deny substantive consolidation

of associated debtors to avoid intermingling of assets where creditors had relied on the corporate

separateness of the debtors pre-bankruptcy. [24]

---

[23] *See, e.g.*, *Hyundai*, 555 F.3d at 244 (derivative standing in Chapter 7 case to assert claim for avoidance of
fraudulent transfers); *Fogel*, 221 F.3d at 964–67 (same); *Campana*, 233 B.R. at 34 (same); *PW Enterprises*, 540
F.3d at 901–03 (same) (trustee consented); *Cybergenics*, 330 F.3d at 579–80 (same) (Chapter 11); *Canadian Pacific*,
66 F.3d at 1442–46 (same); *National Forge*, 326 B.R. at 547–48 (same); *STN Enterprises*, 779 F.2d at 905–06
(finding derivative standing could be used in Chapter 11 case, but remanding to lower Court to determine whether
claims for wasting corporate assets, receiving fraudulent conveyance, unjust enrichment, waste of corporate assets or
self-dealing were colorable under Vermont law); *La. World Exposition*, 858 F.2d at 252–53 (derivative standing in
Chapter 11 case to pursue claims for gross negligence, mismanagement, and breach of fiduciary duty); *Adelphia
Commc'ns Corp. v. Bank of Am., N.A.*, 330 B.R.364,374 (Bankr. S.D.N.Y. 2005) (derivative standing in Chapter 11
case to pursue claims for breach of fiduciary duty, racketeering, fraudulent concealment under Pennsylvania Law
and RICO) (no debtor challenge); *LTV Steel*, 333 B.R. at 429 (derivative standing in Chapter 11 case to pursue
claims for breach of duty of care, duty of loyalty, negligence, fraud, deepening insolvency, and corporate waste
under Delaware and New Jersey law); *iPCS*, 297 B.R. at 297–98 (derivative standing in Chapter 11 case to pursue
alter ego claim under Delaware law); *Evergreen Valley Resort*, 27 B.R. at 76 (derivative standing in Chapter 11 case
to assert claim for declaratory judgment that certain assets were owned by the estate, rather than sole stockholder of
debtor); *Meltzer*, 2018 WL 2123558 (denying leave to appeal order granting derivative standing in Chapter 11 case
to pursue claims against debtor LLC's former board members and sole member for breaches of duties of loyalty and
care and avoidance of fraudulent transfers).
[24] The substantive consolidation cases cited in the Motion have no applicability here.  *Restivo Baking Co.*, 860 F.2d
at 520–21 (reversing consolidation because it would cause claims of one subsidiary debtor to be subordinated
associated debtors); *Flora Mir Candy Corp.*, 432 F.2d at 1063 (denying consolidation because it would wipe out

13

29.      Nor has the UCC pointed to any legal basis to claim that the alleged conflicts of interest—that two members of the Oversight Board are past presidents of GDB, that former GDB officers were appointed to AAFAF, and that AAFAF and GDB shared a common financial advisor—could support a colorable claim.  As explained above, the releases have been clarified to ensure no former GDB director, officer or outside banker or representative benefit from them.

30.      The GDB Restructuring has also been expressly authorized by the Puerto Rico Legislative Assembly.  No case cited by the UCC even hints that purported conflicts can invalidate a statutory mandate.  Moreover, the Puerto Rico Fiscal Agency and Financial Advisory Authority Act appoints AAFAF the fiscal agent for all government instrumentalities and imposes no duty of loyalty to any one entity.  *See* Act 2-2017, § 5(a).  Rather, AAFAF's statutory obligation is to "coordinat[e] the sustainable use of resources and present[] a coordinated and global vision of the capital needs of the instrumentalities of the Government of Puerto Rico" to facilitate a response to Puerto Rico's fiscal crisis.  *Id.*, § 2.  The GDB Restructuring is entirely consistent with that charge. In addition, Congress was aware of the complex interrelationship between Puerto Rico's many agencies and instrumentalities when it enacted PROMESA.  But while it enacted provisions prohibiting interdebtor asset transfers under specified circumstances, *see* 48 U.S.C. § 2195, it did not preclude the Oversight Board or any Puerto Rico entity from acting on behalf of multiple instrumentalities.

31.      Furthermore, the UCC does not make any claim regarding how officers of GDB, AAFAF or the Puerto Rico government or members of the Oversight Board stand to gain anything

---

specific claim of misappropriation that subsidiary debtor had against its owner); *In re Standard Brands Paint Co.*, 154 B.R. 563, 571–74 (Bankr. C.D. Cal. 1993)(Allowing consolidation where "absent substantive consolidation, one debtor might need to object to the claims of debtors against it, and vice versa, or seek to collect on guarantees from one debtor to another [creating] a conflict so that separate counsel would have to be employed for each of the five debtors…"); c*f. also In re WM Distribution, Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M. 2017) (disqualifying counsel as conflicted under Bankruptcy Code § 327(a), which has not been incorporated into Title III) (cited in Motion).

from the Qualifying Modification.  It merely makes assertions that there is conflict without any allegations suggesting that the officers and advisors have anything to gain at the expense of the Title III Debtors from the Qualifying Modification, which only provides mutual releases from bondholders.  Mot. ¶ 52; *Cf. Meltzer*, 2018 WL 2123558, *10–11 (dismissing committee's derivative claim on behalf of LLC debtor for breach of duty of loyalty because allegations that certain Board Members lacked independence by virtue of relationships with other parties was insufficient to plead the requisite conflict of interest).

32.    Because it cannot identify a colorable claim, the UCC also cannot demonstrate any unjustified refusal to pursue a claim, or that "there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce."  *In re Smart World Techs.*, 423 F.3d 166, 177–178 (2d Cir. 2005) (citing *STN Enterprises*, 779 F.2d at 906).  First, PROMESA Section 305 permits the Title III Debtors to settle claims without Court approval or interference.  *See* 48 U.S.C. § 2165 (court may not interfere with use of debtor property without the Oversight Board's consent); *Stockton II*, 486 B.R. at 198  (Governmental debtors can settle claims without court approval, "even foolishly or in a manner that disadvantages other creditors").  There cannot be an unjustified refusal to object to a transaction to which the Title III Debtors have consented because that consent is protected from judicial interference.

33.    Second, the UCC cannot demonstrate that derivative standing would yield any significant benefit to the Title III Debtors because the Debtors benefit from the GDB Restructuring. The GDB Restructuring facilitates a resolution of complex intergovernmental claims, which is a crucial step in the overall restructuring of Puerto Rico's unprecedented debt crisis, to the benefit

15

of all of the Title III Debtors.[25] The GDB Restructuring also provides immediate relief to Puerto Rico's cash-strapped municipalities, which will reduce the likelihood that the Government would be called upon to provide cash assistance to ensure the continuation of essential services. Act 147-2018, art. 501(a) (authorizing full municipal setoff); *id.* art. 502 (authorizing immediate payment of 55% of Excess CAE).

## III. THE COURT SHOULD DENY THE UCC'S REQUEST FOR PERMISSION TO DIRECTLY CHALLENGE GDB'S TITLE VI ACTION.

34. In addition to seeking derivative standing to object to GDB's Qualifying Modification on behalf of the Title III Debtors, the UCC also requests an order from this Court granting it permission to pursue direct standing in GDB's Title VI Action to be heard on behalf of the Title III Debtors' unsecured creditors. Mot. ¶ 63. The UCC's request should be denied for the reasons briefly summarized here and explained more fully in GDB and AAFAF's Standing Objection.[26]

35. First, the UCC cannot appear on behalf of its members in the GDB Title VI Action because they lack standing. The members of the UCC are not GDB creditors and have no legal rights of their own directly affected by the Qualifying Modification. The only parties with a legitimate interest in objecting to the Approval Application under PROMESA section 601 are those who are directly affected by the Qualifying Modification and who seek to object to GDB's compliance with the conditions set forth in section 601. The UCC has no standing to act on its

---

[25] The logical conclusion of the UCC's request for derivative standing to object to the GDB Restructuring is a full litigation of the complex web of intergovernmental claims between the GDB, the Title III Debtors, and other Puerto Rico government instrumentalities not currently in Title III. Litigating these disputes would very likely take years, incur significant litigation costs, and, most importantly, delay the resolution of Puerto Rico's debt crisis and stifle economic investment and recovery.

[26] *See* GDB and AAFAF's Objection to the Official Committee of Unsecured Creditors' Standing to Object to the Approval Application (Standing Objection), No. 3:18-cv-01561-LTS-JSD, Dkt. No. 112, ¶ 26 (D.P.R., filed Sept. 1, 2018)

own behalf because its members themselves have no such standing.[27]

36.    Second, the UCC has no authority to appear in a Title VI Action. The UCC's sole source of authority is Bankruptcy Code section 1109, which states that "[a] party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  While PROMESA section 301(a) provides that Bankruptcy Code section 1109 is applicable to Title III cases, PROMESA neither makes Bankruptcy Code section 1109 applicable to a Title VI proceeding nor contains any analogous provision for Title VI proceedings.  *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("'[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). Accordingly, PROMESA provides no statutory basis for the UCC (a creature of Title III) to appear in another instrumentality's Tile VI proceeding.[28]

37.    Even if PROMESA were not silent on the applicability of Bankruptcy Code section 1109 in Title VI, it would still be improper to grant the UCC permission to participate in GDB's Title VI Action, particularly when it is not a GDB creditor, has no right to vote on the Qualifying Modification, and is not otherwise directly affected by the Qualifying Modification.

38.    The UCC merely cites a string of cases for the proposition that the Court, under appropriate circumstances, may allow a committee to appear outside the bankruptcy proceeding. Motion, ¶ 63.[29]  Those cases are unpersuasive here.

---

[27] *See* Standing Objection ¶¶ 20–24.

[28] *See also* Standing Objection at ¶ 26.  Because the UCC's actions in the Title VI are ultra vires and without statutory authorization, AAFAF reserves the right to object to the UCC's ability to even invoice the Title III Debtors for such services, much less be paid for them.

[29] The Committee also attempts to avoid a line of cases cited in the Oversight Board's Objection to Committee Notice of Intent to Object by arguing they do not establish that "a Committee may never, under any circumstances, act outside the case in which it was appointed." Mot. ¶ 62.

39.     Finally, the UCC asks that if this Court denies its Motion, the UCC be granted leave to file amicus briefs opposing the GDB Restructuring in the Title III cases and in the Title VI Action.  Mot. ¶ 41.  While GDB and AAFAF do not contest the Court's authority to grant this relief, GDB and AAFAF respectfully request that it be denied—amicus briefs are not a vehicle to allow the assertion of new claims and objections by outsiders who lack standing and act as mere outside commentators providing no substantive guidance or insight.  *See, e.g.*, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, 550 B.R. 241, 256 (Bankr. S.D.N.Y. 2016) (denying request to participate in adversary proceeding presented as an alternative to an unsuccessful intervention motion because the requesting party could not provide neutral assistance to the court); *Fallon Paiute-Shoshone Tribe v. U.S. Bureau of Land Mgmt.*, 455 F. Supp. 2d 1207, 1216 (D. Nev. 2006) ("[A]n *amicus* brief 'ordinarily cannot inject new issues into a case which have not been presented by the parties.'"  (quoting 4 Am. Jur. 2d Amicus Curiae § 7 (2006)).  The UCC's unrelenting efforts to delay and thwart the GDB Restructuring, in the form of a denied stay motion, the instant Motion, and other related filings in the Title VI Action, have forced the Title III Debtors to incur significant, unnecessary fees.  GDB and AAFAF respectfully request that this Court reject the UCC's wasteful attempts to insert itself in the Title VI Action and curtail the unjustified run up of professional fees and expenses.

## CONCLUSION

40.     For the reasons discussed herein, the Motion should be denied.

Dated: September 21, 2018
        San Juan, Puerto Rico


Respectfully submitted,


*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel:  (787) 705-2171
Fax:  (787) 936-7494

        *- and -*

**O'MELVENY & MYERS LLP**
John J. Rapisardi
Suzzanne S. Uhland
Peter Friedman
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061


*Attorneys for the Puerto Rico Fiscal Agency and
Financial Advisory Authority and the Government
Development Bank for Puerto Rico*

19