# Exhibit G

## RESTRUCTURING SUPPORT AGREEMENT

THIS RESTRUCTURING SUPPORT AGREEMENT (including the annexes, exhibits and schedules attached hereto and as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof, this "**Agreement**" or "**RSA**"), dated as of May 15, 2017, is entered into by and among the Government Development Bank for Puerto Rico ("**GDB**") and the undersigned GDB Bondholders (as defined herein), and acknowledged and agreed to by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**"). The GDB Bondholders who are party to this Agreement or execute a joinder to this Agreement in the form of Exhibit B will be referred to herein collectively as the "**Supporting Bondholders**." The Supporting Bondholders, together with GDB and any subsequent person or entity that becomes a party hereto in accordance with the terms hereof, are referred to herein collectively as the "**Parties**" and each individually as a "**Party**."

**WHEREAS**, GDB is the issuer of certain bonds set forth on **Schedule A** attached hereto (including all series thereof, the "**GDB Bonds**") issued and outstanding pursuant to that certain trust indenture, dated as of February 17, 2006 (as amended or supplemented, the "**Trust Agreement**" and, together with the GDB Bonds, the resolutions approving the GDB Bonds, and any other agreements, supplements, amendments, or other documents executed or delivered in connection with the issuance or maintenance of the GDB Bonds, the "**Bond Documents**") between GDB and Wilmington Trust, National Association, as successor trustee (the "**Trustee**") that are beneficially owned or controlled by the holders thereof (referred to herein collectively as the "**GDB Bondholders**").

**WHEREAS**, as of the date hereof, the total outstanding principal amount of GDB Bonds that are beneficially owned by each of the Supporting Bondholders is set forth on its respective signature page hereto.

**WHEREAS**, the Parties have agreed to undertake a financial restructuring of GDB (the "**Restructuring**") which is anticipated to be effected through a Qualifying Modification pursuant to Title VI of the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114–187, 130 Stat. 549 (2016) ("**PROMESA**") (including any schedules and exhibits attached thereto, the "**Plan**") on terms and conditions set forth in the term sheet attached hereto as **Exhibit A** (including any schedules and exhibits attached thereto, the "**Restructuring Term Sheet**").

**WHEREAS** pursuant to the requirements of PROMESA, the Financial Oversight and Management Board for Puerto Rico established pursuant to PROMESA (the "**Oversight Board**") will be requested to issue certifications under sections 104 and 601(g)(2).

**WHEREAS**, AAFAF by Act 2-2017 of the Government of Puerto Rico has been given the sole responsibility to renegotiate, to restructure and/or to reach an agreement with creditors on all or part of the public debt or any other debt issued by any government entity and has expressed support for the Restructuring, including matters discussed in the Restructuring Term Sheet and herein.

**WHEREAS**, the Parties, which include a broad and diverse coalition of on-island and off-island Supporting Bondholders, desire to express to each other their mutual support and commitment in respect of the Restructuring, including matters discussed in the Restructuring Term Sheet and herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## 1. Certain Definitions.

Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the Restructuring Term Sheet.  As used in this RSA, the following terms have the following meanings:

(a)  "**Claim**" has the meaning set forth in the definition of "Liability Claim" in section 405 of PROMESA.

(b)  "**Confirmation Order**" means a court order pursuant to section 601(m)(1)(D) of PROMESA approving the Qualifying Modification as satisfying the requirements of section 601 of PROMESA, which must be in form and substance reasonably satisfactory to GDB and the Requisite Bondholders (as defined below).

(c)  "**Definitive Documents**" means the documents (including any related agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement, or otherwise relate to, the Restructuring, including this RSA, the Plan (including any supplements thereto), any disclosure statement, any order approving such disclosure statement, any information materials required pursuant to section 601(f) of PROMESA, and the Confirmation Order, in each case on terms and conditions consistent with the Restructuring Term Sheet, PROMESA, and otherwise in form and substance reasonably satisfactory to GDB and the Requisite Bondholders (as defined below).

(d)  "**District Court**" means the United States District Court for the District of Puerto Rico or any other federal district court of competent jurisdiction under PROMESA.

(e)  "**Effective Date**" means the date upon which all the conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms.

(f)  "**Effective Voluntary Agreement**" means a Voluntary Agreement (defined below) certified by the Oversight Board in accordance with section 104(i)(1) of PROMESA to which the Majority Bondholders (defined below) are party.

(g)  "**Fiscal Plan**" means the Fiscal Plan for GDB certified by the Oversight Board on April 28, 2017.

#89334613v60

(h)   "**Majority Bondholders**" means holders of at least a majority in amount of the Bond Claims (as defined in PROMESA) of GDB that are to be affected by the Voluntary Agreement (as defined below) providing for the Restructuring.

(i)   "**Material GDB Bondholder Group**" means a group of GDB Bondholders represented by common legal counsel and holding more than $200 million in aggregate principal amount of GDB Bonds.

(j)   "**Outstanding**" has the meaning set forth in section 601(a)(10) of PROMESA.

(k)   "**Qualifying Modification**" has the meaning set forth in section 601(a)(13) of PROMESA.

(l)   "**Qualifying RSA**" means a restructuring support agreement to support the Restructuring among holders of Participating Bond Claims (as defined in the Restructuring Term Sheet), GDB and AAFAF on substantially similar terms as those set forth herein.

(m)   "**Qualifying Title III Plan**" has the meaning set forth in section 4(a) of this Agreement.

(n)   "**Requisite Bondholders**" means, as of the date of determination, Supporting Bondholders collectively holding (a) at least a majority of the outstanding principal amount of the GDB Bonds held by Supporting Bondholders that are "cooperativas" insured by the Corporation for the Supervision and Insurance of Cooperatives in the Commonwealth of Puerto Rico ("**COSSEC**") as of such date, (b) at least a majority of the outstanding principal amount of the GDB Bonds held by Supporting Bondholders domiciled[1] in the Commonwealth of Puerto Rico other than those described in the foregoing clause (a), and (c) at least a majority of the outstanding principal amount of the GDB Bonds held by all Supporting Bondholders other than those described in the foregoing clauses (a) and (b).

(o)   "**SEC**" means the United States Securities and Exchange Commission.

(p)   "**Securities Act**" shall mean the Securities Act of 1933, as amended.

(q)   "**Solicitation**" means the solicitation of votes for the Plan pursuant to, and in compliance with, PROMESA or any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

(r)   "**Support Effective Date**" means the date on which counterpart signature pages to this RSA shall have been executed and delivered by GDB and GDB Bondholders holding at least $1,750,000,000 in aggregate principal amount of outstanding GDB Bonds.

---

[1] For the purposes of this Agreement, the domicile of each Supporting Bondholder shall be presumed to be located at the notice address supplied with executed signature pages hereto until the Notice Parties (as defined below) receive written notice from such Supporting Bondholder that it is domiciled elsewhere.

#89334613v60

(s)   "**Support Period**" means the period commencing on the Support Effective Date and ending on the earlier of the (i) date on which this RSA is terminated in accordance with Section 6 hereof and (ii) the Effective Date.

(t)   "**Voluntary Agreement**" means an agreement certified by the Oversight Board as satisfying the requirements of section 104(i)(1) of PROMESA.

2.   **Restructuring Term Sheet.**   The material terms and conditions of the Restructuring are set forth in the Restructuring Term Sheet; provided that the Restructuring Term Sheet is supplemented by the terms and conditions of this RSA.   In the event of any inconsistencies in the terms of the Restructuring between the Restructuring Term Sheet and this RSA, the terms of the Restructuring Term Sheet shall govern.   For any other inconsistency between the Restructuring Term Sheet and this RSA, this RSA shall govern.

3.   **Mutual Obligations and Acknowledgments.**

(a)   During the Support Period, each Party shall work collaboratively and in good faith with the other Parties to, finalize, document and implement the Plan incorporating the terms and conditions described on the Restructuring Term Sheet and such other terms, conditions and documents necessary to implement and effectuate the Plan based on, and consistent with, the Restructuring Term Sheet and this Agreement, including without limitation the Definitive Documents, which Definitive Documents shall (i) contain economic terms consistent in all material respects with the terms set forth in the Restructuring Term Sheet, (ii) be consistent with this Agreement in all material respects and (iii) not contain any material additional terms, elements or transactions that adversely affect any Supporting Bondholder in its capacity as a GDB Bondholder.

(b)   During the Support Period, each Party shall refrain from (i) promoting or supporting any bill or legislation or (ii) directly or indirectly promoting, supporting or entering into any agreement, in each case that is inconsistent with the Restructuring or this RSA, that would materially and adversely affect the ability of GDB to comply with its obligations under this RSA or the Definitive Documents, or that would materially and adversely affect any Supporting Bondholder in its capacity as a GDB Bondholder.

(c)   During the Support Period, each Party shall use reasonable best efforts to consummate the Restructuring pursuant to Title VI of PROMESA.   Notwithstanding the foregoing, if GDB, AAFAF and the Requisite Bondholders mutually agree (provided, that, for the purposes of this Section 3(c), the agreement of Supporting Bondholders in the group described in clause (a) of the definition of Requisite Bondholders collectively holding 66 and 2/3% of the outstanding principal amount of the GDB Bonds held by such group shall be required) that it is necessary or desirable to consummate the Restructuring pursuant to Title III of PROMESA rather than Title VI of PROMESA, such Parties shall work collaboratively and in good faith to amend any milestones and other relevant provisions set forth in this Agreement and the Restructuring Term Sheet to reflect the different requirements and expectations of such a proceeding, which amendments shall be binding on all Parties.

4

(d)     Notwithstanding the milestones set forth in <u>Sections 6(a)(ii)-(v)</u> and 6(b)(iv)-(vii) below, the Parties agree to use commercially reasonable efforts to consummate the Restructuring approximately on the timeline set forth on **Exhibit C** hereto.

(e)     Each Party acknowledges and agrees that upon the execution and delivery of counterpart signature pages to this RSA by GDB, AAFAF and the Supporting Bondholders, the RSA will become a Voluntary Agreement that can be submitted to the Oversight Board for certification pursuant to section 104(i)(1)(A) of PROMESA.

(f)     Each Party acknowledges and agrees that upon (i) certification of this RSA as a Voluntary Agreement by the Oversight Board and (ii) the execution and delivery of counterpart signature pages to the RSA or any other Qualifying RSA from the Majority Bondholders, the Voluntary Agreement providing for the Restructuring shall become an Effective Voluntary Agreement pursuant to section 104(i)(2), which can be submitted to the Oversight Board as a Qualifying Modification pursuant to the Voluntary Agreement Process, as set forth and defined in section 601(g)(2) of PROMESA.

(g)     Each Party acknowledges and agrees that solicitation of the Qualified Modification (as defined in PROMESA) will commence upon receipt of the certification by the Oversight Board required by section 601(g)(2) of PROMESA.

### 4.     <u>Agreements of the Supporting Bondholders.</u>

(a)     <u>Agreement to Vote.</u>  During the Support Period, subject to the terms and conditions hereof, each Supporting Bondholder agrees that it shall, subject to the receipt by such Supporting Bondholder of the disclosure statement and/or other solicitation materials in respect of the Plan:

(i)     vote or cause to be voted its Claims in respect of GDB Bonds to accept the Plan by delivering its duly executed and completed ballots accepting the Plan on a timely basis as soon as reasonably practicable after receiving the ballots; <u>provided that</u> such vote shall be immediately revoked by all Supporting Bondholders and deemed void *ab initio* upon termination of this RSA before the consummation of the Plan pursuant to the terms hereof;

(ii)     not change or withdraw (or cause to be changed or withdrawn) any such vote;

(iii)     act in good faith and use commercially reasonable efforts to support the Solicitation in accordance with the terms of this RSA;

(iv)     do all things reasonably necessary and appropriate in furtherance of confirming the Plan and consummating the Restructuring and the transactions contemplated thereby in accordance with, and within the time frames contemplated by, this RSA (including within the deadlines set forth in <u>Section 6</u>), including considering actions reasonably requested by GDB and AAFAF;

5

(v)     not take any action directly or indirectly that is inconsistent with, or that would reasonably be expected to prevent, interfere with, delay or impede (A) the approval contemplated by section 601(f) of PROMESA, (B) the Solicitation of votes on the Plan and/or (C) the confirmation and consummation of the Plan and the Restructuring, including soliciting or causing or allowing any of its agents or representatives to solicit any agreements relating to any voluntary restructuring transaction pursuant to Title VI of PROMESA or any other restructuring transaction other than the Restructuring (an "**Alternative Transaction**"); provided that, for the avoidance of doubt, the occurrence, in and of itself, of a voluntary or involuntary bankruptcy, insolvency or similar proceeding in respect of any Supporting Bondholder, where (1) any Transfer (as defined below) of GDB Bonds pursuant to such proceeding complies with Section 4(b) hereof and (2) such Supporting Bondholder is in compliance with all of its obligations under this Agreement, shall not be deemed to constitute any such interference with, delay or postponement;

(vi)     not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with this RSA or delay, impede, appeal, or take any other negative action, directly or indirectly, or encourage any other entity to interfere with the acceptance or implementation of the Restructuring or delay the time frames contemplated by this RSA (including within the deadlines set forth in Section 6);

(vii)     for so long as the RSA has not been terminated, not (A) object to, delay, impede, or take any other action to interfere with acceptance or implementation of the Plan, (B) directly or indirectly solicit, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout, or plan of reorganization for GDB other than the Plan, (C) otherwise take any action that would interfere with, delay, or postpone the consummation of the Restructuring, including any action that would cause a GDB Termination Event, it being understood that any action permitted by Section 4(h) hereof shall not be construed to interfere with, delay, or postpone the consummation of the Restructuring, or (D) oppose a petition under Title III of PROMESA of GDB or any plan of adjustment under such Title III; provided that (i) such case has been filed in accordance with Section 3(c) above and (ii) the plan of adjustment filed with the petition or subsequently sought for approval incorporates all material terms of the Restructuring Term Sheet (a "**Qualifying Title III Plan**"); provided further that, for the avoidance of doubt, the occurrence, in and of itself, of a voluntary or involuntary bankruptcy, insolvency or similar proceeding in respect of any Supporting Bondholder, where (1) any Transfer (as defined below) of GDB Bonds pursuant to such proceeding complies with Section 4(b) hereof and (2) such Supporting Bondholder is in compliance with all of its obligations under this Agreement, shall not be deemed to constitute any such interference with, delay or postponement; and

(viii)     vote or cause to be voted its Claims in respect of GDB Bonds to accept the Qualifying Title III Plan by delivering its duly executed and completed ballots accepting the Qualifying Title III Plan on a timely basis as soon as reasonably practicable after receiving the ballots; provided that such vote shall be immediately revoked by all

6

Supporting Bondholders and deemed void *ab initio* upon termination of this RSA before the consummation of the Qualifying Title III Plan pursuant to the terms hereof.

(b) <u>Transfers.</u>

(i) During the Support Period, each Supporting Bondholder agrees, solely with respect to itself, that such Supporting Bondholder shall not sell, transfer, loan, issue, pledge, assign, or otherwise dispose of (each, a "**Transfer**"), directly or indirectly, in whole or in part, any of its GDB Bonds or its Claims in respect thereof (including grant any proxies, deposit any interest in the GDB Bonds Claims into a voting trust or enter into a voting agreement with respect to any such GDB Bonds or Claims), unless the transferee thereof either (A) is a Supporting Bondholder or (B) before such Transfer is effective, (1) agrees in writing for the benefit of the Parties to become a Supporting Bondholder and (2) agrees to be bound by all of the terms of this RSA applicable to Supporting Bondholders (including with respect to any and all GDB Bonds and Claims in respect thereof it already may hold before such Transfer) by executing a joinder agreement substantially in the form attached hereto as **Exhibit B** (a "**Joinder Agreement**"), and delivering an executed copy thereof by email within two (2) business days after such execution to (a) O'Melveny & Myers LLP ("**O'Melveny**"), counsel to GDB and AAFAF, authorized to act on behalf of GDB, (b) Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel to the Ad Hoc Group of GDB Bondholders (the "**Ad Hoc Group**"), (c) Marichal, Hernández, Santiago & Juarbe, LLC, counsel to Grupo Encuentro Solidario ("**Grupo ES**"), (d) Nevares, Sánchez Alvarez and Cancel, PSC ("**Nevares**"), counsel to Alianza de Cooperativistas ("**Alianza**") and (e) Picó & Blanco LLC ("**Picó & Blanco**"), counsel to the Bonistas del Patio (the "**Creditor Notice Parties**" and, together with O'Melveny, the "**Notice Parties**" and, each individually, a "**Notice Party**"), in which event, upon compliance with the foregoing, (x) the transferee (including the Supporting Bondholder transferee, if applicable) shall be deemed to be a Supporting Bondholder hereunder to the extent of such transferred rights and obligations and shall be deemed to make all of the representations, warranties, and covenants of a Party, as applicable, set forth in this RSA and (y) the transferor shall be deemed to relinquish its rights (and be released from its obligations) under this RSA to the extent of such transferred rights and obligations; <u>provided</u> <u>that</u> this <u>Section 4(b)(i)</u> shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer holding custody of securities in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such securities.  Each Supporting Bondholder agrees that any Transfer of any GDB Bonds or related Claims that does not comply with the terms and procedures set forth herein shall be deemed void *ab initio* and shall not create any obligation or liability of any Party to the purported transferee, and GDB and each other Supporting Bondholder shall have the right to enforce the voiding of such Transfer.  Any Supporting Bondholder that effectuates a Transfer in compliance with the foregoing shall have no liability under this RSA arising from or related to the failure of the transferee to comply with the terms of this RSA.

(ii) Notwithstanding <u>Section 4(b)(i)</u>: (A) a Supporting Bondholder may settle or deliver any GDB Bonds to settle any confirmed transaction pending as of the date of such Supporting Bondholder's entry into this RSA (subject to compliance

7

with applicable securities laws and it being understood that such GDB Bonds so acquired and held (*i.e.*, not as a part of a short transaction) shall be subject to the terms of this RSA); (B) a Supporting Bondholder may Transfer its GDB Bonds and related Claims to an entity that is acting in its capacity as a Qualified Marketmaker without the requirement that the Qualified Marketmaker become a Party; provided that (1)(a) such Qualified Marketmaker must Transfer such right, title, or interest in such GDB Bonds before the Plan voting deadline and (b) any subsequent Transfer by such Qualified Marketmaker of the right, title, or interest in such GDB Bonds is to a transferee that is or becomes a Supporting Bondholder at the time of such transfer, or (2) the Qualified Marketmaker will be required to execute and deliver a Joinder Agreement; and (C) to the extent that a Supporting Bondholder is acting in its capacity as a Qualified Marketmaker, it may Transfer any right, title, or interest in GDB Bonds that the Qualified Marketmaker acquires from a GDB Bondholder who is not a Supporting Bondholder without the requirement that the transferee be or become a Supporting Bondholder or execute a Joinder Agreement.

For these purposes, a "**Qualified Marketmaker**" means an entity that (x) holds itself out to the public or applicable private markets as standing ready in the ordinary course of its business to purchase from customers and sell to customers GDB Bonds or Claims against GDB (including debt securities or other debt) or enter with customers into long and short positions in GDB Bonds or Claims against GDB (including debt securities or other debt), in its capacity as a dealer or market maker in such GDB Bonds or Claims against GDB, (y) is in fact regularly in the business of making a market in bonds or Claims against issuers or borrowers (including debt securities or other debt); and (z) is registered with the Securities and Exchange Commission ("**SEC**") and the Financial Institutions Regulatory Authority.

(iii)    Additional Claims. This RSA shall in no way be construed to preclude any Supporting Bondholder from acquiring additional GDB Bonds or related Claims; provided that (A) any such acquired GDB Bonds or related Claims shall automatically and immediately upon acquisition by a Supporting Bondholder be deemed subject to all of the terms of this RSA (including the obligations of the Supporting Bondholders under this Section 4) and (B) after such acquisition, such Supporting Bondholder shall notify its counsel, if any, of the amount and types of GDB Bonds or Claims it has acquired (1) on no less than a monthly basis and (2) additionally, upon the reasonable request of its counsel, if any.

(c)    In addition, no later than the first (1st) business day of each month, and upon the GDB's or AAFAF's reasonable request, each Material GDB Bondholder Group and Supporting Bondholder not part of a Material GDB Bondholder Group shall provide or cause its counsel to provide its holdings (aggregate holdings, in the case of a Material GDB Bondholder Group) to the Notice Parties.

(d)    Forbearance.

(i)    During the period commencing on the date hereof and ending on the termination of this RSA in accordance with its terms, each Supporting Bondholder

8

hereby agrees to forbear from exercising, or consenting to the exercise of, or directing or otherwise directly or indirectly causing the exercise of any of the rights and remedies available to the Supporting Bondholders (or any GDB Bondholder) or the Trustee under the Trust Agreement with respect to any defaults or events of default including, without limitation, any action to accelerate, or join in any request for acceleration of the GDB Bonds or commencing, prosecuting, joining, interceding in, supporting, or otherwise participating, in each case, directly or indirectly, in any way in any legal proceedings against GDB, AAFAF, the Government of Puerto Rico or any other agency, instrumentality, or municipality thereof, or any current or former officer or director of such Puerto Rico governmental bodies, in respect of the GDB Bonds ("**Remedial Action**").  The Supporting Bondholders hereby request that during the Support Period any applicable administrative agent or indenture trustee not take, and direct such administrative agent or indenture trustee not to take, any Remedial Action with respect to any defaults or events of default, and shall, upon request of GDB, provide such further direction to any administrative agent or indenture trustee as may be necessary to effectuate the intent of the foregoing.  The Supporting Bondholders further agree that if any applicable administrative agent or indenture trustee takes any action inconsistent with such Supporting Bondholders' obligations under this RSA, such Supporting Bondholder shall use its commercially reasonable efforts to require such administrative agent or indenture trustee to cease and refrain from taking any such action (including, by written notice to the indenture trustee, rescinding and canceling such acceleration to the fullest extent permitted under the Trust Agreement).

(ii)     The foregoing forbearance shall not be construed to impair the ability of the Supporting Bondholders or the indenture trustee to exercise any rights or remedies under the Trust Agreement or take any Remedial Action, without requirement for any notice, demand, or presentment of any kind, at any time after the Support Period, and, except as provided herein, nothing shall restrict, impair, or otherwise affect the exercise of the Supporting Bondholders' or the indenture trustee's rights under this RSA, the Trust Agreement or the GDB Bonds.

(iii)     For the avoidance of doubt, the forbearance set forth in this Section 4(d) shall not by implication or otherwise limit, impair, constitute a waiver of or otherwise affect the rights and remedies of the Supporting Bondholders or the Trustee under the Trust Agreement or GDB Bonds and shall not, except as expressly set forth herein, alter, modify, amend, or in any way affect any of the terms, conditions, obligations, covenants, or agreements contained in the Trust Agreement or the GDB Bonds or any other provision of the Trust Agreement or the GDB Bonds, all of which are ratified and affirmed in all respects and shall continue in full force and effect.  The forbearance set forth in this Section 4(d) shall not bar any Supporting Bondholder from filing a proof of claim or taking action to establish the amount of its Claim.  If the transactions contemplated hereby are not consummated or if this RSA is terminated for any reason, the Parties fully reserve any and all of their rights.

(e)     The Supporting Bondholders agree to provide prompt written notice to the Notice Parties between the date hereof and the Effective Date of (i) receipt of any notice that is not publicly available of any judicial proceeding commenced, or, to the actual knowledge of

any Supporting Bondholder, threatened in writing against any Supporting Bondholder, relating to or involving or otherwise affecting in any material respect the transactions contemplated by the Restructuring, and (ii) any failure of any Supporting Bondholder to comply with or satisfy, in any material respect, any covenant, condition, or agreement hereunder.

(f)    The agreements of the Supporting Bondholders in this <u>Section 4</u> shall be solely on such Supporting Bondholders' own behalf and not on behalf of any other Supporting Bondholders and shall be several and not joint.

(g)    Notwithstanding anything in this Agreement, each Supporting Bondholder is entitled to act to protect its interests as holders of other obligations issued by the Government of Puerto Rico or any of its instrumentalities (other than GDB).

(h)    During the period commencing on the date hereof and ending on the termination of this RSA in accordance with its terms, any Supporting Bondholder or the Trustee may take any action that is not a Remedial Action before any court, tribunal, or adjudicative agency, at law or in equity, that any such Supporting Bondholder or the Trustee deems necessary or appropriate to enforce, preserve, protect, or defend any rights, claims, defenses, security interests, collateral, pledges of assets, liens, property rights, privileges, or benefits under the Bond Documents, any other contract or agreement, or any source of law that any such Supporting Bondholder or Trustee may have (the "**Rights**") against any challenge, limitation, infringement, assertion of priority, or claim (a "**Permitted Action**").   For the avoidance of doubt, Permitted Actions do not include any Remedial Action or any other action otherwise barred by Section 4 of this Agreement, but may include, without limitation, (i) defending, intervening in or filing pleadings and other documents in any legal proceedings relating to any such Rights; (ii) sending notices to any persons, governmental authorities or entities concerning the existence of any such Rights; (iii) directing the Trustee to take any action to enforce, preserve, protect or defend any such Rights (other than by a Remedial Action); (iv) appearing and participating as a party in interest in any matter to be adjudicated or decided in any bankruptcy, insolvency or similar proceeding concerning GDB or the adjustment of Claims against GDB, the Government of Puerto Rico or any other agency, instrumentality or municipality thereof; (v) commencing or continuing any action (other than any Remedial Action or any other action otherwise expressly barred by Section 4 of this Agreement) in any court or tribunal against any person or entity asserting claims relating to the Rights or Bond Documents; or (vi) otherwise preserving any of the rights, remedies, positions or defenses of such Supporting Bondholder or the Trustee, all of which are hereby expressly reserved.   Notwithstanding the foregoing, the Supporting Bondholders shall not propose, file, support, or take any other action in furtherance of any restructuring, workout, plan of adjustment for GDB other than the Restructuring, including, for the avoidance of doubt, making or supporting any filings with the District Court in a Title III case or other tribunal, or any regulatory agency, or making or supporting any public statements with respect to any restructuring, workout, or plan of adjustment for GDB other than the Restructuring. Notwithstanding anything to the contrary in this Agreement, the plaintiffs in <u>Brigade Leveraged Capital Structures Fund Ltd., et al. v. Garcia-Padilla et al.</u>, No. 16-CV-1610, pending in the U.S. District Court for the District of Puerto Rico and <u>Trigo Gonzalez, et al. v. Garcia Padilla, et al.</u>, No. 16-CV-02257, pending in the U.S. District Court for the District of Puerto Rico shall be entitled to (i) seek to stay or to extend any pending deadline in such

10

actions; (ii) to the extent such actions are not subject to a stay under 11 U.S.C. § 362 or 11 U.S.C. § 922 (in each case, as made applicable by Title III of PROMESA) or a stay ordered by the court upon stipulation or motion of the parties, take any action that is required to be taken under any pending deadline.  For the avoidance of doubt, the plaintiffs in the foregoing litigations or any other Supporting Bondholder are not permitted to seek relief from the automatic stay in such litigations.

(i)     Subject to the express terms of this Agreement, including <u>Section 13</u>, the Supporting Bondholder shall not be prohibited from taking any action that any such Supporting Bondholder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan or the Definitive Documents.

(j)     Except as expressly provided herein, none of (i) the existence, execution, delivery or performance of any term or provision of this Agreement, (ii) any failure by any Supporting Bondholder to object to any document or action contemplated by or taken under or in connection with this Agreement, or (iii) any action taken under or in connection with this Agreement, including any approvals or consents to any action or document, shall (A) constitute a modification or relinquishment of any term or aspect of, or any right or remedy under or with respect to, the Bond Documents or any other document (other than this Agreement to the extent expressly provided herein) or under applicable law; (B) constitute a consent to, waiver of, or admission of any default or event of default (or the absence of a default or event of default) in any of the Bond Documents; (C) extend the due date of any obligations under the Bond Documents or otherwise affect the enforceability of such obligations; (D) give rise to any obligation to extend, amend, waive or otherwise modify any term or condition of any of the applicable Bond Documents, or in the case of the Supporting Bondholders, to direct the Trustee with respect to any of the foregoing; or (E) give rise to any defenses or counterclaims to the GDB Bonds or any Bond Document, or to any right of the Supporting Bondholders to direct the Trustee under the Bond Documents, to compel payment of the obligations under any of the applicable Bond Documents or to otherwise enforce rights or remedies thereunder or under applicable law.  Except as expressly limited herein, each of the Supporting Bondholders and GDB hereby expressly reserves all of its rights, remedies, positions and defenses under or with respect to the Bond Documents and under applicable law, and waives none.  From and after the termination of this Agreement as to any Supporting Bondholder, (x) each such Supporting Bondholder (each, a "**Terminated Bondholder**") shall be entitled to protect, defend, enforce and assert any of its rights, remedies, positions and defenses under or with respect to the Bond Documents, in accordance with their respective terms, or under applicable law, including without limitation, commencing legal proceedings and (y) GDB shall, subject to its obligations under this Agreement to the remaining Parties, be entitled to protect, defend, enforce and assert any of its rights, remedies, positions and defenses under or with respect to the Bond Documents, in accordance with their respective terms, or under applicable law, including without limitation, commencing legal proceedings, solely against the Terminated Bondholder, as applicable.  GDB acknowledges that no Supporting Bondholder has made any representations as to what actions, if any, any Supporting Bondholder will take after this Agreement terminates as to such Supporting Bondholder (including by withdrawal).

(k)     Except as expressly provided in this Agreement, including the Plan and any Definitive Document, each Supporting Bondholder shall in no way be required as a result

#89334613v60

of this Agreement to expend any cash resources or assume any additional risk or liability (including, for the avoidance of doubt, indemnifying the Trustee) in support of the Plan or this Agreement.

5.    **Agreements of GDB.**

Prior to and during the Support Period, subject to the terms and conditions hereof, GDB agrees that it shall:

(a)    (i) act in good faith and use commercially reasonable efforts to support and complete successfully the Solicitation in accordance with the terms of this RSA, (ii) do all things reasonably necessary and appropriate, including considering actions reasonably requested by the Requisite Bondholders, in furtherance of confirming the Plan and consummating the Restructuring and the transactions contemplated thereby in accordance with, and within the time frames contemplated by, this RSA (including within the deadlines set forth in Section 6); provided that GDB shall not be obligated to agree to any modification of any document that is inconsistent with the Restructuring Term Sheet, (iii) not take any action directly or indirectly that is inconsistent with, or that would reasonably be expected to prevent, interfere with, delay or impede (A) the approval contemplated by section 601(f) of PROMESA, (B) the Solicitation of votes on the Plan and (C) the confirmation and consummation of the Plan and the Restructuring, including, without limitation, soliciting or causing or allowing any of its agents or representatives to solicit an Alternative Transaction other than the Restructuring, or initiating any proceeding under any bankruptcy, insolvency or similar law or any other action or proceeding that seeks to adjust, extend or challenge the claims of the Supporting Bondholders pursuant to any federal, state or Puerto Rico statute, now or hereinafter enacted into law, except for any such proceeding to implement the Restructuring and (iv) not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with this RSA, including any action that would cause a Bondholder Termination Event or delay, impede, appeal, or take any other negative action, directly or indirectly, or encourage any other entity to interfere with the acceptance or implementation of the Restructuring or delay the time frames contemplated by this RSA (including within the deadlines set forth in Section 6);

(b)    provide draft copies of all material motions, applications, and other documents (including the Plan and any disclosure statement, any proposed amended version of the Plan or any disclosure statement, and any first day pleadings, if applicable) GDB intends to file with the District Court to the Creditor Notice Parties, at least two (2) calendar days before the date when GDB intends to file any such motion, application, or other document (and, if not reasonably practicable, as soon as reasonably practicable before filing) and shall consult in good faith with such Creditor Notice Parties regarding the form and substance of any such proposed filing with the District Court and subject to Section 4(a), nothing in this RSA shall restrict, limit, prohibit, or preclude, in any manner not inconsistent with its obligations under this RSA, any of the Supporting Bondholders from appearing in the District Court with respect to any motion, application, or other documents filed by GDB and objecting to, or commenting upon, the relief requested therein;

12

(c)     provide to the Supporting Bondholders and/or their respective professionals, upon reasonable advance notice to GDB, (i) reasonable access to the respective management and advisors of GDB for the purposes of evaluating GDB's finances and operations and participating in the planning process with respect to the Restructuring and (ii) timely and reasonable responses to all reasonable diligence requests; provided that the Supporting Bondholders understand and agree that GDB may refuse to provide a Supporting Bondholder with any confidential information if such Supporting Bondholder is not a party to a confidentiality agreement on substantially the same terms as a confidentiality agreement previously agreed to by such party or such other confidentiality agreement approved by GDB;

(d)     operate its businesses without material change in such operations or disposition of material assets (unless in such instance, the Requisite Bondholders have consented thereto in writing) in accordance with its business judgment and the terms of the Fiscal Plan;

(e)     use commercially reasonable efforts to preserve in accordance with the Fiscal Plan its business organization, keep available the services of its current officers and material employees (in each case, other than voluntary resignations, terminations for cause, or terminations consistent with applicable fiduciary duties and the Fiscal Plan), preserve in all material respects its relationships with depositors, vendors, representatives, government officials and others, in each case, having material business dealings with GDB (other than terminations for cause or consistent with applicable fiduciary duties and the Fiscal Plan); provided that nothing herein shall be construed to limit or cause GDB to operate in any manner that would violate the terms of the Fiscal Plan;

(f)     provide, within two (2) business days, written notice to the Creditor Notice Parties between the date hereof and the Effective Date of (i) receipt of any notice that is not publicly available of any judicial proceeding commenced, or threatened in writing against GDB, relating to or involving or otherwise affecting in any material respect the transactions contemplated by the Restructuring and (ii) any failure of GDB to comply with or satisfy, in any material respect, any covenant, condition, or agreement hereunder; and

(g)     provide a copy of any written offer or proposal for an Alternative Transaction received to the Creditor Notice Parties within two (2) business days of GDB's or its advisors' receipt of such offer or proposal.

6.     **Termination of RSA.**

This RSA shall automatically terminate as to a Supporting Bondholder two (2) business days after the delivery of written notice to the other Parties (in accordance with Section 24) from such Supporting Bondholder (a "**Terminating Bondholder**") at any time after and during the continuance of any Bondholder Termination Event enumerated in Section 6(a); provided that this RSA shall be deemed to have been terminated only as to such Terminating Bondholder, and this RSA shall continue in full force and effect in respect to all other Supporting Bondholders, unless and until the remaining Supporting Bondholders party to this Agreement in addition to any other holders of Participating Bond Claims (as defined in the Restructuring Term Sheet) party to any other Qualifying RSA (collectively, the "**Supporting Holders of**

13

**Participating Bond Claims**") cease to constitute the Majority Bondholders (or such lower threshold as determined by the Requisite Bondholders) for a period of 30 consecutive calendar days, at which time this RSA shall terminate automatically as to all Parties.   No GDB Bondholder shall have any liability to any other GDB Bondholder arising from or related to the termination of this RSA pursuant to its terms.   In addition, this RSA shall automatically terminate two (2) business days after the delivery of notice from GDB to the Supporting Bondholders (in accordance with Section 24) at any time after the occurrence and during the continuance of any GDB Termination Event enumerated in Section 6(b).   This RSA shall terminate automatically without any further required action or notice on the Effective Date.

      (a)   A "**Bondholder Termination Event**" shall mean any of the following:

      (i)   The breach in any material respect by GDB of any of the undertakings, representations, warranties, or covenants of GDB set forth herein which remains uncured for a period of five (5) business days after the receipt of written notice of such breach pursuant to this Section 6 and in accordance with Section 24 (as applicable) from holders of a majority of outstanding principal amount of GDB Bonds of any one of the groups described in clauses (A)-(C) of the definition of "Requisite Bondholders".

      (ii)   At 11:59 p.m. Eastern Time sixty (60) calendar days after the Support Effective Date, unless the Oversight Board on behalf of GDB has certified the Plan as a Qualifying Modification (as defined in PROMESA) pursuant to either section 601(g)(1) or 601(g)(2) of PROMESA (the date on which such commencement or certification occurs, as applicable, the "**Certification Date**").

      (iii)   At 11:59 p.m. Eastern Time one hundred (100) calendar days after the Certification Date, unless solicitation of the Qualifying Modification has been completed in accordance with section 601(h)(1) of PROMESA.

      (iv)   At 11:59 p.m. Eastern Time one hundred and twenty (120) calendar days after the Certification Date, unless the District Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to GDB, AAFAF, and the Requisite Bondholders.

      (v)   At 11:59 p.m. Eastern Time on the date that is thirty (30) calendar days after the date of entry of the Confirmation Order (the "**Outside Date**"), unless the Effective Date shall have occurred.

      (vi)   The Plan or disclosure statement is withdrawn, or GDB, or the Oversight Board or AAFAF, files any motion or pleading with the District Court that is not consistent with this RSA or the Restructuring Term Sheet in any material respect, and such motion or pleading has not been withdrawn before the earlier of (A) two (2) business days after GDB receives written notice from the Requisite Bondholders (in accordance with Section 24) that such motion or pleading is inconsistent with this RSA or the Restructuring Term Sheet in any material respect and (B) entry of an order of the District Court approving such motion or pleading.

(vii)    The District Court or any other applicable court of competent jurisdiction directs the appointment of a receiver or otherwise places GDB into receivership;

(viii)   The District Court grants relief that is (A) inconsistent with this RSA or the Restructuring Term Sheet in any respect that is materially adverse to the Supporting Bondholders or (B) would, or would reasonably be expected to, materially frustrate the purposes of this RSA, including by preventing the consummation of the Restructuring, unless GDB, or the Oversight Board or AAFAF, has sought a stay of such relief within five (5) business days after the date of such issuance, and such order is stayed, reversed, or vacated within ten (10) business days after the date of such issuance, except if such relief is granted pursuant to a motion by any Supporting Bondholder.

(ix)    GDB, or the Oversight Board or AAFAF, files, propounds, or otherwise supports any restructuring, plan or reorganization or plan of adjustment inconsistent with the Restructuring Term Sheet or fails to timely file with the District Court a statement that it does not support any such restructuring, plan or reorganization or plan of adjustment that has been filed with the District Court.

(x)    GDB, or the Oversight Board or AAFAF, files, propounds, or otherwise supports any motion, application or agreement seeking to sell all or a material portion of GDB's assets.

(xi)    GDB, or the Oversight Board or AAFAF, files, propounds, or otherwise supports or fails to timely object to any motion or pleading challenging the amount or validity of any GDB Bonds or any related Claim.

(xii)   GDB, or the Oversight Board or AAFAF on behalf of GDB, commences a proceeding under any applicable bankruptcy, insolvency or similar law other than a proceeding (including under Title III of PROMESA) to confirm and enforce the material terms of the Restructuring.

(xiii)  Any of the Definitive Documents shall have been modified in a manner adverse in any material respect to any Supporting Bondholder, without prior written consent of the Requisite Bondholders.

(xiv)   Parties other than the Supporting Bondholders foreclose on, attempt to seize or exercise remedies with respect to a lien on any assets of GDB having a fair market value in excess of $10 million in the aggregate.

(xv)    Any court of competent jurisdiction or other competent governmental or regulatory authority issues a ruling, judgment or order making illegal or otherwise preventing or prohibiting the consummation of the Restructuring, which ruling, judgment or order has not been reversed or vacated within thirty (30) business days after such issuance and is not subject to a stay.

(xvi)   The District Court or other court of competent jurisdiction enters an order denying confirmation of the Plan.

Notwithstanding any provision in this RSA to the contrary, upon written consent of the Requisite Bondholders, each of the dates set forth in Section 6(a) may be extended prior to or upon such date and such later dates agreed to in lieu thereof and shall be of the same force and effect as the dates provided herein; provided that in the event that such a Supporting Bondholder ("**Non-Extending Bondholder**") does not consent to such an extension, but such extension receives the consent of the Requisite Bondholders, this RSA shall be deemed to have been terminated only as to such Non-Extending Bondholder, but this RSA shall continue in full force and effect in respect to all other Supporting Bondholders, unless and until the remaining Supporting Holders of Participating Bond Claims cease to constitute Majority Bondholders (or such lower threshold as determined by the Requisite Bondholders) for a period of 30 consecutive calendar days. No GDB Bondholder shall have any liability to any other GDB Bondholder arising from or related to any extensions pursuant to the terms of this RSA.

(b)     A "**GDB Termination Event**" shall mean any of the following:

(i)     The breach in any material respect by one or more of the Supporting Bondholders of any of the undertakings, representations, warranties, or covenants of the Supporting Bondholders set forth herein in any material respect which remains uncured for a period of five (5) business days after the receipt of written notice of such breach pursuant to this Section 6 and Section 24 (as applicable), but only if the non-breaching Supporting Holders of Participating Bond Claims constitute less than the Majority Bondholders for a period of 30 consecutive calendar days.

(ii)     The Supporting Bondholders fail to comply with Section 4(d) hereof.

(iii)     The District Court grants relief that is inconsistent with this RSA or the Restructuring Term Sheet in any respect that is materially adverse to GDB, except if such relief is granted pursuant to a motion supported or encouraged by GDB, AAFAF or the Oversight Board.

(iv)     At 11:59 p.m. Eastern Time sixty (60) calendar days after the Support Effective Date, unless the Certification Date shall have occurred

(v)     At 11:59 p.m. Eastern Time one hundred (100) calendar days after the Certification Date, unless solicitation of the Qualifying Modification has been completed in accordance with section 601(h)(1) of PROMESA.

(vi)     At 11:59 p.m. Eastern Time one hundred and twenty (120) calendar days after the Certification Date, unless the District Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to GDB, AAFAF, and the Requisite Bondholders.

(vii)     At 11:59 p.m. Eastern Time on the date that is thirty (30) calendar days after the date of entry of the Confirmation Order, unless the Effective Date shall have occurred.

16

(viii)   The issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment, or order enjoining the consummation of or rendering illegal the Restructuring, which ruling, judgment, or order has not been not stayed, reversed, or vacated within ten (10) business days after such issuance.

(ix)   Commencing on the Certification Date, and at any time thereafter, the Supporting Holders of Participating Bond Claims do not beneficially own or control at any time sufficient amount of GDB Bonds to constitute the Majority Bondholders for a period of 30 consecutive calendar days.

(x)   The District Court or other court of competent jurisdiction enters an order denying confirmation of the Plan.

(xi)   The governing board of directors of GDB adopts a resolution determining, after consultation with counsel, that materially changed circumstances exist creating a material impediment to effectuating the Restructuring as a Qualifying Modification under PROMESA or otherwise to consummating the Restructuring, thereby warranting a termination of this Agreement as a result of the board's fiduciary or statutory duties.

(c)   <u>Mutual Termination.</u>   This RSA may be terminated by mutual agreement of GDB and the Requisite Bondholders upon the receipt of written notice delivered in accordance with <u>Section 24</u>.

(d)   <u>Effect of Termination.</u>   Subject to the provisions contained in <u>Section 14</u>, upon the termination of this RSA in accordance with this <u>Section 6</u>, this RSA shall become void and of no further force or effect and each Party shall, except as otherwise provided in this RSA, be immediately released from its respective liabilities, obligations, commitments, undertakings, and agreements under or related to this RSA, shall have no further rights, benefits, or privileges hereunder, and shall have all the rights and remedies that it would have had and shall be entitled to take all actions, whether with respect to the Restructuring or otherwise, that it would have been entitled to take had it not entered into this RSA and no such rights or remedies shall be deemed waived pursuant to a claim of laches or estoppel; <u>provided that</u> in no event shall any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder before the date of such termination.

(e)   <u>Automatic Stay.</u>   GDB acknowledges and agrees that the giving of notice of termination by any Party pursuant to this RSA shall not be a violation of the stay set forth in PROMESA; <u>provided that</u> nothing herein shall prejudice any Party's rights to argue that the giving of notice of termination was not proper under the terms of this RSA.

#89334613v60

**7.      Definitive Documents; Good Faith Cooperation; Further Assurances.**

Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation, and consummation of the Restructuring as well as the negotiation, drafting, execution, and delivery of the Definitive Documents.  Upon written confirmation of an agreement (which confirmation may be by email) among the GDB Parties and the Requisite Bondholders on, and finalization of, the Definitive Documents, this RSA shall automatically be deemed amended to replace the Restructuring Term Sheet with the Definitive Documents as **Exhibit A** hereto and all references in this Agreement to the Restructuring Term Sheet shall be deemed to be references to the Definitive Documents, as applicable.  Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and intent of this RSA, and shall refrain from taking any action that would frustrate the purposes and intent of this RSA.

**8.      Representations and Warranties.**

(a)     Each Party, severally (and not jointly), represents and warrants to the other Parties that the following statements are true and correct as of the date hereof (or as of the date a Supporting Bondholder becomes a party hereto):

(ii)     Except in the case of a Party that is an individual, such Party is validly existing and in good standing under the laws of its jurisdiction of incorporation or organization and has all requisite corporate, partnership, limited liability company or similar authority to enter into this RSA and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder.  The execution and delivery of this RSA and the performance of such Party's obligations hereunder have been duly authorized by any necessary corporate, limited liability company, partnership, or other similar action on its part.

(iii)     The execution, delivery, and performance by such Party of this RSA does not and will not (A) violate any material provision of law, rule, or regulation applicable to it or its charter or bylaws (or other similar governing documents), or (B) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it is a party, except, in the case of GDB, for the filing of a Qualifying Modification with the District Court pursuant to Title VI of PROMESA.

(iv)     The execution, delivery, and performance by such Party of this RSA does not and will not require any material registration or filing with, consent or approval of, or notice to, or other action, with or by, any federal, state or governmental authority or regulatory body, except the filing of documents with the District Court as required by this RSA to effect the Restructuring and such filings as may be necessary or required by the SEC.

(v)    This RSA is the legally valid and binding obligation of such Party, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally, concepts of reasonableness and general equitable principles.

(b)    Each Supporting Bondholder severally (and not jointly) represents and warrants to GDB that, as of the date hereof (or as of the date such Supporting Bondholder becomes a party hereto), such Supporting Bondholder (i) is the registered or beneficial owner of the aggregate principal amount of the GDB Bonds set forth below its name on the signature page hereto (or below its name on the signature page of a Joinder Agreement for any Supporting Bondholder that becomes a party hereto after the date hereof) and has (A) sole investment and voting discretion with respect to such GDB Bonds, (B) full power and authority to vote on and consent to matters concerning such GDB Bonds and to exchange, assign, and Transfer such GDB Bonds, and (C) full power and authority to bind or act on the behalf of any other beneficial owner(s) and (ii) is, and any other such other beneficial owner(s) is, an accredited investor as such term is defined in Rule 501(a) of Regulation D under the Securities Act.

9.    **Disclosure; Publicity.**    GDB shall endeavor to submit drafts to the Creditor Notice Parties of any press releases, public documents, and any and all filings with the SEC and/or any state or Commonwealth governmental agency regarding this RSA or any of the transactions contemplated hereunder at least two (2) business days before making any such disclosure.  Except as required by applicable law or otherwise permitted under the terms of any other agreement between GDB and any Supporting Bondholder, no Party or its advisors shall disclose to any person or entity (including, for the avoidance of doubt, any other Supporting Bondholder), other than advisors to GDB, the identity of any Supporting Bondholder and/or the principal amount or percentage of GDB Bonds held by the applicable Supporting Bondholder, in each case, without such Supporting Bondholder's prior written consent; provided that (a) if such disclosure is required by law, subpoena or other legal process or regulation, the disclosing Party shall afford the relevant Supporting Bondholder a reasonable opportunity to review and comment before such disclosure and shall take all reasonable measures to limit such disclosure, (b) the foregoing shall not prohibit the disclosure of the aggregate percentage or aggregate principal amount of GDB Bonds held by all Supporting Bondholders collectively and (c) any Party may disclose information requested by a U.S. federal or state regulatory authority with jurisdiction over its operations to such authority without limitation or notice to any Party or other person or entity.  Notwithstanding the provisions in this Section 9, any Party may disclose, to the extent consented to in writing by a Supporting Bondholder, such Supporting Bondholder's individual holdings.  Any public filing of this RSA, with the District Court or otherwise, which includes executed signature pages to this RSA shall include such signature pages only in redacted form with respect to the holdings of each Supporting Bondholder (provided that the holdings disclosed in such signature pages may be filed in unredacted form with the District Court under seal).

10.    **Amendments and Modifications.**    Except as otherwise expressly set forth herein, this RSA (including the Restructuring Term Sheet and any exhibits or schedules hereto and thereto) and the Plan may not be waived, modified, amended, or supplemented except in a writing signed by GDB (or, if authorized, AAFAF on GDB's behalf) and the Requisite Bondholders; provided that (a) any modification, amendment or change to the definition of

19

"Supporting Bondholders" or "Requisite Bondholders" shall require the written consent of each Supporting Bondholder and (b) any waiver, change, modification, or amendment to this RSA, the Restructuring Term Sheet, or the Plan that adversely affects the treatment of any Supporting Bondholder compared to the treatment set forth in the Restructuring Term Sheet, or that provides more favorable treatment to any Supporting Bondholder compared to the treatment set forth in the Restructuring Term Sheet, may not be made without the written consent of each such materially adversely affected Supporting Bondholder.  In the event that such an adversely affected Supporting Bondholder ("**Non-Supporting Bondholder**") does not consent to a waiver, change, modification, or amendment to this RSA requiring its consent, but such waiver, change, modification, or amendment receives the consent of the Requisite Bondholders, this RSA shall be deemed to have been terminated only as to such Non-Supporting Bondholder, but this RSA shall continue in full force and effect in respect to all other Supporting Bondholders, unless and until the remaining Supporting Holders of Participating Bond Claims cease to constitute the Majority Bondholders (or such lower threshold as determined by the Requisite Bondholders) for a period of 30 consecutive calendar days, at which time this RSA shall terminate automatically as to all Parties.  No GDB Bondholder shall have any liability to any other GDB Bondholder arising from or related to any waivers, modifications, amendments or supplements pursuant to the terms of this RSA.

> **11.    Effectiveness.**  This RSA shall become effective and binding upon each Party upon the Support Effective Date; provided that copies of signature pages executed by Supporting Bondholders shall be delivered to (a) other Supporting Bondholders in a redacted form that removes such Supporting Bondholders' holdings of the GDB Bonds and (b) O'Melveny and other advisors of either GDB or AAFAF in an unredacted form (to be held by O'Melveny and such other advisors on a professionals' eyes only basis).

> **12.    Governing Law; Jurisdiction; Waiver of Jury Trial.**

> (a)    This RSA shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York and PROMESA, without giving effect to the conflict of laws principles thereof; provided that any issues addressing the fiduciary or statutory duties of GDB or its governing board shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico.  Each of the Parties irrevocably agrees that any legal action, suit, or proceeding arising out of or relating to this RSA (or the transactions contemplated hereby) brought by any Party or its successors or assigns shall be brought in any federal district court sitting in Puerto Rico and any appellate court from any thereof or, in the event such federal court does not have or accept jurisdiction, a Commonwealth court and any appellate court from any thereto (collectively, the "**Puerto Rico Courts**"), and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the Puerto Rico Courts for itself and with respect to its property, generally and unconditionally, with regard to any such proceeding arising out of or relating to this RSA and the Restructuring. Each of the Parties agrees not to commence any proceeding relating hereto or thereto except in any federal district court sitting in Puerto Rico, other than proceedings in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any Puerto Rico Court.  Each of the Parties further agrees that notice as provided in Section 24 shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient.  Each of the Parties hereby irrevocably and unconditionally waives and agrees not

to assert that (i) a proceeding in any federal court sitting in the Puerto Rico district is brought in an inconvenient forum, (ii) the venue of such proceeding is improper or (iii) that any federal district court sitting in Puerto Rico and any appellate court from any thereof lacks jurisdiction over such proceeding or any party thereto.  For the avoidance of doubt, the GDB Parties submit to the jurisdiction of any federal district court sitting in Puerto Rico and any appellate court from any thereof and irrevocably waive any immunity from suit in federal court that they may have for any action or proceeding arising out of or relating to this RSA and the Restructuring.

(b)   Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this RSA or the transactions contemplated hereby (whether based on contract, tort or any other theory).

13.   **Specific Performance/Remedies.**  The Parties understand and agree that money damages would be an insufficient remedy for any breach of this RSA by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy of any such breach, without the necessity of proving the inadequacy of money damages as a remedy.  Specific performance and the right to terminate this Agreement in accordance with Section 6 of this Agreement shall be the sole and exclusive remedies for any breach of this RSA by any Party.  Each Party hereby waives any requirement for security or the posting of any bond in connection with such remedies.

14.   **Survival.**   Notwithstanding the termination of this RSA pursuant to Section 6, Sections 9 and 12-24 shall survive such termination and shall continue in full force and effect in accordance with the terms hereof; provided that any liability of a Party for failure to comply with the terms of this RSA prior to the date of such termination shall survive such termination.

15.   **Headings.**  The headings of the sections, paragraphs, and subsections of this RSA are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this RSA.

16.   **Successors and Assigns; Severability.**  This RSA is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators and representatives; provided that nothing contained in this Section 16 shall be deemed to permit Transfers of the GDB Bonds or any related Claims other than in accordance with the express terms of this RSA.  If any provision of this RSA, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this RSA shall continue in full force and effect.  Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this RSA so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

17. **Several, Not Joint, Obligations.**   The agreements, representations, warranties, and obligations of the Parties under this RSA are, in all respects, several and not joint.

18. **Relationship Among Parties.**   Unless expressly stated herein, this RSA shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.  No Party shall have any responsibility for any trading by any other entity by virtue of this RSA.  No prior history, pattern, or practice of sharing confidences among or between the Parties shall in any way affect or negate this understanding and agreement.  Except as expressly set forth herein or in the Restructuring Term Sheet, nothing in this RSA or the Restructuring Term Sheet shall be construed to affect any actual or potential claims arising from any obligation of the Government of Puerto Rico or any of its instrumentalities other than GDB.  Nothing in this RSA or the Restructuring Term Sheet shall constitute or be construed as a waiver or release of any claims or causes of action against GDB or any of its affiliates prior to the Effective Date.

19. **Collateral Preservation.**   All Parties to this RSA agree to use commercially reasonable efforts to take all actions reasonably necessary and reasonably within such Party's control to preserve the value of the New Bond Collateral (as defined in the Restructuring Term Sheet).

20. **Fees & Expenses.** GDB shall pay all reasonable documented fees and expenses incurred in connection with or related to the Restructuring and the New Bonds (as defined in the Restructuring Term Sheet) of the following professionals: (a) Davis Polk, as legal advisor to the Ad Hoc Group (and the fees and expenses of local counsel to the Ad Hoc Group), (b) Ducera Partners LLC, as financial advisor to the Ad Hoc Group, (c) Marichal, Hernández, Santiago & Juarbe, LLC, as legal advisor to Grupo ES, (d) González Torres & Co., CPA, PSC, as accounting advisor to Grupo ES, (e) Nevares, as legal advisor to Alianza, (f) HRML & Asociados, LLC, as legal advisor to Alianza, (g) Atlas Asset Management, LLC, as financial advisor to Alianza, Grupo ES, and other agreed entities (h) Picó & Blanco, as legal advisor to Bonistas del Patio, (i) Jorge Irizarry, as financial advisor to Bonistas del Patio and (j) Carlos Rodriguez, as financial advisor to Bonistas del Patio.

21. **Preservation of Rights.**   Except as expressly provided in this Agreement with respect to a Qualifying Title III Plan,[2] the Parties do not waive or relinquish any rights, defenses and remedies, contractual or otherwise, under Title III or any other provision of PROMESA or any other law or regulation.  Upon termination of this RSA, (i) no Party shall be precluded, by virtue of having been a Party to this Agreement or otherwise having engaged in negotiations regarding the Restructuring, from exercising any and all rights, defenses and remedies, whether contractual or otherwise, in connection with any proceeding under Title III or under any other provision of PROMESA or any other law or regulation and (ii) no provision of

---

[2] For the avoidance of doubt, no Title III Plan shall constitute a Qualifying Title III Plan without the consent of holders of 66 and 2/3% of GDB Bonds held by Supporting Noteholders that are "cooperativas" insured by COSSEC, and any such Qualifying Title III Plan shall implement the Restructuring in accordance with the Restructuring Term Sheet attached as Exhibit A hereto.

#89334613v60

this Agreement or other document related to the Restructuring, or statement made during the negotiations thereof, shall be used against any Party in any proceeding under Title III or any other provision of PROMESA or otherwise.  Notwithstanding the generality of the foregoing and for the avoidance of doubt, no Party shall be placed in a worse position in a Title III proceeding that does not implement the Restructuring (by virtue of being a party hereto), and in particular no Party shall be precluded from asserting any claim, right or defense, and each Party shall preserve each of its rights and defenses and shall not be impeded by this Agreement from bringing before any applicable court any available averment, defenses and priority allegation, including the assertion of priority rights under Puerto Rico Law Num. 40 of 2016, or from challenging or contesting any such rights, defenses, averments, defenses, priority allegations, whether under such law or otherwise, on any grounds.

         **22.**    **Prior Negotiations; Entire Agreement.**  This RSA, including the exhibits and schedules hereto (including the Restructuring Term Sheet), constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof, except that the Parties acknowledge that any confidentiality agreements executed between GDB and each Supporting Bondholder before the execution of this RSA shall continue in full force and effect.

         **23.**    **Counterparts.**  This RSA may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this RSA delivered by PDF shall be deemed to be an original for the purposes of this paragraph.

         **24.**    **Notices.**  All notices hereunder shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, courier or by registered or certified mail (return receipt requested) to the following addresses:

        (a)     If to GDB, to:


O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY  10036
Attention:    John Rapisardi and Suzzanne Uhland
E-mail:      jrapisardi@omm.com; suhland@omm.com


        (b)     If to the Supporting Bondholders, to:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10170
Attention:    Don Bernstein and Brian Resnick

#89334613v60

E-mail:        Donald.Bernstein@davispolk.com and
                 Brian.Resnick@davispolk.com

Any notice given by delivery, mail, or courier shall be effective when received.  Any notice given by electronic mail shall be effective upon oral, machine, or electronic mail (as applicable) confirmation of transmission.

**25.**    **Settlement Discussions.**   This RSA is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties.  Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence and any other applicable law, foreign or domestic, this RSA, the Restructuring Term Sheet and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the RSA's terms.

**26.**    **No Solicitation; Adequate Information.**   This RSA is not and shall not be deemed to be a solicitation for consents to the Plan.  The votes of the holders of Claims against GDB will not be solicited until such holders who are entitled to vote on the Plan have received the required solicitation from the Information Agent (as defined in PROMESA).  In addition, this RSA does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

**27.**    **Interpretation; Rules of Construction; Representation by Counsel.** When a reference is made in this RSA to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this RSA unless otherwise indicated.  Unless the context of this RSA otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire RSA, (c) the words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or."   The Parties agree that they have been represented by legal counsel during the negotiation and execution of this RSA and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

**28.**    **Treatment of Local Bondholders.**   The Supporting Bondholders agree that each Supporting Bondholder will not seek to recover from other Supporting Bondholders or share any federal, state or Commonwealth tax credits or other benefits any of the Supporting Bondholders may realize as a result of losses on their investment in GDB; provided, however, that the foregoing prohibition shall not be applicable if such benefits are funded from assets belonging to GDB.

[*Signature pages follow.*]

24

IN WITNESS WHEREOF, the Parties have caused this RSA to be executed and delivered by their respective duly authorized officers, solely in their respective capacities as officers of the undersigned and not in any other capacity, as of the date first set forth above.

GOVERNMENT DEVELOPMENT BANK FOR
PUERTO RICO

By:  _____
Name:  Christian Sobrino Vega
Title:   President

**PUERTO RICO FISCAL AGENCY &
FINANCIAL ADVISORY AUTHORITY,**

By: _____
Name: Gerardo José Portela Franco
Title:   Executive Director

**SUPPORTING BONDHOLDERS**

BRIGADE CAPITAL MANAGEMENT, LP

By: _____

Name: _Carney Hawks_____

Title: _Partner_____



Notice Address:

_399 PARK AVE._____

_16TH FLOOR_____

_NEW YORK NY 10022_____

Fax: _____

Attention: _____

Email: _____

**SUPPORTING BONDHOLDERS**

AVENUE CAPITAL MANAGEMENT II, L.P., on behalf of certain funds that it manages
By: Avenue Capital Management II GenPar, LLC, its general partner


By: _____

Name:   Sonia Gardner

Title:   Member


Notice Address:

399 Park Avenue
6th Floor
New York, NY 10022
Fax: 212-878-3552
Attention: Todd Greenbarg; Jane Castle
Email: tgreenbarg@avenuecapital.com; jcastle@avenuecapital.com

**SUPPORTING BONDHOLDERS**

SOLUS ALTERNATIVE ASSET MANAGEMENT LP

By: _____

Name: ___Christopher  Pucillo___

Title: ___CIO___

Notice Address:

___410 Park Avenue, 11th Floor___
___NY NY  10022___
_____

Fax: _____
Attention: ___Tom HIBBIE / STEPHEN BLAUNER___
Email: ___THIBBIE@SOLUSLP.com   SBLAUNER@SOLUSLP.com___

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

**SUPPORTING BONDHOLDERS**

FIR TREE INC. (on behalf of its investment funds under management)

By: _____

Name: _____

Title: _____

█████████████████████████████████

Notice Address:

Fir Tree Partners
C/o Evan Lederman, Managing Director
55 West 46th street, NY NY 10036

Fax: _____
Attention: Evan Lederman
Email: elederman@firtree.com

**PRIVILEGED & CONFIDENTIAL**

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO DE ADJUNTAS**

By: 

Name:  Miguel A. Jusino Martínez
Title:    Executive President

Notice Address:

PO Box 5
Adjuntas, PR  00601
Fax:  787-829-0704

Attention:
Email:  mjusino@adjuntascoop.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

**COOPERATIVA DE AHORRO Y CREDITO
DE EMPLEADOS DE LA AUTORIDAD DE
ENERGIA ELECTRICA  (COOP AEE)**

By: 
Name:  Gisela D. Toro Lugo
Title:  Executive President

Notice Address:

PO Box 9061
San Juan, PR  00908-0061
Fax: 787-725-2425

Attention:  Gisela Toro
Email:  gtoro@coopaee.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO
DEPARTAMENTO DE AGRICULTURA DE PUERTO RICO

By: 

Name:  Rolando Calderón Padilla
Title:  Presidente Ejecutivo

Notice Address:

PO Box 13583
San Juan, PR  00908-3583
Fax:  787-722-5309

Attention:
Email: rcalderon@coopagricpr.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO AIBONITEÑA**

By: _____

Name:  Carlos F. Ortíz Díaz
Title:  Executive President

Notice Address:

Calle José C. Vázquez
Aibonito, PR  00705
Fax:  787-735-2984

Attention:  Carlos F. Ortíz
Email:  cortiz@boni.coop

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO DE BARRANQUITAS**

By:  _____

Name:   Miguel A. Ortíz Santos
Title:     Executive President

Notice Address:

PO Box 686
Barranquitas, PR  00794
Fax:  787-857-3808

Attention:  Sra. Ivelisse Santiago
Email:  isantiago@credicentrocoop.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO DE CAMUY**



By: _____

Name:  Michele Franqui Baquero

Title:  Executive President

Notice Address:

Ave. Baltazar Jiménez #300
Camuy, PR  00627
Fax:  787-898-4955

Attention:  Michele Franqui Baquero
Email: mfranqui@camuycoop.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO
NUESTRA SEÑORA DE LA CANDELARIA**

By:

Name:  Elmy Rodríguez Báez
Title:  Executive President

Notice Address:

PO Box 3249
Manatí, PR  00674
Fax:  787-884-0627

Attention:
Email:  erodriguez@candelcoop.coop

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO CIDREÑA**

By: 
Name:  Mayra Velázquez López
Title:  Executive President

Notice Address:

PO Box 1490
Cidra, PR  00739
Fax:  787-739-7360

Attention:  Mayra Velázquez López
Email: mvelazquez@cidrenacoop.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO
DEL COLEGIO DE INGENIEROS Y AGRIMENSORES
DE PUERTO RICO**

By: 

Name: Rodolfo A. Concepción Máter
Title:  Executive President

Notice Address:

PO Box 363845
San Juan, PR  00936-3845

Fax:  787-751-1248

Attention:  Rodolfo A. Concepción
Email: rconcepcion816@gmail.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO**



By:
Name:  Julio Villafañe
Title:  President

Notice Address:

COSVI
PO Box 363428
San Juan, PR  00936-3428
Fax:  787-281-6327

Attention: Julio Villafañe
Email:  julio.villafane@cosvi.com

SUPPORTING BONDHOLDER

## COOPERATIVA DE AHORRO Y CREDITO CUPEY ALTO

By: _____

Name: Santos González Morales

Title:  Executive President



Notice Address:

RR17 Box 11100
San Juan, PR  00926
Fax:  787-760-1388

Attention: SANTOS GONZALEZ MORALES
Email:  sgonzalez@cupeyalto.coop

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

**CUSTO-COOP**
**COOPERATIVA DE AHORRO Y CREDITO**



By:
Name:  Epifanio Torres
Title:  Executive President

Notice Address:

Urb. Reparto Metropolitano
1100 Calle 54 SE
San Juan, PR  00921-2731
Fax:  787-766-2061

Attention:  Epifanio Torres
Email:  etorres@custo-coop.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO
FAMILIAR PROGRESISTA**

By:

Name:  Javier Claudio López
Title:  Executive President

Notice Address:

Urb. Puerto Nuevo
479 Ave. De Diego
San Juan, PR  00920
Fax:  787-783-1552

Attention:
Email:  jclaudio @lafamiliar.net

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO DE FLORIDA



By:

Name:  Marilyn Vilella Ramos
Title:  Executive President

Notice Address:

PO Box 1162
Florida, PR  00650

Fax:  787-822-2697

Attention:  Zoraida Miranda Viera
Email:  zmiranda@floridacoop.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO DE EMPLEADOS DE
LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO

By: _____
Name:  Juan A. Fusté Torres
Title:  President/Board Of Directors

By: _____
Name:  Jerry Luna Hernández
Title:  Executive President



Notice Address:

PO Box 42006
Minillas Station
San Juan, PR  00940-2006
Fax:  787-764-4660

Attention:  Jerry Luna Hernández
Email:  jluna@fondocoop.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO DE GUAYANILLA**

By: _____

Name: Jaime Madera Quiles

Title: Executive President



Notice Address:

PO Box 560547
Guayanilla, PR  00656
Fax:  787-835-4553

Attention:
Email:  jmadera@caribecoop.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO HATILLO

By: _____

Name:  Carmen Toledo Rosa
Title:   Executive President



Notice Address:

Haticoop
PO Box 95
Hatillo, PR  00659


Fax:  787-898-0050

Attention:  787-898-0050

Email: ctoledo@haticoop.com

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO DE JAYUYA**



By: _____

Name: Luis D. Rodríguez

Title: Executive President

Notice Address:

PO Box 388
Jayuya, PR 00664
Fax: 787-928-0225

Attention: Luis D. Rodríguez
Email: lrodriguez@jayucoop.net

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO
LA PUERTORRIQUEÑA**

By: 

Name:  Raúl Arambarry
Title:  Executive President

Notice Address:

Apartado 20645
San Juan, PR  00928
Fax:  787-758-1688

Attention:  Raúl Arambarry
Email:  info@lapuertorriquena.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO LA REGLA DE ORO**



By:
Name: Juan Rodriguez Cordero
Title: Executive President

Notice Address:

RR-5  Box 8755
Bayamón, PR  0956
Fax:  787-730-3008

Attention:
Email:  juantito.rodriguez@hotmail.com

**PRIVILEGED & CONFIDENTIAL**

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO LA SAGRADA FAMILIA**

By:

Name:  Eddie W. Alicea Sáez

Title:  Executive President

Notice Address:

PO Box 102
Corozal, PR  00783
Fax:  787-859-0316
Attention:  Eddie W. Alicea Sáez
Email:  ealicea@sagradacoop.com

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

## SUPPORTING BONDHOLDERS

[SUPPORTING BONDHOLDER]

By:     Cooperativa de Ahorro y Credito de Mayaguez

Name:   Marco A. Vecchini Figueroa

Title:  Presidente Ejecutivo

Notice Address:

PO Box 416
Mayaguez, PR 00681-0416

Fax:(787)834-3840
Attention: Marco A. Vecchini Figueroa
Email:   mvecchini@ coopmayaguez.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO MOROVEÑA**

By: _____

Name: María Soledad Marrero Negrón
Title: Executive President



Notice Address:

PO Box 577
Morovis, PR  00687
Fax:  787-862-4992

Attention:
Email: soledad@coopmorovena.com

**PRIVILEGED &
CONFIDENTIAL**

SUPPORTING
BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO NAGUABEÑA

By: _____

Name: Axel Santiago Negron
Title: Executive President



Notice Address:

Cooperativa Naguabeña
PO Box 69
Naguabo, PR 00718


Fax: 787-874-1180 / Tel. 787-874-2185


Attention: Axel Santiago Negron
Email: asn@nagucoop.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO ORIENTAL



By:
Name:  Angel M. Rodríguez
Title:   CEO

Notice Address:

PO Box 876
Humacao, PR  00792-0876
Fax:  787-850-0605

Attention:  Angel M. Rodríguez
Email:  arodriguez@cooporiental.com

**PRIVILEGED & CONFIDENTIAL**

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO PADRE McDONALD**

By: _____

Name:  Miguel A. Colón Robles

Title:  Executive President



Notice Address:

PO Box 7022
Ponce, PR  00732
Fax: 787-848-7782

Attention:  Miguel A. Colón Robles
Email:  mcolon@padremacdonald.com

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO
PADRE SALVADOR RUFFOLO**

By: 
Name:  Ediana Burgos Rodríguez
Title:    Executive Manager

Notice Address:

Cooperativa de Ahorro y Crédito
Padre Salvador Ruffolo (PARROCOOP)
PO Box 1553
Villalba, PR  00766
Fax:  787-847-3303

Attention: Ediana Burgos Rodríguez
Email: eburgos@parrocoop.coop

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

**COOPERATIVA DE AHORRO Y CREDITO
EMPLEADOS DE PEPSICOLA (PEPSICOOP)**

By: 

Name: Sonia Martínez Roldan
Title: Executive Director

Notice Address:

PO Box 2600
Toa Baja, PR  00951-2600
Fax:  787-764-3021

Attention:
Email:  cooppepsi@gmail.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO ROOSEVELT ROADS

By: 

Name: Carlos R. Maldonado
Title: Executive President

Notice Address:

PO Box 31
Fajardo, PR  00738
Fax:  787-860-4050

Attention:  Carlos R. Maldonado
Email:  carlosm@cooprr.com

PRIVILEGED & CONFIDENTIAL

SUPPORTING BONDHOLDER

COOPERATIVA DE AHORRO Y CREDITO SAN BLAS DE ILLESCAS

By: 

Name:  Coraly Aponte Reyes
Title:   Executive President

Notice Address:

PO Box 319
Coamo, PR  00769
Fax:  787-825-1471

Attention:  Coraly Aponte Reyes
Email:  c.aponte@coopsanblas.net

PRIVILEGED & CONFIDENTIAL

**SUPPORTING BONDHOLDER**

SAN RAFAEL COOP/HNC COOPERATIVA SAN RAFAEL

By: _____
Name:  Sara M. Jiménez González
Title:  Interim Executive President



Notice Address:

PO Box 1531
Quebradillas, PR  00678
Fax:  787-895-0211

Attention:
Email:  sjimenez@sanrafael.coop

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

## SUPPORTING BONDHOLDERS

[SUPPORTING BONDHOLDER]

By: *Universal Group*

Name: *Raúl Ramírez*

Title: *Chief Investment Officer + VP*

Notice Address:

*Universal Group Inc.*
*P.O. Box 71338*
*San Juan, PR 00936*
Fax: *787-625-7067*
Attention: *Raúl Ramírez*
Email: *ra.ramirez@universal.pr.com*

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

#89334613v22

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

## SUPPORTING BONDHOLDERS

[SUPPORTING BONDHOLDER] V.S. INTERNATIONAL BANKING ENTITY, INC.

By: _(signature)_

Name: FERNANDO RABELL

Title: CHIEF INVESTMENT OFFICER

███████████████████████████

Notice Address:

VS INTERNATIONAL BANKING ENTITY, INC

P.O. BOX 364588

SAN JUAN, PR 00936-4588

Fax: 787.474.9008

Attention: FERNANDO RABELL

Email: FERNANDO.RABELL@VSUAREZ.COM

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

#89334613v22

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

**SUPPORTING BONDHOLDERS**

FIRST PUERTO RICO FAMILY OF FUNDS,
ON BEHALF OF CERTAIN FUNDS
LISTED ON ANNEX A

By: *Frank J. Serra*

Name:   Frank Serra

Title:   President

Principal Amount of GDB Bonds held by each Fund is listed on Annex A

Notice Address:

First Puerto Rico Family of Funds
GAM Tower, Suite 200
B2 Tabonuco Street
Guaynabo, Puerto Rico  00968-3028
Fax: (787) 296-5435
Attention: Frank Serra, President
Email: fserra@sampr.com

With a copy to:

Picó & Blanco LLC
P. O. Box 9479
San Juan, Puerto Rico  00908-9479
Tel:  (787) 999-9001
Fax: (787) 999-9002
Attention:  Guillermo R. Picó
Email: grpico@pico-blanco.com

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

**Annex A**

Fund:

Principal Amount of
GDB Bonds held:

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS



## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By: _____

Name: _____

Title: _____

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By: _____

Name: _____

Title: _____

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By: _____ TOMAS ARANA ESPUELAS

Name: _____ A. REALTY CORP. _____

Title: _____ PRESIDENT _____

█████████████████████████████████

Notice Address:

_____ PMB 609 _____
_____ 1353 RD. 19 _____
_____ GUAYNABO PR 00966 _____
Fax: _____
Attention:_____
Email:_____ grupoarana@msn.com _____

## SUPPORTING BONDHOLDERS

By: _____  CARLOS T. ARANA LAFITTE

Name: _____ TCA DEVELOPMENT CORP. _____

Title: _____ PRESIDENT _____

Notice Address:

_____ PO BOX 366282 _____

_____ SAN JUAN PR 00936 _____
Fax: _____
Attention:_____
Email:_____ grupoarana@msn.com ____

## SUPPORTING BONDHOLDERS

By: _____     CARLOS T. ARANA LAFITTE

Name: _____ JOLC EQUIPMENT INC. _____

Title: _____ PRESIDENT _____

Notice Address:

_____ PO BOX 366282 _____

_____ SAN JUAN PR 00936 _____
Fax: _____
Attention: _____
Email: _____ grupoarana@msn.com _____

**SUPPORTING BONDHOLDERS**

By: _____   CARLOS T. ARANA LAFITTE

Name: _____ BOULEVARD MANAGEMENT CORP.

Title: _____ PRESIDENT

Notice Address:

_____ PO BOX 366282

_____ SAN JUAN PR 00936

Fax: _____

Attention: _____

Email: _____ grupoarana@msn.com

## SUPPORTING BONDHOLDERS

By: _____  TOMAS ARANA ESPUELAS

Name: _____ DE DIEGO 474 CORP. _____

Title: _____ PRESIDENT _____

████████████████████████████████████

Notice Address:

_____ PO BOX 366282 _____

_____ SAN JUAN PR 00936 _____

Fax: _____

Attention: _____

Email: _____ grupoarana@msn.com _____

## SUPPORTING BONDHOLDERS

By: _____     ALEJANDRO ARANA ESPUELAS

Name: _____ SAN JUAN CHALETS CORP. _____

Title: _____ PRESIDENT _____

Notice Address:

_____ PO BOX 366282 _____

_____ SAN JUAN PR 00936 _____

Fax: _____

Attention: _____

Email: _____ grupoarana@msn.com _____

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By: _____

Name: _____

Title: _____

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**[SUPPORTING BONDHOLDER]**

By: _____

Name:

Title:



Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By: _Gilberto E del Valle_

Name:    GILBERTO E. DEL VALLE LOPEZ

Title:    TREASURER FOR FRINGE AREA, S.E.

Notice Address:

    PO BOX 364249
    SAN JUAN, PR    00936-4249

Fax: _(787) 620-2350_
Attention: DHARMA TORRES
Email:    dtorres @ efonalledas.com

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By: _____

Name: Maringo, Inc.

Title: Corporation

Notice Address:

PO Box 365051
San Juan, PR 00936-5051

Fax: 787-296-0138
Attention: Elmer Garrastazú
Email: EG@GMHOLDINGS.COM

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:

<u>Notice Address:</u>

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

## SUPPORTING BONDHOLDERS

[SUPPORTING BONDHOLDER]

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By: _____

Name: NAZARIO ENVESTMENT GROUP, INC .

Title: PRESIDENT

Notice Address:

P.O. BOX 2037
BAYAMON P.R. 00960

Fax: (787) 785-7377
Attention: JUAN C. NAZARIO
Email: jcnazario @ aupr. edu

[SUPPORTING BONDHOLDER]



By:
Name:
Title:



Notice Address:

[SUPPORTING BONDHOLDER]



By:_____
Name:
Title:



Notice Address:

[SUPPORTING BONDHOLDER]



By: _____
Name:
Title:

Notice Address:



**SUPPORTING BONDHOLDERS**

By: _____

Name: _L. P. C. & D., INC. - PEDRO FELICIANO BENITEZ_____

Title: _PRESIDENT_____

Notice Address:

PO BOX 2025

LAS PIEDRAS, PR 00771-2025

Fax: _(787) 733-4808_____
Attention:_PEDRO FELICIANO BENITEZ_____
Email:_lpcccuco@gmail.com_____

## SUPPORTING BONDHOLDERS

By: _____

Name: _LAS PIEDRAS CONSTRUCTION CORP - PEDRO FELICIANO BENITEZ_

Title: _PRESIDENT_

Notice Address:

PO BOX 2025

LAS PIEDRAS, PR 00771-2025

Fax: _(787) 733-4808_

Attention: _PEDRO FELICIANO BENITEZ_

Email: _lpcccuco@gmail.com_

**SUPPORTING BONDHOLDERS**

By: _____ , LUIS DE JESÚS

Name: INVERSIONES VIZCARRONDO LLC

Title: CPA



Notice Address:

1353 AVE. LUIS VIGORREAUX
PMB 368
GUAYNABO P.R. 00966
Fax: _____
Attention: LUIS DE JESÚS
Email: luisdejesus@selectpr.org

SUPPORTING BONDHOLDERS



By

Name

Title

Notice Addre

SUPPORTING BONDHOLDERS



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By: _An O ⊢ -_

Name: LUIS DE JESÚS (TRUSTEE)

Title: FALCÓN Q, INC.

Notice Address:

1353 AVE. WISUIGOREAUX
PMB 368
GUAYNABO, P.R. 00966
Fax: _____
Attention: LUIS DE JESÚS
Email: luisdejesus @ select pr. org .

## SUPPORTING BONDHOLDERS

By: _Andy L._ _____

Name: LUIS DE JESÚS LOTTO RETIREMENT PLAN

Title: TRUSTEE

Notice Address:

1353 AVE. LUIS VIGOREAUX
PMB 368
GUAYNABO, P.R. 00966
Fax: _____
Attention: LUIS DE JESÚS
Email: luisdejesus @ selectpr.org.

**SUPPORTING BONDHOLDERS**



By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By: _____

Name: _TRIMAR INVESTMENT — MARKO RENDIC_

Title: _PRESIDENT_

Notice Address:

_MARKO RENDIC_
_548 HOARE APT 9_
_SAN JUAN P.R. 00907_
Fax: _____
Attention: _____
Email: _MARKORENDIC @ GMAIL.COM_

**SUPPORTING BONDHOLDERS** 

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

May 11, 2017

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By: _____

Name: MIGUEL DEL RIO FOR JORGE DEL RIO, ARQUITECTOS, C S.P

Title: PRESIDENT _____

Notice Address:

URB SANTA ANA
A6 CALLE YALE
SAN JUAN PR 00927-4901
Fax: (787) 200-0658
Attention: MIGUEL DEL RIO
Email: miguel@delrioarquitectos.com

## SUPPORTING BONDHOLDERS

By: _Capote._

Name: _Nelson L. Capote_

Title: _President - C. Group Corporation_

Notice Address:

_Nelson L. Capote_
_Mimosa 184 Santa Maria_
_San Juan, P.R. 00927_
Fax: _787-798-3533_
Attention: _Nelson L. Capote_
Email: _nelson @ togostores.com_

## SUPPORTING BONDHOLDERS

By: _____

Name: _Nelson L. Capote_

Title: _President - Sea Oil Corporation_

███████████████████████

Notice Address:

_Mimosa 184_
_Santa Maria_
_San Juan, P.R. 00927_
Fax: _787-798.3533_
Attention: _Nelson Capote_
Email: _Nelson @ togostores.com_

## SUPPORTING BONDHOLDERS

By: *Cooperativa de Seguros Múltiples*

Name: *PEDRO GONZALEZ*

Title: *CFO*

Notice Address:

Fax:

Attention:

Email: *pgonzalez@segurosmultiples.com*

**SUPPORTING BONDHOLDERS**

By: _Cooperativa de Seguros Multiple_

Name: _Ysmil J. García Diez_

Title: _Investment Manager_

Notice Address:

Fax: _____

Attention: _____

Email: _ysmil@segurosmultiple.com_

**SUPPORTING BONDHOLDERS**

By: _____

Name:   HELICORP, INC. - PEDRO FELICIANO BENITEZ

Title:   PRESIDENT

Notice Address:

PO BOX 2025

LAS PIEDRAS, PR 00771-2025

Fax:   (787) 733-4808

Attention:   PEDRO FELICIANO BENITEZ

Email:   lpcccuco@gmail.com

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:

<u>Notice Address:</u>

**[SUPPORTING BONDHOLDER]**

By:___
Name:
Title:

Notice Address:

**CONFIDENTIAL**
**FOR SETTLEMENT PURPOSES ONLY**

**<u>SUPPORTING BONDHOLDERS</u>**

[SUPPORTING BONDHOLDER]

By:

Name:

Title:

<u>Notice Address:</u>

**SUPPORTING BONDHOLDERS**



By

Name:

Title:

Notice Address:

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:

<u>Notice Address:</u>

**SUPPORTING BONDHOLDERS**

By:

Name: RBL Realty and Consulting Inc

Title: President

Notice Address:

Calle Alda 1551

Fax:
Attention:
Email: bengoa@aol.com

**<u>SUPPORTING BONDHOLDERS</u>**



By:

Name:

Title:

<u>Notice Address:</u>

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:

<u>Notice Address:</u>

GDB.RSA.BLANKED.PDF

SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

Fax: NA

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:



<u>Notice Address:</u>

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS

By:

Name:

Title:

Notice Address:

## SUPPORTING BONDHOLDERS



By:

Name:

Title:

Notice Address:

Government Development Bank Bonds Owned by Trigo Family (IN THOUSANDS)



| Investor | CostBasis (IN THOUSANDS) | Purchase Date | Cusip Num | Description |
|---|---|---|---|---|
| Benigno Trigo Gonzalez | | | | |

SEE FOR ANSWER



TRIGO CORP

SUBTOTAL GLD

Teresita Z Trigo

SUBTOTAL GDE

TOTAL

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:

<u>Notice Address:</u>

## <u>SUPPORTING BONDHOLDERS</u>

By:

Name:

Title:

<u>Notice Address:</u>



By: ___
Name:
Title:

Notice Address:



**COOPERATIVA DE AHORRO Y CREDITO AGUAS BUENAS  (BUENACOOP)**

By:_____
Name: Jesús E. Carrasquillo Medina
Title:  Executive President

Notice    Address:
Calle Rafael Laasa #14
Aguas Buenas, Puerto Rico_____
_____
_____
Fax(787)732-2799_____

Attention:    Jesús E. Carrasquillo Medina
Email:        info@buenacoop.com

**COOPERATIVA DE AHORA Y CREDITO CABO ROJO (CABO ROJO COOP)**

By:
Name: Kervin A. Morales Rivera
Title: Executive President

Notice Address:

P. O. Box 99
Cabo Rojo, Puerto Rico 00623

Fax: (787)851-1337
Attention: Kervin A. Morales Rivera
Email: cooperativa@caborojocoop.com

**COOPERATIVA DE AHORRO Y CREDITO DE CAGUAS**

By:

Name: Irma Hilerio Arroyo

Title:   Executive President

Notice Address:

P.O. Box 1252

Caguas, Puerto Rico  00726-1252

Fax: _____

Attention:     Irma Hileriio Arroyo

Email:          ihilerio@caguascoop.com

**COOPERATIVA DE AHORRO Y CREDITO DE ARECIBO  (CooPACA)**

By: _____

Name: William Méndez Pagán

Title:   Executive President

Notice Address:

Call Box 1056

Arecibo, Puerto Rico  00613-1056

_____

_____

Fax: _____

Attention:   William Méndez Pagán

Email:   wmendez@coopaca.com

**ASOCIACION DE MAESTROS DE PUERTO RICO  (EDUCOOP)**

By: _____

Name: José I. Flecha Cruz

Title:  Executive President

Notice Address:

P.O. Box 192770

San Juan, Puerto Rico  00918

_____

_____

Fax: _____

Attention:     José I. Flecha Cruz

Email: _____

**COOPERATIVA DE LA FEDERACION DE MAESTRO DE PUERTO RICO (FEDECOOP)**

By: 
Name:  Pedro Garcia Figueroa
Title:  Executive President

Notice Address:
P. O. Box 270-275
San Juan, Puerto Rico  00928


Fax: (787)620-2758
Attention:      Pedro Garcia Figueroa
Email:          info@fedecoop.com

**COOPERATIVA DE AHORRO Y CREDITO DE GERENCIALES AUTORIDAD
DE ENERGIA ELECTRICA (GERENCOOP)**

By: _____

Name: Nancy López López

Title: Executive President "Interina"

Notice Address:

1200 Ave Ponce de León

San Juan, Puerto Rico  00907-3918

_____

Fax: 787 - 723 - 9090

Attention:     Nancy López López

Email:     nlopez@gerencoop.com





Notice Address:

**JESUS OBRERO-COOPERATIVA**

By:
Name: Aurelio Arroyo González
Title: Executive President

Notice Address:
HC-1 Box 2903
PMB 159
Caguas, Puerto Rico  00725-8900

Fax (787) 731-6413
Attention:    Aurelio Arroyo González
Email:    Info.jesusobrero.coop

**COOPERATIVA DE AHORRO Y CREDITO LAS PIEDRAS**

By: _____

Name: <u>Gamadiel Velázquez Luzunaris</u>

Title: <u>Executive President</u>

<u>Notice Address</u>:

<u>1200 Ave Ponce de León</u>

<u>San Juan, Puerto Rico  00907-3918</u>

_____

_____

Fax: _____

Attention:  <u>Gamadiel Velázquez Luzunaris</u>

Email:  <u>gvelezquez@cooplaspiedras.com</u>

**COOPERATIVA AHORRO Y CREDITO LOMAS VERDES**

By: _____
Name: Victor M. Rodriguez Díaz
Title:  Executive President

<u>Notice Address</u>:
P.O. Box 1142
Bayamón, Puerto Rico  00960
_____
_____
Fax (787) 787-6292_____
Attention:     Victor M. Rodriguez Díaz
Email:          info@lomasverdes.coop

**COOPERATIVA LOS HERMANOS**

By: _____

Name: Brenda de Jesús Falero

Title: Executive President

<span style="background:black"> </span>

Notice Address:

P.O. Box 21410

San Juan, Puerto Rico 00928-1410

_____
_____

Fax (787)753-5485

Attention:      Brenda de Jesús Falero

Email:           info@coophermanos.com

COOPERATIVA AHORRO Y CREDITO SAN JOSE

By: _____
Name: Ricky Berrios Figueroa
Title:   Executive President


Notice Address:
P.O. Box 2020
Aibonito, Puerto Rico  00705
_____
_____

Fax (787) 735-7474
Attention:    Ricky Berrios Figueroa
Email:          rberrios@coopsanjose.com

**COOPERATIVA DE AHORRO Y CREDITO DE YAUCO (YAUCOOP)**

By: _____

Name: Ramón R. Torres Matos

Title:   Executive President

Notice Address:

P.O. Box 3010

Yauco, Puerto Rico 00698

Fax (787)856-1224

Attention:    Ramón R. Torres Matos

Email:      rtorres@yaucoop.net

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

**SUPPORTING BONDHOLDERS**



Notice Address:

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

#89334613v22

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

## SUPPORTING BONDHOLDERS

[SUPPORTING BONDHOLDER]

By: ██████████████████████████

Name ██████████████████████████

Title: ██████████████████████████

███████████████████████████████████

Notice Address:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

[SUPPORTING BONDHOLDER SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT]

#89334613v22

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:

CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

IN WITNESS WHEREOF, the Joining Party has caused this Joinder to be executed as of
the date first written above.

**[SUPPORTING BONDHOLDER]**

Notice Address:

Acknowledged:

**GOVERNMENT DEVELOPMENT BANK
OF PUERTO RICO**

By:_____
Name:
Title:

**SUPPORTING BONDHOLDERS**

By: ███████████████████████

Name: █████████████████████

Title: ████████████████████

████████████████████████████████

Notice Address:

**SUPPORTING BONDHOLDERS**

By:

Name:

Title:

Notice Address:



COSTS & WERE PROVIDED BY MERRILL LYNCH STATEMENTS

**<u>SUPPORTING BONDHOLDERS</u>**

By:

Name:

Title:

<u>Notice Address:</u>



COSTS & WERE PROVIDED BY MERRILL LYNCH STATEMENTS

**SUPPORTING BONDHOLDERS**

PUERTO RICO MEDICAL DEFENSE
INSURANCE COMPANY

By: 

Name:   Juan A. Terrassa Nolla

Title:   Chairman and CEO

Notice Address:

P. O. Box 191075
San Juan, Puerto Rico  00919
Attention: Juan A. Terrassa, President and CEO
Email: jterrassa@prmdic.com

With a copy to:

Picó & Blanco LLC
P. O. Box 9479
San Juan, Puerto Rico  00908-9479
Tel:  (787) 999-9001
Fax: (787) 999-9002
Attention:  Guillermo R. Picó
Email: grpico@pico-blanco.com

# EXHIBIT A

## Restructuring Term Sheet

**EXHIBIT A to**
**Restructuring Support Agreement**

**Government Development Bank for Puerto Rico**

**OUTLINE OF TRANSACTION STRUCTURE FOR RESTRUCTURING OF GDB LIABILITIES**

This term sheet (the "Term Sheet") is a summary of indicative terms and conditions for a proposed financial restructuring of GDB through a Qualifying Modification (the "Restructuring" or the "Qualifying Modification") pursuant to Title VI of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), of certain financial obligations of the Government Development Bank for Puerto Rico ("GDB"), including (i) bonds issued and outstanding pursuant to that certain trust indenture dated as of February 17, 2006 between GDB and Wilmington Trust, National Association, as successor trustee (the "Existing GDB Public Bonds"), and (ii) certain deposits and other outstanding obligations of GDB identified below.

This Term Sheet is solely for the purposes set forth in the Restructuring Support Agreement (the "RSA") dated May __, 2017 among GDB and certain holders of the Existing GDB Public Bonds, and acknowledged and agreed to by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and, except to the extent provided in the RSA, does not constitute a commitment by any party, and in any event is subject to the terms and conditions hereof, including, without limitation, requisite approvals under Title VI of PROMESA and execution and delivery of definitive agreements (the "Definitive Documents").

| Issuer of New Bonds | *Special Purpose Entity.* The issuer of the New Bonds (as defined below) (the "Issuer") will be a special purpose entity created by Puerto Rico statute as an instrumentality of Puerto Rico and structured in a manner similar to a conventional securitization vehicle.  The form of the Issuer shall be acceptable to the Requisite Bondholders, as defined in the RSA (the "RSA Requisite Bondholders").[1] |
|---|---|
| | *Trustee for New Bonds.* An indenture trustee will act for the benefit of holders of New Bonds and will be granted a lien on the New Bond Collateral (as defined below) for the benefit of the holders of New Bonds.  The trustee (or, if necessary, a designated calculation agent or other service provider for certain tasks the trustee is unable or unwilling to perform) will perform administrative functions for the Issuer customary for transactions of this type. |
| | *Asset Manager and Collateral Monitor.* The assets of the Issuer will be managed by a designated asset manager or servicer (the "Asset Manager") pursuant to an asset management and servicing agreement with the Issuer (the "Servicing Agreement").  The identity of the initial Asset Manager and terms of the initial Servicing Agreement (including compensation) shall be acceptable to the RSA Requisite Bondholders.[2]  A person satisfactory to the RSA Requisite |

---

[1] The type of entity used, its equity ownership and other structural elements of the Issuer will be subject to tax, Investment Company Act, accounting and other considerations. In the event that the proposed securitization structure cannot be implemented in a form that is acceptable to the RSA Requisite Bondholders, the New Bonds will be issued by GDB and secured so as to create for the benefit of the holders of the New Bonds as nearly as possible the same economic interests and protections provided for in this term sheet.

[2] If the Asset Manager is provided with an incentive compensation arrangement based on asset recoveries, the position of incentive compensation arrangements in the distribution waterfall shall be acceptable to the RSA

| | |
|---|---|
| | Bondholders (the "Collateral Monitor") will be engaged by the indenture trustee on terms acceptable to the RSA Requisite Bondholders to monitor the condition and performance of the New Bond Collateral and provide a certification report semiannually.[3]<br><br>For more information regarding the structure of and governance of the Issuer and the Servicing Agreement, see *Structure and Governance of Issuer* below. |
| **Participating Bond Claims** | The holders ("Holders") of the following liabilities of GDB (the "Participating Bond Claims"), together with the Designated Depositor Claims (as defined below), will be subject to and bound by the Qualifying Modification pursuant to Title VI of PROMESA:<br><br>• All claims for principal and accrued interest in respect of Existing GDB Public Bonds;<br><br>• The deposit claims against GDB identified in Schedule 1 hereto;<br><br>• The claims in respect of the outstanding letters of credit issued by GDB set forth on Schedule 2; and<br><br>• The claims in respect of the outstanding guarantees issued by GDB set forth on Schedule 3.[4]<br><br>For the avoidance of doubt, liabilities of GDB that are not Participating Bond Claims (except for the Designated Depositor Claims) will not be the subject of the Qualifying Modification, but the Qualifying Modification shall be subject to and conditioned upon the treatment of such claims to the extent specified below. |
| **Overview of Restructuring** | *Exchange of Participating Bond Claims for New Bonds*<br><br>GDB and the Holders of the Participating Bond Claims and the Holders of the |

Requisite Bondholders.  GDB will act as initial Asset Manager for a period not to exceed twelve (12) months from the Closing Date (such period, the "Transition Period").  A designated back-up servicer (the "Back-Up Asset Manager"), which shall be a "qualified" and "independent" (as such terms are defined in the Definitive Documents) firm of recognized national standing with the requisite expertise and Spanish speaking capability, and which is acceptable to GDB, AAFAF and the RSA Requisite Bondholders, will be engaged not later than the Closing Date to assume the responsibilities of the Asset Manager as soon as practicable and in any event before the end of the Transition Period, on arms-length, market terms in form and substance satisfactory to GDB, AAFAF, and the RSA Requisite Bondholders.  The Back-Up Asset Manager will be selected by a competitive RFP process prior to the solicitation of holders of Participating Bond Claims, and GDB shall use commercially reasonable efforts to effectuate the transition of its duties as Asset Manager to the Back-Up Asset Manager as soon as practicable.

[3] The terms of engagement of the Collateral Monitor shall be in form and substance satisfactory to the RSA Requisite Bondholders, GDB, and AAFAF.

[4] No New Bonds will be issued at closing in respect of L/Cs that are undrawn and guarantees as to which no claim has been made and that are Participating Bond Claims (as specified in Schedule 2 and Schedule 3, respectively), in each case prior to the Closing Date.  If, subsequent to the Closing Date, valid claims are made on such L/Cs or Guarantees, Tranche C Bonds will be issued to such Holders at that time on account of such claims (subject to the Parties' (as defined in the RSA) ongoing review of certain guarantees).

| | |
|---|---|
| **Transaction** | Designated Depositor Claims will undertake a financial restructuring of the Participating Bond Claims and Designated Depositor Claims (as defined below) through a Qualifying Modification implemented under Title VI of PROMESA on the terms and conditions set forth herein.  Pursuant to such Qualifying Modification, on the date on which the conditions described under "Conditions" below have all been satisfied or waived by the RSA Requisite Bondholders (the "Closing Date"):

    i.    all Holders of Participating Bond Claims will exchange their Participating Bond Claims for one or more of three tranches of new bonds issued by the Issuer, "Tranche A Bonds", "Tranche B Bonds", or "Tranche C Bonds", with terms as specified below (such bonds, the "New Bonds"), which New Bonds shall be book-entry only bonds held by DTC;[5] and

    ii.    GDB will transfer the New Bond Collateral to the Issuer in consideration for the Issuer's issuance of the New Bonds in connection with the exchange of the Participating Bond Claims as set forth above.

Each Holder of Participating Bond Claims shall exchange such Holder's Participating Bond Claims into one or more tranches of New Bonds, as elected by each such Holder, in connection with the Qualifying Modification.

If a Holder fails to submit a timely election to participate in a tranche of New Bonds, such Holder will be deemed to have elected to exchange such Holder's Participating Bond Claims into Tranche C Bonds.

For each $1,000 of Participating Bond Claims held by a Holder (which, for the avoidance of doubt, shall include principal plus accrued interest up to but not including the Closing Date in respect of Existing GDB Public Bonds), such Holder shall receive, pursuant to such Holder's election as set forth above:

- Tranche A Bonds (Taxable) having a face amount equal to $550;

- Tranche B Bonds (Taxable) having a face amount equal to $600; or

- Tranche C Bonds (Taxable) having a face amount equal to $750.

*Payments from Available Cash*

In the absence of acceleration of the New Bonds, payments of principal and interest to holders of New Bonds shall be made solely from Available Cash (as defined below) of the Issuer, as provided below.

*Security*

The Tranche A Bonds and Tranche B Bonds will be secured on a *pari passu* |

---

[5] Holders of Participating Bond Claims will retain the balance of their Participating Bond Claim until the New Bond Collateral has been applied in its entirety to repayment of the New Bonds.  See "Residual Participating Bond Claim" below.

| | |
|---|---|
| | basis by a first priority lien on the New Bond Collateral (as defined below) and the Tranche C Bonds will be secured by a second priority lien on the New Bond Collateral.<br><br>*Designated Depositor Settlement*<br><br>It is a condition to closing of the Qualifying Modification that certain agencies, instrumentalities, and affiliates of the Commonwealth that are set forth in Schedule 7 (the "Designated Depositors") shall have entered into a Settlement Agreement with respect to such Designated Depositor's deposit claims against GDB (each a "Designated Depositor Settlement Agreement"), and that each Designated Depositor Settlement Agreement shall have become binding and effective.  Pursuant to the Designated Depositor Settlement Agreements, each Designated Depositor shall release all of its claims  (the "Designated Depositor Claims") against GDB, the Issuer, and their respective assets and stakeholders in exchange for (i) GDB's release of any claims GDB may have against such Designated Depositor and (ii) a *pro rata* share of the beneficial interests in a trust (the "Public Entity Trust") that will hold the assets currently owned by GDB and identified in Schedule 8 hereto (the "Public Entity Trust Assets").  The Public Entity Trust Assets shall be transferred by GDB to the Public Entity Trust on the Closing Date or as promptly thereafter as practicable.  The trustee of the Public Entity Trust will enter into a management agreement with GDB pursuant to which GDB will manage the assets of the Public Entity Trust.[6]<br><br>*Excess CAE Settlement*<br><br>All municipalities for which excess CAE deposits have not been disbursed for fiscal year 2015, 2016, and 2017 (estimated at \$38 million in the aggregate) shall receive a 55 cents on the dollar recovery to be paid in cash by GDB on or after the Closing Date, *provided that* such Designated Depositors enter into a Settlement Agreement waiving the balance of any such claims and otherwise releasing GDB and the Issuer from any claims or causes of action related thereto. |
| **Terms of Tranche A Bonds** | *Payment of Interest from Available Cash*<br><br>7.500% annual coupon rate, payable semiannually[7] in cash; *provided that*, if on any "Determination Date" (a date not more than 10 business days prior to the related interest payment date) in respect of the related interest payment date Available Cash is not sufficient to pay in full all interest then payable on all tranches of the New Bonds (including paid in kind interest coming due and payable at such time), accrued interest on all tranches of New Bonds shall be paid in cash *pro rata* to the extent of Available Cash and any unpaid balance thereof shall be paid in kind.  All outstanding paid in kind interest (including any interest accrued thereon) shall be due and payable, together with other accrued interest on the New Bonds, on the immediately following |

---

[6] Allocation of residual value of Issuer and Public Entity Trust shall take into account relevant tax and other considerations.

[7] Subject to confirmation of alignment with material cash flows.

4

| | interest payment date (subject to the above provisions if Available Cash is then insufficient to make such payments in cash). |
|---|---|
| | *Amortization on Closing Date* |
| | Any Available Cash of the Issuer as of the Closing Date shall be paid to the holders of, and used to reduce, on a *pro rata* basis, the principal balance of, the Tranche A Bonds and Tranche B Bonds on the Closing Date or as soon as practicable thereafter but in no event later than 5 business days following the Closing Date. |
| | *Amortization from Excess Available Cash* |
| | On each Determination Date in respect of the related interest payment date, if Available Cash of the Issuer exceeds the amount thereof to be used to pay interest on the New Bonds on such interest payment date, such excess amount of Available Cash ("Excess Available Cash" on such interest payment date) shall be used to amortize the unpaid principal of the Tranche A Bonds and Tranche B Bonds *pro rata*. |
| | *Collateral Priority* |
| | Tranche A Bonds will be secured by a first priority lien on the New Bond Collateral shared on a *pari passu* basis with Tranche B Bonds. |
| | *Maturity* |
| | July 1, 2040 |
| **Terms of Tranche B Bonds** | *Payment of Interest from Available Cash* |
| | 5.500% annual coupon rate, payable semiannually[8] in cash; *provided that*, if on any Determination Date in respect of the related interest payment date Available Cash is not sufficient to pay in full all interest then payable on all tranches of the New Bonds (including paid in kind interest coming due and payable at such time), accrued interest on all tranches of New Bonds shall be paid in cash *pro rata* to the extent of Available Cash and any unpaid balance thereof shall be paid in kind.  All outstanding paid in kind interest (including any interest accrued thereon) shall be due and payable, together with other accrued interest on the New Bonds, on the immediately following interest payment date (subject to the above provisions if Available Cash is then insufficient to make such payments in cash). |
| | *Amortization on Closing Date* |
| | Any Available Cash of the Issuer as of the Closing Date shall be paid to the holders of, and used to reduce, on a *pro rata* basis, the  principal of the Tranche A Bonds and Tranche B Bonds on the Closing Date or as soon as practicable thereafter but in no event later than 5 business days following the |

---

[8] Subject to confirmation of alignment with material cash flows.

| | |
|---|---|
| | Closing Date.<br><br>*Amortization from Excess Available Cash*<br><br>On each Determination Date in respect of the related interest payment date, all Excess Available Cash on such interest payment date shall be used to amortize the unpaid principal of the Tranche A Bonds and Tranche B Bonds *pro rata*.<br><br>*Collateral Priority*<br><br>Tranche B Bonds will be secured by a first priority lien on the New Bond Collateral shared on a *pari passu* basis with Tranche A Bonds.<br><br>*Maturity*<br><br>July 1, 2040 |
| **Terms of Tranche C Bonds** | *Payment of Interest from Available Cash*<br><br>3.500% annual coupon rate, payable semiannually[9] in cash; *provided that*, if on any Determination Date in respect of the related interest payment date Available Cash is not sufficient to pay in full all interest then payable on all tranches of the New Bonds (including paid in kind interest coming due and payable at such time), accrued interest on all tranches of New Bonds shall be paid in cash *pro rata* to the extent of Available Cash and any unpaid balance thereof shall be paid in kind. All outstanding paid in kind interest (including any interest accrued thereon) shall be due and payable, together with other accrued interest on the New Bonds, on the immediately following interest payment date (subject to the above provisions if Available Cash is then insufficient to make such payments in cash).<br><br>*Amortization from Excess Available Cash*<br><br>On each Determination Date in respect of the related interest payment date, all Excess Available Cash on such interest payment date shall be used to amortize the unpaid principal of the Tranche C Bonds, *provided that* such principal amortization shall occur only from Excess Available Cash on or after the interest payment date upon which principal of the Tranche A Bonds and Tranche B Bonds has been paid in full.<br><br>*Collateral Priority*<br><br>Tranche C Bonds will be secured by a second priority lien on the New Bond Collateral.<br><br>*Maturity*<br><br>July 1, 2040 |

---

[9] Subject to confirmation of alignment with material cash flows.

| | |
|---|---|
| **New Bond Collateral** | The "New Bond Collateral" shall include all assets held from time to time by the Issuer, including assets transferred by GDB to the Issuer on the Closing Date and thereafter pursuant to the Definitive Documents, and any future-acquired assets and any proceeds of the foregoing.<br><br>On the Closing Date, all assets of GDB (whether or not identified on the Closing Date), other than the Excluded Assets (as defined below) will be irrevocably assigned and transferred to the Issuer, including, without limitation, (i) the public sector and municipal loans, advances to the Municipal Fund Administration and Municipal Financing Corporation, and GDB properties identified in Schedule 4 and Schedule 5 hereto, and (ii) all unrestricted cash and cash equivalents of GDB in excess of the Specified Cash Assets (as defined below).<br><br>"Excluded Assets" means (i) the public entity loans listed on Schedule 6 held at GDB; *provided that* the right to receive the net proceeds, if any, from any such public entity loans shall be New Bond Collateral and GDB agrees that any such proceeds shall be transferred to the Issuer as soon as practicable but in no event later than 15 days after receipt thereof; (ii) cash to pay any transaction costs of the Restructuring, including professional fees and expenses of GDB, AAFAF, and the professionals to be paid pursuant to the RSA; (iii) causes of action, including contingent or unknown, held by GDB as of the Closing Date *provided that* the right to receive the net proceeds, if any, from any such causes of action or proceeds received by GDB in respect of other contingent or unknown assets, shall be New Bond Collateral and any such proceeds shall be transferred to the Issuer as soon as practicable but in no event later than 15 days after receipt thereof[10]; (iv) Public Entity Trust Assets, (v) loans and funds that are collateral for the Secured Deposit Account (as defined below) and (vi) certain Specified Cash Assets, to be retained by GDB.<br><br>The "Specified Cash Assets" shall equal the sum of (a) the Vendor Claim Reserve (as defined below), (b) restricted cash held by GDB[11] and (c) $25 million minus fees payable to GDB as Asset Manager during the Transition Period or such other amount for operating cash requirements of GDB as may be acceptable to the RSA Requisite Bondholders; *provided that* the right of the Issuer to receive the Vendor Claim Reserve Residual shall constitute New Bond Collateral and, once identified, such Vendor Claim Reserve Residual shall be delivered to the Issuer as set forth below.<br><br>The "Vendor Claim Reserve Residual" shall be the amount equal to any cash or cash equivalents remaining in the account in respect of the Vendor Claim Reserve after the payment of all Unresolved Disputed Vendor Claims (as defined below) determined by GDB to be valid.  Any cash or cash equivalents related |

---

[10] Except for the Excluded Assets, any unknown assets shall be part of the New Bond Collateral transferred to the Issuer on the Closing Date, and upon discovery of any such unknown assets, GDB shall take any necessary steps to complete the transfer thereof to the Issuer, pending which such assets shall be held in trust for the Issuer.

[11] Restricted cash includes cash held in a segregated account separate from Available Cash , in an aggregate amount of approximately $27.5 million,for (i) the Employee's Incentive, Retirement and Retraining Program established under Act 70-2010; (ii) employee benefits under the early retirement windows of 1994, 2000 and 2007; (iii) the Voluntary Pre-Retirement Program established under Act 211-2015; and (iv) the voluntary separation program included in GDB's certified fiscal plan.

| | |
|---|---|
| | thereto shall be transferred to the Issuer after such determination as part of the New Bond Collateral. |
| | Any New Bond Collateral not transferred to the Issuer on the Closing Date, such as assets identified after the Closing Date, the Vendor Claim Reserve Residual, and the proceeds of settlement of any claims in existence on the Closing Date (net of the expenses associated with obtaining such settlement proceeds) shall be delivered to the Issuer within 15 days after it becomes known and identifiable.[12] |
| | All proceeds of New Bond Collateral, whenever received and including without limitation cash payable to the Issuer in respect of loans and advances included in the New Bond Collateral, will remain in the ownership and control of the Issuer, subject to a perfected security interest securing the New Bonds.[13] |
| | With respect to the public entity loans held at the Issuer listed on Schedule 5, if the Issuer is treated *pari passu* with other debt holders of the same legal priority, the Issuer and the Asset Manager shall not be permitted to pursue any collection or enforcement actions related to such loans, and the Asset Manager shall enforce any and all rights and remedies in a proceeding under Title III or Title VI of PROMESA of any such public entities only to the extent necessary and appropriate in order to ensure that the Issuer receives a distribution (if any) in such proceeding consistent with distributions to creditors holding claims with the same legal priority as the claims of the Issuer. |
| **Events of Default / Acceleration** | "Events of Default" in respect of the New Bonds shall include the following: <br><br> • Failure to make any required payment of principal or interest from Available Cash in respect of any of the New Bonds, on the dates on which the same are due; <br><br> • Any insolvency, bankruptcy, reorganization, restructuring, receivership or any other form of debtor relief is sought by or against the Issuer, whether under federal or Puerto Rico law; <br><br> • Any legislation is enacted, governmental[14] action is taken, or party (other than an obligor under the New Bond Collateral) is determined by a final nonappealable order or admitted in writing by the Issuer to have rights that, in any such case, adversely affects (i) the receipt of current or future proceeds of New Bond Collateral to which the Issuer is entitled (other than by reason of the default by the obligor under such New Bond |

---

[12] As noted above, the proceeds of retained public loans and the net proceeds of contingent causes of action will also be turned over to the Issuer upon receipt.

[13] This presumably will be arranged through accounts maintained by the trustee. As noted above, proceeds of New Bond Collateral previously directed to GDB will have to be paid directly to the Issuer or the Servicing Agent pursuant to any necessary agreements or legislation.

[14] Governmental action for these purposes shall include the government of Puerto Rico, its instrumentalities and any government-controlled or managed entities, including entities with directors or management controlled or appointed by the government of Puerto Rico.

| | |
|---|---|
| | Collateral) in respect of assets having an aggregate value on the Closing Date of $25 million or more[15] or (ii) the binding effect or enforcement in accordance with their respective terms of the Qualifying Modification, any Designated Depositor Settlement Agreement, the New Bonds or the liens on the New Bond Collateral; |
| | • Entry of a judgment against the Issuer in the amount of $10 million or more; and |
| | • Other customary events of default. |
| | If an Event of Default occurs and is continuing, at the request of holders of at least 25% in aggregate principal amount of all New Bonds, subject to customary provisions related to rights of the trustee, the trustee shall, by notice to the Issuer and the Asset Manager, declare the outstanding principal amount of all the New Bonds to be immediately due and payable.  Upon such a declaration, the outstanding principal amount of each tranche of the New Bonds shall be due and payable immediately. |
| **Covenants** | The indenture for the New Bonds (the "<u>Indenture</u>") shall contain covenants in form and substance acceptable to the RSA Requisite Bondholders, including covenants regarding the Asset Manager, information, budgeting, collateral management, negative pledge, further assurances, permitted business activities, limitation on assets sales, limitation on investments and other customary covenants. |
| | Among other things, the covenants will provide that: |
| | 1. The Issuer shall enter into a continuing disclosure agreement that requires, no less than annually, the Issuer to provide or cause to be provided audited annual reports to the holders of New Bonds[16] regarding the assets, liabilities and cash flows of the Issuer, as well as other financial information, in each case in form and substance as specified in the continuing disclosure agreement. |
| | 2. The continuing disclosure agreement shall require the Issuer to provide or cause to be provided to the holders of New Bonds, not later than a specified date prior to the beginning of each fiscal year, a detailed annual operating budget indicating the Issuer's good faith projection of monthly operating expenditures of the Issuer for the upcoming fiscal year. |
| | 3.  In addition, the continuing disclosure agreement shall require the issuer to provide or cause to be provided to the holders of New Bonds, (i) a |

---

[15] The value of an asset for this purpose is the face amount of such asset (in the case of loans) or the book value of such asset (in the case of other assets).

[16] The first audited reports of the Issuer shall be provided within 180 days after the end of the Issuer's first fiscal year ending after the Closing Date.  Reports to holders of New Bonds may be provided through appropriate web posting in a form to be agreed.

|  | quarterly update of the year's operating budget to show actual expenditures for the quarter(s) then ended, and projected expenditures for the remainder of the fiscal year, reconciled to the previously posted budget for such periods and (ii) a semiannual report of the Collateral Monitor regarding the Compliance Test (as defined below) and regarding any material actions taken with regard to the New Bond Collateral or any actions taken with regard to non-performing loans.<br><br>4.   The continuing disclosure agreement will also require the Issuer to provide or cause to be provided any further disclosures, if any, required in connection with any required compliance with Rule 15c2-12 under the Securities Act as requested by the participating underwriter(s), if any.<br><br>5.   Issuer's expenditures other than for debt service during any four consecutive fiscal quarters shall not exceed certain agreed amounts plus the fees and expenses payable to the trustee and the Asset Manager pursuant to the Indenture and the Servicing Agreement. |
|---|---|
| **Structure and Governance of Issuer** | *Approval by Requisite Bondholders.*  The structure and governance of the Issuer, the form of indenture for the New Bonds and other related documents, and the identity and terms of employment of the Collateral Monitor and the Back-Up Asset Manager shall be acceptable to the RSA Requisite Bondholders.<br><br>*Cash Flow Tests for Compliance.*  GDB has delivered a projection of municipal loan interest and amortization through 2040 (the "<u>Cash Forecast</u>") exhibited hereto as Schedule 9.  The Asset Manager will provide a semiannual report to the Collateral Monitor with updated municipal loan interest collections and amortization collections to be used for testing purposes on a semiannual basis (the date of each such report, a "<u>Test Date</u>") for purposes of the Collateral Monitor's semiannual report of compliance with the Compliance Test, as provided above.  New Bond Requisite Holders may request the replacement of the Asset Manager if the cumulative shortfall of the actual municipal loan portfolio cash flows as compared to the forecasted cash flows in the Cash Forecast from 7/1/17 through the Test Date is not less than 10.0% (the "<u>Compliance Test</u>") as of each applicable Test Date.<br><br>*Replacement of Asset Manager.*  At the direction of the New Bond Requisite Holders, the Asset Manager may be removed and replaced by a "qualified" and "independent" (as such terms are defined in the Definitive Documents) successor Asset Manager of recognized national standing with the requisite expertise and Spanish speaking capability designated by the New Bond Requisite Holders on such terms as may be approved by such New Bond Requisite Holders (a) for cause (including if the Asset Manager enters into commercially unreasonable modifications, extensions or accommodations in respect of the New Bond Collateral) or (b) if (i) the Compliance Test is not met or (ii) information necessary to verify compliance with the Compliance Test as of any Test Date is not made available on a timely basis; *provided that* if GDB is replaced as Asset Manager, the Back-Up Asset Manager will be the replacement Asset Manager.<br><br>In all events Issuer will be structured so as to allow the New Bonds to constitute exempt securities under Section 3(a)(2) of the 1933 Act or any other applicable |

| | |
|---|---|
| | exemption. |
| **Vendor Claim Reserve** | The amount of cash equal to the aggregate amount of claims asserted against GDB by parties that provided goods and services to GDB in the ordinary course of business (such amount at any time, the "Vendor Claim Reserve"), which claims are disputed by GDB on the Closing Date ("Unresolved Disputed Vendor Claims") shall remain at GDB in a separate account subject to a perfected security interest in favor of the Issuer.  Any cash or cash equivalents constituting Vendor Claim Reserve Residual remaining in the account in respect of the Vendor Claim Reserve after the payment of all Unresolved Disputed Vendor Claims determined by GDB to be valid shall be required to be transferred to the Issuer. |
| **Certain Definitions** | "Available Cash" of the Issuer on any Determination Date in respect of a related interest payment date means all cash and cash equivalents of the Issuer (whether arising from proceeds of New Bond Collateral or otherwise) at such time, other than the Issuer Expense Reserve (as defined below) at such time.<br><br>"Issuer Expense Reserve" of the Issuer on any Determination Date in respect of a related interest payment date means the amount of cash reasonably expected to be required to pay the operating expenses of the Issuer through the next Determination Date based on a good-faith projection prepared by the Asset Manager.[17]<br><br>"pro rata" means, with respect to any distribution to or vote of holders of New Bonds, a ratable distribution or vote based on the principal amount of the New Bonds outstanding at the time of such distribution or vote.<br><br>"New Bond Requisite Holders" means (i) if no Event of Default has occurred and is continuing, holders of New Bonds collectively holding one-third of the Voting Claims (as defined below) or (ii) if an Event of Default has occurred and is continuing, holders of the New Bonds collectively holding 25% of the Voting Claims.<br><br>"Secured Deposit Account" means an account in the name of Asociación de Empleados del ELA (Account Number B6347044) in an amount of approximately $25.4 million.<br><br>"Voting Claims" means the votes apportioned to New Bonds based on the aggregate original principal amount of all Participating Bond Claims exchanged for such New Bonds. |
| **Intercreditor Provisions** | The Definitive Documents shall provide for, among other things:<br><br>- Customary lien subordination and waterfall provisions binding on the holders of Tranche C Bonds in favor of the holders of Tranche A Bonds and Tranche B Bonds; |

---

[17] A budget shall be prepared subject to the terms of the Servicing Agreement to be agreed upon and acceptable to the RSA Requisite Bondholders.

|  | • Lien sharing among the holders of Tranche A Bonds and Tranche B Bonds, in respect of the realization of New Bond Collateral following any default, in proportion to the outstanding principal amount of such New Bonds;<br><br>• Customary "silent second lien" provisions binding on the holders of Tranche C Bonds in favor of holders of Tranche A Bonds and Tranche B Bonds; and<br><br>• Other terms and conditions and intercreditor provisions customary in transactions of this type or otherwise in transactions with a similar lien and priority structure.<br><br>• Remedies with respect to the loan portfolio to be limited to replacement of the Asset Manager[18] and the appointment of a receiver. |
|---|---|
| **Voting** | Unless otherwise specified amendments, modifications and waivers of the governing documents of the New Bonds or other matters requiring the consent of the holders of the New Bonds shall generally require the consent of holders of not less than a majority in aggregate outstanding principal amount of each tranche of New Bonds; *provided that* amendments and modifications that customarily do not require bondholder consent shall be excluded from such consent requirement;[19] *provided, further* that amendments, modifications or waivers affecting only some but not all tranches of bonds shall require the consent of holders of not less than a majority in aggregate outstanding principal amount of each affected tranche only; and *provided, further* that any amendments, modifications or waivers that would have the effect on any New Bond of reducing principal, extending maturity, reducing the interest rate payable, or adversely affecting lien priority or any other amendments, modifications or waivers customarily requiring the consent of each adversely affected holder shall require the consent of each holder of New Bonds adversely affected by such amendment, modification or waiver. |
| **Certification Order** | GDB shall submit an application to the United States District Court for the District of Puerto Rico (or any other court of competent jurisdiction pursuant to PROMESA) for an order pursuant to section 601(m)(1)(D) of PROMESA that the requirements of section 601 of PROMESA have been satisfied by the Qualifying Modification as set forth herein (the "Certification Order"), which order shall be in form and substance satisfactory to the RSA Requisite |

---

[18] In connection with the exercise of remedies, New Bond Requisite Holders shall be entitled to remove and replace the Asset Manager by a "qualified" and "independent" (as such terms are defined in the Definitive Documents) successor Asset Manager of recognized national standing with the requisite expertise and Spanish speaking capability designated by the New Bond Requisite Holders on such terms as may be approved by such New Bond Requisite Holders; *provided that* if GDB is replaced as Asset Manager, the Back-Up Asset Manager will be the replacement Asset Manager.

[19] Such as to cure ambiguities or any defective provision in the governing documents, to comply with regulations related to the registration of beneficial ownership interests, or to modify or amend the indenture to permit the qualification under the Trust Indenture Act, in the case of any of the foregoing, only to the extent that the amendment has no adverse effect, whether or not material, on holders of the New Bonds.

| | |
|---|---|
| | Bondholders, and shall provide, among other things, that: |
| | • the Qualifying Modification is valid and binding on any person or entity asserting claims or other rights, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of Participating Bond Claims subject to the Qualifying Modification, any trustee, any collateral agent, any indenture trustee, any fiscal agent and any bank that receives or holds funds related to such Participating Bond Claims; |
| | • the New Bond Collateral will vest free and clear of all claims of any other issuer pursuant to section 601(m)(2) of PROMESA; |
| | • the Restructuring is full, final, complete, binding, and conclusive as to GDB, the Issuer, the Government of Puerto Rico (as defined in PROMESA), any other Territorial Instrumentality (as defined in PROMESA) of the Government of Puerto Rico and any creditors of such entities, and is not be subject to any collateral attack or other challenge by any such entities in any court or other forum; |
| | • the release and exculpation by GDB of the Released Parties (as defined below) solely with respect to claims and causes of action in connection with, arising from or related to, the Restructuring is fully-enforceable and shall not be subject to attack or avoidance in any other proceeding under PROMESA or otherwise; and |
| | • the Designated Depositor Settlement Agreements are fully-enforceable binding contracts that shall not be subject to attack or avoidance in any other proceeding under PROMESA or otherwise. |
| **Conditions** | Conditions precedent to the Closing Date shall include, but not be limited to, the following: |
| | • Certification of the Restructuring as a Qualifying Modification pursuant to section 601(g)(1)(C) of PROMESA; |
| | • Establishment of a Pool of Bond Claims (as defined in PROMESA) by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") consisting solely of the Participating Bond Claims; |
| | • Distribution of the required disclosure documents and voting instructions to the Holders by the Information Agent (as defined in PROMESA) pursuant to section 601(f) and (k) of PROMESA; |
| | • Satisfaction of the voting requirements set forth in section 601(j) of PROMESA with respect to the Qualifying Modification; |
| | • Passage of any necessary legislation enabling the creation of the Issuer in form and substance satisfactory to the RSA Requisite Bondholders, including such provisions as may be required for consummation of the transactions contemplated by the Restructuring, including, without limitation, any provisions necessary for (i) the Issuer to be treated as a municipal issuer under applicable securities laws, (ii) cash flows arising |

out of the New Bond Collateral to be paid directly (i.e., directly from CRIM or any other applicable collection entity)[20] to the Issuer from and after the Closing Date and (iii) permitting the bond documents to contain remedies for breach as set forth herein[21];

- Certification pursuant to section 601(m) of PROMESA that (i) voting requirements have been satisfied, (ii) the Qualifying Modification complies with section 104(i)(1) of PROMESA, and (iii) any conditions on the effectiveness of the Qualifying Modification have been satisfied or waived;

- Entry of the Certification Order;

- The Designated Depositor Settlement Agreements, in form and substance satisfactory to GDB and RSA Requisite Bondholders, shall have been executed and delivered by GDB and each of the Designated Depositors, and shall have become binding and effective;

- The Public Entity Trust, in form and substance satisfactory to GDB and the RSA Requisite Bondholders shall have been established and the Public Entity Trust Assets shall have been transferred to the trustee of the Public Entity Trust;

- The Issuer shall have been created pursuant to governing documents in form and substance satisfactory to GDB and the RSA Requisite Bondholders;

- The Trust Agreement and Servicing Agreement shall have been executed and delivered, in form and substance satisfactory to GDB and the RSA Requisite Bondholders, and shall be in full force and effect;

- All other Definitive Documents shall have been executed and delivered in form and substance satisfactory to GDB and the RSA Requisite Bondholders, and shall be in full force and effect;[22]

- GDB shall have determined in a manner acceptable to RSA Requisite Bondholders and shall have notified all municipalities that are both depositors in and borrowers from GDB in respect of setoffs being applied to such depositors' deposits and loans (such application of setoff rights, the "Municipal Setoff" with respect to such depositor) and of the net amount of Residual Participating Bond Claim and loans outstanding after effectuating Municipal Setoff;

---

[20] Subject to diligence regarding flows of payments and changes in municipal finance structure.

[21] The legislation will confirm the ability of holders of New Bonds to have a receiver appointed in accordance with the remedies provisions set forth above.

[22] The Definitive Documents shall include all documents relating to engagement of GDB as Asset Manager, as well as the Back-Up Asset Manager, specifying the compensation to which those parties will be entitled in such capacities, all in form and substance acceptable to GDB and the RSA Requisite Bondholders.

|  | • Customary legal opinions of counsel to GDB in form and substance acceptable to the RSA Requisite Bondholders shall have been delivered to the trustee or other applicable party regarding the Definitive Documents and the Restructuring, including, without limitation, opinions in respect of enforceability, no-registration, '40 Act, disclosure and tax opinions; and<br><br>• All professional fees and expenses required to be paid under the RSA shall have been paid on the Closing Date. |
|---|---|
| **Residual Participating Bond Claim** | Notwithstanding the Qualifying Modification and exchange and cancellation of the Participating Bond Claims in connection therewith, GDB will agree that, from and after the Closing Date, each Holder of a Participating Bond Claim on the Closing Date shall retain a claim (each a "Residual Participating Bond Claim") against GDB for the unsatisfied portion of such Holder's Participating Bond Claim until the proceeds of the New Bond Collateral have been applied to payments in respect of the New Bonds in accordance with the terms of the Definitive Documents, whereupon such Residual Participating Bond Claim shall be deemed forgiven and released in the event that, for any reason, the Qualifying Modification, the New Bonds or the rights and liens of the Issuer, the trustee and the New Bonds with respect to the New Bond Collateral are not enforced in accordance with their terms.[23] |
| **Releases** | To the extent permitted by applicable law, the Qualifying Modification shall provide for customary releases from GDB, AAFAF and the Holders (solely in their capacity as creditors of GDB and not in their capacity as creditors of any other entity) for the benefit of each other and each of their respective current directors, managers, officers, affiliates, partners, subsidiaries, principals, employees, agents, managed funds, representatives, attorneys and advisors, together with their successors and assigns (collectively, the "Released Parties"). |
| **Governing Law ; Remedies** | The New Bonds will be governed and construed in accordance with the laws of the State of New York.<br><br>Remedies may not be exercised against GDB or Issuer in respect of a curable breach or violation of the Definitive Documents or the Qualifying Modification by such party unless 10 days written notice and a request for cure is given to such party, and such party fails to cure; *provided, however*, with respect to defaults that are not able to be cured, such notice and opportunity to cure need not be given. |

---

[23] The Residual Participating Bond Claim will be designed to take into account securities law, tax, true sale and other considerations.

**Schedule 1**
**Issuer: Non-Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
|---|---|
| **Deposits by municipalities[1]** | |
| Adjuntas | $1,365,690 |
| Aguada | 3,160,883 |
| Aguadilla | 5,635,460 |
| Aguas Buenas | 1,652,565 |
| Aibonito | 3,506,136 |
| Anasco | 2,289,941 |
| Arecibo | 1,331,104 |
| Arroyo | 586,712 |
| Barceloneta | 1,256,978 |
| Barranquitas | 2,846,439 |
| Bayamon | 18,605,176 |
| Cabo Rojo | 2,389,732 |
| Caguas | 21,448,935 |
| Camuy | 1,038,493 |
| Canovanas | 86,726 |
| Carolina | 66,151,921 |
| Catano | 8,913,517 |
| Cayey | 7,902,535 |
| Ceiba | 948,454 |
| Ciales | 433,696 |
| Cidra | 4,883,682 |
| Coamo | 2,969,537 |
| Comerio | 1,073,256 |
| Corozal | 1,992,131 |
| Culebra | 1,587,080 |
| Dorado | 4,153,583 |
| Fajardo | 17,133,096 |
| Florida | 427,182 |
| Guanica | 782,813 |
| Guayama | 1,710,002 |
| Guayanilla | 502,431 |
| Guaynabo | 16,753,811 |
| Gurabo | 3,170,664 |
| Hatillo | 2,460,592 |
| Hormigueros | 1,587,437 |
| Humacao | 13,131,793 |
| Isabela | 2,384,189 |
| Jayuya | 555,348 |
| Juana Díaz | 1,443,115 |

**Schedule 1**
**Issuer: Non-Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
|---|---|
| **Deposits by municipalities (cont'd)**[1] | |
| Juncos | 1,864,270 |
| Lajas | 914,168 |
| Lares | 2,949,084 |
| Las Marias | 725,703 |
| Las Piedras | 2,584,162 |
| Loiza | 550,287 |
| Luquillo | 3,480,595 |
| Manati | 1,542,244 |
| Maricao | 980,859 |
| Maunabo | 391,066 |
| Mayaguez | 21,444,379 |
| Moca | 1,062,564 |
| Morovis | 1,345,100 |
| Naguabo | 1,141,257 |
| Naranjito | 2,154,659 |
| Orocovis | 287,369 |
| Patillas | 560,514 |
| Penuelas | 1,653,667 |
| Ponce | 11,909,032 |
| Quebradillas | 1,122,156 |
| Rincon | 3,955,363 |
| Rio Grande | 1,790,973 |
| Sabana Grande | 119,665 |
| Salinas | 1,356,001 |
| San German | 2,099,601 |
| San Juan | 60,407,481 |
| San Lorenzo | 665,988 |
| San Sebastian | 722,345 |
| Santa Isabel | 2,913,037 |
| Toa Alta | 1,405,848 |
| Toa Baja | 1,824,808 |
| Trujillo Alto | 2,206,232 |
| Utuado | 1,912,619 |
| Vega Alta | 3,495,610 |
| Vega Baja | 1,947,119 |
| Vieques | 415,628 |
| Villalba | 449,625 |
| Yabucoa | 1,054,483 |
| Yauco | 208,100 |
| **Total** | **$377,866,492** |

**Schedule 1**
**Issuer: Non-Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
|---|---|
| **Deposits by non-public entities**[1] | |
| PR Science and Technology Trust | $92,311,874 |
| Municipal Administration Fund (FAM) | 27,917,429 |
| PR Housing Finance Authority (PRHFA) - Other Private | 22,879,005 |
| Escrow Deposit - Siemens | 13,000,000 |
| Commonwealth Employees Association (AEELA)[2] | 12,613,089 |
| Coooperative Development and Investment Fund (FIDECOOP) | 7,820,552 |
| Private Investment - Serralles / Costa Sur / Costa Caribe | 2,897,655 |
| Private Investment - MCS Advantage Inc. | 606,083 |
| Private Investment - Citigroup / Citibank | 604,247 |
| Private Investment - Medical Card System Inc | 405,270 |
| Private Investment - Caguas Coop | 200,000 |
| Institutional Trust of Puerto Rico's National Guard | 155,861 |
| Private Investment - Cooperativa Dr Manuel Zeno Gandia | 50,872 |
| Banco Cooperativo (Cooperative Bank) | 3,617 |
| Private Deposit - A.T/V.Suarez | 3,018 |
| Private Deposit - Poultry Products of the Caribbean | 275 |
| Private Deposit - Indulac | 133 |
| **Total** | **$181,468,979** |

**Notes**

(1) Certain deposits and loans are subject to further diligence and recategorization

(2) Excludes $13.8 m in deposits that are secured by five municipal loans excluded from
the New Bond Collateral for the Issuer; refer to Schedule 4

**Schedule 2**

**Issuer: Claims Related To LOCs Issued By GDB**

---

**Entity**

---

| **Letters of credit issued by GDB** |
| --- |
| PR Infrastructure Financing Authority Revenue Bonds (Ports Authority Project) (the "PRIFA Bonds") |
| PR Public Finance Corporation Stand-By Letter of Credit |

**Schedule 3**
**Issuer: Guarantees Issued by GDB**

**Entity**

| Guarantees issued by GDB |
| --- |
| Sheraton Puerto Rico Hotel and Casino (Convention Center) |
| Aerostar Airport Holdings, LLC – Termination Guaranty |
| Autopistas Metropolitanas de Puerto Rico, LLC – Termination Guaranty |

**Schedule 4**
**Issuer: Collateral Detail - Municipal Loans**

| Entity | Balance post setoff ($) |
|---|---|
| **Loans to municipalities ($)[1][2]** | |
| Adjuntas | $15,185,151 |
| Aguada | 5,596,552 |
| Aguadilla | 64,214,263 |
| Aguas Buenas | 5,833,716 |
| Aibonito | 7,453,213 |
| Anasco | 7,369,618 |
| Arecibo | 34,519,140 |
| Arroyo | 7,174,718 |
| Barceloneta | 35,371,711 |
| Barranquitas | 3,946,917 |
| Bayamon | 56,233,464 |
| Cabo Rojo | 24,932,530 |
| Caguas | 61,679,604 |
| Camuy | 8,312,214 |
| Canovanas | 15,436,138 |
| Carolina | 7,335,285 |
| Catano | 11,395,146 |
| Cayey | 29,194,630 |
| Ceiba | 3,662,947 |
| Ciales | 6,938,445 |
| Cidra | 17,133,540 |
| Coamo | 16,330,196 |
| Comerio | 4,592,941 |
| Corozal | 8,781,201 |
| Culebra | 2,057,079 |
| Dorado | 42,147,718 |
| Florida | 3,516,000 |
| Guanica | 8,436,923 |
| Guayama | 16,353,691 |
| Guayanilla | 10,413,120 |
| Guaynabo | 123,851,827 |
| Gurabo | 23,879,675 |
| Hatillo | 2,329,124 |
| Hormigueros | 3,190,361 |
| Humacao | 2,503,585 |
| Isabela | 8,447,176 |
| Jayuya | 9,033,720 |
| Juana Díaz | 13,156,925 |
| Juncos | 36,954,369 |
| Lajas | 8,525,266 |
| Lares | 1,494,000 |

**Schedule 4**
**Issuer: Collateral Detail - Municipal Loans**

| Entity | Balance post setoff ($) |
|---|---:|
| **Loans to municipalities (cont'd)[1][2]** | |
| Las Marias | 5,729,372 |
| Las Piedras | 18,184,431 |
| Loiza | 6,822,900 |
| Luquillo | 9,162,373 |
| Manati | 40,761,702 |
| Maricao | 7,467,427 |
| Maunabo | 12,566,355 |
| Mayaguez | 39,826,029 |
| Moca | 10,059,694 |
| Morovis | 13,631,123 |
| Naguabo | 4,463,292 |
| Naranjito | 12,929,049 |
| Orocovis | 3,660,000 |
| Patillas | 9,607,453 |
| Penuelas | 15,056,177 |
| Ponce | 94,016,289 |
| Quebradillas | 7,187,828 |
| Rincon | 4,064,907 |
| Rio Grande | 23,219,811 |
| Sabana Grande | 4,419,420 |
| Salinas | 13,789,796 |
| San German | 16,372,224 |
| San Juan | 336,310,617 |
| San Lorenzo | 15,738,065 |
| San Sebastian | 18,250,572 |
| Santa Isabel | 21,454,124 |
| Toa Alta | 16,752,749 |
| Toa Baja | 75,777,619 |
| Trujillo Alto | 31,819,719 |
| Utuado | 4,515,625 |
| Vega Alta | 10,590,132 |
| Vega Baja | 24,621,142 |
| Vieques | 8,580,145 |
| Villalba | 7,952,924 |
| Yabucoa | 15,344,659 |
| Yauco | 28,471,706 |
| **Total** | **$1,764,091,287** |

**Notes**

(1) Certain deposits and loans are subject to further diligence and recategorization

(2) Arecibo, Cayey, Guaynabo, Manati, and Mayaguez balances reflect a total $13.8m adjustment
for loans that are collateral for the Commonwealth Employees Association (AEELA) deposit

**Schedule 5**
**Issuer: Collateral Detail - Other Assets**

| Entity | Balance post setoff ($) |
|---|---|
| **Loans to public corporations and public agencies ($)[1]** | |
| PR Highways and Transportation Authority (PRHTA) | $1,703,471,814 |
| PR Ports Authority (AP) | 266,828,873 |
| PR Public Buildings Authority (AEP) | 141,226,309 |
| Department of Treasury (General Obligation) | 169,438,038 |
| PR Convention Center District Authority (PRCC) | 142,872,116 |
| Municipal Finance Corporation (COFIM) | 57,251,415 |
| PR Industrial Development Company (PRIDCO) | 53,526,055 |
| PR Solid Waste Management Authority (SWMA) | 50,240,827 |
| PR Aqueduct and Sewer Authority (PRASA) | 54,241,973 |
| Comprehensive Fund for Agricultural Development of PR (FIDA) | 27,674,024 |
| Port Authority of Ponce | 20,762,752 |
| Port of the Americas | 1,700,000 |
| Act 71 of 2010 - Interagency Committee | 995,449 |
| **Total** | **$2,690,229,646** |
| **Other[1]** | |
| Port of the Americas Bonds (GO Guaranty) | $225,533,700 |
| HTA 1998 Series A Variable Rate Revenue Bonds | 200,000,000 |
| PR Housing Finance Authority Reverse Repo | 21,074,801 |
| Private loans | 986,178 |
| Cash | TBD |
| **Total** | **$447,594,680** |

| Property | Appraisal value ($) |
|---|---|
| **Real estate owned assets** | |
| Río Bayamón Norte Community | $19,600,000 |
| Former Sears | 16,600,000 |
| Parcel B Santurce Sur Ward | 13,525,000 |
| National Guard, Puerta de Tierra | 7,000,000 |
| Former Leprosarium | 6,020,000 |
| Property adjacent to San Lucas Hospital | 5,090,000 |
| Codremar | 4,400,000 |
| Josefa Farm Rural Property (Parcel A) | 3,825,000 |
| Ruiz Soler Hospital | 2,470,000 |
| Acuaexpreso (Parcel B) - Local Water Ferry Transport | 2,400,000 |
| Josefa Farm Rural Property (Parcel C-4) | 1,500,000 |
| Former Luchetti School | 1,360,000 |
| Parklane | 700,000 |
| Guayanés Ward | 260,000 |
| Former Golf Range (Golfito) | 185,000 |
| **Total** | **$84,935,000** |

**Note**

(1) Certain deposits and loans are subject to further diligence and recategorization

**Schedule 6**

**Loans with Proceeds Assigned to Issuer**

| Entity | Balance post setoff ($) |
|---|---:|
| **Loans**[1] | |
| Special Communities Perpetual Trust (SCPT) | $244,101,838 |
| Cantera Peninsula Integral Development Company | 37,791,088 |
| Center for Municipal Revenue Collection (CRIM) | 26,860,126 |
| **Total** | **$308,753,051** |

**Note**

(1) Certain deposits and loans are subject to further diligence and recategorization

**Schedule 7**
**Public Entity Trust: Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
|---|---|
| **Public Entity Deposits[1]** | |
| Department of Treasury (General Obligation) | – |
| PR Infrastructure Financing Authority (PRIFA) | $180,824,482 |
| PR Tourism Development Fund (TDF) | 158,092,063 |
| PR Electric Power Authority (PREPA) | 114,108,013 |
| Special Communities Perpetual Trust | – |
| University of Puerto Rico (UPR) | 15,702,856 |
| Department of Labor and Human Resources | 81,532,322 |
| Special Fund for the Promotion of Health and Operational Safety | 48,510,039 |
| PR Highways and Transportation Authority (HTA)[2] | – |
| Puerto Rico State Insurance Fund (SIF) | 42,522,178 |
| Public Building Authority (PBA) | – |
| Land Administration | 38,491,359 |
| PR Tourism Company (PRTC) | 34,301,720 |
| Government Employees Retirement System | 32,909,266 |
| Comprehensive Fund for Agricultural Development of PR (FIDA) | – |
| Puerto Rico Public Private Partnerships Authority[3] | 20,341,824 |
| PR Sales Tax Financing Corporation (COFINA) | 26,113,021 |
| PR Industrial Development Company (PRIDCO) | – |
| PR Solid Waste Management Authority (SWMA) | – |
| PR Development Fund | 19,771,325 |
| PR Ports Authority (AP) | – |
| Public Finance Corporation (PFC) | 18,221,726 |
| The Children's Trust Fund (CTF) | 16,603,031 |
| Department of Agriculture | – |
| Department of Education | – |
| PR Land Authority | 13,682,621 |
| Institute of Puerto Rican Culture (IPRC) | 8,515,422 |
| 9-1-1 Service Governing Board | 11,312,586 |
| PR Aqueduct and Sewer Authority (PRASA) | – |
| Department of Housing | – |
| Department of Health | – |
| Electronic Lottery | 10,703,320 |
| AFICA | 9,493,214 |
| PR Integrated Transit Authority | 9,489,099 |
| Family Socioeconomic Development Administration | 6,325,525 |
| PR Energy Commission | 5,995,340 |
| Office of Management and Budget | – |
| Office for the Improvement of Public Schools (OMEP) | 5,071,300 |
| Municipal Finance Authority (MFA) | 4,796,689 |

**Schedule 7**
**Public Entity Trust: Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
|---|---|
| **Public Entity Deposits (cont'd)**[1] | |
| Higher Education Council | 4,390,073 |
| PREPA Pension System | 4,131,037 |
| Trade and Export Company | 3,085,482 |
| Telecommunications Regulatory Board | 2,898,608 |
| Department of Environmental and Natural Resources | 2,835,838 |
| Environmental Quality Board | 602,175 |
| PR Convention Center District Authority (PRCC) | – |
| Puerto Rico Higher Education Assistance Corporation | 2,394,595 |
| Department of Economic Development and Commerce | 1,933,888 |
| National Parks Company of Puerto Rico (NPCPR) | – |
| Office of Court Administration | – |
| Office for the Liquidation of the Accounts of the CRUV | 1,595,650 |
| Puerto Rico Senate | 1,572,533 |
| PR Maritime Shipping Authority | 1,242,664 |
| Department of the Family | 1,057,734 |
| Puerto Rico Health Insurance Administration (ASES) | – |
| Corporation for the Development of Exports | 897,405 |
| Roosevelt Roads Local Development Authority | 671,440 |
| Telephones of Puerto Rico | 633,558 |
| Puerto Rico National Guard | 460,064 |
| Puerto Rico Education Council | 446,196 |
| Family and Children's Administration | 438,151 |
| Consumer Protection Independent Office | 437,576 |
| Public Policy State Office of Energy Matters | 396,684 |
| Department of Justice | – |
| Public Housing Administration | 338,804 |
| Economic Development Bank | – |
| Model Forrest Office of Puerto Rico | 331,022 |
| Vocational Rehabilitation Administration | 231,820 |
| Child Care and Development Administration | 228,377 |
| Metropolitan Bus Authority (MBA) | 216,218 |
| Superintendent of the Capitol | – |
| Northwest Consortium | 178,362 |
| Institutional Trust of Puerto Rico's National Guard | 155,861 |
| Jose M. Berrocal Institute | 127,912 |
| Port Authority of Ponce | – |
| Sugar Corporation of Puerto Rico | 92,716 |
| State Elections Commission | 85,997 |
| Bayamon Judicial Center | 70,924 |
| Public Corporation for the Supervision and Insurance of PR Cooperatives | 66,177 |

**Schedule 7**
**Public Entity Trust: Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
|---|---|
| **Public Entity Deposits (cont'd)[1]** | |
| Carolina Judicial Center | 65,929 |
| Corporation for the Musical Arts | 59,467 |
| High Court of Caguas | 49,712 |
| Judicial Center of San Juan | 46,241 |
| PR Health Services Facilities Management | 40,185 |
| Northwest Consortium | 37,883 |
| Utuado Court | 28,014 |
| Court of First Instance of San Juan | 23,644 |
| Ponce Judicial Center | 22,231 |
| Court of Aibonito | 21,745 |
| General Court of Mayaguez | 20,184 |
| South East Consortium | 20,025 |
| Secretary of the Department | 18,873 |
| General Court of Guayama | 16,911 |
| Hotel Development Corporation | 15,017 |
| Office of the Comptroller of Puerto Rico | 14,019 |
| High Court of Aguadilla | 10,145 |
| Administration for the Training of Future Entrepreneurs and Workers | 9,956 |
| Court of First Instance | 9,748 |
| North Manati Consortium | 8,517 |
| Arecibo Judicial Center | 7,732 |
| Supreme Court of Puerto Rico | 7,238 |
| Maritime Transport Authority | 4,895 |
| A.T/V.Suarez | 3,018 |
| Office of the Panel on the Independent Prosecutor | 2,345 |
| Institute of Statistics of Puerto Rico | 1,814 |
| PR Art Museum | 1,340 |
| Southwest Consortium | 840 |
| Mayaguez Consortium - Las Marias | 481 |
| Yo Si Puedo Inc. | 336 |
| Poultry Products of the Caribbean | 275 |
| Indulac | 133 |
| South Central Consortium - ASIFAL | 106 |
| Center for Municipal Revenue Collection (CRIM) | − |
| Consortium La Montana | 50 |
| Integral Fund for Development | − |
| Equipco LLC | 3 |
| School of Plastic Arts | 2 |
| Puerto Rico Police | − |
| **Total** | **$1,023,142,067** |

**Schedule 7**

**Public Entity Trust: Public Entity Deposit Claims**

| Entity | Balance post setoff ($) |
| --- | --- |
| **Public Entity Deposits (cont'd)**[1] | |

**Notes**

(1) Certain deposits and loans are subject to further diligence and recategorization

(2) Includes $13m deposit in favor of Siemens pursuant to a guarantee from HTA

(3) Represents deposits held in escrow in connection with the Metropistas PR22/PR5 Public Private Partnership

**Schedule 8**
**Public Entity Trust: Collateral Detail**

| Entity | Balance post setoff ($) |
|---|---:|
| **Cash** | |
| **Total** | **$50,000,000** |
| | |
| **Collateral - Public Entity Loans**[1] | |
| PR Administration of Medical Services | $282,447,692 |
| Office of Management and Budget | 260,332,550 |
| PR Treasury Department (Hacienda) | 211,465,445 |
| PR Health Insurance Administration (ASES) | 182,197,247 |
| PR Comprehensive Cancer Center | 120,482,398 |
| Center for Municipal Revenue Collection (CRIM) | 111,832,989 |
| Department of Education | 91,580,469 |
| Department of Transportation and Public Works | 82,869,714 |
| Department of Correction and Rehabilitation | 82,488,844 |
| Agricultural Enterprises Development Administration | 61,797,848 |
| Department of Agriculture | 50,294,124 |
| Department of Justice | 49,493,959 |
| Police of Puerto Rico[2] | 47,108,240 |
| Office of Courts Administration | 32,405,848 |
| Department of Health | 29,860,922 |
| State Capitol Superintendence | 27,299,047 |
| University Medical Services | 11,246,786 |
| Department of Recreation and Sports | 9,327,980 |
| Economic Development Bank | 7,499,798 |
| National Parks Company of Puerto Rico | 7,049,130 |
| Department of Housing | 6,080,003 |
| Catastrophic Diseases Fund | 3,274,708 |
| Veteran's Attorney's Office | 292,133 |
| **Total** | **$1,768,727,875** |

**Notes**
(1) Certain deposits and loans are subject to further diligence and recategorization
(2) Includes adjustment for $15.4m overdraft balance

**Schedule 9**
**Municipal Loan Portfolio Forecast**

| Forecasted Proceeds | | | Balance ($) |
|---|---|---|---|
| **Date** | **New Interest** | **Amortization** | **Total** |
| 7/1/2017 | $40,430,357 | $106,214,440 | $146,644,797 |
| 1/1/2018 | 38,460,176 | - | 38,460,176 |
| 7/1/2018 | 38,460,176 | 98,184,680 | 136,644,856 |
| 1/1/2019 | 37,848,497 | - | 37,848,497 |
| 7/1/2019 | 37,848,497 | 91,450,474 | 129,298,971 |
| 1/1/2020 | 39,034,647 | - | 39,034,647 |
| 7/1/2020 | 39,034,647 | 89,828,260 | 128,862,907 |
| 1/1/2021 | 39,878,262 | - | 39,878,262 |
| 7/1/2021 | 39,878,262 | 92,740,792 | 132,619,054 |
| 1/1/2022 | 40,280,176 | - | 40,280,176 |
| 7/1/2022 | 40,280,176 | 94,699,545 | 134,979,721 |
| 1/1/2023 | 40,156,791 | - | 40,156,791 |
| 7/1/2023 | 40,156,791 | 99,233,921 | 139,390,711 |
| 1/1/2024 | 39,393,398 | - | 39,393,398 |
| 7/1/2024 | 39,393,398 | 99,166,886 | 138,560,284 |
| 1/1/2025 | 38,179,901 | - | 38,179,901 |
| 7/1/2025 | 38,179,901 | 101,049,386 | 139,229,287 |
| 1/1/2026 | 36,411,416 | - | 36,411,416 |
| 7/1/2026 | 36,411,416 | 102,259,525 | 138,670,941 |
| 1/1/2027 | 32,261,723 | - | 32,261,723 |
| 7/1/2027 | 32,261,723 | 98,309,753 | 130,571,476 |
| 1/1/2028 | 28,261,514 | - | 28,261,514 |
| 7/1/2028 | 28,261,514 | 100,493,693 | 128,755,208 |
| 1/1/2029 | 24,124,545 | - | 24,124,545 |
| 7/1/2029 | 24,124,545 | 92,156,545 | 116,281,090 |
| 1/1/2030 | 20,331,523 | - | 20,331,523 |
| 7/1/2030 | 20,331,523 | 91,760,588 | 112,092,111 |
| 1/1/2031 | 16,572,138 | - | 16,572,138 |
| 7/1/2031 | 16,572,138 | 88,730,748 | 105,302,885 |
| 1/1/2032 | 12,902,609 | - | 12,902,609 |
| 7/1/2032 | 12,902,609 | 79,593,318 | 92,495,927 |
| 1/1/2033 | 9,477,828 | - | 9,477,828 |
| 7/1/2033 | 9,477,828 | 60,965,577 | 70,443,405 |
| 1/1/2034 | 6,661,748 | - | 6,661,748 |
| 7/1/2034 | 6,661,748 | 51,369,836 | 58,031,585 |
| 1/1/2035 | 4,239,098 | - | 4,239,098 |
| 7/1/2035 | 4,239,098 | 37,511,484 | 41,750,582 |
| 1/1/2036 | 2,469,767 | - | 2,469,767 |
| 7/1/2036 | 2,469,767 | 25,445,904 | 27,915,671 |
| 1/1/2037 | 1,274,065 | - | 1,274,065 |

**Schedule 9**
**Municipal Loan Portfolio Forecast**

| Forecasted Proceeds | | | Balance ($) |
|---|---|---|---|
| Date | New Interest | Amortization | Total |
| 7/1/2037 | 1,274,065 | 14,728,368 | 16,002,433 |
| 1/1/2038 | 575,717 | - | 575,717 |
| 7/1/2038 | 575,717 | 11,222,226 | 11,797,943 |
| 1/1/2039 | 44,036 | - | 44,036 |
| 7/1/2039 | 44,036 | 867,546 | 911,582 |
| 1/1/2040 | 4,265 | - | 4,265 |
| 7/1/2040 | 4,265 | 121,868 | 126,133 |

## <u>EXHIBIT B</u>

**FORM OF JOINDER AGREEMENT FOR SUPPORTING BONDHOLDERS**

This Joinder Agreement to the Restructuring Support Agreement, dated as of [_____], 201[ ] (as amended, supplemented or otherwise modified from time to time, the "**Restructuring Support Agreement**"), between the Government Development Bank for Puerto Rico ("**GDB**") and the holders of the principal amounts outstanding under the Trust Agreement (together with their respective successors and permitted assigns, the "**Supporting Bondholders**" and each, a "**Supporting Bondholder**") is executed and delivered by _____ (the "**Joining Party**") as of _____, 201[ ]. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Restructuring Support Agreement.

1. **Agreement to Be Bound**.  The Joining Party hereby agrees to be bound by all of the terms of the Restructuring Support Agreement, a copy of which is attached to this Joinder Agreement as **Annex I** (as the same has been or may be hereafter amended, restated, or otherwise modified from time to time in accordance with the provisions hereof).  The Joining Party shall hereafter be deemed to be a "Supporting Bondholder" and a "Party" for all purposes under the Restructuring Support Agreement and with respect to any and all Claims held by such Joining Party.

2. **Representations and Warranties**.  With respect to the aggregate principal amount of GDB Bonds set forth below its name on the signature page hereto, the Joining Party hereby makes the representations and warranties of the Supporting Bondholders set forth in <u>Section 8</u> of the Restructuring Support Agreement to each other Party to the Restructuring Support Agreement.

3. **Governing Law**.  This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflict of laws provisions which would require the application of the law of any other jurisdiction.

*[Signature page follows.]*

IN WITNESS WHEREOF, the Joining Party has caused this Joinder to be executed as of the date first written above.

**[SUPPORTING BONDHOLDER]**


By:_____
Name:
Title:


[Principal Amount of [Series] GDB Bonds:  $_____]




Notice Address:


_____
_____
_____
Fax: _____
Attention: _____
Email: _____

Acknowledged:

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**


By:_____
Name:
Title:

## Exhibit C

## GDB Transaction - Target Timeline

| Event | Description | Target Timeline | Total Elapsed Time | Target Date |
|---|---|---|---|---|
| Submission Date | GDB to submit all documents to the Oversight Board necessary for certification of the Plan as a Qualifying Modification. | 30 Days from signing of RSA | 30 days | June 15, 2017 |
| Certification Date | Oversight Board to consider certification of the Plan as a Qualifying Modification pursuant to section 601(g) of PROMESA. | 10 days from Submission Date | 40 days | June 25, 2017 |
| Solicitation Completion Date | GDB to complete solicitation of the Plan pursuant to section 601(h) of PROMESA. | 30 days from the Certification Date. | 70 days | July 25, 2017 |
| Board Approval Date | Oversight Board to consider the certification required under section 601(m)(1)(B) of PROMESA. | 5 days from the Solicitation Completion Date | 75 days | July 30, 2017 |
| District Court Approval Date | District Court to consider approving the Plan pursuant to section 601(m)(1)(D) of PROMESA. | 30 days from Board Approval Date | 105 days | August 30, 2017 |
| Effective Date of the Plan | Plan effective date. | 15 days from District Court Approval Date | 120 days | September 15, 2017 |

## Schedule A

**CONFIDENTIAL**

**GDB CUSIP List**                                **FOR SETTLEMENT PURPOSES ONLY**

| CUSIP | Maturity | Amount ($m)[1] | Coupon (%) |
|---|---|---|---|
| 745177CH | 12/1/2016 | $19.2 | 5.000 |
| 745177CJ | 12/1/2017 | 10.6 | 5.000 |
| 745177EN | 8/1/2020 | 433.7 | 5.500 |
| 745177EP | 8/1/2025 | 151.3 | 5.750 |
| 745177ET | 8/1/2019 | 217.7 | 5.400 |
| 745177EU | 8/1/2025 | 96.4 | 5.750 |
| 745177EX | 5/1/2016 | 360.0 | 4.704 |
| 745177FB | 8/1/2017 | 226.9 | 4.150 |
| 745177FC | 8/1/2019 | 174.5 | 4.500 |
| 745177FD | 8/1/2021 | 142.6 | 4.900 |
| 745177FE | 8/1/2022 | 47.5 | 4.950 |
| 745177FF | 8/1/2023 | 540.7 | 5.000 |
| 745177FH | 8/1/2026 | 126.8 | 5.200 |
| 745177FK | 8/1/2018 | 317.9 | 4.350 |
| 745177FM | 2/1/2017 | 250.0 | 3.875 |
| 745177FN | 2/1/2019 | 500.0 | 4.375 |
| 745177GG | 5/1/2017 | 40.0 | 4.704 |
| GDB Senior Guaranteed Notes | | 110.0 | 8.000 |
| | | **$3,765.9** | |

**Source:** Bloomberg
**Note:**
1) Includes missed principal payments