# Exhibit Q

**AMENDMENTS TO THE ENGLISH VERSION OF THE GDB RESTRUCTURING ACT**

STATEMENT OF MOTIVES

Government Development Bank for Puerto Rico ("GDB" or the "Bank") played an important role in Puerto Rico's modern history as the fiscal agent and financial advisor to the Government, principal depositary of public funds, and an important source of financing for government entities. However, Puerto Rico's fiscal and economic situation and the mistakes of past administrations led GDB to insolvency. When we assumed the reigns of the Government of Puerto Rico last year, we found GDB in a precarious economic situation and, after a careful analysis of all available alternatives, we concluded that the best alternative to protect the interests of all interested parties was to restructure GDB's debts through a consensual agreement with its creditors and proceed with an orderly wind-down of the Bank.

To that end, since the beginning of last year, Governor Ricardo Rosselló Nevares requested that his teams at GDB and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") work on developing a consensual solution with all of the parties affected by the serious financial situation of GDB. Since then, Governor Rosselló Nevares's team has worked tirelessly to find a sensible and consensual solution. The fruit of this work and the leadership of the Governor resulted in a consensual agreement between GDB and a majority of its financial creditors to restructure the financial obligations of GDB through Title VI of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA").

In August of last year, this Legislative Assembly enacted Act 109-2017, which created the legal framework for the restructuring of the Bank's financial obligations pursuant to the agreement with its creditors. However, less than a month after the approval of this law, our island suffered the onslaught of Hurricane María, one of the most devastating hurricanes in history. The impact of Hurricane María significantly altered the fiscal and economic situation of the Government of Puerto Rico, its public corporations, instrumentalities and municipalities. As a result, we were required to return to the negotiating table to renegotiate the GDB debt restructuring agreement in order to obtain more favorable terms for government entities, which are, at the same time, debtors of GDB under its portfolio of loans and creditors of GDB by virtue of their deposits at GDB.

After months of negotiations, we have reached a new agreement with a majority of the financial creditors of the GDB, which is more favorable for the Government of Puerto Rico than that of last year. In particular, the new agreement will provide significant financial relief to municipalities, as it authorizes the offset of municipal loans and deposits. This will result in a significant reduction of the municipalities' debts with GDB and will provide cash-flow relief to municipalities in the short-term. In addition, recognizing the difficult situation faced by some municipalities after the passage of Hurricane María, the new agreement allows for the disbursement, before the closing date of the GDB debt restructuring transaction, of 55% of the excess special additional tax (the "Excess CAE") to such municipalities that have Excess CAE at GDB that has not yet been disbursed. This way, such municipalities will not have to wait until the closing date of the transaction to obtain said funds.

The changes to the restructuring agreement that were negotiated by GDB and AAFAF will significantly benefit government entities and, in particular, municipalities. However, such

changes are not possible under the current legal framework, since they require amendments to Act 109-2017. As a result, this legislation introduces the necessary technical amendments to allow for the implementation of GDB's new debt restructuring agreement.

**BE DECREED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:**

Article 1.- Article 103 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 103.- Definitions.

The following terms shall have the meanings stated below:

...

(c) "Additional Recovery Authority Loan" – means any GDB Retained Loan that GDB shall be required to transfer to the Recovery Authority after the Closing Date pursuant to the terms of the Qualifying Modification.

(d) "Ancillary Agreements"– means the Bond Indenture, the Transfer Agreement, the Servicing Agreement, and any other agreement or instrument entered into by the Recovery Authority, GDB or the Indenture Trustee in connection with, or in furtherance of, the Restructuring Transaction and in accordance with, or in furtherance of, the Qualifying Modification.

(e) "Approved Purchaser"– means a Person that is (i) a private or public bank operating in Puerto Rico that holds, or held at any time since the effective date of this Act, bonds, notes or loans issued by Puerto Rico municipalities or (ii) otherwise approved by AAFAF or another agent designated by the Government of Puerto Rico, which entity may take into account the public policy goals of the Government of Puerto Rico, which approval shall not be unreasonably withheld (taking into account such public policy goals) if so requested.

(f) ...

(g) ...

(h) "Beneficial Interest"– means, with respect to any asset or cause of action, the beneficial interest therein, and the right to receive the proceeds (net of expenses associated with realizing such proceeds) thereof, in each case, after giving effect to the rights of GDB as set forth herein; provided that GDB shall have no duty to pursue any cause of action on account of a beneficial interest therein and shall have the absolute discretion to settle, offset against claims of GDB, or release such cause of action.

(i) ...

(j) ...

(k) "Bond Indenture"– means one or more trust agreements, bond indentures and any supplements thereto, or similar contracts or agreements, entered into by the Recovery Authority and the Indenture Trustee pursuant to which Restructuring Bonds are issued, establishing the rights and responsibilities of the Recovery Authority and of the holders of Restructuring Bonds issued thereunder and secured thereby, and confirming the statutory lien created pursuant to Article 402 of this Act in the Restructuring Property in favor of the Restructuring Bonds.

(l) "Budget" – shall have the meaning provided in Section 5(4) of PROMESA.

(m) ...

(n) …

(o) "Collateral Monitor" – means the Person retained by the Indenture Trustee to act as the collateral monitor pursuant to and in accordance with the Ancillary Agreements.

(p) "Designated Depositors"– means the Non-Municipal Government Entities having claims in respect of funds on deposit at GDB as of the Closing Date (including federal funds, as determined by AAFAF), after giving effect to the transactions set forth in Article 501 of this Act, and the municipalities having claims in respect of federal funds on deposit at GDB, as determined by AAFAF.

(q) …

(r) …

(s) …

(t) …

(u) …

(v) …

(w) "Financing Costs"– means all costs associated with the Restructuring Transaction, including, without limitation, the costs, fees and expenses to (i) issue, service, repay or refinance the Restructuring Bonds, whether such costs are incurred upon issuance of such Restructuring Bonds or over the term of the Restructuring Bonds, including, without limitation, any interest paid in kind, (ii) make payments as required by the Ancillary Agreements, (iii) pay any stamp, issuance or similar taxes and other charges related to the Restructuring Transaction, provided, that this provision does not limit in any way the exemption from taxes set forth in Articles 209 and 306 hereof, (iv) prepare for and enter into the Restructuring Transaction, (v) protect the Restructuring Property, including, without limitation, any collection, enforcement, sale, monitoring, protection, or settlement actions related to the Restructuring Property, (vi) confirm and protect the statutory lien on the Restructuring Property in favor of the Restructuring Bonds, in accordance with Article 402 of this Act, and (vi) perform all ongoing activities relating to the Restructuring Transaction. For the avoidance of doubt, Financing Costs also includes pre-closing and post-closing administrative fees and expenses incurred in connection with all Ancillary Agreements.

(x)      "Fiscal Plan" – shall have the meaning provided in Section 5(10) of PROMESA.

(y) …

(z) …

(aa) "GDB Fiscal Plan"– means the Fiscal Plan for GDB certified by the Oversight Board on July 12, 2017, as the same may be amended or revised from time to time.

(bb)     "GDB Retained Loan" – means any Non-Municipal Loan that GDB shall retain and not transfer to the Recovery Authority or the Public Entity Trust on the Closing Date pursuant to the Qualifying Modification.

(cc) …

(dd) …

(ee) …

(ff)     "Keepwell Agreement" – means the agreement entered into by GDB and the Recovery Authority pursuant to Article 406 of this Act.

(gg) …

(hh)   "Municipal Loan" – means any loan by GDB to a municipality evidenced by bonds, notes, interim receipts, or any other evidence of indebtedness, and advances made to a municipality pursuant to applicable law, in each case, that is outstanding as of the Closing Date.

(ii) …

(jj)   "Non-Municipal Loan" – means any loan by GDB to a Non-Municipal Government Entity evidenced by bonds, notes, interim receipts, or any other evidence of indebtedness, in each case, that is outstanding as of the Closing Date.

(kk) …

(ll) …

(mm) …

(nn) …

(oo) …

(pp) …

(qq) …

(rr) "Qualifying Modification"– means the Restructuring Support Agreement dated as of May 15, 2017 and certified by the Oversight Board as a Qualifying Modification under Section 601(g)(2)(A) of PROMESA, as the same may be amended from time to time in accordance with its terms.

(ss) …

(tt)  "Recovery Authority Assets"– means all legal and equitable right, title and interest in and to: (i) all assets of GDB that are in existence as of the Closing Date (other than Excluded Assets), including any assets of GDB (other than Excluded Assets) that are in existence as of the Closing Date but are identified after the Closing Date; (ii) the Beneficial Interest in, and the proceeds of, the GDB Retained Loans; (iii) upon the date on which GDB is required pursuant to the Qualifying Modification, or chooses at its option, to transfer any GDB Retained Loan to the Recovery Authority, such loan to be transferred; (iv) the Beneficial Interest in, and the proceeds, if any, of any causes of action of GDB (other than causes of action to enforce loans that constitute Public Entity Trust Assets), including contingent or unknown causes of action; and (v) all proceeds of the foregoing.

 (uu) "Residual Participating Bond Claims"– means the contingent claims against GDB to be provided for pursuant to the Keepwell Agreement, as provided in Article 406 of this Act.

(vv) …

(ww) "Restructuring Property"– means all legal and equitable right, title and interest in and to the Recovery Authority Assets (including, without limitation, the Beneficial Interest in property of GDB, the proceeds of which are required to be transferred to the Recovery Authority in connection with the Restructuring Transaction pursuant to the terms of the Qualifying Modification) and all assets, collections, fees, charges, proceeds, revenues, rents, insurance payments, income or other funds generated by, or received by the Recovery Authority, any Asset Manager or GDB in respect of the Recovery Authority Assets, including in respect of the administration or reinvestment thereof.

(xx) …

(yy) …

(zz) …

(aaa) "Transfer Agreement"– means one or more transfer or similar contracts or agreements entered into by GDB and the Recovery Authority, which shall document the irrevocable transfer, pursuant to Article 404 of this Act and the Qualifying Modification, by GDB to the Recovery Authority of all legal and equitable right, title and interest in and to the Recovery Authority Assets."

Article 2.- Article 201 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 201.- Creation of the Recovery Authority.

The GDB Debt Recovery Authority is hereby created as a statutory public trust and a governmental instrumentality of the Commonwealth of Puerto Rico, independent and separate from any other Government Entity (including, without limitation, GDB). The Recovery Authority and its existence shall continue until one year and one day after all Restructuring Bonds, Financing Costs and other indebtedness of the Recovery Authority have been paid in cash in full or otherwise discharged pursuant to their terms. Upon the dissolution of the Recovery Authority, and only after the Restructuring Bonds, Financing Costs and other indebtedness of the Recovery Authority have been paid in cash in full or otherwise discharged pursuant to their terms, any remaining Restructuring Property shall be distributed to the Public Entity Trust on account of the residual equity interest in the Recovery Authority granted to the Public Entity Trust under Article 302 of this Act. Upon the dissolution of the Public Entity Trust, and only after all liabilities of the Public Entity Trust shall have been paid in cash in full or otherwise discharged, any remaining assets of the Public Entity Trust shall be transferred to the Commonwealth of Puerto Rico, as the ultimate beneficiary of the Recovery Authority and the Public Entity Trust."

Article 3.- Article 203 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 203.- Purpose of the Recovery Authority.

The Recovery Authority is created for the purpose of (1) issuing the Restructuring Bonds in order to (a) implement the Restructuring Transaction, (b) facilitate compliance with the GDB Fiscal Plan, and (c) facilitate the funding of essential government or public services by the Government of Puerto Rico, (2) owning and managing the Restructuring Property, and (3) granting the residual equity interest in the Recovery Authority to the Public Entity Trust. The Recovery Authority is created and constituted to exercise essential government and public functions and the performance by the Recovery Authority of the activities and powers granted hereby shall be considered and constitute an essential function of the Commonwealth of Puerto Rico for the good of the people of Puerto Rico. The Recovery Authority is not created or organized, and its operations shall not be conducted, for the purpose of making a profit, and no part of the revenues or assets of the Recovery Authority shall inure to the benefit of or be distributable to any private person or entity, except to service and pay the Restructuring Bonds and pay fees and costs for actual services rendered as herein provided or as otherwise required to carry out the intent of this Act."

Article 4.- Article 204 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 204.-Recovery Authority's Activities.

The Recovery Authority's activities shall be limited to the following Authorized Activities:

...

(f) Subject to Article 207 of this Act, collecting, receiving, owning, enforcing, monitoring, selling and protecting the Restructuring Property or otherwise authorizing any of the foregoing, in accordance with the Ancillary Agreements and for the sole purpose of realizing on, or preserving, the value of the Restructuring Property or the proceeds therefrom, including, without limitation, by initiating necessary legal action;

(g) ...

(h) entering into contracts and taking any other necessary or convenient actions with respect to realizing maximum value of the Restructuring Property, subject to Article 207 of this Act, including related to the collection, enforcement, sale, monitoring, protection, forbearance or settlement thereof consistent with the terms of the Ancillary Agreements;

(i) ...

..."

Article 5.- Article 205 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 205.-Ancillary Powers.

...

(a) Sue and be sued in any state or federal court (including with respect to any matter related to the Restructuring Transaction);

(b) ...

...

(f) have complete legal and equitable dominion over its properties (including the Restructuring Property), subject to Article 207 of this Act;

(g)...

(h) appoint and remove officers, agents, employees and contractors, establish their compensations, powers and duties, in each case, in accordance with the Ancillary Agreements;

...

(k) invest funds and establish and maintain reserves and apply the Restructuring Property as required by, and pursuant to standards set forth in, the Ancillary Agreements;

(l) ...

...

(n) exercise such other powers, not inconsistent herewith, as may be necessary to carry out the Authorized Activities;

(o)  take any action or measure necessary or convenient to carry out its purposes and exercise the powers expressly granted in this Article;

(p) delegate to its officers, agents, employees or contractors (including, without limitation, the Asset Manager and the Collateral Monitor) authority to take actions in furtherance of this Act; and

(q) …"

Article 6.- Article 206 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 206.-Prohibited Activities.

…

(e) dissolve, liquidate, transfer or sell any or all of the Restructuring Property, except as permitted under this Act and the Ancillary Agreements; and

(f) …"

Article 7.- Articles 207 to 209 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, are hereby renumbered as Articles 208 to 210, respectively, and a new Article 207 is hereby added to read in its entirety as follows:

Article 207.- Management of the Restructuring Property.

(a)    The Recovery Authority and the Asset Manager (on behalf of the Recovery Authority) shall have all rights and powers of GDB in respect of the Municipal Loans, as of immediately prior to the Closing Date, except (i) that the Recovery Authority and the Asset Manager may transfer, assign or sell the Municipal Loans only to an Approved Purchaser and (ii) as provided in item (g) below.

(b)    The Recovery Authority and the Asset Manager (on behalf of the Recovery Authority) shall have the right to exercise remedies in respect of the Non-Municipal Loans, but solely to the extent necessary to assure that funds that are available for debt service from the obligors under such Non-Municipal Loans, in accordance with and pursuant to the applicable loan documents, Fiscal Plans, if any, and Budgets, if any, are applied to such Non-Municipal Loans in accordance with the legal priority, security or other pledge rights benefiting such Non-Municipal Loans. Furthermore, the Recovery Authority and the Asset Manager (on behalf of the Recovery Authority) shall have all rights and powers to exercise remedies necessary to preserve, protect or defend any security or other pledge rights benefiting such Non-Municipal Loans. In furtherance of the foregoing, for any Non-Municipal Loan where the obligor is in a proceeding under Title III or Title VI of PROMESA and such obligor has other creditors that have the same legal priority, security or pledge rights as the Recovery Authority, the Recovery Authority and the Asset Manager (on behalf of the Recovery Authority) shall have all rights and powers to exercise remedies necessary to ensure that the Recovery Authority receives treatment in such proceedings that is the same as that provided to other creditors that have the same legal priority, security or pledge rights.

(c)    The Recovery Authority and the Asset Manager (on behalf of the Recovery Authority) may transfer, assign, sell or otherwise dispose of the Non-Municipal Loans and the real estate assets that are part of the Restructuring Property or interests in such assets without the consent of AAFAF or any other agent of the Commonwealth provided

that such sale is consistent with the servicing standards set forth in the Servicing Agreement.

(d)     Neither the Recovery Authority nor the Asset Manager may enter into any material modification, extension, accommodation or disposition of any Restructuring Property unless the Collateral Monitor has been given notice of such transaction and has not objected to such transaction in accordance with the Ancillary Agreements.

(e)     Any modification by GDB of the Additional Recovery Authority Loans shall be consistent with and approved pursuant to the terms of the Qualifying Modification.

(f)     None of the Recovery Authority, the Asset Manager, or any other Person (other than GDB) shall have the right to commence or direct any litigation or other enforcement action in respect of, or sell, transfer or dispose of the causes of action referenced in clause (iv) of the definition of "Recovery Authority Assets."

(g)     None of the Recovery Authority, the Asset Manager, or any other Person shall have the right to unilaterally increase the interest rates on the Municipal Loans and Non-Municipal Loans that are part of the Restructuring Property, and such loans shall continue to bear interest at the applicable fixed or variable rates in effect on the Closing Date, as such rates are certified by GDB and AAFAF.

(h)     The Indenture Trustee (upon the occurrence and during the continuance of an event of default under the Bond Indenture or as otherwise provided therein) and any subsequent holder of any Restructuring Property (upon the sale or transfer of any such Restructuring Property pursuant to the Servicing Agreement) shall be subject to all limitations (including the limitations on the exercise of remedies set forth in this Article 207) applicable to the Recovery Authority and the Asset Manager and, unless otherwise contractually limited, shall have all rights and remedies in respect of the Restructuring Property to the same extent as the Recovery Authority and the Asset Manager except that neither the Indenture Trustee nor any subsequent holder of any Restructuring Property shall be bound by the standards set forth in the Servicing Agreement or be required to obtain the Collateral Monitor's consent to dispose of the Restructuring Property or any interest in such assets.

(i)     All transfers, assignments, sales and other dispositions of the Restructuring Property or any interest in such assets that are otherwise consistent with the provisions of this Article 207 are hereby exempt from recordation in the Office of the Comptroller of Puerto Rico and all legal requirements applicable to a Government Entity regarding the authority to sell its real estate or other assets.

Article 8.- Article 208 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, as renumbered herein, is hereby amended to read as follows:

"Article 208.- Board of Trustees.

…

(a)     Composition of the Board of Trustees.

The Board of Trustees shall be composed of three (3) members, who shall meet the requirements set forth in Article 208 (b) (iii) of this Act and shall be appointed by, and serve at the pleasure of, the Governor of Puerto Rico.

(b)   General Provisions Regarding the Board of Trustees

(i) …

(ii) …

(iii) each member of the Board of Trustees shall satisfy the independence and qualification standards (including that no member of the Board of Trustees may be an officer, employee or director of any Government Entity) set forth in the Qualifying Modification and the Ancillary Agreements;

(iv) …

(v)…

(c)   Vacancies.

In the event of a vacancy in the office of a member of the Board of Trustees by death, removal, resignation or otherwise, a successor member who meets the requirements set forth in Article 208 (b) (iii)  of this Act shall be appointed by, and shall serve at the pleasure of, the Governor of Puerto Rico.

(d)      …

…"

Article 9.- Article 210 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, as renumbered herein, is hereby amended to read as follows:

"Article 210.– Inapplicability of Certain Laws.

…

(a)    Chapters 4 and 5 of Act 26-2017, as amended, known as the "Fiscal Plan Compliance Act";

(b)      …

…

(e)    Act 8-2017, as amended, known as the "Act for the Transformation of the Government's Human Resources";

(f)      …

(h)Act. 78-2011, as amended, known as the "Electoral Code of Puerto Rico for the XXI Century"

…

(j) Plan 3-2011, as amended, known as "General Services Reorganization Plan"

(k)    Act 230 of July 23, 1974, as amended, known as the "Government Accounting Act";

(l)     Act 3-2017, known as the "Law to Address the Economic, Fiscal and Budgetary Crisis and Ensure the Functioning of the Government of Puerto Rico"; and

(m)     Act No. 14 of April 17, 1972, as amended."

Article 10.- Article 302 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby repealed and a new Article 302 is hereby added to read in its entirety as follows:

"Article 302.– Residual Equity Interest in the Recovery Authority.

Effective as of the Closing Date, the Public Entity Trust is hereby granted a residual equity interest in the Recovery Authority, pursuant to which it shall receive a distribution of the remaining assets of the Recovery Authority, if any, after the Restructuring Bonds, Financing Costs and other indebtedness of the Recovery Authority have been paid in cash in full or otherwise discharged pursuant to the terms of the Ancillary Agreements. The Public Entity Trust shall have no rights or remedies in respect of such residual equity interest other than the right to a distribution, if any, upon the dissolution of the Recovery Authority, in accordance with this Act and the Ancillary Agreements."

Article 11.- Article 305 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 305.– Distribution of Public Entity Trust Assets.

The Public Entity Deed of Trust shall set forth the manner in which the Public Entity Trust Assets and any other funds or assets transferred or received, or to be transferred or received by the Public Entity Trust shall be distributed among the Designated Depositors, and shall establish the priority of payment and allocation among the Designated Depositors (including with respect to claims identified by AAFAF as corresponding to federal funds)."

Article 12.- Article 401 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"Article 401.– Issuance of the Restructuring Bonds.

…

(b) The Restructuring Bonds may be issued from time to time pursuant to the Bond Indenture under the terms and conditions authorized by the Recovery Authority and set forth in the Restructuring Resolution.

(c)     The Restructuring Bonds shall be dated, shall bear interest at such rate and shall mature at such time or times, not less than one (1) year and not exceeding twenty-five (25) years from their date or dates of issuance, as may be determined by the Recovery Authority and authorized in the Restructuring Resolution in accordance and consistent with the Qualifying Modification. The Recovery Authority shall determine the form of the Restructuring Bonds and the manner of execution of the Restructuring Bonds, and shall fix the denomination or denominations of the Restructuring Bonds and the place or places of payment of principal thereof and interest thereon and the other terms thereof, all in accordance and consistent with the Qualifying Modification.

(d) …

…"

Article 13.- Article 403 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"Article 403.- Authorization of Actions by GDB and the Recovery Authority.

Notwithstanding any provision of the GDB Enabling Act or of any other act of the Government of Puerto Rico, on and after the Effective Date, GDB or the Recovery Authority, as the case may be, shall be authorized to: (i) irrevocably transfer the Recovery Authority Assets to the Recovery Authority,  subject to the statutory lien created pursuant to Article 402 of this Act; (ii) issue the Restructuring Bonds to the holders of the Participating Bond Claims; (iii) provide for the cancellation and extinguishment of the Participating Bond Claims upon the exchange of the Restructuring Bonds for the Participating Bond Claims; (iv) transfer the Public Entity Trust Assets to the Public Entity Trust in consideration for the assumption by the Public Entity Trust of the Designated Deposits; (v) pay the Financing Costs in accordance with the terms of the Qualifying Modification; (vi) provide for the Residual Participating Bond Claims; (vii) confirm the statutory lien on the Restructuring Property created pursuant to Article 402 of this Act; (viii) enter into agreements governed by the laws of Puerto Rico or any other jurisdiction in the United States of America; and (ix) take any and all other actions necessary or convenient to carry out the Restructuring Transaction. GDB is also hereby authorized and directed to transfer to the Recovery Authority sufficient funds for it to cover its operating and organizational expenses prior to the Closing Date."

Article 14.- Article 404 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"Article 404.- Transfer of the Recovery Authority Assets.

(a) The Recovery Authority Assets shall be transferred by GDB to the Recovery Authority, on the Closing Date and from time to time thereafter, in accordance with the Transfer Agreement, the other Ancillary Agreements and the Qualifying Modification. Each transfer of the Recovery Authority Assets by GDB to the Recovery Authority shall be an irrevocable, non-voidable and absolute transfer of all of GDB's legal and equitable right, title and interest (as a true sale), and not a pledge or other financing, of the Recovery Authority Assets. On the Closing Date, the holders of Participating Bond Claims, whether or not outstanding on such date, and all other creditors of GDB (including depositors), shall, immediately and forever, and without further actions or documentation, cease to have any right, interest or claim (other than the Residual Participating Bond Claim) against GDB or any of its assets, or any successors or assigns thereof (other than the Recovery Authority). For the avoidance of doubt, the foregoing shall not affect the statutory lien created pursuant to Article 402 of this Act.

(b) The transfer of the Recovery Authority Assets by GDB to the Recovery Authority, as authorized by the Qualifying Modification, shall be valid, irrevocable, non-voidable and binding. Such transfer is made in good faith for fair consideration and reasonably equivalent value, and in furtherance of the public purposes of this Act, and shall not constitute a transfer in violation of the GDB Enabling Act, the Municipal Financing Act, Articles 1243, 1244 and 1249 of the Puerto Rico Civil Code or any analogous

provision or other legal theory or of the terms of any of the Recovery Authority Assets. Upon the Closing Date and any subsequent transfers, respectively, the Recovery Authority Assets shall vest in the Recovery Authority free and clear of all claims (other than for valid liens and encumbrances existing as of the effective date of this Act or that arise in the ordinary course of business after the effective date of this Act and are existing as of the Closing Date, in each case with respect to any real estate assets and any personal property assets related thereto that are part of the Restructuring Property) except for claims by the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds.

(c) …

…"

Article 15.- Article 405 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"Article 405.- Right to Apply for the Appointment of a Receiver.

Upon the occurrence of an event of default under the Ancillary Agreements and the continuation of such event of default for a period of thirty (30) days or as otherwise provided in the Ancillary Agreements, any holder or holders of the Restructuring Bonds (subject to any contractual limitation as to a specific percentage of such holders), or the Indenture Trustee, shall have the right to apply to any Commonwealth or Federal court of competent jurisdiction in Puerto Rico for the appointment of a receiver for the Recovery Authority. Subject to any limitation provided by the Ancillary Agreements, the receiver so appointed shall have, hold, use, operate, manage, and control the property of the Recovery Authority, including the Restructuring Property, and shall exercise all the rights and powers of the Recovery Authority with respect to such property as the Recovery Authority itself might do. The receiver shall act under the direction and supervision of the court and shall at all times be subject to the orders and decrees of the court and may be removed thereby."

Article 16.- Article 406 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"Article 406.- Residual Participating Bond Claim.

GDB and the Recovery Authority will enter into a Keepwell Agreement, effective as of the Closing Date, establishing the obligations of GDB and the rights and remedies, in limited circumstances, of the Recovery Authority, the Indenture Trustee and the holders of the Restructuring Bonds. In particular, under the Keepwell Agreement, GDB will agree that if any Restructuring Property is returned or conveyed to GDB for any reason after the Closing Date, or if the transfer thereof to the Recovery Authority is deemed invalid or void for any reason, GDB shall take all necessary steps to retransfer or reconvey such Restructuring Property to the Indenture Trustee for the benefit of the holders of the Restructuring Bonds. In addition, under the Keepwell Agreement, if any legislative action or determination by a court of competent jurisdiction causes the Qualifying Modification, the Restructuring Bonds or the rights or liens of the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds in respect of the Restructuring Property to be impaired, rescinded, avoided or otherwise rendered not enforceable in accordance with their terms, the holders of the Restructuring Bonds shall have a claim against GDB in an amount such that, after giving effect to such claims and any

distributions thereon, such holder of Restructuring Bonds will be fully compensated for any damages and losses resulting therefrom.

The Indenture Trustee, for the benefit of the holders of the Restructuring Bonds, and the holders of the Restructuring Bonds (subject to any limitations set forth in the Keepwell Agreement) shall be entitled to enforce the provisions of the Keepwell Agreement, notwithstanding the rescission, avoidance or other unenforceability of the Qualifying Modification, the Restructuring Bonds or the rights or liens of the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds in respect of the Restructuring Property or the Restructuring Bonds."

Article 17.- Article 407 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 407.- Government of Puerto Rico Non-Impairment Covenant.

The Government of Puerto Rico hereby agrees and covenants with any Person that acquires the Restructuring Bonds that it will not, and no Government Entity shall be authorized to, impair, limit, restrict, rescind, delay or modify the rights or powers of the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds under this Act or under or in respect of the Restructuring Property, or the Recovery Authority's ability to meet its obligations to its bondholders until the Restructuring Bonds, together with the interest thereon, and all amounts and obligations under Ancillary Agreements, have been completely paid in cash in full or otherwise discharged in accordance with their terms; provided, however, that any actions or omissions by the Government of Puerto Rico or by any Government Entity relating to appropriations or funding pursuant to a Fiscal Plan shall not be deemed to be a violation of this Article 407. The Government of Puerto Rico further agrees and covenants that no amendment to this Act shall impair, limit, restrict, delay or modify any obligation or commitment of (i) the Recovery Authority to the holders of the Restructuring Bonds or (ii) GDB to the holders of the Residual Participating Bond Claims."

Article 18.- A new Article 408 is hereby added to Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, to read in its entirety as follows:

"Article 408.- Prohibition on Issuance of Additional Financial Indebtedness by GDB.

Notwithstanding Article 2, Section Third (I) of the GDB Enabling Act, on and after the Closing Date, GDB shall be prohibited from incurring indebtedness evidenced by loans, notes, bonds or other similar instruments. "

Article 19.- The title of Chapter 5 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"CHAPTER 5: RECALCULATION OF *CERTAIN GOVERNMENTAL* OBLIGATIONS AND PAYMENTS TO MUNICIPALITIES"

Article 20.- Article 501 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act is hereby amended to read as follows:

"Article 501.- Recalculation of Certain Governmental Obligations.

(a)     Notwithstanding any other law of the Government of Puerto Rico (including, without limitation, the Municipal Financing Act, as amended pursuant to this Act), the principal amount of any bond, note and/or loan of any municipality of the Government of Puerto Rico held by GDB shall be automatically reduced by operation of law as of the Closing Date by an amount equal to the balance of any proceeds of such bond, note and/or loan that were not disbursed to such municipality and are held on deposit at GDB on the Closing Date pursuant to the Municipal Financing Act, consistent with the conditions of the Qualifying Modification, without the need for any further action.   Such reduction shall be effected by reducing any remaining installments of principal in inverse order of maturity and shall not otherwise affect the repayment schedule of the bond, note or loan.

(b)     Any remaining deposit of a municipality held at GDB as of the Closing Date (other than deposits identified by AAFAF as consisting of federal funds) shall be automatically reduced, effective as of the Closing Date, on a dollar-for-dollar basis, from the outstanding principal amount of any corresponding bond, note and/or loan of such municipality (excluding the loans that are collateral for secured deposit accounts), relative to the type of corresponding deposit, as determined by AAFAF, in a manner consistent with the Qualifying Modification. Such application shall be effected in ascending order of outstanding loan balances. In cases where deposits are not enough to pay the bond, note or loan in full, the application shall be effected by reducing installments of principal in inverse order of maturity without affecting the repayment schedule of the bond, note or loan.

(c) Notwithstanding any other law of the Government of Puerto Rico, effective as of the Closing Date, the balance of liabilities owed between any Non-Municipal Government Entity and GDB shall be automatically determined by applying the outstanding balance of any liability of GDB to a Non-Municipal Government Entity (other than deposits identified by AAFAF as consisting of federal funds) against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond, note or loan of such Non-Municipal Government Entity held by GDB as of such date (other than any bond, note or loan of a Non-Municipal Government Entity secured by a mortgage over real property) in a manner consistent with the conditions of the Qualifying Modification, without the need for any further action. Such application shall be effected by reducing any remaining installments of principal in inverse order of maturity and shall not otherwise affect the repayment schedule of the corresponding bond, note or loan. For purposes hereof, all agencies, departments, offices and instrumentalities of the central government (as identified by AAFAF) shall be deemed to be the same Government Entity.

(d)     The remaining balances of the Municipal Loans and the Non-Municipal Loans after giving effect to the transactions contemplated by this Article 501 shall be those certified by AAFAF. After the effective date of this Act, all future interest payments on said bonds, notes and/or loans shall be computed based on the remaining balance of the Municipal Loans and Non-Municipal Loans pursuant to this Article 501, and as certified by AAFAF.

(e)     Nothing contained in this Act shall be construed to prohibit or limit municipalities from refinancing their current bonds, notes or loans through another financial institution pursuant to the Municipal Financing Act."

Article 21.- Article 502 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 502.- Payment of Excess CAE.

Notwithstanding any other law of the Government of Puerto Rico (including, without limitation, the Municipal Financing Act, as amended pursuant to this Act), on or prior to the Closing Date, GDB shall pay, in cash, to each municipality that has Excess CAE an amount equal to 55% of the undisbursed Excess CAE corresponding to such municipality, consistent with the conditions of the Qualifying Modification. The remaining portion of such undisbursed Excess CAE shall be discharged as of the Closing Date, and no such municipality shall have any further rights or claims with respect thereto and GDB shall have no further liability or obligation thereunder."

Article 22.- Article 504 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, is hereby amended to read as follows:

"Article 504.- Limitation and Mediation of certain Claims against Municipalities.

From the Closing Date until June 30, 2019, no Person having a claim against a municipality related to a capital improvement project financed with a bond, note or loan subject to recalculation pursuant to Article 501(a) of this Act shall commence or continue a judicial, administrative, or other action or proceeding against such municipality with respect to said claim. Notwithstanding the foregoing, any such Person may commence or continue litigation before June 30, 2019 solely to require the municipality to participate in mediation. The goal of such mediation process shall be to reach a consensual agreement that may allow the establishment of an alternative repayment plan or any other alternative satisfactory to the parties, which shall be reflected in the corresponding municipality's fiscal year 2020 budget. The mediation process authorized herein shall be governed, insofar as it is not incompatible with this Act, by the provisions of Act No. 19 of September 22, 1983, as amended, as well as by any regulations approved by the Puerto Rico Supreme Court regarding mediation. In those cases in which no agreement is reached through the mediation process and in which, after a judicial process, a final and unappealable judgment is entered against a municipality, the provisions of Article 13 of Act 3-2017 shall apply to the payment of such judgment. Each party shall bear its own expenses and attorneys' fees with respect to such mediation process, as well as with respect to any litigation commenced or continued after June 30, 2019. Mediator fees and related costs shall be paid by the parties on equal parts, unless otherwise agreed. Nothing herein shall be construed as to prohibit any municipality from making any payment with respect to claims subject to this Article 504. Finally, this Article 504 shall always be interpreted in the manner most favorable for the municipalities of the Government of Puerto Rico."

Article 23.- Articles 705 to 708 of Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, are hereby renumbered as Articles 707 to 710, respectively.

Article 24.- A new Article 705 is hereby added to Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, to read in its entirety as follows:

Article 705.- Trust for the Benefit of Retired Employees.

In anticipation of the final wind-down of GDB pursuant to the GDB Fiscal Plan, notwithstanding any other law to the contrary, GDB is hereby authorized to execute a deed of trust to create and establish a trust for the benefit of persons that retired from GDB pursuant to applicable pre-retirement programs (and any other beneficiary under said programs), to transfer to such trust funds to satisfy GDB's obligations under said pre-retirement programs (consistent with the GDB Fiscal Plan), and to take any and all actions necessary or convenient in furtherance of the foregoing. For the avoidance of doubt, GDB may not transfer to such trust any asset that is not an Excluded Asset. AAFAF is also hereby authorized and empowered to act as trustee of such trust (or to designate any other entity to act as trustee thereof) and to take any and all actions necessary or convenient in furtherance of the foregoing. The trust established pursuant to this Article shall be a government instrumentality and shall be totally exempt from, and shall not be required to pay any kind of taxes, assessments, licenses, stamps, fees or other similar charges levied by the Government of Puerto Rico or any Government Entity upon any of the property it owns, possesses, holds or uses or on its activities, or upon any income, payment or gain derived therefrom. The provisions of Act 219-2012, as amended, known as the "Trusts Act" shall be applicable to any trust created pursuant to this Article, subject to the provisions of the deed of trust.

Article 25.- A new Article 706 is hereby added to Act 109-2017, known as the Government Development Bank for Puerto Rico Debt Restructuring Act, to read in its entirety as follows:

"Article 706.- Board of Directors of Other Government Entities.

In anticipation of the final wind-down of GDB pursuant to the GDB Fiscal Plan, notwithstanding any other law to the contrary, in such cases where the enabling statute of a public corporation or instrumentality provides that the Board of Directors of such entity shall be the same as the Board of Directors of GDB or otherwise requires that any member of the Board of Directors of GDB also be a member of the Board of Directors of such entity, the Governor shall be authorized to appoint to the Board of Directors of such other entity individuals who are not members of the Board of Directors of GDB, which shall serve for the terms determined by the Governor. The Boards of Directors of such entities shall continue to be comprised of the same number of directors."

Article 26.- Severability.

This Act shall be interpreted in a manner to render it valid to the extent practicable in accordance with the Puerto Rico Constitution and the U.S. Constitution. If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the remainder of this Act. The effect of such an order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act so annulled or declared unconstitutional. If the application to a Person or circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the application of the remainder of this Act to such Persons or circumstances to which it may be validly applied. It is the express and unequivocal intent of this Legislative Assembly that the courts of law enforce the

provisions and application of this Act to the greatest possible extent, even if any of its parts is annulled, invalidated, affected or declared unconstitutional, or even if the application thereof to any Person or circumstance is annulled, invalidated or declared unconstitutional. This Legislative Assembly would have passed this Act regardless of the ruling on severability that a Court may issue.

Article 27.- Language Conflict.

This Act shall be adopted both in English and Spanish. If in the interpretation or application of this Act any conflict arises as between the English and Spanish texts, the English text shall govern.

Article 28.- Effectiveness.

This Act shall take effect immediately upon enactment.

_____
Presidente del Senado

_____
Presidente de la Cámara

Aprobada en Julio 18, 2018

Gobernador

Este P. de _____ 5 _____ Núm _908_

Fue recibida por el Gobernador

Hoy _30_ de _Junio_

De _2017_ A las _4:30 P.1._

_____ Asesor