# Exhibit FF

**126 D.P.R. 478**

1990 JTS 80, 126 D.P.R. 478, 1990 WL 710118 (P.R.)

COMMOLOCO OF CAGUAS, INC., plaintiff and petitioner

v.

RAMIRO BENITEZ DIAZ, defendant; AUTORIDAD DE CARRETERAS DE PUERTO RICO, intervenors and appellees.

In the Supreme Court of Puerto Rico

Numbers: RE-86-470, CE-87-9, CE-86-759, CE-86-583, CE-86-694, CE-86-722, CE-86-448

### Synopsis

CERTIORARI PETITION (CE-87-9) to review an ORDER of Rafael Riefkohl Marcano, Judge (Ponce) that confirms a previous order that ordered the garnishment of the wages of an employee of certain public corporation. The writ is issued and the appealed order is reversed in Case No. CS-86-2084.

Carmelo Nieves Figueroa, José Julián Álvarez González and Cándido F. Monteserrin, attorneys for the Autoridad de Acueductos y Alcantarillados, petitioner, José E. Vila Barnes, attorney of Commoloco of Sabana Grande, Inc., appellee; Norma Cotti Cruz, Sub District Attorney; Blanca Díaz Segarra and Anabelle Rodríguez Assistant General Attorneys, in Report; Patrick D. O'Neill, Luce Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López attorneys of **\*483** the Asociación Puertorriqueña de Financieras del Consumidor, amicus curiae.

### Synopsis

CERTIORARI PETITION (CE-86-759) to review an ORDER of Delia Lugo Bougal, Judge (Ponce) that confirms a previous order that ordered the garnishment of wages of an employee of certain public corporation. The writ is issued and the appealed order is reversed in Case No. CS-86-1909.

Richard V. Pereira and Jose Julian Alvarez Gonzalez, attorneys of the Autoridad de Acueductos y Alcantarillados, petitioner, Oreste Ramos, attorney of Metro Finance Co., appellee; Norma Cotti Cruz, Sub Attorney General, Blanca Diaz Segarra and Anabelle Rodríguez Assistant General District Attorneys, in Report; Patrick D. O'Neill, Luce Vela Gutierrez and Lawrence Odell from Martinez, Odell Calabria & Sierra and Carlos F. Lopez, attorneys from the Asociacion Puertorriquena de Financieras del Consumidor, amicus curiae.

### Synopsis

CERTIORARI PETITION (CE-86-583) to review an ORDER of Enrique Rivera Santana, Judge (Bayamon) that denies a certiorari petition to review an order that ordered the garnishment of wages of an employee of certain public corporation. The writ is issued and the appealed order is reversed in Case No. CS-86-3080.

Gilberto Rodríguez Zayas, Carmelo Nieves Figueroa and José Julián Álvarez González, attorneys for the Autoridad de Acueductos y Alcantarillados, petitioner; Oreste Ramos, attorney of Metro Finance Co., Appellee; Norma Cotti Cruz, Sub-General Attorney, Blanca Díaz Segarra and Anabelle Rodríguez; Assistant General Attorneys in Report; Patrick D. O'Neill, Luce Vela Gutiérrez and Lawrence Odell from Martínez, Odell Calabria & Sierra and Carlos F. López, attorneys for the Asociación Puertorriqueña de Financieras del Consumidor, amicus curiae.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**126 D.P.R. 478**

**Synopsis**

JUDGMENT (RE-86-470) of Angel G. Hermida, Judge (San Juan) that reverses a previous judgment that ordered the garnishment of wages of an employee of certain public corporation. Confirmed the Judgment in case No. PE-86-805.

Luis A. Arrufat Pimentel, attorney of the Cooperativa de Ahorro y Credito de Catano, petitioner; Moraima Arbona, Cándido F. Monteserrin and José Julián Álvarez González, attorneys of the **\*484** Autoridad de Acueductos y Alcantarillados, appellee; Norma Cotti Cruz, General Sub District Attorney, Blanca Díaz Segarra and Anabelle Rodríguez, Assistant General Attorneys in Report; Patrick D. O'Neill, Luce Vela Gutiérrez and Lawrence Odell from Odell Calabria & Sierra and Carlos F. López attorneys for the Asociación Puertorriqueña de Financieras del Consumidor, amicus curiae.

**Synopsis**

CERTIORARI PETITION (CE-86-448) to review a JUDGMENT of Angel G. Hermida, Judge (San Juan) that reverses a previous judgment that ordered the garnishment of wages of an employee of certain public corporation. The writ is issued and the appealed judgment is confirmed in case no. PE-86-562.

Jose M. Casanova Edelmann, attorney of Island Finance Corporation of Santurce, petitioner, Gilberto Rodriguez Zayas, Ernesto Lebron Gonzalez, Moraima Arbona and Candido F. Monteserrin, attorneys for the Autoridad de Acueductos y Alcantarillados, appellee; Norma Cotti Cruz, General Sub District Attorney, Blanca Diaz Segarra and Anabelle Rodriguez Assistant General Attorneys, in Report; Patrick D. O'Neill, Luce Vela Gutierrez and Lawrence Odell, of Martinez, Odell Calabria & Sierra and Carlos F. Lopez attorneys for the Asociacion Puertorriquena de Financieras del Consumidor, amicus curiae.

**Synopsis**

CERTIORARI PETITION (CE-86-722) to review an ORDER of Carlos de Jesus Rivera Marrero, Judge (Humacao) that reverses a previous order that ordered the garnishment of wages of an employee of certain public corporation. The writ is issued and the appealed order is confirmed in Case No. CS-86-732.

Jimmy Soto Ledesma, attorney of Best Finance Corporation, petitioner, Carmelo Nieves Figueroa, Jose Julian Alvarez Gonzalez, and Candido F. Moteserrin, attorneys of the Autoridad de Acueductos y Alcantarillados, appellee; Norma Cotti Cruz, General Sub District Attorney, Blanca Diaz Segarra and Anabelle Rodriguez Assistant General District Attorneys in Report; Patrick D. O'Neill, Luce Vela Gutierrez and Lawrence Odell, from Martinez, Odell Calabria & Sierra, and Carlos F. Lopez attorneys for the Asociacion Puertorriquena de Financieras del Consumidor, amicus curiae.

**Synopsis**

CERTIORARI PETITION (CE-86-694) to review an ORDER of Enrique A. Jordan Musa, Judge (Caguas) that reverses a previous order that ordered the garnishment of wages of an employee of certain public corporation. The writ is issued and the appealed order is reversed in case No. CS-86-1071.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Commoloco of Caguas v. Benitez Diaz, 1990 JTS 80 (1990)**

**126 D.P.R. 478**

Jose E. Vila Barnes, attorney for Commoloco of Caguas, Inc., petitioner; Hector M. Torres Cartagena, attorney for the Autoridad de Carreteras de Puerto Rico, appellee; Norma Cotti Cruz, General Sub District Attorney; Blanca Diaz Segarra and Anabelle Rodriguez, Assistant General District Attorneys, in Report; Patrick D. O'Neill., Luce Vela Gutierrez and Lawrence Odell, of Martinez, Odell Calabria & Sierra and Carlos F. Lopez, attorneys of the Asociacion Puertorriquena de Financieras del Consmidor, amicus curiae.

ASSOCIATE JUDGE MRS. NAVEIRA DE RODON issued the opinion of the Court.

[1] From the beginning of the century the question of whether the wages of the public employees are subject to garnishment or not has been presented before this Court, with different variants. Consistently we have denied the use of this procedural mechanism for these purposes. The policy has been to "exempt the wages of officers and employees of the Government not to favor the debtors but to ensure an efficient and continuous service to the very [G]overnment" Blanco v. Carballeira, Judge, 41 D.P.R. 533 (1930).

[2-3] 'The rule in this jurisdiction, as in the United States is that the wages of the public employees are exempt from garnishment. That rule is based on a reason of public order, which is, that if such garnishment were allowed, the government that must receive the services of that employee would be greatly affected because it is presumed that said employee that is deprived of his/her wages will not render services with the same efficiency that he/she would, having the incentive of receiving in due time the compensation for his/her work. 'Padron Rivera v. Cordoves, Juez 59 D.P.R. 255, 258 (1941). Also, 'the governmental activities must not be subject to the inconveniences of these proceedings that interfere with the carrying out of public duties in detriment of the common good…' Stump Corp. v Tribunal Superior. **\*486** 99 D.P.R. 179, 181 (1970). 'That has the effect of converting the State in a collecting agent of plaintiff against its will. ' Torres Santa v. Benitez Roldan, 115 D.P.R. 85, 87 (1984).

I.

In the case before us we are posed with the question of whether the aforementioned principles apply as to the garnishment of wages of employees of a public corporation. Below we will state the facts that give rise to the question.

Within a relatively short period of time seven (7) seven petitions were filed before this Court with basically identical questions of fact and law. In view of such situation we consolidated them. In each one of those cases, the plaintiff in collection of money was a company of small personal loans (finance company) and defendant an employee of a public corporation. Specifically six (6) of these work in the Autoridad de Acueductos y Alcantarillados (hereinafter AAA) and one (1) in the Autoridad de Carreteras.

In each of the cases the Court of First Instance entered judgments favorable to the plaintiffs. In view of this, and to that effect, the parties that won the cases requested and obtained from the respective courts garnishment of wages orders addressed to the public corporations for which defendants worked. In such circumstances, the referenced public corporations obtained authorization to intervene in the proceedings with the objective of presenting arguments in favor of removing the garnishment orders.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:3961-33 Filed:09/21/18 Entered:09/21/18 21:28:34 Desc: Exhibit FF to Declaration Page 5 of 10
CERTIFIED TRANSLATION
Commoloco of Caguas v. Benitez Diaz, 1990 JTS 80 (1990)

**126 D.P.R. 478**

The main argument of the aforementioned corporations was basically that their employees must be considered public employees and that, as such, their wages cannot be garnished pursuant to the doctrine stated above by this Court.

The courts of first instance agreed with the argument in four (4) of the seven (7) consolidated cases, while in the remaining three (3) they decided that the **\*487** principles that support the prohibition of garnishment of wages of public employees are not applicable to the public corporations. As there are conflicting decisions in the courts of instance we decided to review and we issued the writs of certiorari.

## II.

Until mid-1919 the Code of Civil Procedure of Puerto Rico, Art. 249(7) had an express provision that forbade the garnishment of wages of the public officers or employees. Law No. 32 of June 3, 1919 (32 L.P.R.A. sec. 1130) eliminated the distinction between the public employees and those of the private entities. It provided a limited protection to three fourths parts of the salary of the employee as long as he/she could prove that such amount was necessary to support his/her family. There is no discussion in the legislative history regarding the reason for eliminating the specific provision that forbade the garnishment of the wages of the public employee.

In absence of provision of law about the protection against garnishment of the wages of the public employee, the norm that occupies us today was born via case law in Blanco v. Carballeira, Judge, supra. In that case Associate Judge Mr. Wolf decided that the wages of public employees could not be subject to garnishment.[1] Its principal argument was that from the elimination of the express provision that forbade the garnishment of the wages of the public employees it 'the intention to make such wages subject to garnishment could not be inferred unless they were generally subject to garnishment pursuant to some specific provision of law'. Id. Page 534. After all, there was no specific provision of law that imposed upon any officer the duty to retain the garnished wages.

[4] Since that case, the doctrine has only been adding arguments in favor of maintaining the prohibition of **\*488** garnishment of public employees' wages. See: Padron Rivera v. Cordoves, Judge, supra; ELA v. Tribunal Superior, supra; Stump Corp. v. Tribunal Superior, supra; Torres Santa v. Benítez Roldan, supra. However, in none of these cases was there a garnishment of wages of employees of a public corporation implied. The cases that are most similar to the problem before us are Rodriguez v. Fontes y Am. R.R. Co. Int., 51 D.P.R. 670, 672, 678 (1937) and Arraiza v. Reyez; Leon, Intervenor, 70 D.P.R. 614 (1949). In the first, the American Railroad filed a motion to intervene in which it alleged that a garnishment of wages ordered by the court of first instance regarding one of its employees "interrupted the operation of its office and affected the service that it rendered as a public service company that it was". Rodríguez v. Fontes y Am. R.R. Co. Int., supra, page 672. The court of instance stated in its order that "a private corporation, even if it exploits a public service company, is not in the same position of privilege that is inherent to the organisms and official offices of the government and the very prerogatives of these organisms are not enjoyed at all by the private entities." Rodriguez v. Fontes y Am. R.R. Co. Int.,

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**126 D.P.R. 478**

supra page 675. On that occasion, when reversing the court of first instance, we stated that the American Railroad was not obligated to comply with the garnishment order as to "wages that had not been accrued at the date it refers to."[2] We did not say anything as to the effect it had it was a private corporation, not public.

**\*489** On the other hand, in Arraiza v. Reyes; Leon, Intervenor, supra, there was an attempt to garnish a credit that a judgment debtor had against the AAA. Through a motion to intervene, a third party requested the nullity of the garnishment alleging that said credit could not be garnished as it derived from the construction of a public work and the amount garnished was in possession of the AAA a public corporation.[3] The petition was dismissed.

It was determined, pursuant to the express provisions of the organic law of the AAA, Law No. 40 of May 1st, 1945 (22 L.P.R.A. sec. 144) and what was resolved in F.H.A v. Burr, 309 U.S. 242 (1940), that the Legislature had granted sufficient operational powers to the AAA to consider it "so subject to judicial procedures as in analogous circumstances any private company would be, as long as it does not interfere with the execution of its executive duties'; Arraiza v. Reyes; Leon, Intervenor, supra, page 618. This case is clearly distinguishable from the present one. Firstly, in Arraiza v. Reyes; Leon, Intervenor, supra, the seizable credit did not belong to a regular employee of the corporation. It was an independent contractor. Secondly, even facing this fact, the permission to garnish was conditioned to not interfering with the work of the executive duties of the corporation.

The case before us is not an isolated incident regarding an independent contractor in whose favor the public corporation has an unpaid credit. On the contrary, the expected garnishments would potentially include all the wages of the regular employees that operate any of the public corporations.

Having clarified the foregoing, in view that the prohibition to garnish wages has been applied in cases of public employees assigned to the central government system, we now have to determine if this doctrine should be extended to the employees of the public corporations.

**\*490 III.**

[5] Public corporations, as they operate currently, arose as a response to the desire to quicken and promote the efficiency of the public works in view of the complexity of the duties faced by the governments since World War One. Torres Ponce v. Jimenez, 113 D.P.R. 58 (1982)[4]

[6-7 Pursuant to their functional configuration, the public corporations are defined as "institutions that offer an economic or social service in the name of the government, but as an independent judicial entity; they conduct their operations with great autonomy, even though it is responsible in front of the public, through the government and the parliament and subject to some direction on the part of the government, equipped on the other hand, with their own independent and separate funds, and with the legal and commercial attributes of a commercial enterprise. These attributes would place the public corporation someplace in between a pure public authority and a commercial company of private right. (Our translation). W. Friedman, the Public

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**126 D.P.R. 478**

Corporation: A Comparative Symposium, Toronto, Carswell, Co., 1954, page 541. [5]

[8] What impulses the strategic adoption of this independent entity is the reality that "the corporation is intrinsically more apt to succeed in certain fields, than the ordinary department of the administration." A.R. Brewer Carias, Las empresas publicas en el derecho comparado, Caracas, U. Central de Venezuela, Vol.XXXVII, 1967, page 86.

**\*491** [9] However, despite of the autonomy that characterizes the public corporations, they do not lose their quality of governmental instrumentality, created to respond to purposes of public utility. See York County Fair Assn. v. South Carolina Tax Commn., 154 S.E.2d 361 (1967); Sharon Realty Company v. Westlake, 188 N.E.2d 318 (1961). [6] For that reason, inasmuch as that they carry out this type of duty, the Executive and the Legislature exercise, pursuant to law and custom, different degrees of control over their duties. Friedman, op. cit, pages 557-558.

[10] The public corporations receive through their organic statute certain degree of economic independence as to their operational budget. Aside of the budget assignments that they may receive from the State, the objective with this is that they seek in whole or in part to generate their own capital, be it through issuing obligations, loans or through the income they receive from the properties and services they offer. We have to clarify, however, that this financial autonomy receives more or less supervision on the part of the State pursuant to the focus or public policy that to that end the country in which the public corporation operates, adopts. [7]

[11] In Puerto Rico, the governmental control over the public corporations is expressed through the organic laws of the public corporation in question and laws that directly or indirectly have an impact on it.

**\*492** [12] Also, Art. III, Sec. 22 of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A. Tome 1, ed. 1982, page 347, provides that:

There shall be a Comptroller that shall be appointed by the Governor with the counsel and consent of the majority of the total number of members that compose each House. The Comptroller shall have the requirements provided by law, he/she will carry out his/her duty for a term of ten years and until his/her successor is appointed and takes possession. The Comptroller shall supervise all the profits, accounts, and disbursements of the State, its agencies and instrumentalities and of the municipalities, to determine if they have been done according to the law. It will render annual reports and all those special reports that are required by the Legislative Assembly or the Governor. (Emphasis provided).

[13-15] In order to provide validity to the cited constitutional provision Law No. 9 of July 24, 1952, as amended, 2 L.P.R.A. sec. 72 was approved. It created the Office of the Comptroller. Through this statute the mechanisms through which the Comptroller carries out his/her supervision duty were elaborated. These duties "will be performed regarding the accounts, the funds, the income, the disbursements and the properties of the Government and the ones placed in trust." 2 L.P.R.A. sec. 73. The supervising duties of the Comptroller encompass the operations of the public corporations.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:3961-33 Filed:09/21/18 Entered:09/21/18 21:28:34 Desc: Exhibit FF to Declaration Page 8 of 10
CERTIFIED TRANSLATION
Commoloco of Caguas v. Benitez Diaz, 1990 JTS 80 (1990)

**126 D.P.R. 478**

See also, for illustrative purposes as to the governmental control, among others, Accounting Law of the Government of Puerto Rico, Law No. 230 of July 23, 1974 (3 L.P.R.A. sec. 283 and ss); Law of the Ombudsman, Law No. 134 of June 30, 1977, amended by Law No. 6 of March 16, 1987 (2 L.P.R.A. secs. 701-726.) [8] ***493** [16-17] The governmental intervention in the development of the public corporations responds primarily to that, despite the combination of public and private characteristics we have stated, the funds with which the entity operates are considered public regardless that they do not form part of the State's budget. Therefore, we have stated that the funds with which the employees of the public corporations are paid come from governmental sources and constitute public funds. Municipio de Mayaguez v. Rivera, 113 D.P.R. 467 (1982).

[18-19] The State chooses the figure of the public corporation as a tool to implement a public policy in particular when it determines that through this means is how, with greater probability of efficiency, it can carry out a program or service. It should be noted that great part of them are classified as essential services. This means that even though the public corporations are erected on certain bases of operational autonomy, they still are invested with a great governmental interest in that their operation is of the greatest possible quality and efficiency, and therefore its operation be protected from all unnecessary interference.

[20-21] as to the inquiry of whether the employees of said corporations are public employees or not, recently in Pueblo v. Hernandez Torres y Barreda, 125 D.P.R. 560 (1989) we stated the following in regards to the employees of the Puerto Rico Telephone Co. a public-private corporation:

…[T]he fact that they are not part of the central system of personnel does not alter their condition of public employees. The Law of Public Service Personnel of Puerto Rico [31 L.P.R.A. sec 1301 and ss.] expressly excludes from the application of the law all of the employees of public corporations. However, this does not mean they are private employees. On the contrary, from the language of the referenced provision it is evident that even if they are considered public employees, for reasons of public policy it was decided not to submit them to the detailed application of the law, although to the merit principles yes.

***494** [22] Also, that quality is not devalued at all by the fact that pursuant to Art. II, Sec. 17 of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A., Tome 1 they were acknowledged the right of collective bargaining.

[23] Even though in some countries they are not considered public employees, in Puerto Rico all legislation that directly or incidentally alludes to the employees of public corporations has been consistent as to consider them public employees. See for illustrative purposes: the law that creates the Retirement System for Employees of the Government of Puerto Rico and its Instrumentalities, Law No. 447 of May 15, 1951, as amended, 3 L.P.R.A. secs. 761-788, Art.7(16) of the Penal Code of Puerto Rico, 33 L.P.R.A. sec. 3022(16); the Governmental Ethics Law of the Commonwealth of Puerto Rico, Law No. 12 of July 24, 1985 (3 L.P.R.A. sec. 1801 and ss).

The Economic Report to the Governor of 1984, and the preliminary data of the Report

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**126 D.P.R. 478**

of 1986 reflect an alarming increase in the rate of the growth of the debt of the consumers. The data regarding that matter, per the last report published for the period 1986-1987, state that "at the end of the fiscal year 1987, the debt of the consumers amounted to $7,779.9 million (amount that represented a growth of $1,534.8 million or 24.6 percent over the debt of $6,245.0 million of the fiscal year 1986. That growth is superior to the one shown in fiscal year 1986 that was of $1,129.8 million or 22.1 percent when you compare such debt with the one registered in fiscal year 1985[9]. Economic Report to the Governor of 1986-1987, Planning Board of Puerto Rico, Part VIII, page 18.

A logic consequence of this consumption behavior is that a proportional number of employees of the public corporations shall be comprised within the universe of Puerto Rican debtors **\*495** whose wages would be subject to garnishment if the use of this procedural mechanism is authorized. If we add the fact that the employees of the A.A.A. are already subject to a series of discounts[10] that include those coming from loans obtained within the work place acquired usually at lower interest than those in the regular market, we can deduce that this places them, on multiple occasions, as high risk debtors for private entities known as finance companies. These circumstances increase the probability of the use of the wage garnishment mechanism, with the consequential detrimental and damaging effect for the public corporation.

[24-26] In accordance with the foregoing, we extend the protection against the use of the procedural mechanism of garnishment-as adopted by our case law as to the wages of the employees of the central government system-to the wages of the employees of public corporations. Deciding the contrary would be to add foreign and unconnected duties to the tasks of the officers of public corporations, as they would have to carry out the duties regarding the discount process. The expenses incurred would be paid with public funds in benefit of the exclusive interest of a private entity and the time invested by the officers would take away from public duty. Undeniably, this, in addition to being contrary to the interests of the State, causes an unjustified and undue interference in the execution of the tasks of the agency and an unallowable deviation of public funds. "[T]the governmental activities must not be subject to the inconvenience of these proceedings that interfere with the discharge of public duties in detriment of common wellbeing.' Stump Corp. v. Tribunal **\*496** Superior, supra, page 181. This procedure also has the effect of reducing the motivation and enthusiasm with which these employees must serve our people. Padron Rivera v. Cordoves, Judge, supra.

[27] Private financial entities have to take the necessary precautions to guarantee the suitability of their debtors, minimizing the possible delinquency in the payment of the loans.

Wherefore, judgment shall be entered reversing the ones entered by the Superior Court, Ponce Part, in cases CS-86-2084 and CS-86-1909 and by the Superior Court, Bayamon Part, in the case CS-86-3080 and that confirms the ones issued by the Superior Court, San Juan Part, in cases PE-86-805 and PE-86-562 by the Superior Court, Humacao Part, in the case CS-86-732 and by the Superior Court, Caguas Part, in case CS-86-1071.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**126 D.P.R. 478**

The President Judge Mr. Pons Nunez, notes that even when he dissented from the majority in Pueblo v. Hernandez Torres y Barreda, 125 D.P.R. 560 (1989) for the reasons stated in his dissent, which he reaffirms, he votes in agreement with the opinion of the Court in this case as it is the same logic consequence of the majority of the Court in such case. Associate Judge Mr. Rebollo Lopez did not intervene. Associate Judge Hernandez Denton inhibited himself. *497

FOOTNOTES:

[1] This matter had been brought up but not resolved in Torres v. Corte Municipal, 35 D.P.R. 378 (1926).

[2] For the definition of what are un-accrued wages refer to Diego Agueros & Co. v. Heres, 50 D.P.R. 533 (1936). Specifically, as to the wages of public employees, they are not subject to garnishment even if accrued while they had not been paid. We so decided in Torres Santa v. Benitez Roldan, 115 D.P.R. 85, 87 (1984): "Call it garnishment, seizure, or whatever, the truth is that the order entered has the effect of forcing the State to discount from every biweekly pay of defendant an amount of money and pay it to a third party. That has the effect of turning the State in a collecting agent of plaintiff against its will. It is easy to imagine the adverse effect that this practice would have on the process of the Treasury Department to pay the State's employees, if it were generalized." The prohibition of garnishment of wages of public employees is applicable to un-accrued wages as to those already accrued, as they are in the possession of the State.

[3] In a footnote the Court clarifies that it does not know the interest of the intervenor, but presumes it must have had one.

[4] 'It should be noted that before all that it is a universal phenomenon that of the progressive and each time faster extension of the tasks of the state entities, in light of the satisfaction of needs of general interest." A.R. Brewer Carias, Las empresas publicas en el derecho comparado, Carracas, U. Central De Venezuela, 1967, Vol. XXXVII, page 22.

[5] Precisely, pursuant to the factors in this definition, President Roosevelt referred to the public corporations as those with the power of Government but that possess the flexibility of a private entity. W. Friedman, The Public Corporation: A Comparative Symposium, Toronto, Carswell Co., 1954, page 541.

[6] The very nature of the public enterprise, in all its major forms, implies some degree of government supervision, both on the administrative and on the financial plane.' W. Friedman, International Encyclopedia of Comparative Law, Vol. XIII, Chap. 13, page 53.

[7] The objective sought through establishing public corporations was not freedom from all governmental controls, but freedom from governmental restrictions unsuited to a business operation which stifle efficient operations. ; P. Teeguarden and D. Thomas, A Public Corporation Model for Federal Forest Land Management, 1985, Vol. 25, No. 2, pages 373 and 379.

[8] Different from the public corporations in England or other European countries, in the United States, through the Government Corporation Control Act of 1945, as amended, 31 U.S.C. Sec. 9101 and ss, a mechanism is provided to audit and control the financial operation of public corporations. See Brewer Carias, op. cit, Sec. 55 pages 86-90 and 166.

[9] This Economic Report to the Governor of 1986-1987 reveals the excessive use of the sources of credit on the part of the Puerto Rican consumer and therefore, the imminent need that the organisms concerned elaborate a plan of action to create awareness about the effects of the indiscriminate use of sources of credit.

[10] Among them are Social Security, Income Tax, Retirement, A.E.G., Savings, A.E.G. Loans, Life Insurance, Union Fees, Cancer Insurance, Retirement Loan, Union Loan, Cooperative Action A.A.A., Cooperative Deposits A.A.A., Cooperative Loan A.A.A., Life Insurance Cabali, Medical Insurance, Asoc. Empleados (trips); Loan Banco Vivienda and others.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.