# EXHIBIT   22

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| PUERTO RICO ENERGY COMMISSION<br><br>      Plaintiff,<br><br>        v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>      Defendants. | Adversary No: _____ |

Plaintiff Puerto Rico Energy Commission ("PREC" or the "Commission"), by and through its undersigned counsel, pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully moves the Court for a preliminary injunction against Defendants Financial Oversight and Management Board for Puerto Rico ("FOMB") and Puerto Rico Electric Power Authority ("PREPA," and collectively "Defendants"). A proposed form of order granting the requested relief is attached hereto as Exhibit A.

**PRELIMINARY STATEMENT**

1. On March 4, 2016, PREC filed a Verified Complaint for Declaratory Judgment and Injunctive Relief against FOMB and PREPA, alleging that (a) FOMB is, in excess of its PROMESA authority, intending to mandate or authorize PREPA to take substantive electricity actions that are within the Commission's Commonwealth law jurisdiction but that the Commission has not approved; and (b) PREPA is intending to carry out FOMB's *ultra vires* mandates and authorizations, violating Commonwealth law by ignoring the Commission's orders in favor of FOMB's *ultra vires* directives.

2. This combination of unlawful actions will effectively supersede the Commission's authority to determine the shape and operation of Puerto Rico's electric industry. The resulting legal confusion, over who has regulatory authority over which industry actions, is preventing the Commission from carrying out its Commonwealth law duties. It leaves electricity consumers unprotected from PREPA's undisciplined spending, and it leaves existing bondholders and prospective investors uninformed about the regulatory conditions affecting the value of and prospects for their investments.

3. For these and other reasons detailed in the Verified Complaint, the Commission seeks through that Complaint a declaratory order and injunctive relief against the Defendants. The Commission now files this Motion for Preliminary Injunction (the "Motion") in connection therewith. Specifically, the Commission seeks: (a) to enjoin the FOMB from mandating that PREPA take, or authorizing PREPA to take, substantive electricity actions that fall within the Commission's jurisdiction but have not been approved by the Commission, and (b) to enjoin PREPA from taking substantive electricity actions mandated or authorized by the FOMB if those actions fall within the Commission's

jurisdiction but have not been authorized by the Commission. *See* Verified Complaint. at ¶¶ 92-113.

4.  We have been here before. Rejecting FOMB's proposal to take over PREPA's entire business, this Court held that FOMB does not have "broad executive and managerial authority over PREPA's operations," nor the power to "interfere unilaterally with [PREPA's] powers ... or with [its] property or revenues," nor the power to "control virtually everything PREPA does."[1] Despite the Court's clarity, FOMB still acts as if it has powers to direct not only PREPA's current activities but also the substantive transformation of Puerto Rico's entire electric industry.

5.  The requested injunctions will lift the legal fog caused by FOMB's overreach and PREPA's noncompliance. Then the Commission can carry out its responsibilities and cause PREPA to comply with its orders. Those responsibilities and orders, existing and imminent, involve efforts to prevent PREPA from spending excessively; to set rates that are "just and reasonable" and "nondiscriminatory"; to channel PREPA's limited funds and limited operational capabilities toward a cost-effective, reliable mix of generation, transmission, distribution, energy efficiency, storage, renewable and microgrid resources; to determine the appropriate mix of public and private actors that can cost-effectively fund and operate Puerto Rico's electricity infrastructure; and thus to create the public confidence in the Island's electric service so necessary to Puerto Rico's recovery.

**FACTUAL BACKGROUND**

---

[1] Opinion and Order Denying Urgent Motion of FOMB to Confirm Appointment of a Chief Transformation Officer (Docket Entry No. 361, Nov. 16, 2017) at 10-16 (hereinafter, "CTO Order").

Case:18-00021-LTS Doc#:49-1 Filed:03/04/18 Entered:03/04/18 08:07:34 Desc: Main
Document Page 5 of 23

6.      This summary distills the facts set forth in the Verified Complaint at paras. 33 to 56 and 64 to 67.

7.      On February 12, 2018, PREPA submitted to FOMB a Fiscal Plan.  On information and belief, this Fiscal Plan proposes actions relating to PREPA's power supply mix, capital and operating expenditures, internal operations, revenue requirements and rate design, among other things.  All these subjects and actions lie within the Commission's jurisdiction under Commonwealth law.  Indeed, a number of the actions conflict with, or ignore, prior Commission orders.

8.      PREPA did not submit these proposed actions to the Commission.  FOMB has declined to provide the document to the Commission.

9.      In multiple communications to the Governor, PREPA and the Commission, FOMB has stated or implied it has the power to mandate or authorize substantive electricity actions that fall within the Commission's jurisdiction, including determining and acquiring the mix of power supply resources; prioritizing investments in generation, transmission and distribution; deploying new technologies; establishing and revising demand forecasts; determining the mix of public and private investment; and establishing operational standards.

10.      On multiple occasions, PREPA has resisted complying with Commission orders, asserting that the Commission's authority is superseded by FOMB's claimed authority.  PREPA intends to take the substantive electricity actions specified in its Fiscal Plan without Commission approval, on the grounds that FOMB's approval of the Fiscal Plan is preemptive.

11. When taking those actions described in its Fiscal Plan, PREPA will incur costs. The Commission then will have no choice but to make ratepayers pay for those costs, regardless of their reasonableness. (Because PREPA has no private shareholders, the only possible cost-bearers are its ratepayers.)

12. Dissatisfied with the performance of a vertically integrated monopoly that was unregulated for 70 years, the Legislature through Act 57-2014 established the Commission. The Legislature's express purpose was to subject PREPA to regulation that is professional, objective, technically based, non-political and transparent, using rigorous administrative law procedures common among Mainland states. FOMB has none of this professional regulatory experience, and uses none of these administrative procedures—unsurprisingly because Congress did not grant it the powers that the Legislature has vested in the Commission.

## ARGUMENT

13. The requirements of a preliminary injunction are: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities favors an injunction; and (4) an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts have discretion to balance these factors. *See Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 482 (1st Cir. 2009). The requested injunctions meet all these requirements.

I. **The Commission Is Likely to Succeed on the Merits of Its Claim**

A. **FOMB has no power to mandate or authorize substantive electricity actions the Commission has not authorized**

14. Multiple PROMESA provisions make clear that FOMB's powers are largely fiscal, not substantive.

15. The list begins with § 101(a): "The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." The subjects of "fiscal responsibility" and "access to the capital markets" do not include transforming electric industry structure, selecting power supply mix, or determining transmission or distribution policy or asset ownership.

16. This distinction between fiscal and substantive matters is repeated in PROMESA's provisions on the purposes and elements of Fiscal Plans:

> ***Purposes:*** The purpose of a Fiscal Plan is to create conditions for a "sustainable level of debt";[2] and to "provide a method to achieve fiscal responsibility and access to the capital markets...."[3] This Court sees purposes similarly: PROMESA-mandated fiscal plans and budgets "provide blueprints for revenues, expenses, debt, and capital resources, and they are used to substantiate methods for responsible financial management."[4]

---

[2] Section 104(i)(1)(B).

[3] Section 201(b)(1).

[4] CTO Order at 12.

> **Elements:** A Fiscal Plan must provide for credible "estimates of revenues and expenditures";[5] "ensure the [sufficient] funding of essential services";[6] provide "adequate funding for public pension systems" and for the "elimination of structural deficits";[7] provide for a "debt burden that is sustainable";[8] "improve fiscal governance, accountability, and internal controls";[9] "enable the achievement of fiscal targets";[10] include "independent forecasts of revenue";[11] and include a "debt sustainability analysis."[12]

All these purposes and elements are fiscal. They give the FOMB no authority to control, through fiscal plans, substantive decisions about Puerto Rico's electric industry.

17. More confirmation of the fiscal-substantive distinction appears in § 203. That provision requires the Commonwealth to submit periodic reports comparing actual revenues and expenditures to budgets. It does not require—indeed no PROMESA provision requires—reports on substantive actions (*e.g.*, transmission lines constructed, competitive markets created, power supply plans implemented). And if there is an "inconsistency" between approved and actual budget figures, FOMB can only "make reductions in nondebt expenditures," "institute hiring freezes," or prohibit certain contracts or transactions, § 203(d)(2)(A). Those are the FOMB's only tools; it has no authority to mandate particular

---

[5] Section 201(b)(1)(A).

[6] Section 201(b)(1)(B).

[7] Section 201(b)(1)(C) and (D).

[8] Section 201(b)(1)(E).

[9] Section 201(b)(1)(F).

[10] Section 201(b)(1)(G).

[11] Section 201(b)(1)(H).

[12] Section 201(b)(1)(I).

activities, like power supply mix, new ownership arrangements or new market structures.

FOMB can cancel the actions it took under § 203(d)(2)(A) if the instrumentality at issue has

"initiated appropriate measures to reduce expenditures or increase revenues," § 203(e);

but again, FOMB has no power to order the instrumentality to conform its actions to any

FOMB substantive vision.  The FOMB's powers are fiscal, not substantive.

18.     It is unsurprising that the Fiscal Plan must "provide for capital expenditures

and investments necessary to promote economic growth," § 201(b)(1)(J).  Without

"expenditures and investments," there would be no need to address revenues, debt,

funding, targets and all the other items listed in § 201(b)(1).  But the legal source of the

"expenditures and investments" is not FOMB's substantive preferences, because PROMESA

gives FOMB no power over electricity industry substance.  The  legal source of

"expenditures and investments" is Commonwealth law—specifically, Act 57 as applied by

the Commission, or other statutes the Legislature might enact.  This reasoning finds explicit

support in § 201(b)(1)(N), which establishes FOMB's key constraint:  A plan certified by

the FOMB must "respect the relative lawful priorities ... in ... other laws ... of a covered

territory ... in effect prior to the date of enactment of this Act."

19.     Any remaining doubt is removed by § 205(a).  It authorizes FOMB to make

*recommendations* about, among other things, "the modification of existing revenue

structures, or the establishment of additional revenue structures," § 205(a)(3);

"modifications or transfers of the types of services that are the responsibility of, and are

delivered by the territorial government," § 205(a)(5); "modifications of the types of

services that are delivered by entities other than the territorial government under

alternative service delivery mechanisms," § 205(a)(6); and "the privatization and

Case:18-00021-LTS Doc#:49-1 Filed:03/04/18 Entered:03/04/18 08:07 Desc: Main
Document Page 10 of 22

commercialization of entities within the territorial government," § 205(a)(10). The

territorial government must consider these recommendations and explain any rejection,

but it has no obligation to accept them, § 205(b). If these substantive matters were within

the FOMB's mandatory authority, the recommendatory provisions of § 205(a) and (b)

would be surplusage. The FOMB's mandatory authority is fiscal, not substantive.

20.     There is more. Section 209 requires FOMB to terminate when the territorial

government (a) has "adequate access to short-term and long-term credit markets at

reasonable interest rates"; (b) has, for four consecutive fiscal years, developed its budgets

consistent with "modified accrual accounting standards"; and (c) has lived within those

budgets. FOMB's termination has no substantive precondition. FOMB's purpose is fiscal,

not substantive.

21.     Real substantive authority for FOMB appears in only two situations. The first

is § 204(b)(2), authorizing FOMB to establish policies "to ensure that proposed contracts

promote market competition...." In PREPA's context, it is not clear whether this provision

refers to competition among prospective contractors to PREPA, or instead refers to

competition to provide electric services (*e.g.*, generation, transmission, distribution,

storage, microgrids, demand response and energy efficiency). Regardless, neither purpose

authorizes FOMB to issue mandates about these subjects.

22.     The second exception is in Title V, which creates a path by which FOMB can

approve a "Critical Project." Title V makes Congress's intent clear:  FOMB's authority over

Critical Projects must support the Commission, not preempt it. Specifically, § 503(b)(1)(D)

requires that any project connecting to PREPA's transmission or distribution facilities

"shall be ineligible for Critical Project designation" if the Commission timely determines the

project will "adversely affect an approved Integrated Resource Plan." Note also that Title V,
which creates the Revitalization Coordinator role, confines that role to *making
recommendations* to the FOMB about Critical Projects. The Revitalization Coordinator *has
no other role*. It certainly is legitimate for the Coordinator to have a vision for Puerto Rico's
electric industry that guides his recommendations on particular projects. But PROMESA
gives neither him nor the FOMB any substantive authority to mandate that vision. As this
Court held:

> Although the FOMB's fiscal plan and budgeting powers give it a strong and
> substantially determinative voice in overall strategy regarding the
> Commonwealth's revenues, expenses, and general direction for responsible
> financial management, they do not imply that the FOMB's role includes
> detailed operational planning or direct executive authority over the
> implementation of those plans and budgets.[13]

The FOMB's powers are fiscal, not substantive.

> **B.      FOMB's directives to PREPA, if taken within FOMB's PROMESA
>          authority, preempt the Commission only when it is not possible to
>          design those directives consistently with Commonwealth law**

23.      Repeatedly and explicitly, PROMESA directs FOMB to act consistently with
Commonwealth law.

24.      Section 201(b)(1)(A)(i) provides that a Fiscal Plan shall "provide for
estimates of revenues and expenditures in conformance with agreed accounting standards
and be based on ... *applicable law*..." (emphasis added). Act 57 is "applicable" here because
it directs the Commission to ensure that rates are "just and reasonable." Thus, FOMB may
not approve budgets or prescribe actions that lead to rates that are not just and reasonable.

---

[13] CTO Order at 12.

The legal duty to determine what is just and reasonable lies exclusively with the Commission.

25.     Section 201(b)(1)(B) requires the Fiscal Plan to "ensure the funding of essential services."  The legal duty to determine what services are essential, given the prior reference to "applicable law," lies exclusively with the Commission.

26.     Section 201(b)(1)(J) requires the Fiscal Plan to "provide for capital expenditures and investments necessary to promote economic growth...."  That provision does not mean that the FOMB determines *what* expenditures and investments are necessary; it means only that for the expenditures and investments that are necessary, the Fiscal Plan must show the funding sources.  Under Commonwealth law, the legal duty to determine what capital expenditures and investments are necessary for electric service lies exclusively with the Commission.  That Commission role is confirmed by Section 503(b)(1)(D) which, as explained in para. 79 above, preserves the Commission's power to prevent Energy Projects that "adversely affect an approved Integrated Resource Plan."

27.     Section 201(b)(1)(N) requires the FOMB-certified Fiscal Plan to "respect the relative lawful priorities ... in the ... other laws ... of a covered territory ... in effect prior to the date of enactment of this Act."  Those laws include Act 57, as applied by the Commission.

28.     Separately and together, the above-mentioned PROMESA provisions obligate FOMB to act consistently with Commission authority, unless doing so would undermine PROMESA goals.  To satisfy PROMESA, FOMB must shape its decisions to avoid undermining Commonwealth policy.  Only when such shaping is impossible, only when FOMB cannot achieve a PROMESA objective without preempting Commonwealth law, may

preemption occur.  FOMB cannot be a bull in the Commonwealth's china closet.  As this
Court held:  "The primary mechanism through which fiscal plans and instrumentality
budgets are developed under PROMESA sections 201 and 202 looks first to the territorial
government, not the FOMB, for origination and refinement.  While the FOMB can certify its
own fiscal plan and budget under certain circumstances, it may only do so after an
interactive process with the territorial government does not yield a plan or budget that is
acceptable to the FOMB."[14]

29.     Under PROMESA § 4, the Commission's decisions under Commonwealth law
cannot conflict with the FOMB's requirements.  But that provision limits Commission
actions only where FOMB is acting within its authority.

30.     PROMESA thus addresses Commonwealth law in terms of preservation and
preemption.  The necessary logical combination of those two principles is this:  If in solving
a problem within its statutory scope, FOMB has a choice between an action that
undermines Commonwealth law and an action that does not, FOMB must choose the latter.
Where inconsistency is unavoidable, FOMB prevails.  Finding inconsistencies and designing
ways to avoid them requires coordination.  As this Court held, PROMESA "requires the
FOMB and the territorial government to work together to establish a fiscally responsible
path forward that is acceptable to the FOMB."[15]

---

[14]  CTO Order at 10.

[15]  CTO Order at 19.

## II.     Absent an injunction, the Commission will suffer irreparable harm

31.     A movant may meet its burden by showing that it is "likely to suffer this harm before a decision is rendered on the merits." *Puerto Rico Conserv. Found. v. Larson*, 797 F. Supp. 1066, 1071 (D.P.R. 1992). For these purposes, "irreparable injury" means "an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Community Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005).

32.     Commonwealth law, primarily Act 57-2014, requires the Commission to establish and enforce standards for PREPA's performance, so that customers will receive reliable electric service at reasonable cost. The Commission, like any utility regulator, pursues this purpose by, among other things, determining the resource mix for Puerto Rico's electricity customers; establishing the market structures and compensation policies that attract the suppliers most likely to provide those resources cost-effectively; setting pricing policies that attract investors while protecting customers from abuse; and designing rate structures that induce efficient consumption behavior.

33.     FOMB's insistence on dictating the substantive shape of Puerto Rico's electric industry makes it impossible for the Commission to achieve these ends. For example, the sum of FOMB two central positions—that its authority covers substantive electricity matters and that the Commission is preempted from controlling PREPA's costs by preventing imprudent costs before they occur—means the Commission cannot ensure that rates are just and reasonable. FOMB's legal position has emboldened PREPA to resist, or delay complying with, multiple Commission orders, adding to the Commission's obstacles. This harm is irreparable because once PREPA makes inefficient decisions, the Commission

has no choice but to set rates that cause customers to pay the extra costs. *See* Verified

Complaint at para. 54. The Commission cannot unring a bell PREPA has rung.

34.     Moreover, the combination of FOMB's and PREPA's behavior forces the

Commission to divert its limited resources from proceedings designed to improve PREPA's

performance to controversies over whether the Commission has any responsibility for

PREPA's performance. There is no way to compensate the Commission for these

impediments to its effectiveness.

**III.     The Balance of Equities Weighs in favor of Granting the Requested Relief**

35.     Where the likely harm to the moving party absent an injunction outweighs

the harm that the defendant would sustain from an injunction, the motion should be

granted. *Vargas-Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir. 1987)*; Vaqueria Tres

Monjitas, Inc. v. Laboy*, No. CIV. 04-1840 DRD, 2007 WL 7733665, at *3 (D.P.R. July 13,

2007), *aff'd sub nom. Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009).

36.     A preliminary injunction will cause no hardship to FOMB; indeed it will be a

benefit. It will relieve FOMB of its self-assigned (but not statute-assigned) involvement in

electricity policy details for which its members have no preparation or expertise, enabling

it to channel its resources elsewhere. With an unobstructed Commission performing its Act

57 duties to improve PREPA's performance, FOMB can more reliably assess whether

PREPA's fiscal projections and plans make sense in light of the substantive priorities set by

the Commission. PREPA will benefit too: The confusion from two overlapping masters will

be replaced with the discipline induced by the coordinated combination of PREC's

substantive leadership and FOMB's fiscal oversight.

## IV. An Injunction Serves the Public Interest

37.     The requested injunctions will reduce situations in which PREPA operates inefficiently, incurring costs undisciplined by Commission action.  The restoration of the Commission's role will lead to a more efficient company.  The reduction in costs will benefit all elements of the public—Commonwealth and municipal governments, electricity customers, electricity entrepreneurs seeing opportunities to bring modern technology to the Island's electric infrastructure, existing and prospective bondholders, businesses contemplating a move to or from Puerto Rico, PREPA employees and retirees—everyone. Prospective investors will see that success in Puerto Rico's electric industry depends on merit, and that decisions on the industry's structure and operational standards will based on technical, professional and objective judgments arrived at through transparent, rigorous producers commonly used in in Mainland states.

38.     The requested injunctions will avoid, at least temporarily, a continuous series of preemption disputes over who has authority to mandate or approve various actions:  capital expenditures, operational expenditures, power supply acquisitions and contract executions.  Such disputes, brought to an already busy Court, cause uncertainty and delay in matters essential to Puerto Rico's recovery.

39.     Finally, the injunctions will serve the general public interest of enforcing the Commonwealth's regulations and upholding the rule of law.  *See, e.g.*, *Wiese v. Becerra*, 263 F. Supp. 3d 986, 994 (E.D. Cal. 2017) ("The State has a substantial interest in . . . enforcing validly enacted statutes."); *Kansas Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1556, 1566 (D. Kan. 1993), *aff'd sub nom. Williams v. Whiteman*, 36 F.3d 1106 (10th Cir. 1994) (where "effect of

a preliminary injunction would be to enforce the federal law and regulations …, [a preliminary injunction] would clearly be in the public interest").

## V.    The Commission Should Not Be Required to Post a Bond

40.    The Commission respectfully asks that the Court, in issuing injunctive relief, waive the requirement of a bond.  A bond is not mandatory under Rule 65(c); rather, the matter lies within a court's discretion.  *See Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978, 1000 (1st Cir. 1982), *judgment rev'd on other grounds*, 467 U.S. 526 (1984).  In *Crowley*, the First Circuit affirmed the district court's decision to waive the bond requirement, recognizing that courts may forgo this requirement in "suits to enforce important federal rights or public interests." *Id*. at 1000 (quotation omitted); *see also Total Petroleum Puerto Rico Corp. v. Quintana*, No. 16-cv-2979, 2016 WL 6998612, at *3 (D.P.R. Nov. 30, 2016); *Watchtower Bible Tract Society of New York, Inc. v. Municipality of Aguada*, 160 F.Supp.3d 440, 448-49 (D.P.R. 2016).  Similarly, in *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995), the Sixth Circuit held that the posting of security under Rule 65(c) was not required based on the likelihood of success and the strong public interest involved.

41.    The Commission seeks to enforce, and preserve its ability to enforce, Commonwealth regulatory law in service of the public interest.  Act 57-2014 dictates that the Commission establish rates and ensure that electricity operations serve the "public interest."  As discussed in Section I *supra*, the Commission has a strong likelihood of success on the merits.  These factors argue against the required posting of a bond.

**CONCLUSION**

42. For the foregoing reasons, the Commission respectfully requests that the

Court grant the requested relief as set forth in the proposed order attached hereto as Exhibit

A, and grant such other and further relief as is proper.

**I hereby certify** that on this same date a true and exact copy of this Motion was

filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel

of record. Also, a copy of this document will be notified via electronic mail to all case

participants.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 4th day of March, 2018.

Dated: March 4, 2018                  Respectfully submitted,

San Juan, Puerto Rico                 **PUERTO RICO ENERGY COMMISSION**
                                      By its attorneys:


                                      */s/ Alejandro J. Figueroa-Ramírez*
                                      USDC No. 305603
                                      Alejandro J. Figueroa-Ramírez,
                                      General Counsel
                                      Puerto Rico Energy Commission
                                      268 Muñoz Rivera Ave., Suite 702
                                      San Juan, PR 00918
                                      Tel: (787) 523-6262
                                      Email: afigueroa@energia.pr.gov


                                      */s/ Scott Hempling*
                                      Admitted pro hac vice
                                      Scott Hempling
                                      Scott Hempling, Attorney at Law, LLC
                                      417 St. Lawrence Dr.
                                      Silver Spring, MD 20901
                                      Tel: (301) 754-3869

Email:  shempling@scotthemplinglaw.com

/s/ Mariana I. Hernández Gutiérrez

USDC No. 229102
Mariana I. Hernández Gutiérrez
Hernández-Gutiérrez Law, PSC
1519 Ponce de Leon Ave.
First Federal Bldg. Suites 713-715
San Juan, PR 00909
Tel:  (787) 460-5715
Email:  mhernandez@mihglaw.com

**EXHIBIT A**

**(Proposed Preliminary Injunction Order)**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| PUERTO RICO ENERGY COMMISSION<br><br>        Plaintiff,<br><br>                v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>        Defendants. | Adversary Proc. No: _____ |

## [PROPOSED] ORDER GRANTING PUERTO RICO
## ENERGY COMMISSION'S MOTION FOR PRELIMINARY INJUNCTION

Upon consideration of *Puerto Rico Energy Commission's Motion for Preliminary Injunction* (the "Motion"), seeking the issuance of a preliminary injunction prohibiting the Federal Oversight and Management Board for Puerto Rico ("FOMB") from mandating or

authorizing substantive electricity actions not authorized by the Commission, and prohibiting PREPA from taking substantive electricity actions directed by the FOMB that are within the Commission's jurisdiction but which the Commission has not authorized, until the Court resolves the controversy on the scope of the FOMB's powers as set forth in Plaintiff's Verified Complaint for Declaratory Judgment and Injunctive Relief, ECF No. [__] (the "Verified Complaint"); and the Court having jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1332, Article III, Section 2 of the U.S. Constitution, 48 U.S.C. § 2166, and 28 U.S.C. § 1367; and upon consideration of the Motion; and that notice of the Motion was adequate and proper under the circumstances and that no further or other notice need be given;

WHEREAS, Plaintiff is likely to prevail on the merits of the claims set forth in the Verified Complaint; and

WHEREAS, the Defendants' imminent *ultra vires* actions will irreparably harm Plaintiff, and there is no adequate remedy at law; and

WHEREAS, the balance of equities favors providing the relief granted herein; and

WHEREAS, the public interest is favored by entering the preliminary injunction against the Defendants; it is hereby

**ORDERED**, that the Motion is granted as set forth herein; and it is further

**ORDERED**, that the FOMB is directed to refrain from mandating or authorizing PREPA to take substantive electricity actions that are within the Commission's jurisdiction but not authorized by the Commission, and PREPA is directed to refrain from

taking substantive electricity actions mandated by FOMB if such actions are within the

Commission's jurisdiction but not authorized by the Commission, and both are directed

to act consistently with such relief, until further order of the Court; and it is further

     **ORDERED**, that Plaintiff shall not be required to post security in connection with

the relief granted herein.

Dated:__, 2018

       SO ORDERED:

       _____

       The Honorable Laura Taylor Swain

       United States District Judge