# EXHIBIT 37



**COMMONWEALTH OF PUERTO RICO**
**PUERTO RICO ENERGY COMMISSION**

| | |
|---|---|
| **IN RE:** TEMPORARY OVERSIGHT MEASURES RELATED TO THE PROCUREMENT AND MANAGEMENT OF RESTORATION SERVICES BY PREPA | **CASE NO.:** CEPR-MI-2017-0008<br><br>**SUBJECT:** Order identifying and implementing temporary oversight measures. |

## ORDER

Through this Order, the Puerto Rico Energy Commission ("Commission") identifies and implements a set of measures, requirements and directives aimed at ensuring optimal accountability, prudency and reasonability in the procurement and prospective management of restoration support services by the Puerto Rico Electric Power Authority ("PREPA") in the wake of Hurricane María.

These measures are taken to ensure PREPA funds allocated towards the restoration and recovery of the Island's electric grid—whether these funds come ultimately from PREPA customers, Commonwealth taxpayers or federal taxpayers—are spent effectively and efficiently, producing measurable and quantifiable results. Another objective is to avoid wasteful, fraudulent or abusive practices, by holding PREPA and its contractors and sub-contractors accountable for the quality and efficiency of their work. The measures taken herein are consistent with the Commission's overall goal and statutory mandate of inducing administrative and financial discipline to PREPA's operations and culture; they are not meant to duplicate any efforts by any other state or federal agency, but rather to support such efforts.[1] Finally, as detailed below, the measures and directives identified herein are necessary and essential, in light of both recent and historical examples of doubtful PREPA contracting determinations. They are especially necessary in light PREPA's insistence, in testimony and briefs presented in the rate case petition proceeding and in arguments to state and federal courts, that the Commission has no power to review and prevent PREPA's spending before it occurs; but rather, once that spending has occurred, must approve rates that reflect those costs, even if wasteful or imprudent.[2]

---

[1] The Commission recognizes that the Fiscal Agency and Financial Advisory Authority ("AAFAF" for its Spanish acronym) and the Financial Oversight and Management Board for Puerto Rico ("FOMB") also may conduct some type of contract review. Those reviews do not relieve the Commission of its duty under Act 57-2014 to ensure that rates are just and reasonable generally, and do not include imprudent costs specifically. The Commission is pleased to coordinate with both AFFAF and FOMB to avoid duplication of effort but it must and will carry out its independent legal obligation. To that end, the Commission contacted representatives of AFFAF and FOMB in May 2017, and FOMB again in November 2017, providing a systematic path to coordination. The Commission is awaiting their response but in the meantime must and will use its unique expertise and experience with PREPA, demonstrated in numerous prior orders—most importantly the Transition Charge, the Integrated Resource Plan and Rate Case—to protect Puerto Rico's citizens.

[2] *See, in general,* Part Four of the Commission's Final Resolution and Order, In Re: Review of Rates of the Puerto Rico Electric Power Authority, CEPR-AP-2015-0001, January 10, 2017 at pp. 147-156 ("Resolution and Order

1

In ideal circumstances, the Commission would ask for comments on procedures to ensure prudent, least-cost contracting, then craft requirements that align with PREPA's practical abilities. The present emergency does not allow for taking extra time with such procedures. Accordingly, this Order goes into effect immediately. The Commission does, however, invite PREPA to suggest alternative means of accomplishing the same objectives as the ones furthered through this Order.

I.  **BACKGROUND**

   a. **PREPA's History of Imprudent Procurement and Contracting**

On October 17, 2017, PREPA signed a contract with Whitefish Energy Holdings, LLC ("Whitefish") for the provision of certain services related to the restoration and recovery of PREPA's electric grid. Less than two weeks later, amid a myriad of controversies, PREPA announced its intention to cancel the Whitefish contract on October 29, 2017.[3] In the 12-day period in between, PREPA incurred at least $20.7 million of costs associated with this contract.[4] PREPA entered into the Whitefish contract without notifying or seeking prior approval from the Commission.

Whitefish is not the only instance in which PREPA's actions with regards to the procurement, contracting and management of contracted services have shown to lack the level of discipline and scrutiny expected from a public utility and required by Act 57-2014.[5] Throughout many of its proceedings, the Commission or its consultants have raised concerns regarding the terms and conditions agreed to by PREPA when entering into contracts (and whether such terms and conditions are in PREPA's and ratepayer's best interest), as well as the lack of performance metrics to ensure the quality of the work performed by the contractor. Examples include, but are not limited to, the quality of the products prepared by PREPA's contractors Siements PTI and Navigant Consulting, Inc. (submitted as part of

---

on PREPA's Rates") and Part II of the Commission's Final Resolution addressing PREPA's Motion for Reconsideration, CEPR-AP-2015-0001, March 8, 2017 at pp. 14-34. *See also*, PREPA's Verified Motion for Reconsideration of Provisions of the Final Resolution and Order, filed January 30, 2017, and PREPA's Appeal to the Puerto Rico Court of Appeals challenging the legality of the Commission's determinations, Case No. KLRA2017-0444, consolidated with Case No. KLRA2017-0446. Of special concern is that PREPA's attempts at freeing itself from required oversight have been supported by both AAFAF and the FOMB. *See* Notice of Removal, Case No. 17-04780 (LTS), Adversary Case No. 17-00256 (Docket Entry No. 279).

[3] While PREPA announced its intention to cancel the Whitefish contract on October 29, 2017, Whitefish would continue providing services until certain milestones were completed. As of the date of this Order, Whitefish continues to provide services to PREPA.

[4] http://cb.pr/whitefish-no-se-va-hasta-que-entregue-la-linea-de-aguirre-y-aguas-buenas/. This amount is expected to increase, given, as noted before, that Whitefish would continue providing services to PREPA until the completion of certain milestones.

[5] The Puerto Rico Energy Transformation and RELIEF Act, as amended.

2

PREPA's IRP and Petition for Rate Review),[6] PREPA's maintenance contracts with Mitsubishi-Hitachi and Alstom Caribe,[7] PREPA's multiple power purchase agreements with renewable energy providers,[8] and PREPA's power purchase agreement with EcoEléctrica.[9] Appendix A to this Order provides detailed insight into these and other examples. As the aforementioned list shows, these concerns are not limited to contracts related to a specific area of PREPA's operations, but rather span multiple areas of PREPA's business.

While the Commission has not made a finding regarding the prudency of these actions, they provide an insight into the type of decisions within PREPA that fuel the Commission's concerns. Particularly, the Commission is concerned that PREPA's management culture, a product of its 70-year long self-regulated monopoly status, is unwilling or unable to obtaining the type of concessions from its contractors generally sought after by investor-owned utilities worried about their bottom line.

### b. The case for Commission oversight

In order to be financially and operationally sustainable, a utility's rates must be sufficient to recover all of its costs, provided such costs are deemed by the regulator to be prudent. In the traditional setting of an investor-owned utility, a regulator is able to induce prudent spending and performance by preventing a utility from recovering through its rates costs which are deemed by the regulator to be the result of imprudent actions—those costs are thus paid for by the utility's shareholders, not ratepayers. This *after-the-fact* review is known as *cost disallowance*. The certainty that imprudent actions will result in lost revenues aligns the interests of shareholders and ratepayers, leading to better performance.

PREPA's case is different. PREPA is a government-owned, non-profit utility; it has no shareholders. Because it has no shareholders, all of its costs must be recovered through its rates, which means that ratepayers are entirely responsible for the costs incurred by PREPA. Once a cost is incurred, there is no practical choice but to reflect those costs in PREPA's rates. If the Commission were to prevent PREPA from recovering a cost deemed as imprudent, PREPA would operate at a deficit, or would have to cut other necessary spending. Neither result is consistent with a financially healthy and sustainable utility providing reliable service. This certainty of recovery of costs reduces management's incentives to seek during negotiations concessions from contractors that would reduce PREPA's overall costs and exposure to risks and, ultimately, benefit PREPA's ratepayers. *Before-the-fact* review by the

---

[6] *See, in general,* the Part IV(A)(3) of the Final Resolution and Order, In Re: Integrated Resource Plan for the Puerto Rico Electric Power Authority, Case No. CEPR-AP-2015-0002, September 26, 2016 ("Resolution and Order on PREPA's IRP") and Parts Two, Three and Four of the Commission's Resolution and Order on PREPA's Rates.

[7] Resolution and Order on PREPA's Rates at ¶208 and ¶¶211 – 218, respectively.

[8] Resolution and Order on PREPA's IRP, at ¶¶171-188.

[9] Resolution and Order on PREPA's Rates, at ¶152.



Commission is therefore a necessary action to reduce customers' exposure to imprudent costs.

The Commission recognizes that PREPA's key personnel are deeply involved in the restoration effort, as well as efforts to renegotiate debt and secure federal resources. But it is precisely at such times of crisis that discipline in spending can decrease—especially in a company whose pre-existing discipline is suboptimal. Lack of discipline and oversight can delay restoration services by reducing the effectiveness and efficiency with which emergency resources are allocated towards emergency response and restoration efforts.

The temporary measures and directives identified in Part II of this Order are specifically designed to ensure discipline during the current emergency and the period immediately after. While the Commission will subject PREPA to rigorous oversight, the measures adopted herein are also designed to avoid unnecessary burdens which may delay PREPA's restoration efforts. Requiring PREPA and its contractors to account for their activities and costs is a small matter compared to the benefits in terms of certainty, transparency and accountability. However, the Commission invites PREPA to suggest alternative means of accomplishing the level of accountability that these requirements are designed to achieve.

### c. The Commission's Authority to Require Review

Act 57-2014 grants the Commission express and unambiguous authority to review PREPA's operations and implement the regulatory actions necessary to "guarantee the capacity, reliability, safety, efficiency and reasonability of electricity rate [in] Puerto Rico."[10] Accordingly, the Commission is empowered to address "all types of operations, processes and mandates pertaining to the efficiency of the energy sector of the Island."[11] This broad authority is further strengthened by the closing sentence of Section 6.3 of Act 57-2014, which states that the Commission shall have all those "implicit and incidental powers that are pertinent and necessary" to comply with its mandates. Equally vital is the Commission unquestionable authority to "require and gather [from PREPA and certified energy companies] any pertinent or necessary information to properly carry out its powers and duties."[12]

### II. REQUIREMENT FOR CONTRACT REVIEW

The foregoing factors highlight the need to establish several requirements for PREPA's contracting and spending under such contracts. These requirements will remain in effect for a period of six months, beginning on the date issuance of this Order, unless the Commission determines otherwise through resolution or order.

---

[10] *See* sub-section (c) of Section 6.3 of Act 57-2014.

[11] *See* Statement of Motives of Act 57-2014 at ¶20.

[12] *See* sub-section (l) of Section 6.3 of Act 57-2014.



### a. Required Contract Provisions

For any contract or amendment to an existing contract related to the procurement of energy, grid services, and fuel[13] for an aggregate value of at least $10 million; contracts for infrastructure work[14] for an aggregate value of at least $1 million; and contracts for professional services[15] for an aggregate value of at least $250,000, executed by PREPA after the issuance of this Order, the Commission **ORDERS** PREPA to include the following provisions:

(1) A clause stating that the contract will not enter into force unless PREPA has received written approval from the Commission or unless five business days have passed after PREPA's submission of the contract to the Commission with no action from the Commission. The Commission, on notice to PREPA within the five-day period mentioned above, may extend such period for unusually complex contracts, provided such period shall never exceed 30 calendar days from the date of submission of the contract to the Commission.

(2) A clause stating that, if the Commission finds, or has reasonable belief, that the work being performed is defective, inconsistent with the terms and conditions of the contract, with applicable legal and regulatory requirements or with any prior Commission order or directive, the Commission may order PREPA to direct a contractor to immediately cease the provision of services until the Commission states otherwise, or until 15 business days from the date the Commission's stop-order was issued if the Commission fails to take any action within such timeframe. After the issuance of a stop-order, and after granting PREPA and the contractor reasonable opportunity to be heard, the Commission may determine to authorize continuation of services, require corrective measures to be taken, including contract amendments, or require the termination of the contract.

---

[13] The Commission intends the term "energy, grid services, and fuel" to refer to provision of energy to be consumed by PREPA or sold by PREPA to customers; to the commitment to make generating capacity available when needed (commonly referred to as "capacity services"); to credits associated with production of "green" or renewable energy as defined by Act 83-2010; to administration of energy efficiency, demand response, and other demand-side management programs; to the services necessary to support the transmission of electric power to customers, including but not limited to frequency and voltage regulation, operating and spinning reserves, startup-related costs, black start capabilities, and flexible ramping capabilities; to purchases of combustible fuels; and to tolling, transportation, or other delivery payments associated with fuel purchases.

[14] The Commission intends the term "infrastructure work" to refer to materials purchased for and labor applied to PREPA's physical assets. These assets include, but are not limited to, generation, transmission, distribution, fuel delivery, information technology, warehousing, and transportation infrastructure and assets.

[15] The Commission intends the term "professional services" to refer to work for hire that has no impact on PREPA's physical assets, including but not limited to: legal services; advisory services; modeling, potential studies, and other analyses; engineering and design work, and others.

5



(3) A clear, detailed scope of the work and activities included in the contract.

(4) A total budget associated with the described scope, provided that PREPA may seek from the Commission a modification of this requirement in extraordinary circumstances.

(5) An estimated spending schedule associated with the described scope and budget, with both monthly spending estimates and clear and objective milestones.[16] Spending schedules must include spending estimates associated with those milestones.

(6) A schedule of all labor, material, and/or service rates associated with the contract.

(7) A scope and budget amendment process, which shall include a requirement to provide advanced notice, with no less than 30 calendar days in advance, to the Commission, of any proposed amendment to the contract scope, budget and amount, provided PREPA may seek an exception to the 30-day requirement (but not to the advance notice requirement) in extraordinary circumstances.

(8) Require invoices to be submitted to PREPA on, at least, a monthly basis in electronic format. Invoices must contain the amount invoiced under the contract since the last invoice and the total amount invoiced since the contract's execution, as well as a description of the work completed and being invoiced and the total amount of contract funds remaining after deducting the amount included in the most recent invoice.

(9) A requirement wherein PREPA's contractor must submit, 10 calendar days in advance of a new month, monthly budget updates, with milestones accomplished and estimated spending and work to be completed in the upcoming month.

(10) A clear description of performance guarantees in the contract, including a requirement that work performed under the contract will conform to all applicable legal and regulatory requirements. Contracts must include a certification from the contractor that they are aware of all legal and regulatory requirements and that, except for unforeseen or extraordinary circumstances, the contracted budget is sufficient to meet these requirements.

(11) A clear description of risk-sharing provisions, including provisions describing the allocation of responsibility for costs between PREPA and PREPA's contractor in the event of error on PREPA's part, error on the part of PREPA's counterparty, shared error, and the occasion of circumstances beyond the control of PREPA and PREPA's counterparty.

---

[16] In the case of contracts for energy, grid services, and fuel, "milestones" means delivery of such energy, grid services, or fuel. The requirement for spending estimates associated with delivery of milestones does not apply to such contracts. However, the schedule of labor, material, and/or service rates must include a rate for the delivery of energy (in MWh), capacity (in MW), fuel (in MMBTU and physical units), or other services (in the appropriate units).



### b. Contract and Invoice Oversight

For any contracts contemplated in Part II.a of this Order, the Commission **ORDERS** the following:

(1) PREPA shall submit to the Commission contracts for review within one week of approval of contracting language by the contracting officer at PREPA. Contract submission must include at least: the contract itself; all appendices and attachments; a total budget estimate; a spending and milestone schedule; and a schedule of rates for labor, materials and services. The PREPA contracting officer who approved the contract shall certify to the Commission that the contract complies with the requirements established in Part II.a of this Order. None of the materials submitted by PREPA may contain any redactions whatsoever; however, PREPA may request confidential treatment of those documents, or portions thereof, it deems confidential, pursuant to Commission Order CEPR-MI-2016-0009, as amended.

(2) PREPA shall designate and identify the individual within PREPA responsible for reviewing invoices and contractor performance for each contract and whom shall act as liaison between PREPA and the Commission on matters related to the contracts under their supervision ("PREPA contract manager"). PREPA shall submit the name, title, e-mail address, and phone number of this individual to the Commission concurrently with each contract.

(3) PREPA shall notify the Commission within 7 calendar days of any change to the identity or contact information of the PREPA contract manager.

(4) PREPA shall keep and maintain all documents related to each contract, including all those documents identified in sub-section (1) above, in a secure Internet server, to which server the Commission shall have access immediately upon request.

(5) Immediately upon receipt of an invoice or budget update, and of approval of such invoices, the PREPA contract manager shall upload all relevant documentation to the secure Internet server.

(6) Upon request from the Commission, the PREPA contract manager shall schedule a briefing call or meeting, at a mutually convenient time, with PREPA officials and contractor representatives familiar with the contract under review.

(7) Prior to the execution of any proposed amendment to the contract amount or scope of work of the services to be performed, the PREPA contract manager shall notify the Commission the intent, scope and nature of the proposed amendment no less than 30 calendar days prior to the intended date of execution of the proposed amendment. The proposed amendment shall be deemed to have been approved if the Commission fails to make a determination with regards to the proposed amendment within the 30-day period established before. PREPA may seek an exception to the 30-day



requirement (but not to the advance notice requirement) in extraordinary circumstances.

Be it notified and published.

_____  
Ángel R. Rivera de la Cruz  
Associate Commissioner

_____  
José H. Román Morales  
Associate Commissioner  
Interim Chairman

**CERTIFICATION**

I hereby certify that the majority of the members of the Puerto Rico Energy Commission has so agreed on November 17, 2017 and on this date a copy of this Order was notified by electronic mail to the following: j-morales@aeepr.com, n-vazquez@aeepr.com, c-aquino@aeepr.com and n-ayala@eepr.com. I also certify that today, November 17, 2017, I have proceeded with the filing of the Order issued by the Puerto Rico Energy Commission and I have sent a true and exact copy to the following:

**Autoridad de Energía Eléctrica de Puerto Rico**  
Attn.: Lcdo. Javier Morales Tañón  
Lcda. Lcda. Nitza D. Vázquez Rodríguez  
Lcdo. Carlos M. Aquino Ramos  
P.O. Box 363928  
Correo General  
San Juan, PR 00936-3928

For the record, I sign this in San Juan, Puerto Rico, today, November 17, 2017.

_____  
María del Mar Cintrón Alvarado  
Clerk