# EXHIBIT   59

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación). | | |
|---|---|---|
| ❏ Commonwealth of Puerto Rico / El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date: May 3, 2017 |
| ❏ Puerto Rico Sales Tax Financing Corporation (COFINA) / La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date: May 5, 2017 |
| ❏ Puerto Rico Highways and Transportation Authority / La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date: May 21, 2017 |
| ❏ Employees Retirement System of the Government of the Commonwealth of Puerto Rico / El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date: May 21, 2017 |
| ■ Puerto Rico Electric Power Authority / La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date: July 2, 2017 |

RECEIVED

MAY 21 2018

PRIME CLERK LLC



Debtor [DebtorName] has listed your claim in their Creditor List in Schedule [CreditorList] as a [CUD] claim in an $[ScheduleAmount] amount. You must timely file a proof of claim or be forever barred from participating or sharing in any distribution or being treated as a claim for purposes of voting or distribution.

El deudor [DebtorName] ha listado su reclamación en la lista de acreedores en el Schedule [CreditorList] como un reclamo [CUD] por un monto de $ [ScheduleAmount]. Debe presente una prueba de reclamación oportunamente o se le prohiba por siempre participar o compartir en cualquier distribución o ser tratado como un reclamo para fines de votación o distribución.

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación    04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

☑ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** / **¿Quién es el acreedor actual?** | **U.S. Bank National Association in its capacity as Trustee under the Trust Agreement dated January 1, 1974 (attached to Exhibit A)** <br> Name of the current creditor (the person or entity to be paid for this claim) <br> Nombre del acreedor actual (la persona o la entidad a la que se le pagará la reclamción) <br><br> Other names the creditor used with the debtor <br> Otros nombres que el acreedor usó con el deudor _____ |

**Claim Number: 18449**

| 2. | Has this claim been acquired from someone else?

¿Esta reclamación se ha adquirido de otra persona? | ■ No / No
❏ Yes.  From whom?
Sí.  ¿De quién? _____ |

| 3. | Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g) | **Where should notices to the creditor be sent?**
**¿A dónde deberían enviarse las notificaciones al acreedor?**

**Maslon LLP C/O Clark Whitmore, Esq.**
Name / Nombre

**3300 Wells Fargo Center 90 S. 7th Street**
Number / Numero    Street / Calle

**Minneapolis, MN 55402**
City / Ciudad    State / Estado  ZIP Code / Código postal

**(612) 672-8335**
Contact phone / Teléfono de contacto

**Clark.Whitmore@maslon.com**
Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?**
(if different)
**¿A dónde deberían enviarse los pagos al acreedor?** (En caso de que sea diferente)

**U.S. Bank National Association C/O Julie Becker**
Name / Nombre

**60 Livingston Avenue**
Number / Numero    Street / Calle

**St. Paul, MN 55107**
City / Ciudad    State / Estado    ZIP Code / Código postal

**(651) 466-5869**
Contact phone / Teléfono de contacto

**Julie.Becker@usbank.com**
Contact email / Correo electrónico de contacto |

| 4. | Does this claim amend one already filed?

¿Esta reclamación es una enmienda de otra presentada anteriormente? | ■ No / No
❏ Yes.  Claim number on court claims registry (if known) _____
Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo) _____
Filed on / Presentada el _____(MM /DD/YYYY) / (DD/MM/AAAA) |

| 5. | Do you know if anyone else has filed a proof of claim for this claim?

¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ■ No / No
❏ Yes.  Who made the earlier filing?
Sí.  ¿Quién hizo la reclamación anterior? _____ |

## Part 2 / Parte 2:

**Give Information About the Claim as of the Petition Date**
**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.**

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?

¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ❏ No / No
■ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)
Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).

**SEE EXHIBIT A** |

| 7. | Do you supply goods and / or services to the government?

¿Proporciona bienes y / o servicios al gobierno? | ■ No / No
❏ Yes.  Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:

Vendor / Contract Number | Número de proveedor / contrato: _____

List any amounts due after the Petition Date (listed above) but before June 30, 2017:
Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017 $ _____ |

| | | |
|---|---|---|
| 8. | How much is the claim?<br><br>¿Cuál es el importe de la reclamación? | **$8,477,156,729.56 plus amounts accruing post-petition as described on Exhibit A.** | **Does this amount include interest or other charges?**<br>¿Este importe incluye intereses u otros cargos?<br>❑ No / No<br>■ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |

| | | |
|---|---|---|
| 9. | What is the basis of the claim?<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>**Bond Indebtedness and related rights existing under Commonwealth statutes and the Trust Agreement as more fully described on attached Exhibit A.** |

| | | |
|---|---|---|
| 10. | Is all or part of the claim secured?<br><br>¿La reclamación está garantizada de manera total o parcial? | ❑ No / No<br>■ Yes. The claim is secured by a lien on property. **See attached Exhibit A.**<br><br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>❑ Motor vehicle / Vehículos<br><br>■ Other. Describe:<br>Otro. Describir:   **See attached Exhibit A.**<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales: See attached Exhibit A**<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.<br><br>**Value of property / Valor del bien:**   $ **See attached Exhibit A**<br><br>**Amount of the claim that is secured /**<br>**Importe de la reclamación que está garantizado:** $**See attached Exhibit A**<br><br>**Amount of the claim that is unsecured /**<br>**Importe de la reclamación que no está garantizado:** $ **See attached Exhibit A**<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso:** $_____<br><br>**Annual Interest Rate** (on the Petition Date)<br>_**Tasa de interés anual** (cuando se presentó el caso) **See attached Exhibit A.**<br>❑ Fixed / Fija<br>❑ Variable / Variable |

| | | |
|---|---|---|
| 11. | Is this claim based on a lease?<br><br>¿Esta reclamación está basada en un arrendamiento? | ■ No / No<br>❑ Yes. **Amount necessary to cure any default as of the Petition Date.**<br>Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso$ _____ |

| 12. | **Is this claim subject to a right of setoff?**<br><br>**¿La reclamación está sujeta a un derecho de compensación?** | ❏ No / No<br>❏ Yes.  Identify the property /<br>Sí. Identifique el bien: **See attached Exhibit A** | |
|---|---|---|---|
| 13. | **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>**¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ■ No / No<br>❏ Yes.  **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. | $_____ |

| **Part 3 / Parte 3:** | **Sign Below / Firmar a continuación** |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**<br><br>Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma. | *Check the appropriate box / Marque la casilla correspondiente:*<br><br>■ I am the creditor. / Soy el acreedor.<br>❏ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.<br>❏ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.<br>❏ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.<br><br>I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.<br><br>Executed on date / Ejecutado el 05 18 2018 (MM/DD/YYYY) / (DD/MM/AAAA)<br><br>Signature / Firma _____   Vice President<br><br>**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:** |

Name   **Julie Becker**
First name / Primer nombre        Middle name / Segundo nombre        Last name / Apellido

Title / Cargo   **Vice President**

Company / Compañía **U.S. Bank National Association**
Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección   **60 Livingston Avenue**
Number / Número        Street / Calle

**St. Paul**                                    **Minnesota 55107**
City / Ciudad                              State / Estado     ZIP Code / Código postal

Contact phone / Teléfono de contacto **(651) 466-5869**        Email / Correo electrónico **Julie.becker@usbank.com**

### EXHIBIT A TO MASTER BOND DEBT PROOF OF CLAIM OF U.S. BANK
### NATIONAL ASSOCIATION AS PREPA BOND TRUSTEE

*In re The Financial Oversight And Management Board for Puerto Rico*
*As Representative of*
*Puerto Rico Electric Power Authority*

### Case No. 17-BK-4780 (LTS)

U.S. Bank National Association, solely in its capacity as trustee (in such capacity, the "**Trustee**"), and not individually, files this Master Bond Debt Proof of Claim (the "**Claim**") pursuant to that certain Trust Agreement dated January 1, 1974 (as amended or supplemented from time to time, the "**Trust Agreement**"), by and between the debtor, Puerto Rico Electric Power Authority (the "**Authority**"), as issuer, and First National City Bank, as the original trustee. A true copy of the Trust Agreement and supplements and amendments thereto executed and delivered pursuant thereto are attached as **Appendix I** and are hereby incorporated by this reference for all purposes as though set forth herein in full.[1] Unless otherwise defined herein, capitalized terms used in this Claim shall have the meanings set forth in the Trust Agreement.

This Claim is being filed by the Trustee in accordance with that certain Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof dated February 15, 2018 (the "**Bar Date Order**"), and is filed as a master claim on behalf of all holders ("**Bondholders**") of each series of power revenue bonds and power revenue refunding bonds issued and outstanding under the Trust Agreement (collectively, the "**Bonds**") as of July 2, 2017, the commencement of the Authority's above-captioned Title III case (the "**Commencement Date**").

In support of this Claim, the Trustee states as follows:

(1)    As of the Commencement Date, there were twenty-seven (27) separate series of Bonds (each, a "**Series**") that had been issued by the Authority and were outstanding ("**Outstanding Bonds**") under the Trust Agreement. The total aggregate amount owed by the Authority in respect of all Series of Outstanding Bonds as of the Commencement Date was $8,477,156,729.56, consisting of principal in the aggregate amount of $8,258,614,148.00, and accrued and unpaid interest in the aggregate amount of $218,542,581.56, plus other lawful amounts that have or will accrue and remain unpaid, as provided in the Trust Agreement. For each Series, the outstanding principal and interest amounts owing as of the Commencement Date are set forth in the table below:

---

[1] Certain supplemental indentures contain voluminous exhibits, such as a restructuring support agreement, which do not pertain to the Claim and that have not been included in Appendix I. Such documents will be provided upon request in accordance with the Bar Date Order. Further, the documents which this Claim is based upon are voluminous and have not all been attached to this Exhibit A. The Trustee will provide any additional documents requested in accordance with the Bar Date Order.

| Series | Principal Amount | Interest Amount |
|---|---|---|
| JJ | $42,315,000.00 | $1,149,851.36 |
| LL | $77,905,000.00 | $2,166,191.81 |
| MM | $56,200,000.00 | $1,420,611.11 |
| NN | $171,525,000.00 | $4,467,013.06 |
| PP | $84,765,000.00 | $2,133,895.03 |
| QQ | $35,340,000.00 | $982,648.33 |
| RR | $236,265,000.00 | $5,972,254.17 |
| SS | $332,205,000.00 | $8,322,585.11 |
| TT | $643,530,000.00 | $16,186,119.44 |
| UU | $745,070,000.00 | $9,554,160.01 |
| VV | $557,410,000.00 | $14,818,869.72 |
| WW | $610,140,000.00 | $16,501,958.97 |
| XX | $822,210,000.00 | $22,012,230.14 |
| YY | $320,175,000.00 | $5,011,628.13 |
| ZZ | $514,900,000.00 | $13,323,207.01 |
| AAA | $363,075,000.00 | $9,636,615.63 |
| BBB | $76,800,000.00 | $1,059,840 |
| CCC | $316,920,000.00 | $8,204,095.53 |
| DDD | $218,225,000.00 | $4,974,401.89 |
| EEE | $355,730,000.00 | $5,524,022.45 |
| 2012A | $630,110,000.00 | $15,913,109.33 |
| 2013A | $673,145,000.00 | $23,477,443.89 |
| 2016A | $55,639,539.00 | $2,812,887.81 |
| 2016B | $55,210,625.00 | $2,791,203.82 |
| 2016C | $104,600,000.00 | $5,695,470.00 |
| 2016D | $64,375,560.00 | $4,868,401.73 |
| 2016E | $94,828,424.00 | $9,561,866.09 |
| Total | $8,258,614,148.00 | $218,542,581.56 |

(2)    This Claim includes post-petition interest and other contingent, unliquidated amounts not included in the foregoing table that may be owing in respect of the Outstanding Bonds and the Trust Agreement.

(3)    The documentation upon which this Claim is based is voluminous including, for example, all documentation executed or delivered in connection with the closing for the Trust Agreement and the respective closings for the issuance of each series of bonds issued thereunder, including all Series of Outstanding Bonds, amendments and supplements, and, to the extent relevant, documentation produced or delivered during the decades in which the Trust Agreement has been administered.  Most, if not all, of the documentation upon which this Claim is based already is or should be in the possession of the Authority.  To the extent contemplated by paragraph 12 of the Bar Date Order, the Trustee will provide copies of additional documentation upon which this Claim is based to the Authority and Prime Clerk, upon request.  The Trustee reserves its right to supplement the Claim with documentation produced in discovery or informal exchanges of information with the Authority.

2

(4)     Each Series of Outstanding Bonds were issued by the Authority pursuant to authorizing resolutions made by the Authority's Board of Directors in connection with the issuance thereof.  **Appendix II** hereto includes a list of the authorizing resolutions for each Series of Outstanding Bonds (collectively, the "**Resolutions**"), which are incorporated herein by this reference for all purposes as though set forth herein in full.

(5)     The Trust Agreement provides that the obligation of the Authority to pay the indebtedness evidenced by the Bonds is supported by the lien, charge, pledge and security interest granted under and pursuant to the Trust Agreement, each of the Resolutions, and Act No. 83 of the Legislature of Puerto Rico approved May 2, 1941, as amended, reenacted and supplemented through the date of issuance of each respective Series of Outstanding Bonds, Title 22 L.P.R.A. §§ 191--218 (the "**Authority Act**").  The Trust Agreement was authorized by and expressly provides that it was entered into "under" and pursuant to the Authority Act. Trust Agreement, p. 5.  The Resolutions authorizing each Series of Outstanding Bonds likewise provide that they are made "under and pursuant to the Authority Act."

(6)     Payment of the Claim, together with the satisfaction of all of the Authority's obligations to the Trustee and the Bondholders under the Trust Agreement or otherwise assumed in connection with the Outstanding Bonds, are secured by, among other things: (i) a lien and charge on, pledge of and security interest in present and future revenues including, without limitation, all Revenues of the System; (ii) certain intangibles provided for in the Trust Agreement and Resolutions or provided for in the Authority Act, including, without limitation, certain covenants, obligations and undertakings; and (iii) moneys and investments to the extent provided in the Trust Agreement, the Resolutions and the Authority Act, including all monies and investments held in trust or required to be held in trust by the Authority at Depositories or otherwise in special accounts or funds under the Trust Agreement including, without limitation, in the General Fund, the Construction Fund, the Reserve Maintenance Fund, and the Capital Improvement Fund, all of which are subject to the rights of the Trustee and the Bondholders to the extent provided in the Trust Agreement, Resolutions, and the Authority Act.  Federally Subsidized Bonds are further secured by applicable Federal Subsidy Payments to the extent set forth in the Trust Agreement and applicable Resolutions.

(7)     Payment of the Claim is also secured by a number of property rights established by the Authority Act that have duly vested in the Trustee and the Bondholders and are protected by the U.S. Constitution and the Puerto Rico Constitution, including, without limitation, the following:

(a)     Section 16 of the Authority Act authorized the Authority to issue the Outstanding Bonds and to secure them with "the entire gross or net revenues and present or future income of the Authority including the pledging of all or any part thereof to secure payment of the bonds," which it did as set forth in the Trust Agreement and Resolutions. 22 L.P.R.A. § 206(e)(1). This section further authorized the Authority—in connection with the issuance of the Bonds—to "vest" in the Trustee "the right to enforce any covenants made to secure, to pay, or in relation to the bonds," and to "vest" in the Bondholders the right to enforce "any covenants made under [the Authority Act] or duties imposed [by the Authority Act]," which it did as set forth in the Trust Agreement and Resolutions. 22 L.P.R.A. § 206(e)(12).

3

(b)    Section 6(l) of the Authority Act, 22 L.P.R.A. § 196(l), granted the Authority the right and power to establish electricity rates sufficient to repay the Outstanding Bonds as follows:

> To determine, fix, alter, charge, and collect reasonable and just rates, fees, rents, and other charges subject to the Commission's approval, for the use of the facilities of the Authority, or for electric power services, or other commodities sold, leased, or provided by the Authority, that are **sufficient to cover reasonable expenses incurred by the Authority in the development, improvement, extension, repair, conservation, and operation of its facilities and properties, and for the payment of the principal of and interest on its bonds, and for fulfilling the terms and provisions of such agreements entered into with or for the benefit of purchasers or holders of any bonds of the Authority and other creditors**. (Emphasis added).

(c)    Section 17 of the Authority Act establishes an unconditional statutory right for Bondholders or the Trustee to redress any bond payment default persisting for thirty (30) days with a judicially appointed receiver to assume control from the Authority's operation and maintenance of its undertakings, and the collection and application of its income and revenue. 22 L.P.R.A. § 207.

(d)    Section 18 of the Authority Act created additional special rights and remedies specifically for the Authority's Bondholders, including a right of mandamus. 22 L.P.R.A. § 208.

(e)    Section 25 of the Authority Act, captioned "Agreement of Commonwealth Government," provides that the Commonwealth "does hereby pledge to, and agree with, any person, firm or corporation, or any federal, Commonwealth or state agency, subscribing to or acquiring bonds of the Authority to finance in whole or in part any undertaking or any part thereof, that it will not limit or alter the rights or powers hereby vested in the Authority until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." 22 L.P.R.A. § 215.

(f)    Section 26 of the Authority Act prohibits injunctions that prevent the enforcement of all or any portion of the Authority Act. 22 L.P.R.A. § 216. Section 27 of the Authority Act further provides that "[i]nsofar as the provisions of §§ 191--217 of this title are inconsistent with the provisions of any other act of the Legislature of Puerto Rico, the provisions of §§ 191--217 of this title shall be controlling and no law heretofore or hereafter passed governing the administration of the Commonwealth Government or any parts, offices, bureaus, departments, commissions, dependencies, municipalities, branches, agents, officers, or employees thereof shall be construed to apply to the Authority unless so specifically provided, but the affairs and business of the Authority shall be administered as provided herein." 22 L.P.R.A. § 217.

(8)    Payment of the Claim is also secured by a number of vested property rights established by the Trust Agreement, the Resolutions and the Authority Act, in the form of

4

covenants, obligations and undertakings of the Authority including, without limitation, the Authority's obligation under Section 501 of the Trust Agreement to collect revenues, the Authority's obligation under Section 502 of the Trust Agreement to set electricity rates sufficient to cover Bond debt service, and the Authority's obligation under various provisions to hold all revenues in trust and to use and turn over the revenues to the Trustee as provided in the Trust Agreement. These property rights also flow from Section 804 of the Trust Agreement, which, among other things, permits Bondholders or the Trustee to redress events of default under the Trust Agreement through the appointment of a receiver.

(9)    Uniform Commercial Code financing statements have been filed in appropriate filing offices to the extent the Uniform Commercial Code may be applicable to the perfection of security interests in property of the Authority described herein. The Trustee reserves all rights with respect to perfection of interests securing the Claim. **Appendix II** includes both a nonexclusive list of filed Uniform Commercial Code financing statements as well as copies of the most recent of such filings. Copies of these financing statements are available in the public records and will be made available to the extent required by paragraph 12 of the Bar Date Order.

(10)    By reason of the Trustee's and Bondholders' interests in (i) revenues, including Revenues of the System, and (ii) other collateral and property rights granted under the Authority Act, the Trust Agreement and the Resolutions, the Claim and the indebtedness evidenced by the Bonds is fully secured. The Trustee reserves all rights with respect to the value of the Trustee's and Bondholders' interests in (i) revenues, including Revenues of the System, and (ii) other collateral and property rights granted under the Authority Act, the Trust Agreement, and the Resolutions.

(11)    The Authority has violated its obligations to the Trustee and the Bondholders under the Trust Agreement in numerous ways, including its failure to: (i) pay interest and principal upon the Bonds when due; (ii) set electricity rates or seek approval of electricity rates at the levels required by the Trust Agreement and Commonwealth law; (iii) bill and collect revenues in accordance with the requirements of the Trust Agreement; (iv) hold in trust, invest, and turn over revenues to the Trustee; (v) maintain the System in accordance with the Trust Agreement; (vi) budget for Current Expenses in annual budgets or limit expenditures to appropriate Current Expenses that are reasonable and necessary to operate and maintain the System; (vii) provide information to the Trustee required by the Trust Agreement, including audited financial statements; and (viii) pay the fees and expenses of the Trustee in accordance with the Trust Agreement. During the Authority's Title III proceedings, the Authority refuses to acknowledge any duty to comply with the Trust Agreement and has generally failed to perform upon its obligations thereunder. The Bondholders have been and continue to be damaged by the Authority's past and ongoing violations of the Trust Agreement. To the extent such violations are relevant to the priority, value or amount of the Claim, the Trustee reserves all rights to amend this Claim and to introduce evidence of such violations and the consequences thereof.

(12)    This Claim has been filed to preserve the claims of the Trustee and the Bondholders as of the Commencement Date. The Trustee reserves the right to add additional amounts to this Claim to the extent additional amounts may be owing under 11 U.S.C. § 502 in connection with or related to the Bonds, the Trust Agreement, or the Resolutions, including claims based upon violations of the Trust Agreement by the Authority or the misapplication of

revenues or other funds subject to the rights of the Trustee and the Bondholders. Nothing herein shall be deemed to limit the right of the Trustee or Bondholders to assert administrative expenses claims, priority claims, or other post-petition claims relating to the Authority Act, the Trust Agreement or the Resolutions, including by reason of the inadequacy of adequate protection for any actions or omissions occurring or failing to occur on or after the Commencement Date.

(13)    Nothing herein is intended to constitute a waiver of any rights or remedies of the Trustee or Bondholders against the Authority or any person or entity that may be liable with the Authority for all or part of the claims set forth herein. Nothing herein is intended to consent to or waive any right with respect to any plan of debt adjustment, including the treatment or classification of the claims set forth herein or the priority of the Claim or any other claims that may be asserted in the Authority's Title III case, or to consent to the jurisdiction of the district court for any purpose. Nothing contained in this Claim shall waive or release any (i) rights or remedies of the Trustee or the Bondholders against the Authority for any past, present or future defaults, or (ii) right to the subordination, in favor of the Trustee and Bondholders, of any indebtedness, claims or liens held by other creditors of the Authority. In the case of any objection to this Claim, the Trustee reserves the right to supplement and modify this Claim in any manner responsive to the objection that preserves the rights of the Trustee and the Bondholders under the Authority Act, the Trust Agreement, and the Resolutions. The Trustee expressly reserves the right to amend this Claim to the fullest extent permitted by law, including as may be needed to include additional statements and information coming to the attention of the Trustee after the date hereof. The description and classification of claims by the Trustee is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of the Trustee or the Bondholders.

(14)    Certain Outstanding Bonds have been insured by monoline insurers, who have paid and may pay principal and interest on certain Outstanding Bonds from time to time. Any amounts paid by the insurers to the Trustee have been applied by the Trustee in such capacity or as otherwise provided in accordance with applicable insurance policies and the Trust Agreement and do not reduce the Authority's obligation to pay all principal and interest owed on the Outstanding Bonds or otherwise reduce the amount owing under this Claim. This Claim includes the principal and interest owing on insured Outstanding Bonds as of the Commencement Date without regard to whether a bond insurer has paid amounts that were owing by the Authority. The Trustee understands that certain of these insurers intend to file their own proofs of claim against the Authority with respect to their rights under applicable policies of insurance and/or insurance agreements. Any statements or positions of such insurers in their respective proofs of claim are made independent of the Trustee and shall not be binding upon the Trustee. The filing of a separate proof of claim by a monoline insurer shall not waive any rights of such insurer preserved by or asserted through (whether directly or indirectly) the filing of this Claim.

(15)    In addition, the Trustee may file a proof of claim against the Commonwealth of Puerto Rico in its Title III case that is related to this Claim. The Trustee may also file other proofs of claim in Title III cases related to this case with respect to its rights in revenues granted by the Authority to the Trustee and Bondholders or the proceeds thereof. To the extent that the Trustee recovers on such proofs of claim, the amounts received will be applied in accordance with the Trust Agreement.

6

(16)     Distributions made by the Authority with respect to the Bonds must be made, in the first instance, to the Trustee for further distribution to Bondholders in accordance with the Trust Agreement.  To the extent that the Bar Date Order permits Bondholders to file their own proofs of claim relating to their Bonds, the Trustee reserves all rights under the Trust Agreement and applicable law with respect to all such claims including, without limitation, duplicative claims or subordinated claims for damages against the Authority relating to the purchase or sale of any Bonds.

(17)     The Trustee is filing a separate proof of claim with respect to its individual rights, and nothing herein shall limit the claims asserted therein or vice versa.  That proof of claim may include information relevant to the calculation of this Claim, including amounts owed to the Trustee, amounts held by the Trustee for the benefit of Bondholders, and the charging lien rights of the Trustee in amounts otherwise distributable to Bondholders.

# APPENDIX I

*Trust Agreement and Amendments and Supplements Thereto*

PUERTO RICO WATER RESOURCES AUTHORITY

TO

FIRST NATIONAL CITY BANK

*Trustee*

---

# Trust Agreement

---

Dated as of January 1, 1974

## TABLE OF CONTENTS

PAGE

Parties ........................................................   1

Recitals:

    Authority Act ..............................................   1
    Powers of Authority ........................................   1
    The System and the 1947 Indenture ..........................   3
    Resignation of Trustee under the 1947 Indenture .................   3
    Successor trustee under the 1947 Indenture ......................   4
    Determination to acquire additional facilities ....................   4
    Determination to issue revenue bonds ...........................   4

    Forms:

        Coupon bonds ........................................   4
        Coupons ............................................   10
        Registered bonds without coupons .........................   11
        Certificate of authentication ...............................   13
        Certificate of authentication for registered bonds .............   13

Power to enter Agreement .......................................   13
Authorization of Agreement .....................................   14
Compliance with law ...........................................   14
Acceptance of trusts by Trustee ..................................   14
Pledge of revenues ............................................   14
Agreement of parties ..........................................   14

## ARTICLE I.

### DEFINITIONS.

SEC.  101.  Meaning of words and terms:

        "Agreement" ........................................   15
        "Amortization Requirement" ..........................   15
        "Annual Budget" ...................................   16
        "Authority" ........................................   16
        "Authority Act" ....................................   16
        "Board" ...........................................   16
        "Bond Service Account" .............................   17
        "bondholder of record" .............................   17
        "bonds" ...........................................   17
        "Capital Expenditures" ..............................   17
        "Construction Fund" ................................   17
        "Consulting Engineers" ..............................   17
        "Controller" .......................................   17
        "cost" .............................................   18
        "Current Expenses" .................................   18
        "daily newspaper" ..................................   18

ii

|  | PAGE |
|---|---|
| "Depositary" | 18 |
| "Executive Director" | 18 |
| "fiscal year" | 19 |
| "General Fund" | 19 |
| "General Reserve Fund" | 19 |
| "Government Obligations" | 19 |
| "Improvements" | 19 |
| "Investment Obligations" | 20 |
| "Net Revenues" | 20 |
| "1947 Construction Fund" | 20 |
| "1947 Indenture" | 20 |
| "1947 Indenture Bonds" | 20 |
| "1947 Revenue Fund" | 20 |
| "1947 Sinking Fund" | 20 |
| "1947 Trustee" | 20 |
| "Opinion of Counsel" | 21 |
| "Paying Agents" | 21 |
| "Principal and Interest Requirements" | 22 |
| "Redemption Account" | 22 |
| "Renewal and Replacement Fund" | 22 |
| "Reserve Account" | 22 |
| "Reserve Maintenance Fund" | 22 |
| "Revenue Fund" | 22 |
| "Revenues" | 23 |
| "Secretary" | 23 |
| "serial bonds" and "term bonds" | 23 |
| "Series" | 23 |
| "Sinking Fund" | 23 |
| "System" | 23 |
| "Time Deposits" | 24 |
| "Treasurer" | 24 |
| "Trustee" | 24 |
| Sec. 102.   Miscellaneous definitions | 24 |

## ARTICLE II.

### Form, Execution and Registration of Bonds and Conditions for Authentication and Delivery of Bonds.

| Sec. 201.   Limitation on issuance of bonds | 24 |
|---|---|
| Sec. 202.   Form of bonds | 24 |

4

iii

|  |  |  | PAGE |
|---|---|---|---|
| SEC. | 203. | Details of bonds | 25 |
|  |  | Execution of bonds and coupons | 25 |
|  |  | Payment of principal and interest | 26 |
| SEC. | 204. | Authentication of bonds | 26 |
| SEC. | 205. | Exchange of coupon bonds for registered bonds | 27 |
|  |  | Exchange of registered bonds for coupon bonds or registered bonds | 27 |
| SEC. | 206. | Negotiability of coupon bonds | 27 |
|  |  | Transfer of registered bonds | 27 |
|  |  | Cancellation of bonds and coupons surrendered for exchange or transfer | 28 |
| SEC. | 207. | Ownership of registered bonds | 28 |
|  |  | Ownership of coupon bonds | 29 |
|  |  | Transfer of title of bonds | 29 |
| SEC. | 208. | Issuance of revenue bonds to pay cost of Improvements | 29 |
|  |  | Conditions of authentication and delivery | 30 |
|  |  | Disposition of bond proceeds | 32 |
| SEC. | 209. | Issuance of revenue bonds for any proper corporate purpose | 32 |
|  |  | Conditions of authentication and delivery | 33 |
|  |  | Disposition of bond proceeds | 35 |
| SEC. | 210. | Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement | 35 |
|  |  | Conditions of authentication and delivery | 37 |
|  |  | Disposition of bond proceeds | 39 |
| SEC. | 211. | Temporary bonds | 40 |
| SEC. | 212. | Mutilated, destroyed or lost bonds | 41 |

## ARTICLE III.

### REDEMPTION OF BONDS.

| SEC. | 301. | Redemption of bonds | 41 |
|---|---|---|---|
|  |  | Selection by Trustee | 41 |
| SEC. | 302. | Redemption notice | 42 |
| SEC. | 303. | Effect of calling for redemption | 42 |
| SEC. | 304. | Matured coupons | 43 |
| SEC. | 305. | Redemption of portion of registered bonds | 43 |

iv

| | | | PAGE |
|---|---|---|---|
| Sec. | 306. | Cancellation of bonds and coupons redeemed | 43 |
| Sec. | 307. | Bonds and portions of bonds called for redemption not deemed outstanding | 43 |

ARTICLE IV.

CUSTODY AND APPLICATION OF PROCEEDS OF BONDS.

| Sec. | 401. | Construction Fund | 44 |
| Sec. | 402. | Payments from Construction Fund | 44 |
| Sec. | 403. | Items of cost | 45 |
| Sec. | 404. | Lands for projects | 46 |

ARTICLE V.

REVENUES AND FUNDS.

| Sec. | 501. | Covenant as to bills for services | 46 |
| Sec. | 502. | Covenant as to rates | 46 |
| Sec. | 503. | General Fund | 48 |
| Sec. | 504. | Annual Budget | 49 |
| Sec. | 505. | Application of moneys in General Fund | 50 |
| Sec. | 506. | Revenue Fund | 51 |
| Sec. | 507. | Sinking Fund | 51 |
| | | Bond Service Account, Reserve Account and Redemption Account | 51 |
| | | Reserve Maintenance Fund | 51 |
| Sec. | 508. | Disposition of balances in 1947 Indenture funds and accounts | 54 |
| Sec. | 509. | Application of moneys in Bond Service Account | 54 |
| Sec. | 510. | Application of moneys in Reserve Account | 55 |
| Sec. | 511. | Application of moneys in Redemption Account | 55 |
| | | Purchase of bonds | 55 |
| | | Redemption of bonds | 55 |
| Sec. | 512. | Use of moneys in Reserve Maintenance Fund | 57 |
| Sec. | 513. | Application and pledge of moneys in Sinking Fund | 58 |

6

v

|  |  |  | PAGE |
|---|---|---|---|
| Sec. | 514. | Moneys set aside for principal and interest held in trust .... | 58 |
|  |  | Moneys unclaimed for six years after maturity of bonds and coupons ................................................ | 58 |
| Sec. | 515. | Cancellation of bonds and coupons upon payment ......... | 58 |

## ARTICLE VI.

### Depositaries of Moneys, Security for Deposits and Investment of Funds.

| Sec. | 601. | Deposits constitute trust funds ........................ | 59 |
|---|---|---|---|
|  |  | Security for deposits ................................ | 59 |
| Sec. | 602. | Investment of moneys ................................ | 60 |
|  |  | Investments deemed to be part of Fund or Account for which purchased ......................................... | 61 |

## ARTICLE VII.

### Particular Covenants.

| Sec. | 701. | Payment of principal, interest and premium ............. | 61 |
|---|---|---|---|
|  |  | Pledge of revenues ................................... | 62 |
|  |  | Bonds not general obligations of Commonwealth of Puerto Rico ................................................ | 62 |
|  |  | Offices or agencies for payment of coupon bonds and coupons | 62 |
| Sec. | 702. | Covenant to integrate Improvements into System ......... | 62 |
|  |  | Covenant to construct Improvements in accordance with plans | 62 |
|  |  | Covenant as to operation ............................. | 63 |
| Sec. | 703. | Compliance with 1947 Indenture ...................... | 63 |
|  |  | Release of 1947 Indenture ........................... | 63 |
|  |  | Covenant as to amendment of 1947 Indenture ............ | 63 |
| Sec. | 704. | Covenant as to Renewal and Replacement Fund .......... | 63 |
| Sec. | 705. | Payment of lawful charges ............................ | 64 |
| Sec. | 706. | Employment of Consulting Engineers .................... | 64 |
| Sec. | 707. | Insurance ........................................... | 65 |
| Sec. | 708. | Inspection of insurance policies ........................ | 67 |
| Sec. | 709. | No inconsistent action ............................... | 67 |
| Sec. | 710. | Accurate records .................................... | 67 |
|  |  | Monthly reports ..................................... | 68 |
|  |  | Annual audits ....................................... | 68 |
|  |  | Additional reports or audits .......................... | 68 |

vi

PAGE

Sec.  711.  Covenant as to additional 1947 Indenture Bonds ........... 69
Sec.  712.  Covenant against sale or encumbrance; exceptions .......... 69

## ARTICLE VIII.

### Remedies.

Sec.  801.  Extended coupons ................................... 71
Sec.  802.  Events of default .................................. 71
Sec.  803.  Acceleration of maturities .......................... 73
Sec.  804.  Enforcement of remedies ............................ 74
Sec.  805.  Pro rata application of funds ....................... 75
Sec.  806.  Effect of discontinuance of proceedings ............. 77
Sec.  807.  Majority of bondholders may control proceedings ....... 77
Sec.  808.  Restrictions upon action by individual bondholder ...... 78
Sec.  809.  Actions by Trustee ................................. 79
Sec.  810.  No remedy exclusive ............................... 79
Sec.  811.  No delay or omission construed to be a waiver ........... 79
            Repeated exercise of powers and remedies ............... 79
            Waiver of default ................................. 79
Sec.  812.  Notice of default .................................. 79

## ARTICLE IX.

### Concerning the Trustee.

Sec.  901.  Acceptance of trusts ............................... 80
Sec.  902.  Trustee entitled to indemnity ....................... 80
            Trustee may act without indemnity ................... 80
            Reimbursement of Trustee ........................... 80
Sec.  903.  Limitation on obligations and responsibilities of Trustee ..... 80
Sec.  904.  Trustee not liable for failure of Authority to act or for
            deposits in other banks ............................ 81
Sec.  905.  Compensation and indemnification of Trustee ............ 81
Sec.  906.  Monthly statement from Trustee ...................... 82

vii

| | | | PAGE |
|---|---|---|---|
| Sec. | 907. | Trustee may rely on certificates | 82 |
| Sec. | 908. | Notice of default | 83 |
| Sec. | 909. | Trustee may deal in bonds and take action as bondholder | 83 |
| Sec. | 910. | Trustee not responsible for recitals | 83 |
| Sec. | 911. | Trustee protected in relying on certain documents | 83 |
| Sec. | 912. | Resignation of Trustee | 84 |
| Sec. | 913. | Removal of Trustee | 84 |
| Sec. | 914. | Appointment of successor Trustee | 84 |
| Sec. | 915. | Vesting of trusts in successor Trustee | 85 |

## ARTICLE X.

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS AND PROOF OF OWNERSHIP OF BONDS.

| | | PAGE |
|---|---|---|
| Sec. 1001. | Execution of instruments by bondholders | 86 |
| | Proof of execution | 86 |
| | Proof of holding of bonds | 87 |
| | Other proof | 87 |
| | Bondholders' actions bind future holders | 87 |

## ARTICLE XI.

### SUPPLEMENTAL AGREEMENTS.

| | | PAGE |
|---|---|---|
| Sec. 1101. | Supplemental agreements by Authority and Trustee | 87 |
| | Notice of supplemental agreement | 88 |
| Sec. 1102. | Modification of Agreement with consent of 60% of bond-holders | 88 |
| | Restrictions on modifications | 89 |
| | Notice of supplemental agreement | 89 |
| | Consent of holders of 60% of bonds binds all | 90 |
| Sec. 1103. | Trustee joining in supplemental agreement | 90 |
| | Supplemental agreements part of this Agreement | 90 |
| Sec. 1104. | Responsibilities of Trustee under this Article | 91 |
| | Trustee may rely upon opinion of counsel | 91 |

## ARTICLE XII.

### DEFEASANCE.

| | | PAGE |
|---|---|---|
| Sec. 1201. | Release of Agreement | 91 |

viii

PAGE

## ARTICLE XIII.
### MISCELLANEOUS PROVISIONS.

SEC. 1301.  Successorship of Authority ............................. 92

SEC. 1302.  Manner of giving notice, etc. ........................... 93

SEC. 1303.  Successorship of Paying Agents ........................ 93

SEC. 1304.  Parties and bondholders alone have rights under Agreement.. 94

SEC. 1305.  Effect of partial invalidity .............................. 94

SEC. 1306.  Substitute publication .................................. 94

SEC. 1307.  Other funds not prohibited ............................. 95

SEC. 1308.  Headings, etc. not part of Agreement ................... 95

SEC. 1309.  Multiple counterparts .................................. 95


## EXECUTION

Execution by Authority ............................................ 96

Execution by Trustee .............................................. 96


## ACKNOWLEDGMENTS

Acknowledgment by Authority ...................................... 97

Acknowledgment by Trustee ........................................ 97

THIS TRUST AGREEMENT, dated for convenience of reference as of January 1, 1974, by and between

PUERTO RICO WATER RESOURCES AUTHORITY,

a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Authority"), and

FIRST NATIONAL CITY BANK,

a national banking association duly incorporated and existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise trust powers and is subject to examination by federal authority (said banking association and any bank or trust company becoming successor trustee under this Agreement being hereinafter sometimes called the "Trustee"), WITNESSETH:

WHEREAS, by Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), the Authority was created a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico; and

*Authority Act.*

WHEREAS, by virtue of the Authority Act the Authority is empowered to conserve, develop and utilize the water and energy resources of Puerto Rico for the purpose of making available to the inhabitants of the Commonwealth, in the widest economic manner, the benefits thereof, for the promotion of the general welfare and to increase commerce and prosperity, and the Authority is granted and may exercise all the rights and powers necessary or convenient to carry out the aforesaid purposes including but not limited to the following, among others:

*Powers of Authority.*

(a) to have complete control and supervision of any undertaking constructed or acquired by it including the power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provisions of any laws governing the expen-

2

diture of public funds, and such determination shall be final and conclusive upon all officers of the Commonwealth Government, and to prescribe, adopt, amend, and repeal such rules and regulations as may be necessary or proper for the exercise and performance of its powers and duties or to govern the rendering of service or sale or exchange of water or electric energy;

(b) to sue and be sued, implead and be impleaded, complain and defend, in all courts;

(c) to make contracts and to execute all instruments necessary or convenient in the exercise of any of its powers;

(d) to acquire in any lawful manner including, but without limitation, acquisition by purchase, whether by agreement or by the exercise of the power of eminent domain, lease, bequest, devise, gift, and to hold, maintain, use and operate any undertaking or parts thereof;

(e) to acquire in the manner set forth above, produce, impound, develop, manufacture, treat, hold, conserve, use, transmit, distribute, supply, exchange, sell, rent and otherwise dispose of, water, electric energy, equipment, and such other things, supplies and services as the Authority shall deem necessary, proper, incidental, or convenient in connection with its activities; provided, that in disposing at wholesale of electric energy the Authority shall give preference and priority as to supply to public bodies and cooperatives;

(f) to construct or reconstruct any undertaking or any part or parts thereof, and any additions, improvements, and extensions to any undertaking of the Authority by contract or contracts, or under, through, or by means of its own officers, agents, and employees;

(g) to determine, fix, alter, charge and collect reasonable rates, fees, rentals, and other charges for the use of the facilities of the Authority, or for the services, electric energy, or other commodities sold, rendered, or furnished by it, which shall be sufficient for the payment of the expenses of the Authority incurred in the conservation, development, improvement, extension, repair, maintenance, and operation of its facilities and properties,

3

for the payment of the principal of and interest on its bonds, and for fulfilling the terms and provisions of such covenants as may be made with, or for the benefit of, the purchasers or holders of any bonds of the Authority;

(h) to borrow money, make and issue bonds of the Authority for any of its corporate purposes, and to secure payment of its bonds and of any and all other obligations by pledge of or lien on all or any of its contracts, revenues, and income only; and

(i) to make and issue bonds for the purpose of funding, refunding, purchasing, paying, or discharging any of the outstanding bonds or obligations issued or assumed by it or any bonds or obligations the principal or interest of which is payable in whole or in part from its revenues; and

WHEREAS, the Authority owns and operates an integrated system for the generation, transmission and distribution of electricity throughout the Commonwealth of Puerto Rico, and for the purpose of providing funds, with other available funds, for refunding certain outstanding bonds and paying the cost of a capital improvement program to provide additional generating capacity for the System (as defined herein) and necessary extensions of the transmission and distribution lines of the System and other improvements, the Authority has heretofore issued its Puerto Rico Water Resources Authority Electric Revenue Bonds, outstanding on the date hereof in the aggregate principal amount of $868,643,000, under and pursuant to the provisions of a trust indenture, dated as of the first day of January, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by supplemental indentures dated as of January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971 (said indenture as so amended, together with all future amendments and all indentures supplemental thereto as therein permitted, being herein called the "1947 Indenture"); and

*The System and the 1947 Indenture.*

WHEREAS, First National City Bank has resigned as trustee under the 1947 Indenture and has thereby become discharged from the trusts created thereby; and

*Resignation of Trustee under the 1947 Indenture.*

4

**Successor trustee under the 1947 Indenture.**

WHEREAS, the Authority has appointed The Chase Manhattan Bank (National Association) trustee under the 1947 Indenture, and said banking association, having executed, acknowledged and delivered to its predecessor trustee, and also to the Authority, an instrument in writing accepting such appointment under the 1947 Indenture, is now vested with all rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessor trustee under the 1947 Indenture; and

**Determination to acquire additional facilities.**

WHEREAS, based upon surveys, estimates and recommendations, the Authority has found and determined that it is necessary and advisable to provide funds for additional facilities for the generation, transmission and distribution of electricity to serve the present and prospective demands upon the System, and has determined that it is necessary to increase its capacity to issue revenue bonds secured as hereinafter provided to provide funds for the foregoing purposes; and

**Determination to issue revenue bonds.**

WHEREAS, the Authority deems it advisable to make provision for the issuance from time to time of revenue bonds on a parity with the bonds issued initially under the provisions of this Agreement for the purpose of paying all or any part of the cost of any Improvements (as defined herein); and

WHEREAS, the Authority has determined that the coupon bonds to be issued hereunder and the interest coupons to be attached thereto, the registered bonds without coupons to be issued hereunder and the certificate of authentication by the Trustee to be endorsed on all such bonds shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Agreement:

**Form of coupon bonds.**

[FORM OF COUPON BONDS]

No. ........................                                                    $........................

## UNITED STATES OF AMERICA

## PUERTO RICO WATER RESOURCES AUTHORITY

### POWER REVENUE BOND, SERIES ..........

Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instru-

5

mentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the bearer on the 1st day of ..............., ........... (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the principal sum of

.................................. THOUSAND DOLLARS

and to pay, solely from said special fund, interest thereon from the date hereof at the rate of ................... per centum (...........%) per annum until payment of said principal sum, such interest to the maturity hereof being payable semi-annually on the 1st days of January and July in each year upon the presentation and surrender of the coupons representing such interest as the same respectively become due. Both the principal of and the interest on this bond are payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of this bond and the interest hereon are payable at the principal office of ..................................................... ................................................., in the ......................................................, or at the principal office of ............................................................. in the Borough of Manhattan, City and State of New York, at the option of the holder, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of revenue bonds known as "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ...........", dated as of the 1st day of ..................., ..........., consisting of bonds maturing in annual installments on the 1st day of ........... ........................ in the years ........... to ..........., inclusive (herein called the "serial bonds"), and of bonds maturing on the 1st day of ..................., ......... and the 1st day of ..................., ........... (herein collectively called the

6

"term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed under the provisions of the 1947 Indenture (hereinafter mentioned) and the Agreement (hereinafter mentioned), being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and First National City Bank, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the Corporate Trust Office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

7

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the 1947 Indenture Bonds and the bonds as the same become due and payable, including reserves for such purposes. The 1947 Indenture provides for the deposit to the credit of a special fund designated "Water Resources Authority Renewal and Replacement Fund" (herein called the "Renewal and Replacement Fund") of the revenues of the System, to the extent required, over and above such expenses of conservation, repair, maintenance and operation and the amounts required to be deposited to the credit of the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund and the Puerto Rico Water Resources Authority General Reserve Fund under the 1947 Indenture, and the Agreement provides for the deposit to the credit of the Renewal and Replacement Fund of sufficient funds to provide for the payments from said Fund to the special fund created under the Agreement designated "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund"). The Agreement also provides for the payment into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Renewal and Replacement Fund to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of and the interest on the bonds.

The Authority has heretofore issued under the provisions of the trust indenture, dated as of the first day of January, 1947 (such indenture as amended being herein called the "1947 Indenture"), Puerto Rico Water Resources Authority Electric Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1947 Indenture, called the "1947 Indenture Bonds"). Until all of the 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the release of the 1947 Indenture, the revenues of the System, over and above the expenses of conservation, repair, maintenance and operation thereof, are pledged to the extent required to the payment of the principal of and the interest on the outstanding 1947 Indenture Bonds.

8

The bonds are issuable as coupon bonds and as registered bonds without coupons, in such denominations as the Authority may by resolution determine. At the Corporate Trust Office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, registered bonds without coupons may be exchanged for an equal aggregate principal amount of coupon bonds of the same series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate, and coupon bonds with all coupons appertaining thereto representing all unpaid interest due or to become due thereon may in like manner be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate.

[Here insert in the bonds of each Series the terms of redemption applicable to the bonds of such Series.]

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for pay-

9

ment of the redemption price and the accrued interest are held by the Trustee or by the paying agents, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee or by the paying agents.

The holder of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

As declared by the Authority Act, this bond shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

10

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, and the attached interest coupons to bear the facsimile signature of said Executive Director, all as of the 1st day of ............................., .............

[Facsimile of
  corporate seal]

PUERTO RICO WATER
RESOURCES AUTHORITY

By ..................................................
Executive Director

..................................................
Secretary

Form of coupons.

[FORM OF COUPONS]

No............................                                    $.............................

On ............................. 1, 19............, Puerto Rico Water Resources Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Agreement referred to in said bond and provision for payment thereof shall have been duly made) at the principal office of ..............................................................,
in the ............................., or at the principal office of ............................., in the Borough of Manhattan, City and State of New York, at the option of the bearer, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine upon the presentation and surrender hereof, the sum of ..................................................................... Dollars

11

in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts, solely from the special fund referred to in, and for the semi-annual interest then due upon, its Puerto Rico Water Resources Authority Power Revenue Bond, Series ............, dated as of ........................., ............, No. ...........................

........................................................
Executive Director, Puerto Rico
Water Resources Authority

[FORM OF REGISTERED BONDS WITHOUT COUPONS]

Same as Form of Coupon Bonds except as follows:

1. *Substitute the following for the caption and the first paragraph:*

No. R................                                $...............

## UNITED STATES OF AMERICA

## PUERTO RICO WATER RESOURCES AUTHORITY

### POWER REVENUE BOND, SERIES ............

Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to ............................................................, or registered assigns or legal representative, on the 1st day of ........................., ............ (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the Corporate Trust Office of the Trustee (hereinafter mentioned), the principal sum of

...................................................................... DOLLARS

in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the registered owner hereof by check mailed to the registered owner at his address as it appears on the bond registration books of the Authority, interest on said principal sum from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which

*Form of registered bonds without coupons.*

12

interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year in like coin or currency, at the rate of          per centum (    %) per annum until payment of said principal sum.

2. *Substitute the following for the paragraph concerning the notice of redemption and the effect thereof:*

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee. If a portion of this bond shall be called for redemption, a new bond or bonds in principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof.

3. *Substitute the following for the paragraph concerning negotiability:*

The transfer of this bond is registrable by the registered owner hereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new registered bond or bonds without coupons, registered in the name of the transferee, of authorized denominations, or, at the option of the transferee, coupon bonds with

13

coupons attached representing all unpaid interest due or to become due thereon, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

4. *Substitute the following for the witnessing clause:*

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of .............................., .............

5. *Omit the Form of Coupons.*

[TO BE ENDORSED ON ALL BONDS]                          **Form of Certificate**
                                                        **of Authentication.**

## CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

First National City Bank, Trustee

By ................................................ .........................
            Authorized Officer

[TO BE ENDORSED ON ALL REGISTERED BONDS FOLLOWING        **Form of Certificate**
THE CERTIFICATE OF AUTHENTICATION]                        **of Authentication for**
                                                          **registered bonds.**

Date of authentication: ...................................

and

WHEREAS, by virtue of the Authority Act, the Authority is author-    **Power to enter**
ized to issue revenue bonds as hereinafter provided, to enter into this   **Agreement.**
Agreement and to do or cause to be done all the acts and things herein
provided or required to be done as hereinafter covenanted; and

14

**Authorization of Agreement.**

WHEREAS, the execution and delivery of this Agreement have been duly authorized by resolution of the Authority; and

**Recital of compliance with law.**

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act, by the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Agreement have happened, exist and have been performed as so required, in order to make this Agreement a legal, valid and binding trust agreement for the security of the bonds in accordance with its terms; and

**Recital of acceptance by Trustee.**

WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof;

**Pledge of revenues of the System.**

Now, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the bonds by the holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding hereunder and the interest and the redemption premium, if any, thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged and does hereby pledge to the Trustee the revenues of the System, subject to the pledge of such revenues to the payment of the principal of and the interest on the 1947 Indenture Bonds (hereinafter mentioned), and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest and the redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in connection with such bonds, and it is mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders

**Agreement of parties.**

Section 101

15

of the bonds issued and to be issued under this Agreement, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise, as follows:

## ARTICLE I.

### DEFINITIONS.

SECTION 101. In addition to words and terms elsewhere defined in this Agreement, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

The word "Agreement" shall mean this Agreement, dated as of January 1, 1974, together with all agreements supplemental hereto as herein permitted.

Agreement.

As applied to the term bonds of any Series, the term "Amortization Requirement" for any fiscal year shall mean the principal amount fixed or computed for such fiscal year as hereinafter set forth for the retirement of such term bonds by purchase or redemption.

Amortization Requirement.

The Amortization Requirements for the term bonds of each Series shall be initially the respective principal amounts for each fiscal year as fixed in a resolution of the Board adopted prior to the issuance of the bonds of such Series; provided, however, that if any additional term bonds of such Series shall be issued under the provisions of the first paragraph of Section 210 of this Agreement, the respective Amortization Requirements for the term bonds of such Series shall be increased in proportion as nearly as may be practicable to the increase in the total principal amount of the term bonds of such Series. The aggregate amount of such Amortization Requirements for the term bonds of each Series shall be equal to the aggregate principal amount of the term bonds of such Series. The Amortization Requirements for the term bonds of each Series shall begin in the fiscal year determined by the Board.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption, or prior to the close of such fiscal year called for redemption under the provisions of Section 511 of this Agreement, shall be in excess of the amount of the Amortization Requirements for the term bonds of such Series

Section 101

16

for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series shall be reduced for such subsequent fiscal years in such amounts aggregating the amount of such excess as shall be determined by the Executive Director in an order filed with the Trustee on or before the 10th day of July following the close of such fiscal year.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption, or called for redemption under the provisions of Section 511 of this Agreement, prior to the close of such fiscal year shall be less than the amount of the Amortization Requirements for the term bonds of such Series for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series for the next succeeding fiscal year shall be increased by the amount of the excess of such deficiency over the amount then held to the credit of the Redemption Account.

It shall be the duty of the Trustee, on or before the 15th day of July in each fiscal year, to compute the Amortization Requirements for the then current fiscal year for the term bonds of each Series then outstanding. The Amortization Requirement for the then current fiscal year shall continue to be applicable during the balance of such current fiscal year and no adjustment shall be made therein by reason of term bonds purchased or redeemed or called for redemption during such current fiscal year.

**Annual Budget.** The term "Annual Budget" shall mean the Authority's budget of Current Expenses and Capital Expenditures for a fiscal year adopted pursuant to the provisions of Section 504 of this Agreement.

**Authority.** The word "Authority" shall mean the Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, and the successor or successors of the Authority.

**Authority Act.** The term "Authority Act" shall mean the Puerto Rico Water Resources Authority Act, being Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended and reenacted by Act No. 19, approved April 8, 1942, as amended, and Act No. 111, approved May 6, 1941, as amended by Act No. 153, approved May 14, 1943, as amended.

**Board.** The word "Board" shall mean the governing board of the Authority as constituted from time to time and defined by the Authority Act,

Section 101

17

or if said Board shall be abolished, then the board, body or officer succeeding to the principal functions thereof or to whom the powers of the Authority shall be given by law.

The term "Bond Service Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

Bond Service Account.

The term "bondholder of record" shall mean any bondholder who shall have filed with the Secretary, within the period of two years immediately prior to any time when such term has application, a written request setting forth his name and address and the particular reports, notices and other documents which he desires to receive and which are required to be mailed under the requirements of this Agreement.

Bondholders of record.

The word "bonds" shall mean the bonds issued under this Agreement.

Bonds.

The term "Capital Expenditures" shall mean all expenditures made on account of the cost of the Capital Improvement Program, as defined in the 1947 Indenture, and the cost of Improvements under this Agreement and the 1947 Indenture and those expenditures made for the purposes for which funds are provided pursuant to the provisions of Section 512 of the 1947 Indenture.

Capital Expenditures.

The term "Construction Fund" shall mean the Puerto Rico Water Resources Authority Power System Construction Fund, a special fund created and designated by the provisions of Section 401 of this Agreement.

Construction Fund.

The term "Consulting Engineers" shall mean the engineer or engineering firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties imposed on the Consulting Engineers by this Agreement.

Consulting Engineers.

The word "Controller" shall mean the Controller or any Assistant Controller of the Authority, or if there is no controller or assistant controller, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the chief financial officer of the Authority.

Controller.

**Section 101**

18

Cost.

The word "cost", as applied to any Improvements, shall embrace the cost of the acquisition and construction and all obligations and expenses and all items of cost which are set forth in Section 403 of this Agreement.

Current Expenses.

The term "Current Expenses" shall mean the Authority's reasonable and necessary current expenses of maintaining, repairing and operating the System and shall include, without limiting the generality of the foregoing, all administrative expenses, insurance premiums, expenses of preliminary surveys not chargeable to Capital Expenditures, engineering expenses relating to operation and maintenance, fees and expenses of the Trustee, the 1947 Trustee, the Paying Agents and of the paying agents under the 1947 Indenture, legal expenses, any payment to pension or retirement funds, and all other expenses required to be paid by the Authority under the provisions of the 1947 Indenture, this Agreement or by law, or permitted by standard practices for public utility systems, similar to the properties and business of the Authority and applicable in the circumstances but shall not include any deposits to the credit of the Sinking Fund, the Reserve Maintenance Fund or the 1947 Sinking Fund or deposits under the provisions of Sections 511, 512 and 513 of the 1947 Indenture.

Daily newspaper.

The term "daily newspaper" shall mean a newspaper regularly published in the English language on at least five (5) business days in each calendar week and, in the case of a newspaper published in the Commonwealth of Puerto Rico, may include a newspaper regularly published in the Spanish language on at least five (5) business days in each calendar week.

Depositary.

The word "Depositary" shall mean one or more banks or trust companies duly authorized under the laws of the United States of America, or any state thereof or the Commonwealth of Puerto Rico to engage in the banking business therein and designated by the Authority as a depositary of moneys under the provisions of this Agreement, each such depositary to be a member of the Federal Deposit Insurance Corporation and shall also mean the Trustee and Government Development Bank for Puerto Rico.

Executive Director.

The term "Executive Director" shall mean the Executive Director or the Vice Executive Director of the Authority for the time being, or if there is no Executive Director or Vice Executive Director, then any

Section 101

19

person designated by the Board or by the by-laws of the Authority to perform the functions of the Executive Director.

The term "fiscal year" shall mean the period commencing on the 1st day of July of any year and ending on the last day of June of the following year.

Fiscal year.

The term "General Fund" shall mean the Puerto Rico Water Resources Authority General Fund, a special fund created and designated by the provisions of Section 503 of this Agreement.

General Fund.

The term "General Reserve Fund" shall mean the Puerto Rico Water Resources Authority General Reserve Fund, a special fund created and designated by the provisions of Section 511 of the 1947 Indenture.

General Reserve Fund.

The term "Government Obligations" shall mean (i) direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States Government, (ii) bonds, debentures or notes issued by any of the following Federal agencies: Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Home Loan Banks, Export-Import Bank of the United States, Government National Mortgage Association, Federal Land Banks, or the Federal National Mortgage Association (including participation certificates issued by such Association) and (iii) all other obligations issued or unconditionally guaranteed as to principal and interest by an agency or person controlled or supervised by and acting as an instrumentality of the United States Government pursuant to authority granted by the Congress.

Government Obligations.

The word "Improvements" shall mean such improvements, renewals and replacements of the System or any part thereof and such extensions and additions thereto as may be necessary or desirable, in the judgment of the Board, to keep the same in proper condition for the safe, efficient and economic operation thereof and to integrate into the System any unit or part thereof, and shall include such electric-power projects as may be authorized to be acquired or constructed by the Authority under the provisions of the Authority Act and such improvements, renewals and replacements of such properties and the System and such extensions and additions thereto as may be necessary or desirable for continuous and efficient service to the public, which shall be financed in whole or in substantial part from the proceeds of bonds

Improvements.

Section 101

20

issued under the provisions of the 1947 Indenture or this Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

**Investment Obligations.**

The term "Investment Obligations" shall mean (i) Government Obligations, (ii) obligations of any state or territory of the United States or political subdivision thereof (other than obligations rated lower than the three highest grades by a nationally recognized rating agency) and (iii) repurchase agreements with commercial banks fully secured by Government Obligations.

**Net Revenues.**

The term "Net Revenues" for any particular period shall mean the amount of the excess of the Revenues for such period over the Current Expenses for such period.

**1947 Construction Fund.**

The term "1947 Construction Fund" shall mean the Puerto Rico Water Resources Authority Construction Fund, a special fund created and designated by the provisions of Section 401 of the 1947 Indenture.

**1947 Indenture.**

The term "1947 Indenture" shall mean the Trust Indenture, dated as of January 1, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by Supplemental Indentures, dated January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971, together with all future amendments and all indentures supplemental thereto as therein permitted.

**1947 Indenture Bonds.**

The term "1947 Indenture Bonds" shall mean the bonds issued under the 1947 Indenture.

**1947 Revenue Fund.**

The term "1947 Revenue Fund" shall mean the Water Resources Authority Electric Revenue Fund, a special fund created and designated by the provisions of Section 506 of the 1947 Indenture.

**1947 Sinking Fund.**

The term "1947 Sinking Fund" shall mean the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund, a special fund created and designated by the provisions of Section 507 of the 1947 Indenture.

**1947 Trustee.**

The term "1947 Trustee" shall mean the trustee under the 1947 Indenture for the time being, whether original or successor.

Section 101

21

The term "Opinion of Counsel" shall mean a written opinion of   Opinion of Counsel.
counsel who may (except as otherwise expressly provided in this
Agreement) be counsel for the Authority. Every opinion of counsel
required to be filed with the Trustee in connection with an application
to the Trustee to authenticate bonds under this Agreement shall con-
tain the following statements: (i) that the Authority has the legal
right and power to enter into this Agreement and has duly authorized
and validly executed and delivered this Agreement and this Agreement
is legally valid and binding upon the Authority and enforceable in ac-
cordance with its terms, (ii) that this Agreement creates a legally valid
and effective pledge of the Net Revenues, subject only to the lien of the
1947 Indenture, and of the moneys, securities and funds held or set
aside under this Agreement as security for the bonds, subject to the
application thereof to the purposes and on the conditions permitted by
this Agreement and specifying the place or places, if any, where filing
or recording of any document is necessary in order to make such pledge
effective or to continue it in effect, (iii) that the Authority has paid all
municipal or governmental charges lawfully levied or assessed upon the
System or any part thereof or upon any Revenues, (iv) that the issuance
of the bonds then directed to be authenticated and delivered will not
violate any provision of law or of the by-laws of the Authority, or
result in the breach of, or constitute a default under, any agreement,
indenture or other instrument to which the Authority is a party or by
which it may be bound, (v) that no authorization, consent or approval
or withholding of objection of any governmental body or regulatory
authority is requisite to the legal issue of said bonds (unless such
opinion shall show that no authorization, consent or approval or with-
holding of objection is requisite to the legal issue of said bonds, it shall
specify and attach any officially authenticated certificates, or other
documents, by which such authorization, consent or approval or with-
holding of objection is evidenced), and (vi) that the bonds then directed
to be authenticated and delivered are legally valid and binding direct
obligations of the Authority, enforceable in accordance with their
terms and the terms of this Agreement and have been duly and
validly authorized and issued in accordance with law and this Agree-
ment.

The term "Paying Agents" shall mean with respect to the bonds   Paying Agents.
of each Series the one or more banks or trust companies designated
in a resolution of the Board the office or agency of the Authority
where the coupon bonds and coupons may be presented for payment.

Section 101

22

Principal and
Interest
Requirements.

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series issued under this Agreement or the 1947 Indenture, shall mean the sum of:

(a) the amount required to pay the interest on all outstanding bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year,

(b) the amount required to pay the principal of all outstanding serial bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year, and

(c) the Amortization Requirement for the term bonds of such Series for such fiscal year.

The Principal and Interest Requirements for the bonds of any Series issued under this Agreement shall be determined, as required from time to time, by the Trustee. In computing the Principal and Interest Requirements for any fiscal year for the bonds of any Series, the Trustee shall assume that an amount of the term bonds of such Series equal to the Amortization Requirement for the term bonds of such Series for such fiscal year will be retired by purchase or redemption on July 1 in the following fiscal year.

Redemption Account.

The term "Redemption Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

Renewal and
Replacement Fund.

The term "Renewal and Replacement Fund" shall mean the Water Resources Authority Renewal and Replacement Fund, a special fund created and designated by the provisions of Section 512 of the 1947 Indenture.

Reserve Account.

The term "Reserve Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

Reserve Maintenance
Fund.

The term "Reserve Maintenance Fund" shall mean the Puerto Rico Water Resources Authority Reserve Maintenance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

Revenue Fund.

The term "Revenue Fund" shall mean the Puerto Rico Water Resources Authority Power Revenue Fund, a special fund created and designated by the provisions of Section 506 of this Agreement.

Section 101

23

The word "Revenues" shall mean all moneys received by the Authority in connection with or as a result of its ownership or operation of the System, including the income derived by the Authority from the sale of electricity generated or distributed by the System, any proceeds of use and occupancy insurance on the System or any part thereof and income from investments made under the provisions of the 1947 Indenture and this Agreement, except income from the investment of moneys in the 1947 Construction Fund, the Construction Fund and the Reserve Maintenance Fund which shall be deemed to be a part of said Funds, respectively.

*Revenues.*

The word "Secretary" shall mean the Secretary or any Assistant Secretary of the Authority, or if there is no secretary or assistant secretary, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Secretary.

*Secretary.*

The term "serial bonds" shall mean the bonds of a Series which shall be stated to mature in annual or semi-annual installments, and the term "term bonds" shall mean the bonds of a Series maturing on July 1 and designated term bonds in a resolution of the Board adopted prior to the issuance of such bonds.

*serial bonds and term bonds.*

The word "Series" shall mean either (i) the bonds issued and delivered at any one time under the provisions of Sections 208 or 209 of this Agreement or (ii) the refunding bonds issued at any one time under the provisions of the second paragraph of Section 210 of this Agreement. Bonds issued under the first paragraph of Section 210 of this Agreement to refund serial bonds of any Series shall be deemed to constitute a part of the bonds of such Series.

*Series.*

The term "Sinking Fund" shall mean the Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

*Sinking Fund.*

The word "System" shall mean all the properties presently owned and operated by the Authority as a single integrated system, together with all works and properties which may be hereafter acquired or constructed by the Authority in connection with the production, distribution or sale of electric energy and the acquisition or construction of which shall be financed in whole or in part from the proceeds of bonds issued under the provisions of the 1947 Indenture or this

*System.*

Section 101

24

Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

Time Deposits.

The term "Time Deposits" shall mean time deposits, certificates of deposit or similar arrangements with the Trustee, Government Development Bank for Puerto Rico or any bank or trust company which is a member of the Federal Deposit Insurance Corporation having a combined capital and surplus aggregating not less than $100,000,000.

Treasurer.

The word "Treasurer" shall mean the Treasurer or any Assistant Treasurer of the Authority, or if there is no treasurer or assistant treasurer, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Treasurer.

Trustee.

The word "Trustee" shall mean the Trustee for the time being, whether original or successor.

Miscellaneous.

Section 102. Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

ARTICLE II.

Form, Execution and Registration of Bonds and
Conditions for Authentication and Delivery of Bonds.

Limitation on issuance of bonds.

Section 201. No bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

Form of bonds.

Section 202. The definitive bonds are issuable as coupon bonds and as registered bonds without coupons. The definitive bonds issued under the provisions of this Article shall be substantially in the forms hereinabove set forth, with such appropriate variations, omis-

*see supplemental agmt (Doc 1740/57)
Ltr 81·183*

34

Section 203

25

sions and insertions as are permitted or required by this Agreement
and with such additional changes as may be necessary or appropriate
to conform to the provisions of the resolution or resolutions providing
for the issuance of such bonds. All such bonds may have endorsed
thereon such legends or text as may be necessary or appropriate to
conform to any applicable rules and regulations of any governmental
authority or of any securities exchange on which the bonds may be
listed or traded or any usage or requirement of law with respect thereto
or as may be authorized by the Authority and approved by the Trustee.

SECTION 203. The bonds shall be dated, shall bear interest until
their payment, such interest to the maturity thereof being payable
semi-annually on the 1st days of January and July in each year, and
shall be stated to mature (subject to the right of prior redemption), all
as hereinafter provided.

Details of bonds.

Each coupon bond shall bear interest from its date. Each regis-
tered bond without coupons shall bear interest from the interest pay-
ment date next preceding the date on which it is authenticated, unless
authenticated on an interest payment date, in which case it shall bear
interest from such interest payment date, or, unless authenticated prior
to the first interest payment date, in which case it shall bear interest
from its date; provided, however, that if at the time of authentication
of any registered bond without coupons interest is in default, such
bond shall bear interest from the date to which interest shall have
been paid.

The bonds shall be signed by, or bear the facsimile signature of,
the Executive Director and shall be signed by, or bear the facsimile
signature of, the Secretary, and a facsimile of the corporate seal of
the Authority shall be imprinted on the bonds.

Execution of
bonds and coupons.

The coupons attached to the coupon bonds shall be substantially
in the form hereinabove set forth and shall bear the facsimile signature
of the Executive Director.

In case any officer whose signature or a facsimile of whose signa-
ture shall appear on any bonds or coupons shall cease to be such
officer before the delivery of such bonds, such signature or such
facsimile shall nevertheless be valid and sufficient for all purposes
the same as if he had remained in office until such delivery; and also
any bond may bear the facsimile signature of or may be signed by

Section 203

26

such persons as at the actual time of the execution of such bond shall be the proper officers to sign such bond although at the date of such bond such persons may not have been such officers.

**Payment of principal and interest.**

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of coupon bonds of each Series and the interest on all coupon bonds of such Series shall be payable at the principal offices of the Paying Agents designated for the bonds of such Series. The principal of all registered bonds without coupons shall be payable only to the registered owner or his legal representative at the principal office of the Trustee, and payment of the interest on each registered bond without coupons shall be made by the Trustee on each interest payment date to the person appearing on the registration books of the Authority hereinafter provided for as the registered owner thereof, by check mailed to such registered owner at his address as it appears on such registration books. Except as provided in Section 211 of this Agreement, payment of the principal of all bonds shall be made upon the presentation and surrender of such bonds as the same shall become due and payable. Payment of the interest on the coupon bonds shall be made upon the presentation and surrender of the coupons, if any, representing such interest as the same respectively become due and payable.

**Authentication of bonds.**

SECTION 204. Only such of the bonds as shall have endorsed thereon a certificate of authentication substantially in the form hereinabove set forth, duly executed by the Trustee, shall be entitled to any benefit or security under this Agreement. No bond and no coupon appertaining to any coupon bond shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Agreement. The Trustee's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized officer of the Trustee, but it shall not be necessary that the same officer sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time. Before authenticating or delivering any coupon bonds the Trustee shall detach and cancel all matured coupons, if any, appertaining thereto, except any coupons which represent unpaid interest.

Section 206

27

SECTION 205. Coupon bonds, upon surrender thereof at the principal office of the Trustee with all unmatured coupons and all matured coupons in default, if any, appertaining thereto, may, at the option of the holder thereof, be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, bearing interest at the same rate, and, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the coupon bonds surrendered for exchange.

*Exchange of coupon bonds for registered bonds.*

Registered bonds without coupons, upon surrender thereof at the principal office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, and in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the registered bonds without coupons surrendered for exchange.

*Exchange of registered bonds for coupon bonds or registered bonds.*
*see supplemental agmt (Doc 7740/57) dtd 8/1/83*

The Authority shall make provision for the exchange of bonds at the principal office of the Trustee.

SECTION 206. Title to any coupon bond and to any interest coupon shall pass by delivery in the same manner as a negotiable instrument payable to bearer. The Trustee as Bond Registrar shall keep books for the registration of and for the registration of transfers of bonds as provided in this Agreement. The transfer of any registered bond without coupons may be registered only upon the books kept for the registration of and registration of transfers of bonds upon surrender thereof to the Bond Registrar together with an assignment

*Negotiability of coupon bonds.*
*see supplemental agmt (Doc 7740/57) dtd 8/1/83*
*Transfer of registered bonds.*

Section 206

28

duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, or, at the option of the transferee, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate.

**Cancellation of bonds and coupons surrendered for exchange or transfer.**

In all cases in which bonds shall be exchanged or the transfer of registered bonds without coupons shall be registered hereunder, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time bonds in accordance with the provisions of this Agreement. All registered bonds without coupons surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Trustee. All coupon bonds and unmatured coupons surrendered in any such exchange or registration of transfer shall be retained by the Trustee in its custody. The Authority or the Trustee may make a charge for every such exchange or registration of transfer of bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any bondholder for the privilege of exchanging or registering the transfer of bonds under the provisions of this Agreement. Neither the Authority nor the Trustee shall be required to make any such exchange or registration of transfer of bonds during the fifteen (15) days immediately preceding an interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption, or after such bond or any portion thereof has been selected for redemption.

**Ownership of registered bonds.**

SECTION 207. As to any registered bond without coupons, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and the interest on any such bond shall be made only to the registered owner thereof or

Section 208

29

his legal representative. All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond including the interest thereon to the extent of the sum or sums so paid. The Authority, the Trustee, the Bond Registrar and the Paying Agents may deem and treat the bearer of any coupon bond and the bearer of any coupon appertaining to any coupon bond as the absolute owner of such bond or coupon, as the case may be, whether such bond or coupon shall be overdue or not, for the purpose of receiving payment thereof and for all other purposes whatsoever, and neither the Authority, the Trustee, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary.

*Ownership of coupon bonds.*

Any person in possession of any coupon bond or of any coupon appertaining to any coupon bond is hereby authorized to represent himself as the absolute owner of such bond or coupon, as the case may be, and is hereby granted power to transfer absolute title thereto by delivery thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor or any person in the chain of title and before the maturity of such bond. Any registered owner of any registered bond without coupons is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such bond. Every prior holder or owner of any bond or of any coupon appertaining to any coupon bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby.

*Transfer of title of bonds.*

SECTION 208. Revenue bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time for the purpose of paying all or any part of the cost of any Improvements, including the repayment of moneys advanced for paying such cost and, if deemed necessary by the Board, the payment of the interest to accrue on such moneys advanced to the date of such payment and for providing moneys for deposit to the credit of the Reserve Account.

*Issuance of revenue bonds to pay cost of Improvements.*
*see supplemental agmt*
*(Doc 7-1/a/57) dtd 8/1/53*

Section 208

30

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, describing in brief and general terms the Improvements which are to be acquired or constructed or which were acquired or constructed from any moneys to be repaid from the proceeds of such bonds, and specifying the amount, if any, of the proceeds of such bonds to be deposited to the credit of the Reserve Account. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ............." (inserting a year or a letter to identify the particular Series), shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

**Conditions of authentication and delivery.** Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

Section 208

31

(i) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement,

(iii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi) the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii) the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause;

(d) if any of the 1947 Indenture Bonds are outstanding, a certificate, signed by the Executive Director and approved by the Consulting Engineers, to the effect that the sum determined by the Authority, with the approval of the Consulting Engineers, as the proper amount to be transferred each month from the 1947 Revenue Fund to the credit of the Renewal and Replacement Fund is not less than one-twelfth (1/12) of the maximum Principal and Interest Requirements for any fiscal year

Section 208

32

thereafter to and including the fiscal year in which the last maturity of any outstanding 1947 Indenture Bonds occurs on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder; and

(e) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

**Disposition of bond proceeds.** The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds; provided, however, that any balance of such proceeds remaining after providing for (i) any repayment of moneys advanced to the Authority, including any payment of interest accrued on such moneys advanced to the date of such payment, (ii) any deposit to the credit of the Reserve Account, and (iii) any deposit to the Bond Service Account on account of interest on such bonds in accordance with clause (f) of Section 403 of this Agreement and (iv) any payment of expenses incident to the financing shall be paid to the Authority for deposit to the credit of the Construction Fund.

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

**Issuance of revenue bonds for any proper corporate purpose.** SECTION 209. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, in addition to any other bonds which may be issued under the provisions of this Article, revenue bonds of the Authority may be issued under and secured by this Agreement,

*see doc 7740/57 for supplemental agt.*

Section 209

33

subject to the conditions hereinafter provided in this Section, from time to time for any proper corporate purpose of the Authority (other than for the purpose of refunding outstanding bonds of the Authority or for the purpose of providing funds to pay any part of the cost of Improvements or for repaying advances for such purpose).

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof and setting forth the purpose for which such bonds are to be issued. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ........" (inserting a year or a letter to identify the particular Series), shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

Conditions of authentication and delivery.

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned

Section 209

34

therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

(i) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement,

(iii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi) the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii) the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

Section 210

35

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds.

*Disposition of bond proceeds.*

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

SECTION 210. If at any time the Board shall determine that the moneys in the Sinking Fund available for such purpose will not be sufficient for paying at their maturity the serial bonds of any Series which will mature within one year thereafter, revenue refunding bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, for the purpose of providing funds for refunding such bonds and, if deemed necessary by the Board, for paying the interest to accrue thereon to their maturity and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, and describing the bonds to be refunded. Such revenue refunding bonds shall be deemed to constitute a part of the term bonds, if any, of such Series and shall mature at the same time and shall be subject to redemption at the same times and prices as such term bonds or, in case all the outstanding bonds of such Series shall be serial bonds, such revenue refunding bonds shall mature on the 1st day of July in a year not earlier than one

*Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement.*
*see supplemental agmt (Doc 7740/571 dtd 8/1/83*

Section 210

36

year after the last maturing installment of the bonds of such Series and not later than fifty (50) years from their date, shall be deemed to be term bonds of such Series and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), all as may be provided by the resolution or resolutions authorizing the issuance of such bonds. Such revenue refunding bonds shall be designated, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.

Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to their maturity or maturities all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series, including the payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed. Such revenue refunding bonds shall be designated, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

Section 210

37

Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

Conditions of authentication and delivery.

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution adopted by the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series at or prior to their maturity or maturities;

(i) a certificate, signed by the Executive Director, setting forth (A) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, and (B) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds to be outstanding under this Agreement after the issuance of such revenue refunding bonds and the redemption of the bonds to be refunded, and

(ii) such documents as shall be required by the Trustee to show that provision has been made in accordance with the provisions of the 1947 Indenture or this Agreement, as the case may be, for the redemption of all of the bonds to be refunded; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolu-

Section 210

38

tions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolution as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless

(I) the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds, together with any moneys to be withdrawn from the Sinking Fund by the Trustee, and any other moneys which have been made available to the Trustee, for such purpose as hereinafter provided, or the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will become due and payable on or prior to the date of their payment or redemption, and the financing costs in connection with such refunding, and

(II) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series prior to their maturity or maturities, either (1) the amount shown in item (B) of the certificate mentioned in subclause (i) of clause (c) of this Section shall be less than the amount shown in item (A) of said certificate or (2) there shall be filed with the Trustee a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth

(A) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(B) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the

Section 210

39

rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years, and

(C) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (B) above,

and stating that each of the amounts shown in items (A) and (C) above is not less than one hundred twenty per centum (120%) of each of the amounts shown in items (A) and (B) of the certificate mentioned in subclause (i) of clause (c) of this Section.

The proceeds of such revenue refunding bonds shall, to the extent practicable, be invested and reinvested by the Trustee, with the approval of the Executive Director, in Government Obligations or in Time Deposits, secured in the manner set forth in Section 601 of this Agreement, and the moneys so invested shall be available for use when required. The income derived from such investments shall be added to such proceeds and applied in accordance with the provisions of this Section 210.

*Disposition of bond proceeds.*

Simultaneously with the delivery of such revenue refunding bonds the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 507 of this Agreement on account of the interest which is payable on the bonds to be refunded on the next interest payment date of such bonds and on account of the next maturing installment of principal of or the current Amortization Requirement for the bonds to be refunded, but no such withdrawal shall be made on account of any deposits to the credit of the Reserve Account in the Sinking Fund. The amount so withdrawn, the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds and any other moneys which have been made available to the Trustee for such purpose, shall be held by the Trustee or deposited with the Paying Agents to be held in trust for the sole and exclusive purpose of paying such principal, redemption premium and interest; provided, however, that such portion of the proceeds of such revenue refunding bonds as is specified by the Executive Director in a certificate filed with the Trustee shall be paid to the Authority to be used for the payment of expenses incident to the financing. Any part of the proceeds of such revenue refunding bonds which are not needed for the purpose of paying the principal of and the redemption premium,

Section **210**

40

if any, on the bonds to be refunded or any expenses in connection with such refunding shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund. The amount received as accrued interest on such revenue refunding bonds shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund.

**Temporary bonds.**

SECTION 211. Until definitive bonds of any Series are ready for delivery, there may be executed, and upon request of the Authority the Trustee shall authenticate and deliver, in lieu of definitive bonds and subject to the same limitations and conditions, temporary printed, typewritten, engraved or lithographed bonds, in the form of either coupon bonds in such denominations, with or without coupons, or registered bonds without coupons in such denominations, or both, or in the form of a single registered bond without coupons in a denomination equal to the aggregate principal amount of such definitive bonds and payable in installments corresponding to the maturities of such definitive bonds, with payment record attached for the notation of payments of such installments and interest, without presentation and surrender of such single registered bond, as the Authority by resolution may provide, substantially of the tenor hereinabove set forth and with such appropriate omissions, insertions and variations as may be required.

Until definitive bonds of any Series are ready for delivery, any temporary bond of such Series may, if so provided by the Authority by resolution, be exchanged at the principal office of the Trustee, without charge to the holder thereof, for an equal aggregate principal amount of temporary coupon bonds or of temporary registered bonds without coupons or both, of like tenor, of the same Series and maturity and bearing interest at the same rate.

If temporary bonds shall be issued, the Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Trustee, and the Trustee, upon presentation to it at its principal office of any temporary bond accompanied by all unpaid coupons, if any, shall cancel the same and authenticate and deliver in exchange therefor at the place designated by the holder, without charge to the holder thereof, a definitive bond or bonds of an equal aggregate principal amount, of the same Series and maturity and bearing interest at the same rate as the temporary bond surrendered. Upon any such exchange all coupons appertaining to definitive coupon bonds and representing interest theretofore paid shall be detached and cancelled by the Trustee. Until so exchanged the temporary bonds shall in all respects be entitled to the same benefit and security of this Agreement as the

Section 301

41

definitive bonds to be issued and authenticated hereunder. Interest on temporary coupon bonds, when due and payable, if the definitive bonds shall not be ready for exchange, shall be paid on presentation of such temporary coupon bonds and notation of such payment shall be endorsed thereon, or such interest shall be paid upon the surrender of the appropriate coupons if coupons representing such interest shall be attached to such temporary bonds. No charge for taxes or governmental charges shall be made against the holder upon an exchange of a temporary bond for a definitive bond.

SECTION 212. In case any bond secured hereby shall become mutilated or be destroyed or lost, the Authority shall cause to be executed, and the Trustee shall authenticate and deliver, a new bond of like date and tenor in exchange and substitution for and upon the cancellation of such mutilated bond and its interest coupons, if any, or in lieu of and in substitution for such bond and its coupons, if any, destroyed or lost, upon the holder's paying the reasonable expenses and charges of the Authority and the Trustee in connection therewith and, in the case of a bond destroyed or lost, his filing with the Trustee evidence satisfactory to it and to the Authority that such bond and coupons, if any, were destroyed or lost, and of his ownership thereof, and furnishing the Authority and the Trustee with indemnity satisfactory to them.

*Mutilated, destroyed or lost bonds.*

## ARTICLE III.
### REDEMPTION OF BONDS.

SECTION 301. The bonds of any Series issued under the provisions of this Agreement shall be made subject to redemption, both in whole and in part and at such time and prices, as may be provided by resolution adopted by the Authority prior to the issuance of such bonds; provided, however, that term bonds shall be made subject to redemption to the extent of any Amortization Requirements therefor on July 1 immediately following each year in which there is an Amortization Requirement in respect of such bonds.

*Redemption of bonds.*

*see supplemental agmt dtd 8/1/63 ( Doc 7940/57)*

If less than all of the bonds of any one maturity of a Series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such Series and maturity shall be selected by the Trustee in such manner as the Trustee in its discretion may determine; provided, however, that the portion of any registered bond without coupons to be redeemed shall be in the principal amount equal to the lowest denomination of coupon bonds of such Series or some multiple thereof, and that, in selecting bonds

*Selection by Trustee.*

Section 301

42

for redemption, the Trustee shall treat each registered bond without coupons as representing that number of coupon bonds which is obtained by dividing the principal amount of such registered bond without coupons by the amount of the lowest denomination of coupon bonds of such Series.

**Redemption notice.**

*see supplemental agmt date 3/1/83 [Doc 7740/57]*

SECTION 302. At least thirty (30) days before the redemption date of any bonds the Trustee shall cause a notice of any such redemption, either in whole or in part, signed by the Trustee, (a) to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, (b) to be filed with the Paying Agents, and (c) to be mailed, postage prepaid, to all registered owners of bonds or portions of bonds to be redeemed at their addresses as they appear on the registration books hereinabove provided for, but failure so to file or mail any such notice shall not affect the validity of the proceedings for such redemption. Each such notice shall set forth the date fixed for redemption, the redemption price to be paid and, if less than all of the bonds of any one maturity of a Series then outstanding shall be called for redemption, the distinctive numbers and letters, if any, of such bonds to be redeemed and, in the case of registered bonds without coupons to be redeemed in part only, the portion of the principal amount thereof to be redeemed. In case any registered bond without coupons is to be redeemed in part only, the notice of redemption which relates to such bond shall state also that on or after the redemption date, upon surrender of such bond, a new bond or bonds of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such bond will be issued.

**Effect of calling for redemption.**

*see supplemental agmt dtd 8/1/83 [Doc 7740/57]*

SECTION 303. On the date so designated for redemption, notice having been published in the manner and under the conditions hereinabove provided, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or portions of bonds on such date, and, if moneys for payment of the redemption price and the accrued interest are held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the

Section 307

**43**

bonds or portions thereof to be redeemed, as provided in this Agreement, interest on the bonds or portions of bonds so called for redemption shall cease to accrue, the coupons for interest on any coupon bonds so called for redemption payable subsequent to the redemption date shall be void, such bonds or portions of bonds shall cease to be entitled to any benefit or security under this Agreement, and the holders or registered owners of such bonds or portions of bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and the accrued interest and, to the extent provided in Section 305 of this Article, to receive bonds for any unredeemed portions of registered bonds without coupons.

SECTION 304. All unpaid coupons which appertain to coupon bonds so called for redemption and which shall have become due and payable on or prior to the date of redemption designated in such notice shall continue to be payable to the bearers severally and respectively upon the presentation and surrender of such coupons.

*Matured coupons.*

SECTION 305. In case part but not all of an outstanding registered bond without coupons shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the registered bond without coupons so surrendered, either coupon bonds or a registered bond or bonds without coupons, at the option of such registered owner or his attorney or legal representative, of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement.

*Redemption of portion of registered bonds.*

*see supplemental agmt (Doc 7740/57) dtd 8/1/83*

SECTION 306. Coupon bonds so redeemed and all unmatured coupons appertaining thereto, and registered bonds without coupons so presented and surrendered, shall be cancelled upon the surrender thereof.

*Cancellation of bonds and coupons redeemed.*

SECTION 307. Bonds and portions of bonds which have been duly called for redemption under the provisions of this Article, or with

*Bonds and portions of bonds called for redemption not deemed outstanding.*

Section 307

44

respect to which irrevocable instructions to call for redemption at the earliest redemption date have been given to the Trustee in form satisfactory to it, and for the payment of the redemption price and the accrued interest of which sufficient moneys, or Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement, shall be held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the bonds or portions thereof to be redeemed, all as provided in this Agreement, shall not thereafter be deemed to be outstanding under the provisions of this Agreement.

## ARTICLE IV.

### Custody and Application of Proceeds of Bonds.

**Construction Fund.**  Section 401. A special fund is hereby created and designated "Puerto Rico Water Resources Authority Power System Construction Fund" (herein sometimes called the "Construction Fund"), to the credit of which such deposits shall be made as are required by the provisions of Section 208 of this Agreement. There shall also be deposited to the credit of the Construction Fund any moneys received from any other source for paying any portion of the cost of any Improvements. One or more separate accounts may be created in the Construction Fund for use for specified projects.

The moneys in the Construction Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied to the payment of the cost of any Improvements and, except for any moneys in separate accounts in the Construction Fund received from the United States Government or any agency thereof or from the Commonwealth of Puerto Rico or any agency thereof, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided.

**Payments from Construction Fund.**  Section 402. Payment of the cost of any Improvements shall be made from the Construction Fund as herein provided. Moneys in the Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by the Executive Director or by any

Section 403

45

officer or employee of the Authority designated by him for such purpose.

Section 403. For the purposes of this Article, the cost of any Improvements shall embrace the cost of acquisition or construction and equipment and all other items of cost incident to such acquisition and construction and equipment and the financing thereof, and shall include, without intending thereby to limit or restrict any proper definition of such cost under the provisions of law or this Agreement, the following:

*Items of cost.*

(a) obligations incurred for labor and materials and to contractors, builders and materialmen in connection with the construction of any Improvements;

(b) the cost of acquiring by purchase, if such purchase shall be deemed expedient, and the amount of any award or final judgment in or any settlement or compromise of any proceeding to acquire by condemnation, such property, lands, rights, rights of way, franchises, easements and other interests in land constituting a part of, or as may be deemed necessary or convenient for the construction of any Improvements, options and partial payments thereon, the cost of filling, draining or improving any lands so acquired, and the amount of any damages incident to or consequent upon the construction of any Improvements;

(c) the fees and expenses of the Trustee for its services under Article II of this Agreement, including its services in connection with the acceptance of the trusts hereby created, legal expenses and fees, fees and expenses of consultants, financing charges, cost of preparing and issuing the bonds, taxes or other municipal or governmental charges lawfully levied or assessed during construction upon any Improvements, and premiums on insurance in connection with any Improvements during construction;

(d) fees and expenses of architects or engineers for making studies, surveys and testing, for preparing plans and specifications and supervising construction, as well as for the performance of all other duties of architects or engineers set forth herein in relation to the construction of any Improvements;

(e) expenses of administration properly chargeable to any Improvements and all other items of expense not elsewhere in

Section 403

46

this Section specified, incident to the acquisition or construction and equipment of any Improvements;

(f) interest on the bonds prior to and during construction of the Improvements financed by such bonds and for such period after completion of such construction as the Authority may determine, if then permitted by law; and

(g) any obligation or expense heretofore or hereafter incurred by the Authority and any amounts heretofore or hereafter advanced by the Commonwealth of Puerto Rico or any agency thereof or by the United States Government, or from any other source, for any of the foregoing purposes.

**Lands for projects.**    SECTION 404. The Authority covenants that no disbursement will be made for the purchase price or cost of any electric system or portion thereof, or any lands, buildings, franchises, licenses, easements or rights of way, unless and until counsel for the Authority shall have rendered his written opinion to the Authority to the effect that the Authority either has or will have immediately upon such disbursement (by reason of the prior or simultaneous delivery of proper instruments of conveyance and transfer mentioned in such opinion) title thereto sufficient for the purposes of the System.

## ARTICLE V.

### REVENUES AND FUNDS.

**Covenant as to bills for services.**    SECTION 501. The Authority covenants that it will continue to render bills for the services and facilities furnished by the System on a monthly or bi-monthly basis until such time as the Authority shall deem it advisable to change the period covered by such bills, and that it will establish and enforce reasonable regulations in relation to the collection of such bills.

**Covenant as to rates.**    SECTION 502. The Authority further covenants that it will at all times fix, charge and collect reasonable rates and charges for the use of the services and facilities furnished by the System and that from time to time, and as often as it shall appear necessary, it will adjust such rates and charges so that the Revenues will at all times be sufficient

Section 502

47

(A) until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture:

(a) to pay the Current Expenses of the System, and

(b) to provide the greater of (i) the amount equal to one hundred twenty per centum (120%) of the aggregate Principal and Interest Requirements for the next fiscal year on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, reduced by any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year, or (ii) the amount required to make the deposits, transfers and payments mentioned in items (1) through (4), inclusive, below:

(1) to make the deposits to the credit of the 1947 Sinking Fund which are required to be made in each fiscal year under the provisions of Section 507 of the 1947 Indenture,

(2) to make the deposits to the credit of the General Reserve Fund which are required to be made in each fiscal year under the provisions of Section 511 of the 1947 Indenture,

(3) to make the transfers to the credit of the Renewal and Replacement Fund which are required to be made in each fiscal year under the provisions of Section 512 of the 1947 Indenture, and

(4) to make the payments which are required to be made in each fiscal year under the provisions of clause (a) of Section 513 of the 1947 Indenture, and

(B) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture:

(a) to pay the Current Expenses of the System, and

(b) to provide an amount at least equal to one hundred twenty per centum (120%) of the aggregate Principal and Interest Requirements for the next fiscal year on account of all the bonds then outstanding under this Agreement, reduced

Section 502

48

by any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year.

The Authority further covenants that if at any time the Revenues shall not be sufficient to make such deposits, transfers and payments, it will revise the rates and charges for the services and facilities furnished by the System and, if necessary, it will revise its regulations in relation to the collection of bills for such services and facilities, so that such deficiency will be made up before the end of the next ensuing fiscal year. Should any deficiency not be made up in such next ensuing fiscal year, the requirement therefor, except as to the payments which are required to be made in such fiscal year under subclause (4) of clause (b) of paragraph (A) of this Section, shall be cumulative and the Authority shall continue to revise such rates until such deficiency shall have been completely made up.

Forthwith upon the adoption of any revision of rates and charges the Authority shall cause certified copies thereof to be filed with the Trustee.

In the event that the Authority shall fail to adjust the schedule of rates and charges in accordance with the provisions of this Section, the Trustee, without regard to whether an event of default, as defined in Article VIII of this Agreement, shall have occurred, shall, upon the request of the holders of not less than ten per centum (10%) in principal amount of all bonds then outstanding and upon being indemnified to its satisfaction, institute and prosecute in a court of competent jurisdiction an appropriate suit, action or proceeding to compel the Authority to adjust such schedule in accordance with the requirements of this Section, and the Authority covenants that it will adopt and charge rates and charges in compliance with any judgment, order or decree entered in any such suit, action or proceeding.

General Fund.

SECTION 503. A special fund is hereby created and designated the "Puerto Rico Water Resources Authority General Fund" (herein sometimes called the "General Fund"). The Authority covenants that, after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, all Revenues, other than income from investments made under the provisions of this Agreement, will be deposited as received

Section 504

49

in the name of the Authority with a qualified depositary or depositaries to the credit of the General Fund and applied in accordance with the provisions of this Article.

SECTION 504. The Authority covenants that on or before the 15th day of May in each year the Board will cause to be prepared and will adopt and file with the Secretary, with the Trustee and with the Consulting Engineers a proposed budget of Current Expenses and of Capital Expenditures for the ensuing fiscal year.

Annual Budget.

The Authority further covenants that such proposed budget of Current Expenses will be prepared in such manner as to segregate, in so far as advisable, the accounts in respect of the different classes of operations, projects, undertakings and activities of the Authority and will be prepared on the basis of monthly requirements so that it will be possible to determine from the budget the Current Expenses for each month during the fiscal year, that it will comply with any reasonable request of the Consulting Engineers as to the classifications in which such budget shall be prepared, and that such proposed budget of Capital Expenditures will show separately (a) so long as any 1947 Indenture Bonds are outstanding, the amount to be expended during such fiscal year from moneys deposited or transferred to the credit of the Renewal and Replacement Fund, including a separate statement as to the amount to be withdrawn from said Fund under the provisions of Section 507 of this Agreement, (b) the amount to be expended during such fiscal year from moneys deposited to the credit of the Construction Fund and, so long as any 1947 Indenture Bonds are outstanding, the 1947 Construction Fund, and (c) the amount of the working cash funds required for each month during such fiscal year.

The Authority further covenants that on the 1st day of June of each year, or on the first business day thereafter, it will hold a public hearing at its office in the Municipality of San Juan, Puerto Rico, on the proposed budget for the ensuing fiscal year, at which any bond-holder, any consumer or any other interested person may appear, in person or by agent or attorney, and present any objections he may have to such proposed budget, and that promptly after each such public hearing and, in any event, on or before the first day of the next ensuing fiscal year the Board will finally adopt the annual budget of Current Expenses and Capital Expenditures for such fiscal year (which budget, together with any amendment thereof or supplement

Section 504

50

thereto as hereinafter permitted, is herein sometimes called the "Annual Budget"). The Authority covenants that the total expenditures provided for in the Annual Budget of Current Expenses will not exceed the total expenditures set forth in the proposed budget unless such excess shall be approved by the Consulting Engineers, and that before adopting the budget of Capital Expenditures it will receive and consider the Consulting Engineers' advices and recommendations with respect thereto.

If for any reason the Board shall not have adopted the Annual Budget before the first day of any fiscal year, the proposed budget for such fiscal year, if approved by the Consulting Engineers, or, if there is none so approved, the budget for the preceding fiscal year, shall, until the adoption of the Annual Budget, be deemed to be in force and shall be treated as the Annual Budget under the provisions of this Article; provided, however, that, so long as any 1947 Indenture Bonds are outstanding, the amounts provided for in the Annual Budget to be transferred from the 1947 Revenue Fund to the Renewal and Replacement Fund shall not be less than the amount set forth in the most recent certificate of the Executive Director filed with the Trustee pursuant to clause (d) of Section 208 of this Agreement.

The Board may at any time cause to be prepared and may file with the Secretary, with the Trustee and with the Consulting Engineers, and the Board may thereafter adopt, after receiving the approval of the Consulting Engineers, an amended or supplemental Annual Budget for the then current fiscal year.

Application of moneys in General Fund.

SECTION 505. The Authority covenants that moneys in the General Fund will be used first for the payment of the Current Expenses of the System, that such expenses will not exceed an amount which is reasonable and necessary for maintaining, repairing and operating the System in an efficient and economical manner, and that the total amount of Current Expenses in any fiscal year will not exceed the amount provided therefor in the Annual Budget for such fiscal year or any amendment thereof or supplement thereto unless such expenses shall be required by conditions beyond the control of the Authority happening during such fiscal year and which could not reasonably have been contemplated at the time of the adoption of the Annual Budget. If at any time the total amount theretofore expended during any fiscal

Section 507

51

year for Current Expenses shall exceed the total amount provided in the Annual Budget for Current Expenses for such fiscal year, the Authority covenants that it will report in writing the amount of such excess and the reason or reasons therefor to the Consulting Engineers and to the Trustee as soon as practicable but not later than the last day of the sixth month following the month in which such excess shall have occurred.

SECTION 506. A special fund is hereby created and designated the "Puerto Rico Water Resources Authority Power Revenue Fund" (herein sometimes called the "Revenue Fund"). After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Treasurer shall transfer, on or before the 15th day of each month, from the General Fund to the credit of the Revenue Fund an amount equal to the amount of all moneys held for the credit of the General Fund on the last day of the preceding month less such amount to be held as reserve for Current Expenses as the Treasurer may determine but not more than one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for the current fiscal year, such transfer to be made on the books of the Authority as of the close of the preceding month. The Authority covenants that all moneys to the credit of the Revenue Fund will be applied to the purposes and in the order set forth in this Article.

*Revenue Fund.*

SECTION 507. A special fund is hereby created and designated the "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund"). There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account", "Reserve Account" and "Redemption Account", respectively. Another special fund is hereby created and designated "Puerto Rico Water Resources Authority Reserve Maintenance Fund" (herein sometimes called the "Reserve Maintenance Fund"). On or before the last day of the month during which the first Series of bonds shall be issued under the provisions of Section 208 of this Agreement and on or before the 25th day of each month thereafter, (i) until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture it shall be the duty of the Executive Director or any officer or employee of the Authority designated by him for such purpose to withdraw from the Renewal and Replacement Fund, and

*Sinking Fund.*

*Bond Service Account, Reserve Account and Redemption Account.*

*Reserve Maintenance Fund.*

Section 507

52

(ii) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture it shall be the duty of the Treasurer to withdraw from the Revenue Fund, all of the moneys then held to the credit of such Fund and deposit the moneys so withdrawn to the credit of the following Accounts and Fund in the following order:

(a) to the credit of the Bond Service Account, such amount thereof (or the entire sum so withdrawn if less than the required amount) as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of (i) the amount of interest then or to become within the next ensuing six (6) months due and payable on the bonds of each Series then outstanding, (ii) the amount of principal of the serial bonds of each Series then or to become within the next ensuing six (6) months due and payable, and (iii) one-half of the amount of principal of the serial bonds of each Series to become due and payable following such next ensuing six (6) months and within the next ensuing twelve (12) months;

(b) to the credit of the Redemption Account, such amount, if any, of any balance remaining after making the deposit under clause (a) above (or the entire balance if less than the required amount) as may be required to make the amount deposited in the then current fiscal year to the credit of the Redemption Account equal to one-half of, if such deposit is made on or prior to December 31 in such fiscal year, and all of, if such deposit is made after December 31 in such fiscal year, the Amortization Requirements, if any, for such fiscal year for the term bonds of each Series then outstanding, plus the premiums, if any, on such principal amount of term bonds which would be payable in such fiscal year if such principal amount of term bonds were to be redeemed prior to their respective maturities from moneys held for the credit of the Sinking Fund;

(c) to the credit of the Reserve Account, such amount, if any, of any balance remaining after making the deposits under clauses (a) and (b) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account equal to the interest payable on the bonds of each Series issued hereunder within the next ensuing twelve (12) months; provided, however, that the amount so deposited in any month in respect of bonds of any Series issued under Sections 208 or 209 of this Agreement need not exceed one-sixtieth (1/60)

Section 507

53

of the amount of the increase in the interest payable within the next ensuing twelve (12) months resulting from the issuance of the bonds of such Series; provided, however, that if the amount so deposited in any month to the credit of said Account shall be less than the required amount for such month, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up; and

(d) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b) and (c) above (or the entire balance if less than the required amount) as may be required to make the amount deposited in such month to the credit of the Reserve Maintenance Fund equal to the amount recommended by the Consulting Engineers, as provided by Section 706 of this Agreement, to be deposited to the credit of said Fund during such month; provided, however, that if the amount so deposited to the credit of said Fund in any month shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nevertheless be cumulative and the amount of any such deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a), (b) and (c) above shall be transferred to the Renewal and Replacement Fund. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above may be used for any lawful purpose of the Authority.

The moneys in the Sinking Fund shall be held by the Trustee in trust, and the moneys in the Reserve Maintenance Fund shall be held

Section 507

54

by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Funds and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided.

**Disposition of balances in 1947 Indenture funds and accounts.**

SECTION 508. At such time as the outstanding 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the Trustee under the 1947 Indenture shall have released the 1947 Indenture, all moneys (other than moneys held for the redemption or payment of bonds and coupons), including any obligations purchased as an investment of such moneys, then held for the credit of the special funds and accounts created under the provisions of the 1947 Indenture shall be withdrawn and deposited to the credit of the special funds and accounts created under the provisions of this Agreement, as follows:

| 1947 Indenture | Agreement |
| --- | --- |
| Construction Fund | Construction Fund |
| General Fund | General Fund |
| Revenue Fund | Revenue Fund |
| Sinking Fund, including Reserve Account | Reserve Account in Sinking Fund |
| General Reserve Fund | General Fund |
| Renewal and Replacement Fund | General Fund |

At the same time the Authority shall withdraw all moneys then held to the credit of the Construction Fund revolving fund under the provisions of the 1947 Indenture and deposit such moneys to the credit of the Construction Fund under the provisions of this Agreement.

**Application of moneys in Bond Service Account.**

SECTION 509. The Trustee shall, on the business day immediately preceding each interest payment date, withdraw from the Bond Service Account and (a) remit by mail to each owner of registered bonds without coupons the amounts required for paying the interest on such bonds as such interest becomes due and payable and (b) set aside or deposit in trust with the Paying Agents the amounts required for paying the interest on the coupon bonds as such interest becomes due and payable and the principal of all serial bonds as such principal becomes due and payable.

Section 511

55

SECTION 510. Moneys held for the credit of the Reserve Account shall first be used for the purpose of paying interest on the bonds and maturing principal of the serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause (b) of Section 507 of this Agreement wherever and to the extent that the withdrawals from the Renewal and Replacement Fund or the Revenue Fund, as the case may be, are insufficient for such purpose. If at any time the moneys held for the credit of the Reserve Account shall exceed interest payable within the next ensuing twelve (12) months, on the bonds of each Series issued hereunder, such excess shall be transferred to the credit of the Bond Service Account.

Application of moneys in Reserve Account.

SECTION 511. Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Agreement as follows:

Application of moneys in Redemption Account.

(a) Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase bonds or portions of bonds secured hereby and then outstanding, whether or not such bonds or portions shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds under the provisions of Article III of this Agreement if such bonds or portions of bonds should be called for redemption on such date from the moneys in the Sinking Fund. The Trustee shall pay the interest accrued on such bonds or portions of bonds to the date of settlement therefor from the Bond Service Account and the purchase price from the Redemption Account, but no such purchase shall be made by the Trustee within the period of forty-five (45) days immediately preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Agreement except from moneys other than the moneys set aside or deposited for the redemption of bonds.

Purchase of bonds.

(b) Subject to the provisions of paragraph (c) of this Section, the Trustee shall call for redemption on each interest payment date on which bonds are subject to redemption from moneys

Redemption of bonds.

Section 511

56

in the Sinking Fund such amount of bonds or portions of bonds then subject to redemption as, with the redemption premium, if any, will exhaust the moneys then held for the credit of the Redemption Account as nearly as may be; provided, however, that not less than One Hundred Thousand Dollars ($100,000) principal amount of bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Agreement. Prior to calling bonds or portions of bonds for redemption the Trustee shall withdraw from the Bond Service Account and from the Redemption Account and set aside in separate accounts or deposit with the Paying Agents the respective amounts required for paying the interest on, and the principal and redemption premium of, the bonds or portions of bonds so called for redemption.

(c) Moneys in the Redemption Account shall be applied by the Trustee in each fiscal year to the retirement of bonds of each Series then outstanding in the following order:

*first,* the term bonds of each such Series to the extent of the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any, and, if the amount available in such fiscal year shall not be equal thereto, then in proportion to the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any;

*second,* any balance then remaining shall be applied to the purchase of any bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

*third,* any balance then remaining shall be applied to the redemption of the term bonds of each such Series in proportion to the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any; and

*fourth,* after the retirement of all term bonds, any balance still remaining shall be applied to the retirement of the serial

Section 512

57

bonds of each Series in proportion to the aggregate principal amount of the serial bonds of each such Series originally issued under the provisions of this Agreement.

Until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority shall pay from the Renewal and Replacement Fund all expenses in connection with any such purchase or such redemption; thereafter all such expenses shall be paid from the Revenue Fund.

SECTION 512. Except as hereinafter provided in this Section and in Section 707 of this Agreement, moneys held for the credit of the Reserve Maintenance Fund shall be disbursed only for the purpose of paying the cost of unusual or extraordinary maintenance or repairs, maintenance or repairs not recurring annually and renewals and replacements, including major items of equipment. Such disbursements shall be made in accordance with the provisions of Section 402 of this Agreement for payments from the Construction Fund.

*Use of moneys in Reserve Maintenance Fund.*

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account shall be insufficient for the purpose of paying the interest on all bonds and the principal of the serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund to the credit of the Bond Service Account an amount sufficient to make up any such deficiency. If at any time the moneys held for the credit of the Redemption Account and the Reserve Account shall be insufficient for the purpose of providing funds for the retirement of term bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement. Any moneys so transferred from the Reserve Maintenance Fund shall be restored by the Authority from available moneys in the Revenue Fund, subject to the same conditions as are prescribed for deposits to the credit of the Reserve Maintenance Fund under the provisions of Section 507 of this Agreement.

Section 513

58

**Application and pledge of moneys in Sinking Fund.**

SECTION 513. Subject to the terms and conditions set forth in this Agreement, moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be held in trust and disbursed by the Trustee for (a) the payment of interest on the bonds issued hereunder as such interest becomes due and payable, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase or redemption price of such bonds before their respective maturities, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be sufficient for paying the principal of and the redemption premium, if any, and the interest accrued on all bonds then outstanding under the provisions of this Agreement, such moneys shall be applied by the Trustee to the payment, purchase or redemption of such bonds.

**Moneys set aside for principal and interest held in trust.**

SECTION 514. All moneys which the Trustee shall have withdrawn from the Sinking Fund or shall have received from any other source and set aside, or deposited with the Paying Agents, for the purpose of paying any of the bonds hereby secured, either at the maturity thereof or upon call for redemption, or for the purpose of paying any maturing coupons appertaining to any of the coupon bonds hereby secured, shall be held in trust for the respective holders of such bonds or coupons. But any moneys which shall be so set aside or deposited by the Trustee and which shall remain unclaimed by the holders of such bonds or of such coupons for the period of six (6) years after the date on which such bonds or such coupons shall have become due and payable shall upon request in writing be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds or coupons shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Trustee and the Paying Agents shall have no responsibility with respect to such moneys.

**Moneys unclaimed for six years after maturity of bonds and coupons.**

**Cancellation of bonds and coupons upon payment.**

SECTION 515. All bonds paid, redeemed or purchased, either at or before maturity, together with all unmatured coupons, if any, apper-

Section 601

59

taining thereto, shall be cancelled upon the payment, redemption or
purchase of such bonds and shall be delivered to the Trustee when such
payment, redemption or purchase is made. All coupons, which are paid
by the Paying Agents, shall be cancelled upon their payment and deliv-
ered to the Trustee in the Borough of Manhattan, City and State
of New York. Except for such coupons, all bonds and coupons cancelled
under any of the provisions of this Agreement shall be destroyed by
the Trustee, which shall execute a certificate in duplicate describing
the bonds and coupons so destroyed except that the numbers of the
bonds to which such coupons appertain may be omitted unless other-
wise directed by the Authority, and one executed certificate shall be
filed with the Secretary and the other executed certificate shall be
retained by the Trustee. The coupons so paid by the Paying Agents
shall be destroyed by the Trustee in the Borough of Manhattan,
City and State of New York, which shall execute a certificate in
triplicate describing the coupons so destroyed except that the num-
bers of the bonds to which such coupons appertain may be omitted
unless otherwise directed by the Authority, and one executed certificate
shall be filed with the Secretary and another with the Trustee and
the third executed certificate shall be retained by such Paying Agent.

## ARTICLE VI.

### Depositaries of Moneys, Security for Deposits and Investment of Funds.

Section 601. All moneys received by the Authority under the pro-
visions of this Agreement shall be deposited with a Depositary or
Depositaries, shall be held in trust, shall be applied only in accordance
with the provisions of this Agreement and shall not be subject to lien
or attachment by any creditor of the Authority.

Deposits constitute trust funds.

All moneys deposited with the Trustee or any other Depositary
hereunder in excess of the amount guaranteed by the Federal Deposit
Insurance Corporation or other Federal agency shall be continuously
secured, for the benefit of the Authority and the holders of the bonds,
either (a) by lodging with a bank or trust company approved by the
Authority and by the Trustee as custodian, or, if then permitted by
law, by setting aside under control of the trust department of the bank
holding such deposit, as collateral security, Government Obligations, or,

Security for deposits.

Section 601

60

with the approval of the Trustee, other marketable securities eligible
as security for the deposit of trust funds under applicable regulations
of the Comptroller of the Currency of the United States or applicable
Commonwealth of Puerto Rico or state law or regulations, having a
market value (exclusive of accrued interest) not less than the amount of
such deposit, or (b), if the furnishing of security as provided in clause
(a) of this Section is not permitted by applicable law, in such other
manner as may then be required or permitted by applicable Common-
wealth of Puerto Rico, state or Federal laws or regulations regarding
the security for, or granting a preference in the case of, the deposit of
trust funds; provided, however, that it shall not be necessary for the
Paying Agents to give security for the deposits of any moneys with
them for the payment of the principal of or the redemption premium or
the interest on any bonds issued hereunder, or for the Trustee to give
security for any moneys which shall be represented by obligations pur-
chased under the provisions of this Article as an investment of such
moneys.

All moneys deposited with each Depositary, including the Trustee,
shall be credited to the particular fund or account to which such
moneys belong.

**Investment of moneys.**

SECTION 602. Moneys held for the credit of the Bond Service Ac-
count and the Redemption Account, shall, as nearly as may be prac-
ticable, be continuously invested and reinvested by the Trustee in
Government Obligations which shall mature, or which shall be subject
to redemption by the holder thereof at the option of such holder, not
later than the respective dates when moneys held for the credit of said
Accounts will be required for the purposes intended, or in Time
Deposits; provided, however, that each such Time Deposit shall permit
the moneys so placed to be available for use at the times provided
above.

Moneys held for the credit of the Construction Fund and the
Reserve Maintenance Fund shall, as nearly as may be practicable, be
continuously invested and reinvested by the Authority in Investment
Obligations, and moneys held for the credit of the Revenue Fund
shall, as nearly as may be practicable, be continuously invested and
reinvested by the Authority in Government Obligations, which Invest-
ment Obligations and Government Obligations shall mature, or shall
be subject to redemption by the holder thereof at the option of such

Section 701

61

holder, not later than the respective dates when moneys held for the credit of said Funds will be required for the purposes intended, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Moneys held for the credit of the Reserve Account shall, as nearly as may be practicable, be continuously invested and reinvested by the Trustee in Investment Obligations which shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, (i) as to approximately 50% of such moneys, not later than 5 years after the date of such investment, and (ii) as to the balance of such moneys, as directed by order mentioned below, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Fifty per centum (50%) of the moneys held for the credit of the Reserve Account shall be invested by the Trustee upon receipt of an order signed by the Executive Director stating the amount to be invested and directing such investment in Investment Obligations having such maturities as are specified in such order. Such obligations shall be sold by the Trustee upon receipt of an order signed by the Executive Director.

Obligations and Time Deposits so purchased as an investment of moneys in any such Fund or Account shall be deemed at all times to be part of such Fund or Account. The interest accruing thereon and any profit realized from such investment shall be credited to such Fund or Account and any loss resulting from such investment shall be charged to such Fund or Account. The Trustee shall sell or present for payment or redemption any obligations so acquired whenever it shall be necessary so to do in order to provide moneys to meet any payment from such Fund or Account. Neither the Trustee nor the Authority nor any officer or agent of either thereof shall be liable or responsible for any loss resulting from any such investment.

**Investments deemed to be part of Fund or Account for which purchased.**

## ARTICLE VII.

### PARTICULAR COVENANTS.

SECTION 701. The Authority covenants that it will promptly pay the principal of and the interest on each and every bond issued under

**Payment of principal, interest and premium.**

Section 701

62

the provisions of this Agreement at the places, on the dates and in the manner specified herein and in said bonds and in the coupons, if any, appertaining thereto, and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium are payable solely from moneys in the Renewal and Replacement Fund and said moneys are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium will be payable solely from the Revenues and said Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. Nothing in the bonds or in this Agreement shall be deemed to constitute the bonds a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions shall be liable for the payment of the principal of or the interest on the bonds.

*Pledge of revenues.*

*Bonds not general obligations of Commonwealth of Puerto Rico.*

*Offices or agencies for payment of coupon bonds and coupons.*

The Authority further covenants that so long as the bonds or any of them shall be outstanding it will cause offices or agencies where the coupon bonds and coupons may be presented for payment to be maintained in the Borough of Manhattan, City and State of New York.

*Covenant to integrate Improvements into System.*

SECTION 702. The Authority covenants that, upon the acquisition or construction of any Improvements, it will forthwith integrate the properties so acquired or constructed with the System and will thereupon operate and maintain the System and all of such properties as an integrated system.

*Covenant to construct Improvements in accordance with plans.*

The Authority further covenants that it will construct all Improvements for the construction of which bonds shall be issued under the provisions of this Agreement, or for which moneys repayable from the proceeds of bonds issued under the provisions of this Agreement shall have been advanced to the Authority, in accordance with plans theretofore adopted by the Board and approved by the Consulting Engineers and that upon the completion of such Improvements it will operate and maintain the same as a part of the System.

Section 704

63

The Authority further covenants that it will establish and enforce reasonable rules and regulations governing the use of the System and the operation thereof, that all compensation, salaries, fees and wages paid by it in connection with the maintenance, repair and operation of the System will be reasonable, that no more persons will be employed by it than are necessary, that it will operate the System in an efficient and economical manner, that it will at all times maintain the System in good repair and in sound operating condition and will make all necessary repairs, renewals and replacements, and that it will comply with all valid acts, rules, regulations, orders and directions of any legislative, executive, administrative or judicial body applicable to the System. *Covenant as to operation.*

SECTION 703. The Authority further covenants that, until all of the 1947 Indenture Bonds shall have been paid or provision shall have been made for their payment and the 1947 Indenture shall have been released, it will duly and punctually perform all of the covenants, agreements and conditions contained in the 1947 Indenture on the part of the Authority to be performed. The Authority further covenants that it will cause the 1947 Indenture to be released at the earliest practicable date. The Authority further covenants that it will not enter into any indenture or agreement supplemental to the 1947 Indenture for the purpose of granting to or conferring upon the 1947 Trustee for the benefit of the holders of the bonds issued under the 1947 Indenture any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon such holders or the 1947 Trustee, or for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in the 1947 Indenture, or for the purpose of extending the maturity of any 1947 Indenture Bond or creating a lien upon or a pledge of revenues ranking prior to or on a parity with the lien or pledge created by the 1947 Indenture. Nothing herein contained shall prevent the Authority from entering into an indenture or agreement supplemental to the 1947 Indenture to cure any ambiguity or formal defect or omission in the 1947 Indenture. *Compliance with 1947 Indenture.* *Release of 1947 Indenture.* *Covenant as to amendment of 1947 Indenture.*

SECTION 704. The Authority covenants that so long as any 1947 Indenture Bonds are outstanding under the provisions of the 1947 Indenture it will cause to be made the deposits to the credit of the Renewal and Replacement Fund required by Section 512 of the 1947 Indenture and it will not revise its determination as to the proper *Covenant as to Renewal and Replacement Fund.*

Section 704

64

amount to be transferred each month from the 1947 Revenue Fund to the credit of the Renewal and Replacement Fund, as set forth in the most recent certificate of the Executive Director filed with the Trustee pursuant to clause (d) of Section 208 of this Agreement, by reducing such amount below one-twelfth (1/12) of the maximum Principal and Interest Requirements for any fiscal year thereafter to and including the fiscal year in which the last maturity of any outstanding 1947 Indenture Bonds occurs on account of all bonds then outstanding under this Agreement.

**Payment of lawful charges.**

SECTION 705. The Authority further covenants that, out of the Revenues, it will pay all municipal or governmental charges lawfully levied or assessed upon the System or any part thereof or upon any Revenues when the same shall become due, that it will duly observe and comply with all valid requirements of any municipal or governmental authority relative to the System, that it will not create or suffer to be created any lien or charge upon the System or any part thereof or upon the Revenues ranking equally with or prior to the bonds, except the lien and charge of the 1947 Indenture Bonds and the bonds secured hereby upon the Revenues, and that, out of the Revenues, it will pay or cause to be discharged, or will make adequate provision to satisfy and discharge, within sixty (60) days after the same shall accrue, all lawful claims and demands for labor, materials, supplies or other objects which, if unpaid, might by law become a lien upon the System or any part thereof or the Revenues; provided, however, that nothing contained in this Section shall require the Authority to pay or cause to be discharged, or make provision for, any such lien or charge so long as the validity thereof shall be contested in good faith and by appropriate legal proceedings.

**Employment of Consulting Engineers.**

SECTION 706. The Authority covenants and agrees that so long as any 1947 Indenture Bonds are outstanding it will, for the purpose of performing and carrying out the duties imposed on the Consulting Engineers by this Agreement, employ such Consulting Engineers as are employed under Section 704 of the 1947 Indenture, and after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture and so long as any bonds are outstanding under this Agreement, it will employ an independent engineer or engineering firm or corporation having a wide and favorable repute in the United States for skill and experience in the con-

Section 707

65

struction and operation of electric systems. No engineer or engineering firm shall be employed as Consulting Engineers under this Agreement, except with the written approval of the Trustee. Except for fees and expenses incurred under the provisions of Section 403 of this Agreement, the cost of employing Consulting Engineers shall be treated as a part of the cost of operation and maintenance of the System.

It shall be the duty of the Consulting Engineers to prepare and file with the Authority and with the Trustee on or before the 1st day of May in each year a report setting forth their recommendations as to any necessary or advisable revisions of rates and charges and such other advices and recommendations as they may deem desirable. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, it shall be the duty of the Consulting Engineers to include in such report their recommendations as to the amount that should be deposited monthly during the ensuing fiscal year to the credit of the Reserve Maintenance Fund for the purposes set forth in Section 512 of this Agreement.

The Authority further covenants that the Consulting Engineers shall at all times have free access to all properties of the System and every part thereof for the purposes of inspection and examination, and that its books, records and accounts may be examined by the Consulting Engineers at all reasonable times.

SECTION 707. The Authority covenants that it will at all times carry insurance, in a responsible insurance company or companies authorized and qualified under the laws of Puerto Rico to assume the risk thereof, covering such properties belonging to the System as are customarily insured, and against loss or damage from such causes as are customarily insured against, by companies engaged in similar business.

Insurance.

All such policies shall be for the benefit of the Authority, shall be made payable to the Authority and shall be deposited with the Treasurer, and the Treasurer shall have the sole right to receive the proceeds of such policies and to collect and receipt for claims thereunder. The proceeds of any and all such insurance shall be deposited by the Treasurer in the name of the Authority in a Depositary.

The Authority covenants that, immediately after any loss or damage to any properties of the System resulting from any cause, whether or not such loss or damage shall be covered by insurance, it will cause

Section 707

66

its engineers to prepare plans and specifications for repairing, replacing or reconstructing (either in accordance with the original or a different design) the damaged or destroyed property, and that it will forthwith commence and diligently prosecute the repair, replacement or reconstruction of the damaged or destroyed property unless it shall determine that the repair, replacement or reconstruction of such property is not essential to the efficient operation of the System.

The proceeds of all insurance policies referred to in this Section shall be available for, and shall to the extent necessary be applied to, the repair, replacement or reconstruction of the damaged or destroyed property, and shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, if such proceeds are more than sufficient for such purpose, the balance remaining shall be deposited to the credit of the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such balance shall be deposited to the credit of the Redemption Account in the Sinking Fund or, at the option of the Authority, to the credit of the Construction Fund. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, if such proceeds shall be insufficient for such purpose, the deficiency may be supplied, first, out of moneys in the General Reserve Fund under the 1947 Indenture, and second, out of moneys in the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such deficiency may be supplied out of any moneys held for the credit of the Reserve Maintenance Fund or from any other moneys of the Authority available for such purpose.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the proceeds of any insurance not applied within eighteen (18) months after their receipt by the Treasurer to repairing, replacing or reconstructing the damaged or destroyed property, unless the Authority shall be prevented from so doing because of conditions beyond its control, or unless the holders of fifty-one per centum (51%) in aggregate principal amount of all 1947 Indenture Bonds then outstanding

Section 710

67

shall otherwise direct, shall be deposited to the credit of the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such proceeds shall be deposited to the credit of the Redemption Account in the Sinking Fund or, at the option of the Authority, to the credit of the Construction Fund, unless the Authority shall be prevented from so doing because of conditions beyond its control, or unless the holders of fifty-one per centum (51%) in aggregate principal amount of all bonds then outstanding under this Agreement shall otherwise direct.

SECTION 708. All insurance policies shall be open to the inspection of the bondholders and their representatives at all reasonable times. The Treasurer of the Authority is hereby authorized to demand, collect, sue and receipt for the insurance money which may become due and payable under any policies payable to the Authority.

> Inspection of insurance policies.

SECTION 709. The Authority covenants and agrees that, so long as any of the bonds secured hereby shall be outstanding, none of the gross revenues of the System will be used for any purpose other than as provided in the 1947 Indenture and this Agreement, and that no contract or contracts will be entered into or any action taken by which the rights of the Trustee or of the bondholders might be impaired or diminished.

> No inconsistent action.

SECTION 710. The Authority covenants that its accounts will be kept according to standard practices for public utility systems similar to the properties and business of the Authority and applicable in such circumstances, and in such manner as appropriately to segregate, in so far as advisable, the accounts in respect of the different classes of its operations, projects, undertakings and activities, that it will keep accurate records and accounts of all items of cost and expenditures relating to the System and to each integral unit of the System, the Revenues collected and the application of the Revenues, and the number of consumers, and that it will keep such records and accounts with respect to its physical properties in such manner that it will be possible at all times to identify both the amounts and the items of all additions and retirements.

> Accurate records.

Section 710

68

Monthly reports.

The Authority further covenants that at least once each month it will cause to be filed with the Trustee and the Consulting Engineers copies of any revisions of the rate schedules during the preceding calendar month and a report, signed by the Executive Director, setting forth the following:

(a) a separate income and expense statement for Revenue Fund purposes of the System for the preceding calendar month and the twelve (12) months' period ending with such month;

(b) a statement for the preceding calendar month and for the fiscal year to date of all deposits and transfers to the credit of and withdrawals from each special fund and account created under the provisions of this Agreement, showing the balance to the credit of each such fund or account;

(c) a statement of the amount of bonds issued, paid, purchased or redeemed during the preceding calendar month;

(d) a balance sheet as of the end of the preceding calendar month;

(e) the amounts on deposit at the end of the preceding calendar month in each bank or trust company; and

(f) the amounts of the proceeds received during the preceding calendar month from any sales of property pursuant to Section 712 of this Article.

Annual audits.

The Authority further covenants that in the first month of each fiscal year it will cause an audit to be made of its books and accounts pertaining to the System by an independent firm of certified public accountants of suitable experience and responsibility and widely known in the United States, to be chosen by the Executive Director with the approval of the Trustee. Before the first day of the third month following the making of such audit, reports of such audits shall be filed with the Trustee and the Authority, and copies of such reports shall be mailed to the Consulting Engineers. Such audit reports shall set forth in respect of the preceding fiscal year the same matters as are hereinabove required for the monthly reports.

Additional reports or audits.

The Authority further covenants that it will cause any additional reports or audits relating to the System to be made as required by law

Section 712

69

or by any applicable rules or regulations of any governmental authority or of any securities exchange on which the bonds may be listed or traded, and that as often as may be requested it will furnish to the Trustee such other information concerning the System or the operation thereof as the Trustee may reasonably request. The cost of such audits shall be treated as a part of the cost of operation of the System.

SECTION 711.  The Authority covenants that so long as any bonds shall be outstanding under the provisions of this Agreement it will not issue additional 1947 Indenture Bonds which mature after July 1, 2007 and except as follows:

> (a) revenue bonds under the provisions of Section 209 of the 1947 Indenture issued to pay the cost of Improvements and sold to the Rural Electrification Administration of the United States of America; provided, however, that the aggregate principal amount of such revenue bonds issued hereafter shall not exceed $12,834,000,

> (b) revenue bonds under the provisions of Section 210 of the 1947 Indenture issued for the purpose of providing working cash funds for the Authority; provided, however, that the aggregate principal amount of such revenue bonds outstanding in any fiscal year hereafter shall not exceed one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for such fiscal year or for the next ensuing fiscal year, whichever is greater, and

> (c) revenue refunding bonds under the provisions of Section 211 of the 1947 Indenture.

SECTION 712.  (a) The Authority covenants that so long as any bonds shall be outstanding under the provisions of this Agreement and except as in this Agreement otherwise permitted, it will not sell, lease or otherwise dispose of or encumber the System or any part thereof and will not create or permit to be created any charge or lien on the Revenues ranking equally with or prior to the charge or lien on the Revenues of the bonds issued under and secured by this Agreement. The Authority may, however, from time to time, sell any machinery, fixtures, apparatus, tools, instruments, or other movable property acquired by it in connection with the System, or any materials used in connection therewith, if the Authority shall determine that such articles are no longer needed or are no longer useful in connection with the construction or operation and maintenance of the System, and the proceeds

*Covenant as to additional 1947 Indenture Bonds.*

*Covenant against sale or encumbrance; exceptions.*

79

Section 712

70

thereof shall be applied to the replacement of the properties so sold or disposed of or shall be deposited (i) until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Renewal and Replacement Fund, and (ii) after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, at the option of the Authority.

(b) Notwithstanding the provisions of paragraph (a) of this Section, the Authority may from time to time sell or lease such other property forming part of the System as is not needed or serves no useful purpose in connection with the maintenance and operation of the System, and the proceeds of any such sale of property which is declared by resolution of the Board to be unnecessary for the System shall be deposited, so long as any 1947 Indenture Bonds are outstanding, to the credit of the Renewal and Replacement Fund or to the credit of the 1947 Reserve Account, as may be provided by such resolution, and, after the 1947 Indenture Bonds shall have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, as may be provided by such resolution. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the rentals under any such lease shall be deposited to the credit of the 1947 Revenue Fund, and thereafter such rentals shall be deposited to the credit of the Revenue Fund.

(c) Notwithstanding the provisions of paragraph (a) of this Section, after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority may from time to time permanently abandon the use of, sell at fair market value or lease any property forming a part of the System but only if

(1) there shall be filed with the Trustee prior to such abandonment, sale or lease a certificate, signed by the Executive Director and approved by the Consulting Engineers, stating

(A) that the Authority is not then in default in the performance of any of the covenants, conditions, agreements or provisions contained in this Agreement, and

(B) that the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months

71

next preceding the date of such certificate, after giving effect to such abandonment, sale or lease and any replacement and after adjustment to reflect the moneys which would have been received if the rate schedule in effect on the date of such certificate had been in effect throughout such twelve (12) calendar months, are not less than one hundred twenty per centum (120%) of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under the provisions of this Agreement, and

(2) the amount held by the Trustee to the credit of the Reserve Account in the Sinking Fund is the maximum amount required under the provisions of Section 507 of this Agreement.

The proceeds of the sale of any property forming part of the System under the provisions of paragraph (c) of this Section shall either be deposited by the Authority to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, at the option of the Authority, or shall be applied to the replacement of the property so sold, and any property acquired as such replacement shall become a part of the System subject to the provisions of this Agreement. The rentals under any such lease shall be deposited to the credit of the Revenue Fund.

## ARTICLE VIII.

### REMEDIES.

SECTION 801.  In case the time for the payment of any coupon or the interest on any registered bond without coupons shall be extended, whether or not such extension be by or with the consent of the Authority, such coupon or such interest so extended shall not be entitled in case of default hereunder to the benefit or security of this Agreement except subject to the prior payment in full of the principal of all bonds then outstanding and of all coupons and interest the time for the payment of which shall not have been extended.

*Extended coupons.*

SECTION 802.  Each of the following events is hereby declared an "event of default", that is to say: If

*Events of default.*

(a)  payment of the principal and of the redemption premium, if any, of any of the bonds shall not be made when the same shall

Section 802

72

become due and payable, either at maturity or by proceedings for redemption or otherwise; or

(b) payment of any installment of interest on any of the bonds shall not be made when the same shall become due and payable; or

(c) the Authority shall for any reason be rendered incapable of fulfilling its obligations hereunder; or

(d) any part of the System necessary for its effective operation shall be destroyed or damaged and shall not be properly repaired, replaced or reconstructed; or

(e) final judgment for the payment of money shall be rendered against the Authority as a result of the ownership, control or operation of the System and any such judgment shall not be discharged within sixty (60) days from the entry thereof or an appeal shall not be taken therefrom or from the order, decree or process upon which or pursuant to which such judgment shall have been granted or entered, in such manner as to stay the execution of or levy under such judgment, order, decree or process or the enforcement thereof; or

(f) an order or decree shall be entered, with the consent or acquiescence of the Authority, for the purpose of effecting composition between the Authority and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted, if the claims of such creditors are under any circumstances payable from the Revenues; or

(g) any proceeding shall be instituted, with the consent or acquiescence of the Authority, for the purpose of effecting a composition between the Authority and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted, if the claims of such creditors are under any circumstances payable from the Revenues; or

(h) the Authority shall default in the due and punctual performance of any other of the covenants, conditions, agreements and provisions contained in the bonds or in this Agreement on the

Section 803

73

part of the Authority to be performed, including meeting any Amortization Requirement, and such default shall continue for thirty (30) days after written notice specifying such default and requiring same to be remedied shall have been given to the Authority by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding; or

    (i) an event of default within the meaning of that term in Section 802 of the 1947 Indenture shall occur.

SECTION 803. Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding shall, by a notice in writing to the Authority, declare the principal of all of the bonds then outstanding (if not then due and payable) to be due and payable immediately, and upon such declaration the same shall become and be immediately due and payable, anything contained in the bonds or in this Agreement to the contrary notwithstanding; provided, however, that if at any time after the principal of the bonds shall have been so declared to be due and payable, and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, or before the completion of the enforcement of any other remedy under this Agreement, moneys shall have accumulated in the Sinking Fund sufficient to pay the principal of all matured bonds and all arrears of interest, if any, upon all the bonds then outstanding (except the principal of any bonds not then due and payable by their terms and the interest accrued on such bonds since the last interest payment date), and the charges, compensation, expenses, disbursements, advances and liabilities of the Trustee and all other amounts then payable by the Authority hereunder shall have been paid or a sum sufficient to pay the same shall have been deposited with the Trustee, and every other default known to the Trustee in the observance or performance of any covenant, condition, agreement or provision contained in the bonds or in this Agreement (other than a default in the payment of the principal of such bonds then due and payable only because of a declaration under this Section) shall have

*Acceleration of maturities.*

Section 803

74

been remedied to the satisfaction of the Trustee, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding shall, by written notice to the Authority, rescind and annul such declaration and its consequences, but no such rescission or annulment shall extend to or affect any subsequent default or impair any right consequent thereon.

<div style="float:left">Enforcement<br>of remedies.</div>

SECTION 804.  Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee may proceed, and upon the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding hereunder shall proceed, subject to the provisions of Section 902 of this Agreement, to protect and enforce its rights and the rights of the bondholders under applicable laws or under this Agreement by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the appointment of a receiver as authorized by the Authority Act or for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights; provided, however, that the Trustee shall not be required to proceed for the appointment of a receiver of the System unless it shall receive the written request of the holders of not less than twenty-five centum (25%) in principal amount of the bonds then outstanding under the provisions of this Agreement.

In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and receive any and all amounts then or during any default becoming, and at any time remaining, due from the Authority for principal, interest or otherwise under any of the provisions of this Agreement or of the bonds and unpaid, with interest on overdue payments of principal at the rate or rates of interest specified in such bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under such bonds, without prejudice to any other right or remedy of the Trustee or of the bondholders, and to recover and enforce any judgment or decree against the Authority, but solely as

**Section 805**

75

provided herein and in such bonds, for any portion of such amounts
remaining unpaid and interest, costs and expenses as above provided,
and to collect (but solely from moneys in the Sinking Fund and any
other moneys available for such purpose) in any manner provided by
law, the moneys adjudged or decreed to be payable.

SECTION 805. Anything in this Agreement to the contrary not-
withstanding, if at any time the moneys in the Sinking Fund shall not
be sufficient to pay the interest on or the principal of the bonds as the
same shall become due and payable (either by their terms or by
acceleration of maturities under the provisions of Section 803 of this
Article), such moneys, together with any moneys then available or
thereafter becoming available for such purpose, whether through the
exercise of the remedies provided for in this Article or otherwise,
shall be applied as follows:

*Pro rata application of funds.*

(a) If the principal of all the bonds shall not have become
or shall not have been declared due and payable, all such moneys
shall be applied

*first:* to the payment to the persons entitled thereto of
all installments of interest then due and payable in the order
in which such installments became due and payable and, if
the amount available shall not be sufficient to pay in full any
particular installment, then to the payment, ratably, accord-
ing to the amounts due on such installment, to the persons
entitled thereto, without any discrimination or preference
except as to any difference in the respective rates of interest
specified in the bonds;

*second:* to the payment to the persons entitled thereto of
the unpaid principal of any of the bonds which shall have
become due and payable (other than bonds called for redemp-
tion for the payment of which moneys are held pursuant to
the provisions of this Agreement) in the order of their due
dates, with interest on the principal amount of such bonds
at the respective rates specified therein from the respective
dates upon which such bonds became due and payable, and,
if the amount available shall not be sufficient to pay in full
the principal of the bonds due and payable on any particular
date, together with such interest, then to the payment first

Section 805

76

of such interest, ratably, according to the amount of such interest due on such date, and then to the payment of such principal, ratably, according to the amount of such principal due on such date, to the persons entitled thereto without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds; and

*third:* to the payment of the interest on and the principal of the bonds, to the purchase and retirement of bonds and to the redemption of bonds, all in accordance with the provisions of Article V of this Agreement.

(b) If the principal of all the bonds shall have become or shall have been declared due and payable, all such moneys shall be applied

*first:* to the payment to the persons entitled thereto of all installments of interest due and payable on or prior to maturity, if any, in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds, and then to the payment of any interest due and payable after maturity on the bonds, ratably, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds; and

*second:* to the payment of the principal of the bonds, ratably, to the persons entitled thereto, without preference or priority of any bond over any other bond.

(c) If the principal of all the bonds shall have been declared due and payable and if such declaration shall thereafter have been rescinded and annulled under the provisions of Section 803 of this Article, then, subject to the provisions of paragraph (b) of this Section in the event that the principal of all the bonds shall later become due and payable or be declared due and payable, the moneys remaining in and thereafter accruing to the Sinking Fund shall be applied in accordance with the provisions of paragraph (a) of this Section.

Section 807

77

The provisions of paragraphs (a), (b) and (c) of this Section are in all respects subject to the provisions of Section 801 of this Article.

Whenever moneys are to be applied by the Trustee pursuant to the provisions of this Section, such moneys shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future; the deposit of such moneys with the Paying Agents, or otherwise setting aside such moneys, in trust for the proper purpose shall constitute proper application by the Trustee; and the Trustee shall incur no liability whatsoever to the Authority, to any bondholder or to any other person for any delay in applying any such moneys, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this Agreement as may be applicable at the time of application by the Trustee. Whenever the Trustee shall exercise such discretion in applying such moneys, it shall fix the date (which shall be an interest payment date unless the Trustee shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue. The Trustee shall give such notice as it may deem appropriate of the fixing of any such date, and shall not be required to make payment to the holder of any unpaid coupon or any bond until such coupon or such bond and all unmatured coupons, if any, appertaining to such bond shall be surrendered to the Trustee for appropriate endorsement, or for cancellation if fully paid.

SECTION 806. In case any proceeding taken by the Trustee or bondholders on account of any default shall have been discontinued or abandoned for any reason, then and in every such case the Authority, the Trustee and the bondholders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no such proceeding had been taken.

*Effect of discontinuance of proceedings.*

SECTION 807. Anything in this Agreement to the contrary notwithstanding, the holders of a majority in principal amount of the bonds then outstanding hereunder shall have the right, subject to the

*Majority of bondholders may control proceedings.*

Section 807

78

provisions of Section 902 of this Agreement, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all remedial proceedings to be taken by the Trustee hereunder, provided that such direction shall not be otherwise than in accordance with law or the provisions of this Agreement.

**Restrictions upon action by individual bondholder.**

SECTION 808. No holder of any of the bonds shall have any right to institute any suit, action or proceeding in equity or at law on any bond or for the execution of any trust hereunder or for any other remedy hereunder unless such holder previously shall have given to the Trustee written notice of the event of default on account of which such suit, action or proceeding is to be instituted, and unless also the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding shall have made written request of the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinabove granted or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or to any other remedy hereunder; provided, however, that notwithstanding the foregoing provisions of this Section and without complying therewith, the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding may institute any such suit, action or proceeding in their own names for the benefit of all holders of bonds hereunder. It is understood and intended that, except as otherwise above provided, no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Agreement, or to enforce any right hereunder except in the manner herein provided, that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the

Section 812

79

benefit of all holders of such outstanding bonds and coupons, and that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.

SECTION 809.  All rights of action under this Agreement or under any of the bonds secured hereby, enforceable by the Trustee, may be enforced by it without the possession of any of the bonds or the coupons appertaining thereto or the production thereof at the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all of the holders of such bonds and coupons, subject to the provisions of this Agreement. *Actions by Trustee.*

SECTION 810.  No remedy herein conferred upon or reserved to the Trustee or to the holders of the bonds is intended to be exclusive of any other remedy or remedies herein provided, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder. *No remedy exclusive.*

SECTION 811.  No delay or omission of the Trustee or of any holder of the bonds to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Agreement to the Trustee and to the holders of the bonds, respectively, may be exercised from time to time and as often as may be deemed expedient. *No delay or omission construed to be a waiver.*  *Repeated exercise of powers and remedies.*

The Trustee may, and upon written request of the holders of not less than a majority in principal amount of the bonds then outstanding shall, waive any default which in its opinion shall have been remedied before the entry of final judgment or decree in any suit, action or proceeding instituted by it under the provisions of this Agreement or before the completion of the enforcement of any other remedy under this Agreement, but no such waiver shall extend to or affect any other existing or any subsequent default or defaults or impair any rights or remedies consequent thereon. *Waiver of default.*

SECTION 812.  The Trustee shall mail to all registered owners of bonds at their addresses as they appear on the registration books and *Notice of default.*

The supporting documents for this claim are too voluminous to include in the proof of claim PDF.  They are available upon request by emailing (**puertoricoinfo@PrimeClerk.com**) or by calling **844-822-9231**.

Page 1 of 3

5/18/2018

ORIGIN ID:GPZA   (612) 672-3462
CLARK T WHITMORE
MASLON LLP
3300 WELLS FARGO CENTER
90 SOUTH 7TH STREET
MINNEAPOLIS, MN 55402
UNITED STATES US

SHIP DATE: 18MAY18
ACTWGT: 8.00 LB
CAD: 7690940/INET3980

BILL SENDER

TO   **COMMONWEALTH OF PUERTO RICO**

**CLAIM PROCESS CTR C/O PRIME CLERK**

**850 THIRD AVENUE**

**SUITE 412**

**BROOKLYN NY 11232**

(999) 999-9999
INV:
PO:                    REF: 2014-1031

DEPT:

552.02/7B29/DCA5

FedEx
Express

E

MON - 21 MAY 10:30A
PRIORITY OVERNIGHT

TRK#
0201   **7722 7239 8776**

**K1 FBTA**

11232
**EWR**
NY-US

RECEIVED

MAY 21 2018

PRIME CLERK LLC

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



RECEIVED

MAY 21 2018

PRIME CLERK LLC