# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO

     Debtor.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 3914, 3916, 3966**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH TO
## MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY
## ASOCIACIÓN DE MAESTROS DE PUERTO RICO, AND ITS UNION,
## ASOCIACIÓN DE MAESTROS DE PUERTO RICO-LOCAL SINDICAL

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

OBJECTION ......................................................................................................................... 4

    I.       MOVANTS HAVE FAILED TO ESTABLISH CAUSE EXISTS TO
           LIFT THE STAY ................................................................................................. 4

    II.     MOVANTS' ARGUMENTS ARE UNAVAILING……………………………17

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
 217 F. Supp. 3d 508, 518, 529 (D.P.R. 2016)................................................. 6-7,11,16,20

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,*
 369 B.R. 87, 94-5 (D.P.R. 2007) .....................................................................................6

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),*
 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) .......................................................................14

*FCC v. NextWave Pers. Commc'ns Inc.,*
 537 U.S. 293, 302 (2003)...................................................................................................8

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*
 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) .......................................13

*In re 234-6 West 22nd St. Corp.,*
 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ......................................................................5

*In re BFW Liquidation, LLC,* No. 09-00634-BGC-11,
 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ............................................9

*In re Breitburn Energy Partners LP,* No. 16-10992,
 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)...............................................7

*In re City of San Bernardino,*
 558 B.R. 321, 330 (Bank. C.D. Cal. 2016)................................................................. 19-20

*In re City of Stockton,*
 484 B.R. 372, 374, 378 (Bankr. E.D. Cal. 2012).............................................................10

*In re Cummings,*
 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ......................................................................7

*In re Gatke Corp.,*
 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989).....................................................................11

*In re Good Hope Indus., Inc.,*
 16 B.R. 719 (Bankr. D. Mass.) .........................................................................................13

*In re Jefferson Cnty.,*
 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) ......................................................................5

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Lahman Mfg. Co., Inc.*,
  31 B.R. 195, 199 (Bankr. D.S.D. 1983)..............................................13

*In re Motors Liquidation Co.*, No. 09- 50026,
  2010 WL 4630327, at *4 (S.D.N.Y. 2010)..........................................14

*In re Murrin*,
  477 B.R. 99, 109 (D. Minn. 2012)......................................................7

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2
  006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) .................11

*In re Plumberex Specialty Prod., Inc.*,
  311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) ................................14

*In re Residential Capital, LLC*, No. 12-12020,
  2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ....................10,13,15

*In re Seeburg Corp.*,
  5 B.R. 364 (Bankr. N.D.III.1980) ......................................................13

*In re Taub*,
  413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009).............................................7

*In re Terry,*
  12 B.R. 578 (Bankr. E.D.Wis. 1981) ..................................................13

*In re Tribune Media Servs. v. Beatty (In re Tribune Co.)*
  418 B.R. 116 (Bankr. D. Del. 2009) ..................................................18

*In re Unanue-Casal*,
  159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ....................5-6,17

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
  362 B.R. 49, 56 (B.A.P. 1st Cir. 2007)................................................5

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
  474 U.S. 494, 503 (1986)...................................................................4

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
  537 B.R. 128, 140 (Bankr. D.P.R. 2015) .............................................5

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Peaje Invs. LLC v. Garcia-Padilla*,
　　2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ...........................................6

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
　　980 F.2d 110, 117 (2d Cir. 1992).........................................................................................9

*Soares v. Brockton Credit Union (In re Soares)*
　　107 F. 3d 969, 975 (1st Cir. 1997) .......................................................................................4

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
　　907 F.2d 1280, 1286, 1287 (2d Cir. 1990)....................................................3,5-9, 12-17,19

*Unisys Corp. v. Dataware Prods., Inc.*,
　　848 F.2d 311, 313 (1st Cir. 1988) .......................................................................................5

*Unión de Trabajadores de la Industria Eléctrica y Riego, Inc. v. Puerto Rico Electric Power*
*Authority, et al.*,
　　Adv. Proc. No. 17-225-LTS.................................................................................................12

*In re Whitman v. Am. Trucking Ass'ns*,
　　531 U.S. 457,468 (2011) .....................................................................................................19

## **STATUTES**

11 U.S.C. § 362(a) .....................................................................................................................4

11 U.S.C. § 362(b) ...................................................................................................................19

11 U.S.C. § 362(d)(1) .................................................................................................................5

11 U.S.C. § 362(d) ...............................................................................................................1,2,19

11 U.S.C. § 507(a)(4)(A)(a)................................................................................................3,11,12

11 U.S.C. § 101 ..........................................................................................................................8

11 U.S.C. § 922 ........................................................................................................................10

48 U.S.C. § 2101 ........................................................................................................................8

Act No. 26 of April 29, 2017 ("Act 26") ...................................................................................1

Act No. 8 of February 4, 2017 ("Act 8") ..................................................................................2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

PROMESA § 301.................................................................................................4,9,19

PROMESA § 310.................................................................................................6

PROMESA § 301(a)............................................................................................1,4,5,15

PROMESA § 315(b)............................................................................................1

PROMESA § 405.................................................................................................3

PROMESA § 405(a)............................................................................................4

PROMESA § 405(c)............................................................................................1,4,5,15

PROMESA § 405(d)............................................................................................1,4,5,15

PROMESA § 405(m)(5)......................................................................................1,4,5,15

PROMESA § 405(n)(2)........................................................................................1,4,5,15

## OTHER AUTHORITIES

H.R. Rep. No. 95-595 at 309, (1977)...............................................................8

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Automatic Stay* [ECF No. 3914] (the "Motion") filed by Asociación de Maestros de Puerto Rico ("AMPR"), and its Union, Asociación de Maestros de Puerto Rico-Local Sindical ("AMPR-LS"), both of which are affiliates of the American Federation of Teachers, AFL-CIO ("AFT" and together with AMPR and AMPR-LS, "Movants"), for themselves and in representation of four hundred and twelve (412) of their members, all of which are currently retired teachers from the Department of Education of the Commonwealth of Puerto Rico (the "Department of Education") and petitioners in the case captioned *Asociación de Maestros de Puerto Rico et al v. Departamento de Educación et al,* Civil No. SJ2017CV00542 (the "Lawsuit"), pending before the Puerto Rico Court of First Instance (the "State Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.   On June 30, 2017, **after the Commonwealth commenced its Title III case on May 3, 2017**, Movants, in clear violation of the automatic stay, commenced the Lawsuit against the Commonwealth, the Department of Education,[3] and the Secretary of the Department of Education, Julia Keleher, in her official capacity. Movants seek in the Lawsuit declaratory judgment that the retroactive application of Act No. 26 of April 29, 2017 ("Act 26"), which stayed the payment or liquidation of accumulated sick leave days—up to ninety (90) days—upon

---

[2]   The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3]   The Department of Education is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

retirement to retiring or retired teachers under Article 9 of Act No. 8 of February 4, 2017 ("Act 8"), constitutes an illegal and inappropriate impairment of their contractual rights as employees or former employees of the Department of Education.  Movants also seek an order from the State Court directing the Department of Education to issue payments corresponding to excess sick leave to all Movants in an amount of "no less than Three Million and Three Thousand Dollars ($3,300,000.00)," which Movants argue they were entitled to on or before March 31, 2017. *See* Motion ¶¶ 12, 18-19.  Movants thus commenced unauthorized post-petition litigation against the Commonwealth to collect on alleged prepetition claims.

2.      Summonses were served on the Department of Education and the Commonwealth on August 3, 2017.  On August 28, 2017, the Commonwealth filed in the Lawsuit a *Notice of Automatic Stay and of Procedures for Filing Motions for Relief from the Automatic Stay in the Commonwealth of Puerto Rico's Title III Case* requesting that the State Court take notice of, among other things, the automatic stay under the Commonwealth's Title III case applicable to the Lawsuit.

3.      On September 10, 2018, Movants filed the Motion seeking to lift the automatic stay to proceed with the Lawsuit against the Commonwealth, the Department of Education, and the Secretary of Education, and for Movants to enforce any judgment entered in the Lawsuit.

4.      As further explained below, the Motion should be denied as Movants have failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") to proceed with litigation—brought for the first time after the Commonwealth commenced its Title III case—of alleged prepetition claims against the Commonwealth.  As potential, prepetition, unsecured creditors, Movants have failed to demonstrate the extraordinary circumstances necessary to show why their claims should not be

2

resolved through the claims resolution process to be undertaken in the Title III cases.

5.      The case is in a very preliminary stage, having been commenced after the Commonwealth filed its Title III petition.  The Lawsuit is not ready for trial, as no answer has been filed, nor has the evidentiary process, pretrial hearing, the preparation and filing of the pretrial report, and all other ensuing hearings and filings necessary for the underlying action to proceed to adjudication been commenced, let alone completed.  In fact, all that has been done to date is the filing and service of the complaint.

6.      Critically, as Movants recognize in the Motion, they seek relief from the automatic stay in order to obtain preferential treatment on their alleged claims against the Commonwealth and Department of Education, to the detriment of the Commonwealth's other unsecured creditors, whose claims hold the same priority as Movants'.  *See* Motion ¶ 20.  Movants admit that Bankruptcy Code section 507(a)(4)(A) was not incorporated into PROMESA Title III, and accordingly, "Movants are not entitled or granted priority of payment" on their asserted claims, and because Movants cannot obtain preferential treatment on their asserted claims, they "have no alternate remedy at law or equity than to seek lift of stay."  Motion ¶ 20 & pp. 19-20.  Movants cannot circumvent the priority scheme in Title III established by Congress by seeking to lift the automatic stay to collect on its asserted claim ahead of the Commonwealth's other unsecured creditors.

7.      Considering the Lawsuit was not even commenced till after the Commonwealth filed for Title III relief and has gone nowhere since, and Movants' expressed intent to circumvent the priority scheme under Title III, all applicable *Sonnax* factors weigh heavily in favor of maintaining the automatic stay and denying the Motion.

3

## **OBJECTION**

**I.   MOVANTS HAVE FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY**

8.     Movants argue "PROMESA's automatic stay was not intended to frustrate the granting of the kind of relief Movants seek in the Litigation," Motion at 15-17, referring only to the pre-Title III stay provided in PROMESA section 405.  Putting aside the absurdity of Movants' argument that a statutory stay of litigation was not intended to stay litigation, the stay arising under section 405 has long since terminated and is no longer applicable to the Commonwealth or its Title III case.  What is applicable now that the Commonwealth has filed  a Title III case is Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, which provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a).  The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

9.     "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)*, 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property

4

of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

10.     An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

5

(1)   whether relief would result in complete or partial resolution of the issues;

(2)   the lack of any connection with or interference with the bankruptcy case;

(3)   whether the foreign proceeding involves the debtor as fiduciary;

(4)   whether a specialized tribunal has been established to hear the cause of action at issue;

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether Movants'  success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

11.   Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

12.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movants bear the burden of establishing cause, *id.*, and when the movants are not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

13.     While Movants give lip service to *Sonnax* and the analysis it mandates, they largely ignore it in favor of pressing the merits of their underlying claims, which is not relevant under *Sonnax*. Upon proper consideration of  the *Sonnax* factors, they point squarely toward maintaining the automatic stay and against awarding the remedy Movants seek.

14.     ***Sonnax* Factor 1:**  The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the automatic stay.  The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case.  *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

15.     Here, Movants have failed to show how allowing the Lawsuit to proceed would resolve any issues relevant to the Commonwealth's Title III case.  Indeed, Movants admit that "that matters contained in the Litigation are limited and exclusively of interpretation of Puerto Rico Constitution and statutory law and its application . . . ."  Motion at 13.  Movants' claims, if any, can be resolved through the claims resolution process to be undertaken in the Commonwealth's Title III case.  Therefore, the first *Sonnax* factor supports denying the Motion.

16.     ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay.  First, lifting or modifying the stay to allow the resolution of Movants' claim in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. The claims adjustment process under Title III applies with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

17.     In the Lawsuit, Movants seeks to enforce an alleged right to payment of Movants' excess sick leave in an estimated amount of no less than $3,3000,000.00.  This amount only includes Movants' collective claim and does not include an additional four hundred teachers that are, allegedly, in a similar situation.  As potential, prepetition, unsecured creditors of the Commonwealth, Movants' claims are subject to the claim resolution process that will be

8

undertaken in the Title III case.

18.     Requiring the Commonwealth to defend Movants' claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

19.     Indeed, this Court recently recognized in the *Memorandum Order Denying Motion For Relief From Stay In Ares Et Al. v. Secretary Of Labor After Completion Of Conferral Process* [ECF No. 3751] ("Order Denying Motion for Stay Relief") that potential creditors seeking to collect retirement benefit claims (including unused sick leave) must wait to have their claims addressed under the centralized claims resolution process contemplated under Title III:

> Movants have not demonstrated that the Sonnax criteria weigh in their favor with respect to the continuation of the Litigation. Although Movants do not demand a monetary award in the Lawsuit, their purpose in seeking mandamus relief is to obtain a particular set of benefits from the government. Their entitlement claim, and the determination of the value of the benefits, can properly be addressed through the claims process contemplated by the Bankruptcy Code and incorporated by Section 301 of PROMESA. Moreover, the relief sought implicates the operation of government functions and the disbursement of Commonwealth funds, areas in which PROMESA affords territorial debtors deference and breathing space. See 48 U.S.C.A. § 2165 (West 2017) (providing that the Court may not interfere with "any of the political or governmental powers of the debtor" nor "interfere with the property or revenues of the debtor" except upon the consent of the Oversight Board or pursuant to a plan of adjustment).

Order Denying Motion for Stay Relief at 4.

20.     Second, lifting or modifying the stay to proceed with the Lawsuit will interfere with

9

the Title III case by diverting the Commonwealth's attention and resources to defending Movants'

claims in another forum and will encourage other creditors to seek similar relief, contrary to

Movants' assertion that the Lawsuit "will have little to no impact on the Commonwealth's

resources . . . ." Motion at 18. Should every plaintiff with an asserted prepetition claim (including

Movants' asserted $3.3 million claim, Motion at 18) be given carte blanche to litigate their claims

in Puerto Rico courts, the combined result would have a substantial and negative impact on the

Commonwealth's fiscal plan, budget, and overall restructuring effort, and should be avoided. *See,

e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y.

Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy

courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and

resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

21.     In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal.

2012). There, the plaintiff brought a wrongful termination suit against the City Manager and

Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case

was stayed under 11 U.S.C. § 922. 484 B.R. at 374.  The plaintiff then moved to lift the stay and

argued that allowing the suit to go forward would not interfere with the chapter 9 case.  *Id.* at 378.

The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and

attention of those two officers during the period in which there is intense focus on the basic

substantive issues in this chapter 9 case." *Id.*  "It is apparent to the court that their undivided time

and attention will continue to be required at least for a number of months." *Id.*

22.     Here, the Lawsuit was filed after the Commonwealth commenced its Title III case,

in violation of the automatic stay as recognized by the State Court.  Substantial progress in the

Lawsuit must be made before it is ready for trial, including responding to the complaint,

10

conducting discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.  Thus, the nascent stage of the Lawsuit weighs in favor of denying the Motion, *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

23.     Third, lifting the automatic stay to allow Movants to execute on any judgment and obtain preferential treatment on their alleged claims against the Commonwealth and Department of Education would interfere with the Commonwealth's Title III case and the orderly administration of claims against the Commonwealth.  Movants have noted their intent in filing the Motion is to obtain the same priority treatment Bankruptcy Code section 507(a)(4)(A) provides certain creditors in chapter 11 cases.  *See* Motion ¶¶ 20-21 & pp. 19-20 ("Had Section 507(a)(4)(A) of the Bankruptcy Code been incorporated into PROMESA by Congress, Movants might not have needed to file a complaint and/or move to lift the stay in as much as their individual or in the alternative their collective claims, once allowed, would be entitled to priority under Section 507(a)(4)(A) up to the maximum amount of $12,850.00 per each Movant.").  However, Movants

11

admit that Bankruptcy Code section 507(a)(4)(A) was not incorporated into PROMESA Title III, and accordingly, "Movants are not entitled or granted priority of payment" on their asserted claims.

24.     Movants cannot circumvent the priority scheme in Title III established by Congress by seeking to lift the automatic stay to collect on its asserted claim ahead of the Commonwealth's other unsecured creditors.  Indeed, this is the type of "race of diligence by creditors for the debtor's assets" the automatic stay was intended to prevent.  *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988).  Furthermore, lifting the automatic stay to allow Movants to execute on their asserted claims would provide them better treatment than even Bankruptcy Code section 507(a)(4)(A), as each of the Movants would not be limited by the statutory cap under section 507(a)(4)(A).

25.     Additionally, the same issues in the Lawsuit challenging the constitutionality of Act No. 3 of January 23, 2017 and Acts 8 and 26 under the Contracts Clause of the Puerto Rico Constitution are being litigated in an adversary procceding in these Title III cases, captioned *Union de Trabajadores de la Industria Electrica y Riego, Inc. v. Puerto Rico Electric Power Authority, et al.*, Adv. Proc. No. 17-229-LTS (the "UTIER Action").  *Compare* UTIER Action, ECF No. 1, at pp. 30-44; ECF No. 62 (dismissing certain claims except the Contracts Clause claims), *with* Motion at 4-7.  Allowing the same issues in the UTIER Action to be litigated separately in the Lawsuit in the State Court would interfer with orderly resolution of the UTIER Action in these Title III cases and possibly result in conflicting decisions, and therefore *Sonnax* factor 2 weighs against lifting the automatic stay.

26.     ***Sonnax* Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion.  The fourth *Sonnax* factor focuses on whether "a specialized tribunal has been established for particular

12

causes of action and that tribunal has the expertise to hear such cases." *In re Lahman Mfg. Co., Inc.*, 31 B.R. 195, 199 (Bankr. D.S.D. 1983).[4]  No specialized tribunal has been established to hear the Lawsuit.  The Lawsuit is pending before the State Court, a court of general jurisdiction.  That resolution of the Lawsuit may require interpretation of Puerto Rico law does not render the State Court a "specialized tribunal."  Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

27.     ***Sonnax* Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion.  No insurer of the Commonwealth has assumed full financial responsibility for defending the Lawsuit, and Movants do not allege any facts to the contrary.  Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

28.     ***Sonnax* Factor 6**:  The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather whether the Lawsuit primarily involves third parties rather than the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

29.     Here, the Commonwealth, the Secretary of Education, and the Department of

---

[4]   Courts offer several examples of such specialized tribunals.  *See, e.g., In re Good Hope Indus., Inc.*, 16 B.R. 719 (Bankr. D. Mass.) (arbitration panels); *In Re Terry*, 12 B.R. 578 (Bankr. E.D.Wis. 1981) (patient compensation panels); *In re Seeburg Corp.*, 5 B.R. 364 (Bankr. N.D.Ill.1980) (National Labor Relations Board).

Education, an official of an agency of the Commonwealth, are the only defendants in the Lawsuit. Accordingly, the Lawsuit does not involve third parties at all.

30.     Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

31.     ***Sonnax* Factor 7**:   The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. First, the Commonwealth would have to expend considerable time and expense to litigate the Lawsuit by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial.  Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.  *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").  Here, the depletion of the Commonwealth's resources to defend against the Lawsuit and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's other creditors.

32.     Second, as noted above, Movants have noted their intent in filing the Motion is to

obtain the same priority treatment Bankruptcy Code section 507(a)(4)(A) provides certain creditors in chapter 11 cases. *See* Motion ¶¶ 20-21 & pp. 19-20. Congress decided not to make priority treatment under Bankruptcy Code section 507(a)(4)(A) applicable to PROMESA Title III. PROMESA § 301(a). Allowing Movants to collect on their asserted claims ahead of all other unsecured creditors would exhaust the Commonwealth's limited resources and prejudice the interest of other creditors of the Commonwealth.

33.      Accordingly, *Sonnax* factor 7 does not support granting the Motion.

34.      ***Sonnax* Factors 10 and 11:** The interests of judicial economy and the status of the Lawsuit also weigh against stay relief. As discussed above, the Lawsuit is still at a preliminary stage, having been filed after the commencement of the Commonwealth's Title III case. There are processes pending that are necessary for the Lawsuit to move forward, such as responding to the complaint, conducting and finalizing discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense. As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586, at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

15

35.    ***Sonnax* Factor 12:** Factor 12, the impact of the stay and the balance of the harms, is the only *Sonnax* factor actually addressed by Movants, and this factor clearly favors denial of the Motion. This factor looks at the impact of the automatic stay on the parties, and not the individual hardships that do not result from imposition of the automatic stay. *See In re Sonnax Indus.,* 907 F.2d at 1286; *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 526 (D.P.R. 2016) ("[Movants] must still demonstrate that the harm flowing from the continuation of those alleged constitutional violations outweighs the detriment that the Commonwealth would suffer if the stay were vacated to address them."). The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movants would suffer if the automatic stay remains in place. The procedural status of the Lawsuit, the large number of pending lawsuits and literally trillions of dollars of prepetition claims filed against the Debtors, the diversion of the Commonwealth's resources to defend Movants' claims, and the prejudice to the interests of other similarly situated creditors who must also await the formulation and implementation of a plan of adjustment all weigh in favor of continuing the automatic stay. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

36.    On the other hand, postponing liquidation and payment of Movants' claims is a hardship that is shared with other creditors as a fundamental policy of bankruptcy law that allows the Commonwealth to focus on its restructuring and recovery efforts for the equal benefit of all creditors and in the interest of judicial economy. While the Commonwealth is cognizant of Movants' hardships in waiting to collect on their asserted claims, Motion at 19, this Court has held that disruption of claimholders' retirement plans (including payment of unused sick leave) is not

16

sufficient hardship to outweigh "the burden that would accrue to the Commonwealth from needing

to defend [the litigation] in multiple separate fora, and the prejudice to other unsecured creditors

who must also await the formulation and implementation of a plan of adjustment." Order Denying

Motion for Stay Relief at 5. Furthermore, while any future proposed reductions in Movants'

pensions may cause Movants hardship, Motion at 19, it is not a hardship caused by addressing

Movants' asserted claims in the Title III claims resolution process. Any claim Movants may have

will be dealt with during the plan of adjustment process, as with any other creditor's claims. And,

given the early stage of the Lawsuit, a final resolution of the Lawsuit would likely take a significant

amount of time. Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[5]

## II.    MOVANTS' ARGUMENTS ARE UNAVAILING

37.    **It is Premature to Evaluate the Merits of Movants' Lawsuit**. Movants argue

that the automatic stay should be lifted because they are likely to prevail on the merits of their

case. Motion at 14. As noted above, the merits of a claim are irrelevant to the question of stay

relief. The two decisions Movants cite in support of their argument are distinguishable. Movants

cite *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994),

noting that the court "rel[ied] on two additional factors; *i.e.,* the misconduct of the debtor and

whether the creditor has a probability of prevailing on the merits." Motion at 12. However, a

careful reading of the decision in *Unanue-Casal* reveals that the court only referenced the

probability of prevailing on the merits as it surveyed the various factors courts have considered in

determining cause to lift the automatic stay. *Unanue-Casal*, 159 B.R. at 95-96. The court,

however, did not rely on the merits of the underlying claim in determining whether to lift the

---

[5]    The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a
judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the
foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable
here.

automatic stay.  *Id.* at 95-102.

38.     Movants also cite *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116 (Bankr. D. Del. 2009), for the proposition, "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Id.* at 129 (citation omitted).  However, *Tribune* indicates a likelihood of success can be found where the movant had previously *offered into evidence* documentation supporting its claim.  *Id.* ("[Movant] introduced into evidence a Declaration detailing specific dates, potential witnesses, and other facts to support his position . . . and a copy of an agreement . . . . This is sufficient, under the circumstances, to support a slight showing of the probability of success on the merits.").   Here, however, it is premature to determine the merits of Movants' claims based on their bare allegations and legal argument because the Prepetition Action was filed after commencement of the Commonwealth's Title III case and stayed before the defendants could assert their defenses by answering or otherwise responding to Movants' complaint.

39.     Furthermore, the decision in *Tribune* is limited to the specific circumstances of the case, as it notes in various instances.  *Id.* ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay <u>in an appropriate case</u>. . . . . This is sufficient, <u>under the circumstances</u>, to support a slight showing of the probability of success on the merits." (emphasis added)).   In *Tribune*, the debtors filed an adversary proceeding to obtain determinations on the same issues raised in the litigation movant sought to lift the stay to pursue.  *Id.* at 127.  The court found that movant would suffer hardship if the stay were not lifted and the issues litigated in an adversary proceeding, including prejudice to movant's ability to call non-party witnesses at trial.  *Id.* at 128.  The debtors, on the other hand, would not suffer hardship if the stay were lifted and issues litigated in a separate forum.  *Id.* at 129.  Thus, the *Tribune* analysis focused on the

18

balance of the harms, which is a *Sonnax* factor, rather than the underlying merits, which is not. Here, as shown above under the *Sonnax* analysis, the Commonwealth would suffer substantial hardship if the automatic stay were lifted.

40.     **Movants' Citation of PROMESA Section 405(m)(5) Is Inapposite**.     Movants cite PROMESA section 405(m)(5) and (n)(2) to argue that the Lawsuit is excepted from the application of the automatic stay.  Motion at 15-17.  PROMESA section 405(m)(5), however, is inapplicable to the automatic stay here because the stay under PROMESA section 405(b) has since expired pursuant to PROMESA section 405(d), and the automatic stay currently in effect is pursuant to Bankruptcy Code section 362, made applicable to the Commonwealth's Title III case pursuant to PROMESA section 301(a).  Furthermore, even if PROMESA section 405(m)(5) and (n)(2) informed the application of the automatic stay under Bankruptcy Code section 362, where Congress wanted to create exceptions to the applicability of the automatic stay, it did so with express terms—for example, under PROMESA section 405(c) and Bankruptcy Code section 362(b).  Indeed, the Supreme Court noted "Congress . . . does not alter fundamental details of a regulatory scheme in vague terms or ancillary provision – it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *In re City of San Bernardino*, 558 B.R. 321, 330 (Bank. C.D. Cal. 2016) ("[T]he Court cannot carve out exceptions to the automatic stay beyond those already enumerated in § 362(b)." (citations omitted)). Accordingly, the general terms of PROMESA section 405(m)(5) and (n)(2) are inapplicable to the automatic stay under Bankruptcy Code section 362, nor can such general provisions create an exception to the application of the automatic stay.

41.     **Application of the Automatic Stay Does Not Immunize the Commonwealth From Violation of Its Own Laws**.  Application of the automatic stay to the Lawsuit would not

19

immunize the Commonwealth from violations of its own laws, as Movants assert. Motion at 17. Movant complains that the automatic stay "leave[s] the inhabitants of Puerto Rico without recourse against the Commonwealth for any constitutional or statutory violations it commits against its resident." *Id.* However, as recognized in *In re City of San Bernardino*, 558 B.R. 321, 329-30 (Bank. C.D. Cal. 2016), such argument is fundamentally flawed in that it mistakenly assumes that all claims against a Title III debtor are discharged without a creditor having any chance to assert the claim against the debtor beforehand. The court in *San Bernardino* noted:

> Newberry also argues that the stay should not apply because it would effectively immunize the City for any constitutional violations it commits against its residents. . . . The Court rejects this argument . . . . First, the Court disagrees that automatic stay leaves the City's residents without any recourse. Newberry's argument mostly rests on the mistaken premise that all post-petition claims against the City are discharged without the creditor having any chance to assert the claim against the debtor beforehand. . . . However, insofar as Newberry seeks damages or fees from the City for the alleged constitutional violation, they can file a claim for administrative expenses. . . . Second, the Court cannot carve out exceptions to the automatic stay beyond those already enumerated in § 362(b). *Conejo Enters.*, 96 F.3d at 352 (Congress did not intend to provide exemptions to the automatic stay beyond those listed in § 362(b)); *cf. Hillis Motors, Inc.*, 997 F.2d at 590 ("Exceptions to the automatic stay should be read narrowly. The 'precise wording of the stay and its exceptions should be emphasized.' " (citations omitted)). The fact that constitutional claims may be "deserving" of their own exemption from the automatic stay cannot overcome this.

*San Bernardino*, 558 B.R. at 329–30; *see also Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 526 (D.P.R. 2016) ("The mere fact that plaintiffs bring claims pursuant to the Federal and Commonwealth Constitutions does not, however, entitle them to automatic circumvention of the PROMESA stay." (citing *San Bernardino*)).

20

42.     Movants had an opportunity to assert its claim by filing a proof of claim, which it did so.  *See* Motion ¶ 18; Proof of Claim No. 108230.[6]  Movants' claims will be addressed in the claims resolution process in the Commonwealth's Title III case.

## **CONCLUSION**

43.     Movants have failed to establish cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the Lawsuit to proceed.  Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: October 10, 2018
San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

---

[6]   The Commonwealth reserves all rights, arguments, objections, and defenses with respect to any proofs of claim filed by Movant.