```
IA5PPUEC

 1   UNITED STATES DISTRICT COURT
     DISTRICT OF PUERTO RICO
 2   ------------------------------------x
     GOVERNMENT DEVELOPMENT BANK
 3   FOR PUERTO RICO.                        PROMESA
                                             Title VI
 4              Applicant.                   Case No. 18-1561 (LTS)
     ------------------------------------x
 5   In re:
                                             PROMESA
 6   THE FINANCIAL OVERSIGHT AND             Title III
     MANAGEMENT BOARD FOR PUERTO RICO,
 7       as representative of                Case No. 17-BK-3283 (LTS)
     THE COMMONWEALTH OF PUERTO RICO,
 8   ET AL.,
                                             (Jointly Administered)
 9              Debtors.
     ------------------------------------x
10   THE OFFICIAL COMMITTEE OF
     UNSECURED CREDITORS OF THE DEBTORS
11   (OTHER THAN COFINA),

12              Plaintiff,

13         v.                                Adv. Proc No. 18-00101 (LTS)

14   THE COMMONWEALTH OF PUERTO RICO,
     THE PUERTO RICO FISCAL AGENCY AND
15   FINANCIAL ADVISORY AUTHORITY, THE
     GOVERNMENT DEVELOPMENT BANK FOR
16   PUERTO RICO, AND THE FINANCIAL
     OVERSIGHT AND MANAGEMENT BOARD FOR
17   PUERTO RICO,

18              Defendants.
     ------------------------------------x
19
                                             New York, N.Y.
20                                           October 5, 2018
                                             10:22 a.m.
21
     Before:
22
                     HON. LAURA TAYLOR SWAIN,
23
                                             District Judge
24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

APPEARANCES

O'MELVENY & MYERS LLP
      Attorneys for The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Government Development Bank for Puerto Rico ("GDB")
BY:   PETER FRIEDMAN, ESQ.
      SUZZANNE UHLAND, ESQ.
      MATTHEW KREMER, ESQ.

PAUL HASTINGS LLP
      Attorneys for The Official Committee of Unsecured Creditors ("UCC")
BY:   LUC DESPINS, ESQ.


PROSKAUER ROSE LLP
      Attorneys for The Financial Oversight and Management Board for Puerto Rico (the "FOMB")
BY:   MARTIN BIENENSTOCK , ESQ.
      EHUD BARAK, ESQ.

1               (In open court)

2               THE COURT:  Buenos dias.  Please be seated.

3               (Case called)

4               THE COURT:  Again, good morning.  Greetings to all of

5     the attendees here in New York and San Juan and by telephone.

6               Just briefly, the electronic devices rules that always

7     apply apply today; so there's to be no communicating from the

8     courtroom and no recording or retransmission of any kind.

9               Mr. Friedman, you have an update?

10              MR. FRIEDMAN:  Good morning, your Honor.  Peter

11    Friedman from O'Melveny & Myers on behalf of AAFAF and the GDB.

12    I do have an update.  As I mentioned on Wednesday, we were

13    doing what lawyers do, which was talking.  We actually did

14    something even better than talking.  We listened to each other.

15    We have an agreement as between the Unsecured Creditors

16    Committee, the Oversight Board, AAFAF and GDB that resolves the

17    various objections.

18              It's even better than just an agreement.  We actually

19    have a definitive document, a stipulation entered into by the

20    parties last night.  What I'd request permission of the Court

21    to do is actually turn it over to my colleague, Matthew Kremer,

22    who I don't think has had a chance to address the Court yet,

23    but he really did the work, and I think he should be the first

24    one to explain what has happened.

25              I do just want to thank Mr. Despins and his team,

1    Mr. Bienenstock, Mr. Barak from Proskauer, as well the support

2    from the bond holders represented by Davis Polk, all of who

3    were extremely important in getting to what we consider to be

4    an excellent resolution of this issue.  There are, obviously,

5    matters to come.  With respect to GDB, there are still some

6    objectors out there, but we view this as a really significant

7    step forward.  With the Court's permission, I'd like to turn it

8    over to Mr. Kremer.

9            THE COURT:  Thank you.  Mr. Kremer.

10           MR. KREMER:  Thank you, your Honor.  Matthew Kremer

11   from O'Melveny & Myers on behalf of AAFAF and GDB.

12           THE COURT:  Good morning.

13           MR. KREMER:  Good morning.

14           If your Honor would like, I can walk us through the

15   material terms of the stipulation that was recently filed on

16   the docket.

17           THE COURT:  I'd be grateful because I've only had a

18   chance to skim it.

19           MR. KREMER:  Understood.  I will start with on page 5,

20   skipping through the recitals and jumping straight to the first

21   operative provision.

22           THE COURT:  Yes.

23           MR. KREMER:  So the settlement here really has three

24   separate components.  The first component, which is under Roman

25   Numeral I, the PET distribution.  This component of the

 1    settlement was to ensure that there was a more definitive and
 2    improved recovery for the Title III debtors that are net
 3    creditors of GDB.  These are PREPA and ERS.
 4         So the way that we've structured this agreement, to
 5    provide a more definitive recovery to these two entities, is to
 6    provide, first, a cash payment of $20 million to the public
 7    entity trust.  This payment will be paid on the closing date.
 8    Otherwise, under the previous structure, this 20 million would
 9    have gone to the issuer trust.
10         In addition, as your Honor knows, there are several
11    reserves that are being held back at GDB with respect to
12    certain allocated expenses including, you know, vendor reserves
13    for open and disputed vendor claims and operating expenses.  To
14    the extent that there is, you know, a residual in these reserve
15    accounts, after all of the expenses for which they were
16    allocated had been satisfied, that reserve, the first 10
17    million of any residual will now go to the public entity trust,
18    and then thereafter will continue to go to the issuer trust as
19    previously contemplated.
20         The cash component that I just described, in the
21    aggregate, potentially up to 30 million, will be structured
22    such that the Title III debtors, namely again PREPA and ERS,
23    will have priority with respect to that cash distribution.  So
24    that's the first component.
25         The second component starts on page 6 of the

1  informative motion, or really page 6 of the stipulation
2  attached to the informative motion.  This is an agreement by
3  GDB to transfer certain legal claims to the Commonwealth.  The
4  definition of such claims that will be transferred is set forth
5  in paragraph 8.  These are, in large part, claims where GDB was
6  acting in its role as the fiscal agent or financial advisor or
7  in some other representative capacity of the Title III debtor
8  or another government entity.
9  THE COURT:  Now, I notice that the stipulation refers
10  to transfer to the applicable Title III debtor or other
11  government entity.  So is it your practical understanding that
12  it's the Commonwealth that would be the transferee?
13  MR. KREMER:  Not necessarily the Commonwealth in every
14  instance.  For example, your Honor, if it was -- if the claim
15  related to, say, PREPA's debt issuance and PREPA was the issuer
16  and GDB was the fiscal agent facilitating that issuance, in
17  that instance, that cause of action would go to PREPA and not
18  necessarily to the Commonwealth.
19  THE COURT:  So the breadth of the language in the
20  stipulation is consistent with the intent and understanding of
21  the parties?
22  MR. KREMER:  That is correct, your Honor.
23  So skipping now to the third component of this
24  settlement, and that is starts on page 8, and this is the claim
25  against the Commonwealth.  So, as your Honor knows, previously,

1   the only collateral at the public entity trust was the
2   $890 million claim that has been asserted by GDB against the
3   Commonwealth in the Title III case.
4            Under the Commonwealth fiscal plan, the Commonwealth
5   will be restoring certain federal funds, and on account of that
6   restoration, we've agreed to reduce the claim at the
7   Commonwealth by 312 million, the anticipated amount of federal
8   funds that will be restored.  So the Commonwealth is getting,
9   you know, credit for that restoration.
10           And the next component of that is -- well, I'll note
11  that, of course, that claim that GDB had filed was not yet
12  allowed in the Title III case; so subject to allowance, the
13  claim will be allowed at a maximum amount of 578 million.
14           And then the final component is certain proceeds of
15  causes of actions that will be transferred, up to a maximum
16  amount, to the public entity trust.  And these are the causes
17  of action that GDB owns in its own name, and under the current
18  structure, the way that this is dealt with is GDB has the sole
19  discretion to commence, prosecute and settle these claims.  If
20  it were to prosecute one of these claims and realize proceeds
21  related to those claims, they would be able to retain those
22  proceeds and continue to settle contingent non-liquidity
23  claims.
24           To the extent that, after all contingent claims were
25  settled, there was remaining proceeds, previously those would

1     go to the issuer trust.  Under this stipulation, we've agreed

2     that those proceeds will go to the public entity trust up until

3     there's a definitive recovery for certain entities, as set

4     forth in paragraph 14 of the stipulation.

5            THE COURT:  And that recovery roughly parallels the

6     anticipated recovery of the bondholders that are participating

7     in the issuer trust?

8            MR. KREMER:  That is right, your Honor, with one

9     caveat.  The 55 cents is the 55 cents of the proceeds.  In

10    other words, it is not accounting for the cash that was

11    previously distributed.  So in the best-case scenario, one of

12    the Title III debtors could receive their component of the

13    cash, the 30 million, plus the up to 55 percent of the proceeds

14    of these causes of action.

15           THE COURT:  Thank you for clarifying that.

16           MR. KREMER:  In exchange for all of these, you know,

17    settlement terms that I've just gone over, the UCC as set

18    forth, in Roman Numeral V -- or IV, excuse me, your Honor, will

19    agree to withdraw with prejudice all of its various pleadings

20    before your Honor.  That includes the adversary complaint, the

21    objection to the Title VI transaction, the derivative standing

22    motion, and the appeal of your Honor's stay order.

23           And, your Honor, unless you have any further

24    questions, I think that covers the material terms of the

25    overall settlement.

1   THE COURT: I just have one further question. Is it
2   your collective assessment that the economic changes with
3   respect to the issuer trust and the PET won't require any
4   re-disclosure and re-solicitation?
5   MR. KREMER: That is right, your Honor. I want to be
6   careful and not get in front of my securities lawyers here. We
7   will have disclosures on this, but we do believe this is not a
8   material change. The net present value is, in our view,
9   de minimus and would not require a re-solicitation, and we've
10  been in communications with the various securities
11  professionals and underwriters with respect to this issue.
12  THE COURT: So this won't affect the schedule that we
13  had set up for consideration of the GDB restructuring?
14  MR. KREMER: That is right, your Honor.
15  THE COURT: Thank you very much for that clear and
16  comprehensive summary and for your work on this.
17  MR. KREMER: Thank you, your Honor.
18  THE COURT: Looks like Mr. Despins has a question.
19  (Pause)
20  MR. KREMER: Mr. Despins has clarified for me, the 55
21  cents is so they can obtain from the proceeds of those causes
22  of action 55 cents of their net claims against the PET. So
23  they could receive a 55 percent recovery there, plus the cash.
24  So it's a slight nuance from -- it's not 55 percent of the
25  proceeds. In that instance, one of the debtors could obtain

1   more recovery than in their claim; so it's just 55 percent of
2   their claim.
3              THE COURT:  Of their claim.
4              MR. KREMER:  Exactly.
5              THE COURT:  Plus the proportion of the cash that's
6   going on the front end?
7              MR. KREMER:  Yes.  Thank you for that clarification.
8              THE COURT:  Mr. Despins?
9              MR. DESPINS:  Good morning, your Honor.  Luc Despins
10  with Paul Tastings on behalf of the Committee.  I don't have a
11  lot to say, other than, you know, this involved really complex
12  legal issues.  I've done a lot of cases before, probably one of
13  the most complex cases that I've ever had to deal with, and so
14  the Committee is happy that this is now resolved.
15             We think that the Title III debtors and their
16  creditors are better off for it, and so we're looking forward
17  to the conclusion of the transaction when -- or settlement will
18  be approved as part of the qualifying modification, if your
19  Honor approves the qualifying modification.  Thank you, your
20  Honor.
21             THE COURT:  Thank you, all.  Mr. Barak?
22             MR. BARAK:  Good morning, your Honor.  Ehud Barak from
23  Proskauer Rose, representing the Oversight Board, a
24  representative of the Title III debtors, and the administrative
25  supervisor for the Title VI.  That's a long name.

1       A few short comments.  The Oversight Board is pleased
2  to be able to proceed with the GDB restructuring.  Timing, as
3  we all know, is important in the overall Puerto Rico
4  restructuring efforts, and the settlement allows the
5  restructuring to move forward.
6       Just one reservation of rights, and I'm sure my
7  colleagues here agree.  All arguments with respect to the
8  standing, or lack thereof, are explicitly preserved in the
9  settlement.  We would just ask that once the Court has the
10 chance to review the stipulation, we will ask the Court to so
11 order it.  Of course, if the Court has any questions for the
12 parties, we'll be happy to come back and answer any questions
13 you may have.  Thank you.
14         THE COURT:  Thank you.  It was my intention to take
15 the opportunity to have a careful read.
16         MR. BARAK:  Of course.
17         THE COURT:  I was very grateful for the guidebook that
18 you've given me here, and I was also intending to ask you to
19 confirm that what you're seeking is for me to so order and make
20 binding on the parties to the stipulation, the stipulation at
21 this juncture, and I see it provides for an effective date of
22 its operative provisions that is tied to approval of the GDB
23 qualifying modification.
24         MR. BARAK:  Exactly.
25         THE COURT:  Is that correct?

1    MR. BARAK: Yes, thank you.

2    THE COURT: Thank you. So this certainly has been a
3    very complex set of issues among the many complex legal and
4    financial issues presented in these extraordinary PROMESA
5    matters, and I thank you for the work that you have done to
6    resolve them and to enable the parties in interest, the
7    stakeholders, to move forward toward to the core question of
8    whether the qualifying modification should be approved, and I
9    look forward to full briefing and presentations on that issue
10   on the schedule that has been established.

11   Again, I do thank you for your careful presentation of
12   this settlement stipulation proposal this morning, and I will
13   turn to my more careful review promptly, and should we have any
14   questions, we'll reach out for clarification.

15   Is there anything else that we should take up together
16   this morning? Mr. Despins?

17   MR. DESPINS: Your Honor, thank you. This is not GDB
18   related. It will save us filing an informative motion. Just
19   to say the board filed, in COFINA, a motion to set various
20   hearing dates.

21   THE COURT: Yes.

22   MR. DESPINS: You saw that. And it says in there that
23   the Committee has agreed to those dates, and that's true. I
24   just want to make sure that's not read as the Committee is on
25   board. We're still waiting for the fiscal plan. So hope

1  springs eternal.  It probably is going to come in towards the
2  later part of this month; so we're waiting for that.  I didn't
3  want our consent to those dates to reflect the fact that -- or
4  to indicate that somehow we're now on board.
5          THE COURT:  I had understood it as a scheduling
6  proposal only.
7          MR. DESPINS:  Great.  Thank you.
8          THE COURT:  Thank you.  As I read it, you provided in
9  the notice for an objection deadline of Monday afternoon, and
10 so I will wait until that deadline has passed, in case there
11 are any objections to the scheduling, but it is merely a
12 scheduling proposal.  Am I correct in that understanding?
13         Thank you all very much.  Keep well.  We're adjourned.
14         (Adjourned)

```
         IA5PPUEC                                                    14

  1    UNITED STATES DISTRICT COURT)

  2                                 ) ss.
       OF PUERTO RICO               )
  3

  4                        REPORTER'S CERTIFICATE

  5

  6         I, Rose M. Prater, do hereby certify that the above

  7    and foregoing pages, consisting of the preceding 13 pages

  8    constitutes a true and accurate transcript of our stenographic

  9    notes and is a full, true, and complete transcript of the

 10    proceedings to the best of our ability.

 11         Dated this 5th day of October, 2018.

 12         Rose M. Prater    S/ ROSE M. PRATER

 13         Rose M. Prater, RPR, CRR

 14         Official Court Reporter

 15         500 Pearl Street

 16         New York, NY 10007

 17         212-805-0320
```