UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS<br><br>**Court Filing Relates Only to PREPA and Shall only be Filed Case No. 17-BK-4780 (LTS) and Main Case 17-BK-3283 (LTS)** |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION,
IN ITS CAPACITY AS PREPA BOND TRUSTEE,
TO PAN AMERICAN GRAIN CO., INC.'S
MOTION FOR RELIEF FROM STAY TO EXECUTE SET-OFF**

To the Honorable United States District Court Judge Laura Taylor Swain:

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747).

U.S. Bank National Association, solely in its capacity as trustee (the "PREPA Bond Trustee") under the Trust Agreement dated as of January 1, 1974 (as amended and supplemented from time to time, the "Trust Agreement"),[2] between it and the Puerto Rico Electric Power Authority ("PREPA") pursuant to which PREPA has outstanding more than $8 billion in principal amount of Power Revenue and Power Revenue Refunding Bonds ("PREPA Bonds"), respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay to Execute Set-Off* [Case No. 17-BK-4780 ECF No. 974, and Case No. 17-BK-3283 ECF No. 4004] (the "Motion") filed by Pan American Grain Co, Inc. ("Movant" or "Pan American Grain"). In support of its Objection, the PREPA Bond Trustee states as follows:

## PRELIMINARY STATEMENT

1. This is an improper motion by a single PREPA Bondholder contrary to the terms of the governing Trust Agreement seeking relief from the automatic stay and an order effecting a setoff of its PREPA Bond investments against its prepetition electricity bill owed to PREPA.

2. In its Motion, Pan American Grain asserts that it is the "holder" of PREPA Bonds having a total value, including accrued interest, of $1,028,507.50.[3] It seeks in the Motion to use

---

[2] A copy of the Trust Agreement is attached as Exhibit A-1 through A-7 to the Declaration of John T. Duffey, submitted on October 17, 2018 in support of the PREPA Bond Trustee's Objection.

[3] Based on its Proof of Claim that is referenced in the Motion (*see* Proof of Claim No. 21352), Pan American Grain's PREPA Bond positions consist of multiple separate investments in PREPA Bonds maturing on July 1, 2017, held through Popular Securities and Oriental Securities. The Proof of Claim indicates that they were purchased between May 2015 and April 2016.. The PREPA Bond Trustee assumes that the "value" referenced in the Motion is par value.

Virtually all of the PREPA Bonds are legally registered in the name of Cede & Co. as nominee for Depository Trust Company ("DTC"). Such PREPA Bonds are beneficially held by investors through one or more intermediaries in the indirect holding system that is in prevalent use throughout the United States for publically traded debt securities of this type.

its Bond position as a setoff against $2,211,780.76 being charged by PREPA for electricity and related services incurred prior to the filing of PREPA's Title III Petition.

3. The PREPA Bond Trustee objects to the Motion on the limited grounds (a) that Pan American Grain lacks standing to seek the remedy of setoff because it is prohibited from doing so under the controlling "no action" provision in the Trust Agreement; and in the alternative, (b) that "cause" for relief from the automatic stay does not exist under Section 362(d)(1) of the Bankruptcy Code because Pan American Grain has no legal or equitable right under the Trust Agreement to enforce setoff unilaterally for its disproportionate benefit.

4. Accordingly, the PREPA Bond Trustee requests that the Motion be denied in its entirety.

## OBJECTION

### I. PAN AMERICAN GRAIN DOES NOT HAVE STANDING UNDER THE TRUST AGREEMENT TO SEEK SETOFF OF ITS PREPA BONDS

5. Movant correctly acknowledges that the automatic stay made applicable to this PROMESA Title III case covers setoff by creditors of prepetition claims against prepetition debts and that Section 362(d)(1) permits the Court to grant relief from the automatic stay "for cause." *See* 11 U.S.C §§ 362(a)(7), 362(d)(1) (made applicable by PROMESA § 301(a)).

6. In its Motion, Pan American Grain seeks both relief from the automatic stay for cause and an order effecting setoff of its PREPA Bond investment.[4]

7. The PREPA Bonds are special revenue bonds, and the Trust Agreement provides mechanisms for the collective enforcement of the property rights and remedies supporting the

---

[4] Movant does not explain how setoff of its beneficial interests in various PREPA Bonds would work mechanically to avoid affecting the rights of other legal and beneficial holders of the PREPA Bonds in question.

3

PREPA Bonds following an event of default. Such rights are to be enforced by either the PREPA Bond Trustee (as it may be requested or directed by PREPA Bondholders) or by PREPA Bondholders having the requisite amount of PREPA Bonds who follow the procedural and substantive requirements of the Trust Agreement. (Trust Agreement §§ 804, 808.) The rights and interests granted to the PREPA Bond Trustee and PREPA Bondholders under Trust Agreement are "for the equal and proportionate benefit and security of all and singular the present and future holders of the bonds." (*Id.* at 14-15.) Recoveries from enforcement actions and the expenses thereof are generally to be shared on a proportionate basis. (*Id.* § 805.)

8. Pan American Grain's Motion is fundamentally flawed because Pan American Grain does not have standing unilaterally to bring proceedings—such as the Motion—to enforce collection of its PREPA Bonds, let alone to do so for its disproportionate benefit.

9. The form of each PREPA Bond expressly makes the holder thereof subject to all of the terms and conditions of the Trust Agreement, and further provides that the holder "assents to all of the provisions of the [Trust] Agreement." (*Id.* at 6.) The PREPA Bonds further provide: "The holder of this bond shall have no right to enforce the provisions of the [Trust] Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the [Trust] Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the [Trust] Agreement." (*Id.* at 9.)

10. Section 808 of the Trust Agreement includes an express "no action" provision, which prohibits small individual PREPA Bondholders from pursuing remedies in their own name without complying with the requirements contained in that provision:

> It is understood and intended that, except as otherwise above provided, no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Agreement, or to

4

> enforce any right hereunder except in the manner herein provided, .
> . . and that any individual right of action or other right given to one
> or more of such holders by law is restricted by this Agreement to
> the rights and remedies herein provided.

(*Id.*)

11. Pursuant to Section 808, an individual PREPA Bondholder is prohibited from pursuing remedies in its own name if it holds (or is acting together with other PREPA Bondholders that hold in aggregate) <u>less than ten percent</u> of the principal amount of PREPA Bonds then outstanding.[5] (*Id.*)

12. Moreover, under Section 808, an individual PREPA Bondholder is prohibited from pursuing remedies in its own name for its own special benefit. Instead, Section 808 requires that "all proceedings at law or in equity" brought by an individual PREPA Bondholder must be maintained for the benefit of all of PREPA's bondholders. (*Id.*)

13. Pan American Grain's Motion directly violates the "no action" clause contained in Section 808 of the Trust Agreement because Pan American Grain (a) holds far less than ten percent of the outstanding principal amount of outstanding PREPA Bonds, and (b) is seeking setoff for its sole benefit, not for the benefit of all of PREPA's bondholders. Thus, under Section 808 of the Trust Agreement, Pan American Grain lacks standing to bring the present Motion seeking unilateral payment of its PREPA Bonds—and its Motion should be denied accordingly.

---

[5] Section 808 further provides that PREPA Bondholders holding between ten percent and twenty percent of the outstanding principal amount of the PREPA Bonds must (in addition to other steps) first request that the PREPA Bond Trustee take an action and have the PREPA Bond Trustee decline before taking the requested action independently.

Document Page 6 of 9

14. "No action" provisions like that contained in Section 808 of the Trust Agreement are enforceable in bankruptcy proceedings.[6] *In re Am. Roads LLC*, 496 B.R. 727, 729-31 (Bankr. S.D.N.Y. 2013) ("[N]otwithstanding the broad standing provisions of Bankruptcy Code section 1109, bankruptcy courts have routinely held that a party lacks standing to take an action in bankruptcy in violation of a "no action' clause."); *see also In re Innkeepers USA Trust*, 448 B.R. 131, 144 (Bankr. S.D.N.Y. 2011); *In re Ion Media Networks, Inc.*, 419 B.R. 585, 597 (Bankr. S.D.N.Y. 2009); *In re Enron Corp.*, 302 B.R. 463, 477 (Bankr. S.D.N.Y. 2003).

15. One of the purposes of "no action" clauses is to prevent small bondholders from bringing enforcement actions and litigating issues for their own reasons in a manner that may not be in the strategic interests of bondholders generally. *In re Am. Roads LLC*, 496 B.R. at 729-30.

## II. THERE IS NO CAUSE FOR RELIEF FROM THE AUTOMATIC STAY

16. Even if Pan American Grain had standing to bring the Motion (and it does not), the Court should deny the Motion because, in light of the restrictions in the Trust Agreement, Pan American Grain cannot establish either (a) that there is "cause" for relief from the stay within the meaning of Section 362(d)(1) of the Bankruptcy Code; or (b) that there is any basis for setoff under Section 553 of the Bankruptcy Code.

17. Pan American Grain argues that "cause" exists because, according to Pan American Grain, it possesses an enforceable right pursuant to Section 553 of the Bankruptcy Code to the setoff it seeks.

---

[6] The PREPA Bond Trustee is not questioning the general standing of Pan American Grain to participate in these Title III proceedings as a creditor within the meaning of 11 U.S.C. § 1109; Pan American Grain does lack standing, however, to enforce collection of its own beneficial PREPA Bond investment through the exercise of remedies in violation of the Trust Agreement.

18. But, Section 553 permits setoffs in bankruptcy only if two conditions are satisfied: (i) the creditor must enjoy an independent right of setoff under applicable non-bankruptcy law; and (ii) the setoff must satisfy the requirements set forth in Section 553 of the Bankruptcy Code. 11 U.S.C. § 553 (made applicable by PROMESA § 301(a)); *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010) ("[S]etoff is appropriate in bankruptcy only when a creditor both enjoys an independent right of setoff under applicable non-bankruptcy law, and meets the further Code-imposed requirements and limitations set forth in section 553.").

19. The party seeking setoff bears the burden of proving that both of these conditions are satisfied. *In re Williams*, 61 B.R. 567, 570 (Bankr. N.D. Tex. 1986). Pan American Grain cannot carry its burden here as to either condition.

20. The first condition—*an independent right to setoff under non-bankruptcy law*—is lacking because, as explained above, the "no action" clause contained in Section 808 of the Trust Agreement prohibits Pan American Grain from seeking the setoff it requests in the Motion. (Trust Agreement § 808.)

21. Further, Pan American Grain's requested setoff contravenes Section 805 of the Trust Agreement, which contemplates that moneys received from PREPA through the exercise of remedies for default be distributed on a pro rata basis. (*Id.* § 805.)

22. The second condition—*compliance with the requirements of Section 553 of the Bankruptcy Code*—is similarly lacking. To be eligible for setoff under Section 553, Pan American Grain's claim against PREPA and PREPA's claim against Pan American Grain must be "mutual." 11 U.S.C. § 553(a). Although the Bankruptcy Code does not define "mutuality," numerous courts that have analyzed this requirement have concluded that debts are mutual only

7

if "they are due to and from the same persons in the same capacity." *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010). "Put another way, mutuality requires that each party must own his claim in his own right severally, <u>with the right to collect in his own name against the debtor</u> in his own right and severally." *Id.* (emphasis added) (internal quotation marks omitted); *see also* 4 Norton Bankr. L. & Prac. 3d § 73:5 ("As a general rule, mutuality is predicated on the right of each claimant to collect its claim against the debtor in its own right and severally.")

23. Pan American Grain's requested setoff fails Section 553's mutuality requirement because Pain American Grain—as result of the Trust Agreement's "no action" clause—lacks the right to collect in its own name against PREPA. *See In re Mayco Plastics, Inc.*, 389 B.R. 7, 31 (Bankr. E.D. Mich. 2008) (concluding that mutuality was lacking because the party seeking setoff lacked a right under the contract at issue to assert a claim directly against the debtor).

24. Even if the setoff requested by Pan American Grain was permissible in bankruptcy (which it is not), the Court still has discretion to find that "cause" is lacking where lifting the stay would inequitably affect other creditors. *See In re Opelika Mfg. Corp.*, 66 B.R. 444, 448 (Bankr. N.D. Ill. 1986) ("Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors.")

25. Here, the setoff proposed by Pan American Grain would be inequitable to the other PREPA Bondholders because it would (a) contravene the express terms of the Trust Agreement and (b) enable Pan American Grain to collect moneys from PREPA disproportionately.

26. Therefore, the PREPA Bond Trustee respectfully requests that the Court deny Pan America Grain's Motion because cause does not exist for relief from the automatic stay here.

8

**CONCLUSION**

For the reasons detailed above, the Motion must be denied because Pan American Grain does not have standing to pursue setoff unilaterally and because Pan American Grain has not established any grounds for relief from the automatic stay imposed on setoffs pursuant to 11 U.S.C. § 362(a)(7).

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, today October 17, 2018.

**We hereby certify** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system of the U.S. Bankruptcy Court for the District of Puerto Rico for Case No. 17 BK 4780, and also in Case No. 17 BK 3283, which will send notification of such filing to all counsel of record participating in the CM/ECF system.

| | |
|---|---|
| **RIVERA, TULLA AND FERRER, LLC** | **MASLON LLP** |
| */s/Eric A. Tulla* | |
| Eric A. Tulla | By:*/s/Clark T. Whitmore* |
| USDC-DPR No. 118313 |     Clark T. Whitmore (admitted *pro hac vice*) |
| Email: etulla@ riveratulla.com |     William Z. Pentelovitch (admitted *pro hac vice*) |
| |     Jason M. Reed (admitted *pro hac vice*) |
| /s/*Iris J. Cabrera-Gómez* |     John T. Duffey (admitted *pro hac vice*) |
| Iris J. Cabrera-Gómez | |
| USDC-DPR No. 221101 | 90 South Seventh Street, Suite 3300 |
| Email: icabrera@riveratulla.com | Minneapolis, MN 55402 |
| | Telephone: 612-672-8200 |
| Rivera Tulla & Ferrer Building | Facsimile: 612-672-8397 |
| 50 Quisqueya Street | E-Mail:   clark.whitmore@maslon.com |
| San Juan, PR 00917-1212 |             bill.pentelovtich@maslon.com |
| Tel: (787)753-0438 |             jason.reed@maslon.com |
| Fax: (787)767-5784 (787)766-0409 |             john.duffey@maslon.com |

                                     **ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS PREPA BOND TRUSTEE**