# EXHIBIT A

# PUERTO RICO WATER RESOURCES AUTHORITY

## TO

## FIRST NATIONAL CITY BANK

### *Trustee*

---

# Trust Agreement

---

**Dated as of January 1, 1974**

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Parties | 1 |
| Recitals: | |
| Authority Act | 1 |
| Powers of Authority | 1 |
| The System and the 1947 Indenture | 3 |
| Resignation of Trustee under the 1947 Indenture | 3 |
| Successor trustee under the 1947 Indenture | 4 |
| Determination to acquire additional facilities | 4 |
| Determination to issue revenue bonds | 4 |
| Forms: | |
| Coupon bonds | 4 |
| Coupons | 10 |
| Registered bonds without coupons | 11 |
| Certificate of authentication | 13 |
| Certificate of authentication for registered bonds | 13 |
| Power to enter Agreement | 13 |
| Authorization of Agreement | 14 |
| Compliance with law | 14 |
| Acceptance of trusts by Trustee | 14 |
| Pledge of revenues | 14 |
| Agreement of parties | 14 |

## ARTICLE I.

### DEFINITIONS.

| SEC. 101.  Meaning of words and terms: | |
|---|---|
| "Agreement" | 15 |
| "Amortization Requirement" | 15 |
| "Annual Budget" | 16 |
| "Authority" | 16 |
| "Authority Act" | 16 |
| "Board" | 16 |
| "Bond Service Account" | 17 |
| "bondholder of record" | 17 |
| "bonds" | 17 |
| "Capital Expenditures" | 17 |
| "Construction Fund" | 17 |
| "Consulting Engineers" | 17 |
| "Controller" | 17 |
| "cost" | 18 |
| "Current Expenses" | 18 |
| "daily newspaper" | 18 |

ii

PAGE

"Depositary" ..................................... 18
"Executive Director" ............................. 18
"fiscal year" .................................... 19
"General Fund" ................................... 19
"General Reserve Fund" ........................... 19
"Government Obligations" ......................... 19
"Improvements" ................................... 19
"Investment Obligations" ......................... 20
"Net Revenues" ................................... 20
"1947 Construction Fund" ......................... 20
"1947 Indenture" ................................. 20
"1947 Indenture Bonds" ........................... 20
"1947 Revenue Fund" .............................. 20
"1947 Sinking Fund" .............................. 20
"1947 Trustee" ................................... 20
"Opinion of Counsel" ............................. 21
"Paying Agents" .................................. 21
"Principal and Interest Requirements" ............ 22
"Redemption Account" ............................. 22
"Renewal and Replacement Fund" ................... 22
"Reserve Account" ................................ 22
"Reserve Maintenance Fund" ....................... 22
"Revenue Fund" ................................... 22
"Revenues" ....................................... 23
"Secretary" ...................................... 23
"serial bonds" and "term bonds" .................. 23
"Series" ......................................... 23
"Sinking Fund" ................................... 23
"System" ......................................... 23
"Time Deposits" .................................. 24
"Treasurer" ...................................... 24
"Trustee" ........................................ 24
Sec. 102. Miscellaneous definitions .............................. 24

## ARTICLE II.

### FORM, EXECUTION AND REGISTRATION OF BONDS AND CONDITIONS FOR AUTHENTICATION AND DELIVERY OF BONDS.

Sec. 201. Limitation on issuance of bonds ....................... 24
Sec. 202. Form of bonds ........................................ 24

4

iii

|  |  |  | PAGE |
|---|---|---|---|
| SEC. | 203. | Details of bonds | 25 |
|  |  | Execution of bonds and coupons | 25 |
|  |  | Payment of principal and interest | 26 |
| SEC. | 204. | Authentication of bonds | 26 |
| SEC. | 205. | Exchange of coupon bonds for registered bonds | 27 |
|  |  | Exchange of registered bonds for coupon bonds or registered bonds | 27 |
| SEC. | 206. | Negotiability of coupon bonds | 27 |
|  |  | Transfer of registered bonds | 27 |
|  |  | Cancellation of bonds and coupons surrendered for exchange or transfer | 28 |
| SEC. | 207. | Ownership of registered bonds | 28 |
|  |  | Ownership of coupon bonds | 29 |
|  |  | Transfer of title of bonds | 29 |
| SEC. | 208. | Issuance of revenue bonds to pay cost of Improvements | 29 |
|  |  | Conditions of authentication and delivery | 30 |
|  |  | Disposition of bond proceeds | 32 |
| SEC. | 209. | Issuance of revenue bonds for any proper corporate purpose | 32 |
|  |  | Conditions of authentication and delivery | 33 |
|  |  | Disposition of bond proceeds | 35 |
| SEC. | 210. | Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement | 35 |
|  |  | Conditions of authentication and delivery | 37 |
|  |  | Disposition of bond proceeds | 39 |
| SEC. | 211. | Temporary bonds | 40 |
| SEC. | 212. | Mutilated, destroyed or lost bonds | 41 |

## ARTICLE III.

### REDEMPTION OF BONDS.

| SEC. | 301. | Redemption of bonds | 41 |
|---|---|---|---|
|  |  | Selection by Trustee | 41 |
| SEC. | 302. | Redemption notice | 42 |
| SEC. | 303. | Effect of calling for redemption | 42 |
| SEC. | 304. | Matured coupons | 43 |
| SEC. | 305. | Redemption of portion of registered bonds | 43 |

iv

| | | | PAGE |
|---|---|---|---|
| SEC. | 306. | Cancellation of bonds and coupons redeemed ............ | 43 |
| SEC. | 307. | Bonds and portions of bonds called for redemption not deemed outstanding ....................................... | 43 |

## ARTICLE IV.

### CUSTODY AND APPLICATION OF PROCEEDS OF BONDS.

| | | | |
|---|---|---|---|
| SEC. | 401. | Construction Fund .................................. | 44 |
| SEC. | 402. | Payments from Construction Fund ...................... | 44 |
| SEC. | 403. | Items of cost ....................................... | 45 |
| SEC. | 404. | Lands for projects .................................. | 46 |

## ARTICLE V.

### REVENUES AND FUNDS.

| | | | |
|---|---|---|---|
| SEC. | 501. | Covenant as to bills for services ...................... | 46 |
| SEC. | 502. | Covenant as to rates ................................ | 46 |
| SEC. | 503. | General Fund ....................................... | 48 |
| SEC. | 504. | Annual Budget ..................................... | 49 |
| SEC. | 505. | Application of moneys in General Fund ................ | 50 |
| SEC. | 506. | Revenue Fund ..................................... | 51 |
| SEC. | 507. | Sinking Fund ...................................... | 51 |
| | | Bond Service Account, Reserve Account and Redemption Account ........................................... | 51 |
| | | Reserve Maintenance Fund ............................ | 51 |
| SEC. | 508. | Disposition of balances in 1947 Indenture funds and accounts | 54 |
| SEC. | 509. | Application of moneys in Bond Service Account .......... | 54 |
| SEC. | 510. | Application of moneys in Reserve Account .............. | 55 |
| SEC. | 511. | Application of moneys in Redemption Account .......... | 55 |
| | | Purchase of bonds .................................. | 55 |
| | | Redemption of bonds ............................... | 55 |
| SEC. | 512. | Use of moneys in Reserve Maintenance Fund ............ | 57 |
| SEC. | 513. | Application and pledge of moneys in Sinking Fund ....... | 58 |

v

|  |  |  | PAGE |
|---|---|---|---|
| Sec. | 514. | Moneys set aside for principal and interest held in trust | 58 |
|  |  | Moneys unclaimed for six years after maturity of bonds and coupons | 58 |
| Sec. | 515. | Cancellation of bonds and coupons upon payment | 58 |

ARTICLE VI.

DEPOSITARIES OF MONEYS, SECURITY FOR DEPOSITS
AND INVESTMENT OF FUNDS.

| Sec. | 601. | Deposits constitute trust funds | 59 |
|---|---|---|---|
|  |  | Security for deposits | 59 |
| Sec. | 602. | Investment of moneys | 60 |
|  |  | Investments deemed to be part of Fund or Account for which purchased | 61 |

ARTICLE VII.

PARTICULAR COVENANTS.

| Sec. | 701. | Payment of principal, interest and premium | 61 |
|---|---|---|---|
|  |  | Pledge of revenues | 62 |
|  |  | Bonds not general obligations of Commonwealth of Puerto Rico | 62 |
|  |  | Offices or agencies for payment of coupon bonds and coupons | 62 |
| Sec. | 702. | Covenant to integrate Improvements into System | 62 |
|  |  | Covenant to construct Improvements in accordance with plans | 62 |
|  |  | Covenant as to operation | 63 |
| Sec. | 703. | Compliance with 1947 Indenture | 63 |
|  |  | Release of 1947 Indenture | 63 |
|  |  | Covenant as to amendment of 1947 Indenture | 63 |
| Sec. | 704. | Covenant as to Renewal and Replacement Fund | 63 |
| Sec. | 705. | Payment of lawful charges | 64 |
| Sec. | 706. | Employment of Consulting Engineers | 64 |
| Sec. | 707. | Insurance | 65 |
| Sec. | 708. | Inspection of insurance policies | 67 |
| Sec. | 709. | No inconsistent action | 67 |
| Sec. | 710. | Accurate records | 67 |
|  |  | Monthly reports | 68 |
|  |  | Annual audits | 68 |
|  |  | Additional reports or audits | 68 |

vi

|  |  |  | PAGE |
|---|---|---|---|
| Sec. | 711. | Covenant as to additional 1947 Indenture Bonds | 69 |
| Sec. | 712. | Covenant against sale or encumbrance; exceptions | 69 |

## ARTICLE VIII.

### Remedies.

| Sec. | 801. | Extended coupons | 71 |
|---|---|---|---|
| Sec. | 802. | Events of default | 71 |
| Sec. | 803. | Acceleration of maturities | 73 |
| Sec. | 804. | Enforcement of remedies | 74 |
| Sec. | 805. | Pro rata application of funds | 75 |
| Sec. | 806. | Effect of discontinuance of proceedings | 77 |
| Sec. | 807. | Majority of bondholders may control proceedings | 77 |
| Sec. | 808. | Restrictions upon action by individual bondholder | 78 |
| Sec. | 809. | Actions by Trustee | 79 |
| Sec. | 810. | No remedy exclusive | 79 |
| Sec. | 811. | No delay or omission construed to be a waiver | 79 |
|  |  | Repeated exercise of powers and remedies | 79 |
|  |  | Waiver of default | 79 |
| Sec. | 812. | Notice of default | 79 |

## ARTICLE IX.

### Concerning the Trustee.

| Sec. | 901. | Acceptance of trusts | 80 |
|---|---|---|---|
| Sec. | 902. | Trustee entitled to indemnity | 80 |
|  |  | Trustee may act without indemnity | 80 |
|  |  | Reimbursement of Trustee | 80 |
| Sec. | 903. | Limitation on obligations and responsibilities of Trustee | 80 |
| Sec. | 904. | Trustee not liable for failure of Authority to act or for deposits in other banks | 81 |
| Sec. | 905. | Compensation and indemnification of Trustee | 81 |
| Sec. | 906. | Monthly statement from Trustee | 82 |

vii

| | | | PAGE |
|---|---|---|---|
| Sec. | 907. | Trustee may rely on certificates ......................... | 82 |
| Sec. | 908. | Notice of default ...................................... | 83 |
| Sec. | 909. | Trustee may deal in bonds and take action as bondholder .... | 83 |
| Sec. | 910. | Trustee not responsible for recitals ..................... | 83 |
| Sec. | 911. | Trustee protected in relying on certain documents ......... | 83 |
| Sec. | 912. | Resignation of Trustee ................................ | 84 |
| Sec. | 913. | Removal of Trustee ................................... | 84 |
| Sec. | 914. | Appointment of successor Trustee ...................... | 84 |
| Sec. | 915. | Vesting of trusts in successor Trustee ................... | 85 |

## ARTICLE X.

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS AND PROOF OF OWNERSHIP OF BONDS.

| | | | PAGE |
|---|---|---|---|
| Sec. | 1001. | Execution of instruments by bondholders ................. | 86 |
| | | Proof of execution .................................... | 86 |
| | | Proof of holding of bonds ............................. | 87 |
| | | Other proof ........................................... | 87 |
| | | Bondholders' actions bind future holders ................. | 87 |

## ARTICLE XI.

### SUPPLEMENTAL AGREEMENTS.

| | | | |
|---|---|---|---|
| Sec. | 1101. | Supplemental agreements by Authority and Trustee ........ | 87 |
| | | Notice of supplemental agreement ...................... | 88 |
| Sec. | 1102. | Modification of Agreement with consent of 60% of bond-holders .............................................. | 88 |
| | | Restrictions on modifications ......................... | 89 |
| | | Notice of supplemental agreement ...................... | 89 |
| | | Consent of holders of 60% of bonds binds all ............. | 90 |
| Sec. | 1103. | Trustee joining in supplemental agreement ............... | 90 |
| | | Supplemental agreements part of this Agreement ........... | 90 |
| Sec. | 1104. | Responsibilities of Trustee under this Article .............. | 91 |
| | | Trustee may rely upon opinion of counsel ................. | 91 |

## ARTICLE XII.

### DEFEASANCE.

| | | | |
|---|---|---|---|
| Sec. | 1201. | Release of Agreement ................................. | 91 |

viii

PAGE

ARTICLE XIII.

MISCELLANEOUS PROVISIONS.

SEC. 1301.  Successorship of Authority ............................ 92

SEC. 1302.  Manner of giving notice, etc. ......................... 93

SEC. 1303.  Successorship of Paying Agents ....................... 93

SEC. 1304.  Parties and bondholders alone have rights under Agreement.. 94

SEC. 1305.  Effect of partial invalidity ............................ 94

SEC. 1306.  Substitute publication ................................ 94

SEC. 1307.  Other funds not prohibited ........................... 95

SEC. 1308.  Headings, etc. not part of Agreement .................. 95

SEC. 1309.  Multiple counterparts ................................ 95

EXECUTION

Execution by Authority ........................................... 96

Execution by Trustee ............................................. 96

ACKNOWLEDGMENTS

Acknowledgment by Authority ..................................... 97

Acknowledgment by Trustee ....................................... 97

THIS TRUST AGREEMENT, dated for convenience of reference as of January 1, 1974, by and between

PUERTO RICO WATER RESOURCES AUTHORITY,

a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the ''Authority''), and

FIRST NATIONAL CITY BANK,

a national banking association duly incorporated and existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise trust powers and is subject to examination by federal authority (said banking association and any bank or trust company becoming successor trustee under this Agreement being hereinafter sometimes called the ''Trustee''), WITNESSETH:

WHEREAS, by Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the ''Authority Act''), the Authority was created a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico; and *Authority Act.*

WHEREAS, by virtue of the Authority Act the Authority is empowered to conserve, develop and utilize the water and energy resources of Puerto Rico for the purpose of making available to the inhabitants of the Commonwealth, in the widest economic manner, the benefits thereof, for the promotion of the general welfare and to increase commerce and prosperity, and the Authority is granted and may exercise all the rights and powers necessary or convenient to carry out the aforesaid purposes including but not limited to the following, among others: *Powers of Authority.*

(a) to have complete control and supervision of any undertaking constructed or acquired by it including the power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provisions of any laws governing the expen-

2

diture of public funds, and such determination shall be final and conclusive upon all officers of the Commonwealth Government, and to prescribe, adopt, amend, and repeal such rules and regulations as may be necessary or proper for the exercise and performance of its powers and duties or to govern the rendering of service or sale or exchange of water or electric energy;

(b) to sue and be sued, implead and be impleaded, complain and defend, in all courts;

(c) to make contracts and to execute all instruments necessary or convenient in the exercise of any of its powers;

(d) to acquire in any lawful manner including, but without limitation, acquisition by purchase, whether by agreement or by the exercise of the power of eminent domain, lease, bequest, devise, gift, and to hold, maintain, use and operate any undertaking or parts thereof;

(e) to acquire in the manner set forth above, produce, impound, develop, manufacture, treat, hold, conserve, use, transmit, distribute, supply, exchange, sell, rent and otherwise dispose of, water, electric energy, equipment, and such other things, supplies and services as the Authority shall deem necessary, proper, incidental, or convenient in connection with its activities; provided, that in disposing at wholesale of electric energy the Authority shall give preference and priority as to supply to public bodies and cooperatives;

(f) to construct or reconstruct any undertaking or any part or parts thereof, and any additions, improvements, and extensions to any undertaking of the Authority by contract or contracts, or under, through, or by means of its own officers, agents, and employees;

(g) to determine, fix, alter, charge and collect reasonable rates, fees, rentals, and other charges for the use of the facilities of the Authority, or for the services, electric energy, or other commodities sold, rendered, or furnished by it, which shall be sufficient for the payment of the expenses of the Authority incurred in the conservation, development, improvement, extension, repair, maintenance, and operation of its facilities and properties,

3

for the payment of the principal of and interest on its bonds, and for fulfilling the terms and provisions of such covenants as may be made with, or for the benefit of, the purchasers or holders of any bonds of the Authority;

(h) to borrow money, make and issue bonds of the Authority for any of its corporate purposes, and to secure payment of its bonds and of any and all other obligations by pledge of or lien on all or any of its contracts, revenues, and income only; and

(i) to make and issue bonds for the purpose of funding, refunding, purchasing, paying, or discharging any of the outstanding bonds or obligations issued or assumed by it or any bonds or obligations the principal or interest of which is payable in whole or in part from its revenues; and

WHEREAS, the Authority owns and operates an integrated system for the generation, transmission and distribution of electricity throughout the Commonwealth of Puerto Rico, and for the purpose of providing funds, with other available funds, for refunding certain outstanding bonds and paying the cost of a capital improvement program to provide additional generating capacity for the System (as defined herein) and necessary extensions of the transmission and distribution lines of the System and other improvements, the Authority has heretofore issued its Puerto Rico Water Resources Authority Electric Revenue Bonds, outstanding on the date hereof in the aggregate principal amount of $868,643,000, under and pursuant to the provisions of a trust indenture, dated as of the first day of January, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by supplemental indentures dated as of January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971 (said indenture as so amended, together with all future amendments and all indentures supplemental thereto as therein permitted, being herein called the "1947 Indenture"); and

*The System and the 1947 Indenture.*

WHEREAS, First National City Bank has resigned as trustee under the 1947 Indenture and has thereby become discharged from the trusts created thereby; and

*Resignation of Trustee under the 1947 Indenture.*

4

Successor trustee under the 1947 Indenture.

WHEREAS, the Authority has appointed The Chase Manhattan Bank (National Association) trustee under the 1947 Indenture, and said banking association, having executed, acknowledged and delivered to its predecessor trustee, and also to the Authority, an instrument in writing accepting such appointment under the 1947 Indenture, is now vested with all rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessor trustee under the 1947 Indenture; and

Determination to acquire additional facilities.

WHEREAS, based upon surveys, estimates and recommendations, the Authority has found and determined that it is necessary and advisable to provide funds for additional facilities for the generation, transmission and distribution of electricity to serve the present and prospective demands upon the System, and has determined that it is necessary to increase its capacity to issue revenue bonds secured as hereinafter provided to provide funds for the foregoing purposes; and

Determination to issue revenue bonds.

WHEREAS, the Authority deems it advisable to make provision for the issuance from time to time of revenue bonds on a parity with the bonds issued initially under the provisions of this Agreement for the purpose of paying all or any part of the cost of any Improvements (as defined herein); and

WHEREAS, the Authority has determined that the coupon bonds to be issued hereunder and the interest coupons to be attached thereto, the registered bonds without coupons to be issued hereunder and the certificate of authentication by the Trustee to be endorsed on all such bonds shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Agreement:

Form of coupon bonds.

[FORM OF COUPON BONDS]

No. ........................                                                                    $........................

UNITED STATES OF AMERICA

PUERTO RICO WATER RESOURCES AUTHORITY

POWER REVENUE BOND, SERIES ..........

Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instru-

5

mentality of the Commonwealth of Puerto Rico (herein sometimes
called the ''Authority''), for value received, hereby promises to pay,
solely from the special fund provided therefor as hereinafter set forth,
to the bearer on the 1st day of ................................., ............ (or earlier as herein-
after referred to), upon the presentation and surrender hereof, the
principal sum of

............................................. THOUSAND DOLLARS

and to pay, solely from said special fund, interest thereon from the
date hereof at the rate of ................................. per centum (............%) per annum
until payment of said principal sum, such interest to the maturity
hereof being payable semi-annually on the 1st days of January and
July in each year upon the presentation and surrender of the coupons
representing such interest as the same respectively become due. Both
the principal of and the interest on this bond are payable in any coin
or currency of the United States of America which on the respective
dates of payment thereof is legal tender for the payment of public
and private debts. The principal of this bond and the interest hereon
are payable at the principal office of ...........................................................
.........................................................., in the ..........................................................,
or at the principal office of ...........................................................................,
in the Borough of Manhattan, City and State of New York, at the
option of the holder, or at such other office or agency of the Authority
maintained for that purpose as the Authority shall determine.

This bond shall not be deemed to constitute a debt or obligation
of the Commonwealth of Puerto Rico or any of its municipalities or
other political subdivisions, and neither the Commonwealth of Puerto
Rico nor any such municipalities or other political subdivisions are
liable for the payment of this bond or the interest hereon, but this bond
shall be payable as to both principal and interest solely from the special
fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of revenue bonds
known as ''Puerto Rico Water Resources Authority Power Revenue
Bonds, Series ............'', dated as of the 1st day of ................................., ............, con-
sisting of bonds maturing in annual installments on the 1st day of ............
......................... in the years ............ to ............, inclusive (herein called the ''serial
bonds''), and of bonds maturing on the 1st day of ................................., ............
and the 1st day of ................................., ............ (herein collectively called the

6

"term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed under the provisions of the 1947 Indenture (hereinafter mentioned) and the Agreement (hereinafter mentioned), being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and First National City Bank, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the Corporate Trust Office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

7

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the 1947 Indenture Bonds and the bonds as the same become due and payable, including reserves for such purposes. The 1947 Indenture provides for the deposit to the credit of a special fund designated "Water Resources Authority Renewal and Replacement Fund" (herein called the "Renewal and Replacement Fund") of the revenues of the System, to the extent required, over and above such expenses of conservation, repair, maintenance and operation and the amounts required to be deposited to the credit of the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund and the Puerto Rico Water Resources Authority General Reserve Fund under the 1947 Indenture, and the Agreement provides for the deposit to the credit of the Renewal and Replacement Fund of sufficient funds to provide for the payments from said Fund to the special fund created under the Agreement designated "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund"). The Agreement also provides for the payment into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Renewal and Replacement Fund to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of and the interest on the bonds.

The Authority has heretofore issued under the provisions of the trust indenture, dated as of the first day of January, 1947 (such indenture as amended being herein called the "1947 Indenture"), Puerto Rico Water Resources Authority Electric Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1947 Indenture, called the "1947 Indenture Bonds"). Until all of the 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the release of the 1947 Indenture, the revenues of the System, over and above the expenses of conservation, repair, maintenance and operation thereof, are pledged to the extent required to the payment of the principal of and the interest on the outstanding 1947 Indenture Bonds.

8

The bonds are issuable as coupon bonds and as registered bonds without coupons, in such denominations as the Authority may by resolution determine. At the Corporate Trust Office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, registered bonds without coupons may be exchanged for an equal aggregate principal amount of coupon bonds of the same series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate, and coupon bonds with all coupons appertaining thereto representing all unpaid interest due or to become due thereon may in like manner be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate.

[Here insert in the bonds of each Series the terms of redemption applicable to the bonds of such Series.]

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for pay-

9

ment of the redemption price and the accrued interest are held by the Trustee or by the paying agents, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee or by the paying agents.

The holder of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

As declared by the Authority Act, this bond shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

10

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

In Witness Whereof, Puerto Rico Water Resources Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, and the attached interest coupons to bear the facsimile signature of said Executive Director, all as of the 1st day of ................................., ................

[Facsimile of
  corporate seal]

<div align="right">

PUERTO RICO WATER
RESOURCES AUTHORITY


By ...........................................
Executive Director


...........................................
Secretary

</div>

**Form of coupons.**

[FORM OF COUPONS]

No............................................                               $............................................

On .......................... 1, 19..........., Puerto Rico Water Resources Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Agreement referred to in said bond and provision for payment thereof shall have been duly made) at the principal office of ..........................................., in the ..........................................., ..........................................., or at the principal office of ..........................................., in the Borough of Manhattan, City and State of New York, at the option of the bearer, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine upon the presentation and surrender hereof, the sum of ........................................... Dollars

11

in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts, solely from the special fund referred to in, and for the semi-annual interest then due upon, its Puerto Rico Water Resources Authority Power Revenue Bond, Series ..............., dated as of ........................, ..............., No. ........................

........................................................................
Executive Director, Puerto Rico
Water Resources Authority

[FORM OF REGISTERED BONDS WITHOUT COUPONS]

Same as Form of Coupon Bonds except as follows:

1. *Substitute the following for the caption and the first paragraph:*

No. R........................                                    $........................

UNITED STATES OF AMERICA

PUERTO RICO WATER RESOURCES AUTHORITY

POWER REVENUE BOND, SERIES ...........

Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to ................................................................, or registered assigns or legal representative, on the 1st day of ........................, ........... (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the Corporate Trust Office of the Trustee (hereinafter mentioned), the principal sum of

........................................ DOLLARS

in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the registered owner hereof by check mailed to the registered owner at his address as it appears on the bond registration books of the Authority, interest on said principal sum from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which

*Form of registered bonds without coupons.*

21

12

interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year in like coin or currency, at the rate of per centum ( %) per annum until payment of said principal sum.

2. *Substitute the following for the paragraph concerning the notice of redemption and the effect thereof:*

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee. If a portion of this bond shall be called for redemption, a new bond or bonds in principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof.

3. *Substitute the following for the paragraph concerning negotiability:*

The transfer of this bond is registrable by the registered owner hereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new registered bond or bonds without coupons, registered in the name of the transferee, of authorized denominations, or, at the option of the transferee, coupon bonds with

13

coupons attached representing all unpaid interest due or to become due thereon, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

4. *Substitute the following for the witnessing clause:*

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of

.............................., ...........

5. *Omit the Form of Coupons.*

[TO BE ENDORSED ON ALL BONDS]                    Form of Certificate
                                                 of Authentication.

CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

First National City Bank, Trustee

By .................................................................

Authorized Officer

[TO BE ENDORSED ON ALL REGISTERED BONDS FOLLOWING     Form of Certificate
    THE CERTIFICATE OF AUTHENTICATION]                of Authentication for
                                                      registered bonds.

Date of authentication: ...................................

and

WHEREAS, by virtue of the Authority Act, the Authority is author-     Power to enter
ized to issue revenue bonds as hereinafter provided, to enter into this  Agreement.
Agreement and to do or cause to be done all the acts and things herein
provided or required to be done as hereinafter covenanted; and

14

**Authorization of Agreement.** WHEREAS, the execution and delivery of this Agreement have been duly authorized by resolution of the Authority; and

**Recital of compliance with law.** WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act, by the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Agreement have happened, exist and have been performed as so required, in order to make this Agreement a legal, valid and binding trust agreement for the security of the bonds in accordance with its terms; and

**Recital of acceptance by Trustee.** WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof;

**Pledge of revenues of the System.** Now, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the bonds by the holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding hereunder and the interest and the redemption premium, if any, thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged and does hereby pledge to the Trustee the revenues of the System, subject to the pledge of such revenues to the payment of the principal of and the interest on the 1947 Indenture Bonds (hereinafter mentioned), and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest and the redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in **Agreement of parties.** connection with such bonds, and it is mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders

15

of the bonds issued and to be issued under this Agreement, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise, as follows:

## ARTICLE I.

### Definitions.

Section 101. In addition to words and terms elsewhere defined in this Agreement, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

The word ''Agreement'' shall mean this Agreement, dated as of January 1, 1974, together with all agreements supplemental hereto as herein permitted.

*Agreement.*

As applied to the term bonds of any Series, the term ''Amortization Requirement'' for any fiscal year shall mean the principal amount fixed or computed for such fiscal year as hereinafter set forth for the retirement of such term bonds by purchase or redemption.

*Amortization Requirement.*

The Amortization Requirements for the term bonds of each Series shall be initially the respective principal amounts for each fiscal year as fixed in a resolution of the Board adopted prior to the issuance of the bonds of such Series; provided, however, that if any additional term bonds of such Series shall be issued under the provisions of the first paragraph of Section 210 of this Agreement, the respective Amortization Requirements for the term bonds of such Series shall be increased in proportion as nearly as may be practicable to the increase in the total principal amount of the term bonds of such Series. The aggregate amount of such Amortization Requirements for the term bonds of each Series shall be equal to the aggregate principal amount of the term bonds of such Series. The Amortization Requirements for the term bonds of each Series shall begin in the fiscal year determined by the Board.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption, or prior to the close of such fiscal year called for redemption under the provisions of Section 511 of this Agreement, shall be in excess of the amount of the Amortization Requirements for the term bonds of such Series

Section 101

16

for such fiscal year, then the amount of the Amortization Requirements
for the term bonds of such Series shall be reduced for such subsequent
fiscal years in such amounts aggregating the amount of such excess
as shall be determined by the Executive Director in an order filed with
the Trustee on or before the 10th day of July following the close of
such fiscal year.

If at the close of any fiscal year the total principal amount of
term bonds of any Series retired by purchase or redemption, or called
for redemption under the provisions of Section 511 of this Agreement,
prior to the close of such fiscal year shall be less than the amount of
the Amortization Requirements for the term bonds of such Series for
such fiscal year, then the amount of the Amortization Requirements
for the term bonds of such Series for the next succeeding fiscal year
shall be increased by the amount of the excess of such deficiency over
the amount then held to the credit of the Redemption Account.

It shall be the duty of the Trustee, on or before the 15th day of
July in each fiscal year, to compute the Amortization Requirements
for the then current fiscal year for the term bonds of each Series then
outstanding. The Amortization Requirement for the then current fiscal
year shall continue to be applicable during the balance of such current
fiscal year and no adjustment shall be made therein by reason of term
bonds purchased or redeemed or called for redemption during such
current fiscal year.

Annual Budget.     The term ''Annual Budget'' shall mean the Authority's budget
of Current Expenses and Capital Expenditures for a fiscal year
adopted pursuant to the provisions of Section 504 of this Agreement.

Authority.     The word ''Authority'' shall mean the Puerto Rico Water Re-
sources Authority, a body corporate and politic constituting a public
corporation and governmental instrumentality of the Commonwealth
of Puerto Rico, and the successor or successors of the Authority.

Authority Act.     The term ''Authority Act'' shall mean the Puerto Rico Water
Resources Authority Act, being Act No. 83 of the Legislature of Puerto
Rico, approved May 2, 1941, as amended and reenacted by Act No. 19,
approved April 8, 1942, as amended, and Act No. 111, approved May 6,
1941, as amended by Act No. 153, approved May 14, 1943, as amended.

Board.     The word ''Board'' shall mean the governing board of the Author-
ity as constituted from time to time and defined by the Authority Act,

Section 101

17

or if said Board shall be abolished, then the board, body or officer succeeding to the principal functions thereof or to whom the powers of the Authority shall be given by law.

The term "Bond Service Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement. <span style="float:right">Bond Service Account.</span>

The term "bondholder of record" shall mean any bondholder who shall have filed with the Secretary, within the period of two years immediately prior to any time when such term has application, a written request setting forth his name and address and the particular reports, notices and other documents which he desires to receive and which are required to be mailed under the requirements of this Agreement. <span style="float:right">Bondholders of record.</span>

The word "bonds" shall mean the bonds issued under this Agreement. <span style="float:right">Bonds.</span>

The term "Capital Expenditures" shall mean all expenditures made on account of the cost of the Capital Improvement Program, as defined in the 1947 Indenture, and the cost of Improvements under this Agreement and the 1947 Indenture and those expenditures made for the purposes for which funds are provided pursuant to the provisions of Section 512 of the 1947 Indenture. <span style="float:right">Capital Expenditures.</span>

The term "Construction Fund" shall mean the Puerto Rico Water Resources Authority Power System Construction Fund, a special fund created and designated by the provisions of Section 401 of this Agreement. <span style="float:right">Construction Fund.</span>

The term "Consulting Engineers" shall mean the engineer or engineering firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties imposed on the Consulting Engineers by this Agreement. <span style="float:right">Consulting Engineers.</span>

The word "Controller" shall mean the Controller or any Assistant Controller of the Authority, or if there is no controller or assistant controller, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the chief financial officer of the Authority. <span style="float:right">Controller.</span>

**Section 101**

18

Cost.

The word "cost", as applied to any Improvements, shall embrace the cost of the acquisition and construction and all obligations and expenses and all items of cost which are set forth in Section 403 of this Agreement.

Current Expenses.

The term "Current Expenses" shall mean the Authority's reasonable and necessary current expenses of maintaining, repairing and operating the System and shall include, without limiting the generality of the foregoing, all administrative expenses, insurance premiums, expenses of preliminary surveys not chargeable to Capital Expenditures, engineering expenses relating to operation and maintenance, fees and expenses of the Trustee, the 1947 Trustee, the Paying Agents and of the paying agents under the 1947 Indenture, legal expenses, any payment to pension or retirement funds, and all other expenses required to be paid by the Authority under the provisions of the 1947 Indenture, this Agreement or by law, or permitted by standard practices for public utility systems, similar to the properties and business of the Authority and applicable in the circumstances but shall not include any deposits to the credit of the Sinking Fund, the Reserve Maintenance Fund or the 1947 Sinking Fund or deposits under the provisions of Sections 511, 512 and 513 of the 1947 Indenture.

Daily newspaper.

The term "daily newspaper" shall mean a newspaper regularly published in the English language on at least five (5) business days in each calendar week and, in the case of a newspaper published in the Commonwealth of Puerto Rico, may include a newspaper regularly published in the Spanish language on at least five (5) business days in each calendar week.

Depositary.

The word "Depositary" shall mean one or more banks or trust companies duly authorized under the laws of the United States of America, or any state thereof or the Commonwealth of Puerto Rico to engage in the banking business therein and designated by the Authority as a depositary of moneys under the provisions of this Agreement, each such depositary to be a member of the Federal Deposit Insurance Corporation and shall also mean the Trustee and Government Development Bank for Puerto Rico.

Executive Director.

The term "Executive Director" shall mean the Executive Director or the Vice Executive Director of the Authority for the time being, or if there is no Executive Director or Vice Executive Director, then any

Section 101

19

person designated by the Board or by the by-laws of the Authority to
perform the functions of the Executive Director.

The term "fiscal year" shall mean the period commencing on the
1st day of July of any year and ending on the last day of June of the
following year.

Fiscal year.

The term "General Fund" shall mean the Puerto Rico Water
Resources Authority General Fund, a special fund created and desig-
nated by the provisions of Section 503 of this Agreement.

General Fund.

The term "General Reserve Fund" shall mean the Puerto Rico
Water Resources Authority General Reserve Fund, a special fund
created and designated by the provisions of Section 511 of the 1947
Indenture.

General Reserve
Fund.

The term "Government Obligations" shall mean (i) direct obli-
gations of, or obligations the principal of and the interest on which are
unconditionally guaranteed by, the United States Government, (ii)
bonds, debentures or notes issued by any of the following Federal
agencies: Banks for Cooperatives, Federal Intermediate Credit Banks,
Federal Home Loan Banks, Export-Import Bank of the United States,
Government National Mortgage Association, Federal Land Banks, or
the Federal National Mortgage Association (including participation
certificates issued by such Association) and (iii) all other obligations
issued or unconditionally guaranteed as to principal and interest by an
agency or person controlled or supervised by and acting as an instru-
mentality of the United States Government pursuant to authority
granted by the Congress.

Government
Obligations.

The word "Improvements" shall mean such improvements, re-
newals and replacements of the System or any part thereof and such
extensions and additions thereto as may be necessary or desirable, in
the judgment of the Board, to keep the same in proper condition for
the safe, efficient and economic operation thereof and to integrate into
the System any unit or part thereof, and shall include such electric-
power projects as may be authorized to be acquired or constructed by
the Authority under the provisions of the Authority Act and such
improvements, renewals and replacements of such properties and the
System and such extensions and additions thereto as may be necessary
or desirable for continuous and efficient service to the public, which shall
be financed in whole or in substantial part from the proceeds of bonds

Improvements.

**Section 101**

20

issued under the provisions of the 1947 Indenture or this Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

**Investment Obligations.** The term "Investment Obligations" shall mean (i) Government Obligations, (ii) obligations of any state or territory of the United States or political subdivision thereof (other than obligations rated lower than the three highest grades by a nationally recognized rating agency) and (iii) repurchase agreements with commercial banks fully secured by Government Obligations.

**Net Revenues.** The term "Net Revenues" for any particular period shall mean the amount of the excess of the Revenues for such period over the Current Expenses for such period.

**1947 Construction Fund.** The term "1947 Construction Fund" shall mean the Puerto Rico Water Resources Authority Construction Fund, a special fund created and designated by the provisions of Section 401 of the 1947 Indenture.

**1947 Indenture.** The term "1947 Indenture" shall mean the Trust Indenture, dated as of January 1, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by Supplemental Indentures, dated January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971, together with all future amendments and all indentures supplemental thereto as therein permitted.

**1947 Indenture Bonds.** The term "1947 Indenture Bonds" shall mean the bonds issued under the 1947 Indenture.

**1947 Revenue Fund.** The term "1947 Revenue Fund" shall mean the Water Resources Authority Electric Revenue Fund, a special fund created and designated by the provisions of Section 506 of the 1947 Indenture.

**1947 Sinking Fund.** The term "1947 Sinking Fund" shall mean the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund, a special fund created and designated by the provisions of Section 507 of the 1947 Indenture.

**1947 Trustee.** The term "1947 Trustee" shall mean the trustee under the 1947 Indenture for the time being, whether original or successor.

Section 101

21

The term "Opinion of Counsel" shall mean a written opinion of <sub>Opinion of Counsel.</sub> counsel who may (except as otherwise expressly provided in this Agreement) be counsel for the Authority. Every opinion of counsel required to be filed with the Trustee in connection with an application to the Trustee to authenticate bonds under this Agreement shall contain the following statements: (i) that the Authority has the legal right and power to enter into this Agreement and has duly authorized and validly executed and delivered this Agreement and this Agreement is legally valid and binding upon the Authority and enforceable in accordance with its terms, (ii) that this Agreement creates a legally valid and effective pledge of the Net Revenues, subject only to the lien of the 1947 Indenture, and of the moneys, securities and funds held or set aside under this Agreement as security for the bonds, subject to the application thereof to the purposes and on the conditions permitted by this Agreement and specifying the place or places, if any, where filing or recording of any document is necessary in order to make such pledge effective or to continue it in effect, (iii) that the Authority has paid all municipal or governmental charges lawfully levied or assessed upon the System or any part thereof or upon any Revenues, (iv) that the issuance of the bonds then directed to be authenticated and delivered will not violate any provision of law or of the by-laws of the Authority, or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which the Authority is a party or by which it may be bound, (v) that no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the legal issue of said bonds (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the legal issue of said bonds, it shall specify and attach any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced), and (vi) that the bonds then directed to be authenticated and delivered are legally valid and binding direct obligations of the Authority, enforceable in accordance with their terms and the terms of this Agreement and have been duly and validly authorized and issued in accordance with law and this Agreement.

The term "Paying Agents" shall mean with respect to the bonds <sub>Paying Agents.</sub> of each Series the one or more banks or trust companies designated in a resolution of the Board the office or agency of the Authority where the coupon bonds and coupons may be presented for payment.

**Section 101**

22

**Principal and Interest Requirements.**

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series issued under this Agreement or the 1947 Indenture, shall mean the sum of:

(a) the amount required to pay the interest on all outstanding bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year,

(b) the amount required to pay the principal of all outstanding serial bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year, and

(c) the Amortization Requirement for the term bonds of such Series for such fiscal year.

The Principal and Interest Requirements for the bonds of any Series issued under this Agreement shall be determined, as required from time to time, by the Trustee. In computing the Principal and Interest Requirements for any fiscal year for the bonds of any Series, the Trustee shall assume that an amount of the term bonds of such Series equal to the Amortization Requirement for the term bonds of such Series for such fiscal year will be retired by purchase or redemption on July 1 in the following fiscal year.

**Redemption Account.**

The term "Redemption Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

**Renewal and Replacement Fund.**

The term "Renewal and Replacement Fund" shall mean the Water Resources Authority Renewal and Replacement Fund, a special fund created and designated by the provisions of Section 512 of the 1947 Indenture.

**Reserve Account.**

The term "Reserve Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

**Reserve Maintenance Fund.**

The term "Reserve Maintenance Fund" shall mean the Puerto Rico Water Resources Authority Reserve Maintenance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

**Revenue Fund.**

The term "Revenue Fund" shall mean the Puerto Rico Water Resources Authority Power Revenue Fund, a special fund created and designated by the provisions of Section 506 of this Agreement.

Section 101

23

The word "Revenues" shall mean all moneys received by the Authority in connection with or as a result of its ownership or operation of the System, including the income derived by the Authority from the sale of electricity generated or distributed by the System, any proceeds of use and occupancy insurance on the System or any part thereof and income from investments made under the provisions of the 1947 Indenture and this Agreement, except income from the investment of moneys in the 1947 Construction Fund, the Construction Fund and the Reserve Maintenance Fund which shall be deemed to be a part of said Funds, respectively.

*Revenues.*

The word "Secretary" shall mean the Secretary or any Assistant Secretary of the Authority, or if there is no secretary or assistant secretary, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Secretary.

*Secretary.*

The term "serial bonds" shall mean the bonds of a Series which shall be stated to mature in annual or semi-annual installments, and the term "term bonds" shall mean the bonds of a Series maturing on July 1 and designated term bonds in a resolution of the Board adopted prior to the issuance of such bonds.

*serial bonds and term bonds.*

The word "Series" shall mean either (i) the bonds issued and delivered at any one time under the provisions of Sections 208 or 209 of this Agreement or (ii) the refunding bonds issued at any one time under the provisions of the second paragraph of Section 210 of this Agreement. Bonds issued under the first paragraph of Section 210 of this Agreement to refund serial bonds of any Series shall be deemed to constitute a part of the bonds of such Series.

*Series.*

The term "Sinking Fund" shall mean the Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

*Sinking Fund.*

The word "System" shall mean all the properties presently owned and operated by the Authority as a single integrated system, together with all works and properties which may be hereafter acquired or constructed by the Authority in connection with the production, distribution or sale of electric energy and the acquisition or construction of which shall be financed in whole or in part from the proceeds of bonds issued under the provisions of the 1947 Indenture or this

*System.*

**Section 101**

24

Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

Time Deposits.

The term "Time Deposits" shall mean time deposits, certificates of deposit or similar arrangements with the Trustee, Government Development Bank for Puerto Rico or any bank or trust company which is a member of the Federal Deposit Insurance Corporation having a combined capital and surplus aggregating not less than $100,000,000.

Treasurer.

The word "Treasurer" shall mean the Treasurer or any Assistant Treasurer of the Authority, or if there is no treasurer or assistant treasurer, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Treasurer.

Trustee.

The word "Trustee" shall mean the Trustee for the time being, whether original or successor.

Miscellaneous.

SECTION 102. Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

## ARTICLE II.

### FORM, EXECUTION AND REGISTRATION OF BONDS AND CONDITIONS FOR AUTHENTICATION AND DELIVERY OF BONDS.

Limitation on issuance of bonds.

SECTION 201. No bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

Form of bonds.

SECTION 202. The definitive bonds are issuable as coupon bonds and as registered bonds without coupons. The definitive bonds issued under the provisions of this Article shall be substantially in the forms hereinabove set forth, with such appropriate variations, omis-

*see supplemental agmt (Doc 1740/87) dtd 6/1/83*

Case:17-03283-LTS Doc#:4055-1 Filed:10/17/18 Entered:10/17/18 14:35:05 Desc: Exhibit A-1 Page 36 of 50

sions and insertions as are permitted or required by this Agreement and with such additional changes as may be necessary or appropriate to conform to the provisions of the resolution or resolutions providing for the issuance of such bonds. All such bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or of any securities exchange on which the bonds may be listed or traded or any usage or requirement of law with respect thereto or as may be authorized by the Authority and approved by the Trustee.

SECTION 203. The bonds shall be dated, shall bear interest until their payment, such interest to the maturity thereof being payable semi-annually on the 1st days of January and July in each year, and shall be stated to mature (subject to the right of prior redemption), all as hereinafter provided. *Details of bonds.*

Each coupon bond shall bear interest from its date. Each registered bond without coupons shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any registered bond without coupons interest is in default, such bond shall bear interest from the date to which interest shall have been paid.

The bonds shall be signed by, or bear the facsimile signature of, the Executive Director and shall be signed by, or bear the facsimile signature of, the Secretary, and a facsimile of the corporate seal of the Authority shall be imprinted on the bonds. *Execution of bonds and coupons.*

The coupons attached to the coupon bonds shall be substantially in the form hereinabove set forth and shall bear the facsimile signature of the Executive Director.

In case any officer whose signature or a facsimile of whose signature shall appear on any bonds or coupons shall cease to be such officer before the delivery of such bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery; and also any bond may bear the facsimile signature of or may be signed by

**Section 203**

26

such persons as at the actual time of the execution of such bond shall be the proper officers to sign such bond although at the date of such bond such persons may not have been such officers.

**Payment of principal and interest.**

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of coupon bonds of each Series and the interest on all coupon bonds of such Series shall be payable at the principal offices of the Paying Agents designated for the bonds of such Series. The principal of all registered bonds without coupons shall be payable only to the registered owner or his legal representative at the principal office of the Trustee, and payment of the interest on each registered bond without coupons shall be made by the Trustee on each interest payment date to the person appearing on the registration books of the Authority hereinafter provided for as the registered owner thereof, by check mailed to such registered owner at his address as it appears on such registration books. Except as provided in Section 211 of this Agreement, payment of the principal of all bonds shall be made upon the presentation and surrender of such bonds as the same shall become due and payable. Payment of the interest on the coupon bonds shall be made upon the presentation and surrender of the coupons, if any, representing such interest as the same respectively become due and payable.

**Authentication of bonds.**

SECTION 204. Only such of the bonds as shall have endorsed thereon a certificate of authentication substantially in the form hereinabove set forth, duly executed by the Trustee, shall be entitled to any benefit or security under this Agreement. No bond and no coupon appertaining to any coupon bond shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Agreement. The Trustee's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized officer of the Trustee, but it shall not be necessary that the same officer sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time. Before authenticating or delivering any coupon bonds the Trustee shall detach and cancel all matured coupons, if any, appertaining thereto, except any coupons which represent unpaid interest.

Section 206

27

SECTION 205. Coupon bonds, upon surrender thereof at the principal office of the Trustee with all unmatured coupons and all matured coupons in default, if any, appertaining thereto, may, at the option of the holder thereof, be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, bearing interest at the same rate, and, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the coupon bonds surrendered for exchange.

*Exchange of coupon bonds for registered bonds.*

Registered bonds without coupons, upon surrender thereof at the principal office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, and in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the registered bonds without coupons surrendered for exchange.

*Exchange of registered bonds for coupon bonds or registered bonds.*

*see supplemental agmt (Doc 7740/57) dtd 8/1/83*

The Authority shall make provision for the exchange of bonds at the principal office of the Trustee.

SECTION 206. Title to any coupon bond and to any interest coupon shall pass by delivery in the same manner as a negotiable instrument payable to bearer. The Trustee as Bond Registrar shall keep books for the registration of and for the registration of transfers of bonds as provided in this Agreement. The transfer of any registered bond without coupons may be registered only upon the books kept for the registration of and registration of transfers of bonds upon surrender thereof to the Bond Registrar together with an assignment

*Negotiability of coupon bonds.*

*see supplemental agmt (Doc 7740/57) dtd 8/1/83*

*Transfer of registered bonds.*

Section 206

28

duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, or, at the option of the transferee, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate.

**Cancellation of bonds and coupons surrendered for exchange or transfer.**

In all cases in which bonds shall be exchanged or the transfer of registered bonds without coupons shall be registered hereunder, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time bonds in accordance with the provisions of this Agreement. All registered bonds without coupons surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Trustee. All coupon bonds and unmatured coupons surrendered in any such exchange or registration of transfer shall be retained by the Trustee in its custody. The Authority or the Trustee may make a charge for every such exchange or registration of transfer of bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any bondholder for the privilege of exchanging or registering the transfer of bonds under the provisions of this Agreement. Neither the Authority nor the Trustee shall be required to make any such exchange or registration of transfer of bonds during the fifteen (15) days immediately preceding an interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption, or after such bond or any portion thereof has been selected for redemption.

**Ownership of registered bonds.**

Section 207. As to any registered bond without coupons, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and the interest on any such bond shall be made only to the registered owner thereof or

Section 208

29

his legal representative. All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond including the interest thereon to the extent of the sum or sums so paid. The Authority, the Trustee, the Bond Registrar and the Paying Agents may deem and treat the bearer of any coupon bond and the bearer of any coupon appertaining to any coupon bond as the absolute owner of such bond or coupon, as the case may be, whether such bond or coupon shall be overdue or not, for the purpose of receiving payment thereof and for all other purposes whatsoever, and neither the Authority, the Trustee, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary.

*Ownership of coupon bonds.*

Any person in possession of any coupon bond or of any coupon appertaining to any coupon bond is hereby authorized to represent himself as the absolute owner of such bond or coupon, as the case may be, and is hereby granted power to transfer absolute title thereto by delivery thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor or any person in the chain of title and before the maturity of such bond. Any registered owner of any registered bond without coupons is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such bond. Every prior holder or owner of any bond or of any coupon appertaining to any coupon bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby.

*Transfer of title of bonds.*

SECTION 208. Revenue bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time for the purpose of paying all or any part of the cost of any Improvements, including the repayment of moneys advanced for paying such cost and, if deemed necessary by the Board, the payment of the interest to accrue on such moneys advanced to the date of such payment and for providing moneys for deposit to the credit of the Reserve Account.

*Issuance of revenue bonds to pay cost of Improvements.*
*see supplemental agmt (Doc 4-10/57) at 181/183*

Section **208**

30

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, describing in brief and general terms the Improvements which are to be acquired or constructed or which were acquired or constructed from any moneys to be repaid from the proceeds of such bonds, and specifying the amount, if any, of the proceeds of such bonds to be deposited to the credit of the Reserve Account. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Water Resources Authority Power Revenue Bonds, Series .........." (inserting a year or a letter to identify the particular Series), shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

**Conditions of authentication and delivery.**

Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

Section 208

31

(i) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement,

(iii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi) the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii) the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause;

(d) if any of the 1947 Indenture Bonds are outstanding, a certificate, signed by the Executive Director and approved by the Consulting Engineers, to the effect that the sum determined by the Authority, with the approval of the Consulting Engineers, as the proper amount to be transferred each month from the 1947 Revenue Fund to the credit of the Renewal and Replacement Fund is not less than one-twelfth (1/12) of the maximum Principal and Interest Requirements for any fiscal year

**Section 208**

32

thereafter to and including the fiscal year in which the last maturity of any outstanding 1947 Indenture Bonds occurs on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder; and

(e) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

Disposition of bond proceeds.

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds; provided, however, that any balance of such proceeds remaining after providing for (i) any repayment of moneys advanced to the Authority, including any payment of interest accrued on such moneys advanced to the date of such payment, (ii) any deposit to the credit of the Reserve Account, and (iii) any deposit to the Bond Service Account on account of interest on such bonds in accordance with clause (f) of Section 403 of this Agreement and (iv) any payment of expenses incident to the financing shall be paid to the Authority for deposit to the credit of the Construction Fund.

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

Issuance of revenue bonds for any proper corporate purpose.

*see doc 7740/57 for supplemental agr.*

SECTION 209. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, in addition to any other bonds which may be issued under the provisions of this Article, revenue bonds of the Authority may be issued under and secured by this Agreement,

Section 209

33

subject to the conditions hereinafter provided in this Section, from time to time for any proper corporate purpose of the Authority (other than for the purpose of refunding outstanding bonds of the Authority or for the purpose of providing funds to pay any part of the cost of Improvements or for repaying advances for such purpose).

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof and setting forth the purpose for which such bonds are to be issued. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ........." (inserting a year or a letter to identify the particular Series), shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

*Conditions of authentication and delivery.*

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned

Section 209

34

therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

(i) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement,

(iii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi) the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii) the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

Section 210

35

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds.

*Disposition of bond proceeds.*

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

SECTION 210. If at any time the Board shall determine that the moneys in the Sinking Fund available for such purpose will not be sufficient for paying at their maturity the serial bonds of any Series which will mature within one year thereafter, revenue refunding bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, for the purpose of providing funds for refunding such bonds and, if deemed necessary by the Board, for paying the interest to accrue thereon to their maturity and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, and describing the bonds to be refunded. Such revenue refunding bonds shall be deemed to constitute a part of the term bonds, if any, of such Series and shall mature at the same time and shall be subject to redemption at the same times and prices as such term bonds or, in case all the outstanding bonds of such Series shall be serial bonds, such revenue refunding bonds shall mature on the 1st day of July in a year not earlier than one

*Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement.*

*see supplemental asml (Doc 7740/57) dated 8/1/83*

Section 210

36

year after the last maturing installment of the bonds of such Series and not later than fifty (50) years from their date, shall be deemed to be term bonds of such Series and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), all as may be provided by the resolution or resolutions authorizing the issuance of such bonds. Such revenue refunding bonds shall be designated, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.

Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to their maturity or maturities all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series, including the payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed. Such revenue refunding bonds shall be designated, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

Section 210

37

Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

<div style="float:right">Conditions of<br>authentication and<br>delivery.</div>

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution adopted by the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series at or prior to their maturity or maturities;

(i) a certificate, signed by the Executive Director, setting forth (A) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, and (B) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds to be outstanding under this Agreement after the issuance of such revenue refunding bonds and the redemption of the bonds to be refunded, and

(ii) such documents as shall be required by the Trustee to show that provision has been made in accordance with the provisions of the 1947 Indenture or this Agreement, as the case may be, for the redemption of all of the bonds to be refunded; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolu-

**Section 210**

38

tions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolution as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless

(I) the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds, together with any moneys to be withdrawn from the Sinking Fund by the Trustee, and any other moneys which have been made available to the Trustee, for such purpose as hereinafter provided, or the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will become due and payable on or prior to the date of their payment or redemption, and the financing costs in connection with such refunding, and

(II) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series prior to their maturity or maturities, either (1) the amount shown in item (B) of the certificate mentioned in subclause (i) of clause (c) of this Section shall be less than the amount shown in item (A) of said certificate or (2) there shall be filed with the Trustee a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth

(A) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(B) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the

48

39

rate schedule in effect on the date of the issuance of such
bonds and any rate schedule the Authority has covenanted to
put in effect during such five (5) fiscal years, and

(C) his estimate of the average annual Net Revenues for
such five (5) fiscal years, taking into account the rate sched-
ules referred to in item (B) above,

and stating that each of the amounts shown in items (A) and (C)
above is not less than one hundred twenty per centum (120%)
of each of the amounts shown in items (A) and (B) of the certi-
ficate mentioned in subclause (i) of clause (c) of this Section.

The proceeds of such revenue refunding bonds shall, to the extent
practicable, be invested and reinvested by the Trustee, with the ap-
proval of the Executive Director, in Government Obligations or in
Time Deposits, secured in the manner set forth in Section 601 of this
Agreement, and the moneys so invested shall be available for use when
required. The income derived from such investments shall be added
to such proceeds and applied in accordance with the provisions of this
Section 210.

**Disposition of bond proceeds.**

Simultaneously with the delivery of such revenue refunding bonds
the Trustee shall withdraw from the Bond Service Account and the
Redemption Account in the Sinking Fund an amount equal to the sum
of the amounts deposited to the credit of such Accounts under the pro-
visions of Section 507 of this Agreement on account of the interest
which is payable on the bonds to be refunded on the next interest
payment date of such bonds and on account of the next maturing in-
stallment of principal of or the current Amortization Requirement for
the bonds to be refunded, but no such withdrawal shall be made on
account of any deposits to the credit of the Reserve Account in the
Sinking Fund. The amount so withdrawn, the proceeds (excluding
accrued interest but including any premium) of such revenue refunding
bonds and any other moneys which have been made available to the
Trustee for such purpose, shall be held by the Trustee or deposited
with the Paying Agents to be held in trust for the sole and exclusive
purpose of paying such principal, redemption premium and interest;
provided, however, that such portion of the proceeds of such revenue
refunding bonds as is specified by the Executive Director in a certifi-
cate filed with the Trustee shall be paid to the Authority to be used
for the payment of expenses incident to the financing. Any part of
the proceeds of such revenue refunding bonds which are not needed for
the purpose of paying the principal of and the redemption premium,