Case:17-03283-LTS   Doc#:4055-3   Filed:10/17/18   Entered:10/17/18 14:35:05   Desc:
Exhibit A-3   Page 1 of 50

Section 1102

Whenever, at any time within one year after the date of the first publication of such notice, the Authority shall deliver to the Trustee an instrument or instruments in writing purporting to be executed by the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds then outstanding, which instrument or instruments shall refer to the proposed supplemental agreement described in such notice and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof referred to in such notice, thereupon, but not otherwise, the Trustee may execute such supplemental agreement in substantially such form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

**Consent of holders of 60% of bonds binds all.**

If the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds outstanding at the time of the execution of such supplemental agreement shall have consented to and approved the execution thereof as herein provided, no holder of any bond shall have any right to object to the execution of such supplemental agreement, or to object to any of the terms and provisions contained therein or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Authority from executing the same or from taking any action pursuant to the provisions thereof.

Upon the execution of any supplemental agreement pursuant to the provisions of this Section, this Agreement shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Agreement of the Authority, the Trustee and all holders of bonds then outstanding shall thereafter be determined, exercised and enforced in all respects under the provisions of this Agreement as so modified and amended.

**Trustee joining in supplemental agreement.**

**Supplemental agreements part of this Agreement.**

SECTION 1103. The Trustee is authorized to join with the Authority in the execution of any such supplemental agreement and to make the further agreements and stipulations which may be contained therein. Any supplemental agreement executed in accordance with the provisions of this Article shall thereafter form a part of this Agreement, and all of the terms and conditions contained in any such supplemental agreement as to any provision authorized to be contained therein shall be and shall be deemed to be part of the terms and

conditions of this Agreement for any and all purposes. In case of the execution and delivery of any supplemental agreement, express reference may be made thereto in the text of any bonds issued thereafter, if deemed necessary or desirable by the Trustee.

SECTION 1104. In each and every case provided for in this Article, the Trustee shall be entitled to exercise its discretion in determining whether or not any proposed supplemental agreement, or any term or provision therein contained, is desirable, having in view the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders, and the rights, obligations and interests of the Trustee, and the Trustee shall not be under any responsibility or liability to the Authority or to any bondholder or to anyone whomsoever for its refusal in good faith to enter into any such supplemental agreement if such agreement is deemed by it to be contrary to the provisions of this Article. The Trustee shall be entitled to receive, and shall be fully protected in relying upon, the opinion of any counsel approved by it, who may be counsel for the Authority, as evidence that any such proposed supplemental agreement does or does not comply with the provisions of this Agreement, and that it is or is not proper for it, under the provisions of this Article, to join in the execution of such supplemental agreement.

*Responsibilities of Trustee under this Article.*

*Trustee may rely upon opinion of counsel.*

## ARTICLE XII.

### DEFEASANCE.

SECTION 1201. If, when the bonds secured hereby shall have become due and payable in accordance with their terms or otherwise as provided in this Agreement or shall have been duly called for redemption or irrevocable instructions to call the bonds for redemption shall have been given by the Authority to the Trustee, the whole amount of the principal and the interest and the premium, if any, so due and payable upon all of the bonds and coupons then outstanding shall be paid or sufficient moneys, or Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement, the principal of and the interest on which when due will provide sufficient moneys, shall be held by the Trustee or the Paying Agents for such purpose under the provisions of this Agreement, and provision shall also be made for paying all other sums payable

*Release of Agreement.*

Section 1201

92

hereunder by the Authority, then and in that case the right, title and interest of the Trustee hereunder shall thereupon cease, determine and become void, and the Trustee in such case, on demand of the Authority, shall release this Agreement and shall execute such documents to evidence such release as may be reasonably required by the Authority, and shall turn over to the Authority or to such officer, board or body as may then be entitled by law to receive the same any surplus in any account in the Sinking Fund and all balances remaining in any other funds or accounts other than moneys held for the redemption or payment of bonds or coupons; otherwise this Agreement shall be, continue and remain in full force and effect; provided, however, that in the event Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement shall be held by the Trustee as hereinabove provided, (i) in addition to the requirements set forth in Article III of this Agreement, the Trustee shall within thirty (30) days after such obligations shall have been deposited with it cause a notice signed by the Trustee to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, setting forth (a) the date designated for the redemption of the bonds, (b) a description of the Government Obligations so held by it and (c) that this Agreement has been released in accordance with the provisions of this Section, and (ii) the Trustee shall nevertheless retain such rights, powers and privileges under this Agreement, as may be necessary and convenient in respect of the bonds for the payment of the principal, interest and any premium for which such Government Obligations have been deposited or such Time Deposits have been made.

## ARTICLE XIII.

### MISCELLANEOUS PROVISIONS.

**Successorship of Authority.**

SECTION 1301. All covenants, stipulations, obligations and agreements of the Authority contained in this Agreement shall be deemed to be covenants, stipulations, obligations and agreements of the Authority to the full extent authorized or permitted by the laws of the Commonwealth of Puerto Rico, and all such covenants, stipulations, obligations and agreements shall be binding upon the successor

**Section 1303**

93

or successors thereof from time to time and upon any officer, board, body or commission to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

No covenant, stipulation, obligation or agreement herein contained shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member, agent or employee of the Authority in his individual capacity, and neither the members of the Authority or of any other agency of the Commonwealth of Puerto Rico nor any officer thereof or of the Authority, present or future, executing the bonds shall be liable personally on the bonds or be subject to any personal liability or responsibility by reason of the issuance thereof.

The laws of the Commonwealth of Puerto Rico shall govern the construction of this Agreement, except that the rights, limitations of rights, immunities, duties and obligations of the Trustee shall be governed by the laws of the State of New York.

SECTION 1302. Any notice, demand, direction, request or other **Manner of giving notice, etc.** instrument authorized or required by this Agreement to be given to or filed with the Authority or the Trustee shall be deemed to have been sufficiently given or filed for all purposes of this Agreement if and when sent by first class mail:

to the Authority, if addressed to the Executive Director, Puerto Rico Water Resources Authority, San Juan, Puerto Rico;

to the Trustee, if addressed to it at its Corporate Trust Office, or to any successor Trustee, if addressed to it at its principal office.

SECTION 1303. Any bank or trust company with or into which **Successorship of Paying Agents.** any Paying Agent may be merged, converted or consolidated, or to which the assets and business of such Paying Agent may be sold, shall be deemed the successor of such Paying Agent for the purposes of this Agreement. If the position of any Paying Agent shall become vacant for any reason, the Authority shall, within thirty (30) days thereafter, appoint a bank or trust company located in the same city as Paying Agent to fill such vacancy; provided, however, that if the Authority shall fail to appoint such Paying Agent within such period, the Trustee shall make such appointment.

Section 1304

94

**Parties and bondholders alone have rights under Agreement.**

SECTION 1304. Except as herein otherwise expressly provided, nothing in this Agreement expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto and the holders of the bonds issued under the provisions of this Agreement any right, remedy or claim, legal or equitable, under or by reason of this Agreement or any provisions hereof, this Agreement and all its provisions being intended to be and being for the sole and exclusive benefit of the parties hereto and the holders from time to time of the bonds issued hereunder.

**Effect of partial invalidity.**

SECTION 1305. In case any one or more of the provisions of this Agreement or of the bonds or coupons issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or of the bonds or coupons, but this Agreement and the bonds and coupons shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this Agreement shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

**Substitute publication.**

SECTION 1306. If, because of the temporary or permanent suspension of publication of any newspaper or financial journal or for any other reason, the Trustee or the Authority shall be unable to publish in a newspaper or financial journal any notice required to be published by the provisions of this Agreement, the Trustee or the Authority, as the case may be, shall give such notice in such other manner as in its judgment shall most effectively approximate such publication thereof, and the giving of such notice in such manner shall for all purposes of this Agreement be deemed to be compliance with the requirement for the publication thereof.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to bondholders of record when such notice is required to be given pursuant to any provision of this Agreement, any manner of giving notice as shall be satisfactory to the Trustee and the Authority shall be deemed to be a sufficient giving of such notice.

Section 1309

95

SECTION 1307. Nothing in this Agreement expressed or implied shall be construed as preventing the Authority, if then authorized or permitted by law, from financing the acquisition or construction of any land, building, structure or other facility by the issuance of obligations which are not issued under or secured by the provisions of this Agreement or the 1947 Indenture or by entering into any financing agreement or agreements relating to any such facility pursuant to which the Authority has the right to the use, occupancy and possession of such facility and is required to make periodic payments in an aggregate amount substantially equal to the cost of such facility and reasonable financing charges, regardless of the disposition of title to such facility.

*Other funds not prohibited.*

SECTION 1308. Any headings preceding the texts of the several articles hereof, and any table of contents appended to copies hereof, shall be solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

*Headings, etc. not part of Agreement.*

SECTION 1309. This Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.

*Multiple counterparts.*

96

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary and First National City Bank has caused this Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Associate Trust Officers, all as of the day and year first above written.

Execution by
Authority.

PUERTO RICO WATER RESOURCES AUTHORITY

By /s/  JULIO NEGRONI
*Executive Director*

[SEAL]

Attest:

/s/  R. BETANCOURT
*Secretary*

Execution by
Trustee.

FIRST NATIONAL CITY BANK

By /s/  D. C. MCNEILL
*Vice President*

[SEAL]

Attest:

/s/  J. A. OLIVE
*Associate Trust Officer*

97

STATE OF NEW YORK    }
COUNTY OF NEW YORK  }  ss.

On the 7th day of January, 1974, before me personally came JULIO NEGRONI, to me known, who, being by me duly sworn, did depose and say that he resides at 269 Georgetown St., San Juan, Puerto Rico; that he is the Executive Director of Puerto Rico Water Resources Authority; and that he signed his name to the above instrument by order of the Authority, the Authority being the public corporation described in and which executed the above instrument.

*Acknowledgment by Authority.*

/s/  GUNDARS APERANS
*Notary Public*

GUNDARS APERANS
Notary Public, State of New York
No. 31-5091740
Qualified in New York County
Commission Expires March 30, 1974

[SEAL]

STATE OF NEW YORK    }
COUNTY OF NEW YORK  }  ss.

On the 7th day of January, 1974, before me personally came D. C. McNEILL, to me known, who, being by me duly sworn, did depose and say that he resides at 33 Ferris Hill Rd., New Canaan, Conn.; that he is a Vice President of First National City Bank, the banking association described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of said banking association; that it was so affixed by authority of said banking association; and that he signed his name thereto by like authority.

*Acknowledgment by Trustee.*

/s/  GUNDARS APERANS
*Notary Public*

GUNDARS APERANS
Notary Public, State of New York
No. 31-5091740
Qualified in New York County
Commission Expires March 30, 1974

[SEAL]

SUPPLEMENTAL AGREEMENT

THIS SUPPLEMENTAL AGREEMENT, dated for convenience
of reference as of the 1st day of August, 1983, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico
(formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the
United States of America (formerly First National City Bank) and
having its principal office in the Borough of Manhattan, City and
State of New York, which is authorized under such laws to exer-
cise corporate trust powers and is subject to examination by
federal authority, Trustee under the Trust Agreement hereinafter
referred to (hereinafter sometimes called the "Trustee"),

W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (herein-
after sometimes called the "Authority") and the Trustee have
heretofore caused to be executed and delivered a Trust Agreement
dated as of January 1, 1974 (the "Agreement"), for the purpose of
fixing and declaring the terms and conditions upon which revenue
bonds are to be issued, authenticated, delivered, secured and
accepted by all persons who shall from time to time be or become
holders thereof, and in order to secure the payment of all the
bonds at any time issued and outstanding thereunder, and the
interest thereon, according to their tenor, purport and effect;
and

WHEREAS, Section 1101 of the Agreement provides that
the Authority and the Trustee may, from time to time and at any
time, enter into such agreements supplemental thereto as shall
not be inconsistent with the terms and provisions thereof (which
supplemental agreements shall thereafter form a part of the Agree-
ment) to cure any ambiguity, to make any provision with respect
to matters or questions arising under the Agreement which shall
not be inconsistent with the provisions of the Agreement, pro-
vided such action shall not adversely affect the interest of the
bondholders, or to grant to or confer upon the Trustee for the
benefit of the bondholders any additional rights, remedies,
powers, authority or security that may lawfully be granted or
conferred upon the Trustee; and

WHEREAS, the Authority has determined that it is desirable to modify certain provisions of the Agreement to provide for the issuance of bonds in the form of registered bonds without coupons only; and

WHEREAS, the Trustee has received an opinion of counsel that it is proper for the Trustee to join in the execution hereof; and

WHEREAS, the execution and delivery of this Supplemental Agreement have been duly authorized by resolution of the Authority and the Authority has requested the Trustee to join with it in the execution of this Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended in the following respects:

A. The first sentence of Section 202 is changed to read as follows:

"Section 202. The definitive bonds are issuable as coupon bonds or as registered bonds without coupons or both."

B. The second paragraph of Section 205 is changed to to read as follows:

"Registered bonds without coupons, upon surrender thereof at the principal office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative

-2-

in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series (if authorized for such Series) and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, and in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the registered bonds without coupons surrendered for exchange."

C.  The last sentence of the first paragraph of Section 206 is changed to read as follows:

"Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, or, at the option of the transferee and if coupon bonds are authorized for the same Series as such bond, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate."

D.  The second sentence of the second paragraph of Section 208 is changed to read as follows:

"The bonds of each Series issued under the provisions of this Section shall be designated 'Puerto Rico Electric Power Authority Power Revenue Bonds, Series ....' (inserting a year or a letter to identify the particular Series), shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and the term bonds of

-3-

such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds."

E.   The second sentence of the second paragraph of Section 209 is changed to read as follows:

"The bonds of each Series issued under the provisions of this Section shall be designated 'Puerto Rico Electric Power Authority Power Revenue Bonds, Series ....' (inserting a year or a letter to identify the particular Series), shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds."

F.   The last sentence of the first paragraph of Section 210 is changed to read as follows:

"Such revenue refunding bonds shall be designated, shall be issued in such form, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds."

G.   The third sentence of the second paragraph of Section 210 is changed to read as follows:

"Such revenue refunding bonds shall be designated, shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions

-4-

of Article III of this Agreement), shall be numbered, shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds."

H.  The second paragraph of Section 301 is changed to read as follows:

"If less than all of the bonds of any one maturity of a Series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redemmed from such Series and maturity shall be selected by the Trustee in such manner as the Trustee in its discretion may determine; provided, however, that the portion of any registered bond without coupons to be redeemed shall be in the principal amount equal to the lowest denomination authorized for such Series or some multiple thereof, and that, in selecting bonds for redemption, the Trustee shall treat each registered bond without coupons as representing that number of bonds which is obtained by dividing the principal amount of such registered bond without coupons by the amount of such lowest authorized denomination."

I.  After the first sentence of Section 302, the following is inserted:

"If all the bonds to be redeemed are issuable only as registered bonds without coupons, such notice of redemption shall be given by mail and the Trustee shall not be required to publish such notice of redemption."

J.  In Section 303 the word "published" is changed to "given".

K.  Section 305 is changed to read as follows:

"Section 305.  In case part but not all of an outstanding registered bond without coupons shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the registered bond without coupons so surrendered, either coupon bonds (if authorized for the

-5-

Series of such registered bond) or a registered bond or bonds without coupons, at the option of such registered owner or his attorney or legal representative, of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement."

L. The last paragraph of Section 701 is changed to read as follows:

"The Authority further covenants that so long as any bonds issuable as coupon bonds shall be outstanding it will cause offices or agencies where the coupon bonds and coupons may be presented for payment to be maintained in the Borough of Manhattan, City and State of New York."

2. The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary and Citibank, N.A. has caused this Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____
        Executive Director

(SEAL)

Attest:

_____
        Secretary

CITIBANK, N.A., as Trustee

By _____
        Assistant Vice President

(SEAL)

Attest:

_____
        Trust Officer

-6-

114

COMMONWEALTH OF PUERTO RICO )
                            ) ss.:
MUNICIPALITY OF SAN JUAN    )


On the 21st  day of September, in the year 1983, before
me personally came Wilfredo Marcial González to me known, who, being
by me duly sworn, did depose and say that he resides in the Munic-
ipality of  San Juan  , Puerto Rico; that he is the Executive Di-
rector of Puerto Rico Electric Power Authority, the body corporate
described in and which executed the above instrument; that he
knows the seal thereof; that the seal affixed to said instrument
is the corporate seal of Puerto Rico Electric Power Authority;
that it was so affixed by order of the Governing Board of Puerto
Rico Electric Power Authority; and that he signed his name there-
to by like order.

                                    José F. Irizarry González
                                         NOTARY PUBLIC
Affidavit #12,632 (copy)

(SEAL)


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )


On the  28th  day of September, in the year 1983, before
me personally came  J. A. OLIVE  , to me known, who, being by
me duly sworn, did depose and say that he resides at _____
___Hicksville, N.Y._____; that he is an Assistant
Vice President of Citibank, N.A., the banking corporation de-
scribed in and which executed the above instrument; that he knows
the seal of said corporation; that the seal affixed to said
instrument is the corporate seal of said corporation; that it was
so affixed by authority of the Board of Directors of said corpora-
tion; and that he signed his name thereto by like authority.

                                    Patricia C. Tampol

My commission expires _____

                          PATRICIA C. TAMPOL
                     Notary Public, State of New York
                            No. 01TA4659889
                          Qualified In Kings County
                     Certificate Filed In New York County
                       Term Expires March 30, 1985

(SEAL)

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

## CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO SECOND SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Second Supplemental Agreement, dated as of February 1, 1988, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Second Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 17th day of February, 1988.

_____
Secretary
Puerto Rico Electric Power Authority

confidential
Clark & Weinstock
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

confidential
Clark Wright
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

## SECOND SUPPLEMENTAL AGREEMENT

THIS SECOND SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of February, 1988, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to supplement the Agreement so as (1) to provide the Authority with the ability to utilize and take advantage of new financing techniques which are from time to time developed and to provide the Authority with the ability to issue different types of bonds, as may be marketable from time to time, including, without limitation, variable rate bonds, put bonds, capital appreciation bonds, extendible maturity bonds and other types of bonds which may from time to time be created, subject to any limitations under the laws of Puerto Rico, and, in this regard, to supplement and amend the definition of Principal and Interest Requirements, provisions for interest payment periods, provisions for additional parity bonds, the flow of monies from the Bond Service Account and Redemption Account established under the Agreement, the events of default and the provisions for

confidential
Clark Wright
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

defeasance of bonds; and (2) to clarify the provisions for the advance refunding of bonds and issuance of revenue refunding bonds, and in this regard, to provide for the funding of a portion of the Reserve Account established under the Agreement with proceeds of revenue refunding bonds; and

WHEREAS, the Trustee has received an opinion of counsel that this Second Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Second Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Second Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Second Supplemental Agreement to be published and mailed as required by the Agreement, and the holders of at least sixty per cent (60%) in aggregate principal amount of the outstanding bonds have specifically consented to and approved the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Second Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Second Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SECOND SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Second Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended and supplemented in the following respects:

- 2 -

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

A.    Section 101 is hereby supplemented by the addition of a definition of "Accreted Value" before the definition of "Agreement ", as follows:

The term "Accreted Value" shall mean with respect to any Capital Appreciation Bonds (i) as of any Valuation Date, the amount set forth for such date in the resolution authorizing such Capital Appreciation Bonds and (ii) as of any date other than a Valuation Date, the sum of (a) the Accreted Value on the preceding Valuation Date and (b) the product of (1) a fraction, the numerator of which is the actual number of days having elapsed from the preceding Valuation Date and the denominator of which is the actual number of days from such preceding Valuation Date to the next succeeding Valuation Date and (2) the difference between the Accreted Values for such Valuation Dates.

B.    Section 101 is hereby supplemented by the addition of a definition of "Capital Appreciation Bonds" after the definition of "bonds", as follows:

The term "Capital Appreciation Bonds" shall mean any bonds hereafter issued as to which interest is payable only at the maturity or prior redemption of such bonds.  For the purposes of (i) receiving payment of the redemption price if a Capital Appreciation Bond is redeemed prior to maturity to the extent provided in the resolution authorizing the Capital Appreciation Bonds, or (ii) receiving payment of a Capital Appreciation Bond if the principal of all bonds is declared immediately due and payable following an event of default as provided in Section 802 of this Agreement or (iii) computing the principal amount of bonds held by the registered owner of a Capital Appreciation Bond in giving to the Authority or the Trustee any notice, consent, request, or demand pursuant to this Agreement for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value.  In the case of Capital Appreciation Bonds that are convertible to bonds with interest payable prior to maturity or prior redemption of such bonds, the term "Capital Appreciation Bonds" shall be limited to the period prior to such conversion, and after such conversion, the bonds shall be viewed as any other bonds of the same type for purposes of this Agreement.

C.    Section 101 is hereby supplemented by the addition of a definition of "Designated Maturity Bonds" before the definition of "Executive Director", as follows:

The term "Designated Maturity Bonds" shall mean the indebtedness incurred by the Authority under the terms of a separate trust agreement or resolution, which indebtedness

- 3 -

confidential
Clark Whitmore
119
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

3rd Partial
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

has a maturity of at least ten (10) years and is secured, as
to the unamortized principal thereof, on a subordinate basis
to the bonds and for which (i) no amortization of principal
has been established or (ii) the aggregate amount of the
amortized principal that has been established is less than
the principal amount of the indebtedness; provided that
interest on said indebtedness and any amortized principal of
said indebtedness may be payable on a parity, respectively,
with interest on bonds and Amortization Requirements on term
bonds, in which case said interest and amortized principal
shall be included in the calculation of Principal and
Interest Requirements on bonds for purposes of this Agree-
ment and shall otherwise be deemed to be, and be payable as,
interest and Amortization Requirements on bonds for purposes
of this Agreement.

D. Section 101 is hereby supplemented by the addi-
tion of a definition of "Extendible Maturity Bonds" before the
definition of "fiscal year," as follows:

The term "Extendible Maturity Bonds" shall mean bonds
the maturities of which, by their terms, may be extended by
and at the option of the bondholder or the Authority.

E. The definition of "Government Obligations" in
Section 101 is hereby supplemented by the addition of the clause
"including securities evidencing ownership interests in such
obligations or in specified portions thereof (which may consist
of specific portions of the principal of or interest in such
obligations)" after the words "United States Government," in the
third line.

F. Section 101 is hereby supplemented by the addi-
tion of a definition of "Prerefunded Municipals" before the defi-
nition of "Principal and Interest Requirements," as follows:

The term "Prerefunded Municipals" shall mean any bonds
or other obligations of any state of the United States of
America or Puerto Rico or of any agency, instrumentality or
local governmental unit of any such state or Puerto Rico (a)
which are (x) not callable prior to maturity or (y) as to
which irrevocable instructions have been given to the
trustee of such bonds or other obligations by the obligor to
give due notice of redemption and to call such bonds or
other obligations for redemption on the date or dates speci-
fied in such instructions, (b) which are secured as to prin-
cipal, redemption premium, if any, and interest by a fund
consisting only of cash or Government Obligations or Time
Deposits, secured in the manner set forth in Section 601 of
this Agreement, which fund may be applied only to the pay-
ment of such principal of and interest and redemption pre-

- 4 -

confidential
Clark & Weinstock
120
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

mium, if any, on such bonds or other obligations on the
maturity date or dates thereof or the specified redemption
date or dates pursuant to such irrevocable instructions, as
appropriate, and (c) as to which the principal of and
interest on the Government Obligations or Time Deposits
secured in the manner set forth in Section 601 of this
Agreement, which have been deposited in such fund, along
with any cash on deposit in such fund are sufficient to pay
principal of and interest and redemption premium, if any, on
the bonds or other obligations on the maturity date or dates
thereof or on the redemption date or dates specified in the
irrevocable instructions referred to in clause (a) of this
paragraph, as appropriate.

        G.    The   definition   of   "Principal   and   Interest
Requirements" in Section 101 is hereby supplemented by the addi-
tion of three paragraphs at the end thereof to read, as follows:

        "For purposes of determining the aggregate Principal
and Interest Requirements in the covenant as to rates con-
tained in Section 502, the maximum Principal and Interest
Requirements for purposes of Section 704 and the maximum
aggregate Principal and Interest Requirements for purposes
of Section 712 of this Agreement, the interest rate on Vari-
able Rate Bonds shall be assumed to be one hundred ten per-
cent (110%) of the greater of (i) the average interest rate
on such Variable Rate Bonds during the twelve months ending
with the month preceding the date of calculation; or such
shorter period that such Variable Rate Bonds shall have been
outstanding under this Agreement, or (ii) the rate of inter-
est on such Variable Rate Bonds on the date of calcula-
tion.    For purposes of determining the maximum aggregate
Principal and Interest Requirements and the maximum Princi-
pal and Interest Requirements for purposes of Sections 208,
209 and 210 of this Agreement, the interest rate on Variable
Rate Bonds outstanding or proposed to be issued on the date
of calculation shall be determined in accordance with the
formula in the previous sentence.    If Variable Rate Bonds
are payable at the option of the Bondholder and the source
for said payment is a credit or liquidity facility, the
"put" date or dates shall be ignored and the stated dates
for Amortization Requirements and principal payments thereof
shall be used for purposes of this calculation.

        For purposes of determining the above requirements in
the case of Put Bonds, the "put" dates or dates shall be
ignored if the source for payment of said put is a credit or
liquidity facility and the stated dates for Amortization
Requirements and principal payments shall be used.    For
purposes of determining the above requirements in the case
of Extendible Maturity Bonds, the bonds shall be deemed to

- 5 -

confidential
Clark & Weinstock
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

mature on the later of the stated maturity date or the date
to which such stated maturity date has been extended. For
purposes of determining the above requirements in the case
of Capital Appreciation Bonds, the principal and interest
portions of the Accreted Value of Capital Appreciation Bonds
becoming due at maturity or by virtue of an Amortization
Requirement shall be included in the calculations of accrued
and unpaid interest and principal requirements in such man-
ner and during such period of time as is specified in the
resolution authorizing such Capital Appreciation Bonds.

Principal and Interest Requirements on bonds shall be
deemed to include the amount required to pay interest on
outstanding Designated Maturity Bonds and any amortized
principal of said Designated Maturity Bonds for any fiscal
year, if said interest and amortized principal are payable,
under the trust agreement or resolution providing for said
Designated Maturity Bonds, on a parity with interest and
Amortization Requirements on bonds.

H.    Section 101 is hereby supplemented by the addi-
tion of a definition of "Put Bonds" before the definition of
"Redemption Account," as follows:

The term "Put Bonds" shall mean bonds, other than
Variable Rate Bonds, which by their terms may be tendered by
and at the option of the holder thereof for payment prior to
the stated maturity thereof.

I.    The definition of "serial bonds" in Section 101
is hereby supplemented by the addition of the clause "or bonds
which are otherwise designated serial bonds in a resolution of
the Board adopted prior to the issuance of such bonds" after the
word "installments" in the second line.

J.    Section 101 is hereby supplemented by the addi-
tion of a definition of "Valuation Date" after the definition of
"Trustee", as follows:

The term "Valuation Date" shall mean with respect to
any Capital Appreciation Bonds the date or dates set forth
in the resolution authorizing such bonds on which Accreted
Values are assigned to the Capital Appreciation Bonds.

K.    Section 101 is hereby supplemented by the addi-
tion of a definition of "Variable Rate Bonds" after the defini-
tion of "Valuation Date", as follows:

The term "Variable Rate Bonds" shall mean bonds issued
with a variable, adjustable, convertible or similar interest
rate which is not fixed in percentage at the date of issue

- 6 -

confidential
Clark & Weinstock
122
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Maslon EdeRoansBindhan & Brand
Aug 03, 2017 16:38

for the term thereof, and which may or may not be convertible to a fixed interest rate for the remainder of their term.

L.     Section 202 is supplemented by the addition of the following sentence:

"The form of bonds may be changed as specified in said resolution or resolutions to reflect appropriate provisions for the issuance of bonds with interest payable other than semi-annually, and may reflect, without limitation, provisions for Capital Appreciation Bonds, Variable Rate Bonds, Put Bonds, Extendible Maturity Bonds and other types of bonds, subject to any limitations under the laws of Puerto Rico at the time of the issuance of the particular bonds.

M.     The first paragraph of Section 203 is hereby supplemented by the addition of a last sentence as follows:

"Notwithstanding the previous sentence, bonds may bear interest payable other than semi-annually, as may be provided by the resolution or resolutions authorizing the issuance of particular bonds, and bonds may include, without limitation, Capital Appreciation Bonds, Variable Rate Bonds, Put Bonds, Extendible Maturity Bonds and other types of bonds, subject to any limitations under the laws of Puerto Rico at the time of the issuance of the particular bonds.

N.     Section 208 is hereby supplemented by the addition of a paragraph to be included after the second paragraph in said Section, as follows:

"Prior to the issuance of Variable Rate Bonds, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds.  The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent.  The designated agent for the Authority, in accordance with the terms of a remarketing or replacement agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in the agreement.  If the Variable Rate Bonds shall not be resold or redelivered within in a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial

- 7 -

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

or lending institutions for payment of interest and princi-
pal for a particular series of Variable Rate Bonds to which
such credit or liquidity facility shall pertain.  The par-
ticular form or forms of such demand provisions, the period
or periods for payment of principal and interest after
delivery of notice, the appointment of the agent for the
Authority, the terms and provisions for the remarketing or
replacement agreement, and the terms and provisions of the
credit or liquidity facility, including the terms of any
lien on Revenues in connection with the credit or liquidity
facility not inconsistent with Section 712 hereof, shall be
as designated by a resolution of the Board pertaining to the
Variable Rate Bonds to which such terms and provisions are
applicable prior to the issuance thereof.  Prior to the
issuance of Put Bonds, the Board shall adopt a resolution
which may provide for some of the above terms and provi-
sions.  Prior to the issuance of Extendible Maturity Bonds,
the Board shall adopt a resolution which shall set forth the
terms and conditions of the exercise by the bondholders or
the Authority of any option to extend the maturity of said
bonds.  Prior to the issuance of Capital Appreciation Bonds,
the Board shall specify by resolution, the Valuation Dates,
the Accreted Values on such dates, the manner in which and
the period during which principal and interest shall be
deemed to accrue on such bonds for purposes of the defini-
tion of "Principal and Interest Requirements" and the amount
of any deposit required for the Reserve Account in accor-
dance with Section 507 hereof."

O.    Section 209 is hereby supplemented by the addi-
tion of a paragraph to be inserted after the second paragraph in
said Section, as follows:

"Prior to the issuance of Variable Rate Bonds, the
Board shall adopt a resolution specifying, without limita-
tion, the interest rate calculation methods and any conver-
sion features, and any credit or liquidity facility which
may be drawn upon to make principal and interest payments on
the Variable Rate Bonds.  The Variable Rate Bonds may pro-
vide that the owner of any such bond may demand payment of
principal and interest within a stated period after deliver-
ing notice to a designated agent for the Authority and pro-
viding a copy of the notice with the tender of the Variable
Rate Bond to such agent.  The designated agent for the
Authority, in accordance with the terms of a remarketing or
replacement agreement, may provide for the resale or rede-
livery of the Variable Rate Bonds on behalf of the Authority
at a price provided for in the agreement.  If the Variable
Rate Bonds shall not be resold or redelivered within a
stated period, the agent for the Authority may be authorized
to draw upon a previously executed credit or liquidity

- 8 -

confidential
Clark Whitmore
124
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

facility of one or more banks or other financial or lending
institutions for payment of interest and principal for a
particular series of Variable Rate Bonds to which such
credit or liquidity facility shall pertain.  The particular
forms of such demand provisions, the period or periods for
payment of principal and interest after delivery of notice,
the appointment of the agent for the Authority, the terms
and provisions of the remarketing or replacement agreement,
and the terms and provisions of the credit or liquidity
facility, including the terms of any lien on Revenues in
connection with the credit or liquidity facility not incon-
sistent with Section 712 hereof, shall be as designated by a
resolution of the Board pertaining to the Variable Rate
Bonds to which such terms and provisions are applicable
adopted prior to the issuance thereof.  Prior to the issu-
ance of Put Bonds, the Board shall adopt a resolution which
may provide for some of the above terms and provisions.
Prior to the issuance of Extendible Maturity Bonds, the
Board shall adopt a resolution which shall set forth the
terms and conditions of the exercise by the bondholders or
the Authority of any option to extend the maturity of said
bonds.  Prior to the issuance of Capital Appreciation Bonds,
the Authority shall specify by resolution, the Valuation
Dates, the Accreted Values on such dates, the manner in
which and the period during which principal and interest
shall be deemed to accrue on such bonds for purposes of the
definition of "Principal and Interest Requirements" and the
amount of any deposit required for the Reserve Account in
accordance with Section 507 hereof."

P.    Section 210 is hereby amended and supplemented
to read as follows:

"Section 210.  If at any time the Board shall deter-
mine that the moneys in the Sinking Fund available for such
purpose will not be sufficient for paying at their maturity
the serial bonds of any Series which will mature within one
year thereafter, revenue refunding bonds of the Authority
may be issued under and secured by this Agreement, subject
to the conditions hereinafter provided in this Section, for
the purpose of providing funds for refunding such bonds and,
if deemed necessary by the Board, for paying the interest to
accrue thereon to their maturity and any expenses in connec-
tion with such refunding.  Before any bonds shall be issued
under the provisions of this paragraph the Board shall adopt
a resolution or resolutions authorizing the issuance of such
bonds, fixing the amount and the details thereof, and des-
cribing the bonds to be refunded.  Such revenue refunding
bonds shall be deemed to constitute a part of the term
bonds, if any, of such Series and shall mature at the same
time and shall be subject to redemption at the same times

- 9 -

confidential
Clark Wagner
125
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EdelRoanscBbrdman & Brand
Apg 03, 2017 15:38

and prices as such term bonds or, in case all the outstanding bonds of such Series shall be serial bonds, such revenue refunding bonds shall mature on the 1st day of July in a year not earlier than one year after the last maturing installment of the bonds of such Series and not later than fifty (50) years from their date, shall be deemed to be terms bonds of such Series and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), all as may be provided by the resolution or resolutions authorizing the issuance of such bonds. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.

Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to or at their maturity or maturities all of the outstanding 1947 Indenture Bonds, any 1947 Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series or outstanding Designated Maturity Bonds, including the payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption or their maturity and any expenses in connection with such refunding, and for the purpose of providing moneys for deposit to the credit of the Reserve Account. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed or paid. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the

- 10 -

confidential
ClarkWinne
126
Maslon EdelRoanscBbrdman & Brand
Apg 03, 2017 15:38

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

Prior to the issuance of Variable Rate Bonds, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest from the Authority within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing or replacement agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in the agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions of the remarketing or replacement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable adopted prior to the issuance thereof. Prior to the issuance of Put Bonds, the Board shall adopt a resolution which may provide for some of the above terms and provisions. Prior to the issuance of Extendible Maturity Bonds, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders or the Authority of any option to extend the maturity of said bonds. Prior to the issuance of Capital Appreciation Bonds, the Authority shall specify by resolution, the Valuation Dates, the Accreted Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the definition of "Principal and Interest Require-

- 11 -

confidential
Clark Whitmore
127
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

ments" and the amount of any deposit required for the Reserve Amount in accordance with Section 507 hereof.

Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a)   a copy, certified by the Secretary, of the resolutions mentioned above;

(b)   a copy, certified by the Secretary, of the resolution adopted by the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c)   in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series or outstanding Designated Maturity Bonds at or prior to their maturity or maturities:

(i)   a certificate, signed by the Executive Director, setting forth (A) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, and (B) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds to be outstanding under this Agreement after the issuance of such revenue refunding bonds and the redemption or payment of the bonds to be refunded; and

(ii)   such documents as shall be required by the Trustee to show that provision has been made in accordance with the provisions of the 1947 Indenture or this Agreement, as the case may be, for the redemption or payment of all of the bonds to be refunded; and

- 12 -

confidential
Clark Wagner
128
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon EdeRoanSbidchan & Brand
Aug 03, 2017 15:58

(d)   an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest.   The Trustee shall be entitled to rely upon such resolution as to all matters stated therein.   The Trustee, however, shall not authenticate and deliver such bonds unless

(I)   the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds, together with any moneys to be withdrawn from the Sinking Fund by the Trustee, and any other moneys which have been made available to the Trustee, for such purpose as hereinafter provided, or the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will become due and payable on or prior to the date of their payment or redemption, the financing costs in connection with such refunding, and any deposit to the credit of the Reserve Account, and

(II)   in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series or outstanding Designated Maturity Bonds prior to or at their maturity or maturities, either (1) the amount shown in item (B) of the certificate mentioned in subclause (i) of clause (c) of this Section shall be less than the amount shown in item (A) of said certificate or (2) there shall be filed with the Trustee a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth

(A)   the amount of the Net Revenues for any twelve (12) consecutive calendar months out of

- 13 -

Maslon EdeRoanSbidchan & Brand
Aug 03, 2017 15:58

confidential
130
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(B) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years, and

(C) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (B) above,

and stating that each of the amounts shown in items (A) and (C) above is not less than one hundred twenty per centum (120%) of each of the amounts shown in items (A) and (B) of the certificate mentioned in subclause (i) of clause (c) of this Section.

The proceeds of such revenue refunding bonds shall, to the extent practicable, be invested and reinvested by the Trustee, with the approval of the Executive Director, in Government Obligations, Prerefunded Municipals or in Time Deposits, secured in the manner set forth in Section 601 of this Agreement, and the moneys so invested shall be available for use when required. The income derived from such investments shall be added to such proceeds and applied in accordance with the provisions of this Section 210.

Simultaneously with the delivery of such revenue refunding bonds, the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 507 of this Agreement on account of the interest which is payable on the bonds to be refunded on the next interest payment date of such bonds and on account of the next maturing installment of principal of or the current Amortization Requirement for the bonds to be refunded, but no such withdrawal shall be made on account of any deposits to the credit of the Reserve Account in the Sinking Fund. The amount so withdrawn, the proceeds (excluding accrued inter-

confidential
Clark Wright
130
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

est but including any premium) of such revenue refunding
bonds and any other moneys which have been made available to
the Trustee for such purpose, shall be held by the Trustee
or deposited with the Paying Agents to be held in trust for
the sole and exclusive purpose of paying such principal,
redemption premium and interest; provided, however, that
such portion of the proceeds of such revenue refunding bonds
as is specified by the Executive Director in a certificate
filed with the Trustee shall be paid to the Authority to be
used for the payment of expenses incident to the financing
and the portion of the proceeds of such revenue refunding
bonds to be deposited to the credit of the Reserve Account
shall be deposited in the Reserve Account. Any part of the
proceeds of such revenue refunding bonds which are not
needed for the purpose of paying the principal of and the
redemption premium, if any, on the bonds to be refunded, any
deposit to the Reserve Account or any expenses in connection
with such refunding shall be deposited with the Trustee to
the credit of the Bond Service Account in the Sinking
Fund.  The amount received as accrued interest on such
revenue refunding bonds shall be deposited with the Trustee
to the credit of the Bond Service Account in the Sinking
Fund."

    Q.   Section 301 is hereby supplemented by the addi-
tion of a new paragraph following the second paragraph, as fol-
lows:

    "For purposes of this Section 301, if less than all of
the Capital Appreciation Bonds shall be called for redemp-
tion, the portion of any Capital Appreciation Bond of a
denomination of more than the maturity amount specified in
the resolution authorizing such Bonds to be redeemed shall
be such maturity amount or a multiple thereof, and, in
selecting portions of such Capital Appreciation Bond for
redemption, the Trustee shall treat such Capital Appreci-
ation Bond as representing that number of Capital Appre-
ciation Bonds of such maturity amount which is obtained by
dividing the maturity amount of such Capital Appreciation
Bond to be redeemed in part by the maturity amount specified
in such resolution."

    R.   Section 307 is hereby amended to read as fol-
lows:

    "Section 307.  Bonds and portions of bonds which
have been duly called for redemption under the provisions of
this Article, or with respect to which irrevocable instruc-
tions to call for redemption or payment at or prior to
maturity have been given to the Trustee in form satisfactory
to it, and for the payment of principal or the redemption

- 15 -

Maslon Edelman Borman & Brand
Aug 03, 2017 15:33

price and the accrued interest of which sufficient moneys, or Government Obligations or Prerefunded Municipals or Time Deposits secured in the manner set forth in Section 601 of this Agreement, shall be held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the bonds or portions thereof to be paid or redeemed, all as provided in this Agreement, shall not thereafter be deemed to be outstanding under the provisions of this Agreement."

S. Section 507 is hereby supplemented by the addition of a proviso to be inserted at the end of clause (a) of that Section, as follows:

", provided that in the case of Variable Rate Bonds, the amount deposited shall be the amount of interest estimated, on the 25th day of the month, to be due and payable within the next ensuing six (6) months, which interest shall be based initially on the interest rate in effect on the date of issuance and then shall be adjusted on the 25th day of each subsequent month based on the actual interest accrued from the 25th day of the previous month to the date of adjustment; provided further that in the case of a shortfall in the Bond Service Account for interest payable on any interest payment date, the amount of shortfall shall be funded on the business day immediately preceding such interest payment date from amounts on deposit in the Reserve Account."

T. Section 507 is hereby supplemented by the addition of a proviso to be inserted at the end of clause (c) of the Section as follows:

", provided further that in the case of Variable Rate Bonds, the minimum amount to be deposited in the Reserve Account which shall be funded over the period required herein, shall be based initially on the interest rate in effect on the date of issuance of the Variable Rate Bonds and then shall be adjusted on the 25th day of each subsequent month based on the actual interest accrued from the 25th day of the previous month to the date of adjustment and any shortfall in the Reserve Account due to a withdrawal to fund interest pursuant to the proviso contained in paragraph (a) above shall be funded on the 25th day of the next month; provided further that in the case of Capital Appreciation Bonds, the minimum amount required to be deposited in the Reserve Account shall be an amount derived from the interest rate which has been used to calculate the assumed yield on such bonds through their maturity times the Accreted Value of such bonds on the Valuation Date occurring at or after the first day of the twelfth succeeding month to the date of calculation of this requirement, as may be further specified in the resolution authorizing Capital Appreciation Bonds; and"

confidential
Clark/Vantage
132
Maslon Edelman Borman & Brand
Aug 03, 2017 15:33

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

U.    Section 509 is hereby supplemented by the addition of a new paragraph to be inserted at the end, as follows:

"Notwithstanding the foregoing, if principal and interest payments, or a portion thereof (other than any payments of the purchase price of bonds pursuant to a "put"), for particular bonds have been made on behalf of the Authority by a credit or liquidity facility issuer or other entity insuring, guaranteeing or providing for said payments, amounts deposited in the Bond Service Account and allocable to said payments for said bonds shall be paid, to the extent required under any agreement, to the credit or liquidity facility issuer or entity having theretofore made said corresponding payment."

V.    Section 510 is hereby supplemented by the addition of a sentence to be inserted at the end, as follows:

"For purposes of determining whether any excess exists in the Reserve Account, the amount required for Capital Appreciation Bonds and interest payable within the next ensuing twelve (12) months for Variable Rate Bonds shall be calculated in accordance with clause (c) of Section 507, and the minimum amount required in the Reserve Account shall be deemed to include any additional level of funding of the Reserve Account required under the terms of the resolution adopted by the Authority for such bonds."

W.    Section 511 is hereby supplemented by the addition of a paragraph to be inserted at the end, as follows:

"Notwithstanding the foregoing, if amounts applied to the retirement of bonds that would have been applied from the Redemption Account are paid instead by a credit or liquidity facility issuer or other entity insuring, guaranteeing or providing for said payment, amounts deposited in the Redemption Account and allocable to said payments for said bonds shall be paid, to the extent required under any agreement, to the credit or liquidity facility issuer or entity having theretofore made said corresponding payment."

X.    Section 602 is hereby supplemented by the addition of the words "or other authorized officer of the Authority or authorized representative of the Executive Director or other authorized officer" after the words "Executive Director" in the third line and seventh line of the fourth paragraph.

Y.    Section 703 is hereby supplemented by the addition of a clause to be inserted at the end of the last sentence, as follows:

- 17 -

confidential
Clark/Wemple
133
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon Edelman Borman & Brand
Aug 03, 2017 15:33

"; and notwithstanding the above, the Authority may enter into any indenture or agreement supplemental to the 1947 Indenture for any purposes permitted thereunder, including, without limitation, modifying any of the terms or provisions contained in the 1947 Indenture, to the extent that any such indenture or agreement would not adversely affect the interest of the bondholders under this Agreement. Under this Section, the Trustee will be entitled to receive, and shall be fully protected in relying upon the opinion of any counsel approved by it, who may be counsel for the Authority."

Z. Section 802 is hereby supplemented by the addition of a clause (j) to be inserted after clause (i), as follows:

"(j) notice has been received by the Trustee and the Authority, from the bank or other financial or lending institution providing a credit or liquidity facility or other entity insuring, guaranteeing or providing for payments of principal or interest in respect of any bonds that an event of default has occurred under the agreement underlying said facility, or a failure by said bank or other financial or lending institution or other entity to make said facility available or to reinstate the interest component of said facility, in accordance with the terms of said facility, to the extent said notice or failure is established as an event of default under the terms of the resolution authorizing the issuance of said bonds."

AA. Section 1201 is hereby amended to read as follows:

"Section 1201. If, when the bonds secured hereby shall have become due and payable in accordance with their terms or otherwise as provided in this Agreement or shall have been duly called for redemption or irrevocable instructions to call the bonds for redemption or payment shall have been given by the Authority to the Trustee, the whole amount of the principal and the interest and the premium, if any, so due and payable upon all of the bonds and coupons then outstanding shall be paid or sufficient moneys, or Government Obligations or Prerefunded Municipals or Time Deposits secured in the manner set forth in Section 601 of this Agreement, the principal of and the interest on which when due will provide sufficient moneys, shall be held by the Trustee or the Paying Agents for such purpose under the provisions of this Agreement, and provision shall also be made for paying all other sums payable hereunder by the Authority, then and in that case the right, title and inter-

- 18 -

confidential
Clark Whitmore
134
Maslon Edelman Borman & Brand
Aug 03, 2017 15:33

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

est of the Trustee hereunder shall thereupon cease, deter-
mine and become void, and the Trustee in such case, on
demand of the Authority, shall release this Agreement and
shall execute such documents to evidence such release as may
be reasonably required by the Authority, and shall turn over
to the Authority or to such officer, board or body as may
then be entitled by law to receive the same any surplus in
any account in the Sinking Fund and all balances remaining
in any other funds or accounts other than moneys held for
the redemption or payment of bonds or coupons; otherwise
this Agreement shall be, continue and remain in full force
and effect; provided, however, that in the event Government
Obligations or Prerefunded Municipals or Time Deposits
secured in the manner set forth in Section 601 of this
Agreement shall be held by the Trustee as hereinabove pro-
vided, (i) in addition to the requirements set forth in
Article III of this Agreement, the Trustee shall within
thirty (30) days after such obligations shall have been
deposited with it cause a notice signed by the Trustee to be
published once in a daily newspaper of general circulation
published in the Municipality of San Juan, Puerto Rico, and
in a daily newspaper of general circulation or a financial
journal published in the Borough of Manhattan, City and
State of New York, setting forth (a) the date designated for
the redemption of the bonds, (b) a description of the
Government Obligations or Prerefunded Municipals or Time
Deposits so held by it and (c) that this Agreement has been
released in accordance with the provisions of this Section,
and (ii) the Trustee shall nevertheless retain such rights,
powers and privileges under this Agreement, as may be neces-
sary and convenient in respect of the bonds for the payment
of the principal, interest and any premium for which such
Government Obligations or Prerefunded Municipals have been
deposited or such Time Deposits have been made.

For purposes of determining whether Variable Rate Bonds
shall be deemed to have been paid prior to the maturity or
redemption date thereof, as the case may be, the interest to
come due on such Variable Rate Bonds on or prior to the
maturity date or redemption date thereof, as the case may
be, shall be calculated at the maximum rate permitted by the
terms thereof.

Put Bonds and Extendible Maturity Bonds shall be deemed
to have been paid only if there shall have been deposited
with the Trustee moneys, Government Obligations, Time
Deposits or Prerefunded Municipals, as applicable, in an
amount which shall be sufficient to pay when due the maximum
amount of principal of and premium, if any, and interest on
such bonds which would become payable to the holders of such
bonds upon the exercise of any options or extensions of

- 19 -

confidential
Clark M. Wringe
135
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EdeRoasBbiGan & Brand
Apg 03, 2017 15:58

maturity; provided, however, that, if at the time a deposit
is made with the Trustee, the options or maturity extensions
originally exercisable are no longer exercisable, such bond
shall not be considered a Put Bond or an Extendible Maturity
Bond for purposes of this Section."

   2. The recitals, statements and representations contained
herein shall be taken and construed as made by and on the part of
the Authority and not by the Trustee, and the Trustee assumes and
shall be under no responsibility for the correctness of the same.

   3. This Second Supplemental Agreement may be amended and
supplemented in accordance with the provisions of Article XI of
the Agreement.

   4. The Trustee shall not be required to authenticate any
bonds permitted by this Second Supplemental Agreement if the
issue of such bonds will affect the Trustee's own rights, duties
or immunities under the Agreement or the bonds or otherwise in a
manner which is not reasonably acceptable to the Trustee.

   IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has
caused this Second Supplemental Agreement to be executed by its
Executive Director and its corporate seal to be impressed hereon
and attested by its Secretary or an Assistant Secretary, and
Citibank, N.A. has caused this Second Supplemental Agreement to
be executed in its behalf by one of its Vice Presidents and its
corporate seal to be impressed hereon and attested by one of its
Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By_____
   Executive Director

Attest:

_____
   Secretary

CITIBANK, N.A., as Trustee

By_____
   Vice President

(SEAL)

Attest:

_____
   Trust Officer

- 20 -

Confidential
Clark Wamge
136
Maslon EdeRoasBbiGan & Brand
Apg 03, 2017 15:58

Maslon Edelman Borman & Brand
Aug 03, 2017 19:33

```
COMMONWEALTH OF PUERTO RICO    )
                               ) SS:
MUNICIPALITY OF SAN JUAN       )
```

On the _____ day of February, in the year 1988, before me personally came CARLOS M. ALVARADO, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of San Juan, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

                                    _____
                                              NOTARY PUBLIC

                          (SEAL)

My Commission Expires:

```
STATE OF NEW YORK       )
                        ) SS:
COUNTY OF NEW YORK      )
```

On the _17th_ day of February, in the year 1988, before me personally came J. A. OLIVE, to me known, who, being by me duly sworn, did depose and say that he resides in Hicksvield, New York; that he is an Assistant Vice President of Citibank, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

                          _Christa M Bowen_
                          _____
                                   NOTARY PUBLIC

            (SEAL)              CHRISTA M. BOWEN
                           NOTARY PUBLIC, State of New York
                                  No. 30-4723478
                             Qualified in Nassau County
                        Certificate Filed in New York County
                        Commission Expires August 31, 1988

My Commission Expires:

- 21 -

confidential
Clark NY image
Maslon Edelman Borman & Brand
Aug 03, 2017 19:33

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

## SWORN STATEMENT

I, CARLOS M. ALVARADO, being duly sworn, hereby declare:

1. That I am of legal age, single and a resident of the municipality of San Juan, Puerto Rico.

2. That I am the Executive Director of Puerto Rico Electric Power Authority; that I know the seal thereof; that the seal affixed to the instrument titled "Second Supplemental Agreement" is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that I signed my name thereto by like order.

AND FOR ALL LEGAL PURPOSES, I sign this sworn statement in the city of San Juan, Commonwealth of Puerto Rico, this 11th day of February, 1987.

_____
Carlos M. Alvarado

Affidavit Number 2728 (copy)

Sworn and subscribed to before me by Carlos M. Alvarado, in his capacity as Executive Director of Puerto Rico Electric Power Authority, of the above mentioned personal circumstances, personally known to me, in San Juan, Puerto Rico, this 11th day of February, 1988.

NOTARY PUBLIC

My commission is for life

confidential
Clark/Dwyane
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Apr 03, 2017 16:38

## THIRD SUPPLEMENTAL AGREEMENT

THIS THIRD SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 12th day of January, 2011, by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

## U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H :

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended, (the "Agreement") for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to amend the Agreement so as to provide that in conjunction with the Authority's issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds, on a parity with the Authority's bonds issued under the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Third Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Third Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Third Supplemental Agreement; and

WHEREAS, the Trustee has received the specific consent of one hundred per cent (100%) in aggregate principal amount of the outstanding bonds to this Third Supplemental Agreement and to the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution

confidential
Clark Whitmore
139
Maslon Edelman Borman & Brand
Apr 03, 2017 16:38

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:58

and delivery of this Third Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Third Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Third Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.     The Agreement is hereby amended and supplemented in the following respects:

A.     Section 705 is hereby supplemented by the addition of the clause "Except as otherwise permitted in this Agreement", at the beginning of the first sentence.

B.     Section 712 is hereby supplemented by the addition of a proviso to the end of the first sentence of paragraph (a), as follows:

> "; provided that in conjunction with the issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the Authority's bonds under this Agreement."

C.     Clause (c) of Section 1102 is hereby changed to read as follows:

> "(c) the creation of a lien upon or a pledge of the Revenues other than any lien and pledge created by or permitted by this Agreement."

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.     This Third Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

confidential
Clark W Wenge
Maslon Edelman Borman & Brand
Apr 03, 2017 16:58

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Third Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Third Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____

Executive Director

(SEAL)

Attest:

_____

Secretary

U.S. BANK NATIONAL ASSOCIATION, as Trustee

By _____

Vice President

(SEAL)

Attest:

_____

Trust Officer

- 3 -

confidential
Maslon EdelmanBorman & Brand
Apr 03, 2017 16:58

COMMONWEALTH OF PUERTO RICO   )

)

MUNICIPALITY OF SAN JUAN   )

On the Nth day of January, in the year 2011, before me personally came ___Miguel Angel Cordero Lopez___, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereon that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing .Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 2,729

(SEAL)

_____
Notary Public

STATE OF NEW YORK   )

)

COUNTY OF NEW YORK   )

On the 11th day of January, in the year 2011, before me personally came __Michelle Mena-Rosado__, to me known, who, being by me duly sworn, did depose and say that she resides ~~at~~ in Bronx County, NY ; that she is a Vice President of U.S. Bank National Association, the bank corporation described in and which executed the above instrument and that she signed her name thereto by like authority.

Affidavit #

Carolyn R. Sinclair
Notary Public, State of New York
No. 01SI6034957
Qualified in Queens County
Commission Expires Dec 20, 2013

_____
Notary Public

My commission expires:

(SEAL)

- 4 -

confidential
Clark/Wrigge
142
Maslon EdelmanBorman & Brand
Apr 03, 2017 16:58

### CERTIFICATE OF SECRETARY OF THE AUTHORITY
### AS TO FOURTH SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Fourth Supplemental Agreement, dated as of August 24, 1989, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Fourth Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 24th day of August, 1989.

_____
Secretary
Puerto Rico Electric Power Authority

## FOURTH SUPPLEMENTAL AGREEMENT

THIS FOURTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 24th day of August, 1989, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a governmental instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to supplement the Agreement so as to (1) permit the Authority to deposit credit facilities in the Reserve Account established under the Agreement, (2) permit the Authority to refund portions of the bonds of any series issued under the Agreement, (3) provide a credit in the computation of principal and interest requirements under the Agreement for amounts irrevocably deposited for the payment of bonds and (4) expand the categories of eligible investments under the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Fourth Supplemental Agreement complies with the provisions

of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Fourth Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Fourth Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Fourth Supplemental Agreement to be published and mailed as required by the Agreement, and the holders of at least sixty per cent (60%) in aggregate principal amount of the outstanding bonds have specifically consented to and approved the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Fourth Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Fourth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS FOURTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Fourth Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

A.    The definition of "Investment Obligations" in Section 101 is hereby amended to read as follows:

The term "Investment Obligations" shall mean (i) Government Obligations, (ii) obligations of any state or territory of the United States or political subdivision thereof (other than obligations rated lower than the three highest grades by a nationally recognized rating agency), (iii) repurchase agreements with commercial banks fully secured by

- 2 -

Government Obligations and (iv) any other investment obligations permitted for governmental instrumentalities such as the Authority under the laws of the Commonwealth of Puerto Rico which are rated, on the date of investment therein, in any of the three highest grades by a nationally recognized rating agency, or which are collateralized by any of the other Investment Obligations described herein.

B.    The definition of "Principal and Interest Requirements" in Section 101 is hereby supplemented by the addition of a paragraph at the end thereof to read as follows:

"To the extent all or a portion of the principal of, Amortization Requirements or interest on, any bonds of any Series are payable from moneys irrevocably set aside or deposited irrevocably for such purpose with a bank or trust company (which may include the Trustee) or from Investment Obligations irrevocably set aside or deposited irrevocably for such purpose with a bank or trust company (which may include the Trustee) or Time Deposits secured in the manner set forth in Section 601 of this Agreement and irrevocably set aside for such purpose, the principal of and the interest on which when due will provide sufficient moneys to make such payments, such principal, Amortization Requirements or interest shall not be included in determining Principal and Interest Requirements; provided, however, that for purposes of the definition of Principal and Interest Requirements as used in Sections 502(A)(b) and 502(B)(b), respectively, said definition shall include any interest payable from any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon. The Executive Director or his designee shall deliver to the Trustee a certificate describing the principal of, Amortization Requirements for and interest on any bonds for which moneys, Investment Obligations or Time Deposits have been set aside or deposited pursuant to this paragraph, and stating that such principal, Amortization Requirements and interest should not be included in determining the Principal and Interest Requirements. Upon request of the Trustee, the Authority shall cause to be delivered to the Trustee a certificate of an independent verification agent as to the sufficiency of the maturing principal amounts of any Investment Obligations or Time Deposits, together with interest thereon, set aside or deposited pursuant to this paragraph to pay said principal, Amortization Requirements and interest."

C.    Section 101 is hereby supplemented by the addition of two definitions after the definition of "Reserve Account," as follows:

- 3 -

The term "Reserve Account Insurance Policy" shall mean the insurance policy, surety bond or other acceptable evidence of insurance, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 510 hereof.   The issuer providing such insurance shall be a municipal bond insurer whose policy or bond results in the rating of municipal obligations secured by such policy or bond to be rated, at the time of deposit into the Reserve Account, in one of the three highest grades by (i) either Standard & Poor's Corporation or its successor, or Moody's Investor's Services, Inc. or its successor or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

The term "Reserve Account Letter of Credit" shall mean the irrevocable, transferable letter of credit, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 510 hereof.   The issuer providing such letter of credit shall be a banking association, bank or trust company or branch thereof whose letter of credit results in the rating of municipal obligations secured by such letter of credit to be rated, at the time of deposit into the Reserve Account, in one of the three highest grades by (i) either Standard & Poor's Corporation or its successor, or Moody's Investor's Services, Inc. or its successor or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

D.   The second paragraph of Section 210 is hereby amended to read as follows:

"Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to or at their maturity or maturities all of the outstanding 1947 Indenture Bonds, any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds, including the

- 4 -

payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption or their maturity and any expenses in connection with such refunding, and for the purpose of providing moneys for deposit to the credit of the Reserve Account. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed or paid. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement."

E. The first sub-clause in clause (c) of Section 210 is hereby amended to read as follows:

"in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds at or prior to their maturity or maturities;"

F. Clause (II) of the fifth paragraph of Section 210 is hereby amended to read as follows:

"(II) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be

- 5 -

148

expended from the Renewal and Replacement Fund, all or
any part of the outstanding bonds of any Series or
outstanding Designated Maturity Bonds prior to or at
their maturity or maturities, either (1) the amount
shown in item (B) of the certificate mentioned in
subclause (i) of clause (c) of this Section shall be
less than the amount shown in item (A) of said cer-
tificate or (2) there shall be filed with the Trustee
a certificate, signed by the Executive Director and
approved by the Consulting Engineers, setting forth

>   (A)   the amount of the Net Revenues for any
>   twelve (12) consecutive calendar months out of
>   the eighteen (18) calendar months immediately
>   preceding the date of the issuance of such
>   bonds, adjusted to reflect the moneys which
>   would have been received if the rate schedule in
>   effect on the date of the issuance of such bonds
>   had been in effect throughout such twelve (12)
>   calendar months,
>
>   (B)   his estimate of the Net Revenues for each
>   of the five (5) fiscal years immediately follow-
>   ing the fiscal year in which the issuance of
>   such bonds occurs, taking into account the rate
>   schedule in effect on the date of the issuance
>   of such bonds and any rate schedule the Author-
>   ity has covenanted to put in effect during such
>   five (5) fiscal years, and
>
>   (C)   his estimate of the average annual Net
>   Revenues for such five (5) fiscal years, taking
>   into account the rate schedules referred to in
>   item (B) above,

and stating that each of the amounts shown in items
(A) and (C) above is not less than one hundred twenty
per centum (120%) of each of the amounts shown in
items (A) and (B) of the certificate mentioned in
subclause (i) of clause (c) of this Section."

G.   Clause (c) of Section 507 is hereby amended to
read as follows:

>   "(c)  to the credit of the Reserve Account, such
>   amount, if any, of any balance remaining after making the
>   deposits under clauses (a) and (b) above (or the entire
>   balance if less than the required amount) as may be required
>   to make the amount, then to the credit of the Reserve
>   Account, including the amount of any Reserve Account