Insurance Policy or any Reserve Account Letter of Credit therein, equal to the interest payable on the bonds of each Series issued hereunder within the next ensuing twelve (12) months; provided, however, that the amount so deposited in any month in respect of bonds of any Series issued under Sections 208 or 209 of this Agreement need not exceed one-sixtieth (1/60) of the amount of the increase in the interest payable within the next ensuing twelve (12) months resulting from the issuance of the bonds of such Series; provided, however, that if the amount so deposited in any month to the credit of said Account shall be less than the required amount for such month, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up; provided further, that in the case of Variable Rate Bonds, the minimum amount to be deposited in the Reserve Account which shall be funded over the period required herein, shall be based initially on the interest rate in effect on the date of issuance of the Variable Rate Bonds and then shall be adjusted on the 25th day of each subsequent month based on the actual interest accrued from the 25th day of the previous month to the date of adjustment, and any shortfall in the Reserve Account due to a withdrawal to fund interest pursuant to the proviso contained in paragraph (a) above shall be funded on the 25th day of the next month; provided further, that in the case of Capital Appreciation Bonds, the minimum amount required to be deposited in the Reserve Account shall be an amount derived from the interest rate which has been used to calculate the assumed yield on such bonds through their maturity times the Accreted Value of such bonds on the Valuation Date occurring at or after the first day of the twelfth succeeding month to the date of calculation of this requirement, as may be further specified in the resolution authorizing Capital Appreciation Bonds; and"

H.     Section 510 is hereby amended to read as follows:

"Section 510. Moneys held for the credit of the Reserve Account or amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall first be used for the purpose of paying interest on the bonds and maturing principal of the serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making the deposits to the credit of the Redemption Account pursuant to

- 7 -

the requirements of clause (b) of Section 507 of this Agreement whenever and to the extent that the withdrawals from the Renewal and Replacement Fund or the Revenue Fund, as the case may be, are insufficient for such purpose. If at any time the moneys held for the credit of the Reserve Account, including amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit, shall exceed interest payable within the next ensuing twelve (12) months on the bonds of each Series issued hereunder, such excess moneys shall be transferred to the credit of the Bond Service Account or any Reserve Account Insurance Policy or Reserve Account Letter of Credit may be reduced to the extent of such excess, at the option of the Authority. For purposes of determining whether any excess exists in the Reserve Account, the amount required for Capital Appreciation Bonds and interest payable within the next ensuing twelve (12) months for Variable Rate Bonds shall be calculated in accordance with clause (c) of Section 507, and the minimum amount required in the Reserve Account shall be deemed to include any additional level of funding of the Reserve Account required under the terms of the resolution adopted by the Authority for the bonds.

Notwithstanding anything to the contrary contained in Section 507 or elsewhere in this Agreement, in lieu, or in partial satisfaction, of any required deposit into the Reserve Account, the Authority may cause to be deposited into the Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit, as to which any reimbursement obligation in respect of a drawing thereon may be secured by a lien on Revenues not inconsistent with Section 712 hereof, for the benefit of the holders of the bonds in an amount equal to the required deposit or any portion thereof, and which Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be payable or available to be drawn upon, as the case may be (upon the giving of notice as required thereunder), on any date on which moneys are required to be paid out of the Reserve Account pursuant to the first sentence of this Section 510. If a disbursement is made under the Reserve Account Insurance Policy or the Reserve Account Letter of Credit, the Authority shall be obligated either to reinstate the amount of such Reserve Account Insurance Policy or Reserve Account Letter of Credit or to deposit into the Reserve Account moneys, in accordance with the provisions of Section 507 hereof, in the amount of the disbursement made under such Reserve Account Insurance Policy or Reserve Account Letter of Credit, or a combination of such alternatives. The Authority may at any time substitute (i) all or a portion of the moneys held to the credit of the Reserve

- 8 -

Account with a Reserve Account Insurance Policy or Reserve Account Letter of Credit, or a combination of such alternatives, (ii) all or a portion of any Reserve Account Insurance Policy on deposit in the Reserve Account with moneys or a Reserve Account Letter of Credit, or a combination of such alternatives, or (iii) all or a portion of any Reserve Account Letter of Credit on deposit in the Reserve Account with moneys or a Reserve Account Insurance Policy, or a combination of such alternatives. Any moneys on deposit in the Reserve Account in substitution of which a Reserve Account Insurance Policy or Reserve Account Letter of Credit is deposited into the Reserve Account shall, to the extent not required to fund any deficiences in the amount then required to be on deposit in the Reserve Account, be released and immediately paid over to the Authority to be used by the Authority for any of its lawful corporate purposes.   Prior to the expiration date of any Reserve Account Insurance Policy or Reserve Account Letter of Credit then on deposit to the credit of the Reserve Account, the Authority shall (x) cause the term of such Reserve Account Insurance Policy or Reserve Account Letter of Credit to be extended, (y) replace any such Reserve Account Insurance Policy with moneys (which may include, without limitation, moneys available under the Reserve Account Insurance Policy or from any other source available for such purpose) or a Reserve Account Letter of Credit, or a combination of such alternatives, or (z) replace any such Reserve Account Letter of Credit with moneys (which may include, without limitation, moneys available under the Reserve Account Letter of Credit or from any other source available for such purpose) or a Reserve Account Insurance Policy, or a combination of such alternatives; provided that, in the event the Authority has not extended or replaced the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit by the fifth (5th) business day prior to the date of expiration, the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit shall, on such date, be drawn upon to fund the Reserve Account.   For purposes of this Agreement, other than Article VI hereof, moneys for deposit to, or held for the credit of, the Reserve Account shall include amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit on deposit in the Reserve Account."

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.     This Fourth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Fourth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A. has caused this Fourth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____
                Executive Director

(SEAL)

Attest:

_____
                Secretary

CITIBANK, N.A., as Trustee

By _____
            Assistant Vice President

(SEAL)

Attest:

_____
                Trust Officer

- 10 -

STATE OF NEW YORK                    )
                                     ) SS:
COUNTY OF NEW YORK                   )

On the 24th day of August, in the year 1989, before me personally came Ronald C Pierce, to me known, who, being by me duly sworn, did depose and say that he resides in _____; that he is an Assistant Vice President of Citibank, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

_____
            NOTARY PUBLIC

                    (SEAL)

My Commission Expires:

                          CHRISTA M. BOWEN
                       Notary Public, State of New York
                              No. 41-4723478
                          Qualified in Queens County
                       Certificate filed in New York County
                       Commission Expires August 31, 1990



COMMONWEALTH OF PUERTO RICO
*Puerto Rico Electric Power Authority*

JOSE A. DEL VALLE VAZQUEZ
Executive Director

## SWORN STATEMENT

I, JOSE A. DEL VALLE, being duly sworn, hereby declare:

1. That I am of legal age, married and a resident of the municipality of Guaynabo, Puerto Rico.

2. That I am the Executive Director of Puerto Rico Electric Power Authority; that I know the seal thereof; that the seal affixed to the instrument titled "Fourth Supplemental Agreement" is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that I signed my name thereto by like order.

AND FOR ALL LEGAL PURPOSES, I sign this sworn statement in the city of San Juan, Commonwealth of Puerto Rico, this eighth day of september , 1989.

José A. Del Valle

Affidavit Number 2206

Sworn and subscribed to before me by José A. Del Valle, in his capacity as Executive Director of Puerto Rico Electric Power Authority, of the above mentioned personal circumstances, personally known to me, in San Juan, Puerto Rico, this eighth day of september , 1989.

NOTARY PUBLIC

My commission is for life

QUALITY, SAFETY AND LOSS CONTROL: IS OUR COMMITMENT
CABLE ADDRESS PREPA PHONE: (809) 725-4232

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:33

(4)

## CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO FIFTH SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Fifth Supplemental Agreement, dated as of August 14, 1991, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Fifth Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of August, 1991.

_____
Secretary
Puerto Rico Electric Power Authority

07/23/91\R15\COBCT.PUR

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:33

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

## FIFTH SUPPLEMENTAL AGREEMENT

THIS FIFTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 14th day of August , 1991, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a governmental instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended and supplemented to the date hereof (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to supplement the Agreement so as to expand the Authority's ability to sell, lease and transfer portions of the System (as defined in the Agreement) and enter into easements, contracts, licenses and other arrangements with other public and private entities concerning the operation and use of portions of the System; and

WHEREAS, the Trustee has received an opinion of counsel that this Fifth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EdelRoanSBbitdhan & Brand
Aug 03, 2017 16:38

WHEREAS, the execution and delivery of this Fifth Supple-
mental Agreement have been duly authorized by resolution of the
Governing Board of the Authority and the Authority has requested
the Trustee to join with it in the execution of this Fifth
Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed exe-
cution of this Fifth Supplemental Agreement to be published and
mailed as required by the Agreement, and the holders of at least
sixty per cent (60%) in aggregate principal amount of the out-
standing bonds have specifically consented to and approved the
execution hereof; and

WHEREAS, all acts, conditions and things required by the
Puerto Rico Federal Relations Act and the Constitution and laws
of the Commonwealth of Puerto Rico and by the rules and regula-
tions of the Authority to happen, exist and be performed prece-
dent to and in the execution and delivery of this Fifth Supple-
mental Agreement have happened, exist and have been performed as
so required; and

WHEREAS, the Trustee has accepted the trusts created by this
Fifth Supplemental Agreement and in evidence thereof has joined
in the execution hereof;

NOW, THEREFORE, THIS FIFTH SUPPLEMENTAL AGREEMENT WITNES-
SETH, that in consideration of the premises and of the acceptance
by the Trustee of the trusts created hereby and by the Agreement,
and also for and in consideration of the sum of One Dollar to the
Authority in hand paid by the Trustee at or before the execution
and delivery of this Fifth Supplemental Agreement, the receipt of
which is hereby acknowledged, it is mutually agreed and coven-
anted by and between the parties hereto, as follows:

1. Section 712 of the Agreement is hereby amended and
supplemented by the deletion of the words "at fair market value"
in paragraph (c) thereof and the addition of the following
paragraph at the end thereof:

    For purposes of paragraphs (b) and (c) of this
Section, references to sales or leases shall include also
other transfers of property and for purposes of paragraph
(c) of this Section the transferee may be considered in lieu
of the Authority or in addition to the Authority if the
transferee agrees to assume the Authority's obligations
under this Agreement and the Authority delivers to the
Trustee an opinion of counsel to the Authority to the effect
that the transferee's undertaking to assume the Authority's
obligations hereunder is legally valid and binding with the
same effect as though the transferee were the Authority. If

- 2 -

confidential
Clark&Whrange
158
Maslon EdelRoanSBbitdhan & Brand
Aug 03, 2017 16:38

Confidential
159
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

the transferee is a public corporation or other governmental entity, such transfer shall be permitted notwithstanding the Authority's failure to demonstrate the necessary coverage requirement in paragraph (c) above; provided that the Authority delivers a certificate of its Consulting Engineers to the Trustee demonstrating that the coverage ratio shown in the above certificate is not reduced due to such transfer.

(d)   Notwithstanding the provisions of paragraph (a) of this Section, except as may conflict with the provisions of the 1947 Indenture until the 1947 Indenture Bonds have been paid or provisions have been made for their payment and the release of the 1947 Indenture, the Authority may lease portions of the System, or grant licenses, easements and other rights or make contracts or other arrangements for operation or use of portions of the System, if there shall be delivered to the Trustee the following:

(i)   a report of the Consulting Engineers determining that (A) the proposed lessee or other contracting party is a financially responsible entity with substantial experience in the operation and management of utilities of the type and size of the System, and (B) the available revenues projected to be derived from the portion of the System subject to the lease, contract, license, easement or other arrangement following the date on which such lease, contract, license, easement or other arrangement is to be effective are forecasted to be sufficient to pay the Authority the rent or other payments provided by such lease, contract, license, easement or other arrangement and to make all necessary repairs, improvements and replacements to said portion of the System in the condition it was prior to such lease, contract, license, easement or other arrangement; and

(ii)   a certificate of the Consulting Engineers to the effect that the lease, contract, license, easement or other arrangement provides (A) for rent or other payments sufficient, with other Net Revenues projected to be derived from the System to make all payments of the Principal and Interest Requirements for all Bonds which will remain Outstanding following the execution and delivery of the lease, contract, license, easement or other arrangement, (B) operational covenants binding on the lessee or other contracting party similar to those covenants contained in this Agreement and (C) to the extent permitted by law in the case of a lease, for immediate termination of the lease of such lessee without resort to legal process in the event of a default under the lease; and

- 3 -

confidential
Clark & Whitney
159
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

(iii) an opinion of counsel of recognized standing in the field of law relating to municipal bonds to the effect that the proposed transaction would not adversely affect the federal income tax status of any Bonds.

Rents and other payments received under any such lease, contract, license, easement or other arrangement shall be included in the definition of Revenues.

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.     This Fifth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Fifth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A. has caused this Fifth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____
                    Executive Director

(SEAL)

Attest:

_____
                    Secretary

CITIBANK, N.A., as Trustee

By _____
                    Assistant Vice President

(SEAL)

Attest:

_____
          Trust Officer

confidential
Clark Witschge
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:58

**CITIBANK, N.A., as Trustee**

By: _____
Senior Trust Officer

[SEAL]

Attest:

_____

- 5 -

confidential
Clarke Ashworth
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

COMMONWEALTH OF PUERTO RICO  )
                             )
MUNICIPAL OF SAN JUAN        )   SS:  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
                             )

On the 9th day of August, in the year 1991, before me personally came Mr. Jose A. Del Valle Vazquez, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Guaynabo, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #11192 (copy)

NOTARY PUBLIC

(SEAL)

My Commission Expires:  Never

confidential
Clarke Ashworth
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:28

STATE OF NEW YORK            )
                             )  SS:
COUNTY OF NEW YORK           )

On the 9th day of August, in the year 1991, before me personally came Julie Salotito-Miller to me known, who, being by me duly sworn, did depose and say that she resides in Freehold MN; that she is a Senior Trust Officer of Citibank, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

NOTARY PUBLIC

(SEAL)

RAY C. RENIE
Notary Public, State of New York
No. 41-4862896
Qualified in Queens County
Commission Expires January 26, 1993

My Commission Expires: 1-26-93

confidential
Clark/Whitney
7163
Maslon Edelman Borman & Brand
Aug 03, 2017 16:28

Maslon Edelman Borman & Brand
Aug 03, 2017 15:55

**(6)**

## CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO SIXTH SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Sixth Supplemental Agreement, dated as of September 1, 1992, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Sixth Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of October, 1992.

_____
                    Secretary
Puerto Rico Electric Power Authority

confidential
Clark W Mange
164

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

## SIXTH SUPPLEMENTAL AGREEMENT

THIS SIXTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of September, 1992, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect;

WHEREAS, it is desirable to amend the Agreement so as to provide for an exchange of bonds issued under the Agreement for the outstanding bonds issued under the Trust Indenture dated as of January 1, 1947, as amended (the "Indenture"), by and between the Authority and The Chase Manhattan Bank (National Association), as successor trustee, upon obtaining the consent of owners of 100% of the bonds outstanding under the Indenture; and

WHEREAS, the Trustee has received an opinion of counsel that the Sixth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Sixth Supplemental Agreement have been duly authorized by resolution of the Governing

Confidential
Clark M. Wrenge
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon Edelman Borman & Brand
Apr 03, 2017 19:33

Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Sixth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Sixth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Sixth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SIXTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Sixth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.   The Agreement is hereby amended and supplemented in the following respect:

A.   Section 210 is hereby supplemented by the addition of the following paragraphs to the end of said Section:

"Revenue refunding bonds may also be issued in exchange for the outstanding 1947 Indenture Bonds, with the principal amount, maturity and interest rate of a 1947 Indenture Bond being exchanged for a revenue refunding bond with the same principal amount, maturity and interest rate.  The Trustee shall authenticate and deliver such bonds upon receipt of an opinion of Counsel stating that (a) no 1947 Indenture Bonds (other than 1947 Indenture Bonds being exchanged) shall then be outstanding under the provisions of the 1947 Indenture, (b) notice having been duly given in the manner and under the conditions hereinafter provided and revenue refunding bonds duly executed and authenticated as herein provided being held by the Trustee for delivery in exchange for 1947 Indenture Bonds, interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no



2

confidential
Clark Williams
166
Maslon Edelman Borman & Brand
Apr 03, 2017 19:33

Maslon Edelman Borman & Brand
Confidential
Apg 03, 2017 19:58

rights in respect thereof, except to receive such revenue refunding bonds of the same principal amount, maturity and interest rate, and (c) all other requirements set forth herein for said exchange to occur have been fulfilled.

Not later than forty five (45) days prior to the proposed date of exchange, the Authority shall provide written notice to the Trustee and the 1947 Trustee of the pending exchange of bonds for the outstanding 1947 Indenture Bonds, shall direct the 1947 Trustee to provide to the Trustee the names and addresses of the owners of outstanding registered 1947 Indenture Bonds without coupons and of owners of outstanding coupon 1947 Indenture Bonds that are registered as to principal only or as to both principal and interest and such additional information as the Trustee shall reasonably require to effectuate the exchange, and shall direct the Trustee (i) to mail notice of such exchange at least thirty (30) days before the proposed date of exchange to all registered owners of the outstanding 1947 Indenture Bonds, and (ii) to publish notice of such exchange once at least thirty (30) days before the proposed exchange date in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a financial journal or daily newspaper of general circulation published in the Borough of Manhattan, City and State of New York.  If all of the 1947 Indenture Bonds to be exchanged are coupon bonds registered as to principal only or as to both principal and interest or registered bonds without coupons, such notice of exchange shall be given by mail only and the Trustee will not be required to publish notice of the exchange.  The Trustee shall mail such notice to the registered owners of the outstanding 1947 Indenture Bonds, by first class mail, postage prepaid, and publish such notice, if required, in accordance with such direction.  The Authority shall provide the Trustee with a form of such notice and with an Opinion of Counsel that on the exchange date, the 1947 Indenture Bonds will no longer be outstanding under the 1947 Indenture.  Said notice shall contain the date of such exchange and the address of the principal corporate trust office of the Trustee to which the owners shall surrender their 1947 Indenture Bonds and shall state that on the exchange date upon surrender of a 1947 Indenture Bond, a new registered bond without coupons equal to the principal amount of such 1947 Indenture Bond will be issued, with the same maturity and bearing interest at the same rate and subject to redemption at the same times and prices either in whole or in part, as such 1947 Indenture Bond.  Unless all of the 1947 Indenture Bonds to be so exchanged shall consist of registered bonds



3

Maslon Edelman Borman & Brand
Apg 03, 2017 19:58

Confidential
Maslon Edelman Borman & Brand
Apg 03, 2017 19:38

without coupons or coupon bonds registered as to principal only or as to both principal and interest, failure to mail any such notice shall not affect the validity of the proceedings for such exchange. The owners of the outstanding 1947 Indenture Bonds shall deliver their 1947 Indenture Bonds (including all unmatured coupons appurtenant thereto for coupon 1947 Indenture Bonds) to the Trustee on the exchange date. Upon receipt of the 1947 Indenture Bonds, the Trustee will deliver the bonds in fully registered form without coupons to or upon the order of the owners of the surrendered 1947 Indenture Bonds, which bonds will be dated the July 1 or January 1 to which interest has been paid on such surrendered 1947 Indenture Bonds, and thereafter the owners of bonds issued in exchange for the 1947 Indenture Bonds will be entitled to all of the rights and benefits of other owners of bonds issued under the Agreement. Upon receipt of 1947 Indenture Bonds (including the unmatured coupons appurtenant to coupon 1947 Indenture Bonds), the Trustee shall deliver the 1947 Indenture Bonds (including the unmatured coupons appurtenant to such coupon 1947 Indenture Bonds) to the 1947 Trustee for cancellation."

2.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.    This Sixth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Sixth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A., has caused this Sixth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC
POWER AUTHORITY

By: _____
         Executive Director

(SEAL)

4

confidential
Clark W Wrege
168
Maslon Edelman Borman & Brand
Apg 03, 2017 19:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Attest:

_____
Secretary

CITIBANK, N.A., as Trustee

By: _____
Assistant Vice President



(SEAL)

Attest:

_____
Secretary

5

confidential
Clark Wright
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:58

Attest:

_____
              Secretary


                              CITIBANK, N.A., as Trustee

                              By: _____
                                  Assistant Vice President

                                   JULIE SALOVITCH-MILLER
                                   SENIOR TRUST OFFICER

(SEAL)

Attest:

_____
          Secretary
       A. LA PEÑA
    Senior Trust Officer

confidential
Clarke/Wronge
170
Maslon Edelman Borman & Brand
Apr 03, 2017 15:58

Maslon Edelman Borman & Brand
Aug 03, 2017 16:38
confidential

STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )

On the 14ᵗʰ day of *October*, in the year 1982, before me personally came *Jose del Valle*, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of *San Juan*, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

RICHARD M. ZAROFF
NOTARY PUBLIC, State of New York
No. 47-00000
Qualified in a New York County
Commission Expires March 30, 19__ 93

STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )

On the 14ᵗʰ day of *October*, in the year 1992, before me personally came *Julie Saburtch-Miller* to me known, who, being by me duly sworn, did depose and say that she resides at *Freehold, NJ*; that she is an *Senior Trust Officer* of Citibank, N.A., the banking corporation described in and which executed the above instrument; that she knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

PATRICIA TAMPOL
NOTARY PUBLIC, State of New York
File 24-01 TA 4659889
Qualified in Kings County
Certificate Filed in New York County
Commission Expires January 31, 1994

09/16/92\JUR\PREPA\BONDDOC\PRE-SUPP.AGT

confidential
Clark\\Marvue ,
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38
171

Maslon EdeRoamsBordman & Brand
Aug 03, 2017 16:38

## SEVENTH SUPPLEMENTAL AGREEMENT

**THIS SEVENTH SUPPLEMENTAL AGREEMENT**, dated for convenience of reference as of the 1st day of January, 1994, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a governmental instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which corporation is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, as Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

**WHEREAS**, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") has heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

**WHEREAS**, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time and at any time, enter into such

confidential
Clark&#Wrmge
172
Maslon EdeRoamsBordman & Brand
Aug 03, 2017 16:38

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:88

agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to correct or supplement any provisions therein which may be inconsistent with any other provision therein, or to make any other provisions with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interest of the bondholders, or to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the Trustee; and

**WHEREAS**, the Authority has determined that it is desirable to modify the covenant of the Authority relating to deposits to the credit of the Renewal and Replacement Fund and to amend the provisions relating to the qualifications of the Trustee; and

**WHEREAS**, the Trustee has received an opinion of counsel that this Seventh Supplemental Agreement complies with the provisions of the Agreement and that it is proper for the Trustee, under the provisions of Article XI of the Agreement, to join in the execution hereof; and

**WHEREAS**, the execution and delivery of this Seventh Supplemental Agreement have been duly authorized by resolution of the Authority and the Authority has requested the Trustee to join with it in the execution of this Seventh Supplemental Agreement; and

**WHEREAS**, all acts, conditions and things required by the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be

confidential
Clark Whitmore
173
Maslon Edelman Borman & Brand
Aug 03, 2017 15:88

12th Digital
Reproduction
Maslon Edelman Borman & Brand
Apg 03, 2017 16:58

performed precedent to and in the execution and delivery of this
Seventh Supplemental Agreement have happened, exist and have been
performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this
Seventh Supplemental Agreement and in evidence thereof has joined in
the execution hereof;

NOW, THEREFORE, THIS SEVENTH SUPPLEMENTAL AGREEMENT WITNESSETH,
that in consideration of the premises and of the acceptance by the
Trustee of the trusts created hereby and by the Agreement, and also for
and in consideration of the sum of One Dollar to the Authority in hand
paid by the Trustee at or before the execution and delivery of this
Seventh Supplemental Agreement, the receipt of which is hereby
acknowledged, it is mutually agreed and covenanted by and between the
parties hereto, as follows:

1.   The Agreement is hereby amended in the following respects:

A.   Section 704 shall be revised to delete the phrase, ", as set
forth in the most recent certificate of the Executive Director filed
with the Trustee pursuant to clause (d) of Section 208 of this
Agreement,".

B.   In Section 914 the last paragraph is amended by adding
immediately after "($50,000,000)" the following:

> "(or whose obligations hereunder are guaranteed by
> a bank or trust company duly authorized to
> exercise corporate trust powers and subject to
> examination by federal or state authority, of good
> standing, and having at the time of the
> appointment of such Trustee, a combined capital
> and surplus of at least such amount)".

2.   The recitals, statements and representations contained herein
shall be taken and construed as made by and on the part of the

confidential
Clark W/Marge
174
Maslon Edelman Borman & Brand
Apg 03, 2017 16:58

Confidential
175
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Seventh Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary, and Citibank, N.A., has caused this Seventh Supplemental Agreement to be executed in its behalf by one of its Vice Presidents, and its corporate seal to be impressed hereon and attested by its ~~Secretary or an Assistant~~ Secretary, all thereunto duly authorized, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
                Executive Director

(SEAL)

Attest:

_____
                Secretary

CITIBANK, N.A.

By: _____
                Vice President

(SEAL)

Attest:

_____
~~Assistant Secretary~~
Vice President

4

confidential
Clark Exhibit
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

confidential
Maslon EdelΝΔΔΛ Bordman & Brand
Aug 03, 2017 15:38

COMMONWEALTH OF PUERTO RICO  )
                             )      ss.:
MUNICIPALITY OF SAN JUAN     )
                                    Affidávit No. 584 *(copy)*

On the __16__ day of __February__, in the year 1994, before me personally came __Mr. Miguel A. Cordero__, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of __Caguas__, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Jorge A. Concepción Rivera

My commission expires        Is Permanent

(SEAL)

STATE OF NEW YORK    )
                     )      ss.:
COUNTY OF NEW YORK   )

On the __11th__ day of __Apri.__, in the year 1994, before me personally came __John M. Ress__, to me known, who, being by me duly sworn, did depose and say that he resides at __Brooklyn, New York__; that he is a Vice President of Citibank, N.A., the banking corporation described herein and which executed the above instrument; that he knows the seal of said corporation; that it was so affixed by the authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

My commission expires

(SEAL)

5

confidential
Clark_M_Range
176
Maslon EdelΝΔΔΛ Bordman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

**(54)**

## CERTIFICATE AS TO EIGHTH SUPPLEMENTAL AGREEMENT,

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Eighth Supplemental Agreement, dated as of May 1, 1997, which is substantially the same as the Supplemental Agreement which was presented at the meeting of the Authority duly called and held on April 21, 1994, and which was approved by the Authority by resolution duly adopted at said meeting.

WITNESS my hand this 23rd day of May, 1997.


                                    _____
                                            Secretary
                          Puerto Rico Electric Power Authority

confidential
Clark White Page
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EderRoanBolrdan & Brand
Aug 03, 2017 15:58

## EIGHTH SUPPLEMENTAL AGREEMENT

**THIS EIGHTH SUPPLEMENTAL AGREEMENT,** dated for convenience of reference as of the 1st day of May, 1997, by and between

**PUERTO RICO ELECTRIC POWER AUTHORITY,**

a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Authority"), and

**STATE STREET BANK AND TRUST COMPANY, N.A.,**

a national banking association existing under the laws of the United States of America and having its principal corporate trust office in the City and State of New York, which national banking association is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, as Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

**WHEREAS,** the Authority and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

Confidential
178
Clark & Weinstock
Maslon EderRoanBolrdan & Brand
Aug 03, 2017 15:58

Maslon EdeRoannBoirdan & Brand
Aug 03, 2017 15:38

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may enter into such agreements supplemental to the Agreement as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Trust Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provisions for the calculation of interest on Variable Rate Bonds in respect of which an interest rate SWAP agreement is in effect, and

WHEREAS, the Trustee has received an opinion of counsel that the Eighth Supplemental Agreement complies with the provisions of the Agreement and that it is proper for the Trustee, under the provisions of Article XI of the Agreement, to join in the execution hereof; and

WHEREAS, the execution and delivery of this Eighth Supplemental Agreement have been duly authorized by resolution of the Board of the Authority and the Authority has requested the Trustee to join with it the execution of this Eighth Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Eighth Supplemental Agreement to be published and

confidential
Maslon EdeRoannBoirdan & Brand
Aug 03, 2017 15:38

Confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

mailed as required by the Agreement, and the holders of at least sixty per cent (60%) in aggregate principal amount of the outstanding bonds have specifically consented in writing to and approved the execution hereof; and

**WHEREAS**, all acts, conditions and things required by the Constitution and laws of the Commonwealth of Puerto Rico and by the resolutions of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Eighth Supplemental Agreement have happened, exist and have been performed as so required; and

**WHEREAS**, the Trustee has accepted the trusts created by this Eighth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

**NOW, THEREFORE, THIS EIGHTH SUPPLEMENTAL AGREEMENT WITNESSETH,** that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Eighth Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.   The Agreement is hereby amended and supplemented in the following respects:

Confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Clark/Wavecrest
Maslon Edel/RoanceBordhan & Brand
Aug 03, 2017 15:38

A.   In Section 101 clause (b) of the definition of "Principal and Interest Requirements" is hereby revised to read as follows:

"(b) the amount required to pay the principal of all outstanding serial bonds of such Series which is payable after July 31 in such fiscal year and on or prior to July 31 in the following fiscal year, and ".

B.   In Section 101 the definition of "Principal and Interest Requirements" is hereby supplemented by the addition of the following sentence at the end of the third paragraph:

"If the Authority has notified the Trustee that a SWAP agreement is in effect in respect of Variable Rate Bonds, then for all purposes of this paragraph, except for the purpose of determining the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502 hereof, in the certificate mentioned in clause (d) of Section 208 hereof and in the covenant contained in Section 704 hereof, the interest rate on such Variable Rate Bonds shall be the SWAP rate under such SWAP agreement."

C.   In Section 101 the definition of "Revenues" is hereby supplemented by the addition of the following sentence at the end of the paragraph:

"Except for the purpose of determining the amount of the Revenues in the covenant as to rates contained in Section 502 hereof, Revenues shall not include any amounts paid to the Authority by a SWAP party in connection with Variable Rate Bonds."

D.   Section 101 is hereby supplemented by the addition of the following definitions before the definition of "System":

"'SWAP agreement' shall mean an agreement between the Authority and a SWAP party whereby the SWAP party agrees to pay to the Authority amounts  calculated on the basis of all or a portion of the interest on Variable Rate Bonds at or prior to the times such interest is due and

Confidential
181
Clark/Wavecrest
Maslon Edel/RoanceBordhan & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

payable in consideration of the Authority's payment to the SWAP party of amounts set forth in the SWAP agreement.

"'SWAP party' shall mean a person who is party to a SWAP agreement and whose senior obligations are rated at the time of the execution and delivery of such SWAP agreement in one of the three highest rating categories (without regard to gradations within a category) by (i) Standard & Poor's Corporation or its successor and (ii) Moody's Investors Service or its successor.

"'SWAP rate' shall mean the fixed rate per annum on the principal amount of Variable Rate Bonds covered by a SWAP agreement equal to the percentage derived by dividing (i) the sum of the amounts in the last twelve months paid by the Authority in respect of interest on such bonds and to the SWAP party less the amount paid to the Authority by the SWAP party by (ii) such principal amount of Variable Rate Bonds; provided, however, that if such SWAP agreement has been in effect for less than twelve months, such percentage shall be multiplied by 360 divided by the number of days between the effective date of such SWAP agreement and the date of calculation determined on the basis of 30-day months."

E.   In Section 507 clause (c) is hereby supplemented by the addition of the following at the end of the penultimate proviso before the semi-colon:

" , except that in the case of Variable Rate Bonds in respect of which the Authority has notified the Trustee that a SWAP agreement is in effect, the Trustee shall use the SWAP rate in calculating the interest payable on such Bonds within the next ensuing twelve (12) months;"

2.   The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee shall be under no responsibility for the correctness of the same.

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Eighth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon

confidential
5
182
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A. has caused this Eighth Supplemental Agreement to be executed on its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Assistant Secretaries, all as of the day and year first above written.



(SEAL)

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
        Executive Director

Attest:

_____
        Secretary

STATE STREET BANK AND TRUST COMPANY, N.A.

By: _____
        Vice President

(SEAL)

Attest:

_____
    Assistant Secretary
    VICE PRESIDENT

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:38

```
STATE OF NEW YORK    )
                     )      ss.:
COUNTY OF NEW YORK   )
```

        On the 23rd day of May, in the year 1997, before me
personally came Miguel A. Cordero, to me known, who, being by me
duly sworn, did depose and say that he resides at Caguas, Puerto
Rico; that he is the Executive Director of Puerto Rico Electric
Power Authority; that he signed his name to the above instrument by
order of said Authority, said Authority being the public
corporation described in and which executed the above instrument.

                              _____
                              Notary Public

(SEAL)

                              NEREIDA LUGO
                     Notary Public, State of New York
                              No. 24-01LU4501878
                          Qualified in Kings County
                     Certificate Filed in New York County
                     Commission Expires April 30, 1999.


```
STATE OF NEW YORK    )
                     )      ss.:
COUNTY OF NEW YORK   )
```

        On the 23rd day of May, in the year 1997, before me
personally came James E. Murphy, to me known, who, being by me duly
sworn, did depose and say that he resides at Freehold, New Jersey;
that he is a Vice President of State Street Bank and Trust Company,
N.A., the corporation described in and which executed the above
instrument; that he knows the seal thereof; that the seal affixed
to said instrument is the corporate seal of said corporation that
it was so affixed by authority of said corporation; and that he
signed his name thereto by like authority.

                              _____
                              Notary Public

(SEAL)

                              NEREIDA LUGO
                     Notary Public, State of New York
                              No. 24-01LU4501878
                          Qualified in Kings County
                     Certificate Filed in New York County
                     Commission Expires April 30, 1999.

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Apr 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

(47)

## CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
## NINTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLÓN, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Ninth Supplemental Agreement, dated as of June 1, 1994, by and between the Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially the form approved by the Governing Board of the Authority (the "Board") on June 8, 1994 by Resolution No. 2500 duly adopted by the Board and ratified on June 14, 1994 by Resolution No. 2501 duly adopted by the Board.

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of June, 1994.

Secretary
Puerto Rico Electric Power Authority

confidential
Clark/Wrage
185
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

## NINTH SUPPLEMENTAL AGREEMENT

THIS NINTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of June, 1994, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect;

WHEREAS, the Authority and the Trustee have heretofore entered into the sixth supplemental agreement, dated as of September 1, 1992, to the Agreement for the purpose of amending Section 210 of the Agreement to authorize the issuance of power revenue refunding bonds to be exchanged for an equal principal amount of all of the bonds then outstanding under the 1947 Indenture (hereinafter mentioned) upon satisfaction of the conditions set forth in said supplemental agreement; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

confidential
Clark/Wallace
186
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined further to amend said Section 210 of the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to correct and supplement certain provisions to said Section 210 made by said sixth supplemental agreement which are inconsistent with certain other provisions thereof and to add to the conditions, limitations and restrictions on the issuance of said power revenue refunding bonds other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, the Authority has further determined to amend the Agreement to provide for a record date in connection with the payment of interest on registered bonds without coupons issued after May 1, 1994; and

WHEREAS, the Trustee has received an opinion of counsel that the Ninth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Ninth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Ninth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Ninth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Ninth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS NINTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Ninth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended and supplemented in the following respect:

confidential
Clark & Wamberg
187
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

A. In Section 101 the following definition is added immediately following the definition of Paying Agents:

"The term 'predecessor bonds' shall mean, with respect to any registered bond without coupons, every previous bond evidencing all or a portion of the same debt as that evidenced by such registered bond without coupons; and, for the purpose of this definition, any bond authenticated and delivered under Section 212 of this Agreement in lieu of a mutilated, destroyed or lost bond shall be deemed to evidence the same debt as the mutilated, destroyed or lost bond."

B. The third sentence of the sixth paragraph of Section 203 is changed to read as follows:

"The principal of all registered bonds without coupons shall be payable only to the registered owner or his legal representative at the principal corporate trust office of the Trustee, and payment of the interest on each registered bond without coupons shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be made by the Trustee on each interest payment date to the person appearing on the registration books of the Authority hereinafter provided for as the registered owner thereof (or of any predecessor bond) on the 15th day of the month next preceding such interest payment date, by check mailed to such registered owner at his address as it appears on such registration books."

C. The last sentence of the second paragraph of Section 206 is changed to read as follows:

"Neither the Authority nor the Trustee shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be required to make any such exchange or registration of transfer of bonds during the fifteen (15) days immediately preceding an interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption, or after such bond or any portion thereof has been selected for redemption."

D. The last two paragraphs of Section 210 are deleted and the following Section shall be added immediately after Section 210:

"**Section 210A.** Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, at one time, for the purpose of exchanging such revenue refunding bonds for an equal principal amount of all of the 1947 Indenture Bonds then outstanding. Before any bonds shall be issued under the provisions of this Section 210A, the Board shall adopt a resolution

confidential
Clark & Weinstock
188
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

authorizing the issuance of such bonds, fixing the amount and details thereof and describing the 1947 Indenture Bonds to be exchanged therefor.  Such revenue refunding bonds shall be designated, shall be issued in the form of registered bonds without coupons, shall be in such denominations and shall be numbered, all as may be provided  by resolution or resolutions adopted by the Board prior to the issuance of such bonds.  Such revenue refunding bonds shall be dated the July 1 or January 1 to which interest has been paid on the 1947 Indenture Bonds to be exchanged therefor, shall bear interest at the same rate or rates as the interest on such 1947 Indenture Bonds, shall be stated to mature in the same principal amounts and on the same dates as such 1947 Indenture Bonds and shall be subject to redemption at the same times and prices, either in whole or in part, as such 1947 Indenture Bonds.  Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

"Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a)    a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b)    a copy, certified by the Secretary, of the resolution adopted by the Board directing the authentication and delivery of such bonds to or upon the order of the holders of the 1947 Indenture Bonds to be exchanged therefor;

(c)    such documents as shall be required by the Trustee to show that, upon the date designated for exchange, no 1947 Indenture Bonds shall then be outstanding under the provisions of the 1947 Indenture;

(d)    an opinion of counsel, who may be counsel for the Authority, to the effect that, on the date designated for exchange, notice having been duly given in the manner and under the conditions hereinafter provided and revenue refunding bonds duly executed and authenticated as herein provided being held by the Trustee for delivery for exchange for 1947 Indenture Bonds, interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no rights in respect thereof, except to receive such revenue refunding bonds of the same principal amount and maturity, bearing interest at the same rate, subject to redemption at the same times and prices as such 1947 Indenture Bonds and of any denomination or denominations authorized by this Agreement; and

confidential
Clark Whitmore
189
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

(e)    an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

"Not later than forty-five (45) days before the exchange date of such revenue refunding bonds for such 1947 Indenture Bonds, the Authority shall give written notice to the Trustee and the 1947 Trustee of the proposed exchange and shall direct the 1947 Trustee to provide the Trustee with the names and addresses of the owners of such 1947 Indenture Bonds that are registered bonds without coupons or coupon bonds registered as to principal alone or as to both principal and interest. At least thirty (30) days before such exchange date the Trustee shall cause a notice of such exchange substantially in the form prepared by the Authority and signed by the Trustee (a) to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and (b) to be mailed, postage prepaid, to all registered owners of such 1947 Indenture Bonds at their addresses provided to the Trustee by the 1947 Trustee, but failure to mail such notice to any registered owner shall not affect the validity of the proceedings for the exchange of 1947 Indenture Bonds of any other registered owners. If all the 1947 Indenture Bonds to be exchanged are registered bonds without coupons or coupon bonds registered as to principal alone or as to both principal and interest, such notice shall be given by mail, and the Trustee shall not be required to publish such notice. Each such notice shall set forth the date fixed for exchange, the address of the office of the Trustee at which the 1947 Indenture Bonds with all unmatured coupons appurtenant thereto, if any, shall be presented and surrendered for exchange, that on the exchange date interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no rights in respect thereof, except to receive registered bonds without coupons issued hereunder of the same principal amount and maturity, bearing interest at the same rate, subject to redemption at the same times and prices as such 1947 Indenture Bonds and of any denomination or denominations authorized by this Agreement.

"All 1947 Indenture Bonds and unmatured coupons appurtenant thereto, if any, upon surrender thereof to the Trustee shall be delivered to the 1947 Trustee for cancellation."

2.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

confidential
Clark/Mc-Verage
190
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

3.    This Ninth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Ninth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Ninth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By: _____
        Executive Director

Attest:

_____
        Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
        Assistant Vice President

Attest:

_____
        Trust Officer

confidential
Clark Whitmore
191
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

3.      This Ninth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Ninth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Ninth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

(SEAL)

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
      Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
      Assistant Vice President

Attest:

_____
Trust Officer

confidential
Clark AN/Mange
192
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Clark & Villmoe
Maslon Edelman Borman & Brand
Apg 03, 2017 16:38

3.      This Ninth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Ninth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Ninth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its ~~Trust~~ Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
       Executive Director


Attest:

_____
       Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By:_____
       Assistant Vice President

Attest:

_____
ANGELITA PENA
ASSISTANT VICE PRESIDENT

confidential
Clark & Villmoe
Maslon Edelman Borman & Brand
Apg 03, 2017 16:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

COMMONWEALTH OF PUERTO RICO ⟩
⟩ ss.:
MUNICIPALITY OF SAN JUAN ⟩

On the _____ day of _____, in the year 19____, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF NEW YORK ⟩
⟩ ss.:
COUNTY OF NEW YORK ⟩

On the _30th_ day of _June_, in the year 19 _94_, before me personally came _JULIE SALOVITCH-MILLER_, to me known, who, being by me duly sworn, did depose and say that he resides at _Freehold, New Jersey_; that he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_Patricia C. Sampol_
NOTARY PUBLIC

PATRICIA C. TAMPOL
Notary Public, State of New York
No. 01TA4659889
Qualified in Kings County
Certificate Filed in New York County
Commission Expires January 31, 1996

My commission expires:

(SEAL)

7

confidential
Clark/Whitmore
194
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

**(55)**

## CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
## TENTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Tenth Supplemental Agreement, dated as of August 1, 1995, by and between the Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially the form approved by the Governing Board of the Authority (the "Board") on August 10, 1995 by Resolution No. 2576 duly adopted by the Board on such date.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of August, 1995.

 

 
_____
Secretary
Puerto Rico Electric Power Authority

confidential
Clark Whittingare
195
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

Confidential
Clark & Wrange
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

# TENTH SUPPLEMENTAL AGREEMENT

THIS TENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of August, 1995, by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

## STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws  to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

confidential
Clark & Wrange
196
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

WHEREAS, the Authority has determined to amend the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to modify the Agreement to establish a self-insurance fund and to provide for deposits and the application of moneys held to the credit of said fund; and

WHEREAS, the Trustee has received an opinion of counsel that this Tenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Tenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Tenth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Tenth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Tenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS TENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Tenth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby supplemented by the addition of the following definition before the definition of "Construction Fund":

"The term "Capital Improvement Fund" shall mean the Puerto Rico Electric Power Authority Capital Improvement Fund, a special fund created and designated by Section 507 of this Agreement."

B.      In Section 101 the definition of Current Expenses is hereby revised by adding a comma after "512" and inserting after such comma "512A, 512B."

confidential
Clark Whitmore
197
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

C.     In Section 101 the definition of Revenues is hereby revised by adding a comma after the words "the Construction Fund" and inserting after such comma the words "the Capital Improvement Fund."

D.     Section 101 is hereby supplemented by the addition of the following definition before the definition of "serial bonds":

"The term "Self-insurance Fund" shall mean the Puerto Rico Electric Power Authority Self-insurance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement."

E.     Section 507 is hereby supplemented by the addition of the following sentence immediately after the third sentence of the first paragraph of said Section:

"Two other special funds are hereby created and designated "Puerto Rico Electric Power Authority Self-insurance Fund" (herein some times called the "Self-insurance Fund") and "Puerto Rico Electric Power Authority Capital Improvement Fund" (herein sometimes called the "Capital Improvement Fund")."

F.     Section 507 is hereby further supplemented by the deletion of the word "and" immediately after the last semicolon in clause (c) of said Section, the deletion of the period and the insertion of a semicolon at the end of clause (d) and the insertion of the following two clauses immediately prior to the penultimate paragraph in said Section as follows:

"(e)  On the date of the release of the 1947 Indenture, to the credit of the Self-insurance Fund an amount equal to the amount held to the credit of the General Reserve Fund under the 1947 Indenture on the date of such release remaining after making the deposits under clauses (a), (b), (c) and (d) above and thereafter such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above, as the Consulting Engineers shall from time to time recommend; and

"(f)   After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Capital Improvement Fund such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d) and (e) above, as the Consulting Engineers shall recommend as provided by Section 706 of this Agreement; provided, however, that if the amount so deposited to the credit of said Fund during any fiscal year of the Authority shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nevertheless be cumulative and the amount of any such deficiency in any such fiscal year shall be added to the amount otherwise required to be deposited in each fiscal year thereafter until such time as such deficiency shall have been made

confidential
ClarkAllViallange
198
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

confidential
Maslon EdelRoansBoltdhan & Brand
Aug 03, 2017 16:58

up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority."

G.     The last sentence of the second paragraph of Section 507 is hereby revised to read as follows:

"After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a) through (f) above may be used for any lawful purpose of the Authority.

H.     The last paragraph of Section 507 is hereby revised by inserting a comma immediately after the words "Reserve Maintenance Fund" and inserting after such comma the words "the Self-insurance Fund and the Capital Improvement Fund".

I.     The following two Sections shall be added immediately after Section 512:

"**Section 512A.**  Except as hereinafter provided in the following two paragraphs and in Section 707 of this Agreement, moneys held for the credit of the Self-insurance Fund (1) shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund only for the purpose of paying the cost of repairing, replacing or reconstructing any property damaged or destroyed from or extraordinary expenses incurred as a result of a cause which is not covered by insurance under the provisions of said Section 707 or (2) shall be transferred to the Revenue Fund in an amount, approved by the Consulting Engineers, equal to the loss of income from the System as a result of a cause which is not covered by insurance under the provisions of said Section 707.

"If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal becomes due and payable, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency.  If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose

4

confidential
ClarkAMMoatage
Maslon EdelRoansBoltdhan & Brand
Aug 03, 2017 16:58