Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:58

of providing funds for the retirement of bonds to the extent of the Authorization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement.

"If the Authority shall have determined that all or any portion of the moneys held to the credit of the Self-insurance Fund is no longer needed for the purposes specified in the second preceding paragraph, the Authority may withdraw an amount equal to such portion from the Self-insurance Fund and transfer such amount to the credit of the Bond Service Account; provided, however, that no such transfer shall be made prior to the time that the Consulting Engineers shall have approved such transfer in writing.

"**Section 512B.** Moneys held for the credit of the Capital Improvement Fund shall be disbursed in the manner provided by Section 402 of this Agreement only for paying the cost of anticipated extensions and Improvements of the System the cost of which has not otherwise been provided for from the proceeds of bonds issued under the provisions of this Agreement.

"If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal becomes due and payable, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of providing funds for the retirement of bonds to the extent of the Authorization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond

confidential
Clark NY Vintage
200
Maslon Edelman Borman & Brand
Apr 03, 2017 16:58

Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement."

J.      The second paragraph of Section 602 of the Agreement is hereby supplemented by deleting the word "and" immediately after the words "Construction Fund" and inserting instead a comma and adding the phrase "and the Self-insurance Fund" immediately after the words "Reserve Maintenance Fund."

K.      The penultimate paragraph of Section 706 is hereby revised by inserting a comma immediately after the words "Section 512 of this Agreement" in the last sentence of said paragraph" and adding immediately after such comma the phrase "deposited during the ensuing fiscal year to the credit of the Self-insurance Fund for the purposes set forth in Section 512A of this Agreement, if any, and deposited during the ensuing fiscal year to the credit of the Capital Improvement Fund for the purposes set forth in Section 512B of this Agreement".

L.      The last sentence of the penultimate paragraph of Section 707 of the Agreement is hereby supplemented by inserting a comma immediately after the phrase "available for such purpose" and adding immediately after such comma the phrase "including any moneys held for the credit of the Self-insurance Fund."

2.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

3.     This Tenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Tenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Tenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____

Executive Director

(SEAL)

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____

Assistant Vice President

Attest:

_____
Trust Officer

confidential
Clark Advantage
202
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EdelResns Borchan & Brand
Aug 03, 2017 15:38

**COMMONWEALTH OF PUERTO RICO**    )
                                          )   ss.:

**MUNICIPALITY OF SAN JUAN**          )

On the _25_ day of _August_, in the year 19_75_, before me personally came _Miguel A Cordero_, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _Caguas_, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # _3185_                                    NOTARY PUBLIC

My commission expires:

(SEAL)

**STATE OF NEW YORK**     )
                             )   ss.:

**COUNTY OF NEW YORK** )

On the _30th_ day of _August_, in the year 19_85_, before me personally came ____JULIE SADOVITCH-MILLER____, to me known, who, being by me duly sworn, did
                Assistant Vice President
depose and say that he resides at _Freehold, N.J._; that he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_Patricia C. Tampol_
NOTARY PUBLIC

PATRICIA C. TAMPOL
Notary Public, State of New York
No. 01TA4659889
Qualified in Kings County
Certificate Filed in New York County
Commission Expires January 31, 1996

My commission expires:

(SEAL)

8

Maslon EdelResns Borchan & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:38

(50)

## CERTIFICATE AS TO ELEVENTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Eleventh Supplemental Agreement, dated as of April 1, 1999, which is substantially the same as the Supplemental Agreement which was presented at the meeting of the Authority duly called and held on March 24, 1998, and which was approved by the Authority by resolution duly adopted at said meeting.

WITNESS my hand this **6**<sup>th</sup> day of April, 1999.

Secretary
Puerto Rico Electric Power Authority

confidential
Clark Schwage
204
Maslon Edelman Borman & Brand
Apr 03, 2017 15:38

confidential
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

## ELEVENTH SUPPLEMENTAL AGREEMENT

THIS ELEVENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of April, 1999, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Trust Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provisions for the creation of a Subordinate Obligations Fund, modify the required deposits to the Sinking Fund and the Rescue Maintenance Fund and required, and to expand the permitted investments for moneys to the credit of the Self-insurance Fund; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Trustee has received an opinion of counsel that this Eleventh Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for

confidential
Clark & Weinstock
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

Confidential
Draft Subject
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Eleventh Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Eleventh Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Eleventh Supplemental Agreement to be published and mailed as required by the Agreement, and the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds have specifically consented in writing to and approved the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Eleventh Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Eleventh Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS ELEVENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Eleventh Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby supplemented by the addition of the following definition before the definition of "Amortization Requirement":

"The term `Amortization Accrual' shall mean for any period the amount of an Amortization Requirement that would accrue during such period if such Requirement accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of an Amortization Requirement for a term bond shall commence on the first day of each month in the fiscal year for which such Requirement has been established and shall end on the first day of the month succeeding the relevant Deposit Day."

B.      In Section 101, the definition of Current Expenses is hereby revised by deleting the word "and" after the phrase "the Self-insurance Fund", inserting in its place a comma and inserting before the period the phrase "and the Subordinate Obligation Fund".

confidential
Clark & Weinstock
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Clark Avenue
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

C.     Section 101 is hereby supplemented by the addition of the following definition before the definition of "Executive Director":

"The term `Deposit Day' shall mean the date specified in the first paragraph of Section 507 of this Agreement as the date by which all of the moneys then held to the credit of the Revenue Fund shall be withdrawn by the Treasurer and deposited in the manner set forth in said Section."

D.     Section 101 is hereby supplemented by the addition of the following definitions before the definition of "Investment Obligations":

"The term `Independent Consultant' shall mean the consultant or consulting firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties of the Independent Consultant by this Agreement."

"The term `Interest Accrual' shall mean for any period the amount of interest that would accrue during such period if such interest accrued ratably on the basis of a year consisting of twelve (12) thirty-day months.  Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of interest on the bonds shall commence on the later to occur of the date of issue of the bonds of such Series and the date that is six months prior to the due date of such interest and shall end on the first day of the month following the relevant Deposit Day. In the case of Variable Rate Bonds, the amount deposited shall be based on the sum of the interest accrued through the business day preceding the relevant Deposit Day and the interest (calculated at the maximum rate of interest on such Bonds, or if there is no such maximum rate, then at the rate on such Bonds on the business day preceding the Deposit Day plus one percent (1%)) that would accrue on such Bonds from the Deposit Day to the later to occur of the first day of the next calendar month and any interest payment date on such Bonds occurring prior to the next Deposit Day."

E.     Section 101 is hereby supplemented by the addition of the following definition before the definition of "Principal and Interest Requirements":

"The term `Principal Accrual' shall mean for any period the amount of principal that would accrue during such period if such principal accrued ratably on the basis of a year consisting of twelve (12) thirty-day months.  Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of the principal of serial bonds shall commence on the first day of the twelfth month preceding the due date of such principal and shall end on the first day of the month succeeding the relevant Deposit Day."

F.     In Section 101 the definition of Revenues is hereby revised by adding a comma after the words "the Capital Improvement Fund" and inserting after such comma the following:  "the Subordinate Obligations Fund to the extent such income has been derived from the investment of moneys in such Fund to be used to pay Subordinate Obligations incurred to

confidential
Clark Avenue
3   207
Maslon EdelmanBorman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EdelRoanoBrdhan & Brand
Aug 03, 2017 15:58

pay the cost of any work or properties which have not been included by the Authority as part of the System as provided in Section 516 hereof."

G.      Section 101 is hereby supplemented by the addition of the following definitions before the definition of "System":

"The term `Subordinate Obligations' shall mean any obligations of the Authority incurred as provided in Section 516 of this Agreement."

"The term `Subordinate Obligations Fund' shall mean the Puerto Rico Electric Power Authority Subordinate Obligations Fund, a special fund created and designated by Section 507 of this Agreement."

H.      In Section 101 the definition of System is hereby revised by inserting the following before the period: "or from Subordinate Obligations to the extent such works and properties have been included by the Authority as part of the System as provided in Section 516 hereof."

I.      Section 507 is hereby supplemented by the addition of the following sentence immediately after the fourth sentence of the first paragraph of said Section:

"Another special fund is hereby created and designated "Puerto Rico Electric Power Authority Subordinate Obligations Fund" (herein some times called the "Subordinate Obligations Fund")."

J.      Paragraphs (a), (b) and (d) of Section 507 are hereby changed to read as follows:

"(a) to the credit of the Bond Service Account, such amount thereof (or the entire sum so withdrawn if less than the required amount) as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of

(i)      the Interest Accrual on all the outstanding bonds to and including the first day of the next calendar month, and

(ii)      the Principal Accrual on the outstanding serial bonds to and including the first day of the next calendar month;"

"(b) to the credit of the Redemption Account, such amount, if any, of any balance remaining after making the deposit under clause (a) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Redemption Account equal to the Amortization Accrual to and including the first day of the next calendar month;"

"(d) to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b) and (c) above (or the entire balance if less than the required amount) as may be recommended by the Consulting Engineers, as provided by Section 706 of this Agreement, to be deposited to

confidential
Clark Ashton ange
208
Maslon EdelRoanoBrdhan & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

the credit of said Fund during such month; provided, however, that if the amount so deposited to the credit of said Fund in any month shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nonetheless be cumulative and the amount of any such deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority; and provided further, however, that in the event that the Authority shall so covenant in respect of any Subordinate Obligation, as authorized by Section 516 of this Agreement, the deposit required by this clause (d) in any month shall be equal to the least of

    (i)     the amount described above in this clause (d),

    (ii)    the amount of $400,000, and

    (iii)   an amount that when added to the amount then held to the credit of the Reserve Maintenance Fund shall make the total amount to the credit of said Fund equal to $10,000,000;"

       K.     Section 507 is hereby further supplemented by redesignating paragraphs (e) and (f) as paragraphs (g) and (h) and inserting the following paragraphs after paragraph (d) to read as follows:

"(e)  to the credit of one or more special accounts in the Subordinate Obligations Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above (or the entire balance if less than the required amount) that together with funds then held to the credit of the Subordinate Obligations Fund will make the total amount then to the credit thereof equal to any amounts required to be paid or accrued with respect to any Subordinate Obligations prior to the Deposit Day of the next succeeding month from or to the Subordinate Obligations Fund;"

"(f)  in the event the Authority shall have covenanted pursuant to Section 516 with respect to Subordinate Obligations to limit its deposit to the Reserve Maintenance Fund in accordance with the provisions of the second proviso of clause (d) above and in fact the deposit to said Fund pursuant to clause (d) was limited to the amount described in subclause (ii) or (iii), to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d) and (e) above (or the entire balance if less than the required amount) as may be required to make the total amount deposited to the credit of the Reserve Maintenance Fund in such month equal to the amount described in subclause (i) of clause (d) above;"

       L.     The last sentence of the second paragraph of Section 507 is hereby revised to read as follows:

confidential
5
209
Clark & Wrange
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

"After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a) through (h) above may be used for any lawful purpose of the Authority."

M.     In the last paragraph of Section 507 there are hereby added the following sentences immediately before Section 508:

"The moneys in each account in the Subordinate Obligations Fund shall be held by the Authority (or a Depositary) in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Fund and, pending such application, shall be subject to a lien and charge in favor of the holders of the Subordinate Obligations incurred in the manner provided under this Agreement and for the further security of such holders until paid out or transferred as herein provided.  The Authority (or such Depositary) may establish one or more accounts within the Subordinate Obligations Fund corresponding to the source of moneys or particular Subordinate Obligations for each deposit made into said Fund so that the Authority (and such Depositary) may ascertain the source and date of deposit of the moneys in each such account."

N.     The following Section shall be added immediately after Section 515:

"Section 516. <u>Application of Moneys in Subordinate Obligations Fund</u>.  (a)  Moneys held for the credit of the Subordinate Obligations Fund shall be paid out or pledged by the Authority as necessary to enable the Authority to meet its Subordinate Obligations.  Subordinate Obligations may be incurred or issued by the Authority for any proper corporate purpose of the Authority.

"(b)  The Authority shall have the right to covenant with the holders from time to time of any Subordinate Obligations issued or incurred by the Authority to limit the deposits to the Reserve Maintenance Fund as authorized by Section 507(d) and to add to the conditions, limitations and restrictions under which bonds may be issued under the provisions of Sections 208, 209 and 210 hereof.

"(c)  Any such Subordinate Obligations shall be payable out of and may be secured by a pledge of (i) such amounts in the Subordinate Obligations Fund as may from time to time be available therefor, and (ii) any other funds of the Authority that may be available for such purpose, provided that any such payment or pledge made pursuant to clause (i) of this sentence shall be, and shall be expressed to be, subordinate and junior in all respects to the lien and charge of the bonds secured hereby upon the Revenues.

"(d)  Before incurring any Subordinate Obligations the proceeds of which shall finance in whole or in part the acquisition or construction of any works or properties by the Authority in connection with the production, distribution or sale of electric energy, the Authority shall adopt a resolution specifying whether or not such works or properties are to be included as part of the System.

NYLIB1/225234/4

confidential
Clark Exchange
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

"(e)    The resolution, indenture or other instrument securing each issue of Subordinate Obligations shall contain provisions (which shall be binding on all holders of such Subordinate Obligations) not more favorable to the holders of such Subordinate Obligations than the following:

(1)    In the event of any insolvency or bankruptcy proceedings, and any receivership, liquidation, reorganization or their similar proceedings in connection therewith, relative to the Authority or to its creditors, as such, or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Authority, whether or not involving insolvency or bankruptcy, the owners of all bonds then outstanding shall be entitled to receive payment in full of all principal and interest due on all such bonds in accordance with the provisions of this Agreement before the holders of the Subordinate Obligations are entitled to receive any payment from the funds pledged to the bonds on account of principal (and premium, if any) or interest upon the Subordinate Obligations.

(2)    In the event that any Subordinate Obligation is declared due and payable before its expressed maturity because of the occurrence of an event of default (under circumstances when the provisions of (1) above shall not be applicable), the owners of all bonds outstanding at the time such Subordinate Obligation becomes due and payable because of the occurrence of such an event of default shall be entitled to receive payment in full of all principal of and interest on all such bonds then due and payable before the holder of such Subordinate Obligation is entitled to receive any accelerated payment from the Revenues and other moneys pledged to the bonds under this Agreement of principal (and premium, if any) or interest upon such Subordinate Obligation.

(3)    If any event of default specified in Section 802 hereof with respect to the bonds shall have occurred and be continuing (under circumstances when the provisions of (1) above shall not be applicable), the owners of all bonds then outstanding shall be entitled to receive payment in full of all principal of and interest on all such bonds as the same become due and payable before the holders of the Subordinate Obligations are entitled to receive, subject to the provisions of (5) below, any payment from the Revenues or other moneys pledged to the bonds under this Agreement of principal (and premium, if any) or interest upon the Subordinate Obligations.

(4)    No owner of a bond shall be prejudiced in this right to enforce subordination of the Subordinate Obligations by any act or failure to act on the part of the Authority.

(5)    The Subordinate Obligations may provide that the provisions of (1), (2), (3) and (4) above are solely for the purpose of defining the relative rights of the owners of the bonds on the one hand, and the holders of Subordinate Obligations on the other hand, and that nothing therein shall impair, as between the Authority and the holders of the Subordinate Obligations, the

confidential
Clark Whitmore
211
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Maslon EdelRasBoichan & Brand
Aug 03, 2017 15:38

obligation of the Authority, which is unconditional and absolute, to pay to the holders thereof the principal thereof and premium, if any, and interest thereon in accordance with their terms, nor shall anything therein prevent the holders of the Subordinate Obligations from exercising all remedies otherwise permitted by applicable law or thereunder upon default thereunder, subject to the rights under (1), (2), (3) and (4) above of the owners of bonds to receive cash, property or securities from the funds pledged to the bonds under this Agreement otherwise payable or deliverable to the holders of the Subordinate Obligations; and the Subordinate Obligations may provide that, insofar as a trustee or paying agent for such Subordinate Obligations is concerned, the foregoing provisions shall not prevent the application by such trustee or paying agent of any moneys deposited with such trustee or paying agent for the purpose of the payment of or on account of the principal (and premium, if any) and interest on such Subordinate Obligations if such trustee or paying agent did not have knowledge at the time of such application that such payment was prohibited by the foregoing provisions.

(6)     Any issue of Subordinate Obligations may have such rank or priority with respect to any other issue of Subordinate Obligations as may be provided in the resolution, trust agreement or other instrument securing such issue of Subordinate Obligations and may contain such other provisions as are not in conflict with the provisions of this Agreement.

(7)     Neither the Trustee nor any Depositary shall be deemed to owe any fiduciary duty to the holders of Subordinate Obligations and shall not be liable to such holders if it shall mistakenly pay over or transfer to owners of bonds, the Authority or any other person, moneys to which any holders of Subordinate Obligations shall be entitled by virtue of this Section 516 or otherwise, provided, however, that neither the Trustee nor any Depositary then holding the Subordinate Obligations Fund shall be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct. Notwithstanding any of the provisions of this Section 516 or any other provision of this Agreement, neither the Trustee nor any such Depositary shall at any time be charged with knowledge of the existence of any facts that would prohibit the making of any payment of moneys to or by the Trustee or any such Depositary in respect of Subordinate Obligations or of any default in the payment of the principal of or premium, if any, or interest on any Subordinate Obligations, unless and until the Trustee or such Depositary shall have received written notice thereof from the Authority or the holders of a majority in principal amount of any class or category of any Subordinate Obligations or from any trustee or other fiduciary therefor and any financial institution that provides credit or security for any Subordinate Obligations."

O. The following four paragraphs are hereby added immediately before the last paragraph of Section 602 of the Agreement to read as follows:

"Notwithstanding any provision of this Section to the contrary, moneys to the credit of the Self-insurance Fund may also be invested by the Authority in any

confidential
8Clark Whitlarge
212
Maslon EdelRasBoichan & Brand
Aug 03, 2017 15:38

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

investments authorized by from Act. No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended from time to time (codified as Title 3, Chapter 33, Section 779, Laws of Puerto Rico Annotated), for the Retirement System of the Employees of the Government for Puerto Rico and its Instrumentalities; provided, however, that the Authority shall invest not less than the lesser of $25,000,000 and the entire balance to the credit of such Fund in Investment Obligations with an average weighted maturity of not in excess of three years.

"Prior to investing any moneys held for the credit of the Self-insurance Fund in other Investment Obligations, the Authority shall require an Independent Consultant retained pursuant to the provisions of Section 706 to present a report described in said Section 706 recommending what portion of moneys held for the credit of the Self-insurance Fund the Authority shall maintain invested in Investment Obligations. Should the Self-insurance Fund be held by the Trustee on behalf of the Authority, a copy of such report will be furnished to the Trustee.

"Prior to investing any moneys held for the credit of the Self-insurance Fund in other than Investment Obligations, the Authority shall, after duly considering the report it shall have received pursuant to the foregoing paragraph, formally adopt, subject to the consent of Government Development Bank for Puerto Rico, and maintain an investment policy first determining, subject to the limitation prescribed by the second preceding paragraph, the minimum portion of the moneys held for the credit of the Self-insurance Fund to remain invested in Investment Obligations and then setting forth prudent investment principles, considerations and goals, including, without limitation, liquidity, diversification of assets, safety and rate or rates of return, that will govern the investment strategies and goals for the balance of the moneys held for the credit of the Self-insurance Fund. The Authority agrees to advise the Trustee in writing of those investments other than Investment Obligations that are authorized by said investment policy.

"The Board shall receive at each regular meeting a detailed report from its Treasurer of the current portfolio of Investment Obligations, other securities and other moneys held to the credit of the Self-insurance Fund."

P. The following paragraphs are hereby added to Section 706 of the Agreement immediately preceding Section 707 to read as follows:

"The Authority covenants and agrees that so long as any bonds are outstanding under this Agreement, it will, for the purpose of carrying out the duties imposed on the Independent Consultant by this Agreement, employ one or more independent firms having a wide and favorable repute in the United States for expertise in risk management and other insurance matters related to the construction and operation of electric systems. Except for fees and expenses incurred under the provisions of Section 403 of this Agreement, the cost of

confidential
Clark Wilmerge
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

employing such Independent Consultant shall be treated as part of the cost of operation and maintenance of the System.

"It shall be the duty of the Independent Consultant to prepare and file with the Authority and the Trustee at least biennially, on or before the first day of November, beginning November 1, 1999, a report setting forth its recommendations, based on a review of the insurance then maintained by the Authority in accordance with Section 707 of this Agreement and the status of the Self-insurance Fund, of any changes in coverage, including its recommendations of policy limits and deductibles and self-insurance, and investment strategies for the Self-insurance Fund."

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.     This Eleventh Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

Confidential
Maslon EderBrachan & Brand
Aug 03, 2017 15:38

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eleventh Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Eleventh Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

(SEAL)

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
Vice President

Attest:

_____
Trust Officer

225234/2

11

confidential
Clark & Weinstock
Maslon EderBrachan & Brand
Aug 03, 2017 15:38

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eleventh Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Eleventh Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
        Executive Director

Attest:

_____
        Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By:_____
        Vice President

Attest:

_____
Trust Officer

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

COMMONWEALTH OF PUERTO RICO    )

                                                   )        ss.:

MUNICIPALITY OF SAN JUAN              )

On the ___6___ day of _April_, in the year 1999, before me personally came _Miguel Cordero López_, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _San Juan_, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

My commission expires: _____

(SEAL)

STATE OF NEW YORK          )

                                               )        ss.:

COUNTY OF NEW YORK)

On the _____ day of _____, in  the year 1999, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is a Vice President of State Street Bank and Trust Company, N.A., the banking corporation described  in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

225234/2

Confidential
Clark Avenue
217
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:38

COMMONWEALTH OF PUERTO RICO  )
                                   )  ss.:

MUNICIPALITY OF SAN JUAN  )

       On the _____ day of _____, in the year 1999, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____

                          _____
                          NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF NEW YORK  )
                       )  ss.:
COUNTY OF NEW YORK)

       On the _8TH_ day of _APRIL_, in the year 1999, before me personally came _JAMES E MURPHY_, to me known, who, being by me duly sworn, did depose and say that he resides at _66 CROSSWICKS RD FREEHOLD NJ_; that he is a Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

                        _Cheryl L. Clarke_
                        NOTARY PUBLIC

My commission expires:

                      Cheryl L. Clarke
               Notary Public, State of New York
                     31-5057121
(SEAL)             Qualified in New York County
              Certificate Filed in New York County
             Commission Expires March 18, 2000

225234/2

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:38
218

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

**(63)**

## CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
## TWELFTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power

Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct

copy of the Twelfth Supplemental Agreement, dated as of April 1, 1998, by and between the

Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially

the form approved by the Governing Board of the Authority (the "Board") on March 24, 1998 by

Resolution No. 2706 duly adopted by the Board on such date.

IN WITNESS WHEREOF, I have hereunto set my hand this 7th day of April, 1998.

_____
Secretary
Puerto Rico Electric Power Authority

237277

confidential
Clark & Wamre
219
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Maslon EdelRoanSBordhan & Brand
Aug 03, 2017 15:38

## TWELFTH SUPPLEMENTAL AGREEMENT

THIS TWELFTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of April, 1998, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonweath of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws  to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the

confidential
ClarkAtAvenue
Maslon EdelRoanSBordhan & Brand
Aug 03, 2017 15:38

confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to amend the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to modify the definition of System to include works and properties the acquisition and construction of which shall be financed in whole or in part from moneys deposited to the credit of the Capital Improvement Fund, make certain formal changes to the definition of Current Expenses and to change the date of delivery of the annual report of the Consulting Engineers pursuant to Section 706 of the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Twelfth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Twelfth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Twelfth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Twelfth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Twelfth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS TWELFTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Twelfth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

A.    In Section 101 the definition of Current Expenses is hereby revised by deleting the comma after "512" and deleting after such comma "512A, 512B" and inserting a comma after the phrase "the Reserve Maintenance Fund" and after such comma the words "the Self-insurance Fund and the Capital Improvement Fund."

confidential
Class A4 range
221
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

2

Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

B.      In Section 101 the definition of System is hereby revised by adding a comma after the words "the Construction Fund" and inserting after such comma the words "the Capital Improvement Fund."

C.      The second paragraph of Section 706 is hereby revised by deleting the word "May" in the first sentence thereof and inserting instead the word "November".

2.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.      This Twelfth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:38

confidential
Clark McWade
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

      IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Twelfth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Twelfth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
    Executive Director

Attest:

_____
    Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
    Vice President

Attest:

_____
    Vice President

2/482230.2

4

confidential
Clark McWade
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Twelfth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Twelfth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____

Executive Director

Attest:

_____

Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By:_____

Vice President

Vice President

confidential
Clark-Whitmore
224
Maslon Edelman Borman & Brand
Aug 03, 2017 16:38

Confidential
Maslon EdelRoans Bridhan & Brand
Aug 03, 2017 15:38

COMMONWEALTH OF PUERTO RICO )
)  ss.:
MUNICIPALITY OF SAN JUAN )

On the 3rd day of April, in the year 1998, before me personally came Miguel A. Cordero, to me known, by me duly sworn, did depose and say that he resides in the Municipality of Caguas, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #3513

My commission expires:
        Permanent

(SEAL)

NOTARY PUBLIC


STATE OF NEW YORK )
)  ss.:
COUNTY OF NEW YORK )

On the 6th day of April, in  the year 1998, before me personally came James Murphy, to me known, who, being by me duly sworn, did depose and say that he resides at Freehold, New Jersey; that he is a Vice President of State Street Bank and Trust Company, N.A., the banking corporation described  in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

NOTARY PUBLIC

My commission expires:

(SEAL)

NEREIDA LUGO
Notary Public, State of New York
No. 24-01LU4501878
Qualified in Kings County
Certificate Filed in New York County
Commission Expires April 30, 1999.

482230

5

confidential
Maslon EderksonBordman & Brand
Apg 03, 2017 16:39

(69)

CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
THIRTEENTH SUPPLEMENTAL AGREEMENT

I, Maria E. Hernández-Torrales, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Thirteenth Supplemental Agreement, dated as of January 1, 2002, by and between the Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially the form approved by the Governing Board of the Authority (the "Board") on December 3, 2001 by Resolution No. 2978 duly adopted by the Board on such date.

IN WITNESS WHEREOF, I have hereunto set my hand this 3rd day of January, 2002.

_____
Secretary
Puerto Rico Electric Power Authority

confidential
Clark WMange
226
Maslon EderksonBordman & Brand
Apg 03, 2017 16:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

## THIRTEENTH SUPPLEMENTAL AGREEMENT

THIS THIRTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of January, 2002, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to amend the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to correct

confidential
Clark Witmarge
227
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

certain provisions of the Agreement, which provisions are inconsistent with other provisions therein, of the Eleventh Supplemental Agreement, dated as of April 1, 1999 (the "Eleventh Supplement"), by and between the Authority and the Trustee and the Twelfth Supplemental Agreement, dated as of August 1, 1995 (the "Twelfth Supplement"), by and between the Authority and the Trustee, which provisions are inconsistent with other provisions in said Eleventh Supplement or said Twelfth Supplement as the case may be, and of the proposed Third Supplemental Agreement, by and between the Authority and the Trustee (the "Third Supplement"), by amending and restating the Third Supplement in the form attached hereto as Exhibit A; and

WHEREAS, the Trustee has received an opinion of counsel that this Thirteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Thirteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Thirteenth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed  precedent to and in the execution and delivery of this Thirteenth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Thirteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Thirteenth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended and supplemented in the following respects:

A. The form of coupon bond is hereby revised by making the phrase "Corporate Trust Office" in the fourth paragraph and in the ninth paragraph lower case and by adding the phrase "the principal of" immediately after the phrase "and charged with the payment of" in the last sentence of the seventh paragraph.

B. The definition of "Paying Agents" in Section 101 is hereby revised by adding the word "or" immediately after the phrase "resolution of the Board".

NY1 5042112v3

Confidential
Clark M Wrage
228
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

C.  The definition of "Prerefunded Municipals" in Section 101 is hereby revised by adding a comma after the phrase "Time Deposits" in clause (c) thereof.

D.  The first sentence of the last paragraph of the definition of "Principal and Interest Requirements" in Section 101 is hereby revised by adding the word "for" after the phrase "portion of the principal of, Amortization Requirements" and by adding a comma after the phrase "Time Deposits" and after the phrase "in Section 601 of this Agreement".

E.  The last sentence in the definition of "Reserve Account Insurance Policy" and in the definition of "Reserve Account Letter of Credit" in Section 101 is hereby revised by deleting the words "Moody's Investor's Services, Inc." and inserting in their place "Moody's Investors Service, Inc." each time they appear in said sentences

F.  The last sentence of Section 206 is hereby revised to read as follows:  Neither the Authority nor the Trustee shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be required to make any such exchange or registration of transfer of bonds, during the fifteen (15) days immediately preceding any interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption (or if all the bonds to be redeemed are issuable as registered bonds without coupons, immediately preceding the date of mailing of notice of such redemption), or after such bond or any portion thereof has been selected for redemption."

G.  The first sentence of Section 207 is hereby revised by inserting the phrase "the premium, if any, and" after the phrase "or on account of the principal of and".

H.  The first sentence of the second paragraph of Section 208 is hereby revised by adding the words "advances of" immediately after the phrase "which were acquired or constructed from any".

I.  The third paragraph of Sections 208, 209 and 210 is hereby revised to read as follows:  "Before any Variable Rate Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds.  The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent.  The designated agent for the Authority, in accordance with the terms of a remarketing or placement agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in the agreement. If

3

confidential
Clark McVinue
229
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Parker Garber
Maslon Edelman Borman & Brand
Confidential
Aug 03, 2017 15:39

the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular Series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions for the remarketing or placement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable prior to the issuance thereof. Before any Put Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which may provide for some of the above terms and provisions. Before any Extendible Maturity Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders or the Authority of any option to extend the maturity of said bonds. Before any Capital Appreciation Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying the Valuation Dates, the Accreted Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the definition of "Principal and Interest Requirements" and the amount of any deposit required for the Reserve Account in accordance with Section 507 hereof. "

J.  The second paragraph of Section 210 is hereby revised by inserting the word "Indenture" between the words "1947" and "Bonds" in the first sentence thereof.

K.  Clause (I) of the fifth paragraph of Section 210 is hereby revised by deleting the comma after the phrase "and any other moneys which have been made available to the Trustee".

L.  The penultimate paragraph of Section 210 is hereby revised by inserting the word "in" immediately before the words "Preferunded Municipals".

M.  The penultimate sentence of the last paragraph of Section 210 is revised by adding the word "making" immediately before the phrase "any deposit to the Reserve Account and adding the word "paying" immediately before the phrase "any expenses in connection with".

N.  Section 307 is hereby revised by adding a comma after the phrase "Time Deposits" and after the phrase "in Section 601 of this Agreement".

NY1 5042112v3

confidential
Clark McMurdie
230
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

O. The second sentence of Section 506 is hereby revised by adding the word "a" immediately after the phrase "less such amount to be held as" and a comma immediately after the phrase "as the Treasurer may determine".

P. The fourth sentence of the first paragraph of Section 507 is hereby revised by inserting a comma after the phrase "and the release of the 1947 Indenture" in clause (i) of said sentence and the word "Fund" is deleted immediately before the phrase "in the following order:" and in its place is inserted the word "Funds".

Q. Clause (c) of Section 507 is hereby revised by deleting the phrase "provided, however," immediately after the phrase "issuance of the bonds of such Series;" and inserting in its place the word "and"; by deleting the phrase "provided further," immediately after the phrase "as such deficiency shall have been made up;" and inserting in its place the word "and"; by deleting the phrase "which shall be funded" immediately before the phrase "over the period required herein,"; by deleting the phrase "and any shortfall in the Reserve Account due to a withdrawal to fund interest pursuant to the proviso contained in paragraph (a) above shall be funded on the 25th day of the next month,"; and deleting the phrase "provided further," immediately after the phrase "in calculating the interest payable on such Bonds within the next ensuing twelve (12) months;" and inserting in its place the word "and".

R. Clause (g) of Section 507 is hereby revised by deleting the phrase "(a), (b), (c), and (d)" each time it appears in said paragraph and inserting instead the phrase "(a), (b), (c), (d), (e) and (f)".

S. Paragraph (h) of Section 507 is hereby revised by deleting the phrase "(a), (b), (c), (d) and (e)" each time it appears in said paragraph and inserting instead the phrase "(a), (b), (c), (d), (e), (f) and (g)".

T. The last paragraph of Section 508 is hereby revised by deleting the phrase "the Agreement" and inserting in its place the phrase "this Agreement".

U. The second sentence of the first paragraph of Section 510 is hereby revised by adding the phrase "and then outstanding" immediately before the phrase "hereunder, and such excess shall".

V. The antepenultimate sentence of the last paragraph of Section 510 is hereby revised by deleting the phrase "for any of its lawful corporate purposes" and inserting in its place the phrase "for any lawful purpose of the Authority".

W. The first sentence of the second paragraph of Section 512A and the first sentence of the second paragraph of Section 512B are each hereby revised by deleting the word "becomes" and inserting in its place the word "become".

X. The second sentence of the second paragraph of Section 512A and the second sentence of the second paragraph of Section 512B are hereby revised by

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

deleting the word "Authorization" and inserting in its place the word "Amortization".

Y.   The last sentence of Section 515 is hereby revised by deleting the phrase "the Paying Agents" and inserting in its place the phrase "such Paying Agent".

Z.   The third paragraph of Section 602 is hereby revised by inserting the word "the" between the words "by" and "order".

AA.   The fourth paragraph of Section 602 is hereby revised by inserting the word "held" between the words "moneys" and "to" and the phrase "from Act. No. 447" is hereby deleted and in its place is inserted the phrase "Act No. 447".

BB.   The second paragraph of Section 702 is hereby revised by inserting the phrase "and all other works or properties constituting part of the System" immediately after the phrase "it will construct all Improvements", the phrase "or Subordinate Obligations" immediately after the phrase "for the construction of which bonds" and after the phrase "repayable from the proceeds of bonds", and the phrase "or other works or properties" immediately after the phrase "upon the completion of such Improvements".

CC.   The last paragraph of clause (d) of Section 712 is hereby revised to read as follows:  "The rentals and other payments under any such lease, contaract, license, easement or other arrangement shall be included in the definition of Revenues and shall be deposited to the credit of the Revenue Fund.".

DD.   The last sentence of Section 903 is hereby revised by inserting the phrase "the Independent Consultant," immediately after the phrase "the Consulting Engineers,".

EE.   The first  paragraph of Section 1201is hereby revised by inserting a comma after the phrase "Time Deposits" each time said phrase appears before the words "secured in the manner" and by inserting a comma after the phrase "in Section 601 of this Agreement", which phrase appears before the words "shall be held by the Trustee".

FF.   The last paragraph of Section 1201 is hereby revised by deleting the phrase "Time Deposits or" immediately after the phrase "Government Obligations,", by inserting the phrase "Time Deposits, secured in the manner set forth in Section 601 of this Agreement," immediately after the phrase "Prerefunded Municipals," and before the comma after the word "Municipals" in said phrase and by deleting the phrase "the options or maturity extensions originally excercisable" and inserting in its place the phrase "such options or extensions".

NY1 5042112v3

Confidential
Clark N/Manage
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

confidential
Maslon EderanBorld Jchan & Brand
Aug 03, 2017 15:39

GG.     The second paragraph of Section 1305 is hereby revised by inserting the phrase "registered owners of bonds or to" immediately before the phrase "bondholders of record when".

HH.     All references throughout the Agreement to the phrase "Water Resources" are hereby changed to the phrase "Electric Power" except in the third WHEREAS clause in the preamble to the Agreement, in the seventh and eighth paragraphs of the form of coupon bonds in the preamble to the Agreement, in the definition of "Authority Act" in Section 101 and on the signature and notarization pages of the Agreement.

2.     The Eleventh Supplement is hereby amended and supplemented by revising paragraph C in Section 1 by deleting the phrase "'Executive Director'" and inserting in its place the phrase "'Designated Maturity Bonds'". The Twelfth Supplement is hereby amended and supplemented by deleting the word "Tenth" each of the four times it appears in the preamble to said Twelfth Supplement and inserting in its place the word "Twelfth". The proposed Third Supplement is hereby amended and restated in its entirety in the form attached hereto as Exhibit A.

3.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

4.     This Thirteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Thirteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Thirteenth Supplemental Agreement to be

**7**

confidential
Clark W. Mange
233
Maslon EderanBorld Jchan & Brand
Aug 03, 2017 15:39

Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be
impressed hereon and attested by one of its Trust Officers, all as of the day and year first above
written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____

Executive Director

Attest:

_____

Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By:_____

Assistant Vice President

Attest:

_____

Trust Officer

NYI 5042112v3

confidential
Clark W. Wonge
234
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Sidley

Maslon EdeRoaneBuichan & Brand
Apg 03, 2017 15:39

## PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
Vice President

Attest:

_____
Trust Officer

NY1 5042112v2

confidential
Clark McManage
235
Maslon EdeRoaneBuichan & Brand
Apg 03, 2017 15:39

confidential
Clark M Wrage
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

COMMONWEALTH OF PUERTO RICO )
                            )    ss.:
MUNICIPALITY OF SAN JUAN    )

        On the ___3rd___ day of __January__, in the year 2002, before me personally came __Hector Rosario__ to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of __San Juan__, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # _572_

NOTARY PUBLIC

(SEAL)

STATE OF NEW YORK )
                 )    ss.:
COUNTY OF NEW YORK)

        On the _____ day of _____, in the year 200_, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

9

NY1 5042112v3

confidential
Clark M Wrage
236
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

Confidential
Clark M Wragg
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

EXHIBIT A

# THIRD SUPPLEMENTAL AGREEMENT

THIS THIRD SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of January, 2002, by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formely Puerto Rico Water Resources Authority), and

## STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and Sate of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to amend the Agreement so as to provide that in conjunction with the Authority's issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the Authority's bond issued under the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Third Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Third Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Third Supplemental Agreement; and

Confidential
Clark M Wragg
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

Confidential
Parker & Zorlik
Maslon EdelRoanBordman & Brand
Aug 03, 2017 16:59

WHEREAS, the Trustee has received the written instruments from the holdes of all of the outstanding bonds spefically consenting to and approving the execution of this third Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Third Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Third Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Third Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

A.    Section 705 is hereby revised by deleting the comma after the phrase "and the bonds secured hereby upon the Revenues" and adding in its place the phrase "and except as otherwise permitted in this Agreement,".

B.    The last sentence of clause (a) of Section 712 is hereby revised by deleting the period and adding the following:

"; provided that in connection with the issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the bonds."

C.    Clause (c) of Section 1102 is hereby revised to read as follows:

" (c)   the creation of a lien upon or a pledge of the Revenues other than any lien and pledge created or permitted by this Agreement,"

2.  The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.    This Third Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Third Supplemental Agreement to be executed by its Executive Director and its

Confidential
Clark Williams
238
Maslon EdelRoanBordman & Brand
Aug 03, 2017 16:59

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N. A. has caused this Third Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC
POWER AUTHORITY

BY:_____
Executive Director

( SEAL)

Attest:

_____
Secretary

STATE STREET BANK AND TRUST
COMPANY, N.A., as Trustee

By:_____
Assistant Vice President

(SEAL)

Attest:

_____
Trust Officer

Confidential
Clark W Mercer
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

confidential
Clark Barrenger
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

COMMONWEALTH OF PUERTO RICO   )
                              )   ss:
MUNICIPALITY OF SAN JUAN      )

     On the _____ day of _____, in the year 20__, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof, that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____

                                     _____
                                          Notary Public

(SEAL)

_____

STATE OF NEW YORK     )
                      )   ss:
COUNTY OF NEW YORK    )

     On the 2ND day of JANUARY, in the year 2002, before me personally came WARD A. SPOONER, to me known, who, being by me duly sworn, did depose and say that he resides at 1 JULIET COURT OLD BRIDGE NJ 08857; the he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

                               *Carolyn R. Sinclair*
                                Notary Public

My commission expires:

(SEAL)

STATE OF NEW YORK • DEPARTMENT OF STATE
NOTARY PUBLIC IDENTIFICATION CARD

confidential
Clark Barrenger
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39
A-4
240

Confidential
Maslon EdelmanBorman & Brand
Aug 03, 2017 16:39

# FOURTEENTH SUPPLEMENTAL AGREEMENT

THIS FOURTEENTH SUPPLEMENTAL AGREEMENT, dated the 12th day of March, 2010 (the "Supplemental Agreement"), by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

## U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provisions with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to supplement the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to permit the Authority to make use of new financing techniques that are advantageous to the Authority by

Maslon EdelmanBorman & Brand
Aug 03, 2017 16:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

providing the Authority lower interest costs and to clarify how to treat certain subsidies available in connection with such new financing techniques; and

WHEREAS, it is desirable to supplement the Agreement so as to provide the Authority with the ability to utilize and take advantage of new financing techniques which are from time to time developed and to provide the Authority with the ability to issue different types of bonds, as may be marketable from time to time, including, without limitation, bonds to which the Authority irrevocably elects to apply Section 54AA of the Internal Revenue Code of 1986, as amended (the "Code") and irrevocably elects pursuant to Section 54AA(G) of the Code to receive a federal subsidy under Section 6431 ("Build America Bonds") or any other bonds for which a federal subsidy payment may be received in connection with the issuance of such bonds ("Other Subsidy Bonds" and together with the Build America Bonds ("Federally Subsidized Bonds"), and, in this regard, to supplement and amend the definition of Principal and Interest Requirements, to make certain related changes and to add a covenant that the Authority will do all things necessary and take such actions as are necessary to ensure receipt of any such federal subsidy; and

WHEREAS, the Trustee has received an opinion of counsel that this Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Supplemental Agreement to be mailed as required by the Agreement to all registered owners of bonds and to all bondholders of record at least thirty (30) days prior to the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended and supplemented in the following respects:

Confidential
Clark Whitmore
242
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

A.    Section 101 is hereby supplemented by the addition of a definition of "Build America Bonds" after the definition of "bonds", to read as follows:

The term "Build America Bonds" shall mean a series of bonds designated as "Build America Bonds" by the Authority for purposes of Section 54AA of the Code and for which the Authority has irrevocably elected pursuant to Section 54AA(g) of the Code to receive the Federal Subsidy from the United States Treasury in connection therewith under Section 6431 of the Code and apply it in accordance with the provisions of the resolution or resolutions adopted by the Board authorizing the issuance of such bonds.

B.    Section 101 is hereby supplemented by the addition of a definition of "Federally Subsidized Bonds" after the definition of "Extendible Maturity Bonds", as follows:

The term "Federally Subsidized Bonds" shall mean either Build America Bonds or Other Subsidy Bonds or both, as the case may be.

C.    Section 101 of the Agreement is hereby supplemented by the addition of the definition of "Federal Subsidy" after the definition of "Federally Subsidized Bonds", to read as follows:

The term "Federal Subsidy" shall mean a payment made by the Secretary of the Department of Treasury to or for the account of the Authority pursuant to the Code in respect of a series of bonds constituting Federally Subsidized Bonds. Any Federal Subsidy to be received by the Authority in respect of such series of bonds shall be identified as such in the resolution authorizing the issuance of such series of bonds to which it relates.

D.    Section 101 of the Agreement is hereby supplemented by the addition of the definition of "Federal Subsidy Payments" after the definition of "Federal Subsidy", to read as follows:

The term "Federal Subsidy Payments" shall mean the amount of Federal Subsidy actually paid to and received by the Trustee in respect of an interest payment for the series of Federally Subsidized Bonds to which it relates. Such Federal Subsidy Payments shall be deposited directly into the Bond Service Account in the Sinking Fund.

E.    Section 101 is hereby supplemented by the addition of a definition of "Other Subsidy Bonds" after the definition of "Opinion of Counsel", as follows:

The term "Other Subsidy Bonds" shall mean bonds for which a subsidy or other payment made by the Secretary of the Department of Treasury may be made in respect of such bonds other than under Section 6431 of the Code.

F.    The definition of "Principal and Interest Requirements" is hereby supplemented by adding the following paragraphs at the end thereof:

Confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:58

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

"For purposes of determining the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement, on the date of issuance of a Federally Subsidized Bonds and for so long as the Trustee shall receive the scheduled amount of the Federal Subsidy Payments on or before such interest is payable, all or a portion of the interest in respect of one or more series of Federally Subsidized Bonds shall be excluded from the calculation of the Principal and Interest Requirement if, and to the extent that the interest thereon is payable from a Federal Subsidy. Notwithstanding the foregoing, if the Trustee shall not receive the scheduled amount of the Federal Subsidy Payments on or before the date interest on such Federally Subsidized Bonds is payable or within thirty (30) of the date such Federal Subsidy Payments were scheduled to be received under the then current applicable law and regulations, then from and after the occurrence of such failure to receive such Federal Subsidy and until such Federal Subsidy Payments shall resume and all prior deficiencies are cured, the exclusion from the calculation of the Principal and Interest Requirement set forth in the preceding sentence shall no longer be effective for purposes of determining the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement."

G. Section 208 is hereby supplemented by the addition of a paragraph to be included after the third paragraph in said Section, as follows:

"Prior to the issuance of any Federally Subsidized Bonds, the Board shall adopt a resolution identifying the details of such bonds, including, without limitation, the rate or rates of interest to be paid on such bonds, the source or sources and the amount of the Federal Subsidy expected to be received by the Authority in respect of such Series of Federally Subsidized Bonds, whether the amounts received from such Federal Subsidy are to be pledged solely to the owners of such Series of Federally Subsidized Bonds or to the owners of all outstanding bonds and a covenant by the Authority to take such actions as are necessary to ensure receipt of such Federal Subsidy."

H. Section 209 is hereby supplemented by the addition of a paragraph to be included after the third paragraph in said Section, as follows:

"Prior to the issuance of any Federally Subsidized Bonds, the Board shall adopt a resolution identifying the details of such bonds, including, without limitation, the rate or rates of interest to be paid on such bonds, the source or sources and the amount of the Federal Subsidy expected to be received by the

Confidential
Clark & Wamsge
244
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Authority in respect of such Series of Federally Subsidized Bonds, whether the amounts received from such Federal Subsidy are to be pledged solely to the owners of such Series of Federally Subsidized Bonds or to the owners of all outstanding bonds and a covenant by the Authority to take such actions as are necessary to ensure receipt of such Federal Subsidy."

I.    The last sentence of the first paragraph of Section 507 is hereby amended by inserting the following language after the words "such Fund" and before the words "and deposit":

"(less any amount equal to the amount of Federal Subsidy Payments that have not been received as of the 25th of the month preceding the Interest Payment Date to which such Federal Subsidy Payments relate, which amount will be held in the Revenue  Fund and (x) if the Federal Subsidy Payment has not been received by the Authority by such Interest Payment Date, transferred to the Bond Service Account on the Interest Payment Date and applied to the payment of interest on Bonds or (y) if the Federal Subsidy Payment has been received by the Authority on or before such Interest Payment Date, remain on deposit in the Revenue Fund for application in accordance with the provisions below in the following calendar month)"

J.    Section 507(c) is hereby supplemented by inserting "(A)" after the word "months;" and before the word "provided" and inserting the following clause (B) at the end of such Section 507(c):

"and (B) provided, however, that in the case of Federally Subsidized Bonds, the amount of interest deemed to be payable on such bonds from the date of issuance of such Federally Subsidized Bonds and for so long as the Trustee shall receive the scheduled amount of the Federal Subsidy Payments on or before such interest shall be payable shall exclude the amount of interest to be paid from the Federal Subsidy and provided further, however, that if the Trustee shall not receive the scheduled amount of the Federal Subsidy Payments on or before the date interest on such Federally Subsidized Bonds is payable or within thirty (30) of the date such Federal Subsidy Payments were scheduled to be received under the then current applicable law and regulations, then for purposes of the calculation of interest to be credited to the Reserve Account, the amount shall be equal to the interest payable on the bonds of each Series issued hereunder within the next twelve (12) months."

K.    Article VII is hereby supplemented by the addition of a new Section 713 to read as follows:

"Section 713. With respect to Build America Bonds, the Authority hereby covenants to file, or cause to be filed, a Form 8038-CP with the Internal Revenue Service not less than 45 days and not more than 90 days prior to the date interest on the Build America Bonds shall be payable, as provided in Notice 2010-26 issued by the Internal Revenue Service, so long as filing such form is a condition

Confidential
Clark McManus
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon EderRoansBoirchan & Brand
Apg 03, 2017 15:59

to receipt of the Federal Subsidy prior to the date such interest shall be payable. In the event that the Internal Revenue Service shall amend or revise the guidance provided in Notice 2010-26, the Authority agrees that it shall take all such actions as are necessary to ensure receipt of the Federal Subsidy. With respect to Other Subsidy Bonds, the Authority hereby covenants it shall take all such actions as are necessary to ensure receipt of the Federal Subsidy related to such series of bonds as shall be set forth in the resolution relating to such Other Subsidy Bonds. The only effect of any failure to comply with this Section 713 shall be that the Federal Subsidy to which such failure relates shall no longer be excluded from the calculation of Principal and interest Requirements. "

2.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.      This Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

4.      The Trustee shall not be required to authenticate any bonds permitted by this Supplemental Agreement if the issue of such bonds will affect the Trustee's own rights, duties or immunities under the Agreement or the bonds or otherwise in a manner which is not reasonably acceptable to the Trustee.

confidential
Clark Ml/Mange
246
Maslon EderRoansBoirchan & Brand
Apg 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, this 29th day of April, 2010.

**PUERTO RICO ELECTRIC POWER AUTHORITY**

By _____
                              Executive Director

(SEAL)

Attest:

_____
                    Secretary

**U.S. BANK NATIONAL ASSOCIATION,** as Trustee

By _____
                              Vice President

(SEAL)

Attest:

_____
              Trust Officer

12921923.7

Confidential
Clark_ANW_range
247
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, this 29th day of April, 2010.

**PUERTO RICO ELECTRIC POWER AUTHORITY**

By_____

Executive Director

(SEAL)

Attest:

_____

Secretary

**U.S. BANK NATIONAL ASSOCIATION,** as Trustee

By_____

Vice President

(SEAL)

Attest:

_____

Trust Officer

12921923.7

- 7 -

confidential
Clark Williams
248
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

confidential
Maslon EdelRoansBohman & Brand
Aug 03, 2017 15:58

## FIFTEENTH SUPPLEMENTAL AGREEMENT

THIS FIFTEENTH SUPPLEMENTAL AGREEMENT, dated the 29th day of May, 2010 (the "Supplemental Agreement"), by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H :

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provisions with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to supplement the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to permit the Authority to make use of new financing techniques that are advantageous to the Authority by

confidential
Clark MWrange
249
Maslon EdelRoansBohman & Brand
Aug 03, 2017 15:58