Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

providing the Authority lower interest costs and to clarify how to treat certain subsidies available in connection with such new financing techniques; and

WHEREAS, the Authority has previously approved a supplement to the Agreement so as to provide the Authority with the ability to utilize and take advantage of new financing techniques which are from time to time developed and to provide the Authority with the ability to issue different types of bonds, as may be marketable from time to time, including, without limitation, bonds to which the Authority irrevocably elects to apply Section 54AA of the Internal Revenue Code of 1986, as amended (the "Code") and irrevocably elects pursuant to Section 54AA(G) of the Code to receive a federal subsidy under Section 6431 ("Build America Bonds") or any other bonds for which a federal subsidy payment may be received in connection with the issuance of such bonds ("Other Subsidy Bonds" and together with the Build America Bonds ("Federally Subsidized Bonds"), and, in this regard, to supplement and amend the definition of Principal and Interest Requirements, to make certain related changes and to add a covenant that the Authority will do all things necessary and take such actions as are necessary to ensure receipt of any such federal subsidy; and

WHEREAS, the Authority desires to further supplement the Agreement to ensure that sufficient funds will be available to pay interest on the Bonds in the event that a Federal Subsidy Payment is not received on or prior to the 25th day of the month preceding an Interest Payment Date; and

WHEREAS, the Trustee has received an opinion of counsel that this Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Supplemental Agreement to be mailed as required by the Agreement to all registered owners of bonds and to all bondholders of record at least thirty (30) days prior to the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:59

Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      The last sentence of the first paragraph of Section 507 is hereby amended by inserting the following language after the words "such Fund" and before the words "and deposit":

"(less any amount equal to the amount of Federal Subsidy Payments that have not been received as of the 25th of the month preceding the Interest Payment Date to which such Federal Subsidy Payments relate, which amount will be held in the Revenue Fund and (x) if the Federal Subsidy Payment has not been received by the Authority by such Interest Payment Date, transferred to the Bond Service Account on the Interest Payment Date and applied to the payment of interest on Bonds or (y) if the Federal Subsidy Payment has been received by the Authority on or before such Interest Payment Date, remain on deposit in the Revenue Fund for application in accordance with the provisions below in the following calendar month)"

confidential
Clark McWrange
Maslon Edelman Borman & Brand
Apr 03, 2017 16:59

Confidential
Maslon Edelman Borman & Brand
Apg 03, 2017 16:39

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and attested by one of its Trust Officers, this 29th day of May, 2010.

**PUERTO RICO ELECTRIC POWER AUTHORITY**

By _____
                    Executive Director

(SEAL)

Attest:

_____
                    Secretary

**U.S. BANK NATIONAL ASSOCIATION,** as Trustee

By _____
                    Vice President

Attest:

_____
                    Trust Officer

confidential
Clark N/Mange
Maslon Edelman Borman & Brand
Apg 03, 2017 16:39

Confidential
Maslon EderkanBoldran & Brand
Aug 03, 2017 15:39

# SIXTEENTH SUPPLEMENTAL AGREEMENT

THIS SIXTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the first day of August, 2014, by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

## U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Trustee has received an opinion of counsel (the "Sixteenth Supplemental Opinion") that (a) the Authority has the right, power and authority to enter into this Sixteenth Supplemental Agreement, (b) this Sixteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this Sixteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, (d) all of the conditions precedent to the execution and delivery by the Trustee of this Sixteenth Supplemental Agreement have been satisfied, and (e) this Sixteenth Supplemental Agreement (including the Authority's use of moneys on deposit in the Construction Fund and Reserve Account for

confidential
Clark W Wingate
Maslon EderkanBoldran & Brand
Aug 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 16:59

purposes that are permitted by the Agreement as amended by this Sixteenth Supplemental Agreement) will not have an adverse effect on the exclusion of interest on the outstanding bonds from gross income for federal income tax purposes; and

WHEREAS, the execution and delivery of this Sixteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Sixteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Sixteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Trustee has received written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Sixteenth Supplemental Agreement have happened, exist and have been performed as required and the Authority has delivered to the Trustee a certificate dated the date of this Sixteenth Supplemental Agreement, representing the same; and



WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Sixteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SIXTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.     The Agreement is hereby amended and supplemented in the following respects:

A.     Section 101 is hereby amended or modified by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

"The term 'Additional Construction Fund Usage' shall have the meaning given to it in Section 405.

"The term 'Ad Hoc Group' shall mean such term as defined in the Forbearance Agreement.

"The term 'Amending Creditors' shall mean Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation,

confidential
Clark M. Wiege
254
Maslon Edelman Borman & Brand
Aug 03, 2017 16:59

Confidential
Maslon EderBansBordman & Brand
Aug 03, 2017 15:39

Syncora Guarantee Inc., and the Ad Hoc Group, including successors and assigns thereof. For the purposes of this Agreement, the Trustee shall be entitled to rely on a certification of an Amending Creditor that it is an Amending Creditor.

"The term 'Amending Creditor Bonds' shall mean, with respect to any date, all outstanding bonds that are beneficially owned or (without duplication) insured by the Amending Creditors as of such date (which outstanding bonds that are beneficially owned by the Amending Creditors shall only include such bonds of which the other Amending Creditors have received written notice, which notice will be effective one (1) business day after receipt). For purposes of this Agreement, the Trustee shall be entitled to rely on a certification by an Amending Creditor that it beneficially owns or (without duplication) insures certain principal amount of outstanding bonds.

"The term 'Amendment' shall refer to this Sixteenth Supplemental Agreement, dated as of August 1, 2014, by and among the Authority and the Trustee.

"The term 'Amendment Effective Date' shall mean August 27, 2014, being the effective date of this Amendment.



"The term 'Amendment Period' shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

"The term 'Amendment Period Budget' shall mean the Initial 13-Week Cash Flow Statement or Subsequent 13-Week Budget, as applicable (each as defined in the Forbearance Agreement).

"The term 'Amendment Termination Date' shall mean the earliest of (a) the Scheduled Amendment Termination Date, (b) the filing of a proceeding by or on behalf of the Authority pursuant to the Puerto Rico Public Corporation Debt Enforcement and Recovery Act or any other action or proceeding that seeks to adjust or challenge the claims of its creditors pursuant to any federal, state, or Puerto Rico statute, now in effect or enacted after the Amendment Effective Date, and (c) the date on which (i) the "Forbearance Period" (as defined in the Forbearance Agreement) has expired or terminated, and (ii) the Trustee has received written notice from the Authority or the Required Amending Creditors confirming the same.

"The term 'Construction Fund Replenishment Amount' shall mean in respect of a Construction Fund Replenishment Date an amount equal to:

(a)     the aggregate amount of all Additional Construction Fund Usages prior to such Construction Fund Replenishment Date,

less, the sum of:

(b)     the aggregate amount that the Authority has applied to the cost of Improvements from any source other than the Construction Fund from or after the

3

confidential
Clark AAWitroge
255
Maslon EderBansBordman & Brand
Aug 03, 2017 15:39

Confidential
Maslon Ederheimer & Brand
Aug 03, 2017 15:59

Amendment Effective Date, irrespective of whether such amount has been applied prior to or after the commencement of any bankruptcy proceeding, insolvency proceeding, proceeding under the Puerto Rico Public Corporation Debt Enforcement and Recovery Act, Act No. 71-2014, or any similar proceeding, and

(c)   the aggregate amount theretofore credited to the Construction Fund by the Authority pursuant to Section 406 of this Agreement.

"The term 'Citibank/Scotiabank Forbearance Agreements' shall mean the forbearance agreements, dated August 14, 2014, by and among the Citibank/Scotiabank Lenders and the Authority, as the same may be amended from time to time as therein permitted.

"The term 'Citibank/Scotiabank Lenders' shall mean Citibank, N.A. and the Lenders (as defined in the Scotiabank Credit Agreement).

"The term 'Citibank/Scotiabank Lines of Credit' shall mean that certain Trade Finance Facility Agreement, dated as of July 20, 2012, between the Authority and Citibank, N.A. as amended or otherwise modified from time to time, and the Scotiabank Credit Agreement.

"The term 'Construction Fund Replenishment Date' shall mean the twenty-fifth (25) day of each month (or if such day is not a business day, the immediately succeeding business day) on which the Construction Fund Replenishment Amount is greater than zero.

"The term 'Forbearance Agreement' shall mean the forbearance agreement, dated August 14, 2014, by and among the Amending Creditors and the Authority, as the same may be amended from time to time as therein permitted.

"The term 'Fractional Defeasance Amount' shall mean $34,112,097.79.

"The term 'Potential Default' shall mean each of the events specified on Schedule 1, the occurrence of which would give rise to a default under this Agreement.

"The term 'Required Amending Creditors' shall mean Amending Creditors that beneficially own or (without duplication) insure not less than two-thirds (66 2/3%) of the aggregate principal amount of the Amending Creditor Bonds.

"The term 'Retained General Fund Amount' shall mean $50,000,000.

"The term 'Scheduled Amendment Termination Date' shall mean 11:59 p.m. (prevailing Eastern Time) on March 31, 2015.

"The term 'Scotiabank Credit Agreement' shall mean that certain Credit Agreement, dated as of May 4, 2012, between the Authority, as borrower, the lenders party thereto, and Scotiabank de Puerto Rico, as administrative agent, as amended or otherwise modified from time to time.

4

confidential
Clark/Murray
Maslon Ederheimer & Brand
Aug 03, 2017 15:59

Confidential
Maslon EderRosenBorchan & Brand
Aug 03, 2017 15:39

"The term 'Specified Period Principal and Interest Requirements' shall mean the Principal and Interest Requirements for all outstanding bonds which accrue and are payable on or before January 1, 2015, excluding for purposes of the calculation of such Requirements any Federal Subsidy Payments.

"The term 'Specified Period Defeasance Fund' shall have the meaning given to it in Section 517.

B.   The following definitions in Section 101 shall be amended as follows:

The following sentence shall be added at the end of the definition of 'Current Expenses':

"Notwithstanding the foregoing or anything herein to the contrary, none of the holders, the Trustee, and the Authority shall contest whether an expense, claim, liability, or amount shall be construed as a Current Expense under this Agreement based solely on (x) the Citibank/Scotiabank Lenders' actions on the Amendment Effective Date or during the Amendment Period, including (i) forbearing, delaying or failing to exercise remedies, (ii) agreeing to a postponement or delay in payment of interest or principal, (iii) granting an extension of any maturity date, or (iv) not requiring the repayment or reborrowing of any loans or not requiring any loans to be revolving loans, or (y) the inclusion in this Agreement as a Potential Default, and the inclusion in the Forbearance Agreement as a "Potential Default" (as defined in the Forbearance Agreement) of the Authority's use of moneys from the General Fund to service its debts under the Citibank/Scotiabank Lines of Credit."

The last sentence of "Reserve Account Insurance Policy" shall be deleted and replaced with the following:

"The issuer providing such insurance shall be a municipal bond insurer that is rated, at the time of deposit into the Reserve Account, in one of the three highest rating categories (without regard to gradations within a category) by either (i) Standard & Poor's Corporation or its successor, or Moody's Investors Service, Inc. or its successors or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency."

C.   Section 401 shall be amended by the addition of the following paragraph immediately preceding Section 402:

"Notwithstanding the foregoing, during the Amendment Period, moneys in the Construction Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied:

(a)   to the payment of the cost of any Improvements, provided that such cost is in accordance with the Amendment Period Budget, inclusive of any permitted variances specified in the Forbearance Agreement; or

5

Confidential
Maslon EderRosenBchran & Brand
Aug 03, 2017 16:39

(b)      as provided in Section 405;

and, except for any moneys in separate accounts in the Construction Fund received from the United States Government or any agency thereof or from the Commonwealth of Puerto Rico or any agency thereof, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided."

D.      Section 402 shall be amended to read as follows:

"Section 402. <u>Payments from Construction Fund</u>. Payment of the cost of Improvements or any other payment permitted pursuant to Section 401 shall be made from the Construction Fund as herein provided. Moneys in the Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by the Executive Director or by any officer or employee of the Authority designated by him for such purpose."

E.      A new Section 405 shall be added immediately preceding Section 406 to read as follows:

"Section 405. <u>Additional application of moneys in Construction Fund</u>. During the Amendment Period, the Authority may apply moneys in the Construction Fund to the payment of the cost of any Current Expense that is not a cost of Improvement (each such application, an "Additional Construction Fund Usage"), provided that:

(a)      there are not sufficient moneys to pay such Current Expense held by the Authority in the General Fund in excess of the Retained General Fund Amount on the date such payment is required;

(b)      the representations of the Authority given in Section 3(b) of the Forbearance Agreement are true and correct as of the date of such application;

(c)      such Current Expense is in accordance with the Amendment Period Budget in effect at the time of such payment, inclusive of any permitted variances specified in the Forbearance Agreement;

(d)      none of the material facts that formed the basis for the officer's certificate delivered by the Authority in connection with the Sixteenth Supplemental Opinion has changed since the date of such certification and the Current Expense to be paid with such Additional Construction Fund Usage is in compliance with the covenants of the Authority in such certification; and

(e)      the Trustee and the Amending Creditors receive a certification from the Authority (in the form of Exhibit A hereto) specifying the amount of moneys to be applied and the Current Expenses to be paid with such moneys, and certifying that the statements in paragraphs (a) through (d) above are true as of the date of the certification, signed by the Executive Director or by any other officer or employee of the Authority with fiscal authority, designated by the Executive Director for such purpose. The Trustee shall have no duty to review any such certification for any purpose, except to confirm that a certification has been made, and

6

Maslon EderRosenBorchan & Brand
Apg 03, 2017 19:39
Confidential

the Trustee shall be authorized to provide any requesting bondholder with a copy of any such certifications received."

      F.    A new Section 406 shall be added immediately preceding Article V to read as follows:

      "Section 406.  <u>Replenishment of the Construction Fund</u>.  On any Construction Fund Replenishment Date, to the extent that moneys in the General Fund exceed the Retained General Fund Amount, the Authority shall transfer from the General Fund to the credit of the Construction Fund an amount equal to the lesser of (x) the excess over the Retained General Fund Amount and (y) the Construction Fund Replenishment Amount, in accordance with Section 505 of this Agreement."

      G.    Section 502 is hereby amended by the addition of the following paragraph immediately prior to Section 503 to read as follows:

      "Notwithstanding the foregoing, during the Amendment Period, in the event that the Authority shall fail to adjust the schedule of rates and charges in accordance with the provisions of this Section, the Trustee, without regard to whether an event of default, as defined in Article VIII of this Agreement, shall have occurred, shall, upon the request of the holders of a majority in principal amount of all bonds then outstanding upon being indemnified to its satisfaction, institute and prosecute in a court of competent jurisdiction an appropriate suit, action or proceeding to compel the Authority to adjust such schedule in accordance with the requirements of this Section, and the Authority covenants that it will adopt and charge rates and charges in compliance with any judgment, order or decree entered in any such suit, action or proceeding."

      H.    Section 505 shall be amended by the addition of the following sentence immediately prior to Section 506 to read as follows:

      "On each Construction Fund Replenishment Date, the Authority shall apply moneys credited to the General Fund to satisfy its replenishment obligation under Section 406 prior to using such moneys for the payment of Current Expenses. Notwithstanding anything in this Agreement to the contrary, after the Amendment Period, the obligation to replenish the Construction Fund in accordance with Section 406 shall be junior and subject to the obligation to pay Current Expenses in accordance with this Section 505 and to transfer moneys from the General Fund to the Revenue Fund in accordance with Section 506 of this Agreement until the bonds are paid or deemed paid in full under the provisions of this Agreement."

      I.    The second sentence of Section 506 shall be amended by the addition of the following language at the beginning of such sentence:

      "Other than during the Amendment Period,"

      J.    A new Section 510A shall be added as follows:

      "Section 510A.  <u>Additional application of moneys in Reserve Account</u>. Notwithstanding the provisions of Section 510 of this Agreement, on the Amendment Effective

7

Maslon EderRosenBorchan & Brand
Apg 03, 2017 19:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

Date and on the first (1st) business day of each month thereafter through and including December 1, 2014, the Trustee shall withdraw the Fractional Defeasance Amount from the Reserve Account, and credit this amount to the Specified Period Defeasance Fund; provided, however, that if the Amendment Effective Date occurs on or after September 1, 2014, the Trustee shall withdraw two times the Fractional Defeasance Amount on the Amendment Effective Date.

   K. A new Section 517 shall be added as follows:

   "Specified Period  Principal and Interest Requirements Defeasance.  A special fund within the Reserve Account is hereby created and designated the "Puerto Rico Electric Power Authority Revenue Bonds Specified Period Defeasance Fund" (herein sometimes called the "Specified Period Defeasance Fund") to be held by the Trustee separate and apart from all other funds and accounts held under this Agreement.  The transfer of moneys from the Reserve Account to the Specified Period Defeasance Fund in accordance with Section 510A hereof shall constitute an irrevocable deposit of such moneys in trust solely for the purpose of paying the Specified Period Principal and Interest Requirements, and such moneys will not constitute property of the Authority.  Upon such transfer and deposit to the Specified Period Defeasance Fund, the obligation of the Authority to pay the Specified Period Principal and Interest Requirements will be discharged to the extent of each such deposit, and the sole recourse of the holders of outstanding bonds in respect of the portion of the Specified Period Principal and Interest Requirements equal to the aggregate of amounts so deposited shall be to the amounts then to the credit of the Specified Period Defeasance Fund. The transfer and deposit set forth above shall not in any way affect the obligations of the Authority to pay the Principal and Interest Requirements with respect to the outstanding bonds other than the obligation to pay the portion of the Specified Period Principal and Interest Requirements equal to the aggregate of the amounts that are credited to the Specified Period Defeasance Fund. On each date on which any Specified Period Principal and Interest Requirements are payable, the Trustee shall apply moneys in the Specified Period Defeasance Fund to pay the Specified Period Principal and Interest Requirements that are payable on such date.  Any amounts remaining in the Specified Period Defeasance Fund after all Specified Period Principal and Interest Requirements are paid in full shall be transferred to the Reserve Account.  Moneys held in the Special Period Defeasance Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Trustee in Government Obligations which shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held in said Fund will be required for the purposes intended."

   L. Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

   "provided, however, that during the Amendment Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

8

confidential
Clark W/Wrege
260
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

M.    The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

"provided, further, that during the Amendment Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

2.    The modifications to the Agreement contained in this Sixteenth Supplemental Agreement shall remain in effect only during the Amendment Period and shall terminate automatically on the Amendment Termination Date, except (a) the amendments in Section 1.F. and Section 1.H., and any related definitions, which will continue in effect until the replenishment obligations in Section 406 of the Agreement are satisfied in full and (b) Section 1.B and 1.K., and any related definitions, which will continue in effect until all series of bonds outstanding under the Agreement have been paid or deemed paid in full in accordance with the Agreement.  The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of any Amendment Termination Date and the basis therefor.

3.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

4.    This Sixteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

5.    Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

confidential
Clark W Wrage
261
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Sixteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Sixteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

10

confidential
Clark W. Wrage
262
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Sixteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Sixteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

10

confidential
Clark Williams
263
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

COMMONWEALTH OF PUERTO RICO   )
                                                          )   ss.:
MUNICIPALITY OF SAN JUAN        )

*Juan Francisco Alicea Flores*, On the 27th day of August, in the year 2014, before me personally came to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Caguas, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 3,370

                                                         NOTARY PUBLIC

My commission expires: N/A

(SEAL)

STATE OF NEW YORK    )
                                             )   ss.:
COUNTY OF NEW YORK)

                On the _____ day of _____, in  the year 2014, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is an Assistant Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that he knows the seal of said association; that the seal affixed to said instrument is the corporate seal of said association; that it was so affixed by authority of Board of Directors of said association; and that he signed his name thereto by like authority.

                                         _____
                                          NOTARY PUBLIC

My commission expires:

(SEAL)

11

confidential
Clark Whitmore
264
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

COMMONWEALTH OF PUERTO RICO   )

)   ss.:

MUNICIPALITY OF SAN JUAN   )

On the _____ day of _____, in the year 2014, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.


Affidavit #_____                    _____

                                    NOTARY PUBLIC

My commission expires:


(SEAL)


                Minnesota
STATE OF NEW YORK        )
                Ramsey
COUNTY OF NEW YORK)      )   ss.:

On the 29th day of August, in the year 2014, before me personally came Julie J. Broker, to me known, who, being by me duly sworn, did depose and say that she resides at St Paul, Minnesota; that she is an Assistant Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she knows the seal of said association; that the seal affixed to said instrument is the corporate seal of said association; that it was so affixed by authority of Board of Directors of said association; and that she signed his name thereto by like authority.

                        Christopher Wood
                    _____
                    NOTARY PUBLIC

My commission expires:


(SEAL)         ┌────────────────────────┐
               │  CHRISTOPHER WOOD       │
               │  NOTARY PUBLIC · MINNESOTA │
               │  My Commission Expires Jan. 31, 2015 │
               └────────────────────────┘


                        11

confidential
Clark Winnage
265
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

## Schedule 1

1. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 501 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to establish and enforce reasonable regulations in relation to the collection of bills for services and facilities provided by PREPA.

2. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 502 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to revise the rates and charges for the services and facilities furnished by PREPA, or the result of PREPA's failure to revise its regulations in relation to the collection of bills for such services and facilities.

3. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 503 or section 505 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's use of monies from the General Fund to service its debt under the Citibank/Scotiabank Lines of Credit.

4. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 504 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to adopt and file a budget that is consistent with the procedural and/or substantive requirements of section 504.

5. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 506 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the General Fund to the Revenue Fund in a manner consistent with section 506.

6. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 507 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the Revenue Fund to the Sinking Fund in a manner consistent with section 507.

7. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 702 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to operate in an efficient and economical manner, maintain the system in good repair and sound operating condition (including by making all necessary repairs, renewals and replacements), or as a result of PREPA's employment of more persons than are necessary and compliance with all valid and applicable rules, regulations, and orders.

confidential
Clark McVinnie
266
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

8.    Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to keep accurate records or complete and file its audited financial statements within the time periods specified in section 710 of the Trust Agreement.

2

confidential
Clark McWherter
267
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

**Exhibit A – Form of Certification**

confidential
Clark W. Wiinge
268
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

Maslon Edelman Borman & Brand
Confidential
Apr 03, 2017 15:39

## CERTIFICATION OF ADDITIONAL CONSTRUCTION FUND USAGE

To:     THE TRUSTEE

        THE AMENDING CREDITORS

From:   PUERTO RICO ELECTRIC POWER AUTHORITY

Date:   [     ]

Trust Agreement, dated as of January 1, 1974, as amended, restated, supplemented or otherwise modified from time to time, between Puerto Rico Electric Power Authority (the "Authority") and U.S. Bank, as successor trustee (the "Trustee" and, with respect to said trust agreement, as amended, the "Trust Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Trust Agreement.

1. We refer to the Trust Agreement. This is a certification of Additional Construction Fund Usage (as defined below).

2. The Authority wishes to apply moneys in the Construction Fund to the payment of the cost of any Current Expense that is not a cost of Improvement (each such application, an "Additional Construction Fund Usage") on the following terms:

    a.   Date of application: [     ]

    b.   Amount to be applied from the Construction Fund: U.S.$[          ]

    c.   Current Expense to be paid:  [          ]

3. There are not sufficient moneys to pay such Current Expense held by the Authority in the General Fund in excess of the Retained General Fund Amount on the date such payment is required.

4. The representations of the Authority given in Section 3(b) of the Forbearance Agreement are true and correct as of the date of such application.

5. Such Current Expense is contemplated by the Amendment Period Budget currently in effect, inclusive of any permitted variances.

6. None of the material facts that formed the basis for the officer's certificate delivered by the Authority in connection with the Sixteenth Supplemental Opinion has changed since the date of such certification and the Current Expense to be paid with the Additional Construction Fund Usage set forth above is in compliance with the covenants of the Authority in such certification.

PUERTO RICO ELECTRIC POWER AUTHORITY

By:     _____
        Name:
        Title:

confidential
Clark Witmer
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

*Execution version*

## SEVENTEENTH SUPPLEMENTAL AGREEMENT

THIS SEVENTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of July, 2015, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provision for certain actions to be undertaken consistent with Amendment No. 6 to the Forbearance Agreement, dated June 30, 2015 ("Amendment No. 6" and the Forbearance Agreement, dated as of August 14, 2014, as amended, supplemented or otherwise modified from time to time, including by Amendment No. 1, dated March 30, 2015, Amendment No. 2, dated April 15, 2015, Amendment No. 3, dated April 30, 2015, Amendment No. 4, dated June 4, 2015, Amendment No. 5, dated June 18, 2015 and Amendment No. 6, by and among the Authority and the Forbearing Creditors defined therein, the "Forbearance Agreement"), by and among the Authority and the Forbearing Creditors; and

ACTIVE 202749702v.8

confidential
Clark McWane
270
Maslon Edelman Borman & Brand
Aug 03, 2017 15:59

Confidential
Maslon EderⁱʳᵃˡⁱeᵗᵃˡBordman & Brand
Aug 03, 2017 16:39

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this Seventeenth Supplemental Agreement, (b) this Seventeenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this Seventeenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this Seventeenth Supplemental Agreement have been satisfied; and

WHEREAS, the execution and delivery of this Seventeenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Seventeenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Seventeenth Supplemental Agreement have been satisfied; and

WHEREAS, the Trustee has received written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Seventeenth Supplemental Agreement have happened, exist and have been performed as required and the Authority has delivered to the Trustee a certificate dated the date of this Seventeenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Seventeenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SEVENTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby amended or modified by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

2

confidential
Clark NYMhrage
271
Maslon EderⁱʳᵃˡⁱeᵗᵃˡBordman & Brand
Aug 03, 2017 16:39

Confidential
Maslon EderFreisBorndan & Brand
Aug 03, 2017 15:39

The term "Ad Hoc Group" shall mean such term as defined in the Forbearance Agreement.

The term "Amending Creditors" shall mean Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Syncora Guarantee Inc., and the Ad Hoc Group, including successors and assigns thereof. For the purposes of this Agreement, the Trustee shall be entitled to rely on a certification of an Amending Creditor that it is an Amending Creditor.

The term "Amending Creditor Bonds" shall mean, with respect to any date, all outstanding bonds that are beneficially owned or (without duplication) insured by the Amending Creditors as of such date (which outstanding bonds that are beneficially owned by the Amending Creditors shall only include such bonds of which the other Amending Creditors have received written notice, which notice will be effective one (1) business day after receipt). For purposes of this Agreement, the Trustee shall be entitled to rely on a certification by an Amending Creditor that it beneficially owns or (without duplication) insures certain principal amount of outstanding bonds.

The term "Amendment" shall refer to the Seventeenth Supplemental Agreement, dated as of July 1, 2015, by and between the Authority and the Trustee.

The term "Amendment Effective Date" shall mean July 30, 2015, being the effective date of the Amendment.

The term "Amendment Period" shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

The term "Amendment Termination Date" shall mean the earliest of (a) the Scheduled Amendment Termination Date, (b) the filing of a proceeding by or on behalf of the Authority pursuant to the Puerto Rico Public Corporation Debt Enforcement and Recovery Act or any other action or proceeding that seeks to adjust or challenge the claims of its creditors pursuant to any federal, state, or Puerto Rico statute, now in effect or enacted after the Amendment Effective Date, and (c) date on which (i) the "Forbearance Period" (as defined in the Forbearance Agreement) has expired or terminated, and (ii) the Trustee has received written notice from the Authority or any Forbearing Creditor (as defined in the Forbearance Agreement) confirming the same.

The term "Citibank/Scotiabank Forbearance Agreements" shall mean the forbearance agreements, dated August 14, 2014, by and among the Citibank/Scotiabank Lenders and the Authority, as the same may be amended from time to time as therein permitted.

The term "Citibank/Scotiabank Lenders" shall mean Citibank, N.A. or its transferees, as applicable, and the Lenders (as defined in the Scotiabank Credit Agreement).

The term "Citibank/Scotiabank Lines of Credit" shall mean that certain Trade Finance Facility Agreement, dated as of July 20, 2012, between the Authority and Citibank, N.A. or its transferees, as applicable, as amended or otherwise modified from time to time, and the Scotiabank Credit Agreement.

3

confidential
ClarkNWMrage
272
Maslon EderFreisBorndan & Brand
Aug 03, 2017 15:39

Confidential
Maslon EderasonBoildman & Brand
Aug 03, 2017 15:59

The term "Forbearance Agreement" shall have the meaning set forth in the third recital of the Seventeenth Supplemental Agreement.

The term "Potential Default" shall mean each of the events specified on Schedule 1, the occurrence of which would give rise to a default under this Agreement.

The term "Scheduled Amendment Termination Date" shall mean 11:59 p.m. (prevailing Eastern Time) on September 15, 2015.

The term "Scotiabank Credit Agreement" shall mean that certain Credit Agreement, dated as of May 4, 2012, between the Authority, as borrower, the lenders party thereto, and Scotiabank de Puerto Rico, as administrative agent, as amended or otherwise modified from time to time.

The term "Series 2015A Bonds" shall mean the Authority's Power Revenue Bonds, Series 2015A, issued pursuant to Resolution 4239, adopted by the Authority on June 30, 2015, as supplemented by Resolution No. 4246, adopted by the Authority on July 30, 2015.

The term "Series 2015A Bonds Period" shall mean the period from the date the Series 2015A Bonds are issued until such date as the Series 2015A Bonds have been paid in full or provision has been made for their payment in full in accordance with their terms and the terms of this Agreement."

B.      The following sentence shall be added at the end of the definition of "Current Expenses" in Section 101:

"Notwithstanding the foregoing or anything herein to the contrary, none of the holders, the Trustee, and the Authority shall contest whether an expense, claim, liability, or amount shall be construed as a Current Expense under this Agreement based solely on (x) the Citibank/Scotiabank Lenders' actions on the Amendment Effective Date or during the Amendment Period, including (i) forbearing, delaying or failing to exercise remedies, (ii) agreeing to a postponement or delay in payment of interest or principal, (iii) granting an extension of any maturity date, or (iv) not requiring the repayment or reborrowing of any loans or not requiring any loans to be revolving loans, or (y) the inclusion in this Agreement as a Potential Default, and the inclusion in the Forbearance Agreement as a "Potential Default" (as defined in the Forbearance Agreement) of the Authority's use of moneys from the General Fund to service its debts under the Citibank/Scotiabank Lines of Credit."

C.      Section 209 is hereby supplemented (1) by the addition of the following words in the fifth paragraph of said Section 209 immediately after the words "with the Trustee the following" and prior to the colon the following words "; provided, however, that the certificate referred to in clause (c) below shall not be required to be delivered in connection with the issuance of the Series 2015A Bonds" and (2) by the addition in the third to last full paragraph immediately after the words "one hundred and twenty per centum (120%)" the words ", provided, however, that such requirement shall not apply in connection with the issuance of the Series 2015A Bonds."

ACTIVE 202749702v.8

confidential
Clark McVierge
273
Maslon EderasonBoildman & Brand
Aug 03, 2017 15:59

Confidential
Maslon EderBrandshican & Brand
Aug 03, 2017 15:39

D.    Section 502 is hereby amended by the addition of the following language in the fourth paragraph immediately before the period:

"‚ provided that during the Amendment Period, the Trustee may institute and prosecute such suit, action or proceeding only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

E.    Section 506 is hereby amended by deleting the first word of the second sentence of said Section and replacing it with "Other than during the Amendment Period, after".

F.    The last paragraph of Section 507 is hereby amended by the addition of the following language in the first sentence after the second use of the word "Authority" immediately before the comma:

"(except that during the Series 2015A Bonds Period the moneys in the Self-insurance Fund shall be held by the Trustee in trust)"

G.    Section 512A is hereby amended by adding the following after the last paragraph thereof:

"Notwithstanding the foregoing, during the Series 2015A Bonds Period, if the Authority has failed to make a deposit to the Series 2015A Bonds Special Redemption Fund in the amount, and during the period provided in that certain Bond Purchase Agreement, dated as of June 30, 2015, by and among the Authority and the purchasers party thereto, the Trustee shall withdraw from the Self-insurance Fund and deposit to the credit of the Series 2015A Bonds Special Redemption Fund, upon the instruction of the Authority, an amount sufficient to make up such deficiency."

H.    A new Section 518 shall be added as follows:

"Section 518. Series 2015A Bonds Special Redemption Fund. A special fund is hereby created and designated the "Puerto Rico Electric Power Authority Series 2015A Bonds Special Redemption Fund" (herein sometimes called the "Series 2015A Bonds Special Redemption Fund") to be held by the Trustee solely for the benefit of the holders of the Series 2015A Bonds separate and apart from all other funds and accounts held under this Agreement. Moneys in the Series 2015A Bonds Special Redemption Fund shall be used solely to (i) pay interest on the Series 2015A Bonds, (ii) at the option of the Authority redeem the Series 2015A Bonds in part on the first business day of August, September, October, November or December, 2015 or in whole on December 15, 2015 in the manner specified in the Series 2015A Bonds, and (ii) be applied to the maturity of the Series 2015A Bonds in whole on January 1, 2016. Any amounts remaining in the Series 2015A Bonds Special Redemption Fund after the Series 2015A Bonds are paid or deemed paid in full shall be transferred by the Trustee at the direction of the Authority in its discretion."

ACTIVE 202749702v.8

confidential
Clark NVMange
274
Maslon EderBrandshican & Brand
Aug 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

I.     The second paragraph of Section 602 is hereby amended in its entirety to read as follows:

> "Moneys held for the credit of the Construction Fund and the Reserve Maintenance Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Authority in Investment Obligations, and moneys held for the credit of the Self-insurance Fund shall, as nearly as may be practicable, be continuously invested and reinvested during the Series 2015A Bonds Period by the Trustee pursuant to the investment requirements set forth in the last sentence of this paragraph (and thereafter by the Authority) in Investment Obligations, and moneys held for the credit of the Revenue Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Authority in Government Obligations, which Investment Obligations and Government Obligations shall mature, or shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Funds will be required for the purposes intended, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above. With respect to the Trustee's investment of monies in the Self-insurance Fund during the Series 2015A Bonds Period, the Trustee shall liquidate the current investments held therein and reinvest all such amounts (a) in Government Obligations, or (b) in such Investment Obligations and in such amounts as the Trustee may be instructed from time to time pursuant to a mutual written direction signed by the Authority and the majority of the Forbearing Creditors; and the Trustee shall not in any manner be liable or responsible for any investment losses or expenses occurring as a result of its compliance with the foregoing investment requirements."

J.     The fifth paragraph of Section 602 is hereby amended by deleting the word "Authority" each time it appears in said paragraph or sentence, as the case may be, and inserting in lieu thereof the words "Trustee in its sole discretion during the Series 2015A Bonds Period (and thereafter the Authority)".

K.     The first sentence of the sixth paragraph and seventh paragraph of Section 602 is hereby amended by deleting the first word "Prior" and inserting in lieu thereof "After the Series 2015A Bonds Period, prior".

L.     The penultimate paragraph of Section 602 is hereby amended by deleting the first word "The" and inserting in lieu thereof "After the Series 2015A Bonds Period, the".

M.     Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

> "provided, however, that during the Amendment Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

ACTIVE 202749702v.8

confidential
Clark N. Wrage
275
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

N.     The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

", provided, further, that during the Amendment Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

2.     The modifications to the Agreement contained in this Seventeenth Supplemental Agreement shall remain in effect only during the Amendment Period or the Series 2015A Bonds Period, as applicable, and shall terminate automatically on the Amendment Termination Date, except (i) Sections 1.B and 1.C, and any related definitions, which will continue in effect until all series of bonds outstanding under the Agreement have been paid or deemed paid in full in accordance with the Agreement and (ii) Sections 1.F, G, H, I, J, K and L, and any related definitions, which will continue in effect during the Series 2015A Bonds Period.  The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

3.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

4.     This Seventeenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

5.     Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

7

confidential
Clark/McManus
276
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

COMMONWEALTH OF PUERTO RICO   )

)      ss.:

MUNICIPALITY OF SAN JUAN   )

On the 28th day of July, in the year 2015, before me personally came Carlos Javier Castro Montalvo, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Guaynabo, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

Affidavit # 1760

My commission expires: N/A

(SEAL)

STATE OF NEW YORK   )

)      ss.:

COUNTY OF NEW YORK)

On the _____ day of _____, in the year 2015, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is an Assistant Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that he knows the seal of said association; that the seal affixed to said instrument is the corporate seal of said association; that it was so affixed by authority of Board of Directors of said association; and that he signed his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

ACTIVE 202749702v.7

Confidential
Maslon Edelman Borman & Brand
Apg 03, 2017 16:39

      IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Seventeenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Seventeenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

(SEAL)

PUERTO RICO ELECTRIC POWER AUTHORITY

By:_____

Executive Director

Attest:

_____

Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____

Vice President

Attest:

_____

Trust Officer

ACTIVE 202749702v.7

confidential
Clark McWeeny
278
Maslon Edelman Borman & Brand
Apg 03, 2017 16:39

Maslon Ederheans Borchan & Brand
Apg 03, 2017 15:39
Confidential

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Seventeenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Seventeenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By: Julie J. Becker
Vice President

Attest:

Vice President

confidential
Clark W Wange
Maslon Ederheans Borchan & Brand
Apg 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

Dated this 30th day of July, 2015

Name: Julie J. Becker
Vice President

STATE OF MINNESOTA    )
                      )     : ss.
COUNTY OF RAMSEY      )

On the 30th day of July, 2015, before me personally came Julie J. Becker, to me known who, being by me duly sworn, did depose and say that she resides at St. Paul, Minnesota; that she is a Vice President of U.S. Bank National Association; and that she signed her name to the above instrument.

Jennifer W. Scobie

My Commission expires: Jan 31, 2017

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

2

confidential
Clark W/Mirage
280
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

Confidential
Maslon Ederheimer Boardman & Brand
Aug 03, 2017 15:59

## Schedule 1

1.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 501 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to establish and enforce reasonable regulations in relation to the collection of bills for services and facilities provided by PREPA.

2.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 502 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to revise the rates and charges for the services and facilities furnished by PREPA, or the result of PREPA's failure to revise its regulations in relation to the collection of bills for such services and facilities.

3.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 503 or section 505 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's use of monies from the General Fund to service its debt under the Citibank/Scotiabank Lines of Credit.

4.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 504 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to adopt and file a budget that is consistent with the procedural and/or substantive requirements of section 504.

5.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 506 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the General Fund to the Revenue Fund in a manner consistent with section 506.

6.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 507 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the Revenue Fund to the Sinking Fund in a manner consistent with section 507.

7.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 702 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to operate in an efficient and economical manner, maintain the system in good repair and sound operating condition (including by making all necessary repairs, renewals and replacements), or as a result of PREPA's employment of more persons than are necessary and compliance with all valid and applicable rules, regulations, and orders.

ACTIVE 202749702v.8

confidential
Clark W. Wrage
Maslon Ederheimer Boardman & Brand
Aug 03, 2017 15:59

Confidential
Maslon EdelmansDorman & Brand
Aug 03, 2017 15:39

8.     Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to keep accurate records or complete and file its audited financial statements within the time periods specified in section 710 of the Trust Agreement.

ACTIVE 202749702v.8

confidential
Clark Village
282
Maslon EdelmansDorman & Brand
Aug 03, 2017 15:39

(5)

**CERTIFICATE AS TO EIGHTEENTH SUPPLEMENTAL AGREEMENT**

I, Ivelisse C. Sánchez Soultaire, Secretary of Puerto Rico Electric Power Authority (the

"Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the

Eighteenth Supplemental Agreement, dated as of March 1, 2016, which is substantially the same

as the Eighteenth Supplemental Agreement which was presented at the meeting of the Authority

duly called and held on March 15, 2016, and which was approved by the Authority by resolution

duly adopted at said meeting.

WITNESS my hand this 16th day of March, 2016.

_____
Secretary
Puerto Rico Electric Power Authority

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

*Execution Version*

# EIGHTEENTH SUPPLEMENTAL AGREEMENT

THIS EIGHTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of March, 2016, by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

## U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974 (as amended from time to time, the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provision for certain actions to be undertaken consistent with the Restructuring Support Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "RSA"), by and among the Authority and the Supporting Creditors defined therein, and the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016, by and among the Authority and the Purchasers defined therein (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "BPA"); true and complete copies of the RSA and BPA are respectively attached hereto as *Attachment A* and *Attachment B*; and

confidential
Clark/Wrage
284
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon Ederheimer Borich & Brand
Apr 03, 2017 15:59

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this Eighteenth Supplemental Agreement, (b) this Eighteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this Eighteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this Eighteenth Supplemental Agreement, including such consents, have been satisfied; and

WHEREAS, the execution and delivery of this Eighteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Eighteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Eighteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Authority has delivered to the Trustee written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Eighteenth Supplemental Agreement have happened, exist and have been performed as required, and the Authority has delivered to the Trustee a certificate dated the date of this Eighteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Eighteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS EIGHTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby amended or modified for purposes of implementing this Eighteenth Supplemental Agreement by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

The term "Ad Hoc Group" shall mean such term as defined in the RSA.

2

confidential
Clark/Wrage
Maslon Ederheimer Borich & Brand
Apr 03, 2017 15:59

Confidential
Maslon Ederer Directan & Brand
Apr 03, 2017 15:39

The term "Amending Creditors" shall mean Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Solus (solely in its capacity as a bondholder), the Ad Hoc Group and any other Holder (as defined in the RSA), including successors and assigns thereof.  For purposes of this Agreement, the Trustee shall be entitled to rely on a certification of any person or entity that it is an Amending Creditor.

The term "Amendment Effective Date" shall mean March 16, 2016, being the effective date of the Eighteenth Amendment.

The term "Amendment Period" shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

The term "Amendment Termination Date" shall mean the earliest of (a) the Scheduled Amendment Termination Date, (b) the date on which (i) the "Support Period" (as defined in the RSA) has expired or terminated in accordance with the terms of the RSA (including expiration or termination as a result of withdrawal by the relevant Supporting Creditors from the RSA) as to any Supporting Creditor Class or as to any Insurer (as defined in the RSA), and whether such termination or expiration occurred on, before or after the date of the Eighteenth Amendment, and (ii) the Trustee has received written notice from the Authority or any Supporting Creditor (as defined in the RSA) or former Supporting Creditor confirming the same, and (c) the filing of a proceeding by or on behalf of the Authority pursuant to the Puerto Rico Public Corporation Debt Enforcement and Recovery Act, title 11 of the U.S. Code, or any other any bankruptcy or insolvency law, or the commencement of any other action or proceeding that seeks to adjust, extend or challenge the claims of creditors pursuant to any federal, state or Puerto Rico statute, now in effect or hereinafter enacted.  Upon the occurrence of the date described in clause (b)(i) of this definition, the Authority shall promptly, and in any event within 2 business days thereof, provide written notice to the Trustee confirming such occurrence.  For purposes of this Agreement, the Trustee shall be entitled to rely on a certification of any person or entity that it is a Supporting Creditor or former Supporting Creditor, as applicable.

The term "Approved Costs of Improvements" shall mean the Approved Initial Costs of Improvements and any other costs of Improvements (and of extensions of the System) which the Required Amending Creditors or their respective advisors have confirmed are reasonably acceptable (or which have been deemed reasonably acceptable to the Required Amending Creditors in accordance with clause (3) of Section 505) and regarding which the Authority provided written certification to the Trustee and the Required Amending Creditors or their respective advisors, that such costs of Improvements (and of extensions of the System) are or are deemed to be reasonably acceptable to the Required Amending Creditors or their respective advisors.

The term "Approved Initial Costs of Improvements" shall mean the costs of Improvements (and of extensions of the System) specified in the initial schedule approved by the Required Amending Creditors pursuant to Section 505.

The term "BPA" shall have the meaning set forth in the third recital of the Eighteenth Amendment.

confidential
Clark McVerage
286
Maslon Ederer Directan & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

The term "Eighteenth Amendment" shall refer to the Eighteenth Supplemental Agreement, dated as of March 1, 2016, by and between the Authority and the Trustee.

The term "Initial Improvements Period" shall have the meaning given to it in Section 505.

The term "Potential Default" shall mean each of the events specified on Schedule 1, the occurrence of which would give rise to a default under this Agreement.

The term "Required Amending Creditor Group" refers individually to each of (i) Assured Guaranty Corp. and Assured Guaranty Municipal Corp., (ii) National Public Finance Guarantee Corporation, or, (iii) at any given time, Holders (as defined in the RSA) that (A) are party to the RSA, and (B) in the aggregate beneficially own a majority of the aggregate principal amount of Uninsured Bonds (as that term is defined in the RSA) beneficially owned by Holders (as defined in the RSA) then party to the RSA.

The term "Required Amending Creditors" shall mean (i) Assured Guaranty Corp. and Assured Guaranty Municipal Corp., (ii) National Public Finance Guarantee Corporation, and, (iii) at any given time, Holders (as defined in the RSA) that (A) are party to the RSA, and (B) in the aggregate beneficially own a majority of the aggregate principal amount of Uninsured Bonds (as that term is defined in the RSA) beneficially owned by Holders (as defined in the RSA) then party to the RSA.

The term "RSA" shall have the meaning set forth in the third recital of the Eighteenth Amendment.

The term "Scheduled Amendment Termination Date" shall mean 11:59 p.m. (prevailing Eastern Time) on June 30, 2016.

The term "Scotiabank Credit Agreement" shall mean that certain Credit Agreement, dated as of May 4, 2012, between the Authority, as borrower, the lenders party thereto, and Scotiabank de Puerto Rico, as administrative agent, as amended or otherwise modified from time to time.

The term "Series 2016 Bonds" shall mean collectively the Authority's Power Revenue Bonds, Series 2016A, and Power Revenue Bonds, Series 2016B, issued at one time or at two separate times pursuant to Resolution 4338, adopted by the Authority on March 15, 2016 and sold pursuant to the BPA.

The term "Solus" shall have the meaning given such term in the RSA.

The term "Solus Credit Agreement" shall mean that certain Trade Finance Facility Agreement, dated as of July 20, 2012, between the Authority and Citibank, N.A. or its transferees party thereto from time to time (including Solus), as applicable, as amended or otherwise modified from time to time.

confidential
Clark/Wrage
287
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Ederheimer
Apr 03, 2017 15:39

The term "Solus/Scotiabank Lenders" shall mean Citibank, N.A. or its transferees (including Solus), as applicable, and the Lenders (as defined in the Scotiabank Credit Agreement).

The term "Solus/Scotiabank Lines of Credit" shall mean the Solus Credit Agreement and the Scotiabank Credit Agreement.

The term "Special Effective Date" shall mean the later of (i) the Amendment Effective Date and (ii) March 3, 2016.

The term "Special Period" shall mean the period from the Special Effective Date until the Amendment Termination Date.

The term "Supporting Creditor Class" refers to (i) GDB, (ii) the Holders, (iii) the Insurers, (iv) Solus or (v) Scotiabank and the Scotiabank Lenders, each as defined in the RSA.

The term "Validation Proceeding" shall mean any validation or other legal proceedings in which holders of bonds may have a right to participate under Section 35(c) or (d) of Act No. 4-2016 of the Legislature of Puerto Rico, approved on February 16, 2016 (as the same may be amended, the PREPA Revitalization Act).

B.    The following sentence shall be added at the end of the definition of "Current Expenses" in Section 101:

"Notwithstanding the foregoing or anything herein to the contrary, none of the holders, the Trustee, and the Authority shall contest whether an expense, claim, liability, or amount shall be construed as a Current Expense under this Agreement based solely on (x) the Solus/Scotiabank Lenders' actions on February 3, 2016 (the New Effective Date (as defined in the RSA)), during the Amendment Period, or during the time the Support Period (as defined in the RSA) is in full force and effect as to each Supporting Creditor Class other than GDB, including (i) forbearing, delaying or failing to exercise remedies, (ii) agreeing to a postponement or delay in payment of interest or principal, (iii) granting an extension of any maturity date, or (iv) not requiring the repayment or reborrowing of any loans or not requiring any loans to be revolving loans, or (y) the inclusion in this Agreement as a Potential Default, and the inclusion in the RSA as a "Potential Default" (as defined in the RSA) of the Authority's use of moneys from the General Fund to service its debts under the Solus/Scotiabank Lines of Credit."

C.    Section 208 is hereby supplemented (1) by the addition of the following words in the fifth paragraph of said Section 208 immediately after the words "with the Trustee the following" and prior to the colon "; provided, however, that the certificate referred to in clause (c) below shall not be required to be delivered in connection with the issuance of the Series 2016 Bonds" and (2) by the addition in the third to last full paragraph immediately after the words "one hundred and twenty per centum (120%)" of the words "; provided, however, that such requirement shall not apply in connection with the issuance of the Series 2016 Bonds."

D.    Section 302 is hereby amended by adding the following language at the end of the first sentence of said Section:  "; provided, however, that with respect to any

confidential
Clark Whitmore
288
Maslon Ederheimer
Apr 03, 2017 15:39

Confidential
Maslon Ederhan Borman & Brand
Apg 03, 2017 16:39

redemption of the Series 2016 Bonds or any portions thereof, the requirement for thirty (30) days' notice in this sentence shall be reduced to twenty (20) days' notice."

E.    Section 502 is hereby amended by the addition of the following language in the fourth paragraph immediately before the period:

"; provided, however, that during the Special Period, the Trustee may institute and prosecute such suit, action or proceeding only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

F.    Section 505 is hereby amended by the addition of the following paragraphs immediately preceding Section 506:

"(1) After the Amendment Effective Date and not less than ten (10) business days before the first transfer of moneys from the General Fund to the Capital Improvement Fund pursuant to clause (4) of this Section 505, the Authority shall submit to the Amending Creditors or their respective advisors for approval a schedule of expected costs of Improvements (and of extensions to the System) during an initial period of not more than thirteen (13) weeks from the date of transfer of moneys from the General Fund to the Capital Improvement Fund (the "Initial Improvements Period") that itemizes and contains a brief description of Improvements (and of such extensions of the System) and the applicable project name or names assigned thereto by the Authority the costs of which are expected to be paid from moneys in the Capital Improvement Fund, the Reserve Maintenance Fund or the Construction Fund during such Initial Improvements Period, along with a monthly cost forecast for each such project during the Initial Improvements Period.

"(2) At any point thereafter during the Amendment Period, at least ten (10) business days before the requested date of approval, the Authority may submit to the Amending Creditors or their respective advisors for approval (i) a revised schedule of expected Improvements (and of extensions of the System) during the Initial Improvements Period or (ii) a schedule of expected Improvements (and of extensions of the System) during a subsequent thirteen (13) week period commencing on the date of delivery of such schedule (in each case that itemizes and specifies the expected costs of such Improvements (and of extensions of the System) during such period and contains a brief description of such Improvements (and of such extensions of the System) and the applicable project name or names assigned thereto by the Authority) the costs of which are expected to be paid from moneys in the Capital Improvement Fund, the Reserve Maintenance Fund or the Construction Fund during such period following the date of delivery of such schedule, along with a monthly cost forecast for each such project during such period.

"(3) Within not more than ten (10) business days after receipt of any such schedule referred to in clauses (1) or (2) above in this Section, the Required Amending Creditors or their respective advisors may deliver to the Authority written confirmation or confirmations that the costs of Improvements (and of extensions of the System) described in the applicable schedule (the "Proposed Improvements") are or are not reasonably acceptable.  In addition, if within not more than ten (10) business days after receipt of any such schedule referred to in clauses (1) or (2) above in this Section, none of the Required Amending Creditor Groups nor any of their respective advisors objects in one or more writings to the Authority to any such schedule of

confidential
Clark N Wright
289
Maslon Ederhan Borman & Brand
Apg 03, 2017 16:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Proposed Improvements, such Proposed Improvements shall be deemed to be reasonably acceptable to the Required Amending Creditors for purposes of this Section 505. Upon receipt of written confirmation from each Required Amending Creditor Group or its advisor stating that such Proposed Improvements are acceptable or, to the extent a Required Amending Creditor Group or its advisor has not provided a written confirmation stating that such Proposed Improvements are acceptable, the expiration of such ten (10) business day period without the receipt by the Authority of any objection from such Required Amending Creditor Group or its advisors, the Authority shall provide a certificate to the Trustee and the Amending Creditors or their respective advisors, signed by the Executive Director or by any other officer or employee of the Authority with fiscal authority, attaching such schedule and certifying that it has received from each Required Amending Creditor Group or its advisor either (a) a written confirmation that the Proposed Improvements described in such schedule are reasonably acceptable or (b) no objection within the applicable time period described above and, as a result, that such Proposed Improvements are deemed to be reasonably acceptable to such Required Amending Creditor Group for purposes of this Section 505.

"(4) During the Amendment Period, and subject to the Authority's compliance with the provisions of clauses (1) through (3) of this Section 505, the Authority may transfer moneys from the General Fund to the Capital Improvement Fund to be applied as provided in Section 512B of this Agreement to pay Approved Costs of Improvements, provided that:

(a)    immediately prior to any such transfer, the balance in the Construction Fund and the Capital Improvement Fund in the aggregate is less than $75,000,000;

(b)    on the date of each such transfer and application the representations of the Authority given in Section 12(b) of the RSA are true and correct as of the date of any such transfer and as of the date of any application of such funds;

(c)    immediately following any such transfer, the aggregate amount of moneys transferred pursuant to this clause (4) plus the aggregate amount of moneys deposited in the Construction Fund after the date of the Eighteenth Amendment does not exceed the aggregate amount of Approved Costs of Improvements;

(d)    any moneys so transferred during the Amendment Period shall be applied by the Authority only to Approved Costs of Improvements and are applied in the manner required by the Agreement for application of moneys from the Construction Fund; and

(e)    on a quarterly basis, on the fifteenth (15th) day of the month, the Authority shall provide a certification to the Trustee and each Amending Creditor or its advisors for the three-month period preceding the first day of the month in which the certification is given, (i) indicating whether the Improvements on the schedules of Approved Costs of Improvements are complete, and, for any such Improvements that are not complete, an estimate of the percentage of completion of the project, (ii) containing an estimate of the actual costs towards which the moneys in the Construction Fund, Reserve Maintenance Fund and/or Capital Improvement Fund were applied during such three-month period on a project-level basis, and (iii)

7

confidential
Clark Win_Vintage
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

stating that all funds withdrawn from the Construction Fund, Reserve Maintenance Fund and/or Capital Improvement Fund during such three-month period were applied to Approved Costs of Improvements (A) in a manner consistent with the required manner of application of moneys from the Construction Fund and (B) in compliance with the Eighteenth Amendment.

"(5) After the Amendment Period but subject to any obligation of the Authority to transfer funds to the Bond Service Account and the Redemption Account as and when required under Section 512B, for so long as moneys transferred to the Capital Improvement Fund pursuant to clause (4) remain in the Capital Improvement Fund, (i) the Authority may not apply such moneys for costs of Improvements (or of extensions of the System) other than Approved Costs of Improvements approved during the Amendment Period in accordance with the terms of this Section 505 and (ii) the Authority must provide the certification in clause (4)(e) following the expenditure of such funds; *provided, however,* that if the Authority decides not to apply such funds to such Approved Costs of Improvements, then it shall transfer such funds to the General Fund.

"(6) The Trustee shall have no duty to review any certification received pursuant to previous clauses (1)-(5) for any purpose, except to confirm that such certification has been delivered, and the Trustee shall be authorized to provide any requesting bondholder with a copy of any such certification."

G.      Section 506 is hereby amended by deleting the first word of the second sentence of said Section and replacing it with "Other than during the Special Period, after".

H.      Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

"; provided, however, that during the Special Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

I.      The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

"; and provided, further, however, that during the Special Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

J.      A new Section 812 is hereby added to the Agreement as follows:

"Section 812.   Rights of Holders Regarding Validation Proceeding.  Nothing in this Agreement shall affect, limit or impair the rights of the holders of bonds to participate in any Validation Proceeding."

2.      The modifications to the Agreement contained in this Eighteenth Supplemental Agreement shall remain in effect only during the Amendment Period and shall terminate automatically on the Amendment Termination Date, except (i) Sections 1.B and any related

confidential
Clark W. Wray
291
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

definitions, which will continue in effect until all series of bonds outstanding under the Agreement have been paid or deemed paid in full in accordance with the Agreement, (ii) Sections 1.C, 1.D and 1.J and any related definitions, which will continue in effect until the termination of the Agreement, and (iii) Section 1.F and any related terms and definitions will continue in effect solely as to clause (5) of Section 505, added to the Trust Agreement pursuant thereto, until all moneys transferred to the Capital Improvement Fund during the Amendment Period shall have been applied in accordance therewith and all related certifications have been made. The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

3.    The Authority hereby agrees to provide the Trustee with a copy of any amendments, supplements or waivers to the RSA or BPA (each herein a "Modification"), promptly after the effectiveness of any such Modification, and the Trustee (i) shall not be deemed to have knowledge of any Modification (or the terms and provisions thereof) prior to the Trustee's actual receipt of the same and (ii) may provide a copy thereof to any holder of bonds. It is understood by the Trustee that the Authority may redact information regarding individual holders (such as their identities, dollar amounts of holdings of bonds and purchase commitments) from any such Modification.

4.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

5.    The Authority hereby acknowledges and agrees that (i) the Trustee is not a party to the RSA or the BPA, and (ii) this Eighteenth Supplemental Agreement shall not be understood to incorporate the RSA and BPA into the Agreement, and no Modification shall be deemed to be an amendment of the Agreement or this Eighteenth Supplemental Agreement for purposes of Article XI of the Agreement.

6.    This Eighteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

7.    Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

8.    This Eighteenth Supplemental Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.   Delivery of any executed signature page of this Eighteenth Supplemental Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature page follows.]

9

confidential
Clark Whitmore
292
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Maslon Edelman Borman & Brand
Apr 03, 2017 15:39
Confidential

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Eighteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

11

confidential
Clark Wimberg
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

COMMONWEALTH OF PUERTO RICO    )
                               )    ss.:
MUNICIPALITY OF SAN JUAN       )

On the __15th__ day of __March__, in the year 2016, before me personally came Javier A. Quintana Méndez, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Guaynabo, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 3,540

_____
NOTARY PUBLIC

My commission expires: N/A

(SEAL)

STATE OF _____   )
                             )    ss.:
COUNTY OF _____     )

On the _____ day of _____, in the year 2016, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

confidential
Clark Williams
294
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Eighteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Julie J. Becker
Vice President

Attest:

_Lani-Anne Rosenberg_
Trust Officer

11

confidential
Clark Whitmore
295
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

STATE OF MINNESOTA        )
                          )        : ss.
COUNTY OF RAMSEY          )

On the 15th day of March, 2016, before me personally came Julie J. Becker, to me known who, being by me duly sworn, did depose and say that she resides in St. Paul, MN; that she is a Vice President of U.S. Bank National Association; and that she signed her name to the above instrument.

My Commission expires: Jan. 31, 2017

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

2

confidential
Clark W. Minge
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

### Schedule 1

1.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 501 of the Agreement insofar as such noncompliance or failure is a result of the Authority's failure to establish and enforce reasonable regulations in relation to the collection of bills for services and facilities provided by the Authority.

2.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 502 of the Agreement insofar as such noncompliance or failure is a result of the Authority's failure to revise the rates and charges for the services and facilities furnished by the Authority, or the result of the Authority's failure to revise its regulations in relation to the collection of bills for such services and facilities.

3.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 503 or section 505 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's use of monies from the General Fund to service its debt under the Solus/Scotiabank Lines of Credit.

4.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 504 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to adopt and file a budget that is consistent with the procedural and/or substantive requirements of section 504.

5.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 506 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to transfer monies from the General Fund to the Revenue Fund in a manner consistent with section 506.

6.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 507 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to transfer monies from the Revenue Fund to the Sinking Fund in a manner consistent with section 507.

7.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 702 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to operate the System in an efficient and economical manner, maintain the System in good repair and sound operating condition (including by making all necessary repairs, renewals and replacements), or as a result of the Authority's employment of more persons than are necessary and noncompliance with all valid and applicable rules, regulations, and orders.

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

8.    Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to keep accurate records or complete and file its audited financial statements within the time periods specified in section 710 of the Agreement.

confidential
Clark W. Wringe
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

## Attachment A

[RSA]