confidential
Cela's Name
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

(5)

### CERTIFICATE AS TO FIRST AMENDMENT
### TO
### EIGHTEENTH SUPPLEMENTAL AGREEMENT

I, Ivelisse C. Sánchez Soultaire, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the First Amendment to Eighteenth Supplemental Agreement, dated as of June 1, 2016, which is substantially the same as the First Amendment to Eighteenth Supplemental Agreement which was presented at the meeting of the Authority duly called and held on June 2, 2016, and which was approved by the Authority by resolution duly adopted at said meeting.

WITNESS my hand this __22__ day of June, 2016.

Secretary
Puerto Rico Electric Power Authority

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

*Execution version*

## FIRST AMENDMENT TO EIGHTEENTH SUPPLEMENTAL AGREEMENT

THIS FIRST AMENDMENT TO EIGHTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of June, 2016, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws  to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974 (as amended from time to time, the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority and the Trustee have heretofore executed an eighteenth supplemental agreement, dated as of March 1, 2016 (the "Eighteenth Supplemental Agreement"), to the Agreement, which Eighteenth Supplemental Agreement supplemented the Agreement so as to make provision for certain actions to be undertaken consistent with the Restructuring Support Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "RSA"), by and among the Authority and the Supporting Creditors defined therein, and the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016, by and among the Authority and the Purchasers defined

confidential
Clark Whitmore
301
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

therein (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "BPA"); and

WHEREAS, the Eighteenth Supplemental Agreement provides that it may be amended and supplemented in accordance with the provisions of Article XI of the Agreement; and

WHEREAS, the Authority has determined that it is desirable to amend the Eighteenth Supplemental Agreement so as to make provision for certain additional actions to be undertaken consistent with the RSA and BPA; and

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this First Amendment to Eighteenth Supplemental Agreement, (b) this First Amendment to Eighteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this First Amendment to Eighteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this First Amendment to Eighteenth Supplemental Agreement, including such consents, have been satisfied; and

WHEREAS, the execution and delivery of this First Amendment to Eighteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this First Amendment to Eighteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this First Amendment to Eighteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Authority has delivered to the Trustee written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this First Amendment to Eighteenth Supplemental Agreement have happened, exist and have been performed as required, and the Authority has delivered to the Trustee a certificate dated the date of this First Amendment to Eighteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this First Amendment to Eighteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof.

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39
302

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

NOW, THEREFORE, THIS FIRST AMENDMENT TO EIGHTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.     The Eighteenth Supplemental Agreement is hereby amended and supplemented in the following respects:

A.     The definition of the term "Series 2016 Bonds" in Section 1.A is hereby modified by adding ", as amended," immediately after "March 15, 2016".  The definition of the term "Series 2016 Bonds" is further amended by (1) adding "(A)" immediately after the word "collectively" and immediately prior to the words "the Authority's Power Revenue Bonds, Series 2016A" and (2) adding the following language immediately after the word "BPA" and prior to the period: "and (B) any other bonds issued under this Agreement prior to January 1, 2017, which bonds are sold pursuant to a bond purchase agreement to which the Authority and each of the following persons is a party: (i) Assured Guaranty Corp., (ii) Assured Guaranty Municipal Corp., (iii) National Public Finance Guarantee Corporation and (iv) Participating Holders (as defined in the BPA), and/or affiliates of such Participating Holders, which collectively represent not less than two-thirds of the purchase commitments made by all Participating Holders under the BPA".

B.     Section 1 is hereby modified to add a new subsection K immediately after subsection J to read as follows:

"K.     Section 209 is hereby supplemented (1) by the addition of the following words "other than the Series 2016 Bonds" immediately after the words "refunding outstanding bonds of the Authority" in the parenthetical in the first paragraph of said Section 209, (2) by the addition of the words "or the Series 2016 Bonds" in the fifth paragraph of said Section 209 immediately after the words "; provided, however, that the certificate referred to in clause (c) below shall not be required to be delivered in connection with the issuance of the Series 2015A Bonds" and prior to the colon and (3) by the addition of the words "or the Series 2016 Bonds" in the third to last full paragraph immediately after the words "; provided, however, that such requirement shall not apply in connection with the issuance of the Series 2015A Bonds" and prior to the period."

C.     Section 1.D is hereby amended and restated as follows:

"D.     Section 302 is hereby amended by adding the following language at the end of the first sentence of said Section:  "; provided, however, that the requirement for notice set forth in this Section 302 shall not apply to any redemption of the Series 2016 Bonds or any portions thereof."

D.     Clause (ii) of Section 2 is hereby modified by deleting the language "Sections 1.C, 1.D and 1.J" and replacing it with "Sections 1.C, 1.D, 1.J and 1.K"

2.     The modifications to the Agreement contained in this First Amendment to Eighteenth Supplemental Agreement shall remain in effect until the termination of the

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

Agreement.  The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

3.      The Authority hereby agrees to provide the Trustee with a copy of any amendments, supplements or waivers to the RSA or BPA (each herein a "Modification"), promptly after the effectiveness of any such Modification, and the Trustee (i) shall not be deemed to have knowledge of any Modification (or the terms and provisions thereof) prior to the Trustee's actual receipt of the same and (ii) may provide a copy thereof to any holder of bonds. It is understood by the Trustee that the Authority may redact information regarding individual holders (such as their identities, dollar amounts of holdings of bonds and purchase commitments) from any such Modification.

4.      Notwithstanding any provision of the Agreement to the contrary, the Escrow Agent, as defined in that certain escrow deposit agreement (the "Escrow Agreement") by and among the Authority, the Purchasers and U.S. Bank National Association (solely in its capacity as escrow agent thereunder and not in its capacity as Trustee), is hereby designated a Paying Agent for purposes of the redemption provision added to the 2016A Bonds by virtue of the amendment thereto set forth below in this Section 4.  In addition, there are hereby added to the 2016A Bonds the following (A) sentence immediately after the words "which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds": "The 2016A Bonds will be also be payable from and secured by an exclusive perfected lien on, and security interest in, all of the Authority's right, title and interest in and to the Escrow Account (as defined in the Escrow Agreement hereinafter mentioned) and all moneys and other assets therein." and (B) paragraph immediately after the paragraph reading "The 2016 Bonds shall not be subject to prior redemption except as provided herein and in the Agreement.":

"The 2016A Bonds at the time outstanding shall be required to be redeemed in whole or in part from, and to the extent of, the balance of the moneys and other assets held to the credit of the Escrow Account (and, to the extent the balance in the Escrow Account is insufficient to effect a redemption in full of the 2016A Bonds, the Authority shall have the option to supplement the funds from the Escrow Account with any moneys of the Authority available to be used for such purpose under the Agreement) at such time as such redemption is required pursuant to that certain escrow deposit agreement (the "Escrow Agreement") by and among the Authority, the Purchasers and U.S. Bank National Association (solely in its capacity as escrow agent thereunder and not in its capacity as Trustee, the "Escrow Agent"), including if the balance held to the credit of the Escrow Account is not transferred to the Trustee for further deposit to the Construction Fund by the specified date set forth in the Escrow Agreement, at a redemption price equal to the principal amount (or, if greater, the Accreted Value) thereof plus accrued interest to the date fixed for redemption (unless such interest is already included in the Accreted Value), without premium, pro rata (to the extent practicable) based on the respective Original Principal Amounts of the 2016A Bonds.  The Escrow Agent is hereby designated a Paying Agent for purposes of any redemption required pursuant to this paragraph."

The revised form of 2016A Bond, which incorporates the foregoing provision and certain related changes provided therein, is attached to this First Amendment to Eighteenth Supplemental

confidential
Clark W Wrage
Maslon Edelman Borman & Brand
Aug 03, 2017 15:39

confidential
Clark W Wrage
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

Agreement as Exhibit A and shall replace the form of 2016A Bond previously approved by the Authority.  In connection with the foregoing and contemporaneously with the execution of this First Amendment to Eighteenth Supplemental Agreement, the Authority shall execute and deliver to the Trustee for authentication new 2016A Bonds in the form of Exhibit A in replacement and substitution of the existing 2016A Bonds and upon the Trustee's receipt and authentication of the replacement 2016A Bonds, it shall cancel the existing 2016A Bonds.

5.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

6.     The Authority hereby acknowledges and agrees that (i) the Trustee is not a party to the RSA or the BPA, and (ii) this First Amendment to Eighteenth Supplemental Agreement shall not be understood to incorporate the RSA and BPA into the Agreement, and no Modification shall be deemed to be an amendment of the Agreement or this First Amendment to Eighteenth Supplemental Agreement for purposes of Article XI of the Agreement.

7.     This First Amendment to Eighteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

8.     Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

9.     This First Amendment to Eighteenth Supplemental Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.  Delivery of any executed signature page of this First Amendment to Eighteenth Supplemental Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature page follows.]

confidential
Clark W Wrage
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

confidential
Maslon Edelman Borman & Brand
Apg 03, 2017 16:39

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this First Amendment to Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this First Amendment to Eighteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By: Javier A. Quintana Méndez
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

confidential
Clark W Wirtge
Maslon Edelman Borman & Brand
Apg 03, 2017 16:39

confidential
Clark W. Mange
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

COMMONWEALTH OF PUERTO RICO    )
                                                              )          ss.:
MUNICIPALITY OF SAN JUAN       )

On the 22th day of JUNE, in the year 2016, before me personally came _Javier Antonio Quintana Mendez_, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Guaynabo, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 3,597

NOTARY PUBLIC

My commission expires: N/A

EXENTO PAGO ARANCEL
**LEY 47**
4 DE JUNIO DE 1982

STATE OF _____ )
                                                  )  ss.:
COUNTY OF _____ )

On the _____ day of _____, in  the year 2016, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

confidential
Clark W. Mange
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this First Amendment to Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this First Amendment to Eighteenth Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

Susan Jarolsen
Trust Officer

confidential
Clark W Mange
308
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

COMMONWEALTH OF PUERTO RICO ) 
                                                          )   ss.:
MUNICIPALITY OF SAN JUAN        )

      On the _____ day of _____, in the year 2016, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____

My commission expires:

_____
NOTARY PUBLIC

(SEAL)

STATE OF  MINNESOTA_____ )
                                                     )   ss.:
COUNTY OF  RAMSEY_____ )

      On the 21st_____ day of June_____, in  the year 2016, before me personally came  Julie J. Becker_____, to me known, who, being by me duly sworn, did depose and say that she/he resides at  St. Paul, Minnesota_____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:  January 31, 2017

(SEAL)

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

confidential
Clark WWmage
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Exhibit A

[Form of 2016A Bond as revised by this First Amendment to Eighteenth Supplemental Agreement]

confidential
Clark W Mange
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Maslon EderSteinSohan & Brand
Apr 03, 2017 16:39

[FORM OF 2016A BOND]

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

$[_____]

No. R16A-_

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY

Power Revenue Bonds, Series 2016A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 10% | July 1, 2019 | [_____] |

Registered Owner:  Cede & Co.

Original Principal Amount:  _____ Dollars

Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from (i) the special fund provided therefor as hereinafter set forth, and (ii) the Escrow Account (as defined in the Escrow Agreement hereinafter mentioned) pursuant to the terms of the Escrow Agreement as provided therein and as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Accreted Value (as hereinafter defined) hereof in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts.

From and after May 19, 2016, the date of this bond (and as further described in the next paragraph), interest on this bond will accrue on the Accreted Value of this bond at the Interest Rate set forth above, compounded semi-annually on January 1 and July 1 of each year, until payment of the Accreted Value hereof.  Interest shall be computed on the basis of a 360-day year consisting of twelve 30-day months.

- 1 -

confidential
Clark & Mange
311
Maslon EderSteinSohan & Brand
Apr 03, 2017 16:39

Confidential
Clark/Mirage
Maslon Edelman Borman & Brand
Aug 03, 2017 16:39

The Accreted Value means, as of any January 1 or July 1, the unpaid Original Principal Amount, plus the interest accrued on the Original Principal Amount and other Accreted Value of this bond, compounded semiannually on January 1 and July 1 of each year, subject to any reductions in Accreted Value resulting from redemption in accordance with the terms of this bond, and as of any other date, the sum of (a) the Accreted Value on the next preceding January 1 or July 1 and (b) the product of (i) a fraction, the numerator of which is the number of days having elapsed from such next preceding January 1 or July 1 to the date of calculation, and the denominator of which is the number of days between such next preceding and next succeeding January 1 or July 1 and (ii) the difference between the Accreted Value on such next preceding and next succeeding January 1 or July 1 (excluding the effect on the Accreted Value of any redemption that may take place on such next succeeding January 1 or July 1).  If this bond is redeemed in part on an interest payment date pursuant to an Accreted Value Partial Redemption (as hereinafter defined) and such redemption payment is made to the Registered Owner, the Accreted Value of this bond outstanding immediately after the date of any such redemption in part shall equal the unpaid Original Principal Amount of this bond, and interest on this bond shall thereafter accrue on such unpaid Original Principal Amount as provided above in this paragraph and in the prior paragraph, compounded semiannually on January 1 and July 1 of each year, from the date of such redemption.  References in this bond to the principal amount of 2016 Bonds shall mean, as of any date, the unpaid Original Principal Amount of such 2016 Bonds or, if greater, the Accreted Value of such 2016 Bonds on such date, whether or not specifically stated.   Tables 1 through 5 attached as Exhibit A hereto contain a non-exhaustive set of illustrative scenarios showing what the Accreted Value per $1 minimum authorized denomination of outstanding Original Principal Amount would be on the dates specified therein based on the amounts previously redeemed and the dates on which such redemptions occurred. The method of calculating the Accreted Value as of any date shall be consistent with the methodology illustrated on Exhibit A hereto.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions (other than the Authority), and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions (other than the Authority) are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from (i) the special fund provided therefor as hereinafter set forth, and (ii) the Escrow Account as provided in the Escrow Agreement and as hereinafter set forth.

This bond is one of a duly authorized series of bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2016A", dated the date hereof, maturing on the 1st day of July, 2019 (the "2016A Bonds"), and issued under the Agreement for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed or refinanced under the provisions of the Agreement being herein called the "System"). The Authority has also entered into a Bond Purchase Agreement, dated as of January 27, 2016 (as amended from time to time, the "Purchase Agreement"), with the purchasers party thereto (the "Purchasers") in connection with the

2

confidential
Clark/Mirage
Maslon Edelman Borman & Brand
Aug 03, 2017 16:39

Confidential
Clark/Morgan
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

issuance of the 2016A Bonds, a true and correct copy of which Purchase Agreement is attached to the Eighteenth Supplemental Agreement (as herein defined).

The Purchase Agreement contemplates the issuance under and secured by the Agreement of Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2016B, in the aggregate original principal amount of $55,210,625 (the "2016B Bonds") upon the satisfaction simultaneously with or subsequent to the delivery of the 2016A Bonds of certain conditions set forth in the Purchase Agreement.  The 2016A Bonds and the 2016B Bonds are herein called collectively the "2016 Bonds". Capitalized terms used herein not otherwise defined have the meanings given to them in the Purchase Agreement or if not defined therein, then in the Agreement.

All of the bonds are issued under and pursuant to a trust agreement, as amended (said agreement, together with all agreements supplemental thereto as therein permitted, including that certain Eighteenth Supplemental Agreement, dated as of March 1, 2016, as amended (the "Eighteenth Supplemental Agreement"), being herein called the "Agreement"), dated as of the 1st day of January, 1974,  by and between the Authority and U.S. Bank National Association, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee.  Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the 2016 Bonds being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the repair, maintenance and operation of the System and for the payment of the principal of and the interest on the bonds as the same become due and payable, including reserves for such purposes.  The Agreement provides for the creation of a special fund designated "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit to the credit of the Sinking Fund of a sufficient amount of the revenues of the System over and above such expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds (including the Accreted Value of the 2016 Bonds) issued under

confidential
Clark/Morgan
313
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

Confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Apr 03, 2017 16:59

the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.  The 2016A Bonds will be also be payable from and secured by an exclusive perfected lien on, and security interest in, all of the Authority's right, title and interest in and to the Escrow Account (as defined in the Escrow Agreement hereinafter mentioned) and all moneys and other assets therein.

The 2016 Bonds are issuable as registered bonds without coupons in denominations of $1.00 and any integral multiple thereof.  At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, definitive bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The 2016 Bonds shall not be subject to prior redemption except as provided herein and in the Agreement.

The 2016A Bonds at the time outstanding shall be required to be redeemed in whole or in part from, and to the extent of, the balance of the moneys and other assets held to the credit of the Escrow Account (and, to the extent the balance in the Escrow Account is insufficient to effect a redemption in full of the 2016A Bonds, the Authority shall have the option to supplement the funds from the Escrow Account with any moneys of the Authority available to be used for such purpose under the Agreement) at such time as such redemption is required pursuant to that certain escrow deposit agreement (the "Escrow Agreement") by and among the Authority, the Purchasers and U.S. Bank National Association (solely in its capacity as escrow agent thereunder and not in its capacity as Trustee, the "Escrow Agent"), including if the balance held to the credit of the Escrow Account is not transferred to the Trustee for further deposit to the Construction Fund by the specified date set forth in the Escrow Agreement, at a redemption price equal to the principal amount (or, if greater, the Accreted Value) thereof plus accrued interest to the date fixed for redemption (unless such interest is already included in the Accreted Value), without premium, pro rata (to the extent practicable) based on the respective Original Principal Amounts of the 2016A Bonds.  The Escrow Agent is hereby designated a Paying Agent for purposes of any redemption required pursuant to this paragraph.

The 2016 Bonds at the time outstanding shall be required to be redeemed in part on each January 1 and July 1, commencing July 1, 2016, in each case, in an amount equal to the difference between the Accreted Value as of such date as set forth in Table 1 and the unpaid Original Principal Amount of the 2016 Bonds as set forth in Table 1 contained in Exhibit A hereto (or if higher, the amount in which such 2016 Bonds are required to be redeemed on such January 1 or July 1 pursuant to the following paragraph).

In the event the 2016 Bonds are not redeemed on any January 1 or July 1 in the amounts set forth in Table 1 contained in Exhibit A hereto, the 2016 Bonds at the time outstanding shall be required to be redeemed in part on any subsequent January 1 or July 1 in an amount equal to the difference between the Accreted Value as of such date and the unpaid Original Principal Amount of such 2016 Bonds.  Tables 2 – 5 of Exhibit A hereto contain a non-exhaustive set of illustrative examples setting forth the required redemption amounts on particular dates based on

confidential
Clark Whitmore
314
Maslon Edelman Borman & Brand
Apr 03, 2017 16:59

Confidential
Clark/Moran
Maslon Edelman Borman & Brand
Apr 03, 2017 15:58

the amounts previously redeemed and the dates on which such redemptions occurred.  The
difference between the Accreted Value as of any date of redemption and the unpaid Original
Principal Amount of such 2016 Bonds in respect of any such redemption in part shall be
computed in the manner consistent with the method of computation of such difference as set
forth in Tables 2 – 5.  Any redemption pursuant to this paragraph or the preceding paragraph
shall be referred to as an "Accreted Value Partial Redemption".

Unless the 2016 Bonds have been previously economically defeased as provided in
Section 6(c) of the Purchase Agreement, the 2016 Bonds at the time outstanding shall be
redeemed in whole at a redemption price equal to the principal amount (or, if greater, the
Accreted Value) thereof plus accrued interest to the date fixed for redemption (unless such
interest is already included in the Accreted Value), without premium, not later than twenty-five
(25) days after the effective date of the termination of the Restructuring Support Agreement
(excluding, for purposes of such calculation, such effective date of termination) in accordance
with its terms as to any Applicable Insurer or the Holders (as defined in the Restructuring
Support Agreement) as a class.  If the Restructuring Support Agreement shall be terminated as
aforesaid prior to July 1, 2016, the redemption shall occur on the later of (i) July 1, 2016 and (ii)
twenty-five (25) days after the termination of the Restructuring Support Agreement as aforesaid
(excluding, for purposes of such calculation, such effective date of termination).  Notice of
redemption shall be given in the manner and subject to the terms and conditions of the
Agreement.  Notice of the termination of the Restructuring Support Agreement as aforesaid shall
be given to the Trustee by the Authority within one (1) business day thereafter and may be given
by any Applicable Insurer or any beneficial holder of 2016 Bonds, and the Trustee shall be
obligated to give notice of redemption within two (2) business days following Trustee's receipt
of any such notice of termination.  For purposes of determining whether the Restructuring
Support Agreement has terminated as aforesaid, the Trustee shall be entitled to rely on a
certification of any entity that it is an Applicable Insurer or a beneficial holder of 2016 bonds.

The Authority hereby acknowledges and agrees that the Restructuring Support
Agreement and the Purchase Agreement contain provisions related to the economic defeasance
of the 2016 Bonds under certain circumstances.  Nothing in this bond is intended to (a) limit the
obligation of the Authority to the Purchasers in respect of the Restructuring Support Agreement
or the Purchase Agreement or the rights of the Purchasers thereunder, or (b) make the Trustee a
party to the Purchase Agreement or the Restructuring Support Agreement or require the Trustee
to undertake any duties under the Purchase Agreement or Restructuring Support Agreement, and
all rights of the Purchasers under the Restructuring Support Agreement and the Purchase
Agreement are preserved and are not intended to be limited by this bond.

If in accordance with the Restructuring Support Agreement and the Purchase Agreement
(a) a holder of a 2016 Bond duly elects to exchange all or any portion of its 2016 Bond for
Securitization Bonds and (b) the Authority fails to effect such exchange, then such holder shall
have the right under this bond at any time thereafter to require the Authority upon 20 days' prior
written notice given to the Authority and the Trustee by such holder to have such 2016 Bond
redeemed for cash, in whole or in part corresponding to the principal amount elected to be
exchanged as specified in its notice, at a redemption price equal to the principal amount (or, if
greater, the Accreted Value) thereof plus accrued interest to the date fixed for such redemption

confidential
Clark/Moran
315
Maslon Edelman Borman & Brand
Apr 03, 2017 15:58

Confidential
Maslon EdelmanBorman & Brand
Apr 03, 2017 15:33

(unless such interest is already included in the Accreted Value), without premium.  If pursuant to the Restructuring Support Agreement and the Purchase Agreement or any related agreement, the holder of a 2016 Bond exchanges such 2016 Bond or the Authority redeems such 2016 Bond, the 2016 Bond so exchanged or redeemed shall be surrendered to the Trustee for cancellation and shall no longer be outstanding under the Agreement.  If an offer shall not be made to the holders of Series 2016 Bonds to exchange the Series 2016 Bonds for Securitization Bonds in accordance with the terms and conditions set forth in Section 6 of the Purchase Agreement, then for purposes of satisfying the condition set forth in clause (a) above with respect to a holder's right of redemption contained in this paragraph (and in Section 6(f) of the Purchase Agreement), each holder shall be deemed to have properly elected such exchange.  The Accreted Value of this bond will be reduced by the Accreted Value of any portion of this bond redeemed pursuant to this paragraph or exchanged for Securitization Bonds pursuant to Section 6(f) of the Purchase Agreement.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

On the date designated for redemption, notice having been given as provided in the Agreement (except as otherwise modified by the terms of this bond), which may be no notice if permitted by the Agreement, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee.  Notwithstanding the preceding sentence, unless and until any principal, redemption price or interest has been actually paid to the Registered Owner hereof, payment of the principal or redemption price of, or accrued interest on, this bond or any portion thereof shall not be deemed paid, interest shall not cease to accrue thereon, the rights of registered and beneficial owners hereof shall not be limited, and this bond (or the applicable portion thereof) shall continue to be entitled to all the benefits and security under the Agreement as if such payment had not been made.  If a portion of this bond shall be called for redemption, a new bond or bonds of the same series and maturity in principal amount equal to the unredeemed portion of this bond will be issued to the registered owner upon the surrender thereof.

The owner of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding

confidential
Clark N Wargo
316
Maslon EdelmanBorman & Brand
Apr 03, 2017 15:33

Confidential
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

with respect thereto, except as provided in the Agreement; *provided*, that the owner of this bond shall have the right to enforce the Purchase Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

The transfer of this bond is registrable by the registered owner thereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new definitive bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

This bond is issued pursuant to the Authority Act and is conclusively deemed to be valid and to have been issued in conformity with the provisions of the Authority Act.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

confidential
Clark Mirage
317
Maslon Edelman Borman & Brand
Apr 03, 2017 16:39

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to bear the facsimile signatures of the Executive Director and the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 19th day of May, 2016.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____

By: _____

Confidential
Clark W. Wrege
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

## CERTIFICATE OF AUTHENTICATION

      This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.


                        U.S. BANK NATIONAL ASSOCIATION,
                        successor trustee



By: _____

          Authorized Officer



Date of Authentication: _____

9

confidential
Clark W. Wrege
319
Maslon Edelman Borman & Brand
Apr 03, 2017 15:59

[Form of Assignment]

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto _____ [Please Print or Typewrite Name and Address of Transferee] the within bond, and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to register the transfer of the within bond on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____   Signature: _____

NOTICE:  The signature to this assignment must correspond with the name as it appears upon the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Signature Guaranteed by*:_____, New York, New York

*Such signature must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in STAMP or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

confidential
Clark/A/Wragg
320
Maslon Edelman Borman & Brand
Apr 03, 2017 15:39

## Exhibit A

See tables 1 through 5 attached hereto

Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

## NINETEENTH SUPPLEMENTAL AGREEMENT

THIS NINETEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of April, 2017, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974 (as amended from time to time, the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provision for certain actions to be undertaken consistent with the Restructuring Support Agreement, and all annexes, schedules and exhibits thereto, dated as of March 14, 2016 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "RSA"), by and among the Authority and the Supporting Creditors defined therein; and

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this Nineteenth Supplemental Agreement, (b) this Nineteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this

28213326.8

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Nineteenth Supplemental Agreement complies with the provisions of the Agreement, and it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this Nineteenth Supplemental Agreement, including such consents, have been satisfied; and

WHEREAS, the execution and delivery of this Nineteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Nineteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Nineteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Authority has delivered to the Trustee written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act, the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Nineteenth Supplemental Agreement have happened, exist and have been performed as required, and the Authority has delivered to the Trustee a certificate dated the date of this Nineteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Nineteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS NINETEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby amended or modified for purposes of implementing this Nineteenth Supplemental Agreement by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

The term "Amendment Effective Date" shall mean April 28, 2017, being the effective date of the Nineteenth Amendment.

Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

The term "Amendment Period" shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

The term "Amendment Termination Date" shall mean the earliest of (a) June 30, 2017, (b) the date on which (i) the "Support Period" (as defined in the RSA) has expired or terminated in accordance with the terms of the RSA (including, without limitation, expiration or termination as a result of withdrawal by the relevant Supporting Creditors from the RSA) as to any Supporting Creditor Class or as to any Insurer (as defined in the RSA), and whether such termination or expiration occurred on, before or after the date of the Nineteenth Amendment, and (ii) the Trustee has received written notice from the Authority or any Supporting Creditor (as defined in the RSA) or former Supporting Creditor confirming the same and (c) the filing of a proceeding by or on behalf of the Authority pursuant to title 11 of the U.S. Code, or any other any bankruptcy or insolvency law, or the commencement of any other action or proceeding that seeks to adjust, extend or challenge the claims of creditors pursuant to any federal, state or Puerto Rico statute, now in effect or hereinafter enacted, including a Title III proceeding under PROMESA; provided, however, that the commencement of a process or proceeding under Title VI of PROMESA shall not cause the termination of this Amendment, and shall not trigger an Amendment Termination Date. Upon the occurrence of the date described in clause (i) of this definition, the Authority shall promptly, and in any event within 2 business days thereof, provide written notice to the Trustee confirming such occurrence. For purposes of this Agreement, the Trustee shall be entitled to rely on a certification of any person or entity that it is a Supporting Creditor or former Supporting Creditor, as applicable.

The term "BPA" shall mean the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016, and the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of June 29, 2016, each by and among the Authority and the Purchasers defined therein, as the same may be amended, supplemented or otherwise modified from time to time in accordance with its terms).

The term "Nineteenth Amendment" shall refer to the Nineteenth Supplemental Agreement, dated as of April 1, 2017, by and between the Authority and the Trustee.

The term "RSA" shall have the meaning set forth in the third recital of the Nineteenth Amendment.

The term "Series 2016 Bonds" shall mean collectively the Authority's Power Revenue Bonds, Series 2016A, Power Revenue Bonds, Series 2016B, Power Revenue Bonds, Series 2016C, Power Revenue Bonds, Series 2016D, and Power Revenue Bonds, Series 2016E, issued pursuant to Resolution 4338, adopted by the Authority on March 15, 2016, as amended, and Resolution 4391, adopted by the Authority on June 28, 2016, and sold pursuant to the BPA.

The term "Supporting Creditor Class" refers to (i) GDB, (ii) the Holders, (iii) the Insurers, (iv) the Solus Lenders or (v) Scotiabank and the Scotiabank Lenders, each as defined in the RSA.

B.      Section 302 is hereby amended by adding the following language at the end of the first sentence of said Section: "; provided, however, that the requirement for notice

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

set forth in this Section 302 shall not apply to any redemption of the Series 2016 Bonds or any portions thereof."

C.     Section 502 is hereby amended by the addition of the following language in the fourth paragraph immediately before the period:

"; provided, however, that during the Amendment Period, the Trustee may institute and prosecute such suit, action or proceeding only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

D.     Section 506 is hereby amended by deleting the first word of the second sentence of said Section and replacing it with "Other than during the Amendment Period, after".

E.     Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

"; provided, however, that during the Amendment Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

F.     Section 803 is hereby amended by adding the words "(such percentage to be increased during the Amendment Period to a majority in aggregate principal amount of the bonds then outstanding)" immediately after the words "not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding" and the words "(such percentage to be increased during the Amendment Period to a majority in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding)" immediately after the words "not less than twenty per centum (20%) in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding".

G.     The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

"; and provided, further, however, that during the Amendment Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

H.     Section 808 is hereby amended by adding the words "(such percentage to be increased during the Amendment Period to a majority in aggregate principal amount of the bonds then outstanding)" immediately after the words "not less than ten per centum (10%) in aggregate principal amount of the bonds outstanding" and immediately after the words "not less than twenty per centum (20%) in aggregate principal amount of the bonds outstanding".

2.     The modifications to the Agreement contained in this Nineteenth Supplemental Agreement shall remain in effect only during the Amendment Period and shall terminate automatically on the Amendment Termination Date, except Section 1.B and any related definitions, which will continue in effect until the termination of the Agreement.  The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

3.      The Authority hereby agrees to provide the Trustee with a copy of any amendments, supplements or waivers to the RSA or the BPA (each herein a "Modification"), promptly after the effectiveness of any such Modification, and the Trustee (i) shall not be deemed to have knowledge of any Modification (or the terms and provisions thereof) prior to the Trustee's actual receipt of the same and (ii) may provide a copy thereof to any holder of bonds. It is understood by the Trustee that the Authority may redact information regarding individual holders (such as their identities, dollar amounts of holdings of bonds and purchase commitments) from any such Modification.

4.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

5.      The Authority hereby acknowledges and agrees that (i) the Trustee is not a party to the RSA and the BPA, and (ii) this Nineteenth Supplemental Agreement shall not be understood to incorporate the RSA or the BPA into the Agreement, and no Modification shall be deemed to be an amendment of the Agreement or this Nineteenth Supplemental Agreement for purposes of Article XI of the Agreement.

6.      This Nineteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

7.      Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

8.      This Nineteenth Supplemental Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.  Delivery of any executed signature page of this Nineteenth Supplemental Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature page follows.]

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Nineteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Nineteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

(SEAL)

PUERTO RICO ELECTRIC POWER AUTHORITY

By:_____

Executive Director

Attest:

_____

Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____

Vice President

Attest:

_____

Trust Officer

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Nineteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Nineteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice-President

Attest:

_____
Trust Officer
Vice-President

confidential
Clark Whitmore
329
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

STATE OF NEW YORK )

                                    )       ss.:

COUNTY OF NEW YORK)

        On the 28th day of April, in the year 2017, before me personally came Ricardo Ramos, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of ____San  Juan_____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

_____

NOTARY PUBLIC

My commission expires:

(SEAL)

MARTIN E. ROSENFELD
Notary Public, State of New York
No. 31-4956238
Qualified in New York County
Commission Expires Sept. 18, 2017

STATE OF _____ )

                                    )       ss.:

COUNTY OF _____ )

        On the _____ day of _____, in  the year 2017, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

_____

NOTARY PUBLIC

My commission expires:(SEAL)

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58

Maslon Edelman Borman & Brand
Aug 01, 2017 · 10:58

COMMONWEALTH OF PUERTO RICO    )
                             )    ss.:
MUNICIPALITY OF SAN JUAN       )

On the _____ day of _____, in the year 2017, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____

My commission expires:                    _____
                                          NOTARY PUBLIC

(SEAL)

STATE OF  Minnesota  )
                     )   ss.:
COUNTY OF  Ramsey    )

On the  26th  day of  April , in the year 2017, before me personally came  Julie J. Becker , to me known, who, being by me duly sworn, did depose and say that she/he resides at  Apple Valley, Minnesota ; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

                                          _____
                                          NOTARY PUBLIC

My commission expires: 1/31/2020

(SEAL)        MARILYN J. KRAMAR
              NOTARY PUBLIC - MINNESOTA
              My Commission Expires Jan. 31, 2020

confidential
Clark Whitmore
Maslon Edelman Borman & Brand
Aug 01, 2017 10:58
331