## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>     as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO *et al.*, <br><br>     Debtors.[1] | PROMESA Title III <br><br> Case No. 17 BK 3283-LTS <br><br> (Jointly Administered) |
| In re: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>     as representative of <br><br> PUERTO RICO ELECTRIC POWER AUTHORITY, <br><br>     Debtor. | PROMESA Title III <br><br> Case No. 17 BK 4780-LTS <br><br> **RE: D.I. 974** <br><br> **This Objection Relates Only to PREPA and Shall be Filed in Case No. 17 BK-3283-LTS and in Case No. 17 BK 4780-LTS** |
| PAN AMERICAN GRAIN CO., INC., <br><br>     Movant, <br> v. <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>     as representative of <br><br> PUERTO RICO ELECTRIC POWER AUTHORITY, <br><br>     Respondent. | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PUERTO RICO ELECTRIC POWER AUTHORITY'S
OBJECTION TO PAN AMERICAN GRAIN CO., INC.'S
<u>MOTION FOR RELIEF FROM STAY TO EXECUTE SETOFF</u>

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     ARGUMENT ................................................................................................... 1

        A.      Movant Does Not Have Setoff Rights ................................................. 1

                i.      The Mutuality Requirement of Section 553(a) is Not Satisfied Here............ 2

                ii.     The Debts Do Not Qualify for Setoff under Puerto Rican Law .................... 8

        B.      Allowing Setoff is Permissive, Not Mandatory.................................... 10

        C.      The Stay Should Be Maintained in this Case........................................ 12

III.    CONCLUSION............................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Baker v. Gold Seal Liquors, Inc.*,
  417 U.S. 467 (1974)............................................................................................11

*Blanton v. Prudential–Bache Sec. (In re Blanton)*,
  105 B.R. 321 (Bankr. E.D. Va. 1989)...................................................................10

*Boston and Maine Corp. v. Chicago Pacific Corp.*,
  785 F.2d 562 (7th Cir. 1986) ..................................................................................6

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
  217 F. Supp. 3d 508 (D.P.R. 2016).......................................................................14

*General Consol., Ltd. v. Rudnick & Sons, Inc.*,
  4 Conn. Cir. Ct. 581, 237 A.2d 386 (1967) ............................................................7

*Gray v. Rollo*,
  85 U.S. 629 (1873)...................................................................................................5

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
  2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006).......................................16

*In re 234-6 West 22nd St. Corp.*,
  214 B.R. 751 (Bankr. S.D.N.Y. 1997)..................................................................12

*In re Allen–Main Assocs., Ltd. P'ship*,
  233 B.R. 631 (Bankr. D. Conn. 1999) ...............................................................7, 8

*In re Ampal-American Isr. Corp.*,
  545 B.R. 802 (Bankr. S.D.N.Y. 2016)....................................................................6

*In re Applied Logic Corp.*,
  576 F.2d 952 (2nd Cir. 1978)................................................................................13

*In re Breitburn Energy Partners LP*,
  2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017)...........................................14

*In re Cascade Roads, Inc.*,
  34 F.3d 756 (9th Cir. 1994) ..................................................................................10

*In re Chestnut Co., Inc.*,
  39 B.R. 519 (Bankr. D.S.C. 1984) ........................................................................12

*In re City of Stockton*,
 484 B.R. 372 (Bankr. E.D. Cal. 2012) ...........................................................................15, 16

*In re Colonial Mortg. Bankers Corp.*,
 128 B.R. 21 (D.P.R. 1991) ...............................................................................................8

*In re Cummings*,
 221 B.R. 814 (Bankr. N.D. Ala. 1998) .............................................................................14

*In re Elmira Litho, Inc.*,
 174 B.R. 892 (Bankr. S.D.N.Y. 1994) ..............................................................................12

*In re Enron Corp.*,
 419 F.3d 115 (2d Cir. 2005) ............................................................................................11

*In re Jefferson City.*,
 491 B.R. 277 (Bankr. N.D. Ala. 2013) .............................................................................15

*In re Lakeside Cmty. Hosp., Inc.*,
 151 B.R. 887 (N.D. Ill. 1993) ..........................................................................................10

*In re Leibowitz*,
 147 B.R. 341 (Bankr. S.D.N.Y. 1992) ..............................................................................14

*In re Lincoln*,
 144 B.R. 498 (Bankr. D. Mont. 1992) .............................................................................10

*In re McLean Indus., Inc.*,
 121 B.R. 704 (Bankr. S.D.N.Y. 1990) ..............................................................................11

*In re Murrin*,
 477 B.R. 99 (D. Minn. 2012) ..........................................................................................14

*In re Plumberex Specialty Prods., Inc.*,
 311 B.R. 551 (Bankr. C.D. Cal. 2004) .............................................................................16

*In re Pub. Serv. Co. of N.H.*,
 884 F.2d 11 (1st Cir. 1989) ..............................................................................................6

*In re Residential Capital, LLC*,
 2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012) ..................................................16

*In re S. Indus. Banking Corp.*,
 809 F.2d 329 (6th Cir. 1987) ..........................................................................................10

*In re Salience Assocs., Inc.*,
 371 B.R. 578 (Bankr. D. Mass. 2007) ...............................................................................3

*In re Saxe*,
  14 B.R. 161 (Bankr. S.D.N.Y. 1981) ..................................................................11

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990) .................................................................... passim

*In re Taub*,
  413 B.R. 55 (Bankr. E.D.N.Y. 2009) ...............................................................14

*In re Unanue-Casal*,
  159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ..............................13

*In re United Air Lines, Inc.*,
  438 F.3d 720 (7th Cir. 2006) ............................................................................6

*Juan y Jose Fuentes Leduc v. Antero Aponte*,
  63 P.R.R. 187 (P.R. 1944) ................................................................................9

*Junio v. Astoria Fed. Sav.*,
  2002 WL 32001412 (E.D.N.Y. Feb. 25, 2002) ...............................................10

*Kitaeff v. Vappi & Co.*,
  140 B.R. 608 (Bankr. D. Mass. 1992) .............................................................6

*Mullen v. Cheatham*,
  1999 WL 1095917 (Tex. App. Dec. 6, 1999) ...................................................8

*Paris v. Transamerica Ins. Grp. (In re Buckley & Assocs. Ins., Inc.)*,
  78 B.R. 155 (E.D. Tenn. 1987) ......................................................................11

*Unisys Corp. v. Dataware Prods., Inc.*,
  848 F.2d 311 (1st Cir. 1988) .........................................................................12

*WJM, Inc. v. Massachusetts Dep't. of Pub. Welfare*,
  840 F.2d 996 (1st Cir. 1988) ...........................................................................2

## Statutes

31 L.P.R.A. § 3221 .........................................................................................8, 9

31 L.P.R.A. § 3222 .........................................................................................8, 9

11 U.S.C. § 362(a)(7) .........................................................................................13

11 U.S.C. § 362(d)(1) .........................................................................................12

11 U.S.C. § 506(a) ............................................................................................12

11 U.S.C. § 553.........................................................................................2, 8, 10

11 U.S.C. § 553(a) ..................................................................................................2, 6

11 U.S.C. § 553(a)(2)–(3) ..............................................................................................11

11 U.S.C. § 902(2) ..........................................................................................................7

11 U.S.C. § 927 ..............................................................................................................7

48 U.S.C. §§ 2101-2241 .................................................................................................1

PROMESA § 301 ...........................................................................................................2

PROMESA § 315(b) .......................................................................................................1

## OTHER AUTHORITIES

H.R. Rep. No. 595 (1978) ...............................................................................................6

To the Honorable United States District Judge Laura Taylor Swain:

On behalf of the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF")[2] pursuant to the authority granted to it under the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay to Execute Set-Off* [D.I. 974] (the "Motion") filed by Pan American Grain Co., Inc. ("Pan American" or "Movant").  In support of the Objection, AAFAF respectfully states as follows:

## I.    PRELIMINARY STATEMENT

Movant claims it is a holder of Power Revenue Bonds and Power Refunding Bonds issued by PREPA, allegedly having a total face amount of $1,005,000, which with accrued interest, is a claim totalling $1,028,507.50.  Motion ¶ 2.  Movant filed a proof of claim in the amount of $1,643,538.75.[3]  *See id.* ¶ 4.  Movant, in turn, concedes for purposes of the Motion, it owes PREPA $2,211,780.76 for pre-petition electric power services supplied to Movant.  At issue in the Motion is whether the Court should lift the automatic stay to allow Movant to set off its claim against PREPA.  As discussed more fully below, the Court should deny the Motion because (i) Movant fails to satisfy the statutory prerequisites for setoff, and (ii) even if it had, Movant has failed to establish cause exists to lift the stay.

## II.    ARGUMENT

### A.    Movant Does Not Have Setoff Rights

Movant is not entitled to a setoff because: (1) the debts are not mutual, and (2) the perquisites of setoffs under Puerto Rican law are not satisfied.  The debts are not mutual because

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, has authorized AAFAF to file this Objection on behalf of PREPA.

[3] Movant's proof of claim includes claims arising from PREPA bonds due on July 1, 2018.  Movant appears to assert setoff rights only with respect to bonds due on July 1, 2017.

(a) Movant is a beneficial holder, but not legal owner of the bond debt which is enforceable by the indenture trustee, (b) while Movant's proof of claim lists the bonds as unsecured, they are secured,[4] while PREPA's claim against Movant is unsecured, (c) the bond indenture does not allow a bondholder to procure repayment for itself that is not shared pro rata with all bondholders, and (d) PREPA's bonds are nonrecourse, and are to be paid solely from PREPA's "Revenues" as that term is defined in the Trust Agreement (and limited to money actually received from operating the utility, not alternatives sources or means such as setoff).

>  ### i.   The Mutuality Requirement of Section 553(a) is Not Satisfied Here

Section 553 of Title 11 of the United States Code (the "Bankruptcy Code") governs a creditor's "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]" 11 U.S.C. § 553(a).[5] For a setoff to be available under section 553(a) of the Bankruptcy Code, debts must be mutual and the creditor must have a setoff right outside bankruptcy. To determine whether the debts are mutual, the First Circuit has held that "debts must be in the same right and between the same parties, standing in the same capacity." *WJM, Inc. v. Massachusetts Dep't. of Pub. Welfare*, 840 F.2d 996, 1011–1012 (1st Cir. 1988), *abrogated on other grounds by*, *Reopell v. Com. of Mass.*, 936 F.2d 12 (1st Cir. 1991). "The mutuality of debts requirement is generally considered satisfied where the creditor is directly obligated to the debtor and the debtor is, in turn, directly obligated to the creditor, without the

---

[4] PREPA does not concede the validity, perfection, or enforceability of any asserted security interest and reserves all rights with respect thereto.

[5] Section 553 of the Bankruptcy Code is incorporated into PROMESA. *See* PROMESA § 301. Section 553(a) provides three exceptions to the right of setoff in cases of mutual claims between a debtor and creditor in bankruptcy. PREPA lacks information to determine whether certain of these exceptions are applicable here and reserves the right to seek discovery from Movant regarding, among other things, the circumstances of Movant's acquisition of its alleged bond claims against PREPA (PREPA has requested information regarding Movant's PREPA bond holdings, but has not received it by the filing of this Objection).

involvement of third-parties or fiduciary relations . . . provided, of course, that all debts involved in the setoff arose prior to the commencement of the bankruptcy case." *In re Salience Assocs., Inc.*, 371 B.R. 578, 589 (Bankr. D. Mass. 2007) (citing *In re Pub. Serv. Co. of N.H.*, 884 F.2d 11, 14 (1st Cir. 1989)).

Movant's debt to PREPA for electric power services is not mutual with PREPA's debt to bondholders for payment of bond principal and interest. First, the debts are not between the same parties. Movant's debt to PREPA is between Movant and PREPA. PREPA's debt for payment of bond principal and interest, however, is between PREPA and the indenture trustee for *all* bondholders. Movant does not have the right to assert a claim against PREPA for payment of its bond principal and interest under the terms of the Trust Agreement dated January 1, 1974 (the "Trust Agreement"), which governs Movant's Power Revenue Bonds and Power Revenue Refunding Bonds. The Trust Agreement has a "no action clause" prohibiting any action by an individual bondholder to enforce the bondholder's own rights for the sole benefit of itself. Likewise, the Trust Agreement provides the bonds are secured and bars individual bondholders from, "in any manner" affecting the security of the agreement. By not paying the amounts Movant owes PREPA, Movant is affecting the security of the agreement because the security is impacted by the monies Movant owes PREPA and would be setting off. Specifically, Section 808 provides:

> No holder of any of the bonds shall have any right to institute any suit, action or proceeding in equity or at law on any bond or for the execution of any trust hereunder or for any other remedy hereunder unless such holder previously shall have given to the Trustee written notice of the event of default on account of which such suit, action or proceeding is to be instituted, and unless also the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding shall have made written request of the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinabove granted or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and

liabilities to be incurred herein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or to any other remedy hereunder; provided, however, that notwithstanding the forgoing provisions of this Section and without complying therewith, the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding may institute any such suit, action or proceeding in their own names for the benefit of all holders of bonds hereunder.  It is understood and intended that, except as otherwise above provided, *no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Agreement, or to enforce any right hereunder except in the manner herein provided,* that *all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all holders of such outstanding bonds and coupons, and that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.*

Trust Agreement § 808 (emphasis added).  Under the terms of the Trust Agreement, the right to enforce the rights of the bondholders, including "sue for, enforce payment of and receive any and all amounts then or during any default becoming, and at any time remaining, due from PREPA for principal, interest or otherwise under any of the provisions of this Agreement or of the bonds and unpaid, with interest on overdue payments of principal at the rate or rates of interest specified in such bonds" resides with the Trustee, *id.* § 804, and can only be brought by an individual bondholder if a written notice is given by bondholders of at least 10% of aggregate amount in principal to the Trustee of an event of default, and the Trustee unreasonably refuses to bring an action in its name on behalf of the bondholders.  *See id.* § 808.  Further, even if bondholders of at least 20% in aggregate principal of amount of the bonds were to choose to institute an action in their own names (reaching such aggregate amount dispenses with the requirement to demand the Trustee first bring an action), it must be *for the benefit of all bondholders*.  *See id.* § 808.

Further, under Section 805 of the Trust Agreement, PREPA pays principal and interest due on the bonds to the Trustee, which then distributes the funds on a *pro rata* basis to bondholders.

4

The rights of the bondholders under the Trust Agreement, therefore, are to be exercised for the benefit of **all** bondholders and not for the benefit of any single bondholder. An individual bondholder does not have the right to force payment of bond principal and interest solely for its own benefit. By attempting to implement a setoff, Pan American seeks to enforce the rights specific to its claim—a 100% recovery on its bonds through a dollar for dollar reduction in the amount it owes PREPA—for the sole benefit of itself. The plain language of the Trust Agreement, however, prohibits Movant from enforcing any rights it may have as a bondholder for its own benefit and not for the benefit of all bondholders.

In addition, contrary to the terms of Sections 805 and 808, Movant's setoff would prejudice other bondholders. If Movant were allowed to setoff its bond claim against its debt to PREPA for electric power services, Movant effectively would reduce the revenues securing the bonds while Movant would receive full payment of the principal and interest on its bonds ahead of all other bondholders, leaving no benefit to be distributed on a *pro rata* basis among other bondholders. The Trust Agreement precludes Movant's assertion of any individual action to enforce any rights in connection with its bonds for its own benefit. Accordingly, Movant's separate debt to PREPA cannot be offset by any portion of PREPA's joint debt to all bondholders. *See Gray v. Rollo*, 85 U.S. 629 (1873) (the seminal setoff case holding that a debt to several joint creditors cannot be setoff against a debt due by one of them as equity would not allow the discharge of a debt out of the joint fund); 4 Norton Bankr. L. & Prac. 3d § 73:5 ("A joint obligation cannot be set off against a separate obligation, nor can a separate obligation be set off against a joint obligation.").

Second, the debts are not in the same capacity. Movant's debt to PREPA is in Movant's individual capacity as a customer of PREPA, while Movant's claim against PREPA is merely a beneficial interest in the *pro rata* payment of bond principal and interest in PREPA's bond debt

5

payable to the Trustee.  *See In re Ampal-American Isr. Corp.*, 545 B.R. 802, 814 (Bankr. S.D.N.Y.

2016) (holding that a party was not entitled to set off because the claims are owed to the Trustee

for the benefit of bondholders); *cf. In re United Air Lines, Inc.*, 438 F.3d 720, 731 (7th Cir. 2006)

(finding U.S. Bank, as *indenture trustee* for beneficial bondholders of United Air Lines, satisfied

mutuality requirement against United's postpetition reimbursement request for work performed

prepetition) (emphasis added); *see also Kitaeff v. Vappi & Co.*, 140 B.R. 608, 614 (Bankr. D. Mass.

1992) (where the parties are identical but they stand in different relationships in the various

transactions, mutuality does not exist and setoff is impermissible).  Also, while Movant's proof of

claim lists the bonds as unsecured, they are secured, while PREPA's claim against Movant is

unsecured.  The debts therefore lack mutuality and cannot be set off under section 553(a) of the

Bankruptcy Code.

Prohibiting Movant's setoff prevents a danger inherent in setoffs and long-recognized by

the First Circuit, which has explained:

> The orderly reorganization of debtors is the paramount objective of Chapter 11. In
> attaining that objective, it is important—as, indeed, it is important in administering
> other chapters of the Bankruptcy Code—that creditors should be treated fairly. As
> Congress recognized, setoffs work against both the goal of orderly reorganization
> and the fairness principle because they preserve serendipitous advantages accruing
> to creditors who happen to hold mutual obligations, thus disfavoring other equally-
> deserving creditors and interrupting the debtor's cash flow. *See* H.R.Rep. No. 595,
> *supra, reprinted in* 1978 U.S. Code Cong. & Admin. News 6143–45; *see also
> Boston and Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562, 566 (7th Cir.
> 1986) (discussing inequity of preferring one creditor over other creditors of the
> same class "because of the happenstance" of mutual obligations). Consequently,
> the circle of creditors entitled to exercise setoff rights in bankruptcy is tightly
> circumscribed.

*In re Pub. Serv. Co. of New Hampshire*, 884 F.2d 11, 13 (1st Cir. 1989).  Because the debts at issue

lack mutuality and their setoff would cause prejudice to other bondholders, Movant's requested

relief should be denied.

<u>Third</u>, Movant's bonds are nonrecourse, as "payable solely from the 'Revenues'" as defined in the Trust Agreement. *See* Trust Agreement § 701. "Revenues" is defined as "all *moneys received* by [PREPA] in connection with or as a result of its ownership or operation of the System . . . ." *Id.* § 101 (emphasis added). Satisfaction of an account receivable for utility services through purported setoff rights does not give rise to "Revenues" as there is no money received by PREPA. Therefore, Movant is seeking payment from a source other than Revenues; *i.e.*, from PREPA itself as though Movant were a recourse creditor. As PREPA's bonds are payable solely from "special revenues" as defined in Bankruptcy Code section 902(2), section 927 provides the bonds shall not be treated as having recourse against PREPA. Accordingly, Movant is seeking partial recourse in violation of the Trust Agreement and in contravention of section 927.

Case law supports denying a nonrecourse creditor the privilege of setoff for lack of mutuality. In *In re Allen–Main Assocs., Ltd. P'ship*, 233 B.R. 631 (Bankr. D. Conn. 1999), Allen–Main had previously been awarded a judgment of $13,320.56 for legal fees assessed against CC Britain after CC Britain's involuntary chapter 7 petition against it was dismissed. *Id.* at 633. CC Britain's sole asset was a mortgage note, secured by property owned by Allen–Main in New Britain, Connecticut, which was in default. *Id.* Allen–Main filed a motion seeking to require CC Britain to turn over the mortgage note to satisfy its judgment. *Id.*

CC Britain objected on multiple grounds, including that it retained a right of setoff against the judgment debt. *Id.* The court disagreed, however, holding that because the mortgage note was nonrecourse, Allen–Main was not personally liable to CC Britain on the debt:

> Because the mortgage note is non-recourse, Allen–Main is not personally liable to CC Britain for the debt. Because CC Britain has recourse only against the property, the indebtedness under the mortgage note is not "mutual" and, therefore, not eligible for setoff. *See General Consol., Ltd. v. Rudnick & Sons, Inc.*, 4 Conn. Cir. Ct. 581, 585, 237 A.2d 386 (1967) ("Mutual debts ... are cross debts in the same capacity and right and of the same kind and quality.")

*Id.* at 635.  CC Britain's claim was thus not mutual with the judgment debt it owed Allen–Main.

*Id.  See also Mullen v. Cheatham*, 1999 WL 1095917, at *3 (Tex. App. Dec. 6, 1999) (citing Allen–Main, and holding that allowing a party to use a nonrecourse note to setoff its debt would "effectively make [the note issuer] personally liable on the note, which would contravene the clear terms of the note[; therefore,] mutuality of obligation does not exist.").  Accordingly, Movant cannot use its non-recourse bonds to offset its liability to PREPA.

### ii.     *The Debts Do Not Qualify for Setoff under Puerto Rican Law*

Movant is also not entitled to a setoff because the debts do not satisfy the prerequisites to a setoff under Puerto Rican law.  Section 553 of the Bankruptcy Code does not create a right to setoff; rather, "the party claiming setoff must present some independent federal or state substantive law on which to prove its property right in this regard."  *In re Colonial Mortg. Bankers Corp.*, 128 B.R. 21, 24 (D.P.R. 1991).  Under Puerto Rican law, the right to set off is governed by 31 L.P.R.A. §§ 3221, 3222.  Section 3221 provides that "[c]ompensation shall take place when two (2) persons, **in their own right**, are mutually creditors and debtors of each other." 31 L.P.R.A. § 3221 (emphasis added),[6]  In addition, the five prerequisites to a setoff under 31 L.P.R.A. § 3222 are:

1. That each of the persons bound should be so principally, and that he be at the same time the principal creditor of the other.
2. That both debts consist of a sum of money or, when the things due are perishable, that they be of the same kind and also of the same quality, if the latter should have been stipulated.
3. That both debts are due.
4. That they be determined and demandable.
5. That none of them is subject to any retention or suit instituted by a third person, and of which due notice has been given the debtor.

*See* 31 L.P.R.A. §§ 3222.

---

[6] The term "compensation" as used in 31 L.P.R.A. § 3221 refers to setoffs.  *See In re Colonial*, 128 B.R. at 25.

As asserted above, Movant has failed to satisfy the requirements of Sections 3221 and 3222.  Movant has not satisfied Section 3221 because it is not a mutual creditor of PREPA **in its own right**.  Under the terms of the Trust Agreement, Movant has no right to enforce in an individual capacity payment of bond principal and interests.  *See* Trust Agreement §§ 804, 808.

In addition, Movant has not satisfied the first, fourth, and fifth requirements under Section 3222.  Bondholders collectively, and not Movant individually, are the creditors of PREPA under the Trust Agreement.  Movant's individual bond debt is also not demandable[7] because Movant lacks standing to enforce the payment of bond principal and interest.  *See Juan y Jose Fuentes Leduc v. Antero Aponte*, 63 P.R.R. 187 (P.R. 1944) (holding that for compensation to be awarded, it must be based on a liquidated and enforceable demand).

Finally, even assuming *arguendo* that Movant had a right to enforce in an individual capacity payment of bond principal and interest, any such payment would be subject to retention or claim by the Trustee pursuant to the Trust Agreement.  Section 905 of the Trust Agreement provides:

> Compensation and identification of Trustee**.** Subject to the provisions of any contract between the Authority and the Trustee relating to the compensation of the Trustee, the Authority shall, from the Revenues, pay to the Trustee reasonable compensation for all services performed by it hereunder and also all its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created and the performance of its powers and duties hereunder, and, from such Revenues only, shall indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder. If the Authority shall fail to make any payment required by this Section, **the Trustee may make such payment from any moneys in its possession under the provisions of this Agreement and shall be entitled to a preference therefor over any of the bonds or coupons outstanding hereunder.**

---

[7] It is also not clear if the claims are "determined" at this point.

The preference afforded by Section 905 of the Trust Agreement to the Trustee for payment of its compensation over any outstanding bonds or coupons constitutes a third party retention right that negates any offsets against the subordinated bonds or coupons.

Therefore, Movant is not entitled to a setoff under Puerto Rican law.

### B.    Allowing Setoff is Permissive, Not Mandatory

Even where a party meets the technical requirements of setoff under section 553 (which Movant does not), the decision to allow setoff "lies within the equitable discretion of the trial court." *In re S. Indus. Banking Corp.*, 809 F.2d 329, 332 (6th Cir. 1987); *Junio v. Astoria Fed. Sav.*, No. CV-98-7527, 2002 WL 32001412, at *5 (E.D.N.Y. Feb. 25, 2002) ("setoffs under § 553 are subject to the Bankruptcy Court's equitable discretion, and therefore are not mandatory"); *see also In re Cascade Roads, Inc.*, 34 F.3d 756, 764 (9th Cir. 1994); *In re Lakeside Cmty. Hosp., Inc.*, 151 B.R. 887, 890 (N.D. Ill. 1993); *Blanton v. Prudential–Bache Sec. (In re Blanton)*, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989); *In re Lincoln*, 144 B.R. 498, 502 (Bankr. D. Mont. 1992). In deciding whether to grant a creditor's request for a setoff, policy and equitable reasons should be considered by the court. "The intent of the statute is clear that one creditor should not be unfairly favored over the class of creditors and, when justice dictates, setoff must be denied." *In re S. Indus. Banking Corp.*, 809 F.2d at 332 (6th Cir. 1987).

Such unfairness is precisely what would occur here were Movant permitted to setoff its bond claims. It is entirely fortuitous that Movant—one of countless PREPA bondholders—also happens to be delinquent in paying for services PREPA provided to it. The unfairness of granting Movant's request of setoff is made apparent by examining the sequence of events to unfold if the Court grants the Motion. PREPA bondholders will scour their books and records for monies owed and unpaid to PREPA, who is the sole provider of electricity to businesses and residents of the Commonwealth; those finding such obligations will obtain a 100% recovery on their bonds up to

10

the amount of their unpaid obligations, while those who had not been both (1) trade customers of PREPA with (2) unpaid balances on services provided by PREPA will have their recoveries diluted accordingly.  Such a result will slow down PREPA's collection efforts and will deny PREPA cash, which it needs for operation and payment of its postpetition obligations. Bankruptcy courts routinely disfavour relief which grants windfalls to certain creditor groups at the expense of other similarly situated creditors as inequitable.  *See, e.g.*, *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990) (citing *In re Saxe*, 14 B.R. 161, 165 (Bankr. S.D.N.Y. 1981)); *see also In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005).  Additionally, if Movant withheld payment of its power bills from PREPA and/or acquired bonds at a discount in the months leading up to PREPA's Title III filing in the hopes of obtaining discounted power, setoff would not be available even if Movant otherwise satisfied the applicable requirements.  *See* 11 U.S.C. § 553(a)(2)–(3).

Further, setoff in this instance would harm, not help PREPA.  If setoff is granted, PREPA will have less cash than if it is denied, potentially forcing it to borrow additional funds (PREPA has already been forced to seek DIP financing since the petition date).  Movant owes PREPA over $2 million; if the Motion is granted, the amount Movant will pay to PREPA will be decreased by the over $1 million it seeks to setoff.  This runs contrary to the purpose of the Bankruptcy Code's provision for reorganizations to preserve going concern value, as debtors need to be able to collect amounts owed to it to have sufficient liquidity to run their businesses.  *See, e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 471 (1974) (denying a motion to set off in a section 77 reorganization [pre–Chapter 11 Bankruptcy Act case] of a railroad and noting "the aim [of a] financial restructuring [is] to put back into operation a going concern[, which requires considering] the collection of amounts owed to the bankrupt to keep its cash inflow sufficient for operation purposes"); *see also Paris v. Transamerica Ins. Grp. (In re Buckley & Assocs. Ins., Inc.)*, 78 B.R.

155, 158 (E.D. Tenn. 1987) (citing *Gold Seal*, *supra*, favorably and holding "[s]et-off is permissible in Chapter 11, but only where it does not undermine the debtor's ability to reorganize").

### C.   The Stay Should Be Maintained in this Case.

Similar considerations militate in favor of maintaining the automatic stay.  An order lifting the automatic stay is an "extraordinary remedy."  *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  The purpose of the automatic stay is to provide the debtor "a breathing spell from his creditors and forestall[] a race of diligence by creditors for the debtor's assets."  *Unisys Corp. v. Dataware Prods., Inc*., 848 F.2d 311, 313 (1st Cir. 1988) (internal quotations omitted).

As such, a court may lift the automatic stay only upon a showing of cause, including for lack of adequate protection.  *See* 11 U.S.C. § 362(d)(1).  Here, if Movant has a right to setoff, it may be entitled to adequate protection as a secured creditor.  *See, e.g.*, *In re Chestnut Co., Inc.*, 39 B.R. 519, 522 (Bankr. D.S.C. 1984).  However, even assuming Movant had such entitlement (which it does not, as shown above), Movant is adequately protected because any purported right to assert setoff is not diminishing.  Even if Movant had the right of setoff, and thereby a secured claim under section 506(a) of the Bankruptcy Code, it would have to show the value of its "security" is declining (or there is a threat it will decline) to establish a *prima facie* case that there is a factual and legal right to the relief Movant seeks.  *See In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994); *see also In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Movant does not even attempt to show any diminution of value.  Movant has maintained the value of any setoff right it had by failing to pay PREPA what it owes PREPA for electricity. What Movant should have done is ask PREPA for an agreement providing that to the extent Movant had a valid setoff right, Movant's payment of its electricity bills shall not diminish the

12

amount of the secured claim Movant had as a result of its setoff rights. PREPA is willing to enter

into such an agreement. Accordingly, even if Movant had a right to setoff, there would be no cause

to lift the stay for lack of adequate protection. *See, e.g.*, *In re Applied Logic Corp.*, 576 F.2d 952,

958 (2nd Cir. 1978) ("The stay is lifted unless the party asserting the right of setoff is adequately

protected . . .").

Other than for lack of adequate protection, "cause" is not defined in the Bankruptcy Code.

*See In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).

Movant first attempts to argue cause exists merely by virtue of the alleged existence of the setoff

right in the first place. Motion at 14. This fails because it would render section 362(a)(7)

completely superfluous. Not surprisingly, Movant cites no supporting authority.

Movant seems to concede, however, that courts in this Circuit typically review cause for

stay relief by analyzing the "*Sonnax*" factors, as follows:

(1) whether relief would result in complete or partial resolution of the issues;
(2) the lack of any connection with or interference with the bankruptcy case;
(3) whether the foreign proceeding involves the debtor as fiduciary;
(4) whether a specialized tribunal has been established to hear the cause of action at issue;
(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) whether the action essentially involves third parties rather than the debtor;
(7) whether the litigation could prejudice the interest of other creditors;
(8) whether a judgment in the foreign action is subject to equitable subordination;
(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
(12) the impact of the stay on the parties and the "balance of hurt."

*See id.* at 95–96 (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing

of the various harms at stake" and will lift the stay only if the harm engendered by allowing the

13

stay to remain in place exceeds the harm caused by lifting it. *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016). Movant bears the burden of establishing cause, *see id.*, and, given that they are not secured claimholders asserting a lack of adequate protection, their burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992). As more fully explained below, *Sonnax* factors one, two, six, seven, ten, eleven, and twelve apply here and all weigh against lifting the stay.[8]

The first *Sonnax* factor—whether relief would result in a complete or partial resolution of the issues—focuses on whether allowing the litigation to proceed would expeditiously resolve issues relevant to the bankruptcy case. *See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009). This first factor not only relates to whether lifting the stay would result in complete resolution of any underlying stayed case, but also to whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g.*, *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998). Contrary to Movant's argument, lifting the automatic stay to allow Movant to seek a setoff will not in any way resolve issues relevant to PREPA's Title III case. As noted above, the first factor does not focus on the issues in the underlying litigation (here, as Movant asserts, satisfaction of Movant's claim by setoff). *See* Motion at 15. That Movant's claim will be resolved by lifting the automatic stay to allow satisfaction of its claim is true of any creditor seeking to lift the automatic stay, and the first *Sonnax* factor would then always weigh in favor of lifting the stay. Accordingly, Movant has

---

[8] The remaining *Sonnax* factors three, four, five, eight, and nine—*i.e.*, whether the foreign proceeding involves the debtor as a fiduciary, whether a specialized tribunal has been established to hear the cause of action at issue, whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation, whether a judgment in the foreign action is subject to equitable subordination, and whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor respectively—are not addressed as they are inapplicable here.

failed to articulate any issue in PREPA's Title III case that would support lifting the automatic stay under the first *Sonnax* factor.

The second *Sonnax* factor—the lack of any connection or interference with the Title III case—also weighs against lifting the stay. Just as this Court has stated, to lift the automatic stay "would prejudice PREPA at a time when its resources are constrained by requiring the expenditure of PREPA's already depleted resources (both financial and personnel) and diverting attention from the reconstruction of PREPA's electrical grid and future planning." *See* Dkt. Nos. 814 and 815.[9] Requiring PREPA to potentially litigate setoffs under the Trust Agreement[10] would divert PREPA's resources—financial as well as personnel—that are essential to PREPA's global reorganization (as opposed to resolving issues of one creditor at a time) and recovery efforts. *See In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (declining to lift the stay because the stayed action "necessarily would consume the time and attention" of the debtor when the debtor's "undivided time and attention" was required by the bankruptcy case); *In re Jefferson Cty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) ("[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"). As a result, the second *Sonnax* factor supports denial of the Motion.

The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the lawsuit primarily involves third parties rather than the debtor.

---

[9] PREPA Dkt. 814 and 815 are the Court's memorandum orders denying relief from stay requested by Wide Range Corporation and Master Link Corporation, respectively.

[10] Indeed, as the sole provider of electricity to the residents and businesses in the Commonwealth, there may be other entities holding PREPA bonds who will seek the same relief here and divert PREPA's scarce resources from its global restructuring and reconstruction.

*See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).  Here, Movant asserts it is entitled to set off its claim against PREPA with amounts Movant owes PREPA for pre-petition electricity services.  No other parties are involved.  Therefore, the sixth *Sonnax* factor weighs in favor of denying the Motion.

*Sonnax* factor seven—whether litigation in another forum would prejudice the interests of other creditors—likewise favors the maintaining of the automatic stay.  Even if Movant were entitled to set off (it is not), granting the Motion's requested relief would prejudice the interests of all other creditors by prematurely requiring PREPA to effectively distribute funds to Movant in full payment of its holdings while other bondholders must wait for payment on its holdings for what may be less than full payment.  In addition, it would deny PREPA the cash that Movant owes PREPA for electricity in the amount claimed by Movant (approximately $1.6 million) and money or resources expended by PREPA to address the Motion's requested relief is diverted from other more productive uses, a factor that courts have recognized counsels against lifting a bankruptcy stay.  *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 563–64 (Bankr. C.D. Cal. 2004) (rejecting an effort to lift the stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re City of Stockton*, 484 B.R. at 379 (declining to lift the stay in part because the "expense of further litigation [] will deplete the coffers of the City treasury").

16

*Sonnax* factors ten and eleven—the interests of judicial economy and the expeditious and economical resolution of litigation, and whether the parties are ready for trial in the other proceedings—also support maintaining the automatic stay because there is no ongoing litigation whatsoever. The interest of judicial economy in litigation cannot be served where there is no litigation to be resolved (indeed, Movant has no right to setoff), much less be resolved either expeditiously or economically. *See Sonnax*, 907 F.2d at 1286. Moreover, no additional litigation will result from denial of stay relief—Movant's bonds will be restructured along with over $8 billion in other PREPA bonds, and Movant should simply pay the invoices its Motion concedes are due and owing to PREPA. Likewise, factor eleven strongly favors the maintenance of the automatic stay because the parties are in no manner prepared for trial regarding the Trust Agreement, let alone Movant's bonds.

Finally, the twelfth *Sonnax* factor—the impact of the stay on the parties and the "balance of hurt"—strongly weighs in favor of maintaining the stay. While Movant contends that relief from stay "will yield a cash payment to PREPA," Motion at 12, Movant should have been paying PREPA. PREPA will seek to collect any and all amounts due from Movant whether or not the automatic stay is lifted. As aforesaid, PREPA will agree that to the extent Movant has a valid setoff right, Movant's payments to PREPA shall not reduce the amount of the secured claim Movant would have as a result of its setoff rights. Should the stay remain in place, the only harm to Movant is that it will remain on equal footing with other PREPA bondholders. Therefore, under the twelfth *Sonnax* factor, the balance of equities weighs in favor of denying the Motion.

## III. CONCLUSION

For the reasons set forth above, Movant has failed to show that cause exists to lift or modify the automatic stay. PREPA therefore respectfully requests that the Motion be denied.

Dated:  October 17, 2018
Respectfully Submitted,


*/s/ Arturo Diaz-Angueira*
Arturo Diaz-Angueira
USDC No. 117907
adiaz@cnrd.com

*/s/ Katiuska Bolaños-Lugo*
Katiuska Bolaños-Lugo
USDC No. 231812
kbolanos@cnrd.com

**CANCIO, NADAL, RIVERA & DIAZ, PSC**
403 Muñoz Rivera Ave.
San Juan, PR 00918-3345
Tel:  (787) 767-9625
Fax:  (787) 622-2230

*Attorneys for Puerto Rico Electric Power Authority*