# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO

     Debtor.

-------------------------------------------------------------x

|  |
|---|
| PROMESA<br>Title III |
| No. 17 BK 3283-LTS |
| **Re: ECF No. 4012** |
| (Jointly Administered) |

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

# OBJECTION OF THE COMMONWEALTH TO
# URGENT MOTION TO CONTINUE EMPLOYMENT
# DISCRIMINATION CASE FILED BY LUZ PIZARRO-CORREA

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

OBJECTION .................................................................................................................... 3

     I.     MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT
           THE STAY ........................................................................................... 4

     II.    THE MERITS OF MOVANT'S LAWSUIT IS IRRELEVANT TO THE
           STAY RELIEF ANALYSIS................................................................. 14

CONCLUSION............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
    217 F. Supp. 3d 508, 518, 529 (D.P.R. 2016)...............................................6,10

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,*
    369 B.R. 87, 94-5 (D.P.R. 2007) ......................................................................6

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),*
    28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) .......................................................11

*FCC v. NextWave Pers. Commc'ns Inc.,*
    537 U.S. 293, 302 (2003)..................................................................................8

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*
    2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ......................11

*In re 234-6 West 22nd St. Corp.,*
    214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).......................................................5

*In re BFW Liquidation, LLC,* No. 09-00634-BGC-11,
    2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ............................8

*In re Breitburn Energy Partners LP,* No. 16-10992,
    2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)...............................7

*In re City of Stockton,*
    484 B.R. 372, 374, 378 (Bankr. E.D. Cal. 2012)...............................................9

*In re Cummings,*
    221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ......................................................7

*In re Gatke Corp.,*
    117 B.R. 406, 410 (Bankr. N.D. Ind. 1989)......................................................10

*In re Jefferson Cnty.,*
    491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) ......................................................5

*In re Motors Liquidation Co.,* No. 09- 50026,
    2010 WL 4630327, at *4 (S.D.N.Y. 2010)........................................................12

*In re Murrin,*
    477 B.R. 99, 109 (D. Minn. 2012) .....................................................................7

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2

006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ..................................10

*In re Plumberex Specialty Prod., Inc.*,

311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) ...............................................12

*In re Residential Capital, LLC*, No. 12-12020,

2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ......................9,11,13

*In re Taub*,

413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)...........................................................7

*In re Tribune Media Servs. v. Beatty (In re Tribune Co.)*

418 B.R. 116 (Bankr. D. Del. 2009) ......................................................... 15-16

*In re Unanue-Casal*,

159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ...................... 5-6,15

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,

362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) ...........................................................5

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,

537 B.R. 128, 140 (Bankr. D.P.R. 2015) ........................................................4

*Peaje Invs. LLC v. Garcia-Padilla*,

2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ...........................6

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,

980 F.2d 110, 117 (2d Cir. 1992)....................................................................8

*Soares v. Brockton Credit Union (In re Soares)*

107 F. 3d 969, 975 (1st Cir. 1997)..................................................................4

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,

907 F.2d 1280, 1286, 1287 (2d Cir. 1990).......................................1,3-8, 10-11,13-14, 16

*Unisys Corp. v. Dataware Prods., Inc.*,

848 F.2d 311, 313 (1st Cir. 1988)...................................................................5

# TABLE OF AUTHORITIES
(continued)

Page(s)

## STATUTES

11 U.S.C. § 101(5) ...........................................................................................12

11 U.S.C. § 101(10) (a) ...................................................................................12

11 U.S.C. § 362(a) .......................................................................................1, 4

11 U.S.C. § 362(d) ...........................................................................................3

11 U.S.C. § 362(d)(1) .......................................................................................5

11 U.S.C. § 922 ................................................................................................9

48 U.S.C. § 2101 .............................................................................................8

PROMESA § 301(a) .....................................................................................1,4-5

PROMESA § 315(b) ..........................................................................................1

Act No.  44 of July 2, 1985, as amended ("Act 44"),

    P.R. Laws Ann. tit. 1, §§ 501 et seq.. ......................................................2

Act No. 100 of June 30, 1959, as amended ("Act 100"),

    P.R. Laws Ann. tit. 29, §§ 146 et seq ................................................. 2-3

Act No. 115 of December 20, 1991, as amended ("Act 115"),

    P.R. Laws Ann. tit. 29, §§ 194 et seq.. .............................................. 2-3

Fed. R. Civ. P. 12(b)(6).....................................................................................2

## OTHER AUTHORITIES

H.R. Rep. No. 95-595 at 309, (1977) ...............................................................8

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Urgent Motion for Relief from Stay to Continue Employment Discrimination Case* [ECF No. 4012] (the "Motion") filed by Luz Pizarro-Correa ("Movant"), a party in the case captioned *Luz Pizarro Correa v. Commonwealth*, Civil No. 16-2598 (the "Lawsuit"), pending before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.      On September 7, 2016, Movant commenced the Lawsuit against the Commonwealth, the Treasury Department of Puerto Rico[3] ("PRTD") and Alberto Cardona-Crespo ("Mr. Cardona" and jointly with PRTD and the Commonwealth, the "Defendants") for events that allegedly occurred before the commencement of this Title III case on May 3, 2017. The Lawsuit seeks declaratory relief, reinstatement to her prior position with the PRTD, injunctive relief, back pay, and compensatory and general damages allegedly suffered as a consequence of the Defendants' alleged gender and disability discrimination in the terms and conditions of Movant's employment. The summons was served October 31, 2016, before the commencement of this Title III case.

2.      The complaint alleges violations of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Movant also invoked supplemental

---

[2]     The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3]     The Treasury Department of Puerto Rico is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

jurisdiction to adjudicate claims pursuant to Act No. 44 of July 2, 1985, as amended ("Act 44"),

P.R. Laws Ann. tit. 1, §§ 501 et seq.; Act No. 115 of December 20, 1991, as amended ("Act 115"),

P.R. Laws Ann. tit. 29, §§ 194 et seq.; and Act No. 100 of June 30, 1959, as amended ("Act 100"),

P.R. Laws Ann. tit. 29, §§ 146 et seq.

3.      On December 28, 2016, before the commencement of the Commonwealth's Title

III case, the Defendants moved to dismiss Movant's complaint pursuant to Rule 12(b)(6) of the

Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss").  On May 3, 2017, the

Commonwealth filed a petition under Title III of PROMESA to commence its Title III case.  On

June 6, 2017, the Commonwealth filed in the Lawsuit a *Notice of Automatic Stay of Proceedings*

*Pursuant to the Commencement of Case Under Title III of PROMESA* requesting that the District

Court take notice of, among other things, the automatic stay applicable to the Lawsuit.  On the

same date, the District Court issued an order staying the Lawsuit.

4.      On June 14, 2017, Movant filed the *Urgent Motion for Relief From Stay* [ECF No.

328] (the "First Lift Stay Motion") seeking an order lifting the automatic stay to allow Movant to

proceed with the Lawsuit.  On July 12, 2017, this Court entered the *Memorandum Order Granting*

*Motion of Luz-Pizarro-Correa for Relief from the Automatic Stay* [ECF No. 617] (the "Lift Stay

Order") lifting the automatic stay "to permit the completion of briefing on, and the determination

of, the pending motion to dismiss the complaint in [the Lawsuit]."  Lift Stay Order at 5.  After the

automatic stay was partially modified pursuant to the Lift Stay Order, the Lawsuit proceeded to

the determination of the Motion to Dismiss.  On July 31, 2018, the District Court issued its *Opinion*

*and Order* [Case No. 16-2598 (D.P.R.), ECF No. 36], (i) dismissing all claims against Mr.

Cardona, with prejudice (ii) dismissing all ADA and Puerto Rico state law claims under Act 44,

Act 115, and Act 100, with prejudice, (iii) dismissing Movant's Title VII retaliation claim, without

2

prejudice, and (iv) denying the Motion to Dismiss with respect to Movant's Title VII gender discrimination and hostile work environment claims against the Commonwealth and the PRTD.

5.      On October 4, 2018, Movant filed the Motion seeking to lift the automatic stay to proceed with the Lawsuit against the Commonwealth and the PRTD with respect to Movant's Title VII gender discrimination and hostile work environment claims.

6.      As further explained below, the Motion should be denied as Movant has failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code").  As a potential, prepetition, unsecured litigation claimant, Movant has failed to demonstrate the extraordinary circumstances necessary to show why her claims should not be resolved through the claims resolution process to be undertaken in the Title III cases.

7.      Indeed, Movant asserted the same arguments in its First Lift Stay Motion, which this Court rejected in only providing a limited modification of the automatic stay to allow the Lawsuit to proceed to the determination of the Motion to Dismiss.  *Compare* First Lift Stay Motion ¶¶ 6-7 *with* Motion ¶¶ 6, 8.  Other than the District Court's decision on the Motion to Dismiss, the facts of the Lawsuit remain the same as they were when Movant filed the First Lift Stay Motion. The Lawsuit remains in the preliminary stages and is not ready for trial, as no answer has been filed, nor have discovery, pretrial hearings, the preparation and filing of the pretrial report, or any other ensuing hearings and filings necessary for the underlying action to proceed to adjudication been completed.  Further, Movant relies on conclusory statements to assert that cause exists to lift the automatic stay, while vaguely purporting to apply the *Sonnax* factors to the facts of the underlying action.

8.      Considering the procedural stage of the Lawsuit, the majority of the *Sonnax* factors

3

weigh in favor of maintaining the automatic stay and denying the Motion. Therefore, it is respectfully submitted that the Motion be denied.

## **OBJECTION**

## I.    **MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY**

9.      Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a).  The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

10.      "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's

4

ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

11. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

12.     Courts in this Circuit have adopted these "*Sonnax* factors."  *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

13.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one.  *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr.

6

14, 2017). Here, the *Sonnax* factors squarely support maintaining the automatic stay and merit against awarding the remedy Movant seeks.

14. ***Sonnax* Factor 1:** The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

15. Here, Movant has failed to show how allowing the Lawsuit to proceed would resolve any issues relevant to the Commonwealth's Title III case. Indeed, the Motion notes that the Lawsuit "does not involve bankruptcy law or require the expertise of a bankruptcy judge . . . ." Motion ¶ 6. Tellingly, Movant asserts the same arguments made in the First Lift Stay Motion as cause to lift the automatic stay to proceed with the Litigation—the same reasons this Court reject in only providing a partial modification of the stay to allow the District Court to rule on the Motion to Dismiss. Nothing has changed since Movant made the same arguments in the First Lift Stay Motion. Accordingly, lifting the automatic stay would not resolve any issues relevant to the Commonwealth's Title III case. Contrary to Movant's assertion that "a bankruptcy case will not resolve Movant's employment discrimination claim," *id.*, Movant's claims, if any, could be

7

resolved through the claims resolution process to be undertaken in the Title III cases.  Therefore, the first *Sonnax* factor supports denying the Motion.

16.    **_Sonnax_ Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay.  First, lifting or modifying the stay to allow the resolution of Movant's claims in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. The claims adjustment process under Title III applies with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

17.    As a potential, prepetition, unsecured litigation claimant of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Requiring the Commonwealth to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those

8

suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

18.     Second, lifting or modifying the stay to proceed with the Lawsuit will interfere with the Title III case by diverting the Commonwealth's attention and resources to defending Movant's claims in another forum and will encourage other claimants to seek similar relief.  Should every plaintiff with an asserted prepetition claim be given carte blanche to litigate their claims, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget.  This would impede the restructuring process, and should be avoided.  *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

19.     In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374.  The plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case.  *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.*  "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

20.     Here, there are processes pending that are necessary for the Lawsuit to move forward following the District Court's determination of the Motion to Dismiss, such as answering

the complaint, conducting discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.

21.      Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant's conclusory statement that "her civil action will have very little or no effect in this bankruptcy" (Motion ¶ 3) fails to satisfy Movant's heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

22.      ***Sonnax* Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion.  No specialized tribunal has been established to hear the Lawsuit, which is pending before the District Court.  Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

23.      ***Sonnax* Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion.  No insurer of the Commonwealth has assumed any financial responsibility for

10

defending the Lawsuit, and Movant does not allege any facts to the contrary. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

24.     **_Sonnax_ Factor 6**:   The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the Lawsuit primarily involves third parties *rather than* the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at \*20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at \*33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

25.     Here, the Commonwealth and the PRTD, an agency of the Commonwealth, are the only defendants that remain in the Lawsuit, as the District Court dismissed all claims against Mr. Cardona.  Accordingly, the Lawsuit does not involve third parties at all.

26.     Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

27.     **_Sonnax_ Factor 7**:   The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.   The Commonwealth would have to expend considerable time and expense to litigate the Lawsuit by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings,

preparing and filing the pretrial report, and litigating the ensuing trial. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").

28.     Movant's arguments that she is "not an investor, not a creditor" of the Commonwealth, and that litigating the Lawsuit will have little or no effect on the Title III Case and will not interfere with distribution of assets, are unsupported and fail to satisfy Movant's heavy burden to establish cause. Motion at 2, 5. Contrary to Movant's assertion, Movant is potential, prepetition, unsecured litigation claimant of the Commonwealth who has asserted claims in the Lawsuit for, among other things, compensatory and general damages. *See* Case No. 16-cv-02598-FAB, ECF No. 1. "Claim" is defined in Bankruptcy Code section 101(5) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5). "Creditor" is defined as, among other things, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." 11 U.S.C. § 101(10(A). Accordingly, Movant's assertion that she is not a creditor of the Commonwealth is contrary to the plain language of the Bankruptcy Code.

29.     Furthermore, lifting the automatic stay to allow the Lawsuit to proceed would

12

require the Commonwealth to deplete its limited resources to defend against the Lawsuit and the divert the Commonwealth's attention away from proceeding expeditiously through its Title III case, which would inure to the detriment of the Commonwealth's other creditors.  Accordingly, *Sonnax* factor 7 does not support granting the Motion.

30.     ***Sonnax*** **Factors 10 and 11:**  The interests of judicial economy and the status of the Lawsuit also weigh against stay relief.  As discussed above, the Lawsuit is still at a preliminary stage.  A myriad of proceedings necessary for the Lawsuit to even be trial ready remain pending, such as answering to the complaint, conducting and finalizing discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.

31.     As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

32.     ***Sonnax*** **Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Lawsuit,

13

the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

33. On the other hand, postponing liquidation of the Movant's claims is a hardship that is shared with other creditors so the Commonwealth can focus on its restructuring and recovery efforts for the benefit of all creditors, and would promote judicial economy. Any claim Movant may have can and should be dealt with during the Title III claims process, as any other creditor's claims. And, given the early stage of the Lawsuit, there is no guaranty that the resolution of the Lawsuit would come any sooner than the resolution of Movant's purported claims in the Title III case. Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[4]

## II. THE MERITS OF MOVANT'S LAWSUIT IS IRRELEVANT TO THE STAY RELIEF ANALYSIS

34. Movant argues that the automatic stay should be lifted because she is likely to prevail on the merits of her case. Motion ¶ 7. The merits of a claim are irrelevant to the question of stay relief. The two decisions Movant cites in support of her argument are distinguishable. Movant cites *In re Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994), noting that the court "relied on two additional factors; namely, the misconduct of the debtor and whether the creditor has a probability of prevailing on the merits." Motion ¶ 5. However, a

---

[4]   The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

14

careful reading of the decision in *Unanue-Casal* reveals that the court only referenced the probability of prevailing on the merits as it surveyed the various factors courts have considered in determining cause to lift the automatic stay. *Unanue-Casal*, 159 B.R. at 95-96. The court, however, did not rely on the merits of the underlying claim in determining whether to lift the automatic stay. *Id.* at 95-102.

35. Movant also cites *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116 (Bankr. D. Del. 2009), for the proposition, "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Id.* at 129 (citation omitted). However, *Tribune* indicates a likelihood of success can be found where the movant had previously *offered into evidence* documentation supporting its claim. *Id.* ("[Movant] introduced into evidence a Declaration detailing specific dates, potential witnesses, and other facts to support his position . . . and a copy of an agreement . . . . This is sufficient, under the circumstances, to support a slight showing of the probability of success on the merits."). Here, however, the Lawsuit is in the preliminary stages, with the Commonwealth's and PRTD's answer to Movant's remaining claims following the District Court's decision on the Motion to Dismiss pending.

36. Furthermore, the decision in *Tribune* is limited to the specific circumstances of the case, as it notes in various instances. *Id.* ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case. . . . . This is sufficient, under the circumstances, to support a slight showing of the probability of success on the merits." (emphasis added)). In *Tribune*, the debtors filed an adversary proceeding to obtain determinations on the same issues raised in the litigation movant sought to lift the stay to pursue. *Id.* at 127. The court found that movant would suffer hardship if the stay were not lifted and the issues litigated in an adversary proceeding, including prejudice to movant's ability to call non-party witnesses at

15

trial. *Id.* at 128. The debtors, on the other hand, would not suffer hardship if the stay were lifted

and issues litigated in a separate forum. *Id.* at 129. Thus, the *Tribune* analysis focused on the

balance of the harms, which is a *Sonnax* factor, rather than the underlying merits, which is not.

Here, as shown above under the *Sonnax* analysis, the Commonwealth would suffer substantial

hardship if the automatic stay were lifted.

## **CONCLUSION**

37.     Movant has failed to establish cause to justify lifting the automatic stay in the

Commonwealth's Title III case to allow the Lawsuit to proceed.  Accordingly, and for the

foregoing reasons, the Court should deny the Motion.

Dated: October 18, 2018
        San Juan, Puerto Rico


                                Respectfully submitted,

                                **WANDA VÁZQUEZ GARCED**
                                Secretary of Justice

                                */s/ Wandymar Burgos Vargas*
                                **WANDYMAR BURGOS VARGAS**
                                USDC 223502
                                Deputy Secretary in Litigation
                                Department of Justice
                                P.O. Box 9020192
                                San Juan, Puerto Rico 00902-0192
                                Phone: 787-721-2940 Ext. 2500, 2501
                                wburgos@justicia.pr.gov

                                *Attorneys for the Commonwealth of Puerto Rico*

16